APPEAL,CUSTODY,FILINGFEEDUE,INT–SPA,RELEASE,RST–PNDNG,RVO–PNDNG

# U.S. District Court
## United States District Court – District of New Mexico (Las Cruces)
## CRIMINAL DOCKET FOR CASE #: 2:15–cr–04268–JB All Defendants
### *Internal Use Only*

Case title: USA v. DeLeon et al                 Date Filed: 12/01/2015

Assigned to: District Judge James
O. Browning

**Defendant (1)**

| **Angel DeLeon** | represented by | **Sarah M. Gorman** |
|---|---|---|

<div>

**Angel DeLeon**

represented by **Sarah M. Gorman**
Law Offices of Robert D. Gorman
1201 Lomas NW
Suite A
Albuquerque, NM 87102
505–243–5442
Fax: 505–247–1539
Email: smgorman.law@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Susan M. Porter**
908 Lomas Blvd. NW
Albuquerque, NM 87102
505–312–7742
Fax: 651–602–3655
Email: sporterlaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

</div>

**Pending Counts**                 **Disposition**

18:1959(A)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER)
AND 18:2
(1)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(1s)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF

RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(1ss)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge James
O. Browning

Appeals court case number:
20–2058 U S Court of Appeals

**Defendant (2)**

| Joe Lawrence Gallegos | represented by | Brock Benjamin |
|---|---|---|
| *TERMINATED: 06/11/2019* | | Benjamin Law Firm |

Joe Lawrence Gallegos    represented by    **Brock Benjamin**
*TERMINATED: 06/11/2019*                                 Benjamin Law Firm
                                                         1600 N. Kansas St.
                                                         El Paso, TX 79902
                                                         (915) 412–5858
                                                         Fax: (915) 503–2224
                                                         Email: brock@brockmorganbenjamin.com
                                                         *TERMINATED: 05/14/2020*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: CJA Appointment*

                                                         **Gregory M. Acton**
                                                         3811 Atrisco Dr. NW
                                                         Suite B
                                                         Albuquerque, NM 87120
                                                         (505) 338–0453
                                                         Fax: (505) 839–7212
                                                         Email: gregoryacton@gmail.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: CJA Appointment*

**Richard Sindel**
Sindel, Sindel & Noble, P.C.
8000 Maryland Avenue, Suite 350
Clayton, MO 63105
(314) 721–6040
Fax: (314) 721–8545
Email: rsindel@sindellaw.com
*TERMINATED: 05/14/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| <u>**Pending Counts**</u> | <u>**Disposition**</u> |
|---|---|
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (1ss) | SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years concurrently; SPA–$100; deft in custody |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4ss) | SENTENCE IMPOSED: CBOP–120 months concurrently; Supervised Release–3 years concurrently; SPA–$100; deft in custody |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (5ss) | SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years concurrently; SPA–$100; deft in custody |

<u>**Highest Offense Level (Opening)**</u>

Felony

| <u>**Terminated Counts**</u> | <u>**Disposition**</u> |
|---|---|
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (1) | |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (1s) | |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING | |

(CONSPIRACY TO MURDER)
(4s)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(5s)

18:1959(a)(3): VIOLENT
CRIMES IN AID OF
RACKETEERING (ASSAULT
WITH A DANGEROUS
WEAPON); 18:2 AIDING AND
ABETTING
(13s)

18:1959(a)(3): VIOLENT
CRIMES IN AID OF
RACKETEERING (ASSAULT
WITH DANGEROUS
WEAPON); 18:2 AIDING AND
ABETTING
(13ss)

18:1959(a)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(14s)

18:1959(a)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(14ss)

18:1959(a)(3) and 1959(a)(5):
VIOLENT CRIMES IN AID OF
RACKETEERING
(ATTEMPTED MURDER,
ASSAULT RESULTING IN
SERIOUS BODILY INJURY
AND ASSAULT WITH A
DANGEROUS WEAPON); 18:2
AIDING AND ABETTING
(15s)

18:1959(a)(3) and 1959(a)(5):
VIOLENT CRIMES IN AID OF
RACKETEERING
(ATTEMPTED MURDER,
ASSAULT RESULTING IN
SERIOUS BODILY INJURY
AND ASSAULT WITH
DANGEROUS WEAPON); 18:2

AIDING AND ABETTING
(15ss)

18:1512: WITNESS
TAMPERING; 18:2 AIDING
AND ABETTING
(16ss)

**Highest Offense Level**
**(Terminated)**

Felony

**Complaints**                                    **Disposition**

None

---

Assigned to: District Judge James
O. Browning

Appeals court case number:
19–2188 U S Court of Appeals

**Defendant (3)**

**Edward Troup**                    represented by   **Cori Ann Harbour–Valdez**
*TERMINATED: 05/15/2019*                            The Harbour Law Firm, P.C.
*also known as*                                     1522 Montana Ave
Huero Troup                                         3rd Floor
*TERMINATED: 05/15/2019*                            El Paso, TX 79902
                                                    915–544–7600
                                                    Fax: 915–975–8036
                                                    Email: cori@harbourlaw.net
                                                    *TERMINATED: 12/09/2019*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Designation: CJA Appointment*

                                                    **John T. Carlson**
                                                    Ridley McGreevy & Winocur
                                                    303 16th Street
                                                    Suite 200
                                                    Denver, CO 80202
                                                    303–629–9700
                                                    Fax: 303–629–9702
                                                    Email: jtcarlson@gmail.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Designation: CJA Appointment*

                                                    **Patrick J. Burke**
                                                    Patrick J. Burke, PC
                                                    999 18th Street

Suite 2055
Denver, CO 80202
303−825−3050
Fax: 303−825−2992
Email: patrick−j−burke@msn.com
*TERMINATED: 12/09/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (1ss) | SENTENCE IMPOSED: CBOP−Life; Supervised Release−5 years concurrently; SPA−$100; deft in custody. |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (3ss) | SENTENCE IMPOSED: CBOP−Life; Supervised Release−5 years concurrently; SPA−$100; deft in custody. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (1) | |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (1s) | |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (3) | |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (3s) | |

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

Assigned to: District Judge James
O. Browning

**Defendant (4)**

| | | |
| --- | --- | --- |
| **Leonard Lujan**<br>*TERMINATED: 07/29/2020* | represented by | **Russell Dean Clark**<br>P.O. Box 576<br>755 S Telshor Bldg R Ste 202<br>Las Cruces, NM 88004<br>575−526−9000<br>Fax: 575−526−9800<br>Email: russelldeanclark@gmail.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | | **Donald R Knight**<br>7852 South Elati Street<br>Suite 201<br>Littleton, CO 80120<br>303−797−1645<br>Email: Don@dknightlaw.com<br>*TERMINATED: 07/08/2016*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(1): VIOLENT<br>CRIMES IN AID OF<br>RACKETEERING (MURDER);<br>18:2 AIDING AND ABETTING<br>(1ss−2ss) | SEALED PROCEEDINGS |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(A)(1): VIOLENT | |

CRIMES IN AID OF
RACKETEERING (MURDER)
AND 18:2
(1–2)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(1s–2s)

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge James
O. Browning

Appeals court case number:
19–2152 U S Court of Appeals

**Defendant (5)**

| **Billy Garcia** | represented by | **James A. Castle** |
|---|---|---|
| *TERMINATED: 06/11/2019* | | Castle & Castle, P.C. |
| *also known as* | | 1544 Race Street |
| Wild Bill | | Denver, CO 80206 |
| *TERMINATED: 06/11/2019* | | (303) 675–0500 |
| | | Fax: (303) 329–5500 |
| | | Email: JCastlelaw@gmail.com |
| | | *TERMINATED: 09/04/2019* |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | |
| | | **Jason Bowles** |
| | | Bowles Law Firm |
| | | 4811 Hardware Drive, N.E. |
| | | Bldg D, Suite 5 |
| | | Albuquerque, NM 87109 |
| | | 505–217–2680 |
| | | Fax: 505–217–2681 |
| | | Email: jason@Bowles–Lawfirm.com |
| | | *TERMINATED: 03/24/2016* |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |

**Joseph Libory Green**
The Law Firm of Joseph Green, L.L.C.
1 McBride & Sons Center Drive,
Suite 225A
Chesterfield, MO 63005
636–532–6600
Email: joe@josephgreenlaw.com
*TERMINATED: 02/25/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Kathleen Lord**
Lord Law Firm
1544 Race St
Denver, CO 80206
303–947–5371
Email: kathleen@klordlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Mario Carreon**
200 W. Las Cruces Ave. Suite B
Las Cruces, NM 88005
575–523–7979
Fax: 575–523–4311
Email: texflood@aol.com
*TERMINATED: 12/14/2015*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Robert R. Cooper**
1011 Lomas Blvd NW
Albuquerque, NM 87102
505 842–8494
Fax: (505) 243–6279
Email: bob@rrcooper.com
*TERMINATED: 10/03/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(1ss–2ss)

**Disposition**

SENTENCE IMPOSED: CBOP–Life; Supervised
Release–5 years concurrently; SPA–$200;
Restitution–Held open for 90 days; deft in custody

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (1–2) | |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (1s–2s) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James O. Browning

**Defendant (6)**

| | | |
| --- | --- | --- |
| **Eugene Martinez** *TERMINATED: 10/22/2019* also known as Little Guero *TERMINATED: 10/22/2019* | represented by | **Douglas E Couleur** Douglas E. Couleur, P.A. 1640 Old Pecos Trail Suite A Santa Fe, NM 87505 (505) 984–1962 Fax: (505) 819–0522 Email: doug@couleurlaw.com *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* *Designation: CJA Appointment* |
| | | **Carlos Ibarra** 304 N San Pedro Las Cruces, NM 88001 (575) 527–4045 Email: carlosibarraesq@gmail.com *TERMINATED: 02/04/2016* *ATTORNEY TO BE NOTICED* *Designation: CJA Appointment* |

**David A. Lane**
Killmer, Lane & Newman, LLP
1543 Champa Street
Suite 400
Denver, CO 80202
303−571−1000
Fax: 303−571−1001
Email: dlane@kln−law.com
*TERMINATED: 06/21/2016*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Robert J. Gorence**
Gorence & Oliveros PC
300 Central Avenue SW
Suite 1000E
Albuquerque, NM 87102
505−244−0214
Fax: 505−244−0888
Email: gorence@golaw.us
*TERMINATED: 03/24/2016*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (2ss) | SENTENCE IMPOSED:CBOP−92 months; Supervised Release−5 years; SPA−$100; Restitution−$2645.31; deft in custody |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (2) | |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (2s) | |

**Highest Offense Level**

**(Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge James
O. Browning

**Defendant (7)**

**Allen Patterson**                    represented by     **Jeffrey C. Lahann**
*TERMINATED: 05/25/2018*                                665 E. University Ave. #2A
                                                        Las Cruces, NM 88005
                                                        575–523–4394
                                                        Fax: 1–888–694–7241
                                                        Email: jeff@lahannlaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        *Designation: CJA Appointment*

                                                        **Joseph E. Shattuck**
                                                        Marco & Shattuck
                                                        620 Roma Ave. NW
                                                        Albuquerque, NM 87102
                                                        505–226–1100
                                                        Fax: 800–743–1631
                                                        Email: jshattuck@marcoshattucklaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        *Designation: CJA Appointment*

                                                        **Phillip A. Linder**
                                                        The Linder Firm
                                                        3500 Maple Avenue, Suite 400
                                                        Dallas, TX 75219
                                                        214–252–9900
                                                        Fax: 214–252–9902
                                                        Email: phillip@thelinderfirm.com
                                                        *TERMINATED: 03/17/2017*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        *Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 | |

(2)
18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(2s)

**Highest Offense Level
(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (2ss) | |

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James
O. Browning

**Defendant (8)**

| **Christopher Chavez** | represented by | **Eduardo Solis** |
| --- | --- | --- |
| *TERMINATED: 06/19/2018* | | 901 Wyoming Avenue |
| *also known as* | | El Paso, TX 79902 |
| Critter | | (915) 544–1818 |
| *TERMINATED: 06/19/2018* | | Fax: (915) 544–4068 |
| | | Email: esolis@solislawoffice.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | |
| | | **Orlando Mondragon** |
| | | 1028 Rio Grande |
| | | El Paso, TX 79902 |
| | | 915–566–8181 |
| | | Fax: 915–566–9696 |
| | | Email: mondragonom@gmail.com |
| | | *LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**David L Andersen**
Andersen & Zimmer
385 Grand Avenue
Suite 300
Oakland, CA 94610
(510) 835–4952
Fax: (510) 835–4958
Email: andzim@sbcglobal.net
*TERMINATED: 06/13/2016*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**John L. Granberg**
Granberg Law Office
303 N. Oregon, Ste. 805
El Paso, TX 79901
915–253–2091
Fax: 915–543–3201
Email: granberglawoffice@yahoo.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| Pending Counts | Disposition |
| --- | --- |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (2) | |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (2s) | |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
| --- | --- |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (2ss) | |

**Highest Offense Level
(Terminated)**

Felony

**Complaints**                                    **Disposition**

None

---

Assigned to: District Judge James
O. Browning

**Defendant (9)**

| | | |
|---|---|---|
| **Javier Alonso**<br>*also known as*<br>Wineo | represented by | **Nathan D. Chambers**<br>Nathan D. Chambers LLC<br>303 16th Street, Suite 200<br>Denver<br>Denver, CO 80202<br>303−825−2222<br>Fax: 303−825−4010<br>Email: nchambers@nathanchamberslaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment*<br><br>**Noel Orquiz**<br>P.O. Box 971<br>Deming, NM 88031<br>575−546−4131<br>Fax: 575−546−8406<br>Email: norq@zianet.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |

**Pending Counts**                                **Disposition**

18:1959(A)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER)
AND 18:2
(3)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(3s)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF

RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(3ss)

**Highest Offense Level
(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James
O. Browning

Appeals court case number:
19−2148 U.S. Court of Appeals

**Defendant (10)**

**Arturo Arnulfo Garcia**
*TERMINATED: 06/11/2019*
*also known as*
Shotgun
*TERMINATED: 06/11/2019*

represented by   **Billy R. Blackburn**
1011 Lomas Blvd. NW
Albuquerque, NM 87102
505−242−1600
Fax: 505−243−6279
Email: Billy@BBlackburnlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Scott Moran Davidson**
1011 Lomas Boulevard NW
Albuquerque, NM 87102
505−255−9084
Fax: 505−243−6279
Email: scott@justappeals.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |

| | |
|---|---|
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (3ss) | SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years; SPA–$100; deft in custody. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (3) | |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (3s) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: District Judge James O. Browning

**Defendant (11)**

| | | |
|---|---|---|
| **Benjamin Clark** *TERMINATED: 08/29/2019* *also known as* Cyclone *TERMINATED: 08/29/2019* | represented by | **Jerry Daniel Herrera** 620 Roma Avenue, NW Albuquerque, NM 87102 505–262–1003 Fax: 505–246–2668 Email: jd@jdherreralaw.com *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* *Designation: CJA Appointment* |
| | | **Stephen E. Hosford** Stephen E. Hosford, P.C. PO Box 420 Arrey, NM 87930 |

(575) 644–6068
Email: sehosford@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (3s) | SENTENCE IMPOSED: CBOP–110 months; Supervised Release–5 years; SPA–$100; deft in custody |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (3) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James O. Browning

**Defendant (12)**

| **Ruben Hernandez** *TERMINATED: 08/16/2019* | represented by | **Leon Encinias** Leon Felipe Encinias Attorney at Law 1412 Lomas Blvd NW Albuquerque, NM 87104 505–842–9053 Fax: 505–842–0686 Email: lenciniasesq@aol.com *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* *Designation: CJA Appointment* |
| --- | --- | --- |
| | | **Pedro Pineda** |

P.O. Box 13447
Las Cruces, NM 88013
575−644−6419
Fax: 575−993−5300
Email: lawyer19742003@yahoo.com
*TERMINATED: 11/20/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (3s) | SENTENCE IMPOSED: CBOP−1357 days; Supervised Release−5 years; SPA−$100; deft in custody |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (3) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge James O. Browning

**Defendant (13)**

| **Jerry Armenta** | represented by | **Gary Mitchell** |
|---|---|---|
| *TERMINATED: 08/16/2019* | | Mitchell Law Office |
| *also known as* | | PO Box 2460 |
| Creeper | | Ruidoso, NM 88345 |
| *TERMINATED: 08/16/2019* | | 575−257−3070 |
| | | Fax: 575−257−3171 |
| | | Email: gary@gmlaw.org |
| | | *LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6s) | SENTENCE IMPOSED: CBOP−120 months; Supervised Release−3 years concurrently; SPA−$100 |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (7ss) | SENTENCE IMPOSED: CBOP−140 months concurrently; Supervised Release−5 years concurrently; SPA−$100 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4) | |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (5) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: District Judge James O. Browning

**Defendant (14)**

| | | |
|---|---|---|
| **Jerry Montoya** | represented by | **Larry A. Hammond** |
| *TERMINATED: 08/29/2019* | | Osborn Maledon PA |
| *also known as* | | 2929 N Central Ave., |
| Boxer | | Suite 210 |
| *TERMINATED: 08/29/2019* | | Phoenix, AZ 85012−2794 |

(602) 640–9361
Fax: 640–6076
Email: lhammond@omlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Margaret Strickland**
McGraw & Strickland
165 West Lucero Ave.
Las Cruces, NM 88005
575–323–1529
Fax: 575–680–1200
Email: Margaret@lawfirmnm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6s) | SENTENCE IMPOSED:CBOP–120 months concurrently; Supervised Release–3 years concurrently; SPA–$100 |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (7ss) | SENTENCE IMPOSED:CBOP–140 months concurrently; Supervised Release–5 years concurrently; SPA–$100 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4) | |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (5) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge James
O. Browning

**Defendant (15)**

| **Mario Rodriguez** | represented by | **Santiago David Hernandez** |
|---|---|---|
| *also known as* | | Law Office of Santiago D. Hernandez |
| Blue | | 1219 E. Missouri |
| | | El Paso, TX 79902 |
| | | 915−351−4300 |
| | | Fax: 915−314−0054 |
| | | Email: santilawyer@gmail.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | Designation: CJA Appointment |
| | | |
| | | **Steven M Potolsky** |
| | | PO Box 50973 |
| | | Jacksonville Beach, FL 32250 |
| | | 305−335−5539 |
| | | Fax: 305−358−5917 |
| | | Email: stevepo@bellsouth.net |
| | | *TERMINATED: 06/28/2019* |
| | | *ATTORNEY TO BE NOTICED* |
| | | Designation: CJA Appointment |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4) | |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (5) | |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6s) | |
| 18:1959(a)(5): VIOLENT | |

CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(6sss)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(7ss)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(7sss)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James
O. Browning

**Defendant (16)**

| **Timothy Martinez** | represented by | **Jacqueline K. Walsh** |
| --- | --- | --- |
| *TERMINATED: 10/22/2019* | | Walsh & Larranaga |
| *also known as* | | 705 2nd Ave., #501 |
| Red | | Seattle, WA 98104 |
| *TERMINATED: 10/22/2019* | | (206) 325−7900 |
| | | Fax: (206) 322−4305 |
| | | Email: jackie@jamlegal.com |
| | | *TERMINATED: 07/05/2016* |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | Designation: CJA Appointment |
| | | |
| | | **Ray Velarde** |
| | | 1216 Montana |

El Paso, TX 79902
(915) 532−6003
Fax: 542−2341
Email: velardelaw2005@yahoo.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Steven Lorenzo Almanza**
PO Box 1660
Las Cruces, NM 88004
(575) 524−8312
Fax: (575) 526−6449
Email: steven.l.almanza@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6s) | SENTENCE IMPOSED: CBOP−92 months; Supervised Release−3 years concurrent; SPA−$100; deft in custody |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (7ss) | SENTENCE IMPOSED: CBOP−92 months; Supervised Release−5 years concurrent; SPA−$100; deft in custody |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4) | |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (5) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

Assigned to: District Judge James O. Browning

**Defendant (17)**

| | | |
| --- | --- | --- |
| **Mauricio Varela**<br>*TERMINATED: 10/15/2018*<br>*also known as*<br>Archie<br>*also known as*<br>Hog Nuts | represented by | **Mary Stillinger**<br>Mary Stillinger<br>401 Boston Avenue<br>El Paso, TX 79902<br>915–775–0705<br>Fax: 915–886–7178<br>Email: stillingerlaw@sbcglobal.net<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | | **Michael David Lindsey**<br>David Lindsey, Attorney<br>7887 East Bellview Avenue<br>Suite 1100<br>Engelwood, CO 80111<br>303–228–2270<br>Fax: 303–228–2271<br>Email: david@mdavidlindsey.com<br>*TERMINATED: 05/06/2016*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | | **Joe Spencer**<br>1009 Montana Avenue<br>El Paso, TX 79902<br>915–532–5562<br>Fax: 915–532–7535<br>Email: joe@joespencerlaw.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4) | |

18:1959(A)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER)
AND 18:2
(5)

18:1959(a)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(6s)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(7ss)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6sss) | Dismissed |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (7sss) | Dismissed |

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James
O. Browning

Appeals court case number:
19–2141 U S Court of Appeals

**Defendant (18)**

represented by

**Daniel Sanchez**
*TERMINATED: 05/15/2019*
*also known as*
Dan Dan
*TERMINATED: 05/15/2019*

**Amy E. Jacks**
Law Office of Amy E. Jacks
315 E. 8th St.
#801
Los Angeles, CA 90014
213–489–9025
Fax: 213–489–9027
Email: amyejacks@sbcglobal.net
*TERMINATED: 09/17/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Josh R. Lee**
Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80212
303–294–7002
Fax: 303–294–1192
Email: josh.lee@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**Lauren Noriega**
The Noriega Law Firm
941 S Vermont Ave.
Ste. 101, #542
Los Angeles, CA 90006
213–290–2656
Fax: 213–603–5284
Email: AttorneyNoriega@yahoo.com
*TERMINATED: 09/17/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Richard Jewkes**
Richard Jewkes
701 N. Saint Vrain St
El Paso, TX 79902
(915) 534–7400
Fax: (915)534–7407
Email: richardjewkes@sbcglobal.net
*TERMINATED: 04/12/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**

**Disposition**

| | |
|---|---|
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6sss) | SENTENCE IMPOSED:CBOP–120 months; Supervised Release–3 years; SPA–$100; deft in custody |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (7sss) | SENTENCE IMPOSED:CBOP–Life; Supervised Release–5 concurrently years; SPA–$100; deft in custody |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4) | |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 (5) | |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6s) | |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (7ss) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge James O. Browning

**Defendant (19)**

| | | |
|---|---|---|
| **Gerald Archuleta** | represented by | **George A Harrison** |

**Gerald Archuleta**
*TERMINATED: 08/17/2018*
*also known as*
Styx
*TERMINATED: 08/17/2018*
*also known as*
Grandma
*TERMINATED: 08/17/2018*

represented by **George A Harrison**
703 Oro Viejo Rd
Las Cruces, NM 88011
5756391083
Fax: 575–708–4078
Email: ghlaw707@gmail.com
*TERMINATED: 09/11/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Kimberly S Brusuelas–Benavidez**
1015 Fifth St NW
Albuquerque, NM 87102
505–247–9333
Fax: 505–247–9292
Email: kim@fifthstreetlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(6): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO COMMIT ASSAULT RESULTING IN SERIOUS BODILY INJURY) (8s) | Sealed Proceedings |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(A)(6): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO COMMIT ASSAULT RESULTING IN SERIOUS BODILY INJURY) (6) | |

**Highest Offense Level (Terminated)**

Felony

| Complaints | Disposition |
| --- | --- |
| None | |

Assigned to: District Judge James O. Browning

**Defendant (20)**

| | | |
| --- | --- | --- |
| **Conrad Villegas** | represented by | **B.J. Crow** |
| *TERMINATED: 02/21/2019* | | Crow Law Firm |
| *also known as* | | 400 N. Pennsylvania Ave. |
| Chitmon | | Suite 1150 |
| *TERMINATED: 02/21/2019* | | Roswell, NM 88201 |
| | | 575−291−0200 |
| | | Fax: 575−291−0201 |
| | | Email: bj@crow−law−firm.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |

| Pending Counts | Disposition |
| --- | --- |
| 18:1959(A)(6): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO COMMIT ASSAULT RESULTING IN SERIOUS BODILY INJURY) (6) | |
| 18:1959(a)(6): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO COMMIT ASSAULT RESULTING IN SERIOUS BODILY INJURY) (8s) | |
| 18:1959(a)(6): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO COMMIT ASSAULT RESULTING IN SERIOUS BODILY INJURY) (8ss) | SENTENCE IMPOSED: CBOP−12 months and 1 day; Supervised Release−1 year; SPA−$100; deft in custody |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
| --- | --- |

None

**Highest Offense Level**
**(Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge James
O. Browning

Appeals court case number:
19–2195 U S Court of Appeals

**Defendant (21)**

**Anthony Ray Baca**                    represented by    **Cesar Pierce–Varela**
*TERMINATED: 06/12/2019*                                  1690 N Main St.
*also known as*                                           PO Box 8557
Pup                                                       Las Cruces, NM 88006
*TERMINATED: 06/12/2019*                                  575 523 2224
                                                          Fax: 575 523 2373
                                                          Email: defensapenal@netzero.net
                                                          *TERMINATED: 12/14/2015*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: CJA Appointment*

                                                          **Jess R. Lilley**
                                                          Lilley Law Office
                                                          1020 S. Main St.
                                                          Las Cruces, NM 88005
                                                          (575) 524–7809
                                                          Fax: (575) 526–2642
                                                          Email: jess@lilleyandoconnell.com
                                                          *TERMINATED: 12/07/2015*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: CJA Appointment*

                                                          **Marc M Lowry**
                                                          Rothstein Donatelli LLP
                                                          500 4th Street N.W. Suite 400
                                                          Albuquerque, NM 87102
                                                          (505) 243–1443
                                                          Fax: (505) 242–7845
                                                          Email: mlowry@rothsteinlaw.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

*Designation: CJA Appointment*

**Theresa M Duncan**
Duncan Earnest LLC
PO Box 2769
Santa Fe, NM 87102
505−842−5196
Fax: 505−750−9780
Email: teri@duncanearnest.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Neal Douglas Stern**
U.S. Probation Office and Pretrial Services Division
Email: neal_stern@nmp.uscourts.gov
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6sss) | SENTENCE IMPOSED: CBOP−120 months; Supervised Release−3 years concurrent; SPA−$100 |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (7sss) | SENTENCE IMPOSED: CBOP−Life; Supervised Release−3 years concurrent; SPA−$100 |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (9sss−10sss) | SENTENCE IMPOSED: CBOP−120 months; Supervised Release−3 years concurrent; SPA−$100 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4) | |
| 18:1959(A)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER) AND 18:2 | |

(5)

18:1959(A)(6): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO COMMIT
ASSAULT RESULTING IN
SERIOUS BODILY INJURY)
(6)

18:1959(a)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(6s)

18:1959(A)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(7–8)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(7ss)

18:1959(a)(6): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO COMMIT
ASSAULT RESULTING IN
SERIOUS BODILY INJURY)
(8s)

18:1959(a)(6): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO COMMIT
ASSAULT RESULTING IN
SERIOUS BODILY INJURY)
(8sss)

18:1959(a)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(9s–10s)

**Highest Offense Level
(Terminated)**

Felony

| Complaints | Disposition |
| --- | --- |
| None | |

Assigned to: District Judge James O. Browning

**Defendant (22)**

| | | |
| --- | --- | --- |
| **Robert Martinez**<br>*also known as*<br>Baby Rob | represented by | **Charles J. McElhinney**<br>McElhinney Law Firm LLC<br>1140 E. Idaho Ave<br>Las Cruces, NM 88001<br>575–288–1989<br>Fax: 575–556–9388<br>Email: cjm@cjmlawfirm.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |

| Pending Counts | Disposition |
| --- | --- |
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (7–8) | |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (9s–10s) | |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| Complaints | Disposition |
| --- | --- |
| None | |

Assigned to: District Judge James O. Browning

**Defendant (23)**

| | | |
|---|---|---|
| **Roy Paul Martinez** | represented by | **Marcia J. Milner** |
| *also known as* | | P.O BOX 1450 |
| Shadow | | Las Cruces, NM 88001 |
| | | 575–523–2696 |
| | | Fax: 575-523-2699 |
| | | Email: maalaw4@gmail.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |

**Pending Counts**                                        **Disposition**

18:1959(A)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(7–8)

18:1959(a)(5): VIOLENT CRIMES
IN AID OF RACKETEERING
(CONSPIRACY TO MURDER)
(9s–10s)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                     **Disposition**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**                                            **Disposition**

None

---

Assigned to: District Judge James
O. Browning

Appeals court case number:
19–2109 U. S. Court of Appeals

**Defendant (24)**

| | | |
|---|---|---|
| **Christopher Garcia** | represented by | **Amy Sirignano** |
| *TERMINATED: 05/10/2019* | | Law Office of Amy Sirignano, PC |

5901 Wyoming Blvd. NE
Suite J–250
Albuquerque, NM 87109
505–242–2770
Fax: 505–242–2774
Email: amy@abqnmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Christopher W Adams**
102 Broad Street
Suite C
Charleston, SC 29401
(843) 577–2153
Fax: (877) 883–9114
Email: adams.c@me.com
*TERMINATED: 06/18/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Marc M Lowry**
(See above for address)
*TERMINATED: 12/14/2015*
*LEAD ATTORNEY*
*Designation: CJA Appointment*

| Pending Counts | Disposition |
| --- | --- |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (10ss) | SENTENCE IMPOSED: CBOP–120 months; Supervised Release–3 years; SPA–$200 |
| 18:922(g)(1) and 924(a)(2): FELON IN POSSESSION OF A FIREARM (11ss) | SENTENCE IMPOSED: CBOP–120 months; Supervised Release–3 years; SPA–$200 |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
| --- | --- |
| 18:1959(A)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (8) | |

18:1959(a)(5): VIOLENT CRIMES
IN AID OF RACKETEERING
(CONSPIRACY TO MURDER)
(10s)

18:922(g)(1) and 924(a)(2):
FELON IN POSSESSION OF A
FIREARM
(11s)

18:924(c): USING AND
CARRYING A FIREARM
DURING AND IN RELATION
TO A CRIME OF VIOLENCE
(12s)

18:924(c): USING AND
CARRYING A FIREARM
DURING AND IN RELATION
TO A CRIME OF VIOLENCE
(12ss)

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: District Judge James
O. Browning

Appeals court case number:
19–2126 U S Court of Appeals

**Defendant (25)**

| | | |
|---|---|---|
| **Carlos Herrera** | represented by | **Michael V Davis** |
| *TERMINATED: 06/11/2019* | | Michael V. Davis |
| *also known as* | | 523 Camino De La Tierra |
| Lazy | | Corrales, NM 87048 |
| *TERMINATED: 06/11/2019* | | 505–242–5979 |
| | | Email: mdavis@swcp.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | |
| | | **Ryan J Villa** |
| | | 2501 Rio Grande Blvd NW Suite A |
| | | Albuquerque, NM 87104 |
| | | (505) 639–5709 |
| | | Fax: 505–433–5812 |

Email: ryan@rjvlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**William R. Maynard**
William R> Maynard, Attorney
521 Texas Ave.
El Paso, TX 79901
915–201–2580
Fax: 915–201–2581
Email: wrm@wrmaynardlaw.com
*TERMINATED: 08/20/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Carey Corlew Bhalla**
Law Office of Carey C. Bhalla LLC
1306 Rio Grande Blvd. NW, Suite B
Albuquerque, NM 87104
505–508–5589
Email: carey@bhallalaw.com
*TERMINATED: 08/20/2019*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6ss) | SENTENCE IMPOSED: CBOP–120 months; Supervised Release–3 years; SPA–$100 |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (7ss) | SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years; SPA–$100 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (6) | |

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(7s)

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James
O. Browning

**Defendant (26)**

| | | |
| --- | --- | --- |
| **Rudy Perez** | represented by | **Donald R West** |
| *TERMINATED: 06/11/2018* | | Don West Law Group |
| *also known as* | | P. O. Box 547644 |
| Ru Dog | | Orlando, FL 32854 |
| *TERMINATED: 06/11/2018* | | 407–425–9710 |
| | | Fax: 407–425–8287 |
| | | Email: donwest@donwestlawgroup.com |
| | | *TERMINATED: 09/06/2016* |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | |
| | | **Justine Fox–Young** |
| | | Justine Fox–Young, P.C. |
| | | 201 12th St. NW |
| | | Albuquerque, NM 87102 |
| | | 505–796–8268 |
| | | Email: justine@foxyounglaw.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | |
| | | **Ryan J Villa** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5): VIOLENT | |
| CRIMES IN AID OF | |

RACKETEERING
(CONSPIRACY TO MURDER)
(6)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(7s)

**Highest Offense Level**
**(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |

18:1959(a)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(6ss)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(7ss)

**Highest Offense Level**
**(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James
O. Browning

Appeals court case number:
20–2056 U S Court of Appeals

**Defendant (27)**

| **Andrew Gallegos** | represented by | **Donavon A Roberts** |
| --- | --- | --- |
| *TERMINATED: 05/10/2019* | | 1959 |
| *also known as* | | 723 FRUIT NW |
| Smiley | | 723 FRUIT NW |
| *TERMINATED: 05/10/2019* | | ALBUQUERQUE, NM 87102 |
| | | United Sta |
| | | 505–506–3749 |

Fax: 505−503−8405
Email: ladar170@aim.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**John Michael Bowlin**
Bowlin Law Firm LLC
1000 Harrison Dr.
Rio Rancho, NM 87144
505−892−1324
Fax: 505−359−3291
Email: johnmbowlin@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Lisa Torraco**
823 Gold Ave SW
Albuquerque, NM 87102
Email: lisatorraco@gmail.com
*TERMINATED: 05/26/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Rhiannon M. Work**
U.S. Probation Office and Pretrial Services Division
Email: rhiannon_work@nmp.uscourts.gov
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (4s) | SENTENCE IMPOSED: CBOP−120 months; Supervised Release−3 years; SPA−$100 |
| 18:1959(a)(1): VIOLENT CRIMES IN AID OF RACKETEERING (MURDER); 18:2 AIDING AND ABETTING (5s) | SENTENCE IMPOSED: CBOP – Life; Supervised Release−5 years; SPA−$100 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |

18:1959(a)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(4)

18:1959(a)(1): VIOLENT
CRIMES IN AID OF
RACKETEERING (MURDER);
18:2 AIDING AND ABETTING
(5)

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James
O. Browning

**Defendant (28)**

| **Santos Gonzalez**<br>*TERMINATED: 11/14/2017* | represented by | **Erlinda O Johnson**<br>Law Office of Erlinda Ocampo Johnson, LLC<br>620 Roma Ave. N.W.<br>Albuquerque, NM 87102<br>505 792–4048<br>Fax: 505–792–2268<br>Email: erlinda@erlindajohnsonlaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| --- | --- | --- |

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5): VIOLENT<br>CRIMES IN AID OF<br>RACKETEERING<br>(CONSPIRACY TO MURDER)<br>(14s) | SENTENCE IMPOSED: CBOP 96 months as to<br>counts 14,15 and 16 of the SSI (said terms shall run<br>concurrently); 3 yrs supervised release as to counts<br>14 and 15, 5 yrs as to count 16, said terms shall run<br>concurrently for a total term of 5 yrs; SPA $300;<br>deft in custody |
| 18:1959(a)(3) and 1959(a)(5):<br>VIOLENT CRIMES IN AID OF<br>RACKETEERING<br>(ATTEMPTED MURDER,<br>ASSAULT RESULTING IN<br>SERIOUS BODILY INJURY<br>AND ASSAULT WITH | SENTENCE IMPOSED: CBOP 96 months as to<br>counts 14,15 and 16 of the SSI (said terms shall run<br>concurrently); 3 yrs supervised release as to counts<br>14 and 15, 5 yrs as to count 16, said terms shall run<br>concurrently for a total term of 5 yrs; SPA $300;<br>deft in custody |

DANGEROUS WEAPON); 18:2
AIDING AND ABETTING
(15s)

18:1512: WITNESS
TAMPERING; 18:2 AIDING
AND ABETTING
(16s)

SENTENCE IMPOSED: CBOP 96 months as to
counts 14,15 and 16 of the SSI (said terms shall run
concurrently); 3 yrs supervised release as to counts
14 and 15, 5 yrs as to count 16, said terms shall run
concurrently for a total term of 5 yrs; SPA $300;
deft in custody

**Highest Offense Level
(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |

18:1959(a)(5): VIOLENT
CRIMES IN AID OF
RACKETEERING
(CONSPIRACY TO MURDER)
(14)

18:1959(a)(3) and 1959(a)(5):
VIOLENT CRIMES IN AID OF
RACKETEERING
(ATTEMPTED MURDER,
ASSAULT RESULTING IN
SERIOUS BODILY INJURY
AND ASSAULT WITH A
DANGEROUS WEAPON); 18:2
AIDING AND ABETTING
(15)

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |

None

Assigned to: District Judge James
O. Browning

**Defendant (29)**

| **Paul Rivera** | represented by | **Keith R Romero** |
| --- | --- | --- |
| *TERMINATED: 07/25/2019* | | 500 17th Street NW |
| | | Albuquerque, NM 87104 |
| | | (505) 244–7636 |

Fax: (505) 212−0895
Email: keith@keithromerolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (14) | SENTENCE IMPOSED: CBOP−46 months concurrently; Supervised Release−3 years concurrently; SPA−waived |
| 18:1959(a)(3) and 1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (ATTEMPTED MURDER, ASSAULT RESULTING IN SERIOUS BODILY INJURY AND ASSAULT WITH A DANGEROUS WEAPON); 18:2 AIDING AND ABETTING (15) | SENTENCE IMPOSED: CBOP−46 months concurrently; Supervised Release−3 years concurrently; SPA−waived |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge James O. Browning

**Defendant (30)**

| **Shauna Gutierrez**<br>*TERMINATED: 06/12/2019* | represented by | **Chandler C Blair**<br>Law Office of Chandler C. Blair, LLC<br>P.O. Box 27083<br>Albuquerque, NM 87125−7083<br>505−596−5505 |
|---|---|---|

Fax: 505−444−6515
Email: chandler@chandlerblairlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Angela Arellanes**
P.O. Box 1784
Albuquerque, NM 87103
505−247−2417
Fax: 505−242−1878
Email: arellanesattorney@yahoo.com
*TERMINATED: 08/10/2020*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (14s) | SENTENCE IMPOSED: CBOP−36 months concurrent; Supervised Release−3 years concurrent; SPA−$100; deft on conditions of release |
| 18:1959(a)(3) and 1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (ATTEMPTED MURDER, ASSAULT RESULTING IN SERIOUS BODILY INJURY AND ASSAULT WITH DANGEROUS WEAPON); 18:2 AIDING AND ABETTING (15s) | SENTENCE IMPOSED: CBOP−36 months concurrent; Supervised Release−3 years concurrent; SPA−$100; deft on conditions of release |
| 18:1512: WITNESS TAMPERING; 18:2 AIDING AND ABETTING (16s) | SENTENCE IMPOSED: CBOP−36 months concurrent; Supervised Release−3 years concurrent; SPA−$100; deft on conditions of release |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) (14) | |
| 18:1959(a)(3) and 1959(a)(5): VIOLENT CRIMES IN AID OF | |

RACKETEERING
(ATTEMPTED MURDER,
ASSAULT RESULTING IN
SERIOUS BODILY INJURY
AND ASSAULT WITH A
DANGEROUS WEAPON); 18:2
AIDING AND ABETTING
(15)

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge James
O. Browning

**Defendant (31)**

| **Brandy Rodriguez** | represented by | **Alfred D Creecy** |
| --- | --- | --- |
| *TERMINATED: 09/20/2018* | | City of Albuquerque |
| | | PO Box 2248 |
| | | Albuquerque, NM 87103 |
| | | 505–768–4500 |
| | | Fax: 505–768–4525 |
| | | Email: acreecy@cabq.gov |
| | | *TERMINATED: 08/30/2017* |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | |
| | | **Jerry A. Walz** |
| | | Walz and Associates |
| | | 133 Eubank NE |
| | | Albuquerque, NM 87123 |
| | | 505–275–1800 |
| | | Fax: 505–275–1802 |
| | | Email: jerryawalz@walzandassociates.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (CONSPIRACY TO MURDER) | SENTENCE IMPOSED: CBOP–96 months concurrent; Supervised Release–3 years concurrent; SPA–$100; deft in custody |

(14)

18:1959(a)(3) and 1959(a)(5): VIOLENT CRIMES IN AID OF RACKETEERING (ATTEMPTED MURDER, ASSAULT RESULTING IN SERIOUS BODILY INJURY AND ASSAULT WITH DANGEROUS WEAPON); 18:2 AIDING AND ABETTING

SENTENCE IMPOSED: CBOP–96 months concurrent; Supervised Release–3 years concurrent; SPA–$100; deft in custody

(15)

18:1512: WITNESS TAMPERING; 18:2 AIDING AND ABETTING

SENTENCE IMPOSED: CBOP–96 months concurrent; Supervised Release–3 years concurrent; SPA–$100; deft in custody

(16)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                    **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                    **Disposition**

None

---

**Plaintiff**

**USA**                    represented by    **Maria Ysabel Armijo**
United States Attorney's Office
Criminal
200 N. Church Street
Las Cruces, NM 88001
575 522–2304
Fax: 575 522–2391
Email: maria.armijo@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Randy M Castellano**
United States Attorney's Office

Criminal
200 N. Church Street
Las Cruces, NM 88001
575–522–2304
Fax: 575–522–2391
Email: randy.castellano@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Ryan Ellison**
U.S. Attorney's Office
200 N. Church Street
Las Cruces, NM 88001
575–323–5250
Fax: 575–522–2391
Email: ryan.ellison@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew M Beck**
Peifer, Hanson, Mullins & Baker, P.A.
PO Box 25245
Albuquerque, NM 87125–5245
505–247–4800
Fax: 505–243–6458
Email: mbeck@peiferlaw.com
*TERMINATED: 09/26/2018*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|------------|---|------|-------------|
| 12/01/2015 | 2 | | REDACTED INDICTMENT as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 3 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Angel DeLeon. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 4 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Joe Gallegos. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 5 | | |

| | | | |
|---|---|---|---|
| | | | [APPLICABLE PARTY] ARREST Warrant Issued as to Edward Troup. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 6 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Leonard Lujan. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 7 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Billy Garcia. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box.(emr) (Entered: 12/03/2015) |
| 12/01/2015 | 8 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Eugene Martinez. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 9 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Allen Patterson. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 10 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Christopher Chavez. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 11 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Javier Alonso. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 12 | | ARREST Warrant Issued as to Arturo Arnulfo Garcia. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 13 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Benjamin Clark. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 14 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Ruben Hernandez. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 15 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Jerry Armenta. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |

| 12/01/2015 | 16 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Jerry Montoya. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 17 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Mario Rodriguez. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 18 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Timothy Martinez. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 19 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Mauricio Varela. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 20 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Daniel Sanchez. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 21 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Gerald Archuleta. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 22 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Conrad Villegas. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 23 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Anthony Ray Baca. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 24 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Robert Martinez. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 25 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Roy Paul Martinez. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 26 | | [APPLICABLE PARTY] ARREST Warrant Issued as to Christopher Garcia. One certified copy(ies) of Indictment and ARREST Warrant with AO 442 Page 2 delivered to USMS by interoffice mail box. Copy of Indictment and ARREST Warrant placed in USPPS mail box. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 27 | | |

| | | | |
|---|---|---|---|
| | | | SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Anthony Ray Baca. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 28 | | SEALED ORDER by Magistrate Judge Karen B. Molzen granting 27 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Anthony Ray Baca (21) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 29 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Anthony Ray Baca for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 30 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Benjamin Clark. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 31 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 30 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Benjamin Clark (11) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 32 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Benjamin Clark for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 33 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Conrad Villegas. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 34 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 33 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Conrad Villegas (20) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 35 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Conrad Villegas for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 36 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Daniel Sanchez. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 37 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 36 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Daniel Sanchez (18) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 38 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Daniel Sanchez for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 39 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Javier Alonso. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 40 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 39 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Javier Alonso (9) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 41 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Javier Alonso for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 42 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jerry Armenta. (emr) (Entered: 12/03/2015) |

| 12/01/2015 | 43 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 42 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Jerry Armenta (13) (emr) (Entered: 12/03/2015) |
|---|---|---|---|
| 12/01/2015 | 44 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Jerry Armenta for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 45 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jerry Montoya. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 46 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 45 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Jerry Montoya (14) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 47 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Jerry Montoya for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 48 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Leonard Lujan. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 49 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 48 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Leonard Lujan (4) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 50 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Leonard Lujan for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 51 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Mario Rodriguez. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 52 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 51 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Mario Rodriguez (15) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 53 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Mario Rodriguez for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 54 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Mauricio Varela. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 55 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 54 Motion for Writ of Habeas Corpus ad prosequendum as to Mauricio Varela (17) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 56 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Mauricio Varela for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 57 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Robert Martinez. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 58 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 57 SEALED Motion for Writ of Habeas Corpus ad |

| | | | |
|---|---|---|---|
| | | | prosequendum as to Robert Martinez (22) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 59 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Robert Martinez for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 60 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Roy Paul Martinez. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 61 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 60 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Roy Paul Martinez (23) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 62 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Roy Paul Martinez for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 63 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Ruben Hernandez. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 64 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 63 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Ruben Hernandez (12) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 65 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Ruben Hernandez for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 66 | | [APPLICABLE PARTY] SEALED MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Timothy Martinez. (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 67 | | [APPLICABLE PARTY] SEALED ORDER by Magistrate Judge Karen B. Molzen granting 66 SEALED Motion for Writ of Habeas Corpus ad prosequendum as to Timothy Martinez (16) (emr) (Entered: 12/03/2015) |
| 12/01/2015 | 68 | | [APPLICABLE PARTY] SEALED Writ of Habeas Corpus ad Prosequendum Issued as to Timothy Martinez for 12/4/2015 (emr) (Entered: 12/03/2015) |
| 12/01/2015 | | | Judge update in case as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. District Judge Kenneth J. Gonzales added. (emr) (Entered: 12/03/2015) |
| 12/03/2015 | 69 | | [APPLICABLE PARTY] EX PARTE MOTION to Unseal Case by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (emr) (Entered: 12/03/2015) |

| 12/03/2015 | <u>70</u> | | ORDER by Magistrate Judge Karen B. Molzen granting <u>69</u> Motion to Unseal Case as to Angel DeLeon (1), Joe Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24) (emr) (Entered: 12/03/2015) |
| 12/03/2015 | | | Arrest of Gerald Archuleta in District of Tennessee, Chattanooga. (yc) (Entered: 01/13/2016) |
| 12/04/2015 | | | Arrest of Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia (emr) Modified filed date on 12/15/2015 (jn). (Entered: 12/04/2015) |
| 12/04/2015 | | | Set Hearings as to Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia: Initial Appearance set for 12/4/2015 at 09:00 AM in Albuquerque – 320 Rio Grande Courtroom before Magistrate Judge Karen B. Molzen. (emr) (Entered: 12/04/2015) |
| 12/04/2015 | <u>71</u> | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Anthony Ray Baca held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | <u>72</u> | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | <u>73</u> | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez held; Defendants remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | <u>74</u> | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Javier Alonso held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | <u>75</u> | | MOTION to Extend (other) *United States' Motion for Extension of Time to Appoint Learned Counsel* by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, |

| | | | |
|---|---|---|---|
| | | | Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Armijo, Maria) (Entered: 12/04/2015) |
| 12/04/2015 | 76 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Benjamin Clark held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 77 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Ruben Hernandez held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 78 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Jerry Armenta held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 79 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Jerry Montoya, Timothy Martinez held; Defendants remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 80 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Mario Rodriguez, Mauricio Varela, Daniel Sanchez held; Defendants remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 81 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Edward Troup held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 82 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Roy Paul Martinez held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 83 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Conrad Villegas, Christopher Garcia held; Defendants remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 84 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Robert Martinez held; Defendant remanded; Arraignment/Detention to be set in Las Cruces (Recording Info: Rio Grande – FTR) (emr) (Entered: 12/04/2015) |
| 12/04/2015 | 85 | | ORAL ORDER of temporary detention pending hearing as to Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray |

| | | |
|---|---|---|
| | | Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia by Magistrate Judge Karen B. Molzen (emr)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 86 | CJA 20: Appointment of Attorney Brock Benjamin for Joe Gallegos by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 87 | CJA 20: Appointment of Attorney Mario Carreon for Billy Garcia by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 88 | CJA 20: Appointment of Attorney Carlos Ibarra for Eugene Martinez by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 89 | CJA 20: Appointment of Attorney Jeffrey C Lahann for Allen Patterson by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 90 | CJA 20: Appointment of Attorney Orlando Mondragon for Christopher Chavez by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 91 | CJA 20: Appointment of Attorney Noel Orquiz for Javier Alonso by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 92 | CJA 20: Appointment of Attorney Stephen E. Hosford for Benjamin Clark by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 93 | CJA 20: Appointment of Attorney Pedro Pineda for Ruben Hernandez by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 94 | CJA 20: Appointment of Attorney Gary Mitchell for Jerry Armenta by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 95 | CJA 20: Appointment of Attorney Margaret Strickland for Jerry Montoya by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 12/04/2015) |
| 12/04/2015 | 96 | CJA 20: Appointment of Attorney Santiago David Hernandez for Mario Rodriguez by Magistrate Judge Gregory B. Wormuth. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] |

| | | |
|---|---|---|
| | | (Entered: 12/04/2015) |
| 12/04/2015 | 97 | CJA 20: Appointment of Attorney Steven Lorenzo Almanza for Timothy Martinez by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/04/2015) |
| 12/04/2015 | 98 | CJA 20: Appointment of Attorney Mary Stillinger for Mauricio Varela by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/04/2015) |
| 12/04/2015 | 99 | CJA 20: Appointment of Attorney Richard Jewkes for Daniel Sanchez by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/04/2015) |
| 12/04/2015 | 100 | CJA 20: Appointment of Attorney B.J. Crow for Conrad Villegas by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/04/2015) |
| 12/04/2015 | 101 | CJA 20: Appointment of Attorney Jess R. Lilley for Anthony Ray Baca by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/04/2015) |
| 12/04/2015 | 102 | CJA 20: Appointment of Attorney Charles McElhinney for Robert Martinez by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/04/2015) |
| 12/04/2015 | 103 | CJA 20: Appointment of Attorney Marcia J. Milner for Roy Paul Martinez by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/04/2015) |
| 12/04/2015 | 104 | NOTICE OF HEARING as to Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, and Christopher Garcia: Arraignment/Detention set for 12/8/2015 at 11:00 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/04/2015) |
| 12/07/2015 | <u>105</u> | FILED IN ERROR – NOTICE OF ATTORNEY APPEARANCE: Gary Mitchell appearing for Jerry Armenta (Mitchell, Gary) Modified on 12/7/2015 (rh). (Entered: 12/07/2015) |
| 12/07/2015 | <u>106</u> | CJA 7 – Order Terminating Attorney by Magistrate Judge Gregory B. Wormuth; Attorney Jess R. Lilley terminated as to Anthony Ray Baca. (kls) (Entered: 12/07/2015) |
| 12/07/2015 | 107 | |

| | | |
|---|---|---|
| | | CJA 20: Appointment of Attorney Cori Ann Harbour–Valdez for Edward Troup by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/07/2015) |
| 12/07/2015 | 108 | CJA 20: Appointment of Attorney Russell Dean Clark for Leonard Lujan by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/07/2015) |
| 12/07/2015 | 109 | CJA 20: Appointment of Attorney Cesar Pierce–Varela for Anthony Ray Baca by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/07/2015) |
| 12/08/2015 | 110 | MOTION *Defendant's Motion to Seek Authorization for the Use of Electronic Devices at The Detention Facility Wherein Defendant is Detained* by Joe Gallegos. (Benjamin, Brock) (Entered: 12/08/2015) |
| 12/08/2015 | 115 | RESPONSE to Motion by Jerry Montoya re 75 MOTION to Extend (other) *United States' Motion for Extension of Time to Appoint Learned Counsel and Request for Immediate Appointment of Learned Counsel* (Strickland, Margaret) (Entered: 12/08/2015) |
| 12/08/2015 | 117 | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Joe Gallegos (2) Count 1 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 118 | ORDER OF DETENTION as to Joe Gallegos by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 119 | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Edward Troup (3) Count 1,3 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 120 | ORDER OF DETENTION as to Edward Troup by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 121 | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Leonard Lujan (4) Count 1–2 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 122 | ORDER OF DETENTION as to Leonard Lujan by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 123 | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Billy Garcia (5) Count 1–2 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 124 | ORDER OF DETENTION as to Billy Garcia by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 125 | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Eugene Martinez (6) Count 2 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 126 | |

| | | | |
|---|---|---|---|
| | | | ORDER OF DETENTION as to Eugene Martinez by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 127 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Allen Patterson (7) Count 2 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 128 | | ORDER OF DETENTION as to Allen Patterson by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 129 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Christopher Chavez (8) Count 2 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 130 | | ORDER OF DETENTION as to Christopher Chavez by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 131 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Javier Alonso (9) Count 3 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 132 | | ORDER OF DETENTION as to Javier Alonso by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 133 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Benjamin Clark (11) Count 3 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 134 | | ORDER OF DETENTION as to Benjamin Clark by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 135 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Ruben Hernandez (12) Count 3 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 136 | | ORDER OF DETENTION as to Ruben Hernandez by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 137 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Jerry Armenta (13) Count 4,5 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 138 | | ORDER OF DETENTION as to Jerry Armenta by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 139 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Jerry Montoya (14) Count 4,5 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 140 | | ORDER OF DETENTION as to Jerry Montoya by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 141 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Mario Rodriguez (15) Count 4,5 held |

| | | | |
|---|---|---|---|
| | | | on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 142 | | ORDER OF DETENTION as to Mario Rodriguez by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 143 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Timothy Martinez (16) Count 4,5 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 144 | | ORDER OF DETENTION as to Timothy Martinez by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 145 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Mauricio Varela (17) Count 4,5 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 146 | | ORDER OF DETENTION as to Mauricio Varela by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 147 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Daniel Sanchez (18) Count 4,5 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 148 | | ORDER OF DETENTION as to Daniel Sanchez by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 149 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Conrad Villegas (20) Count 6 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 150 | | ORDER OF DETENTION as to Conrad Villegas by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 151 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Anthony Ray Baca (21) Count 4,5,6,7–8 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 152 | | ORDER OF DETENTION as to Anthony Ray Baca by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 153 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Robert Martinez (22) Count 7–8 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 154 | | ORDER OF DETENTION as to Robert Martinez by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 155 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Roy Paul Martinez (23) Count 7–8 held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |

| 12/08/2015 | 156 | | ORDER OF DETENTION as to Roy Paul Martinez by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 12/09/2015) |
|---|---|---|---|
| 12/08/2015 | 157 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention Continued as to Christopher Garcia held on 12/8/2015 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 12/09/2015) |
| 12/08/2015 | 158 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 112 Motion for Order as to Benjamin Clark (11). (kls) (Entered: 12/09/2015) |
| 12/08/2015 | 159 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 114 Motion for Order as to Ruben Hernandez (12). (kls) (Entered: 12/09/2015) |
| 12/08/2015 | 160 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 113 Motion for Order as to Jerry Armenta (13). (kls) (Entered: 12/09/2015) |
| 12/08/2015 | 161 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 111 Motion for Order as to Robert Martinez (22). (kls) (Entered: 12/09/2015) |
| 12/09/2015 | 116 | | NOTICE OF HEARING as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, and Christopher Garcia: Status Conference set for 12/14/2015 at 01:30 PM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. **COUNSEL ARE TO BE PREPARED TO ADDRESS ANY PENDING MOTIONS. DEFENDANTS WILL NOT BE PRESENT AT THIS HEARING.**(cde) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/09/2015) |
| 12/10/2015 | 162 | | CJA 20: Appointment of Attorney Marc M Lowry for Christopher Garcia by Magistrate Judge Gregory B. Wormuth (rh) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/10/2015) |
| 12/10/2015 | 163 | | Arrest Warrant Returned Executed on 12/3/2015 as to Christopher Chavez. (mmm) (Entered: 12/10/2015) |
| 12/10/2015 | 164 | | Arrest Warrant Returned Executed on 12/3/2015 as to Joe Gallegos. (mmm) (Entered: 12/10/2015) |
| 12/10/2015 | 165 | | Arrest Warrant Returned Executed on 12/3/2015 as to Billy Garcia. (mmm) (Entered: 12/10/2015) |
| 12/10/2015 | 166 | | Arrest Warrant Returned Executed on 12/3/2015 as to Eugene Martinez. (mmm) (Entered: 12/10/2015) |
| 12/10/2015 | 167 | | |

|  |  |  | Arrest Warrant Returned Executed on 12/3/2015 as to Allen Patterson. (mmm) (Entered: 12/10/2015) |
| --- | --- | --- | --- |
| 12/10/2015 | 168 |  | Arrest Warrant Returned Executed on 12/3/2015 as to Edward Troup. (mmm) (Entered: 12/10/2015) |
| 12/10/2015 | 170 |  | NOTICE OF HEARING as to Christopher Garcia: Arraignment/Detention set for 12/15/2015 at 9:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/10/2015) |
| 12/14/2015 | 172 |  | MOTION to Withdraw as Attorney by Mario Carreon by Billy Garcia. (Carreon, Mario) (Entered: 12/14/2015) |
| 12/14/2015 | 174 |  | ORDER referring 172 Motion to Withdraw as Attorney to Magistrate Judge Gregory B. Wormuth by District Judge Kenneth J. Gonzales. (tah) (Entered: 12/14/2015) |
| 12/14/2015 | 175 |  | ORDER by District Judge Kenneth J. Gonzales granting 110 Motion to Seek Authorization for the Use of Electronic Devices at the Detention Facility Wherein Defendant is Detained as to Joe Gallegos (2) (cde) Modified to add text only language on 12/15/2015 (cde). [THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/14/2015) |
| 12/14/2015 | 176 |  | ORDER REGARDING CASE BUDGETING by District Judge Kenneth J. Gonzales. (tah) (Entered: 12/14/2015) |
| 12/14/2015 | 177 |  | MINUTE ORDER, pursuant to the direction of Magistrate Judge Gregory B. Wormuth, VACATING the Arraignment/Detention hearing set for 12/15/2015 as to Christopher Garcia; hearings to be reset as soon as possible. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/14/2015) |
| 12/14/2015 | 179 |  | AMENDED ORDER referring 172 Motion to Withdraw as Attorney to Magistrate Judge Gregory B. Wormuth by District Judge Kenneth J. Gonzales. (tah) (Entered: 12/14/2015) |
| 12/14/2015 | 180 |  | Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Status Conference as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia held on 12/14/2015 (Court Reporter: Danna Schutte Everett) (jn) (Entered: 12/14/2015) |
| 12/14/2015 | 181 |  | [APPLICABLE PARTY] EX PARTE Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Status Conference as to Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Benjamin Clark, Ruben Hernandez, Jerry Montoya, Mario |

| | | |
|---|---|---|
| | | Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez held on 12/14/2015 (Court Reporter: Danna Schutte Everett) (jn) (Entered: 12/14/2015) |
| 12/14/2015 | 182 | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Motion HEARING held on 12/14/2015 re 172 MOTION to Withdraw as Attorney by Mario Carreon as to Billy Garcia; Motion granted, Order to be filed; Defendant not present, but in custody. (AUSA: None required; Defense: Mario Carreo) (LCR–Dona Ana @ 2:55 – 2:57 p.m.) (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/14/2015) |
| 12/14/2015 | 184 | ORDER by Magistrate Judge Gregory B. Wormuth granting 172 Motion to Withdraw; Attorney Mario Carreon withdrawn from case as to Billy Garcia (5). (kls) (Entered: 12/14/2015) |
| 12/14/2015 | 185 | Arrest Warrant Returned Executed on 12/04/2015 as to Leonard Lujan. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 186 | Arrest Warrant Returned Executed on 12/04/2015 as to Javier Alonso. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 187 | Arrest Warrant Returned Executed on 12/04/2015 as to Benjamin Clark. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 188 | Arrest Warrant Returned Executed on 12/04/2015 as to Ruben Hernandez. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 189 | Arrest Warrant Returned Executed on 12/04/2015 as to Jerry Armenta. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 190 | Arrest Warrant Returned Executed on 12/04/2015 as to Jerry Montoya. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 191 | Arrest Warrant Returned Executed on 12/04/2015 as to Timothy Martinez. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 192 | Arrest Warrant Returned Executed on 12/04/2015 as to Mauricio Varela. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 193 | Arrest Warrant Returned Executed on 12/04/2015 as to Daniel Sanchez. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 194 | Arrest Warrant Returned Executed on 12/04/2015 as to Conrad Villegas. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 195 | Arrest Warrant Returned Executed on 12/04/2015 as to Anthony Ray Baca. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 196 | Arrest Warrant Returned Executed on 12/04/2015 as to Roy Paul Martinez. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 197 | Arrest Warrant Returned Executed on 12/04/2015 as to Christopher Garcia. (jn) (Entered: 12/15/2015) |
| 12/14/2015 | 200 | |

| | | | |
|---|---|---|---|
| | | | AMENDED CJA 20 Appointment by Magistrate Judge Gregory B. Wormuth; Attorney Marc M. Lowry is now appointed counsel for Anthony Ray Baca. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/15/2015) |
| 12/15/2015 | 198 | | ORDER TO CONFER by District Judge Kenneth J. Gonzales; Defense counsel must consult with all other defense counsel prior to filing a motion in order to ascertain whether any other Defendant wihses to join in that motion; as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia (jn) (Entered: 12/15/2015) |
| 12/15/2015 | 201 | | CJA 20: Appointment of Attorney Amy Sirignano for Christopher Garcia by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/15/2015) |
| 12/15/2015 | | | Arrest of Arturo Arnulfo Garcia in District of Colorado, Denver. (yc) (Entered: 01/11/2016) |
| 12/16/2015 | 202 | | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Gary Mitchell as to Jerry Armenta; Attorney Mitchell is permitted to bill for this case pursuant to the Criminal Justice Act (nunc pro tunc – 12/4/2015). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/16/2015) |
| 12/16/2015 | 207 | | CJA 20: Appointment of Attorney Jason Bowles for Billy Garcia by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/21/2015) |
| 12/17/2015 | 203 | | NOTICE OF HEARING as to Christopher Garcia: Arraignment/Detention set for 12/18/2015 at 11:00 AM in Las Cruces – 360 Dona Ana Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (vrr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/17/2015) |
| 12/18/2015 | 204 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Christopher Garcia (24) Count 8 held on 12/18/2015 (Recording Info: LCR Dona Ana) (bc) (Entered: 12/18/2015) |
| 12/18/2015 | 205 | | FILED IN ERROR: ORDER OF DETENTION as to Christopher Garcia by Magistrate Judge Gregory B. Wormuth (bc) Modified to add text on 12/18/2015 (bc). (Entered: 12/18/2015) |
| 12/18/2015 | 206 | | ORDER OF DETENTION as to Christopher Garcia by Magistrate Judge Gregory B. Wormuth(bc) (Entered: 12/18/2015) |
| 01/06/2016 | 208 | | **FILED IN ERROR** ORDER by District Judge Kenneth J. Gonzales denying 75 Motion for Extension of Time to Appoint Learned Counsel as to |

| | | |
|---|---|---|
| | | Angel DeLeon (1). (tah) Modified to add error text on 1/6/2016 (cde). (Entered: 01/06/2016) |
| 01/06/2016 | 209 | ORDER by District Judge Kenneth J. Gonzales denying 75 Motion to Extend (other) as to Angel DeLeon (1), Joe Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24). (tah) (Entered: 01/06/2016) |
| 01/07/2016 | 210 | Unopposed MOTION Declare Case Complex by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Armijo, Maria) (Entered: 01/07/2016) |
| 01/07/2016 | 211 | ORDER DECLARING CASE COMPLEX By United States District Judge Gonzales, Granting 210 Unopposed MOTION Declare Case Complex filed by USA, as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia (jjs) (Entered: 01/08/2016) |
| 01/11/2016 | | Arrest of Gerald Archuleta (bw) (Entered: 01/11/2016) |
| 01/11/2016 | | Set/Reset Deadlines/Hearings as to Gerald Archuleta: Initial Appearance set for 1/12/2016 at 08:41 AM in Las Cruces – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Lourdes A. Martinez. (bw) (Entered: 01/11/2016) |
| 01/11/2016 | 212 | Rule 5 Documents Received as to Arturo Arnulfo Garcia (yc) (Entered: 01/11/2016) |
| 01/12/2016 | 214 | Clerk's Minutes for proceedings held before Magistrate Judge Lourdes A. Martinez: Initial Appearance as to Gerald Archuleta held on 1/12/2016; Defendant in custody; Arraignment/Detention hearing to be set at a later date. (Recording Info: LCR Sierra Blanca) (jv) (Entered: 01/12/2016) |
| 01/12/2016 | 215 | Arrest Warrant Returned Executed on 12/3/15 as to Gerald Archuleta. (yc) (Entered: 01/12/2016) |
| 01/12/2016 | 216 | CJA 20: Appointment of Attorney George A Harrison for Gerald Archuleta by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/12/2016) |
| 01/12/2016 | 217 | NOTICE OF HEARING as to Gerald Archuleta: Arraignment/Detention set |

| | | |
|---|---|---|
| | | for 1/21/2016 at 11:15 AM in Las Cruces, NM – 460 Organ Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/12/2016) |
| 01/12/2016 | 219 | CJA 30: Appointment of Attorney Jerry Daniel Herrera as Learned Counsel for Benjamin Clark in Death Penalty Proceedings by District Judge Kenneth J. Gonzales. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/13/2016) |
| 01/12/2016 | 220 | CJA 30: Appointment of Attorney Theresa M Duncan as Learned Counsel for Anthony Ray Baca in Death Penalty Proceedings by District Judge Kenneth J. Gonzales. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/13/2016) |
| 01/13/2016 | 218 | Rule 5 Documents Received as to Gerald Archuleta (yc) (Entered: 01/13/2016) |
| 01/13/2016 | 221 | [APPLICABLE PARTY] SEALED EX PARTE ORDER APPROVING A PRELIMINARY BUDGET IN A CAPITAL PROSECUTION by District Judge Kenneth J. Gonzales AND Chief Judge (or delegate)of the U.S. Court of Appeals as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca (yc) (Entered: 01/13/2016) |
| 01/13/2016 | 222 | FILED IN ERROR – NOTICE *OF UNAVAILABILITY* by Benjamin Clark as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia (Herrera, Jerry) Modified text on 1/14/2016 (ln). (Entered: 01/13/2016) |
| 01/14/2016 | 223 | NOTICE *OF UNAVAILABILITY* by Benjamin Clark (Herrera, Jerry) (Entered: 01/14/2016) |
| 01/14/2016 | 224 | [APPLICABLE PARTY] SEALED EX PARTE Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Status Conference as to Roy Paul Martinez held on 1/14/2016 (Court Reporter: Danna Schutte Everett) (yc) (Entered: 01/14/2016) |
| 01/14/2016 | 225 | ORDER by District Judge Kenneth J. Gonzales setting a Status Conference for 1/20/2016 at 2:00 PM in Las Cruces – 420 Mimbres Courtroom (North Tower), Albuquerque – 380–4 ADR Conference Room and telephonic before District Judge Kenneth J. Gonzales. (tah) (Entered: 01/14/2016) |
| 01/14/2016 | | Arrest of Arturo Arnulfo Garcia. (kls) (Entered: 01/14/2016) |
| 01/14/2016 | | Set/Reset Hearings as to Arturo Arnulfo Garcia: Initial Appearance set for 1/15/2016 at 08:30 AM in Las Cruces – 340 Sierra Blanca Courtroom (North |

| | | | |
|---|---|---|---|
| | | | Tower) before Magistrate Judge Lourdes A. Martinez. (kls) (Entered: 01/14/2016) |
| 01/15/2016 | 226 | | ORDER OF DETENTION as to Arturo Arnulfo Garcia by U.S. Magistrate Judge Craig B. Shaffer from the District of Colorado (yc) (Entered: 01/15/2016) |
| 01/15/2016 | 227 | | Clerk's Minutes for proceedings held before Magistrate Judge Lourdes A. Martinez: Initial Appearance as to Arturo Arnulfo Garcia held on 1/15/2016; Defendant in custody; Arraignment/Detention hearing to be set at a later date. (Recording Info: LCR Sierra Blanca) (jv) (Entered: 01/15/2016) |
| 01/15/2016 | 228 | | Arrest Warrant Returned Executed on 12/15/15 as to Arturo Arnulfo Garcia. (yc) (Entered: 01/15/2016) |
| 01/15/2016 | 229 | | CJA 20: Appointment of Attorney Billy R. Blackburn for Arturo Arnulfo Garcia by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/15/2016) |
| 01/15/2016 | 230 | | NOTICE OF HEARING as to Arturo Arnulfo Garcia: Arraignment set for 1/21/2016 at 1:30 PM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/15/2016) |
| 01/20/2016 | 232 | | [APPLICABLE PARTY] EX PARTE Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Motion Hearing as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia held on 1/20/2016 re 231 Ex Parte MOTION to Appoint Expert *COORDINATING DISCOVERY ATTORNEY, RUSSELL M. AOKI FOR THE BENEFIT OF ALL COURT–APPOINTED DEFENSE COUNSEL* filed by Christopher Garcia (Court Reporter: Danna Schutte Everett) (yc) (Entered: 01/20/2016) |
| 01/20/2016 | 233 | | Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Status Conference as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia held on 1/20/2016 (Court Reporter: Danna Schutte Everett) (yc) (Entered: 01/20/2016) |
| 01/21/2016 | 235 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 234 Motion for Order as to Roy Paul Martinez (23). (kls) (Entered: 01/21/2016) |
| 01/21/2016 | 246 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Arturo Arnulfo Garcia (10) Count 3 held on |

| | | |
|---|---|---|
| | | 1/21/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 01/22/2016) |
| 01/21/2016 | <u>247</u> | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment/Detention as to Gerald Archuleta (19) Count 6 held on 1/21/2016 (Recording Info: LCR Organ) (vh) (Entered: 01/22/2016) |
| 01/21/2016 | <u>248</u> | ORDER OF DETENTION as to Gerald Archuleta by Magistrate Judge Gregory B. Wormuth (vh) (Entered: 01/22/2016) |
| 01/22/2016 | 236 | ORDER by District Judge Kenneth J. Gonzales authorizing CJA Appointment of Attorney Jerry Daniel Herrera as Learned Counsel for Defendant Benjamin Clark (nunc pro tunc – 1/12/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
| 01/22/2016 | 237 | ORDER by District Judge Kenneth J. Gonzales authorizing CJA Appointment of Theresa Duncan as Learned Counsel for Defendant Anthony Ray Baca (nunc pro tunc – 1/12/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
| 01/22/2016 | 238 | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Nathan Chambers as Learned Counsel for Defendant Javier Alonso; Attorney Chambers is permitted to bill for this case pursuant to the Criminal Justice Act (nunc pro tunc – 1/15/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
| 01/22/2016 | 239 | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Larry Hammond as Learned Counsel for Defendant Jerry Montoya; Attorney Hammond is permitted to bill for this case pursuant to the Criminal Justice Act (nunc pro tunc – 1/15/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
| 01/22/2016 | 240 | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney David Lane as Learned Counsel for Defendant Eugene Martinez; Attorney Lane is permitted to bill for this case pursuant to the Criminal Justice Act (nunc pro tunc – 1/15/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
| 01/22/2016 | 241 | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney David Lindsey as Learned Counsel for Defendant Mauricio Varela; Attorney Lindsey is permitted to bill for this case pursuant to the Criminal Justice Act (nunc pro tunc – 1/15/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
| 01/22/2016 | 242 | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Joseph Green as Learned Counsel for Defendant Billy Garcia; Attorney Green is permitted to bill for this case pursuant to the Criminal Justice Act. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |

| 01/22/2016 | 243 | | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Richard Sindel as Learned Counsel for Defendant Joe Gallegos; Attorney Sindel is permitted to bill for this case pursuant to the Criminal Justice Act. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
|---|---|---|---|
| 01/22/2016 | 244 | | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Jacqueline Walsh as Learned Counsel for Defendant Timothy Martinez; Attorney Walsh is permitted to bill for this case pursuant to the Criminal Justice Act. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
| 01/22/2016 | 245 | | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Amy Jacks as Learned Counsel for Defendant Daniel Sanchez; Attorney Jacks is permitted to bill for this case pursuant to the Criminal Justice Act. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/22/2016) |
| 01/22/2016 | 249 | | ORDER by District Judge Kenneth J. Gonzales granting 231 Motion to Appoint Expert (coordinating discovery attorney) as to Christopher Garcia (24) (yc) (Entered: 01/22/2016) |
| 01/22/2016 | 250 | | SCHEDULING ORDER as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia by District Judge Kenneth J. Gonzales. Discovery due by 4/15/2016; Motions due 6/10/2016; Jury Selection set for 10/4/2016 at 09:00 AM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. (tah) (Entered: 01/22/2016) |
| 01/22/2016 | | | Jury Selection/Trial set for 10/4/2016 at 09:00 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (dmw) (Entered: 09/08/2016) |
| 01/27/2016 | 251 | | NOTICE OF ATTORNEY APPEARANCE: Joseph Libory Green appearing for Billy Garcia (Green, Joseph) (Entered: 01/27/2016) |
| 01/27/2016 | 252 | | NOTICE OF ATTORNEY APPEARANCE: Larry A. Hammond appearing for Jerry Montoya (Hammond, Larry) Modified Security on 1/28/2016 (jjs). (Entered: 01/27/2016) |
| 01/27/2016 | 253 | | [APPLICABLE PARTY] EX PARTE NOTICE OF HEARING as to Christopher Garcia: Status Conference set for 1/29/2016 at 10:00 AM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. (cde) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/27/2016) |
| 01/27/2016 | 254 | | |

| | | |
|---|---|---|
| | | [APPLICABLE PARTY] AMENDED NOTICE OF HEARING as to Christopher Garcia: Status Conference set for 1/29/2016 at 10:00 AM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. **Counsel may call Judge Gonzales' Meet Me line at (505) 348–2354 to be connected to the proceedings.** (cde) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/27/2016) |
| 01/27/2016 | | Attorney update in case as to Jerry Montoya. Attorney Larry A. Hammond for Jerry Montoya added. (jjs) (Entered: 01/28/2016) |
| 01/27/2016 | | Attorney update in case as to Billy Garcia. Attorney Joseph Libory Green for Billy Garcia added. (jjs) (Entered: 01/28/2016) |
| 01/28/2016 | 255 | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Patrick J. Burke as Learned Counsel for Defendant Edward Troup; Attorney Burke is permitted to bill for this case pursuant to the Criminal Justice Act. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/28/2016) |
| 01/29/2016 | 256 | NOTICE OF ATTORNEY APPEARANCE: Amy E. Jacks appearing for Daniel Sanchez (Jacks, Amy) (Entered: 01/29/2016) |
| 01/29/2016 | 257 | [APPLICABLE PARTY] EX PARTE Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Status Conference as to Christopher Garcia held on 1/29/2016 (Court Reporter: Danna Schutte Everett) (jn) (Entered: 01/29/2016) |
| 01/29/2016 | | Attorney update in case as to Daniel Sanchez. Attorney Amy E. Jacks for Daniel Sanchez added. (jjs) (Entered: 02/01/2016) |
| 02/01/2016 | 259 | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 258 Motion for Order as to Gerald Archuleta (19). (kls) (Entered: 02/01/2016) |
| 02/04/2016 | 261 | CJA 7 – Order Terminating Attorney Carlos Ibarra as to Defendant Eugene Martinez by District Judge Kenneth J. Gonzales. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/04/2016 | 262 | CJA 20: Appointment of Attorney Robert J. Gorence for Eugene Martinez by District Judge Kenneth J. Gonzales. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 260 | [CASE PARTICIPANTS] MOTION for Protective Order by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Armijo, Maria) (Entered: 02/05/2016) |
| 02/05/2016 | 263 | |

| | | |
|---|---|---|
| | | NOTICE OF HEARING ON MOTION in case as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, and Christopher Garcia <u>260</u> MOTION for Protective Order: Motion Hearing set for 2/8/2016 at 11:30 AM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. **Defense counsel shall designate no more than 2 attorneys to speak for all the defendants in CR 15–4268, CR 15–4269 and CR 15–4275. One or both attorneys may appear telephonically. Counsel may call the Judge Gonzales' Meet Me line at (505) 348–2354. Due to the limited number of lines, the 2 designated defense attorneys and the Government need to be available for the hearing.**(cde) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 264 | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney Phillip A. Linder as Learned Counsel for Defendant Allen Patterson; Attorney Linder is permitted to bill for this case pursuant to the Criminal Justice Act. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 265 | CJA 30: Appointment of Attorney Richard Sindel for Joe Gallegos in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/22/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 266 | CJA 30: Appointment of Attorney Patrick J. Burke for Edward Troup in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/28/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 267 | CJA 30: Appointment of Joseph Libory Green for Billy Garcia in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/22/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | <u>268</u> | [APPLICABLE PARTY] EX PARTE ORDER Regarding Travel Authorization Service Provider Hourly Rates by District Judge Kenneth J. Gonzales as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca (jn) (Entered: 02/05/2016) |
| 02/05/2016 | 269 | CJA 30: Appointment of Attorney David A. Lane for Eugene Martinez in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/15/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] |

| | | | |
|---|---|---|---|
| | | | (Entered: 02/05/2016) |
| 02/05/2016 | 270 | | CJA 30: Appointment of Attorney Phillip A. Linder for Allen Patterson in Death Penalty Proceedings by District Judge Kenneth J. Gonzales. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 271 | | CJA 30: Appointment of Attorney Nathan D. Chambers for Javier Alonso in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/15/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 272 | | CJA 30: Appointment of Attorney Larry A. Hammond for Jerry Montoya in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/15/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 273 | | CJA 30: Appointment of Attorney Jacqueline K. Walsh for Timothy Martinez in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/22/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 274 | | CJA 30: Appointment of Attorney David Lindsey for Mauricio Varela in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/15/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/05/2016 | 275 | | CJA 30: Appointment of Attorney Amy E. Jacks for Daniel Sanchez in Death Penalty Proceedings by District Judge Kenneth J. Gonzales (nunc pro tunc – 1/22/2016). (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/05/2016) |
| 02/07/2016 | 276 | | MOTION to Vacate *and for Extension of Time* by Javier Alonso as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Chambers, Nathan) (Entered: 02/07/2016) |
| 02/08/2016 | 277 | | Joint MOTION for Protective Order *Defendants' Joint Motion for Protective Order Concerning All Defendants Professional Visits and Correspondence* by Anthony Ray Baca as to Joe Gallegos, Edward Troup, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Jerry Armenta, Jerry Montoya, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Christopher Garcia. (Attachments: # 1 Exhibit 1)(Duncan, Theresa) (Entered: 02/08/2016) |
| 02/08/2016 | 278 | | ORDER by District Judge Kenneth J. Gonzales VACATING Motion Hearing set for 2/8/2016 at 11:30 AM as to Angel DeLeon, Joe Gallegos, Edward |

| | | | |
|---|---|---|---|
| | | | Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia (cde) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] Modified to add text only text on 2/8/2016 (yc). (Entered: 02/08/2016) |
| 02/08/2016 | 279 | | [CASE PARTICIPANTS] ORDER by District Judge Kenneth J. Gonzales as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia re 260 MOTION for Protective Order filed by USA; Government is to Supplement Motion by Feb 12, 2016; Defense Counsel is to file a joint response by Feb 17, 2016. (jjs) (Entered: 02/08/2016) |
| 02/12/2016 | 280 | | [CASE PARTICIPANTS] APPENDIX/SUPPLEMENT re 260 MOTION for Protective Order *United States' Sealed Supplement to Sealed Motion for Protective Order* by USA (Armijo, Maria) (Entered: 02/12/2016) |
| 02/17/2016 | 281 | | [CASE PARTICIPANTS] MEMORANDUM in Opposition by Daniel Sanchez as to Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Ruben Hernandez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Christopher Garcia re 260 MOTION for Protective Order (Attachments: # 1 Exhibit A)(Jacks, Amy) (Entered: 02/17/2016) |
| 02/17/2016 | 282 | | NOTICE *of Unavailability of Counsel for Defendant Christopher Garcia* by Christopher Garcia (Sirignano, Amy) (Entered: 02/17/2016) |
| 02/19/2016 | 283 | | [CASE PARTICIPANTS] NOTICE *of Joinder to Defendants' Joint Opposition to Government's Sealed Motion for Proposed Protective Order* by Jerry Montoya (Strickland, Margaret) Modified restriction on 2/22/2016 (jn). (Entered: 02/19/2016) |
| 02/22/2016 | 284 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia re 277 Joint MOTION for Protective Order *Defendants' Joint Motion for Protective Order Concerning All Defendants Professional Visits and Correspondence* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Supplement)(Armijo, Maria) (Entered: 02/22/2016) |
| 02/25/2016 | 285 | | NOTICE OF HEARING ON MOTION in case as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, |

| | | |
|---|---|---|
| | | Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia <u>260</u> MOTION for Protective Order , 277 Joint MOTION for Protective Order *Defendants' Joint Motion for Protective Order Concerning All Defendants Professional Visits and Correspondence* : Motion Hearing set for 3/3/2016 at 01:30 PM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. (yc) Modified text on 3/2/2016 (yc). (Entered: 02/25/2016) |
| 02/25/2016 | 286 | ORDER by District Judge Kenneth J. Gonzales allowing Attorney Joseph Green, learned counsel for Billy Garcia (5), to withdraw as counsel, as he has been appointed to the state court bench in Missouri. (cde) [THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/25/2016) |
| 02/25/2016 | 287 | CJA 7 – Order Terminating Attorney by District Judge Kenneth J. Gonzales: Terminating Learned Counsel appointment of Attorney Joseph Libory Green as to Billy Garcia. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/25/2016) |
| 02/25/2016 | 288 | ORDER by District Judge Kenneth J. Gonzales authorizing a special CJA Appointment for Attorney James A. Castle as Learned Counsel for Defendant Billy Garcia; Attorney Castle is permitted to bill for this case pursuant to the Criminal Justice Act. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/25/2016) |
| 02/25/2016 | 289 | CJA 30: Appointment of Attorney James A. Castle for Billy Garcia in Death Penalty Proceedings by District Judge Kenneth J. Gonzales. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/25/2016) |
| 02/29/2016 | <u>290</u> | MOTION to Unseal Document *United States' Sealed Motion to Unseal Court Hearing* by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Armijo, Maria) (Entered: 02/29/2016) |
| 02/29/2016 | <u>291</u> | [CASE PARTICIPANTS] MOTION for Order *for Due Process at Hearing* by Eugene Martinez as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Lane, David) (Entered: 02/29/2016) |
| 02/29/2016 | <u>292</u> | MOTION for Psychiatric/Psychological Exam *for Determination of Mental* |

| | | | |
|---|---|---|---|
| | | | *Competency to Stand Trial* by Eugene Martinez. (Gorence, Robert) (Entered: 02/29/2016) |
| 02/29/2016 | 293 | | [CASE PARTICIPANTS] NOTICE *of Sealed Exhibit* by Eugene Martinez re 292 MOTION for Psychiatric/Psychological Exam *for Determination of Mental Competency to Stand Trial* (Gorence, Robert) (Entered: 02/29/2016) |
| 02/29/2016 | 294 | | [CASE PARTICIPANTS] RESPONSE to Motion by Daniel Sanchez re 290 MOTION to Unseal Document *United States' Sealed Motion to Unseal Court Hearing* (Jacks, Amy) (Entered: 02/29/2016) |
| 03/02/2016 | 295 | | CONSOLIDATED ORDER UNSEALING HEARING by District Judge Kenneth J. Gonzales granting 290 Motion to Unseal Document as to Angel DeLeon (1), Joe Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24) (yc) (Entered: 03/02/2016) |
| 03/02/2016 | 296 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Anthony Ray Baca as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia re 277 Joint MOTION for Protective Order *Defendants' Joint Motion for Protective Order Concerning All Defendants Professional Visits and Correspondence* (Duncan, Theresa) (Entered: 03/02/2016) |
| 03/03/2016 | 297 | | Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Motion Hearing as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia held on 3/3/2016 re 260 MOTION for Protective Order filed by USA, 277 Joint MOTION for Protective Order *Defendants' Joint Motion for Protective Order Concerning All Defendants Professional Visits and Correspondence* filed by Anthony Ray Baca, 291 MOTION for Order *for Due Process at Hearing* filed by Eugene Martinez, AND 292 MOTION for Psychiatric/Psychological Exam *for Determination of Mental Competency to Stand Trial* filed by Eugene Martinez, (Court Reporter: Danna Schutte Everett) (yc) (Entered: 03/04/2016) |
| 03/03/2016 | 298 | | ORDER by District Judge Kenneth J. Gonzales granting 292 Motion for Psychiatric/Psychological Exam as to Eugene Martinez (6) (yc) (Entered: 03/04/2016) |
| 03/07/2016 | 299 | | |

| | | |
|---|---|---|
| | | [CASE PARTICIPANTS] SEALED ORDER On Defendants' Motion for Protective Order (Doc 277) by District Judge Kenneth J. Gonzales denying 277 Motion for Protective Order as to Joe Gallegos (2), Edward Troup (3), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Jerry Armenta (13), Jerry Montoya (14), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Christopher Garcia (24) (jn) (Entered: 03/07/2016) |
| 03/07/2016 | 300 | [CASE PARTICIPANTS] SEALED ORDER on Defendants' Motion For Due Process at Hearing (Doc 291) by District Judge Kenneth J. Gonzales denying 291 Motion for Order as to Angel DeLeon (1), Joe Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24) (jn) (Entered: 03/07/2016) |
| 03/08/2016 | 301 | [CASE PARTICIPANTS] SEALED CONSOLIDATED ORDER TO SHOW CAUSE ON SEALED DOCUMENTS by District Judge Kenneth J. Gonzales as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia (jn) (Entered: 03/08/2016) |
| 03/08/2016 | 302 | [CASE PARTICIPANTS] BRIEF by Jerry Montoya as to Joe Gallegos, Edward Troup, Jerry Montoya, Timothy Martinez, Christopher Garcia (Strickland, Margaret) (Entered: 03/08/2016) |
| 03/09/2016 | 303 | [CASE PARTICIPANTS] ASSOCIATION of Attorney Licensed Outside the District for Defendant Billy Garcia by James A. Castle (Association Dues – Online Payment) (Castle, James) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/09/2016) |
| 03/09/2016 | 304 | ORDER TO SHOW CAUSE for Counsel as to Eugene Martinez, Christopher Garcia by District Judge Kenneth J. Gonzales Show Cause Hearing set for 3/11/2016 at 10:00 AM in Las Cruces – Telephonic Hearing/Conference before District Judge Kenneth J. Gonzales. Counsel are to call (505) 348–2354 to appear telephonically before the Court(yc) (Entered: 03/09/2016) |
| 03/09/2016 | 305 | Association Dues: $ 100 paid, receipt number # 1084–4464204 re: 303 Association of Attorney Licensed Outside the District, filed by Defendant Billy Garcia (mmm) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/10/2016) |
| 03/10/2016 | 306 | Ex Parte MOTION Determine whether Robert Gorence has an actual or potential conflict of interest by USA as to Eugene Martinez. (Attachments: # |

| | | | |
|---|---|---|---|
| | | | 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Armijo, Maria) (Entered: 03/10/2016) |
| 03/11/2016 | 308 | | STIPULATED PROTECTIVE ORDER by District Judge Kenneth J. Gonzales granting 260 Motion for Protective Order as to Angel DeLeon (1), Joe Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24) (jn) (Entered: 03/11/2016) |
| 03/11/2016 | 309 | | Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Show Cause Hearing as to Eugene Martinez, Christopher Garcia held on 3/11/2016 (Court Reporter: Danna Schutte Everett) (jn) (Entered: 03/11/2016) |
| 03/11/2016 | 310 | | NOTICE OF HEARING ON MOTION in case as to Eugene Martinez, Christopher Garcia Motion Hearing and Order To Show Cause set for 3/22/2016 at 01:30 PM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. (jn) Modified text on 3/11/2016 (jn). (Entered: 03/11/2016) |
| 03/11/2016 | 311 | | NOTICE OF HEARING ON MOTION in case as to Leonard Lujan, Billy Garcia Motion Hearing set for 3/22/2016 at 03:00 PM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. (jn) (Entered: 03/11/2016) |
| 03/14/2016 | 312 | | ORDER by District Judge Kenneth J. Gonzales WITHDRAWING 308 Stipulated Protective Order (cde) [THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/14/2016) |
| 03/14/2016 | 313 | | PROTECTIVE ORDER by District Judge Kenneth J. Gonzales re 260 MOTION for Protective Order filed by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia (jn) (Entered: 03/14/2016) |
| 03/14/2016 | 314 | | TRANSCRIPT of Status Conference as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia held on December 14, 2015, before District Judge Kenneth J. Gonzales. Court Reporter: Danna Schutte Everett, Telephone number (575)528–1656. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be |

| | | | |
|---|---|---|---|
| | | | obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/21/2016. Redaction Request due 4/4/2016. Redacted Transcript Deadline set for 4/14/2016. Release of Transcript Restriction set for 6/13/2016.(dse) (Entered: 03/14/2016) |
| 03/15/2016 | 315 | | REPLY by Daniel Sanchez *Regarding Court's Ability to Subject Materials Obtained Independently of this Court's Process to Court's Protective Order (Doc. 313)* (Attachments: # 1 Exhibit news article)(Jacks, Amy) (Entered: 03/15/2016) |
| 03/15/2016 | 316 | | [CASE PARTICIPANTS] RESPONSE by Daniel Sanchez *to Court's Sealed Consolidated Order to Show Cause on Sealed Documents (Doc. 301)* (Attachments: # 1 Exhibit Proposed Redacted Exhibit)(Jacks, Amy) (Entered: 03/15/2016) |
| 03/17/2016 | 317 | | [CASE PARTICIPANTS] RESPONSE by Christopher Garcia re 301 Order,, *SEALED, TO COURTS SEALED CONSOLIDATED ORDER TO SHOW CAUSE ON SEALED DOCUMENTS* (Sirignano, Amy) (Entered: 03/17/2016) |
| 03/18/2016 | 319 | | NOTICE *(Response to United States' Ex Parte Sealed Motion Regarding Attorney Conflict (Doc. 306))* by Eugene Martinez (Gorence, Robert) (Entered: 03/18/2016) |
| 03/21/2016 | 321 | | [CASE PARTICIPANTS] BRIEF by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia 301 Order,, (Armijo, Maria) (Entered: 03/21/2016) |
| 03/21/2016 | 322 | | TRANSCRIPT of Motions For Protective Orders Hearing as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia held on March 3, 2016, before District Judge Kenneth J. Gonzales. Court Reporter: Danna Schutte Everett, Telephone number (575)528–1656. Transcript may be viewed at the |

| | | | |
|---|---|---|---|
| | | | Clerk's Office public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/28/2016. Redaction Request due 4/11/2016. Redacted Transcript Deadline set for 4/21/2016. Release of Transcript Restriction set for 6/20/2016.(dse) (Entered: 03/21/2016) |
| 03/22/2016 | 323 | | MOTION Termination of Appointment of Learned Counsel re 274 CJA Appointment, by Mauricio Varela. (Stillinger, Mary) (Entered: 03/22/2016) |
| 03/22/2016 | 324 | | [APPLICABLE PARTY] SEALED Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Motion Hearing as to Leonard Lujan, Billy Garcia held on 3/22/2016 re 307 Ex Parte MOTION Whether defense counsel, Jason Bowles, has an actual or potential conflict filed by USA (Court Reporter: Danna Schutte Everett) (jjs) (Entered: 03/23/2016) |
| 03/22/2016 | 325 | | Clerk's Minutes for proceedings held before District Judge Kenneth J. Gonzales: Show Cause/Motion Hearings as to Eugene Martinez, Christopher Garcia held on 3/22/2016, re 306 Ex Parte MOTION Determine whether Robert Gorence has an actual or potential conflict of interest filed by USA (Court Reporter: Danna Schutte Everett) (jjs) (Entered: 03/23/2016) |
| 03/23/2016 | 326 | | [CASE PARTICIPANTS] First MOTION for Order by Billy Garcia. (Castle, James) (Entered: 03/23/2016) |
| 03/23/2016 | 327 | | [CASE PARTICIPANTS] First MOTION for Order by Billy Garcia. (Castle, James) (Entered: 03/23/2016) |
| 03/23/2016 | 328 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 302 Brief, 315 Reply by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Armijo, Maria) (Entered: 03/23/2016) |
| 03/23/2016 | 329 | | [APPLICABLE PARTY] SEALED EX PARTE NOTICE OF HEARING ON MOTION in case as to Mauricio Varela 323 MOTION Termination of Appointment of Learned Counsel re 274 CJA Appointment: Telephonic Motion Hearing set for 3/28/2016 at 11:30 AM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge Kenneth J. Gonzales. |

|  |  |  | **Counsel are to call Judge Gonzales' Meet Me line at (505) 348–2354 to be connected to the proceedings. Defendant will not be present for the hearing.** (cde) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/23/2016) |
|---|---|---|---|
| 03/23/2016 |  |  | [APPLICABLE PARTY] Motion hearing as to Mauricio Varela re 323 MOTION Termination of Appointment of Learned Counsel set for 3/28/2016 at 11:30 AM in Las Cruces – Telephonic Hearing/Conference before District Judge Kenneth J. Gonzales. (dc) (Entered: 03/24/2016) |
| 03/23/2016 | 334 |  | ORDER by District Judge Kenneth J. Gonzales granting 328 Motion for Extension of Time to File Response/Reply as to Angel DeLeon (1), Joe Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24) (jjs) (Entered: 03/24/2016) |
| 03/24/2016 | 330 |  | ORDER UNSEALING CERTAIN DOCUMENTS by District Judge Kenneth J. Gonzales as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia re 304 Order to Show Cause, 306 Ex Parte MOTION Determine whether Robert Gorence has an actual or potential conflict of interest filed by USA, and 319 Notice (Other) filed by Eugene Martinez (jjs) (Entered: 03/24/2016) |
| 03/24/2016 | 331 |  | ORDER ON ORAL MOTION TO CONTINUE HEARING by District Judge Kenneth J. Gonzales as to Leonard Lujan and Billy Garcia (jjs) (Entered: 03/24/2016) |
| 03/24/2016 | 332 |  | ORDER ON ATTORNEY SUBSTITUTION by District Judge Kenneth J. Gonzales granting 306 Motion as to Eugene Martinez (6) (jjs) (Entered: 03/24/2016) |
| 03/24/2016 | 333 |  | [APPLICABLE PARTY] SEALED ORDER ON ATTORNEY SUBSTITUTION by District Judge Kenneth J. Gonzales granting 307 Motion as to Billy Garcia (5) (jjs) (Entered: 03/24/2016) |
| 03/24/2016 |  |  | Attorney update in case as to Eugene Martinez. Attorney Robert J. Gorence terminated. (jjs) (Entered: 03/24/2016) |
| 03/24/2016 |  |  | Attorney update in case as to Billy Garcia. Attorney Jason Bowles terminated. (jjs) (Entered: 03/24/2016) |
| 03/24/2016 | 335 |  | ORDER OF REFERENCE by District Judge Kenneth J. Gonzales to Magistrate Judge Carmen E. Garza re: 323 Motion for Termination of Appointment of Learned Counsel as to Mauricio Varela (jjs) Modified text on 3/25/2016 (jjs). (Entered: 03/24/2016) |

| 03/24/2016 | 336 | | AMENDED ORDER FOR AN EVALUATION TO DETERMINE COMPETENCY by District Judge Kenneth J. Gonzales as to Eugene Martinez (jjs) (Entered: 03/24/2016) |
|---|---|---|---|
| 03/24/2016 | 337 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge Kenneth J. Gonzales VACATING Telephonic Motion Hearing set for 3/28/2016 at 11:30 re 323 MOTION Termination of Appointment of Learned Counsel re 274 CJA Appointment: as to Mauricio Varela. This matter will be reset by U.S. Magistrate Judge Carmen E. Garza. (cde) [THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/24/2016) |
| 03/25/2016 | 338 | | LETTER by the Court as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, and Christopher Garcia (cde) (Entered: 03/25/2016) |
| 03/25/2016 | 339 | | NOTICE *of Objection to Protective Order* by Javier Alonso as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia re 313 Order,, (Chambers, Nathan) (Entered: 03/25/2016) |
| 03/25/2016 | 340 | | Unopposed MOTION to Extend (other) *Deadline to File Notice* by USA as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Armijo, Maria) (Entered: 03/25/2016) |
| 03/25/2016 | 343 | | CJA 30: Appointment of Attorney Robert R. Cooper for Billy Garcia in Death Penalty Proceedings by District Judge Kenneth J. Gonzales. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/28/2016) |
| 03/28/2016 | 342 | | MOTION for Order *re Compliance with Rules* by Javier Alonso as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia. (Chambers, Nathan) (Entered: 03/28/2016) |
| 03/28/2016 | 344 | | [CASE PARTICIPANTS] ORDER Granting Briefing Schedule Regarding Issue of Recusal by District Judge Kenneth J. Gonzales granting 326 Motion |

| | | | |
|---|---|---|---|
| | | | for Order as to Billy Garcia (5) (jn) (Entered: 03/28/2016) |
| 03/28/2016 | 345 | | [CASE PARTICIPANTS] ORDER For Expedited Partial Transcript of March 22, 2016 Hearing and Authority to Disseminate to Counsel For All Defendants by District Judge Kenneth J. Gonzales granting 327 Motion for Order as to Billy Garcia (5) (jn) (Entered: 03/28/2016) |
| 03/28/2016 | 346 | | ORDER Granting Motion To Extend Deadline To File Notice by District Judge Kenneth J. Gonzales granting 340 Motion to Extend (other) as to Angel DeLeon (1), Joe Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24) (jn) (Entered: 03/28/2016) |
| 03/29/2016 | 347 | | CJA 30: Appointment of Attorney Douglas E Couleur for Eugene Martinez in Death Penalty Proceedings by District Judge Kenneth J. Gonzales. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/29/2016) |
| 03/29/2016 | 348 | | [APPLICABLE PARTY] SEALED EX PARTE NOTICE OF HEARING ON MOTION in case as to Mauricio Varela 323 MOTION Termination of Appointment of Learned Counsel re 274 CJA Appointment: The Telephonic Motion Hearing is set for 3/30/2016 at 02:00 PM before Magistrate Judge Carmen E. Garza. [Counsel shall call Judge Garza's Meet Me line at 505.348.2693 to be connected to the proceedings.] Defendant will not be present for the hearing. (mm) (Entered: 03/29/2016) |
| 03/29/2016 | | | [APPLICABLE PARTY] Telephonic Motion Hearing set for 3/30/2016 at 02:00 PM before Magistrate Judge Carmen E. Garza, as to Mauricio Varela on 323 MOTION Termination of Appointment of Learned Counsel re 274 CJA Appointment. Defendant will not be present for the hearing. (dc) (Entered: 03/29/2016) |
| 03/30/2016 | 351 | | PLEASE TAKE NOTICE that this case has been reassigned to District Judge James O. Browning. <br><br> The first page of each document must have the case file number and initials of the assigned judge. *Accordingly, further documents filed in this matter must bear the case number and the judge's initials shown in the case caption and the NEF for this document.* Kindly reflect this change in your filings. <br><br> District Judge Kenneth J. Gonzales no longer assigned to this case. [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (dmw) (Entered: 03/30/2016) |
| 03/30/2016 | 353 | | [APPLICABLE PARTY] SEALED EXPARTE MINUTE ORDER as to Mauricio Varela VACATING Telephonic Motion Hearing set for 3/30/3016 at 2:00 PM by Magistrate Judge Carmen E. Garza. Please see details in attached Order. (mm) (Entered: 03/30/2016) |

| 03/30/2016 | 354 | | RESPONSE by USA as to Joe Gallegos, Edward Troup, Jerry Montoya, Timothy Martinez, Christopher Garcia re 302 Brief *Regarding Protective Orders* (Armijo, Maria) (Entered: 03/30/2016) |
|---|---|---|---|
| 03/30/2016 | 355 | | REPLY by USA as to Daniel Sanchez re 315 Reply (Armijo, Maria) (Entered: 03/30/2016) |
| 04/01/2016 | 356 | | [APPLICABLE PARTY] SEALED TRANSCRIPT of Hearing on Order to Show Cause as to Leonard Lujan, Billy Garcia held on March 22, 2016 before District Judge Kenneth J. Gonzales, Court Reporter: Danna Schutte Everett (dse) Modified text on 4/1/2016 (yc). (Entered: 04/01/2016) |
| 04/01/2016 | 357 | | TRANSCRIPT of Show Cause and Motions Hearing as to Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia held on March 22, 2016, before District Judge Kenneth J. Gonzales. Court Reporter:Danna Schutte Everett, Telephone number (575)528–1656. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br> Notice of Intent to Request Redaction set for 4/8/2016. Redaction Request due 4/22/2016. Redacted Transcript Deadline set for 5/2/2016. Release of Transcript Restriction set for 6/30/2016.(dse) (Entered: 04/01/2016) |
| 04/01/2016 | 358 | | NOTICE *United States' Notice Regarding When the New Mexico United States Attorney's Office First Became Involved in Prosecuting the Defendants in this Case or any other Case* by USA as to Billy Garcia re 331 Order (Attachments: # 1 Exhibit)(Armijo, Maria) (Entered: 04/01/2016) |
| 04/14/2016 | 359 | | NOTICE *Notice of Unavailability of counsel 4/18–22/2016* by Christopher Garcia (Sirignano, Amy) Modified text to add dates on 4/14/2016 (dmw). (Entered: 04/14/2016) |
| 04/14/2016 | 360 | | [CASE PARTICIPANTS] RESPONSE by Edward Troup as to Joe Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Javier Alonso, Arturo Arnulfo Garcia, Timothy Martinez, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia re 358 Notice (Other), *Regarding When the New Mexico United States Attorney's Office First Became Involved in Prosecuting the Defendants in this* |

| | | | |
|---|---|---|---|
| | | | *Case or Any Other Case* (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C, # 4 Appendix D, # 5 Appendix E, # 6 Appendix F, # 7 Appendix G)(Harbour–Valdez, Cori) (Entered: 04/14/2016) |
| 04/18/2016 | 362 | | Unopposed MOTION for Order *Authorizing Doc. 360 to Be Filed as a Restricted Access Document* by Edward Troup as to Joe Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Javier Alonso, Arturo Arnulfo Garcia, Timothy Martinez, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia. (Harbour–Valdez, Cori) (Entered: 04/18/2016) |
| 04/21/2016 | 363 | | [APPLICABLE PARTY] SEALED NOTICE of sealed motion hearing regarding the Defendant Christopher Garcia's Ex Parte Opposed Motion to Reconsider Detention (for Ruling by the District Court Judge) 206 scheduled for 5/6/2016 at 09:00 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/21/2016) |
| 04/21/2016 | 368 | | REDACTED SUPERSEDING INDICTMENT as to Angel DeLeon (1) count(s) 1s, Joe Lawrence Gallegos (2) count(s) 1s, 4s, 5s, 13s, 14s, 15s, Edward Troup (3) count(s) 1s, 3s, Leonard Lujan (4) count(s) 1s–2s, Billy Garcia (5) count(s) 1s–2s, Eugene Martinez (6) count(s) 2s, Allen Patterson (7) count(s) 2s, Christopher Chavez (8) count(s) 2s, Javier Alonso (9) count(s) 3s, Arturo Arnulfo Garcia (10) count(s) 3s, Benjamin Clark (11) count(s) 3s, Ruben Hernandez (12) count(s) 3s, Jerry Armenta (13) count(s) 6s, Jerry Montoya (14) count(s) 6s, Mario Rodriguez (15) count(s) 6s, Timothy Martinez (16) count(s) 6s, Mauricio Varela (17) count(s) 6s, Daniel Sanchez (18) count(s) 6s, Gerald Archuleta (19) count(s) 8s, Conrad Villegas (20) count(s) 8s, Anthony Ray Baca (21) count(s) 6s, 8s, 9s–10s, Robert Martinez (22) count(s) 9s–10s, Roy Paul Martinez (23) count(s) 9s–10s, Christopher Garcia (24) count(s) 10s, 11s, 12s, Carlos Herrera (25) count(s) 6, Rudy Perez (26) count(s) 6, Andrew Gallegos (27) count(s) 4, 5, Santos Gonzalez (28) count(s) 14, 15, Paul Rivera (29) count(s) 14, 15, Shauna Gutierrez (30) count(s) 14, 15. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 370 | | ARREST Warrant Issued as to Joe Lawrence Gallegos. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 371 | | ARREST Warrant Issued as to Edward Troup. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 372 | | ARREST Warrant Issued as to Leonard Lujan. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 373 | | ARREST Warrant Issued as to Billy Garcia. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 374 | | ARREST Warrant Issued as to Eugene Martinez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |

| 04/21/2016 | 375 | | ARREST Warrant Issued as to Allen Patterson. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
|---|---|---|---|
| 04/21/2016 | 376 | | ARREST Warrant Issued as to Christopher Chavez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 377 | | ARREST Warrant Issued as to Javier Alonso. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 378 | | ARREST Warrant Issued as to Arturo Arnulfo Garcia. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 379 | | ARREST Warrant Issued as to Benjamin Clark. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 380 | | ARREST Warrant Issued as to Ruben Hernandez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 381 | | ARREST Warrant Issued as to Jerry Armenta. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 382 | | ARREST Warrant Issued as to Jerry Montoya. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 383 | | ARREST Warrant Issued as to Mario Rodriguez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 384 | | ARREST Warrant Issued as to Timothy Martinez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 385 | | ARREST Warrant Issued as to Mauricio Varela. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 386 | | ARREST Warrant Issued as to Daniel Sanchez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 387 | | ARREST Warrant Issued as to Gerald Archuleta. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 388 | | |

| | | | |
|---|---|---|---|
| | | | ARREST Warrant Issued as to Conrad Villegas. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 389 | | ARREST Warrant Issued as to Anthony Ray Baca. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 390 | | ARREST Warrant Issued as to Robert Martinez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 391 | | ARREST Warrant Issued as to Roy Paul Martinez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 392 | | ARREST Warrant Issued as to Christopher Garcia. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 393 | | ARREST Warrant Issued as to Carlos Herrera. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 394 | | ARREST Warrant Issued as to Rudy Perez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 395 | | ARREST Warrant Issued as to Andrew Gallegos. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 396 | | ARREST Warrant Issued as to Santos Gonzalez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 397 | | ARREST Warrant Issued as to Paul Rivera. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/21/2016 | 398 | | ARREST Warrant Issued as to Shauna Gutierrez. Original ARREST Warrant with AO 442 Page 2 and one certified copy of Superseding Indictment hand–delivered to USMS by CRD K. Solis. (kls) (Entered: 04/28/2016) |
| 04/26/2016 | 364 | | NOTICE *OF JOINDER TO 360 DEFENDANTS' RESPONSE TO DOC. NO 358 UNITED STATES NOTICE REGARDING WHEN THE NEW MEXICO UNITED STATES ATTORNEYS OFFICE FIRST BECAME INVOLVED IN PROSECUTING THE DEFENDANTS IN THIS CASE OR ANY OTHER CASE* by Jerry Montoya (Strickland, Margaret) Modified linkage on 4/27/2016 (dmw). (Entered: 04/26/2016) |
| 04/26/2016 | 366 | | [APPLICABLE PARTY] AMENDED EX PARTE ORDER FOR TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 365 |

| | | | |
|---|---|---|---|
| | | | Motion for Order as to Ruben Hernandez (12). (kls) (Entered: 04/26/2016) |
| 04/27/2016 | 399 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Carlos Herrera. (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 400 | | ORDER by Chief Magistrate Judge Karen B. Molzen granting 399 Motion for Writ of Habeas Corpus ad prosequendum as to Carlos Herrera (25) (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 401 | | Writ of Habeas Corpus ad Prosequendum Issued as to Carlos Herrera for 4/29/16 at 1:30 pm (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 402 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Rudy Perez. (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 403 | | ORDER by Chief Magistrate Judge Karen B. Molzen granting 402 Motion for Writ of Habeas Corpus ad prosequendum as to Rudy Perez (26) (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 404 | | Writ of Habeas Corpus ad Prosequendum Issued as to Rudy Perez for 4/29/16 at 1:30 pm (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 405 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Andrew Gallegos. (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 406 | | ORDER by Chief Magistrate Judge Karen B. Molzen granting 405 Motion for Writ of Habeas Corpus ad prosequendum as to Andrew Gallegos (27) (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 407 | | Writ of Habeas Corpus ad Prosequendum Issued as to Andrew Gallegos for 4/29/16 at 1:30 pm (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 408 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Santos Gonzalez. (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 409 | | ORDER by Chief Magistrate Judge Karen B. Molzen granting 408 Motion for Writ of Habeas Corpus ad prosequendum as to Santos Gonzalez (28) (kd) (Entered: 04/28/2016) |
| 04/27/2016 | 410 | | Writ of Habeas Corpus ad Prosequendum Issued as to Santos Gonzalez for 4/29/16 at 1:30 pm (kd) (Entered: 04/28/2016) |
| 04/28/2016 | | | Arrest of Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez (emr) (Entered: 04/28/2016) |
| 04/28/2016 | | | Set Hearings as to Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez: Initial Appearance set for 4/29/2016 at 01:30 PM in Albuquerque – 520 Gila Courtroom before Magistrate Judge Karen B. Molzen. (emr) (Entered: 04/28/2016) |
| 04/28/2016 | | | Arrest of Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, and Christopher Garcia. (Defendants already in custody; entry made for statistical purposes) (kls) |

| | | | (Entered: 04/28/2016) |
|---|---|---|---|
| 04/28/2016 | 412 | | NOTICE OF HEARING as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, and Christopher Garcia: Arraignment set for 5/4/2016 at 1:30 PM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. **IF A DEFENDANT WISHES TO WAIVE HIS APPEARANCE AT ARRAIGNMENT, THE COURT MUST BE NOTIFIED NO LATER THAN 24 HOURS BEFORE THE HEARING. COUNSEL IS STILL REQUIRED APPEAR TO ENTER A PLEA ON BEHALF OF THE DEFENDANT ON THE RECORD.** *Any inquires regarding this setting should be directed to CRD Kristin Solis.* (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/28/2016) |
| 04/29/2016 | 414 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Initial Appearance as to Carlos Herrera, Rudy Perez, Andrew Gallegos, and Santos Gonzalez held on 4/29/2016; Arraignment/Detention set for 5/5/2016 at 01:30 PM in Albuquerque – 520 Gila Courtroom before Magistrate Judge Karen B. Molzen. (Recording Info: Gila Liberty) (emr) (Entered: 04/29/2016) |
| 04/29/2016 | 415 | | ORAL ORDER of temporary detention pending hearing as to Carlos Herrera, Rudy Perez, Andrew Gallegos, and Santos Gonzalez by Magistrate Judge Karen B. Molzen (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/29/2016) |
| 04/29/2016 | | | Set Hearings as to Christopher Garcia: Arraignment set for 5/5/2016 at 01:30 PM in Albuquerque – 520 Gila Courtroom before Magistrate Judge Karen B. Molzen. (emr) (Entered: 04/29/2016) |
| 05/01/2016 | 416 | | MOTION to Continue *Arraignment* by Joe Lawrence Gallegos. (Attachments: # 1 Exhibit 1)(Benjamin, Brock) (Entered: 05/01/2016) |
| 05/02/2016 | 417 | | MINUTE ORDER, pursuant to the direction of Magistrate Judge Gregory B. Wormuth, vacating the Arraignment set for 5/4/2016 as to Christopher Garcia; matter to be reset in Albuquerque due to logistical issues. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/02/2016) |
| 05/02/2016 | 418 | | ORDER by Magistrate Judge Gregory B. Wormuth granting 416 Motion to Continue Arraignment as to Joe Lawrence Gallegos (2); Arraignment reset for 5/5/2016 at 1:30 PM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) (Entered: 05/02/2016) |
| 05/02/2016 | 419 | | First MOTION to Continue *Arraignment* by Leonard Lujan. (Clark, Russell) (Entered: 05/02/2016) |

| 05/02/2016 | 420 | | First MOTION to Appoint Counsel by Leonard Lujan. (Clark, Russell) (Entered: 05/02/2016) |
|---|---|---|---|
| 05/02/2016 | 422 | | MOTION to Appoint Counsel *LEARNED COUNSEL* by Christopher Garcia. (Attachments: # 1 Exhibit A)(Sirignano, Amy) (Entered: 05/02/2016) |
| 05/02/2016 | 423 | | CJA Appointment of Attorney Ryan J Villa for Rudy Perez in Death Penalty Proceedings by Magistrate Judge Karen B. Molzen (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/02/2016) |
| 05/02/2016 | 424 | | CJA Appointment of Attorney Erlinda O Johnson for Santos Gonzalez by Magistrate Judge Karen B. Molzen (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/02/2016) |
| 05/02/2016 | 425 | | CJA Appointment of Attorney Donavon A. Roberts for Andrew Gallegos in Death Penalty Proceedings by Magistrate Judge Karen B. Molzen (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/02/2016) |
| 05/02/2016 | 426 | | ORDER by District Judge James O. Browning authorizing CJA Appointment of Theresa Duncan as Learned counsel for Defendant Anthony Ray Baca; Attorney Duncan is permitted to bill for this case pursuant to the Criminal Justice Act. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/02/2016) |
| 05/02/2016 | 427 | | RESPONSE to Motion by USA as to Christopher Garcia re 422 MOTION to Appoint Counsel *LEARNED COUNSEL* (Armijo, Maria) (Entered: 05/02/2016) |
| 05/03/2016 | 429 | | APPENDIX/SUPPLEMENT re 420 First MOTION to Appoint Counsel (Clark, Russell) (Entered: 05/03/2016) |
| 05/03/2016 | 430 | | CJA Appointment of Attorney Michael V Davis for Carlos Herrera in Death Penalty Proceedings by Magistrate Judge Karen B. Molzen (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/03/2016) |
| 05/03/2016 | 431 | | ORDER by Magistrate Judge Gregory B. Wormuth granting 419 Motion to Continue Arraignment as to Leonard Lujan (4). (kls) (Entered: 05/03/2016) |
| 05/03/2016 | 432 | | Unopposed MOTION to Withdraw Document 422 MOTION to Appoint Counsel *LEARNED COUNSEL* by Christopher Garcia. (Sirignano, Amy) (Entered: 05/03/2016) |
| 05/03/2016 | 433 | | **FILED IN ERROR** WAIVER of Hearings by Mauricio Varela (Stillinger, Mary) Modified on 5/3/2016 (dmw). (Entered: 05/03/2016) |
| 05/03/2016 | 437 | | NOTICE *OF WITHDRAWAL OF MOTION FOR TERMINATION OF APPOINTMENT OF LEARNED COUNSEL* by Mauricio Varela re 323 MOTION Termination of Appointment of Learned Counsel re 274 CJA Appointment, (Stillinger, Mary) (Entered: 05/03/2016) |
| 05/04/2016 | 439 | | [APPLICABLE PARTY] SEALED NOTICE adding the Second Ex Parte Opposed Emergency Motion for Expedited Discovery and Extraordinary |

| | | | |
|---|---|---|---|
| | | | Relief Regarding Client's and His Family's Safety 428 and the United States' Ex Parte Motion to Unseal Court Hearing 434 to the agenda for the motion hearing scheduled for 5/6/2016 at 08:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/04/2016) |
| 05/04/2016 | 440 | | ORDER by District Judge James O. Browning granting 362 Motion for Order Regarding Doc. 360 (dmw) (Entered: 05/04/2016) |
| 05/04/2016 | | | Set Hearings as to Christopher Garcia: Arraignment set for 5/5/2016 at 01:30 PM in Albuquerque – 520 Gila Courtroom before Magistrate Judge Karen B. Molzen. (emr) (Entered: 05/04/2016) |
| 05/04/2016 | 444 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Edward Troup (3) Count 1s,3s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 445 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Billy Garcia (5) Count 1s–2s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 446 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Allen Patterson (7) Count 2s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 447 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Christopher Chavez (8) Count 2s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 448 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Javier Alonso (9) Count 3s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 449 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Arturo Arnulfo Garcia (10) Count 3s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 450 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Benjamin Clark (11) Count 3s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 451 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Benjamin Clark (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 452 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 5/4/2016; Defendant was not transported and will be reset for Arraignment. (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 453 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Jerry Armenta (13) Count 6s,7ss held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 454 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Jerry Armenta (vh) (Entered: 05/05/2016) |

| 05/04/2016 | 455 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Jerry Montoya (14) Count 6s,7ss held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
|---|---|---|---|
| 05/04/2016 | 456 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Mario Rodriguez (15) Count 6s,7ss held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 457 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Timothy Martinez (16) Count 6s,7ss held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 458 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Mauricio Varela (17) Count 6s,7ss held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 459 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Mauricio Varela (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 460 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Daniel Sanchez (18) Count 6s,7ss held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 461 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Gerald Archuleta (19) Count 8s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 462 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Gerald Archuleta (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 463 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Conrad Villegas (20) Count 8s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 464 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Anthony Ray Baca (21) Count 6s,7ss,8s,9s−10s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 465 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Robert Martinez (22) Count 9s−10s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 466 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Robert Martinez (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 467 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Roy Paul Martinez (23) Count 9s−10s held on 5/4/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/04/2016 | 468 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Roy Paul Martinez (vh) (Entered: 05/05/2016) |
| 05/05/2016 | 471 | | WAIVER of Detention Hearing by Santos Gonzalez (nm) (Entered: 05/05/2016) |
| 05/05/2016 | 472 | | |

| | | | |
|---|---|---|---|
| | | | WAIVER of Detention Hearing by Andrew Gallegos (nm) (Entered: 05/05/2016) |
| 05/05/2016 | 473 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment/Detention as to Andrew Gallegos (27) Count 4,5 held on 5/5/2016 (Recording Info: Gila Liberty) (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 474 | | ORDER OF DETENTION as to Andrew Gallegos by Magistrate Judge Karen B. Molzen (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 475 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment/Detention as to Santos Gonzalez (28) Count 14,15 held on 5/5/2016 (Recording Info: Gila Liberty) (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 476 | | ORDER OF DETENTION as to Santos Gonzalez by Magistrate Judge Karen B. Molzen (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 477 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment as to Joe Lawrence Gallegos (2) Count 1s,4s,5s,13s,14s,15s held on 5/5/2016 (Recording Info: LCR Sierra Blanca) (vh) (Entered: 05/05/2016) |
| 05/05/2016 | 478 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment/Detention as to Rudy Perez (26) Count 6,7s held on 5/5/2016 (Recording Info: Gila Liberty) (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 479 | | ORDER OF DETENTION as to Rudy Perez by Magistrate Judge Karen B. Molzen (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 480 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment/Detention as to Carlos Herrera (25) Count 6,7s held on 5/5/2016 (Recording Info: Gila Liberty) (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 481 | | ORDER OF DETENTION as to Carlos Herrera by Magistrate Judge Karen B. Molzen (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 482 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Christopher Garcia (24) Count 10s,11s,12s held on 5/5/2016 (Recording Info: Gila Liberty) (emr) (Entered: 05/05/2016) |
| 05/05/2016 | 483 | | DISCOVERY ORDER as to Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos and Santos Gonzalez by Magistrate Judge Karen B. Molzen (emr) (Entered: 05/05/2016) |
| 05/06/2016 | 487 | | ORDER by District Judge James O. Browning granting 432 MOTION to Withdraw Document 422 MOTION to Appoint Counsel *LEARNED COUNSEL* filed by Christopher Garcia. (dmw) (Entered: 05/09/2016) |
| 05/06/2016 | 488 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 438 Motion for Free Process as to Christopher Garcia (24) (dmw) (Entered: 05/09/2016) |
| 05/06/2016 | 520 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 421 Motion for Funds as to Edward Troup (3) (dmw) (Entered: 05/10/2016) |
| 05/06/2016 | 533 | | |

| | | | |
|---|---|---|---|
| | | | ORDER by District Judge James O. Browning granting 413 Motion to Substitute Attorney. Joe Spencer replacing Michael David Lindsey as to Mauricio Varela (17) (dmw) (Entered: 05/13/2016) |
| 05/06/2016 | 571 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing as to Christopher Garcia held on 5/6/2016 re 361 Ex Parte MOTION for Reconsideration re 206 Notice (Other) *Emergency and Opposed* filed by Christopher Garcia, 434 Ex Parte MOTION to Unseal Court Hearing re 363 Notice of Hearing on Motion, *United States' Ex Parte Motion to Unseal Court Hearing* filed by USA, 469 MOTION to Quash filed by USA, 428 Second MOTION for Order *EX PARTE OPPOSED EMERGENCY FOR EXPEDITED DISCOVERY AND EXTRAORDINARY RELIEF REGARDING CLIENTS AND HIS FAMILYS SAFETY* filed by Christopher Garcia (Court Reporter: J. Bean) (dmw) (Entered: 06/10/2016) |
| 05/06/2016 | 574 | | [APPLICABLE PARTY] SEALED Clerk's Minutes of Motions Hearing held on May 6, 2016 as to Christopher Garcia re 571 (dmw) Modified date on 6/10/2016 (dmw). (Entered: 06/10/2016) |
| 05/06/2016 | 588 | | [APPLICABLE PARTY] SEALED EXHIBIT 10 re 574 Clerk's Minutes of Motion Hearing as to Christopher Garcia (dmw) (Entered: 06/17/2016) |
| 05/09/2016 | | | Arrest of Paul Rivera (eh) (Entered: 05/09/2016) |
| 05/09/2016 | 486 | | NOTICE OF HEARING as to Paul Rivera: Initial Appearance set for 5/9/2016 at 09:30 AM in Albuquerque – 520 Gila Courtroom before Magistrate Judge Steven C. Yarbrough. (eh) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/09/2016) |
| 05/09/2016 | 489 | | Clerk's Minutes before Magistrate Judge William P Lynch: Initial Appearance as to Paul Rivera held; Arraignment/Detention set for 5/11/2016 at 09:30 AM in Albuquerque – 520 Gila Courtroom; deft held in custody of USMS (Recording Info: liberty – Gila) (kd) (Entered: 05/09/2016) |
| 05/09/2016 | 490 | | ORAL ORDER of Temporary Detention pending hearing as to Paul Rivera by Magistrate Judge William P Lynch (kd) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/09/2016) |
| 05/09/2016 | 491 | | ARREST Warrant Returned Executed on 5/4/2016 as to Gerald Archuleta. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 492 | | ARREST Warrant Returned Executed on 5/4/2016 as to Christopher Garcia. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 493 | | ARREST Warrant Returned Executed on 5/4/2016 as to Andrew Gallegos. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 494 | | ARREST Warrant Returned Executed on 5/4/2016 as to Joe Lawrence Gallegos. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 495 | | ARREST Warrant Returned Executed on 5/4/2016 as to Santos Gonzalez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 496 | | ARREST Warrant Returned Executed on 5/4/2016 as to Leonard Lujan. (dmw) (Entered: 05/09/2016) |

| 05/09/2016 | 497 | ARREST Warrant Returned Executed on 5/4/2016 as to Edward Troup. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 498 | ARREST Warrant Returned Executed on 5/4/2016 as to Rudy Perez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 499 | ARREST Warrant Returned Executed on 5/4/2016 as to Carlos Herrera. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 500 | ARREST Warrant Returned Executed on 5/4/2016 as to Anthony Ray Baca. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 501 | ARREST Warrant Returned Executed on 5/4/2016 as to Robert Martinez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 502 | ARREST Warrant Returned Executed on 5/4/2016 as to Roy Paul Martinez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 503 | ARREST Warrant Returned Executed on 5/4/2016 as to Conrad Villegas. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 504 | ARREST Warrant Returned Executed on 5/4/2016 as to Mauricio Varela. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 505 | ARREST Warrant Returned Executed on 5/4/2016 as to Timothy Martinez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 506 | ARREST Warrant Returned Executed on 5/4/2016 as to Mario Rodriguez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 507 | ARREST Warrant Returned Executed on 5/4/2016 as to Jerry Montoya. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 508 | ARREST Warrant Returned Executed on 5/4/2016 as to Jerry Armenta. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 509 | ARREST Warrant Returned Executed on 5/4/2016 as to Ruben Hernandez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 510 | ARREST Warrant Returned Executed on 5/4/2016 as to Benjamin Clark. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 511 | ARREST Warrant Returned Executed on 5/4/2016 as to Javier Alonso. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 512 | ARREST Warrant Returned Executed on 5/4/2016 as to Christopher Chavez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 513 | ARREST Warrant Returned Executed on 5/4/2016 as to Arturo Arnulfo Garcia. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 514 | ARREST Warrant Returned Executed on 5/4/2016 as to Allen Patterson. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 515 | ARREST Warrant Returned Executed on 5/4/2016 as to Eugene Martinez. (dmw) (Entered: 05/09/2016) |
| 05/09/2016 | 516 | ARREST Warrant Returned Executed on 5/4/2016 as to Billy Garcia. (dmw) |

| | | | |
|---|---|---|---|
| | | | (Entered: 05/09/2016) |
| 05/09/2016 | 517 | | ARREST Warrant Returned Executed on 5/4/2016 as to Daniel Sanchez. (dmw) (Entered: 05/09/2016) |
| 05/10/2016 | 523 | | CJA Appointment of Attorney Keith R Romero for Paul Rivera by Magistrate Judge Karen B. Molzen (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/10/2016) |
| 05/10/2016 | 532 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning Regarding Travel Authorization Service Provider Hourly Rates as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca (dmw) (Entered: 05/12/2016) |
| 05/11/2016 | 526 | | Clerk's Minutes before Chief Magistrate Judge Karen B. Molzen: Arraignment/Detention as to Paul Rivera (29) Count 14,15 held (Recording Info: liberty – Gila) (kd) (Entered: 05/11/2016) |
| 05/11/2016 | 527 | | ORDER OF DETENTION as to Paul Rivera by Chief Magistrate Judge Karen B. Molzen (kd) (Entered: 05/11/2016) |
| 05/11/2016 | 529 | | WAIVER of Detention Hearing by Paul Rivera (emr) (Entered: 05/11/2016) |
| 05/18/2016 | 534 | | ORDER by District Judge James O. Browning granting 420 Motion to Appoint Counsel Donald R Knight for Leonard Lujan appointed (vv) (Entered: 05/18/2016) |
| 05/18/2016 | 535 | | Joint MOTION for Order *TO SUSPEND THE SCHEDULING ORDER (DOC. 250), OPPOSED REQUEST FOR STATUS CONFERENCE AND EX PARTE CJA CONFERENCE WITH THE DISTRICT COURT* by Christopher Garcia. (Sirignano, Amy) (Entered: 05/18/2016) |
| 05/19/2016 | 536 | | NOTICE of Status Conference and Motion Hearing (agenda to follow at a later time) scheduled for 6/2/2016 at 09:00 AM in Albuquerque – 320 Rio Grande Courtroom before District Judge James O. Browning. The Court will require the appearance of all Defendants at this proceeding.(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/19/2016) |
| 05/19/2016 | 537 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, notifying the parties that the following motions/issues will be heard at the Status Conference scheduled for 6/2/2016: 1) the Brief Regarding Protective Orders for Materials Obtained From Sources Other Than the Government 302 ; 2) the Defendant Daniel Sanchez's Reply Regarding Court's Ability to Subject Materials Obtained Independently of This Court's Process to Court's Protective Order (Doc. 313) 315 ; 3) the United States' Notice Regarding When the New Mexico United States Attorneys Office First Became Involved in Prosecuting the Defendants in This Case or Any Other Case 358 ; 4) the Motion for Order Directing the United States to Comply With Court Rules and for Fundamental Due Process 342 ; and 5) the Motion to Suspend the Scheduling Order (Doc. 250), Request for Status Conference and Ex Parte CJA Conference With the |

| | | |
|---|---|---|
| | | District Court 535 . (kw)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 05/19/2016) |
| 05/20/2016 | 538 | NOTICE OF HEARING as to Leonard Lujan: Arraignment reset for 5/24/2016 at 1:30 PM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) ***THE U.S. MARSHALS SERVICE IS NOT REQUIRED TO TRANSPORT THE DEFENDANT FOR THIS HEARING; DEFENDANT'S APPEARANCE WILL BE WAIVED.***<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 05/20/2016) |
| 05/23/2016 | 539 | [CASE PARTICIPANTS] MOTION for Discovery by Billy Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Jerry Montoya. (Castle, James) Modified security level received call on helpdesk on 5/23/2016 (bap). Modified security level to case participants per Mr. Castle on 5/31/2016 (dmw). (Entered: 05/23/2016) |
| 05/23/2016 | 541 | Opposed MOTION for Reconsideration re 313 Order, *Protection Order* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Jerry Montoya, Timothy Martinez, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Santos Gonzalez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Blackburn, Billy) Modified text on 5/24/2016 (dmw). (Entered: 05/23/2016) |
| 05/23/2016 | 542 | MOTION to Expedite *Briefing on Motion for Reconsideration (Doc 541)* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Jerry Montoya, Timothy Martinez, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Santos Gonzalez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Blackburn, Billy) (Entered: 05/23/2016) |
| 05/24/2016 | 543 | [APPLICABLE PARTY] SEALED EX–PARTE ORDER APPROVING A SUPPLEMENTAL BUDGET IN A CAPITAL PROSECUTION by District Judge James O. Browning and Circuit Judge Neil Gorsuch as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo |

| | | | |
|---|---|---|---|
| | | | Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Rudy Perez, Andrew Gallegos (dmw) (Entered: 05/24/2016) |
| 05/24/2016 | 544 | | MOTION to Appoint Counsel *Learned* by Mario Rodriguez. (Attachments: # 1 Supplement)(Hernandez, Santiago) (Entered: 05/24/2016) |
| 05/24/2016 | 545 | | NOTICE OF HEARING as to Ruben Hernandez: Arraignment set for 5/26/2016 at 9:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Lourdes A. Martinez. (kls) ***THE U.S. MARSHALS SERVICE IS NOT REQUIRED TO TRANSPORT THE DEFENDANT FOR THIS HEARING; DEFENDANT'S APPEARANCE WILL BE WAIVED.*** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/24/2016) |
| 05/24/2016 | 549 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 5/24/2016 as to Leonard Lujan (4); Waiver of Appearance filed, and Not Guilty plea entered on the Defendant's behalf to Counts 1s–2s of the Superseding Indictment; Defendant in custody. (LCR–Sierra Blanca) (kls) (Entered: 05/26/2016) |
| 05/24/2016 | 550 | | WAIVER of Appearance at Arraignment and Entry of Plea of Not Guilty by Leonard Lujan. (kls) (Entered: 05/26/2016) |
| 05/25/2016 | 546 | | AMENDED NOTICE OF HEARING (to change date) as to Ruben Hernandez: Arraignment reset for 5/27/2016 at 9:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Lourdes A. Martinez. (kls) ***THE U.S. MARSHALS SERVICE IS NOT REQUIRED TO TRANSPORT THE DEFENDANT FOR THIS HEARING; DEFENDANT'S APPEARANCE WILL BE WAIVED.*** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/25/2016) |
| 05/25/2016 | 547 | | RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez re 535 Joint MOTION for Order *TO SUSPEND THE SCHEDULING ORDER (DOC. 250), OPPOSED REQUEST FOR STATUS CONFERENCE AND EX PARTE CJA CONFERENCE WITH THE DISTRICT COURT* (Armijo, Maria) (Entered: 05/25/2016) |
| 05/25/2016 | 548 | | Unopposed MOTION to Appoint Learned Counsel by Rudy Perez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Villa, Ryan) Modified text on 5/26/2016 (dmw). (Entered: 05/25/2016) |
| 05/26/2016 | 551 | | RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen |

| | | | |
|---|---|---|---|
| | | | Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez re 542 MOTION to Expedite *Briefing on Motion for Reconsideration (Doc 541)* (Armijo, Maria) (Entered: 05/26/2016) |
| 05/26/2016 | 552 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, adding the Defendants' Opposed Joint Motion for Reconsideration of the Protective Order 541 to the agenda of motions to be heard at the hearing scheduled for 6/2/2016. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/26/2016) |
| 05/26/2016 | 553 | | NOTICE *of Unavailability of Counsel for Defendant Christopher Garcia 6/30–7/9/2016* by Christopher Garcia (Sirignano, Amy) Modified text to add dates on 5/27/2016 (dmw). (Entered: 05/26/2016) |
| 05/26/2016 | 554 | | MOTION for Order *to Waive Appearance at Hearing* by Eugene Martinez (Lane, David) Modified text on 5/27/2016 (dmw). (Entered: 05/26/2016) |
| 05/26/2016 | 555 | | ORDER by District Judge James O. Browning granting 544 Motion to Appoint Learned Counsel. Steven M Potolsky for Mario Rodriguez appointed. (dmw) (Entered: 05/26/2016) |
| 05/26/2016 | 556 | | ORDER by District Judge James O. Browning granting 548 Motion to Appoint Learned Counsel Donald R West for Rudy Perez (26) (dmw) (Entered: 05/26/2016) |
| 05/27/2016 | 557 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning (dmw) (Entered: 05/27/2016) |
| 05/27/2016 | 558 | | Clerk's Minutes for proceedings held before Magistrate Judge Lourdes A. Martinez: Arraignment held on 5/27/2016 as to as to Ruben Hernandez (12); Waiver of Appearance filed, and Not Guilty plea entered on the Defendant's behalf to Counts 3s of the Superseding Indictment; Defendant in custody. (LCR–Sierra Blanca) (kls) (Entered: 05/27/2016) |
| 05/27/2016 | 559 | | WAIVER of Appearance at Arraignment and Entry of Plea of Not Guilty by Ruben Hernandez. (kls) (Entered: 05/27/2016) |
| 05/27/2016 | 560 | | [CASE PARTICIPANTS] ADDENDUM re 539 MOTION for Discovery by Billy Garcia as to Joe Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Jerry Montoya. (Castle, James) Modified linkage/text on 5/31/2016 (dmw). (Entered: 05/27/2016) |
| 05/27/2016 | 720 | | [APPLICABLE PARTY] SEALED EX–PARTE LETTER as to Christopher Garcia (dmw) (Entered: 10/04/2016) |
| 05/30/2016 | 561 | | MOTION to Appoint Counsel *David Andersen* by Christopher Chavez. (Attachments: # 1 Exhibit)(Mondragon, Orlando) (Entered: 05/30/2016) |
| 05/31/2016 | 562 | | ORDER by District Judge James O. Browning granting 561 Motion to Appoint Learned Counsel David L Andersen for Christopher Chavez (8) |

| | | | |
|---|---|---|---|
| | | | (dmw) (Entered: 05/31/2016) |
| 06/01/2016 | 565 | | NOTICE *of Filing of Executed Declaration (Doc. 541–2)* by Daniel Sanchez (Jacks, Amy) (Entered: 06/01/2016) |
| 06/01/2016 | 566 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez re 541 Opposed MOTION for Reconsideration re 313 Order,, *Protection Order* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Armijo, Maria) (Entered: 06/01/2016) |
| 06/02/2016 | 582 | | [APPLICABLE PARTY] SEALED NOTICE of e–mail re Spencer Report as to Anthony Ray Baca, Mario Rodriguez, Arturo Arnulfo Garcia, Rudy Perez, Allen Patterson, Daniel Sanchez, Jerry Armenta, Ruben Hernandez, Andrew Gallegos, Joe Lawrence Gallegos, Leonard Lujan, Edward Troup, Billy Garcia, Benjamin Clark, Jerry Montoya, Javier Alonso, Timothy Martinez, Christopher Chavez, Eugene Martinez, Mauricio Varela (dmw) (Entered: 06/14/2016) |
| 06/06/2016 | 567 | | NOTICE *of Intent Not to Seek a Sentence of Death* by USA as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez, Andrew Gallegos (Armijo, Maria) Modified text on 6/6/2016 (dmw). (Entered: 06/06/2016) |
| 06/08/2016 | 570 | | MOTION to Withdraw as Attorney by David A. Lane by Eugene Martinez. (Lane, David) (Entered: 06/08/2016) |
| 06/09/2016 | 605 | | E–Mail from Cori Harbour–Valdez (dmw) (Entered: 06/22/2016) |
| 06/10/2016 | 573 | | MOTION to Withdraw as Attorney by David L. Andersen by Christopher Chavez. (Mondragon, Orlando) (Entered: 06/10/2016) |
| 06/10/2016 | 575 | | [APPLICABLE PARTY] ORDER RE: IMPACT OF NO–SEEK NOTICE ON COUNSEL AND PROVIDERS by District Judge James O. Browning as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Rudy Perez, Andrew Gallegos (dmw) (Entered: 06/10/2016) |
| 06/13/2016 | 576 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 540 Motion to Appoint Counsel Nunc Pro Tunc as to Anthony Ray Baca (21) (dmw) (Entered: 06/13/2016) |
| 06/13/2016 | 577 | | |

| | | | |
|---|---|---|---|
| | | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 564 Motion for Order as to Carlos Herrera (25) (dmw) (Entered: 06/13/2016) |
| 06/13/2016 | 578 | | ORDER by District Judge James O. Browning granting 573 Motion to Withdraw as Attorney. David L Andersen withdrawn from case as to Christopher Chavez (8) (dmw) (Entered: 06/13/2016) |
| 06/13/2016 | 579 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 569 Motion for Order re Interim CJA Billing as to Christopher Garcia (24) (dmw) (Entered: 06/13/2016) |
| 06/13/2016 | 580 | | CJA7: Order Terminating David Andersen as to Christopher Chavez by Magistrate Judge Laura Fashing (kd) (Entered: 06/14/2016) |
| 06/13/2016 | 601 | | [APPLICABLE PARTY] SEALED EX–PARTE LETTER from Margaret Strickland as to Jerry Montoya (dmw) (Entered: 06/22/2016) |
| 06/14/2016 | 581 | | NOTICE OF HEARING as to Gerald Archuleta: Change of Plea Hearing set for 6/16/2016 at 10:15 AM in Las Cruces, NM – 460 Organ Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 06/14/2016) |
| 06/15/2016 | 583 | | NOTICE *of Unavailability of Counsel 7/13–22, 9/21–23 and 8/5* by Edward Troup (Attachments: # 1 Exhibit A)(Harbour–Valdez, Cori) Modified text to add dates on 6/15/2016 (dmw). (Entered: 06/15/2016) |
| 06/16/2016 | 584 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 539 MOTION for Discovery by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Jerry Montoya. (Armijo, Maria) (Entered: 06/16/2016) |
| 06/16/2016 | 585 | | CONSENT TO PLEA BEFORE US MAGISTRATE JUDGE by Gerald Archuleta (dmw) (Entered: 06/16/2016) |
| 06/16/2016 | 586 | | PLEA AGREEMENT as to Gerald Archuleta (dmw) (Entered: 06/16/2016) |
| 06/16/2016 | 587 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing as to Gerald Archuleta held on 6/16/2016; deft entered guilty plea to count 8 of superseding indictment; sentencing to be set; deft in custody; PSR ordered (Recording Info: LCR–ORGAN) (dmw) (Entered: 06/16/2016) |
| 06/16/2016 | 589 | | PROTECTIVE ORDER by District Judge James O. Browning (dmw) (Entered: 06/17/2016) |
| 06/17/2016 | 590 | | ORDER by District Judge James O. Browning granting 584 Motion for Extension of Time to File Response to Motion for Specific Discovery as to Joe Lawrence Gallegos (2), Edward Troup (3), Billy Garcia (5), Christopher Chavez (8), Jerry Montoya (14) (dmw) (Entered: 06/17/2016) |
| 06/17/2016 | 599 | | [APPLICABLE PARTY] SEALED EX–PARTE LETTER from Jerry Daniel |

|  |  |  |  |
|---|---|---|---|
|  |  |  | Herrera as to Benjamin Clark (dmw) (Entered: 06/22/2016) |
| 06/19/2016 | 598 |  | [APPLICABLE PARTY] SEALED EX–PARTE LETTER from Richard Jewkes as to Daniel Sanchez (dmw) (Entered: 06/22/2016) |
| 06/19/2016 | 600 |  | [APPLICABLE PARTY] SEALED EX–PARTE LETTER from Nathan Chambers as to Javier Alonso (dmw) (Entered: 06/22/2016) |
| 06/19/2016 | 604 |  | [APPLICABLE PARTY] SEALED EX–PARTE LETTER from Jacqueline Walsh as to Timothy Martinez (dmw) (Entered: 06/22/2016) |
| 06/20/2016 | 596 |  | [APPLICABLE PARTY] SEALED Forensic Report Received as to Eugene Martinez (dmw) (Entered: 06/22/2016) |
| 06/20/2016 | 597 |  | [APPLICABLE PARTY] SEALED EX–PARTE LETTER to District Judge James O. Browning from Theresa M. Duncan as to Anthony Ray Baca (dmw) (Entered: 06/22/2016) |
| 06/20/2016 | 602 |  | [APPLICABLE PARTY] SEALED EX–PARTE LETTER from Mary Stillinger as to Mauricio Varela (dmw) (Entered: 06/22/2016) |
| 06/20/2016 | 603 |  | [APPLICABLE PARTY] SEALED EX–PARTE LETTER from Ryan Villa as to Rudy Perez (dmw) (Entered: 06/22/2016) |
| 06/21/2016 | 594 |  | ORDER by District Judge James O. Browning granting 570 Motion to Withdraw as Attorney. David A. Lane withdrawn from case as to Eugene Martinez (6) (dmw) (Entered: 06/21/2016) |
| 06/21/2016 | 595 |  | NOTICE *of Unavailability of counsel 6/24–28, 9/8–22, 10/17–19 and 10/27–31/2016* by Joe Lawrence Gallegos (Benjamin, Brock) Modified text to add dates on 6/21/2016 (dmw). (Entered: 06/21/2016) |
| 06/23/2016 | 607 |  | COURT'S NOTICE of Memorandum Opinion and Order Entered in Unrelated Case Nos. 15–2485 (Doc. 181) and 15–3883 (Doc. 51) (dmw) (Entered: 06/23/2016) |
| 06/27/2016 | 608 |  | [APPLICABLE PARTY] SEALED EX–PARTE LETTER from Steven L. Almanza as to Timothy Martinez (dmw) (Entered: 06/28/2016) |
| 06/30/2016 | 609 |  | ORDER by District Judge James O. Browning granting 542 Defendants' Joint Motion to Expedite Briefing (dmw) (Entered: 06/30/2016) |
| 06/30/2016 | 610 |  | Arrest Warrant Returned Executed on 5/8/16 as to Paul Rivera. (vv) (Entered: 06/30/2016) |
| 07/05/2016 | 611 |  | First MOTION to Withdraw as Attorney by Donald Knight by Leonard Lujan. (Clark, Russell) (Entered: 07/05/2016) |
| 07/05/2016 | 612 |  | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning Regarding Services of Learned Counsel as to Timothy Martinez. Attorney Jacqueline K. Walsh terminated in case. (dmw) (Entered: 07/05/2016) |
| 07/05/2016 | 613 |  | RESPONSE in Opposition by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Jerry Montoya re 539 MOTION for Discovery (Attachments: # 1 Exhibit A)(Armijo, Maria) (Entered: 07/05/2016) |

| 07/06/2016 | 614 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning Regarding Continued Services of Learned Counsel as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez, Andrew Gallegos (dmw) (Entered: 07/06/2016) |
|---|---|---|---|
| 07/07/2016 | 615 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 568 Application for Budget as to Santos Gonzalez (dmw) (Entered: 07/07/2016) |
| 07/08/2016 | 617 | | ORDER by District Judge James O. Browning granting 611 Motion to Withdraw as Attorney. Donald R Knight withdrawn from case as to Leonard Lujan (4) (dmw) (Entered: 07/08/2016) |
| 07/11/2016 | 618 | | [APPLICABLE PARTY] EX PARTE ORDER by District Judge James O. Browning Regarding Case Budgeting for Non–Capital Representations (dmw) (Entered: 07/11/2016) |
| 07/13/2016 | 620 | | NOTICE of Non Availability by Carlos Herrera (Davis, Michael) (Entered: 07/13/2016) |
| 07/18/2016 | 622 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 621 Application filed by Santos Gonzalez (dmw) (Entered: 07/18/2016) |
| 07/18/2016 | 623 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 606 Motion for Order as to Carlos Herrera (25) (dmw) (Entered: 07/18/2016) |
| 07/18/2016 | 624 | | [CASE PARTICIPANTS] TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez held on June 2, 2016, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Tape Number: NA. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days.** |

|  |  |  |  |
|---|---|---|---|
|  |  |  | **For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 7/25/2016. Redaction Request due 8/8/2016. Redacted Transcript Deadline set for 8/18/2016. Release of Transcript Restriction set for 10/17/2016.(jab) (Entered: 07/18/2016) |
| 07/18/2016 | 625 |  | [APPLICABLE PARTY] SEALED TRANSCRIPT of Ex Parte CJA Meeting Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez held on June 2, 2016 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 07/18/2016) |
| 07/19/2016 | 626 |  | Unopposed MOTION for Extension of Time to File Response/Reply as to 539 MOTION for Discovery , 613 Response in Opposition by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Jerry Montoya. (Cooper, Robert) (Entered: 07/19/2016) |
| 07/20/2016 | 627 |  | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 619 Motion to Appoint Co–Counsel as to Jerry Montoya (14) (dmw) (Entered: 07/20/2016) |
| 07/21/2016 | 628 |  | ORDER by District Judge James O. Browning granting 626 Motion for Extension of Time to File Response to Response to Motion for Specific Discovery until 7/22/2016 (dmw) (Entered: 07/21/2016) |
| 07/25/2016 | 631 |  | Unopposed MOTION for Extension of Time to File Response/Reply as to 539 MOTION for Discovery , 613 Response in Opposition by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Jerry Montoya. (Cooper, Robert) (Entered: 07/25/2016) |
| 07/25/2016 | 632 |  | REPLY TO RESPONSE to Motion by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Jerry Montoya re 539 MOTION for Discovery (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C, # 4 Appendix D)(Cooper, Robert) (Entered: 07/25/2016) |
| 07/26/2016 | 633 |  | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 629 Motion to Appoint Counsel as to Joe Lawrence Gallegos (2) (dmw) (Entered: 07/26/2016) |
| 07/29/2016 | 635 |  | ORDER by District Judge James O. Browning granting 631 Motion for Extension of Time to File Reply to Response to Motion for Specific Discovery (dmw) (Entered: 07/29/2016) |
| 07/29/2016 | 637 |  | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 630 Motion Requesting Expanded Role of Participation by Learned Counsel as to Daniel Sanchez (18) (dmw) (Entered: 07/29/2016) |

| 07/29/2016 | 638 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 630 Motion for Leave to File Under Seal filed by Daniel Sanchez (dmw) (Entered: 07/29/2016) |
| 07/29/2016 | 639 | | NOTICE *of Unavailability of Counsel 8/8–12/2016* by Christopher Garcia (Sirignano, Amy) Modified text to add dates on 8/1/2016 (dmw). (Entered: 07/29/2016) |
| 08/04/2016 | | | Arrest of Shauna Gutierrez (nm) (Entered: 08/04/2016) |
| 08/04/2016 | 641 | | NOTICE OF HEARING as to Shauna Gutierrez: Initial Appearance set for 8/4/2016 at 09:30 AM in Albuquerque – 520 Gila Courtroom before Magistrate Judge Kirtan Khalsa. (nm) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/04/2016) |
| 08/04/2016 | 642 | | Clerk's Minutes for proceedings held before Magistrate Judge Kirtan Khalsa: Initial Appearance as to Shauna Gutierrez held on 8/4/2016; defendant remanded to the custody of the USMS. Arraignment/Detention set for 8/5/2016 at 09:30 AM in Albuquerque – 520 Gila Courtroom before Magistrate Judge Kirtan Khalsa. (Recording Info: Liberty–Gila) (eh) (Entered: 08/04/2016) |
| 08/04/2016 | 643 | | ORAL ORDER of Temporary Detention pending hearing as to Shauna Gutierrez by Magistrate Judge Kirtan Khalsa. (eh) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/04/2016) |
| 08/04/2016 | 644 | | CJA Appointment of Attorney Angela Arellanes for Shauna Gutierrez by Magistrate Judge Kirtan Khalsa (nm) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/04/2016) |
| 08/05/2016 | 646 | | Clerk's Minutes for proceedings held before Magistrate Judge Kirtan Khalsa: Arraignment/Detention as to Shauna Gutierrez (30) Count 14,15 held on 8/5/2016; defendant remanded to the custody of the USMS. (Recording Info: Liberty–Gila) (eh) (Entered: 08/08/2016) |
| 08/05/2016 | 647 | | ORDER OF DETENTION pending trial as to Shauna Gutierrez by Magistrate Judge Kirtan Khalsa. (eh) (Entered: 08/08/2016) |
| 08/10/2016 | 649 | | [APPLICABLE PARTY] PRETRIAL SERVICES REPORT as to Shauna Gutierrez (Valdez, Paul) (Entered: 08/10/2016) |
| 08/11/2016 | 650 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 634 Motion to Appoint Co–Counsel as to Javier Alonso (9) (dmw) (Entered: 08/12/2016) |
| 08/11/2016 | 651 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 636 Motion for Order to Appoint Co–Counsel as to Billy Garcia (5) (dmw) (Entered: 08/12/2016) |
| 08/11/2016 | 652 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 640 Motion to Appoint Co–Counsel as to Edward Troup (3) (dmw) (Entered: 08/12/2016) |
| 08/11/2016 | 653 | | |

| | | | |
|---|---|---|---|
| | | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning Clarifying Voucher Reductions (dmw) (Entered: 08/12/2016) |
| 08/11/2016 | 662 | | [APPLICABLE PARTY] SEALED ORDER by District Judge James O. Browning granting Motion for Interim Payments [see Doc. 185 filed in 16cr1613] (dmw) (Entered: 08/22/2016) |
| 08/18/2016 | 656 | | NOTICE OF ATTORNEY APPEARANCE Matthew Beck appearing for USA. (Beck, Matthew) (Entered: 08/18/2016) |
| 08/19/2016 | 658 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 648 Motion for Appointment of Co–Counsel as to Benjamin Clark (11) (dmw) (Entered: 08/19/2016) |
| 08/19/2016 | 659 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 654 Motion to Appoint Co–Counsel as to Anthony Ray Baca (21) (dmw) (Entered: 08/19/2016) |
| 08/19/2016 | 660 | | [APPLICABLE PARTY] SEALED EX–PARTE ORDER by District Judge James O. Browning granting 655 Motion for Second Counsel as to Christopher Garcia (24) (dmw) (Entered: 08/19/2016) |
| 08/19/2016 | 661 | | CJA Appointment of Attorney Christopher W Adams for Christopher Garcia by District Judge James O. Browning (dmw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/22/2016) |
| 08/22/2016 | 663 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 657 Motion for Appointment of Co–Counsel as to Timothy Martinez (16) (med) (Entered: 08/23/2016) |
| 08/22/2016 | 664 | | CJA Appointment of Attorney Ray Velarde for Timothy Martinez by District Judge James O. Browning (dmw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/23/2016) |
| 08/24/2016 | 665 | | Unopposed MOTION to Withdraw as Attorney by Donald R. West by Rudy Perez. (West, Donald) (Entered: 08/24/2016) |
| 08/29/2016 | 666 | | NOTICE OF HEARING as to Roy Paul Martinez: Change of Plea Hearing set for 9/15/2016 at 10:30 AM in Las Cruces, NM – 460 Organ Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/29/2016) |
| 08/29/2016 | 667 | | [APPLICABLE PARTY] AMENDED SEALED EX PARTE ORDER by District Judge James O. Browning Clarifying Voucher Reductions (dmw) (Entered: 08/30/2016) |
| 09/01/2016 | 668 | | MOTION to Compel *Discovery* by Jerry Montoya. (Strickland, Margaret) (Entered: 09/01/2016) |
| 09/06/2016 | 671 | | |

| | | | |
|---|---|---|---|
| | | | ORDER by District Judge James O. Browning granting 665 Motion to Withdraw as Attorney. Donald R West withdrawn from case as to Rudy Perez (26) (dmw) (Entered: 09/06/2016) |
| 09/06/2016 | 672 | | MOTION to Appoint Counsel by Rudy Perez. (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 09/06/2016) |
| 09/07/2016 | 674 | | Ex Parte MOTION for Order *for Second Counsel and Appointment Pro Hac Vice* by Carlos Herrera. (Davis, Michael) (Entered: 09/07/2016) |
| 09/07/2016 | 675 | | NOTICE *of Unavailability of counsel 11/9−15/2016* by Edward Troup (Harbour−Valdez, Cori) Modified text to add dates on 9/8/2016 (dmw). (Entered: 09/07/2016) |
| 09/07/2016 | 676 | | Joint MOTION to Vacate *March 2017 Trial Setting, Impose a Discovery Scheduling Order and Request for a Hearing* by Rudy Perez as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Villa, Ryan) (Entered: 09/07/2016) |
| 09/07/2016 | 677 | | NOTICE *of unavailability of counsel 11/1−15 and 12/1−4/2016* by Robert Martinez (McElhinney, Charles) Modified text on 9/8/2016 (dmw). (Entered: 09/07/2016) |
| 09/08/2016 | 678 | | Opposed MOTION for Discovery by Edward Troup as to Edward Troup, Billy Garcia, Javier Alonso, Arturo Arnulfo Garcia, Rudy Perez. (Harbour−Valdez, Cori) (Entered: 09/08/2016) |
| 09/08/2016 | 679 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 669 Motion for Order Re Interim Billing as to Eugene Martinez (6) (med) (Entered: 09/08/2016) |
| 09/09/2016 | 680 | | Unopposed MOTION to Continue *NUNC PRO TUNC MOTION TO CONTINUE THE OCTOBER 4, 2016, TRIAL SETTING, AND RELATED SCHEDULING ORDER* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Robert Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Attachments: # 1 Exhibit)(Harbour−Valdez, Cori) (Entered: 09/09/2016) |
| 09/13/2016 | 681 | | [CASE PARTICIPANTS] NOTICE of Joinder to Defendant's 676 Joint Motion to Vacate March 2017 Trial Setting, Impose a Discovery Scheduling Order and Request for Hearing by Timothy Martinez (Almanza, Steven) Modified linkage/text on 9/14/2016 (dmw). (Entered: 09/13/2016) |
| 09/13/2016 | 682 | | Unopposed MOTION to Withdraw Document 680 Unopposed MOTION to Continue *NUNC PRO TUNC MOTION TO CONTINUE THE OCTOBER 4, 2016, TRIAL SETTING, AND RELATED SCHEDULING ORDER* by Edward |

| | | |
|---|---|---|
| | | Troup as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Robert Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Harbour–Valdez, Cori) (Entered: 09/13/2016) |
| 09/13/2016 | 683 | Unopposed MOTION to Continue *October 4, 2016 Trial Setting (Doc. 250) and Related Scheduling Order* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Robert Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Harbour–Valdez, Cori) (Entered: 09/13/2016) |
| 09/14/2016 | 684 | NOTICE *Unopposed Notice to Withdraw Doc. 680 and Doc. 682* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Robert Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Santos Gonzalez, Paul Rivera, Shauna Gutierrez (Harbour–Valdez, Cori) (Entered: 09/14/2016) |
| 09/15/2016 | 685 | CONSENT TO PLEA BEFORE US MAGISTRATE JUDGE by Roy Paul Martinez (dmw) (Entered: 09/15/2016) |
| 09/15/2016 | 686 | PLEA AGREEMENT as to Roy Paul Martinez (dmw) (Entered: 09/15/2016) |
| 09/15/2016 | 687 | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing as to Roy Paul Martinez held on 9/15/2016; deft entered guilty plea to counts 9 and 10 of SSI; sentencing to be set; deft in custody (Recording Info: LCR–Dona Ana) (dmw) (Entered: 09/15/2016) |
| 09/16/2016 | 688 | NOTICE *OF JOINDER TO DEFENDANTS JOINT MOTION TO CONTINUE THE OCTOBER 4, 2016, TRIAL SETTING, AND RELATED SCHEDULING ORDER* by Allen Patterson as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez re 683 Unopposed MOTION to Continue *October 4, 2016 Trial Setting (Doc. 250) and Related Scheduling Order* (Lahann, Jeffrey) (Entered: 09/16/2016) |
| 09/16/2016 | 689 | NOTICE *of Joinder to Doc. 683* by Conrad Villegas (Crow, B.J.) (Entered: 09/16/2016) |
| 09/19/2016 | 690 | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Robert Martinez: Change of Plea Hearing set for 9/22/2016 at 9:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO** |

| | | | |
|---|---|---|---|
| | | | **THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/19/2016) |
| 09/19/2016 | 691 | | RESPONSE in Opposition by USA as to Rudy Perez re 672 MOTION to Appoint Counsel *United States' Response in Opposition to Motion for Appointment of Second Counsel* (Attachments: # 1 Exhibit)(Beck, Matthew) (Entered: 09/19/2016) |
| 09/19/2016 | 692 | | NOTICE *of Unavailability of Counsel for Defendant Christopher Garcia* by Christopher Garcia (Sirignano, Amy) (Entered: 09/19/2016) |
| 09/21/2016 | 693 | | NOTICE of motion hearing regarding the following motions: 1) Motion for Specific Discovery 539 ; 2) Motion to Compel Discovery 668 ; and 3) Motion for Specific Discovery 678 scheduled for 10/4/2016 at 10:30 AM in Albuquerque – 320 Rio Grande Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] Modified text on 9/21/2016 to indicate hearing will take place in Rio Grande Courtroom (dc). (Entered: 09/21/2016) |
| 09/22/2016 | 694 | | RESPONSE in Opposition by USA as to Edward Troup, Billy Garcia, Javier Alonso, Arturo Arnulfo Garcia, Rudy Perez re 678 Opposed MOTION for Discovery *United States' Response in Opposition to Defendants' Motion for Specific Discovery* (Beck, Matthew) (Entered: 09/22/2016) |
| 09/22/2016 | 695 | | [APPLICABLE PARTY] SEALED EX–PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning and Circuit Judge Neil Gorsuch as to Rudy Perez (dmw) (Entered: 09/22/2016) |
| 09/22/2016 | 696 | | [APPLICABLE PARTY] SEALED EX–PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning and Circuit Judge Neil Gorsuch as to Carlos Herrera (dmw) (Entered: 09/22/2016) |
| 09/22/2016 | 697 | | ORDER by District Judge James O. Browning granting 674 Motion to Appoint Counsel Carey Corlew Bhalla for Carlos Herrera (25) (dmw) (Entered: 09/22/2016) |
| 09/22/2016 | 698 | | Joint MOTION for Disclosure *and Production of Confidential Informant* by Rudy Perez as to Edward Troup, Jerry Montoya, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez, Andrew Gallegos. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Villa, Ryan) (Entered: 09/22/2016) |
| 09/22/2016 | 699 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 673 Motion for Supplemental Database Funds (meq) (Entered: 09/22/2016) |
| 09/22/2016 | 715 | | SEALED CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE IN A FELONY CASE by Robert Martinez. (kls) Modified document security on 12/20/2016. (kls) (Entered: 10/03/2016) |
| 09/22/2016 | 716 | | SEALED PLEA AGREEMENT as to Robert Martinez. (kls) Modified document security on 12/20/2016. (kls) (Entered: 10/03/2016) |

| 09/22/2016 | 717 | | SEALED Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 9/22/2016 as to Robert Martinez (22); Guilty plea entered to counts 9s–10s of the Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) Modified document security on 12/20/2016. (kls) (Entered: 10/03/2016) |
|---|---|---|---|
| 09/26/2016 | 700 | | MOTION for Order to Show Cause *Defendant's Motion to Show Cause for Violation of Order, Document 299 and Request for Evidentiary Hearing on Violations of 4th Amendment and 6th Amendments to the United States Constitution* by Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 09/26/2016) |
| 09/28/2016 | 701 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning as to Billy Garcia (Attachments: # 1 Attachment)(meq) (Entered: 09/28/2016) |
| 09/28/2016 | 702 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning as to Anthony Ray Baca (meq) (Entered: 09/28/2016) |
| 09/28/2016 | 703 | | MOTION to Withdraw Attorney Orlando Mondragon by Christopher Chavez. (meq) (Entered: 09/28/2016) |
| 09/28/2016 | 704 | | MOTION to Withdraw as Attorney by Orlando Mondragon by Christopher Chavez. (Mondragon, Orlando) (Entered: 09/28/2016) |
| 09/30/2016 | 705 | | REPLY TO RESPONSE to Motion by Rudy Perez re 672 MOTION to Appoint Counsel (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Villa, Ryan) (Entered: 09/30/2016) |
| 09/30/2016 | 706 | | NOTICE *of Completion of Briefing* by Rudy Perez re 672 MOTION to Appoint Counsel (Villa, Ryan) (Entered: 09/30/2016) |
| 09/30/2016 | 707 | | NOTICE *of Completion of Briefing* by Rudy Perez re 676 Joint MOTION to Vacate *March 2017 Trial Setting, Impose a Discovery Scheduling Order and Request for a Hearing* (Villa, Ryan) (Entered: 09/30/2016) |
| 09/30/2016 | 708 | | STATUS REPORT *REGARDING MOTION FOR SPECIFIC DISCOVERY* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Jerry Montoya (Attachments: # 1 Appendix, # 2 Appendix)(Castle, James) Modified linkage on 9/30/2016 (dmw). (Entered: 09/30/2016) |
| 09/30/2016 | 709 | | MOTION for Extension of Time to File Response/Reply as to 668 MOTION to Compel *Discovery* by USA as to Jerry Montoya, Mario Rodriguez, Timothy Martinez, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Armijo, Maria) (Entered: 09/30/2016) |
| 09/30/2016 | 710 | | RESPONSE in Opposition by USA as to Jerry Montoya, Mario Rodriguez, Timothy Martinez, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez re 668 MOTION to Compel *Discovery* (Beck, Matthew) (Entered: 09/30/2016) |
| 09/30/2016 | 711 | | Unopposed MOTION for Order *to Exceed Page Limits for Reply* by Edward Troup. (Harbour–Valdez, Cori) (Entered: 09/30/2016) |

| 09/30/2016 | 712 | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Edward Troup re 678 Opposed MOTION for Discovery (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Harbour–Valdez, Cori) (Entered: 09/30/2016) |
| 10/03/2016 | 718 | [APPLICABLE PARTY] ORDER regarding the Defendant's Sealed Motion to Allow Defendant to Waive His Appearance for Pre–Trial Hearings and Motion to Withdraw From Pre–Trial Motions [Doc. 539, 668 and 678] by District Judge James O. Browning denying the motion or motions without prejudice to renewing. The motion to waive appearance is denied. If he has not pled or gone to trial, he needs to attend pretrial hearings. If he wants to withdraw from pre–trial motions, he needs to seek the position of others and file a notice stating the position of others. THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED. (kw) (Entered: 10/03/2016) |
| 10/03/2016 | 719 | APPENDIX/SUPPLEMENT *FILING OF SUPPLEMENTAL AUTHORITY RE DISCOVERY MOTIONS* (Hernandez, Santiago) (Entered: 10/03/2016) |
| 10/04/2016 | 721 | [APPLICABLE PARTY] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning. Related Document(s): 720 Letter as to Christopher Garcia (dmw) (Entered: 10/04/2016) |
| 10/04/2016 | 722 | ORDER TO CONTINUE by District Judge James O. Browning granting 683 MOTION to Continue *Trial Setting and Related Scheduling Order* and rescheduling on 3/6/2017 at 09:00 AM in Albuquerque – 460 Vermejo Courtroom. (dmw) (Entered: 10/04/2016) |
| 10/04/2016 | 723 | NOTICE of motion hearing regarding the Motion for Appointment of Second Counsel 672 scheduled for 10/5/2017 at 09:00 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/04/2016) |
| 10/06/2016 | 724 | Unopposed MOTION for Extension of Time to File Response/Reply as to 698 Joint MOTION for Disclosure *and Production of Confidential Informant* by USA as to Rudy Perez. (Armijo, Maria) (Entered: 10/06/2016) |
| 10/07/2016 | 729 | ORDER by District Judge James O. Browning granting 711 Motion to Exceed Page Limit as to Edward Troup (3) (meq) (Entered: 10/12/2016) |
| 10/11/2016 | 727 | ORDER by District Judge James O. Browning granting 724 Motion for Extension of Time to File Response as to Rudy Perez (26) (meq) (Entered: 10/11/2016) |
| 10/11/2016 | 728 | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying in part 541 Opposed MOTION for Reconsideration of Protective Order; denying in part 342 MOTION for Order *re Compliance with Rules*; granting in part and denying in part 302 Brief; granting in part and denying in part 315 Reply; denying 358 360 Notice; and denying 535 Motion to Suspend Scheduling Order, Request for Status Conference and Ex Parte CJA Conference (meq) (Entered: 10/11/2016) |
| 10/12/2016 | 730 | Unopposed MOTION for Extension of Time to File Response/Reply as to 700 MOTION for Order to Show Cause *Defendant's Motion to Show Cause* |

| | | | |
|---|---|---|---|
| | | | *for Violation of Order, Document 299 and Request for Evidentiary Hearing on Violations of 4th Amendment and 6th Amendments to the United States Constitution* by USA as to Joe Lawrence Gallegos. (Armijo, Maria) (Entered: 10/12/2016) |
| 10/12/2016 | 731 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning and Circuit Judge Neil Gorsuch as to Joe Lawrence Gallegos (Attachments: # 1 Attachment)(meq) (Entered: 10/12/2016) |
| 10/12/2016 | 732 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning and Circuit Judge Neil Gorsuch as to Edward Troup (Attachments: # 1 Attachment)(meq) (Entered: 10/12/2016) |
| 10/12/2016 | 733 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning and Circuit Judge Neil Gorsuch as to Javier Alonso (Attachments: # 1 Attachment)(meq) (Entered: 10/12/2016) |
| 10/12/2016 | 734 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning and Circuit Judge Neil Gorsuch as to Jerry Montoya (Attachments: # 1 Attachment)(meq) (Entered: 10/12/2016) |
| 10/12/2016 | 735 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER by District Judge James O. Browning and Circuit Judge Neil Gorsuch as to Daniel Sanchez (Attachments: # 1 Attachment)(meq) (Entered: 10/12/2016) |
| 10/13/2016 | 736 | | ORDER TO SHOW CAUSE by District Judge James O. Browning. Show Cause Hearing set for 10/28/2016 at 11:00 AM in Albuquerque – 460 Vermejo Courtroom. (meq) (Entered: 10/13/2016) |
| 10/14/2016 | 737 | | ORDER by District Judge James O. Browning granting 672 Motion to Appoint Counsel; Justine Fox–Young for Rudy Perez appointed. (meq) (Entered: 10/14/2016) |
| 10/14/2016 | 738 | | LETTER from James Verdream (meq) (Entered: 10/14/2016) |
| 10/14/2016 | 739 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 725 Application for Additional Funding as to Santos Gonzalez (28) (meq) (Entered: 10/14/2016) |
| 10/17/2016 | 740 | | NOTICE *Of Withdrawal of Motions to Withdraw as Counsel* by Christopher Chavez (Mondragon, Orlando) (Entered: 10/17/2016) |
| 10/17/2016 | 741 | | RESPONSE in Opposition by USA as to Rudy Perez re 698 Joint MOTION for Disclosure *and Production of Confidential Informant* (Beck, Matthew) (Entered: 10/17/2016) |
| 10/17/2016 | 742 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 726 Motion for Order for Funds to Reimburse the CDA for Tablet Accessories and Shipping Expenses (meq) (Entered: 10/18/2016) |

| 10/18/2016 | 743 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez held on October 4, 2016, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Tape Number: NA. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br>Notice of Intent to Request Redaction set for 10/25/2016. Redaction Request due 11/8/2016. Redacted Transcript Deadline set for 11/18/2016. Release of Transcript Restriction set for 1/17/2017.(jab) (Entered: 10/18/2016) |
| 10/18/2016 | 744 | | NOTICE *United States' Notice of Proposed Scheduling Order* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez (Armijo, Maria) (Entered: 10/18/2016) |
| 10/21/2016 | 745 | | Unopposed MOTION for Protective Order by USA as to Rudy Perez. (Beck, Matthew) (Entered: 10/21/2016) |
| 10/21/2016 | 746 | | NOTICE *of Non Availability (December 16, 2016 through January 3, 2017)* by Carlos Herrera (Davis, Michael) (Entered: 10/21/2016) |
| 10/26/2016 | 747 | | NOTICE *Unavailability 11/9–11/18* by Allen Patterson (Lahann, Jeffrey) Modified text on 10/27/2016 (meq). (Entered: 10/26/2016) |
| 10/26/2016 | 748 | | ORDER by District Judge James O. Browning granting 745 Motion for Protective Order as to Rudy Perez (26) (meq) (Entered: 10/26/2016) |
| 10/26/2016 | 749 | | ORDER by District Judge James O. Browning granting 709 Motion for Extension of Time to File Response to Motion to Compel Discovery (meq) (Entered: 10/26/2016) |

| 10/26/2016 | 750 | | ORDER by District Judge James O. Browning granting 730 Motion for Extension of Time to File Response to Motion to Show Cause (meq) (Entered: 10/26/2016) |
|---|---|---|---|
| 10/26/2016 | 751 | | NOTICE *of Non−Availability of Counsel 11/18−11/25* by Billy Garcia (Cooper, Robert) Modified text on 10/27/2016 (meq). (Entered: 10/26/2016) |
| 10/26/2016 | 752 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 698 Joint MOTION for Disclosure *and Production of Confidential Informant* by Edward Troup as to Edward Troup, Jerry Montoya, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Andrew Gallegos. (Harbour−Valdez, Cori) (Entered: 10/26/2016) |
| 10/28/2016 | 753 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying in part 541 Opposed MOTION for Reconsideration of Protective Order; denying in part 342 MOTION for Order re Compliance with Rules; granting in part and denying in part 302 Brief; granting in part and denying in part 315 Reply; denying 358 360 Notice; and denying 535 Motion to Suspend Scheduling Order, Request for Status Conference and Ex Parte CJA Conference(meq). (Entered: 10/28/2016) |
| 10/28/2016 | 754 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Show Cause Hearing as to Jerry Armenta held on 10/28/2016 (Court Reporter: J. Bean) (dmw) (Entered: 10/31/2016) |
| 11/01/2016 | 755 | | ORDER by District Judge James O. Browning granting 752 Motion for Extension of Time to File Reply as to Edward Troup (3), Jerry Montoya (14), Daniel Sanchez (18), Anthony Ray Baca (21), Carlos Herrera (25), Andrew Gallegos (27) (meq) (Entered: 11/01/2016) |
| 11/01/2016 | 756 | | NOTICE *of Address Change for Counsel* by Santos Gonzalez (Johnson, Erlinda) (Entered: 11/01/2016) |
| 11/02/2016 | 757 | | NOTICE of Change of Address by Nathan D. Chambers (Chambers, Nathan) (Entered: 11/02/2016) |
| 11/04/2016 | 759 | | SCHEDULING ORDER by District Judge James O. Browning (meq) (Entered: 11/04/2016) |
| 11/07/2016 | 761 | | NOTICE of Change of Address by Patrick J. Burke (Burke, Patrick) (Entered: 11/07/2016) |
| 11/07/2016 | 762 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Edward Troup as to Edward Troup, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera re 698 Joint MOTION for Disclosure *and Production of Confidential Informant* (Harbour−Valdez, Cori) (Entered: 11/07/2016) |
| 11/08/2016 | 763 | | Joint MOTION Exclude the Prosecution Team from Evidence Viewing *on December 2, 2016* by Rudy Perez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Fox−Young, Justine) |

| | | | (Entered: 11/08/2016) |
|---|---|---|---|
| 11/10/2016 | 764 | | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Benjamin Clark: Change of Plea Hearing set for 11/15/2016 at 11:00 AM in Las Cruces, NM – 360 Dona Ana Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/10/2016) |
| 11/10/2016 | 765 | | NOTICE *Amended Notice of Unavailability of Counsel for Defendant Christopher Garcia 11/23/16 – 11/27/16,and 12/25/16 – 1/6/17* by Christopher Garcia (Sirignano, Amy) Modified text on 11/14/2016 (meq). (Entered: 11/10/2016) |
| 11/11/2016 | 766 | | MOTION to Supplement *Supplement to Joint Motion for Disclosure and Production of Confidential Informant (Doc. 698)* by Jerry Montoya. (Strickland, Margaret) (Entered: 11/11/2016) |
| 11/15/2016 | 767 | | SEALED CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE by Benjamin Clark. (kls) Modified document security on 1/23/2017. (kls) (Entered: 11/15/2016) |
| 11/15/2016 | 768 | | SEALED PLEA AGREEMENT as to Benjamin Clark. (kls) Modified document security on 1/23/2017. (kls) (Entered: 11/15/2016) |
| 11/15/2016 | 769 | | SEALED Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 11/15/2016 as to Benjamin Clark (11); Guilty plea entered to Count 3s of the Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR–Dona Ana) (kls) Modified document security on 1/23/2017. (kls) (Entered: 11/15/2016) |
| 11/16/2016 | 771 | | NOTICE of motion hearing regarding the Defendants' Joint Motion to Vacate March 2017 Trial Setting, Impose a Discovery Scheduling Order and Request for a Hearing 676 , the Joint Motion for Disclosure and Production of Confidential Informant 698 ; and the Joint Motion to Exclude the Prosecution Team From December 2, 2016 Evidence Viewing 763 scheduled for 11/29/2016 at 09:00 AM in Albuquerque – 320 Rio Grande Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/16/2016) |
| 11/22/2016 | 772 | | Opposed MOTION for Release from Custody by Shauna Gutierrez. (Arellanes, Angela) (Entered: 11/22/2016) |
| 11/22/2016 | 787 | | LETTER from anonymous (meq) (Entered: 11/30/2016) |
| 11/23/2016 | 773 | | Joint MOTION for Disclosure *of Grand Jury and Petit Jury Data* by Anthony Ray Baca. (Lowry, Marc) (Entered: 11/23/2016) |
| 11/23/2016 | 774 | | LETTER by District Judge James O. Browning (meq) (Entered: 11/23/2016) |
| 11/25/2016 | 775 | | |

| | | | |
|---|---|---|---|
| | | | RESPONSE in Opposition by USA as to Rudy Perez re 763 Joint MOTION Exclude the Prosecution Team from Evidence Viewing *on December 2, 2016* (Armijo, Maria) (Entered: 11/25/2016) |
| 11/27/2016 | 776 | | [CASE PARTICIPANTS] NOTICE *SEALED OF JOINDER TO DEFENDANTS SEALED OPPOSED MOTION TO COMPEL THE PRODUCTION OF UNREDACTED DISCOVERY AND THE IDENTIFICATION OF CONFIDENTIAL INFORMANTS* by Christopher Garcia (Sirignano, Amy) (Entered: 11/27/2016) |
| 11/27/2016 | 777 | | NOTICE *of Anthony Ray Baca's Opposition to Proposed Courtroom Restrictions* (Lowry, Marc) Modified text on 11/28/2016 (meq). (Entered: 11/27/2016) |
| 11/28/2016 | 778 | | [CASE PARTICIPANTS] REPLY by Christopher Garcia *SEALED SUPPORTING SEALED OPPOSED MOTION TO COMPEL THE PRODUCTION OF UNREDACTED DISCOVERY AND THE IDENTIFICATION OF CONFIDENTIAL INFORMANTS* (Sirignano, Amy) (Entered: 11/28/2016) |
| 11/28/2016 | 779 | | NOTICE *of Joinder of Defendant, Anthony Ray Baca's Opposition to Proposed Courtroom Restrictions (Doc. 777)* by Carlos Herrera re 777 Notice (Other) (Davis, Michael) (Entered: 11/28/2016) |
| 11/28/2016 | 780 | | NOTICE *of Unavailability of Counsel 11/29/16* by Arturo Arnulfo Garcia (Blackburn, Billy) Modified on 11/29/2016 (meq). (Entered: 11/28/2016) |
| 11/28/2016 | 781 | | NOTICE *of Joinder* by Rudy Perez re 777 Notice (Other) (Villa, Ryan) (Entered: 11/28/2016) |
| 11/28/2016 | 782 | | NOTICE *of Joinder of Defendant Edward Troup in Anthony Ray Baca's Opposition to Proposed Courtroom Restrictions (Doc. 777)* by Edward Troup (Burke, Patrick) (Entered: 11/28/2016) |
| 11/28/2016 | 783 | | NOTICE *of Joinder of Defendant Joe Gallegos to Defendant Anthony Ray Baca's Opposition to Proposed Courtroom Restrictions (Doc. 777)* by Joe Lawrence Gallegos re 777 Notice (Other) (Benjamin, Brock) (Entered: 11/28/2016) |
| 11/29/2016 | 784 | | REPLY TO RESPONSE to Motion by Rudy Perez re 763 Joint MOTION Exclude the Prosecution Team from Evidence Viewing *on December 2, 2016* (Fox–Young, Justine) (Entered: 11/29/2016) |
| 11/29/2016 | 785 | | NOTICE *of Joinder* by Santos Gonzalez re 777 Notice (Other) (Johnson, Erlinda) (Entered: 11/29/2016) |
| 11/29/2016 | 797 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing granting in part and denying in part 676 Joint MOTION to Vacate *March 2017 Trial Setting, Impose a Discovery Scheduling Order and Request for a Hearing*, Inclined to grant in part and deny in part 763 Joint MOTION Exclude the Prosecution Team from Evidence Viewing *on December 2, 2016*, granting 698 Joint MOTION for Disclosure *and Production of Confidential Informant*, granting 773 Joint MOTION for Disclosure *of Grand Jury and Petit Jury Data* (Court Reporter: J. Bean) (meq) (Entered: 12/12/2016) |

| 11/30/2016 | 786 | | NOTICE of Appeal of Detention Hearing as to Defendant Shauna Gutierrez scheduled for 11/30/2016 at 01:00 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/30/2016) |
|---|---|---|---|
| 11/30/2016 | 795 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing as to Shauna Gutierrez held on 11/30/2016 re 772 Opposed MOTION for Release from Custody filed by Shauna Gutierrez (Court Reporter: J. Bean) (meq) (Entered: 12/08/2016) |
| 12/01/2016 | 788 | | NOTICE *Regarding Status of Tablets* by Edward Troup as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez (Harbour–Valdez, Cori) (Entered: 12/01/2016) |
| 12/02/2016 | 790 | | THIRD SCHEDULING ORDER by District Judge James O. Browning (meq) (Entered: 12/02/2016) |
| 12/07/2016 | 791 | | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Jerry Armenta: Change of Plea Hearing set for 12/13/2016 at 9:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/07/2016) |
| 12/08/2016 | 794 | | MOTION for Bond *Opposed Motion for Release of Defendant Pending Trial* by Christopher Chavez. (Attachments: # 1 Exhibit Transcript excerpts, # 2 Exhibit Duke City Rehab Letter, # 3 Exhibit Employment letter, # 4 Exhibit Dismissal record, # 5 Exhibit Medical records)(Mondragon, Orlando) (Entered: 12/08/2016) |
| 12/09/2016 | 796 | | ORDER by District Judge James O. Browning quashing 736 Order to Show Cause (meq) (Entered: 12/09/2016) |
| 12/12/2016 | 798 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 760 Motion to Appoint Steven Potolsky as Co–Counsel as to Mario Rodriguez (15) (meq) (Entered: 12/12/2016) |
| 12/12/2016 | 799 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 770 Motion to Appoint Counsel John L. Granberg for Christopher Chavez appointed. as to Christopher Chavez (8) (meq) (Entered: 12/12/2016) |
| 12/13/2016 | 800 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 792 Application for Additional Funding for Investigator and to Allow Interim Billing (meq) (Entered: 12/13/2016) |

| 12/13/2016 | 801 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE by Jerry Armenta. (kls) (Entered: 12/15/2016) |
|---|---|---|---|
| 12/13/2016 | 802 | | PLEA AGREEMENT as to Jerry Armenta. (kls) (Entered: 12/15/2016) |
| 12/13/2016 | 803 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 12/13/2016 as to Jerry Armenta (13); Guilty Plea entered to Counts 6s and 7s of the Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 12/15/2016) |
| 12/20/2016 | 804 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez held on November 29, 2016, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Tape Number: NA. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br>Notice of Intent to Request Redaction set for 12/27/2016. Redaction Request due 1/10/2017. Redacted Transcript Deadline set for 1/20/2017. Release of Transcript Restriction set for 3/20/2017.(jab) (Entered: 12/20/2016) |
| 12/21/2016 | | | U.S. Probation and Pretrial Services added as interested party.(Richardson, Brenda) (Entered: 12/21/2016) |
| 12/22/2016 | 805 | | NOTICE *OF RELATED CASE (related to 16CR4572)* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez (Castellano, Randy) (Entered: 12/22/2016) |
| 12/22/2016 | 806 | | |

| | | RESPONSE in Opposition by USA as to Christopher Chavez re 794 MOTION for Bond *Opposed Motion for Release of Defendant Pending Trial* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Armijo, Maria) (Entered: 12/22/2016) |
|---|---|---|
| 12/23/2016 | 807 | MOTION to Sever Defendant *All Defendants in Counts 6 and 7* by Rudy Perez as to Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Villa, Ryan) (Entered: 12/23/2016) |
| 12/29/2016 | 808 | TRANSCRIPT of Motion Proceedings as to Rudy Perez held on October 4, 2016, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Tape Number: NA. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 1/5/2017. Redaction Request due 1/19/2017. Redacted Transcript Deadline set for 1/30/2017. Release of Transcript Restriction set for 3/29/2017.(jab) (Entered: 12/29/2016) |
| 01/03/2017 | 809 | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying in part the discovery requests in the Defendants Motion for Specific Discovery 539 , granting in part and denying in part the discovery requests in the Defendants Motion to Compel Discovery 668 , and granting in part and denying in part the discovery requests in the Defendants Motion for Specific Discovery 678 (meq) (Entered: 01/03/2017) |
| 01/05/2017 | 810 | NOTICE *of Law Firm Change of Name* by Anthony Ray Baca (Lowry, Marc) (Entered: 01/05/2017) |
| 01/06/2017 | 812 | RESPONSE in Support by Javier Alonso as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez re 807 MOTION to Sever Defendant *All Defendants in Counts 6 and 7* (Chambers, Nathan) (Entered: |

| | | | |
|---|---|---|---|
| | | | 01/06/2017) |
| 01/06/2017 | 813 | | RESPONSE in Support by Edward Troup as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez re 807 MOTION to Sever Defendant *All Defendants in Counts 6 and 7 Joined by Joe Lawrence Gallegos, Leonard Lujan, Billy Garcia, Allen Patterson and Christopher Chavez* (Harbour–Valdez, Cori) (Entered: 01/06/2017) |
| 01/06/2017 | 814 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 807 MOTION to Sever Defendant *All Defendants in Counts 6 and 7 United States' Unopposed Motion for Extension of Time to Respond to Defendants' Joint Motion to Sever Defendants Charged with Offenses in Counts 6 and 7* by USA as to Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Castellano, Randy) (Entered: 01/06/2017) |
| 01/08/2017 | 815 | | MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* by Daniel Sanchez. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit)(Jacks, Amy) (Entered: 01/08/2017) |
| 01/08/2017 | 816 | | APPENDIX/SUPPLEMENT re 698 Joint MOTION for Disclosure *and Production of Confidential Informant Supplemental Brief Regarding Timing of Disclosure of the Identity of Confidential Informant* by Anthony Ray Baca (Duncan, Theresa) (Entered: 01/08/2017) |
| 01/09/2017 | 817 | | [CASE PARTICIPANTS] Opposed MOTION to Identify Witness/Informant by Christopher Garcia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q)(Adams, Christopher) (Entered: 01/09/2017) |
| 01/10/2017 | 818 | | ORDER by District Judge James O. Browning granting 814 Motion for Extension of Time to File Response as to Jerry Montoya (14), Mario Rodriguez (15), Timothy Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Anthony Ray Baca (21), Carlos Herrera (25), Rudy Perez (26) (meq) (Entered: 01/10/2017) |
| 01/11/2017 | 819 | | NOTICE *Edward's Notice* by Christopher Garcia (Sirignano, Amy) (Entered: 01/11/2017) |
| 01/11/2017 | 820 | | Opposed MOTION to Compel *Disclosure of Benjamin Clark's Plea Agreement and Related Documents* by Edward Troup as to Edward Troup, Javier Alonso, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, |

|  |  |  | Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez. (Burke, Patrick) Termed Mtn per 846 on 2/1/2017 (meq). (Entered: 01/11/2017) |
|---|---|---|---|
| 01/11/2017 | 821 |  | NOTICE *PURSUANT TO EDWARDS V. ARIZONA* by Edward Troup (Harbour–Valdez, Cori) (Entered: 01/11/2017) |
| 01/13/2017 | 822 |  | NOTICE of motion hearing scheduled for 2/7–8/2017 at 08:30 AM in Albuquerque – 320 Rio Grande Courtroom before District Judge James O. Browning. An agenda of the matters to be heard will follow at a later date.(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/13/2017) |
| 01/13/2017 | 823 |  | NOTICE *Notice of Unavailability 2/7/17–2/8/17* by Joe Lawrence Gallegos (Benjamin, Brock) Modified on 1/17/2017 (meq). (Entered: 01/13/2017) |
| 01/13/2017 | 824 |  | RESPONSE in Opposition by USA as to Rudy Perez re 698 Joint MOTION for Disclosure *and Production of Confidential Informant United States' Supplement in Response to Opposition to the Joint Motion for Disclosure and Production of Confidential Informant* (Armijo, Maria) (Entered: 01/13/2017) |
| 01/15/2017 | 825 |  | NOTICE *of Unavailability of Counsel for February 24, 2017 through March 6, 2017* by Santos Gonzalez (Johnson, Erlinda) (Entered: 01/15/2017) |
| 01/17/2017 | 828 |  | [CASE PARTICIPANTS] JOINDER to 817 Opposed MOTION to Identify Witness/Informant joined by Defendant Rudy Perez. (Villa, Ryan) (Entered: 01/17/2017) |
| 01/18/2017 | 829 |  | [CASE PARTICIPANTS] BRIEF by Anthony Ray Baca (Attachments: # 1 Baca 2475, # 2 Baca 2503, # 3 Baca 2899, # 4 Baca 3695, # 5 Baca 3816, # 6 Baca 4326, # 7 Baca 4328, # 8 Baca 4330, # 9 Baca 4472, # 10 DeLeon 1562, # 11 DeLeon 2705, # 12 DeLeon 2711, # 13 DeLeon 2828, # 14 DeLeon 2851, # 15 DeLeon 3369, # 16 DeLeon 20161, # 17 DeLeon 20163)(Duncan, Theresa) (Entered: 01/18/2017) |
| 01/18/2017 | 831 |  | [CASE PARTICIPANTS] NOTICE *of Joinder* by Rudy Perez as to Daniel Sanchez, Rudy Perez re 815 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 01/18/2017) |
| 01/20/2017 | 834 |  | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Paul Rivera: Change of Plea Hearing set for 2/1/2017 at 1:30 PM in Las Cruces, NM – 360 Dona Ana Courtroom before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/20/2017) |
| 01/20/2017 | 835 |  | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Ruben Hernandez: Change of Plea Hearing set for 2/1/2017 at 2:00 PM in Las Cruces, NM – 360 Dona Ana Courtroom before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT** |

| | | | |
|---|---|---|---|
| | | | **DATE.**<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 01/20/2017) |
| 01/20/2017 | 836 | | RESPONSE in Opposition by USA as to Jerry Montoya, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez re 807 MOTION to Sever Defendant *All Defendants in Counts 6 and 7 United States' Response in Opposition to the Joint Motion to Sever Defendants Charged with Offenses in Counts 6 and 7* (Armijo, Maria) (Entered: 01/20/2017) |
| 01/23/2017 | 837 | | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Timothy Martinez: Change of Plea Hearing set for 1/26/2017 at 11:00 AM in Las Cruces, NM – 460 Organ Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls)<br>**COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.**<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 01/23/2017) |
| 01/23/2017 | 838 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 815 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Armijo, Maria) (Entered: 01/23/2017) |
| 01/23/2017 | 839 | | Unopposed MOTION for Leave to File *Oversized Brief* by Daniel Sanchez. (Attachments: # 1 Exhibit [Proposed] Order)(Jacks, Amy) (Entered: 01/23/2017) |
| 01/23/2017 | 840 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 817 Opposed MOTION to Identify Witness/Informant by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Armijo, Maria) (Entered: 01/23/2017) |
| 01/23/2017 | 841 | | NOTICE *of Joinder* by Rudy Perez as to Anthony Ray Baca, Rudy Perez re 829 Brief, (Villa, Ryan) (Entered: 01/23/2017) |
| 01/24/2017 | 842 | | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Jerry Montoya: Change of Plea Hearing set for 1/26/2017 at 11:00 AM in Las Cruces, NM – 460 Organ Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) |

| | | | |
|---|---|---|---|
| | | | **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.**<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 01/24/2017) |
| 01/24/2017 | 844 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 829 Brief, by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Armijo, Maria) (Entered: 01/24/2017) |
| 01/24/2017 | 845 | | MEMORANDUM in Support by Mario Rodriguez re 807 MOTION to Sever Defendant *All Defendants in Counts 6 and 7 ; and Motion to Join* (Potolsky, Steven) (Entered: 01/24/2017) |
| 01/25/2017 | 846 | | NOTICE *Unopposed Notice to Withdraw Doc 820* by Edward Troup as to Edward Troup, Javier Alonso, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez re 820 Opposed MOTION to Compel *Disclosure of Benjamin Clark's Plea Agreement and Related Documents* (Harbour–Valdez, Cori) (Entered: 01/25/2017) |
| 01/25/2017 | 847 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 830 Motion for Authorization for Investigative Services as to Carlos Herrera (25) (meq) (Entered: 01/25/2017) |
| 01/25/2017 | 848 | | Unopposed MOTION for Leave to File Excess Pages by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Beck, Matthew) (Entered: 01/25/2017) |
| 01/25/2017 | 849 | | RESPONSE by USA as to Christopher Garcia *United States' Response in Opposition to the Supplemental Brief in Support of the Opposed Motion to Compel the Identification of Confidential Informants (Doc. 817)* (Beck, Matthew) Modified typo on 1/26/2017 (meq). (Entered: 01/25/2017) |
| 01/26/2017 | 851 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE by Timothy Martinez. (kls) (Entered: 01/26/2017) |
| 01/26/2017 | 852 | | PLEA AGREEMENT as to Timothy Martinez. (kls) (Entered: 01/26/2017) |
| 01/26/2017 | 853 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 1/26/2017 as to Timothy Martinez (16); Guilty plea entered to Counts 6s and 7s of the Superseding Indictment; |

| | | | |
|---|---|---|---|
| | | | Sentencing hearing to be set; Defendant to remain in custody. (LCR–Organ) (kls) (Entered: 01/26/2017) |
| 01/26/2017 | 854 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE by Jerry Montoya. (kls) (Entered: 01/26/2017) |
| 01/26/2017 | 855 | | PLEA AGREEMENT as to Jerry Montoya. (kls) (Entered: 01/26/2017) |
| 01/26/2017 | 856 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 1/26/2017 as to Jerry Montoya (14); Guilty plea entered to Counts 6s and 7s of the Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR–Organ) (kls) (Entered: 01/26/2017) |
| 01/26/2017 | 857 | | NOTICE *of Addendum* by Daniel Sanchez re 839 Unopposed MOTION for Leave to File *Oversized Brief* (Jacks, Amy) (Entered: 01/26/2017) |
| 01/27/2017 | 858 | | [CASE PARTICIPANTS] First MOTION to Sever Defendant by Santos Gonzalez. (Johnson, Erlinda) (Entered: 01/27/2017) |
| 01/30/2017 | 860 | | [APPLICABLE PARTY] AMENDED EX PARTE ORDER by District Judge James O. Browning as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Shauna Gutierrez re 833 (meq) (Entered: 01/30/2017) |
| 01/30/2017 | 861 | | ORDER by District Judge James O. Browning granting 844 Motion for Extension of Time to File Response (meq) (Entered: 01/30/2017) |
| 01/30/2017 | 862 | | ORDER by District Judge James O. Browning granting 838 Motion for Extension of Time to File Response as to MOTION to Compel the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials (meq) (Entered: 01/30/2017) |
| 01/30/2017 | 863 | | Unopposed MOTION for Leave to File Excess Pages by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Beck, Matthew) (Entered: 01/30/2017) |
| 01/30/2017 | 864 | | RESPONSE by USA as to Daniel Sanchez, Rudy Perez re 815 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials UNITED STATES RESPONSE IN OPPOSITION TO DEFENDANT DANIEL SANCHEZS MOTION TO COMPEL THE GOVERNMENT TO REVEAL THE IDENTITY OF CERTAIN CONFIDENTIAL INFORMANTS REFERENCED IN DISCOVERY MATERIALS [No. CR 15–4268, Doc. 815; No. CR 16–1613, Doc. 285], DEFENDANT RUDY PEREZS NOTICE OF JOINDER IN DEFENDANT DANIEL SANCHEZS MOTION TO COMPEL [No. CR 15–4268, Doc. 831], AND DEFENDANT RUDY PEREZS NOTICE OF JOINDER IN* |

| | | | |
|---|---|---|---|
| | | | *DEFENDANT CHRIS GARCIAS SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSED MOTION TO COMPEL THE IDENTIFICATION OF CONFIDENTIAL INFORMANTS [No. CR 15–4268, Doc. 828]* (Attachments: # 1 Exhibit)(Beck, Matthew) (Entered: 01/30/2017) |
| 01/30/2017 | 865 | | Unopposed MOTION to Allow Counsel to Access Sealed Pleadings in Related Cases by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Allen Patterson, Javier Alonso, Arturo Arnulfo Garcia, Jerry Montoya, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Santos Gonzalez, Shauna Gutierrez. (Duncan, Theresa) (Entered: 01/30/2017) |
| 01/31/2017 | 866 | | First MOTION for Bill of Particulars by Santos Gonzalez. (Johnson, Erlinda) (Entered: 01/31/2017) |
| 01/31/2017 | 867 | | ORDER by District Judge James O. Browning granting 840 Motion for Extension of Time to File Response to Defendant Christopher Garcias Supplemental Brief in Support of Opposed Motion to Compel the Identification of Confidential Informants (meq) (Entered: 01/31/2017) |
| 01/31/2017 | 868 | | Opposed MOTION to Sever Defendant *Andrew Gallegos and/or Counts 4 and 5* by Andrew Gallegos as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Roberts, Donavon) (Entered: 01/31/2017) |
| 01/31/2017 | 869 | | [CASE PARTICIPANTS] MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* by Billy Garcia as to Edward Troup, Billy Garcia. (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C, # 4 Appendix D, # 5 Appendix E, # 6 Appendix F, # 7 Appendix G, # 8 Appendix H, # 9 Appendix I, # 10 Appendix J, # 11 Appendix K, # 12 Appendix L, # 13 Appendix M, # 14 Appendix N, # 15 Appendix O, # 16 Appendix P, # 17 Appendix Q, # 18 Appendix R, # 19 Appendix S, # 20 Appendix T, # 21 Appendix U, # 22 Appendix V, # 23 Appendix W)(Castle, James) Modified security on 2/2/2017 (mjr). (Entered: 01/31/2017) |
| 01/31/2017 | 870 | | [APPLICABLE PARTY] EX PARTE ORDER by District Judge James O. Browning granting 859 Motion as to Edward Troup (3), Anthony Ray Baca (21), Rudy Perez (26) (meq) (Entered: 01/31/2017) |
| 01/31/2017 | 871 | | ORDER by District Judge James O. Browning granting 848 Motion for Leave to File Excess Pages (meq) (Entered: 01/31/2017) |
| 02/01/2017 | 872 | | [CASE PARTICIPANTS] MOTION for Disclosure *of Confidential Informants* by Javier Alonso. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit)(Chambers, Nathan) (Entered: 02/01/2017) |

| 02/01/2017 | 873 | | MOTION to Seal Document *872* by Javier Alonso. (Chambers, Nathan) (Entered: 02/01/2017) |
|---|---|---|---|
| 02/01/2017 | 874 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, notifying the parties of the agenda for the motions hearing scheduled for 2/7–8/2017. On 2/7/17 the Court will hear Docs. 700 and 807 . The hearing on 2/8/2017 will be held in conjunction with CR 16–1613 and argument will resume as it relates to Doc. 698 in CR 15–4268 and 239 in CR 16–1613; also, the Court will take up Doc. 815 in CR 15–4268 and 285 in CR 16–1613. THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/01/2017) |
| 02/01/2017 | 875 | | NOTICE of motion hearing regarding the Opposed Motion for Release of Detention Pending Trial 794 scheduled for 2/7/2017 at 04:00 PM in Albuquerque – 320 Rio Grande Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/01/2017) |
| 02/01/2017 | 876 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE by Paul Rivera. (kls) (Entered: 02/01/2017) |
| 02/01/2017 | 877 | | PLEA AGREEMENT as to Paul Rivera. (kls) (Entered: 02/01/2017) |
| 02/01/2017 | 878 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 2/1/2017 as to Paul Rivera (29); Guilty plea entered to Counts 14 and 15 of the Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR–Dona Ana) (kls) (Entered: 02/01/2017) |
| 02/01/2017 | 879 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE by Ruben Hernandez. (kls) (Entered: 02/01/2017) |
| 02/01/2017 | 880 | | PLEA AGREEMENT as to Ruben Hernandez. (kls) (Entered: 02/01/2017) |
| 02/01/2017 | 881 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 2/1/2017 as to Ruben Hernandez (12); Guilty plea entered to Count 3s of the Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR–Dona Ana) (kls) (Entered: 02/01/2017) |
| 02/02/2017 | 882 | | [CASE PARTICIPANTS] Joint MOTION to Sever Defendant by Billy Garcia as to Edward Troup, Billy Garcia. (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C, # 4 Appendix D, # 5 Appendix E)(Castle, James) (Entered: 02/02/2017) |
| 02/02/2017 | 883 | | MOTION to Seal Document *No. 869 and No. 882* by Billy Garcia as to Edward Troup, Billy Garcia. (Castle, James) (Entered: 02/02/2017) |
| 02/03/2017 | 884 | | [CASE PARTICIPANTS] STATUS REPORT *(SECOND) Regarding Discovery* by Edward Troup, Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario |

| | | |
|---|---|---|
| | | Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez (Attachments: # 1 Exhibit A–1, # 2 Exhibit A–2)(Burke, Patrick) (Entered: 02/03/2017) |
| 02/03/2017 | 885 | MOTION to Seal Document *Second Status Report Regarding Discovery (Doc. 884)* by Edward Troup, Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Burke, Patrick) (Entered: 02/03/2017) |
| 02/03/2017 | 886 | Unopposed MOTION for Leave to File Excess Pages *for Reply to Motion to Sever* by Rudy Perez. (Villa, Ryan) (Entered: 02/03/2017) |
| 02/03/2017 | 887 | REPLY TO RESPONSE to Motion by Rudy Perez as to Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez re 807 MOTION to Sever Defendant *All Defendants in Counts 6 and 7* (Villa, Ryan) (Entered: 02/03/2017) |
| 02/03/2017 | 888 | RESPONSE in Opposition by USA as to Joe Lawrence Gallegos re 700 MOTION for Order to Show Cause *Defendant's Motion to Show Cause for Violation of Order, Document 299 and Request for Evidentiary Hearing on Violations of 4th Amendment and 6th Amendments to the United States Constitution* (Armijo, Maria) (Entered: 02/03/2017) |
| 02/03/2017 | 889 | Unopposed MOTION for Leave to File Excess Pages by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Beck, Matthew) (Entered: 02/03/2017) |
| 02/03/2017 | 890 | MOTION Permission to File Omnibus Response *to Sealed Supplemental Brief in Support of Motion to Compel the Identification of Confidential Informants (Doc. 829)* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez. (Beck, Matthew) (Entered: 02/03/2017) |
| 02/03/2017 | 891 | |

| | | | |
|---|---|---|---|
| | | | [CASE PARTICIPANTS] RESPONSE by USA as to Anthony Ray Baca (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit)(Beck, Matthew) (Entered: 02/03/2017) |
| 02/05/2017 | 892 | | REPLY TO RESPONSE to Motion by Daniel Sanchez re 815 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* (Attachments: # 1 Affidavit Declaration of Amy E. Jacks, # 2 Affidavit Declaration of Richard Jewkes)(Jacks, Amy) (Entered: 02/05/2017) |
| 02/05/2017 | 893 | | [CASE PARTICIPANTS] MOTION to Sever Defendant *Alonso and Troup and Count 3* by Javier Alonso. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Chambers, Nathan) (Entered: 02/05/2017) |
| 02/05/2017 | 894 | | MOTION to Seal *Doc 893* by Javier Alonso. (Chambers, Nathan) (Entered: 02/05/2017) |
| 02/06/2017 | 895 | | [APPLICABLE PARTY] EX PARTE PRETRIAL BUDGET ORDER by District Judge James O. Browning as to Conrad Villegas (kg) (Entered: 02/06/2017) |
| 02/06/2017 | 896 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning sustaining the objections in Defendant Anthony Ray Baca's Opposition to Proposed Courtroom Restrictions (Doc. 777).(kw) (Entered: 02/06/2017) |
| 02/07/2017 | 898 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Christopher Garcia re 817 Opposed MOTION to Identify Witness/Informant (Sirignano, Amy) (Entered: 02/07/2017) |
| 02/07/2017 | 899 | | ORDER by District Judge James O. Browning granting 863 Motion for Leave to File Excess Pages (meq) (Entered: 02/07/2017) |
| 02/07/2017 | 900 | | ORDER by District Judge James O. Browning granting 886 Motion for Leave to File Excess Pages as to Rudy Perez (26) (meq) (Entered: 02/07/2017) |
| 02/07/2017 | 901 | | [CASE PARTICIPANTS] Amended MOTION to Sever Defendant by Santos Gonzalez. (Johnson, Erlinda) (Entered: 02/07/2017) |
| 02/07/2017 | 902 | | APPENDIX/SUPPLEMENT re 807 MOTION to Sever Defendant *All Defendants in Counts 6 and 7* (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 02/07/2017) |
| 02/07/2017 | 904 | | ORDER by District Judge James O. Browning granting 889 Motion for Leave to File Excess Pages (dc) (Entered: 02/08/2017) |
| 02/07/2017 | 917 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing held on 2/7/2017 re 794 MOTION for Bond *Opposed Motion for Release of Defendant Pending Trial* filed by Christopher Chavez (Court Reporter: J. Bean) (meq) (Entered: 02/13/2017) |
| 02/08/2017 | 903 | | |

| | | | |
|---|---|---|---|
| | | | [CASE PARTICIPANTS] REPLY by Anthony Ray Baca *in Support of His Sealed Supplemental Brief In Support of His Motion to Compel the Identification of Confidential Informants* (Lowry, Marc) (Entered: 02/08/2017) |
| 02/08/2017 | 905 | | [CASE PARTICIPANTS] NOTICE *OF JOINDER IN DEFENDANT DANIEL SANCHEZ MOTION TO COMPEL [DOC. 815]* by Mauricio Varela as to Daniel Sanchez re 815 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* (Stillinger, Mary) Modified text on 2/9/2017 (kg). (Entered: 02/08/2017) |
| 02/08/2017 | 906 | | ORDER by District Judge James O. Browning granting 865 Motion to Allow Counsel to Access Sealed Pleadings in Related Cases (meq) (Entered: 02/08/2017) |
| 02/08/2017 | 907 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying in part the discovery requests in the Defendants Motion for Specific Discovery 539, granting in part and denying in part the discovery requests in the Defendants Motion to Compel Discovery 668, and granting in part and denying in part the discovery requests in the Defendants Motion for Specific Discovery 678 (meq) (Entered: 02/08/2017) |
| 02/08/2017 | 908 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 866 First MOTION for Bill of Particulars , 872 MOTION for Disclosure *of Confidential Informants*, 882 Joint MOTION to Sever Defendant , 868 Opposed MOTION to Sever Defendant *Andrew Gallegos and/or Counts 4 and 5*, 893 MOTION to Sever Defendant *Alonso and Troup and Count 3*, 869 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials*, 858 First MOTION to Sever Defendant by USA as to Billy Garcia, Javier Alonso, Andrew Gallegos, Santos Gonzalez. (Armijo, Maria) (Entered: 02/08/2017) |
| 02/08/2017 | 909 | | NOTICE OF JOINDER *to Docket No. 815 and 829* by Javier Alonso. (Chambers, Nathan) Modified text 2/9/2017 (meq). (Entered: 02/08/2017) |
| 02/08/2017 | 910 | | **FILED IN ERROR** MEMORANDUM OPINION AND ORDER by District Judge James O. Browning, the objections in Anthony Ray Bacas Opposition to Proposed Restrictions on his Participation and Inclusion in Court Proceedings, are sustained; the directives outlined in the Email from Royce Namoca (USMS) to KAun Wild, are not incorporated in any court order; Defendant Baca will not, at this time, be subject to partitioning as the United States Marshal Service has suggested (meq) Modified on 2/9/2017 (meq). (Entered: 02/08/2017) |
| 02/08/2017 | 911 | | ORDER by District Judge James O. Browning granting 890 Motion for Permission to File Omnibus Reponse (meq) (Entered: 02/08/2017) |
| 02/09/2017 | 912 | | ORDER by District Judge James O. Browning granting 839 Motion for Leave to File Oversized Brief as to Daniel Sanchez (18) (meq) (Entered: 02/09/2017) |
| 02/09/2017 | 913 | | NOTICE of Status Conference as to Defendant Eugene Martinez scheduled for 2/10/2016 at 08:45 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) |

| | | | |
|---|---|---|---|
| | | | [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/09/2017) |
| 02/09/2017 | 914 | | First MOTION to Compel *Specific Discovery* by Santos Gonzalez. (Johnson, Erlinda) (Entered: 02/09/2017) |
| 02/09/2017 | 915 | | AMENDED NOTICE of Status Conference as to Defendant Eugene Martinez scheduled for 2/10/2017 (not 2016) at 08:45 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/09/2017) |
| 02/10/2017 | 930 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Status Conference as to Eugene Martinez held on 2/10/2017 (Court Reporter: J. Bean) (meq) (Entered: 02/27/2017) |
| 02/11/2017 | 916 | | Second MOTION to Withdraw as Attorney by Orlando Mondragon by Christopher Chavez. (Mondragon, Orlando) (Entered: 02/11/2017) |
| 02/19/2017 | 918 | | Amended MOTION to Compel *Specific Discovery* by Santos Gonzalez. (Johnson, Erlinda) (Entered: 02/19/2017) |
| 02/21/2017 | 919 | | ORDER by District Judge James O. Browning granting 908 Motion for Extension of Time to File Responses to Motions as to Billy Garcia (5), Javier Alonso (9), Andrew Gallegos (27), Santos Gonzalez (28) (meq) (Entered: 02/21/2017) |
| 02/22/2017 | 921 | | NOTICE *of Unavailability of Counsel for March 21, 2017 through March 25, 2017* by Santos Gonzalez (Johnson, Erlinda) (Entered: 02/22/2017) |
| 02/23/2017 | 922 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 850 Motion to Appoint Counsel as to Arturo Arnulfo Garcia (10) (meq) (Entered: 02/23/2017) |
| 02/24/2017 | 923 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez held on 02/07/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number (505)348–2283. Tape Number: N/A. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | |
|---|---|---|
| | | (jab) (Entered: 02/24/2017) |
| 02/24/2017 | 924 | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez held on 02/08/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number (505)384–2283. Tape Number: N/A.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>(jab) (Entered: 02/24/2017) |
| 02/24/2017 | 925 | [CASE PARTICIPANTS] UNITED STATES' RESPONSE in Opposition to Defendant's Motion to Sever re 858 (bc) (Entered: 02/24/2017) |
| 02/27/2017 | 926 | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 826 Motion for Leave to File as to Mauricio Varela (17) (meq) (Entered: 02/27/2017) |
| 02/27/2017 | 927 | [APPLICABLE PARTY] SEALED EX PARTE MOTION Requesting Authorization for an Expanded Role for Learned Counsel by Mauricio Varela. (meq) (Entered: 02/27/2017) |
| 02/27/2017 | 928 | ORDER by District Judge James O. Browning granting 873 Motion to Seal Document as to Javier Alonso (9) (meq) (Entered: 02/27/2017) |
| 02/27/2017 | 929 | ORDER by District Judge James O. Browning granting 894 Motion to Seal as to Javier Alonso (9) (meq) (Entered: 02/27/2017) |
| 02/27/2017 | 931 | UNITED STATES' RESPONSE OPPOSING Defendant Santos Gonzalez's Motion for a Bill of Particulars 866 (dc) (Entered: 02/27/2017) |
| 02/28/2017 | 932 | DEFENDANT SHAUNA GUTIERREZ' OPPOSED SUPPLEMENT IN SUPPORT OF MOTIONS FOR SEVERANCE re Docs. 807 845 868 882 893 and 901 (dc) (Entered: 02/28/2017) |
| 02/28/2017 | 933 | UNITED STATES' RESPONSE IN OPPOSITION to the Opposed Motion to Sever Counts 4 and 5 868 . (dc) (Entered: 03/01/2017) |
| 02/28/2017 | 934 | UNITED STATES' RESPONSE IN OPPOSITION to Defendants Troup and Garcia's Motion to Compel the Government to Reveal the Identity of Certain |

| | | | |
|---|---|---|---|
| | | | Confidential Informants Referenced in Discovery Materials 869 (dc) (Entered: 03/01/2017) |
| 03/01/2017 | 935 | | UNITED STATES' RESPONSE IN OPPOSITION to Defendant Javier Alonso's Motion to Compel the Government to Reveal the Identity of Certain Confidential Informants 872 . (dc) (Entered: 03/01/2017) |
| 03/02/2017 | 936 | | UNITED STATES' RESPONSE IN OPPOSITION to Defendants Troup and Garcia's Motion to Sever Counts 1 and 2 882 (dc) (Entered: 03/03/2017) |
| 03/03/2017 | 937 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 920 Motion to Transfer Expert Authorization as to Rudy Perez (26) (meq) (Entered: 03/03/2017) |
| 03/03/2017 | 938 | | [APPLICABLE PARTY] Psychological Report Received as to Eugene Martinez. (dc) (Entered: 03/03/2017) |
| 03/06/2017 | 939 | | NOTICE OF UNAVAILABILITY OF COUNSEL for Defendant Christopher Garcia beginning April 3 through April 13, 2017 and April 15 through April 23, 2017. (dc) (Entered: 03/06/2017) |
| 03/06/2017 | 940 | | UNITED STATES' RESPONSE IN OPPOSITION to Defendant Javier Alonso's Motion to Sever 893 (dc) (Entered: 03/06/2017) |
| 03/07/2017 | 941 | | [APPLICABLE PARTY] SEALED NOTICE of Sealed Competency Hearing as to Defendant Eugene Martinez scheduled for 3/20/2017 at 09:00 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/07/2017) |
| 03/07/2017 | 942 | | ORDER by District Judge James O. Browning granting 885 Motion to Seal Document as to Edward Troup (3), Billy Garcia (5) (meq) (Entered: 03/07/2017) |
| 03/08/2017 | 943 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning, the Defendants' Joint Motion to Vacate March 2017 Trial Setting, Impose a Discovery Scheduling Order and Request for a Hearing, 676 is granted; the Joint Motion to Exclude the Prosecution Team from December 2, 2016 Evidence Viewing, 763 is granted; and The Joint Motion for Disclosure and Production of Confidential Informant, 698 is granted in part, and denied in part without prejudice (meq) (Entered: 03/08/2017) |
| 03/09/2017 | 944 | | NOTICE OF HEARING as to Leonard Lujan: Change of Plea Hearing set for 3/13/2017 at 03:00 PM in Albuquerque – 560 Cimarron Courtroom before Magistrate Judge Karen B. Molzen. (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/09/2017) |
| 03/09/2017 | 949 | | REDACTED SECOND SUPERSEDING INDICTMENT as to Angel DeLeon (1) count(s) 1ss, Joe Lawrence Gallegos (2) count(s) 1ss, 4ss, 5ss, 13ss, 14ss, 15ss, 16ss, Edward Troup (3) count(s) 1ss, 3ss, Leonard Lujan (4) count(s) 1ss–2ss, Billy Garcia (5) count(s) 1ss– 2ss, Eugene Martinez (6) count(s) 2ss, Allen Patterson (7) count(s) 2ss, Christopher Chavez (8) count(s) 2ss, Javier Alonso (9) count(s) 3ss, Arturo Arnulfo Garcia (10) count(s) 3ss, Mario Rodriguez (15) count(s) 6sss, 7sss, Mauricio Varela (17) |

| | | | |
|---|---|---|---|
| | | | cou nt(s) 6sss, 7sss, Daniel Sanchez (18) count(s) 6sss, 7sss, Conrad Villegas (20) count(s) 8ss, Anthony Ray Baca (21) count(s) 6sss, 7sss, 8sss, 9sss−10sss, Christopher Garcia (24) count(s) 10ss, 11ss, 12ss, Carlos Herrera (25) count(s) 6ss, 7s s, Rudy Perez (26) count(s) 6ss, 7ss, Andrew Gallegos (27) count(s) 4s, 5s, Santos Gonzalez (28) count(s) 14s, 15s, 16s, Shauna Gutierrez (30) count(s) 14s, 15s, 16s, Brandy Rodriguez (31) count(s) 14, 15, 16. (kls) (Entered: 03/11/2017) |
| 03/09/2017 | 956 | | CJA 20: Appointment of Alfred D Creecy for Brandy Rodriguez by District Judge James O. Browning. (kls) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/13/2017) |
| 03/10/2017 | 945 | | UNOPPOSED MOTION TO EXTEND DEADLINE Within Which to File Reply to Government's Response to Defendant Santos Gonzales' Motion to Sever 858 by Santos Gonzalez. (dc) (Entered: 03/10/2017) |
| 03/10/2017 | 946 | | UNITED STATES' UNOPPOSED MOTION FOR EXTENSION OF TIME to Respond to Defendant Santos Gonzalez's Amended Motion to Compel Specific Discovery 918 (dc) (Entered: 03/10/2017) |
| 03/10/2017 | 948 | | UNOPPOSED MOTION FOR EXTENSION OF TIME by Edward Troup, Billy Garcia to File Reply to Government's Response to Edward Troup and Billy Garcia's Motion to Compel the Government to Reveal Identity of Certain Confidential Informants Referenced in Discovery Materials 869 (dc) (Entered: 03/11/2017) |
| 03/10/2017 | 950 | | NOTICE OF HEARING as to Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, and Shauna Gutierrez: Arraignment set for 3/15/2017 at 1:30 PM in Las Cruces, NM − 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) ***Inquiries regarding this setting should be directed to CRD Kristin Solis at Kristin_Solis@nmcourt.fed.us*** *[THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]* (Entered: 03/11/2017) |
| 03/13/2017 | 951 | | [CASE PARTICIPANTS] First MOTION for Discovery *Specific Discovery* by Javier Alonso. (Chambers, Nathan) (Entered: 03/13/2017) |
| 03/13/2017 | 952 | | MOTION to Seal Document *951* by Javier Alonso. (Chambers, Nathan) (Entered: 03/13/2017) |
| 03/13/2017 | 953 | | Unopposed MOTION to Continue *Arraignment Setting Scheduled for March 15, 2017* by Santos Gonzalez. (Johnson, Erlinda) (Entered: 03/13/2017) |
| 03/13/2017 | 954 | | Unopposed MOTION to Continue *Arraignment* by Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 03/13/2017) |
| 03/13/2017 | 955 | | MOTION to Continue *Arraignment* by Mario Rodriguez. (Hernandez, Santiago) (Entered: 03/13/2017) |
| 03/13/2017 | 957 | | |

| | | | |
|---|---|---|---|
| | | | Summons Issued as to Brandy Rodriguez: Initial Appearance/Arraignment/Detention Hearing set for 3/27/2017 at 10:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) (Entered: 03/13/2017) |
| 03/13/2017 | 958 | | MOTION to Continue *Arraignment* by Billy Garcia. (Cooper, Robert) (Entered: 03/13/2017) |
| 03/13/2017 | 959 | | REPLY TO RESPONSE to Motion by Santos Gonzalez re 866 First MOTION for Bill of Particulars (Johnson, Erlinda) (Entered: 03/13/2017) |
| 03/13/2017 | 960 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 936 Response in Opposition *to Edward Troup and Billy Garcias Motion to Sever Counts 1 and 2* by Edward Troup as to Edward Troup, Billy Garcia. (Harbour–Valdez, Cori) (Entered: 03/13/2017) |
| 03/13/2017 | 961 | | MOTION to Withdraw as Attorney by Phillip Linder by Allen Patterson. (Lahann, Jeffrey) (Entered: 03/13/2017) |
| 03/13/2017 | 962 | | CONSENT TO PLEA BEFORE US MAGISTRATE JUDGE by Leonard Lujan (nm) (Entered: 03/13/2017) |
| 03/13/2017 | 963 | | PLEA AGREEMENT as to Leonard Lujan (nm) (Entered: 03/13/2017) |
| 03/13/2017 | 964 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Plea Hearing as to Leonard Lujan held on 3/13/2017; Guilty Plea entered by Leonard Lujan (4) as to Superseding Indictment. (Recording Info: FTR – Cimarron) (nm) (Entered: 03/13/2017) |
| 03/13/2017 | 965 | | MINUTE ORDER, pursuant to the direction of Magistrate Judge Gregory B. Wormuth, vacating the Arraignments set for 3/15/2017 as to Arturo Arnulfo Garcia and Christopher Garcia *only.* (See CR 16–1613 JB, Doc. 382) (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/13/2017) |
| 03/13/2017 | 966 | | RESPONSE in Opposition by USA as to Santos Gonzalez re 918 Amended MOTION to Compel *Specific Discovery* (Armijo, Maria) (Entered: 03/13/2017) |
| 03/13/2017 | 967 | | FILED IN ERROR –– RESPONSE in Opposition by USA as to Santos Gonzalez re 918 Amended MOTION to Compel *Specific Discovery* (Armijo, Maria). Duplicate filing caused by system issues; document filed as 966 ; modified text on 3/14/2017 (dc). (Entered: 03/13/2017) |
| 03/13/2017 | 968 | | Opposed MOTION for Order *to SET ARRAIGNMENT ON SUPERSEDING INDICTMENT IN ALBUQUERQUE, NM FOR ALBUQUERQUE ATTORNEYS (FOR CONDIDERATION BY THE U.S. MAGISTRATE JUDGE)* by Christopher Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Sirignano, Amy) (Entered: 03/13/2017) |

| 03/13/2017 | 969 | | MINUTE ORDER, pursuant to the direction of Magistrate Judge Gregory B. Wormuth, vacating the Arraignment set for 3/15/2017 as to Leonard Lujan; Defendant has entered a guilty plea, Arraignment no longer necessary. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/14/2017) |
| --- | --- | --- | --- |
| 03/13/2017 | 970 | | ORDER by Magistrate Judge Gregory B. Wormuth granting 953 Motion to Continue Arraignment as to Santos Gonzalez (28), as described herein. (kls) (Entered: 03/14/2017) |
| 03/13/2017 | 971 | | ORDER by Magistrate Judge Gregory B. Wormuth granting 954 Motion to Continue Arraignment as to Joe Lawrence Gallegos (2); Arraignment reset for 3/21/2017 at 9:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) (Entered: 03/14/2017) |
| 03/13/2017 | 972 | | ORDER by Magistrate Judge Gregory B. Wormuth granting 955 Motion to Continue Arraignment as to Mario Rodriguez (15); Arraignment reset for 3/21/2017 at 9:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) (Entered: 03/14/2017) |
| 03/13/2017 | 973 | | ORDER by Magistrate Judge Gregory B. Wormuth granting 958 Motion to Continue Arraignment as to Billy Garcia (5), as described herein. (kls) (Entered: 03/14/2017) |
| 03/14/2017 | 974 | | ORDER by Magistrate Judge Gregory B. Wormuth denying as moot 968 Motion for Order as to Joe Lawrence Gallegos (2), Billy Garcia (5), Arturo Arnulfo Garcia (10), Christopher Garcia (24), and Santos Gonzalez (28); denying 968 Motion for Order as to Anthony Ray Baca (21), Carlos Herrera (25); and granting 968 Motion for Order as to Rudy Perez (26), Shauna Gutierrez (30). (kls) (Entered: 03/14/2017) |
| 03/14/2017 | 975 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Santos Gonzalez re 901 Amended MOTION to Sever Defendant (Johnson, Erlinda) (Entered: 03/14/2017) |
| 03/15/2017 | 976 | | REPLY by Javier Alonso re 935 Response in Opposition (Chambers, Nathan) (Entered: 03/15/2017) |
| 03/15/2017 | 977 | | NOTICE OF HEARING as to Billy Garcia, Arturo Arnulfo Garcia, Christopher Garcia, Rudy Perez, Santos Gonzalez and Shauna Gutierrez: Arraignment set for 3/24/2017 at 02:00 PM in Albuquerque – 320 Rio Grande Courtroom before Magistrate Judge Karen B. Molzen. (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/15/2017) |
| 03/15/2017 | 978 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 933 Response in Opposition *to Motion to Sever* by Andrew Gallegos as to Joe Lawrence Gallegos, Andrew Gallegos. (Roberts, Donavon) (Entered: 03/15/2017) |
| 03/15/2017 | 979 | | ORDER by District Judge James O. Browning granting 773 Motion for Disclosure of Grand and Petit Jury Data as to Anthony Ray Baca (21) (meq) (Entered: 03/15/2017) |

| 03/15/2017 | 980 | | ORDER by District Judge James O. Browning granting 945 Motion for Extension of Time to File Reply as to Santos Gonzalez (28) (meq) (Entered: 03/15/2017) |
|---|---|---|---|
| 03/15/2017 | 981 | | ORDER by District Judge James O. Browning granting 946 Motion for Extension of Time to File Response as to Santos Gonzalez (28) (meq) (Entered: 03/15/2017) |
| 03/15/2017 | 982 | | Unopposed MOTION to Continue *Arraignment Setting Scheduled for March 24, 2017* by Santos Gonzalez. (Johnson, Erlinda) (Entered: 03/15/2017) |
| 03/15/2017 | 986 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Edward Troup (3); Not Guilty plea entered to Counts 1ss and 3ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 987 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Allen Patterson (7); Not Guilty plea entered to Count 2ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 988 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Christopher Chavez (8); Not Guilty plea entered to Count 2ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 989 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Javier Alonso (9); Not Guilty plea entered to Count 3ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 990 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Mauricio Varela (17); Not Guilty plea entered to Counts 6ss and 7ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 991 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Daniel Sanchez (18); Not Guilty plea entered to Counts 6ss and 7ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 992 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Conrad Villegas (20); Not Guilty plea entered to Count 8ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 993 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Carlos Herrera (25); Not Guilty plea entered to Counts 6ss and 7ss of the Second Superseding |

| | | | |
|---|---|---|---|
| | | | Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 994 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Andrew Gallegos (27); Not Guilty plea entered to Count 4s and 5s of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/15/2017 | 995 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/15/2017 as to Anthony Ray Baca (21); Not Guilty plea entered to Counts 6ss, 7ss, 8ss, and 9ss–10ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/17/2017) |
| 03/16/2017 | 983 | | ORDER by District Judge James O. Browning granting 952 Motion to Seal Document as to Javier Alonso (9) (meq) (Entered: 03/16/2017) |
| 03/16/2017 | 984 | | ORDER by District Judge James O. Browning granting 948 Motion for Extension of Time to File Reply as to Edward Troup (3), Billy Garcia (5) (meq) (Entered: 03/16/2017) |
| 03/16/2017 | 985 | | ORDER by District Judge James O. Browning granting 978 Motion for Extension of Time to File Response/Reply as to Andrew Gallegos (27) (meq) (Entered: 03/16/2017) |
| 03/16/2017 | | | Reset Hearings as to Santos Gonzalez ONLY: Arraignment Reset for 3/20/2017 at 09:30 AM in Albuquerque – 320 Rio Grande Courtroom before Magistrate Judge Karen B. Molzen. (emr) (Entered: 03/16/2017) |
| 03/17/2017 | 996 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 940 Response in Opposition by Javier Alonso. (Chambers, Nathan) (Entered: 03/17/2017) |
| 03/17/2017 | 997 | | ORDER by District Judge James O. Browning granting 961 Motion to Withdraw as Attorney. Phillip A. Linder withdrawn from case as to Allen Patterson (7) (meq) (Entered: 03/20/2017) |
| 03/20/2017 | 998 | | ORDER by District Judge James O. Browning granting 996 Motion for Extension of Time to File Response as to Javier Alonso (9) (meq) (Entered: 03/20/2017) |
| 03/20/2017 | 999 | | ORDER by District Judge James O. Browning granting 960 Motion for Extension of Time to File Reply as to Edward Troup (3), Billy Garcia (5) (meq) (Entered: 03/20/2017) |
| 03/20/2017 | 1000 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Santos Gonzalez (28) Count 14,14s,15,15s,16s held on 3/20/2017 (Recording Info: RIO GRANDE @ 9:39 AM) (cl) (Entered: 03/20/2017) |
| 03/20/2017 | 1001 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Santos Gonzalez (28) Count 14,14s,15,15s,16s held on 3/20/2017 (Recording Info: RIO GRANDE @ 9:39 AM) (cl) (Entered: 03/20/2017) |

| 03/20/2017 | 1017 | | [APPLICABLE PARTY] SEALED Clerk's Minutes for proceedings held before District Judge James O. Browning: Competency Hearing as to Eugene Martinez held on 3/20/2017–3/21/2017 (Court Reporter: J. Bean) (meq) (Entered: 03/27/2017) |
| --- | --- | --- | --- |
| 03/21/2017 | 1002 | | [APPLICABLE PARTY] SEALED NOTICE resuming sealed competency hearing for Defendant Eugene Martinez scheduled for 3/21/2017 at 08:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw)(kw) <br> THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] <br> (Entered: 03/21/2017) |
| 03/21/2017 | 1003 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/21/2017 as to Joe Lawrence Gallegos (2); Not Guilty plea entered to Counts 1ss, 4ss, 5ss, 13ss, 14ss, 15ss, and 16ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/21/2017) |
| 03/21/2017 | 1004 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Arraignment held on 3/21/2017 as to Mario Rodriguez (15); Waiver of Appearance filed, Not Guilty plea entered on behalf of the Defendant to Counts 6ss and 7ss of the Second Superseding Indictment; Defendant to remain in custody. (LCR–Sierra Blanca) (kls) (Entered: 03/21/2017) |
| 03/21/2017 | 1005 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Mario Rodriguez. (kls) (Entered: 03/21/2017) |
| 03/21/2017 | 1006 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Santos Gonzalez re 918 Amended MOTION to Compel *Specific Discovery* (Johnson, Erlinda) (Entered: 03/21/2017) |
| 03/24/2017 | 1008 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Rudy Perez (nm) (Entered: 03/24/2017) |
| 03/24/2017 | 1009 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Christopher Garcia (nm) (Entered: 03/24/2017) |
| 03/24/2017 | 1018 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Rudy Perez (26) Count 6,6ss,7s,7ss held on 3/24/2017 (Recording Info: Rio Grande) (emr) (Entered: 03/27/2017) |
| 03/24/2017 | 1019 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Christopher Garcia (24) Count 8,10s,10ss,11s,11ss,12s,12ss held on 3/24/2017 (Recording Info: Rio Grande) (emr) (Entered: 03/27/2017) |
| 03/24/2017 | 1020 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Shauna Gutierrez (30) Count 14,14s,15,15s,16s held on 3/24/2017 (Recording Info: Rio Grande) (emr) (Entered: 03/27/2017) |
| 03/24/2017 | 1025 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Arturo Arnulfo Garcia (10) Count 3,3s,3ss held on 3/24/2017 (Recording Info: Rio Grande) (emr) (Entered: 03/28/2017) |
| 03/24/2017 | 1026 | | |

| | | | |
|---|---|---|---|
| | | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Billy Garcia (5) Count 1–2,1s–2s,1ss–2ss held on 3/24/2017 (Recording Info: Rio Grande) (emr) Modified on 3/28/2017 (emr). (Entered: 03/28/2017) |
| 03/27/2017 | 1011 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Edward Troup re 869 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* (Attachments: # 1 Exhibit, # 2 Exhibit)(Harbour–Valdez, Cori) (Entered: 03/27/2017) |
| 03/27/2017 | 1013 | | Summons Returned Executed on 3/16/17 as to Brandy Rodriguez (meq) (Entered: 03/27/2017) |
| 03/27/2017 | 1014 | | REPLY TO RESPONSE to Motion by Edward Troup, Billy Garcia re 882 Joint MOTION to Sever Defendant *Counts 1 and 2* (Attachments: # 1 Exhibit 1)(Burke, Patrick) (Entered: 03/27/2017) |
| 03/27/2017 | 1015 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Initial Appearance/Arraignment/Detention Hearing held on 3/27/2017 as to Brandy Rodriguez (31); Not Guilty plea ented to Counts 14, 15, and 16 of the Second Superseding Indictment; Conditions of Release set, Defendant to remain out of custody. (LCR–Sierra Blanca) (kls) (Entered: 03/27/2017) |
| 03/28/2017 | 1021 | | NOTICE of motions hearing scheduled for 4/20–21/2017 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. An agenda of the matters to be heard will follow at a later date.(kw) <br> [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] <br> (Entered: 03/28/2017) |
| 03/28/2017 | 1022 | | NOTICE *of Unavailability May 16, 2017 – June 3, 2017,* by Javier Alonso (Chambers, Nathan) Modified text on 3/29/2017 (meq). (Entered: 03/28/2017) |
| 03/28/2017 | 1023 | | MOTION to Dismiss *Motion to Dismiss and to Compel Government Disclosure of Grand Jury Transcripts* by Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 03/28/2017) |
| 03/28/2017 | 1027 | | NOTICE *Notice of Filing Attachment of Exhibits to Motion to Dismiss and to Compel Government Disclosure of Grand Jury Transcripts [Doc 1023]* by Joe Lawrence Gallegos re 1023 MOTION to Dismiss *Motion to Dismiss and to Compel Government Disclosure of Grand Jury Transcripts* (Benjamin, Brock) (Entered: 03/28/2017) |
| 03/28/2017 | 1028 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 869 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials*, 934 Response in Opposition by Billy Garcia. (Cooper, Robert) (Entered: 03/28/2017) |
| 03/29/2017 | 1029 | | Amended MOTION for Extension of Time to File Response/Reply as to 869 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials*, 934 Response in Opposition by Billy Garcia. (Cooper, Robert) (Entered: 03/29/2017) |

| 03/30/2017 | 1030 | | Unopposed MOTION for Extension of Time to File *Rule 16 & Rule 7(f) motions* by Eugene Martinez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Couleur, Douglas) (Entered: 03/30/2017) |
|---|---|---|---|
| 03/30/2017 | 1031 | | REPLY TO RESPONSE to Motion by Andrew Gallegos re 868 Opposed MOTION to Sever Defendant *Andrew Gallegos and/or Counts 4 and 5*, 978 Unopposed MOTION for Extension of Time to File Response/Reply as to 933 Response in Opposition *to Motion to Sever Counts 4 and 5* (Roberts, Donavon) (Entered: 03/30/2017) |
| 03/30/2017 | 1032 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Billy Garcia re 869 MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* (Attachments: # 1 Appendix A)(Castle, James) (Entered: 03/30/2017) |
| 03/30/2017 | 1033 | | Unopposed MOTION to Seal *Docket No. 1032* by Billy Garcia. (Attachments: # 1 Proposed Order)(Castle, James) (Entered: 03/30/2017) |
| 03/30/2017 | 1034 | | [CASE PARTICIPANTS] Opposed MOTION for Hearing *Sealed Opposed Motion for Emergency Hearing and Expedited Discovery Regarding Clients' and Family's Safety* by Christopher Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit A)(Sirignano, Amy) (Entered: 03/30/2017) |
| 03/30/2017 | 1035 | | MOTION for Leave to File Excess Pages by Javier Alonso. (Chambers, Nathan) (Entered: 03/30/2017) |
| 03/30/2017 | 1036 | | REPLY TO RESPONSE to Motion by Javier Alonso re 893 MOTION to Sever Defendant *Alonso and Troup and Count 3* (Chambers, Nathan) (Entered: 03/30/2017) |
| 03/31/2017 | 1037 | | [CASE PARTICIPANTS] MOTION to Compel *(SEALED)* by Rudy Perez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit 1, # 2 |

| | | | |
|---|---|---|---|
| | | | Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Fox−Young, Justine) (Entered: 03/31/2017) |
| 03/31/2017 | 1038 | | MOTION to Unseal Document *Motion to Compel [Doc. 1037]* by Rudy Perez. (Villa, Ryan) (Entered: 03/31/2017) |
| 04/03/2017 | 1041 | | [CASE PARTICIPANTS] NOTICE *of Joinder in Defendant Rudy Perez's Motion and Briefing to Compel Rule 16 and Brady Materials and For Order to Preserve Law Enforcement Notes* by Carlos Herrera (Davis, Michael) (Entered: 04/03/2017) |
| 04/03/2017 | 1043 | | NOTICE *United States' Notice of Expert Witness Testimony* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 04/03/2017) |
| 04/04/2017 | 1044 | | NOTICE OF HEARING as to Eugene Martinez: Arraignment set for 4/12/2017 at 01:30 PM in Albuquerque − 560 Cimarron Courtroom before Magistrate Judge Karen B. Molzen. (emr) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/04/2017) |
| 04/04/2017 | 1045 | | MOTION for Extension of Time to File *Scientific Expert Witness Notices and Reports* by Javier Alonso. (Attachments: # 1 Exhibit)(Chambers, Nathan) (Entered: 04/04/2017) |
| 04/05/2017 | 1046 | | MOTION for Extension of Time to File *Scientific Expert Witness Notices and Reports* by Billy Garcia as to Edward Troup, Billy Garcia. (Castle, James) (Entered: 04/05/2017) |
| 04/05/2017 | 1047 | | Opposed MOTION for Disclosure *of FRE 404(B), 405, 406, 608 and Res Gestae Evidence* by Billy Garcia as to Edward Troup, Billy Garcia. (Castle, James) (Entered: 04/05/2017) |
| 04/05/2017 | 1048 | | NOTICE *of Expert Testimony of Laura Schile* by Rudy Perez (Attachments: # 1 Exhibit Exhibit 1)(Fox−Young, Justine) (Entered: 04/05/2017) |
| 04/05/2017 | 1049 | | NOTICE *of Expert Testimony of Raimund Carrillo* by Rudy Perez (Attachments: # 1 Exhibit Exhibit 1)(Fox−Young, Justine) (Entered: 04/05/2017) |
| 04/05/2017 | 1050 | | NOTICE *Expert Disclosure* by Rudy Perez (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 04/05/2017) |
| 04/05/2017 | 1051 | | NOTICE *Expert Disclosure* by Rudy Perez (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 04/05/2017) |
| 04/05/2017 | 1052 | | NOTICE *Expert Disclosure* by Rudy Perez (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 04/05/2017) |
| 04/05/2017 | 1053 | | [CASE PARTICIPANTS] Opposed MOTION for Discovery by Anthony |

| | | | |
|---|---|---|---|
| | | | Ray Baca as to Mario Rodriguez, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Attachments: # 1 Exhibit A – Discovery Letter, # 2 Exhibit B – Sample offender location history report, # 3 Exhibit C – Report re alleged yard recordings, # 4 Exhibit D – Report re Marcantel and Santistevan)(Duncan, Theresa) (Entered: 04/05/2017) |
| 04/05/2017 | 1054 | | NOTICE *of Joinder in Co−Defendant Rudy Perez's Expert Notices* by Anthony Ray Baca as to Anthony Ray Baca, Rudy Perez re 1049 Notice (Other), 1051 Notice (Other), 1048 Notice (Other) (Duncan, Theresa) (Entered: 04/05/2017) |
| 04/05/2017 | 1055 | | MOTION for Extension of Time to File *Expert Notices and Reports* by Anthony Ray Baca. (Duncan, Theresa) (Entered: 04/05/2017) |
| 04/05/2017 | 1056 | | [CASE PARTICIPANTS] MOTION for Bill of Particulars by Anthony Ray Baca. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Lowry, Marc) (Entered: 04/05/2017) |
| 04/05/2017 | 1058 | | ORDER Setting Conditions of Release by Magistrate Judge Gregory B. Wormuth as to Brandy Rodriguez. (kg) (Entered: 04/06/2017) |
| 04/06/2017 | 1059 | | [APPLICABLE PARTY] EX PARTE PRETRIAL BUDGET ORDER by District Judge James O. Browning as to Allen Patterson. (kg) (Entered: 04/06/2017) |
| 04/06/2017 | 1060 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1042 Defendants' Sealed Ex Parte Motion for Meeting of JDA Defendants and Defense Teams as to Joe Lawrence Gallegos (2), Edward Troup (3), Billy Garcia (5), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Mario Rodriguez (15), Mauricio Varela (17), Daniel Sanchez (18), Anthony Ray Baca (21), Christopher Garcia (24), Carlos Herrera (25), Rudy Perez (26), Andrew Gallegos (27), Santos Gonzalez (28), Shauna Gutierrez (30). (kg) (Entered: 04/06/2017) |
| 04/06/2017 | 1061 | | [CASE PARTICIPANTS] MOTION to Compel *Discovery* by Billy Garcia as to Edward Troup, Billy Garcia. (Attachments: # 1 Appendix A)(Castle, James) (Entered: 04/06/2017) |
| 04/06/2017 | 1062 | | Unopposed MOTION to Seal *Docket No. 1061* by Billy Garcia as to Edward Troup, Billy Garcia. (Attachments: # 1 Proposed Order)(Castle, James) (Entered: 04/06/2017) |
| 04/06/2017 | 1063 | | [CASE PARTICIPANTS] NOTICE *of Joinder in Defendant's Sealed Opposed Motion for Emergency Hearing and Expedited Discovery Regarding Clients' and Family's Safety* by Carlos Herrera re 1034 Opposed MOTION for Hearing *Sealed Opposed Motion for Emergency Hearing and Expedited Discovery Regarding Clients' and Family's Safety* (Davis, Michael) (Entered: 04/06/2017) |
| 04/07/2017 | 1067 | | TRANSCRIPT of Plea Hearing as to Timothy Martinez held on January 26, 2017, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting Services, Inc., Telephone number (361) 949−2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before |

| | | | |
|---|---|---|---|
| | | | the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 4/14/2017. Redaction Request due 4/28/2017. Redacted Transcript Deadline set for 5/8/2017. Release of Transcript Restriction set for 7/6/2017.(jg) (Entered: 04/07/2017)

| 04/07/2017 | 1068 | | TRANSCRIPT of Plea Hearing as to Jerry Montoya held on January 26, 2017, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting Services, Inc., Telephone number (361) 949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 4/14/2017. Redaction Request due 4/28/2017. Redacted Transcript Deadline set for 5/8/2017. Release of Transcript Restriction set for 7/6/2017.(jg) (Entered: 04/07/2017)

| 04/07/2017 | 1069 | | TRANSCRIPT of Plea Hearing as to Gerald Archuleta held on June 16, 2016, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting Services, Inc., Telephone number (361) 949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this**

| | | | |
|---|---|---|---|
| | | | **transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/14/2017. Redaction Request due 4/28/2017. Redacted Transcript Deadline set for 5/8/2017. Release of Transcript Restriction set for 7/6/2017.(jg) (Entered: 04/07/2017) |
| 04/07/2017 | 1071 | | TRANSCRIPT of Plea Hearing as to Roy Paul Martinez held on September 15, 2016, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting Services, Inc., Telephone number (361) 949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/14/2017. Redaction Request due 4/28/2017. Redacted Transcript Deadline set for 5/8/2017. Release of Transcript Restriction set for 7/6/2017.(jg) (Entered: 04/07/2017) |
| 04/07/2017 | 1072 | | [APPLICABLE PARTY] AMENDED SEALED EX PARTE ORDER by District Judge James O. Browning, granting 1042 Defendants' Sealed Ex Parte Motion for Meeting of JDA Defendants and Defense Teams as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Shauna Gutierrez (meq) (Entered: 04/07/2017) |
| 04/10/2017 | 1074 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1039 Application to Allow Compensation and Interim Billing filed by Santos Gonzalez (meq) (Entered: 04/10/2017) |
| 04/10/2017 | 1075 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1040 Application for Additional Funding for Investigator and Interim Billing filed by Santos Gonzalez (meq) (Entered: 04/10/2017) |

| 04/10/2017 | 1076 | | ORDER by District Judge James O. Browning granting 1030 Motion for Extension of Time to File Motions (meq) (Entered: 04/10/2017) |
|---|---|---|---|
| 04/10/2017 | 1077 | | NOTICE *of Joinder* by Daniel Sanchez re 1037 MOTION to Compel *(SEALED)* (Jacks, Amy) (Entered: 04/10/2017) |
| 04/10/2017 | 1078 | | NOTICE *of Joinder in Co−defendant Rudy Perez's Expert Notices (Docs. 1048−1052)* by Daniel Sanchez (Jacks, Amy) (Entered: 04/10/2017) |
| 04/10/2017 | 1079 | | NOTICE *of Joinder in Co−defendant Anthony Ray Baca's Motion for a Bill of Particulars* by Daniel Sanchez (Jacks, Amy) (Entered: 04/10/2017) |
| 04/10/2017 | 1080 | | RESPONSE to Motion by USA as to Javier Alonso re 951 First MOTION for Discovery *Specific Discovery* (Castellano, Randy) (Entered: 04/10/2017) |
| 04/11/2017 | 1081 | | [APPLICABLE PARTY] SECOND AMENDED SEALED EX PARTE ORDER by District Judge James O. Browning granting 1042 Defendants' Sealed Ex Parte Motion for Meeting of JDA Defendants and Defense Teams as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Shauna Gutierrez (meq) (Entered: 04/11/2017) |
| 04/11/2017 | 1082 | | Unopposed MOTION for Leave to File *an out of time response to Doc. 951* by USA as to Javier Alonso. (Castellano, Randy) (Entered: 04/11/2017) |
| 04/11/2017 | 1092 | | ORDER by District Judge James O. Browning granting 1033 Motion to Seal Docket No. 1032 as to Billy Garcia (5) (meq) (Entered: 04/13/2017) |
| 04/11/2017 | 1093 | | ORDER by District Judge James O. Browning granting 1062 Motion to Seal Docket No. 1061 as to Billy Garcia (5) (meq) (Entered: 04/13/2017) |
| 04/12/2017 | 1083 | | NOTICE of motions hearing scheduled for 5/9−11/2017 at 08:30 AM in Albuquerque − 460 Vermejo Courtroom before District Judge James O. Browning. These dates are set as a reservation and a backup to a firm Jury Selection/Jury Trial scheduled in another matter from 5/1−12/2017. An agenda of the matters to be heard will follow at a later date.(kw)(kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/12/2017) |
| 04/12/2017 | 1084 | | NOTICE of motions hearing scheduled for 5/19/2017 at 08:30 AM in Albuquerque − 460 Vermejo Courtroom before District Judge James O. Browning. An agenda of the matters to be heard will follow at a later date.(kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/12/2017) |
| 04/12/2017 | 1085 | | ORDER by District Judge James O. Browning granting 1028 and 1029 Motions for Extension of Time to File Reply as to Motion to Compel the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials (meq) (Entered: 04/12/2017) |
| 04/12/2017 | 1086 | | ORDER by District Judge James O. Browning granting 1035 Motion for Leave to File Excess Pages as to Javier Alonso (9) (meq) (Entered: 04/12/2017) |

| 04/12/2017 | 1087 | | RESPONSE in Opposition by USA as to Joe Lawrence Gallegos re 1023 MOTION to Dismiss *Motion to Dismiss and to Compel Government Disclosure of Grand Jury Transcripts* (Armijo, Maria) (Entered: 04/12/2017) |
|---|---|---|---|
| 04/12/2017 | 1088 | | [APPLICABLE PARTY] SEALED EX PARTE PRETIRAL BUDGET ORDER as to Shauna Gutierrez by District Judge James O. Browning (meq) (Entered: 04/12/2017) |
| 04/12/2017 | 1089 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1073 Application for Funding for Legal Transcriptionist and to Allow Interim Billing filed by Santos Gonzalez (meq) (Entered: 04/12/2017) |
| 04/12/2017 | 1090 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Arraignment as to Eugene Martinez (6) Count 2,2s,2ss held on 4/12/2017 (Recording Info: Cimarron Liberty) (emr) (Entered: 04/12/2017) |
| 04/12/2017 | 1091 | | [APPLICABLE PARTY] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning. IT IS ORDERED that, pursuant to 18 U.S.C. 4241(b), the Court finds the Defendant Eugene Martinez competent to stand trial or take a guilty plea. (kg) (Entered: 04/12/2017) |
| 04/13/2017 | 1094 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning, granting 1016 and 1024 Ex Parte MOTION for Order *Request of the Coordinating Discovery Attorney for Reimbursement of Tablet Accessories and Shipping Expenses* (meq) (Entered: 04/13/2017) |
| 04/14/2017 | 1095 | | [CASE PARTICIPANTS] RESPONSE in Opposition by USA as to Edward Troup, Javier Alonso, Arturo Arnulfo Garcia, Christopher Garcia re 1034 Opposed MOTION for Hearing *Sealed Opposed Motion for Emergency Hearing and Expedited Discovery Regarding Clients' and Family's Safety (Sealed)* (Attachments: # 1 Hit List)(Armijo, Maria) (Entered: 04/14/2017) |
| 04/14/2017 | 1096 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, vacating the motions hearing scheduled for 4/20−21/2017. (kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/14/2017) |
| 04/17/2017 | 1097 | | [CASE PARTICIPANTS] Opposed MOTION for Disclosure *of Confidential Informants* by Eugene Martinez. (Attachments: # 1 Exhibit Discovery documents)(Couleur, Douglas) (Entered: 04/17/2017) |
| 04/17/2017 | 1098 | | [CASE PARTICIPANTS] RESPONSE in Opposition by USA as to Rudy Perez re 1037 MOTION to Compel *(SEALED)* (Armijo, Maria) (Entered: 04/17/2017) |
| 04/18/2017 | 1099 | | NOTICE of motion hearing as to Defendant Christopher Chavez regarding the Second Motion to Withdraw as Counsel 916 scheduled for 4/24/2017 at 01:00 PM in Albuquerque − 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/18/2017) |
| 04/18/2017 | 1100 | | ORDER by District Judge James O. Browning granting 1082 Motion for Leave to File an Out of Time Response as to Javier Alonso (9) (meq) |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/18/2017) |
| 04/18/2017 | 1101 | | Opposed MOTION to Continue *July 10, 2017 Trial Setting* by Joe Lawrence Gallegos. (Attachments: # 1 Exhibit A–pending motions chart)(Benjamin, Brock) (Entered: 04/18/2017) |
| 04/20/2017 | 1102 | | RESPONSE in Opposition by USA as to Edward Troup, Billy Garcia re 1047 Opposed MOTION for Disclosure *of FRE 404(B), 405, 406, 608 and Res Gestae Evidence* (Castellano, Randy) (Entered: 04/20/2017) |
| 04/20/2017 | 1103 | | RESPONSE in Opposition by USA as to Anthony Ray Baca re 1056 MOTION for Bill of Particulars (Castellano, Randy) (Entered: 04/20/2017) |
| 04/20/2017 | 1104 | | [CASE PARTICIPANTS] RESPONSE in Opposition by USA as to Anthony Ray Baca re 1053 Opposed MOTION for Discovery (Castellano, Randy) (Entered: 04/20/2017) |
| 04/21/2017 | 1105 | | MOTION to Withdraw as Attorney by John Granberg by Christopher Chavez. (Granberg, John) (Entered: 04/21/2017) |
| 04/21/2017 | 1106 | | First MOTION to Suppress *Identification Evidence at Trial* by Santos Gonzalez. (Attachments: # 1 Exhibit A– FBI report)(Johnson, Erlinda) (Entered: 04/21/2017) |
| 04/21/2017 | 1107 | | NOTICE *Statement of Cause* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 04/21/2017) |
| 04/21/2017 | 1108 | | JOINDER to 882 Joint MOTION to Sever Defendant *Counts 1 & 2* joined by Defendant Eugene Martinez. (Couleur, Douglas) (Entered: 04/21/2017) |
| 04/21/2017 | 1109 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1061 MOTION to Compel *Discovery* by USA as to Edward Troup, Billy Garcia. (Castellano, Randy) (Entered: 04/21/2017) |
| 04/22/2017 | 1110 | | NOTICE of motion hearing as to Defendant Christopher Chavez regarding the Motion to Withdraw as Co–Counsel 1105 scheduled for 4/24/2017 at 01:00 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/22/2017) |
| 04/24/2017 | 1111 | | REPLY TO RESPONSE to Motion by Javier Alonso re 951 First MOTION for Discovery *Specific Discovery* (Chambers, Nathan) (Entered: 04/24/2017) |
| 04/24/2017 | 1112 | | ORDER by District Judge James O. Browning granting 1109 Motion for Extension of Time to File Response to Motion to Compel by Edward Troup (3) and Billy Garcia (5) (meq) (Entered: 04/24/2017) |
| 04/24/2017 | 1135 | | Clerk's Minutes for proceedings held before District Judge James O. |

| | | | |
|---|---|---|---|
| | | | Browning: Motion Hearing as to Christopher Chavez held on 4/24/2017 re 916 Second MOTION to Withdraw as Attorney by Orlando Mondragon filed by Christopher Chavez, 1105 MOTION to Withdraw as Attorney by John Granberg filed by Christopher Chavez (Court Reporter: J. Bean) (meq) (Entered: 05/05/2017) |
| 04/25/2017 | 1114 | | NOTICE *of Objection to Motion to Continue Trial Scheduled for July 10 2017 (doc.1101)* by Santos Gonzalez (Johnson, Erlinda) (Entered: 04/25/2017) |
| 04/28/2017 | 1115 | | RESPONSE in Opposition by USA as to Edward Troup, Billy Garcia re 1061 MOTION to Compel *Discovery* (Castellano, Randy) (Entered: 04/28/2017) |
| 04/28/2017 | 1116 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1097 Opposed MOTION for Disclosure *of Confidential Informants* by USA as to Eugene Martinez. (Castellano, Randy) (Entered: 04/28/2017) |
| 04/28/2017 | 1120 | | MOTION for Dismissal of Counsel Orlando Mondragon by Christopher Chavez. (meq) (Entered: 05/01/2017) |
| 04/28/2017 | 1125 | | ORDER by District Judge James O. Browning granting 883 Motion to Seal Documents 869 and 882 as to Edward Troup (3), Billy Garcia (5) (meq) (Entered: 05/03/2017) |
| 04/30/2017 | 1117 | | RESPONSE to Motion by Rudy Perez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1101 Opposed MOTION to Continue *July 10, 2017 Trial Setting* (Villa, Ryan) (Entered: 04/30/2017) |
| 05/01/2017 | 1118 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning. IT IS ORDERED that, pursuant to 18 U.S.C. 4241(b), the Court finds the Defendant Eugene Martinez competent to stand trial or take a guilty plea (meq) (Entered: 05/01/2017) |
| 05/01/2017 | 1119 | | ORDER by District Judge James O. Browning granting 1116 Motion for Extension of Time to File Response as to Eugene Martinez's Motion to Compel Disclosure of Confidential Informants (meq) (Entered: 05/01/2017) |
| 05/01/2017 | 1121 | | NOTICE *of Completion of Briefing* by Rudy Perez re 1038 MOTION to Unseal Document *Motion to Compel [Doc. 1037]* (Villa, Ryan) (Entered: 05/01/2017) |
| 05/02/2017 | 1123 | | NOTICE *Statement of Defendant Edward Troup re: the Government's Statement of Cause (Doc. 1107)* by Edward Troup (Attachments: # 1 Exhibit A)(Burke, Patrick) (Entered: 05/02/2017) |
| 05/02/2017 | 1124 | | MOTION for Order to Show Cause *for the Immediate Return of Tablet and Request for the United States to File an Expedited Response to this Motion* by Rudy Perez as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Javier Alonso, Arturo Arnulfo Garcia, Mauricio Varela, Daniel Sanchez, |

| | | | |
|---|---|---|---|
| | | | Anthony Ray Baca, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Shauna Gutierrez. (Villa, Ryan) (Entered: 05/02/2017) |
| 05/04/2017 | 1126 | | [CASE PARTICIPANTS] MOTION to determine whether Michael V. Davis has an actual or potential conflict of interest *United States' Sealed Motion Regarding Attorney Conflict* by USA as to Carlos Herrera. (Attachments: # 1 Exhibit)(Armijo, Maria) (Entered: 05/04/2017) |
| 05/04/2017 | 1127 | | RESPONSE in Opposition by USA as to Santos Gonzalez re 1106 First MOTION to Suppress *Identification Evidence at Trial United States' Response in Opposition to Santos Gonzalez's Motion to Suppress Identification Evidence by Government Witness* (Attachments: # 1 Exhibit)(Armijo, Maria) (Entered: 05/04/2017) |
| 05/04/2017 | 1128 | | NOTICE OF HEARING as to Eugene Martinez: Change of Plea Hearing set for 5/5/2017 at 10:00 AM in Albuquerque – 560 Cimarron Courtroom before Magistrate Judge Karen B. Molzen. (emr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/04/2017) |
| 05/04/2017 | 1129 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Anthony Ray Baca as to Mario Rodriguez, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1053 Opposed MOTION for Discovery (Duncan, Theresa) (Entered: 05/04/2017) |
| 05/04/2017 | 1130 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Rudy Perez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1037 MOTION to Compel *(SEALED)* (Attachments: # 1 Exhibit 1)(Fox–Young, Justine) (Entered: 05/04/2017) |
| 05/04/2017 | 1131 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Anthony Ray Baca re 1056 MOTION for Bill of Particulars (Lowry, Marc) (Entered: 05/04/2017) |
| 05/05/2017 | 1132 | | Opposed MOTION to Modify Conditions of Release *Set Conditions of Release* by Shauna Gutierrez. (Attachments: # 1 Supplement BCSO S.O.R.T Release and Letters)(Arellanes, Angela) (Entered: 05/05/2017) |
| 05/05/2017 | 1133 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, notifying the parties that the following motions are set to be heard at the motion hearing commencing 5/9/2017: 1101 , 1010 , 1034 , 1124 , 858 , [815 (resuming argument)], 817 , 829 , 872 , 869 , 1037 , 1038 , 866 , 914 , 951 & 1023 . THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/05/2017) |
| 05/05/2017 | 1134 | | |

| | | |
|---|---|---|
| | | [CASE PARTICIPANTS] MOTION for Order to Show Cause *for Violation of Order, Doc 299 and Requst for Evidentiary Hearing on Violations of Protective Order by the US* by Joe Lawrence Gallegos. (Attachments: # 1 Exhibit A)(Sindel, Richard) termed per doc 1145 on 5/12/2017 (meq). (Entered: 05/05/2017) |
| 05/05/2017 | 1136 | Unopposed MOTION for Extension of Time to File *Motion to Suppress Statement* by Rudy Perez. (Villa, Ryan) (Entered: 05/05/2017) |
| 05/05/2017 | 1137 | CONSENT TO PLEA BEFORE US MAGISTRATE JUDGE by Eugene Martinez (meq) (Entered: 05/05/2017) |
| 05/05/2017 | 1138 | PLEA AGREEMENT as to Eugene Martinez (meq) (Entered: 05/05/2017) |
| 05/05/2017 | 1139 | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Plea Hearing as to Eugene Martinez held; Guilty Plea entered by Eugene Martinez (6) Guilty Count 2ss. (Recording Info: Cimarron Liberty) (emr) (Entered: 05/05/2017) |
| 05/06/2017 | 1140 | NOTICE *of Unavailability of Counsel of Record for May 9, 2017 Motions Hearing* by Arturo Arnulfo Garcia (Davidson, Scott) (Entered: 05/06/2017) |
| 05/08/2017 | 1186 | LETTER of Concern by Vincent Garduno (meq) (Entered: 06/07/2017) |
| 05/09/2017 | 1141 | First MOTION for Hearing *Pursuant to United States v. James* by Santos Gonzalez. (Johnson, Erlinda) (Entered: 05/09/2017) |
| 05/09/2017 | 1142 | MOTION to Suppress *evidence and statements* by Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 05/09/2017) |
| 05/09/2017 | 1143 | Opposed MOTION for Bill of Particulars *for Counts 4 and 5* by Joe Lawrence Gallegos as to Angel DeLeon. (Benjamin, Brock) (Entered: 05/09/2017) |
| 05/10/2017 | 1144 | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, adding the following motions to the agenda for the motion hearings to be held 5/9–11/2017: 893 , 1047 , 1053 , 1056 & 868 . (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/10/2017) |
| 05/11/2017 | 1145 | NOTICE *of Withdrawal of document 1134* by Joe Lawrence Gallegos as to Angel DeLeon (Benjamin, Brock) (Entered: 05/11/2017) |
| 05/11/2017 | 1146 | REPLY TO RESPONSE to Motion by Santos Gonzalez re 1106 First MOTION to Suppress *Identification Evidence at Trial* (Johnson, Erlinda) (Entered: 05/11/2017) |
| 05/11/2017 | 1165 | E–MAIL from Gregory Acton (meq) (Entered: 05/25/2017) |
| 05/12/2017 | 1148 | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Edward Troup, Billy Garcia re 1061 MOTION to Compel *Discovery* (Attachments: # 1 Appendix A, # 2 Appendix B)(Harbour–Valdez, Cori) (Entered: 05/12/2017) |
| 05/13/2017 | 1149 | [CASE PARTICIPANTS] First MOTION for Extension of Time to File Response/Reply as to 1126 MOTION to determine whether Michael V. Davis has an actual or potential conflict of interest *United States' Sealed* |

| | | | |
|---|---|---|---|
| | | | *Motion Regarding Attorney Conflict* by Carlos Herrera. (Bhalla, Carey) (Entered: 05/13/2017) |
| 05/16/2017 | 1150 | | Unopposed MOTION for Protective Order by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Beck, Matthew) (Entered: 05/16/2017) |
| 05/17/2017 | 1151 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER as to Rudy Perez by District Judge James O. Browning (meq) (Entered: 05/17/2017) |
| 05/17/2017 | 1152 | | ORDER by District Judge James O. Browning granting 1136 Motion for Extension of Time to File as to Rudy Perez (26) (meq) (Entered: 05/17/2017) |
| 05/18/2017 | 1153 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, notifying the parties that the following motions will be heard at the motion hearing scheduled for 5/19/2017: the Defendants Troup and Billy Garcia's Motion to Sever Counts 1 & 2 882 & the Motion to Compel Discovery 1061 .(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/18/2017) |
| 05/18/2017 | 1154 | | NOTICE of motion hearing regarding the Opposed Motion to Set Conditions of Release 1132 as to Defendant Shauna Gutierrez scheduled for 5/19/2017 at 11:00 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/18/2017) |
| 05/18/2017 | 1155 | | MOTION to Dismiss *INDICTMENT AS IT RELATES TO SHAUNA GUTIERREZ* by Shauna Gutierrez. (Arellanes, Angela) (Entered: 05/18/2017) |
| 05/18/2017 | 1156 | | NOTICE *Notice of Unavailability* on 6/8–6/9/17 and 6/15/17 by Joe Lawrence Gallegos (Benjamin, Brock) Modified text on 5/19/2017 (kg). (Entered: 05/18/2017) |
| 05/18/2017 | 1157 | | NOTICE *NOTICE OF JOINDER TO DOCUMENT 1141–MOTION FOR PRODUCTION OF ALLEGED CO–CONSPIRATOR STATEMENTS, PRETRIAL HEARINGS ON THEIR ADMISSIBILITY PURSUANT TO FED.R.EVID. 801 (d)(2)(E).* by Shauna Gutierrez (Arellanes, Angela) (Entered: 05/18/2017) |
| 05/18/2017 | 1158 | | APPENDIX/SUPPLEMENT *United States' Supplemental Brief Regarding Timing of Disclosure of Giglio Impeachment Evidence* by USA (Beck, Matthew) (Entered: 05/18/2017) |
| 05/19/2017 | 1175 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing as to Shauna Gutierrez held on 5/19/2017 re 1132 Opposed MOTION to Modify Conditions of Release *Set Conditions of* |

| | | | |
|---|---|---|---|
| | | | *Release* filed by Shauna Gutierrez (Court Reporter: J. Bean) (meq) (Entered: 06/02/2017) |
| 05/23/2017 | 1159 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1142 MOTION to Suppress *evidence and statements United States' Unopposed Motion for Extension of time to Respond to Defendant Joe Gallegos' Motion to Suppress Evidence and Statements (Doc. 1142) and Motion for a Bill of Particulars (Doc. 1143)* by USA as to Joe Lawrence Gallegos. (Armijo, Maria) (Entered: 05/23/2017) |
| 05/23/2017 | 1160 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 05/09/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2017. Redaction Request due 6/13/2017. Redacted Transcript Deadline set for 6/23/2017. Release of Transcript Restriction set for 8/21/2017.(jab) (Entered: 05/23/2017) |
| 05/23/2017 | 1161 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 05/10/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2017. Redaction Request due 6/13/2017. Redacted Transcript Deadline set for 6/23/2017. Release of Transcript Restriction set for 8/21/2017.(jab) (Entered: 05/23/2017) |
| 05/23/2017 | 1162 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 05/11/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2017. Redaction Request due 6/13/2017. Redacted Transcript Deadline set for 6/23/2017. Release of Transcript Restriction set for 8/21/2017.(jab) (Entered: 05/23/2017) |
| 05/24/2017 | 1163 | | Opposed MOTION for Discovery *of Giglio Materials* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, |

| | | | |
|---|---|---|---|
| | | | Shauna Gutierrez, Brandy Rodriguez. (Castle, James) (Entered: 05/24/2017) |
| 05/25/2017 | 1164 | | RESPONSE to Motion by Carlos Herrera re 1126 MOTION to determine whether Michael V. Davis has an actual or potential conflict of interest *United States' Sealed Motion Regarding Attorney Conflict* (Attachments: # 1 Affidavit Affidavit of Michael V. Davis)(Davis, Michael) (Entered: 05/25/2017) |
| 05/26/2017 | 1166 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 05/19/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br> Notice of Intent to Request Redaction set for 6/2/2017. Redaction Request due 6/16/2017. Redacted Transcript Deadline set for 6/26/2017. Release of Transcript Restriction set for 8/24/2017.(jab) (Entered: 05/26/2017) |
| 05/26/2017 | 1167 | | NOTICE OF HEARING as to Santos Gonzalez: Change of Plea set for 5/31/2017 at 09:30 AM in Albuquerque – 320 Rio Grande Courtroom before Magistrate Judge William P Lynch. (kd) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/26/2017) |
| 05/26/2017 | 1168 | | ORDER by District Judge James O. Browning granting 1150 Motion for Protective Order (meq) (Entered: 05/26/2017) |
| 05/30/2017 | 1169 | | NOTICE OF HEARING as to Santos Gonzalez: Change of Plea Hearing reset for 6/5/2017 at 10:00 AM in Albuquerque – 320 Rio Grande Courtroom before Chief Magistrate Judge Karen B. Molzen. (eh) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/30/2017) |
| 05/30/2017 | 1170 | | ORDER by District Judge James O. Browning granting 1159 Motion for Extension of Time to File Response/Reply as to Joe Lawrence Gallegos (2) |

| | | | |
|---|---|---|---|
| | | | (meq) (Entered: 05/30/2017) |
| 05/30/2017 | 1171 | | [CASE PARTICIPANTS] ORDER by District Judge James O. Browning granting 1149 Motion for Extension of Time to File Response/Reply as to Carlos Herrera (25) (meq) (Entered: 05/30/2017) |
| 06/01/2017 | 1172 | | NOTICE *OF UNAVAILABILITY* by Mauricio Varela (Stillinger, Mary) (Entered: 06/01/2017) |
| 06/01/2017 | 1173 | | RESPONSE in Opposition by USA as to Shauna Gutierrez re 1155 MOTION to Dismiss *INDICTMENT AS IT RELATES TO SHAUNA GUTIERREZ* (Castellano, Randy) (Entered: 06/01/2017) |
| 06/02/2017 | 1174 | | NOTICE *of Non Availability July 3, 2017, through July 7, 2017* by Carlos Herrera (Davis, Michael) Modified on 6/2/2017 (meq). (Entered: 06/02/2017) |
| 06/05/2017 | 1178 | | NOTICE *Of Firm Name Change* by Anthony Ray Baca (Duncan, Theresa) (Entered: 06/05/2017) |
| 06/05/2017 | 1179 | | CONSENT TO PLEA BEFORE US MAGISTRATE JUDGE by Santos Gonzalez (meq) (Entered: 06/05/2017) |
| 06/05/2017 | 1180 | | PLEA AGREEMENT as to Santos Gonzalez (meq) (Entered: 06/05/2017) |
| 06/05/2017 | 1181 | | Clerk's Minutes for proceedings held before Magistrate Judge Karen B. Molzen: Plea Hearing as to Santos Gonzalez held on 6/5/2017; Guilty Plea entered by Santos Gonzalez (28) as to Counts 14s, 15s and 16s. (Recording Info: Rio Grande) (emr) (Entered: 06/05/2017) |
| 06/06/2017 | 1182 | | Opposed MOTION to Continue *July 10, 2017 Trial Setting* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit Proposed Scheduling Order)(Harbour–Valdez, Cori) (Entered: 06/06/2017) |
| 06/06/2017 | 1183 | | RESPONSE in Opposition by USA as to Angel DeLeon, Joe Lawrence Gallegos re 1143 Opposed MOTION for Bill of Particulars *for Counts 4 and 5* (Castellano, Randy) (Entered: 06/06/2017) |
| 06/06/2017 | 1184 | | RESPONSE in Opposition by USA as to Joe Lawrence Gallegos re 1142 MOTION to Suppress *evidence and statements* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Beck, Matthew) (Entered: 06/06/2017) |
| 06/07/2017 | 1185 | | RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1163 Opposed MOTION for Discovery *of Giglio Materials* (Beck, Matthew) (Entered: 06/07/2017) |

| 06/07/2017 | 1193 | | NOTICE of Lodging by Joe Lawrence Gallegos as to 1184 RESPONSE in Opposition by USA as to Joe Lawrence Gallegos re 1142 MOTION to Suppress evidence and statements (meq) (Entered: 06/16/2017) |
|---|---|---|---|
| 06/09/2017 | 1187 | | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning, Defendants' Joint Motion to Sever Defendants Charged with Offenses in Counts 6 & 7 807 is granted in part and denied in part, Defendant Santos Gonzales' Motion for a Severance of Defendant 858 is granted in part and denied in part, Defendant A. Gallegos' Opposed Motion to Sever Counts Four and Five 868 is granted in part and denied in part, Defendants Troup and Billy Garcia's Motion to Sever Counts 1 and 2 882 is granted in part and denied in part, Defendant Javier Alonso's Motion to Sever Count 3 and to Sever the Trials of Edward Troup and Javier Alonso 893 is granted in part and denied in part and Defendant Santos Gonzales' Amended Motion for a Severance of Defendant 901 is granted in part and denied in part (meq) (Entered: 06/09/2017) |
| 06/09/2017 | 1188 | | Amended MOTION to Continue *July 10, 2017 Trial Setting (UNOPPOSED)* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit Proposed Scheduling Order)(Harbour–Valdez, Cori) (Entered: 06/09/2017) |
| 06/12/2017 | 1213 | | [APPLICABLE PARTY] EX PARTE ORDER by District Judge James O. Browning granting 1177 Ex Parte MOTION for Order *for Supplemental Database Funds* (meq) (Entered: 07/14/2017) |
| 06/13/2017 | 1189 | | [APPLICABLE PARTY] SEALED EX PARTE BUDGET ORDER FOR A NON–CAPITAL REPRESENTATION as to Eugene Martinez by District Judge James O. Browning (meq) (Entered: 06/13/2017) |
| 06/13/2017 | 1190 | | [CASE PARTICIPANTS] Opposed MOTION for Disclosure *of Mental Health Records* by Allen Patterson as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Lahann, Jeffrey) (Entered: 06/13/2017) |
| 06/14/2017 | 1191 | | [APPLICABLE PARTY] SEALED EX PARTE BUDGET ORDER FOR A NON–CAPITAL REPRESENTATION as to Carlos Herrera by District Judge James O. Browning (meq) (Entered: 06/14/2017) |
| 06/14/2017 | 1192 | | APPENDIX/SUPPLEMENT re 1188 Amended MOTION to Continue *July 10, 2017 Trial Setting (UNOPPOSED)* by Edward Troup (Harbour–Valdez, Cori) (Entered: 06/14/2017) |
| 06/19/2017 | 1196 | | ORDER TO CONTINUE by District Judge James O. Browning granting 1101 Motion to Continue Trial as to Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez and rescheduling on 1/29/2018 at 09:00 AM in |

| | | | |
|---|---|---|---|
| | | | Albuquerque – 460 Vermejo Courtroom (meq) (Entered: 06/23/2017) |
| 06/19/2017 | 1197 | | ORDER TO CONTINUE by District Judge James O. Browning granting 1188 Amended MOTION to Continue *Trial Setting* as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez and Brandy Rodriguez and rescheduling on 4/9/2018 at 09:00 AM in Albuquerque – 460 Vermejo Courtroom (meq) (Entered: 06/23/2017) |
| 06/21/2017 | 1194 | | TRANSCRIPT of Plea Hearing as to Eugene Martinez held on May 5, 2017, before Magistrate Judge Karen B. Molzen. Court Reporter/Transcriber Exceptional Reporting Services, Inc., Telephone number (361) 949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 6/28/2017. Redaction Request due 7/12/2017. Redacted Transcript Deadline set for 7/24/2017. Release of Transcript Restriction set for 9/19/2017.(jg) (Entered: 06/21/2017) |
| 06/21/2017 | 1201 | | LETTER Re: Jury Data, from Lincoln Sorrell (meq) (Entered: 06/29/2017) |
| 06/21/2017 | 1202 | | E–MAIL Re: Jury Data, from Lincoln Sorrell (meq) (Entered: 06/29/2017) |
| 06/23/2017 | 1195 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning as to Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (meq) (Entered: 06/23/2017) |
| 06/26/2017 | 1198 | | NOTICE *of Assertion of Privilege, Rule 501* by Eugene Martinez re 1190 Opposed MOTION for Disclosure *of Mental Health Records* (Couleur, Douglas) (Entered: 06/26/2017) |
| 06/26/2017 | 1203 | | LETTER Re: Jury Data, from Lincoln Sorrell (meq) (Entered: 06/29/2017) |
| 06/27/2017 | 1199 | | RESPONSE to Motion by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca re 1190 Opposed MOTION for Disclosure *of Mental Health Records* (Castellano, Randy) (Entered: 06/27/2017) |
| 06/28/2017 | 1200 | | [APPLICABLE PARTY] SEALED EX PARTE BUDGET SUPPLEMENT ORDER FOR A NON–CAPITAL REPRESENTATION as to Edward Troup by District Judge James O. Browning (meq) (Entered: 06/28/2017) |

| 06/30/2017 | 1204 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning, Defendants' Joint Motion to Sever Defendants Charged with Offenses in Counts 6 & 7 807 is granted in part and denied in part, Defendant Santos Gonzales' Motion for a Severance of Defendant 858 is granted in part and denied in part, Defendant A. Gallegos' Opposed Motion to Sever Counts Four and Five <u>868</u> is granted in part and denied in part, Defendants Troup and Billy Garcia's Motion to Sever Counts 1 and 2 882 is granted in part and denied in part, Defendant Javier Alonso's Motion to Sever Count 3 and to Sever the Trials of Edward Troup and Javier Alonso 893 is granted in part and denied in part and Defendant Santos Gonzales' Amended Motion for a Severance of Defendant 901 is granted in part and denied in part (meq) (Entered: 06/30/2017) |
| 07/07/2017 | 1205 | | FOURTH SCHEDULING ORDER by District Judge James O. Browning (meq) (Entered: 07/07/2017) |
| 07/10/2017 | 1210 | | MOTION to Substitute Attorney by Ruben Hernandez. (meq) (Entered: 07/12/2017) |
| 07/11/2017 | 1206 | | NOTICE *of Non Availability July 26, 2017 to July 28, 2017.* by Conrad Villegas (Crow, B.J.) Added dates on 7/12/2017 (meq). (Entered: 07/11/2017) |
| 07/11/2017 | 1207 | | [CASE PARTICIPANTS] MOTION for Extension of Time to File Response/Reply as to <u>1190</u> Opposed MOTION for Disclosure *of Mental Health Records*, 1199 Response to Motion, by Allen Patterson as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Lahann, Jeffrey) (Entered: 07/11/2017) |
| 07/12/2017 | 1208 | | [APPLICABLE PARTY] SEALED EX PARTE AMENDED ORDER by District Judge James O. Browning as to Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (meq) (Entered: 07/12/2017) |
| 07/13/2017 | 1211 | | NOTICE *OF UNAVAILABILITY July 30, 2017 to August 6, 2017* by Joe Lawrence Gallegos (Benjamin, Brock) Added dates on 7/14/2017 (meq). (Entered: 07/13/2017) |
| 07/14/2017 | 1212 | | NOTICE *of Non Availability September 25, 2017 to October 2, 2017* by Conrad Villegas (Crow, B.J.) Added dates on 7/17/2017 (meq). (Entered: 07/14/2017) |
| 07/25/2017 | 1214 | | [CASE PARTICIPANTS] ORDER by District Judge James O. Browning granting <u>1207</u> Motion for Extension of Time to File Response/Reply (meq) (Entered: 07/25/2017) |
| 07/26/2017 | 1215 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Allen Patterson as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, |

DNM 157

| | | | |
|---|---|---|---|
| | | | Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1190 Opposed MOTION for Disclosure *of Mental Health Records* (Lahann, Jeffrey) (Entered: 07/26/2017) |
| 07/27/2017 | 1216 | | Unopposed MOTION to Withdraw as Attorney *and for Appointment of New CJA Counsel for Defendant* by Alfred Creecy by Brandy Rodriguez. (Creecy, Alfred) (Entered: 07/27/2017) |
| 08/04/2017 | 1217 | | NOTICE *Pursuant to Fed. R. Crim. P. 16(b)* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # 1 Exhibit Phillip Danielson CV)(Cooper, Robert) (Entered: 08/04/2017) |
| 08/04/2017 | 1218 | | NOTICE *Pursuant to Fed. R. Crim. P. 16(b)* by Edward Troup (Harbour−Valdez, Cori) (Entered: 08/04/2017) |
| 08/04/2017 | 1219 | | NOTICE *DEFENDANT SHAUNA GUTIERREZ NOTICE PURSUANT TO FED. R. CRIM. P. 16(b)* by Shauna Gutierrez (Arellanes, Angela) (Entered: 08/04/2017) |
| 08/04/2017 | 1220 | | NOTICE *PURSUANT TO FED. R. CRIM. P. 16(b)* by Christopher Chavez (Mondragon, Orlando) (Entered: 08/04/2017) |
| 08/04/2017 | 1221 | | NOTICE *Pursuant to Fed. R. Crim. P. 16(b)* by Daniel Sanchez (Jacks, Amy) (Entered: 08/04/2017) |
| 08/09/2017 | 1224 | | NOTICE *of Unavailability of Counsel for August 15, 2017 through September 11, 2017* by Santos Gonzalez (Johnson, Erlinda) (Entered: 08/09/2017) |
| 08/11/2017 | 1225 | | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Javier Alonso: Change of Plea Hearing set for 8/28/2017 at 10:30 AM in Las Cruces, NM − 360 Dona Ana Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/11/2017) |
| 08/14/2017 | 1226 | | NOTICE *of Joinder in Co−Defendants' Notices Pursuant to Rule 16* by Rudy Perez as to Edward Troup, Billy Garcia, Daniel Sanchez, Rudy Perez re 1218 Notice (Other), 1217 Notice (Other),, 1221 Notice (Other) (Villa, Ryan) |

| | | | |
|---|---|---|---|
| | | | (Entered: 08/14/2017) |
| 08/21/2017 | 1228 | | MOTION to Produce *Co−Conspirator Statements and for James Hearing* by Rudy Perez as to Billy Garcia, Allen Patterson, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Fox−Young, Justine) (Entered: 08/21/2017) |
| 08/21/2017 | 1230 | | NOTICE *Notice of Joinder in Co−Defendants' Notices Pursuant to Rule 16* by Joe Lawrence Gallegos re 1217 Notice (Other),, (Benjamin, Brock) (Entered: 08/21/2017) |
| 08/22/2017 | 1231 | | NOTICE *Notice of Joinder* by Andrew Gallegos re 1217 Notice (Other),, (Roberts, Donavon) (Entered: 08/22/2017) |
| 08/24/2017 | 1232 | | NOTICE *of Joinder to Notices (1218) and (1221)* by Carlos Herrera re 1217 Notice (Other),, (Davis, Michael) (Entered: 08/24/2017) |
| 08/25/2017 | 1233 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1223 Notice Request of Coordinating Discovery Attorney for Funding to Expand Storage Capacity on Discovery Tablets (meq) (Entered: 08/25/2017) |
| 08/28/2017 | 1234 | | [APPLICABLE PARTY] SEALED EX PARTE BUDGET ORDER FOR A NON−CAPITAL REPRESENTATION as to Christopher Garcia by District Judge James O. Browning (meq) (Entered: 08/28/2017) |
| 08/28/2017 | 1235 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1227 Notice of Request of Coordinating Discovery Attorney for Reimbursement of Tablet Accessories and Shipping Expenses (meq) (Entered: 08/28/2017) |
| 08/28/2017 | 1236 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE by Javier Alonso. (kls) (Entered: 08/28/2017) |
| 08/28/2017 | 1237 | | PLEA AGREEMENT as to Javier Alonso. (kls) (Entered: 08/28/2017) |
| 08/28/2017 | 1238 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 8/28/2017 as to Javier Alonso (9); Guilty plea entered to Count 3ss of the Second Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR−Dona Ana) (kls) (Entered: 08/28/2017) |
| 08/30/2017 | 1239 | | ORDER by District Judge James O. Browning granting 1216 Motion to Withdraw as Attorney. Alfred D Creecy withdrawn from case as to Brandy Rodriguez (31) (meq) (Entered: 08/30/2017) |
| 08/30/2017 | 1240 | | CJA Appointment of Attorney Jerry A. Walz for Brandy Rodriguez by District Judge James O. Browning (meq) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/30/2017) |
| 08/31/2017 | 1241 | | Unopposed MOTION to Extend (other) *Time to File Motions Pursuant to Rule 16* by Rudy Perez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy |

| | | | |
|---|---|---|---|
| | | | Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Villa, Ryan) (Entered: 08/31/2017) |
| 09/01/2017 | 1242 | | NOTICE *United States' Amended Notice of Expert Witness Testimony* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1043 Notice (Other),, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit)(Armijo, Maria) (Entered: 09/01/2017) |
| 09/05/2017 | 1243 | | RESPONSE to Motion by USA as to Rudy Perez re 1228 MOTION to Produce *Co−Conspirator Statements and for James Hearing United States' Response to Defendant Perez's Motion for Production of Alleged Co−Conspirator Statements and for a James Hearing on their Admissibility* (Castellano, Randy) (Entered: 09/05/2017) |
| 09/08/2017 | 1244 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL BUDGET ORDER as to Billy Garcia by District Judge James O. Browning (meq) (Entered: 09/08/2017) |
| 09/15/2017 | 1246 | | NOTICE *Defendant's Notice of Expert Witnesses* by Joe Lawrence Gallegos (Benjamin, Brock) (Entered: 09/15/2017) |
| 09/15/2017 | 1247 | | First MOTION to Compel *Discovery* by Carlos Herrera. (Bhalla, Carey) (Entered: 09/15/2017) |
| 09/15/2017 | 1248 | | Second MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Castle, James) Modified on 9/29/2017 (meq). (Entered: 09/15/2017) |
| 09/15/2017 | 1249 | | NOTICE *of Expert Testimony of Katherine Raven, M.D.* by Rudy Perez (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 09/15/2017) |
| 09/15/2017 | 1250 | | Second MOTION to Compel *Discovery* by Edward Troup, Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio |

| | | | |
|---|---|---|---|
| | | | Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Burke, Patrick) (Entered: 09/15/2017) |
| 09/15/2017 | 1251 | | [CASE PARTICIPANTS] Second MOTION to Compel *Discovery* by Rudy Perez as to Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Villa, Ryan) (Entered: 09/15/2017) |
| 09/15/2017 | 1252 | | NOTICE of *Expert Testimony of Karen Green* by Edward Troup (Attachments: # 1 Exhibit A)(Harbour−Valdez, Cori) (Entered: 09/15/2017) |
| 09/15/2017 | 1253 | | MOTION to Compel *Specific Discovery* by Daniel Sanchez. (Jacks, Amy) (Entered: 09/15/2017) |
| 09/15/2017 | 1254 | | NOTICE of *Expert Witness Testimony* by Anthony Ray Baca (Lowry, Marc) (Entered: 09/15/2017) |
| 09/15/2017 | 1255 | | RESPONSE by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Carlos Herrera, Rudy Perez, Brandy Rodriguez re 1242 Notice (Other),,, *TO UNITED STATES AMENDED NOTICE OF EXPERT WITNESS TESTIMONY (DOC. 1242) AND MOTION TO EXCLUDE GOVERNMENTS EXPERT WITNESSES* (Sirignano, Amy) (Entered: 09/15/2017) |
| 09/15/2017 | 1256 | | NOTICE *OF JOINDER TO UNOPPOSED MOTION TO EXTEND TIME TO FILE MOTIONS PURSUANT TO RULE 16 (Doc. 1241)* by Christopher Garcia re 1241 Unopposed MOTION to Extend (other) *Time to File Motions Pursuant to Rule 16* (Sirignano, Amy) (Entered: 09/15/2017) |
| 09/15/2017 | 1257 | | NOTICE *OF INTENT TO OFFER EXPERT WITNESS TESTIMONY* by Christopher Garcia (Attachments: # 1 Exhibit A_Janine Arvisu, # 2 Exhibit B_Tim Bryan)(Sirignano, Amy) (Entered: 09/15/2017) |
| 09/15/2017 | 1258 | | Opposed MOTION to Continue *THE DEFENDANTS DEADLINE TO FILE FED. R. CRIM. PROC. 16 MOTIONS* by Christopher Garcia. (Sirignano, Amy) (Entered: 09/15/2017) |
| 09/18/2017 | 1259 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1229 Notice Requesting Supplemental Database Funds (meq) (Entered: 09/18/2017) |
| 09/18/2017 | 1260 | | NOTICE of *Parties' Positions* by Daniel Sanchez re 1253 MOTION to Compel *Specific Discovery* (Jacks, Amy) (Entered: 09/18/2017) |
| 09/18/2017 | 1261 | | ORDER by District Judge James O. Browning granting 1241 Motion to Extend Time to File Motions Pursuant to Rule 16 (meq) (Entered: 09/18/2017) |
| 09/18/2017 | 1262 | | NOTICE of Parties Positions on 1247 Motion to Compel Discovery *ADDENDUM TO RULE 16 MOTION* by Carlos Herrera. (Bhalla, Carey) Modified text on 9/27/2017 (meq). (Entered: 09/18/2017) |
| 09/18/2017 | 1263 | | |

| | | | |
|---|---|---|---|
| | | | Unopposed MOTION for Extension of Time to File *Discovery Motion* by Anthony Ray Baca as to Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca. (Duncan, Theresa) (Entered: 09/18/2017) |
| 09/18/2017 | 1264 | | [CASE PARTICIPANTS] MOTION for Discovery by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Attachments: # 1 Exhibit Proposed Order re Duran Medical Records)(Duncan, Theresa) (Entered: 09/18/2017) |
| 09/19/2017 | 1265 | | SUPPLEMENT to 1248 *Motion to Compel the Government to Reveal the Identity of Certain Confidetial Informants Referenced in Discovery Materials (Doc. 1248)* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Castle, James) Modified text on 9/27/2017 (meq). (Entered: 09/19/2017) |
| 09/19/2017 | 1266 | | Unopposed MOTION for Order *FOR PERMISSION TO EXCEED PAGE LIMIT* by Christopher Garcia. (Sirignano, Amy) (Entered: 09/19/2017) |
| 09/19/2017 | 1267 | | MOTION to Compel *COMPEL DISCOVERY AND INSPECTION OF DOCUMENTS AND PHYSICAL EVIDENCE PURSUANT TO RULE 16* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Rudy Perez, Brandy Rodriguez. (Sirignano, Amy) (Entered: 09/19/2017) |
| 09/19/2017 | 1268 | | REPLY TO RESPONSE to Motion by Rudy Perez as to Billy Garcia, Allen Patterson, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez re 1228 MOTION to Produce *Co−Conspirator Statements and for James Hearing* (Villa, Ryan) (Entered: 09/19/2017) |
| 09/22/2017 | 1269 | | MOTION for Order *FOR NOTICE TO COUNTS 6 THROUGH 12 DEFENDANTS OF FEDERAL RULES OF EVIDENCE 404(B), 405, 406, 608 AND RES GESTAE EVIDENCE* by Rudy Perez. (Villa, Ryan) (Entered: 09/22/2017) |
| 09/22/2017 | 1270 | | [CASE PARTICIPANTS] Opposed MOTION to Compel *Sealed DISCLOSURE OF DISCOVERABLE MATERIALS PURSUANT TO RULE 16* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos. (Sirignano, Amy) (Entered: 09/22/2017) |
| 09/23/2017 | 1271 | | NOTICE *of Counsel Amy Sirignano's Unavailability Thursday, September 28, 2017 through and including Saturday, September 30, 2017; Thursday, October 12, 2017 through and including Monday October 16, 2017; and Thursday November 16, 2017 through and including Saturday November 25, 2017* by Christopher Garcia (Sirignano, Amy) Modified on 9/25/2017 (meq). |

| | | | |
|---|---|---|---|
| | | | (Entered: 09/23/2017) |
| 09/26/2017 | 1272 | | NOTICE *of Unavailability of Counsel for Defendant Joe Lawrence Gallegos* October 4, 2017, October 12, 2017, October 13, 2017; Week of October 16 to October 20, 2017; October 24, 2017; Week of November 13 to November 17, 2017; Week of November 20 to November 24, 2017, November 29 and 30, 2017; and December 1, 2017.(Benjamin, Brock) Modified Text on 9/27/2017 (meq). (Entered: 09/26/2017) |
| 09/28/2017 | 1273 | | NOTICE *of Withdrawal of Doc. 1248* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1248 Second MOTION to Compel *the Government to Reveal the Identity of Certain Confidential Informants Referenced in Discovery Materials* (Castle, James) (Entered: 09/28/2017) |
| 09/29/2017 | 1274 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1253 MOTION to Compel *Specific Discovery* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 09/29/2017) |
| 09/29/2017 | 1275 | | RESPONSE to Motion by USA as to Edward Troup, Billy Garcia re 1250 Second MOTION to Compel *Discovery* (Armijo, Maria) (Entered: 09/29/2017) |
| 09/29/2017 | 1276 | | RESPONSE to Motion by USA as to Rudy Perez re 1251 Second MOTION to Compel *Discovery* (Armijo, Maria) (Entered: 09/29/2017) |
| 09/29/2017 | 1277 | | REPLY by USA as to Christopher Garcia re 1242 Notice (Other),,, *United States' Reply in Support of its Notice of Expert Witness Testimony* (Armijo, Maria) (Entered: 09/29/2017) |
| 09/29/2017 | 1278 | | RESPONSE by USA as to Christopher Garcia re 1258 Opposed MOTION to Continue *THE DEFENDANTS DEADLINE TO FILE FED. R. CRIM. PROC. 16 MOTIONS*, 1256 Notice (Other) *United States' Response in Opposition to Defendant Christopher Garcia's Notice of Joinder to Unopposed Motion to Extend Time to File Motions Pursuant to Rule 16(1256) and to Defendant's Opposed Motion to Continue Defendant's Deadline to File Fed. R. Crim. Proc. 16 Motions (1258)* (Beck, Matthew) (Entered: 09/29/2017) |
| 10/02/2017 | 1279 | | Unopposed MOTION for Leave to File Excess Pages by Billy Garcia. (Castle, James) (Entered: 10/02/2017) |

| 10/02/2017 | 1280 | | RESPONSE to Motion by USA as to Anthony Ray Baca re 1264 MOTION for Discovery (Armijo, Maria) (Entered: 10/02/2017) |
|---|---|---|---|
| 10/02/2017 | 1281 | | Opposed MOTION for Order *OPPOSED MOTION FOR DESIGNATION OF EVIDENCE BY THE GOVERNMENT PURSUANT TO RULE 12(b)(4)(B)* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Christopher Garcia, Carlos Herrera, Rudy Perez. (Sirignano, Amy) (Entered: 10/02/2017) |
| 10/03/2017 | 1282 | | RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1253 MOTION to Compel *Specific Discovery* (Castellano, Randy) (Entered: 10/03/2017) |
| 10/03/2017 | 1287 | | ORDER by District Judge James O. Browning granting 1266 Motion for Permission to Exceed Page Limit (meq) (Entered: 10/05/2017) |
| 10/05/2017 | 1283 | | Opposed MOTION to Dismiss by Billy Garcia. (Attachments: # 1 Appendix A)(Castle, James) (Entered: 10/05/2017) |
| 10/05/2017 | 1284 | | [CASE PARTICIPANTS] Opposed MOTION to Dismiss by Edward Troup. (Harbour–Valdez, Cori) (Entered: 10/05/2017) |
| 10/05/2017 | 1285 | | Unopposed MOTION for Order *Authorizing Doc. No. 1284 to be filed as a Restricted Access Document* by Edward Troup. (Harbour–Valdez, Cori) (Entered: 10/05/2017) |
| 10/05/2017 | 1286 | | Unopposed MOTION to Modify Conditions of Release by Brandy Rodriguez. (Walz, Jerry) (Entered: 10/05/2017) |
| 10/05/2017 | 1288 | | JOINDER to 1281 Opposed MOTION for Order *OPPOSED MOTION FOR DESIGNATION OF EVIDENCE BY THE GOVERNMENT PURSUANT TO RULE 12(b)(4)(B)* joined by Defendant Andrew Gallegos. (Roberts, Donavon) (Entered: 10/05/2017) |
| 10/06/2017 | 1289 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Roy Paul Martinez (Attachments: # 1 Attachment A) Related Documents: 686 Plea Agreement (Kord, Amy) (Entered: 10/06/2017) |
| 10/06/2017 | 1291 | | RESPONSE to Motion by USA as to Rudy Perez re 1269 MOTION for Order *FOR NOTICE TO COUNTS 6 THROUGH 12 DEFENDANTS OF FEDERAL RULES OF EVIDENCE 404(B), 405, 406, 608 AND RES GESTAE EVIDENCE* (Armijo, Maria) (Entered: 10/06/2017) |
| 10/06/2017 | 1292 | | MOTION to Produce *Motion for Production of Alleged Co−Conspirators Statements and for Pre−Trial Hearing on Their Admissibility* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo |

| | | | |
|---|---|---|---|
| | | | Arnulfo Garcia, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Shauna Gutierrez. (Harbour–Valdez, Cori) (Entered: 10/06/2017) |
| 10/06/2017 | 1293 | | NOTICE *of Joinder to Doc. 1281 and Doc. 1228* by Conrad Villegas (Crow, B.J.) (Entered: 10/06/2017) |
| 10/06/2017 | 1294 | | [CASE PARTICIPANTS] First MOTION to Suppress *Statements* by Carlos Herrera. (Attachments: # 1 Exhibit)(Bhalla, Carey) Modified restriction level per phone call from Ms. Bhalla's Office on 10/10/2017 (meq). (Entered: 10/06/2017) |
| 10/06/2017 | 1295 | | [CASE PARTICIPANTS] Joint MOTION to Suppress *Statement* by Rudy Perez as to Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Villa, Ryan) (Entered: 10/06/2017) |
| 10/06/2017 | 1296 | | MOTION to Sever Defendant *Daniel Sanchez and/or Trial of Counts 6–7 from Trial of Counts 8–12* by Daniel Sanchez. (Jacks, Amy) (Entered: 10/06/2017) |
| 10/06/2017 | 1297 | | Opposed MOTION for Extension of Time to File *Daubert Motions* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Harbour–Valdez, Cori) (Entered: 10/06/2017) |
| 10/06/2017 | 1298 | | Opposed MOTION for Separate Trial on Counts Joe Lawrence Gallegos (2) Count 4ss,4s,5ss,5s and Andrew Gallegos (27) Count 4,4s,5,5s by Andrew Gallegos as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Roberts, Donavon) (Entered: 10/06/2017) |
| 10/06/2017 | 1299 | | NOTICE *OF, AND MOTION IN LIMINE TO ADMIT, GANG EXPERT WITNESSES TESTIMONY* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) Modified on 10/10/2017 to a motion (meq). (Entered: 10/06/2017) |
| 10/06/2017 | 1300 | | [CASE PARTICIPANTS] Joint MOTION to Suppress *Lost or Destroyed Evidence* by Rudy Perez as to Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos |

| | | | |
|---|---|---|---|
| | | | Herrera, Rudy Perez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Villa, Ryan) (Entered: 10/06/2017) |
| 10/06/2017 | 1301 | | Unopposed MOTION to Continue *DEFENDANTS DEADLINE TO FILE FEDERAL RULE OF CRIMINAL PROCURE 12 MOTIONS* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez. (Sirignano, Amy) (Entered: 10/06/2017) |
| 10/06/2017 | 1302 | | Opposed MOTION to Exclude *GOVERNMENT EXPERT WITNESS TESTIMONY AND MOTION FOR DAUBERT HEARING* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Arturo Arnulfo Garcia, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Sirignano, Amy) (Entered: 10/06/2017) |
| 10/06/2017 | 1303 | | Opposed MOTION for Order *FOR SPECIFICATION OF CO−CONSPIRATOR STATEMENTS AND A PRE−TRIAL HEARING ON THE STATEMENTS ADMISSIBILITY* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Sirignano, Amy) (Entered: 10/06/2017) |
| 10/10/2017 | 1305 | | First MOTION for Joinder *and Request for Joint Hearing* by Carlos Herrera. (Bhalla, Carey) (Entered: 10/10/2017) |
| 10/10/2017 | 1306 | | MOTION to Supplement *Motion to Dismiss* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Castle, James) (Entered: 10/10/2017) |
| 10/10/2017 | 1307 | | MOTION for Order *Motion to Prevent the Admission of Statements of Non−Testifying Codefendants Implicating Defendant Billy Garcia and for an Order for the Government to Specify Such Statements Prior to Trial* by Billy Garcia. (Castle, James) (Entered: 10/10/2017) |
| 10/10/2017 | 1308 | | MOTION in Limine *Regarding Alleged Bad Acts* by Billy Garcia. (Attachments: # 1 Appendix A)(Castle, James) (Entered: 10/10/2017) |
| 10/10/2017 | 1310 | | ORDER MODIFYING CONDITIONS by Magistrate Judge Gregory B. Wormuth granting 1286 Motion to Modify Conditions of Release as to Brandy Rodriguez (31) (jv) (Entered: 10/11/2017) |
| 10/11/2017 | 1309 | | NOTICE *of Joinder (Doc# 1303)* by Christopher Chavez (Granberg, John) (Entered: 10/11/2017) |
| 10/12/2017 | 1336 | | ORDER by District Judge James O. Browning granting 1263 Motion for Extension of Time to File Discovery Motion (meq) (Entered: 10/17/2017) |

| 10/12/2017 | 1338 | | ORDER by District Judge James O. Browning granting 1274 Motion for Extension of Time to File Response (meq) (Entered: 10/17/2017) |
|---|---|---|---|
| 10/13/2017 | 1311 | | JOINDER to 1281 Opposed MOTION for Order *OPPOSED MOTION FOR DESIGNATION OF EVIDENCE BY THE GOVERNMENT PURSUANT TO RULE 12(b)(4)(B)* joined by Defendant Allen Patterson. (Lahann, Jeffrey) (Entered: 10/13/2017) |
| 10/13/2017 | 1312 | | JOINDER to 1292 MOTION to Produce *Motion for Production of Alleged Co−Conspirators Statements and for Pre−Trial Hearing on Their Admissibility* joined by Defendant Allen Patterson. (Lahann, Jeffrey) (Entered: 10/13/2017) |
| 10/13/2017 | 1313 | | JOINDER to 1300 Joint MOTION to Suppress *Lost or Destroyed Evidence* joined by Defendant Allen Patterson. (Lahann, Jeffrey) (Entered: 10/13/2017) |
| 10/13/2017 | 1314 | | JOINDER to 1302 Opposed MOTION to Exclude *GOVERNMENT EXPERT WITNESS TESTIMONY AND MOTION FOR DAUBERT HEARING* joined by Defendant Allen Patterson. (Lahann, Jeffrey) (Entered: 10/13/2017) |
| 10/13/2017 | 1315 | | JOINDER to 1303 Opposed MOTION for Order *FOR SPECIFICATION OF CO−CONSPIRATOR STATEMENTS AND A PRE−TRIAL HEARING ON THE STATEMENTS ADMISSIBILITY* joined by Defendant Allen Patterson. (Lahann, Jeffrey) (Entered: 10/13/2017) |
| 10/13/2017 | 1316 | | JOINDER to 1283 Opposed MOTION to Dismiss joined by Defendant Allen Patterson. (Lahann, Jeffrey) (Entered: 10/13/2017) |
| 10/13/2017 | 1317 | | MOTION for Hearing *MOTION FOR JAMES HEARING AND DETERMINATION OF CO−CONSPIRATOR STATEMENTS ADMISSIBILITY AT A PRE−TRIAL HEARING* by Joe Lawrence Gallegos as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez. (Benjamin, Brock) (Entered: 10/13/2017) |
| 10/13/2017 | 1318 | | MOTION to Dismiss *Defendants' Motion to Dismiss − Preindictment Delay* by Joe Lawrence Gallegos as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez. (Benjamin, Brock) (Entered: 10/13/2017) |
| 10/13/2017 | 1319 | | MOTION for Bill of Particulars *Defendants Motion for a Bill of Particulars as to Counts 13−16* by Joe Lawrence Gallegos as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez. (Benjamin, Brock) (Entered: 10/13/2017) |
| 10/13/2017 | 1320 | | MOTION for Bill of Particulars by Shauna Gutierrez. (Arellanes, Angela) (Entered: 10/13/2017) |
| 10/13/2017 | 1321 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Hearing *James Hearing* by Shauna Gutierrez. (Arellanes, Angela) (Entered: 10/13/2017) |
| 10/13/2017 | 1322 | | NOTICE *of Joinder in Motions to Suppress Statements [Dkt. 1294 and Dkt. 1295]* by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1295 Joint MOTION to Suppress *Statement* (Duncan, Theresa) (Entered: 10/13/2017) |
| 10/13/2017 | 1323 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Rudy Perez re 1251 Second MOTION to Compel *Discovery* (Villa, Ryan) (Entered: 10/13/2017) |
| 10/13/2017 | 1324 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Edward Troup as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1250 Second MOTION to Compel *Discovery* (Attachments: # 1 Appendix U.S. Attorneys Discovery Policy for the DNM, # 2 Appendix United States Attorney Manual)(Harbour–Valdez, Cori) (Entered: 10/13/2017) |
| 10/13/2017 | 1325 | | [CASE PARTICIPANTS] MOTION to Suppress *Coerced Statements and Anticipated Testimony of Cooperating Witness & Request for Evidentiary Hearing* by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Duncan, Theresa) (Entered: 10/13/2017) |
| 10/13/2017 | 1326 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Santos Gonzalez (Attachments: # 1 Attachment A)<br><br>Related Documents: 1180 Plea Agreement<br>(Kord, Amy) (Entered: 10/13/2017) |
| 10/13/2017 | 1328 | | [CASE PARTICIPANTS] MOTION to Exclude *Incomplete and Selective Recordings of Communications Made By Government Informant & Request for Evidentiary Hearing* by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Duncan, Theresa) (Entered: 10/13/2017) |
| 10/13/2017 | 1329 | | Opposed MOTION for Order *TO SHOW CAUSE FOR NON–COMPLIANCE OF DISTRICT COURT ORDERS DURING MAY 9–10, 2017 HEARINGS* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad |

| | | | |
|---|---|---|---|
| | | | Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez. (Sirignano, Amy) (Entered: 10/13/2017) |
| 10/13/2017 | 1330 | | [CASE PARTICIPANTS] Opposed MOTION to Dismiss *AND REQUEST FOR EVIDENTIARY HEARING* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Sirignano, Amy) (Entered: 10/13/2017) |
| 10/13/2017 | 1331 | | REPLY by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Anthony Ray Baca, Christopher Garcia *TO GOVERNMENTS RESPONSE (DOC. 1278) TO OPPOSED MOTION TO CONTINUE THE DEFENDANTS DEADLINE TO FILE FED. R. CRIM. PROC. 16 MOTIONS (DOC. 1258)* (Sirignano, Amy) (Entered: 10/13/2017) |
| 10/13/2017 | 1332 | | [CASE PARTICIPANTS] MOTION to Compel *Immediate Production of Brady/Giglio Materials* by Anthony Ray Baca. (Lowry, Marc) (Entered: 10/14/2017) |
| 10/15/2017 | 1333 | | NOTICE *of UNAVAILABILITY* November 7, 2017; November 11, 2017; November 22–24, 2017; December 7, 2017; December 15, 2017; December 21, 2017; and January 3, 2018. by Andrew Gallegos (Roberts, Donavon) Modified on 10/16/2017 (meq). (Entered: 10/15/2017) |
| 10/16/2017 | 1334 | | RESPONSE in Opposition by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1281 Opposed MOTION for Order *OPPOSED MOTION FOR DESIGNATION OF EVIDENCE BY THE GOVERNMENT PURSUANT TO RULE 12(b)(4)(B)* (Armijo, Maria) (Entered: 10/16/2017) |
| 10/16/2017 | 1335 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1264 MOTION for Discovery (Attachments: # 1 Exhibit A)(Duncan, Theresa) (Entered: 10/16/2017) |
| 10/17/2017 | 1337 | | RESPONSE in Opposition by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1299 MOTION in Limine (Castle, James) (Entered: 10/17/2017) |
| 10/17/2017 | 1339 | | |

| | | | |
|---|---|---|---|
| | | | ORDER by District Judge James O. Browning granting 1285 Motion for Order Authorizing Restricted Access to Doc. 1284 (meq) (Entered: 10/17/2017) |
| 10/17/2017 | 1340 | | NOTICE *OF LODGING OF THE SUPPLEMENT OF EXHIBITS TO ANTHONY RAY BACA'S MOTION TO COMPEL IMMEDIATE PRODUCTION OF BRADY AND GIGLIO MATERIALS* by Anthony Ray Baca re 1332 MOTION to Compel *Immediate Production of Brady/Giglio Materials* (Lowry, Marc) (Entered: 10/17/2017) |
| 10/17/2017 | 1341 | | REPLY by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1267 MOTION to Compel *COMPEL DISCOVERY AND INSPECTION OF DOCUMENTS AND PHYSICAL EVIDENCE PURSUANT TO RULE 16* (Sirignano, Amy) (Entered: 10/17/2017) |
| 10/18/2017 | 1342 | | NOTICE *of Defendant Daniel Sanchez's Joinder in Co−defendant Garcia's Motion to Dismiss (Doc. 1330) and Co−defendant Baca's Motion for Immediate Production of Brady and Giglio Materials (Doc. 1332)* by Daniel Sanchez (Jacks, Amy) (Entered: 10/18/2017) |
| 10/18/2017 | 1343 | | NOTICE OF HEARING as to Mauricio Varela: Change of Plea Hearing set for 10/19/2017 at 11:00 AM in Las Cruces, NM − 360 Dona Ana Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/18/2017) |
| 10/19/2017 | 1344 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1283 Opposed MOTION to Dismiss , 1284 Opposed MOTION to Dismiss by USA as to Edward Troup, Billy Garcia. (Castellano, Randy) (Entered: 10/19/2017) |
| 10/19/2017 | 1478 | | NOTICE of Clerk's Minutes for Plea Hearing held in CR 15−4269 JB (Doc. 166) as to Mauricio Varela; Guilty plea entered to Count 2 of the Indictment; Count 1 of Indictment and Counts 6 and 7 of the Second Superseding Indictment in CR 15−4268 JB to be dismissed at a later date; Sentencing hearing to be set; Defendant to remain in custody. (kls) (Entered: 11/27/2017) |
| 10/20/2017 | 1345 | | MOTION to Compel *Government to Comply with Rule 16 in Noticing Its Intent to Rely on Gang Expert Witness Testimony, OR, in the alternative, to Exclude the Government's Gang Expert Witnesses Altogether* by Daniel Sanchez. (Jacks, Amy) (Entered: 10/20/2017) |
| 10/20/2017 | 1346 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1292 MOTION to Produce *Motion for Production of Alleged Co−Conspirators Statements and for Pre−Trial Hearing on Their Admissibility* by USA as to Edward Troup, Billy Garcia. (Armijo, Maria) (Entered: 10/20/2017) |
| 10/20/2017 | 1347 | | RESPONSE in Opposition by USA as to Christopher Garcia re 1302 Opposed MOTION to Exclude *GOVERNMENT EXPERT WITNESS* |

| | | | |
|---|---|---|---|
| | | | *TESTIMONY AND MOTION FOR DAUBERT HEARING* (Beck, Matthew) (Entered: 10/20/2017) |
| 10/20/2017 | 1348 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1295 Joint MOTION to Suppress *Statement* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 10/20/2017) |
| 10/20/2017 | 1349 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1300 Joint MOTION to Suppress *Lost or Destroyed Evidence* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 10/20/2017) |
| 10/20/2017 | 1350 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1303 Opposed MOTION for Order *FOR SPECIFICATION OF CO−CONSPIRATOR STATEMENTS AND A PRE−TRIAL HEARING ON THE STATEMENTS ADMISSIBILITY* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 10/20/2017) |
| 10/20/2017 | 1351 | | RESPONSE in Opposition by USA as to Andrew Gallegos re 1298 Opposed MOTION for Separate Trial on Counts Joe Lawrence Gallegos (2) Count 4ss,4s,5ss,5s and Andrew Gallegos (27) Count 4,4s,5,5s (Armijo, Maria) (Entered: 10/20/2017) |
| 10/20/2017 | 1352 | | RESPONSE in Opposition by USA as to Daniel Sanchez re 1296 MOTION to Sever Defendant *Daniel Sanchez and/or Trial of Counts 6−7 from Trial of Counts 8−12* (Armijo, Maria) (Entered: 10/20/2017) |
| 10/20/2017 | 1353 | | NOTICE *of Expert Witness* by Carlos Herrera (Bhalla, Carey) (Entered: 10/20/2017) |
| 10/20/2017 | 1354 | | NOTICE *of Expert Testimony* by Rudy Perez (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 10/20/2017) |
| 10/20/2017 | 1355 | | NOTICE *REGARDING A POSSIBLE GANG OR CORRECTIONS EXPERT* by Edward Troup, Billy Garcia (Castle, James) (Entered: 10/20/2017) |

| 10/20/2017 | 1356 | | RESPONSE in Opposition by Rudy Perez as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez re 1299 MOTION in Limine *and Request for Hearing Pursuant to Daubert and Kumho Tire* (Fox–Young, Justine) (Entered: 10/20/2017) |
|---|---|---|---|
| 10/20/2017 | 1357 | | NOTICE *Prison Gang Expert* by Mario Rodriguez (Attachments: # 1 Exhibit "A" CV)(Hernandez, Santiago) (Entered: 10/20/2017) |
| 10/24/2017 | 1358 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1308 MOTION in Limine *Regarding Alleged Bad Acts*, 1307 MOTION for Order *Motion to Prevent the Admission of Statements of Non–Testifying Codefendants Implicating Defendant Billy Garcia and for an Order for the Government to Specify Such Statements Prior to Trial* by USA as to Billy Garcia. (Armijo, Maria) (Entered: 10/24/2017) |
| 10/25/2017 | 1359 | | ORDER by District Judge James O. Browning granting 1279 Motion for Leave to File Excess Pages as to Billy Garcia (5) (meq) (Entered: 10/25/2017) |
| 10/25/2017 | 1360 | | ORDER by District Judge James O. Browning granting 1344 Motion for Extension of Time to File Response/Reply as to Edward Troup (3), Billy Garcia (5) (meq) (Entered: 10/25/2017) |
| 10/25/2017 | 1361 | | ORDER by District Judge James O. Browning granting 1346 Motion for Extension of Time to File Response/Reply as to Edward Troup (3), Billy Garcia (5) (meq) (Entered: 10/25/2017) |
| 10/25/2017 | 1362 | | ORDER by District Judge James O. Browning granting 1348 Motion for Extension of Time to File Response (meq) (Entered: 10/25/2017) |
| 10/25/2017 | 1363 | | ORDER by District Judge James O. Browning granting 1349 Motion for Extension of Time to File Response (meq) (Entered: 10/25/2017) |
| 10/25/2017 | 1364 | | ORDER by District Judge James O. Browning granting 1350 Motion for Extension of Time to File Response (meq) (Entered: 10/25/2017) |
| 10/25/2017 | 1365 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1294 First MOTION to Suppress *Statements* by USA as to Carlos Herrera. (Armijo, Maria) (Entered: 10/25/2017) |
| 10/25/2017 | 1366 | | NOTICE of motion hearing scheduled for 11/8–9/2017 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. The agenda of the matters to be heard will issue at a later date.(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/25/2017) |
| 10/25/2017 | 1367 | | NOTICE *OF ENTRY OF APPEARANCE OF ASSOCIATE COUNSEL* by Christopher Garcia (Sirignano, Amy) (Entered: 10/25/2017) |
| 10/26/2017 | 1370 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Redisclosure – Corrected Information) as to Santos Gonzalez<br><br>Related Documents: 1180 Plea Agreement |

| | | | (Kord, Amy) (Entered: 10/26/2017) |
|---|---|---|---|
| 10/26/2017 | 1372 | | RESPONSE in Opposition by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Andrew Gallegos re 1318 MOTION to Dismiss *Defendants' Motion to Dismiss – Preindictment Delay*, 1283 Opposed MOTION to Dismiss , 1306 MOTION to Supplement *Motion to Dismiss*, 1284 Opposed MOTION to Dismiss (Castellano, Randy) (Entered: 10/26/2017) |
| 10/27/2017 | 1373 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1295 Joint MOTION to Suppress *Statement* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 10/27/2017) |
| 10/27/2017 | 1374 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1328 MOTION to Exclude *Incomplete and Selective Recordings of Communications Made By Government Informant & Request for Evidentiary Hearing*, 1325 MOTION to Suppress *Coerced Statements and Anticipated Testimony of Cooperating Witness & Request for Evidentiary Hearing* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 10/27/2017) |
| 10/27/2017 | 1375 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1329 Opposed MOTION for Order *TO SHOW CAUSE FOR NON–COMPLIANCE OF DISTRICT COURT ORDERS DURING MAY 9–10, 2017 HEARINGS*, 1330 Opposed MOTION to Dismiss *AND REQUEST FOR EVIDENTIARY HEARING* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 10/27/2017) |
| 10/27/2017 | 1376 | | RESPONSE to Motion by USA as to Billy Garcia re 1292 MOTION to Produce *Motion for Production of Alleged Co–Conspirators Statements and for Pre–Trial Hearing on Their Admissibility* (Castellano, Randy) (Entered: 10/27/2017) |

| 10/27/2017 | 1377 | | RESPONSE to Motion by USA as to Joe Lawrence Gallegos re 1317 MOTION for Hearing *MOTION FOR JAMES HEARING AND DETERMINATION OF CO−CONSPIRATOR STATEMENTS ADMISSIBILITY AT A PRE−TRIAL HEARING* (Castellano, Randy) (Entered: 10/27/2017) |
| 10/27/2017 | 1378 | | RESPONSE to Motion by USA as to Shauna Gutierrez re 1321 MOTION for Hearing *James Hearing* (Castellano, Randy) (Entered: 10/27/2017) |
| 10/27/2017 | 1379 | | RESPONSE to Motion by USA as to Christopher Garcia re 1303 Opposed MOTION for Order *FOR SPECIFICATION OF CO−CONSPIRATOR STATEMENTS AND A PRE−TRIAL HEARING ON THE STATEMENTS ADMISSIBILITY* (Castellano, Randy) (Entered: 10/27/2017) |
| 10/27/2017 | 1380 | | RESPONSE in Opposition by USA as to Shauna Gutierrez re 1320 MOTION for Bill of Particulars (Armijo, Maria) (Entered: 10/27/2017) |
| 10/27/2017 | 1381 | | RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1300 Joint MOTION to Suppress *Lost or Destroyed Evidence* (Armijo, Maria) (Entered: 10/27/2017) |
| 10/27/2017 | 1382 | | RESPONSE in Opposition by USA as to Joe Lawrence Gallegos re 1319 MOTION for Bill of Particulars *Defendants Motion for a Bill of Particulars as to Counts 13−16* (Armijo, Maria) (Entered: 10/27/2017) |
| 10/30/2017 | 1383 | | NOTICE OF HEARING as to Conrad Villegas: Change of Plea Hearing set for 11/1/2017 at 9:30 AM in Las Cruces, NM − 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/30/2017) |
| 10/30/2017 | 1384 | | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Mario Rodriguez: Change of Plea Hearing set for 11/1/2017 at 9:30 AM in Las Cruces, NM − 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/30/2017) |
| 10/30/2017 | 1385 | | RESPONSE to Motion by USA as to Billy Garcia re 1308 MOTION in Limine *Regarding Alleged Bad Acts* (Armijo, Maria) (Entered: 10/30/2017) |
| 10/30/2017 | 1386 | | |

| | | | |
|---|---|---|---|
| | | | SENTENCING MEMORANDUM by Santos Gonzalez (Johnson, Erlinda) (Entered: 10/30/2017) |
| 10/30/2017 | 1387 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1332 MOTION to Compel *Immediate Production of Brady/Giglio Materials* by USA as to Anthony Ray Baca. (Armijo, Maria) (Entered: 10/30/2017) |
| 10/30/2017 | 1388 | | REPLY by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1334 Response in Opposition,, *TO DEFENDANTS MOTION FOR DESIGNATION OF EVIDENCE BY THE GOVERNMENT PURSUANT TO RULE 12(b)(4)(B) (DOC. 1281)* (Sirignano, Amy) (Entered: 10/30/2017) |
| 10/31/2017 | 1389 | | RESPONSE to Motion by USA as to Billy Garcia re 1307 MOTION for Order *Motion to Prevent the Admission of Statements of Non−Testifying Codefendants Implicating Defendant Billy Garcia and for an Order for the Government to Specify Such Statements Prior to Trial* (Castellano, Randy) (Entered: 10/31/2017) |
| 11/01/2017 | 1390 | | JOINDER to 1281 Opposed MOTION for Order *OPPOSED MOTION FOR DESIGNATION OF EVIDENCE BY THE GOVERNMENT PURSUANT TO RULE 12(b)(4)(B)* joined by Defendant Anthony Ray Baca. (Duncan, Theresa) (Entered: 11/01/2017) |
| 11/01/2017 | 1391 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE IN A FELONY CASE by Conrad Villegas. (kls) (Entered: 11/01/2017) |
| 11/01/2017 | 1392 | | PLEA AGREEMENT as to Conrad Villegas. (kls) (Entered: 11/01/2017) |
| 11/01/2017 | 1393 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 11/1/2017 as to Conrad Villegas (20); Guilty plea entered to Count 8ss of the Second Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR−Sierra Blanca) (kls) (Entered: 11/01/2017) |
| 11/01/2017 | 1394 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE IN A FELONY CASE by Mario Rodriguez. (kls) (Entered: 11/01/2017) |
| 11/01/2017 | 1395 | | PLEA AGREEMENT as to Mario Rodriguez. (kls) (Entered: 11/01/2017) |
| 11/01/2017 | 1396 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 11/1/2017 as to Mario Rodriguez (15); Guilty plea entered to Counts 6ss and 7ss of the Second Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR−Sierra Blanca) (kls) (Entered: 11/01/2017) |
| 11/01/2017 | 1397 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Edward Troup, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1294 First MOTION to Suppress *Statements* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Armijo, Maria) (Entered: 11/01/2017) |
| 11/03/2017 | 1398 | | Unopposed MOTION to Continue *DEFENDANTS DEADLINE TO FILE Reply To United States Responses TO DEFENDANT CHRISTOPHER GARCIAS MOTION FOR DAUBERT HEARING AND TO EXCLUDE* |

| | | | |
|---|---|---|---|
| | | | *GOVERNMENT EXPERT WITNESS TESTIMONY [Doc. 1302] (Doc. 1347) and UNITED STATES RESPONSE TO DEFENDANTS OPPOSED MOTION FOR SPECIFICATION OF CO−CONSPIRATOR STATEMENTS AND FOR PRE−TRIAL HEARING ON THE STATEMENTS ADMISSIBILITY 1303 (Doc. 1379)* by Christopher Garcia. (Sirignano, Amy) (Entered: 11/03/2017) |
| 11/03/2017 | 1399 | | NOTICE *OF JOINDER TO DEFENDANTS RUDY PEREZ, EDWARD TROUP, AND BILLY GARCIA MOTIONS* by Christopher Garcia (Sirignano, Amy) (Entered: 11/03/2017) |
| 11/03/2017 | 1400 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Anthony Ray Baca, Christopher Garcia re 1330 Opposed MOTION to Dismiss *AND REQUEST FOR EVIDENTIARY HEARING* (Armijo, Maria) (Entered: 11/03/2017) |
| 11/03/2017 | 1401 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Christopher Garcia re 1329 Opposed MOTION for Order *TO SHOW CAUSE FOR NON−COMPLIANCE OF DISTRICT COURT ORDERS DURING MAY 9−10, 2017 HEARINGS* (Attachments: # 1 Exhibit)(Armijo, Maria) (Entered: 11/03/2017) |
| 11/03/2017 | 1402 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1295 Joint MOTION to Suppress *Statement* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Armijo, Maria) (Entered: 11/03/2017) |
| 11/03/2017 | 1403 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1325 MOTION to Suppress *Coerced Statements and Anticipated Testimony of Cooperating Witness & Request for Evidentiary Hearing* (Attachments: # 1 Exhibit)(Castellano, Randy) (Entered: 11/03/2017) |
| 11/03/2017 | 1404 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1345 MOTION to Compel *Government to Comply with Rule 16 in Noticing Its Intent to Rely on Gang Expert Witness Testimony, OR, in the alternative, to Exclude the Government's Gang Expert Witnesses Altogether* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 11/03/2017) |

| | | | |
|---|---|---|---|
| 11/03/2017 | 1405 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1328 MOTION to Exclude *Incomplete and Selective Recordings of Communications Made By Government Informant & Request for Evidentiary Hearing* (Castellano, Randy) (Entered: 11/03/2017) |
| 11/03/2017 | 1411 | | ORDER by District Judge James O. Browning granting 1373 Motion for Extension of Time to File Response (meq) (Entered: 11/07/2017) |
| 11/03/2017 | 1413 | | ORDER by District Judge James O. Browning granting 1374 Motion for Extension of Time to File Response (meq) (Entered: 11/07/2017) |
| 11/03/2017 | 1414 | | ORDER by District Judge James O. Browning granting 1358 Motion for Extension of Time to File Response (meq) (Entered: 11/07/2017) |
| 11/03/2017 | 1415 | | ORDER by District Judge James O. Browning granting 1365 Motion for Extension of Time to File Response (meq) (Entered: 11/07/2017) |
| 11/03/2017 | 1416 | | ORDER by District Judge James O. Browning granting 1387 Motion for Extension of Time to File Response (meq) (Entered: 11/07/2017) |
| 11/03/2017 | 1417 | | ORDER by District Judge James O. Browning granting 1375 Motion for Extension of Time to File Response (meq) (Entered: 11/07/2017) |
| 11/03/2017 | 1420 | | [APPLICABLE PARTY] EX PARTE ORDER by District Judge James O. Browning granting 1368 Motion for Interim Payment of Invendica's Web–Based Database (meq) (Entered: 11/08/2017) |
| 11/06/2017 | 1406 | | TRANSCRIPT of Change of Plea as to Javier Alonso held on August 28, 2017, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting, Telephone number 361–949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | Notice of Intent to Request Redaction set for 11/13/2017. Redaction Request due 11/27/2017. Redacted Transcript Deadline set for 12/7/2017. Release of Transcript Restriction set for 2/5/2018.(ar) (Entered: 11/06/2017) |
|---|---|---|---|
| 11/06/2017 | 1407 | | JOINDER to 1281 Opposed MOTION for Order *OPPOSED MOTION FOR DESIGNATION OF EVIDENCE BY THE GOVERNMENT PURSUANT TO RULE 12(b)(4)(B)* joined by Defendant Shauna Gutierrez. (Arellanes, Angela) (Entered: 11/06/2017) |
| 11/06/2017 | 1408 | | MOTION for Order *for Statewide Jury Pool and Jury Questionnaire* by Rudy Perez as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Villa, Ryan) (Entered: 11/06/2017) |
| 11/06/2017 | 1409 | | Unopposed MOTION for Extension of Time to File Response/Reply *to Motion to Compel Production of Brady and Giglio Materials* by USA as to Anthony Ray Baca. (Armijo, Maria) (Entered: 11/06/2017) |
| 11/06/2017 | 1410 | | MINUTE ORDER, pursuant to the directionof District Judge James O. Browning, notifying the parties that the following motions are scheduled to be heard at the motions hearing scheduled for 11/8–9/2017: 1055 , 1126 , 1163 , [1228 & 1303], 1247 , 1251 , 1253 , 1258 , 1264 , 1267 , 1269 , 1270 , 1281 , 1296 , 1297 , 1046 , 1250 , 1292 , 1190 , 1283 and 1155 .(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/06/2017) |
| 11/07/2017 | 1412 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, removing Docs. [1228 & 1303] and 1283 from the agenda of motions to be heard at the motion hearing scheduled for 11/8–9/2017. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/07/2017) |
| 11/07/2017 | 1418 | | NOTICE of sentencing hearing as to Defendant Santos Gonzalez scheduled for 11/14/2017 at 09:00 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/07/2017) |
| 11/07/2017 | 1419 | | Unopposed MOTION to Continue *THE MOTIONS IN LIMINE AND REPLIES TO DAUBERT MOTIONS DEADLINE, DUE NOVEMBER 10, 2017 (Doc. 1205) TO DECEMBER 1, 2017 FOR ALL DEFENDANTS* by Christopher Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Sirignano, Amy) Modified on 11/29/2017 (meq). (Entered: 11/07/2017) |
| 11/08/2017 | 1421 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, removing Docs. 1292 from the agenda of motions to be heard at |

| | | | |
|---|---|---|---|
| | | | the motion hearing scheduled for 11/8–9/2017. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/08/2017) |
| 11/08/2017 | 1423 | | First MOTION for Extension of Time to File Response/Reply by Carlos Herrera. (Bhalla, Carey) (Entered: 11/08/2017) |
| 11/09/2017 | 1425 | | NOTICE of motions hearing regarding Docs. 1228 , 1292 , 1294 , 1295 & 1303 scheduled for 11/20/2017 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning.(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/09/2017) |
| 11/09/2017 | 1426 | | NOTICE of motions hearing regarding Docs. 1283 , 1284 , 1300 , 1325 , 1328 & 1330 scheduled for 12/7–8/2017 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning.(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/09/2017) |
| 11/09/2017 | 1427 | | NOTICE of motions hearing regarding Docs. 1242 , 1299 , 1302 , 1332 & 1345 scheduled for 12/12–13/2017 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning.(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/09/2017) |
| 11/09/2017 | 1428 | | NOTICE of motions hearing regarding Docs. 1317 & 1329 scheduled for 12/18–19/2017 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning.(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/09/2017) |
| 11/09/2017 | 1429 | | AMENDED NOTICE of motions hearing regarding Docs. 1228, 1292, 1294, 1295 & 1303 scheduled for 11/20–22/2017 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning.(kw) (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/09/2017) |
| 11/09/2017 | 1431 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1283 Opposed MOTION to Dismiss , 1284 Opposed MOTION to Dismiss by Edward Troup as to Edward Troup, Billy Garcia. (Harbour–Valdez, Cori) (Entered: 11/09/2017) |
| 11/09/2017 | 1432 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1292 MOTION to Produce *Motion for Production of Alleged Co–Conspirators Statements and for Pre–Trial Hearing on Their Admissibility* by Edward Troup as to Edward Troup, Billy Garcia. (Harbour–Valdez, Cori) (Entered: 11/09/2017) |
| 11/09/2017 | 1433 | | [CASE PARTICIPANTS] ORDER by District Judge James O. Browning granting 1053 Motion for Discovery as to Daniel Sanchez (18), Anthony Ray Baca (21), Christopher Garcia (24), Carlos Herrera (25), Rudy Perez (26). (kls) (Entered: 11/09/2017) |

| | | | |
|---|---|---|---|
| 11/09/2017 | 1434 | | MOTION for Extension of Time to File Response/Reply as to 1308 MOTION in Limine *Regarding Alleged Bad Acts*, 1307 MOTION for Order *Motion to Prevent the Admission of Statements of Non−Testifying Codefendants Implicating Defendant Billy Garcia and for an Order for the Government to Specify Such Statements Prior to Trial* by Billy Garcia. (Attachments: # 1 Proposed Order)(Castle, James) (Entered: 11/09/2017) |
| 11/10/2017 | 1435 | | REPLY TO RESPONSE to Motion by Christopher Garcia re 1302 Opposed MOTION to Exclude *GOVERNMENT EXPERT WITNESS TESTIMONY AND MOTION FOR DAUBERT HEARING* (Sirignano, Amy) (Entered: 11/10/2017) |
| 11/10/2017 | 1436 | | RESPONSE by Christopher Garcia re 1379 Response to Motion *FOR SPECIFICATION OF CO−CONSPIRATOR STATEMENTS AND FOR PRE− TRIAL HEARING ON THE STATEMENTS ADMISSIBILITY 1303* (Sirignano, Amy) (Entered: 11/11/2017) |
| 11/13/2017 | 1437 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, rescheduling the sentencing hearing for Defendant Santos Gonzalez on 11/14/2017 to commence at 01:30 PM. (kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/13/2017) |
| 11/13/2017 | 1438 | | RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1345 MOTION to Compel *Government to Comply with Rule 16 in Noticing Its Intent to Rely on Gang Expert Witness Testimony, OR, in the alternative, to Exclude the Government's Gang Expert Witnesses Altogether* (Armijo, Maria) (Entered: 11/13/2017) |
| 11/13/2017 | 1439 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Rudy Perez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1300 Joint MOTION to Suppress *Lost or Destroyed Evidence* (Attachments: # 1 Exhibit 1)(Fox−Young, Justine) (Entered: 11/13/2017) |
| 11/14/2017 | 1440 | | SECOND AMENDED NOTICE (changing dates of hearing and agenda of motions set to be heard) of motions hearing regarding Docs. 1228 , 1242 , 1292 , 1299 , 1302 , 1303 , 1332 & 1345 and vacating the hearing scheduled for 11/20−22/2017 and rescheduling for 11/27−29/2017 at 09:00 AM in Las Cruces − 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning.(kw) |

| | | | |
|---|---|---|---|
| | | | [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/14/2017) |
| 11/14/2017 | 1441 | | AMENDED NOTICE (revising the agenda of motions to be heard) of motions hearing regarding Docs. 1294 & 1295 scheduled for 12/12–13/2017 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning.(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/14/2017) |
| 11/14/2017 | 1508 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 11/14/2017 for Santos Gonzalez (28), Count(s) 14s, 15s, 16s SENTENCE IMPOSED: CBOP 96 months as to counts 14,15 and 16 of the SSI (said terms shall run concurrently); 3 yrs supervised release as to counts 14 and 15, 5 yrs as to count 16, said terms shall run concurrently for a total term of 5 yrs; SPA $300; deft in custody(Court Reporter: J. Bean) (meq) (Entered: 11/30/2017) |
| 11/15/2017 | 1442 | | MOTION for Downward Adjustment *in Defendant's Total Offense Level* by USA as to Santos Gonzalez. (Castellano, Randy) (Entered: 11/15/2017) |
| 11/15/2017 | 1443 | | REPLY TO RESPONSE to Motion by Billy Garcia re 1283 Opposed MOTION to Dismiss , 1306 MOTION to Supplement *Motion to Dismiss and 1372 United States' Response in Opposition to Defendants' Motions to Dismiss* (Castle, James) (Entered: 11/15/2017) |
| 11/17/2017 | 1448 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Edward Troup re 1284 Opposed MOTION to Dismiss (Harbour–Valdez, Cori) (Entered: 11/17/2017) |
| 11/17/2017 | 1449 | | MOTION for Order *for Additional Peremptory Challenges* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez as to Billy Garcia. (Castle, James) (Entered: 11/17/2017) |
| 11/17/2017 | 1450 | | BRIEF by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez as to Billy Garcia 1449 MOTION for Order *for Additional Peremptory Challenges* filed by Billy Garcia (Castle, James) (Entered: 11/17/2017) |
| 11/17/2017 | 1452 | | REPLY TO RESPONSE to Motion by Edward Troup as to Edward Troup, Billy Garcia re 1292 MOTION to Produce *Motion for Production of Alleged Co–Conspirators Statements and for Pre–Trial Hearing on Their Admissibility* (Attachments: # 1 Exhibit)(Harbour–Valdez, Cori) (Entered: 11/17/2017) |
| 11/17/2017 | 1453 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Rudy Perez re 1295 Joint MOTION to Suppress *Statement* (Villa, Ryan) (Entered: 11/17/2017) |
| 11/17/2017 | 1454 | | REPLY by Christopher Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald |

| | | | |
|---|---|---|---|
| | | | Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1401 Response to Motion *FOR ORDER TO SHOW CAUSE FOR NON–COMPLIANCE OF DISTRICT COURT ORDERS DURING MAY 9–10, 2017 HEARINGS (DOC. 1329)* (Sirignano, Amy) (Entered: 11/17/2017) |
| 11/19/2017 | <u>1455</u> | | NOTICE *Withdrawing Pleading* by Anthony Ray Baca re <u>1055</u> MOTION for Extension of Time to File *Expert Notices and Reports* (Duncan, Theresa) (Entered: 11/19/2017) |
| 11/20/2017 | <u>1456</u> | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 11/08/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 11/27/2017. Redaction Request due 12/11/2017. Redacted Transcript Deadline set for 12/21/2017. Release of Transcript Restriction set for 2/20/2018.(jab) (Entered: 11/20/2017) |
| 11/20/2017 | <u>1457</u> | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 11/09/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of |

|  |  |  | Transcript Restriction. After that date it may be obtained through PACER. |
|--|--|--|--|
|  |  |  | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 11/27/2017. Redaction Request due 12/11/2017. Redacted Transcript Deadline set for 12/21/2017. Release of Transcript Restriction set for 2/20/2018. (jab) (Entered: 11/20/2017) |
| 11/20/2017 | 1458 |  | MOTION for Order *for Additional Peremptory Challenges* by Daniel Sanchez. (Jacks, Amy) (Entered: 11/20/2017) |
| 11/20/2017 | 1459 |  | NOTICE *of Letter to Government Regarding Questions about Electronic Surveillance* by Daniel Sanchez (Jacks, Amy) (Entered: 11/20/2017) |
| 11/20/2017 | 1461 |  | NOTICE *of Non Availability (December 18, 2017 through January 1, 2018)* by Carlos Herrera (Davis, Michael) (Entered: 11/20/2017) |
| 11/20/2017 | 1462 |  | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1328 MOTION to Exclude *Incomplete and Selective Recordings of Communications Made By Government Informant & Request for Evidentiary Hearing* (Duncan, Theresa) (Entered: 11/20/2017) |
| 11/20/2017 | 1463 |  | NOTICE *of Withdrawing Motion* by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Arturo Arnulfo Garcia, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez re 1332 MOTION to Compel *Immediate Production of Brady/Giglio Materials* (Duncan, Theresa) (Entered: 11/20/2017) |
| 11/20/2017 | 1464 |  | [CASE PARTICIPANTS] WITNESS LIST by USA as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Armijo, Maria) (Entered: 11/20/2017) |
| 11/20/2017 | 1465 |  | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1325 MOTION to Suppress *Coerced Statements and Anticipated Testimony of Cooperating Witness & Request for Evidentiary Hearing* (Duncan, Theresa) (Entered: 11/20/2017) |
| 11/21/2017 | 1466 |  | MOTION to Supplement *Objection to Government's Proposed Gang Expert Evidence on Sixth Amendment Confrontation Grounds [Doc. 1337]* by Billy Garcia. (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C, # 4 Appendix D, # 5 Appendix E, # 6 Appendix F, # 7 Appendix G, # 8 |

| | | | Appendix H)(Castle, James) (Entered: 11/21/2017) |
|---|---|---|---|
| 11/22/2017 | 1467 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Benjamin Clark (Attachments: # 1 Attachment A)<br><br>Related Documents: 768 Plea Agreement<br>(Kord, Amy) (Entered: 11/22/2017) |
| 11/22/2017 | 1469 | | APPENDIX/SUPPLEMENT re 1126 MOTION to determine whether Michael V. Davis has an actual or potential conflict of interest *United States' Sealed Motion Regarding Attorney Conflict* (Davis, Michael) (Entered: 11/22/2017) |
| 11/22/2017 | 1470 | | EMAIL from Ryan Villa of Purposed Supplemental Juror Questionnaire (meq) (Entered: 11/22/2017) |
| 11/22/2017 | 1471 | | NOTICE *REGARDING ATTORNEY CONFLICT (DOC. 1126)* by Roy Paul Martinez (Milner, Marcia) (Entered: 11/22/2017) |
| 11/24/2017 | 1472 | | NOTICE of Pretrial Conference scheduled for 12/18/2017 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (kw)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/24/2017) |
| 11/24/2017 | 1473 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, removing Doc. 1317 from the agenda of motions scheduled to be heard 12/18–19/2017 and adding it to the agenda of motions to be heard 11/27–29/2017; also, removing Doc. 1332 from the 11/27–29/17 agenda, as a result of the motion being withdrawn. (kw) (Entered: 11/24/2017) |
| 11/27/2017 | 1477 | | WITNESS LIST by Rudy Perez (Fox–Young, Justine) (Entered: 11/27/2017) |
| 11/27/2017 | 1479 | | NOTICE *Defendant's Witness List* by Carlos Herrera (Bhalla, Carey) (Entered: 11/27/2017) |
| 11/27/2017 | 1480 | | REPLY TO RESPONSE to Motion by Carlos Herrera re 1294 First MOTION to Suppress *Statements* (Bhalla, Carey) (Entered: 11/27/2017) |
| 11/27/2017 | 1481 | | NOTICE *of Addendum* by Carlos Herrera re 1480 Reply to Response (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit)(Bhalla, Carey) (Entered: 11/27/2017) |
| 11/27/2017 | 1482 | | NOTICE *of Letter to Government Regarding DNA Evidence* by Christopher Garcia (Sirignano, Amy) (Entered: 11/27/2017) |
| 11/27/2017 | 1483 | | WITNESS LIST by Daniel Sanchez (Jacks, Amy) (Entered: 11/27/2017) |
| 11/28/2017 | 1484 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Paul Rivera (Attachments: # 1 Attachment A)<br><br>Related Documents: 877 Plea Agreement<br>(Kemp, Branhan) (Entered: 11/28/2017) |
| 11/28/2017 | 1486 | | NOTICE *PER COURTS RULING OF INCORPORATION OF MOTIONS AND RELATED TRANSCRIPTS FROM 15–CR–4275 NEEDING THE* |

| | | | |
|---|---|---|---|
| | | | *COURTS DECISION* by Christopher Garcia (Sirignano, Amy) (Entered: 11/28/2017) |
| 11/28/2017 | 1487 | | NOTICE *of Letter to Government Regarding Incorporating 15−CR−4275 Motions and Motions to Suppress* by Christopher Garcia (Sirignano, Amy) (Entered: 11/28/2017) |
| 11/28/2017 | 1488 | | MOTION to Appoint Counsel , MOTION to Continue by Carlos Herrera. (Bhalla, Carey) (Entered: 11/28/2017) |
| 11/29/2017 | 1489 | | [APPLICABLE PARTY] EX PARTE ORDER by District Judge James O. Browning granting 1430 Motion to Allow Interim CJA Billing as to Christopher Garcia (24) (meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1490 | | ORDER by District Judge James O. Browning granting 1398 Motion to Continue Defendant's Deadline to File Replies as to Christopher Garcia (24) (meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1491 | | ORDER by District Judge James O. Browning granting 1404 Motion for Extension of Time to File Response(meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1492 | | ORDER by District Judge James O. Browning granting 1409 Motion for Extension of Time to File Response to Motion to Compel Production of Brady and Giglio Materials (meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1493 | | ORDER by District Judge James O. Browning granting 1419 Motion to Continue the Motions in Limine and Replies to Daubert Motions Deadline(meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1494 | | ORDER by District Judge James O. Browning granting 1423 Motion for Extension of Time to File Replies to the Government's Response to his Motion to Suppress Involuntary Statements as to Carlos Herrera (25) (meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1495 | | ORDER by District Judge James O. Browning granting 1432 Motion for Extension of Time to File Reply as to Edward Troup (3), Billy Garcia (5) (meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1496 | | WITNESS LIST by Christopher Garcia (Sirignano, Amy) (Entered: 11/29/2017) |
| 11/29/2017 | 1497 | | ORDER by District Judge James O. Browning granting 1434 Motion for Extension of Time to File Reply as to Billy Garcia (5) (meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1498 | | ORDER by District Judge James O. Browning granting 1431 Motion for Extension of Time to File Reply as to Edward Troup (3), Billy Garcia (5) (meq) (Entered: 11/29/2017) |
| 11/29/2017 | 1499 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1460 Motion as to Billy Garcia (5), Christopher Chavez (8), Daniel Sanchez (18), Anthony Ray Baca (21), Christopher Garcia (24), Carlos Herrera (25), Rudy Perez (26), Shauna Gutierrez (30) (meq) (Entered: 11/29/2017) |
| 11/30/2017 | 1501 | | Opposed MOTION for Discovery *Regarding Monetary Payments to Inmate Informant Witnesses − No Hearing Requested* by Billy Garcia as to Angel |

| | | | |
|---|---|---|---|
| | | | DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Appendix A)(Castle, James) (Entered: 11/30/2017) |
| 11/30/2017 | 1502 | | Opposed MOTION in Limine *Regarding Plea Agreements and Addenda* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Appendix A)(Castle, James) (Entered: 11/30/2017) |
| 11/30/2017 | 1503 | | Opposed MOTION for Order *for Advance Notice of Witnesses to be Called by the Government – No Hearing Requested* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Castle, James) (Entered: 11/30/2017) |
| 11/30/2017 | 1504 | | Opposed MOTION in Limine *Regarding Alleged Bad Acts* by Edward Troup. (Attachments: # 1 Appendix)(Harbour–Valdez, Cori) (Entered: 11/30/2017) |
| 11/30/2017 | 1505 | | MOTION in Limine *to Prohibit Cooperating and Other Witnesses from Testifying to Fear of Defendants, the SNM or Retaliation, and About any Witness Protection Measures* by Rudy Perez as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Villa, Ryan) (Entered: 11/30/2017) |
| 11/30/2017 | 1509 | | Unopposed MOTION for Order *TO RESOLVE CONFLICT PURSUANT TO THE COURTS ORDER* by Christopher Garcia. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Sirignano, Amy) (Entered: 11/30/2017) |
| 11/30/2017 | 1510 | | [CASE PARTICIPANTS] WITNESS LIST by Anthony Ray Baca (Lowry, Marc) (Entered: 11/30/2017) |
| 11/30/2017 | 1511 | | [APPLICABLE PARTY] ORDER by District Judge James O. Browning granting 1500 Motion to Appoint Counsel, William R. Maynard for Carlos Herrera appointed. (meq) (Entered: 12/01/2017) |
| 12/01/2017 | 1512 | | |

| | | | |
|---|---|---|---|
| | | | MOTION to Exclude *Evidence of Other "Enterprise" Acts* by Rudy Perez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Fox−Young, Justine) (Entered: 12/01/2017) |
| 12/01/2017 | 1513 | | Opposed MOTION in Limine *Regarding Alias Names, Monikers and/or A/K/A* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Harbour−Valdez, Cori) (Entered: 12/01/2017) |
| 12/01/2017 | 1514 | | MOTION in Limine *to Exclude Statement of Cooperating Government Witnesses* by Rudy Perez as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Villa, Ryan) (Entered: 12/01/2017) |
| 12/01/2017 | 1515 | | MOTION in Limine *Defendants Motion in Limine Invoking Federal Rule of Criminal Procedure 615 or The Rule* by Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 12/01/2017) |
| 12/01/2017 | 1516 | | MOTION in Limine *Defendants Motion in Limine Requesting the Maintenance of the Appearance of Innocence* by Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 12/01/2017) |
| 12/01/2017 | 1517 | | Opposed MOTION in Limine *TO EXCLUDE CO−DEFENDANTS STATEMENTS* by Christopher Garcia. (Sirignano, Amy) (Entered: 12/01/2017) |
| 12/01/2017 | 1518 | | Opposed MOTION in Limine *TO PROHIBIT WITNESSES FROM READING PRE−TRIAL AND TRIAL TESTIMONY TRANSCRIPTS* by Christopher Garcia. (Sirignano, Amy) (Entered: 12/01/2017) |
| 12/01/2017 | 1519 | | MOTION in Limine *to Prohibit Government from Making Statements or Arguments that Improperly Suggest that Propensity Character Inferences Can or Should be Made from Extrinsic Act Evidence* by Daniel Sanchez. (Jacks, Amy) (Entered: 12/01/2017) |
| 12/01/2017 | 1520 | | Opposed MOTION in Limine *to Preclude Questioning Government Witnesses Regarding Personal Information* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 12/01/2017) |
| 12/01/2017 | 1521 | | Opposed MOTION in Limine *to Exclude Any Reference to Punishment or Sentencing* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy |

| | | | |
|---|---|---|---|
| | | | Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 12/01/2017) |
| 12/01/2017 | 1522 | | Opposed MOTION in Limine *for a Pretrial Order Permitting the Prosecution to Present Witness Testimony in Installments* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 12/01/2017) |
| 12/01/2017 | 1523 | | Opposed MOTION in Limine *to Allow Transcripts Containing English Translations of Recorded Spanish Conversations as Substantive Evidence* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 12/01/2017) |
| 12/01/2017 | 1524 | | MOTION in Limine *to Preclude Soliciting Testimony About Sensitive Government Recording Devices and Programs* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Beck, Matthew) (Entered: 12/01/2017) |
| 12/01/2017 | 1525 | | NOTICE *United States' Notice of Intent to Use Evidence Pursuant to Rule 609* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 12/01/2017) |
| 12/01/2017 | 1526 | | Opposed MOTION in Limine *FOR UPDATED WITNESS LIST, ASSESSMENT OF ALL GOVERNMENT WITNESSES AND VOIR DIRE OF ALL GOVERNMENT EXPERT WITNESSES* by Christopher Garcia. (Sirignano, Amy) (Entered: 12/01/2017) |
| 12/01/2017 | 1527 | | MOTION in Limine *for Pre−Trial Rulings on Pre−Trial Evidentiary Objections to Exhibits* by Arturo Arnulfo Garcia. (Davidson, Scott) Modified on 1/10/2018, Termed per doc 1617 (meq). (Entered: 12/01/2017) |
| 12/01/2017 | 1528 | | MOTION in Limine *Regarding Alleged Bad Act* by Arturo Arnulfo Garcia. (Attachments: # 1 Attachment A)(Davidson, Scott) (Entered: 12/01/2017) |
| 12/01/2017 | 1529 | | |

| | | [CASE PARTICIPANTS] Opposed MOTION to Suppress *Cooperating Witness Unintelligible Recordings and to Dismiss Indictment Due to Trombetta Violation* by Christopher Garcia as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia. (Adams, Christopher) (Entered: 12/01/2017) |
|---|---|---|
| 12/01/2017 | 1530 | MOTION in Limine *to Prohibit Government from Introducing Testimony of Alleged "Bad Acts"* by Daniel Sanchez. (Attachments: # 1 Appendix A Govt Notice of "Bad Acts")(Jacks, Amy) (Entered: 12/01/2017) |
| 12/01/2017 | 1531 | MOTION in Limine *Regarding Alleged Bad Acts* by Christopher Chavez. (Attachments: # 1 Appendix)(Mondragon, Orlando) (Entered: 12/01/2017) |
| 12/01/2017 | 1532 | Opposed MOTION in Limine *to Exclude Other Bad Acts Evidence* by Allen Patterson. (Lahann, Jeffrey) (Entered: 12/01/2017) |
| 12/03/2017 | 1533 | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting the request to disqualify Michael V. Davis as attorney of record for Defendant Carlos Herrera in the United States' Sealed Motion Regarding Attorney Conflict 1126 . (kw) (Entered: 12/03/2017) |
| 12/04/2017 | 1534 | [CASE PARTICIPANTS] MOTION to determine whether defense counsel, Marc Lowry, has an actual or potential conflict of interest by USA as to Anthony Ray Baca. (Armijo, Maria) (Entered: 12/04/2017) |
| 12/04/2017 | 1535 | [APPLICABLE PARTY] EX PARTE ORDER by District Judge James O. Browning granting 1506 Motion for Writ of Habeas Corpus ad testificandum as to Rudy Perez (26) (meq) (Entered: 12/04/2017) |
| 12/04/2017 | 1536 | [APPLICABLE PARTY] EX PARTE ORDER by District Judge James O. Browning granting 1507 Motion for Writ of Habeas Corpus ad testificandum as to Rudy Perez (26) (meq) (Entered: 12/04/2017) |
| 12/04/2017 | 1537 | Opposed MOTION in Limine *TO PROHIBIT GOVERNMENT ATTORNEYS OR WITNESSES FROM REFERRING TO ALLEGED VICTIMS AS VICTIMS* by Anthony Ray Baca. (Duncan, Theresa) (Entered: 12/04/2017) |
| 12/04/2017 | 1538 | [CASE PARTICIPANTS] MOTION in Limine *TO PROHIBIT GOVERNMENT FROM INTRODUCING EVIDENCE OF ALLEGED BAD ACTS* by Anthony Ray Baca. (Attachments: # 1 Exhibit 404(B) Letter)(Duncan, Theresa) (Entered: 12/04/2017) |
| 12/04/2017 | 1539 | MOTION in Limine *TO PROHIBIT GOVERNMENT ATTORNEYS FROM USING RULE 405, 608 OR 609 CHARACTER EVIDENCE WITHOUT JUDICIAL APPROVAL* by Anthony Ray Baca. (Lowry, Marc) (Entered: 12/04/2017) |
| 12/04/2017 | 1540 | MOTION in Limine *TO PROHIBIT THE GOVERNMENT FROM QUESTIONING JERRY ARMENTA ABOUT DEFENDANT ANTHONY RAY BACAS INVOLVEMENT COUNTS 6 & 7* by Anthony Ray Baca. (Lowry, Marc) (Entered: 12/04/2017) |
| 12/04/2017 | 1541 | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1369 Motion for Order to Utilize Rental Car for Travel Purposes as to Christopher Garcia (24) (meq) (Entered: 12/05/2017) |
| 12/04/2017 | 1542 | |

| | | | |
|---|---|---|---|
| | | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1476 Motion for Order for Free Process as to Billy Garcia (5) (meq) (Entered: 12/05/2017) |
| 12/04/2017 | 1543 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1447 Motion to Appoint Counsel, Lisa Torraco appointed as to Andrew Gallegos (27) (meq) (Entered: 12/05/2017) |
| 12/05/2017 | 1544 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, removing Docs. 1283 , 1284 , 1325 , 1328 & 1330 from the agenda of motions to be heard 12/7–8/2017 and adding Docs. 1294 , 1295 , 1488 & 1534 . (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/05/2017) |
| 12/06/2017 | 1545 | | TRANSCRIPT of Motions Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 11/27/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 5053482283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 12/13/2017. Redaction Request due 12/27/2017. Redacted Transcript Deadline set for 1/8/2018. Release of Transcript Restriction set for 3/6/2018. (jab) (Entered: 12/06/2017) |
| 12/06/2017 | 1546 | | TRANSCRIPT of Motions Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 11/28/17, before District Judge James O. Browning. Court |

| | | | |
|---|---|---|---|
| | | | Reporter/Transcriber Jennifer Bean, Telephone number 5053482283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 12/13/2017. Redaction Request due 12/27/2017. Redacted Transcript Deadline set for 1/8/2018. Release of Transcript Restriction set for 3/6/2018. (jab) (Entered: 12/06/2017) |
| 12/06/2017 | 1547 | | TRANSCRIPT of Motions Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 11/29/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 5058432283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 12/13/2017. Redaction Request due 12/27/2017. Redacted Transcript Deadline set for 1/8/2018. Release of Transcript Restriction set for 3/6/2018. (jab) (Entered: 12/06/2017) |
| 12/06/2017 | 1548 | | RESPONSE by USA as to Daniel Sanchez re 1459 Notice (Other) *United States' Response to Defendant Daniel Sanchez's Notice of Letter to Government Regarding Questions about Electronic Surveillance* (Beck, |

| | | | |
|---|---|---|---|
| | | | Matthew) (Entered: 12/06/2017) |
| 12/06/2017 | 1549 | | MOTION in Limine *to Prohibit Bad Acts* by Carlos Herrera. (Attachments: # 1 Exhibit A)(Bhalla, Carey) (Entered: 12/06/2017) |
| 12/06/2017 | 1550 | | NOTICE *of Filing Expert Report* by Edward Troup re 1252 Notice (Other) (Harbour–Valdez, Cori) (Entered: 12/06/2017) |
| 12/06/2017 | 1551 | | Opposed MOTION for Reconsideration *re: Court's Order for Limited Production of Sensitive Government Recording Devices or Programs* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit A (Declaration), # 2 Exhibit B (CV), # 3 Exhibit C (Testimony), # 4 Exhibit D (Testimony))(Beck, Matthew) (Entered: 12/06/2017) |
| 12/06/2017 | 1552 | | Unopposed MOTION for Leave to File Excess Pages – *Regarding United States' Motion to Reconsider (Doc. 1551)* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Beck, Matthew) (Entered: 12/06/2017) |
| 12/07/2017 | 1553 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning denying the Motion to Dismiss Indictment as It Relates to Shauna Gutierrez 1155 (meq) (Entered: 12/07/2017) |
| 12/08/2017 | 1554 | | NOTICE of motion hearing regarding Doc. 1551 scheduled for 12/11/2017 at 01:00 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/08/2017) |
| 12/08/2017 | 1555 | | Opposed MOTION in Limine *TO PROHIBIT THE GOVERNMENT FROM INTRODUCING EVIDENCE OF ALLEGED BAD ACTS* by Christopher Garcia. (Attachments: # 1 Exhibit A)(Sirignano, Amy) (Entered: 12/08/2017) |
| 12/08/2017 | 1556 | | MOTION to Supplement *Defendant Billy Garcia's Notice Pursuant to Fed.R. Crim. P. 16(b) [Doc. 1217]* by Billy Garcia. (Castle, James) (Entered: 12/08/2017) |
| 12/08/2017 | 1557 | | APPENDIX/SUPPLEMENT re 1556 MOTION to Supplement *Defendant Billy Garcia's Notice Pursuant to Fed.R. Crim. P. 16(b) [Doc. 1217] Appendix A* (Castle, James) (Entered: 12/08/2017) |
| 12/09/2017 | 1558 | | MOTION in Limine *to Exclude Prior Bad Acts* by Rudy Perez. |

| | | | |
|---|---|---|---|
| | | | (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 12/09/2017) |
| 12/09/2017 | 1559 | | NOTICE *of Intent to Call Expert Witness Dr. Michael Spence (Amended)* by Rudy Perez re 1051 Notice (Other) (Villa, Ryan) (Entered: 12/09/2017) |
| 12/10/2017 | 1560 | | NOTICE *of Supplemented Expert Disclosure* by Rudy Perez re 1052 Notice (Other) (Fox–Young, Justine) (Entered: 12/10/2017) |
| 12/11/2017 | 1561 | | NOTICE *of Supplemented Expert Disclosure* by Rudy Perez re 1048 Notice (Other) (Fox–Young, Justine) (Entered: 12/11/2017) |
| 12/11/2017 | 1562 | | NOTICE *Amended Expert Testimony* by Carlos Herrera as to Carlos Herrera, Rudy Perez re 1353 Notice (Other) (Bhalla, Carey) (Entered: 12/11/2017) |
| 12/11/2017 | 1563 | | NOTICE *AMENDED OF INTENT TO OFFER EXPERT WITNESS TESTIMONY* by Christopher Garcia re 1257 Notice (Other) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Sirignano, Amy) (Entered: 12/11/2017) |
| 12/11/2017 | 1564 | | NOTICE *of Supplemented Expert Disclosure* by Rudy Perez re 1354 Notice (Other) (Fox–Young, Justine) (Entered: 12/11/2017) |
| 12/11/2017 | 2492 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motions Hearing held on 12/11/2017 (Court Reporter: J. Bean) (Attachments: # 1 Exhibit) (vv) (Entered: 01/16/2019) |
| 12/14/2017 | 1567 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1501 Opposed MOTION for Discovery *Regarding Monetary Payments to Inmate Informant Witnesses – No Hearing Requested* by USA as to Billy Garcia. (Armijo, Maria) (Entered: 12/14/2017) |
| 12/14/2017 | 1568 | | RESPONSE in Opposition by USA as to Billy Garcia re 1502 Opposed MOTION in Limine *Regarding Plea Agreements and Addenda* (Armijo, Maria) (Entered: 12/14/2017) |
| 12/14/2017 | 1569 | | RESPONSE in Opposition by USA as to Billy Garcia, Christopher Garcia re 1526 Opposed MOTION in Limine *FOR UPDATED WITNESS LIST, ASSESSMENT OF ALL GOVERNMENT WITNESSES AND VOIR DIRE OF ALL GOVERNMENT EXPERT WITNESSES*, 1503 Opposed MOTION for Order *for Advance Notice of Witnesses to be Called by the Government – No Hearing Requested* (Armijo, Maria) (Entered: 12/14/2017) |
| 12/14/2017 | 1570 | | RESPONSE in Opposition by USA as to Rudy Perez re 1505 MOTION in Limine *to Prohibit Cooperating and Other Witnesses from Testifying to Fear of Defendants, the SNM or Retaliation, and About any Witness Protection Measures* (Armijo, Maria) (Entered: 12/14/2017) |
| 12/15/2017 | 1571 | | RESPONSE to Motion by USA as to Joe Lawrence Gallegos, Christopher Garcia re 1515 MOTION in Limine *Defendants Motion in Limine Invoking Federal Rule of Criminal Procedure 615 or The Rule*, 1518 Opposed MOTION in Limine *TO PROHIBIT WITNESSES FROM READING PRE–TRIAL AND TRIAL TESTIMONY TRANSCRIPTS* (Armijo, Maria) (Entered: 12/15/2017) |
| 12/15/2017 | 1572 | | RESPONSE to Motion by USA as to Joe Lawrence Gallegos re 1516 MOTION in Limine *Defendants Motion in Limine Requesting the* |

| | | | |
|---|---|---|---|
| | | | *Maintenance of the Appearance of Innocence* (Armijo, Maria) (Entered: 12/15/2017) |
| 12/15/2017 | 1573 | | RESPONSE in Opposition by USA as to Anthony Ray Baca re 1537 Opposed MOTION in Limine *TO PROHIBIT GOVERNMENT ATTORNEYS OR WITNESSES FROM REFERRING TO ALLEGED VICTIMS AS VICTIMS* (Armijo, Maria) (Entered: 12/15/2017) |
| 12/15/2017 | 1574 | | RESPONSE to Motion by USA as to Edward Troup re 1513 Opposed MOTION in Limine *Regarding Alias Names, Monikers and/or A/K/A* (Armijo, Maria) (Entered: 12/15/2017) |
| 12/15/2017 | 1575 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1520 Opposed MOTION in Limine *to Preclude Questioning Government Witnesses Regarding Personal Information*, 1523 Opposed MOTION in Limine *to Allow Transcripts Containing English Translations of Recorded Spanish Conversations as Substantive Evidence*, 1525 Notice (Other),, 1522 Opposed MOTION in Limine *for a Pretrial Order Permitting the Prosecution to Present Witness Testimony in Installments*, 1524 MOTION in Limine *to Preclude Soliciting Testimony About Sensitive Government Recording Devices and Programs*, 1521 Opposed MOTION in Limine *to Exclude Any Reference to Punishment or Sentencing* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Harbour–Valdez, Cori) (Entered: 12/15/2017) |
| 12/15/2017 | 1576 | | TRANSCRIPT of Motion to Suppress Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/07/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 12/22/2017. Redaction Request due 1/5/2018. Redacted Transcript Deadline set for 1/16/2018. Release of Transcript Restriction set for 3/15/2018. (jab) (Entered: 12/15/2017) |
| 12/15/2017 | 1577 | | TRANSCRIPT of Motion to Suppress Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/08/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 12/22/2017. Redaction Request due 1/5/2018. Redacted Transcript Deadline set for 1/16/2018. Release of Transcript Restriction set for 3/15/2018. (jab) (Entered: 12/15/2017) |
| 12/15/2017 | 1578 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1527 MOTION in Limine *for Pre–Trial Rulings on Pre–Trial Evidentiary Objections to Exhibits* by USA as to Arturo Arnulfo Garcia. (Armijo, Maria) (Entered: 12/15/2017) |
| 12/15/2017 | 1579 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1529 Opposed MOTION to Suppress *Cooperating Witness Unintelligible Recordings and to Dismiss Indictment Due to Trombetta Violation* by USA as to Christopher Garcia. (Armijo, Maria) (Entered: 12/15/2017) |
| 12/15/2017 | 1580 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 1540 MOTION in Limine *TO PROHIBIT THE GOVERNMENT FROM QUESTIONING JERRY ARMENTA ABOUT DEFENDANT ANTHONY RAY BACAS INVOLVEMENT COUNTS 6 & 7*, 1517 Opposed MOTION in Limine *TO EXCLUDE CO–DEFENDANTS STATEMENTS*, 1514 MOTION in Limine *to Exclude Statement of Cooperating Government Witnesses* by USA as to Anthony Ray Baca, Christopher Garcia, Rudy Perez. (Armijo, Maria) (Entered: 12/15/2017) |

| 12/15/2017 | 1581 | | RESPONSE in Opposition by USA as to Edward Troup, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1558 MOTION in Limine *to Exclude Prior Bad Acts*, 1549 MOTION in Limine *to Prohibit Bad Acts*, 1519 MOTION in Limine *to Prohibit Government from Making Statements or Arguments that Improperly Suggest that Propensity Character Inferences Can or Should be Made from Extrinsic Act Evidence*, 1531 MOTION in Limine *Regarding Alleged Bad Acts*, 1538 MOTION in Limine *TO PROHIBIT GOVERNMENT FROM INTRODUCING EVIDENCE OF ALLEGED BAD ACTS*, 1532 Opposed MOTION in Limine *to Exclude Other Bad Acts Evidence*, 1512 MOTION to Exclude *Evidence of Other "Enterprise" Acts*, 1555 Opposed MOTION in Limine *TO PROHIBIT THE GOVERNMENT FROM INTRODUCING EVIDENCE OF ALLEGED BAD ACTS*, 1539 MOTION in Limine *TO PROHIBIT GOVERNMENT ATTORNEYS FROM USING RULE 405, 608 OR 609 CHARACTER EVIDENCE WITHOUT JUDICIAL APPROVAL*, 1504 Opposed MOTION in Limine *Regarding Alleged Bad Acts*, 1530 MOTION in Limine *to Prohibit Government from Introducing Testimony of Alleged "Bad Acts"*, 1528 MOTION in Limine *Regarding Alleged Bad Act* (Armijo, Maria) (Entered: 12/15/2017) |
| 12/15/2017 | 1582 | | REPLY TO RESPONSE to Motion by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1502 Opposed MOTION in Limine *Regarding Plea Agreements and Addenda* (Attachments: # 1 Appendix A)(Castle, James) (Entered: 12/15/2017) |
| 12/15/2017 | 1583 | | RESPONSE to Motion by Carlos Herrera re 1523 Opposed MOTION in Limine *to Allow Transcripts Containing English Translations of Recorded Spanish Conversations as Substantive Evidence* (Bhalla, Carey) (Entered: 12/15/2017) |
| 12/17/2017 | 1584 | | NOTICE *OF DECLARATION OF EXPERT JANINE ARVIZU PER COURTS RULING ON NOVEMBER 9, 2017* by Christopher Garcia (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Sirignano, Amy) (Entered: 12/17/2017) |
| 12/18/2017 | 1585 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning, denying Defendant Daniel Sanchez's Motion to Sever the Trial of Counts 6–7 from the Trial of Counts 8–12 (meq) (Entered: 12/18/2017) |
| 12/19/2017 | 1586 | | RESPONSE to Motion by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy |

| | | | |
|---|---|---|---|
| | | | Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1520 Opposed MOTION in Limine *to Preclude Questioning Government Witnesses Regarding Personal Information* (Benjamin, Brock) (Entered: 12/19/2017) |
| 12/19/2017 | 1587 | | NOTICE *OF DECLARATION OF EXPERT DAN E. KRANE PER COURTS RULING ON NOVEMBER 9, 2017* by Christopher Garcia (Attachments: # 1 Exhibit A)(Sirignano, Amy) (Entered: 12/19/2017) |
| 12/19/2017 | 1588 | | MINUTE ORDER pursuant to the direction of District Judge James O. Browning, extending the motion hearing scheduled for 12/18–19/2017 to proceed through 12/20/2017; resuming argument as to Docs. 1294 & 1295 ; and, adding the following motions to the agenda: 1501 , 1502 , 1503 , 1504 , 1505 , 1512 , 1513 , 1514 , 1515 , 1516 , 1517 , 1518 , 1519 , 1520 , 1521 , 1522 , 1523 , 1524 , 1525 , 1528 , 1530 , 1531 , 1532 , 1537 , 1538 , 1539 , 1540 , 1549 and 1555 .(kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/19/2017) |
| 12/20/2017 | 1589 | | NOTICE resuming Pretrial Conference and of motions hearing scheduled for 1/8–12/2018 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. The following motions will be heard: Docs. 1328 , 1330 , 1527 & 1529 . The Court will also take up any outstanding attorney conflict issues and conduct the necessary colloquys to facilitate waiver of those issues. Further, if after the completion of the 12/20/2017 hearing there are other outstanding motions/issues pertaining to the Defendants scheduled to commence trial on 1/29/2018 that remain unheard and/or pending the presentation of evidence and/or oral argument, counsel shall notify the Court's Courtroom Deputy of those motions/issues in written format no later than the close of business on 12/31/2017; this shall include the estimated amount of time counsel believe will be required to complete the presentation of evidence and/or argument on the matters. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 12/20/2017) |
| 12/20/2017 | 1590 | | Joint MOTION to Amend/Correct *Fourth Scheduling Order [Doc. 1205]* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez. (Harbour–Valdez, Cori) (Entered: 12/20/2017) |
| 12/20/2017 | 1591 | | RESPONSE by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1563 Notice (Other), 1562 Notice (Other), 1550 Notice (Other), 1564 Notice (Other), 1559 Notice (Other), 1561 Notice (Other), 1560 Notice (Other) (Armijo, |

| | | | |
|---|---|---|---|
| | | | Maria) (Entered: 12/20/2017) |
| 12/21/2017 | 1592 | | TRANSCRIPT of Motion to Suppress Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/11/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 12/28/2017. Redaction Request due 1/11/2018. Redacted Transcript Deadline set for 1/22/2018. Release of Transcript Restriction set for 3/21/2018. (jab) (Entered: 12/21/2017) |
| 12/21/2017 | 1593 | | [CASE PARTICIPANTS] RESPONSE in Opposition by USA as to Christopher Garcia re 1529 Opposed MOTION to Suppress *Cooperating Witness Unintelligible Recordings and to Dismiss Indictment Due to Trombetta Violation* (Attachments: # 1 Exhibit 1: Affidavit of FBI SA Bryan Acee)(Beck, Matthew) (Entered: 12/21/2017) |
| 12/21/2017 | 1594 | | RESPONSE to Motion by USA as to Anthony Ray Baca, Christopher Garcia, Rudy Perez re 1540 MOTION in Limine *TO PROHIBIT THE GOVERNMENT FROM QUESTIONING JERRY ARMENTA ABOUT DEFENDANT ANTHONY RAY BACAS INVOLVEMENT COUNTS 6 & 7,* 1517 Opposed MOTION in Limine *TO EXCLUDE CO–DEFENDANTS STATEMENTS,* 1514 MOTION in Limine *to Exclude Statement of Cooperating Government Witnesses* (Castellano, Randy) (Entered: 12/21/2017) |
| 12/27/2017 | 1597 | | TRANSCRIPT of Motion to Suppress Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert |

| | | | |
|---|---|---|---|
| | | | Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/12/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 1/3/2018. Redaction Request due 1/17/2018. Redacted Transcript Deadline set for 1/29/2018. Release of Transcript Restriction set for 3/27/2018. (jab) (Entered: 12/27/2017) |
| 12/28/2017 | 1598 | | TRANSCRIPT of Motion to Suppress Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/13/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 1/4/2018. Redaction Request due 1/18/2018. Redacted Transcript Deadline set for 1/29/2018. Release of |

| | | | |
|---|---|---|---|
| | | | Transcript Restriction set for 3/28/2018. (jab) (Entered: 12/28/2017) |
| 01/02/2018 | 1600 | | TRANSCRIPT of Combined Motions to Suppress Proceedings and Daubert Hearings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/18/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 1/9/2018. Redaction Request due 1/23/2018. Redacted Transcript Deadline set for 2/2/2018. Release of Transcript Restriction set for 4/2/2018. (jab) (Entered: 01/02/2018) |
| 01/03/2018 | 1601 | | MOTION for Leave to File *Motion in Limine Out of Time* by Joe Lawrence Gallegos. (Sindel, Richard) (Entered: 01/03/2018) |
| 01/03/2018 | 1602 | | MOTION in Limine by Joe Lawrence Gallegos. (Attachments: # 1 Appendix A)(Sindel, Richard) (Entered: 01/03/2018) |
| 01/03/2018 | 1603 | | MOTION to Amend/Correct 1601 MOTION for Leave to File *Motion in Limine Out of Time* filed by Joe Lawrence Gallegos by Joe Lawrence Gallegos. (Sindel, Richard) (Entered: 01/03/2018) |
| 01/03/2018 | 1604 | | [CASE PARTICIPANTS] NOTICE *SEALED OF RECENT GOVERNMENT PRODUCTIONS* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Shauna Gutierrez (Sirignano, Amy) (Entered: 01/03/2018) |
| 01/04/2018 | 1605 | | [CASE PARTICIPANTS] NOTICE *SEALED AMENDED OF RECENT GOVERNMENT PRODUCTIONS* by Christopher Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Shauna Gutierrez re 1604 Notice (Other) (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Sirignano, Amy) (Entered: 01/04/2018) |

| 01/04/2018 | 1606 | | [CASE PARTICIPANTS] Emergency MOTION for Writ of Habeas Corpus ad testificandum *Sealed* by Christopher Garcia. (Attachments: # 1 Exhibit A)(Sirignano, Amy) Termed on 1/17/2018 per doc. 1652 (meq). (Entered: 01/04/2018) |
| 01/04/2018 | 1607 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, and pursuant to the request of counsel, adding the following to be heard and/or resume argument at the motions hearing scheduled for 1/8/2018 through 1/12/2018: Docs. 1325 , 1517 , 1525 & 1539 . (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/04/2018) |
| 01/04/2018 | 1608 | | TRANSCRIPT of Combined Motions to Suppress Proceedings and Daubert Hearings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/19/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 1/11/2018. Redaction Request due 1/25/2018. Redacted Transcript Deadline set for 2/5/2018. Release of Transcript Restriction set for 4/4/2018. (jab) (Entered: 01/04/2018) |
| 01/05/2018 | 1610 | | TRANSCRIPT of Motions to Suppress Proceedings and James Hearing as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/20/17, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office |

| | | | |
|---|---|---|---|
| | | | public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 1/12/2018. Redaction Request due 1/26/2018. Redacted Transcript Deadline set for 2/5/2018. Release of Transcript Restriction set for 4/5/2018. (jab) (Entered: 01/05/2018) |
| 01/05/2018 | 1611 | | NOTICE *OF WAIVER OF IAD ANTISHUTTLING RIGHTS* by Roy Paul Martinez (Milner, Marcia) (Entered: 01/05/2018) |
| 01/07/2018 | 1612 | | [CASE PARTICIPANTS] REPLY by Christopher Garcia as to Edward Troup, Christopher Garcia re 1400 Response to Motion, *TO DEFENDANT CHRIS GARCIAS SEALED OPPOSED MOTION TO DISMISS AND REQUEST FOR EVIDENTIARY HEARING (DOC. 1330)* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Sirignano, Amy) (Entered: 01/07/2018) |
| 01/07/2018 | 1613 | | [CASE PARTICIPANTS] RESPONSE in Opposition by Anthony Ray Baca re 1534 MOTION to determine whether defense counsel, Marc Lowry, has an actual or potential conflict of interest (Attachments: # 1 Exhibit E, # 2 Exhibit F, # 3 Exhibit G)(Lowry, Marc) (Entered: 01/07/2018) |
| 01/08/2018 | 1614 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, adding Docs. 1595 , 1596 and 1606 to the agenda of motions to be heard at the hearing scheduled to commence 01/08/2017. (kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/08/2018) |
| 01/08/2018 | 1615 | | ORDER by District Judge James O. Browning granting 1442 Motion for Downward Adjustment as to Santos Gonzalez (28) (meq) (Entered: 01/08/2018) |
| 01/08/2018 | 1616 | | MOTION in Limine *to Preclude the Admission of Un−confronted, Out of Court Statements Proffered by the Government at the James Hearing* by Daniel Sanchez. (Jacks, Amy) (Entered: 01/08/2018) |
| 01/09/2018 | 1617 | | NOTICE *of Withdrawal* by Arturo Arnulfo Garcia re 1527 MOTION in Limine *for Pre−Trial Rulings on Pre−Trial Evidentiary Objections to Exhibits* (Davidson, Scott) (Entered: 01/09/2018) |
| 01/09/2018 | 1749 | | WAIVER of Potential Conflict by Daniel Sanchez (meq) (Entered: 02/06/2018) |

| 01/09/2018 | 1750 | | WAIVER by Anthony Ray Baca, of Potential Conflict (meq) (Entered: 02/06/2018) |
|---|---|---|---|
| 01/10/2018 | 1618 | | TRIAL BRIEF by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Castle, James) (Entered: 01/10/2018) |
| 01/10/2018 | 1619 | | MINUTE ORDER, pursuant to the direction of by District Judge James O. Browning, requesting that Plaintiff United States of America respond to the following questions: (i) Does the United States stand by its argument that the Court should try the Counts 6–7 Defendants alongside the Counts 8–12 Defendants –– and will the United States defend that argument on appeal and not concede error –– even though evidence admitted against the Counts 8–12 Defendants under rule 801(d)(2)(E) is not admissible for its truth –– under that rule –– against the Counts 6–7 Defendants and vice versa?; (ii) Does the United States stand by its argument that the Court should proceed in a joint trial –– and will the United States defend that argument on appeal and not concede error –– given the number of statements that will be admissible against only one defendant under rule 801(d)(2)(A), requiring many limiting instructions?; (iii) Will the United States defend on appeal –– and not concede error –– the Courts ruling that particular out–of–court statements elicited by confidential human sources, such as Defendant Rudy Perez' statements to Billy Cordova and Defendant Anthony Baca's statements to Eric Duran, are nontestimonial?; (iv) Will the United States defend on appeal –– and not concede error –– the Court's ruling that Bruton v. United States, 391 U.S. 123 (1968) permits a nontestimonial confessions introduction, with a limiting instruction, if the confession implicates multiple defendants and is only admissible against one of them? The Court directs Assistant United States Attorney James Braun, or the current head of the Appellate Division of the United States Attorney's Office for the District of New Mexico, to respond on the United States' behalf by the end of business on January 17, 2018, so it can know the United States' appellate position. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/10/2018) |
| 01/10/2018 | 1751 | | WAIVER of Potential Conflict by Arturo Arnulfo Garcia (meq) (Entered: 02/06/2018) |
| 01/11/2018 | 1620 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1599 Motion for Order of Free Process as to Christopher Garcia (24) (meq) (Entered: 01/11/2018) |
| 01/11/2018 | 1621 | | ORDER by District Judge James O. Browning granting 1552 Motion for Leave to File Excess Pages (meq) (Entered: 01/11/2018) |
| 01/11/2018 | 1622 | | ORDER by District Judge James O. Browning granting 1580 Motion for Extension of Time to File Response (meq) (Entered: 01/11/2018) |

| 01/11/2018 | 1623 | | ORDER by District Judge James O. Browning granting 1567 Motion for Extension of Time to File Response as to Billy Garcia (5) (meq) (Entered: 01/11/2018) |
|---|---|---|---|
| 01/11/2018 | 1624 | | ORDER by District Judge James O. Browning granting 1578 Motion for Extension of Time to File Responses as to Arturo Arnulfo Garcia (10) (meq) (Entered: 01/11/2018) |
| 01/11/2018 | 1625 | | ORDER by District Judge James O. Browning granting 1579 Motion for Extension of Time to File Response as to Christopher Garcia (24) (meq) (Entered: 01/11/2018) |
| 01/11/2018 | 1626 | | ORDER by District Judge James O. Browning granting 1590 Motion to Amend Fourth Scheduling Order (meq) (Entered: 01/11/2018) |
| 01/11/2018 | 1627 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1566 Motion for Service of Process as to Joe Lawrence Gallegos (meq) (Entered: 01/11/2018) |
| 01/11/2018 | 1628 | | ORDER by District Judge James O. Browning granting 1575 Motion for Extension of Time to File Response to Motion in Limine (meq) (Entered: 01/11/2018) |
| 01/11/2018 | 1629 | | NOTICE *of Joint Proposed Statement of the Case* by USA as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Castellano, Randy) (Entered: 01/11/2018) |
| 01/12/2018 | 1633 | | [CASE PARTICIPANTS] WITNESS LIST by USA as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Armijo, Maria) (Entered: 01/12/2018) |
| 01/12/2018 | 1634 | | Proposed Voir Dire by USA as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Armijo, Maria) (Entered: 01/12/2018) |
| 01/12/2018 | 1635 | | Proposed Jury Instructions by USA as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Castellano, Randy) (Entered: 01/12/2018) |
| 01/12/2018 | 1636 | | EXHIBIT LIST by Christopher Garcia as to Anthony Ray Baca, Christopher Garcia (Sirignano, Amy) (Entered: 01/12/2018) |
| 01/12/2018 | 1637 | | EXHIBIT LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 01/12/2018) |
| 01/12/2018 | 1638 | | EXHIBIT LIST by Daniel Sanchez as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (Jacks, Amy) (Entered: 01/12/2018) |
| 01/12/2018 | 1639 | | Proposed Voir Dire by Carlos Herrera (Bhalla, Carey) (Entered: 01/12/2018) |

| 01/12/2018 | 1640 | | WITNESS LIST by Rudy Perez as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Fox–Young, Justine) (Entered: 01/12/2018) |
| 01/12/2018 | 1641 | | Proposed Jury Instructions by Christopher Garcia as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Sirignano, Amy) (Entered: 01/12/2018) |
| 01/14/2018 | 1642 | | JUDGMENT by District Judge James O. Browning as to Defendant Santos Gonzalez. (kw) (Entered: 01/14/2018) |
| 01/15/2018 | 1643 | | [CASE PARTICIPANTS] NOTICE *Sealed Joint Notice of Stipulated Hardship and Cause Challenges* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Attachments: # 1 Exhibit List of Stipulated Excusals)(Duncan, Theresa) (Entered: 01/15/2018) |
| 01/15/2018 | 1644 | | [CASE PARTICIPANTS] NOTICE *of Juror Excusal for Cause or Hardship* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Castellano, Randy) (Entered: 01/15/2018) |
| 01/15/2018 | 1645 | | [CASE PARTICIPANTS] NOTICE *of Non–Stipulated Hardship and Cause Challenges* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Duncan, Theresa) (Entered: 01/15/2018) |
| 01/16/2018 | 1646 | | NOTICE *of Defendants' Objection to Shackling During Trial* by Rudy Perez as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Villa, Ryan) (Entered: 01/16/2018) |
| 01/16/2018 | 1647 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 1632 Motion for Order as to Mario Rodriguez (15), as described herein. (kls) (Entered: 01/16/2018) |
| 01/16/2018 | 1648 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 1630 Motion for Order as to Timothy Martinez (16), as described herein. (kls) (Entered: 01/16/2018) |
| 01/16/2018 | 1649 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 1631 Motion for Order as to Roy Paul Martinez (23), as described herein. (kls) (Entered: 01/16/2018) |
| 01/16/2018 | 1651 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 1650 Motion for Order as to Robert Martinez (22), as described herein. (kls) (Entered: 01/16/2018) |
| 01/17/2018 | 1652 | | NOTICE *OF WITHDRAWAL OF EMERGENCY SEALED MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM (No. 1606)* by Christopher Garcia re 1606 Emergency MOTION for Writ of Habeas Corpus |

| | | | |
|---|---|---|---|
| | | | ad testificandum *Sealed* (Sirignano, Amy) (Entered: 01/17/2018) |
| 01/17/2018 | <u>1653</u> | | NOTICE *OF JOINDER TO TRIAL ONE DEFENDANTS JOINT PROPOSED VOIR DIRE (Doc. 1639)* by Christopher Garcia (Sirignano, Amy) (Entered: 01/17/2018) |
| 01/17/2018 | <u>1654</u> | | RESPONSE by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 01/17/2018) |
| 01/18/2018 | <u>1655</u> | | NOTICE *to Correct Testimony* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # <u>1</u> FBI FD 1057 re Wire intercepts)(Armijo, Maria) (Entered: 01/18/2018) |
| 01/18/2018 | <u>1656</u> | | NOTICE *OF GANG EXPERT TESTIMONY (SUPPLEMENTAL)* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re <u>1299</u> MOTION in Limine (Attachments: # <u>1</u> NMCD Memorandum Regarding Prison Gang Information)(Armijo, Maria) (Entered: 01/18/2018) |
| 01/18/2018 | <u>1657</u> | | Opposed MOTION to Strike *SURPLUSAGE FROM THE SECOND SUPERSEDING INDICTMENT* by Christopher Garcia as to Christopher Garcia, Carlos Herrera. (Sirignano, Amy) (Entered: 01/18/2018) |
| 01/19/2018 | <u>1658</u> | | NOTICE *Defendants' Joint Objections to the United States' Proposed Voir Dire* by Rudy Perez as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re <u>1634</u> Proposed Voir Dire (Villa, Ryan) (Entered: 01/19/2018) |
| 01/19/2018 | <u>1659</u> | | [CASE PARTICIPANTS] NOTICE *of Supplemental Stipulated Juror Excusals* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Duncan, Theresa) (Entered: 01/19/2018) |
| 01/19/2018 | <u>1660</u> | | WITNESS LIST by Rudy Perez as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Fox−Young, Justine) |

| | | | |
|---|---|---|---|
| | | | (Entered: 01/19/2018) |
| 01/19/2018 | 1661 | | NOTICE *Objections to United States' Exhibit List (Dkt. 1637)* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1637 Exhibit List,, (Duncan, Theresa) (Entered: 01/19/2018) |
| 01/19/2018 | 1662 | | NOTICE *of Joint Objections to the United States' Sealed Supplemental Witness List* by Rudy Perez as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez re 1633 Witness List (Villa, Ryan) (Entered: 01/19/2018) |
| 01/19/2018 | 1663 | | NOTICE *Of Defendants Joint Objections to the United States' Proposed Jury Instructions* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Lowry, Marc) (Entered: 01/19/2018) |
| 01/19/2018 | 1678 | | [CASE PARTICIPANTS] EMAIL from USMS (meq) (Entered: 01/23/2018) |
| 01/21/2018 | 1664 | | Joint MOTION for Order *to Sever Counts 6 and 7 (Renewed)* by Rudy Perez as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Villa, Ryan) (Entered: 01/21/2018) |
| 01/21/2018 | 1665 | | MEMORANDUM in Support by Daniel Sanchez re 1616 MOTION in Limine *to Preclude the Admission of Un−confronted, Out of Court Statements Proffered by the Government at the James Hearing* (Jacks, Amy) (Entered: 01/21/2018) |
| 01/22/2018 | 1666 | | [CASE PARTICIPANTS] NOTICE *of Additional Non−Stipulated Hardship and Cause Challenges* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Duncan, Theresa) (Entered: 01/22/2018) |
| 01/22/2018 | 1667 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Ruben Hernandez (Attachments: # 1 Attachment A)<br><br>Related Documents: 880 Plea Agreement<br>(Work, Rhiannon) (Entered: 01/22/2018) |
| 01/22/2018 | 1669 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting in part and denying in part the United States' Sealed Notice of Excusal for Cause or Hardship 1644 and the Defendants' Joint Notice of Non−Stipulated Hardship and Cause Challenges 1645 (meq) (Entered: 01/22/2018) |
| 01/22/2018 | 1670 | | Opposed MOTION for Order *for the Imposition of a January 31, 2018 Deadline for the Government to Produce a Summary of Statements it Intends to Offer Against Trial Two Defendants* by Billy Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez. (Castle, James) (Entered: 01/22/2018) |
| 01/22/2018 | 1671 | | MOTION to Exclude *Testimony from Government's Gang Experts as Outlined in the United States' Supplemental Notice of Gang Expert Witnesses' Testimony [Doc. 1656]* by Billy Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, |

| | | | |
|---|---|---|---|
| | | | Arturo Arnulfo Garcia, Mauricio Varela, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Shauna Gutierrez. (Castle, James) (Entered: 01/22/2018) |
| 01/22/2018 | 1672 | | TRANSCRIPT of Motion to Suppress Proceedings and James Hearing as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 01/08/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 1/29/2018. Redaction Request due 2/12/2018. Redacted Transcript Deadline set for 2/22/2018. Release of Transcript Restriction set for 4/23/2018. (jab) (Entered: 01/22/2018) |
| 01/22/2018 | 1673 | | [CASE PARTICIPANTS] MOTION to Compel *(SEALED) Brady and Giglio Material* by Rudy Perez as to Edward Troup, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Fox–Young, Justine) (Entered: 01/22/2018) |
| 01/22/2018 | 1674 | | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying in part the requests in the Defendant Christopher Garcia's Sealed Motion to Suppress Statements by Defendant Obtained in Violation of Miranda v. Arizona; Motion to Suppress Involuntary Statements by Defendant; Request for Hearing Pursuant to 18 U.S.C. § 3501 1457 and 1486 (meq) (Entered: 01/22/2018) |
| 01/22/2018 | 1675 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting in part and denying in part the Defendants' Joint Notice of Additional Non–Stipulated Hardship and Cause Challenges 1666 (meq) (Entered: 01/22/2018) |

| 01/22/2018 | 1676 | | [CASE PARTICIPANTS] WITNESS LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 01/22/2018) |
| --- | --- | --- | --- |
| 01/23/2018 | 1679 | | COURT'S FIRST PROPOSED PRELIMINARY JURY INSTRUCTIONS by District Judge James O. Browning. (kw) (Entered: 01/23/2018) |
| 01/23/2018 | 1680 | | [APPLICABLE PARTY] SEALED EX PARTE TRIAL BUDGET ORDER as to Daniel Sanchez by District Judge James O. Browning (meq) (Entered: 01/23/2018) |
| 01/23/2018 | 1681 | | NOTICE OF HEARING as to Christopher Garcia: Change of Plea Hearing set for 1/25/2018 at 1:30 PM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Kevin R. Sweazea. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/23/2018) |
| 01/23/2018 | 1682 | | NOTICE of hearing regarding the following Docs.: 1646 , 1657 , 1664 , 1673 , 1658 , 1661 and 1662 scheduled for 1/26/2018 at 09:00 AM in Las Cruces – 420 Mimbres Courtroom (North Tower) before District Judge James O. Browning. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/23/2018) |
| 01/24/2018 | 1683 | | TRANSCRIPT of Motion to Suppress Proceedings and James Hearing as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 01/09/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 1/31/2018. Redaction Request due 2/14/2018. Redacted Transcript Deadline set for 2/26/2018. Release of Transcript Restriction set for 4/24/2018. (jab) (Entered: 01/24/2018) |
| 01/24/2018 | 1684 | | Second MOTION in Limine *to Prohibit Government from Introducing Evidence of Alleged "Bad Acts" Based on Government's January 22, 2018 Disclosure* by Daniel Sanchez. (Attachments: # 1 Appendix A)(Jacks, Amy) (Entered: 01/24/2018) |
| 01/24/2018 | 1685 | | Second MOTION to Appoint Counsel by Christopher Chavez. (Granberg, John) (Entered: 01/24/2018) |
| 01/24/2018 | 1686 | | Second MOTION in Limine *to Exclude Evidence of Prior Bad Acts* by Rudy Perez. (Attachments: # 1 Exhibit 1)(Villa, Ryan) (Entered: 01/24/2018) |
| 01/24/2018 | 1687 | | MOTION in Limine *re 404(b)* by Carlos Herrera. (Maynard, William) (Entered: 01/24/2018) |
| 01/24/2018 | 1688 | | [CASE PARTICIPANTS] Supplemental MOTION to Produce *Brady Material*, MOTION for Release of Brady Materials by Carlos Herrera. (Bhalla, Carey) (Entered: 01/24/2018) |
| 01/25/2018 | 1689 | | [CASE PARTICIPANTS] NOTICE *of Parties' Additional Joint Stipulated Hardship and Cause Challenges* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Duncan, Theresa) (Entered: 01/25/2018) |
| 01/25/2018 | 1690 | | [CASE PARTICIPANTS] NOTICE *of Defendants' Joint Supplemental Non−Stipulated Hardship and Cause Challenges* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez (Duncan, Theresa) (Entered: 01/25/2018) |
| 01/25/2018 | 1691 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, adding the following to the agenda of matters to be heard at the hearing scheduled for 1/26/2018: Docs. 1663 , 1684 , 1686 , 1687 and 1688 . (kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/25/2018) |
| 01/25/2018 | 1692 | | [CASE PARTICIPANTS] Unopposed MOTION to Seal *Doc. 1678* by Edward Troup as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Harbour−Valdez, Cori) (Entered: 01/25/2018) |
| 01/25/2018 | 1693 | | [CASE PARTICIPANTS] MOTION to Produce *All Remaining Materials in the Government's Possession Regarding Trial Two Witnesses* by Billy Garcia. (Attachments: # 1 Appendix A, # 2 Appendix B)(Castle, James) Modified security on 1/25/2018 to case participants only per James Castle's office (gr). Modified security on 1/26/2018 (gr). (Entered: 01/25/2018) |

| 01/25/2018 | 1694 | | MOTION to Produce *Brady, Giglio or Jencks Materials Contained in Presentence Reports of Cooperating Witnesses, or, in the Alternative, In Camera Review* by Billy Garcia. (Castle, James) (Entered: 01/25/2018) |
|---|---|---|---|
| 01/25/2018 | 1695 | | TRANSCRIPT of Change of Plea as to Mario Rodriguez held on November 1, 2017, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting, Telephone number 361–949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 2/1/2018. Redaction Request due 2/15/2018. Redacted Transcript Deadline set for 2/26/2018. Release of Transcript Restriction set for 4/25/2018.(ar) (Entered: 01/25/2018) |
| 01/25/2018 | 1696 | | ORDER by District Judge James O. Browning allowing defense staff to bring cellphones inside the courthouse (meq) (Entered: 01/25/2018) |
| 01/25/2018 | 1697 | | INSPECTION ORDER by District Judge James O. Browning (meq) (Entered: 01/25/2018) |
| 01/25/2018 | 1698 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1677 Motion for Free Process as to Daniel Sanchez (18), Anthony Ray Baca (21), Christopher Garcia (24), Carlos Herrera (25), Rudy Perez (26) (meq) (Entered: 01/25/2018) |
| 01/25/2018 | 1699 | | COURT'S SECOND PROPOSED PRELIMINARY JURY INSTRUCTIONS (w/citations) by District Judge James O. Browning (meq) (Entered: 01/25/2018) |
| 01/25/2018 | 1700 | | [CASE PARTICIPANTS] RESPONSE by Rudy Perez as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez re 1646 Notice (Other) (Villa, Ryan) (Entered: 01/25/2018) |
| 01/25/2018 | 1701 | | MOTION to Strike *Cooperating Witnesses From Testifying in This Case & Request for Evidentiary Hearing* by Edward Troup, Billy Garcia, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez, Shauna Gutierrez as to Anthony Ray Baca. (Attachments: # 1 Exhibit A – Jail Call Between B.Clark and Mom, # 2 Exhibit B – Jail Call Between B.Cordova and A.DeLeon, # 3 Exhibit C – Jail Call Between L.Urquizo and Brother)(Lowry, Marc) (Entered: 01/25/2018) |
| 01/25/2018 | 1702 | | |

| | | |
|---|---|---|
| | | [CASE PARTICIPANTS] Opposed MOTION in Limine *to Exclude Bad Acts Evidence* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Attachments: # 1 Exhibit A − Bad Acts Letter)(Duncan, Theresa) (Entered: 01/25/2018) |
| 01/25/2018 | 1703 | TRANSCRIPT of Motions to Suppress Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 01/10/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 2/1/2018. Redaction Request due 2/15/2018. Redacted Transcript Deadline set for 2/26/2018. Release of Transcript Restriction set for 4/25/2018. (jab) (Entered: 01/25/2018) |
| 01/25/2018 | 1704 | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE IN A FELONY CASE by Christopher Garcia. (kls) (Entered: 01/25/2018) |
| 01/25/2018 | 1705 | PLEA AGREEMENT as to Christopher Garcia. (kls) (Entered: 01/25/2018) |
| 01/25/2018 | 1706 | Clerk's Minutes for proceedings held before Magistrate Judge Kevin R. Sweazea: Plea Hearing held on 1/25/2018 as to Christopher Garcia (24); Guilty plea entered to counts 10ss and 11ss of the Second Superseding Indictment; Sentencing hearing to be set; Defendant to remain in custody. (LCR−Sierra Blanca) (kls) (Entered: 01/25/2018) |
| 01/25/2018 | 1707 | [CASE PARTICIPANTS] MOTION to Continue *January 29 2018 Trial* by Daniel Sanchez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, |

| | | | |
|---|---|---|---|
| | | | Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit Exhibit A – Motion to Continue, # 2 Exhibit Exhibit B – Motion to Continue)(Jacks, Amy) (Entered: 01/25/2018) |
| 01/26/2018 | 1708 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning, excusing potential juror. (meq) (Entered: 01/26/2018) |
| 01/26/2018 | 1709 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 1692 Motion to Seal Doc 1678 (meq) (Entered: 01/26/2018) |
| 01/26/2018 | 1710 | | [CASE PARTICIPANTS] NOTICE *Third Sealed Joint Notice of Stipulated Hardship and Cause Challenges* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (Duncan, Theresa) (Entered: 01/26/2018) |
| 01/26/2018 | 1711 | | [CASE PARTICIPANTS] NOTICE *of Additional Joint Stipulated Hardship and Cause Challenges* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (Duncan, Theresa) (Entered: 01/26/2018) |
| 01/26/2018 | 1721 | | STIPULATED PROTECTIVE ORDER by District Judge James O. Browning re 1190 Opposed MOTION for Disclosure of Mental Health Records as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Daniel Sanchez, and Anthony Ray Baca. (kls) (Entered: 01/30/2018) |
| 01/26/2018 | 1752 | | EMAILS from Christopher Mickendrow regarding location of missing tablet(meq) (Entered: 02/06/2018) |
| 01/27/2018 | 1712 | | [CASE PARTICIPANTS] MOTION for Reconsideration *of the Court's Two Jury Proposal (SEALED)* by USA as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Beck, Matthew) (Entered: 01/27/2018) |
| 01/27/2018 | 1713 | | EXHIBIT LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 01/27/2018) |
| 01/27/2018 | 1714 | | [CASE PARTICIPANTS] WITNESS LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna |

| | | | |
|---|---|---|---|
| | | | Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 01/27/2018) |
| 01/28/2018 | 1715 | | [CASE PARTICIPANTS] NOTICE *of Letter disclosing co−conspirator (James) statements (SEALED)* by USA as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (Beck, Matthew) (Entered: 01/28/2018) |
| 01/28/2018 | 1716 | | [CASE PARTICIPANTS] NOTICE *of Letter regarding non−co−conspirator statements (SEALED)* by USA as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (Beck, Matthew) (Entered: 01/28/2018) |
| 01/28/2018 | 1717 | | RESPONSE to Motion by USA as to Billy Garcia re 1694 MOTION to Produce *Brady, Giglio or Jencks Materials Contained in Presentence Reports of Cooperating Witnesses, or, in the Alternative, In Camera Review* (Armijo, Maria) (Entered: 01/28/2018) |
| 01/28/2018 | 1718 | | [CASE PARTICIPANTS] WITNESS LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 01/28/2018) |
| 01/28/2018 | 1719 | | [CASE PARTICIPANTS] RESPONSE in Opposition by Daniel Sanchez re 1712 MOTION for Reconsideration *of the Court's Two Jury Proposal (SEALED)* (Jacks, Amy) (Entered: 01/28/2018) |
| 01/28/2018 | 1720 | | [CASE PARTICIPANTS] Second MOTION to Continue *the January 29, 2018 Trial and for an Order Imposing Sanctions Against the Government for Violation of the Court's Order Regarding Discussion with the Press; Request for Hearing* by Daniel Sanchez. (Attachments: # 1 Exhibit Albuquerque Journal Article, # 2 Exhibit Las Cruces Sun News Article, # 3 Exhibit Deming Headlight Article, # 4 Exhibit Alamogordo News Article)(Jacks, Amy) (Entered: 01/28/2018) |
| 01/29/2018 | 1746 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Selection/Jury Trial as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez held on 1/29/2018−2/2/2018 (Court Reporter: J. Bean) (meq) (Entered: 02/06/2018) |
| 01/30/2018 | 1722 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER ALLOWING DISCLOSURE OF GRAND JURY TESTIMONY by District Judge James O. Browning. (kls) (Entered: 01/30/2018) |
| 01/31/2018 | 1724 | | NOTICE of Jury Trial as to Defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera and Rudy Perez resuming from 1/30/2018 through 3/9/2018 at 08:30 AM in Las Cruces − 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning.(kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 01/31/2018) |
| 01/31/2018 | 1725 | | [CASE PARTICIPANTS] RESPONSE in Opposition by USA as to Anthony Ray Baca re 1701 MOTION to Strike *Cooperating Witnesses From* |

| | | | |
|---|---|---|---|
| | | | *Testifying in This Case & Request for Evidentiary Hearing (Sealed)* (Armijo, Maria) (Entered: 01/31/2018) |
| 01/31/2018 | 1726 | | [APPLICABLE PARTY] EX PARTE BUDGET ORDER FOR A NON–CAPITAL REPRESENTATION as to Rudy Perez by District Judge James O. Browning (meq) (Entered: 01/31/2018) |
| 01/31/2018 | 1727 | | [APPLICABLE PARTY] EX PARTE SUPPLEMENTAL BUDGET ORDER FOR A NON–CAPITAL REPRESENTATION as to Carlos Herrera by District Judge James O. Browning (meq) (Entered: 01/31/2018) |
| 01/31/2018 | 1728 | | EXHIBIT LIST by Daniel Sanchez (Jacks, Amy) (Entered: 01/31/2018) |
| 02/01/2018 | 1729 | | [CASE PARTICIPANTS] Second MOTION to Disqualify Counsel *(Sealed)* by USA as to Anthony Ray Baca. (Armijo, Maria) (Entered: 02/01/2018) |
| 02/01/2018 | 1730 | | [APPLICABLE PARTY] EX PARTE ORDER TO TRANSPORT by Magistrate Judge Gregory B. Wormuth granting 1723 Motion for Order as to Jerry Montoya (14). (kls) (Entered: 02/01/2018) |
| 02/01/2018 | 1731 | | COURT'S FIRST PROPOSED JURY INSTRUCTIONS (w/citations) as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (jn) (Entered: 02/01/2018) |
| 02/01/2018 | 1732 | | COURT'S FIRST PROPOSED JURY INSTRUCTIONS (with citations) as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (jn) (Entered: 02/01/2018) |
| 02/01/2018 | 1733 | | [CASE PARTICIPANTS] MOTION in Limine *"Co−conspiracy" Statements* by Carlos Herrera. (Maynard, William) (Entered: 02/01/2018) |
| 02/01/2018 | 1734 | | TRIAL BRIEF by Rudy Perez (Fox–Young, Justine) (Entered: 02/01/2018) |
| 02/02/2018 | 1735 | | RESPONSE in Opposition by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1733 MOTION in Limine *"Co−conspiracy" Statements* (Beck, Matthew) (Entered: 02/02/2018) |
| 02/02/2018 | 1736 | | TRANSCRIPT of Plea Hearing as to Jerry Armenta held on December 13, 2016, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting Services, INC, Telephone number (361) 949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day** |

| | | | |
|---|---|---|---|
| | | | **period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 2/9/2018. Redaction Request due 2/23/2018. Redacted Transcript Deadline set for 3/5/2018. Release of Transcript Restriction set for 5/3/2018.(jg) (Entered: 02/02/2018) |
| 02/02/2018 | 1737 | | TRANSCRIPT of Plea Hearing as to Robert Martinez held on September 22, 2016, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting Services, INC, Telephone number (361) 949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 2/9/2018. Redaction Request due 2/23/2018. Redacted Transcript Deadline set for 3/5/2018. Release of Transcript Restriction set for 5/3/2018.(jg) (Entered: 02/02/2018) |
| 02/02/2018 | 1738 | | EXHIBIT LIST by Daniel Sanchez (Jacks, Amy) (Entered: 02/02/2018) |
| 02/02/2018 | 1739 | | COURT'S SECOND PROPOSED JURY INSTRUCTIONS (w/citations) as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (jn) (Entered: 02/02/2018) |
| 02/02/2018 | 1740 | | COURT'S SECOND PROPOSED JURY INSTRUCTIONS (with citations) as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (jn) (Entered: 02/02/2018) |
| 02/02/2018 | 1741 | | **FILED IN ERROR** COURT'S SECOND PROPOSED PRELIMINARY JURY INSTRUCTION (with citations) as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (jn) Modified on 2/6/2018 Duplicate entry to 1699 (meq). (Entered: 02/02/2018) |
| 02/04/2018 | 1742 | | TRIAL BRIEF by Rudy Perez (Villa, Ryan) (Entered: 02/04/2018) |
| 02/05/2018 | 1743 | | Joint MOTION to Sever Defendant *Based on Practical Grounds* by Billy Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, |

| | | | |
|---|---|---|---|
| | | | Shauna Gutierrez, Brandy Rodriguez. (Castle, James) (Entered: 02/05/2018) |
| 02/05/2018 | 1744 | | [CASE PARTICIPANTS] MOTION for Discovery by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Castle, James) Modified on 11/4/2019 (vv). (Entered: 02/05/2018) |
| 02/05/2018 | 1745 | | ORDER by District Judge James O. Browning granting 1685 Motion to Appoint Counsel Eduardo Solis for Christopher Chavez appointed. (meq) (Entered: 02/05/2018) |
| 02/05/2018 | 1780 | | [CASE PARTICIPANTS] *SEALED* Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Trial as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez held on 2/5/2018–2/9/2018 (Court Reporter: J. Bean) (meq) (Entered: 02/12/2018) |
| 02/06/2018 | 1747 | | COURT'S FINAL PRELIMINARY JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 02/06/2018) |
| 02/06/2018 | 1748 | | COURT'S FINAL PRELIMINARY JURY INSTRUCTIONS (GIVEN) (without citations) by District Judge James O. Browning (meq) (Entered: 02/06/2018) |
| 02/06/2018 | 1755 | | COURT'S Third PROPOSED JURY INSTRUCTIONS (w/citations) as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (jn) (Entered: 02/07/2018) |
| 02/06/2018 | 1756 | | COURT'S Third PROPOSED JURY INSTRUCTIONS (with citations) as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (jn) (Entered: 02/07/2018) |
| 02/06/2018 | 1757 | | PRELIMINARY JURY INSTRUCTION as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (jn) (Entered: 02/07/2018) |
| 02/07/2018 | 1753 | | TRIAL BRIEF by USA as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (Beck, Matthew) (Entered: 02/07/2018) |
| 02/07/2018 | 1754 | | MOTION in Limine *to Exclude Extrinsic Evidence* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 02/07/2018) |
| 02/07/2018 | 1758 | | MOTION to Appoint Counsel by Allen Patterson. (Lahann, Jeffrey) (Entered: 02/07/2018) |

| 02/07/2018 | 1759 | | TRANSCRIPT of Motion to Suppress Proceedings and James Hearing as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 01/26/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br> Notice of Intent to Request Redaction set for 2/14/2018. Redaction Request due 2/28/2018. Redacted Transcript Deadline set for 3/12/2018. Release of Transcript Restriction set for 5/8/2018. (jab) (Entered: 02/07/2018) |
| 02/07/2018 | 1761 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1760 Motion for Order for Free Process as to Rudy Perez (26) (meq) (Entered: 02/08/2018) |
| 02/08/2018 | 1762 | | NOTICE of motion hearing on all pending motions as to Group 2 Defendants scheduled for 3/12–16/2018 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. An itemized agenda of the specific motions/matters to be heard will issue separately.(kw) <br> [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] <br> (Entered: 02/08/2018) |
| 02/08/2018 | 1764 | | [CASE PARTICIPANTS] MOTION in Limine *re Audio Recordings* by Carlos Herrera. (Maynard, William) (Entered: 02/08/2018) |
| 02/08/2018 | 1834 | | EMAIL From Christopher Mickendrow Regarding Tablets (meq) (Entered: 02/26/2018) |
| 02/09/2018 | 1765 | | [CASE PARTICIPANTS] TRIAL BRIEF by Carlos Herrera (Bhalla, Carey) (Entered: 02/09/2018) |
| 02/09/2018 | 1766 | | EXHIBIT LIST by Daniel Sanchez (Jacks, Amy) (Entered: 02/09/2018) |
| 02/09/2018 | 1767 | | [CASE PARTICIPANTS] NOTICE *Defendants' Proposed Redactions to* |

| | | |
|---|---|---|
| | | *United States' Proposed Redactions to Statements of Rudy Perez* by Rudy Perez as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (Attachments: # 1 Exhibit 177, # 2 Exhibit 179, # 3 Exhibit 181, # 4 Exhibit 183, # 5 Exhibit 185, # 6 Exhibit 189)(Villa, Ryan) (Entered: 02/09/2018) |
| 02/09/2018 | 1768 | NOTICE *of Redacted Transcripts* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit)(Armijo, Maria) (Entered: 02/09/2018) |
| 02/09/2018 | 1778 | COURT'S FOURTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 02/12/2018) |
| 02/09/2018 | 1779 | COURT'S FOURTH PROPOSED JURY INSTRUCTIONS (w/citations) by District Judge James O. Browning (meq) (Entered: 02/12/2018) |
| 02/11/2018 | 1769 | [CASE PARTICIPANTS] NOTICE *of Defendants' Proposed Redactions to the United States' Redaction Proffer* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez (Attachments: # 1 Exhibit 199, # 2 Exhibit 205, # 3 Exhibit 207, # 4 Exhibit 209, # 5 Exhibit 215, # 6 Exhibit 295, # 7 Exhibit 317, # 8 Exhibit 335, # 9 Exhibit 349, # 10 Exhibit 371, # 11 Exhibit 375, # 12 Exhibit 385, # 13 Exhibit 391, # 14 Exhibit 393, # 15 Exhibit 395, # 16 Exhibit 397, # 17 Exhibit 403, # 18 Exhibit 405, # 19 Exhibit 419, # 20 Exhibit 425, # 21 Exhibit 427, # 22 Exhibit 429)(Lowry, Marc) (Entered: 02/11/2018) |
| 02/11/2018 | 1775 | [CASE PARTICIPANTS] NOTICE *(SEALED, EX PARTE)* by Rudy Perez (Attachments: # 1 Exhibit A)(Fox–Young, Justine) (Entered: 02/11/2018) |
| 02/11/2018 | 1776 | [CASE PARTICIPANTS] MOTION in Limine *re Redactions and Transcripts* by Carlos Herrera. (Attachments: # 1 Exhibit Govt Ex 203 transcript)(Maynard, William) (Entered: 02/11/2018) |
| 02/12/2018 | 1781 | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning denying the requests for relief in the Trial Brief in Support of Mr. Perez's Right to Present a Full Defense 1734 and the Trial Brief in Support of Mr. Perez's Right to Present Evidence of Threats 1742 (meq) (Entered: 02/12/2018) |
| 02/12/2018 | 1782 | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting the request in the United States' Trial Brief Regarding Inadmissibility of Investigative Reports Under Rule 803(6) and Rule 803(8) 1753 (meq) (Entered: 02/12/2018) |

| 02/12/2018 | 1783 | | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting the Motion In Limine to Exclude New Purported Co–Conspirator Statements until and unless the Plaintiff United States proves that Mendez was a member of the conspiracy to kill Molina; shows that some the Mendez statements are admissible for their truth under some rule other than rule 801(d)(2)(E) of the Federal Rules of Evidence; or identifies a non–hearsay purpose for the Mendez statements 1733 (meq) (Entered: 02/12/2018) |
| --- | --- | --- | --- |
| 02/12/2018 | 1784 | | [APPLICABLE PARTY] SEALED EX PARTE TRIAL BUDGET ORDER as to Anthony Ray Baca by District Judge James O. Browning (meq) (Entered: 02/12/2018) |
| 02/12/2018 | 1785 | | [APPLICABLE PARTY] SEALED EX PARTE SUPPLEMENTAL TRIAL BUDGET ORDER as to Edward Troup by District Judge James O. Browning (meq) (Entered: 02/12/2018) |
| 02/12/2018 | 1786 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1770 Motion for Writ of Habeas Corpus Ad Testificandum for Benjamin Clark (meq) (Entered: 02/12/2018) |
| 02/12/2018 | 1787 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1777 Motion for Writ of Habeas Corpus Ad Testificandum for Benji Montano (meq) (Entered: 02/12/2018) |
| 02/12/2018 | 1788 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1772 Motion for Writ of Habeas Corpus Ad Testificandum for Charlie Montoya (meq) (Entered: 02/12/2018) |
| 02/12/2018 | 1789 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1773 Motion for Writ of Habeas Corpus Ad Testificandum for Paul Valenzuela (meq) (Entered: 02/12/2018) |
| 02/12/2018 | 1790 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1774 Motion for Writ of Habeas Corpus Ad Testificandum for Samuel Gonzales (meq) (Entered: 02/12/2018) |
| 02/12/2018 | 1791 | | [APPLICABLE PARTY] SEALED EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Samuel Gonzales for 2/20/18 in case as to Rudy Perez (meq) (Entered: 02/13/2018) |
| 02/12/2018 | 1792 | | [APPLICABLE PARTY] SEALED EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Paul Valenzuela for 2/20/18 in case as to Rudy Perez (meq) (Entered: 02/13/2018) |
| 02/12/2018 | 1793 | | [APPLICABLE PARTY] SEALED EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Benjamin Clark for 2/20/18 in case as to Rudy Perez (meq) (Entered: 02/13/2018) |
| 02/12/2018 | 1800 | | [APPLICABLE PARTY] SEALED EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Benji Montano for 2/20/18 in case as to Rudy Perez (meq) (Entered: 02/15/2018) |
| 02/12/2018 | 1801 | | [APPLICABLE PARTY] SEALED EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Charlie Montoya for 2/20/18 in case as to Rudy Perez (meq) (Entered: 02/15/2018) |

| 02/12/2018 | 1814 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Trial as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez held on 2/12/2018–2/16/18 (Court Reporter: J. Bean) (meq) (Entered: 02/20/2018) |
| --- | --- | --- | --- |
| 02/13/2018 | 1795 | | [CASE PARTICIPANTS] MOTION to Sever Defendant *(SEALED)* by Rudy Perez. (Fox–Young, Justine) (Entered: 02/13/2018) |
| 02/13/2018 | 1802 | | COURT'S FIFTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 02/15/2018) |
| 02/13/2018 | 1803 | | COURT'S FIFTH PROPOSED JURY INSTRUCTIONS (w/citations) by District Judge James O. Browning (meq) (Entered: 02/15/2018) |
| 02/14/2018 | 1796 | | [CASE PARTICIPANTS] WITNESS LIST by Carlos Herrera (Maynard, William) (Entered: 02/14/2018) |
| 02/14/2018 | 1797 | | [CASE PARTICIPANTS] APPENDIX/SUPPLEMENT re 1795 MOTION to Sever Defendant *(SEALED)* (Fox–Young, Justine) (Entered: 02/14/2018) |
| 02/14/2018 | 1798 | | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying in part the Notice of Defendants' Proposed Additional Redactions to the United States' Proposed Redactions to Transcripts and Recordings of Rudy Perez by Billy Cordova 1767 ; and the Plaintiff United States of America shall redact its exhibits in accordance with the Court's determinations. (meq) (Entered: 02/14/2018) |
| 02/14/2018 | 1805 | | ORDER by District Judge James O. Browning granting 1758 Motion to Appoint Counsel Joseph E. Shattuck for Allen Patterson (meq) (Entered: 02/15/2018) |
| 02/14/2018 | 1806 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1763 Motion for Order Granting Supplemental Database Funds (meq) (Entered: 02/15/2018) |
| 02/15/2018 | 1804 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1799 Motion for Free Process as to Carlos Herrera (25) (meq) (Entered: 02/15/2018) |
| 02/16/2018 | 1807 | | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Brandy Rodriguez: Change of Plea Hearing set for 2/23/2018 at 11:00 AM in Las Cruces, NM – 360 Dona Ana Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.** [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/16/2018) |
| 02/16/2018 | 1808 | | MOTION to Renew Motion to Dismiss Counts 4 and 5 and Motion for Bill of Particulars as to Counts 13 through 16 by Joe Lawrence Gallegos. (Sindel, Richard) Modified text on 2/20/2018 (meq). (Entered: 02/16/2018) |
| 02/16/2018 | 1809 | | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying |

| | | | |
|---|---|---|---|
| | | | in part the redaction requests in the Notice of Defendants' Proposed Redactions to the United States' Redaction Proffer 1769 . Plaintiff United States of America shall redact its exhibits in accordance with the Court's determinations. (vv) Modified text on (2/20/2018) (meq) (Entered: 02/16/2018) |
| 02/19/2018 | 1810 | | MOTION for Writ of Habeas Corpus ad testificandum *for Billy Cordova* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Castellano, Randy) (Entered: 02/19/2018) |
| 02/19/2018 | 1811 | | MOTION for Writ of Habeas Corpus ad testificandum *for Eric Duran* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 02/19/2018) |
| 02/19/2018 | 1812 | | [CASE PARTICIPANTS] TRIAL BRIEF by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # 1 Exhibit, # 2 Exhibit)(Beck, Matthew) (Entered: 02/19/2018) |
| 02/19/2018 | 1813 | | [CASE PARTICIPANTS] TRIAL BRIEF by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # 1 Exhibit, # 2 Exhibit)(Beck, Matthew) (Entered: 02/19/2018) |
| 02/20/2018 | 1828 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Trial as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez held on 2/20/2018–2/23/2018 (Court Reporter: J. Bean) |

| | | | |
|---|---|---|---|
| | | | (meq) (Entered: 02/26/2018) |
| 02/21/2018 | 1819 | | COURT'S SIXTH PROPOSED JURY INSTRUCTIONS (w/citations) by District Judge James O. Browning (meq) (Entered: 02/22/2018) |
| 02/21/2018 | 1822 | | ORDER by District Judge James O. Browning granting 1810 Motion for Writ of Habeas Corpus ad testificandum as to Billy Cordova (meq) (Entered: 02/23/2018) |
| 02/21/2018 | 1823 | | Writ of Habeas Corpus ad Prosequendum Issued as to Billy Cordova for 2–20–18 (meq) (Entered: 02/23/2018) |
| 02/21/2018 | 1824 | | ORDER by District Judge James O. Browning granting 1811 Motion for Writ of Habeas Corpus ad testificandum as to Eric Duran (meq) (Entered: 02/23/2018) |
| 02/21/2018 | 1825 | | Writ of Habeas Corpus ad Prosequendum Issued as to Eric Duran for 2–16–18 (meq) (Entered: 02/23/2018) |
| 02/22/2018 | 1815 | | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning denying the Motion In Limine to Limit Admission of Recorded Conversations 1764 and the Second Motion In Limine and Agreements Regarding Redactions of Recorded Conversations (Cordova Recordings) 1776 (meq) (Entered: 02/22/2018) |
| 02/22/2018 | 1817 | | NOTICE *of Intent to Admit Statements Under Fed. R. Evid. 807* by Billy Garcia (Castle, James) (Entered: 02/22/2018) |
| 02/22/2018 | 1818 | | COURT'S SIXTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 02/22/2018) |
| 02/23/2018 | 1820 | | MOTION to Clarify Ruling Regarding Impeachment Witnesses by Anthony Ray Baca. (Duncan, Theresa) (Entered: 02/23/2018) |
| 02/23/2018 | 1821 | | Proposed Jury Instructions by Daniel Sanchez (Jacks, Amy) (Entered: 02/23/2018) |
| 02/23/2018 | 1829 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE IN A FELONY CASE by Brandy Rodriguez. (kls) (Entered: 02/26/2018) |
| 02/23/2018 | 1830 | | PLEA AGREEMENT as to Brandy Rodriguez. (kls) (Entered: 02/26/2018) |
| 02/23/2018 | 1831 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 2/23/2018 as to Brandy Rodriguez (31); Guilty plea entered to Counts 14,15, and 16 of the Second Superseding Indictment; Sentencing hearing to be set; Defendant remanded into custody. (LCR–Dona Ana) (kls) (Entered: 02/26/2018) |
| 02/23/2018 | 1832 | | ORDER by Magistrate Judge Gregory B. Wormuth revoking Conditions of Release pursuant to 18 U.S.C. 3143 as to Brandy Rodriguez. (kls) (Entered: 02/26/2018) |
| 02/25/2018 | 1826 | | Opposed MOTION in Limine *to Exclude Irrelevant Witnesses and Evidence* by USA as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Beck, Matthew) (Entered: 02/25/2018) |
| 02/25/2018 | 1827 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE *in form of Letter to Court re Results of Ordered Meet and Confer re Jury Instructions* by Daniel Sanchez (Attachments: # 1 Exhibit Proposed Edits to Jury Instructions (Redlined))(Jacks, Amy) (Entered: 02/25/2018) |
| 02/26/2018 | 1833 | | [APPLICABLE PARTY] SEALED EX PARTE TRIAL BUDGET ORDER as to Joe Lawrence Gallegos by District Judge James O. Browning (meq) (Entered: 02/26/2018) |
| 02/26/2018 | 1868 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Trial as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez held on 2/26/2018–3/2/2018 (Court Reporter: J. Bean) (meq) (Entered: 03/05/2018) |
| 02/27/2018 | 1835 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, notifying the parties that the Court will conduct a Pretrial Conference in conjunction with the motions hearing scheduled to commence 3/12/2018; also, notifying the parties that the following motions are set to be heard at said hearing: 1142 , 1143 , 1283 , 1284 , 1298 , 1307 , 1308 , 1318 , 1319 , 1320 , 1321 , 1504 , 1528 , 1531 , 1532 , 1602 , 1670 , 1671 , 1693 , 1743 , 1744 , 1754 & 1808 . Counsel shall provide a proposed batting order and estimated amount of time believed to be required to complete the presentation of evidence and/or argument on these motions no later than the close of business on 3/5/2018. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/27/2018) |
| 02/27/2018 | 1836 | | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying in part the requests in the United States' Sealed Trial Brief Regarding Invocation of the Fifth Amendment Privilege Against Self–Incrimination 1812 and denying Defendant Anthony Ray Baca's Motion to Clarify Ruling Regarding Impeachment Witnesses 1820 (meq) (Entered: 02/27/2018) |
| 02/27/2018 | 1838 | | COURT'S SEVENTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 02/28/2018) |
| 02/27/2018 | 1839 | | COURT'S SEVENTH PROPOSED JURY INSTRUCTIONS (w/citations) by District Judge James O. Browning (meq) (Entered: 02/28/2018) |
| 02/28/2018 | 1837 | | NOTICE *of Objection to Permitting the Jury to Consider Recordings, Never Presented in Court, During Their Deliberations* by Daniel Sanchez (Jacks, Amy) (Entered: 02/28/2018) |
| 02/28/2018 | 1840 | | TRIAL BRIEF by Anthony Ray Baca (Lowry, Marc) (Entered: 02/28/2018) |
| 03/01/2018 | 1841 | | [CASE PARTICIPANTS] MOTION to Dismiss *Case for Government's Outrageous Misconduct and Violation of Brady v. Maryland* by Daniel Sanchez. (Attachments: # 1 Exhibit Stemo Notes, # 2 Exhibit FBI 302)(Jacks, Amy) (Entered: 03/01/2018) |
| 03/01/2018 | 1842 | | MOTION to Dismiss by Carlos Herrera. (Bhalla, Carey) (Entered: 03/01/2018) |
| 03/01/2018 | 1843 | | NOTICE *of Joinder in Motion to Dismiss* by Anthony Ray Baca as to Anthony Ray Baca, Carlos Herrera re 1842 MOTION to Dismiss (Duncan, Theresa) (Entered: 03/01/2018) |

| 03/01/2018 | 1844 | | MOTION to Dismiss by Rudy Perez. (Attachments: # 1 Exhibit)(Villa, Ryan) Modified on 3/1/2018 to modify the restriction level of the attachment per Court's instructions during open court (vv). (Entered: 03/01/2018) |
| 03/01/2018 | 1845 | | NOTICE *of Joinder in Defendant Herrera's Motion to Dismiss (Doc. 1842)* by Daniel Sanchez (Jacks, Amy) (Entered: 03/01/2018) |
| 03/01/2018 | 1846 | | Proposed Jury Instructions by Carlos Herrera (Attachments: # 1 Exhibit)(Bhalla, Carey) (Entered: 03/01/2018) |
| 03/01/2018 | 1847 | | NOTICE *of Defendants' Joint Objections to the Courts Eighth Proposed Jury Instructions* by Daniel Sanchez (Jacks, Amy) (Entered: 03/01/2018) |
| 03/01/2018 | 1848 | | RESPONSE by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez *Defendant Baca's Rule 29 Motion* (Castellano, Randy) (Entered: 03/01/2018) |
| 03/01/2018 | 1864 | | COURT'S EIGHTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 03/05/2018) |
| 03/01/2018 | 1865 | | COURT'S EIGHTH PROPOSED JURY INSTRUCTIONS (w/citations) by District Judge James O. Browning (meq) (Entered: 03/05/2018) |
| 03/02/2018 | 1849 | | NOTICE *of United States' Objections to Court's Eighth Proposed Jury Instructions* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1847 Notice (Other) (Castellano, Randy) (Entered: 03/02/2018) |
| 03/02/2018 | 1850 | | RESPONSE in Opposition by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1842 MOTION to Dismiss , 1844 MOTION to Dismiss , 1841 MOTION to Dismiss *Case for Government's Outrageous Misconduct and Violation of Brady v. Maryland* (Attachments: # 1 Jan. 22 302, # 2 Mar. 6 302)(Beck, Matthew) (Entered: 03/02/2018) |
| 03/02/2018 | 1851 | | Proposed Jury Instructions by Daniel Sanchez (Jacks, Amy) (Entered: 03/02/2018) |

| 03/02/2018 | 1852 | | RESPONSE by Anthony Ray Baca re 1848 Response,, *to Defendant Baca's Rule 29 Motion Regarding Count 8* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Lowry, Marc) (Entered: 03/02/2018) |
|---|---|---|---|
| 03/02/2018 | 1853 | | NOTICE *of Joinder of Defendant Edward Troup in Christopher Garcia's Notice of Intent to Offer Expert Witness Testimony and the Amended Notice (Docs. 1257 and 1563)* by Edward Troup as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1257 Notice (Other) (Burke, Patrick) (Entered: 03/02/2018) |
| 03/02/2018 | 1859 | | MOTION for Discovery *Motion for Discovery of the Arrest and Conviction Reports of Witnesses' Criminal History* by Joe Lawrence Gallegos as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Andrew Gallegos. (Benjamin, Brock) (Entered: 03/02/2018) |
| 03/02/2018 | 1860 | | NOTICE *of Joinder in Motion to Dismiss* by Anthony Ray Baca as to Anthony Ray Baca, Rudy Perez re 1844 MOTION to Dismiss (Duncan, Theresa) (Entered: 03/02/2018) |
| 03/02/2018 | 1861 | | MOTION to Produce *NOTES OF INTERVIEWS OF WITNESSES BY INVESTIGATING OFFICERS, SUBSTANTIALLY VERBATIM OR EXCULPATORY NOTES OF INTERVIEWS OF WITNESSES BY THE PROSECUTORS, FOR PRODUCTION OF RECORDED INTERVIEWS AND FOR DISCLOSURE OF EVIDENCE THAT ANY NOTES HAVE BEEN DESTROYED* by Billy Garcia. (Attachments: # 1 Appendix A, # 2 Appendix B)(Castle, James) (Entered: 03/02/2018) |
| 03/02/2018 | 1866 | | COURT'S NINTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 03/05/2018) |
| 03/02/2018 | 1867 | | COURT'S TENTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 03/05/2018) |
| 03/05/2018 | 1862 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, adding the following motions to the agenda for the motions hearing set to commence 03/12/2018: 1292 , 1317 & 1694 . (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/05/2018) |
| 03/05/2018 | 1863 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, adding Docs. 1859 & 1861 to the agenda for the motions hearing scheduled to commence 03/12/2018. (kw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/05/2018) |
| 03/05/2018 | 1869 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning denying the Defendants' Objection to Permitting the Jury to Consider Recordings, Never Presented in Court, During Their Deliberations (meq) (Entered: 03/05/2018) |

| 03/05/2018 | 1870 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting Defendant Anthony Ray Baca's oral motion for a judgment of acquittal, under rule 29 of the Federal Rules of Criminal Procedure, as to Count 8. (meq) (Entered: 03/05/2018) |
|---|---|---|---|
| 03/05/2018 | 1871 | | MOTION in Limine *to Preclude Cross−Examination of Special Agent Acee on Unrelated Conduct* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Beck, Matthew) (Entered: 03/05/2018) |
| 03/05/2018 | 1873 | | COURT'S ELEVENTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 03/06/2018) |
| 03/05/2018 | 1875 | | COURT'S TWELFTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 03/06/2018) |
| 03/05/2018 | 1876 | | COURT'S THIRTEENTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 03/06/2018) |
| 03/05/2018 | 1877 | | COURT'S FINAL JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (meq) (Entered: 03/06/2018) |
| 03/05/2018 | 1897 | | EMAIL from Theresa Duncan regarding Jury Instructions (meq) (Entered: 03/07/2018) |
| 03/05/2018 | 1931 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Trial as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez held on 3/5/2018 through 3/9/18. (Court Reporter: J. Bean) (vv) (Entered: 03/13/2018) |
| 03/06/2018 | 1872 | | NOTICE *of Joinder in Co−defendant's Motion Pursuant to Rule 16* by Christopher Chavez (Solis, Eduardo) (Entered: 03/06/2018) |
| 03/06/2018 | 1874 | | NOTICE *of Joinder in Co−Defendants Motion Pursuan to Rule 16* by Christopher Chavez (Solis, Eduardo) (Entered: 03/06/2018) |
| 03/06/2018 | 1878 | | NOTICE *of Joinder* by Christopher Chavez (Granberg, John) (Entered: 03/06/2018) |
| 03/07/2018 | 1879 | | RESPONSE to Motion by USA as to Billy Garcia, Christopher Chavez re 1744 MOTION for Discovery (Beck, Matthew) (Entered: 03/07/2018) |
| 03/07/2018 | 1880 | | RESPONSE in Opposition by USA as to Billy Garcia, Christopher Chavez re 1743 Joint MOTION to Sever Defendant *Based on Practical Grounds* (Beck, Matthew) (Entered: 03/07/2018) |
| 03/07/2018 | 1881 | | RESPONSE to Motion by USA as to Billy Garcia, Christopher Chavez re 1693 MOTION to Produce *All Remaining Materials in the Government's Possession Regarding Trial Two Witnesses*, 1861 MOTION to Produce *NOTES OF INTERVIEWS OF WITNESSES BY INVESTIGATING* |

| | | |
|---|---|---|
| | | *OFFICERS, SUBSTANTIALLY VERBATIM OR EXCULPATORY NOTES OF INTERVIEWS OF WITNESSES BY THE PROSECUTORS, FOR PRODUCTION OF RECORDED INTERVIEWS AND FOR DISCLOSURE OF EVIDENCE THAT ANY N (Beck, Matthew) (Entered: 03/07/2018)* |
| 03/07/2018 | 1882 | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting Defendant Santos Gonzales' Motion for Production of Alleged Co–Conspirator Statements, Pre–Trial Hearing on Their Admissibility Pursuant to Fed.R.Evid. 801(d)(2)(E) 1141 , granting Defendant Rudy Perez's Motion for Production of Alleged Co–Conspirator Statements and for Pre–Trial Hearing on Their Admissibility 1228 , granting in part and denying in part the Opposed Motion for Specification of Co–Conspirator Statements and a Pre–Trial Hearing on the Statements' Admissibility 1303 , granting in part and denying in part Motion to Prevent the Admission of Statements of Non–Testifying Codefendants Implicating Defendant Billy Garcia and for an Order for the Government to Specify Such Statements Prior to Trial 1307 , granting Motion for James Hearing and Determination of Co–Conspirator Statements Admissibility at a Pre–Trial Hearing 1317 , granting Defendant Shauna Gutierrez' Opposed Motion for a James Hearing 1321 , granting in part and denying in part Motion in Limine to Exclude Statement of Cooperating Government Witnesses 1514 , denying Motion in Limine to Exclude Co–Defendant's Statements 1517 , denying Defendant Anthony Ray Baca's Motion in Limine to Prohibit the Government From Questioning Jerry Armenta About Defendant Anthony Ray Bacas Involvement in Counts 6 & 7 1540 , denying Defendant Daniel Sanchez's Motion in Limine to Preclude the Admission of Un–Confronted, Out of Court Statements Proffered by the Government at the James Hearing 1616 , and denying Motion to Renew Motion to Sever Defendants Charged with Offenses in Counts 6 and 7 1664 . (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1883 | RESPONSE to Motion by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1671 MOTION to Exclude *Testimony from Government's Gang Experts as Outlined in the United States' Supplemental Notice of Gang Expert Witnesses' Testimony [Doc. 1656]* (Armijo, Maria) (Entered: 03/07/2018) |
| 03/07/2018 | 1884 | [APPLICABLE PARTY] EX PARTE ORDER granting Application for Writ of Habeas Corpus Ad Testificandum for custody of inmate Benjamin Clark 1854 by District Judge James O. Browning (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1885 | [APPLICABLE PARTY] EX PARTE ORDER granting Application for Writ of Habeas Corpus Ad Testificandum for custody of inmate Leonard Lujan 1855 by District Judge James O. Browning (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1886 | [APPLICABLE PARTY] EX PARTE ORDER granting Application for Writ of Habeas Corpus Ad Testificandum for custody of inmate Robert Martinez |

| | | |
|---|---|---|
| | | 1856 by District Judge James O. Browning (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1887 | RESPONSE to Motion by USA as to Joe Lawrence Gallegos re 1808 MOTION Motion to Renew Motion to Dismiss Counts 4 and 5 and Motion for Bill of Particulars as to Counts 13 through 16 (Armijo, Maria) (Entered: 03/07/2018) |
| 03/07/2018 | 1888 | [APPLICABLE PARTY] EX PARTE ORDER granting Application for Writ of Habeas Corpus Ad Testificandum for custody of inmate Frederico Munoz 1857 by District Judge James O. Browning (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1889 | [APPLICABLE PARTY] EX PARTE ORDER granting Application for Writ of Habeas Corpus Ad Testificandum for custody of inmate Fred Quintana 1858 by District Judge James O. Browning (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1890 | RESPONSE to Motion by USA as to Joe Lawrence Gallegos re 1602 MOTION in Limine (Armijo, Maria) (Entered: 03/07/2018) |
| 03/07/2018 | 1891 | [APPLICABLE PARTY] EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Benjamin Clark for 3/12/18 in case as to Billy Garcia (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1892 | [APPLICABLE PARTY] EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Leonard Lujan for 3/12/18 in case as to Billy Garcia (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1893 | [APPLICABLE PARTY] EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Robert Martinez for 3/12/18 in case as to Billy Garcia (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1894 | [APPLICABLE PARTY] EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Frederico Munoz for 3/12/18 in case as to Billy Garcia (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1895 | [APPLICABLE PARTY] EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Fred Quintana for 3/12/18 in case as to Billy Garcia (meq) (Entered: 03/07/2018) |
| 03/07/2018 | 1896 | RESPONSE in Opposition by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Andrew Gallegos re 1859 MOTION for Discovery *Motion for Discovery of the Arrest and Conviction Reports of Witnesses' Criminal History* (Armijo, Maria) (Entered: 03/07/2018) |
| 03/07/2018 | 1898 | NOTICE *of Request to Proceed with Hearings on Motions to Dismiss (Docs. 1283 & 1284) on Tuesday, March 13, 2018* by USA as to Edward Troup, Billy Garcia re 1283 Opposed MOTION to Dismiss , 1284 Opposed MOTION to Dismiss (Beck, Matthew) (Entered: 03/07/2018) |
| 03/07/2018 | 1899 | NOTICE *Notice of Entry of Appearance for Non−Party Leroy Lucero* by Leroy Lucero as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, |

| | | | |
|---|---|---|---|
| | | | Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Fallick, Gregg) (Entered: 03/07/2018) |
| 03/07/2018 | 1900 | | [CASE PARTICIPANTS] MOTION to Quash *Non−Party Leroy Lucero's Motion to Quash Subpoena and Request for Expedited Consideration* by Leroy Lucero as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Fallick, Gregg) (Entered: 03/07/2018) |
| 03/07/2018 | 1901 | | [CASE PARTICIPANTS] ***FILED IN ERROR*** NOTICE *of James Statements for Trial 2* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Castellano, Randy) Modified on 3/8/2018 (meq). (Entered: 03/07/2018) |
| 03/08/2018 | 1902 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, adding Docs. 1871 & 1900 to the agenda of motions to be heard at the hearing scheduled to commence on 3/12/2018. (kw) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/08/2018) |
| 03/08/2018 | 1903 | | [CASE PARTICIPANTS] NOTICE *James Statements for Trial 2 (Corrected) (Sealed)* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # 1 Attachment 1)(Castellano, Randy) (Entered: 03/08/2018) |
| 03/09/2018 | 1907 | | MOTION for Order *for Copy of Sealed Transcripts* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Cooper, Robert) (Entered: |

| | | | |
|---|---|---|---|
| | | | 03/09/2018) |
| 03/09/2018 | 1908 | | [CASE PARTICIPANTS] Opposed MOTION for Order *to Obtain Physical and Mental Health Records* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Arturo Arnulfo Garcia. (Attachments: # 1 Appendix)(Harbour–Valdez, Cori) (Entered: 03/09/2018) |
| 03/09/2018 | 1909 | | [CASE PARTICIPANTS] RESPONSE by Billy Garcia re 1903 Notice (Other),, *DEFENDANT BILLY GARCIAS TARGETED RESPONSE TO UNITED STATES NOTICE OF PROPOSED JAMES STATEMENTS FOR TRIAL 2 (Doc. No. 1903)* (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C, # 4 Appendix D, # 5 Appendix E, # 6 Appendix F, # 7 Appendix G, # 8 Appendix H)(Castle, James) (Entered: 03/09/2018) |
| 03/09/2018 | 1910 | | RESPONSE by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez as to Billy Garcia re 1903 Notice (Other),, *GENERAL RESPONSE TO UNITED STATES NOTICE OF PROPOSED JAMES STATEMENTS FOR TRIAL 2 (Doc. 1903)* (Castle, James) (Entered: 03/09/2018) |
| 03/09/2018 | 1922 | | Waiver of IAD antishuttling rights by Anthony Ray Baca (vv) (Entered: 03/12/2018) |
| 03/09/2018 | 1923 | | Waiver of IAD antishuttling rights by Carlos Herrera (vv) (Entered: 03/12/2018) |
| 03/09/2018 | 1924 | | Waiver of IAD antishuttling rights by Rudy Perez (vv) (Entered: 03/12/2018) |
| 03/09/2018 | 1925 | | Waiver of IAD antishuttling rights by Daniel Sanchez (vv) (Entered: 03/12/2018) |
| 03/09/2018 | 1929 | | COURT'S SUPPLEMENTAL JURY INSTRUCTION by District Judge James O. Browning (vv) (Entered: 03/13/2018) |
| 03/10/2018 | 1911 | | MOTION to Quash *Subpoena to NMCD* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Beck, Matthew) (Entered: 03/10/2018) |
| 03/10/2018 | 1912 | | [CASE PARTICIPANTS] MOTION in Limine *SEALED re Statements against Penal Interest under Rule 804(b)(3)* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 5–9–14 Interview of |

| | | | |
|---|---|---|---|
| | | | Government Informant, # 2 8–5–15 Interview of Government Informant)(Beck, Matthew) (Entered: 03/10/2018) |
| 03/11/2018 | 1913 | | NOTICE *RESPONSE TO UNITED STATES NOTICE OF PROPOSED JAMES STATEMENTS FOR TRIAL II (Doc. 1901)* by Shauna Gutierrez (Arellanes, Angela) (Entered: 03/11/2018) |
| 03/11/2018 | 1914 | | NOTICE *RESPONSE TO UNITED STATES NOTICE OF PROPOSED JAMES STATEMENTS FOR TRIAL II (Doc. 1901)* by Shauna Gutierrez (Arellanes, Angela) (Entered: 03/11/2018) |
| 03/11/2018 | 1915 | | [CASE PARTICIPANTS] First MOTION in Limine *to Exclude "Bad Acts"* by Andrew Gallegos as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Appendix Government List of Acts)(Roberts, Donavon) (Entered: 03/11/2018) |
| 03/11/2018 | 1916 | | RESPONSE by Christopher Chavez *to Notice of James Statements for Trial 2* (Granberg, John) (Entered: 03/11/2018) |
| 03/11/2018 | 1917 | | [CASE PARTICIPANTS] RESPONSE by Andrew Gallegos as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1903 Notice (Other),, 1914 Notice (Other), 1910 Response, 1909 Response, 1913 Notice (Other) (Roberts, Donavon) (Entered: 03/11/2018) |
| 03/12/2018 | 1918 | | RESPONSE by Joe Lawrence Gallegos as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re 1903 Notice (Other),, (Benjamin, Brock) (Entered: 03/12/2018) |
| 03/12/2018 | 1919 | | [CASE PARTICIPANTS] Emergency MOTION to Quash *Writ and Request to file Motion sealed and for Telephonic hearing* by Fred Quintana as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, |

| | | | |
|---|---|---|---|
| | | | Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Sapien, Phillip) (Entered: 03/12/2018) |
| 03/12/2018 | 1920 | | [CASE PARTICIPANTS] NOTICE *RESPONSE TO UNITED STATES NOTICE OF PROPOSED JAMES STATEMENTS FOR TRIAL II* by Edward Troup re 1903 Notice (Other),, (Harbour–Valdez, Cori) (Entered: 03/12/2018) |
| 03/12/2018 | 1921 | | MOTION to Quash subpoenas by Jim and Cheryl Moore as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (vv) (Entered: 03/12/2018) |
| 03/12/2018 | 1926 | | ORDER allowing defense staff to bring in cell phones inside the courthouse as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez by District Judge James O. Browning (vv) (Entered: 03/12/2018) |
| 03/12/2018 | 1927 | | [APPLICABLE PARTY] Sealed ex parte Budget Supplement ORDER as to Christopher Chavez by District Judge James O. Browning (vv) (Entered: 03/13/2018) |
| 03/12/2018 | 1928 | | [APPLICABLE PARTY] Sealed ex parte Budget ORDER as to Brandy Rodriguez by District Judge James O. Browning (vv) (Entered: 03/13/2018) |
| 03/12/2018 | 1932 | | [CASE PARTICIPANTS] *SEALED* Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Trial as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez held on 3/12/2018 (Court Reporter: J. Bean) (vv) (Entered: 03/13/2018) |
| 03/12/2018 | 1937 | | JURY VERDICT as to defendants (vv) (Entered: 03/14/2018) |
| 03/12/2018 | 1963 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motions Hearing held on 3/12/2018 – 3/16/18 re all pending motions as to all defendants (Court Reporter: J. Bean) (vv) (Entered: 03/23/2018) |
| 03/13/2018 | 1930 | | [CASE PARTICIPANTS] NOTICE *of NonAvailability* by Fred Quintana as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry |

| | | | |
|---|---|---|---|
| | | | Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Sapien, Phillip) (Entered: 03/13/2018) |
| 03/13/2018 | 1934 | | [APPLICABLE PARTY] Ex parte ORDER by District Judge James O. Browning granting 1905 Motion for Order as to Angel DeLeon (1), Joe Lawrence Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Caleb Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24), Carlos Herrera (25), Rudy Perez (26), Andrew Gallegos (27), Santos Gonzalez (28), Paul Rivera (29), Shauna Gutierrez (30), Brandy Rodriguez (31) (vv) (Entered: 03/13/2018) |
| 03/13/2018 | 1935 | | [APPLICABLE PARTY] Ex Parte ORDER in support of request for tablet shipping and accessories by District Judge James O. Browning granting 1904 Motion for Order as to Angel DeLeon (1), Joe Lawrence Gallegos (2), Edward Troup (3), Leonard Lujan (4), Billy Garcia (5), Eugene Martinez (6), Allen Patterson (7), Christopher Chavez (8), Javier Alonso (9), Arturo Arnulfo Garcia (10), Benjamin Clark (11), Ruben Hernandez (12), Jerry Armenta (13), Jerry Montoya (14), Mario Rodriguez (15), Timothy Caleb Martinez (16), Mauricio Varela (17), Daniel Sanchez (18), Gerald Archuleta (19), Conrad Villegas (20), Anthony Ray Baca (21), Robert Martinez (22), Roy Paul Martinez (23), Christopher Garcia (24), Carlos Herrera (25), Rudy Perez (26), Andrew Gallegos (27), Santos Gonzalez (28), Paul Rivera (29), Shauna Gutierrez (30), Brandy Rodriguez (31) (vv) (Entered: 03/13/2018) |
| 03/13/2018 | 1936 | | NOTICE *of Objection to Proposed Courtroom Seating Arrangement* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez as to Billy Garcia (Castle, James) (Entered: 03/13/2018) |
| 03/14/2018 | 1938 | | [CASE PARTICIPANTS] SEALED EMAIL as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (vv) Modified on 3/14/2018 (vv). (Entered: 03/14/2018) |
| 03/14/2018 | 1939 | | [CASE PARTICIPANTS] RESPONSE by Allen Patterson re 1903 Notice (Other),, *Allen Patterson's Response to US Notice of Proposed James Statements* (Lahann, Jeffrey) (Entered: 03/14/2018) |
| 03/15/2018 | 1940 | | |

| | | | |
|---|---|---|---|
| | | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting <u>1908</u> Motion for Order as to Edward Troup (3), Billy Garcia (5) (vv) (Entered: 03/15/2018) |
| 03/15/2018 | <u>1941</u> | | ORDER by District Judge James O. Browning re: Penitentiary of New Mexico North phone calls as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (cab) (Entered: 03/15/2018) |
| 03/15/2018 | <u>1942</u> | | ORDER by District Judge James O. Browning re: New Mexico Department of Corrections phone calls as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (cab) (Entered: 03/15/2018) |
| 03/15/2018 | <u>1943</u> | | Unopposed MOTION for Extension of Time to File *Rule 29 and Rule 33 motions* by Anthony Ray Baca as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera. (Duncan, Theresa) (Entered: 03/15/2018) |
| 03/15/2018 | <u>1944</u> | | NOTICE *United States' Notice Regarding James Statements From Trial 1* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # <u>1</u> Exhibit)(Armijo, Maria) (Entered: 03/15/2018) |
| 03/16/2018 | <u>1945</u> | | ORDER by District Judge James O. Browning granting <u>1943</u> Motion for Extension of Time to File as to Daniel Sanchez (18), Anthony Ray Baca (21), Carlos Herrera (25) (vv) (Entered: 03/16/2018) |
| 03/16/2018 | <u>1946</u> | | RETURN OF EXHIBITS to counsel (vv) (Entered: 03/16/2018) |
| 03/16/2018 | <u>1947</u> | | RETURN OF EXHIBITS to counsel (vv) (Entered: 03/16/2018) |
| 03/16/2018 | <u>1948</u> | | [CASE PARTICIPANTS] MOTION to Bifurcate *Counts 4 and 5 from Counts 1–3 and 13–16* by Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Shauna Gutierrez as to Billy Garcia. (Castle, James) (Entered: 03/16/2018) |
| 03/16/2018 | <u>1949</u> | | |

| | | | |
|---|---|---|---|
| | | | NOTICE *of Waiver of Conflict of Interest and Consent to Be Represented by Gary C. Mitchell Attorney at Law* by Jerry Armenta (Mitchell, Gary) (Entered: 03/16/2018) |
| 03/16/2018 | 1950 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning denying request in 1903 Notice 1918 Response, as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (vv) (Entered: 03/16/2018) |
| 03/19/2018 | 1951 | | [CASE PARTICIPANTS] SEALED STIPULATED PROTECTIVE ORDER by District Judge James O. Browning as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (cab) (Entered: 03/19/2018) |
| 03/19/2018 | 1952 | | [CASE PARTICIPANTS] SEALED STIPULATED PROTECTIVE ORDER by District Judge James O. Browning as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (cab) (Entered: 03/19/2018) |
| 03/19/2018 | 1953 | | Unopposed MOTION *to Redact Portions of Clerks Minutes (Docs 1780 and 1932)* by USA as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez. (Beck, Matthew) (Entered: 03/19/2018) |
| 03/20/2018 | 1954 | | ORDER by District Judge James O. Browning as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (cab) (Entered: 03/20/2018) |
| 03/21/2018 | 1955 | | ORDER to redact portions of the clerk's minutes by District Judge James O. Browning granting 1953 Motion as to Daniel Sanchez (18), Anthony Ray Baca (21), Carlos Herrera (25), Rudy Perez (26) (vv) (Entered: 03/21/2018) |

| 03/21/2018 | 1956 | | Joint MOTION for Extension of Time to File *Parties Agreed and Disputed Challenges for Cause or Hardship* by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez. (Harbour–Valdez, Cori) (Entered: 03/21/2018) |
|---|---|---|---|
| 03/22/2018 | 1957 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Jerry Armenta (Attachments: # 1 Attachment A)<br><br>Related Documents: 802 Plea Agreement<br>(Kord, Amy) (Entered: 03/22/2018) |
| 03/22/2018 | 1959 | | [CASE PARTICIPANTS] Emergency MOTION to Withdraw as Attorney by Scott M. Davidson by Arturo Arnulfo Garcia. (Davidson, Scott) (Entered: 03/22/2018) |
| 03/23/2018 | 1961 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Timothy Caleb Martinez (Attachments: # 1 Attachment A to the Presentence Report)<br><br>Related Documents: 852 Plea Agreement<br>(Kuhn, Wesley) (Entered: 03/23/2018) |
| 03/23/2018 | 1964 | | [APPLICABLE PARTY] Sealed ex parte ORDER as to Billy Garcia by District Judge James O. Browning (Attachments: # 1 Exhibit)(vv) (Entered: 03/23/2018) |
| 03/23/2018 | 1965 | | Joint MOTION to Extend (other) *March 23, 2018 Filing Deadline* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez. (Armijo, Maria) (Entered: 03/23/2018) |
| 03/23/2018 | 1966 | | Proposed Jury Instructions by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Castellano, Randy) (Entered: 03/23/2018) |
| 03/23/2018 | 1967 | | Proposed Voir Dire by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Beck, Matthew) (Entered: 03/23/2018) |
| 03/23/2018 | 1968 | | [CASE PARTICIPANTS] WITNESS LIST by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Armijo, Maria) (Entered: 03/23/2018) |
| 03/23/2018 | 1969 | | Proposed Voir Dire by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Harbour–Valdez, Cori) (Entered: 03/23/2018) |
| 03/23/2018 | 1970 | | Proposed Jury Instructions by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Harbour–Valdez, Cori) (Entered: 03/23/2018) |

| 03/24/2018 | 1971 | | [CASE PARTICIPANTS] EXHIBIT LIST by Edward Troup as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Harbour–Valdez, Cori) (Entered: 03/24/2018) |
| --- | --- | --- | --- |
| 03/26/2018 | 1972 | | ORDER by District Judge James O. Browning granting 1956 Motion for Extension of Time to File as to Joe Lawrence Gallegos (2), Edward Troup (3), Billy Garcia (5), Allen Patterson (7), Christopher Chavez (8), Arturo Arnulfo Garcia (10), Andrew Gallegos (27), Shauna Gutierrez (30) (vv) (Entered: 03/26/2018) |
| 03/26/2018 | 1974 | | MINUTE ORDER, pursuant to the direction of District Judge James O. Browning, RESCINDING THE ORDER GRANTING JOINT MOTION TO EXTEND THE DEADLINE TO FILE THE PARTIES' AGREED AND DISPUTED CHALLENGES FOR CAUSE OR HARDSHIP 1972 and reinstating the deadlines related to Group 2's disclosure of juror questionnaires, the submission of the parties' agreed and disputed challenges and the Court's ruling on said challenges as previously provided on March 2, 2018. The sole modification to these deadlines is to require the parties to provide their agreed and disputed for cause challenges to the Court no later than 12:00 p.m. on 03/27/2018. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/26/2018) |
| 03/26/2018 | 1975 | | NOTICE OF JURY TRIAL as to Defendants Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos and Shauna Gutierrez resuming from 4/10/2018 through 6/1/2018 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/26/2018) |
| 03/26/2018 | 1976 | | NOTICE *of Other Crimes or Bad Acts Pursuant to Rule 404(b)* by USA as to Edward Troup (Castellano, Randy) (Entered: 03/26/2018) |
| 03/26/2018 | 1977 | | MOTION in Limine by USA as to Joe Lawrence Gallegos. (Attachments: # 1 1 – Register of Actions)(Armijo, Maria) (Entered: 03/26/2018) |
| 03/26/2018 | 1978 | | MOTION in Limine *to Admit Out–of–Court Statements* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez. (Armijo, Maria) (Entered: 03/26/2018) |
| 03/26/2018 | 1979 | | EXHIBIT LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Armijo, Maria) (Entered: 03/26/2018) |
| 03/26/2018 | 1980 | | [CASE PARTICIPANTS] WITNESS LIST by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Cooper, Robert) (Entered: 03/26/2018) |
| 03/27/2018 | 1981 | | [CASE PARTICIPANTS] NOTICE *Sealed Joint Stipulations for Cause and/or Hardship for Disclosure #2* by Joe Lawrence Gallegos, Edward |

| | | |
|---|---|---|
| | | Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Attachments: # 1 Appendix Stipulated Hardship & Cause Challenges Disclosure #2)(Harbour–Valdez, Cori) (Entered: 03/27/2018) |
| 03/27/2018 | 1982 | [CASE PARTICIPANTS] NOTICE *Sealed Joint Stipulations for Cause and/or Hardship for Disclosure #1* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Attachments: # 1 Appendix Stipulated Hardship & Cause Challenges Disclosure #1)(Harbour–Valdez, Cori) (Entered: 03/27/2018) |
| 03/27/2018 | 1983 | [CASE PARTICIPANTS] NOTICE *United States' Sealed Notice of Excusal for Cause or Hardship Trial II* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 03/27/2018) |
| 03/27/2018 | 1984 | [CASE PARTICIPANTS] FILED IN ERROR–NOTICE *Sealed Joint Stipulations for Cause and/or Hardship for Disclosure #1* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Attachments: # 1 Appendix Stipulated Hardship & Cause Challenges Disclosure #1)(Harbour–Valdez, Cori) Modified on 3/27/2018 (vv). (Entered: 03/27/2018) |
| 03/27/2018 | 1985 | [CASE PARTICIPANTS] MOTION for Order *to Obtain Physical and Mental Health Records* by Edward Troup, Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit A, # 2 Protective Order, # 3 Proposed Order)(Burke, Patrick) (Entered: 03/27/2018) |
| 03/27/2018 | 1986 | [CASE PARTICIPANTS] NOTICE *Sealed Trial Two Defendants' Joint Submission Regarding Non–Stipulated Hardship and Cause Challenges from Disclosures 1 and 2* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Harbour–Valdez, Cori) (Entered: 03/27/2018) |
| 03/27/2018 | 1988 | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Shauna Gutierrez: Change of Plea Hearing set for 3/29/2018 at 11:00 AM in Las Cruces, NM – 360 Dona Ana Courtroom (South Tower) before Magistrate Judge Gregory B. Wormuth. (kls) **COPIES OF ALL PLEA DOCUMENTS MUST BE PROVIDED TO** |

| | | |
|---|---|---|
| | | **THE COURTROOM DEPUTY 24 HOURS PRIOR TO THE COURT DATE.**<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 03/27/2018) |
| 03/27/2018 | 1989 | [CASE PARTICIPANTS] NOTICE *United States' Amended Sealed Notice of Excusal for Cause or Hardship Trial II* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 03/27/2018) |
| 03/27/2018 | 1990 | [CASE PARTICIPANTS] NOTICE *Sealed Joint Stipulations for Cause and/or Hardship for Disclosure #3* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Attachments: # 1 Appendix Stipulated Hardship & Cause Challenges Disclosure #3)(Harbour–Valdez, Cori) (Entered: 03/27/2018) |
| 03/27/2018 | 1991 | [CASE PARTICIPANTS] NOTICE *Sealed Joint Stipulations for Cause and/or Hardship for Disclosure #4* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Attachments: # 1 Appendix Stipulated Hardship & Cause Challenges Disclosure #4)(Harbour–Valdez, Cori) (Entered: 03/27/2018) |
| 03/28/2018 | 1992 | [CASE PARTICIPANTS] NOTICE *Sealed Trial Two Defendants' Joint Submission Regarding Non–Stipulated Hardship and Cause Challenges from Disclosures 3 and 4* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos, Shauna Gutierrez (Harbour–Valdez, Cori) (Entered: 03/28/2018) |
| 03/28/2018 | 1993 | [CASE PARTICIPANTS] NOTICE *TO THE COURT, REQUEST FOR ORDER COMPELLING DISCLOSURE AND MOTION TO STRIKE CERTAIN WITNESSES* by Billy Garcia (Attachments: # 1 Appendix A, # 2 Appendix B)(Castle, James) (Entered: 03/28/2018) |
| 03/28/2018 | 1994 | NOTICE *EDWARD TROUPS OBJECTION TO THE GOVERNMENTS NOTICE OF OTHER CRIMES OR BAD ACTS PURSUANT TO RULE 404(b) [Doc. 1976]* by Edward Troup (Harbour–Valdez, Cori) (Entered: 03/28/2018) |
| 03/28/2018 | 1995 | NOTICE of motion hearing on all pending motions as to Group 2 Defendants scheduled for 4/4/2018 and 4/5/2018 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. An itemized agenda of the specific motions/matters to be heard will issue separately.(cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>Modified on 4/2/2018 to include 4/5/18(cab). (Entered: 03/28/2018) |
| 03/29/2018 | 1996 | |

| | | | |
|---|---|---|---|
| | | | MOTION for Order to Show Cause *as to Why the Custodian for Bernalillo County Sheriff's Department Should Not be Held in Contempt* by Billy Garcia. (Castle, James) (Entered: 03/29/2018) |
| 03/29/2018 | 1997 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning, granting in part and denying in part the requests in the United States Amended Sealed Notice of Excusal for Cause or Hardship Trial II, Doc. 1989 (United States Excusals) and the Trial Two Defendants Submission Regarding Non–Stipulated Hardship and Cause Challenges From Disclosures 1 & 2, Doc. 1986 (Defendants Challenges), and granting the requests in the Trial Two Defendants Submission Regarding Non–Stipulated Hardship and Cause Challenges from Disclosures #3 and #4, Doc. 1992 . (kdh) (Entered: 03/29/2018) |
| 03/29/2018 | 1998 | | NOTICE of EMAIL COMMUNICATIONS as to applicable court reporting rates related to compensation for realtime transcript/feeds. (kdh) (Entered: 03/29/2018) |
| 03/29/2018 | 1999 | | [APPLICABLE PARTY] ORDER by District Judge James O. Browning granting 1973 Motion to Seal Document as to Daniel Sanchez (18) (kdh) (Entered: 03/29/2018) |
| 03/29/2018 | 2000 | | REPLY by USA as to Edward Troup re 1994 Notice (Other) *to the United States' Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b)* 1976 (Armijo, Maria) (Entered: 03/29/2018) |
| 03/29/2018 | 2001 | | RESPONSE in Opposition by USA as to Billy Garcia re 1948 MOTION to Bifurcate *Counts 4 and 5 from Counts 1–3 and 13–16* (Armijo, Maria) (Entered: 03/29/2018) |
| 03/29/2018 | 2002 | | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE IN A FELONY CASE by Shauna Gutierrez. (kls) (Entered: 03/30/2018) |
| 03/29/2018 | 2003 | | PLEA AGREEMENT as to Shauna Gutierrez. (kls) (Entered: 03/30/2018) |
| 03/29/2018 | 2004 | | Clerk's Minutes for proceedings held before Magistrate Judge Gregory B. Wormuth: Plea Hearing held on 3/29/2018 as to Shauna Gutierrez (30); Guilty plea entered to Counts 14s, 15s and 16s of the Second Superseding Indictment; Sentencing hearing to be set; Defendant in custody. (LCR–Dona Ana) (kls) (Entered: 03/30/2018) |
| 03/30/2018 | 2005 | | [CASE PARTICIPANTS] WITNESS LIST by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Cooper, Robert) (Entered: 03/30/2018) |
| 03/31/2018 | 2007 | | [CASE PARTICIPANTS] RESPONSE in Opposition by Edward Troup re 1912 MOTION in Limine *SEALED re Statements against Penal Interest under Rule 804(b)(3)* (Harbour–Valdez, Cori) (Entered: 03/31/2018) |
| 03/31/2018 | 2009 | | [CASE PARTICIPANTS] Supplement *Billy Garcia's Targeted Response to United States' Notice of Proposed James Statements for Trial 2 [Doc. 1903]* by Billy Garcia. (Attachments: # 1 Appendix A, # 2 Appendix B)(Castle, James) Modified text on 4/2/2018 (kg). (Entered: 03/31/2018) |
| 03/31/2018 | 2010 | | [CASE PARTICIPANTS] Unopposed MOTION for Order *for Copy of Sealed Transcripts* by Billy Garcia as to Joe Lawrence Gallegos, Edward |

| | | | |
|---|---|---|---|
| | | | Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos. (Cooper, Robert) (Entered: 03/31/2018) |
| 04/01/2018 | 2011 | | [CASE PARTICIPANTS] MOTION to Strike *Government Witnesses* by Edward Troup as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit A)(Burke, Patrick) (Entered: 04/01/2018) |
| 04/01/2018 | 2012 | | [CASE PARTICIPANTS] MOTION to Strike *Government Witness* by Edward Troup as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Burke, Patrick) (Entered: 04/01/2018) |
| 04/02/2018 | 2014 | | [APPLICABLE PARTY] EX PARTE BUDGET SUPPLEMENT ORDER by District Judge James O. Browning as to Defendant Benjamin Clark (Attachments: # 1 Exhibit)(cab) (Entered: 04/02/2018) |
| 04/02/2018 | 2015 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 1987 Writ of Habeas Corpus Ad Testificandum for Fred Quintana. (kdh) (Entered: 04/02/2018) |
| 04/02/2018 | 2016 | | [APPLICABLE PARTY] **FILED IN ERROR** EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Fred Quintana for 04/04/18 through 04/05/18 in case as to Billy Garcia. (kdh) Modified on 4/2/2018 (document needs to be signed)(kdh). (Entered: 04/02/2018) |
| 04/02/2018 | 2017 | | [CASE PARTICIPANTS] NOTICE *SUPPLEMENTAL JOINT NOTICE OF STIPULATED HARDSHIP AND CAUSE CHALLENGES* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) (Entered: 04/02/2018) |
| 04/02/2018 | 2018 | | [APPLICABLE PARTY] EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Fred Quintana for 04/04/18 in case as to Billy Garcia. (kdh) (Entered: 04/02/2018) |
| 04/02/2018 | 2019 | | [CASE PARTICIPANTS] NOTICE *SECOND SUPPLEMENTAL JOINT NOTICE OF STIPULATED HARDSHIP AND CAUSE CHALLENGES* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) (Entered: 04/02/2018) |
| 04/02/2018 | 2020 | | |

| | | | |
|---|---|---|---|
| | | | [APPLICABLE PARTY] EMAIL from US Marshal as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Arturo Arnulfo Garcia, Christopher Garcia, Andrew Gallegos (cab) (Entered: 04/02/2018) |
| 04/02/2018 | 2021 | | RESPONSE by Andrew Gallegos re 1979 Exhibit List (Torraco, Lisa) (Entered: 04/02/2018) |
| 04/03/2018 | 2022 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 2006 Writ of Habeas Corpus ad Testificandum for Joseph Otero. (kdh) [Provided 3 certified copies to the USMS via hand delivery] Modified on 4/3/2018 (kdh). (Entered: 04/03/2018) |
| 04/03/2018 | 2023 | | [APPLICABLE PARTY] SEALED EX PARTE ORDER by District Judge James O. Browning granting 2008 Writ of Habeas Corpus ad Testificandum for Josh Mirka. (kdh) [Provided 3 certified copies to the USMS via hand delivery] Modified on 4/3/2018 (kdh). (Entered: 04/03/2018) |
| 04/03/2018 | 2024 | | [APPLICABLE PARTY] EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Joseph Otero for 04/04/18 in case as to Billy Garcia (kdh)[Provided the original and two copies to the USMS via hand delivery] Modified on 4/3/2018 (kdh). (Entered: 04/03/2018) |
| 04/03/2018 | 2025 | | [APPLICABLE PARTY] EX PARTE Writ of Habeas Corpus ad Testificandum Issued as to Josh Mirka for 04/04/18 in case as to Billy Garcia (kdh) [Provided the original and two copies to the USMS via hand delivery] Modified on 4/3/2018 (kdh). (Entered: 04/03/2018) |
| 04/03/2018 | 2026 | | TRANSCRIPT of Motion Proceedings held on March 12, 2018 as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 03/12/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) Modified text on 4/4/2018 (kg). (Entered: 04/03/2018) |
| 04/03/2018 | 2027 | | TRANSCRIPT of Motion Proceedings held on March 13, 2018 as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 03/13/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) Modified text on 4/4/2018 (kg). (Entered: 04/03/2018) |
| 04/03/2018 | 2028 | | TRANSCRIPT of Motion Proceedings held on March 14, 2018 as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 03/14/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven** |

| | | | |
|---|---|---|---|
| | | | **(7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) Modified text on 4/4/2018 (kg). (Entered: 04/03/2018) |
| 04/03/2018 | 2029 | | TRANSCRIPT of Motion Proceedings held on March 15, 2018 as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 03/15/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>       **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) Modified text on 4/4/2018 (kg). (Entered: 04/03/2018) |
| 04/03/2018 | 2030 | | TRANSCRIPT of Motion Proceedings held on March 16, 2018 as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, |

| | | | |
|---|---|---|---|
| | | | Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 03/16/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) Modified text on 4/4/2018 (kg). (Entered: 04/03/2018) |
| 04/03/2018 | 2031 | | [CASE PARTICIPANTS] RESPONSE to Motion by Joe Lawrence Gallegos re 1977 MOTION in Limine *Response to Motion in Limine – Doc 1977* (Benjamin, Brock) Modified security on 4/3/2018 (vh). (Entered: 04/03/2018) |
| 04/03/2018 | 2033 | | [CASE PARTICIPANTS] ORDER by District Judge James O. Browning granting 2010 Unopposed MOTION for Order for Copy of Sealed Transcripts as to Billy Garcia (5). (kdh) (Entered: 04/03/2018) |
| 04/03/2018 | 2034 | | TRANSCRIPT of Excerpt of Testimony of Mario Montoya Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/20/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day** |

| | | | |
|---|---|---|---|
| | | | **period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2035 | | TRANSCRIPT of Excerpt of Testimony of Roy Martinez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/16/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2036 | | TRANSCRIPT Excerpt of Testimony of Jerry Ray Armenta as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/8–9 and 12/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed |

| | | | |
|---|---|---|---|
| | | | at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2037 | | TRANSCRIPT Excerpt of Testimony of Gerald Archuleta and 104 Hearing as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/14/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2038 | | CERTIFICATE of Compliance with Subpoena by Bernalillo County Sheriff's Office re 1996 MOTION for Order to Show Cause *as to Why the Custodian for Bernalillo County Sheriff's Department Should Not be Held in Contempt.* |

| | | | |
|---|---|---|---|
| | | | (Attachments: # 1 Exhibit A, # 2 Exhibit B)(kg) (Entered: 04/03/2018) |
| 04/03/2018 | 2039 | | TRANSCRIPT Excerpt of Testimony of Bryan Acee as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 01/31/18 and 02/01/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2040 | | TRANSCRIPT of Opening Statements as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 01/31/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript** |

| | | | |
|---|---|---|---|
| | | | **electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2041 | | TRANSCRIPT Excerpt of Testimony of Mario Rodriguez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/7–8/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2042 | | [CASE PARTICIPANTS] NOTICE *THIRD SUPPLEMENTAL JOINT NOTICE OF STIPULATED HARDSHIP AND CAUSE CHALLENGES* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) (Entered: 04/03/2018) |
| 04/03/2018 | 2043 | | TRANSCRIPT Excerpt of Testimony of Eric Preston Duran as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul |

| | | | |
|---|---|---|---|
| | | | Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/20–22/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2044 | | TRANSCRIPT Excerpt of Testimony of Nancy Stemo as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/27–28/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |

| | | | |
|---|---|---|---|
| 04/03/2018 | 2045 | | TRANSCRIPT Excerpt of Testimony of Billy Cordova as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/22–23/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2046 | | TRANSCRIPT Excerpt of Testimony of Manuel Armijo as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/1–2 and 8/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days.** |

| | | | |
|---|---|---|---|
| | | | **For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2047 | | TRANSCRIPTExcerpt of Testimony of Jerry Montoya as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/12–13/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2048 | | MOTION in Limine *to Prohibit Government from Introducing Evidence of Allgeged* by Andrew Gallegos. (Attachments: # 1 Appendix A)(Torraco, Lisa) (Entered: 04/03/2018) |
| 04/03/2018 | 2049 | | TRANSCRIPT Excerpt of Testimony of Benjamin Clark as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/27/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the |

| | | | |
|---|---|---|---|
| | | | Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/10/2018. Redaction Request due 4/24/2018. Redacted Transcript Deadline set for 5/4/2018. Release of Transcript Restriction set for 7/2/2018. (jab) (Entered: 04/03/2018) |
| 04/03/2018 | 2050 | | RESPONSE to Motion by Andrew Gallegos re 1978 MOTION in Limine *to Admit Out–of–Court Statements* (Torraco, Lisa) (Entered: 04/03/2018) |
| 04/03/2018 | 2051 | | [CASE PARTICIPANTS] RESPONSE by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos re 2009 Supplement *Billy Garcia's Targeted Response to United States' Notice of Proposed James Statements for Trial 2 [Doc. 1903]* (Beck, Matthew) (Entered: 04/03/2018) |
| 04/03/2018 | 2052 | | MOTION to Compel *Disclosure* by Billy Garcia. (Castle, James) (Entered: 04/03/2018) |
| 04/03/2018 | 2053 | | MOTION to Withdraw Document 1936 Notice (Other), 1996 MOTION for Order to Show Cause *as to Why the Custodian for Bernalillo County Sheriff's Department Should Not be Held in Contempt* by Billy Garcia. (Castle, James) (Entered: 04/03/2018) |
| 04/04/2018 | 2054 | | TRANSCRIPT Excerpt of Testimony of Timothy Martinez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/13/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request** |

| | | | |
|---|---|---|---|
| | | | **Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2055 | | TRANSCRIPT Excerpt of Testimony of Javier Rubio as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/02/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2056 | | TRANSCRIPT Excerpt of Testimony of David Calbert as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 2 & 5 2018, before District |

| | | | |
|---|---|---|---|
| | | | Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2057 | | TRANSCRIPT Excerpt of Testimony of Norman Rhoades as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/05/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018.(jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2058 | | TRANSCRIPT Excerpt of Testimony of Guadalupe Urquizo as to Angel |

| | | | |
|---|---|---|---|
| | | | DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 5 & 6 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2059 | | TRANSCRIPT Excerpt of Testimony of Julian Romero as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/14/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the** |

| | | | |
|---|---|---|---|
| | | | **complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2060 | | TRANSCRIPT Excerpt of Testimony of Frederico Munoz as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 14 & 15 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2061 | | MOTION for Writ of Habeas Corpus ad testificandum by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 04/04/2018) |
| 04/04/2018 | 2062 | | TRANSCRIPT Excerpt of Testimony of Robert Martinez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, |

| | | | |
|---|---|---|---|
| | | | Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 02/15/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2063 | | TRANSCRIPT Excerpt of Testimony of Bryan Acee as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 23 & 26 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2064 | | TRANSCRIPT Excerpt of Testimony of Joseph Sainato as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 1 & 2 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2388. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2065 | | TRANSCRIPT Excerpt of Testimony of Bryan Acee as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 03/02/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this** |

| | | | |
|---|---|---|---|
| | | | **transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/11/2018. Redaction Request due 4/25/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/3/2018. (jab) (Entered: 04/04/2018) |
| 04/04/2018 | 2066 | | RESPONSE re 1977 MOTION in Limine by Andrew Gallegos (Torraco, Lisa) Modified text on 4/4/2018 (kg). (Entered: 04/04/2018) |
| 04/04/2018 | 2068 | | ORDER by District Judge James O. Browning granting 2061 Motion for Writ of Habeas Corpus ad Testificandum for James Garcia. (Copies provided to USMS by VR) (kdh) (Entered: 04/04/2018) |
| 04/04/2018 | 2069 | | [CASE PARTICIPANTS] NOTICE *FOURTH SUPPLEMENTAL JOINT NOTICE OF STIPULATED HARDSHIP AND CAUSE CHALLENGES* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) (Entered: 04/04/2018) |
| 04/04/2018 | 2070 | | Writ of Habeas Corpus ad Testificandum Issued as to James Garcia for 04/05/18 in case as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Copies provided to USMS by VR) (kdh). (Entered: 04/04/2018) |
| 04/04/2018 | 2071 | | [CASE PARTICIPANTS] MOTION Determine whether defense counsel Billy Blackburn has an actual or potential conflict of interest by USA as to Arturo Arnulfo Garcia. (Attachments: # 1 Exhibit)(Armijo, Maria) (Entered: 04/04/2018) |
| 04/04/2018 | 2072 | | MOTION for Sanctions *in Relation to Motion to Dismiss [Doc. 1283]* by Billy Garcia. (Castle, James) (Entered: 04/04/2018) |
| 04/04/2018 | 2095 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing/Pretrial Conference held on 4/4/2018–4/5/2018 as to Defendants Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos. (Court Reporter: J. Bean) (Attachments: # 1 Exhibit List) (kdh) (Entered: 04/10/2018) |
| 04/04/2018 | 2102 | | LETTER to the Court from Attorney Gregg Fallick as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry |

| | | | |
|---|---|---|---|
| | | | Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (kdh) (Entered: 04/12/2018) |
| 04/05/2018 | 2073 | | [APPLICABLE PARTY] FILED IN ERROR–EX PARTE Budget Supplement Order by District Judge James O. Browning as to Shauna Gutierrez. (Attachments: # 1 Attachment) (kdh) Modified on 4/17/2018 (vv). (Entered: 04/05/2018) |
| 04/05/2018 | 2074 | | TRANSCRIPT of Change of Plea as to Ruben Hernandez held on February 1, 2017, before Magistrate Judge Gregory B. Wormuth. Court Reporter/Transcriber Exceptional Reporting Services, Inc., Telephone number (361) 949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 4/12/2018. Redaction Request due 4/26/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/5/2018.(dr) (Entered: 04/05/2018) |
| 04/05/2018 | 2075 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting in part 1985 MOTION for Order to Obtain Physical and Mental Health Records by Edward Troup and Billy Garcia. (kdh) (Entered: 04/05/2018) |
| 04/05/2018 | 2076 | | [CASE PARTICIPANTS] SEALED STIPULATED PROTECTIVE ORDER as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Caleb Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez by District Judge James O. Browning (kdh) (Entered: 04/05/2018) |
| 04/05/2018 | 2077 | | [APPLICABLE PARTY] FILED IN ERROR–EX PARTE Budget Supplement Order by District Judge James O. Browning as to Andrew Gallegos. (Attachments: # 1 Attachment) (kdh) Modified on 4/17/2018 (vv). |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/05/2018) |
| 04/05/2018 | 2078 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting 1977 Motion in Limine as to Joe Lawrence Gallegos (2); granting 1978 Motion in Limine as to Joe Lawrence Gallegos (2) (cab) (Entered: 04/05/2018) |
| 04/06/2018 | 2079 | | NOTICE of EMAIL COMMUNICATIONS as to applicable court reporting rates related to compensation for realtime transcript/feeds.(kdh) (Entered: 04/06/2018) |
| 04/06/2018 | 2081 | | Court's First Proposed Preliminary Jury Instructions by District Judge James O. Browning (cab) (Entered: 04/06/2018) |
| 04/06/2018 | 2082 | | NOTICE *of Joint Proposed Statement of the Case* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Castellano, Randy) (Entered: 04/06/2018) |
| 04/06/2018 | 2083 | | [CASE PARTICIPANTS] NOTICE *FIFTH SUPPLEMENTAL JOINT NOTICE OF STIPULATED HARDSHIP AND CAUSE CHALLENGES* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) (Entered: 04/06/2018) |
| 04/06/2018 | 2084 | | NOTICE *United States' Unopposed Notice of Removal of Witness* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Armijo, Maria) (Entered: 04/06/2018) |
| 04/06/2018 | 2085 | | [CASE PARTICIPANTS] BRIEF by Billy Garcia 1909 Response, filed by Billy Garcia, 2009 Supplement *Billy Garcia's Targeted Response to United States' Notice of Proposed James Statements for Trial 2 [Doc. 1903]* filed by Billy Garcia (Attachments: # 1 Exhibit Y, # 2 Exhibit W, # 3 Exhibit X, # 4 Exhibit Z)(Castle, James) (Entered: 04/06/2018) |
| 04/07/2018 | 2086 | | RESPONSE by USA as to Billy Garcia re 2085 Brief, (Beck, Matthew) (Entered: 04/07/2018) |
| 04/08/2018 | 2087 | | [CASE PARTICIPANTS] NOTICE *of Unavailability of Counsel* from 4/9–4/11/18 by Arturo Arnulfo Garcia (Davidson, Scott) Modified text on 4/9/2018 (kg). (Entered: 04/08/2018) |
| 04/09/2018 | 2088 | | EXHIBIT LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Armijo, Maria) (Entered: 04/09/2018) |
| 04/09/2018 | 2089 | | [CASE PARTICIPANTS] WITNESS LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Armijo, Maria) (Entered: 04/09/2018) |
| 04/09/2018 | 2090 | | NOTICE *of Non–Availability* by Conrad Villegas (Crow, B.J.) (Entered: 04/09/2018) |
| 04/09/2018 | 2091 | | |

| | | | |
|---|---|---|---|
| | | | [CASE PARTICIPANTS] WITNESS LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Armijo, Maria) (Entered: 04/09/2018) |
| 04/09/2018 | 2092 | | MOTION in Limine *Regarding the Testimony of Agent Acee* by Billy Garcia. (Castle, James) (Entered: 04/09/2018) |
| 04/09/2018 | 2093 | | NOTICE *of Objection to Government's Exhibits* by Billy Garcia re 1979 Exhibit List, 2088 Exhibit List (Castle, James) (Entered: 04/09/2018) |
| 04/09/2018 | 2324 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Trial as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos held on 4/9/2018 – 5/22/18. (Court Reporter: J. Bean) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (vv) (Entered: 06/06/2018) |
| 04/10/2018 | 2094 | | AMENDED ORDER by District Judge James O. Browning allowing defense staff to bring cellphones inside the courthouse. (kdh) (Entered: 04/10/2018) |
| 04/10/2018 | 2096 | | COURTS FIRST DRAFT OF TABLE TO BE INCLUDED IN THE IMPENDING MEMORANDUM OPINION AND ORDER REGARDING THE JAMES ISSUE (provided to the parties on April 4, 2018) (cab) Modified on 4/10/2018 (cab). (Entered: 04/10/2018) |
| 04/10/2018 | 2097 | | COURTS SECOND DRAFT OF TABLE TO BE INCLUDED IN THE IMPENDING MEMORANDUM OPINION AND ORDER REGARDING THE JAMES ISSUE(provided to the parties on April 9, 2018) (cab) (Entered: 04/10/2018) |
| 04/10/2018 | 2098 | | COURTS THIRD DRAFT OF TABLE TO BE INCLUDED IN THE IMPENDING MEMORANDUM OPINION AND ORDER REGARDING THE JAMES ISSUE(provided to the parties on April 9, 2018) (cab) (Entered: 04/10/2018) |
| 04/11/2018 | 2099 | | NOTICE *United States' Objection to Defendant Joe Lawrence Gallegos's Opening Statement Exhibits* by USA as to Joe Lawrence Gallegos (Armijo, Maria) (Entered: 04/11/2018) |
| 04/11/2018 | 2100 | | Unopposed MOTION to Unseal Case *Unopposed Motion to Unseal 16–MJ–993* by Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 04/11/2018) |
| 04/12/2018 | 2101 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting in part and denying in part 2071 Motion as to Arturo Arnulfo Garcia (10) (cab) (Entered: 04/12/2018) |
| 04/12/2018 | 2103 | | COURTS FOURTH DRAFT OF TABLE TO BE INCLUDED IN THE IMPENDING MEMORANDUM OPINION AND ORDER REGARDING THE JAMES ISSUE(provided to the parties on April 11, 2018) (cab) (Entered: 04/12/2018) |
| 04/12/2018 | 2104 | | [APPLICABLE PARTY] SEALED ORDER by District Judge James O. Browning granting Ex Parte Unopposed Supplemental Motion to Withdraw as Attorney for Daniel Sanchez. (kdh) (Entered: 04/12/2018) |

| 04/12/2018 | 2105 | | SECOND AMENDED ORDER by District Judge James O. Browning allowing defense staff to bring cellphones inside the courthouse.(kdh) (Entered: 04/12/2018) |
| 04/12/2018 | 2106 | | [CASE PARTICIPANTS] EXHIBIT LIST by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Attachments: # 1 Appendix)(Harbour–Valdez, Cori) (Entered: 04/12/2018) |
| 04/12/2018 | 2107 | | MOTION for Presentence Investigation Report *Not be Disclosed to Co–Defendants &/or 3rd Parties* by Frederico Munoz as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Lopez, Louis) (Entered: 04/12/2018) |
| 04/12/2018 | 2108 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning Related Document(s): 2099 (cab) (Entered: 04/12/2018) |
| 04/12/2018 | | | Attorney update in case as to Daniel Sanchez. Attorney Richard Jewkes terminated. (vv) (Entered: 04/24/2018) |
| 04/13/2018 | 2109 | | ORDER FOR PRODUCTION by District Judge James O. Browning. (kdh) (Entered: 04/13/2018) |
| 04/13/2018 | 2110 | | ORDER TO SHOW CAUSE by District Judge James O. Browning that within two business days of this Order, Counsel for the aforementioned witnesses shall show cause as to why any PSIRs, draft PSIRs, probation notes or other documentation related to the reparation of their clients PSIR, other than personal identifying information, should not be released to defendant Billy Garcia with a protective order that such materials shall not be shared with the defendants. (kdh) (Entered: 04/13/2018) |
| 04/13/2018 | 2111 | | [APPLICABLE PARTY] SEALED STIPULATED PROTECTIVE ORDER by District Judge James O. Browning as to Document 2010 Motion for Copy of Sealed Transcripts related to potential government witness Eugene Martinez. (kdh) (Entered: 04/13/2018) |
| 04/13/2018 | 2112 | | RESPONSE TO ORDER TO SHOW CAUSE by Frederico Munoz as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Lopez, Louis) (Entered: 04/13/2018) |
| 04/15/2018 | 2113 | | RESPONSE by Eugene Martinez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, |

| | | | |
|---|---|---|---|
| | | | Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez re <u>2110</u> Order to Show Cause, (Couleur, Douglas) (Entered: 04/15/2018) |
| 04/15/2018 | <u>2114</u> | | [CASE PARTICIPANTS] Opposed MOTION in Limine *TO ADMIT EVIDENCE INTRINSIC TO THE CRIMES CHARGED AND NOTICE OF OTHER CRIMES OR BAD ACTS PURSUANT TO RULE 404(b) [SEALED]* by USA as to Billy Garcia, Arturo Arnulfo Garcia. (Beck, Matthew) (Entered: 04/15/2018) |
| 04/15/2018 | <u>2115</u> | | TRIAL BRIEF by Billy Garcia (Castle, James) (Entered: 04/15/2018) |
| 04/15/2018 | <u>2116</u> | | MOTION to Exclude *Statement of Mario Rodriguez* by Arturo Arnulfo Garcia. (Davidson, Scott) (Entered: 04/15/2018) |
| 04/15/2018 | <u>2117</u> | | [CASE PARTICIPANTS] Unopposed MOTION *to Ensure Separation of Defendants and Incarcerated Cooperating Government Witnesses* by Allen Patterson as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Lahann, Jeffrey) (Entered: 04/15/2018) |
| 04/16/2018 | <u>2118</u> | | [APPLICABLE PARTY] Ex parte budget supplement and interim payment ORDER by District Judge James O. Browning granting <u>1960</u> Motion as to Christopher Chavez (8) (vv) (Entered: 04/16/2018) |
| 04/16/2018 | <u>2119</u> | | MEMORANDUM OPINION AND ORDER denying 2116 MOTION to Exclude *Statement of Mario Rodriguez* by District Judge James O. Browning (vv) (Entered: 04/16/2018) |
| 04/16/2018 | <u>2120</u> | | MOTION to Extend time to comply with subpoena by non party Bernalillo County District Attorney's Office (vv) (Entered: 04/16/2018) |
| 04/17/2018 | <u>2121</u> | | [CASE PARTICIPANTS] MOTION to Exclude *Witness Testimony* by Edward Troup as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Burke, Patrick) (Entered: 04/17/2018) |
| 04/17/2018 | <u>2122</u> | | Third Amended ORDER allowing defense staff to bring in cell phones inside the courthouse by District Judge James O. Browning (vv) (Entered: 04/17/2018) |

| 04/17/2018 | 2123 | | TRIAL BRIEF by Billy Garcia (Castle, James) (Entered: 04/17/2018) |
|---|---|---|---|
| 04/17/2018 | 2124 | | MOTION to Exclude *Testimony and Evidence Relating to Frankie Gallegos* by Andrew Gallegos. (Torraco, Lisa) (Entered: 04/17/2018) |
| 04/17/2018 | 2125 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Leonard Lujan (Attachments: # 1 Attachment A)<br><br>Related Documents: 963 Plea Agreement<br>(Lerma, Sarah) (Entered: 04/17/2018) |
| 04/17/2018 | 2127 | | APPLICATION *for Appointment of Co−Counsel* (Attachments: # 1 Exhibit Lauren Noriega C.V.)(Jacks, Amy) (Entered: 04/17/2018) |
| 04/17/2018 | 2128 | | [CASE PARTICIPANTS] NOTICE *United States' Sealed Notice Objecting to the Release of Sammy Griego's Medical Records* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 04/17/2018) |
| 04/17/2018 | 2129 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning Related Document(s): 2123 Trial Brief (cab) (Entered: 04/17/2018) |
| 04/17/2018 | 2130 | | NOTICE *of supplemental exhibit list* by Christopher Chavez (Granberg, John) (Entered: 04/17/2018) |
| 04/18/2018 | 2131 | | MEMORANDUM OPINION AND ORDER denying 2121 MOTION to Exclude *Witness Testimony* by District Judge James O. Browning (vv) (Entered: 04/18/2018) |
| 04/18/2018 | 2132 | | MEMORANDUM OPINION AND ORDER re opening statement by District Judge James O. Browning (vv) (Entered: 04/18/2018) |
| 04/18/2018 | 2133 | | MOTION to Quash *Subpoena* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit, # 2 Exhibit)(Granata, Joshua) (Entered: 04/18/2018) |
| 04/19/2018 | 2134 | | ORDER appointing Lauren Noriega as second counsel re 2127 Application filed by Daniel Sanchez by District Judge James O. Browning (vv) . (Entered: 04/19/2018) |
| 04/19/2018 | 2135 | | [CASE PARTICIPANTS] NOTICE *United States' Sealed Supplemental Notice of Proposed James Statements for Trial II* by USA as to Angel |

| | | |
|---|---|---|
| | | DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # 1 Exhibit)(Beck, Matthew) (Entered: 04/19/2018) |
| 04/19/2018 | 2136 | [CASE PARTICIPANTS] WITNESS LIST by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Armijo, Maria) (Entered: 04/19/2018) |
| 04/19/2018 | 2137 | [CASE PARTICIPANTS] WITNESS LIST by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Armijo, Maria) (Entered: 04/19/2018) |
| 04/19/2018 | 2148 | CJA Appointment of Attorney Lauren Noriega for Daniel Sanchez by District Judge James O. Browning (vv) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/24/2018) |
| 04/20/2018 | 2138 | [CASE PARTICIPANTS] TRIAL BRIEF by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Attachments: # 1 Exhibit Voir Dire Excerpt)(Beck, Matthew) (Entered: 04/20/2018) |
| 04/20/2018 | 2139 | [CASE PARTICIPANTS] TRIAL BRIEF by Arturo Arnulfo Garcia (Davidson, Scott) (Entered: 04/20/2018) |
| 04/20/2018 | 2140 | Court's Proposed Preliminary Jury Instruction Provided to Jury on 4/13/2018 (cab) (Entered: 04/20/2018) |
| 04/22/2018 | 2141 | MOTION to Exclude *Certain Statements by Joseph Otero* by Christopher Chavez. (Solis, Eduardo) (Entered: 04/22/2018) |
| 04/23/2018 | 2142 | [CASE PARTICIPANTS] MOTION in Limine *Regarding Alleged Hit by Billy Garcia on Gerald Archuleta* by Billy Garcia. (Castle, James) (Entered: 04/23/2018) |
| 04/23/2018 | 2143 | |

| | | | |
|---|---|---|---|
| | | | [APPLICABLE PARTY] EX PARTE BUDGET SUPPLEMENT ORDER as to Shauna Gutierrez by District Judge James O. Browning (Attachments: # 1 Supplement)(vv) (Entered: 04/23/2018) |
| 04/23/2018 | 2144 | | [APPLICABLE PARTY] EX PARTE BUDGET SUPPLEMENT ORDER as to Andrew Gallegos by District Judge James O. Browning (Attachments: # 1 Exhibit)(vv) (Entered: 04/23/2018) |
| 04/23/2018 | 2145 | | NOTICE of Objection by Javier Alonso as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Chambers, Nathan) (Entered: 04/23/2018) |
| 04/23/2018 | 2146 | | MOTION for Writ of Habeas Corpus ad testificandum by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Armijo, Maria) (Entered: 04/23/2018) |
| 04/24/2018 | 2147 | | [CASE PARTICIPANTS] WITNESS LIST by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos as to Billy Garcia (Castle, James) (Entered: 04/24/2018) |
| 04/24/2018 | 2149 | | [APPLICABLE PARTY] Sealed ex parte ORDER by District Judge James O. Browning granting 2080 Motion to Seal Document as to Daniel Sanchez (18) (vv) (Entered: 04/24/2018) |
| 04/24/2018 | 2150 | | TRANSCRIPT of 104 Hearing and Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 04/04/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request** |

| | | | |
|---|---|---|---|
| | | | **Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/1/2018. Redaction Request due 5/15/2018. Redacted Transcript Deadline set for 5/25/2018. Release of Transcript Restriction set for 7/23/2018. (jab) (Entered: 04/24/2018) |
| 04/24/2018 | 2151 | | Opposed MOTION to Continue *and/ or Adjourn Counts 4 and 5* by Andrew Gallegos as to Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 04/24/2018) |
| 04/24/2018 | 2152 | | MOTION to Exclude *Recordings of Certain Telephone Calls* by Arturo Arnulfo Garcia. (Davidson, Scott) (Entered: 04/24/2018) |
| 04/25/2018 | 2153 | | [CASE PARTICIPANTS] NOTICE *REGARDING DEFENDANTS CONTACT WITH WITNESSES ATTORNEYS CONCERNING THE DISCLOSURE OF MENTAL AND PHYSICAL HEALTH RECORDS* by Billy Garcia re 2075 Order on Motion for Order (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Castle, James) (Entered: 04/25/2018) |
| 04/25/2018 | 2161 | | MOTION Opposing Disclosure of Medical Records by Frederico Munoz as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Lopez, Louis) (Entered: 04/25/2018) |
| 04/25/2018 | 2162 | | MEMORANDUM OPINION AND ORDER denying 2141 MOTION to Exclude *Certain Statements by Joseph Otero* by District Judge James O. Browning (vv) (Entered: 04/25/2018) |
| 04/25/2018 | 2163 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning denying 2142 Motion in Limine as to Billy Garcia (5) (cab) (Entered: 04/25/2018) |
| 04/26/2018 | 2164 | | [CASE PARTICIPANTS] NOTICE *of Endorsement of Expert Witness* by Billy Garcia (Attachments: # 1 Appendix A)(Castle, James) (Entered: 04/26/2018) |
| 04/26/2018 | 2165 | | NOTICE *of Supplemental Exhibits List* by Christopher Chavez (Granberg, John) (Entered: 04/26/2018) |
| 04/26/2018 | 2166 | | [CASE PARTICIPANTS] MOTION for Order *Authorizing Disclosure of Records to Experts* by Billy Garcia. (Castle, James) (Entered: 04/26/2018) |
| 04/27/2018 | 2167 | | |

|  |  |  | ORDER by District Judge James O. Browning granting 2146 Motion for Writ of Habeas Corpus ad testificandum (vv) (Entered: 04/27/2018) |
|---|---|---|---|
| 04/27/2018 | 2168 |  | Writ of Habeas Corpus ad Prosequendum Issued for 4/30/18 (vv) (Entered: 04/27/2018) |
| 04/27/2018 | 2169 |  | SUPPLEMENTAL PROTECTIVE ORDER as to defendants by District Judge James O. Browning (vv) (Entered: 04/27/2018) |
| 04/27/2018 | 2172 |  | MEMO to all counsel from James O. Browning, United States District Judge (cab) (Entered: 04/27/2018) |
| 04/27/2018 | 2173 |  | COURT'S FIRST PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 04/27/2018) |
| 04/27/2018 | 2174 |  | COURT'S FIRST PROPOSED JURY INSTRUCTIONS (without citations) by District Judge James O. Browning (vv) (Entered: 04/27/2018) |
| 04/27/2018 | 2175 |  | MOTION to Exclude *Out of Court Statements Made by Adrian Burns* by Andrew Gallegos. (Torraco, Lisa) (Entered: 04/27/2018) |
| 04/27/2018 | 2176 |  | [CASE PARTICIPANTS] NOTICE *as requested by the Court (SEALED)* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Armijo, Maria) (Entered: 04/27/2018) |
| 04/27/2018 | 2177 |  | [CASE PARTICIPANTS] NOTICE *Regarding Defendants Proposed Jury Instruction Number 8 and Number 14* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) (Entered: 04/27/2018) |
| 04/27/2018 | 2178 |  | MEMORANDUM OPINION by District Judge James O. Browning Related document(s): 1985 MOTION for Order *to Obtain Physical and Mental Health Records* 2161 MOTION Opposing Disclosure of Medical Records . (cab) (Entered: 04/27/2018) |
| 04/30/2018 | 2179 |  | [CASE PARTICIPANTS] NOTICE *United States' Sealed Notice of Trial Schedule* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Attachments: # 1 Exhibit)(Armijo, Maria) (Entered: 04/30/2018) |
| 04/30/2018 | 2180 |  | Email defense memo re trial road map (vv) (Entered: 04/30/2018) |
| 04/30/2018 | 2181 |  | Email from James Castle order on motion to dismiss (vv) (Entered: 04/30/2018) |
| 04/30/2018 | 2182 |  | LETTER to Judge Browning on the CJA Managing Attorney (vv) (Entered: 04/30/2018) |
| 04/30/2018 | 2183 |  | AMENDED MEMORANDUM OPINION AND ORDER re 2178 Memorandum Opinion by District Judge James O. Browning (vv) (Entered: 04/30/2018) |
| 04/30/2018 | 2184 |  | COURT'S SECOND PROPOSED JURY INSTRUCTIONS (with Citations) by District Judge James O. Browning (vv) (Entered: 04/30/2018) |
| 04/30/2018 | 2185 |  |  |

| | | |
|---|---|---|
| | | FILED IN ERROR: Proposed Jury Instructions by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) Modified to add file in error text at attorney's request on 4/30/2018 (bc). (Entered: 04/30/2018) |
| 04/30/2018 | 2186 | Proposed Jury Instructions by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Attachments: # 1 Exhibit Proposed Instruction No. 13)(Harbour–Valdez, Cori) (Entered: 04/30/2018) |
| 04/30/2018 | 2187 | COURT'S SECOND PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 04/30/2018) |
| 04/30/2018 | 2188 | MOTION to Exclude *Marital Communication Privileged Testimony by Yvonne Madrid* by Christopher Chavez. (Solis, Eduardo) (Entered: 04/30/2018) |
| 05/01/2018 | 2189 | [CASE PARTICIPANTS] NOTICE *Notice to the Court Regarding Document 2151* by Joe Lawrence Gallegos as to Joe Lawrence Gallegos, Andrew Gallegos re 2151 Opposed MOTION to Continue *and/ or Adjourn Counts 4 and 5* (Benjamin, Brock) (Entered: 05/01/2018) |
| 05/01/2018 | 2190 | TRANSCRIPT of 104 Hearing and Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 04/05/18, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/8/2018. Redaction Request due 5/22/2018. Redacted Transcript Deadline set for 6/1/2018. Release of Transcript Restriction set for 7/30/2018. (jab) (Entered: 05/01/2018) |
| 05/01/2018 | 2191 | |

| | | | |
|---|---|---|---|
| | | | [CASE PARTICIPANTS] Sealed proposed timeline – Estimates counts 1–3(vv) (Entered: 05/02/2018) |
| 05/01/2018 | 2193 | | [CASE PARTICIPANTS] Sealed proposed Estimates Counts 4–5 and 13–16 (vv) (Entered: 05/02/2018) |
| 05/01/2018 | 2266 | | [CASE PARTICIPANTS] SEALED EMAIL and trial estimates received by court (vv) (Entered: 05/14/2018) |
| 05/02/2018 | 2192 | | [CASE PARTICIPANTS] Sealed Email with Trial Calendar for May 2018 (Attachments: # 1 Supplement, # 2 Supplement)(cab) (Entered: 05/02/2018) |
| 05/02/2018 | 2195 | | TRANSCRIPT of Excerpt of Testimony of Felipe Gonzalez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 19 and 20, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/9/2018. Redaction Request due 5/23/2018. Redacted Transcript Deadline set for 6/4/2018. Release of Transcript Restriction set for 7/31/2018. (jab) (Entered: 05/02/2018) |
| 05/02/2018 | 2196 | | TRANSCRIPT of Excerpted Testimony of Norman Rhoades as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 19 and 20, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the |

| | | | |
|---|---|---|---|
| | | | Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/9/2018. Redaction Request due 5/23/2018. Redacted Transcript Deadline set for 6/4/2018. Release of Transcript Restriction set for 7/31/2018. (jab) (Entered: 05/02/2018) |
| 05/03/2018 | 2198 | | COURT'S THIRD PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/03/2018) |
| 05/03/2018 | 2199 | | MEMORANDUM OPINION AND ORDER granting in part and denied in part 2188 MOTION to Exclude *Marital Communication Privileged Testimony by Yvonne Madrid* by District Judge James O. Browning (vv) (Entered: 05/03/2018) |
| 05/03/2018 | 2200 | | WITNESS LIST by Andrew Gallegos (Torraco, Lisa) (Entered: 05/03/2018) |
| 05/03/2018 | 2201 | | [CASE PARTICIPANTS] REPLY TO RESPONSE to Motion by Edward Troup re 1284 Opposed MOTION to Dismiss *SUPPLEMENTAL REPLY RE: DEFENDANT EDWARD TROUPS MOTION TO DISMISS* (Harbour–Valdez, Cori) (Entered: 05/03/2018) |
| 05/03/2018 | 2202 | | [CASE PARTICIPANTS] MOTION in Limine *TO EXCLUDE STATEMENTS BY MICHAEL JARAMILLO* by Edward Troup. (Harbour–Valdez, Cori) (Entered: 05/03/2018) |
| 05/03/2018 | 2203 | | SEALED EMAIL from Maria Armijo with proposed trial schedule 5–3 (Attachments: # 1 Exhibit) (vv) (Entered: 05/04/2018) |
| 05/03/2018 | 2204 | | SEALED EMAIL received from Cori A Harbour re trial schedule (Attachments: # 1 Exhibit, # 2 Exhibit) (vv) (Entered: 05/04/2018) |
| 05/04/2018 | 2205 | | SEALED EMAIL received from Cori Harbour re trial schedule (Attachments: # 1 Exhibit) (vv) (Entered: 05/04/2018) |
| 05/04/2018 | 2206 | | COURTS DRAFT TABLE RELATED TO WITNESS MICHAEL JARAMILLO (cab) (Entered: 05/04/2018) |
| 05/04/2018 | 2207 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning denying 2202 Motion in Limine as to Edward Troup (3) (cab) (Entered: 05/04/2018) |
| 05/06/2018 | 2208 | | [CASE PARTICIPANTS] MOTION in Limine *TO EXCLUDE STATEMENTS BY TIMOTHY MARTINEZ* by Edward Troup. |

| | | | |
|---|---|---|---|
| | | | (Harbour–Valdez, Cori) (Entered: 05/06/2018) |
| 05/06/2018 | 2209 | | [CASE PARTICIPANTS] MOTION in Limine *TO EXCLUDE STATEMENTS BY RUBEN HERNANDEZ* by Edward Troup. (Harbour–Valdez, Cori) (Entered: 05/06/2018) |
| 05/07/2018 | 2212 | | [CASE PARTICIPANTS] NOTICE *of Waiver of Possible Conflict* by Allen Patterson as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Lahann, Jeffrey) (Entered: 05/07/2018) |
| 05/07/2018 | 2213 | | NOTICE *of Entry of Appearance for Interested Party* by NM Corrections Department, Probation & Parole Division as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Nault, Kevin) (Entered: 05/07/2018) |
| 05/07/2018 | 2214 | | Emergency MOTION to Quash *Subpoenas for William Roach and Jesus Sandoval* by NM Corrections Department, Probation & Parole Division as to Joe Lawrence Gallegos. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Nault, Kevin) (Entered: 05/07/2018) |
| 05/07/2018 | 2215 | | Emergency MOTION to Quash *Subpoena for Recorded Phone Calls of Fred Quintana* by NM Corrections Department, Probation & Parole Division as to Billy Garcia. (Attachments: # 1 Exhibit 1)(Nault, Kevin) (Entered: 05/07/2018) |
| 05/07/2018 | 2216 | | [CASE PARTICIPANTS] NOTICE *Amended Notice Regarding Defendants Proposed Jury Instruction Number 8 and Number 14* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) (Entered: 05/07/2018) |
| 05/07/2018 | 2218 | | EMAIL received from Cori Harbour re trial schedule (vv) (Entered: 05/08/2018) |
| 05/07/2018 | 2219 | | EMAIL received from Cori Harbour re trial schedule (vv) (Entered: 05/08/2018) |
| 05/07/2018 | 2221 | | [APPLICABLE PARTY] ORDER granting 2210 Application for Writ of Habeas Corpus ad Testificandum filed by Billy Garcia by District Judge James O. Browning (vv) (Entered: 05/08/2018) |
| 05/07/2018 | 2222 | | |

| | | | |
|---|---|---|---|
| | | | [APPLICABLE PARTY] Ex parte Writ of Habeas Corpus ad Prosequendum Issued as to Lorenzo Mora for 5/21/18 – 5/25/18 (vv) (Entered: 05/08/2018) |
| 05/07/2018 | 2223 | | [APPLICABLE PARTY] ORDER granting 2211 Application for Writ of Habeas Corpus ad Testificandum filed by Billy Garcia by District Judge James O. Browning (vv) (Entered: 05/08/2018) |
| 05/07/2018 | 2224 | | [APPLICABLE PARTY] Ex Parte Writ of Habeas Corpus ad Prosequendum Issued as to Felix Reyes for 5/21/18 – 5/25/18 (vv) (Entered: 05/08/2018) |
| 05/08/2018 | 2217 | | COURT'S FOURTH DRAFT JURY INSTRUCTIONS WITHOUT CITATIONS by District Judge James O. Browning (vv) (Entered: 05/08/2018) |
| 05/08/2018 | 2220 | | ORDER by District Judge James O. Browning re USMS shall be permitted to conduct a search of the cells of inmates (vv) (Entered: 05/08/2018) |
| 05/08/2018 | 2225 | | COURT'S FOURTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/08/2018) |
| 05/08/2018 | 2226 | | NOTICE *of Compliance by New Mexico Corrections Department* by NM Corrections Department, Probation & Parole Division as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Nault, Kevin) (Entered: 05/08/2018) |
| 05/08/2018 | 2227 | | MOTION to Quash *in Part Subpoena for Health Records of Inmate Joseph Otero* by NM Corrections Department, Probation & Parole Division as to Billy Garcia. (Attachments: # 1 Exhibit 1)(Nault, Kevin) (Entered: 05/08/2018) |
| 05/08/2018 | 2228 | | ADDENDUM to 2225 Court's Jury Instructions (vv) (Entered: 05/08/2018) |
| 05/08/2018 | 2229 | | [CASE PARTICIPANTS] Emergency MOTION for Joinder *Motion to Join New Mexico Corrections Department's Expedited MT Quash Subpoena for Recorded Phone calls* by Fred Quintana as to Billy Garcia. (Sapien, Phillip) (Entered: 05/08/2018) |
| 05/08/2018 | 2232 | | MEMORANDUM OPINION AND ORDER denying oral motion to admit the Letter from Leroy Lucero as to Billy Garcia by District Judge James O. Browning (vv) (Entered: 05/09/2018) |
| 05/08/2018 | 2243 | | [APPLICABLE PARTY] Ex parte Amended Writ of Habeas Corpus ad Prosequendum Issued as to Billy Garcia for 5/21/18 – 5/25/18 (vv) (Entered: 05/09/2018) |
| 05/09/2018 | 2231 | | Proposed Jury Instructions by Arturo Arnulfo Garcia (Davidson, Scott) (Entered: 05/09/2018) |
| 05/09/2018 | 2233 | | TRANSCRIPT of Opening Statements as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, |

| | | | |
|---|---|---|---|
| | | | Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 12, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/16/2018. Redaction Request due 5/30/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/7/2018. (jab) (Entered: 05/09/2018) |
| 05/09/2018 | 2234 | | TRANSCRIPT Excerpted Testimony of Bryan Acee as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 12, 13 and 16, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 5/16/2018. Redaction Request due 5/30/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/7/2018. (jab) (Entered: 05/09/2018) |
| 05/09/2018 | 2235 | | TRANSCRIPT of Excerpted Testimony of Mario Rodriguez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 16 & 17, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br> Notice of Intent to Request Redaction set for 5/16/2018. Redaction Request due 5/30/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/7/2018. (jab) (Entered: 05/09/2018) |
| 05/09/2018 | 2236 | | TRANSCRIPT of Excerpted Testimony of Julian Romero as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 17 & 18, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this** |

| | | | |
|---|---|---|---|
| | | | **transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/16/2018. Redaction Request due 5/30/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/7/2018. (jab) (Entered: 05/09/2018) |
| 05/09/2018 | 2237 | | TRANSCRIPT of Excerpted Testimony of Phillip Gonzales as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 18 & 19, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/16/2018. Redaction Request due 5/30/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/7/2018. (jab) (Entered: 05/09/2018) |
| 05/09/2018 | 2238 | | TRANSCRIPT of Excerpted Testimony of Roy Paul Martinez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 20 & 23, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer |

| | | | |
|---|---|---|---|
| | | | Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 5/16/2018. Redaction Request due 5/30/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/7/2018. (jab) (Entered: 05/09/2018)

| 05/09/2018 | 2239 | | TRANSCRIPT of Excerpted Testimony of Joseph Otero as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 20 & 23, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 5/16/2018. Redaction Request due 5/30/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/7/2018. (jab) (Entered: 05/09/2018)

| 05/09/2018 | 2240 | | TRANSCRIPT of Excerpted Testimony of William Farmer as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy |

Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 30 & May 1, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 5/16/2018. Redaction Request due 5/30/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/7/2018. (jab) (Entered: 05/09/2018)

| | | | |
|---|---|---|---|
| 05/09/2018 | 2241 | | [CASE PARTICIPANTS] SEALED EMAIL trial schedule (vv) (Entered: 05/09/2018) |
| 05/09/2018 | 2242 | | [CASE PARTICIPANTS] SEALED Trial Schedule (vv) (Entered: 05/09/2018) |
| 05/09/2018 | 2244 | | MINUTE ORDER Pursuant to the direction of District Judge James O. Browning, counsel shall provide to the Court a copy of the *Kastigar* letter for Billy Cordova as soon as possible. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/09/2018) |
| 05/10/2018 | 2245 | | [CASE PARTICIPANTS] MOTION in Limine *to Exclude Irrelevant Evidence under Rule 609* by USA as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos. (Beck, Matthew) (Entered: 05/10/2018) |
| 05/10/2018 | 2246 | | [CASE PARTICIPANTS] Sealed – *Kastigar* letter of Billy Cordova. (cab) (Entered: 05/10/2018) |
| 05/10/2018 | 2248 | | Unopposed MOTION to Withdraw Document 2215 Emergency MOTION to Quash *Subpoena for Recorded Phone Calls of Fred Quintana* by NM Corrections Department, Probation & Parole Division as to Billy Garcia. (Attachments: # 1 Exhibit 1)(Nault, Kevin) (Entered: 05/10/2018) |
| 05/10/2018 | 2249 | | [CASE PARTICIPANTS] SEALED EMAIL and attached trial schedule (vv) |

| | | | |
|---|---|---|---|
| | | | (Entered: 05/10/2018) |
| 05/10/2018 | 2250 | | ORDER re 2214 Emergency MOTION to Quash *Subpoenas for William Roach and Jesus Sandoval* filed by NM Corrections Department by District Judge James O. Browning (vv) (Entered: 05/10/2018) |
| 05/10/2018 | 2251 | | MOTION to Compel *Immediate Production of Documents* by Arturo Arnulfo Garcia. (Davidson, Scott) (Entered: 05/10/2018) |
| 05/10/2018 | 2252 | | COURT'S FIFTH PROPOSED JURY INSTRUCTIONS (with citations)by District Judge James O. Browning (vv) (Entered: 05/10/2018) |
| 05/10/2018 | 2253 | | CORRECTED COURT'S FIFTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/10/2018) |
| 05/10/2018 | 2254 | | COURT'S FIFTH PROPOSED JURY INSTRUCTIONS (with citations)by District Judge James O. Browning (vv) (Entered: 05/10/2018) |
| 05/10/2018 | 2255 | | RESPONSE to Motion by Joe Lawrence Gallegos, Edward Troup re 2245 MOTION in Limine *to Exclude Irrelevant Evidence under Rule 609 Response to Motion in Limine [Doc 2245]* (Benjamin, Brock) (Entered: 05/10/2018) |
| 05/11/2018 | 2256 | | ORDER by District Judge James O. Browning granting 2248 Motion to Withdraw Document 2215 as to Billy Garcia (5) (vv) (Entered: 05/11/2018) |
| 05/11/2018 | 2257 | | MEMORANDUM OPINION AND ORDER denying oral motion to compel as to Billy Garcia by District Judge James O. Browning (vv) (Entered: 05/11/2018) |
| 05/11/2018 | 2258 | | [CASE PARTICIPANTS] NOTICE *OF DEFENDANTS' OBJECTION TO THE COURT ORDER PREVENTING THE DEFENSE FROM PRESENTING EVIDENCE OF PRIOR CONVICTIONS SUSTAINED BY GERALD ARCHULETA* by Billy Garcia (Attachments: # 1 Appendix A, # 2 Appendix B)(Castle, James) (Entered: 05/11/2018) |
| 05/11/2018 | 2259 | | Proposed Jury Instructions by Arturo Arnulfo Garcia (Davidson, Scott) (Entered: 05/11/2018) |
| 05/11/2018 | 2267 | | [CASE PARTICIPANTS] SEALED EMAIL and updated trial calendar (vv) (Entered: 05/14/2018) |
| 05/11/2018 | 2269 | | [CASE PARTICIPANTS] SEALED EMAIL with revised trial calendar (vv) (Entered: 05/14/2018) |
| 05/14/2018 | 2260 | | [CASE PARTICIPANTS] WITNESS LIST by Edward Troup (Harbour–Valdez, Cori) (Entered: 05/14/2018) |
| 05/14/2018 | 2261 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Jerry Montoya (Attachments: # 1 Attachment A) Related Documents: 855 Plea Agreement (Kord, Amy) (Entered: 05/14/2018) |
| 05/14/2018 | 2263 | | COURT'S SIXTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/14/2018) |

| 05/14/2018 | 2264 | | COURT'S SIXTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/14/2018) |
|---|---|---|---|
| 05/14/2018 | 2265 | | MEMORANDUM OPINION AND ORDER granting 2245 MOTION in Limine *to Exclude Irrelevant Evidence under Rule 609* by District Judge James O. Browning (vv) (Entered: 05/14/2018) |
| 05/14/2018 | 2268 | | [CASE PARTICIPANTS] SEALED EMAIL and trial calendar (vv) (Entered: 05/14/2018) |
| 05/14/2018 | 2270 | | ORDER granting writ of habeas corpus ad testificandum for Brandy Rodriguez by District Judge James O. Browning (vv) (Entered: 05/14/2018) |
| 05/14/2018 | 2271 | | Writ of Habeas Corpus ad Prosequendum Issued as to Brandy Rodriguez for 5/15/18 (vv) (Entered: 05/14/2018) |
| 05/15/2018 | 2273 | | COURT'S SEVENTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/15/2018) |
| 05/15/2018 | 2274 | | COURT'S SEVENTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/15/2018) |
| 05/15/2018 | 2275 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning granting United States' oral motion (vv) (Entered: 05/15/2018) |
| 05/15/2018 | 2276 | | ORDER granting writ of habeas corpus ad testificandum for Lorenzo Mora by District Judge James O. Browning (vv) (Entered: 05/15/2018) |
| 05/15/2018 | 2277 | | Writ of Habeas Corpus ad Prosequendum Issued as to Lorenzo Mora for 5/16/18 (vv) (Entered: 05/15/2018) |
| 05/15/2018 | 2279 | | Judgment Returned Executed as to Santos Gonzalez on 4/25/18. (vv) (Entered: 05/15/2018) |
| 05/15/2018 | 2280 | | [CASE PARTICIPANTS] NOTICE *Second Amended Notice Regarding Defendants Proposed Jury Instruction Number 8 and Number 14* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Harbour–Valdez, Cori) (Entered: 05/15/2018) |
| 05/15/2018 | 2281 | | [CASE PARTICIPANTS] SEALED EMAIL and trial calendar (vv) (Entered: 05/16/2018) |
| 05/15/2018 | 2298 | | [CASE PARTICIPANTS] SEALED EMAIL and trial schedule (vv) (Entered: 05/21/2018) |
| 05/16/2018 | 2282 | | TRANSCRIPT of Excerpted Testimony of Leonard Lujan as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 23 and 24, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the |

| | | | |
|---|---|---|---|
| | | | Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/23/2018. Redaction Request due 6/6/2018. Redacted Transcript Deadline set for 6/18/2018. Release of Transcript Restriction set for 8/14/2018. (jab) (Entered: 05/16/2018) |
| 05/16/2018 | 2283 | | TRANSCRIPT of Excerpted Testimony of Lawrence Torres as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 24 and 25, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/23/2018. Redaction Request due 6/6/2018. Redacted Transcript Deadline set for 6/18/2018. Release of Transcript Restriction set for 8/14/2018. (jab) (Entered: 05/16/2018) |
| 05/16/2018 | 2284 | | TRANSCRIPT of Excerpted Testimony of Manuel Jacob Armijo as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier |

| | | |
|---|---|---|
| | | Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 26 and 27, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 5/23/2018. Redaction Request due 6/6/2018. Redacted Transcript Deadline set for 6/18/2018. Release of Transcript Restriction set for 8/14/2018. (jab) (Entered: 05/16/2018) |
| 05/16/2018 | 2285 | TRANSCRIPT of Excerpted Testimony of Jason Van Veghel as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 1, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 5/23/2018. Redaction Request due 6/6/2018. Redacted Transcript Deadline set for 6/18/2018. Release of Transcript Restriction set for 8/14/2018. (jab) (Entered: 05/16/2018) |
| 05/16/2018 | 2286 | | TRANSCRIPT of Excerpted Testimony of Willie Romero as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 2, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br> Notice of Intent to Request Redaction set for 5/23/2018. Redaction Request due 6/6/2018. Redacted Transcript Deadline set for 6/18/2018. Release of Transcript Restriction set for 8/14/2018. (jab) (Entered: 05/16/2018) |
| 05/16/2018 | 2287 | | TRANSCRIPT of Excerpted Testimony of Jose Gomez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 2 and 3, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this** |

| | | | |
|---|---|---|---|
| | | | **transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/23/2018. Redaction Request due 6/6/2018. Redacted Transcript Deadline set for 6/18/2018. Release of Transcript Restriction set for 8/14/2018. (jab) (Entered: 05/16/2018) |
| 05/16/2018 | 2288 | | COURT'S EIGHTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/16/2018) |
| 05/16/2018 | 2289 | | TRANSCRIPT of Excerpted Testimony of Shauna Gutierrez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 3, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/23/2018. Redaction Request due 6/6/2018. Redacted Transcript Deadline set for 6/18/2018. Release of Transcript Restriction set for 8/14/2018. (jab) (Entered: 05/16/2018) |
| 05/16/2018 | 2290 | | COURT'S EIGHTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/16/2018) |
| 05/17/2018 | 2291 | | [CASE PARTICIPANTS] Opposed MOTION FOR AN INSTRUCTION ON THE OFFENSE OF MISPRISION by Edward Troup. (Attachments: # 1 Exhibit Proposed Jury Instruction)(Harbour–Valdez, Cori) (Entered: 05/17/2018) |

| 05/17/2018 | 2292 | | COURT'S NINTH PROPOSED JURY INSTRUCTIONS (with citations) by District Judge James O. Browning (vv) (Entered: 05/17/2018) |
| 05/17/2018 | 2293 | | NOTICE *of Unavailability* by Christopher Garcia from Thursday, June 14, 2018 through and including Saturday, June 30, 2018; and Tuesday, August 21, 2018 through and including Tuesday, September 11, 2018 (Sirignano, Amy) Modified on 5/17/2018 (vv). (Entered: 05/17/2018) |
| 05/17/2018 | 2294 | | COURT'S TENTH PROPOSED JURY INSTRUCTIONS WITH CITATIONS (cab) (Entered: 05/17/2018) |
| 05/17/2018 | 2299 | | [CASE PARTICIPANTS] SEALED EMAIL and trial schedule (vv) (Entered: 05/21/2018) |
| 05/20/2018 | 2295 | | [CASE PARTICIPANTS] Proposed Jury Instructions by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos (Attachments: # 1 Att − 1 Proposed Jury Instruction No. 31)(Burke, Patrick) (Entered: 05/20/2018) |
| 05/20/2018 | 2296 | | MOTION Mistrial and Severance by Christopher Chavez. (Solis, Eduardo) (Entered: 05/20/2018) |
| 05/20/2018 | 2297 | | MOTION to Vacate *Previously filed motion for mistrial* by Christopher Chavez. (Solis, Eduardo) (Entered: 05/20/2018) |
| 05/22/2018 | 2300 | | [CASE PARTICIPANTS] SEALED Email to Judge Browning from Tyler Smith. (cab) Modified on 5/22/2018 (cab). (Entered: 05/22/2018) |
| 05/22/2018 | 2301 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning re 2295 Defendants' Objection to Jury Instruction 31, filed May 20, 2018. IT IS ORDERED that the Defendants' Objection to Jury Instruction 31, filed May 20, 2018 (Doc. 2295), is overruled. (kg) (Entered: 05/22/2018) |
| 05/23/2018 | 2302 | | COURT'S FINAL JURY INSTRUCTIONS (without citations) by District Judge James O. Browning. (kg) (Entered: 05/23/2018) |
| 05/23/2018 | 2303 | | COURT'S FINAL JURY INSTRUCTIONS (with citations) by District Judge James O. Browning. (kg) (Entered: 05/23/2018) |
| 05/23/2018 | 2304 | | TRANSCRIPT of Excerpt of Testimony of Eugene Martinez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 25 & 26 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018)

| 05/23/2018 | 2305 | TRANSCRIPT of Excerpt of Testimony of Morgan Ramirez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 30 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018)

| 05/23/2018 | 2306 | TRANSCRIPT of Excerpted Testimony of Paul Rivera as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy |

| | | |
|---|---|---|
| | | Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 3 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |
| 05/23/2018 | 2307 | TRANSCRIPT of Excerpted Testimony of Benjamin Clark as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 4 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |

| 05/23/2018 | 2308 | | TRANSCRIPT of Excerpted Testimony if Samuel Gonzales as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 4 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |
| 05/23/2018 | 2309 | | TRANSCRIPT of Excerpted Testimony of Ruben Hernandez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 4 & 7 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days.** |

| | | | |
|---|---|---|---|
| | | | **For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |
| 05/23/2018 | 2310 | | TRANSCRIPT of Excerpted Testimony of Javier Alonso as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 7 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |
| 05/23/2018 | 2311 | | TRANSCRIPT of Excerpted Testimony of Raymond Rascon as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 9 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |
| 05/23/2018 | 2312 | | TRANSCRIPT of Excerpted Testimony of Billy Cordova as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 9 & 10 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>    **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |
| 05/23/2018 | 2313 | | TRANSCRIPT of Excerpted Testimony of Sammy Griego as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos |

Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 10 & 11 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018)

| 05/23/2018 | 2314 | | TRANSCRIPT of Excerpted Testimony of Gerald Archuleta as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 11 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |

| 05/23/2018 | 2315 | | TRANSCRIPT of Excerpted Testimony of Bryan Acee as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 11 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |
| 05/23/2018 | 2316 | | TRANSCRIPT of Excerpted Testimony of Michael Jaramillo as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 14 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days.** |

| | | | |
|---|---|---|---|
| | | | **For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 5/30/2018. Redaction Request due 6/13/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/21/2018. (jab) (Entered: 05/23/2018) |
| 05/23/2018 | 2317 | | [APPLICABLE PARTY] EX PARTE BUDGET SUPPLEMENT ORDER by District Judge James O. Browning as to Allen Patterson (Attachments: # 1 Revised Budget Supplement Justification)(meq) (Entered: 05/23/2018) |
| 05/23/2018 | 2325 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Jury Trial [Deliberations] as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Andrew Gallegos held on 5/23/2018– 5/25/18 (Court Reporter: J. Bean) (vv) (Entered: 06/06/2018) |
| 05/25/2018 | 2332 | | JURY VERDICT (vv) (Entered: 06/06/2018) |
| 05/25/2018 | 2333 | | JUDGMENT of acquittal as to Allen Patterson by District Judge James O. Browning (vv) (Entered: 06/06/2018) |
| 05/30/2018 | 2318 | | TRANSCRIPT of Excerpted Trial Testimony of Bryan Acee as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 14 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 6/6/2018. Redaction Request due 6/20/2018. Redacted Transcript Deadline set for 7/2/2018. Release of Transcript Restriction set for 8/28/2018. (jab) (Entered: 05/30/2018) |
| 05/30/2018 | 2319 | | |

| | | |
|---|---|---|
| | | TRANSCRIPT of Excerpted Trial Testimony of Jimmie Rae Gordon as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 16 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 6/6/2018. Redaction Request due 6/20/2018. Redacted Transcript Deadline set for 7/2/2018. Release of Transcript Restriction set for 8/28/2018. (jab) (Entered: 05/30/2018) |
| 06/01/2018 | 2320 | TRANSCRIPT of Trial Excerpt of Leroy Lucero as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 7 and 8 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days.** |

| | | | |
|---|---|---|---|
| | | | **For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 6/8/2018. Redaction Request due 6/22/2018. Redacted Transcript Deadline set for 7/2/2018. Release of Transcript Restriction set for 8/30/2018. (jab) (Entered: 06/01/2018) |
| 06/01/2018 | 2321 | | TRANSCRIPT of Trial Excerpt of Frederico Munoz as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 8 and 9 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 6/8/2018. Redaction Request due 6/22/2018. Redacted Transcript Deadline set for 7/2/2018. Release of Transcript Restriction set for 8/30/2018. (jab) (Entered: 06/01/2018) |
| 06/01/2018 | 2322 | | TRANSCRIPT of Testimony Excerpt of Bryan Acee as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 15 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 6/8/2018. Redaction Request due 6/22/2018. Redacted Transcript Deadline set for 7/2/2018. Release of Transcript Restriction set for 8/30/2018. (jab) (Entered: 06/01/2018) |
| 06/06/2018 | 2334 | | RETURN OF EXHIBITS to counsel (vv) (Entered: 06/06/2018) |
| 06/06/2018 | 2335 | | Unopposed MOTION to Extend (other) *JOINT MOTION FOR EXTENSION OF TIME TO FILE RENEWED MOTIONS FOR DIRECTED VERDICT AND MOTIONS FOR NEW TRIAL* by Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Andrew Gallegos. (Harbour–Valdez, Cori) (Entered: 06/06/2018) |
| 06/11/2018 | 2336 | | ORDER by District Judge James O. Browning granting 2335 Motion to Extend (other) as to Joe Lawrence Gallegos (2), Edward Troup (3), Billy Garcia (5), Arturo Arnulfo Garcia (10), Andrew Gallegos (27) (vv) (Entered: 06/11/2018) |
| 06/11/2018 | 2337 | | JUDGMENT of acquittal as to Rudy Perez by District Judge James O. Browning (vv) (Entered: 06/11/2018) |
| 06/15/2018 | 2338 | | Unopposed MOTION for Extension of Time to File *Rule 29 and Rule 33 motions* by Anthony Ray Baca as to Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Arturo Arnulfo Garcia, Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Andrew Gallegos. (Duncan, Theresa) (Entered: 06/15/2018) |
| 06/19/2018 | 2339 | | JUDGMENT of acquittal as to Christopher Chavez by District Judge James O. Browning (vv) (Entered: 06/19/2018) |
| 06/20/2018 | 2340 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Conrad Villegas (Attachments: # 1 Attachment A)<br><br>Related Documents: 1392 Plea Agreement<br>(Work, Rhiannon) (Entered: 06/20/2018) |
| 06/20/2018 | 2342 | | ORDER by District Judge James O. Browning granting 2338 Motion for Extension of Time to File as to Joe Lawrence Gallegos (2), Edward Troup (3), Billy Garcia (5), Arturo Arnulfo Garcia (10), Daniel Sanchez (18), Anthony Ray Baca (21), Carlos Herrera (25), Andrew Gallegos (27) (vv) (Entered: 06/20/2018) |
| 06/20/2018 | 2343 | | ORDER granting defendant's request for information from coordinating discovery attorney as to Daniel Sanchez by District Judge James O. Browning (vv) (Entered: 06/20/2018) |

| 07/03/2018 | 2344 | | TRANSCRIPT of Excerpt of Voir Dire Examination by the Court as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on January 29 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br>Notice of Intent to Request Redaction set for 7/10/2018. Redaction Request due 7/24/2018. Redacted Transcript Deadline set for 8/3/2018. Release of Transcript Restriction set for 10/1/2018. (jab) (Entered: 07/03/2018) |
| 07/05/2018 | 2345 | | [APPLICABLE PARTY] LETTER by Ruben Hernandez (vv) (Entered: 07/05/2018) |
| 07/05/2018 | 2346 | | MOTION for Hearing *for Presentment of Order on Docs 1694, 2110, 2113* by Eugene Martinez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Couleur, Douglas) (Entered: 07/05/2018) |
| 07/10/2018 | 2348 | | [APPLICABLE PARTY] Sealed LETTER from Christopher Chavez (vv) (Entered: 07/10/2018) |
| 07/13/2018 | 2349 | | [APPLICABLE PARTY] Sealed EMAIL from USM as to Christopher Chavez (vv) (Entered: 07/13/2018) |
| 07/18/2018 | 2350 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Shauna Gutierrez (Attachments: # 1 Attachment A) |

| | | | |
|---|---|---|---|
| | | | Related Documents: <u>2003</u> Plea Agreement<br>(Kord, Amy) (Entered: 07/18/2018) |
| 07/19/2018 | <u>2352</u> | | TRANSCRIPT of Competency Hearing Proceedings as to Eugene Martinez held on March 20 2017, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 7/26/2018. Redaction Request due 8/9/2018. Redacted Transcript Deadline set for 8/20/2018. Release of Transcript Restriction set for 10/17/2018. (jab) (Entered: 07/19/2018) |
| 07/19/2018 | <u>2353</u> | | TRANSCRIPT of Competency Hearing Proceedings as to Eugene Martinez held on March 21 2017, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 7/26/2018. Redaction Request due 8/9/2018. Redacted Transcript Deadline set for 8/20/2018. Release of Transcript Restriction set for 10/17/2018. (jab) (Entered: 07/19/2018) |
| 07/25/2018 | <u>2354</u> | | TRANSCRIPT of Jury Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul |

| | | | |
|---|---|---|---|
| | | | Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 9 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 8/1/2018. Redaction Request due 8/15/2018. Redacted Transcript Deadline set for 8/27/2018. Release of Transcript Restriction set for 10/23/2018. (jab) (Entered: 07/25/2018) |
| 07/25/2018 | 2355 | | TRANSCRIPT of Jury Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 10 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 8/1/2018. Redaction Request due 8/15/2018. Redacted Transcript Deadline set for 8/27/2018. Release of Transcript Restriction set for 10/23/2018. (jab) (Entered: 07/25/2018) |

| 07/25/2018 | 2356 | | SEALED TRANSCRIPT of Jury Trial Proceedings (including voir dire) as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 11 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2833. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. (jab) Modified on 8/1/2018 (ljs). (Entered: 07/25/2018) |
| 07/25/2018 | 2357 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Gerald Archuleta (Attachments: # 1 Attachment A)<br><br>Related Documents: 586 Plea Agreement<br>(Mills, David) (Entered: 07/25/2018) |
| 08/02/2018 | 2359 | | [APPLICABLE PARTY] SEALED NOTICE OF HEARING as to Gerald Archuleta: Sentencing set for 8/17/2018 at 09:00 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/02/2018) |
| 08/08/2018 | 2361 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Brandy Rodriguez (Attachments: # 1 Attachment A)<br><br>Related Documents: 1830 Plea Agreement<br>(Work, Rhiannon) (Entered: 08/08/2018) |
| 08/13/2018 | 2363 | | [APPLICABLE PARTY] Sealed ex parte Supplemental Budget ORDER as to Billy Garcia by District Judge James O. Browning (Attachments: # 1 Exhibit)(vv) (Entered: 08/13/2018) |
| 08/14/2018 | 2367 | | MOTION for Release from Custody *MOTION TO SET CONDITIONS OF RELEASE* by Shauna Gutierrez. (Arellanes, Angela) (Entered: 08/14/2018) |
| 08/17/2018 | 2368 | | [APPLICABLE PARTY] ORDER by District Judge James O. Browning granting 2365 Motion to Seal Document as to Gerald Archuleta (19) (bap) (Entered: 08/17/2018) |
| 08/17/2018 | 2371 | | [CASE PARTICIPANTS] Sealed Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 8/17/2018 for Gerald Archuleta (19), Count(s) 8s, Sealed Proceedings. (Court Reporter: J. Bean) (vv) (Entered: 08/20/2018) |
| 08/20/2018 | 2370 | | MOTION to Withdraw as Attorney by George Harrison by Gerald Archuleta. (Harrison, George) (Entered: 08/20/2018) |
| 08/20/2018 | 2372 | | ORDER by District Judge James O. Browning granting 2367 Motion for Release from Custody as to Shauna Gutierrez (30) (vv) (Entered: 08/20/2018) |

| 08/21/2018 | 2373 | | ORDER Setting Conditions of Release by District Judge James O. Browning (vv) (Entered: 08/21/2018) |
|---|---|---|---|
| 08/22/2018 | 2374 | | [APPLICABLE PARTY] SEALED JUDGMENT by District Judge James O. Browning as to Gerald Archuleta (cab) (Entered: 08/22/2018) |
| 08/22/2018 | 2375 | | JUDGMENT entered on 8/22/2018.<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (cab) (Entered: 08/22/2018) |
| 08/28/2018 | 2378 | | MEMORANDUM OPINION AND ORDER denying oral motion to dismiss count 3 of superseding 947 as to Arturo Arnulfo Garcia by District Judge James O. Browning (vv) (Entered: 08/28/2018) |
| 08/29/2018 | 2379 | | NOTICE OF HEARING as to Shauna Gutierrez: Sentencing set for 9/13/2018 at 03:00 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/29/2018) |
| 08/29/2018 | 2380 | | NOTICE OF HEARING as to Brandy Rodriguez: Sentencing set for 9/13/2018 at 03:30 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/29/2018) |
| 08/29/2018 | 2381 | | MINUTE ORDER by District Judge James O. Browning as to Shauna Gutierrez VACATING 2379 Notice of Hearing. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/29/2018) |
| 08/29/2018 | 2382 | | AMENDED NOTICE OF HEARING as to Brandy Rodriguez: Sentencing set for 9/20/2018 at 02:00 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/29/2018) |
| 08/29/2018 | 2383 | | NOTICE OF HEARING as to Mauricio Varela: Sentencing set for 10/15/2018 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/29/2018) |
| 08/29/2018 | 2384 | | NOTICE OF HEARING as to Conrad Villegas: Sentencing set for 10/15/2018 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/29/2018) |
| 08/31/2018 | 2385 | | [APPLICABLE PARTY] Sealed ORDER by District Judge James O. Browning granting 2376 Motion for Downward Adjustment as to Gerald Archuleta (19) (vv) (Entered: 08/31/2018) |
| 08/31/2018 | 2386 | | [APPLICABLE PARTY] SEALED ORDER as to Gerald Archuleta re 2377 Notice (Other) filed by USA by District Judge James O. Browning (vv) (Entered: 08/31/2018) |

| 08/31/2018 | 2387 | | MEMORANDUM OPINION AND ORDER as to Christopher Garcia by District Judge James O. Browning (vv) (Entered: 08/31/2018) |
|---|---|---|---|
| 09/06/2018 | 2389 | | NOTICE OF HEARING ON MOTION in case as to Eugene Martinez 2346 MOTION for Hearing *for Presentment of Order on Docs 1694, 2110, 2113*: Motion Hearing set for 9/20/2018 at 01:30 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/06/2018) |
| 09/07/2018 | 2390 | | SENTENCING MEMORANDUM by Brandy Rodriguez as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Walz, Jerry) (Entered: 09/07/2018) |
| 09/11/2018 | 2392 | | ORDER by District Judge James O. Browning granting 2370 MOTION to Withdraw as Attorney. Attorney George A Harrison terminated in case as to Gerald Archuleta. (vv) (Entered: 09/12/2018) |
| 09/12/2018 | 2393 | | CJA Appointment of Attorney Kimberly S Brusuelas–Benavidez for Gerald Archuleta by District Judge James O. Browning (vv) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/12/2018) |
| 09/17/2018 | 2394 | | RESPONSE by USA as to Brandy Rodriguez re 2390 Sentencing Memorandum,, (Armijo, Maria) (Entered: 09/17/2018) |
| 09/18/2018 | 2395 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Javier Alonso (Attachments: # 1 Attachment A) <br><br> Related Documents: 1237 Plea Agreement (Kord, Amy) (Entered: 09/18/2018) |
| 09/20/2018 | 2397 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing as to Eugene Martinez held on 9/20/2018 re 2346 MOTION for Hearing *for Presentment of Order on Docs 1694, 2110, 2113 (Court Reporter: J. Bean) (vv) (Entered: 09/20/2018)* |
| 09/20/2018 | 2398 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 9/20/2018 for Brandy Rodriguez (31), Count(s) 14, 15, 16, SENTENCE IMPOSED: CBOP–96 months concurrent; Supervised Release–3 years concurrent; SPA–$300; deft in custody. (Court Reporter: J. Bean) (vv) (Entered: 09/21/2018) |
| 09/21/2018 | 2399 | | Unopposed MOTION for Extension of Time to File *Objections to Presentence Report* by Javier Alonso. (Chambers, Nathan) (Entered: 09/21/2018) |
| 09/26/2018 | 2400 | | NOTICE *of Withdrawal of Counsel* by USA as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo |

| | | | |
|---|---|---|---|
| | | | Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez (Beck, Matthew) Modified spellings on 9/27/2018 (vv). (Entered: 09/26/2018) |
| 09/26/2018 | | | Attorney update in case as to Angel DeLeon. Attorney Matthew M Beck terminated. (vv) (Entered: 09/26/2018) |
| 09/29/2018 | 2402 | | NOTICE *of Counsel's Unavailability* Thursday, October 11, 2018 through and including Monday, October 15, 2018 and Saturday, October 20, 2018, through and including Tuesday, November 6, 2018 by Christopher Garcia (Sirignano, Amy) Modified on 10/1/2018 added dates (meq). (Entered: 09/29/2018) |
| 10/04/2018 | 2404 | | Unopposed MOTION for Extension of Time to File *Objections to Presentence Report Renewed* by Javier Alonso. (Chambers, Nathan) (Entered: 10/04/2018) |
| 10/04/2018 | 2405 | | JUDGMENT by District Judge James O. Browning as to Defendant Brandy Rodriguez. (cab) (Entered: 10/04/2018) |
| 10/05/2018 | 2406 | | [APPLICABLE PARTY] Sealed ORDER by District Judge James O. Browning granting 2401 Motion to Modify Conditions of Release as to Gerald Archuleta (19) (vv) (Entered: 10/05/2018) |
| 10/09/2018 | 2407 | | Unopposed MOTION for Leave to File Excess Pages by Daniel Sanchez. (Jacks, Amy) (Entered: 10/09/2018) |
| 10/09/2018 | 2408 | | MOTION for New Trial *(FRCP Rule 33) or Judgment of Acquittal (FRCP Rule 29)* by Daniel Sanchez. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Errata, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit)(Jacks, Amy) (Entered: 10/09/2018) |
| 10/09/2018 | 2409 | | ORDER by District Judge James O. Browning granting 2399 Motion for Extension of Time to File as to Javier Alonso (9) (vv) (Entered: 10/09/2018) |
| 10/10/2018 | 2410 | | Unopposed MOTION to Continue *Sentencing hearing* by Conrad Villegas. (Crow, B.J.) (Entered: 10/10/2018) |
| 10/10/2018 | 2411 | | ORDER by District Judge James O. Browning granting 2410 Motion to Continue sentencing as to Conrad Villegas (20).(vv) (Entered: 10/10/2018) |
| 10/11/2018 | 2412 | | ORDER by District Judge James O. Browning granting 2407 Motion for Leave to File Excess Pages as to Daniel Sanchez (18) (vv) (Entered: 10/11/2018) |
| 10/15/2018 | 2413 | | MOTION for New Trial by Carlos Herrera. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Bhalla, Carey) (Entered: 10/15/2018) |
| 10/15/2018 | 2414 | | |

|  |  |  | MOTION to Dismiss *Second Superseding Indictment Without Prejudice* by USA as to Mauricio Varela. (Armijo, Maria) (Entered: 10/15/2018) |
|---|---|---|---|
| 10/15/2018 | 2415 |  | Joint MOTION for New Trial *Gallegos' Rule 29 Motion for Judgment of Acquittal or in the Alternative Motion for New Trial with Regard to Counts Four and Five* by Joe Lawrence Gallegos as to Joe Lawrence Gallegos, Andrew Gallegos. (Benjamin, Brock) (Entered: 10/15/2018) |
| 10/15/2018 | 2416 |  | [CASE PARTICIPANTS] MOTION to Produce *Post−Conviction Discovery and for In Camera Review* by Billy Garcia. (Attachments: # 1 Appendix A, # 2 Appendix B)(Castle, James) (Entered: 10/15/2018) |
| 10/15/2018 | 2417 |  | MOTION for Extension of Time to File *Post−Conviction Motions Under FRCP Rule 29 and FRCP Rule 33* by Billy Garcia. (Castle, James) (Entered: 10/15/2018) |
| 10/15/2018 | 2418 |  | MOTION for New Trial by Andrew Gallegos. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Torraco, Lisa) (Entered: 10/15/2018) |
| 10/15/2018 | 2419 |  | MOTION for New Trial *Count 1* by Joe Lawrence Gallegos. (Attachments: # 1 Affidavit)(Benjamin, Brock) (Entered: 10/15/2018) |
| 10/15/2018 | 2420 |  | MOTION for New Trial by Edward Troup. (Harbour−Valdez, Cori) (Entered: 10/15/2018) |
| 10/15/2018 | 2421 |  | MOTION for New Trial by Anthony Ray Baca. (Lowry, Marc) (Entered: 10/15/2018) |
| 10/15/2018 | 2427 |  | Clerk's Minutes for proceedings held before District Judge James O. Browning in 15cr4269 JB: Sentencing held on 10/15/2018 for Mauricio Varela (1), Count(s) 2, SENTENCE IMPOSED: CBOP−168 months; Supervised Release−3 years; SPA−$100; deft in custody. (Court Reporter: J. Bean) (vv) (Entered: 10/16/2018) |
| 10/16/2018 | 2422 |  | MOTION for Acquittal *Or, In the Alternative, Dismissal Pursuant to Rule 12(b)(2)* by Arturo Arnulfo Garcia. (Davidson, Scott) (Entered: 10/16/2018) |
| 10/16/2018 | 2423 |  | APPENDIX/SUPPLEMENT *to Anthony Baca's Motion for a New Trial, Dkt. 2421* (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit K, # 11 Exhibit L, # 12 Exhibit M, # 13 Exhibit N)(Lowry, Marc) (Entered: 10/16/2018) |
| 10/16/2018 | 2424 |  | NOTICE OF HEARING ON MOTION in case as to Daniel Sanchez 2408 MOTION for New Trial *(FRCP Rule 33) or Judgment of Acquittal (FRCP Rule 29)*: Motion Hearing set for 12/17/2018 at 08:30 AM in Las Cruces − 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/16/2018) |
| 10/16/2018 | 2425 |  | NOTICE *TO JOIN MOTION FOR NEW TRIAL [Doc. No. 2420] AND MOTION FOR ACQUITTAL OR, IN THE ALTERNATIVE, DISMISSAL PURSUANT TO RULE 12(b)(2) [Doc. No. 2422]* by Billy Garcia (Castle, James) (Entered: 10/16/2018) |

| 10/16/2018 | 2426 | | NOTICE *of Joinder to Arturo Garcias Motion for Acquittal or, in the Alternative, Dismissal Pursuant to Rule 12(b)(2) [Doc. 2422]* by Edward Troup (Harbour–Valdez, Cori) (Entered: 10/16/2018) |
| 10/16/2018 | 2428 | | NOTICE *OF LODGING OF EXHIBIT A TO ANTHONY RAY BACA'S MOTION FOR A NEW TRIAL AND NOTICE OF JOINDER* by Anthony Ray Baca (Lowry, Marc) (Entered: 10/16/2018) |
| 10/18/2018 | 2429 | | ORDER by District Judge James O. Browning granting 2414 Motion to Dismiss second superseding indictment as to Mauricio Varela (17) (vv) (Entered: 10/18/2018) |
| 10/18/2018 | 2430 | | NOTICE *of Joinder to Defendant Baca's Motion for a New Trial (Doc 2421)* by Carlos Herrera (Bhalla, Carey) (Entered: 10/18/2018) |
| 10/22/2018 | 2431 | | Joinder *to Defendant Baca's and Defendant Herrera's Motions for New Trial (Docs. 2421 and 2413)* by Daniel Sanchez. (Jacks, Amy) Modified text on 10/22/2018 (vv). (Entered: 10/22/2018) |
| 10/25/2018 | 2432 | | Unopposed MOTION for Extension of Time to File *Objections to Presentence Report Second* by Javier Alonso. (Attachments: # 1 Proposed Order)(Chambers, Nathan) (Entered: 10/25/2018) |
| 10/29/2018 | 2433 | | RESPONSE in Opposition by USA as to Billy Garcia re 2416 MOTION to Produce *Post–Conviction Discovery and for In Camera Review* (Attachments: # 1 Exhibit FBI FD–209a, # 2 Exhibit FBI FD–302s, # 3 Exhibit FBI FD–1023)(Armijo, Maria) (Entered: 10/29/2018) |
| 10/30/2018 | 2434 | | ORDER by District Judge James O. Browning granting 2432 Motion for Extension of Time to File as to Javier Alonso (9) (vv) (Entered: 10/30/2018) |
| 10/30/2018 | 2435 | | RESPONSE in Opposition by USA as to Arturo Arnulfo Garcia re 2422 MOTION for Acquittal *Or, In the Alternative, Dismissal Pursuant to Rule 12(b)(2)* (Castellano, Randy) (Entered: 10/30/2018) |
| 10/31/2018 | | | U.S. Probation and Pretrial Services added as interested party.(Avrit, Krystle) (Entered: 10/31/2018) |
| 11/01/2018 | 2436 | | NOTICE OF HEARING as to Conrad Villegas: Change of Plea Hearing set for 11/9/2018 at 10:00 AM in Las Cruces – 460 Organ Courtroom (South Tower) before Magistrate Judge Carmen E. Garza. (vrr) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/01/2018) |
| 11/02/2018 | 2437 | | NOTICE OF HEARING ON MOTION 2408 MOTION for New Trial *(FRCP Rule 33) or Judgment of Acquittal (FRCP Rule 29)*, 2413 MOTION for New Trial , 2415 Joint MOTION for New Trial *Gallegos' Rule 29 Motion for Judgment of Acquittal or in the Alternative Motion for New Trial with Regard to Counts Four and Five*, 2418 MOTION for New Trial , 2419 MOTION for New Trial *Count 1*, 2420 MOTION for New Trial , 2421 MOTION for New Trial and 2422 MOTION for Acquittal Or, In the Alternative, Dismissal Pursuant to Rule 12(b)(2) by Arturo Arnulfo Garcia. Motion Hearing set for 12/17/2018 through 12/19/2018 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] |

| | | | |
|---|---|---|---|
| | | | (Entered: 11/02/2018) |
| 11/02/2018 | 2438 | | REPLY TO RESPONSE to Motion by Billy Garcia re 2416 MOTION to Produce *Post−Conviction Discovery and for In Camera Review* (Attachments: # 1 Appendix A)(Castle, James) (Entered: 11/02/2018) |
| 11/05/2018 | 2440 | | NOTICE OF HEARING ON MOTION in case as to Billy Garcia 2416 MOTION to Produce *Post−Conviction Discovery and for In Camera Review* and 2417 MOTION for Extension of Time to File *Post−Conviction Motions Under FRCP Rule 29 and FRCP Rule 33*: Motion Hearing set for 12/17/2018 at 08:30 AM in Las Cruces − 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/05/2018) |
| 11/05/2018 | 2441 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 2415 Joint MOTION for New Trial *Gallegos' Rule 29 Motion for Judgment of Acquittal or in the Alternative Motion for New Trial with Regard to Counts Four and Five*, 2421 MOTION for New Trial , 2413 MOTION for New Trial , 2419 MOTION for New Trial *Count 1*, 2420 MOTION for New Trial by USA as to Joe Lawrence Gallegos, Edward Troup, Anthony Ray Baca, Carlos Herrera. (Armijo, Maria) (Entered: 11/05/2018) |
| 11/05/2018 | 2442 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 2418 MOTION for New Trial , 2408 MOTION for New Trial *(FRCP Rule 33) or Judgment of Acquittal (FRCP Rule 29)* by USA as to Daniel Sanchez, Andrew Gallegos. (Armijo, Maria) (Entered: 11/05/2018) |
| 11/06/2018 | 2443 | | ORDER by District Judge James O. Browning granting 2441 Motion for Extension of Time to File Response/Reply as to Carlos Herrera (25) (vv) (Entered: 11/06/2018) |
| 11/06/2018 | 2444 | | ORDER by District Judge James O. Browning granting 2442 Motion for Extension of Time to File Response/Reply as to Andrew Gallegos (27) (vv) (Entered: 11/06/2018) |
| 11/09/2018 | 2445 | | AMENDED PLEA AGREEMENT as to Conrad Villegas (vv) (Entered: 11/09/2018) |
| 11/09/2018 | 2446 | | Clerk's Minutes for proceedings held before Magistrate Judge Carmen E. Garza: Plea Hearing as to Conrad Villegas held on 11/9/2018, Plea entered by Conrad Villegas (20) Guilty Count 6,8s,8ss. (Recording Info: LC Organ) (vv) (Entered: 11/09/2018) |
| 11/09/2018 | 2447 | | CONSENT TO PLEA BEFORE US MAGISTRATE JUDGE by Conrad Villegas (vv) (Entered: 11/13/2018) |
| 11/19/2018 | 2448 | | NOTICE OF HEARING ON MOTION in case as to Daniel Sanchez 1841 MOTION to Dismiss *Case for Government's Outrageous Misconduct and Violation of Brady v. Maryland*: Motion Hearing set for 12/17/2018 at 08:30 AM in Las Cruces − 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/19/2018) |
| 11/20/2018 | 2449 | | |

| | | | CJA Appointment of Attorney Leon Encinias for Ruben Hernandez by District Judge James O. Browning (vv) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 11/20/2018) |
|---|---|---|---|
| 11/26/2018 | 2450 | | RESPONSE to Motion by USA as to Andrew Gallegos re 2418 MOTION for New Trial (Armijo, Maria) (Entered: 11/26/2018) |
| 11/26/2018 | 2451 | | RESPONSE to Motion by USA as to Daniel Sanchez re 2408 MOTION for New Trial *(FRCP Rule 33) or Judgment of Acquittal (FRCP Rule 29)* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit)(Castellano, Randy) (Entered: 11/26/2018) |
| 11/30/2018 | 2452 | | RESPONSE to Motion by USA as to Joe Lawrence Gallegos, Andrew Gallegos re 2415 Joint MOTION for New Trial *Gallegos' Rule 29 Motion for Judgment of Acquittal or in the Alternative Motion for New Trial with Regard to Counts Four and Five* (Armijo, Maria) (Entered: 11/30/2018) |
| 11/30/2018 | 2453 | | RESPONSE to Motion by USA as to Joe Lawrence Gallegos re 2419 MOTION for New Trial *Count 1* (Attachments: # 1 Exhibit)(Armijo, Maria) (Entered: 11/30/2018) |
| 11/30/2018 | 2454 | | RESPONSE to Motion by USA as to Carlos Herrera re 2413 MOTION for New Trial (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Castellano, Randy) (Entered: 11/30/2018) |
| 11/30/2018 | 2455 | | TRANSCRIPT Transcript of Excerpt of Testimony of Richard Williamson as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 27 & 30 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 12/7/2018. Redaction Request due 12/21/2018. Redacted Transcript Deadline set for 12/31/2018. Release of Transcript Restriction set for 2/28/2019. (jab) (Entered: 11/30/2018) |
| 11/30/2018 | 2456 | | TRANSCRIPT Excerpt of Testimony of Amber Sutton as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 27 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 12/7/2018. Redaction Request due 12/21/2018. Redacted Transcript Deadline set for 12/31/2018. Release of Transcript Restriction set for 2/28/2019. (jab) (Entered: 11/30/2018) |
| 11/30/2018 | 2457 | | [CASE PARTICIPANTS] RESPONSE to Motion by USA as to Anthony Ray Baca re 2421 MOTION for New Trial (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Armijo, Maria) (Entered: 11/30/2018) |
| 11/30/2018 | 2458 | | TRANSCRIPT Excerpt of Testimony of Michael Sutton as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 30 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 12/7/2018. Redaction Request due 12/21/2018. Redacted Transcript Deadline set for 12/31/2018. Release of Transcript Restriction set for 2/28/2019. (jab) (Entered: 11/30/2018) |
| 11/30/2018 | 2459 | | TRANSCRIPT Excerpt of Testimony of Charlene Baldizan as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 1 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 12/7/2018. Redaction Request due 12/21/2018. Redacted Transcript Deadline set for 12/31/2018. Release of Transcript Restriction set for 2/28/2019. (jab) (Entered: 11/30/2018) |
| 11/30/2018 | 2460 | | RESPONSE to Motion by USA as to Edward Troup re 2420 MOTION for New Trial (Attachments: # 1 Exhibit)(Castellano, Randy) (Entered: 11/30/2018) |
| 12/04/2018 | 2462 | | REPLY TO RESPONSE to Motion by Daniel Sanchez re 2408 MOTION for New Trial *(FRCP Rule 33) or Judgment of Acquittal (FRCP Rule 29)* (Jacks, Amy) (Entered: 12/04/2018) |

| 12/13/2018 | 2463 | | NOTICE *NOTICE TO JOIN MOTION FOR NEW TRIAL [Doc 2420]* by Joe Lawrence Gallegos (Benjamin, Brock) (Entered: 12/13/2018) |
|---|---|---|---|
| 12/13/2018 | 2464 | | NOTICE *NOTICE TO JOIN MOTION FOR ACQUITTAL OR, IN THE ALTERNATIVE, DISMISSAL PURSUANT TO RULE 12(b)(2) [Doc 2422]* by Joe Lawrence Gallegos (Benjamin, Brock) (Entered: 12/13/2018) |
| 12/13/2018 | 2465 | | REPLY TO RESPONSE to Motion by Carlos Herrera re 2413 MOTION for New Trial (Bhalla, Carey) (Entered: 12/13/2018) |
| 12/14/2018 | 2466 | | REPLY TO RESPONSE to Motion by Edward Troup re 2420 MOTION for New Trial (Harbour–Valdez, Cori) (Entered: 12/14/2018) |
| 12/14/2018 | 2467 | | REPLY TO RESPONSE to Motion by Joe Lawrence Gallegos re 2415 Joint MOTION for New Trial *Gallegos' Rule 29 Motion for Judgment of Acquittal or in the Alternative Motion for New Trial with Regard to Counts Four and Five* (Benjamin, Brock) (Entered: 12/14/2018) |
| 12/14/2018 | 2468 | | First MOTION for Extension of Time to File Response/Reply *in Support of Anthony Baca's Motion for a New Trial, Dkt. 2421,* by Anthony Ray Baca. (Lowry, Marc) (Entered: 12/14/2018) |
| 12/15/2018 | 2469 | | REPLY TO RESPONSE to Motion by Anthony Ray Baca re 2421 MOTION for New Trial (Attachments: # 1 Exhibit O, # 2 Exhibit P, # 3 Exhibit T)(Lowry, Marc) (Entered: 12/15/2018) |
| 12/17/2018 | 2470 | | NOTICE *OF LODGING OF THE SUPPLEMENT OF EXHIBITS Q, R AND S TO ANTHONY RAY BACA'S REPLY IN SUPPORT OF HIS MOTION FOR NEW TRIAL* by Anthony Ray Baca re 2469 Reply to Response (Lowry, Marc) (Entered: 12/17/2018) |
| 12/17/2018 | 2484 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Evidentiary Hearing as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 12/17/2018 (Court Reporter: J. Bean) (cab) (Entered: 01/09/2019) |
| 12/19/2018 | 2471 | | ORDER by District Judge James O. Browning granting 2468 Motion for Extension of Time to File Response/Reply as to Anthony Ray Baca (21) (vv) (Entered: 12/19/2018) |
| 12/19/2018 | 2472 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Conrad Villegas<br><br>Related Documents: 2340 PSR – Presentence Report (Work, Rhiannon) (Entered: 12/19/2018) |
| 12/20/2018 | 2474 | | MOTION to Modify Conditions of Release *UNOPPOSED MOTION TO MODIFY CONDITIONS OF RELEASE* by Shauna Gutierrez. (Arellanes, Angela) (Entered: 12/20/2018) |

| 12/28/2018 | 2475 | | Unopposed MOTION for Extension of Time to File *Further Motions for Discovery and/or Motion for New Trial* by Billy Garcia. (Castle, James) (Entered: 12/28/2018) |
|---|---|---|---|
| 12/31/2018 | 2476 | | ORDER by District Judge James O. Browning granting 2474 Motion to Modify Conditions of Release as to Shauna Gutierrez (30) (vv) (Entered: 12/31/2018) |
| 01/04/2019 | 2478 | | ORDER by District Judge James O. Browning granting 2475 Motion for Extension of Time to File as to Billy Garcia (5) (vv) (Entered: 01/04/2019) |
| 01/04/2019 | 2479 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on December 17, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br> Notice of Intent to Request Redaction set for 1/11/2019. Redaction Request due 1/25/2019. Redacted Transcript Deadline set for 2/4/2019. Release of Transcript Restriction set for 4/4/2019. (jab) (Entered: 01/04/2019) |
| 01/04/2019 | 2480 | | TRANSCRIPT of Motion Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on December 18, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 1/11/2019. Redaction Request due 1/25/2019. Redacted Transcript Deadline set for 2/4/2019. Release of Transcript Restriction set for 4/4/2019. (jab) (Entered: 01/04/2019) |
| 01/04/2019 | 2481 | | Unopposed MOTION to Extend (other) *Defendant Anthony Ray Baca's Unopposed Motion for a One Week Extension of Time to File Written Argument in Support of his Motion for New Trial (Dkt. 2421)* by Anthony Ray Baca. (Lowry, Marc) (Entered: 01/04/2019) |
| 01/07/2019 | 2483 | | ORDER by District Judge James O. Browning granting 2481 Unopposed Motion for a One Week Extension of Time to File Written Argument in Support of His Motion to for New Trial as to Anthony Ray Baca (21) (bap) (Entered: 01/08/2019) |
| 01/10/2019 | 2485 | | Unopposed MOTION for Extension of Time to File *Further Motions for Discovery and/or Motion for New Trial* by Billy Garcia. (Castle, James) (Entered: 01/10/2019) |
| 01/10/2019 | 2486 | | Supplemental Juror Questionnaire for Trial 1 (cab) (Entered: 01/10/2019) |
| 01/10/2019 | 2487 | | Supplemental Juror Questionnaire Trial 2 (cab) (Entered: 01/10/2019) |
| 01/11/2019 | 2488 | | BRIEF by Anthony Ray Baca (Lowry, Marc) (Entered: 01/12/2019) |
| 01/14/2019 | 2489 | | ORDER by District Judge James O. Browning granting 2485 Motion for Extension of Time to File Further Motions for Discovery And/Or Motion for New Trial as to Billy Garcia (5) (meq) (Entered: 01/14/2019) |
| 01/15/2019 | 2490 | | NOTICE *Joining Arturo Arnulfo Garcia's Motion for Judgment of Acquittal or in the Alternative, Dismissal Pursuant to Rule 12 (B)(2) [Doc.2422]* by Andrew Gallegos (Torraco, Lisa) (Entered: 01/15/2019) |
| 01/15/2019 | 2491 | | Supplement to MOTION for New Trial by Andrew Gallegos. (Torraco, Lisa) Modified text on 1/16/2019 (vv). (Entered: 01/15/2019) |
| 01/18/2019 | 2493 | | NOTICE OF HEARING as to Conrad Villegas: Sentencing set for 2/21/2019 at 02:00 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 01/18/2019) |
| 01/25/2019 | 2494 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 2488 Brief by USA as to Anthony Ray Baca. (Armijo, Maria) (Entered: 01/25/2019) |

| 01/28/2019 | 2495 | | LETTER from US Attorney to US District Judge James O. Browning (vv) (Entered: 01/28/2019) |
| 01/28/2019 | 2496 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 2491 Supplement to MOTION for New Trial by USA as to Andrew Gallegos. (Armijo, Maria) (Entered: 01/28/2019) |
| 01/30/2019 | 2497 | | ORDER by District Judge James O. Browning granting 2494 Motion for Extension of Time to File Response/Reply as to Anthony Ray Baca (21) (vv) (Entered: 01/30/2019) |
| 02/01/2019 | 2498 | | ORDER by District Judge James O. Browning granting 2496 Motion for Extension of Time to File Response/Reply as to Andrew Gallegos (27) (vv) (Entered: 02/01/2019) |
| 02/04/2019 | 2499 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Robert Martinez (Attachments: # 1 Attachment A)<br><br>Related Documents: 716 Plea Agreement<br>(Mills, David) (Entered: 02/04/2019) |
| 02/06/2019 | 2502 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Eugene Martinez (Attachments: # 1 Attachment A)<br><br>Related Documents: 1138 Plea Agreement<br>(Kord, Amy) (Entered: 02/06/2019) |
| 02/11/2019 | 2504 | | Unopposed MOTION for Extension of Time to File *Further Motions for Discovery and/or Motions for New Trial* by Billy Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Cooper, Robert) (Entered: 02/11/2019) |
| 02/13/2019 | 2506 | | ORDER by District Judge James O. Browning granting 2504 Motion for Extension of Time to File as to Billy Garcia (5) (vv) (Entered: 02/13/2019) |
| 02/14/2019 | 2507 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Carlos Herrera (Attachments: # 1 Attachment A) (Corella, Melissa) (Entered: 02/14/2019) |
| 02/15/2019 | | | U.S. Probation and Pretrial Services added as interested party.(Herman, Aydreanah) (Entered: 02/15/2019) |
| 02/15/2019 | | | U.S. Probation and Pretrial Services added as interested party.(Herman, Aydreanah) (Entered: 02/15/2019) |
| 02/15/2019 | 2510 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Daniel Sanchez (Attachments: # 1 Attachment A) (Herman, Aydreanah) (Entered: 02/15/2019) |
| 02/15/2019 | 2513 | | |

| | | | |
|---|---|---|---|
| | | | [CASE PARTICIPANTS] RESPONSE by USA as to Anthony Ray Baca re 2488 Brief (Attachments: # 1 Exhibit)(Armijo, Maria) (Entered: 02/15/2019) |
| 02/19/2019 | 2515 | | RESPONSE by USA as to Andrew Gallegos re 2491 Supplement to MOTION for New Trial (Castellano, Randy) (Entered: 02/19/2019) |
| 02/21/2019 | 2516 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 2/21/2019 for Conrad Villegas (20), Count(s) 8ss, SENTENCE IMPOSED: CBOP–12 months and 1 day; Supervised Release–1 year; SPA–$100; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 02/21/2019) |
| 02/22/2019 | 2517 | | MOTION for Downward Adjustment *in Defendant's Offense Level* by USA as to Conrad Villegas. (Castellano, Randy) (Entered: 02/22/2019) |
| 02/22/2019 | 2518 | | JUDGMENT by District Judge James O. Browning as to Defendant Conrad Villegas (cab) (Entered: 02/22/2019) |
| 02/22/2019 | 2519 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on January 31, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2520 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, |

| | | |
|---|---|---|
| | | Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 1, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2521 | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 2, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2522 | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence |

Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 5, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019)

| 02/22/2019 | 2523 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 6, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2524 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 7, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2525 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 8, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal** |

|  |  |  |  |
|---|---|---|---|
|  |  |  | **data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2526 |  | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 9, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2527 |  | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 12, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2528 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 13, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2529 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on |

|  |  |  |  |
|---|---|---|---|
|  |  |  | February 14, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2530 |  | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 15, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2531 |  | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, |

| | | | |
|---|---|---|---|
| | | | Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 16, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2532 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 20, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2533 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 21, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2534 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 22, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 5. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal** |

**data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019)

| 02/22/2019 | 2535 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 23, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2536 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 26, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

|  |  |  |  |
|---|---|---|---|
|  |  |  | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2537 |  | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 27, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2538 |  | TRANSCRIPT of Tiral Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on |

| | | |
|---|---|---|
| | | February 28, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2539 | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 1, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2540 | TRANSCRIPT of Tiral Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, |

| | | | |
|---|---|---|---|
| | | | Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 2, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2541 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 5, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2542 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 6, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** <br><br> Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2543 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 7, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal** |

**data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**

Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019)

| 02/22/2019 | 2544 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 8, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven−day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2545 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 9, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505−348−2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/22/2019 | 2546 | | TRANSCRIPT of Verict Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on March 12, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.**<br><br>Notice of Intent to Request Redaction set for 3/1/2019. Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (jab) (Entered: 02/22/2019) |
| 02/25/2019 | 2547 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2514 Motion for Extension of Time to File as to Eugene Martinez (6) (vv) (Entered: 02/25/2019) |
| 02/28/2019 | 2548 | | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald |

| | | |
|---|---|---|
| | | Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on January 29, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 3/7/2019. Redaction Request due 3/21/2019. Redacted Transcript Deadline set for 4/1/2019. Release of Transcript Restriction set for 5/29/2019. (jab) (Entered: 02/28/2019) |
| 02/28/2019 | 2549 | TRANSCRIPT of Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on January 30, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at www.nmcourt.fed.us.** Notice of Intent to Request Redaction set for 3/7/2019. Redaction Request due 3/21/2019. Redacted Transcript Deadline set for 4/1/2019. Release of Transcript Restriction set for 5/29/2019. (jab) (Entered: 02/28/2019) |

| 02/28/2019 | 2550 | | ORDER as to Conrad Villegas by District Judge James O. Browning (vv) (Entered: 02/28/2019) |
| 03/01/2019 | 2551 | | BRIEF by Anthony Ray Baca (Lowry, Marc) (Entered: 03/01/2019) |
| 03/04/2019 | 2552 | | [APPLICABLE PARTY] PRESENCE INVESTIGATION REPORT as to Billy Garcia (Attachments: # 1 Attachment A) (Mills, David) (Entered: 03/04/2019) |
| 03/06/2019 | 2555 | | First MOTION for Extension of Time to File *Objections and Sentencing Memorandum* by Shauna Gutierrez. (Arellanes, Angela) (Entered: 03/06/2019) |
| 03/06/2019 | 2556 | | [CASE PARTICIPANTS] OBJECTION TO PRESENCE INVESTIGATION REPORT by Shauna Gutierrez (Arellanes, Angela) (Entered: 03/06/2019) |
| 03/06/2019 | 2558 | | [CASE PARTICIPANTS] OBJECTION TO PRESENCE INVESTIGATION REPORT by Shauna Gutierrez (Attachments: # 1 Court Documents, # 2 Article, # 3 Medical Records)(Arellanes, Angela) (Entered: 03/06/2019) |
| 03/06/2019 | 2559 | | NOTICE OF HEARING as to Shauna Gutierrez: Sentencing set for 4/22/2019 at 01:30 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2560 | | NOTICE OF HEARING as to Paul Rivera: Sentencing set for 4/22/2019 at 02:30 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2561 | | NOTICE OF HEARING as to Ruben Hernandez: Sentencing set for 4/22/2019 at 03:30 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2562 | | NOTICE OF HEARING as to Jerry Armenta: Sentencing set for 4/17/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2563 | | NOTICE OF HEARING as to Jerry Montoya: Sentencing set for 4/17/2019 at 09:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2564 | | NOTICE OF HEARING as to Timothy Martinez: Sentencing set for 4/17/2019 at 10:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |

| 03/06/2019 | 2565 | | NOTICE OF HEARING as to Robert Martinez: Sentencing set for 4/17/2019 at 11:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| --- | --- | --- | --- |
| 03/06/2019 | 2566 | | NOTICE OF HEARING as to Roy Paul Martinez: Sentencing set for 4/17/2019 at 01:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2567 | | NOTICE OF HEARING as to Javier Alonso: Sentencing set for 4/17/2019 at 02:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2568 | | NOTICE OF HEARING as to Benjamin Clark: Sentencing set for 4/17/2019 at 03:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2569 | | NOTICE OF HEARING as to Leonard Lujan: Sentencing set for 4/18/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2570 | | NOTICE OF HEARING as to Billy Garcia: Sentencing set for 4/23/2019 at 08:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2571 | | NOTICE OF HEARING as to Daniel Sanchez: Sentencing set for 4/23/2019 at 09:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2572 | | NOTICE OF HEARING as to Eugene Martinez: Sentencing set for 4/23/2019 at 10:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/06/2019 | 2573 | | NOTICE OF HEARING as to Carlos Herrera: Sentencing set for 4/23/2019 at 11:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/06/2019) |
| 03/07/2019 | 2574 | | NOTICE *of Attorney Unavailability* by Christopher Garcia (Sirignano, Amy) (Entered: 03/07/2019) |

| 03/07/2019 | 2575 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Carlos Herrera<br><br>Related Documents: 2507 PSR – Presentence Report<br>(Corella, Melissa) (Entered: 03/07/2019) |
| --- | --- | --- | --- |
| 03/11/2019 | 2580 | | ORDER by District Judge James O. Browning granting 2555 Motion for Extension of Time to File as to Shauna Gutierrez (30) (vv) (Entered: 03/11/2019) |
| 03/11/2019 | 2581 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2579 Motion for Order as to Timothy Martinez (16) (vv) (Entered: 03/11/2019) |
| 03/11/2019 | 2582 | | NOTICE OF HEARING as to Daniel Sanchez: Sentencing set for 5/16/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 03/11/2019) |
| 03/11/2019 | 2583 | | NOTICE OF HEARING as to Joe Lawrence Gallegos: Sentencing set for 5/15/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 03/11/2019) |
| 03/11/2019 | 2584 | | NOTICE OF HEARING as to Edward Troup: Sentencing set for 5/15/2019 at 09:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 03/11/2019) |
| 03/11/2019 | 2585 | | NOTICE OF HEARING as to Mario Rodriguez: Sentencing set for 5/15/2019 at 10:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 03/11/2019) |
| 03/11/2019 | 2586 | | NOTICE OF HEARING as to Arturo Arnulfo Garcia: Sentencing set for 5/9/2019 at 09:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 03/11/2019) |
| 03/11/2019 | 2587 | | NOTICE OF HEARING as to Anthony Ray Baca: Sentencing set for 5/9/2019 at 10:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 03/11/2019) |
| 03/11/2019 | 2588 | | NOTICE OF HEARING as to Christopher Garcia: Sentencing set for 5/10/2019 at 09:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 03/11/2019) |

| 03/11/2019 | 2589 | | NOTICE OF HEARING as to Andrew Gallegos: Sentencing set for 5/10/2019 at 10:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/11/2019) |
| 03/13/2019 | 2590 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Javier Alonso<br><br>Related Documents: 2395 PSR – Presentence Report (Kord, Amy) (Entered: 03/13/2019) |
| 03/20/2019 | 2591 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Edward Troup (Attachments: # 1 Attachment A) (Kord, Amy) (Entered: 03/20/2019) |
| 03/20/2019 | 2593 | | [CASE PARTICIPANTS] Joint MOTION to Continue *Sentencing Hearings* by Jerry Montoya as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez. (Attachments: # 1 Exhibit Proposed Order)(Hammond, Larry) (Entered: 03/20/2019) |
| 03/22/2019 | 2595 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Shauna Gutierrez<br><br>Related Documents: 2350 PSR – Presentence Report (Kord, Amy) (Entered: 03/22/2019) |
| 03/25/2019 | 2596 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2594 Motion to Continue sentencing as to Eugene Martinez (6) (vv) (Entered: 03/25/2019) |
| 03/28/2019 | 2597 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Andrew Gallegos (Attachments: # 1 Attachment A) (Work, Rhiannon) (Entered: 03/28/2019) |
| 03/28/2019 | 2599 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Joe Lawrence Gallegos (Attachments: # 1 Attachment A, # 2 Victim Letter, # 3 Victim Letter (2)) (Kord, Amy) (Entered: 03/28/2019) |
| 03/29/2019 | 2601 | | Unopposed MOTION for Extension of Time to File *objections to PSR* by Eugene Martinez. (Couleur, Douglas) (Entered: 03/29/2019) |
| 03/29/2019 | 2602 | | ORDER by District Judge James O. Browning denying 1841 2408 2415 2416 2419 2420 2421 2422 2413 2418 . (vv) (Entered: 03/29/2019) |
| 03/29/2019 | 2603 | | MINUTE ORDER pursuant to the direction of District Judge James O. Browning, the sentencing hearings for defendants Jerry Armenta, Jerry Montoya, Timothy Martinez, Robert Martinez, Roy Paul Martinez, Javier Alonso, Benjamin Clark, Leonard Lujan and Frederico Munoz are |

| | | | |
|---|---|---|---|
| | | | VACATED and will be reset by separate notice at a later date. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/29/2019) |
| 04/01/2019 | 2604 | | Unopposed MOTION for Extension of Time to File *Objections and Corrections to the Presentence Investigation Report* by Edward Troup. (Harbour–Valdez, Cori) (Entered: 04/01/2019) |
| 04/02/2019 | 2605 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Arturo Arnulfo Garcia (Attachments: # 1 Attachment A) (Corella, Melissa) (Entered: 04/02/2019) |
| 04/03/2019 | 2608 | | MINUTE ORDER pursuant to the direction of District Judge James O. Browning, sentencing for Defendants Shauna Gutierrez, Paul Rivera, Ruben Hernandez, Billy Garcia, Carlos Herrera presently set for 4/22/19 and 4/23/19 is hereby VACATED and will be reset by separate notice at a later date. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/03/2019) |
| 04/04/2019 | 2609 | | ORDER by District Judge James O. Browning granting 2601 Motion for Extension of Time to File as to Eugene Martinez (6) (vv) (Entered: 04/04/2019) |
| 04/08/2019 | 2610 | | ORDER by District Judge James O. Browning granting 2604 Motion for Extension of Time to File as to Edward Troup (3) (vv) (Entered: 04/08/2019) |
| 04/11/2019 | | | U.S. Probation and Pretrial Services added as interested party.(Rosiles, Cesar) (Entered: 04/11/2019) |
| 04/11/2019 | 2611 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Mario Rodriguez (Attachments: # 1 Att A)<br><br>Related Documents: 1395 Plea Agreement (Rosiles, Cesar) (Entered: 04/11/2019) |
| 04/11/2019 | 2614 | | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Joe Lawrence Gallegos (Benjamin, Brock) (Entered: 04/11/2019) |
| 04/12/2019 | 2615 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Christopher Garcia (Attachments: # 1 Attachment A)<br><br>Related Documents: 1705 Plea Agreement (Kord, Amy) (Entered: 04/12/2019) |
| 04/18/2019 | 2617 | | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Andrew Gallegos (Torraco, Lisa) (Entered: 04/18/2019) |
| 04/19/2019 | 2618 | | SENTENCING MEMORANDUM by Andrew Gallegos (Torraco, Lisa) (Entered: 04/19/2019) |
| 04/23/2019 | 2619 | | MEMORANDUM OPINION AND ORDER re 2138 Trial Brief by District Judge James O. Browning (vv) (Entered: 04/23/2019) |
| 04/30/2019 | 2622 | | MINUTE ORDER pursuant to the direction of District Judge James O. Browning, the sentencing presently set for Mario Rodriguez set for 5/15/19 is vacated and will be reset by separate notice at a later date. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/30/2019) |
| 05/01/2019 | 2623 | | CJA Appointment of Attorney Sarah M. Gorman for Angel DeLeon by District Judge James O. Browning (vv) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/01/2019) |
| 05/01/2019 | 2624 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Anthony Ray Baca (Attachments: # 1 Attachment A) (Mills, David) (Entered: 05/01/2019) |
| 05/02/2019 | 2626 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Arturo Arnulfo Garcia<br><br>Related Documents: 2605 PSR – Presentence Report (Corella, Melissa) (Entered: 05/02/2019) |
| 05/02/2019 | 2627 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Joe Lawrence Gallegos<br><br>Related Documents: 2599 PSR – Presentence Report (Kord, Amy) (Entered: 05/02/2019) |
| 05/03/2019 | 2629 | | Unopposed MOTION to Continue *MAY 9, 2019 SENTENCING HEARING* by Arturo Arnulfo Garcia as to Arturo Arnulfo Garcia, Anthony Ray Baca. (Blackburn, Billy) (Entered: 05/03/2019) |
| 05/03/2019 | 2630 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Andrew Gallegos<br><br>Related Documents: 2597 PSR – Presentence Report (Kord, Amy) (Entered: 05/03/2019) |
| 05/03/2019 | 2631 | | AMENDED NOTICE OF HEARING as to Daniel Sanchez: Sentencing set for 5/15/2019 at 01:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/03/2019) |
| 05/06/2019 | 2633 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Daniel Sanchez<br><br>Related Documents: 2510 PSR – Presentence Report (Herman, Aydreanah) (Entered: 05/06/2019) |
| 05/06/2019 | 2634 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Edward Troup<br><br>Related Documents: 2591 PSR – Presentence Report (Kord, Amy) (Entered: 05/06/2019) |
| 05/07/2019 | 2635 | | [CASE PARTICIPANTS] Unopposed MOTION to Continue *Motion to Continue Sentencing Hearing* by Joe Lawrence Gallegos. (Benjamin, Brock) (Entered: 05/07/2019) |
| 05/07/2019 | 2636 | | |

| | | | |
|---|---|---|---|
| | | | TRANSCRIPT of PLEA HEARING as to Leonard Lujan held on March 13, 2017, before Magistrate Judge Karen B. Molzen. Court Reporter/Transcriber Bean & Associates, Inc, Telephone number 505–843–9494. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov.**<br><br>Notice of Intent to Request Redaction set for 5/14/2019. Redaction Request due 5/28/2019. Redacted Transcript Deadline set for 6/7/2019. Release of Transcript Restriction set for 8/5/2019.(dxz) (Entered: 05/07/2019) |
| 05/07/2019 | 2637 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Christopher Garcia (Attachments: # 1 Certificate)<br><br>Related Documents: 2615 PSR – Presentence Report<br>(Kord, Amy) (Entered: 05/07/2019) |
| 05/07/2019 | 2638 | | RESPONSE by USA as to Andrew Gallegos re 2617 Objection to Presentence Investigation Report (Castellano, Randy) (Entered: 05/07/2019) |
| 05/08/2019 | | | Reset Hearings AS TO TIME ONLY as to Edward Troup: Sentencing set for 5/15/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/08/2019) |
| 05/08/2019 | | | Set/Reset Hearings AS TO TIME ONLY as to Daniel Sanchez: Sentencing set for 5/15/2019 at 10:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) (Entered: 05/08/2019) |
| 05/08/2019 | 2639 | | ORDER by District Judge James O. Browning granting 2629 Motion to Continue as to Arturo Arnulfo Garcia (10) and Anthony Ray Baca (21) Sentencing set for Arturo Arnulfo Garcia for 6/11/2019 at 09:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. Sentencing set for Anthony Ray Baca 6/11/2019 at 10:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) (Entered: 05/08/2019) |
| 05/08/2019 | | | Set/Reset Hearings as to Christopher Garcia: Sentencing set for 5/10/2019 at 08:31 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. |

| | | | |
|---|---|---|---|
| | | | [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.](cab) (Entered: 05/08/2019) |
| 05/09/2019 | 2641 | | [CASE PARTICIPANTS] RESPONSE by USA as to Christopher Garcia *United States' Sealed Response to Defendant's Sealed Objections to the Presentence Investigation Report* (Castellano, Randy) (Entered: 05/09/2019) |
| 05/09/2019 | 2642 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Andrew Gallegos<br><br>Related Documents: 2597 PSR – Presentence Report, 2630 PSR – Addendum to Presentence Report (Work, Rhiannon) (Entered: 05/09/2019) |
| 05/09/2019 | 2644 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Christopher Garcia<br><br>Related Documents: 2615 PSR – Presentence Report (Kord, Amy) (Entered: 05/09/2019) |
| 05/09/2019 | 2645 | | [APPLICABLE PARTY] 3rd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Andrew Gallegos<br><br>Related Documents: 2597 PSR – Presentence Report, 2642 PSR – Addendum to Presentence Report, 2630 PSR – Addendum to Presentence Report (Work, Rhiannon) (Entered: 05/09/2019) |
| 05/10/2019 | 2646 | | [CASE PARTICIPANTS] SEALED MEMORANDUM OPINION AND ORDER 2632 Objection to Presentence Investigation Report as to Christopher Garcia by District Judge James O. Browning (vv) (Entered: 05/10/2019) |
| 05/10/2019 | 2647 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment *United States' Sealed Motion for Downward Adjustment in Defendant's Offense Level* by USA as to Christopher Garcia. (Armijo, Maria) (Entered: 05/10/2019) |
| 05/10/2019 | 2722 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 5/10/2019 for Andrew Gallegos (27), Count(s) 4s, SENTENCE IMPOSED: CBOP–120 months; Supervised Release–3 years; Count(s) 5s, SENTENCE IMPOSED: CBOP – Life; Supervised Release–5 years; SPA–$200; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 06/27/2019) |
| 05/10/2019 | 2723 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 5/10/2019 for Christopher Garcia (24), Count(s) 10ss, 11ss, SENTENCE IMPOSED: CBOP–120 months; Supervised Release–3 years; SPA–$200. (Court Reporter: J Bean) (vv) (Entered: 06/27/2019) |
| 05/13/2019 | 2649 | | ORDER by District Judge James O. Browning granting 2635 Motion to Continue as to Joe Lawrence Gallegos (2) Sentencing set for 6/11/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (vv) (Entered: 05/13/2019) |

| 05/13/2019 | 2650 | | MEMORANDUM OPINION AND ORDER granting in part and denying in part 1912 MOTION in Limine *SEALED re Statements against Penal Interest under Rule 804(b)(3)* by District Judge James O. Browning (vv) (Entered: 05/13/2019) |
| --- | --- | --- | --- |
| 05/13/2019 | 2652 | | SENTENCING MEMORANDUM by Daniel Sanchez (Jacks, Amy) (Entered: 05/13/2019) |
| 05/14/2019 | 2653 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Daniel Sanchez<br><br>Related Documents: 2633 PSR – Addendum to Presentence Report, 2510 PSR – Presentence Report<br>(Herman, Aydreanah) (Entered: 05/14/2019) |
| 05/14/2019 | 2654 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Edward Troup (Attachments: # 1 Victim Impact Statement)<br><br>Related Documents: 2591 PSR – Presentence Report, 2634 PSR – Addendum to Presentence Report<br>(Kord, Amy) (Entered: 05/14/2019) |
| 05/14/2019 | 2656 | | RESPONSE by USA as to Edward Troup *'s PSR Objections and Motion for Downward Departure* (Castellano, Randy) (Entered: 05/14/2019) |
| 05/15/2019 | 2657 | | MOTION to Dismiss *Count 12 of the Second Superseding Indictment* by USA as to Christopher Garcia. (Armijo, Maria) (Entered: 05/15/2019) |
| 05/15/2019 | 2718 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 5/15/2019 for Daniel Sanchez (18), Count(s) 6sss, SENTENCE IMPOSED:CBOP–120 months; Supervised Release–3 years; Count(s) 7sss, SENTENCE IMPOSED:CBOP–Life; Supervised Release–5 concurrently years; SPA–$200; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 06/19/2019) |
| 05/15/2019 | 2719 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 5/15/2019 for Edward Troup (3), Count(s) 1ss, 3ss, SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years concurrently; SPA–$200; deft in custody. (Court Reporter: J Bean) (Attachments: # 1 Exhibit) (vv) (Entered: 06/19/2019) |
| 05/17/2019 | 2658 | | NOTICE OF HEARING as to Billy Garcia: Sentencing set for 6/11/2019 at 03:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 05/17/2019) |
| 05/21/2019 | 2659 | | NOTICE OF HEARING as to Shauna Gutierrez: Sentencing set for 6/12/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 05/21/2019) |
| 05/21/2019 | 2660 | | AMENDED NOTICE OF HEARING as to Anthony Ray Baca: Sentencing set for 6/12/2019 at 11:30 AM in Las Cruces – 320 Tortugas Courtroom |

| | | | |
|---|---|---|---|
| | | | (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/21/2019) |
| 05/21/2019 | 2661 | | NOTICE OF HEARING as to Carlos Herrera: Sentencing set for 6/11/2019 at 02:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/21/2019) |
| 05/23/2019 | 2662 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Redisclosed for Corrections to PSR and Attachment A) as to Arturo Arnulfo Garcia (Attachments: # 1 Attachment A, # 2 Changes Memorandum) (Corella, Melissa) (Entered: 05/23/2019) |
| 05/23/2019 | 2664 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Redisclosed for Corrections to PSR and Attachment A) as to Carlos Herrera (Attachments: # 1 Attachment A, # 2 Changes Memorandum) (Corella, Melissa) (Entered: 05/23/2019) |
| 05/24/2019 | 2666 | | ORDER permitting Daniel Sanchez to retain possession of his written legal materials and his computer tablet, headphones and charger by District Judge James O. Browning (vv) (Entered: 05/24/2019) |
| 05/28/2019 | 2667 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2647 Motion for Downward Adjustment as to Christopher Garcia (24) (vv) (Entered: 05/28/2019) |
| 05/28/2019 | 2668 | | NOTICE *OF UNAVAILABILITY* by Christopher Garcia (Sirignano, Amy) (Entered: 05/28/2019) |
| 05/29/2019 | 2669 | | RESPONSE by USA as to Joe Lawrence Gallegos re 2614 Objection to Presentence Investigation Report (Castellano, Randy) (Entered: 05/29/2019) |
| 05/31/2019 | 2672 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Shauna Gutierrez (Attachments: # 1 Attachment A) Related Documents: 2595 PSR – Addendum to Presentence Report, 2350 PSR – Presentence Report (Kord, Amy) (Entered: 05/31/2019) |
| 06/03/2019 | 2674 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Billy Garcia (Attachments: # 1 Victim Impact Statement (Victim F.C.)) Related Documents: 2552 PSR – Presentence Report (Mills, David) (Entered: 06/03/2019) |
| 06/04/2019 | 2676 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Joe Lawrence Gallegos Related Documents: 2627 PSR – Addendum to Presentence Report, 2599 PSR – Presentence Report (Kord, Amy) (Entered: 06/04/2019) |

| 06/04/2019 | 2678 | | Unopposed MOTION *to Retain Tablet and Related Materials, and Objections to PSR* by Arturo Arnulfo Garcia. (Davidson, Scott) (Entered: 06/04/2019) |
| 06/05/2019 | 2679 | | Unopposed MOTION for Order *for Permission to Retain Computer Tablet and Legal Materials* by Billy Garcia. (Cooper, Robert) (Entered: 06/05/2019) |
| 06/06/2019 | 2680 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Arturo Arnulfo Garcia<br><br>Related Documents: 2605 PSR – Presentence Report, 2626 PSR – Addendum to Presentence Report, 2662 PSR – Presentence Report (Corella, Melissa) (Entered: 06/06/2019) |
| 06/06/2019 | 2682 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (PSR re–disclosed based on Informal Objections and discrepancies) as to Anthony Ray Baca (Attachments: # 1 Attachment A, # 2 Victim Impact Letter (J.M.'s wife)) (Mills, David) (Entered: 06/06/2019) |
| 06/07/2019 | 2684 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Billy Garcia (Attachments: # 1 Victim Impact Statement (R.G.))<br><br>Related Documents: 2552 PSR – Presentence Report (Mills, David) (Entered: 06/07/2019) |
| 06/07/2019 | 2685 | | First MOTION to Continue to Shauna Gutierrez. (Arellanes, Angela) (Entered: 06/07/2019) |
| 06/10/2019 | 2686 | | [APPLICABLE PARTY] 2nd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Carlos Herrera<br><br>Related Documents: 2575 PSR – Addendum to Presentence Report, 2664 PSR – Presentence Report, 2507 PSR – Presentence Report (Corella, Melissa) (Entered: 06/10/2019) |
| 06/10/2019 | 2687 | | NOTICE OF HEARING as to Shauna Gutierrez: Change of Plea Hearing set for 6/11/2019 at 11:00 AM in Las Cruces – 380 Animas Courtroom (South Tower) before Magistrate Judge Carmen E. Garza. (bw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 06/10/2019) |
| 06/10/2019 | 2688 | | ORDER by District Judge James O. Browning granting 2679 Motion for Order as to Billy Garcia (5) (vv) (Entered: 06/10/2019) |
| 06/10/2019 | 2689 | | Addendum to sentencing memorandum by Shauna Gutierrez. (Attachments: # 1 Supplement Letters of Recommendation)(Arellanes, Angela) Modified on 6/10/2019 (vv). (Entered: 06/10/2019) |
| 06/10/2019 | 2690 | | [CASE PARTICIPANTS] SENTENCING MEMORANDUM by Anthony Ray Baca (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Duncan, Theresa) (Entered: 06/10/2019) |
| 06/11/2019 | 2691 | | Clerk's Minutes for proceedings held before Magistrate Judge Carmen E. Garza: Change of Plea Hearing as to Shauna Gutierrez continued on 6/11/2019; Plea hearing to be continued to 2:00 p.m. today to allow more |

| | | | |
|---|---|---|---|
| | | | time to talk with attorney; Defendant on release (AUSA: Maria Armijo; Defense: Angela Arellanes)(LCR–Animas: 11:20–11:35 A.M.) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (bw) (Entered: 06/11/2019) |
| 06/11/2019 | 2692 | | NOTICE OF HEARING as to Shauna Gutierrez: Change of Plea Hearing set for 6/11/2019 at 2:00 PM in Las Cruces – 380 Animas Courtroom (South Tower) before Magistrate Judge Carmen E. Garza. (bw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 06/11/2019) |
| 06/11/2019 | 2693 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 6/11/2019 for Arturo Arnulfo Garcia (10), Count(s) 3ss, SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years; SPA–$100; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 06/11/2019) |
| 06/11/2019 | 2694 | | CONSENT TO PLEA BEFORE US MAGISTRATE JUDGE by Shauna Gutierrez (vv) (Entered: 06/11/2019) |
| 06/11/2019 | 2695 | | AMENDED PLEA AGREEMENT as to Shauna Gutierrez (vv) (Entered: 06/11/2019) |
| 06/11/2019 | 2696 | | Clerk's Minutes for proceedings held before Magistrate Judge Carmen E. Garza: Plea Hearing as to Shauna Gutierrez held on 6/11/2019, Plea entered by Shauna Gutierrez (30) Guilty Count 14,14s,15,15s,16s. (Recording Info: LC–Animas) (vv) (Entered: 06/11/2019) |
| 06/11/2019 | 2697 | | [APPLICABLE PARTY] 3rd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Shauna Gutierrez<br><br>Related Documents: 2595 PSR – Addendum to Presentence Report, 2672 PSR – Addendum to Presentence Report, 2350 PSR – Presentence Report (Kord, Amy) (Entered: 06/11/2019) |
| 06/11/2019 | 2699 | | MEMORANDUM OPINION AND ORDER overruling 2558 Objection to Presentence Investigation Report as to Shauna Gutierrez by District Judge James O. Browning (vv) (Entered: 06/11/2019) |
| 06/11/2019 | 2700 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 6/11/2019 for Joe Lawrence Gallegos (2), Count(s) 1ss, 5ss, SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years concurrently; Count(s) 4ss, SENTENCE IMPOSED: CBOP–120 months concurrently; Supervised Release–3 years concurrently; SPA–$300; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 06/11/2019) |
| 06/11/2019 | 2701 | | ORDER permitting to Edward Troup to retain possession of his written legal materials and his computer tablet, headphones and charger by District Judge James O. Browning (vv) (Entered: 06/11/2019) |
| 06/11/2019 | 2702 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 6/11/2019 for Billy Garcia (5), Count(s) 1ss–2ss, SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years concurrently; SPA–$200; Restitution–Held open for 90 days; deft in custody. |

| | | | |
|---|---|---|---|
| | | | (Court Reporter: J Bean) (vv) (Entered: 06/11/2019) |
| 06/11/2019 | 2703 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Anthony Ray Baca<br><br>Related Documents: 2682 PSR – Presentence Report (Mills, David) (Entered: 06/11/2019) |
| 06/11/2019 | 2706 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 6/11/2019 for Carlos Herrera (25), Count(s) 6ss, SENTENCE IMPOSED: CBOP–120 months; Supervised Release–3 years; Count(s) 7ss, SENTENCE IMPOSED: CBOP–Life; Supervised Release–5 years; SPA–$200; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 06/12/2019) |
| 06/12/2019 | 2704 | | [APPLICABLE PARTY] 3rd PRESENTENCE INVESTIGATION REPORT (Revised to Reflect Corrections Noted at Sentencing) as to Arturo Arnulfo Garcia (Corella, Melissa) (Entered: 06/12/2019) |
| 06/12/2019 | 2705 | | [APPLICABLE PARTY] MEMORANDUM (Corrections Noted at Sentencing) as to Arturo Arnulfo Garcia<br><br>Related Documents: 2704 PSR – Presentence Report (Corella, Melissa) (Entered: 06/12/2019) |
| 06/12/2019 | 2707 | | Unopposed MOTION to Withdraw as Attorney by Steve Potolsky by Mario Rodriguez. (Potolsky, Steven) (Entered: 06/12/2019) |
| 06/12/2019 | 2708 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment *in Defendant's Offense Level* by USA as to Shauna Gutierrez. (Armijo, Maria) (Entered: 06/12/2019) |
| 06/12/2019 | 2709 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 6/12/2019 for Shauna Gutierrez (30), Count(s) 14s, 15s, 16s, SENTENCE IMPOSED: CBOP–36 months concurrent; Supervised Release–3 years concurrent; SPA–$300; deft on conditions of release. (Court Reporter: J Bean) (vv) (Entered: 06/12/2019) |
| 06/12/2019 | 2711 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 6/12/2019 for Anthony Ray Baca (21), Count(s) 6sss, 9sss–10sss, SENTENCE IMPOSED: CBOP–120 months; Supervised Release–3 years concurrent; Count(s) 7sss, SENTENCE IMPOSED: CBOP–Life; Supervised Release–3 years concurrent; SPA–$400; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 06/14/2019) |
| 06/13/2019 | 2710 | | Unopposed MOTION to Withdraw as Attorney by Christopher W. Adams by Christopher Garcia. (Adams, Christopher) (Entered: 06/13/2019) |
| 06/17/2019 | 2712 | | Unopposed MOTION *for Retention of Tablet and Related Materials* by Andrew Gallegos. (Torraco, Lisa) (Entered: 06/17/2019) |
| 06/17/2019 | 2713 | | ORDER granting 2678 Unopposed MOTION *to Retain Tablet and Related Materials, and Objections to PSR* filed by Arturo Arnulfo Garcia by District Judge James O. Browning (vv) (Entered: 06/17/2019) |

| 06/18/2019 | 2714 | | ORDER by District Judge James O. Browning granting 2710 Motion to Withdraw as Attorney. Christopher W Adams withdrawn from case as to Christopher Garcia (24) (vv) (Entered: 06/18/2019) |
|---|---|---|---|
| 06/18/2019 | 2715 | | [CASE PARTICIPANTS] SEALED ORDER as to Shauna Gutierrez granting 2708 MOTION for Downward Adjustment *in Defendant's Offense Level* filed by USA by District Judge James O. Browning (vv) (Entered: 06/18/2019) |
| 06/18/2019 | 2716 | | ORDER permitting Carlos Herrera to retain possession of his written legal materials and his computer tablet, headphones and charger by District Judge James O. Browning (vv) (Entered: 06/18/2019) |
| 06/18/2019 | 2717 | | FILED IN ERROR–NOTICE OF APPEAL by Joe Lawrence Gallegos (Filing Fee – Waived) (Benjamin, Brock) Modified on 6/19/2019 (vv). (Entered: 06/18/2019) |
| 06/20/2019 | 2720 | | NOTICE OF HEARING as to Paul Rivera: Sentencing set for 7/25/2019 at 10:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 06/20/2019) |
| 06/21/2019 | 2721 | | NOTICE *of Attorney Unavailability* by Christopher Garcia from Wednesday, July 3, 2019 through and including Tuesday, July 9, 2019. (Sirignano, Amy) Modified on 6/21/2019 (vv). (Entered: 06/21/2019) |
| 06/27/2019 | 2724 | | JUDGMENT as to Christopher Garcia by District Judge James O. Browning (vv) (Entered: 06/27/2019) |
| 06/27/2019 | 2725 | | JUDGMENT as to Carlos Herrera by District Judge James O. Browning (vv) (Entered: 06/27/2019) |
| 06/28/2019 | 2726 | | [APPLICABLE PARTY] PRESENTENCE INVESTIGATION REPORT as to Mario Rodriguez (Attachments: # 1 Att A) <br><br> Related Documents: 1395 Plea Agreement <br> (Rosiles, Cesar) (Entered: 06/28/2019) |
| 06/28/2019 | 2729 | | ORDER by District Judge James O. Browning granting 2707 Motion to Withdraw as Attorney. Steven M Potolsky withdrawn from case as to Mario Rodriguez (15) (cab) (Entered: 06/28/2019) |
| 07/03/2019 | 2731 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Revised Presentence Report – Updates) as to Paul Rivera (Attachments: # 1 Attachment A) <br><br> Related Documents: 877 Plea Agreement <br> (Kord, Amy) (Entered: 07/03/2019) |
| 07/08/2019 | 2735 | | TRANSCRIPT of Excerpt Testimony of Guadalupe Urquizo as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos |

| | | | |
|---|---|---|---|
| | | | Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on February 5 & 6, 2018, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov.**<br><br>Notice of Intent to Request Redaction set for 7/15/2019. Redaction Request due 7/29/2019. Redacted Transcript Deadline set for 8/8/2019. Release of Transcript Restriction set for 10/7/2019. (jab) (Entered: 07/08/2019) |
| 07/10/2019 | 2736 | | Unopposed MOTION for Extension of Time to File *Notice of Appeal* by Carlos Herrera. (Maynard, William) (Entered: 07/10/2019) |
| 07/10/2019 | 2737 | | NOTICE OF APPEAL by Christopher Garcia re 2724 Judgment (Filing Fee – Waived) (Sirignano, Amy) (Entered: 07/10/2019) |
| 07/11/2019 | 2738 | | ORDER by District Judge James O. Browning granting 2736 Motion for Extension of Time to File Notice of Appeal as to Carlos Herrera (25) (meq) (Entered: 07/11/2019) |
| 07/11/2019 | 2739 | | AMENDED ORDER by District Judge James O. Browning granting 2736 Motion for Extension of Time to File Notice of Appeal as to Carlos Herrera (25) (meq) (Entered: 07/11/2019) |
| 07/12/2019 | 2740 | | Transmission of Preliminary Record as to Christopher Garcia to US Court of Appeals re 2737 Notice of Appeal – Final Judgment (bap) (Entered: 07/12/2019) |
| 07/12/2019 | 2741 | | USCA Information Letter with Case Number as to Christopher Garcia 19–2109 for 2737 Notice of Appeal – Final Judgment filed by Christopher Garcia. (bap) (Entered: 07/15/2019) |
| 07/16/2019 | 2742 | | [CASE PARTICIPANTS] SENTENCING MEMORANDUM by Paul Rivera (Romero, Keith) (Entered: 07/16/2019) |
| 07/16/2019 | 2743 | | TRANSCRIPT of Sentencing of Christopher Garcia as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy |

| | | | |
|---|---|---|---|
| | | | Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 10, 2019, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov.** Notice of Intent to Request Redaction set for 7/23/2019. Redaction Request due 8/6/2019. Redacted Transcript Deadline set for 8/16/2019. Release of Transcript Restriction set for 10/15/2019. (jab) (Entered: 07/16/2019) |
| 07/18/2019 | 2744 | | [APPLICABLE PARTY] MEMORANDUM (Modification of Standard Condition 12) as to Paul Rivera (Attachments: # 1 Attachment A) Related Documents: 2731 PSR – Presentence Report (Kord, Amy) (Entered: 07/18/2019) |
| 07/18/2019 | 2745 | | [CASE PARTICIPANTS] SENTENCING MEMORANDUM by Ruben Hernandez (Attachments: # 1 Exhibit, # 2 Exhibit)(Encinias, Leon) (Entered: 07/18/2019) |
| 07/22/2019 | 2746 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment *United States' Sealed Motion for Downward Adjustment in Defendant's Offense Level* by USA as to Paul Rivera. (Castellano, Randy) (Entered: 07/22/2019) |
| 07/23/2019 | 2747 | | AMENDED NOTICE OF HEARING as to Paul Rivera: Sentencing set for 7/25/2019 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/23/2019) |
| 07/24/2019 | 2748 | | NOTICE OF HEARING as to Benjamin Clark: Sentencing set for 8/15/2019 at 04:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/24/2019) |
| 07/24/2019 | 2749 | | NOTICE OF HEARING as to Ruben Hernandez: Sentencing set for 8/16/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/24/2019) |

| 07/24/2019 | 2750 | | NOTICE OF HEARING as to Jerry Armenta: Sentencing set for 8/16/2019 at 09:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/24/2019) |
|---|---|---|---|
| 07/24/2019 | 2751 | | NOTICE OF HEARING as to Jerry Montoya: Sentencing set for 8/16/2019 at 10:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/24/2019) |
| 07/25/2019 | 2752 | | [CASE PARTICIPANTS] Sealed ORDER by District Judge James O. Browning granting 2734 Motion to Seal Document as to Paul Rivera (29) (vv) (Entered: 07/25/2019) |
| 07/25/2019 | 2753 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 7/25/2019 for Paul Rivera (29), Count(s) 14, 15, SENTENCE IMPOSED: CBOP–46 months concurrently; Supervised Release–3 years concurrently; SPA–waived; deft in custody. (Court Reporter: J Russin) (vv) (Entered: 07/25/2019) |
| 07/25/2019 | 2754 | | [CASE PARTICIPANTS] NOTICE *United States' Sealed Petition for Remittance of the Special Penalty Assessment* by USA as to Paul Rivera (Castellano, Randy) (Entered: 07/25/2019) |
| 07/26/2019 | 2756 | | AMENDED NOTICE OF HEARING as to Jerry Montoya: Sentencing set for 8/14/2019 at 02:00 PM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/26/2019) |
| 07/26/2019 | 2757 | | NOTICE OF HEARING as to Eugene Martinez: Sentencing set for 8/16/2019 at 10:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/26/2019) |
| 07/26/2019 | 2758 | | [CASE PARTICIPANTS] Sealed ORDER as to Paul Rivera granting 2746 MOTION for Downward Adjustment in Defendant's Offense Level by District Judge James O. Browning (vv) (Entered: 07/26/2019) |
| 07/26/2019 | 2759 | | TRANSCRIPT of Plea Proceedings as to Christopher Garcia held on January 25, 2018, before Magistrate Judge Kevin R. Sweazea. Court Reporter/Transcriber Recorded; LCR – Sierra Blanca, Telephone number 361–949–2988. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal** |

|  |  |  | **data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov**.<br><br>Notice of Intent to Request Redaction set for 8/2/2019. Redaction Request due 8/16/2019. Redacted Transcript Deadline set for 8/26/2019. Release of Transcript Restriction set for 10/24/2019. (jab) (Entered: 07/26/2019) |
|---|---|---|---|
| 07/26/2019 | 2761 |  | TRANSCRIPT ORDER FORM by Christopher Garcia for the 2737 Notice of Appeal – Final Judgment (Sirignano, Amy) (Entered: 07/26/2019) |
| 07/26/2019 | 2762 |  | ORDER OF USCA granting attorney Amy Sirignano's motion to continue appointment as to Christopher Garcia (vv) (Entered: 07/29/2019) |
| 07/29/2019 | 2763 |  | [CASE PARTICIPANTS] SEALED ORDER as to Paul Rivera granting 2754 Petition for remittance of SPA filed by USA by District Judge James O. Browning (vv) (Entered: 07/29/2019) |
| 07/29/2019 | 2764 |  | ORDER granting 2712 Unopposed MOTION *for Retention of Tablet and Related Materials* filed by Andrew Gallegos by District Judge James O. Browning (vv) (Entered: 07/29/2019) |
| 07/30/2019 | 2765 |  | AMENDED NOTICE OF HEARING as to Benjamin Clark: Sentencing set for 8/29/2019 at 01:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/30/2019) |
| 07/30/2019 | 2766 |  | AMENDED NOTICE OF HEARING as to Jerry Montoya: Sentencing set for 8/29/2019 at 02:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/30/2019) |
| 07/31/2019 | 2768 |  | NOTICE OF HEARING as to Timothy Martinez: Sentencing set for 10/22/2019 at 10:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/31/2019) |
| 07/31/2019 | 2769 |  | NOTICE OF HEARING as to Robert Martinez: Sentencing set for 10/22/2019 at 11:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/31/2019) |
| 07/31/2019 | 2770 |  | NOTICE OF HEARING as to Roy Paul Martinez: Sentencing set for 10/22/2019 at 01:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/31/2019) |
| 07/31/2019 | 2771 |  | NOTICE OF HEARING as to Javier Alonso: Sentencing set for 10/22/2019 at 02:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before |

| | | | District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 07/31/2019) |
|---|---|---|---|
| 07/31/2019 | 2772 | | NOTICE OF HEARING as to Leonard Lujan: Sentencing set for 10/23/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 07/31/2019) |
| 07/31/2019 | 2773 | | NOTICE OF HEARING as to Mario Rodriguez: Sentencing set for 10/22/2019 at 03:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 07/31/2019) |
| 07/31/2019 | 2774 | | FILED IN ERROR–NOTICE OF HEARING as to Robert Martinez: Sentencing set for 10/22/2019 at 04:30 PM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>Modified on 7/31/2019 (vv). (Entered: 07/31/2019) |
| 08/02/2019 | 2775 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2767 Motion to Continue as to Eugene Martinez (6) Sentencing set for 10/22/2019 at 09:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (vv) (Entered: 08/02/2019) |
| 08/05/2019 | 2776 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment by USA as to Ruben Hernandez. (Armijo, Maria) (Entered: 08/05/2019) |
| 08/05/2019 | 2777 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment by USA as to Jerry Armenta. (Castellano, Randy) (Entered: 08/05/2019) |
| 08/07/2019 | 2779 | | MOTION to Withdraw as Attorney by James Castle by Billy Garcia. (Castle, James) (Entered: 08/07/2019) |
| 08/09/2019 | 2782 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Redisclosure of Presentence Report) as to Benjamin Clark (Attachments: # 1 Attachment A)<br><br>Related Documents: 768 Plea Agreement<br>(Kord, Amy) (Entered: 08/09/2019) |
| 08/09/2019 | 2785 | | NOTICE OF APPEAL by Carlos Herrera re 2725 Judgment (Filing Fee – Waived) (Maynard, William) (Entered: 08/09/2019) |
| 08/09/2019 | 2786 | | Transmission of Preliminary Record as to Carlos Herrera to US Court of Appeals re 2785 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit)(vv) (Entered: 08/09/2019) |
| 08/09/2019 | 2787 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2776 Motion for Downward Adjustment as to Ruben Hernandez (12) (vv) (Entered: 08/09/2019) |
| 08/09/2019 | 2788 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2777 Motion for Downward Adjustment as to Jerry |

| | | | |
|---|---|---|---|
| | | | Armenta (13) (vv) (Entered: 08/09/2019) |
| 08/09/2019 | 2791 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Updated Presentence Report; Updated Attachment A; and Victim Letter) as to Jerry Armenta (Attachments: # 1 Updates to Presentence Report, # 2 Attachment A, # 3 Victim Letter from Wife) |
| | | | Related Documents: 802 Plea Agreement (Kord, Amy) (Entered: 08/09/2019) |
| 08/09/2019 | 2793 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Updated Presentence Report; Updated Attachment A; and Victim Letter) as to Jerry Montoya (Attachments: # 1 Memorandum Regarding Updates, # 2 Attachment A, # 3 Victim Letter from Wife) |
| | | | Related Documents: 855 Plea Agreement (Kord, Amy) (Entered: 08/09/2019) |
| 08/09/2019 | 2795 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT as to Ruben Hernandez (Attachments: # 1 Memo outlining changes to PSR) |
| | | | Related Documents: 880 Plea Agreement (Work, Rhiannon) (Entered: 08/09/2019) |
| 08/09/2019 | 2798 | | USCA Information Letter with Case Number as to Carlos Herrera 19–2126 for 2785 Notice of Appeal – Final Judgment. (vv) (Entered: 08/12/2019) |
| 08/12/2019 | 2797 | | [APPLICABLE PARTY] MEMORANDUM (Re–disclosure of Attachment A) as to Ruben Hernandez (Attachments: # 1 Attachment A) |
| | | | (This filing relates to preexisting documents not disclosed in CMECF) (Work, Rhiannon) (Entered: 08/12/2019) |
| 08/13/2019 | 2799 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2781 Motion to Seal as to Jerry Armenta (13) (vv) (Entered: 08/13/2019) |
| 08/13/2019 | 2800 | | [CASE PARTICIPANTS] MOTION for Leave to Appear Telephonically Attorney: Larry A. Hammond. by Jerry Montoya as to Ruben Hernandez, Jerry Armenta. (Attachments: # 1 Exhibit Proposed Order)(Hammond, Larry) (Entered: 08/13/2019) |
| 08/13/2019 | 2801 | | [CASE PARTICIPANTS] OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Ruben Hernandez (Attachments: # 1 Exhibit)(Encinias, Leon) (Entered: 08/13/2019) |
| 08/14/2019 | 2802 | | Transmitted Record on Appeal in 3 Volume(s) to US Court of Appeals as to Christopher Garcia re 2737 Notice of Appeal – Final Judgment (vv) (Entered: 08/14/2019) |
| 08/14/2019 | 2805 | | NOTICE of Docketing Record on Appeal from USCA as to Christopher Garcia re 2737 Notice of Appeal – Final Judgment. USCA Case Number 19–2109 (vv) (Entered: 08/14/2019) |
| 08/15/2019 | 2806 | | |

| | | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Ruben Hernandez<br><br>Related Documents: 2795 PSR – Presentence Report (Work, Rhiannon) (Entered: 08/15/2019) |
|---|---|---|---|
| 08/16/2019 | 2808 | | TRANSCRIPT ORDER FORM by Carlos Herrera for the 2785 Notice of Appeal – Final Judgment (Maynard, William) (Entered: 08/16/2019) |
| 08/16/2019 | 2809 | | [CASE PARTICIPANTS] Sealed ORDER by District Judge James O. Browning granting 2804 Motion to Seal Document as to Ruben Hernandez (12) (vv) (Entered: 08/16/2019) |
| 08/16/2019 | 2810 | | [CASE PARTICIPANTS] DESIGNATION OF RECORD ON APPEAL by Carlos Herrera re 2785 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit Docket Sheet designations)(Maynard, William) (Entered: 08/16/2019) |
| 08/16/2019 | 2811 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 8/16/2019 for Ruben Hernandez (12), Count(s) 3s, SENTENCE IMPOSED: CBOP−1357 days; Supervised Release−5 years; SPA−$100; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 08/16/2019) |
| 08/16/2019 | 2812 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 8/16/2019 for Jerry Armenta (13), Count(s) 6s, SENTENCE IMPOSED: CBOP−120 months; Supervised Release−3 years concurrently; Count(s) 7ss, SENTENCE IMPOSED: CBOP−140 months concurrently; Supervised Release−5 years concurrently; SPA−$200; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 08/16/2019) |
| 08/16/2019 | 2813 | | [CASE PARTICIPANTS] NOTICE *of Withdrawal of Objections to PSR* by Ruben Hernandez (Encinias, Leon) (Entered: 08/16/2019) |
| 08/19/2019 | | | U.S. Probation and Pretrial Services added as interested party.(Barela, Kelly) (Entered: 08/19/2019) |
| 08/19/2019 | 2814 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning as to Ruben Hernandez granting 2790 Ex Parte MOTION to Seal *Motion for Downward Departure* filed by USA (vv) (Entered: 08/19/2019) |
| 08/20/2019 | 2815 | | ORDER OF USCA granting attorneys William R. Maynard and Carey C. Bhalla's motion to withdraw and appointing attorney Ryan Villa to represent appellant Carlos Herrera in case (vv) (Entered: 08/20/2019) |
| 08/20/2019 | | | Attorney update in case as to Carlos Herrera. Attorney Ryan J Villa for Carlos Herrera added. Attorney Carey Corlew Bhalla and William R. Maynard terminated. (vv) (Entered: 08/20/2019) |
| 08/22/2019 | 2817 | | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Benjamin Clark (Herrera, Jerry) (Entered: 08/22/2019) |
| 08/23/2019 | 2818 | | JUDGMENT as to Jerry Armenta by District Judge James O. Browning (vv) (Entered: 08/23/2019) |
| 08/23/2019 | 2824 | | |

| | | | |
|---|---|---|---|
| | | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Benjamin Clark<br><br>Related Documents: 2782 PSR – Presentence Report<br>(Mills, David) (Entered: 08/23/2019) |
| 08/24/2019 | 2825 | | [CASE PARTICIPANTS] OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Benjamin Clark (Herrera, Jerry) (Entered: 08/24/2019) |
| 08/26/2019 | 2827 | | ORDER by District Judge James O. Browning granting 2800 MOTION for Leave to Appear Telephonically by Attorney Larry A. Hammond as to Ruben Hernandez, Jerry Armenta (vv) (Entered: 08/26/2019) |
| 08/28/2019 | 2829 | | ORDER by District Judge James O. Browning as to Benjamin Clark (cab) (Entered: 08/28/2019) |
| 08/28/2019 | 2831 | | AMENDED ORDER by District Judge James O. Browning as to Benjamin Clark re 2829 Order (vv) (Entered: 08/28/2019) |
| 08/28/2019 | 2832 | | [APPLICABLE PARTY] 3rd ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Billy Garcia<br><br>Related Documents: 2552 PSR – Presentence Report, 2684 PSR – Addendum to Presentence Report<br>(Mills, David) (Entered: 08/28/2019) |
| 08/28/2019 | 2833 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Jerry Montoya<br><br>Related Documents: 2793 PSR – Presentence Report,<br>(Mills, David) (Entered: 08/28/2019) |
| 08/28/2019 | 2834 | | ORDER as to Anthony Ray Baca by District Judge James O. Browning (vv) (Entered: 08/28/2019) |
| 08/29/2019 | 2835 | | MEMORANDUM OPINION AND ORDER overruling 2817 2825 Objection to Presentence Investigation Report as to Benjamin Clark by District Judge James O. Browning (vv) (Entered: 08/29/2019) |
| 08/29/2019 | 2836 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment by USA as to Jerry Montoya. (Armijo, Maria) (Entered: 08/29/2019) |
| 08/29/2019 | 2837 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment by USA as to Benjamin Clark. (Armijo, Maria) (Entered: 08/29/2019) |
| 08/29/2019 | 2855 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 8/29/2019 for Benjamin Clark (11), Count(s) 3s, SENTENCE IMPOSED: CBOP–110 months; Supervised Release–5 years; SPA–$100; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 09/10/2019) |
| 08/29/2019 | 2856 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 8/29/2019 for Jerry Montoya (14), Count(s) 6s, SENTENCE IMPOSED:CBOP–120 months concurrently; Supervised Release–3 years concurrently; Count(s) 7ss, SENTENCE |

| | | | |
|---|---|---|---|
| | | | IMPOSED:CBOP–140 months concurrently; Supervised Release–5 years concurrently; SPA–$200; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 09/10/2019) |
| 08/29/2019 | 2859 | | Amended Clerk's minutes as to Benjamin Clark re 2855 Sentencing (vv) (Entered: 09/10/2019) |
| 08/30/2019 | 2838 | | NOTICE OF HEARING as to Billy Garcia: Outstanding Restitution hearing set for 9/6/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/30/2019) |
| 08/30/2019 | 2839 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2822 Motion to Seal Document as to Benjamin Clark (11) (vv) (Entered: 08/30/2019) |
| 08/30/2019 | 2841 | | [CASE PARTICIPANTS] NOTICE of *Stipulation of the Parties Regarding Restitution* by Billy Garcia re 2832 PSR – Addendum to Presentence Report (Cooper, Robert) (Entered: 08/30/2019) |
| 09/04/2019 | 2842 | | MINUTE ORDER pursuant to the direction of District Judge James O. Browning as to Defendant Billy Garcia, the restitution hearing set for 9–6–2019 is vacated. (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/04/2019) |
| 09/04/2019 | 2843 | | ORDER by District Judge James O. Browning granting 2779 Motion to Withdraw as Attorney. James A. Castle withdrawn from case as to Billy Garcia (5) (vv) (Entered: 09/04/2019) |
| 09/04/2019 | 2844 | | JUDGMENT as to Billy Garcia by District Judge James O. Browning (vv) (Entered: 09/04/2019) |
| 09/05/2019 | 2845 | | JUDGMENT by District Judge James O. Browning as to Shauna Gutierrez (cab) (Entered: 09/05/2019) |
| 09/05/2019 | 2846 | | JUDGMENT by District Judge James O. Browning as to Daniel Sanchez (cab) (Entered: 09/05/2019) |
| 09/05/2019 | 2847 | | JUDGMENT by District Judge James O. Browning as to Arturo Arnulfo Garcia (cab) (Entered: 09/05/2019) |
| 09/05/2019 | 2848 | | JUDGMENT by District Judge James O. Browning as to Paul Rivera (cab) (Entered: 09/05/2019) |
| 09/05/2019 | 2849 | | AMENDED NOTICE OF HEARING as to Eugene Martinez: Sentencing set for 10/23/2019 at 09:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cab) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/05/2019) |
| 09/06/2019 | 2850 | | NOTICE OF APPEAL by Daniel Sanchez re 2846 Judgment (Filing Fee – Waived) (Jacks, Amy) (Entered: 09/06/2019) |
| 09/09/2019 | 2852 | | Transmission of Preliminary Record as to Daniel Sanchez to US Court of Appeals re 2850 Notice of Appeal – Final Judgment (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit)(vv) (Entered: 09/09/2019) |
| 09/09/2019 | 2853 | | DESIGNATION OF RECORD ON APPEAL by Carlos Herrera re 2785 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit Docket Sheet)(Villa, Ryan) (Entered: 09/09/2019) |
| 09/09/2019 | 2854 | | USCA Information Letter with Case Number as to Daniel Sanchez 19–2141 for 2850 Notice of Appeal – Final Judgment. (vv) (Entered: 09/09/2019) |
| 09/10/2019 | 2857 | | TRANSCRIPT ORDER FORM by Daniel Sanchez requesting the proceedings held on pre–trial motions, jury trial, post–trial motions, and sentencing proceedings be transcribed for the 2850 Notice of Appeal – Final Judgment (Jacks, Amy) (Entered: 09/10/2019) |
| 09/10/2019 | 2858 | | JUDGMENT by District Judge James O. Browning as to Jerry Montoya (cab) (Entered: 09/10/2019) |
| 09/10/2019 | 2860 | | FILED IN ERROR–JUDGMENT by District Judge James O. Browning as to Benjamin Clark. (cjw) Modified on 9/10/2019 (vv). (Entered: 09/10/2019) |
| 09/10/2019 | 2861 | | JUDGMENT by District Judge James O. Browning as to Benjamin Clark. (cjw) (Entered: 09/10/2019) |
| 09/11/2019 | 2862 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2820 MOTION to Seal Document filed by USA as to Jerry Montoya (vv) (Entered: 09/11/2019) |
| 09/11/2019 | 2863 | | FILED IN ERROR–NOTICE OF APPEAL by Andrew Gallegos (Filing Fee – Waived) (Torraco, Lisa) Modified on 9/12/2019 (vv). (Entered: 09/11/2019) |
| 09/11/2019 | 2864 | | DESIGNATION OF RECORD ON APPEAL by Daniel Sanchez re 2850 Notice of Appeal – Final Judgment (Jacks, Amy) (Entered: 09/11/2019) |
| 09/11/2019 | 2865 | | NOTICE OF APPEAL by Arturo Arnulfo Garcia re 2847 Judgment (Filing Fee – Waived) (Attachments: # 1 Exhibit A)(Blackburn, Billy) (Entered: 09/11/2019) |
| 09/11/2019 | 2866 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Redisclosure of Presentence Report) as to Roy Paul Martinez (Attachments: # 1 Attachment A)<br><br>Related Documents: 686 Plea Agreement<br>(Kord, Amy) (Entered: 09/11/2019) |
| 09/11/2019 | 2867 | | [APPLICABLE PARTY] MEMORANDUM (Redisclosure of Presentence Report) as to Roy Paul Martinez<br><br>Related Documents: 2866 PSR – Presentence Report<br>(Kord, Amy) (Entered: 09/11/2019) |
| 09/11/2019 | 2869 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Redisclosure of Presentence Report) as to Javier Alonso (Attachments: # 1 Attachment A)<br><br>Related Documents: 1237 Plea Agreement |

| | | | |
|---|---|---|---|
| | | | (Kord, Amy) (Entered: 09/11/2019) |
| 09/11/2019 | 2870 | | [APPLICABLE PARTY] MEMORANDUM (Redisclosure of Presentence Report) as to Javier Alonso<br><br>Related Documents: 2869 PSR – Presentence Report<br>(Kord, Amy) (Entered: 09/11/2019) |
| 09/11/2019 | 2872 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Redisclosure of Presentence Report) as to Leonard Lujan (Attachments: # 1 Victim Statement 1, # 2 Victim Statement 2, # 3 Victim Statement 3, # 4 Attachment A)<br><br>Related Documents: 963 Plea Agreement<br>(Kord, Amy) (Entered: 09/11/2019) |
| 09/11/2019 | 2873 | | [APPLICABLE PARTY] MEMORANDUM (Redisclosure of Presentence Report) as to Leonard Lujan<br><br>Related Documents: 2872 PSR – Presentence Report,<br>(Kord, Amy) (Entered: 09/11/2019) |
| 09/12/2019 | 2875 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Re–disclosed Presentence Report) as to Robert Martinez (Attachments: # 1 Standard Condition #12 Memo, # 2 Attachment A)<br><br>Related Documents: 716 Plea Agreement<br>(Mills, David) (Entered: 09/12/2019) |
| 09/13/2019 | 2877 | | Transmission of Preliminary Record as to Arturo Arnulfo Garcia to US Court of Appeals re 2865 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit)(vv) (Entered: 09/13/2019) |
| 09/13/2019 | 2878 | | USCA Information Letter with Case Number as to Arturo Arnulfo Garcia 19–2148 for 2865 Notice of Appeal – Final Judgment (vv) (Entered: 09/13/2019) |
| 09/16/2019 | 2879 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT as to Timothy Martinez (Attachments: # 1 Memorandum regarding redisclosure, # 2 Revised Attachment A, # 3 Victim Impact Letter)<br><br>Related Documents: 852 Plea Agreement<br>(Herman, Aydreanah) (Entered: 09/16/2019) |
| 09/16/2019 | 2881 | | [APPLICABLE PARTY] 2nd PRESENTENCE INVESTIGATION REPORT (Redisclosure of Presentence Report with Updated Information) as to Eugene Martinez (Attachments: # 1 Memorandum Regarding Updates and Chages to the PSR, # 2 Attachment A, # 3 Acceptance Statement)<br><br>Related Documents: 1138 Plea Agreement<br>(Kord, Amy) (Entered: 09/16/2019) |
| 09/16/2019 | 2883 | | ORDER OF USCA granting motion to withdraw attorneys Amy Jacks and Lauren Noriega and appointing FPD as to Daniel Sanchez (vv) (Entered: 09/17/2019) |

| 09/17/2019 | 2884 | | NOTICE OF APPEAL by Billy Garcia re 2844 Judgment (Filing Fee – Waived) (Cooper, Robert) (Entered: 09/17/2019) |
| 09/17/2019 | | | Attorney update in case as to Daniel Sanchez. Attorney Josh R. Lee for Daniel Sanchez added. Attorney Amy E. Jacks and Lauren Noriega terminated. (vv) (Entered: 09/17/2019) |
| 09/17/2019 | 2885 | | [APPLICABLE PARTY] 3rd PRESENTENCE INVESTIGATION REPORT as to Mario Rodriguez<br><br>Related Documents: 1395 Plea Agreement<br>(Rosiles, Cesar) (Entered: 09/17/2019) |
| 09/18/2019 | 2887 | | Transmission of Preliminary Record as to Billy Garcia to US Court of Appeals re 2884 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit)(vv) (Entered: 09/18/2019) |
| 09/18/2019 | 2888 | | USCA Information Letter with Case Number as to Billy Garcia 19–2152 for 2884 Notice of Appeal – Final Judgment. (vv) (Entered: 09/18/2019) |
| 09/18/2019 | 2889 | | Transmitted Record on Appeal in 6 Volume(s) to US Court of Appeals as to Carlos Herrera re 2785 Notice of Appeal – Final Judgment (vv) (Entered: 09/18/2019) |
| 09/18/2019 | 2890 | | NOTICE of Docketing Record on Appeal from USCA as to Carlos Herrera re 2785 Notice of Appeal – Final Judgment. USCA Case Number 19–2126 (vv) (Entered: 09/18/2019) |
| 09/23/2019 | 2891 | | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Eugene Martinez (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B, # 3 Exhibit Ex. C, # 4 Exhibit Ex. D, # 5 Exhibit Ex. E, # 6 Exhibit Ex. F, # 7 Exhibit Ex. G, # 8 Exhibit Ex. H)(Couleur, Douglas) (Entered: 09/23/2019) |
| 09/27/2019 | 2892 | | DESIGNATION OF RECORD ON APPEAL by Arturo Arnulfo Garcia re 2865 Notice of Appeal – Final Judgment (Attachments: # 1 Document Selection 1 of 2A, # 2 Document Selection 1 of 2B, # 3 Document Selection 1 of 2C, # 4 Document Selection 1 of 2D, # 5 Document Selection 1 of 2E, # 6 Document Selection 2 of 2A, # 7 Document Selection 2 of 2B, # 8 Document Selection 2 of 2C, # 9 Document Selection 2 of 2D, # 10 Document Selection 2 of 2E, # 11 Transcript list)(Davidson, Scott) (Entered: 09/27/2019) |
| 09/27/2019 | 2893 | | TRANSCRIPT ORDER FORM by Arturo Arnulfo Garcia for the 2865 Notice of Appeal – Final Judgment (Attachments: # 1 Transcript list)(Davidson, Scott) (Entered: 09/27/2019) |
| 09/30/2019 | 2894 | | [APPLICABLE PARTY] Ex parte ORDER by District Judge James O. Browning granting 2840 Motion to Appoint Counsel Susan M. Porter for Angel DeLeon appointed. (vv) (Entered: 09/30/2019) |
| 10/01/2019 | 2895 | | DESIGNATION OF RECORD ON APPEAL by Billy Garcia re 2884 Notice of Appeal – Final Judgment (Attachments: # 1 Appendix 1, # 2 Appendix 2)(Cooper, Robert) (Entered: 10/01/2019) |
| 10/01/2019 | 2896 | | TRANSCRIPT ORDER FORM by Billy Garcia requesting the proceedings held on none be transcribed for the 2884 Notice of Appeal – Final Judgment |

| | | | (Cooper, Robert) (Entered: 10/01/2019) |
|---|---|---|---|
| 10/02/2019 | 2898 | | ORDER OF USCA taking under advisement motion to abate and consolidate appeals as to Daniel Sanchez (vv) (Entered: 10/02/2019) |
| 10/02/2019 | 2947 | | [APPLICABLE PARTY] SEALED ORDER by District Judge James O. Browning granting 2926 Motion to Continue Sentencing Hearing as to Roy Paul Martinez (23) (cmm) (Entered: 10/22/2019) |
| 10/03/2019 | 2899 | | MEMORANDUM OPINION AND ORDER Re 2621 Objection to Presentence Investigation Report, 2648 MOTION for Downward Departure as to Edward Troup by District Judge James O. Browning (vv) (Entered: 10/03/2019) |
| 10/03/2019 | 2908 | | ORDER OF USCA granting Attorney Cooper's motion to withdraw as attorney and appointing Kathleen A. Lord to represent appellant Billy Garcia (vv) (Entered: 10/07/2019) |
| 10/03/2019 | | | Attorney update in case as to Billy Garcia. Attorney Kathleen Lord for Billy Garcia added. Attorney Robert R. Cooper terminated. (vv) (Entered: 10/07/2019) |
| 10/04/2019 | | | Arrest of Angel DeLeon (kd) (Entered: 10/04/2019) |
| 10/04/2019 | 2900 | | Clerk's Minutes before Magistrate Judge Karen B. Molzen: Initial Appearance/Arraignment as to Angel DeLeon (1) Count 1ss,1,1s held; Detention Hearing set for 10/8/2019 at 01:30 PM in Albuquerque – 320 Rio Grande Courtroom (Recording Info: Liberty – Rio Grande) (kd) (Entered: 10/04/2019) |
| 10/04/2019 | 2901 | | DISCOVERY ORDER as to Angel DeLeon by Magistrate Judge Karen B. Molzen (kd) (Entered: 10/04/2019) |
| 10/04/2019 | 2902 | | ORAL ORDER of Temporary Detention pending hearing as to Angel DeLeon by Magistrate Judge Karen B. Molzen (kd) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/04/2019) |
| 10/04/2019 | 2903 | | Unopposed MOTION to Continue *Sentencing* by Mario Rodriguez. (Hernandez, Santiago) (Entered: 10/04/2019) |
| 10/04/2019 | 2954 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on 10/4/2019 re 539 MOTION for Discovery filed by Billy Garcia, 678 Opposed MOTION for Discovery filed by Edward Troup, 668 MOTION to Compel *Discovery* filed by Jerry Montoya (Court Reporter: J. Bean) (cab) (Entered: 10/25/2019) |
| 10/07/2019 | 2907 | | |

| | | | |
|---|---|---|---|
| | | | Arrest Warrant Returned Executed on 10/4/2019 as to Angel DeLeon. (jjs) (Entered: 10/07/2019) |
| 10/08/2019 | 2909 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Eugene Martinez (Attachments: # 1 Mental Health Records, # 2 Sandoval Assessors Office, # 3 Land, # 4 Land) <br><br> Related Documents: 2881 PSR – Presentence Report, (Kord, Amy) (Entered: 10/08/2019) |
| 10/08/2019 | | | U.S. Probation and Pretrial Services added as interested party.(Galaz, Anthony) (Entered: 10/08/2019) |
| 10/08/2019 | | | U.S. Probation and Pretrial Services added as interested party.(Galaz, Anthony) (Entered: 10/08/2019) |
| 10/08/2019 | 2912 | | Clerk's Minutes before Magistrate Judge Karen B. Molzen: Detention Hearing as to Angel DeLeon held (Recording Info: Liberty – Rio Grande) (kd) (Entered: 10/08/2019) |
| 10/08/2019 | 2913 | | ORDER OF DETENTION as to Angel DeLeon by Magistrate Judge Karen B. Molzen (kd) (Entered: 10/08/2019) |
| 10/09/2019 | 2914 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2897 Motion to Continue sentencing as to Javier Alonso (9) (vv) (Entered: 10/09/2019) |
| 10/11/2019 | 2917 | | [APPLICABLE PARTY] ADDENDUM TO PRESENTENCE INVESTIGATION REPORT as to Timothy Martinez (Attachments: # 1 Grant County District Attorney Report) <br><br> Related Documents: 1961 PSR – Presentence Report, 2879 PSR – Presentence Report (Herman, Aydreanah) (Entered: 10/11/2019) |
| 10/11/2019 | | | U.S. Probation and Pretrial Services added as interested party.(Galaz, Anthony) (Entered: 10/11/2019) |
| 10/11/2019 | 2919 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2916 Motion to Seal Document as to Eugene Martinez (6) (vv) (Entered: 10/11/2019) |
| 10/14/2019 | 2925 | | RESPONSE by USA as to Eugene Martinez re 2891 Objection to Presentence Investigation Report, (Castellano, Randy) (Entered: 10/14/2019) |
| 10/15/2019 | 2928 | | ORDER OF USCA as to Daniel Sanchez; the joint motion to abate and consolidate is granted as modified (vv) (Entered: 10/15/2019) |
| 10/16/2019 | 2929 | | ORDER by District Judge James O. Browning granting 2903 Motion to Continue sentencing as to Mario Rodriguez (15) (vv) (Entered: 10/16/2019) |
| 10/16/2019 | 2931 | | AMENDED NOTICE OF HEARING as to Defendant Timothy Martinez: Sentencing set for 10/22/2019 at 08:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/16/2019) |

| 10/16/2019 | 2932 | | AMENDED NOTICE OF HEARING as to Defendant Robert Martinez: Sentencing set for 10/22/2019 at 09:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/16/2019) |
| --- | --- | --- | --- |
| 10/16/2019 | 2933 | | AMENDED NOTICE OF HEARING as to Eugene Martinez: Sentencing set for 10/22/2019 at 10:30 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/16/2019) |
| 10/16/2019 | 2934 | | NOTICE OF HEARING as to Angel DeLeon: Jury Selection/Trial set for 12/2/2019 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (vv) (Entered: 10/16/2019) |
| 10/17/2019 | 2936 | | Transmitted Record on Appeal in 8 Volume(s) to US Court of Appeals as to Arturo Arnulfo Garcia re 2865 Notice of Appeal – Final Judgment (vv) (Entered: 10/17/2019) |
| 10/17/2019 | 2937 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning withdrawing 2816 Motion for Downward Adjustment and Objections 2911 as to Timothy Martinez (16); granting 2927 Motion to Withdraw Document as to Timothy Martinez (16) (vv) (Entered: 10/17/2019) |
| 10/17/2019 | 2938 | | NOTICE of Docketing Record on Appeal from USCA as to Arturo Arnulfo Garcia re 2865 Notice of Appeal – Final Judgment. USCA Case Number 19–2148 (vv) (Entered: 10/17/2019) |
| 10/18/2019 | 2939 | | Transmitted Record on Appeal in 7 Volume(s) to US Court of Appeals as to Billy Garcia re 2884 Notice of Appeal – Final Judgment (vv) (Entered: 10/18/2019) |
| 10/18/2019 | 2941 | | MEMORANDUM OPINION AND ORDER Related Document(s): 2801 (i) the Defendant's Objection to Presentence Investigation Report is overruled in part and sustained in part; (ii) the Objection to U.S.S.G. section 3A1.1(b)(1) is sustained; (iii) the Objection to U.S.S.G. section 3A1.3 is overruled; and (iv) Defendant Ruben Hernandez' total offense level is 38 by District Judge James O. Browning (cmm) (Entered: 10/21/2019) |
| 10/21/2019 | 2940 | | [CASE PARTICIPANTS] First MOTION to Continue *Sentencing* by Leonard Lujan. (Clark, Russell) (Entered: 10/21/2019) |
| 10/21/2019 | 2942 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment by USA as to Eugene Martinez. (Castellano, Randy) (Entered: 10/21/2019) |
| 10/21/2019 | 2943 | | [APPLICABLE PARTY] SEALED ORDER by District Judge James O. Browning granting 2924 Motion to Seal as to Robert Martinez (22) (cmm) (Entered: 10/21/2019) |
| 10/21/2019 | 2944 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment by USA as to Robert Martinez. (Armijo, Maria) (Entered: 10/21/2019) |
| 10/21/2019 | 2945 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment by USA as to Timothy Martinez. (Armijo, Maria) (Entered: 10/21/2019) |
| 10/21/2019 | 2957 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Docketing Record on Appeal from USCA as to Billy Garcia re 2884 Notice of Appeal – Final Judgment. USCA Case Number 19–2152 (vv) (Entered: 10/28/2019) |
| 10/22/2019 | 2946 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning as to: 2891 Objection to Presentence Investigation Report. (cab) (Entered: 10/22/2019) |
| 10/22/2019 | 2950 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2945 Motion for Downward Adjustment as to Timothy Martinez (16) (cmm) (Entered: 10/23/2019) |
| 10/22/2019 | 2951 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2942 Motion for Downward Adjustment as to Eugene Martinez (6) (cmm) (Entered: 10/23/2019) |
| 10/22/2019 | 2952 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2944 Motion for Downward Adjustment as to Robert Martinez (22) (cmm) (Entered: 10/23/2019) |
| 10/22/2019 | 2960 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 10/22/2019 for Eugene Martinez (6), Count(s) 2ss, SENTENCE IMPOSED:CBOP–92 months; Supervised Release–5 years; SPA–$100; Restitution–$2645.31; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 10/31/2019) |
| 10/22/2019 | 2962 | | Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 10/22/2019 for Timothy Martinez (16), Count(s) 6s, SENTENCE IMPOSED: CBOP–92 months; Supervised Release–3 years concurrent; Count(s) 7ss, SENTENCE IMPOSED: CBOP–92 months; Supervised Release–5 years concurrent; SPA–$200; deft in custody. (Court Reporter: J Bean) (vv) (Entered: 11/01/2019) |
| 10/23/2019 | 2949 | | MINUTE ORDER by District Judge James O. Browning as to Defendant Angel Deleon: The Court does not consider this case to be a complex case. If counsel believes otherwise, they must move the Court for such relief. (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/23/2019) |
| 10/25/2019 | 2953 | | TRANSCRIPT of Sentence Proceedings as to Timothy Martinez held on October 22, 2019, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative** |

| | | | |
|---|---|---|---|
| | | | **Procedures Manual at https://www.nmd.uscourts.gov**. |
| | | | Notice of Intent to Request Redaction set for 11/1/2019. Redaction Request due 11/15/2019. Redacted Transcript Deadline set for 11/25/2019. Release of Transcript Restriction set for 1/23/2020. (jab) (Entered: 10/25/2019) |
| 10/25/2019 | 2955 | | ORDER by District Judge James O. Browning granting 2940 Motion to Continue sentencing as to Leonard Lujan (4) (vv) (Entered: 10/28/2019) |
| 10/25/2019 | 3015 | | MANDATE of USCA as to Christopher Garcia re 2737 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit)(vv) (Entered: 12/02/2019) |
| 10/28/2019 | 2956 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 2923 Motion to Seal Document as to Timothy Martinez (16) (vv) (Entered: 10/28/2019) |
| 10/29/2019 | 2958 | | MEMORANDUM OPINION AND ORDER denying motions 1841 1842 1844 2408 2413 2421 by District Judge James O. Browning (vv) (Entered: 10/29/2019) |
| 10/30/2019 | 2959 | | Joint MOTION Declare Case Complex by Angel DeLeon. (Gorman, Sarah) (Entered: 10/30/2019) |
| 11/01/2019 | 2961 | | [APPLICABLE PARTY] Ex parte Budget ORDER as to Angel DeLeon by District Judge James O. Browning (vv) (Entered: 11/01/2019) |
| 11/04/2019 | 2964 | | Judgment Returned Executed as to Arturo Arnulfo Garcia on 10/28/19. (vv) (Entered: 11/04/2019) |
| 11/04/2019 | 2965 | | MEMORANDUM OPINION AND ORDER by District Judge James O. Browning Related Document(s): 2690 Sentencing Memorandum as to Anthony Ray Baca (cab) (Entered: 11/04/2019) |
| 11/04/2019 | 2966 | | JUDGMENT by District Judge James O. Browning as to Anthony Ray Baca (cab) (Entered: 11/04/2019) |
| 11/05/2019 | 2967 | | ORDER OF USCA granting appellant's motion to extend time to file designation of record as to Billy Garcia (vv) (Entered: 11/05/2019) |
| 11/06/2019 | 2968 | | JUDGMENT by District Judge James O. Browning as to Edward Troup (cab) (Entered: 11/06/2019) |
| 11/06/2019 | 2969 | | NOTICE OF APPEAL by Edward Troup re 2968 Judgment (Filing Fee – Waived) (Harbour–Valdez, Cori) (Entered: 11/06/2019) |
| 11/07/2019 | 2970 | | RETURN OF EXHIBITS to plaintiff's counsel (vv) (Entered: 11/07/2019) |
| 11/08/2019 | 2971 | | Transmission of Preliminary Record as to Edward Troup to US Court of Appeals re 2969 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit)(vv) (Entered: 11/08/2019) |
| 11/08/2019 | 2972 | | USCA Information Letter with Case Number as to Edward Troup 19–2188 for 2969 Notice of Appeal – Final Judgment filed by Edward Troup. (vv) (Entered: 11/08/2019) |
| 11/12/2019 | 2973 | | ORDER declaring case complex by District Judge James O. Browning granting 2959 Motion as to Angel DeLeon (1) (vv) (Entered: 11/12/2019) |

| 11/18/2019 | 2974 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 12, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2975 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 13, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2976 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 16, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2977 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 17, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2978 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio |

| | | | |
|---|---|---|---|
| | | | Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 18, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2979 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 19, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2980 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 20, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2981 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 23, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2982 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 24, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) |

| | | |
|---|---|---|
| | | (Entered: 11/18/2019) |
| 11/18/2019 | 2983 | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 25, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2984 | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 26, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2985 | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 27, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2986 | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 30, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2987 | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier |

| | | | |
|---|---|---|---|
| | | | Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 1, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2988 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 2, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2989 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 3, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2990 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 4, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2991 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, |

| | | | |
|---|---|---|---|
| | | | Shauna Gutierrez, Brandy Rodriguez held on May 7, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2992 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 8, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2993 | | NOTICE OF APPEAL by Anthony Ray Baca re 2966 Judgment (Filing Fee – Waived) (Lowry, Marc) (Entered: 11/18/2019) |
| 11/18/2019 | 2994 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 9, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2995 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 10, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2996 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 11, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) |

| | | | |
|---|---|---|---|
| | | | (Entered: 11/18/2019) |
| 11/18/2019 | 2997 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 14, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2998 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 15, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 2999 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 16, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 3000 | | MEMORANDUM OPINION AND ORDER granting 1501 Opposed MOTION for Discovery *Regarding Monetary Payments to Inmate Informant Witnesses and 1502 Opposed MOTION in Limine Regarding Plea Agreements and Addenda* by District Judge James O. Browning (vv) *(Entered: 11/18/2019)* |
| 11/18/2019 | 3001 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 17, 2018 before District |

| | | | |
|---|---|---|---|
| | | | Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 3002 | | MEMORANDUM OPINION AND ORDER granting in part and denying in part 1299 MOTION in Limine by District Judge James O. Browning (vv) (Entered: 11/18/2019) |
| 11/18/2019 | 3003 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 21, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 3004 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on May 22, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 11/18/2019) |
| 11/18/2019 | 3005 | | MEMORANDUM OPINION AND ORDER denying 1707 MOTION to Continue *January 29 2018 Trial* as to Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez by District Judge James O. Browning (vv) (Entered: 11/18/2019) |
| 11/19/2019 | 3006 | | MEMORANDUM OPINION AND ORDER granting in part and denying in part 1270 Opposed MOTION to Compel *Sealed DISCLOSURE OF DISCOVERABLE MATERIALS PURSUANT TO RULE 16* by District Judge James O. Browning (vv) (Entered: 11/19/2019) |
| 11/19/2019 | 3007 | | [CASE PARTICIPANTS] MOTION Motion to Withdraw and Submit Voucher by Mauricio Varela. (Spencer, Joe) (Entered: 11/19/2019) |
| 11/19/2019 | 3008 | | Transmission of Preliminary Record as to Anthony Ray Baca to US Court of Appeals re 2993 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit)(vv) (Entered: 11/19/2019) |
| 11/19/2019 | 3009 | | USCA Information Letter with Case Number 19–2195 for 2993 Notice of Appeal – Final Judgment filed by Anthony Ray Baca. (vv) (Entered: 11/19/2019) |
| 11/20/2019 | 3010 | | MEMORANDUM OPINION AND ORDER granting in part and denying in part 1281 1288 1293 1311 1390 1407 by District Judge James O. Browning (vv) (Entered: 11/21/2019) |

| 11/21/2019 | 3011 | | SCHEDULING ORDER as to Angel DeLeon by District Judge James O. Browning. Jury Selection/Trial set for 10/26/2020 at 09:00 AM in Las Cruces, NM before District Judge James O. Browning. (vv) (Entered: 11/21/2019) |
| 11/21/2019 | 3012 | | MEMORANDUM OPINION AND ORDER Re 1037 1041 1077 1524 1551 by District Judge James O. Browning (vv) (Entered: 11/21/2019) |
| 11/26/2019 | 3013 | | Supplemental Record on Appeal transmitted to US Court of Appeals in 1 Volume, as to Billy Garcia re 2884 Notice of Appeal – Final Judgment (vv) (Entered: 11/26/2019) |
| 11/27/2019 | 3014 | | NOTICE of Docketing Supplemental Record on Appeal from USCA as to Billy Garcia re 2884 Notice of Appeal – Final Judgment. USCA Case Number 19–2152 (vv) (Entered: 11/27/2019) |
| 12/05/2019 | 3018 | | MEMORANDUM OPINION AND ORDER granting in part denying in part 1163 Opposed MOTION for Discovery *of Giglio Materials* by District Judge James O. Browning (vv) (Entered: 12/05/2019) |
| 12/06/2019 | 3019 | | TRANSCRIPT ORDER FORM by Edward Troup requesting the proceedings held on May 15, 2019 be transcribed for the 2969 Notice of Appeal – Final Judgment (Harbour–Valdez, Cori) (Entered: 12/06/2019) |
| 12/06/2019 | 3020 | | DESIGNATION OF RECORD ON APPEAL by Edward Troup re 2969 Notice of Appeal – Final Judgment (Harbour–Valdez, Cori) (Entered: 12/06/2019) |
| 12/09/2019 | 3021 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 9, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 12/09/2019) |
| 12/09/2019 | 3022 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 10, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 12/09/2019) |
| 12/09/2019 | 3023 | | [CASE PARTICIPANTS] SEALED TRANSCRIPT of Jury Trial Proceedings as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher |

| | | | |
|---|---|---|---|
| | | | Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez held on April 11, 2018 before District Judge James O. Browning. Court Reporter/Transcriber: Jennifer Bean (jab) (Entered: 12/09/2019) |
| 12/09/2019 | 3028 | | ORDER OF USCA granting Attorney Cori Harbour–Valdez and Patrick J. Burke's motion to withdraw as attorney and appointing attorney John T. Carlson to represent appellant as to Edward Troup (vv) (Entered: 12/18/2019) |
| 12/09/2019 | | | Attorney update in case as to Edward Troup. Attorney John T. Carlson for Edward Troup added. Attorney Patrick J. Burke and Cori Ann Harbour–Valdez terminated. (vv) (Entered: 12/18/2019) |
| 12/10/2019 | 3024 | | [CASE PARTICIPANTS] SEALED ORDER re resetting sentencing as to Javier Alonso by District Judge James O. Browning (vv) (Entered: 12/10/2019) |
| 12/10/2019 | 3025 | | DESIGNATION OF RECORD ON APPEAL by Daniel Sanchez, Anthony Ray Baca, Carlos Herrera re 2785 Notice of Appeal – Final Judgment, 2850 Notice of Appeal – Final Judgment, 2993 Notice of Appeal – Final Judgment (Lee, Josh) (Entered: 12/10/2019) |
| 12/10/2019 | 3026 | | TRANSCRIPT ORDER FORM by Daniel Sanchez, Anthony Ray Baca, Carlos Herrera requesting the proceedings held on 5/15/2019 (Transcript of Sanchez Sentencing Hearing, Doc. 2718) and on 6/12/2019 (Transcript of Baca Sentencing Hearing, Doc. 2711) be transcribed for the 2785 Notice of Appeal – Final Judgment, 2850 Notice of Appeal – Final Judgment, 2993 Notice of Appeal – Final Judgment (Attachments: # 1 Transcript Order Form – Sanchez, # 2 Transcript Order Form – Baca)(Lee, Josh) (Entered: 12/10/2019) |
| 12/16/2019 | 3027 | | ORDER OF USCA as to Anthony Ray Baca ; Marc M. Lowry is appointed as attorney (vv) (Entered: 12/18/2019) |
| 01/01/2020 | 3029 | | MEMORANDUM OPINION AND ORDER Terminating document(s): 1308 , 1385 , 1504 , 1512 , 1519 , 1528 , 1530 , 1531 , 1532 , 1538 , 1539 , 1549 , 1555 , 1558 , 1581 , 1602 , 1684 , 1686 , 1687 , 1702 , 1915 , 1976 , 1994 , 2000 , and 2114 as to Angel DeLeon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, Billy Garcia, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Robert Martinez, Roy Paul Martinez, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzalez, Paul Rivera, Shauna Gutierrez, Brandy Rodriguez by District Judge James O. Browning {bdo} (Entered: 01/01/2020) |
| 01/03/2020 | 3030 | | TRANSCRIPT of Sentencing as to Edward Troup held on May 15, 2019, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court |

| | | | |
|---|---|---|---|
| | | | Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov.**<br><br>Notice of Intent to Request Redaction set for 1/10/2020. Redaction Request due 1/24/2020. Redacted Transcript Deadline set for 2/3/2020. Release of Transcript Restriction set for 4/2/2020. (jab) (Entered: 01/03/2020) |
| 01/07/2020 | 3032 | | Court Reporter Jennifer Bean estimates date of 1/10/2020 for completion of the transcript of hearing(s) held before Judge James O. Browning on 5/15/19, as ordered by Daniel Sanchez for the Notice of Appeal. Re: 2850 Notice of Appeal – Final Judgment. (vv) (Entered: 01/07/2020) |
| 01/08/2020 | 3033 | | TRANSCRIPT of Sentence Proceedings as to Daniel Sanchez held on May 15, 2019, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov.**<br><br>Notice of Intent to Request Redaction set for 1/15/2020. Redaction Request due 1/29/2020. Redacted Transcript Deadline set for 2/10/2020. Release of Transcript Restriction set for 4/7/2020. (jab) (Entered: 01/08/2020) |
| 01/08/2020 | 3034 | | TRANSCRIPT of Sentencing Proceedings as to Anthony Ray Baca held on June 12, 2019, before District Judge James O. Browning. Court Reporter/Transcriber Jenifer L. Russin, Telephone number 575–202–4797. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov**.<br><br>Notice of Intent to Request Redaction set for 1/15/2020. Redaction Request due 1/29/2020. Redacted Transcript Deadline set for 2/10/2020. Release of Transcript Restriction set for 4/7/2020. (jab) (Entered: 01/08/2020) |
| 01/21/2020 | 3035 | | MEMORANDUM OPINION AND ORDER re 2415 2416 2418 2419 2420 2422 2491 by District Judge James O. Browning (vv) (Entered: 01/21/2020) |
| 01/27/2020 | 3037 | | [APPLICABLE PARTY] Ex parte ORDER by District Judge James O. Browning granting 3036 Motion for Order as to Angel DeLeon (1) (vv) (Entered: 01/27/2020) |
| 01/27/2020 | 3038 | | MEMORANDUM OPINION AND ORDER re 2614 2617 by District Judge James O. Browning (vv) (Entered: 01/27/2020) |
| 01/28/2020 | 3039 | | Transmitted Record on Appeal in 6 Volume(s) to US Court of Appeals as to Daniel Sanchez re 2850 Notice of Appeal – Final Judgment (vv) (Entered: 01/28/2020) |
| 01/28/2020 | 3040 | | NOTICE of Docketing Record on Appeal from USCA as to Daniel Sanchez re 2850 Notice of Appeal – Final Judgment. USCA Case Number 19–2141 (vv) (Entered: 01/28/2020) |
| 01/28/2020 | 3041 | | Transmitted Record on Appeal in 6 Volume(s) to US Court of Appeals as to Anthony Ray Baca re 2993 Notice of Appeal – Final Judgment (vv) (Entered: 01/28/2020) |
| 01/29/2020 | 3042 | | NOTICE of Docketing Record on Appeal from USCA as to Carlos Herrera re 2785 Notice of Appeal – Final Judgment. USCA Case Number 19–2126 (vv) (Entered: 01/29/2020) |
| 01/30/2020 | 3043 | | DESIGNATION OF RECORD ON APPEAL by Edward Troup re 2969 Notice of Appeal – Final Judgment (Carlson, John) (Entered: 01/30/2020) |
| 02/03/2020 | 3045 | | [APPLICABLE PARTY] ORDER by District Judge James O. Browning that no action is necessary at this time as to Defendant Shauna Gutierrez (RE: 3044 Post Conviction – (12A) Report on Offender Under Supervision ) (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 02/03/2020) |
| 02/20/2020 | 3046 | | Transmitted Record on Appeal in 7 Volume(s) to US Court of Appeals as to Edward Troup re 2969 Notice of Appeal – Final Judgment (vv) (Entered: 02/20/2020) |
| 02/20/2020 | 3047 | | NOTICE of Docketing Record on Appeal from USCA as to Edward Troup re 2969 Notice of Appeal – Final Judgment. USCA Case Number 19–2188 (vv) |

| | | | |
|---|---|---|---|
| | | | (Entered: 02/20/2020) |
| 02/21/2020 | 3048 | | [APPLICABLE PARTY] LETTER as to Robert Martinez (vv) . (Entered: 02/21/2020) |
| 03/04/2020 | 3049 | | DESIGNATION OF RECORD ON APPEAL by Edward Troup re 2969 Notice of Appeal – Final Judgment (Carlson, John) (Entered: 03/04/2020) |
| 03/04/2020 | 3050 | | NOTICE of Docketing Supplemental Record on Appeal from USCA as to Edward Troup re 2969 Notice of Appeal (vv) (Entered: 03/04/2020) |
| 03/20/2020 | 3053 | | Unopposed MOTION to Continue by Angel DeLeon. (Gorman, Sarah) (Entered: 03/20/2020) |
| 03/26/2020 | 3055 | | Petition for Warrant or Summons for Offender Under Supervision as to Conrad Villegas (Banegas, David) (Entered: 03/26/2020) |
| 03/26/2020 | 3056 | | [APPLICABLE PARTY] Post Conviction – VIOLATION REPORT as to Conrad Villegas<br><br>Related Documents: 2340 PSR – Presentence Report, 3055 Post Conviction – (12C) Petition for Warrant or Summons (Banegas, David) (Entered: 03/26/2020) |
| 03/26/2020 | 3057 | | [APPLICABLE PARTY] ORDER by District Judge James O. Browning FOR ISSUANCE OF SUMMONS as to Defendant Conrad Villegas (RE: 3055 Post Conviction – (12C) Petition for Warrant or Summons ) (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 03/26/2020) |
| 03/30/2020 | 3058 | | Summons Issued as to Conrad Villegas: Initial Appearance on Revocation Proceedings set for 4/15/2020 at 01:00 PM in Albuquerque – 320 Rio Grande Courtroom before Magistrate Judge Kirtan Khalsa. (cmm) (Entered: 03/30/2020) |
| 04/01/2020 | 3059 | | ORDER OF USCA re supplementation of record on appeal as to Edward Troup (vv) (Entered: 04/01/2020) |
| 04/02/2020 | 3060 | | Proposed Scheduling ORDER by District Judge James O. Browning granting 3053 Unopposed MOTION to Continue filed by Angel DeLeon. Jury Selection/Trial set for 2/1/2021 at 09:00 AM in Las Cruces, NM before District Judge James O. Browning. (vv) (Entered: 04/02/2020) |
| 04/08/2020 | 3061 | | Summons Returned Executed on 4/2/20 as to Conrad Villegas (vv) (Entered: 04/08/2020) |
| 04/08/2020 | | | Terminated Initial Appearance on Revocation Proceedings Hearing as to Conrad Villegas; to be reset in Las Cruces. (eh) (Entered: 04/08/2020) |
| 04/09/2020 | 3062 | | CJA 20: Appointment of Attorney B.J. Crow for Conrad Villegas by by Magistrate Judge Gregory B. Wormuth. (kls) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 04/09/2020) |
| 04/09/2020 | 3063 | | NOTICE OF HEARING as to Conrad Villegas: Initial Appearance/Show Cause/Detention Hearing set for 4/13/2020 at 9:30 AM in Las Cruces, NM – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Kevin |

| | | | |
|---|---|---|---|
| | | | R. Sweazea. (kls)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 04/09/2020) |
| 04/09/2020 | 3064 | | Supplemental Record on Appeal transmitted to US Court of Appeals in 1 Volume(s), as to Edward Troup re 2969 Notice of Appeal – Final Judgment (vv) (Entered: 04/09/2020) |
| 04/09/2020 | 3065 | | NOTICE of Docketing SUPPLEMENTAL Record on Appeal from USCA as to Edward Troup re 2969 Notice of Appeal – Final Judgment filed by Edward Troup. USCA Case Number 19–2188 (vv) (Entered: 04/09/2020) |
| 04/13/2020 | 3066 | | Clerk's Minutes for proceedings held before Magistrate Judge Kevin R. Sweazea: Initial Appearance/Show Cause/Detention Hearing as to Conrad Villegas held on 4/13/2020 (Recording Info: LCR–Sierra Blanca) (cer) (Entered: 04/13/2020) |
| 04/21/2020 | 3067 | | JUDGMENT as to Joe Lawrence Gallegos by District Judge James O. Browning (vv) (Entered: 04/21/2020) |
| 04/21/2020 | 3068 | | AMENDED JUDGMENT as to Joe Lawrence Gallegos by District Judge James O. Browning (vv) (Entered: 04/22/2020) |
| 04/22/2020 | 3069 | | JUDGMENT as to Andrew Gallegos by District Judge James O. Browning (vv) (Entered: 04/22/2020) |
| 04/27/2020 | 3070 | | NOTICE OF APPEAL by Andrew Gallegos (Filing Fee – Waived) (Attachments: # 1 Exhibit A)(Torraco, Lisa) (Entered: 04/27/2020) |
| 04/28/2020 | 3071 | | Transmission of Preliminary Record as to Andrew Gallegos to US Court of Appeals re 3070 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit)(vv) (Entered: 04/28/2020) |
| 04/28/2020 | 3072 | | USCA Information Letter with Case Number as to Andrew Gallegos 20–2056 for 3070 Notice of Appeal – Final Judgment filed by Andrew Gallegos. (vv) (Entered: 04/28/2020) |
| 04/29/2020 | 3073 | | NOTICE OF APPEAL by Joe Lawrence Gallegos re 3068 Amended Judgment (Filing Fee – Online Payment) (Benjamin, Brock) (Entered: 04/29/2020) |
| 04/30/2020 | 3074 | | Transmission of Preliminary Record as to Joe Lawrence Gallegos to US Court of Appeals re 3073 Notice of Appeal – Final Judgment (Attachments: # 1 Exhibit)(vv) (Entered: 04/30/2020) |
| 04/30/2020 | 3075 | | TRANSCRIPT of Sentence Proceedings as to Conrad Villegas held on February 21, 2019, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day** |

| | | | |
|---|---|---|---|
| | | | **period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov**.<br><br>Notice of Intent to Request Redaction set for 5/7/2020. Redaction Request due 5/21/2020. Redacted Transcript Deadline set for 6/1/2020. Release of Transcript Restriction set for 7/29/2020. (jab) (Entered: 04/30/2020) |
| 04/30/2020 | 3076 | | USCA Information Letter with Case Number as to Joe Lawrence Gallegos 20–2058 for 3073 Notice of Appeal – Final Judgment filed by Joe Lawrence Gallegos. (vv) (Entered: 04/30/2020) |
| 05/01/2020 | 3077 | | ORDER OF USCA partially consolidating these appeals for briefing and submission as to Joe Lawrence Gallegos, Andrew Gallegos (vv) (Entered: 05/06/2020) |
| 05/07/2020 | 3078 | | TRANSCRIPT of Plea Hearing as to Conrad Villegas held on November 9, 2018, before Magistrate Judge Carmen E. Garza. Court Reporter/Transcriber ANNE DEHON, Telephone number (505) 8439494. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov**.<br><br>Notice of Intent to Request Redaction set for 5/14/2020. Redaction Request due 5/28/2020. Redacted Transcript Deadline set for 6/8/2020. Release of Transcript Restriction set for 8/5/2020.(dxz) (Entered: 05/07/2020) |
| 05/07/2020 | 3079 | | JUDGMENT as to Timothy Martinez by District Judge James O. Browning (vv) (Entered: 05/07/2020) |
| 05/08/2020 | 3080 | | JUDGMENT as to Ruben Hernandez by District Judge James O. Browning (vv) (Entered: 05/08/2020) |
| 05/08/2020 | 3081 | | JUDGMENT as to Eugene Martinez by District Judge James O. Browning (vv) (Entered: 05/08/2020) |
| 05/14/2020 | 3082 | | MOTION to Withdraw as Attorney by Andrew Gallegos. (Torraco, Lisa) (Entered: 05/14/2020) |
| 05/14/2020 | 3083 | | [APPLICABLE PARTY] AMENDED Petition for Warrant or Summons for Offender Under Supervision as to Conrad Villegas (Banegas, David) |

| | | | |
|---|---|---|---|
| | | | (Entered: 05/14/2020) |
| 05/14/2020 | 3084 | | [APPLICABLE PARTY] Post Conviction – VIOLATION REPORT as to Conrad Villegas (Attachments: # 1 Supporting Document)<br><br>Related Documents: 3083 Post Conviction – (12C) Petition for Warrant or Summons, 2340 PSR – Presentence Report, 3055 Post Conviction – (12C) Petition for Warrant or Summons<br>(Banegas, David) (Entered: 05/14/2020) |
| 05/14/2020 | 3085 | | ORDER OF USCA granting Attorneys Brock Benjamin and Richard Sindel's motion to withdraw and Order appointing attorney Gregory Acton to represent appellant Joe Lawrence Gallegos (vv) (Entered: 05/18/2020) |
| 05/14/2020 | | | Attorney update in case as to Joe Lawrence Gallegos. Attorney Gregory M. Acton for Joe Lawrence Gallegos added. Attorney Brock Benjamin and Richard Sindel terminated. (vv) (Entered: 05/18/2020) |
| 05/14/2020 | 3086 | | ORDER OF USCA – The court will reset the deadlines for the joint transcript order form and designation of record upon receipt of the appointment motion or motion to withdraw in 20–2056 as to Andrew Gallegos (vv) (Entered: 05/18/2020) |
| 05/19/2020 | 3089 | | ORDER OF USCA as to Andrew Gallegos – The court reminds appellant's counsel of their obligation to file a motion to either continue or withdraw with this court. That motion remains due in this court on 05/21/2020. (vv) (Entered: 05/21/2020) |
| 05/20/2020 | 3087 | | [APPLICABLE PARTY] ORDER by District Judge James O. Browning FOR ISSUANCE OF SUMMONS as to Defendant Conrad Villegas (RE: 3083 Post Conviction – (12C) Petition for Warrant or Summons ) (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/20/2020) |
| 05/21/2020 | 3088 | | Summons Issued as to Conrad Villegas: Initial Appearance on Revocation Proceedings set for 6/5/2020 at 09:00 AM in Las Cruces – 340 Sierra Blanca Courtroom (North Tower) before Magistrate Judge Stephan M. Vidmar. (vv) (Entered: 05/21/2020) |
| 05/21/2020 | 3090 | | NOTICE *TO WITHDRAW FILING OF MOTION TO WITHDRAW [DOC 3082]* by Andrew Gallegos (Torraco, Lisa) (Entered: 05/21/2020) |
| 05/22/2020 | 3091 | | TRANSCRIPT of Sentencing Proceedings as to Mauricio Varela held on October 15, 2018, before District Judge James O. Browning. Official Court Reporter Vanessa I. Alyce, Telephone number 575–528–1430. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Official Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript** |

| | | | **electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov.** Notice of Intent to Request Redaction set for 5/29/2020. Redaction Request due 6/12/2020. Redacted Transcript Deadline set for 6/22/2020. Release of Transcript Restriction set for 8/20/2020.(via) (Entered: 05/22/2020) |
|---|---|---|---|
| 05/26/2020 | 3092 | | ORDER OF USCA granting appellant's counsel's motion to withdraw as attorney and appointing attorney John M. Bowlin to represent Andrew Gallegos (vv) (Entered: 05/26/2020) |
| 05/26/2020 | 3093 | | ORDER OF USCA directing counsel in these consolidated appeals to file a joint transcript order form and joint designation of record on or before 06/25/2020. (vv) (Entered: 05/26/2020) |
| 05/26/2020 | 3094 | | ORDER OF USCA directing counsel in these consolidated appeals to file a joint transcript order form and joint designation of record on or before 06/25/2020. (vv) (Entered: 05/26/2020) |
| 06/02/2020 | 3096 | | Unopposed MOTION to Continue by Conrad Villegas. (Crow, B.J.) (Entered: 06/02/2020) |
| 06/03/2020 | 3097 | | ORDER by Magistrate Judge Stephan M. Vidmar granting 3096 Motion to Continue as to Conrad Villegas (20) (vv) (Entered: 06/03/2020) |
| 06/08/2020 | 3098 | | Unopposed MOTION to Continue *Pre−Trial Motions Deadline* by Angel DeLeon. (Gorman, Sarah) (Entered: 06/08/2020) |
| 06/10/2020 | 3099 | | Receipt for RETURN OF MOTION HEARING EXHIBITS to defense counsel (vv) (Entered: 06/10/2020) |
| 06/22/2020 | 3101 | | [CASE PARTICIPANTS] ORDER sealing records by District Judge James O. Browning granting 3100 Motion to Seal Document as to Leonard Lujan (4) (vv) (Entered: 06/22/2020) |
| 06/22/2020 | 3102 | | ORDER by District Judge James O. Browning granting 3098 Motion to Continue as to Angel DeLeon (1) (vv) (Entered: 06/22/2020) |
| 06/22/2020 | 3103 | | NOTICE OF ATTORNEY APPEARANCE Ryan Ellison appearing for USA. (Ellison, Ryan) (Entered: 06/22/2020) |
| 06/22/2020 | | | Attorney update in case. Attorney Ryan Ellison for USA added. (vv) (Entered: 06/22/2020) |
| 06/25/2020 | 3108 | | NOTICE *of Intent Not to Seek a Sentence of Death* by USA as to Angel DeLeon (Armijo, Maria) (Entered: 06/25/2020) |
| 06/25/2020 | 3109 | | DESIGNATION OF RECORD ON APPEAL by Joe Lawrence Gallegos as to Joe Lawrence Gallegos, Andrew Gallegos re 3070 Notice of Appeal – Final Judgment, 3073 Notice of Appeal – Final Judgment (Attachments: # 1 Appendix Marked Docket Sheet)(Acton, Gregory) (Entered: 06/25/2020) |
| 06/25/2020 | 3110 | | TRANSCRIPT ORDER FORM by Joe Lawrence Gallegos as to Joe Lawrence Gallegos, Andrew Gallegos requesting the proceedings held on 10/4/16; 11/29/16; 2/7 – 2/8/17; 5/9 – 5/11/17; 5/19/17; 11/8 – 11/9/17; |

| | | | |
|---|---|---|---|
| | | | 11/27/17 – 11/29/17; 12/7 – 12/8/17; 12/11/17; 12/18 –12/20/17; 1/8 – 1/12/18; 1/26/18; 3/12 – 3/16/18; 4/4 – 4/5/18; 4/9 – 5/23/18; 12/17 – 12/19/18; 5/10/19; 6/11/19; 2/20/18; 2/14/18 be transcribed for the 3070 Notice of Appeal – Final Judgment, <u>3073</u> Notice of Appeal – Final Judgment (Attachments: # <u>1</u> Appendix List of Transcripts Requested)(Acton, Gregory) (Entered: 06/25/2020) |
| 06/26/2020 | <u>3111</u> | | Unopposed MOTION for Order *to Amend PSR* by Daniel Sanchez. (Attachments: # <u>1</u> Exhibit [Proposed] Order)(Jacks, Amy) (Entered: 06/26/2020) |
| 06/29/2020 | <u>3112</u> | | NOTICE *Waiver of Objections* by Leonard Lujan (Clark, Russell) (Entered: 06/29/2020) |
| 06/29/2020 | 3114 | | NOTICE OF HEARING as to Defendant Leonard Lujan: Sentencing set for 7/29/2020 at 08:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 06/29/2020) |
| 06/29/2020 | 3115 | | NOTICE OF HEARING ON MOTION in case as to Defendant Leonard Lujan <u>3106</u> First MOTION for Reconsideration *Release* : Motion Hearing set for 7/29/2020 at 08:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 06/29/2020) |
| 07/01/2020 | <u>3117</u> | | AMENDED JUDGMENT as to Carlos Herrera by District Judge James O. Browning (vv) (Entered: 07/01/2020) |
| 07/01/2020 | <u>3118</u> | | [APPLICABLE PARTY] PRETRIAL SERVICES REPORT (Addendum) as to Leonard Lujan (Pirkovic, Mindy) (Entered: 07/01/2020) |
| 07/10/2020 | <u>3119</u> | | ORDER OF USCA as to Carlos Herrera re <u>2785</u> Notice of Appeal – Final Judgment (vv) (Entered: 07/14/2020) |
| 07/20/2020 | <u>3120</u> | | Supplemental Record on Appeal transmitted to US Court of Appeals in 1 Volume, as to Carlos Herrera re <u>2785</u> Notice of Appeal – Final Judgment (vv) (Entered: 07/20/2020) |
| 07/20/2020 | 3121 | | NOTICE of Docketing Supplemental Record on Appeal from USCA as to Carlos Herrera re <u>2785</u> Notice of Appeal. USCA Case Number 19–2126 (vv) (Entered: 07/20/2020) |
| 07/20/2020 | <u>3122</u> | | [CASE PARTICIPANTS] MOTION for Reconsideration *of Order of Detention Pending Trial* by Angel DeLeon. (Attachments: # <u>1</u> Exhibit)(Gorman, Sarah) (Entered: 07/20/2020) |
| 07/22/2020 | <u>3123</u> | | [APPLICABLE PARTY] Petition for Warrant or Summons for Offender Under Supervision as to Shauna Gutierrez (Villalobos, Karina) (Entered: 07/22/2020) |
| 07/22/2020 | <u>3124</u> | | [APPLICABLE PARTY] Post Conviction – VIOLATION REPORT as to Shauna Gutierrez<br><br>Related Documents: <u>3123</u> Post Conviction – (12C) Petition for Warrant or |

| | | | |
|---|---|---|---|
| | | | Summons<br>(Villalobos, Karina) (Entered: 07/22/2020) |
| 07/27/2020 | 3125 | | [APPLICABLE PARTY] ORDER by District Judge James O. Browning FOR ISSUANCE OF SUMMONS as to Shauna Gutierrez (RE: 3123 Post Conviction – (12C) Petition for Warrant or Summons ) (cjw)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 07/27/2020) |
| 07/27/2020 | 3126 | | **FILED IN ERROR** Summons Issued as to Shauna Gutierrez: Initial Appearance on Revocation Proceedings set for 8/10/2020 at 01:30 PM in Albuquerque – 222 Video Conference Room before District Judge James O. Browning. (cmm) Modified on 7/27/2020–Filed in error as to text only (cmm). (Entered: 07/27/2020) |
| 07/27/2020 | 3127 | | Summons Issued as to Shauna Gutierrez: Initial Appearance on Revocation Proceedings set for 8/10/2020 at 01:30 PM in Remote via Zoom before Magistrate Judge Laura Fashing. (cmm) (Entered: 07/27/2020) |
| 07/29/2020 | 3128 | | [CASE PARTICIPANTS] MOTION for Downward Adjustment *in Defendant's Offense Level* by USA as to Leonard Lujan. (Castellano, Randy) (Entered: 07/29/2020) |
| 07/29/2020 | 3129 | | [CASE PARTICIPANTS] SEALED Clerk's Minutes for proceedings held before District Judge James O. Browning: Sentencing held on 7/29/2020 for Leonard Lujan (4), Count(s) 1ss–2ss, SEALED PROCEEDINGS. (Court Reporter: S Hilton) (vv) (Entered: 07/29/2020) |
| 07/29/2020 | 3131 | | [APPLICABLE PARTY] SEALED Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing held on 7/29/2020 re 3106 First MOTION for Reconsideration *Release* filed by Leonard Lujan (Court Reporter: S Hilton) (vv) (Entered: 07/30/2020) |
| 07/30/2020 | 3130 | | [CASE PARTICIPANTS] SEALED ORDER by District Judge James O. Browning granting 3128 Motion for Downward Adjustment as to Leonard Lujan (4) (vv) (Entered: 07/30/2020) |
| 07/30/2020 | 3132 | | JUDGMENT as to Leonard Lujan by District Judge James O. Browning (vv) (Entered: 07/30/2020) |
| 07/31/2020 | 3133 | | MOTION to Withdraw as Attorney by Angela Arellanes by Shauna Gutierrez. (Arellanes, Angela) (Entered: 07/31/2020) |
| 08/03/2020 | 3134 | | RESPONSE to Motion by USA as to Angel DeLeon re 3122 MOTION for Reconsideration *of Order of Detention Pending Trial* (Attachments: # 1 Exhibit Cibola County Preventative Measures)(Ellison, Ryan) (Entered: 08/03/2020) |
| 08/04/2020 | 3135 | | ORDER OF USCA–Order filed by Clerk of the Court – This matter is before the court following notification from the court reporter that CJA counsel for appellants have not made payment arrangements for the transcripts ordered as to Joe Lawrence Gallegos, Andrew Gallegos (vv) (Entered: 08/04/2020) |
| 08/04/2020 | 3136 | | FILED IN ERROR–Opposed MOTION to Continue *Trial Date and Amend Scheduling Order* by Angel DeLeon. (Gorman, Sarah) Modified on 8/5/2020 (vv). (Entered: 08/04/2020) |

| 08/05/2020 | 3137 | | Amended MOTION to Continue *Trial Date and Amend Scheduling Order (Amended to Correct Case Number)* by Angel DeLeon. (Gorman, Sarah) (Entered: 08/05/2020) |
|---|---|---|---|
| 08/06/2020 | 3139 | | NOTICE OF HEARING ON MOTION in case as to Defendant Angel DeLeon 3137 Amended OPPOSED MOTION to Continue *Trial Date and Amend Scheduling Order (Amended to Correct Case Number)* : Motion Hearing set for 8/26/2020 at 02:30 PM in Albuquerque – 460 Vermejo Courtroom – Remote before District Judge James O. Browning. (cjw) NOTE: 1. This proceeding will be held via Zoom Video/Web Conferencing with all participants appearing remotely; the Zoom ID and Passcode will be provided separately to the participants email address of record. 2. Participants should connect to the proceeding 15 minutes prior its scheduled start time to allow time for trouble–shooting of any connectivity issues. 3. To ensure the record is of the best quality participants are encouraged to utilize a headset to reduce static and background noise; if not using a headset participants must ensure the audio feed at their location is muted when not speaking.  *** REMINDER: Recording or broadcasting of this hearing is prohibited. ***  [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/06/2020) |
| 08/06/2020 | 3140 | | Summons Returned Executed on 8/4/20 as to Shauna Gutierrez (vv) (Entered: 08/06/2020) |
| 08/06/2020 | 3141 | | RESPONSE to Motion by USA as to Angel DeLeon re 3137 Amended MOTION to Continue *Trial Date and Amend Scheduling Order (Amended to Correct Case Number)* (Armijo, Maria) (Entered: 08/06/2020) |
| 08/06/2020 | 3142 | | MOTION to Produce *Motion For the United States to Identify and Produce All Alleged Co–Conspirator Statements and for Pre–Trial Hearing on Their Admissibility* by Angel DeLeon. (Gorman, Sarah) (Entered: 08/06/2020) |
| 08/10/2020 | 3143 | | Clerk's Minutes for proceedings held before Magistrate Judge Laura Fashing: Initial Appearance re Revocation of Supervised Release as to Shauna Gutierrez held on 8/10/2020; Court grants 3133 MOTION to Withdraw as Attorney by Angela Arellanes filed by Shauna Gutierrez. (Recording Info: ABQ Zoom) (nm) (Entered: 08/10/2020) |
| 08/10/2020 | 3144 | | CJA: Appointment of Attorney Chandler C Blair for Shauna Gutierrez by Magistrate Judge Laura Fashing (kd) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] |

| | | | |
|---|---|---|---|
| | | | (Entered: 08/10/2020) |
| 08/10/2020 | 3145 | | WAIVER of Personal Presence at Hearing by Shauna Gutierrez (cl) (Entered: 08/10/2020) |
| 08/10/2020 | 3147 | | NOTICE OF HEARING as to Defendant Shauna Gutierrez: Final Hearing re Revocation of Supervised Release set for 8/31/2020 at 08:30 AM in Albuquerque – 460 Vermejo Courtroom before District Judge James O. Browning. Counsel wishing to appear remotely should contact the courtroom deputy at 505–348–2289 at least 48 business hours in advance of the hearing to advise how they wish to appear and of additional other parties that would like to appear for the hearing. Absent communication as described the Court will presume personal appearance is preferred. (cjw) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/10/2020) |
| 08/11/2020 | 3148 | | MOTION to Withdraw as Attorney by Angela Arellanes by Shauna Gutierrez. (Arellanes, Angela) (Entered: 08/11/2020) |
| 08/11/2020 | 3149 | | Court Reporter Jennifer Bean estimates date of 8/12/2020 for completion of the transcript of hearing(s) held before Judge James O. Browning on Trial and post trial proceedings, as ordered by Joe Lawrence Gallegos, Andrew Gallegos for the Notice of Appeal. Re: 3070 Notice of Appeal – Final Judgment, 3073 Notice of Appeal – Final Judgment. (vv) (Entered: 08/11/2020) |
| 08/11/2020 | 3150 | | NOTICE OF ATTORNEY APPEARANCE: Chandler C Blair appearing for Shauna Gutierrez (Blair, Chandler) (Entered: 08/11/2020) |
| 08/17/2020 | 3151 | | Unopposed MOTION to Dismiss by Conrad Villegas. (Crow, B.J.) (Entered: 08/17/2020) |
| 08/17/2020 | 3153 | | REPLY TO RESPONSE to Motion by Angel DeLeon re 3122 MOTION for Reconsideration *of Order of Detention Pending Trial* (Gorman, Sarah) (Entered: 08/17/2020) |
| 08/18/2020 | 3154 | | [CASE PARTICIPANTS] Amended MOTION for Reconsideration re 2913 Order of Detention *For Ruling Before Magistrate Judge Molzen* by Angel DeLeon. (Attachments: # 1 Exhibit)(Gorman, Sarah) (Entered: 08/18/2020) |
| 08/18/2020 | 3155 | | AMENDED Petition for Warrant or Summons for Offender Under Supervision as to Shauna Gutierrez (Villalobos, Karina) (Entered: 08/18/2020) |
| 08/18/2020 | 3156 | | [APPLICABLE PARTY] Post Conviction – VIOLATION REPORT as to Shauna Gutierrez Related Documents: 3155 Post Conviction – (12C) Petition for Warrant or Summons (Villalobos, Karina) (Entered: 08/18/2020) |
| 08/18/2020 | 3157 | | [APPLICABLE PARTY] ORDER by District Judge James O. Browning FOR ISSUANCE OF ARREST WARRANT as to Defendant Shauna Gutierrez (RE: 3155 Post Conviction – (12C) Petition for Warrant or |

| | | | |
|---|---|---|---|
| | | | Summons ) (cjw)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 08/18/2020) |
| 08/18/2020 | 3158 | | MINUTE ORDER pursuant to the direction of District Judge James O. Browning as to Defendant Shauna Gutierrez: The Revocation of Supervised Release Final Hearing presently set for August 31, 2020 is hereby vacated and will be reset at a later date. (cjw)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 08/18/2020) |
| 08/18/2020 | 3159 | | [APPLICABLE PARTY] ARREST Warrant Issued by District Judge James O. Browning as to Shauna Gutierrez. Three certified copies of Petition, Order (NEF), and ARREST Warrant delivered to USMS by interoffice mail box. Copy of Petition, Order (NEF) and ARREST Warrant placed in USPPS mail box. (meq) (Entered: 08/18/2020) |
| 08/19/2020 | 3160 | | REPLY TO RESPONSE to Motion by Angel DeLeon re 3137 Amended MOTION to Continue *Trial Date and Amend Scheduling Order (Amended to Correct Case Number)* (Gorman, Sarah) (Entered: 08/19/2020) |
| 08/20/2020 | 3161 | | AMENDED NOTICE (TO INCLUDE INTERPRETER SERVICES ONLY) OF HEARING ON MOTION in case as to Defendant Angel DeLeon 3137 Amended MOTION to Continue *Trial Date and Amend Scheduling Order (Amended to Correct Case Number)* : Motion Hearing set for 8/26/2020 at 02:30 PM in Albuquerque – 460 Vermejo Courtroom – Remote before District Judge James O. Browning. (cjw)<br><br>NOTE:<br><br>1. This proceeding will be held via Zoom Video/Web Conferencing with all participants appearing remotely; the Zoom ID and Passcode has already been provided separately to the participants email address of record. Court interpreter services will be provided this information separately.<br><br>2. Participants should connect to the proceeding 15 minutes prior its scheduled start time to allow time for trouble–shooting of any connectivity issues.<br><br>3. To ensure the record is of the best quality participants are encouraged to utilize a headset to reduce static and background noise; if not using a headset participants must ensure the audio feed at their location is muted when not speaking.<br><br>*** REMINDER: Recording or broadcasting of this hearing is prohibited. ***<br><br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 08/20/2020) |
| 08/20/2020 | 3162 | | |

| | | | |
|---|---|---|---|
| | | | [CASE PARTICIPANTS] MEMORANDUM OPINION AND ORDER by Magistrate Judge Karen B. Molzen Denying 3154 Amended MOTION for Reconsideration re 2913 Order of Detention *For Ruling Before Magistrate Judge Molzen* as to Angel DeLeon. (eh) (Entered: 08/20/2020) |
| 08/25/2020 | | | Arrest of Shauna Gutierrez (nm) (Entered: 08/25/2020) |
| 08/25/2020 | 3163 | | NOTICE OF HEARING as to Shauna Gutierrez: Initial Appearance on Revocation Proceedings set for 8/26/2020 at 10:00 AM in Albuquerque – 440 Hondo Courtroom – Remote before Magistrate Judge Steven C. Yarbrough. (nm)<br><br>NOTE:<br><br>1. This proceeding will be held via Zoom Video/Web Conferencing with all participants appearing remotely; the Zoom ID and Passcode will be provided separately to the participants email address of record.<br><br>2. Participants should connect to the proceeding 15 minutes prior its scheduled start time to allow time for trouble–shooting of any connectivity issues.<br><br>3. To ensure the record is of the best quality participants are encouraged to utilize a headset to reduce static and background noise; if not using a headset participants must ensure the audio feed at their location is muted when not speaking.<br><br><span style="color:red">*** REMINDER: Recording or broadcasting of this hearing is prohibited. ***</span><br><br><span style="color:blue">[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]</span><br>(Entered: 08/25/2020) |
| 08/25/2020 | 3164 | | Arrest Warrant Returned Executed on 8/24/20 as to Shauna Gutierrez. (vv) (Entered: 08/25/2020) |
| 08/26/2020 | 3165 | | WAIVER of Personal Presence at Hearing by Angel DeLeon (Gorman, Sarah) (Entered: 08/26/2020) |
| 08/26/2020 | 3166 | | Clerk's Minutes before Magistrate Judge Karen B. Molzen: Initial Appearance/Preliminary Revocation hearing re Amended Petition for Revocation of Supervised Release as to Shauna Gutierrez held; Detention Hearing set for 8/28/2020 at 10:00 AM in Albuquerque – 440 Hondo Courtroom – Remote (Recording Info: Liberty–Hondo) (kd)<br><br>NOTE:<br><br>1. The detention hearing will be held via Zoom Video/Web Conferencing with all participants appearing remotely; the Zoom ID and Passcode will be provided separately to the participants email address of record. |

| | | |
|---|---|---|
| | | 2. Participants should connect to the proceeding 15 minutes prior its scheduled start time to allow time for trouble–shooting of any connectivity issues.<br><br>3. To ensure the record is of the best quality participants are encouraged to utilize a headset to reduce static and background noise; if not using a headset participants must ensure the audio feed at their location is muted when not speaking. (Entered: 08/26/2020) |
| 08/26/2020 | 3167 | ORAL ORDER of Temporary Detention pending hearing as to Shauna Gutierrez by Magistrate Judge Karen B. Molzen (kd) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 08/26/2020) |
| 08/26/2020 | 3168 | WAIVER of Personal Presence at Hearing by Shauna Gutierrez (cl) (Entered: 08/26/2020) |
| 08/26/2020 | 3169 | WAIVER of Preliminary Hearing by Shauna Gutierrez (cl) (Entered: 08/26/2020) |
| 08/27/2020 | 3170 | RESPONSE to Motion by USA as to Angel DeLeon re 3142 MOTION to Produce *Motion For the United States to Identify and Produce All Alleged Co–Conspirator Statements and for Pre–Trial Hearing on Their Admissibility* (Armijo, Maria) (Entered: 08/27/2020) |
| 08/28/2020 | 3171 | Clerk's Minutes held before Magistrate Judge Steven C. Yarbrough: Detention Hearing as to Shauna Gutierrez held (Recording Info: Liberty–Hondo) (kd) (Entered: 08/28/2020) |
| 08/28/2020 | 3172 | ORDER OF DETENTION PENDING REVOCATION HEARING as to Shauna Gutierrez by Magistrate Judge Steven C. Yarbrough (kd) (Entered: 08/28/2020) |
| 08/31/2020 | 3173 | NOTICE OF HEARING ON MOTION in case as to Angel DeLeon 3137 Amended MOTION to Continue *Trial Date and Amend Scheduling Order (Amended to Correct Case Number)* : Motion Hearing set for 9/1/2020 at 08:15 AM in Albuquerque – 460 Vermejo Courtroom – Remote before District Judge James O. Browning.<br><br>Defense counsel shall file the Defendant's Waiver of Personal Appearance in advance of the hearing. (cjw)<br><br>NOTE:<br><br>1. This proceeding will be held via Zoom Video/Web Conferencing with all participants appearing remotely; the Zoom ID and Passcode will be provided separately to the participants email address of record.<br><br>2. Participants should connect to the proceeding 15 minutes prior its scheduled start time to allow time for trouble–shooting of any connectivity issues.<br><br>3. To ensure the record is of the best quality participants are encouraged to utilize a headset to reduce static and background noise; if not using a headset |

|  |  |  | participants must ensure the audio feed at their location is muted when not speaking.<br><br>*** REMINDER: Recording or broadcasting of this hearing is prohibited. ***<br><br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 08/31/2020) |
| 09/01/2020 | 3174 |  | WAIVER of Personal Presence at Hearing by Angel DeLeon (Gorman, Sarah) (Entered: 09/01/2020) |
| 09/01/2020 | 3175 |  | Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing as to Angel DeLeon held on 9/1/2020 re 3137 Amended MOTION to Continue *Trial Date and Amend Scheduling Order (Amended to Correct Case Number)* filed by Angel DeLeon (Court Reporter: J Bean) (Interpreter: M Gonzalez–Hibner) (vv) (Entered: 09/01/2020) |
| 09/04/2020 | 3176 |  | [APPLICABLE PARTY] ORDER by District Judge James O. Browning MODIFYING the conditions as noted in the petition as to Defendant Ruben Hernandez (RE: 3152 Post Conviction – (12B) Petition for Modification ) (cjw)<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]<br>(Entered: 09/04/2020) |
| 09/08/2020 | 3177 |  | ORDER by District Judge James O. Browning granting 3151 Motion to Dismiss Amended Petition as to Conrad Villegas (20) (meq) (Entered: 09/08/2020) |
| 09/08/2020 | 3178 |  | [APPLICABLE PARTY] SEALED PROTECTIVE ORDER by District Judge James O. Browning granting 3138 Motion for Protective Order as to Angel DeLeon (1) (meq) (Entered: 09/08/2020) |
| 09/08/2020 | 3179 |  | TRANSCRIPT of Sentence Proceedings as to Joe Lawrence Gallegos held on June 11, 2019, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–348–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Request Redaction set for 9/15/2020. Redaction Request due 9/29/2020. Redacted Transcript Deadline set for 10/9/2020. Release of Transcript Restriction set for 12/7/2020. (jab) (Entered: 09/08/2020) |
| 09/08/2020 | 3180 | | TRANSCRIPT of Sentence Proceedings as to Andrew Gallegos held on May 10, 2019, before District Judge James O. Browning. Court Reporter/Transcriber Jennifer Bean, Telephone number 505–843–2283. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven–day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov.** <br><br> Notice of Intent to Request Redaction set for 9/15/2020. Redaction Request due 9/29/2020. Redacted Transcript Deadline set for 10/9/2020. Release of Transcript Restriction set for 12/7/2020. (jab) (Entered: 09/08/2020) |
| 09/10/2020 | 3181 | | REPLY TO RESPONSE to Motion by Angel DeLeon re 3142 MOTION to Produce *Motion For the United States to Identify and Produce All Alleged Co–Conspirator Statements and for Pre–Trial Hearing on Their Admissibility* (Gorman, Sarah) (Entered: 09/10/2020) |
| 09/14/2020 | 3182 | | NOTICE OF HEARING ON MOTION in case as to Defendant Angel DeLeon 3142 MOTION to Produce *Motion For the United States to Identify and Produce All Alleged Co–Conspirator Statements and for Pre–Trial Hearing on Their Admissibility* : Motion Hearing set for 10/16/2020 at 01:30 PM in Albuquerque – 460 Vermejo Courtroom – Remote before District Judge James O. Browning. <br><br> Defense counsel shall file Defendant's Waiver of Personal Appearance in advance of the hearing. (cjw) <br><br> NOTE: <br><br> 1. This proceeding will be held via Zoom Video/Web Conferencing with all participants appearing remotely; the Zoom ID and Passcode will be provided separately to the participants email address of record. <br><br> 2. Participants should connect to the proceeding 15 minutes prior its scheduled start time to allow time for trouble–shooting of any connectivity issues. <br><br> 3. To ensure the record is of the best quality participants are encouraged to utilize a headset to reduce static and background noise; if not using a headset |

|  |  |  | participants must ensure the audio feed at their location is muted when not speaking.<br><br>*** REMINDER: Recording or broadcasting of this hearing is prohibited. ***<br><br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/14/2020) |
|---|---|---|---|
| 09/17/2020 | 3183 |  | "FILED IN ERROR" Have to redo. Supplemental Record on Appeal transmitted to US Court of Appeals in 1 Volume(s), as to Joe Lawrence Gallegos re 3073 Notice of Appeal – Final Judgment (bap) Modified text on 9/23/2020 (bap). (Entered: 09/17/2020) |
| 09/17/2020 | 3184 |  | "FILED IN ERROR" will have to redo complete file. Supplemental Record on Appeal transmitted to US Court of Appeals in 1 Volume(s), as to Andrew Gallegos re 3070 Notice of Appeal – Final Judgment (bap) Modified text on 9/23/2020 (bap). (Entered: 09/17/2020) |
| 09/17/2020 | 3185 |  | ORDER by District Judge James O. Browning granting 3148 Motion to Withdraw as Attorney as to Shauna Gutierrez (30). (cmm) (Entered: 09/17/2020) |
| 09/18/2020 | 3186 |  | SCHEDULING ORDER by District Judge James O. Browning gramting 3137 Amended MOTION to Continue *Trial Date and Amend Scheduling Order (Amended to Correct Case Number)* filed by Angel DeLeon. Jury Selection/Trial reset for 5/3/2021 at 09:00 AM in Las Cruces – 320 Tortugas Courtroom (North Tower) before District Judge James O. Browning. (meq) (Entered: 09/18/2020) |

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8

9         Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
10   District Judge, Albuquerque, Bernalillo County,
     New Mexico, commencing on October 4, 2016.
11

12   For the Government:  Ms. Maria Armijo; Mr. Matthew
     Beck; Mr. Randy Castellano
13
     For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14   Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
     Mr. Robert Cooper; Mr. Dean Clark; Mr. James Lahann;
15   Mr. Orlando Mondragon; Mr. Noel Orquiz; Mr. Nathan
     Chambers; Mr. Billy Blackburn; Mr. Jerry Daniel
16   Herrera; Mr. Pedro Pineda; Mr. Jack Mkhitarian; Mr.
     Larry Hammond; Ms. Margaret Strickland; Mr. Steven
17   Almanza; Ms. Mary Stillinger; Ms. Amy Jacks;
     Mr. B. J. Crow; Mr. Marc Lowry; Ms. Amy Sirignano;
18   Mr. Michael Davis; Mr. Doug Couleur; Mr. Santiago
     Hernandez; Mr. Ryan Villa; Ms. Justine Fox-Young; Mr.
19   Donovan Roberts; Ms. Erlinda Johnson; Mr. Keith
     Romero; Ms. Angela Arellanes
20

21   For the Defendants via phone:  Mr. Chris Adams; Mr.
     Gary Mitchell
22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 391

 1            THE COURT:  Good morning everyone.  I
 2   appreciate almost everybody being here.  We'll try to
 3   work through that here in a minute.
 4            All right.  The Court will call United
 5   States of America versus Angel DeLeon, Criminal
 6   Matter No. 15-CR-4268 JB.
 7            If counsel will enter their appearances for
 8   the Government.
 9            MS. ARMIJO:  Good morning, Your Honor.
10   Maria Armijo and Randy Castellano and Matthew Beck on
11   behalf of the United States.
12            THE COURT:  All right.  Ms. Armijo, Mr.
13   Castellano, and Mr. Beck, good morning to you.
14            Let's see.  For Defendant Edward Troup?
15            MS. HARBOUR-VALDEZ:  Good morning, Your
16   Honor.  Cori Harbour-Valdez and Pat Burke on behalf
17   of Edward Troup.  And we're ready to proceed.
18            THE COURT:  All right.  Ms. Harbour-Valdez,
19   Mr. Burke, good morning to you.
20            Let's get Defendant Joe Lawrence Gallegos.
21            MR. BENJAMIN:  Good morning, Your Honor.
22   Brock Benjamin on behalf of Mr. Gallegos.
23            THE COURT:  Mr. Benjamin, good morning to
24   you.
25            And for Defendant Leonard Lujan?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 392

1           MR. CLARK:  Good morning, Your Honor.  Dean

2    Clark on behalf of Mr. Lujan.

3           THE COURT:  All right.  Mr. Clark, good

4    morning to you.

5           And for Defendant Billy Garcia?

6           MR. COOPER:  Good morning, Your Honor.  Bob

7    Cooper and Jim Castle for Mr. Garcia.

8           THE COURT:  All right.  Mr. Cooper,

9    Mr. Garcia, Mr. Castle, good morning to you.

10           And for Defendant Eugene Martinez?

11           MR. COULEUR:  Good morning, Your Honor.

12    Doug Couleur for Eugene Martinez.

13           THE COURT:  All right.  Mr. Couleur, Mr.

14    Martinez, good morning to you.

15           And for Defendant Allen Patterson?

16           MR. LAHANN:  Good morning, Your Honor.

17    Jeff Lahann on behalf of Mr. Allen Patterson.

18           THE COURT:  All right.  Mr. Lahann,

19    Mr. Patterson, good morning to you.

20           And for Defendant Christopher Chavez?

21           MR. MONDRAGON:  Good morning, Your Honor.

22    Orlando Mondragon on behalf of Mr. Chavez.

23           THE COURT:  Mr. Mondragon, Mr. Chavez, good

24    morning to you.

25           And for Defendant Javier Alonso?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 393

1           MS. ORQUIZ:  Noel Orquiz and Nathan

2    Chambers for Mr. Alonso.

3           THE COURT:  All right.  Mr. Orquiz,

4    Mr. Chambers, Mr. Alonso, good morning to you.

5           For Defendant Arturo Arnulfo Garcia?

6           MR. BLACKBURN:  Good morning, Your Honor.

7    Billy Blackburn on behalf of Mr. Garcia.

8           THE COURT:  Mr. Blackburn, Mr. Garcia, good

9    morning to you.

10           And for Defendant Benjamin Clark?

11           MR. HERRERA:  Good morning, Your Honor.

12    J.D. Herrera here for Mr. Clark.  My co-counsel,

13    Steve Foster, is in trial in Las Cruces.

14           THE COURT:  All right.  Mr. Herrera, Mr.

15    Clark, good morning to you.

16           And for Defendant Reuben Hernandez?

17           MR. PINEDA:  Good morning,  Your Honor.

18    Pedro Pineda for Mr. Hernandez.

19           THE COURT:  Mr. Pineda, Mr. Hernandez, good

20    morning to you.

21           Did Mr. Mitchell come on the phone?

22           MR. MITCHELL:  I have been, Your Honor.

23    Gary Mitchell on behalf of Mr. Armenta.

24           THE COURT:  All right.  Mr. Mitchell, I

25    expected -- and all counsel are here in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 394

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 395

```
 1    courtroom.  If they had second counsel, I was
 2    allowing them to have second counsel in the
 3    courtroom.  But I didn't excuse any counsel from not
 4    being present with their defendant.  Is there a
 5    reason you're not here today?
 6            MR. MITCHELL:  Judge, I just finished jury
 7    selection in Clovis, Your Honor.  I'm sorry.
 8            THE COURT:  Well --
 9            MR. MITCHELL:  And I should have made it --
10    you know, it was my mistake, my apologies.  Nobody's
11    fault but mine.
12            THE COURT:  All right.  Mr. Mitchell,
13    Mr. Armenta, good morning to you.
14            THE DEFENDANT:  Good morning.
15            THE COURT:  For Defendant Jerry Montoya?
16            MS. STRICKLAND:  Good morning, Your Honor.
17    Margaret Strickland and Larry Hammond for
18    Mr. Montoya.
19            THE COURT:  All right.  Ms. Strickland, Mr.
20    Hammond, and Mr. Montoya, good morning to you.
21            And for Defendant Mario Rodriguez?
22            MR. HERNANDEZ:  Good morning, Your Honor.
23    Santiago Hernandez on behalf of Mr. Rodriguez.
24            THE COURT:  All right.  Mr. Hernandez, Mr.
25    Rodriguez, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 395



Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 696

```
 1                For Defendant Timothy Martinez?

 2                MR. ALMANZA:  Good morning, Your Honor.

 3   Steve Almanza on behalf of Timothy Martinez.

 4                THE COURT:  All right.  Mr. Almanza, Mr.

 5   Martinez, good morning to you.

 6                And for Defendant Mauricio Varela?

 7                MS. STILLINGER:  Good morning, Your Honor.

 8   Mary Stillinger here for Mauricio Varela.

 9                THE COURT:  All right.  Ms. Stillinger, Mr.

10   Varela, good morning to you.

11                Is Mr. Spencer on the phone, or is he --

12                MS. STILLINGER:  No, I'm just handling this

13   hearing for today.

14                THE COURT:  All right.

15                For Defendant Daniel Sanchez?

16                MS. JACKS:  Good morning, Your Honor.  Amy

17   Jacks on behalf of Mr. Sanchez.  And Mr. Jewkes is

18   not present today.

19                THE COURT:  All right.  Ms. Jacks, Mr.

20   Sanchez, good morning to you.

21                THE DEFENDANT:  Good morning, Your Honor.

22                THE COURT:  Defendant Gerald Archuleta?

23   All right.  He's not here.

24                For Defendant Conrad Villegas?

25                MR. CROW:  Good morning, Your Honor.  B.J.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Crow for Mr. Villegas.
 2             THE COURT:  All right.  Mr. Crow, Mr.
 3   Villegas, good morning to you.
 4             And for Defendant Anthony Ray Baca?
 5             MR. LOWRY:  Good morning, Your Honor.  Marc
 6   Lowry on behalf of Anthony Ray Baca.  And Ms. Duncan
 7   is not here this morning.
 8             THE COURT:  All right.  Mr. Lowry, Mr.
 9   Baca, good morning to you.
10             THE DEFENDANT:  Good morning, Your Honor.
11             THE COURT:  For -- let's see -- Defendant
12   Christopher Garcia?
13             MS. SIRIGNANO:  Good morning, Your Honor.
14   Amy Sirignano on behalf of Christopher Garcia, with
15   co-counsel Chris Adams appearing telephonically, with
16   our law clerk, Heidi Deifel.
17             THE COURT:  All right.  Ms. Sirignano, Mr.
18   Adams, Ms. Deifel, Mr. Garcia, good morning to you.
19             MR. ADAMS:  Good morning.
20             THE COURT:  For Defendant Carlos Herrera?
21             MR. DAVIS:  Good morning, Judge.  Michael
22   Davis on behalf of Mr. Herrera.  My co-counsel, Carey
23   Bhalla, is trial in Municipal Court in Rio Rancho
24   this morning.
25             THE COURT:  All right.  Mr. Davis, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 397

```
 1    Herrera, good morning to you.

 2              And for Defendant Rudy Perez?

 3              MR. VILLA:  Your Honor, Ryan Villa and my

 4    proposed co-counsel, Justine Fox-Young, on behalf of

 5    Mr. Perez.

 6              THE COURT:  All right.  Mr. Villa,

 7    Ms. Fox-Young, Mr. Perez, good morning to you.

 8              And for Defendant Andrew Gallegos?

 9              MR. ROBERTS:  Good morning, Your Honor.

10    Donovan Roberts for Mr. Andrew Gallegos.

11              THE COURT:  All right.  Mr. Roberts, Mr.

12    Gallegos, good morning to you.

13              And for Defendant Santos Gonzalez?

14              MS. JOHNSON:  Good morning, Your Honor.

15    Erlinda Johnson on behalf of Santos Gonzalez, who

16    appears before the Court.

17              THE COURT:  All right.  Ms. Johnson, good

18    morning to you.  Mr. Gonzales, good morning to you.

19              For the Defendant Paul Rivera?

20              MR. ROMERO:  Good morning, Your Honor.

21    Keith Romero on behalf of Mr. Rivera, who appears in

22    custody before you this morning, Judge.

23              THE COURT:  All right.  Mr. Romero, good

24    morning to you.  Mr. Rivera, good morning to you.

25              And Defendant Shauna Gutierrez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MS. ARELLANES:  Angela Arellanes for Ms.
2    Gutierrez, who appears in person.
3           THE COURT:  All right.  Ms. Arellanes, Ms.
4    Gutierrez, good morning to you.
5           Any other counsel on the phone?
6           All right.  Let me make sure I know --
7    we've got some overflow in the Vermejo courtroom.
8    Can the Vermejo courtroom hear.  Mollie, can you --
9    can everyone hear over there?
10          MS. QUINTANA:  Yes, we can hear you, Your
11   Honor.
12          THE COURT:  All right.  The U.S. Marshals
13   have requested that the attorneys not speak to other
14   defendants.  You, of course, can speak to your
15   clients.  But they request, for security purposes,
16   that you not speak to other defendants during the
17   course of this hearing.  Anybody got a great problem
18   with that request?  Everybody can abide by it?  All
19   right.
20          I have about an 80-page opinion that I was
21   hoping I would get done for today that memorializes
22   everything we did in early June.  I do think it will
23   be out by the end of the week.  I will certainly work
24   hard to try to get that.  But you will get orders,
25   and that's what I intend to get to you.  So it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 400

1    relatively close to being finished, but I just

2    couldn't get it done for today.

3              Margaret Strickland has requested that the

4    Court take up her motion, Document 668, first.

5    Ms. Stillinger.  All right.  So any objections to --

6    from the defendants to taking that one up first?

7              All right.  I understand that the parties

8    have --

9              MR. VILLA:  Your Honor?

10             THE COURT:  Yes, Mr. Villa?

11             MR. VILLA:  Your Honor, I just wanted to

12   bring up a preliminary matter that I think applies to

13   all of these motions, is that there are a number of

14   officers in the courtroom from the STIU, who I think

15   are fact witnesses in some of these cases.  And, as

16   we know, there is ongoing investigation being

17   conducted by them to these defendants.  And I think

18   their presence during some of the argument and

19   presentation, which I know some counsel intend to

20   present some evidence and things like that, would be

21   inappropriate, given their status as fact witnesses.

22             THE COURT:  Well, we certainly had that in

23   the -- some issues with that as far as the CJA

24   meeting we had afterwards.  I guess this is an open

25   proceeding.  It's open to the press; it's open to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 401

1   everybody.  I guess I -- what's the objection?  I

2   mean, what would be the basis for excluding people?

3              MR. VILLA:  I guess it's basic

4   sequestration, Your Honor.  I mean, we're talking

5   about people potentially the Government may intend to

6   call either in trial or perhaps in these proceedings.

7   I don't think they're case agents.  I certainly

8   understand if the Government needs their case agents

9   present.  But many of these individuals are not case

10  agents.  And like I said, they're fact witnesses.  I

11  know, technically, the Rule of Exclusion doesn't

12  apply, we're not in trial, but I think the same

13  rationale applies.

14             THE COURT:  Anybody else want to speak on

15  that?

16             MR. BENJAMIN:  Your Honor, Joe Gallegos

17  would join the argument.

18             THE COURT:  Well, why don't we cross the

19  bridge when we get to it.  If something comes up,

20  then I can figure out what to do with it.  But a lot

21  of this stuff, I guess I don't see it as so

22  evidentiary based that we can't have the additional

23  security that provides.  It creates a lot of problems

24  for the Court and the logistics here.

25             If you've got something like that, you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 401

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 402

1    might try to raise it before we all get together

2    here, Mr. Villa.

3              MR. VILLA:  Yes, Your Honor.  And I

4    apologize.  I didn't anticipate their presence.

5              THE COURT:  Well, they were here last time,

6    and you didn't raise it last time.  So you raise it

7    today.  So if you've got some issue like that, try to

8    raise it before today, particularly given they were

9    here last time.

10             MR. VILLA:  I will, Your Honor.

11             THE COURT:  All right.  So if we get to a

12   point where you think that we need to exclude

13   somebody because of something that's going to be

14   said, I'll look to defense counsel to raise it at

15   that point, and then we'll figure out what to do.

16             All right.  So are we going to take -- I

17   understand that y'all have been talking, and that was

18   one reason we got started a little bit late, but

19   Ms. Stillinger -- or Ms. Strickland, do you want to

20   say what's left to your motion to compel, 668?

21             MS. STILLINGER:  And just for the record,

22   Your Honor, I'm Ms. Stillinger, and people always get

23   us mixed up because we have the same initials.  But

24   this is Ms. Strickland's motion.

25             THE COURT:  Okay.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. STRICKLAND:  That's correct, Your

2   Honor.  Good morning again.

3          THE COURT:  Ms. Strickland.

4          MS. STRICKLAND:  May I proceed?

5          THE COURT:  You may.

6          MS. STRICKLAND:  Your Honor, I read the

7   Government's response to my motion to compel.  And it

8   seems that the Government does agree that it is

9   appropriate to release all of our clients'

10   statements.  They claim to have released all of the

11   statements made March 8th and March 10th.

12          I spoke to Mr. Aoki and confirmed that we

13   do not have all of the statements.  And the discovery

14   indicates that there were 13 statements taken March

15   8th and 10th, and that those statements were

16   recorded.  So I would like the Court to order that

17   the Government -- and it seems that they don't oppose

18   it -- put those specific interviews from the 8th and

19   the 10th on a CD, or however they're getting it to

20   Mr. Aoki, and send it again, so that we can ensure

21   that we're complying with that basic requirement of

22   Rule 16.

23          THE COURT:  Who is handling this for the

24   Government?  Is this yours, Mr. Beck?

25          MR. BECK:  Yes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 403

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 404

```
 1            THE COURT:  Do you have any objection to
 2    making that order?
 3            MR. BECK:  Your Honor, I think counsel is
 4    correct that it's our position we've disclosed all of
 5    the statements.  We asked about this, and as far as
 6    we understand, the statements that were recorded have
 7    been released.  So, as she said, we don't oppose
 8    releasing those statements because they are entitled
 9    to them under Rule 16, but we've released them if
10    they exist.
11            THE COURT:  Are you certain you don't have
12    them?
13            MS. STRICKLAND:  Oh, I'm certain I don't
14    have them, because I spoke to Mr. Aoki about it, and
15    I reviewed the discovery thoroughly for them.
16            So I can list the names of the people whose
17    statements were missing.  On March 8th, there was an
18    interview of Jerry Armenta, Mario Rodriguez, Timothy
19    Martinez, Jeffrey Madrid, Jerry Montoya, Ronald
20    Sanchez, Michael Hernandez, Daniel Sanchez, and Jason
21    Wright.
22            THE COURT:  And you don't have any of
23    those?
24            MS. STRICKLAND:  I believe we have
25    Armenta's and Mr. Sanchez's.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 404

 1                On March 10th, there was an interview of

 2     Jerry Montoya, Jerry Armenta, and Rudy Perez.  We

 3     don't have any of those.

 4                THE COURT:  Well, how certain are you, Mr.

 5     Beck, that you have released those?

 6                MR. BECK:  Are we talking about the

 7     statements or the recordings?

 8                THE COURT:  Which are you talking about?

 9                MS. STRICKLAND:  The recordings.

10                MR. BECK:  As I said, Your Honor, we're

11     happy to check into whether they exist.  If they do,

12     we'll disclose them, just like we've disclosed the

13     rest of the recordings.  If they don't, there is

14     really nothing we can do about that.

15                THE COURT:  All right.  Well, let's check.

16     And then I will order that the Government produce

17     those in 14 days.  Can you comply with that within 14

18     days?

19                MR. BECK:  Your Honor, we'll do our best.

20     I think that's a fair thing.  Obviously, we have to

21     reach out to the State Police to get those

22     statements, but we will certainly do our best to get

23     that within 14 days.

24                MS. STRICKLAND:  And just to help the

25     Government, the statements and the fact that they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 405

1  were recorded are on pages 1603 through 1607 Bates

2  stamped discovery, and both the FBI, State Police,

3  and STIU were involved in taking them.

4         THE COURT:  All right.  What else from your

5  motion, Ms. Strickland?

6         MS. STRICKLAND:  Your Honor, as to the

7  video, I read the Government's response to that as

8  well.  Now, the discovery indicates that there is

9  video both on Pod 1A and 1B.  We have only received

10  video from Pod 1A.  The Government says that there is

11  no more video either from A or B.  I want to make

12  sure that they have confirmed with all of the

13  investigating agencies that nobody captured those

14  videos for us.

15         MR. BECK:  We have checked with New Mexico

16  Corrections Department, Your Honor, and those videos

17  from the other pod do not exist.

18         MS. STRICKLAND:  So I just want to make

19  sure we check with everybody, because New Mexico

20  Corrections Department may not have preserved them

21  themselves.  I want to make sure that we've checked

22  with the FBI, with the investigating State Police,

23  and with STIU about those videos.

24         THE COURT:  Have you checked with those

25  three entities, Mr. Beck?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 406

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 407

1           MR. BECK:  Your Honor, the FBI was not

2    involved.  I don't know that -- STIU is part of New

3    Mexico Corrections.  I don't know if we've checked

4    with State Police.  But I think it's fair that you

5    order that, and we will go back and do that.

6           THE COURT:  All right.  So I'll order that

7    you check with those three entities, and then advise

8    Mr. Strickland of what the results are.

9           MS. STRICKLAND:  Your Honor, as to the

10   information that we've requested on Armenta, I want

11   to give the Court a little bit of background.  The

12   case from the 2014 homicide, which are Counts 6 and

13   7, is basically going to be a swearing contest

14   between Mr. Armenta, the Government's informant, and

15   others.  It is beyond dispute in this case that

16   Mr. Armenta stabbed the victim in the case, Javier

17   Molina, to death, and that that was captured by

18   video.

19           In the first statement Mr. Armenta gave, he

20   lied and said that he was not involved in the

21   homicide at all.  In the second statement Mr. Armenta

22   gave, he said that he acted alone and that this was a

23   personal dispute between him and Mr. Molina, the

24   victim in the case.  Then, many, many months later,

25   Mr. Armenta debriefed with both the state officials

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 407

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 408

1  and the government officials, and reached a deal

2  where he gave a story that implicated everybody else

3  in this case, and in exchange, he got a deal for 18

4  months, nine of which they agreed would be suspended.

5        So casting doubt on his story and finding

6  out what other instances Mr. Armenta may have had of

7  violence against other inmates, threats against other

8  inmates, 404(b) evidence about other times he

9  misrepresented to benefit himself would be in the

10  STIU file, and are necessary impeachment evidence for

11  all the defendants involved in that count.

12        THE COURT:  So you're requesting on this

13  for what?  What are you asking for?

14        MS. STRICKLAND:  Well, I'm asking for

15  impeachment materials and the STIU file of

16  Mr. Armenta, the Government's informant in the case.

17        MR. BECK:  Your Honor, I think that's

18  request Number 4 in her motion.

19        THE COURT:  Number 4.

20        All right.  Your thoughts, Mr. Beck?

21        MR. BECK:  Your Honor, I think this would

22  relate to a number of the requests that -- from the

23  different motions.  The United States is aware of its

24  obligations under the law with regard to impeachment

25  files -- excuse me, impeachment material.  That's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 408

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 409

1   Jencks material that the United States is not

2   obligated to disclose at this time.  We've talked

3   about it, and we are open and agreeable to producing

4   the Jencks and impeachment material two weeks before

5   trial, even though our obligation is not to do so

6   until trial.  We understand that, with the number of

7   defendants and the number of possible witnesses, the

8   defense will need more time with that.  So we're open

9   to doing it two weeks beforehand.  And I think that

10  much of the information that we're going to be

11  talking about today, many of the materials requested

12  are impeachment materials and Jencks materials.  And

13  the law is clear that at this point in litigation,

14  we're under no obligation.

15          So that's two weeks before a firm setting.

16  And I believe, at this point in the trial, that's not

17  until March.  So at this point, we're still six

18  months out from that date, Your Honor.

19          THE COURT:  Have you done a Brady review of

20  these materials?

21          MR. BECK:  Your Honor, we have done Brady

22  review of some of them.

23          THE COURT:  How about the STIU file for

24  Jerry Armenta?

25          MR. BECK:  Well, your Honor -- and I guess

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 409

1    this gets to many other points we'll discuss today --

2    the STIU files -- I understand defense counsel's

3    argument and contention that the United States has

4    custody and control over -- I think the Tenth Circuit

5    uses "investigation files" from state entities, state

6    agencies, other government agencies involved in the

7    investigation.

8            STIU, certainly has been involved in

9    housing these inmates.  But to go through files that

10   STIU has not opened up related to this case

11   whatsoever, that are housed in a different jail

12   cells -- excuse me, the different jail compounds with

13   the different defendants, I would submit, goes way

14   beyond anything that the Tenth Circuit has said is in

15   the United States' custody and control.

16           That being said, we have -- certainly to

17   the extent that there are materials that will be

18   Jencks and Brady, and STIU used them, we understand

19   our obligations with those.  And we have reviewed

20   some of those files.  I think specifically with

21   regard to Jerry Armenta, we have not done a Brady

22   review of his STIU file yet.

23           THE COURT:  Well, let me ask you about your

24   relationship with the Department of Corrections.  I

25   would assume that it's extremely close, given the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 410

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 411

```
 1   nature of the charges, that the defendants were
 2   conspiring to kill the Secretary.  Just be very
 3   truthful and frank with me:  Can you basically pick
 4   up the phone and get whatever documents you want over
 5   there?
 6            MR. BECK:  To a certain extent, Your Honor.
 7   The STIU files are intelligence files.  And we have
 8   a -- we don't have access -- we don't have the
 9   open -- sort of what you would say -- a close
10   relationship -- I think you used "extremely close
11   relationship" -- we won't get into semantics -- we
12   have a close relationship with the NMCD.  But there
13   are files that we have a difficult time getting our
14   hands on through them, and they have a difficult time
15   getting their hands on.
16            I mean, you know, if we're talking about --
17   we'll talk about this later -- but if we're talking
18   about all the SNM files for all the SNM members, from
19   1980 to the present day, 1999 to the present day,
20   that's 600 files.  And many of them are stored with
21   the defendants in their facility or in the central
22   archive.  So, not only do we have a difficult time
23   getting our hands on them, it's a process for NMCD to
24   get their hands on those files.
25            You asked me to be frank with you.  And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 412

```
 1    think NMCD has been very good about getting the

 2    requested information.  So I think with regard to

 3    files, like STIU files, that may contain information

 4    about the defendants or other inmates, I think if we

 5    called on the phone, they would work with us to get

 6    their hands on it.

 7            That being said, I don't think we -- I

 8    think that could overstep some boundaries at some

 9    point in this case.  And as we'll get to later in

10    this motion or others, particularly in this motion, I

11    think that there are proprietary procedures,

12    documents like that that weren't involved in this

13    investigation at all, and have work and proprietary,

14    you know, intelligence materials, things like that, I

15    think goes beyond what the Rules of Criminal

16    Procedure, the Due Process Clause, and we can ask of

17    them.

18            Rule 17 allows the defendant to issue a

19    subpoena.  NMCD can come in and fight that fight and

20    say why they don't want to give up their proprietary

21    documents not used in this case.  But I don't think

22    that the defense can skirt Rule 17 subpoena

23    requirement just by saying that they could ask for it

24    through us.  So I think there needs to be a line

25    drawn there.  And I think that would be a good place
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 412

1   to start.

2          THE COURT:  Well, here's what I'm inclined

3   to do on these -- and I'm not cutting anybody off,

4   but I'm just telling you what I'm thinking of doing

5   on these STIU files.  I'm going to deem them in the

6   possession, custody, control because it seems to me

7   that, given the nature of this case, you can probably

8   pick up the phone and get these files, to the extent

9   that they're available to anyone.  But I think that

10  they probably are available.  So I'm not going to

11  require any Jencks material to be produced before the

12  14 days.

13         And I'll let you argue.  I'm just telling

14  you what I'm thinking here.  But I am going to

15  require early Brady review of these materials by the

16  Government.  So the Government needs to go in and

17  look at these files and do a Brady review.  No Jencks

18  production.  You've got to produce the Brady material

19  promptly, immediately.

20         Mr. Villa, you just got what you wanted.

21  I've replaced out the state people with marshals, so

22  I'll note that for the record.

23         MR. VILLA:  Thank you, Your Honor.

24         THE COURT:  So that's what I'm inclined to

25  do on that.  And then -- you want to say something,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 413

1    Ms. Strickland?

2              MS. STRICKLAND:  Yes, Your Honor.  And I'm

3    moving only under Rule 16 at this point.  And Rule 16

4    does cover impeachment material.  Brady and Jencks

5    aren't the only ways to get impeachment material.

6              But I will say that 14 days before trial is

7    totally insufficient to be ready for trial in a case

8    like this.  And our first setting -- or the setting

9    we still have is in March.  And even then, if we got

10   them now, it would be a stretch to prepare for trial

11   with this number of accused, and with such serious

12   sanctions on the line.

13             My client and many others are looking at

14   the rest of their natural life in prison.  So we need

15   to make sure this case is done correctly and not by

16   surprise attack, which is what 14 days is.  Fourteen

17   days before trial, you're looking at jury panels,

18   you're polishing up with expert witnesses that have

19   flown into town.  You have a lot of things to do

20   besides totally recreate your cross-exams of

21   government witnesses.

22             As far as other outstanding impeachment

23   material, there are things that I have gotten from

24   the state case -- so my case was originally a state

25   prosecution -- that are not statements, that are not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 414

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 415

 1   Jencks material, that I know that the Government has

 2   not produced.  For example, the fact that Mr. Armenta

 3   got an 18-month plea deal in his state case; there is

 4   written documentation as to that.  That has never

 5   been turned over to me.  That should have been turned

 6   over under Rule 16.

 7        There is a DNA analysis in my case where

 8   Mr. Molina -- the victim's -- blood was found on

 9   nobody besides Mr. Armenta, which contradicts his

10   story.  That's information that needs to be given to

11   me under Rule 16.  And DNA evidence is a perfect

12   example of the kind of materials that if you get 14

13   days before trial you are not prepared to try the

14   case two weeks days later.  Because when you get that

15   kind of material, you need to hire experts to

16   potentially put on the stand, but at the minimum help

17   you with the cross-examination of the Government's

18   expert.  And in the DNA case, where the only person

19   who has the victim's DNA on them is the informant, I

20   would assume the Government isn't even going to call

21   the DNA witnesses.

22        So those are the reasons I need to look at

23   the materials in advance to prepare my case-in-chief.

24        THE COURT:  Well, I understand, and I

25   encourage the Government to, you know, disclose them

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 415

1    as soon as it can.  But I'm not going to order them

2    to do it more than they have on Jencks material.

3          Now, if it's Brady material, if it's DNA

4    and those sort of things, and they fall into the

5    Brady category -- I'm talking about just Jencks

6    material you can wait on -- but as far as the other,

7    we'll just have to live with it.  You may get a

8    continuance; it may throw everything into turmoil.  I

9    understand that.  But I'm not going to require the

10   Government to disclose it earlier than what they're

11   willing to disclose it, or as required by the Jencks

12   Act.

13         MR. BECK:  Your Honor, one thing that I

14   should bring up at this point:  With regard to the

15   state case the 15-year plea deal, we don't have that.

16   Everything that we had from the state we've disclosed

17   already in discovery, which brings up a point that we

18   had requested of all of the defendants' reciprocal

19   discovery.  A lot of these materials that were just

20   discussed we haven't been provided.  And so I think

21   the defense -- they're asking us for this specific

22   and additional discovery, just putting on the record

23   that we have asked a number of times, three times

24   already, for reciprocals.

25         THE COURT:  Things like DNA, and those sort

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 416

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 417

1    of things, though, you understand that I'm sort of

2    saying you've got to look at those from a Brady

3    standpoint rather than look at them from a Jencks

4    standpoint?

5            MR. BECK:  We understand that, Your Honor.

6            THE COURT:  Okay.  So those sort of things

7    I think should be produced immediately.

8            Given where I'm ruling or how I'm coming

9    out, anything else you need from the Government that

10   I can order?

11           MS. STRICKLAND:  Well, we had discussed the

12   logbooks and procedures from Southern, from the

13   prison where this occurred.  So the Government's

14   informant in this case gives a long story that

15   involved different people taking different actions

16   throughout the day:  Looking at paperwork, passing

17   paperwork around, handing each other murder weapons,

18   giving instructions out.  And so those are the kind

19   of things that if a CO was following the procedures,

20   would be logged in the book for that day.  So we've

21   asked for those materials as well, which are Rule 16

22   materials.  I'm not asking under Brady and Jencks.

23   And DNA, frankly, is Rule 16 material as well.  It's

24   the results of testing and New Mexico State Police

25   did it -- they're the investigating agency in this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 417

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 418

```
 1   case.
 2            THE COURT:  Well, let's take the DNA,
 3   what's the issue on the DNA?
 4            MR. BECK:  As far as I know, Your Honor,
 5   this specific discovery motion didn't ask for DNA.
 6   We understand that DNA evidence is subject to
 7   disclosure under Rule 16.  And if I'm looking at the
 8   rule --
 9            MS. STRICKLAND:  Well, your Honor, the
10   reason I brought up DNA evidence is that I asked for
11   all impeachment evidence.  And the Government said
12   that they understood their requirement to turn over
13   impeachment evidence.  But I have evidence that
14   impeaches their witness' story only because I was
15   lucky enough to have a state court case.
16            THE COURT:  Let me get Mr. Beck's position
17   on the DNA.
18            MR. BECK:  Sure, Your Honor.  Rule
19   16(a)(1)(F) says that, "Upon a defendant's request,
20   the Government must permit a defendant to inspect,
21   copy the photograph, the results, or reports, or any
22   physical or mental examination, and any scientific
23   test or experiment."  So we have produced the DNA
24   reports.  I think the other specific discovery
25   motions ask for -- I wish I had it.  I have it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 418

```
 1   somewhere in front of me.  But there is a lot of

 2   stuff here.  I think they asked for --

 3           THE COURT:  Well, they're asking for the

 4   hard data behind the report.

 5           MR. BECK:  Thank you, Your Honor.  Yes, I

 6   think they asked for the DNA analysis, notes -- I'm

 7   not a scientist -- electropherograms, and graphs.

 8           THE COURT:  Well, where are you on the -- I

 9   understand Ms. Strickland to be saying she hasn't

10   gotten even the DNA reports.

11           MS. STRICKLAND:  That's correct.  There

12   have been disclosure in some other cases for other

13   counts, not mine.

14           MR. BECK:  As I said, Your Honor,

15   everything that we have gotten from the State, in

16   terms of discovery in this case, we have turned over.

17   The United States will certainly go back and see if

18   the DNA was in there.  And if it wasn't, we will go

19   back to the State and ask for that.  But --

20           THE COURT:  All right.  So if the DNA is in

21   the U.S. Attorney's or the United States' possession,

22   they'll need to turn it over; right?

23           MS. STRICKLAND:  It worries me a little bit

24   just to say they're just turning over what they've

25   gotten.  You know, I need everything that is in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 419

 1    investigating agency's file.  And if I just didn't

 2    know there was DNA, I wouldn't know to ask for it.

 3              THE COURT:  Well, if they didn't get

 4    everything from the State, you may have to go to the

 5    State to get that material.

 6              MS. STRICKLAND:  Well, since the state

 7    agency was the investigating agency in this case, it

 8    is considered in the Government's control.  So I want

 9    not only the DNA evidence, I --

10              THE COURT:  I guess I'm not quite sure

11    that's true.  If you've got some support as to why

12    the State DA's office in Las Cruces should be

13    considered --

14              MS. STRICKLAND:  I'm sorry, I didn't mean

15    that.  I meant the New Mexico State Police who are

16    the investigating agencies in this case.  They are

17    the ones who sent this off to the lab.  So I just

18    want to make sure that I'm getting everything, not

19    just what I happen to know is in their files, that's

20    impeachment evidence, and direct evidence in my case

21    as well.

22              THE COURT:  Well, I guess -- but you're

23    talking about the case in Las Cruces, correct, or the

24    investigation?

25              MS. STRICKLAND:  That's correct.  So I got

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 420

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 421

```
 1    the materials from people involved in that case, but
 2    New Mexico State Police is the investigating agency
 3    in that case; they're the ones who originally created
 4    the DNA, or originally sent the DNA off to the lab.
 5              THE COURT:  Don't you need to deal with the
 6    State Police and the district attorney to get those
 7    materials?
 8              MS. STRICKLAND:  I dealt with my client's
 9    attorney at the state level.
10              THE COURT:  Okay.  But I guess what I'm
11    saying is I don't see any obligation from the United
12    States to go get that material for you.
13              MS. STRICKLAND:  Well, just to be clear,
14    the State Police are an investigating agency in this
15    case.  They are the ones who originally called out to
16    the homicide, to the scene.  I expect people from New
17    Mexico State Police to testify for the Government in
18    this case.
19              THE COURT:  What's your position on that,
20    Mr. Beck?
21              MR. BECK:  Your Honor, the New Mexico State
22    Police did investigate some of these incidents and
23    acts.  Our position is that:  We went out to them; we
24    asked them for their files; they produced it to us;
25    and we reviewed those and produced it in discovery.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 421

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 422

```
 1              I think that the defendants are taking a
 2    lot from a Tenth Circuit opinion, New Mexico
 3    Secretary of State case, a footnote in that opinion
 4    about when files are in the custody, possession, and
 5    control of the United States Government in joint
 6    investigations like this.
 7              As I said earlier, I certainly don't think
 8    that the Tenth Circuit, in a footnote, held that all
 9    of a sudden, when -- I think in this case it's two
10    years later, but a lot of these are 15 years later --
11    the United States prosecutes the case that the FBI
12    has been investigating; we have custody and control
13    and possession over all these state agencies, federal
14    agencies, different agencies' documents.  That
15    certainly goes beyond what the Tenth Circuit held --
16              THE COURT:  Read me the footnote you're
17    referring to.
18              MR. BECK:  I'm not sure I have the case in
19    front of me.  But I can get you the cite in one
20    second, Your Honor.  The case is Smith versus
21    Secretary of New Mexico Department of Corrections.
22    That's at 50 F.3d Reporter; starts at page 801.  The
23    pincite is page 825, Footnote 36.  It's a 1995
24    decision from the Tenth Circuit.  So --
25              THE COURT:  Well, I'll take a look at it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 422

```
 1    I'll issue an order on it.  But for the present time,

 2    I'm not inclined to think that the State Police's

 3    files are in the United States' possession, custody,

 4    or control.  So I think they made a representation

 5    they've turned over everything that they have.  But

 6    if you don't think that they've gotten everything,

 7    you're going to have to go to the State Police.

 8              All right.

 9              MS. STRICKLAND:  Thank you.

10              THE COURT:  Then the other issue was the

11    video?

12              MS. STRICKLAND:  Yes, and the logbooks and

13    procedures that would be within the custody of the

14    Department of Corrections.

15              THE COURT:  What's your position on the

16    logbooks, Mr. Beck?

17              MR. BECK:  Your Honor, so again, this is

18    something that we'll see in all these discovery

19    motions.

20              For the logbooks, in this case this was a

21    2014 incident, if I'm correct.  And the request on

22    page 3 of the motion asked for copies of the logbooks

23    for the six months before and one month after March

24    7, 2014, so a seven-month time period.  And we

25    disclosed the day of the murder, we disclosed the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 423

1    logbooks from that day, because we agreed with

2    Ms. Strickland's position that that's Rule 16

3    material, so we disclosed it.  But the six months

4    before and one month after is just absolutely

5    overbroad.  I mean, we're talking about logbooks from

6    pods that they have 24 hours a day, they log

7    information when they're going out, when they're

8    going in.  I mean, that is a huge undertaking from

9    the New Mexico Corrections Department to get their

10   hands on those books.

11            THE COURT:  How many pods are there?

12            MS. STRICKLAND:  There are three adjoining

13   pods.  But A and B would be our focus.

14            THE COURT:  What is the rationale,

15   Ms. Strickland, for seven months of logbooks as

16   opposed to the day of the incident?

17            MS. STRICKLAND:  Well, the prosecution

18   always kind of wants to give just that event as if it

19   happened in a vacuum.  But Mr. Armenta's second story

20   was that he and the victim in the case, Mr. Molina,

21   had ongoing disputes, and there were other things

22   going on in the pod.  So we want these materials to

23   look at -- well, to review several of the statements

24   that made by Mr. Armenta to see if that's correct or

25   not, and also to potentially develop other motives,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 424

```
 1    there were other issues going on there, and
 2    potentially other suspects who may have been involved
 3    in something.
 4              THE COURT:  What, though, from what was
 5    said in the second story -- what is it that made you
 6    come up with a request of six or seven months?
 7              MS. STRICKLAND:  Well, Mr. Armenta wasn't
 8    as precise as I would have wished in the second
 9    story.  So he just said that there had been ongoing
10    things.  And so that's why I'm asking just for seven
11    months back.  I wish that when he gave the second
12    story, we could have followed up on that, but we
13    can't.
14              MR. BECK:  And, Your Honor, there would be
15    incidents that --
16              THE COURT:  Let me ask Ms. Strickland one
17    more question.  What kind of ongoing things are we
18    talking about?
19              (Mr. Mkhitarian entered the courtroom.)
20              MS. STRICKLAND:  Well, Mr. Armenta is
21    somewhat vague in his descriptions of them.  But he
22    said that he had personal issues with Mr. Molina and
23    that they had had some disputes and contentions
24    before they were together in the pod.
25              THE COURT:  And what's, then, the rationale
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 425

 1   for requesting material after the incident?

 2           MS. STRICKLAND:  I don't know if there were

 3   any -- it's sort of unclear to me exactly what

 4   happened to everybody afterwards.  But I want to see

 5   if there was any other suspicious behavior by

 6   Mr. Armenta, or any others, as far as concealing

 7   evidence, things like that.  There were shanks found.

 8   The murder weapon in this case is a shank.  There

 9   were shanks found later by different people

10   investigating things.  So I want to find out what was

11   going on with that.

12           THE COURT:  Here's what I'm inclined to do:

13   I think we can look a little bit more briefly at

14   this.  Three weeks before and three days after the

15   incident.

16           MR. BECK:  And Your Honor --

17           THE COURT:  And I deny that without

18   prejudice.  If it shows up something, or in the

19   course of the case, you think there is greater

20   justification -- but it seems to me that we probably

21   can get a pretty good feel with that.  If they're

22   going to hide something, they're going to hide it

23   pretty quickly.  And if there is actually something

24   that occurred, I think something within the three

25   weeks before might give you some indication.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 426

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 427

 1          MS. STRICKLAND:  And, Your Honor, we had
 2     also asked --
 3          THE COURT:  Hold on just a second.
 4     Somebody dropped off the line.  Are you there, Mr.
 5     Mitchell?  Mr. Mitchell?  All right.  We must have
 6     lost Mr. Mitchell.
 7          MS. SIRIGNANO:  Your Honor, it might be Mr.
 8     Adams.  He had another plea to do.
 9          THE COURT:  Mr. Adams, are you there?  Has
10     everybody got their phone on mute?  Unmute and give
11     me who is on the phone.
12          MR. MITCHELL:  Gary Mitchell.
13          THE COURT:  Who is on the phone?
14          MR. MITCHELL:  Gary Mitchell for Jerry
15     Armenta.
16          THE COURT:  Oh, you're still on the phone,
17     Mr. Mitchell?
18          MR. MITCHELL:  I am, Your Honor.
19          THE COURT:  So Mr. Adams must have dropped
20     off.
21          All right.  Ms. Strickland?
22          MS. STRICKLAND:  We requested the
23     procedures for monitoring the inmates.  So I would
24     ask for during that relevant time period, three weeks
25     and three days so we can see exactly what they would



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    note and what they would not note; compare that to

2    the logbooks.

3            THE COURT:  Mr. Beck?

4            MR. BECK:  Yeah, going back to the last

5    ruling that Your Honor is inclined to make, I think

6    that's fair.  In the response brief, we've cited to

7    Hykes a number of times, in which you found that the

8    defendant demonstrated specific facts or they

9    requested information.  And I think Ms. Strickland

10   has articulated that.  So I think the United States

11   is okay with three weeks before and three days after

12   without prejudice.

13           Going to the procedures, as I said, Your

14   Honor, I think this is certainly the baseline line

15   for the Court to draw in terms of what documents can

16   be considered in the United States' possession,

17   custody, and control.

18           As I said earlier, Rule 17 provides the

19   defendants the ability to subpoena the New Mexico

20   Corrections Department.  If they're going to ask for

21   procedures, regulations, SOPs, whatever they want to

22   call them, the United States Government isn't in a

23   position to fight that fight for the New Mexico

24   Corrections Department why they might not want to

25   turn over those proprietary documents.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 428

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 429

1          THE COURT:  Obviously, if you call and they

2    won't give it to you, you don't have to do it.  But I

3    do think that it's probably worth allowing them to

4    peek at the procedures.  So I'll order its

5    production, subject to -- if you tell me that they're

6    not going to allow it, then Ms. Strickland will have

7    to accept that.

8          MR. BECK:  And, Your Honor, I think in

9    addition to that, I don't think it's material to

10   which they're entitled under Rule 16, or under the

11   due process clause.  I understand that Rule 16 does

12   not limit the information materials to --

13         THE COURT:  I guess I see it as just sort

14   of explanatory of what you're giving them.  If you're

15   giving them just a little bit of the logbook, they

16   need to know how that logbook is put together.  So

17   it's a little bit just standing alone, might have an

18   argument.  But I think, to try to figure out how

19   these documents were put together, I think it's a

20   little bit part and parcel of the logbooks

21   themselves.  So that would be my rationale for that.

22         MR. BECK:  So I guess I'd ask Your Honor to

23   then clarify exactly what you're ordering us to ask

24   for.

25         THE COURT:  Only the -- whatever document,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 429

 1   whether it's a guideline, policy, or whatever, that
 2   tells them what procedures they used to actually make
 3   the notations in the logbooks.
 4              MR. BECK:  Okay.  I understand, Your Honor.
 5              THE COURT:  All right.  What else on your
 6   motion?
 7              MS. STRICKLAND:  Your Honor, the last thing
 8   I have on the motion was the request for the master
 9   roster.  And I saw that the Government in another
10   response said that that's not what New Mexico
11   Department of Corrections calls what I'm asking for.
12   So I -- the Government had told me that they would
13   speak with the Department of Corrections about what
14   I'm actually looking for, which is a book, or a
15   memorandum about security threats against inmates.
16   And that would be based on, again, that Mr. Armenta
17   originally said that he and Mr. Molina had an ongoing
18   dispute and that was why this homicide occurred.  But
19   they said they were going to check and see if that
20   existed.  So I don't know if they have or not.
21              THE COURT:  Well, I think on this I'm not
22   ordering the production of it.  But what I'd like, I
23   think, is for you to look and see if there is
24   anything that gives any sort of indication that they
25   were having an ongoing dispute, and then I think that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 430

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 431

1    should be produced.

2         If it doesn't exist, tell Ms. Strickland

3    that you did the review and could not find any

4    support in whatever this master roster is, and

5    indicate that it didn't produce any sort of

6    information that's relevant.

7         MR. BECK:  I understand, Your Honor.  And I

8    hope we're going to get this transcript back so I

9    understand what exactly we're --

10        THE COURT:  Well, I'm going to try to put

11   an order out.  I almost got the one from the first

12   hearing.  And I'll try to get one out on this as

13   well.

14        Anything else on your motion,

15   Ms. Strickland?

16        MS. STRICKLAND:  Your Honor, I think --

17   just as to STIU files, and what is the Court's order

18   on Mr. Armenta's STIU file?

19        THE COURT:  Did I understand you were going

20   to produce Mr. Armenta's?

21        MR. BECK:  Mr. Armenta's STIU file?  I

22   think earlier the Court's ruling on that --

23        THE COURT:  Yeah, it was just do a Brady

24   review, not the entire file.

25        MR. BECK:  That's what I understood the



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 820-6349                                          FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Court's ruling to be.

 2           THE COURT:  Yeah, just do a Brady review,

 3    be prepared to produce any Jencks material out of it.

 4    But I'm not sure the entire file ought to be

 5    produced.

 6           MS. STRICKLAND:  Okay.  I mean, there may

 7    be materials in there that are subject to disclosure

 8    under Rule 16.  If the Court would just order they

 9    review it for that as well.

10           MR. BECK:  We will, Your Honor.  We

11    understand.

12           THE COURT:  Rule 16, Brady.

13           MS. STRICKLAND:  I think that covered

14    everything that was in my motion.

15           THE COURT:  Covered everything, Ms.

16    Strickland?

17           Anything else related to that motion that

18    you need any clarification or ruling on, Mr. Beck?

19           MR. BECK:  Not from the Government, Your

20    Honor.

21           THE COURT:  Any other defendant have any

22    other issues on those issues?

23           Are we ready to go to the large motion that

24    has the 17 issues?

25           All right.  Well, let's take that up.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 432

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 433

```
 1              MS. STRICKLAND:  Thank you for taking my

 2   motion first.

 3              THE COURT:  Thank you, Ms. Strickland.

 4              MS. STRICKLAND:  All right.  So we'll take

 5   up the motion for specific discovery.  Who is going

 6   to take the lead on this?

 7              MR. CASTLE:  I will, Your Honor.

 8              MS. ARMIJO:  Your Honor --

 9              THE COURT:  Yes.

10              MS. ARMIJO:  May we be heard on the STIU

11   issue?

12              THE COURT:  Certainly.

13              MS. ARMIJO:  Your Honor, we would object.

14   This is an open court proceeding, and part of the

15   reason that they're here is not only for security

16   purposes, but also they know these defendants quite

17   well.  And at previous proceedings they have noted

18   things, ongoing communications between some of these

19   defendants, ongoing what they would perceive as even

20   threats, and things that maybe the U.S. Marshals, who

21   don't know the relationships between these

22   defendants.  And so they're here for a variety of

23   reasons.  And so we would object to this courtroom

24   being closed to them until there is a specific

25   showing that there is an evidentiary issue that would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 433

1   fall under the rule of exclusion.  And if they

2   have -- like if they said -- we were just provided

3   today with a PowerPoint.  If they have reason to

4   believe that one of the STIU gentlemen that are here

5   that authored this, and they're saying something

6   against it, that's different.  But just to have --

7   generically exclude STIU from this courtroom, we are

8   opposed.

9           THE COURT:  Well, let's brief it up.  And

10  let's give it some thought next time.  I've already

11  made the change, and the US Marshal is sitting in the

12  back.  He's cooperated with me and he thinks he can

13  handle it.  So I think from a security standpoint, we

14  can handle it.  If you need somebody in here

15  specifically, you can tell me, and we can take it on

16  a case-by-case basis.  But at least for today, let's

17  proceed as we got the courtroom configured now.

18          All right.  Counsel?

19          MR. CASTLE:  Yes, Your Honor.  Jim Castle

20  appearing on behalf of Mr. Garcia.  But I'm also

21  taking the lead for the defendants that joined in

22  that motion.

23          THE COURT:  All right.  Mr. Castle?

24          MR. CASTLE:  Initially, I would indicate

25  that we are adopting the arguments of Ms. Strickland

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 434

```
 1    that were made previously.  And I take it that the
 2    Court assumes that we're all adopting arguments
 3    unless we object to them; am I --
 4              THE COURT:  That will be fine.  We can
 5    operate with that rule.
 6              MR. CASTLE:  Okay.  Well, your Honor, I
 7    don't know if the Court reviewed --
 8              THE COURT:  Let me see if I need to make a
 9    record.  We've got counsel up here sitting with
10    Mr. Armenta.  Mr. Mkhitarian --
11              MR. MKHITARIAN:  Yes, Your Honor.
12              THE COURT:  -- I appreciate you coming
13    over.
14              So, Mr. Mitchell, I have Jack Mkhitarian is
15    in the jury box with Mr. Armenta.  So he'll be
16    sitting there throughout the proceedings.
17              Thank you.  I appreciate you coming over on
18    such sort notice.
19              MR. MKHITARIAN:  Thank you, Your Honor.
20              THE COURT:  All right.  Mr. Castle?
21              MR. CASTLE:  Yes, Your Honor.  This
22    morning -- and I don't know if the Court got to take
23    a look at it, but there was a motion filed that was
24    actually a memorandum, Docket No. 719, that was filed
25    by Mr. Potolsky on behalf of the Defendant Mario
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Rodriguez.

2            THE COURT:  Did I get that, Ms. Wild?

3            THE CLERK:  Yes, sir, you did.

4            THE COURT:  All right.  What's the docket

5   number on that?

6            MR. CASTLE:  Number 719.

7            THE COURT:  Okay.  Yes, I did read that

8   this morning.

9            MR. CASTLE:  And we're adopting those

10  arguments.

11           Your Honor, the way I review the law

12  regarding disclosure might be something that would

13  help the Court.  The way I look at it is really three

14  layers of disclosure.  At its base we have what the

15  due process clause requires, either in the Brady,

16  Giglio, Kyles progeny.  The next layer, which is

17  broader, which is Rule 16.  And then, finally, there

18  is a third layer, which we haven't talked about

19  today, which is -- but I think the Court has

20  exercised -- which is disclosure to the Court in its

21  supervisory power can order, because it's appropriate

22  for the particular case.  And the reason I bring up

23  Document 719 is because it discussed better than we

24  did in our motion this concept of the Court having

25  authority beyond 16 and Brady.  And the reason I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 436

```
 1    start with that is because, if the Court in its
 2    discretion orders disclosure in a particular area
 3    today, then we don't even need to address the Rule 16
 4    and Brady issues, because it's a broader concept.
 5    And this is not -- the Court doesn't need to exercise
 6    its discretion in an ordinary criminal case, because
 7    Rule 16, Brady pretty much protect everybody in your
 8    ordinary criminal case.
 9           But this is not the ordinary criminal case.
10    This is a case that -- it probably is the largest
11    criminal prosecution in the history of this district,
12    and probably one of the largest criminal prosecutions
13    in this country at this time.  And the reason that's
14    important is because, when we look at a prosecutor in
15    a normal criminal case, it's fairly easy for them to
16    identify what is Brady material, what is Giglio
17    material, what is Rule 16 material.
18           But in a case of this nature, the
19    prosecutor -- if we leave them to literally just
20    those two layers, they're going to have to figure out
21    the potential defenses of 30 defendants -- well, I
22    think it's 26 at this point -- in this case, and
23    then, you know, a score more in the related
24    indictment, 1613 indictment.  They're going to have
25    to analyze literally a whole myriad of avenues that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    they, frankly, have not been that good at analyzing

2    to date.  The concept, frankly, that we're sitting

3    here 10 months into the indictment, and we're still

4    discussing areas that they're conceding they need to

5    provide to us, shows that they're not particularly

6    good so far at their obligations.  And that might be

7    because of the size of this indictment, and the fact

8    that there is other investigations going on, et

9    cetera.

10           But I believe the reason this is important

11   is because the idea that they don't have access to

12   materials in the New Mexico Department of Corrections

13   is perhaps because the New Mexico Department of

14   Corrections gives what it wishes and decides not to

15   give what it wishes.  Yet they have invoked the

16   jurisdiction of this federal court and the U.S.

17   Attorney's Office to attempt to charge -- well, they

18   have charged 30 defendants over a 15-year period in

19   this indictment.

20           So I start with that kind of general

21   umbrella that I think that the Court should, in this

22   extraordinary situation, order more discovery than it

23   would otherwise.

24           I'd like to address, if I could, the

25   two-week concept of the Jencks materials.  You know,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 820-6349                                               FAX (505) 843-9492
                                                                     1-800-669-9492
                                                          e-mail: info@litsupport.com



DNM 438

```
 1    I have here -- it's a piece of work product -- but
 2    just to give the Court kind of a demonstrative
 3    idea -- this document reflects entries of
 4    individuals, who in the discovery that we've received
 5    to date, are identified -- well, not identified, but
 6    they are confidential sources without a number,
 7    without any kind of indication who they are.  They're
 8    just -- here's a piece of information.  And I
 9    referenced this in the status report that I filed
10    with the Court.
11             If even 5 percent of these 330 people --
12    and let's say there are duplicates; let's say there
13    is only 250 -- if only 5 percent of those people are
14    disclosed two weeks before trial, we're just not
15    going to be in a position to do what we need to do.
16    For example, we might want to interview those
17    individuals.  Their counsel needs to be contacted.
18    We need to make arrangements at a facility.  Who
19    knows where that facility might be.  It might be
20    somewhere else in the United States.  We have to go
21    through all kinds of hoops to arrange for that.  We
22    might want to subpoena, as the prosecutor has
23    suggested, under Rule 17, materials about that
24    person's background that the Government hasn't
25    collected under their Giglio obligations, but the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 439

1  defense finds, and can urge this Court and show this

2  Court would be materials that would be useful in

3  impeachment.  That just simply can't be done in two

4  weeks.  Certainly not by 26 sets of lawyers being

5  brought in here.

6         The idea that we would subpoena New Mexico

7  Department of Corrections for any number of these new

8  witnesses, and actually follow through with all those

9  subpoenas in two weeks, I don't think it can occur.

10         I know that on behalf of Mr. Garcia, I

11  would probably, in advance of that two weeks, draft

12  up the same set of subpoenas for every single inmate

13  witness that was disclosed two weeks prior and file

14  them on the day.  And are we going to actually get

15  through them all in the two weeks?  I just don't

16  think that's realistic.  I understand there is

17  concern about security.  There is understandable

18  concerns about safety.  But there is nothing magical

19  about two weeks versus a month, versus two months.

20         And so, if I could urge the Court to think

21  a little bit differently about the Jencks material;

22  that by its nature it's actually Brady material.  So

23  let's say it's an informant we'll call Informant A,

24  and they disclose his identity two weeks before

25  trial.  His identity alone is Brady material, because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 440

 1    along with all these informants comes a criminal

 2    history, comes a criminal background, in numerous

 3    instances of dishonesty.  So just their disclosure

 4    alone encompasses Brady and Giglio material.  So to

 5    wait, really is -- causes the defense a disadvantage,

 6    and without a real, an actual concomitant value in

 7    protecting the witness.

 8            For a lot of witnesses -- there is another

 9    spreadsheet we have, which are people have been

10    already disclosed, their identity has been disclosed,

11    some of whom are in this courtroom today.  And I

12    won't mention them by name, because I don't think

13    that's necessary for this argument.  But for those

14    people, what's the reason at all behind delay?  The

15    prosecution hasn't relied upon Jencks with regards to

16    those people.  I don't know why.  Because if they

17    haven't pled, they're just as much of a situation as

18    the people that are on this list.  But they have

19    disclosed them.  They've waived Jencks.  And so what

20    is the reason for those individuals -- some of which

21    we mention in our motion, and I hope the Court

22    understands why I'm not trying to list them by name

23    here -- but for those individuals, what is the

24    purpose?  What's the Government purpose in delaying

25    full disclosure of all materials concerning them that

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 820-6349                                                   FAX (505) 843-9492
                                                                         1-800-669-9492
                                                             e-mail: info@litsupport.com



 1   could be considered required either under Rule 16 or

 2   under the Due Process Clause?  There just absolutely

 3   isn't any justification, other than to gain a

 4   litigation advantage.

 5          So with respect to individuals that have

 6   been disclosed, who have already -- or who already

 7   pled, that it's public knowledge that they're going

 8   to be cooperating, there doesn't seem to be any

 9   reason to allow any delay in that regard.

10          With respect -- and I'm just going to try

11   to hit over some general areas that prior counsel had

12   already addressed.  But the idea that the

13   investigating agencies here are not under the

14   umbrella of the prosecution, I think, is probably not

15   proper.  I've read all through the Court's cases,

16   which that's what -- this Court has given us all

17   quite a big road map as to how the Court feels about

18   these issues.  But one of the areas the Court hasn't,

19   well, really addressed is -- it's define the line

20   between what the Government has to produce from other

21   agencies.  And that line is whether the governmental

22   agency is closely aligned with the prosecution.

23   Well, what does that mean?  And I think it's actually

24   fact based.  How much have they been working

25   together?  Are they part of a joint task force?  Are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 442

1    they -- and they worked hand and glove together in

2    the development of the evidence, things of that

3    nature.  And I think under any test, unless we're to

4    say the line stops at the end of the U.S. Attorney's

5    Office and the US Government, if there is a line,

6    it's somewhere past that, this closely aligned line;

7    then that line has been crossed here.

8           The Court has seen in the documents that

9    we've tendered to the Court as appendices to our

10   motions that there have been a series of

11   investigations run by the FBI and supervised by the

12   United States Attorney's Office, one after the other,

13   from the entire time period covered by the counts

14   within this indictment.  And it actually precedes the

15   counts in the indictment two years prior to 2001.

16          There has been a joint task force, which is

17   one conducted by the Southern New Mexico Gang Task

18   Force, which is run by the Federal Bureau of

19   Investigation.  It's one of the national task forces

20   for gangs that is located throughout the country.

21   They are the supervising entity that gathers this

22   information.

23          I don't know if the Court may or may not

24   have noted that Secretary Marcantel has been

25   presented at counsel table for the prosecution every

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 443

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 444

1   court date but today.  At least -- I haven't been at

2   every court date, but other counsel has informed me

3   that he's been present at least many, many of the

4   occasions.  I know that he was present at the arrest

5   of numerous defendants in this case, defendants that

6   were living in the community, he was present for --

7   along with FBI agents.

8          Numerous materials, going back to 2001 --

9   and I'm focused more on 2001, because my client's

10  counts relate to that -- but in 2001, there are

11  documents within the discovery that indicate that

12  witnesses were being interviewed by members of the

13  task force at the time of the murder.

14         And I would even indicate that, for

15  example, the most recent application for search

16  warrant that we saw, in 16-MR-628, it indicated -- in

17  its portion concerning the scope of the

18  investigation, it indicated in March 2015, the FBI,

19  in conjunction with the New Mexico Corrections

20  Department and the Bernalillo County Sheriff's Office

21  launched an investigation into the criminal

22  activities of the SNM criminal enterprise.  These are

23  not separate entities that are working separate

24  investigations.  They're working together.

25         Now, initially, perhaps on a prison murder,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 444

 1    it's taken initially by the New Mexico Corrections

 2    Department, but then it goes to the FBI.

 3            And the facts of Counts 1 and 2, which is

 4    really what we're focusing on with this motion, what

 5    happened in that case is New Mexico Corrections

 6    Department investigated, and so did the State.  They

 7    turned it over to the state prosecutor, and the state

 8    prosecutor said there was insufficient evidence to

 9    prosecute any of the defendants that are charged in

10    this case.  It was then reviewed -- but then that was

11    handed over to the federal government later on, and

12    it was revived in 2007; again, in 2013, I believe;

13    again in 2014, and eventually resulting in this case

14    number that arose in 2015.

15            If the Court were to review discovery,

16    which I don't think it wishes to, it would find that

17    the vast majority of the interviews of informants

18    were conducted through the cooperation of the

19    corrections department getting the inmates to the FBI

20    offices or to interview rooms to conduct interviews.

21    They're not separate entities for this purpose.

22            So I would suggest that if there is a case

23    where we look to see whether the New Mexico

24    Corrections Department or these local law enforcement

25    agencies are closely aligned with the prosecution,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 445

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 446

1    this is the case.  Now, we can do it the hard way by

2    doing subpoenas and -- you know, I'm not sure -- I've

3    reviewed the Court's Vigil case, and I'm not sure the

4    standards for obtaining materials from a subpoena are

5    going to be significantly different than what the

6    standards are that the Court's applying here today.

7    In fact, it might be more liberal for a defendant in

8    my review of the Court's decisions.  But that's

9    probably not a good use of judicial resources.  We're

10   going to have 26 or so lawyers doing subpoenas.  And

11   the Court will be tied up in litigation for quite

12   some time on these matters.

13           Finally, on that area, I think that I would

14   note that one of the arguments against the US

15   Government reviewing the materials and turning them

16   over to the defense is that New Mexico Department of

17   Corrections wouldn't be in a position to object.

18   Obviously, they can be notified to object at any of

19   these proceedings, if it deals with materials that

20   they rely upon.

21           If I could have a moment, Your Honor?

22           THE COURT:  Certainly.

23           MR. CASTLE:  If I could show the Court an

24   exhibit on the Elmo.  It's marked as Exhibit H, which

25   I think discussed the interrelationship of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 446

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 447

1    federal and state governments here, in regards to

2    these investigations.  And what this is is a

3    publication put out by the FBI that addresses and

4    actually establishes gang task forces throughout the

5    country.  And if we turn to page 2 of this document,

6    we'll see that the FBI established here in New Mexico

7    two task forces.  One, the Albuquerque Safe Streets

8    Task Force, and the second one being the Southern New

9    Mexico Safe Street Violent Gang Task Force.  These

10   are the task forces that -- I'm sorry, I should not

11   have changed the page.  These are the task forces

12   which are involved in portions of the investigation

13   in this case.

14            So I think when the Court issues its order,

15   one of the first fault lines or areas that I think

16   the Court needs to address is whether, in fact, these

17   agencies are closely aligned with the United States

18   Government in this case.

19            The second issue is timing.  And I know the

20   Court has spent a lot of time in previous rulings in

21   previous cases dealing with timing issues.  And I

22   bring the Court's attention to its ruling in the

23   Padilla case in 2010, in which -- that the Court

24   wrote the following:  "The Court believes that to

25   adequately investigate information which may be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 447

1  valuable for impeachment purposes, the defendants'

2  attorneys and investigators should have sufficient

3  time to conduct an investigation, attempt to

4  interview the witnesses and request necessary

5  information which the United States may not have in

6  its possession from the proper sources."

7         Now, the problem here -- and I think I

8  alluded to it earlier -- but I'm somewhat unclear,

9  when the Court said, with regard to Jencks material,

10  you don't need to do it until two weeks, but with

11  regard to Giglio and Brady material, you have to do

12  it as soon as, you know, is reasonable under the

13  circumstances.  And the problem with that is, let's

14  say there is an informant that's unidentified, and

15  Jencks would allow them not to identify them, but

16  would Brady and Giglio require the production of

17  their impeachment information, which is going to

18  disclose their identity anyway?  So I'm unclear what

19  the Court meant by that.  But if the Court really

20  meant with regards to Jencks witnesses that are going

21  to be disclosed late, that the Government doesn't

22  need to turn over Brady and Giglio concerning those

23  witnesses, that presents the problem of timing,

24  because of the follow-up investigation that we

25  need -- we all need to conduct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 448

```
 1              Now, I don't know if the Court -- how the
 2    Court wants to do this.  We had specific requests
 3    that we could go through.
 4              THE COURT:  Well, I was thinking -- until
 5    Ms. Strickland wanted to go first, I was going to
 6    allow you to make sort of an opening -- sort of
 7    remarks, which I think you've now done.  Maybe I
 8    ought to allow the Government to make some opening
 9    remarks response to yours, and then we take these one
10    at a time, these specific requests.
11              MR. CASTLE:  In that regard then, Your
12    Honor, I'd like to finish then some opening remarks
13    with regards to this concept of the Sudikoff kind of
14    method of going about things, versus the other method
15    which this Court has adopted in the past.  And I know
16    the last Court date the Court indicated that it
17    wouldn't prevent us from arguing or urging this Court
18    to consider using a different standard.  And I'd like
19    that opportunity now.
20              THE COURT:  Okay.
21              MR. CASTLE:  I believe Co-Defendant Troup
22    filed a brief, which I believe addresses this in more
23    detail than we did.  But the Brady materiality
24    standard is not useful in this context.  In Kyles
25    versus Whitley, they talk about this concept that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 449

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 450

```
 1    there is cumulative Brady.  So there are items that
 2    you stack.  I compare them to straws on the camel's
 3    back, okay.  And so, the idea of cumulative Brady is
 4    when the straws get so weighty, that's when you've
 5    reached Brady.  The problem with that is the straws
 6    that are on this camel's back aren't known yet by
 7    Your Honor, and they're not known by the Government.
 8    Because some of the straws that are on the back are
 9    straws that -- pieces of evidence that we have
10    investigated and learned about, and we present during
11    a trial.
12            And so, when a court in an appellate
13    context looks at Brady, it's able to make a
14    materiality determination based upon all these pieces
15    of evidence, and look at the one that was missing, or
16    the five that were missing, and say, yes, you know, I
17    believe that that would have -- there is a reasonable
18    probability that that would have made a difference,
19    given the whole context of where we're going here.
20    But the prosecution can't even know that.  They don't
21    even know what our defense is.  Is our defense to
22    attack the credibility of a particular informant?  Or
23    is it to embrace that informant's story?
24            For example, in Counts 1 and 2, there are
25    people that are in discovery that say somebody else
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 450

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 451

 1    committed the murders, and ordered the murder, that

 2    aren't my client and the defendants that are here.

 3    That particular person might be embraced, versus

 4    another one that might be contested.

 5            And so we're encouraging the Court use a

 6    different standard.  And I believe the possible

 7    exculpatory standard taken by Judge Pregerson -- I

 8    think that's the proper pronunciation -- in the

 9    Sudikoff case, works so that a prosecutor doesn't

10    have to guess what the effect of that piece of

11    evidence is going to be at a trial that hasn't

12    occurred in the context of a defense that they

13    haven't seen.  It allows a prosecutor a much cleaner

14    line, which is to look at particular evidence and

15    say, is it possibly exculpatory?  Is there a chance

16    that this is going to be something that would be of

17    value to the defense?  Then you provide it.

18            Now, I'd encourage the Court to read -- it

19    could be accessed online -- I apologize, I didn't

20    provide it to the Court prior to today -- but there

21    was an oral argument between the United States

22    Supreme Court in the case of Smith vs. Cain that was

23    decided in 2012.  And during that oral argument, it

24    was interesting because there was discussion about

25    whether New Orleans -- the New Orleans prosecutor had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 451

```
 1    an obligation to disclose material.  And the argument

 2    quickly devolved into an argument of, well, this

 3    wouldn't have made a difference at trial using the

 4    last prong of Brady, and the justices, almost every

 5    one, including Justice Scalia, Justice Ginsburg,

 6    numerous justices, all were saying to the prosecutor,

 7    Well, even if you don't get to materiality, don't you

 8    agree you had to disclose this?  And the reason I

 9    bring this up is because I believe the U.S. Supreme

10    Court understands that there is a difference between

11    what needs to be disclosed under the Due Process

12    Clause, and what will result in a reversal under the

13    Due Process Clause.

14         I know the Court has done -- in reading the

15    Hykes decision, the Court has reviewed a number of

16    criticisms of disclosure practices throughout the

17    United States.  And I believe that we're seeing a

18    change in the analysis.  And, frankly, in my reading

19    of this Court's decisions, Hykes seems to be a little

20    bit of a sea change in Your Honor's view of

21    materials.  And I encourage the Court to go along

22    that direction.  Because too much of the

23    jurisprudence in this country is about Brady

24    violations, too much of it.

25         And so here -- and maybe I'm wrong -- I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 452

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 453

1   heard that they have essentially an open file policy,

2   that anything they're getting from -- anything from

3   the State they're giving to us, whether it's from the

4   corrections department.  If that's the case, then I

5   applaud that.  I'm not sure that's actually accurate

6   from my review of discovery.  In fact, I know that

7   portions of the discovery is blacked out.  And

8   they've chosen not to give that portion.  So to say,

9   yeah, we gave you a page, but we blacked out

10  information that we don't want you to have, I think

11  is the same as withholding information on certain

12  pages.

13          But I think that's where the Supreme Court

14  is going.  And I believe it's a lot easier for a

15  trial court to -- and actually, the prosecutors -- to

16  manage their cases, if there is a bright line concept

17  that is easy to apply, rather than to sit there and

18  guess how this piece of evidence, in conjunction with

19  any other pieces of evidence that they're going to

20  withhold, might affect a case that they haven't

21  conducted.

22          I know that counsel for Mr. Troup actually

23  briefed this more than we did.  And so I don't know

24  if the Court -- if they wish to add to my arguments,

25  but that we would encourage the Court to apply a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 453

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 454

```
 1    different standard.
 2            THE COURT:  All right.  Let's do this:
 3    We've been going for a while.  Why don't we go ahead
 4    and take our lunch break.  I think some folks need to
 5    use the restroom.  So this will be our lunch break.
 6    The marshals tell me it takes about an hour and a
 7    half, so I guess we should shoot for being back
 8    here -- when do you want everybody to be back,
 9    everybody in?  So 1:45 everybody needs to try to be
10    back here.  That's probably ambitious, but let's give
11    it a shot.
12            And then, if other counsel want to be
13    involved in making an opening statement, then I'll
14    certainly let that the occur, and then I'll let the
15    United States make an opening statement.
16            All right.  We'll be in recess till 1:45.
17            (The lunch recess was held.)
18            THE COURT:  All right.  Mr. Castle, did you
19    have anything else you wanted to say before --
20            MR. CASTLE:  No, Your Honor, not as far as
21    a general statement.
22            THE COURT:  All right.  Did any of the
23    other defendants want to speak on this issue?  Mr.
24    Burke?  Ms. Harbour-Valdez?  Anything you want to say
25    additionally on it?  Mr. Burke?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 454

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 455

```
 1              MR. BURKE:  Your Honor, I take it it would

 2     be your preference that I address the motion

 3     regarding Count 3, because it is similar, at this

 4     time?

 5              THE COURT:  No, I just -- Mr. Castle had

 6     mentioned your name as somebody who had written one

 7     of the briefs, said it better.  You might want to

 8     comment.  If you don't have anything to say, then

 9     we'll --

10              MR. BURKE:  I didn't say it better, Your

11     Honor.  I want to address --

12              THE COURT:  I wasn't making a ruling.  I

13     was just pointing out what was said about you.

14              MR. BURKE:  If it's all right with the

15     Court, I'll just wait to make my comments about the

16     follow-up motion on Count 3.  Thank you, Your Honor.

17              THE COURT:  All right.  One thing I might

18     say in response to Mr. Castle's remarks, I'm not

19     sure -- you know, I'm going to take a relook at all

20     this -- but I'm not sure that Hykes -- I would

21     characterize myself -- and that's always a difficult

22     thing to do -- as really a sea change in the way I've

23     done things.  I think Hykes is a little bit of a

24     reaction to Kozinski's opinion, or article.  It's a

25     reaction to what Pregerson has done in the central
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 455

```
 1    district.  So I staked out my position.  I think it
 2    was probably good that it was done in another case,
 3    without all the pressure of this.  I guess, probably,
 4    I'm not inclined to reconsider it.  It seems to me
 5    those guys have a particular view of Brady violations
 6    that I don't quite share.  And they're throwing out a
 7    lot of law to get there, is sort of my thoughts on
 8    that.
 9              And so I'm going to take a fresh look at
10    it.  You have my word on that.  But that was some
11    work I did over the summer, so it's fairly fresh on
12    my mind.  So I'm not likely to reconsider it.
13              But at the same time, I think what you see
14    is, in the other opinions, you know, I take a fairly
15    liberal view of Rule 16, take a fairly liberal view
16    of Brady, fairly liberal view of Jencks material,
17    both in my in camera reviews and working with the
18    U.S. Attorney's Office here.  So if that's of
19    guidance to anybody, that's the way I see myself.
20    But, of course, everybody gets to have their own
21    opinion.
22              All right.  Mr. Beck, are you going to make
23    sort of an opening statement before we jump into
24    these 17 categories?
25              MR. BECK:  Sure, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 456

```
 1              Given the Court's recent comments, I think
 2    we can short-circuit a lot of this, and get to the
 3    heart of it.
 4              I think there were some
 5    mischaracterizations.  A lot of that opening
 6    statement was geared towards, I think, what was
 7    classified as us saying that we're not working with
 8    STIU, NMCD, or the FBI.  And I think in our earlier
 9    discussion, Judge, I told you that we are, and that
10    often when we call, they hand things over.  I have
11    concern that sometimes this may not happen.  But I
12    wanted to make clear for everyone that this is a
13    joint investigation.  We're not contesting that at
14    all.
15              I think Mr. Castle was pointing the Court
16    to its decision in Hykes.  I will refer the Court to
17    Footnote 12 at page 19 to 20.  I think that's where
18    the Court talks about the United States' obligation,
19    at least as far as it sees it, in looking through
20    files.  So it says, The Court consistently stated
21    that it cannot require the United States to get
22    documents from third parties or to seek documents
23    that refuse access to the United States.  Here,
24    however, the United States has such access to -- in
25    that case the BCSO's personnel files -- even if the
```




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 457

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 458

```
 1    BCSO still has custody or possession of them.

 2              And in a string cite, Your Honor cites to

 3    United States against Brooks, 966 F.2d Reporter,

 4    which begins on page 1500, and the pincite is 1503,

 5    from the D.C. Circuit in 1992.  And Your Honor's

 6    citation to that says, Stating that a prosecutor may

 7    have a duty to search files maintained by other,

 8    quote, "governmental agencies closely aligned with

 9    the prosecution," unquote, when there is, quote,

10    "some reasonable prospects or notice of finding

11    exculpatory evidence," unquote.  You went on to say,

12    "The Court wants to ensure that the United States is

13    the one determining that no Brady or Giglio material

14    exists, rather than the BCSO."  And I think the

15    United States understood that when we were working

16    through this motion with counsel to try to see if we

17    could come to agreements on that.  So I think that

18    was the first point.  And I just want to make clear

19    that we are working with NMCD, the STIU, and the FBI

20    here.

21              Also, I think Mr. Castle said that

22    Mr. Marcantel had been at counsel table.  And I have

23    not been here for every hearing.  The ones that I

24    have been, he has not been here.  But my co-counsel,

25    who have been here for every hearing, say that he has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 458

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 459

```
 1    never sat at counsel table, to the extent he ever has
 2    been here.
 3            I think the second point was the two-week
 4    disclosure for Jencks materials.  We have been
 5    working to try to come together for a scheduling
 6    order that would cover at least Brady and Jencks
 7    materials.  But that also has not come before the
 8    Court and hasn't come through.  So we have tried to
 9    work on that.
10            The third point was just what the Court got
11    at.  I think the Court's decision in Hykes -- and
12    this is probably where I'll end this opening
13    statement -- I think it does take somewhat of a
14    different view than the Court's decision in Padilla.
15    The Court's decision in Padilla just -- and I think
16    properly said that the Tenth Circuit has refused to
17    follow Sudikoff's mentality on Brady and Giglio.
18            In Hykes, I think the Court takes a little
19    bit more of a nuanced position, even if it's implied
20    and not explicitly stated, in requiring some sort of
21    factual demonstration that requested materials may
22    contain information that is properly discoverable
23    under Rule 16, or properly disclosed under Brady.  So
24    I do think that the Court takes a more nuanced
25    approach than just saying, You can't have these.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 459

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 460

1   Fairly so, I think the Court just, in the past in

2   that decision, required some sort of evidence.  And

3   in that case, it was -- I understand it was a motion

4   to disclose Giglio material.  And in that case, the

5   defendant came forth with known excessive force cases

6   that three BCSO officers, who were involved in arrest

7   of that defendant, had been in.

8         So I submit to the Court that I think it's

9   vastly different to come and ask for 600 STIU files

10  and everything in there, versus asking for three

11  personnel files and pointing to specific facts.  And

12  I think the Court's decision in Padilla hits on that,

13  in that, you know, while that may be okay in civil

14  discovery, that's not how criminal discovery

15  operates, for very good reason, I think a lot of the

16  same reasons, STIU and New Mexico CD have been

17  pushing back.  If we would request to try to track

18  down all of these files, they just don't have the

19  manpower.

20        Finally, I think the size of this

21  prosecution was a little bit overemphasized, and has

22  been throughout.  We understand from the Deputy Chief

23  of the Department of Justice Organized Crime and Gang

24  Unit, they're the ones who see every count that we

25  indict, see every count that is indicted with RICO

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 460

 1    cases across the country, and they've informed us

 2    that 20 to 30 defendant prosecutions across the

 3    country are nothing abnormal.  They are sort of the

 4    norm for these types of cases.  There is nothing

 5    specific here.  And they've said that currently there

 6    are cases with over 100 defendants being prosecuted

 7    across the nation.  So this is not as complicated of

 8    a case as some defendants may assert that it is.

 9              THE COURT:  Don't press that last point too

10    strongly.  The Tenth Circuit has given me an extra

11    law clerk, and I don't want them to take him away.

12              MR. BECK:  I saw that, Your Honor.  Well,

13    we're always happy to have the help.

14              THE COURT:  All right.  Thank you, Mr.

15    Beck.

16              Mr. Castle, if you have anything else you

17    want to say in response to Mr. Beck, you're welcome

18    to do so.  But otherwise, let's start taking up the

19    disputes that remain.  I know y'all settled a lot of

20    them in the briefing, and may have gotten some

21    progress this morning.

22              MR. CASTLE:  Yes, Your Honor.  I'll just --

23    before going to the specifics, I would just note that

24    it's not the number of defendants, it's the number of

25    years and number of events.  We're talking about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 461

1    allegations going back to the mid 1980s.

2           And perhaps -- I know the Court had

3    indicated in Hykes that often a colloquy with the

4    prosecution might be of assistance in ferreting out

5    some information.  And perhaps, if the Court is going

6    to engage in that, one of the questions is:  Are we

7    going to be putting -- are they going to be putting

8    on evidence that goes back to the mid '80s and the

9    mid '90s, or are we going to only be focusing on

10   counts -- the evidence concerning the counts?

11   Because I think that would vitiate against some of

12   our arguments.

13          Judge, our first specific request is

14   actually in the body of the motion for specific

15   discovery.  It's not one of the numbered ones, and I

16   apologize that I didn't set it out as a numbered one.

17   But in our status report, we discuss it, and that is

18   in regards to --

19          THE COURT:  When you're referring to the

20   status report, what are you talking about?

21          MR. CASTLE:  I'm talking about Document No.

22   708.  It's titled, "Status report regarding motion

23   for specific discovery."

24          THE COURT:  I didn't read it.  I thought of

25   it as sort of a reply or something.  But I see what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 462

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 463

```
 1    you're titling it.

 2              MR. CASTLE:  The first request we had made

 3    in our original motion was for a prior interview of

 4    Mr. Lujan.  And to give the Court some background:

 5    Our review of the discovery, at least with respect to

 6    Mr. Garcia is that Mr. Lujan is essentially the only

 7    witness to date that's been identified that indicates

 8    our client is responsible for the murders in Count 1

 9    and Count 2.  And so in their disclosures, they did

10    provide to us interviews that were done with Mr.

11    Lujan.  The earliest one being August 8, 2007.  In

12    that interview, at the beginning of the interview,

13    the investigator indicates that he'd had a prior

14    interview with Mr. Lujan, and references the prior

15    interview.

16              And so it's our position that, you know, if

17    Mr. Lujan's name had been not disclosed and they were

18    relying upon Jencks, they might have an argument.

19    But they have released that.  And they released his

20    other statements.  And so, obviously, the most -- the

21    earliest statement in time, if any of them have a

22    liability, that might have the most reliability.  And

23    so it's necessary to review that for the purposes of

24    investigating and preparing for the case.  So it's

25    discoverable under Rule 16.  If it's inconsistent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 463

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 464

```
 1    with any of his later statements, obviously, then it
 2    would be Brady.  But I don't believe the Government
 3    has addressed this issue in its response, probably
 4    because we had put it in the body of our motion and
 5    not as a numerated request.  But it's our position
 6    it's required to be produced.
 7              THE COURT:  All right.  Mr. Beck?
 8              MR. BECK:  Your Honor, we've produced a
 9    number of statements.  I don't know --
10              THE COURT:  What's the date of the one that
11    you do have?
12              MR. CASTLE:  August 8, 2007, is the
13    earliest in time.  We have others.
14              THE COURT:  It refers to an earlier one?
15              MR. CASTLE:  Right.
16              MR. BECK:  Yeah, I understand that.  I read
17    that this morning when I read this status notice.  As
18    I said, we produced a number of statements.  I don't
19    know whether that one has been produced.  I assume
20    that it hasn't.  We will certainly go back and look
21    for that.
22              THE COURT:  And you'll produce it if you
23    find it?
24              MR. BECK:  I will say that I think there
25    are some statements that have been released that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 464

Appellate Case: 20-2058 Document: 010110415675 Date Filed: 09/29/2020 Page: 465

```
 1    defendants -- counsel have been sensitive about, that

 2    perhaps they would not rather have had them released.

 3    So I think that, if we release it, if we have it and

 4    can find it, but I would just caution that there may

 5    be objections from other people to releasing the

 6    statement.  But I'm sure we will go back and look for

 7    it.

 8             THE COURT:  And you'll produce it if you

 9    find it.

10             MR. BECK:  Yes, we'll produce it.

11             THE COURT:  All right.

12             MR. CASTLE:  Your Honor, that's

13    satisfactory.  I would only ask for a due date,

14    because in their response they filed in July --

15             THE COURT:  Can we use a 14 day for

16    anything I order produced, Mr. Beck?

17             MR. BECK:  Your Honor, that sounds fair.  I

18    would just caution that, as I discussed with

19    Mr. Castle this morning, the DNA evidence that

20    they've looked for, that DNA material, is with the

21    State, and it may take them longer to get it to us.

22    We've already requested that information; it just

23    hasn't been given to us.  So we will do our best

24    efforts to do that.  But I think 14 days --

25             THE COURT:  Does that time frame sound
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 465

```
 1   good, Mr. Castle?
 2             MR. CASTLE:  Yes, Your Honor.  And does the
 3   Court want me to address the DNA now, or --
 4             THE COURT:  Go ahead, since it's been
 5   raised.
 6             MR. CASTLE:  Fourteen days for anything
 7   else the Court orders is fine with us.
 8             With regard to the DNA, I believe the
 9   argument that has been made is that the only thing
10   they need to produce is -- or at least prior to
11   today -- was the only thing they needed to produce
12   was the final report.
13             THE COURT:  Yeah, I'm inclined to include
14   the underlying data.  So if there is underlying data,
15   I think it needs to come up with the report; that we
16   don't need to just cut it off with the actual final
17   report, but whatever hard data results or things like
18   that, I think ought to come up, too.
19             Do you want to respond on that?  Can you
20   live with that, Mr. Beck?
21             MR. BECK:  Yes, Your Honor.  I'd point
22   Mr. Castle to paragraph 14 on page 16, where I said,
23   "In the interests of" -- or where the United States
24   said, "In the interest of compromise, and in light of
25   Court's decisions in Hykes and Rodella, the United
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    States agrees to produce the requested information,

 2    to the extent that it exists, and is in the United

 3    States' possession, custody, or control."  So we did

 4    agree to pass that on.  And as I said, we've asked

 5    the State for it, so we are getting it.  So we did

 6    already agree to produce that.

 7              MR. CASTLE:  I understand.  But when you

 8    couch it with "to the extent it's in our possession

 9    and control," you're not --

10              THE COURT:  Well, let's do this:  If you

11    can't get the State to turn it over, then advise

12    Mr. Castle.  And if it exists, get as much

13    information as you can to Mr. Castle.  If they say it

14    doesn't exist, then relay that information to him.

15    And obviously, if they're willing to produce it to

16    you, then it needs to be produced.

17              And I'm going to relook at this issue as to

18    what I'm going to do with the State Police.  But

19    right at the moment, I'm going to assume for today

20    that I'm going to leave them as not under the

21    possession, custody, and control of the U.S.

22    Attorney's Office, and so they'll have to be treated

23    as a third party.  But I'll take a hard look at that.

24              Anything else on the DNA, then, Mr. Castle?

25              MR. CASTLE:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 468

1           THE COURT:  All right.  Next issue?

2           MR. CASTLE:  It is the other case files.

3   We gave the Court a number of case files that had

4   certain numerical designations, which are for my

5   understanding FBI file numbers of investigations.

6   And we identified three in our original motion.  And

7   from what we can tell, the Government did search

8   using defendant name search methods for at least two

9   of the three files.  The third one, they may very

10  well have done that and nothing was produced.  But I

11  don't think that satisfies their obligation.  Those

12  three files, and then the two that we identified most

13  recently in our status report, were all

14  investigations of the SNM for various acts that are

15  charged in this indictment.  And so they need to --

16  because they are the federal government's files, they

17  need to review them for Rule 16 and Brady-Giglio

18  materials and produce them.  I think this would be an

19  opportune moment to ask if that's the case, if the

20  Court wanted to engage in that colloquy, because if

21  they said they have done that, then I think the law

22  says we have to essentially accept that.

23          THE COURT:  All right.  What is the status

24  of the review of these three files, Mr. Beck?

25          MR. BECK:  We've reviewed these three files

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    and produced information from them, Your Honor.  With
2    regard to the other files that counsel has just
3    brought to our attention, those are significantly
4    older.  We're not sure that any of those
5    investigations touched on the overt acts in this
6    VICAR.  But we will go back and look for them and
7    disclose the material that Rule 16 requires us to
8    disclose.
9             THE COURT:  And you'll use my sort of
10   liberal Rule 16 and Brady eyes to do that review?
11            MR. BECK:  Yes, Your Honor.
12            THE COURT:  All right.  Anything else on
13   that, Mr. Castle?
14            MR. CASTLE:  No, Your Honor.
15            The next is what have been called the STIU
16   files.  And right off the bat, I would tell the Court
17   that I would agree that our request is overbroad.
18            But I would indicate in this case, as far
19   as Count 1 and Count 2, they are murders that
20   occurred on the same date that occurred in two
21   different cell blocks.  And for those cell blocks
22   there were a limited number of inmates that were in
23   those cell blocks, who all had the opportunity to
24   have committed the murder.
25            THE COURT:  What would you say -- what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 469

```
 1   would be the estimate of people that you think would

 2   be reasonable suspects in the cell block?

 3           MR. CASTLE:  I can show the Court, using

 4   the Elmo.  The Government had done two PowerPoints

 5   for each murder.  And in the PowerPoints they set

 6   forth the evidence collected in the case.  And for

 7   each of those two homicides, they listed all of the

 8   people in the cell block as suspects.

 9           So what I'm showing the Court right now is

10   what's been marked as Exhibit A, which is for the --

11           THE COURT:  Are your monitors working here?

12           MS. STILLINGER:  This one does not.

13           THE COURT:  But yours at the back is

14   working?

15           MR. BENJAMIN:  No, Your Honor.  I've seen

16   the PowerPoint.

17           THE COURT:  Not at the table, they aren't

18   working.

19           MR. CASTLE:  It's all in discovery, Your

20   Honor, if anybody wants to see it.

21           And there is a similar PowerPoint that

22   lists the suspects and the people that were in the

23   cell block at the time of Count 2 murders.  So I can

24   show the Court the second one, but I think this is

25   demonstrative.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 470

Appellate Case: 20-2058    Document: 010110415675     Date Filed: 09/29/2020     Page: 471

1          THE COURT:  So this is for one of the

2     murders?

3          MR. CASTLE:  Yes, it's one of the murders.

4     So they've listed the suspects for us.  So I think

5     they're relativity identifiable to the prosecution.

6     For those individuals, obviously, these STIU files

7     are going to produce material that's -- that can

8     assist in the defense.  What those files contain

9     normally -- and I haven't seen one here in this

10    case -- is historical records of gang involvement by

11    individual.  It will show whether they are a risk to

12    other individuals in the prison.  They would show,

13    for example, whether any of these individuals had

14    problems with the victims in this case, or had a

15    motive in the case.

16         And so we would ask that those specific

17    STIU files for the suspects that are identified in

18    both Exhibit A and that portion of Exhibit B, which

19    deals with the suspects -- and I think that the

20    prosecution knows the list -- that those be reviewed

21    also for Rule 16 and Brady materials.

22         And here is the second list, which is a

23    selected page of Exhibit B.

24         THE COURT:  All right.  Mr. Beck?

25         MR. BECK:  Well, I think Your Honor has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 471

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 472

1    given pretty clear guidance where you intend to go

2    with that request.  And the United States isn't

3    opposed to reviewing these suspects' STIU files.  And

4    to the extent that there is material -- again, I

5    can't say that STIU would wholesale hand them over.

6    I think they've been receptive so far.  We would

7    obviously alert the Court if we have trouble.  But I

8    can tell you that, given this much more limited

9    request here today, we're happy to review these with

10   Your Honor's liberal standard in mind and produce

11   Rule 16 materials.

12            THE COURT:  All right.  Thank you, Mr.

13   Beck.

14            Anything else on that issue, Mr. Castle?

15            MR. CASTLE:  No, Your Honor.

16            The third request is the STIU files and

17   Giglio material concerned Mr. Lujan.  Once again,

18   they've already disclosed his identity, all but one

19   of his statements so far.  So there doesn't seem to

20   be any reason to resist turning over materials that

21   they possess or can get easy access to with regards

22   to Mr. Lujan.

23            THE COURT:  Mr. Beck?

24            MR. BECK:  I think there seems to be some

25   confusion here, Your Honor.  Mr. Lujan is not a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Government witness.  He's not a Government
 2   cooperator.  His statements are not Jencks.  That's
 3   why the United States said, We'll turn them over.  So
 4   to the extent that they're asking for more, I think
 5   that that's inappropriate.  That's based on some
 6   misunderstanding.  To the extent they're asking us to
 7   review the STIU files for Rule 16 materials, just
 8   like we're going to do with those other suspects, I
 9   think that's appropriate, and we'll do that.
10              THE COURT:  Mr. Castle?
11              MR. CASTLE:  Well, then I don't know how
12   they're going to prove their case.  Because their
13   PowerPoints say that their evidence comes from Mr.
14   Lujan against my client; that he had a conversation,
15   a one-on-one conversation between the two of them,
16   and that my client allegedly told Mr. Lujan to
17   orchestrate these two murders.
18              So I understand they may not have to
19   designate their actual witnesses until two weeks
20   prior to trial.  But if they don't designate Mr.
21   Lujan by then, then we probably are going to be
22   dismissed out of the case.  But I want to prepare in
23   advance of that.
24              So I think it's logical -- and my guess is,
25   if we were to look at the Grand Jury transcripts in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 473

```
 1    this case, my guess is the indictment was obtained

 2    based upon Mr. Lujan's statements.  I'd be shocked if

 3    it wasn't.

 4              So I think in some respects the Court has

 5    to order discovery based upon likelihoods.  And

 6    what's the worst that happens if we get this material

 7    and Mr. Lujan doesn't become a witness, and we're

 8    prepared for something that we don't have to defend

 9    against?  I don't see that to be a legitimate

10    Government interest in holding this evidence at this

11    time.

12              THE COURT:  Any response on that, Mr. Beck?

13              MR. BECK:  Your Honor, I mean, I think the

14    rules of discovery, Rule 16, Brady, Giglio, Jencks

15    are clear.  As I said, Mr. Lujan is not a cooperating

16    defendant.  He's not a testifying witness in this

17    case.  So --

18              THE COURT:  You're going to prove your case

19    without him?

20              MR. BECK:  We're in that position now,

21    so --

22              THE COURT:  But you're going to review his

23    file, if you have not already done so, for Brady and

24    Rule 16 material?

25              MR. BECK:  Yes, Your Honor.  I said we'd do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 474

```
 1    the same thing we were going to do with those other

 2    suspects.

 3              THE COURT:  Well, I think that's all I can

 4    do, Mr. Castle.

 5              MR. CASTLE:  I understand.

 6              If the Court will give me a second.  I took

 7    the wrong set of glasses out of my house, and I'm

 8    going to be functioning with my wife's glasses who

 9    has better eyesight than I do.

10              THE COURT:  I've got some drug store

11    cheaters if you need them.

12              MR. CASTLE:  The next question is in

13    regards to what's called separatee status.  And what

14    those are is, normally, in the Department of

15    Corrections files, they will indicate who creates a

16    risk to an individual.  That's so that they can make

17    sure that they're not housed together, take

18    precautions, so Corrections can do what they can to

19    protect people.

20              For the two victims in this case,

21    obviously, their separatee listings is literally a

22    list of alternate suspects, who could have either

23    participated or ordered their deaths.

24              So I think the Government is in agreement

25    on producing that within the two-week period.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Is that correct, Mr. Beck?
 2              MR. BECK:  That's right, Your Honor.  We
 3      discussed that beforehand.  That's the separatee
 4      listings, Number 8; correct?
 5              MR. CASTLE:  Yes.
 6              THE COURT:  All right.  Anything else on
 7      that, Mr. Castle?
 8              MR. CASTLE:  No, Your Honor.  The only
 9      thing I would note is, these motions were filed in
10      June.  And I think that this is a concern that we
11      have that the Government recognizes that this
12      material should be reviewed and turned over, and yet,
13      we're here in October without these materials.  And
14      that's one of the driving forces behind the motion to
15      continue the trial.  So I know the Court's doing what
16      it can by giving a two-week deadline.  But I would
17      just make that note.
18              The next request concerns segregation
19      waivers signed by two victims in Count 1 and Count 2.
20      And I believe the Government is willing to provide
21      that within the two-week period.
22              MR. BECK:  That's right, Your Honor.
23              THE COURT:  All right.
24              MR. CASTLE:  The next one is a request for
25      the Wanted for Escape Master Record Entry.  And when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 476

```
 1    we discussed things this morning, the Government
 2    didn't realize, but it had turned that over, so we
 3    already have it, and we withdraw our request.
 4              The next one is the logbooks.  I know the
 5    Court addressed this with prior counsel.  And we had
 6    asked for a three-month period before and after.  And
 7    I know the Court had said three weeks before, and I
 8    think three days after.  Let me explain at least why
 9    the after ones are relevant.  After a homicide
10    happens at Corrections, they -- the investigators
11    within the Department of Corrections immediately try
12    to gather intelligence information to try to
13    determine, not just who committed the crime for the
14    purposes of prosecution, but they're also trying to
15    figure out security issues.  So what happens in the
16    weeks afterwards is that inmates are moved, and
17    they're relocated because they're possibly suspects
18    or possibly witnesses or possibly at risk.  So those
19    logbooks will give us a history of who the witnesses
20    are that we really actually need to talk about.
21              Now, we're trying to investigate and defend
22    a case on allegations that happened 15 years ago.  So
23    these logbooks are almost like an historical record,
24    the best historical record that we can get our hands
25    on, as to who are the people that we need to go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 477

1    interview and why.  And they'll also contain

2    information, such as, An informant told me John Doe

3    had killed this person, and so we're moving them out

4    of this unit.  It contains all kinds of information.

5           I know the Court had given discovery of the

6    regulations that occur that are supposed to deal with

7    what they're supposed to put in there.  But I can

8    tell the Court, even though those regulations

9    undoubtedly exist, those logbooks will often contain

10   information that's not pursuant to the regulations,

11   just because of the nature of what people write down

12   for notes.  And so we're asking the Court to expand

13   that -- I could probably live with less than three

14   months on the front end, if we could get more on the

15   back end.  Now, I'm not trying to horse trade --

16   well, I am trying to horse trade with the Court.  But

17   I think perhaps two and two would be a better search

18   area for us.

19           THE COURT:  Mr. Beck?

20           MR. BECK:  Your Honor, I'll refer the Court

21   and counsel to page 16, paragraph 13 of our response

22   brief to this motion.  And it's substantially the

23   same in the response to the other motion.  We

24   inquired of New Mexico Corrections Department, if

25   they have these files.  Pursuant to their records

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 478

1    retention policy NMAC 1.1A.770.75, they only retain

2    documents for five years after they're created.  So

3    these have been destroyed pursuant to that policy.

4    They were destroyed, presumably, sometime in 2006.

5           So the New Mexico Corrections Department

6    preserved logbooks from the days of these murders,

7    and those have been disclosed in discovery.  But the

8    other files have been destroyed.

9           MR. CASTLE:  Except, Your Honor, can the

10   Government disclose the exact date that they were

11   destroyed?  The reason that is is because, in 2007,

12   at least at the earliest, the federal government

13   started investigating these cases.  And obviously,

14   that would be relevant to possible arguments under a

15   Trombetta destruction issue.  So we would ask for a

16   destruction date.

17          THE COURT:  Can you provide that

18   information, Mr. Beck?

19          MR. BECK:  I can certainly ask the New

20   Mexico Corrections Department to provide that

21   information.  And I'll respond to opposing counsel

22   what that answer is.

23          THE COURT:  All right.  Anything else on

24   that issue, Mr. Castle?

25          MR. CASTLE:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 479

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 480

```
 1              The next area is with regard to pen packs.
 2    And I think there are a couple different requests for
 3    pen packs for different individuals.  And I believe
 4    the Government's response was, Well, you can go
 5    through IPRA, the state FOIA process, to obtain these
 6    materials.  And our argument is that they have easy
 7    access.  And it doesn't really assist -- it's not
 8    efficient if all 26 remaining defendants have to file
 9    separate IPRA requests to get the same exact
10    material.  It sounds like it's readily available to
11    the Government.
12              And I think, kind of an associated issue
13    with this is, under Rule 16, the prosecution is
14    required to give the defendants their own criminal
15    record, which they have not done to date.  And so,
16    when they're over there, if the Court orders it,
17    obtaining the pen packs for the individuals we've
18    identified --
19              THE COURT:  What's the list that you're
20    working from on the pen packs?
21              MR. CASTLE:  It's an individual by the name
22    of Frederico Munoz, Mr. Lujan, the two named victims
23    are the ones that we listed.
24              THE COURT:  So you've got four pen packs?
25              MR. CASTLE:  Four pen packs.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 480

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 481

```
 1              THE COURT:  Mr. Beck, your thoughts?
 2              MR. BECK:  I'm trying to come back from
 3    that.  So I think we're conflating two sort of
 4    requests here.  Specific request Number 12 is the pen
 5    pack for Frederico Munoz; specific request Number 4
 6    are the pen packs for RG, FC, and all inmates housed
 7    in P1 green pod and O1 yellow pod.
 8              THE COURT:  It sounds like Mr. Castle is
 9    just reducing it to four:  Two victims, Lujan,
10    Frederico.
11              MR. BECK:  I think we've conceded that we
12    will provide the victims' pen packs.  We'll also
13    provide all of the defendants' pen packs.
14              But I should clarify for the Court, I think
15    Mr. Castle was saying we have easy access, and we're
16    requiring them to go through IPRA.  It's not quite
17    that easy.  The way I've been informed these pen
18    packs exist is that someone in the corrections
19    department, when they are asked by a DA, or something
20    to that effect, will go out to these publicly
21    available resources and compile the pen pack at that
22    point.  So it takes man-hours.  And then they print
23    them off.  So it's not like these things just come
24    about when a defendant is housed in a facility.
25              So we have requested, and we have pen packs
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 481

1    for all of the defendants.  But outside of that, it

2    takes a lot of work from the corrections department

3    to get those, which is why I think at one point we

4    had offered, if they would identify specific suspects

5    or other inmates that they wanted, we would make that

6    request to NMCD.  And they agreed to do so for their

7    IPRA fee of 25 cents per page to do that.  I don't

8    think that still exists, because those discussions

9    didn't come to fruition.  But I just want to clarify

10   for the Court that the pen packs, they're not just

11   automatically generated when there is an inmate.

12            THE COURT:  But you're willing to produce

13   the pen packs for all the defendants?

14            MR. BECK:  That's right, Your Honor.

15            THE COURT:  And the two victims?

16            MR. BECK:  That's right, Your Honor.

17            THE COURT:  And Lujan and Frederico?

18            MR. BECK:  They are defendants, Your Honor,

19   so yes.

20            MR. CASTLE:  That's satisfactory.  The only

21   thing I would note is, you know, I've heard time and

22   again that there is difficulty in getting some

23   materials from the corrections department, and

24   sometimes not.  They didn't have any difficulty ever

25   getting materials from our clients' STIU files or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 482

```
 1    anything bad about our clients.  So they have the
 2    ability to do it.  I'm not talking necessarily about
 3    the US Government.  I'm talking about Corrections.
 4    They have the ability to gather this material when
 5    they're trying to prosecute someone.  It seems like
 6    any arguments that they don't have that ability, or
 7    it takes too much man-hours, probably should fall on
 8    deaf ears, because they do it when they want to.
 9              THE COURT:  It sounds like you're getting
10    what you want.
11              MR. CASTLE:  Yes, I am.
12              MR. BECK:  And I'll respond to that, Your
13    Honor.  I think I touched on this this morning in
14    relation to the first motion, in that there is a
15    difference, from our standpoint -- which we submit
16    should be a difference from the Court's standpoint --
17    between documents involved in this investigation and
18    STIU files outside of this investigation.  I don't
19    think the United States has represented that it's
20    difficult to get the STIU files that were involved in
21    this investigation, and that would be the defendants'
22    STIU files.
23              THE COURT:  All right.  Anything else on
24    that issue, Mr. Castle?
25              MR. CASTLE:  No, Your Honor.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 820-6349                                            FAX (505) 843-9492
                                                               1-800-669-9492
                                                        e-mail: info@litsupport.com



DNM 483

1           THE COURT:  All right.

2           MR. CASTLE:  The next is a fairly broad

3    request.  And that was Number 5, which was any and

4    all files, including intelligence materials

5    concerning the SNM, and then it goes on.  And the

6    thrust of this argument, which I put in the motion

7    and the reply, is they've indicted this large time

8    period in there, from what we can tell, tell the jury

9    of all these horrific acts that the SNM has done over

10   the last 25 years.  And I would ask that the Court

11   perhaps engage in that colloquy with the Government

12   as to whether they're really going to be putting on

13   that evidence.  Because if they are, various

14   defendants are going to need to attack that evidence.

15   For example, that their client wasn't even in prison,

16   perhaps, during that time period, and therefore, it's

17   not relevant as to their client.  Things of that

18   nature.  We're going to have to look into what their

19   evidence is.

20           Now, kind of -- in addition to that is this

21   concept that the SNM is some singular organization

22   that is responsible for all these murders, and things

23   of that nature.  What the documents we've received to

24   date show is that this umbrella concept of the SNM is

25   actually an umbrella that includes a number of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   different groups.

 2           For lack of a better -- I would give an

 3   analogy to like the CRIPS gang.  The CRIPS people

 4   wear the CRIPS colors, and call themselves CRIPS in

 5   every major city in the country.  But they're not all

 6   working together.  There is a name, and then they

 7   call themselves that, but they may not be part of the

 8   actions in New York City by the CRIPS, if they're

 9   here in Albuquerque.  And so the materials we've

10   received indicates that the SNM has actually

11   splintered over many years and formed different

12   groups.  Some called the All Stars, for example, or

13   the Old Timers, or different groups within this

14   umbrella concept.

15           I understand the Government wants to keep

16   them all tightly knit and all one organization.  But

17   we need this information, frankly, on behalf of my

18   client, who was out of custody, living on the streets

19   with his family, is a grandfather, at the time that

20   the vast majority of the crimes alleged in the

21   indictment happened.

22           So we need to be able to review the SNM

23   records generally, because it will create defenses

24   along the lines of whether this is a criminal

25   enterprise, whether the defendant is part of that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 485

```
 1   criminal enterprise, the scope of that criminal
 2   enterprise, and things of that nature.  But I think
 3   it can be constricted, if, in fact, we hear from the
 4   Government they're not going to be putting on
 5   evidence from the mid '80s and the mid '90s; they're
 6   going to start with the date of the offenses and move
 7   forward.
 8            And I understand there might be some slight
 9   historical evidence just to indicate what the SNM
10   might be.  But their indictment alleges this.  And
11   we're asking for discovery that's relevant to the
12   time period in their indictment.
13            THE COURT:  All right.  Thank you, Mr.
14   Castle.
15            Mr. Beck, is there anything you can share,
16   are willing to share that might help cut down the
17   scope of the request that the defendants are making?
18            MR. BECK:  Not right now.  But I'll give
19   the Court some thoughts.  At page 5 of the Court's
20   opinion in Hykes, the Court is discussing the law
21   regarding Rule 16(a)(1)(E)(i), and says that an item
22   is material to the defense's preparation, quote, "if
23   there is a strong indication that it will play an
24   important role in uncovering admissible evidence
25   aiding witness preparation or assisting impeachment
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 486

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 487

1    or rebuttal."

2           So when we're talking about request Number

3    5 here, which is "Any and all files, including

4    intelligence materials concerning the SNM listing

5    suspected and confirmed members, and their activities

6    from the time period that the SNM was formed to the

7    last date alleged in the indictment, February 27,

8    2016," that is -- I mean, I would put that on a

9    bumper sticker for the quintessential fishing

10   expedition.

11          THE COURT:  Well, I understand the

12   argument.  But what do you do, though, if you're in

13   the defendants' position facing the scope of this

14   indictment?

15          MR. BECK:  Well, I disagree that the scope

16   of the indictment is that large.  I mean, he said, if

17   it's just some background information, then we don't

18   need to get into that.  And that's what's in the

19   indictment.  It says that the gang was formed in

20   1980, with the PNM riot, and has existed since then.

21   And it lists some historical background to the gang.

22          What the United States has to prove is that

23   the organization engaged in racketeering.  And if

24   there are overt acts, we have to prove those overt

25   acts; we have to meet our burden of proof.  And I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 488

 1   think the Court should look to its discovery and say

 2   that, if they come forward with specific allegations

 3   in the complaint, or specific facts that a suspected

 4   gang member, suspected SNM file from 1981 -- well, go

 5   back -- the STIU, STG began to exist in 1999, so they

 6   wouldn't go back that far.  They would exist in 1999.

 7   But if they could come forth and email -- it doesn't

 8   have to be in a motion -- and say:  Here is the fact;

 9   here is the allegation; this is why we need this

10   group of files; this is why we need you to look at

11   this person's file, the United States has been open

12   to doing that.

13           And I think that, while the criminal rules

14   may not require the United States to do that, it's

15   been willing to do that, with the Court's guidance

16   and its decisions.

17           And so I don't think that this request has

18   to -- necessitates the Court getting into what we're

19   going to prove at trial.  If there are requests for

20   specific information, I think we can get to that.

21   But I would submit to the Court that Rule 16, the Due

22   Process Clause, and the Court's own, as you said,

23   liberal discovery view, do not merit that we have to

24   look through these -- what I have been told is over

25   600 files, most of which are in archives, anywhere

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from, at a minimum 30 to 40 pages, to a maximum

2    hundreds of pages in each one of these files.

3            THE COURT:  All right.  Thank you, Mr.

4    Beck.

5            MR. CASTLE:  Yes.  Initially, I keep

6    hearing this concept of fishing expedition.  Well,

7    the fishing expedition that has originated is this

8    indictment.  In the terms, I think, of the last

9    search warrant that was issued, it was -- it's a

10   statement that's being made to the SNM.  And they

11   cast their net wide and deep, and they tried to

12   capture everybody that they thought was an SNM member

13   or a big SNM member for the last 15 years.  And so

14   they're the ones that cast the wide net.  And so

15   within that net is information.  Now, the Government

16   tells us -- what they're stating here is there may be

17   files -- there are files -- I think 600 files -- that

18   contain information about the SNM, but we're not

19   going to review them, unless you specifically point

20   them out.

21           And I want to show the Court what happens

22   when that occurs.

23           THE COURT:  When we talk about the 600

24   files, what are we talking about?  What are these

25   files?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 490

1            MR. CASTLE:  Well, I don't know.  What the

2    Government --

3            THE COURT:  What do you think they are?

4            MR. CASTLE:  I think some of them are

5    federal investigations.  And that's what I wanted to

6    show the Court.

7            THE COURT:  So you think that there are 600

8    separate state corrections department investigations

9    of the SNM Gang in the prison system?

10            MR. CASTLE:  I have no idea how many there

11    are.

12            THE COURT:  Is that what your thinking is

13    we're talking about?

14            MR. CASTLE:  I think -- my guess is -- and

15    I guess the best person to ask is the Government --

16    but I think the 600 include probably state-run

17    investigations and Corrections-run investigation.

18    But certainly, some of them include federal

19    investigations.

20            And what I wanted to show the Court is what

21    happens.  This is a document that we received in

22    July, because we identified one of those case

23    numbers, a prior investigation that was listed as an

24    investigation into this -- these murders -- they had

25    not reviewed.  And what it shows -- and I'm going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 490

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 491

```
 1    show it to the Court -- on page 2; it's Exhibit D at
 2    page 2.  This particular document, it talks about the
 3    splintering of the SNM in the year -- well, it
 4    doesn't really say, but it appears to be in the early
 5    2000s -- and that the SNM split.  And that, as a
 6    result of it, one group of the SNM, who are indicted
 7    here today, sought to put a green light, or a hit,
 8    whatever you want to call it, on my client.  Now, my
 9    guess is my client wasn't part of that conspiracy.
10             So the problem is, if the Government is not
11    looking into all their files that they've
12    investigated the SNM, they're not going to find
13    exculpatory information, such as I am demonstrating
14    to the Court here.  Now, some of them might be
15    inculpatory also.  But it talks about the splintering
16    of the SNM into different groups.  And I'm telling
17    the Court right now that this is a preview of a
18    motion to sever the Court is probably going to hear
19    from the Count 1 and 2 defendants.
20             But in their own documents, which we would
21    never have gotten, because they weren't going to
22    conduct their own Brady and Giglio analysis, or Rule
23    16 analysis, of the files that were investigated by
24    the FBI and the U.S. Attorney's Office here, is
25    exculpatory information.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 491

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page 2492

 1              I know the Court is still looking at it, so

 2      I'll wait until the Court is done.

 3              THE COURT:  Go ahead.

 4              MR. CHAMBERS:  Excuse me, Your Honor.

 5      Would Mr. Castle identify that document by Bates

 6      number, please?

 7              MR. CASTLE:  It is Bates No. 2647 in the

 8      DeLeon case.

 9              MR. CHAMBERS:  Thank you.

10              MR. CASTLE:  There are numerous documents

11      like this that I can show the Court, and I've marked,

12      but --

13              THE COURT:  Well, let me ask this:  If I

14      understand what you're saying is you identified a

15      file, told them to go look at it; they did, and they

16      found that, and they gave it to you.

17              MR. CASTLE:  Yes.

18              THE COURT:  I guess I'm wondering why this

19      process -- some version of what Mr. Beck is

20      suggesting, won't work.  Rather than just a wholesale

21      investigation of the 600 files, instead they're

22      receptive to looking at the ones that you point out

23      may have something that's useful to you.

24              MR. CASTLE:  Well, because we're not being

25      given information about all of the files that are at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 492

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

```
 1    least part of the federal investigation.

 2            THE COURT:  How did you get information on

 3    this file?

 4            MR. CASTLE:  Only because we identified the

 5    case number, and asked them to go look at it.

 6            THE COURT:  How did you do that?  How did

 7    you know that existed?

 8            MR. CASTLE:  One of the documents in a

 9    previous disclosure under this case number also

10    referenced, and said "prior file," and it referenced

11    that number.  And I think that those references were

12    attached to our original motion.  So we kind of found

13    it.  It was like finding a needle in a haystack.

14            I know the Court has kind of drawn a line

15    between materials from the State, that the Government

16    may not need to go review.  But these are -- the

17    materials that are done by federal investigation,

18    there can be no doubt that under Kyles they have a

19    duty to review all the files of the SNM -- not all

20    criminal files, but of the SNM -- that -- and look

21    for exculpatory material and Rule 16 type material.

22    I know it's hard, and I know it's going to be

23    burdensome.  But this is a burdensome case.  And what

24    we've established through, at least these instances,

25    plus two more that we just referenced in our status
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 493

1    report is there are files of investigations of the

2    SNM and many of the defendants in this room that have

3    not been reviewed.

4            Now, they've reviewed three.  But I think

5    it's incumbent upon them to find out what

6    investigations of SNM, at least federally, have been

7    done, and to have those reviewed for exculpatory

8    material.  Otherwise, what we're saying is that they

9    do not have to look at materials within their

10   constructive possession that might be exculpatory or

11   Rule 16 material.

12           THE COURT:  Where did the number 600 come

13   from?

14           MR. CASTLE:  That was the first time I

15   heard that today, so --

16           THE COURT:  Okay.  That's from the

17   Government, though?

18           MR. CASTLE:  Yes.

19           THE COURT:  It's not something that you

20   found out?

21           MR. CASTLE:  No.  In fact, I was surprised

22   it was 600.

23           THE COURT:  You thought there was more or

24   less?

25           MR. CASTLE:  Less, but ...

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 494

```
 1              THE COURT:  Tell me about the 600 files.
 2    When you use that phrase, what are you including in
 3    that universe?
 4              MR. BECK:  What I'm including in that
 5    universe is when I asked -- when the United States
 6    asked New Mexico Corrections and STIU to give us an
 7    estimate, because they don't know.  As I think I said
 8    to the Court before, these STIU files go with the
 9    defendants to wherever they are housed in a facility.
10    And the rest of them are housed in an archive
11    facility.  So I said, Shooting from the hip, give me
12    an estimate.  And they said, Somewhere around 600.
13              THE COURT:  Well, now, I'm getting confused
14    here.  I thought --
15              MR. BECK:  I think what the Court is
16    confused on, and what I was confused on a little bit
17    here, is I think we're kind of blending two things
18    together here.  I think we're talking about the FBI
19    investigations and the STIU files.  I think -- and
20    correct me if I'm wrong, Mr. Castle -- but I think
21    Mr. Castle was referring to a document in the FBI
22    investigation that we disclosed after he had found
23    reference to it in another document that we had
24    disclosed from the FBI files.  This morning, earlier
25    today, we said that we would -- we have reviewed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 495

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 496

1   those three files, and we would review the two

2   additional files that were pointed out to us this

3   morning in the updated status conference.

4           THE COURT:  So the State has -- has

5   conducted what you and they estimate to be about

6   600 -- they've conducted about 600 incidents, or

7   something along those lines that --

8           MR. BECK:  No.

9           THE COURT:  -- that involve the SNM Gang?

10          MR. BECK:  No.  No, I think that's wrong.

11  So there would be a file on a specific person who, in

12  this request, is referenced as a suspected or

13  confirmed member.

14          THE COURT:  Okay.  So what you're doing is

15  you got a file, and these are 600 suspected or

16  confirmed SNM Gang members?

17          MR. BECK:  That's right.

18          THE COURT:  Okay.  Hold right there.  Let

19  me ask Mr. Castle:  Now, is that the -- when you use

20  the word "investigative file," is that what you're

21  thinking of?

22          MR. CASTLE:  Well, I was thinking of all

23  kinds of investigations, whether it be federal or

24  state, but I thought I'd lost the state argument, so

25  I didn't pursue that with Your Honor.  And so I was

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 820-6349                                                    FAX (505) 843-9492
                                                                              1-800-669-9492
                                                                  e-mail: info@litsupport.com



PROFESSIONAL COURT
REPORTING SERVICE

DNM 496

 1   focusing on the federal investigations.  So --

 2            THE COURT:  Well, let me -- all right.  How

 3   many investigative files does the federal government

 4   have?

 5            MR. BECK:  Your Honor, again, we have three

 6   files for this operation, for this investigation that

 7   led to these indictments.  We've been pointed out to

 8   two more.

 9            THE COURT:  You think there is five

10   investigative files of the SNM Gang federally?

11            MR. BECK:  Right.

12            THE COURT:  And does the Government have

13   any objection to the review of all those files, all

14   five of those files for Brady, Rule 16 materials?

15            MR. BECK:  I think we conceded this morning

16   that we don't, Your Honor; that we will review those

17   files.

18            THE COURT:  Okay.  So -- and then the offer

19   still stands that we'll do the State SNM files, we'll

20   just take those on a -- I mean, 600 is probably more

21   than what I understand the gang actually has.  So it

22   may have some former members; it may have some people

23   that were suspected but never confirmed.  So 600 is

24   going to be on the high side.  I guess, I would not

25   be inclined to produce that, but just -- let's just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 497

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 498

```
 1    take these one at a time.  And if we need to go back,
 2    it sounds like the Government is willing to look at
 3    that.  And if y'all can't agree, then you can make
 4    your pitch to me.
 5               MR. CASTLE:  Your Honor, with regards to
 6    the federal files, I think it's incumbent upon them
 7    to go back to their office and find out what
 8    investigations were conducted by the FBI and their
 9    offices into the SNM.
10               THE COURT:  Well, you're willing to do
11    that; right, Mr. Beck?
12               MR. BECK:  Right, Your Honor.
13               THE COURT:  They're saying they know of
14    five.  They're going to do the Brady and Rule 16
15    review of those files.  So that covers the federal
16    files.  And then we have a little bit of dynamic
17    process to go with the state files.
18               MR. CASTLE:  I understand.  And I
19    appreciate where the Court is coming from.  But this
20    has already been ordered for them to go look for --
21               THE COURT:  This is what?
22               MR. CASTLE:  This was already ordered, when
23    the original issue came up with Judge Gonzales, was
24    to go back and find out if there were investigations
25    with any of these defendants or with the SNM that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 498

 1     might relate to that issue.  We were told of two

 2     files.  Then we found more; we found it, not the

 3     prosecution.

 4            And so that's not the way it's supposed to

 5     work.  They're supposed to, on their own, look at

 6     materials that are in their possession, or

 7     constructive possession, and disclose them.  We

 8     shouldn't be in here asking for this.

 9            So I understand Mr. Beck is saying that he

10     promises they're going to go back and review to see

11     whatever files they have, and then do their mandatory

12     review for Brady and Giglio.  But I have to say, it

13     hasn't happened when it was ordered before.

14            THE COURT:  All right.

15            MR. BECK:  Your Honor -- and I do want to

16     clarify.  The way that we do these reviews is we

17     search for the defendants' names and monikers

18     throughout the files, because some of these older

19     files contain, again, hundreds of suspected or

20     confirmed SNM members.  So we do not go through and

21     search page by page.  We have a -- there is a system

22     that you can search by name or moniker.  And those

23     pages come to the front, and that's what we review

24     for Brady and Giglio materials.

25            THE COURT:  All right.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1            MR. CASTLE:  It sounds like what they're

2    searching for is inculpatory material.  For example,

3    there was an individual by the name of Chavirra, who

4    was identified as being a person who may have

5    ordered -- and with a different set of people -- the

6    deaths in Counts 1 and 2.  Our client's name wouldn't

7    appear on an investigation that showed that

8    Mr. Chavirra did that murder.  It's not going to get

9    the exculpatory information.  If they talked to an

10   informant who told them that somebody else did it,

11   and our client's name is not on there, it won't come

12   through their sifting process.  Just searching for

13   names is not sufficient.  And that's not what's

14   contemplated under the case law.  What's contemplated

15   is you have to review what's in your constructive

16   possession, and turn over all exculpatory material,

17   without regards to a certain kind of search engine or

18   search method.  They have to look at it.

19            I don't know how large these files are, but

20   if they relate to these counts and these charges,

21   then they need to be reviewed for mandatory

22   disclosures.

23            MR. BECK:  We also searched the victims'

24   names and monikers, Your Honor.  So whenever a victim

25   or the victims' moniker is mentioned, that would come

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 501

1    to the front also.

2              THE COURT:  Well, I'm uncomfortable with

3    that search.  I think you ought to look at these

4    pages.  You know, electronic discovery, I'm all for

5    it, and I'm fully aware of what we're doing with

6    algorithms in the search area, but -- particularly on

7    the civil side -- but I'm uncomfortable with there

8    not being an Assistant U.S. Attorney putting their

9    feet in the shoes of the defendants and the

10   defendants' counsel, and being creative about how

11   this information could possibly be used to benefit

12   the defendant.  And I don't think there is an

13   algorithm or search function that does that.  I think

14   that takes a human being sitting there putting their

15   feet in the defense lawyers' shoes and saying, Could

16   I use this?  So if that's the search that has been

17   done or is contemplated, I don't think that's

18   adequate.

19             MR. BECK:  Understood, Your Honor.

20             THE COURT:  Mr. Castle?

21             MR. CASTLE:  I think the last area -- but

22   when I finish, I'd like to just talk to co-counsel

23   and make sure -- was the list of inmates residing in

24   the Penitentiary of New Mexico North facility,

25   between January 1, 2001 and March 26, 2001.  I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 501

1   the Government has agreed to do it for the date of

2   the offense.  But the discovery we had indicates that

3   there might have been discussions -- well, the

4   allegations are there were discussions at the

5   Penitentiary of New Mexico, in which they ordered --

6   some individuals ordered the murder of these two

7   people.  And those discussions happened before the

8   date of the offense.  And so we chose between January

9   1st and the date of the offense to capture, perhaps,

10  the names and identities of witnesses that could

11  either -- would either dispute or -- obviously, we're

12  hoping to dispute.

13          THE COURT:  January 1, 2001 and March 26,

14  2001?

15          MR. CASTLE:  Yes.

16          THE COURT:  And what was the response, Mr.

17  Beck?

18          MR. BECK:  Again, Your Honor, we agreed to

19  disclose the date of the murder to list alternative

20  suspects.  Outside of that, again, we asked

21  defendants to come forth with some demonstration of

22  facts why that information would be helpful to them,

23  why it may lead to admissible evidence.  And we were

24  open to going outside of that.  But they haven't done

25  that.  And then the problem with that, again, is that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 502

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 503

1    you would have to go back and look at each one of

2    these days and find out who was in there each one of

3    these different days.  In 2001, there was no -- you

4    couldn't just go into a computer and print off a

5    spreadsheet.

6              THE COURT:  March 26 is the date of the

7    murder?

8              MR. CASTLE:  Yes, Your Honor.

9              Just so the Court knows, in the companion

10   indictment, USA versus Baca, 16-CR-1613, it states in

11   that indictment, "In 2001, while in the custody of

12   New Mexico Corrections Department, Frederico Munoz

13   attended a meeting with SNM Gang leaders, in which

14   hits were placed on the two victims in this case."

15   And so all they're alleging is it happened in 2001.

16   Well, we knew it happened before the day of the

17   murder; otherwise, it wouldn't have made any sense.

18   That's why we chose January 1, 2001.  We could do

19   weekly --

20             THE COURT:  When you made your initial

21   proposal for this, what did you request?

22             MR. CASTLE:  We requested January 1st to

23   March 26th.  Because in the Baca indictment it says

24   it happened in 2001, which would be between January

25   1st and March 26th.  The date of the murder,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 503

1   obviously, it didn't happen, because the murders

2   happened at a different facility.

3             THE COURT:  Mr. Beck?

4             MR. BECK:  We've disclosed in discovery a

5   list of people who were at that meeting.

6             THE COURT:  What date was that?

7             MR. BECK:  Offhand, I couldn't tell you.  I

8   know that we've disclosed who was at that meeting.

9             THE COURT:  Well, it sounded like you were

10  willing to give more than just the date.  You didn't

11  want to give January 1st.  What did you have in mind?

12            MR. BECK:  As I said, Your Honor, I had in

13  mind that if we could be pointed to a date range or a

14  specific date --

15            THE COURT:  You don't remember the date of

16  this meeting?

17            MR. BECK:  I don't have --

18            THE COURT:  Do you know the date of this

19  meeting, Mr. Castle?

20            MR. CASTLE:  I apologize --

21            THE COURT:  Do you know the date of this

22  meeting?

23            MR. CASTLE:  I do not.  It only alleges in

24  2001.

25            THE COURT:  Well, Mr. Beck is saying that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 504

1   he gave the list of inmates as of the date of that

2   meeting.  So it sounds like he's produced two things:

3   One, a list of inmates the day of the murder, and

4   then one, a list the day of the meeting.

5          MR. BECK:  No, Your Honor.  We have not

6   produced a list of all the inmates at PNM during that

7   meeting.  We've produced discovery, and in discovery

8   it talks about who was at that meeting.  So we have

9   not produced a list of all the inmates at that

10  facility on the day of that meeting.

11         THE COURT:  But nobody knows -- nobody

12  knows the date of that meeting?  Is there a date

13  anybody remembers?

14         MR. CASTLE:  No, Your Honor.  The reason

15  it's important is they may not have been in the same

16  cell blocks, the people they say in these meetings.

17  So we have to look to see if this is even possible.

18         THE COURT:  Do you have an idea how far in

19  advance of the murder it was?

20         MR. BECK:  I don't, Your Honor.  But the

21  United States would agree to go back and look, and

22  produce that date, in addition the list of inmates at

23  PNM North facility on that date, and the list of

24  defendants at PNM North facility on the day of the

25  murder.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 505

```
 1            THE COURT:  Here's what I propose, is that
 2   we find out the date of the meeting, and back it up
 3   two weeks.  And then it will be the list of the
 4   inmates two weeks before that meeting, up to March
 5   26.
 6            MR. COOPER:  Your Honor, if I --
 7            THE COURT:  Hold on just a second.  Could
 8   you live with that, Mr. Beck?
 9            MR. BECK:  Yes, Your Honor.
10            THE COURT:  Live with that, Mr. Castle?
11            MR. COOPER:  If I may, Your Honor.  We'd
12   also like maybe a list of the inmates who were --
13            THE COURT:  I said "Mr. Cooper."
14            MR. COOPER:  Yeah, for the record, Bob
15   Cooper, Your Honor, thank you.
16            Judge, we'd also like a list of the inmates
17   who were at the north facility for probably the two
18   weeks thereafter.  It's our understanding that
19   Mr. Garcia was, after the murders, transferred back
20   to the north facility.  And I think it's important
21   for us to know who was there, who he might have
22   talked to.  Because there is also indication in the
23   discovery from Frederico Munoz that there were
24   discussions had between Mr. Garcia and Frederico.
25   Frederico just pled last week.  I think it's really
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 507

```
 1    important for us to determine who was there, who was

 2    in the pods where he was located, and who else was

 3    located in that pod.

 4              THE COURT:  How quickly was he moved out of

 5    this unit where the murders occurred?

 6              MR. COOPER:  He went back that night, I

 7    believe.  So I would like to know who was there

 8    probably for the two weeks thereafter.  Because I

 9    think that's going to assist us in determining

10    whether or not there was a conversation, and who

11    might have been present.  So we would like that

12    information, just probably for that two-week period

13    after his return to the north facility.

14              THE COURT:  Well, do you want to speak on

15    that, Mr. Beck?

16              MR. BECK:  Yes, Your Honor.  I think Your

17    Honor's ruling -- the United States understands Your

18    Honor's ruling:  Two weeks before that day, up

19    through March 26, 2001.

20              I just want to raise the issue with the

21    Court that, as I explained, it's going to take time

22    and work to go back and compile these lists from the

23    records that existed in 2001.  And so, if the Court

24    is ordering us to turn that over to them, we would

25    ask for a month, instead of the 14 days, for this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   specific request.

2          THE COURT:  Why don't I do this:  I'll add

3   three days afterwards to give that.  And I'll deny

4   the rest of the request without prejudice.  If

5   something turns up from this, that you need it

6   broader, then we can relook at it.  Let's get that

7   started.

8          I don't see any problem with 30 days on

9   this one.  Do you, Mr. Castle?

10          MR. CASTLE:  No, Your Honor.

11          THE COURT:  All right.  So it will be two

12   weeks before the alleged meeting, and then three days

13   after the alleged murder.  And it will be every day

14   in between there.  But you'll have 30 days to do it.

15          Mr. Castle, anything further?

16          MR. CASTLE:  Thank you, Your Honor.

17   Nothing further.

18          THE COURT:  How about any other defendant

19   on this particular motion?  Anybody want to say

20   anything?

21          Mr. Beck, do you think there is anything on

22   this motion or these issues that we need to discuss?

23          MR. BECK:  Yes, Your Honor.  I think Ms.

24   Armijo has something.

25          THE COURT:  All right.  Ms. Armijo?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 509

```
 1            MS. ARMIJO:  Your Honor, in reference to
 2   one of the first requests, which was the Leonard
 3   Lujan interviews, I have checked with our right-hand
 4   paralegal.  She said there was an interview with the
 5   FBI on 12/13/15, Bates -- I can give the Bates
 6   numbers to defense counsel, but I have them disclosed
 7   on July 1, 2016; an interview with Mr. Lujan on
 8   2/27/14, disclosed on March 5th of 2016; a transcript
 9   of Mr. Lujan's interview taken on August 8, 2007, and
10   on September 12, 2007.  So I'm assuming that's the
11   interview with police, because he was interviewed
12   initially with state prosecution, and a state
13   detective; I think it was an APD officer.  Then, when
14   he gave information on these murders, then he was
15   reinterviewed by the State Police case agents to the
16   Castillo-Garza cases.  And they came up within a few
17   weeks and reinterviewed him.  And both of those
18   interviews, which would be one of the ones that was
19   specifically requested a little bit ago, was
20   disclosed on March 25, 2016.  There was only one 2008
21   interview that we have not disclosed, but we will get
22   that out within two weeks.
23            THE COURT:  All right.
24            MS. ARMIJO:  But I believe that that has
25   all been disclosed.  And if they would like -- you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 510

 1  know, the discovery coordinator -- we have no idea.

 2  We send stuff to Mr. Aoki.  We have detailed letters

 3  which state what it is.  But we have no idea how the

 4  defense is getting it.  And the way this is supposed

 5  to work, is if they don't have something, and if we

 6  say we've disclosed it, they're supposed to go to the

 7  discovery coordinator.  But I can assure the Court

 8  that those were disclosed on March 25, 2016.

 9            THE COURT:  Mr. Castle, anything else on

10  that?

11            MR. CASTLE:  I wasn't disputing that.  I

12  was talking about the ones we haven't gotten.

13            THE COURT:  All right.  It sounds like we

14  have rulings and agreements on that.

15            MS. HARBOUR-VALDEZ:  Your Honor?

16            THE COURT:  All right.  Ms. Harbour?

17            MS. HARBOUR-VALDEZ:  Thank you.  Cori

18  Harbour-Valdez for Edward Troup.

19            In addition to the pen packets that Mr.

20  Castle has requested as part of his discovery motion,

21  we would like to add a request that named an

22  alternative suspect who actually spoke of my client.

23  His name is Lorenzo Torrez.  He was not charged in

24  this indictment, but we'd like to add the pen packet

25  request.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          THE COURT:  Any problem with doing that,

 2    Mr. Beck?

 3          MR. BECK:  Yeah, Your Honor.  So I think

 4    going back for a second, I see the one problem that I

 5    think I mentioned earlier is that it may not exist.

 6    To the extent that it does exist, the New Mexico

 7    Corrections Department would give it to us.  To the

 8    extent that it doesn't, again, New Mexico Corrections

 9    Department would have to create it.  So our position

10    is that they should not have to do that.  That being

11    said, if it does not exist, I'm happy to reach out to

12    Ms. Harbour-Valdez, and we can discuss whether we can

13    come to an agreement on how to get that.  If not,

14    bring it back before the Court.  Or if Your Honor has

15    a ruling now, then --

16          THE COURT:  Well, go ahead and do the

17    review of it, if it exists.  If it doesn't exist,

18    then you can tell Ms. Harbour-Valdez it doesn't

19    exist.  But let's go ahead and do a review of that

20    one.

21          MS. HARBOUR-VALDEZ:  Thank you, Your Honor.

22          MR. BECK:  Is it Lawrence Torrez?

23          MS. HARBOUR-VALDEZ:  Lawrence Torrez.  It

24    was listed as both names in the discovery.  However,

25    Mr. Castle did not just ask for it, so I'm asking.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Okay.  We'll look.  Yeah, it's
 2     in the motion.  We'll look for both of those names,
 3     and I'll get with Ms. Harbour-Valdez and let her
 4     know.
 5              MS. HARBOUR-VALDEZ:  Thank you, Your Honor.
 6              THE COURT:  All right.  Anything else from
 7     the Government on that motion?
 8              MR. BECK:  Not from the Government, no.
 9              THE COURT:  Any other defendant on that
10     motion?
11              MR. LOWRY:  Your Honor, may I briefly?
12              THE COURT:  Yes, Mr. Lowry.
13              MR. LOWRY:  While we're in the discussion
14     of these 600 SNM files -- and I believe Mr. Castle
15     has pointed out a number of matters that the
16     Government should look to -- I don't want the Court
17     to consider silence a waiver.  So I just wanted to
18     point this out.
19              One of the recurring themes throughout
20     indictment and the search warrant affidavits in this
21     case that are filed by the Government is that the SNM
22     was organized in response to the prison riot in 1980
23     in Santa Fe.  And, of course, the Government bears
24     the burden of proving the existence of an enterprise
25     under the racketeering, and even the VICAR charges.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           Your Honor, one of the alternative purposes

2     of any kind of group might be something other than

3     the purposes that the Government has set forth in

4     their indictment.  And one of the things I'm

5     concerned about is that we need to review these files

6     with an eye towards this intergang warfare that the

7     Government has brought up in a lot of the indictment

8     and the search warrant affidavits.

9           So I just want to plant that bug in the

10    Court's ear that this isn't as simple as, perhaps,

11    what it was even discussed earlier, that the review

12    of these materials needs to go even farther to look

13    for why would a collective of individuals band

14    together?  And I would posit to the Court that safety

15    is a primary one.

16          If you go back and look at the history of

17    the Santa Fe riots, unfortunately, what you will

18    discover is what I would characterize as callous

19    indifference to the plight and the conditions inside

20    the facility, even at a time when prison officials

21    knew that a riot was imminent.

22          And what I would ask the Government to do,

23    when they're doing their page-by-page review of these

24    materials, is to look into materials that are

25    relevant to this intergang warfare, which would give

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 513

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 514

```
 1    credence to a defense theory of why people might want
 2    to band together to protect themselves, when you're
 3    living inside a corrections facility that
 4    historically has demonstrated an institutional
 5    failure in that capacity.  And I think that's going
 6    to be material to the defense case under Rule 16,
 7    Your Honor.
 8            I'm happy to work with the Government to
 9    discuss these and other pen packets that the defense
10    would want, especially on behalf of Mr. Baca.  I
11    don't want to waste the Court's time this afternoon.
12    On the alternative, I don't want my silence to be
13    considered a waiver either.
14            THE COURT:  Well, I think that the more you
15    want to send Mr. Beck as to theories, I think that's
16    helpful to him.  I know when I do my in camera
17    review, I like to have that sort of insight.  So I
18    would the encourage you to share it with Mr. Beck, so
19    that when he does that review, he can be thinking of
20    that possible theory and that possible defense.
21            MR. BECK:  I just want to note that I
22    haven't agreed to --
23            THE COURT:  You personally are going to do
24    it?
25            MR. BECK:  We haven't flipped the coin on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 514

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 515

```
 1    that one.
 2              THE COURT:  I'm holding out for you.
 3              All right.  Mr. Villa?
 4              MR. VILLA:  Your Honor, I'll try not to --
 5              THE COURT:  I'm not going anywhere.
 6              MR. VILLA:  And, Your Honor, I represent
 7    Mr. Perez, who joined both Mr. Castle's motions, but
 8    more germane the motion that Ms. Strickland argued,
 9    which are Counts 6 and 7.  And I was wondering if the
10    Court would adjust its order a little bit to reflect
11    some of the rulings that were for Mr. Castle.
12              So, for instance, I think the first issue
13    has to do with the DNA, which I think you made clear
14    what your order is.  The FBI files, I think, are the
15    same.  But the Government has agreed, with respect to
16    the STIU files, to review those for the suspects in
17    Count 1 and Count 2, as well as the alleged victims.
18    And we would ask that the order be the same for
19    Counts 6 and 7.
20              THE COURT:  Any problem with that, Mr.
21    Beck?
22              MR. BECK:  If defense counsel gets us a
23    list of those suspects, we would agree to do that,
24    Your Honor.
25              MR. VILLA:  That's fine.  I think that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 516

```
1    would dovetail with what we'll get to in just a
2    minute.  But the logbooks, I don't know if the Court
3    clearly decided the timeframe.  But I agree with Mr.
4    Castle, or perhaps I learned something new from Mr.
5    Castle today.  We all did.  But I think the timeframe
6    of two months and two months would be much more
7    appropriate than -- I think the Court's order this
8    morning was three months and two days or -- I don't
9    remember exactly what the Court ordered.
10             THE COURT:  It was three weeks.
11             MR. VILLA:  Excuse me, three weeks.  That's
12   what I meant to say.
13             THE COURT:  Three weeks and then three
14   days.
15             MR. VILLA:  So we would ask that the Court
16   reconsider that, given the information Mr. Castle
17   provided.  And this incident occurred in 2014, so
18   those logbooks should still exist.
19             THE COURT:  Mr. Beck?
20             MR. BECK:  I agree that the logbooks still
21   exist, Your Honor.  But I think the situation was
22   different when Mr. Castle came forward with an
23   allegation that included a meeting in 2001, versus
24   here, again, we don't have anything more.  So I think
25   the Court's ruling:  Three weeks and three days was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 516

1    appropriate.  If more information is brought to

2    light, if they have facts that demonstrate that a

3    wider time period may be germane to their case, then

4    the United States is willing to revisit that.

5              THE COURT:  Let's get this into your hands;

6    see if there is anything there.  I mean, you can come

7    back if you find something, and make a stronger case.

8    But right now, let's work with what we've got.

9              MR. VILLA:  And, Your Honor, maybe I'm not

10   as concerned as much about the front end, you know.

11   I agree, we don't have the exact same facts as in Mr.

12   Castle's case.  But the back end after the incident,

13   Mr. Castle talked about the movements and the steps

14   that are taken by intelligence and Department of

15   Corrections as they investigate these things, and

16   sort of, you know, moving people because they're

17   suspects, moving people because they're at risk,

18   moving people so they could be questioned.  Those

19   sorts of movements, I would anticipate might occur

20   beyond the three days.  So that's why I'm asking the

21   Court to consider a lengthier period of time after

22   the incident.

23             THE COURT:  Let's see what we got.  Then,

24   if you want to come back --

25             MR. VILLA:  Okay, Your Honor.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 820-6349                                                            FAX (505) 843-9492
                                                                                        1-800-669-9492
                                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              The next issue would be the pen packs.  The
 2   Government, I believe, agreed to produce those for
 3   the defendants and the alleged victims in Counts 1
 4   and 2.  And I would ask that the Court order the same
 5   for Counts 6 and 7.
 6              MR. BECK:  We don't object to that, Your
 7   Honor.
 8              THE COURT:  All right.
 9              MR. VILLA:  And then, the last thing, I
10   think, was the list of inmates in the pod at the
11   time.  And I believe it was pods -- for Counts 6 and
12   7, we're talking about pods 1A and 1B.  I think the
13   Government agreed to produce that with respect to Mr.
14   Castle and PNM.  We would ask that for Southern New
15   Mexico, where this incident took place.  And I'm not
16   talking about the six month timeframe, but at least
17   the date of the incident.
18              MR. BECK:  Your Honor, the United States
19   would object to putting that in the order, when it's
20   not requested in the motion.  But, again, if defense
21   counsel reaches out to us and requests that
22   information before coming to the Court with it, we
23   may be very willing to get NMCD to give it to us and
24   turn it over.
25              THE COURT:  Well, putting one of these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    shows on takes a certain amount of effort.  Let's see
 2    if we can get a little closure here.  If you're
 3    willing to do it, why don't I just require you to do
 4    it.  What exactly is the timeframe?
 5              MR. VILLA:  Your Honor, it's March 14 --
 6    March -- am I getting this?  I'm sorry, March 7,
 7    2014, was the date of the alleged murders that Counts
 8    6 and 7 --
 9              THE COURT:  So these are going to be inmate
10    lists?
11              MR. VILLA:  Yes, for pods 1A and 1B at the
12    Southern New Mexico Corrections facility.
13              THE COURT:  Let's do two weeks before, and
14    then three days afterwards.  We'll start there.
15              MR. VILLA:  I think that's all I had, Your
16    Honor.
17              THE COURT:  All right.
18              MR. BECK:  One second, Your Honor.
19              THE COURT:  Hold on just a second.  Can you
20    live with that, Mr. Beck?
21              MR. BECK:  Yes, Your Honor.  We'd ask
22    again, when the Court's going to order that that the
23    Court give us 30 days for that request instead of 14
24    like the others.
25              THE COURT:  All right.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1            MR. VILLA:  Fair enough.

 2            MR. BECK:  And while we're going back for a

 3    minute, we looked at -- during the lunch hour we have

 4    disclosed three -- excuse me, 10 recordings of the 13

 5    that Ms. Strickland said she believes are

 6    outstanding, and she doesn't have.  We don't know

 7    that those other three exist.  But as we said this

 8    morning, we're going to go back and look.  We also

 9    did disclose the DNA reports on March 25, 2016,

10    through the discovery coordinator, so they should be

11    on there.  And we've forwarded the PDF copies of

12    those documents to Ms. Strickland.  So just to clear

13    that up.

14            THE COURT:  All right.  Anything else, Mr.

15    Villa?

16            MR. VILLA:  No, Your Honor.

17            THE COURT:  Mr. Lowry, did you have

18    something else?

19            MR. LOWRY:  Your Honor, while Mr. Villa was

20    referencing the Molina murder, I would also ask, for

21    the sake of closure on that issue, if we could also

22    move the discovery to the Level 6 in Santa Fe, where

23    my client was housed at the time of the Molina

24    murder.  Obviously, my client was the only one who

25    was nowhere near the southern facility.  So just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   having the information with regard to Southern would

2   be insufficient for our case.  And, in fact, we'd

3   need the pen packs for both Level 6 for, you know,

4   that timeframe, and the individuals that were

5   transferred from Level 5 to Southern the day before

6   Mr. Molina was assaulted.

7          THE COURT:  Mr. Beck?

8          MR. BECK:  I guess I'm confused at how many

9   parts there were to that additional request.  It

10  sounded to me like he's asking for the list of

11  inmates at the Level 6 in PNM on the day of the

12  Molina -- the alleged Molina murder, and also a

13  certain number of pen packs.

14         THE COURT:  Well, let's start with the list

15  of inmates.

16         MR. BECK:  With the list of inmates, again,

17  the United States would object to that not being in

18  the order, noting that for the record.

19         THE COURT:  I'll note in the order that it

20  wasn't raised in the motion.

21         MR. BECK:  Right.  So if the Court is

22  inclined to grant that request -- which it sounds

23  like the Court is, and that's understood -- the

24  United States would ask for the same thing, for the

25  dates that the Court's willing to order.  If it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 521

```
 1    just the day of the murder, if the Court is going
 2    outside of that --
 3              THE COURT:  Let's just do the date of the
 4    murder on this one.
 5              MR. BECK:  We can do that in 14 days, then.
 6    We don't need the additional two weeks.
 7              THE COURT:  All right.  And what else did
 8    you want?
 9              MR. LOWRY:  That's it for now, Your Honor.
10    I mean, I'm happy to work with the Government to
11    identify other matters.
12              THE COURT:  What did you want, the pen
13    packs?
14              MR. LOWRY:  Well, Mr. Beck is absolutely
15    correct.  I'm more concerned, not with the pen packs
16    per se, but with the list of inmate housing
17    assignments during that timeframe.  Because the way
18    the defense understands the nature of their argument
19    is, somehow Mr. Baca was able to communicate with
20    individuals who were outside of Level 6.  And,
21    frankly, I think that was practically impossible to
22    have happened, if the procedures and policies were
23    being followed within the institution.
24              So it would be nice for the defense to
25    know, from materiality in preparation of the defense,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    who was housed in Level 6 in the two weeks before the

2    murder, and were there any transfers between Level 6

3    and Level 5?  And then from Level 5 down to Southern.

4    And I believe the transfer, as alleged in the

5    indictment, took place -- which would have been March

6    6, 2014, the day before the allegation of the Molina

7    murder.

8            THE COURT:  All right.  Well, let's just

9    leave it, as you get the inmate list for the date of

10   the murder for that facility, and then you can talk

11   to Mr. Beck about pen packs and anything beyond that.

12           MR. LOWRY:  Thank you, Your Honor.

13           THE COURT:  Anything else on that motion?

14           On this third motion, the motion for

15   specific discovery, that's 678, is there anything

16   else on that?  I mean, we sort of took the first

17   motion for specific discovery, but is there going to

18   be other things?

19           MR. BURKE:  Not much, Your Honor.

20           THE COURT:  But there is some?

21           MR. BURKE:  There is some.

22           THE COURT:  All right.  Let's do this:

23   Let's go ahead and take our break at this point, and

24   then we'll come back in and that will be the first

25   thing front and center.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                   The other thing that I want us to think
 2       about is the Number 698 that has just been filed.  Is
 3       that something that the Government wants to go ahead
 4       and discuss while we're together?  One possible
 5       procedure is, if you're not totally prepared, I could
 6       hear from Mr. Villa on it, and then --
 7                   MR. BECK:  Is there a title?
 8                   THE COURT:  Yeah, it's the joint motion for
 9       disclosure and production of confidential informant.
10       There is another one, Document 700, which is the
11       defendant's motion to show cause.
12                   MR. BECK:  Yeah, we're not ready to discuss
13       those, Your Honor.
14                   THE COURT:  I guess what I was thinking
15       about doing -- think about this during the break --
16       could I go ahead and hear argument on those two
17       motions?  I won't rule; let you file a response, and
18       then rule, perhaps, without getting back together?
19                   MR. BECK:  Your Honor, we'd object --
20                   THE COURT:  Just think about it, talk about
21       it.  We'll take our break now, and then we'll come
22       back in and we'll start with the second motion for
23       specific discovery.
24                   (The Court stood in recess.)
25                   THE COURT:  All right.  Mr. Burke?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BURKE:  Thank you, Your Honor.  I would
 2    like to make a record on my motion.  It won't take
 3    long.  I wanted to adopt the arguments of
 4    Ms. Strickland on her motion to compel, Document 668.
 5              I wanted to adopt the arguments of Mr.
 6    Castle on his motion for discovery, which was
 7    Document 539, particularly the following:  His
 8    arguments regarding the three tiers of authority that
 9    the Court has; due process and Giglio, Rule 16, and
10    the Court's supervisory authority.
11              I adopt his argument that this would be an
12    appropriate case in which the Court might exercise
13    its supervisory authority.  And my observation is
14    that the Court is doing that to some degree.
15              I adopt the -- again, the authority cited
16    in our reply, which is Document 712, as well as the
17    authorities in the supplemental filing last night;
18    particularly, your statement in the Hykes case that
19    evidence being material might be -- is of a strong
20    indication that it will play an important role in
21    uncovering admissible evidence, aiding witness
22    preparation, or assisting impeachment or rebuttal.
23    The law regarding Rule 16 is the minimum law.  The
24    law relating to accomplice testimony should be taken
25    into consideration, as well as the duties of a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 525

1    prosecutor to investigate, and the cite that the

2    prosecution team can include state and federal

3    authority, citing Kyles.

4           I adopt the statement that is in our papers

5    of Judge Matsch in the McVeigh case, that all doubts

6    regarding disclosure should be resolved in favor of

7    disclosures, as well as the cites from the U.S.

8    Attorney's manual and the Ogden memo, which are in

9    our papers.

10          Finally, I adopt Mr. Castle's comments

11   about what will happen if the Government waits until

12   mid February, our trial having been placed on the

13   trailing calendar for March 6, 2017.

14          Your Honor, the Government's arguments in

15   opposition to our request -- and I understand that

16   there is -- the option is not as strong as it was

17   when we began the day, but the first argument is that

18   we just don't know whether we can get the New Mexico

19   Corrections Department to give us this stuff, as

20   though they were some faraway, unreachable entity

21   that was totally at arm's length.

22          And in this regard, Your Honor, I would

23   remind the Court, or ask the Court to consider

24   Exhibit B to our reply.  And it refers to an FBI

25   document.  And on page 6 of that document, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 526

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 527

1    following appears:  "Additionally, this investigation

2    will be coordinated with the U.S. Attorney's Office;

3    the Second Judicial District Attorney's Office,

4    Albuquerque; the Third Judicial District Attorney's

5    Office, Las Cruces; and appropriate local

6    investigating agencies."

7            On page 7 of that report, it is stated by

8    the FBI in their initial report on the investigation

9    that preceded this indictment, "The Albuquerque

10   division will initiate the investigation of captioned

11   matter.  At the appropriate juncture, the Organized

12   Crime Unit proposal will be authored to incorporate

13   joint efforts of the participating law enforcement

14   agencies, including the Albuquerque Police

15   Department, the Bernalillo County Sheriff's Office,

16   the New Mexico Department of Corrections, which

17   includes the New Mexico Department of Probation and

18   Parole.  In addition to the assistance of the

19   Albuquerque Police Department, the Bernalillo County

20   Sheriff's Office, the New Mexico Department of

21   Corrections, AUSA Reeve Swainston has expressed the

22   full cooperation of the United States Attorney's

23   Office."

24           This has been a joint investigation from

25   the beginning.  And that is Exhibit B.  As it turns

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 527

 1   out, Exhibit B to the reply, in the upper left-hand

 2   corner of that document, reflects a case number

 3   ending in AQ62017.  The serial number on that

 4   document is Number 1.  The investigation began

 5   September 14, 2008.  They were involved integrally

 6   from the beginning.  This is a joint investigation.

 7            With regard to the contention that this is

 8   a fishing expedition, I'm going to try to show a

 9   document to the Court, which is Troup Exhibit A.

10   Your Honor, I would call the Court's attention to the

11   paragraph in the middle of the page that begins, "At

12   the initiation of the meeting" -- and this is a

13   September 2013 -- or actually, August 2013 meeting --

14   "it was stated that the evidence was not sufficient

15   to merit a federal prosecution."  That suggests

16   Brady.

17            The next paragraph:  "After AUSA Tierney

18   allowed the case agent to present additional evidence

19   and information going on, he expressed interest.

20   AUSA Tierney requested that the case agent put

21   together binders containing the following information

22   for each suspect and each cooperator witness for the

23   Fred Sanchez murder from 2007."  That is Count 3,

24   Your Honor.

25            The report goes on, and it lists the things

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 528

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 529

1   that a prosecutor would want.  And we want those

2   things, too.  And they have them.  They are in

3   binders.

4           If one turns to the next page, if I can do

5   this:  11 days later, in the paragraph beginning, "On

6   August 26, 2013, the case agent met with AUSA Tierney

7   and AUSA Jack Burkhead in Albuquerque, and provided

8   the requested material on the Fred Sanchez murder."

9           Those binders exist.  They are available.

10  They should be provided to us.  We are not on a

11  fishing expedition.  We are merely asking for

12  documents that we have been able to glean do exist,

13  from the discovery that we have been able to review.

14          The Court has the authority to tell the

15  prosecutors to get the binders to the defendants

16  within a week.  I suggest that that would be a fair

17  thing to do.  It would promote justice.  It would

18  allow us to mount a defense.  And frankly, it would

19  take one issue off the prosecution's plate, because

20  they could then concentrate on other things.

21          And, Your Honor, the same is true of the 17

22  items that we listed in our motion, and that

23  co-counsel and I outlined in our reply.  We didn't

24  just make them up.  We're not fishing.  We've seen

25  things that tell us these documents exist.  And we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 529

Appellate Case: 20-2058 Document: 010110415675 Date Filed: 09/29/2020 Page: 530

```
 1   believe the Court should order them.  I appreciate
 2   very much the Court inquiring of the prosecutor,
 3   isn't it true, sir -- and I asked it in a leading
 4   way, because that's my inclination -- but the phone
 5   call:  You could call them; couldn't you call them?
 6   And the prosecutor says, Yeah, we could call the New
 7   Mexico Corrections Department.  Do they listen to
 8   you?  Yeah, they do.  And I suggest that, if Your
 9   Honor directs them to do that, they will do that.
10   And the New Mexico Corrections Department will find a
11   way to get all of these requests answered promptly.
12   And that is our request.  And that's why we outlined
13   them.  They all exist.
14          There is one that was master roster, I
15   think it's Number 50 -- and I could be wrong about
16   that -- we said we want the master roster.  The
17   prosecution poked fun and said there is no master
18   roster.  And then we presented a document that's in
19   the reply, there is a master roster.  And we'd like
20   to get that, too.  It's relevant and it's material.
21   And those are our requests.
22          I could go through -- my list was a little
23   different than Mr. Castle's -- I added a few and took
24   out one.  And so I'd be happy to do that, if the
25   Court would like to do that.  Although I note that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 530

1   the Court has made some orders with respect to some

2   of those requests.

3               THE COURT:  Well, is there anything in your

4   motion that I haven't ruled on that you need action

5   on?

6               MR. BURKE:  Well, there is, Your Honor.

7   Our Number 1, we asked that unredacted copies of all

8   documents provided in discovery be made available.

9   They black out the names.  We know that they're

10  informants.  And in some other places we can figure

11  out who they are.  But they should stop redacting

12  these documents in discovery.  There is no good

13  reason to do that.  So that's a request that's

14  different than Mr. Castle's.  That's Number 1.

15              You've covered 2.  In Number 2, Your Honor,

16  I did --

17              THE COURT:  Well, let me deal with Number

18  1.  Mr. Beck?

19              MR. BECK:  Your Honor, we've redacted a few

20  of the names.  I think they assert they're

21  eyewitnesses and earwitnesses and co-conspirators.

22  We've done that because we consider them to be

23  confidential informants.  We don't think that the

24  defense has made the showing that this Court required

25  in United States against Aguilar.  That's at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 531

```
 1    paragraph 1, page 8 of our response brief.
 2            We've also done it because of serious
 3    concerns that have been voiced in this hearing and
 4    others about names of those persons getting out
 5    amongst the defendants.
 6            And we've had -- we've tried to put in
 7    place measures to safeguard that to some extent:  The
 8    tablets.  But, as I'm sure the Court is aware, those
 9    have not been successful.  The defendants have shared
10    the tablets amongst each other, and the names have
11    gotten out.
12            So those are the two reasons that we have
13    redacted a number of those names.
14            MR. BURKE:  Your Honor, one of my
15    colleagues --
16            THE COURT:  Let me make sure that I
17    understand.  You're saying what's been blacked out
18    are all informants?
19            MR. BECK:  Yes.  The confidential
20    informants, cooperators.
21            THE COURT:  So I guess it would seem to me
22    that we'll have to take these one at a time and make
23    the showing under Aguilar that's necessary for the
24    Court to order disclosure.  I don't know if you want
25    to undertake that this evening, or if you're -- if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 532

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 533

```
 1   that's for another day, or what.
 2           MR. BURKE:  I think it is for another day.
 3   Even this is clarifying, Your Honor, and we can move
 4   forward.
 5           I do need to make a record regarding my
 6   client, Mr. Troup.  He's not caused any problems.
 7   And I also want to make a record regarding the
 8   tablets.  One of my colleagues filed a motion
 9   regarding the recent search warrant, and pointed out
10   the truth of the matter is that the tablets have not
11   been misused.  The discovery on there is what was put
12   on there for the very purpose that it was available
13   to others.  And I just wanted to make that record.
14           Your Honor, Number 2, I happened to list
15   all of the FBI files that were known to me in that
16   reply.  And then it turns out Mr. Castle found two
17   others.  And those were attached to the appendix to
18   the status report that he filed.  So that may help
19   the Government to look further regarding those files.
20   They should be available.  The FBI should be able to
21   press a button and say, Give me the file for all of
22   these particular case numbers.  And the chances are
23   that those documents are one of two things:  They're
24   either inculpatory or exculpatory.  And what we get
25   in discovery is the inculpatory documents.  But what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    we want is the exculpatory documents.

2              THE COURT:  How many files did you have

3    listed on your -- three?

4              MR. BURKE:  Your Honor, in Document 712,

5    page 12, I list six -- excuse me, five.  And Jim

6    Castle found two others, which are in the appendix to

7    the status report that he filed prior to the hearing.

8              THE COURT:  And these are federal files?

9              MR. BURKE:  They are FBI case numbers, just

10   like that.

11             MR. BECK:  So I think we've already

12   discussed these at length.  The United States would

13   point out that Exhibit B, that was shown on the

14   monitor earlier, was a case from 2008, which the

15   United States did not prosecute, did not indict.

16   Those case agents are not involved in this

17   investigation that led to these indictments.  Just

18   point that out for the record.  We understand that

19   the Court's already ruled on those, but I'm just

20   pointing that out for the record.

21             THE COURT:  So you're going to look,

22   though, at this file?

23             MR. BECK:  That's what the Court's ordered,

24   yes.

25             MR. BURKE:  Your Honor, with Number 3, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 534

```
 1    believe that the Government will be getting the

 2    Security Threat Intelligence Unit files on the

 3    inmates who were at Southern New Mexico Corrections

 4    facility on June 16, 2007, unless I misunderstood the

 5    concession that I thought I heard earlier.

 6              MR. BECK:  Yeah, that is a

 7    misunderstanding, Your Honor.  I think what we've

 8    agreed to is we've agreed to review the STIU files

 9    for the defendants.  And we've agreed to review the

10    STIU files for the list of suspects that were

11    identified by Mr. Castle in the first specific

12    discovery motion.  We've agreed to review the STIU

13    files for suspects that I believe Mr. Villa will

14    point out to us from the second discovery motion.

15    And that is it at this time.

16              So that same thing would go here.  We will

17    still review the defendants' STIU files, which I

18    think covers part of this Number 3, but we have not

19    been provided any information on other suspects, and

20    we have not agreed to review the STIU files on all

21    inmates who are SNM CF on June 16, 2007.

22              MR. BURKE:  Well, they should, Your Honor,

23    because this was a homicide that happened -- happened

24    in a particular pod.  And there were approximately a

25    dozen people in the pod, and all of those people are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 535

1    suspects, and all of those files should be provided

2    to us, in my opinion.

3            THE COURT:  I'll leave the ruling the way

4    we hammered it out earlier.

5            MR. BURKE:  Your Honor, Number 4 is

6    criminal history impeachment materials, STIU files,

7    for any cooperating informant witness.  There was

8    quite a bit of discussion about that earlier in the

9    hearing.  But we really do have an absolute need to

10   fully investigate each and every government

11   informant.  And I don't know how we can possibly go

12   to trial, if we don't get -- in March -- if we don't

13   get that information soon.

14           Number 5 is the pen packs, and all inmates

15   housed in the blue pod on June 17.  I set forth our

16   argument in there.  I note that the Court has

17   repeatedly cautioned the prosecutors against

18   gamesmanship and concealment.  And I don't understand

19   why we don't have those pen packs by now.

20           MR. BECK:  I guess I'm responding to that

21   one.  So the pen packs for FS, we said we would give

22   that over.  For the other pen packs, we said that we

23   would give the defendants' pen packs over.

24           I understand this request to be all inmates

25   housed in blue pod on June 17, 2007, which goes

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   beyond that which the Court's ordered, which the
 2   United States has agreed so far in this hearing.  I
 3   think the way that we've been viewing it is that,
 4   like the STIU files, if the defendant has or the
 5   defendants have specific suspects they believe, we
 6   would request of New Mexico Corrections Department,
 7   if those exist, that they turn them over.  And if
 8   not, we would give them that information and go from
 9   there with the corrections department's request to
10   not provide those, or maybe work out some kind of
11   deal where they would print those out.
12            So I think the Court has spoken on that
13   one.  But not in this motion.
14            MR. BURKE:  I've stated my position, Your
15   Honor.
16            THE COURT:  All right.  Do you have
17   anything -- I don't want to cut you off, but I mean,
18   is there anything else that we haven't -- that I
19   haven't already ruled on?
20            MR. BURKE:  Well, the next one has been
21   given short shrift.  I think we need more information
22   about the SNM that they have available.  They've made
23   the SNM the linchpin of this case.  And they're
24   acting like we're asking for the moon, the sun, and
25   the stars, to say, Give us what files you have on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1   SNM.  But the SNM is what this case is all about.  So

2   that's a little different than what we've argued

3   about before.

4            THE COURT:  Well, I think we've talked

5   about how we're going to review the documents at the

6   prison.

7            MR. BURKE:  And then the other one that's a

8   little different, Your Honor, was last one, Number

9   16 -- actually, the next to the last.  The documents

10  relating to the New Mexico Department of Corrections'

11  Guidelines for Assessing, Classifying, and Validating

12  an Inmate.  We have all these documents where it says

13  "known member of the SNM" or "validated member."  But

14  we don't have the criteria by which those assessments

15  were made.  We're entitled to that.

16            THE COURT:  Mr. Beck?

17            MR. BECK:  The United States, as pointed

18  out in the brief doesn't -- disagrees that the

19  defendants would be entitled to that information.

20  Again, that's the Corrections Department's --

21  assuming -- I would assume guidelines, procedures,

22  how they classify and consider those.  And so I don't

23  think that -- again, I don't think it's proper for

24  us -- I don't think we have custody or control over

25  those specific regulations and guidelines, as opposed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 538

```
 1    to actual files.
 2            And then, the second point being the way
 3    that the New Mexico Corrections Department or STIU or
 4    STG classifies defendants as being a member,
 5    validated, suspected, of the SNM, does not fall under
 6    Rule 16.  Because what we have to prove in this case
 7    is not that STIU or New Mexico considered these
 8    defendants to be members or suspects of the SNM.
 9    It's that they actually were.  So the way that New
10    Mexico Corrections Department classifies these
11    defendants is actually irrelevant to any matter at
12    this trial.  So it wouldn't be admissible.
13            MR. BURKE:  This may be for another day,
14    too, but they shouldn't be permitted to testify that
15    so and so is a member of a gang, if they're not
16    willing to tell us what the criteria is for
17    membership.
18            THE COURT:  Will you have people from the
19    Department of Corrections testifying that so and so
20    was a member of the gang?
21            MR. BECK:  I think we will have -- again, I
22    don't think that we've laid out a trial plan.  I
23    would expect that we're going to have corrections
24    department officers, a gang expert, testify that
25    based upon the evidence, and based upon their
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 539

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 540

 1    experience, these qualities of the defendants:

 2    Tattoos, statements, letters, all prove that they are

 3    in the SNM.  And those expert materials certainly

 4    will be subject to the regular discovery rules in due

 5    time.

 6              THE COURT:  I guess if the -- I guess if

 7    you're going to have corrections people come in and

 8    say Mr. Baca is a member of the SNM Gang, then I

 9    guess I do think you should produce something that

10    indicates how they make that determination.

11              If, on the other hand, you're going to have

12    an expert do it, or if you're going to have other

13    testimony establish that, then I would be inclined to

14    deny the request.  So at the present time, I'll deny

15    the request.  But keep in mind that if you decide

16    you're going to prove up gang membership with

17    determinations by prison officials, you'll need to

18    produce the criteria by which they're determining

19    gang membership.

20              MR. BECK:  Understood, Your Honor.

21              MR. BURKE:  Thank you, Your Honor.  Because

22    where that goes, of course, is a Daubert hearing, in

23    which that would be discoverable.

24              And then finally, Your Honor -- again,

25    there was great snickering at this request:  "Any and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 540

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 541

1    all documents in the Government's possession relating

2    to the philosophy, practices, and activities of the

3    SNM in the Department of Corrections."  But that,

4    once again, is the gravamen of the indictment.  They

5    are saying that the SNM has these rules and these

6    philosophies.  What evidence is there of that?  The

7    defense is entitled to receive that information.

8           MR. BECK:  I think a lot of that

9    information, Your Honor, is in the discovery that

10   they've been provided, in the 302s, the statements of

11   other defendants, the statements of other people

12   involved in the gang throughout the years.

13          Again, I don't think that this request is

14   proper in the criminal context under Rule 16, or

15   under any constitutional obligations that we have.

16          THE COURT:  Well, I think we've worked out

17   the mechanism for getting some of that information.

18          MR. BURKE:  Yes, Your Honor.

19          THE COURT:  There may be some in file

20   Number 599 that we never get.  But I think we got a

21   mechanism in place for you to get some of that.

22          MR. BURKE:  I agree with you, Your Honor.

23          THE COURT:  And you can come back, if some

24   of these documents you're going to get as a result of

25   this hearing, you can come back and say, Well, this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 541

1    is what we found.  And I can take another look at it.

2              MR. BURKE:  I will be doing that, Your

3    Honor.

4              One thing, Your Honor, could I ask for a

5    ruling on Number 15, our master roster request, which

6    I pointed in our reply there are documents.  I think

7    you commented on that.

8              MR. BECK:  Yeah.  I think the earlier

9    classification was that we poked fun, and that they

10   found that document and presented it to us -- and I

11   wish I had it in front of me, but I think it was

12   provided as an exhibit to their reply -- I put that

13   statement -- indeed, it's page 3 of 6 of Document

14   712-4.  It's talking about what someone interviewed

15   by -- someone interviewed in a 302 report said during

16   this interview, that there is a master roster known

17   as the Bible within the corrections department,

18   printed out and handed to people.  I have put that in

19   front of the New Mexico Corrections Department, and

20   I've asked them.  And as we've said in the briefing,

21   no one knows what that document is.

22             THE COURT:  What do you think the master

23   roster constitutes?

24             MR. BURKE:  Well, I believe what I'm

25   reading, Your Honor.  It says, "The master roster

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    contains sensitive material, known as the Bible

2    within the corrections department.  Two copies were

3    printed and provided to each facility."  That's what

4    I believe it is, since that's what it says.

5               MS. HARBOUR-VALDEZ:  And it says it was

6    provided by the Department of Corrections, Your

7    Honor.

8               THE COURT:  So you've taken that

9    description --

10              MR. BECK:  Right.  And again, what they're

11   reading is a source report.  That's someone telling

12   them that.  I have shown that statement --

13              THE COURT:  Who is the source of this?

14              MR. BURKE:  It's another one of those FBI

15   reports, Your Honor.

16              MR. BECK:  It says that it's Geraldine

17   Martinez, who I believe was -- it says in this source

18   report that she was a law librarian at the SNM CF

19   facility, I believe.

20              MS. HARBOUR-VALDEZ:  But to answer your

21   question, Your Honor, the source is someone who is

22   not named.  It says, "Source who is not in a position

23   to testify."  So we don't know who the person is.

24              MR. BECK:  Right.  So what I'm saying is

25   that came from a source saying that Geraldine

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 543

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 544

1    Martinez provided these things.  I have taken that

2    document in front of the NMCD, and they have read it

3    with their own eyes, and don't know what that is.

4    And they've asked others in the corrections

5    department, and they don't know what that is.

6            THE COURT:  And the status of Geraldine

7    Martinez?

8            MR. BECK:  Right.  So that's a 2001 source.

9    So we don't know the status of Geraldine Martinez.

10           THE COURT:  Where is that person?

11           MR. BECK:  We don't know.  That's what

12   we're saying.

13           THE COURT:  But that was the librarian?

14           MR. BECK:  That's what the confidential

15   source states in this statement, was that Geraldine

16   Martinez was the law librarian at this point.

17           THE COURT:  And made that statement?

18           MR. BECK:  Right.

19           MS. HARBOUR-VALDEZ:  No, Your Honor, she

20   didn't make the statement.  The source, who is

21   unnamed, is saying that Geraldine Martinez obtained a

22   copy from someone at the Department of Corrections,

23   and provided it to members of the SNM.

24           MR. BECK:  Right.

25           THE COURT:  And we don't know where this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 544

1    Geraldine Martinez is?

2              MR. BECK:  No, Your Honor.

3              THE COURT:  If the representation at the

4    present time is the Government cannot locate this

5    document, then I have to deny the request.  I would

6    like the Government to poke around a little bit more.

7              MR. BECK:  We have, Your Honor.  The

8    beginning of that source report lists a New Mexico

9    Corrections Department employee, officer, however you

10   want to classify that person, that was there.  That

11   person is no longer with the corrections department.

12   The corrections department is trying to track down

13   that person to at least interview him, and ask him

14   who was there in 2001, whether he knows what this

15   document is.

16             THE COURT:  Why don't we also try to have

17   the FBI locate Geraldine Martinez, and put that

18   document in front of her, and see if -- you know, see

19   if she -- if I've got two people confirming that a

20   document exists, it gives me a little bit of pause.

21   If it's just one unnamed source, then --

22             MR. BECK:  Well, no, I think -- and I'm

23   sure I'll be corrected -- I think it is one unnamed

24   source who is confirming that this document exists,

25   and that two copies were provided.  No one else,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 545

 1   except for the source, has said that document

 2   actually exists.

 3            THE COURT:  Right.  But I guess, if

 4   Geraldine Martinez says, Yeah, I got a copy, and I

 5   handed it to the SNM Gang, I think that would be

 6   important.  So I'd like to track it down.  I won't

 7   order the Government to do any production.  It's

 8   something they don't know exists at the present time.

 9   But I do think we ought to take it one step further,

10   and see if we can find this Geraldine Martinez.

11            So that will be the ruling:  Be denied

12   without prejudice.  See if we can get more

13   information on it.

14            MR. BURKE:  Very well.  Thank you.

15            THE COURT:  Anything else you need rulings

16   on, Mr. Burke?

17            MR. BURKE:  Not now.

18            THE COURT:  Ms. Armijo has something here,

19   so you may want to stay at the podium for a second.

20            MS. ARMIJO:  Your Honor, one of Mr. Burke's

21   first -- or his Troup Exhibit A refers to binders

22   that they are saying that we have in our possession.

23   It was the meeting regarding Mr. Tierney and Mr.

24   Burkhead in the Albuquerque office.  We disclosed

25   this document because, when we were ordered by the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 546

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 547

1    Court to go back and find any files that the U.S.

2    Attorney's Office had in reference to the SNM, this

3    was the file -- this FBI number was the file that we

4    came up with.  And unfortunately, when the file was

5    sent to the Albuquerque office, Mr. Burkhead and

6    Mr. Tierney don't know where it is.  It's

7    disappeared.  But they have no file that they were

8    ever in possession of, or -- I think Mr. Burkhead was

9    actually the assigned AUSA.  And he -- they looked

10   high and low for it for a very long time in offices

11   everywhere.  We've looked in Las Cruces, to the prior

12   AUSAs who were involved in that investigation.  As

13   best we can tell, it was sent to the Albuquerque

14   office.  And nobody knows where it is.

15          That being said, what we did do is we went

16   back and we asked the FBI if they could look up the

17   numbers of the reports from this investigative file.

18   And we have been disclosing those.

19          So to say -- if the Court orders us to

20   disclose binders that we are in possession of from

21   this investigation, we don't have them.  But we have

22   done our best to replicate anything that was in

23   there.

24          THE COURT:  If they turn up --

25          MS. ARMIJO:  If they turn up, you'll be the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 548

```
 1   first to know, Your Honor.  But we have done our
 2   best.  But I think that was back in February.  It was
 3   shortly before Your Honor took over the case.
 4            THE COURT:  All right.
 5            MR. BURKE:  I have a comment.
 6            THE COURT:  Mr. Burke?
 7            MR. BURKE:  In the document -- this
 8   particular document, September 2013.  The serial
 9   number is 603 for that case file, ending in 017.  The
10   document that is Exhibit B is serial Number 1 for the
11   same case number.  There were 602 documents in that
12   file that exist now actually.  Because the FBI can
13   press a button and say, Give me all of that
14   particular case file.  And I believe that's what they
15   should be ordered to do.  Because what has happened
16   instead is the FBI is looking for some things, and of
17   course, they are inculpatory, and they find those.
18   But they can reconstruct that, if they're ordered to
19   do that.  And I'm asking the Court to do that.
20            THE COURT:  Have y'all -- is that an
21   accurate description of what could happen to recreate
22   the file?
23            MR. BECK:  I think that's what the Court's
24   ordered.  I think what Ms. Armijo was referring to is
25   that these binders do not exist.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  The binders themselves?
 2              MR. BECK:  The file that the Court has
 3    already ordered us to go back and look through is
 4    what we have produced.  And we've already said --
 5    you've already ruled that we're going to do that
 6    again.  So --
 7              THE COURT:  Okay.  Anything else, Mr.
 8    Burke?
 9              MR. BURKE:  No, Your Honor.
10              THE COURT:  All right.  Thank you, Mr.
11    Burke.
12              MR. BURKE:  Thank you.
13              THE COURT:  Anything else?  I guess that
14    takes care of the motions that were --
15              MR. BECK:  Nothing else on that from the
16    Government, Your Honor.
17              THE COURT:  And those are the three motions
18    that were noticed for today's hearing.
19              Let me put my toe into a few items and see
20    what happens.  Mr. Villa has filed a motion, 698.  I
21    understand that you do not --
22              MR. BECK:  Yeah, your Honor, we are not
23    prepared to discuss that.  We're not prepared to hear
24    argument, give argument.  I'm sure the Court can
25    appreciate, just like the Court likes to have issues
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 549

 1   fully briefed before the Court hears them, the United

 2   States likes to have that opportunity to put pen to

 3   paper, brief up a response.  And afterwards, if the

 4   Court has clarifications or issues, we can tackle it

 5   at that time.  But I'm sure the Court has been

 6   working hard to prepare for this, as have we.  And we

 7   just have not at all prepared to hear or articulate

 8   points in response to that motion.  So we do oppose

 9   having any kind of argument on that motion today,

10   Your Honor.

11           THE COURT:  Mr. Villa, you called and asked

12   Ms. Wild to have me take up this motion that you

13   filed.  What -- given Mr. Beck's statements, what do

14   you want?  What are you wanting to do today with

15   that?

16           MR. VILLA:  Your Honor, I called Ms. Wild

17   on a number of matters yesterday, and I probably

18   should have been more clear with her about what my

19   priorities were.  But I think, in fairness, if I were

20   in the Government's shoes -- I mean, they're still

21   within their deadline to file a response.  If I were

22   in their shoes, I would understand.

23           So I'll defer to the Court.  I'm happy to

24   present my argument.  I mean, I certainly would enjoy

25   the benefit of a response to argue.  But I understand

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 550

```
 1    what it takes to get us all here.  So I'm at the

 2    pleasure of the Court, and can go either way.

 3            THE COURT:  Well, I've read the motion.

 4    You know, I'm reluctant to say much without having

 5    the Government filing a response.  But I've read the

 6    motion.  I do think the Government is going to need

 7    to take a hard look at this one.  Because, if what

 8    the situation is, as Mr. Villa has pointed out, I

 9    think it is one of those where it may require

10    disclosure.  But I'll certainly wait to hear that.

11            MR. BECK:  I think we --

12            THE COURT:  I guess one thing that could

13    happen is, Mr. Villa could make whatever points he

14    wants to make orally, and then you could file a

15    response.  And then I could go ahead and rule at that

16    point, without us getting back together.  But

17    that's --

18            MR. BECK:  I guess I'll leave it with the

19    Court, Your Honor.  I mean, as I said, the United

20    States hasn't prepared for this.  We haven't read the

21    brief.  We haven't prepared a response to it.  That

22    being said, knowing what I know about Your Honor and

23    the Court, I'm sure that we're going to find pretty

24    clear guidance how the Court would rule on this.

25            As I've said, the United States' preference
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 551

 1    would be not to have argued on it; to respond to it,

 2    and to have argument at that point.  But we'll leave

 3    it to the Court.

 4              THE COURT:  What do you want to do, Mr.

 5    Villa?

 6              MR. VILLA:  Again, Your Honor, I mean, I

 7    find myself sort of a little torn here.  I mean,

 8    professionally, I understand if I was in the U.S.

 9    Attorney's shoes, I'm still within my deadline to

10    respond, I would prefer that opportunity.

11              On the other hand, given the way this case

12    has gone, and the scheduling and things that are

13    required to get us here to court, I'm happy to

14    proceed.  I would certainly want the benefit of a

15    reply, regardless of which way the Court proceeds on

16    this.  And I know that the Court will, you know, in

17    an oral argument, having reviewed the briefs of all

18    the parties, can probably tell us exactly where you

19    want us to go.  And I think you can do it either way.

20    I can do it either way.

21              THE COURT:  Let me leave it as what I've

22    said.  I think the Government needs to take a hard

23    look at this one.  Because if what you're

24    representing the evidence to be, it seems to me this

25    may be one of the situations where the CI has to be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 552

 1    disclosed.

 2          But let's let the Government do its thing,

 3    and we'll go from there.

 4          MR. VILLA:  Yes, Your Honor.

 5          THE COURT:  All right.  Thank you, Mr.

 6    Villa.

 7          MR. VILLA:  Thank you.

 8          THE COURT:  Let's take up Document 700.

 9    And again, we may be in a position where the

10    Government is not prepared, but I did understand that

11    some things had been -- there had been maybe some --

12    y'all had been discussing this during the day, and

13    may have worked something out.  Mr. Benjamin?

14          MR. BENJAMIN:  Yes, Your Honor.  I did have

15    a discussion with the prosecution at the break.  I

16    don't know as it's necessarily fair to say we've

17    worked something out.  But what occurred that formed

18    the basis for my filing of Document 700 has happened.

19    It's not something that we can go back and change.

20    The prosecution -- I think I'll refer to them as the

21    team -- they -- I don't know what the actual title

22    is, but they've told me that they're not in

23    possession of the documents.  So at this point in

24    time, I think we can wait on that until they've

25    briefed it, and the Court has set the matter for a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    hearing.

2            The only thing that I would ask -- and I

3    think the Court has the inherent ability to do this

4    today, because in Document 299, Judge Gonzales, when

5    he was presiding over this case, and I think the

6    order, the protective order as well, that I

7    referenced in 589, I believe that the intent for

8    those was for the Government, if it's seeking to

9    invade -- and that's my position, Your Honor, the

10   attorney-client relationship -- which is what I think

11   they did when they raided Mr. Gallegos' cell at

12   Otero -- I think they need to come to this Court, who

13   is aware of the posture in the case, the facts in the

14   case and the many facets that this case has, as

15   opposed to filing a warrant in a separate cause

16   number, and that would be the only concern that I

17   would ask the Court to at least consider today.

18           THE COURT:  Is there a way that maybe we

19   could just make sure that, if you're going to seek a

20   search warrant, rather than it coming to me,

21   necessarily -- particularly, if I'm going to have to

22   review it down the road -- I'm wondering if we could

23   just get a commitment from the Government that, if

24   you go to a magistrate judge for a warrant, you'll

25   fully advise them about the -- where this case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 554

1    stands.  I mean, I don't know if there is any real

2    question about it.

3             What would you like?  I know you were

4    saying that you were concerned that the magistrate

5    judge had been misled.  What is it that you would

6    want the Government to tell the magistrate judge to

7    avoid that situation?

8             MR. BENJAMIN:  Your Honor, I think being

9    asked the question the way that's asked, that a

10   search would be conducted.  If a taint team was used,

11   a member of the prosecution team would not be present

12   in the facility that was being searched.  That's one

13   of the biggest concerns I have here, is it appears

14   that Special Agent -- I don't believe his name --

15   it's Acee, but Bryan Acee is listed on the return --

16   I don't know why he needed to be present in the

17   facility at all, if in fact, he was.  But I think

18   that there has to be some kind of full disclosure as

19   to what the basis of that is, and what the entire

20   case posture is, not to mention, essentially, some

21   form of heightened reasoning.  And I don't want to

22   get into the merits of the affidavit, Your Honor.

23   But my issue is the affidavit in this case.

24             THE COURT:  And what is it that you would

25   want the Government to tell the magistrate judge?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 555

 1          MR. BENJAMIN:  Specifics, articulable

 2   factual specifics regarding what the danger and the

 3   issues are, Your Honor.

 4          I was not given a copy of this affidavit.

 5   This affidavit wasn't -- essentially, didn't contain

 6   sensitive information that was being protected.  It

 7   simply was vague, and didn't provide notice.  And so

 8   I think that, if they're going to invade something as

 9   protected as a Sixth Amendment right to counsel, they

10   need to have very, very, very articulable facts,

11   which if they have, they have.  But I think that's

12   something that the magistrate needs to be in a

13   position that's a lot different than a tracking

14   warrant or something else that they usually approach

15   a magistrate for, Your Honor.

16          THE COURT:  What relief do you want either

17   today, or if we're going to defer this down the road?

18   What is it that you want from this Court?

19          MR. BENJAMIN:  From this Court, Your Honor,

20   I want enforcement of Order 299, which was that they

21   won't invade in the future.  And the Court said --

22   and I understand why the Court doesn't want the

23   Government approaching it specifically regarding

24   that.  But I want -- and I'll fashion language as to

25   what the specifics should be of that relief -- but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 556

 1   that there is very specific language.  If they're

 2   going to invade something like my client's cell and

 3   seize attorney-client privilege, I'd like to be

 4   notified immediately after the search has occurred,

 5   and not find out because it's published in the

 6   Albuquerque newspaper.  And I'd also like to then be

 7   told that the materials are being reviewed, or where

 8   they're being reviewed, or where they're being

 9   stored.  I believe those are my materials.  They may

10   be being held, but I don't believe I have full

11   accountability of those materials.  So I think those

12   are reasonable requests, and I think those are

13   something that I'm entitled to, and Mr. Gallegos,

14   more importantly, is entitled to.

15           THE COURT:  Ms. Armijo?

16           MS. ARMIJO:  I think we're arguing the

17   motion.  I thought we were going to put it off for a

18   little bit, and I thought that we had agreed.

19           The only thing that Mr. Benjamin had told

20   us at the break was that, as long as we agreed -- we

21   being the prosecution team here at this table -- had

22   not seen any of the documents.  I explained to him

23   how the taint team worked, and everything else, and

24   that we had not seen it.  And that Special Agent Acee

25   was not at the facilities that were searched, and had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 557

```
 1    nothing to do with them.  The only thing that he was

 2    in was that he knows documents were obtained, so he

 3    could put it on the return of the search warrant,

 4    which had to be done in a timely manner.

 5              So that was my understanding as to all that

 6    we were going to be doing today.

 7              He's now argued and wants relief from the

 8    Court --

 9              THE COURT:  Well, that's partly because I

10    keep asking him questions.

11              MS. ARMIJO:  And part of the problem --

12              THE COURT:  But if that's -- if the thing

13    that has been put in place is sufficient for the day,

14    does that work for you?  And then I hear what you're

15    saying, Ms. Armijo, is you want to respond to this

16    motion.

17              MS. ARMIJO:  Yes, Your Honor, because there

18    are so many other different issues.  For instance,

19    Judge Gonzales put that in, not in reference to

20    further crimes, but in reference to things which --

21    they had concerns of mental health experts, which

22    they believe the United States didn't have a right to

23    know.  Things like that.  I don't think Judge

24    Gonzales was going to -- and Judge Gonzales wanted us

25    to give things ex parte, which I know Your Honor is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 558

```
 1   not in favor of.  Judge Gonzales was.

 2             THE COURT:  I'm not really --

 3             MS. ARMIJO:  So that's a completely

 4   different issue.

 5             THE COURT:  Well, let me ask Mr. Benjamin.

 6   Given what Ms. Armijo said, does that take care of

 7   you for today?  Does that freeze things enough to let

 8   them brief it and come back and argue it?

 9             MR. BENJAMIN:  Yes, Your Honor.

10             THE COURT:  Does that work then, for you,

11   Ms. Armijo?

12             MS. ARMIJO:  Yes, Your Honor.  Thank you.

13             (A discussion was held off the record.)

14             THE COURT:  All right.  Here's what I'm

15   inclined to do, but I'll listen to it.  I've got two

16   attorney issues I need to resolve.  I was inclined to

17   let everybody go except the attorneys and the

18   Government to work out those attorney issues.

19             Nobody has asked for a CJA meeting, so I

20   don't have everybody in place to try to do one.  So

21   unless somebody has something real urgent on CJA, I'd

22   be inclined not to do anything on that score.

23             We do have an issue on the motion to

24   continue this trial, but it sounds to me like that

25   may take care of itself.  So I'm not inclined to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 559


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 560

 1   argue that.  So after I hear what Ms. Harbour-Valdez

 2   says, I'm inclined to let everybody go, and then the

 3   attorneys that I need to deal with on the two

 4   defendants with the attorney issues, deal with those.

 5   So think about that for a moment.

 6           Ms. Harbour-Valdez?

 7           MS. HARBOUR-VALDEZ:  Your Honor, there was

 8   just one issue that we had regarding CJA matters.  It

 9   was just a simple question, and I can ask Ms. Wild,

10   if you like, and perhaps, we don't all need to stay.

11           THE COURT:  Is it something you can just

12   ask right this minute?  I mean, does it need --

13           MS. HARBOUR-VALDEZ:  I don't know that I

14   feel comfortable asking it.

15           THE COURT:  Okay.  All right.  Fair enough.

16           Okay.  Well, after it's over, if we can

17   give you that guidance here, then we'll try to do

18   that.

19           Mr. Villa?

20           MR. VILLA:  Your Honor, if I may.  You

21   referred to the motion to continue that may take care

22   of itself.  And I guess I just don't know why you

23   referred to that.  I filed a motion to vacate the

24   March trial setting.  I know the Court just entered

25   the order officially vacating the previous trial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 561

1   setting, and setting the March trial setting.  And I

2   don't know if that's the motion you're referring to.

3          THE COURT:  No, there is another motion,

4   isn't there?

5          THE CLERK:  It's his motion, it's the one

6   he's referring to.

7          MR. VILLA:  So I filed the motion to

8   vacate.  The Government had opposed.  There wasn't a

9   response.  I filed a notice of completion of

10  briefing.  So that's still outstanding.

11         THE COURT:  Well, let me deal with -- let

12  me see if that can be worked out.  The Government has

13  given their position.  And if the people in that

14  other case don't oppose -- it doesn't look like

15  anybody opposes this one.

16         Are you still on the phone, Mr. Mitchell?

17  Do you have your mute button on, Mr. Mitchell?  Are

18  you there, Mr. Mitchell?

19         MR. MITCHELL:  I am, Your Honor.  I had the

20  mute button on.  Sorry about that.

21         THE COURT:  You don't oppose this motion,

22  do you?

23         MR. MITCHELL:  I do not.

24         THE COURT:  All right.  So let me deal with

25  the parties in the other case, and see if they oppose

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 562

```
 1   that.  And if they don't, and it looks like there is

 2   no opposition here, we can get it entered.

 3              MR. VILLA:  Yes, Your Honor.

 4              THE COURT:  All right.  Anything else

 5   before -- do the attorneys and parties know who they

 6   are?

 7              THE CLERK:  Yes, they do.

 8              THE COURT:  Okay.  So you know who you are,

 9   you have attorney issues.

10              Ms. Armijo?

11              MS. ARMIJO:  Your Honor, just briefly.  I

12   know that it will resolve itself.  There was also a

13   request for a scheduling order.

14              Just real briefly, we, the Government, had

15   worked with Ms. Duncan, and had come up with a plan.

16   But my understanding is that it kind of fell through

17   on the defense side.  Maybe, so that we don't have to

18   get together, we can submit dueling scheduling

19   orders, so to speak, for the Court to pick from, so

20   we don't have to get together.

21              THE COURT:  Does that sound all right to

22   the defendants?  Do y'all want to submit dueling

23   scheduling orders; then I'll --

24              MS. SIRIGNANO:  Your Honor, I can address

25   that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 562

173

```
1            THE COURT:  All right.
2            MS. SIRIGNANO:  Amy Sirignano.
3            I was working with Ms. Duncan on both
4    scheduling orders for this case and the 1613 case.
5    We will be sending our scheduling order, at least in
6    1613, to the Government later today.  We do have a
7    dueling scheduling order issue in this matter.  So if
8    the Court and the Government would like to submit
9    dueling scheduling orders, we'd be happy to submit
10   our proposed.
11           THE COURT:  Okay.
12           MS. ARMIJO:  And we can try and work it out
13   before we submit two of them, if we can.  I know that
14   we sent ours out from what we'd agreed with Ms.
15   Duncan on August 8, and had never heard back.  And
16   she kept on apologizing.  So I don't know what the
17   issues are.  Maybe we can try and resolve it.  And if
18   after, let's say, two weeks, we can't, if the Court
19   sets a deadline, if we haven't reached it by then,
20   we'll submit our own orders.
21           THE COURT:  Does that work for you,
22   Ms. Sirignano?
23           MS. SIRIGNANO:  Absolutely, Your Honor.
24           THE COURT:  All right.  So we'll set that
25   as a deadline.  So if you can't work it out, submit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 563

```
 1    your dueling pretrial orders.

 2            Tomorrow a.m.'s hearing only pertains to

 3    Defendant Perez, so nobody else needs to be here.

 4            Anything else we need to discuss?  I'll

 5    look to the Government first, the United States.

 6    Anything else we need to discuss?  Anything else I

 7    can do for you?

 8            MS. ARMIJO:  No, Your Honor.

 9            MR. BECK:  No, Your Honor, not from the

10    United States.

11            THE COURT:  All right.  How about from any

12    of the defendants?  Mr. Cooper?

13            MR. COOPER:  Yes, Your Honor.  If I may

14    visit with Ms. Armijo one second?

15            THE COURT:  Certainly.

16            (A discussion was held off the record.)

17            THE COURT:  Mr. Cooper?

18            MR. COOPER:  Thank you, Judge.  I just

19    wanted to alert the Court that the lawyers in Counts

20    1 and 2 plan to go down to Las Cruces to view the

21    evidence, the physical evidence, in those two

22    particular counts.  And I wanted to make sure that it

23    would be okay for us to photograph that evidence

24    while we were in there.  That's one issue.

25            The other --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 564

```
 1            THE COURT:  Where will you be?  Where will
 2    you physically be?
 3            MR. COOPER:  Your Honor, it's my
 4    understanding that we will be either in the U.S.
 5    Attorney's Office or in the State Police offices.
 6            And the Government tells me they have no
 7    objection to us taking photographs of whatever
 8    physical evidence is in their possession.  They do
 9    say, however, that if there is an objection from New
10    Mexico State Police as to us taking photographs, that
11    we might have to be back.  I can't imagine that they
12    are going to prohibit us from taking photographs.
13            MS. ARMIJO:  I just don't know what their
14    policy is.  I know different agencies have different
15    policies.  And I haven't had a chance to talk to
16    them.  I said we would not oppose if they didn't
17    oppose.  So we will stand by whatever theirs is.  We
18    can find that out.  But again, it was just asked of
19    me, so I don't know the answer to that.
20            THE COURT:  But you're going to try to find
21    out before they all go down there?
22            MS. ARMIJO:  Yes, absolutely.
23            MR. COOPER:  And we've also requested a
24    view of the two pods where Counts 1 and 2 occurred.
25    And I would like to video those two pods as well.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    And I think the Government -- that's probably a DOC

 2    issue.

 3              MS. ARMIJO:  That is.  And I would think

 4    that as to those specific pods, I need to talk to

 5    them, because there could be security concerns.

 6    There is probably inmates there.  They probably don't

 7    want inmates filmed -- I don't know -- or the

 8    housing.  I honestly don't know.  Or they may say

 9    that's fine, but I don't have the answer to that

10    today.

11              THE COURT:  All right.  But if DOC needs an

12    order, tell them I'd be inclined to grant an order,

13    if that will help things.  And if they need an order,

14    then y'all can put one together, and get it in front

15    of me, and tell them I'd be inclined to grant it.

16              MR. COOPER:  Thank you, Judge.

17              THE COURT:  All right.  Thank you, Mr.

18    Cooper.

19              Anyone else?  Defendants have anything else

20    we need to discuss?  Anything else I can do for you?

21              All right.  I appreciate the presentations

22    and hard work.  I'll try to get these opinions out to

23    you to.

24              Counsel and defendants that have attorney

25    issues, be sure and stay, and we'll see if we can get
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 566

1    those done this afternoon.

2              (The Court was in recess while defendants

3    and their counsel exited the courtroom.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 567

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 568

1                          C-E-R-T-I-F-I-C-A-T-E

2

3       UNITED STATES OF AMERICA

4       DISTRICT OF NEW MEXICO

5

6

7           I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8       Official Court Reporter for the State of New Mexico,

9       do hereby certify that the foregoing pages constitute

10      a true transcript of proceedings had before the said

11      Court, held in the District of New Mexico, in the

12      matter therein stated.

13          In testimony whereof, I have hereunto set my

14      hand on October 14, 2016.

15

16

17

18      _____
        Jennifer Bean, FAPR, RMR-RDR-CCR
19      Certified Realtime Reporter
        United States Court Reporter
20      NM CCR #94
        333 Lomas, Northwest
21      Albuquerque, New Mexico 87102
        Phone:  (505) 348-2283
22      Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 568

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8

9         Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
10   District Judge, Albuquerque, Bernalillo County,
     New Mexico, commencing on November 29, 2016.
11

12   For the Government:  Ms. Maria Armijo; Mr. Matthew
     Beck; Mr. Randy Castellano
13
     For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14   Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
     Mr. Robert Cooper; Mr. Dean Clark; Mr. Doug Couleur;
15   Mr. James Lahann; Mr. Orlando Mondragon; Mr. Noel
     Orquiz; Mr. Scott Davidson; Mr. Pedro Pineda; Mr.
16   Gary Mitchell; Mr. Larry Hammond; Mr. Santiago
     Hernandez; Steven Almanza; Ms. Mary Stillinger; Mr.
17   Richard Jewkes; Mr. B. J. Crow; Mr. Marc Lowry; Ms.
     Theresa Duncan; Ms. Amy Sirignano; Mr. Christopher
18   Adams; Mr. Michael Davis; Mr. Ryan Villa; Ms. Justine
     Fox-Young; Mr. Donovan Roberts; Ms. Erlinda Johnson;
19   Ms. Angela Arellanes; Mr. Wayne Baker

20
     For the Defendants (Via telephone):  Ms. Margaret
21   Strickland; Mr. Keith Romero; Mr. Nathan Chambers

22

23

24

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 570

```
 1              THE COURT:  Good morning everyone.  I
 2     appreciate everyone making themselves available to me
 3     this morning.
 4              All right.  The Court will call United
 5     States of America versus Angel DeLeon, Criminal
 6     Matter No. 15-CR-4268 JB.
 7              If counsel will enter their appearances for
 8     the Government.
 9              MS. ARMIJO:  Good morning.  Your Honor.
10     Maria Armijo, Randy Castellano, and Matthew Beck on
11     behalf of the United States.
12              THE COURT:  All right.  Ms. Armijo, Mr.
13     Castellano, Mr. Beck, good morning to you.
14              So Mr. DeLeon is still a fugitive, so we'll
15     start with Defendant Joe Lawrence Gallegos.
16              MR. BENJAMIN:  Good morning, Your Honor.
17     Brock Benjamin on behalf of Mr. Gallegos.
18              THE COURT:  Mr. Benjamin, good morning to
19     you.  Mr. Gallegos, good morning to you.
20              THE DEFENDANT:  Good morning.
21              THE COURT:  And for Defendant Edward Troup.
22              MS. HARBOUR-VALDEZ:  Good morning, Your
23     Honor, Cori Harbour-Valdez and Pat Burke on behalf of
24     Mr. Troup.
25              THE COURT:  All right.  Ms. Harbour-Valdez,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 570

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 571

```
 1    Mr. Burke, Mr. Troup, good morning to you.

 2              And for Defendant Leonard Lujan?

 3              MR. CLARK:  Good morning, Your Honor.  Dean

 4    Clark on behalf of Mr. Lujan.

 5              THE COURT:  Mr. Clark, Mr. Lujan, good

 6    morning to you.

 7              And for Defendant Billy Garcia?

 8              MR. COOPER:  Good morning, Your Honor.  Bob

 9    Cooper and Jim Castle on behalf of Billy Garcia.

10              THE COURT:  All right.  Mr. Cooper, Mr.

11    Castle, Mr. Garcia, good morning to you.

12              THE DEFENDANT:  Good morning.

13              THE COURT:  And for Defendant Eugene

14    Martinez?

15              MR. COULEUR:  Your Honor, Doug Couleur for

16    Eugene Martinez.

17              THE COURT:  Mr. Couleur, Mr. Martinez, good

18    morning to you.

19              And for Defendant Allen Patterson?

20              MR. LAHANN:  Good morning, Your Honor.

21    Jack Lahann on behalf of Mr. Patterson.

22              THE COURT:  Mr. Lahann, Mr. Patterson, good

23    morning to you.

24              THE DEFENDANT:  Good morning, Your Honor.

25              THE COURT:  And for Defendant Christopher
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Chavez?

 2           MR. MONDRAGON:  Good morning, Your Honor.

 3   Orlando Mondragon on behalf of Mr. Chavez.

 4           THE COURT:  Mr. Mondragon, Mr. Chavez, good

 5   morning to you.

 6           And for Defendant Javier Alonso?

 7           MR. ORQUIZ:  Good morning, Your Honor.

 8   Noel Orquiz for Javier Alonso.

 9           THE COURT:  Mr. Orquiz, Mr. Alonso, good

10   morning to you.  And is Mr. Chambers here yet?  He's

11   going to appear a little bit later by telephone?

12           MR. ORQUIZ:  Yes, sir, he had a court

13   hearing in Denver this morning, and he will call in

14   as soon as he is able.

15           THE COURT:  All right.

16           And for Defendant Arturo Arnulfo Garcia?

17           MR. DAVIDSON:  Your Honor, Scott Davidson

18   sitting in for Billy Blackburn for Mr. Garcia.

19           THE COURT:  All right.  Mr. Davidson,

20   Mr. Garcia, good morning to you.  Mr. Garcia, Billy

21   Blackburn is your normal attorney -- well, I don't

22   know if we should call Billy "normal," but he's your

23   usual attorney; right?

24           THE DEFENDANT:  He is.

25           THE COURT:  And you consent to Mr. Davidson

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 572

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 573

```
 1    being your attorney today?

 2              THE DEFENDANT:  Yeah, that's fine.

 3              THE COURT:  All right.  And for Defendant

 4    Ruben Hernandez?

 5              MR. PINEDA:  Good morning, Your Honor.

 6    Pedro Pineda on behalf of Mr. Hernandez.

 7              THE COURT:  Mr. Pineda, Mr. Hernandez, good

 8    morning to you.

 9              And for Defendant Jerry Armenta?

10              MR. MITCHELL:  Good morning, Your Honor.

11    Gary Mitchell on behalf of Mr. Armenta, who also

12    appears.

13              THE COURT:  Mr. Mitchell, Mr. Armenta, good

14    morning to you.

15              THE DEFENDANT:  Good morning.

16              THE COURT:  And let's get counsel that are

17    here in the courtroom for Defendant Jerry Montoya.

18              MR. HAMMOND:  Good morning, Your Honor.

19    Larry Hammond on behalf of Mr. Montoya, who is here

20    with me to my left.  And my co-counsel, Margaret

21    Strickland, I believe, is on the telephone.

22              THE COURT:  All right.  Mr. Hammond, Mr.

23    Montoya -- Ms. Strickland, are you there?

24              MS. STRICKLAND:  I am, Your Honor.

25              THE COURT:  Good morning to you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Ms. Strickland.

2              MS. STRICKLAND:  Good morning, Your Honor.

3              THE COURT:  And for Defendant Mario

4    Rodriguez?

5              MR. HERNANDEZ:  Good morning, Your Honor.

6    Santiago Hernandez on behalf of Mr. Rodriguez.

7              THE COURT:  Mr. Hernandez, Mr. Rodriguez,

8    good morning to you.

9              THE DEFENDANT:  Good morning, Your Honor.

10             THE COURT:  And for Defendant Timothy

11   Martinez?

12             MR. ALMANZA:  Good morning, Your Honor,

13   Steve Almanza on behalf of Timothy Martinez.

14             THE COURT:  All right.  Mr. Almanza, Mr.

15   Timothy Martinez, good morning to you.

16             THE DEFENDANT:  Good morning.

17             THE COURT:  And for Defendant Mauricio

18   Varela?

19             MS. STILLINGER:  Good morning, Your Honor.

20   Mary Stillinger for Mr. Varela.

21             THE COURT:  All right.  Ms. Stillinger and

22   Mr. Varela, good morning to you.

23             And for Defendant Daniel Sanchez?

24             MR. JEWKES:  Good morning, Your Honor.

25   Richard Jewkes, representing Daniel Sanchez, who is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 574

1    present before the Court and ready to proceed.

2            THE COURT:  All right.  Mr. Jewkes, Mr.

3    Sanchez, good morning to you.

4            For Defendant Conrad Villegas?

5            MR. CROW:  Good morning, Your Honor.  B.J.

6    Crow for Mr. Villegas, who is present.

7            THE COURT:  Mr. Crow, Mr. Villegas, good

8    morning to you.

9            THE DEFENDANT:  Good morning.

10            THE COURT:  And for Defendant Anthony Ray

11    Baca?

12            MR. LOWRY:  Good morning, Your Honor.  Marc

13    Lowry and Theresa Duncan on behalf of Anthony Ray

14    Baca, who is present in the courtroom.

15            THE COURT:  All right.  Mr. Lowry, Ms.

16    Duncan, Mr. Baca, good morning to you.

17            THE DEFENDANT:  Good morning, Your Honor.

18            THE COURT:  And for Defendant Christopher

19    Garcia?

20            MS. SIRIGNANO:  Good morning, Your Honor.

21    Amy Sirignano and Christopher Adams on behalf of

22    Christopher Garcia.

23            THE COURT:  All right.  Ms. Sirignano, Mr.

24    Adams, Mr. Garcia, good morning to you.

25            And for Defendant Carlos Herrera?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            MR. DAVIS:  Good morning, Judge.  Michael
2   Davis on behalf of Mr. Herrera.
3            THE COURT:  Mr. Davis, Mr. Herrera, good
4   morning to you.
5            And for Defendant Rudy Perez?
6            MR. VALLE:  Good morning, Your Honor.  Ryan
7   Villa on behalf of Mr. Perez, along with my
8   co-counsel, Justine Fox-Young, for Mr. Perez.
9            THE COURT:  All right.  Mr. Villa, Ms.
10  Fox-Young, Mr. Perez, good morning to you.
11            And for Defendant Andrew Gallegos?
12            MR. ROBERTS:  Good morning, Judge.  Donovan
13  Roberts on behalf of Mr. Gallegos.
14            THE COURT:  All right.  Mr. Roberts, Mr.
15  Gallegos, good morning to you.
16            And for Defendant Santos Gonzalez?
17            MS. JOHNSON:  Good morning, Your Honor.
18  Erlinda Johnson on behalf Santos Gonzalez.
19            THE COURT:  All right.  Ms. Johnson, Mr.
20  Gonzalez, good morning to you.
21            And I believe -- for Defendant Paul Rivera,
22  believe you're on the phone, Mr. Romero?
23            MR. ROMERO:  Correct, Judge.  Keith Romero
24  on behalf of Paul Rivera.
25            THE COURT:  Are you able to head back here?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 576

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 577

```
 1              MR. ROMERO:  I'm making my way back, Judge.
 2    I'm close to an hour out.
 3              THE COURT:  All right.  Mr. Romero, good
 4    morning to you.  Mr. Rivera, good morning to you.
 5    Where is Mr. Rivera here?  Okay.  There we are.  All
 6    right.  Good morning to you, Mr. Rivera.  We'll get
 7    him here as soon as we can.
 8              And for Defendant Shauna Gutierrez?
 9              MS. ARELLANES:  Angela Arellanes for Ms.
10    Gutierrez, who appears in person.
11              THE COURT:  Ms. Arellanes, Ms. Gutierrez,
12    good morning to you.
13              THE DEFENDANT:  Good morning.
14              THE COURT:  All right.  The United States
15    has filed a motion for me to call the other case so
16    we can have a status conference at the same time.
17    Anybody have any objection to that?  All right.  So I
18    will call for purposes of the status conference with
19    this case United States of America versus Mauricio
20    Varela, Criminal Matter 15-4269, and I believe the
21    only defendant that's not already in the case is
22    Defendant David Calbert.
23              MR. BAKER:  Good morning, Your Honor.
24    Wayne Baker on behalf of Mr. Calbert.
25              THE COURT:  All right.  Mr. Baker, good
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 577

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 578

1    morning to you.  Mr. Calbert, good morning to you.

2              THE DEFENDANT:  Good morning.

3              THE COURT:  All right.  I think that's

4    everybody.  Anybody else need to make an appearance

5    that I didn't get a name?  All right.

6              All right.  I guess the first thing we

7    should take up is the motion that Mr. Baca had filed,

8    that many of you joined -- or some of you had

9    joined -- in this case.  Mr. Baca filed it in a

10   number of cases.  As you know, yesterday in what we

11   call the Baca case, the 12, 13 defendant case, we had

12   a fairly lively lengthy discussion of that.  I don't

13   want to cut it off here, but I think Mr. Lowry has

14   explained to you that I'm going to try to put

15   together an opinion and order on what kind of

16   restrictions the marshals have requested, and try to

17   get that to you before I see you again, whenever that

18   may be.

19             In the meantime, I think Mr. Baca has given

20   me his assurance that he'll not try to communicate

21   with any of the defendants, co-defendants in this

22   case.  And I, as you can see, have not put any sort

23   of barrier, restriction -- I forgot what it was

24   called, but -- partition; partition, that's the

25   word -- partition, so he can see everything.  And the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 578

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 579

1    agreement was that there wouldn't be any

2    communication among the co-defendants in the

3    courtroom.  So this being a judicial proceeding,

4    everybody would agree to that.  Counsel are not

5    restricted from talking to other counsel.  We ask you

6    to communicate through those -- through the counsel,

7    at least here in the courtroom.  But those are -- the

8    agreement we worked out until we -- until I could

9    review the submissions that were made.  Some of them

10   were coming in in this case, I think last night and

11   this morning.  And so I'll try to put a petition -- I

12   mean an order and an opinion together on that.

13           Does anybody else want to say anything

14   about that?  I know that some people made some

15   submissions.  We had a fairly full and robust

16   argument yesterday.  We took some evidence, which

17   I'll consider, and probably making some findings of

18   fact.

19           All right.  The next thing I'd like to take

20   up is again -- yes, Mr. Hammond?

21           MR. HAMMOND:  Excuse me, your Honor.  I had

22   my bad hand up.

23           THE COURT:  All right.  That's all right.

24           MR. HAMMOND:  On behalf of Mr. Montoya, of

25   course, neither my co-counsel, Ms. Strickland, nor I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 579

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 580

1    were present yesterday.

2            I am unaware of any basis or any prior

3    conduct in the hearings where we've been in

4    attendance that have been in any way disruptive or in

5    any way interfere with the judicial process.  And I

6    often find, in the course of a long proceeding -- and

7    we're going to have some long ones here -- that

8    communication between all of us becomes part of just

9    surviving in a long case.  And there may be lots of

10   unforeseen circumstances that would cause us to wish

11   to communicate.

12           I have a personal rule that I don't

13   communicate with other people's clients, and I think

14   that's appropriate.  But certainly, the kind of

15   normal communication that one would typically expect

16   in a courtroom, I believe has happened, and ought to

17   happen.  I know of no basis for thinking that either

18   the decorum of the Court or the public safety will be

19   affected.

20           And, Judge, let me say one more word on a

21   personal basis on behalf of my client.  I'm sure the

22   Court is not aware of this, but five weeks ago my

23   client was pulled out of Torrance involuntarily by

24   the United States Marshals.  He was not told why he

25   was being pulled out.  He wasn't told where he was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   going.  He has been put now in a separate facility in
 2   Santa Fe, where he has had no communication with any
 3   of the people with whom he had daily communications
 4   for months and months and months.  He still has not
 5   been told why he was moved and why he's been
 6   isolated.  He is certainly not a cooperator with the
 7   Government.  I know of no basis for him to be
 8   segregated.
 9          But I think in his case personally, having
10   not seen any of his colleagues for now five weeks,
11   it's perfectly natural -- and I don't know if he
12   feels this way or not, so I'm just speaking on behalf
13   of myself -- I think it's perfectly natural to think
14   that he may want to communicate with people with whom
15   he spent a great deal of time over the last year.
16          So, on behalf of Mr. Montoya, I would ask
17   that the Court reconsider the order, at least in
18   those times when the Court is not in session.
19          THE COURT:  Well, I understand, but I am
20   going to rule consistently across the two cases until
21   I put an order together.  And I'll take your comments
22   into account while I put the opinion together.  And
23   maybe at the next hearing it will be different.  But
24   at least for today, we're going to operate under
25   those rules in both cases.  And I think I'm going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 582

```
 1    be in another related case tomorrow.  So we'll keep

 2    those in place until I can get -- think about it in a

 3    fuller way, the concern of the marshals is that -- as

 4    we went into yesterday -- is that they're

 5    communicating about things beside just greetings.

 6    And I'll have to give that some thought.

 7              Let me get on the record that the Bonito is

 8    our overflow courtroom.  So I'm looking at a screen

 9    here that is showing the bench in the Bonita

10    courtroom, and I assume they're seeing me in the

11    courtroom.  So that's what they are seeing.  So we do

12    have that, if we need more family members and things

13    of that nature.

14              All right.  Anyone else want to speak on

15    the restriction issue before we move onto the motions

16    for today?

17              MR. CASTELLANO:  Yes, Your Honor, Jim

18    Castle.

19              THE COURT:  Mr. Castle.

20              MR. CASTLE:  To the extent the Court is

21    relying upon testimony in a separate proceeding and

22    statements by counsel in a separate proceeding, we'd

23    ask that that transcript be made part of this record.

24    If the Court is going to rely upon it in its

25    decision, which it sounds like the Court is.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 582

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 583

```
 1              THE COURT:  That would be fine.  I don't
 2    know what you mean by "made part of this record."
 3    Mr. Baca's motion was filed in three cases, so I'll
 4    issue an opinion in the three cases.  It will
 5    probably have a caption of all three cases on it, and
 6    I'll be citing to that.  But I guess you can get the
 7    transcript out of the other case, if you want it.
 8    But I'll be relying on it.
 9              Anybody else?
10              All right.  Let me take up an issue --
11    again, Mr. Baca filed a joint unopposed motion for
12    disclosure of grand jury and petit jury data to
13    enable him to inspect and photocopy data and
14    procedures used in the selection of the grand and
15    petit juries in the Las Cruces Division of the
16    District of New Mexico.  It's unopposed, but we
17    didn't have the position of all parties.  So just so
18    that -- before we launch into this, does anybody have
19    any opposition to Mr. Baca's motion?  All right.  Not
20    hearing any, then I will grant that motion.  And I
21    think we talked about it yesterday.  I think Mr. Baca
22    is going to -- his counsel are going to work with the
23    United States to put together an order, which will be
24    submitted to me and I'll sign it.
25              All right.  I guess the first motion, then,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 583

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 584

```
 1    to take up is the joint motion to vacate the March
 2    2017 trial setting, impose a discovery schedule
 3    order, and then a request for a hearing.  Yesterday
 4    what we did is we got the concurrence of all of the
 5    counsel in the Baca case, we got their agreement to
 6    move their trial, which I think was the sticking
 7    point for the motion in this case.  So they have
 8    agreed that if we will try their case in 2017,
 9    they're agreeable to moving it.  So we set a trial
10    date of November 2 -- November 6, 2017, so we're
11    hoping that we will be able to live up to the
12    commitment that we made to that group of defendants
13    and parties, but particularly the defendants, some of
14    whom were interested in either moving to sever or
15    accelerating their Speedy Trial Act rights.  But they
16    were all in agreement they would consent to the
17    movement of that.
18             So with that, I'm wondering if there is any
19    remaining issues with this motion, or whether we're
20    prepared to grant this motion, and then set a new
21    trial date.
22             Mr. Villa, I think this is largely your
23    product.  If you want to speak and tell me if there
24    is any more issues, or if there are issues, what they
25    are.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 584

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 585

1           MR. VILLA:  Thank you, Your Honor.

2           THE COURT:  Mr. Villa?

3           MR. VILLA:  I think that, you know, if the

4    Government is not opposed to moving our trial date

5    then I won't spend a whole lot of time on why it

6    should be moved.

7           I can alert the Court to a few things,

8    since September of 2016, and that the tablet issue,

9    which concerns me in terms of when to set the trial

10   date.  So I don't -- I can't speak for all of the

11   defendants, but I know that Mr. Perez was supposed to

12   receive his tablet Wednesday, according to a letter I

13   received from Mr. Aoki, and has not received it.  So

14   I think perhaps that's the starting point to

15   determine when can we schedule this thing; the fact

16   that Mr. Perez, and I think a lot of other defendants

17   in this case, don't have their discovery yet.

18           Now, certainly, it doesn't mean we haven't

19   been talking about the case and that sort of thing.

20   But I think they need, in the first instance, to have

21   their discovery and review it.

22           THE COURT:  Have you been in touch with Mr.

23   Aoki and found out what the problem is?

24           MR. VILLA:  I have not, Your Honor.  The

25   letter I received, I want to say Monday last week,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 585

```
 1    indicated he would have it Wednesday.  And today was

 2    the first opportunity I had to ask Mr. Perez.

 3              THE COURT:  Is Wednesday being tomorrow?

 4              MR. VILLA:  Wednesday of last week, the day

 5    prior to Thanksgiving.  And so today was the first

 6    chance I had to ask Mr. Perez if he has received it,

 7    and he has not.  And I believe the other defendants

 8    who are also housed in Torrance County have not

 9    received them, with the exception, perhaps, of Mr.

10    Gallegos, because of his severance.

11              So I think there is an issue there.  I know

12    part of the reason the tablets have not been provided

13    is there continues to be discovery production that

14    needs to be uploaded and that sort of thing.  And I

15    think that's -- sort of the other issue is the United

16    States is continuing to produce discovery.  And it's

17    unclear whether this is new material or has just been

18    obtained, or it's material that perhaps should have

19    been produced in the summer, when the Court ordered

20    it.  I can't speak to that.  And I can't speak to

21    when --

22              THE COURT:  My sense is that this new

23    material is sort of -- we're getting down to the

24    dregs.  It's not voluminous; it's just new materials

25    that are being found?  Is that your impression?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 586

```
 1              MR. VILLA:  Yeah, I get that sense.  And
 2    some of it is in response to some of the hearings
 3    we've had, which we appreciate the Government
 4    producing that in response to these Court's orders.
 5    But it also seems to be happening fairly regularly,
 6    these new productions.  You know, sometimes every
 7    week, sometimes every couple of weeks, the new
 8    material is provided.  And it's provided directly to
 9    counsel.  So there is not the issue with us getting
10    the discovery from Mr. Aoki.  But there is the issue
11    of our clients not having the opportunity to really
12    sit down and review it on their own, which I think is
13    critical to preparing for trial, and critical to the
14    other issue that I want to raise with the Court,
15    which is the scheduling order.
16              Because I think being able to review that
17    discovery on their own, the clients individually, and
18    then sit down with us and talk about what are the
19    steps we need to take, in order to do the
20    investigation we need to do and obtain, for instance,
21    discovery that we need to produce as part of our
22    obligation for reciprocal discovery, the motions we
23    need to file, and that sort of thing, all gets bogged
24    down because of the lack of our clients having their
25    discovery, and being able to review it on their own,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 587

```
 1    reflect on it, without counsel there.  You know, as
 2    you can imagine, when we're there with our clients,
 3    there is a lot of other things we're talking about.
 4    And they don't necessarily have the time to sit and
 5    review the discovery, which is, for Mr. Perez, the
 6    only opportunity he ever has is when myself or
 7    Ms. Fox-Young or another one of our staff are there
 8    with him to review discovery.
 9              And I know the Court entered a scheduling
10    order with the March trial date in mind.  And I
11    assumed, hopefully correctly, that those dates would
12    change along with whatever our new trial date is.
13    There was a proposed scheduling order submitted via
14    the email, the defendants had spent a great deal of
15    time putting together, and has quite a bit more in
16    terms of dates and anticipating hearings and things
17    like that, that I would ask the Court to reconsider
18    imposing.  And that scheduling order had deadlines
19    that weren't a specific date.
20              So, for instance, it would be that the
21    first was a Government's discovery deadline, 240 days
22    before trial.  The Government's expert witness
23    notices, and some discovery motions 220 days before
24    trial.  So it wasn't set to a particular date.  It
25    was set to whenever the Court would set the trial.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 589

```
 1              I don't know that there is necessarily

 2      agreement among all the defendants about --

 3              THE COURT:  But that was the defendant's

 4      order, wasn't it?

 5              MR. VILLA:  No.  The proposed scheduling

 6      order there was agreement.  What I'm saying now is I

 7      don't know that there is agreement about when to move

 8      the trial date.  I imagine the Court has in mind when

 9      it wants to do it, basically.

10              THE COURT:  Well, I feel some commitment to

11      the folks yesterday.  I mean, some of those guys

12      consented, so they wanted to help y'all out by moving

13      their trial.  But they wanted to get it done.  So I

14      want to get it done before November 6, so that I can

15      start that trial.

16              MR. VILLA:  So you're saying you want to

17      schedule this trial before November of 2017?

18              THE COURT:  Right.

19              MR. VILLA:  Okay.  And I don't know, as

20      Mr. Perez is charged in Counts 6 and 7 along with

21      eight others -- I can't speak for all of them, I can

22      speak for Mr. Perez -- that I think that's plausible.

23      And I'm assuming some things like severance and other

24      issues are going to sort out when others involved in

25      this indictment may have their trial.  But I can't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 590

```
1    speak for everybody in terms of whether they prefer
2    trial before November or after.  I know that there
3    are some that would rather have their trial after
4    November 2017.  And I think there is good reasons, in
5    addition to what I've already stated.  It doesn't
6    involve our Counts 6 and 7.  That count was --
7    occurred in 2014.  There was a -- essentially, on the
8    eve of a state trial, when the indictment came.  And
9    so I think our case might be a little more teed up,
10   if you will, for trial.  But some of the other counts
11   are -- date back to 2001 -- would involve
12   significantly more investigation and work.
13          And so I don't speak for everybody when I
14   say that a trial prior to November 2017 might be okay
15   for Counts 6 and 7.  But I do think that I would ask
16   the Court to impose the proposed scheduling order
17   that defendants submitted, or some variation of that,
18   depending on when the Court actually does set the
19   case for trial.  Or if the Court wants to stay with
20   the scheduling order that it imposed for the March
21   trial date, that we move those dates accordingly,
22   depending on when it sets the trial.
23          So if you set the trial in the summer of
24   2017, that would be moving it, say, four months.
25   Then we would need to move the other dates another
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 591

```
 1    three or four months.  And there are some other dates
 2    that I think we've all thought of that may need to be
 3    added.  I'm not sure we can resolve that today.  We
 4    can potentially do that down the road.
 5            But those are my concerns, Your Honor.
 6            THE COURT:  All right.  Thank you, Mr.
 7    Villa.
 8            I probably need to hear from the Government
 9    here.  But anyone else want to say anything?
10    Mr. Hammond?
11            MR. HAMMOND:  Your Honor, two points.  One,
12    on the tablet question you asked about, I did contact
13    Mr. Aoki's office yesterday, and they advised me that
14    as to a large number of tablets, including my
15    client's, Mr. Montoya, the tablets had not yet come
16    back from the Department of Corrections.  We've been
17    told that they were expected any day, but have not
18    yet been received.  When they are received, Mr.
19    Aoki's staff says they can load the remaining
20    discovery that they now have on the tablets, and send
21    them back.  How long that will take really depends,
22    first of all, on when the tablets are actually
23    delivered.  And, as of yesterday, they had not been.
24    I would expect that, at the very best, if we had the
25    tablets in Seattle now, we might have them loaded and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 591

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 592

```
1   sent out to the defendants sometime in the next
2   couple of weeks.  But we've had numerous delays here.
3   And my recommendation is that we not start the
4   scheduling order deadline until we, in fact, have
5   those tablets back, and the Government has said that
6   it's through making its discovery.
7           Several lawyers here worked together to
8   draft the scheduling order that Mr. Villa mentioned.
9   And we started it with the idea that we could
10  accomplish most of the things that need to be
11  accomplished in eight months, in 240 days, which I
12  think is also about the same time schedule that the
13  1613 people had suggested.  But that begins with the
14  date that the Government concludes its discovery,
15  and, presumably, our clients have it so that they can
16  review it.
17          So our suggestion would be, at the least,
18  that we not set a date until we know that the
19  discovery has been loaded and received by the
20  clients, and that we then impose a scheduling order
21  that works from that 240-day period backwards.  And I
22  think, if all of those things happened, we probably
23  could accommodate a trial that might appear -- that
24  might occur before the 1613 trial.  There are a lot
25  of moving parts in that.  But I think at least that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 593

```
 1    a decent starting point.

 2            THE COURT:  All right.  Thank you, Mr.

 3    Hammond.

 4            Anyone else?  Mr. Davis?

 5            MR. DAVIS:  Thank you, Judge.

 6            Michael Davis on behalf of Carlos Herrera.

 7    Judge, I typically proceed in a hearing like this

 8    with the notion that you can't put a foot in a shut

 9    mouth.  But I feel like I should at least alert the

10    Court to some concerns I have with a trial setting in

11    this matter within the next year involving Carlos

12    Herrera.

13            As the Court may know, I was -- Mr. Herrera

14    was brought in late in 4268, and I've been on the

15    case for about five-and-a-half months now.  He just

16    got his tablet last week.  So an attempt to go

17    through the discovery has been extremely difficult

18    and cumbersome for us, primarily because he is not in

19    the Sandoval County Detention Center, which is 15

20    minutes from my office; he is in the Otero County

21    prison facility, which is 300 miles from my office.

22    So it's difficult for me to get down there to see him

23    more often than two times a month.  When I go to see

24    him, those meetings are difficult.  Because Mr.

25    Herrera has been in prison for 17 years; as a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 594

 1    consequence, he has a wealth of information regarding

 2    most of what has been alleged in the indictment.  And

 3    there are literally hundreds of players with a

 4    variety of nicknames that make it difficult to follow

 5    some train of thought with regard to developing a

 6    defense in this case.

 7             Additionally, with regard to Mr. Herrera

 8    he's charged in Counts 6 and 7, the same counts with

 9    Mr. Villa's client, Mr. Perez, involving the death of

10    Javier Molina.  It's also clear that Mr. Herrera was

11    not directly involved in the death of Javier Molina,

12    because he was in an adjoining cell block, A pod.

13             So we've been trying to put together the

14    Government's evidence against Mr. Herrera.  And it's

15    extremely difficult when we don't have access to our

16    client like we normally would.  He was initially at

17    Torrance, when we first got in the case, and shortly

18    after the first hearing we had in the case, in June,

19    he was transferred in Otero County.  And I'm

20    perfectly willing to go and visit him.  But I wanted

21    to alert the Court to sort of the unique situation we

22    face with Mr. Herrera.  I can tell you that, since he

23    got his tablet, I haven't had a chance to meet with

24    him.  I hope to go down and see him next week, to

25    start going through stuff.  He's sat here next to me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 594

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 595

```
 1   and immediately started going off and giving me lots
 2   of information, because it's the first chance he's
 3   had to at least start going through the tablet.
 4          So that process, at least with regard to
 5   Mr. Herrera, is going to take considerable time for
 6   us to go through everything.
 7          So I just ask the Court to appreciate the
 8   logistics of the discovery issue in the case.  It's
 9   not just the wealth of the discovery; it's not just
10   the issues that Mr. Hammond raised.  It's a matter of
11   the practical ability to meet and confer with our
12   clients, and then follow up with information he gives
13   us to my investigative team, my co-counsel, so we can
14   follow up with that, and hopefully, prepare a good,
15   adequate defense for him.
16          So I just wanted to alert the Court to
17   those matters.
18          THE COURT:  All right.  Thank you, Mr.
19   Davis.
20          Anyone else before I hear from the
21   Government?
22          Mr. Castle?
23          MR. CASTLE:  Yes, Your Honor.  Just so -- I
24   think the Court is contemplating very clearly that
25   4268 trial ought to proceed after 1613.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, that's what I want to
 2    talk to the Government about.  I guess everybody --
 3    it's always been set before the other one.  Yesterday
 4    we were working under that assumption.  But, you
 5    know, I guess I need to explore that assumption.  But
 6    I think you're right.  I think everybody has been
 7    working under that assumption.
 8            MR. CASTLE:  And I wanted to give the Court
 9    some thoughts in regards to that.  1613 has 12
10    defendants; I believe there is 4 counts.  Obviously,
11    there is numerous overt acts that are charged.  This,
12    4268, has over twice the number of defendants.  The
13    amount of discovery is also double what it is in
14    1613.
15            In the last month and a half since we were
16    last here, the DeLeon case, the 4268 case, received
17    10,227 pages of new discovery, and 99 additional
18    audiotapes.  In the Baca case, they received 1/5 of
19    that new discovery, in page numbers.
20            The case against these defendants in this
21    particular indictment is extremely complex, and I
22    think that's been described before.  But we're going
23    to have numerous issues concerning admissibility of
24    co-conspirator statements, disclosure of informants.
25    For example, I think I told the Court last time that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 596

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 597

```
1    there was at least 376 separately identified sources

2    of information, or informants, whatever you want to

3    call it, some type of non-law enforcement providers

4    of information.  The vast majority, over 90 percent

5    of those individuals have not been identified.

6             Just to file motions to disclose those

7    informants would take reams and reams of paper.  And

8    I believe that my analysis is that almost all of

9    these individuals provide exculpatory information, at

10   least with regard to one or more of the defendants.

11   For example, there will be people that will

12   describe -- who are members of the SNM organization,

13   and they won't mention three or four of the

14   defendants or more in this indictment.  In my

15   opinion, that would be exculpatory with regards to

16   those three or four defendants.

17             So the amount of litigation that has to

18   take place between now and when we proceed to trial,

19   I think, is going to be enormous.  And I think we've

20   only seen the tip of the iceberg on it.  And because

21   this case has so many defendants and so many -- what

22   I believe would be subconspiracies, different overt

23   acts, different distinct criminal episodes, we're

24   going to have -- basically, this is the tip of the

25   iceberg in litigation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 597

```
 1              And so I think -- well, at least our
 2   opinion is that we're not going to be prepared to
 3   proceed in this calendar year.  It would be nice to
 4   do so, but I don't believe that's realistic.  Now, if
 5   the cases were severed, there might be individuals
 6   that could proceed to trial earlier than that, such
 7   as Mr. Villa suggested with regard to his client.
 8              But for our client, for example, we have to
 9   investigate two homicides that happened 15 years ago.
10   And right now we're not being provided with the
11   identities of witnesses and things of that nature,
12   because the Government is relying upon the Jencks
13   Act, and not disclosing that.  That makes our job
14   much more difficult.
15              I can tell the Court the last disclosure
16   that we received is on November 14 of this year.  My
17   review of the disclosure to date -- I believe there
18   is more to come, because what was promised to the
19   parties and the Court previously has not all been
20   disclosed.  And I'm not blaming them.  They,
21   obviously, took on a large production agreement when
22   we were last here.  It's just, I think that we're
23   going to see more and more materials.  And until -- I
24   join Mr. Hammond, until we see what all those
25   materials are, it might be premature to decide on a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 598

```
 1   date.
 2               THE COURT:  All right.  Thank you, Mr.
 3   Castle.
 4               MS. HARBOUR-VALDEZ:  Your Honor, I just
 5   received an email from Mr. Aoki on the status of the
 6   tablets, if you'd like me to update the Court.
 7               THE COURT:  You may.
 8               MS. HARBOUR-VALDEZ:  Mr. Aoki says that 15
 9   defendants currently have their tablets at their
10   facilities.  His office received six reconfigured
11   tablets back from the Department of Corrections
12   yesterday.  Five of those have been loaded with
13   discovery and are being shipped out today; the
14   facilities should receive them on Friday.  One of
15   them had an error message pop up when they tried to
16   copy the discovery on it, so it was shipped back to
17   the Department of Corrections.  The Corrections
18   Department still has 17 other tablets they are
19   reconfiguring.  They are continuing to send them to
20   Mr. Aoki on a rolling basis, six at a time.
21               So that's the status now.  I don't know why
22   the rolling basis.  Maybe the Department of
23   Corrections could answer the Court's questions on
24   that.
25               THE COURT:  All right.  Thank you, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 599

1   Harbour-Valdez.

2         All right.  Anything before we hear from

3   the Government?

4         MR. LOWRY:  Your Honor, briefly.

5         THE COURT:  Mr. Lowry?

6         MR. LOWRY:  Your Honor, I'd like to echo

7   the comments that my colleagues have made today,

8   especially Mr. Hammond and Mr. Davis' points.  One, I

9   don't think -- well, I know that the Government

10  hasn't finished producing Rule 16 discovery to date.

11        During yesterday's hearing, you heard the

12  Government testify about intercepted jailhouse calls

13  with my client, and although I think a single call

14  has been produced, obviously those would all be

15  statements of my client that have yet to be produced,

16  along with other categories of evidence that I'll go

17  over with the Government later.  But my concern is

18  equivalent with Mr. Hammond's, that we really haven't

19  finished the initial disclosures from the Government.

20  And like Mr. Davis, my client is in Las Cruces; he's

21  3 hours away from my office.  And even when we get

22  there, we're put in a multipurpose room, where we

23  have to vacate that room for magistrate court

24  hearings every day.  So it makes for a very choppy

25  visit.  And it's complicated and lengthy to make that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 601

```
 1   happen.  And we try to make that happen with

 2   regularity, but it's just going to take a lot of time

 3   to digest the material.

 4            Complicating that is my client has probably

 5   had his tablet in the past for -- I think I'm being

 6   generous when I would suggest 30 days.  But as you

 7   can imagine, my client has been incarcerated for a

 8   number of years, and his familiarity with technology

 9   is very minimal.  And given that, he inadvertently

10   started deleting the discovery off of the tablet, and

11   frankly, got so concerned that he would lose all of

12   it, he quit using the tablet until we could get down

13   and instruct him.  And we're waiting for the tablet

14   to get back to him, and that hasn't happened.

15            And so I would share my colleagues'

16   concerns that, given the volume of material we need

17   to go through, it's just going to take an inordinate

18   amount of time to do that.  And I'm concerned that,

19   as Mr. Castle said, the next calendar year may not be

20   sufficient to complete the review of discovery, and

21   then the accompanying litigation that's going to be

22   precipitated out of that review.

23            Thank you, Your Honor.

24            THE COURT:  All right.  Thank you, Mr.

25   Lowry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Anyone else from the defendants before we

2     hear from the Government?

3          All right.  Ms. Armijo?

4          MS. ARMIJO:  Your Honor, we had agreed to

5     the continuance in this case that Mr. Villa

6     presented, if the other case, the Baca case, was

7     continued, and that's why we had agreed to the

8     continuance of the Baca case and we had agreed to the

9     continuance in this case.  And our understanding was

10    at the time they were just asking that it be

11    continued to next summer, 2017.

12         Hearing now that they don't want to try

13    this case until the year 2018, or that they want Baca

14    to replace the DeLeon matter is, frankly, quite

15    surprising.  The Baca case, although it has fewer

16    defendants, it has three overlapping defendants; it

17    has 240 overt acts.  It has several murders that we

18    have charged in this case as predicate overt acts in

19    that case, which we will need to prove along with

20    numerous other incidents.

21         So by no means is the RICO/Baca case a walk

22    in the park in comparison to this case.  So -- it was

23    indicted several months afterward.  And our position

24    is that this case should go before the Baca case.

25    With the exception of -- we could talk about what we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 602

1   refer to as the 4269, the PNM case.  It has -- four

2   defendants are here.  It occurred in Santa Fe.  I

3   guess I would like to know what the positions are of

4   the attorneys of that case.  Mr. Calbert is here for

5   the first time.  I would like a trial date set in

6   that case as well.

7          As far as the rolling discovery, as you

8   know from the last Court hearing that we had, we had

9   defense motions where they requested STIU files; they

10  requested recordings, STIU files -- and what was

11  other bulk -- there was very specific things that

12  they had requested, that we had agreed to go ahead

13  and give, and that was the bulk of that discovery,

14  and we've been working very hard on it.

15         As the Court indicated, the vast majority

16  of the discovery is out, but discovery is going to

17  keep going on.  We're not going to hold on anything.

18  If it's Brady materials, we have to disclose it right

19  away.  We are continuing to serve search warrants in

20  this case.  Yesterday we served a search warrant on

21  one of the defendants that was in court.  Obviously,

22  we're going to disclose that.  We anticipate serving

23  another search warrant on a defendant that was in

24  court yesterday.  We have other people -- we are

25  continuing to investigate this.  We're continuing to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 603

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 604

```
 1    monitor jail calls.  So discovery will be on an
 2    ongoing, rolling basis as we get things.  But the
 3    vast majority -- Mr. -- I'm trying to see if I have
 4    the date -- I know that the calls that were referred
 5    to yesterday in the hearing regarding Mr. Baca have
 6    long ago been disclosed.  I will get that date and
 7    provide it to him a little bit later.
 8              But we have disclosed all of those items.
 9    We've disclosed thousands of pages.  So discovery is
10    going to keep happening.  The issue as far as the
11    discovery order, the discovery, when we were last
12    here, I believe Ms. Sirignano had said that she was
13    going to get with the United States that day and
14    provide what the defense had wanted.  I never heard
15    from her at all on that issue.
16              So the United States provided, as the Court
17    had required, on the deadline discovery orders that
18    we had worked out with Ms. Duncan as far as dates and
19    what was needed.  Obviously, Ms. Duncan could not get
20    approval from the defense.  But that is -- what the
21    United States submitted was something that we had
22    been working with a representative from the defense.
23              Their discovery order says the
24    Government -- from the Government's deadline 240
25    days.  It's just not workable.  That's eight months.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 604

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 605

 1    That's even past July of next year, if I'm correct,

 2    or just about -- to start the scheduling order.

 3            So -- oh, that was the majority thing they

 4    had wanted at the last court hearings.  I'm sorry, I

 5    was having a blank.  They had wanted all the old FBI

 6    files, for us to go through.  And that was done.  The

 7    FBI came down to Las Cruces, and we went through

 8    banker boxes.  And so a lot of old files were

 9    produced at their request.  We don't think they were

10    relevant, we don't think that they were necessary.

11    But based on the Court's ruling and our agreement, we

12    went ahead and did that, and that's the vast majority

13    of the discovery that was also sent recently.

14            So we would request that the Court set a

15    trial date; that it is as we had initially discussed,

16    next summer; that we can change the dates to reflect

17    that new date on the discovery order that's already

18    in place.  In this case, which has a defense deadline

19    for reciprocal discovery.  And the defense should

20    know that discovery is going to be ongoing, as we get

21    things, or as they make requests.  There is another

22    motion today -- well, I think a couple motions

23    today -- regarding discovery.  So that is where we

24    stand, Your Honor.

25            I cannot speak to the tablets, because that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 606

```
 1   is something that we're left out of.  Today I'm
 2   hearing for the first time that there are issues
 3   again.  So we're not involved with Mr. Aoki, and how
 4   the discovery has gone, or anything else.  I know
 5   that we were involved a little bit with regard to Mr.
 6   Gallegos -- or Mr. Garcia, I should say -- in regard
 7   to his tablet, given that he had had a trial date
 8   that was November 30 at the time.  But other than
 9   that, the United States has kept out of it.  So we
10   really don't have anything to say as far as that.
11            THE COURT:  The number the people keep
12   giving me, there has been about 40,000 documents
13   produced.  Is there going to be any more production
14   by the Government of anything, say more than 1,000
15   pages, other than what may be ordered or required in
16   the future, or on an ongoing basis?  I'm not talking
17   about telephone calls, future search warrants.  But
18   do you plan any sort of large document production?
19   And I'm defining it myself as 1,000; it might be
20   something else.  But do you expect to have any other
21   large document drops?
22            MS. ARMIJO:  No.  What I would anticipate
23   is things that we have from these motions, jail
24   calls, continuing search warrants, or interviews.
25   And I mean, if the defense wants us to hold off on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 606

1    things, which I don't think they do, we can certainly

2    hold off for big drops.  But basically, now, as we

3    get things, we're disclosing them.

4            And one other point about the discovery.

5    To say that the Baca discovery is far less is really

6    not true.  Because a lot of the discovery in Baca was

7    already disclosed in DeLeon, because we have a lot of

8    the overt acts that are charged in DeLeon that are

9    charged in Baca.  So, as this Court knows, discovery

10   in all the cases, including Mr. Garcia's case,

11   including in the PNM case, the 4269, it's going to

12   all parties here.  And so just because one case

13   number has significantly more doesn't mean it's not

14   related to the others, especially given the

15   racketeering nature of the case.

16           THE COURT:  How long do you think this

17   trial is going to take?

18           MS. ARMIJO:  Well, it depends on severance

19   and other issues.  But I would assume, probably when

20   we sort things out -- and I would anticipate some

21   people pleading guilty -- I would say two months.

22           THE COURT:  So you're basically requesting

23   a trial no later than starting in September?

24           MS. ARMIJO:  Correct.  And what I had been

25   anticipating was July, since we had vacated the July.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    But yes, that is correct.
 2              THE COURT:  So this is just fill-in for the
 3    Baca case?
 4              MS. ARMIJO:  That was my initial
 5    understanding, when we had originally talked is that
 6    they had wanted to bump them.  And that's why I
 7    brought up the issue yesterday.  Certainly, we can
 8    start in August.  But we want to build in a little
 9    bit of time, because I don't know, but the
10    Government -- three attorneys here are also in the
11    Baca case.
12              THE COURT:  All right.  Anything else, Ms.
13    Armijo?
14              MS. ARMIJO:  No.
15              THE COURT:  How about from the defendants?
16    Anything else anybody want to say on this?
17              All right.  Mr. Villa?
18              MR. VILLA:  Your Honor, I perhaps should
19    have mentioned this when I was first up here, but
20    just by way of example with respect to the discovery
21    that I'm more familiar with, the Javier Molina
22    murder.  On October 18, 2016, the Government produced
23    to Mr. Aoki, which then later gets produced to us, a
24    number of documents, maybe 100 documents or so, that
25    I would classify as something that I think the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 608

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 609

```
 1    Government would have had in their possession prior
 2    to the indictment in this case, or at least the
 3    superseding indictment in this case, which brought in
 4    Mr. Perez and some of the others.  And so, for
 5    instance, there were 15, 16 audio and body recordings
 6    of -- allegedly of Mr. Herrera and Mr. Perez, my
 7    client, recorded by a confidential human source.  And
 8    based on the other discovery that I've reviewed, and
 9    what can be heard from some of these recordings, I
10    believe that this information was in the Government's
11    possession before they indicted my client, and
12    perhaps one of the reasons why they indicted my
13    client.
14         And I can't speak for why it wasn't
15    produced prior to October 18, 2016.  But I guess
16    that's the concern I have is, you know, what else is
17    out there?  When are we going to get it?  And I think
18    that was part of the reason why we requested at the
19    time we filed the motion and discovery scheduling
20    order.  You know, I think, if you piece this case by
21    the different counts, we might be able to have a more
22    reasonable idea, for instance, when the discovery is
23    going to be due, or when we can try the case.  And
24    that depended on severance and that sort of thing.
25         But there never really was an agreement, at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 610

```
 1    least on my part when I filed the motion, that this
 2    case's trial would be contingent on 1610's trial.
 3    That was what Ms. Armijo conveyed to me that she
 4    wanted, was essentially an agreement that, if 1610
 5    moved, we would move.  And that agreement was not
 6    something we were willing to do.  And that's attached
 7    in an email in my motion; essentially, we weren't
 8    going to make our continuance contingent upon theirs.
 9              That's all I have, Your Honor.
10              THE COURT:  All right.  Thank you, Mr.
11    Villa.
12              Ms. Sirignano?
13              MS. SIRIGNANO:  Your Honor.  Just briefly.
14    I presented the Government with an 18-page discovery
15    letter in Mr. Garcia's cases, both in 15-CR-4275,
16    15-CR-4268, and 16-CR-1613.  And the Government did
17    state today that they're producing discovery in all
18    three cases, and that we all have it.  And this
19    herein lies the -- by and large the biggest problem
20    that all of us are having, is the way that the
21    Government is putting these productions together.
22    Because, as the Government has stated, some of these
23    cases are predicate acts for the RICO case in 1613.
24    So it's not evident from their productions and their
25    discovery letters which documents go for each count
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 610

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 611

43

```
 1    in, say, 4275 or 4268, and they also apply to the
 2    overt acts in 1613.
 3            And so it's not that Mr. Aoki or the
 4    Department of Corrections has any control over it.
 5    It's the way that this is all being produced and
 6    commingled that is requiring us, as counsel, to go
 7    through this with the clients, and make sure that we
 8    have all the evidence relevant to each count, each
 9    predicate act, and of course each overt act in the
10    indictment.
11            Also, I just want to briefly say that I
12    don't think I'm the only one that believes that this
13    tablet situation isn't working.  Clearly, Your Honor,
14    it's not.  This was a requirement from the
15    Government, back before Judge Gonzales early on in
16    this case, based on their theory of safety, and the
17    co-defendants passing information among each other.
18    Their solution was to have these tablets.  There was
19    delay in obtaining the tablets.  There was delay in
20    the 1613 people receiving their tablets, based on
21    budgetary constraints.  We were told July of this
22    year; then August.  Here we are in November.  For the
23    Government to stand up and say, Hey, we don't have
24    any control over this, this is Mr. Aoki and the
25    Department of Corrections, it just seems a little bit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 611

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 612

```
 1    concerning to us that we're having to make hard
 2    copies of things that we get from the November
 3    productions, going to the jails, spend the time,
 4    allow our clients to look at the new production, and
 5    then they're still waiting and waiting for tablets.
 6           Your Honor, I don't know what the solution
 7    is here.  This was something the Government wanted to
 8    assuage any safety concerns.  Then their argument
 9    recently was that the clients are sharing tablets
10    with each other.  There is nothing in the protective
11    order that says that they can't show their colleagues
12    or their co-defendants their tablets.  There is
13    nothing wrong with that.  They're sitting around
14    waiting for discovery.  And so I would just like to
15    propose -- have the Government come up with a
16    solution, since this tablet thing is completely
17    delaying the whole process here.  Thank you.
18           THE COURT:  Thank you, Ms. Sirignano.
19           Anyone else from the defendants?  All
20    right.  Well -- Mr. Davis?
21           MR. DAVIS:  Just trying to be brief.  I
22    forgot to mention, because of the protection order
23    when I go down to visit Mr. Herrera, I can't give him
24    a stack of documents and say, Review these, and when
25    I come back in two weeks, we can go through it.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 613

```
 1    can't do that.  So I have to -- and my investigative
 2    team -- take documents down there and try and make
 3    sense of allegations that are made in certain of
 4    those documents.  It's just very cumbersome.
 5    Obviously, it's daunting.  It's an exhausting
 6    experience.  It's difficult to spend more than four
 7    or five hours doing this at one time.  So,
 8    logistically, it's just difficult, and it's very
 9    difficult.
10           Additionally, I want the Court to know that
11    this discussion we've been having about volume of the
12    discovery and the problems, that's just the stuff
13    that we get from the Government.
14           Once, in the course of this case, the
15    investigators for all the defendants in this case, we
16    learn who the CIs are, who they may be, we're going
17    to be asking for Rule 17 subpoenas, doing our own
18    investigation, acquiring our own documents.  It's
19    going to take time to obtain those materials, get
20    them back, figure out how we want to use those
21    documents.  They may be offense reports, they may be
22    court transcripts, there may be witness testimony,
23    there may be witnesses involved in the cases that the
24    CIs were involved in that we may want to interview
25    and call as witnesses.  That's going to take a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    tremendous amount of time.
 2            So it's not just a matter of getting the
 3    discovery in a usable manner from the Government.
 4    And I appreciate Mr. Castellano and Ms. Armijo's
 5    situation with regard to the volume of the case.  But
 6    I just alert the Court to these matters and I ask the
 7    Court to take that into account when you're
 8    considering scheduling a trial next year in this
 9    case.  I just don't believe that that's going to be
10    possible for the defendants in the case to properly
11    prepare the case.
12            THE COURT:  All right.  Thank you, Mr.
13    Davis.
14            Anyone else?
15            Well, I do think the Government's consent
16    here to move this trial is premised on the fact that
17    we're sliding Baca back, and DeLeon is going to move
18    forward and sort of take its place.  So I think we
19    had that much of agreement.  And I realize people
20    want different things, and I may have to deal with
21    that down the road.  But I'm not inclined to put this
22    in orbit and not set a trial date.  I'm not inclined
23    to undo the scheduling order that we had so much
24    difficulty getting in place.
25            So I'm going to set the trial July 10th.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   All the problems that you're telling me, I realize

 2   are out there.  I'm reading them.  I'm hearing about

 3   them.  Not just in this case, but the others.

 4   Everybody will have to work extremely hard to make it

 5   take place.  And if we get to the point where it

 6   can't take place, we'll deal with it at that point.

 7   But I do think that we need to stick with the

 8   schedule that we hammered out in this case, hammered

 9   out in Baca, and take the agreement that we have, and

10   see if we can try to move this case along.

11            Did you have other deadlines that you

12   wanted to try to impose, or are you comfortable with

13   the scheduling order that we have?  Do we need

14   anything else, Ms. Armijo?

15            MS. ARMIJO:  Your Honor, I would just

16   request that -- and the United States will submit

17   that same scheduling order that you have, but with --

18   to reflect the new dates on it.  The defense deadline

19   has come and gone as far as defense disclosure.  We

20   haven't received anything.  We know there is stuff

21   out there, at least in the Molina case, because as

22   has already been indicated, that's on the eve of

23   trial.  And we know they've done interviews.  And we

24   believe that there should be -- well, we know from --

25   counsel in previous hearings have said that they had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    documents that we didn't have, and yet, we didn't

2    receive anything.  So we would just -- we'll provide

3    the Court with a new scheduling order with the dates,

4    but the same substance.

5            Your Honor, as far as 4269, does the Court

6    want to set that trial as well?  I don't think we've

7    heard from those attorneys as to when they would want

8    a trial date in that case.

9            THE COURT:  All right.  Well, what are you

10   thinking?  How long is that trial going to last?

11           MS. ARMIJO:  Your Honor, that trial is only

12   two incidents that occurred up at PNM.  One of the

13   defendants has already pled, so it's basically -- I

14   should say three defendants remaining in that case.

15   I don't think that case would take longer than two

16   weeks, possibly even less.

17           THE COURT:  All right.  Given the schedule

18   that we now have, when are you proposing that we set

19   that trial?

20           MS. ARMIJO:  If we start this one July,

21   maybe set the other one the beginning of October.

22           THE COURT:  All right.  Let me hear from

23   the defendants in that case.  Mr. Calbert, let me

24   hear from you -- Ms. Stillinger, if you want to go

25   ahead.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 616

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 617

```
 1              MR. BAKER:  Your Honor, the October date is
 2    fine.  I just echo some of the concerns.  My client
 3    has only had his tablet for a few weeks at most,
 4    maybe a month.  And absent his ability to look at
 5    discovery, I just reserve the right to raise this
 6    objection.  It affects his ability to go forward.
 7    Otherwise, October is fine.  We can set it for a firm
 8    date.  We're good to go.
 9              THE COURT:  All right.  Ms. Stillinger?
10              MS. STILLINGER:  Your Honor, Mary
11    Stillinger for Mr. Varela.  And I think October would
12    work fine, assuming that the July date is when we go
13    on the 4268.  I would echo some of the concerns
14    previously raised about whether it would actually go
15    then.  But I would like to have, I guess, agreement
16    on the order that 69 would go after 68, so we know.
17    I think the Government agrees with that.  And that's
18    the order we would like it in, so we know what we are
19    preparing for first.  And I think that distance
20    between the trials would be appropriate.
21              THE COURT:  All right.  Anyone else in --
22    I'm calling the Varela case?  All right.  October 2,
23    set it for October 2.
24              Did you have anything else you need on
25    that, Ms. Armijo --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 617

```
 1            MS. ARMIJO:  No, Your Honor.
 2            THE COURT:  -- on status conference portion
 3    of the Varela case?
 4            MS. ARMIJO:  No, Your Honor.
 5            THE COURT:  Okay.
 6            Let me address a little bit more
 7    Mr. Hammond's comments about -- and I know it was
 8    joined in by Mr. Castle and others -- I think to try
 9    and set a trial date only when we get done with
10    discovery in a case like this, or almost any case, is
11    just not realistic.  There is going to be -- you
12    know, if I just got United States v. John Doe,
13    oftentimes on Friday, I'm dealing with -- before the
14    Monday trial -- I'm dealing with new discovery
15    issues, discovery issues at almost every pretrial
16    conference.  It's just part of litigation and getting
17    ready for trial.  And so I think to push it back
18    until all discovery is done, we are going to have --
19    looks like search warrants continuing; it looks like
20    we'll always have telephone calls at the jail.  It's
21    just never going to probably end.  So I think to wait
22    to that point to set trial dates, it's not realistic.
23    And it's not what we do in other cases, so I'm not
24    inclined to do it here.
25            Obviously, if the Government starts
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 618

```
 1    dropping on 40,000 documents -- but my sense is that
 2    they are pretty much done, other than what I may
 3    order them to do in addition to what they've done.
 4    They've obviously made some decisions with
 5    redactions, CIs, and things like that, that are going
 6    to be litigated.  And so they may have to get some
 7    more information along those lines, but that the big
 8    bulk of stuff is out there.  So it's on that basis
 9    that I'm setting these deadlines.
10            All right.  Did you want to say something
11    else, Mr. Villa?
12            MR. VILLA:  Please, Your Honor.
13            THE COURT:  Mr. Villa?
14            MR. VILLA:  Thank you, Your Honor.
15            I just want to address the scheduling
16    order.  I respect the Court's decision with respect
17    to the July trial date, and I understand it.  But the
18    scheduling order that was entered it -- this is
19    Document 759, November 4, 2016 -- I understand the
20    Court wants to stick with that, given the problems we
21    had in agreeing.  But what I would ask the Court --
22            THE COURT:  It always helps to agree,
23    because if you wait for the Judge to decide stuff --
24            MR. VILLA:  So what I would ask the Court
25    to do is, this scheduling order has deadlines
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 619

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 620

1    anticipating a March trial date.  And so all I'd ask

2    that the Court do at this juncture is to move those

3    dates --

4              THE COURT:  I think Ms. Armijo says she's

5    going to send you an order.

6              MR. VILLA:  Okay.  So I just wanted to

7    clarify that; that all of the dates in the scheduling

8    order would be moved?

9              THE COURT:  Well, they're not moved right

10   now.  So if you have reciprocal obligations, they're

11   still in place.

12             MR. VILLA:  Well -- and that's the concern

13   I have.  We can oblige with our reciprocal

14   obligations -- I didn't say that right -- but, for

15   instance, the current scheduling order, December 5,

16   2016, has a scientific expert witness notice as to

17   reports.

18             THE COURT:  Well, I encourage you to get

19   together pretty quickly and try to give me some new

20   dates.

21             MR. VILLA:  What I'm asking, Your Honor, is

22   we would just move those, the same way we move the

23   trial four months.

24             THE COURT:  Get with them and move them.

25             MR. VILLA:  Is that something you want us

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 620

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 621

1   to do?  You don't want to resolve that today?

2          THE COURT:  Well, you know, the problem is

3   that everybody leaves here and they promise me a lot

4   of stuff, and I never get things.  So it seems like

5   you've got a deadline, maybe I'll get some stuff.

6          MR. VILLA:  No, I understand that, Your

7   Honor.  I'm just thinking that, given the concerns

8   that we've raised with discovery, just giving us the

9   notice -- I mean, for instance, if we move everything

10  by four months, we're under an obligation; we know

11  what it is now, and we can stick to that.  And that

12  is consistent with the same continuance that the

13  Court is granting for the trial date.

14         THE COURT:  Well, does the Government want

15  to just move everything four months?

16         MS. ARMIJO:  We can.  We can do that.  I

17  don't have a calendar right now, so I don't know if

18  moving something four months, if you go by the date,

19  will be on a Sunday or not.  But other than that,

20  yes, that's fine.  I was going to have my paralegal

21  start working on it immediately.

22         THE COURT:  Is everybody in agreement with

23  that?  Everybody move it four months?

24         MR. VILLA:  We can live with that, Your

25  Honor, on behalf of Mr. Perez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 621

1           THE COURT:  All right.  So we're going to

2     start moving them four months.  Everything that's in

3     November, I guess will be due -- December, January,

4     February -- March.  So the reciprocal discovery will

5     be due on March 18, which is a Saturday, so we'll

6     make it March 20.  The December dates will be April.

7     The scientific expert will be April 5th.  The

8     responses to Rule 16 discovery will be April 19.  The

9     responses to scientific expert witness notice we will

10    now move into May -- will be May 3rd, which is a

11    Wednesday.  The Rule 12 pretrial motions, Daubert

12    motions, the Government's notice of gang experts will

13    be May 9th, which is a Tuesday.  The responses to

14    pretrial and Daubert motions, defendants' notice of

15    gang experts, notices of defenses pursuant to Rules

16    12.1 and 12.3, will be March 23, which is a Tuesday.

17           Now, we're moving into June.  The responses

18    to notices of defenses, motions in limine, Federal

19    Rule of Evidence 404(b) notices, jury instructions

20    proposed voir dire will be June 6, which is a

21    Tuesday.  Responses to motions in limine, objections

22    to jury instructions, and proposed voir dire will be

23    now June 21, which is a Wednesday.  And we have now

24    the jury selection and jury trial set for July 10th.

25           (A discussion was held off the record.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 622

```
 1              THE COURT:  Okay.  Ms. Wild is telling me I
 2     gave a March date, when it should have been a May
 3     date, I think.  So the date for the responses to
 4     pretrial and Daubert motions will be March --
 5              THE CLERK:  May.
 6              THE COURT:  -- May 23 -- I keep trying to
 7     make that March -- so May 23, 2016.  And Ms. Wild
 8     will prepare an order and she will enter it.
 9              All right.  Anything else on that, Mr.
10     Villa?
11              MR. VILLA:  No, Your Honor.  Thank you.
12              THE COURT:  Anything else we need to do on
13     that, Ms. Armijo?
14              MS. ARMIJO:  No, Your Honor.  Thank you.
15              THE COURT:  All right.  What time of day is
16     it here?  That clock is hard to read.
17              All right.  Let's go -- we can go two
18     things.  We can go to the easy thing, which I think
19     is this prison visit that we got, which I don't think
20     will take too long.  Or we can start plunging in -- I
21     want to take a break in about 20 minutes -- we can
22     start plunging into the joint motion for disclosure
23     and production of the CI, which I think is going to
24     be a little bit more complicated issue.
25              Let's see.  Mr. Villa, are these both your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 623

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5 624

1    motions?

2            MR. VILLA:  Actually, Ms. Fox-Young will

3    argue those, Your Honor.

4            THE COURT:  But are they both your motions?

5            MR. VILLA:  Yes, Your Honor.

6            THE COURT:  Which one do you want to argue

7    first then?

8            MR. VILLA:  I think we can handle the

9    prison visit.  The CI motion, we have agreed to

10   resolve that --

11           THE COURT:  I understand that; that's the

12   reason I think it's a little more complicated with

13   the others.

14           Well, let's take up the -- let's go ahead

15   and get started with the CI motion, unless you want

16   to do the other one.  Do you want to do the other one

17   first?

18           MR. VILLA:  I think that makes sense.

19           THE COURT:  All right.  Well, let me say

20   this on the visit:  If this were being done -- let's

21   say you had a stack of documents over at your

22   offices, and you wanted somebody to come over and

23   look at them, sometimes it's normal to have somebody

24   set in there, and maybe look at it, you know, make

25   sure nothing is stolen.  Although, among counsel, you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 625

1  know, I used to trust the people that I was working

2  with, so I'd give them privacy as they went through

3  documents and things.  I can understand a little bit,

4  sometimes if it's a private corporation, and you're

5  going out and you're looking at something, you've got

6  a little bit of -- you may not want a plaintiff's

7  lawyer rummaging around your offices and talking to

8  employees and things like that, so you figure out

9  some way to sort of escort people out there.  But I

10  think in the particular circumstance of this, where

11  we may have a large number of defense lawyers there,

12  they are going to probably be discussing this with

13  each other.  They're going to be probably saying, Mr.

14  Villa, have you looked over here?  And if the

15  Government lawyers are there, I think it's going to

16  inhibit their ability to do the things they need to

17  do at a site visit.

18      So I don't think any of you have found any

19  cases that fit this into a box.  But I see that the

20  visit is going to be inhibited, and not what the

21  defendant's need and what they probably will do, if

22  they've got the Government's attorney standing there

23  watching them do the inspection.  And so I think

24  there are work thoughts, their work product will be

25  disclosed, or that it will not take place.  It will

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 625

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 58 of 626

```
 1    not be robust.  I don't think the defense lawyers are
 2    going to steal anything or take anything.  And there
 3    will be plenty of people there to make sure they
 4    behave in a prison setting.  So I'm inclined to grant
 5    their motion.  And the Government has access to the
 6    facility all the time.  And I just think for the
 7    robustness of the defendants' site visit, it should
 8    just be them that are present.
 9              All right.  Ms. Fox-Young, if you wish to
10    speak on behalf of your motion.
11              MS. FOX-YOUNG:  Thanks, Your Honor.
12              Justine Fox-Young on behalf of Mr. Perez.
13    I won't go into great detail on the legal arguments
14    unless the Court has a particular question.  And we
15    did file a reply late last night, and I apologize --
16              THE COURT:  Yeah, I got started on it, but
17    I didn't get quite done with it.  But I did start it
18    this morning.
19              MS. FOX-YOUNG:  I know the Court is very
20    efficient, and it was only a few hours ago.  If there
21    are any specific questions related to the reply, I'm
22    happy to go through those.
23              I do want to clarify for the Court that we
24    are scheduled, not only to visit Southern New Mexico
25    Correctional Facility, but also to view all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 627

 1   evidence in this case, all the tangible physical

 2   evidence.

 3          At the last hearing I think it was somewhat

 4   unclear, first, as to where all that evidence is

 5   located.  And I would like to just put on the record

 6   that we think -- and if there is an issue, we think

 7   the Court should order it -- but we think we're

 8   entitled to view all the evidence related to all the

 9   counts, given it is a VICAR case, and given all the

10   allegations in this case, we've received all

11   discovery.  Although, this viewing is only set up for

12   the defendants in Count 6 and 7, relating to the

13   Molina murder.

14          We also at Southern New Mexico Correctional

15   Facility think we ought to be entitled, and would

16   like to schedule visits of both pods, A pod and B

17   pod, upstairs and downstairs, the control room, the

18   wheelchair program, and the pod where defendants were

19   moved subsequent to the murder.

20          And so, if the Court has further questions,

21   given that we are going to be viewing evidence, in

22   addition to visiting the facility, I can go through

23   those.  But, you know, as we say in the briefing, we

24   don't object to the presence of agents necessary to

25   maintain chain of custody, or to maintain security.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN**
**& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 627

```
 1   But we feel strongly that those individuals should
 2   not be members of the prosecution team.
 3            And given the Government's response, which
 4   was filed on Friday, we'd like the Court to order
 5   that any information that is disclosed in the setting
 6   at the facility or at the evidence viewing, any
 7   information that is obtained by agents or COs, not be
 8   forwarded to the prosecution team.  And there are
 9   easy measures that the Government takes.  I note in
10   our reply that in recent weeks the Government has
11   served warrants using a filter agent or filter
12   agents.  The Government knows how to employ taint
13   teams.  The Government knows how to impose firewalls.
14   But we think that the Court ought to order that any
15   discussions, any work product -- and we think that
16   everything that we say, produce, develop, record, any
17   processes that we employ on Friday, are work product,
18   and we don't want that information disclosed to the
19   prosecution team.
20            THE COURT:  All right.  Anything else,
21   Ms. Fox-Young?
22            All right.  Anyone else want to speak on
23   this motion?  Mr. Davis?
24            MR. DAVIS:  Judge, just briefly.  One thing
25   that wasn't mentioned by Ms. Fox-Young was we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 628

1    anticipate videotaping certain areas of that facility

2    for use at trial.  And so we ask the Court to give us

3    permission to do that as well.

4              THE COURT:  All right.  Anyone else?

5              All right.  Mr. Castellano, are you going

6    to speak on this motion?

7              MR. CASTELLANO:  Yes, Your Honor.

8              THE COURT:  Mr. Castellano.

9              MR. CASTELLANO:  Thank you, Your Honor.

10             May it please the Court.

11             THE COURT:  Mr. Castellano.

12             MR. CASTELLANO:  I guess, Your Honor, I

13   would start out with the question to the Court, in

14   terms of how many times has this -- a request like

15   this been made to the Court, and how many times has

16   the Court granted such a request?  I've been doing

17   this for 19 years, Ms. Armijo for a little bit

18   longer.  We have never run into the situation.  She's

19   done this in capital cases, and it's just never been

20   a problem.  So has the Court run into this before?

21   And has the Court granted this motion before?

22             THE COURT:  I couldn't tell you.  If you

23   don't see it in any of my opinions or anything -- it

24   could have come up like requests come up in a hearing

25   like this, and I might have done it.  But probably a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 630

```
 1    better request to ask Ms. Wild.  Anything come up
 2    like this?  She's saying probably not in the criminal
 3    context, but we've had some similar stuff like this
 4    in civil cases.  I do my own discovery in the civil
 5    cases, so I may have had something like it more in
 6    the civil context.
 7             MR. CASTELLANO:  And I ask that question
 8    for a reason.  Because -- it probably has not come up
 9    because it is not an issue.  And I understand the
10    defense not wanting us to look over their shoulder,
11    and we're not interested in looking over their
12    shoulder.  But as a practical matter, each of these
13    teams represents one defendant.  We're prosecuting
14    40-plus defendants, and have our own cases on the
15    side.  So when an opportunity comes like this for us
16    to view the evidence -- it's true that at any given
17    time we can go and look at evidence, but it's just
18    not practical for us as well.  So, if the evidence is
19    going to be at a certain place at a certain time,
20    it's a better time for us to be there, just as a
21    practical matter for us to look at it.
22             I've already looked at evidence with a
23    couple counsel in this case, Ms. Sirignano, and
24    Ms. Harbour-Valdez on a smaller scale.  There was no
25    problem there.  If counsel needs to step back for a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 630

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 631

1  few minutes to discuss the matters, that's fine.  If

2  they need us to step back and discuss the matters,

3  that's fine.  But like I said, it just doesn't come

4  up, because it's just never a problem.  And I would

5  invite counsel to talk about times when that's been a

6  problem for them to view the Government's evidence in

7  a case like this.

8          The best quote in the abstract the defense

9  has is they want to see the evidence, free from the

10  roving eye of the prosecutor or the court.  And

11  that's from the Reagan case.  But in that case, it's

12  a completely different context, because in the Reagan

13  case, that quote is related to a shiv that was

14  provided to the defense team, so they had their own

15  secure facility to look at classified information.

16  And we would agree in those circumstances, defense

17  should have its own area to review its own discovery.

18  In this case, reviewing the Government's discovery,

19  not their own.

20          So, as the Court noted, there just aren't

21  any cases on point because this typically is not an

22  issue.

23          The other issue -- well, there are a couple

24  other additional issues.  One is that, as the Court

25  knows, the presence of a third party vitiates any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 631

 1   issues related to privilege.  So the defense is

 2   inviting third parties in who are law enforcement,

 3   but at the same time still wanting the advantage of

 4   the privilege.  And it's just not practical.

 5           And the reply indicates that we would be

 6   actively seeking the information from the agents.

 7   But what we said it would, nonetheless, increase the

 8   likelihood that we would obtain the information.

 9   Obviously, the defense in court has argued to this

10   Court that the Corrections Department and State

11   Police and other agencies are so tied into this case

12   with the Government that basically they are members

13   of the team.

14           So they can't get away from that at this

15   point by saying, Well, we're going to let members of

16   their team, if you buy the argument, sit in on our

17   evidence viewing, but at the same time, we don't want

18   them to talk about what we talked about.  It's just

19   not practical.

20           The other issue is --

21           THE COURT:  Don't we kind of do that all

22   the time?  When I've got an attorney that's being

23   fired by a defendant, the U.S. Attorney's Office

24   steps out, but the marshals stay in here.  I mean,

25   there is nothing that can be done about that.  At the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 632

1    same time with the prison, it's not going to be an

2    empty prison.  So people are going to have to be

3    there to -- when I've gone to prisons and things,

4    they -- there is people with me, and then there is,

5    obviously, the prison going about its business.  But

6    we still sort of protect that sort of communication

7    between the defendant and the court and their

8    attorneys, even though there is third parties here.

9              MR. CASTELLANO:  I agree.  And if there are

10   issues, the additional personnel become witnesses.

11   And practically speaking, this happens every day

12   we're in court.  When counsel are speaking to their

13   clients, the Government is in the room.  We don't try

14   to eavesdrop on their conversations.  But we are at

15   the same place at the same time conducting business.

16   They have their private conversations, and we don't

17   interrupt them.

18             The other issue is that we're going to have

19   multiple defense teams there discussing the case.  So

20   there are two explanations:  One, if you have teams

21   there doing their own thing, they're invading the

22   privacy of the other team when they discuss the case.

23   The other reality of the situation is that there is

24   probably a joint defense agreement, where they're

25   agreeing to do this.  And that raises the issue of



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 633

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 634

```
 1    whether or not the Court is willing to look at the
 2    joint defense agreement, to make sure there are no
 3    issues when things like this come up.  Otherwise, the
 4    presence of each of these defense team interferes
 5    with the confidentiality of any other team.
 6              THE COURT:  All right.
 7              MR. CASTELLANO:  That's it, Your Honor.
 8    Otherwise, it's just not practical, because we need
 9    to look at the evidence also, and we don't have that
10    many hours in the day either.
11              THE COURT:  Let me ask -- before you go,
12    Mr. Castellano, let me ask Ms. Fox-Young, how long do
13    you think this tour is going to take?
14              MS. FOX-YOUNG:  Your Honor, physically the
15    tour of Southern, the evidence viewing, or
16    everything?
17              THE COURT:  Well, I guess I don't know what
18    "everything" is.  I thought this was primarily
19    viewing of the prison.  What else are you going to be
20    looking at while you're there?
21              MS. FOX-YOUNG:  Your Honor, we'll be
22    viewing the physical evidence collected in the case.
23    I can't tell the Court how many pieces of evidence,
24    the volume that exists, because we have not --
25    although we've asked for some time for this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 634

```
1   opportunity, we have not physically viewed it.  I
2   could speculate, but I think it's going to take the
3   better part of the day to do all this.  I will note
4   that with respect to the last point, some defense
5   counsel --
6            THE COURT:  Well, let me let Mr. Castellano
7   finish, then I'll let you.
8            Do you have anything?  I guess what I was
9   thinking, Mr. Castellano is, if it's important to
10  view it at about the same time, it seems like, if
11  they're going to be there on the 2nd, or whatever day
12  it is, could you just arrange with the prison to be
13  there the next day?
14           MR. CASTELLANO:  I think what we're having
15  is two things going on that day.  One is an evidence
16  viewing in Las Cruces.  The defense has also
17  requested the opportunity to see the facilities at
18  Southern.  So there are actually two moving parts.
19           THE COURT:  Where is the evidence viewing
20  taking place then?  What are we talking about?  The
21  shanks and that sort of stuff?
22           MR. CASTELLANO:  Right, probably the State
23  Police Office.  And then there is a visit to
24  Southern.  Now, this is a request to view the
25  evidence from Counts 6 and 7.  I heard additional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 635

 1   requests this morning that weren't made before, so

 2   we're going to have to sort through that probably on

 3   another occasion.

 4          The other issue is we will need to know

 5   the -- have a request from defense counsel where they

 6   want to visit at the Corrections Department.  Now, my

 7   understanding is the Corrections Department has

 8   agreed to these things, but they just need to know

 9   where people will be in the facility and when.

10          THE COURT:  All right.  Thank you, Mr.

11   Castellano.

12          MR. CASTELLANO:  Thank you, Your Honor.

13          THE COURT:  Ms. Fox-Young?

14          MS. FOX-YOUNG:  Thank you, Your Honor.

15          I did list the areas of the facility that

16   defendants, defense counsel, and their teams would

17   like to visit.  And I can go through that again, if

18   the Government needs.  Those are both A pod and B

19   pod, both upstairs and downstairs, the control room,

20   the wheelchair program, and the pod or pods where

21   defendants were moved after Molina died.

22          And, Your Honor, I'll just go briefly

23   through the points that the Government raises.  I

24   don't want to belabor this, and I know the Court has

25   other motions to address.  We acknowledge that this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 636

```
 1   is an unusual request, but this is also an unusual
 2   case.  The Government has charged in a particular
 3   manner.  We've gone over and over the complexity of
 4   the case and the volume of the evidence.  We do
 5   request to see all of the physical evidence.
 6   Although, we're charged in Counts 6 and 7, and at
 7   least one of the defendants charged in Counts 6 and 7
 8   also charged in other counts.  We think we're
 9   entitled to see all of the physical evidence, not
10   just what the Government thinks is related to Counts
11   6 and 7.  And that is partly because there are ties
12   between CIs.  There are ties all across the various
13   enumerated counts in this case.
14           Secondly, I think the Court has already
15   addressed the practicality of the defense conducting
16   any sort of reasonable and productive viewing in the
17   presence of the prosecution.  And it simply is not
18   practical to do it with them there.  In the reply, I
19   addressed the Government's argument that defendants
20   waive the work product privilege.  I think it's very
21   clear -- and I cite this Court's ruling in EEOC
22   versus Roswell Radio, from 2007, in which the Court
23   notes that, without deciding the point, even
24   selective disclosure of work product wouldn't trigger
25   subject matter waiver.  I don't think there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 638

1    anything to the argument that we would be waiving,

2    particularly if the individuals present are not on

3    the prosecution team.  The fact that they have some

4    sort of law enforcement credentials doesn't change

5    that.

6            Without providing the Court all the

7    citations, we don't only cite Reagan, we cite

8    Hickman, we cite the recent DOJ case that addresses

9    whether or not the Blue Book is subject to production

10   under FOIA.  The D.C. Circuit found that it is not,

11   because it constitutes work product.  The Government

12   also cites that case.  I think it really favors the

13   defense in terms of the broadness of the doctrine.

14   This Court has considered this doctrine in numerous

15   civil cases and criminal cases, and we go through a

16   number of those.

17           And finally, I just reiterate our request

18   that because of the increased likelihood that the

19   prosecution team could gain access to defendants'

20   work product, just based upon the way the evidence is

21   held, the custody of the evidence, and the location

22   at Southern, we ask that the Court order that that

23   information not be disclosed.  And as has already

24   been mentioned, that would include any video of

25   defense counsel and their teams, sign-in sheets, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 638

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 639

```
 1    other records of the visit.

 2            And finally -- I think other counsel may

 3    want to address this -- other counsel have requested

 4    that defendants go one by one to view the evidence,

 5    and the Government has declined.  And so that is why

 6    we are proceeding this way.  We tried to work this

 7    out without the Court's involvement.  However, the

 8    Government's arguments with respect to defense

 9    privilege, potential joint defense arguments are, you

10    know, this is not the context in which the Government

11    simply has no standing to raise them, and we argue

12    there is no waiver.

13            Thank you, Your Honor.

14            THE COURT:  All right.  Thank you,

15    Ms. Fox-Young.

16            Any other defendants?  Mr. Castle?

17            MR. CASTLE:  Yes, Your Honor.

18            Although this motion only deals with Counts

19    7 and 8, it's our understanding that the Court's

20    order is probably going to be the order that will

21    relate to any other evidence viewings.

22            I could tell the Court that the attempts to

23    look at the physical evidence in this case has a

24    tortured history.  On behalf of the Count 1 and 2

25    defendants, we began in April to try to obtain an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 639

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 640

```
 1    opportunity to look at the physical evidence in this
 2    case.  We asked, on behalf of Mr. Garcia, for a
 3    confidential viewing of the physical evidence, so
 4    that we could do it on our own without the other
 5    defendants.  That was denied by Ms. Armijo on April
 6    27.  She indicated that she was requiring it to be a
 7    joint viewing with all defense counsel for defendants
 8    indicted in Counts 1 and 2, and that that was for the
 9    convenience of the Government.  We specifically
10    objected to that.  But in an attempt to try to reach
11    agreement, rather than litigate this issue, we've
12    agreed to a joint viewing.
13           But if the Government's position is going
14    to be that, by doing so, we're waiving the work
15    product privilege, we're asking for an individual
16    viewing.  They can't have it both ways.  They can't
17    insist on a condition that then ends up resulting in
18    a waiver of work product privilege.  And so they can
19    either try to work with us and agree to allow us a
20    confidential viewing where our work product
21    privileges are intact, or they can do individual
22    viewings.
23           In addition, the reason this has probably
24    not litigated before Your Honor is because of the
25    unusual request here is that the Government be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 640

1   watching what we're doing.  That's the unusual part.

2   Normally, the way evidence viewing happens is defense

3   counsel is allowed to do confidential viewing.  This

4   is the first time I've ever heard of this.  And so --

5   and finally, the argument that because law

6   enforcement might be present, that's only a

7   requirement for security purposes.  It's no different

8   than when we talk to our clients in a room where one

9   of the marshals is present, the attorney-client

10  privilege still extends.  Just because there is a

11  marshal there for security purposes, does not mean

12  you're waiving your attorney client privilege.

13          THE COURT:  All right.  Thank you, Mr.

14  Castle.

15          Mr. Lowry?

16          MR. LOWRY:  Your Honor, only briefly.  I

17  wanted to backstop Ms. Fox-Young's fine work.

18          I did want to point out one thing, and a

19  follow-up on Mr. Castle's comments.  If the

20  Government wants to argue that there is a waiver

21  because other law enforcement officials will be in

22  the pods that we'll visit, the alternative to that is

23  to have the Court order the whole pod vacated, and

24  you know, we can cover up the cameras and seal the

25  room.  But that's frankly not practical, and that's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 641

1    why we're trying to make this accommodation.  And I

2    think the Court has the authority, even if there is

3    an allegation that there would be waiver under

4    Federal Rule of Evidence 502(d), that the controlling

5    effective order of this Court that any, even alleged

6    waiver has taken place, that that isn't a waiver.

7            So in other words, what Ms. Fox-Young said,

8    I think, is actually well-founded; that this Court

9    should order that there is no waiver just because

10   other individuals or law enforcement officers may be

11   present; that that doesn't vitiate any work product

12   privilege or attorney-client privilege that would

13   exist.  We're trying to make this a reasonable and

14   practical accommodation to everyone involved.  And

15   it's, frankly, insensitive that that would be held

16   against us, Your Honor.

17           THE COURT:  All right.  Thank you, Mr.

18   Lowry.

19           Anyone else?

20           All right.  I will grant the joint motion

21   to exclude the prosecution team from the December 2,

22   2016, evidence viewing.  The prosecution team should

23   not go in the next day or any other time and try to

24   elicit information about what the defense lawyers did

25   while they were there.  And if they are approached by

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 642

1    anyone with the Corrections Department or the State

2    Police -- if that's where the viewing of the other

3    evidence takes place -- with information, they should

4    not take that information without, A, consulting with

5    coordinating counsel, and seeing if it can be worked

6    out.  And if it's not in the nature of something that

7    can be worked out, then don't take it without

8    approaching the Court and trying to approach with as

9    much information for everyone to know about it as

10   possible.  But those will be the contours of the

11   visit.

12           If the Government wishes to challenge, down

13   the road, the fact that there is not work product

14   here, they can raise that down the road in the

15   specific context of the information that they're

16   trying to get ahold of, or saying that's been waived,

17   rather than us trying to decide that today in a

18   vacuum, in a theoretical sense, I think I am trying

19   to preserve the defendants' ability to talk while

20   they're there, and do what they need and can do

21   there.  So I'd be inclined to continue to protect it

22   down the road, whether it fits neatly into some

23   recognized privilege or protection, or just my

24   ability to control the discovery in this case.

25           As far as all the other requests that are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 643

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 644

1   being made, until there is a problem, I'm not going

2   to start ordering people to do things, particularly

3   people that aren't here.  So it seems like y'all have

4   been able to work out a lot of issues with this

5   visit.  And so if there is problems, y'all can

6   re-approach.

7            But at the present time, I'm a little

8   reluctant to start ordering Corrections to do things,

9   and I not know what I'm ordering, and the impact it

10  might have in the prison facility.  So I'm not

11  inclined to start doing that off the cuff today.

12           Let's take a break.  If you have something

13  else you want to say on this -- this was the easy

14  issue, so if you have more things to say on the easy

15  issue, but I've got to give Ms. Bean a break.  So

16  we'll take it up afterwards.  All right.  We'll be in

17  recess for about 15 minutes.

18           (The Court stood in recess.)

19           THE COURT:  All right.  Ms. Fox-Young, do

20  you have something further you wanted to say?

21           MS. FOX-YOUNG:  No.  Thank you, Your Honor.

22           THE COURT:  All right.  I wasn't trying to

23  scare you off.

24           MS. FOX-YOUNG:  Thank you, Judge.  We

25  resolved our outstanding issues.  I think we're all

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 644

1    set for Friday.  Thank you.

2              THE COURT:  All right.  Ms. Armijo?

3              MS. ARMIJO:  Your Honor, one thing that we

4    did talk about, right now we have two sets of

5    viewings set for Counts 1 and 2, and then the Molina

6    murders.  And just so that we're clear, then we have

7    point persons assigned to each of those that will be

8    reaching out to anybody.  And if anybody from the

9    other counts wants to attend those, then they're

10   welcome to.  We're not going to restrict it to, you

11   know, the defense teams in those counts, but -- and

12   so, as we go through the different murder teams, so

13   to speak, we will open it up to everybody, and have

14   one point person.  I think that's what we decided

15   over the break.  And I know Ms. Strickland is going

16   to be the one for the one that's coming up.

17             THE COURT:  Okay.  All right.  Mr. Cooper?

18             MR. COOPER:  Thank you, Judge.  I'm the

19   point person for the December of 15 viewing of the

20   evidence and the site at SNM, Counts 1 and 2.  If

21   anybody wants to come to the SNM site viewing, they

22   need to send me their name and date of birth, so I

23   can forward it on to Ms. Armijo.  And we're going to

24   do the December 15 under the same terms and the

25   conditions you set for Mr. Villa's tour.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 645

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 646

```
 1                THE COURT:  Thank you, Mr. Cooper.

 2                MR. COOPER:  Thank you, Judge.

 3                THE COURT:  Anything else on that?

 4                All right.  Well, let's turn to CIs.  Let

 5      me make a few comments.  As we know from the hearings

 6      we've been together in, a lot of these have dealt

 7      with procedural issues, scheduling, discovery, and

 8      things like that.  But now we're moving into a new

 9      phase that requires me to make very fact-intensive

10      determinations as to who gets this information, if

11      anybody.

12                You guys know a lot more about this case

13      than I do, and particularly the facts of your counts

14      and the alleged murders, and who was involved.  I

15      work hard, I try to read everything, so I try to be

16      as prepared as I can.  But I'm just not as familiar

17      with these names, events, and things like that as you

18      are.  So, as we move into this phase, don't feel like

19      you're going to insult me if you repeat names and

20      repeat incidents and stories.  You need to educate

21      me.  That's the only way I can make an informed

22      decision on this.  So I encourage you to educate me

23      about the facts, because that's what I'm going to

24      need to make these determinations.

25                All right.  Mr. Villa, I know you filed the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



DNM 646

```
 1   motion.  It looks like maybe you got your issue

 2   resolved, or you're a long way down the pike.  Why

 3   don't you tell me exactly where you are, or what you

 4   want to tell me, and if you have any remaining

 5   issues, what they are.

 6              MR. VILLA:  Thank you, Your Honor.

 7              THE COURT:  Mr. Villa?

 8              MR. VILLA:  Today we don't have any

 9   remaining issues that we're going to ask of the

10   Court.  So we filed our motion; the Government agreed

11   to disclose to us, and us alone, under the conditions

12   of the protective order that you signed, the name of

13   the informant and the informant's attorney.  They

14   have done that.

15              Should the Court grant any of the other

16   requests today, we may come back to you to modify the

17   protective order; for instance, to allow us to

18   communicate with our co-counsel about those things,

19   share information.

20              THE COURT:  Let me just ask:  That

21   protective order is public?

22              MR. VILLA:  Your Honor, I believe it was

23   filed publicly --

24              THE COURT:  Can you remind me, then, the

25   terms of the protective order?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 647

1           MR. VILLA:  Sure, Your Honor.  The

2     protective order --

3           THE COURT:  It's attorneys' eyes only?

4           MR. VILLA:  As attorneys, we were allowed

5     to tell Mr. Perez who it is.  He's not to disclose it

6     to anyone.  And we can disclose it to our

7     investigator, defense team, and that sort of thing,

8     but we cannot disclose it to anybody else.  So we

9     have not done that.

10          But I do think, if the Court were to grant

11    it as to some of the other co-defendants, if the

12    Government was not agreeable, we may come back and

13    ask for permission to modify that protective order,

14    or -- we certainly reserve our right to seek other

15    information about the informant as we conduct our

16    investigation.

17          One of the things that we agreed with the

18    Government -- so I'm not asking for any of that

19    today -- we had asked for a number of things about

20    this informant.  And we agreed to, essentially,

21    withdraw those requests in exchange for the

22    information.  But we may come back to the Court at a

23    later date, depending on what our investigation

24    uncovers.  But for today's purposes, for Mr. Perez,

25    we are satisfied.



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 820-6349                                     FAX (505) 843-9492
                                                          1-800-669-9492
                                               e-mail: info@litsupport.com

DNM 648

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 649

```
 1              THE COURT:  Okay.  Thank you, Mr. Villa.

 2              All right.  Who, then, do we want to take

 3    up first?  Who is the person, then, that we need to

 4    take up first?  Is it Mr. Troup that's going to

 5    have -- be the first person?

 6              MS. HARBOUR-VALDEZ:  Your Honor, I'm happy

 7    to go first.

 8              THE COURT:  All right.

 9              MS. HARBOUR-VALDEZ:  Your Honor, as I

10    stated in the reply, the source at issue here makes

11    just a couple of statements that relate to Mr. Troup.

12    I think --

13              THE COURT:  What would be best for me to

14    have -- would it be to have Mr. Villa's redacted

15    material in front of me, so I can see the statements

16    that you're going to be referencing?

17              MS. HARBOUR-VALDEZ:  That might be helpful,

18    Your Honor.

19              THE COURT:  All right.  So I have it in

20    front of me.  And do you have it in front of you?

21              MS. HARBOUR-VALDEZ:  I can shortly, yes.

22              THE COURT:  All right.  So then there is

23    CM/ECF numbers at the top.  If you want to take me to

24    those; give me the docket number and then the CM/ECF.

25              MS. HARBOUR-VALDEZ:  Sure.  It's Docket No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 649

1    698-1, and it would be page 2 of 2, to which I'm

2    referring.

3             THE COURT:  Okay.  Hold on just a second.

4    Let me do some thinking here, to get myself -- all

5    right.  So I have that in front of me.  And you were

6    about to tell me there are two statements in here

7    that reference Mr. Troup?

8             MS. HARBOUR-VALDEZ:  Yes, that would be in

9    paragraph 6, Your Honor.

10            THE COURT:  I'm going to see if I can find

11   a highlighter here.  All right.  It's --

12            MS. HARBOUR-VALDEZ:  Paragraph 6.  It

13   starts with, "The Rascon brothers."

14            THE COURT:  All right.  I got it.

15            MS. HARBOUR-VALDEZ:  So this CI -- first of

16   all, I'm going to go with the second sentence that

17   talks about the paperwork that was delivered.

18            THE COURT:  And can you -- if you know, can

19   you educate me about what that term means?

20            MS. HARBOUR-VALDEZ:  Yes, Your Honor.  It's

21   been known throughout the discovery that there were

22   documents confirming that the victim, FS, was a known

23   informant.  The discovery produced thus far

24   indicates --

25            THE COURT:  Is it known to everybody who FS

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 650

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 651

```
 1    is?

 2                MS. HARBOUR-VALDEZ:  Yes.  I just didn't

 3    know if the Court wanted me to use the names.

 4                THE COURT:  I would appreciate it.  I'm

 5    going to have to get into this.

 6                MS. HARBOUR-VALDEZ:  It's Freddie Sanchez.

 7                So the discovery that's been disclosed thus

 8    far indicates that it was known among everyone that

 9    he was an informant, and that these documents, this

10    paperwork, had been circulated among the inmates at

11    Southern New Mexico Correctional Facility.

12                THE COURT:  And this paperwork like a plea

13    agreement, or what are we talking about?

14                MS. HARBOUR-VALDEZ:  We don't know --

15                THE COURT:  You don't know what paperwork

16    is --

17                MS. HARBOUR-VALDEZ:  The discovery

18    indicates that that paperwork was somehow destroyed.

19                THE COURT:  Okay, but it was something that

20    indicated that --

21                MS. HARBOUR-VALDEZ:  That he had cooperated

22    in some previous matter.

23                THE COURT:  Mr. Sanchez was a cooperator?

24                MS. HARBOUR-VALDEZ:  Correct.

25                So this CI is the first one who indicates
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 651

1    that someone by the name of "Cheech" delivered that

2    paperwork to Southern New Mexico.

3            The discovery that's been produced to date

4    indicates that there was a gentleman named Kyle

5    Dwyer, who was housed there at Southern with everyone

6    else -- did not use the name or the alias "Cheech" --

7    actually admitted to being the individual who

8    delivered the paperwork from PNM in Santa Fe down to

9    Southern New Mexico.  And in fact, Mr. Dwyer received

10   a misconduct report for his activities related to

11   that.

12           Unfortunately, Mr. Dwyer is deceased.  So

13   we obviously cannot interview him.  We cannot find

14   out if that is, in fact, true.  We've done some

15   additional investigation on that.  It appears that

16   Mr. Dwyer -- and this is not in my reply -- but Mr.

17   Dwyer may have, in fact, won a disciplinary appeal on

18   that very issue.  We are looking for that information

19   now.

20           THE COURT:  So the disciplinary issue of

21   having circulated this paperwork?

22           MS. HARBOUR-VALDEZ:  Correct.

23           THE COURT:  That was a violation of prison

24   regulations?

25           MS. HARBOUR-VALDEZ:  Correct.  But it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 652

```
 1    appears that he may have appealed that, and won,
 2    based on insufficient evidence.  We are investigating
 3    that now.  It's not something that's been produced in
 4    the discovery to date.
 5              THE COURT:  So he admitted to it, and then
 6    he was also, then, sort of prosecuted by the prison
 7    and -- but then they -- you think that they lost?
 8              MS. HARBOUR-VALDEZ:  Correct.  I don't have
 9    anything to provide to the Court yet, because we are
10    still investigating that.  That is just on
11    information and belief at this point.
12              So, if in fact, Mr. Dwyer was exonerated,
13    perhaps someone named Cheech is responsible.  We
14    would very much like to know who Cheech is.  And I
15    haven't found that moniker elsewhere in the
16    discovery.  If this individual was either in one of
17    the units, or knows who Cheech is, or was at PNM at
18    the time and knows about the paperwork, we would love
19    to know.  I mean, that's one of the reasons we need
20    to know who this person is.  He's provided an
21    alternate suspect, who perhaps had a hand in this
22    incident.  So we certainly feel like --
23              THE COURT:  When you say "alternate
24    suspect," what are you referring to?
25              MS. HARBOUR-VALDEZ:  Well, in a conspiracy,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Your Honor, assuming that Mr. Dwyer was still alive,

2    and lost his administrative appeal, I assume that he

3    would have been indicted in this case as a

4    co-conspirator for providing paperwork that then led

5    to the homicide in this case.

6              THE COURT:  When I read "Huero" Troup,

7    that's your client?

8              MS. HARBOUR-VALDEZ:  That's my client,

9    correct.

10             THE COURT:  And what is the Government

11   accusing your client of doing?

12             MS. HARBOUR-VALDEZ:  Of participating in

13   the homicide.

14             THE COURT:  All right.  Tell me about the

15   homicide.

16             MS. HARBOUR-VALDEZ:  My version, or what --

17             THE COURT:  I'll take either one, or both

18   of them.  Let me have both of them.  Give me the

19   Government's and then give me --

20             MS. HARBOUR-VALDEZ:  The Government alleges

21   that a number of individuals, including Mr. Troup,

22   murdered Mr. Sanchez, after this paperwork was

23   circulated in the pod.

24             THE COURT:  Is there any more details to

25   it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 654

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 655

```
 1            MS. HARBOUR-VALDEZ:  There was DNA

 2   evidence; my client was exonerated by that DNA

 3   evidence.

 4            There are a number of cooperating

 5   defendants, we believe, who have given varying

 6   statements.

 7            But, again, this source is the only one who

 8   has mentioned this person, Cheech, as being a

 9   participant somehow in this conspiracy.  That's why

10   we're interested in finding out who he is, what he

11   knows, how he knew Cheech had paperwork.  Because, I

12   mean, he's a player in the conspiracy, clearly, if he

13   brought paperwork down.

14            THE COURT:  Tell me what you do with that?

15   I mean, I guess --

16            MS. HARBOUR-VALDEZ:  We're going to

17   interview Cheech.

18            THE COURT:  -- you're going to have to

19   connect the dots for me here.

20            MS. HARBOUR-VALDEZ:  We're going to

21   interview Cheech, once we know who he is.  But more

22   importantly, we're going to interview this source,

23   and find out how did he know who Cheech was?  How did

24   he know Cheech had paperwork?  And more importantly,

25   getting to the other sentence that talks about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 656

1    Rascon brothers, these are two unindicted -- perhaps

2    they're co-conspirators.  How did he know that the

3    Rascon brothers were in bad standing?  How did he

4    know the Rascon brothers were taking too long to

5    carry out the hit?  Why are the Rascon brothers not

6    indicted?  Was this person in the cell?  Was he in

7    one of the pods?  Was he at PNM?  I mean, there are a

8    lot of questions we have.  But without knowing who he

9    is, we can't investigate what his role was, and

10   whether he was a witness, whether he learned this

11   secondhand.  It puts us at a huge disadvantage.

12          And this is just one CI, Your Honor.  As

13   Mr. Castle mentioned earlier, we're talking about

14   370-something sources in this case.  And it really

15   makes our job very difficult to investigate, when

16   we're chasing rabbit trails, trying to figure out who

17   these people are, and whether we can go and interview

18   them.

19          THE COURT:  Well, I just ask for sufficient

20   bread for today.  So let's just take this one here.

21          MS. HARBOUR-VALDEZ:  Okay.  Exactly.  We're

22   starting small.

23          THE COURT:  If you knew who Cheech was, and

24   if you knew who this confidential human source was,

25   and you hit the jackpot of getting information from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   him, what would that be?

2            MS. HARBOUR-VALDEZ:  It could be

3   exculpatory.

4            THE COURT:  Tell me how.  Tell me, in your

5   wildest dreams, what it would be?

6            MS. HARBOUR-VALDEZ:  Perhaps the Rascon

7   brothers are more responsible than what we have been

8   led to believe.  Perhaps they are cooperating with

9   the Government.  That would be nice to know, if they

10  were -- we know they were there, we know they were on

11  the bottom tier, with a number of other individuals,

12  who were indicted.  I think it leads to some

13  alternate suspects that could provide exculpatory

14  evidence for Mr. Troup.

15           We'd also like to explore, if in fact they

16  are cooperating, what kind of deals did they get?

17  How could we impeach them if they were called to

18  testify?  I know some of that is going to come later,

19  closer to trial.  But I think now we've got at least

20  one person that's not been previously mentioned in

21  discovery, this Cheech individual.  It's someone

22  completely different than what we have learned,

23  through the discovery produced was actually -- who

24  was actually punished for bringing paperwork.  It

25  also could lead to who, in fact, provided the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 657

```
 1    paperwork from PNM.  Is there another person who was
 2    the shot-caller that we're unaware of?
 3            You're asking me to speculate.  I mean,
 4    that's really all we can do at this point.
 5            THE COURT:  If you were told who Cheech
 6    was, tell me then why you would need the CHS?
 7            MS. HARBOUR-VALDEZ:  Well, I'd like to know
 8    how he knows that Cheech was the one that had the
 9    paperwork.  Who gave to it Cheech?  Was he at PNM?
10    Did he witness this?  Did he see the paperwork?
11    Because, like I said, we haven't seen the paperwork.
12    We just have read through the discovery that
13    paperwork was circulated, but apparently, it was
14    destroyed.  Was this CHS at Southern?  Was this CHS
15    at PNM?  Is he someone that was --
16            THE COURT:  And this murder of Sanchez took
17    place where?
18            MS. HARBOUR-VALDEZ:  2007, at Southern New
19    Mexico.
20            THE COURT:  All right.  Anything else you
21    want to tell me in support of your motion?
22            MS. HARBOUR-VALDEZ:  Well, I think it's
23    relevant and helpful to the defense.  I've tried to
24    articulate that this morning with as much speculation
25    as I can.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 658

```
 1              I think that the CI may have played a
 2    crucial role, if in fact he was at one of the two
 3    facilities when either the hit was ordered or the hit
 4    was carried out.  He could have been an eyewitness.
 5    We don't know.  And he's clearly assisting the
 6    Government in obtaining the evidence.  If they intend
 7    to call him, I know, at some point we need to learn
 8    his identity, but we'd like to learn it ahead of time
 9    to start doing a little bit of investigation.
10              Like I said, it's just one of a number of
11    CIs that we're trying to identify, to start doing a
12    thorough defense investigation.  And the longer we
13    delay this, Your Honor, the more our jobs are being
14    hampered.  And I don't want to be in front of you in
15    March, April, May of next year arguing these same
16    things because we're trying to get ready for a July
17    trial date.
18              THE COURT:  All right.  Thank you,
19    Ms. Harbour-Valdez.
20              MS. HARBOUR-VALDEZ:  Thank you.
21              THE COURT:  Now, I don't want to jump into
22    all the other defendants telling me why they need
23    this information.  That's not the question I'm
24    asking.
25              Does anybody else want to help
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Ms. Harbour-Valdez?  Anybody had a thought there,

2    they want to say this is the reason I want to give

3    this information to Ms. Harbour-Valdez and Mr. Troup?

4              All right.  Mr. Beck?

5              Basic question:  I assume you know who the

6    CHS is; right?

7              MR. BECK:  We do, Your Honor.

8              THE COURT:  Because you've given it to Mr.

9    Villa.

10             MR. BECK:  That's right.

11             THE COURT:  Are you going to call the CHS

12   as a witness in your trial?

13             MR. BECK:  At this time, we intend to, Your

14   Honor.

15             THE COURT:  So this is a Jencks person?

16             MR. BECK:  That's right.

17             THE COURT:  Do you know who Cheech is?

18             MR. BECK:  I do not.

19             THE COURT:  Have you ever asked the CHS who

20   Cheech is?

21             MR. BECK:  We've not.

22             And so, Your Honor, I think you're getting

23   to one part of the analysis we have to look at with

24   CIs, is whether it's a testifying witness, or whether

25   it's a CHS.  And if it's a CHS, a nontestifying

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 660

1    witness, then we go through the Roviaro calculus.

2           If it's a testifying witness, that puts it

3    under Jencks, and we're talking about -- as

4    Ms. Valdez -- excuse me --

5           THE COURT:  Is there a case that says that?

6           MR. BECK:  Yes.

7           THE COURT:  Is there a case that says I

8    don't do the CI analysis if you're telling me that

9    he's going to be -- he or she is going to be a

10   testifying witness -- that I have to defer on the

11   Jencks side; I can't do the CI analysis?

12          MR. BECK:  So, Your Honor, I will refer the

13   Court to -- and again, this kind of came up

14   happenstance, because the reply was really what led

15   to there being actual evidence that we should

16   disclose the CHS.  So since there is no surreply,

17   much of this information, in terms of distinguishing

18   these, is found in our response to the Gallegos

19   motion in the Baca matter.  So that is Document No.

20   255 in Case No. Criminal 16-1613 JB.  And so, in that

21   case --

22          THE COURT:  Not the factual material, but

23   just the law?

24          MR. BECK:  Just the law in that case.

25          THE COURT:  Okay.  Remind me -- I read it,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 661

```
 1   of course, but remind me of what the law is.

 2             MR. BECK:  So there is --

 3             THE COURT:  Let me see if I can pull that

 4   up.  Let's see, it's Document 255.  Okay.

 5             MR. BECK:  So at page 5 of that, we quote

 6   from United States against Glover, which is found at

 7   583 F.Supp. Reporter 2d -- starts at page 5; and the

 8   cite is to page 12.  And this is from the District of

 9   Columbia District Court in 2008.  And it says,

10   Roviaro and its progeny regarding the disclosure of

11   confidential informants -- the quotation starts here:

12   "apply only when the informant does not testify at

13   trial."  That's the end of that quote.  It's quoting

14   a Third Circuit decision from 2002.

15             Also, this District, Judge Brack has

16   addressed this issue, in United States against Lujan.

17   It starts at 530 F.Supp. 2d, page 1224.  And Judge

18   Brack also agreed that there is differentiation

19   between testifying witnesses and confidential

20   informants who will not testify.  And that Roviaro

21   and that calculus applies only when it's a CHS that

22   will not testify at trial.

23             THE COURT:  Did the defendants, either in

24   Baca or this case, have they discussed this legal

25   point?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 662

1          MR. BECK:  Not in the briefing, as far as

2     I've seen, no.  So what happened was the briefing --

3     the brief in chief by Mr. Villa provided the law.

4     And then the reply provided additional facts why this

5     particular CHS may have information that would

6     require disclosure under Roviaro.

7          THE COURT:  They just did a CI analysis?

8          MR. BECK:  That's right, Your Honor.

9          THE COURT:  Well, stand right there.  But,

10    Ms. Harbour-Valdez, do you, from a legal standpoint,

11    have something that is different than what Mr. Beck

12    is presenting?

13          MS. HARBOUR-VALDEZ:  Your Honor, I don't

14    disagree with his analysis, and that's what we

15    adopted from Mr. Villa's motion.  So we adopt --

16          THE COURT:  Well, but what I remember, from

17    reading everything in Baca, and then reading Mr.

18    Villa's briefing is this point of what is -- what

19    goes first, whether you do the CI analysis, or you do

20    a Jencks, is the defendants haven't spoken on that

21    point.  So do you agree with Mr. Beck, the

22    Government's analysis of that, which is Brack's

23    position?

24          MS. HARBOUR-VALDEZ:  Not necessarily.

25    Because if he was -- and we don't know this -- if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 663

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 664

1   this informant was a participant and a material

2   witness, we think that we've met the burden to have

3   his identity released.

4          THE COURT:  But do you have any law that

5   says, no, if it's a testifying witness, then you've

6   got to run it through the Jencks hurdles?

7          MS. HARBOUR-VALDEZ:  I don't have any

8   evidence.

9          THE COURT:  All right.  Anybody on the

10  defense side?  Mr. Hammond?  Do you have anything?  I

11  mean, is that the way -- do you disagree with the

12  Government?  Have anything --

13         MR. HAMMOND:  Your Honor, I do.  And can

14  the court reporter hear me?

15         THE COURT:  I think she can.  Can you hear,

16  Ms. Bean?  Go ahead.

17         MR. HAMMOND:  We have not briefed in our

18  separate response, on behalf of Mr. Montoya, this

19  particular point.  It wasn't raised in the briefing

20  in this cycle.  And frankly, I wasn't aware of what

21  had been filed in the Baca case.  But I believe that

22  the law is not black and white on this.  I believe

23  that the law is that, even with a testifying CI, if

24  there are reasons presented why the identity of the

25  CI needs to be known now for investigative purposes,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 664

1  and preparation purposes of -- particularly, if the

2  CI may himself have been a participant in the crime,

3  I believe that courts have ordered that CI

4  information be produced well in advance of the Jencks

5  deadlines.

6         THE COURT:  Okay.  All right.  I'll let the

7  defendants rebut Mr. Beck here.  And I'll give you a

8  chance to rebut him, Ms. Harbour-Valdez.  But let me

9  not chop up Mr. Beck's arguments too much.

10        Mr. Beck?

11        MR. BECK:  And, Your Honor, as I pointed

12  out here, these are district court decisions.  There

13  is a First Circuit decision -- again, this is in our

14  brief -- there is a First Circuit decision from 1992

15  that suggests the same thing.  So --

16        THE COURT:  You said the D.C. Circuit

17  relied upon a Third Circuit?

18        MR. BECK:  The District Court from D.C.,

19  right, relied upon a Third Circuit.  And then there

20  is a First Circuit decision from 1992, United States

21  v. Tejeda, 974 F.2d 210.  The quote is from 217.  And

22  it says, "The disclosure requirement in Roviaro was

23  predicated on the failure of the prosecution to make

24  either the informant or the informant's identity

25  available to the defense in a case where the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 665

```
 1    informant was never called as a witness."  And so,
 2    again, I'm not saying that -- I mean, I'm not going
 3    to stand here and tell you that the Tenth Circuit
 4    spoke on this; that the Supreme Court has spoken on
 5    this.  I'm not going to --
 6              THE COURT:  Tell me, though -- I think this
 7    is what Mr. Hammond was getting at -- say that's the
 8    law; say there is a bunch of district courts that
 9    have done that.  What is the rationale for that?
10    What would be the rationale for saying that if this
11    is going to be a testifying witness, we're going to
12    run them through Jencks and never do the CI analysis?
13              MR. BECK:  I think the analysis is the same
14    as with all the Government's witnesses, is that with
15    this confidential human source, CI --
16              THE COURT:  You're going to know it at some
17    point.
18              MR. BECK:  You're going to know it at some
19    point.
20              THE COURT:  You've got to wait your time.
21              MR. BECK:  And you're going to know more
22    than you might otherwise, just having the CI's
23    identity.  You're going to get all the Jencks
24    materials, as opposed to just the CI's identity.  I
25    mean, again, in that brief we talked about the timing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 666

 1    of when you would disclose the CHS.  And it seems as

 2    if -- again there is no set in stone; the Court's

 3    going --

 4             THE COURT:  I mean, that's what we're

 5    battling over, maybe to some degree, is when are you

 6    going to disclose these CIs?  They're going to say

 7    that there is 360 of them.  You dump them two weeks

 8    before trial, it's just going to send everything into

 9    turmoil as far as them getting ready for trial.

10             MR. BECK:  Right.  Yeah, I understand.

11             THE COURT:  Do you have a response to that?

12             MR. BECK:  I do.  I don't anticipate that

13    the United States will call 360 CIs.  I don't.  I can

14    say that there are not 360 CIs.  I will say that this

15    CI, as I said, will be testifying at trial.

16             THE COURT:  Let's say you have a CI right

17    now that you think will be testifying at trial.

18    Something happens, and you decide not to call that

19    person.  Then my ability to do sort of a Rule 16 CI

20    analysis earlier in the case to help them prepare for

21    trial, the defendants prepare for trial, is gone.

22             MR. BECK:  Right.

23             THE COURT:  What do you do with that?

24             MR. BECK:  I thought about that.  I

25    appreciate that it puts the Court and the defendants

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 668

```
 1    in an awkward position when we're saying this.  And I
 2    think --
 3              THE COURT:  Is there anything -- I'm sorry.
 4    I should get your answer before I ask another
 5    question.
 6              MR. BECK:  I think it's fair, and it's
 7    reasonable that when the Court sees these motions to
 8    disclose CI, that we go through, at one point, the
 9    analysis, and the Court makes a call, both on this
10    decision -- because as far as I can find in the
11    Court's decisions -- and I've looked, you haven't
12    addressed this issue, as I said Judge Brack did -- we
13    make a call on that point of law.  We make a call on
14    the timing.  And then I think it may be still
15    appropriate to go through also the other side of the
16    equation, which is whether disclosure would be
17    required, that is a CHS.  And then that puts the
18    Court in a position to rule, saying this is a
19    testifying witness.  What if the Government decides
20    it's not going to call it, it's going to have to
21    disclose this CHS at the time that the Court is
22    required in other motions?  And I know that that
23    creates extra work for the Court, perhaps.  Although,
24    if the Court's going to do that work anyway, it means
25    that these hearings won't be short-circuited because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 668

```
 1    I say this person is going to testify.

 2              THE COURT:  So you would say that I go

 3    ahead and make the determination as to whether the CI

 4    should be disclosed, and then -- but they wouldn't be

 5    disclosed immediately, because you're planning to

 6    call them at trial -- but if it's -- for some reason

 7    you're going to not call that witness, something

 8    happens in the case, then you would immediately

 9    disclose that, if I had ordered it?  Is that what

10    you're thinking or saying?

11              MR. BECK:  I'm saying I think that would be

12    the most fair to the defendants.  If I'm sitting

13    here, as the Government, obviously I don't -- I

14    mean -- but I'm saying I think that would be the best

15    course for the Court to take.  And I wish I could say

16    that we have our -- you know, but the Court has much

17    more experience with trials than I do, and we know

18    that sometimes witnesses, when it's on the eve of

19    trial, decide not to testify, and sometimes

20    additional ones that haven't, agree to testify.

21              So I'm saying that, when I gave this some

22    thought, because I anticipated this would be a

23    problem for the Court and the defense, that I think

24    the best course is to make that finding, and order

25    that decision that this person is going to be a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 669

```
 1    testifying witness, so this person will be disclosed

 2    with Jencks.  But if it comes to the point that this

 3    person is not a witness, or the Government -- you

 4    know, I mean, it comes to the point where this person

 5    is not a witness, I find that this person is a CHS

 6    who participated, who should be disclosed under

 7    Roviaro, and I'm ordering that, if the Government

 8    does not call this person, they must be disclosed as

 9    a CHS, I think that's probably -- and I think that's

10    the most reasonable and the most fair analysis for

11    the Court to take.

12             THE COURT:  Okay.  Well, talk to me, then,

13    about this CHS, and why you shouldn't disclose it to

14    Mr. Troup?

15             MR. BECK:  I think, if the Court looks at

16    the paragraph that we focused in on, paragraph 6,

17    that -- the second sentence, that "Weno and Huero

18    Troup saw the Rascon brothers were taking too

19    long" -- I guess it was, sorry, before that.  The

20    Rascon brothers were in bad standing with the SNM,

21    were ordered to kill Freddie Sanchez; the paperwork

22    on Sanchez was delivered by Cheech.  So Troup's

23    position is that Cheech has not been mentioned

24    before, is delivering paperwork, and that this would

25    help identify Cheech, if they could interview this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  person.

2          But the test, under Roviaro, is whether the

3  information would be helpful to the -- or, excuse

4  me -- so the test under Roviaro, as this Court

5  articulated in United States against Rivas and in

6  Aguilar, quoting United States v. Sinclair is, "The

7  Court must consider the particular circumstances of

8  the case, including the crime charged, the possible

9  defenses, and the significance of the informer's

10 testimony."

11         And here, when we look at that in Troup's

12 position, if we find out that Cheech was the person

13 who delivered this, and not Mr. Dwyer, then certainly

14 that's helpful and exculpatory to Mr. Dwyer.  But not

15 towards Troup.  Because the information, as it

16 relates to Troup, is the same; that Troup killed

17 Freddie Sanchez.

18         And so while it may be -- while the CHS may

19 be required to be disclosed under Roviaro for Mr.

20 Dwyer, if he were here, it is not significant

21 testimony as it relates to Mr. Troup.  Certainly, I'm

22 not going to say that finding out who Cheech is would

23 not be helpful to her client, would not be helpful to

24 Mr. Troup.  But that's not the analysis.  That has no

25 salience in the Court's analysis.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 671

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 672

```
 1            THE COURT:  Why don't you achieve the
 2   purposes of protecting the CHS by going a long ways
 3   of just asking the CHS who Cheech is, and providing
 4   that information?
 5            MR. BECK:  I think that we can provide that
 6   information, I think --
 7            THE COURT:  Would you be willing to?
 8            MR. BECK:  Yeah.  Yeah, I don't see why
 9   not.
10            THE COURT:  I guess it seems to me that
11   that would be the first step to sort of doing
12   discovery here, because Cheech seems to be the person
13   that may be more helpful than the CHS.
14            MR. BECK:  Right.  I agree.  And we're
15   willing to do that, as we've done with Mr. Perez.
16   We're willing to work through some of these issues.
17            So I will represent to the Court that we
18   can tell Ms. Harbour-Valdez who Cheech is.
19            THE COURT:  All right.  Mr. Beck, anything
20   further on the Troup request for this CH?
21            MR. BECK:  I mean, if the Court has any
22   specific questions --
23            THE COURT:  Well, do you want to tell me
24   your version of what occurred here?
25            MR. BECK:  Our --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 672

```
 1                THE COURT:  The murder.
 2                MR. BECK:  Our version is that paperwork
 3    was passed that indicated that Freddie Sanchez had
 4    given information to law enforcement.  And again, I
 5    think sometimes we get misled with the term of
 6    "informant," versus "cooperator," versus "CHS,"
 7    versus "cooperating witness."  And I think we should
 8    be careful in distinguishing those terms.
 9                THE COURT:  And I'm trying.
10                MR. BECK:  And I appreciate that.
11                So, at some point, there was paperwork --
12    which can be a range of things; it can be J and S
13    paperwork, or whatever it may be -- but it was passed
14    to two people.  And then, we believe that, as I've
15    said, the Rascon brothers were ordered to hit Freddie
16    Sanchez, and that Troup was one of the people who did
17    it at Southern New Mexico Corrections Facility.
18                THE COURT:  And you think he was actually
19    one of the people that killed Mr. Sanchez?
20                MR. BECK:  Yes.
21                THE COURT:  Physically?
22                MR. BECK:  Right.
23                THE COURT:  All right.  What else, Mr.
24    Beck?
25                MR. BECK:  I guess, as I said, that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 673

```
 1   probably the strongest argument as it relates to Mr.

 2   Troup.  And I guess we'll keep going.

 3            THE COURT:  All right.  Is that

 4   Mr. Chambers coming on the line?

 5            MR. CHAMBERS:  It is, thank you.

 6            THE COURT:  All right.  Welcome,

 7   Mr. Chambers.

 8            All right.  Anything else, Mr. Beck?

 9            MR. BECK:  Not at this time, Your Honor.

10            THE COURT:  All right.  Thank you, Mr.

11   Beck.

12            Let's see, Ms. Harbour-Valdez, let me ask

13   your co-defendants here, anybody want to say anything

14   on this request of Mr. Troup for the identity of this

15   CHS?  Did you have your hand up, your good hand,

16   Mr. Hammond?

17            MR. HAMMOND:  Yes, Your Honor.  We aren't

18   involved in the counts that he was just talking

19   about.

20            THE COURT:  Right.

21            MR. HAMMOND:  We are involved in Mr.

22   Villa's count, and at some point we'd like to be

23   heard.

24            THE COURT:  Oh, yeah, I'm going to give it.

25   I'm just trying to focus on Troup's request here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Anybody else?

 2              All right.  Ms. Harbour-Valdez?

 3              MS. HARBOUR-VALDEZ:  Your Honor, first, I

 4   would ask why it was given to Mr. Villa, via

 5   protective order, if Jencks governs?  I think there

 6   was a different analysis applied there.

 7              THE COURT:  Well, I mean, I know the

 8   defendants are concerned about consistency and

 9   inconsistency in what they're doing over here.  They

10   are the Government.  They can disclose everything.

11   And if we think about it, I mean, it could be

12   nefarious; it could be just strategy -- it could

13   be -- we all waive -- as we go through litigation, we

14   waive work product, otherwise we couldn't have a

15   trial; right?

16              So eventually we waive work product.

17   They're waiving it at different times.  And we all do

18   that, so --

19              MS. HARBOUR-VALDEZ:  All right.  Well, in

20   reading --

21              THE COURT:  -- we'll have to live with that

22   inconsistency, if there is one.

23              MS. HARBOUR-VALDEZ:  Okay.  In reading this

24   Court's Aguilar opinion, I think what we still need

25   to focus on here is that, obviously, the CHS is going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to testify.  What we're trying to determine is

2    whether he was, in fact, a witness or a participant;

3    whether he was one of the people in this pod at

4    Southern, or was in the pod at PNM, from which the

5    paperwork allegedly -- and the hit allegedly derived.

6           So if he was, in fact, an active -- played

7    an active role, I think the Court has to employ the

8    balancing test that you talk about in the Aguilar

9    opinion.  And that's based on Roviaro.  And I think

10   that we've made that showing here today; that not

11   just the identity of Cheech.  I mean, that would be

12   great, if we could have the identity of Cheech,

13   certainly that's a starting point.  But I'm also

14   still interested in learning the identity of the CHS,

15   to find out if he was, in fact, there; if he was an

16   active participant.

17          THE COURT:  But once you get Cheech,

18   though, isn't the CHS like everybody else on the

19   planet?  I mean, we'd all like to know who was there;

20   right?  What makes you think any more than anybody

21   else on the planet that he was there?  It's just

22   speculation, isn't it?

23          MS. HARBOUR-VALDEZ:  That's all we have at

24   this point, unfortunately.  But if we were able to

25   identify him and interview him, I'm sure he knows

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 676

 1    more than what he's provided in this one little

 2    statement.

 3            And the difference, I think, between a CI

 4    and other Jencks witnesses is identity.  I mean, we

 5    know who the victim is here, but we don't know the

 6    identity of the CI.  If he was -- like I said, if he

 7    was a witness, I think if the Court employs the

 8    balancing test, obviously, the nature of the crime

 9    charged and the resulting penalties, I think, we get

10    the first prong.

11            His testimony is going to be significant.

12    I mean, he names my client as one of the people

13    responsible for Mr. Sanchez' death.  How does he know

14    that?  Did he witness it?  Was he -- I mean --

15            THE COURT:  All right.  Anything else?

16            MS. HARBOUR-VALDEZ:  No, Your Honor.  Thank

17    you.

18            THE COURT:  All right.  Well, I'm not going

19    to order the production of the CHS at the present

20    time.  I'm first going to determine whether the CI

21    analysis is obviated if, in fact, the person is going

22    to be a testifying witness.

23            I will take the Government's suggestion up,

24    and I will determine the CI issue.  So I will make

25    the determination.

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 820-6349                                              FAX (505) 843-9492
                                                                        1-800-669-9492
                                                                 e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 678

```
 1              Right at the moment, I'm going to require
 2    the Government to go ahead and give you Cheech.  And
 3    maybe you'll be able to, after you talk to Cheech,
 4    figure out who he is; maybe you'll be able to bulk up
 5    your request.  And you can send me a letter or
 6    something.  If you've figured out more information,
 7    just tell me:  Okay, now, that I know Cheech -- and
 8    if you were able to talk to Cheech, maybe you can
 9    bulk up your request.
10              Right at the moment, it seems to me the
11    CHS, as far as Troup, may be a little bit on the
12    periphery of just somebody that -- you know,
13    obviously, everybody would like to know who is there.
14    But if I start saying I'm going to disclose every CI
15    to see if they were there, I think I've just pretty
16    much required every CI to be disclosed.  So I think
17    it's got to be higher than that.
18              So right at the moment, I'm inclined to
19    leave this one on the Jencks disclosure list, but
20    maybe you can bulk it up with what you get with
21    Cheech.  And I'll think about it.  I'm not making a
22    final final here, because I don't have to because of
23    this Jencks issue.
24              MS. HARBOUR-VALDEZ:  May we also submit
25    additional briefing on the CI analysis, if we're able
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 678

 1    to find anything?

 2              THE COURT:  Yeah, obviously, you can send

 3    that to me.  And we can talk a little bit about how

 4    we want to get that done.  But I probably need some

 5    help there.  I want to think that through.  It looks

 6    like some thoughtful judges have made their rulings

 7    on it.  But I want to give it some thought, too,

 8    before I just adopt somebody else's analysis.

 9              MS. HARBOUR-VALDEZ:  Okay.  Thank you, Your

10    Honor.

11              THE COURT:  All right.  Thank you,

12    Ms. Harbour-Valdez.

13              All right.  Shall we, then, go to Daniel

14    Sanchez?  I think he also is making this request.

15    Mr. Jewkes?

16              Let me ask Ms. Wild, do we have different

17    colors here?  This is not my courtroom, so all the

18    usual stuff I have is not here.  I'm going to see if

19    I can get a different color.  I've got yellow, I need

20    a different color.

21              Mr. Jewkes?

22              MR. JEWKES:  Your Honor, I'll be very

23    brief.  We did join in on the request.  But at this

24    point, I have nothing specific to add as to what's

25    been said by Ms. Harbour-Valdez and Mr. Hammond.

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 679

1          THE COURT:  What is your interest in this
2    CHS?  What's your involvement?
3          MR. JEWKES:  Well, we have an interest in a
4    different CHS.
5          THE COURT:  Not this one.
6          MR. JEWKES:  Not this one.  Counts 6 and 7
7    in 15-CR-4268, with regard to allegations that
8    paperwork came down from the PNM, Penitentiary of New
9    Mexico, to Southern New Mexico, regarding Javier
10   Molina.
11         THE COURT:  Okay.  Let's separate -- I'll
12   come back to the Molina murder in a moment.  So let
13   me deal with Mr. Sanchez.  So I take it from that,
14   Mr. Jewkes, you don't need anything on this CHS?
15         MR. JEWKES:  That's correct, Your Honor.
16         THE COURT:  All right.  Let's see.  Mr.
17   Lowry, Mr. Baca -- so I'll use the pink highlighter
18   on you, Mr. Lowry.
19         MR. LOWRY:  Thanks.  I'm not afraid of
20   pink, Your Honor.  Neither is the NFL, apparently.
21         Your Honor, I'm going to deviate from the
22   briefing a little bit on the argument we made for the
23   disclosure of this particular CHS.
24         If you look -- Mr. Perez was able to get
25   the identity of the CI because this particular CHS

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   had alleged that -- if I'm looking at 698-1, on the
 2   discovery disclosure, it says, "Rudy Perez, a/k/a
 3   Rude Dog assisted in the killing of Javier Molina.
 4   Perez provided his walker to make shanks that were
 5   used in the murder."
 6            And here's why that's critical in terms of
 7   Mr. Baca's case.  And I'm going to back up and give
 8   you the Government's theory, as you had asked
 9   previous defense counsel.  The Government's theory is
10   this:  Mr. Baca is housed in Level 6 at PNM in Santa
11   Fe.  And that somehow, yet undisclosed to the
12   defense, Mr. Baca was able to issue paperwork that
13   went from Level 6 to Level 5 at PNM, and then was
14   couriered from Level 5 of PNM down to Southern in
15   order to give the authority to murder Mr. Molina.
16            And according to the discovery, and what we
17   know about Molina, the Government's allegations of
18   the Molina murder, that paperwork arrived on a
19   Friday, and Mr. Molina was killed -- well, the
20   paperwork arrived on a Thursday; it didn't get into
21   the hands of the people in Mr. Molina's pod until
22   Friday, and then Mr. Molina was allegedly killed
23   based on the paperwork.
24            But what this confidential human source
25   indicates is something entirely different, is that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 682

```
 1   there was a plot to kill Mr. Molina some time before
 2   the paperwork ever arrived, was in the equation, or
 3   anything.
 4            THE COURT:  Now, how do you get that out of
 5   here?
 6            MR. LOWRY:  Because it says, "Perez
 7   provided his walker to make shanks that were used in
 8   the murder."
 9            THE COURT:  Okay.
10            MR. LOWRY:  And I don't think that's
11   something that could have happened instantaneously,
12   even on a good day, with the ingenuity of the best of
13   criminal intent, within the confines of the
14   Department of Corrections.
15            So what this statement indicates to me is
16   that this murder was some time in planning, and that
17   it took a considerable amount of time to manufacture
18   the weapons that were used in the Molina murder.  And
19   that the Molina murder couldn't have happened, as the
20   Government has alleged, based on this mythical
21   paperwork.
22            THE COURT:  I'm not an expert on shanks,
23   but it doesn't seem to me that it would take that
24   long to get a piece of that metal out of a walker and
25   use it as a shank.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 682

1          MR. LOWRY:  But I think if you look at the

2    shanks that were prepared, that were disclosed in

3    discovery --

4          THE COURT:  You've seen them?

5          MR. LOWRY:  There are photographs of them.

6    And these are metal rods that have been sharpened,

7    shaven into lethal weapons.  And it would take some

8    considerable amount of time, given the limited amount

9    of tools available within the Department of

10   Corrections, to manufacture something of that nature.

11         THE COURT:  All right.  Go back over it

12   then.  Tell me the timeline again, how long it would

13   have taken to make that.

14         MR. LOWRY:  Well, Your Honor, I don't

15   have -- at this sitting, I don't have a prison expert

16   or, you know --

17         THE COURT:  No, I just meant what you told

18   me earlier.  You told me that the paperwork didn't

19   get there until such and such.

20         MR. LOWRY:  The Government's theory, as I

21   understand it, is that there were couriers that

22   brought the paperwork down from Santa Fe to Las

23   Cruces; that the paperwork arrived in the possession

24   of two individuals on a Thursday.  And just given the

25   nature of prison life, that paperwork was apparently

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 683

```
 1    in their property, and they didn't receive that
 2    property until Friday, approximately during the lunch
 3    hour, or just after.  And that, just after the lunch
 4    hour, when this paperwork became available to the
 5    individuals who couriered it down, that paperwork --
 6    allegedly in the Government's view -- was transferred
 7    from one pod to another pod, and then reviewed by the
 8    people in that pod who, according to the Government's
 9    theory as to Mr. Baca, then murdered Mr. Molina based
10    on this paperwork.
11              THE COURT:  So 24 hours to make a shank?
12              MR. LOWRY:  Well, that's what -- if this --
13              THE COURT:  And there is nothing that
14    indicates that they weren't making shanks before
15    this; right?
16              MR. LOWRY:  No.  But if you read this, as
17    the CHS conveyed it to the Government, he provided
18    his walker to make the shanks that were used in the
19    murder.  So it indicates, I think, as Mr. Villa
20    successfully argued, that if this is just random, and
21    that Mr. Perez just gave his walker over to make
22    shanks just for the general use within the prison
23    pod, then Mr. Perez has -- is not a part of this
24    conspiracy.  Because, unless he provided his walker
25    for a specific purpose for this specific murder, then
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 684

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 685

```
 1    Mr. Perez has no involvement in this conspiracy, and
 2    should be dismissed.
 3            But, from my understanding, this CHS is
 4    trying to insinuate that Mr. Perez was part of the
 5    conspiracy and gave his walker to his co-conspirators
 6    for a specific purpose, and that would be to
 7    effectuate the death of Mr. Molina.
 8            Otherwise, Mr. Perez should be dismissed.
 9            THE COURT:  All right.  Anything else, Mr.
10    Lowry?
11            MR. LOWRY:  No -- so I think this CHS would
12    be exculpatory as to Mr. Baca, given that, if the CHS
13    is correct, then this murder didn't happen based on
14    any paperwork.  And in fact, as we set forth in the
15    briefing, we don't think this paperwork ever existed.
16    This paperwork is a fiction based on other people
17    that had a motive to create it, you know, to divest
18    themselves from culpability in this case.
19            THE COURT:  All right.  Thank you, Mr.
20    Lowry.
21            Anybody want to help Mr. Lowry out?  Can
22    you think of any argument that would be useful to him
23    in asking for Mr. Baca's defense?
24            Mr. Hammond, you've got your hand up?
25            MR. HAMMOND:  Maybe I can save the Court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 685

1   some time.  We are in the same count with Mr. Baca.

2   The story that Mr. Lowry recounted is a story that,

3   in one version of the Government's case, results in a

4   shank being in the hands of our client, and that

5   shank being used to carry out this killing.  We have

6   seen discovery in this case that says that the shank

7   or shanks came from the walker.  We have seen other

8   discovery that says that the shank or shanks did not

9   come from the walker.

10          For us, we think it's as important for our

11   client -- who is alleged to have been directly

12   involved in the homicide -- to know exactly what

13   Mr. Perez is finding out; who is this CI, and what

14   information does he have that would suggest that in

15   some way that there had been a coordinated plot or

16   plan to kill Mr. Molina?

17          The only evidence we have, other than from

18   a cooperating defendant, is that this homicide was

19   not an ordered hit from on high, but was a result of

20   a beef between two inmates.  That would be very

21   important in this case.

22          And as far as I can tell, other than the

23   one cooperating defendant, who is sitting here to my

24   right, there is no other witness that we have been

25   told about who would say that there was a plan or a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   plot.  And so for us, in the defense of our client,
 2   we very much need to know, just as Mr. Perez needs to
 3   know, who is saying that these shank or shanks were
 4   part of a coordinated plot?
 5            THE COURT:  Now, Mr. Montoya is accused of
 6   actually physically killing Mr. Molina; right?  So
 7   he's different than Mr. Baca here; right?
 8            MR. HAMMOND:  The Government's claim is
 9   that Mr. Armenta and Mr. Molina apparently both had
10   shanks and joined in the killing.
11            THE COURT:  So what are they excusing Mr.
12   Montoya of doing?
13            MR. HAMMOND:  I'm sorry, Mr. Armenta and
14   Mr. Montoya, both having shanks.
15            We also, Your Honor, are very interested in
16   knowing whether this man is, in fact, an eyewitness.
17   We have found no other eyewitness who confirms the
18   account given.
19            THE COURT:  But again, doesn't that put you
20   then in the same position that I was talking to
21   Ms. Harbour-Valdez about?  If everybody is going to
22   be -- if we're going to disclose all CIs, just
23   because we want to find out if they're witnesses,
24   I've lowered the standard, I think, to you get every
25   CI, but you'd also get it of everybody?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 688

```
 1              MR. HAMMOND:  Well, I would hope that the
 2   reason that the Government concluded that it would be
 3   wise to turn over the identity of the CI to Mr. Perez
 4   is the same reason why good counsel, I think, has
 5   suggested that the person actually accused of
 6   stabbing the victim should have that same
 7   information.
 8              THE COURT:  Well, I guess, you know, the
 9   Government can speak for itself, if it wants to.  But
10   I would think with Mr. Perez, if I understand his
11   situation, this is the only point -- I guess he's
12   mentioned 18 times, if I recall, in the 40,000
13   pages -- and this is the only thing that is in any
14   way inculpatory of him.  And this is it.  If this guy
15   is believed, then Mr. Perez was part of the murder.
16   If he's not to be believed, I don't guess there is
17   any other evidence against Mr. Perez.  Whereas, it
18   seems that that's a different situation.  I probably
19   would have, if the motion would have persisted,
20   required the CI to be made available to Mr. Villa.
21              But it seems to me that you're kind of in
22   the same position that Ms. Harbour-Valdez' client is
23   in, Mr. Troup, as far as just wanting to know whether
24   he's -- this CHS saw this murder.
25              MR. HAMMOND:  Well, I don't think that it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 688

1   just whether he saw the murder.

2          Maybe it would be helpful to back up for a

3   moment, and recall that this is the case that was

4   prepared to go to trial in state court in the fall of

5   2014.  At that time, this witness was unheard of.

6   The only testimony that the State of New Mexico was

7   prepared to offer was the testimony from Mr. Armenta.

8          But we then had that dismissed, and the

9   federal indictment brought.  And then, months later,

10   we had Mr. Perez and Mr. Herrera added to the case.

11   They were added, I think from the Government's

12   standpoint, for a reason.  Without being able to show

13   that the shank or shanks were themselves part of the

14   planned and coordinated assault, this is just another

15   prison homicide.

16          And so, for the same reason that it was

17   important to the Government to amend its indictment,

18   we think it's important to us, at least for the

19   defendant who is accused of having been involved in

20   the stabbing, to know who it is that says that the

21   shanks were provided for this purpose.

22          THE COURT:  All right.  Thank you,

23   Mr. Hammond.  I'll let -- Mr. Hammond is beginning to

24   argue his interests in trying to get this CHS.  I'm

25   still focusing on Mr. Baca's.  So does anybody else

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 689

1    want to say anything on Mr. Baca, Mr. Lowry's request

2    for this?  Because I see the -- to me, the

3    differences between Montoya and Mr. Baca may be

4    material.  Let me see if anybody has anything else

5    they want to say on your request.  Then, if you want

6    to say something more -- all right, Mr. Lowry.

7              Mr. Castle wants to say something.

8              MR. CASTLE:  Judge, I'll just talk real

9    loud this time.

10             The problem here is a problem that's going

11   to reoccur with all these CIs.  And that is that the

12   Government's reports are often devoid of any

13   information as to whether the confidential source has

14   personal knowledge of that which is being reported.

15   So there is no way to determine whether they're an

16   eye and ear witness to a particular thing that

17   they're recounting, whether they're a hearsay

18   witness.  And so that's a recurring problem.

19             And so one of the solutions to the

20   problem -- and I just offer this -- is that the

21   Government is probably aware, based upon their

22   interviews with these witnesses, whether they are, in

23   fact, percipient witnesses, or whether they're just a

24   witness that is going to give overall background

25   about the SNM, for example.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 690

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 691

```
 1              So what all these attorneys seem to be
 2      getting at is, we don't know whether this is a
 3      percipient witness under 613, Federal Rule 613, or
 4      whether it's not.  And, instead of us all guessing,
 5      and finding out perhaps at the last minute, right
 6      before trial, that they were a percipient witness,
 7      they were aware of exculpatory information, or they
 8      heard it through the grapevine, the Government could
 9      disclose to the defense who are the percipient
10      witnesses here in these materials.  It would cut down
11      on the number of motions to disclose confidential
12      informants considerably.
13              And I just offer that to the Court.
14              THE COURT:  All right.  Thank you,
15      Mr. Castle.
16              Anyone else helping Mr. Lowry, here, his
17      request?  All right.  Mr. Lowry?
18              MR. LOWRY:  Your Honor, just before the
19      Government responds, I want to follow up with a point
20      that Mr. Hammond made, that I think is deserving of
21      some acknowledgment.
22              As we said in our brief, I think one of the
23      most important -- another important factor to
24      consider, when the Court is deciding to disclose this
25      confidential human source's identity, is the fact
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 691

 1   that in the disclosure in 698-1, this individual

 2   makes the statement that, had this indictment not

 3   happened when it did, that Mr. Baca was going to

 4   resurrect the SNM and restore it to its former glory.

 5        It's not clear from the report, but the

 6   intimation is, in my view, that this -- as

 7   Mr. Hammond pointed out -- that this CHS is trying to

 8   intimate that the Molina murder was part of a broader

 9   SNM predicate act, if you will.  And if -- I think

10   the CHS is really saying that it isn't, because this

11   murder was in the plans for a long time before this

12   never-to-be-seen paperwork arrived, then Mr. Hammond

13   is absolutely correct, that this is nothing more than

14   a beef between two inmates that had nothing to do

15   with the SNM.

16        THE COURT:  All right.  Thank you, Mr.

17   Lowry.

18        All right.  Mr. Beck.

19        Put aside Mr. Hammond's interests in this

20   for a second.  Let's just focus on Mr. Baca's request

21   for the present time.

22        MR. BECK:  Sure.  I think what I heard is

23   something about Mr. Baca passing paperwork that made

24   its way down to SNM CF.

25        THE COURT:  Why don't you tell me your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 692

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 693

```
 1   theory, tell me the Government's theory of Mr. Baca's
 2   role in the Molina murder.  Did you disagree with Mr.
 3   Lowry's characterization of your case against Mr.
 4   Baca?
 5            MR. LOWRY:  I mean, I guess a little bit.
 6   I'm not sure I followed it entirely, and that may
 7   have been my fault.  I think what's important here --
 8   what's most important -- is to, again, go through the
 9   Roviaro analysis, and look what this CHS may offer to
10   Mr. Baca.  I think that's what the Court looks at in
11   this.  And from what I heard, it could offer
12   paperwork -- that Mr. Baca passed that paperwork.
13   But I don't see that --
14            THE COURT:  Well, maybe I'm missing
15   something here.  But this paragraph as to Molina
16   doesn't talk about paperwork --
17            MR. BECK:  Right.
18            THE COURT:  -- so the CHS is not -- he's
19   not offering anything, at least in this document,
20   that talks about paperwork.  Now, that might have
21   been part of the Freddie Sanchez, but not here?
22            MR. BECK:  Exactly.
23            THE COURT:  Now, certainly, Mr. Lowry
24   talked about that was your theory against Mr. Baca.
25            MR. BECK:  Right.  And it is.  I mean, that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 693

```
 1    is the United States' theory.

 2              THE COURT:  But there is nothing here that

 3    indicates the CHS knows anything about that?

 4              MR. BECK:  Right.

 5              THE COURT:  But isn't Mr. Lowry's point --

 6    what I hear him arguing, at least most forcefully to

 7    me, is that -- let's read this sentence probably the

 8    way that's most favorable for your case against

 9    Mr. Perez.  And that is that this walker was

10    specifically manufactured or changed into a tool to

11    murder Mr. Molina.  This was a special order.  You

12    know, we're going to take this walker and kill Mr.

13    Molina.  Why isn't this information fairly important

14    as to Mr. Baca that that simply couldn't have been

15    done in the time frame that the Government's theory

16    is proposing; Mr. Baca couldn't have done that?

17              MR. BECK:  Well, I think -- I mean, I think

18    it goes to the importance of -- the significance of

19    the informant's testimony at that point, in balancing

20    the equation.  Because I don't think that --

21              THE COURT:  Let me spin it out a little bit

22    to see if I can maybe make it important.  If your

23    case against Mr. Perez is intact, then doesn't that

24    maybe hurt your case against Mr. Baca, because the

25    timing becomes a pretty important issue there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 694

 1            MR. BECK:  Not necessarily.

 2            THE COURT:  Not necessarily, but I mean, it

 3    could; right?

 4            MR. BECK:  Right.  I think it could.  I

 5    mean, I think also --

 6            THE COURT:  I mean, I'm not an expert in

 7    shanks, but --

 8            MR. BECK:  Well -- and I'm not either.  But

 9    I think if you had shanks lying around --

10            THE COURT:  But that's what I'm saying:

11    You can't assume that right now, because the reason

12    that -- your case against Mr. Perez is that it's a

13    special order:  Take this walker and kill Mr. Molina.

14            MR. BECK:  Right.  And so, if we assume

15    that --

16            THE COURT:  It's not just lying around.

17            MR. BECK:  I guess, if we assumed that --

18    so I guess there is two points.  First off, if we

19    assumed that, I don't know what this CHS would offer

20    that others wouldn't.  Because I don't think that

21    there is anything in here that indicates he saw the

22    shanks being made, or anything of that nature.

23            Also, the United States' case is that the

24    Molina murder was outstanding for a number of years.

25    It's not as if there was paperwork passed on one day

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 695

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 696

1    and it happened the next day.  That's not what we are

2    contending here.  So I understand the hypothetical.

3    That's not the case that the U.S. is presenting.

4             And I'm going to step back and say that --

5    I guess the second point here was that this was all

6    related to -- and that this CHS may have information

7    about Baca's grand plan to reinvent SNM.

8             Well, as you heard the testimony yesterday,

9    there are multiple sources from which that

10   information is coming.  So it's not -- so this CHS's

11   information on that is not significant.  There is

12   also a recording of Baca himself who says that that's

13   been provided.  So this CHS saying that wouldn't

14   offer anything more significant than Mr. Baca's

15   recorded testimony.

16            So, again, I think that's what the Court

17   has to look at:  Is what is the significance of this

18   CHS's testimony?  And we're not getting it there.

19            Let me go back for a second and say that --

20   I think the Court was starting to accept the argument

21   that Mr. Perez got the information because there was

22   some Roviaro analysis.  We didn't litigate that

23   issue.  And Mr. Perez got the information because the

24   United States agreed to give it to him, give it to

25   his counsel.  So we don't agree that even Mr. Perez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 697

```
 1    would have been entitled to his CHS information under

 2    the Roviaro analysis.  So maybe we should be careful

 3    in distinguishing that, too.

 4              THE COURT:  I know.  But I mean, I prepared

 5    for this hearing, so I had to make a tentative

 6    decision as to what I was going to do on that.

 7              All right.  Anything else, Mr. Beck?

 8              MR. BECK:  Not unless you have any

 9    questions for me.

10              THE COURT:  Thank you, Mr. Beck.

11              Before I let Mr. Lowry have the last word,

12    anybody else?  Any other defendants want to comment

13    on Mr. Baca's request?

14              All right.  Mr. Lowry?

15              MR. LOWRY:  Your Honor, I really don't have

16    anything else to add to the analysis.

17              THE COURT:  All right.  Thank you, Mr.

18    Lowry.

19              Well, because this is -- I'm going to have

20    to review this in connection with the Jencks, I'm not

21    going to order the production to Mr. Baca at this

22    time.  I'll study the legal issue, and see if this

23    requires any CI analysis.  But if it does require CI

24    analysis, I'm going to think about it a little

25    further.  But I'm inclined to order the production
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 698

```
 1   here because of this timing issue.

 2              I realize that there may be strong

 3   evidence against Mr. Baca from recordings that links

 4   him to this murder.  But I need to figure out whether

 5   that still undercuts this theory of:  Just because

 6   the Government has got strong evidence linking him to

 7   the murder, if that's his defense, it couldn't have

 8   happened:  That this information got to him, and then

 9   Mr. Perez made shanks out of his walker all within 24

10   hours.  It seems to me that that may be the only --

11   since this is the only source of this information to

12   either Mr. Perez or to Mr. Baca, I may need to

13   require its production if I do the CI analysis.

14              MR. LOWRY:  Your Honor, if I may?

15              THE COURT:  You may.

16              MR. LOWRY:  I just want to correct one

17   thing the Court said.  There are plenty of recordings

18   involving Mr. Baca.  But -- the Government could

19   correct me -- but I don't think there are any direct

20   recordings of him involved in the Molina murder, Your

21   Honor.

22              THE COURT:  Is that correct?

23              MR. BECK:  It's not correct.

24              THE COURT:  That's not correct?  You think

25   you have tapes that directly link --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 698

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 699

1          MR. BECK:  Tapes have been disclosed in

2    which Mr. Baca admits his involvement in the Molina

3    murder.

4          THE COURT:  Okay.  And I'll have to see,

5    you know, in a CI analysis, since that really hasn't

6    been briefed, what you may want to do is you may --

7    you know, I'm probably the only person in the room

8    that doesn't have a tablet or this 40,000 pages of

9    information.  So you may need to help me with that

10   point, what evidence you have; if you think that

11   vitiates your need to produce it.  Because you've got

12   strong evidence linking, does that undercut Mr.

13   Lowry's argument?

14         MR. BECK:  And also, as I said, Your Honor,

15   the United States' theory is that -- the evidence

16   that we've produced shows that the Molina hit was

17   outstanding.  So if it was a direct order, it wasn't

18   24 hours later that the shanks were produced and the

19   inmate stabbed.  I understand that that's Mr. Baca's

20   theory.  That's not the United States' theory.

21         THE COURT:  Your theory is not that there

22   was this paperwork that worked from PNM down to

23   Southern?

24         MR. BECK:  Not in one day.  That is the

25   theory that the paperwork came down from (sic)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 699

```
 1    Southern.  But I think that is --
 2              THE COURT:  From PNM?
 3              MR. BECK:  Right.
 4              THE COURT:  Came from PNM?
 5              MR. BECK:  From PNM to Southern.  It worked
 6    its way down.  And it may have been quick.  But the
 7    hit on Molina was outstanding for years before he was
 8    actually murdered.
 9              THE COURT:  And if that's the Government's
10    theory, then why would you -- why, Mr. Lowry, would
11    you want it to be something else?  This short time
12    frame?  Where is that coming from?  I mean, you don't
13    have a theory -- I mean, you're the defense lawyer;
14    you don't have a theory of how your client murdered
15    this person, you have to respond to their theory.
16              MR. LOWRY:  Correct.  And their theory is
17    this homicide was instigated by paperwork that,
18    frankly, just doesn't exist.
19              THE COURT:  Well, okay.  But the reason I'm
20    leaning toward, or was five seconds ago leaning
21    toward granting your CI, was because of this time
22    frame.  But if their theory is that the order was
23    long ago, what is it that you would support that it
24    was a tighter time frame, and you need this to
25    establish that it physically couldn't have been done?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 700

```
 1            MR. LOWRY:  Well, then, Your Honor, I think
 2    the theory is that the Molina hit was years ago
 3    maybe -- I think Mr. Molina would have been dead
 4    years ago under the Government's theory of the case.
 5    It still doesn't vitiate the fact that what this CHS
 6    is saying is that these weapons were manufactured
 7    "Johnny on the spot" to murder Mr. Molina.  And that
 8    time line doesn't alter -- is not altered at all,
 9    because, even though they may have evidence that
10    somebody in some distant past wanted Mr. Molina dead,
11    according to the CHS, had no way to clairvoyantly
12    predict this paperwork would have arrived the next
13    day, and so they had to post-haste construct these
14    shanks for this specific murder.
15            THE COURT:  All right.  Well, you both know
16    what I'm thinking, and what I think is the critical
17    point here.  So if there is some particular discovery
18    that you want me to stare at before I make a final
19    decision on the CI analysis, then you probably know
20    what to get me.  Is that clear enough, Mr. Lowry?
21    You know what I'm thinking?
22            MR. LOWRY:  Yes, Your Honor, I do.
23            THE COURT:  And you know -- and I wouldn't
24    mind seeing -- if you think if -- this seems to be
25    news to Mr. Lowry, so he'd probably like to see it,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 701

```
 1    too.  If you've got something specific, as far as
 2    recordings or something that link Mr. Baca up to the
 3    Molina hit orders, then I guess I'd like to see that.
 4    Because, if I go into the analysis and think this
 5    information is just cumulative, I would think that
 6    would be part of CI analysis.
 7              MR. BECK:  Right, Your Honor.  And that's
 8    what I was saying.  I think we got confused because
 9    we started off with your hypothetical.  That's what I
10    was trying to say is that that's not what the
11    Government -- and so, what I understand Your Honor to
12    say is that you'd like at least a little supplemental
13    briefing from Mr. Baca and from the Government with
14    evidentiary basis.
15              THE COURT:  Maybe evidence, the evidence.
16    Because it doesn't seem to me to make sense.  I mean,
17    Mr. Lowry -- he has no incentive to think up a theory
18    how Mr. Baca killed Mr. Molina.  So he's got to
19    respond to yours.  So it seems to me we just take
20    yours.  And then, if it's not helpful to Mr. Baca in
21    trying to defend against that theory -- I thought for
22    a second the time frame might be, and Mr. Perez'
23    involvement coming from this one CI.
24              All right.  So y'all understand?
25              All right.  Where are we on time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 702

```
 1              Let's see, let's go to -- let's go another
 2    15 minutes.
 3              Let's see if we can squeeze in Carlos
 4    Herrera's request for this CHS's identity.
 5    Mr. Davis?
 6              MR. DAVIS:  Judge, Michael Davis.  I'll try
 7    and be brief.  Mr. Herrera is also charged in Counts
 8    6 and 7, the murder of Javier Molina.  Like Mr. Perez
 9    and like Mr. Baca, he was not directly involved in
10    the homicide.  And he was actually housed in a
11    connecting cell block called A pod.  The murder
12    occurs in B pod.  And so we have been trying to
13    determine the Government's theory concerning Mr.
14    Herrera's involvement in that murder.  We have the
15    documents and the discovery reviewed so far --
16              THE COURT:  Let me stop you right there.
17    Mr. Beck, are you going to take this?
18              MR. BECK:  Yes, Your Honor.
19              THE COURT:  Do you mind telling what you
20    think -- how you think that Mr. Herrera was involved
21    in the Molina murder, what's your theory?
22              MR. BECK:  Someone else might take the
23    factual part of this.
24              THE COURT:  Okay.  Ms. Armijo?
25              MS. ARMIJO:  Your Honor, Mr. Herrera was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    involved -- we have recordings and admissions from
 2    him as to his involvement.  He basically sanctioned
 3    the hit as well, and given it, but --
 4            THE COURT:  Is he like an officer or a
 5    higher up?  Or what does sanction mean?
 6            MS. ARMIJO:  He had to approve it.
 7            THE COURT:  And that's because he's higher
 8    up in the organization?
 9            MS. ARMIJO:  He was in a higher position
10    than the ones that actually did the murder.
11            THE COURT:  All right.  So you're not
12    alleging that Mr. Herrera was physically involved in
13    the killing?
14            MS. ARMIJO:  No.
15            THE COURT:  Did he shank, manufacturing or
16    paperwork, or anything like that?  All he did was
17    just say, Yeah, that's a good thing, let's kill
18    Molina?
19            MS. ARMIJO:  Approval, approval that was
20    necessary.  And we have -- and as far as the strength
21    of his case, we have already disclosed a recording
22    that he made which he details his involvement.
23            THE COURT:  Involvement, okay.  Is that
24    helpful?
25            MR. DAVIS:  Well, yeah, except for the fact
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 704

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 705

1    that I've reviewed many of the recordings.  And I'm

2    probably as surprised as Mr. Lowry was that I don't

3    recall that -- any recording where he's admitted to

4    being involved in the Molina murder.  But having said

5    that, we did suspect that it was their theory that he

6    was somehow involved in giving a nod or some sort of

7    sanction.

8           THE COURT:  So it's approval; he's not

9    physically doing anything?

10          MR. DAVIS:  Right.  He's in another

11   completely different cell block, Judge.  And the

12   evidence would be from the main witness, Mr. Armenta,

13   who apparently receives information that he had seen

14   Carlos talking through a door that separates the two

15   cell blocks to another inmate.

16          But the curious thing about it, and the

17   reason why we're requesting disclosure of this

18   particular CI, is because if, in fact, Mr. Herrera

19   was a higher ranking member of SNM, that should have

20   been mentioned by the CI in this report.  Because,

21   not only does he have intimate knowledge of the

22   homicide, because of the shanks that were allegedly

23   provided by Mr. Perez, but he goes on to say about

24   how he knows -- this CI knows Mr. Herrera's mother.

25          Now, a search warrant was executed on Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Herrera's mother back in March.  It appears that Mr.

2    Herrera's mother has been involved in drug activity

3    for many, many years; decades.  And apparently, they

4    allege, the Government alleges that during the course

5    of those years, that she and various family members

6    have been providing sources of heroin to the various

7    prison facilities.

8            And so, when I reviewed the discovery, what

9    I've reviewed is about 15 documents that make mention

10   of Ms. Herrera, and almost all of them relate to

11   family members, or involvement in this drug dealing.

12           There is no documents that were received

13   that anywhere classifies Mr. Herrera as a high

14   ranking SNM member, a leader or a shot caller, except

15   for one document where another CI -- perhaps this

16   one, we don't know -- alleges that he was running a

17   yellow pod, which we believe is basically A pod, the

18   pod that he was in.

19           So it's our position that, because of the

20   fact that there is so scant evidence in the discovery

21   provided regarding anything involving the Molina

22   murder with Mr. Herrera, there are discovery involved

23   implicating him and his particular involvement, or

24   his family's involvement, in drug dealing over the

25   years.  This spans over a 15 year period.  So some of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 706

1    the reports relate to things that happened in 2008.

2              But over the years, his mother -- he's got

3    brothers that are in the prison facility -- and so

4    when a brother is mentioned, they'll say the brother

5    of Carlos SNM member, Carlos Herrera; that's how his

6    name has been popping up.  But nowhere have we

7    identified anything that clearly acknowledges Mr.

8    Herrera as some kind of a shot caller in A pod.

9              So it's our position that, because this

10   particular CS notes that he has intimate knowledge of

11   what happened when the Molina murder -- but also

12   knows Mr. Herrera's mother -- knows that he's who he

13   is, and worked his mother, it makes sense, and only

14   follows that if he was giving information, which he

15   does in this report that you have in front of you --

16   he's giving a litany of information to the feds about

17   various people -- it certainly follows that when he's

18   talking about Carlos Herrera, he's going to say, Oh,

19   by the way, Mr. Herrera runs A pod.  Mr. Herrera was

20   the one who gave a nod, or somehow sanctioned the

21   killing of Mr. Molina.  And it's not mentioned there

22   in any way.

23             And so that fact alone tells us that's

24   exculpatory.  Because it's our position he's not a

25   shot caller.  That, in fact, he didn't sanction any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 707

```
 1    homicide.  In fact, he wasn't involved at all in the

 2    murder.  He's a bystander.  He was aware of it when

 3    it occurred.  But he's not a shot caller in any way.

 4              And it's our position that that is

 5    exculpatory.  If we had the identity of that CS, we

 6    could obviously talk to that person, and, in fact,

 7    verify that Mr. Herrera is not who the Government

 8    thinks he is.  Otherwise, he would have said so in

 9    this report.  That's why we're requesting disclosure

10    in our motion.

11              Thanks, Judge.

12              THE COURT:  All right.  Thank you, Mr.

13    Davis.

14              Mr. Beck -- let me ask, anybody else want

15    to help Mr. Davis out, help him get this?

16              All right.  Mr. Beck?  Probably for my

17    record, I should have asked you this the first time

18    we do this.  Why does the Government not want to

19    disclose CHS to these people?

20              MR. BECK:  To protect the CHS's safety,

21    Your Honor.

22              THE COURT:  And tell me why you're

23    concerned about his safety.

24              MR. BECK:  The way the SNM operates is to

25    put out hits, or whatever you want to call it, hits;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14 709

```
 1    whether it's assaults or whether it's murders on SNM
 2    members who give statements to law enforcement or
 3    anything like that.  So the fact --
 4              THE COURT:  So your reason is for his
 5    physical safety?
 6              MR. BECK:  That's right, Your Honor.
 7    Physical safety.  The fact that this document that
 8    we're looking at 698-1 exists puts him in harm's way
 9    in this particular case.
10              THE COURT:  And Mr. Davis' particular
11    request on behalf of Mr. Herrera?
12              MR. BECK:  So what I think -- I mean, I
13    think Mr. Davis is asking to impeach by omission --
14    which is appropriate when you're at trial, to go
15    against this witness, or even if we're talking about
16    some hypothetical CI that it's not this person, and
17    to say in this report:  You mentioned his mother, but
18    you never mentioned him; you never say that he's a
19    captain, did you?  And you can do that.  But that
20    does not play into the calculus under Roviaro,
21    whether this informant has -- should be disclosed,
22    and has testimony that should be substantial help to
23    Mr. Herrera.  And there is nothing indicated on this
24    document that he does.  The fact that he didn't call
25    him a captain, while notable, is not going to provide
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 709

 1    anything that hasn't been provided in the discovery.

 2    And in fact, as we just saw it, it may already be

 3    helpful to Mr. Herrera in the form that it exists

 4    now.

 5              When we're looking at the Roviaro analysis,

 6    certainly, the fact that someone isn't mentioned

 7    doesn't require counsel for disclosure of the CHS.  I

 8    don't know if you have --

 9              THE COURT:  I don't.  Thank you, Mr. Beck.

10              Anyone else want to speak before Mr. Davis

11    gets the last word on his request?

12              All right.  Mr. Davis?

13              MR. DAVIS:  Well, Judge, it may be

14    impeachment by omission, but it's real important

15    impeachment.  There is no evidence that he was

16    involved in the murder.  And their theory is that he

17    was --

18              THE COURT:  You may want to talk to them

19    after this to get the specific Bates number, whatever

20    they're looking at.

21              MR. DAVIS:  Could I borrow your pink

22    highlighter?

23              THE COURT:  You're welcome to it.  Doesn't

24    work very well.  It's a Government issued pink.  I

25    can't get much ink out of it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 710

```
 1              MR. DAVIS:  I will do that, I will make
 2    that call.
 3              But aside from what they have said, I
 4    haven't seen it; my defense team hasn't seen it.  I
 5    wouldn't make these assertions, Mr. Lowry wouldn't
 6    have made these assertions if we'd have seen this
 7    information.  I wish I'd have been --
 8              THE COURT:  I recall at a hearing that they
 9    indicated that they were willing to match some --
10    correct me if I'm wrong -- if the defendants want
11    some specific matching of defendants to the evidence,
12    y'all were willing to do that.  Am I just imagining
13    that, or did y'all actually say that?
14              MS. ARMIJO:  Well, we said it in the Garcia
15    context, because it was the drug case.  And they were
16    saying that they were lost.  I don't know what Mr.
17    Aoki does with this evidence.  I know that when we
18    disclose it, despite what people say here, it is
19    listed out by the murders and everything else.  I
20    know that at the last hearing Ms. Strickland was
21    saying she didn't have anything disclosed to her.
22    And during that very hearing, as to the Molina case,
23    we got confirmation from Mr. Aoki that it had been
24    disclosed twice.  It was in the evidence.
25              THE COURT:  But I mean, I guess what I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 711

 1   sort of asking is, are Mr. Lowry and Mr. Davis free

 2   to call you or Mr. Beck, and say:  You mentioned at

 3   the hearing specific recordings that link us to the

 4   Molina murder; and then, in Mr. Baca's case,

 5   specifically to the Sanchez murder, can you point out

 6   those recordings?  Would you be willing to link those

 7   up for them?

 8          MS. ARMIJO:  Your Honor, that's a slippery

 9   slope.  Because in this case, we -- the whole point

10   of the discovery coordinator is that we would not be

11   fielding questions like this.  That, when they had

12   issues, they would go to --

13          THE COURT:  But this, to me, is not

14   asking -- you know, I'm not so interested in you

15   producing the material, but just -- I'm asking -- for

16   example, I'm asking Mr. Beck to tell -- to show me,

17   for example, what he thinks is strong evidence of Mr.

18   Baca's involvement in Mr. Sanchez' death.  He said he

19   would.  Same token, would he be able to do that if

20   Mr. Lowry called him and said, Hey, you mentioned

21   that, you're going to give it to the judge, can you

22   tell me?

23          MR. BECK:  Your Honor, no -- I mean, and I

24   say no because it's not an issue in front of the

25   Court.  We've been willing to work with defense

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 712

1    counsel on many of these issues.  But we can't go to

2    the extent that we're fielding calls from defense

3    counsel telling them what the evidence is against

4    them.  They have the evidence disclosed.  They asked

5    for the 10,000 pages that we just disclosed from the

6    FBI files that we don't think is material, because

7    they asked for it, because we agreed to disclose it,

8    because Your Honor asked us to.

9            But we will not -- and I appreciate that

10   it's a hard position to be in, but if there is a

11   motion to disclose a CI, which there is here, and

12   they come forth with some basis that the CI should be

13   disclosed -- which they did -- we can rebut that with

14   evidence.  And then certainly, it ferrets it out.

15   And I appreciate that that puts a burden on the

16   Court.  It puts a burden on us.  And it may be easier

17   to field phone calls.  But we just can't go down that

18   slope.

19           I think in Ms. Strickland's case, she

20   pointed out to us, Here's eight recordings, I

21   listened to these.  They're not in it.  And we

22   looked.  A couple of them were, a couple of them

23   weren't.  And we've worked that out.

24           So I think my position in this has been

25   consistent that the United States will work with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 713

1    attorneys when they come with some factual basis as

2    to what they need.  And I don't think we've changed

3    that position.  But when they come, and they ask for:

4    You said this at the hearing, where is the evidence

5    of this, we can't go down that road.  And we

6    certainly can't go down:  I'm looking for this

7    evidence, can you point me to it?  And so I just

8    don't think that's a point we're willing to give on.

9            THE COURT:  Well, let's stick to the issue.

10   I guess I've been around long enough that I remember

11   the days when this U.S. Attorney's Office would hand

12   you a book, and say, Here's the evidence against you,

13   and it was fairly clear as to what their theory

14   against you was.  But I can't tell the Government how

15   to prepare their case, but -- well, let's move on to

16   this issue, Mr. Davis.  We're not going to solve that

17   problem.

18           MR. DAVIS:  Judge -- and I have to say I

19   miss those days as well.  And it seems like I should

20   get one phone call to the Government, isn't asking

21   that much.

22           THE COURT:  Well, they didn't say they

23   wouldn't take your calls.

24           MR. DAVIS:  I'm not asking for everything.

25   I just want that one recording to be identified, if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    they have such a recording, which I assume they do.

2            But just to highlight, Judge, if their

3    theory is that he's a shot caller, that he's in upper

4    management or some kind of a -- in a leadership

5    position in SNM, and he was in that position on the

6    day that the murder occurred, then this confidential

7    human source would have identified him as such.  And

8    he didn't do so here.  And so we ask that, obviously,

9    that would be exculpatory, because it's our position

10   that he's not.  And that's why it wasn't disclosed

11   here.  He's not a leader.  He's not a shot caller.

12   And he doesn't run any pod.

13           Thank you.

14           THE COURT:  All right.  Thank you,

15   Mr. Davis.

16           Well, I probably am not going to start

17   disclosing CIs because of what's not in these case

18   reporting documents or CHS reporting documents.  I'm

19   a bit of a proponent of the dog doesn't bark theory

20   from time to time.  But it's probably got to be

21   stronger than that.  So I probably am not going to

22   make the Government disclose CHSs on what's not in

23   these reports without a stronger showing.

24           All right.  Well, I propose we go to lunch,

25   come back at 1:00.  Take your request on behalf of



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 715

```
 1    Mr. Montoya.  That would be a short lunch, wouldn't

 2    it.  Let's shoot for 2:00, 2:05.  Obviously, nobody

 3    is going to start without anybody.  And it takes a

 4    while to get in and out.  So eat your meal.  We'll

 5    come back and we'll get started around 2:05,

 6    somewhere around there.  All right.  Appreciate your

 7    hard work.  See you this afternoon.

 8              (The Court stood in recess.)

 9              THE COURT:  All right.  Mr. Romero, are you

10    on the phone?  Mr. Romero, do you have your mute

11    button on?

12              MR. ROMERO:  I am here, Judge.  My

13    apologies, I am here.

14              THE COURT:  Where are you, Mr. Romero?

15              MR. ROMERO:  I am in Moriarty, New Mexico.

16              THE COURT:  You told me this morning about

17    9:20 that you were an hour out.  Why are you not

18    here?

19              MR. ROMERO:  I'm having car trouble, sir.

20    My apologies.

21              THE COURT:  All right.  Mr. Hammond, do you

22    want to take up -- you've given me a preview of Mr.

23    Montoya's request.  Anything else you want to tell me

24    now that I'm focused on Mr. Montoya, rather than

25    still focusing on Mr. Lowry and Mr. Baca.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 716

 1            MR. HAMMOND:  Yes, Your Honor, and first,

 2     my apology.  I didn't really realize that I was

 3     taking things out of order.

 4            THE COURT:  It's just my mind.  I've got to

 5     focus on each one of these defendants one at a time,

 6     so --

 7            MR. HAMMOND:  Well, I think that with

 8     respect to this particular disclosure on this CI, the

 9     position we're in is very much like the one that Mr.

10     Baca's attorneys find themselves in.

11            Let me go back to something that the

12     Government said this morning, and see if we can get

13     some common understanding.  The understanding that

14     we've had, at least among the defendants who were

15     involved in the Molina counts, is very much like what

16     Mr. Lowry summarized this morning.

17            THE COURT:  That was your understanding;

18     when you heard him explain the Molina situation, you

19     thought it was sort of somebody like Mr. Baca, about

20     a week out before his death, Mr. Molina's death,

21     found out that there was cooperation, and it was a

22     pretty quick order to kill?

23            MR. HAMMOND:  I don't even think it was a

24     week, Your Honor.  I think what we have been told is

25     it was a matter of a day or two.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 717

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 718

```
 1              THE COURT:  What were you looking at or

 2   hearing or thinking to draw that conclusion rather

 3   than the one that the Government is saying today?

 4              MR. HAMMOND:  Well, that is the account

 5   that is contained, I think, in several 302s that

 6   we've been given.  But it also is consistent with the

 7   statements made by the Government's cooperating

 8   defendant, Mr. Armenta, who says that he was ordered

 9   to do this hit; that the order had come down on high;

10   that he had no opportunity to think about it or talk

11   about it; that it had to be done, and done right now.

12              THE COURT:  This is what Mr. Armenta had

13   said?

14              MR. HAMMOND:  Yes.

15              THE COURT:  And Mr. Armenta's role is that

16   he was physically involved in the killing?

17              MR. HAMMOND:  Mr. Armenta, from what we can

18   tell, was the principal and, we believe, only killer;

19   that is, that he shanked Mr. Molina in a room that

20   we're going to see on Friday, thanks to the Court.

21   And that he then came down the stairs, and that he

22   was again assaulted by Mr. Armenta.

23              THE COURT:  Say that again.  I missed it.

24              MR. HAMMOND:  So the account that we've

25   seen -- and it's in videos -- is that there was some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 718

1    kind of an altercation in a cell on the second floor;

2    that after that altercation, Mr. Molina came out.

3    You can see in the video that there is blood on his

4    chest.  He goes down the steps, both -- my client

5    happens to come down the steps, Mr. Armenta comes

6    down.  My client has a very brief fist-to-fist

7    encounter at the bottom, no shank.  And Mr. Armenta

8    comes down.  And you can't see exactly what's going

9    on in the corner, because the camera isn't there.

10   But the bottom line of this is that Mr. Molina is

11   shanked something like 40-something times.  And then

12   he dies there at the bottom of the steps.

13          Now, the account that we've been given is

14   that all of that was arranged essentially overnight;

15   that Mr. Baca had given some order; that there was

16   paperwork, the paperwork was brought down from Santa

17   Fe, just as Mr. Lowry summarized it this morning.

18   Somehow that paperwork had been passed between A pod

19   and B pod, and the instruction had been given to

20   carry out this hit right now.

21          THE COURT:  Is the story, though -- is what

22   the Government is saying today inconsistent with this

23   story, in the sense that Mr. Baca could have said two

24   years earlier, "Kill Mr. Molina," but then there was

25   some urgency, and they just got it done?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 719

```
 1              MR. HAMMOND:  Right, and that's a really
 2    interesting question.  I think you and I are focused
 3    on exactly what, to me, makes this shank, or shanks,
 4    so interesting.  I would say it's not, in theory,
 5    inconsistent that there had been some outstanding
 6    order, an outstanding order for three years, that had
 7    not been carried out, or at least in theory an order
 8    could be given, Hey, carry out that hit.
 9              But if that's the case, how do you explain
10    the shank or shanks?  How do you charge Mr. Perez
11    with having made shanks to be used in this killing
12    if, in fact, it is true that there was an order from
13    on high that was filled out immediately?
14              I'm not a shank expert, but I can tell you,
15    from having done a lot of prison cases, that it's
16    extremely unlikely that one can dismantle a
17    wheelchair, pull off the metal that allegedly is
18    needed, and turn it into a very sharpened weapon in a
19    matter of, essentially, no time.
20              THE COURT:  Okay.  Let's say you've drug me
21    back to where I was when I was talking about Mr. Baca
22    and Mr. Lowry.  How does that help Mr. Montoya,
23    though?
24              MR. HAMMOND:  Because we haven't asked
25    about our understanding of what happened.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 720

```
 1              THE COURT:  Okay.  Tell me that.
 2              MR. HAMMOND:  Ours is that there was a
 3    beef, apparently between Mr. Armenta and Mr. Molina;
 4    that it was not something that came down on high.
 5    That it was the kind of thing that happens.  There
 6    are reasons -- and I won't go into them now -- but
 7    there are reasons why Mr. Armenta and Mr. Molina were
 8    not getting along.  And so something happened between
 9    those two men.  My client was there.  You can see on
10    the video, he was present for part of it.  But he was
11    not a participant.  There is no DNA on him, on our
12    client at all, of this bloody victim.  There is none
13    of our client's DNA on the victim.  And so we have
14    thought -- and have thought from the beginning, this
15    is not new information -- we thought that the
16    Government just got this wrong; that this was a beef
17    between two men, one of whom is dead, and the other
18    of whom chose to cooperate, and is now telling a
19    story which, with respect, I would say is false.
20              But the shank is a huge part of that story.
21    Where did the shank come from?  Who ordered it?  If
22    that shank was ordered from on high to be used, how
23    did they get that in a day?
24              And so now we have a second informant.
25    This is the first time we had heard that there was a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   second informant.

 2            THE COURT:  Wait.  Who is the second, who

 3   is the first?

 4            MR. HAMMOND:  He's the one that we're

 5   talking about now.  Mr. Armenta was the first.

 6            THE COURT:  Oh, okay.  All right.

 7            MR. HAMMOND:  And for a long time we

 8   believed he was the only one.

 9            THE COURT:  Okay.

10            MR. HAMMOND:  Now, we're told in this 302

11   that there was a second cooperator who told the story

12   about Mr. Perez.  And I think that's a critical link

13   in the Government's account of this hit having been

14   ordered by the gang.

15            THE COURT:  All right.  Well, help me a

16   little more with your client.  Neither your version

17   or, I guess, the Government's version is going to be

18   that Mr. Montoya had a shank?

19            MR. HAMMOND:  Well, I don't know what the

20   Government's version is.  I expect that the

21   Government will say that there was more than one

22   shank, which is why I say, "shank or shanks."

23            THE COURT:  But right now -- and maybe Mr.

24   Beck will get up, or whoever, and tell me that he's

25   going to link some shanks with Mr. Montoya.  But I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 722

1    hearing a story that doesn't have anything to do with

2    the shanks and Mr. Montoya.  So tell me how Mr. Perez

3    is making shanks out of a walker, how that --

4    disclosing the CHS on this is going to help you in

5    any way.

6              MR. HAMMOND:  As far as we know, based upon

7    the discovery we've been given in this case -- and I,

8    like every other lawyer here, can't tell you that

9    I've looked at every piece of paper -- but on this

10   topic we've tried to be pretty careful.  And our

11   understanding of the evidence is to the extent that

12   there were shanks, they are now saying that these

13   shanks came from the wheelchair or walker or the

14   wheelchair program.  And now we have a witness who

15   says that that's the case.

16             THE COURT:  Okay.  Tell me how that would

17   help you with Mr. Montoya's defense.

18             MR. HAMMOND:  Well, because Mr. Montoya's

19   defense is that he was not a part of any plan at all;

20   that he was, as I said earlier, merely present.  And

21   yet now we're hearing that part of the plan was that

22   Mr. Perez would provide shanks.  And if there are

23   two, then apparently shanks both to Mr. Montoya and

24   Mr. Armenta to commit this crime.

25             THE COURT:  So you're asking for the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 723

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 724

1  identity of this confidential informant because

2  you're saying that he can be a source of saying there

3  was a plan, as opposed to there not being a plan;

4  this just being a feud between Mr. Armenta and Mr.

5  Molina.  Is that --

6          MR. HAMMOND:  I don't know all the things,

7  obviously --

8          THE COURT:  Well, I know, but I mean --

9          MR. HAMMOND:  -- he would say.

10          THE COURT:  -- that's what you're saying

11  this would help you establish is the absence of a

12  plan.

13          MR. HAMMOND:  Well, I think knowing that

14  there is some witness out there who says that there

15  was a direction that Mr. Perez create shanks to be

16  used in this homicide is very important to us.  That

17  will be important evidence to the Government at

18  trial.  It is one of the very few things that I've

19  heard that would link our client to that homicide.

20  If, in fact, the witness says:  I didn't know

21  anything about what was going to be done with these

22  shanks, I didn't get an order from somebody --

23          THE COURT:  Who would be saying this?

24          MR. HAMMOND:  Well, I don't know what the

25  CI is going to say, but -- all I have is one sentence

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 820-6349                              FAX (505) 843-9492
                                                      1-800-669-9492
                                              e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 724

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 725

1    that we've read several times this morning.  I don't

2    know what he's really going to say.  But all I know

3    is that the story we have heard for -- now for

4    several months, is very inconsistent with the idea

5    that someone instructed Mr. Perez to make shanks to

6    be used in the Molina homicide.

7            THE COURT:  Okay.  Anything else, Mr.

8    Hammond?

9            MR. HAMMOND:  Well, you know, I was

10   concerned this morning about topics that I think you

11   believe are in the nature of what you would get with

12   Jencks material.  And I would like to know, was he

13   present?  I'd like to know what else he may think he

14   knows about this homicide.  We don't have any other

15   eyewitnesses, other than the defendants in this case.

16   So if there is somebody there, I'd like to know that.

17   But my primary concern is with what he has to say

18   about the shank or shanks.

19           THE COURT:  All right.  Thank you,

20   Mr. Hammond.

21           Any other defendants want to help

22   Mr. Hammond out, think of something they can think of

23   as to why this CHS would be important to Mr.

24   Montoya's defense?

25           All right.  Mr. Beck.  I've got to tell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 725

 1   you, when I've got two people like Mr. Hammond and

 2   Mr. Lowry saying they thought all along that the

 3   Government's case was that this was thought up in a

 4   compressed period of time, you know, I guess I would

 5   draw from that that there is something in the record

 6   that would support that theory.

 7            MR. BECK:  Sure.  I think, Your Honor, if

 8   you look at Document 762, which is the reply brief,

 9   page 6, as it goes to Mr. Herrera, in the first

10   paragraph it says, "To date, the only evidence that

11   tends to implicate Mr. Herrera comes from the

12   Government's main witness, Jerry 'Creeper' Armenta."

13   So I think --

14            THE COURT:  Which line are you looking at?

15   Right in the middle?

16            MR. BECK:  Right in the middle, right.

17            THE COURT:  Let me read it, now that I see

18   it.  Okay.

19            MR. BECK:  So I think, first of all, going

20   back.  As I said earlier, we need to be careful here.

21   Mr. Armenta is not a Government witness, he's not a

22   cooperator, he doesn't have an agreement with the

23   Government.  So I take issue with that assertion.

24            What I will say is that our theory of the

25   case is that Mr. Armenta, lower down in the SNM, as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 726

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 727

```
 1    Your Honor just pointed out to Mr. Hammond, receives

 2    an order that says, "Kill Mr. Molina."  So, what I

 3    can surmise is that Mr. Armenta's testimony that

 4    everyone refers to -- but obviously isn't attached

 5    here, because everyone knows who Mr. Armenta is, so

 6    there is no need to disclose him as a CI; he is not a

 7    CI -- is that he got the order to kill Mr. Molina,

 8    and he and Mr. Montoya did so.  I'm sure that's what

 9    it says.

10          So I think, if Mr. Hammond says you're

11    walking around kind of full circle with him, it's

12    more plausible, in fact, that the Government's theory

13    is correct; that there was a hit out on Mr. Molina

14    for a long time, and that maybe Mr. Armenta's account

15    fits in perfectly with that; that when he got the

16    order, he was a good soldier and he killed Mr.

17    Molina.  I think that's where this disconnect --

18          THE COURT:  How do you fit Mr. Perez, then,

19    in?

20          MR. BECK:  Mr. Perez supplied -- as I think

21    this sentence says in Document 698-1, Mr. Perez

22    provided the walker for the shanks to be made.  I

23    think that the shanks could have been made in an

24    hour.  But I think, when the shanks were made, by

25    whomever they were made, could have happened, months,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 727

 1   years; I mean, it could have happened before

 2   Mr. Armenta received the order to hit Mr. Molina.

 3   So --

 4            THE COURT:  Well, does your version or your

 5   theory of the case involve papers?

 6            MR. BECK:  Yes.

 7            THE COURT:  That papers came from Mr. Baca

 8   to the Southern facility?

 9            MR. BECK:  Yes, Your Honor.

10            THE COURT:  Was it that week?

11            MR. BECK:  We do not believe it was that

12   week.

13            THE COURT:  You think it was long ago?

14            MR. BECK:  It was long before that.

15            THE COURT:  So what you're currently

16   planning to tell the jury is that a year or two

17   before this murder, Mr. Baca gave orders to have Mr.

18   Molina killed.  And then a foot soldier, Mr. Armenta,

19   just found out about it on Thursday, and killed him

20   on Friday?

21            MR. BECK:  Something to that effect, yes.

22   I mean, that's much more analogous to our theory than

23   the 48 hours.

24            THE COURT:  And Mr. Perez, was he working

25   on shanks for two years, one week, 24 hours?  How

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 728

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 161 729

```
1    does he fit into that picture?
2           MR. BECK:  I don't know offhand.  I don't
3    know if there is more --
4           MS. ARMIJO:  Your Honor, your version is a
5    simplified version.  There are other players.  Mr.
6    Sanchez is charged with this murder, Mr. Herrera.
7    There is a lot of players in this case that come into
8    play.  But our theory is basically that this hit had
9    been out on Mr. Molina for some time.  We have
10   Anthony Baca admitting to this on a recording, that
11   has been disclosed, about how this hit had been
12   carried out, and why it was necessary to carry it
13   out, and his involvement.  We have Mr. Herrera, who
14   his involvement was basically saying he wanted to
15   make sure and see the paperwork, to make sure that
16   the hit was a valid hit, because they wanted to
17   basically make sure it was righteous, so to speak.
18   And we have him on recording saying that.
19          THE COURT:  What is that supposed to mean?
20          MS. ARMIJO:  I'm saying righteous.  That
21   it's a validated hit; that it's not just a hit.  I
22   think one of them says that it's not a hit for
23   personal reasons; it's a hit for violation of SNM
24   protocol, which would be being an informant, as
25   opposed to having a personal beef with somebody.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 729

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 730

1    They wanted to make sure that this was the correct

2    hit.

3            Mr. Sanchez comes into play, and you can

4    see him on the video, because out of the people that

5    we're talking about that are there at Southern, he

6    probably has the most highest rank.  He was in charge

7    of that area.  We believe that Mr. Sanchez went and

8    told Mr. Armenta and Mr. Montoya:  You're doing this

9    hit.  You haven't put in your time, you haven't done

10   your bones for the SNM.  You guys are going to be

11   doing this.

12           There were three shanks that were actually

13   recovered; not one, not two, but three shanks during

14   this investigation afterwards.

15           I believe on the videotape Mr. Montoya is

16   seen assaulting him.  And despite Mr. Hammond's

17   rendition of it, I believe on the videotape, you can

18   actually see Mr. Montoya handing a shank over to

19   Mario Rodriguez, who then goes and hides the shanks.

20           So there is a lot more to the videotape.

21   We have videotape.  We have statements from Mr.

22   Montoya, Mr. Armenta.  After this incident we have

23   cooperators that occurred -- that have given

24   statements, obviously, like the one we have here,

25   that know about it.  And we have recordings from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 730

1    three defendants to CHSs that were made, with them

2    not knowing that they're talking to cooperators while

3    they're incarcerated.  So there is many moving parts

4    to this.  There is three shanks; there is videotapes.

5    And this order had been outstanding for a long time.

6           With the SNM, an order can be outstanding

7    for a very long time.  Case in point:  Julian Romero,

8    a victim in -- I don't know what count he is in

9    actually, now -- but there is a defendant here that's

10   charged with his assault.  But that hit came out --

11   like, I think it was valid for over a decade.  They

12   tried to shoot him once, and that didn't work.  But

13   that hit was valid.  And the person that put that hit

14   out actually took a guilty plea and admitted that hit

15   was valid, it was outstanding for over a decade.  And

16   that's basically the way it works.

17          And we have this from numerous cooperators

18   as to, once a hit goes out, it's out.  The people who

19   actually do the hit, though, really want to make sure

20   that it's still good.  And that's probably what

21   happened in this case.

22          So, yes, we believe there is paperwork.  We

23   believe it happened some time ago.  Mr. Perez --

24   we're not saying Mr. Perez necessarily made the

25   shank.  What he admitted to was, basically, he wanted

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 731

 1    to be involved in this, but his physical limitations

 2    were such that the most he could provide was his

 3    walker, which provided the metal to the shank.  And

 4    if you see the walker, after the murder was

 5    conducted, you have a walker with a missing piece of

 6    metal.  And one of the shanks that was recovered fits

 7    perfectly into that.  I mean, it's pretty obvious

 8    where it came from.

 9             In addition to that, there were two other

10    shanks that were recovered.

11             THE COURT:  All right.  That's a lot of

12    info.

13             MS. ARMIJO:  Sorry about that.

14             THE COURT:  Let's focus for a second.  It

15    didn't seem to me that you were running away from the

16    possibility that you may argue that Mr. Montoya

17    handled the shanks.

18             MS. ARMIJO:  Oh, absolutely.  We think he

19    handled the shank.  We think he's a shanker.  He and

20    Mr. Armenta both, it's our theory that they were the

21    two that were told to go and do this crime, to kill

22    him.  And they are seen assaulting.  Whether or not

23    you want to say -- whether he says, Oh, there was an

24    assault that occurred, I mean, they were both killing

25    Mr. Molina.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 732

 1           THE COURT:  Well, I was pressing
 2  Mr. Hammond a minute ago, saying, but I didn't see
 3  how Mr. Montoya was linked to the shanks, given his
 4  description of the video.  But if the Government is
 5  not going to run away from the fact that he has a
 6  link to the shanks, then respond to what I think Mr.
 7  Lowry, but certainly Mr. Hammond, is now focused on
 8  the fact that, well, they need to talk to this --
 9  find out who this CHS is to find out where they got
10  these shanks that they're being accused of using on
11  Mr. Molina.
12           MR. BECK:  Well, I guess, Your Honor --
13           THE COURT:  I didn't mean to tell Mr. Beck
14  to answer.  You're welcome to answer it, too.
15           MS. ARMIJO:  That's fine.  I just wanted to
16  put -- I mean, as you know, Mr. Beck is newer to this
17  case -- and is familiar with it -- but I didn't want
18  to put him in a spot, given that there is many moving
19  parts.  And I didn't want to interrupt the argument.
20           THE COURT:  You're welcome to interrupt
21  from my standpoint.  Mr. Beck.
22           MR. BECK:  Mine, too, yeah.
23           Your Honor, so I guess this then goes back
24  to the analysis under Roviaro, and whether the
25  information that, I guess, Mr. Hammond thinks the CHS

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 733

```
 1    may have is significant testimony.  And so, under one
 2    version, Mr. Montoya doesn't have shanks.  And I
 3    think you're right, under that version, then, the
 4    significance of the testimony here that --
 5              THE COURT:  If he just roughed him up at
 6    the bottom of the stairs --
 7              MR. BECK:  Then the shanks don't matter.
 8              THE COURT:  But if the Government is
 9    saying, yeah, he's a shankster -- is that the right
10    word?  Is that a real word?
11              MR. BECK:  I think it was shanker.  You
12    added an S.
13              THE COURT:  Shanker.  If they're agreeing
14    with Mr. Hammond that there may be -- that Mr.
15    Montoya may have had a shank, then --
16              MR. BECK:  So then it comes to, what are
17    the defenses?  And so, first of all, Mr. Hammond
18    argued that he was in the same position as Mr. Baca.
19    And I think Your Honor said that the importance of
20    the shanks to Mr. Baca relate to the time period,
21    because the evidence linking Mr. Baca to this is that
22    he sent paperwork to SNM CF.  That defense that he
23    didn't do that, there wasn't time to do that, doesn't
24    affect that Mr. Montoya had a shank and killed Mr.
25    Molina.  Regardless, where he got that shank,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    regardless who provided that shank, regardless
 2    whether it was -- came from Mr. Perez' walker, or it
 3    was one of the other two --
 4            THE COURT:  Well, I think I'm beginning to
 5    understand a little better what Mr. Hammond is
 6    saying.  Let me see if I can articulate it in my
 7    words; that, if this confidential informant is going
 8    to testify that Mr. Perez specially made this shank
 9    or these shanks from this walker in a very short
10    period of time, in a 24-hour period of time, that
11    couldn't have been done.  And right now that seems to
12    be one reading of what this confidential informant is
13    saying; that these shanks were made specifically to
14    be the murder weapons for Mr. Molina.
15            MR. BECK:  Right.  So I think there is two
16    parts to that.  The first is to go back and look at
17    what the CHS is saying, which is that Perez provided
18    his walker to make shanks that were used in the
19    murder.  So there is no time period here.  This CHS
20    does not testify that paperwork on Javier Molina --
21    excuse me, testify is wrong -- this CHS's testimony
22    doesn't talk about the paperwork going down for
23    Javier Molina.
24            THE COURT:  It doesn't.  But I mean, even
25    y'all are saying, the Government is saying that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 735

1  think that there was some paperwork.

2       MR. BECK:  That happened, right.  Now, what

3  we're saying is there are three shanks, and not

4  necessarily all of them came from Mr. Perez' walker.

5  And Mr. Montoya here didn't send the paperwork that

6  made the shanks, didn't send the paperwork that

7  resulted in the killing of Mr. Molina.

8       THE COURT:  Well, do you --

9       MR. BECK:  He did the killing.

10       THE COURT:  -- know that?  I mean, it seems

11  to me that we just don't know when from this, unless

12  you've got some independent knowledge as to when

13  Mr. Perez began to make these shanks.

14       MR. BECK:  Right.

15       THE COURT:  Do you have any other evidence

16  other than this statement?  I thought that was the

17  whole point of Mr. Villa's motion, is there is no

18  other evidence linking him to this crime other than

19  this half a sentence.

20       MR. BECK:  There is a recording of

21  Mr. Perez talking about giving his walker to make

22  shanks.  So there is a firsthand recording of

23  Mr. Perez saying he did that.

24       THE COURT:  Is it any more than this

25  statement, though?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 736

1           MR. BECK:  I think it is more than a

2     sentence that he provided.

3           THE COURT:  But I mean, is it more

4     information than that?  It doesn't help us with the

5     timing of it, whether this was done a year in advance

6     or six months or 24 hours?

7           MR. BECK:  Right.  It doesn't help with the

8     timing of that.  But, again, I think that may be

9     salient for Mr. Baca.  But when we're looking at Mr.

10    Montoya, he had a shank, and he stabbed Mr. Molina.

11    And so --

12          THE COURT:  Both of them are arguing that

13    that couldn't have happened.

14          MR. BECK:  I don't think they're arguing

15    that he couldn't have had a shank, which is what --

16          THE COURT:  Well, he couldn't have had the

17    shanks.

18          MR. BECK:  He couldn't have had the walker

19    shanks, right.  And so what I'm saying is, is that

20    may be helpful; that may be significant testimony for

21    Mr. Baca; that may be significant testimony for

22    Mr. Perez.  But that is not significant testimony for

23    Mr. Montoya, who is seen on a video stabbing, or what

24    we contend is the video showing him stabbing Mr.

25    Molina.  Certainly, the video shows that he assaulted

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 737

 1   Mr. Molina, as I think Mr. Hammond conceded.  We

 2   contend that there is a shank.  And we contend the

 3   video shows him giving the shank to Mr. Rodriguez.

 4           So for him, the significance of Mr. Perez'

 5   walker becoming a shank is not as significant to him

 6   as it is to Mr. Baca.  I think it's important that we

 7   distinguish between those two.  Because, again,

 8   whether he had a shank or he didn't is significant to

 9   Mr. Montoya.  But this CHS does not provide any

10   salient information whether Mr. Montoya had a shank

11   or he didn't.  That would be, I think, going back to

12   where I started this, I think that would be Mr.

13   Armenta's testimony, or statement, that's referred to

14   here, which they already have.

15           So now they have Mr. Armenta's, with regard

16   to the walker becoming a shank.  They have Mr. Perez'

17   recording where he talks about that.  So any benefit

18   of this CI's testimony would be cumulative to Mr.

19   Montoya and not helpful, when he is the one who did

20   the shanking, I think we're calling it.

21           THE COURT:  All right.  Anything else, Mr.

22   Beck?

23           MS. ARMIJO:  Your Honor, did you want more

24   information about what Mr. Perez said?  I believe

25   that was one of the questions that you had.  Or were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 738

```
 1   you satisfied?

 2           THE COURT:  No, you can tell me what more

 3   you know he said.

 4           MS. ARMIJO:  Mr. Perez had indicated that

 5   he supplied two pieces of his metal from his walker

 6   to be fashioned into shanks for use during the

 7   murder.  He indicated he even verified the murder

 8   with Daniel Sanchez, and that the weapons would be

 9   used for the murder.  Mr. Perez went on to talk about

10   why the murder occurred and why it was justified.  He

11   stated that he was proud to be assisting the SNM in

12   this matter.

13           THE COURT:  Somebody on the phone, we're

14   picking up some feedback.  I think y'all have been

15   using mute buttons during the day.  If you'll check

16   and make sure you get your mute button back on until

17   you're ready to talk.

18           All right.  Anything else, Ms. Armijo?

19           MS. ARMIJO:  No, Your Honor.

20           THE COURT:  Mr. Beck?

21           MR. BECK:  No, Your Honor.

22           THE COURT:  All right.  Thank you, Mr.

23   Beck.

24           Before I hear from Mr. Hammond, anybody

25   else want to say anything else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 739

```
 1             MR. VILLA:  Your Honor, just briefly.  A
 2    lot of this is news to us, hearing about these --
 3             THE COURT:  I'm interested in that.  Tell
 4    me what's news to you.
 5             MR. VILLA:  Well, these very specific
 6    statements that Ms. Armijo just recited coming from a
 7    recording.  So I alluded to it this morning about
 8    some audio recordings that were disclosed.  The bulk
 9    of those are inaudible; you can't necessarily hear.
10    Sometimes it's hard to tell who is even being spoken
11    to.  You can generally tell who is wearing the body
12    recording, because their voice is louder.  But the
13    others that are talking to the individual wearing the
14    body recording are hard to discern.  We've had some
15    of those transcribed.  The transcriptionists have had
16    issues hearing that.
17             THE COURT:  So Ms. Armijo's two or three
18    sentences there that she thinks that she said
19    Mr. Perez is said to have said, you don't think you
20    have those?
21             MR. VILLA:  Well, and if I do, I can't hear
22    it.  And so perhaps it's the CHS informing Ms.
23    Armijo:  This is what he told me.  It's on that
24    recording, just go listen to it.  But we can't hear
25    it.  Which I think -- so my inquiry now because I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 740

 1   have agreed to not pursue our motion.  But my inquiry

 2   to Ms. Armijo or the Government would be, Can you

 3   tell us which particular recording it's on, so we can

 4   determine if it's actually been disclosed.

 5           THE COURT:  Well, it looked like she was

 6   reading something.

 7           MR. VILLA:  So I haven't read any reports

 8   where those words are uttered.  The only reports that

 9   I've read is the document you have in front of you,

10   which is Exhibit 1 to my motion.  I guess I'm just a

11   little concerned that there is information that

12   hasn't been produced, or I don't know what.  But I

13   think it gets to some of the issues Mr. Lowry raised

14   and Mr. Davis raised about these recordings that the

15   Government is alleging exist.  And all three of us

16   have not heard them, or don't recall listening to

17   anything that say those types of things.

18           THE COURT:  All right.  Thank you, Mr.

19   Villa.

20           Anyone else want to speak before

21   Mr. Hammond has the last word?

22           MR. LOWRY:  Your Honor, one last thing --

23   and I'll try to make it brief and I'll try to use

24   this microphone.

25           Your Honor, I just think, you know, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 741

1   Government is in a position of wanting to have their

2   cake and eat it too, although I never understood that

3   quite well.  But if this hit was -- pardon me, let me

4   get back here.

5            What I just heard the Government recite in

6   terms of evidence was something I heard for the first

7   time, that this hit was a valid hit, and that it

8   persisted for years, which strikes me as a bit odd

9   then, that they needed paperwork to again revalidate

10  a valid hit.  I mean, if there was a valid hit on Mr.

11  Molina issued by the SNM, there would have been no

12  need to wait on paperwork.  So either the paperwork

13  was the valid hit, or there existed, I guess, a quasi

14  rumor previously.  It just strikes me as odd that, if

15  there is a valid hit, as the Government has

16  described, and these valid hits can persist for years

17  and years and years, that anyone would have required

18  paperwork to come down from Santa Fe.  I'm having

19  difficulty squaring the two.

20            THE COURT:  Well, hold on just a second,

21  because Mr. Beck did tell me that it's still part of

22  their theory that there was paperwork, maybe that

23  last week.  What -- can you expand at all and tell me

24  what does this paperwork -- how does it fit into your

25  picture?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 742

```
 1              MR. BECK:  So, again, I don't think it's
 2    inconsistent.  What happens is that there may be a
 3    hit out.  And the way that the SNM operates is that
 4    they have to have paperwork to validate a hit.  And
 5    so, if someone were to say that there is a hit out on
 6    Javier Molina, someone may say, I want to make sure
 7    that's right, show me the paperwork.  And so those
 8    two theories are not inconsistent.
 9              MR. LOWRY:  But this comes back to the
10    essential question of this endeavor, which is the
11    timing of the manufacturing of the shank.
12              THE COURT:  Well, I think you may have me
13    persuaded on that.  You can talk me out of it.
14              MR. LOWRY:  No, no, no, I don't want to
15    talk you out of it.  I'm done.
16              THE COURT:  I'm working with Mr. Hammond,
17    here, and he didn't have me quite persuaded.
18              I didn't mean to cut you off.  All right.
19    Anybody else want to help Mr. Hammond?
20              MR. LOWRY:  No, Your Honor.  I know when to
21    say when.
22              THE COURT:  All right.  Mr. Hammond, I
23    guess I'm where Mr. Beck is, their theory is Mr.
24    Montoya had a shank; it doesn't matter where it came
25    from.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 743

```
 1              MR. HAMMOND:  That's very interesting.
 2              And I know you care a lot about federal
 3    jurisdiction.  You may wonder why this case started
 4    out in state court as a homicide, and now is part of
 5    a federal violence in aid of racketeering case.  If
 6    this is just a homicide, even if the shank was
 7    used -- and we contend that our client didn't have a
 8    shank, and we'll argue about that at length some day.
 9    But the Government cannot prevail in this Court
10    unless they can prove to the satisfaction of a jury
11    that this homicide was a violent act in aid of
12    racketeering, which means one of the critical
13    elements is that the perpetrators had to be acting to
14    advance or further or maintain their position in the
15    gang.
16              So, if this is just a homicide, like there
17    are many in every state prison in America, these
18    defendants will not be chargeable in this Court.  So
19    for them to say it doesn't matter where the shank
20    came from; of course it matters.  It matters a great
21    deal whether somebody ordered this, and whether our
22    client knew that it had been ordered.  And showing
23    that the shank was ordered and came from one of the
24    other defendants for a specific purpose would be a
25    critical element in their proof.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 744

```
 1              THE COURT:  Well, that may be true, but how
 2    does that help you for them to give you another nail
 3    in their case against you?  I mean, it seems like --
 4              MR. HAMMOND:  I think -- excuse me for
 5    interrupting.
 6              THE COURT:  That's all right.
 7              MR. HAMMOND:  I think it's important that
 8    we know whether the shank was or was not part of the
 9    plan of racketeering activity.
10              If it turns out that Mr. Perez just made
11    shanks for there to be in the pod -- and frankly,
12    that wouldn't surprise me if there were shanks in
13    pods all across this state, I wouldn't be surprised
14    by that.  But there is a lot of difference between
15    having a shank in a pod and having a shank that is
16    there because someone says that the SNM ordered it to
17    be there, and to be used for a specific purpose.  And
18    that is what I understand -- at least a piece of that
19    is what this CI is going to say.  And I believe we
20    need to know that.
21              THE COURT:  All right.  Thank you, Mr.
22    Hammond.
23              Mr. Beck?
24              MR. BECK:  I mean, I guess I just reiterate
25    to the Court that, as the Court started out, it's an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 745

1    individual analysis.  So I think that may be

2    important to Mr. Perez.  But I think, when you're

3    looking at whether the CI's testimony is significant

4    to Mr. Montoya, where the shanks came from is not.

5    It's important that it was an SNM hit.  It's

6    important that there was paperwork.  It's important

7    that there were shanks.  But where that particular

8    shank came from may be significant under the Roviaro

9    analysis as to Mr. Perez, where it may not be to Mr.

10   Montoya.

11          THE COURT:  Anything further, Mr. Hammond?

12          MR. HAMMOND:  No, I think I've said enough.

13          THE COURT:  Well, I think that probably

14   Mr. Hammond and Mr. Beck have probably dragged me

15   back to where I was with Mr. Baca.  I'm inclined to

16   find that the CI should be disclosed.  We've got this

17   Jencks issue that I'm going to have to deal with as

18   far as timing.  But if I, in fact, order CI disclosed

19   at this time, then I'm inclined to think it should be

20   disclosed as to Mr. Baca.

21          I'm not convinced as to Mr. Montoya.  I

22   think that -- like I said originally, I think your

23   situation is more akin to Mr. Troup's back here.  If

24   I start lowering the bar to that level, that we just

25   want to know whether there is a scheme, or whether we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 746

1    want to know who is present, probably I'd drop the

2    bar to a point where almost all these CIs will be

3    disclosed.  And I don't think that's probably what

4    the law requires.

5              So I'll give it some thought, but I'm not

6    inclined to grant Mr. Montoya's request.

7              All right.  Are we done with that CI?  Is

8    there anybody else that am I missing?  Anybody that

9    had a request in on that?

10             Mr. Beck?

11             MR. BECK:  I think so, Your Honor.

12             THE COURT:  You think there is other people

13   or you think we're done?

14             MR. BECK:  No, sorry.  I think we're done.

15             THE COURT:  You think we're done.  Okay.

16             Now, my understanding, like Mr. Jewkes and

17   some others were mentioning other CIs, but that's the

18   only thing that was briefed up for today was that one

19   CI.  I know tomorrow I think I'm back in with Mr.

20   Gallegos on his CIs.  So I've got those issues

21   tomorrow.  But am I missing anything, any other CIs

22   teed up?

23             All right.  Now, Mr. Gallegos had also

24   filed a motion.

25             MR. BECK:  Your Honor --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 747

 1              THE COURT:  Yes.

 2              MR. BECK:  If we're moving on, I do want to

 3   put in one other point here before we move on.  And

 4   that's that, if Your Honor does -- after reviewing

 5   the hearing, and is inclined to grant disclosure of

 6   the CI in Mr. Baca's case, regardless which way you

 7   go on the witness, the United States would ask that

 8   the Court impose a protective order, as Your Honor

 9   did in Aguilar, that limits the disclosure to Mr.

10   Baca, to his counsel.  And I can probably look at it.

11   If you'd like me to put it on there, I think you got

12   it.

13              THE COURT:  I think I got it from Mr.

14   Villa.

15              MR. BECK:  You have it there also.

16              THE COURT:  I guess I'm inclined to do that

17   as a starting point for all these CIs:  Order

18   disclosed.  And then if, down the road, that's

19   unworkable for some reason, you can re-approach.  But

20   I think it's a good starting point, is to limit it to

21   that.  I think -- I actually thought the protective

22   order was pretty workable and pretty generous, given

23   what we're dealing with here.  I've seen more

24   restricted protective orders.

25              MR. LOWRY:  Your Honor, I've reviewed the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 820-6349                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                         e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 748

```
 1    protective order in Mr. Perez' case, and we have no

 2    opposition.

 3              THE COURT:  So I'll include that as part of

 4    my order if I continue to go the direction with Mr.

 5    Baca that I think I am.

 6              MR. VILLA:  Your Honor, I apologize.  This

 7    might be the right juncture to address, if the Court

 8    does grant that whether the protective orders would

 9    include us being able to communicate with Mr. Lowry

10    and Ms. Duncan, but nobody else?

11              THE COURT:  I guess I don't see any harm in

12    that.  Do you, Mr. Beck?

13              MR. BECK:  No, Your Honor.

14              THE COURT:  Okay.  So it will include that.

15    I guess, if you know a CI, however you got it, I

16    can't see any reason why those defendants -- those

17    defendants and those defense lawyers cannot talk to

18    each other about it.  Do you?

19              MR. BECK:  I see a lot of reasons.  But I

20    can't think of any that the law would support.  So --

21              THE COURT:  Well, that's all we're about,

22    isn't it?

23              Let me talk to Ms. Wild here just for a

24    second.

25              (A discussion was held off the record.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 749

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 750

```
 1            THE COURT:  All right.  The next thing I
 2   think we have is the motion that Mr. Gallegos filed
 3   in all three cases.  Now, he's been -- oh, okay, so
 4   remember that he filed in this case -- well, he filed
 5   it in the Baca case; he filed it in his own case, I
 6   guess, 1613.  And you joined -- Ms. Sirignano, Mr.
 7   Adams, you joined this motion to compel production of
 8   unredacted discovery and the identification of
 9   confidential informants.  So I guess that motion,
10   which Mr. Gallegos is out, the reply was filed in
11   this case.  So do you have either, A, unredacted --
12   or is there anything about your motion to compel
13   production of unredacted discovery you want to argue,
14   or is there anything about the identification of
15   confidential informants that you want to argue?
16            MR. ADAMS:  Your Honor, yesterday we
17   decided to do additional briefing on that motion for
18   you.  And we would just do that in both cases.
19            THE COURT:  In both cases, okay.
20            MR. ADAMS:  Yes.
21            THE COURT:  Okay.  So this one is the one
22   you're going to supplement?
23            MR. ADAMS:  Yes, sir.
24            THE COURT:  And help me out here, are you
25   going to supplement in this case?  Are you going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 750

 1  supplement in the Baca case?

 2          MR. ADAMS:  In all three cases.

 3          THE COURT:  In all three.  So just delay it

 4  until --

 5          MR. ADAMS:  No, sir, I think we saw which

 6  way the wind seemed to be blowing yesterday.  We

 7  thought it would be more prudent to make a more

 8  particularized showing to the Court, so we'd have a

 9  fighting chance to get what we're asking for.

10          THE COURT:  All right.  So you've kind of

11  got a taste of how I do these.

12          MR. ADAMS:  Yes, sir.

13          THE COURT:  So that gives you the level of

14  facts I think I need.

15          Let me talk to Ms. Wild here a second.

16          (A discussion was held off the record.)

17          THE COURT:  Well, this may apply to your

18  motion, but I'm going to tell the Government -- and

19  since Mr. Gallegos is not here, Mr. Ray, Mr. Evans

20  and Ms. Morrissey are not here -- if you'll pass this

21  on to them as soon as you can, because I know y'all

22  are going to have a set-down tomorrow.  But it goes

23  to everybody.  We're going to be discussing

24  redactions tomorrow.  And like the motion that was

25  filed, sort of a blanket attack on redactions, first,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 751

 1    I'd encourage everybody to sit down, the Government

 2    and the defendants.  If you don't like some of the

 3    redactions, sit down and try to work them out.  And

 4    then bring the ones that you can't agree or live

 5    with.  But I'm probably going to take them one at a

 6    time.  I mean, I don't know how else to do it.  I've

 7    just got to put the energy into it.  So think about

 8    it.  Is it worth fighting over?  You know, do the

 9    defendants really need Social Security numbers,

10    telephone numbers, personal IDs?  Those things are

11    commonly redacted.  Do you really need that sort of

12    information?  So think about, you know, what we're

13    fighting over.  If that's what you want to fight

14    over, I'll rule on it.

15           But I think the thing to pass on to Mr. Ray

16    and Mr. Evans and Ms. Morrissey before tomorrow's

17    hearing and before y'all, is that we're going to take

18    these one at a time.  I mean, I'm probably not going

19    to make blanket rulings on redactions or blanket

20    rulings on confidential informants.  So we're going

21    to have to take them one at a time, and everybody may

22    want to pick their battles carefully.

23           I think I'm done with what's on my platter.

24    So let me open it up a little bit while we're

25    together, and see if there are other things I can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 752

```
 1   help you with.  Let me start with the Government.

 2   Ms. Armijo, Mr. Castellano, Mr. Beck, is there

 3   anything else we need to discuss while we're

 4   together?  Anything else I can do for you?

 5              MS. ARMIJO:  Not as to the big group.  I

 6   believe that one of the defendants has a motion

 7   appealing her detention, and it hasn't been set yet.

 8   But certainly we'd be -- and our time to respond has

 9   not come, but we'd be willing to respond orally, and

10   have the hearing if the Court is available.  I'm sure

11   that that defendant would certainly like to have that

12   issue resolved.  It doesn't have to be before

13   everybody, though.

14              THE COURT:  Is that yours, Ms. Arellanes?

15              MS. ARELLANES:  It is, Your Honor.

16              THE COURT:  Do you want to do it today?  Do

17   you want to do it another day?

18              MS. ARELLANES:  I don't have the motion

19   with me at the moment.

20              THE COURT:  But you've got it memorized;

21   right?

22              MS. ARELLANES:  No.

23              THE COURT:  Do you want it today or another

24   day?

25              MS. ARELLANES:  Another day.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 753

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 754

```
 1                THE COURT:  All right.  We'll make it
 2      another day.
 3                What else from the Government?  Anything
 4      else we need to discuss?  Anything else I can do for
 5      you?
 6                MS. ARMIJO:  That's all, Your Honor.
 7                THE COURT:  How about the defendants, Mr.
 8      Lowry?
 9                MR. LOWRY:  Your Honor, just briefly.  I
10      mean, I know -- and I want to thank the Court,
11      because I know it takes a considerable amount of
12      effort to pull off these hearings.  This is just a
13      matter of housekeeping.  You know, I wanted to thank
14      the Court for holding this hearing, and I know the
15      Court did this on short notice.
16                I just want to propose -- and I haven't had
17      an opportunity to talk with my colleagues from the
18      United States -- but maybe going forward, if it
19      wouldn't be advantageous to start setting a date
20      aside, you know, in advance.  Or maybe we could have
21      like a monthly date the Court could easily vacate if
22      we didn't need it.  But I know that many people have
23      to travel from out of state, and the court calendars
24      for this many attorneys being what they are, it would
25      be nice to get some dates posted in the future, so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   people can protect and preserve those dates.  I think

 2   we're going to enter a phase of this case where

 3   motions practice is going to start ramping up.  And I

 4   don't know how my colleagues feel.  But I think would

 5   it be wise if we could start securing dates, you

 6   know, a month or two out, just to facilitate getting

 7   everybody together in the same courtroom efficiently.

 8           THE COURT:  Let me ask Ms. Wild.  Let her

 9   come up here and talk to me just about the logistics

10   of that.

11           (A discussion was held off the record.)

12           THE COURT:  Mr. Romero, are you still

13   there?

14           MR. ROMERO:  Yes, sir.

15           THE COURT:  Okay.  We lost somebody else on

16   the line.

17           (A discussion was held off the record.)

18           THE COURT:  How would this work?  I'm a

19   little reluctant to -- you know, sometimes in these

20   complex cases, we'll have periodic status reports or

21   periodic status conferences, kind of run them out for

22   eternity, say every 60 days, or something like that.

23   I'm a little reluctant to do that in this case.  But

24   I am willing to try to work with everybody to set a

25   date right now that's a little bit -- that's just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 755

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page 756

```
 1    shortly before I go into a real string of long trials
 2    that I really think are going to go at this point.
 3    So would that be helpful?  Instead of saying let's do
 4    one every 60 days, what if I set one out -- maybe set
 5    one for January 18 at 8:30?  That would give
 6    everybody plenty of time to get something set on
 7    their calendar and travel vouchers.  Would that be
 8    helpful?
 9                MR. LOWRY:  Your Honor, it's really less of
10    a concern for Team Baca, because Ms. Duncan and I
11    both reside in Albuquerque.  So being here is really
12    not an issue.  But it was really addressed to my
13    colleagues.
14                THE COURT:  Does that address your concern?
15    Instead of saying every 60 days, because I'm not
16    sure -- I mean, this is an important case, but I've
17    got a lot of cases I'm trying to juggle.  And I can't
18    bring everything to a shutdown for this one case.  So
19    would that work?
20                How about from the Government standpoint?
21    This doesn't mean we don't get back together earlier.
22    There may be motions that get filed and we have to
23    get together earlier.  But it does get something on
24    the calendar that everybody can plan on.
25                MR. BECK:  I think that's fine, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 756

```
 1    The only thing, I mean, that concerns me is that

 2    there may be responses or replies or something.  But

 3    I think we can all work together to try to get them

 4    in beforehand, and just see what we could do with

 5    this.  So I think it's a good idea.

 6              We can even have it in Las Cruces, if you

 7    want.

 8              THE COURT:  Okay.  Well, you're kind of in

 9    control of that.  I think we all owe the Government a

10    bit of thanks for humoring us or something by

11    allowing us to continue to do these up here.

12              How about from the defendants?  Is this

13    helpful?  Set a hearing on January 18, 2017; nobody

14    is barred from asking for one earlier, but it will

15    get something on and people can then kind of get

16    briefing done, knowing that that's going to be here.

17              Ms. Johnson?

18              MS. JOHNSON:  Your Honor, because I

19    anticipate filing some motions before January 18, I

20    would think that the Court may set my motion hearing.

21    But both Ms. Fox-Young and I have sentencing hearings

22    in the Western District Texas that day.  So we would

23    respectfully ask that the Court perhaps consider a

24    different day.

25              MS. STILLINGER:  Your Honor, Mary
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 757

```
 1    Stillinger for Mr. Varela.  I know I have an argument
 2    in the Tenth Circuit the day before.  And I'm
 3    actually not sure, I'm probably on the morning
 4    calendar.  But just with travel, I don't know if I
 5    would be able to be here on that day or not either.
 6              THE COURT:  Mr. Lowry?  This is why this
 7    doesn't work.
 8              MR. LOWRY:  That's fine, Your Honor.  It
 9    was just an idea.
10              THE COURT:  I don't know.  Maybe it's not
11    worth the effort.
12              MR. LOWRY:  I guess not.
13              THE COURT:  Let me see Mr. Adams first,
14    Mr. Hammond, then --
15              MR. ADAMS:  Thank you, Your Honor.  I was
16    going to further complicate matters.  I think it is a
17    wonderful idea to set dates far enough in advance
18    that we can have time to navigate the CJA travel
19    approved issues that we seem to run into.  I am -- I
20    have a jury selection in Federal Court in South
21    Carolina on the 18th.  So that also is not an
22    advantageous date for me.  But I applaud the effort,
23    and would love the 19th or the 20th, or if I have to
24    miss, I have to miss.  But I think it would be very
25    helpful going forward to have a series of dates well
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in advance, so we can all keep pushing this case

 2    forward, since the trial is set for the summer.

 3              THE COURT:  I'll try one more date.  And if

 4    it doesn't work, then we're going to quit this.  How

 5    about February 7?

 6              MS. STILLINGER:  I'm sorry, Your Honor,

 7    I -- oh, no, no, no, I'm sorry.  Never mind, wrong

 8    day of the week.

 9              THE COURT:  All right.  Mr. Hammond, you

10    were going to speak?  Is that how bad the other date

11    was, or you got --

12              MR. HAMMOND:  No, no, I wasn't going to say

13    the other day was bad.  I'm going to thank the Court

14    and Mr. Lowry and the Government for the idea.

15              We will have, on behalf of Mr. Montoya, I

16    know we will have a couple more motions of our own

17    that we'd like to have argued.  February would be

18    preferable.  But if everybody agrees with the 7th of

19    February, we can agree to that.

20              THE COURT:  Ms. Sirignano?

21              MS. SIRIGNANO:  Judge, I'm in Santa Fe

22    before Judge Attrep.  As I said yesterday, I'll try

23    and get it moved.  If I'm the only one, then I'll --

24              THE COURT:  Just live with it.

25              MS. SIRIGNANO:  I'll live with it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 759

1          THE COURT:  Okay.  Is that all right with

2     the Government, February 7?

3          MS. ARMIJO:  Yes, Your Honor.

4          THE COURT:  Anybody else?

5          All right.  We'll set it for February 7.

6     We're going to set it for 8:30, and we're going to

7     move it up just a little bit, just because it seems

8     like every time we set these, we get started late.

9     So we'll build in a little bit of late time, and see

10    if we can get them started a little bit on time.  So

11    February 7, at 8:30, 2017.

12         Ms. Stillinger?

13         MS. STILLINGER:  Your Honor, may I raise

14    one issue to the Court, which is that my client,

15    Mr. Varela, asked me if he might be able to be

16    excused from appearing at hearings when they're not

17    evidentiary.  I didn't ask for this hearing because I

18    understood that another defendant had made that

19    request and had been denied.  But I did want to make

20    that request on the record.  It's very uncomfortable

21    for him, Your Honor.  He gets up at 3:00 in the

22    morning from Otero, and is here all day long.  He's

23    shackled all day long.  So it's about -- well, more

24    than 12 hours of constant shackling.  It's very hard

25    on his wrists.  Last time, it was a couple of weeks

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 760

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 761

```
 1    before he had full feeling in his arms again.  It's
 2    just the nature -- I know, he's a little husky -- but
 3    that's just the nature of the handcuffs, I think
 4    they're not meant to be worn all day long like that.
 5    So I've asked him if he really means that, and he
 6    says he really would rather not come, and would
 7    rather hear about it from me later.  I wanted to
 8    bring it up while he's here, so if the Court needs to
 9    verify.
10            THE COURT:  Well, I think everybody needs
11    to be here.  These are very important hearings.
12    We're really shifting into facts.  These are not
13    purely legal issues.  These are fact-sensitive
14    matters.  And I just am very reluctant to be
15    discussing the facts in the detail we are without the
16    defendants present.  This is -- these aren't strictly
17    legal issues.  These are very fact-sensitive.  So I'm
18    going to deny that request.
19            MR. BENJAMIN:  Your Honor --
20            THE COURT:  Mr. Benjamin?
21            MR. BENJAMIN:  -- Mr. Gallegos is at Otero.
22    And if there was some way that the Court could deal
23    with essentially the 18-hour timeframe that they're
24    out of Otero in shackles, I think that would
25    accommodate most of our concerns, if not all of them.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 761

```
 1            THE COURT:  Well, I'm all game for

 2   suggestions.  But I don't have any right at the

 3   moment.

 4            Mr. Jewkes?

 5            MR. JEWKES:  In that regard, Your Honor,

 6   might the Court and the Marshal Service reconsider

 7   with regard to these black boxes that go with the

 8   belly chains.  With belly chains, leg irons, they're

 9   pretty secure.

10            THE COURT:  I understand.  And y'all

11   remember that I sat up here for an hour and a half

12   with those blocks on, so that I'd know what it feels

13   like.  I'm not minimizing -- they're not very

14   comfortable.  But I also don't have any other

15   suggestions.  So I'm probably going to take the

16   guidance from the marshals on that.  If they continue

17   to think that's something that's necessary for

18   security, we'll just have to live with it.

19            What else?  Anything else we need to

20   discuss while we're together?  Anything else I can do

21   for you?  The defendants?  All right.  I've got some

22   opinions and orders to get out to you.  If I don't

23   see you before the holidays, have good holidays.  See

24   you in February, if we don't meet before.  I

25   appreciate everybody's hard work.   (Adjourned.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 762

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on December 13, 2016.

15

16

17

18    _____
                 Jennifer Bean, FAPR, RMR-RDR-CCR
19               Certified Realtime Reporter
                 United States Court Reporter
20               NM CCR #94
                 333 Lomas, Northwest
21               Albuquerque, New Mexico 87102
                 Phone:   (505) 348-2283
22               Fax:     (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 763

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW MEXICO

3

4    UNITED STATES OF AMERICA,

5         Plaintiff,

6         VS.                        CR. NO. 15-4268 JB

7    RUDY PEREZ,

8         Defendant.

9

10        AMENDED TO ADD PRIOR BENCH CONFERENCE

11        Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
12   District Judge, Albuquerque, Bernalillo County,
     New Mexico, commencing on October 4, 2016.
13

14   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
15
     For the Defendant:   Mr. Ryan Villa; Ms. Justine
16   Fox-Young

17

18

19

20         Jennifer Bean, FAPR, RDR, RMR, CCR
                United States Court Reporter
21            Certified Realtime Reporter
                333 Lomas, Northwest
22            Albuquerque, NM  87102
                Phone:  (505) 348-2283
23              Fax:  (505) 843-9492

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BENCH CONFERENCE BETWEEN MATTERS - 10/4/16
 2            MR. CASTELLANO:  May we approach?
 3            (The following proceedings were held at the
 4   bench.)
 5            MR. CASTELLANO:  This is a separate matter.
 6   Before we begin, Your Honor, I wanted to make a
 7   record that, as Jerry Armenta was leaving the
 8   courtroom, there was -- some the other inmates in the
 9   back making noises towards him -- I would describe it
10   as a duck noise -- in the direction of Arturo Arnulfo
11   Garcia and Javier Alonso.
12            So this is one of the reasons -- the Court
13   asked us to bring these to the Court's attention for
14   future hearings.  This is one of the reasons we
15   believe it's important for STIU to be in the
16   courtroom, to observe these types of things.  We
17   would consider that an intimidation type of factor.
18   Jerry Armenta is known be a cooperator in the case,
19   and the other inmates were making noises.  It got his
20   attention, he looked in their direction, and
21   exchanged glances.
22            And I would like STIU to be here to
23   determine if there is any other significant meaning
24   to that type of activity.  Because if they're not
25   here, then, what we're going to have to rely on is
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 765

1    possibly the U.S. Marshals to be witnesses.  And we

2    don't want to make them witnesses.  Because their job

3    is security, not to be witnesses at the trial, if

4    anything like that comes up.

5              So I wanted to make the record for future

6    hearings.

7              THE COURT:  Well -- and for future

8    hearings, make a motion before --

9              MR. CASTELLANO:  Yes, Your Honor.

10             THE COURT:  -- and let them tee it up, and

11   argue it, and that way, we can do it.  Because,

12   otherwise, I'm going to have to let the marshals make

13   those sort of calls.  And if they think those people

14   should be in here, I'll let them.  So if you want

15   them out next time, make sure you make your motion in

16   advance so that they can make their argument, and

17   then I'll be fully informed on it.

18             MR. VILLA:  And I'm happy to do that.  For

19   this current bench conference, I guess I'm a little

20   uncomfortable, because the other attorneys aren't

21   present.

22             THE COURT:  I won't go much more than that.

23   But I do think that, since you raised it --

24             MR. VILLA:  Yes, Your Honor.

25             THE COURT:  -- you can just tee it up

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 766

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 767

 1   before.

 2          MR. VILLA:  Absolutely.

 3          THE COURT:  Anything else?

 4          MR. CASTELLANO:  No, sir.

 5          THE COURT:  All right.

 6   (The bench conference was concluded.)

 7

 8          THE COURT:  Let's take up the motion for

 9   second appointment of counsel.  So the record is

10   clear, we only have the United States Attorney's

11   present for this, and then we have the Defendant Rudy

12   Perez, Mr. Villa, and Ms. Fox-Young.  And the motion

13   is to appoint second counsel.

14          I'll certainly hear what anybody wants to

15   say on it.  But as the Government can probably see,

16   most of this has been done ex parte, where I've

17   appointed second counsel.  Mr. Villa filed his

18   publicly, and then that drew opposition from the

19   Government.  I have looked at each one of these.  And

20   I have discussed these with Ms. Waters, and

21   determined that I think this case -- some of the

22   defendants they justify second counsel.  And in

23   Mr. Perez's particular circumstances, I'd be inclined

24   to agree that he is one of the ones that I think

25   second counsel is appropriate.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 767

1          But if you wish to -- Mr. Castellano, if

2   you wish to argue in opposition.

3          MR. CASTELLANO:  Yes, Your Honor, mostly to

4   make a record.  I understand the Court's position.  I

5   won't --

6          THE COURT:  I'm taking these one at a time.

7   I'm not -- you haven't seen all that's taken place

8   behind the scenes.  But I am looking at each

9   individual defendant's circumstances before making a

10  determination.

11         MR. CASTELLANO:  I understand, Your Honor.

12  And, as you said, most of this takes place ex parte,

13  so we are not privy to those conversations.  We're

14  not seeking to find out what happens during those CJA

15  meetings.

16         But one of the bases for the motion was to

17  make sure that the Court had the CJA guidance for not

18  only this case, but for future cases, so that we're

19  all on the same page that, generally speaking, the

20  CJA guidance is that we should reduce the number of

21  attorneys in any given case, especially after it's

22  deemed not to be a death case.  So that's the first

23  point.

24         The second is, also I think to clarify some

25  things about the size and the complexity of this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 768

1    case.  We don't dispute that this is a complex case

2    in any way.  But what we do dispute is, in some ways,

3    the size of the case.  And I think it was helpful

4    that we have Government's -- or excuse me, Defense

5    Exhibit 3 to its motion.  And what happened in this

6    case was the defense requested of Mr. Aoki an

7    estimate of the size of the discovery in this case.

8    When we spoke to Mr. Aoki on the phone, we asked him:

9    How did you come about this information?  And he

10   said, Well, I got someone else to run the numbers for

11   me.  So I, basically, just turned over all the data,

12   the raw data, to this person, or this firm, and they

13   spit out the numbers for us.

14          So, as you can see at the bottom of the

15   document there is a number 40,784.  And so that is

16   the defense -- that's where the defense estimate

17   comes from that this is a case involving 40,000

18   documents.  The Government's estimate is that it's

19   approximately 17,000 pages of discovery, plus the

20   recordings.

21          And so what we learned from Mr. Aoki is

22   that his understanding of the process was that they

23   dumped all the information into some database, which

24   then spit out the information.  And what he said was

25   they relied on these extensions such as TXT, VCF, or

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 820-6349                                                    FAX (505) 843-9492
                                                                          1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                    e-mail: info@litsupport.com
                                                                              DNM 769

1    HTML.  Those extensions don't tell us that it's an

2    actual document.  They tell us that it's something

3    that has that extension.  And every time they came

4    across something else, another file that had that

5    extension, they counted it as a document.  So, for

6    example, HTML has 15,554 as a total number.  We

7    believe most of this information comes from a phone

8    dump of one of the defendant's telephones.  So, if

9    you look through it -- and it has just all the data,

10   any photos or anything else in there -- each of those

11   is, in essence, counted as a document.

12           So in terms of this being a complex case,

13   it is, but the number we dispute is 40,000.  We think

14   it's closer to 18,000.  So we wanted to put this case

15   in the proper context when the Court makes a ruling

16   regarding second counsel.

17           So I just wanted to let the Court know that

18   that's where the number came from, and that's why

19   there is a dispute between the parties regarding the

20   size of the discovery.

21           THE COURT:  All right.

22           MR. CASTELLANO:  And I think that's it.

23           So I think, basically, I understand Mr.

24   Villa's position that this is complex enough that he

25   needs second counsel.  And the rest has been briefed.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 770

1   So you understand our position as well as Mr.

2   Villa's.

3           THE COURT:  All right.  Mr. Villa, it's

4   your motion.  Anything further you want to say on

5   your motion?

6           MR. VILLA:  Your Honor, not a whole lot.  I

7   mean, my position is the Court should rule that the

8   Government doesn't have any standing to object.  This

9   is a matter solely for the Court the decide.

10          I grant that I did file that motion

11  publicly, and sought the position of the United

12  States Attorneys.  I believe that was an error on my

13  part.  But Mr. West had filed his motion to

14  withdraw -- the original learned or second counsel

15  for Mr. Perez -- he had filed that publicly.  And so,

16  in fairness, I sought the United States Attorney's

17  position to essentially sub out Ms. Fox-Young.

18          And it had been long my experience that

19  they didn't take any positions.  And once they took

20  the position opposing, I felt like I had to probably

21  file the motion publicly at that point.  But I still

22  don't think they have any standing.  Whether I should

23  have asked for their position or filed it publicly or

24  not doesn't change their standing in any way.

25          I'm not here to dispute, necessarily, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 771

1    number of documents.  I attached the documents from

2    Mr. Aoki to my reply because the United States

3    alleged that I was being misleading about the number

4    of documents.  And I wanted the Court to know that

5    that's where I got my information from.  I don't --

6    whether it's 20,000 or 10,000 or 30,000, I think the

7    Court can see from the indictment that this is a

8    complex case, just in the way it was pled, and the

9    way it is likely to be tried.

10        The only other thing that, I guess, I would

11   add to the Court, I know you said you conferred with

12   Ms. Waters -- and this isn't information that the

13   United States is aware of, I don't think they're

14   entitled to it -- but she did approve, and the Tenth

15   Circuit and this Court did approve in my budget hours

16   for a second counsel.  And so I think that the

17   decision, I guess, in effect, has already been made.

18        And unless the Court has any questions, I

19   don't really have anything else to add.

20        THE COURT:  All right.  Thank you,

21   Mr. Villa.

22        Anything further, Mr. Castellano?

23        MR. CASTELLANO:  Just two quick points,

24   Your Honor, as to Mr. Villa and any other defense

25   attorney in this case, it's really not so much an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 772

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 773

```
 1   accusation that they're being misleading with the
 2   numbers; it's that nobody understands the numbers,
 3   because I understand they were just relying on the
 4   information relayed to them by Mr. Aoki.  So I hope
 5   I've given the information to the Court and counsel
 6   about where that number comes from.
 7           The second, in terms of standing, is it's
 8   not uncommon for U.S. Attorney's offices to move for
 9   removal of second counsel.  And the Eldridge case,
10   which we cited in our briefs, the Government actually
11   moved three times to remove counsel in that case.
12   And the third time, the district court judge removed
13   counsel.
14           So that's all I have, Your Honor.
15           THE COURT:  All right.  Thank you, Mr.
16   Castellano.
17           Mr. Villa, anything further?
18           MR. VILLA:  No, Your Honor.
19           THE COURT:  Well, I'm going to continue to
20   monitor the counsel in this case, and monitor the
21   complexity of the case.  I do think at the moment it
22   sure appears to people like Ms. Waters, many of the
23   very experienced learned counsel in the case that
24   they consider this a very complex case.  And so, at
25   least for the present time, I'm going to continue to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 774

 1   allow some of the defendants to have second counsel.

 2   And I think in Mr. Perez's particular circumstances,

 3   second counsel is appropriate.

 4          And I'll continue to monitor.  I spend a

 5   little bit of my time each day, almost, on vouchers,

 6   and reviewing budgets and things like that, so it's a

 7   part of a daily almost routine of looking and seeing

 8   what the defense counsel are saying about this case.

 9   And what they're needing to do on it.  So I think the

10   motion is justified, and I'll grant it, and continue

11   to monitor the case to see if second counsel is

12   appropriate.

13          All right.  Is there anything else we need

14   to discuss while we're together?  Anything else I can

15   do for you from the United States?

16          MR. CASTELLANO:  No, Your Honor.

17          THE COURT:  Mr. Villa?

18          MR. VILLA:  Your Honor, just -- I'm sure

19   you've got it, but I did submit an order on this

20   motion to your proposed text, the order proposes that

21   the appointment be nunc pro tunc to August 29.

22   That's when Ms. Fox-Young began work on this case.

23   And this is the type of case that you really can't

24   sit by and wait.  So she's been working this whole

25   time.  And I would ask the Court to sign that order

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 774

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 775

1   as proposed.

2            THE COURT:  All right.  I'll retrieve that

3   order.  I don't have it here with me this afternoon.

4            MR. VILLA:  Sure.  If you need me to resend

5   it, I'm happy to.

6            THE COURT:  No.  Ms. Wild is saying she has

7   it.  She just hasn't given it to me yet.

8            MR. VILLA:  Thank you.

9            THE COURT:  Anything else?

10           All right.  I appreciate y'all's hard work.

11  Y'all have a good evening.

12           (The Court stood in recess.)

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13       In testimony whereof, I have hereunto set my

14   hand on November 16, 2016.

15

16

17

18   _____

19   Jennifer Bean, FAPR, RMR-RDR-CCR
     Certified Realtime Reporter
20   United States Court Reporter
     NM CCR #94
21   333 Lomas, Northwest
     Albuquerque, New Mexico 87102
22   Phone:  (505) 348-2283
     Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 776

1            IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                      CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7        Defendants.

8

9        Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
10   District Judge, Albuquerque, Bernalillo County,
     New Mexico, commencing on February 7, 2017.
11

12   For the Government:  Ms. Maria Armijo; Mr. Matthew
     Beck; Mr. Randy Castellano
13
     For the Defendants:  Mr. Richard Sindel; Ms. Cori
14   Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
     Mr. Robert Cooper; Mr. Dean Clark; Mr. Doug Couleur;
15   Mr. James Lahann; Mr. Orlando Mondragon; Mr. John
     Granberg; Mr. Noel Orquiz; Mr. Nathan Chambers; Mr.
16   Billy Blackburn; Mr. Steve Potolsky; Mr. Santiago
     Hernandez; Mr. Joe Spencer; Ms. Amy Jacks; Mr.
17   Richard Jewkes; Mr. B. J. Crow; Mr. Marc Lowry; Ms.
     Theresa Duncan; Ms. Amy Sirignano; Mr. Christopher
18   Adams; Mr. Michael Davis; Ms. Carey Bhalla; Mr. Ryan
     Villa; Ms. Justine Fox-Young; Mr. Donovan Roberts;
19   Ms. Erlinda Johnson; Ms. Angela Arellanes

20
     For the Defendants (Via telephone):  Mr. Larry
21   Hammond

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 777

```
 1                THE COURT:  Good morning everyone.  I
 2    appreciate everyone making themselves available to me
 3    this morning.
 4                All right.  The Court will call United
 5    States of America versus Angel DeLeon, et al.,
 6    Criminal Matter No. 15-CR 4268 JB.
 7                If counsel will enter their appearances for
 8    the Government.
 9                MS. ARMIJO:  Good morning, Your Honor.
10    Maria Armijo, Randy Castellano, and Matthew Beck on
11    behalf of the United States.
12                THE COURT:  All right.  Ms. Armijo, Mr.
13    Castellano, Mr. Beck, good morning to you.
14                And for Defendant Joe Lawrence Gallegos?
15                MR. SINDEL:  Richard Sindel for the
16    Defendant Richard Gallegos.
17                THE COURT:  All right.  Mr. Sindel, good
18    morning to you.  Mr. Gallegos, good morning to you.
19                THE DEFENDANT:  Good morning.
20                THE COURT:  For Defendant Edward Troup.
21                MS. HARBOUR-VALDEZ:  Good morning, Your
22    Honor.  Cori Harbour-Valdez, along with Pat Burke.
23                THE COURT:  All right.  Ms. Harbour-Valdez,
24    Mr. Burke, good morning to you.  And Mr. Troup, good
25    morning to you.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 778

```
 1              And for Defendant Leonard Lujan?

 2              MR. CLARK:  Good morning, Your Honor.  Dean

 3    Clark on behalf of Leonard Lujan.

 4              THE COURT:  Mr. Clark, good morning to you.

 5    Mr. Lujan, good morning to you.

 6              And for Defendant Garcia?

 7              MR. COOPER:  Good morning, Your Honor.  Bob

 8    Cooper and Jim Castle for Mr. Garcia.

 9              THE COURT:  Mr. Cooper, Mr. Castle, good

10    morning to you.  Mr. Garcia, good morning to you.

11              THE DEFENDANT:  Good morning.

12              THE COURT:  And for Defendant Eugene

13    Martinez?

14              MR. COULEUR:  Good morning, Your Honor.

15    Doug Couleur for Eugene Martinez.

16              THE COURT:  All right.  Mr. Couleur, good

17    morning to you.  Mr. Martinez, good morning to you.

18              And for Defendant Allen Patterson?

19              MR. LAHANN:  Good morning, Your Honor.

20    Jeff Lahann on behalf of Mr. Patterson.

21              THE COURT:  All right.  Mr. Lahann, good

22    morning to you.  Mr. Patterson, good morning for you.

23              THE DEFENDANT:  Good morning, Your Honor.

24              THE COURT:  And for Defendant Christopher

25    Chavez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 779

1          MR. MONDRAGON:  Good morning, Your Honor.

2     Orlando Mondragon and John Granberg on behalf of

3     Mr. Chavez.

4          THE COURT:  All right.  Mr. Mondragon, good

5     morning to you.  Mr. Granberg, good morning to you.

6     Mr. Chavez, good morning to you.

7          And for Defendant Javier Alonso?

8          MS. ORQUIZ:  Good morning, Your Honor.

9     Noel Orquiz and Nathan Chambers on behalf of

10    Mr. Alonso.

11         THE COURT:  All right.  Mr. Orquiz, good

12    morning to you.  Mr. Chambers, good morning to you.

13    Mr. Alonso, good morning to you.

14         And for Defendant Arturo Arnulfo Garcia?

15         MR. BLACKBURN:  Good morning, Your Honor.

16    Billy Blackburn on behalf of Mr. Garcia.  Your Honor,

17    we'll be joined hopefully sometime this morning or

18    this afternoon by Mr. Davidson, which I understand

19    the Court has signed an order on.

20         THE COURT:  Yeah, we probably need to talk

21    a little bit about that.  I signed the order, but I

22    had some issues on there with -- since Mr.

23    Linnenburger is moving over to the Rothstein Firm, I

24    need to probably make sure and satisfy myself we're

25    doing everything properly there.  So that doesn't

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 780

```
 1    necessarily relate to Mr. Davidson, but I want to
 2    talk to Ms. Waters a little bit before I just sign
 3    off on that.  So it's got my signature, but it's not
 4    entered yet.
 5              MR. BLACKBURN:  Okay.
 6              THE COURT:  All right.  Mr. Blackburn, good
 7    morning to you.
 8              MR. BLACKBURN:  Is it okay if
 9    Mr. Davidson --
10              THE COURT:  Sure.  He can sit here.  There
11    might be some issues we have to work out before that
12    order is entered.
13              Mr. Garcia, good morning for you.
14              THE DEFENDANT:  Good morning.
15              THE COURT:  And for Defendant Mario
16    Rodriguez?
17              MR. POTOLSKY:  Good morning, Your Honor.
18    Steve Potolsky and Santiago Hernandez on behalf of
19    Mr. Rodriguez.
20              THE COURT:  Mr. Potolsky, Mr. Hernandez,
21    good morning to you.  Mr. Rodriguez, good morning to
22    you.
23              THE DEFENDANT:  Good morning, Your Honor.
24              THE COURT:  And for Defendant Mauricio
25    Varela?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 781

```
 1                MR. SPENCER:  Good morning, Your Honor.
 2    Joe Spencer on behalf of Mr. Varela.
 3                THE COURT:  Mr. Spencer, good morning to
 4    you.  Mr. Varela, good morning for you.
 5                THE DEFENDANT:  Good morning.
 6                THE COURT:  And for Defendant Daniel
 7    Sanchez?
 8                MR. JEWKES:  Good morning, Your Honor.
 9    Richard Jewkes and Amy Jacks representing Mr.
10    Sanchez, who is present before the Court.
11                THE COURT:  All right.  Mr. Jewkes,
12    Ms. Jacks, Mr. Sanchez, good morning to you.
13                THE DEFENDANT:  Good morning, Your Honor.
14                THE COURT:  And for Defendant Conrad
15    Villegas?
16                MR. CROW:  Good morning, Your Honor.  B.J.
17    Crow for Mr. Villegas.
18                THE COURT:  All right.  Mr. Crow, Mr.
19    Villegas, good morning to you.
20                THE DEFENDANT:  Good morning, Your Honor.
21                THE COURT:  And for Defendant Anthony Ray
22    Baca?
23                MR. LOWRY:  Good morning, Your Honor.  Marc
24    Lowry on behalf of Defendant Baca, who is present in
25    the courtroom.  And Theresa Duncan will be here
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   approximately 11:00 a.m.  She had a scheduling

 2   conference.

 3              THE COURT:  All right.  Mr. Lowry,

 4   Mr. Baca, good morning to you.

 5              THE DEFENDANT:  Good morning.

 6              THE COURT:  And for Defendant Christopher

 7   Garcia?

 8              MS. SIRIGNANO:  Good morning, Your Honor.

 9   Amy Sirignano and Christopher Adams on behalf of

10   Christopher Garcia.

11              THE COURT:  Ms. Sirignano, Mr. Adams,

12   Mr. Garcia, good morning to you.

13              MS. SIRIGNANO:  Good morning.

14              MR. ADAMS:  Thank you.

15              THE COURT:  And for Defendant Carlos

16   Herrera?

17              MR. DAVIS:  Good morning, Your Honor.

18   Michael Davis and Carey Bhalla on behalf of Mr.

19   Herrera.

20              THE COURT:  Who else do you have?

21              MR. DAVIS:  Carey Bhalla.

22              THE COURT:  Mr. Davis, Ms. Bhalla, and Mr.

23   Herrera, good morning to you.

24              And for Defendant Rudy Perez?

25              MR. VILLA:  Good morning, Your Honor.  Ryan

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 783

```
 1   Villa on behalf of Mr. Perez along with my
 2   co-counsel, Justine Fox-Young.
 3              THE COURT:  All right.  Mr. Villa, Ms.
 4   Fox-Young, Mr. Perez, good morning to you.
 5              And for Defendant Andrew Gallegos?  All
 6   right.  Mr. Roberts was here when they came and got
 7   me.  Is Mr. Roberts here?  All right.  Where are you,
 8   Mr. Gallegos?  Raise your hand there.  Okay, there
 9   you are.  All right.  We'll see where Mr. Roberts is
10   here.
11              All right.  And for Defendant Santos
12   Gonzalez?
13              MS. JOHNSON:  Good morning, Your Honor.
14   Erlinda Johnson on behalf of Santos Gonzalez, who
15   appears before the Court.
16              THE COURT:  All right.  Ms. Johnson, good
17   morning to you.  Mr. Gonzalez, good morning to you.
18              THE DEFENDANT:  Good morning.
19              THE COURT:  And for Defendant Shauna
20   Gutierrez?
21              MS. ARELLANES:  Good morning, Your Honor.
22   Angela Arellanes with Ms. Gutierrez, who appears in
23   custody.
24              THE COURT:  All right.  Ms. Arellanes, Ms.
25   Gutierrez, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 784

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 785

1           THE DEFENDANT:  Good morning.

2           THE COURT:  All right.  So we need

3    Mr. Roberts here for Mr. Gallegos.  We'll see if we

4    can track him down.  He was here a minute ago.

5           All right.  And Mr. Hammond, I think you're

6    on the phone?

7           MR. HAMMOND:  Yes, I am.

8           THE COURT:  All right.  Good morning to

9    you, Mr. Hammond.

10          All right.  We're here on a number of

11   motions over the next four days.  Let me get my chart

12   out.  I think the first one that we're going to take

13   up is the motion to show cause for violation of

14   order, Document 299, and request for evidentiary

15   hearing on violation -- violations of Fourth

16   Amendment, Sixth Amendment to the United States

17   Constitution.  I believe that is Defendant Joe

18   Gallegos' motion.  So Mr. Sindel, are you going to

19   argue that motion?

20          MR. SINDEL:  I'll do my best.

21          On September 2nd of 2016, Agent Acee, as

22   the agent for the Government, prepared an affidavit

23   and received a search warrant from Magistrate Molzen

24   for a number of individuals identified as target

25   subjects.  And Mr. Gallegos was one of those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 785

```
 1    individuals.  There was a few of those people that
 2    were named as targets that were locked up, but the
 3    vast majority of them were out in the public.  And
 4    the vast majority of the areas to be searched
 5    included their homes and their cars and their
 6    garages, things like that.  Most of the requests in
 7    the laundry list of documents and items to be seized
 8    would not be applicable to Mr. Gallegos under the
 9    particular terms of the search warrant.  And in my
10    opinion, it would have been more appropriate for them
11    to proceed with two search warrants, one for those
12    who were in custody and one for those who are not.
13            THE COURT:  Just a second.  Let me make
14    sure we make note on the record that Mr. Roberts is
15    back in.  Mr. Roberts, good morning to you.
16            MR. ROBERTS:  Good morning, Judge.
17            THE COURT:  All right.  Mr. Sindel.
18            MR. SINDEL:  You know, an examination or
19    evaluation of the affidavit certainly indicates that
20    the primary focus of that particular affidavit and of
21    the search warrants were for items that would not --
22    be basically impossible for anyone who is
23    incarcerated to have in their possession; such things
24    as firearms, shotguns, ledger sheets, or items that
25    may have been buried underground.  And so most of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 786

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1787

1    allegations in paragraph 14 of the application for

2    search warrant did not deal with circumstances

3    involving Mr. Gallegos.

4            However, there was a reference to seizing

5    legal documents that could be found in the cells, and

6    that is part of the complications that we are here

7    today to address.  There was initially a proceeding

8    in front of Judge Gonzales, pursuant to Document 277,

9    which basically sought to curtail the jail personnel

10   and the United States Marshal's Office from

11   disseminating information about professional visits,

12   expert visits, things like that, and members of the

13   prosecution team of the U.S. Attorney's Office.  And

14   then after some discussion, there was apparently an

15   agreement that was reached to resolve that.  But

16   Judge Gonzales entered an order, Document 299, which

17   specifically required that the U.S. Attorney's

18   Office, if they were seeking to inspect

19   attorney-client communications, must inform the Court

20   that it needs to do so and obtain permission.  This

21   order, obviously, in terms of dealing with

22   inspection, referred to printed documents, which one

23   would expect could be examined and evaluated.

24           And so that didn't happen in this

25   particular case.  The U.S. Attorney did not abide by

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that particular restriction, and went ahead to

2    Magistrate Molzen, obtained the search warrant, and

3    searched Mr. Gallegos' cell, along with other

4    inmates, and seized what is clearly privileged

5    information.  And included in that privileged

6    information was handwritten notes that were prepared

7    by my co-counsel, Mr. Benjamin, as well as a notebook

8    that was designated specifically as involving

9    privileged communications.

10           And there was an allegation that a filter

11   team would be involved in seizing all the materials.

12   Agent Acee signed off on the inventory as being there

13   when the items were seized.  And what we can assume

14   is that the filter team decided that everything was

15   subject to seizure, and they did seize them.  We have

16   not secured -- been able to secure, despite legal

17   pleadings that were filed in this particular case,

18   that any of those materials have been turned over,

19   other than 14 pages of items that were clearly

20   privileged information.  The rest of the documents

21   have not been turned over, the rest of the materials

22   have not been turned over, even though Rule 16

23   specifically requires that they do so.

24           It has been since September that those

25   items have been seized, and we have not had an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 788

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 789

```
 1    opportunity to review them.  And I think it's
 2    appropriate for -- in making an assessment about what
 3    is attorney-client privilege to not only have a
 4    filter team, but also to allow input from the defense
 5    attorney.  Because I think that attorney will be more
 6    likely than anyone else to determine what, in fact,
 7    is privileged.  And if there is some dispute about
 8    it, it can be taken to the Court.
 9              The Government's position -- at least as I
10    understand it -- is that this Court on June the 2nd
11    of 2016, pursuant to protective order, Document No.
12    589, basically vitiated or vacated the order from
13    Judge Gonzales that anyone go to an Article III judge
14    to make certain that it was appropriate that these
15    legal documents be examined, evaluated, and seized.
16              And as I've indicated, the order of 299,
17    Document 299, was not followed in this particular
18    case.
19              THE COURT:  Well, what's wrong with the
20    Government's argument that whatever Judge Gonzales
21    intended by the use of the word "Court," we don't
22    have to figure that out, because that's not the
23    operative document anymore?  What's wrong with that
24    argument?
25              MR. SINDEL:  Well, I think, first of all,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 789

```
 1    the Court's order of June 16 really dealt with the
 2    protective order involving the laptops, the
 3    computers, the tablets that were given, and how they
 4    are to be protected and disseminated.
 5           THE COURT:  But isn't that what also Judge
 6    Gonzales' order primarily dealt with?
 7           MR. SINDEL:  I thought that his order, from
 8    what I understood, and what I was able to evaluate,
 9    dealt with the denial of the communications and
10    disclosure of who was visiting the particular
11    defendants at the particular times, professionals,
12    experts, things like that.  That was the primary
13    focus, as I understood it, of the order 299, based on
14    a motion, which is Document 277.
15           THE COURT:  Well, it just says -- my memory
16    of Judge Gonzales' order just said "the Court."  Why
17    is that necessarily -- I didn't enter that order.
18    Why doesn't that include U.S. Magistrates just as
19    well as it includes Judge Gonzales?
20           MR. SINDEL:  Well, I believe --
21           THE COURT:  I mean, I don't typically do
22    search warrants.  I mean, I do --
23           MR. SINDEL:  I understand that.
24           THE COURT:  -- I do some wiretaps, because
25    Article III Judges are required to do that, but I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   don't really do much in the way of search warrants.

 2   That's typically what the magistrates do.  And I

 3   guess I can't put myself into Judge Gonzales' head.

 4   But I'm not sure that he was sitting there thinking

 5   that he was going to start doing all the search

 6   warrants.

 7         MR. SINDEL:  Well, Document 299, signed by

 8   Judge Gonzales, indicates that the Government must

 9   first inform "the Court" of its needs.  It does not

10   say "a Court."  Now, I certainly no more than this

11   Court can go into Judge Gonzales' mind and make sure

12   what he determined.  But the purpose of that, I

13   think, was to make sure that the court issuing any

14   search warrant understands some of the particulars

15   and parameters of this case.

16         THE COURT:  What would you want Judge

17   Molzen to know that maybe she didn't know when she

18   issued the warrant?  What's special about -- I'll

19   call it a cell search that she should have known that

20   she didn't know?

21         MR. SINDEL:  Well, there wasn't anything in

22   the affidavit except for a footnote concerning the

23   filter team.  And I think it would have been

24   appropriate for the judge to understand and

25   appreciate exactly the kind of materials that could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   be searched and seized in these circumstances.  And
 2   that didn't happen.
 3         THE COURT:  Well, it appears a taint team
 4   is in place at the U.S. Attorney's Office.  It
 5   appears that it is functioning and active, and was
 6   working in this situation.  What is it that you
 7   really want the Court to do?
 8         MR. SINDEL:  Well, we would request that if
 9   there are any further incidents in which they intend
10   to search my client or any of the defendants' cells
11   for legal documents or other things that may contain
12   privileged information, that at the very least they
13   make a presentation to the issuing court, which in
14   this case would have been Magistrate Molzen, which
15   ensures that that court is fully informed.
16         In fact, this Court on the hearing on
17   October 4, 2016 addressing this issue at that time
18   indicated that that may be appropriate.  And so we
19   would ask, number one, that there be appropriate
20   determination that the Court is totally informed as
21   to what the documents they are receiving, and the
22   background of this case.  And finally, we think we
23   have a right to the stuff.
24         THE COURT:  Well, that may be.  I'm trying
25   to figure out -- let me take the extreme.  What
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 792

1    difference does it make if Judge Molzen is informed,

2    fully informed?  Tell me what difference that makes.

3            MR. SINDEL:  Well, I think it may make a

4    difference --

5            THE COURT:  Is she going to change the

6    warrant in some way?  What difference does it make?

7            MR. SINDEL:  I think it makes a difference

8    in terms of making sure how the taint team is to be

9    conducted, and exactly --

10            THE COURT:  Is that typically something you

11    would put into the warrant?  I mean, that seems to be

12    internal executive branch making sure they don't mess

13    up their prosecution rather than something that the

14    court supervises.

15            MR. SINDEL:  Well, it was, in fact, in the

16    application.  There was a short footnote concerning

17    how they had set this up.

18            THE COURT:  Is there anything insufficient

19    about the footnote?

20            MR. SINDEL:  There is no identification of

21    who are the members of the filter team, who is the --

22    if there is an AUSA involved in the search, who that

23    person is, who is the head of that particular taint

24    team.  There is nothing to identify that information.

25    And from what we can determine, all but 14 pages of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   this was turned over to Agent Acee for his evaluation
 2   and review, none of which we've seen.
 3           THE COURT:  And that's what you're really
 4   concerned about is you want to know what he got and
 5   what -- and compare it with what you've got; right?
 6   That's what you really want?
 7           MR. SINDEL:  Well, what we have is 14
 8   pages, which is clearly identified as privileged.
 9   What we don't have is anything else, and whether or
10   not arguably it's privileged or whether it's not.  We
11   just don't have any of those documents.  It's been
12   since September that this has happened.  And there
13   has been back and forth negotiations.  But none of
14   them have been provided.  And they easily could be
15   provided by mail, email, CD, anything else.  But as
16   of today, none of those materials are forthcoming.
17   And I don't know that Rule 16 says, Well, you can
18   hold onto them for a particular period of time before
19   you release them to the defendant.
20           THE COURT:  Do you have any case law,
21   anything that supports the right to have the warrant
22   application and the warrant itself specify how the
23   taint team is going to operate, who is a member of
24   the taint team, those -- do you have any precedent or
25   any authority that says either the application or the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 794

```
 1   search warrant should contain that sort of material?
 2                MR. SINDEL:  I do not.  And there is
 3   nothing mentioned in the Government's response
 4   either.  If the Court wishes, I would be glad to
 5   supplement it within the next couple of days.
 6                THE COURT:  All right.  Anything else,
 7   Mr. Sindel, you want to talk about on this motion?
 8                MR. SINDEL:  No, I don't think so at this
 9   point in time, Your Honor.  I just would again urge
10   the Court to make sure that we receive the Rule 16
11   materials in a timely fashion.
12                THE COURT:  All right.
13                MR. SINDEL:  Thank you, sir.
14                THE COURT:  Thank you, Mr. Sindel.
15                Any other defendant want to speak on Mr.
16   Gallegos' motion?  Ms. Sirignano?
17                MS. SIRIGNANO:  No, Your Honor.  Thank you.
18                THE COURT:  All right.  Ms. Armijo?
19                MS. ARMIJO:  Your Honor, I think that there
20   are several things to consider in this case as to why
21   there wasn't a violation.  As the Court already
22   mentioned, Judge Gonzales had a different view of ex
23   parte materials.  And I think that when we were
24   discussing 277, we were talking about apples and
25   oranges.  I don't think we were talking about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    defendants who continue to commit crimes, and what
 2    would happen in that instance.  We were talking
 3    about -- the main concern was there -- if they had a
 4    mental health expert or a mitigation specialist or
 5    somebody, they didn't want the United States to be
 6    able to go and see all that, or deal with any of
 7    those things, because they considered that privileged
 8    attorney-client information.
 9              That being said, the Court had entered its
10    order.  Again, we don't even think that that order
11    applies to this situation, because this deals with
12    new crimes being committed, not your typical
13    scenario.  Then, of course, this case was transferred
14    to you.  And in June you indicated several times that
15    you did not want ex parte communications.  I believe
16    in looking at the transcript, you indicated that the
17    United States or any party should think three times
18    before submitting anything, because you didn't want
19    to have yourself in a position where you were tainted
20    and had to get off the case.
21              In this case, there was indication that
22    there were additional crimes being committed by Mr.
23    Gallegos that happened after the last superseding
24    indictment.  We did have court permission; Judge
25    Molzen signed off on it.  And it's important to note
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 796

```
 1    that Judge Molzen isn't just a random magistrate
 2    judge, who just happened to be on duty.  Judge Molzen
 3    is intimately familiar with this case.  She has
 4    signed off on various search warrants, and knows the
 5    facts of this case quite well, more so than just any
 6    average magistrate who would not have any knowledge
 7    of this case.
 8                In addition to that, we did set up a taint
 9    team.  My understanding is that she did ask Special
10    Agent Acee about the taint team, and how that would
11    work.
12                THE COURT:  When she was signing the
13    warrant?
14                MS. ARMIJO:  Yes.  So she was aware of
15    that.
16                Now, the search warrant on Mr. Gallegos was
17    served down south, because he was in Otero County at
18    the time.  And somebody from down south, an FBI Task
19    Force Officer, was the one that served that search
20    warrant.  Agent Acee did sign off on the return,
21    because it had to be returned up here in a timely
22    fashion.  But he never saw any of those documents.
23    What happened is the taint officer went in and served
24    the search warrant.  And then we had a taint AUSA,
25    who is present here in the courtroom today to answer
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    any of the Court's questions.  He was the one that

 2    worked with that agent in --

 3              THE COURT:  Who is your taint AUSA?

 4              MS. ARMIJO:  Peter Eicher, who is here.

 5              THE COURT:  All right.  Mr. Eicher.

 6              MS. ARMIJO:  And so he was the one that

 7    worked with Curtis Yarnell in getting those

 8    documents.  And I believe -- and he can speak more

 9    directly to this -- but there are three different

10    categories that they determined them to be:

11    Nonprivileged, privileged material, and then the

12    in-between items.

13              The nonprivileged materials, I believe our

14    office received recently, and we will disclose those.

15    I actually had thought that maybe they had already

16    been disclosed through Mr. Eicher.  But again, with

17    that wall, we haven't really communicated a great

18    deal about the contents of it, other than just there

19    are three separate categories, and where they were.

20    So we will disclose those items.  And we just -- "we"

21    being the prosecution team received those relatively

22    recently.

23              The privileged materials, I guess that's

24    what, my understanding is, that they have received

25    already.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 798

     1              And there is this third category that Mr.

     2    Eicher has been working with Mr. Benjamin.  And I

     3    believe they came as to their position.  He's ready,

     4    Mr. Eicher is ready to file a motion, I believe it's

     5    going to be ex parte, just between those two parties,

     6    but he can speak on that.  He has been in

     7    communication with defense counsel on that.  And I

     8    believe as of the end of January, they have not

     9    responded as to their position on these documents.

    10    So, in fact, there have been attempts made to deal

    11    with it.  You can talk about the specifics of it,

    12    but -- and, of course, we have not seen that.

    13    Special Agent Acee has not seen any of that.

    14              So that's where we're at.  So our position

    15    is that that protective order did not apply in this

    16    case.  It was vacated.  It dealt with different

    17    issues, and it certainly doesn't apply to crimes that

    18    we did receive court permission to go and search for.

    19              THE COURT:  Would you be willing to agree

    20    that anytime there is a future search warrant of this

    21    nature, that if it's Judge Molzen or if it's other

    22    magistrate judges, they be fully informed of what

    23    you've told me about the taint team, and how this is

    24    structured, who is a part of it, and how it's

    25    operating, so that the magistrate knows fully what

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 799

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 800

```
 1    they're signing off on?

 2            MS. ARMIJO:  Absolutely, Your Honor.

 3            THE COURT:  Could we also impose a deadline

 4    of, say, 10 days from today to get this second

 5    category of documents into Mr. Sindel's hands?

 6            MS. ARMIJO:  And I don't know -- I would

 7    ask Mr. Eicher to speak to that.

 8            THE COURT:  Mr. Eicher, could we get that

 9    expedited so that they've got that in their hands?

10            MR. EICHER:  Your Honor, we have -- there

11    are three categories of documents.  There is the

12    nonprivileged documents that I believe have been

13    delivered to the U.S. Attorney's Office in Las

14    Cruces.  There are the documents that I determined to

15    be privileged.  We've offered to have the filter

16    agent provide those to Mr. Benjamin.

17            THE COURT:  Now, I was under the impression

18    that Mr. Sindel already had those.  No?

19            MR. EICHER:  I don't believe --

20            THE COURT:  What is the 14 days that he's

21    received?

22            MR. EICHER:  I believe what Mr. Sindel is

23    referring to are the questionably privileged

24    documents.

25            THE COURT:  Oh, okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 800

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 801

1          MR. EICHER:  Those are documents that I

2    believed could be privileged, and I sent those to the

3    defense for their position.

4          THE COURT:  Okay.

5          MR. EICHER:  The defense indicated that

6    they did not believe that -- some of the pages were

7    privileged, and they said that -- I believe it's 14

8    or 16 pages they thought were privileged.  My

9    suggestion was that we submit a motion to the Court

10   asking to submit those documents ex parte, and ask

11   the Court to review them and the parties can enter

12   arguments as to whether they're privileged or not.  I

13   sent a proposed motion to Mr. Benjamin in mid January

14   for his position.  He wrote back with some questions

15   about that motion.  I replied with my responses, and

16   I believe that was on January 25.  And I haven't

17   heard back from Mr. Benjamin since then.  So, as soon

18   as I hear back from the defense regarding that

19   proposed motion, we can submit those documents to the

20   Court, with the Court's permission --

21         THE COURT:  How many pages of those do you

22   anticipate me reviewing?

23         MR. EICHER:  There are 16 pages, Your

24   Honor.

25         THE COURT:  Okay.  On the privileged

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 801

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 802

```
 1   material, why do they not already have the privileged

 2   material?

 3           MR. EICHER:  Part of the delay was that I

 4   needed to meet with the filter agent at the FBI

 5   office in Albuquerque.  And some of the delay was

 6   caused by my being out of the office as well as the

 7   holidays.  I met with him in the beginning of

 8   January.

 9           The filter agent has those documents.  So

10   we've offered to give them to the defense.  Mr.

11   Benjamin indicated that he was not available last

12   week or this week to receive those documents.  And so

13   I offered to make the filter agent available the week

14   of February 13 to meet at the U.S. Attorney's Office

15   in Las Cruces and hand those documents over.  I

16   haven't heard back from Mr. Benjamin since I offered

17   that.  But just recently --

18           THE COURT:  How many documents are we

19   talking about as being privileged?

20           MR. EICHER:  I believe -- this is just an

21   approximation, since I no longer have those

22   documents, but I believe there is 15, approximately

23   15.

24           THE COURT:  I guess I'm wondering why you

25   can't just stick them in the mail and send them.  Why
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    do we have to have everybody meeting and everything

2    on these?

3              MR. EICHER:  I think we certainly could do

4    that, Your Honor, as long as the defense is

5    comfortable with that.  I just didn't want to, you

6    know --

7              THE COURT:  What's the other category?

8    Clearly nonprivileged?

9              MR. EICHER:  Nonprivileged documents that

10   have been delivered to the U.S. Attorney's Office.

11             THE COURT:  All right.  And then those

12   documents, do they have some inventory or copy or

13   something so they know what was seized?  What's the

14   volume of that amount of material?

15             MR. EICHER:  I believe that's 248 pages.

16             THE COURT:  Stand right there.  Mr.

17   Sindel --

18             MR. SINDEL:  Yes, Your Honor.

19             THE COURT:  -- do you care how these

20   privileged documents are delivered?  Do you want them

21   to make a copy and stick them in the mail?

22             MR. SINDEL:  That would be fine.

23             THE COURT:  All right.  So let's get those

24   in the mail within three days of today, and -- send

25   them to you or Mr. Benjamin?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          MR. SINDEL:  Either one.  Probably Mr.

2    Benjamin since he's much more familiar with some of

3    the back and forth between Mr. Gallegos.

4          THE COURT:  All right.  So send those to

5    Mr. Benjamin; just stick them in the mail and get

6    them there.

7          The second category you'll tell Mr.

8    Benjamin the ball is in his court; he needs to

9    respond to the proposed motion.

10          MR. SINDEL:  I will do so.

11          THE COURT:  Just from a survival

12    standpoint, the more y'all can agree on, the better.

13    If you can't agree, that's what I get paid for.

14          But I do think that it's probably in

15    everybody's interests to keep me as little involved

16    in document review and privilege review as possible.

17    I mean, I can't avoid it.  But I think it would just

18    be better.

19          Then this third category, the nonprivileged

20    documents, do you have any problem with the United

21    States just making a copy of those 250 pages, and

22    sending them to you?

23          MR. SINDEL:  No, not -- of course, with an

24    indication of this is everything that they have, with

25    that, I have no problem.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 804

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 805

```
 1              THE COURT:  And this is the universe,
 2   right, we're talking about 300 pages?
 3              MR. EICHER:  That's correct, Your Honor.
 4              THE COURT:  Any problem with sending that
 5   directly to Mr. Benjamin, too?
 6              MR. SINDEL:  No problem.
 7              THE COURT:  All right.  So can we do that
 8   within three days, too, from today; stick them in the
 9   mail?
10              MR. EICHER:  Yes, Your Honor.
11              THE COURT:  All right.  Anything else,
12   Ms. Armijo, the Government --
13              MS. ARMIJO:  No, Your Honor.
14              THE COURT:  -- want to say on this issue?
15              MS. ARMIJO:  No.  Thank you.
16              MR. EICHER:  Thank you, Your Honor.
17              THE COURT:  Mr. Sindel, if we get an
18   assurance from the Government that they're going to
19   fully brief the magistrate judge on any future
20   warrants, applications that are submitted; you get
21   these two categories of documents probably as quickly
22   as the U.S. mail can get them to you, and then I'll
23   resolve any disputes y'all can't work out on the
24   third category, anything else I can do for you on
25   this one?
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

DNM 805

```
 1              MR. SINDEL:  No, other than there was a
 2    reference in the pleadings by the Government to an
 3    Exhibit 1 and an Exhibit 2.  Neither one of them were
 4    attached in Pacer.  I have asked them to provide me
 5    with Exhibit 1, which was the reference to the June
 6    2, 2016 statement by the Court.  I have not yet
 7    received them.  But I understand --
 8              THE COURT:  Refresh my memory.  Let's see,
 9    the Government's response --
10              MR. SINDEL:  I think it's 888, Your Honor.
11              THE COURT:  All right.
12              MR. SINDEL:  It's a response, page 3 of --
13    here, I can tell you exactly where it is.  It's page
14    2, paragraph beginning, "On June 2, this Court
15    indicated that it wanted to keep ex parte submissions
16    to a minimum.  See Exhibit 1."
17              THE COURT:  Okay.  So that's probably just
18    a copy of the transcript of that June 2 hearing; is
19    that correct, Ms. Armijo?
20              MS. ARMIJO:  It is, Your Honor, and I
21    apologize, we were having problems on Friday
22    afternoon --
23              THE COURT:  Did you just hand Exhibit 1 to
24    Mr. Sindel?
25              MS. ARMIJO:  I did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 806

```
 1                THE COURT:  So you got it.  What's the
 2      other one, Mr. Sindel?
 3                MR. SINDEL:  That's it.
 4                THE COURT:  All right.  There is another
 5      exhibit; that's the search warrant.  Do you have a
 6      copy?
 7                MR. SINDEL:  We have it now.
 8                THE COURT:  You have it.  So anything else?
 9                MR. SINDEL:  No, Your Honor.
10                THE COURT:  All right.  I appreciate it.
11                All right.  So I will, I guess, largely
12      deny that motion; I guess it's a grant in part,
13      setting some deadlines, by which we'll comply, and
14      how we'll proceed in the future on motions so that
15      the magistrate judges know fully what they're doing,
16      and I'll let the magistrate judges handle those.  I
17      think it would be better if as much of that can go
18      through them as possible.
19                All right.  Hold on a second, let me get
20      organized here.
21                All right.  The next motion is the joint
22      motion to sever defendants charged with offenses in
23      Counts 6 and 7.  This is a motion that's been filed
24      by a number of defendants:  Jerry Montoya, Timothy
25      Martinez, Anthony Ray Baca, Mauricio Varela, Daniel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 808

1   Sanchez, Carlos Herrera, and Rudy Perez, I think

2   calling themselves "The 2014 defendants."  They moved

3   jointly on this.

4            Mr. Villa, are you taking the lion's share

5   of work on this?

6            MR. VILLA:  If I may, Your Honor.  I have a

7   little PowerPoint that shouldn't take me long.

8            THE COURT:  While you're talking -- let me

9   give you some thoughts on this while you're plugging

10  that in.  You know, we're dealing with a little bit

11  of reduced crowd here in DeLeon.  I guess I'm

12  wondering if some of this may sort itself out as we

13  get a little bit closer to trial in July.  I mean, I

14  don't know how many of the people that are here are

15  still going to be here.  And so I'm wondering if it's

16  a little premature -- not for the argument, I don't

17  mind hearing the argument -- but I wonder if it's a

18  little premature for me to make sort of nuanced

19  decisions here, until we kind of know a little bit

20  better as to who is going to be going to trial.

21           I do have some problems with -- I think

22  there is a defendant or two that has just some gun

23  charges, felon in possession.  And it seemed to me

24  that those probably shouldn't be going to trial.  But

25  it seemed to me that I had a lot of discretion in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 808

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 809

```
 1    this area.  And the RICO charges, the overarching
 2    RICO charges, I think it makes it difficult to say
 3    that the Government is misjoined.  Maybe I could get
 4    a little closer on just the stand-alone gun charges.
 5    But in any case, it seems to me that it's hard for me
 6    to say they've been misjoined.  And so it's more
 7    of -- falls into the discretion of the Court to try
 8    to put a case together that can be tried, and can be
 9    tried fairly.  And it seems to me, we're in early
10    February, looking at a July trial date.  It may be
11    that I have to sit on this a little bit until I get a
12    clearer picture of who is actually being -- who is
13    going to go to trial.
14            So those are my thoughts coming in.  That
15    doesn't mean we don't begin to talk about those
16    issues.  But I'm wondering if I, as the judge, need
17    to wait until I get a little better visibility on
18    what the trial is going to look like.
19            MR. VILLA:  Well, Your Honor, I think that
20    certainly we -- everybody here in the room is
21    prepared to go to trial.  I agree with you that may
22    not be the case come July.  Things happen.  But I
23    think that the joinder issue -- I'd ask the Court
24    just to look a little bit closer at that, because I'm
25    not sure that the Government can simply allege SNM is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 809

34-810

```
 1    a criminal enterprise engaged in racketeering and
 2    join every single violent crime that they could find
 3    from 1980.  Now, I know they haven't done that in
 4    this particular case.
 5            But we are talking about, you know, Counts
 6    1 and 2, the 2001 murders being tried alongside our
 7    Counts 6 and 7, the 2014 murders, where there are no
 8    overlapping defendants, there are no overlapping
 9    facts other than SNM, albeit there is an argument
10    that there is different factions of the SNM
11    enterprise.
12            And it's a smaller scale, Judge, but I
13    think the example to think about is the Crips or the
14    Bloods; we can certainly say that the Government, you
15    know, unless there was some connection, some factual
16    overlap, could necessarily indict the Crips in
17    Albuquerque and the Crips in Las Cruces and the Crips
18    in Espanola, just because they're Crips, without
19    more.
20            THE COURT:  Well, putting aside that,
21    though, don't you have, though, the problem here that
22    the Government has got to prove predicate acts?  And
23    so, once you have the RICO alleged and their
24    obligation to prove the predicate acts, how do I
25    start keeping evidence out or -- of predicate acts?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. VILLA:  Well -- and maybe that's --
 2              THE COURT:  How do they prove the predicate
 3    acts, if I've been chopping this up into just
 4    individual murders?
 5              MR. VILLA:  Well, any classic RICO
 6    conspiracy count, which we don't have here, they need
 7    two predicate acts.  You know, there isn't, as I
 8    pointed out in briefing, a Tenth Circuit pattern
 9    instruction on VICAR.  But the ones that I did look
10    at, you know, they have to prove that the enterprise
11    was engaged in racketeering.  And I assume that's
12    going to be done by demonstrating two predicate acts.
13    But, you know --
14              THE COURT:  Well, but I mean, isn't the
15    request, though, it's requesting me to sort of slice
16    and dice, here in February, the Government's
17    evidence, and say, well, you and I think they ought
18    to prove their predicate acts by this way, rather
19    than letting the Government decide how they're going
20    to prove their predicate acts.  I mean, should I be
21    straightjacketing the Government, and telling them
22    these are the two predicate acts they should use?
23              MR. VILLA:  No, Your Honor.  I think that's
24    an evidentiary issue that should come later in terms
25    of, you know, is this a predicate act?  Is this
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    unfairly prejudicial, once they've established their
2    predicate acts?  But I don't think that they can just
3    say, We're going to try Counts 1 through 5 alongside
4    Counts 6 and 7, simply because those are predicate
5    acts.
6            THE COURT:  But don't I run into the same
7    evidentiary problems, you run into the same
8    prejudice?  If those predicate acts are coming in,
9    isn't the fact whether I'm trying those defendants or
10   not trying those defendants, aren't we going to be
11   dealing with the same sort of prejudice and same sort
12   of evidentiary issues?
13           MR. VILLA:  Well, not quite as much,
14   because you're not asking the jury to find guilt on
15   the defendants in Counts 1 through 5.  You're only
16   asking the jury to find guilt on Counts 6 and 7.
17           THE COURT:  But as far as the evidence
18   they're going to hear and the witnesses they're going
19   to see, it's going to be pretty similar, isn't it?
20           MR. VILLA:  Well, I don't know, Your Honor.
21   I mean, I think that the Government could put on some
22   evidence of the formation of the gang, of its
23   history, of what it generally does, and that sort of
24   thing, educate the jury through perhaps some experts
25   or cooperating witnesses, without having to put on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 812

```
1    the evidence of Counts 1 through 5, and Counts 8

2    through 15 in the trial of Counts 6 and 7.

3           I mean, the Government has already decided

4    they can do that.  They filed at least three SNM

5    indictments -- I think more than that.  But, you,

6    know, 1613, which is in front of this court, and 4269

7    are cases that could easily have been tried alongside

8    this case.  And so --

9           THE COURT:  My memory is the Government

10   said -- and I may be off here, but we had an

11   evidentiary issue where they said they were not going

12   to use expert witnesses to establish the gang

13   membership.

14          MR. VILLA:  Well -- and Your Honor, that

15   certainly --

16          THE COURT:  I take that back.  I think what

17   they said, they weren't going to use Department of

18   Corrections people to establish gang membership.  Do

19   you remember that issue, that discovery issue?

20          MR. VILLA:  I recall that, Your Honor.  And

21   I guess that might be premature, because we don't

22   have witness lists and things like that.  But I think

23   that in terms of establishing what they need for a

24   VICAR count, which is what all these counts are, I

25   don't think that they need to be able to try all the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 813

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 814

38

```
1    counts together to accomplish that, or to establish
2    the predicate acts.
3            THE COURT:  Well, but -- yeah, I hear what
4    you're saying, but I mean -- help me be a fair judge
5    here -- I mean, that's asking me to turn to the
6    Government and say:  You don't need to prove it this
7    way, you can prove it this way.  And that's kind of
8    hard to do.  I mean, typically, we let each side kind
9    of put on their own case.
10           MR. VILLA:  Well, Your Honor, I think there
11   has to be a limiting principle at some point.  I
12   mean, imagine how many more counts and defendants
13   could they add if they found a few more SNM counts?
14   There has to be some limiting principle.  And that's
15   the balancing act that the Court does on the Rule 14
16   side of things.
17           But I think Rule 8 is a limiting principle,
18   too.  And I think the law that I found, primarily
19   from the Fifth Circuit, was to demonstrate some
20   overlapping facts and participants within these
21   individual conspiracies.  I mean, there is no doubt
22   that, for instance, Counts 1 and 2 in 2001, at least
23   Mr. Perez and the other defendants in the 6 and 7 can
24   speak for themselves, wasn't even involved in the
25   SNM.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And so, you know, there has to be a
 2   limiting principle in terms of predicate acts that
 3   the Government is allowed to put on.  And I think a
 4   couple of those limiting principles are Rule 8 and
 5   Rule 14.  But again, you know, the bigger issue I
 6   think that I see, Your Honor, is whether they can put
 7   on certain predicate acts in the trial might be an
 8   evidentiary issue.  Whether we're going to ask the
 9   jury to decide guilt of all of the defendants and all
10   the counts at the same time is another thing
11   altogether, because then you run into problems of
12   spillover of evidence, you know, effectiveness of
13   limiting instructions, the jury's ability to
14   compartmentalize these cases.  I mean, even if we
15   have six defendants left in Counts 6 and 7 --
16              THE COURT:  None of your 6 or 7 have pled?
17              MR. VILLA:  No, they have, Your Honor.
18   There was nine originally.  So three have pled.
19   Let's assume two of us are left standing in July, and
20   one person is left standing from each of the
21   remaining counts.  Now, you're asking the jury to --
22   not just is this a predicate act for a racketeering
23   enterprise, but are each these individuals sitting
24   here guilty of these crimes, and to follow the
25   Court's limiting instructions to be able to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 815

```
 1    compartmentalize the number of different statements
 2    that are out there.  I mean, there are days and days
 3    worth of statements made by each of these defendants
 4    outside the course of the conspiracy, because many of
 5    them weren't around for many of these conspiracies.
 6    And being able to say, Jury, even though the
 7    defendants in Counts 6 and 7 are members of the SNM
 8    and Counts 1 through 5 involve some really awful
 9    stuff, don't think about that, and just think about
10    whether these guys are guilty on their own merits.
11    Juries can do some of that.
12           But at some point there has to be a
13    limiting principle.  And it seems to me the
14    prevailing feeling among the judiciary in these
15    racketeering cases is to break them up in a way that
16    protects against that type of prejudice, without
17    overly, you know, confining the Government to their
18    evidence.  I mean, what evidence they can put on is
19    really a different question than how many times do
20    they have to put it on.
21           You know, what we're asking the Court to do
22    is just sever 6 and 7.  What happens with the rest of
23    the case is outside of our control, I guess.  But you
24    know, I think, when you examine the Rule 8 joinder
25    law in terms of overlap of offenses and overlap of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 816

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 817

```
 1    participants, you've got a joinder problem.  When you
 2    look at the Rule 14 severance with respect to
 3    prejudice issues, you've got a problem.  And that's
 4    not just an evidentiary problem.  It's, we want the
 5    jury to find each of these individuals guilty on
 6    their own merits and not on the culmination of all
 7    these different murders that are all a little bit
 8    different, that involve different players.  And there
 9    is no evidence that they were all working together,
10    other than this sort of general notion of this is
11    what the SNM does.
12            THE COURT:  All right.  I hit you with some
13    questions.  Do you want to show me some stuff?
14            MR. VILLA:  Yeah.  And some of it -- it
15    looks like the Court is well up on these things.  I
16    think I need to switch over to the computer HDMI, as
17    opposed to the --
18            THE COURT:  Where is your screen saver
19    from?
20            MR. VILLA:  You know, they are all random,
21    they pop up at different times.
22            THE COURT:  Sure is pretty.
23            MR. VILLA:  I didn't put that one up
24    myself.
25            Okay.  So I think we can get through this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 817

```
 1    pretty quickly, Your Honor.
 2              THE CLERK:  We're going to have issues with
 3    them seeing back there.
 4              THE COURT:  All right.  Mr. Villa?
 5              MR. VILLA:  Thank you, Judge.
 6              And this is probably Exhibit A.  I mean,
 7    granted, we can make courtroom accommodations, but
 8    let's assume a large number of defendants are all
 9    going in one joint trial.  These are the types of
10    issues we're going to be dealing with throughout the
11    case.  I mean, granted, maybe we bring in one of
12    those big 80-inchers, and that solves this problem,
13    but that doesn't solve all the other problems, which
14    I think I get to when we talk about severance.
15              And you know, I think that there have been
16    a number of other pleadings filed.  So these are the
17    pleadings directly related to this particular motion,
18    Your Honor, 807.  There were a couple of responses
19    filed; the Government's response; Defendant
20    Rodriguez' supplemental brief; then my reply.  I
21    think the Court has clearly had all those things.
22    There are some other motions to sever pending.
23    Santos Gonzalez filed a motion to sever defendants.
24    And what I would suggest to the Court, in terms of
25    whether this is premature, you know, perhaps the
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 818

```
 1    question of should an individual defendant be severed

 2    based on whatever grounds would be premature.

 3              But the counts, I don't think, is

 4    necessarily premature.  And we can get into some of

 5    that.  Because I think that some of the benefits that

 6    we'll see from having counts severed based on when

 7    the counts occurred, the geographical location, the

 8    dates, the times, is going to benefit us pretrial as

 9    well.  I mean, Counts 6 and 7 is severed, and there

10    is now six of us, and we have a motion hearing that

11    not necessarily everybody needs to be here for --

12    they certainly can -- we're going to avoid some of

13    these issues that we have even here today.  And I

14    think costs, which we'll talk about as well.

15              THE COURT:  Realistically, what -- if we

16    hang together a little bit to see -- get a better

17    picture as to who is going to be in the trial and who

18    is not going to be in the trial, it really doesn't

19    prejudice you; right?  Because you don't know what

20    predicate acts the Government is going to throw at

21    you.  Whether you're alone in 6 and 7, or whether

22    you've got some other counts, you kind of have to

23    prepare -- that's what we've dealt with all through

24    this discovery -- you have to prepare as if they're

25    going to throw every one of the predicate acts at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 819

```
 1   you; right?

 2            MR. VILLA:  I don't know necessarily that,

 3   Your Honor.  I mean, in terms of everything that has

 4   happened since 1980, I suppose we do, to some degree,

 5   need to be prepared for that.  But I think that in

 6   terms of -- if Counts 6 and 7 were severed, then we

 7   can have a realistic discussion with the Government

 8   about what is the evidence they need to put on to

 9   prove their racketeering count.  You know --

10            THE COURT:  At what point -- if we just

11   hang together a little bit, at what point does it

12   begin to really be any sort of real prejudice to you

13   as to whether 6 and 7 are severed or not severed?  At

14   what point, with a July 10th trial date, how long

15   does just rocking along, at what point does it begin

16   to be a real problem for you?

17            MR. VILLA:  Well, I mean, I think it's a

18   problem now, even with two attorneys on the case, to

19   get through all of the evidence in these other

20   murders, and figure out what's going on is a problem.

21            But in terms of prejudice to the defendant,

22   I guess the concerns I have are the same; they need

23   to review that discovery.  But also I have concerns

24   whether this joint trial could happen in July.  I

25   believe 6 and 7 could go.  I mean, it was weeks from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 820

```
 1    trial in state court, granted, on only three
 2    defendants, but it's basically teed up.
 3           You know, these other counts, Counts 1 and
 4    2, we're talking going back 15 years.  If that causes
 5    delay, if there is enough defendants in these other
 6    counts that say, We're not ready for trial, that
 7    affects my client's speedy trial rights.  You know,
 8    he's in pretrial incarceration right now.  That's
 9    going to have to last longer, whereas, we could be
10    ready for 6 and 7, and we've said that in our motion
11    that we will be ready.  I think there is a delay
12    issue.
13           In terms of some of the other evidentiary
14    issues or suppression issues, I'm not sure that's as
15    big of a deal, except perhaps, you know, if somebody
16    in Counts 9 and 10 files a motion to suppress, we
17    have to sort of be prepared, and be here and do that.
18    And that's what we get paid to do.  We don't have a
19    problem.  But I'd just as soon spend that time
20    preparing for Mr. Perez' defense on Counts 6 and 7.
21    And I think the other 6 and 7 defendants feel the
22    same.
23           Whether a phone call, for instance, between
24    Anthony Ray Baca and the Government informant gets
25    suppressed, you know, that might be great in the very
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 821

```
 1   small scheme of things of a joint trial.  But it
 2   probably doesn't affect Counts 6 and 7 very much.
 3            So what I would encourage the Court to do,
 4   at least in thinking about severance is there is some
 5   other severance motions that have been filed with
 6   respect to the counts.  Defendant Troup and Garcia's
 7   motion to sever Counts 1 and 2, which I cite quite a
 8   bit in the reply, talks about some of the Rule 14
 9   issues.
10            The Gallegos defendants filed a motion to
11   sever Counts 4 and 5, and I think that's important
12   because it talks about really the differences in
13   those counts, which I'll get into a little bit more.
14            Defendant Alonso filed a motion to sever
15   just himself.  I think that's probably a premature
16   issue for today's discussion.  And the Government has
17   not had a chance to really respond to those, so I
18   don't expect, necessarily, to get into all of that.
19            You know, the Court's familiar with the
20   Rule 8 standard for joiner.  But I think that the
21   question in a case like this is whether, in light of
22   the factual overlap among the charges, joint
23   proceedings create efficiencies such that joinder is
24   proper.  And when you're dealing with conspiracy or
25   racketeering, what the more recent case law has found
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 822

```
 1   is there must be some relationship between the facts
 2   underlying each offense, such that proof of those
 3   facts is necessary to establish each offense.
 4            Okay.  We have here a -- and they all are
 5   VICAR counts, with the exception of the gun charges,
 6   although they're related, I think, to some VICAR
 7   counts.  The Government says, We need to prove the
 8   SNM enterprise and racketeering for each one of
 9   these, and that's our factual overlap.  But if we
10   think about where does that lead us in terms of how
11   many counts can they add up, how many defendants can
12   they bring in, maybe some of these defendants are
13   going to go away.  But is that the only limiting
14   principle?
15            We allege racketeering, we allege SNM is an
16   enterprise engaged in it.  We get to bring in every
17   violent crime and every defendant we want to.  And if
18   we have to try the case in a football stadium, we
19   will.  But there is no limiting principle under Rule
20   8.  It's just Rule 14.  And I don't think that that's
21   the case.  I think that there has to be this overlap.
22   And there really isn't when you look at the counts.
23            Again, I'll get back to the jury
24   instructions.  But the Ninth Circuit pattern
25   instruction, which I cited to, requires that the
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                         FAX (505) 843-9492
                                                                                1-800-669-9492
                                                                          e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 823

1    Government prove that the enterprise was engaged in

2    racketeering at the time of the violent crime.  Okay,

3    between 2001 and 2014, you've got completely

4    different players, completely different goals,

5    different factions of the SNM.  So you're really not

6    talking about a lot of factual overlap except the

7    historical parts of it.

8           So Count 1 and Count 2 both occurred on

9    March 26, 2001, in Southern New Mexico.  Count 1 is

10   the murder of FC, who was strangled.  The defendants

11   involved are the five I've listed there.  They've all

12   informed me that they are proceeding to trial.

13          And one thing I think that the Court should

14   think about is, you know, these guys, a lot of them

15   were all out of the prison, as argued in Mr. Garcia's

16   motion, by the time Counts 6 and 7 rolled around.

17   The Government's theory -- and here's the defendants

18   in Count 2 -- the Government's theory is that Billy

19   Garcia, who was long out of prison by the time he got

20   arrested on this case, ordered Defendant Lujan to

21   arrange the murders, and the other defendants then

22   helped carry them out on the same date.  Supposedly,

23   they're both SNM hits ordered for cooperation with

24   law enforcement.  So these two victims were members

25   of the SNM who were believed to have cooperated and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 824

 1    so hits were ordered.

 2            This is a completely different faction of

 3    the SNM than Counts 6 and 7.  So the theory is

 4    Defendant Garcia orders these.  And according to

 5    Defendant Garcia's motion to sever, in 2008, six

 6    years before the 2014 murders on 6 and 7, Mr. Garcia

 7    was no longer involved in the SNM.  And a few years

 8    later was then released from prison.  So you're just

 9    talking about members of the same gang from 15 years

10    apart involved in similar type murders.  That's the

11    only factual overlap you have.  You don't have any

12    overlap of defendants.  So there is no overlapping

13    defendants.  And other than the enterprise separated

14    by 13 years, no overlap in facts.

15            Again, let's go back to, you know, the

16    Crips out in Albuquerque selling drugs, committing

17    violent crimes; the feds get them.  How far back do

18    they get to go from the date that the Crips became a

19    gang in Albuquerque?  Do they get to indict everybody

20    just because there was at one point 15 years earlier

21    a Crip enterprise?  I think that Rule 8 has to have

22    some limiting principle in it.

23            Count 3 is a similar type count.  This is a

24    murder of FS at Southern New Mexico.  This is six

25    years later, from 2001, seven years before Counts 6

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 825

```
 1    and 7.  There are currently three defendants that are
 2    proceeding to trial.  And the Government theory is,
 3    again -- a different Garcia; this is defendant Arturo
 4    Garcia -- and Defendant Clark ordered a hit, and the
 5    three others executed the hit.  And again, FS is
 6    supposedly a member of SNM who may have cooperated
 7    with authorities.  There was paperwork sent to
 8    Southern to prove that, and the hit was ordered and
 9    carried out.  No overlapping defendants with Counts 6
10    and 7, and no overlapping facts.  And use the term
11    "overlapping," because if you look at those recent
12    RICO conspiracy cases, that's what the courts are
13    talking about.
14            Before I get to 4 and 5 -- so 1 through 3,
15    I think we have the overlap problem.  If you go over
16    to the Rule 14 analysis, you have a propensity
17    problem; right?  The theory that the Government will
18    put forth is that in Counts 6 and 7 and 1 through 3,
19    there was a member of the SNM who allegedly
20    cooperated with police and was killed for it.  And so
21    you try these cases alongside each other.  Even if
22    the Government is right, and some people take plea
23    deals, or as we know that that may happen, you've got
24    this atmosphere, if you will, of propensity, where,
25    you know, the 2014 guys may have had no idea about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 826

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 827

```
 1    the 2001 case.
 2              THE COURT:  You're using this word
 3    "propensity."  What are you referring to?
 4              MR. VILLA:  Well, I mean the fact that --
 5              THE COURT:  Most of the evidence is going
 6    to be otherwise, I mean, or on other counts?
 7              MR. VILLA:  No, that they're similar.  So
 8    if SNM guys in 2001 killed these two individuals
 9    because they were SNM members who cooperated, that
10    must have been what happened in 2014 --
11              THE COURT:  Okay.
12              MR. VILLA:  -- right?  So you have this
13    propensity problem, that the SNM has a propensity to
14    do that sort of thing.  Now, granted, if they're the
15    same defendants, the same players, the orders came
16    from the same people, the same factions of SNM, I'm
17    not sure we can be complaining about that.
18              But here you have two completely different
19    people.  You know, simplify it a little bit more.
20    Just because a drug dealer, who is a member of the
21    Bloods, kills a rival drug dealer, and 20 years later
22    the same thing happens, doesn't mean we get to try
23    the cases together because they're both Bloods.
24              Now, 4 and 5 are much different.  This is a
25    murder of AB; this occurs in 2012; 4 is the
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 827

1    conspiracy; 5 is the murder.  It's the Gallegos

2    brothers, who have denied membership in the SNM, who

3    are proceeding to trial.  These occurred outside of

4    the prison walls, in Socorro and Valencia Counties,

5    so not inside the prison.  They have a pending motion

6    to sever.  And I think, from what I've gathered the

7    Government's theory is that this victim was a

8    supplier, a drug supplier to the Gallegoses, and

9    maybe a rival of the SNM, and the murder was related

10   to that.  So now you're talking about in terms of no

11   factual overlap and no defendants.  You know, we're

12   not even sure that this is a SNM-related murder.  I

13   mean, the fact that the Gallegoses may or may not

14   have been affiliated with the SNM is just sort of

15   tangential to this murder.  It not like 1 through 3

16   and 6 and 7, where you have, you know, an order from

17   the top to kill somebody who is also a member of the

18   SNM because they're cooperating with law enforcement.

19   This is just a couple of guys from Valencia County,

20   the victim in the Gallegoses, who had some issues

21   with each other, and one of them ended up dead.  The

22   other thing is the nature of the murder.  And this is

23   probably on the Rule 14 side.  But the allegation is

24   that the victim was tortured, shot, doused with

25   gasoline, and lit on fire.  And he's found in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 828

1    bosque in a car.

2          So now you're taking this to a different

3    level.  This isn't a prison gang murder of one of

4    their own for being a snitch, sort of the classic

5    prison gang situation.  This is outside of the prison

6    walls.  This brings a different element to the jury's

7    mind.  And there is also some issues, I think, with

8    is this even an SNM case?  None of the defendants

9    overlap with Counts 6 and 7.  And there is an unclear

10   SNM connection.  This isn't the same modis operandi.

11   And again, different geographical location, outside

12   of the prison walls.  The defenses are much different

13   in a case like this.  You know, the Gallegoses in

14   their motion say they denied SNM membership.  There

15   aren't witnesses.  There isn't forensic evidence

16   tying them to the case.

17          You know, in Counts 6 and 7, the victim is

18   murdered on video.  The individuals who murdered him

19   are the ones who have pled guilty and are cooperating

20   now.  It's the six of us that are allegedly connected

21   or helped conspire that are standing left in this

22   case.

23          So that's 6 and 7, Your Honor.  That's the

24   ones we're asking you to sever:  The murder of JM,

25   March 14, in Southern.  There are six defendants

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 829

 1    proceeding to trial.  Like I said, it's on video.

 2    Armenta and Montoya are the ones seen on video.

 3    They're the ones that have entered guilty pleas.  The

 4    state trial was against Armenta, Rodriguez, and

 5    Martinez.  Martinez has also pled guilty.  And

 6    Rodriguez is the only one left standing.  But again,

 7    this is weeks before trial, it gets dismissed, and

 8    the case is ready to proceed to trial.  The defense

 9    theory in some respects is that the murder was a

10    private beef.  There is information to that effect.

11    And I think that the Government's theory -- which is

12    a lot like 1 through 3 -- is where I get the concerns

13    with the propensity evidence.  You know, being able

14    to show the exact same pattern of evidence from 15

15    years earlier.  You know, if it just been done by the

16    Los Carnales, or some other prison gang, the

17    Government's argument fails.  And so I don't think

18    this tenuous 13-year connection gets it done.

19         So the only defendants that overlap are

20    Defendant Baca; he's charged in Counts 8, 9, and 10.

21    Those are the more prominent, I guess, allegations of

22    hits on the Secretary of Corrections and the head of

23    STIU.  But there aren't any defendants in Counts 6

24    and 7 that are involved in 8, 9, and 10.  If you will

25    look at Baca by himself, it's actually a relatively

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 831

1    weak case compared to what they have in 8, 9, and 10.

2    And I think his attorneys can talk a little bit more

3    about that.  Again, the only overlapping facts are

4    the SNM enterprise.  You know, 8, 9, and 10 are much

5    different in character and nature, just like 4 and 5

6    were.

7           And again, I think that the jury

8    instruction is that we would be asking for, and

9    supported by the law is the enterprise had to exist

10   at the time of the murder.  And I think that, again,

11   we're talking huge time spaces in between.

12          And during the time of Counts 6 and 7, the

13   Count 1 and 2 defendants are not in prison anymore;

14   they're not involved in the SNM anymore.  Many of

15   them are out there living their lives.

16          Count 8 is sort of unique, as it stands on

17   its own, but it's also different.  So it's an assault

18   on JR, who had a falling out with Gerald Archuleta;

19   not necessarily clear what the nature of the falling

20   out was, but because Gerald Archuleta was basically

21   one of the heads of one of the different SNM

22   factions, he has a falling out with this guy; he

23   orders the hit on him in 2003.  An attempt on his

24   life is made; it failed; the green light stays in

25   effect.  And another attempt is made in 2015, also at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 831

```
 1    Southern New Mexico.  None of the defendants overlap,
 2    except for Defendant Baca.  But Defendant Baca is --
 3    he's not in Southern.  He's -- at the particular time
 4    of this incident, I'm not sure where he is.  He may
 5    have been back in Santa Fe North.  But it appears to
 6    be the only connection is Gerald Archuleta saying Mr.
 7    Baca is involved.
 8             And so I think that -- and I'll talk more
 9    about this later, but trying 8 and 9 through 12, you
10    know, Defendant Baca is going to be accused of being
11    leaders of SNM, ordering these hits, trying to set up
12    a conspiracy to kill Mr. Marcantel and Mr.
13    Santistevan.  And if you try those counts alongside 6
14    and 7, where Defendant Baca is also alleged to have
15    ordered the hit of the victim, I think you have a
16    real propensity-type problem.
17             THE COURT:  Is Baca only in 8 through 12?
18             MR. VILLA:  And 6 and 7.
19             THE COURT:  Yeah, 6 through 12?
20             MR. VILLA:  That's right.
21             THE COURT:  He's not in the first five?
22             MR. VILLA:  He's not.  Not involved at all.
23    And neither are any of the other 6 and 7 defendants,
24    nor, for that matter, 13, 14, and 15, which is
25    another Gallegos allegation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 833

```
 1              So 9 and 10 are the two conspiracies we
 2     talked about.  The only difference between 9 and 10
 3     is, for 10, you add Chris Garcia.  Chris Garcia is
 4     the subject of 11 and 12, felon in possession of a
 5     firearm and 924(c).  I think the Government's theory
 6     is that the gun Mr. Garcia had was going to be passed
 7     on to an individual was supposed to execute these
 8     hits on the Secretary and the head of STIU.  So those
 9     four counts are sort of associated in that way.  But,
10     again, Mr. Baca is the only overlapping defendant.
11     And there aren't any overlapping facts except the
12     SNM.
13              Counts 13 through 15, these all are, again,
14     outside the prison, executed primarily by Joe
15     Gallegos; he's Count 13 by himself.  This is the same
16     victim, JG.  It's an assault with a deadly weapon;
17     that's Count 13.  14 and 15 is now a conspiracy to
18     murder JG, and that brings in some of these other
19     defendants, three of whom are going to trial as we
20     sit here today.  And again, it appears that JG and
21     Mr. Gallegos had some personal problems, and this was
22     the result of that, and not necessarily any sort of
23     SNM-ordered hit from the higher-ups or things like
24     that.  The connection with SNM is tenuous.  The
25     Gallegoses have denied membership in the SNM.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 833

```
1            THE COURT:  Let me look at -- go back to

2    that slide.  All right.

3            MR. VILLA:  Clearly, the defendants and

4    their attorneys have a better grasp of the facts than

5    I do, but I think that for purposes of Rule 8, you

6    know, I'd ask the Court to --

7            THE COURT:  You have Counts 14 and 15,

8    you've got four defendants, three defendants to

9    trial.  What do you mean by that?

10           MR. VILLA:  Oh, I'm sorry.  Paul Rivera,

11   who is listed there, has entered a plea.

12           THE COURT:  Okay.

13           MR. VILLA:  So he's not going to go to

14   trial.  Mr. Gallegos, Mr. Gonzales, and Ms.

15   Gutierrez, who are all here, as far as we know are

16   going to trial.

17           And so I think for each of these counts, I

18   pointed that out, because the Government suggests in

19   their response there may only be five people going to

20   trial.  So we don't necessarily have some of the

21   crowded courtroom issues if that actually happens.

22   We've got six right now in Counts 6 and 7 that are

23   all telling me they're going to trial.

24           And, sure, if the Government offers us to

25   plead to spitting on the sidewalk, well, we'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    probably entertain that.  But for a lot of these

2    defendants, some of them have life sentences in state

3    court.  Mr. Perez has a just-shy-of-20-year sentence

4    left to serve in state court.  You know, let's say

5    they offer him some minor amount, in their view, 10

6    years, I mean, it might as well be a life sentence at

7    his age.  And I think that's true for a lot of

8    others.  So when the Court is thinking about who is

9    going to go away, I think you've got to think about

10   that for some of these folks, at least in Counts 6

11   and 7.  Those who have pled guilty are those who are

12   the most culpable.  They're on video doing this or

13   they've admitted to doing it.  They're the hands-on

14   killers.  They're the youngest with the most to

15   live -- the most to lose if they go to trial and are

16   found guilty.  They're not going to get an effective

17   life sentence from a 10-year plea deal.

18          So the severance -- you know, I think the

19   first question you've got to look at are the defenses

20   so antagonistic as to be mutually exclusive.  Maybe

21   this is somewhat of an issue for a later day.  But

22   we'll talk a little bit about that.

23          Is there a serious risk that a joint trial

24   would compromise a specific trial right?  And I think

25   there are, which we'll talk about.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 836

```
 1                 And then your discretion:  Weighing the
 2      prejudice with judicial economy.  So I think that
 3      there is a little bit less discretion when you're
 4      looking at antagonistic defenses and compromising
 5      trial rights, as opposed to the third step, which is
 6      the weighing process.  And I think that there are
 7      some antagonistic defenses.  This is discussed pretty
 8      heavily in Defendant Garcia's motion to sever, which
 9      I cite to in my reply.  But at 9 to 14, he discusses
10      the three different factions of SNM that were run by
11      different individuals, with different goals that were
12      sometimes putting hits on each other.
13                 I mean, this is the enterprise that the
14      Government says they need to prove in each case,
15      when, in fact, it really isn't one enterprise.  It's
16      a division of enterprises.  The Allstars, the
17      Old-Timers, and Rejects.
18                 Then Mr. Baca, according to some of the
19      discovery, returns to New Mexico prisons.  He had
20      been taken out of state.  And two different factions
21      of the SNM start to form; one purportedly run by Mr.
22      Baca, and one by Defendant Archuleta.  This is from,
23      you know, the Government's discovery.  So if this is
24      the evidence they're putting on, I'm not sure they
25      have to put all this on for each and every count.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          Counts 1 and 2 defendants aren't involved

 2   in any of these two sets.  They're splinters in terms

 3   of the Old-Timers.

 4          I think the disparity of evidence creates

 5   antagonistic defenses.  And this is really, again,

 6   touched on by Mr. Garcia in his motion.  There really

 7   isn't much left in Counts 1 and 2, as the Court might

 8   imagine, from a 2001 murder that was never prosecuted

 9   by the state or -- at least the prosecution never --

10          THE COURT:  So when you say "disparity,"

11   you're saying there is not as much evidence on Counts

12   1 and 2, as there is just sheer volume on 6 and 7?

13          MR. VILLA:  Sure, in some respects.  So,

14   you know, 6 and 7 you've got the guy getting murdered

15   on video, right, it's in the pod.  You don't have

16   that on Counts 1 and 2.  In 6 and 7 you've got DNA

17   evidence, you've got statements.  The DNA evidence,

18   from what I understand from Counts 1 and 2 has been

19   so degraded it can't even be tested anymore.  There

20   is a disparity of evidence for Mr. Baca.  And I think

21   this is a mistake here.  I said in Counts 6 and 7

22   versus Counts 6 and 7.  But it's supposed to be

23   versus Counts 9 and 10.  So the evidence against Mr.

24   Baca, in terms of the alleged conspiracy to kill the

25   Secretary of Corrections, is basically all on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 837

1    recording.  And maybe those recordings get suppressed

2    and we have another issue.  But if those come in,

3    that's completely different.

4            When you look at the remaining defendants

5    of Counts 6 and 7, the evidence is relatively weak.

6    So if the jury hears, for Mr. Baca, all these

7    recordings of him talking about supposedly wanting to

8    kill the Secretary of Corrections, that may be enough

9    for them to convict him on 6 and 7.  And you have the

10   spillover effect onto the rest of the defendants.

11           I think there is a risk of compromising

12   trial rights.  I agree that it's certainly more

13   prominent the more people we have.  But then the

14   question, I guess, gets back to where you started

15   this hearing is:  What point do we say, oops, there

16   is too many defendants, we can't do this?  We don't

17   have a courtroom big enough.  How are we going to

18   select a jury?  Where does the jury go right now?  I

19   guess, you can clear out half the room.  You know,

20   think about a bench conference; I mean, 20 lawyers,

21   right; that's 10 defendants potentially.  Where do

22   they all stand for the bench conference?  Do we have

23   to clear the jury out so that they can all hear the

24   bench conferences?  Can everybody see the TV screens.

25   Can each defendant -- get them up here, you know,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 838

```
1    they have a right to a public trial.  That could be
2    an issue depending on where they're sitting.  Are
3    they in the courtroom?  Can their families sit in the
4    courtroom?  Is the overflow courtroom going to be big
5    enough through closed caption?  You know, I talked
6    about the right to be present, especially, I think,
7    the voir dire becomes a problem.  Maybe we can use
8    the high school gym or something like that.  But then
9    that really turns you to due process, okay.  So you
10   have 10, 15 defendants going to trial.  You know,
11   there is more than that now, but let's be fair.
12           So that creates this sort of spectacle,
13   right?  These individuals -- there are security
14   measures.  There is going to be marshals in the room.
15   And the jury is going to see all that.  And just that
16   alone creates this atmosphere, I think, of
17   criminality that you don't get when you have -- even
18   if it's just the six of us in 6 and 7 -- you know,
19   reduce that many U.S. Marshals; reduce the ability --
20   if they need to be shackled -- which is an issue I
21   think we'll have to take up at a later date -- the
22   jury can't see that, so they've got to be seated in
23   such a way that they can't see that.  With six that's
24   doable.  With 15, 20, I don't know.  And then at what
25   point do we pull the plug, you know, as time goes by?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 839

```
 1              Each defendant that, perhaps, takes a plea
 2    may reduce some of the risk of the three that I have
 3    at the bottom.  But the top, the confrontation issue,
 4    at least with respect to Bruton, is going to be an
 5    issue.  I mean there are -- I haven't made an attempt
 6    to count -- maybe I should have -- but hundreds of
 7    statements made after the fact, whether it's to
 8    police, to government, and informants in the prison,
 9    that sort of thing that are going to be introduced as
10    to one defendant, that aren't admissible as to the
11    other, that defendant is sitting in the chair.  We
12    don't have the right to cross-examine that defendant
13    unless he testifies.
14              So, I mean, you can imagine a situation
15    where you're reading limiting instructions, just over
16    and over and over all day long.  I don't think the
17    attorneys in the room could compartmentalize that,
18    much less a lay jury that doesn't do this stuff day
19    in and day out.
20              This one takes a while.  So the prejudice
21    versus judicial economy:  I don't think that that's
22    even an issue in this case when you get to judicial
23    economy.  We talked about the atmosphere, propensity,
24    and the spillover effect, limiting instructions will
25    become ineffective.  The jury is not able to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 840

1    compartmentalize the evidence into each of these

2    different counts.  There really is the risk of

3    inconsistent verdicts.  That's one of the issues in

4    the balancing, you know, the scandal of inconsistent

5    verdicts.  I mean, the only thing that could happen

6    is the jury doesn't find that there is a racketeering

7    enterprise in 2014, but there was one in 2001.  Well,

8    that can still happen in a joint trial.  But, you

9    know, they're not going to say the Count 6 and 7

10   defendants are not guilty of killing Mr. Molina, but

11   the Count 1 and 2 defendants, they're all guilty.

12   That's not an inconsistent verdict at all.  It's

13   completely different murders.

14           The costs:  And I think this is defense

15   costs, Your Honor.  I don't know what the

16   Government's costs would be.  But these numbers come

17   right out of Mr. Garcia's motion to sever.  And there

18   is -- essentially, they did an analysis of five

19   severed trials, as opposed to one.  And the savings

20   is $2 million.  And I think that's easy to think

21   about.

22           So we do a joint trial, and each one of the

23   defendants in each count is still standing.  So maybe

24   it's just three of us left in 6 and 7, but that's six

25   lawyers, or four lawyers, three lawyers,

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492
                                                                                 1-800-669-9492
                                                                    e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 841

```
 1    investigators, and experts.  The lawyers themselves
 2    have to sit through another couple of months of
 3    testimony on all these other cases.  The
 4    investigators probably have to be around.  The
 5    experts, it's harder to figure out when you need them
 6    to come to court, because your estimations of trial
 7    become more difficult.  But this analysis is just
 8    attorney costs, travel expenses, things like that,
 9    just from severing into five trials, as opposed to
10    one joint trial.
11            And so I've talked about this at length,
12    the Government having to present the enterprise
13    racketeering more than once.  They still have to
14    prove the time frames, so they're going to have to do
15    that for each count.  And they've made a choice to do
16    that by filing a separate indictment in 4269 against
17    two of Counts 6 and 7 defendants.  They didn't join
18    that into this.  And I don't know the reason why.
19    They can indict the cases however they want.  But
20    they don't seem to think it would be a problem to
21    present the enterprise evidence in 4269 and 1613, and
22    at least one more time in this case.  Otherwise, they
23    could have just indicted them all together by their
24    Rule 8 rationale.
25            And then the specific prejudice as to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 842

1    Counts 6 and 7.  We talked about Counts 1 and 3, how
2    they're very similar in nature.  The victims are SNM
3    members.  They allegedly cooperated, an order came
4    down to hit them, and they were supposedly hit
5    because of that order.  That's very similar to 6 and
6    7, but completely different players.  You try those
7    with 6 and 7, I think you have a real prejudice
8    problem that you can't fix.

9            Counts 4, 5, 8, 13, and 15 are all really
10   outside the prison, okay.  So that's not the
11   Marcantel case, but the others where the at least
12   alleged murders or assaults occurred outside the
13   prison.  And I think that really changes things for
14   the jury.

15           Counts 4 and 5 is especially brutal.  And
16   we talked about that spillover effect.  The Count 8
17   is the 12-year green light.  And the Government, I
18   think at the last hearing we heard some of that,
19   claimed there was this long-standing green light on
20   Molina that wasn't carried out.  And Defendant Baca
21   ordered that it be carried out because he'd gotten
22   some new information.  That sounds a lot like what
23   happened in Count 8.  But Count 8 is done by Gerald
24   Archuleta, who, depending on which discovery report
25   you read, is at odds with Defendant Baca.  And the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 843

```
 1    Government wants to say these are all the same
 2    enterprise, so we should only have to present this
 3    one time.
 4           Then last, 9 and 12, the real high profile
 5    conspiracies, I think anybody who has to be tried
 6    alongside those folks, you know, are just going to
 7    experience prejudice.
 8           Now, timeframe-wise, it's close in time to
 9    what happened with Counts 6 and 7.  But if you think
10    about Counts 1 and 2 guys, and 3, who aren't even in
11    prison, why do they have to be tried alongside these
12    others in this extremely high profile -- you're
13    trying to kill a cabinet member?
14           And we talked about the evidence against
15    Baca in those counts, as opposed to Counts 6 and 7.
16           So, Your Honor, that's all I have.  I know
17    that some of the other attorneys want to be heard.
18    Unless you have any other questions, I'll leave the
19    podium.
20           THE COURT:  I appreciate your presentation.
21    Thank you, Mr. Villa.
22           All right.  Who else?  Let's take the
23    people that joined the motion first.  Anybody else
24    want to speak on this, that represents any of the
25    other people that moved?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 844

1            MR. POTOLSKY:  Your Honor, Steve Potolsky

2    on behalf of Mario Rodriguez.  It was my intention,

3    Your Honor, to leave this argument in the very

4    capable hands of my colleague.  Then I heard the

5    Court ask Mr. Villa, "Help me be a fairer judge

6    here."  And whenever I get an invitation like that,

7    I'm halfway out of my seat.  So I just wanted to give

8    just a few supplemental words on that issue.

9            I'd like to call the Court's attention

10   first to something in the Government's response to

11   the severance motion.  And it's on page 13.  It says,

12   "Prejudice always exists when more than one defendant

13   or offense are tried together."  That's in the

14   Government's pleading, and the Government readily

15   concedes that.  That is a powerful statement.  I

16   think everyone in this courtroom -- I hope the Court

17   included -- acknowledges that if these guys are tried

18   together, there is going to be prejudice.  That's

19   inevitable.  The Court can give all the curative

20   instructions, make all the evidentiary rulings, do

21   everything within its power.  There is going to be

22   prejudice.  Our law says that that prejudice is

23   acceptable when the two traditional justifications

24   for joint trials exist:  Preventing the scandal and

25   inequity of inconsistent verdicts, and judicial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 845

1    efficiency.  I believe Mr. Villa has already touched

2    on the inconsistent verdicts scandal and inequity

3    issue.  The Count 6 and 7 defendants are asking to be

4    tried together.  As a matter of law, by definition,

5    there can be no scandal and inequity of inconsistent

6    verdicts on Counts 6 and 7 by virtue of a severance,

7    if they're all tried together.

8            So that turns us to the one possible thing

9    that could justify the inevitable admitted prejudice

10   of a joint trial:  Judicial efficiency.  In our

11   motion to join the severance motion -- this is Docket

12   845, Your Honor -- we tried to set forth for the

13   Court's benefit a number of district court cases

14   analyzing this exact issue.  Yes, there is a judicial

15   preference for joint trials.  But I submit to the

16   Court, based on all the cases that we set out in our

17   pleading and the supplemental pleadings filed by

18   other counsel, that that judicial preference ceases

19   to exist when you're talking about mega trials of

20   this nature.  When you get to a certain point -- I

21   believe in the Second Circuit the presumptive number

22   of defendants is 10.  But that's just a presumption.

23   But when you're talking about -- if we look around

24   this courtroom -- and I've been doing this more years

25   than I care to admit, and I'm sure everyone else in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    the courtroom as well -- and we've got defendants
 2    who, through no fault of their own, other than
 3    they're joined in a mega trial, have to turn their
 4    back to the Court.  That's not a good thing.  When
 5    we've got defendants in the jury box, in the second
 6    row of the spectators' area, and we are thinking
 7    about not giving them a fair trial, but how do we
 8    pack them all into a courtroom so that their public
 9    trial rights are realized, that is a problem.  If it
10    saves time and prevents scandal inequity, the law
11    says that's okay.  But if it doesn't, Judge, I submit
12    it's not okay.  And scandal inequity, I think we're
13    past.
14           If the Court has any questions at all on
15    that prong of it, I'd be glad to address it, but I
16    think our focus here is on judicial efficiency,
17    saving time, and does it really save time?  And all
18    of the courts that we've cited in Docket 845 have
19    directly confronted the issue and said, You know
20    what, it doesn't.
21           And the last thing that I'd like to say, to
22    address a couple questions the Court had about
23    predicate acts, and wouldn't it really be the same
24    evidence, and wouldn't it really be the same number
25    of witnesses and quantum of proof, and all that.  I
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                   1-800-669-9492
                                                          e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 847

1    submit to the Court, being a fair Court, that it

2    would not.  And I'd like the Court to think about

3    Rule 403.  Even probative evidence is excluded if the

4    prejudice substantially outweighs the probative

5    value.

6            So the Counts 6 and 7 defendants are not

7    even hinted to be involved in any of the other crimes

8    in the indictment.  And some of them are very bad,

9    and some of them are very -- well, the Court knows

10   all the other charges.

11           The quantum of proof that the Court would

12   permit as to all of the uncharged crimes for the

13   Counts 6 and 7 defendants would likely be far less

14   than the Court would permit in a trial of the

15   defendants who are charged with those offenses.  So,

16   for example, another murder that none of the Counts 6

17   and 7 defendants are charged with, in a severed trial

18   of just those defendants, the Court might,

19   hypothetically, permit several hours of testimony

20   about a given murder that they're not charged with,

21   so that the Government can prove that predicate act.

22   Whereas, in a trial of the defendants charged in that

23   murder, the Court might allow two weeks of evidence

24   and testimony about that murder.  So the prejudice to

25   the 6 and 7 defendants would be largely under Rule

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 848

1    403.  How much evidence -- what is the point where it

2    becomes more prejudicial than probative for

3    defendants who are not even hinted to be involved in

4    those crimes?

5         And unless the Court has any questions

6    about what I've said, I think we've laid out our

7    position why judicial economy and efficiency does not

8    require a joint trial here.  And I'll sit down.

9         THE COURT:  All right.  Thank you, Mr.

10   Potolsky.

11        MR. POTOLSKY:  Sure.

12        THE COURT:  Anyone else that are movants in

13   this that want to speak?

14        MR. CHAMBERS:  Good morning, Your Honor.

15   I'm Nathan Chambers.  I represent Javier Alonso.

16        THE COURT:  Mr. Chambers.

17        MR. CHAMBERS:  Mr. Villa noted that we

18   filed a motion to sever Count 3.  That's Docket 893.

19   And Mr. Villa suggested that it's premature to

20   address that motion, and I agree with him.  What is

21   not premature, though, is for us to address Mr.

22   Alonso's relation to Counts 6 and 7.  And for that

23   reason we filed Docket 812 joining Mr. Villa's

24   motion.  I don't want to repeat too much of what Mr.

25   Villa said, but there is a couple of things I need to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 849

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 850

1    say just to put my point in context.

2           Count 3 is alleged to have occurred on June

3    17, 2007.  Counts 6 and 7 are in March of 2014,

4    almost seven years later.  There is no overlap of

5    defendants.  And Mr. Villa talked about how some of

6    the people who were charged, for instance, in Counts,

7    1, 2, and 3, were no longer even in custody at the

8    time.  They were on the street, and therefore, no

9    longer involved with SNM.  That raises questions

10   about whether or not there was a withdrawal from the

11   enterprise or not.  But Mr. Alonso is in a far

12   stronger position than those people who were just on

13   the street.

14          The essence of a conspiracy is that there

15   has been a meeting of the minds for some criminal

16   purpose.  And when that exists, a defendant is

17   responsible for the acts of co-conspirators, if

18   they're committed within the scope of the criminal

19   enterprise, the criminal scheme.  But if a defendant

20   withdraws, he's no longer liable, his liability is

21   terminated.  And withdrawal requires some affirmative

22   action.  So there is a question about whether or not,

23   if somebody is no longer in custody, is on the

24   street, living their life, getting up and packing

25   their lunch box every day and going to work, have

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492
                                                           e-mail: info@litsupport.com



DNM 850

1    they withdrawn?  But Mr. Alonso affirmatively

2    withdrew before Counts 6 and 7, before Counts 4, 5,

3    before every single count after Count 3.  Mr. Alonso

4    affirmatively renounced and withdrew from SNM.  It's

5    in the discovery.  He wrote a letter to the

6    Government saying, "I'm out."  So it's -- for him to

7    be tried in Counts 6 and 7, which occurred after his

8    withdrawal, is fundamentally unfair.  And we put this

9    in our joinder to 807, I believe -- it's 812.  So I'm

10   just repeating what I wrote to you.  Thank you.

11         THE COURT:  Thank you, Mr. Chambers.

12         All right.  I'll hear your argument, but I

13   think I better let everybody have a break here,

14   particularly Ms. Bean.  We've got to let her rest her

15   fingers.  So why don't we take about a 15-minute

16   break, try to get together about 11:05, and then

17   we'll go about another hour and a half.

18         (The Court stood in recess.)

19         THE COURT:  All right.  Mr. Castle, were

20   you going to argue on this?  Who was back here?  All

21   right.

22         MR. CASTLE:  Your Honor, the Count 1 and 2

23   defendants took a different position.  We,

24   essentially, did not object to the motion filed on

25   Counts 6 and 7.  That was Document 807.  But,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 851

1    obviously, some of the issues that this Court is

2    hearing about are going to be overlapping when the

3    Court resolves the Count 1 and 2 severance motion.

4    So I wanted to just touch on a couple of things that

5    I think might be relevant to the Court's

6    consideration.  When the Court began the discussion

7    of this joinder issue, the Court posited the question

8    about:  Is this premature?  Are we going to wait and

9    see how this settles out before we decide severance?

10   And I understand the Court's concern, but I think

11   it's based upon -- in large respect, based upon the

12   Government's representation that only about five of

13   us are going to be left.  And I don't think that is

14   realistic whatsoever, and I can tell the Court why.

15          The defense lawyers have talked amongst

16   each other.  We have a number of the defendants.  For

17   example, in Counts 6 and 7, three men are doing life

18   in prison.  And life in prison in the federal system

19   is going to be significantly different for these men

20   than life in prison in New Mexico.  Because last time

21   the Government prosecuted convicted New Mexico gang

22   members, they spread them around the country, and

23   they were subject of extreme abuse by federal inmates

24   from the White Supremacy groups, other prison gangs

25   that are established in the federal system.  So the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 852

```
 1    likelihood that these defendants are going to just
 2    take a plea is not realistic, because for them, the
 3    quality of life will be completely different.  And I
 4    don't expect that that would be different in kind in
 5    this particular situation, when one of the
 6    accusations is that there was a conspiracy to kill a
 7    cabinet member.  I think they will go to the most
 8    horrible prisons that the federal system has to
 9    offer.  And those are considerations the Government
10    might not know about.  But that's considerations that
11    we, as defense lawyers, advise our clients about.
12            There are other defendants like my client,
13    61 years old.  There is other clients that are in
14    such poor health they're in wheelchairs.  I think,
15    frankly, the defense attorneys have a better idea of
16    whether their clients want to take deals than the
17    prosecution does.
18            Now, from our count there is at least 15
19    defendants who never sought a plea bargain in this
20    case, nor have been approached about a plea bargain
21    in this case.  And I don't think those 15 are going
22    anywhere, unless the deal of the century comes
23    through.  But I've reviewed the deals that have been
24    given to the cooperators so far, and I think there
25    has been one deal of the century to Gerald Archuleta
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 853

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 854

 1   for three years.  But the rest of them are not.

 2           So I would note that the nine defendants

 3   who have already pled were known cooperators from the

 4   beginning of this case.  They'd already made

 5   statements to the authorities.  The vast majority of

 6   these defendants have not done that.  So I think this

 7   concept that there will only be five left standing

 8   isn't realistic.  We've been on this case for over a

 9   year.  We're now four months before trial.  None of

10   these -- well, very few of these defendants, if

11   any -- I think one or two probably have gotten

12   offers -- I don't think it's realistic to think that

13   all but five are going to take pleas in this case, or

14   have their cases dismissed.

15           With regard to the Count 1 and 2

16   defendants, frankly, Your Honor, we didn't file a

17   motion to continue the trial at this point, but it's

18   going to happen, and I'll tell you why.  We have one

19   defendant who is still going through competency

20   proceedings, so his lawyer has been hamstrung in many

21   respects in doing any litigation in this case.  And

22   once -- assuming he gets held to be competent, that's

23   going to begin all anew for him.  We have another

24   defendant who is at large, who this whole case is

25   named after, is at large.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 854

```
 1              We have -- last week, we did a site view.
 2    And while we were at the site view, we found audio
 3    and videotape that hasn't been disclosed in this
 4    case.  And so we requested that the state authorities
 5    make copies for the defense counsel, because the
 6    Government in this case hasn't provided that.
 7              There is a large amount of litigation that
 8    we're going to be involved in, especially with
 9    regards to delay in indictment.  I think the Court
10    heard a little earlier that the DNA was degraded so
11    bad that the FBI tried to retest it in 2014, and
12    could not come up with any results.
13              We're in a different situation in Counts 6
14    and 7.  We're going to need more time.  We didn't
15    have the advantage of -- I guess advantage -- of
16    being prosecuted in state court, and having some
17    attorneys working on the case.  We just don't have
18    that situation.  And we're doing a case that is 15
19    years old.
20              Now, I could tell the Court that one of the
21    considerations that, I think, that Mr. Villa talked
22    about, which was disparity of the evidence is really
23    clear with regards to Counts 1 and 2.  Count 1 and 2,
24    as opposed to Counts 6 and 7, when -- it was rejected
25    by the state prosecutors.  Counts 6 and 7 the state
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 855

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 856

1   prosecutors thought there was enough evidence to

2   prosecute.  Counts 1 and 2, the state prosecutors, in

3   2001, when the evidence was fresh, rejected filing of

4   charges.  The federal government then started their

5   review.  And I know in the beginning of this case it

6   may have been indicated that the investigation

7   started in 2015.  What we've now found out is the

8   federal government was involved in investigating in

9   2001.  They did it again in 2003.  They did it again

10  in 2007, 2013, 2014.  In each instance they rejected

11  filing any charges on Counts 1 and 2.  What changed?

12  What changed was the accusations concerning the

13  cabinet member, the killing of the cabinet member.

14  That's what changed.  And that didn't change for any

15  of the Count 1 and 2 defendants who didn't have

16  anything to do with any of that.

17          The vast majority of them -- I think all

18  but Mr. Lujan and Mr. Chavez -- were living

19  law-abiding lives in the community.  And so I think

20  that evidence is indicative that there is a weakness

21  in the prosecution of the 2001 case.  And one of our

22  greatest fears is that's going to be overcome because

23  they're lumped in with these other defendants.

24          So these are just some considerations.  I'm

25  not arguing the whole motion to sever.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            I would tell the Court that we took the

 2    financial numbers that we've included in our motion,

 3    and we did send it over to the budget attorney for

 4    the Court to review to see if we made some kind of

 5    errors in our calculations.  And she indicated on her

 6    review, brief review, that it looked pretty much

 7    accurate about the cost differential.  Now, I would

 8    be less than honest to tell you that that's our

 9    consideration.  Our consideration is the

10    representation of our client, and our goal is to

11    provide the best representation possible.  But I do

12    believe that's a consideration for the Court to take

13    into account.  And those numbers get multiplied.  The

14    resources that the Marshal, US Marshal, has to expend

15    in a large trial is enormous.

16            Circling back for just a minute to this

17    idea of whether it's premature.  The defense

18    attorneys believe there is -- we haven't really

19    scratched the surface on the litigation, the motions

20    we'll be filing.  Because if the Court notices, most

21    of the motions that have been filed so far have all

22    been discovery related, you know, disclosure of a

23    confidential informant, discovery of materials, et

24    cetera.  The next set are going to be -- it's going

25    to be a lot more intensive.  Now, the Court set a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   motions deadline for April 7, I believe.  Motions to

2   sever probably weren't even due until then.  But we

3   all put this out front for Your Honor, because,

4   frankly, the Counts 6 and 7 litigation alone will be

5   quite extensive.  And if the Court severs, for

6   example, 6 and 7 from the remaining counts, and says,

7   we're going to do that, and maybe we'll settle --

8   figure out the rest of them later, we'll see how

9   things settle out, then the Court could focus its

10  time in litigating Counts 6 and 7 defendants' issues,

11  excuse the rest of us from that litigation, and be

12  able to concentrate on that.  And in some respects, I

13  think we're kind of doing that with some of the

14  confidential informants that are being dealt with

15  tomorrow.

16         I have to say that, you know, at the

17  core -- you know, I'd like to understand who the

18  Government thinks the five remaining defendants are

19  going to be.  Because, you know, the rest of us could

20  probably dial down a bit if our clients are not going

21  to be one of the five.  But I just don't think that's

22  realistic, Your Honor, given the characteristics of

23  these defendants, the nature of the offers that have

24  been made in the past, and what's likely to be any

25  offer in the future.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 858

1          You know, if the Court is considering

2     putting this off for a while to decide the issue of

3     severance, you know, I think it would be good to tell

4     the Government and the defense when that will be

5     reconsidered, so that there be a time period where

6     the Government could actually make their efforts,

7     that haven't been successful over the last year, and

8     see if the settling out that they're talking about

9     actually occurs.

10         There is a couple more comments that our

11    team wants to make that, I think, Mr. Cooper would

12    like to address the Court on.  And if the Court would

13    indulge us, we don't like to try to split up our

14    argument, but I think he has some points that might

15    resonate with the Court.

16         THE COURT:  All right.  Thank you, Mr.

17    Castle.

18         Mr. Cooper, as you're coming up, I want to

19    ask Mr. Potolsky, following up a little bit:  You

20    said something about the Second Circuit that was sort

21    of a rule that 10 sort of exceeded what they would

22    tolerate as far as a joint trial.  Is there any case

23    law that says that?  Is there any article that says

24    that?  What do you have that says that that's kind of

25    a working rule in the Second Circuit?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. POTOLSKY:  Some of the cases that we

2     looked at, Judge -- and I think, if I didn't say it

3     this way -- I believe I did, though -- there is a

4     presumptive number of defendants, which I believe is

5     10.  So, you know, there is not a black line there

6     must be severance into smaller groupings with 10 or

7     more.  But there was that presumption.

8          We will be here tomorrow, and with the

9     Court's permission, I'll bring what I put together.

10          THE COURT:  All right.  Thank you.

11          Mr. Cooper.

12          MR. COOPER:  Thank you, Your Honor.

13          THE COURT:  Mr. Cooper.

14          MR. COOPER:  Judge, attached to Mr. Villa's

15     motion to sever was a chart that contained seven

16     separate groups of trials.  I prepared that chart

17     early on when I was thinking about how this thing

18     ought to be split up, how we ought to try these

19     cases.  And when I did it, I thought of these cases

20     as separate matters that ideally should be tried by

21     themselves.  I represent one of the defendants in

22     Count 1 and 2, Billy Garcia.  Billy Garcia is 61

23     years of age.  Billy Garcia was out of custody at the

24     time, in 2015, agents went to his house and arrested

25     him.  Billy Garcia will never take a deal.  Billy

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 860

```
 1    Garcia is never going to enter a plea in this case.

 2    He's 61 years old.  He is alleged to be the shot

 3    caller with regard to Counts 1 and 2.  The Government

 4    won't give him a 10-year deal.  We haven't had any

 5    discussions whatsoever.  But just knowing the offers

 6    that are going to come out of the Government's

 7    office, there won't even be a 10-year deal.  And for

 8    a 61-year-old man -- I'm 63, Judge -- for a

 9    61-year-old man living in prison, he is not going to

10    take a 10-year deal, because that is essentially a

11    life sentence.  And when the Government says that

12    there are, at the end of the day, only going to be

13    five defendants, I don't see that.  I just absolutely

14    don't see that.  I've had --

15            THE COURT:  Refresh my memory where that

16    statement of five defendants came from.

17            MR. COOPER:  The Government's pleadings, I

18    believe, Your Honor, have talked about that.  I

19    believe there has been a statement in open court that

20    that is likely what is going to happen.

21            But, Judge, I've had a lot of discussions

22    with everybody, with all of the lawyers in this room

23    about who their clients are.  I know some of the

24    clients.  I've been involved in cases with a couple

25    of these individual defendants before, Judge.  And I
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 861

```
 1   just know the type of people they are.  I know what
 2   they believe.  And I know the efforts that their
 3   lawyers are putting into these cases.  And I think
 4   right now there are 20 people in this room, 20
 5   defendants.  There is another individual who is a
 6   fugitive.  So there are nine -- out of these 30
 7   individuals who have been indicted, nine have pled.
 8   Those nine mostly are the guys that did the deeds.
 9   But those nine, I think, are the extent of the people
10   who are going to cooperate.  There may be somebody
11   else in the room -- I can think of an individual who
12   has only three years of exposure -- he's probably
13   going to plead straight up at some point in time.
14   Okay, get rid of him.  But at the end of the day, the
15   20 that are in the room, I think, are only going to
16   go to maybe 17, 15.  But I think at the end of the
17   day we're going to have 15 defendants in this trial.
18              And, Judge, for lawyers to get ready
19   between now and July for a trial where 15 of us are
20   going to be in trial, I think is going to be a
21   Herculean effort on our part, the Court's part, to
22   get ready for that trial.  I don't think it can be
23   done.
24              I'm a sole practitioner.  I take other
25   cases.  I think, in order to get ready for a trial in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 862

1    July, in a case where my client is alleged to have

2    committed the murder, or been part of the conspiracy

3    to commit this murder in March of 2001, we just have

4    so much work to do between now and then.

5              I think, at some point in time, we need to

6    prioritize what motions will be heard, what motions

7    will be filed, and the order of hearing those

8    motions.

9              We have identified 334 confidential

10   informants, Your Honor.  And we continue to try to

11   determine whether or not we are going to seek the

12   disclosure of their identity.  That effort, just in

13   itself, is going to take just a huge amount of time.

14   We haven't gotten into any other substantive motions

15   that need to be filed.  I just think it's -- I think

16   that it makes more sense to divide things up.  And

17   it's not going to be seven.  I don't think that is

18   the number.  But I think it ought to be three or

19   four, probably.  And I have my thoughts on how that

20   should happen.

21             But I think that after some of these

22   defendants see what happens in Counts 6 and 7 -- 6

23   and 7 is ready.  We are not ready.  We're still

24   trying to identify and locate witnesses that were

25   around in 2001, that heard parts of conversations



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 863

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 864

```
 1   with regard to our two counts.  And we're having a
 2   difficult time doing that.  Your Honor, some of the
 3   evidence, we think, no longer exists.  Some of these
 4   individuals who are witnesses no longer exist.  I
 5   suspect you're going to see a preindictment delay
 6   motion coming from us.  There is just a tremendous
 7   amount of work.
 8             In 2013, an FBI agent wrote a report
 9   stating that these are the crimes committed by SNM.
10   Counts 1 and 2 were not part of that report.  They
11   did not name the murders of FC and RG.
12             Judge, there is a lot of work to be done.
13   I think that -- between now and July, if we are still
14   in this case, I think that each one of these lawyers
15   in this room are going to have to continue a lot of
16   other trials, a lot of other settings in their other
17   cases, just to get ready for this case.  I signed on
18   to represent Mr. Garcia.  I'm a big boy, I can do it.
19   But I think it's going to create havoc on other
20   judges' calendars, when we have this mega trial with
21   15 or 20 individuals, Your Honor.
22             But I think there ought to be a severance
23   of Counts 6 and 7.  I think Counts 1 and 2 ought to
24   be severed.  I think the Marcantel counts ought to be
25   severed.  I think a couple of the other cases ought
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 864

```
 1    to be severed.  And I understand that's the best case

 2    scenario.  But, Judge, I think it's best if we make

 3    that decision, at least on 6 and 7, earlier than

 4    later.  Because I don't think that in a month or two

 5    months or three months you're going to see any

 6    significant reduction in the number of people that

 7    are sitting in this room.  I don't see it even if we

 8    had a year from now.  I think the guys that are

 9    sitting here are solid, and they're going to trial.

10            Thank you, Judge.

11            THE COURT:  Thank you, Mr. Cooper.

12            Anyone else that joined the motion, or if

13    you weren't part of movants?

14            MS. JOHNSON:  Your Honor, I did not join

15    the motion, but I do have my own motion, which has

16    not been briefed completely.

17            But I wanted to address something the Court

18    asked Mr. Villa with regard to the predicate acts.  I

19    just wanted to clarify that under 18 USC 1959, the

20    Government is not required to prove the predicate

21    acts.  This is VICAR, Violent Crimes in Aid of

22    Racketeering.  And what the Government has to prove

23    is that there is a criminal organization; that the

24    organization is a racketeering enterprise at the time

25    of the offense.  And this is where I think they're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 865

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 866

```
1    going to have a problem.  And this is where the

2    problem with the prejudice and the admission of other

3    offenses that are prejudicial to one particular

4    defendant becomes a problem for the Court and for the

5    defendants.

6             They also have to prove that, obviously,

7    the defendant committed a violent crime, and that the

8    defendant acted for the purpose of promoting his

9    position in a racketeering enterprise.

10            With regard to my client, in Counts 14 and

11   15, which, obviously, the Court is not taking up

12   today, the Government is going to have a problem.

13   Because when the allegations in Counts 14 and 15

14   occurred, the racketeering enterprise had been

15   essentially dismantled with the indictments in 2015.

16   So there is a problem.

17            The second problem, Your Honor, is that in

18   my client's particular case, he's not an SNM member.

19   There is no evidence he's an SNM member.  There is no

20   evidence he's even an associate.  So if there is a

21   case ripe for severance, and for actually

22   entertaining severance, it would be this particular

23   case, Your Honor.  So the evidence with regard to --

24            THE COURT:  14, 15?

25            MS. JOHNSON:  14, 15.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 866

```
 1                 THE COURT:  When you say this case --
 2                 MS. JOHNSON:  Well, this particular case,
 3       4268.
 4                 THE COURT:  The whole thing?
 5                 MS. JOHNSON:  Yes, Your Honor.
 6                 Because what you have here is the
 7       Government is essentially trying to bootstrap
 8       unrelated acts of violence under the umbrella of
 9       Violent Crimes in Aid of Racketeering.
10                 So when the Court asked Mr. Villa how
11       can -- help me be a more fair, or a fairer judge,
12       well, looking at these particularly closely, Your
13       Honor, is really important.  Because, when the
14       Government doesn't have to prove predicate acts, all
15       they have to prove is the existence of an enterprise,
16       well --
17                 THE COURT:  How different is that from
18       proving predicate acts?
19                 MS. JOHNSON:  Well, Your Honor, just as, I
20       think as Mr. Potolsky --
21                 THE COURT:  How do you prove racketeering
22       enterprise without something that looks a whole lot
23       like proving predicate acts?
24                 MS. JOHNSON:  Well, you have to prove the
25       existence of the enterprise, you're right.  And you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 867

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 868

1   have to prove -- I guess in a way, they do have to

2   present evidence of these particular offenses.  But

3   what may be admissible as -- I don't want to call

4   them predicate acts -- but what may be admissible as

5   to one defendant may not be admissible under Rule 403

6   as to another defendant.  And this is where you get

7   into the danger, particularly as to Counts 6 and 7

8   that Mr. Villa argued, an offense that occurred in

9   2014, what may be admissible as to 6 and 7 for

10  demonstrating the existence of this racketeering

11  enterprise.  Because the racketeering enterprise must

12  be in place at the time the offense is committed.  So

13  the evidence in 2014 may be different than the

14  evidence in 2001.  So you have a problem here,

15  particularly in this entire case, in 15-CR 4268, that

16  the Government is going to encounter.

17          With regard to my client, I intend to

18  present some testimony.  Now, granted, the Court's

19  limited to the four corners of the indictment when

20  ruling on the severance motions.  But as to my

21  client's motion for severance, it's going to be

22  important for the Court to hear some limited

23  testimony.  Because you have not only an issue of

24  jurisdiction, but also, Your Honor, whether or not a

25  racketeering enterprise existed at the time the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 868

```
 1    offense was committed.
 2             So I think one of the overarching concerns
 3    here is Rule 403, what evidence is admitted in order
 4    to establish a racketeering organization as to
 5    counts, for example, 6 and 7, versus Counts 1, 2, and
 6    3.
 7             That's all I wanted to say, Your Honor.
 8             THE COURT:  All right.  Thank you, Ms.
 9    Johnson.
10             Ms. Jacks, were you going to --
11             MS. JACKS:  I was, but Ms. Johnson just
12    made the point I was going to make.
13             THE COURT:  Made your point.  All right.
14             Do you want me to get on the record Mr.
15    Acton was here?  Is that what you want?  No?
16             Other defendants want to speak on this
17    motion?
18             MR. SPENCER:  If I may.
19             THE COURT:  All right.
20             MR. SPENCER:  Thank you, Your Honor.
21             My name is Joe Spencer.  I represent
22    Mauricio Varela.  Your Honor, I will be brief and I'm
23    not going to be repetitive.
24             Mr. Varela is only on Counts 6 and 7.  And
25    allegedly, the Government is claiming that Mr. Varela
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 869

1   is a person that brought the execution warrant down,

2   the actual paperwork.  But it's somewhat ironic that

3   the last two individuals that pled just a few weeks

4   ago, Mr. Montoya and Mr. Martinez, the factual basis

5   adopted by the Government indicates that the murder

6   had been out there for quite some time, maybe over a

7   year.  And specifically, Mr. Montoya -- the paperwork

8   supporting murder was passed to Carlos Herrera; from

9   Carlos Herrera to Mario Rodriguez and Daniel Sanchez.

10  Don't even mention Mr. Varela at all.  It's a little

11  disingenuous of the Government in what they bring as

12  a factual basis that they've adopted to indicate what

13  they believe is the basis of this execution warrant,

14  as I call it, and yet, what they have charged

15  Mr. Varela in.  It just doesn't jive.

16          Your Honor, I will say that counsel --

17  there is probably over 500 years of experience of

18  legal counsel on defense side.  One of the attorneys

19  talked about the Herculean act of the Court.  The

20  Court's reputation is well known throughout land, the

21  lawyers' as well.  And we will burn the midnight oil,

22  and we will take on the Herculean task.  We signed up

23  for it.  My concern is not about the Herculean act

24  that's going to be required, with all due respect, by

25  the Court or by the lawyers, but the 12 people that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 870

```
 1    are going to sit in the jury box that didn't sign up
 2    for this.  I will tell you that's going to be a
 3    tremendous Herculean act; that they're going to have
 4    to put everything aside.  I will tell you that the
 5    lawyers have done charts and graphs just to try to
 6    compartmentalize and put everything in our own head,
 7    and try to figure out where everything is.  And we
 8    make mistakes all the time.  No, no, no, that's
 9    wrong.  That goes here.  That category is wrong.  And
10    we're intimately aware of it.
11            My concern is if this case is not severed,
12    it will actually be a prejudicial effect on
13    Mr. Varela, because it's going to be -- many of these
14    defendants with one broad brush is going to be
15    painted -- much easier to have a guilty verdict.
16    That's really what the bottom line here is, Your
17    Honor.
18            So on behalf of Mr. Varela, we are adopting
19    all of the statements that were made by co-counsel,
20    as well as any other defense counsel that may speak
21    after me.  Thank you.
22            THE COURT:  All right.  Thank you, Mr.
23    Spencer.
24            Anyone else?  Any other defendants want to
25    speak on the motion to sever?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 871

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 872

```
 1              MR. SINDEL:  Your Honor, on behalf of

 2   Andrew and Joseph Gallegos.  And there has been filed

 3   a motion to sever Counts 4 and 5.  That has been

 4   addressed by the other lawyers.  I think that it's

 5   clear that I don't need to repeat what they've said.

 6   And I think the problem that I see with 4 and 5 is it

 7   really isn't connected in any way to this enterprise

 8   of the gang.

 9              The only information I've been able to

10   secure from the Bates material is that there is a

11   phone call that supposedly my client, Mr. Gallegos,

12   makes concerning Adrian Burns, who is the alleged

13   victim in the case, and that there was an order that

14   came down from Gerald Archuleta.  And that's in a

15   phone call.  I can't find that phone call.  I haven't

16   been able to secure it.  Mr. Benjamin has tried to

17   secure it, and has contacted the prosecution in this

18   particular case.  And they haven't been able to give

19   us direction as to where that phone call is.

20              Besides that, I haven't seen anything in

21   the discovery that connects the alleged murder of Mr.

22   Burns to anything to do with the SNM or the other

23   defendants.  Thank you.

24              THE COURT:  Thank you, Mr. Sindel.

25              All right.  Anybody else?  Mr. Blackburn?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 872

```
 1              MR. BLACKBURN:  Your Honor, I represent
 2    Mr. Arturo Garcia.  He is only charged in Count 3.  I
 3    will not belabor some of the other arguments that was
 4    made by Mr. Chambers earlier.
 5              We did file document 812, or we joined in
 6    the Counts 6 and 7 motion, basically, to say that we
 7    joined, and indicate why we did do that.
 8              What I would point out is that, as
 9    Mr. Chambers sort of indicated, this 2007 murder,
10    there are only three left, as it relates to this
11    particular count, three defendants are left.  Two of
12    them have already pled.  Mr. Troup --
13              THE COURT:  On 4?
14              MR. BLACKBURN:  On 3, on Count 3.  This is
15    the 2007 murder.  Two have pled.
16              Mr. Troup is also charged in Count 1; he's
17    in Count 3.  Mr. Alonso is in Count 3.  And my client
18    is in Count 3.  So we're sort of all -- other than
19    Mr. Troup is in Count 1 -- the only two of the
20    remaining defendants are only in Count 3.
21              Mr. Alonso, as Mr. Chambers indicated,
22    renounced.  And the other two, Mr. Troup and
23    Mr. Garcia, were out of custody at the time the
24    Counts 6 and 7 were committed.  So that was basically
25    what we briefed in Document 812.  And I just wanted
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to reiterate that to the Court.  I adopt all the

2    other arguments that other individuals have made

3    today.

4            But I want to again -- we all sort of may

5    be taking too much emphasis, to a certain extent, on

6    one of the Court's first statements about whether or

7    not, basically, it was premature to make this ruling

8    now, or should we wait?  I don't know where the issue

9    came about that there would be five individuals left.

10   I know that in the Government's response, in Document

11   836, they basically said that of the defendants

12   charged in the superseding indictment, as in most

13   cases, only a fraction will proceed to trial.

14           Currently, five defendants have pled guilty

15   in this case.  And that was at the time that they

16   wrote this, in January.  It's changed since then.

17   And it says, "and others will likely follow suit."

18   But the point of their response was -- I don't know

19   if they said five, other than five had already pled

20   guilty, and how we came up with the 20 that are left

21   are going to be down to five.  But I think these are

22   experienced prosecutors in the case.  This case has

23   been pending for quite some time.  A lot of the

24   defendants have not even been approached or even

25   thought about a plea agreement at this time, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 874

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 875

```
 1   we're some four or five months away from trial.  To
 2   see how we get down to a smaller number of
 3   individuals, after what you have heard today, I think
 4   is going to be impossible.
 5           We spent a lot of time on this case.  So,
 6   as the Court well knows, we know where our clients
 7   are coming from.  My client was out on the streets.
 8   He had been out for two years when he was brought in
 9   last year and indicted.  He's 50 years of age, and
10   he's one of the shot callers in this case, allegedly,
11   according to the Government, on Count 3; that he was
12   in Santa Fe and ordered this to occur.
13           So we're this close to trial, and we don't
14   seem to be making any progress.  And I don't know how
15   we get down to something that would be manageable.
16   But what I want to talk to the Court about -- whether
17   or not this is premature -- is with the trial coming
18   so close, the plans for what would happen if we did
19   have to go to trial, and why I don't believe that
20   this is premature at this time, or not ripe, in a
21   couple of other cases that I have been involved with,
22   and in particular, we did a case in Arizona that the
23   prosecution started here in New Mexico, and moved to
24   Arizona.
25           And the U.S. Attorney's Office here in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 876

```
 1    Albuquerque prosecuted the case along with the
 2    individuals in Arizona.  Several months before trial
 3    motions were filed, which I expect are going to be
 4    filed in this particular case, about how we're going
 5    to have security as relates to the trial.  There were
 6    issues about having an anonymous jury.  There were
 7    issues about how the defendants were going to be
 8    placed in the courtroom.  There was not as many
 9    murders in that particular case as are alleged in
10    this case.  And we're not talking about a
11    racketeering.  This was a conspiracy, as it relates
12    to a drug organization, not something going back to
13    1980.
14            In the end, the Government asked for, and
15    the judge granted the ability for the defendants to
16    be shackled during the course of the trial, and for
17    them to have sort of a belly chain around them during
18    the course of this.  We were in the federal
19    courthouse in Arizona.  In order to do that, and to
20    have that many people that were going to be there,
21    they had to reconstruct that courtroom.
22            Now, I know the Court has indicated before
23    that, if we're going to try this case, that the
24    Government could -- it's their belief that they want
25    to try this in Las Cruces, that they could, because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    you deferred to the Government on those issues.  And
 2    I don't see that those courtrooms down there are any
 3    different, to a certain extent, than here.  The fact
 4    that we would have to reconfigure or build a
 5    courtroom, which we had to do in Arizona, in order
 6    that the jurors could not see their feet being
 7    shackled, or because the marshal's office had a
 8    device that they could place around the defendants,
 9    and if something happened, that it would relate in a
10    shock to them, that they had to be covered from
11    basically the arms down.
12            And it took them quite a bit of time to
13    construct that courtroom over there.  I think
14    Mr. Hammond -- he was on the phone, I think that was
15    who was on the phone earlier -- he was involved in
16    this particular case where we had to do this.  We had
17    to rebuild the courtroom.
18            So if we're thinking about that, is it
19    premature?  No, it's not premature at this point in
20    time.  Because it will take a long time to fix a
21    courtroom where we would have the ability, if the
22    Court grants that motion, or if the Government files
23    it, to -- that the jurors will not be aware of the
24    fact that our clients are in the courtroom
25    restrained.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 877

```
1              At the same time, it is really -- I know
2      that the Government did say in their motion that the
3      procedures have worked earlier; that because we've
4      had three or four hearings in front of the Court,
5      that there hasn't been that big of a deal.  Well,
6      that's because they get to sit in these nice, fancy
7      chairs over here, and they've got a table.  I'm
8      sitting on the front row.  I have no place to write.
9      It's going to be impossible.  I mean, it has worked
10     as far as being able to have hearings in front of the
11     Court.  But just over a couple of days of having to
12     sit here, and not being able to write constantly, or
13     to be able to look something up when you're sitting
14     on the front row, and you have no access to -- any
15     ability to do that, that's not going to work.  So if
16     we're going to have more than -- I mean, I looked
17     this morning.  There is -- I think there is eight
18     here -- there are six here -- it's going to be
19     impossible for any of these guys, even if it was just
20     six of us, to do that.  So if we're talking more than
21     that, I think that just relates to the fact that a
22     severance is going to be prejudicial to us under
23     those circumstances.
24              And so I relate that to the Court, and I
25     talk about this to the Court because I think that is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 878

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 879

```
 1    one of the issues that the Court needs to consider,
 2    because it is ripe at this point in time.  If we're
 3    going to have this many people going to trial, which
 4    I predict it will be that many.  I'm saying, as Mr.
 5    Cooper said, maybe 15 of us going to trial, there is
 6    no way that we could do that in the structure of the
 7    courtroom as it relates to in Las Cruces, without
 8    having to reconfigure something, or having to have
 9    another facility.  And if the Court wants to move
10    this to Arizona, where a courtroom has already been
11    designed, that would be something else the Court
12    would have to think about in the meantime.
13         But I think -- I would ask the Court not to
14    wait as it relates to making an initial decision as
15    to whether or not severance would be appropriate.
16    How we do the severance is a different story for all
17    the other remaining defendants out there that have
18    filed motions.
19         Thank you, Judge.
20         THE COURT:  All right.  Thank you, Mr.
21    Blackburn.
22         Anyone else?  Any other defendants want to
23    speak on this motion?
24         MS. JOHNSON:  Your Honor, I have an answer
25    for a question that the Court asked.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 879

1            THE COURT:  All right.

2            MS. JOHNSON:  You asked about the case with

3    regard to the 10 defendants.  I have that;

4    Ms. Justine Fox-Young found it, but I also have

5    another case from the District of Massachusetts that

6    I wanted to bring to the Court's attention.  The case

7    Ms. Fox-Young found was US versus Casamento, which is

8    887 F.2d 1141.  And the quote is at page 1152.

9            THE COURT:  Is that a Second Circuit case?

10           MS. JOHNSON:  It is a Second Circuit case,

11   Your Honor.  That quote, "in assessing the

12   appropriate number of defendants for a trial, in

13   which the prosecution's case is likely to exceed four

14   months, the judge should require an especially

15   compelling justification for a joint trial of more

16   than 10 defendants."

17           And to address the Court's question, Your

18   Honor, whether or not it's too premature, I would

19   direct the Court's attention to United States v. John

20   Shea, 750 F.Supp. 46.  It's a District of

21   Massachusetts 1990 case wherein the Court did grant

22   severance.  And the opinion starts out with, "Given

23   the number of defendants, the number of counts, and

24   estimates of probable length of trial, the Court has

25   an obligation to take steps early in the life of this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 880

1    case to ensure the goals enumerated in Rule 2 of the

2    Federal Rules of Criminal Procedure, quote, 'These

3    rules are intended to provide for the just

4    determination of every criminal proceeding.  They

5    shall be construed to secure simplicity in procedure,

6    fairness in administration, and the elimination of

7    unjustifiable expense and delay,'" and cites to

8    Federal Rule of Criminal Procedure 2.

9         I just wanted to bring these matters to the

10   Court's attention, Your Honor, that further support

11   particularly Mr. Villa's, and then when I argue my

12   motion to sever my client, and Counts 6 and 7, Mr.

13   Villa's client.

14        THE COURT:  All right.  Thank you, Ms.

15   Johnson.

16        Anyone else?  Defendants want to say

17   anything on the joint motion?

18        All right.  From the Government, Mr.

19   Castellano?

20        MR. CASTELLANO:  Thank you, Your Honor.

21        THE COURT:  Mr. Castellano, let me ask you

22   a few questions.  Would you agree that it's going to

23   be extremely difficult and probably not a good idea

24   to try a case with 20 defendants?

25        MR. CASTELLANO:  It may be difficult, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 881

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 882

1    Honor.  It's not unprecedented.  Even one of the

2    cases cited by the defense, I think, had 23

3    defendants who were not severed.  But I do agree that

4    there could be some logistical problems.

5               THE COURT:  If we were in agreement on

6    that, that we probably shouldn't be barreling toward

7    a trial with 20 defendants, what's the solution from

8    your standpoint?

9               MR. CASTELLANO:  Well, the solution is

10   really how to cut up the pie.  It's certainly not as

11   the defense has put forth to the Court.  Because even

12   if you sever out the Counts 6 and 7 defendants, that

13   doesn't account for what happens as a result, which

14   is some defendants who are in other counts would also

15   have their counts severed when they're charged in

16   multiple counts.  And that includes Mr. Baca.  Mr.

17   Baca is charged in multiple counts.  So that would

18   cut him out of the other counts for which he's

19   charged.  Mr. Villegas, I believe, is charged in only

20   one count, but that's a count in which he's charged

21   with Mr. Baca.

22              THE COURT:  So how do you want to divide it

23   up?  If we're going to cut this thing and put it into

24   manageable trial mode, how do you want to cut it up?

25              MR. CASTELLANO:  Well, I would still take a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 882

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 883

```
 1    wait and see attitude.  I don't think it's too early
 2    to consider this issue.  I think it's too early to
 3    make decisions on the issue.  I think maybe if we
 4    waited till possibly May to see how the dust settles,
 5    we could revisit this issue, and finalize how this
 6    case is divided, if we get there.  I think,
 7    potentially, once we're into May, if the Court is
 8    willing to do that, we probably have possibly -- if
 9    no one else pleads, or maybe one person pleads, we
10    probably have two 10-defendant cases.
11            And I'll give you an example of that, Your
12    Honor.  Mr. Gallegos is charged in Count 1.  He's
13    also charged in Counts 4 and 5.  He's also in 13, 14,
14    and 15.  So it doesn't make sense for us to separate
15    Mr. Gallegos' counts, because if we're going to
16    present the same evidence about each those acts, and
17    why would we present those acts and not get a
18    conviction for them, if we can prove our case?
19    Otherwise, we would have to present the same
20    information three different times.  And we could get
21    inconsistent verdicts.  And the case law clearly says
22    that we shouldn't be doing that kind of stuff with
23    our cases, and when it comes to severance.
24            So they've tried to separate a certain
25    group of people, but even if you separate them,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 883

```
 1    severance will not work.

 2            THE COURT:  The defendants have made

 3    several references to the fact the Government said

 4    that there was going to -- that the Government

 5    thought it was going to be having five defendants.

 6    Do you recall making that?  And if so, what was the

 7    context of making that statement?

 8            MR. CASTELLANO:  I don't recall making

 9    that.  And if we did, I'll clearly admit it was

10    inaccurate.  I'm not sure it will be just five

11    defendants, but I think it will be a smaller amount.

12    I don't know where the number five came from.  As Mr.

13    Blackburn pointed out, five defendants at that point

14    had pled guilty, and now we have nine defendants in

15    this case alone that have pled guilty.

16            THE COURT:  Since we seem to be at some

17    agreement that we're not going to be trying 20

18    defendants, tell me what you think the biggest

19    hurdles to trying 20 defendants are.  What is it

20    that, in your mind, you go, yeah, we shouldn't be

21    trying 20 defendants in one case?  What do you think

22    the biggest?  Is it the size of courtrooms we have in

23    Las Cruces?  Is it the security involved?  What is it

24    that, if you had to pick three of the top reasons you

25    think 20 is not doable, what are they?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 885

```
 1              MR. CASTELLANO:  Let me see if I can rule
 2    them out one at a time.  One is voir dire.  I don't
 3    think that's necessarily a problem, because in death
 4    penalty cases, for example, they bring in the jury in
 5    groups.  And so, if necessary, we could bring in the
 6    jury in smaller groups and do voir dire that way.  So
 7    I don't think voir dire is an issue.
 8              We certainly make it work, as it stands
 9    now, with the people we have in the courtroom.  If
10    it's 20 defendants, it will be a task, but I think we
11    can make it work.  As we briefed, there are other
12    things we've done in this case which have already
13    worked, and that is having the public and family
14    members in another courtroom, so it's still a public
15    proceeding.  They can still see everything that
16    happens.  So I think that could be addressed.
17              The only issue may be a configuration of
18    the courtroom in terms of real problems, and that
19    could be done.  I mean, we could certainly rearrange
20    tables, and things of that nature.  I know there are
21    issues with defendants who are shackled or
22    handcuffed.  But that's been handled in this district
23    a number of times by putting the sheeting in front of
24    tables, and things of that nature.  So most of these
25    problems are not problems we haven't seen and
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 885

 1   addressed before, even in this district.

 2          THE COURT:  If I were to say I think that

 3   if we're going to split this up, two trials doesn't

 4   seem to me to be cutting it up enough; that it looks

 5   to me like it's more like a three trial division, how

 6   would you divide it up?

 7          MR. CASTELLANO:  I'd have to think about it

 8   some more, but I can give you my initial impressions,

 9   Your Honor.  I'm putting on the visualizer Document

10   8072, which was provided by the defense.

11          So, as I stated earlier, Mr. Gallegos, Joe

12   Gallegos, is in Count 1; he's in Counts 4 and 5; he's

13   in Counts 13, 14, and 15.  So in those cases, I don't

14   know why we would split Mr. Gallegos up from other

15   defendants with whom he's charged, because now we're

16   severing his counts.  And we're going to present the

17   same evidence as to him, and that would make or force

18   us to elect what evidence we want to pick for each

19   trial; that it's going to be the same.

20          And so the defense has mentioned the word

21   "propensity" a number of times.  But in a VICAR case

22   like this, the charge invites propensity evidence.

23   The charge tells us that we have to prove that the

24   enterprise engaged in racketeering activities.  It's

25   not individuals, it's the enterprise.  So understand

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 886

```
 1    those circumstances, all of this stuff, for the most
 2    part, is fair game and we'll be presenting that
 3    evidence.  So there is no reason for us to present
 4    the evidence against Mr. Gallegos in a situation
 5    where we may not be able to convict him of one of
 6    those counts.  That's clearly --
 7              THE COURT:  So you're saying you would like
 8    to have a Gallegos trial, all the counts that he's
 9    involved in?
10              MR. CASTELLANO:  Possibly.  I would have to
11    think about this more.
12              THE COURT:  How many defendants would that
13    get you, if we had a Gallegos trial?
14              MR. CASTELLANO:  There are five in the
15    first count.  But the problem is that Mr. Garcia is
16    also in the second count.  He's in Counts 1 and 2.
17    So even if you do those two counts, you'd have seven
18    to eight defendants.  Counts 4 and 5 adds one more
19    defendant, who is Mr. Gallegos.  Then Counts 13, 14,
20    and 15 adds two more defendants, because Mr. Rivera
21    has pled guilty.  So that would be Santos Gonzalez
22    and Shauna Gutierrez.  So that's almost a decent
23    sized trial.  The problem is --
24              THE COURT:  I lost count on the defendants.
25    How many does that give you in the Gallegos trial?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 888

```
 1            MR. CASTELLANO:  Approximately nine or ten.
 2   I also lost count, Your Honor.  But the other problem
 3   is that Mr. Troup is also in Count 3.  So, if we
 4   separated Mr. Troup, he would be tried separately,
 5   and we would present the same evidence in two trials,
 6   and possibly get inconsistent verdicts there.
 7            What I think we can do, Your Honor, is not
 8   answer this question today.  I mean, we should
 9   certainly be talking about it and thinking about it.
10   But we really need to have time to sit down and see
11   how we can cut this case up.  But I think,
12   ultimately, it probably turns into possibly two
13   10-defendant cases.  Then we just have to see who is
14   charged together, even if they're in separate counts,
15   because we wouldn't want to present the same evidence
16   in two different trials.
17            And then earlier you had asked about
18   severing counts as to Mr. Garcia, that's Chris
19   Garcia.  But I would ask the Court not to consider
20   that because the Chris Garcia counts, that conduct,
21   felon in possession of a firearm and using a firearm
22   during a crime of violence, relates to the murders
23   conspiracy.  And so those are actually overt acts in
24   furtherance of the conspiracy.  I would agree with
25   the Court that normally conduct like that is separate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    enough that you shouldn't consider them together.
 2    But that's really part of the crime, and so that
 3    would require us to keep all that together.
 4              THE COURT:  What if you grouped these by
 5    more time periods, for example?  What if you took
 6    Counts 1 through 5, which, if I remember, are all
 7    about 2007 time period, and then you took 6
 8    through -- go ahead and --
 9              MR. CASTELLANO:  1 through 5 on the monitor
10    now.
11              THE COURT:  And then you did a 6 through
12    12 -- I'll call those the Baca counts, where he's
13    being alleged to direct the killings.  What if you
14    grouped it that way?  What would you get as far as
15    number of defendants?
16              MR. CASTELLANO:  I don't know about
17    numbers.  But I know you cut out Joe Gallegos from --
18    you split his case into two pieces.  You would
19    have -- and Joe Gallegos is a good example of the
20    ongoing nature of the enterprise.  Because if he's a
21    member of the enterprise in 2001, and remains a
22    member of the enterprise in 2016, that certainly
23    shows the ongoing nature of the enterprise, which is
24    something that we have to prove.  This is an
25    association-in-fact enterprise.  And to do that would
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 889

1    cause us to divvy up some of our presentation at

2    trial possibly.  And once again, it robs us of the

3    opportunity to present the trial and get convictions

4    in one case.

5            MR. COOPER:  Your Honor, could you ask Mr.

6    Castellano to speak up a little louder so we can

7    hear?

8            THE COURT:  Yes, you might just get close

9    to that microphone, Mr. Castellano.

10           MR. COOPER:  Thank you.

11           THE COURT:  Well, if I put pressure on you

12   to split it up so that there is a smaller number than

13   two 10-defendant trials, it doesn't sound like you're

14   ready today to say what you would want.  So I guess

15   the question is:  Do you want to propose a three

16   trial, less than 10 defendants in each trial, way of

17   getting through this case, or do you want me to do

18   it?

19           MR. CASTELLANO:  Obviously, with that

20   option, we would want to choose it.  But if we were

21   going to do that, I would potentially consider

22   presenting at least two proposals.  And that would be

23   to consider how many defendants we have once we get

24   closer to trial.

25           And the other issue we haven't addressed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 890

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 891

```
 1    yet is Speedy Trial.  So some of these defendants --
 2    I know, it was either this case or 1613, where some
 3    defendants said, We would agree to a continuance if
 4    we could have our case tried in 2017, so -- that was
 5    in 1613.  So once again, we're going to have to
 6    consider Speedy Trial, and have a waiver of anybody
 7    who agrees to have their case pushed back.
 8              And one other thing, just a housekeeping
 9    matter, Your Honor, a few people have argued some
10    motions which aren't before the Court today.  We
11    still have some responses outstanding.  So I would
12    ask the Court to hold off on that.  Even though I
13    think, with the Court's decision, it probably may not
14    matter.
15              THE COURT:  I'm not as good with the
16    numbers.  1613 is which one?
17              MR. CASTELLANO:  That is the RICO
18    indictment, Mr. Baca --
19              THE COURT:  That's Baca's, okay.
20              Well, I guess I would tend to agree with
21    you that, as I indicated at the very beginning, about
22    it seemed to be a little early to be severing these
23    claims and defendants.  But I am a little bit
24    impressed with the fact nobody, including you, is
25    standing here thinking that this number is going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 891

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 892

```
 1  be greatly reduced.  I think everybody seems to be
 2  telling me -- the signals I'm getting is I'm going to
 3  be trying about 15 people.  And if that's the case,
 4  it seems to me that I've got to, at some point, bite
 5  the bullet and try to figure out how to try these
 6  cases, particularly the way that people have lined
 7  them up on the runway, wanting this case to go before
 8  this case, before the Varela, before the Baca case.
 9  And I'm not sure that I'm as convinced that it does
10  us any good to delay.  I can always unsever
11  something.  I mean, I can make it clear that this is
12  what we're going to do.  But if we end up with one
13  defendant, we may unsever the thing and lump them
14  back in.
15          MR. CASTELLANO:  I think, once you unsever,
16  there is no going back.  I don't think the defense
17  would agree to be rejoined into a case, because we'd
18  hear the same thing you heard today regarding the
19  need to file motions and we need to prepare for
20  trial.  So I think once it happens, it's highly
21  unlikely those counts or defendants will get back
22  together.  I think you'd certainly hear from the
23  defense about that.
24          THE COURT:  Well, I don't doubt that.  But
25  if I say this is severing based upon what we know at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 893

1    the present time -- that's pretty much what we did

2    with Richard Gallegos, wasn't it?  We pretty much

3    said, Okay, we'll sever because he's insisting on his

4    Speedy Trial Act rights.  But if that thing is not

5    going to go as fast as everybody thinks it's going to

6    go, then we may unsever that thing.  And we've got an

7    agreement to do that.

8              MR. CASTELLANO:  And I think Richard

9    Gallegos is the measuring stick by which the Court

10   should make these decisions.  If you recall the

11   arguments, he was a single defendant, claimed to have

12   not been an SNM member.  His case was teed up for

13   trial.  And he was a little bit different than most,

14   if not all, the defendants here.

15             I think the only thing really driving

16   severance at this point is logistics.  So the

17   question is whether logistics breaks up this case or

18   not.  Because I don't think the defense has put forth

19   any other arguments which would warrant severance in

20   this case.  So it's obviously in the Court's

21   discretion.

22             But in terms of whether people were in

23   prison or out of prison, that doesn't matter.  We

24   have people committing crimes in and out of prison.

25   The indictment alleges that SNM works in and out of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 893

 1    prison.  The time frame doesn't make a difference.

 2    The RICO Act itself allows you to have at least 10

 3    years between counts, even though this is a VICAR

 4    prosecution.  All of the other reasons fall by the

 5    wayside except for logistics.

 6             THE COURT:  Well, let me push you a little

 7    on that.  I mean, it troubles me a little bit that,

 8    say, some of the people that are charged just with

 9    the earlier counts, the 2007, it seems to me some of

10    the stuff that's later is more colorful, and it's

11    going to be harder for them to separate themselves

12    out from it in a bigger trial.

13             I guess it would help if I knew how you

14    were going to try these different groups, what

15    evidence is going to come in.  For example, if I were

16    to separate these out by times rather than by

17    defendants, if I separated it out, 2007, group those

18    together, and then grouped the Baca counts together

19    with the two firearm counts, would you be using

20    anything at the 2007 in the second trial?

21             MR. CASTELLANO:  I don't know why we

22    wouldn't.

23             And the other question is really:  How many

24    times does the Court want to hear the same evidence

25    for the most part?  Because that is part of our --

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN & ASSOCIATES, Inc.                                            e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE                                                  DNM 894

1          THE COURT:  You're talking about me,

2     personally, or --

3          MR. CASTELLANO:  Definitely you personally,

4     Your Honor.  That's the question.

5          THE COURT:  I don't count, do I?

6          MR. CASTELLANO:  I think you count.  So

7     that's the question is:  How many times do you want

8     to hear the same thing?  And how can we split this

9     up; if we do, in a way that makes it work?

10         THE COURT:  But what, really, incentive do

11    you have to put on the 2007 stuff to prove that the

12    enterprise existed in the 2014 going forward

13    timeframe?

14         MR. CASTELLANO:  Because the enterprise is

15    an association-of-fact enterprise that has ongoing

16    activity.  So we would show the history of the SNM

17    going back that number of years.

18         THE COURT:  Would it be fair to say that I

19    wouldn't expect it to be in the detail that I would

20    if the 2007 and 2014 were tried together?  It would

21    be a shorter story.

22         MR. CASTELLANO:  It's on us to prove it,

23    Your Honor.  So, if we allege a prior murder, we have

24    to prove the murder.  So that means we have to prove

25    it in the way that we think we can prove it.  We

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 895

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 896

```
 1    can't ask the jury in the middle of trial whether or
 2    not we think -- they think that we have enough.  We
 3    have to present the evidence in a way that causes us
 4    to believe we proved it beyond a reasonable doubt.
 5    We can't ask that jury that in the middle of trial.
 6    So, obviously, we have to prove it in the way that we
 7    have to prove it.  And that is the burden that's on
 8    us.  That was part of our brief, is when you charge a
 9    VICAR, you have to prove these things.
10            THE COURT:  But you've got plenty of
11    evidence for the -- to do your thing in the 2014
12    timeframe.  Do you really need to take on the burden
13    of going back and trying to prove the 2007 timeframe?
14            MR. CASTELLANO:  Once again, I don't know
15    why we wouldn't, Your Honor.  We have to prove the
16    ongoing nature of the enterprise.  And, for example,
17    it's in the briefs, Julian Romero's green light was
18    outstanding for 12 years.  So that is something that
19    tells us that there is an ongoing nature of this
20    enterprise, and that even when a green light is out
21    there, it doesn't disappear or it's not rescinded.
22    It's an ongoing nature to this thing.  So that alone
23    is worth 12 years, where he gets shot on one
24    occasion; he gets released.  And within five hours of
25    being released into the yard, he's assaulted.  And so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 896

1  those are all part of the proof.

2          THE COURT:  Well, if I'm going to plow

3  ahead in some order toward deciding this motion,

4  anything else you want to tell the Court about the

5  motion to sever?

6          MR. CASTELLANO:  I think what I've already

7  said -- I won't go into it too much further -- I

8  think the only real question is logistics.  I don't

9  think that the defense has enough arguments,

10  persuasive enough, to cause a severance in this case,

11  otherwise.  So it really just depends how many ways

12  we want to break this up.  But what I would put to

13  the Court is, because it's our evidence to prove,

14  that we give the Court possibly two or three

15  scenarios by which we could try this case.

16          And this is a situation where I wouldn't

17  ask that we get the permission of defense counsel,

18  because this is going to be -- it's not a motion,

19  it's just a proposal to the Court -- and of course,

20  people will disagree with how we want to break up

21  this case.  And the burden is on us, and we have to

22  set forth the proof.  So I would just ask that we be

23  given the opportunity to present two or three

24  scenarios to the Court.  And then the question is

25  timing, because this case could change depending upon

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 898

```
 1   whether more defendants plead.  So now we're in a
 2   scenario where we're possibly putting defendants back
 3   together who were severed.  And I just think that
 4   would be difficult.
 5             THE COURT:  Stand right there, Mr.
 6   Castellano.  I'm going to do something I haven't done
 7   before.
 8             Defense counsel, direct your questions to
 9   me.  But with Mr. Castellano here, is there anything
10   you would like for me to ask Mr. Castellano to inform
11   the discussion we're probably going to have as soon
12   as he sits down?  Direct the question to me, though.
13             MR. DAVIS:  Judge, this may be getting way
14   ahead of ourselves.  But assuming that the Court
15   grants a severance into two to three different
16   trials, is there any guidance from the Government
17   about which cases would be tried first, who has
18   control over that, so we could have some idea?
19             THE COURT:  Yeah, I thought of that
20   question, too.  I was going to ask Mr. Castellano.
21   But I don't even know how to frame it, because we
22   don't have the groups yet.  But I -- anything you
23   want to say on that?  It crossed my mind as well,
24   because -- how we do it, and what the order would be.
25   Have you given some thought to that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 899

```
 1            MR. CASTELLANO:  Because that one does
 2   affect the way the defense prepares, I guess one
 3   thing we could do is do this in parts.  We submit our
 4   proposals to the Court; let defense counsel take a
 5   look at it; then we get together on another occasion
 6   to decide the batting order.  And we could give our
 7   reasons why we think they should go in a certain
 8   order.  I guess the defense could do theirs.  So I
 9   think we could do it in probably a few steps.
10            THE COURT:  All right.
11            MR. CASTELLANO:  Because I guarantee no one
12   is going to agree on the order, because people want
13   to try these cases in a different order for different
14   reasons.
15            THE COURT:  All right.  Ms. Johnson?
16            MS. JOHNSON:  Your Honor, this is not
17   necessarily a question, but it's something that I
18   wanted to assert today on behalf my client, Santos
19   Gonzalez.  And I'm happy to supplement my motion to
20   sever.  Mr. Gonzalez asserts his right to a speedy
21   trial; he's not willing to waive that.  We are ready
22   for trial.  We can be ready as early as April.  So
23   with that, Your Honor, there was no other arguments
24   that would persuade the Court to sever.  I know my
25   motion is not ready for argument.  It's not even --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 900

1     the briefing is not complete.  But I just wanted to

2     put it on the record Mr. Gonzalez asserts his right

3     to Speedy Trial, and we're not willing to waive it.

4          THE COURT:  All right.  Anybody have

5     anything you want to add?  Mr. Villa, anything you

6     want me to ask Mr. Castellano before he sits down,

7     hear from y'all on where we are?

8          MR. VILLA:  Your Honor, you mentioned

9     perhaps doing a Baca trial, which, if I count right,

10    there is 11 defendants.  So I guess a couple of

11    questions:  How do we handle logistics, if that's

12    going to be handled in Las Cruces?  And how do we

13    deal with the atmosphere, if you will, that's going

14    to come with the Counts 9 and 10 related to the

15    Marcantel conspiracy that has gotten an extensive

16    amount of media coverage, and that, I think, just

17    adds to the atmosphere?

18         THE COURT:  Well, I guess, you know, you

19    can push back on this, but you know -- I mean, I've

20    had high profile -- and I will bet you I've had

21    higher profile than this -- trials.  I always get a

22    jury.  We just -- we get it done.  So I guess I'm not

23    worried about getting a jury.  You know, the

24    television stations in Las Cruces, they don't even

25    cover northern New Mexico.  So I've always been able

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to -- cases up here, draw from the south, because
 2    many times they don't even know the news up here.  So
 3    when you say carnival environment, I guess if you're
 4    talking about the jury, I guess I've got a high
 5    degree of confidence we're going to get plenty of
 6    folks that know next to nothing about this case,
 7    either here or in Las Cruces or statewide.  You can
 8    push back on that.  But that's my thoughts.  That's
 9    the reason I'm not too worried about that.
10            MR. VILLA:  And I'm not as worried either,
11    Your Honor.  I agree with that part of it.  That may
12    be something for Mr. Baca's lawyers.  I'm worried
13    about Counts 6 and 7 being tried alongside that
14    atmosphere.
15            THE COURT:  Well, okay.  But, you know, a
16    lot of people don't know Marcantel from anyone else.
17    Is it that much more sensational than it might be to
18    somebody that's, you know, stepping outside of this
19    case, or something like that?  But once we're in the
20    box, once we're in the case, it's another alleged
21    victim, it's another alleged murder.  Is it so
22    different than anything else?
23            MR. VILLA:  I think it is, Your Honor.
24    Because with 6 and 7 you're talking about a -- I
25    guess -- I would call it -- classic prison murder.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 901

 1    I'm not even sure that you have to be in the SNM

 2    enterprise to get that snitches in prison have

 3    problems.  And that's what we're dealing with here.

 4              When you take it outside of that box to:

 5    Let's hit a Secretary of Corrections, it's just a

 6    whole other game.  And I think the disparity of

 7    evidence is critical there, when you look at what's

 8    the evidence against Defendant Baca with respect to

 9    the hit on Marcantel, versus what is the evidence on

10    Counts 6 and 7?  It's almost nonexistent on 6 and 7.

11    On 9 and 10, my understanding is it's very strong.

12    And I think that that creates a spillover effect to

13    the Counts 6 and 7 defendants.

14              Now, maybe that by itself isn't enough.

15    But then you add the atmosphere that comes with 11

16    defendants, comes with the media coverage.  Counts 6

17    and 7 might not have a single reporter in the whole

18    courtroom.  You know, you have six defendants versus

19    11.  Cut that down maybe to three or four by the time

20    you get to trial.  Those are the concerns I think the

21    Counts 6 and 7 defendants would have being tried

22    along the other so-called Baca counts.

23              THE COURT:  All right.  Anybody else got --

24    Mr. Cooper, you've got a question you want me to

25    explore with Mr. Castellano?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 902

```
 1                    MR. COOPER:  I do, Your Honor.  Thank you.

 2                    THE COURT:  Mr. Cooper?

 3                    MR. COOPER:  Judge, I don't understand how

 4      splitting up the Joe Gallegos counts would ever

 5      result in inconsistent verdicts.  Mr. Gallegos is

 6      charged in Count 1, which is alleged to have occurred

 7      in 2001 -- 2001; then again in 4 and 5 in 2012; and

 8      then in 13, 14, and 15, 2016 counts.

 9                    Judge, the quantum of evidence with regard

10      to each of those counts is very different.  And if he

11      is found guilty on one, not guilty on two others,

12      that's not necessarily inconsistent.  And so my

13      question to the Court is that I don't understand why

14      the Government suggests that trying him three

15      separate times would ever result in an inconsistent

16      verdict.

17                    THE COURT:  All right.

18                    MR. COOPER:  That's one question.  I have

19      another after.

20                    THE COURT:  Let me explore that.  I had

21      thought the same thing.  When you used the word

22      "inconsistent verdict" as to Gallegos, I was

23      wondering, how inconsistent is it?  If he's accused

24      of three murders, if the jury finds him guilty of two

25      and acquits on one, that doesn't sound to me like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 903

```
 1   it's inconsistent.  Was that what you were referring
 2   to, or were you referring to something else, Mr.
 3   Castellano?
 4            MR. CASTELLANO:  Potentially, Your Honor.
 5   I mean, the bottom line is, for all of those counts
 6   we have the same elements; four out of five elements
 7   are the same.  The only difference is the element
 8   involving the murder.  So we have to prove the
 9   existence of the enterprise; that it engaged in
10   racketeering activity, interstate commerce, and
11   ultimately, that the crime was committed for the
12   purpose of gaining or maintaining position in the
13   enterprise or pecuniary gain.  So --
14            THE COURT:  Well, do you also have -- and
15   educate me here -- don't you also have just the
16   elements of murder that you have to prove?  So that's
17   where your evidence could be quite strong on one or
18   two of the counts and be weaker on the other, and the
19   jury say, Yeah, I think Mr. Gallegos committed that
20   murder, or those two murders, but not the other;
21   right?
22            MR. CASTELLANO:  Potentially.  But we don't
23   know what the defense is in those cases.  We don't
24   know if on one occasion he's going to say he's not an
25   SNM member; on another occasion, whether or not it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 904

```
 1    an ongoing enterprise or that it existed.  I don't
 2    know what the defense will be in each of those cases,
 3    and whether that strategy will change.
 4              THE COURT:  Okay.  So you're saying
 5    depending upon what the defense is, if they tried to
 6    say there was no enterprise, for example, it would be
 7    difficult for them to -- if that was the sole
 8    defense -- to then turn around and reach different
 9    results on murder three, as opposed to murders one
10    and two.
11              MR. CASTELLANO:  Correct.  So that
12    potentially gives them three bites at the apple.
13              THE COURT:  But if they came in and they
14    really pounded that they didn't know victim number
15    three, for example, that would not be what you would
16    be thinking of as an inconsistent verdict?
17              MR. CASTELLANO:  Correct.  So it gives them
18    three bites at the apple when we could really present
19    this evidence one time.
20              THE COURT:  All right.  You had another
21    question, Mr. Cooper.
22              MR. COOPER:  I do, Your Honor.
23              The defendants in Counts 1 and 2 are
24    alleged to have committed this murder in 2001.  There
25    are seven defendants, and one still a fugitive.  So I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 905

 1    think at the end of the day -- and I've had extensive

 2    discussions with all of the counsel for these

 3    defendants -- and I think we're still going to be

 4    standing.  So there are seven defendants that are

 5    going to be going to trial in Counts 1 and 2.

 6            On behalf of counsel in Counts 1 and 2, I

 7    would request that we, too, be allowed to submit a

 8    proposal to the Court, just like the Government is

 9    going to, telling you how we think it ought to be

10    split up, assuming there are three separate trials.

11    And I'd like permission to submit such a proposal to

12    the Court.

13            THE COURT:  All right.

14            MR. COOPER:  Thank you, Judge.

15            THE COURT:  All right.  Thank you, Mr.

16    Cooper.

17            Anyone else while Mr. Castellano is there?

18    Any other question you'd like -- yes, Mr. Lowry?

19            MR. LOWRY:  I have one statement, then a

20    question, Your Honor.  But I wanted to follow up on

21    Mr. Villa's comment.  I heard the Court ruminating

22    about potentially having a Baca case.  And I wanted

23    to point out why that may not be fair to the other

24    six and seven co-defendants in this matter.

25            Frankly, Mr. Baca has always challenged the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 906

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 907

```
 1    Government about his involvement in the Molina
 2    murder, in that he wasn't involved at all.  And there
 3    is a paucity of evidence with regard to the Molina
 4    murder in its entirety.  Even if you look at Jerry
 5    Armenta's statement, the one time he was prompted by
 6    the state prosecutor to discuss Mr. Baca, he talked
 7    about Mr. Baca in the past tense of what he thought
 8    he learned after the homicide took place.  So it's
 9    not even a co-conspirator statement.  It's
10    inadmissible.  So I would venture to say that much of
11    the hearsay that these people have, or that I suspect
12    the Government will present, because we don't know
13    the identities of these people yet altogether, is
14    going to be challenged.  And I think that there is
15    very little to hang a hat on with regard to Mr. Baca
16    in the Molina case.
17            So that's what Mr. Villa was talking about:
18    The spillover prejudicial effect.  Especially, when
19    you juxtapose that with what I would even concede is
20    stronger evidence with regard to some of the counts.
21    So I heard Mr. Villa say there were 11 defendants
22    associated with that kind of grouping, if you had a
23    Baca case.  And again, this is above what the Second
24    Circuit would allow.  And I think there are going to
25    be inherent problems with the prejudicial effect.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 907

```
 1            THE COURT:  What if I cut it into two Baca
 2   cases, and I had Baca with everything except the
 3   Marcantel stuff?  How many would that give me on the
 4   first Baca trial?
 5            MR. LOWRY:  Well, I would suggest doing it
 6   the other way:  Having a Baca trial with the 6 and 7,
 7   and have that stand alone.  And then have all the
 8   other Baca charges grouped together, which would be
 9   8, 9, 10.  And, if I heard the Government correctly,
10   they would throw in 11 and 12, because the Chris
11   Garcia charges were associated with the Marcantel
12   allegations.  From Mr. Baca's standpoint, that would
13   be the more preferred approach.  And I think in the
14   overall fairness of the proceeding, that would be a
15   more just and equitable resolution for all of the
16   co-defendants together.
17            THE COURT:  So how many do you have on 6
18   and 7, five?
19            MR. LOWRY:  We'd have six.  As of today, we
20   have six individuals still outstanding in the 6 and 7
21   counts.  And I believe we -- I heard a number three
22   earlier today, but I think it may be four of those
23   individuals are doing life without parole in the
24   state system.
25            THE COURT:  So then 8 through 12, then how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 908

```
 1    many defendants do I have?
 2              MR. LOWRY:  Well, if Mr. Villa was correct,
 3    you'd subtract the six from the 11, and you get five.
 4    But I don't --
 5              THE COURT:  So the Gallegos trial with
 6    Counts 1 through 5 would give me how many?
 7              MR. LOWRY:  I've got potentially three.  It
 8    would be Mr. Baca, Mr. Garcia, and Mr. Conrad
 9    Villegas.
10              THE COURT:  Three on 8 through 12?  Five on
11    6 and 7?
12              MR. LOWRY:  Six on 6 and 7.
13              THE COURT:  And then if I do 1 through 5,
14    sort of a now modified Gallegos trial, it gives me
15    how many defendants?
16              MR. COOPER:  That would be 11.  There are
17    seven just in 1 and 2.
18              MR. SINDEL:  Your Honor, I also think that
19    putting Counts 1 and 2 together with seven defendants
20    also answers the Court's concern about the calendar.
21    These all occurred basically on the same day in 2001.
22    And so, in terms of hooking these cases in 2012,
23    2014, 2007, I think that it answers the Court's
24    concerns if it does Counts 1 and 2.  First of all,
25    you have seven defendants that I believe, just like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 909

134

1    Mr. Cooper said, are going to stand strong.  And I

2    also think it's a situation where it answers the

3    Court's question, because they all occur basically on

4    the same day.

5              THE COURT:  Yeah, but that's putting four

6    trials with fairly small groupings.  I guess I'm

7    looking for -- you know, getting down to three people

8    in a trial, that looks -- that seems to me to be

9    getting to be too small of a grouping at this point.

10             MR. SINDEL:  I also think that the cause

11   numbers, the count numbers in terms of 4 and 5, you

12   know, have the weakest connection to the enterprise

13   of all of them.  And I'm concerned about the

14   spillover there, because I think --

15             THE COURT:  Well, none of us can control

16   the Government doing what Mr. Castellano is doing.

17   He's going to say:  I don't care what the trial is,

18   he's going to come in and prove everything.  I mean,

19   we can 403 it.  But we know what the Tenth Circuit

20   does with 403.  So, you know, we've got to -- to a

21   certain degree, we can't do a lot of control with the

22   spillover.  They're in control of a lot of that.  So

23   I guess I'm wondering how useful it is for me to be

24   worrying too much about that in a severance motion.

25             MR. SINDEL:  I understand.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

135

```
1              THE COURT:  What's the resistance to trying
2    1 through 4 together?  That seems to me to be more of
3    a natural grouping with Gallegos than the defendants
4    seem to be liking.  I don't like the numbers, because
5    it sounds to me like it's higher than I would like to
6    have going on.  But if I'm sitting here thinking five
7    people are going to disappear, maybe I get that one
8    down to something that's triable.
9              MR. COOPER:  Your Honor, I don't see -- and
10   it's Counts 1 through 5, because you have 1 and 2,
11   then you have -- 1 and 2 occurred in 2001.
12             THE COURT:  You're right.
13             MR. COOPER:  Seven defendants there.
14             THE COURT:  You're right.
15             MR. COOPER:  You have, in the 2000 Freddie
16   Sanchez case, Count 3, there are three defendants.
17   And you have two in Counts 4 and 5.  Your Honor, I
18   think the group just becomes unreasonably large.  I
19   think there are better ways to split it up.  I think,
20   if it went 1 and 2, and then 3 -- well, I'd like an
21   opportunity to talk to everybody to present that
22   proposal to you.  We've talked about it a bit.
23             THE COURT:  I get the feeling that the
24   defendants are wanting to slice, slice, slice.  And
25   that seems to me to be too many trials.  Because I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 911

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 912

1    will end up having a lot of the same evidence over

2    and over, if I take the Government at its word that

3    they're going to put it on over and over.  And it

4    seems to me that it's a little early to try to deal

5    too much with the spillover.  It's more logistics.

6              MR. COOPER:  Judge, I've been taking

7    copious notes.  I've listened to the questions you've

8    been asking.  I know what you want to do, I think,

9    given the questions you're asking.  And I think that

10   we, as counsel, will probably give you a proposal

11   with regard to three trials.  I'd love to split it up

12   seven ways, because I think that would be fairest to

13   everybody concerned.  But that's not going to happen.

14   But I think we can split it up three different ways.

15   And I think the Government can give you their

16   proposal as to how to split it up three ways.  Then

17   you'll have two, three, four different proposals in

18   front of you, and you can make that determination.

19   But I think we can do that.

20             THE COURT:  Thank you, Mr. Cooper.  Any

21   other defendants that want to have me ask Mr.

22   Castellano a question before he sits down?  Mr.

23   Lowry?

24             MR. LOWRY:  Yes, Your Honor.  This is

25   actually a follow-up to a point you just made with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 913

```
 1    Mr. Cooper.  And I want to follow up on Ms. Johnson

 2    and Ms. Jacks' point.

 3              With regard to the VICAR counts, the

 4    Government certainly has to prove an ongoing

 5    enterprise at the time of the underlying substantive

 6    count.  But if I heard the Government correctly, they

 7    keep phrasing this, parsing this in terms of

 8    predicate acts.  And I don't think that's legally

 9    correct.  And what I would --

10              THE COURT:  That's probably my language.

11              MR. LOWRY:  Okay.  I guess my point is --

12              THE COURT:  I'm not sure that Mr.

13    Castellano has bit into it.  He's tried to get away

14    from it.  But it's my language.

15              MR. LOWRY:  The question I'd like to ask

16    Mr. Castellano, then, is:  Once we're deciding these

17    severance issues, and you're talking about hearing

18    evidence over and over again, I think in terms of the

19    proof of an ongoing enterprise was engaged in

20    racketeering activities, it's really a question of

21    the level of generality that that proof is made.

22    Because the deeper down you get into the substantive

23    counts, the more prejudicial spillover effect you get

24    to co-defendants who happen to be grouped with

25    somebody whose substantive VICAR count they're not
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 913

```
 1   associated with at all.  So that's really the

 2   question I'd like to ask the Government is:  Do they

 3   expect that evidence to come in at a level of

 4   generality, with one or two government witnesses that

 5   say, Oh, over the few years they're involved in

 6   mayhem, murder, and kidnapping, or --

 7             THE COURT:  Well, I think I can ask that,

 8   because I've kind of asked that question already.  I

 9   think what Mr. Castellano is going to say:  He has

10   the burden of proof; he's going to put on the proof

11   that he thinks he has to have to prove it beyond a

12   reasonable doubt.

13             Did I answer pretty well for you, Mr.

14   Castellano?

15             MR. CASTELLANO:  I think you answered it

16   well, Your Honor.  The other issue is how much the

17   defense fights us on the proof.  So, obviously, if

18   they're going to ask more questions about it, and we

19   feel a need to address the questioning with more

20   evidence, then we have to do that.

21             Like I said earlier, we can't take a survey

22   of the jury to ask them if they think we have enough

23   at that point on any given count.  So we have to put

24   on the evidence until we believe we've proved it

25   beyond a reasonable doubt.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 914

```
 1              THE COURT:  And you heard Mr. Lowry's
 2    question.  Can you be any more specific?  No?
 3              MR. CASTELLANO:  No.  Because I don't know
 4    what his questions will be.  So if he asks questions
 5    which raise other issues, we have to address those
 6    issues.  That's the nature of trial.
 7              MR. LOWRY:  Well, that might not be a
 8    question.  It could be a stipulation.  That's my
 9    point.
10              THE COURT:  But how do I factor that in at
11    this point?  I mean, we're getting, I think, too far
12    into the weeds of the evidence at trial, when the
13    decision on the table is a severance motion.
14              All right.  Mr. Castle?
15              MR. CASTLE:  Your Honor, earlier we heard
16    Mr. Castellano indicate that in RICO cases they can
17    stretch out to about 10 years to show a pattern.
18    VICAR is different.  And, in fact, I'd point the
19    Court to the case United States v. Barbietto
20    (phonetic), a 2010 case in this -- well, I'm
21    scrolling up to it -- West Virginia case, and I'll
22    provide the citation later if I can.  But there is
23    several cases that stand for this proposition, which
24    is that, in VICAR, the temporal period you should be
25    looking at is much shorter.  The pattern of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 915

1    racketeering activity has some kind of temporal

2    constraint; that the Government is not allowed to

3    just go and prove things over a long period of time.

4    They've got to focus on the racketeering activity

5    surrounding the alleged offenses.

6          And what they're trying to do, for example,

7    if they do do Counts 1 through 5, they're tying a

8    2001 offense and the racketeering activity that they

9    say may have occurred then with the racketeering

10   activity with 2007, and then now then with 2012.  And

11   I think there is actually problems with doing that.

12         As opposed to a RICO case, where they have

13   to show independent predicate acts, and they have to

14   prove two or more, the case law is not actually all

15   that clear that you have to prove any activity, any

16   independent activity, racketeering activity,

17   independent of the offenses charged, the underlying

18   charges.  So my review of VICAR law is that, for

19   example, for Counts 1, 2, and 3 -- let's say that the

20   Court broke it down, because those are the earliest

21   counts -- the proof alone that those counts occurred

22   at the hands of a certain criminal enterprise, SNM,

23   can satisfy that requirement.  Now, obviously, they

24   don't have to do it that way.  But I think there is a

25   temporal limit.  They can't go out forever.  And it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    very different than it is in RICO.

2         So I would -- in addition to doing a

3    proposal of how we could break this down, I'd like to

4    have the opportunity to brief that issue for the

5    Court.  Because I think -- well, so what I would ask,

6    the question that I'd like to have asked of the

7    Government is:  Do they believe there is any temporal

8    limits to the racketeering activity that they can

9    show against certain groups of defendants?  I don't

10   believe -- our position, frankly, is it's not just

11   free range; you can't go back to the '80s, or even

12   the early 2000s, when you're talking about matters of

13   the last few years.  So I would ask if they think

14   there is any temporal limit to their ability to prove

15   a pattern of racketeering activity.

16        THE COURT:  All right.  Well, let's take

17   our lunch break.  Here's the assignments for lunch.

18   Mr. Castellano, Mr. Cooper, give me the best shot you

19   got here on February 7 after lunch.  I know there may

20   be some refinements, but try to give me a proposal.

21   I'd like to see single-digit trials, no more than

22   three.  Try to give me your proposal.  See how close

23   we are.  If you could step across the aisle and show

24   them to each other, see if people can work something

25   out, then, fine.  But try to come back and give me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 917

1    something in that range so I'm leaving here with

2    something to work with.

3            All right.  We'll see you all in about an

4    hour.  So try to be back -- I know there are a lot of

5    logistics here -- nobody is going to start without

6    anybody.  But let's shoot for about an hour.

7            MR. CASTELLANO:  Your Honor, related to

8    that homework assignment, I don't know if we'll be

9    able to get that done today.

10           THE COURT:  Give me something.

11           MR. CASTELLANO:  I'll give you something.

12   The issue won't be whether or not the proposal --

13           THE COURT:  Give it a shot.  And in your

14   proposals, think hard and long -- there are some

15   people here that got life sentences.  They may be --

16   you know, try to calculate in to the best of your

17   knowledge, the best of your information, who is going

18   to be disappearing, so that we've got some really

19   realistic things we're working with.  If we're not

20   going to work with 11 in a Gallegos trial on Counts 1

21   through 5, I need to know that.  You don't have to

22   tell me who they are, but just calculate that in,

23   saying we're probably going to be trying it with

24   eight or nine, rather than 11.  And that will give me

25   some assurance.

SANTA FE OFFICE                                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                  FAX (505) 843-9492
                                                                                           1-800-669-9492
                                                                                    e-mail: info@litsupport.com



```
 1              MR. CASTELLANO:  And the proposal still has
 2    to comply with the case law on severance.
 3              THE COURT:  I understand.
 4              MR. CASTELLANO:  We'll be looking into that
 5    as well.
 6              THE COURT:  I understand.  We're working
 7    backwards here.  Give me something to leave here
 8    with.
 9              MS. DUNCAN:  Your Honor, I'm sorry, the
10    other issue that I'd just like to raise, and we can
11    take it up after lunch.
12              THE COURT:  We'll take it up afterwards.
13    We'll be back in about an hour.
14              (The lunch recess was held.)
15              THE COURT:  All right.  Mr. Castellano.
16              Let me start with, I believe it was
17    Mr. Castle's question.  I'd be curious as to what
18    your thoughts on it are.  How far back in time do
19    you -- if you're putting on a show for the jury, how
20    far back in time do you think your evidence can go?
21              MR. CASTELLANO:  Your Honor, I don't know
22    if there is a bright line rule.  I didn't look up any
23    case law over the break.  So I'd have to actually
24    pull some cases and get back to the Court on whether
25    or not there is a bright line rule, or some other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    rule that the Court can use.

2             THE COURT:  I mean, let's take -- if you

3    were doing a Mafia trial in the Southern District of

4    New York, I guess I'm not sure why you can't start

5    with Gambino No. 1, and go forward and tell the story

6    of the Mafia and that crime family.  It doesn't seem

7    to me that, from an evidentiary standpoint, you

8    couldn't do that.  But do you have a different

9    understanding?

10            MR. CASTELLANO:  I agree, Your Honor.

11   There is a difference between what we can do and what

12   the law allows.  I mean, some of those cases went

13   back decades in terms of the murders.  So we know

14   that there is some precedent for how far back some of

15   this conduct goes.  And I'm showing the Court 18 USC

16   Section 1961(5), which is not VICAR, but it is

17   related to RICO.  And that's the one that says, "One

18   of the acts had to occur after the effective date of

19   this chapter, and the last occurring within 10 years,

20   excluding any period of imprisonment after

21   imprisonment for a prior act."

22            THE COURT:  Wasn't that just to avoid ex

23   post facto law?  You had to have something forward --

24   you had to have a starting date for the RICO Act.

25   But we're well beyond -- I know we go back a long

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    ways in this case.  But we don't have that problem
 2    here; right?
 3              MR. CASTELLANO:  I agree that we do not.
 4    But the point being that even RICO says that you can
 5    have 10 years between those two acts.  And I think
 6    some of those acts even probably go -- I think you
 7    can have an act before the statute of limitation, but
 8    I may not be 100 percent right on this.  But I think
 9    if you have an act before the statute of limitations
10    you can reach beyond that, if your current act is
11    within the time frame.  So it does go back a ways.
12    But in terms of a definite answer, I don't have an
13    answer to the Court.  But I can get that to the
14    Court.
15              THE COURT:  Stand right there.  I think I
16    cut off Ms. Duncan, because I thought we better take
17    a break for Ms. Bean's sake.
18              Ms. Duncan, what were you going to say?
19              MS. DUNCAN:  Your Honor, I wanted to add to
20    the 403 argument on the Counts 6 and 7, versus the
21    Counts 9 and 10, the Molina murder versus the
22    Marcantel-Santistevan -- the Court had mentioned how
23    the Tenth Circuit is somewhat suspicious of 403, and
24    so wasn't convinced about the spillover prejudice
25    from the Marcantel-Santistevan counts onto the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 921

```
 1   Molina.  And I just wanted to expound on that a
 2   little bit for two reasons.  One, I don't know if the
 3   Court's aware, there is a program called Beyond Bars.
 4   It's on A & E, and it's following young prison guards
 5   in the DOC.  And last season's episodes were focused
 6   on the Molina murder, and also the alleged hit on
 7   Marcantel.  So for people in New Mexico, those two
 8   sets of counts have been linked together in their
 9   minds.
10           And the problem is that the evidence on
11   Marcantel, as Mr. Lowry mentioned, is much stronger
12   than on Molina.  The Government has almost no
13   evidence against Mr. Baca on the Molina counts, but
14   does arguably have evidence on Marcantel.  So it's a
15   really big 403 problem.  Not only for the Molina
16   defendants, in terms of being linked with Mr. Baca,
17   but also for Mr. Baca, that the jury hearing the
18   evidence on Marcantel would be unfairly more likely
19   to convict him on Molina despite the complete lack of
20   evidence.
21           So I see the 403 problem of joining those
22   two counts as being one of the biggest 403 problems
23   in this case.  So even though, having the Counts 8
24   through 12, just having the three defendants is not a
25   lot of defendants, it makes sense given the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    incredible prejudice of the Santistevan and Marcantel

2    counts.  That was my only point that I wanted to

3    make.

4              THE COURT:  All right.  Thank you, Ms.

5    Duncan.

6              Anyone else before Mr. Castellano sits

7    down, have any question that you want to ask him

8    through me?

9              Mr. Castellano, what did you have, as far

10   as an hour's worth of thinking how, if we're not

11   going to try 20 people, how you'd break this down?

12             MR. CASTELLANO:  First, I'll continue to

13   note the Government's objection, obviously, regarding

14   the severance.  But given the posture that we're in

15   now, we have a breakdown of two trials.  The first

16   trial being six to 10 defendants, without singling

17   anybody out or talking about discussions, that we

18   have reason to believe that we will be at six to 10

19   in the first group.  And the second group would be

20   seven to eight defendants.  So those would both be

21   single digits.  And the six to 10 certainly will

22   become at least nine.  We're fairly certain of that.

23   So we would have two trials, both with single digit

24   defendants, and we would have defendants all tried on

25   their own counts and not charged in separate counts

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 923

```
 1    in separate trials.  And we think it works if we have
 2    to do it this way.  And I can break it down for the
 3    Court if you'd like.
 4              THE COURT:  Go ahead.
 5              MR. CASTELLANO:  So the proposal is
 6    Counts --
 7              THE COURT:  Do you have something visual to
 8    show me?
 9              MR. CASTELLANO:  I do.  So the first would
10    be Counts 1 through 5, and then Counts 13 through 15.
11    That would be one trial.  And that trial would
12    include Santos Gonzalez.  So he's asserted his Speedy
13    Trial right, so I suppose, if he's in that trial,
14    that would go first, just because the Speedy Trial.
15              THE COURT:  That's Ms. Johnson?
16              MR. CASTELLANO:  Yes, that's correct.
17              The second trial would be Counts 6 through
18    12, and that would result in a case with probably
19    seven to eight defendants.  And, of course, those
20    numbers could shrink, but these are pretty solid
21    numbers otherwise.
22              And so Counts -- the first proposal has
23    Andrew Gallegos in all of his counts; it has Mr.
24    Troup in Counts 1 and 3, so he's not separated.  And
25    it has Andrew Gallegos tried with his brother, Joseph
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

 1   Gallegos.  And also in Counts 1 and 2, you would have

 2   Mr. Garcia, so that would keep both of his counts

 3   together in one trial.

 4        Then Counts 6 through 12 would involve

 5   everyone in the Javier Molina murder, and these would

 6   all, for the most part, be Anthony Baca counts.  So

 7   he would have all of his counts in one trial.  And

 8   let me see if I can back this out a little bit.  So

 9   the whole second page, page 2 out of the 3 of this

10   exhibit would consist of the second trial.  And so --

11        THE COURT:  Go ahead.

12        MR. CASTELLANO:  Looking at Counts 6 and 7,

13   Mr. Armenta, Mr. Montoya, and Mr. Martinez are out of

14   the case.  Mr. Archuleta is out of the case.  Both of

15   the Martinezes in Count 9 are out of the case.  And

16   so this number is smaller than what it looks.

17        THE COURT:  If I'm understanding what Ms.

18   Duncan's point is, that raises her concern to the

19   forefront; correct?

20        MR. CASTELLANO:  It does.  That's just a

21   difference of opinion about the strength of each

22   case.

23        THE COURT:  I'd like your opinion.

24        MR. CASTELLANO:  In our case we would have

25   expert testimony, as well as at least one witness,

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 925

1   maybe more, regarding Mr. Baca's involvement in the

2   Molina murder.

3           THE COURT:  What about the prejudice, the

4   403 issue?

5           MR. CASTELLANO:  Obviously, it will be

6   prejudicial.  The question is whether it will be

7   unduly prejudicial under 403, with the balancing.

8   And Mr. Baca is alleged to be one of the leaders of

9   the SNM.  So it shouldn't be surprising or overly

10  prejudicial that someone who is the head of the

11  enterprise, or a leader in the enterprise, would

12  order things like this.  It's the nature of the

13  enterprise.

14          THE COURT:  All right.  Anything else you

15  want to say on your proposal?

16          MR. CASTELLANO:  I would say that I think

17  the way we've broken it down does meet the

18  requirements, or at least the -- a preference for

19  judicial economy.  We have kept defendants together

20  who are charged together, and we've kept their counts

21  together.  So they're not severed under the rules.

22  And I think --

23          THE COURT:  So you're not splitting any --

24  all counts are going -- all defendants on all

25  counts -- you're not splitting any defendants and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 927

```
 1    counts?

 2                MR. CASTELLANO:  That's correct, Your

 3    Honor.  So each person would have one trial on all of

 4    his or her counts.

 5                THE COURT:  And we wouldn't see that

 6    defendant again?

 7                MR. CASTELLANO:  That's correct.

 8                THE COURT:  All right.  Mr. Castellano,

 9    anything further you want to say on the motion to

10    sever?

11                MR. CASTELLANO:  No, sir.  Thank you.

12                THE COURT:  Would you mind handing your

13    sheet there to Ms. Wild, and maybe she can make a

14    copy of it for me.

15                And Mr. Villa, I want a copy of your

16    PowerPoint as well.

17                MR. VILLA:  Yes, Your Honor.

18                THE COURT:  Can you just file it?

19                MR. VILLA:  I will.

20                THE COURT:  Just put it together in a

21    document and file it.

22                MR. VILLA:  Sure.

23                THE COURT:  Anything else, Mr. Castellano?

24                MR. CASTELLANO:  No, sir.

25                THE COURT:  Thank you, Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 927

```
 1              All right.  Mr. Villa, why don't I give you
 2      the floor first.  It's your motion.
 3              MR. VILLA:  Your Honor, if I may, we did
 4      talk, like you mentioned, over lunch, and came up
 5      with a plan.  And I think Mr. Cooper --
 6              THE COURT:  Mr. Cooper.  All right.
 7              MR. VILLA:  -- was taking notes on it.
 8              MR. COOPER:  May it please the Court.
 9              THE COURT:  Mr. Cooper.
10              MR. COOPER:  Judge, before we start, with
11      regard to the Government's proposal, they believe
12      that Counts 1, 2, 3, 4, 5, 13 through 15, they will
13      only have six to 10 defendants.  Based on everything
14      that I know in my discussions with these individuals,
15      I believe that number to be 12.  And the second
16      number seven to eight.  I believe that is accurate.
17      But the first one I believe is 12.
18              So, Judge, we have 20 defendants and almost
19      40 lawyers.  We do not have a unanimous consensus for
20      this proposal.  Every one of us have some sort of an
21      objection or other with regard to this proposal.
22      Some of us have stronger objections than others, but
23      we, in light of the Court's request, came up with
24      this proposal.
25              Counts 6 and 7, that's the Molina murder
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 928

1    which occurred in 2014, we believe that six

2    defendants will go to trial in that case.

3            We then broke out Counts 4 and 5, and then

4    13 through 15.  In Counts 4 and 5 -- that's Joe

5    Gallegos and Andrew Gallegos -- are charged in that

6    offense with, in that count, 2012 murder, and then,

7    with regard to 13 through 15, again, Joe Gallegos and

8    co-defendants in that case are charged with offenses

9    that occurred in 2012, 2015, and 2016.  There are

10   four defendants in that case.

11           The next case that we believe should be

12   tried together, or some people think should be tried

13   together, Counts 1, 2, and 3, those are the offenses

14   that occurred down at Southern New Mexico Corrections

15   Facility in 2001 and 2007.  We believe eight

16   defendants will be at trial in that case.

17           And then, finally, Counts 8 through 12,

18   offenses that basically relate to the Marcantel-

19   Santistevan case, and also Julian Garcia -- or Julian

20   Romero case -- primarily deal with Anthony Ray Baca,

21   Christopher Gallegos, Santos Gonzalez, and Shauna

22   Gutierrez.  We think, Your Honor, that you will have

23   three defendants in that trial.  And I just listed

24   four.

25           I think there is a fairly good likelihood,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 929

```
 1    Your Honor, that we never get to that last trial.  I

 2    think, given what may happen in trials prior to that,

 3    that trial may go away.  But we have -- so we gave

 4    you the four separate trials:  6 and 7; 4, 5, 13

 5    through 15; 1, 2 and 3; and then 8 through 12.  We

 6    think that is probably the best way to divvy it up.

 7    The Court asked us to give you three proposals.  And

 8    so what we did -- I don't believe that this proposal

 9    is as good as the -- our former proposal, but we

10    think Counts 6 and 7, the Molina murder occurring in

11    2014, together with 13, 14, and 15, offenses that

12    occurred also in 2015 and '16 would be a trial in

13    which you would have nine defendants.

14              Next, we would try 4 and 5, and then 8

15    through 12.  4 and 5 deals with Joe Gallegos and

16    Andrew Gallegos.

17              And then 8 through 12, we would have

18    Anthony Ray Baca, Conrad Villegas, Christopher

19    Garcia.  And we believe that out of that group there

20    would be five defendants.

21              And then the last trial would be eight

22    defendants in the 2001 and 2007 murders at Southern,

23    Counts 1, 2, and 3.  So those are the two proposals

24    that we gave or that we worked on in the last hour.

25              And again, Judge, we don't have a consensus
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    here, but the majority of the individuals thought
 2    that, given what you were asking us to do, we thought
 3    we would propose these two sets of trials.
 4              THE COURT:  All right.  Thank you, Mr.
 5    Cooper.
 6              MR. COOPER:  Thank you, Judge.
 7              THE COURT:  All right.  Mr. Villa, anything
 8    else you want to say on your motion?
 9              Mr. Cooper, can I have a copy of your two
10    proposals?
11              MR. COOPER:  Certainly, Your Honor.
12              THE COURT:  I can probably keep them in my
13    head.  But if you want to put number 1, number 2 at
14    the top, that would ensure that when I pick it up
15    that I don't confuse them.
16              MR. COOPER:  May I approach the bench?
17              THE COURT:  You may.  Thank you, Mr.
18    Cooper.
19              Mr. Villa?
20              MR. VILLA:  Just a couple of things.  I
21    want to echo what Ms. Duncan said -- her sentiments
22    about putting the 6 and 7 case with the other Baca
23    cases.  Now, I don't get too excited about Count 8.
24    That's the individual assault involving what looks
25    like may just be Defendant Baca, because Defendant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 931

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 932

1    Archuleta has pled guilty and Defendant Villegas may

2    stand trial, but really doesn't have a lot of

3    exposure on the case.  But I think putting it with

4    the Marcantel case creates not just the spectacle

5    that I talked about before lunch -- and I don't mean

6    finding the right jury and getting folks that haven't

7    heard about it, but what they're going to see in that

8    case.

9            Now, granted, there was some coverage by

10   the A & E series about the Molina murder.  I think

11   that the Marcantel stuff would add the layer of

12   press, and that sort of thing that's really going to

13   impress upon the jury.  But it's going to add another

14   problem, and I think that's a Bruton problem, because

15   there are -- I mean, the entire Marcantel case, as I

16   understand it -- and I'm not an expert in it -- is a

17   bunch of recorded conversations between the various

18   players, including Mr. Baca, Mr. Garcia.  And none of

19   those are admissible against the other 6 and 7

20   defendants.

21           And if Mr. Garcia and Mr. Baca proceed to

22   trial, as we would expect in a joint trial, you know,

23   during the Government's case-in-chief anyway, there

24   is going to be a huge Bruton problem that's going to

25   cause logistical problems, which I think the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 833

```
 1   was concerned about at this early juncture.  But it's
 2   also going to cause constitutional problems.  I mean,
 3   I won't even get into the individual Bruton issues we
 4   have in 6 and 7.  That's just going to be something
 5   we have to deal with at another day.
 6          But I can tell you, in 6 and 7 alone, there
 7   are a number of statements -- every single one of the
 8   defendants was interviewed after the Molina murder.
 9   Not everybody says things that the Government may
10   want to admit at trial.  But they all gave
11   statements.  Assuming some of those come in, there is
12   Bruton problems, the six that are remaining to trial,
13   some of them were subsequently recorded by
14   confidential sources inside the prison, and things
15   like that that are going to cause a host of issues
16   just within 6 and 7.  If you add on Marcantel, you're
17   going to add on a whole other layer of issues,
18   limiting instructions.  You know, if you try to do
19   the typical Bruton solution, Well, we'll just
20   blackout this person's name and it's admissible as to
21   that person, it's going to be a mess, frankly.
22          So I think that both proposals by the group
23   as a whole, the defense group, will be the best.
24   Obviously, we would advocate for the first proposal
25   of the four trials, because it gives us the relief
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                                1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
 1    that we're asking for today, which is 6 and 7 on its

 2    own.  If you combine into three -- and I think we did

 3    three, because we understood the Court was asking for

 4    a three solution -- but, you know, I think we all

 5    want the four.  If we did the three, you're talking

 6    about nine defendants.  And, you know, you look here

 7    now at the defense table, there is five.  The Molina

 8    defendants are six.  Add a couple more, I'm not sure

 9    how we're going to do that.  I know that that number

10    is a number that is certainly more feasible than 15.

11    But you're also talking about adding on these 13

12    through 15 counts that really have nothing to do with

13    the 6 and 7 Molina defendants, you know, the Molina

14    defendants, the prison murder; 13 through 15 are the

15    out-of-prison murders, allegedly committed at the

16    behest of Joe Gallegos, who -- there really doesn't

17    seem to be a lot of connection between the Joe

18    Gallegos and the 6 and 7 defendants, other than

19    perhaps the SNM connection.

20              And so I think that Bruton is not just an

21    issue for evidence or limiting instructions, but it's

22    also a logistical problem in figuring out how to

23    allow the Government to present its evidence, and at

24    the same time protect the defendants.

25              So I would submit that the first solution
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    proposed by Mr. Cooper is the appropriate one, at

 2    least to resolve the motion before the Court.

 3    Perhaps others may have objections, and there are

 4    motions pending to deal with 2, 3, and 4 of the other

 5    trials.  But I think that that's the best solution

 6    for the arguments that we've put forth.

 7           And the other thing I think we have to

 8    decide fairly quickly, if the Court is going to grant

 9    some form of severance, is the order of trial, so

10    that we can begin preparing.  You know, in a case

11    like this, where we're on the 6 and 7 defendants,

12    potentially talking about five, six, seven expert

13    witnesses, making sure they're available,

14    investigators, and things like that.  And so I think

15    that in addition to the reasons Mr. Blackburn raised,

16    we are going to have nine or 10 defendants, there are

17    those issues of timing and scheduling.

18           And so, Your Honor, for those reasons we

19    would ask that you grant the motion and sever 6 and 7

20    on its own to have its own trial, and do with the

21    rest of the case as you see fit.

22           THE COURT:  Do you have any specific

23    comments you want to make on Mr. Castellano's

24    proposal?

25           MR. VILLA:  Well, Your Honor, I think it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 935

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 936

1    brings up the issues I discussed with the Baca

2    prejudice, the spillover effect, the media coverage

3    that comes with it.  The number of defendants, I

4    think I agree with Mr. Cooper's estimates of the

5    total number of defendants.  I think it's nine right

6    now.  The Government suggests that it might be a

7    seven to eight defendant trial.  And they're basing

8    that on information that I just don't have available

9    to me.

10           But I think the bigger problem with the

11   Government's proposal is not quite as much the number

12   of defendants as it is putting the Marcantel counts

13   with the 6 and 7 defendants.  There is too much of a

14   risk of prejudice, and there is, although logistical

15   problems that you have to deal with, if you take the

16   other proposals, that might work.  But I think you

17   have to separate the Marcantel stuff.  I think it's

18   unfairly prejudicial, frankly, for anybody else's

19   count to go along with that.  I just think that it

20   would be too difficult for the jury to set that

21   aside.

22           And there is not a whole lot we can do, as

23   much as we believe in the limiting instructions and

24   the Court's guidance.  I just think that's too much

25   of a problem.  Not just hearing the evidence, but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 936

```
 1    again, the spectacle that comes with it.  I think,
 2    without having as much information about the other
 3    sets of counts, some of the other attorneys may be
 4    better suited, but I think that, you know, 1 through
 5    5, and 13 through 15, which is the Government's first
 6    proposal, is lumping together, again, Counts 1
 7    through 3; 3 sort of classic murdering of a snitch,
 8    if you will, in the prison, with activities that are
 9    taking place outside of the prison.  And there is
10    sort of a tenuous SNM connection with Counts 4
11    through 5, 13 through 15.  It looks to me more like
12    Joe Gallegos issues that he has from his hometown in
13    Valencia County.
14              THE COURT:  All right.  Anything else, Mr.
15    Villa?
16              MR. VILLA:  I think that's all, Your Honor.
17              THE COURT:  Thank you, Mr. Villa.
18              Let me come back -- because I want to ask
19    you the flip-side of the question, Mr. Castellano.
20    Let me see if there is any other defendants.
21              Mr. Cooper, do you want to comment on Mr.
22    Castellano's proposal?  Do you have anything
23    additional to add on that?
24              MR. COOPER:  I do, Your Honor.  Thank you.
25              Two defendants that need to go to trial
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 937

```
 1    twice in our proposal, they have no objection to
 2    that.  In fact, Mr. Baca's lawyers are asking to go
 3    to trial twice.  So one of the arguments that Mr.
 4    Castellano says everybody in that first group they go
 5    to trial, and then everybody is done.  The second
 6    group, everyone is done.  Nobody has to go to trial
 7    twice.  Joe Gallegos will go to trial twice, he wants
 8    to go to trial twice.  Mr. Baca wants to go to trial
 9    twice.  So I don't think that the Government's
10    proposal, because you only have to go to trial once,
11    is really a factor that impresses the defense.
12              And again, I think the first group of
13    counts, I believe, given the way I count the numbers,
14    I think that's 12, not six through 10.  And I don't
15    see that it's ever going to get to 6 through 10.
16              The second group, I believe to be seven,
17    seven to eight.
18              THE COURT:  All right.  Thank you, Mr.
19    Cooper.
20              Any other defendant want to speak on
21    anything related to the motion to sever?
22              MR. CROW:  Yes, Your Honor.
23              THE COURT:  Mr. Crow.  Let Mr. Crow speak,
24    then I'll hear from you, Mr. Sindel.
25              MR. CROW:  B.J. Crow.  Mr. Villegas is only
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    charged in Count 8; Mr. Archuleta has pled out, and

 2    Mr. Baca is left.   Count 8 is the assault in

 3    furtherance of the racketeering organization.   Like

 4    the Gallegos defendant in this Court's prior order,

 5    Mr. Villegas is charged in a single incident.   And I

 6    believe is that, no matter what severance the Court

 7    grants, however it splits it up, I wanted to give the

 8    Court a heads-up that Mr. Villegas will be seeking a

 9    severance from that count for his own trial.

10            And I think that we're going to have to do

11    a Zafiro analysis, because there are markedly

12    different levels of culpability.   So Mr. Villegas is

13    charged in a three-year max with a bunch of life

14    maxes, and I think we're going to have to do a Zafiro

15    analysis on him.

16            From all practicality, if the Court denies

17    the motion, then we can just go forward with how the

18    Court split the severance.   But I just wanted to give

19    the Court a heads-up that that is coming.   So Mr.

20    Villegas is not going to agree to any severance where

21    he is tried in the Baca case.

22            THE COURT:   All right.   Thank you, Mr.

23    Crow.

24            MR. CROW:   Thank you, Your Honor.

25            THE COURT:   Mr. Sindel.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            MR. SINDEL:  The Government's proposal,

2    rather than trying to be as fair as possible, is

3    meant, I think, to reduce their burden in connection

4    with Counts 4, 5, 13 through 15.  2001 is the Counts

5    1 and 2, which involve my client -- or actually just

6    Count 1, but they are very similar, very closely

7    related.  And I think that their proof, in terms of

8    establishing an enterprise, is a little easier on a

9    situation where there is a prison murder and there is

10   an indisputable gang situation, and the hostilities

11   that can result.  4 and 5, as well as Counts 13

12   through 15, don't have that same connection at all.

13   And I think that what the Government's proposal,

14   which is basically to allow or authorize the jury to

15   bleed over from Counts 1 into 4 and 5, 13 through 15,

16   to establish the enterprise, and they are so weak in

17   those particular cases.  There is a -- you know, 1,

18   4, and 5, those are in 2012, 11 years after the

19   allegations in Counts 1.  And 13, 14, 15 are 2015 and

20   2016.  So the issue of the enterprise is particularly

21   relevant in those situations which there has been

22   such a distinct period of time in which Mr. Gallegos

23   was not in prison.  He was not in prison at these

24   times.  And he was not -- I think that their

25   connection to him and the SNM will be much

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 940

1    diminished, if not totally nonexistent.  Thank you.

2         THE COURT:  All right.  Thank you, Mr.

3    Sindel.

4         Ms. Johnson.

5         MS. JOHNSON:  Thank you, Your Honor.

6         Your Honor, I would respectfully request

7    that the Court -- I agree with Mr. Sindel's analysis,

8    because, for example, my client was 11 years old when

9    Counts 1 and 2 allegedly occurred.

10        Your Honor, again, I ask the Court to give

11   us a trial.  We're not willing to wait for Mr.

12   Gallegos to be ready for trial.  We're not willing to

13   wait for Mr. Baca to be ready for trial, given the

14   Government's proposal.  We are ready to go to trial,

15   Your Honor.  And if you want to give us a trial date

16   at the beginning of April, we'll take it.  And Mr.

17   Gonzalez is not willing to waive his right to a

18   speedy trial.  And we are ready, we insist on it now.

19   And if the Court says the first week of April, we'll

20   be ready.

21        THE COURT:  All right.  Thank you,

22   Ms. Johnson.

23        Let's see, Mr. Chambers?

24        MR. CHAMBERS:  Yes.  On behalf of Javier

25   Alonso, we do object to the Government's proposal.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 941

```
 1    We think that the Government's proposal is really
 2    motivated by this desire to just keep all of Joe
 3    Gallegos' counts together, regardless of the
 4    prejudicial effect that has on everybody else.  And I
 5    believe that Mr. Cooper's calculations are right,
 6    it's 11 or 12 defendants.  And keeping Joe Gallegos
 7    with those 10 or 11 people is horrible.  It's
 8    unfairly harmful.
 9              To go with the Government's proposal,
10    Counts 1 through 5, and 13 through 15, is a span of
11    15 years.  And the Government earlier today said that
12    that reflects the ongoing nature of the enterprise.
13    Well, maybe as to Mr. Gallegos.  But not as to Javier
14    Alonso.  Not as to Ed Troup.  Not as to Arturo
15    Garcia.  It doesn't reflect the ongoing nature of the
16    enterprise.
17              Your Honor made an offhand comment earlier
18    this morning that was very wise, and I know you
19    probably don't want to be held to offhand comments,
20    but you said two doesn't cut it up enough.  And you
21    were right.
22              THE COURT:  All right.  Thank you, Mr.
23    Chambers.
24              Anyone else, Mr. Donovan -- Mr. Roberts?
25              MR. ROBERTS:  Thank you.  I'm fighting a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 942

1    sore throat, Judge.  But I would be remiss not to

2    point out that we're feeling the spillover effect

3    right now over here, Judge.  Mr. Gallegos, my client,

4    Andrew Gallegos, is not Joe Gallegos.

5            THE COURT:  I understand that.

6            MR. ROBERTS:  And everything is being

7    referred to here as the Gallegos trial.  There is

8    very little evidence in this case, that I have seen

9    at least, that puts my client in this enterprise or

10   in the crime that he's being accused of.  And if he's

11   tried with all these other people, he's going to face

12   quite a bit of prejudicial effect.  So I'd like the

13   Court to keep that in mind.

14           THE COURT:  Yes, I understand.  You're

15   right.  Thank you, Mr. Roberts.

16           Anyone else?  Yes, Ms. Arellanes.

17           MS. ARELLANES:  Yes, Your Honor.

18           Judge, there is a problem in trying Shauna

19   with Counts 1 through 5.  First of all, those pertain

20   to the years of 2001, 2007.  The allegations against

21   Shauna pertain to 2016.  So, again, there is a

22   temporal problem.  There is a spillover problem.

23   There are many problems in trying the cases together,

24   or Counts 1 through 5, and 13 through 15.  So there

25   are multiple problems.  And I intend to file a motion

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    to sever, which will be forthcoming shortly, by next

 2    week for certain.

 3            THE COURT:  All right.  Thank you, Ms.

 4    Arellanes.

 5            Any other defendant want to speak on the

 6    motion to sever?  Mr. Potolsky?

 7            MR. POTOLSKY:  Thank you, Judge.  I just

 8    have a brief concern I want to address to the Court.

 9            We operate within an adversarial system

10    here, and the main ingredient that makes it work is

11    that when the Court tells the parties to do

12    something, the parties comply.

13            Now, I agree my colleague who just

14    addressed the Court, in my assessment of what

15    happened right before lunch, we had reached a point

16    where everyone was thinking in terms of three trial

17    groups.  I believe the Court said it looks more like

18    a three-trial division, followed that up by

19    addressing the Government and saying, I want

20    something smaller than two 10-defendant trials.  Do

21    you want to propose it, or do you want me to do it?

22            And then the instant before we broke, the

23    Court said that right after lunch it wanted proposals

24    from both sides for three trials, and not more than

25    10 defendants in any group.  We did what the Court

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

**BEAN**
**& ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 944

```
 1    ordered us to do.  And as one of my colleagues
 2    pointed out, there are 20 defendants, there are 40
 3    lawyers.  We did our very best, and gave the Court a
 4    proposal for the three trial groups that the Court
 5    asked for.  In candor, we also told the Court we felt
 6    that a fourth trial group would be more appropriate.
 7    But we gave the three.
 8            The Government did not do that.  The
 9    Government came in, despite what the Court said, and
10    gave the Court what it wanted, and not a proposal for
11    three trial groups.  We think that, at a bare
12    minimum, we should be advised what the Government's
13    proposal would be for three trial groups, and an
14    opportunity to respond to the Court why that might or
15    might not be the best exercise of the Court's
16    discretion.
17            THE COURT:  All right.  Thank you,
18    Mr. Potolsky.
19            Anyone else?  Any other defendant want to
20    speak on the motion to sever?all right.  Mr.
21    Castellano, let me give you an opportunity to say
22    whatever you want to say, but also maybe comment on
23    the two proposals that Mr. Cooper has given the
24    Court.
25            MR. CASTELLANO:  As I told the Court before
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 945

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 946

```
 1   the break, we were going to give it our best shot,
 2   and that it would be difficult to make this decision
 3   today.  I actually asked that we be able to give
 4   proposals to the Court a little bit down the road.
 5   And the Court said, Give it your best shot.  So
 6   that's what we gave -- we gave the Court a proposal
 7   that had everybody together facing trial one time.
 8   So in terms of judicial economy, not only looking at
 9   whether or not it saves the defense money, it's also
10   whether it saves the Court and the government money.
11   In this case, we'd have two trials, not much longer,
12   I don't think, than if we had them a little bit
13   larger.  So I think judicial economy is still served
14   by having two trials.
15           Each of the defense proposals has Mr. Baca
16   and Mr. Gallegos going to trial at least twice.  And
17   there is no part of the severance case law that says
18   because defendants agree to multiple trials, that's a
19   grounds for severance.  That's just a request, and
20   what the defense wants.  But that's not based on the
21   severance case law.  So that's not a basis for
22   severance.  So we still have to go back to what the
23   cases say about why we sever cases.
24           So part of our brief says, "Under the RICO,
25   the requirements of Rule 8(b) are satisfied when each
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 946

```
 1   defendant participated in the affairs of the same
 2   enterprise to the commission of alleged predicate
 3   racketeering acts."  And I realize this is not a RICO
 4   case here, but the same idea applies.  They still
 5   participated in the affairs of the same enterprise.
 6   So that's what we're talking about.  If you look at
 7   the defense request, we probably have as many
 8   requests as there are defendants in this case.
 9           So there will be no satisfying the defense.
10   And each has their own strategic reasons for wanting
11   to break this case into multiple pieces.  It's a
12   divide and conquer type of approach.  But once again,
13   that's not based in any of the briefing.  So we have
14   to kind of refocus on why this case is being split
15   up, if it is being split up.  And agreeing to two
16   trials is not a basis for that.
17           There was a mention of Bruton.  When it
18   comes to recordings in this case, there is no Bruton
19   problem.  That's covered by the Cook and Smalls cases
20   in the Tenth Circuit.  That's a case in which an
21   informant recorded another person in jail.  Not only
22   did the recording come in against the person who was
23   recorded, it came in against the person against whom
24   he pointed the finger.  So that person said, Another
25   person and I murdered the victim.  That counts not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 947

 1    only against the speaker, but against the other

 2    person whom he appointed the finger at.  That's a

 3    statement against interests, and it also falls

 4    outside of Crawford, because it's not a statement

 5    which the speaker would expect to see in court, so

 6    it's not a statement from law enforcement.  So, in

 7    terms of any recordings, they fall outside of Bruton,

 8    and that's not going to be an issue.  So Bruton will

 9    turn on potentially statements taken by people, but

10    that's a different issue.  But it's not under any of

11    the recordings that are going to come into this case.

12    Those are coming in as is.

13            Some of our numbers are based on -- once

14    again, not putting anyone on the spot, but some of

15    our estimates are based on discussions with defense

16    counsel on a maybe settling some of these cases.  So

17    I understand the defense doesn't have all that

18    information, but we're not going to put anyone on the

19    spot in terms of who we are speaking to and who we

20    are not speaking in terms of settlement.  I think our

21    numbers are a little more accurate than the

22    defense's.

23            So I think these are going to be two

24    smaller trials.  The Court asked us also to look at

25    trials that are in single digits.  Our proposal is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 948

```
 1   for two trials, and those are two trials that are
 2   single-digit trials, in which everyone has one trial
 3   only.  So I think in terms of judicial economy, that
 4   trumps requests to have multiple trials just because
 5   they want to try them differently.
 6            Now, in terms of the sensationalism in this
 7   case, this is a case involving seven murders between
 8   these indictments.  So it's not as if the Marcantel
 9   conspiracy to murder is necessarily more sensational
10   than the 2001 murders against Castillo and Garza.  In
11   terms of sensationalism, that's a case where the SNM
12   coordinated two murders very close in time at the
13   same prison facility.  And that went undiscovered for
14   a number of hours.  So those involve murders.  There
15   is the Sanchez murder in 2007, the Burns murder.  So
16   all of these are murders.  They're fairly gruesome in
17   nature.  So I don't think that one murder is going to
18   necessarily overshadow the other.  It's all
19   racketeering activity, and it all comes in at trial
20   against these defendants.  So I think the Marcantel
21   conspiracy is kind of a red herring, because they're
22   overlooking the other murders in this case.  There
23   are numerous ones.
24            THE COURT:  Do you have anything you want
25   to say specifically about Mr. Cooper's two proposals?
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                              Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 949

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 950

```
 1            MR. CASTELLANO:  I just don't think they
 2   work.  I think, if you look at the first proposal,
 3   you have these much smaller trials of six, four,
 4   eight, and three defendants, their guess is that the
 5   last trial may or may not take place, because those
 6   involve, I believe, Mr. Baca and Mr. Garcia.  So Mr.
 7   Cooper is arguing that if these gentlemen go down in
 8   the first trial, and are looking at life, that
 9   they'll probably just roll over and play dead on the
10   last trial.  But other people have said today, if my
11   client has nothing to lose, he's going to trial.  So
12   the flip-side of that argument is that, if they go
13   down to trial, they might as well put us to our
14   burden and make it difficult all the way through.  So
15   there is no guarantee that their four trials will be
16   shrunk into three trials.
17            And once again, we're going to have
18   multiple trials with Mr. Gallegos and Mr. Baca being
19   separated.  So it's not a judicial economy type of
20   solution that they propose.  It's a solution that
21   they think is more favorable to them at trial, but
22   once again, that's not a basis for severance.
23            THE COURT:  If your numbers drop to the low
24   end of your ranges, say, six and seven rather than 10
25   and eight, would you agree that we still need to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 950

1   split it; that would be too many people to try --

2   logistically to try, especially in Las Cruces?

3           MR. CASTELLANO:  I will say that our

4   preference would be for a 13-defendant trial.  But we

5   would live with two trials of six and seven

6   defendants.  Because the Court has mentioned 15 would

7   be a decent number.  If we could potentially get to

8   13, that could put all the defendants back together.

9   But I think in terms two of trials, I think we could

10  probably make that work.

11          THE COURT:  All right.  Anything else, Mr.

12  Castellano?

13          MR. CASTELLANO:  No, sir.

14          THE COURT:  Thank you, Mr. Castellano.

15          Any other defendant want to speak on the

16  joint motion to sever?

17          All right.  Well, let me give you some

18  thoughts.  I don't have a ruling this afternoon, but

19  let me tell you what I'm thinking.  I'm a little bit

20  back to where I was maybe at the beginning of the

21  day.  I'm much more informed, and I appreciate that.

22  We all come to a case like this drawing on our

23  experiences.  Ms. Wild can probably tell you how many

24  multi-defendant cases I've had of this number, but I

25  would say three or four in the 20 range or more.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



DNM 951

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 952

```
 1    I guess I am still -- I know this case may be just
 2    different, but I guess I'm still a little bit taken
 3    back that there is going to be numbers of even like
 4    13 left in this case.  I mean, that just may be the
 5    reality, and I'll just have to live with the reality,
 6    because I don't have, as you can imagine, the
 7    information that y'all have, as y'all talk with each
 8    other.  That's just not something I can or should
 9    have privy to.  But if I bring my experience to bear,
10    that's a lot of people that are going to trial.  And
11    I just haven't had that experience before.  So I
12    bring a skepticism to it.  So I push these numbers
13    down; probably not much reason for me to push them
14    down below where the Government is saying they are,
15    but I tend to push them down.  And if that is the
16    case, I probably am going to be looking more of a two
17    trial solution to this, rather than a four or three.
18    I think I can probably try it.  I don't have a sense
19    in my head as to whether the combination that the
20    Government has proposed is the appropriate one.  But
21    that's sort of my thinking.  I'm not going to sit
22    here and drag this out.  But at the same time, I'm
23    not going to rush toward it.
24           My sense is that I give more rulings on the
25    confidential informants, that may have more to do
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 952

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 953

1    with people making decisions than maybe a quick

2    ruling on a motion to sever.  So I could be entirely

3    wrong, and I understand that, but that's sort of my

4    assessment.  So I will probably put some of the CI

5    rulings -- I know I owe you one from the last

6    hearing, and I'm working on it very hard.  Yesterday

7    I kind of had to put it down to make sure I was fully

8    prepared for this morning -- for today.  But I worked

9    on it as recently as yesterday, and I guess I sort of

10   put maybe priority in my work on getting the CI

11   rulings out to you rather than this motion to sever.

12   But I won't purposely delay it, but I'm also not

13   going to rush it.  Because I think that a little bit

14   more time may give me a more informed decision.

15          All right.  It's 3:00.  I'd like to use

16   this time efficiently.  I do have some of the CI

17   motions set up for tomorrow with the Baca case.  Is

18   there any CI issues I could pull out that are unique

19   to DeLeon that I could work on this afternoon for an

20   hour, an hour and a half, while we're all together,

21   so we don't lose this time tomorrow?  I've got to

22   have a hard deadline at the end of the day, because

23   I've got to go into the -- on Thursday and Friday

24   just to the Baca case, and I've got to devote those

25   two days to Baca.  So I'd like to use as much time as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    I can.  Is there something that -- so that we're not

 2    unfair to the Baca people tomorrow, we could pull out

 3    today and start arguing, or arguing on the CI issues?

 4           Mr. Beck, can you think of something we

 5    could pull out, and be fair to the Baca people

 6    tomorrow, and pull out, and at least get started on?

 7           MR. BECK:  I mean, I think what would be

 8    helpful -- and I think we sent out a request to some

 9    of the defendants about some pending motions we have.

10    I think what's really helpful is to get some guidance

11    from the Court on where the Court is heading.

12           As for specific CI issues here that I see,

13    I see that we still have left open Mr. Baca's request

14    and Mr. Perez' motion, the first one, 698.

15           THE COURT:  That's the one they've given me

16    the supplemental briefing on.  Do I need the Baca

17    people for that?

18           MR. BECK:  I think that the legal argument

19    that applies to both Baca and DeLeon, this case, I

20    think the factual inquiry applies more to this case,

21    because it had to do with Counts 6 and 7, the Javier

22    Molina murder.  So we might talk about that.  I think

23    that would be useful for our time.

24           Outside of that, I mean, I'll defer to the

25    defense counsel who filed the motions, whether they

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492
                                                             e-mail: info@litsupport.com



```
 1   think there is a specific CI or a specific issue that
 2   applies only in DeLeon.
 3              THE COURT:  So what are you putting on the
 4   table?
 5              MR. BECK:  I think I've got what would be
 6   in this case Document No. 816, which is Defendant
 7   Anthony Ray Baca's supplemental brief regarding
 8   timing disclosure of the identity of confidential
 9   informant.  I think the factual background is
10   provided in our response to that, which is Document
11   No. 824, which is the United States' supplement in
12   response to opposition to the joint motion for
13   disclosure and production of confidential informant.
14              THE COURT:  Well, is it 824 or 825?  824.
15   I guess I had -- I call that the Jencks issue.  Are
16   we talking about the same thing?
17              MR. BECK:  Yeah, that's what I'm referring
18   to is the legal side of that argument.  I think the
19   factual side was you asked the parties to submit
20   additional factual evidence to you, and to each
21   other, regarding whether the hit on Javier Molina had
22   been outstanding for longer than that.  Because, as I
23   recall the Court's ruling -- and I'm sure I'll be
24   corrected if I'm wrong -- as I recall the Court's
25   ruling, you left open the opportunity for additional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 955

1  facts supporting that the hit had been outstanding

2  for longer than just the 24, 48 hours.  You asked for

3  evidence of that, which is what we submitted

4  factually in that response, which is Document 824.

5        I think the legal issue, the Jencks issue

6  that you're referring to -- that's what I'm referring

7  to is the legal issue that carries over for all of

8  the other cases.

9        THE COURT:  Well, let me do it this way:

10  I'm in the midst of working through that.  I mean,

11  what I'm planning to do is the opinion that I'm

12  writing now, I'm going to resolve what I call the

13  Jencks issue in that opinion.

14        MR. BECK:  Okay.

15        THE COURT:  And then I'm going to -- and I

16  probably cannot say specifically, but I thought I

17  gave pretty good rulings as to Baca, Larry Hammond's

18  client, and maybe one or two others -- about three or

19  four -- and then my recollection is the other movants

20  in that, having sensed that it was going to require

21  more nuanced factual arguments, didn't want any

22  rulings on their request for the CI.  They wanted to

23  supplement the record, and then come back.  And this

24  is the coming back on that.  So I'm carving them out

25  of the opinion that I'm writing now.  And I'll put it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 956

```
 1    in a separate opinion to address whatever we decide

 2    over the next two days on the CI issue that we

 3    reserved for today.  Does that make sense?

 4            MR. BECK:  Yeah.  I think we're probably

 5    being as clear as mud to everyone who hasn't written

 6    about this for the last three weeks straight.  But

 7    what I understand is that we should wait on this,

 8    because what you decide on the Jencks inquiry, which

 9    is the decision you're writing now, will dictate

10    where we go with the factual inquiry.  So I think --

11            THE COURT:  Well, what I was going to

12    suggest is, since I'm in the midst of writing the

13    Jencks portion, and y'all have just given me here --

14    I've just read it since Saturday -- your supplemental

15    briefs on that, the legal side.  We argued this

16    pretty much in full at the last hearing.  Now people

17    have sat down and thought about it and given me

18    additional supplemental material.  What if I took a

19    moment and just see if anybody else wants to say

20    anything else on the legal side, since I'm writing

21    that opinion right now.

22            MR. BECK:  I mean, I'm fine with that.

23    I'll defer to the defense if they're okay with that.

24            THE COURT:  All right.  I think it was you

25    that raised the issue, so why don't I have you go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 957

 1    first.  I've got your supplemental brief; I've read

 2    it.  What else do you want to say on this timing

 3    issue?

 4            MR. BECK:  I was trying to defer to them.

 5    I was trying to not be put on the spot here.  I think

 6    what --

 7            THE COURT:  The question I have is, in the

 8    Roviaro case, there was language that indicated that

 9    one of the purposes of requiring the Government to

10    disclose a confidential informant was -- and I won't

11    have the language exactly right -- but it said

12    something like:  Or so that the defendants can

13    interview and investigate, but I think it said

14    interview, the informant before trial.  Given that

15    language, it concerns me to then say -- because under

16    Jencks you wouldn't be required to disclose that

17    person until trial, until they testified at trial.

18            MR. BECK:  Right.

19            THE COURT:  So it concerns me, then, to say

20    that Jencks somehow trumps Roviaro and the analysis

21    you have to do there.

22            MR. BECK:  Well, and I think that --

23            THE COURT:  You know the language I'm

24    talking about?

25            MR. BECK:  I think -- I don't know exactly



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 958

 1   what you're referring to, but I think I get the gist

 2   of your argument, is that, if we're concerned about

 3   the defense having an adequate opportunity to

 4   interview this defendant or this confidential

 5   informant, or investigate the confidential informant,

 6   I guess that goes back to the Jencks issue.  And the

 7   issue that I think Pennick looks at is, if we're

 8   talking about the Government's witness list, right?

 9   The Government doesn't have an obligation outside of

10   a court order, which I understand oftentimes the

11   Court will order the Government to produce a witness

12   list.  But setting that aside, generally, there isn't

13   an obligation for the United States to submit its

14   witnesses until the United States gets to trial.

15          And so that's, I think, the issue here what

16   the circuit courts have held.  And I think it's based

17   on the Supreme Court's reasoning in Roviaro, and

18   since then, is that while they are entitled to the

19   information in the discovery, the information in the

20   reports, they're not entitled to who said that.

21   They're not entitled to the identity of that person.

22   And I think if you look at Roviaro -- and I can pull

23   this out.  So I think if we look at the Roviaro

24   decision, and I'll -- it's page -- this is 353 U.S.

25   at 60.  And so it says, "The scope of the privilege

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     is limited by its underlying purpose; thus, where the

2     disclosure of the contents of the communication will

3     not tend to reveal the identity of an informer, the

4     contents are not privileged.  Likewise, once the

5     identity of the informer has been disclosed to those

6     who would have cause to resent the communication, the

7     privilege is no longer applicable."

8          So what I think it's getting at there is

9     that the defendants are entitled to that information.

10    They're entitled to information that's helpful, items

11    material to presenting their defense.  That's the

12    language in Rule 16.  So they're entitled to that

13    information.  But they're not entitled to the

14    identity of a government witness beforehand.

15         And so what happens here is that, when you

16    have a testifying -- when you have a testifying

17    person, the United States, whether it's a

18    confidential informant, or whether it's not, the

19    defendant doesn't have a constitutional right,

20    doesn't have a right to know who the United States

21    will present at trial.  And so that brings those

22    otherwise confidential informants under that general

23    rule.

24         And I understand it's not exactly answering

25    the Court's question.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 960

```
 1              THE COURT:  Well, but here's my problem is,
 2   I have to come up with a rule that applies in all
 3   cases, not just in a case in which the Government has
 4   agreed two weeks before trial to disclose its
 5   testifying witnesses.  I mean, let's say you were in
 6   a case in which the Government was insisting on
 7   complying only with Jencks, then you would have a
 8   situation in which the defendant would not really
 9   have any meaningful way of interviewing the CI.
10   That's my concern, is unless my memory is off, I
11   thought the Roviaro case indicated that that was one
12   of the reasons that you overrode the Government's
13   privilege of keeping the CI confidential, was because
14   in certain situations the defendant had a right to go
15   interview that person before trial.
16              MR. BECK:  Right.  And so I think that may
17   be getting more into what we sort of took as the
18   guiding principle in the Tenth Circuit's decision in
19   Pennick, and sort of whether there is helpful
20   information from this defendant; right?  And so I
21   think what the Court was concerned with in Roviaro
22   was that you had this person who is a confidential
23   informant, who is not going to testify; the
24   Government made clear they were not going to testify.
25   And you had the Government with a government witness,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    a government agent who was going to testify.  And I

2    think what the Supreme Court was worried about in

3    that case was that there may be helpful, relevant

4    information that this confidential informant had that

5    would never be available to the defendant.

6              And then, what the Tenth Circuit and other

7    circuit courts have taken from that, the Sixth

8    Circuit, the Third Circuit, the Eighth Circuit --

9    what they had taken from that is that you don't have

10   that concern when the confidential informant is going

11   to testify at trial.  You don't have that concern

12   that there is this potentially helpful information

13   out there that will not come into play.

14             So I think I get what Your Honor is asking

15   now.  So what happened in Pennick is that the Court

16   said, This takes us out of Roviaro because the

17   confidential informant testified at trial.  So the

18   potential that there was relevant, helpful

19   information that went unknown and unexplored by the

20   defendant doesn't exist when we have someone who

21   testifies at trial.  Because that person is subject

22   to cross-examination.  And the defendant can get out

23   any of that helpful and relevant information on

24   cross-examination.

25             So that was the Court's concern in Roviaro.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 962

```
 1    It was the Court's concern in United States v.

 2    Pennick, again.  And the court -- the Supreme Court

 3    kind of refers to this in two Supreme Court

 4    decisions, which are listed on page 8 of Document

 5    824.  It says, "Roviaro dealt with a nontestifying

 6    confidential informer."  So, for instance, in Banks

 7    versus Dretke -- if I'm saying that right -- 540 U.S.

 8    668, a 2004 decision by the Supreme Court, at page

 9    697 of that U.S. Reports, the Court said, "The issue

10    of evidentiary law in Roviaro was whether or when the

11    Government is obliged to reveal the identity of an

12    undercover informer the Government does not call as a

13    trial witness."  "Not" was emphasized in that Supreme

14    Court decision; we emphasized it in our brief.  So

15    what it's saying is that the whole concern in

16    Roviaro, was that there may be helpful, relevant

17    information necessary for a fair determination of the

18    trial.  And if this CI is never revealed, and never

19    testifies at trial, that information doesn't come

20    out.  But just like every other witness who will

21    testify at trial, the defendant has the right to know

22    who that person is when they get to trial -- just

23    like Jencks -- and the defendant has the right to

24    cross-examine that witness fully, and explore all of

25    that on cross-examination.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And so what Roviaro was concerned with,
 2   what the Tenth Circuit is concerned with in Pennick
 3   and Baca and Nevels and Smith, and what the other
 4   circuit courts of appeal have taken Roviaro to say is
 5   that, when there is a confidential informant, and
 6   when that confidential informant is not going to
 7   testify at trial, then there could be this helpful,
 8   relevant information that may be of significance to
 9   the defendants' defense that goes unheard and
10   unexplored by everyone, and that is unfair.
11              And so that's what these decisions stand
12   for, is that if we have a confidential informant who
13   has potentially relevant, helpful, significant
14   testimony to a defendant, if we don't intend to call
15   him at trial, then we go through the Roviaro analysis
16   to determine whether they're able to identify this
17   confidential informant, then they can explore whether
18   they want to investigate, find background
19   information, interview, call this person as a trial
20   witness, explore that relevant and helpful
21   information.
22              But if the United States is going to call
23   that confidential informant as a trial witness, the
24   defendant will have the right to confront and explore
25   that witness' helpful and relevant information there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 964

 1    on cross-examination.

 2              And so I think that is what Your Honor can

 3    take to its other court opinions, is that for every

 4    single trial, whether it's a, you know, two-day trial

 5    or a day possession drug trial, something like that,

 6    you know, illegal reentry case, whatever have you, if

 7    the United States is going to call that person as a

 8    witness, then they're subject to cross-examination;

 9    whatever helpful and relevant information they have

10    that defendant can get, if they were used as a

11    confidential informer, the United States says we're

12    not going to call this person as a testifying

13    witness, then Roviaro comes into play.

14              THE COURT:  So you're saying that once you,

15    as the Government, says:  We're calling this CI as a

16    witness, the Court shouldn't engage in the Roviaro

17    analysis, it should just stand down --

18              MR. BECK:  Right.

19              THE COURT:  -- and not make any

20    determination about whether that witness satisfies

21    the helpful standards of Roviaro?

22              MR. BECK:  Right.  So in the language of

23    the Tenth Circuit in Pennick, what happens then is,

24    once the informer is available as a witness, that,

25    quote, "ruled out possibility that the informer's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 965

1    identity could somehow be helpful to Pennick."  And

2    so once that confidential informant is up there on

3    the stand, subject to cross-examination, that rules

4    out possibility that there could be relevant, helpful

5    information for the defendant that otherwise goes

6    unheard in this trial, which is where the unfairness

7    comes in.

8            THE COURT:  All right.  The witness that we

9    worked at great length on December 1st about, that

10   person was somebody that you are going to call?

11           MR. BECK:  Yes, that is someone who will

12   testify on behalf of the United States.

13           THE COURT:   So I left for today or this

14   opinion what the timing issue is on it.

15           MR. BECK:  Right.

16           THE COURT:  And if my memory is correct,

17   y'all have agreed to disclose all names two weeks

18   before trial, all Jencks?

19           MR. BECK:  I think that's right for the

20   Jencks, two weeks before.  I think what we've said

21   for -- yes, so to answer your question, for those

22   that we are going to have testify beforehand, we've

23   agreed to two weeks beforehand.

24           THE COURT:  All right.

25           MR. BECK:  So I'm hearing a little

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 966

```
 1   whispering in my background, which is what I was
 2   going to say before I realized your question.  For
 3   those confidential informants we don't intend to have
 4   testify at trial, who we believe the defendants have
 5   made a showing under Roviaro for, we've agreed to
 6   disclose those confidential informants' identity to
 7   the defendants 30 days before trial.  And so that is
 8   the timing of disclosing confidential informants
 9   under Roviaro.
10           THE COURT:  All right.  Let me -- on the
11   legal issue let me see if the defendants have a final
12   word.  I need to probably rule on that issue.
13           Ms. Duncan, do you want to go first?
14           MS. DUNCAN:  Yes, Your Honor.
15           THE COURT:  What's wrong with Mr. Beck's
16   analysis?
17           MS. DUNCAN:  So many things.
18           So I'd like to start with -- there is
19   really two issues.  First, none of the cases the
20   Government has cited stand for the proposition that
21   the Government can defeat a successful showing under
22   Roviaro simply by claiming we're going to call that
23   witness at trial.  What the Court's basically held is
24   where you have an informant, particularly, for
25   example, in a controlled buy, and the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 967

1   ultimately calls that informant as a witness at trial

2   against the defendant, that informant is arguably

3   presenting inculpatory information, so they don't

4   have information that's relevant or helpful to the

5   defense.  So looking at their trial testimony, any

6   error that you would have in failing to disclose the

7   identity of an informant is harmless.

8          So, you know, so looking at it backwards,

9   okay, there was no harm to the defendant is different

10  than saying all that the Government has to do is say

11  we're going to call him, and then everything else

12  stops.

13         You had asked about the quote from

14  Roviaro --

15         THE COURT:  You're saying they just don't

16  have a case that says that.

17         MS. DUNCAN:  They don't.  There are no

18  cases that say that.  It's all backward looking.  So

19  in Pennick, they saw -- well, there is really two

20  things about Pennick that I disagree with the

21  Government.  One is, in Pennick, it wasn't -- the

22  defendant didn't ask for the disclosure of the CI,

23  because -- making initially the argument that it had

24  relevant and helpful information to the defense.  The

25  defendant filed a motion for disclosure of all of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    Government's witnesses, including a confidential

 2    informant.  So many of the cases that the Government

 3    cites in its briefs come at it from that perspective

 4    of:  Order the Government to disclose witnesses,

 5    including CIs, which is not what we're doing here.

 6    At this point we don't care if these CIs are going to

 7    be government witnesses or not.  Our argument is that

 8    they have information that's relevant and helpful to

 9    the defense.  But we can't know that information, and

10    we certainly can't present it at trial unless we know

11    who they are and investigate them and perhaps

12    interview them.

13            And so the quote that Your Honor is

14    remembering from Roviaro is, "the desirability" --

15    one of the reasons why you disclose the informant

16    prior to trial is "the desirability of calling the

17    informant as a witness, or at least interviewing the

18    informant in advance of trial is a matter for the

19    accused rather than the Government to decide."

20            So the informant that was identified in

21    Mr. Perez' motion is someone who we, on behalf of Mr.

22    Baca, would like to identify and interview, because

23    we believe he has information that is relevant and

24    helpful to Mr. Baca's defense, and we believe the

25    Government is going to call him as a witness.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 969

```
 1              The other issue that I think distinguishes
 2    all those cases, those are very simple allegations,
 3    the defendant had a controlled buy; there was an
 4    informant the defendant doesn't know, and they ask
 5    for the disclosure.  Here, we have so many informants
 6    and there are allegations over a number of years.  So
 7    we may have -- for example, the informant who is
 8    named in Mr. Perez' motion, he may have inculpatory
 9    information as to one defendant, but exculpatory
10    information as to another.  So the fact that that the
11    Government is going to call him as a witness to
12    testify against defendant A, doesn't answer the
13    question of whether defendant B is entitled to
14    interview and investigate him to present him in the
15    defense case.
16              This case is just too complicated for that
17    narrow interpretation that the Government is giving
18    on the case law.
19              THE COURT:  I'm not sure I quite understood
20    that.
21              MS. DUNCAN:  What I mean is -- so, for
22    example, let's say we have informant A, and informant
23    A is going to be called to testify -- has inculpatory
24    information on Count 1.  That same informant in a
25    report may have exculpatory information as to my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    counts, Counts 6 and 7.  So I show you, the Court,

2    that I'm entitled to the disclosure of that informant

3    to help me on Counts 6 and 7.  The Government jumps

4    up, and say, Oh, wait, wait, Your Honor, you can't

5    disclose it to her because we're going to call him as

6    witness.  But they're calling him as to Count 1;

7    right?  So they call him as Count 1.  He gives his

8    inculpatory information as to Count 1.  Now, we are

9    deprived of our opportunity to put on exculpatory

10   information as to Counts 6 and 7.  That's my point,

11   is that I'm not going to be able to get my

12   exculpatory information on Counts 6 and 7 by

13   cross-examining him on his testimony for Count 1.

14            And there are a lot of informants who are

15   like that in this case, who have a broad -- appear at

16   least from the discovery to have a very broad base of

17   knowledge that may bear on multiple allegations.

18            So even if the informant in Mr. Perez'

19   motion has arguably inculpatory information as to Mr.

20   Perez, that he provided the walker to make the shank,

21   but that information is potentially exculpatory of

22   Mr. Baca, so this is just a much more complicated

23   case than those very simple informant cases that the

24   Government relies on in its brief.

25            THE COURT:  Well, I think what Mr. Beck was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 971

1    saying is that the language that you just quoted,

2    that I was paraphrasing, he's saying it only deals

3    with a situation where the informant is not going to

4    testify.  That once the witness has been identified

5    as a testifying witness, you're going to have a

6    chance to pull the exculpatory information from him.

7    Your response on that?

8            MS. DUNCAN:  My response on that is not if

9    I'm being told who that person is two weeks before

10   trial.  I mean, if he has exculpatory information, I

11   need to try to interview him, I have to investigate

12   that information.  And I can't do it two weeks before

13   trial, that's just simply not enough time.  And there

14   may be instances where a person has information

15   across a broad array of allegations.  So it's

16   unreasonable to expect us to interview their 300 --

17   or I think -- I did a chart of all of the informants

18   in the various CI motions that the Government is

19   claiming it's going to call as witnesses.  And there

20   are over 50.  And I can't be expected to identify --

21   try to interview and investigate over 50 informants

22   in the two weeks before trial.

23           THE COURT:  Well, but isn't that the cross

24   that Jencks puts on everybody, every defendant?  I

25   mean, how is a CI different than any other witness

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    that Jencks puts that burden and problem on?

 2             MS. DUNCAN:  Well, I think for a couple of

 3    reasons.  One is because the Jencks -- the CIs may be

 4    witnesses who I want to call as a defense witness,

 5    regardless of what they do.  So whatever their

 6    disclosure under Jencks is with respect to the

 7    testimony they intend to present is a different issue

 8    than mine, which is that I may want to independently

 9    investigate and develop exculpatory information, and

10    I won't have time to do that in the two weeks before

11    trial.

12             THE COURT:  All right.  What else, Ms.

13    Duncan?

14             MS. DUNCAN:  Your Honor, I think that

15    that's all the points that I have.  The only thing I

16    did want to mention, is I know in 1613, with some of

17    the motions for disclosure of CI, their counsel in

18    their replies have also argued this issue, so they

19    may want to be heard tomorrow also on this timing

20    issue.  Because it's coming up, the Government is

21    asserting it in response to all of the CI motions.

22             THE COURT:  1613 is what I call --

23             MS. DUNCAN:  1613 is the Baca case.

24             THE COURT:  All right.  That's what I call

25    the Baca case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           Thank you, Ms. Duncan.

2           Mr. Adams.

3           MR. ADAMS:   Judge, on behalf of Mr. Garcia,

4    we did not have an issue in the December hearing, but

5    I think Pennick is going to be raised early tomorrow

6    morning, and I thought I would just add in a little

7    bit.  The Government cited Pennick in their response

8    to us for the proposition that Mr. Beck stated now,

9    that if they're going to call this person as a

10   witness, then too bad, we don't have access to that

11   material until the eve of trial because there is this

12   case, Pennick, that says we don't get witness lists.

13          And I went back and I read the Pennick

14   decision from 1974.  It was a two to one decision.

15   And the trial judge in that case -- it was a very

16   simple undercover cell, an agent went in with a

17   confidential informant, and there were a couple of

18   purchases of heroin, I believe.  The defendant moved

19   for the identity of the confidential informant, and

20   moved for a lot of other material.  And the trial

21   judge did a Roviaro analysis.  And the Tenth Circuit

22   didn't say that was in error.  They pointed out the

23   judge did the Roviaro analysis, but -- and then they

24   said, But looking at it, when they called the witness

25   at trial, the defense didn't seem surprised at all.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 974

```
 1    They seemed to know who it was.  They seemed fully
 2    prepared and fully investigated their crosses, and
 3    didn't ask for a continuance.  So under that unique,
 4    small, limited scenario they said this wasn't an
 5    abuse of discretion by the trial court to essentially
 6    have a witness surprise the defense.
 7            And so I would just say I think our
 8    situation, our scenario, is quite different from a
 9    single witness surprise where the defense may have
10    known what was coming.
11            What they didn't point out, and what they
12    don't mention, and what was not even dealt with in
13    Pennick, is how Kyles and Brady fits into all this
14    scenario.  And I think that's going to be part of the
15    big discussion tomorrow is we have to have the
16    material in time -- as Ms. Duncan was saying -- in
17    time to make use of it.  And if that's to gather more
18    impeachment material, there is going to be a lot of
19    different ways all this group of lawyers and their
20    investigators are going to be able to make use of
21    material when it's given to us.  I suspect that
22    that's why they don't want to give it to us.
23            So we need it.  If we don't get it until
24    they call the witness or on the eve of trial, as the
25    Government is proposing, then all this trial will
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 975

1    become an extended process of continuance litigation,

2    where we're jumping up every day and after every

3    witness, coming back and say, Judge, before we come

4    back in, let's talk about what we need to do for more

5    investigation, because we've been surprised by

6    witness 37 that wasn't disclosed to us in advance.

7              So I think to bootstrap onto Ms. Duncan --

8              THE COURT:  Doesn't Mr. Beck's

9    representation that they're going to give you these

10   names two weeks before trial sort of makes it tough,

11   but it doesn't -- it sort of eliminates that picture

12   of having them operate strictly under Jencks, the

13   Jencks Act.

14             MR. ADAMS:  Judge, candidly, I think, if

15   they do that, they're doing it at their own peril.

16   We're entitled under Brady and Kyles to material with

17   enough time to make use of it.  I wish Kyles and

18   Brady had said that means from the inception of the

19   case.  It doesn't say that.  It doesn't put a timing

20   requirement.  But it does say that it must be

21   produced in time for the defense to make use of it,

22   which I think can only mean full use of it.  And if

23   we come in and a witness is gone, and we come in and

24   we find at the end of the case or in three trials

25   later more material, we're going to be back

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 977

```
 1    litigating that issue forever.  It's shortsighted
 2    litigation to try to keep us with blinders on until
 3    the very last minute.  And I don't think it serves
 4    the interest of the analysis for tomorrow either.
 5              THE COURT:  Well, I think what the
 6    Government would say is in a case like this they're
 7    doing it somewhat to protect these witnesses.  And
 8    given some of the allegations, there seems to be
 9    maybe some basis for that.  Your thoughts on that?
10              MR. ADAMS:  I think in a case like this,
11    they should have that concern.  However, they have
12    turned over the identity of some of these
13    confidential informants at some other time, whether
14    it's under protective orders or other ways.
15              THE COURT:  They have been selective.
16              MR. ADAMS:  So, as to those individual
17    confidential informants, by doing that they've waived
18    that privilege which extends to that witness for
19    everyone.  They can't pick and choose.  Once they
20    waive that privilege, it's gone, and we're entitled
21    to that material.
22              You certainly --
23              THE COURT:  Do you have any law that says
24    that?
25              MR. ADAMS:  I believe that Ms. Jacks cited
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 977

```
 1   some law for that proposition.
 2           THE COURT:  Because it seems to me that --
 3   let's take just sort of standard privilege and work
 4   product.  Privilege is one thing, but work product,
 5   you can selectively disclose certain things.  We do
 6   that all the time.  We come to court and give a
 7   little bit more information.  Then at trial, we
 8   either play those cards or we don't play those cards.
 9   What is different for the Government to say to this
10   person:  We -- they make a calculation that it's
11   helpful, and they disagree with your calculation that
12   it's helpful, and they disclose it to one but not the
13   other?  Why would that necessarily waive the
14   privilege?
15           MR. ADAMS:  Judge, may I invite Ms. Jacks
16   up?
17           THE COURT:  I'll let her come up
18   afterwards.
19           Do you have anything else you want to say
20   on the legal issue?
21           MR. ADAMS:  No, sir.  My main point was,
22   fortunately for all of us, Pennick is a very short
23   opinion.  So I think it's one the Government relies
24   heavily on, but I don't believe it stands for the
25   proposition that they are embracing it for.  And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 978

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 979

```
 1   think that what is missing from their analysis is how
 2   Kyles and Whitley factors into any of this, and I
 3   think that's the big grist for conversation tomorrow
 4   as we go through the individual statements.
 5           THE COURT:  I guess I would think that
 6   there would be some case that would sort of talk more
 7   plainly about this issue than what the cases seem to
 8   do.  They don't -- nobody seems to talk directly on
 9   the issue that we have here.  And it seems like this
10   scenario would have come up before.
11           MR. ADAMS:  Well, Judge, as far as backing
12   up to the witness protection issue, I know you have
13   dealt with -- you have a couple of lengthy opinions
14   on revealing CIs.  And in at least one of the cases
15   with Ms. Johnson, you turned it over to her eyes
16   only.  And that seemed to work.  Nobody was harmed in
17   that case.  She got the information she needed.  And
18   my understanding is it led to an acquittal for her
19   client.  So that worked in that scenario.
20           This is a difficult case.  It has difficult
21   issues.  But I certainly think we have to be able to
22   get the information and start making use of it.  And
23   this isn't something that can wait until the eve of
24   trial.
25           THE COURT:  All right.  Thank you, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Adams.

 2              MR. ADAMS:  Thank you.

 3              THE COURT:  Ms. Jacks, do you want to

 4    comment on this?

 5              MS. JACKS:  Thank you, Your Honor.

 6              I was talking with other counsel when the

 7    Court asked the question.  But I think the question

 8    was:  Where does the idea that the Government waived

 9    the privilege come from?  Is that --

10              THE COURT:  Well, I guess I was

11    wondering -- I could be wrong on this and be educated

12    on it -- but it doesn't seem to me just intuitive,

13    but if the Government wants to disclose a CI to one

14    defendant that it necessarily waives it to all.  And

15    I think that was what Mr. Adams was saying.  And I

16    guess I was pausing on that because that didn't

17    necessarily seem intuitively right to me.

18              MS. JACKS:  Well, I guess where I got the

19    instruction from was Roviaro itself.  And what the

20    Supreme Court said in that opinion about the

21    privilege was that, "Once the identity of the

22    informer has been disclosed to those who would have

23    cause to resent the communication, the privilege is

24    no longer applicable."  And I cited this in my reply

25    brief.  There is a footnote that directly talks about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 981

1    where a defendant already knew or figured out who the

2    informer was, where the informer died.  In both of

3    those cases the Supreme Court held that there is no

4    privilege.  So I think that's pretty clear that once

5    the Government has chosen to disclose the identity of

6    the informer to somebody who is has a cause to resent

7    or not like the communication, that's it, privilege

8    is gone.

9              THE COURT:  What about, though, the Court

10   saying that I think that this defendant is entitled

11   to this identity, but another person is not?  So it's

12   not where they're making decisions.  They're being

13   ordered by the Court to disclose that.  I wouldn't

14   think that that would necessarily waive their ability

15   to assert it as to other defendants.

16             MS. JACKS:  I would agree with the Court on

17   that, if the basis for the disclosure is that.  I

18   think where the Government discloses it without some

19   court order to somebody that has a cause to resent

20   the communication, then there is no privilege, and

21   every defendant is entitled to that person's

22   identity.

23             And I think one of the things -- and maybe

24   I'm jumping ahead -- but one of the things I pointed

25   out in our reply is I think, to some extent, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 981

1    Government is manipulating the informant privilege.

2    So that they don't want to disclose it to the

3    defendants here in court, but if they've got somebody

4    from SNM that's sitting up in prison that they want

5    to convince to become a government witnesses, their

6    investigators are selectively disclosing the identity

7    of those informers.  And that's inappropriate.  And I

8    think, if the Government is doing that, that

9    privilege as to that confidential informant is

10   waived, and we're entitled to the identity.

11           THE COURT:  Do you know anybody that fits

12   that category?

13           MS. JACKS:  I believe so, yes, and I put

14   that in my declaration.

15           THE COURT:  All right.  Anything else,

16   Ms. Jacks?

17           MS. JACKS:  Well, I was hoping that you'd

18   ask whether we had any questions we'd like to ask Mr.

19   Beck about his analysis, because I had a question.

20   And the question that I had is:  How does Mr. Beck

21   reconcile the position he's taking with Brady versus

22   Maryland?  And I think what's happened in our

23   informant motions is defense counsel has made a

24   showing, or attempted to make a showing to this

25   Court, why a particular supposedly confidential

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 982

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 983

```
 1    informant has information that's relevant, helpful,
 2    and favorable to the defense.  And as I pointed out
 3    in my reply that is a --
 4             THE COURT:  You're saying the identity of a
 5    CI is also just Brady and Kyles?
 6             MS. JACKS:  Right.  I'm saying that under
 7    Kyles v. Whitley, certainly the Government is
 8    obligated by the United States Constitution to turn
 9    over favorable information, and information that
10    could lead to favorable information.  And I think
11    it's pretty obvious, if you're holding a report of an
12    informant who has given favorable information, then
13    information that would help lead to that or help a
14    defendant present that would certainly start with who
15    is that person saying that?
16             THE COURT:  All right.
17             MS. JACKS:  And I don't think it's rocket
18    science.  And I think that -- I guess the other point
19    I would like to make is I think in the cases that the
20    Government is relying on, and focusing on whether the
21    informant testified or didn't testify, the real
22    question is whether the defendant made a showing that
23    the informant had relevant, helpful, favorable
24    information.  And in a lot of these cases the
25    defendant just didn't make that showing, or there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 983

1    no showing of that on the record.  And I think here,

2    in the motions that we've filed, I think we've

3    attempted to do that to the best of your ability.

4              THE COURT:  All right.  Anything else,

5    Ms. Jacks?

6              MS. JACKS:  Not right at the moment.

7              THE COURT:  Thank you, Ms. Jacks.

8              Ms. Fox-Young.

9              MS. FOX-YOUNG:  Thank you, Your Honor.

10             THE COURT:  Ms. Fox-Young.

11             MS. FOX-YOUNG:  Without belaboring the

12   series of very good points already made by defense

13   counsel, I'd just like to add that, of course, the

14   Court has seen issues -- the Court has dealt in the

15   past with the confluence of Roviaro and Brady in

16   cases where the Government --

17             THE COURT:  Remind me what I said then.

18             MS. FOX-YOUNG:  Your Honor, I'm looking at

19   the Padilla case, which is a 2010 case; it's 2010

20   Westlaw 4337819.  And in that case I don't know how

21   many testifying confidential informants were at

22   issue, but it was a far smaller case.  I know there

23   were two defense lawyers who asked, well in advance

24   of trial, not only for the identities of confidential

25   informants, but for a whole lot of other information

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    about them, for the same reasons that defense counsel

2    posit today.  We want to interview them, we want to

3    adequately prepare for trial.

4           In this case, although we don't know how

5    many CIs are at issue, we're talking -- I think

6    tomorrow we'll talk about -- depending upon how

7    efficient we are -- perhaps upwards of 50, far more

8    than the Court addressed in Padilla.  But in Padilla,

9    the Court, I think, in balancing these issues, did

10   determine that an earlier deadline for disclosure of

11   those witness lists was appropriate.  And in Padilla,

12   it was 30 days.

13          And I'd just say that the Government

14   represents to the Court today that it can say exactly

15   who will testify; that these confidential informants

16   are testifying.  There is no way for us to know, you

17   know, once witness lists come, whether or not that

18   is, in fact, true.  And in a case this large, and if

19   we are down the road looking at two trials, each of

20   the respective trial teams will be looking at a large

21   body of information with respect to a large number of

22   confidential informants.  I'd submit that if the

23   Court is not going to be inclined to order the

24   Government to produce the evidence now, that perhaps

25   a three- or four-month deadline in advance of trial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 985

1    would be appropriate.  And I know the Court has

2    considered this before.  But we're talking about so

3    many.

4             THE COURT:  I guess I could be disabused of

5    this idea by the Government.  But it seems like, if

6    they're wrong on this Jencks timing issue, and it's

7    just a Roviaro, if I make the calculus that that has

8    to be disclosed, it has to be disclosed.  It's not

9    something you wait -- they don't have control over

10   the timing -- 30 days before trial.

11            MS. FOX-YOUNG:  Well, Your Honor, I think

12   they are wrong.  And I don't want to reiterate all

13   the arguments --

14            THE COURT:  Wrong on the Jencks timing

15   issue?

16            MS. FOX-YOUNG:  Yes, Judge.

17            And so if that's where the Court is going

18   to rule, and say that they need to be turned over --

19            THE COURT:  Do you have a case out there

20   that says:  No, Government, you don't get to

21   superimpose this Jencks timing issue on top of

22   testifying CIs?  It just seems like this issue would

23   have occurred in precisely this form probably many

24   times.

25            MS. FOX-YOUNG:  I think you're right, your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Honor.  And we have the same frustration that perhaps
 2    you have had looking at the case law.  The simple
 3    moniker that somebody is nontestifying isn't
 4    explored.  But it is a 1974 case.  And I think in
 5    many cases, you know, courts look to -- and many of
 6    these are cited in the briefing the Court has already
 7    received -- but courts look to the materiality
 8    standard, they look to Brady, and often Brady rules
 9    the day.  And, you know, I won't get into specifics
10    on particular confidential informants.  We'll do that
11    tomorrow, and I think subsequent to that.  But I
12    think that analysis takes over.
13            So, no, I don't have a case for the Court
14    that says this 1974 case doesn't apply and Roviaro
15    overrules it.  But I just wanted to remind the Court
16    that we have so many, and a two-week deadline is not
17    going to be workable if you do find that the
18    Government's timing on early Jencks and their
19    argument is correct.
20            THE COURT:  All right.  Thank you,
21    Ms. Fox-Young.
22            I'll hear from you, Mr. Castle, but I'm
23    going to have to give Ms. Bean a break.  During the
24    break, do two things for me.  Mr. Beck, maybe you can
25    talk to some of the defendants that are moving, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   ones we pulled out of the last hearing because there
 2   was not a sufficient factual basis, they're
 3   re-moving, and then the new CI issues, and we're
 4   looking at 50 for tomorrow.  Is there any that are
 5   peculiar to DeLeon, so I could go ahead and hear
 6   those for about a half hour before I start the
 7   detention hearing, and then I can finish up the
 8   detention hearing today.  But maybe we can make use
 9   of the half hour.  So see if you can spot somebody.
10   I won't cut anybody off from the legal issues, so if
11   you've got more to say, we can say it.
12             MR. BECK:  Honestly, Judge, I think you
13   well know, as many as they all have looked at, I've
14   looked at every single one of them.  So for me to try
15   to go through and pick out who is particular to what
16   at this point would be extremely difficult.  So maybe
17   if they can help me in that, think about who is here,
18   that would help me a great deal.  Because I went
19   through every single one of these, but they're kind
20   of packed together right now.
21             THE COURT:  All right.  Well, put your
22   thinking caps on.  I'd like to use -- these hearings
23   are hard to put together, so if we use the half hour
24   profitably, I'd like to do it before we start the
25   detention hearing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 All right.  We'll be in recess for about 15
 2    minutes.
 3                 (The Court stood in recess.)
 4                 THE COURT:  I think you were next,
 5    Mr. Castle.
 6                 Let me ask Ms. Jacks something.  I think
 7    you were the one that said it, Ms. Jacks; you wanted
 8    me to ask Mr. Beck about how this relates to Brady
 9    and Kyles, and those cases?  Wasn't that you?
10                 MS. JACKS:  Yes, it was me.
11                 THE COURT:  Let me ask you the flip-side of
12    that.  Every time I look at a Roviaro case, I don't
13    see Brady and Kyles, those cases in the same
14    paragraph.  So I don't see the cases linking those
15    together either.  What case would you cite for me to
16    look at to say that there is really not something
17    special about CIs; it's just all one big Brady
18    analysis?
19                 MS. JACKS:  Well, I'm not sure that the
20    case really says that.  But there is a case Your
21    Honor cited, and it's in the Government's opposition,
22    and it's actually quoted in their argument, that
23    looks at a Brady analysis as apart from Roviaro, and
24    as apart from Jencks.  And it's the case cited in --
25    it's Banks v. Dretke, which is a Ginsburg opinion.
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 989

```
 1   It's cited in Footnote 2 of the Government's
 2   opposition to our motion to compel.  It's Document
 3   864.  And in that case, the defendant -- it was a
 4   capital case, and there was an informant that the
 5   Government did not reveal to the defendant; the
 6   defendant was convicted, and the case reversed and
 7   remanded the conviction.  The defendant was convicted
 8   and sentenced to death, and the case reversed the
 9   conviction and sentence and remanded it.  And the
10   basis of that was that the Government withheld from
11   the defendant information -- the identity and
12   information regarding a confidential informant that
13   provided relevant, favorable information to the
14   defendant.  And that is based completely on Brady and
15   Kyles and its progeny.  And that's in the absence of
16   the defendants' request for the identity or
17   information from the informant.
18           THE COURT:  Well, I looked at Banks, but I
19   didn't see where they were mixing the Brady and
20   Roviaro decision, that Ginsburg was mixing the two.
21   It seemed to me that she was saying:  Here's what
22   Roviaro said, and -- well, that's the way she
23   analyzed it, the Roviaro case rather than a Brady
24   case.
25           MS. JACKS:  Right, because in that case the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 990

1    defense never made the motion.  They never made that

2    request for the identity of the informant.

3            THE COURT:  Well, but isn't it the other

4    way?  I mean, in Brady, you don't have to make the

5    request; right?  The Government has an obligation,

6    without a request, to produce exculpatory

7    information.  Where with the privilege, the CI

8    privilege, you do have to make the request or you

9    waive it; right?

10           MS. JACKS:  I would agree with that.  I

11   guess, I would say that Brady -- when I've gotten

12   Brady information that's been useful to me, it

13   certainly hasn't been served up without request by

14   the Government.  It's been through defense

15   investigation, and pursuing --

16           THE COURT:  But the law is.

17           MS. JACKS:  That's true.

18           THE COURT:  You don't have to ask for it.

19   But doesn't that mean -- because of the way that

20   those are teed up, one you have to request, the other

21   one you don't even have to request, suggests that I

22   shouldn't be mixing Brady with Roviaro?

23           MS. JACKS:  I don't think so.  The Roviaro

24   decision was pre-Brady.  And I think, as we pointed

25   out in our reply brief, they're really based on the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    same idea, which is the due process principles of the

2    Fifth and Fourteenth Amendment.

3         THE COURT:  That may be true.  But for this

4    timing issue, it seems to me that they could be

5    separate issues.  I mean, you identify CIs under one

6    framework, and then Brady material you analyze under

7    a different framework.  You can't just superimpose

8    the Brady framework on top of the CI framework.

9         MS. JACKS:  I would submit to the Court

10   that the relevant and helpful analysis in Roviaro,

11   which requires disclosure of a CI's identity is

12   identical to the favorable -- relevant and favorable

13   analysis of Brady versus Maryland.  And the case law,

14   I think, subsequently, since Brady versus Maryland,

15   has focused on the Brady issue and on whether -- the

16   timing of Brady disclosures.  But I would submit that

17   if you have a disclosure of an informant that's

18   relevant and helpful to the defendant under Roviaro,

19   that meets the standard of Brady as well.

20        THE COURT:  All right.  Thank you, Ms.

21   Jacks.

22        Mr. Castle?

23        MR. CASTLE:  Your Honor, Ms. Jacks actually

24   addressed some of what I was going to state.  But I

25   think Giglio tells us that Brady trumps any kind of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 992

```
 1    informant protection needs.  Because what Giglio told
 2    us was that, if there was a cooperating witness, that
 3    information that goes to their credibility has to be
 4    turned over to the defense under the Brady concept.
 5    And it has to be turned over early enough so the
 6    defense can use it.
 7            So, if the Court looks at the development,
 8    which is, in '57, we had -- the Jencks decision came
 9    out at the same time as the Roviaro decision.  Then
10    the next year the Jencks Act went into effect.  And
11    then in '63, when Brady came out, Brady said, if it's
12    exculpatory or it can lead to exculpatory
13    information, then they need to turn it over
14    sufficiently in advance for the defense to use.  They
15    did not create in Brady an exception for confidential
16    informants.  And obviously, it was only four years
17    earlier that they decided Roviaro, and only three
18    years earlier the Jencks Act came into being.  So it
19    would seem that if they were carving out exceptions
20    for either informants or exculpatory information that
21    comes from a witness that the prosecution wants to
22    call for whatever reason, that they would have done
23    so.
24            So let me give the Court maybe a concrete
25    example of why timing matters.  A lot of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 993

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 994

1   informants that various of the inmates have filed,

2   through their lawyers, are exculpatory because they

3   say someone else committed the murder, or ordered the

4   murder.  The prosecution is obviously going to

5   present witnesses who say the defendant either did

6   the murder or ordered the murder.  And what they're

7   going to do is not just put that witness up.  They're

8   going to vet that witness' information.  They're

9   going to see if that witness was in a cellblock, or

10  had the ability to observe.  And they're going to

11  bolster properly the credibility of their witness.

12  And that's taken quite a while.  They've been working

13  on it for over -- a number of years.  And they're

14  going to do that, okay.

15          Now, under their proposal, either if

16  they've labeled that witness, that person as someone

17  they're going to call, they want to hand that

18  information over to us two weeks prior to trial,

19  we're never going to be able to vet that information,

20  if it's exculpatory for our client, sufficiently to

21  prepare for trial.

22          And I'll give the Court a more concrete

23  example.  If the informant was in the facility -- and

24  that provided exculpatory information was in the

25  facility, it takes us now approximately five months

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 994

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 995

1   to get records from Department of Corrections on an

2   IPRA request, to get their placement records to show

3   where they were on the day of whatever murder.

4           But it's not just that.  We're entitled --

5   if it's an exculpatory witness, we're entitled to sit

6   down with that witness, and what if they say, Hey,

7   there were four other guys with me that saw the same

8   thing?  We then have to go out and interview those

9   four people, and we have to vet their information and

10  find it out.

11          It's not just the statement.  What the

12  Government doesn't acknowledge is that the statement

13  can lead to other exculpatory information.  And what

14  their construct basically does is give them a huge

15  advantage.  Their witnesses can be vetted, their

16  witnesses can be shown to have certain levels of

17  credibility.  And then we get a last-minute dump,

18  where an exculpatory witness we're not going to be

19  able to do the same thing.  Brady cautions against,

20  that say if you tack too close to the wind on that,

21  you're going to have an appellate issue, and an

22  appellate error.  I think this Court is probably

23  trying to avoid that.

24          And so I would encourage the Court to

25  analyze this, that Brady trumps either Jencks or --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 995

```
 1    well, it trumps Jencks because of the whole analysis

 2    is that if it's exculpatory, that piece of evidence

 3    doesn't belong to the Government.  It doesn't belong

 4    to anyone.  All of a sudden, when it has exculpatory

 5    value, the defense wants to put that witness and that

 6    evidence on.  And so it kind of loses this Jencks

 7    idea of the Government wanting to protect the

 8    witness.

 9            And if the Court thinks about it for a

10    minute, the whole idea of protection doesn't really

11    apply to a witness that's going to help defendants.

12    It's to the people that are going to want to hurt

13    defendants.  And so I think, even if we look at a

14    protection analysis, that would go in favor of the

15    defense.

16            THE COURT:  All right.  Thank you,

17    Mr. Castle.

18            MS. JACKS:  Your Honor --

19            THE COURT:  Let me, before I forget, I want

20    to address a question to Ms. Fox-Young on her

21    Padilla.  You may remember more about Padilla or have

22    read it more recently than I, but my memory in that

23    case was that there was a lot of agreements going on

24    in the courtroom.  And I was -- the order that I

25    think you're referring to was more reflecting what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 997

```
 1    the defense counsel there indicated they could live

 2    with.  So it wasn't as if I was pulling 30 days out

 3    of the air, or something like that.  It was more

 4    that -- Twohig and Gorence, I think, were the two

 5    attorneys on that -- that said, Yeah, if we get this

 6    information 30 days before trial, that gives us

 7    plenty of time to get ready for the trial.  Is your

 8    memory different on that?

 9            MS. FOX-YOUNG:  Your Honor, I can't tell

10    from reading the opinion, reading between the lines,

11    how much agreement there was.

12            THE COURT:  I think what they needed from

13    me was not so much the 30 days, the protective order,

14    those sort of things, Twohig and Gorence could agree

15    with, they could live with that.  It gave them plenty

16    of time, and it also balanced the interests of the

17    Government trying to protect some of their witnesses,

18    not giving them too much lead.  So my memory is that

19    was kind of -- what they needed from me was to make

20    the Roviaro call of whether this was information or

21    whether the CI was -- the identity needed to be

22    disclosed.

23            MS. FOX-YOUNG:  I think that's right,

24    Judge.  And I think, notably, Jencks doesn't come up

25    at all there, just because in that case, as here,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 997

```
 1   we're asking for identities.  And I think there was,

 2   probably broad-based agreement, with the Government

 3   on that point.  And it was just the question of with

 4   the number of CIs they were talking about prior to

 5   trial, what kind of time they'd need to get ready.

 6   Obviously, that's all magnified here.  But it does

 7   read as if there was some --

 8           THE COURT:  I don't think I've heard this

 9   argument that the Government is raising here, that

10   Jencks protects the identity until Jencks requires

11   them to disclose it.  And that's -- when I go to the

12   case law, I don't think I've heard it before, and I

13   don't see it being raised in precisely that form.

14           What I think we were doing in Padilla was

15   balancing the interests in a pragmatic way in which,

16   you know, Can the Government live with this?  Can the

17   defendants live with this?  To try to protect

18   witnesses, but also get into their hands in a doable

19   time.  And so -- but what they needed from me was the

20   Roviaro analysis of:  Does this witness need to be

21   disclosed?  And I said it did, and then we figured

22   out how it was done and when it was done.

23           MS. FOX-YOUNG:  I think that's right.  And

24   the Court gave ample time.  And I guess, one of the

25   things I didn't say earlier, there is a parallel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 998

```
 1    between Padilla and this case, in that they weren't

 2    looking for statements.  They weren't looking for

 3    what is properly Jencks material, just like here,

 4    we're looking for identities.  So it wasn't raised.

 5    And I think that is why you didn't hear that argument

 6    in that case, and I don't think it's properly raised

 7    here.

 8              But I'll let, I think, Mr. Castle get back

 9    to finishing, unless the Court --

10              THE COURT:  I think he was finished.  I was

11    about to go to Ms. Jacks.

12              Did you have anything else, Mr. Castle?

13              MS. JACKS:  I did, but I had a chance to

14    look Banks up.

15              THE COURT:  Did you have anything else, Ms.

16    Fox-Young?

17              MS. FOX-YOUNG:  No, Your Honor.

18              THE COURT:  Were you done, Mr. Castle?

19              MR. CASTLE:  Yes, Your Honor.

20              THE COURT:  All right.  Ms. Jacks?

21              MS. JACKS:  I just wanted to go back to the

22    question about what happens -- how do you reconcile

23    Roviaro with the language from Justice Ginsburg in

24    Banks v. Dretke?  And I just had a chance to reread

25    it.  And I wanted to draw the Court's attention to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    two things.  In the Roviaro case, between page 60 and

 2    61, the Court discusses the informant's privilege.

 3    And it says this:  "Where the disclosure of an

 4    informer's identity or of the contents" --

 5             THE COURT:  You're reading Banks or you're

 6    reading Roviaro?

 7             MS. JACKS:  Roviaro.  "Where the disclosure

 8    of an informer's identity or of the contents of his

 9    communication is relevant and helpful to the defense

10    of an accused, or is essential to a fair

11    determination of the cause, the privilege must give

12    way."  In other words, the privilege doesn't exist,

13    once the showing relevant --

14             THE COURT:  I think that's what Ginsburg

15    says in Banks, too.  That's what her reading of

16    Roviaro is.

17             MS. JACKS:  Well, hers and a majority of

18    the Supreme Court.  The way Justice Ginsburg

19    interprets that is at page 353, U.S. 53.  The issue

20    of evidentiary law in Roviaro is whether or when the

21    Government is obliged to reveal the identity of an

22    undercover informer the Government does not call as a

23    trial witness.  The Court there stated that no

24    privilege obtains "where the disclosure of an

25    informer's identity, or the" --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1000

```
 1              THE COURT:  Tell me where the quotation
 2    starts after she says that.
 3              MS. JACKS:  The Court there stated that,
 4    "No privilege obtains" -- quote, 'where the
 5    disclosure of an informer's identity or of the
 6    contents of his communication is relevant and helpful
 7    to the defense of the accused' -- end quote.
 8    "Accordingly, even though the informer in Roviaro did
 9    not testify, we held that the disclosure of his
10    identity was necessary because he could have
11    amplified or contradicted the testimony of Government
12    witnesses."
13              THE COURT:  Yeah.
14              MS. JACKS:  So I think what the Supreme
15    Court is saying is that once the showing of relevant
16    and helpful is made, the privilege is gone, and
17    disclosure should be immediate.  And I think that's
18    in line --
19              THE COURT:  Tell me, though -- give me the
20    link, though.  I mean, I think Mr. Beck would have to
21    agree with that reading, that the privilege doesn't
22    exist.  But tell me what the link is to then say:
23    All right, the Government has to make an immediate or
24    timely disclosure.  How do you fill in that blank?
25              MS. JACKS:  Well, that is what I would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1001

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226002

 1    argue is filled in by the law of Brady, and by the

 2    rules of professional ethics, which is that, if a

 3    prosecutor becomes aware of Brady information, they

 4    have the duty --

 5              THE COURT:  Once the Court makes a

 6    determination that it satisfies the Roviaro standard,

 7    then it's probably getting dangerously close, if not

 8    on point with Brady material.  The name, the

 9    identity.

10              MS. JACKS:  Correct.  That would be my

11    analysis.

12              THE COURT:  All right.  Thank you,

13    Ms. Jacks.

14              Anyone else on the defendants' side want to

15    say anything on the legal issue as to the timing,

16    what I'm calling the Jencks issue?

17              All right.  Mr. Beck, I'll give you the

18    final word on that issue.  I guess it's final until

19    the Baca defendants show up tomorrow.

20              MR. BECK:  That's right.

21              THE COURT:  Everybody wants me to ask you,

22    so I'll ask you:  What do you do with Brady?  Why

23    isn't the analysis that Ms. Jacks and I just did, if

24    the privilege doesn't exist once the Court makes the

25    determination on the Roviaro that the information is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    relevant and helpful, once I make that, and there is
 2    no privilege, how, then, can you not disclose that
 3    under Brady?
 4              How did I do, Ms. Jacks?  Is that the
 5    question?
 6              MS. JACKS:  Yes.
 7              MR. BECK:  So I guess I think what you're
 8    saying is that the determination under Roviaro is the
 9    same as the determination under Brady.
10              THE COURT:  Well, I'm being -- I'm not
11    doing that.  Maybe the defendants would like me to do
12    that, but I'm doing something slightly different.
13    I'm saying:  You do the Roviaro, and if you determine
14    that the information is relevant and helpful, then
15    the privilege doesn't exist for the Government to not
16    disclose the identity.  Then the question becomes:
17    Okay, what, then, still forces the Government to
18    disclose it?  And it would seem to me that if the
19    Court has determined it's relevant and helpful to the
20    defendant, then it's getting probably very close to
21    Brady, but in any case, you don't have the ability to
22    withhold it anymore.  So it's not a Jencks issue.
23    It's just you're sitting there with information that
24    the Court's determined is relevant and helpful, I
25    don't know how you, then, cannot disclose that,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1003

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228 of 1004

1    particularly given Ginsburg and Roviaro saying why

2    you're requiring the disclosure, that these people be

3    interviewed pretrial.

4          MR. BECK:  Right.  And so I guess what the

5    Court's distinguishing is that under Roviaro, you're

6    getting particularly close to Brady, without actually

7    making it Brady; right?

8          THE COURT:  Yeah, they weren't using yet

9    Brady language.  They were using Roviaro language.

10         MR. BECK:  Yeah.  And so I guess this goes

11   back to a point that the Court hit earlier with

12   everyone here, including me, is that I wish there

13   were something, and it seems like there should be

14   something that says easily --

15         THE COURT:  Well, but isn't it because the

16   Government hasn't raised the point that you are

17   raising?

18         MR. BECK:  I think it may well be.  And so

19   I have found -- and we cite in our brief -- district

20   court decisions, I think, and circuit court that says

21   Roviaro does not apply.  But I agree with my

22   colleagues here that they didn't go through this

23   analysis, raising the Brady issue here.  And from

24   what I'm sort of following along with, and reading

25   here is, I think they've got a valid argument here,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1004

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229005

```
 1    that perhaps Roviaro and Brady are very close.
 2              THE COURT:  But the district court cases
 3    that you cite, in those cases was the United States
 4    raising the issue that this is going to be a
 5    testifying CI, we do not have to disclose this person
 6    until really -- under Jencks, until that person
 7    testifies at trial?
 8              MS. JENKS:  Right.  And I don't have --
 9              THE COURT:  And the district court said,
10    Fine.
11              MR. BECK:  The district court said, Fine.
12    And I don't have the Banks decision.
13              THE COURT:  Do you have any circuit courts
14    that have gone that far?
15              MR. BECK:  I can look before tomorrow.  I
16    think the Third Circuit did in a 2002 decision that
17    I'll have to look back at.  And the Court may have
18    easier and quicker access to it than I do.
19              THE COURT:  Do you have that?
20              MR. BECK:  Yes.
21              THE COURT:  Who are the judges on it?
22              MR. BECK:  I don't have that in front of
23    me.
24              THE COURT:  It's not a fellow by the name
25    of Alito, is it?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1005

```
1            MR. BECK:  I should hope not.  It's
2    probably not -- well, it may be -- it's a 2002
3    decision.  That's cited on page 11 of Document 824.
4    It's United States against Casseus -- if I'm
5    pronouncing that right -- 282 F.3d 253 is where that
6    decision starts.
7            So going back to the Banks decision, it
8    says, In a case where -- and I'm paraphrasing here,
9    because I don't have it in front of me -- In a case
10   where there is a confidential informant, who the
11   United States will not offer as a testifying witness.
12           So that's what I'm saying, you look at that
13   language in Roviaro, you look at that language in
14   Banks, and they're distinguishing, with the
15   confidential informant that the United States will
16   not offer as a witness.
17           THE COURT:  Well, I will give you this:
18   That, oftentimes, when people talk about Roviaro,
19   they do talk about the fact that it involved a
20   witness that the Government was not calling at trial.
21   I mean, that seems to be one of the things they often
22   talk about.  That's what Ginsburg talks about in her
23   paragraph on Roviaro and Banks.  But it seems to me
24   that's a different issue than saying, therefore,
25   Jencks then controls the timing of people who do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1006

```
 1    testify at trial.  Do you see what I'm saying?
 2            MR. BECK:  I think so.  And I guess what
 3    I'm saying is I think the link is that, if they're
 4    not falling under Roviaro, then that's where those
 5    decisions that come in that say they're just subject
 6    to the general rule that the United States doesn't
 7    have to provide a witness list before trial, which
 8    would be effectively Jencks; right?  And so they ask
 9    then how -- you know, how do we know whether the
10    United States actually is going to have these people
11    testify versus just saying that they are, and then
12    not?
13            I've said that we're going to -- for all of
14    these I've said, if we change our intention, we will
15    go back on that, and let you know for all of these we
16    intend to produce their statements as Jencks
17    material.  So I think maybe that's the link that
18    we're looking at is that, when we disclose Jencks for
19    these testifying witnesses, their statements that we
20    would provide as Jencks material would include the
21    discovery that they've provided with their -- so the
22    discovery we're looking at now would be included in
23    that.  So you would say, Oh, I know that CI 23 is
24    this testifying witness, if that makes sense.
25            So that's how I picture their identities
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    falling under Jencks, is that if they're testifying
 2    witnesses, their statements that we produce under
 3    Jencks include the discovery that they already have,
 4    which would then identify those people as those CIs,
 5    if that makes sense.
 6              THE COURT:  All right.  Anything else you
 7    want to say on this legal issue?
 8              MR. BECK:  I don't think so at this time.
 9              As I said, I probably need to go back and
10    look at Banks, because I see where the Court is
11    leaning on this, and I think it's -- I mean, you said
12    it's a hard issue, and this is where you make your
13    money.  And I agree.  I'm not saying that there is a
14    great decision out there, because if there was, I
15    think we would have given it to you or they would
16    have.  I think it's a hard issue that we all
17    struggled with.  And it sounds like you have, too,
18    and we'll all continue to struggle with it.
19              And that's why, as I said at the beginning
20    here, I think it's helpful -- it's what -- we sent
21    out an email today -- I think it's helpful for all of
22    us to know which way you're going on this, because I
23    think, before we know which way the Court is leaning,
24    we're spinning our wheels a lot.  And we can probably
25    settle on a lot of these things, at least with regard
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1008

```
 1    to the timing, and who is doing what, once we get a
 2    couple -- the Court's headway on a couple of these
 3    things, if that makes sense.
 4              THE COURT:  All right.  Thank you, Mr.
 5    Beck.
 6              Well, I'll take a look at it overnight.  I
 7    have been working on it.  But I'm not sure that I'm
 8    going to be better informed than I am now.  So I
 9    guess the rules of engagement going forward, unless
10    somebody brings something more to my intention than
11    they have tonight, or I spot something, is that I do
12    think that I do the Roviaro analysis, just like I
13    tried to do at the December 1st hearing.  I will make
14    a call.  And if the information is relevant and
15    helpful, then I will order the Government to disclose
16    it without reference to the Jencks deadlines.  So
17    that I think, once I make that determination, it's
18    probably difficult for the defendant to take the
19    position that they cannot -- they shouldn't have to
20    disclose the identity, the informant's name.  So I
21    will overrule that objection by the Government.
22              I will allow the Government on an
23    informant-by-informant basis, if you feel like that
24    informant is particularly endangered, or there is
25    something special about that, to make a pitch, as I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1009

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 1010

1    think occurred in the Padilla case, that it be

2    disclosed attorneys' eyes only to that particular

3    defendant and attorney, and/or that there be

4    something different as far as timing on that.  But I

5    think that those will just have to be worked out on

6    an informant-by-informant basis.  And if there is

7    nothing particularly unusual about that informant,

8    then I think the general rules ought to apply that

9    it's Brady information, Brady-like information, and

10   it should be disclosed so that the defendant can,

11   through investigation and interview, try to mine that

12   information for material that they can use in the

13   preparation for trial.

14          Ms. Wild, do I need to shut her down and do

15   a detention hearing?  All right.

16          Tomorrow, when everybody comes back -- and

17   please come back -- sit in the places that you are

18   sitting now.  Tomorrow we'll be integrating in the

19   additional Baca defendants, so you'll need to sit

20   here, and they will largely be over in that corner.

21   But come back in and sit where you're sitting.

22          Anything else, Ms. Wild?

23          MS. DUNCAN:  Your Honor?

24          THE COURT:  Hold on a second.  Let me hear

25   from Mr. Beck first.  Did you have something that you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1010

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1011

 1    wanted to say before we go into the detention

 2    hearing?

 3              MR. BECK:  No.  I thought I did, but no.

 4              THE COURT:  All right.  Ms. Duncan?

 5              MS. DUNCAN:  Your Honor, we filed a motion

 6    in both 4268 and 1613 to allow me to share pleadings

 7    related to CIs between the two cases.  There is a lot

 8    of overlap in requests for disclosure of CIs.

 9              THE COURT:  Is everybody familiar with the

10    motion and order that Ms. Duncan has filed?  Anybody

11    not know what she's talking about?  I wrote on the

12    bottom of this after I reviewed it, "Is everyone on

13    board?"  I couldn't quite tell.  Is there anybody

14    that opposes Ms. Duncan's motion?  This is motion

15    Document 321, filed both in the DeLeon case and the

16    Baca case, 4268, 1613?  I'm not hearing -- yeah, the

17    one that's in 4268 has a different docket number.  So

18    I'm giving you the docket number in 1613.  Anybody

19    have any objections to it?

20              Not hearing any objections, it's signed,

21    and it will be entered.

22              Anything further, Ms. Duncan?

23              MS. DUNCAN:  No, Your Honor.  Thank you.

24              THE COURT:  All right.  Anybody else?  Ms.

25    Sirignano?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1011

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1012

```
 1              MS. SIRIGNANO:  Your Honor, just one
 2     request.  Which order we're going to go tomorrow?
 3     Are we going to keep going with the 4268, the DeLeon
 4     case, and then move to Baca?
 5              THE COURT:  Yeah, if y'all want to sit down
 6     and come up with a batting order -- I'm not
 7     particular.  I guess, in my mind, that would make
 8     sense.  Let's go ahead and finish -- I hope I'm
 9     visualizing it right -- the Molina murder, and deal
10     with that one, get that CI all taken care of for all
11     defendants that want that information, and then move
12     to the others.  But I'm open, if the defendants want
13     to create a batting order, and we just go down the
14     list tomorrow.
15              MS. SIRIGNANO:  Thank you, Your Honor.
16              THE COURT:  All right.  Anybody else?
17              All right.  I appreciate everybody's
18     presentations.  See y'all tomorrow.
19              (The Court stood in recess.)
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1012

```
1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13       In testimony whereof, I have hereunto set my

14   hand on February 24, 2017.

15

16

17

18       _____
         Jennifer Bean, FAPR, RMR-RDR-CCR
19       Certified Realtime Reporter
         United States Court Reporter
20       NM CCR #94
         333 Lomas, Northwest
21       Albuquerque, New Mexico 87102
         Phone:  (505) 348-2283
22       Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1013

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                        CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.
     and
8
     UNITED STATES OF AMERICA,
9
          Plaintiff,
10
          VS.                        CR. NO. 16-1613 JB
11
     ANTHONY RAY BACA, et al.
12
          Defendants.
13
          Transcript of Motion Proceedings before
14   The Honorable James O. Browning, United States
     District Judge, Albuquerque, Bernalillo County,
15   New Mexico, commencing on February 8, 2017.

16   For the Government:  Ms. Maria Armijo; Mr. Matthew
     Beck; Mr. Randy Castellano
17
     For the Defendants:  Mr. Brock Benjamin; Mr. Richard
18   Sindel; Ms. Cori Harbour-Valdez; Mr. Patrick Burke;
     Mr. Jim Castle; Mr. Robert Cooper; Mr. Dean Clark;
19   Mr. Doug Couleur; Mr. James Lahann; Mr. Orlando
     Mondragon; Mr. John Granberg; Mr. Noel Orquiz; Mr.
20   Nathan Chambers; Mr. Billy Blackburn; Mr. Steve
     Potolsky; Mr. Santiago Hernandez; Mr. Joe Spencer;
21   Ms. Amy Jacks; Mr. Richard Jewkes; Mr. B. J. Crow;
     Mr. Marc Lowry; Ms. Theresa Duncan; Ms. Amy
22   Sirignano; Mr. Christopher Adams; Mr. Michael Davis;
     Ms. Carey Bhalla; Mr. Ryan Villa; Ms. Justine
23   Fox-Young; Mr. Donovan Roberts; Ms. Erlinda Johnson;
     Ms. Angela Arellanes; Mr. Todd Hotchkiss; Mr. Don
24   Kochersberger; Mr. Barry Porter; Mr. Diego Esquibel;
     Mr. Marc Grano; Mr. Ahmad Assed; Mr. Gregory Acton;
25   Ms. Marcia Morrissey

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1014

```
 1              THE COURT:  Good morning everyone.  I
 2    appreciate everyone making themselves available to me
 3    this morning.
 4              All right.  I hate to do this to everybody
 5    in the DeLeon case, but I think I've got to get
 6    entries of appearance again.  We've had some counsel
 7    change, and of course, we've got all the people in
 8    the Baca case, so just bear with me.  Ms. Wild and I
 9    talked about this, and we think it's better to make
10    our record clean.  So I'm going to call both cases.
11              So I'll call United States of America
12    versus Angel DeLeon, Criminal Matter No. 15-CR-4268
13    JB.
14              If counsel will enter their appearances for
15    the Government.
16              MS. ARMIJO:  Good morning, Your Honor.
17    Maria Armijo, Randy Castellano, and Matthew Beck on
18    behalf of the United States.
19              THE COURT:  All right.  Ms. Armijo, Mr.
20    Castellano, Mr. Beck, good morning to you.
21              And for Defendant Joe Lawrence Gallegos?
22              MR. SINDEL:  Richard Sindel here with Brock
23    Benjamin.
24              THE COURT:  All right.  Mr. Sindel, Mr.
25    Benjamin, Mr. Gallegos, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1015

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1016

```
 1              And for Defendant Edward Troup?

 2              MS. HARBOUR-VALDEZ:  Good morning, Your

 3     Honor.  Cori Harbour-Valdez, along with Pat Burke on

 4     behalf of Mr. Troup.

 5              THE COURT:  All right.  Ms. Harbour-Valdez,

 6     Mr. Burke, Mr. Troup, good morning to you.

 7              And for Defendant Leonard Lujan?

 8              MR. CLARK:  Good morning, Your Honor.  Dean

 9     Clark on behalf of Leonard Lujan.

10              THE COURT:  Mr. Clark, good morning to you.

11     Mr. Lujan, good morning to you.

12              And for Defendant Billy Garcia?

13              MR. CASTLE:  Good morning, Your Honor.  Jim

14     Castle and Bob Cooper appearing on behalf of

15     Mr. Garcia.

16              THE COURT:  All right.  Mr. Castle, Mr.

17     Cooper, Mr. Garcia, good morning to you.

18              And for Eugene Martinez?

19              MR. COULEUR:  Your Honor, Doug Couleur for

20     Eugene Martinez.

21              THE COURT:  Mr. Couleur, good morning to

22     you.  Mr. Martinez, good morning to you.

23              And for Defendant Allen Patterson?

24              MR. LAHANN:  Good morning, Your Honor.

25     Jeff Lahann on behalf of Mr. Patterson.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1016

```
 1              THE COURT:  Mr. Lahann, Mr. Patterson, good
 2    morning to you.
 3              THE DEFENDANT:  Good morning, Your Honor.
 4              And for Defendant Christopher Chavez?
 5              MR. MONDRAGON:  Good morning, Your Honor.
 6    Orlando Mondragon and John Granberg for Mr. Chavez.
 7              THE COURT:  All right.  Mr. Mondragon, Mr.
 8    Granberg, Mr. Chavez, good morning to you.
 9              And for Defendant Javier Alonso?
10              MR. ORQUIZ:  Good morning, Your Honor.
11    Noel Orquiz and Nathan Chambers for Mr. Alonso.
12              THE COURT:  All right.  Mr. Orquiz, Mr.
13    Chambers, Mr. Alonso, good morning to you.
14              And for Defendant Arturo Arnulfo Garcia?
15              MR. BLACKBURN:  Good morning, Your Honor.
16    Billy Blackburn on behalf of Mr. Garcia.
17              THE COURT:  Mr. Blackburn, Mr. Garcia, good
18    morning to you.
19              For Defendant Mario Rodriguez?
20              MR. HERNANDEZ:  Good morning, Your Honor.
21    Santiago Hernandez and Steve Potolsky on behalf of
22    Mr. Rodriguez.
23              THE COURT:  All right.  Mr. Hernandez, Mr.
24    Potolsky, Mr. Rodriguez, good morning to you.
25              And for Defendant Mauricio Varela?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. SPENCER:  Good morning, Your Honor.
 2   Joe Spencer on behalf of Mr. Varela.
 3              THE COURT:  Mr. Spencer, good morning to
 4   you.  Mr. Varela, good morning to you.
 5              And for Defendant Daniel Sanchez?
 6              MR. JEWKES:  Good morning, Your Honor.
 7   Richard Jewkes and Amy Jacks representing Mr.
 8   Sanchez, who is present before the Court.
 9              THE COURT:  All right.  Mr. Jewkes, Ms.
10   Jacks, Mr. Sanchez, good morning to you.
11              And for Defendant Conrad Villegas?
12              MR. CROW:  Good morning, Your Honor.  B.J.
13   Crow for Mr. Villegas.
14              THE COURT:  Mr. Crow, Mr. Villegas, good
15   morning to you.
16              And for Defendant Anthony Ray Baca?
17              MR. LOWRY:  Good morning, Your Honor.  Marc
18   Lowry on behalf of Anthony Ray Baca, joined by Teri
19   Duncan.
20              THE COURT:  All right.  Mr. Lowry, Ms.
21   Duncan, Mr. Baca, good morning to you.
22              THE DEFENDANT:  Good morning, Your Honor.
23              THE COURT:  And for Defendant Christopher
24   Garcia?
25              MS. SIRIGNANO:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1018

```
 1    Amy Sirignano and Christopher Adams on behalf of Mr.

 2    Christopher Garcia.

 3            THE COURT:  Ms. Sirignano, Mr. Adams, Mr.

 4    Garcia, good morning to you.

 5            And for Defendant Carlos Herrera?

 6            MR. DAVIS:  Good morning, Judge.  Michael

 7    Davis and Carey Bhalla on behalf of Mr. Herrera.

 8            THE COURT:  All right.  Mr. Davis,

 9    Ms. Bhalla, Mr. Herrera, good morning to you.

10            And for Defendant Rudy Perez?

11            MS. FOX-YOUNG:  Good morning, Your Honor.

12    Justine Fox-Young and Ryan Villa on behalf of Mr.

13    Perez.

14            THE COURT:  Ms. Fox-Young, Mr. Villa, Mr.

15    Perez, good morning to you.

16            And for Defendant Andrew Gallegos?

17            MR. ROBERTS:  Good morning, Your Honor.

18    Donovan Roberts on behalf of Andrew Gallegos.

19            THE COURT:  Mr. Roberts, Mr. Gallegos, good

20    morning to you.

21            And for the Defendant Santos Gonzalez?

22            MS. JOHNSON:  Good morning, Your Honor,

23    Erlinda Johnson on behalf of Mr. Gonzalez.

24            THE COURT:  Ms. Johnson, Mr. Gonzalez, good

25    morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1019

```
 1              And for Defendant Shauna Gutierrez?

 2              MS. ARELLANES:  Angela Arellanes for Ms.

 3    Gutierrez.

 4              THE COURT:  All right.  Ms. Arellanes, Ms.

 5    Gutierrez, good morning to you.

 6              All right.  The court will call United

 7    States of America versus Anthony Ray Baca, et al.,

 8    Criminal Matter No. 16-1613 JB.

 9              For Defendant Anthony Baca?

10              MS. DUNCAN:  Your Honor, Theresa Duncan and

11    Marc Lowry on behalf of Mr. Baca.

12              THE COURT:  All right.  Mr. Lowry, Ms.

13    Duncan, Mr. Baca, good morning to you.

14              Again for Defendant Christopher Garcia?

15              MS. SIRIGNANO:  Your Honor, Amy Sirignano

16    and Christopher Adams on behalf of Christopher

17    Garcia.

18              THE COURT:  All right.  Ms. Sirignano, Mr.

19    Adams, Mr. Garcia, good morning again to you.

20              For Defendant Manuel Jacob Armijo?

21              MR. HOTCHKISS:  Good morning, Your Honor.

22    Todd Hotchkiss on behalf of Mr. Armijo.

23              THE COURT:  Mr. Hotchkiss, Mr. Armijo, good

24    morning to you.

25              For Defendant Sergio Loya Rodriguez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1020

1      MR. KOCHERSBERGER:  Good morning, Your

2  Honor.  Don Kochersberger on behalf of Mr. Rodriguez,

3  who is present.

4      THE COURT:  All right.  Mr. Kochersberger,

5  Mr. Rodriguez, good morning to you.

6      For Defendant Manuel Benito?

7      MR. PORTER:  Good morning, Your Honor.

8  Barry Porter on behalf of Manuel Benito.

9      THE COURT:  Mr. Porter, Mr. Benito, good

10  morning to you.

11      For Defendant Vincent Garduno?

12      MR. ESQUIBEL:  Good morning, Your Honor.

13  Diego Esquibel on behalf of Mr. Garduno.

14      THE COURT:  Mr. Esquibel, Mr. Garduno, good

15  morning to you.

16      And for Defendant Mandel Lon Parker?

17      MR. GRANO:  Good morning, Your Honor.  Marc

18  Grano on behalf of Mr. Parker.

19      THE COURT:  All right.  Mr. Grano,

20  Mr. Parker, good morning to you.

21      For Defendant Daniel Archuleta?

22      MR. ASSED:  Good morning, Your Honor.

23  Ahmad Assed on behalf of Mr. Archuleta.

24      THE COURT:  All right.  Mr. Assed, Mr.

25  Archuleta, good morning to you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1021

```
 1              And again for Daniel Sanchez?

 2              MR. JEWKES:  Good morning again, Your

 3   Honor.  Richard Jewkes and Amy Jacks representing Mr.

 4   Sanchez.

 5              THE COURT:  All right.  Good morning again

 6   to you, Mr. Jewkes, Ms. Jacks, Mr. Sanchez.

 7              And for Anthony Cordova?

 8              MR. ACTON:  Good morning, Your Honor.

 9   Gregory Acton and Marcia Morrissey on behalf of

10   Anthony Cordova.

11              THE COURT:  Mr. Acton, Ms. Morrissey, Mr.

12   Cordova, good morning to you.

13              Well, I've been advised there were maybe

14   some incidents last night and today.  Help me out,

15   guys, okay?  If you've got to do your thing, you got

16   to do your thing.  But try not to do it around these

17   hearings, okay?  It makes it more complicated.  I'm

18   trying to work with you, trying to make these things

19   work.  So don't complicate things.  It just makes it

20   more difficult.  So help me out, okay?  If you've got

21   to do your thing, don't do it around these hearings.

22   We've got to get you here safe, got to get people

23   here safe.  I'm trying to work with you.  So help me

24   out on that.

25              All right.  Yesterday, I asked everybody in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1022

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 1023

1    the DeLeon case, and so now I'm asking everybody in

2    the Baca case, there has been a motion filed to allow

3    counsel to access sealed pleadings in related cases.

4    I think this is a motion that's known by all the

5    parties.  Ms. Duncan and Mr. Lowry filed it on behalf

6    of Mr. Baca; many people have joined it.  It's a

7    little hard for me to figure out to who all has

8    joined it, who doesn't oppose it, who doesn't care.

9              So I'm asking the Baca group, because

10   everybody in the room yesterday in the DeLeon group

11   had no problem with this, no opposition to it.  But I

12   want to get it entered.  Does anybody in the Baca

13   case have any opposition to this?  First of all, does

14   everybody know what motion I'm talking about?  Okay,

15   everybody is nodding their head yes.  Anybody have

16   any opposition to this?

17             All right.  I have signed it.  I'm handing

18   it to Ms. Wild.  We'll get that entered so that we

19   can get those documents to you.

20             Yesterday, we had a fairly robust

21   discussion in the DeLeon case about CIs, and

22   particularly what I call the Jencks issue, and that

23   is the timing of the disclosure.

24             I worked pretty late last night, worked

25   again this morning, working in the vestibule looking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1023

```
 1   at these cases.  I'm going to have to do some working
 2   with some of the Tenth Circuit language from Pennick
 3   and from Baca.  And there is another third case from
 4   2007 -- it escapes my mind right at the moment -- but
 5   I'm going to have to work with that.  I'm still
 6   inclined to say what I said last night, is that I'm
 7   inclined to find that if the showing is made under
 8   Roviaro that the information is helpful and relevant,
 9   that, then, the Government cannot just wait until
10   trial, if the person is a testifying CI, to disclose
11   it under Jencks.  They don't have that control.
12            Instead, if it's something that may be
13   more -- something that can be required earlier to try
14   to help the defendant prepare the case.  There is
15   some language in Pennick that I'm going to have to
16   deal with to get to that point.  But I am still
17   inclined -- that's where I was last night -- to try
18   to write the opinion in that way.  There may be some
19   need in some particular situations for a protective
20   order in which it's attorneys' eyes only.  There may
21   be some situations in which timing is delayed
22   somewhat, but still assure that the defendant gets
23   the information in time to use it at trial.
24            Most of the cases, the district court cases
25   that I looked at, that the Government had pointed to,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1024

1    seemed to me to be cases both of my own and of other

2    district courts in the nation in which there was some

3    give and take to try to make it work.  And so I have

4    done that in the past.  And I've told the Government

5    they probably need to signal it.  If there are some

6    of these CIs that they're fighting on principle, but

7    it's not really going to put anybody in danger, then

8    we may not want to spend a lot of time on those.  But

9    I'm open to others in which some special precautions

10   need to be taken.

11           But I don't want to give the Baca

12   defendants -- I don't want to preclude them from that

13   robust argument yesterday.  So I give the Baca

14   defendants an opportunity to weigh in on this issue.

15   I'm still working on it.  It's a legal section, and a

16   part of an opinion that raises some challenges

17   because of the breadth of some of the language that

18   the Tenth Circuit used.  But I want to open the floor

19   to the Baca defendants to see if you have anything

20   you want to say on the legal issue, the Jencks issue,

21   the timing issue of the disclosure.  Anyone want to

22   weigh in on this?  Talk me out of my inclination?

23           All right.  Well, then let's move, then, to

24   the hard work for today.  And that is the Roviaro

25   discussions and arguments with several CIs.  Here are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1025

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 1026

1   the ground rules that I propose.  As you can imagine

2   we're dealing with a lot of people, a lot of

3   defendants, a lot of people, and it's a little hard

4   for me sometimes to keep them all in mind.  I have

5   spent a lot of time reading.  So it would help me to

6   refresh my memory and pull me back into my thinking,

7   as I worked since last week to prepare for this day,

8   if you, when you -- because the defendants will

9   probably move first.  I think Ms. Sirignano indicated

10  that y'all might discuss some batting order for

11  today.  But the defendants go first.  What I would

12  like the defendants' lawyer to first say is -- give

13  me the docket number of the motion that is being

14  moved, give me the -- I noticed that most of y'all

15  are using exhibits, so y'all are referencing

16  exhibits, which I have looked at enough of those.  I

17  know that probably a large portion of those are 302s.

18  So it may be helpful so that I -- since I don't have

19  a CI with a name, for obvious reasons, we call it CI

20  Exhibit L, for example, and we then take me to the

21  page.  So if you would point me to the page.

22          And then I will probably ask the Government

23  to do the same.  I know y'all have filed two large

24  omnibus responses on this batch today.  So if you

25  will then tell me the document that has your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1026

1    discussion of the defendants' CI, and then tell me

2    the page, and so I can be looking at them, and it

3    will refresh my memory as to what I was thinking

4    about these CIs at the time.

5            All right.  Ms. Sirignano, are you first

6    up?

7            MS. SIRIGNANO:  No, Your Honor.  I believe

8    Amy Jacks is going to go first.

9            THE COURT:  All right.

10           MS. JACKS:   Good morning.

11           THE COURT:  Ms. Jacks.

12           MS. JACKS:  So why don't I start with our

13   motion to disclose the confidential informants.  It's

14   Document No. 815.  And we had 30 exhibits, which were

15   labeled 815-1 through 30.

16           THE COURT:  Now, 815 was the one that I had

17   before me at the last hearing; right?  Is this the

18   supplemental briefing on --

19           MS. JACKS:  Right.  815 is Daniel Sanchez'

20   motion to compel.  So you might have had it before

21   you yesterday.

22           THE CLERK:  Tab 6.

23           THE COURT:  Okay.  Hold on.  All right.  I

24   have it.

25           MS. JACKS:  Then the Government's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1027

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 15028

```
 1   opposition is Document 864.

 2              THE COURT:  All right.

 3              MS. JACKS:  And the reply, which I think we

 4   talked about a little about it yesterday, is Document

 5   892.

 6              THE COURT:  All right.  I have those three

 7   documents.

 8              MS. JACKS:  All right.  I gave it a little

 9   bit of thought last night and this morning about

10   where to start.  And it seems to me -- let me just go

11   back a second.  Mr. Sanchez is charged in both

12   indictments.  So he's charged with the VICAR --

13              THE COURT:  And I was going to say that at

14   the beginning.  I will not be insulted if people

15   repeat stuff and refresh my memory, because I'm still

16   trying to get on top of every fact and detail.  So do

17   not hesitate starting with Genesis 1 on this stuff.

18   And I won't be insulted.

19              MS. JACKS:  Okay.  I'll do my best.

20              So Mr. Sanchez is charged in both

21   indictments.  In the 4268 indictment he's alleged to

22   have committed the VICAR crimes of conspiracy to

23   commit murder of Javier Molina, and then the murder

24   of Javier Molina.

25              In the second indictment, the 1613
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1028

1    indictment, he's charged with a racketeering

2    conspiracy under 18 USC 1962(d).  So -- and there

3    are, I think, at least 27 overt acts that are

4    attributed to Mr. Sanchez as part of that

5    racketeering conspiracy.

6            I want to just sort of pick up on some of

7    the racketeering conspiracy, or just racketeering

8    conversation that we had yesterday.  Because to prove

9    the 1962(d) violation what the Government has to show

10   is that Mr. Sanchez was a member of a racketeering

11   enterprise, and that the enterprise affected

12   interstate commerce, and that during the course of

13   the conspiracy, it was agreed that some member or

14   combination of members of the enterprise would commit

15   two racketeering acts.  It doesn't require that

16   anybody actually commit an overt act, but people have

17   to have agreed that at some point somebody would do

18   such, at least two times.

19           So the CI motion that we filed -- let me go

20   back a second.  One of the overt acts in the RICO

21   conspiracy, the 1613, is the murder of Javier Molina.

22   So, in that respect, 1613 sort of encompasses the

23   proof of both cases.

24           Our CI motion addressed informants relevant

25   to both the Molina murder and conspiracy to commit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1029

1    murder, and the alleged racketeering conspiracy that

2    supposedly lasted for 30 years.

3            And when I read and reread the Government's

4    opposition, I guess where it seemed to me a logical

5    starting place is one of the things that Mr. Sanchez

6    has asked for is informants that have information

7    about the three people -- at least three people that

8    we know are referred to as "Dan Dan."  And it was our

9    contention that the Government had expressed some

10   degree of confusion about what Daniel Sanchez or what

11   Dan Dan performed which activities.  And it seems

12   that the logical place for me to start would be with

13   the informant at DeLeon 4323, which is our Exhibit

14   Number 30.

15           THE COURT:  All right.  When you say --

16   okay, it's Exhibit 30 to your --

17           MS. JACKS:  To my motion.

18           THE COURT:  All right.  Let me do a couple

19   of things.  First, take me to the page that you're

20   discussing this in your brief.

21           MS. JACKS:  Page 37.

22           THE COURT:  Page 37.  So you're skipping

23   over some CIs, and going --

24           MS. JACKS:  I am.

25           THE COURT:  That's fine.  I don't have any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1030

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1031

```
 1    problem with that.

 2            MS. JACKS:  I guess the way the Government

 3    has attacked our motion is to first say anything that

 4    Daniel Sanchez wants, any informant that Daniel

 5    Sanchez wants that goes to proving that there is more

 6    one Daniel Sanchez, and that people or the Government

 7    are confused is irrelevant, because we know who is

 8    who, and there is no reason that Mr. Sanchez would

 9    need to show that.

10            THE COURT:  So I'm looking at the CI at

11    Baca 2909; is that right?  That's the one you're

12    going after first?

13            MS. JACKS:  No, 4373.  It's at the bottom

14    of page 37.

15            THE COURT:  All right.  I see it.  And then

16    it's Exhibit 30.  Okay.

17            MS. JACKS:  And, Your Honor, if you look at

18    the indictment in the 1613 case, Overt Act 161 says

19    that on or about February 24, 2015, while in the

20    custody of the New Mexico Corrections Department,

21    Defendant Daniel Sanchez provided a clavo, which

22    means container of drugs, to another inmate.  So

23    that's alleged in the indictment.  Supposedly, the

24    Grand Jury found that this overt act had been

25    committed.
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                              1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 1031

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 1032

```
 1              The CI at Baca 4373 reports that on
 2   February 25 -- and then it's inmate -- whatever his
 3   name was is blanked out -- was interviewed by members
 4   of the FBI and Bernalillo County Sheriff's Office.
 5   And it's blacked out.  I'm not sure what all is
 6   blacked out.  But skipping down to the next paragraph
 7   it says, blank "hereinafter referred to as a
 8   cooperating witness related the following information
 9   as it pertained to SNM.  The CW identified himself as
10   a valid member of the SNM."  And then this is the
11   information that he provides:  "Four years ago Daniel
12   Sanchez, a/k/a "Dan Dan" --
13              THE COURT:  Can I ask what does "W" mean?
14   "CW"?
15              MS. JACKS:  I think -- you'd have to ask
16   the Government.  I think it means cooperating
17   witness.
18              THE COURT:  Okay.  All right.
19              MS. JACKS:  Is that --
20              MR. CASTELLANO:  It's in the second
21   paragraph.
22              THE COURT:  I see it.  Okay.
23              MS. JACKS:  They refer to these people as
24   CIs, sources, CWs, CHS.  I'm not quite sure what all
25   the distinctions are meant to mean.  But, in any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1032

1    event, this informant reports that four years ago

2    Daniel -- whoops -- "Daniel Sanchez, a/k/a Dan Dan,

3    and Happy were out hitting when Department of

4    Corrections Officer Gabe Salazar pulled CW out of his

5    cell at MDC."

6              THE COURT:  And what does "hitting" mean?

7              MS. JACKS:  I don't know.

8              THE COURT:  Okay.

9              MS. JACKS:  "CW claims that they sent CW

10   Sanchez' clavo in order to frame CW.  Law enforcement

11   note:  A clavo is a container of drugs which is

12   hidden while incarcerated."  That language tracks the

13   language of the indictment at Overt Act 161.  Except

14   for the fact that in this report the interview was on

15   February 24, 2015, yet what the informant is

16   reporting is that this incident happened four years

17   ago.

18             In preparing our motion, we assume that

19   there was an error on the Government's behalf with

20   respect to the timing.  And as I represented in my

21   declaration attached to the reply, Daniel Sanchez was

22   not in the New Mexico Department of Corrections on

23   February 24th of 2015.  He had been transferred to

24   another jurisdiction.  So it appears, at least to me,

25   that this CI, at 4373, relates to the Overt Act 161

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1033

 1   that's being charged against Daniel Sanchez.

 2          And the Government's response to our

 3   request for this informant is that they agree it's

 4   the other Daniel Sanchez.  And they agree it's the

 5   other Daniel Sanchez in the course of representing to

 6   the Court, that when they went to the Grand Jury,

 7   they knew which Daniel Sanchez was which.  So I'm not

 8   quite sure how they indicted Daniel Sanchez, sitting

 9   here in court, based on a statement from an informant

10   that is concededly now referring to the other Daniel

11   Sanchez.  So I guess it causes me to not believe or

12   accept the Government's representation when they went

13   before the Grand Jury they knew the difference.  And

14   it was our contention that this was the other Daniel

15   Sanchez, and that there are other instances of

16   conduct that they attribute to this Daniel Sanchez

17   here in court that are the other Daniel Sanchez.

18          And if that's the case, I think, then, not

19   only this informant, at Baca 4373, has information

20   that is relevant and helpful to our defense, but any

21   informant that has information about the other Dan

22   Dan is relevant and helpful to our defense, to

23   establish the Government's and witness' potential

24   confusion between the two Daniel Sanchezes.  There

25   are two Daniel Sanchezes, and then there is another

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1034

1    guy named Daniel Martinez, all three of whom are

2    referred to in the discovery as Dan Dan.

3         I don't know if we want to, like, hear the

4    Government's response --

5         THE COURT:  I do.  I was trying to

6    formulate a question.  I guess, if you had this CW,

7    and it was your lucky day, what would he say that

8    would be helpful to you?

9         MS. JACKS:  That the Dan Sanchez he was

10   referencing in this statement is the other Daniel

11   Sanchez, not the one charged in this indictment.

12        THE COURT:  Well, if you've got the

13   Government conceding that, that nothing in this is

14   about your client --

15        MS. JACKS:  Then why do I care?

16        THE COURT:  Yeah.

17        MS. JACKS:  Well, because they got him

18   indicted on it.  So that makes me think is the Grand

19   Jury indictment as to Mr. Sanchez based on false

20   information?  And is there potentially a motion that

21   can be brought regarding the indictment?  And what

22   other instances is the Government -- was the

23   Government confused about that now -- I guess I can't

24   rely on them to concede it.  When I called them, when

25   I communicated with them about this prior to filing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1035

```
 1    the motion, they objected.  Then -- and now, they're
 2    contending that Overt Act 161 is not based on this
 3    informant's statement.  But there is nothing else in
 4    the discovery that they have disclosed that would
 5    show me what the basis of Overt Act 161 before the
 6    Grand Jury was.
 7            And on top of that, I just find it sort of
 8    incredulous that, given the coincidence between the
 9    date this informant was interviewed and the date
10    attributed to the overt act in the indictment, that
11    this -- that they can even credibly assert that this
12    statement isn't the basis of Overt Act 161.
13            THE COURT:  All right.  Anything else?  Or
14    should I hear from Mr. Beck?
15            MS. JACKS:  I think it would make sense to
16    sort this thing out, because I think other things
17    might fall in line.
18            THE COURT:  Okay.
19            MS. JACKS:  There is one other thing that's
20    kind of relevant to this, and I think that -- there
21    is an informant, Exhibit 19; that would be the DeLeon
22    informant at 14637.
23            THE COURT:  Is it going to be a different
24    issue?
25            MS. JACKS:  This is an issue that shows
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    that one of the individuals that they've interviewed

2    is confused about the Daniel Sanchezes.  He's mixing

3    information about the Daniel Sanchez charged in this

4    indictment with the other Daniel Sanchez.  I'm happy

5    to -- do you want to have Mr. Beck respond to this?

6              THE COURT:  Yeah, let me try to keep these

7    straight, so let me do it.  But I guess -- I can

8    understand why you want to clear this up, but I guess

9    this CW, I guess I'm not seeing what he says that's

10   helpful to you.  I mean, if he was confused, he's

11   confused.  But I'm not seeing how that's helpful to

12   you.  If the Government says, Yeah, he was confused,

13   then it seems to me that if they do not want to be

14   relying on faulty proof, and we ought to clear it up.

15   But I'm not seeing how the actual CW helps you.

16             MS. JACKS:  Okay.  The CI, at Baca 4373,

17   that I was just talking about, he wasn't confused.

18   That CI gave information about the other Daniel

19   Sanchez.  The Government used his information before

20   the Grand Jury to indict this Daniel Sanchez on an

21   overt act attributable to the other Daniel Sanchez.

22             THE COURT:  So you think that, in reading

23   this, when he says "Daniel Sanchez," he was not

24   thinking of your client?

25             MS. JACKS:  I know that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1037

25

1          THE COURT:  Okay.

2          MS. JACKS:  And I guess the other thing --

3     part of my motion goes to show there are other

4     informants --

5          THE COURT:  So it's really the Government

6     that's confused, is what you're saying?

7          MS. JACKS:  Right.  Well, not only confused

8     but misrepresenting their confusion.  And obtaining a

9     Grand Jury indictment with evidence that they're now

10    admitting is false or wrong.

11         THE COURT:  Okay.  All right.  Thank you,

12    Ms. Jacks.

13         Mr. Beck?  I guess the way I would look at

14    this, unless you've got a better way of cleaning this

15    up -- I mean, you may have a different version of

16    it -- if the CW were in here, and he looked at Mr.

17    Sanchez, and he said, That's not who I'm talking

18    about at all, it would seem that would be relevant

19    and helpful information.

20         MR. BECK:  Right, I don't disagree.  So

21    this was my mistake, this Exhibit 30, Baca 4343.  I

22    looked at the dates, and they are mistaken.  This

23    Exhibit 30, unlike the other ones, is referring to

24    this Daniel Sanchez in this case.

25         THE COURT:  Wait just a second.  Let me --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1038

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 26039

```
 1    I'm looking at 4373, and you're referencing --
 2              MR. BECK:  4373.
 3              THE COURT:  Okay.
 4              MR. BECK:  So if you look at page 22 in
 5    Document 320 --
 6              THE COURT:  Document 22.
 7              MR. BECK:  Document 320.
 8              THE COURT:  Okay.
 9              MR. BECK:  Sorry.  So this is probably --
10    I'm not sure I have the same versions.  It's our
11    response.  Do you know what the 4268 number is?
12              MS. JACKS:  I think 864.
13              THE COURT:  864, okay.
14              MR. BECK:  864, page 22.  So I represented
15    that this was the other Daniel Sanchez, and that was
16    my mistake.  What happens is, when we indicted this
17    case, we had files on each overt act.  The files live
18    up here in Albuquerque.  Sitting through a lot of
19    CIs, as you know, I read this, and thought that it
20    was 2011.  And the indictment says 2015, as Ms. Jacks
21    is correct, the indictment date is wrong for this
22    overt act.  This is referring to the Daniel Sanchez.
23    So what I said is that, when the agents interviewed
24    the CIs -- in this case the CW -- and when they put
25    together the overt acts, they had them in a file.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1039

```
 1    And this one I got wrong.  When I came up here --
 2    when I came up here this week, and the FBI had me
 3    look through the files, I saw that this one was in
 4    the file for the overt acts.  And that this CI, this
 5    report, this statement, is the basis of Overt Act 161
 6    in the indictment.  So Ms. Jacks is correct on that.
 7              THE COURT:  Okay.  Well, let me make sure I
 8    understand.  Okay.  Are you agreeing that 4373 is the
 9    basis for the overt act in the indictment of 1613?
10              MR. BECK:  I am.
11              THE COURT:  Okay.  Now, are you agreeing
12    that the CW, when he was talking about Daniel
13    Sanchez, a/k/a "Dan Dan," was not talking about
14    Ms. Jacks' client?
15              MR. BECK:  I'm disagreeing.  I'm saying
16    when he was talking about Daniel Sanchez, a/k/a "Dan
17    Dan" and Happy in that paragraph, he, in fact, is
18    talking about the Daniel Sanchez in both of these
19    cases.
20              THE COURT:  Ms. Jacks' client?
21              MR. BECK:  That's right.
22              THE COURT:  All right.
23              MR. BECK:  So with a lot of these reports,
24    they were given a long time ago, and they identified
25    by NMCD number, or by date of birth, to which Daniel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1040

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 28

 1    Sanchez they were referring.  And, obviously, when
 2    they're referring to Daniel Martinez, that's clear.
 3    With this report, it did not refer to that.  As I was
 4    going through, I was looking at the overt acts and
 5    the dates in the indictment, and I missed this one.
 6    And as I said, the file was given to me this week,
 7    and I saw that I was wrong on this one.
 8              THE COURT:  All right.  Well --
 9              MS. JACKS:  I'm a little stunned.  When
10    this revelation came to the U.S. Attorney's Office,
11    it would seem that would be something you would
12    communicate to us immediately, knowing that these
13    hearings were scheduled.
14              And it doesn't change my position that this
15    report refers to the other Daniel Sanchez, and I can
16    show the Court why.  I don't think that the
17    Government should be allowed to swing back and forth
18    like a pendulum as to which Daniel Sanchez this
19    refers to.  I think just the fact that they've made
20    these mistakes is further evidence about why we need
21    this informant's identity.  Who knows who it is?
22              THE COURT:  Well, tell me why you think
23    that it's not as Mr. Beck is representing today; that
24    the CW was identifying -- that he was identifying
25    your client rather than another Daniel Sanchez?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                            1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 1041

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1042

```
 1              MS. JACKS:  Number one, the ever-changing

 2    nature of the Government's position.

 3              And number two, the other Daniel Sanchez,

 4    based on statements by other CIs that we're seeking

 5    disclosure of, is a heroin addict who received drugs

 6    both in and out of prison.  And if I can point you to

 7    our motion 815, at page 13.  The confidential

 8    informant at DeLeon 635 and DeLeon 16151, and that

 9    would be our Exhibit 2.

10              THE COURT:  Did you say page 3?

11              MS. JACKS:  13 of Document 815.

12              THE COURT:  And then what's the document

13    number?

14              MS. JACKS:  815.

15              THE COURT:  Right, but you were referencing

16    a particular exhibit.

17              MS. JACKS:  Oh, Exhibit 2.  I'm looking for

18    the page in Exhibit 2 that addresses this specific --

19              THE COURT:  All right.

20              MR. BECK:  Page 6 and 7.

21              MS. JACKS:  Okay.  Thank you.  It's page 6

22    and 7 of Exhibit 2.  It starts at the very bottom of

23    page 6.

24              THE COURT:  And you're looking at the page

25    numbers in the left-hand corner?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1042

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3043

1          MS. JACKS:  Yes.  If you look at the lower

2     left.  I think it should also be part of the page

3     number for the Exhibit 815-2.

4          THE COURT:  Okay.

5          MS. JACKS:  So this informant reports for

6     the Government that "SNM member, Dan Sanchez, a/k/a

7     "Dan Dan," is out on parole and is in a

8     rehabilitation program at La Pasada Halfway House in

9     Albuquerque.  He still is being supplied chiva,

10    meaning heroin, and is widely respected among SNM

11    members."

12         So, as I pointed out in our motion, we know

13    that this informant is referring to the other Daniel

14    Sanchez, not the one charged in this indictment.  And

15    the way that we know that is the Daniel Sanchez

16    charged in this indictment was sentenced to a life

17    term and has never been paroled.  He's never been in

18    La Pasada Halfway House in Albuquerque.

19         What this informant says about the other

20    Daniel Sanchez is important with respect specifically

21    to Overt Act 161.  Because what he's reporting is

22    that the other Daniel Sanchez is still being supplied

23    chiva.  He's still being supplied heroin by members

24    of SNM, even though he's out of jail, even though

25    he's out of prison, which would imply that while he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1043

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 31

1    was in prison he was being supplied heroin by members

2    of SNM, which is information that's relevant and

3    helpful to showing that the informant that we just

4    discussed at Baca 4373, when he's talking about

5    someone being sent heroin in prison, or the Daniel

6    Sanchez being sent heroin in prison, is talking about

7    the other Daniel Sanchez, the Daniel Sanchez not

8    charged in this indictment.

9            THE COURT:  All right.  Mr. Beck, do you

10   want to respond?

11           MR. BECK:  Sure.

12           MS. JACKS:  I just have one other point,

13   I'm sorry.  My one other point was this informant

14   that we're talking about right now in Exhibit 2 also

15   provides relevant and helpful information to Mr.

16   Sanchez on another topic.  And this other topic is

17   Gerald Archuleta, which is a government cooperator,

18   we expect is a government cooperator.  And what this

19   informant says is that Gerald Archuleta falsely took

20   credit -- took credit for a murder that he didn't do.

21   And that information is favorable to Mr. Sanchez in

22   preparing and presenting his defense, because what it

23   shows is that in the context of prison culture, in

24   the context of a prison environment, where being

25   feared is a quality that's respected and admired,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1044

1    people falsely take responsibility for violent crimes

2    they didn't do.

3          So I would contend that this informant has

4    relevant and helpful information not only to Overt

5    Act 161, but to Mr. Sanchez' defense, in general, in

6    preparing the defense to the racketeering conspiracy

7    charges.

8          THE COURT:  When you say this CI, you're

9    talking about the one -- now you're talking about the

10   one in 2, rather than 4373?

11         MS. JACKS:  Correct.  Well, I think the one

12   in 2 helps show the one in 4373 was not referring to

13   Mr. Sanchez.  But, in addition, the one in Exhibit 2

14   provides additional information about prison and

15   prison culture, and the accepting -- claiming

16   responsibility for violent crimes in effect a person

17   didn't do in order to gain status and recognition.

18         And for the purpose of this discussion, I'm

19   assuming that the informant at 635 is the same as the

20   informant in 16151, although the Government certainly

21   hasn't told us that, and that may not be the case.

22   And if the informant at 16151 provides the same

23   information, and if it's a different person, I think

24   we're entitled to him, too.

25         THE COURT:  All right.  What is 16151?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1045

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3046

1           MS. JACKS:  It looks like the exact same

2    report.

3           MR. BECK:  Yeah, that's the report that

4    starts on page 10.

5           THE COURT:  That's the Exhibit 2.  Okay.

6           MR. BECK:  Yeah, it's still Exhibit 2.  It

7    just starts on page 10.

8           THE COURT:  All right.  Anything else,

9    Ms. Jacks?

10           MS. JACKS:  Not on that.

11           THE COURT:  All right.  Let's focus, Mr.

12    Beck, on the CI in 4373.  I guess what I'm

13    understanding from Ms. Jacks is she thinks that the

14    identity of this CI would be relevant and helpful,

15    because she thinks he will testify that the

16    discussion she has about Daniel Sanchez is not her

17    Daniel Sanchez.

18           MR. BECK:  Right.  I think that's true.  I

19    think that's true, that's what she's asserting.  So

20    with regard to this CI --

21           THE COURT:  So help me.  What is -- and I

22    guess I'm trying to track her argument.  What

23    evidence does she have or what is she pointing to to

24    say that the CW in 4373 was talking about some other

25    Daniel Sanchez?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34 1047

```
 1              MR. BECK:  I think what she's pointing to
 2    is the CI in Exhibit 2 that we just looked at, that
 3    statement, that that Dan Dan was being provided
 4    heroin on the street.
 5              THE COURT:  So do you agree that that's a
 6    correct reading of the Daniel Sanchez in 2, is that
 7    it's referring to a Daniel Sanchez that's not
 8    Ms. Jacks' client?
 9              MR. BECK:  I do for a couple of reasons.
10    Number one, the timing.  As she said, her client was
11    already serving life in prison, so physically
12    impossible that that was him.
13              Number two, because we know the CI was
14    giving the statement about that Daniel Sanchez, and
15    providing information about the other Sanchez.
16              In contrast to this case -- or excuse me,
17    in contrast to Exhibit 30, where that CI was giving
18    information about this Daniel Sanchez and this
19    investigation in 2015.  So now, I think if we look at
20    those, then we go on to how this information may be
21    relevant and helpful.  And I think this plays in to
22    what we were discussing yesterday about a testifying
23    witness' statement.  If, indeed, this CI in Exhibit
24    30, CW referred to in here, is talking about the
25    other Daniel Sanchez, that is helpful information,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1047

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35 of 1048

1    that if this CI were not going to testify at trial,

2    may never come out.  If this CI does testify at

3    trial, the United States will have him testify at

4    trial, or her, this information will come out on

5    cross-examination, because when we turn over Jencks

6    materials, we will identify who this CI is, so that

7    when the United States calls this CI at trial,

8    Ms. Jacks can get up and say, In 2015, in February,

9    you gave this statement about Dan Sanchez being

10   provided a clavo in prison; isn't that right?

11            And he'll answer yes or no.

12            Is that my client?

13            He'll answer yes or no.

14            So the helpful and relevant information

15   that she's trying to seek from this CI will come out

16   at trial.  This CI's identity will not provide any

17   other help than that.  And that's what the difference

18   is here when we're talking about CIs who their

19   identity is relevant and helpful under Roviaro versus

20   just the information, because that information will

21   come out at trial.  And I think that's what Pennick

22   recognized.  And that's what Banks recognized, when

23   Banks said "for CIs who will not testify at trial."

24   The identity of this witness is only helpful to allow

25   the defense to come in and say:  You provided this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1048

```
1    statement, was it about my client or not?  And they
2    will answer yes or no.  Providing this information
3    beforehand under Roviaro is not helpful.  So I think
4    that's why the Court, the Supreme Court, looked at
5    whether the person is providing mere tips, whether
6    the person is involved in the criminal activity, or
7    helped set it up, because then they understand more
8    about, I guess, the person, or the underlying
9    circumstances; whereas, this CW, who actually from
10   this report seems to be a victim, I guess I would
11   read it, as opposed to any participant in the
12   criminal transaction here.
13           I think it's clear from this report,
14   Exhibit 30, that Daniel Sanchez and Happy were the
15   criminal participants in this who tried to set up the
16   CW, who has been the victim.  And that's why the
17   identity, as opposed to just the information, is not
18   helpful and relevant.
19           THE COURT:  Well, put aside for a second --
20   I know that's hard to do, but put aside for a second
21   that I'm inclined to rule against you on this timing
22   issue.  So now, just focusing on this, would the
23   identity -- if Ms. Jacks could go to this CW, and
24   this CW were to say:  "I was talking at this time
25   about another Daniel Sanchez," you would agree with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1049

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7050

1   me that that would be relevant and helpful

2   information; right?

3          MR. BECK:  Yes.

4          THE COURT:  Okay.  So I guess the question

5   I have is:  She has presented some evidence as to why

6   I think that is a plausible scenario.  It's not just

7   fishing, but it's likely that that's what's going to

8   happen.  Tell me what's wrong with her evidence of

9   that?

10         MR. BECK:  Nothing is wrong with the

11  evidence of that.  I think that's where then --

12  again, I think this is why we look at whether it's a

13  participant or witness, participant or helped set up

14  the criminal transaction.  Because, as I said, that's

15  a yes or no answer.  And so you look at -- now, we go

16  into assuming that this is more than a mere tipster,

17  which it may be, because this person, I guess, was

18  set up, received the clavo, so -- although, as I've

19  said, I think this person is a witness and not a

20  criminal participant.  If we go down that road, then

21  we get into the factor test; right?  The charges, the

22  defenses, and then the significance of the informer's

23  testimony, and other relevant factors.  So if we look

24  at that, this is relevant to the RICO conspiracy,

25  which requires a defendant to agree to participate in

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                 (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 1050

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 38

1    the criminal enterprise, and then two overt acts,

2    which can be done by others in the criminal

3    enterprise, because there is no overt act

4    requirement.  But those two acts are met if we prove

5    that Daniel Sanchez indeed participated in two

6    criminal overt acts.  So I think then we look at what

7    Daniel Sanchez is charged with, how many overt acts

8    he's charged with.

9          And certainly a defense to Overt Act 161 is

10   that he is not the Daniel Sanchez referred to in

11   there.  Now, there are a number of overt acts he's

12   charged with.  So negating one is helpful, but it's

13   not a complete defense.  But we look at, then, the

14   significance of this informer's testimony.  So if

15   this informer says, Yes, it is Daniel Sanchez, it's

16   significant; no, it's not Daniel Sanchez, that's

17   significant, too.  But again, that's where I said we

18   have to distinguish between the identity of the

19   informer versus what the informer is going to say;

20   right?

21          And so I contend that that's for testifying

22   informers as well as these, is that we look at what

23   the relevant and helpful testimony will be, okay?

24   Because now we're talking about when to disclose.

25   And so that information I see would be significant in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1051

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9052

1    relation to this overt act.

2           Now, we look at the other factors here,

3    which I think the safety of this informant, the

4    safety of the witness weigh heavily in that.  I think

5    you recognized that in Rivas.  I think many courts

6    have recognized that.  So if we are going to say that

7    this informant's identity is significant, okay, if

8    these factors weigh in favor of disclosure -- and I

9    grant in this case they may -- I think other relevant

10   factors weigh against disclosure, or at least the

11   timing of disclosure.  And those are the real and

12   significant threats to anyone identified as an

13   informant in this case.

14          And so, I think, yesterday and this morning

15   you were talking about certain ways to get through

16   that.  I think that ways to get through that are

17   later disclosure or, as you did in Aguilar, and I

18   think in Padilla, is disclosed it to attorneys' eyes

19   only; right?  So then we would seal that, disclose it

20   to attorneys' eyes only, so that they can figure out

21   who this person is, and look at that.

22          So I want to emphasize to the Court that in

23   the context of this case, the threats to any of these

24   informants is significant and real, whether they're

25   out on the street or whether they're in prison.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492

**BEAN**
**& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

DNM 1052

```
 1    There is no way to get around that.  So I would say
 2    at the least it calls for disclosure attorneys' eyes
 3    only and sealed.  And I would say it also weighs in
 4    favor of a late disclosure, because, as I think Your
 5    Honor knows from what you were talking about this
 6    morning, the criminal enterprise is ongoing, and law
 7    enforcement is still working with tipsters.  So I
 8    think all those factors weigh in favor of late
 9    disclosure and relevance.
10          And so I think also for a number of these
11    informants, it would be significant -- if we look at
12    the way the Tenth Circuit decides this, we're looking
13    at the significance of the testimony.  And that's
14    really where the heart of all these cases is going to
15    lie for whether it's disclosure, whether it's not
16    disclosure.  If there is -- so in this case, if there
17    is a possibility that the Court thinks that this
18    defendant -- or excuse me, that this CI is referring
19    to another defendant, not being a participant in the
20    criminal activity, I think that that puts -- I think
21    that puts this defendant in what the Court has
22    recognized.  Well, just a second -- I'll find it
23    here.  One second.  I think this puts this
24    informant -- I don't have it in front of me, but it's
25    United States against Morales, a Tenth Circuit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1053

1   decision.  Found it.  So this is 908 F.2d 568, at

2   page 568.  I don't have the Court's decisions in

3   front of me, but you've quoted this numerous times,

4   and it's quoted in all of our responses.  The Tenth

5   Circuit breaks these CIs down into three categories.

6   So the mere tipster whose identity that's never

7   required to be disclosed.  The other extreme are

8   cases, such as Roviaro itself, where the informant

9   has played a crucial role in the alleged criminal

10  transaction, and disclosure and production of the

11  informant are required to ensure a fair trial.  And

12  third, are the cases where there is a slight

13  possibility a defendant might benefit from

14  disclosure, but the Government has demonstrated a

15  compelling need to protect its informant.

16          And so I would submit that this is that

17  third category.  In such cases, the Tenth Circuit has

18  given the Court guidance that the Court should

19  conduct an in camera hearing with this informant.

20  Again, if the Court finds everything up to this

21  point, and finds that it would be significant

22  testimony to Mr. Sanchez if this informant is wrong,

23  the Court then conducts an in camera hearing, at

24  which point the Court can, in that in camera hearing,

25  decide whether or not this informant indeed has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1054

```
1    significant testimony for the defendant.

2           The way those work -- I've read a lot about

3    it -- it depends on the Court's view who may attend

4    those, whether no one may attend, just in chambers

5    with the Court, with written questions, whether it's

6    in the courtroom sealed off, where the Court reads

7    these written questions.

8           So I would submit that for this CI in

9    Exhibit 30, assuming that everything else is met, if

10   the Court's inclined to find that this may be

11   significant testimony -- which I grant it may -- it's

12   only significant if this CI is going to say that it's

13   not this Daniel Sanchez.  So that Court's in camera

14   hearing could be one written question with a photo

15   line-up that says, Pick out the person you're

16   referring to as Daniel Sanchez.  So that in camera

17   hearing would allow the Court to find out whether or

18   not this is significant testimony.  And then, if it

19   is, the Court can then decide on what time to

20   disclose.

21          THE COURT:  All right.  Anything else, Mr.

22   Beck?

23          MR. BECK:  I think that's it for the CI in

24   Exhibit 2.

25          THE COURT:  Ms. Jacks, I guess what I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43 1056

```
 1   struggling with is it seems to me that -- and correct
 2   me if I'm wrong -- what you're saying is because
 3   you've got two Daniel Sanchezes, both who were
 4   getting heroin --
 5            MS. JACKS:  I don't admit that my client,
 6   Daniel Sanchez, was getting heroin while in custody.
 7            THE COURT:  But that's what this is
 8   alleging, if we take the Government's version, is
 9   there is two different Daniel Sanchezes, and they're
10   both getting heroin; therefore, I should disclose
11   this CI, because they're both getting heroin.  I
12   guess I'm not seeing that that's going to help you in
13   any way.
14            MS. JACKS:  I have a couple of comments.
15   Number one is that's the Government's version now.
16   The Government's version has been that this is Daniel
17   Sanchez here in court; that this is not Daniel
18   Sanchez here in court, and now this is Daniel
19   Sanchez.
20            THE COURT:  I understand that.  But you've
21   got to tell me how -- just because another Daniel
22   Sanchez is getting heroin, how that means that -- how
23   that shows me that that CI was talking about the
24   other Dan Sanchez?  It seems that's a little too
25   remote for me.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1056

1           MS. JACKS:  The way that it's pled in the

2    indictment is that on February 24th of 2015, while in

3    the New Mexico Department of Corrections, Daniel

4    Sanchez was -- this incident happened.  Daniel

5    Sanchez, my client, was not in the New Mexico

6    Department of Corrections at that time; that's number

7    one.

8           Number two, the Government has taken

9    inconsistent positions about what Daniel Sanchez this

10   person is referring to.

11          Number three, there is no identifier in the

12   FBI report about which Daniel Sanchez this person is

13   referring to.  There is no date of birth or New

14   Mexico Department of Corrections number.

15          THE COURT:  Let's assume this CW is talking

16   about your client.  What relevant and helpful

17   information does he have?

18          MS. JACKS:  I don't think we can assume

19   he's talking about my client.

20          THE COURT:  Assume it for the sake of

21   argument.  He doesn't have any helpful or relevant

22   for you.

23          MS. JACKS:  What he does have -- the CI at

24   4373, if he's talking about this Daniel Sanchez, I

25   don't believe he does.  But what I don't know, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1057

1   what I can't rely on is any representation by the

2   Government which Daniel Sanchez this person is

3   talking about.

4           THE COURT:  Let's do this:  I'm going to

5   deny the request to disclose.  If the Government will

6   agree to send representatives out with this 302 --

7   and you may need to go, too, Mr. Beck, and show that

8   to the CW.  Take a picture of Ms. Jacks' client, and

9   say, "Are you talking about him?  Are you talking

10  about the other one?"  And you send a letter to

11  Ms. Jacks saying what occurred.

12          If he's confused, then he's probably got

13  relevant and helpful information.  If you confirm

14  that he was talking about Ms. Jacks' client, I don't

15  see any relevant and helpful information.  All right.

16  Will you agree to do that?

17          MR. BECK:  I will, Your Honor.

18          MS. JACKS:  Can I just say, Your Honor, I

19  completely object to that.  I think, given the

20  Government's conduct in this case so far, and

21  they're -- the position they're in with respect to

22  this witness, there is certainly a danger that

23  they'll coerce this witness to say that it's the

24  Daniel Sanchez charged in this indictment, as opposed

25  to the one that we think that he was referring to.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1058

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1059

```
 1              THE COURT:  Mr. Beck, you go out there and
 2    don't coerce, okay?
 3              MR. BECK:  I will, Your Honor.  I won't.
 4              THE COURT:  Make sure no coercion takes
 5    place either.
 6              MR. BECK:  Understood.
 7              THE COURT:  All right.
 8              MS. JACKS:  I just want to finish
 9    responding to Mr. Beck's response, because I think
10    the Government's reading of what is a participant or
11    a victim or a mere tipster with respect to this
12    racketeering conspiracy is unduly constricted.  I
13    mean, this person in Baca 4373 says that he was a
14    validated member of SNM.  This person is a member of
15    the charged racketeering enterprise talking about
16    activity during the course of the racketeering
17    enterprise.  And there is not much more needed to
18    show somebody involved in a conspiracy to commit
19    racketeering than membership in the gang.  So I would
20    say that this person is a participant in the crime
21    charged.
22              I'd also point out that Mr. Beck -- well,
23    this witness is highly relevant to Overt Act 161.
24    The information he has isn't available from any other
25    witness.  And while Mr. Beck talks about the need to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   protect the witness, we don't know anything about
 2   this witness.  Is the witness in custody?  Is the
 3   witness not in custody?  Is he living in the State of
 4   New Mexico?  We have absolutely no information
 5   about -- that would allow the Court to make some sort
 6   of finding that this witness would be in danger if
 7   his identity were disclosed.
 8             And I guess the one other thing I just want
 9   to point out is, I think the Government is using this
10   designation as "informant" in a really double-handed
11   way.  On one hand they're using it to deny the
12   defendants the identity of the witness.  But we
13   happen to know that with another cooperating witness,
14   whose safety they were concerned about, once that
15   witness began cooperating with the Government,
16   instead of leaving him isolated from the defendants
17   in this case, they stuck him right down at Torrance
18   County Detention Facility next to members of the SNM,
19   so that he could, I guess, record or attempt to
20   obtain admissions from some of the defendants in this
21   case.  So if the witnesses are in such danger, I
22   question why the Government would be handling them in
23   that manner.  I just think -- it's just not true.
24             THE COURT:  All right.  Do you want to go
25   to your next CW or CI?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1060

1           MS. JACKS:  Well, do you want to go back to

2     the one that we were just talking about?

3           THE COURT:  Number 2.

4           MS. JACKS:  Yes.

5           THE COURT:  Now, that I'm not using him

6     just to try to figure out what to do with the CI in

7     4373, now tell me -- help me focus my mind as to how

8     this informant would be helpful.

9           MS. JACKS:  Well, I think now he's even

10    more important, because now, this is a person that --

11    let's assume that Mr. Beck goes out to speak to the

12    CI at 4373, and he says that the Daniel Sanchez -- he

13    says now that the Daniel Sanchez he was talking about

14    is the Daniel Sanchez that's sitting here in court.

15          THE COURT:  The 4373?

16          MS. JACKS:  Right.  So now this guy at 635

17    becomes even more important to me, because what I'm

18    going to say is:  That's not true, that that is made

19    up under pressure by the Government, and that who he

20    was really referring to was the other Daniel Sanchez.

21    And as evidence, as circumstantial evidence of that,

22    I'd like to produce evidence from the informant at

23    635 about the other Daniel Sanchez being a heroin

24    addict, and having heroin shipped in to him in

25    prison, and heroin shipped to him on the street.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  The 4373 is a testifying

2    witness; correct, Mr. Beck?

3           MR. BECK:  That's right, Your Honor.

4           THE COURT:  Is the CI in Exhibit 2 also

5    testifying?

6           MR. BECK:  I believe so, Your Honor.  Yes.

7           THE COURT:  Well, I guess this is what I

8    was saying a little bit earlier, Ms. Jacks, is just

9    the fact that we may have evidence of two Daniel

10   Sanchezes getting drugs, that just doesn't seem

11   enough to blow off the cover of the CI.

12          MS. JACKS:  If I may, the standard is

13   "relevant and helpful."  It's a hurdle that even

14   someone my height could jump.  And that's not the

15   only information that this informant has.  I mean, as

16   I pointed out, this informant also has information

17   about --

18          THE COURT:  Why don't you take me to the

19   other information.

20          MS. JACKS:  The information regarding

21   Gerald Archuleta falsely claiming to have committed a

22   murder he had nothing to do with.

23          THE COURT:  All right.  Where is that?

24          MS. JACKS:  In Exhibit 2.

25          THE COURT:  Page.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1062

```
 1                 MS. JACKS:  It would be page 2 of the
 2      exhibit.
 3                 THE COURT:  Okay.  Do you know about where
 4      on that page it is?
 5                 MS. JACKS:  I'm trying to find it, Your
 6      Honor.
 7                 MR. BECK:  I think it's half way down.  The
 8      paragraph that starts "Baca."
 9                 MS. JACKS:  "Baca and Gerald Archuleta,"
10      yeah.
11                 THE COURT:  All right.  Highlight for me
12      what is just that first sentence, "Baca and Gerald
13      Archuleta, a/k/a "Styx," seemed to get along quite
14      well.  Archuleta is still trying to take credit for
15      the death of Matthew Cavalier, but he did not do it."
16      Is that it?
17                 MS. JACKS:  Right.  Well, and that he's
18      calling himself a boss.  He's claiming -- in
19      connection with promoting his own status within the
20      gang, he's taking credit for a murder he did not
21      commit.
22                 THE COURT:  And how does that help your Mr.
23      Sanchez?
24                 MS. JACKS:  I think it's relevant and
25      helpful.  And I will say this:  I'm not aware of any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1063

1    evidence at this point that Mr. Sanchez is taking

2    credit for crimes within the prison system.  But I do

3    believe that the Government is intending to call

4    witnesses to statements that they're going to contend

5    are either against somebody's penal interests or

6    statements of co-conspirators, where others are

7    taking credit for participating in the murder of Mr.

8    Molina or other crimes in which Mr. Sanchez is

9    implicated.

10           And so I think this evidence is important

11   to show that within the context of prison culture,

12   people looking to establish themselves as leaders, or

13   to prevent others from challenging them, will take

14   credit for violent behavior that they did not commit.

15           THE COURT:  Okay.  But --

16           MS. JACKS:  To enhance their reputation.

17   And Archuleta is, I believe, a testifying witness.

18   And I don't know what he's going to say about the

19   murder of Matthew Cavalier, or why he took credit for

20   it, if he didn't do it, or if he did it.  But

21   certainly, this witness has information that would be

22   relevant and helpful not only to impeach Archuleta,

23   but to proactively present evidence, I believe, if

24   fleshed out, about people in prison taking credit for

25   crimes they didn't do to enhance their status.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1064

```
 1                 THE COURT:  All right.  Mr. Beck, do you

 2     want to respond to that?

 3                 MR. BECK:  Sure.  I think that both of

 4     these statements are helpful.  I think that's why

 5     they were turned over.  I don't think that the

 6     identity of these CIs is helpful.

 7                 And I'll give you a distinction if we just

 8     look at this statement about Gerald Archuleta, okay?

 9     This is a testifying witness.  When he goes -- when

10     we disclose Jencks, they will have this person's

11     identity.  And assuming this person testifies,

12     Ms. Jacks can say:  "Didn't Gerald Archuleta take

13     credit for the murder of Matthew Cavalier when he

14     didn't really do it?"  And she can impeach him.

15     She's either impeaching Gerald Archuleta or she's

16     impeaching the witness who is going to say, "No."

17     The identity of this person would not provide her any

18     other information, any other helpful and material

19     information.

20                 I think the same thing for the statement

21     about the other Daniel Sanchez.  She can use it to --

22     even assuming that this witness -- that this CI

23     wasn't going to testify, she can -- this information

24     is helpful to her.  She can cross-examine a

25     government agent, and say:  "Aren't there two Daniel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1065

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 53

```
 1   Sanchezes?

 2           "Yes.

 3           "Didn't this Daniel Sanchez, who you agree

 4   with me isn't my client, didn't he do heroin out on

 5   the streets?"

 6           The agent would probably say yes.

 7           Then she could say, just like she's saying

 8   here, "And this isn't my client, is it, who is

 9   charged in Overt Act 161 with bringing in heroin?

10           "No, that's not your client."

11           The identity of this CI is no way more

12   helpful.  Because, as I said, the United States

13   agrees with her, this statement isn't referring to

14   her client.

15           So if she would then go ask this CI, if she

16   knew his or her identity, he would tell her the same

17   thing that we are, that, no, that's not about your

18   client.

19           So the only way in which this is helpful to

20   her, is the way in which it is now, to say that there

21   are two different Daniel Sanchezes, and this one is

22   not referring to her client.

23           THE COURT:  All right.  Thank you, Mr.

24   Beck.

25           MS. JACKS:  May I respond?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1066

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 54 1067

```
 1                THE COURT:  You may.
 2                MS. JACKS:  I hear what Mr. Beck is saying,
 3     I guess.  I don't know how many witnesses Mr. Beck
 4     has cross-examined or how many trials he's conducted.
 5     But, generally, I don't think competent defense
 6     lawyers cross-examine a witness or bring in evidence
 7     by the seat of their pants.  Sometimes I guess we're
 8     forced into that position.
 9                But what the Government is conceding is
10     this witness has relevant and helpful information.
11     And under Roviaro, and pursuant to Brady, I'm
12     entitled, and I actually have a duty as a lawyer
13     representing my client to go investigate that, and
14     flesh that information out, and determine what do I
15     want to ask on cross-examination?  What topics are
16     appropriate to investigate with this witness?
17                So I disagree that just because I have one
18     piece of information that somehow that's sufficient
19     in me performing my job in a competent manner, and to
20     the standard required.
21                So I just -- I think that if the person has
22     relevant and helpful information, that's the
23     standard, and I'm entitled to his identity to go and
24     investigate that information.
25                THE COURT:  Well, I tend to agree with the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1067

```
 1   Government.  I think if every time we have any sort

 2   of piece of paper and it has relevant and helpful

 3   information that means you get to have the identity

 4   of the CI, then it's probably going to be a fairly

 5   easy task.  Because a lot of this material is going

 6   to be helpful.  I think you've got to need the

 7   identity to get helpful and relevant information.

 8            It seems to me you have everything that

 9   this fellow is going to be of help to you here in the

10   302.  So I'm not inclined to require the disclosure

11   of the CI in Exhibit 2.

12            All right.  Do you have your next CI,

13   Ms. Jacks?

14            MS. JACKS:  Shall we just take them in

15   order at this point?

16            THE COURT:  Sure.

17            MS. JACKS:  I think based on the Court's

18   ruling with respect to the CI at -- let me bring one

19   other one up.

20            THE COURT:  All right.  Just give me the

21   pages, and take me through them so I have them in

22   front of me.

23            MS. JACKS:  Let me bring one other one up.

24            THE COURT:  Okay.

25            MS. JACKS:  And that is the CI, or CIs, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1068

```
 1    guess -- I can't tell if the information is from one
 2    or more informants -- at DeLeon 14637.  That's
 3    Document 815, page 31, and it's Exhibit 19.
 4              THE COURT:  Take me to the page first in
 5    your brief.
 6              MS. JACKS:  31.
 7              THE COURT:  Give me the exhibit number.
 8              MS. JACKS:  The exhibit is 19.  And I'll
 9    find the page, because I think that's a long exhibit.
10              This is a report of interviews of members
11    of the Security Threat Intelligence Unit at the
12    Penitentiary of New Mexico.  And it looks like what
13    the FBI is doing is just basically debriefing these
14    corrections officers about various people that they
15    suspect are in the SNM.  And the report refers to --
16    it looks like it refers to two Daniel Sanchezes.  I'm
17    not sure because of the redactions.  But at one point
18    it talks about a Daniel Sanchez, whose relative is
19    married to Joe Barros' sister, I think that's a
20    reference to the other Daniel Sanchez.  And then
21    there is a reference to a Daniel Sanchez that may or
22    may not be Mr. Jewkes' and my client, the Daniel
23    Sanchez here in court.  I'm going to direct the Court
24    to that page.  It's page 5 of the exhibit.  And I
25    think it's right at the top.  It says "Daniel
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1069

```
 1    Sanchez."

 2              THE COURT:  All right.

 3              MS. JACKS:  So what this -- what the -- let

 4    me just go back a second, because according to the

 5    exhibit, according to the FBI report, the Corrections

 6    Officers Jaramillo and Chavez are providing

 7    information to the FBI.  And then it says, With

 8    information, quote, "including source information

 9    about SNM."  And what I read that to mean, "including

10    source information" was meaning here is something we

11    know about this person and here is who told us that.

12              So at page 5 of the document, the

13    corrections officers tell the FBI agent about Daniel

14    Sanchez.  And the source of this information is not

15    revealed, although the report suggests that the

16    source was revealed to the FBI agent.  And the report

17    says that Sanchez' date of birth, which is redacted,

18    "is an SNM soldier from Albuquerque who ran the SNM

19    at BCDC" -- which I think is Bernalillo County

20    Detention Center -- "for some time.  He was in charge

21    of bulldogging and prostitution, and is currently

22    incarcerated in Virginia."  And this report was

23    prepared in March of 2001.

24              And in March of 2001 -- let me tell you the

25    significance of this, and then I'll point out why.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1070

```
 1    The significance of this is whoever the source was

 2    providing this information about Daniel Sanchez is

 3    confusing the two Daniel Sanchezes, the source is.

 4    And the way we know that is that, in 2001, Daniel

 5    Sanchez charged in this indictment was incarcerated

 6    in Virginia.  He was there.  But the Daniel Sanchez

 7    charged in this indictment was not an SNM soldier

 8    from Albuquerque.  He was never, ever in his entire

 9    life incarcerated in the Bernalillo County Detention

10    Center.  And he wasn't in charge of bulldogging and

11    prostitution.  That's the other Daniel Sanchez.  So

12    the information that was provided to the corrections

13    officers from some unidentified source is information

14    showing that there is confusion within the prison

15    community about the two Daniel Sanchezes.

16              And for that reason, the source of this

17    information, the identity of the source is relevant

18    and helpful to Mr. Sanchez in preparing and

19    presenting his defense, because this person, this

20    source, is clearly confused.

21              THE COURT:  Well, who is the -- who is

22    giving this information on page 5?  Is it Kevin

23    Boyle?

24              MS. JACKS:  We don't know.  What it looks

25    like to me, from reading the report, if you look at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1071

```
 1    page 1 of the report -- this is an FBI agent
 2    interviewing some corrections officers from the gang
 3    unit.  And at the beginning of the report it says,
 4    "The following contains confidential information from
 5    the New Mexico Department of Corrections, including
 6    confidential source information from the Department
 7    of Corrections, and should not be disclosed outside
 8    of the FBI and the New Mexico Gang Task Force."  And
 9    so the report is written in such a way as to just
10    summarize the information that was provided, but
11    not -- it does not contain the confidential source
12    information that was provided within the text of the
13    report.
14          And what I'm saying is based on the
15    statement about Daniel Sanchez, it's evidence of a
16    source confusing the two Daniel Sanchezes.  And we
17    want that source, because it's relevant and helpful
18    to preparing and presenting our defense.
19          THE COURT:  Well, you're basically asking
20    the Government to go to these individuals that are
21    known and find out who told them this information;
22    right?
23          MS. JACKS:  Well, the FBI agent is working
24    for the Government as the investigating agent in this
25    case.  And apparently, the two individuals that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 60

```
 1    FBI agent interviewed provided the FBI agent with the
 2    confidential source information.  That just hasn't
 3    been provided to us.
 4             THE COURT:  Give me -- before you start
 5    talking, Mr. Beck, give me the name, or give me
 6    the -- I've got your response, 864 -- take me to your
 7    page, and then tell me -- and you can respond to
 8    Ms. Jacks' arguments.
 9             MR. BECK:  It looks like paragraph 6 on
10    page 20.
11             THE COURT:  Okay.
12             MR. BECK:  So I think Your Honor was onto
13    something here, that the tipster in this report would
14    be -- it looks like to me -- Kevin Boyle, Kenneth
15    Morris, and Paul Pena.  So they can ask those people
16    who their sources were.
17             THE COURT:  Let me ask you this:  Is this
18    CI -- do you know who this CI is?
19             MR. BECK:  We don't.
20             THE COURT:  And is this a testifying CI?
21             MR. BECK:  No, we don't know who this is.
22             THE COURT:  So you don't even know who it
23    is, and you don't plan on using this person?
24             MR. BECK:  No.  And I think, again, this
25    goes to Footnote 3 on page 16 through 17 of that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1073

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 61

```
 1   document that we're looking at, especially on page

 2   16, when it says "Second."

 3            THE COURT:  I'm sorry, which document are

 4   you talking about?

 5            MR. BECK:  Our response.

 6            THE COURT:  Your response.

 7            MR. BECK:  And so on page 17, as we said

 8   there "Second," so you can see that, given the high

 9   Bates number here, 14367, this was disclosed late.

10   And it was disclosed after we had the hearings, in

11   which they pointed out to us several different FBI

12   numbers that they thought were associated with the

13   SNM.  And we agreed that there had been other

14   investigations into the SNM, and that we asserted

15   there was nothing relevant or helpful in there.

16            And here, I guess, this is helpful to point

17   out that a source, or perhaps these NMCD members were

18   confused about this other Daniel Sanchez, and whether

19   he was incarcerated in Virginia or not.

20            THE COURT:  And you would agree -- do you

21   agree with Ms. Jacks, this looks like it's a garbled,

22   sort of conflation of two Sanchezes, or some facts

23   that relate to her client, some facts that relate to

24   the other Daniel Sanchez?

25            MR. BECK:  I don't know if her client was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1074

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62

1    incarcerated in Virginia at that time.  But I know

2    that the dated out or struck personal information,

3    the date of birth there is the other Daniel Sanchez'

4    date of birth.  So --

5           MS. JACKS:  Can we understand which Daniel

6    Sanchez we're talking about?  Because the report

7    refers possibly to both.  And my report is redacted,

8    so I don't know which one counsel is referring to.

9           MR. BECK:  Right.  So that's what I'm

10   saying is the date of birth there is not this Daniel

11   Sanchez' date of birth.

12          MS. JACKS:  Where is "there"?

13          MR. BECK:  Page 5.

14          THE COURT:  Direct your questions to the

15   Court.

16          MR. BECK:  Page 5, after it says, "Daniel

17   Sanchez, Sanchez, date of birth," and it's redacted,

18   his date of the birth is not this Daniel Sanchez'

19   date of birth.

20          THE COURT:  Do you have any real problem

21   with disclosing the date of birth here?

22          MR. BECK:  No.

23          THE COURT:  All right.  So send a letter

24   over to Ms. Jacks with this date of birth.  And that

25   will give her comfort that this isn't referring -- I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1075

```
1    mean, it seems --
2            MS. JACKS:  That doesn't give me comfort
3    though, because the source --
4            THE COURT:  Let me speak.  It seems to me
5    that you've got a source that's confused, at best, a
6    source they're not going to use.  I guess I'm not
7    seeing, just because he's confused, that provides any
8    relevant or helpful information.  It's just a
9    confused source.
10           MS. JACKS:  Well, prison is not like living
11   in the free world.  It's hard to get information
12   between people.  I think there is an informant that
13   actually says that, whose identity I'm seeking.  And
14   so one of the things that happens within a prison
15   environment is -- it's like a game of Telephone.
16   Things get mixed up, things get interpreted, and then
17   related.  And so my point is that showing an instance
18   of that, or showing someone to whom that has happened
19   could help me show that other witnesses are confused
20   about the Dan Dan or Daniel Sanchez that they're
21   referring to.
22           And this source, whoever it is, is clearly
23   confused, because based on what counsel just
24   represented, he's talking about the other Daniel
25   Sanchez, but included in that is information that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1076

1    applies to the Daniel Sanchez charged in this

2    indictment; that he's currently incarcerated in

3    Virginia, which on the date of this report, the

4    Daniel Sanchez in this indictment was incarcerated in

5    Virginia.

6            THE COURT:  All right.  I think that's a

7    little remote, if I start disclosing sources just

8    because they're confused so that you can show that

9    sources are confused.  I think that's a little

10   remote.  So I'm inclined not to require the

11   disclosure here.

12           Mr. Beck will give you the date of birth so

13   that you have that.

14           MS. JACKS:  And just so the Court's clear,

15   I'm not trying to prove the source.

16           THE COURT:  I need to take a break here.

17   I'll let you continue afterwards.

18           All right.  We'll be in recess for about 15

19   minutes.

20           (The Court stood in recess.)

21           THE COURT:  Do we have everybody in here?

22   Look around and see if you've got co-counsel here.

23           All right.  Ms. Jacks, you were about to

24   explain to me that you are not seeking it only for

25   the purpose of showing that that information was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1077

```
 1    floating around in the prison that sometime was
 2    inaccurate.  And I then felt I needed to give
 3    Ms. Bean a break.  So if you want to continue.
 4            MS. JACKS:  That's fine.  All I was going
 5    to say, Your Honor, is that we're trying to bring
 6    forth facts that would substantiate a defense of
 7    misidentification as to some or all of the overt acts
 8    that are alleged in the 1613 indictment.  And I don't
 9    have any idea what else the Government may seek to
10    bring in.  And to the extent that there is confusion
11    in the Department of Corrections between the Daniel
12    Sanchezes, I think that does help develop that
13    defense of misidentification.
14            THE COURT:  All right.  What do you want to
15    go to next?
16            MS. JACKS:  Do you want me to keep going?
17    Is that the idea?  Or should somebody else get a
18    turn?  I'm prepared to keep going.
19            THE COURT:  It's your call, and whatever
20    the defendants want to do.  If you need a minute to
21    talk to everybody, that's fine.  I'm here, and we're
22    going to work all day and cover as much as possible.
23            MS. JACKS:  I'll keep going until a riot
24    develops behind me.
25            THE COURT:  All right.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1078

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 66079

```
 1              MS. JACKS:  The next one -- I had a chance
 2    during the recess to just sort of try to organize
 3    these a little bit in the order that I want to talk
 4    about them.  So I'm going to move to kind of a
 5    different topic.  And that's going to be the
 6    informant at DeLeon 1562.  That would be at page 16
 7    of Document 815.
 8              THE COURT:  And the number is 679 or the
 9    644?
10              MS. JACKS:  It's our pleading 815, at page
11    16, DeLeon 1562.
12              THE COURT:  And the exhibit number?
13              MS. JACKS:  Is 5.  And we're back at the
14    Molina homicide.
15              THE COURT:  What was the exhibit -- we were
16    on 19.  Okay.  Do you know where your 5 starts
17    looking at the CM/ECF numbers at the top?
18              MS. JACKS:  815-5.
19              THE COURT:  All right.  I have it.
20              MS. JACKS:  Okay.  This is a source that's
21    providing information on February 19th of 2015 to the
22    FBI.  And this source is providing information on a
23    variety of topics, but one of the things he talks
24    about is the Molina homicide.  And at page 3 of the
25    report -- that's in Exhibit 5 -- the source tells the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    FBI that, "The Security Threat Intelligence Unit in

2    Las Cruces has an officer named Holguin, who was

3    passing information to Anthony Baca.  Source believes

4    Holguin was the individual who originally provided

5    the paperwork to Baca for Herrera and the others to

6    do the hit on Molina.  Source believes Holguin only

7    worked with Baca.  Baca told the source Holguin was

8    disclosing the names of individuals who were

9    confidential sources."  So what this CI is saying is

10   relevant and helpful to Mr. Sanchez' defense.  And

11   it's relevant and helpful insofar as what he appears

12   to be saying is that there is a correctional officer

13   who is giving information to Anthony Baca and giving

14   information like the names of individuals who are

15   confidential sources.  And that, in fact, the

16   paperwork that supposedly got transmitted down to the

17   Southern New Mexico Correctional Facility, he thought

18   had been transferred to Baca by this Officer Holguin.

19            And, as I pointed out in our pleadings --

20   well, I guess, whether or not this information is

21   true, I think it's helpful to Mr. Sanchez.  I would

22   point out that this is supposedly a testifying

23   source, according to the Government.  If it's true, I

24   think the source certainly is providing information

25   that could begin to form the basis of a defense of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    outrageous Government misconduct; if, in fact, a

2    correctional officer who is aware of SNM and the way

3    SNM supposedly operates is passing paperwork in an

4    effort to instigate assaults.

5           If it's false, I think it shows that this

6    informant that the Government is going to be relying

7    on as their proof of this case against Mr. Sanchez

8    and others, is somebody that really has absolutely no

9    moral compass, and someone that will accuse somebody

10   of serious criminal conduct if he feels like it,

11   regardless of whether it's true.

12          THE COURT:  You're talking about the

13   Holguin?

14          MS. JACKS:  I'm talking about the source

15   who is providing the information regarding Holguin.

16   I think the identity of this source is necessary for

17   us to investigate further the source's information

18   about Holguin giving Baca the paperwork.

19          THE COURT:  Well, if -- I mean, we talked a

20   lot about the paperwork relating to Molina.  And I

21   certainly thought that that had some -- that that

22   was -- the timing was important for the disclosure of

23   some CIs to some of the defendants.  But here, what

24   difference does it make whether it was being handled

25   by Holguin or not being handled by Holguin?  How does

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1081

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9082

```
 1    that help Mr. Sanchez?
 2           MS. JACKS:  Well, I think if a corrections
 3    officer was the person who gave the paperwork to
 4    somebody to send it down to instigate a hit, I think
 5    that would show outrageous Government misconduct in
 6    the investigation or in the criminal activity in this
 7    case.  I mean, if the Government is participating in
 8    or initiating the conspiracy to commit murder, I
 9    think that would be pretty outrageous.  And I think
10    it would --
11           THE COURT:  I agree with you.  But how does
12    that help his defense?  I guess, I'm unfamiliar with
13    the outrageous defense.
14           MS. JACKS:  Well, I think -- well, there
15    are cases where Government -- outrageous Government
16    misconduct has resulted in the dismissal of an
17    indictment.  And there is case law supporting that.
18    I think the remedy is generally dependent on the
19    nature and scope of the misconduct.  Given the nature
20    of the allegation, if in fact it's true, I wouldn't
21    imagine it's the first or only time.
22           THE COURT:  Okay.  All right.  Well, Mr.
23    Beck, if you'll point me first to your pages that
24    respond to this, and then if you wish to orally
25    respond.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1082

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 70 of 83

```
 1                    MR. BECK:  Our response is at page 32,

 2      paragraph 1 of our response brief.

 3                    THE COURT:  All right.

 4                    MR. BECK:  So as we lay out in that

 5      paragraph of the response, I think this CI obviously

 6      falls into that first category that Morales

 7      indicated, which is the mere tipster whose identity

 8      is never required.  So if we look at the report --

 9                    THE COURT:  Are you calling this person,

10      though?

11                    MR. BECK:  We are.

12                    THE COURT:  How, if you're calling a

13      person, is it going to fit into the tipster category,

14      if you're calling the person?

15                    MR. BECK:  Well, because we're not

16      necessarily calling the person to talk about this

17      incident.  He may talk about this incident.  That --

18      I don't think we've firmed up exactly what he will

19      talk about.  He may.

20                    THE COURT:  I guess, though -- I guess I

21      would probably, for purposes of giving some guidance,

22      I guess I would have a hard time, if you're calling

23      somebody, to put them over in the tipster category.

24      I think of the tipster category is the neighbor

25      calling 911 saying, "I heard some shots out here,"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1083

1084

```
1    and that's what generated the police investigating.

2    But that person doesn't know anything other than they

3    heard the shots.  And nobody is really going to call

4    that person because they don't have anything really

5    very useful.  They just started the chain of events

6    in motion by their call.

7              MR. BECK:  Right.

8              THE COURT:  But where, if you've got

9    somebody that's got enough information for the

10   Government is calling them at trial, I guess I'd have

11   a hard time putting them over in the tipster

12   category, even if you don't know what exactly you're

13   going to call them for.

14             MR. BECK:  I think that's where Roviaro

15   looks at whether the person helped to set up the

16   criminal activity or participated in it or was a

17   material witness to it.  For instance, in many of

18   these cases our testifying witnesses will testify to

19   a range of things that they know or admissions

20   against interests, which other defendants admitted to

21   them, even though they weren't a participant or

22   material witness to a specific incident.

23             So if we look here, again, as I'm saying

24   it, if we look at the report, Exhibit 5, this is a

25   debrief -- it appears to be a debrief -- in which the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1084

 1   defendant gives information about the Javier Molina

 2   murder on pages 1 through 2.  And then further down

 3   on page 2, "gave details of homicides currently

 4   unsolved, 2008, 2009."  So he's providing law

 5   enforcement tips on information they may not know.

 6   And I grant you that some of this led to this

 7   indictment -- both of these indictments -- some of

 8   the information found in these debriefs.

 9            So then, what you do is you look at whether

10   the person was a participant in, or material witness

11   to the activity.

12            So here, if you look at the statement then

13   on page 3, which says, "The STIU in Las Cruces has an

14   officer named Holguin, who is passing information to

15   Anthony Baca.  Source believes Holguin was the

16   individual who originally provided the paperwork to

17   Baca for Herrera and the others to do the hit on

18   Molina."  And so where it says, "Source believes,"

19   the source was not involved in the passing of the

20   paperwork.  He believes that this is the individual

21   who passed the paperwork to Baca.  So he's not a

22   participant nor a material witness to passing the

23   paperwork.  That's who he believes.

24            Now, that can be -- again, going back to

25   the testifying witness, that belief can be explored

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                         1-800-669-9492

                                                             e-mail: info@litsupport.com

DNM 1085

1   in cross-examination, where it came from.  If the

2   purpose is to say that he lacks a moral compass or

3   she lacks a moral compass -- obviously, if the person

4   is incarcerated, it would probably be a he -- lacks a

5   moral compass, that could be explored on

6   cross-examination by exploring what this belief is.

7   If we want to get to who is the participant, that

8   person very clearly seems to be Officer Holguin, if

9   this is true.

10          Going back to the defense of outrageous

11  Government conduct.  I think my understanding of

12  that -- and it's a little bit because I -- granted, I

13  didn't have time to research this -- is it's sort of

14  an entrapment defense, where the Government entraps

15  the defendant by outrageous Government conduct and

16  participating in the criminal activity.

17          Given the information that this hit on

18  Javier Molina was out for a substantial period of

19  time before it actually occurred, when the paperwork

20  was sent down and Mr. Molina was murdered, if the

21  statement is true, if Officer Holguin provided that

22  paperwork to Baca, I think that would make him a

23  co-conspirator, as opposed to supporting a claim of

24  outrageous Government conduct that he entrapped these

25  defendants in that.  If the hit was outstanding

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1086

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 74

1    beforehand, it had been there, he co-conspired by

2    providing the paperwork to Baca.  So --

3              THE COURT:  All right.  Anything else, Mr.

4    Beck?

5              MR. BECK:  I think that's probably it.

6              THE COURT:   Thank you, Mr. Beck.

7              Ms. Jacks.

8              MS. JACKS:  I'm just having trouble

9    following Mr. Beck's comments.  It seems like he's

10   conceding that the information is relevant and

11   helpful.  I don't know -- I would think we're

12   certainly entitled to investigate what the informant

13   knew about Holguin providing paperwork and names of

14   informants to members of the SNM, and specifically,

15   the basis of the belief about the paperwork on Javier

16   Molina.

17             THE COURT:  Well, I guess I'm not -- if

18   there was a Holguin that was involved in delivering

19   the paperwork, I guess I'm not seeing how that helps

20   Mr. Sanchez.  It's an interesting fact, but I'm just

21   not seeing how that's helpful.

22             There was some discussion at the last

23   hearing about the timing of it.  And I think I

24   allowed the disclosure to some people about that.

25   But I'm inclined not to grant the request to disclose

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1087

 1    this.  I'm having a hard time figuring out how that

 2    information --

 3           MS. JACKS:  There is actually one argument

 4    I didn't make, and it is made in our brief.  But the

 5    bottom line -- or one of our potential defenses is

 6    that the paperwork story is false.  And one

 7    indication of a false story is a story that varies

 8    over time or varies between individuals.  And so we

 9    have stories about that the paperwork was passed down

10    a year earlier, that the paperwork was passed down a

11    year earlier, that the paperwork was passed down the

12    day before the homicide.  We have stories that Inmate

13    A carried it.  We have stories that Inmate B carried

14    it.  Now, this is a third story that the paperwork

15    originated somehow with a correctional officer.  So

16    just the fact that there are different stories, just

17    like different versions of a robbery are used by

18    defendants to show that nobody is telling the truth.

19    All of these stories are exactly that, stories, and

20    there never was any paperwork.

21           THE COURT:  And where is that?  Where do

22    you raise the --

23           MS. JACKS:  In our brief, Document 815,

24    starting -- well, it's at page 16 and 17.  The

25    paragraph begins on page 17 with that specific

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1088

1    argument.  The fact is, Your Honor, there is no

2    question that Javier Molina was murdered.  He was

3    murdered and it's captured on camera.  And we know

4    that he was killed by two government cooperating

5    witnesses.  The easiest thing in the world to make up

6    would be, Oh, that wasn't -- I didn't do that because

7    I was mad at him.  I didn't do that because he stole

8    from me.  I didn't do that because he used my drugs.

9    I did it because somebody told me to.  I did it

10   because SNM made me.  And that's really where the

11   paperwork story comes in.

12         And so certainly one of our attacks at

13   trial could be that's a completely made-up version of

14   events intended to put the blame on SNM, so the two

15   people who are on video killing Mr. Molina can get

16   some sort of cooperation agreement with the

17   Government and get out of the prison.

18         THE COURT:  Well, there may be differing

19   details about the paperwork.  That's what we explored

20   a lot last time.  But I'm not seeing that this

21   witness necessarily helps Mr. Sanchez, which is what

22   I've got to focus on here.  So I'll look at it, but

23   I'm not inclined to --

24         MS. JACKS:  Let me go back, because I want

25   to direct the Court to our joinder which we filed.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1089

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 77

 1   mean, the murder of Molina and the conspiracy and the

 2   murder of Javier Molina is part of the VICAR

 3   indictment.  But it's also alleged as part of the

 4   racketeering conspiracy.

 5          And as Mr. Beck has pointed out, the

 6   Government doesn't have to prove any overt act.

 7   Because of that, they just have to prove that

 8   somebody -- that Mr. Sanchez agreed -- that somebody

 9   in the racketeering enterprise contemplated or agreed

10   that two overt acts would be completed during the

11   course of the conspiracy.  And because of the

12   extremely broad nature of that charge, what that

13   means, sort of the inverse of that, is anything that

14   helps any defendant show or negate an alleged overt

15   act in the racketeering conspiracy helps Mr. Sanchez

16   negate the racketeering conspiracy charge.  And I

17   think that applying this very narrow analysis of who

18   it benefits and who it doesn't, doesn't work in the

19   context of the racketeering conspiracy under 1962(d).

20          And I just want to get the document that we

21   filed that makes that argument.

22          THE COURT:  Ms. Jacks, what's the document

23   number on that?

24          MS. JACKS:  It's 336, it's Document 336 in

25   case 1613.  And we did only file this in the case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1090

1   charging the racketeering conspiracy.  But I don't

2   think this was addressed in the hearings in November,

3   this particular argument.

4           THE COURT:  All right.  I have 336 in front

5   of me.  All right.  Anything further you want to say

6   on that, Ms. Jacks?

7           MS. JACKS:  Only that we've had this

8   discussion -- I think Mr. Adams and I -- with Mr.

9   Beck yesterday afternoon, and I thought we were all

10  in agreement that the racketeering conspiracy does,

11  because of its breadth, present exactly that problem

12  or situation.

13          MR. BECK:  And I don't think that's right.

14  I think we may have misunderstood.  What I said was

15  that I know that that's their position.  But that is

16  not the Government's position.  And so, for instance,

17  in many cases -- and I guess I can really only point

18  the Court to one that I discussed -- what happens in

19  a conspiracy is that -- for instance, a drug

20  trafficking conspiracy, where you would prove an

21  overt act, the Court identifies some CIs to some

22  defendants and doesn't to certain co-defendants.  So

23  I think, in those cases there is a distinction, just

24  like there should be in this case.  So I think it's

25  an individual analysis.  And I guess, without looking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    at -- I don't have Document 336 in front of me, and I
 2    can't look at that.  But I don't think that's
 3    necessarily right.
 4              THE COURT:  All right.
 5              MS. JACKS:  Maybe I can just simplify it.
 6    But let's say that the jury believes -- I hate to
 7    pick on you, Mr. Varela, but I will because you're
 8    right in my line of sight -- but let's say that the
 9    jury believes that it was agreed upon -- that SNM is
10    a racketeering enterprise, and that there was a
11    conspiracy, and that the agreement was that
12    Mr. Varela perform two overt acts.  Then Mr. Sanchez
13    would be guilty of the racketeering conspiracy if he
14    were a member of the enterprise.  So if Mr. Varela
15    has a defense, or if there is some information that
16    helps Mr. Varela disprove one or both of those
17    racketeering acts, and the jury believes those
18    racketeering acts -- does not believe those -- I'm
19    sorry, overt acts -- beyond a reasonable doubt, then
20    Mr. Sanchez is not guilty.
21              So the information as to one defendant is
22    by nature of the racketeering conspiracy charge
23    available to be used against all the other
24    defendants.  That's why the Government likes it.
25              THE COURT:  All right.  Do you have your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1092

```
 1    next CI you want to go to?

 2             MS. JACKS:  I do because I want to follow

 3    up because I think it might just be smart --

 4             MS. FOX-YOUNG:  Your Honor, I hate to

 5    interrupt, but on behalf of Mr. Perez, we joined this

 6    motion, and particularly on this CI.  I don't know if

 7    the Court wants to hear argument from us on this

 8    exhibit now or later, but --

 9             THE COURT:  Later.  Ms. Jacks.

10             MS. JACKS:  So the CI at 1562, we finished

11    up arguing about this is another version, another

12    conflicting paperwork story.  And so I think what

13    might be smart is to touch or discuss the other CIs

14    that provide paperwork stories that are conflicting

15    with this one.

16             THE COURT:  All right.

17             MS. JACKS:  So I think we just identify

18    those.  I think that would be the CI at DeLeon 12960,

19    12963, and 12966.  Those are discussed in Document

20    815, starting at page 26, and going through page 28.

21             THE COURT:  Okay.  And the exhibit number

22    is --

23             MS. JACKS:  The exhibits are 14 and 15.

24             THE COURT:  All right.  So it's 12960,

25    12963, and 12966.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1093

1           MS. JACKS:  Correct.  And it looks like to

2    me, just trying to read the reports, that this is

3    actually two informants.  But I'm not clear.  The

4    Government has not disclosed that.  And it could be

5    three informants.

6           THE COURT:  Okay.

7           MS. JACKS:  But what's happening when you

8    read all of these statements is that there are

9    versions of the paperwork story, but they differ

10   insofar as who brought the paperwork down and the

11   timing.

12          THE COURT:  Let me ask this, to make sure

13   that I have the allegations against Mr. Sanchez

14   clear:  Tell me on the Molina murder what they are

15   alleging that Mr. Sanchez did.

16          MS. JACKS:  That he conspired to murder

17   Mr. Molina, and that he aided and abetted the murder.

18          THE COURT:  I know.  But what is the

19   specific factual -- what are they saying he did as

20   part of the conspiracy?

21          MS. JACKS:  Well, I think there are

22   different versions.  But I think, generally, what

23   they're saying is that somehow he ordered the people

24   that actually committed the murder to do it.  And

25   that he may or may not have had some involvement in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1094

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1095

1    providing them or getting the weapons together.

2           THE COURT:  But he was located at Southern;

3    correct?

4           MS. JACKS:  Yes, he was in the pod where

5    the homicide was committed.

6           THE COURT:  Was he on the same level as

7    Molina, or was he on the top level?

8           MS. JACKS:  Well, the pod is two levels.

9    And the inmates are moved -- unless they're locked

10   down, can move freely between both levels.  And the

11   homicide began on the upper level and ended on the

12   lower level.  I believe in the video at the time

13   of -- when the attack started, Mr. Sanchez was on the

14   lower level.  His cell was on the upper level.  And

15   by the time the video ends, all inmates were ordered

16   to return to their cells and he did.

17          THE COURT:  So Mr. Sanchez' cell was on the

18   upper level?

19          MS. JACKS:  His personal cell, correct.

20          And the other thing is the Molina -- the

21   conspiracy, and the murder of Molina are alleged as

22   overt acts in the racketeering conspiracy, meaning

23   that, if the Government is successful in proving

24   those in the trial of 1613, then those could be the

25   two acts of racketeering agreed to have been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83 3096

 1   committed that could form the basis of the 1962(d)

 2   conviction.

 3           THE COURT:  All right.  And was Mr. Sanchez

 4   the leader of the SNM -- is that the allegation -- at

 5   the Southern New Mexico Facility?

 6           MS. JACKS:  I think the Government contends

 7   that he was one of them.

 8           THE COURT:  One with who?  Who is the

 9   other?

10           MS. JACKS:  I don't know that -- there are

11   so many different, quote, leaders reported in these

12   reports.  I couldn't say.  I think that's better

13   addressed to the Government, what their version of it

14   is today.

15           THE COURT:  What is the -- did Mr. -- is

16   the allegation Mr. Sanchez played any physical role

17   in killing Mr. Molina, or is it just that he ordered

18   other people, the SNM group, to kill him?

19           MS. JACKS:  You mean, whether he was a

20   stabber?

21           THE COURT:  Yes.

22           MS. JACKS:  No, he was not.  At least -- I

23   mean, I'm not aware of anything that would support

24   that.

25           THE COURT:  So the allegation is that he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1096

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1097

1   received paperwork from Mr. Baca in the Northern

2   facility, and then he then told the local people to

3   kill Mr. Molina?

4           MS. JACKS:  I think what -- I mean, if you

5   want to flesh this out a little bit, what -- Mr. Baca

6   was at the Penitentiary of New Mexico in Santa Fe.

7   And the story is that somehow paperwork got

8   transmitted with inmates who were at the PNM Level 5.

9   So Baca is at PNM Level 6.  That's a physically

10  different building than PNM Level 5.

11          The day prior to the Molina homicide, I

12  believe three inmates were transferred from PNM Level

13  5 to the Southern New Mexico Correctional Facility.

14  Those inmates were searched prior to boarding the

15  van, and their property was transported separately

16  from them.  They arrive at Southern.  And at some

17  point -- we don't know when -- their property may or

18  may not have been returned to them.  The

19  allegation -- I think the Government's allegation is

20  in that property of one of those three inmates -- and

21  the stories vary on which one -- there was some sort

22  of paperwork that was subsequently passed to the

23  inmates in the neighboring pod, where it was

24  reviewed, and then Mr. Molina was killed.

25          THE COURT:  And what is the allegation of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Sanchez in that?  Was the paperwork delivered to
 2    him?
 3            MS. JACKS:  Well, there is differing
 4    stories about who actually obtained the paperwork or
 5    when the paperwork was obtained.  I mean, one of the
 6    stories is it was down there a year prior.  So I
 7    can't really answer that.  I think what the
 8    Government would say is that Mr. Sanchez must have
 9    read it.  And according to their informants that are
10    the actual killers, he told them that they had to do
11    it.
12            THE COURT:  And Mr. Sanchez told who that
13    they had to do it?
14            MS. JACKS:  Well, I don't think he told
15    anybody.  But the Government's theory is that -- the
16    Government's cooperators are claiming at various
17    times that Mr. Sanchez told them to do it, told them
18    to kill Molina.
19            THE COURT:  Told who?  What is the
20    Government's story?  Told who to kill him?
21            MS. JACKS:  Well, I think Mr. Armenta
22    claims that Mr. Sanchez told him.  And I am not privy
23    to Mr. Montoya's statements, since those haven't been
24    disclosed.  But I can only assume, since he's
25    cooperating in hopes of receiving a more lenient
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1098

 1    sentence, that he's saying the same thing.

 2            THE COURT:  So Mr. Montoya and Mr. Armenta

 3    is what the story is that Mr. Sanchez told them they

 4    had to do it?

 5            MS. JACKS:  Right.  I mean, they've also

 6    made conflicting statements.  I mean, I think

 7    Mr. Armenta originally said he did it because Mr.

 8    Molina taunted him and his retarded child.

 9            THE COURT:  Okay.  Now, with that

10    background, looking at 12960, do you want to point to

11    me to what the paperwork story is here?

12            MS. JACKS:  Well, I think in -- let me pull

13    it up -- I mean, I think if you read it -- it may be

14    better if the Court just reads them on its own at

15    some point.  Because, basically these, when read with

16    1579, these four statements altogether tell different

17    stories about the paperwork:  About where it came

18    from, who transmitted it, what happened once it got

19    there.  And my point is -- going back to the point

20    that I was just arguing that one argument from all

21    these different stories is that they're all lies, and

22    they're all lies generated substantially after the

23    fact, to benefit the people that actually did the

24    killing and to help them escape responsibility.

25    Certainly very common in this type of situation.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            THE COURT:  All right.  Anything else you
 2    want to say on these issues, Ms. Jacks?
 3            MS. JACKS:  No.  But I think those are all
 4    sort of looked at together.
 5            THE COURT:  All right.  Go ahead.  Do you
 6    have something else you wanted to say?
 7            MS. JACKS:  Not on this, I don't.
 8            THE COURT:  All right.  Mr. Beck, take me
 9    to which page in your brief you discuss these three
10    documents.
11            MR. BECK:  So I think Exhibit 14 is
12    discussed at page 46, and Exhibit 15 is discussed at
13    page 38.  So I think, again, this goes into --
14            THE COURT:  I guess there is one more, 17.
15            MR. BECK:  Am I missing one?  Exhibit 17
16    we're talking about?
17            MS. JACKS:  I think there are two
18    statements, two different statements included in
19    Exhibit 15, and those were the ones we were guessing
20    were from the same person.  But, again, they may not
21    be.
22            THE COURT:  Okay.  So 12966 is a
23    separate -- you think is a separate CI?
24            MS. JACKS:  I was guessing it was the same
25    as 12963.  But that's all it is is a guess.  Only the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1100

```
 1    Government knows.
 2              THE COURT:  That's the reason you pulled
 3    that page out separately is because it's a different
 4    document, but it's still part of this one document,
 5    15?
 6              MS. JACKS:  Right.  And it's part of the
 7    same argument that it appears to be a more detailed
 8    version of the exact same story told by the informant
 9    at 12963.
10              THE COURT:  All right.  Mr. Beck?
11              MR. BECK:  So I think, again, this goes
12    into how the information, as opposed to the identity
13    of these CIs, is helpful, okay.
14              So, as you'll see at page 49, we said that
15    the -- Mr. Sanchez, we concede, we agree, met his
16    burden for disclosure of the CI in Exhibit 14.
17              But I think what Ms. Jacks is getting at is
18    the different stories about when the paperwork came
19    down, who brought it, and how it was there.  And
20    she's saying, and I think I agree with her, that
21    information is helpful.  What's also helpful is we
22    don't contend that we have the physical paperwork.
23    And so, when she says that she wants to develop this
24    theory that there was no paperwork, and that it's all
25    made up, I think she has the ammo for that.  The CIs
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1101

1    aren't going to provide her helpful information

2    beyond that.  If she goes and interviews these CIs,

3    perhaps they would say, "My story has changed, and

4    the paperwork came down here," which would give her

5    cumulative evidence that, again, the paperwork came

6    on a different day.

7            If we're offering them as testifying

8    witnesses -- I'm just saying generally, I don't

9    know -- she has more impeachment material.  Or they

10   could confirm the information that she already has,

11   which she can already use to impeach the Government

12   agents, or the story, or develop her defense, at

13   which point she, again, already has that information.

14           So when we're looking at how the

15   information, as opposed to the identity of the CI is

16   helpful and relevant to her, beyond the information

17   which we've already provided, the identity of these

18   CIs would not help her and would not be significant.

19           So I think, to the extent that the stories

20   conflict, we don't deny that.  We don't say we have

21   paperwork.  And when Mr. Sanchez is alleged to have

22   ordered those murders, as opposed to brought down the

23   paperwork himself, that's not significant testimony

24   to him.  And to the extent that it is significant, he

25   already has what's significant about it; that there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1102

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 90

```
 1    are conflicting stories.

 2             THE COURT:  Well, is it best for you in

 3    your defense, Ms. Jacks, to argue there are so many

 4    conflicting stories, it could have occurred, so that

 5    there is no paperwork?  Is that what you want to

 6    argue?

 7             MS. JACKS:  What I want to do is have the

 8    information that I'm entitled to, so that I can

 9    investigate and determine what defense I want to

10    present.  And I mean -- I think it's ineffective for

11    a lawyer to try a case off the Government's

12    discovery.  I mean, I would -- I probably could

13    find --

14             THE COURT:  You have the burden of proof

15    here, so you've got to tell me how it's helpful and

16    relevant.  And I guess I -- you know, if you play

17    your cards too close to your vest, it's harder for

18    you to meet that burden.

19             MS. JACKS:  What I think I've outlined in

20    our pleading is that the differing stories exist, and

21    the fact of the differing stories is relevant and

22    helpful to our defense.  We -- I mean, I don't know

23    where we're going to come down once we investigate

24    the different stories.

25             THE COURT:  But isn't that what Mr. Beck is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   saying?  He agrees with you, but you've got all that.
 2   These stories are all conflicting.  And so --
 3           MS. JACKS:  Let me go back --
 4           THE COURT:  How does the identity of the
 5   CI -- how does that help you establish that any more
 6   than the discovery that you have?
 7           MS. JACKS:  Well, let me just go back,
 8   because we were talking about Exhibit 14 and Exhibit
 9   15, and I actually think they're different.  Exhibit
10   14 is an informant who the Government concedes, or
11   recognizes in their filing, that he's one of the two
12   stabbers and the identity is known, yet they still
13   assert the privilege to claim the informer's
14   privilege.
15           And as I pointed out yesterday, and as I
16   pointed out in our reply, which is Document 892,
17   under Roviaro, once the informant's identity is known
18   to somebody who has a cause to resent the
19   communication, there is no longer a privilege.  So
20   whatever privilege the Government is attempting to
21   claim --
22           THE COURT:  So who knows this?  Who knows
23   the identity?
24           MS. JACKS:  I would say almost everybody in
25   this courtroom.  He's on video doing the stabbing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1104

1    The Government -- he entered a plea agreement a

2    couple weeks ago with the Government.  I mean, do you

3    want me to say his name?

4              THE COURT:  I don't care.

5              MS. JACKS:  It's Jerry Montoya.

6              THE COURT:  Okay.

7              MS. JACKS:  But the Government is asserting

8    the privilege.  And I pointed out in my reply, I just

9    think this is completely irresponsible.  The

10   Government is asserting a privilege that, according

11   to the United States Supreme Court, no longer exists.

12   And I just find that sort of stunning in itself.  But

13   I also know they're not doing it to protect Mr.

14   Montoya.  Everybody knows who he is.  They're doing

15   it for some other reason.

16             And I don't know how carefully the Court

17   has looked at the reply that we filed, but -- and the

18   declarations attached to it -- but during the course

19   of our investigation -- and I alluded to this

20   yesterday -- we know what the Government is doing.

21   And what's happening is the Government is telling

22   everybody here in court, Oh, you can't know the

23   identity of this person; that's secret.  But they're

24   going up to the prisons, and they're pulling out

25   people who aren't charged in this indictment, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1105

1    they're telling them, Hey, you know what, you can be

2    a witness or a defendant.  We have this information

3    on you from this person.  And they're naming their

4    informants -- they're naming them -- to people who

5    are members of the SNM, who could be liable in this

6    racketeering conspiracy.  That is complete -- I mean,

7    if they want to do that, great, but they can't come

8    into this court and claim that they have the

9    informer's privilege.  Once they do that, the

10   informer's privilege evaporates, it no longer exists.

11          And that's why they're taking this position

12   on Mr. Montoya, because they don't want the Court to

13   force them to tell all of us whose names they've been

14   dropping, which informant names they've been dropping

15   up at the prison during their continuing

16   investigation.

17          THE COURT:  Well, I'll look at your cases,

18   but I guess I think this is kind of a monumental

19   waste of time, if everyone in the room knows who is

20   this person, and we're spending a lot of time.  It's

21   not helping you get ready for trial.  You know who

22   this person is.  So it seems like it's just wasting a

23   lot of time.

24          MS. JACKS:  Can I just beg the Court's

25   pardon, because when I filed my motion, back on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1106

```
 1    January 9 or 8, I didn't know.  That has been

 2    something that's transpired in the past couple of

 3    weeks.  And until the Government filed their reply,

 4    which was, I think, on January 30, I did not have any

 5    suspicion -- I mean, I didn't know.  So it wasn't

 6    intended to waste the Court's time.  I think if

 7    somebody is wasting the Court's time, it's the

 8    Government with this game playing.

 9          THE COURT:  All right.  Who is your next

10    CI, Ms. Jacks?

11          MS. JACKS:  I want to talk about number 15,

12    because as I said we were talking about 14 and 15

13    together.  And 15 is not somebody that the Government

14    concedes everybody knows who they are.  And this is a

15    person that provides conflicting stories about the

16    paperwork.

17          But this informant, at Exhibit 15, also

18    provided t information, particularly about Mr.

19    Sanchez.  And what he told -- what he said about Mr.

20    Sanchez is relevant and helpful to establishing Mr.

21    Sanchez' -- whether Mr. Sanchez is a member of the

22    racketeering enterprise, and whether he -- any

23    participation he had in the Molina homicide was done

24    with the intention of advancing the racketeering

25    enterprise.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1107

 1          THE COURT:  Where are you looking on this
 2  document?
 3          MS. JACKS:  Exhibit 15 --
 4          THE COURT:  I see Mr. Sanchez' name four
 5  lines from the bottom.  Is that where you're
 6  referring?
 7          MS. JACKS:  I'm on the bottom of page 2 and
 8  the beginning of page 3 of Exhibit 815-15.  It's a
 9  lengthy statement from the CI.  And of significance,
10  what the CI says is that Mr. Sanchez was part of the
11  SNM leadership, but that, quote, "he didn't want it,
12  but was voted in."  And then he said that Mr.
13  Sanchez -- that once the Molina hit was ordered, that
14  Mr. Sanchez had to make sure it would get done or he
15  would be hit, or he would be killed.  And so my
16  argument about this informant, is not only does he --
17          THE COURT:  Let me make sure, because I'm
18  not seeing that, Ms. Jacks.  Can you try me again as
19  to where that is?
20          MS. JACKS:  On the document?
21          THE COURT:  Yes.  I'm on page 2 of 15.
22          MS. JACKS:  I'm going to start from the
23  beginning, because I'm having trouble finding it,
24  too.  You know what, Your Honor, I think I included
25  the two statements in Exhibit 15, and I think it's in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1108

1    the second.  So I just need to find it.  I just need

2    a minute.

3            THE COURT:  Is that that little

4    one-paragraph one?

5            MS. JACKS:  I think it's more than that,

6    because the exhibit is 14 pages long.  Maybe what I

7    should do is at the recess find it, so I don't waste

8    the Court's time.  I know it's there.

9            But the bottom line is there is another

10   reason to discover the informant -- that the

11   informant in Exhibit 15 is relevant and helpful to

12   Mr. Sanchez' defense.

13           THE COURT:  Okay.

14           MS. JACKS:  And that argument is laid out

15   on page 28 of our motion, Document 815.  I'll make a

16   note to come back to that, once I can direct the

17   Court directly to the language.

18           You just let me know when you're ready to

19   move on.

20           THE COURT:  Let me ask Mr. Beck, on the CI

21   that's part of, I guess, this Exhibit 15, Ms. Jacks

22   thinks it has two CIs.  Can you enlighten the Court?

23   Starting with 12963, is that all one CI, or is it a

24   couple of CIs?

25           MR. BECK:  One minute, Your Honor.  It is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1109

1   two CIs, Your Honor.

2          THE COURT:  Where does the second CI start?

3   Has Ms. Jacks guessed correctly?

4          MR. BECK:  That is the second report there,

5   which starts at page 3, and then the attached letter.

6   The attached letter is from a different CI than is

7   referred to by the Court.  It starts on page 1.

8          THE COURT:  Okay.  So then, is it 1296 --

9   12966, is that where we start the last CI?

10          MR. BECK:  That's right, Your Honor.

11          THE COURT:  So in this letter which, I

12   guess, is from the CI, which is a letter to an Ernie

13   Holguin, who I guess is different than the Holguin

14   who might have been part of passing the paperwork?

15          MR. BECK:  We believe it's the same

16   Holguin.

17          THE COURT:  Well, the other one was James

18   and this one is Ernie.  Do you think they're the same

19   people?

20          MR. BECK:  I think the other one was Ernie

21   also.

22          THE COURT:  Is my memory off on that,

23   Ms. Jacks?

24          MS. JACKS:  It may be.  Mine -- my memory

25   there wasn't a first name associated.  I thought --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1110

1          MR. BECK:  Right.  Yeah, there wasn't a

2    first name associated with the other report.  It was

3    just STIU Officer Holguin.  I think you were

4    confusing one of the three NMCD officers that

5    provided the statement about Daniel Sanchez being in

6    Virginia.  So they are both Officer Ernie Holguin.

7    There is only one STIU officer who is Officer

8    Holguin.

9          THE COURT:  Well, but is this the officer

10   that there was the allegation that he was involved in

11   passing the paperwork from --

12          MR. BECK:  It is, Your Honor.

13          THE COURT:  Well, assuming somewhere in

14   here is this statement that Ms. Jacks quotes, "He

15   didn't want it but was voted in," and that once

16   Molina, once the Molina hit was ordered, Mr. Sanchez

17   had to make it -- had to make sure it would get done

18   or he would be hit, what's your thoughts about this

19   CI's -- that the disclosure of him is relevant and

20   helpful to Mr. Sanchez?  Your discussion on this is

21   on page 36?  Is that what you said?  38.

22          MR. BECK:  38.  So again, Your Honor, I

23   think that information may be helpful.  I don't

24   know -- I don't know that it's relevant.  And here's

25   what I would offer for that, is if we look at the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1111

1    VICAR statute -- I mean, so on page 10 of our brief

2    under 5, the underlying crime of violence was

3    committed either -- and then if we look at B -- "for

4    the purpose of gaining entrance to or maintaining or

5    increasing position in the charged enterprise."

6            And so if we think about, going back to --

7    I think you said the Gambino crime family, I'm sure

8    that there are instances in which some enforcer may

9    have done something that they didn't want to do.

10   When we're talking about an enterprise or a

11   corporation, there are times your boss tells you to

12   do something and you don't want to do it.  There are

13   times when my trial partners tell me to do stuff and

14   I don't want to do it.  Not these two trial partners,

15   of course, other trial partners.

16           But I think that's why, if we look at what

17   the VICAR and RICO statutes get at, it's part of

18   maintaining your position in the enterprise.  And so

19   I think that may be a helpful statement that they

20   have.  I'm not sure how relevant it is to the crimes

21   charged.

22           Also, again, if we look at the statement

23   and its relevance, it's relevant impeachment

24   material, it's relevant information for them to offer

25   against whoever it may be, or against the Government

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1112

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100 1113

```
 1   saying that he didn't want to do it; that's helpful
 2   to them.  But if they go and interview the CI, the
 3   confidential informant, that confidential informant
 4   would either say yes or no.  And if they say no, it's
 5   certainly unhelpful.  If they say yes, it's not a
 6   whole lot more helpful than what they've got.
 7                THE COURT:  Are you intending to call this
 8   CI?
 9                MR. BECK:  The CI in the exhibit?
10                THE COURT:  Yeah, the one we're focusing on
11   here in the --
12                MR. BECK:  Yes -- sorry -- we are.
13                MS. JACKS:  So that I'm clear, is that the
14   one whose statement starts at 12966?
15                MR. BECK:  I don't know which page you're
16   looking at.  It's the letter attached and the first
17   report of that letter.
18                MS. JACKS:  Thank you.
19                MR. BECK:  So the second part of that
20   Exhibit 15.
21                MS. JACKS:  That's 12966.
22                THE COURT:  All right.  Anything else, Mr.
23   Beck?
24                MR. BECK:  That's it, Your Honor.
25                THE COURT:  All right.  Ms. Jacks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1113

```
 1              MS. JACKS:  The only thing I would point
 2    out is that -- and I didn't say it, I guess, in my
 3    initial argument -- is that I think this evidence
 4    goes directly -- is relevant and helpful to fleshing
 5    out or beginning to investigate the defense of
 6    duress.  And while duress may not be a defense to
 7    homicide in the State of New Mexico, what's charged
 8    in the 1613 case is a racketeering conspiracy.  So it
 9    may be that duress could be presented as a defense to
10    some sort of alleged overt act as part of that
11    conspiracy.
12              THE COURT:  Well, I think we're so far away
13    from a duress defense here that I'm inclined to deny
14    the request to disclose this CI.
15              All right.  Do you want to go to your next
16    CI, Ms. Jacks?
17              MS. JACKS:  Why don't we go to the one at
18    DeLeon 2668.  And that's at our motion, Document 815,
19    page 19.  And that would be Exhibit 8.
20              THE COURT:  Okay.  I have those.
21              MS. JACKS:  Exhibit 8 is a nine-page report
22    of an interview.  I'm just going to summarize what
23    this informant reports is that he's a long-time
24    member and recognized leader of SNM, and therefore,
25    we would contend a participant in the charged
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1114

1    racketeering conspiracy, or during the time period of

2    alleged conspiracy.  And what -- the information that

3    this informant has that is relevant and helpful to

4    Mr. Sanchez' defense is information about SNM's

5    policy about correctional officers and not -- being

6    instructed not to assault correctional officers.  And

7    I think, as we pointed out, in the alleged overt acts

8    to the racketeering conspiracy, it's alleged that Mr.

9    Sanchez assaulted, I want to say, 11 correctional

10   officers in furtherance, remember, of the SNM

11   racketeering enterprise.  This is proof -- these

12   assaults are proof, according to the Government, that

13   there was a conspiracy to violate the racketeering

14   laws.

15           THE COURT:  So in the indictment against

16   Mr. Sanchez there is allegations that he assaulted 11

17   times corrections officers?

18           MS. JACKS:  That's right.  At least 11, I

19   think.  Those overt acts are -- and this is referred

20   to at page 19 of our brief -- 13, 15, 17, 21, 25, 27,

21   46, 49, 50, 99, 119, 142, and 160.  And remember,

22   it's a racketeering -- it's a conspiracy to violate

23   the racketeering laws.  So in order for those overt

24   acts to be racketeering activity, it can't be that

25   Mr. Sanchez just got mad and assaulted an officer.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1115

1    It's assaulting the officer in furtherance of the SNM

2    racketeering enterprise, as part of the racketeering

3    activities that are alleged.

4           So what this confidential informant tells

5    the Government, as a long-time recognized leader of

6    SNM, is that "SNM members have been instructed not to

7    harm corrections officers for simply doing their job.

8    When a corrections officer and an SNM member have a

9    conflict, it is usually the result of the inmate's

10   own frustration with the system and normally results

11   in the inmate being moved to another cell.  When this

12   happens, the leadership of the SNM makes it clear to

13   the corrections officers that the incidents are not

14   sanctioned by the organization, and leaders say they

15   are attempting to prevent violent encounters between

16   SNM members and prison guards."

17          The other information that this informant

18   has that is relevant and helpful to Mr. Sanchez'

19   defense goes back again to the misidentification

20   defense with respect to things that the Government

21   are saying this Mr. Sanchez did, when it's the other

22   Mr. Sanchez, or the other Dan Dans.  And that is --

23   what this information relates is "the inmate

24   classification system that was implemented in the New

25   Mexico Department of Corrections several years ago

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1116

```
 1   has made it more difficult for SNM to conduct its
 2   business in prison.  All members are in single cells,
 3   making simple communication more difficult for them."
 4            THE COURT:  What is it in this document
 5   that you think he's being accused of things that the
 6   other Daniel Sanchez did?
 7            MS. JACKS:  There is nothing in this
 8   document.  And part of putting together a defense in
 9   a criminal case is cobbling material from various
10   different witnesses.  I think it's really rare that
11   you have the "Perry Mason experience," where you
12   exonerate your client with one witness on the witness
13   stand.  It's a combination of facts that the jury
14   finds credible that can give your arguments credence
15   at the end of the trial.  And so this is one piece.
16   I mean, the Government frequently refers to a
17   criminal case as a puzzle.  And although I don't
18   always agree with them, I think this is an example of
19   just exactly that kind of thing.  The information
20   from one piece can shed light on what the other
21   pieces look like together.  So here we have somebody
22   that's a long-time member of SNM talking about the
23   fact that SNM doesn't want their members to be
24   assaulting corrections officers, and that they're
25   having trouble communicating, which would explain --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1117

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 105

1   which would explain how, A, Mr. Sanchez could be

2   confused with someone he's not, and how things the

3   other people -- the other Dan Dans or Mr. Sanchez did

4   were wrongfully attributed to him.  And furthermore,

5   that perhaps, if he did, in fact, assault a

6   correctional officer, it was done out of a human

7   reaction of anger rather than some sort of concerted

8   racketeering activity.

9           THE COURT:  I mean, I agree with you, what

10  he's saying here is very helpful to you.  But tell

11  me, if you knew the identity, what more would you

12  hope to get on this topic right here?  I'm less

13  persuaded by forcing the disclosure on the basis of

14  the acts of the other Daniel Sanchez.  But what more

15  would you do on this particular topic about the SNM

16  members had been instructed not to harm corrections

17  officers for doing their job?

18          MS. JACKS:  I think what I'd like to do is

19  go talk to this person and find out how that was

20  communicated, and what might corroborate it, and who

21  else might know it, and whether there were ways of

22  enforcing that, how communications were provided

23  after the assaults to the corrections officers.  I

24  mean, there are things that this person clearly

25  knows, or may know, that would help us show that Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1118

1    Sanchez, the assaults that he's alleged to have done

2    were, in fact, not for the racketeering enterprise.

3            So, I mean, obviously, our intent or our

4    goals in interviewing this informant are very

5    different than the Government's or the FBI's

6    interests in interviewing these people.

7            THE COURT:  All right.  Thank you,

8    Ms. Jacks.

9            First, Mr. Beck, where is your discussion

10   of this?

11           MR. BECK:  Discussion of this exhibit

12   starts at page 41.  It's Roman numeral V; starts at

13   page 41, and continues through page 45.

14           THE COURT:  All right.

15           MR. BECK:  So as we say in our response, we

16   concede that this CI is a participant and a material

17   witness to the alleged criminal activity.  So, as

18   Ms. Jacks pointed out, Daniel Sanchez is alleged to,

19   in 12 overt acts, I think it is, to have assaulted

20   corrections officers.  Again, I point out it's for

21   simply doing their job.  But I don't think that is

22   really pertinent to our discussion here.

23           Then this gets into -- the following pages

24   gets into then, the factor balancing test of Roviaro.

25   And so we're looking at, obviously, anything relevant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to the RICO conspiracy because it is a charged act.

2    Page 43, once we look at the significance of the CI's

3    testimony to the defense, it's not significant for a

4    couple of reasons.  Number one, it's helpful that --

5    to rebut that it was done, because there is a

6    statement from a leader of the SNM that the

7    leadership instructed SNM members not to assault

8    corrections officers for simply doing their job.  So

9    we already have that information.

10            When we look at the defense --

11            THE COURT:  What about Ms. Jacks, though?

12   She listed a fairly lengthy list of questions that

13   she'd like to mine from this CI.

14            MR. BECK:  So I think the list included who

15   else knew of that order.

16            THE COURT:  How it was communicated, how it

17   was enforced?

18            MR. BECK:  How it was communicated and how

19   it was enforced.  So I guess --

20            THE COURT:  It seems to me that if this CI

21   knew what he says he says here in this report, that

22   he very likely might know that information as well.

23            MR. BECK:  He might.  But then we look at

24   how significant that is, how significant that

25   testimony is.  So, taking for granted he knows those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108 of 121

1   things, if we look at how the information is

2   communicated and how it is enforced, I don't see how

3   that helps the defense of these weren't SNM

4   activities beyond just stating that we instructed the

5   members not to do this.  Because at that point, I

6   think he would say, if they were instructed to do

7   this, that's pretty good evidence that they're not

8   SNM-related activities.  If the CI -- so we can grant

9   that.

10          Looking at the significance of the

11   testimony to the charges and the defendants, as we

12   lay out in those pages, this statement is from 2009,

13   in which this leader talks about -- I think it's a

14   recent change in how they're operating.  And so, if

15   you look at page 8 of 9 -- and that's -- I don't know

16   the Bates numbers; it looks like 2675.  But it's page

17   8 of 9 of Exhibit 8.  And again, we're talking about

18   a 2009 report here.  So now I'm looking at the third

19   paragraph from the bottom.  I think it may be helpful

20   if I put it up on the Elmo.  That way, everyone can

21   see what we're talking about.

22          So starting there at the first paragraph I

23   have up on the Elmo, it says, "The rules for the SNM

24   at the Southern New Mexico Correctional Facility are

25   much stricter now than they were previously.  SNM

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    members are being instructed by the leadership to

2    maintain a low profile.  They are generally not

3    allowed in general population.  Each member is

4    required to assume some sort of role in controlling

5    the corrections officers, the facility in general,

6    and the drug trade within the facility.

7              "SNM members have been instructed not to

8    harm corrections officers for simply doing their job.

9    When a corrections officer and an SNM member have a

10   conflict, it is usually the result of the individual

11   inmate's own frustration with the system and normally

12   results in the inmate being moved to another cell.

13   When this happens, the leadership of the SNM makes it

14   clear to the corrections officers that the incidents

15   are not sanctioned by the organization and the

16   leaders say they are attempting to prevent violent

17   encounters between SNM members and prison guards."

18             And so what we lay out in our response is

19   that to the extent this is significant testimony, to

20   the extent that the leadership instructed that, they

21   said it was a recent thing.  And if we look at the

22   indictment, 10 out of the 12 assaults happened before

23   2009.  So to the extent it is significant testimony

24   for a defense, a defense to 12 of -- I can't

25   remember, but let's say around 30 overt acts -- it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1122

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110 of 123

1   a defense to two out of 30 overt acts.  So what I'm

2   getting at there is that the information is helpful.

3   The report tells you that when they have a conflict,

4   it's usually a personal beef and not sanctioned.  So,

5   to the extent this CI's identity may lead them to

6   helpful information, the Court has to balance that

7   against the defense, which is that it would lead to

8   significant testimony.  If indeed it leads to the

9   testimony about how these orders are communicated and

10  enforced, to the extent that that's helpful, it goes

11  to, as I said, two out of the 12 overt acts in the

12  conspiracy.

13          THE COURT:  All right.  Thank you, Mr.

14  Beck.

15          Ms. Jacks.

16          MS. JACKS:  I just have a response.  I

17  mean, I think this shows why we need to talk to the

18  inmate, because by withholding our access to this

19  person -- let me just go back for a second.  The

20  definition of previously is the witness' own

21  interpretation.  Mr. Beck is interpreting it as

22  meaning 2009 and forward.  We don't know who this

23  inmate is, how long they've been in prison, how long

24  they've been a member of SNM, or when "previously"

25  started.  I mean, for all we know, the rules could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1123

```
 1   have changed in 2000.  So I think the analysis that
 2   it only pertains to two of the 12 assaults is just
 3   faulty.  And that's one of the things I think that
 4   would be cleared up if we were permitted to know who
 5   this is so that we could talk to him.
 6            THE COURT:  Well, I tend to agree.  I think
 7   there is very likely more helpful and relevant
 8   information to be mined from this witness than is
 9   apparent from the document here.  So I'm going to
10   order the disclosure of this witness to Mr. Sanchez.
11            All right.  Do you want to try squeeze in
12   one more before we take our lunch break, Ms. Jacks?
13            MS. JACKS:  I leave it to you guys.
14            THE COURT:  Let's try one more, at least
15   get started on it.
16            MS. JACKS:  The informant at 2677, which is
17   the next one -- that's at Document 815, page 20, and
18   Exhibit 9 -- is of a similar nature to the one that
19   we just discussed.  And let me just pull that up.
20            THE COURT:  I should add on that last one,
21   beside that information that CI also is a participant
22   in and a material witness to the alleged criminal
23   transactions here as well, that's what the Government
24   has indicated specifically as to these assaults, so,
25   I'll have to rely upon the Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112

1    representations there, but I think that's significant

2    in making the disclosure as well.

3            All right.  Ms. Jacks.

4            MS. JACKS:  Thank you.  At Exhibit 815-9 is

5    this witness' statement.  It's 11 pages long, and

6    it's quite lengthy.  But what's important out of this

7    and what's relevant and helpful to Mr. Sanchez is

8    that the informant has been a long-time gang member,

9    and has spent a significant amount of time at the New

10   Mexico Department of Corrections, impressively, in 13

11   separate institutions.

12           THE COURT:  So it's not clear that he's an

13   SNM member?  It's just a gang member?

14           MS. JACKS:  Well, I don't know if he's SNM,

15   or some other prison gang, or if perhaps is a street

16   gang member.  But he's somebody that's spent quite a

17   bit of time in New Mexico State Prison.  And what

18   this informant advises is that most inmates

19   manufacture shanks while in prison.  He says it's

20   particularly true for members of the SNM.  And that

21   when the informant was in prison, SNM members had to

22   carry shanks with them at all times.  "Everyone has

23   to be strapped."  That's a quote.  He talks about SNM

24   being like a family to many of its members, and that

25   there was not a requirement to draw blood in order to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1125

1    become an SNM member.

2            Actually, he is a member of SNM, because he

3    relates that he became a member of SNM without

4    stabbing or killing anyone, and had credibility

5    simply from the fact that he wasn't a police

6    cooperator.  He talks about the New Mexico Department

7    of Corrections policy that made SNM members no longer

8    for Level 5 prison yards.  And that that policy

9    affected the members' ability to communicate with

10   each other.

11           I lay out in our pleadings why that

12   information is helpful with respect to -- relevant

13   and helpful to Mr. Sanchez' defense.  But, in

14   summary, I think what it does is it undercuts the

15   testimony, or the expected testimony from Government

16   witnesses that shanks had to be manufactured or made

17   in order to conduct the Molina homicide.  And that's

18   important.  I mean, really, the Government's case

19   connecting Mr. Sanchez to the conspiracy to murder

20   Molina comes from the idea that Mr. Sanchez read the

21   paperwork, and then ordered the manufacture of

22   weapons and the distribution of those weapons to

23   other SNM members.  And according to what this

24   inmate -- the information that this inmate has, as a

25   long-time gang member, it's that everybody would have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1126

```
 1   a shank already; there wouldn't be a need to actually
 2   manufacture something to conduct some sort of
 3   assault.  And I think it undermines the Government's
 4   case regarding the conspiracy.
 5          It also -- to the extent -- I think the
 6   Government in their pleadings says they're not
 7   alleging that SNM is a blood-in-blood-out type of
 8   gang.  But some of their expected cooperators
 9   certainly say that.  And to the extent -- that's a
10   difficult thing to overcome at trial.  It's a
11   difficult thing to address at trial, if the jury
12   thinks, Hey, your guy is a member of SNM, he must
13   have hurt somebody or killed somebody.  And it tends
14   to reduce the quantum of proof the Government needs
15   to get a conviction.  And I think, with testimony
16   from a witness such as this informant, I think that
17   tends to undermine any assertions of Government
18   cooperators that SNM is a blood-in-blood-out group of
19   violently predisposed individuals.  He analogizes the
20   gang to a family.
21          And then, finally, I know the Court is not
22   impressed with this argument, but again, we have
23   somebody talking about the difficulty of
24   communication in prison, which would be a piece of
25   the puzzle of Mr. Sanchez' misidentification defense
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1127

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115

```
 1   to some or all of the overt acts.
 2          THE COURT:  Well, I agree with you that
 3   this issue of blood-in-blood-out could be generally
 4   helpful.  But tell me how that really helps Mr.
 5   Sanchez and the allegations against him.  What does
 6   that --
 7          MS. JACKS:  Well, I can't anticipate
 8   completely how the Government is going to try the
 9   case.  I do know that some of the cooperators that we
10   know about have said SNM is blood-in-blood-out.  In
11   other words, if you're a member, that means you've
12   stabbed somebody, you've killed somebody.  So I think
13   what this informant -- if this information proved to
14   be credible and perhaps corroborated, could help show
15   that the Government informant's version of how one
16   gains membership in the SNM is a liar and
17   exaggeration, in an effort to pump up their own
18   status.
19          THE COURT:  All right.  Let's go to the
20   other, I think, major justification that you advance,
21   is that everybody was strapped or had shanks all the
22   time on them.  If you had this CI's identity, what
23   would you do with him?  I mean, those are just
24   conflicting things, but what more could you do
25   with --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1128

1      MS. JACKS:  Well, I think if this person

2  were called -- and it's difficult to say without

3  interviewing him and knowing exactly the content and

4  context of the statements -- but in an ideal world,

5  after investigation, I think this person could

6  potentially be called as a defense witness to

7  undermine the claims of Jerry Armenta that he was

8  provided -- that a shank was manufactured and

9  provided to him for his personal use.  And I think it

10  could -- if argued properly, could lead to the jury

11  concluding that, while -- that Armenta used his own

12  shank, a shank he already had, that had already been

13  manufactured in performing the Molina homicide.

14      And remember, that's part of the story the

15  Government cooperators are telling, because that's

16  what involves other people from SNM and makes them a

17  beneficial witness to the Government.  I mean, if

18  Armenta came in and said, Yeah, you're right, I

19  stabbed that guy with a shank I had in my pocket, or

20  along my leg, because he pissed me off, that's not

21  going to provide him any currency with which to trade

22  the Government.

23      THE COURT:  All right.  Mr. Beck, I'll hear

24  your arguments after lunch.  Let's shoot for

25  another -- about an hour again.  I know it's hard to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1129

 1    get in and out with this many people, but let's shoot

 2    for about an hour.  Nobody is going to start without

 3    anybody.  But let's shoot for that.  All right.  See

 4    you about 1:30.

 5                 (The lunch recess was held.)

 6                 THE COURT:  All right.  Good afternoon

 7    everyone.

 8                 All right.  I think you had finished your

 9    argument on this, but you may have thought of

10    something over the lunch hour, if you have anything

11    you want to add before we hear from Mr. Beck?

12                 MS. JACKS:  This was the

13    blood-in-blood-out; right?

14                 THE COURT:  Yes.

15                 MS. JACKS:  Actually, one of my colleagues

16    had a point, which I think was well taken, and I want

17    to just raise it very quickly with the Court.  And

18    that is that one of the Government cooperators, with

19    respect to the Molina homicide, is saying that he was

20    forced to do the stabbing of Molina even though he

21    was a short-timer, he was due to get out of jail, and

22    he was told, "It's him or you."  He's describing the

23    blood-in-blood-out requirement from SNM.  And I think

24    that information from this informant goes directly to

25    undermining that claim that SNM is a

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 1130

 1    blood-in-blood-out organization.

 2              THE COURT:  How does that help you, though?

 3              MS. JACKS:  It helps me, or it helps

 4    anybody defending the Molina homicide, show that this

 5    Government informant is making up a story to

 6    implicate SNM, is adding details acting like the

 7    crime was done for SNM, when in fact, he did it for

 8    his own personal reasons.  And if he killed Molina

 9    for his own personal reasons, then it's not a violent

10    crime in aid of racketeering.  It's a violent crime

11    by that Government cooperator for which he's looking

12    at life in prison.

13              THE COURT:  Well, maybe I got -- is the CI

14    that we're looking at here -- this isn't the CI that

15    was involved in the Molina murder, was it?

16              MS. JACKS:  Well, I wouldn't think so.

17    But, obviously, because his identity is being

18    withheld from all of us, we can't really say.

19              THE COURT:  I know.  But you said that --

20    let's see what you said.

21              MS. JACKS:  I think my point is the CI at

22    2677 is an SNM member, who when he speaks to law

23    enforcement, indicates that SNM isn't an organization

24    that requires you to kill to get in and kill to get

25    out.  And that, in fact, he himself was simply given

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119

 1   a pass to join because he wasn't an informant.

 2            THE COURT:  All right.  Let me see if I can

 3   get my real-time working here, because I want to go

 4   back.  All right.  Thank you, Ms. Jacks.

 5            Mr. Beck, do you want to give me your page

 6   number first?

 7            MR. BECK:  It's page 25, through 26,

 8   paragraph 3.

 9            THE COURT:  Okay.  Let me ask Ms. Jacks

10   this question here:  So when you said that one of the

11   Government cooperators with respect to the Molina

12   homicide is saying that he was forced to do the

13   stabbing, it's not this CI, right, that we're looking

14   at here on this?

15            MS. JACKS:  I suspect not.  But because

16   we're operating in the dark and we're not being told

17   the identities of the CIs, I don't know that.

18            THE COURT:  All right.  Mr. Beck, give me

19   your page number again.

20            MR. BECK:  Page 25, Your Honor, paragraph

21   3, which goes from 25 to 26.

22            THE COURT:  Okay.

23            MR. BECK:  So this CI fits in under someone

24   who is a tipster, and neither a participant nor a

25   material witness.  And if you look at the bottom of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1132

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 120 of 133

```
 1    page 25 to the top of page 26, what the United States
 2    says is that, "Notably, the United States does not
 3    allege that if Mr. Sanchez is an SNM member, that he
 4    must have performed some violent assault on another
 5    human in order to gain admittance into the gang.  The
 6    United States alleges that Sanchez, in fact, did
 7    violently assault inmate PC, attempted to murder
 8    inmate DM, and assaulted several corrections
 9    officers."
10          And so I think the United States doesn't
11    allege that SNM is a blood-in-blood-out gang.  I
12    think Ms. Jacks is right, there may be some
13    conflicting testimony on that.  There may be some
14    conflicting information about that in their reports.
15    And I think at trial there may even be conflicting
16    testimony from the United States' witnesses about
17    whether that's the case.
18          But what we understand, as United States,
19    is that many of our witnesses have told us it is not
20    a blood-in-blood-out gang, and so we aren't alleging
21    that.  So I think this fits --
22          THE COURT:  Have you ever, in the past?
23    For some reason I thought that y'all were taking that
24    position early on.  Did you take it earlier, and it's
25    changed, or has it always been that you weren't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    contending that this was a blood-in-blood-out gang?

2            MR. BECK:  I guess I don't know whether

3    that position has changed.  I think the United States

4    contends that the SNM is a gang that the way in which

5    they operate is, I guess, what you would call

6    "blood," so assaults, murders, stabbings, things like

7    that.  So I think, if we talk about what Ms. Jacks

8    was talking about, I think there is a statement from

9    one of the defendants in this case involved in the

10   Javier Molina murder, as you just said, that he was

11   ordered to participate and stab Javier Molina,

12   because he had not put in work.  But at this point,

13   he was an SNM member.  So I think that statement

14   alone contradicts that it is a blood-in-blood-out

15   gang, because he had already been a member.  So

16   that's why I'm saying it's not the United States'

17   position, we're not going to get up there and say

18   it's a blood-in-blood-out gang; to get in you have to

19   draw blood; to get out blood has to be drawn.  I

20   think certainly it operates in that way for a lot of

21   people, but it's not a requirement.

22           Just like the statement in this about

23   shanks.  We're not contending -- we're not going to

24   allege, we're not going to stand up there and say

25   that it's untrue that SNM members carry shanks.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1134

 1    We're not going to say it's untrue that Daniel

 2    Sanchez, or whomever else was involved in this,

 3    doesn't have their own shank.  I mean, I think we can

 4    say that throughout this litigation, in recent days,

 5    and even up to the present, shanks are being found in

 6    people's cells.  That is not relevant to the charges

 7    here, which are that a shank was provided to Armenta

 8    to go stab Javier Molina, and that it was from Mr.

 9    Perez' walker.

10            Again, if we look at the value of this tip

11    that SNM members have to carry shanks, it's not very

12    helpful, and it's not relevant, because we're not

13    saying that that isn't true.  I don't know whether it

14    is true or not.  But it doesn't affect -- it's not

15    relevant to the material issue whether shanks were

16    provided to the people that killed Javier Molina, and

17    whether Rudy Perez, indeed, provided his walker for

18    shanks to be made.

19            So if we look at the significance of the

20    testimony to anyone's defenses, it's not significant

21    at all because it's irrelevant.

22            THE COURT:  All right.  So you're primarily

23    relying on the fact that it's irrelevant for saying

24    why this shouldn't be disclosed?

25            MR. BECK:  Right.  As I said, we're not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1135

```
1    saying it's a blood-in-blood-out gang.  We're not

2    saying that SNM members weren't required to carry

3    shanks.  And so I don't think it makes it more or

4    less probable if we're looking at the language of

5    what relevant means.  It does not make it more or

6    less probable that Daniel Sanchez had a shank or that

7    a shank was made for this murder.  We're not

8    contending that they used their own shanks, or --

9    what I'm saying is that regardless of whether they

10   have their own shank, Rudy Perez provided his walker

11   to make the shank that was used in this case.

12           THE COURT:  All right.  Anything else, Mr.

13   Beck?

14           MR. BECK:  I think that's it.

15           THE COURT:  All right.  Ms. Jacks.

16           MS. JACKS:  I was just saying to a

17   colleague, "I feel like Joe Pesci in 'My Cousin

18   Vinny.'"  But I'm not going to let the line rip.  I

19   disagree with everything that Mr. Beck just said.

20   This informant is not just a tipster, he's a member

21   of the alleged racketeering conspiracy.  Whether the

22   Government has alleged it's blood in or blood out,

23   the Government's informant or testifying informants,

24   at least two of them, I think, have said exactly

25   that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1136

```
 1              THE COURT:  And this one is one you're
 2    calling; right?
 3              MR. BECK:  I don't think so.
 4              THE COURT:  So this is one you're not
 5    calling?
 6              MR. BECK:  I think this is one that we're
 7    not calling.
 8              MS. JACKS:  So I think this undermines --
 9              MR. BECK:  This is one that we are not
10    calling.
11              MS. JACKS:  And in terms of the
12    Government's argument about the shanks not being
13    relevant, I mean, if Mr. Armenta wants to make a
14    lie -- wants to make up a lie to get SNM involved in
15    a murder he did for himself, he says, Oh, they gave
16    me the shank -- well, if an SNM, someone who is
17    familiar with the practices of SNM and the prison
18    practices, knows that everybody in SNM carries a
19    shank anyway, then that tends to -- that has some
20    relevancy to undermining the story of Mr. Armenta,
21    someone who has a lot to gain by making up a story
22    involving others in his crime.
23              So, I mean, I think this is the type of
24    evidence that is critical for the defense to have
25    access to in order to be able to put up a defense to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    some of the allegations here.
 2             THE COURT:  All right.  I'm going to order
 3    this one disclosed to Mr. Sanchez.  I do think that
 4    because of the way this story is unfolding, that he
 5    had to order Mr. Perez to give him the walker to
 6    create the shank, I think if we've got an informant
 7    out here that says everybody has got shanks and there
 8    wasn't any need for it, and he's not going to be at
 9    trial, so I think the defendant needs to have an
10    opportunity to see if, after talking to this
11    informant, he wants to call him at trial, he should
12    be able to do that, and make sure that that's what
13    he's going to say.
14             All right.  Next?
15             MS. JACKS:  Your Honor, I want to go back,
16    because I said over lunch I was going to clarify the
17    information about -- we had the four informants or
18    the four statements we were discussing at DeLeon
19    1579, 12960, 12963, and 12966.  And these were the
20    informants that gave different stories about the
21    transmission of the paperwork.  And there was one
22    informant who provided -- it turns out that's four
23    separate informants, as I understand.  This goes to
24    the informant at 12963, which is the first part of
25    Exhibit 15.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1138




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126

 1          And what I realized is when I e-filed that
 2   exhibit, the CM/ECF stamp actually obscured the part
 3   of the report that is important.  So I asked Ms. Wild
 4   to print the actual pages without the CM/ECF stamp
 5   for you, and she has it.  This would be Exhibit
 6   DeLeon 12963, which is the first part of Exhibit 15.
 7          THE COURT:  Okay.
 8          MS. JACKS:  And the argument was that in
 9   addition to providing the different stories about the
10   paperwork, that this informant was important because
11   he made a comment, or discussed the fact that Daniel
12   Sanchez was -- let me just go to it, because I don't
13   want to misquote -- that "Mr. Sanchez was part of the
14   SNM leadership, but that quote, 'he didn't want it,
15   but was voted in,' and once the hit was ordered, he
16   had to make sure it would get done or he would be
17   hit."  And where that is in this report is at the
18   bottom of page 1 and the bottom of page 2 -- I'm
19   sorry, the top of page 2 and the top of page 3 --
20   bottom of page 1 on to the top of page 2, I'll read
21   the sentence.  They're discussing Daniel Sanchez, and
22   the informant is giving information that there was a
23   shank in Daniel Sanchez' cell.  And the way the
24   report is written, the writer says, "CI goes on to
25   tell me that he's part of the table, but that he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1139

 1   didn't want it, but was voted in and knows that other

 2   inmates are going to get hit."

 3          And if you go to the bottom of page 2 and

 4   the top of page 3, the report reads, "I asked the CI

 5   if Dan Dan has that kind of stroke to call that.  CI

 6   said that he has to because he's the Key Holder of

 7   that pod, and he has to make sure it gets done or he

 8   will be hit."

 9          And I apologize, but in the exhibits I

10   filed that was difficult to read, because of the

11   filing stamp.

12          THE COURT:  All right.  You've got your

13   next CI?

14          MS. JACKS:  I do.  And just so the Court

15   and counsel is aware, I have -- well, after this one,

16   seven additional ones to argue about, and then I want

17   opportunity to talk generally about the Daniel

18   Sanchezes, the people identifying the other Daniel

19   Sanchezes.

20          So my next one is at -- the informant at

21   DeLeon 2730, which is discussed in our motion,

22   Document 815, at page 22.  And it's actually the

23   informant at 2730 and 2732.  I think these are

24   continuations of the same conversation.  And I'm just

25   going to summarize this because --

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                 (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1140

```
 1              THE COURT:  And which exhibit is this?

 2              MS. JACKS:  This is Exhibit 10.

 3              MR. BECK:  Your Honor, before we spin our

 4     wheels on some of these, some of these older reports,

 5     the United States has looked into who these people

 6     are who gave the statement, who the sources are, and

 7     at this point we don't know -- so we don't know who

 8     the source is in this statement.  And so, although we

 9     argue and we can go through that in our brief, in our

10     response brief that Sanchez didn't meet his burden to

11     be entitled to the identity of this informants, I

12     think it may be better to skip over this one.  And

13     I'm not -- if she wants to make a point with this one

14     that relates to others, then that's fine.  I just

15     think it might be better for us to keep going with

16     those who we do know.  And if something comes up and

17     we find out to who the source is in this, we can

18     provide that to her, and ask to come back in front of

19     the Court, if need be.

20              THE COURT:  So right at the moment, if I

21     ordered you to disclose the CI, you wouldn't know who

22     it is?

23              MR. BECK:  Wouldn't.

24              THE COURT:  What do you think about that?

25              MS. JACKS:  I'm sort of incredulous.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1141

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129 1142

1   mean, is STI Officer Corey Hense (phonetic) still

2   available?  I mean, this is some information from an

3   STIU officer at PNM, following up or commenting to

4   the FBI about allegations that Mr. Sanchez was in

5   charge of the gang at PNM.  And what he provides them

6   is information that, in fact, it's really somebody

7   else, this person identified as Fernie Hernandez.

8           MR. BECK:  That STIU officer doesn't work

9   for the Corrections Department anymore, which is why

10  we're -- as I said, we're still trying to track down

11  and see if we can find out.  But we're not having any

12  luck.

13          MS. JACKS:  And I guess I'm also sort of

14  incredulous that there wouldn't be documentation

15  within the STIU office at PNM about who confidential

16  sources are that the State Department of Corrections

17  is relying on to make decisions about inmates'

18  placement, and conclusions about who or who was not

19  in charge of a prison gang.

20          THE COURT:  Well, we can be incredulous all

21  afternoon.  But tell me what you want to do.  If you

22  want to argue this one -- if they don't know, I can't

23  really order them to produce something they don't

24  have.

25          MS. JACKS:  What we'll do at this point on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1142

1    behalf of Mr. Sanchez, we'll make some further

2    inquiries, and see if we can't track down the

3    information.  What I want the Court to do -- I guess

4    I'd like the Court to order the Government to search

5    the files to Corey Hense informant, giving him the

6    information that it's not really Mr. Sanchez that's

7    in charge; it's Fernie Hernandez.

8            THE COURT:  Well, I take it by your

9    statement, you've already done that?

10           MR. BECK:  Yeah.  And we'll agree to ask

11   Corrections.  I think the Court's found the

12   Corrections Department is part of the prosecution

13   team, which is why we're looking into it.  And I'll

14   make sure that we go back and double-check, and see

15   if the STIU file is there.  But so far, we haven't

16   been able to find anything.  So you can order that;

17   we don't oppose ordering that.

18           THE COURT:  Okay.

19           MS. JACKS:  I guess the other thing I would

20   like ordered, that pertains directly to this, is any

21   policy or directive from the Department of

22   Corrections regarding the documentation and

23   recordkeeping with respect to informants providing

24   information on a confidential basis.

25           THE COURT:  Mr. Beck?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1143

```
 1              MR. BECK:  I mean, that's -- I guess I
 2    don't see why we would object to that.  It sounds
 3    like a fair request to look at the policies and
 4    procedures.  And I can't see why we'd object to that
 5    order, so we'll do that.  As long as it's part of
 6    discovery and goes on the tablets, not paper form, I
 7    think that's appropriate.
 8              THE COURT:  All right.  Ms. Jacks.
 9              MS. JACKS:  So is the Court inclined to
10    make that order then?
11              THE COURT:  Yeah, they're agreeing to it.
12    I'll make the order.
13              MS. JACKS:  All right.  So the next one is
14    on page 23 of our motion.  The informant at DeLeon
15    2748 and 15203.  And again, I'm guessing that these
16    are the same person, but that's really all it is is
17    an educated guess.
18              THE COURT:  All right.  What's your
19    exhibit, Exhibit 11?
20              MS. JACKS:  Oh, Exhibit 11, yes.  And this
21    goes back to the allegation in Overt Act 161 that
22    Daniel Sanchez had his drugs sent to another inmate.
23    And the Government's bounced back and forth as to
24    which Daniel Sanchez that is depending upon which day
25    of the week it is.  This is another informant that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1144

 1    can provide information regarding the other Daniel

 2    Sanchez, and the other Daniel Sanchez had close

 3    connections to correctional officers who were

 4    smuggling drugs in to him at the PNM.  And I think

 5    this is the type of evidence that could be

 6    investigated and form a piece of the defense that

 7    shows that the person being referenced by the other

 8    informant, forming the basis of Overt Act 161, is

 9    referring not to this Daniel Sanchez in this case,

10    but the other Daniel Sanchez.  And I would note the

11    time period is right around the same time period as

12    the activity that forms the basis of Overt Act 161,

13    even though the Government has now represented that

14    the date of that overt act is wrong, as alleged in

15    the indictment.

16              THE COURT:  Well, but you're agreeing -- if

17    I understand your position, you're agreeing here that

18    this doesn't have anything to do with your Mr.

19    Sanchez; right?

20              MS. JACKS:  Well, I wouldn't say it doesn't

21    have anything to do with him.  I think the subject of

22    the statement is the other Daniel Sanchez.  I agree

23    with that.  I think what it has to do with my Daniel

24    Sanchez, the one charged in this case, is it's

25    evidence that in the same time period of Overt Act

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1145

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 133

```
 1    161, which the Government has claimed alternatively
 2    it's one Daniel Sanchez or the other, that this is
 3    evidence that in that same time period the other
 4    Daniel Sanchez was being sent narcotics into the PNM
 5    by correctional officers.
 6              THE COURT:  All right.  Mr. Beck, you've
 7    got your response.  What page are you on?
 8              MR. BECK:  Yeah.  Again, Your Honor, so we
 9    responded to these, and said that they refer to the
10    other Daniel Sanchez.  And so we don't --
11              THE COURT:  What page are you on of your
12    response?
13              MR. BECK:  Let me find it.  So this is page
14    28, paragraph 5.  So this exhibit we said falls under
15    the category, the second category, in which we've
16    said it's not alleged criminal activity.  So this,
17    just like Exhibit 10 before it, we don't know who the
18    source is in this.  So this is an alleged criminal
19    activity.  And again, this goes back to -- we're
20    looking at who these sources are.  We don't have it
21    in the file.  And that's why it's not alleged
22    criminal activity as an overt act, because we think
23    it's not referring to the Daniel Sanchez here, and we
24    didn't allege it as an overt act.  As I said, that's
25    why we alleged the overt acts that we did, because we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134 1147

 1    know to which Daniel Sanchez they refer.

 2           And I think that's why Roviaro, first of

 3    all, looks at whether it's a charged criminal

 4    transaction, whether it's an alleged criminal

 5    transaction.  Because if it's not, it's not relevant

 6    and it's not helpful.  And so this exhibit, just like

 7    10 before it, we don't know who is the CI in this

 8    exhibit.

 9           MS. JACKS:  Can I just respond, because I

10    think this is where the Government's bouncing back

11    and forth is really getting to the point of

12    absurdity.  Because -- and I'm quoting from the

13    Government's brief, Document 864, the heading V.  I

14    don't know what line number, but it's about

15    three-quarters of the way down the page.  And in

16    their argument for not disclosing this source, they

17    say, "The United States does not allege that Sanchez

18    attempted to or did pay corrections officers to

19    smuggle heroin into prison in or around 2011."  I

20    give -- I give you that that is true, they didn't

21    allege that he did it through corrections officers.

22    But they have alleged, as they've now, I think,

23    corrected, or said they want to correct, that in

24    Overt Act 161 of the racketeering conspiracy that he

25    caused heroin to be sent in to another inmate in an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1147

1    effort to get that inmate in trouble.  And that's

2    informant that we first discussed, at Baca 4373,

3    Exhibit 30.

4         And I guess my point is that those two

5    allegations are certainly very close.  The Government

6    is now alleging that Sanchez was sending drugs, or

7    having drugs sent into the prison in 2011.  And the

8    other statement, the one at Baca 4373, doesn't give

9    the means or the manner.  That's not detailed in the

10   statement about how the drugs were supposedly sent to

11   the other inmate in an effort to get him in trouble.

12   But this -- the information of this informant could

13   actually directly contradict the Government's

14   assertion that the person smuggling drugs in, that's

15   the subject of the Baca 4373, Exhibit 30, is the Mr.

16   Sanchez charged in this case.

17        THE COURT:  If I understood what you were

18   saying, Mr. Beck, you don't know who this source is;

19   right?

20        MR. BECK:  We don't, Your Honor.

21        THE COURT:  So I guess I'll deny the

22   request.  I mean, I can't order the Government to

23   disclose something they don't know the answer to.

24        And also, as I indicated earlier on this,

25   having two people in prison that are bringing in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1148

1   drugs, I don't think it's enough to start disclosing

2   confidential informants on the other Daniel Sanchez,

3   just because they both are smuggling drugs.  I guess

4   I'm not sure what the connection is.  So I'm inclined

5   to deny the request on that.

6           MS. JACKS:  I guess I don't understand

7   how -- if Government doesn't know who the informant

8   is in this Exhibit 11, how they could possibly know

9   which Daniel Sanchez he was referring to.

10          THE COURT:  All right.  What's your next

11  CI?

12          MS. JACKS:  I would also ask the Court to

13  make the same order as to any reports regarding this

14  confidential informant as the Court did for the

15  confidential informant at DeLeon 2730.

16          THE COURT:  Any objection to that, Mr.

17  Beck?

18          MR. BECK:  No objection, Your Honor.

19          THE COURT:  So ordered.

20          Ms. Jacks?

21          MS. JACKS:  All right.  My next one is the

22  informant at DeLeon 3081.  That report is contained

23  in Exhibit 12.  This may be another one where the

24  Government doesn't know.  This is a more credible --

25  this is one where I can more incredibly believe the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1149

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137

1    Government doesn't know.

2              MR. BECK:  That one we don't know.

3              THE COURT:  All right.  Do you want me to

4    do anything further on that, then, Ms. Jacks?

5              MS. JACKS:  No, not at this time.

6              THE COURT:  All right.

7              MS. JACKS:  The next one is DeLeon 3308.

8    That's our motion Document 15, page 25.  And this is

9    the informant that, I think pursuant to an agreement

10   between the Government and Mr. Villa, was --

11             THE COURT:  This is Exhibit 13.

12             MS. JACKS:  Yes.  Sorry.  This is the Perez

13   walker thing.

14             THE COURT:  Hold on just a second.  Let me

15   get there, because I'm still on number 11 here.  All

16   right.  Ms. Jacks.

17             MS. JACKS:  This is the one that the Court

18   considered back in November, and we've renewed it

19   here.  This is the informant that talks about the

20   Mr. Perez providing a piece of his walker to be used

21   to be manufactured into weapons for the Molina

22   homicide.

23             THE COURT:  And you know the source here,

24   right, Mr. Beck?

25             MR. BECK:  Yes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. JACKS:  And this was the one that was
 2   disclosed pursuant to an agreement, I think, between
 3   the Government and Mr. Villa.  It was disclosed to
 4   Mr. Villa with a protective order, just to counsel
 5   for Mr. Perez.
 6              So I mean, I'm making the same arguments
 7   that were made back in November about the
 8   relevance -- the helpfulness and the relevance of
 9   this source to Mr. Sanchez' defense on the conspiracy
10   to murder and the murder of Mr. Molina.  And I would
11   also note that these acts are charged as overt acts
12   in the racketeering conspiracy.  So if Mr. Perez is
13   an uncharged co-conspirator in the racketeering
14   conspiracy, and this information is favorable to him,
15   then it is, by definition, favorable to Mr. Sanchez,
16   and should be disclosed to him.
17              THE COURT:  All right.  Mr. Beck, what page
18   is your response on?
19              MR. BECK:  Our response is page 36,
20   paragraph 4.  It goes from page 36 to page 38.
21              THE COURT:  All right.
22              MR. BECK:  So I think there are a couple of
23   things here.  This informant, again, is a tipster.
24   If we look at the informant's tip -- and that's on
25   page 2 of Exhibit 13 -- it says, "Rudy Perez, a/k/a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1151

 1    'Roo Dog,' assisted in the killing of Javier Molina.

 2    Perez provided his walker to make shanks that were

 3    used in the murder."  So there is nothing in there

 4    that would indicate this person was a participant or

 5    witness to it.

 6            And then, again, if we look at the

 7    significance of the testimony, Daniel Sanchez -- and

 8    this is more what our brief relates to -- Daniel

 9    Sanchez is alleged to have ordered the hit.  He's not

10    alleged to have participated in the murder.  He's not

11    alleged to have taken the walker, gotten the shanks.

12    So this CI's testimony, to the extent it would be

13    significant, is not significant to him.

14            And so, let's see, I think at the bottom of

15    page 37, regardless whether Perez provided his walker

16    for the shanks used in the murder, which he did, just

17    as that information does not affect Montoya had a

18    shank and used it to murder Molina.  That information

19    also does not reflect that Sanchez reviewed the

20    paperwork and, quote, "called for the murder of SNM

21    gang member JM and ordered SNM gang member Jerry

22    Armenta, a/k/a 'Creeper,' to carry out murder and

23    threatened to have Jerry Armenta killed if he

24    refused."

25            So looking at the possible significance in



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   relation to Sanchez' possible defenses in the Molina

 2   murder, this CI's testimony is insignificant.

 3          And then, again, this information is

 4   cumulative.  And I think, if you look at what the

 5   United States attached as Exhibit 1 to the response,

 6   that is the transcript of the recording in which Rudy

 7   Perez admits to providing his walker for the murder.

 8   So, whereas, the Tenth Circuit directs that the

 9   information is merely cumulative, that Perez provided

10   his walker, Roviaro doesn't require disclosure.

11          THE COURT:  And this is -- my memory is

12   this is a testifying witness; correct?

13          MR. BECK:  That's right, Your Honor.

14          MS. JACKS:  May I ask the Court to make an

15   inquiry of the Government?

16          THE COURT:  You may.

17          MS. JACKS:  Because I'm curious if the CI,

18   at 3308, is actually one of the speakers on -- or one

19   of the individuals identified on the transcript that

20   the Government cited as the, quote, "cumulative

21   evidence"?

22          THE COURT:  Do you know the answer to that,

23   Mr. Beck?

24          MR. BECK:  I don't offhand.  I think what

25   I'm referring to, Your Honor, it's Rudy Perez here,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                          1-800-669-9492
                                                    e-mail: info@litsupport.com

DNM 1153

```
 1   who has provided a statement that he provided his
 2   walker.  And so, if we look at page 4 of what's
 3   Exhibit 1 -- so if we look at and focus on Rudy
 4   Perez' statement there, it says, "Que watch, they
 5   come to me, and they're like, look, Big Dog,
 6   something has to be taken care of.  But we don't need
 7   squina.  You don't have to do nothing, you don't have
 8   to do nada, you don't have to do fuck.  We just need
 9   that.  You know what I'm saying?  Do you understand
10   what I'm saying?"
11           And so "CHS:  They just need a piece from
12   your walker.  After that I didn't know nothing,
13   brother.
14           "Orale.  All right.  I -- and I felt okay
15   if I can't -- if I can't put in the work for the
16   family, I gotta be willing to be able to do my part,
17   no matter how little or how big.  Do you feel me?"
18           MS. JACKS:  Before you take that down,
19   wait, I'm sorry, Your Honor, because Mr. Beck just
20   read from this document, but he omitted the lines
21   that refer directly to Mr. -- supposedly refer
22   directly to Mr. Sanchez.  And that is that Dan Dan,
23   Daniel Sanchez, is the one that supposedly is saying
24   that to Mr. Perez, according to this transcript.
25           So I mean, I don't know how the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1154

```
 1    just repeatedly ignores facts that it doesn't like.
 2    It really has to, I would think, raise some caution
 3    about how the Court should view their arguments.
 4              MR. BECK:  And I'm not ignoring evidence,
 5    Your Honor.  What I'm saying is that the statement of
 6    CI, that Rudy Perez participated and that Rudy Perez
 7    provided his shank, is merely cumulative to the
 8    statement of Rudy Perez in that attached exhibit.
 9              And so I'm not contending that there isn't
10    other statements in there about Daniel Sanchez.
11    There are.
12              What I'm saying is that, looking at this
13    CI, and what this CI has to offer, is merely
14    cumulative to a statement from Mr. Perez.
15              THE COURT:  Let me see, are you done, Mr.
16    Beck?
17              MR. BECK:  Yes, Your Honor.
18              THE COURT:  All right.  Ms. Jacks.
19              MS. JACKS:  That just brings me back to
20    how -- I would think then, if that's the Government's
21    argument, they would know whether this CI, at 3380
22    is, in fact, the CHS referenced on this transcript
23    that's Exhibit 1 to their opposition.
24              THE COURT:  Well, I do think it's
25    cumulative.  As you pointed out, you know, we've got
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1155

```
 1    Exhibit 5, 14, 15.  I mean, I just don't see anything
 2    else here that's anything new.  It's just cumulative
 3    that there was a conveyance of this paperwork down
 4    from the north to the south.  This CI doesn't say
 5    anything in this report that I'm seeing about whether
 6    Mr. Sanchez viewed the paperwork or he ordered the
 7    hit on Molina.  I think it's a stretch for Mr.
 8    Sanchez to be asking for this CI.  So I'm inclined to
 9    deny the request for it.
10            MS. JACKS:  May I just clarify our
11    argument.  According to this exhibit that the
12    Government has provided to their opposition, 864-1,
13    it appears to me -- and I would think anybody that
14    reads the transcript -- that the other way the
15    Government is going to try to say Mr. Sanchez
16    conspired to kill Mr. Molina was by ordering
17    Mr. Perez to provide his walker for production of a
18    shank.  And so, if the information is relevant and
19    helpful to Mr. Perez, I think, by definition, it
20    would be relevant and helpful to Mr. Sanchez to --
21    with respect to whatever his alleged role in the
22    conspiracy is.
23            THE COURT:  All right.  I think I did not
24    go along with that argument at the last hearing, so
25    I'm probably not going to go along with it here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1156

1          MS. JACKS:  I'll just note the last

2     hearing, again, there was no discussion about the

3     racketeering conspiracy, and -- which carries much

4     broader liability for the charged defendants than the

5     VICAR homicide.

6          THE COURT:  All right.  You have your next

7     CI, Ms. Jacks?

8          MS. JACKS:  Yes.  I think we've covered up

9     to -- we haven't covered up to this, but the next one

10    I want to talk about is DeLeon 146162, which is

11    Exhibit 17, and it's document 815, page 29.

12         THE COURT:  Is this 17 or 18?

13         MS. JACKS:  It's 17.

14         MR. BECK:  So again, Your Honor, this is a

15    statement about the other Daniel Sanchez.  Obviously,

16    the other Daniel Sanchez is not charged.  And for

17    this one we don't know who provided this report, who

18    the sources are.  And we consent to be ordered to

19    check the file again.  And we will let Ms. Jacks and

20    Mr. Jewkes know if we do identify this CI.

21         THE COURT:  Anything else you want to do on

22    that, Ms. Jacks?

23         MS. JACKS:  I'll just point out, in

24    addition to the other information on the other Daniel

25    Sanchez, this CI provided information about the way

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1157

 1   homicides are supposedly controlled within the prison
 2   system by SNM, and discusses the requirement for
 3   paperwork.  And I think that this CI has relevant and
 4   favorable information to Mr. Sanchez, particularly
 5   because of the conflicting paperwork stories in this
 6   case, the fact that no paperwork was discovered, and
 7   in developing whatever defense there is that there
 8   was never any paperwork sent.
 9            This informant also has information
10   regarding the fact that, although people claim Mr.
11   Sanchez was a leader at PNM at a particular time, it
12   was actually this Fernie Hernandez.
13            So I accept the Government's inquiry at
14   this point.
15            THE COURT:  All right.  So I'll deny the
16   request.  There is nothing to order at this time, but
17   then incorporate the order that I've said earlier
18   about tracking down the source.
19            All right.  The next one, Ms. Jacks?
20            MS. JACKS:  The next one is at Baca 2555,
21   and that is at Document 815, page 36.  And that would
22   be -- the exhibit is 27.  And the exhibit does not --
23   the exhibit is a summary prepared by a hearing
24   officer of statements of various confidential
25   informants regarding an assault, an alleged assault,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1158

1    that's charged as a Overt Act 12 against Mr. Sanchez

2    in the racketeering indictment.

3           MR. BECK:  And given that it's a report

4    from a hearing officer, we don't know who the source

5    is -- the hearing officer refers to is -- are -- we

6    don't know who they are.  So we're happy to go back

7    and check the file again, and see if there is

8    information in there.  But I think, as we argued in

9    our brief --

10          THE COURT:  What page are you on in your

11   brief, Mr. Beck?  Page 41?

12          MR. BECK:  It sounds like that should be

13   where it is.  Yeah.

14          THE COURT:  All right.  If they don't know

15   the sources of these, is there anything we can do on

16   this, Ms. Jacks?

17          MS. JACKS:  Your Honor, when you look at

18   the report that is filed as 815-27, clearly, the

19   Hearing Officer, Lieutenant Ernest Trujillo, knew who

20   the sources were.  And he specifically concludes his

21   report with saying that, "The Hearing Officer further

22   rules that to provide any further information would

23   inherently identify the informant's identity, which

24   would cause a threat to the security of the

25   institution."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1159

```
 1            So clearly, Trujillo -- these are not -- I
 2   mean, supposedly there was a prison assault.
 3   Mr. Sanchez is being accused of doing the assault.
 4   The entire report that this exhibit is based on,
 5   statements of percipient witnesses, who are not
 6   identified, and who provided confidential information
 7   to the hearing officer.  So I don't understand how
 8   the Government wouldn't know who they were,
 9   particularly because they've alleged this as an overt
10   act in the racketeering conspiracy.  I mean, if they
11   don't know who did it, then who is going to be called
12   to testify about this assault, and be called to show
13   that it was, in fact, an assault by Mr. Sanchez, not
14   in self-defense?
15            THE COURT:  Well, if I understand your
16   position, you're not saying you don't know.  You do
17   have other witnesses; correct?
18            MR. BECK:  I don't know -- I mean, this --
19   these CIs are not a witness.  I don't know if we have
20   other witnesses.
21            THE COURT:  Well, my question was:  You
22   have other witnesses of the assault that's referenced
23   here in Exhibit 27; correct?
24            MR. BECK:  I think we'd have to go back and
25   look at our file.  The report -- as we lay out, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1160

```
 1    report also states that Sanchez, quote, "admitted to
 2    owning the soaking shirt that was found in bloody
 3    water in a wastebasket after the assault."  So it
 4    seems as if all these CIs, whoever they may be -- one
 5    or more -- would not have significant testimony
 6    compared with Sanchez' own testimony to owning the
 7    soaking shirt that was found in the wastebasket in
 8    bloody water.
 9             MS. JACKS:  If I may, Your Honor.  Even --
10             THE COURT:  Hold on.  I'm not sure I've yet
11    gotten an answer.  Regardless of who the sources are
12    here -- and you don't know who they are -- you have
13    other witnesses of the incident that is referred to
14    in 27; right?
15             MR. BECK:  I don't know.  We'd have to look
16    back at our files.
17             THE COURT:  So you think right at the
18    moment you may have this entire incident based upon
19    27, and you don't know the sources -- and you don't
20    know the names of the sources?
21             MR. BECK:  Well, we know --
22             THE COURT:  That's a possibility?
23             MR. BECK:  I mean, that's a possibility.
24    Well, I'm saying, yes, I'm saying -- it's not a
25    possibility, I'm saying we don't know at this point
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1161

```
 1    who those confidential sources are.  So I think --
 2              THE COURT:  I'm also hearing you don't have
 3    any other sources to support this allegation?
 4              MR. BECK:  As I said, I don't know offhand
 5    right now whether --
 6              THE COURT:  This is Overt Act 12.
 7              MR. BECK:  Right.
 8              THE COURT:  So this is it, this evidence
 9    right here?
10              MR. BECK:  Right.  So I assume that we
11    should, if it's an overt act.  I just can't tell you
12    right now that we do.  And I don't want to
13    misstate --
14              THE COURT:  Well, what do you want to do
15    about it?  I mean, I think, you know, this is
16    probably not strictly a CI issue.  I mean, if you
17    don't have any witnesses for this overt act, that you
18    can identify at the moment, what are you going to do
19    to identify the sources of this information?
20              MR. BECK:  Well, I don't know that we don't
21    have any other witnesses.  But what we're going to do
22    to identify the source is, is try to see -- look in
23    our files and see if these sources are there.  And as
24    I said, we're trying to track down some of these
25    sources, and will continue to do so.  I think the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150 of 163

```
 1   admission in there, as I said, doesn't make it

 2   significant.

 3           But I understand the Court's point outside

 4   of Roviaro.  So we will look at our files and see

 5   what we've got.  But at the current moment we don't

 6   have these confidential sources' names, and I can't

 7   tell you who our witnesses on this -- whether we've

 8   got --

 9           THE COURT:  Well, I mean, aren't you in a

10   good position on this, Ms. Jacks?  If they don't have

11   any witnesses on this, they can't identify the

12   sources, Overt Act 12 may disappear.

13           MS. JACKS:  Well, that's true, "may," but I

14   mean, I guess I don't understand if they don't know

15   who the sources are, what they're doing to try to

16   track down the sources.  It seems a little bit

17   contradictory to me.  And it also causes me to wonder

18   what was presented to the Grand Jury to get them to

19   indict Mr. Sanchez on this allegation --

20           THE COURT:  What do you want me to do?

21           MS. JACKS:  -- if we don't have any

22   witnesses?

23           THE COURT:  What do you want me to do?

24           MS. JACKS:  How about strike Overt Act 12?

25           THE COURT:  Well, I can't do that this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1163

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

1   afternoon.

2          MS. JACKS:  I guess I'd make an inquiry as

3   to what inquiries the Government has made of the

4   author of this report, and whether they've searched

5   the files, the STIU files, with respect to the

6   statements of confidential informants that were made

7   to this officer.

8          THE COURT:  Do you have any more

9   information you can give in response to those two

10  questions, Mr. Beck?

11         MR. BECK:  Not right now.  I'm happy to

12  look into it, though.

13         THE COURT:  All right.  What else do you

14  want to do?

15         MS. JACKS:  I have no idea, so I'll put

16  that aside for right now.

17         THE COURT:  All right.  Next CI, Ms. Jacks?

18         MS. JACKS:  This is the last one before I

19  have sort of a group, and that would be Baca 2909.

20  That's Exhibit 29, and the argument is at Document

21  815, page 37.

22         I will point out, just to start with, this

23  confidential informant is, I believe, the source

24  that's used for the basis of Overt Act 91 in the

25  racketeering indictment; that Mr. Sanchez was having

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1164

1    a correctional officer smuggle in phones and crack

2    cocaine to him in prison beginning in 2005.  And it's

3    our contention that the Daniel Sanchez that this

4    source is referring to is not the Daniel Sanchez or

5    Dan Dan charged in this indictment.  There is no

6    further description of the Daniel Sanchez he's

7    referencing in the report.  And the identity of this

8    source is relevant and helpful to us in terms of

9    verifying that, in fact, he's referring to the Daniel

10   Sanchez who is not charged.  Again, the defense of

11   misidentification.

12            THE COURT:  Are you contending, Mr. Beck,

13   that this CHS in this document is Ms. Jacks' client?

14            MR. BECK:  We are, Your Honor.  And so, on

15   page 45 to 46, you'll see in the heading of Roman

16   numeral VI, we concede that Sanchez, Defendant

17   Sanchez, made his showing under Roviaro for this.

18            THE COURT:  What page are you on?

19            MR. BECK:  Page 45 to 46.

20            THE COURT:  Okay.

21            MR. BECK:  So this gets into more of the

22   mechanics.  The heading, I think, kind of lays it out

23   there, that if the Court doesn't conclude that CIs

24   don't fall under Roviaro, and I think the Court has

25   ruled, at least for now, that's not the way the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1165

1    is inclined, then I said, "The United States will

2    disclose the identity to Sanchez," and I said that we

3    would do so in line with what other complex

4    designated cases such as this have done, which is 30

5    days before the RICO trial.  So I think this gets

6    into the mechanics and the timing in this case, and

7    the clear and present danger to these CIs who

8    provided information.  So the United States concedes

9    Sanchez is entitled to the CIs, to the extent that

10    the Court isn't treating testifying and nontestifying

11    CIs differently, which I understand the Court is not.

12    Under Roviaro, Sanchez made a showing that he's

13    entitled to this CI's identity.

14          Now, when we turn it over to Mr. Sanchez,

15    then, obviously, that puts this CI's life at real

16    risk in this case.  And as a number of courts have

17    held, or found, as we've pointed out, part of the

18    Roviaro balancing act takes into consideration the

19    danger as another factor, and does so with regard to

20    the timing of when disclosure should be done.  And

21    so, given the real and actual risk to this CI, once

22    his name is turned over to the defense, it weighs

23    greatly in favor of -- I think the Court's old 14

24    days to 30 days, and we've conceded 30 days, because

25    this is a rather large case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              But on the other side of that, I think that
 2    the Court should take into consideration that these
 3    SNM defendants are not -- they're not hard to find,
 4    number one, and it's not hard to find information
 5    about them and impeachment information and location
 6    of them.  The SNM defendants, by definition, have a
 7    rather large rap sheet, which is easily available, so
 8    impeachment by criminal acts is not something that is
 9    going to take a whole lot of legwork or time or
10    investigation for the defense to find out.  So I
11    think that, plus the real risk that they're under,
12    once their names are disclosed under the fourth other
13    relevant factors of Roviaro, certainly weighs in
14    favor of holding back on these disclosures until 30
15    days.
16              And I think also, especially with regard to
17    this testifying witness, the Court should -- if the
18    Court is not inclined to do 30 days or less, the
19    Court should wait to order these disclosures at least
20    until the Court decides what it wants to do with
21    testifying witnesses who are CIs.
22              THE COURT:  All right.  Ms. Jacks.
23              MS. JACKS:  My only comment is I think
24    we're back rearguing what we argued yesterday
25    afternoon.  And I thought it was pretty clear, after
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    our discussions yesterday afternoon, that once a
 2    defendant meets the burden of showing an informant is
 3    relevant and helpful to his defense, which the
 4    Government concedes here, the privilege falls away;
 5    there is simply no privilege to claim.  And for the
 6    same reasons, for the same arguments that we
 7    discussed yesterday, 30 days in advance of this trial
 8    is insufficient.  I mean, this is an informant that
 9    has potentially information that's favorable to Mr.
10    Sanchez, and would constitute Brady material.  And
11    because of that, Mr. Sanchez is entitled to a
12    sufficient time to investigate and pursue this
13    information so that he can use it in preparing and
14    presenting his defense.  And that 30 days prior to
15    trial just isn't that.
16              And in terms of what sort of danger there
17    is to this informant, I don't think the Government
18    has come even close to meeting its burden to showing
19    any specific facts that the Court could use in
20    assessing what, if any, danger is presented by
21    revealing this informant's identify.  I mean, a
22    showing, I think, that's contemplated would be much
23    higher than what was just made.
24              MR. BECK:  So, your Honor, I think maybe
25    this goes to Morales' guidance, that the Tenth
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Circuit, once the showing -- whether the showing has
 2    been made, that the Court conduct an in camera review
 3    of this evidence.  And I submit to the Court that we
 4    have evidence that defendants in this case have tried
 5    to put out hits on known government witnesses or
 6    cooperators during this case.  So it's not as if this
 7    is some -- I mean, just setting aside what the SNM
 8    does and how it operates, and the SNM as a whole,
 9    there is actual evidence since this litigation has
10    started that defendants have tried to put out hits on
11    cooperating defendants and cooperating witnesses, or
12    those whom they believe will cooperate.  So there is
13    that real and present danger.
14              And so I think, if the Court's inclined to
15    grant that, then an in camera hearing may be
16    appropriate in this case.  And during that time, I
17    think the Court can decide those other relevant
18    factors in terms of the timing.  And so I think we --
19    you know, we latch on to this "relevant and helpful"
20    line from Roviaro, because it's helpful.  But I think
21    what Roviaro goes to is the balancing test that leads
22    us to the conclusion that there is information,
23    relevant and helpful, and necessary to a just
24    trial -- those are my own words, I'm not as smart as
25    the Supreme Court -- ensure the fairness of a fair
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   trial.  And so I think an in camera hearing is

2   appropriate to look at who this witness is, what

3   significant testimony they have, and whether they are

4   in a position where they will be threatened.  Because

5   I think those factor in to that fourth factor, other

6   relevant factors, which factors in to when the Court

7   should require disclosure of this information.

8         THE COURT:  Well, given what this person

9   may have, what -- if 30 days is not sufficient, what

10  would be a more realistic time in your view,

11  Ms. Jacks?

12        MS. JACKS:  Well, as I pointed out, I think

13  in my reply, it takes time for defense attorneys and

14  defense investigators to get cleared to go to the

15  prison.  There are other things that come into play.

16  So I would say 120 days before trial for this

17  particular witness.

18        THE COURT:  Well, this is not a final

19  final.  I'll give it some more thought.  But why

20  don't you, Mr. Beck, go ahead and disclose the name

21  to Ms. Jacks.  And that will be for attorneys' eyes

22  only at the present time.  At the present time, I'll

23  indicate that you'll need to disclose the name 90

24  days before trial.  I'll give it a little bit more

25  look.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        If you want to go ahead and pursue an

2   evidentiary -- in camera, we can talk about how to do

3   that.  I don't think anybody is disputing, though --

4   I'm not sure I need to see it, because nobody seems

5   to be disputing it that you do have some evidence

6   that there have been threats on witnesses' lives.  So

7   if the in camera review is going to be more than

8   that, we can certainly talk about it.  But I don't

9   think anybody is disputing that the Government has

10  some evidence that there have been threats on

11  witnesses' lives since the case began.

12        So I may be able to just take that as a

13  given in trying to balance the equities of the

14  disclosure.

15        MR. BECK:  Okay.  So the attorneys' eyes

16  only -- and this is just some housekeeping stuff -- I

17  think the way that we drafted the order with regard

18  to Mr. Perez is that would include sort of the

19  attorneys' staffs, the investigators, the law clerks.

20        THE COURT:  So if she wants to send an

21  investigator out, it will cover it, too.

22        MR. BECK:  Right.  So 90 days is when we

23  will disclose to Ms. Jacks that information under the

24  attorneys' eyes only?

25        THE COURT:  No, go ahead and get it into

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    her hands now.  And then, if further disclosures need

2    to be made, they can be delayed at the present time

3    for 90 days.  I'll give that some thought.  I may

4    adjust that in the actual order that I enter.

5           MR. BECK:  All right.  I think that's

6    sufficiently clear.  So will this apply to the

7    other -- I think it's Exhibits 8 and 9, and now

8    Exhibit 14?

9           THE COURT:  Is that agreeable to you,

10   Ms. Jacks?

11          MS. JACKS:  I'm hesitant to agree.  I mean,

12   it's our position that we're entitled to have the

13   identities of those individuals.

14          THE COURT:  Let's go ahead, and I'll make

15   it consistent across the board for the four

16   disclosures I've ordered.

17          MR. BECK:  Okay.

18          THE COURT:  All right.  Your next -- I

19   think you were going to go to a group now, Ms. Jacks?

20          MS. JACKS:  We are going to a group,

21   because I'm not going to belabor -- I understand the

22   Court's position on the informants that have

23   information on the other Daniel Sanchez, or other Dan

24   Dan, and the other Daniel Sanchez smuggling drugs

25   into prison.  Just because I'm not arguing these

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                      Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1  doesn't mean I'm withdrawing the arguments that are

 2  in our Document 815.  We still believe that we are

 3  entitled to the identities of these informants, and

 4  that they are relevant and helpful to Mr. Sanchez'

 5  defense, particularly because we do have several

 6  situations where it appears that either the

 7  Government or the Government's witness is confused as

 8  to which Mr. Sanchez is which, or which Dan Dan is

 9  which.  And I'll just refer to the exhibits.  This

10  argument would be to the informant in Exhibits 1, 3,

11  4, 7, 16, 18, 20, 21, 22, 23, 24, 25, 26, and 28.

12          THE COURT:  All right.

13          MS. JACKS:  Finally, in my reply -- we

14  talked about this earlier today -- but there is an

15  area I'm unclear about the Court's ruling.  And that

16  is:  What are we going to do, or what's the Court

17  going to do about informants that the Government,

18  during the course of their investigation, has

19  disclosed to those who have a cause to resent

20  communication, but are continuing to try to claim

21  some privilege here, when, by the language in

22  Roviaro, would no longer exist?

23          THE COURT:  Well, I told you I'd have to

24  take a look at that.  I mean, I guess we had an

25  agreement -- I think everybody agreed yesterday that,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    if I order the disclosure, that's not any sort of
 2    waiver.  It's only if the Government is selectively
 3    disclosing, that is your concern?  I guess, probably
 4    on that score, you're going to have to probably lay
 5    some factual basis for me to make some finding as to
 6    that.  But I'll have to -- I'll have to study that
 7    issue.
 8         MS. JACKS:  Okay.  We did provide a
 9    declaration as an exhibit to the reply that outlines
10    what our investigation has revealed, at least as far
11    as what we're informed and believe.
12         With respect to the Court's other comment,
13    yesterday -- and I think I was discussing this, I
14    think, with Mr. Chambers after court yesterday,
15    because I think there may have been -- I don't want
16    to say a miscommunication, but not a meeting of the
17    minds -- it was my understanding that the Court's
18    order regarding the informant that was disclosed to
19    Mr. Villa for, basically, his eyes only, and not to
20    be shared with other counsel, was made as the result
21    of an agreement with the Government.  And I think
22    that's a different situation.  And I don't dispute
23    the validity of that order that that somehow gives me
24    the right to have that informant.  But I distinguish
25    that from the situation where the Court makes a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1174

1    finding, after an argument, that a particular

2    informant is relevant and helpful to a defendant in

3    the racketeering conspiracy.  Because, as we've

4    discussed at times today, if an informant is relevant

5    and helpful to a defendant in the racketeering

6    conspiracy, then his identity should be turned over

7    to that defendant, and because of the nature of the

8    racketeering conspiracy liability, every other

9    defendant would, by definition, then that informant

10   would be relevant and helpful to every other

11   defendant charged in that racketeering conspiracy.

12           And then, finally, dead informants.

13   Roviaro is clear, I think in Footnote 8, that there

14   is no informer's privilege for the Government to

15   claim if the informant is dead.  So like -- I think

16   they're claiming a privilege at times when it doesn't

17   exist, and I think the Court should order the

18   disclosure of all informants where the privilege no

19   longer exists, whether that means they've been

20   disclosed as someone who has cause to resent their

21   communication, or if they're dead.

22           THE COURT:  Do you know of some dead

23   informants?

24           MS. JACKS:  I think the Government knows

25   what informants fit into these categories.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Your Honor, I do know of dead
 2    informants.  And when I saw that in Ms. Jacks' brief,
 3    I agree with her.  I don't believe that the United
 4    States has the privilege to withhold the identity of
 5    dead informants.  So we will disclose the dead
 6    informants to whoever asks.  And I mean, we'll
 7    disclose it to everyone, let them know which Bates
 8    numbers are dead informants and what that person's
 9    identity is.
10              THE COURT:  So you have a collection of
11    informants --
12              MR. BECK:  We've got one.
13              THE COURT:  One.  All right.  Anything else
14    on that?
15              MS. JACKS:  No, Your Honor.  Thank you for
16    your patience.  I know I've tried it.
17              THE COURT:  Thank you, Ms. Jacks.
18              All right.  Who is next on this score?
19              MS. HARBOUR-VALDEZ:  Your Honor?
20              THE COURT:  Yes.
21              MS. HARBOUR-VALDEZ:  There were several
22    other defendants who joined in Ms. Jacks' motion.
23    Are you going to hear argument on why we believe
24    certain informants are helpful to our clients, or are
25    you just going to take up the next motion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1176

```
 1              THE COURT:  It's up to y'all.  However the
 2    defendants want to proceed.
 3              MS. HARBOUR-VALDEZ:  I'll go, Your Honor,
 4    if no one else does.
 5              THE COURT:  All right.  So when I look at
 6    the joinder that you've made, do I look at the
 7    same -- do I look at Mr. Sanchez' motion, or do I
 8    look at anything else?
 9              MS. HARBOUR-VALDEZ:  I was treating this
10    like you treated the last one, where we needed to
11    come up and make an individual showing for our
12    clients.  I did not file anything.  And, obviously,
13    Ms. Jacks' argument is a little bit different than
14    mine as to why it's material to Mr. Troup.  I just
15    have one exhibit.  It would be Exhibit 2.
16              THE COURT:  Did you file a joinder in her
17    motion?
18              MS. HARBOUR-VALDEZ:  I joined her motion
19    when she filed it.
20              THE COURT:  So you have one -- all right.
21    So it's Exhibit 2?
22              MS. HARBOUR-VALDEZ:  Right.  She addresses
23    it on page 13 of her motion, Document 815.
24              MR. BECK:  Your Honor?
25              THE COURT:  Yep?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1177

1          MR. BECK:  I don't want to interrupt

2    Ms. Harbour-Valdez, but speaking with much wiser

3    minds than mine, I don't think that this is an issue

4    we want to fall on our sword with.  And this "issue,"

5    I mean the issue of whether if it's relevant to one

6    co-defendant in the RICO conspiracy charge, then it's

7    relevant to all of them.

8          So for purposes of these CI motions in 1613

9    that relate to overt acts in the conspiracy, we are

10   agreeing -- without arguing about anything, we are

11   agreeing that the finding that once we're ordered to

12   turn over the identity, or we agree to turn over the

13   identity to one defendant in the RICO conspiracy

14   charge, we will turn it over -- that same order

15   applies to all the defendants in the RICO conspiracy

16   charge, given the nature of RICO conspiracy, where

17   you don't have to prove an actual overt act by each

18   person.

19          So I'll get with Ms. Jacks about the couple

20   that you ordered us to disclose, and we'll talk

21   about -- see if we can agree whether those are or are

22   not -- I think they are probably charged overt acts.

23   And then we'll just carry that forward for all the

24   Count 1 RICO conspiracy overt acts; that we will

25   disclose that under the same order under the same

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    terms to all those defendants.

2           THE COURT:  Does that, then, work for you,

3    Ms. Harbour-Valdez?

4           MS. HARBOUR-VALDEZ:  If it applies to the

5    VICAR defendants as well.  I think that's the

6    argument they made yesterday as to severance, but --

7           MR. BECK:  So that -- it doesn't apply in

8    the VICAR conspiracy, because we would have to prove

9    the additional element that they received some

10   benefit or they did it to maintain their position in

11   the conspiracy.  So that's the difference in the

12   RICO, where it's clear you don't have to prove an

13   overt act, versus the VICAR, where you have to prove

14   that there is some kind of benefit received from the

15   racketeering organization.

16          THE COURT:  All right.  So you still need

17   to argue this, then?

18          MS. HARBOUR-VALDEZ:  I believe so, if he's

19   not going to turn it over.

20          And honestly, Your Honor, I think this

21   falls under Brady, so this may not take long.  It's

22   page 3 of Exhibit 2.  It starts at the bottom.  The

23   last sentence, it says, "At the direction of Garcia,

24   Lujan then directed Joe Gallegos, an individual he

25   knows only as 'Criminal,' and 'Angel, last name' --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1179

```
 1              THE COURT:  Hold on just a second.  Let me
 2    get there, Ms. Harbour-Valdez.  What page?  You said
 3    page 13 was where Ms. Jacks argued it?
 4              MS. HARBOUR-VALDEZ:  The Bates number I'm
 5    starting at DeLeon 637, the bottom of that page.
 6    Exhibit 2 to Ms. Jacks' motion.
 7              THE COURT:  Exhibit 2, okay.  All right.
 8              MS. HARBOUR-VALDEZ:  Actually, we could
 9    start a little bit earlier, because it's referencing
10    the 2001 homicides at Southern New Mexico, where two
11    individuals were hit on the same day.  But the last
12    sentence is where I'd like to start:  "At the
13    direction of Garcia" --
14              THE COURT:  Which paragraph?
15              MS. HARBOUR-VALDEZ:  Very last sentence on
16    that page.
17              THE COURT:  Okay.
18              MS. HARBOUR-VALDEZ:  "At the direction of
19    Garcia, Lujan then directed Joe Gallegos, an
20    individual" -- going to the top of the next page --
21    "he knows only as 'Criminal,' and 'Angel, last name
22    unknown,' to carry out the murders by means of
23    strangulation.  It was to be carried out at breakfast
24    before classes started at the prison on that
25    particular morning.  Angel currently has a lot of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   clout within the Department of Corrections,

 2   particularly at the Southern Facility in Las Cruces."

 3            So my client is charged in that count --

 4   that's Count 1 -- but this is exculpatory, I believe,

 5   as to him, because whoever this informant is has

 6   knowledge that he was not given the hit or the

 7   directions to carry out the hit.  So I think that is

 8   certainly Brady, and we would be entitled to know

 9   this person's identity to go and explore that with

10   him.

11            THE COURT:  All right.  Your comments on

12   this, Mr. Beck?  Let me -- before I hear from you,

13   explain which murder is this going to,

14   Ms. Harbour-Valdez?

15            MS. HARBOUR-VALDEZ:  This is Count 1 of

16   4268.  My client is charged, along with Angel DeLeon,

17   who I believe here is referred to as "Angel last name

18   unknown," Joe Gallegos, and my client are charged in

19   Count 1, under the Government's theory of being the

20   three individuals who carried out the hit.

21            THE COURT:  Yeah, I didn't ask that

22   question as detailed.  But tell me exactly what

23   they're accusing Mr. Troup of doing as part of the

24   conspiracy to commit this murder.

25            MS. HARBOUR-VALDEZ:  My understanding from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1181

1    the discovery -- or the Government's theory, not

2    necessarily the discovery, because here I believe the

3    discovery says something different -- is that

4    Mr. Lujan ordered three people to carry out a hit.

5    Mr. Lujan was taking orders from Mr. Garcia.  And the

6    Government is alleging -- at least the indictment

7    alleges -- that my client was one of the three

8    individuals who was given those orders by Mr. Lujan.

9    Here, in the discovery, obviously, Mr. Lujan has --

10   it's saying directed someone other than my client, an

11   individual known as "Criminal."

12           THE COURT:  He doesn't mention your

13   client's name?

14           MS. HARBOUR-VALDEZ:  No, it does not.

15           THE COURT:  And is Mr. Troup alleged to

16   have -- is the Government saying he was physically

17   involved in the murder?

18           MS. HARBOUR-VALDEZ:  Yes, Your Honor.

19   That's the theory they're -- they've alleged in the

20   indictment.

21           THE COURT:  All right.  Your thoughts on

22   this, Mr. Beck?

23           MR. BECK:  So I guess I'm having two

24   thoughts.  I'll sort of walk through them.  The first

25   is -- I guess the first is that I see how this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 170

```
 1   information is beneficial that this person says that

 2   Lujan ordered the hit, and leaves out Troup, who is

 3   charged with it.  I don't necessarily see how the

 4   identity would be helpful on that.  But more than

 5   that --

 6             THE COURT:  This is a witness you're going

 7   to call?

 8             MR. BECK:  This is a witness we're going to

 9   call, right.  And --

10             THE COURT:  Well, I guess

11   Ms. Harbour-Valdez can probably do it better than I

12   can, but I guess, if she had this witness in front of

13   her, she would probably ask him, say, You identified

14   "Criminal" and Mr. DeLeon, but you didn't identify my

15   client.  Does that mean that Mr. Lujan did not order

16   Mr. Troup to do anything?  I guess, if the answer was

17   yes, I would think that would be helpful.

18             MR. BECK:  Right.  I'm sorry, I was being

19   filled in.  I'm just trying to think about how this

20   fits in.  So the United States has gone back and

21   interviewed this CI, since this report, as a

22   testifying witness.  And the CI explained Defendant

23   Troup's involvement; explained that Defendant Troup

24   admitted to him why he got involved, and how.  And so

25   then, I guess, this would go into the category of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1183

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

```
 1    significance of --

 2              THE COURT:  So what's your story now about

 3    how Mr. Troup got involved in this murder?

 4              MR. BECK:  I think it's -- I guess, I

 5    probably defer to Ms. Armijo who can give a better

 6    explanation how Troup was involved in this murder.

 7    If you want to explain how.

 8              (A discussion was held off the record.)

 9              MR. BECK:  So Mr. Troup physically

10    participated in the murder.  And I don't know if he

11    was the one who strangled, or helped by holding

12    down -- I don't have that information in front of

13    me -- but he physically participated.  And so what

14    happened was, I guess, there were others who were

15    ordered -- there were others who were ordered to do

16    the hit beforehand.  They didn't do it.  Mr. Troup

17    then did it after the first, I guess, team didn't do

18    it.

19              And so, again, that's why I was trying to

20    think of how this fits in.  I don't have a case in

21    front of me, or the case law in front of me.  But

22    again, looking at the in camera hearings, and how

23    courts have held these in camera hearings, once you

24    have someone who is a participant or witness, and

25    then you're looking at what role they played as a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1184

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172

```
 1    participant or witness, or whether they would have
 2    significant testimony to the defendant's defense, the
 3    Courts hold an in camera hearing with the CI.  And
 4    then, after asking these questions, if the Court
 5    finds that the CI has only inculpatory information,
 6    the Court does not order the identity disclosed.
 7             So that's why I was taking a minute to
 8    think about this, because, given that once this
 9    person came on as a testifying witness for the United
10    States, we took more statements from this person, and
11    explored this person, this source's information, the
12    source has inculpatory information.  So this may
13    be -- again, this may be one of those instances in
14    which the Court can take that representation or hold
15    an in camera hearing.  Because I see Ms. Harbour has
16    a very valid point here that this information is
17    helpful to her, but later information has made it not
18    significant under Roviaro.
19             MS. HARBOUR-VALDEZ:  And I don't have that
20    later information.
21             THE COURT:  Well, why don't you do this:
22    Why don't you lay out your questions, submit those to
23    me so that I can eliminate the possibility that this
24    witness, this source, has exculpatory evidence.  But
25    you understand what he's saying?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                MS. HARBOUR-VALDEZ:  I do.  But would the

 2    Court be inclined to order them to turn over the

 3    additional statements from this witness?  Because --

 4                THE COURT:  Well, do you have additional

 5    statements?

 6                MS. HARBOUR-VALDEZ:  He said he'd

 7    interviewed them.

 8                MR. BECK:  Right.  The additional

 9    statements are Jencks.  The additional statements are

10    material that we took once this person decided to

11    come on as a testifying witness.

12                THE COURT:  Well, I think you've got a

13    pretty good outline of what the deal is.  So submit

14    me your questions, and I'll make sure I ask them, and

15    I'll try to play defense lawyer while I ask them.

16                And you, Mr. Beck, work with Ms. Wild to

17    set up a time as soon as possible so that I can meet

18    the source, and ask him these questions.  And I'll

19    try to supplement them and not just stick to the

20    script.

21                MS. HARBOUR-VALDEZ:  Very well.  Thank you,

22    Your Honor.

23                MR. BECK:  Yes, Your Honor.

24                THE COURT:  Let us know what you have.

25                MR. BECK:  And again, we can talk about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1186

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 174187

```
 1    different ways to do this.  But I think, regardless,

 2    I think the Court's always asked the court reporter

 3    to be there and take down a transcript of what

 4    happened and seal it.

 5            THE COURT:  I will.  It will be sealed.

 6    But I'll make a record.

 7            MS. HARBOUR-VALDEZ:  Very well.  That was

 8    the only one that we had an issue with.

 9            THE COURT:  All right.  Thank you,

10    Ms. Harbour.

11            MR. BECK:  That's a good point of

12    clarification.  If that person is represented, do

13    they -- does the Court want that person's

14    representative to be there?

15            THE COURT:  Oh, well, I think they have to

16    be, don't you?

17            MS. HARBOUR-VALDEZ:  I do.

18            MR. BECK:  I think that's right.

19            THE COURT:  So if they've got counsel, they

20    need to be present.

21            All right.  Let's take a break at this

22    point.  We've been going for a while.  And then we'll

23    come back in and y'all decide who wants to go next.

24            (The Court stood in recess.)

25            THE COURT:  All right.  Everyone be seated.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1187

```
1    All right.  Mr. Chambers, were you getting up to come

2    here to the podium?

3               MR. CHAMBERS:  Thank you, Your Honor.

4               THE COURT:  Mr. Chambers.

5               MR. CHAMBERS:  Again, I represent Javier

6    Alonso, who is charged in Count 3.  He's charged in

7    Count 3, along with Edward Troup and Arturo Garcia.

8    There are two other people named in the indictment,

9    Ruben Hernandez and Ben Clark; both of them have

10   entered pleas and are cooperating.  And everything

11   I'm going to be talking about has to do with Count 3,

12   because that's the only count that Mr. Alonso is

13   charged in.

14               But I do want to follow up on a couple

15   requests that Ms. Jacks made.  To do that, though, I

16   need to give the Court a little bit of context about

17   Count 3.  Count 3 is an allegation of murder.  The

18   deceased is Freddie Sanchez.  It occurred at the

19   Southern in June of 2007.  And, essentially, the

20   allegations are that -- as best I can tell, the

21   Government's theory is that Arturo Garcia ordered Mr.

22   Sanchez to be killed; that Ruben Hernandez assisted,

23   covering security cameras; that Ben Clark served as

24   an intermediary, conveying orders; and that Javier

25   Alonso and Edward Troup actually killed Freddie
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1188

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 176

1    Sanchez.

2              Now, I've mentioned five names, but there

3    are some other names that you may not be familiar

4    with, but are critically important to Count 3.  And

5    they're Brian and Raymond Rascon, the Rascon

6    brothers.  And here's why they're important.  Ruben

7    Hernandez is charged in Count 3, but he has

8    cooperated.  And in statements he has said -- and I'm

9    quoting from the discovery -- "Mr. Hernandez states

10   that he placed paper towels over the lenses by first

11   wetting them and then by using a broom.  He kept his

12   back to the incident, and faced the window of the pod

13   door to be a lookout for any prison staff about to

14   enter the pod.  Mr. Hernandez states that he could

15   hear a struggle ensue and could hear gasping and

16   gurgling coming from the direction of Freddie

17   Sanchez' cell.  When the incident was over, he turned

18   around and saw Raymond Rascon exit Mr. Sanchez' cell,

19   and immediately go to his assigned cell next to

20   Sanchez' cell."

21             In another statement, Mr. Sanchez said --

22             THE COURT:  Are you looking at things that

23   I should be looking at while you're reading these?

24             MR. CHAMBERS:  If you don't trust me to

25   read them accurately.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1189

```
 1                THE COURT:  No, it just helps me to see

 2     them.

 3                MR. CHAMBERS:  I can put it on the Elmo.

 4                THE COURT:  I want to keep mine marked, so

 5     tell me where you're looking.  What document are you

 6     looking at?

 7                MR. CHAMBERS:  These are not in the court

 8     file.

 9                THE COURT:  Okay.

10                MR. CHAMBERS:  They're discovery.

11                THE COURT:  Okay.

12                MR. CHAMBERS:  But I don't need to belabor

13     the point.  But the point is that one of the

14     Government's main witnesses clearly implicated the

15     Rascons, Raymond Rascon.

16                Additionally, there is -- in discovery

17     there is a document where an FBI agent is requesting

18     funding for a confidential informant.  And in support

19     of the request for funding he talks about the Freddie

20     Sanchez homicide, and says, "Freddie Sanchez was

21     believed to be a Government informant, was strangled

22     to death at the Southern on June 16, 2007."  And then

23     it lists the suspects for the Freddie Sanchez

24     homicide, and it says, "Ruben Hernandez, Edward

25     Troup, Raymond Rascon, Brian Rascon."  No mention of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1190

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178191

1    Javier Alonso.

2           So the Government also in discovery

3    produced this handy dandy little chart of the Count 3

4    offense.  And under the category of "carried out the

5    offense," is lists the name "Raymond Rascon."

6           Interestingly, when Ruben Hernandez pled,

7    his statement of facts has been sanitized to remove

8    any reference to the Rascons.  But the Rascons are in

9    this up to their eyeballs.

10          And that brings me to a document that

11   Ms. Jacks disgusted -- discussed -- she was disgusted

12   too, but she discussed, 815-2.  And she discussed a

13   portion of this document.  She was talking about page

14   636 of the document that talks about Gerald Archuleta

15   taking credit for the Matthew Cavalier homicide, when

16   he didn't do it.  We joined Ms. Jacks' request in

17   that regard.

18          In the same regard, it also talks about, on

19   page 638 of the same document, Jeremiah Baca taking

20   credit for hits that he was not involved in, which

21   just further bolsters Ms. Jacks' argument that people

22   seem to like to take credit for acts of violence that

23   they didn't perpetrate.

24          But I digress.  I'm here to talk about the

25   Rascons.  And at 815-2, Bates page -- let me make

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1191

```
 1    sure I've got the right page.  Bates page 643.  It
 2    says, "Brian and Raymond Rascon are brothers and are
 3    both members of the SNM."  Well, that's important
 4    right there, in and of itself, because it puts them
 5    in the charged enterprise.  It says, "Brian is
 6    considered to be a soldier within the SNM, and would
 7    carry out an order for the SNM if instructed."  So
 8    where we have an informant who identifies Rascon as
 9    being a member of the enterprise, and as being
10    willing to carry out hits, if so instructed, together
11    with what we already know, identifying Rascon's
12    involvement.  So because of that, it's my view that
13    this informant, for the reasons articulated by
14    Ms. Jacks, and now for this reason also, possesses
15    exculpatory information and he should be disclosed.
16              THE COURT:  What more than what is written
17    here would be helpful to you?  What else do you think
18    this source could give you?
19              MR. CHAMBERS:  Well, to answer that would
20    require some speculation.  But the main thing is what
21    it says.  For me to say that he could do -- offer
22    anything else, I don't know, because I don't know who
23    he is.  But he clearly knows the Rascons.  He knows
24    that they're part of SNM, and he knows that they're
25    willing to do hits.  So together with what we also
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1192

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 180 of 193

```
 1    know about the Rascons, I believe that's exculpatory,
 2    that's Brady material.  I can't really -- I suppose
 3    they could give me something more.  But for me to
 4    tell you what else it would be, would really be pure
 5    speculation.
 6              THE COURT:  All right.  Thank you, Mr.
 7    Chambers.
 8              Mr. Beck, do you have a response on that?
 9              MR. BECK:  So I guess I don't see where
10    this CI is providing information that the Rascon
11    brothers were involved in the Castillo homicide.
12              THE COURT:  I don't think Mr. Chambers is
13    saying that; right?  You're just saying that this
14    fellow offers a little bit more information on the
15    Rascons; that they're members of the SNM, and Brian
16    will do what he's told.
17              MR. CHAMBERS:  Yes, and it's actually the
18    Sanchez, not the Castillo homicide.  It's Count 3.
19              MR. BECK:  Well, I see that it talks about
20    the Castillo homicide on the bottom of that
21    paragraph.  And I guess that's why I thought -- it
22    seems to me that saying Brian Rascon and Raymond
23    Rascon, who aren't charged in this, are members of
24    the SNM and good soldiers is not relevant, and
25    doesn't talk about charged -- a charged criminal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1193

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 181 1194

```
 1   transaction.  So this is certainly a mere tip as to
 2   them.  But it's not showing that this CI -- doesn't
 3   suggest that this CI was a participant or a material
 4   witness to the charged criminal transaction of
 5   killing Sanchez.
 6             THE COURT:  You're going to bring this
 7   witness; right?
 8             MR. BECK:  That's right.
 9             THE COURT:  Is there any dispute about the
10   Rascons?  I mean, is it pretty clear he's a member of
11   the SNM?  Has anybody got any reason to doubt that?
12             MR. BECK:  I don't think we doubt that.
13             THE COURT:  All right.  Let me see if Mr.
14   Beck has anything else.  Mr. Beck?
15             MR. BECK:  Well, so -- I mean, I guess
16   earlier I talked about that there were two people who
17   were ordered to do the homicide who didn't do it, and
18   then Troup jumped in with others and did it.
19             THE COURT:  Was that the Sanchez murder?
20             MR. BECK:  The Sanchez murder, and the
21   Rascon brothers are the two who didn't do.  That's
22   why they're not charged.  So that's why I'm saying,
23   it's not a charged criminal transaction.  The United
24   States doesn't contend that they were involved in
25   this murder.  And so I guess the conflicting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   information that Mr. Chambers pointed out, I think,
 2   paints a picture that maybe there was someone else
 3   involved.  But I don't think that the identity of
 4   this person, or more information he's going to get
 5   from him would be helpful.  And I don't think he's
 6   entitled to it, because, again, to say that Brian and
 7   Raymond Rascon are good SNM soldiers and are SNM
 8   members is a tip.  I mean, it's very obviously.
 9   We've had some talks about whether something is a tip
10   or whether someone is involved.  And certainly that
11   two people are good SNM soldiers, when they're not
12   charged, constitutes a tip.
13           THE COURT:  All right.  Thank you, Mr.
14   Beck.
15           Mr. Chambers, you were going to tell me
16   something about -- when I asked the question is it
17   just common knowledge that the Rascons are members of
18   SNM?  Did you have a comment on it?
19           MR. CHAMBERS:  Yes, I don't think there
20   will be any dispute about that.
21           THE COURT:  That's pretty clear.
22           MR. CHAMBERS:  But I do want to make a
23   couple of comments, if I could.  First of all, the
24   statement about Castillo in the last line really has
25   nothing to do with what goes before.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 183

```
 1              Secondly, for the Government to stand up
 2    here and say the Rascons are not involved is --
 3    strains credulity, because their star witness says he
 4    was.
 5              Third, the Government argues that this CI
 6    is not a percipient witness.  I never said that he
 7    was.  I said he has Brady material.  And he does have
 8    Brady material.  What he has to offer is helpful.
 9    It's relevant and helpful.  It's relevant and helpful
10    because it shows that another person -- not my
11    client -- well, let me -- before I say it, I'd say,
12    you know, the Government minimizes what this
13    informant says by just saying, Well, they're just
14    saying the Rascons are SNM.  That's not what it says.
15    It says that they are SNM, and they will do hits,
16    which is exactly what Ruben Hernandez says.  So
17    that's Brady.  It advances the ball for the defense,
18    and we're entitled to it.
19              THE COURT:  But I guess -- you've got his
20    statement; he's going to testify.  If I were to
21    require the production of the name, what more would
22    you get out of him?  What you got is what is most
23    helpful to you.
24              MR. CHAMBERS:  But I don't know who it is.
25              THE COURT:  Well, I know, but that's the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1196

```
 1    thing -- I guess I'm wondering what does the
 2    disclosure of his identity -- how does that give you
 3    any more helpful or relevant information than what
 4    you already have here?
 5              MR. CHAMBERS:  Well, I'm repeating a lot of
 6    things that Ms. Jacks said earlier today.  It allows
 7    us to do follow-up investigation, to vet the witness,
 8    to see if he actually has the access to SNM to be
 9    able to provide the information that he has.  There
10    is a lot of follow-up investigation that can be done.
11              THE COURT:  All right.  Anything else,
12    Mr. Chambers?
13              MR. CHAMBERS:  Not on that one, Your Honor.
14              THE COURT:  I'm still inclined not to grant
15    the disclosure on that.  It seems to me it's -- there
16    is no doubt that some of these people, if they were
17    disclosed, might provide some information.  But I
18    think we'd probably be speculating at this point, and
19    so not enough basis for me to override the privilege.
20              What else you got, Mr. Chambers?
21              MR. CHAMBERS:  Well, if you didn't like
22    that, you're not going to like anything.
23              Let me say I would like to discuss two that
24    Ms. Jacks discussed.  They were 815-8 and 9.  But
25    before I do that -- we can perhaps short-circuit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1197

```
 1    this -- because the Government has said if the Court
 2    orders disclosure of a source in 1613, they're going
 3    to give it to all the defendants in 1613.  But they
 4    have said that they will not follow that same rule in
 5    4268, if I'm understanding the Government's position
 6    correctly.
 7              MR. BECK:  That's right.
 8              MR. CHAMBERS:  Okay.  Well, I think that's
 9    wrong, Your Honor.  And if I can convince you that's
10    wrong, then I don't need to tell you why I am
11    independently entitled to 815-8 and 9.  And the
12    reason it's wrong is because yesterday, when we were
13    discussing severance -- and we're discussing
14    severance in 4268 -- the Government made very clear
15    that all of these defendants are good for everything,
16    they're responsible for everything in the indictment.
17    Not just the individual counts they're charged with.
18    And indeed, the Government has taken that position in
19    writing, in Document 836, on page 7.  And I quote,
20    "The United States explicitly alleges that defendants
21    participated in the same series of predicate offenses
22    as the other defendants, all in violation of Section
23    1959."  The Government is saying that everybody is
24    responsible for everything.  And if that's true, then
25    we're entitled to the discovery.  If discovery of CI
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1198

```
 1    815-8 is made to Ms. Jacks, it needs to be made to
 2    everybody, for the reasons I've already articulated,
 3    and also just for the common sense reason that it
 4    makes absolutely no sense to be sitting in a trial,
 5    where the Government knows who the witness is,
 6    Ms. Jacks knows who the witness is, Mr. Jewkes knows
 7    who the witness is, but nobody else does.
 8             And there has also been repeated references
 9    to the passage in Roviaro that talks about the
10    privilege vanishing once the disclosure is made.
11             So for all those reasons it's my view that
12    if a disclosure is made to any defendant in 4268, it
13    needs to be made to all defendants in 4268.
14             If you like that argument, you don't need
15    to listen to me as long.
16             THE COURT:  Well, I haven't adopted that
17    argument yet.  It seemed to me that -- I mean,
18    defendants get to take positions they want, but it
19    seems to me we had some agreement that if I was to
20    order the disclosure, that that was not going to be
21    considered a waiver under Roviaro, and now it seems
22    like I'm hearing it is, if I understand what
23    Ms. Jacks is arguing this afternoon.  So it seems we
24    had some agreement earlier, and now we've slid away
25    from it, and you're sliding away from it, too.  So --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1199

1        MR. CHAMBERS:  I was not part of that

2    conversation.

3        THE COURT:  Well, I think you were.  I

4    think you were here when we were earlier, and

5    everybody agreed that that would not be part of it.

6    So I'll have to think about it.  It sounds like I'm

7    going to have to make a determination.  Earlier, I

8    think people were saying that they didn't think a

9    Court-ordered disclosure was going to put the

10   Government at risk of now having to disclose it to

11   everyone.  And if people are now taking the position

12   that it does, and I'll have to go in and give that

13   some thought.

14       MR. CHAMBERS:  Okay.  Well, then let me

15   propose another rationale for the disclosure.  First

16   of 815-9.  And Ms. Jacks discussed this.  And when

17   she was talking about it, she was talking about the

18   whole blood-in-blood-out concept.  I want to talk

19   more about the Rascons, though, here.

20       And look, Judge, if you didn't find my

21   argument with regard to 815-2 persuasive, you're not

22   going to find this one persuasive, but I'm going to

23   make a record anyhow.  Document 815-9, at page 2686

24   says that, "Ben Clark and first name unknown Rascon

25   conspired to kill Leroy Torrez."  Well, that's

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                                    1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1200

1   interesting right off the bat, because I've already

2   talked about why there is reasons, strong reasons, to

3   believe that the Rascons are implicated in the

4   Freddie Sanchez homicide.  We know that Ben Clark is

5   implicated in the homicide, because he pled guilty.

6          And so now we see these two guys --

7          THE COURT:  Where are you looking on this

8   page?

9          MR. CHAMBERS:  It's 815-9, the paragraph

10   that begins, "The individuals -- "The individuals who

11   agreed to take care of, kill Torrez included the

12   source, and then first name unknown Clark, a/k/a

13   'Cyclone.'"  That's Ben Clark, because we know his

14   moniker is "Cyclone" -- "Smurf, Choo Choo, and first

15   name unknown Rascon."  So we already know that Ben

16   Clark.  Well, he's charged with involvement in Count

17   3, he admits involvement in Count 3.  We have reasons

18   to believe the Rascons are involved in Count 3.  And

19   now we have the same two guys conspiring in another

20   homicide, another hit.

21          But furthermore -- and I'm going to have to

22   get pretty deep in the weeds here to make this

23   point -- but at 815-17, at page 14615 -- Exhibit

24   815-17, page 14645 (sic), it talks about there being

25   a relationship between Torrez -- Leroy Torrez -- and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1201

```
 1   Freddie Sanchez.

 2           And then at 817-11, page 2747, it says that

 3   Ben Clark stabbed Torrez.  So now we have a motive

 4   for Rascon to stab and kill Freddie Sanchez.  And the

 5   reason is because he was already part of a conspiracy

 6   to kill Sanchez' buddy, Torrez.  And this same motive

 7   would carry over to Torrez' cohort.  And we know he

 8   is a cohort from 815-17, page 14615, Freddie Sanchez.

 9           That's it.

10           THE COURT:  Just so I make sure I

11   understand it, you're on page 14615.  What is it that

12   you think links --

13           MR. CHAMBERS:  815-17, page 14615, shows

14   that Fred Sanchez and Leroy Torrez are part of the

15   same subset, clique, the Angel Munoz group, where on

16   that page it says that Jefe Angel Munoz; captains,

17   Esquibel, Leroy Torrez, Julian Romero, Manuel

18   Maldonado; and then sergeant at arms, Fred Dog.  So

19   they are part of the same group.

20           THE COURT:  When you say "group," what is

21   it on this page that -- what is a group?

22           MR. CHAMBERS:  Well, if you look at the

23   entire document, you can see it's broken down -- if

24   you go to page 1 it says, "The following is a summary

25   of the highest ranking members of the SNM under each
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1202

```
 1   jefe."  And then it goes through and it names jefes.
 2   Joe Barros; then it lists who is under Joe Barros.
 3   Then on page 3, Phillip Cordova, and it lists who is
 4   under Phillip Cordova.  And then on page 4, Angel
 5   Munoz, and it lists who is under Angel Munoz.  And
 6   both Leroy Torrez and Fred Sanchez are in that
 7   subset.
 8             THE COURT:  Okay.  Then what was the other
 9   page?
10             MR. CHAMBERS:  Well, it's 817-11, which is
11   just a CI saying that Ben Clark actually carried
12   through with the conspiracy that's discussed at
13   815-9, and did, in fact, stab Mr. Torrez.
14             THE COURT:  And from that, you conclude
15   what?
16             MR. CHAMBERS:  Well, it simply shows that
17   there was clearly bad blood between Clark, Rascon,
18   and Torrez, because they conspired to kill him.
19             And we know from the documents I've
20   referenced that Sanchez and Torrez are linked.  And
21   we know from the discovery I've discussed previously
22   that the same two guys, Clark and Rascon, are right
23   in the middle of Count 3.  So it just all fits.  And
24   it provides a motive for Rascon to stab Sanchez,
25   apart from what's alleged in the indictment.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1203

```
 1                  THE COURT:  All right.  Mr. Beck?
 2                  MR. BECK:  Well, I think we're getting
 3      pretty far away from Roviaro.  So if we look at the
 4      Roviaro analysis, again, we look at whether these CIs
 5      are providing tips and whether the -- whether they
 6      are shown to be participants or material witnesses to
 7      alleged criminal transactions.
 8                  And so I understand that -- I understand
 9      now Mr. Chambers' theory that the Rascons were
10      involved here, but that's not alleged.  And the CI in
11      Document 9 is saying that someone killed Torrez, I
12      think Cyclone killed Torrez; that they were friends
13      beforehand, if I'm following that right, doesn't
14      affect the Roviaro analysis.
15                  So this is where I think we get far afield
16      just taking that bumper sticker phrase, "relevant and
17      helpful," and then working our way from that phrase
18      to say, "Turn everything over."  What Roviaro stands
19      for is that the detailed inquiry of what the CI
20      provides, what role the CI played, and then looking
21      at the crime charged, the defense, the significance
22      of the informer's testimony, and other relevant
23      factors, those inquiries play into whether the CI --
24      whether a defendant has made a showing that the CI's
25      identity would be relevant and helpful.  It's,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1204

1    therefore, required to be disclosed under Roviaro.

2           So I get that there is a good theory here.

3    But I think if Roviaro supported the disclosure of

4    anybody, it would be the Rascon brothers.  But we

5    know who they are, and I can represent they're not

6    these CIs.  Well, I think we don't know who is in 17,

7    so I can't say that.  But it's not the CI whose

8    statement is in Exhibit 9.

9           THE COURT:  Mr. Chambers, the second

10   document that you referred to, 14645 --

11           MR. CHAMBERS:  14615.

12           THE COURT:  Yeah, that one was the first

13   one, and I see it.  But what was second one, the

14   number that's down where it talks -- what you say is

15   it talks about there being a relationship between

16   Leroy Torrez and Freddie Sanchez, and you gave 14645.

17           MR. CHAMBERS:  It's 815-17, page 14615.

18           THE COURT:  Yeah, I got that one, but I

19   thought you also had another page.

20           MR. CHAMBERS:  No, sir.

21           THE COURT:  Well, I think you're right.  I

22   think, if I'm not going to bite on the first Rascon

23   argument, I'm not going to --

24           MR. CHAMBERS:  Before you rule, can I take

25   one last shot?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Certainly.
 2              MR. CHAMBERS:  First of all, the Government
 3    very deftly -- and they do this all the time -- they
 4    very deftly change the analysis from Brady to
 5    Roviaro.  We're making a Brady request here.  This is
 6    Brady material.
 7              Secondly, the Government says it's not
 8    alleged that the Rascons were involved.  Yeah, we
 9    know.  It's amazing that the Rascons are not
10    involved.  But the Rascons' involvement could be a
11    defense.  It could be that Rascon killed Freddie
12    Sanchez, and not Javier Alonso.  That's a plausible
13    defense.  That's a plausible defense based upon the
14    Government's own witness.
15              THE COURT:  But how would this witness, if
16    I ordered its disclosure, help you make that point?
17              MR. CHAMBERS:  It's a link in the chain,
18    Your Honor.  It shows -- you've got to really
19    consider it all together.  And every piece is a
20    building block.  And so what I have here is I have
21    proof of an alliance between Torrez and Sanchez,
22    proof of bad blood running from Clark and Rascon to
23    that Torrez-Sanchez alliance, and percipient
24    witnesses, charged defendants in Count 3, who say
25    Clark and Rascon were involved.  It's all the same
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1206

```
 1    people.  It would be -- you know, Mr. Orquiz and I

 2    represent Javier Alonso.  So if there was bad blood

 3    between Orquiz and Chambers, and Jewkes and Jacks,

 4    the fact that that bad blood exists is relevant for

 5    all four people involved.  It's relevant to show that

 6    Rascon had a motive to do the very thing that Ruben

 7    Hernandez says he did.

 8              THE COURT:  Well, I'll take a look at it,

 9    but I'm not inclined to order the disclosure on the

10    basis of that link.

11              What else do you have, Mr. Chambers?

12              MR. CHAMBERS:  I told you that the

13    Government's theory of the Count 3.  But there is a

14    back story to the Government's theory -- and you see

15    this in a lot of reports -- is that there was a

16    belief, according to the Government, that Fred

17    Sanchez was an informant; that he cooperated with law

18    enforcement.  And there is a lot of different stories

19    about that.  And I'm not going to go into those

20    today, because I've filed a separate motion, 872, for

21    disclosure of CIs.  The Government hasn't had a

22    chance to respond yet, and we'll address that in due

23    course.  But there are different stories about

24    Sanchez' alleged cooperation and what he cooperated

25    on.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1207

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 195

```
 1              But here's what we know.  Numerous

 2    witnesses say, you know, it is common knowledge that

 3    Freddie Sanchez has cooperated, and that's why he was

 4    hit.  But there is no paperwork confirming that Fred

 5    Sanchez was a cooperator, that he ever assisted law

 6    enforcement in any investigation or case.  So, with

 7    that background, with the Government's theory that

 8    Sanchez was a cooperator, and with also the

 9    understanding -- the dearth of evidence on that, that

10    there is no actual paperwork confirming the

11    Government's theory -- I direct the Court's attention

12    to 815-19, which Ms. Jacks addressed.  It's a long

13    document.  If you go to the last page, it talks about

14    Frederick Sanchez, III, a/k/a Freddie, a/k/a Fred

15    Dog, an SNM member.

16              MR. BECK:  Your Honor, I don't want to cut

17    off Mr. Chambers, but as we've said to Ms. Jacks, we

18    still don't know who the source is, or sources, from

19    this report.  So I'm happy to include Mr. Chambers'

20    client in that order that we will go back and see if

21    we can find out, and let him know if we do, and we

22    can bring this back in front of the Court.

23              And sorry, I didn't want to cut you off.  I

24    just wanted to make everyone aware of that.

25              THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1              MR. CHAMBERS:  Then I'm not sure what else
 2    we can do.
 3              THE COURT:  Do you want me to include you
 4    in that order as well?
 5              MR. CHAMBERS:  Yeah.
 6              THE COURT:  All right.  We will.  I guess
 7    your point, you were about to tell me was, it says
 8    right there, "He will not talk."
 9              MR. CHAMBERS:  He's not a snitch; won't
10    talk.  It defeats -- or not defeats -- undermines the
11    Government's theory.
12              THE COURT:  Right.  Okay.
13              MR. CHAMBERS:  One more.
14              THE COURT:  I understand the point.
15              MR. CHAMBERS:  We talked about Ben Clark.
16    And Ben Clark -- his involvement in Count 3; he's
17    pled guilty.  Ben Clark, once upon a time, said that
18    he didn't have to give an order to kill Fred Sanchez,
19    because --
20              THE COURT:  Is this in the materials?
21              MR. CHAMBERS:  It's not.  This is just from
22    discovery.  It says:  Everybody knew what the rules
23    were.  And since Sanchez had informed against the SNM
24    or SNM members, he was to be killed.  It was a known
25    rule what happens to a rat.  That's the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1209

```
 1   Government's -- that's one of the Government's main
 2   witnesses.
 3              But that understanding, that view of how
 4   SNM operates --
 5              THE COURT:  Who were you quoting there?
 6              MR. CHAMBERS:  Ben Clark.
 7              THE COURT:  Oh, okay.
 8              MR. CHAMBERS:  Well, to be perfectly
 9   accurate, I was quoting FBI Agent Dougherty, who was
10   recounting his interview with Ben Clark.  And what I
11   read is not in quotation marks.
12              So what was I saying?
13              THE COURT:  Well, you were commenting about
14   the fact that everybody knew that it was a rule that
15   you killed rats.
16              MR. CHAMBERS:  But if you looked at 815-8,
17   which Ms. Jacks discussed --
18              THE COURT:  Do you have a particular page?
19              MR. CHAMBERS:  At 2640, he says that he
20   actually recruited Fred Dog; he's the one that
21   brought Freddie Sanchez into the SNM.  He says
22   that -- it's a paragraph that begins with a
23   redaction, "recalled a time" -- that paragraph.  And
24   it says, So --
25              MR. BECK:  I think that's 2670, page 8.  Or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1210

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 198 of 211

```
 1    sorry, no, page 3 in the exhibit.
 2              THE COURT:  2670.
 3              MR. CHAMBERS:  2670, where this guy just
 4    says "recruited" --
 5              THE COURT:  Which paragraph?
 6              MR. CHAMBERS:  It starts with a redaction
 7    "recalled" in the middle of the page.
 8              THE COURT:  I see it.
 9              MR. CHAMBERS:  He says, "so" blank -- and I
10    assume the blank is the confidential source --
11    "recruited individuals including Fred Dog, known to
12    the interviewing agents as Freddie Sanchez, now
13    deceased.
14              So this guy, an admitted member of the SNM,
15    not only an admitted member, but a recruiter,
16    somebody who knows the rules.  But then he says --
17    this member of the SNM, who recruited Fred Sanchez,
18    on page 2674, the last full paragraph says, He
19    believes he's owed an explanation regarding the
20    murder of SNM member Freddie Sanchez, because it was
21    the source who brought Sanchez into the SNM more than
22    20 years ago.
23              That fact undermines Ben Clark's testimony.
24    If everybody knows that rats get hit, then this guy
25    doesn't need an explanation.  He knows why it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1211

```
 1   happened.

 2           That's it.

 3           THE COURT:  All right.  Mr. Beck?

 4           MR. BECK:  I think this falls into the

 5   category of those statements that are helpful --

 6           THE COURT:  And you're bringing this

 7   witness to trial, this source?

 8           MR. BECK:  Yes.  So I think this falls into

 9   the category of statements that are helpful, but the

10   identity of who provided the statements are not.

11           And I go back and say that I think that's

12   probably right what Ben Clark said; that the way the

13   SNM operates is, once you provide a statement to help

14   law enforcement, you are green lit, or targeted for a

15   hit, with a couple of conditions precedent to that.

16   But like the blood-in-blood-out sort of thing, there

17   are exceptions to that rule, and so you're not

18   necessarily hit immediately, you're not necessarily

19   hit within a certain timeframe.  You can sort of --

20   they can sort of kick the can down the road and wait

21   to hit someone.

22           So I think, if he's going to use that

23   statement to impeach Mr. Clark, assuming that he

24   testifies -- which we intend to have him testify --

25   and, as I said, that statement is helpful to him.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1212

```
 1   But the identity of who provided that statement
 2   probably is not.  And, again, whether it's helpful
 3   and relevant -- I would say that, if we're looking at
 4   the significance of whatever information is helpful
 5   and relevant, there is very little significance
 6   because the United States' position is that, as I
 7   said, it is:  Once you've provided information to law
 8   enforcement and certain conditions precedent are met,
 9   you're green lit.  But when you're hit, there are
10   exceptions to that immediately, depending on what the
11   green lit person does.  So even the statement which
12   is helpful, it's not very significant.
13            THE COURT:  All right.  Thank you, Mr.
14   Beck.
15            If you had the source here, what more would
16   you want to get out than what you've already got here
17   in this paragraph?
18            MR. CHAMBERS:  I don't know, Judge.  I'd
19   have to talk to him.  I would -- I'd just note that
20   you have already ordered this informant disclosed.
21   And anticipating the Court's wise ruling that it's
22   forthcoming on all defendants getting the disclosure
23   once one gets it, I'll expect to see it then.
24            THE COURT:  Okay.  Well, I understand your
25   position.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1213

1          Independently, just doing Roviaro analysis,

2     I would not be inclined to order the disclosure, but

3     I'll take a look at the primary argument that you're

4     making that I've disclosed it once, so I ought to

5     disclose it again.

6          MR. CHAMBERS:  I didn't do very good, so

7     I'll give up the podium.

8          THE COURT:  All right.  Anything else,

9     Mr. Chambers?

10          MR. CHAMBERS:  No, thank you.

11          THE COURT:  All right.  Thank you, Mr.

12     Chambers.

13          MR. BECK:  And, Your Honor, just to make

14     clear for the record, while we are still talking

15     about that, I think, if we go back to Defendant

16     Sanchez' brief, at page 19, the Court was inclined,

17     and in fact, did order us to disclose that, based on

18     this CI's testimony about assaults on correctional

19     officers, as a leader, which relate to the overt acts

20     in 1613, not a charge in 4268.

21          MR. CHAMBERS:  I don't think that

22     distinction is relevant.  Because the point of the

23     privilege is protection.  So regardless of why the

24     privilege is blown up, once it's blown up, it's gone.

25          THE COURT:  Well, I have to think about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202

1    that.  I mean --

2           MR. CHAMBERS:  I think Roviaro says that.

3           THE COURT:  Well, you may be right.  I'll

4    have to look at it.  But if I'm ordering these

5    disclosures, and we're trying to protect individual

6    confidential informants, it's not intuitive to me

7    that if I'm trying to minimize the number of people

8    that know and taking precautions, that because I do

9    that with one person, all of a sudden everybody in

10   the world gets it.  That's not intuitive to me.  That

11   may be what the law is.  But it's not intuitive to me

12   that that should be the result.

13          MR. CHAMBERS:  Well, I was going to leave,

14   but now you got me back here, so -- I, first of all,

15   echo Ms. Jacks' argument that the Government's

16   showing that any of these sources are in danger is

17   woefully inadequate.

18          But I would add to that echo with this:

19   The Government -- to deny me access to Brady

20   material, the Government should be required to show

21   that disclosure to my client poses a risk.  Not

22   disclosure to some group of individuals, but to me,

23   to Javier Alonso.  And they have not even come close

24   to making that showing.  I mean, I don't want to pick

25   on anybody in particular --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  How would they do that?  I
 2   mean, how would you do that in advance?  That they've
 3   got to go kill a witness and then come in and say,
 4   Well, caught Mr. Alonso killing a witness, so he's
 5   likely to do it again, Judge.  This is what I was
 6   discussing with Ms. Jacks a minute ago, and Mr. Beck.
 7   And if people don't feel comfortable with me doing
 8   this, then I guess we'll have to figure out a way for
 9   the Government to lay its evidentiary basis for it.
10              But I have been under the impression that
11   the Government has evidence.  I don't know if I've
12   seen it in 302s, or whether it's just in the
13   briefing, that they have evidence that people in this
14   room have put at risk other people that are
15   witnesses.  If that's not true, then I can be
16   disavowed of that.  But if that is true, is anybody
17   going to step forward to refute that?
18              MR. CHAMBERS:  Well, I haven't seen that.
19   The Government today, for instance, made a comment --
20   and I wrote it down, but I probably can't find the
21   piece of paper -- to the effect of:  We know -- I'm
22   paraphrasing --
23              THE COURT:  The reason I say that is it
24   seemed to me that I should probably take as a given
25   in my analysis that people in this room will put at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1216



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    risk witnesses in the case.
 2              MR. CHAMBERS:  Well, I don't think you
 3    should take that as a given without some evidentiary
 4    showing.  And you certainly shouldn't take it as a
 5    given as to Javier Alonso.
 6              THE COURT:  Well, if the Government puts on
 7    that showing -- and I think they've told me
 8    repeatedly they have it -- is anybody in this room
 9    going to refute it?
10              MR. CHAMBERS:  I think so.  I think we'll
11    try, yeah.
12              MR. ESQUIBEL:  I am, Your Honor.
13              THE COURT:  Well, I'm not sure that you get
14    to come in and cross-examine.  I think this may be
15    one of these ex parte things under Roviaro.  So you
16    may get to do your show, and they get to do your
17    show.  Is that really what you want me to be doing?
18    Do you want me to be listening to that?
19              MR. CHAMBERS:  Your Honor, I think --
20              THE COURT:  I can spend my time doing a lot
21    of things.  But I mean, do you really want the judge
22    hearing this case, having the Government come in and
23    make their presentation?
24              MR. CHAMBERS:  Judge, I think that you
25    should view with suspicion the Government's claims
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1217

 1   that they're overwhelmingly concerned with the safety

 2   of the confidential informants.  Some of the things

 3   that have been discussed already by Ms. Jacks about

 4   the Government revealing confidential informants,

 5   when it's in their interests to do so, belie their

 6   stated concern for safety.

 7           THE COURT:  Well, look, they're picking and

 8   choosing.  I've known that for six months now.  I

 9   mean, there are some people, they do not care about

10   their safety.  There are other people, they care very

11   greatly about their safety.  So it doesn't seem to me

12   that's inconsistent; that they get to sit over there

13   and not be so concerned about some people and be

14   concerned about others.  So I think if all the

15   defendants are going to say is, Look, they're not

16   concerned about some people's safety, we've known

17   that for six months, but I'm not sure that undercuts

18   the fact that they are taking the position, and they

19   say they have evidence that there are some people

20   that they -- that people in this room will do harm to

21   those witnesses.  To me, those are two different

22   things.

23           MR. CHAMBERS:  Well, I just -- my belief,

24   based upon review of all the CI motions and the

25   Government's responses, and everything that's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1218

```
 1   happened, is that the claim that the Government is
 2   concerned with safety is more motivated by strategic
 3   asserts.
 4           THE COURT:  Well, that may be true.  But
 5   they do have some people that they obviously are
 6   fighting very hard to keep the disclosures from being
 7   made.
 8           MR. CHAMBERS:  For strategic reasons, not
 9   safety reasons.
10           THE COURT:  Well, they want to protect
11   them.
12           All right.  Anything else?
13           MR. CHAMBERS:  No.  Thank you.
14           THE COURT:  All right.  Thank you,
15   Mr. Chambers.
16           I'm going to hear from Mr. Beck, because I
17   think Mr. Beck had a pad, and maybe he's going to
18   give us some detailed information about the basis for
19   his allegations that some of these CIs would be at
20   risk if they were disclosed; am I correct?
21           MR. BECK:  Well, it depends on your
22   definition of detail.  I doubt I'm going to live up
23   to your expectations.
24           What I was going to say is that Counts 13
25   through 15 in the VICAR indictment are violent crimes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1219

```
 1    that were perpetrated against people believed to be
 2    cooperating and government witnesses.  So it is in
 3    this case, it is charged in this case that government
 4    witnesses or people believed to be providing
 5    information, the government witnesses, are at serious
 6    risk.  And that's been charged.
 7            I would also say that -- I think we just
 8    heard from Mr. Chambers that one of the things he
 9    wants to, I think -- I guess assert, or --
10            THE COURT:  I think what he's asserting is
11    you're not concerned about anybody's safety.  You're
12    just not disclosing these people because you're
13    trying to muck up their preparation for the defense
14    of the case.
15            MR. BECK:  Right.
16            THE COURT:  I think that's the charge he's
17    making.
18            MR. BECK:  Which --
19            THE COURT:  And I guess the question I
20    have, if the defendants are going to make that, do I
21    need to set up some mechanism for you to come in and
22    tell me why I should be concerned about the safety of
23    the CIs that you're fighting not to disclose?
24            MR. BECK:  I'm saying Your Honor can, if
25    that's what -- if that's what they're asking.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    not only if that's what they're asking, if that's

2    what Roviaro entitles them to.  And again, this gets

3    back to what I was just saying is, we're getting far

4    afield of Roviaro.

5            My understanding is that these motions were

6    submitted.  And I haven't read Mr. Chambers' joinder.

7    I don't know exactly what he's arguing.  I don't know

8    if he made arguments or, like some others, just

9    joined in the motion.  What I'm saying is I expected

10   this to be an argument about whether Roviaro entitles

11   a defendant to a CI's identity.  And what I'm saying

12   is, is I don't think that showing has been made with

13   regard to whichever CI we were just talking about --

14   I think we're on Exhibit 9 right now.

15           THE COURT:  I think it was number 8.

16           MR. BECK:  Number 8.  I don't think that

17   showing was made by Mr. Chambers in relation to his

18   client.  And when we get down the road to the

19   significance of the testimony is a factor, and other

20   relevant factors, if the Court -- if the defendants

21   assert and the Court wants more information on that,

22   then, as I said, I think probably an in camera

23   hearing, at that point, is what the Tenth Circuit

24   directs.

25           THE COURT:  All right.  Which case do I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1221

 1   look at to say that that review should be done in
 2   camera?
 3          MR. BECK:  That would be United States
 4   against Morales, 908 F.2d 565; talking about the in
 5   camera showing is pages 568, and going forward.
 6          Also, the Fifth Circuit case that they rely
 7   on in there is United States against Fischer, which
 8   is 531 F.2d 783.  And that's another circuit that's
 9   concluded once you meet certain hurdles under
10   Roviaro, if there is a question about these factors,
11   there is a question about the significance of the
12   testimony, whether it's inculpatory or exculpatory,
13   whether there are other factors that weigh into it,
14   an in camera hearing is appropriate, and the Tenth
15   Circuit directs that that should be done.
16          THE COURT:  All right.  Well, let's work
17   with Ms. Wild to set that up.
18          And then, I guess, as far as the defendants
19   are concerned, just as I did with Ms. Harbour, y'all
20   need to prepare me for making sure that I can provide
21   the adversarial side that your presence takes away.
22   And so you'll need to draft out questions, topics you
23   want me to cover, to try to make sure I'm laying the
24   foundation that you think I need to make a finding
25   that these CIs would be at risk.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1222

1        MR. BECK:  And, Your Honor, so as I said,

2    there are certain conditions before we get there,

3    which I don't think were made with regard to Exhibit

4    8.  But also, I wanted to point out that --

5        THE COURT:  I think it's been floating in

6    the room on everything that we've been talking about.

7    So the assumption has been, as I mentioned earlier in

8    the day -- nobody challenged it particularly at that

9    point, they're challenging it now -- that I thought I

10   could take as a given that the Government had

11   evidence that witnesses were at risk from people in

12   this room.  If they're challenging that, then I guess

13   I have to lay some foundation before I take that as a

14   given in my Roviaro analysis.

15       MR. BECK:  And I don't want to speak out --

16   I understand what the Court is saying.  If the Court

17   wants that information, then we'll submit it.  I

18   think that's what the Court is asking for.

19       THE COURT:  All right.

20       MR. BENJAMIN:  Your Honor, may we be heard

21   briefly on --

22       THE COURT:  Not yet.  Not yet.

23       Mr. Spencer, I think you have been waiting

24   to take the podium.  If you want to take it --

25       MR. SPENCER:  I'll take it, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  -- if you want to give it away,
 2    you can.  You've been trying to get there, so, Mr.
 3    Spencer.
 4              MR. SPENCER:  Thank you, Your Honor.
 5              On behalf of Mr. Varela, Your Honor, we
 6    joined in Ms. Jacks' motion.  I'm going to refer the
 7    Court to Exhibit No. 15; it's, I think, Bates number
 8    12963.
 9              THE COURT:  Okay.  This is the one that
10    Ms. Jacks gave me a clean copy of?  There was one
11    that looked like it got Bates stamped over at the
12    top, and CMF knocked off the critical information.
13              MR. SPENCER:  It's Exhibit No. 15, Your
14    Honor.
15              MS. JACKS:  Your Honor, that is the one
16    that I gave you a clean copy of.
17              THE COURT:  All right.  Mr. Spencer.
18              MR. SPENCER:  Thank you, Your Honor.
19              Your Honor, if we look at the second
20    paragraph, it says, "CI," and it's blocked off who
21    the CI is -- "states that he had seen Inmate Molina
22    on the floor -- I'm trying to find out the identity
23    of the confidential informant starts that, "He had
24    seen Inmate Molina on the floor, and felt that it was
25    not right, and knew who had brought the paperwork
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    down.  It was Lupe Urquizo.  It is all on camera.

2    Check it on Friday, and you will see when they

3    brought Lupe his paperwork."

4           Mr. Varela has been accused of bringing the

5    executive order down with his paperwork, as bringing

6    the alleged execution document, or whatever you want

7    to call it, Judge, on Molina.

8           THE COURT:  Was Mr. Varela one of the --

9           MR. SPENCER:  Three.

10          THE COURT:  -- three that came from

11   Northern or PNM Santa Fe down to the Southern?

12          MR. SPENCER:  Yes, sir, he is.

13          Now, we have a confidential informant that

14   says that he saw that the paperwork was brought down

15   by Lupe Urquizo, he's the one who had it.  And if you

16   go to -- and, of course, we don't know if this

17   confidential --

18          THE COURT:  Was Lupe one of the ones that

19   came down, or was he already down there?

20          MR. SPENCER:  Who, Your Honor?

21          THE COURT:  Lupe Urquizo.  Lupe.

22          MR. SPENCER:  I'm not sure, Your Honor.

23          THE COURT:  Okay.  Who were the three?

24          MR. SPENCER:  Yeah, Lupe Urquizo is one of

25   the ones that came down, that's correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1225

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213

```
 1                THE COURT:  Okay.  All right.
 2                MR. SPENCER:  Now, is this confidential
 3     source -- was he a roommate?  I don't know.  Was he a
 4     cellmate?  Was he next door?  Was he present when
 5     they brought the paperwork in?  Did he see the
 6     paperwork?  Did he recognize the handwriting?  Whose
 7     handwriting was it?
 8                If we go to the second page, Your Honor, of
 9     this report, he goes on right about in the middle of
10     it, in the middle of that first paragraph at the top
11     of the page.  He says, the report says, "I went on to
12     explain to the CI that the hit on Molina was done
13     very poorly.  And the CI then tells me that the
14     paperwork was from Pup."
15                THE COURT:  Mr. Spencer, help me find this.
16                MR. SPENCER:  Yes, Your Honor.  It's eight
17     lines from the bottom of the first paragraph -- not
18     the first full paragraph, the first paragraph at the
19     top of the second page.
20                THE COURT:  Okay.  I see it.  Okay.
21                MR. SPENCER:  "I went on to explain to the
22     CI that the hit on Molina was done very poorly.  And
23     the CI then tells me that the paperwork was from
24     Pup."
25                Now, how does he know this?  Was this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1226

1     through conversations with who?  It's information

2     that we need to get.

3            If you go down to the bottom of that second

4     page, Your Honor --

5            THE COURT:  Let me ask you this:  When he

6     uses the word "I," is this a CI talking about another

7     CI?

8            MR. SPENCER:  I believe it's the

9     investigator.

10            THE COURT:  Oh, okay.

11            MR. SPENCER:  That's what I believe.  If we

12     go down to the bottom of that second page, Your

13     Honor, the last paragraph, "CI tells me that while

14     they're locked down Lupe Urquizo asked the CI if he

15     should get rid of the paperwork on Molina before they

16     start the shakedown."  So, obviously, now he has seen

17     it, he's had some conversations with it.  Urquizo has

18     the paperwork, and he's asking:  Do I get rid of it

19     before the shakedown?  At least that's what I'm

20     assuming.  That's what we need to investigate.

21            And he goes on, "CI said that he told,

22     yeah, because he, CI, he had to or it would look bad.

23     So he got rid of it."  Did this witness, CI, witness

24     him destroy evidence?  Did he see him pass on the

25     evidence somewhere else?  We don't know the answers

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1227

```
 1    to that.  "Said that if you look at the camera, you
 2    will see Urquizo got his property, and then give a
 3    yellow envelope to Carlos Herrera."  Interestingly
 4    enough, it's the one that's identified in one of the
 5    factual bases of one of the defendants that pled,
 6    Your Honor, who talks about Carlos Herrera having the
 7    paperwork.  But now we know where it came from, based
 8    on this information, Urquizo.
 9              This is information that also is
10    corroborated in discovery that was produced by the
11    Government, Your Honor, in respect to Jerry Armenta.
12    He says in his statement that he wasn't sure if
13    Urquizo or Mr. Varela had the paperwork.  But in a
14    recorded conversation he said, I believe it was
15    Urquizo.  Now it's corroborated by this CI.  So this
16    is absolutely Brady.  This is exculpatory.  Because
17    the only issue with Mr. Varela is that he was the
18    alleged courier of this order that had been in place
19    for over a year, from what we understand.  And now
20    I've got a CI saying he never had it, he never
21    touched it.
22              THE COURT:  So the Government's theory
23    against Mr. Varela is that he was the one that
24    actually was carrying the paper?
25              MR. SPENCER:  Correct.  And now I have a CI
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1228

```
 1    that I have an obligation to know who it is, and to
 2    certainly explore, because he's given a statement.
 3            That's one thing I don't know, Your Honor.
 4    I need to explore with the CI, did he give a recorded
 5    statement?  Did he give a written statement?  Was he
 6    promised anything in exchange for what he's telling
 7    the Government's agents?  There is a lot of
 8    information that I need to get from this confidential
 9    informant.  But this goes to Mr. Varela's absolute
10    exculpatory position.  And it is Brady.  And we think
11    that the Government needs to disclose to us who the
12    confidential informant is.
13            THE COURT:  All right.  If you had the
14    identity, tell me what you would ask him that you
15    don't know from this statement?
16            MR. SPENCER:  Some of the things that I've
17    mentioned.  I don't want to be repetitive, Your
18    Honor, but I --
19            THE COURT:  That you think might be helpful
20    to you?
21            MR. SPENCER:  Sure.  Did he see the actual
22    order?  Did he recognize the handwriting on the
23    order?  Was there anything specifically written on
24    the order?
25            THE COURT:  Tell me how that would help
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1229

1    Mr. Varela.

2              MR. SPENCER:  Well, it certainly would go

3    and contradict the Government's position that

4    Mr. Varela is the one that had it.  Based on what I

5    understand, he saw Mr. -- he saw when that paperwork

6    was given to this confidential -- the confidential

7    informant witnessed when the paperwork was given to

8    Urquizo.  And I'm certainly entitled to explore all

9    of those issues.

10             Now, I don't know if the Government plans

11   to call this confidential informant.

12             THE COURT:  Are you going to call him, Mr.

13   Beck?

14             MR. BECK:  No, Your Honor.

15             MR. SPENCER:  That's why we need to know,

16   because we definitely want to call him.  They're not

17   going to call him because it's not going to help them

18   on their case against Varela.  But if I don't have

19   this information, how can I bench warrant him here?

20   How can I bring him before the Court to martial my

21   defense for Mr. Varela that he witnessed somebody

22   else with this order?  So I'm not surprised that the

23   Government doesn't want to call him.  But absolutely,

24   I need to know the identification of this

25   confidential source so that I may call him, so that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1230

 1    may protect his constitutional rights to a fair

 2    trial, and to the alternative perpetrator theory that

 3    may exist; that it was somebody else who brought it.

 4              THE COURT:  All right.  Thank you, Mr.

 5    Spencer.

 6              Mr. Beck?

 7              MR. BECK:  I agree with Mr. Spencer.  I

 8    think that's a showing that Roviaro entitles his

 9    client to the identity of this informant.  I think,

10    based on this informant's statement about who brought

11    down the paperwork, I think it probably also entitles

12    Mr. Baca, Mr. Sanchez, and Mr. Rodriguez to that

13    statement, because they are all involved in the

14    paperwork.  It's significant testimony to them, so I

15    agree.

16              THE COURT:  All right.  I'll so order then.

17              Anything else, Mr. Spencer?

18              MR. SPENCER:  No, that's all I have at this

19    time.

20              THE COURT:  All right.  Thank you, Mr.

21    Spencer.

22              Let's see, I think I saw Ms. Johnson stand

23    up.  So let me go to Ms. Johnson.

24              MS. JOHNSON:  Actually, Mr. Benjamin.

25              THE COURT:  All right.  We'll go to Mr.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1231

219

1   Benjamin then.

2            MR. BENJAMIN:  It's both of us.  We wanted

3   to address the Court on something.

4            THE COURT:  Y'all can come up together if

5   you want to.

6            MR. BENJAMIN:  Your Honor -- and this,

7   essentially, was something that was raised by the

8   Government.  They have been alleging, specifically

9   against Mr. Joe Gallegos, a multitude of acts.  I had

10  a conversation with them about one of those specific

11  acts.  There is items in the discovery that

12  reference, in one particular example, Document 4472;

13  it's a document that references an audio recording.

14  It's not -- this hasn't been filed by way of a after

15  motion, Your Honor.  But my concern is that there are

16  statements being made and representations being made

17  that then, when we try and tie those acts in to these

18  bad acts that were committed during the pendency of

19  this criminal case, that's not possible, Your Honor,

20  because there isn't that link that is occurring.

21            For instance, Mr. Beck represented to the

22  Court that under Counts 13, 14, and 15, that this was

23  an act that was committed against a witness in this

24  case.  That witness has now been dismissed out of

25  this case.  Jose Gomez was not a witness in this case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1232

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 220 of 233

```
 1    at the time that anything else happened, to my
 2    understanding, and based upon everything I've seen in
 3    this discovery.  We dispute the way that the
 4    Government has outlined those acts.  But, nonetheless
 5    to, I think, proffer the fact that that act occurred
 6    because of something that happened in this court, is,
 7    one, an act that's about 10 months old, and I haven't
 8    seen anything substantively justifying that.  There
 9    has been a search warrant of my client's cell in
10    September, attempting to back up other bad acts, that
11    I have yet to see any substantive evidence on of
12    these acts.  And so the representations are being
13    made, but they're ringing hollow on the other end of
14    the person that is trying to listen to these and
15    defend this issue.
16            And so it concerns me that the Court would
17    take at face value statements along this line.  And
18    so --
19            THE COURT:  Well -- and I'm backing off --
20            MR. BENJAMIN:  Right.
21            THE COURT:  -- I mean, I mentioned it
22    earlier, I said, you know, I thought I could take it
23    as a given; nobody said anything then.  And now
24    everybody is telling me I can't do that, so I'll --
25    but you'll need to probably help me -- when y'all are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1233

1   putting together your lists of questions and topics

2   for me to cover, you'll probably need to, you know,

3   include that, and tell me what I need to explore on

4   that.

5             MR. BENJAMIN:  And I understand the Court

6   is speaking about doing that with individual CIs.  My

7   concern is in a larger --

8             THE COURT:  Well, what I thought you were

9   talking about was this risk to witnesses issue in

10  Roviaro, and that sort of hearing I need to have.

11            MR. BENJAMIN:  And, Your Honor, I think

12  that holds true there.  My specific issue, and the

13  reason I bounced up, was because of the fact that

14  there was a blanket statement made that these acts

15  are occurring to witnesses during the pendency of

16  this case, which I don't think can be

17  substantiated --

18            THE COURT:  All right.

19            MR. BENJAMIN:  -- and that is my concern.

20            THE COURT:  All right.  Well, help me out.

21  You'll need to draft out questions and the topics

22  that I need to cover to make sure that I'm doing your

23  job when you're not there.

24            MR. BENJAMIN:  Thank you, Your Honor.

25            THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1234

```
 1   Benjamin.

 2           MS. JOHNSON:  Your Honor?

 3           THE COURT:  Let me get Ms. Johnson back

 4   there, and then I'll --

 5           MS. JOHNSON:  Your Honor, just to follow up

 6   on what Mr. Benjamin just told the Court.  Mr. Beck

 7   represented to this Court that on Counts 14 and 15,

 8   it involved an individual who was cooperating with

 9   the Government.  That is flatly incorrect.  When that

10   individual was allegedly beaten, he was not

11   cooperating with the Government.  He was a named

12   alleged victim in a March 2015 case that was being

13   prosecuted in state court.  Nothing I have found in

14   the discovery indicates that that individual who was

15   beaten, and charged in counts -- or whose beating was

16   charged in Counts 14 and 15 -- was cooperating with

17   the Government.  I'm troubled by the fact that the

18   Government is making representations throughout this

19   case, Your Honor, that are not exactly accurate.

20           So I just wanted to make sure the Court is

21   aware that that isn't accurate.

22           THE COURT:  All right.  Let me hear from

23   Ms. Fox-Young.  She was trying to stand up.  Then

24   I'll come back to the well here.  Ms. Fox-Young.

25           MS. FOX-YOUNG:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1235

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223

```
 1                 On behalf of Defendant Perez, we filed
 2      Document 831 joining Ms. Jacks', Mr. Sanchez' motion
 3      to compel.
 4                 THE COURT:  Okay.
 5                 MS. FOX-YOUNG:  Document 831 has one
 6      exhibit.
 7                 THE COURT:  831 is yours; right?
 8                 MS. FOX-YOUNG:  That's correct.
 9                 THE COURT:  Let me see if I can find it
10      real quick.  I found it.
11                 MS. FOX-YOUNG:  As I think the Court is
12      aware -- I mean, I'll just briefly give the Court
13      context for Mr. Perez' involvement in this case, or
14      alleged involvement.  He's charged in Counts 6 and 7
15      on the conspiracy to murder and to murder -- and
16      murder of Javier Molina, in furtherance of SNM
17      racketeering activities, in 4268.  The allegations
18      are generally that:  Despite being unable to ambulate
19      without his walker, he, at some point, provided
20      pieces of his walker for use in making shanks to
21      carry out the murder.
22                 And we specifically joined Mr. Sanchez'
23      motion for disclosure of the CI identified in Exhibit
24      5, which is Document 815-5.  And that begins on Bates
25      DeLeon 1526.  And we think that this confidential
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1236

1    informant is material, helpful, and relevant, for a

2    number of reasons, in addition to those posed by

3    Ms. Jacks earlier, related to the outrageous

4    Government conduct and Officer Holguin's involvement

5    in possibly transferring paperwork, and the questions

6    there.

7            But, Your Honor, if you look at Bates 1562

8    through 1567, which is the entirety of Exhibit 5,

9    there is a lot of detail, a great deal of detail

10   regarding SNM, and also regarding -- in the second

11   half of the document -- the Molina murder.  And a

12   number of individuals are named in this document:

13   Javier Molina, Mauricio Varela, Jerry Montoya, Tim

14   Martinez, Jerry Armenta, Carlos Herrera, Jesse

15   Sedillo -- I could go on.  Nowhere in either of these

16   two documents in Exhibit 5 is Mr. Perez named.

17           And this confidential informant gave this

18   debrief relatively recently.  The report is dated

19   April 22, 2015:  In-depth detailed knowledge about

20   the incidents, and no mention whatsoever of

21   Mr. Perez.

22           And so we posit, Your Honor, that this

23   confidential informant has information that is

24   clearly exculpatory to Mr. Perez, as he describes

25   these incidents, and nowhere describes Mr. Perez'

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   involvement.
 2            THE COURT:  But the only place that they
 3   really talk about the Molina murder is at the top of
 4   page -- what I'll call 1563.  And it's pretty
 5   general; it's not a lot of details.  Am I right?
 6            MS. FOX-YOUNG:  Yes, Judge.  There, and if
 7   you move to 1566, there is more detail beginning,
 8   really, in the third paragraph.  The murder of Javier
 9   Molina -- it goes on -- says "was called by Baca,"
10   and then names a number of alleged participants and
11   their various roles.
12            THE COURT:  Okay.
13            MS. FOX-YOUNG:  And so that would be, in
14   addition to what's already been stated, our first
15   basis.
16            Secondly, the issue -- and this comes up in
17   the first part of the document, and you've already
18   looked at it, Judge -- but the issue of paperwork
19   being transferred down from the north by whomever it
20   was allegedly transferred.  The Court considered the
21   timing issue on this matter in an earlier hearing,
22   and I think it was represented -- I don't know the
23   exact times -- but it was within about 18 hours of
24   the murder, these individuals are alleged -- did
25   arrive at Southern, and allegedly brought paperwork
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1238

 1   with them.  We don't see how there is any way that

 2   Mr. Perez could have produced pieces of his walker,

 3   and fashioned -- or have them fashioned -- or

 4   somebody else had them fashioned to make shanks for

 5   the murder in this period of time.  And, rather, we

 6   provide to the Court Exhibit 1 -- which has already

 7   been referenced today -- but Exhibit 1 is a letter

 8   that is apparently written by Jerry Armenta, which

 9   the Government has provided.  This is Document 831-1.

10   And Exhibit 1 details --

11            THE COURT:  Is this the Exhibit 1 to your

12   831?

13            MS. FOX-YOUNG:  Yes, Judge.  It's a

14   handwritten letter.

15            THE COURT:  Right.

16            MS. FOX-YOUNG:  Exhibit 1.

17            THE COURT:  The copy that I have is -- the

18   right side is cut off.  There may be another one in

19   the file.  But it's hard for me to get the sense of

20   the letter because it's shifted so far to the right.

21            MS. FOX-YOUNG:  Your Honor, I'm going to

22   give Ms. Wild my copy.

23            THE COURT:  All right.  Do you need her to

24   make a copy?

25            MR. BECK:  Your Honor, if it's filed -- can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1239

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227

```
 1   we put it up on the -- I can't find whatever pleading
 2   she's referring to.
 3            THE COURT:  Also, the letter that's
 4   attached is -- it cuts off pretty early.  So, I don't
 5   know if --
 6            MR. BECK:  Maybe if we put it up on the
 7   Elmo, so that I can see and you can see.
 8            THE COURT:  Okay.
 9            MS. FOX-YOUNG:  So, Your Honor, I'm showing
10   the lower half of the letter.  This letter, without
11   going into every detail that's in it, basically
12   describes a scenario Mr. Armenta describes --
13            THE COURT:  What is that shadow on the
14   Elmo?  I keep seeing it here all today.  What is
15   that?  I've never seen that before until today.
16            THE CLERK:  It's just the way the light
17   shows on it.
18            MS. FOX-YOUNG:  I'll move the area that I'm
19   going to talk about above that obnoxious shadow.
20            And so, looking at the second to the last
21   paragraph of this letter, Mr. Armenta describes a
22   version of events, in which, basically, he says he
23   killed Jerry Montoya as a result of a personal beef.
24   He says that Jerry Montoya did not attack him.  He
25   says that the incident in the room was between
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1240

```
 1    himself and the deceased.  And in the previous
 2    paragraph he says that he didn't actually know this
 3    was going to happen; this was essentially something
 4    that happened in the heat of the moment, totally
 5    contradicting the Government's theory that this
 6    murder was a result of a planned, orchestrated hit,
 7    where paperwork came down, orders from above, as the
 8    Court has heard described.
 9            And so our argument, Your Honor, is that
10    this CI, who has information about paperwork coming
11    down from specific people the night before the
12    murder, you know, tells a story that's, we think,
13    inconsistent with the Government's theory that
14    Mr. Perez would have even had time to produce pieces
15    of his walker to have fashioned into shanks to carry
16    this out.
17            And there is other evidence that is
18    consistent with this defense theory.  We would like
19    the opportunity to explore with this CI, for one
20    thing, why he never named Mr. Perez as having been
21    involved, given that he names a lot of other people,
22    and apparently has a lot of detail about the SNM, and
23    is intimately involved.  We would term him a
24    participant.  And also, as to how the timing worked.
25    If the paperwork came down that close in time, how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1241

```
 1   this could have worked, given -- and I'm just
 2   presenting the Court with one of the defense theories
 3   that this would corroborate; that this wasn't as a
 4   result of paperwork coming down.  It couldn't be
 5   done.  It was a personal beef.  And there is evidence
 6   to that effect.  So that's the second grounds.
 7            There is also --
 8            THE COURT:  Remind me, what was the first
 9   ground?
10            MS. FOX-YOUNG:  Oh, that Mr. Perez -- it's
11   totally exculpatory to Mr. Perez, because it goes
12   into great detail about the murder.
13            THE COURT:  It just left his name out.
14            MS. FOX-YOUNG:  Yeah, he's not included.
15   He is nowhere fingered in these documents as having
16   been involved, or in this report.
17            On page 1567 of this exhibit, in the third
18   full paragraph there is a reference to Billy Cordova
19   and Robert Sanchez being tasked with doing a hit on
20   Dwayne Santistevan by Anthony Baca.  And this is the
21   third grounds that we posit for why this CI is
22   helpful and relevant under Roviaro and Brady for us.
23   And we also think that there is impeachment material
24   here.  The recording -- or the transcript of the
25   recording containing alleged statements from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1242

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 243

```
 1   Mr. Perez, that the Government referenced earlier,

 2   has been provided to us as a recording between Billy

 3   Cordova and Mr. Perez.  And we think it's highly

 4   significant that Mr. Cordova, who is mentioned here

 5   as having been tasked --

 6           MS. ARMIJO:  Your Honor, may we approach

 7   with just counsel alone?

 8           (The following proceedings were held at the

 9   bench.)

10           MS. ARMIJO:  Your Honor, we would like to

11   remind counsel that the name Billy Cordova was

12   provided to counsel under a strict order for them

13   just to provide it -- and she has basically just

14   outed Mr. Cordova twice now in open court.  So I'd

15   ask --

16           THE COURT:  What was -- when it was

17   provided to Mr. Perez, what were the conditions of

18   it?

19           MS. ARMIJO:  That it not be disclosed to

20   anybody else.

21           THE COURT:  But see, it's right here in

22   this.  So what is it that's not to be disclosed?

23           MR. BECK:  That Billy Cordova is the CI.

24           MS. ARMIJO:  Were the recordings --

25           MR. BECK:  We disclosed.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1243

```
 1              THE COURT:  What did you just say about
 2   Billy Cordova?
 3              MS. FOX-YOUNG:  Your Honor, I'm only
 4   referencing what's been provided in discovery.  But
 5   recordings -- I'm very careful -- here is what the
 6   Government disclosed to us that is subject to the
 7   protective order.  It's not the report you're looking
 8   at, and I don't have the Bates number, but asks the
 9   Court that you consider on our motion to compel that
10   says Rudy Perez gave his walker to make shanks, the
11   Government did identify for us the informer; did not
12   report it's Billy Cordova.
13              THE COURT:  That's who the CI was?
14              MS. FOX-YOUNG:  I'm talking to what's been
15   produced to everybody in discovery.
16              THE COURT:  This right here.
17              MS. FOX-YOUNG:  And the recordings, the
18   transcripts of which Government has not produced in
19   discovery, but attached to their motion.  We did file
20   an addendum to this joinder, which I'm not going to
21   go into in open court.  I'm not going to say
22   anything.
23              THE COURT:  A note right here from
24   Ms. Wild, "caution joinder or ex parte."
25              MS. FOX-YOUNG:  The joinder is not, but we
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   have a separate document that is -- I'm not going to
 2   say anything about what the Government told us is
 3   Billy Cordova.  I'm talking about what's in
 4   discovery.
 5          THE COURT:  With that representation, are
 6   you comfortable?  Seems like she knows where she's
 7   drawing the line.
 8          MR. BECK:  Yes, Your Honor.  So I think
 9   what happened is they asked us for -- after the last
10   hearing on this, they asked us for the recording that
11   we said recorded Mr. Perez admitting he provided his
12   walker.  And we provided that.  And I'm guessing,
13   from Ms. Fox-Young's representation, when we replied
14   to them, we said, Here is your client's -- and I
15   don't know because I didn't -- I'm guessing what
16   happened, here's your client's recording with Billy
17   Cordova.  And so our concern is that we just talked
18   about that report, with the CHS on there, who no one
19   made a showing they were entitled to the identity of
20   that CHS.  And I understand --
21          THE COURT:  Let me ask this:  Can you go
22   ahead and make your point about Billy Cordova right
23   here?  And that way, maybe it will make the
24   Government less skittish?
25          MS. FOX-YOUNG:  Certainly, Your Honor.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    just want to make it clear that I'm only referring to
 2    what's been produced in discovery, not what's only
 3    been directly to us.  And I'm not going to belabor
 4    the point.  The point about Billy Cordova, he was not
 5    charged in Count 9, or the alleged hit on
 6    Santistevan.  And we believe he's cooperating based
 7    on the recordings that have been produced in
 8    discovery to all counsel.  He's acting as a
 9    Government agent.  He's mentioned here in this
10    report.  He wasn't charged.  We think that's pretty
11    critical information that goes to his cooperation.
12            It's not directly impeachment, but this --
13    we want to explore that with this CI as to what his
14    involvement, what Cordova's involvement was in
15    Santistevan, because he's not charged in Count 9.
16            The other thing is, and since I can talk ex
17    parte, our appendix -- which I don't have in front of
18    me, and I don't know if the Court has it -- I can
19    find the Bates --
20            THE COURT:  This is what the letter was
21    attached to the ex parte one?
22            MS. FOX-YOUNG:  Your Honor, I can grab it.
23    It will take me five seconds.
24            THE COURT:  K'Aun, it's 827?
25            THE CLERK:  No, it's 831.  There was an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    additional one that came in after those two.
 2              THE COURT:  Which tab is it behind, do you
 3    know?
 4              THE CLERK:  Should be behind --
 5              MR. BECK:  I think Ms. Fox-Young has it.
 6              MS. FOX-YOUNG:  832, Judge.  And document
 7    832 goes into more detail.  We're very careful to
 8    separate out our arguments.  Document 832 basically
 9    says that based upon this CI's information about
10    Billy Cordova's being tasked with executing the
11    murder of Mr. Santistevan, apparently the CI was --
12    according to Mr. Cordova -- apparently, the CI was
13    standing next to Baca when he gave the order.  And we
14    know --
15              MS. ARMIJO:  There are other counsel coming
16    up here, so --
17              MS. FOX-YOUNG:  We know that Billy Cordova
18    is the individual named in the report, the Government
19    disclosed to us as the subject of the protective
20    order.  And we also know that Billy Cordova said
21    different things, apparently to generate that report
22    than he did in his conversation with Mr. Perez.  And
23    Mr. Perez said different things.  So it's our
24    position that we should be able to talk to this
25    confidential informant about what Billy Cordova has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1247

```
 1    said, what his involvement was with Santistevan, what

 2    he may be getting in the way of a benefit for his

 3    cooperation.  That's essentially the point; that, I

 4    have no intent to go into that in the courtroom.

 5              THE COURT:  Well, do you have a quick

 6    response, or is this the kind of thing -- I guess the

 7    thing I'm most concerned is that -- not so much that

 8    Perez is left out of documents, because it seems to

 9    me that that may not -- these are kind of general

10    documents, the discussions.  But I am concerned about

11    the fact that these talk about the paperwork that was

12    coming down.  And this gets tricky to keep some of

13    this information from Mr. Perez, given the timing on

14    the shanks, how much time he had.  If this paperwork

15    story pans out, and the jury is sitting is there

16    believing that there is a paperwork, then I think it

17    kicks in Mr. Perez' arguments about he didn't have

18    time to put it together.

19              If, on the other hand, this order has been

20    around for two years or more, then he could have made

21    a shank at any time, not that weekend, or whenever

22    the day was.

23              MR. BECK:  So my concern about addressing

24    that question you just asked is, I think that's

25    probably appropriately addressed in front of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1248

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 236 of 249

1   everyone, as opposed to just us.

2           My quick answer to the Santistevan comment

3   is that this is why Roviaro looks for whether someone

4   was a participant in the alleged criminal activity

5   and was -- played a crucial role.  So I think that

6   statement says that that CI, who is going to testify,

7   heard an order that was never carried out.  So there

8   is --

9           THE COURT:  I think we've probably just run

10  out of time on this one.  So I may have to pick this

11  up at the beginning of the next one.  But I guess I

12  think the most -- I'll be really interested to hear

13  is whether I can keep this CI from Perez, what he

14  said about the paperwork.

15          MR. BECK:  Understood.

16          MS. FOX-YOUNG:  Your Honor, may I just make

17  one point on that?

18          THE COURT:  Very quickly.

19          MS. FOX-YOUNG:  Very small.  The Government

20  has conceded that a number of other individuals,

21  Sanchez --

22          THE COURT:  Why don't you bring it up next

23  time.  I think I've got to get control back over this

24  courtroom.

25          MR. CASTELLANO:  I have one question

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1249

```
 1    unrelated, Your Honor.  The document that defense
 2    counsel put on the Elmo didn't have a Bates stamp
 3    number on it.  I'm wondering if that's from their
 4    discovery or other discovery?
 5              THE COURT:  It's attached to their joinder
 6    here.  If my memory is correct, you represented that
 7    it was from -- the Government had produced it; right?
 8              MS. FOX-YOUNG:  And I need to correct that,
 9    Judge.  The Government hasn't produced it.  It is
10    ours.  We did file it attached to our motion, the
11    same as the Government didn't print out the
12    transcript to us of Mr. Perez.  But it will be
13    produced.
14              THE COURT:  I'll need to bring it to an
15    end.
16              MR. CASTELLANO:  We'd actually requested
17    discovery from the State proceedings.  They're months
18    overdue.  And we're going to make another request for
19    that today.
20              (The following proceedings were held in
21    open court.)
22              THE COURT:  All right.  I didn't get done
23    up here.  Some of this stuff we probably need to
24    convert to being everybody in public.  So I'm not
25    going to resolve that one today.  That one will just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1250

```
 1   have to be the first on the list when we get back
 2   together.
 3            So I have some things I want to ask here in
 4   public on that one, and maybe some things I need to
 5   hear at the bench.  But we'll just have to sort that
 6   out another day.  So there is not a ruling on that
 7   one.
 8            We've got to bring it to an end.  I've got
 9   to give Ms. Bean a break.  I know there is a lot of
10   things -- nope, nope, nope -- got to bring it to an
11   end.  I cut people off up here, so I'm going to have
12   to cut everybody off.  We'll try to keep a memory and
13   I'll come back.
14            We have to bring DeLeon to the end of the
15   day, so I'm not going to see the DeLeon folks
16   tomorrow or the rest of the week.  So for the DeLeon
17   people, I have this question:  I've given as many
18   rulings as I possibly can to give guidance.  I'm
19   going to try to put some of this in writing.  Is
20   there anything that the DeLeon people want to tell me
21   today, the defense lawyers, that you would like for
22   me to write on sooner rather than later?
23            MR. ADAMS:  May I?
24            THE COURT:  Are you going to answer that
25   question?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                  MR. ADAMS:  It's related to that question.
 2       Very briefly.  There was talk earlier in an
 3       invitation to submit questions about an ex parte
 4       meeting related to DeLeon --
 5                  THE COURT:  I'll tell you what, that
 6       topic --
 7                  MR. ADAMS:  -- we want that tabled.
 8                  THE COURT:  -- you'll have to send me
 9       something, or something on that.
10                  MR. ADAMS:  Thank you.
11                  THE COURT:  All right.  I'm not hearing
12       anybody with a preference on that.
13                  These are the dates I'm supposed to propose
14       to get back together.  We can get back together on
15       2/27 and 28, finish up the CIs; 3/15, 3/16, or 5/4
16       and 5/5.  Grab the first one, February 27, 28?
17                  MS. JACKS:  I have commitments for that
18       time period.
19                  THE COURT:  How about 3/15, 3/16?  All
20       right.  Sounds like 3/15, 3/16, is it?
21                  MR. ADAMS:  I have hearings, and
22       Mr. Potolsky has hearings.
23                  THE COURT:  All right.  We've got two
24       counsel, so I probably am just going to stab a date.
25       Is 5/4, 5/5 better -- but that's a long ways away?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                            1-800-669-9492
                                               e-mail: info@litsupport.com

DNM 1252

```
 1                 MR. JEWKES:  What's the last date?

 2                 THE COURT:  5/4, 5/5.  Do y'all want to

 3      take that?  That's pretty far down the road.

 4                 MR. LOWRY:  Your Honor, could we keep both

 5      of them on the calendar, because I think you're going

 6      to see more substantive motions.

 7                 (A discussion was held off the record.)

 8                 THE COURT:  All right.  So this is what

 9      we'll do:  I'll just give you all these dates, put

10      them on your calendar.  If we don't need them, I

11      can't do them, or somebody can't do them, and there

12      is not enough people here, we won't do them.

13      Otherwise:  2/27, 2/28; 3/15, 3/16; 5/4, 5/5.

14                 All right.  I appreciate your hard work,

15      presentations.

16                 See the Baca folks tomorrow.  Y'all have a

17      good evening.

18                 MR. CASTELLANO:  Your Honor, I did have the

19      one last request.

20                 THE COURT:  Take it up in the morning.

21                 (The Court stood in recess.)

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1253

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3     UNITED STATES OF AMERICA

 4     DISTRICT OF NEW MEXICO

 5

 6

 7          I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8     Official Court Reporter for the State of New Mexico,

 9     do hereby certify that the foregoing pages constitute

10     a true transcript of proceedings had before the said

11     Court, held in the District of New Mexico, in the

12     matter therein stated.

13          In testimony whereof, I have hereunto set my

14     hand on February 24, 2017.

15

16

17

18     _____
       Jennifer Bean, FAPR, RMR-RDR-CCR
19     Certified Realtime Reporter
       United States Court Reporter
20     NM CCR #94
       333 Lomas, Northwest
21     Albuquerque, New Mexico 87102
       Phone:  (505) 348-2283
22     Fax:    (505) 843-9492

23

24

25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF NEW MEXICO

 3    UNITED STATES OF AMERICA,

 4         Plaintiff,

 5         VS.                          CR. NO. 15-4268 JB
                                                15-4269 JB
 6    ANGEL DELEON, et al.,                     15-4275 JB
                                                16-1613 JB
 7         Defendants.

 8

 9         Transcript of Motion Proceedings before
      The Honorable James O. Browning, United States
10    District Judge, Albuquerque, Bernalillo County,
      New Mexico, commencing on May 9, 2017.
11

12    For the Government:  Ms. Maria Armijo; Mr. Randy
      Castellano; Mr. Matthew Beck
13
      For the Defendants:  Mr. Brock Benjamin; Mr. Richard
14    Sindel; Ms. Cori Harbour-Valdez; Mr. Patrick Burke;
      Mr. Jim Castle; Mr. Robert Cooper; Mr. Roberto
15    Albertorio; Mr. Orlando Mondragon; Mr. Noel Orquiz;
      Mr. Nathan Chambers; Mr. Ben Wilson; Mr. Santiago
16    Hernandez; Mr. Steven Potolsky; Mr. Richard Jewkes;
      Ms. Amy Jacks; Mr. Josh Spencer; Mr. B. J. Crow; Mr.
17    Marc Lowry; Ms. Theresa Duncan; Ms. Amy Sirignano;
      Mr. Christopher Adams; Mr. Michael Davis; Mr. Ryan
18    Villa; Ms. Justine Fox-Young; Mr. Donovan Roberts;
      Ms. Erlinda Johnson; Ms. Angela Arellanes; Mr. Samuel
19    Winder; Mr. Wayne Baker; Ms. Callie Dixon; Mr. Don
      Kochersberger; Ms. Susan Burgess-Farrell; Mr. Diego
20    Esquibel; Mr. Marc Grano; Mr. Ahmad Assed; Mr.
      Gregory Acton; Ms. Marcia Morrissey
21

22    For the Defendants (Via telephone):  Ms. Carey
      Bhalla
23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
1              THE COURT:  Good morning everyone.  I
2   appreciate everyone making themselves available to me
3   this morning.
4              All right.  For the DeLeon defendants,
5   welcome.  This is the first time you've been in this
6   courtroom.  So we will probably try the cases in
7   here.  So it's good to be at numbers that we can
8   begin to fit in here.  And as y'all know, you're not
9   in black boxes today.  So I hope that's appreciated.
10  And I think it's partly -- you can thank the marshals
11  for that.  They feel like you've been pretty good.
12  And I appreciate that, and they do, too.  And I hope
13  that will make it more comfortable for you over the
14  next three days.  So let's keep working together,
15  okay?
16             All right.  Let me call the case today, and
17  I'm going to call all four cases together, and that
18  way, the counsel only need to enter their appearances
19  once.  So I'll start with United States of America
20  versus Angel DeLeon, Criminal Matter No. 15-4268 JB;
21  United States of America versus Mauricio Varela,
22  Criminal Matter No. 15-4269 JB; United States of
23  America versus Christopher Garcia, Criminal Matter
24  No. 15-4275 JB; and United States of America versus
25  Anthony Ray Baca, Criminal Matter No. 16-1613 JB.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1256

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3257

```
 1              So let's start with the Government.  Do you
 2    wish to enter appearances?
 3              MS. ARMIJO:  Good morning, Your Honor.
 4    Maria Armijo, Randy Castellano, and Matthew Beck on
 5    behalf of the United States.
 6              THE COURT:  Ms. Armijo, Mr. Castellano, Mr.
 7    Beck, good morning to you.
 8              And let's start -- get my list here.  All
 9    right.  Let's start with Defendant Joe Lawrence
10    Gallegos.
11              MR. BENJAMIN:  Good morning, Your Honor.
12    Brock Benjamin and Mr. Richard Sindel on behalf of
13    Mr. Gallegos.
14              THE COURT:  Mr. Benjamin, Mr. Sindel, Mr.
15    Gallegos, good morning to you.
16              THE DEFENDANT:  Good morning.
17              THE COURT:  And for Defendant Edward Troup?
18              MS. HARBOUR-VALDEZ:  Good morning, Your
19    Honor.  Cori Harbour-Valdez and Patrick Burke on
20    behalf of Edward Troup.
21              THE COURT:  All right.  Ms. Harbour-Valdez,
22    Mr. Burke, and Mr. Troup, good morning to you.
23              THE DEFENDANT:  Good morning, sir.
24              THE COURT:  And for Defendant Billy Garcia?
25              MR. COOPER:  Good morning, Your Honor.  Bob
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1257

```
 1    Cooper and Jim Castle on behalf of Billy Garcia.

 2              THE COURT:  Mr. Cooper, Mr. Castle,

 3    Mr. Garcia, good morning to you.

 4              THE DEFENDANT:  Good morning.

 5              THE COURT:  And standing in for -- well,

 6    present for Defendant Allen Patterson?

 7              MR. ALBERTORIO:  Good morning, Your Honor.

 8    Roberto Albertorio, standing in for Mr. Lahann

 9    representing Mr. Patterson, who is present.

10              THE COURT:  Mr. Albertorio, good morning to

11    you.  Mr. Patterson, good morning to you.

12    Mr. Patterson, you understand that Mr. Albertorio is

13    standing in for Mr. Lahann?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Is that okay with you?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  Thank you, Mr. Patterson.

18              All right.  And for Defendant Christopher

19    Chavez?

20              MR. MONDRAGON:  Good morning, Your Honor.

21    Orlando Mondragon on behalf of Christopher Chavez.

22              THE COURT:  Mr. Mondragon, Mr. Chavez, good

23    morning to you.

24              And for Defendant Javier Alonso?

25              MR. ORQUIZ:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1258

```
1    Noel Orquiz and Nathan Chambers.  We're here on

2    behalf of Javier Alonso.

3              THE COURT:  All right.  Mr. Orquiz, Mr.

4    Chambers, and Mr. Alonso, good morning to you.

5              All right.  And for Defendant Arturo

6    Arnulfo Garcia?

7              MR. WILSON:  Good morning, Your Honor.  Ben

8    Wilson, standing in for Billy Blackburn, on behalf of

9    Mr. Garcia.

10             THE COURT:  All right.  Mr. Wilson, good

11   morning to you.  And Mr. Garcia, good morning to you.

12             THE DEFENDANT:  Good morning.

13             THE COURT:  And Mr. Garcia, you understand

14   that Mr. Wilson is standing in for Billy Blackburn

15   and Scott Davidson?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And that's all right with you?

18             THE DEFENDANT:  That's fine.

19             THE COURT:  All right.  Thank you,

20   Mr. Garcia, Mr. Wilson.

21             All right.  And Defendant Mario Rodriguez?

22             MR. HERNANDEZ:  Good morning, Your Honor.

23   Santiago Hernandez and Steve Potolsky on behalf of

24   Mr. Rodriguez.

25             THE COURT:  All right.  Mr. Hernandez,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1259

```
 1    Mr. Potolsky, good morning to you.  And Mr.

 2    Rodriguez, good morning to you.

 3              THE DEFENDANT:  Good morning, Your Honor.

 4              THE COURT:  All right.  And for Defendant

 5    Mauricio Varela?

 6              MR. SPENCER:  Good morning, Your Honor.

 7    Josh Spencer, standing in for Joe Spencer and Mary

 8    Stillinger, on behalf of Mauricio Varela.

 9              THE COURT:  All right.  Mr. Spencer, good

10    morning to you.  Mr. Varela, good morning to you.

11              THE DEFENDANT:  Good morning.

12              THE COURT:  And Mr. Varela, you understand

13    that Josh Spencer is standing in for Joe Spencer and

14    Margaret Strickland (sic).

15              THE DEFENDANT:  Yes.

16              THE COURT:  That's all right with you, Mr.

17    Varela?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  And for Defendant Daniel

20    Sanchez?

21              MR. JEWKES:  Good morning, Your Honor.  Amy

22    Jacks and Richard Jewkes representing Daniel Sanchez,

23    present before the Court and ready to proceed.

24              THE COURT:  All right.  Mr. Jewkes, good

25    morning to you.  Ms. Jacks, good morning to you.  Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1260

```
 1   Sanchez, good morning to you.
 2          All right.  And for Defendant Conrad
 3   Villegas?
 4          MR. CROW:  Good morning, Your Honor.  B.J.
 5   Crow for Mr. Villegas, who is present.
 6          THE COURT:  All right.  Mr. Crow, Mr.
 7   Villegas, good morning to you.
 8          MR. CROW:  Good morning, Your Honor.
 9          THE COURT:  And for Defendant Anthony Ray
10   Baca?
11          MR. LOWRY:  Good morning, Your Honor.  Marc
12   Lowry and Theresa Duncan on behalf of Anthony Ray
13   Baca, who is present in the courtroom, Your Honor.
14          THE COURT:  All right.  Mr. Lowry, Ms.
15   Duncan, and Mr. Baca, good morning to you.
16          THE DEFENDANT:  Good morning, Your Honor.
17          THE COURT:  And for Defendant Christopher
18   Garcia?
19          MS. SIRIGNANO:  Good morning, Your Honor.
20   Amy Sirignano and Christopher Adams on behalf of
21   Christopher Garcia.
22          THE COURT:  All right.  Ms. Sirignano,
23   Mr. Adams, Mr. Garcia, good morning to you.
24          And let's see, for Defendant Carlos
25   Herrera.  I may have a telephone -- there we are.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1261

```
 1              MR. DAVIS:  Good morning, Judge.  Michael
 2    Davis and Carey Bhalla on behalf of Mr. Herrera.  Ms.
 3    Bhalla is appearing telephonically.
 4              THE COURT:  All right.  Mr. Davis.  Ms.
 5    Bhalla, are you there?
 6              MS. BHALLA:  Sorry, Your Honor.  Yes, I'm
 7    here.
 8              THE COURT:  All right.  That mute button
 9    gets us from time to time.
10              MS. BHALLA:  Exactly.
11              THE COURT:  All right.  Good morning to
12    you.  Mr. Herrera, good morning to you.
13              All right.  And for Defendant Rudy Perez?
14              MR. VILLA:  Good morning, Your Honor.  Ryan
15    Villa and Justine Fox-Young on behalf of Mr. Perez,
16    who is present.
17              THE COURT:  All right.  Mr. Villa, Ms.
18    Fox-Young, Mr. Perez, good morning to you.
19              THE DEFENDANT:  Good morning.
20              THE COURT:  And for the Defendant Andrew
21    Gallegos?
22              MR. ROBERTS:  Good morning, Your Honor.
23    Donovan Roberts on behalf of Andrew Gallegos, who is
24    present.
25              THE COURT:  All right.  Mr. Roberts, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1262

```
 1    Gallegos, good morning to you.

 2              THE DEFENDANT:  Good morning.

 3              THE COURT:  For Defendant Santos Gonzalez?

 4              MS. JOHNSON:  Good morning, Your Honor.

 5    Erlinda Johnson on behalf of Santos Gonzalez, who is

 6    present before the Court.

 7              THE COURT:  All right.  Ms. Johnson, Mr.

 8    Gonzalez, good morning to you.

 9              And for Defendant Shauna Gutierrez?

10              MS. ARELLANES:  Angela Arellanes, appearing

11    for Shauna Gutierrez, who appears in person.

12              THE COURT:  All right.  Ms. Arellanes, Ms.

13    Gutierrez, good morning to you.

14              And for Defendant Brandy Rodriguez?

15              MR. WINDER:  Good morning, Your Honor.

16    Samuel Winder on behalf of Brandy Rodriguez, standing

17    in on behalf of Alfred Creecy.

18              THE COURT:  All right.  Mr. Winder, good

19    morning to you.  And Ms. Rodriguez, good morning to

20    you.  And Ms. Rodriguez you, understand Mr. Winder is

21    standing in for Alfred Creecy?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  And that's all right with you?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  Thank you, Ms. Rodriguez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1263

```
 1            Let me see.  All right.  And for Defendant
 2  David Calbert?
 3            MR. BAKER:  Good morning, Your Honor.
 4  Wayne Baker on behalf of David Calbert, who is
 5  present.
 6            THE COURT:  All right.  Mr. Baker, good
 7  morning to you.  Mr. Calbert, good morning to you.
 8            All right.  And for Defendant Sergio Loya
 9  Rodriguez?
10            MS. DIXON:  Good morning, Your Honor.
11  Callie Dixon for Mr. Rodriguez, standing in on behalf
12  of Donald Kochersberger.
13            THE COURT:  All right.  Ms. Dixon, good
14  morning to you.  Mr. Rodriguez, good morning to you.
15  Do you understand that Ms. Dixon is standing in for
16  Mr. Kochersberger?
17            THE DEFENDANT:  Yes.
18            THE COURT:  And that's all right with you
19  today?
20            THE DEFENDANT:  Yes.
21            THE COURT:  Thank you, Mr. Rodriguez.
22            And for Defendant Manuel Benito?
23            MS. BURGESS:  Your Honor, Susan
24  Burgess-Farrell, here on behalf of Barry Porter on
25  behalf of Mr. Benito.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1264

1265

```
 1              THE COURT:  All right.  Ms. Burgess, good
 2     morning to you.  And Mr. Benito, you understand that
 3     Ms. Burgess is standing in for Mr. Porter?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  And that's all right with you?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Okay.  Thank you, Mr. Benito.
 8              And for Defendant Vincent Garduno?
 9              MR. ESQUIBEL:  Good morning, Your Honor.
10     Diego Esquibel on behalf of Vincent Garduno, my
11     client, who is to my right.
12              THE COURT:  All right.  Mr. Esquibel, good
13     morning to you.  Mr. Garduno, good morning to you.
14              And for Defendant Mandel Lon Parker?
15              MR. GRANO:  Good morning, Your Honor.  Marc
16     Grano on behalf of Mandel Lon Parker.
17              THE COURT:  All right.  Mr. Grano, good
18     morning to you.  Mr. Parker, good morning to you.
19              THE DEFENDANT:  Good morning.
20              THE COURT:  And for Defendant Daniel
21     Archuleta?
22              MR. ASSED:  Good morning, Your Honor.
23     Ahmad Assed.  I represent Daniel Archuleta.
24              THE COURT:  All right.  Mr. Assed, Mr.
25     Archuleta, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1265

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1266

```
 1              And for Defendant Anthony Cordova?

 2              MR. ACTON:  Good morning, Your Honor.

 3   Gregory Acton and Marcia Morrissey on behalf of

 4   Anthony Cordova, who is present.

 5              THE COURT:  All right.  Mr. Cordova, Mr.

 6   Acton, Ms. Morrissey, good morning for you.

 7              Did I miss anybody?  Anybody here that I

 8   didn't call to recognize?  All right.

 9              Let me talk to you a little bit.  I'm going

10   to -- I have about a 51-page opinion started.  It's

11   going to be a little longer -- it's not going to be

12   one of my longest -- but it's in progress.  I didn't

13   get it out.

14              As y'all know, we were getting ready for

15   Mr. Garcia, Christopher Garcia's trial.  And so I've

16   been hearing motions in that and getting opinions out

17   in that.  I hope those are of some guidance to us in

18   this case as well.  But I wasn't able to turn quick

19   enough to get the opinion out on the motion to sever

20   that we heard in February.  But I'm going to give you

21   kind of the guts of that opinion.  I'm not going to

22   give all the background.  Y'all were here for it, and

23   that sort of thing.

24              But let me -- because I think it will set

25   the stage for much of what we're going to be doing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1266

 1   over the next three days -- I'm going to grant in

 2   part and deny in part the motion to sever.

 3          At the February 7, 2017 hearing, the United

 4   States agreed -- and I want to be careful, because I

 5   don't want to misstate the United States' position --

 6   but they agreed that a joint trial with 20 or more

 7   defendants would be practically untenable.  Mr.

 8   Castellano was the one that I was questioning at the

 9   time.  And although it's not a concession, the nature

10   of the United States' agreement was as follows:

11          The Court asked:  "Mr. Castellano, let me

12   ask you a few questions.  Would you agree that it's

13   going to be extremely difficult and probably not a

14   good idea to try a case with 20 defendants?

15          "MR. CASTELLANO:   It may be difficult,

16   Your Honor.  It's not unprecedented.  Even one of the

17   cases cited by the defense, I think, had 23

18   defendants who were not severed.  But I do agree that

19   there could be some logistical problems.

20          "THE COURT:   If we were in agreement on

21   that, that we probably shouldn't be barreling toward

22   a trial with 20 defendants, what's the solution from

23   your standpoint?"

24          Mr. Castellano, said:  "Well, the solution

25   is really how to cut up the pie."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              The Court then requested, if everybody will
 2   recall, the United States and the defendants present
 3   the Court with different options -- I think that was
 4   over the lunch hour -- regarding its determination
 5   whether -- their determination -- whether the
 6   severance of the superseding indictment in some
 7   manner would be proper.  The Court, if you'll recall,
 8   thought it might be a little early at that time to
 9   grant motions to sever.  There was some movement
10   within the case that I was trying to get some feel
11   for.  And so I initially adopted a "wait and see
12   approach" regarding severance.  But today, we're
13   faced with a July 10, 2017 trial date.  Come
14   tomorrow, we're going to be about two months out from
15   it, and 19 defendant who are still in the case.  So
16   I'm talking about the DeLeon case.  The Court also
17   notes that various other defendants have, to date,
18   moved against the superseding indictment alleging
19   misjoinder under Rule 8 of the Federal Rules of
20   Criminal Procedure, and the prejudicial joinder under
21   Rule 14 of the Federal Rules of Criminal Procedure.
22   And some defendants have also asserted their Speedy
23   Trial Act rights.
24              The superseding indictment charges a total
25   of 30 defendants with 15 counts of various assault,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1268

1    conspiracy to murder, murder, and firearms

2    violations, which the United States further alleges

3    are violent crimes in aid of the SNM racketeering

4    conspiracy.  The defendants named in the superseding

5    indictment are not all charged with the same counts

6    or substantive offenses, causing some defendants to

7    face a variable level of criminal exposure in

8    comparison to his or her co-defendants.  The

9    superseding indictment allegations also span a large

10   period of time, with the first alleged murders

11   occurring in 2001.  After considering the superseding

12   indictment, the motion to sever, as well as some of

13   the other defendants' motions related to severance of

14   the superseding indictment, the Court concludes that

15   a joint trial of all 19 defendants would be

16   inappropriate at this time.  The unique complexity of

17   this multi-count superseding indictment, as it now

18   stands, would in the words of Rule 8 render it

19   difficult, if not impossible, for the Court to

20   adequately charge a jury as to the applicable law

21   with respect to each defendant and for the jury to

22   apply the law intelligently in reaching verdicts on

23   the many charges involved.  Further, although Rule 8

24   of the Federal Rules of Criminal Procedure exists to,

25   quote, "enhance the efficiency of the judicial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1269

1   system," and although "joint trials conserve state

2   funds, diminish inconvenience to witnesses and public

3   authorities," the Court is convinced that a joint

4   trial for the superseding indictment's charges would

5   in fact not facilitate any of those principles.

6   Accordingly, acting under its authority under Rule 14

7   of the Federal Rules of Criminal Procedure, the Court

8   will sever the superseding indictment at this time in

9   accordance with the United States' proffer at the

10  February 7, 2017, hearing: Count 6 through 12 will be

11  severed from Counts 1 through 5, and 13 through 15 --

12  16.

13          The Court thus grants in part and denies in

14  part the motion to sever.  So the Court's going to

15  sever Counts 6 through 12 from Counts 1 through 5,

16  and 13 through 16.  So it's a grant in part and deny

17  in part of motion to sever.

18          Let's recall what the motion to sever

19  advanced.  It had three main arguments.  The first

20  that Counts 6 and 7 were improperly joined under Rule

21  8(a), as they do not share a sufficient nexus with

22  the other charges to permit joinder; two, that 2014

23  defendants were improperly joined under Rule 8(b), as

24  they are not alleged to have participated in the same

25  act or transaction or in the same series of acts or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1270

1    transactions that constitute crimes as the 21 other

2    defendants; and three, should the Court find joinder

3    proper under Rule 8(a) and Rule 8(b), severance is

4    still required under Rule 14 and the Fifth Amendment

5    because a joint trial of the 2014 defendants for

6    Counts 6 and 7 alongside the other 21 defendants and

7    the 13 other counts in the superseding indictment

8    will deprive the 2014 defendants of their right to a

9    fair trial.  That's on page 2 of the motion.

10          Rule 8 provides the standards for joinder

11   of offenses and defendants in criminal cases, (a),

12   "Joinder of Offenses.  The indictment or information

13   may charge a defendant in separate counts with two or

14   more offenses if the offenses charged -- whether

15   felonies or misdemeanors or both -- are of the same

16   or similar character, or are based on the same act or

17   transaction, or are connected with or constitute

18   parts of a common scheme or plan."

19          Then (b) deals with "Joinder of Defendants.

20   The indictment or information may charge two or more

21   defendants if they are alleged to have participated

22   in the same act or transaction, or in the same series

23   of acts or transactions, constituting an offense or

24   offenses.  The defendants may be charged in one or

25   more counts together or separately.  All defendants

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1271

```
 1   need not be charged in each count."

 2          Courts construe this rule "broadly" -- and

 3   I'm quoting from the Tenth Circuit -- "to allow

 4   liberal joinder to enhance the efficiency of the

 5   judicial system."  That's United States v. Bagby from

 6   the Tenth Circuit.  This approach recognizes that,

 7   quote, "joint trials 'conserve state funds, diminish

 8   inconvenience to witnesses and public authorities,

 9   and avoid delays in bringing those accused of crime

10   to trial.'"  That's United States v. Jones from the

11   Tenth Circuit, but it's quoting United States v. Lane

12   from the Supreme Court in 1986.  "Joint trials of

13   defendants who are indicted together are preferred

14   because 'they promote efficiency and serve the

15   interests of justice by avoiding the scandal and

16   inequity of inconsistent verdicts.'"  That's United

17   States v. Hall from the Tenth Circuit in 2007, but

18   it's quoting Zafiro from the United States Supreme

19   Court in 1993.

20          The Court can, first, summarily conclude

21   that there was not misjoinder of defendants or

22   offenses in this case.  Because the charged offenses

23   are alleged to be violent in aid of racketeering

24   activity, the joined offenses are, quote, "connected

25   with or constitute parts of a common scheme or plan"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1272

1    under Rule 8.  Similarly, Rule 8(b) authorizes

2    joinder of individual defendants in this case,

3    because the defendants, quote, "are alleged to have

4    participated in the same act or transactions

5    constituting an offense or offenses," namely violent

6    crimes in aid of a racketeering enterprise.  That's

7    from Rule 8(b).

8            And the Second Circuit in United States v.

9    Weisman said, if predicate acts could properly be

10   considered part of a "pattern of racketeering

11   activity," we see no reason why they could not

12   similarly constitute part of a "series of acts or

13   transactions constituting an offense" within the

14   meaning of Rule 8(b).  Indeed, a construction of 8(b)

15   that required a closer relationship between

16   transactions than that necessary to establish a

17   "pattern of racketeering activity" under RICO might

18   possibly prohibit joinder in circumstances where

19   Congress clearly envisioned a single trial.  The

20   Court, thus, cannot soundly conclude that the

21   superseding indictment, making VICAR allegations,

22   misjoined either the defendants or their charged

23   offenses.  And I draw comfort from that from the

24   Tenth Circuit case in 2009 of United States v.

25   Caldwell, which required a common thread amongst

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1273

 1   defendants and offenses to warrant joinder.

 2          Even if separate counts or defendants are

 3   appropriately joined under Rule 8, where that

 4   joinder, quote, "appears to prejudice a defendant or

 5   the government," a "court may order separate trials

 6   of counts, sever the defendants' trials, or provide

 7   any other relief that justice requires."  That is,

 8   Rule 14 provides a safety valve for the highly

 9   technical and inclusive analysis under Rule 8.   In

10   consideration of Rule 14 severance, the Court has in

11   the past used a three-part test that I outlined in

12   the Gould case -- Mr. Davis is familiar with that --

13   to provide -- to guide its analysis.  First, it must

14   determine whether the defenses presented are so

15   antagonistic that they are mutually exclusive.

16   Second, because mutually antagonistic defenses are

17   not prejudicial per se, a defendant must further show

18   a serious risk that a joint trial would compromise a

19   specific trial right or prevent the jury from making

20   a reliable judgment about guilt or innocence.  And,

21   third, if the first two factors are met, the trial

22   court exercises its discretion and weighs the

23   prejudice to a particular defendant caused by joinder

24   against the obviously important considerations of

25   economy and expedition in judicial administration.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1274

```
 1    Those are my standards, but I'm discussing United
 2    States v. Pursley from the Tenth Circuit, a 2007
 3    case, when I arrived at those.  In consideration of
 4    Rule 14, however, the Court has almost unlimited
 5    discretion to determine whether sufficient prejudice
 6    exists to warrant severance.  That's getting that
 7    from the Opper case from the Supreme Court in 1954.
 8    To that point -- and I'm relying largely on Chief
 9    Judge Weinstein's opinion here, where he analyzes the
10    Second Circuit.  He suggested that a defendant "must
11    meet the heavy burden of showing that a joint trial
12    would result in substantial prejudice amounting to a
13    miscarriage of justice."  Here's what he said in
14    United States v. Gallo:  He said, Among the factors
15    the court must consider in determining whether the
16    prejudice of a joint trial rises to the level of a
17    "miscarriage of justice" are the following:  The
18    number of defendants and the number of counts; the
19    complexity of the indictment; the estimated length of
20    the trial; disparities in the amount or type of proof
21    offered against the defendants; disparities in the
22    degree of involvement by defendants in the overall
23    scheme; possible conflict between various defense
24    theories or trial strategies; and especially,
25    prejudice from evidence admitted only against
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1275

 1  co-defendants but which is inadmissible or excluded

 2  as to a particular defendant."  He noted that "There

 3  are no precise tests applicable to one or a

 4  combination of these factors that can provide a

 5  foolproof resolution under Rule 14."  He then said

 6  the Court must determine whether the jury would be

 7  "reasonably able" to consider the evidence as to each

 8  defendant separately, independent of the evidence

 9  against his or her coconspirators.  Often relied upon

10  is the standard formulated by Judge Weinfeld in

11  United States v. Kahaner, a 1962 case that said the

12  ultimate question is whether, under all the

13  circumstances of the particular case, as a practical

14  matter, it is in the capacity of the jurors to follow

15  the court's admonitory instructions and accordingly

16  to collate and appraise the independent evidence

17  against each defendant solely upon that defendant's

18  own acts, statements, and conduct.  In sum, can the

19  jury keep separate the evidence that is relevant to

20  each defendant and render a fair and impartial

21  verdict as to him?

22          Here, the Court concludes that numerous

23  logistical and mechanical factors suggest that the

24  jury's compartmentalization of the evidence during a

25  joint trial of the 19 defendants might prove to be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1276

1   very difficult or unlikely, and the Court will

2   accordingly sever the superseding indictment.

3         The Court is convinced that a joint trial

4   of 19 defendants at this time could prevent the jury

5   from making a reliable judgment.  The Supreme Court

6   said in Zafiro, when many defendants are tried

7   together in a complex case and they have markedly

8   different degrees of culpability, the risk of

9   prejudice that a joint trial would compromise a

10   specific trial right of one of the defendants or

11   prevent the jury from making a reliable judgment

12   about guilt or innocence is heightened.

13         In United States v. Hack, the Tenth Circuit

14   said, "Neither a mere allegation that defendant would

15   have a better chance of acquittal in a separate

16   trial, nor a complaint of the 'spillover effect' from

17   the evidence that was overwhelming or more damaging

18   against the co-defendant than that against the moving

19   party is sufficient to warrant severance.'"  The risk

20   that a joint trial of defendants at this time will

21   prevent the jury from making a reliable judgment is

22   heightened here, where the superseding indictments

23   charges reflects the fact that the co-defendants have

24   "markedly different degrees of culpability," as the

25   Supreme Court said in Zafiro.  There is a possibility

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1277

1    that in a trial of this magnitude, the jury would

2    lump all the defendants together and potentially

3    think of them as a unit, rather than as individuals.

4    Severing the superseding indictment will lessen this

5    risk to an acceptable level by lessening the burden

6    on the jury to compartmentalize the evidence.  As

7    Judge Henderson said back in 1960, in a case that's

8    often quoted in this area, United States v. Moreton:

9    The complex involvement of the various defendants and

10   the multiplicity of charges contained in the

11   defendant would render it difficult, if not

12   impossible, for the court to adequately charge a jury

13   as to the applicable law with respect to each

14   defendant, and for the jury to apply that law

15   intelligently in reaching verdicts on the many

16   charges involved.

17        Compounding the potential ability of the

18   jury to make a relevant judgment for these defendants

19   is the impact that the superseding indictment's

20   complexity will have on judicial resources, given the

21   superseding indictment's inherent logistical and

22   mechanical issues as they relate to a 19-defendant

23   megatrial.  It is primarily for those mechanical and

24   logistical problems which the Court will sever the

25   superseding indictment into what it considers will be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1278

1   two smaller trials of less than 10 defendants each.

2   At present time, the Court has retained nearly all

3   the lawyers on the capable CJA panel, the complex

4   panel here in New Mexico, to work for defendants in

5   this case.  Judge Lamerth on the D.C. Circuit said in

6   2001, "First, there is hardship on the administrative

7   structure of the Court, the absence of any 'one

8   juror, one defendant, one defense attorney, one

9   prosecutor 'can thwart the progress of the trial.'"

10  If scheduling hearings for all of these defendants to

11  hear pretrial motions is an indicator, the logistical

12  burden of scheduling and facilitating one large trial

13  will be difficult.  The defendants, further, are

14  scattered at facilities across New Mexico, the fifth

15  largest state in the country, which burdens the

16  United States Marshals and other law enforcement

17  involved in prisoner transport.  The Court can

18  envision a scenario in a joint trial of all the

19  defendants where there would be routine delays or

20  postponements just as a result of the logistics.

21  Such delays and postponements, the Court assumes

22  would likely have a negative impact on the jury's

23  task in this case.  Further, the Court has agreed to

24  try this case in Las Cruces, New Mexico inside of a

25  courtroom which is smaller than the courtroom in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1279

 1   which the Court has held its hearings in Albuquerque.

 2   At the pretrial hearings, the Court has been so

 3   burdened by the amount of defendants that the

 4   defendants have been seated everywhere in the

 5   courtroom -- and this has included the jury box,

 6   counsel tables, gallery, and even the corner off to

 7   the right side of the Court's bench.  And the courts

 8   have looked at this and have discussed the capacity

 9   and physical limitations of a courthouse in regard to

10   a megatrial for multiple defendants.

11          Indeed, the defendants make an argument

12   which appeals to this problem in a supplemental

13   pleading, which suggests that, "although traditional

14   Rule 8 and Rule 14 considerations are certainly

15   always applicable, cases have been severed in which

16   there is no mention of prejudice to the prosecution

17   or the defendants."  The support for such severance,

18   according to the supplemental pleading, comes from

19   the Court's inherent authority to manage its caseload

20   and to sever in the interests of efficient

21   administration of justice and judicial economy.  Some

22   courts have held -- I'm not basing my opinion on

23   this -- but "Courts have held the inherent authority

24   to manage their docket by severing large groups of

25   defendants into more manageable groups" is basis

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1280

```
1    enough for the Court to do what it's doing today.

2            Generally, holding a joint trial would

3    certainly be more convenient for the Court.  It's the

4    genesis of Rule 8.  The potential prejudice, however,

5    outweighs this consideration on the facts of this

6    case as it is presently situated.  The Court,

7    accordingly, concludes that the interests underlying

8    its Rule 14 authority counsel severance of the

9    superseding indictment in some fashion given the

10   logistical and mechanical impossibilities of a

11   19-defendant megatrial.  The United States has

12   suggested two distinct trials, in which the

13   defendants are tried only once for the counts in

14   which they are named.  The Court has reviewed the

15   United States' suggestion, and agrees that their

16   proffered method of severance of the superseding

17   indictment will reduce the potential for prejudice

18   leading the court to conclude that severance of some

19   type under Rule 14 is appropriate.  The Court also

20   notes that in light of the superseding indictment,

21   Count 16 will fit neatly into its calculations

22   regarding severance of the superseding indictment.

23           The breakdown will be as follows: The Court

24   will sever Counts 1 through 5 and 13 through 16 of

25   the superseding indictment for one trial, and include
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1281

 1   in that grouping the second superseding indictment's
 2   additional defendant, Ms. Rodriguez, as well as Count
 3   16.   That severed trial would then involve the
 4   prosecution of 11 defendants, none of whom are named
 5   in Counts 6 through 12.   At the February 7, 2017,
 6   hearing, the United States indicated that it
 7   anticipated plea deals would lessen the number of
 8   defendants to as few as six defendants in that
 9   grouping.   In the Court's own estimation it
10   anticipates the number of defendants will fall from
11   11 to 9 by the time of trial.   By severing Counts 1
12   through 5 and 13 through 16 from Counts 6 through 12,
13   the Counts 6 through 12 grouping would involve the
14   prosecution of eight defendants, none of whom are
15   named in Counts 1 through 5 or 13 through 16.   At the
16   February 17, 2017, hearing the United States
17   indicated that it anticipated plea deals would lessen
18   the number of defendants to as few as seven
19   defendants in that grouping.   In the Court's own
20   estimation, it anticipates the number of defendants
21   will fall from eight to five by the time of trial.
22          The Court is thus left with two trial
23   groupings of what it anticipates will be less than 10
24   defendants each.   We talked about this -- I asked
25   Mr. Potolsky to give me a real cite for this.   I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1282

 1    didn't uncover in my research any hard and fast

 2    bright line rule.  But the Court's confident that

 3    severing the 19 defendants into two trials of less

 4    than 10 will yield the most effective and manageable

 5    path.  I did a survey which I'll put in the opinion

 6    of cases:  A 2016 case, United States v. Bundy,

 7    severing the indictment charging 17 defendants into

 8    three groups of less than 10 defendants, United

 9    States v. Gray, severing the indictment charging 17

10    defendants in two groups of less than 10 defendants,

11    United States versus Andrews from the Northern

12    District of Illinois considering a 19-defendant

13    indictment, and ordering severance into three groups

14    of less than 10 defendants, Gallo, which we've talked

15    about, considered a 16-defendant indictment severing

16    into five groups with less than 10 defendants.

17            There are some cases that clearly go the

18    other way.  As the United States has pointed out,

19    Cervone, a Second Circuit case, they found jury

20    instructions were sufficient to avoid prejudice in a

21    RICO case charging 18 defendants with numerous

22    racketeering offenses.  The Second Circuit in 1992,

23    in the DiNome case, found careful instructions by the

24    trial judge, an outline of the elements of the

25    offenses charged, numerous requests for feedback and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1283

 1    length of deliberations reinforced the Court's
 2    conclusion that the jury comprehended a RICO case
 3    involving nine defendants charged with numerous
 4    racketeering offenses.
 5            Therefore, having reviewed and considered
 6    all the relevant pleadings and briefing in connection
 7    with the motion to sever, the Court concludes, the
 8    most logical, efficient, and manageable way to try
 9    this case is to sever the charges in the superseding
10    indictment in this fashion.  By severing Counts 6
11    through 12 from 1 through 5 and 13 through 16, the
12    Court is able to significantly lessen the burden of
13    this complex case on the District of New Mexico, as
14    well as elevate the ability of the jury to make a
15    reliable judgment for defendants.  And in light of
16    the case's expanse and complexity.
17            All right.  Ms. Wild has worked with some
18    of the counsel to come up with a batting order for
19    the hearing today.  So I suggest we go to what I
20    understand to be motion number 1, which is the
21    defendants' motion to continue.  Let me make a few
22    comments, and then I'll hear what anybody would like
23    to say on this motion.  Given the opposition by some
24    of the defendants to it, now given the fact that I've
25    severed the case, now that at least some defendants

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1284

1  are going to get a little bit more time just from the

2  mechanics of that being severed, I guess I am not

3  inclined to grant this motion.

4           I can see, however, some circumstances

5  where, now that I have severed the case, perhaps you

6  can work out something with the defendants who are

7  insisting on their Speedy Trial Act rights, and

8  trying to get this thing to trial.  Perhaps you'd be

9  able to work something out with them.  If you can't,

10  though, I'm not inclined to keep this case off the

11  trial docket, but keep it moving.  And if the parties

12  can satisfy the people that are wanting to move this

13  thing forward, then you can reapproach me, and

14  perhaps I'll be receptive to moving the trial off.

15  But at the present time I'm not inclined to grant it,

16  as long as we've got some defendants who are, for

17  their own particular reasons, trying to keep the

18  trial on its present course.

19           All right.  Who is going to speak in

20  support of the defendants' motion to continue?  Do

21  y'all have a champion for this?  All right.  Mr.

22  Villa, are you the champion?

23           MR. VILLA:  Your Honor, it's Mr. Benjamin's

24  motion, but I believe if I could have just 30

25  seconds.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1285

```
 1              THE COURT:  Take all the time you need.

 2              MR. DAVIS:  Judge, Michael Davis.  One of

 3   the issues that we'd like to have some idea -- and

 4   obviously, it's the Government's prerogative of which

 5   of these two trials go first -- it would be helpful

 6   to have some idea in discussions about the

 7   continuances, which they will choose to go forward

 8   first on.  So I'm not sure what their posture is on

 9   that.  But I thought I'd bring that to the Court's

10   attention.

11              THE COURT:  Mr. Villa is over talking to

12   Mr. Beck.  Mr. Castellano, you've been the one that's

13   been most involved in the severance motion.  Do you

14   want to state your position on that or have thoughts?

15              MR. CASTELLANO:  Yes, Your Honor.

16              THE COURT:  Mr. Castellano.

17              MR. CASTELLANO:  I'm willing to make a

18   proposal at this time.  I know that the defense is

19   asking for a break to discuss it further.  So they

20   may want to have a break after I make my

21   recommendation.

22              My understanding is that in Count 6 through

23   12, the only person opposing the continuance of the

24   trial is Rudy Perez.

25              THE COURT:  Right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1286

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 33

```
 1            MR. CASTELLANO:  My understanding is now
 2    that he's willing to acquiesce and agree to the
 3    continuance out of that group.  That means what I'll
 4    call the Gallegos groups, which is Counts 1 through 5
 5    and 13 through 16, have one defendant who is opposed
 6    to continuance and is requesting a Speedy Trial.
 7    That's Santos Gonzalez.  So my recommendation would
 8    be the July 10th setting would be the Gallegos group,
 9    Counts 1 through 5 and Counts 13 through 16.
10            THE COURT:  Which are the oldest alleged
11    crimes.  Chronologically, it somewhat fits as well.
12            MR. CASTELLANO:  That's correct, Your
13    Honor.
14            THE COURT:  All right.
15            MR. CASTELLANO:  And there is one person in
16    that group demanding Speedy Trial.  So it would make
17    sense to try that first.  And I think the defense
18    wants a moment to confer.  But that's our
19    recommendation.
20            THE COURT:  All right.
21            MR. ADAMS:  Your Honor, I couldn't hear
22    that.  Could he repeat his --
23            THE COURT:  Well, what his recommendation
24    is, because we got -- in each group we've got
25    somebody that opposes a continuance.  But what I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1287

1    understand, and we'll have Mr. Villa and Ms.

2    Fox-Young here in a moment tell us, that I think now

3    they are willing -- Mr. Perez is willing to drop his

4    opposition to the continuance.  So that means that

5    the second group will be continued.  And the first

6    group, which is also the older alleged crimes, would

7    be the first one up for July 10th.

8            Is that fairly stated, Mr. Castellano?

9            MR. ADAMS:  Again, that's older group being

10   Counts 1 through 5 and 13 through 15?

11           THE COURT:  Correct.  So 6 through 12,

12   which is the one that Mr. Villa is involved in; then

13   he would -- that would come later.  He's willing now

14   to agree with a motion to continue.

15           Mr. Villa, do you want to speak on that?

16   Is that your position?

17           MR. VILLA:  That is, Your Honor.  And if

18   you saw our response, we sort of had a halfhearted

19   opposition.  But part of it was --

20           THE COURT:  You're never halfhearted.  I've

21   never seen that.

22           MR. VILLA:  Part of it was the need to have

23   a ruling on severance.  And now that we've got it, I

24   conferred with the Government, and given the work we

25   still need to do -- and I won't address that at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1288

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35

1   length, because Ms. Fox-Young will when we address

2   our motion to compel -- we're okay with a

3   continuance.  And so I would leave it to the other

4   half, 1 through 5 and 13 through 15 to fight out what

5   they need to do.

6          THE COURT:  All right.  Thank you, Mr.

7   Villa.

8          All right.  I'm going to hear from

9   everybody.  But let me go ahead and get this much

10  accomplished.  Since we now have no opposition to the

11  continuance of the 6 through 12 trial, I will put the

12  burden on -- who should I put the burden on?  Let's

13  see, Mr. Benjamin, are you in the second group?

14         MR. BENJAMIN:  I am in the Gallegos group,

15  Your Honor, and I'm the author of the motion.  But I

16  would -- based upon the Court's indications and

17  leaning, I'd like to have a couple minutes to

18  reformulate an argument, and talk to Ms. Johnson.

19         THE COURT:  When you say "Gallegos group,"

20  you're talking about --

21         MR. BENJAMIN:  One through 5 and 13 through

22  16.

23         THE COURT:  Let me then put the burden on

24  you, Mr. Castellano.  Why don't the Government

25  prepare the order on the motion to continue the trial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1289

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36

 1  for Counts 6 through 12; run it past all the

 2  defendants, let's get their agreement on the form.

 3  But it looks like we have agreement on that much.

 4  And while I have declared this case complex, I do

 5  think that it ought to be bulked up as much as

 6  possible for Toombs and Hernandez-Mejia, so that it

 7  withstands any sort of review down the road.

 8          All right.  Take the time you need.  I'll

 9  just sit here.  So you just relax, just take the time

10  you need.

11          MR. CROW:  Your Honor, in Counts 6 through

12  12, would the Court be moving the deadlines as well?

13          THE COURT:  We're going to probably talk

14  about that.

15          MR. CROW:  Okay.  Thank you.

16          THE COURT:  All right.  Let me see if we

17  can get kind of back to order here.  Let me make a

18  few announcements.  If y'all are still talking, you

19  can continue to talk.  One is that I will now, in

20  light of severing the trial, I would appreciate if

21  the Government and the defendants that are involved

22  in both those trials try, during the course of the

23  time we have, to give us some realistic estimates of

24  how long each one of those trials are going to last.

25  As you know, we put these things a bit on a runway.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1290

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 37 37291

 1    And so I'll need to start allocating and carve out

 2    time to make sure that we leave enough time for them

 3    to get tried.

 4           Somebody left outside of the courtroom some

 5    keys, car keys, and a cellphone.  They were to a

 6    Lexus.  I was tempted, but -- I had them returned

 7    down to the front door, so they're now down at the

 8    front door.  So if you're missing keys to a Lexis or

 9    a cellphone -- a lot of us would claim those.  But

10    anyway, they're down at the front entrance now.  So

11    you have to pick them up at a break.

12           All right.  Mr. Benjamin, I'll give you the

13    floor.  If you wanted to yield the floor, I'll let

14    you do it, but it's your motion on the first count.

15    So I'll let you be the conductor, the air traffic

16    controller here.

17           MR. BENJAMIN:  Your Honor, I appreciate

18    that.  I think Mr. Villa wants a little bit of time,

19    and then while we were in the hallway, I think what

20    would be best is if the Court would indulge us, if

21    Ms. Johnson --

22           THE COURT:  All right.  So you want to go

23    first?

24           MR. VILLA:  Just real quick, before you get

25    too far in the weeds on 1 through 5 and 13 through



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1291

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 38

 1   16, the Government and the defendants on 6 through 12

 2   have agreed to the continuance as the Court has

 3   indicated.  We've also agreed that the scheduling

 4   order that's currently in place can be continued.

 5   And we will -- once we get a trial estimate, which

 6   we've actually been talking about, and figure out

 7   what's going to happen with the other trials, and get

 8   a sense from the Court when our case may be

 9   rescheduled, we'd like to then submit a new

10   scheduling order that the parties can work together

11   on and submit to the Court.

12          THE COURT:  Okay.  If you can't just

13   immediately agree on a new schedule -- and I

14   understand that -- let's at least get the motion --

15   or the motion, order in place, so the order in place

16   continuing your trial.

17          MR. VILLA:  Yes, Your Honor.

18          THE COURT:  So even if it's going to take a

19   while to hammer out the other stuff, let's get that

20   in place, so we have the record good and tight.

21          MR. VILLA:  We'll just put language in that

22   order saying the scheduling order will be

23   forthcoming.

24          THE COURT:  All right.  Thank you, Mr.

25   Villa.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1292

```
 1              All right.  Mr. Benjamin, do you want to
 2    let Ms. Johnson talk?
 3              MR. BENJAMIN:  Yes, Your Honor.
 4              THE COURT:  All right.  Ms. Johnson.
 5              MS. JOHNSON:  Your Honor, on behalf of Mr.
 6    Santos Gonzalez, we are the only defendants who are
 7    opposed to the July 10th trial continuance.  Prior to
 8    the Court taking the bench after the break, we had
 9    conferred with counsel for the Government.  They did
10    not indicate a position.  But here's what we would
11    propose:  Because, initially, when the Court was
12    issuing its tentative ruling, we thought that the
13    Court had indicated that you would be severing this
14    case into three groups, Counts 13 through 16, Counts
15    1 through 5, and Counts 6 through 12.
16              Your Honor, I would like to ask the Court
17    for some indulgence in renewing our motion to sever.
18    And we would respectfully ask that the Court sever
19    Counts 13 through 16 from Counts 1 through 5.  And we
20    would ask that the Court allow Counts 13 through 16
21    to proceed to trial in July.  We're ready for trial.
22    We're ready to go in July.  Some of the attorneys for
23    Counts 1 through 5 are not ready.
24              And, Your Honor, would the Court indulge
25    just some brief argument on a renewed motion to sever
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1293

1    Counts 13 through 16 from Counts 1 through 5?

2              THE COURT:  You may.

3              MS. JOHNSON:  Thank you.

4              THE COURT:  As you can tell, one of the

5    reasons I took some time is because I have thought

6    long and hard about that.  If you saw all the charts

7    and graphs and things that will probably find their

8    way into the opinion, you'll see that I gave this a

9    lot of consideration.  But you're free, if you want

10   to go ahead and make your position.

11             MS. JOHNSON:  And I appreciate that, Your

12   Honor.  The problem, respectfully, with grouping

13   Counts 13 through 16 with Count 1 through 5 is that

14   what you have is you have evidence that's going to

15   come in in Counts 1 through 5 that would otherwise

16   not be admissible in Counts 13 through 16.

17             And here's what's more important, Your

18   Honor:  Is that when you look at the dates of the

19   incidents, for example, Count 1, Mr. Gonzales was 11

20   years old when Count 1 occurred.  Counts 1 through 5

21   involved homicides in a prison setting, validated SNM

22   members.  Mr. Santos Gonzalez is neither an SNM

23   member nor an associate.  And that's our position.

24   More importantly, Your Honor, I'm going to put this

25   up.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1294

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 41

```
 1              THE COURT:  But you understand -- and this
 2    is something I'll say -- I can't assume anybody's
 3    case, you know.  I know what your argument is, but I
 4    can't assume the Government's case.  I can't assume
 5    your case.  When I'm making these decisions, I just
 6    have to assume they're disputed, right?
 7              MS. JOHNSON:  True, Your Honor.  And I
 8    understand the Court's look at a facial challenge to
 9    the indictment.  However, I would look -- I would
10    point the Court to the jury instruction.  Now, this
11    is the Ninth Circuit, because we don't have one in
12    the Tenth Circuit, but pretty much these are the
13    elements that the Government needs to prove, is that,
14    number one, that at the time the offense was
15    committed, that an enterprise affecting interstate
16    commerce existed.  And the problem with going to
17    trial on Counts 1 through 5 with Counts 13 through 16
18    is that Counts 13 through 16 -- or excuse me, 14
19    through 16 -- post-date the original wave of
20    indictments in this case.
21              Now, essentially, the SNM was dismantled in
22    December of 2015.  So you have Counts 14 through 16
23    occurring in February of 2016.  So you have
24    evidence -- or if you look at the indictment itself
25    since you're limited to the facial -- to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    information in the indictment -- the SNM was

2    allegedly started sometime in the 1980s.  You have

3    incidents or crimes occurring in 2001, 2007; as

4    charged in Counts 1 through 5, 2012.  These all

5    predate the effective dismantling of the SNM with the

6    first wave of indictments in December of 2015.

7          So then we get February of 2016, when, by

8    the Government's even own admission, the SNM had been

9    essentially dismantled.  So then what you're going to

10   have is this prejudicial evidence from Counts 1

11   through 5, when the SNM was allegedly still active

12   and had not yet been dismantled.  And that's going to

13   spill over and prejudice the defendants in Counts 14

14   through 16, because these counts occurred after the

15   SNM had been dismantled.  And that is obvious and

16   evident from the face of the indictment.

17          And, secondly, Your Honor, the Government

18   needs to prove that the enterprise, at the time that

19   the incident occurred, was engaging in racketeering

20   activity.

21          So I would submit to the Court, Your Honor,

22   that the evidence that would be admitted in Counts 1

23   through 5 would result in substantial prejudice as to

24   Mr. Gonzalez, because effectively, there was no SNM,

25   or it had been dismantled by the Government by

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1296

```
 1    December of 2015.
 2              So I would respectfully submit, Your Honor,
 3    that actually Counts 14 through 16 should be tried
 4    separately because of this very dangerous issue that
 5    you're going to have.  The Government wants Counts 1
 6    through 5 tried with Counts 14 through 16 because 14
 7    through 16 suffer from tremendous fatal deficiencies.
 8    One of those, as I mentioned, again, is that there
 9    was no enterprise.
10              Your Honor, I would also respectfully
11    submit to the Court, Your Honor, that the evidence
12    again -- and I would cite to United States v. Burke,
13    which is an Eastern District of New York opinion,
14    where Mr. Ruggiero was tried separately, was granted
15    a separate trial from the other co-defendant, as he
16    was charged with a limited -- with offenses that were
17    limited in scope and time.
18              And that's what you have in Counts 14
19    through 16 is an incident that occurred one day,
20    about 15 years after the offenses charged in Counts 1
21    and 2.
22              So another issue, Your Honor, that is
23    created, and it's actually -- and the Court cited to
24    the Gallo opinion, which provides a very thorough
25    analysis and guidance in determining when the Court
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1297

1    should grant the severance in these types of cases,

2    when you have evidence of a pattern of racketeering

3    activity -- obviously, the Government still has to

4    prove evidence of the enterprise -- well, when you

5    sever a defendant, they're somewhat limited on the

6    evidence of the predicate acts and the pattern of

7    racketeering activity that would be admitted, for

8    example, in Counts 13 through 16 versus Counts 1

9    through 5, your Honor.

10             And more importantly, Mr. Gonzalez will not

11   waive his right to a Speedy Trial, his Sixth

12   Amendment right, his fundamental right.  And he

13   insists on going to trial.  And it would be unfair

14   for the defendants in Counts 1 through 5 to force

15   them to go to trial, because then you're going to

16   have ineffective assistance of counsel being raised

17   in those counts by those attorneys, because they

18   simply are not ready.  And I understand because,

19   obviously, those counts are far more complex.  They

20   involve homicides, they involve validated members of

21   SNM, allegedly.  And they involve homicides that

22   occurred allegedly in a prison setting; whereas, in

23   Counts 13, 14, 15, and 16 -- more specifically 14

24   through 16, you have most of the defendants in those

25   counts are not validated SNM members.  And, in fact,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1298

```
 1   that's in the face of the indictment.  And so -- and

 2   you have dates that post-date the -- as I said

 3   numerous times -- the dismantling of the SNM.

 4            So, Your Honor, with those arguments I

 5   would respectfully request that the Court sever

 6   counts -- I would submit 14 through 16, but if the

 7   Court would like to do 13 through 16, we could try 13

 8   through 16 in July, and sever us from Counts 1

 9   through 5.  For the additional reasons that I set

10   forth in my motion, and based on the Burke opinion,

11   and the Gallo opinion.  And if you note in Gallo,

12   Your Honor, some of those defendants were actually

13   tried by themselves.  There were, I believe, three

14   groups of three --

15            THE COURT:  And I thought that split it up

16   a little too much.  That was my concern about the way

17   Judge Weinstein did in that case, it split it up too

18   much.

19            MS. JOHNSON:  Your Honor, but I would

20   respectfully submit that the evidence or what is

21   before the Court here actually necessitates severing

22   Counts 13 through 16, primarily because you're going

23   to have introduction of evidence from 2001, 2012,

24   2007 -- when the SNM had not been dismantled -- which

25   would not be admissible in Counts 13 through 16.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1299

 1          So I would, on behalf of Mr. Gonzalez, Your

 2   Honor, ask that the Court sever those 13 through 16,

 3   and --

 4          THE COURT:  Well, I guess on those issues I

 5   think the Government is going to have to decide.

 6   They're going to have to make professional

 7   calculations as to whether their evidence is going to

 8   come in, but -- I mean, I think it's premature for me

 9   to decide what evidence is coming in and not.

10          I know a lot of people argued Bruton

11   problems and things like that, but the Government --

12   I got Bruton opinions out there; they can see what I

13   do with Bruton -- they got to make a calculation and

14   make -- on these sort of decisions they've got to

15   make a calculation whether they'll get their evidence

16   in.  But I think it's a little early for me to say

17   this is in and that's out.

18          MS. JOHNSON:  That is true, Your Honor.

19   But I think that just looking at the face of the

20   indictment itself, when you look at the counts and

21   the -- some of the factual allegations in Counts 1

22   through 5, they're highly inflammatory, as compared

23   to the allegations in Counts 13 through 16, which

24   would then, as pointed out in Gallo, would create a

25   danger of undue prejudice to the defendants in Counts

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1300

```
 1   13 through 16.

 2          Your Honor, we also have Bruton issues,

 3   which I will raise when the time is proper in Counts

 4   13 through 16.

 5          But right now, what I'm asking the Court to

 6   reconsider is severing Counts 1 through 5 from Counts

 7   13 through 16, and letting 13 through 16 go to trial

 8   in July.  We're ready.  It will be a short trial.

 9   The evidence of the enterprise would take maybe a

10   couple of days, at most, and it would be condensed,

11   as opposed to the evidence that would come in as to

12   the enterprise in Counts 1 through 5.

13          Does the Court have any additional

14   questions?

15          THE COURT:  Well, let me hear what other

16   people have to say, then I may have some.  Thank you,

17   Ms. Johnson.

18          MS. JOHNSON:  Thank you, Your Honor.

19          THE COURT:  Any other defendants want to

20   speak -- I guess, before we go to the full-blown

21   motion to continue, anybody want to speak on this

22   motion to sever that Ms. Johnson is renewing?

23          MR. BENJAMIN:  Yes, Your Honor.

24          THE COURT:  I guess it's in the nature of a

25   motion to reconsider the ruling that I've made this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1301

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 48 of 302

```
 1    morning.

 2              All right.  Mr. Benjamin.

 3              MR. BENJAMIN:  Thank you, Your Honor.

 4              And I'll break up the argument and deal

 5    with -- solely with what Ms. Johnson dealt with,

 6    which is the severance.

 7              If the Court looks at just the face of the

 8    indictment, Count 13 is an assault on JG.

 9              Count 14 is conspiracy to murder JG.

10              Count 15 is assault, essentially, of JG.

11              Count 16 is the only count in there that

12    doesn't mention JG by his initials.  But that deals

13    with JG.

14              This is a very limited in time and scope

15    set of allegations that all involve, essentially, the

16    same individuals.  And so I would request that the

17    Court reconsider its position on severance, because I

18    think these are two very, very, very distinct

19    groupings:  1 through 5 and 13 through 16.  Mr.

20    Gallegos would -- and I've spoken with him, Your

21    Honor -- consent to being tried twice.  He is the

22    only person who will be in that position if the Court

23    does sever this into two distinct groups.  But the

24    benefit to not only Mr. Gallegos, but to the other

25    defendants is a mix, because 13 through 16 -- the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Court said something right now that -- I tried a
 2    quadruple homicide in the Western District Texas in
 3    October, Your Honor -- different prosecutors,
 4    different district -- the Court, when we started that
 5    trial told the Government to use its professional
 6    judgment, and the Court used the same phrase -- I
 7    kind of got a chill in my back, Your Honor -- the
 8    professional calculation, we're relying on them to
 9    make a decision as to what to admit and what not to
10    admit.
11              THE COURT:  No, that's not what I'm saying
12    at all.  I'm saying that, right now, they -- they're
13    over here opposing continuances, agreeing to
14    continuances, opposing severances, agreeing to
15    certain things.  Y'all are making some arguments like
16    Bruton arguments.  Ms. Johnson did say this evidence
17    is inadmissible.  I can't make those fine tooth to
18    determine -- this is not a motion in limine.  So when
19    they're making their positions over here, and they're
20    taking their positions, they've got to make a
21    decision for themselves -- not for the Court, for
22    themselves -- as to whether they can get evidence in.
23    So that's all I'm doing.  I'm kind of -- it's a
24    warning to them, not to you.  It's a warning to them
25    that, if they're going to sit here and oppose
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1303

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50

```
 1    severances and things like that, they better think

 2    about their evidence.  I can't make a determination

 3    at this point whether certain evidence is going to be

 4    admissible or not.  So they're not going to determine

 5    the evidence in the case.  I am.  But they've got to

 6    make professional judgments as they oppose motions to

 7    sever.  Is that clearer?

 8            MR. BENJAMIN:  No, it's very clear, Your

 9    Honor.  And that wasn't necessarily -- and I

10    apologize -- where I was going with that.  But on the

11    face of the indictment -- not to belabor the point,

12    Your Honor -- it is a very, I believe, clear and

13    concise way to sever that.  And so we think that that

14    would limit any prejudice to the other defendants.

15    And Mr. Gallegos then would be the sole individual

16    who would be tried twice, Your Honor.

17            THE COURT:  Okay.

18            MR. BENJAMIN:  And Your Honor, I would just

19    request time to come back up.

20            THE COURT:  Sure.  We'll let you come back

21    up on the motion to continue.

22            All right.  Mr. Cooper.

23            MR. COOPER:  Thank you, Judge.

24            THE COURT:  Mr. Cooper.

25            MR. COOPER:  Judge, when we came into the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1304

1    courtroom this morning, we were prepared to argue a

2    motion, the motion to continue.  At that point in

3    time, there were 19 defendants set for trial.  It had

4    not been severed, all 19 of us were together.  I'm

5    standing here to argue in support of Ms. Johnson's

6    motion for severance.  Because if you deny that

7    motion for severance, what I think effectively

8    happens is that we place Santos Gonzalez's right to a

9    speedy trial -- we elevate that above the right for a

10   fair trial to all of the Counts 1 through 5

11   defendants.  Those are the oldest cases, Your Honor.

12          I represent Billy Garcia.  Billy is charged

13   in Counts 1 and 2.  Those counts occurred in 2001.

14   It's incredibly more difficult to investigate a 2001

15   murder than it is a 2007, 2012, or the incidents that

16   occurred just a couple of years ago.

17          So I think, if it's not severed, then what

18   I think what we are telling all of the other

19   defendants, the Billy Garcias, the Allen Pattersons,

20   the Edward Troups, who are charged in Counts 1 and 2,

21   that their right to a fair trial is less important

22   than Santos Gonzalez's right to a speedy trial.  And

23   I think that I would suggest that a severance carving

24   him out with 13 through 16 would be a good

25   resolution.  That would protect my client's right to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   a fair trial.

 2            Judge, we are not anywhere close to being

 3   ready.  We filed on April the 6th a motion to compel

 4   discovery on behalf of Troup and Garcia.  In that

 5   case, we cited how we had made specific discovery

 6   requests back in May of 2016; again September 8th of

 7   2016, September 30th, we filed a status report

 8   talking about the motion for specific discovery.  We

 9   had a hearing in October, and in that hearing, the

10   Court directed the Government to give us the

11   discovery that we were asking for.  We still don't

12   have it.  And all of those items are delineated in

13   our motion to compel discovery on behalf of Troup and

14   Garcia.

15            Some of the things that we're asking them

16   to give us are STIU files that we believe that are

17   incomplete.  We have requested, Your Honor, through

18   IPRA that the Department of Corrections give us these

19   documents, documents that we know exist, documents

20   that we've seen in other cases, documents that we

21   know are in the Department of Corrections, and

22   probably in the Government's possession.

23            Judge, our response from Department of

24   Corrections tells us they've got -- they're going to

25   need five months to produce that stuff.  Five months.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1306

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 53

```
 1    And we're not getting it.  So I think we're not going
 2    to be ready on the July 10th setting.
 3            So I think the only way to save that time,
 4    Judge, is to sever the Santos Gonzalez matter, give
 5    him his right to a Speedy Trial.  Joe Gallegos is
 6    willing to go; he's the only guy that's in the 1
 7    through 5 and the 13 through 16.  He's willing to be
 8    tried separately and willing to go in July.
 9            So for all of those reasons, and probably a
10    lot of reasons that I have failed to identify, failed
11    to give to the Court, Your Honor, I would ask that
12    you grant that motion, and that we not be forced to
13    go to trial on Counts 1 through 5 in July, because we
14    are just not ready.
15            Additionally, we have retained Dr.
16    Lieberman from the University of Nevada.  And we have
17    not prepared to subpoena him to court today to
18    testify on behalf of our motion to sever.  And we
19    think that our motion to sever is probably as good as
20    any motion that you've seen.  And we would like the
21    opportunity also to argue that down the road.
22            But, Judge, I would support Ms. Johnson in
23    her effort to get 13 through 16 severed.  Thank you.
24            THE COURT:  All right.  Thank you, Mr.
25    Cooper.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            If you want to speak on the motion to

2    sever -- I know Mr. Cooper began to go on his motion

3    to continue.  I'm going to hold that for a little

4    bit.  Are you going to speak on the motion to sever,

5    this renewed motion that Ms. Johnson or motion to

6    reconsider?

7            MR. BURKE:  Yes, Your Honor.

8            THE COURT:  Okay.

9            MR. BURKE:  And many of my comments are

10   echos of what Mr. Cooper just said.  I did want to

11   point out with regard to Professor Lieberman, it's

12   pretty obvious to me that you read his declaration,

13   but we would like to present his testimony, and we

14   have not made a complete record on our motion to

15   sever, and we're surprised at that.  And I want the

16   Court to know --

17           THE COURT:  You're surprised at what?

18           MR. BURKE:  It seems as though you've ruled

19   on severance without giving us an opportunity to

20   argue our motion and to present testimony, which we

21   made it clear we intended to do.  And I want the

22   Court to know it's not for lack of diligence.  For

23   one prior hearing, he had plane reservations, and we

24   had gone through the CJA procedures, and then it

25   became apparent that there was not going to be time

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1308

 1 | for him to testify, so we called that off.
 2 | THE COURT:  I'll keep an open mind on your
 3 | motion to sever when we get to it.  It's teed up
 4 | later today, but I do need to rule on the one that
 5 | was before me, and I have ruled on that.  And so I'll
 6 | keep an open mind on it.
 7 | MR. BURKE:  Okay.  And you'll give us an
 8 | opportunity to speak again.
 9 | THE COURT:  Sure.
10 | MR. BURKE:  Thank you, Your Honor.
11 | THE COURT:  You bet, Mr. Burke.  Thank you.
12 | All right.  Anybody else want to speak on
13 | the -- Ms. Wild is reminding me, though, that that
14 | motion -- your motion to sever is not teed up.  And I
15 | think the reason is because y'all didn't want it teed
16 | up for this set of hearings.  So you know that,
17 | right?
18 | MR. BURKE:  Well, Your Honor, we were
19 | attempting to address all the logistical issues that
20 | we had.
21 | THE COURT:  I know, but this is one thing
22 | I'm going to probably be talking about is -- a lot of
23 | the briefing from the defendants is all these motions
24 | aren't ruled on.  And then, when I have a hearing,
25 | everybody pulls their motions off these hearings.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1309

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56

```
 1              MR. BURKE:  Your Honor, if we had been told

 2    that you were focused on severance, we would have had

 3    Professor Lieberman here and ask him to testify, and

 4    ask the Court to take up that issue.

 5              THE COURT:  Well, I guess I don't think

 6    it's a surprise that I'm ruling on a motion to sever

 7    I heard in February.  I told you I was going to sit

 8    on it a little bit to try to get a better feel for

 9    it.  But -- well, that's my thoughts.

10              MR. BURKE:  Not only that, Your Honor.

11    It's very helpful to know where the Court is going

12    with severance.

13              THE COURT:  Sure.

14              MR. BURKE:  It's not as though that's

15    unappreciated.  We needed some guidance.

16              THE COURT:  That's the reason I took some

17    time to explain my reasoning on it.  Thank you, Mr.

18    Burke.

19              All right.  Anybody else want to speak on

20    Ms. Johnson's -- I'm going to call it a motion to

21    reconsider, I guess, what I have done?  Anybody else

22    want to speak on the defendants' side?

23              All right.  Mr. Castellano, do you want to

24    take up Ms. Johnson's request?  Do you want to go

25    with a small trial in July and -- you had made -- you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1310

 1   had joined this motion to continue.  What's your

 2   thoughts?

 3            MR. CASTELLANO:  We would request to keep

 4   the trial together at this time, Your Honor.

 5            Everyone points to the face of the

 6   indictment, indicating that these are discrete acts.

 7   But if you look at the face of the indictment, what

 8   it establishes is one of the elements that we would

 9   have to prove at trial, and that's the ongoing nature

10   of the enterprise.  If you have an association of

11   fact enterprise, there is a requirement to show the

12   ongoing nature of the enterprise.

13            So if the SNM started in approximately

14   1980, and exists until today, that's evidence we

15   would have to prove.  I disagree with Ms. Johnson

16   that arresting and imprisoning members of the SNM

17   dismantles the organization.  I mean, this case is a

18   perfect example of that.  We have a number of murders

19   that occurred in prison.  So I think a number of

20   defendants in this case would disagree with the fact

21   that the SNM is now at an end.

22            So arresting and imprisoning members of the

23   SNM does not dismantle the enterprise.  There is an

24   SNM in the state system, and there is also a SNM in

25   the federal system.  So this doesn't put an end to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1311

```
 1    anything at this point.
 2              THE COURT:  And you're prepared to prove
 3    that at trial, that it's a continuing, ongoing
 4    operation through the later counts?
 5              MR. CASTELLANO:  That's correct, Your
 6    Honor.  I mean, we've had people since this time who
 7    have been charged separately who are SNM members.  So
 8    the activity has been ongoing, even after the events
 9    of this indictment.
10              So what we're going to have -- as I said to
11    the Court before, really, how many times do you want
12    to hear the same evidence or see the same defendants?
13    And I agree with the Court's ruling.  I mean, we all
14    know --
15              THE COURT:  Well, I hope that I've
16    exhibited my patience is fairly long.  I'll hear
17    stuff over and over, if that's what it takes to do
18    justice.  So I don't think I'm the one that's mainly
19    at issue here.  I think it's really me trying to
20    serve the parties in this case and trying to make
21    sure that we do justice there.
22              MR. CASTELLANO:  I understand, Your Honor.
23    And still, in terms of judicial economy, two trials
24    is better than three.  It is the same evidence.
25    People have mentioned Bruton.  And I've also
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1312

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 59

1    mentioned before the Cook and Smalls cases.  So any

2    statement these individuals made to each other --

3          THE COURT:  You've eyeballed the evidence

4    that Ms. Johnson has talked about on her Bruton

5    issue?  Usually, I can solve Bruton problems with

6    scissors and tape and a copy machine, and things like

7    that.  I mean, we usually can work around it to make

8    sure that it's fair to the co-defendants.  You've

9    stared at this evidence that she's concerned about,

10   and think we can -- not think, but feel like we can

11   avoid the Bruton problems?

12         MR. CASTELLANO:  I believe we can, Your

13   Honor.  And I think we have addressed that in our

14   brief.  Some of the statements are statements --

15         THE COURT:  Some of the discussion by both

16   the defendants and the Government was probably too

17   general for me to make an independent determination

18   as to whether it was going to solve the Bruton

19   problem.  It seems it was a little early for me to

20   probably make that determination.

21         MR. CASTELLANO:  I agree, Your Honor.  And

22   I think that any statements made on the date of the

23   crime between co-defendants, if we have somebody to

24   come forward and testify at trial, those statements

25   will all come in under the Cook and Smalls cases out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1313

1   of New Mexico.  So those are not Bruton statements.

2   So if somebody comes in and tells the jury what each

3   of the members of the conspiracy said on that date,

4   those are coming in against all members.  So those

5   fall outside of Bruton.

6        Obviously, post-arrest statements are what

7   the Court will be looking at, eventually, and I think

8   we can deal with that.  So as I said earlier, we do

9   have 2001 murders.

10        THE COURT:  But you understand I probably

11  am not in a position to make a ruling on that.  I'm

12  just going to have to leave it to you that if you're

13  going to oppose a severance you think you can get the

14  evidence in and won't be surprised if do I something

15  different?

16        MR. CASTELLANO:  We understand that we do

17  so at our own peril, Your Honor.  We get that.

18        So the oldest murders are 2001 murders.

19  But after that, Count 3 is as recent as 2007; Counts

20  4 and 5 are 2012, and Counts 13 through 16 are in

21  2015 and 2016.  So most of them are more recent, and

22  most of them -- actually, all of those, as I said

23  earlier, show the ongoing nature of the enterprise.

24        What the defense wants to do is give the

25  jury something that's limited in scope, and just say

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1314

 1    this is really what it's about.  But it doesn't

 2    matter what age Santos Gonzalez was when the first

 3    murder happened.  It only matters whether or not we

 4    can prove our case against him at the time he's

 5    charged, and we think that we can.  So the fact that

 6    this is ongoing in nature is what's reflected on the

 7    face of the indictment.  It's not the opposite.

 8              THE COURT:  Say that again.

 9              MR. CASTELLANO:  This is ongoing.  And the

10    defense has said:  Look at the face of the indictment

11    and that tells you that it's not.  But what I'm

12    saying is it shows just the opposite of that.  That,

13    from 2001 to 2016, we're establishing, or will

14    establish criminal activity and racketeering activity

15    on behalf of the SNM Gang.

16              So at this point, I would ask that the

17    Court keep them together.

18              THE COURT:  All right.  So where are you

19    now on -- let me leave it at that, because I've

20    separated out the motion to continue.  So you're just

21    arguing on Ms. Johnson's.  That's appropriate.

22    Anything else then, Mr. Castellano?

23              MR. CASTELLANO:  That's correct.  No, Your

24    Honor.

25              THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1315

```
 1   Castellano.

 2           MS. JOHNSON:  May I respond?

 3           THE COURT:  Yes, you can.  Let me see if

 4   any of the other defendants want to say anything on

 5   the motion to sever before I give Ms. Johnson the

 6   last word.

 7           All right.  Ms. Johnson.

 8           MS. JOHNSON:  Thank you, Your Honor.

 9           Your Honor, first I'd like to address the

10   Bruton issue.  I have Exhibits A and B that I'd like

11   to tender to the Court.  These are reports of the

12   statements provided by co-defendants Brandy Rodriguez

13   and Shauna Gutierrez.  And these are not

14   co-conspirator statements, these are post-arrest

15   statements that do raise a Bruton problem.

16           May I tender those to the Court, Your

17   Honor?

18           THE COURT:  You may.

19           It sounds like the Government is willing to

20   run the risk that you may be right on this Bruton

21   problem, and I may keep this evidence out, and they

22   still want to try the cases together, rather than

23   separately.

24           MS. JOHNSON:  Your Honor, I would submit to

25   the Court that Exhibits A and B show that clearly Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1316

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3317

63

```
 1    Gutierrez made statements, post-arrest statements,
 2    that implicate Mr. Gonzalez.  Essentially, her
 3    statements put Mr. Gonzalez at the scene of a crime.
 4    Those are clearly inculpatory statements that raise a
 5    Bruton issue, if we're tried with Ms. Gutierrez.
 6    Ms. Rodriguez also implicated Mr. Gonzalez.  Not just
 7    what one co-defendant said during the alleged
 8    commission of the crime, but simply you have these
 9    defendants making post-arrest statements to the
10    Government about what each co-defendant allegedly
11    did.
12              And, Your Honor, I would submit to the
13    Court that simply redacting, cutting out Mr.
14    Gonzalez' name is going to -- is not going to cure
15    the problem.
16              THE COURT:  It may not.  And I'm not making
17    any ruling on that.  So I understand.
18              MS. JOHNSON:  And just to --
19              THE COURT:  Let's say these got kicked out,
20    let's say these things got kicked out.  Is there
21    still evidence against your client?
22              MS. JOHNSON:  Well, if those statements
23    were -- it would be very, very thin, I would submit
24    to the Court.
25              THE COURT:  So isn't that a good
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1317

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 64

```
 1    development for you?

 2              MS. JOHNSON:  It is.

 3              THE COURT:  So how much prejudice can you

 4    really show by me denying your motion to sever?

 5              MS. JOHNSON:  Well, Your Honor, then we're

 6    still going to trial with the co-defendants who made

 7    those statements.  And then, if the Court kicks them

 8    out, so now we are -- the Government is going to try

 9    to introduce those statements against each one of

10    those defendants.

11              But I want to go back, Your Honor, to

12    Counts 1 and 2, for example.  Those homicides or that

13    homicide occurred in 2001.  And when you look at HJ,

14    Inc. versus Northwestern Bell, which is at 492 U.S.

15    229, at page 239, one of the requirements that the

16    Government has to prove is that the racketeering --

17    now, that's a RICO case -- but that the racketeering

18    predicates -- because they still have to prove the

19    enterprise -- that these predicates are related.

20              So the issue -- this goes back to the issue

21    addressed in Gallo, that introduction of evidence

22    from 2001 is going to result in undue prejudice to

23    Mr. Gonzalez, because you have a homicide that

24    occurred in a prison setting 15 years earlier.

25              There is a question, even on the face of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1318

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 65 319

 1    the indictment that that is not related to the

 2    incidents alleged in Counts 13, 14, 15, and 16.

 3            So again, Your Honor, I would strenuously

 4    request that the Court grant Mr. Gonzalez' severance.

 5    The Court has done it.  Mr. Andrew Gallegos, the

 6    other Andrew Gallegos who appeared before the Court

 7    pretty early on, you severed him.  They were ready

 8    for trial.

 9            THE COURT:  But that didn't work out too

10    well, did it?

11            MS. JOHNSON:  I don't know what happened to

12    him.

13            THE COURT:  Well, I mean, they said they

14    were ready to go to trial, and all that.  And it

15    didn't happen.

16            MS. JOHNSON:  Well --

17            THE COURT:  So that was -- you know, that

18    was -- you know, there was all these assurances that

19    they were ready to go to trial; that they were just

20    on the eve of trial when this got indicted.  And it

21    hasn't turned out that well.  So I guess, if I'm

22    going on experience from there, I guess I'm not

23    pleased with that one.

24            MS. JOHNSON:  I understand, Your Honor.

25    But I would submit to the Court -- I've been before

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1319

1    this Court since this Court took the bench; I've been

2    practicing in federal court exclusively for 17 years.

3    I would submit to the Court that when I tell you I'm

4    ready for trial --

5                THE COURT:  Oh, I know.

6                MS. JOHNSON:  -- I will be ready for trial.

7                THE COURT:  I trust you.

8                MS. JOHNSON:  So, Your Honor, we would

9    again renew our motion to sever.

10                THE COURT:  Thank you, Ms. Johnson.

11                Well, I've certainly thought about Ms.

12   Johnson's opposition to the motion to continue, and

13   the reasons for it.  And have thought long and hard

14   about the motion to sever that I expected her to

15   renew today.  I wanted to get a feel for what people

16   had to say after I made the order of severance that I

17   did.  I wanted to see if the Government, after I

18   severed this way, what their position would be.  But

19   I am not seeing the -- once I sever down, and really

20   focus what I think is one of the main things, is when

21   I turn to this jury and start instructing this jury,

22   whether they can compartmentalize the evidence.  And

23   I think on Ms. Johnson's client that they can.  They

24   can compartmentalize.  I think it's going to be

25   reduced.  I know there is going to be some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1320

 1    evidentiary issues; I don't minimize those in any
 2    way, and we're going to have to work through those.
 3    But I think, as far as giving Ms. Johnson, her
 4    client, a fair trial, I think I have gone a long ways
 5    toward doing that.  And so I'm not inclined to grant
 6    the motion to reconsider, the renewed motion to
 7    sever.
 8           Down the road, if it pops up and the
 9    Government starts looking at its evidence and wants
10    to rethink it, we can certainly look at it at that
11    time.  But I think at the present time severance has
12    been granted is going to solve a lot of the problems
13    for Ms. Johnson and Mr. Gonzalez.  And so I'm not
14    inclined to grant it.
15           All right.  Mr. Benjamin, if you now want
16    to argue your motion to continue.
17           MR. BENJAMIN:  Thank you, Your Honor.
18           Your Honor, Mr. Gallegos filed a motion to
19    continue the trial setting for July 10th's date.  And
20    I think that at this point in time we definitely
21    would reurge that, Your Honor.  There is multiple
22    things that put us in the position we are today,
23    where for Counts 1 through 5 specifically, Mr.
24    Gallegos, and others who have joined this motion, are
25    not ready for trial.  As I put in the motion, this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1321

1   case is regarding Counts 1 and 5 is in the initial

2   motions practice stage, Your Honor.  We're still

3   hearing motions to disclose CIs.  We have a motion to

4   dismiss that the Court has set on this set of

5   hearings.  But, depending on what happens on that,

6   there is going to be a lot of further litigation

7   regarding that, Your Honor.  There are outstanding

8   motions to suppress and other evidentiary issues.

9           This has been brought on by the

10  Government's actions in this case, Your Honor.  The

11  Government has been producing rolling discovery.

12  That rolling discovery is what led to Document 1023,

13  the motion to dismiss or produce the Grand Jury

14  transcripts in relations to the charges that form the

15  basis for Counts 4 and 5.  And that's specifically

16  because in Document 1580, produced approximately

17  April of 2016, they made the allegation that was then

18  reiterated in a later 4473 document, that then was

19  retracted by the Government after the second

20  superseding indictment.  And so their actions are

21  what has put us in this position.

22           Not only that, but, Your Honor, there is a

23  second superseding, as the Court's aware, that added

24  a brand-new defendant to this cause, Brandy

25  Rodriguez.  They've now also filed -- that's set for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1322



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   this hearing -- a motion to determine conflict of

2   counsel who, to the best of my understanding, Your

3   Honor, the Government has been aware of what's been

4   going on.

5           They then -- and I believe we'll talk about

6   this -- have seized the tablets.  So now, we have a

7   limited amount of time between May, and as the Court

8   noted, tomorrow is essentially 60 days from the

9   proposed trial setting.

10          Mr. Gallegos does not have the ability to

11  review any further discovery effectively, or very

12  quickly.  Because, as the Court will recall, one of

13  the things that we talked about initially with this

14  case, and that led to the tablets was Otero, where

15  Mr. Gallegos is detained, has one meeting room where

16  you can meet with your client and conduct a contact

17  visit.  That meeting room, Your Honor, is essentially

18  reserved ahead of time and used.  There is five

19  defendants from this case there.  There is other

20  defendants that I personally have at that facility,

21  out of the District of New Mexico and the District of

22  Texas, that we use that contact visit room.  And so

23  there is not even a practical way to review what will

24  inevitably be the large discovery dump that comes

25  before the trial.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 70324

1          The Court has resolved, I believe, the

2    majority, and has noticed that the Government's

3    position initially in opposing this continuance was

4    not on moving a trial, any trial.  It was simply

5    everybody has to agree or everybody gets punished.

6    That, essentially, takes me back to the United States

7    Army when I was in, Your Honor.

8          But that isn't where we're at.  We have

9    Counts 1 through 5, where we were still diligently

10   working, filing motions that are to be heard.  And I

11   appreciate the Court setting something that was just

12   filed on Counts 4 and 5, so that we may hear that,

13   the motion to dismiss.

14         But there are fluid arguments that are

15   being made by the Government in different filings and

16   its responses.  And so at this time, I can tell this

17   Court that I do not have a handle on Counts 1 through

18   5.  The evidence and the allegation is still fluid

19   and not set.  And I do not believe it's prepared for

20   trial, Your Honor.

21         THE COURT:  All right.  Thank you, Mr.

22   Benjamin.

23         MR. BENJAMIN:  Thank you, Your Honor.

24         THE COURT:  Mr. Castle.

25         MR. CASTLE:  Thank you, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1324

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 71

```
1            The Court earlier, in speaking to Mr.
2   Burke, had mentioned that certain motions were set
3   for hearing and certain ones weren't.  I've got to
4   tell the Court kind of the reasoning behind some of
5   the staging of the motions.
6            THE COURT:  And I'm not critical of that.
7   I understand that.  But, on the other hand, then the
8   defendants use it against me, saying, Well, you know,
9   you've got all these motions to rule on.  So that's
10  what I'm sort of saying.  I've got to kind of protect
11  my record here, too.  I understand why with this
12  group y'all have to talk and juggle things around.
13  But at the same time, there are requests that some
14  motions not be heard.
15           MR. CASTLE:  The reason I bring it up, Your
16  Honor, though, is for the longest time, the Counts 6
17  and 7 defendants said they were ready to go to trial.
18   And their motions for informants got set early, got
19  resolved early.  The Count 1 and 2 people, knowing
20  that, were willing to basically take a backseat so
21  that they could litigate their motions.  And now
22  today -- in fact, that's what we believed up until
23  today -- that that was kind of the situation.
24           And now, because of an agreement of 6
25  through 12 defendants with the prosecution,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1325

1    essentially, the 1 through 5 and the 13 through 16

2    defendants are being told to go earlier.  We're the

3    sacrificial lambs because of an agreement between the

4    Government on 6 through 12.

5          We are having -- so, for example, our CI

6    motions haven't been litigated, even though in our CI

7    motion the Government has already agreed that they

8    needed to turn over one of the identities of one of

9    the informants, they still haven't done that.  So our

10   litigation is behind the 6 and 7 litigation.

11         Now, I understand the 8 through 12

12   defendants never requested to go early, and -- but

13   some of their litigation has already been done

14   concerning informants, et cetera.

15         THE COURT:  Say that again.

16         MR. CASTLE:  Some of the 8 through 12

17   defendants have had their litigation done.  I think

18   Mr. Sanchez' confidential informant was argued a

19   couple months ago.

20         So these are real problems.  And I don't

21   want to pit our defendants against the other

22   defendants, but it kind of feels that that's what's

23   happening here.  And I apologize for pointing out the

24   elephant in the room, to some extent.  But that's

25   what -- I can tell the Court that when we took our

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1326

73

 1    break, the 1 through 5 and 13 through 16 defendants

 2    felt like an agreement had been made without our

 3    input.

 4              THE COURT:  But is that bad?  I mean, you

 5    know, there is a lot of competing interests, and

 6    people -- you know, I've got all sorts of cases where

 7    defendants -- and sometimes there are plaintiffs in

 8    civil cases, you know, they just can't come to an

 9    agreement, and something happens, which is -- you

10    know, I came in here and made a ruling, then that

11    forces other people to sort of reassess where they

12    are.

13              MR. CASTLE:  Well, it's not bad.  But I'm

14    just telling the Court what our position is.  The

15    agreement was made before our position was known.

16              I can tell the Court it's very difficult to

17    investigate a case that happened 15 years ago.  And

18    the Government is having difficulty giving us

19    materials from that time period.  For example, the

20    DNA testing that was done, that's still out there.

21    They said:  We're going to make our best effort to

22    try to get you the underlying data concerning the DNA

23    testing.  But they haven't gotten to it.  And

24    probably because they're trying to track down

25    materials that were stored in a state facility 15

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1327

```
 1    years ago.

 2              In my experience, homicides that happened

 3    in the last one or two years before a trial are a lot

 4    easier to investigate than an old case.

 5              And so these are the interests that we're

 6    asking the Court to take into consideration.  We

 7    have -- we were the first defendants to request

 8    discovery on Counts 1 and 2.  It's still yet to be

 9    produced to a large extent.  We've been diligent in

10    seeking those materials, yet we don't have them.

11              And so I would suggest that the Court

12    consider continuing the trial.  I know we're not

13    going to get severed from the other defendants in

14    Counts 3 through 5 and 13 through 16.  But the need

15    for a continuance for our set of defendants is great.

16    Just in addition to the amount of litigation we still

17    have to do, it's just impossible to get all the

18    investigation done by July.  And I think we'll be

19    back in here -- if the Court sets it for July, that

20    we'll be back in here with information that we need

21    to put on the record, but out of the presence of the

22    prosecution, which would establish our difficulties

23    in investigating this case and why we need additional

24    time.

25              THE COURT:  All right.  Anything else,
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1328

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 75329

```
 1    Mr. Castle?

 2                 MR. CASTLE:  No, Your Honor.

 3                 THE COURT:  Thank you, Mr. Castle.

 4                 Let me do this:  I need to let Ms. Bean

 5    rest her fingers.  I won't cut anybody off.  I'll

 6    hear what you have to say on the motion to continue.

 7    But let's take a break and let Ms. Bean rest her

 8    fingers.  We'll be in recess about 15 minutes.

 9                 (The Court stood in recess.)

10                 THE COURT:  All right.  Everybody be

11    seated.  K'Aun reminds me that I sent everybody into

12    a tither by saying that this is where we'd be trying

13    the DeLeon case.  I'm wrong, and I apologize for

14    that.  We are trying it in Las Cruces.  I think I

15    corrected myself when I was giving my opinion,

16    because I was pointing out that I was going to have a

17    smaller courtroom down there than we've been working

18    with.  We'll probably be doing a lot in here over the

19    next couple of months.

20                 All right.  Mr. Burke, I think you were

21    going to --

22                 MR. DAVIS:  Judge, before Mr. Burke takes

23    the podium, may I make a brief comment based on --

24                 THE COURT:  Well, if Mr. Burke wants to

25    give you leave?  He does.  Mr. Davis.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MR. DAVIS:  Thank you, Judge.  Michael
 2    Davis on behalf of Carlos Herrera.
 3              THE COURT:  Mr. Davis.
 4              MR. DAVIS:  Judge, I just wanted to comment
 5    on something that Mr. Castle said.  I know the jaws
 6    of eight collective teams dropped when he made the
 7    comment that somehow there was some sort of agreement
 8    with the Government that the Counts 6 through 12
 9    people were going to go first in the case.  I'm not
10    sure where Mr. Castle gets that.  But there has never
11    been any -- any communication between the Government
12    and the Counts 6 and 7 attorneys regarding which case
13    would go first.
14              I would just note that that has always been
15    the Government's prerogative, who goes first.  That's
16    their choice on who they prosecute.  And any
17    indication that somehow the Count 6 through 12 counts
18    are somehow less complicated than the 1 through 5,
19    and other counts, frankly, I just don't buy that.  I
20    may not be as smart as Mr. Castle.  But the case is
21    just as difficult for all of us.
22              THE COURT:  And you noticed I'd tried to
23    avoid characterizing it.  Because I don't have a
24    feel.  And, you know, rarely do I ever say that case
25    is easy and that one is hard.  That's just --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1330

```
 1              MR. DAVIS:  I just wanted to clarify that
 2   in any sense that Mr. Castle was speaking for all of
 3   us.  I will reiterate what Mr. Cooper said:  When we
 4   came here this morning, this was a motion to continue
 5   on all the defendants in the case before the Court
 6   raised the severance issue which threw the monkey
 7   wrench into what we were going to say this morning,
 8   but --
 9              THE COURT:  Well, you got half the motion
10   granted.
11              MR. DAVIS:  Yes, Judge.  Anyway, I just
12   wanted to clarify that.
13              THE COURT:  All right.  Thank you, Mr.
14   Davis.
15              Mr. Burke.
16              MR. BURKE:  Thank you, Your Honor.  My
17   comments are made based on the assumption that the
18   Gallegos group is sort of set.  I know you're going
19   to give us an opportunity to be heard further on
20   that, and that we're in the lead now, so to speak.
21   And I have no other comments about that.
22              But as to our group, Your Honor, it seems
23   to me that all of the defendants in the Gallegos
24   group, except one, are not only not ready for trial,
25   we've announced to the Court that we're not ready for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   trial.

 2            The Government's concern, perhaps

 3   legitimate, is they don't want, through circumstance,

 4   trials to keep being broken up so that we end up

 5   having more trials than they hope.  And the Court has

 6   expressed itself with regard to how the Court

 7   believes that it should be divided up.  But it seems

 8   to me the very clear remedy, so that our clients, Mr.

 9   Troup, and our co-defendants, get a fair trial when

10   we are ready for trial, is to kick over the Joe

11   Gallegos group.  And the impediment seems to be the

12   speedy trial rights for Santos Gonzalez.  However,

13   the clock is not running on Santos Gonzalez, so that

14   should not be an impediment.  And to the extent that

15   there may be a constitutional right for a Speedy

16   Trial on Mr. Santos Gonzalez' part, that must give

17   way to the other defendants in the Joe Gonzalez (sic)

18   group's constitutional right to a fair trial.  And I

19   don't believe that the Government would be objecting

20   as long as the Joe Gallegos group moves together.

21            So that is my request, Your Honor.  Thank

22   you.

23            THE COURT:  Say that again.  I don't

24   believe -- what were you trying to say at the very

25   end there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1332

```
 1            MR. BURKE:  I'm sorry, Your Honor.  What I
 2   was saying at the end is that the remedy, it seems to
 3   me, it's fairly clear that if the Joe Gallegos group
 4   is to move together, stay together -- which seems to
 5   be where this is headed -- that it needs to stay
 6   together later on, and the continuance be granted.
 7   And that the dilemma for the Court is you need to
 8   make -- I'm asking you to make some findings
 9   regarding Santos Gonzalez, that his speedy trial
10   rights, to the extent that they exist at all, because
11   the clock is not running on him, must give way --
12   must give way -- to the rights of the other
13   defendants to get a fair trial.
14            THE COURT:  All right.  Thank you, Mr.
15   Burke.
16            MR. BURKE:  Thank you.
17            THE COURT:  All right.  I know all the
18   defendants want a continuance, so you don't need to
19   stand just to tell me that.  But does anybody else
20   want to speak on the motion to continue from the
21   defendants' side?
22            All right.  Mr. Chambers.
23            MR. CHAMBERS:  I'd just refer the Court to
24   18 United States Code 3161(h)(6), as it relates to
25   Mr. Gonzalez, his being adjoined with other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1333

```
 1    defendants and the impact that has on his speedy

 2    trial rights.

 3            THE COURT:  All right.  Thank you,

 4    Mr. Chambers.

 5            MR. CHAMBERS:  Also, I don't want my

 6    silence to be construed as acquiesce.  I also am not

 7    prepared for trial.

 8            THE COURT:  All right.  I'll assume that.

 9    That's what was in the motion.  So if you feel like

10    you need to say that -- don't feel like you have to

11    say that, because I'm assuming that.

12            Mr. Cooper.

13            MR. COOPER:  Judge, the other thing that --

14    I think you asked Mr. Burke to come back up to the

15    podium to talk about the last bit of his discussion.

16    What he did say is the Government has no objection to

17    a continuance, provided all of the Gallegos

18    defendants are continued, including Santos Gonzalez.

19    So I think he didn't reiterate that portion of it.

20    So the Government would have no objection to a

21    continuance from that July setting, is my

22    understanding, having talked to them during the

23    break, as long as all of the Joe Gallegos defendants

24    are continued.

25            Thank you.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          THE COURT:  All right.  Thank you, Mr.

 2    Cooper.

 3          Ms. Johnson.

 4          MS. JOHNSON:  Your Honor, I just want to

 5    make sure.  This is Erlinda Johnson.  I want to make

 6    sure that Mr. Gonzalez' record is very clear.  And I

 7    appreciate the other defendants' position, Your

 8    Honor.  And there is also a danger, Your Honor, in

 9    compromising Mr. Gonzalez' right, constitutional

10    right, to a speedy trial.

11          And as Tenth Circuit stated in United

12    States v. Hall, that if there is a risk of

13    compromising a constitutional right of a defendant --

14    again, Your Honor, I know you've already ruled on

15    this -- sever Mr. Gonzalez out by himself, and let

16    him go to trial by himself in July.  And that way,

17    the defendants in Counts 1 through 5, and those

18    defendants who are not ready to proceed to trial in

19    July have plenty of time.  Because there is a concern

20    that if Mr. Gonzalez is going to trial with

21    defendants whose attorneys are not ready, that may

22    also result in a problem and prejudice to Mr.

23    Gonzalez, and not to mention those defendants.  But I

24    would submit to the Court, Your Honor, again, Mr.

25    Gonzalez strenuously asserts his constitutional right

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1335

1    to a speedy trial.  And we're ready.  This is,

2    essentially, a very brief trial as to Counts 14

3    through 16.

4              THE COURT:  Thank you, Ms. Johnson.

5              Any other defendants want to speak on the

6    motion to continue?

7              All right.  Mr. Castellano, are you going

8    to argue this motion?

9              MR. CASTELLANO:  Yes, sir.

10             THE COURT:  You still want the motion to

11    continue?

12             MR. CASTELLANO:  Your Honor, Mr. Burke and

13    Mr. Cooper accurately stated our position.  If the

14    group can move together, we would agree to some more

15    time.  The problem is there is a tension here between

16    Mr. Gonzalez' speedy trial rights and the rest of the

17    group's speedy trial -- or well, constitutional

18    rights.  I agree with everyone that, as it is, as it

19    pertains to the statutory speedy trial issue, we

20    don't have a problem because we have pending motions,

21    we're not even on the clock right now.

22             But the constitutional issue is the issue

23    that is really driving things here.  So the question

24    is whether or not the Court would be willing to move

25    Mr. Gonzalez to a later date to keep him with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3337

1  group.  And if so, we would not oppose a continuance

2  to give the defendants more time.  But if it's going

3  to result in a severance -- it's basically a de facto

4  severance -- to keep him at the July 10th setting, we

5  just don't want to have that many trials.  It's not

6  economically feasible.  It doesn't result in judicial

7  economy.  And we've already stated our position as it

8  relates to the severance.

9          Now, looking at the motion to continue,

10  itself, I think today and this week a number of the

11  reasons for the continuance will disappear.  So I

12  think, regardless of the trial date, we'll be moving

13  forward at a faster pace.

14          One of the issues listed in the motion to

15  continue was the fact that the severance motion had

16  not been decided yet.  But that's been decided, so

17  everyone knows kind of where they are in terms of

18  order of trials.

19          The next -- one of the other ones was

20  budgeting, and people not knowing how long the trials

21  would be, in order to submit their budgets.  I think

22  we can sort that out as well.

23          And one of the other reasons was that the

24  CI motions have not been decided.  But I think we're

25  going to have some concessions today or this week

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1337

1    that will largely take care of the CI issues.  So I

2    think, when it comes to the confidential informants,

3    we're going to move past that pretty quickly this

4    week, in terms of what will be disclosed.  I think,

5    with the exception -- as far as we know right now,

6    with the exception of one person, we're likely to

7    disclose the CIs, at a minimum, to counsel, for their

8    eyes only.  And then we'll have to make some

9    decisions about what they can and can't discuss with

10   their clients, or if they petition the Court to be

11   able to make those discussions.  But we'll discuss

12   that when it gets to the CI motions.  That's just a

13   preview.

14          So I think that -- and I think, when it

15   comes to discovery, we'll be moving along there as

16   well, possibly.  So I think a lot of the reasons --

17          THE COURT:  You hear it, too, because

18   you're in the courtroom with me, but there is just

19   this constant refrain that the defendants are not

20   getting the information either that I've ordered;

21   they're requesting, it's been promised.  I know we're

22   going to take these motions one at a time, but do you

23   have a general response that might go to the motion

24   to continue here?

25          MR. CASTELLANO:  I do have some response.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1338

 1    Without looking at each of the individual motions, I
 2    know the DNA evidence has been requested.  We have
 3    submitted a request to the lab, and the lab is
 4    working on the DNA evidence.  I've not received any
 5    indication at this point that they would not be able
 6    to produce some or all of what's been requested.
 7          One of the requests, we have already
 8    disclosed DNA for one of the counts -- I forget which
 9    one -- but there has been a second request.  We've
10    also forwarded that to the lab.  And they seem like
11    they've been willing to accommodate.  And they'll let
12    us know if they can't.
13          We've responded to some of the discovery
14    motions.  On some, we just disagree about what the
15    Court has ordered.  One of them refers to the STIU
16    files.  Some of the files are thick and some are
17    thin.  And as far as I know, we've disclosed them as
18    they were, with the exception of the redactions that
19    were in the files.
20          THE COURT:  So there is a confusion about
21    my order?
22          MR. CASTELLANO:  Yes.  In terms of -- one
23    example is the pen packs.  So, for example, we went
24    back to look at the Court's order, and what we stated
25    in court.  And one of the issues was whether or not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1339

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 86 of 340

```
 1   we had to submit pen packs on all the people
 2   requested.  And I think our response in court was --
 3   it was Mr. Beck -- indicated that we had agreed to
 4   disclose a number of people, including I think
 5   defendants and victims, but there are other people we
 6   had not agreed to disclose.  And that the defense, if
 7   they made a request, and there was a pen pack in
 8   existence at the time, that we would disclose that.
 9   But if there wasn't, then the defense would either
10   pay the copying -- pay the fees for copying the pages
11   as requested.  So we went back and looked at the
12   transcript.  And that's been part of our response.
13   So that's where I think there is some disagreement in
14   terms of what's believed we need to disclose and what
15   we actually have to disclose.
16              THE COURT:  Okay.
17              MR. CASTELLANO:  As I stated, if the Court
18   is willing to move Mr. Gonzalez with the rest of the
19   group, at least for some time -- I know under his
20   constitutional speedy trial time a complex case buys
21   you more time before you have to go to trial.  And,
22   of course, there are other factors for speedy trial.
23   But if we can keep the case together longer, we don't
24   oppose at least some sort of continuance that keeps
25   us well within the constitutional range.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1340

```
 1               THE COURT:  All right.
 2               MR. CASTELLANO:  Other than that, we feel
 3    like we would have to try the case in July, and keep
 4    everybody together.
 5               THE COURT:  Well, if I tell everybody in
 6    the room we're going to try this case on July 10, are
 7    you going to be ready?  Is the Government going to be
 8    ready?
 9               MR. CASTELLANO:  Yes.  It will be
10    difficult, but we'll be ready.
11               THE COURT:  All right.  Thank you, Mr.
12    Castellano.
13               Mr. Benjamin, anybody else want to say
14    anything?  Give you the last word on the motion to
15    continue.
16               MR. BENJAMIN:  Thank you, Your Honor, but I
17    believe I've made all the arguments.
18               THE COURT:  All right.  Anybody else?
19               All right.  Well, I'm going to deny,
20    without prejudice, the motion to continue.  I had a
21    case a few years ago; defendant was sitting up there
22    where Mr. Alonso was sitting, and he said -- it
23    wasn't as big a case, but it had a lot of defendants
24    in this room; probably a 19, 20-defendant case.  He
25    said, "I don't know anybody in this room.  I want my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1341

1   trial."  And I'm not criticizing the Government.  The

2   Government said, Oh, you know, he's just as involved

3   as everybody else.  And it turned out that the

4   Government's interpretation of some coded language

5   was very incorrect.  And he kept saying he wanted a

6   speedy trial.  And if I had not recognized that, and

7   made everybody say, Well, let's put the Government to

8   their proof, then I don't know how long that man

9   would have stayed under charges.

10        And so, like I said, I'm trying not to

11   judge this case in any way on its merits.  So when

12   Ms. Johnson stands up and says Mr. Gonzalez is not

13   part of the SNM Gang, I'm not in a position to say

14   one way or another.  But it concerns me that I need

15   to get her case to a trial.

16        I'm not inclined to give a de facto

17   severance for the reasons I've already stated.  So

18   I'm going to deny the request.  If y'all want to

19   continue to talk and try to address some of the

20   concerns that Ms. Johnson has brought on behalf of

21   Mr. Gonzalez, then we can certainly relook at this

22   down the road.  But I think at the present time I

23   need to take her concerns of getting her client to

24   trial and demonstrate his innocence of these charges,

25   I think seems to me paramount to the concerns about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1342

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9343

1   getting this case ready for trial.  So I'll deny the

2   motion without prejudice, if we need to renew it down

3   the road.

4           All right.  Let me get my documents in

5   order so we can take up the next motion.  All right.

6   This is the ex parte opposed motion -- I'm not quite

7   sure what to do with all that -- for emergency

8   hearing and expedited discovery regarding the

9   clients' and families' safety.  And I think the next

10  motion is probably about the same, sealed opposed

11  motion for emergency hearing and expedited discovery

12  regarding clients and family safety.

13          I suggest we take these together.  But let

14  me just say this:  I mean, I say this lightly.  I'm

15  having a little hard time taking these two motions

16  seriously, because I don't know what you want me to

17  do.  I really just don't know what the defendants

18  want me to do.  So, you know, I mean, there are

19  certain things a federal court can do.  It can

20  resolve disputes and things like that.  But I really

21  just don't know if this is really much of a

22  justiciable controversy and what I can do about it.

23  So, you know, I'll certainly listen.  I'll be

24  patient.  But I guess I'm skeptical I can do

25  anything.  I can't solve all the problems.  I mean,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1343

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 90 of 344

```
 1    if we've got one set of defendants wanting to do harm
 2    to another set of defendants, then I don't know what
 3    to do about that.  I don't know of anything I can do
 4    about that.  The marshals, I think, have kept
 5    everybody safe for months after months, so they're
 6    doing their job.  I just don't know what needs to be
 7    done and can be done.
 8            Ms. Sirignano, it's your motion, if you or
 9    Mr. Adams want to argue in support of it.
10            MS. SIRIGNANO:  Your Honor, I'm going to
11    defer to Team Troup, who has worked up argument on
12    this motion.
13            THE COURT:  Okay.  Mr. Burke.
14            MR. BURKE:  Your Honor, I think the primary
15    reason that team Troup joined this motion is we
16    needed information.  It's true that the specific
17    relief that we requested is amorphous, but we needed
18    information, because we had this rather alarming
19    document sent over to us, and we didn't really
20    understand the full scope of it.
21            And I think it would be helpful for the
22    Court to hear the testimony of FBI Agent Acee
23    regarding this, because I think it fleshes out the
24    facts a bit, and then I think we can all be at ease a
25    little bit actually.  But that was --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            THE COURT:  But is that really what a court
 2    does, make everybody at ease?
 3            MR. BURKE:  Well, we needed to ask somebody
 4    for discovery.
 5            THE COURT:  Why do you need discovery?
 6    Does it have anything to do with this case?
 7            MR. BURKE:  Because my client was
 8    threatened with death.
 9            THE COURT:  And how does that relate to
10    this case?  Tell me how that relates to what a
11    federal court does with this case?
12            MR. BURKE:  Well, I think actually the
13    prosecution acted responsibly by giving us this
14    information.  But we needed to then get more
15    information.  For example, Your Honor --
16            THE COURT:  Is this, though, the mechanism?
17    Where we're having a hearing on getting ready for a
18    trial, is this the mechanism by which we do that?
19            MR. BURKE:  We thought so, Judge.
20            THE COURT:  I didn't see a single case
21    cited in any of the briefing.  So what basis do you
22    have for saying this is an appropriate forum for
23    dealing with that?
24            MR. BURKE:  Well, all of these defendants
25    are under your custody and control, in effect, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1345

```
 1    Honor.  And you have supervisory power over how --
 2              THE COURT:  I didn't see any cases cited on
 3    that.
 4              I noticed that y'all read my opinion in Mr.
 5    Villa's case, where I went through carefully where I
 6    thought my powers were and where they weren't.  But
 7    do you really have any cases that say just what you
 8    say you just said?
 9              MR. BURKE:  I think you're talking about
10    the Folse opinion, which we did read, and it was read
11    in conjunction with the tablets, Your Honor.  And
12    there, we cited paragraph 37, which talks about the
13    Court's ability to exercise some control when it
14    relates to the defense of the case.  And I believe
15    that the safety of the clients are --
16              THE COURT:  Well, but that's a pretty broad
17    statement.  If you're just saying that anything
18    that's having to do with the safety of the defendants
19    relates to their ability to get good representation.
20    I guess I think that's too tenuous.
21              MR. BURKE:  Is the Court not interested in
22    getting the information fleshed out regarding the hit
23    list?  Because I believe it actually is some
24    clarification and comfort that might allow us to move
25    forward with peace of mind.  And I know the next
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1346

1    question is:  Is the Court supposed to give peace of

2    mind?  But I thought it might be helpful to all of

3    us.  Because it was a matter of some concern, Your

4    Honor, and we went to you, because you're the judge.

5              THE COURT:  Isn't it a little bit just

6    ancient history now.

7              MR. BURKE:  I believe that's what Agent

8    Acee would tell us.

9              THE COURT:  Well, but how about you, Mr.

10   Burke?  Isn't it just ancient history, just another

11   blip in this case?

12             MR. BURKE:  It's not totally ancient

13   history.

14             THE COURT:  What would we use the

15   information for?

16             MR. BURKE:  If, for example, this

17   information was a hit list crafted by a Government

18   informant, and it turns out to be false information,

19   that's Brady material.  That is exculpatory because

20   it reflects on the lack of credibility of a person

21   who is providing information to the FBI.  That would

22   be relevant.  It would be exculpatory.

23             THE COURT:  All right.  Anything else you

24   wanted to say on your motion, Mr. Burke?

25             MR. BURKE:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1347

```
 1            THE COURT:  All right.  Thank you, Mr.
 2   Burke.
 3            Who else?  Anyone else want to speak on
 4   these motions, Mr. Davis?
 5            MR. DAVIS:  Thank you, Judge.
 6            I know I did a joinder.  Let me give you a
 7   little bit of history so the Court will understand, I
 8   think, why I joined in the concerns I think that the
 9   defendants have about the hit list.  When the hit
10   list first was provided to defense counsel, Mr.
11   Herrera's name was not on that list, so it didn't
12   really pertain to us.
13            THE COURT:  And I'm not minimizing why
14   people would be concerned about it.
15            MR. DAVIS:  Yes.
16            THE COURT:  I get that.  Nobody wants to be
17   on a hit list.
18            MR. DAVIS:  Well, it's not so much that.
19   It's the Government's use of a document that at some
20   point they realize was false, and yet there is some
21   indication that they were using it to try to convince
22   witnesses in the case or pressure witnesses in the
23   case that, in fact, they should cooperate with the
24   Government.  There has been a general feeling among
25   the defense team that the Government has utilized
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1348

```
 1    their resources to pressure witnesses.

 2            THE COURT:  Let me ask you what your

 3    thoughts are.  I mean, I've got a little bit of a

 4    schizophrenic view from the defendants.  Some thought

 5    that the Government acted responsibly by sending the

 6    list.  Other people were highly critical of the way

 7    the Government has done the list.  What's your

 8    thoughts?

 9            MR. DAVIS:  Well, my thought is I

10    appreciate them sending the list.  And I commend them

11    for sending the list.

12            THE COURT:  You'd rather have it than not

13    have it.

14            MR. DAVIS:  My problem is the way they used

15    the list.  They were taking that list and showing it,

16    for example, to my client's mother saying, "Your son

17    authored this list," when they knew he had not

18    authored the list, and that somehow she should now

19    cooperate with the Government.

20            THE COURT:  Here's my problem.  I think

21    this was playing a little bit into what I was talking

22    about with Mr. Burke.  They get to do an

23    investigation.  And we know the Government does some

24    investigations, and they don't always tell the truth,

25    right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 96

1           MR. DAVIS:  The Government doesn't tell the

2     truth in their investigations?

3           THE COURT:  Sometimes.  I've sat here long

4     enough to see the agent will say that is not a

5     correct statement.  So sometimes they do that, right?

6           MR. DAVIS:  Well, I don't think they're

7     supposed to deliberately lie and provide false

8     information.

9           THE COURT:  Really?  Okay.

10          MR. DAVIS:  I'm not saying that they don't.

11    But I'm saying that they're not supposed to.

12          THE COURT:  Well, where is that written?

13          MR. DAVIS:  I don't know.  That's maybe

14    just the way I was brought up.  I just didn't think

15    the Government was supposed to do that.

16          THE COURT:  Maybe you're right, given the

17    lights just went out.  That's a signal for me.

18          MR. DAVIS:  I should probably sit down, I

19    guess, Judge.  But I think that's the gravamen of our

20    position, that was clear that Mr. Herrera never

21    authored this document.  And it became apparent from

22    the Government, informal discussions with the

23    Government, that they were asserting that he was the

24    author of this ridiculous hit list that's got his

25    mother and his brother on there.  And it was evident

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    early on from their investigation that he did not

2    author this, and yet they were presenting it to

3    witnesses indicating that he had tried to pressure

4    witnesses.  And we believe that is just a pattern of

5    things that the Government has done to pressure

6    witnesses, defendants, otherwise divide the defense

7    team in the case, things of that nature.  So that's

8    why I raised the issue, Judge.  Thank you.

9              THE COURT:  I understand.  Thank you, Mr.

10   Davis.

11             Anyone else?  All right.  Who is going to

12   respond?  Ms. Armijo -- oh, we've got somebody in the

13   back there.

14             THE COURT:  All right.  Mr. Esquibel?

15             MR. ESQUIBEL:  Thank you, Your Honor.

16             On behalf of Mr. Garduno, part of the

17   reason why we joined this is that this information

18   becomes worthy of us investigating further, and

19   needing for our investigation, as there has been

20   other instances in discovery -- there is two phone

21   calls back in September of 2015, where information

22   was given to Special Agent Acee about my client being

23   on a hit list.

24             Now, for our purposes, I think this is

25   important as part of our defense to understand what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1351

 1    they do with this information once they get it.

 2              In one of the September calls, there is

 3    conversation, I guess you could say, between the CI

 4    and Special Agent Acee.  In another one, it's brought

 5    up, and then dismissed by Special Agent Acee.  Where

 6    this becomes important to us is how they investigate

 7    and how they handle the investigation of these

 8    things.  Why is it that some of this information gets

 9    investigated, and why is it that others is ignored:

10    And we have this information where what the

11    Government does --

12              THE COURT:  But you understand that the

13    Government gets to do that.  That's just their

14    discretion.  They get to investigate this and not

15    investigate that, right?

16              MR. ESQUIBEL:  And that's understood.  And

17    then we get the ability to call them on their

18    lackluster --

19              THE COURT:  Really?

20              MR. ESQUIBEL:  I think at trial that

21    becomes our ability to do that.  Because if they're

22    claiming that these individuals are dangerous or that

23    this is something that is so important that it has to

24    be brought before this Court, and then they don't

25    investigate, we need the ability to call them out on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that and dig deeper into it.

 2             And when we have these things, what happens

 3    is that the Government gets this information from an

 4    informant, and then they go forward, and you don't

 5    know if a month from now these are going to turn into

 6    more charges.

 7             And I'll give the Court the example --

 8             THE COURT:  I will bet you we're not going

 9    to get more charges in this case, right?

10             MR. ESQUIBEL:  1613?

11             THE COURT:  DeLeon.  They may come up with

12    another case, right?  But as far as this case, I bet

13    it's frozen.

14             MR. ESQUIBEL:  I wouldn't put anything past

15    the Government, Your Honor.

16             THE COURT:  Well, you and I got to make

17    good bets, right?  We've got to figure out -- use our

18    brains as to what's going to happen.  Probably in

19    this case there is not going to be any more charges.

20             MR. ESQUIBEL:  We would hope not, Your

21    Honor.  But everybody loves a long shot, so --

22             THE COURT:  You don't want more charges,

23    right?

24             MR. ESQUIBEL:  No, Your Honor.  But what we

25    want to do is protect from when there are CIs who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1353

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100 1354

```
 1    come forward and make a statement, and then every
 2    other defendant is somehow harmed by it, such as the
 3    tablet issue that we're going to have later, such as
 4    new overt acts that were lodged against Mr. Garduno.
 5    And on top of that, finding out when we actually need
 6    to be concerned with the safety of our own clients,
 7    when the Government may not be.
 8              And those are all things that we need to
 9    investigate, and we need to look into further.  And I
10    think that a little leeway to be able to question and
11    delve into these issues should be allowed in these
12    situations.  They're unprecedented, we understand
13    that.  And there's nothing there.  But sometimes you
14    have to go against that to try to figure out what's
15    best for the persons -- our defendants and their
16    safety.
17              THE COURT:  All right.  Thank you, Mr.
18    Esquibel.
19              Anyone else?  Any of the other defendants
20    want to speak on this?
21              All right.  Ms. Armijo, do you want to put
22    Mr. Acee up here and let him put everybody's mind at
23    peace?
24              MS. ARMIJO:  No, Your Honor.  We don't feel
25    that that's necessary in this case, because I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1354

1    the Court is correct.  There is no judicial

2    controversy in this case.  There is no basis for any

3    relief.  And we have --

4                  THE COURT:  Let me ask you:  Have you

5    thought through the suggestion that there may be some

6    Brady here -- material -- that there may be something

7    that they could use against these CIs or something

8    like that?  Because you know the evidence.  Have you

9    put your foot in the shoes of these defendants and

10   see if there is any way they could use this?

11                 MS. ARMIJO:  Well, it's not a Government

12   CHS in this case, so --

13                 THE COURT:  No.  But if you've got some

14   information that's just -- that's Brady material,

15   however it could be used by the defendants, have you

16   thought about that?

17                 MS. ARMIJO:  I have.  And we can think

18   about it a little bit more, but the situation was one

19   that we got information, and we notified -- whenever

20   we get this information, we notify the US Marshal

21   Service so they're aware of it.  And there was an

22   investigation that was immediately launched into it.

23   There was additional investigative steps, which we

24   would not like to disclose for the reason that, in

25   the future, if there are these types of threats, we

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1355

```
 1    don't want people in this room to know what

 2    investigative steps we took.

 3            But the FBI investigated it, and they

 4    determined that it was not a valid threat.  And they

 5    did notify people as necessary on the outside.  The

 6    people that were on the list that are in this room.

 7    The US Marshal's Office obviously takes care of them.

 8    But we determined that it was not a valid threat.  We

 9    have informed people that.  They've been provided

10    with the list itself in our response.

11            THE COURT:  What do you think -- tell me

12    what you think the present situation is.  Without

13    revealing any sort of investigative details or

14    things, tell me what you think of this list now.

15    What's your thoughts about it?

16            MS. ARMIJO:  This list, we think it was

17    fake.  We think that it's not a Government CHS in

18    this investigation.  But it was somebody that was,

19    for whatever reason --

20            THE COURT:  Help me a little bit.  When you

21    use the word "Government CHS," what's a Government

22    CHS versus a nongovernment?

23            MS. ARMIJO:  What I mean is it's not a CHS

24    in this case, in the SNM case.

25            THE COURT:  Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1356

1           MS. ARMIJO:  It was somebody that wanted to

2     be a CHS for the United States, and providing

3     information, but it was not somebody that we have

4     involved in this case.

5           THE COURT:  So what you think it was is

6     somebody who wanted to get some benefit from

7     approaching the Government with a hit list, and so

8     they made this list up?

9           MS. ARMIJO:  Yes.

10          THE COURT:  Okay.  And it's not one of the

11    current CHSs?

12          MS. ARMIJO:  No.

13          THE COURT:  Okay.

14          MS. ARMIJO:  No, it's not.  And so the FBI

15    used special techniques to investigate it, and

16    determined that it was not a valid hit list.  And so

17    I think that it's just -- as to Mr. --

18          THE COURT:  So it's rearview mirror for

19    you?

20          MS. ARMIJO:  It is.  And I think it's just

21    a fishing expedition for them to try and get Agent

22    Acee on the stand to try and find out information.

23    And we just don't need to go there at this point.

24          THE COURT:  If he got on the stand, is that

25    basically what he would say as well?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1357

```
 1                    MS. ARMIJO:  Yes.
 2                    THE COURT:  You're making a proffer as to
 3      what he would say?
 4                    MS. ARMIJO:  Yes, Your Honor.
 5                    THE COURT:  Anything else you can say that
 6      would give comfort to these defendants and their
 7      families about this hit list?
 8                    MS. ARMIJO:  It's not a valid hit list.
 9      And the FBI investigated it fully.
10                    THE COURT:  And it took you a while to
11      figure that out?
12                    MS. ARMIJO:  Well, I don't know about "a
13      while."  When we got the information, we --
14                    THE COURT:  When you sent it over, you
15      probably didn't know?
16                    MS. ARMIJO:  When we sent it over, we were
17      notifying them, but we were still in the
18      investigative stage.  I believe that at the time I
19      filed my response, I indicate there that we were
20      doubting its authenticity.  And after filing my
21      response to their motion, we pretty much don't
22      believe it's a valid list.  But even in my response I
23      indicate that.  And the actual list itself was
24      provided.
25                    THE COURT:  Okay.  All right.  Anything
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   else on these two motions?
 2            MS. ARMIJO:  No, Your Honor.
 3            THE COURT:  All right.  Thank you, Ms.
 4   Armijo.
 5            Mr. Burke, what else?  What do you want to
 6   do?  I know you'd like to get Mr. Acee up here,
 7   and -- but what else do you really need?
 8            MR. BURKE:  No.  Actually, Your Honor, I
 9   very much appreciate your question and answer with
10   the prosecutor.  It was interesting that she
11   acknowledged that people will make things up in order
12   to get favors.  That's the kind of thing that we look
13   for with CHSs.  And I understand the distinction that
14   this particular CHS, the Government doesn't intend to
15   use, or is now saying it's not a Government CHS.
16   That's an important and helpful clarification for us.
17   And it was also important to learn that when --
18            THE COURT:  It kind of reduces the chance
19   that we've got any Brady material here, doesn't it?
20            MR. BURKE:  It does.  But I will say -- and
21   I understand the Court's position very well.  What
22   are you supposed to do?  But it would have been nice
23   to have this information on March 23, as opposed to
24   May.
25            THE COURT:  Well, if I understand what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106

 1    they're saying, they're saying they just didn't know

 2    right that moment when they sent it over.  They were

 3    still doing their investigation.  I don't know.  It's

 4    hard to figure out what to do when you have got one

 5    of these things floating around.

 6              MR. BURKE:  Things would have sped up if

 7    Your Honor was involved.

 8              THE COURT:  I understand.

 9              MR. BURKE:  Thank you, Your Honor.

10              THE COURT:  All right.  Thank you, Mr.

11    Burke.

12              All right.  Unless anybody has anything

13    else they want to say on either one of these motions,

14    the Garcia motion or -- I think Garcia filed it in

15    all the cases -- and I'm going to deny those motions.

16              All right.  Let's talk about the tablets.

17    We'll do this in the context of Mr. Perez' motion.

18    But let me make a few comments.  Last week in

19    Mr. Garcia's case, I think the Government has

20    indicated -- and probably everybody knows this --

21    indicated they don't think the tablets are a workable

22    system anymore.  So I'll let the Government put it in

23    their own words, but I think that was basically what

24    they were saying.

25              So what do we do?  Well, I encouraged the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1360

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107

```
 1   Government at that time, before we got together
 2   today, to approach the facilities to see if we could
 3   start storing large amounts of information at the
 4   facilities.  So we'll see what they've learned.  But
 5   it seems to me we've just got to do it old school.
 6   The tablets predate me.  That was an agreement -- and
 7   I've read the transcript, so I do think I'm fair in
 8   saying it was an agreement -- between the defendants
 9   and the Government to use these tablets to try to
10   address some concerns.
11          I think that a lot of concerns about the
12   CIs, some of the confidential information is
13   beginning to wane as we go on.  My experience in this
14   case is that people know a tremendous amount about
15   who the people are, who the CIs are.  There is not a
16   whole lot of secrets left.
17          And so I'm inclined to push the parties,
18   just to figure out how to get these documents in the
19   facilities and the defendants can review them.
20          But I'm open to suggestions, if people have
21   got a better way to do it.  But it seems like the
22   tablets are not a workable solution anymore.  You
23   know, I know that not all the guys in here or
24   defendants in here were responsible for the problem
25   with the tablets that caused the marshals and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1361

 1    prison system to get concerned about these floating

 2    around.  But come on, guys, you've got to help me out

 3    here.  I'm trying to get these materials into your

 4    facilities.  You did something that Dell hadn't even

 5    figured out how to do.  So help me out with this.

 6            All right.  Mr. Villa, those are my

 7    thoughts.  Just got to go old school here.  But I'm

 8    open to suggestions.

 9            MR. VILLA:  And, Your Honor, with all due

10    respect, I think the person/persons you need to be

11    speaking to aren't in the room today.  Because the

12    person that figured this out or caused this issue was

13    one of the confidential sources, confidential

14    cooperators.

15            THE COURT:  You may be right, but I don't

16    know.

17            MR. VILLA:  Well, I think that was the

18    reason the Court put in place the protective order,

19    which set out very clearly --

20            THE COURT:  Well, when I redid what Judge

21    Gonzales did, I can tell you I wasn't thinking of

22    this at all.

23            MR. VILLA:  And, Your Honor, I understand

24    that.  But my point is that there has to be some

25    individualized suspicion here.  There has to be some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1362

```
 1    issue --

 2              THE COURT:  Well, here's the problem is, I

 3    think you're blaming it all on this table over here

 4    or on the Court.  The problem is I don't think the

 5    parties that are in -- the people that are making

 6    this decision about the tablets are really people I

 7    can tell them to do anything about it.  It's the

 8    marshals and the Corrections Department.

 9              MR. VILLA:  And, Your Honor, I'm not --

10              THE COURT:  So, I mean, you know, I don't

11    think that I can tell the Corrections Department and

12    the marshals to make individualized determinations.

13    They've got to run their facilities and do their job.

14    And so I guess I'm not sure how -- that may be a

15    great idea to have individualized determinations, but

16    I don't think it's an option for us.

17              MR. VILLA:  Well, Your Honor, I'm not sure

18    there is a better solution, whether we go old school

19    with paper or laptops or computers.  I mean,

20    regardless of the situation, if some cooperating

21    witness or any one of these defendants, as far as I

22    know have all complied with the Court's orders, does

23    something, does that mean that everybody loses their

24    paper, everybody loses their computer?  I mean,

25    that's the issue that --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Well, if I've got the marshals

2     and I got the prison system saying they're not going

3     to allow these tablets in -- and I think that's the

4     situation.

5          MR. VILLA:  I don't think that is, Your

6     Honor.  And I may be wrong, I may be missing some

7     information.

8          THE COURT:  And I don't think this is Ms.

9     Armijo over here telling us that she's got any

10    control over this.  If she does, then maybe you're

11    right.  But assume with me for a second she doesn't.

12    The people sitting over at this table cannot tell the

13    marshals and the prison systems, the detention

14    centers, what to do.

15          Now, tell me what we do.  Just humor me,

16    and assume that's the situation.

17          MR. VILLA:  Well, Your Honor, there has to

18    be some give.  I mean, let's say the marshals and the

19    detention center say:  They can't have anything in

20    here, period, and we don't care what the Court or

21    anybody else has to say about that.

22          So you have to take that argument to its

23    logical conclusion, whether it's laptops, tablets, or

24    paper, if the detention center says:  You can't bring

25    it in here, sorry; then we need to know that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1364

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 111365

 1    Because I was never under the impression, from what's

 2    been filed, at least in DeLeon -- I don't have the

 3    information on the other cases -- that that is the

 4    issue.  The issue is these tablets, which we were

 5    told were going to be secured may not be secured, and

 6    we need to think about a solution.  But why the

 7    tablets were seized, whose call it is to let the

 8    tablets back in, none of that information has ever

 9    been -- have I ever been privy to.

10          My understanding was that based on the

11    notice that was filed by the Government, which

12    basically indicated that a cooperating witness

13    figured out a way around the Wi-Fi issue, that the

14    tablets were all seized.  Not that the tablets that

15    any of our clients had had actually done the same

16    thing; that they had actually taken them and gotten

17    their way around the Wi-Fi issue, just that it is a

18    possibility.

19          And now we're hearing that it's a

20    possibility that Dell, or Microsoft, no one else can

21    address.  But that's a separate issue of when and

22    under what circumstances is it appropriate to seize

23    tablets or paper or laptops, and whose call is that,

24    right?

25          So the way I've looked at this issue is one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1365

 1    person figured out a loophole, and therefore, they

 2    seized all the tablets.  And the way I read the

 3    protective order is an individual's tablet has to

 4    have some indicia of violating a protective order,

 5    has contraband, is broken, is being used improperly,

 6    before that particular tablet can be seized.  And

 7    that's going to be an issue in the future no matter

 8    what we decide, whether we decide it's paper or it's

 9    computers, or what it is.  We need to have a

10    understanding about when the Government can do that.

11            THE COURT:  Well, I think probably we all

12    need to write a protective order that actually is

13    effective against third parties.  I mean, we can come

14    up with a protective order that binds the Government,

15    that the Court says it will enforce, the defendants

16    agree to.  But the problem is we don't -- we have

17    limited control over prisons and detention facilities

18    and the US Marshal.  That's where I think we're

19    running into some issues.

20            MR. VILLA:  That's right.  And I may be

21    missing a big chunk of information.  But, for

22    instance, Mr. Perez goes to the Torrance County

23    Detention Facility.  Here in the courtroom today is

24    Harlan Anderson, the head of the Security Threat

25    Group for Torrance County.  And I've asked him, you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 113

1    know, by way of proffer:  He says there is Wi-Fi at

2    the facility, but it's secured.  There is no

3    unsecured Wi-Fi.  So if any one of these --

4              THE COURT:  Here's the problem that they

5    told me last week with Mr. Garcia is:  It doesn't

6    matter whether there is Wi-Fi.  Somebody can throw a

7    phone over, it can be near a place; that's what

8    they're telling me.  So that's the reason that the

9    marshals and the prison system are doing this.  I

10   mean, I agree with you, they don't have Wi-Fi there.

11   But the problem is that, once they have a device that

12   can be used, that that's a problem.  I mean, that's

13   the reason they don't let cellphones in.  Even though

14   they don't have Wi-Fi, they can still get a hot spot

15   on a phone and transmit.  So the problem is -- I read

16   all that about, you know, there is not Wi-Fi, and I

17   understand that, and agree with that.  But that's --

18   the problem is that we all know there can be hot

19   spots created by all sorts of things.  And that's the

20   reason they're doing what they're doing.

21             MR. VILLA:  Well, and the same cellular

22   devices that would create a hot spot could just be

23   used by anybody in the facility to send messages,

24   take a picture of the discovery, send it to whoever

25   they need to.  It doesn't fix the problem, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1367

 1    Honor.  There is no way to keep a detention center

 2    cellphone free.  It's sort of an endless struggle

 3    that they have.

 4           So whatever our solution is, let's say we

 5    switch to paper, we switch to laptops -- and I've

 6    used laptops with my clients at Torrance County

 7    Detention Facility before, without having to go

 8    through the court -- but whatever the solution is, if

 9    a cooperating witness and Mr. Acee have an afternoon

10    together, and they have figured out a way that they

11    could smuggle in a phone and take a picture of some

12    really important discovery, or some discovery that

13    names a cooperating witness, and send that to, you

14    know, everybody that they can, because they have a

15    cellphone, and you can basically broadcast it to the

16    whole world, does that mean we lose all our paper?

17           THE COURT:  Well, but you understand -- I

18    mean, this was one of the issues that we had in

19    Garcia last week is -- they've got rules against

20    having cellphones in the cells.  And I think there is

21    laws and regulations on that.  So they do prohibit

22    those.

23           MR. VILLA:  But those same rules defeat the

24    argument that these tablets can hook on to one of

25    those cellphones that would be illegal and then be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1368

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115369

```
 1   able to transmit.
 2            THE COURT:  I guess I'm missing the point.
 3   If they don't allow cellphones -- I mean, I can't
 4   make a rule based upon somebody illegally having a
 5   phone, can I?
 6            MR. VILLA:  No.  And I think that's my
 7   point.
 8            THE COURT:  So I guess I'm not tracking
 9   here.
10            MR. VILLA:  Well, my point is:  If you have
11   a tablet, and you don't have unsecured Wi-Fi, which
12   might be available at Sandoval County because of the
13   nearby businesses, the only other way to get Wi-Fi
14   would be to hack the password that the facility uses,
15   or have a device, which would be a cellphone, that
16   would create a hot spot.  And the facility has
17   rules -- I'm sure they have rules related to the
18   security of their Wi-Fi.  And, as the Court points
19   out, they have rules prohibiting cellphones.  So the
20   tablets, as long as the facility is doing its job
21   enforcing their rules -- which we assume they are --
22   are not going to be able to be used for Wi-Fi.  The
23   other piece of that, so they can't hookup to a phone,
24   because the phone would be illegal, and they can't
25   get into the Wi-Fi because would be illegal.  And we,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116370

```
 1   as defense counsel and the correction officers and

 2   others, can -- there is a way they can keep an eye on

 3   that, monitor that, without blowing up this whole

 4   deal that we've all worked so hard to get in place.

 5           And, you know, I think my understanding is,

 6   if someone uses one of these tablets and gets around

 7   the security procedures, that it essentially deletes

 8   all of the discovery.  So if one of the defendants

 9   who has an interest in viewing their discovery --

10   unlike perhaps a cooperating witness -- decides I'm

11   going to figure this thing out, and I'm going to get

12   capability to connect to Wi-Fi or to a hot spot,

13   they're going to lose all their discovery so they're

14   doing themselves a disservice.

15           THE COURT:  So if I understand what you're

16   saying is it's just not a big problem, right?

17           MR. VILLA:  That's my position, that we can

18   give these back to the defendants.  And certainly --

19           THE COURT:  So you want to make it work;

20   you want the tablets back and continue the tablet

21   system?

22           MR. VILLA:  I want that, Your Honor.  And I

23   think that a big issue with paper, or whatever we do

24   if we blow up the tablet system, is the audio, and to

25   a lesser extent video, that we have in the discovery.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    There is, just for Mr. Perez alone, dozens of audio
 2    recordings that he needs to listen to.  We've learned
 3    this morning that we'll be tried alongside the counts
 4    related to Gregg Marcantel.  And there are thousands
 5    of audio recordings there that I think Mr. Perez, if
 6    he's going to sit through that trial, is entitled to
 7    listen to along with all the other defendants.  There
 8    has got to be a mechanism for that.  And whatever we
 9    use, if it's a laptop, a tablet, some device, and if
10    there is some way that it could connect to some
11    illegal cellphone, we're going to be in this same
12    box, the way I see it.
13         I think you give the tablets back.  You
14    keep the procedures in place so that defense counsel,
15    the corrections officers, the facilities can do what
16    they need to do to make sure that the systems have
17    not been compromised, and we march on.
18         Because I don't know where you're going to
19    put 100,000 pages of discovery per defendant.  I
20    don't know where you're going to put --
21         THE COURT:  Is it 100?  I thought it was
22    50.  Is it 100?
23         MR. VILLA:  Well, I may be overstating
24    that, Your Honor.  I don't have the current figures
25    at my fingertips.  But let's assume it's 50,000.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
 1    These cells won't fit 50,000 boxes of discovery.  And
 2    each defendant would be entitled to that.  And then
 3    they need to listen to their audio recordings, video
 4    recordings.  There are photographs and other digital
 5    media that they're entitled to review as part of the
 6    discovery.
 7            You know, I read this weekend in the Wall
 8    Street Journal that El Chapo has a laptop, all right?
 9    So, I mean, if the Government can figure that out, I
10    think they could figure out this case.  You know, I
11    mean, I know that there are -- the other remedies
12    that are out there are going to take a long time.
13            My memory of one of the delays of the
14    tablets was the Department of Corrections had them
15    and were trying to disable these security features.
16    They did that.  And it's my understanding there is
17    essentially a check-in place.  You get around the
18    security feature, you lose all your discovery; not to
19    mention it's going -- your tablet is now going to be
20    subject to seizure.  If Mr. Perez decides to do that,
21    then maybe he isn't entitled to his discovery.  But
22    until he does that it shouldn't be taken away,
23    especially on the basis that the Government has
24    stated in the notice of cause.  You know, if you want
25    defense counsel to routinely check it and report to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1372

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119 373

1   the Court that the tablets have not been overwritten,

2   that the discovery is all still there, you know,

3   maybe we can add an extra layer of protection, amend

4   the protective order in some small fashion.  I mean,

5   we're all officers of the court.

6            You know, it's not like our clients are

7   going to be put back into jail if they decide to do

8   this.  They're just going to lose their right to

9   discovery, and that's going to be their problem.  But

10  I don't think we need to go nuclear on this.

11           THE COURT:  All right.  I know that some

12  other folks joined this motion.  But do you have a

13  sense?  Is that where all the defendants are?  They

14  just want the laptop back and go back to where we

15  are?  I didn't have as good a feeling from when I was

16  talking to Mr. Garcia last week that that was

17  necessarily where he was.  It may be.

18           MR. VILLA:  And I'm not certain.  I think

19  there was some sense that the return of the tablets,

20  that the ship had sailed.  And, frankly, I just

21  wasn't willing to give up on that.  So I'm not sure

22  where the rest of my colleagues are.  But I certainly

23  think that they -- you know, we signed on for the

24  tablets.  I'm sure that they would agree that that's

25  an easier option, especially those that may be going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1373

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120

```
 1   to trial sooner rather than later, than trying to
 2   think of something new.  But I guess I'll let them
 3   speak.
 4            THE COURT:  All right.  I may have
 5   questions for you a little bit later, Mr. Villa.  But
 6   I think that's it.  Thank you, Mr. Villa.
 7            Ms. Sirignano.
 8            MS. SIRIGNANO:  Thank you, Your Honor.
 9            Your Honor, while I don't disagree with my
10   colleague, Mr. Villa, we just need to get this
11   discovery back in the hands of our clients.  And I
12   think a proposal from the Government this morning was
13   to have a computer, possibly a laptop with a hard
14   drive, in each facility, so they're able to access
15   the discovery.
16            My proposal would be -- and I talked to Mr.
17   Lowry about it -- that each client, instead of using
18   CJA funds to copy 50,000 or more pages of documents,
19   that CJA funds be used to purchase a laptop computer
20   for each client, that the marshals and the Department
21   of Corrections and the warden of each facility --
22            THE COURT:  We probably aren't going to
23   purchase, the federal government, laptops.
24            MS. SIRIGNANO:  So --
25            THE COURT:  So what's the next proposal?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1374

 1              MS. SIRIGNANO:  Well, I guess if CJA funds

 2      can't be used, then I'm willing to shell out $300 or

 3      $400 myself to get the discovery back in my client's

 4      hands, Your Honor.  To me, it would seem that it

 5      would be -- we would incur more funds copying 50,000

 6      pages of discovery in hard form, and they wouldn't

 7      have access to it all at once, as each facility, as

 8      you know, has restrictions on how many pages each

 9      client can have at each time.  And so my proposal

10      would be to allow the client to have a laptop that

11      has no Wi-Fi capability whatsoever, and get this

12      discovery back to our clients right away.

13              Thank you.

14              THE COURT:  Well, I just -- I mean, I can

15      check, but I just don't think it's probably going to

16      be realistic for the federal government to buy 30 or

17      40 laptops.  I just -- I can't see that.  But I don't

18      mind checking on it.

19              Mr. Lowry.  So I think I'm going to have to

20      have another proposal from the defendants as to what

21      they want to do.

22              MR. LOWRY:  Your Honor, I just wanted to

23      clarify, and I join both my colleagues.  My client,

24      Mr. Baca, has had nothing to do with this data

25      breach, security breach, whatsoever.  And in fact, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1375

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22376

```
1    think this issue, frankly, dovetails with the motion
2    to continue, in the sense that our clients have a due
3    process right to review the discovery in this case.
4    And my client has really only had a functional tablet
5    for about four to five months.  And now that's been
6    stripped away from him.
7             And, you know, there is quite a high
8    utility in our clients having the discovery in this
9    case.  As we all know, it's an exceedingly complex
10   case.  And we rely mightily on our clients to help us
11   sift through this material.
12            I'm going to second Ms. Sirignano's
13   comment.  If I can't get the Government to compromise
14   to what I think is a just and reasonable solution in
15   a laptop, I would certainly expend my firm's own
16   funds.  And what I want to do here -- and I've looked
17   into this during these conversations -- is,
18   unfortunately, what you need is a bit of a jalopy
19   laptop, one that doesn't have Wi-Fi capability, one
20   that doesn't have an internet camera, one that
21   doesn't have the features that the Government is
22   concerned about individuals using or accessing in
23   facilities.
24            And I don't doubt the sincerity of that
25   concern.  But what I'm trying to do is work a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1376

1    solution here.  And the solution really isn't going

2    to be:  Give our clients five to ten banker's boxes

3    of material in their cell.  I mean, the facilities

4    aren't going to agree to that.  But I think, if we

5    have a jalopy laptop, with a stand-alone hard drive,

6    we could be right back where we were.

7           And I hear the Court's concerns, "I can't

8    order the facilities to do this.  I don't want to

9    order the marshals to do this."  But both the

10   facilities and the marshals have already demonstrated

11   a willingness to allow devices in the cells.  Their

12   only concern is internet capability and the

13   photography capability.  And if defense teams work a

14   solution that eliminates that threat 100 percent from

15   this device, I don't see why that isn't a viable

16   solution.

17           THE COURT:  Well, but -- those are all sort

18   of reasonable things, but have you sat down with the

19   marshals and sat down with the Corrections

20   Department, and say:  Can we do this for our clients?

21           MR. LOWRY:  I'm happy to do that, Your

22   Honor.  In fact, I'm glad you brought that up.

23   Because when the U.S. Attorneys filed their statement

24   of cause for why these laptops were seized, they sent

25   out an email to the various defendants saying:  We'd

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124

```
 1    love to sit down with you and examine your client's
 2    laptop.  And I responded immediately.  And I said,
 3    "Fine, let's do that this afternoon.
 4              "Oh, wait, we didn't mean today.
 5              "Let's do it tomorrow morning.
 6              "Well, we can't really do it tomorrow
 7    morning.
 8              "Well, let's do it next week."
 9              And I still haven't received my invitation
10    to come in and talk to the United States or the
11    marshals.
12              So it's not that I haven't tried, Your
13    Honor.  I'm more than happy to continue that
14    conversation with the appropriate entities and
15    authorities.  But I want to emphasize -- emphatically
16    so -- that my client, Mr. Baca, hasn't ever tampered
17    with his tablet.  We were willing to prove that to
18    the United States.  They declined the offer.
19              And I agree with Mr. Villa that it's a
20    fundamental disservice and a violation of due process
21    to deprive my client of his right to review the
22    evidence that's going to be used against him at
23    trial.  And this is, again, problematic in the sense
24    that this is just going to cause us to need -- and
25    require more time to prepare for the inevitable
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 125379

```
 1    trial.  Your Honor, we'll work with all the
 2    appropriate authorities to resolve this in a way that
 3    secures the facilities and everyone involved.  But I
 4    think that can be done.  And I would urge the Court
 5    to consider that to be done with electronic gear, if
 6    not the tablets themselves, and my understanding is
 7    the tablets, unfortunately, are getting ready to
 8    outlive their utility because the memory is going to
 9    be stripped probably in the next round of discovery
10    or two, so we're going to have to move to an
11    alternative device anyhow.
12              THE COURT:  Yeah, it seems to me that these
13    tablets -- there is a host of reasons -- you're
14    giving some more.  But I think that's the reason the
15    tablets have sort of -- a lot of people have sized it
16    up.  So I'm a little surprised by Mr. Villa wanting
17    the tablets back, given that other people are telling
18    me that it's not going to work anyway.
19              MR. LOWRY:  Well, I think it's a stopgap,
20    Your Honor.  I mean, it's very important for the
21    clients to have the material.  I know my client
22    reviews his material on a daily basis.  And it's
23    important for him to have this, to work with his
24    counsel in preparing for trial in this matter.  So I
25    don't think it's unreasonable to say:  If we can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1379

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 126380

```
 1   demonstrate that our clients haven't violated the
 2   protective order -- and I don't disagree with what
 3   Mr. Villa said -- if we can set up a periodic review
 4   with a local jail authority or a representative from
 5   the U.S. Attorney's Office -- I mean, I think some of
 6   my colleagues would bristle at that thought.  But my
 7   position is it's more important for Mr. Baca to have
 8   access to the discovery so we can work
 9   collaboratively on his defense.  And the denial of
10   that is working a fundamental injustice to this case.
11   And this is an ongoing problem.
12            So I think we've done this in this district
13   before.  I've had a terrorism case out of Canada that
14   somehow I had a Canadian here at the RCC, who was in
15   US Marshal custody who had a laptop, and had external
16   hard drives.  So I have firsthand experience.  This
17   isn't an overwhelming or debilitating problem.  This
18   can be fixed.  And we've done that here in this
19   district.  And there is no real impediments to
20   effectuating a solution that I described with a
21   laptop and an external hard drive, Your Honor.
22            THE COURT:  All right.  Thank you,
23   Mr. Lowry.
24            Mr. Benjamin.
25            MR. BENJAMIN:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1380

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127381

```
 1            Your Honor -- and I would like to direct
 2    the Court to the point that I have a laptop at Otero
 3    in another individual's custody right now that he is
 4    using at that facility.  And so I know personally
 5    that Otero will accommodate the issues.
 6            THE COURT:  So, if that's the case, why
 7    aren't y'all individually taking care of this
 8    problem?
 9            MR. BENJAMIN:  Your Honor, I would direct
10    the Court to what I would refer to the
11    heavy-handedness of the Government's response in this
12    matter.  The protective order specifically directs
13    that an individual -- a guard is how it's
14    referenced -- can review -- can ask to have the
15    tablet logged on, and done.  However, the tablet has
16    been seized and taken out of our possession.  So
17    that's why I'm here, along with Mr. Villa, asking the
18    Court to request the return of this.  The tablet is
19    no different than any other media that could be used
20    and abused.  And to simply decide that it's a tablet,
21    it's new, it's different, and therefore, it's used
22    and abused incorrectly, I don't think is fair; and,
23    two, causes a lot of concern with the Court's denial
24    of essentially our motion to continue, and less than
25    60 days to go to trial.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1381

```
 1              So, Your Honor, there is software out

 2   there.  Fortress software is a $60 piece of software

 3   that can be loaded on a laptop.  I take issue with

 4   the representation that Dell and Microsoft were

 5   contacted, but yet there has been nothing put forth

 6   to say that, other than simply:  I've been told that

 7   they did this.  This is just a very heavy-handed

 8   response to interfere with my client's ability to

 9   review his discovery, is how it feels from our point

10   of view, Your Honor.

11              And so I think that this possibility that

12   cooperators who, I don't know why they still have

13   their information, as opposed to defendants who are

14   prepping for trial, have been ordered to trial, that

15   their risk use of this use of Wi-Fi outweighs the

16   prejudice the defendant has to the right that he has

17   to review the discovery.  Especially when all three

18   people before me, Your Honor, have articulated what I

19   would urge the Court.

20              There has been nothing to show that Mr.

21   Gallegos did anything, committed any of this.  This

22   was a cooperator in the presence, and I believe in

23   conjunction with Agent Acee, that is what is driving

24   this whole --

25              THE COURT:  Well, we'll find out in a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9383

```
 1    minute.  But I think, unless I got the wrong
 2    impression of the hearing last week, Mr. Acee is the
 3    messenger.  He's not the person that's doing this.
 4              MR. BENJAMIN:  My belief is he was the
 5    individual in the facility with the cellphone that
 6    provides the opportunity and basis for this, Your
 7    Honor.
 8              But more specifically, there is nobody that
 9    has --
10              THE COURT:  I'm sorry?  What --
11              MR. BENJAMIN:  I would --
12              THE COURT:  You'll have to spin that out
13    more than --
14              MR. BENJAMIN:  Your Honor, he's a federal
15    agent.  I believe he took his phone into the
16    facility.  So there was a phone in that facility as
17    well, and Sandoval is a different facility that has
18    the ability to connect to Wi-Fi.  And so the only
19    evidence we have is that this occurred with Agent
20    Acee, I believe, is how it was demonstrated.  We have
21    no evidence that any of the individuals sitting at
22    these tables were the people that did this.  And
23    so --
24              THE COURT:  I'm still -- I don't mean to be
25    dense, but tell me what you're accusing Mr. Acee of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1383

```
 1   doing.

 2            MR. BENJAMIN:  Your Honor, it's very --

 3            THE COURT:  Spin it out.

 4            MR. BENJAMIN:  Your Honor, he's with a

 5   cooperator, he was there, and a tablet was used to

 6   communicate.  And I think that, based upon the

 7   Government's emails that the tablet issue is dead,

 8   and they're just changing this, I am very suspicious

 9   of the fact that, based upon things that have

10   specifically happened with Mr. Gallegos, statements

11   that were made, statements that he's being prosecuted

12   for, and statements that have been retracted, that

13   this is simply a concern for security.  That's not

14   how it feels from our point of view, Your Honor.

15            THE COURT:  Okay.

16            MR. BENJAMIN:  So we would join Mr. Villa

17   and ask for the return of the tablet.  I think there

18   are easy things that can be fashioned.

19            Thank you, Your Honor.

20            THE COURT:  All right.  Thank you, Mr.

21   Benjamin.

22            MS. MORRISSEY:  Your Honor, if I may -- and

23   I will be brief -- I think one of the problems we're

24   running into here is that we don't know what the

25   marshal service and what the Department of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1384

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131385

```
 1    Corrections are concerned about.  We -- this filtered
 2    down to us through the Government, who basically
 3    filed this statement of cause, and told us the
 4    tablets had been seized.
 5            So, first, we need to know, you know, what
 6    are the facilities' concerns, and how can we address
 7    them?  And we really can't do that.
 8            The second thing is, I still don't
 9    understand why we can't get a jalopy computer and
10    flash drives.  It seems to me that that would serve
11    the purpose of letting these individuals have
12    information about their case.  It's a tremendous
13    amount --
14            THE COURT:  Well, I'm hearing a couple of
15    different things.  One is that a request that CJA
16    funds pay for these computers; that's one thing.  And
17    then the second one is that the facilities will allow
18    certain laptops in.  So those are two different
19    things.  And I'm skeptical that CJA is going to buy
20    50 laptops.  But if the facility is willing to
21    allow -- I'm not sure I know what a jalopy laptop
22    is -- but if they'll allow a laptop in, you know,
23    that may be a solution.
24            MS. MORRISSEY:  And, Your Honor, I
25    reiterate the comments that were made that I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   willing to provide my client with a laptop myself so

2   that he can get his discovery back.

3          Thank you.

4          THE COURT:  Thank you, Ms. Morrissey.

5          MS. ARELLANES:  Your Honor, may I?

6          THE COURT:  Yes.  Ms. Arellanes.

7          MS. ARELLANES:  Judge, the problem with the

8   paper discovery is that other inmates will have

9   access to the information and may abuse that

10  information.

11         THE COURT:  Here's what I'm hearing, is

12  that they're showing they'll get on the laptop, and

13  they'll say, Okay, here is SNM Document 357; they'll

14  walk over to the cell and say, Hey, Mr. Garcia, go

15  look at Document 357.  How, from a security

16  standpoint, is that helping anything?

17         MS. ARELLANES:  Well, Judge, the problem is

18  that some of the defendants, inmates --

19         THE COURT:  Seems like we've got a very

20  elaborate, cumbersome system in place to avoid paper.

21  But the reality is the information is being shared

22  among the defendants anyway.

23         MS. ARELLANES:  Well -- and that may be

24  fine.  But other people that are not involved in the

25  case will have access to the paper, such as my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

 1    client's cellmate.  And she may very well be working

 2    for the Government.  So --

 3             THE COURT:  Here's the problem I'm having:

 4    I mean, half the time the defendants are wanting

 5    information in the prison so they can review it.  And

 6    then I've got you saying:  We don't want any paper.

 7    I mean, I can't, probably, make everybody happy here.

 8             MS. ARELLANES:  No, Your Honor.  But at the

 9    very least, the tablet is a much more secure method

10    in which to transmit information rather than paper,

11    because paper can float around.  And that was the

12    Government's concern to begin with.

13             THE COURT:  I think they're about to give

14    up on that concern.

15             MS. ARELLANES:  Well, then they have to

16    live with the consequences.

17             THE COURT:  Which are?

18             MS. ARELLANES:  Could be varied.  Could be

19    varied.

20             THE COURT:  Which are?  Give me one or two.

21             MS. ARELLANES:  Well, you know, if the

22    paper discovery ends up in the wrong hands, then

23    other people can be endangered.

24             THE COURT:  But the problem is, if they're

25    just saying, Go look at page 357, it's a monumental

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1387

```
 1    form over substance, isn't it?
 2            MS. ARELLANES:  Judge, the discussion among
 3    defendants is fine.  But the discussion among people
 4    that are not defendants is not fine.  They have --
 5    there is a privilege here that's being violated.
 6    There is an attorney-client privilege that's being
 7    violated.  And so that's the concern there.
 8            THE COURT:  How is the attorney-client
 9    privilege being violated?
10            MS. ARELLANES:  Well, because the attorney
11    is providing information to the client.  Somehow,
12    other people that are not involved in the case are
13    gaining access to that information by way of paper.
14    You know, if a cellmate that's not in my client's
15    case -- she has a cellmate that's not even related in
16    this case, is not involved in this case -- but she
17    would have access to that information.  So that would
18    pose a problem.
19            THE COURT:  Okay.  All right.  Thank you,
20    Ms. Arellanes.
21            Anyone else?
22            MR. DAVIS:  Judge, I'll try to be brief.
23    Michael Davis on behalf of Mr. Herrera.  Judge, to
24    begin with, in Otero, it's my understanding the
25    tablets never leave the tablet room.  In other words,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1388

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

1    the inmates go to where the tablet is.  They review

2    the tablet for the time they're allotted, and then

3    it's returned to the tablet room.  So they don't take

4    it to their cell with them to share.

5           The other thing that's important to note,

6    Judge, frankly, this is the first time I've been in a

7    case where they've done this, and I think it's been a

8    fantastic use of the discovery, particularly in my

9    peculiar situation, is that Mr. Herrera is housed in

10   Otero.  I don't get a chance to see him to go over

11   the discovery nearly enough.  It's of tremendous

12   value to our case to be able to have him go through

13   all this discovery, so when I go meet with him we

14   have meaningful meetings, because he's had a chance

15   to review many of the items that either I haven't

16   gotten to or I didn't understand.  So the tablet

17   thing has really been beneficial.

18          I haven't discussed this issue with Mr.

19   Castellano or Ms. Armijo or Mr. Beck concerning the

20   problem that's happened with the tablets.  I can tell

21   you that Mr. Herrera, like Mr. Baca, knows nothing

22   about what happened here.  While we were talking

23   about Wi-Fi, he leaned over and asked me what was

24   Wi-Fi.  He's very unsophisticated in the use of the

25   tablet.  He's had to learn how to use them.  He's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1389

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136390

1    been in prison for a long time.

2             So he certainly wasn't involved in any of

3    this, yet he's being asked to pay the price for this.

4    We also would like the tablets back, or something

5    like we've been using with tablets, whether it's new

6    or different computers, or some sort of external

7    drive to embolden the tablet some way.

8             So that's what our position is.  I

9    understand that it's been very useful at this point.

10   We've been very frustrated by the fact that we

11   couldn't get the laptops back.

12            I also note, too, that when Ms. Armijo

13   indicated this issue had arisen, I also contacted her

14   immediately, and we had made arrangements to meet

15   with the US Marshal Service in Otero.  They couldn't

16   do that, so we talked about doing it up here while

17   we're in the four days of this hearing, to do the fix

18   but I guess in the meantime, they've decided the fix

19   isn't possible.

20            So I apologize for talking so fast,

21   Jennifer.

22            But anyway, that's our stance on that,

23   Judge.

24            THE COURT:  All right.  Thank you,

25   Mr. Davis.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1390

```
 1                Anyone else?

 2                MS. JACKS:  Your Honor, I have a few

 3      comments.

 4                THE COURT:  Ms. Jacks.

 5                MS. JACKS:  Just as some background

 6      information, because the issue of the tablets was

 7      originally addressed in front of Judge Gonzales, and

 8      I just wanted to fill you in, I guess, on some --

 9                THE COURT:  I did read the transcript.

10                MS. JACKS:  And you said that, and I had

11      heard that.  It was the Government that suggested the

12      use of the tablets.

13                THE COURT:  I saw that.

14                MS. JACKS:  And it was the Government and

15      the New Mexico Department of Corrections that decided

16      what electronic devices would be provided, and

17      obtained those electronic devices, and then

18      supposedly configured them so that the discovery

19      would be placed on them.

20                THE COURT:  Right.

21                MS. JACKS:  So the Government was in full

22      control of the type of device that was inserted into

23      the custodial facility.

24                THE COURT:  Well, I don't disagree with

25      that, but I've got to move forward.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1391

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

1          MS. JACKS:  Right.  But if they did it --
2     and why they picked the tablets that they did, I
3     don't know; why they picked a tablet that had Wi-Fi
4     capability, I don't know.
5          THE COURT:  I don't think anybody knew.
6     Nobody knew that this had Wi-Fi capability.  I mean,
7     not even -- what I'm being told -- I've got to rely
8     on what I'm being told -- not even the manufacturer
9     knew that.  So we've got to move forward.
10          MS. JACKS:  Right.  And I would like to
11    move forward.  And I guess what I would suggest, in
12    following up on some comments by Mr. Benjamin, and
13    just also in personal experience, I've worked on
14    numerous cases where defendants were provided laptops
15    that did not have Wi-Fi or camera capabilities.  And
16    those worked in custodial facilities in Los Angeles
17    and many other places as well.
18          So I don't know -- I mean, I guess what I'm
19    thinking is I would think that the Government -- the
20    onus should be on the Government to contact whoever
21    it is they originally contacted and find out what
22    kind of laptop or other electronic device is
23    available that could go into the facility.  Clearly,
24    there are.  Clearly there are.  And I think that
25    would probably be a smarter way to proceed than have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1392

1    each defendant individually come up with something

2    that they bought at Frye's or Best Buy, or whatever.

3             THE COURT:  Here's the problem is, I can't

4    tell the Department of Corrections to go buy laptops

5    for everybody.

6             MS. JACKS:  Well, I hear that.  And I think

7    we've arranged it in Los Angeles through CJA funding.

8             But let me just go back, because I did a

9    little back-of-the-envelope calculation.  If there is

10   50,000 pages of discovery -- and paper discovery

11   doesn't account for the most important discovery in

12   the case, which are recordings, and the idea of

13   putting paper discovery back into the facilities

14   doesn't solve the problem for the defendants, in

15   terms of listening to the hours and hours of secretly

16   recorded conversations done by government cooperators

17   in the custodial facilities.  But let's just start

18   with 50,000 pages.  50,000 pages; if you assume 2500

19   pages fit in a box, that's 20 boxes of paper

20   discovery per defendant.  And how they organize it,

21   God only knows, or how those boxes are left, so that

22   they have their discovery left in the manner that

23   they've reviewed it, and doesn't get mixed up, or

24   reviewed by other inmates, I don't know how the

25   facilities can deal with that.  Assuming a cheap rate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1393

```
 1   of copying at ten cents a page, that's at least
 2   $5,000 per defendant to make the paper copies, which
 3   doesn't even begin to cover the most important
 4   discovery in the case.  I mean, for $5,000, the
 5   defendants could have Mac Airbooks, with money to
 6   spare.  I think there is a way around this.
 7             THE COURT:  But you understand, you're
 8   working with the Government here.  I mean, it doesn't
 9   always make an economical decision.  It sometimes has
10   to comply with rules.  If you've got some rules and
11   regulations in CJA that says I can pay for laptops or
12   tablets or something, I'd be delighted to look at it.
13   I don't know of any, sitting right here right this
14   minute, so -- but I appreciate the economics of it.
15   But it may be that it's not something that
16   necessarily economics are going to prevail.
17             MS. JACKS:  I just wanted to give the Court
18   some figures for the economics of it.
19             THE COURT:  I understand.  I already --
20             MS. JACKS:  The suggestion --
21             THE COURT:  Ms. Sirignano did it last week
22   for me.  So I'm pretty familiar with the economics.
23             MS. JACKS:  Just, in my experience, the way
24   we've obtained electronic devices for defendants is
25   by completing a CJA authorization requesting the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1394

```
 1    funds to purchase that, and submitting the estimated
 2    costs, and that's been approved and paid for by CJA.
 3    And I think there is a stipulation at the end that
 4    the computers go into the possession of the Federal
 5    Public Defender at the conclusion of the case, after
 6    they're wiped of discovery.
 7            THE COURT:  All right.  Like I said, if you
 8    can educate me on what CJA can do, I'll certainly
 9    listen to that.  But I'm sitting here, right this
10    minute, I'm not familiar with that.
11            Mr. Acton?
12            MR. ACTON:  Good afternoon, Your Honor.
13    Gregory Acton on behalf of Anthony Cordova.
14            THE COURT:  Mr. Acton.
15            MR. ACTON:  There wouldn't be 50,000 pages
16    of discovery if it weren't for modern technology.  So
17    I think it's only fair that modern technology be used
18    to review that discovery.  It wouldn't be there
19    without that technology in the first place.
20            The part that I'm still unsettled about all
21    of this -- and maybe it was gone into in more detail
22    in Mr. Chris Garcia's hearing earlier -- but what I
23    haven't really heard is anything from -- via proffer
24    or what have you from, say, a computer expert of some
25    kind saying that these tablets cannot be physically
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492
                                                                              1-800-669-9492
                                                               e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   disabled.  Maybe I just missed that.  But I remember

2   the day when, if you had a computer, you actually had

3   to have a card in it that would enable it to talk to

4   an internet connection, or have any kind of cellphone

5   connection.  And I don't know if that's all been --

6   now, it's on the motherboard, maybe it's in the CPU,

7   whatever.  But I have not yet heard anybody say

8   authoritatively that it can't be physically disabled.

9           THE COURT:  I mean, we haven't heard from

10  the Government.  But I think probably we're going to

11  have to assume -- we're going to have to assume it

12  doesn't matter.  If the prison system is not going to

13  allow this tablet in there, period, for whatever

14  reason -- maybe they don't like the color of it --

15  I've got a problem and I've got to solve it.  Now, we

16  can spend a lot of time doing history and learn

17  everything there is to know about tablets.  But we

18  can move forward.

19          MR. ACTON:  Well, at this point, Your

20  Honor, if we were able to determine that there was an

21  alternative, I guess what I would ask is the Court is

22  not going to enter an order, or anything at this

23  point, that would be inconsistent with us being able

24  to address this at a point where we are able to

25  discover that, yes, these tablets could be disabled,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    or something similar to, you know, the way the

 2    tablets were provided in the first place -- I'm

 3    hearing that the tablets may be reaching their limit

 4    anyway, and there needs to be some kind of

 5    replacement.  But I would hope that the Court would

 6    leave open that possibility that whatever the form

 7    the Court order, or decision is going to take, that

 8    it would allow us to continue with that, if we can

 9    find, talking to an computer expert, that there is

10    some way to physically disable either the tablet

11    they've got, or something of equal or comparable

12    expense, something that you could confirm that this

13    is not just a software hack, but that it's physically

14    disabled, and that's easily confirmed, that it

15    doesn't have the physical capabilities.

16             So I just wanted to make sure that was

17    considered by the Court.

18             THE COURT:  All right.  Thank you,

19    Mr. Acton.

20             Anybody else?  Mr. Lowry?

21             MR. LOWRY:  Your Honor, just briefly.  Your

22    Honor, I heard the Court -- and pardon me for

23    characterizing this as frustration over this issue,

24    but --

25             THE COURT:  I'll try to sound less
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    frustrated.

 2              MR. LOWRY:  But we're equally frustrated,

 3    Your Honor.

 4              You had asked why haven't we been working

 5    on a solution before this.  And frankly, I just

 6    wanted to bring it to the Court's attention, we were

 7    under the impression, based on the email from the

 8    Government that, after the inspection, at least the

 9    tablets would have the opportunity to move back to

10    our clients.  That was -- I think, whether that was

11    the intended idea --

12              THE COURT:  I haven't gotten that

13    impression from the Government.

14              MR. LOWRY:  What I'm suggesting, Your

15    Honor, is we didn't -- the royal "we," collective

16    "we" of the defense team didn't have the

17    understanding that these tablets were never going to

18    be returned until late Friday.  And we haven't really

19    had the opportunity to work with our colleagues on

20    the other side of this or the marshal service or our

21    individual institutions to really develop a solution,

22    Your Honor.  I would like the opportunity to do that,

23    in a way that meets everyone's needs.  I just wanted

24    to bring that to your attention.

25              THE COURT:  Okay.  Thank you, Mr. Lowry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145

```
 1              Anyone else from the defendants?

 2              All right.  Ms. Armijo, let me ask you a

 3     few questions.  Let me make sure I understand,

 4     because I've been up here saying it's not your table;

 5     that this is being driven by the Marshal Service and

 6     by the corrections facilities.  Am I correct, or is

 7     this something that Mr. Acee or somebody else has

 8     decided -- at your table has decided these tablets

 9     should be taken from the defendants?

10              MS. ARMIJO:  We did not make the decision

11     to take the tablets from the defendants.  We have an

12     email that we referred to last week in the hearing,

13     that when the issue came up -- and obviously, it's

14     not surprising that cooperators would tell us this,

15     because they're cooperating with the Government.  We

16     could have some of these defendants who are more

17     computer savvy that have figured this out, but

18     they're not going to be telling the Government this.

19              And I really take issue with what Mr.

20     Benjamin said, and blaming Mr. Acee, and in creating

21     it, and saying that we are creating this issue.

22              THE COURT:  Well, let me clear the air,

23     though.  Did Mr. Acee have any decision-making over

24     the tablets being removed?

25              MS. ARMIJO:  No.  The tablets were removed.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1399

```
 1   What happened was that we were told by CHSs that this
 2   was possible.  We really didn't believe it to be
 3   possible.  And at two separate times, to prove their
 4   point, CHSs emailed Special Agent Acee when he was
 5   not at the facility.  So there was absolutely no way
 6   that he could have provided the hot spot, the Wi-Fi
 7   for this to happen, to come up with some grand scheme
 8   for defendants to take their tablets back and to pull
 9   it.
10            THE COURT:  So who made the decision to
11   pull the tablets?
12            MS. ARMIJO:  The decision to pull the
13   tablets was made by the US Marshal Service.  We
14   informed the US Marshal Service -- I can tell you it
15   was during the week -- and I have the email -- it was
16   during the week of April 17.  Mr. Beck and I were in
17   trial in Las Cruces.  Mr. Castellano was handling
18   this issue.  And we informed the US Marshal's Office
19   that the tablets had internet capability with certain
20   maneuvers that were done.  The US Marshal's Office
21   expressed concern about that, and indicated that they
22   wanted to pull it -- all the tablets.  Mr. Castellano
23   emailed them back and said, We need to make certain
24   that we do this in accordance with the protective
25   order.  Here is the protective order.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1400

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 147

```
 1              Regardless of that the US Marshals, for
 2    safety concerns obviously, and other concerns, pulled
 3    all their tablets.  We did tell them there was a
 4    protective order.  We did email them the protective
 5    order.  But they made the decision to pull all of the
 6    tablets.  And I don't think it takes rocket science
 7    to figure out why the tablets were pulled.  If
 8    somebody has in their possession, even if they didn't
 9    figure it out, clearly, by today, they will figure it
10    out; they'll have access to things that they
11    shouldn't:  Communications to the outside,
12    pornographic material, things that are not allowed.
13              And the idea that, well, we didn't do any
14    harm, and they can come and check -- so we checked
15    the tablet on a Tuesday; they then make the necessary
16    arrangements -- and let's just say we have tablet
17    checks every Wednesday.  They could very easily
18    between that break the code, do what needs to be
19    done -- I don't want be specific about it here in
20    open court -- do what needs be done, and have a whole
21    week, even if it's just -- and all it takes is just
22    one email.
23              THE COURT:  But aren't they going to
24    destroy all the evidence on the computer?
25              MS. ARMIJO:  They would.  They would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1401

```
 1   destroy all the evidence.  But our concern is not
 2   them destroying the evidence.  Our concern -- well,
 3   the US Marshal's concern is them having things that
 4   would be considered contraband.
 5              THE COURT:  I understand that.
 6              I need to give Ms. Bean a break, and we all
 7   need to get fed.  Let me suggest this:  During the
 8   break -- and you need to eat, too, so I'm not trying
 9   to shorten your lunch -- talk to the marshals.  We've
10   sat here and listened this morning to the fact
11   that -- as far as I can tell, none of the people that
12   are in this room are the ones that maybe did what
13   we're concerned about.  If the defendants knew that
14   they were going to lose all their discovery, and
15   everybody is going to quickly know that they're the
16   person that is doing this, and so then we're dealing
17   with maybe just a handful, if any, of the defendants,
18   could the marshals live with that?  I mean, anything
19   we put in place is going to have some risks.  But if
20   we could get the tablets back in their hands,
21   understanding that we're going to check them, and if
22   they do it, they're going to lose it, and then we're
23   going to have to figure out what that person is going
24   to do.  Check and see if the marshals could live with
25   something along those lines of getting the tablets
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1402

```
 1   back in their hands.  Don't answer now.  I'd like for
 2   you to talk to the marshals, and see if they could
 3   live with that.
 4          Deputy US Marshal Royce Namoca is present
 5   in the back.  So you can talk to him.  And give me an
 6   answer after lunch.  It seems to me I can reduce a
 7   lot of problems by just getting these tablets back
 8   in, buying us some time.  And then, if there is a
 9   long-term solution, I'm welcome to hear it.  But I'm
10   interested in a Band-Aid here for a short period of
11   time, to see if we can put in a long-term solution.
12          All right.  We'll be in recess for an hour.
13   Nobody is going to start without you, so finish your
14   sandwiches.  See you in about an hour.
15          (The Court stood in recess.)
16          THE COURT:  All right.  We'll go back on
17   the record.  Looks like we've got everybody here.
18          Ms. Bean told me that some folks were warm
19   back there.  I know it was a little warm this
20   morning.  If you want to take off your jackets --
21   this probably applies to the lawyers -- you can take
22   off your jackets and things.  So don't feel like you
23   have to stay in those.
24          All right.  Ms. Armijo, you were arguing on
25   the tablets.  And you were going to also give me some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    information.
 2             MS. ARMIJO:  Yes, Your Honor.  Over the
 3    lunch hour, I conferred with the US Marshals.
 4             THE COURT:  Hold on, Ms. Wild is reminding
 5    me I need to -- Mr. Kochersberger -- I think I'll do
 6    it blanket -- but Mr. Kochersberger, you're here now,
 7    so you want to enter your appearance?
 8             MR. KOCHERSBERGER:  Don Kochersberger on
 9    behalf of Sergio Rodriguez.
10             THE COURT:  All right.  Mr. Kochersberger,
11    good afternoon to you.
12             Are there any new attorneys present other
13    than Mr. Kochersberger?
14             All right.  Mr. Baker, I think you wanted
15    to leave after we got through with this tablet issue.
16             MR. BAKER:  That's correct, Your Honor.
17             THE COURT:  I'll leave it to you.  I mean,
18    you know how these hearings are.  Issues come up that
19    might impact you or your client.  I can't think of
20    anything that is going to come up.  But you know how
21    they are kind of a rolling thing, people start
22    raising stuff.  So I leave it to you as to whether
23    you think that any of the items that are set -- so
24    I'll just leave it to you.  I'd love to have you
25    stay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1404

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 151

1          MR. BAKER:  Thank you, Your Honor.  My

2   understanding is that the rest of the week, there

3   will not be items that pertain to my client.

4          THE COURT:  Yeah, I talked to Ms. Wild

5   about it, and I'm not sure I see it either.  But

6   you're welcome to stay.  I'll pay for it.  Or you can

7   leave, and I think probably you're in good shape.

8          MR. BAKER:  I'm concerned about my client

9   being transported.  I don't believe there is any need

10  to transport him for the next few days.

11         THE COURT:  He won't be.  Thank you, Mr.

12  Baker.

13         Ms. Armijo.

14         MS. ARMIJO:  Your Honor, over the lunch

15  hour I conferred with the US Marshal Service, and

16  given that the tablets cannot be fixed, they will not

17  allow the tablets to go back into the facilities.

18         THE COURT:  Let me ask you this -- I hate

19  to put it in such blunt terms, but if I order the

20  marshals to return the tablets immediately, will they

21  comply?

22         MS. ARMIJO:  Well, I think that they -- and

23  maybe we should hear from them as to the concerns,

24  Your Honor.  Because there is concerns with -- as

25  they put it, as a law enforcement officer, you have a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1405

1   device in which somebody could plan their escape,

2   they could send out a hit.  It's safety, not just of

3   other inmates, but of the Court, of other people.

4   There is a lot of issues for the tablets.

5          But they're not opposed to the, quote,

6   "jalopy laptop," if the defense wants to provide

7   that, as long as Corrections Department IT person

8   indicates that, in fact, they cannot have internet.

9   And the problem with the tablets is the Microsoft

10  operating system that's on it.  And the tablets are

11  actually very nice, as opposed to a simple laptop.

12  They were very expensive.

13         And I just wanted to put on the record,

14  Your Honor, I know you are aware of the reasons why

15  we got the tablets.  But many of the counsel here

16  were not present for that hearing.  And the United

17  States agreed to it.  The United States initially was

18  opposed to paper going back in.  And Judge Gonzales

19  was concerned about defendants not having discovery.

20  And we did this as a safety concern, for witnesses'

21  protection, for CHS statements.  And so it was a

22  compromise, but Corrections Department agreed to pay

23  for the tablets because of the safety concerns.

24         Well, those safety concerns are gone.  As

25  you heard before, last week, gang members have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1406

1    adapted to the use of the tablets.  And so the whole

2    reason for having the tablets is gone, and now they

3    are a huge security risk to have in there.  The

4    United States is not opposed to having paper go back.

5    I keep hearing 50,000.  But I'm certain we're not at

6    50,000 pages.

7            So my understanding is that the facilities

8    will allow them to take back paper.  I had also

9    talked about the facilities having one computer

10   maybe, with just a simple hard drive that could be

11   used.  But all the reasons that I'm hearing that they

12   need it -- for instance, they're saying, you know,

13   it's an issue about money.  Well, my understanding

14   is, for these tablets to be updated -- and this was

15   coming from Mr. Aoki -- when these tablets were being

16   updated, it was very costly each time they were sent

17   out, just the postage alone.  And so I think that as

18   far as monetary costs, it isn't an issue as far as

19   having paper go back in be the issue.

20           I know people were saying that Torrance --

21   Mr. Villa was talking about having a hot spot, and

22   that they're secure lines.  Unfortunately, these days

23   there are correction officers, and other people who

24   are employed at correction facilities who can be

25   compromised, who could give out the password.  You

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1407

 1   could have someone, as the Court pointed out, in the

 2   parking lot at a certain time with a hot spot.  So

 3   there is just really no safe way to have these

 4   tablets work to ensure that they cannot get Wi-Fi at

 5   this point.

 6         And, Your Honor, I do again take issue with

 7   Mr. Benjamin's statements as to Special Agent Acee.

 8   And as an officer of the court, he should have a good

 9   faith basis for making such bold accusations that

10   Special Agent Acee provided a hot spot, and basically

11   cooked this whole thing up.  So I would like to know

12   what the good faith basis was for that statement.

13         So, Your Honor, we are willing to go back

14   to the old-fashioned method, the paper method.  The

15   Court can explore having computers that don't have

16   Wi-Fi for general use among the defendants.  Or if

17   the Court is inclined to, but obviously New Mexico

18   Corrections will assist in making it safe, but will

19   not be providing a computer for the inmates to use

20   anymore, since the whole safety reason is out the

21   window.

22         THE COURT:  Well, I guess I'm -- I mean, I

23   guess I'm concerned that we can't point to anybody in

24   this room that did anything wrong.

25         MS. ARMIJO:  Well, we can't, because we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1408

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155409

```
 1    haven't examined them all.  And the reason we haven't
 2    examined them all is because I sent out an email.  I
 3    did have requests from a few attorneys, and there
 4    were a few examinations.  But then I started getting
 5    emails from people saying, Well, we will only agree
 6    to it if there is anything on it, and you can't use
 7    it in the future, and you can't look at it.  They
 8    started putting all these limitations on it.  And I'm
 9    afraid that would also happen in the future, where,
10    if there is a set time -- and maybe we should let the
11    US Marshal's Office speak as to that, because now
12    this is -- obviously, all these inmates know that
13    this can be done.  And so even, if it isn't -- and
14    I'm not saying that it is, I'm saying we don't know
15    that these people -- because the tablets have not
16    been looked at.  Only a few have.
17            But I think the Court should consider the
18    US Marshal Service's concerns about this and
19    Corrections' concerns.
20            THE COURT:  Well, put on your agent, and
21    let me hear it.  Because I guess I'm beginning to be
22    concerned about how much of a problem this is.  But
23    it's creating a big problem.  It's creating a
24    representation of effective representation here.  So
25    I'm beginning to think that we're creating a problem
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1409

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156410

1    rather than solving a problem.  So if you want to

2    call your witness, put him on the stand to testify.

3            MS. SIRIGNANO:  Your Honor, during the

4    break, a number of defense attorneys also spoke to

5    Mr. Namoca, if you want to hear what the defense is

6    willing to proffer, or would you rather him just take

7    the stand?

8            THE COURT:  Let's just let Ms. Armijo put

9    him on the stand.

10           MS. SIRIGNANO:  Thank you, Your Honor.

11           THE COURT:  Ms. Armijo.  Mr. Namoca, if

12   you'll raise your right hand, before you're seated,

13   Ms. Wild will swear you in.

14           THE CLERK:  Please be with seated.  State

15   your full name for the record.

16           THE WITNESS:  Royce Namoca.

17           THE COURT:  Mr. Namoca, Ms. Armijo.

18           MS. ARMIJO:  Thank you, Your Honor.

19                   ROYCE NAMOCA,

20       after having been first duly sworn under oath,

21       was questioned and testified as follows:

22                 DIRECT EXAMINATION

23   BY MS. ARMIJO:

24       Q.   Mr. Namoca, how are you employed?

25       A.   I am a Supervisor Deputy US Marshal with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1410

1    the US Marshal Service.

2          Q.    And is it fair to say that you are kind of

3    the point person with the US Marshal Service in

4    reference to these cases?

5          A.    Overall prisoner protection, yes, ma'am.

6          Q.    Now -- and were you made aware of a

7    situation regarding the tablets and possible internet

8    capabilities?

9          A.    Yes.

10         Q.    And after you were made aware of that, what

11   decision did you make?

12         A.    I pulled the tablets.

13         Q.    And why did you pull the tablets?

14         A.    I mean, our policies are pretty specific.

15   Any contraband -- I won't say contraband, but device

16   that can be used to aid in escape or commit an

17   assault cannot be given to a pretrial inmate.  It's

18   broad, but it's specific.

19         Q.    All right.  And so what are your concerns

20   with a tablet that could have internet access as far

21   as -- you mentioned escape and assaults?

22         A.    Yes, ma'am.

23         Q.    And how -- what sort of things would you

24   envision?

25         A.    I mean, it's as simple as just overwriting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the tablet, creating an internet source, if you have

2    a Wi-Fi source of some sort, and just communicating

3    with the public.  I mean, it's just that simple.

4         Q.   And are those concerns heightened in a case

5    such as this?

6         A.   I agree, yes.

7         Q.   Are they?

8         A.   Yes, they are.

9         Q.   And how so?

10        A.   It's a large conspiracy.  Let's call it

11   what it is.  Some of the defendant have large

12   criminal histories.  And that's just information we

13   receive from the prosecution team, and what we know

14   from NMCD.

15        Q.   And is your office willing to work with --

16   if the defense provides some sort of electronic

17   device that does not have capabilities for internet,

18   are you willing to allow those into the facility for

19   the defendants to use?

20        A.   Of course.  All of our contract facilities

21   already have that in place.

22        Q.   So there are other mechanisms for them to

23   review discovery other than having paper?

24        A.   Yes, ma'am.

25             MS. ARMIJO:  I have no further questions.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 1412

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

 1            THE COURT:  All right.  Thank you, Ms.
 2    Armijo.
 3            We probably don't need everybody
 4    questioning.  But Ms. Sirignano, do you want to ask
 5    any questions and elicit the testimony that you
 6    wanted to proffer?
 7            MS. SIRIGNANO:  May it please the Court?
 8            THE COURT:  Ms. Sirignano.
 9                    CROSS-EXAMINATION
10    BY MS. SIRIGNANO:
11       Q.   Deputy Namoca, did you speak with defense
12    counsel during the recess here at lunch about the
13    tablets and the laptops possibly going into the
14    facilities?
15       A.   Yes.
16       Q.   And that was approximately four of us: me,
17    Mr. Benjamin, Mr. Esquibel, and Mr. Lowry; correct?
18       A.   Correct.
19       Q.   Okay.  And so, when asked about the actual
20    tablets and whether the Court could order the United
21    States Marshal Service to allow those tablets that
22    were provided by the Government back in the
23    facilities, what did you advise us?
24       A.   We would note our objection to it, because
25    of the security risks.  Basically, it's my job.  But

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1413

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 0414

1    I would have to seek other counsel as well.  But if a

2    court order was written, I don't know, I would have

3    to go ask my management, to be honest.

4         Q.   So if the Judge were to order you, the

5    Marshal Service, to put those tablets back in the

6    facilities, you would seek counsel from the Marshal

7    Service?  But of course, the Marshal Service would

8    obey an order from this Court?

9         A.   Based on my experience, more than likely,

10   yes.

11        Q.   More than likely, yes?

12        A.   Based on my experience, yes.

13        Q.   Okay.  And if that was a solution for the

14   short term, you would allow defense counsel to bring

15   laptops in once they were reviewed and approved by

16   the New Mexico Department of Corrections' IT unit?

17        A.   I'll have to seek counsel from my

18   management, to include our headquarters components.

19   But it could be -- if it's written in the court

20   order, I would seek to what to do basically.

21        Q.   Regarding the tablets that were currently

22   removed?

23        A.   Yes.  Or to include additional IT equipment

24   that could be introduced to the jail.

25             MS. SIRIGNANO:  Thank you.  No further

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1414

```
 1    questions.
 2              THE COURT:  Thank you, Ms. Sirignano.
 3              Ms. Johnson.
 4              MS. JOHNSON:  May I, Your Honor?
 5              THE COURT:  You may.
 6                     CROSS-EXAMINATION
 7    BY MS. JOHNSON:
 8         Q.   Good afternoon, Deputy Marshal Namoca.
 9              Now, when were you notified by the
10    Government?  Or who were you notified by?  The FBI?
11         A.   I don't know if it's either the FBI or the
12    prosecution team.
13         Q.   And what were you told?
14         A.   I cannot recall exactly, other than the
15    fact that a CHS was able to compromise a tablet.
16         Q.   And this informant was housed at Sandoval
17    County Detention Center, right?
18         A.   Yes.
19         Q.   And none of these other defendants in the
20    courtroom today are housed at Sandoval County
21    Detention Center; correct?
22         A.   Correct.
23         Q.   And what you were told is that an informant
24    accessed the Internet on his tablet?
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1415

```
 1        Q.   And then your testimony on direct
 2   examination was that you made the decision to pull
 3   the tablets of all these other defendants, right?
 4        A.   Correct.
 5        Q.   But your decision was made after you
 6   consulted with the prosecutors, right?
 7        A.   Correct.
 8        Q.   And, in fact, they suggested to you that
 9   you pull the tablets?
10        A.   No, they didn't suggest it.
11        Q.   But they discussed it?
12        A.   They offered information that would lead me
13   to pull the tablets, yes.
14        Q.   And it wasn't just your decision entirely;
15   that was made after you consulted with the
16   prosecutors, right?
17        A.   Correct.
18        Q.   And you didn't consult with any of the
19   other defense attorneys in this room?
20        A.   I did not.
21        Q.   And, in fact, you didn't notify any defense
22   attorneys in this room that you were planning to pull
23   the tablets?
24        A.   I did not.
25        Q.   You have no evidence that any of these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1416

1    defendants in this room accessed the internet on

2    their tablets?

3          A.    None.

4          Q.    And you have no evidence that an internet

5    connection could be established at Torrance County

6    Detention Center?

7          A.    I didn't check.

8          Q.    Otero County Detention Center?

9          A.    Nope.

10         Q.    Santa Fe County Detention Center?

11         A.    Nope.

12         Q.    And, in fact, your decision, or what you're

13   telling the Court about these security concerns is

14   just an overall concern, but not specific to each one

15   of these defendants?

16         A.    Yes.

17         Q.    It is specific?

18         A.    No.  It's an overall concern.

19         Q.    But not specific to each one of these

20   defendants?

21         A.    Not specific, no.

22         Q.    So if these tablets, for each one of these

23   defendants in this room were checked, and you made

24   sure that at each one of these facilities where these

25   defendants are being housed there is no internet

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1417

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 164 1418

1    access, would you feel comfortable returning those

2    tablets?

3        A.   Once I seek counsel from other parties in

4    my agency, I will be open to it, yes, ma'am.

5             MS. JOHNSON:   I have no further questions.

6    Thank you.

7             THE COURT:   Thank you, Ms. Johnson.

8             Maybe one more.   Mr. Villa.

9                     CROSS-EXAMINATION

10   BY MR. VILLA:

11       Q.   Good afternoon, Deputy.   If there were a

12   mechanism in place so that you could check the tablet

13   or a corrections officer at the various facilities

14   could check the tablet to determine if it had been

15   bypassed, would that make you more comfortable with

16   having the tablets in the facilities?

17       A.   The current tablets?

18       Q.   Yes.

19       A.   It wouldn't make me more comfortable, no,

20   sir.

21       Q.   Well, the tablets, as I understand it, if

22   they're bypassed, can then access a hot spot or Wi-Fi

23   connection; correct?

24       A.   Yes.

25       Q.   If they're not bypassed, they cannot?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1418

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5419

```
 1            A.   Yes.

 2            Q.   That's your understanding, too?

 3            A.   Yes.

 4            Q.   So if there were a mechanism in place that

 5     this Court could order to help us determine if a

 6     tablet had been bypassed, and to allow the facilities

 7     to look at a tablet under certain conditions to see

 8     if it had been bypassed, would that not help allay

 9     some of your security concerns?

10            A.   It would help.  But like I said to Ms.

11     Sirignano and Ms. Johnson, I would have to seek other

12     things, too.  I would have to talk to other

13     counterparts in my agency.

14            Q.   Sure.  You have devices, do you not, to

15     determine if a particular facility has Wi-Fi?

16            A.   My own equipment, sure.

17            Q.   You could get on your phone right here and

18     check and see what the Wi-Fi networks are, right?

19            A.   Yes, of course.

20            Q.   And the folks at the facilities, could do

21     that, too?

22            A.   They could.

23            Q.   And if their security measures in doing

24     that right now weren't adequate, you could help them,

25     make them better able to detect these Wi-Fi networks?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1419

1          A.    I don't know off the top of my head, but

2     I'll have to talk to some of other partners that are

3     more familiar with that type of thing.

4               MR. VILLA:   That's all I have.

5               THE COURT:   Thank you, Mr. Villa.

6               All right.   Ms. Armijo, anything else you

7     want from Mr. Namoca?

8                    REDIRECT EXAMINATION

9     BY MR. ARMIJO:

10         Q.    Do you have a way of preventing, at either

11    Torrance or Otero or any of the other facilities that

12    were listed just now, from having someone park

13    outside with a hot spot, which would then give people

14    inside ability to connect to the Wi-Fi?

15         A.    To my knowledge, no.

16         Q.    And are you able to prevent corrections

17    officers from being compromised in bringing in either

18    a hot spot phone, or in providing the password of a

19    secure facility?

20         A.    No.

21         Q.    Are there ways for people who are in those

22    facilities being -- specifically, let's just talk

23    about Torrance and Otero County -- are there ways for

24    people then -- now, specifically -- using either hot

25    spots from other people to get internet access?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1420

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167421

 1              MS. JACKS:  Objection, calls for

 2    speculation.

 3              THE COURT:  Well, we're predicting the

 4    future.  So there is a certain amount of speculation.

 5    I need to hear it.  Overruled.

 6         A.    Would you repeat the question, ma'am?

 7    Sorry about that.

 8         Q.    I said is there a way for people in those

 9    facilities, then, to get access -- people being

10    inmates -- to get access to Wi-Fi?

11         A.    There is.

12         Q.    And does that cause concern for you?

13         A.    Of course.  That's my job.

14         Q.    And also, even with -- I'm going to give

15    you an example -- if you had weekly checks of

16    tablets, does that still cause you concern, given

17    that at any point a tablet could be compromised?

18         A.    Yes.

19         Q.    And explain that to the Court.

20         A.    Well, I mean, there are gaps in periods of

21    times when the tablet is not checked.  It just takes

22    one instance to compromise the tablet, and you have

23    access.  It's as simple as that.

24         Q.    And would that -- even if -- let's just,

25    hypothetically speaking, if somebody in Torrance

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1421

```
 1    County compromised theirs in Otero County, could they
 2    then communicate with each other?
 3         A.   That's a possibility, from what I know.
 4              MS. ARMIJO:  I have no further questions.
 5              THE COURT:  I thank you, Ms. Armijo.
 6              Mr. Namoca, thank you.  I appreciate your
 7    testimony.  You may step down.
 8              All right.  Do you have any further
 9    argument, Ms. Armijo?
10              MS. ARMIJO:  No, not unless the Court
11    has -- no, I just wanted to be able to give the US
12    Marshal's side of it, and the security concerns.
13              THE COURT:  All right.  Thank you, Ms.
14    Armijo.
15              Anyone else on the defendants?  I'll give
16    you the last word on the motion, Mr. Villa.
17              Mr. Esquibel?
18              MR. ESQUIBEL:  Thank you, Your Honor.  Your
19    Honor, the problem that we have here is that, again,
20    we have a protection order that we set out, and we
21    have actually a system that was set up for checks and
22    balances.  The system -- in order to get access to
23    the wireless system, the individual, as has been
24    talked about, has to wipe their system clean.
25              Okay.  Your Honor, I received a degree in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1422

1  management information systems, was a computer

2  programmer for three years.  I've worked at several

3  companies.  And the things that they're talking about

4  doing are a little bit sophisticated.  I think 60

5  percent of the attorneys here have said, "I don't

6  even know how to do that."  And we have to remember

7  that there is a good portion of our clients who have

8  been in custody for so long that this is their first

9  experience with a computer.  So we're having to have

10  all these moons aligned in order to have this done.

11           Now, there is no 100 percent perfect system

12  for anything.  And I don't think anyone is ever going

13  to disagree.  But what we have is a system where, if

14  they're diligently checked once a day, twice a day,

15  to look, it's not like the person can wipe their

16  computer, get on the internet, then get all their

17  discovery back.  The second that they wipe their

18  system and set it back to factory default, everything

19  is lost.  And it's very easy to check.  And it

20  doesn't require an invasive procedure or anything big

21  to be done.

22           None of us have had the opportunity to talk

23  to New Mexico Corrections IT department, but I find

24  it completely dumbfounding that a company would

25  create a piece of hardware, like a motherboard, that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1423

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 170424

 1    would have a wireless card integrated in it, so that

 2    it was part of a motherboard.  That's an object that

 3    you create, because they fall apart, to be able to

 4    pop in and pop out.  I was sent the specs for this

 5    machine from Russ Aoki's office.  It clearly showed

 6    that there was an addition of a wireless card there.

 7           If we can't get that done, the problem that

 8    we have is we have a July date that's moving quickly,

 9    a lot faster than several of these co-defendants

10    would like, and they have no access to discovery.

11    The tablets, again, might be an imperfect solution.

12    But it's a solution that balances the needs of our

13    clients, and in this case we need to not forget about

14    that.

15           I very seriously doubt that if that goes

16    away, that they're going to be provided with paper

17    discovery within 24, 48 hours.

18           And the thought that they're going to put

19    one machine in each facility for anywhere from four

20    to more people to have to share, I don't believe that

21    they're going to let them review the discovery in a

22    group.  That means that everybody is going to be

23    limited.  So we're, therefore, limiting their

24    discovery.

25           As far as the amount of paperwork, I don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1424

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171425

```
 1    doubt that there is less than actual 50,000 unique
 2    pages.  But the problem is that it has been --
 3    they've been duplicated in different cases, and we
 4    don't know which is the same document in all of them.
 5    And we'll never know.
 6            Your Honor, the clients need these tablets.
 7    They're their lifelines.  And I don't think that
 8    there is going to be anyone here who is going to
 9    sacrifice having access to their discovery to get on
10    Facebook and update their status, or email people, or
11    plot and scheme to get something done.  And if they
12    are going to plot and scheme, it's going to take
13    quite a bit of work to have somebody drive to the
14    facility, set up a hot spot.  Things like that can be
15    detected.  Anybody can pull up their phone and look
16    at what are the wireless signals around, and what can
17    be jumped on.  These guys are going to have to
18    coordinate with other facilities to be on at the
19    exact same time.  And quite frankly, it's not simple
20    to get some of this stuff done, and it's especially
21    not simple for users who are not sophisticated.
22            We'd like the opportunity to check with
23    Corrections, and see if there is a workaround.  I
24    don't know if Corrections now is saying that they're
25    just going to take their tablets and go home.  If
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   that's the case, then our clients don't have

2   discovery.  It's going to take us, even best case

3   scenario, 30 days to get a machine put together, a

4   very basic machine put together, to get back in our

5   clients' hands.  But the reason why the technology

6   for them is so important is that there is so much

7   discovery that having the technology allows them to

8   do searching, basic searching, so that they can go in

9   and type in their own name and get all the pieces of

10  paper that come up with their name, just as a

11  starting point.  And then they can go back and forth.

12          All of these facilities are going to limit

13  the amount of paperwork.  They're not going to be

14  easily able to go between different discovery and

15  different things.

16          And as also has been stated, we also need a

17  way for them to watch the videos and listen to the

18  phone calls.  A lot of the CI materials that we have

19  are from the contraband cellphone and wiretaps that

20  have gone there.

21          Your Honor, we would just ask that, as the

22  US Marshals have stated that the Court does have the

23  ability in this case to ask that they be given back.

24          And I think that this is much like the

25  sheet that covered Mr. Baca early on, I think that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1426

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173427

```
 1    there is a level of maturity and ability to act right
 2    that we can have, especially since all of this comes
 3    from people that are working with the Government who
 4    do these acts and are ruining everything.
 5            THE COURT:  All right.  Thank you, Mr.
 6    Esquibel.
 7            Anyone else want to say anything?  Ms.
 8    Johnson.
 9            MS. JOHNSON:  Your Honor, I just wanted to
10    clarify a point that was raised during the redirect
11    of Mr. Namoca.  Your Honor, each one of these
12    facilities -- something that was not raised in my
13    cross because I didn't anticipate that coming up in
14    my redirect -- but every one of these facilities has
15    a patrol unit that patrols the parking lot.  So if a
16    car is parked -- and I don't know if the gentleman
17    from Torrance County has left -- but if a car is
18    parked in the parking lot for a period of time, and
19    the person is not an attorney, or the person is not
20    leaving, they are approached and asked to leave the
21    grounds.  So someone can't just go park outside, park
22    outside a facility, and establish a hot spot.  They
23    will promptly be spotted and asked to leave.  So that
24    is an issue that I wanted to make sure the Court is
25    aware of, that this is not just something that can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1427

```
 1    happen.
 2              THE COURT:  All right.  Thank you, Ms.
 3    Johnson.
 4              Anyone else?
 5              MR. LOWRY:  Your Honor, just briefly.
 6              THE COURT:  Mr. Lowry.
 7              MR. LOWRY:  When Ms. Armijo first sent the
 8    email inviting us to go inspect the tablets, like I
 9    said earlier, we immediately took her up on that, but
10    we've never had the opportunity.
11              As part of that email, we asked that any
12    tablet that was known to be compromised be preserved
13    for evidence in this matter.  And I just wanted to
14    put that on the record, Your Honor, that all the
15    compromised tablets that we know of, that are in the
16    possession of confidential human sources of
17    information in the Government's employ, be preserved
18    so we can -- at some point in the future, you have a
19    motion to compel access to electronic devices by Mr.
20    Baca's team.  And we'd like to get access to those
21    devices as well, so we could see precisely how these
22    confidential sources used, and perhaps abused, the
23    devices in terms -- to get contraband.  The
24    Government made the comment that they could download
25    pornography, or what have you, from the internet.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1428

```
 1              I stand firm in my offer to have Mr. Baca's
 2    tablet inspected and returned.  We're confident that
 3    there has been no misuse.  We'd like to get that back
 4    to him.  But our concern is that the Government
 5    informants were the ones misusing and abusing and
 6    downloading contraband.  And the defense teams are
 7    entitled to know that, Your Honor.  So we'd ask that
 8    they be preserved.
 9              THE COURT:  All right.  Thank you, Mr.
10    Lowry.
11              Anyone else?
12              MR. BENJAMIN:  Your Honor, I just want to
13    simply state that my representations on the record
14    are by the reading of the statement of cause,
15    Document 1107.  That's where I obtained my belief.
16              THE COURT:  All right.  Thank you, Mr.
17    Benjamin.
18              All right.  Anyone else?
19              Well, the marshals are just doing their
20    job.  And I think we can all thank the marshals for
21    their hard work in this case.  They have worked
22    extremely hard, and tried to keep everybody safe in
23    the prisons, in travel, here in the courtroom.  So I
24    think we owe a lot of appreciation for the way that
25    they've worked hard to try to balance a lot of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1429

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176430

1    things.

2          I do think under my opinion in Folse, which

3    I issued in response to a motion that Mr. Vigil

4    filed, this is an area in which I do think I retain

5    jurisdiction and the power, because it goes to the

6    interference of effective assistance of counsel.  I

7    think I have the power and the duty to ensure that

8    counsel are effectively representing their clients.

9          I think we've worked hard on the protective

10   order.  We've worked on these tablets.  We've worked

11   hard to create a system that works.  And I'm

12   reluctant to crater the system unless I feel that

13   it's necessary.  I think this may be an ongoing

14   discussion.  I know it's going to be an ongoing

15   discussion because of what I'm going to say.  But I

16   am going to grant the motion for the immediate return

17   of the tablets.  I don't think I have anything in the

18   short term that is going to fill it in.  So the

19   tablets will be returned immediately.

20         What I'll also order is that within three

21   days, which will basically be by the end of the week,

22   I need to have in my hand what modifications to the

23   protective order we need to put in place to reduce

24   the anxiety of the marshals to these tablets being in

25   the facility.  If there is some daily check, some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1430

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 177

```
 1    more frequent check, something that can be done to
 2    reduce their concern, I'm probably game for it.  So I
 3    think defendants, as you get the request from the
 4    Government, be mindful that I'm going to probably,
 5    given that I'm putting the tablets back in the
 6    defendants' hands, I'm going to be receptive to the
 7    Government having some ability to check these things
 8    to make sure that there is nothing going on.
 9            So I'll give them three days to do it.  If
10    you want to respond to what they have, but I want to
11    put in some protocols.  So be charitable to the
12    Government when you get their list of things, that
13    they're working with the marshals to try to reduce
14    anywhere anxiety about them going in.
15            Long-term, I'm receptive to something more
16    than -- you know, something different.  If we want to
17    go the laptop route, that's fine.  I can check with
18    CJA and see if I can do more, I'm fine there.  If we
19    want to go a different direction, I'm receptive to
20    that.  But I think I've got to get something in place
21    immediately to keep this case on-track, keep the
22    defendants being represented effectively, and ensure
23    that, you know, that we're giving the defendants
24    access to the materials they need.
25            I don't need a gap in this.  And so I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1431

 1   about the only way to prevent the gap is to get the

 2   tablets back in their hands.

 3           To the defendants themselves -- and I would

 4   ask every counsel to talk to their defendant about

 5   it -- help us out, guys.  I mean, you know, you've

 6   sat here and listened to a lot of stuff.  And it may

 7   have made you interested in doing something.  Don't

 8   do it.  Because if you didn't catch everything,

 9   you're going to lose all your data.  I mean, you're

10   going to be caught promptly.  So you're going to lose

11   all your data, and we're going to know who loses it.

12   And so work with us.  We're trying to get you the

13   documents in your hands.  So don't use these things

14   for anything else.  Just use them for looking at the

15   documents that are on there.  Because if you're not,

16   it's going to be a rather stupid thing, because

17   you're going to lose all your data, and my sympathy

18   level is going to go way down for you, as far as

19   trying to make sure that you get these materials.  I

20   may move more slowly in making sure you get

21   documents, and move on to more pressing matters if

22   you're going to sit there and do that.  So counsel,

23   talk to your defendants.  And defendants, don't do

24   it.  It may sound interesting, it may sound fun, but

25   don't do it.  It's not going to help anybody, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1432

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

```
 1    it's not going to especially help you.

 2              All right.

 3              MS. ARMIJO:  Your Honor?

 4              THE COURT:  Ms. Armijo.

 5              MS. ARMIJO:  Before the return of them, can

 6    we make arrangements to have the inspection done

 7    since they'll be inspected anyway?

 8              THE COURT:  How quickly can that be done?

 9              MS. ARMIJO:  I believe the tablets are here

10    in this building.

11              THE MARSHAL:  Here, and in Las Cruces.

12              MS. ARMIJO:  Here, and in Las Cruces.

13              THE COURT:  Anybody have objection to the

14    marshals checking them to see if they've been

15    tampered with in any way?

16              MR. BENJAMIN:  Your Honor, if we might just

17    structure it so we can go downstairs at the end of

18    the hearing, and just run through it, just counsel

19    with a marshal present, would be my request.

20              THE COURT:  Would that work for you?

21              MS. ARMIJO:  I believe that they would need

22    to know the password, is that correct?  They would

23    need to know their password.  Their attorney --

24              THE COURT:  What if the defendant gave

25    their counsel the password and then they went down
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1433

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 180 0434

 1    and all of them look at it before they leave?  Would

 2    that be okay?

 3              THE MARSHAL:  I'll bring them up here, Your

 4    Honor.

 5              THE COURT:  Okay, that's fine.  SO they're

 6    going to bring them up here.  Get your password from

 7    your client.  Then you can come over there and look

 8    during a break, or something like that.  That way, it

 9    won't interfere with them getting the defendants out.

10              Ms. Harbour-Valdez?

11              MS. HARBOUR-VALDEZ:  Your Honor, for those

12    of us who have already passed inspection, would our

13    clients' tablets be returned today?  I think Ms.

14    Armijo is shaking her head yes.

15              MS. ARMIJO:  Yes.

16              THE COURT:  So if they've already been

17    cleared, you'll get them back today.

18              MR. VALDEZ:  Thank you.

19              THE COURT:  All right.  Let me get my

20    papers here, and we'll go to the next issue.

21              All right.  The next issue that I have is

22    Ms. Johnson, an issue that I guess we've kind of

23    talked about already.  But it's your formal motion, I

24    think, to -- for severance.  I think that's the next

25    one up.  Is there anything more to be said on it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1434

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 181

1          MR. LOWRY:  Your Honor, I have one

2    housekeeping matter.

3          THE COURT:  If Ms. Johnson wants to yield

4    the floor, she can.

5          MS. JOHNSON:  No problem.

6          MR. LOWRY:  On the request to preserve --

7    I'm a little concerned that a confidential human

8    source is going to abuse their privileges, get their

9    tablets back and be able to continue to tinker with

10   the data that's on there.  Can we have some kind of

11   ruling on the preservation request?

12         THE COURT:  I don't get the request.  Are

13   you basically roundabout asking that cooperating

14   witnesses not get tablets?

15         MR. LOWRY:  The ones that abused their

16   tablet privileges, yes, Your Honor.

17         THE COURT:  Well, I'm denying that request.

18         All right.  Ms. Johnson.

19         MS. JOHNSON:  I'm sorry, Your Honor.  You

20   wanted for me to reargue my motion to sever?

21         THE COURT:  Oh, I'm not excited about that.

22   But I just -- you know, you did have a formal motion.

23   You raised it earlier.  Can we just consider

24   everything you argued to have been argued, and I've

25   denied the motion?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.                                  1-800-669-9492
PROFESSIONAL COURT                                 e-mail: info@litsupport.com
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2436

1          MS. JOHNSON:  Well, Your Honor, there is

2     still the Bruton issue.  I've argued that.  So I'd

3     ask that the Court take it under advisement at this

4     time, because we do raise the Bruton issue, and there

5     are some very serious Bruton concerns.

6          And Your Honor, with all due respect, I

7     understand the Court has denied the motion to sever.

8     But I'd like to point out something, Your Honor, that

9     the Court basically denied the defendants in Counts 1

10    through 5 their motion to continue, which puts Mr.

11    Gonzalez in a very tenuous situation, because you

12    have defense counsel and their clients, essentially,

13    all looking at Mr. Gonzalez, and in some form putting

14    pressure on Mr. Gonzalez to cede his right to -- his

15    constitutional and speedy trial right.

16         THE COURT:  I'm rather confident you're not

17    going to bend to any pressure here.

18         MS. JOHNSON:  I won't, Your Honor.  My

19    concern is my client, in that he has asserted his

20    right.  And that, obviously, in a case of this nature

21    you have one defendant who is strenuously asserting

22    his right to a speedy trial, and you have defendants

23    whose attorneys have said, "I'm not ready for trial."

24    So what happens once they leave this courtroom is a

25    concern that I have, Your Honor.  And Mr. Gonzalez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1436

```
 1   insists on his right to a speedy trial.
 2           So I, once again, would ask -- respectfully
 3   ask that the Court reconsider it, and perhaps grant
 4   the motion to continue as to Counts 1 through 5, and
 5   let us go to trial on Counts 13 through 16.
 6           And as to the motion to sever, Your Honor,
 7   I think I've argued it, unless the Court wants me to
 8   continue arguing -- I'm happy to do that -- but I
 9   would ask that the Court not completely deny it,
10   because we do have the Bruton issue.
11           THE COURT:  All right.  Thank you, Ms.
12   Johnson.
13           Any other defendant on that issue?
14           Mr. Castellano, you've been charged with
15   severances.  Anything else you want to say on that
16   issue?
17           MR. CASTELLANO:  Just a question.  What
18   kind of pressure does she fear for her client,
19   because -- something coercive from the other
20   defendants?  Is it something else?  I just want to
21   get clarification on that.
22           THE COURT:  Well, if she wants to tell
23   us -- Ms. Johnson?
24           MS. JOHNSON:  I'm sorry.  I didn't hear Mr.
25   Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1437

 1              THE COURT:  Well, he wonders what kind of

 2       pressure you're going to feel, that you're talking

 3       about.  Are you worried about something physical or

 4       are you worried about something else.

 5              MS. JOHNSON:  No, Your Honor, not physical.

 6       But just a pressure for Mr. Gonzalez to, essentially,

 7       waive his right to a speedy trial, and to agree --

 8       because we are standing firm that we are going to

 9       trial.  We are prepared to go to trial in July.  But,

10       obviously, we have concerns that pressures may be

11       exerted.  I don't have anything specific right now.

12              But I do know that counsel for Mr. Garcia,

13       one of his attorneys has prepaid tickets to Europe

14       with his family in July.  So I'm very sorry.

15       Perhaps, Mr. Cooper will try the case alone.

16              But that's a concern, Your Honor, that I

17       think could be alleviated if the Court were to just

18       allow Counts 13 through 16 to go in July.

19              THE COURT:  All right.  Thank you, Ms.

20       Johnson.

21              Anything else, Mr. Castellano?

22              MR. CASTELLANO:  No, Your Honor.

23              THE COURT:  All right.  Well, I'm going to

24       deny the motion.  I may take a look at the Bruton

25       issue so I can give you, basically, kind of a motion

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1438

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 185 5439

1    in limine, if I've got the tools to do that.  But,

2    for the reasons stated this morning, I'm going to

3    deny the motion.

4           All right.  The next motion that we go to

5    is the motions we were arguing, I think, back in

6    February, when we were conducting the hearing.  So I

7    think that's Mr. Sanchez' -- let's see, is it

8    Sanchez'?  Okay, yes.  So I think it's Mr. Sanchez'

9    motion to compel the Government to reveal IDs of CIs.

10          I had heard something that sounded like

11   y'all were ready to -- y'all had an agreement on

12   these; is that correct?  Is this something that you

13   need to come up here, Ms. Fox-Young, to --

14          MS. FOX-YOUNG:  Your Honor, I think we'd

15   just like to put our agreement on the record.

16          THE COURT:  All right.  Then why don't you

17   come up, and maybe you and Mr. Beck can put it on the

18   record together.  Could y'all slow down and maybe

19   then tell me specifically as to which motions, so

20   that I make sure that we're taking care of motions.

21   I know y'all are dealing with particular CIs, but I'm

22   sort of dealing with motions.  So help me out there.

23          MR. BECK:  Yeah.  And I'll go ahead and

24   start, since I can barely read my own writing, and I

25   don't expect Ms. Fox-Young to read it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              But I think the motions that we're
2    discussing here -- and I will read the DeLeon
3    document numbers -- are Document No. 815, that's Mr.
4    Sanchez' motion; 817, Mr. Christopher Garcia's
5    motion; 829, which is Mr. Baca's motion; 872, which
6    is Mr. Alonso's motion; 869, which are Messrs. Troup
7    and Billy Garcia's motion.
8              And so the agreement that the United States
9    and the defendant have come to is sort of -- now,
10   Your Honor is pretty familiar with these protective
11   orders -- it will be -- we will disclose to the
12   defendants in their respective cases, to all of the
13   defendants, the CIs' identities, subject to an
14   attorney's eyes only, and attorney's staff,
15   obviously, protective order.
16             As the Court ordered in February, if that
17   is -- if that doesn't work for a defendant, certainly
18   we're not cutting off their ability to come to the
19   court and ask for disclosure of those identities from
20   the Court to their client.  So if they feel they need
21   to disclose those names to their clients, we're
22   allowing them -- we're not foreclosing their ability
23   to come to you and ask for that.  And we've also said
24   that we'll hear those requests, too, if they want to
25   come to us before they come to the Court.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1440

```
 1                 THE COURT:  Now, does this motion just
 2      cover Ms. Fox-Young's motion, or this is all of them?
 3                 MR. BECK:  All of them, right.
 4                 THE COURT:  All right.
 5                 MR. BECK:  We've also agreed that there are
 6      a certain number of -- I think Ms. Duncan called them
 7      known informants -- and I think she has a specific
 8      list of known informants.  And so these, as the Court
 9      has seen in other cases, are informants that,
10      basically, everyone knows who they are.
11                 THE COURT:  Pretty much everybody but me.
12                 MR. BECK:  Right.  Everybody but you,
13      that's right.  You know some of them now.
14                 With regard to those, as opposed to
15      delineating a list, I think what's most reasonable --
16      and I'll certainly let the defense attorneys disagree
17      with me, if they disagree -- I think what's most
18      reasonable is just to hold them to their obligations
19      under this order; that if they knew who those people
20      were before we disclosed the identities, they can
21      continue to discuss those identities with their
22      clients.  If they learn it from this, from this
23      disclosure, then those identities are subject to the
24      protective order.  And so we're not asking to -- for
25      all the attorneys to come to us and tell us who they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 188

1    know, or come up with a separate order.  We're just

2    willing to take them at their word that they're going

3    to abide by the protective order.

4            The known CIs also include defendants who

5    have pled guilty.  So they would be able to discuss

6    those former defendants who have pled guilty in these

7    cases with their clients as well.

8            The last part of this is that we've

9    asked -- to save, I think, a couple forests, we've

10   asked that the --

11           THE COURT:  A couple of what?

12           MR. BECK:  Forests.

13           THE COURT:  Okay.

14           MR. BECK:  We've asked the defendants to

15   withdraw their motions as opposed to asking the Court

16   to rule on them.  And we, the United States, have

17   agreed that if a problem comes up we certainly won't

18   hold them to those withdrawals.  If a problem comes

19   up, and they feel they need refile them, or withdraw

20   their withdrawal, however the Court wants to go about

21   that, that the United States won't stand in their way

22   in doing that.  So I think those are the United

23   States' agreements.  And if I missed something or I

24   misstated something, I think I'll be corrected here

25   shortly.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1442

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 189 443

```
 1              THE COURT:  All right.  Thank you, Mr.
 2    Beck.
 3              Ms. Fox-Young, anything there you disagree
 4    with, Mr. Beck put on the record?
 5              MS. FOX-YOUNG:  No, Your Honor.  Just to
 6    supplement, Mr. Beck informed the Court that the
 7    defendants -- and I won't speak for all counsel, but
 8    we reserve the right to litigate the issue as to
 9    whether our clients have access to the identities of
10    the informants who do not fall into the category of
11    known informants, as Mr. Beck described.  And I think
12    Mr. Beck said that.
13              He did not address -- and I don't think we
14    have agreement as to the time period in which these
15    identities will be disclosed.  I'd suggest that --
16    the Government has approached us, and they're ready
17    to make this disclosure.  It would be reasonable that
18    the Court order the disclosure be made within 10 days
19    or two weeks, something in that sort of timeframe.  I
20    don't know if the Government objects to that
21    timeline.
22              And lastly, I think we could determine that
23    the motions and the joinders would be moot upon
24    disclosure, but as the Government indicates, could be
25    reraised if we have an issue down the road.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1443

 1          THE COURT:  Instead of you just withdrawing
 2     the motion?
 3          MS. FOX-YOUNG:  Whatever the Court's
 4     preference would be.  I suppose we could withdraw and
 5     refile or just -- you know, the Court can order --
 6          THE COURT:  If there is a problem, then
 7     pinpoint the problem down the road?
 8          MS. FOX-YOUNG:  Yes, Judge.
 9          THE COURT:  All right.  Let me ask
10     Mr. Beck, anything that Ms. Fox-Young just said that
11     you have any problem with?
12          MR. BECK:  Not at all.  Your Honor.  And I
13     think that was largely the agreement.  I think in
14     Mr. Garcia's stand-alone case we agreed to disclose
15     one business day after the entry of the protective
16     order.  As I said to a number of counsel here, that
17     disclosure was less robust than this one will be.  So
18     I don't know we can make that.  But we will agree
19     now -- so the Court doesn't have to order, we will
20     agree to disclose the identities of these informants
21     within 10 days -- I think that's the shorter end of
22     what was proposed -- within 10 days of the entry of
23     the protective order.  And I will get a protective
24     order to circulate within this group before the end
25     of these hearings this week.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1444

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 191

1           THE COURT:  All right.  Can you live with

2    that, Ms. Fox-Young?

3           MS. FOX-YOUNG:  Yes, Your Honor.

4           THE COURT:  All right.  If I could put my

5    gloss on it.  Let's have the motions withdrawn, and

6    everybody understand they're being withdrawn without

7    prejudice, so that if they need to be refiled, or

8    probably refiled in some repackaged way, pointing out

9    what the current problem is.  Ms. Fox-Young, can you

10   live with that?

11          MS. FOX-YOUNG:  Yes, Your Honor.

12          THE COURT:  Mr. Beck?

13          MR. BECK:  Yes, Your Honor.

14          THE COURT:  Okay.  Mr. Castle?

15          MR. CASTLE:  Your Honor, I take a slightly

16   different approach to it.  I think, if the Government

17   is agreeing to do this, then the Court can order it.

18   The problem is, if we withdraw our motions, and the

19   Government agrees to do it, and then, for whatever

20   reason, can't comply, we have to refile everything

21   and we have to relitigate whether we're entitled to

22   it.

23          If they're conceding we're entitled to it,

24   then I don't see -- and it wouldn't take a forest.

25   All it would take is a one-page document saying the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Government is conceding it, and therefore, the motion

 2    is granted.

 3           The reason I'm concerned about this is, in

 4    the past, we have filed motions, and then the Court's

 5    ordered, and we still are in a position where we

 6    haven't received it, we'll be able to file a motion

 7    for sanctions with Your Honor.  But if there is no

 8    order granting these motions, then we're back to

 9    square one, where we have to go through the whole

10    process of showing why we needed these informants, et

11    cetera.

12           In addition, in our reply to one of our

13    confidential informants, they indicated that the

14    person was deceased.  And we -- in our reply, we

15    indicated the Government needed to inform us when

16    that person died, so that we could analyze it for

17    whether it is grounds for a delay in indictment

18    motion.  So I don't know if the Government is willing

19    to agree to provide that information to us.  But we

20    would ask for that addition.

21           THE COURT:  Well, I guess if the Government

22    is giving you the material, I'm not sure why you're

23    forcing everybody to argue motions that they're

24    giving, and me writing an opinion to determine

25    whether you're entitled to it or not.  If they're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1446

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 193 of 447

1   giving you the information, seems like a lot of

2   wasted effort.

3           MR. CASTLE:  No.  I think they're agreeing

4   that they should produce it.  That means that, you

5   know, I don't think we have to argue it.

6           THE COURT:  I think they're agreeing to

7   produce it.  So I'm not inclined to issue any order.

8   I'm not inclined to write an opinion giving you the

9   stuff.  If there is a problem, you can come back to

10  me.

11          MR. CASTLE:  Okay.  Then, with regard to

12  the one informant that had died, can we have an order

13  for the Government to let us know when that person

14  died so we can make the appropriate motion?

15          THE COURT:  Do you have any problem with

16  that, Mr. Beck?

17          MR. BECK:  You don't need to order that,

18  Judge.  If we have that information, we're happy to

19  supply it.

20          THE COURT:  All right.  Thank you,

21  Mr. Castle.

22          Mr. Adams?

23          MR. ADAMS:  Yes, sir.  Judge, I just wanted

24  to make sure the record was clear on our motion.  It

25  was listed as 817, which is correct, in the 4268

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1447

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 194

 1    case.  It was number 146 in the 4275 indictment, and

 2    number 286 in the 1613 indictment.

 3           And my only question of clarification is,

 4    for the 4275, we received a list of some of the

 5    documents as to who the sources were.  And I assume

 6    we'll also be receiving the unredacted copies of the

 7    discovery at some time in the near future?

 8           MR. BECK:  No, Your Honor.  And this goes

 9    to -- I mean -- so there are certain things that we

10    redacted because they are PII.  There are also

11    certain things that we redacted because they are ways

12    and means of investigation.  So we won't be taking

13    away those redactions, because they certainly would

14    be telling about the way certain law enforcement

15    agencies conduct confidential informants, which I

16    don't think falls within Roviaro, or Brady or Giglio.

17           So I will distinguish that, I think if

18    there are certain documents that, perhaps, defendants

19    want a birth date or something unredacted, we redact

20    those, or addresses, PII, certain things like that,

21    we might consider that.

22           But the disclosure in this case would be

23    the identities.  And so to give a little background

24    to the Court and for all defendants, since everyone

25    will be receiving this:  The way that we put together

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1448

 1    the disclosure in Mr. Adams and Ms. Sirignano,

 2    Mr. Garcia's drug trial case, is we put a letter

 3    together with the CIs' identity, and then the Bates

 4    numbers of reports where that CI is the CI in those

 5    reports.

 6            So it's probably more than -- well, I don't

 7    know if it's more than they're asking for -- but they

 8    get a lot of information.  I don't think that they

 9    need -- and I don't think it's proper to disclose

10    information that would reveal certain methods and

11    means of law enforcement.

12            THE COURT:  All right.  Mr. Adams?

13            MR. ADAMS:  We'll take what they --

14    pursuant to the agreement that people entered into,

15    we'll take the list and see where that leads us.  But

16    our motion, Your Honor, had been to reveal the source

17    and to unredact the materials.  So I anticipate that

18    we'll be back at least on some of these matters soon.

19    If the Government looks at some of them, it may be

20    that they can agree to do that.  If not, we'll be

21    here with all 17 motions.

22            THE COURT:  Well, and I've ruled on this

23    several times.  And I'm not going to force the

24    Government to just unredact stuff for everybody's

25    interest.  You've got to make a Brady showing.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1449

```
 1   They've got to look at it.  If they're redacting

 2   material, they've got to look and see if it falls

 3   within Brady, Giglio, Rule 16.

 4          But, you know, some of this stuff, like

 5   Social Security numbers and addresses of places, and

 6   stuff like that, I've cautioned everybody about.  I'm

 7   not going to probably require the Government to

 8   disclose that stuff.

 9          So, if you come back, come back with a real

10   rifle shot, rather than just a shotgun wanting

11   everything unredacted, because you're probably not

12   going to win that.

13          MR. ADAMS:  Yes, sir.  Thank you.

14          THE COURT:  All right.  Other than

15   Mr. Castle, it looks like everybody has got an

16   agreement.  Anybody --

17          MS. JACKS:  As usual, I'm a cog in the

18   wheel.  Amy Jacks on behalf of Mr. Sanchez.

19          Here's my concern, and I was just

20   discussing with Mr. Beck -- the first I heard of this

21   agreement was at 1:12 this afternoon.

22          I think there is an issue with agreeing to

23   never identify or discuss the identity of an

24   informant with our clients.  I think it's really a

25   two-fold problem.  One, I think it creates a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1450

1   potential wall or problem just in client relations,

2   where we know things that we aren't permitted to

3   discuss with our clients.

4          But the other thing is, in order to perform

5   the job of a defense lawyer competently, one of the

6   things I'm supposed to do is discuss the witnesses

7   with Mr. Sanchez, and find out what he knows about

8   them, who they are, what sort of things they've been

9   involved in, various areas that should be pursued

10  with respect to investigation.  And so I'm reluctant

11  to agree to something where I'm never -- there is no

12  mechanism for me to ever discuss the identity of that

13  person.

14          THE COURT:  You've got two choices:  We can

15  take up your motion and you can argue them, and I can

16  decide whether they're going to be disclosed at all,

17  or you can take the offer.  What do you want?

18          MS. JACKS:  What I don't want to do is be

19  precluded from disclosing them or arguing about

20  disclosing them.

21          THE COURT:  I think Mr. Beck said you can

22  come back to him, and we'll take them one at a time.

23  I guess, if I were in your shoes, I'd take the

24  information I have, you probably already know anyway,

25  and see if you need to come back.  And if you come

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1451

```
 1    back, and Mr. Beck doesn't agree, you can come back

 2    to me.

 3              MS. JACKS:  And --

 4              THE COURT:  Otherwise, we take the motion

 5    up, and I'll decide whether you're going to get any

 6    disclosures this afternoon.

 7              MS. JACKS:  If we do agree -- and I want to

 8    have a chance to discuss that with my client -- we

 9    wouldn't be seen as waiving the argument that he is

10    entitled to know their identity at some point.

11              THE COURT:  I think Mr. Beck has made that

12    clear this afternoon, that you're not waiving that

13    argument.

14              MS. JACKS:  Well, I have one other point,

15    which is, in other situations like this, I think just

16    the fact that this person might be a witness for or

17    against my client permits me to discuss that with him

18    at some point.  So I'm not quite sure what additional

19    showing would need to be made.  It's unclear to me.

20    And I'm not sure there is any case law on it.  The

21    fact is that the defendants possess information the

22    lawyers don't about the bias, motive, and other

23    interests of the witnesses that will be potentially

24    testifying.

25              THE COURT:  I'm not sure what you want me
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1452

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9453

1    to do with that.

2            MS. JACKS:  Well, what I'd like is if as

3    part of this agreement, that we are entitled to

4    discuss the identity of these informants with our

5    clients at a date prior to trial.

6            THE COURT:  If you want that, we better

7    take up your motions.  It doesn't sound like you're

8    part of the agreement.

9            MS. JACKS:  Well, the agreement was

10   published at 1:12 this afternoon, Your Honor.  I was

11   actually walking back from --

12           THE COURT:  It's called court.  We're

13   having a motion hearing.  What do you want,

14   Ms. Jacks?  Do you want to be part of the agreement

15   or do you want to take up your --

16           MS. JACKS:  What I'd like is an opportunity

17   to discuss it with my client.  What I don't want to

18   cause is a problem between myself and Mr. Sanchez.

19           THE COURT:  Well, we're having a hearing.

20   Do you want me to take up your motion?

21           MS. JACKS:  I think, in terms of my motion,

22   my part of it, I think I fully argued it and sat down

23   as of the last court hearing.  We were in other

24   people's joinders, I think.

25           THE COURT:  All right.  Other than

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1453

```
 1   Ms. Jacks and Mr. Castle, anybody else have a problem
 2   with the agreement, as has been outlined by Mr. Beck
 3   and Ms. Fox-Young?  Let me see if anybody else -- Mr.
 4   Castle, it's not directed at you right at the present
 5   time.
 6            All right.  So I'm going to then understand
 7   that the motions that have been directed by all the
 8   defendants, except Ms. Jacks and Mr. Castle, are
 9   going to be withdrawn.  That will be 817, 829, 869 --
10            THE CLERK:  Not 869.
11            THE COURT:  Not 869.  Let's see, 817, 829,
12   and 872.  815 and 869 are the alive ones.  So 817,
13   829, 872 will be withdrawn pursuant to the agreement
14   that we have.  What's alive is 815, 869, which is
15   Sanchez and Garcia respectively.  Anyone else?
16            All right.  So that's what I understand the
17   agreement to be.
18            Mr. Castle?
19            MR. CASTLE:  Yes, Your Honor.  I thought
20   the Court had talked me out of it up there, but --
21   and I thought I, at that point, said okay.  But if
22   not, we'd prefer to have the agreement as outlined by
23   the Government than to go through the hearing.
24            THE COURT:  All right.  So Mr. Castle joins
25   the agreement, and his motion will be withdrawn.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1454

```
 1   He'll get the information.  If he needs to come back,
 2   he will.  What number is that?
 3              THE CLERK:  869.
 4              THE COURT:  That's 869.  All right.
 5              MS. JACKS:  And, Your Honor, I've had an
 6   opportunity to discuss things with Mr. Sanchez, and
 7   we will agree to withdraw 815 pursuant to the
 8   agreement.
 9              THE COURT:  All right.  So 815 will be
10   withdrawn as well.  And that will be 10 days, then,
11   from today, the identities will be disclosed.  If
12   people want more redactions, they want more
13   information, they want to use it differently, they
14   can -- those are withdrawn, but they're not withdrawn
15   with any prejudice.  They're free to renew those.
16              All right.  So I'm looking at my number 11
17   on the batting order, which I think is a sealed
18   motion to compel Rule 16 and Brady materials in order
19   to preserve law enforcement notes.  And, Mr. Villa,
20   Ms. Fox-Young, I believe these are your motions.  I
21   think the next two of them are as well.  So if you
22   want to argue them in different order you may.
23              MS. FOX-YOUNG:  Thank you, Your Honor.
24   We'd like to first argue the motion to compel, and
25   then follow with the motion to seal, unless the Court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    has an objection.

 2             THE COURT:  All right.  Go ahead.

 3             MS. FOX-YOUNG:  Okay.  Document 1037, which

 4    is our sealed motion to compel, asks for a number of

 5    categories of information.

 6             I'll just tell the Court to begin, a number

 7    of these items pertain directly to the voluntariness

 8    of statements that Mr. Perez is alleged to have made.

 9    Of course, as the Court knows, the voluntariness of

10    those statements is always an issue at trial,

11    under -- we cited Dickerson versus United States.

12             In addition -- and we haven't yet filed

13    it -- but we intend to file, as we've briefed, a

14    motion to suppress involuntary statements by our

15    client.  And on that basis we ask for additional

16    information pertaining to the circumstances

17    surrounding these statements.  We cite Rogers --

18    well, we will cite Rogers versus Richmond in our

19    motion to suppress.

20             As the Court knows, the prosecution has the

21    burden at a hearing on a motion to suppress to

22    provide the Court with a preponderance of evidence

23    that the statement is voluntary.  And so just as a

24    backdrop, so the Court understands, that is a context

25    for a number of our requests.  So under -- pursuant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   to Rule 16 and Brady and its progeny, we ask for

 2   first, any and all written and/or recorded statements

 3   made by Defendants Montoya, Armenta, and Martinez.

 4   These three defendants made at least -- each of them

 5   was interviewed, or proffered statements more than

 6   once in the immediate aftermath of the alleged murder

 7   of Javier Molina, much closer in time to any recent

 8   statements that they may have made.

 9          And as we briefed, none of these

10   defendants' prior statements to law enforcement

11   mentioned Rudy Perez in any way.  They don't mention

12   his involvement in the murder or conspiracy to murder

13   Javier Molina.

14          And these defendants all made statements in

15   2014.  The murder is alleged to have occurred in

16   March 2014.  And so we asked for the recent

17   statements that we believe these defendants made as

18   part of their cooperation with the Government.

19          The Government points out that in our

20   initial request we made a broad request for any and

21   all statements made by these defendants.  In our

22   reply we note that we confined this request to

23   statements made with respect to the murder of Javier

24   Molina, with respect to Counts 6 and 7.  And the

25   Court should know that the prior statements that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204

 1   these defendants have made, produced in discovery,

 2   with regard to Mr. Perez, are entirely consistent

 3   with our client's contention that he did not conspire

 4   to murder Mr. Molina by allowing pieces of his walker

 5   to be taken for the murder.  And so there simply is

 6   no other evidence from these defendants that

 7   Mr. Perez conspired and participated in that murder.

 8   Mr. Perez was in his cell at the time Molina died,

 9   and he was not a hands-on participant.

10           So we ask for those statements.  I think

11   they're clearly exculpatory and should be turned over

12   immediately.  And we cite Sommers; the prosecution

13   has an affirmative duty to disclose exculpatory

14   evidence on those.

15           The second category --

16           THE COURT:  Well, let's take these one

17   category at a time --

18           MS. FOX-YOUNG:  Sure.

19           THE COURT:  -- and maybe I can sort of get

20   my mind around each one of these categories.

21   Anything else you want to say on this first category?

22   What you're calling the "first category," it's your

23   paragraph 2 in your motion; correct?

24           MS. FOX-YOUNG:  In our motion, it is 1-A,

25   beginning on page 9, and continuing to page 11.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1458

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205

```
 1    guess, Your Honor, I'd just add that these materials
 2    are clearly in the custody and control of the
 3    Government.  We think that they're likely to uncover
 4    further admissible evidence, to help prepare our
 5    witnesses, to inform our trial strategy, and to
 6    assist in impeaching these witnesses, and in
 7    rebuttal.  And we'd cite Case versus Hatch, Tenth
 8    Circuit case from 2013.  I think this clearly meets
 9    the materiality standard with respect to these
10    statements.  We really require them in order to
11    properly investigate the case in advance of trial,
12    for additional witness interviews, investigation, and
13    other -- obtaining other information from sources
14    prior to trial.
15              THE COURT:  All right.  Thank you, Ms.
16    Fox-Young.  I know you had some people join you in
17    this motion.  Anyone else want to speak on -- I guess
18    we're talking about the written and recorded
19    statements of Montoya, Martinez, Armenta.  Anyone
20    else?
21              All right.  Let me have the Government
22    respond.  Let me see if I can take these in bites, so
23    I can get a handle on it.  Mr. Beck, are you arguing
24    this motion?
25              MR. BECK:  It sounds like it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1459

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206460

```
 1              THE COURT:  I assume there are some written
 2    and recorded statements of these three individuals
 3    that have not been produced?
 4              MR. BECK:  Yes, Your Honor.  And those are
 5    being withheld as Jencks materials, now that they are
 6    Government witnesses in this case.
 7              The United States understands that there
 8    may be materials that may be Brady or Giglio,
 9    depending on what is said in these, and the United
10    States is reviewing those.
11              THE COURT:  So you're going to take a
12    Jencks, Giglio, and Rule 16 review, and if you see
13    any Brady, Giglio, Rule 16, you'll produce that
14    immediately, and then the rest of it is Jencks
15    material, and you'll produce -- what's the date now
16    for this trial?
17              MR. BECK:  The date for this trial, I don't
18    know has been set.  This is the trial that now is the
19    second half of the severance order.
20              THE COURT:  I didn't ask that question very
21    well.  But when are you going to disclose the Jencks
22    material before the trial?
23              MR. BECK:  I think the Brady material -- I
24    think our discovery obligations and disclosure
25    obligations for Brady and Rule 16 are ongoing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1460

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7461

```
 1            THE COURT:  Right.  But you had indicated
 2    that y'all were going to do Jencks at a certain
 3    period, I thought, before trial.  Is my memory off?
 4            MR. BECK:  No, I think that's right.  I
 5    don't have that in front of me.  With the different
 6    trials that we have going here, two months?
 7            MS. ARMIJO:  Two weeks.
 8            THE COURT:  Two weeks before trial would be
 9    your Jencks disclosure.
10            MR. BECK:  Right.  So these statements from
11    Montoya, Armenta, and Martinez that were taken after
12    they agreed to plead guilty, in conversations with
13    the Government after this had taken place, are Jencks
14    statements, now that they are witnesses in this case.
15    The United States understands, of course, that for
16    certain information provided by these folks that will
17    be Brady and Giglio material, and that we will have
18    to disclose pursuant to that.  And we are reviewing
19    those, we'll review those, and disclose them.
20            And I think Ms. Fox-Young is correct, that
21    given the statements before these defendants pleaded
22    guilty, that may make more material Brady-Giglio than
23    would otherwise be.
24            So I'm sure that's an insufficient answer
25    for her without timing here.  But the United States
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1461

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

1    understands where she's coming from, and is reviewing

2    and will review closely this material and disclose

3    it.

4              THE COURT:  All right.  Thank you, Mr.

5    Beck.

6              That sounds like all you're entitled to.

7    Do you think you're entitled to more?  I know you'd

8    like more.  But do you think you're entitled to more?

9              MS. FOX-YOUNG:  Your Honor, I think we're

10   entitled to all the Brady and Giglio that these

11   statements contain.

12             First, I'd just like to point out that a

13   member of the prosecution team, at least one, was

14   present for all of these statements.  So I'm not sure

15   what extensive review would need to be made.  At the

16   time of the statements, the Government was made aware

17   of their content.  So I think the production should

18   be immediate or near immediate.

19             But, secondly -- I'm sorry, Your Honor, did

20   you have a question?

21             THE COURT:  Well, you know how that goes.

22   I mean, they probably have an FBI agent preparing a

23   302, and they've got to read the 302, and then make a

24   line-by-line determination as to whether it's

25   produced now or it's Jencks material.  So that can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1462

```
 1   take a little time.
 2           MS. FOX-YOUNG:  I understand that can take
 3   a little time.  We're several weeks out.  I think we
 4   may be at least six weeks out.  So I don't know what
 5   further delay would be justified.
 6           Secondly --
 7           THE COURT:  Let me ask Mr. Beck:  Can we
 8   put a deadline on when you'll complete your Brady,
 9   Giglio, and Rule 16 review, to decide which, maybe,
10   category this goes into?
11           MR. BECK:  Sure.  There is a lot of
12   statements here.  I understand we've got to review
13   that.  So I would say 30 days would be sort of the
14   short end, but we could get it done by then, which I
15   think would be June 9, if we're looking at today.
16           THE COURT:  What do you think about that,
17   Ms. Fox-Young?
18           MS. FOX-YOUNG:  We'd like it as soon as
19   possible.  But I understand the Government is working
20   on it, if the Court is comfortable with that
21   timeline.
22           But I would say, backing up, I think we're
23   entitled to the statements in their entirety.  And
24   here is why:  As Mr. Beck has acknowledged -- and
25   we've briefed and argued the prior statements of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1463

1   these defendants are exculpatory to Mr. Perez.  And

2   so the recent statements made in the context of their

3   cooperation, contemporaneous with their pleas, are

4   either consistent and also exculpatory, or clearly

5   impeachment.  Clearly, Giglio material, because

6   they're given in exchange for favorable treatment.

7   And think we're entitled to the statements in their

8   entirety on that basis.  Not merely to a review,

9   which of course, the Government should be doing as a

10  matter of course on all of this material for Brady

11  and Giglio.

12          I would also like to address the Jencks

13  deadline, but I think that's a separate issue.

14          THE COURT:  Let me ask Mr. Beck:  Do you

15  see a flaw in what Ms. Fox-Young is saying?  I mean,

16  that sounds -- if I was about to undertake your task,

17  I would think, with those eyes, that makes some sense

18  to me.  Do you see any flaw in it?

19          MR. BECK:  Well, I think there is

20  additional information.  And that would be that there

21  appeared to be statements from these defendants out

22  there that the United States doesn't have.  So I

23  think we've talked about, a number of times, their

24  reciprocal discovery in this case, which I think the

25  deadline has now passed.  We haven't been provided

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1464

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 211

1    reciprocal from all defendants.  We have been

2    provided reciprocal discovery from some.  And I think

3    Ms. Fox-Young and Mr. Villa are included in that;

4    they have provided us with reciprocal discovery.  So

5    for those statements we don't have, obviously, we

6    can't compare those with the newer statements.

7            Now, turning to what, I think, she's

8    getting at, that the entire statements may be Giglio,

9    I think she has a valid point there.  I think courts

10   also distinguished disclosure obligations in terms of

11   timing.  And I think this Court has distinguished

12   disclosure obligations in terms of timing between

13   Brady and Giglio.  Brady comes earlier.  Giglio must

14   be before the defendant pleas.  So I certainly see

15   what she's getting at.

16           And you asked me to answer a question, and

17   like any good attorney, I deflected.

18           THE COURT:  Well, you'll look at these

19   documents with --

20           MR. BECK:  I see her point.

21           THE COURT:  Because now you've had the

22   benefit of defense counsel saying how they're going

23   to use this.  And I'm not quickly coming to -- I

24   don't quickly see a flaw.  So take a careful look at

25   them with their arguments in mind.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  Did you want to address the
 2    Jencks?  Do you want to tackle that one, or have we
 3    already beaten that up enough over the last few
 4    months?
 5              MS. FOX-YOUNG:  I think we have thoroughly
 6    covered and beaten that dead horse.  And I think we
 7    can address that in the context of our --
 8              THE COURT:  Some dead horses need beating.
 9              MS. FOX-YOUNG:  In the context of our
10    scheduling order, although I would say that I think
11    that in this case an earlier Jencks deadline is
12    warranted.  But we can discuss that separately.
13              So on this category, we'd ask the Court,
14    particularly based upon Mr. Beck's recent assertions,
15    not just to ask the Government to do a review, but to
16    disclose the statements.  If there are statements by
17    these defendants that have nothing to do with the
18    Molina case, with Counts 6 and 7, we're not asking
19    for those.  But I think Brady -- I think even the
20    Government concedes that they constitute Brady and
21    Giglio material.  I don't know what the Government
22    cites, and I'm not aware of this Court's rulings
23    about Giglio being producible later --
24              THE COURT:  I don't think he's drawing a
25    distinction there.  Right, Mr. Beck?  You're going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1466

```
 1    to --
 2             MR. BECK:  No, Your Honor, I think there is
 3    a distinction between the timing of disclosure of
 4    Brady and Giglio material.
 5             THE COURT:  From Jencks?
 6             MR. BECK:  No, from each other.  I think
 7    this Court has looked at it in many opinions.  I
 8    think the Tenth Circuit and the Supreme Court have
 9    looked at it in Giglio, which is impeachment
10    material, they have said basically equates to Brady,
11    in terms of whether it may materially alter the
12    outcome of the case.  So, substantively, they have
13    said -- and "they" being this Court, the Supreme
14    Court, the Tenth Circuit -- have held that
15    impeachment material may materially alter the
16    outcome.  And so it is on the level with Brady.  But
17    they have made a distinction in terms of the timing
18    of disclosure, and they have said that Giglio
19    information must be disclosed before the defendant,
20    basically, can plead guilty.  The courts have held
21    that that comes right up to the morning of trial.
22    And I don't think we're holding this stuff for the
23    morning of trial.
24             But I do think that there is a difference,
25    in terms of when you must disclose exculpatory
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1467

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 1468

```
 1   material under Brady, and when you must disclose
 2   impeachment material under Giglio.  Those two things
 3   are different.
 4            THE COURT:  Well, if I have said that in
 5   the past, I certainly don't mind being reminded of
 6   it.  So if you have a cite to my opinions, or
 7   something where I've said in the past, you may well
 8   be right.
 9            MR. BECK:  I'm not sure you put it in my
10   words, which are great.  But I think that Your Honor
11   has cited to the Supreme Court decision, as I was
12   looking at it last week.  And I will find whichever
13   of Your Honor's opinions --
14            THE COURT:  Let's do this, because it's not
15   coming to my mind for me:  For the present time I'm
16   not drawing a distinction between Giglio and Brady
17   for timing purposes.  I'll make that ruling subject
18   to reconsidering, if I've written on this and made a
19   distinction in the past.  I certainly have made
20   distinctions between Brady, Giglio, Rule 16, and
21   Jencks.  But I don't recall making a distinction
22   between Giglio and Brady.  So I'll make that ruling,
23   but it will be subject to the maybe revisiting, if
24   I'm reminded that I've made an informed decision in
25   the past otherwise.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. FOX-YOUNG:  Okay.  Your Honor, just to
 2     clarify, is the ruling that the statements are to be
 3     produced, or that they are to be reviewed?
 4              THE COURT:  They're to be reviewed.  If you
 5     can live with the June 9th date, they'll need to
 6     produce all Brady, Giglio, Rule 16 material.  They
 7     need to be reviewed with the eyes of the arguments
 8     that you made and then the Jencks material be
 9     produced 14 days before trial.
10              MS. FOX-YOUNG:  Okay.  Thank you.
11              THE COURT:  So there may be some statements
12     that, you know, they make a statement that they don't
13     fall within Brady or Giglio or Rule 16, and so they
14     don't have to immediately disclose them.  And if they
15     don't, then it comes to you two weeks before trial.
16              MS. FOX-YOUNG:  All right.  Thank you, Your
17     Honor.
18              Is the Court looking at the clock?
19              THE COURT:  We can keep going.
20              MS. FOX-YOUNG:  Okay.  We'll move to the
21     second category of materials, which begins on page
22     11, Subsection B.  And that's plea addenda for the
23     same defendants:  Defendants Montoya, Armenta, and
24     Martinez have each pled guilty to Counts 6 and 7, and
25     their plea agreements -- not the addenda to those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1469

```
 1    plea agreements -- but the plea agreements have been
 2    made public.  And, Your Honor, we argue that -- and I
 3    think it's pretty clear that the plea addenda for
 4    these defendants contain something with regard to the
 5    benefits that each these cooperators expect to
 6    receive in exchange for subsequent testimony.  And
 7    this really is classic impeachment material.
 8              So pursuant to Brady, and also pursuant to
 9    Rule 11 of the Federal Rules, we cite United States
10    v. Roybal -- which is your case from 2014 -- the
11    addenda should be turned over.  "Rule 11(c)(2)
12    provides very clearly that parties must disclose the
13    plea agreement in open court when the plea is
14    offered, unless the court for good cause allows the
15    parties to disclose the plea agreement in camera."
16    We have reviewed the public recorded -- the
17    recordings of the public portions of these
18    defendants' pleas, and there was no good cause
19    finding, there were no findings whatsoever by the
20    magistrates who took these pleas.  The Government did
21    not provide any basis for good cause to refrain from
22    disclosing the addenda, or to allow them to disclose
23    the addenda in camera.  And there is some allowance
24    under the rule and the case law that that may be
25    done.  But Rule 11(e)(2) is very clear that all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1470

1  material terms or material details or elements of

2  agreements must be disclosed.

3          THE COURT:  So you don't know if there is

4  an addenda?  You're just saying, if they exist, you

5  want them turned over?

6          MS. FOX-YOUNG:  Well, Your Honor, I don't

7  know 100 percent, although addenda are referenced in

8  the pleas.  The written pleas could be boilerplate

9  language, but I don't think it is.  And based upon

10  the hearings that were conducted, it's clear that

11  there were some portion of the plea hearings that was

12  done at the bench.  And we believe the subject of the

13  plea addenda was discussed there.  And so for all

14  those reasons, we think we're clearly entitled to the

15  addenda.

16          Additionally -- and the Court has made

17  reference to the First Amendment right to access

18  documents, materials, portions of the case, and

19  portions of documents, in this case in a prior

20  hearing, which we cite from June 2, 2016.  When the

21  Court deals with the issue of filing documents under

22  seal, and the encourages the parties not to file

23  documents under seal without a basis, the Court there

24  is really dealing with the First Amendment right that

25  we see in Copley, In Re:  Copley Press, Inc. from the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1471

```
 1   Ninth Circuit 2008, which we cite, which says, "The
 2   public has a First Amendment right to access the
 3   cooperation addendum in that case to a plea
 4   agreement," finding that the district court did not
 5   abuse its discretion in unsealing those portions of
 6   documents, describing cooperation.
 7          We also cite the D.C. District, Washington
 8   Post versus Robinson, where the Court vacated orders
 9   sealing a plea agreement of a criminal defendant who
10   cooperated in the prosecution of Mayor Barry, for
11   cocaine possession, and saying the same thing:
12   "Under the First Amendment, plea agreements are
13   presumptively open to the public and the press."
14          We cite U.S. versus McVeigh:  "Sealed
15   orders are really to be narrowly tailored to the
16   compelling fair trial interests at stake."  And other
17   cases.  I won't go through everything.
18          For all those reasons, pursuant to Brady,
19   Rule 11, and the First Amendment, we don't think the
20   requisite findings have been made by this Court or by
21   a magistrate to seal these materials and to prevent
22   Mr. Perez from accessing them.  And we think the
23   Court should order them disclosed.
24          THE COURT:  Well, I can disclose I don't
25   think I've taken a single plea in this case.  So, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1472

1    know, I can sort of indicate that I haven't ordered

2    it.  So if anything is being ordered, it's being done

3    at the magistrate judge level.

4              MS. FOX-YOUNG:  Yes, Your Honor.  When I

5    said "the court," I meant broadly.

6              THE COURT:  I know.  I know, but I just

7    wanted to indicate that -- so when I'm asking

8    questions here, it's because I don't know what

9    exists, because I haven't sealed anything.

10             MS. FOX-YOUNG:  So it's our position that

11   Mr. Perez' right to a fair trial is impaired, the

12   withholding of these addenda, for these reasons.

13             THE COURT:  All right.  Anybody else want

14   to speak on that before I hear from Mr. Beck?

15             Mr. Beck, let me ask questions here.  If

16   you don't want to answer, we can figure out what to

17   do.  But the first question:  Are there addenda to

18   the plea agreements?

19             MR. BECK:  I'm thinking about how to answer

20   this.  I think it depends on how Your Honor, and I

21   guess the rules committee -- which we'll never

22   know -- defined "plea agreement."  Because I think

23   there are different ways.  I think there can be a

24   written plea agreement.  And in some of these cases

25   there certainly are addenda.  But in some of these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1473

1    cases the addenda was entered after the plea

2    agreement was entered by the defendant, but it was

3    contemplated at the time.  So I guess, without making

4    too fine a distinction, the answer would be yes.

5            THE COURT:  All right.  And are those filed

6    under seal?

7            MR. BECK:  They are not filed at all.  I

8    believe -- I don't have a plea agreement in front of

9    me -- but I'm sure everyone else in this room is much

10   more familiar with the plea agreements than I am --

11   in this district than I am.  But I believe the plea

12   agreement refers to the plea agreement in any

13   addenda.  It doesn't say that the addenda --

14           THE COURT:  That's just standard plea

15   language; correct?

16           MR. BECK:  That's my understanding.

17           THE COURT:  Well, let me --

18           MR. BECK:  So I guess I don't see any

19   requirement that a good cause finding needs to be

20   made on the record specifically.  I do -- I have read

21   the comments to the rules.  And I don't have them in

22   front of me, but I believe there is a rules committee

23   comment that says that the good cause findings can be

24   made on the record or in camera on a case-by-case

25   basis.  And that's -- so that's not a quotation, but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1474

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221

1    memory serves me, that's sort of --

2          THE COURT:  Well, without arguing whether

3    these were properly sealed, or if they were never

4    filed -- I guess if they're never filed -- I'll come

5    back to some questions I have on that -- but would

6    you agree that they're Brady material, or at least

7    Giglio material?

8          MR. BECK:  If I were sitting in Ms.

9    Fox-Young's shoes, I would want to impeach the

10   witness with it.

11         THE COURT:  So regardless of how we got

12   here, do you have any problem with me ordering the

13   production of the addenda to plea agreements?

14         MR. BECK:  Yes, I do.  But I can see that

15   you probably would have legal grounds to find that

16   they are Giglio.  And as you're ordering us to

17   produce Giglio, you'd likely conclude that we produce

18   those as Giglio.

19         THE COURT:  Yeah, it seems to me this is

20   sort of classic impeachment material.  What did you

21   get from the Government to sit here and testify?  So

22   I think it's got be turned over.  I'll take a look at

23   your -- anything you want to say on timing.  It seems

24   to me it's probably --

25         MR. BECK:  I think you and Ms. Fox-Young

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1475

```
 1    are right.  I think it is impeachment material and it

 2    is Giglio.

 3              THE COURT:  We don't need to tackle this

 4    issue today, but it gives me a little concern to find

 5    out that there are continuing agreements after a plea

 6    is taken.

 7              MR. BECK:  No.  I hear what you're saying,

 8    and I misspoke about that, because I agree --

 9    because, obviously, like I said, everyone in here is

10    more familiar with plea hearings than I am, but --

11    maybe not everyone, but most -- they ask:  Are there

12    any other agreements that you have before you enter

13    this plea.  And I misspoke, that I think in one or

14    two cases it was signed immediately after.  But it

15    was part -- and that's why I said it is -- the plea

16    agreements have addenda, because it is part of the

17    agreement.  So the parties contemplate that.

18              THE COURT:  Okay.  Well, just give some

19    thought that, if you have some defendants who are

20    entering into additional agreements afterwards --

21              MR. BECK:  Well -- and that's what I'm

22    saying I misspoke about is -- and why I said it

23    depends on what the Court and the rules committee are

24    referring to as a plea agreement, and I think that's

25    a distinction we made in contract law.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1476

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223

```
 1              What I'm saying is is that the addenda are
 2     part of the plea agreements.  It may have been signed
 3     after the plea hearing, but all the parties entered
 4     into the addenda with the plea agreement, even if it
 5     wasn't -- and we're not talking days or months or
 6     weeks or minutes.  We're talking, like, immediately
 7     afterwards.  So that's what I'm saying, is that --
 8              THE COURT:  Well, let's do this:  We don't
 9     need to get into it much today.  But you may want to
10     go back and look at those with the defendants.
11     Because most of my experience has been that, when I
12     take a plea, you know, they're sitting at the podium,
13     and they're signing it right there, or confirming
14     it's their signature, and it's a very formalistic
15     thing.  If there is agreements afterwards, just give
16     some thought whether they need to be repled, so that
17     the defendant goes through a colloquy with the
18     magistrate judge or the judge to make sure that they
19     know what they're giving up, and what they're -- what
20     the agreements are.  It gives me a little bit of
21     concern if there is stuff going on afterwards.
22              MR. BECK:  That's why I was trying to clear
23     it up with Your Honor.  I understand what Your Honor
24     is getting at.  And it doesn't cause me any concern
25     about the plea colloquy and those --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            THE COURT:  Covered what was in the

2   addendum?

3            MR. BECK:  I understand what Your Honor is

4   getting at.

5            THE COURT:  Okay.  So it sounds like you're

6   going to get these right.  At the moment you're going

7   to get them with the Brady material.  That's subject

8   to looking at something where I may have said that

9   Giglio and Brady could be split up as far as timing.

10            But, Ms. Duncan, did you have something you

11   wanted to say on this issue?

12            MS. DUNCAN:  Your Honor, just briefly.

13            This is a matter of judicial economy.  I

14   understand that the defendants -- many of the

15   defendants who have entered into guilty pleas so far

16   will be testifying at trial against various

17   defendants, and at least one other defendant who will

18   be testifying against Mr. Baca.  So given the

19   acknowledgment that these addenda are Giglio

20   material, we'd just ask that the Court's order

21   encompass all the addenda for the defendants who have

22   pled so far in this case.

23            THE COURT:  Any objection to making this

24   ruling for all the defendants, Mr. Beck?

25            MR. BECK:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1478

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225 479

```
 1              THE COURT:  So it will include all
 2    defendants.
 3              Ms. Fox-Young?
 4              MS. FOX-YOUNG:  Your Honor, not to belabor
 5    the point at all, but I wonder if the Court might
 6    order a slightly earlier disclosure -- since there is
 7    no review that needs be done -- earlier than June 9.
 8    I understand there is a review of the statements,
 9    potential redactions.  But here, the Government has
10    all the addenda.  It seems to me they could be
11    disclosed within a matter of a couple of days.
12              THE COURT:  Can we -- do you want to -- do
13    you got an earlier date on this one, Mr. Beck?
14              MR. BECK:  Hold on.  I've got four voices
15    in my head, and only one of them is external right
16    now.  I think we need 30 days on this as well.  And
17    I'm not sure if that's what the Court was asking.  I
18    think 30 days is -- we just moved offices in Las
19    Cruces.  Our servers and files and things have been
20    moved around.  So we know in which files these
21    documents are.  We may not know where the files are.
22    And so I think we need 30 days to disclose these.
23    But I will represent to the Court that if we locate
24    them earlier, and we can get them out within 30 days,
25    we will.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1479

```
 1                THE COURT:  Well, I think on this, this is
 2      pretty mechanical.  Just take all the people that
 3      have pled and pull up the addendum.  Let's try to get
 4      these -- I'll put 14 days, so two weeks from today.
 5      So let's try to get these expedited, because I
 6      think -- I can't think of much that would need to be
 7      reviewed on these.  So I'll set a deadline of 14 days
 8      on those.
 9                Ms. Fox-Young, I need to give Ms. Bean a
10      break.  So why don't we take our afternoon break.
11      We'll be in recess for about 15 minutes.
12                (The Court stood in recess.)
13                THE COURT:  Like I say, if y'all want to
14      keep your jackets off, that's fine with me.
15                All right.  Ms. Fox-Young, you had the
16      floor.  Do you want to continue?  Do you want to
17      yield to Ms. Johnson?  Or did you want to go ahead?
18                MS. FOX-YOUNG:  Certainly, Your Honor.
19                MS. JOHNSON:  Thank you, Your Honor.  And I
20      appreciate the Court's indulgence.  Erlinda Johnson
21      on behalf of Santos Gonzalez.
22                Your Honor, I just wanted to make it clear,
23      put something on the record about something I said
24      earlier regarding the motion to sever and the motion
25      to continue.  When I made a statement that I was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1480

```
 1    concerned about pressure being exerted on my client,

 2    I want to make it clear -- and my client would like

 3    for me to make it clear -- that no one has exerted

 4    any pressure on him whatsoever.  He has not

 5    experienced that.  Neither have I.  That was just a

 6    concern that I had in terms of the Court putting us

 7    in somewhat of a difficult situation.

 8            I also made a comment about --

 9            THE COURT:  Me putting you in a difficult

10    position?

11            MS. JOHNSON:  I also made a comment about

12    Mr. Castle having prepaid tickets.  I stand

13    corrected.  They were not for July; they're for June.

14    Because I was concerned that he would have to miss

15    his family vacation.

16            But my client wanted me to make sure that

17    it was on the record that he doesn't feel pressure.

18    No one has pressured him.

19            THE COURT:  All right.  Thank you, Ms.

20    Johnson.

21            (A discussion was held off the record.)

22            THE COURT:  All right.  Ms. Fox-Young.

23            MS. FOX-YOUNG:  Okay, Your Honor.  I

24    understand the Court has ordered the Government to

25    disclose all plea addenda, sealed or unfiled, any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1481

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228

```
 1    plea addenda that exists within 14 days.  And I just
 2    wanted to clarify, I assume that the Court's ruling
 3    covers the 1613 case, the 4268 case, the 4269 case --
 4    and I don't know the case number, but Richard
 5    Gallegos' case -- given that any addenda that exist
 6    for any defendants cooperating in those cases would
 7    apply to -- or pertain to, and be Giglio for all the
 8    defendants present today.  And so I just wanted to
 9    clarify whether that's the Court's order, and also
10    ask that the obligation to disclose the addenda be
11    ongoing and immediate, if any others are entered into
12    going forward.
13              THE COURT:  I think that makes sense.  Do
14    you want to be heard on that, Mr. Beck?
15              MR. BECK:  Well, I mean, I think the way
16    that this came up is, if there is a certain defendant
17    we're using in 1613 only, his -- as they are all
18    "him" at this point, although they may be a "she" at
19    some point -- his or her addendum is only impeachment
20    information for defendants in 1613.  So the
21    defendants in 4268, 4269, and 4275 aren't entitled to
22    that person's addendum as impeachment information,
23    because it's not impeachment information in their
24    trial.
25              THE COURT:  Well, that wasn't your point,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1482

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229 483

1  was it?  But it's a good point.  But the point I

2  think Ms. Fox-Young was raising -- correct me if I'm

3  wrong -- is that this needs to be a ruling across the

4  four cases, and it needs to be prospective.  But I

5  think Mr. Beck is making a separate argument and

6  saying he should only have to disclose the addendum

7  to his co-defendants -- to the co-defendants.  I

8  guess I think that may make some sense as well.

9          MS. FOX-YOUNG:  The Court is correct as to

10  what my point was.  But we also argue that the

11  addenda should be disclosed across the cases.

12  Because, while the Government has to prove up

13  different elements in the RICO case than in the VICAR

14  case, there is cooperation across the cases.  And so,

15  if you look at the pleas -- and I don't have any to

16  cite specifically to the Court, but I could pull

17  them -- in each case there is discussion of the

18  existence of the SNM, proving up the racketeering

19  conspiracy.  And so, generally, it applies to all the

20  defendants.

21          Now, there are certainly -- with respect to

22  Montoya, Armenta, and Martinez, for instance, there

23  are specific statements that go directly to Counts 6

24  and 7, and that's Giglio.  But it's still Giglio --

25  all these addenda contain Giglio as to all the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1483

 1  defendants, given the common elements across the

 2  cases.  So definitely, Judge, we think the order

 3  should apply to all cases, but that they should be

 4  disclosed across the cases to all counsel.

 5         THE COURT:  I guess I'm not seeing that.

 6  That seems kind of broad.  I guess, for the present

 7  time, I'm just ordering the production to the

 8  defendants in the case, so it will just be the

 9  co-defendants.  But I'm having a hard time seeing --

10  I mean, to a certain degree -- I mean, it depends on

11  which case they're going to be called in before it's

12  useful Giglio material.  If they're never called,

13  it's not very useful.  It's hard for me to sort of

14  figure out why they would be called in a different

15  case.

16         MS. FOX-YOUNG:  Your Honor, I'll give you

17  an example, and I just discussed it with Mr. Beck

18  during the break.  I asked if the Government would

19  oppose, in Richard Gallegos' case, that his addenda

20  be disclosed.  And he told me:  It doesn't pertain to

21  4268, but it pertains to 1613.  So without going

22  through each one and making -- and I don't know if

23  that's entirely true, if it may pertain to 4268.  But

24  there certainly is a cross-pollination.  There is

25  certainly -- these cooperators are cooperating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1484

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231485

 1   against defendants without regard to what indictment
 2   they're charged in.  And so, I mean, if the Court
 3   wants to order the Government to review the
 4   addenda -- I mean, initially, to make the disclosure
 5   to all co-defendants in each case, but I think the
 6   Court should also order the Government to review the
 7   addenda for Giglio as to defendants in other cases.
 8   Because, certainly, there are cases where they
 9   clearly contain Giglio material for defendants in
10   other cases.
11         THE COURT:  Well, that probably needs to be
12   done.  So you may win the war here -- or the battle,
13   Mr. Beck, but you may end up having to do a lot of
14   work to keep from producing it to certain people.
15   But I do think, if you're not going to produce them
16   across the board, you're probably going to have to do
17   a Brady, Giglio, Rule 16 review to see if it needs to
18   be produced anyway.
19         MR. BECK:  I think that's right.  And I
20   mean, it's impeachment information.  If you're going
21   to impeach that person because they're a witness at
22   trial.  So if they're not a witness at trial, they're
23   not going to be impeached.
24         It's not a whole lot of work, because the
25   addenda aren't -- it's not a huge amount of work,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1485

1   compared to everything else in this case.  So --

2          THE COURT:  Well, I'll let you preserve

3   your position of not having to produce it to anybody

4   but co-defendants.  But then, for the defendants in

5   the other cases you're probably going to need to put

6   on your Brady and Giglio and Rule 16 glasses, and see

7   if they need to be produced for other reasons.

8          MS. FOX-YOUNG:  Your Honor, I'll yield to

9   Ms. Harbour-Valdez.

10         THE COURT:  All right.

11         MS. HARBOUR-VALDEZ:  Your Honor, I have a

12  specific example in our case.  Frederico Munoz was

13  indicted in 1613, but his factual basis of his plea

14  agreement specifically mentions Edward Troup, and I

15  believe Javier Alonso.  So we would request that his

16  at least be released to the 4268 defendants.

17         THE COURT:  Any thoughts on that, Mr. Beck?

18         MR. BECK:  I mean, the same thought.  If

19  it's impeachment material in the 4268 case, then it's

20  Giglio and will be disclosed to them.  And if it's

21  not, then it won't.

22         THE COURT:  Well, I think I'll just leave

23  the ruling where it is.  He's heard your argument, so

24  he can take that into account when he does his Brady

25  review, Giglio review.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            Somebody else was trying to stand up.  I
 2    don't know if you -- all right.  Maybe it's been
 3    addressed.
 4            Ms. Sirignano.
 5            MS. SIRIGNANO:  Judge, my only addition to
 6    that would be that the Government has to prove the
 7    enterprise across both of these cases:  4268, 4269,
 8    and 1613.  And many of these recent pleas in the
 9    factual basis of the plea includes statements
10    regarding the enterprise.  And we're not sure if the
11    addenda have any other statements which would also --
12    that they'd be relying on to prove the ongoing
13    enterprise or the conspiracy.  The introductory
14    paragraphs in both indictments are identical.  And so
15    we would ask that if there is anyone that has pleaded
16    thus far that will be used to prove the enterprise in
17    these cases that their addenda get turned over to
18    everybody.
19            THE COURT:  All right.  Be listening to
20    these, Mr. Beck.  You're hearing defense counsel make
21    some pretty good arguments.
22            MR. BECK:  I understand that argument, Your
23    Honor.
24            THE COURT:  All right.  Ms. Fox-Young.
25            MS. FOX-YOUNG:  Okay, Your Honor, the next
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1487

1   category of materials is on page 14, Subsection C.

2   We ask for FBI 302s and law enforcement notes,

3   specifically pertaining to Defendants Montoya,

4   Armenta, and Martinez.  I won't belabor the point for

5   the Court.  I've already argued that early statements

6   were exculpatory to Mr. Perez, and I think the

7   Government has conceded that later statements will

8   either be Brady or Giglio, some combination.  So for

9   the same reasons we ask for any FBI 302s and/or law

10  enforcement notes pertaining to the interviews and

11  debriefs which have been given.  Those debriefs were

12  given just prior, we believe, to entry of these

13  defendants' pleas.  And we want notes and 302s

14  pertinent to those debriefs, and debriefs given at

15  any other time.

16          Although rule -- the Government knows, I

17  think, that Rule 16 generally prohibits the

18  disclosure of reports, memoranda, or other internal

19  government documents, this Court has already noted in

20  prior rulings that --

21          THE COURT:  I guess I'm having a hard time.

22  The first category that you -- that we went through,

23  how is it different from this one?

24          MS. FOX-YOUNG:  These, Your Honor -- rather

25  than being the exact -- the actual statements.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Oh, the written or recordings.
 2   These are the 302s?
 3            MS. FOX-YOUNG:  These are the Government's
 4   302s, and/or any notes made by agents, which would
 5   reflect, of course, not only the statements, but
 6   impressions of those statements, and --
 7            THE COURT:  Can we just make my other
 8   ruling applicable to 302s and any notes?
 9            MS. FOX-YOUNG:  Yes, Your Honor, that's
10   what we ask the Court to do.
11            THE COURT:  Any objection to that, Mr.
12   Beck?
13            MR. BECK:  Well, I think the notes are
14   Jencks.  I think the Court has held that a number of
15   times.  I think the 302s -- I think they're Jencks
16   also, but I understand the Court's position, and I
17   think it's right, that they may also be, in this
18   case, Giglio material.
19            THE COURT:  Yeah, as long as you're
20   reviewing them for Brady, but let's just put that in
21   the same ruling that we did with the written and
22   recordings of --
23            MR. BECK:  No objection to that, Your
24   Honor.
25            MS. FOX-YOUNG:  And the second subpart,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1489

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 236 of 490

```
 1    Your Honor, we also ask for preservation of all rough
 2    interview notes made by law enforcement agents during
 3    interviews of any pretrial witnesses in the
 4    investigation of this case.  So given the Court's
 5    ruling, I suppose the Government may produce some
 6    notes and not produce others.  We cite the Lujan case
 7    from 2008, where Judge Brack granted that motion for
 8    preservation of notes, and ordered the Government
 9    review of the notes, and said that they might be
10    subject to disclosure later.
11            I know the Government concedes that some
12    notes may contain Brady or Giglio, and they argue
13    some others may have impeachment value that's not
14    evident until trial.  That was exactly the case in
15    Lujan, which is why the Court ordered them preserved.
16    And we'd like the Court to do that in this case.
17            THE COURT:  Any objection to that?  All
18    right.  So no objection, I'll so order.
19            MS. FOX-YOUNG:  Okay, Your Honor, so we
20    move to our request for production of all recorded
21    materials tagged into evidence in this case, and
22    accessed by an expert to the original recorded
23    materials.
24            As the Court knows, because the Court
25    ordered that -- the evidence view happened on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1490

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 237491

```
 1    December 2nd of last year for those counsel involved
 2    in Counts 6 and 7.  That evidence viewing did happen
 3    in Las Cruces, and we were permitted to review the
 4    items that are listed on Exhibit 2 to our motion,
 5    which is an evidence inventory.  Among those items
 6    were several discs, and I'd listed the numbers in
 7    this motion.  We were not permitted to view what was
 8    on those discs.  They're CDs that were labeled with
 9    evidence numbers.  We don't know what's on them.  So
10    we've asked the Government by letter, March 20th of
11    this year, to provide those materials, or give us
12    Bates numbers if they have already been provided.
13          And I talked to Ms. Armijo a little bit
14    over the break.  I think the Government is trying to
15    verify whether or not that evidence has actually been
16    produced to the defendants.  And I haven't had an
17    answer on that yet.  So maybe we take that subpart
18    first.
19          THE COURT:  Okay.  Before I hear from you,
20    Ms. Armijo, let me make sure I understand.  So you
21    went down there -- I remember the trip, because I set
22    some conditions and those sort of things for it.  And
23    you saw these materials?
24          MS. FOX-YOUNG:  We did.  There are maybe
25    100 items in evidence.  I'm not looking at my --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Like the shanks and that sort
 2    of thing?
 3            MS. FOX-YOUNG:  Yeah, we saw all the
 4    physical evidence.  Among the evidence that had been
 5    tagged in were CDs.  There was no denotation on the
 6    CDs as to what digital material they contained.  We
 7    were not permitted to pop those CDs into a computer
 8    or other device to see what's on them.  We just want
 9    that evidence produced to us.  And we don't know if
10    it has been.  And so we list it here.
11            THE COURT:  All right.
12            MS. ARMIJO:  Your Honor, I have emailed the
13    case agent to see.  We were not at that viewing, so
14    it's kind of hard for us to know what it is.  But I
15    can tell you that we met with the case agent from the
16    State Police months ago when Ms. Strickland was
17    raising a bunch of issues, and we went over his
18    personal file, which had everything in it.  So I'm
19    assuming it is, but I will double-check.  And if it
20    is not, we will disclose it.  But since we weren't
21    there, I don't know what it was.  But we will
22    disclose it, if it hasn't been disclosed.  I'm
23    assuming it has been, since we already did a check
24    and had him bring his file and literally go over
25    everything that we had with what was in his file.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1492

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 239 of 493

```
 1              THE COURT:  Okay.  So this was a particular
 2   guard, or whose file is this?
 3              MS. ARMIJO:  Well, the case was
 4   investigated by New Mexico State Police.
 5              THE COURT:  Okay.
 6              MS. ARMIJO:  And the New Mexico State
 7   Police case agent brought over his file several
 8   months ago, and we sat down and went over what we had
 9   with what he had.  And we made copies of anything
10   that he had that we didn't have.  And we disclosed
11   that.
12              These items were things that were at the
13   viewing that we were not present at.  I have emailed
14   him to ask him if, in fact, we, the US Attorney's
15   Office have it.  If we don't, then I will certainly
16   provide it to them.
17              THE COURT:  In your production, did you
18   produce some CDs that he had?
19              MS. ARMIJO:  Yes.
20              THE COURT:  Okay.  Does that representation
21   satisfy you, Ms. Fox-Young?
22              MS. FOX-YOUNG:  Well, I just think the
23   Court could really shortcut this.  We've identified
24   precisely the CDs that are tagged into evidence, that
25   we haven't been able to see.  All the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1493

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240 of 494

1    needs to do is burn them and provide us with copies.

2    This has been going on for some time.  We saw this

3    evidence on December 2nd of last year.  We've sent a

4    letter to the Government.  I think, if the Court will

5    just order the Government to produce copies of these,

6    we'll be done.

7            THE COURT:  How many CDs are we talking

8    about?

9            MS. FOX-YOUNG:  About 10.

10           THE COURT:  Well, do you want to go that

11   way, or do you want to see if you already produced

12   them?

13           MS. ARMIJO:  I would prefer that we see if

14   we've already produced them, so the next time we

15   don't hear about 10 more CDs that are duplicates of

16   others.  Because this is how we keep on getting more

17   and more duplicates of other things.  It's just

18   producing more and more discovery to be downloaded.

19           THE COURT:  Well, any objection to me

20   setting a deadline, say, respond within 10 days to

21   this request, this letter?

22           MS. ARMIJO:  If it has not been disclosed,

23   New Mexico State has to give it to us, and that may

24   cause a delay.  I will get a response within 10 days,

25   whether or not we believe we have.  It's just a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1494

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

```
 1   matter of them getting it to us.
 2            THE COURT:  All right.  Let's try to do
 3   this:  Let's get a written response within 10 days.
 4   Then let's try to have the documents in the
 5   defendants' hands, if they don't already have them,
 6   within 14.
 7            MS. FOX-YOUNG:  And I would just ask,
 8   Judge, because these are materials tagged into
 9   evidence -- this isn't just any category of
10   discovery -- if the Government comes back and says,
11   We've produced this, I think the defense should be
12   provided with Bates numbers as to where it is.
13   Because discovery is really voluminous.  These are
14   items in evidence.  We went to participate in an
15   evidence view.  We wanted to see what was on there,
16   and we couldn't.  So I think either production should
17   be made, or information about prior production
18   saying, This has been produced as Bates numbers X to
19   Z, would be sufficient.
20            THE COURT:  Agreeable with that, Ms.
21   Armijo?
22            MR. BECK:  That's fine.
23            THE COURT:  All right.  Okay.  Ms.
24   Fox-Young.
25            MS. FOX-YOUNG:  Okay, Your Honor, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1495

```
 1    further request that the Court order the Government
 2    to permit our expert to examine the original audio
 3    and video recordings in evidence, as well as the
 4    recording devices that were used to generate the
 5    recordings.  And this is a request that's going to be
 6    broader -- and it comes up again in our motion --
 7    broader than just with respect to these items in
 8    evidence.  I think you'll also hear Mr. Baca has a
 9    motion to compel which raises this.
10           And so, you know, it's our position, Your
11    Honor, that our expert -- and we attach a declaration
12    from Mr. Ray Carrillo as to why we need to have
13    access to original audio and visual recordings.  This
14    is no different than an ordinary dope case, where the
15    Court, upon defendant's motion, the Court would allow
16    defendant to have his or her own expert test
17    materials.  It's a pretty routine process.  And, you
18    know, it comes down to the defense's ability to
19    review and examine the evidence against the
20    defendants, and it goes to our fair trial right.
21           So we're asking that Mr. Carrillo, with
22    respect to this subcategory, be permitted to examine
23    the recording devices that were used to generate
24    these recordings.  Mr. Carrillo's declaration -- I'll
25    address this with more specificity when we get to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1496

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 243 497

1    some other recordings -- but Mr. Carrillo's

2    declaration provides the Court with a substantive

3    basis for why it's necessary that an independent --

4    that our defense expert be permitted to review them.

5    So in this subpart I'm only talking about the

6    evidence that the Court has already ordered be

7    disclosed.  We want access to the original audio and

8    visual recordings, not just copies.

9              THE COURT:  Let me make sure I understand

10   the request.  You're wanting him to look at the

11   recording equipment?

12             MS. FOX-YOUNG:  The original recordings

13   and/or the recording equipment.  The Government, I

14   think, will say that there is no such thing as an

15   original recording, because these are all digital

16   files that just get cut from a recording device.  In

17   that case, this isn't like the old days, where you

18   get a tape that looks like an old movie reel that you

19   can examine.  You need to examine the equipment to

20   determine whether the copy that you have is complete,

21   has not been altered, has not been edited, has not

22   been stopped during the recording process.  For all

23   these reasons, and so that's why we asked for access

24   to the original recordings, should they exist, and

25   the recording equipment.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1497

```
 1          And we have no objection to having somebody
 2   there to preserve chain of custody.  We don't want to
 3   in any way interfere with chain of custody.  That's
 4   routinely done, like I said, in dope cases.  But we
 5   need Mr. Carrillo to have access to those materials.
 6          THE COURT:  All right.  Mr. Beck, are you
 7   responding on this one?
 8          MR. BECK:  Yes, Your Honor.  So I heard
 9   this is no different than dope cases.  And this is
10   vastly different than dope cases.  The recording
11   devices are methods and means of law enforcement.
12   And I don't think there is any basis.  But if there
13   was, the DOJ and the FBI would want to be heard on
14   this issue.
15          Setting that aside, if we come in and play
16   these tapes, what's required is that they're
17   authenticated.  And we know that requirement.  We'll
18   authenticate them, we have witnesses who will testify
19   that that's what they heard.  They're the ones who
20   made the recordings.  So there is no basis for
21   testing or physically examining the recording
22   devices.
23          The recordings themselves, I think Ms.
24   Fox-Young is correct, they're just digital recording
25   and a digital recorder, as far as I know.  So the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1498



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   defense team has access to those, and they can give
 2   them to their experts.
 3           But in terms of, if we're looking at Rule
 4   16, and we're looking at material that may be that --
 5   may find -- I don't have the language in front of
 6   me -- but, basically, may lead to evidence in the
 7   case, there is nothing here that will lead to
 8   evidence by letting them look at these recording
 9   devices.
10           And, again, to the extent that there may
11   be, the FBI and DOJ would certainly want to be heard
12   on this issue.  And I don't mean us as DOJ; I mean
13   the big people.
14           So you have questions for me, I'm happy to
15   answer them.
16           THE COURT:  All right.  Thank you, Mr.
17   Beck.
18           I guess I do think this probably falls into
19   sort of just general sort of discovery, a bit of
20   fishing to see if anything turns up.  It doesn't seem
21   like there is any evidence that there is problem
22   here.  So I'd be inclined to deny this.
23           MS. FOX-YOUNG:  Your Honor, I think it's
24   best if we take it up down the road in number 3,
25   which is coming up, because we do have some specific
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  findings.  And I think with respect to this
 2  subcategory, you know, I can defer to the Court
 3  there, but I'd like to take it up in a few minutes.
 4           THE COURT:  Did you want to say something,
 5  Ms. Duncan, or do you want to take it up a little bit
 6  later?
 7           MS. DUNCAN:  Thank you, Your Honor.  We
 8  have asked for the same thing in our recently filed
 9  motion to compel.  So I think we can maybe argue on
10  number 3 of Ms. Fox-Young's motion to add detail as
11  to why we need access to those recording devices.
12           THE COURT:  Okay.
13           MS. FOX-YOUNG:  Thank you, Your Honor.
14           THE COURT:  Ms. Fox-Young.
15           MS. FOX-YOUNG:  The request for
16  confirmation that the Government has no additional
17  physical evidence over and above the evidence which
18  is inventoried on exhibit -- I believe it's Exhibit 2
19  to our motion, the evidence inventory from state
20  police.  And I have spoken to the Government to try
21  to streamline this process over the break.  In their
22  response, the Government says that they are making
23  inquiries to see if there is any physical evidence
24  that the defendants in Counts 6 and 7 were not
25  permitted to view, or have not been made aware of.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1500

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 247501

```
 1   And I don't think they have an answer yet.  And so

 2   we're still waiting for an answer.  So I think that

 3   request still stands.

 4           Secondly, in this category, we asked for

 5   permission to handle the physical evidence in Counts

 6   6 and 7.

 7           THE COURT:  Why don't we take up the first

 8   part first.  Then we'll come back to the second

 9   request.

10           Mr. Beck?  Ms. Armijo, are you arguing this

11   one?

12           MS. ARMIJO:  Your Honor, I have sent out,

13   and I will verify and let them know if there is

14   anything they didn't see.  Again, since we weren't

15   there, I don't know what they saw or not, or if there

16   is anything else on the sheet.  So I will check into

17   that.  I have checked into it, but I'm just waiting

18   for confirmation, and trying to figure out what they

19   saw and what they didn't.  Because I don't want to

20   make promises since we weren't there.

21           THE COURT:  All right.  What I propose to

22   do on this one, if this would be acceptable:  Within

23   10 days, if you do not receive a response, that it

24   will be deemed that the Government has represented

25   that all the evidence they have is on the inventory
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1501

```
 1    list.  Does that work for you?

 2              MS. FOX-YOUNG:  Yes, Your Honor.

 3              MS. ARMIJO:  And just so that we're clear,

 4    all the evidence from the crime scene -- I mean, we

 5    may have other recordings and things that were

 6    post-investigation.  But I believe this deals with

 7    the inventory list from the crime scene with New

 8    Mexico State Police.

 9              THE COURT:  All right.

10              MS. ARMIJO:  That's the specific request.

11              THE COURT:  Can you live with that gloss?

12              MS. FOX-YOUNG:  I think so, Your Honor.

13    Let me just confer real briefly with my co-counsel.

14              THE COURT:  Certainly.

15              MS. FOX-YOUNG:  Your Honor, I think we can

16    live with that, so long as only outstanding physical

17    evidence would be in the category of recordings.  I

18    mean, we set up an evidence view last year in order

19    to view the physical evidence.  We're trying to, you

20    know, litigate this case, and proceed along the

21    Court's deadlines.  So we really need to know if

22    there is any other physical evidence.  We understand

23    that post-incident there continue to be recordings

24    made.  But if the Court will limit the Government, as

25    the Court described, with the caveat that there may
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1502

```
1    be recordings, that's something I can live with.

2              THE COURT:  Can you live with that, Ms.

3    Armijo?

4              MS. ARMIJO:  The thing that I can think of

5    it is, what if we have somebody involved in this case

6    that's able to come up with the photograph -- not of

7    the murder itself, but something that is of a

8    relationship between Mr. Perez and SNM, and says,

9    yes, we were good friends -- I'm just using this as a

10   an example -- and so that would be physical evidence,

11   it would be a photograph that we didn't have, because

12   it's not from the crime scene, it's not a recording.

13   So I'm not trying to be vague.  But I don't want to

14   cut off the possibility that there might be something

15   out there.  I don't believe there is anything out

16   there.  I believe it's all recordings and the crime

17   scene.  So we will give her an answer as to that.

18   And certainly, if anything else crops up, we would

19   certainly alert them.

20             THE COURT:  All right.  I think I'll just

21   make a ruling:  In 10 days, if you don't receive,

22   then it's that.  If something pops up that's not in

23   the Government's possession, and they get hold of it,

24   then we'll deal with it at that time.  I'm not

25   excluding any evidence at this point.  So if the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1503

```
 1   Government -- it comes into their hands afterwards,
 2   then we can deal with that.  That often happens
 3   before trial, somebody thinks of something they have
 4   somewhere else.  So we'll certainly allow for that.
 5   But I think within 10 days, we'll either have a
 6   letter from the Government or treat it as a
 7   representation, with the gloss that you put on it,
 8   Ms. Fox-Young.
 9           So the next thing is you want to now ask to
10   relook at that evidence?  Or what is the second
11   portion of your request?
12           MS. FOX-YOUNG:  The second portion of our
13   request is we've asked the Government for permission
14   for -- permission to handle the physical evidence.
15   It's our understanding that some other defendants --
16   for the Court's information some other counsel at
17   evidence viewing have been permitted to handle the
18   physical evidence.  We need to do that as part of our
19   investigation.  The Government responded to us by
20   saying, you know, we need to know exactly what
21   evidence you want to handle and why.  We say that's
22   work product.
23           If the Court wants to take that up, we're
24   happy to provide the Court with this information.
25   But we don't think we should be required to provide
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1504

1    it to the Government.  But we can provide the Court

2    with a particular list of exactly what we want to

3    look at.

4              Again, we have no objection to a records

5    custodian being present, somebody to maintain chain

6    of custody.  And, you know, this is done fairly

7    routinely in other kinds of cases where there is an

8    examination or testing of evidence.  We should be

9    permitted to do more than just look at it.

10             THE COURT:  Ms. Armijo.

11             MS. ARMIJO:  Your Honor, and the problem is

12   that the Government and the case agents aren't there,

13   so you have somebody that doesn't know anything about

14   the case.  And if you have something like a piece of

15   clothing that has a lot of blood, what are they going

16   to do to it?  How do they want to handle it?  Do they

17   want to open it up?  Are they going to contaminate

18   it?  What if we want to do further testing?  What if

19   we arrest somebody else and do it?  So I'm just

20   concerned with what the evidence item is.  If there

21   is something that there probably won't be any further

22   testing on, then probably we wouldn't have an

23   objection.  But if it's something that's very

24   fragile, or could be tested, or toxic, then we might

25   have an issue with it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1505

1          THE COURT:  Let's do this:  Let me grant

2     the defendants' request.  You can have somebody

3     there, and I'll give that person veto power.  So if

4     they say, No, you can't touch that, that's -- we're

5     going to retest that, or it's got blood on it,

6     they'll be able to veto it.  And then you can bring

7     it back to me.  If the review goes on without a

8     hitch, we'll just keep moving.  But that will give

9     you the veto power.  But it will keep it moving.  And

10    chances are most of it you'll get to see and touch,

11    and maybe all of it.

12          MS. FOX-YOUNG:  Your Honor, as we asked in

13    our previous evidence view, we'd ask that that person

14    or persons not be members of the prosecution team.  I

15    mean, these are state police detectives and agents

16    who handle evidence all the time.  The Government

17    can, I think, accomplish protecting chain of custody

18    and preserving the evidence properly without having

19    somebody on the prosecution team there.

20          THE COURT:  I think you can put somebody

21    that's a state police evidence person in there,

22    somebody that knows how to handle evidence.  But it

23    shouldn't be somebody that's going to be a witness in

24    the case, and not part of your team.  But you can put

25    somebody in there that's knowledgeable.  You don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    have to put an ignorant person in there.  You can put
 2    somebody in there that knows what they're doing, and
 3    say, "Don't touch that."
 4            MS. FOX-YOUNG:  Judge, we prefer not to
 5    have an ignorant person.
 6            THE COURT:  A what?
 7            MS. FOX-YOUNG:  We'd prefer not to have an
 8    ignorant person.
 9            THE COURT:  It's always good, isn't it?
10            All right.  Ms. Fox-Young.
11            MS. FOX-YOUNG:  All right.  Your Honor, the
12    next category:  We asked for locations where the
13    recordings produced in discovery, entitled, "Audio of
14    body recording of CHS and R. Perez."  And I list a
15    number through another number that were recorded.
16    There are a number of recordings.  And, Your Honor,
17    we're getting into categories of evidence that, as I
18    indicated in the beginning of the argument, go to the
19    voluntariness of Mr. Perez' statements, which is
20    always an issue at trial, and go directly to evidence
21    that is material -- will be material to our arguments
22    in our motion to suppress, go directly to the
23    voluntariness of these statements, and the
24    circumstances surrounding these statements.
25            So first, we ask for the location where
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1507

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254

 1    they were made.  And the reason for that, as we note

 2    in our brief, is that we believe these recordings

 3    were made while Rudy Perez was at PNM Level 6.  As

 4    the Court knows, this is the highest level of

 5    segregation in the New Mexico Department of

 6    Corrections.  Without giving it a particular moniker,

 7    it's essentially solitary confinement.  Mr. Perez was

 8    held there without any disciplinary process or

 9    hearing for months.  And his health was severely

10    compromised during that time.

11           And so, Your Honor.  We're going to argue

12    that the Government really fostered these conditions

13    for a number of reasons, in a number of ways, and

14    took advantage of these conditions, placing an

15    informant next to Mr. Perez to question him about the

16    circumstances surrounding the Molina murder.  And

17    that is how we believe these recordings were

18    generated.  And so the location where they were made,

19    if, in fact, they were made in solitary confinement,

20    will be critical to this Court's determination as to

21    whether they were made voluntarily, and in

22    considering whether or not they should be suppressed.

23           Beyond that, Your Honor, it will be

24    critical, if the statements are not suppressed, to a

25    jury's determination as to whether they were made

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1508

1    voluntarily.  So this is absolutely material.  And we

2    need to know this in order to proceed on whatever the

3    Court's timeline will be for substantive motions in

4    the 4268 case, because it goes directly to issues

5    surrounding suppression.

6              THE COURT:  When you say "location," are

7    you talking about where the wire was?  What are we

8    talking about?

9              MS. FOX-YOUNG:  It's hard to know without

10   knowing precisely the location.  But presuming these

11   recordings were made in PNM Level 6, we want to know

12   which cells in PNM Level 6 they were made in.  Not

13   location of the wire on the person's body, but where

14   our client was, and where the recording was made at

15   the time.

16             THE COURT:  When you say "where the

17   recording was made," are you talking about where the

18   recording device was located?

19             MS. FOX-YOUNG:  We don't need to know where

20   the device was located and in that way compromise any

21   government investigated tools or tactics.  We need to

22   know where our client was.

23             THE COURT:  Is that really what you need is

24   just to know what cell he was in?

25             MS. FOX-YOUNG:  And you'll see, Your Honor,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1509

```
 1   as we go through these, we ask that the Court order

 2   the Government to produce a number of -- sort of a

 3   wide variety of information surrounding the

 4   circumstances of these recordings.  But, yes, we need

 5   to know if he was in Level 6, if he was in solitary

 6   confinement at the time that the Government planted

 7   an informant next to him.  And that is because -- and

 8   we get to this in later briefing -- the Court, I'm

 9   sure, is familiar with the Fulminante case that talks

10   about exclusion -- a Supreme Court case, 499 U.S.

11   279, says -- essentially, boiling it down, that

12   statements to cooperators can be suppressed under

13   certain circumstances.

14           We need to know what the circumstances

15   were.  If Mr. Perez was sitting in an open pod, you

16   know, in a camp somewhere, it would be a different

17   circumstance for the Court to consider, than if he's

18   in solitary confinement, and has been in solitary

19   confinement for some time, when the Government places

20   an informant next to him and does a series of other

21   things to effectuate making these alleged statements

22   or generating, extracting these statements.

23           And so I say the location would be the

24   facility, and the location within the facility, and

25   the cell.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1             THE COURT:  Okay.  So the facility, and the

2     location within the facility of the cell.

3             MS. FOX-YOUNG:  And the cell where the

4     informant was located.

5             THE COURT:  So they're recording

6     conversations -- I mean, I haven't heard these tapes.

7     These are two gentleman talking to each other; is

8     that what -- and they're recording it?

9             MS. FOX-YOUNG:  Yes, Your Honor.

10            THE COURT:  All right.  Mr. Beck, are you

11    going to respond on this?

12            MR. BECK:  Yeah.  Again, it's getting well

13    beyond the scope of criminal discovery.  So I'm

14    looking at Rule 16 here, and I'm trying to even

15    figure out where there is an obligation to disclose

16    locations of recordings and locations in cells.  It's

17    pretty clear -- when you disclose documents and

18    objects, reports, examinations and tests, it's clear

19    what's required.  And that doesn't fall in there.

20            So I understand that it would be nice to

21    have this information.  They can ask their client

22    where he was.  The criminal rules don't require us to

23    provide that.  And so the Court shouldn't either.

24            And the fact is -- I mean, we can talk

25    about how they want to use this down the road for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258

1   motions to suppress, and they can investigate, and

2   they can find those things out, and get the facts

3   from their client and from elsewhere, and use those

4   for a motion to suppress.  But that's distinct from

5   the Government's obligation to present materials,

6   documents, objects under Rule 16, which is not here.

7            And, I mean, they can argue about the

8   voluntariness and the way the Government set that up.

9   But Mr. Perez wasn't even on the radar until we got

10  these recordings back, and he admitted the thing.  We

11  didn't even know who he was, so --

12           THE COURT:  Are these recordings that

13  you're going to use at the trial?

14           MR. BECK:  We may.  We may just have the

15  informant testify.  But we may use them.  My

16  understanding -- I've listened to them -- is they're

17  not extremely clear.  I don't think anyone states

18  that.  But we may use them.

19           THE COURT:  So you would use them with the

20  informant?  The informant would testify and

21  authenticate the recording?

22           MR. BECK:  Well, I think the recording has

23  to be authenticated.  If it's going to be used in our

24  case-in-chief, it has to be authenticated.  So --

25           THE COURT:  So who would authenticate it is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1512

```
 1    the informant?
 2              MR. BECK:  I can't really think of who else
 3    would.
 4              THE COURT:  And is that person going to
 5    know the information that Ms. Fox-Young is asking
 6    about?  They certainly would know where they were,
 7    right?
 8              MR. BECK:  I don't know.  I would assume
 9    so.  I mean, from what I've witnessed and what I've
10    seen in this case, these gentleman have very, very
11    good memories of where they were and when they were
12    there.  So my expectation would be that he would
13    remember those things.  But I don't know.
14              THE COURT:  Does the Government keep a log
15    similar -- that has the information that the
16    defendants are seeking?  I mean, is that the way they
17    do it:  Say this person was here, this person was
18    there at this particular time?
19              MR. BECK:  I don't know.
20              THE COURT:  I've read lots of transcripts,
21    and I'm not sure I've seen --
22              MR. BECK:  I don't think I have either.
23              THE COURT:  -- that document.
24              Right, Ms. Fox-Young?  I mean, it seems to
25    me that we may be requiring the Government to go
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   invent a document.  It's kind of like an
 2   interrogatory.  You're asking them -- you send over
 3   an interrogatory asking for some information, but I'm
 4   not sure that they're required to produce something
 5   that doesn't exist.
 6             MS. FOX-YOUNG:  Well, I think, Your Honor,
 7   there has to be something that exists that shows
 8   where Mr. Perez was in PNM Level 6 at the time of the
 9   recordings.  And I think the Court was going right to
10   the heart of the issue under Rule 16.
11             I mean, I can give the Court more to sink
12   its teeth into with regard to why this material is
13   material to us.  You know, we don't know what day the
14   recordings were made.  And so our client can't tell
15   us precisely where he was, to the extent that he
16   would remember.
17             THE COURT:  I thought most of the
18   recordings have a date.
19             MS. FOX-YOUNG:  No, that's redacted from
20   the transcripts.  We don't know the date.  I mean,
21   the Court could order the Government to disclose the
22   date.
23             Beyond that, we want the jury to see these
24   cells.  We want the jury to understand.  And in
25   preparing for a trial, we need to understand what the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1514

1   conditions were like for our client in solitary

2   confinement at the time that these statements were

3   allegedly made.

4          The Government knows this.  I understand

5   that the Court is not inclined to order the

6   Government to produce a document that doesn't exist.

7   But we're just asking the Government to confirm

8   whether or not our client was in solitary confinement

9   at the time they put an informant next to him.

10          THE COURT:  But aren't you going to get

11   that information at the suppression hearing, when

12   they put the informant on, to introduce the tape?

13          MS. FOX-YOUNG:  Yes, Your Honor.  If the

14   Court grants us a hearing, we will get that

15   information then.  Of course, we can't -- between now

16   and that time, we can't investigate any further what

17   these circumstances were precisely.

18          And so, you know, under Graham -- we cite

19   United States v. Graham in our description of what is

20   producible, needs to be produced under Rule 16.  I

21   mean, clearly this information plays an important

22   role in uncovering other admissible evidence with

23   respect to Mr. Perez, and what he was going through

24   at that time.  If we can confirm where he was, then

25   we know what the -- we know something more about the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1515

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2515

1    circumstances surrounding these statements -- will

2    help us in witness preparation for a hearing on a

3    motion to suppress, and potentially assist in

4    impeachment or rebuttal.  All we need show, Your

5    Honor, is that this information could alter the

6    quantum of proof in Mr. Perez' favor.

7            And so given -- you know, given these

8    issues surrounding suppression, you know, we think

9    it's easy for the Government to tell us where the

10   recordings were made and when they were made.

11           THE COURT:  Why are you redacting out the

12   dates?

13           MR. BECK:  I don't know.  I can't think of

14   a transcript in which the date is redacted.  If there

15   is one, I'm happy to look at it.  I don't know that

16   we do that.

17           THE COURT:  All right.  If there is

18   redacted date, would you be willing to produce the

19   date?

20           MR. BECK:  Yes.

21           THE COURT:  Okay.  I think I'm going to

22   leave it there.  If you get the dates, talk to your

23   client.  We'll probably have a suppression hearing.

24   They've got to put somebody on the stand.  You're

25   probably going to get all the information, rather

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1516

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 263

```
 1    than having them prepare a document or prepare a
 2    letter, or something like that, that requires them to
 3    go get the information.  So I think I'll just leave
 4    it there.  So that, I'll deny.
 5              MS. FOX-YOUNG:  Okay.  Your Honor, may I
 6    make one additional point on that?
 7              THE COURT:  You may.
 8              MS. FOX-YOUNG:  We think it's very
 9    important for the Court also, in making a
10    determination about voluntariness of these
11    statements, the Court needs to know what the cells
12    looked like, what the layout was, what sort of
13    deprivations existed, if, in fact, Mr. Perez was in
14    Level 6.  And we won't be able to work any of that up
15    prior to filing a motion to suppress or prior to a
16    suppression hearing, if we don't know where the
17    recordings were made.  We won't be able to do that
18    additional investigation, and the Court will not have
19    the benefit of that information.
20              THE COURT:  Well, but why not?  I mean,
21    Mr. Perez can give you the -- where he was at.  He
22    may not know that day he was in that cell.  But you
23    can show me a picture or video or something from
24    that, can't you?
25              MS. FOX-YOUNG:  Okay, Your Honor.  I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1517

```
 1    move on.  I understand the Court's ruling.

 2            The next category -- I didn't know, Your

 3    Honor, if -- I guess we're not yet to what Ms. Duncan

 4    wants to argue on.

 5            The next category, we asked for any and all

 6    transcripts of the recordings.  The Government -- I

 7    talked to Ms. Armijo during the break -- the

 8    Government submits that, I believe, eight recordings

 9    were actually produced after the -- close to the time

10    of the filing of this motion.  And I think that it's

11    the Government's representation that that is all the

12    recordings.  If the Government will say that on the

13    record, and in fact, all of the transcripts have been

14    produced, then we don't need to argue this.

15            THE COURT:  Ms. Armijo?

16            MS. ARMIJO:  Your Honor, I believe we have

17    disclosed all of the recordings.  And we disclosed

18    the transcripts that we have.  There is eight.  I

19    will confirm there are no other outstanding

20    transcripts that are coming in.  And I'm not

21    representing that we have disclosed -- that we have

22    transcribed every call.  But I believe this motion

23    said that we have not disclosed any transcripts, and

24    I showed her that, in fact, that we have disclosed

25    eight transcripts on March 10, which is 21 days
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1518

```
 1    before this motion was filed.  So I will verify and

 2    get back and provide, within ten days, what is

 3    outstanding.  But I don't believe we have anything

 4    outstanding, Your Honor.

 5            THE COURT:  All right.  Does that work for

 6    you, Ms. Fox-Young?

 7            MS. FOX-YOUNG:  Yes, Your Honor, it does.

 8            THE COURT:  Ms. Fox-Young.

 9            MS. FOX-YOUNG:  Okay, the next category

10    consists of all complete recordings; if, in fact, any

11    were edited.  And I'm talking about these recordings

12    made of Mr. Perez at -- what the Government says was

13    in sometime in February of 2016.  The Government has

14    represented that the recordings have not been edited

15    in any way.  We have some questions about that.

16            And this, Your Honor, is where our -- the

17    declaration from our expert, which is attached to the

18    motion as Exhibit 3 -- it's a declaration of Raymond

19    Carrillo.  Mr. Carrillo is a certified forensic

20    technician.  He has over 16 years of experience

21    looking at tape transfers and duplications, this sort

22    of data.

23            In his review of the audio recordings -- he

24    reviewed 11 of the audio recordings referenced here.

25    Subsequent to his review, he determined that these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1519

1    recordings are all different sizes and lengths.  He

2    seamed them together into a timeline to determine

3    whether they were cleanly cut into segments, or if

4    they were actually the product of a recorder that had

5    been stopped or paused, whether the informant was

6    stopping the recording, and continuing with

7    conversation that was not recorded, and, therefore,

8    produced.

9         It's his finding that segments were not

10   cleanly cut, indicating that there may have been

11   stopping or pausing.  He finds that there is a

12   possible loss of information between recorded

13   segments, meaning there is information that was not

14   picked up.  Essentially, statements of Mr. Perez, or

15   of the informant that was not recorded and was not

16   produced.

17        But in order to make any kind of definitive

18   determination about whether that happened, for,

19   instance, he's got to examine the original

20   recordings -- which the Government says don't

21   exist -- and the recording equipment used to make

22   them, to find out if there is a loss of information.

23        And his declaration details -- unless the

24   Court wants me to, I won't get into all the technical

25   details about file length and differences in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1520

1    resolution.  But that is part of the basis for this

2    request.

3         And so, again, because the content of the

4    original unedited recordings, and the content of what

5    might not be on the recordings, if the informant was

6    selectively recording material, taking material out

7    of context, is highly relevant to this Court's

8    determination about the voluntariness of any

9    statements that are heard on the recordings.

10        And so, in order for us to prepare,

11   investigate, and do any kind of critical analysis of

12   this discovery and this evidence, we have to have

13   access either to the original recordings, and/or to

14   the recording equipment itself.  And as I said, this

15   is an issue the Court's going to have to deal with.

16   We have a lot of recordings in this case.

17        And the analysis may be different with

18   respect to different recordings.  Here, we posit it

19   goes directly to the voluntariness of these

20   statements and the circumstances surrounding the

21   statements.

22        Because our client says, "He said things

23   before and after," and he was enticed, or he was

24   threatened, or he was coerced in some way.  We can't

25   investigate that with respect to what the Government

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1521

1    recorded without that access.

2              THE COURT:  But is he saying that?

3              MS. FOX-YOUNG:  Well, at suppression, we're

4    going to argue that these were coerced statements;

5    that they weren't voluntary, under Fulminante and a

6    number of other cases.

7              And the way that he was recorded, and what

8    was not recorded goes directly to the Court's

9    analysis there.  I mean, if the informant is turning

10   the reporting device off, because there is

11   exculpatory information, or because he is taking time

12   to coerce Mr. Perez into saying something, you know,

13   we're entitled to investigate that under Rule 16,

14   under Brady, and it goes directly to suppression.

15             THE COURT:  But I guess I don't understand

16   how the equipment or the original tape would help you

17   there.  If he's not turning it on, then that's a

18   different problem, isn't it?

19             MS. FOX-YOUNG:  Well, that's one thing that

20   could -- that our expert in his declaration, which is

21   Document 1037-3, says he -- access to the original

22   equipment will allow him to investigate.  And so that

23   is one possible, and maybe actually likely aspect or

24   characteristic of these recordings; that there is

25   evidence that an expert can determine the recordings

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1522

```
 1   were -- this is not one seamless recording of a
 2   conversation, you know, that went on for a period of
 3   30 minutes.  It is selective.  It has been edited,
 4   and/or the recorder has been stopped.  And there are
 5   reasons for that, and those reasons go to our
 6   arguments at suppression.
 7           So I'm just not pulling this out of thin
 8   air, Judge.  We have Mr. Carrillo saying in this
 9   declaration precisely why he needs access to the
10   original files, in order to make a determination
11   about that.  And, you know, we're entitled to put an
12   expert on to say, "This recording was stopped.  This
13   recording is not complete."  What happened in the
14   interval when the recorder was turned off?
15           THE COURT:  Can't he do that already?  I
16   mean, if that's what he's saying in his declaration,
17   don't you have everything you're going to get?  I
18   mean, just because it was turned on, turned off, we
19   always are left to wonder what occurred before and
20   what occurred afterwards.  Isn't your expert able to
21   say that now, as well as after reviewing the
22   equipment?
23           MS. FOX-YOUNG:  Your Honor, what he can
24   only, to some degree, speculate about at this point,
25   without access to the recording equipment, is whether
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1523

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 270 of 524

1     or not it was done.  It's his declaration that, if he

2     is able to review the equipment and the originals, he

3     can say whether or not this was one continuous

4     conversation --

5              THE COURT:  We know it wasn't, right?  We

6     just know it's not.

7              MS. FOX-YOUNG:  That appears to be the

8     case.  But what we can't tell is whether there was

9     information lost between the segments, or whether it

10    was momentary.  I mean, without gaining that access,

11    we don't know precisely what will be discovered.  But

12    we know that there is reasons -- it's not as if this

13    is one seamless recording, and I'd be standing before

14    the Court saying, you know, we just would like to see

15    the recording device, because, you know, we think

16    maybe there is some possibility it was stopped.

17             We have an expert saying there may be

18    information loss.  And I can't say, without reviewing

19    the equipment, whether or not there is.  But there

20    are indicators that there is information loss, which

21    goes to the arguments I've already proffered.

22             THE COURT:  All right.  Thank you, Ms.

23    Fox-Young.

24             The Government?

25             MR. BECK:  Your Honor, I think this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1524

```
 1    falls --

 2            THE COURT:  This is the one where Ms.

 3    Duncan wanted to be heard on it.  So why don't --

 4    before you respond, why don't I hear what she has to

 5    say.  Ms. Duncan?

 6            MS. DUNCAN:  Thank you, Your Honor.

 7            Your Honor, we made the same request in our

 8    motion to compel, which is Document 1053.  And we

 9    adopt all of Mr. Perez' arguments.  But I also wanted

10    to make some points that are specific to Mr. Baca.

11    So, like Mr. Perez, Mr. Baca was recorded at PNM

12    Level 6 by an informant in this case.  There is a lot

13    of recordings.  And these recordings stop -- they

14    start and they stop mid conversation.  The way that

15    the recordings are started and stopped is misleading.

16    And we believe -- have reason to believe that

17    exculpatory information has been excluded.  We're

18    very concerned, because with respect to Counts 9 and

19    10, the Government's evidence is really these

20    recordings.  So whether they're a fair and accurate

21    representation of the conversations is critical to

22    the jury's determination of innocence or guilt at

23    trial.

24            So what we are asking for is to review

25    these recorders, to have an expert review these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1525

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 272 2526

```
 1    recorders to determine, is the way in which these
 2    recordings were made, the starting and the stopping,
 3    was that a decision by the recorder, so the
 4    informant?  Was it a malfunction?  Is there some
 5    other, you know, thing going on with the recorder
 6    that would cause the segments to create these
 7    segments that have been disclosed in discovery?  Were
 8    they edited?  Is there evidence that a recording was
 9    being made, it was then deleted, restarted, that sort
10    of thing?
11             Because from the conversations, there are
12    few recordings that really start at the very
13    beginning of the conversation.  And with the
14    informant who is most relevant to Mr. Baca, he's not
15    only recording with one of these devices, but he also
16    had a cellphone.  And so sometimes these recordings
17    are picking up a cellphone, they're picking up
18    conversations between cells.  And it's just unclear
19    if these recordings are accurate.  So what you'll
20    have happen is like there is some sort of
21    conversation going on, the recording suddenly starts,
22    and then you'll have this informant summarizing his
23    understanding, or what he would like the Government
24    to believe happened before the recording comes on.
25    And because of the way that it's recorded, sometimes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1526

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273

```
 1    you can't hear the other side.  So you can't hear Mr.
 2    Baca, you can only hear the informant.
 3            So looking at the recording devices is
 4    necessary for us to impeach this person who is going
 5    to testify at trial, to the extent that he says that
 6    these are fair and accurate, or that he wasn't in
 7    control of how they're being recorded or how they're
 8    being disclosed.
 9            So this is really important evidence for
10    Mr. Baca, particularly, as to Count 9 and 10.
11            THE COURT:  All right.  Thank you, Ms.
12    Duncan.
13            Mr. Beck?
14            MR. BECK:  Again, Your Honor, I think this
15    goes beyond what the rules or any other authority
16    provides the United States must disclose.  And what I
17    get from the declaration of Mr. Carrillo, and from
18    argument of counsel, is they want to know if these
19    were turned off and on, or if they're one recording.
20            They're not one recording.  And then, I
21    guess, he says that "further assess whether there was
22    a loss of information between segments."  And, yes,
23    there was a loss of information between segments,
24    because there was no recording.
25            And so then you go -- I mean, that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1527

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 274528

1    information they can explore on cross-examination

2    with the authenticating witness, is why did you stop

3    recording, or why did the recorder stop recording?

4    Or if you leave out -- I mean, that's all fair

5    argument and fair cross-examination.  But it doesn't

6    lead to any need to see these recording devices and

7    see whether there is an on or an off switch.

8              THE COURT:  How is this done?  How are

9    these recordings done?  You said it's done digitally,

10   so it's not put on a disc immediately.  It's just put

11   on the recording machine, and then you go in and you

12   download it onto a CD?  Is that the way it's done?

13             MR. BECK:  I mean, I'm by no means an

14   expert.  But, yes, it records a digital file.  Then

15   the digital file is at some point downloaded, and it

16   appears here in MP3 format.

17             THE COURT:  Can the Government make this

18   representation:  Can it make the representation that

19   everything that is on the machine is on the CD that's

20   been produced to the defendant?

21             MR. BECK:  Well, I think we can make the

22   representation -- I'm hearing, yes.  I think maybe

23   the more accurate representation would be

24   everything -- I mean --

25             (The Government conferred.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1528

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275

```
 1              MR. BECK:  Yes.  Everything on the recorder
 2    is downloaded and went out, so, yes.
 3              THE COURT:  So the Government is able to
 4    represent that there has been no editing?
 5              MR. BECK:  No.  So I believe that we
 6    produce enhanced recordings, but also produced the
 7    original of the recordings that we've enhanced.
 8              THE COURT:  So you gave them an enhanced
 9    and an original?
10              MR. BECK:  Right.
11              THE COURT:  But there has been no editing?
12    You can assure the Court that nothing has been cut
13    out in any way?
14              MR. BECK:  Right.  Not by the Government.
15              THE COURT:  They got everything that's on
16    the machine?
17              MR. BECK:  Right.
18              THE COURT:  All right.  Ms. Fox-Young?
19              MS. FOX-YOUNG:  Well, Your Honor, I think
20    it's one thing for Mr. Beck to proffer to the Court
21    that everything that was recorded has been downloaded
22    and produced.  But without having our own expert
23    review the recording equipment and the recordings, we
24    can't tell.  And Mr. Beck has told the Court he
25    doesn't personally do this.  This is exactly why you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1529

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 276

1    have an expert in a situation like this.  It's sort

2    of involved technical work.  And I just -- I don't

3    think that it's sufficient for the Government to say:

4    We promise we have produced everything and it's not

5    edited.  So that's the first point.

6           The second point is, as I've already argued

7    to the Court, we need to know more, and can tell more

8    from the recording equipment itself about, exactly as

9    Ms. Duncan argued, whether the recorder, whether the

10   informant was controlling the recorder, turning it on

11   and off; whether the informant was making a

12   determination about when to start it, and, therefore,

13   what was left out.  And that all goes to the

14   voluntariness of Mr. Perez' statements.

15          So the Government -- I mean, I appreciate

16   the Government confirming that everything has been

17   produced.  But it still doesn't answer those

18   questions, which we need to investigate in order to

19   properly cross-examine whoever authenticates these

20   recordings at a suppression hearing or at trial.

21          THE COURT:  Do you want to say -- have a

22   final word on this, Ms. Duncan?

23          MS. DUNCAN:  Yes, Your Honor.  I have a few

24   points.

25          THE COURT:  Ms. Duncan.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1530

1          MS. DUNCAN:  Your Honor, we're not arguing

2    sort of the bad faith of the Government, that they

3    failed to download the recordings from the devices.

4          THE COURT:  Well, it's worse, isn't it?  I

5    mean, you're saying they doctored the tape, isn't it?

6          MS. DUNCAN:  I don't know.  I actually --

7    my inquiry is targeted much more at the confidential

8    informant.  But at this point, I just need more

9    information.

10         THE COURT:  The CI is not going to record

11   the material.  He's just the person that's at the

12   other end that they're recording the conversation;

13   correct?

14         MS. DUNCAN:  No, I believe that the CI had

15   control over the recorder, and so was hitting the

16   button, or stopping the button, I think.  And my

17   concern is -- so, one, I just want to know, is that

18   true?  So the recordings that I have, are they all

19   the recordings, and was it the CI's decision to start

20   conversations mid conversation, and to create

21   recordings that I think are inaccurate, and don't

22   fairly reflect the content of the conversation.  But

23   without looking at the devices, I can't know that.

24         And there are a couple of reasons why I'm

25   concerned about just accepting the Government's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1531

```
1    representations without having an expert look at the
2    device.  One is that there have been other electronic
3    devices, like cellphones, where the Government has
4    downloaded the information, but we haven't gotten all
5    of the information off the cellphones.  And so now
6    the Government has agreed that we can look at them.
7    So I can't tell the Court what exactly is missing.
8    But I should be able to, once we've been able to look
9    at those cellphones.
10           Secondly, in discovery -- and this is Bates
11   No. 21822.  It's a 302 that's talking about a dispute
12   between two informants of whether or not a
13   conversation ever took place.  And Agent Acee went
14   back to look at the recordings that they had
15   retrieved from one of the informants, and it wasn't
16   there.  And what the report says, "In an effort to
17   track down the recording, Agent Acee conducted a
18   review of redacted file, and spoke with Special Agent
19   Brusuelas.  No recording was located in the source's
20   file, although the source said that he had recorded
21   this conversation.  Agent Brusuelas recalled that the
22   CHS had been equipped with a covert recording device,
23   and had been tasked with recording SNM members.
24   Agent Brusuelas subsequently collected the recording
25   device from the source.  However, the device failed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1532

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

1    to record conversations.  And the agent thought the

2    device had malfunctioned or been damaged."

3           So one of the reasons why we're asking for

4    access to these devices is our expert can make an

5    independent determination of whether, in fact, these

6    devices had malfunctioned or been damaged; whether,

7    in fact, when the Government downloaded recordings

8    from these devices, those downloads were complete.

9           So that is why we're asking.  Because these

10   conversations are so critical to the Government's

11   cases against Mr. Baca and against Mr. Perez, it's

12   important that we have access to the recording

13   devices to make these kind of factual determinations,

14   which will be relevant not only for motions to

15   suppress, but also in the jury determining the

16   credibility of the Government's witnesses.

17          THE COURT:  Mr. Beck, can you answer this

18   question?  I mean, is the picture that Ms. Duncan has

19   given me is that the informant is, like, in the cell

20   next door, and he's got a recording device, and he's

21   turning it on and off?  Is that what's going on?  Or

22   is this more like the wiretaps that I'm used to

23   seeing, where you've got people at an undisclosed

24   location listening to a device?

25          MR. BECK:  Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1533

```
 1              THE COURT:  It's both?

 2              MR. BECK:  No, you asked whether I can

 3     answer that question.

 4              THE COURT:  Oh, okay.  Will you?

 5              MR. BECK:  I will.  It's the former.  It's

 6     a device with an on and an off switch.

 7              THE COURT:  Okay.  So everything that the

 8     informant -- so the informant could be cutting things

 9     off early and starting it later.  But everything that

10     you got, you've produced?

11              MR. BECK:  I agree with the second part of

12     that.  I guess the first part --

13              THE COURT:  Don't you have everything you

14     need?

15              MS. DUNCAN:  Your Honor, without looking --

16     having an expert look at the recording devices, I

17     just don't know.  I don't know the method by which

18     the Government downloaded recordings off the

19     recorder.  So I don't know if they've captured

20     everything.  We have evidence that at least one

21     recording device may have malfunctioned.  But we

22     can't know for sure unless we have someone whose

23     specialty in that area, can look at it and say, yes,

24     in fact, there are no recordings here.  It could be

25     that there are recordings out there that more fully
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    reflect the conversations between Mr. Baca and this

2    informant.  And we should have them so that we can

3    give a jury that full and fair representation of

4    those conversations, rather than a partial.

5            THE COURT:  I think you're going to give

6    them a pretty good picture.  I think I better leave

7    the recording devices with the Government.  And I

8    think, with Mr. Carrillo and your arguments, you're

9    going to give a pretty good picture of what's going.

10           All right.  Ms. Fox-Young?

11           MS. FOX-YOUNG:  Your Honor, we next asked

12   for the identity of this informant's law enforcement

13   handler or other agents who dealt directly with him.

14   And as noted in our motion, several defendants have

15   identified the individual as Billy Cordova, based

16   upon his voice on the recordings.  We asked the

17   Government for the identity of the handler, and

18   anyone else who dealt directly.  And the Government

19   responded that Mr. Acee dealt with him.

20           But what the Government will not tell us is

21   who dealt with Mr. Cordova directly at the time of

22   the recordings.  This is, for all the reasons that

23   I've already mentioned with regard to Mr. Perez'

24   statements, and whether or not they're voluntary,

25   this is pretty critical to us.  And that is because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1535

1    it's clear that Mr. Cordova was working with law

2    enforcement.  It's clear that he was provided, as the

3    Government has just informed the Court, with a

4    recorder, which he could turn on and off.  It's clear

5    that -- to us -- that he was placed, we think, next

6    to Mr. Perez, at a time when Mr. Perez was in

7    solitary confinement, and in very poor physical

8    health, and had been in solitary confinement for a

9    number of months.

10         So, Your Honor, we're entitled to know who

11   was coaching, training, prepping, and directing Mr.

12   Cordova at the time of these recordings.

13         We also request that any law enforcement

14   notes made prior to, during the course of, or after

15   the recordings, which are related to these

16   recordings --

17         THE COURT:  Let me ask you this:  Let's say

18   the answer is Bryan Acee.  What do you do with that?

19         MS. FOX-YOUNG:  Well, we prepare for

20   suppression, knowing that Mr. Acee was directing Mr.

21   Cordova to do these things.  There may be somebody

22   else entirely who orchestrated --

23         THE COURT:  But I guess I'm trying to think

24   of why does it matter if it's Mr. Acee, or if it's

25   somebody that flew out of Washington to coach

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1536

1   Cordova.  What does it matter to the suppression

2   motion?

3            MS. FOX-YOUNG:  Because we want to talk to

4   that person, and we want the Court to hear from that

5   person as to exactly what the Government's

6   involvement was.

7            THE COURT:  But I bet they're just going to

8   tell you no.  They're not going to talk to you,

9   right?

10           MS. FOX-YOUNG:  I don't know.  We're very

11   persuasive, Your Honor.  I don't know.  But we're

12   entitled to investigate it.  And we're entitled to

13   subpoena witnesses.  We're entitled to work up our

14   case, not just with regard to suppression, but at

15   trial, in terms of the voluntariness.  It may not be

16   Mr. Acee at all who was coaching Mr. Cordova in the

17   hours prior to these recordings, and during these

18   recordings.  Maybe somebody else entirely.  Maybe

19   somebody who works for the Department of Corrections.

20   And we don't know.  But we're entitled to know.

21           THE COURT:  What does it get you?  I mean,

22   if you know an informant is being coached, what does

23   it give you to find out about the coach?

24           MS. FOX-YOUNG:  Well, under Fulminante, we

25   can -- a defendant can get statements suppressed,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1537

1  conceivably, if they were made by a cooperator -- and

2  I'm paraphrasing -- working in concert with the

3  Government, if they were coerced statements.  We need

4  to understand the Government's involvement, and I --

5          THE COURT:  He could be standing there in a

6  prison cell with a wire or a recording device, we

7  probably did make that assumption, right?

8          MS. FOX-YOUNG:  Well, Your Honor, yes, we

9  can.  Somebody gave Mr. Cordova questions to ask.

10 Somebody prepped Mr. Cordova as to exactly what

11 Mr. Perez had been through.

12         THE COURT:  That's what I'm getting at:  We

13 know all that.

14         MS. FOX-YOUNG:  Well, we don't know

15 because --

16         THE COURT:  Why do we care about the

17 identity of that person?

18         MS. FOX-YOUNG:  So that we can further

19 investigate what coaching was done, what prepping was

20 done, so we can subpoena that person.

21         THE COURT:  What if I assume in your

22 suppression motion that every question that was asked

23 was coached?

24         MS. FOX-YOUNG:  Well, that goes to

25 coercion.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1538

```
 1              THE COURT:  Doesn't that get pretty close
 2    to anything you would need?
 3              MS. FOX-YOUNG:  Well, I think the Court
 4    would have further questions under Fulminante as to
 5    what that coaching consisted of, and, you know,
 6    precisely what the Government's involvement was in
 7    coercing statements.  If there were threats made,
 8    whether those threats came from the Government; you
 9    know, through an informant.  So --
10              THE COURT:  You've listened to these.  Are
11    there threats made?  During the conversations is the
12    cooperator threatening Mr. Perez?
13              MS. FOX-YOUNG:  Your Honor, we'll argue
14    that the conditions -- altogether yes, because of the
15    number of factors, these statements were coerced.  As
16    Mr. Beck has told the Court, it is hard to hear and
17    decipher everything on these recordings.  And that's
18    a process that we're still going through.  We think
19    that there are portions of conversations that weren't
20    recorded.  And that's also evidence that we hope to
21    have come in.  But to this point -- to this request,
22    exactly what the Government did in handling Mr.
23    Cordova, basically using him as a government agent to
24    extract statements, goes directly to the question of
25    the voluntariness of those statements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1539

```
 1              And so, what would we do if we knew who it
 2    was?  We would do background on that person.  We
 3    would find out what other involvement they had.  We
 4    would investigate and subpoena other witnesses.  We
 5    would figure out if this is a pattern that's happened
 6    in this case, where the Government is coaching and
 7    prepping folks, using -- I mean, there are a number
 8    of things that we would do.
 9              THE COURT:  Well, you're probably going to
10    have Mr. Cordova to question at some point, right?
11              MS. FOX-YOUNG:  Yes.  And the decision of
12    whether or not he is going to testify, you know,
13    under Graham, hinges, to some extent, on this kind of
14    information.  And that's -- you know, he is entitled
15    to this material information to make an educated
16    decision about whether or not he wants to take the
17    stand.  And, you know, we've got to work up that
18    portion of the case.
19              THE COURT:  You're talking about Mr. Perez
20    or are you talking about Mr. Cordova?
21              MS. FOX-YOUNG:  Mr. Perez.  Yeah, Mr.
22    Cordova has other considerations.
23              THE COURT:  You're going to probably have
24    Mr. Cordova; you can just ask him, right?
25              MS. FOX-YOUNG:  Who his handler was?  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1540

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7541

```
 1    at that the point, we won't be able to subpoena that

 2    person.  If it's not Mr. Acee, we won't be able to go

 3    through the Touhy regs process.  I mean, that all

 4    needs to be done upfront, not during the course of a

 5    suppression hearing.  And it needs to be investigated

 6    so that we can properly brief the issue for the

 7    Court.

 8              THE COURT:  All right.  Anything else on

 9    that issue, Ms. Fox-Young?

10              MS. FOX-YOUNG:  We also request -- and this

11    is parallel to --

12              THE COURT:  I was going to let the

13    Government respond.  Do you have anything else on

14    that request about the identity of the handler?

15              MS. FOX-YOUNG:  No, Your Honor.

16              THE COURT:  Okay.  Mr. Beck?

17              MR. BECK:  Your Honor, a couple of things.

18    First of all, I just want to remind everyone, I know

19    that we're talking about Mr. Cordova in this sealed

20    document that effectively is now unsealed.  But he

21    was the subject of a protective order until we

22    disclosed it at the last set of hearings.  So we'll

23    remind everyone that if there is a confidential

24    source, that you might refer to them as a

25    confidential source.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1541

1          Getting to the substance of this request,

2     as I think Ms. Fox-Young indicated at sort of the

3     beginning of her argument, is that the United States

4     told her that the handler was Bryan Acee.  So,

5     effectively, that part is gone.  I think that's more

6     than she is entitled to -- excuse me, than Mr. Perez

7     is entitled to under Rule 16, or any other authority.

8     So this, I think, like the location, is just a

9     fishing expedition, and asking the Government to

10     produce things that it doesn't have.  And I don't see

11     that under Rule 16.

12          THE COURT:  Nobody else was a handler?  It

13     was just Mr. Acee?

14          MR. BECK:  Well, I'm not sure.  I mean, I'm

15     not sure that's true.  Mr. Acee was a handler, I

16     guess, as that term goes.  But I guess, if we're

17     talking about big H or little h.  I mean, other

18     agents interacted with Mr. Cordova.

19          THE COURT:  All right.  Anything else, Ms.

20     Fox-Young?

21          MS. FOX-YOUNG:  Very briefly, Your Honor.

22          You know, if the Government is intimating

23     that we're somehow in violation of the protective

24     order, I just want to remind the Court that several

25     defendants identified Mr. Cordova on these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1542

 1    recordings.  And we proffered that in our briefing.

 2            Separately, and the Court will hear our

 3    motion to unseal this pleading -- and I won't argue

 4    that now -- but we've absolutely abided by the letter

 5    of any orders entered by this Court.

 6            And no, Your Honor, I don't have any

 7    further argument on that substantive point.

 8            THE COURT:  Well, I think I'm going to not

 9    grant that request.  It seems to me that it just

10    doesn't give any information that's going to be

11    useful or helpful.  I think the point that can be

12    made can be made with the evidence that already has

13    been produced, or that will be produced.  So I'm not

14    going to require the Government to disclose further

15    handlers.

16            All right.  Ms. Fox-Young, what do you

17    think about calling it a day?

18            MS. FOX-YOUNG:  Well, Your Honor, I think

19    in 90 seconds we might be able to wrap up just the

20    very last part of this subsection.  But if the Court

21    wants to call it a day, we can do it tomorrow.

22            THE COURT:  Well, we're going to have to be

23    here tomorrow.

24            So why don't we go ahead and call it a day.

25    I'll see y'all at 8:30 in the morning.  I appreciate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1543

1   everybody's hard work.  Be safe in your travels.  See

2   y'all tomorrow.

3            (The Court stood in recess.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1544

291

```
1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13       In testimony whereof, I have hereunto set my

14   hand on May 18, 2017.

15

16

17

18   _____
     Jennifer Bean, FAPR, RMR-RDR-CCR
19   Certified Realtime Reporter
     United States Court Reporter
20   NM CCR #94
     333 Lomas, Northwest
21   Albuquerque, New Mexico 87102
     Phone:  (505) 348-2283
22   Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                        CR. NO. 15-4268 JB
                                        15-4269 JB
6   ANGEL DELEON, et al.,

7        Defendants.

8

9                VOLUME 2

10        Transcript of Motion Proceedings before
11   The Honorable James O. Browning, United States
     District Judge, Albuquerque, Bernalillo County,
12   New Mexico, commencing on May 10, 2017.

13
     For the Government:  Ms. Maria Armijo; Mr. Randy
14   Castellano; Mr. Matthew Beck

15   For the Defendants:  Mr. Brock Benjamin; Mr. Richard
     Sindel; Ms. Cori Harbour-Valdez; Mr. Patrick Burke;
16   Mr. Jim Castle; Mr. Robert Cooper; Mr. Roberto
     Albertorio; Mr. Orlando Mondragon; Mr. Noel Orquiz;
17   Mr. Nathan Chambers; Mr. Ben Wilson; Mr. Santiago
     Hernandez; Mr. Steven Potolsky; Mr. Richard Jewkes;
18   Ms. Amy Jacks; Mr. Josh Spencer; Mr. B. J. Crow; Mr.
     Marc Lowry; Ms. Theresa Duncan; Ms. Amy Sirignano;
19   Mr. Christopher Adams; Mr. Michael Davis; Ms. Justine
     Fox-Young; Mr. Donovan Roberts; Ms. Erlinda Johnson;
20   Ms. Angela Arellanes; Mr. Samuel Winder; Mr. Wayne
     Baker; Ms. Callie Dixon; Mr. Don Kochersberger; Ms.
21   Susan Burgess-Farrell; Mr. Diego Esquibel; Mr. Marc
     Grano; Mr. Ahmad Assed; Mr. Gregory Acton; Ms. Marcia
22   Morrissey

23
     For the Defendants (Via telephone):  Ms. Carey Bhalla
24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1546

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2547

```
 1              THE COURT:  Good morning everyone.
 2              All right.  We're going to switch out
 3    seating charts here.  All right.  I think I'll do
 4    some things to move things along by substraction.  So
 5    this morning we're convening everything, continuing
 6    the hearing we had yesterday, except we're not
 7    convening 15-4269, so that case will not be called,
 8    and that loses a few people.  I understand Mr. Villa
 9    is not here yet -- not present yet, but he'll be here
10    later today.  So we have -- Justine Fox-Young will be
11    back there for Mr. Villa.
12              Ms. Sirignano is not here yet, so Mr.
13    Adams, you're here in place?
14              MR. ADAMS:  Yes, sir.
15              THE COURT:  Mr. Davidson, you're here for
16    Mr. Garcia?
17              MR. DAVIDSON:  Yes, Your Honor.
18              THE COURT:  All right.  Good morning to
19    you, Mr. Davidson.
20              Anything else?
21              THE CLERK:  No, sir.
22              THE COURT:  Ms. Fox-Young, you had 90
23    seconds, right?  Amazing what a night's sleep will
24    do, right?
25              MS. FOX-YOUNG:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1547

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3548

```
 1                THE COURT:  Ms. Fox-Young.

 2                MS. FOX-YOUNG:  Yes, Your Honor.  I figured

 3      that we were almost done with this category of

 4      materials on page 20, which is item 4.  And we have

 5      asked the Government for any handwritten and typed

 6      notes of any law enforcement handlers.  Yesterday,

 7      the Government informed the Court and had informed us

 8      that Mr. Acee was one of the law enforcement handlers

 9      who worked with Mr. Cordova, and so his notes would

10      be included in that request.  We also asked that

11      those notes be accurately preserved and maintained

12      until trial.  If the Court doesn't find today that

13      they ought to be turned over, we think that their

14      relevance and materiality might be later determined

15      at trial, and wanted to make sure they're preserved

16      for that purpose.

17                THE COURT:  Any problem with the

18      preservation issue, Mr. Beck?

19                MR. BECK:  No, Your Honor.

20                THE COURT:  So let's preserve them.  I

21      guess my thoughts are that probably you need to look

22      at them for Brady and Giglio and Rule 16 information.

23      But those would -- if there is nothing there, I

24      wouldn't be inclined to produce them.  But your

25      thoughts?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1548

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4549

```
 1              MR. BECK:  I think Your Honor has
 2   maintained a consistent position in the past, and in
 3   this case, that that's the status of the notes is --
 4   they're Jencks unless they're Brady, Giglio, Rule 16.
 5   So the United States is aware of those holdings of
 6   the Court in the past, and will comply with those
 7   rulings.
 8              THE COURT:  We know Mr. Acee is going to
 9   testify, so I guess these might be Jencks materials.
10   But at some point they probably will be produced.  Do
11   you agree with that?
12              MR. BECK:  I agree.
13              THE COURT:  So you'll get them 14 days
14   before, unless there is some Brady or Giglio, Rule 16
15   information.  Can you live with that, Ms. Fox-Young?
16   And you'll get -- of course, they'll be preserved.
17              MS. FOX-YOUNG:  I definitely can, Your
18   Honor.  Will the Court also order that that review
19   and disclosure of Brady, Giglio, and Rule 16 happen
20   in, say, 14 days?
21              THE COURT:  Can you do that, Mr. Beck?
22              MR. BECK:  Well, Your Honor -- and this
23   gets back to what we were discussing yesterday.  I
24   think -- respectfully, I think that Giglio should not
25   be produced yet.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1549

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5550

```
 1            THE COURT:  I did look at this yesterday.
 2   And I can't find anything that I have written that's
 3   drawn a distinction between Brady and Giglio.  But
 4   again, if you have something, I'm quite willing to be
 5   educated on it.
 6            MR. BECK:  Yes, Your Honor.  And I intend
 7   to produce some supplemental briefing on that.  I've
 8   looked at Your Honor's decisions.  And while you
 9   haven't -- the Court specifically hasn't drawn that
10   distinction.  The Court's quoted from Tenth Circuit
11   decisions -- I'm trying to think -- Johnson, an
12   unpublished decision.  And then there is another
13   Tenth Circuit unpublished decision that follows the
14   Court's quotation from Johnson.  It starts with an O,
15   and the name is escaping me now.  I can find it for
16   the Court later.  The Court has quoted Tenth Circuit
17   opinions that have drawn that distinction.  And as I
18   said, I intend to -- the United States intends to
19   file some supplemental briefing on that.
20            But I understand the Court's ruling
21   yesterday that, for the time being, we're required to
22   disclose those.  So I'd ask the Court to look at
23   those Tenth Circuit decisions.  In the meantime, I'll
24   file some supplemental briefing.
25            THE COURT:  All right.  Well, for the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1550

1    present time, why don't we shoot for 14 days to have

2    your review done?

3              MR. BECK:  Understood, Your Honor.

4              THE COURT:  Then, if I need to change

5    course -- I think we're getting together again next

6    week, so that will give us time to change course, if

7    we need to.  But let's plan on that.

8              What else, Ms. Fox-Young?

9              MS. FOX-YOUNG:  Your Honor -- and numbered

10   them 5 on page 20, continuing into the next page, we

11   asked for any documentation and/or correspondence of

12   any kind between the FBI or other law enforcement

13   with NMDOC officials, to include STIU, or anybody

14   else, regarding Billy Cordova possessing contraband

15   items, including recording devices or phones.

16             And the Court got a little bit of a sense

17   yesterday of some of the context for this request,

18   understanding that Mr. Cordova and other informants

19   used in this case have been supplied with hand-held

20   devices, hand-held recorders.  Ms. Duncan talked

21   about cellphones that, apparently contrary to NMDOC

22   rules and the regulations, have been in some way

23   brought into facilities and used in the investigation

24   of counts in this case.  So we ask for the

25   aforementioned materials -- we think that they're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1551

 1   highly material.  They pertain directly to the

 2   voluntariness of Mr. Perez' alleged statements, the

 3   nature of the recording devices and the way the

 4   recordings were made.  And they're also --

 5   potentially they go to -- I think likely -- very

 6   likely -- go to impeaching Mr. Cordova, if he, in

 7   fact, in some way violated NMDOC rules in bringing in

 8   a recording device.  So we ask for that whole

 9   category of documentation, of correspondence, on Mr.

10   Cordova's contraband during this period.

11            THE COURT:  Well, we had a similar issue

12   last week with Chris Garcia and the phone, and that

13   situation.  And I think I pretty much denied the

14   request there.  I guess I'm just having a hard time

15   seeing, you know, how you would use that information.

16   It seems to me it's a recorder, it's not a phone.  So

17   the regs and statutes that relate to that -- and even

18   if they do, that's a violation of state law -- I

19   guess I'm having a hard time figuring out why we'd be

20   concerned about it in federal court.

21            Your thoughts on that?

22            MS. FOX-YOUNG:  Well, I mean, beginning

23   with the phone, if the Court concedes that there

24   would be a violation to having a phone inside, and it

25   would be classified as contraband --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1552

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8553

```
 1              THE COURT:  If I understood the testimony
 2    last week as far as the phone, the warden of the
 3    prison pretty much has carte blanche discretion to
 4    allow a phone into the facility.  So I guess I'm
 5    having a hard time figuring out what difference it
 6    makes how it got there.  If you want to argue at
 7    trial that it shouldn't have been there, then I guess
 8    you can.
 9              MS. FOX-YOUNG:  Well, Your Honor,
10    respectfully, I think the Government would submit, if
11    the warden had let the item in, there wouldn't be any
12    correspondence about contraband in Mr. Cordova's
13    possession.  So, in that case, there wouldn't be any
14    material to turn over.  But if Mr. Cordova did
15    possess contraband, and there is documented evidence
16    of that, and there is correspondence about it, I
17    think we're entitled to it.
18              THE COURT:  Why?  Tell me why, though.
19              MS. FOX-YOUNG:  Because it's impeachment as
20    to how he got it in.  I mean, perhaps the Government
21    provided him with the phone.  And, yes, we'll learn
22    that upon cross-examination any number of times.  But
23    perhaps the Government didn't provide him with a
24    phone.  Perhaps he was otherwise recording
25    conversations, and himself smuggled the phone in.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1553

```
 1    mean, it certainly has been known to happen.  If that
 2    didn't happen, you know, there probably isn't
 3    correspondence about contraband.
 4              THE COURT:  All right.  Mr. Beck, are you
 5    handling this portion?
 6              MR. BECK:  I am, Your Honor.
 7              I guess it sounds like this request is
 8    broader than I read it.  I also read this -- as the
 9    issues we discussed and litigated in the Garcia
10    case -- to the extent that there is contraband, I
11    guess, correspondence or reports or documentation
12    regarding contraband, I guess that would be -- I
13    guess that would be produced as Giglio in his NMCD
14    file, or Giglio, whenever that comes about.
15              I think Your Honor is correct, that in the
16    Garcia case it was determined because law enforcement
17    provided those phones, the warden authorized it, that
18    they weren't contraband under the statute.  So I
19    think that holds true in this case.
20              Certainly, cross-examination will bring
21    that out.  But I think Your Honor's leanings and
22    tending to deny this request is correct.
23              THE COURT:  I'll take a look at the
24    materials for Giglio and Brady material.  I'm sitting
25    here trying to put my feet in the shoes of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1554

```
 1   defense lawyers.  And I'm just having a hard time
 2   figuring out how that would be helpful.  But you're
 3   looking at the materials, so you take a look at them.
 4   And I'd like to have an attorney look at them, stare
 5   at them, and see if they see any Brady, Giglio, or
 6   Rule 16, anything that's helpful to the other side.
 7           Anything else on that, Ms. Fox-Young?
 8           MS. FOX-YOUNG:  Your Honor, will you also
 9   order that review happen in 14 days?
10           MR. BECK:  No objection to that, Your
11   Honor.
12           THE COURT:  All right.  So ordered.
13           MS. FOX-YOUNG:  Your Honor, the last
14   category that we'll address with the Court is on page
15   21 of our motion.  We asked for Mr. Cordova's pen
16   pack and STIU file.  We are, the defense believes,
17   entitled to know, as I've already said, the manner by
18   which Mr. Cordova may have obtained any materials he
19   used in eliciting recorded statements.  And that
20   information, among other information, may be gleaned
21   from his pen pack and his STIU file.
22           It's also -- as I think the Court has
23   become very familiar with the contents of pen packs
24   and STIU files, based upon prior argument and prior
25   orders -- it is sort of classic impeachment material.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1555

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 11556

 1   Any disciplinary matters involving Mr. Cordova, his

 2   past felonies, would exist in the pen pack.  But the

 3   STIU file will contain, you know, records of any

 4   discipline.  He continues to remain in custody.  And

 5   certainly, you know, during the period that he was

 6   recording -- allegedly recording Mr. Perez -- we're

 7   entitled to know if he was committing infractions, if

 8   he was getting in trouble, if he was bringing in --

 9              THE COURT:  I think Mr. Beck may be about

10   to make a concession.  Mr. Beck?

11              MR. BECK:  Yeah, your Honor, I think this

12   falls into the category that we've discussed, the

13   14-day Giglio review.  And if Your Honor is ordering

14   us to disclose it, we'll disclose it.  I think Ms.

15   Fox-Young is right.

16              THE COURT:  Well, here's the thing, I think

17   it's going to be chockful of stuff that, if he's

18   going to be called as a witness, that they're

19   probably going to get.

20              MR. BECK:  Right.

21              THE COURT:  So do you want to fight over

22   the file, or do you want to go through and do a

23   Giglio and Brady review, before you just turn over

24   the file?

25              MR. BECK:  I guess, in Your Honor's wisdom,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1556

```
 1   we'll just turn it over.

 2                THE COURT:  Okay.

 3                MS. FOX-YOUNG:  Your Honor, is that both

 4   the pen pack and the STIU file?

 5                MR. BECK:  It is, Your Honor.

 6                MS. FOX-YOUNG:  And is that a 14-day

 7   disclosure?

 8                MR. BECK:  Fourteen days is fine.

 9                MS. FOX-YOUNG:  Okay.  And the final item

10   is on page 22.  We've come to an agreement.  The

11   Government is going to permit us to access Southern

12   and PNM Level 6, including the locations where Mr.

13   Perez was housed at PNM Level 6.  And we'll go ahead

14   and get that set up with the Government.

15                THE COURT:  Is that correct, Mr. Beck?

16                MR. BECK:  That's correct, Your Honor.

17   We're coordinating that presently.

18                THE COURT:  All right.  Anything else, Ms.

19   Fox-Young?

20                MS. FOX-YOUNG:  Your Honor, I can take up

21   the next motion quickly, if the Court would like to

22   take it up, the motion to unseal?

23                THE COURT:  Okay.  Let me make sure I get

24   the right ones here.

25                MR. DAVIS:  Michael Davis on behalf of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1557

1    Carlos Herrera.  I had filed a joinder.  There is one

2    specific item of discovery that I was going to

3    address the Court on.

4            THE COURT:  This is in the motion to compel

5    that we just argued?

6            MR. DAVIS:  Yes, sir, it's in 1037.

7            THE COURT:  All right.

8            MR. DAVIS:  I apologize.  If I could just

9    have a few minutes.

10            THE COURT:  All right.  Go ahead.

11            MR. DAVIS:  Thank you, Judge.  Just, by way

12    of background, if the Court recalls, Mr. Herrera has

13    been charged in Counts 6 and 7, as being involved in

14    the murder of Javier Molina.  It's also clear that he

15    was not in the same pod where Mr. Molina was

16    murdered.  And it appears that he's clearly not

17    directly involved in the murder.  It appears to be

18    the Government's theory -- basically two-fold -- one

19    is that he holds some sort of a leadership capacity

20    in SNM; and two, that based on that, he somehow gave

21    a nod or somehow sanctioned what was to be done with

22    Mr. Molina.

23            And, in the course of this, there is Billy

24    Cordova recordings involving Mr. Herrera as well,

25    that were done at PNM South.  And so we joined in all

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14559

1    the arguments that Ms. Fox-Young and Ms. Duncan

2    raised yesterday.  We don't have any additional

3    argument with regard to all of those issues except

4    for a couple.

5           First off, I think there are recordings --

6    Billy Cordova recordings -- with Mr. Herrera that

7    there may be transcripts of that we haven't received.

8    I may be wrong about that.  I haven't discussed that

9    specifically with the Government.  But our review, I

10   feel there are some transcripts that we haven't

11   received, and we ask those to be provided.

12          The next thing, Judge --

13          THE COURT:  Don't we take them one at a

14   time here.  And --

15          MR. BECK:  Obviously, Ms. Armijo can speak

16   to this better than I, but I'll try my best.  If

17   there are transcripts, I think we produced them.  If

18   not, we'll produce them.  And there may be some that

19   don't have transcripts.  But we don't object to that

20   request.

21          THE COURT:  All right.  Does that satisfy

22   you on that, Mr. Davis?

23          MR. DAVIS:  Yes, Judge.

24          Judge, the other thing -- and this is very

25   brief -- is that when we were at the November 29

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1559

1    hearing, this issue came up as to how Mr. Herrera was

2    involved in this.  And Ms. Armijo said there is a

3    audio recording where Mr. Herrera is purported to

4    have admitted to his involvement in the murder, some

5    sort of a confession, I would say they intend to

6    use -- I guess in one of the Billy Cordova recordings

7    or some other recording.  We have repeatedly asked

8    the Government to provide us a copy of that.  We have

9    reviewed all the audio recordings concerning Mr.

10   Herrera, and we cannot find any such statement.  And

11   we have asked the Government to provide that to us.

12   It would be Rule 16.  Obviously, it's crucial to our

13   case.  And so we'd ask the Court to order the

14   Government to provide that, if it, in fact, exists.

15           THE COURT:  Well, my impression from that

16   conversation -- and correct me if I'm wrong -- is

17   that maybe Ms. Armijo backtracked a little from her

18   characterization of it.  She did say -- or I thought

19   she confirmed that the transcript and the recording

20   that she was characterizing as a concession, or

21   confession, had been produced; confirmed that, and

22   there was no more to be produced.Is my memory off,

23   Mr. Beck?

24           MR. BECK:  That's right, Your Honor.

25           THE COURT:  So you have it.  I think it was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1560

 1    the heat of argument.  And she characterized it, but

 2    there is no more to be produced; is that correct?

 3            MR. BECK:  That's right, Your Honor.  And I

 4    think what Mr. Davis is asking is for us to point him

 5    specifically to the recording.  And I don't have a

 6    problem working with him to do that.

 7            THE COURT:  Okay.  So he'll tell you which

 8    recording they're characterizing.  But you have it.

 9            MR. DAVIS:  Just to clarify, I don't think

10    that's what she said.  I'm sorry I don't have the

11    transcript in front of me.  Because I remember a

12    similar allegation was made by the Government

13    concerning Mr. Baca.  And I remember Mr. Lowry and I

14    both were surprised to hear this, because we weren't

15    aware of any of these recordings where a confession

16    was made.  Obviously, that's a fairly crucial piece

17    of evidence.I sent emails to the Government.  They

18    were going to look for it.  At some point, and

19    provide it to me.  And I've never seen it.I certainly

20    have no problem continuing to work with them on that.

21    But I want to alert the Court that they did make the

22    reference.  But we haven't seen it.  We don't believe

23    it exists.

24            THE COURT:  Maybe by the next hearing next

25    week, could you just send a letter -- email -- to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1561

1    Mr. Davis telling him which transcript or recording

2    Ms. Armijo was referring to?

3                MR. BECK:  I said I would, Your Honor, and

4    I will.

5                MR. DAVIS:  Thanks, Judge.

6                THE COURT:  Thank you, Mr. Davis.

7                All right.  Ms. Fox-Young.  Let me get

8    organized here, but can you come back up to the

9    podium.  Let me get my materials.Ms. Jacks,

10   Mr. Jewkes, y'all had joined that series of motions

11   as well.  Do y'all have anything else on that before

12   we move on?

13               MS. JACKS:  We don't have anything

14   additional.  Thank you.

15               THE COURT:  All right.  Thank you, Ms.

16   Jacks.

17               So you want to unseal the motions we just

18   argued; is that correct, Ms. Fox-Young?

19               MS. FOX-YOUNG:  That's correct, Your Honor.

20               THE COURT:  And the reason for that is?

21               MS. FOX-YOUNG:  The first general reason is

22   that, as this Court has noted there is a general

23   presumption against filing pleadings sealed.

24   Additionally, we believe that any cooperating witness

25   discussed in the motion -- and I think --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1562

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1563

 1          THE COURT:  Let me ask this:  Y'all didn't

 2     file a response.  Do you oppose this motion?

 3          MR. BECK:  Your Honor, I just -- what I

 4     have -- and I think what the Government has an issue

 5     with is that we come in yesterday, and we talk for

 6     hours and hours about how we have to have everything

 7     on tablets so there is no paper in the facilities.

 8     The reason for that is cooperator statements.  And

 9     then we talked about how all the defendants want the

10     tablets so there is no paper in the facilities for

11     cooperator statements.  And then now, we want

12     unsealed documents that refer to cooperator

13     statements.

14          So it seems to me we're talking out of the

15     both sides of our mouths.  So we'd appreciate it if

16     they were consistent on that.

17          Since we've already talked about the

18     informant in this case, we don't oppose unsealing it,

19     because, effectively, it's there, it's unsealed.  So,

20     to answer Your Honor's question, no, I just think

21     that everyone should remain aware of what's going on

22     in this case, and the threats out there and the

23     dangers out there.  And I know everyone is.  Just --

24     the inconsistency troubles me.So to answer Your

25     Honor's question, we don't oppose it.  And you may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1563

1    grant the motion.

2            THE COURT:  All right.  So I will grant

3    that motion.You know, in a case like this, it's hard

4    to be consistent.  And sometimes we don't -- we're

5    just not going to be able to -- we're

6    across-the-board trying to make lots of

7    individualized decisions.  And some of them are going

8    to look a little inconsistent at times.  But some of

9    the material is out in the public; some of it's not.

10   And we'll try to be careful with everybody.  But I'll

11   grant that motion.

12           MS. FOX-YOUNG:  Your Honor, I mean, this is

13   going to come up again and again.  But, generally,

14   it's our position that if witnesses are going to be

15   testifying at trial, we should be able to file public

16   motions and conduct public hearings with regard to

17   any argument.And so it's been a practice in the

18   case -- I think because there is a protective order

19   in place, a lot of counsel are filing motions sealed

20   where there is any mention of the discovery, where

21   there is any mention of any witnesses.  And I just --

22   I think that's contrary to some of the Court's

23   earlier directives; that the presumption should be

24   that the documents be filed unsealed.  Obviously, if

25   there is a protective order specifically in place

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1564

1    addressing a particular CS, you know, that material

2    needs to be filed sealed, unless there is some other

3    way that the information is public.

4            But I just wanted to bring that to the

5    Court's attention, because we're filing a lot of

6    documents sealed, and then we have to file our

7    joinder sealed.  And then we come in here and have a

8    public hearing.

9            THE COURT:  Well, we'll just have to take

10   them one at a time.  I mean, there may come a time

11   when not a whole lot, as we barrel toward -- and get

12   into the trial.  But a lot of it is not going to be

13   sealed.  But I think we're just going to have to take

14   these issues one at a time.  There may be things the

15   Government knows and needs to protect.  And we put in

16   place a method.  It's working.  It's cumbersome to

17   some degree.  But I think we're working.

18           Do you want to say anything on that, Mr.

19   Beck?

20           MR. BECK:  I do, Your Honor.  That

21   presumption case law says it's overcome when there is

22   an interest in getting the witnesses to testify at

23   trial.  And that's the case here.  We have these

24   cooperators, witnesses, whatever you want to call

25   them, protected so that they may testify at trial.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1565

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 21566

1    And I think there is a great concern, and it

2    overcomes the presumption in this case.

3              And so I would ask -- not necessarily the

4    Court -- but I'd ask everyone in this room that when

5    we're talking about sealed documents, if we seek to

6    unseal them, that we do that before we talk about the

7    motions.  Instead of like this case, where we talked

8    about the sealed document, and outed a cooperator

9    who, granted, has been outed before, whether it be

10   incidentally.  But going forward, I would ask that we

11   talk about motions to unseal before we talk about the

12   sealed documents.

13             THE COURT:  All right.  I'll try to be more

14   careful on that, too.  Sometimes, like Ms. Fox-Young

15   says, everything is sort of sealed, but nobody is

16   sensitive about it.  So help me out, if we're about

17   to argue something, raise my attention.  And I'll try

18   to be more careful about that as well.

19             MS. FOX-YOUNG:  Thank you, Your Honor.

20             THE COURT:  All right.  Anything else, Ms.

21   Fox-Young?

22             MS. FOX-YOUNG:  No, Your Honor.

23             THE COURT:  All right.  Thank you, Ms.

24   Fox-Young.

25             All right.  I think that what's next up is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1566

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22

1    Mr. Gonzales' motion for a bill of particulars.  Ms.

2    Johnson.  Who is going to be arguing this for the

3    Government?  Mr. Castellano, why don't y'all come up

4    here with Ms. Johnson, why don't y'all just come up

5    here together.  And I'll certainly hear anything

6    anybody wants to say on this motion.  But let me ask

7    a few questions here at the beginning.  You got your

8    materials, Mr. Castellano?

9              MR. CASTELLANO:  Yes, Your Honor.

10             THE COURT:  All right.  It seemed to me the

11   only specific question I could glean from your

12   materials that you wanted to know is when Mr.

13   Gonzalez joined the SNM Gang, when the Government

14   contends that he joined the SNM Gang.  You may have

15   more.  But let's start with that one.  That is one of

16   the ones that you wanted; correct?

17             MS. JOHNSON:  That is, Your Honor.  And

18   more importantly, obviously, as the Court is aware,

19   one of the elements pursuant to 18 USC 1959 that the

20   Government has to prove is that the defendant had, or

21   was seeking a position in the enterprise.  Another

22   element is that the defendant's general purpose in

23   committing the crime of violence was to maintain or

24   increase his position in the enterprise, or was in

25   consideration for the receipt of anything of value.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1567

```
 1              That is actually the crux.  And I made -- I
 2    think I articulated it better in my reply.  I have
 3    gone through the discovery.  My investigator has gone
 4    through the discovery.  And as the Court knows, it's
 5    voluminous.  There is absolutely no evidence that we
 6    could find that would point to us that Mr. Gonzalez
 7    engaged or participated in this crime of violence in
 8    order to maintain or increase his position in the
 9    enterprise.  That's a key element, Your Honor.
10              And the Court in U.S. versus Aispuro, which
11    is the case that I, along with other counsel in this
12    courtroom, had before this Court, ordered the
13    Government to provide --
14              THE COURT:  Well, let's -- I read the
15    briefing, and y'all are pretty good about pointing
16    out my cases.
17              Let's just take the first question first.
18    Mr. Castellano, do you have any more specific
19    information that you'd be able to give as far as the
20    date that Mr. Gonzalez joined the SNM Gang?
21              MR. CASTELLANO:  I don't have a specific
22    date, Your Honor.  What I can tell the Court is my
23    understanding is that he's an 18th Street Gang
24    member.  There are a few other SNM members who are
25    from the 18th Street Gang.  And that's a feeder gang
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1568

1   for the SNM.  So, as an 18th Street member, he could

2   either be a member or an associate of SNM Gang.

3          THE COURT:  Do you have any particular

4   documents that you would point to that give Ms.

5   Johnson that information?

6          MR. CASTELLANO:  I don't know if I do, Your

7   Honor.  I wasn't ready to address that question this

8   morning, since it was just strictly the bill of

9   particulars.  So it may be in a debrief report or

10  something else.  But right offhand, I'm not aware of

11  that.

12         THE COURT:  Ms. Johnson, address your

13  question to me, but what question would you want the

14  Government to answer; given that you're not going to

15  get a whole lot more from them, maybe a document or

16  Bates number, what else would you want?

17         MS. JOHNSON:  With regard to this

18  particular element, Your Honor?

19         THE COURT:  Well, if you're done with that

20  element, you're free to move on to another element.

21         MS. JOHNSON:  And I appreciate that, Your

22  Honor.  I'm sure the Court will be seeing a motion in

23  limine on this issue, because I think we're doing a

24  lot of speculation here in terms of what the

25  Government's position is, and a lot of conclusions

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1569

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5570

1    being drawn.  But we'll address that in a motion in

2    limine.

3              THE COURT:  Okay.  What's your next -- what

4    would be your next question that you would want with

5    a bill of particulars?

6              MS. JOHNSON:  Your Honor, it's the other

7    element that I addressed.  And that is --

8              THE COURT:  What did Mr. Gonzalez get out

9    of being in the gang or committing the crime?

10             MS. JOHNSON:  Committing the crime, Your

11   Honor.  And specifically I cited to U.S. versus

12   Jones, which set out nicely the elements required

13   under 18 USC 1959.  One is that the defendant had, or

14   was seeking a position in the enterprise.  And the

15   other element is that -- and they're somewhat

16   intertwined -- that the defendant's general purpose

17   in committing the crime of violence was to maintain

18   or increase his position in the enterprise.  Or he

19   was in consideration for the receipt of anything of

20   value.

21             And it's not sufficient for the Government

22   to get up here, Your Honor, and say -- just as they

23   did now -- well, he's an 18th Streeter, and by

24   conclusion, it's a feeder gang to SNM.  There is

25   absolutely no evidence that shows that, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1570

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 26

```
 1    None whatsoever.And then also I expect them to say,
 2    Well, he was acting at the behest, allegedly, of Joe
 3    Gallegos, and therefore, he was seeking a position in
 4    the enterprise, or to maintain a position.  There is
 5    no evidence.  Absolutely none whatsoever.
 6              THE COURT:  Well, I do think it's helpful
 7    to know exactly what their theory is with Mr.
 8    Gonzalez.
 9              Mr. Castellano, Ms. Johnson sounds like she
10    knows what your theory is.  But do you want to
11    elaborate as to what your theory is against Mr.
12    Gonzalez?
13              MR. CASTELLANO:  Not really, Your Honor.
14    The case law on bill of particulars states that the
15    Government does not have to give its theory, and that
16    the bill of particulars isn't a fishing expedition.
17    But the Government's theory --
18              THE COURT:  I'm trying to decide whether
19    it's worth ordering the Government to be more
20    particular here.  So I guess I'd like to hear your
21    theory against Mr. Gonzalez.
22              MR. CASTELLANO:  Well, I'll note my
23    objection for the record, Your Honor.  The case law
24    says that's not the purpose of a bill of particulars.
25    But to answer your question, not only does it count
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1571

```
 1   to violate the statute, it also counts to be an aider

 2   and abettor, in violation of the statute.  So he

 3   could have aided and abetted any of these people to

 4   violate the VICAR statute.  One of the documents Ms.

 5   Johnson gave yesterday has a statement indicating

 6   that Gutierrez, Shauna Gutierrez told Brandy

 7   Rodriguez, Rivera, and Gonzalez to get over to the

 8   house and take care of Gomez.  And the other

 9   statements indicate that there was concern that

10   Gomez, the victim, was going to be a witness against

11   Joe Gallegos.  And so that is one of the allegations

12   in the indictment, is that -- witness intimidation is

13   one of the things that the racketeering activity

14   covers.

15              THE COURT:  Is that primarily what your

16   case is of Mr. Gonzalez, is witness intimidation?

17              MR. CASTELLANO:  Yes.  Part -- there is in

18   the second superseding indictment a count of witness

19   tampering, which is Count 16.

20              THE COURT:  So that's mostly what Gonzalez

21   is in for?

22              MR. CASTELLANO:  Yes.  And as a gang

23   member, that would be one of the things you do is you

24   take care of snitches.  And so that is something that

25   is expected of you by membership in an organization.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1572

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 28

```
 1              THE COURT:  Is it this one witness, though,
 2    that is going to be the proof at trial?  The case
 3    against him, this one witness that's --
 4              MR. CASTELLANO:  At this point, we have the
 5    victim and one cooperating defendant.
 6              THE COURT:  Okay.  And the victim is the
 7    one witness; so that's the case against Mr. Gonzalez?
 8              MR. CASTELLANO:  No.  The cooperating
 9    witness -- so there is the victim and a cooperating
10    witness.  So there are two.
11              THE COURT:  You're going to allege that --
12    you're going to argue that he intimidated both of
13    them?
14              MR. CASTELLANO:  No.  The victim will tell
15    us what happened to him, and the cooperating witness
16    will tell us the reasons behind the assault.
17              THE COURT:  But the case against Mr.
18    Gonzalez is that he intimidated one witness?  You
19    have two witnesses to testify about that?
20              MR. CASTELLANO:  That's correct.
21              THE COURT:  And you know the name of the
22    victim?
23              MS. JOHNSON:  Yes, Your Honor.
24              THE COURT:  And you know the name of the
25    cooperator.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1573

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29574

 1              MS. JOHNSON:  Yes, Your Honor.  And I think
 2    that what we're doing -- this is sort of a
 3    tautological argument.  I don't believe that -- we
 4    know what the evidence is; that this individual was
 5    beaten.  But, obviously, the Government needs to
 6    prove the additional elements that I think are
 7    deficient.  And I can't find any evidence in the
 8    discovery.
 9              And I wanted -- if I may, Your Honor --
10              THE COURT:  How, then, would a bill of
11    particulars help you?  I mean, if you're prepared to
12    punch holes in the Government's case because they
13    don't have witnesses -- and one of the things that
14    these cases -- my cases have pointed is, you know, I
15    look at the evidence that's been produced.  I mean,
16    sometimes these bill of particulars come early in a
17    case, where a defendant is really scrambling to
18    figure out what the charges are.  But in this case,
19    it may not be a robust case from your viewpoint, but
20    that's it.  I'm wondering what a bill of particulars
21    would do to help you.
22              MS. JOHNSON:  Well, Your Honor, as the
23    Court pointed out, under United States v. Ivy, which
24    is the Tenth Circuit opinion at 83 F.3d 1266, at page
25    1281, "A defendant is entitled to the theory of the

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492
                                                e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1574

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 30575

 1   Government's case," as the Court just queried the

 2   Government.  So the issue is not whether --

 3          THE COURT:  It seems to make sense.  It may

 4   not have any support in the evidence, but I mean,

 5   it's a coherent theory.

 6          MS. JOHNSON:  And I understand, Your Honor.

 7          But what we're doing here -- what the

 8   Government is doing is they're leaping to

 9   conclusions.

10          And I want to just give the Court a little

11   bit of a preview of how the Government, and

12   particularly the investigators in this particular

13   case, leaped to conclusions without evidence.

14          And this goes back to my first request on

15   the association or membership of Mr. Gonzalez in the

16   SNM.  So in United States v. Ramon Phillip Baca,

17   which was a case before Judge Herrera, Mr. Baca was

18   charged in a stand-alone drug case, he pled, was

19   sentenced, and was on his way to BOP with a

20   designation as an associate of SNM, which he has

21   never been.  And so I asked the Government counsel in

22   that case to please remove that designation because

23   it was not supported.  That attorney contacted Agent

24   Acee, who then responded, and I was provided with a

25   copy of the response.  And his conclusion as to why

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1575

```
 1   Mr. Baca was an associate of the SNM was that because
 2   one of his uncles was a founding father of the SNM.
 3   By that familial association, Mr. Baca was then an
 4   associate of the SNM for life.
 5           Your Honor, I'm concerned here we're going
 6   to have issues of the Government leaping to
 7   conclusions, unfounded conclusions, about membership,
 8   more importantly association in the SNM by
 9   Mr. Gonzalez.  And I think that the Court needs to
10   hold the Government's feet to the fire, and have them
11   produce evidence of how Mr. Gonzalez is an associate
12   of the SNM; when this happened; what evidence
13   supports this association.  And then, with regard to
14   the other element that he committed this offense to
15   maintain a position, the fact that he committed the
16   offense, he could have had a beef with Mr. Gomez,
17   because he's a child molester.  But not because he
18   was doing it in order to assist the SNM.  So again,
19   this goes back to my argument, Your Honor.  His
20   participation in this offense, beating Mr. Gomez,
21   doesn't get the Government a 1959 conviction.  And I
22   think that their indictment tracks the statutory
23   language.
24           And we have volumes of discovery, thousands
25   of -- tens of thousands of pages of discovery.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I'd ask that the Court order the Government to narrow

2    that and tell the defense in this case the theory of

3    the Government's case as to -- particularly as to

4    those two elements -- without these unfounded

5    conclusions by an agent in this case.

6            THE COURT:  All right.  Thank you, Ms.

7    Johnson.

8            Mr. Castellano.

9            MR. CASTELLANO:  Well, Your Honor, she's

10   talking about the strength of the Government's case

11   in her opinion.  That's really her closing argument.

12   That's not the basis of a bill of particulars.  And

13   she's announced she's ready for trial.  What she's

14   telling the Court is that she's not ready for trial.

15   And that's a different topic altogether.

16           So I think, once again, this is not the

17   subject of a bill of particulars.  She has plenty of

18   discovery.  The case law says that the indictment, if

19   it tracks the language of the statute, informs the

20   victim -- or the defendant of what the charges are,

21   when they occurred, where they occurred.  And it's

22   supplemented by discovery, and that's sufficient, and

23   that defeats the motion for a bill of particulars.

24           MS. JOHNSON:  Your Honor, the whole purpose

25   of the bill of particulars was to --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1577

```
 1                THE COURT:  Were you done, Mr. Castellano?
 2                MR. CASTELLANO:  Yes, I'm done, Your Honor.
 3                THE COURT:  All right.  Ms. Johnson.
 4                MS. JOHNSON:  I apologize.
 5                Your Honor, the whole purpose of the bill
 6      of particulars is to avoid surprise at trial.  So if
 7      that's all they have, well, okay, that's all they
 8      have.  But, Your Honor, they are deficient in the
 9      elements and in the evidence, and according to the
10      case law which the Court cited in -- and did a very
11      thorough analysis in US versus Aispuro, we're
12      required to know what facts support these legal
13      elements.  And that's why, Your Honor, I think it's
14      important to order the Government to provide the
15      defense a bill of particulars, particularly on those
16      two requisite elements.
17                THE COURT:  All right.  Thank you, Ms.
18      Johnson.
19                Well, I don't want the defendant surprised.
20      But I guess I would take, from your representations,
21      Mr. Castellano, every document that you got related
22      to Mr. Gonzalez, what you're going to use to prove
23      the case, is in the possession of Ms. Johnson?
24                MR. CASTELLANO:  I believe so, possibly
25      with the exception of Jencks statements, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1578

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34579

```
 1            THE COURT:  But you've looked at those?
 2   There is no Brady, Giglio, or anything material
 3   there, so there is nothing that you made a
 4   determination is going to be helpful to her?
 5            MR. CASTELLANO:  I don't believe so, Your
 6   Honor.  But I will review those again.
 7            THE COURT:  Well, I'm not inclined to grant
 8   a bill of particulars.  You've got a ton of
 9   documents.  I think you and I have a good feel as to
10   what the case against Mr. Gonzalez is.  I think we
11   know what the holes are.  The Government has got to
12   know its strengths.  There is not much more I can do.
13   it's not a civil case where I can have a summary
14   judgment or is a motion to dismiss.
15            So I'm not going to grant a bill of
16   particulars.  I think in this case people have a
17   pretty good idea what they're going to trial on.  So
18   I'm going to deny the motion.
19            MS. JOHNSON:  Thank you, Your Honor.
20            THE COURT:  Thank you, Ms. Johnson.  All
21   right.  Ms. Johnson, I think the next one is yours as
22   well.  It's the amended motion for an order to compel
23   specific discovery.  If you want to take that up.
24            MS. JOHNSON:  Motion to sever, Your Honor?
25            THE COURT:  No, this is the amended
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    motion -- you want to argue that again, huh?  You're

 2    beating the dead horse, aren't you?

 3           MS. JOHNSON:  You said we could still

 4    continue to beat it.

 5           THE COURT:  Do you want to argue the

 6    amended motion for an order compelling specific

 7    discovery?

 8           MS. JOHNSON:  Yes, Your Honor.  I believe

 9    that the items are limited and addressed in the

10    reply, because we have since received some of the

11    items that were addressed in the motion to compel.

12           So what we're down to, Your Honor, the

13    first one is the disclosure of DNA and fingerprint

14    evidence from a machete that was seized by officers.

15           So, in this particular case, Your Honor, on

16    February 26, 2016, as the Court is aware from the

17    allegations, Jose Gomez was beaten at the home of a

18    woman by the name of Charlene Parker Johnson.  And

19    the allegations are that -- well, they vary here --

20    that the reason for the beating was at the behest of

21    Joe Gallegos, according to the Government's evidence,

22    or the Government's position, I should say.  So then,

23    according to Mr. Gomez' -- one of his numerous or

24    varying versions of the events was that he was hit on

25    the head with a machete by Mr. Gonzalez, and then by

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1580

```
 1    another object by Mr. Rivera.  Mr. Gomez managed to
 2    run away.  And a few days later he claims that he was
 3    chased by some individuals in a van.  And Valencia
 4    County Sheriff's Deputies responded to the call, and
 5    a van was eventually located, and a machete was
 6    allegedly found in the van.  The machete was
 7    processed for DNA and fingerprint evidence.  I expect
 8    the Government will try to introduce that machete,
 9    and try to argue that that was the machete that was
10    used in the beating of Mr. Gomez.
11           The report from Valencia County Sheriff's
12    Department indicates that, as I said, the machete was
13    processed for DNA and fingerprints.
14           The FBI actually responded very quickly,
15    and interviewed Mr. Gomez, and essentially took over
16    the investigation.  Your Honor, what we are asking
17    are for the results of the DNA testing and the
18    fingerprint evidence, because we are 100 percent
19    confident Mr. Gonzalez' DNA, nor his fingerprints,
20    will be found on the machete.  And we would submit to
21    the Court -- and this is not just speculative; I'm
22    100 percent confident that his DNA and fingerprint
23    evidence will not be on that machete.  So this is
24    clearly Brady evidence.
25           The Government's position is that, Well,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1581

```
 1    we're washing our hands of it.  It's in state

 2    custody.  It's not our duty to have these things

 3    tested.  Your Honor, because they've adopted this

 4    case -- they're working with state officials; this is

 5    a joint investigation with state officials -- the

 6    Government is required, and now the duty is imposed

 7    on the Government to provide this evidence.  I would

 8    ask that the Court order the Government to provide

 9    this DNA evidence and this fingerprint evidence to

10    the defense, obviously, forthwith.

11              The other item that we are requesting --

12              THE COURT:  Why don't we take them one at a

13    time.

14              All right.  Ms. Armijo.

15              MS. ARMIJO:  Your Honor, we have requested

16    that -- although it may have been processed for DNA,

17    it wasn't submitted for DNA analysis.  We made that

18    request of the state some time ago, and we are

19    checking to see if the results are back in.  We

20    certainly will turn them over once we do.  But we

21    made that request of the state.  But she's probably

22    right.  We don't think that this is the machete that

23    was used.  So while she stands there and says "100

24    percent," and believes we're going to say it's the

25    machete, we're not going to say it's the machete.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1582

```
 1              THE COURT:  You don't have the machete?
 2   You're not planning to introduce it at the present
 3   time?
 4              MS. ARMIJO:  We don't believe that that's
 5   the machete that was used.
 6              THE COURT:  So you're not planning to
 7   introduce that one?
 8              MS. ARMIJO:  No.  Unless something comes
 9   back that we don't -- but we don't believe it's the
10   machete.  We have made the request for the DNA.  When
11   we get the response back from Valencia County, we
12   will certainly inform defense counsel of where they
13   are with that.  But we're not saying that's the
14   machete.
15              THE COURT:  You may not want to mess with
16   that machete.
17              MS. JOHNSON:  All right.  Well, then --
18              THE COURT:  Leave that alone.
19              MS. JOHNSON:  -- that answers that, Your
20   Honor.So in order to avoid a motion in limine, is if
21   the Government agreeing that they will not be
22   introducing any evidence of this machete in this van?
23              THE COURT:  I think we have a
24   representation at the present time you don't intend
25   to do that; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1583

```
 1            MS. ARMIJO:  We don't plan to say this
 2   machete was used in it, yes.  Unless there is some
 3   other relevance to it, which I can't think of right
 4   now.  But certainly if it becomes an issue, we would
 5   inform defense counsel.
 6            THE COURT:  Okay.
 7            MS. JOHNSON:  That answers that then.
 8   Thank you.
 9            The next item, Your Honor, is written
10   statements to the FBI by Brandy Rodriguez and Paul
11   Rivera.  Now, while I understand that the Court can
12   order the Government to provide this Jencks material
13   now, the Court can encourage the Government to
14   perhaps release them, or provide them, disclose them
15   early, earlier than just right before trial.  But
16   more importantly, Your Honor, I would submit to the
17   Court that these statements contain Brady information
18   as to Mr. Gonzalez, particularly as to some of these
19   elements that the Government is required to prove.
20   I'd ask that the Court direct the Government to
21   carefully inspect these for Brady impeachment
22   material, and order them to disclose them to the
23   defense if they contain that information.
24            MS. ARMIJO:  We believe this is Jencks.
25   And, as the Court has ordered us to do in other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    things, we will review it for Brady material, and if

 2    there is any Brady material, it will be disclosed to

 3    her.  But we'll do another review of it, Your Honor.

 4              THE COURT:  All right.  Does that satisfy

 5    that?

 6              MS. JOHNSON:  Yes, Your Honor.  May we have

 7    that within 14 days?

 8              THE COURT:  We've been using that.  Is that

 9    okay with you, Ms. Armijo?

10              MS. ARMIJO:  Yes, Your Honor.

11              THE COURT:  All right.  So we'll do that

12    review within 14 days.

13              MS. JOHNSON:  And, Your Honor, I think the

14    last item, because the Government has disclosed a lot

15    of the items that I had originally listed in the

16    motion to compel, is the -- we were provided with a

17    copy of the Valencia County Sheriff's Department's

18    report of the investigation of the incident.  But the

19    Government provided a redacted copy.  And we simply

20    are asking for --

21              THE COURT:  Do you have it?

22              MS. JOHNSON:  I don't, Your Honor.  But I

23    can get it.

24              THE COURT:  Why don't you want grab it, and

25    let me see how redacted it is.  Because I've not been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1585

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 41586

 1    requiring just wholesale redactions.  But let's see

 2    how much it's redacted.

 3              MS. JOHNSON:  Your Honor, counsel for the

 4    Government doesn't have it readily available.

 5    They've asked if I could put some of the stuff on the

 6    visualizer.

 7              THE COURT:  Okay.

 8              MS. JOHNSON:  So it's not heavily redacted.

 9    But I'm going to show you some of the portions that

10    are.  So it begins on Bates No. 5726 U.S. versus

11    DeLeon.  So, for example, in order for us to do our

12    due diligence and investigate the case, the

13    Government has redacted addresses, dates of birth,

14    Social Security numbers.  I don't like to rely on the

15    Government.  I like to do my own investigation of the

16    evidence that is provided, Your Honor.  And this is

17    fundamental.  This is key.

18              Tracking down some of these folks --

19    obviously, we know Mr. Rivera is in custody.

20    Ms. Brandy Rodriguez is here.  But, for example,

21    Mr. Gomez.  Mr. Gomez, his date of birth, his Social

22    Security number.  I suspect that he has a very

23    extensive criminal history.  And we have a right to

24    do our own investigation.

25              Also, on page 5750, the attachments, we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    don't -- some of these are redacted.  We don't know
 2    why they're redacted, whether or not these were
 3    provided.  And this is just -- the content -- looks
 4    like it's a table of contents for the supplementary
 5    report by the detective.
 6              THE COURT:  You think they're what?
 7              MS. JOHNSON:  This is the table of contents
 8    to the supplementary report by the detective.
 9    They're redacted here, so some of the content has
10    been redacted.  So I don't know what was removed,
11    why?  I think it's important for the defense to
12    know -- to have it an unredacted.  If they're
13    concerned about my client having an unredacted, we
14    can agree to have an unredacted copy just for
15    attorney and the investigators in the case.  Because
16    the key here is making sure that I do my due
17    diligence and investigate these allegations fully.
18              For example, here, Your Honor, something as
19    simple as -- this is page 5751 -- that deputies were
20    then dispatched to -- I think we have a right to know
21    where they were dispatched to, so that we could go
22    investigate the scene, talk to any potential
23    witnesses there, what they observed, what they heard.
24              So, again, this is just an example of here
25    on page 5752, the address, presumably, of where this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1587

1   allegedly took place, again was redacted.  So some

2   information that would assist the defense in doing

3   their due diligence and investigating these

4   allegations has been redacted, Your Honor.  So we're

5   asking that the Court order the Government to

6   disclose an unredacted copy of the supplementary

7   report.

8          THE COURT:  What would you think about

9   disclosing an unredacted one just for attorneys' eyes

10  only, so that if Ms. Johnson wants to try to make

11  sure she's got the right people in her investigation

12  she could have it?  Would you have any problem with

13  that?

14         MS. ARMIJO:  Well, the problem is, then

15  every single one of these persons is going to make

16  that request.  And while it may be easy for one

17  defendant with a certain amount of discovery -- and

18  may I see that discovery?  It does contain much of

19  what has been disclosed is.  I mean, look at this

20  one, for example.  I mean, clearly, address, date of

21  birth, Social Security number.  And the address is

22  obviously for purposes of safety issues, but also

23  personal information, and all of that.  And so, if

24  there is something specific -- I mean, she obviously

25  knows the address of where this occurred.  And if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1588

```
 1    there are certain addresses that she wants, we can
 2    work with her.  But I don't think we should get into
 3    the business of agreeing to wholesale unredacted
 4    copies.  And I'm referring to Bates stamp 5754.
 5    Again, it has information, because it's probably
 6    their dates of birth.  And so here's another one.  It
 7    says, "date of birth."  Everything else is on there.
 8    And so I can provide the copy.  It appears to be
 9    address, date of birth, Social Security numbers, and
10    addresses only that were redacted from this.  If
11    there is specific addresses that she wants, I don't
12    mind that separately.  But I don't think we should go
13    down the road of just redisclosing thousands and
14    thousands of pages, especially if they can get into
15    the wrong hands accidentally.
16            THE COURT:  Well, I'm not going to make any
17    blanket order on this, but this particular one, given
18    that it's a particular discrete incident, I'll order
19    the Government to produce an unredacted copy of that.
20    That will be for attorneys' eyes only.
21            MS. JOHNSON:  And my investigator, Your
22    Honor?
23            THE COURT:  Your investigator, but caution
24    your investigator not to share it with anyone, so
25    that you can make sure that you can link up people
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1589

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 45 5590

1    accurately on there.

2            MS. JOHNSON:  Thank you, Your Honor.

3            MS. ARMIJO:  And for the record, given that

4    she has specific -- can we get the Bates stamp

5    numbers of which ones she wants?

6            MS. JOHNSON:  It is the entire

7    supplementary report, Your Honor that was prepared by

8    the Valencia County Sheriff's Department.  And that

9    specifically begins at page -- if I may just have a

10   moment -- well, this whole section, Your Honor, just

11   begins at 5726, and it goes through 5798.  It's for

12   this incident.  And those are all the requests that I

13   have, Your Honor, at this time.

14           THE COURT:  All right.  Thank you, Ms.

15   Johnson.

16           All right.  Give me a second here to get my

17   documents organized.

18           All right.  Mr. Chambers?  Mr. Orquiz?  Mr.

19   Benjamin?

20           MR. BENJAMIN:  Your Honor, if I may.

21           THE COURT:  Mr. Benjamin.

22           MR. BENJAMIN:  We joined that motion, and

23   we just would request, for purposes on the record,

24   that we be included in the disclosure for the report

25   and the other items that were requested.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1590

```
 1              THE COURT:  Remind me of the circumstances
 2   of why you would need that unredacted report.
 3   Refresh my memory about the allegations against --
 4              MR. BENJAMIN:  Your Honor, I represent Joe
 5   Gallegos, who is the one that -- the Government is
 6   alleging that the actions were done at his behest,
 7   and in order to quote/unquote tamper with that
 8   witness.  So all those allegations --
 9              THE COURT:  He's the one that ordered it,
10   right?
11              MR. BENJAMIN:  Correct, Your Honor.  But
12   it's the same request, essentially, to investigate
13   and be able to --
14              THE COURT:  I'm going to deny that request
15   to you.
16              MR. BENJAMIN:  Understood, Your Honor.
17              THE COURT:  All right.
18              MS. ARELLANES:  Your Honor, may I address
19   the Court?
20              THE COURT:  You may.
21              MS. ARELLANES:  Your Honor, we joined in
22   that motion.  Although a lot of that information is
23   in the STIU files that we have, like the date of
24   birth and Social Security number, but I would like to
25   have a disclosure of that as well, as it pertains to
```

SANTA FE OFFICE                                                  MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    Shauna Gutierrez.
 2              THE COURT:  Refresh my memory as to Ms.
 3    Gutierrez' involvement in that.  Was she present?
 4              MS. ARELLANES:  She was not present at the
 5    time of the assault.  However, according to what the
 6    Government has alleged, and what they said this
 7    morning, is that Shauna told the group of three
 8    people that went over to assault JG, Jose Gomez,
 9    where he was staying at.  And so I have received the
10    discovery.  I have gone over the Valencia County
11    Sheriff's Department report.  And, you know, it does
12    pertain to her.
13              THE COURT:  Well, it pertains to her, but
14    again, she wasn't there.  So I'm going to deny the
15    request.
16              MS. ARELLANES:  Okay.  Thank you, Judge.
17              THE COURT:  All right.  Mr. Orquiz, it's
18    your motion, or Mr. Chambers?  Okay, Mr. Chambers.
19    There you are.  All right.
20              MR. CHAMBERS:  Good morning, Your Honor.
21              THE COURT:  Mr. Chambers, how are you
22    today?
23              MR. CHAMBERS:  I'm well, thank you.
24              We're going to make this really easy for
25    you, Your Honor.  I've been in discussions with Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1592

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 48

1    Beck, and there were three items that we were

2    requesting.

3           The first was an internal affairs

4    investigation.  Mr. Beck has advised me that they

5    have reached out to the New Mexico Department of

6    Corrections to try to get that internal affairs

7    investigation.  And if they are able to obtain it,

8    they will produce it.

9           The second item had to do with STIU files

10   for some alternate suspects.  And Mr. Beck has

11   advised me that those will be produced within 14

12   days.And the last item was some information that we

13   needed that was relevant to DNA testing.  And Mr.

14   Beck informs me this morning that they contacted the

15   lab technician who was responsible for the DNA

16   testing, and attempted to get the information that I

17   was requesting.  Apparently, the lab technician has

18   sent the documentation that was responsive to our

19   request to the United States Attorney, and the United

20   States Attorney will produce that.

21           THE COURT:  These are state lab

22   technicians?

23           MR. CHAMBERS:  Yes.  Mr. Beck was not sure

24   if it was going to answer all the questions I had

25   about DNA, but they would give us what they had.  So,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1593

```
 1    I guess, where that leaves us is -- and Mr. Beck
 2    thought all of this could be accomplished within 14
 3    days.  I believe I'm accurately stating the
 4    Government's position, which makes me very nervous to
 5    be stating the Government's position, but if that all
 6    is accomplished within 14 days, we're done.  And if
 7    the production that we receive is somehow deficient
 8    or lacking, then I'll come back and see you.
 9              THE COURT:  All right.  Is that all --
10              MR. BECK:  That's all accurate, Your Honor.
11              THE COURT:  That's correctly stated?
12              MR. BECK:  Right.
13              THE COURT:  Anything else you need, Mr.
14    Chambers?
15              MR. CHAMBERS:  Yes, severance.  No.
16              THE COURT:  Severance.  Okay.  That keeps
17    coming back up, doesn't it?
18              All right.  Ms. Harbour-Valdez, did you
19    have something on that motion?
20              MS. HARBOUR-VALDEZ:  Yes, Your Honor.
21              For the record, we joined that motion on
22    the behalf of Edward Troup, and we spoke with the
23    Government this morning, and we'd just like to be
24    included in those disclosures.
25              THE COURT:  All right.  Are you agreeable
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1594

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50

1    to that, Mr. Beck?

2              MR. BECK:  Yes, Your Honor.

3              THE COURT:  All right.  So included.  All

4    right.  Give me a second here to -- all right.

5              Mr. Benjamin, I think this is your motion

6    on the motion to compel Government disclosure of

7    Grand Jury transcripts.  If you wish to --

8              MR. SINDEL:  He stepped out for a moment.

9              THE COURT:  Well, then he just loses,

10   right?

11             MR. SINDEL:  He wanted to --

12             THE COURT:  Do you want to wait, or do you

13   want to take it up?

14             MR. SINDEL:  I'd prefer to wait.

15             THE COURT:  All right.  So we're now

16   getting into the motions that were put on last night.

17   Ms. Wild has sent out the notice so that these are

18   noticed up now.  So why don't we take up the first

19   one, which is 893.  So this is Mr. Alonso's motion to

20   sever Count 3, and to sever the trials of Mr. Troup

21   and Mr. Alonso.

22             So, Mr. Chambers, if you want to argue

23   those motions.

24             MR. CHAMBERS:  Yes, Your Honor.  Thank you.

25             THE COURT:  Because these are coming in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1595

```
 1    kind of late for me, I did the best I could last

 2    night, this morning, trying to read these new ones

 3    that are being placed on.  But you may have to

 4    educate me more than normal, because I'm a little

 5    less prepared for these because we're doing them so

 6    quickly.

 7              MR. CHAMBERS:  Well, I'm happy to do that.

 8              And, Your Honor, first of all, I want to

 9    address why this motion was not originally -- we did

10    not request it originally to be heard this week.  And

11    it wasn't because we were trying to avoid it or

12    trying to put it off.  But as we looked at the

13    calendar, and we looked at the motions that still

14    needed to be litigated, and based upon the time that

15    was invested on the motions for disclosure of the

16    confidential informants in February, it was our view

17    that litigating the CI motions was probably going to

18    take almost three days.  And we thought it more

19    important to do those CI motions than the severance

20    motions.  It was just a judgment that we made.  It

21    wasn't that we were trying to avoid it.  But when the

22    CI motions went away so quickly yesterday, we

23    discovered we had some time.  So we asked this to be

24    moved on.

25              And I know that that was Mr. Burke's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1596

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 52597

1  position also with regard to his motions for

2  severance.  It wasn't that Mr. Troup was trying to

3  avoid litigating the severance motions, it was just

4  that we thought time would be taken up with the CI

5  motions.

6          Your Honor, I heard you yesterday.  And I

7  try to pay attention when you talk and when you

8  write.  And, you know, the severance motion has

9  largely been decided, it appears.  And I understand

10 that you even said that some dead horses deserve to

11 be beat.  And this is one that does, but I'm not

12 going to do it.  I think that the severance issue is

13 going to continue to come up.  But I'm not going to

14 waste your time today arguing things that you've

15 already read and thought about and ruled on.  But

16 there is a portion of the severance motion that has

17 not been specifically addressed, and I would like to

18 talk about it just briefly.  And it may be that the

19 argument I'm going to make is something that you

20 intend to address at a later time.  It has to do with

21 Bruton.  I heard Your Honor yesterday say that, in

22 your experience, that most Bruton issues can be cured

23 with some scissors and Wite-Out.

24          THE COURT:  Well, let me say it a little

25 bit differently.  I have had success -- I can't speak

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 53

```
 1   for the entire body of law whether every Bruton
 2   problem can be solved that way.  But you just work
 3   hard at it.
 4           MR. CHAMBERS:  Right.
 5           THE COURT:  And generally, my experience
 6   has been that I've been able to solve the problem.
 7   If you can't solve it, the evidence doesn't come in.
 8   I mean, it's real clear.
 9           MR. CHAMBERS:  Yeah.
10           THE COURT:  That's the reason I warned the
11   Government that, you know, they've got to start
12   staring at this stuff.  This is pretty serious.  My
13   experience has been, though, that we usually can
14   massage the thing.  But I can't speak for the body of
15   Bruton issues out there.
16           MR. CHAMBERS:  Well, my experience is
17   similar to Your Honor's.  I think that -- I don't
18   want to put a percentage on it, but many Bruton
19   issues can be resolved with proper redactions.  And
20   the Government even acknowledges as much in their
21   response.It's a little more dicey in this case than
22   in some other cases.  Frequently, the Bruton issue
23   involves, perhaps, a written statement of a
24   co-defendant, which can be edited, consistent with
25   Richardson versus Martin, and Gray, as long as you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    follow the rules, it can be edited properly.  It's a

2    little trickier, though, when you're dealing here

3    with informants, confidential informants, who will

4    probably just be testifying as to what someone told

5    them.  They are -- you are -- they're relying on the

6    informant to make the necessary redaction.  And

7    that's scary.

8            THE COURT:  Well, we have to be extremely

9    careful, yeah.  Yeah, I mean, that's --

10           MR. CHAMBERS:  But, you know, the fact that

11   these Bruton issues arise --

12           THE COURT:  I guess what I tend to do in

13   those situations is, you just have to have the

14   prosecutor lead the witness.  And everybody has got

15   to just live with that; say, Is this what was said?

16   You know, to get it out.  And they have to get with

17   their witness and say:  There is going to be a

18   segment here where the answers are yes, no.  Do

19   not -- don't free-wheel here.

20           MR. CHAMBERS:  Right.  Well, the fact that

21   these Bruton issues arise in the context of

22   statements made to Government informants leads me,

23   then, to another part of the discussion.  And that is

24   the Government takes the position the statements made

25   to Government informants are beyond the reach of

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                          e-mail: info@litsupport.com

DNM 1599

```
 1    Bruton.  And they take the position that Bruton only
 2    applies to statements made to law enforcement
 3    officers.
 4             THE COURT:  I'm not sure I see that
 5    distinction.  So maybe I can be educated on it, but I
 6    have not thought Bruton drew that distinction.
 7    That's a Crawford-type issue.  That's not really a
 8    Bruton-type issue.  So I'm not sure I draw that
 9    distinction.
10             MR. CHAMBERS:  Well, you're very wise then.
11             You're right, Bruton doesn't draw that
12    distinction.  Bruton makes no distinction whatsoever
13    between statements to law enforcement officers or to
14    civilians, and it also makes no distinction between
15    statements made --
16             THE COURT:  Maybe what they're getting
17    into -- and I thought about this earlier -- is there
18    may be a hearsay problem with, you know, the
19    statements in the first place.  But that's an initial
20    problem, rather than a Bruton problem.  You've always
21    got a hearsay problem when you've got a Bruton
22    problem.  But those are two different issues.
23             MR. CHAMBERS:  I agree.
24             THE COURT:  So maybe what they're
25    anticipating and they're arguing the Bruton context,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1600

```
 1    is they're arguing as to why it overcomes the hearsay
 2    statement.  And I hadn't thought one through.  But
 3    that may be what they're anticipating, that it
 4    doesn't have a Crawford issue.
 5              MR. CHAMBERS:  Well, you know, the whole
 6    issue of the continued --
 7              THE COURT:  I mean, I guess that's one of
 8    the things we're going to have to determine is
 9    whether these cooperators, these statements that the
10    cooperators are picking up, are those Crawford
11    problems, hearsay problems?  Those are two different
12    issues.
13              MR. CHAMBERS:  Yes.
14              THE COURT:  But, you know, are these
15    cooperators so enmeshed in law enforcement's work
16    that they were gathering statements that could be
17    anticipated as being brought to trial and to the
18    attention of the Court.
19              MR. CHAMBERS:  Well, Your Honor is
20    absolutely correct that Crawford created, in some
21    people's minds, issues as to the continued vitality
22    of Bruton.  And I have -- I wrote a response about
23    that, and discussed at length the history of Bruton
24    and the history of Crawford, and the history of
25    confrontation going back to the first century.  But,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1601

1   you know, Crawford -- the Government takes the view

2   that Crawford essentially gutted Bruton.  And that

3   the only thing that Bruton is concerned with are

4   formal statements to law enforcement.  And that's

5   based upon the reading of Crawford.

6          But there are a couple of important things

7   to note about Crawford and Bruton.  First of all,

8   Crawford was certainly a Sixth Amendment

9   confrontation clause case.  But that's not all it

10  was.  Crawford does not rest solely on the

11  confrontation clause.  It also has due process.  And

12  the Bruton court specifically relied on Jackson v.

13  Denno.  And Jackson v. Denno was a due process case.

14         So the constitutional underpinnings of

15  Bruton are not solely the confrontation clause, or is

16  not solely the confrontation clause.  It's also due

17  process.  So, to the extent that Crawford -- which is

18  a confrontation clause -- impacted the foundations of

19  Bruton, it didn't touch the due process foundations

20  of Bruton.

21         Furthermore, Your Honor, Your Honor

22  accurately observed that Bruton doesn't draw a

23  distinction between statements to law enforcement or

24  civilians, or statements made during formal

25  interviews or during casual conversations.  It simply

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1602

1    doesn't draw that distinction.  And what's important

2    is to remember the history of Bruton -- Bruton was

3    decided two years after Rule 14 was amended.  And

4    I've quoted the advisory committee notes to Rule 14,

5    which also draws no distinction between statements to

6    law enforcement and statements to anybody else.

7    There is no distinctions drawn in Rule 14.

8           I will tell Your Honor I was troubled by

9    one aspect of the Government's response.  And that

10   was on page 11, where they say -- and I quote,

11   "However, if a co-defendant's statements are made

12   unwittingly to a Government informant, those

13   statements are considered nontestimonial, and are

14   accordingly beyond the scope of Bruton."  And then

15   they cite United States v. Smalls, and they say,

16   "Quoting Davis versus Washington."

17          Your Honor, that -- I want to be as

18   charitable as I can here, but that's simply not the

19   truth.  Davis versus Washington says no such thing.

20   Davis versus Washington -- the only cite to Davis

21   versus Washington is in Justice Thomas' dissent.  It

22   doesn't say what the Government says it is citing it

23   for.  And maybe it was just an error.  But that's not

24   an accurate -- that is not an accurate statement of

25   the law.  And it made me mad.  I've calmed down now,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1603

 1    though.  I got it off my chest so I feel better.

 2              And the other thing about -- you know,

 3    Davis versus Washington specifically cites cases that

 4    deal with statements to non-law enforcement.  And,

 5    indeed, the United States Supreme Court, as recently

 6    as last year, in a case called Ohio versus --

 7    somebody -- it's in my papers.  It's Ohio v. Clark.

 8    The Court there specifically said that "at least some

 9    statements made to individuals who are not law

10    enforcement could come within the confrontation

11    clause."

12              So here's the problem with my argument,

13    Your Honor, and it's one that maybe you can fix soon.

14    It's the Tenth Circuit.  You know, this opinion of

15    theirs in Smalls, it supports the Government's

16    argument.  But I have argued why I think Smalls is

17    wrongly decided.  But, of course, I understand that

18    you're obliged to follow it, even if it's wrong.

19    But Smalls leaves undisturbed Rule 14 and the Court's

20    discretion under Rule 14 to take appropriate remedial

21    steps.

22              And I think it's -- when you consider the

23    Government's argument, and indeed the Tenth Circuit's

24    interpretation of Bruton and Crawford, the results of

25    adopting that particular interpretation are stunning.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 60605

```
 1   If you -- if Smalls is the law, and if the Tenth
 2   Circuit's reading of Crawford and Bruton is correct,
 3   then it is possible for a defendant to be convicted
 4   entirely through unconfronted hearsay.  It's possible
 5   under the Government's argument.  I'll give you an
 6   example, Your Honor.  Imagine this:  Imagine that
 7   three people get arrested for murder --
 8           THE COURT:  Well, before you run it through
 9   the Crawford, though, and even an expanded Crawford
10   and Bruton, you still have to go through, first, the
11   hurdle of the hearsay, right?  I mean, if it's
12   blocked by the hearsay rules, it's not coming in.
13           MR. CHAMBERS:  That's correct.
14           THE COURT:  You've got to run it through
15   that first.  So when you say that they would be
16   convicted entirely on hearsay, well, that's not
17   possible, right?
18           MR. CHAMBERS:  Oh, it is under Smalls.
19           THE COURT:  Well, but it's dealing with the
20   Crawford problem, not the hearsay problem, right?
21           MR. CHAMBERS:  Smalls said that a statement
22   made by a co-defendant to an informant is admissible
23   against a co-defendant because it's nontestimonial.
24   And imagine what that means, Your Honor.  Just --
25           THE COURT:  But it has to satisfy some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1605

 1    hearsay exception or be nonhearsay before we even get

 2    to the constitutional issue.

 3              MR. CHAMBERS:  Well, the hearsay exception

 4    that would be relied upon is statement against penal

 5    interests, which would apply to the declarant, but

 6    not the co-defendant.

 7              THE COURT:  Right.

 8              MR. CHAMBERS:  But Smalls doesn't say that.

 9    Smalls says it's coming in against everybody.  And

10    that's frightening.  Because you could be -- a

11    defendant could be convicted based entirely on

12    unconfronted hearsay.  And here's how, Your Honor.

13    You've got three guys who get arrested for murder.

14    And they get placed in separate cells.  And they all

15    talk to their cellmate.  And during those

16    conversations, they implicate a fourth person.  Under

17    Smalls, and under the Government's interpretation of

18    Crawford and Bruton, that fourth person could be

19    convicted based on the testimony of the three

20    cellmates, based on the testimony of people who know

21    nothing at all about the case except what a

22    co-defendant told them.  That fourth person could be

23    convicted without any ability to cross-examine a

24    witness who has personal knowledge of the defendant's

25    own conduct.  That's what Smalls says.  And that is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1606

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62
62-2607

```
 1    scary.  That -- but that's what Smalls says, and

 2    that's what the Government is arguing.

 3            And we're going to have to rustle with

 4    these Bruton issues at some point.  And maybe I'm

 5    jumping the gun here.

 6            THE COURT:  Well, do you think that the

 7    briefing that is supplied is robust enough for me to

 8    make those rulings at this point?  Or is it just -- I

 9    mean, my impression was that it was more general, and

10    that everybody was flagging this as a reason why I

11    should sever.  But it wasn't robust in the sense,

12    like I would see with a motion in limine, where I

13    really have got to sit down and decide whether

14    evidence is coming in or not.

15            What's your thoughts about the state of the

16    record?

17            MR. CHAMBERS:  Well, I have attached as

18    exhibits to the original motion, which was 893, the

19    reports that deal with the statements that I believe

20    implicate Bruton.  And I don't presume to tell Your

21    Honor what sort of evidence you feel comfortable

22    ruling on.  If Your Honor believes that you need to

23    actually hear from the informants to testify what the

24    declarant said, then I suppose we can do that.

25            THE COURT:  No, I don't think that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1607

```
 1    probably necessary, that it has to be that.  But I do
 2    have to exactly know -- I've got to know what the
 3    statements are precisely.  There can't be any fudging
 4    on it.  Because, like I said, if we're cutting and
 5    pasting and redacting and leading, it's got to be
 6    pinpoint.  And then I've got to know what the
 7    Government is relying on with the two-step process,
 8    and maybe even three-step here, to get the evidence
 9    in.  So I'm not sure I need the witness, as long as
10    there is precision about the statement that's coming
11    in.  Does that make sense?
12              MR. CHAMBERS:  Yes, absolutely.  And I have
13    provided --
14              THE COURT:  I think I got that.
15              MR. CHAMBERS:  If you rule in my favor, you
16    got what you need.
17              THE COURT:  You're wanting a severance
18    here.  I thought we were talking about motions in
19    limine.
20              MR. CHAMBERS:  No.  I told you everything I
21    know about it.
22              THE COURT:  Help me out with the
23    Government's response.  You think it's robust enough
24    for me to make the hearsay Crawford and the Bruton
25    issue?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1608

```
 1              MR. CHAMBERS:  I think it's robustly wrong.
 2    But I think that their position is not unclear.
 3              THE COURT:  But you think it's full?
 4              MR. CHAMBERS:  Yes.
 5              THE COURT:  All right.  What else,
 6    Mr. Chambers?
 7              MR. CHAMBERS:  That's it.  Thank you.
 8              THE COURT:  All right.  Thank you,
 9    Mr. Chambers.
10              I know this is Mr. Chambers' motion to
11    sever.  Any other defendant have anything they want
12    to say on this issue?
13              All right, Mr. Castle.  You like talking
14    about Bruton and Crawford?  It juices you up?
15              MR. CASTLE:  Just a couple of comments.
16              THE COURT:  Mr. Castle.
17              MR. CASTLE:  When Mr. Chambers was talking,
18    he talked about the concept that there was perhaps a
19    due process layer to the analysis the Court needs to
20    undertake.  And if we read Bruton, and we read Lee
21    versus Illinois, and Lilly, at the basis of all of
22    those decisions -- even though they're in
23    confrontation clause terms -- they're really talking
24    about the reliability and the fairness involved in
25    the introduction of certain categories of statements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1609

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 65 6510

```
 1    And in Lee and in Lilly, and prior to Crawford, these

 2    statements were historically considered unreliable;

 3    that is, statements by informants in jailhouses.

 4            Now, when the Smalls decision was

 5    undertaken, it was in 2000, I believe.  Since 2000,

 6    the United States Supreme Court has actually veered

 7    in its decision, and suggested perhaps there is a due

 8    process concept here that we need to look at.  I

 9    would point to the Melendez-Diaz versus Massachusetts

10    case, in 2009, 129 Supreme Court 2527.  And in that

11    decision the Supreme Court stated that the Sixth

12    Amendment contemplates two classes of witnesses:

13    Those against the defendant and those in favor.  The

14    prosecution must produce the former.  The defendant

15    may call the latter.  There is not a third category

16    of witnesses helpful to the prosecution, but somehow

17    immune from confrontation.  So the Supreme Court is

18    saying that what the prosecution's position that

19    there is a category of witnesses against the

20    defendant that do not need to be confronted,

21    Melendez-Diaz rejected that.

22            It's interesting that they also quoted --

23    we're talking about Thomas' -- it's actually

24    concurrence in part and dissent in part in the Davis

25    decision -- but his concurrence specifically stated
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1610

1    that "the confrontation clause also reaches and

2    prohibits prosecutorial use of technically informal

3    statements when used by the prosecution to evade the

4    confrontation clause."

5         Now, what I'm suggesting -- and obviously,

6    I'm not arguing Mr. Chambers' motion -- but I think

7    since -- what's on the table here, essentially, is

8    some ideas about whether -- how the Court should deal

9    with what were traditionally considered Bruton

10   statements, is that the Court would need to

11   undertake, not just a hearsay analysis and a strict

12   confrontation clause analysis, but also a due process

13   analysis.  And there is analogous situations where

14   the Court does that:  Voluntariness of statements,

15   identifications made at a crime scene, the

16   admissibility of expert testimony in areas that have

17   not been -- that are novel.  In all these instances,

18   the Court undertakes its due process role to make

19   sure that unreliable evidence doesn't come before the

20   jury.

21        And so all I'm suggesting here is that the

22   Supreme Court seems to be moving this direction, away

23   from the Smalls' strict analysis that was probably,

24   because it was close in time after Crawford, and

25   that -- and I don't think Smalls -- I haven't read it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in a while -- says that there isn't a due process

 2    layer that needs be reviewed.

 3           And so I think the suggestion might have

 4    been by Mr. Chambers that the Court might need to

 5    take a look at these statements is a good one,

 6    because perhaps within the statements the Court can

 7    see its reliability.

 8           Now, I understand that sounds a lot like

 9    Ohio versus Roberts, the old standard.  But there

10    seems to be retraction or a movement back away from

11    the simple concept:  Is it testimonial or not?  And I

12    can't read Melendez-Diaz in any other way than when

13    they say that the confrontation right applies to

14    statements against a defendant.

15           THE COURT:  All right.  Thank you, Mr.

16    Castle.

17           MR. CASTLE:  Did the Court need a pin cite

18    on that?

19           THE COURT:  Yeah, go ahead and give it.

20           MR. CASTLE:  I have the Supreme Court

21    Reporter, 129 Supreme Court, at page 2534.

22           THE COURT:  Thank you, Mr. Castle.

23           Anyone else want to speak on the motion to

24    sever?  Ms. Johnson?

25           MS. JOHNSON:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1612

1          THE COURT:  All right.  You were just

2     getting up.

3          All right.  Who is tackling these from the

4     Government's side?  Mr. Castellano?

5          MR. CASTELLANO:  Yes, sir.  Your Honor,

6     Mr. Chambers is upset that we're relying on the

7     Smalls case.  But the Smalls case is the law of the

8     circuit, and he acknowledges as much in his reply to

9     our response.  So the real question is whether or not

10    the Court is willing to overturn Tenth Circuit

11    precedent --

12         THE COURT:  I'm not.

13         MR. CASTELLANO:  -- by not following

14    Smalls.

15         THE COURT:  I'm not.  I'll faithfully

16    follow Tenth Circuit precedent.  I would like to

17    know, though -- I haven't thought this through -- do

18    you see anything that -- in the Supreme Court law

19    since Smalls, because it's getting a little bit down

20    the pike -- that would call into question what the

21    Tenth Circuit did in Smalls?

22         MR. CASTELLANO:  I haven't, Your Honor.

23    I'll do another look, in case we need do supplemental

24    briefing, but --

25         THE COURT:  Because when the Tenth Circuit



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   first came out with their interpretation of Crawford,
 2   they didn't quite nail it, and they had to backtrack
 3   from that with subsequent Tenth Circuit opinions, is
 4   my impression.
 5            MR. CASTELLANO:  Right.  Smalls is a 2010
 6   case, so it's not very recent, but it's not at all
 7   old.  And what it says is -- well, let's focus on the
 8   statements at issue here for starters.
 9            Okay.  So this is page 11 of our response.
10   And it states that Troup, "Defendant Troup confessed
11   to being" -- when I say confessed, it's not to law
12   enforcement, it's to another inmate -- "Troup
13   confessed to being a part of two murders in which two
14   people were strangled to death at the Southern New
15   Mexico Correctional Facility at Las Cruces, New
16   Mexico.  Troup stated that during one of the murders
17   he held FS's legs while the defendant" -- that's
18   Mr. Alonso -- "strangled him to death with a
19   drawstring from a laundry bag."
20            The next is, "Troup bragged about being a
21   part of the murder of FS as well, and told the
22   confidential informant that defendant, also from
23   Roswell, was ordered to kill FS."
24            The other statement was, "In 2007, Edward
25   Troup admitted to the CHS that he and defendant had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1614

70

```
1    killed FS."
2              So you can see why it's of concern to
3    Mr. Alonso.  Because when you make statements to
4    someone in prison like this, it's nontestimonial,
5    meaning you don't expect this statement to show up in
6    court some day, like you would a confession to law
7    enforcement.
8              THE COURT:  Help me out a little bit with
9    the people he's talking to.  These are not people
10   that are mic'd up, wired, being paid, anything like
11   that?
12             MR. CASTELLANO:  That's correct.  At the
13   time, they were not cooperating with anybody.  It was
14   talk amongst gang members.  So at that time they had
15   no incentives, they were not being paid, nothing of
16   the sort.  So, once again, there was no expectation
17   that these admissions would come in to court someday.
18   So, once they're nontestimonial, they're outside of
19   Crawford.  So we're not talking about Crawford.
20   We're not even talking about Bruton.
21             Now, we argue --
22             THE COURT:  That's the leap I'm struggling
23   with.  Tell me why we're not talking about Bruton.
24             MR. CASTELLANO:  Because Bruton refers to
25   "the right to the confrontation where accomplice's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1615

1    confession was made to an government agent, and

2    introduced at a joint trial."  So that is a

3    testimonial.

4            THE COURT:  That's certainly the factual

5    situation of Bruton, but can you limit the language

6    of Bruton to that?

7            MR. CASTELLANO:  Not to our facts.  Because

8    this is a statement against interests that falls

9    under Rule 804.  It's an exception to hearsay.

10   Statements against interests are inherently reliable

11   traditionally because those are statements you don't

12   make unless they're believed to be true.  Well, they

13   fall outside of hearsay.  They fall outside of

14   Bruton, because once again, we're not talking about

15   testimonial statements here.  We're talking about

16   nontestimonial.

17           THE COURT:  Maybe I'm losing something.

18   But do we even get into it being a statement against

19   interests if it's a statement of the defendant?

20           MR. CASTELLANO:  Well, Smalls --

21           THE COURT:  So the hearsay statement is

22   easily satisfied if you have the witness who heard it

23   of the defendant on the stand, right?

24           MR. CASTELLANO:  Right.  The witness who --

25           THE COURT:  But that doesn't get us -- that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1616

1    doesn't solve the Bruton problem, right?

2              MR. CASTELLANO:  I don't think we're in

3    Bruton, Your Honor.  Because those are testimonial

4    statements, traditionally testimonial statements,

5    because they're given to law enforcement.  And once

6    we give statements to law enforcement, we expect them

7    to show up in court against you.  So it's testimonial

8    in that way.

9              Under these circumstances, Smalls tells us

10   that if I murder somebody with Ms. Armijo, and I tell

11   Mr. Beck about it, the statement comes in against

12   both myself and Ms. Armijo.  That's what Smalls tells

13   us.  That is the law of the circuit as it stands now.

14             And as I stated earlier, in his response,

15   Mr. Chambers --

16             THE COURT:  Well, you may be right.  I'm

17   struggling with squaring that with Bruton, though.

18   But you may be right as far as Smalls.

19             MR. CASTELLANO:  In his reply, he says he

20   understands that Smalls operates as binding precedent

21   upon the Court.  So what he's asking the Court is to

22   operate around Smalls and around Tenth Circuit

23   precedent.  We're merely asking the Court to follow

24   that precedent.

25             And in the Smalls case, what happened was,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1617

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73

 1    it was a jail setting.  One -- Cook and Smalls and
 2    another one --
 3            THE COURT:  I tell you what, I want to hear
 4    this, but I've got to give Ms. Bean a break.
 5            MR. CASTELLANO:  Sure, Your Honor.
 6            THE COURT:  Why don't we take our morning
 7    break, 15 minutes.  Then we'll come back in.  I want
 8    to be educated on this.
 9            (The Court stood in recess from 10:34 to
10    11:05.)
11            THE COURT:  All right.  Mr. Castellano.
12            Let me -- come on up, but let me make some
13    comments about this distinction -- Mr. Beck has been
14    raising about the timing.  I did have a chance to
15    review -- it was the Johnson case, right, Johnson,
16    which is the unpublished opinion that I think you
17    brought to my attention.  I had a chance to consider
18    it during the lunch hour.  That's an unpublished
19    opinion by the Tenth Circuit.  It is an appeal which
20    is trying to avoid the waiver, the appeal waiver.
21    And they're saying that they didn't get Giglio
22    material.  All I think that stands for is that you
23    don't have to have everything before you plea.  I
24    think that was a 2010 case.
25            I think the Supreme Court has now come out



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1618

1   with a subsequent case since then, that says the same

2   thing as far as Brady.  But that's pleas.  We're

3   getting ready for trial.  So I think that's a

4   different situation, so it's not persuasive to me.

5        I forget the judge, but he was a very good

6   district judge that the Tenth Circuit selected to try

7   the McVeigh case, when they recused all the judges in

8   Oklahoma.  And he has an opinion in the McVeigh case

9   that says the timing for Giglio and Brady should be

10  the same.  I think his reasoning is persuasive.  You

11  can certainly find district court cases that delay or

12  circuits that have affirmed the delay of Giglio and

13  Brady material.  And, you know, depending upon --

14  probably a case this large, we're going to have some

15  stuff pop up later on, so I'll have to deal with that

16  one issue at a time.

17       So I don't think it maybe raises

18  constitutional dimensions, but do I think from a case

19  management standpoint, we're now within 60 days of

20  trial, I feel pretty comfortable putting the Brady

21  and the Giglio disclosures on the same track.

22       MR. BECK:  I will say, Your Honor, that I

23  have found in the last while a plethora of those

24  district court decisions that disagree, just like

25  you're saying.  I think the Tenth Circuit's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1619

```
 1   decision -- I was just looking over it -- in Ohiri
 2   supports that as well.
 3            THE COURT:  What is it?
 4            MR. BECK:  I will say this Court has
 5   said -- and it followed Your Honor's citations to
 6   Johnson, and sort of the legal regarding section.  I
 7   will say that this Court has said a number of times:
 8   There is no obligation to produce Giglio information
 9   before a suppression hearing.  And I would remind the
10   Court that there are still upcoming deadlines for
11   motions to suppress in all of these trials.  So we
12   haven't reached the deadlines to file motions to
13   suppress, let alone to have hearings on motions to
14   suppress.And so where Your Honor has said that there
15   is no obligation to produce Giglio, impeachment
16   information, as opposed to Brady, exculpatory
17   information, before a hearing on a motion to
18   suppress, I think that supports delaying the Giglio
19   production at this point.
20            THE COURT:  I'd be glad to look at these
21   opinions one at a time.  But I will bet you that they
22   are circumstances in which I'm not doing what I'm
23   doing here.  They are, instead, situations where
24   people are trying to do discovery for the suppression
25   hearing.  And I'm making some issue there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1620

```
 1              Here, I am making rulings getting ready for

 2   trial.  If we were just sitting here, and I had Mr.

 3   Benjamin wanting evidence for a suppression hearing,

 4   I might be saying, you know, No, you don't get that

 5   just for a suppression hearing.  But here, we're

 6   getting ready for trial.  So I think I've got to -- I

 7   think I've got to -- I think what I'm doing is

 8   consistent with what I've said in the past.

 9              But if you want to present me with some

10   cases and say this is not what I've done in the past,

11   I'll be glad to look at them.  So far, I've not been

12   able to see an inconsistency in what I'm doing today

13   and what I've done in the past.  But I certainly

14   don't mind being educated on it.

15              All right.  Mr. Castellano, if you want to

16   educate me on the Smalls case.  Looking at it during

17   the break, boy, I'm having trouble squaring that with

18   Bruton.

19              MR. CASTELLANO:  And I think I may be able

20   to explain that from Smalls here in a moment.  I'll

21   tell you first about Smalls.  So Smalls involved

22   three defendants:  Cook, Smalls, and Melgar-Diaz in

23   the Dona Ana County Detention Center.  There was

24   gentleman named Gantz, who became known to them as a

25   cooperator with the Government.  The three, Cook,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1621

 1    Smalls, and Melgar-Diaz murdered Gantz in the jail.

 2    Subsequent to that, before it was discovered, Cook

 3    made admissions to an informant -- a person not known

 4    to him as an informant, and I'm not sure was even

 5    cooperating with the Government at the time -- until

 6    the admissions were taken.  So Cook made admissions

 7    to the informant.  The informant then informed law

 8    enforcement of the situation.  They eventually went

 9    back with a recorder and the informant took

10    additional statements from Mr. Cook.

11              And in Smalls, what happened was the

12    statements all became admissible against Cook,

13    Smalls, and Melgar-Diaz, when Cook told the informant

14    that he had murdered Gantz with the other two

15    gentlemen.  And which is a similar situation here.

16              So regarding what you were asking about,

17    part of what's in the Smalls case says the text of

18    the confrontation clause reflects its focus on the

19    testimonial hearsay.  It applies to witnesses against

20    the accused.  In other words, those who bear

21    testimony," citing to Webster's American Dictionary.

22    "Testimony, in turn, is typically a solemn

23    declaration or affirmation made for the purpose of

24    establishing or proving some fact.  An accuser who

25    makes a formal statement to government officers bears

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1622

 1    testimony in a sense that a person who makes a casual

 2    remark to an acquaintance does not."

 3           The other thing I want to point out to the

 4    Court is there is some question about our briefing in

 5    our discussion of Davis v. Washington.  So I found it

 6    from the opinion itself.  And in there it says,

 7    "Because Cook's statement is nontestimonial,

 8    regardless of which the foregoing definitions we

 9    apply, in Davis, the court expressed the view that

10    statements made unwittingly to a government informant

11    or statements from one prisoner to another are

12    clearly nontestimonial," citing to Davis, which is

13    what we cited in our brief.  So we didn't say Davis

14    said that.  The Smalls-Cook said that Davis said

15    that.  So that's going back a ways.

16           THE COURT:  That is Smalls that you're

17    putting up here?

18           MR. CASTELLANO:  Yes, that's Smalls.  And

19    because I just pulled it off the internet, I don't

20    have page cites, unfortunately, Your Honor.  But that

21    is the Smalls case, and that is what's reflected in

22    our brief.  So once again, we didn't say that.  The

23    Smalls court said that.

24           THE COURT:  Who wrote Smalls, and who was

25    the panel on Smalls?

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1           MR. CASTELLANO:  Let me see if I can find

2    it.

3           So while I'm finding that, the difference

4    here is that Bruton involved testimonial statements,

5    and therefore, the confrontation clause.  Smalls

6    involves nontestimonial statements that fall outside

7    of the confrontation clause.  And because it's a

8    statement against interests, it also falls outside of

9    hearsay.  So that's one of the distinctions.

10          The panel in that case, Your Honor, were

11   Judges Kelly, Baldock, and Holmes.

12          THE COURT:  And who wrote it?

13          MR. CASTELLANO:  Let's see.

14          MR. CHAMBERS:  Baldock.

15          THE COURT:  All right.

16          MR. CASTELLANO:  So we're in the same

17   situation.  It's a virtually identical situation to

18   the Smalls case.  Here, it's a jailhouse or prison

19   setting, with admissions made from one prisoner to

20   another prisoner, who we expect to testify in court.

21          THE COURT:  And again -- I know I'm

22   repeating myself -- this is not a person that was

23   paid at the time, or anything like that?  Somebody

24   came forward and said:  "Here's some evidence"?

25          MR. CASTELLANO:  That's correct.  Only once

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1624

1    this case was initiated did the statements come

2    forward.  So at that time there was -- there is no

3    motivation, and the statement was certainly given in

4    a context where it was not expected to be seen in

5    court at any time.So unless there is something else

6    following Smalls, the circuit says that these

7    statements will come in, not only against Mr. Troup,

8    but Mr. Alonso.

9            THE COURT:  Okay.  Anything else you want

10   to say on the motion?  We kind of really bore down on

11   the Bruton issue.  But anything else you want to say?

12           MR. CASTELLANO:  Your Honor, I think, as

13   Mr. Chambers conceded, I think you've ruled on the

14   severance motion.  So the only thing really

15   outstanding was the statements.

16           THE COURT:  All right.  Thank you, Mr.

17   Castellano.

18           Let me before you start -- stay right

19   there.  Anybody else want to speak on this issue

20   before I let Mr. Chambers have the last word?

21           All right.  Mr. Chambers.

22           MR. CHAMBERS:  First of all, Your Honor, it

23   was Judge Matsch, who I'm sure would be gratified to

24   hear of your high regard for him.  He was the trial

25   Judge on McVeigh.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1625

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1626

```
 1                 THE COURT:  That's right, he was, yes.

 2                 I don't think they selected him out of a

 3      hat, do you?

 4                 MR. CHAMBERS:  I don't think so.  I think

 5      the fix was in.

 6                 Your Honor observed after the break that

 7      you were having a difficult time squaring Smalls with

 8      Bruton.  And you're not alone, as evidenced by Judge

 9      Kelly's vigorous dissent in Smalls.  I will try not

10      to just get up here and read the briefs back to you.

11                 THE COURT:  But, in fairness, Judge Kelly

12      has had one of the broadest views of Crawford since

13      it came down, right?  He issued an opinion fairly

14      quickly after Crawford, and the Tenth Circuit hasn't

15      been able to hold up that robust view of Crawford.

16      It's been cut back some, hasn't it?

17                 MR. CHAMBERS:  Well, in terms of Judge

18      Kelly's view of Crawford, and whether it's expansive,

19      although I generally don't believe that being

20      informed is a prerequisite to me expressing an

21      opinion, I don't have enough -- I don't know what

22      Judge Kelly's view is on Crawford.  So I don't have

23      an opinion on that.

24                 The Government first argues -- just

25      categorically they state, as if it's a matter of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1626

1    settled law, that Bruton does not apply to

2    nontestimonial statements.  And that is a matter that

3    remains a matter of dispute, Your Honor.  The Supreme

4    Court has certainly never ruled that.  Those who

5    would use Crawford to gut Bruton seize upon this

6    language in Whorton versus Bockting, which I've cited

7    to the Court.  And there was some language by the

8    Court in Whorton versus Bockting that suggests that

9    Bruton doesn't apply to nontestimonial hearsay.  But

10   that is -- was not a ruling.  The issue in Whorton

11   versus Bockting was a very narrow issue.  It had to

12   deal with whether Crawford had retroactive

13   application under the rules of Teague versus Lane.

14   And so that's only issue in Whorton versus Bockting.

15        But people have taken this language in

16   Whorton versus Bokting and taken it completely out of

17   its context and started stating as a matter of

18   established law that Bruton doesn't apply to

19   nontestimonial hearsay.  And the Supreme Court has

20   never said that.  They never said it in Bruton.

21   They've never overruled Bruton.  So it's a stretch.

22        Furthermore, Your Honor, the Government

23   argues today the statements against interests are

24   inherently reliable.  Well, the Supreme Court

25   disagrees with them.  On that, they have ruled.  In

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1627

 1    Crawford, the Court said, and I quote, "The text of
 2    the Sixth Amendment" --
 3              THE COURT:  This is Scalia's opinion in
 4    Crawford, right?
 5              MR. CHAMBERS:  Correct.  "The text of the
 6    Sixth Amendment does not suggest any open-ended
 7    exceptions from the confrontation requirement to be
 8    developed by the courts.  Rather, the right to be
 9    confronted with a witness against him is most
10    naturally read as a reference to the right of
11    confrontation at common law, admitting only those
12    exceptions established at the time of the founding."
13    That's Crawford page 54.
14              The Court went on to say, "Accomplice
15    confessions that inculpate a criminal defendant is
16    not within a firmly rooted exception to the hearsay
17    rule," citing Lilly versus Virginia.  So if a
18    statement against penal interests is not within a
19    firmly routed exception to a hearsay rule, it
20    necessarily could not have been an exception that
21    existed at the time of the founding.
22              I'd also -- you know, when you're thinking
23    about whether a statement against penal interests is
24    inherently reliable, it might be as to the person who
25    is inculpating himself.  But there is certainly no

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                              1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

DNM 1628

1    reliability as -- when he inculpates other people.

2           And the United States Supreme Court has

3    made that recognition as well in a case that I cited

4    in my reply, the Williamson case, where the Court

5    said, and I quote, "In our view, the most faithful

6    reading of 804(b)(3)" -- statements against penal

7    interests -- "is that it does not allow admission of

8    non-self-inculpatory statements, even if they are

9    made within the broader narrative that is generally

10   self-inculpatory.  The district court may not just

11   assume for purposes of 804(b)(3) that a statement is

12   self-inculpatory because it is part of a fuller

13   confession.  And this is especially true when the

14   statement implicates someone else," end quote.

15          And, Your Honor, you know, this is a real

16   cool issue.  It's fascinating.  But the fact of the

17   matter is, no matter what you do with Crawford, no

18   matter what you do with Bruton, no matter what you do

19   with Smalls, no matter how you slice that

20   constitutional pie, it doesn't change one fact.  Rule

21   14 still exists.  Smalls, Crawford did not touch Rule

22   14.  And Rule 14 gives you the discretion to --

23   here's what Rule 14 says:  "If the joinder of

24   offenses or defendants in an indictment, an

25   information, or a consolidation for trial appears to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1629

```
 1    prejudice a defendant or the Government, the court

 2    may order separate trials of the counts, sever the

 3    defendants' trials, or provide any other relief that

 4    justice requires."

 5            You have discretion.  That discretion is

 6    untouched by Smalls, by Crawford, by anything else.

 7    You have the discretion to make this fair.  And in

 8    making that -- in exercising your discretion, your

 9    discretion should be informed by things such as Rule

10    403.  And the unfair prejudice that comes to people

11    like Mr. Alonso, if the Government gets its wish to

12    put in Troup's statements, just without any

13    limitation.So, if you have questions, I'll fake an

14    answer.

15            THE COURT:  I don't believe I do.  Thank

16    you, Mr. Chambers.

17            MR. CHAMBERS:  Thank you.

18            THE COURT:  Well, I'm not going to grant

19    the motion to sever at this time.  Obviously, I'm

20    going to have to continue to monitor this case and

21    the evidence that's coming in.  And I'm going to have

22    to probably start making some rulings.  So maybe I'll

23    use this motion to drill down a little bit more on

24    the Smalls and Bruton and Crawford issues to give

25    some guidance in this case.  I am inclined to think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1630

1    that, given the law that we have here in the Tenth

2    Circuit, that we don't -- this is not a -- this is

3    not a sound basis for declining, or for granting the

4    motion to sever.

5          It does concern me a little bit, letting in

6    some statements that, even though the Tenth Circuit

7    may be allowing at the present time, letting them

8    come in, and down the road they -- the landscape may

9    change on us, and decisions that I make now, based

10   upon Tenth Circuit law, may change because of the

11   Supreme Court's changing character.  But we all have

12   to deal with that.

13         And so I still think the decision to keep

14   Count 3 in the case, and keep Alonso and Troup,

15   remains sound.  But I'm still going to continue to

16   take hard looks at this to make sure that everybody

17   gets a fair trial.

18         Mr. Castellano.

19         MR. CASTELLANO:  Your Honor, as you're

20   considering this issue, I'd also point the Court to

21   the 2014 Smalls decision.  It's the decision that

22   came out post-trial, post-conviction.  Related to a

23   discussion of prior consistent statements it says

24   that "Smalls also argues that for a prior consistent

25   statement to be admissible under the confrontation

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1631

1    clause, it must meet pre-Crawford standards of

2    reliability.  But the confrontation clause has no

3    application to nontestimonial statements, and,

4    therefore, permits their admission, even if they lack

5    indicia of liability," citing to Whorton v. Bockting,

6    B-O-C-K-T-I-N-G, U.S. Supreme Court 2007.  And also

7    the Smalls case.

8              The only question --

9              THE COURT:  I don't think there is any

10   disagreement on that, right?  I mean, the

11   confrontation clause has no application to

12   nontestimonial statements.  I'm not trying to butt up

13   against that.  But I am trying to -- I mean, as

14   Mr. Chambers put it, we are talking about Troup's

15   statements, right?

16             MR. CHAMBERS:  Yeah.

17             THE COURT:  So that's the problem that I'm

18   having is Troup's statements.

19             MR. CASTELLANO:  That's correct, Your

20   Honor.  We intend to admit Troup's statements against

21   both him and Mr. Alonso.  There is no doubt that

22   that's what we want to do.

23             THE COURT:  Well, I'll have to give that

24   some hard look.  I mean, it may just be that Smalls

25   is as broad as what you're relying on, but it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8633

1    concerns me some.

2              MR. CHAMBERS:  Your Honor, I would just

3    add, if I could --

4              THE COURT:  You may.

5              Thank you, Mr. Castellano.

6              MR. CHAMBERS:  Yeah, the law is what it is.

7    Crawford says what it says that -- about whether the

8    confrontation clause applies to nontestimonial

9    hearsay.  But that doesn't answer the question.

10             And as I pointed out in my --

11             THE COURT:  It doesn't answer your

12   severance question?

13             MR. CHAMBERS:  It also doesn't answer the

14   question about the limits of that, about the borders

15   of the confrontation clause.  Because the Crawford

16   court specifically declined to define what was

17   testimonial and what was nontestimonial.

18             And furthermore --

19             THE COURT:  Sure.  I think Scalia

20   explicitly --

21             MR. CHAMBERS:  Explicitly.

22             THE COURT:  -- gave that to the lower

23   courts to develop.

24             MR. CHAMBERS:  And in cases since Crawford,

25   such as Davis versus Washington, and Hammond, which

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  were companion cases, the court has provided scant --

2  they haven't helped much in defining what is

3  testimonial and what is nontestimonial.

4           THE COURT:  Well, it certainly seems to me

5  that this would fall safely into the nontestimonial,

6  wouldn't it?

7           MR. CHAMBERS:  No, I don't think so, Your

8  Honor.

9           THE COURT:  I mean, this one doesn't seem

10 to me on the edges, as much as some other scenarios

11 I've seen.

12          MR. CHAMBERS:  I believe it's testimonial.

13 And my position is derived from a reading of both

14 Davis versus Washington, and Hammond versus -- was it

15 Indiana?  I can't remember.  But Davis and Hammond.

16 And the distinction that the court drew in Davis and

17 Hammond was a statement is nontestimonial if it is

18 made in the context of an ongoing emergency.  It is

19 testimonial if it is describing past events.

20          THE COURT:  That's more where you come up

21 on the scene, and you're sorting out -- the police

22 are there, but you can still have some nontestimonial

23 statements with police around.  You can't draw a

24 bright line and say, just because the cops are there,

25 it's testimonial.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1634

```
 1              MR. CHAMBERS:  That's right.  And that's
 2    Davis.
 3              THE COURT:  But if you're in a prison cell,
 4    and you've got a guy talking to another prisoner,
 5    seems to me that's pretty classic nontestimonial.
 6              MR. CHAMBERS:  I disagree, respectfully.
 7    And I wrote why in -- I don't know my reply number.
 8              THE COURT:  Give it to me again.
 9              MR. CHAMBERS:  1038, maybe 1036.
10              THE COURT:  Summarize it again for me.
11              MR. CHAMBERS:  Okay.  In Davis versus
12    Washington, and in Hammond -- they're both domestic
13    violence cases -- and in Davis versus Hammond (sic),
14    cops talked to the victim of a domestic violence
15    incident.  In Davis, the hearsay statements were made
16    by a domestic dispute victim to a 9/11 operator in
17    the context of an "ongoing emergency," that's
18    according to Davis.  The Court found that statements
19    in Davis were made during an ongoing emergency in
20    which the declarant was speaking about events as they
21    were actually happening, rather than describing past
22    events.  Davis page, 827.  Accordingly, the Davis
23    Court held that the statements were nontestimonial.
24              In Hammond, the statements were also made
25    by the victim of a domestic dispute.  But unlike
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1635

```
 1    Davis, not in the context of an ongoing emergency,
 2    but rather, as an investigation into, quote, "what
 3    happened."  In Hammond, although the statements at
 4    issue were made within minutes of the crime, the
 5    court found that there was no ongoing emergency, and
 6    the declarant was describing what happened instead of
 7    what was happening.  Hence, the statements were
 8    testimonial.
 9              Well, here, the statements that are at
10    issue here are not describing a current -- events as
11    they are happening.  They are describing what
12    happened.  And, therefore, under the Davis-Hammond --
13    I don't even want to call it a definition, but --
14              THE COURT:  I think those are unique.  I'm
15    probably not going to buy that distinction.  Because,
16    otherwise, anytime you have somebody giving
17    historical facts, you're saying that that's
18    testimonial.  And that seems to me -- I think you've
19    got to still have the presence of the cops.  That's
20    what's making Hammond and Davis so important is that
21    you've got law enforcement, and it's almost -- it's
22    almost the excited utterance exception to the
23    Crawford Rule, that if you're in the middle of the
24    fray, and people are saying what they're saying,
25    they're not going to toss that evidence out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1636

1            But if you've got -- I mean, take it out of

2     the jail, take it out of our case.

3            MR. CHAMBERS:  Okay.

4            THE COURT:  You've got somebody that, you

5     know, is just talking on the phone to somebody else,

6     and say, "I killed that person," and they're talking

7     to their cousin, and they said they killed somebody.

8     And, you know, how would that not be nontestimonial?

9            MR. CHAMBERS:  Well, the Davis court

10    actually specifically cites cases, Your Honor.  And

11    I'm looking for them in my brief.  One of them is an

12    ancient case.  You'll probably have to dust off, wipe

13    the dust off this book if you want to read the

14    opinion.  It's found at 1 Leach 199, a case, King

15    versus Brasier, 1799.  But Davis cites it.  The

16    United States Supreme Court relied on it.  I'll leave

17    for another day my opinion about whether the United

18    States Supreme Court should be relying on

19    international authority.  But they did here.  And

20    there, it was not a statement to a cop.  It was not.

21    And that was in 1799.

22            And in 2015, they reached the same

23    conclusion in Ohio versus Clark, where they

24    specifically said, "at least some statements to

25    individuals who are not law enforcement, but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1637

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3638

1    conceivably raise confrontation concerns, we decline

2    to adopt a categorical rule excluding them from Sixth

3    Amendment's reach."

4              THE COURT:  Well, I think that's true.  I

5    mean, that's what I keep asking Mr. Castellano.  Who

6    is this cooperator?  Tell me about him.  I mean, you

7    know, is this a person that, you know, that is being

8    paid by law enforcement?  Yeah.  Or something like

9    that.  So I agree with that statement.  You can't

10   just say, Well, it was another prisoner.  Wait, tell

11   me about that prisoner.

12             So I agree, but I think to just make it a

13   functional test:  Was it past history or was it

14   current events is sweeping too broadly.  I think

15   you'd gut the testimony on nontestimonial

16   distinctions that have been developed since Crawford.

17   So I'm probably not going to go that direction.

18             MR. CHAMBERS:  Which is why I didn't say

19   that Davis and Hammond defined testimonial, because I

20   don't think it does define it.  I think it provides

21   some guidance, though.  That's about the best I can

22   do.

23             THE COURT:  All right.  I'll take a hard

24   look at it.  Thank you, Mr. Chambers.

25             All right.  So I'm going to deny that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1638

```
 1    motion, but I may use it as a vehicle to start
 2    sketching out how we're going to handle some of these
 3    statements that are going to be used against multiple
 4    defendants.
 5              Hold on, we skipped Mr. Benjamin, so I'm
 6    going to have to work here to get my stuff back in
 7    order one second.
 8              All right.  Mr. Benjamin, do you want to
 9    talk about the Grand Jury transcripts?
10              MR. BENJAMIN:  Yes, Your Honor.  Thank you.
11              THE COURT:  Mr. Benjamin.
12              MR. BENJAMIN:  I apologize, Your Honor.  I
13    stepped out earlier thinking I had 30 seconds.  And
14    Mr. Chambers was much shorter than I believed he
15    would have been.
16              THE COURT:  That's fine.
17              MR. BENJAMIN:  Your Honor, before I begin,
18    I need to make sure that, I guess, the motion is
19    clear.  It should be construed as only requesting
20    transcripts for Counts 4 and 5, which are the counts
21    that relate to a 2012 alleged murder of Adrian Burns,
22    by Joe Gallegos and his brother, Andrew Gallegos.  So
23    it's not a request for any and all transcripts.  It's
24    a request for transcripts relating specifically to
25    Counts 4 and 5.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1639

```
 1              And I think the reason that those

 2      transcripts are important is because, as cited in the

 3      motion, Douglas Oil directed that there are three

 4      factors looked at when considering release of Grand

 5      Jury transcripts.  The first one is avoiding a

 6      possible injustice.Your Honor, this is a state murder

 7      trial -- this was a state murder allegation.  In its

 8      elements it does not meet anything resembling a VICAR

 9      murder, unless there is something to bring it under

10      the umbrella of the federal district court.  And so I

11      think that's an extremely prejudicial jurisdictional

12      requirement.  Because in doing so, bringing it into a

13      VICAR charge, as the Court's well aware, the

14      evidence, the arguments, and everything that will be

15      used to charge the individual and prosecute that

16      individual for that murder become vastly more broad

17      than they would have otherwise.

18              THE COURT:  The evidence coming in?

19              MR. BENJAMIN:  Yes, Your Honor, excessively

20      so.

21              And so the second argument is that

22      disclosure need outweighs the greater need for

23      secrecy.  Grand Jury transcripts are usually secret.

24      And does Mr. Gallegos' need for the information that

25      he's being prosecuted for outweigh that?  I would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1640

 1    argue, yes.

 2            And lastly, and this is why I made that

 3    requirement that, I guess, was inaccurately made in

 4    the motion, Your Honor.  It's tailored, it's a

 5    tailored request, specifically for the testimony

 6    relating to Counts 4 and 5.

 7            Now, I think the majority of what I have is

 8    based upon some documents that were produced in

 9    discovery, that when they were produced and when I

10    understood that they were valid, negated this

11    argument.  But now that there has been a retraction

12    of those documents -- and the first document was a

13    document Bates stamped 1580, that was produced June

14    17, 2016; it was dated December 9, 2015.  That

15    document was again disclosed under a different Bates

16    stamp.  It's the identical document, but it's Bates

17    stamped 4472, disclosed July 1, 2016, and dated June

18    6, 2016, essentially seven months later.  But it's

19    the identical statement, Your Honor, that I cite in

20    the motion and attached as an exhibit.

21            It says that Roy Martinez talked about Joe

22    Gallegos killing Adrian Burns on a wire, which would

23    bring it, arguably, under the umbrella of federal

24    jurisdiction for a VICAR prosecution.  This was done

25    for that reason, was the allegation.  However, that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1641

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 7642

```
 1    was retracted in a document Bates stamped 21822, on

 2    March 9, 2017.  And that document was dated,

 3    though -- and I think this is important --

 4    essentially, almost three weeks earlier, on February

 5    14, 2017.

 6              THE COURT:  Now, how are you using the word

 7    "retracted"?

 8              MR. BENJAMIN:  That document that was

 9    produced states that this was a misunderstanding,

10    miscommunication or "mis" something in the notes

11    taken by Special Agent Acee, when he was interviewing

12    the cooperator that had told him that.

13              Essentially --

14              THE COURT:  So you've got a 302, and it

15    says one thing, and then you get another 302, or an

16    amended 302 saying, no, that's not what was said?

17              MR. BENJAMIN:  Yes, Your Honor.  But the

18    reason I gave the specific dates and Bates numbers is

19    because there is a document that's produced, the same

20    document is again produced seven months later.  And

21    then approximately eight months after that, but

22    produced on the same day of the second superseding

23    indictment, is the document that says:  What you have

24    in your possession is inaccurate, is not correct for

25    one reason or another.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1642

1          THE COURT:  Is it getting better for you or

2     worse?

3          MR. BENJAMIN:  Much better, Your Honor.

4     Because that takes away any claim of what I

5     understood any basis for a state murder being

6     prosecuted in this courthouse is.

7          And so that brings us to where we are, Your

8     Honor.  There is nothing that has been produced that

9     would support the idea that this murder was committed

10    in furtherance of a VICAR or to support a VICAR

11    prosecution.

12          Now, Document 933, which is the response by

13    the United States Government to Andrew Gallegos'

14    motion to sever includes three very conclusory

15    statements.  And those statements are found first on

16    page 2; that the murder was conducted because Joe

17    Gallegos was being disrespected in the community by

18    Adrian Burns.  And that's page 2 of Document 933,

19    Your Honor.

20          The next statement is page 15 of document

21    933; that sufficient evidence exists to prove the

22    conspiracy to murder Adrian Burns.

23          And the third statement that's put in there

24    is that on page 19, Gallegos -- Joe Gallegos,

25    specifically -- did -- conducted the murder to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1643

```
 1    advance his pecuniary interest in the SNM Gang.

 2            All of those, but most specifically the

 3    sufficient evidence exists to prove the conspiracy

 4    boggles me, because there is no evidence that I am

 5    aware of to show that there is any evidence to

 6    support the claim of federal jurisdiction, now that

 7    the wire statement or the wire conversation, whatever

 8    you may call it, was retracted.

 9            And so this becomes, I think, very

10    troubling, because -- and while the determination of

11    no probable cause by a State of New Mexico

12    magistrate, in December of 2012, about this murder

13    doesn't bind this Court or anything, it's

14    illustrative of the type of evidence that exists to

15    prove that this murder, A, occurred; and, B, more

16    importantly, because of where we are, occurred, and

17    is subject to prosecution in federal court.

18            The Court stated something earlier when it

19    was talking to Ms. Johnson regarding the bill of

20    particulars that she had alleged there.  And I think

21    it's fair to say that for Counts 13 through 16, I do

22    have a good feel of what the evidence is, and what

23    the evidence -- how the Government will do that.  But

24    I can tell this Court that I do not have any feel of

25    what the evidence is or how the Government's theory
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1644

1    regarding Counts 4 and 5 makes this subject to

2    federal prosecution.

3            And so, Your Honor, I would argue that the

4    presentation to the Grand Jury meets Mr. Gallegos'

5    need to review what was presented to the Grand Jury,

6    avoids a possible injustice, is much greater a need

7    for disclosure than the secrecy, and it is very

8    tailored.  It's tailored regarding Counts 4 and 5.

9            And even if Special Agent Acee didn't

10   testify about the statement on the wire and that

11   retraction of that statement, which, as I said, the

12   retraction was -- the 302 for that retraction was

13   done three weeks prior to the second superseding

14   indictment being received -- even assuming those

15   arguments are facts, there is nothing that takes this

16   into the realm of federal jurisdiction that I am

17   aware of that has been produced in the discovery

18   regarding Counts 4 and 5, or, even more broadly, Your

19   Honor, that has been produced.

20           And so we're asking that the Court order

21   the Government to produce the transcripts for Counts

22   4 and 5, Your Honor, from the -- and I would assume

23   it's the original superseding indictment.  And if

24   there are different ones for the second superseding

25   indictment, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1645

```
 1                    THE COURT:  Now, you did not file a reply
 2       to the Government's response, right?
 3                    MR. BENJAMIN:  Correct, Your Honor.
 4                    THE COURT:  And your motion was broader,
 5       right?  It still wanted the Grand Jury indictments,
 6       and all the -- the Grand Jury transcripts on all the
 7       counts against Mr. Gallegos?
 8                    MR. BENJAMIN:  The motion doesn't limit it.
 9       My intent from the beginning -- I apologize to the
10       Court and to the Government -- my intent was to limit
11       it to Counts 4 and 5.
12                    THE COURT:  All right.  Thank you, Mr.
13       Benjamin.
14                    Ms. Armijo.
15                    MS. ARMIJO:  Your Honor, I think that, in
16       looking at his motion, it was our belief that he was
17       indicating that the basis for his relief was that he
18       believed there was false -- erroneous, false, or
19       missing information, specifically referring to Counts
20       4 and 5.  And the information about -- the
21       misinformation about, quote, "the wire."  And in
22       talking to him before -- I think it was during the
23       break, or before this was being heard -- he thought
24       that Special Agent Acee testified at the Grand Jury.
25       Special Agent Acee did not testify as to this --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 1646

1    these counts in the Grand Jury.  And that information

2    about the wire was not presented to the Grand Jury at

3    any point in time.  The Grand Jury made their

4    determination based upon facts that were presented to

5    them entirely about the whole investigation.

6           So our position is that this is Jencks.

7    And if he is having a concern that we are not able to

8    meet our elements -- he did file a bill of

9    particulars last night.  Maybe that's more

10   appropriate for that motion.  But it's certainly

11   not -- the correct avenue for him to seek this

12   information is not for the release of Grand Jury

13   transcripts.  So we are opposed based on that.

14          Maybe, again, this could be more

15   appropriate for the bill of particulars, but

16   certainly not at this point.  Or a motion for a

17   directed verdict.  I think it would be his benefit if

18   he feels this is just a state case, obviously.  But

19   he doesn't deserve the Grand Jury transcripts just

20   because he feels that our case is weak, as far as

21   this being a VICAR count.

22          THE COURT:  Let me make sure I understand.

23   So you did not have any live viva voce evidence on

24   these two counts?

25          MS. ARMIJO:  What do you mean?  As far

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1647

```
 1    as --
 2              THE COURT:  You didn't have a witness?
 3              MS. ARMIJO:  Who testified before the Grand
 4    Jury?
 5              THE COURT:  Right, on these two counts.
 6              MS. ARMIJO:  We did.  It was Mark Myers.
 7    We did not have a cooperator testify, no.
 8              THE COURT:  Okay.  So all you've got on --
 9    as far as live testimony at the Grand Jury was Myers?
10              MS. ARMIJO:  Yes.
11              THE COURT:  On these two counts?
12              MS. ARMIJO:  Yes, as far as the first one.
13    And I don't believe in the second superseding
14    indictment we talked about this at all, or in the --
15    yes, this was discussed in the first superseding
16    indictment.  And nothing about the wire or anything
17    else was --
18              THE COURT:  Is Myers going to testify in
19    this case on these two counts?
20              MS. ARMIJO:  Probably not.  I say that
21    because unless -- I am thinking off the top of my
22    head, I'm saying probably not as to these two counts,
23    because this case was initially investigated by the
24    state, so there would be a lot of state witnesses.
25    And then the federal interests came in.  But I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1648

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104 of 4649

 1    think that -- off the top of my head, I don't see him

 2    as that, unless there was a witness that he

 3    interviewed; then he would have to come in and talk

 4    about, but --

 5              THE COURT:  But he's going to testify?

 6              MS. ARMIJO:  He's going to testify.  But

 7    we're talking about these two counts in particular.

 8              THE COURT:  And you're going to produce

 9    these transcripts 14 days before trial as part of

10    your Jencks production?

11              MS. ARMIJO:  Yes, Your Honor.  We have said

12    that we would produce Jencks 14 days before trial.

13              THE COURT:  And that's probably going to

14    sweep in a lot of the Grand Jury transcripts, right?

15              MS. ARMIJO:  Yes.  And that's why we're

16    doing it 14 days, as opposed to just three days or

17    one day, or before the witness takes the stand.

18              THE COURT:  And, usually, there is not a

19    lot of Giglio and Brady material in Grand Jury

20    transcripts.  But has anybody looked at Myers'

21    testimony for that purpose?

22              MS. ARMIJO:  For the purpose of if he

23    mentioned the wire or anything?  I read over it this

24    morning --

25              THE COURT:  Just Brady, Giglio, Rule 16,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1649

1    anything helpful there?

2           MS. ARMIJO:  I will reread it for those

3    purposes.  I reread it for the purpose of this fact.

4    This information was relied upon.  And I spoke to him

5    about that.  But I will reread it for that purpose.

6    It isn't very lengthy.  And, certainly, if there is

7    anything that we feel is Brady, we will then disclose

8    it to Mr. Gallegos' attorneys.

9           THE COURT:  What is your argument -- when

10   Mr. Benjamin talks about, and I'm not sure, maybe, I

11   fully appreciate what he's saying -- that I guess

12   this is -- I'll put it in my words, and see -- this

13   is just a state law murder rather than being a VICAR,

14   these Counts 4 and 5, there is no evidence linking

15   his client to the federal crimes here?  Is there

16   something you can point out outside of the Grand Jury

17   transcripts that you're going to be relying on?

18          MS. ARMIJO:  Well, I think he has the

19   general idea of it.  He just thinks -- he's just

20   critical of the information.  When he talks about --

21   and I don't have it in front of me -- he referred to

22   a response, Document 933, that I do not have in front

23   of me.  But it's the general proposition that the SNM

24   is a criminal enterprise; it is engaged in

25   racketeering activities, which would include drug

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1650

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 106651

```
 1    activities.  Mr. Gallegos was on the street at the

 2    time, was involved in drug activities.  And there

 3    was -- the victim in this case and he, obviously,

 4    were not getting along, for lack of better words, and

 5    the victim was eventually killed.

 6              And we do have statements from people

 7    that -- and I don't have it in front of me to say

 8    what was disclosed -- but we certainly have people --

 9    statements that were obtained during the FBI

10    investigation, that were at the Gallegos residence

11    and with the Gallegoses after the murder that could

12    talk about it, in addition to various statements of

13    people related to the victim.  And this is in

14    addition to the state investigation.

15              So the general theory, though, Your

16    Honor -- I think he understands it -- is that it's

17    Mr. Gallegos' relationship with the SNM, his position

18    with the SNM.  He's obviously charged in two

19    different murders for the SNM in this case.

20              THE COURT:  All right.  Anything else, Ms.

21    Armijo?

22              MS. ARMIJO:  No, Your Honor.

23              THE COURT:  All right.  Thank you, Ms.

24    Armijo.

25              Let me ask:  Any co-defendants want to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1651

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107

```
 1    comment on this motion in any way?

 2              All right.  Mr. Benjamin.

 3              MR. BENJAMIN:  Your Honor, I can state that

 4    I don't have any idea what this is.  There are three

 5    statements in a response to Andrew Gallegos' motion

 6    to sever, but I -- and I've asked other counsel if

 7    they have seen any statements regarding a -- just

 8    broadly, actions being taken because of somebody,

 9    specifically Adrian Burns, disrespecting Joe Gallegos

10    in the community, and how that would tie into the

11    SNM.  I am not aware of -- once again, out of the

12    Document 933, page 15 -- any evidence, as opposed to

13    sufficient evidence, to prove the conspiracy to kill

14    Adrian Burns.

15              THE COURT:  But how is the Grand Jury

16    testimony going to help anyway?  You now know, if you

17    didn't know already, that it's Myers.  It sounds like

18    it's very brief.  It doesn't sound like there is

19    anything exculpatory or helpful to you on that side,

20    which is often the case with Grand Jury testimony.

21    It's not a very fruitful area for the defendant?  How

22    does it help you?

23              MR. BENJAMIN:  Your Honor, because Mr.

24    Myers, Agent Myers, would have gone in, and would

25    have presumably told them:  The brothers got together
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108653

```
 1    and they killed Adrian Burns, and this is why they
 2    did it.  However, if that is what he explained to
 3    them, there is no federal jurisdiction for Counts 4
 4    and 5.
 5                THE COURT:  Well, but don't we just have
 6    that problem, period?  We don't need the Grand Jury
 7    transcripts.  It's a problem, right?
 8                MR. BENJAMIN:  It is a problem, Your Honor.
 9    But there has been approximately 50,000 pages of
10    documents produced, and there are the sheriff's
11    office investigative reports that were produced in
12    this matter that -- there's cooperator statements,
13    statements that are redacted, there are a lot of
14    other things.  But there is nothing in relation to
15    Counts 4 and 5.
16                And, more specifically, there is nothing
17    that comes anywhere close to what, or comes at all
18    within what the Government has put in Document 933
19    that would support that.
20                THE COURT:  But I guess that's what -- how,
21    then, is the transcript of Myers' testimony going to
22    help you?  You're going to get it eventually.  How is
23    it going to help you now?
24                MR. BENJAMIN:  Well, Your Honor, first off,
25    I think that it allows me to understand who or how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1653

```
 1   Joe was disrespected in the community, or considered
 2   himself disrespected in the community, and the other
 3   federal jurisdictional elements that had to have been
 4   presented to the Grand Jury in order to return an
 5   indictment.  Because that has to be in there.
 6   Otherwise, there wouldn't have been an indictment.
 7   Essentially, my position, I think, Your Honor is, but
 8   for that jurisdictional evidence, that I don't know
 9   what it is, there could not have been an indictment.
10           THE COURT:  All right.  Anything else on
11   this, Mr. Benjamin?
12           MR. BENJAMIN:  Your Honor, I would request
13   that, should the Court deny this request to produce
14   the Grand Jury testimony, if the Court would consider
15   reviewing that in chambers -- I'm sorry, not in
16   chambers -- in camera.
17           THE COURT:  All right.  What do you think
18   about that request, Ms. Armijo?
19           MS. ARMIJO:  Well, again, I don't want to
20   go down that road.  And what is the purpose of the
21   Court reviewing it?  If it's just that -- I mean, the
22   entire Grand Jury presentation -- because it was done
23   up in parts -- is different segments, so the Court
24   would look at that and say, Well, I'm not sure what
25   the whole Grand Jury -- then you're looking at the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    whole Grand Jury transcript.  Again, I think that his

 2    issue with not being able to -- he's filed a motion

 3    for a bill of particulars, and then maybe that's

 4    where we deal with this whole issue.  I don't think

 5    that this is the correct avenue.  I will review the

 6    Grand Jury transcripts for Brady as to these counts,

 7    and if we feel that there is anything there that is

 8    Brady, we will certainly disclose it to Mr. Benjamin.

 9              THE COURT:  Well, do this:  Just the

10    portion of Myers' testimony that links this to

11    federal jurisdiction, send me that.

12              MS. ARMIJO:  Okay.  But I don't know --

13              THE COURT:  If it doesn't exist, then that

14    will tell me something.  But --

15              MS. ARMIJO:  And I don't know that Myers

16    specifically said here is the federal link.  I think

17    that the Grand Jury heard testimony from a variety of

18    witnesses, including information about the SNM and

19    how they work, so -- and took everything in totality.

20    So I don't know.

21              THE COURT:  Well, let me assume, then, that

22    Myers didn't say anything about it.  The Grand Jury

23    was just supposed to draw an inference that, when the

24    defendant -- that I guess anytime the defendant did

25    something, that that was in furtherance of the SNM

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1655

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 111 1656

1    Gang's interests; would that be fair?  That's the

2    case before the Grand Jury?

3              MS. ARMIJO:  And could you repeat it again,

4    Your Honor?

5              THE COURT:  Well, that Myers did not offer

6    any specific testimony as to what Gallegos did or did

7    not do on behalf of the SNM.  It didn't link this

8    crime up with the SNM.  It was just that there was a

9    lot of testimony about:  Here's how the SNM Gang

10   operates.  And then we got around to, then, linking,

11   with Myers' testimony, Gallegos to the crime?  Is

12   that fair?  Is that a good picture?

13             MS. ARMIJO:  That's fair.  And I can

14   certainly reread it to see if there were.  But I know

15   I was present for the Grand Jury, and I don't believe

16   I said to Myers:  And what is the federal link to

17   this?  But it was a rather lengthy presentation with

18   what the SNM is, and --

19             THE COURT:  But you also -- I know that he

20   probably isn't talking about federal jurisdiction

21   before the Grand Jury.  But is there testimony by

22   Myers in which you ask him, and he says, Hey, this

23   is -- here's the reason we did this crime, or here's

24   the reason we committed what would otherwise be a

25   state act, and we did it because of the SNM Gang?  Or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1656

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112

```
 1   was the Grand Jury just supposed to infer that from

 2   the prior testimony about how gangs operate; this

 3   must have been a gang crime?

 4           MS. ARMIJO:  I can reread it and let the

 5   Court know.

 6           THE COURT:  But you think it's the way I'm

 7   describing it?

 8           MS. ARMIJO:  I think it is.  But I think

 9   that there was obviously more.  But I'd have to sit

10   down and read it again.  It's not that long, Your

11   Honor.  What I can say is that we do have a

12   cooperator who will say that Adrian Burns

13   disrespected Joe Gallegos; that Andrew Gallegos stole

14   drugs from Adrian Burns; that Burns was their

15   supplier, and took the theft to the public, which

16   then shamed the Gallegos brothers.  And shaming an

17   SNM member is not a good thing to do as far as their

18   reputation.

19           And so we do have specific cooperators that

20   will talk specifically about it.  It's not just a

21   generalized, Oh, this is a drug case; oh, this is

22   that.  We have specific cooperators that will talk

23   specifically about this.

24           THE COURT:  But as far as the Grand Jury

25   testimony, that's not something that was presented to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1657

```
 1    the Grand Jury?  You've got additional evidence?

 2              MS. ARMIJO:  I think that was something

 3    that came out after -- this cooperator we spoke to

 4    after.  So I know -- I'm pretty certain that this

 5    specific information was not in the Grand Jury

 6    transcript.  But I will review the Grand Jury

 7    transcript to see what else is there, as far as the

 8    Court's questions about that.  But, again, I think

 9    that that's probably more for the bill of

10    particulars.

11              THE COURT:  So I'm going to assume, for

12    purposes of this motion, that the picture I'm getting

13    is the Grand Jury was given some robust -- sort of

14    like the indictment itself -- some robust description

15    of how the gang operates, which we know what the

16    indictment says.  And then there was -- given that

17    there doesn't seem to be anything specific, it's just

18    information as to Myers saying, Well, they committed

19    this crime, and so the jury inferred that it was a

20    gang-related crime, rather than some personal dispute

21    between the two.If that's the case, I think you and I

22    can assume -- and for purposes -- given without the

23    transcript -- that there is nothing there that's

24    going to give you any more information than what the

25    documents are going to give you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Except, Your Honor, if that
 2    information is not there, it is Exhibit A to my
 3    motion to dismiss.
 4              THE COURT:  Well, I think you and I can
 5    assume that.  We have to assume that it's not there.
 6    So you can file your motion and say, "It's not
 7    there."
 8              MR. BENJAMIN:  But, Your Honor, that would
 9    then lead to my basis for the claim, which is false
10    and misleading information.  Because there has to be
11    evidence on every element of -- and I apologize, Your
12    Honor, but I guess I'm not understanding.  I can't
13    assume that in a motion to dismiss, I don't think.
14              THE COURT:  Well, I think that's what the
15    Government is telling us.
16              MR. BENJAMIN:  Okay.
17              THE COURT:  So I think you can assume it.
18    If, all of a sudden, they produce a Grand Jury
19    transcript that does have Myers saying to the jury
20    that this is the reason it's not just a state law
21    crime, it's a federal crime, is because he was doing
22    this on behalf of the SNM, you've got a little
23    more.But you still don't have what I think you're
24    looking for, is that robust sort of evidence of the
25    United States going to the Grand Jury and saying, By
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1659

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1 5660

1    the way, these guys were in a squabble.  They didn't

2    like each other anyway.  They were fighting over

3    women, cars, something, and it had nothing to do with

4    the SNM Gang.  But we're going to tell you that --

5    here's the evidence.  That's not what happened.

6              MR. BENJAMIN:  Thank you, Your Honor.

7              THE COURT:  It didn't.  I mean, if we see

8    the pages, and all of a sudden down the road --

9    you're going to see them at some point, you're going

10   to see it as far as Jencks production, and that's

11   something different, then we'll have to deal with it

12   then.  But I think you and I have enough experience

13   reading Grand Jury transcripts to know they're not

14   always presenting every possible theory from the

15   defendant's standpoint.

16             MR. BENJAMIN:  Yes, Your Honor.  But I

17   would -- the concern that I have here is,

18   essentially, at this point in time what I'm

19   understanding is I have two weeks to understand and

20   develop a defense to something that is a state case,

21   that I don't believe has any federal jurisdiction,

22   which concerns me from a time point of view.

23             THE COURT:  Yeah.  Well, I think you've got

24   all the discovery.  You've seen the Government's

25   cards, as far as evidence.  It doesn't sound like



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1660

```
 1    you're going to get much more evidence out of the
 2    Grand Jury.  So I'll deny the request.
 3              MR. BENJAMIN:  Thank you, Your Honor.
 4              THE COURT:  You'll see them down the road.
 5    So if there is problems with them, we'll have to deal
 6    with them then.
 7              MR. BENJAMIN:  Thank you, Your Honor.
 8              THE COURT:  Thank you, Mr. Benjamin.
 9              All right.  What I have next is
10    Mr. Garcia's and Mr. Troup's motion for -- the
11    Government's motion for notice as to Garcia and
12    Troup, 404(b), 405, 406, 608, and res gestae
13    evidence.
14              So you don't like this evidence?
15              MR. CASTLE:  I don't like any of it that's
16    against my client.
17              THE COURT:  Well, there is some out in the
18    world you like, right?
19              MR. CASTLE:  Good character evidence, I
20    would appreciate.
21              THE COURT:  Talk to me a little bit about
22    the evidence.  Make sure I understand fully what the
23    Government wants to use against you.
24              MR. CASTLE:  Well, I think that's the
25    problem.  I don't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1661

```
 1              And just as a prelude, a number of
 2    defendants joined in this motion, so --
 3              THE COURT:  You know, I don't have any
 4    joinders on that.  That may be true, but I don't
 5    really have -- I mean, all I have is the Government's
 6    motion.
 7              MR. CASTLE:  Well, I indicated in the
 8    motion who was joining in that.  So I probably should
 9    have said it was Defendant Troup, Garcia's, and the
10    various other defendants that joined.  But I think in
11    the concluding paragraph I indicated which defendants
12    joined.
13              THE COURT:  Yeah.  I mean, I've got --
14    okay.  I've got Troup.  So I've got -- so y'all are
15    joining this, right?  But is anybody else joining it?
16              MS. HARBOUR-VALDEZ:  Yes, paragraph 10
17    lists all the other parties who joined.
18              MR. MONDRAGON:  Your Honor, I believe Mr.
19    Benjamin joined it, and we joined it.
20              THE COURT:  Yeah, it looks like there is
21    more.  I see paragraph 10.
22              MR. CASTLE:  That was my fault, Your Honor.
23    I should have highlighted that in the beginning.  The
24    problem is that when we circulate these motions, it's
25    done on behalf of two defendants.  Then we hear --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1662

 1          THE COURT:  No, that's fine.  Don't worry

 2     about it.

 3          MR. CASTLE:  Your Honor, in this notice, we

 4     requested -- or in this motion we requested notice of

 5     various types of acts of the defendant, uncharged

 6     acts, which the Government intends to offer.  And

 7     we've described those as either character evidence or

 8     res gestae evidence.

 9          In the Government's response, Document

10     1102, they describe that as, essentially, evidence of

11     uncharged racketeering activity engaged in by the

12     defendants.  And I think it really doesn't matter how

13     we characterize it.  The due process requires

14     notice.Now, the Government has indicated the evidence

15     they'll present ordinarily would be -- well, in this

16     case it's going to be prior crimes or bad acts of the

17     defendants that are -- form their pattern of

18     racketeering activity.

19          But let's take a look at the indictment, if

20     we can.  Because the indictment is where I think we

21     start.  I mean, the Court's initial question was:

22     What are we talking about?  And I said, I can't

23     answer that, because I don't know what they're

24     offering.  That's because the indictment starts off

25     by essentially alleging that all these defendants are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1663

```
 1    members of the SNM; that's a specific allegation.

 2    Then they say that the SNM Gang committed all kinds

 3    of horrible crimes, including murder, robbery,

 4    obstruction of justice, tampering with witnesses, et

 5    cetera, and says that members or associates did these

 6    things.

 7              I'm not talking about the actual Counts, 1

 8    through 16.  I'm talking about uncharged activity.

 9    And then they go throughout the indictment basically

10    saying that various defendants committed one or more

11    of these things:  Murder, robbery, obstruction of

12    justice, et cetera.

13              So what we have here is a situation where

14    the defense doesn't know what this uncharged conduct

15    is.  The prosecution is indicating it's part of their

16    allegations in this case, it's part of their proof of

17    the allegations.

18              THE COURT:  You filed this motion.  Where

19    did you get the idea they had this?  Is this

20    correspondence?  Discussions with them?  How did you

21    get the idea that they had it?  You're asking for a

22    notice that they didn't give you.  Most of the time,

23    when I get a notice of 404(b) evidence, it's pretty

24    specific.  It tees it up, whether the defendant wants

25    to try to exclude it or not exclude it.  And
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1664

```
 1    sometimes the Government knows it's going to be a
 2    fight, and they just move on 404(b) notice to admit
 3    the evidence.  How did you come to the understanding
 4    there is this ball of noncharged conduct that you're
 5    going to have to deal with?
 6              MR. CASTLE:  Well, I got the idea based
 7    upon two sources -- well, actually three reasons.
 8    The discovery is replete with various allegations of
 9    things our clients did.
10              THE COURT:  There is just a lot out there.
11              MR. CASTLE:  Right, there is a lot out
12    there.
13              Second of all, the nature of the indictment
14    is so broad that it really looks like the net is
15    being cast broadly.  And the third thing is that
16    because this is a VICAR prosecution -- oftentimes, in
17    VICAR or RICO prosecutions, the prosecution likes to
18    put in a lot more evidence of acts that constitute
19    the pattern, more than what's been specifically
20    indicted.  And so --
21              THE COURT:  So you're afraid they're going
22    to bring the dump truck to trial, and just, anything
23    bad, unload against you?
24              MR. CASTLE:  Yes, and their response
25    actually confirmed my suspicions.  Their reply said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1665

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 121666

```
 1    that's what they intend to do.  And they think they
 2    can do it, because it shows a pattern of racketeering
 3    activity.
 4             So now, it's more than one -- well, I'll
 5    use an analogy using a different kind of animal, a
 6    catfish.  But there is more than one way to skin a
 7    cat.  And I could have filed this as a motion for a
 8    bill of particulars.  I could have asked for the
 9    indictment to be dismissed.  We asked for notice.  I
10    think they all go to the concept of due process.
11             I would cite the Court to a case that I
12    didn't cite in the motion I filed, U.S. versus
13    Davidoff, a Second Circuit decision, 1988, 845 F.2d
14    1151.  And that case dealt with the RICO prosecution.
15    And in that case, the defense skinned their cat in a
16    different way by filing a motion for bill of
17    particulars.  What they were asking for was they
18    wanted to know if any uncharged acts of their clients
19    were going to be introduced at trial.  And if so,
20    they wanted notice of that so they could defend
21    against that.  Because they were fearful that de
22    facto clients would actually be convicted by a jury
23    mainly because of the uncharged misconduct in acts,
24    not the charged conduct.
25             And the Second Circuit indicated -- they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1666

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 122667

1    were talking about the principles of bill of

2    particulars in that case -- they said that "these

3    principles must be applied with some care when the

4    Government charges criminal offenses under statutes

5    as broad as RICO.  With the wide latitude accorded

6    the prosecution to frame a charge that the defendant

7    has 'conspired' to promote the affairs of an

8    'enterprise' through a 'pattern of racketeering

9    activity' comes an obligation to particularize the

10   nature of the charge to a degree that might not be

11   necessary in the prosecution of crimes of more

12   limited scope."

13          They then went on to indicate that the

14   indictment in the Davidoff case only put the

15   defendants on notice to defend against the actual

16   predicate acts that were charged.  They then went on

17   to say that at trial, "Davidoff was then confronted

18   with evidence of other crimes that were not charged."

19   And they said that that was violative of due process,

20   and reversed the conviction of Davidoff.

21          Now, why does this become important?  I

22   want to give you an example.  One of the allegations

23   here is that the SNM, and some of the defendants --

24   we don't know who they are, because they haven't

25   identified them in the indictment -- engaged in some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123

1  narcotics trafficking that had some kind of a role in

2  the SNM organization.  And I think that's going to --

3          THE COURT:  The Chris Garcia case.

4          MR. CASTLE:  Right.  And that's going to be

5  probably their link to the interstate commerce.  But

6  that aside, they have broad allegations -- we don't

7  know who they're talking about.

8          Now, it might have been that -- I'll use my

9  client, I'll pick on him -- their evidence is that

10  Billy Garcia made a drug deal with some other person

11  in prison.  If we don't know about that in advance,

12  and it turns out that that had nothing to do with the

13  SNM, it's just sprung on us at trial, the jury is

14  going to hear evidence.  We're going to have to stop

15  the trial.  We're going to have to do a hearing on

16  whether this is admissible evidence.  And everything

17  is going to come to a grinding halt in trial.

18          That's why I believe the framers of the

19  rules, with regard to 404(b) specifically, required

20  advance notice so that litigation can settle whether

21  that's admissible or not.

22          I can tell the Court, when I looked at

23  discovery, the discovery doesn't say often -- it's

24  some old report from 2001, 2003, something of that

25  nature -- where they're getting intelligence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1668

1  information on the SNM, and they'll get information

2  about particular defendants.  And then, essentially,

3  they ask them:  Well, what has this person ever done?

4  They say -- well, you don't know whether they've

5  heard it, or whether they haven't, whether they

6  actually were a percipient witness.  And they'll say,

7  Well, here is the laundry list of bad things that guy

8  did.  They don't necessarily link it to the SNM.

9  They just basically say:  Because he's an SNM member,

10  he did all these things, and that's the information

11  they're going to provide.  And I think that's what's

12  going to happen when we get the 302s and the Jencks

13  Act material.  We're going to be stopping this trial

14  constantly because there is going to be objections

15  that this witness isn't necessarily a percipient

16  witness, doesn't have personal knowledge, that it's

17  not properly evidence of the racketeering activity,

18  that it's really 404(b) evidence, and we need to

19  analyze all the factors that we have to analyze in

20  404(b).  And we're going to have stoppages constantly

21  through the trial.  And it's going to chop everything

22  up.

23         It's interesting, what I think the

24  Government's position is -- and I think they can

25  describe it to the Court here in a minute -- but what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1669

1    they're saying is that we have a right to know bad

2    acts under 404(b) that are outside of the indictment.

3    But what they're saying is we don't have a right to

4    notice of the bad acts that they are really saying

5    are within the indictment, that are part of the

6    pattern of racketeering activity of the defendants.

7             And that, to me, is illogical.  I mean, due

8    process at its base requires a defendant to know what

9    crimes he's being accused of which are being a part

10   of the indictment and a part of the prosecution.  And

11   their argument actually, in my opinion, helps us

12   more.  Because if these are acts, these uncharged

13   acts, are actually part of their pattern of

14   racketeering activity, as alleged in the indictment,

15   then the need to give notice to the defense is even

16   higher than if it was mere 404(b) evidence, or other

17   character evidence that often comes up in the trial.

18            So, for the purposes of this argument, I'd

19   actually adopt their position, and say, okay, it's

20   all going to be that evidence, and they're indicating

21   that's all they're offering; they're not offering

22   404(b), or other kinds of character evidence, they're

23   offering it all as evidence that they're going to put

24   on, specific acts of the defendants, that will

25   demonstrate a pattern of racketeering activity.  We

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1670

 1   adopt that, I think the need for notice is greater.

 2   And I don't think it's hard for them to produce this.

 3         I would note to the Court that what the

 4   Court might be thinking about is, Well, is the Jencks

 5   Act disclosures that we're going to get in discovery

 6   sufficient to put us on notice?  The Davidoff case

 7   said, No, it's not.  And I think in this case it's

 8   even greater.  Why?  Because the amount of material

 9   we have is vast.  I mean, if I'm not put on notice

10   for the next two weeks, I'm going to go through

11   discovery, and find every single thing they said

12   about Mr. Garcia, and file a 404(b) motion to exclude

13   it.  Because I won't know whether they're going to

14   exclude it or not.  That seems to be an incredible

15   waste, to define acts that they're going to put on

16   that these defendants did.  I'm not asking for all

17   the evidence that they're going to put on concerning

18   the SNM and pattern of racketeering.  I'm talking

19   about what these defendants --

20         THE COURT:  You would like a list of --

21   saying:  Here is what we're going to say bad about

22   your client?

23         MR. CASTLE:  Right.  These are the crimes

24   we're saying your client committed, so we can defend

25   against them.  And those crimes are going to be part

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1671

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127672

1    of our proof that we're going to put on for the jury

2    as a pattern of racketeering activity.

3              THE COURT:  All right.  Anything else, Mr.

4    Castle?

5              MR. CASTLE:  No, Your Honor.

6              THE COURT:  Thank you, Mr. Castle.

7              Anyone else want to speak on this motion?

8    Ms. Johnson?

9              MS. JOHNSON:  Thank you, Your Honor.

10             THE COURT:  Are you one of the ones that

11   joined it?

12             MS. JOHNSON:  Yes, we did.

13             THE COURT:  Ms. Johnson.  I was going to

14   let you speak anyway, but I just wondered.

15             MS. JOHNSON:  Thank you, Your Honor.

16             We did join the motion.  In the same vein,

17   Your Honor, in addition to the arguments propounded

18   by Mr. Castle, I would also note for the Court that

19   our motions in limine deadline is June 6.  So, in

20   order for us to avoid peppering the Court and

21   opposing counsel with just vague motions in limine to

22   exclude certain evidence, we need to have a specific

23   list.  Because, obviously, we're going to be filing

24   motions under Rule 403 to exclude certain evidence.

25             And, as the Court is aware, one of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1672

1    elements that the Government has to prove for these

2    VICAR counts is that, not only that there was an

3    enterprise, but that the enterprise engaged in a

4    pattern of racketeering activity.

5         So, obviously, in -- we anticipate in

6    support of their burden to prove pattern of

7    racketeering activity, they have to introduce

8    evidence, presumably, of some of these bad acts, of

9    these -- what, in a RICO, regular RICO case, would be

10   predicate acts.  And so the defense has to have

11   enough time to review these, and determine whether or

12   not we need to file a motion to exclude, a motion in

13   limine to exclude.

14        As the Court I'm sure is aware, that

15   pursuant to HJ, Inc. versus Northwestern Bell

16   Telecommunications Company, which is a U.S. Supreme

17   Court decision from 1989, 492 U.S. 229, the pattern

18   of racketeering activity needs to be related.  So we

19   can't just have a slew of bad acts, and have the

20   Government try to introduce evidence of these bad

21   acts in support of their pattern.

22        So, in order to expedite matters, in order

23   to save judicial resources, and save time, and not

24   have to file some vague motion in limine to exclude

25   just 403 -- evidence under 403, I would respectfully

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1673

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129674

1    request the Court order the Government to provide the

2    defense with a list of these bad acts that they

3    intend to introduce in support of their pattern of

4    racketeering activity.  Because what's alleged in the

5    indictment is very vague, it's general.  The counts

6    are VICAR counts.  They may say, Well, that is --

7    those are the -- those acts are what form the pattern

8    of racketeering activity.  I would respectfully

9    submit to the Court that that's different.  They're

10   actually alleging those as substantive violent crimes

11   in aid of racketeering.  And they need to prove the

12   pattern.

13            So I would ask that the Court order the

14   Government to disclose this information.

15            Thank you, Your Honor.

16            THE COURT:  All right.  Thank you, Ms.

17   Johnson.

18            Anyone else want to speak on it?

19            All right.  Mr. Beck, are you going to

20   handle this?

21            MR. BECK:  So I think it's important to

22   distinguish VICAR from RICO.  In VICAR, the United

23   States is not required to prove that there was a

24   pattern of racketeering activity.  The only element

25   that the United States is required to prove in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1674

1    connection with racketeering activity is that the

2    charged enterprise engaged in racketeering

3    activity.So in talking about all these other bad

4    acts, the statute limits that.  And if we look at

5    Section 1961, subpart 1, it defines racketeering

6    activity clearly.  And so that activity, which the

7    statute defines as racketeering activity, is the only

8    information that we may bring in to prove that

9    element, which would then be res gestae.

10           I think that the way that the indictment is

11   charged, and the breadth of VICAR and RICO in

12   defining racketeering activity does -- indeed, I

13   agree with Mr. Castle -- render a lot of what may

14   otherwise be 404(b) evidence, prior bad acts.

15   Instead, res gestae of the crime, because it gives

16   the background of how the United States proves the

17   element that the enterprise engaged in racketeering

18   activity.

19           So I think that other contexts, certainly

20   what the defense is asking for, may be properly

21   subject to Rule 404(b).  In this case, it is not.

22   Granted -- I mean, of course, the United States

23   understands that this Court still must determine that

24   it's admissible under Rule 403, as that's understood.

25   But the rules require the United States to provide a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    list of Rule 404(b) activity it intends to present

 2    against the defendant.

 3            THE COURT:  Well, the problem is that I've

 4    got to sort of tee things up so that it's helpful to

 5    me in making determinations that I can see are going

 6    to come.

 7            And Mr. Castle's point about, if we leave

 8    all this dispute for trial, which is what I hear the

 9    suggestion is, is we're going to take the position

10    none of this is 404(b).  We're going to take the

11    position it's all res gestae, and so we don't have to

12    give it any notice under Rule 404(b)(2)(A), then it

13    seems to me we're kicking the can down the road, and

14    we are going to make it more difficult to try the

15    case.Generally, we front-load this by pushing all

16    these issues to the motion in limine stage.  So that

17    we can have a robust debate, I can give more informed

18    rulings, and the Government doesn't have to deal with

19    the evidence maybe being excluded because of lack of

20    reasonable notice.  So my experience has been, with

21    the Government, is that the Government usually works

22    with everybody -- court, defendants -- to front-end

23    load the debate, so that we can tee these issues up.

24    It's not a matter of -- it's not a matter of forcing

25    the Government to give evidence.  Because they've got

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1676

```
 1    the evidence.  They know everything that's bad in the
 2    documents.  It's instead saying:  Here's the acts
 3    we're going to prove.
 4            How do you deal with just the practical
 5    mechanics of what you're proposing, is that it's
 6    going to delay the trial and take a lot of issues
 7    that normally we deal with motion in limine and push
 8    them to trial?  It seems like that's not a good way
 9    to run the trial from anybody's standpoint.  And it
10    puts your evidence at risk of you guessed wrong, it
11    is 404(b), and not something that I consider to be
12    res gestae.
13            MR. BECK:  Well -- and I certainly
14    understand the Court's position.
15            THE COURT:  Why don't we do this:  Why
16    don't you think about that over lunch.  Think about
17    if you've got a proposal.  Because I'm not forcing
18    you to produce evidence.  I'm just saying, can you
19    list out for the defendant:  Here's where we're going
20    to come after you at, I'm thinking of a single
21    sentence.  And, that way, we can front-end load these
22    motions in limine.  Because it seems to me we're
23    better off getting that decided before trial.
24            All right.  Think about that over lunch.
25    See you in about an hour.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

```
 1                  (The lunch was held from 12:31 p.m. to 1:52
 2      p.m.)
 3                  THE COURT:  All right.  I was trying to
 4      massage something from the Government.  Was I
 5      successful?
 6                  MR. BECK:  You weren't.  I understand --
 7      you know, I mean, it's one foot or the other.  The
 8      rules are in place for a specific reason.  Evidence
 9      is either 404(b), or it's res gestae, or other
10      evidence.  Where it is 404(b), the rules require the
11      Government to provide notice.  Where it's not, there
12      isn't notice required.
13                  And I understand Mr. Castle's arguments
14      that they're going to have to file a lot of motions
15      in limine.  But a lot of these defendants in here --
16      most defendants have a couple of counsel.  They've
17      reviewed discovery.  What we're going to be using is
18      in discovery.  And so I would assert that it's easier
19      for -- I'm not saying it's easy.  But they're at an
20      advantage in filing those motions.
21                  THE COURT:  Why are they at an advantage?
22      You know what you're going to prove.  Why are they at
23      an advantage?
24                  MR. BECK:  They have discovery.  They know
25      what refers to their clients.  They know the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1678

1    discovery for their clients.  And so, in preparing

2    for trial, they should be considering what evidence

3    they contend shouldn't be admitted.  And instead of

4    three Government attorneys, who now have tons and

5    tons of obligations to review other evidence and

6    prepare Brady, Giglio, Rule 16 reviews, as well as

7    our motions in limine, our pretrial motions,

8    preparing those for all of the defendants, the rules

9    place the burden on the defendant to come forth and

10   object to that evidence.  I think the motions in

11   limine are there for a reason.

12          Now, I anticipate that there will be

13   motions in limine.  There will be some 403 rulings,

14   and some disputes.  Whether it's res gestae or Rule

15   404(b), and I anticipate that there will be trial

16   briefing -- a trial brief -- that will lay out some

17   of these issues for the Court, so that if we get to

18   trial, and the Court's faced with an objection, the

19   Court will be educated on the issue from the trial

20   briefs.

21          So I'm not saying the United States is just

22   going to sit on its hands and wait till trial for the

23   Court and the United States to be bombarded with

24   this.  I think it's ripe for a bench brief for trial.

25   So I don't want to give the impression that we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1679

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135680

```
 1    just going to sit there, and trial is going to linger

 2    on because of all these objections.  I think that all

 3    counsel here will educate the Court in preparation

 4    for that trial and those issues.

 5             And I'll reiterate, I don't want us to lose

 6    focus, that certainly not everything is, perhaps,

 7    Rule 404(b); that the statute makes clear what is

 8    racketeering activity.  And the United States has to

 9    prove that the enterprise engaged in racketeering

10    activity.  So --

11             THE COURT:  Of the movants that are here in

12    paragraph 10 of their motion, the movants, how many

13    are in the first trial?  That's going to require me

14    to make too much thinking.

15             MR. BECK:  No, that's fine.

16             THE COURT:  People were raising their

17    hands, and that is going to require me to think.  It

18    looks like about three, four.  Don't raise your hands

19    twice.  If you're not in paragraph 10, don't raise

20    your hands.  How many of you are in paragraph 10?

21             MR. BECK:  It looks to me like there is,

22    four plus the movant.

23             THE COURT:  So it looks like there is five.

24             All right.  Anything else on this motion,

25    Mr. Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1680

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136

```
 1                MR. BECK:  No, Your Honor.

 2                THE COURT:  All right.  Thank you, Mr.

 3    Beck.

 4                Mr. Castle is teed up to argue it.  Anybody

 5    else want to say anything before Mr. Castle gets the

 6    final word?

 7                All right.  Mr. Castle.

 8                MR. CASTLE:  I appreciate it.  I don't get

 9    the final word in my own home.  It's nice to have a

10    place where I get it.

11                THE COURT:  We all become litigators for

12    some reason.

13                MR. CASTLE:  That's true.

14                What the Government is arguing is that the

15    burden should be on the defense to file motions in

16    limine.  That would require two waves of them.  One

17    based upon the discovery we have, and then second of

18    all, one that's based upon the disclosures that will

19    happen two weeks before trial.  That would be two

20    different waves.  The first wave would be

21    overinclusive because we'll be moving in limine to

22    exclude evidence that the Government has no intention

23    of even offering.  So we're creating unnecessary work

24    for everyone involved.

25                And we have to remember that once, at least
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1681

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137682

1    on the briefing schedule that we have now, that takes

2    a while to get everybody briefed.  I know the Court

3    could probably condense that.

4             But we're going to have a lot of work to do

5    in the last two weeks before the trial.  The defense

6    attorneys are going to be scrambling to investigate

7    and analyze the disclosures that the Government is

8    withholding until two weeks prior to trial.  That's

9    obviously their right, and the Court has given them

10   that authority.  But I don't think that because they

11   created their own problems, because they've decided

12   not to disclose, that somehow that is a consideration

13   in deciding what's fair here.

14             I misspoke earlier when I said it was --

15   they had to prove pattern of racketeering activity;

16   they just have to prove racketeering activity.  I'm

17   not sure that's a distinction, really, with much

18   significance for this argument.

19             Once again, the logic is that is faulty,

20   that because it's essentially acts that they're going

21   to prove to prove an element of the offense, they

22   don't have to give notice to the defense.  That's --

23   I think I already argued it -- it's contrary to basic

24   notions of due process.

25             I don't know if the Court has any other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    questions.

 2            Oh, I did have one other comment.  I think

 3    there are cases in which the discovery and Jencks Act

 4    disclosures could be enough.  And the Davidoff case

 5    talks about a couple of cases where that was enough.

 6            But that's not the case here.  We're not

 7    talking about a illegal reentry, or, you know, a more

 8    simpler -- a bank robbery case that's in federal

 9    court, where it's pretty easy to figure out, okay,

10    they're going to bring in the prior two times the

11    person illegally entered the country or prior bank

12    robberies.Here, because the indictment talks about

13    everything from something as somewhat amorphous as

14    intimidation or tampering with witnesses, which can

15    mean almost anything in the context of a prison

16    setting, all the way to specific acts that they need

17    for a specific listing of what noncharged

18    racketeering acts our clients are being -- need to

19    meet at trial, I think is appropriate.

20            MS. JOHNSON:  Your Honor, may I add

21    something?

22            THE COURT:  Certainly.

23            MS. JOHNSON:  Your Honor, if you take Mr.

24    Beck's argument that they have to prove racketeering

25    activity, and that's defined in 18 USC is 1961, but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 139 9684

```
 1   if you look at the definition of racketeering
 2   activity, it's extensive.  It includes, I would say,
 3   probably more than 50 offenses that could be
 4   introduced to support the element of racketeering
 5   activity.
 6          And so what you're going to have is the
 7   defense filing motions in limine that may waste the
 8   Court's time and the parties' time.  For example, had
 9   I known, and had I had the courtesy of being told
10   that they weren't going to be introducing the
11   machete, I wouldn't have wasted the Court's time
12   asking for that information.So if we narrow down this
13   evidence, what acts are they going to introduce to
14   support the racketeering activity, it would narrow
15   the Court's focus, the parties' time.  We're
16   essentially 60 days out, eight weeks out from trial.
17   Our motions in limine are due June 6.
18          So I would respectfully ask that the Court
19   order the Government to provide the defense with a
20   list of these acts that they're going to introduce
21   that would comprise the racketeering activity.
22          THE COURT:  Thank you, Ms. Johnson.
23          Did you have anything else you wanted to
24   add, Mr. Castle?
25          MR. CASTLE:  Your Honor, the parties talked
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1684

1    about timing of disclosures.  But the parties did

2    discuss it during the lunch recess.  We did not come

3    to an agreement -- I know that might be shocking --

4    but we had asked for 30 days prior to the motion in

5    limine deadline.  Well, that was five days ago.  So

6    that's not going to work.

7            My suggestion -- I would be amenable to one

8    of two situations, or suggest at least two different

9    avenues.  In the Government's response, they

10   indicated that if the Court was going to order

11   disclosures, it should do that 30 days prior to

12   trial.  If the Court were to do that, what we would

13   ask is -- that's also the deadline for motions in

14   limine.  And we can't file a motion in limine on an

15   act that we just got notice of that day.  So we would

16   ask for two weeks after that to file motions in

17   limine based upon that listing.  Or, in the

18   alternative, which is a better alternative in our

19   opinion, is to order disclosure in 10 days, and then

20   we'd file our motions in limine 30 days prior to

21   trial as currently scheduled.

22           THE COURT:  All right.  Thank you, Mr.

23   Castle.

24           Well, here's what I -- at some point, I got

25   to think about my ability to manage this case.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1685

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 141 1686

1   so I'm reluctant to kick the can down the road, and

2   to have a lot of issues in trial and trying to sort

3   it out there.  I think you're going to get a

4   better -- I hope you'll get a better judge, and

5   you'll get a better judge trial, if I front-end these

6   issues, rather than kick them down the road.

7          And so I understand the Government's

8   position that there is no 404(b) evidence in this

9   case, or it's very little.  But I'm reluctant to kick

10  that issue down the road and assume the Government's

11  case, knowing that I'm still going to have to decide

12  these issues; that these issues are going to have to

13  be raised.  But at the same time, I don't want to put

14  the Government -- they may be right, and I think I

15  can figure that out pretty quickly.

16         So here's what I'm going to do:  I'm going

17  to require the Government to -- we'll talk about what

18  this is going to look like, because I don't think it

19  needs to be much -- but I do think I need five

20  letters to the five movants that are in the first

21  case.  Let's do a test run here.  Let's see what this

22  looks like.  Maybe with a heavy dose of guidance in

23  those cases that will be enough to solve things.

24         I think we made a lot of progress with some

25  early CIs, me sorting out sort of the legal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1686

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 142

1   differences, and things like that.  So I would

2   propose this:  Let's not move the motion in limine

3   deadline.  The Government give five letters in ten

4   days.  Then the defendants get their motions in, make

5   them the best they can, based upon what it is.  This

6   is what I'm expecting, is just a letter.  We'll file

7   the letter.  And just list it out.  I mean, if you've

8   got a drug transaction, list it out.  If you've got,

9   you know, something else:  Guns, cellphones, whatever

10   sort of crime, wrong, or other sort of propensity

11   evidence.

12         I understand the Government's position, it

13   may be all res gestae.  I understand their position

14   that it may go to proving racketeering activity.  But

15   I'd like to have that list, and send it over.  Those

16   defendants file their motions in limine.  Let's get

17   after it.  And we'll sort it out.  And I think that

18   may give guidance to everybody else.  And that way,

19   you don't have to do it on everybody.  But we'll get

20   it started.  And if we get into a roll, then I think

21   it's clear.  If it looks like I'm having to make a

22   lot of individual determinations, then we may expand

23   the requirement.  But let's give that a try.

24         Mr. Castellano.

25         MR. CASTELLANO:  Your Honor, I just don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1687

1   know if we're going to be able to make 10 days.  We

2   have a whole list of things the Court has already

3   ordered in this case in the next 10 to 14 days that

4   involves other discovery reviews.

5           The other issue that comes up is this may

6   force an early disclosure of Jencks material,

7   depending on what certain people say, and what that

8   evidence will be at trial.  So we're going to run

9   into some other issues there.

10          THE COURT:  Well, I don't think you have to

11  disclose any Jencks material.  I'm not requiring you

12  to.  But if you know that you've got -- if you know

13  in some of the Jencks material you know you've got a

14  bad act -- you don't have to disclose the sources of

15  it; I'm not requiring that sort of disclosure -- you

16  can just list it out.  And the defendant can take

17  that and say it should be out.  I mean, you've got

18  give them enough so they know what the incident is.

19  But you don't have to disclose any material with

20  this.  I'm not requiring you to sit down and Bates

21  stamp it and things like that.  Just give them a

22  sentence, but enough of a sentence so they know what

23  it is, so they can move on.  Ten days isn't perfect,

24  but it's only five -- I think I'm going to stick with

25  that to keep these deadlines in place.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1688

```
 1              All right.  The Government didn't like it.
 2    You don't like it either, Ms. Harbour-Valdez?
 3              MS. HARBOUR-VALDEZ:  Your Honor, I'm happy
 4    with that.
 5              I just wanted to make a clarification.
 6    There were two movants on this motion; that was Billy
 7    Garcia and Edward Troup, and there were four others
 8    who joined, so there are six total:  Christopher
 9    Chavez, Joe Gallegos, Javier Alonso, and Santos
10    Gonzalez.
11              THE COURT:  All right.  So I'll make it
12    six.
13              All right.  Well, I've got to manage this
14    case.  And this is where I maybe have an interest.  I
15    think I can order it under the power of 404(b), that
16    it's got to be reasonable notice.  So I think, if
17    we're going to litigate this issue, I've got to
18    impose my own idea of what reasonable notice is.  So
19    I think that minimizes the burden to the Government,
20    and gets some of the issues teed up, so that we can
21    have a trial that can move along at a -- without
22    breaking up every few minutes to try to figure out
23    what the evidence is going to be.
24              So I'm granting that in part and denying it
25    in part, and some of it is without prejudice to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1689

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145

 1    renewing down the road.

 2            All right.  Mr. Lowry, are you next?  Ms.

 3    Duncan?

 4            This one is labeled as a sealed motion.  Is

 5    this going to be one of your motions, Mr. Beck?

 6            MR. BECK:  Yes, Your Honor.

 7            THE COURT:  All right.  Is there anything

 8    here that we need to be sensitive about in talking --

 9            MR. BECK:  I think the way that -- I think

10    the way I anticipate we're handling this will take

11    care of that.  I think Ms. Duncan and I --

12            THE COURT:  Y'all have agreed on it?

13            MR. BECK:  Yeah.

14            THE COURT:  Okay.  All right.  So

15    understanding it's sealed, and trying to be sensitive

16    to the Government's needs here, you want to state

17    your agreement, Ms. Duncan?

18            MS. DUNCAN:  Your Honor, why don't I --

19    yeah, I can start, and then Mr. Beck can correct me

20    if I'm wrong.

21            My understanding of our agreement -- we've

22    agreed on everything except for three of my requests.

23            On our request B, which is on page 11 of

24    our motion to compel, this is a list of documents

25    relevant to a particular confidential informant.  My

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1690

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 146

1    understanding is that the Government has agreed to

2    produce the records that we have requested with two

3    caveats.  One is that we had asked for medical and

4    psychological records for this particular informant.

5    And the Government cannot disclose that to the

6    defense without a court order.  So we'd be asking the

7    Court to order that, so it could be disclosed to us.

8              THE COURT:  All right.  Would y'all prepare

9    an agreed order?

10             MS. DUNCAN:  We would, Your Honor.

11             The second part of it is, we'd asked for

12   prison phone calls and visitor logs for this

13   particular informant from February 1, 2005, through

14   September 14, 2016.  The Government has agreed to

15   produce that, but they've asked that they be given 30

16   days to produce that part of our request, because

17   it's going to take some effort to put it together.

18   And we've agreed to that.  The rest of the request

19   would be within the 14-day deadline that the Court

20   had issued earlier.  But that particular part of the

21   request would be 30 days.

22             The next agreement -- and I'll just assume

23   that Mr. Beck will jump up.

24             THE COURT:  He jumped up, but he sat back

25   down.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1691

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 147

```
 1              MR. BECK:  Yeah, I wasn't sure if she
 2   wanted me to jump up.  And it's not a disagreement.
 3   I think she just misstated the dates.  It was
 4   February 2015, and I think she said 2005.  That's why
 5   I sat back down.  It was pretty semantic.
 6              MS. DUNCAN:  That's what I meant.
 7              THE COURT:  All right.
 8              MS. DUNCAN:  Our next request, which was
 9   found on page -- actually there is three requests,
10   Your Honor, for three different confidential
11   informants.  It's our requests C through E, found on
12   pages 12 through 13 of our motion.  And it is my
13   understanding that the Government has agreed to
14   produce this information within 14 days, as it is
15   Giglio.
16              MR. BECK:  And that's subject to,
17   obviously, the Court's Giglio ruling.  We understand
18   how the ruling stands now.  And we both agree that if
19   that changes, then that changes.
20              THE COURT:  Okay.
21              MS. DUNCAN:  The next is request number F,
22   on page 13 of our motion.  And that was for
23   recordings of all phone calls involving Mr. Baca, and
24   also all recordings of video visits at the Dona Ana
25   County Detention Center.  I clarified with Mr. Beck
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1692

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1693

1    that we're just asking for recordings that are in the

2    Government's possession.  We're not asking them to go

3    get evidence for us.  My understanding is the

4    Government has agreed that it will produce any

5    additional recordings of phone calls or video visits

6    involving Mr. Baca.

7           THE COURT:  Is that your understanding as

8    well, Mr. Beck?

9           MR. BECK:  Yes, Your Honor.  I'm sorry, I

10   was just jumping up if I disagreed.

11          THE COURT:  All right.

12          MS. DUNCAN:  The next request we have is

13   our request G, which is on page 14 of our motion.

14   And that was for any tangible evidence or materials

15   the Government collected during the searches of Mr.

16   Baca's person or his cells over the years, and all

17   documents related to the collection of that evidence

18   or material.  We have clarified with the Government,

19   we're just seeking documents that were collected

20   while Mr. Baca was incarcerated in the New Mexico

21   Department of Corrections.  And with that

22   clarification, I understand the Government has agreed

23   to this request.

24          THE COURT:  Is that correct, Mr. Beck?

25          MR. BECK:  Yes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1693

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 149694

```
 1              THE COURT:  All right.  On request number

 2    I, which is on page 16, Mr. Baca -- we've been able

 3    to get that information, so it's now moot, and so Mr.

 4    Baca has withdrawn that request.

 5              For request number J, which is SNM

 6    recording.  There was disclosed in discovery a report

 7    of an SNM yard recording allegedly between Mr. Baca

 8    and Mauricio Varela.  It's my understanding that the

 9    Government has agreed to reach out to the Department

10    of Corrections to find out if it exists.  And if it

11    does, to disclose that to us.

12              MR. BECK:  That's right, Your Honor.

13              THE COURT:  All right.

14              MS. DUNCAN:  Request number K, on page 17,

15    was a request for all documentation related to the

16    transfer of Mr. Baca from Southern New Mexico

17    Correctional Facility to PNM Level 6 in August 2013.

18              The next request is for the same thing,

19    with a transfer from the same facility to PNM Level 6

20    in 2011.  And the Government has agreed to disclose

21    that information to the extent that it already --

22    it's disclosed some information that's responsive to

23    these requests, Your Honor, but it's agreed to

24    disclose all information relative to these requests.

25              MR. BECK:  That's right, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1694

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150 0695

```
 1              THE COURT:  All right.
 2              MS. DUNCAN:  So that would be K and L.  And
 3     I think that is the extent of our agreement.There are
 4     three things still outstanding.
 5              THE COURT:  All right.
 6              MS. DUNCAN:  I don't think we had an
 7     agreement -- the last one was on the recordings of
 8     Mr. Marcantel.  We're going to argue that.
 9              MR. BECK:  Right.
10              THE COURT:  All right.  Do you want to
11     argue it?
12              MS. DUNCAN:  So I'll start with our very
13     first request, Your Honor, which was on page 8 of our
14     motion.  And, Your Honor, this is the request that we
15     argued yesterday with respect to Mr. Perez' motion to
16     compel.  It's the recording devices that were used.
17     And I just -- I understand the Court has ruled, and I
18     just want to make a complete record --
19              THE COURT:  Certainly.
20              MS. DUNCAN:  -- on our request, because I
21     worry that I wasn't clear on what I was asking for,
22     and why I was asking for it.
23              What we're really seeking access to is the
24     metadata that are on the recording devices, data that
25     would show us whether -- not only whether the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recordings are the results of an informant turning it

2    on and off, or was a malfunction, but would also give

3    us information, such as the dates on which particular

4    recordings were made, and the time that those

5    recordings were made.

6            And that information is relevant to us,

7    Your Honor, because the way that the conversations

8    were recorded, they did start and stop in the middle

9    of conversations, and then they would resume.  So

10   knowing that the conversations covered one topic, but

11   there was a three-hour break in-between is relevant

12   for us to determine whether or not these recordings

13   are fair and accurate.  So if, for example, they

14   start talking about topic A; the informant turns off

15   the recorder, because he doesn't like what's being

16   said, kind of moves the conversation along, and turns

17   it back on a certain period later, that's exculpatory

18   and relevant to us in impeaching this particular

19   informant.  And it's disclosable under both Brady and

20   Giglio.  This is information that could be

21   exculpatory, but it certainly is relevant into the

22   impeachment, and it's covered by Rule 16(3)(1), which

23   allows examinations of items, where the items are

24   material to preparing the defense.  And so we would

25   ask that we be allowed to have access to those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1696

1    recording devices for those particular reasons.

2         THE COURT:  I guess I was thinking these

3    are little bitty recording devices, after the

4    description yesterday.  Do they actually generate

5    what I would think of in my civil discovery cases as

6    metadata?

7         MS. DUNCAN:  Your Honor, I don't know.  I

8    haven't seen the recording devices.  I assume that

9    they're sort of like -- I have a digital recorder

10   that I use sometimes for interviews.  And when you

11   look, the digital recorder does save metadata.  If

12   you look at the recording, it will show you the date

13   and the time of the recording, in addition to the

14   length of the recording.  So because I don't know

15   what recorders they used, I don't know if these

16   recording devices do the same thing.  But I assume

17   that they do.

18        THE COURT:  All right.  Anyone else, any of

19   the defendants, before I hear from Mr. Beck?

20        All right.  Mr. Beck, if you want to argue

21   on that.  Do you know if these machines generate

22   metadata?

23        MR. BECK:  I don't believe that they do.  I

24   think -- again, I want to be careful here -- but my

25   understanding is that they don't.  I think that,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1697

```
 1    probably, the Court's idea is probably more realistic
 2    of what these devices are.
 3              THE COURT:  Would you be willing to check
 4    after the hearing, and send Ms. Duncan a letter
 5    saying yeah or nay?
 6              MR. BECK:  I will.
 7              THE COURT:  Copy me in as well.
 8              MR. BECK:  That's fine, Your Honor.
 9              THE COURT:  All right.  Anything else on
10    that, Ms. Duncan?
11              MS. DUNCAN:  No, Your Honor.
12              THE COURT:  All right.  Ms. Fox-Young wants
13    to, I think, help here.
14              MS. FOX-YOUNG:  Your Honor, we would just
15    make the same request, that the Government check with
16    respect to the devices that we discussed and argued
17    about yesterday that were used to record Mr. Perez.
18    Our expert, in his declaration he spells this out,
19    does think that there is metadata that would be
20    useful for all the reasons that Ms. Duncan described.
21    And we'd like the Government to make the same inquiry
22    with respect to that device or devices.
23              MR. BECK:  That's fine.
24              THE COURT:  All right.  Mr. Beck has agreed
25    to do that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  Anything else, Ms. Duncan?

 2              MS. DUNCAN:  Not on that point, Your Honor.

 3              THE COURT:  All right.  So at the present

 4    time, I'm not going to order any production of the

 5    machine.  But if it doesn't produce metadata, then

 6    that probably brings that inquiry to a conclusion.

 7              All right.  Ms. Duncan.

 8              MS. DUNCAN:  Your Honor, actually in

 9    looking at my motion, I realize I skipped over some

10    categories of agreements that we had.

11              THE COURT:  All right.  Do you want to put

12    those on the record then?

13              MS. DUNCAN:  Please, on page 9, we'd ask --

14    as we discussed yesterday, several of the informants

15    used Government-provided cellphones to record

16    conversations with other defendants and other people,

17    and text messages.  And we'd asked for copies of all

18    text and photographs that were found on those

19    cellphones.

20              And speaking of Mr. Beck, the Government

21    has represented we have all the texts.  And at this

22    point, we don't have anything to challenge that, so

23    we accept the representation.

24              We do not have all the photographs.  So Mr.

25    Beck -- I think the agreement is that the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1699

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155700

 1   will produce whatever photographs are found on those
 2   phones.  Although there is a concern that the phones
 3   may no longer be in the Government's possession.  So
 4   I think Mr. Beck was going to look into that, whether
 5   these three cellphones were still in its possession
 6   and let us know.
 7           THE COURT:  All right.  Is that your
 8   agreement, Mr. Beck?
 9           MR. BECK:  Yes, Your Honor.
10           THE COURT:  All right.
11           MS. DUNCAN:  With respect to the three
12   cellphones, if they are still in the Government's
13   possession, my understanding is the Government has no
14   objection to us doing a physical review of those
15   cellphones, along with our expert.  And if they're
16   not in the Government's possession, we would
17   appreciate it if the Government would put that in
18   writing for us.
19           THE COURT:  Is that your agreement, Mr.
20   Beck?
21           MR. BECK:  Yeah, that's the agreement.
22           MS. DUNCAN:  Then there was one last
23   category.  There were three other categories of
24   information that we had asked for.  It was
25   documentation related to the use of the recording

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1700

1   devices.  We had asked for copies of logs or similar

2   materials documenting the use of those devices,

3   materials related to the instructions and monitoring

4   controls that were used by the FBI, Department of

5   Corrections or any agent of the United States

6   Government regarding the use of the cellphones by the

7   informants, cooperating witnesses, and logs or

8   reports of telephone calls between these cooperating

9   witnesses and members of law enforcement during the

10  period that they were -- the informants were

11  recording these conversations.

12          The Government has represented that none of

13  these materials exist; that the only sort of

14  instruction that were given were just verbal

15  admonishments by agents.  I accept that

16  representation, but I'd ask that, should the

17  Government discover that that was wrong, that these

18  materials do, in fact, exist, that it alert us to

19  that fact, so that we can bring it to the attention

20  of the Court, and if the Government is not willing to

21  produce it.

22          MR. BECK:  No objection.

23          THE COURT:  All right.  So ordered.

24          MS. DUNCAN:  Your Honor, the next category

25  we disagree on is our request number H, which is at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1701

 1   page 15 of our motion.  And we have requested housing

 2   records for PNM Level 5 and PNM Level 6, from August

 3   1, 2013, through March 8, 2014, which shows the

 4   identity and location of all the inmates who were

 5   housed at those facilities.

 6          And we'd asked for this because the

 7   Government's allegation, as we understand it, against

 8   Mr. Baca in the Molina murder, is that Mr. Baca

 9   somehow arranged for paperwork showing that Mr.

10   Molina was an informant, to be transferred from PNM

11   Level 6 to PNM Level 5, and then that paperwork was

12   transferred from PNM Level 5 to Southern New Mexico

13   Correctional Facility, which is where Mr. Molina was

14   murdered.

15          In order to rebut that allegation, we need

16   these housing records, because what they would show

17   is that Mr. Baca was not housed near any of the

18   people who were being moved between these different

19   levels, between PNM Level 6 and PNM Level 5.  So that

20   the Government's theory doesn't hold water.  So we

21   picked this period of time because Mr. Baca was moved

22   to PNM Level 6 in August of 2013.  And then Mr.

23   Molina was murdered on -- I believe it was March 7.

24   So we're asking for the day after that murder.

25          THE COURT:  All right.  Mr. Beck?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1702

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158703

 1          MR. BECK:  Your Honor, I think in their

 2   reply the defendant responds that "the information

 3   Mr. Baca seeks is necessary for him to establish his

 4   location relative to others the Government alleges

 5   were involved in the transfer of the paperwork at PNM

 6   prior to the murder."

 7          I think there is a more targeted way to do

 8   that.  And that would be to identify certain persons

 9   that they believe -- I think this kind of goes back

10   to the first discovery motion we ever talked about,

11   which was that they identify suspects, and give us

12   articulable facts about who those suspects are, we'd

13   provide them with the information.  I think that

14   would be a more targeted and proper request, as

15   opposed to this, which I view as a fishing

16   expedition.

17          So I think looking at all the housing

18   records from PNM Level 5 and Level 6 for almost an

19   entire year goes beyond what the criminal discovery

20   rules allow.  That's a fishing expedition.  I think,

21   if Mr. Baca can articulate certain persons he

22   believes are suspects, and request their housing

23   records, or perhaps request where they are in the

24   pod, in which pod, I think that may be a proper

25   request.  But I think this request is overbroad under

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1703

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159 9704

```
 1    the criminal discovery rules and Rule 16.
 2              THE COURT:  I would envision that, if you
 3    were to get what you're asking, it would be a long
 4    list of names, with some cells, and something like
 5    that.  It would be a lot of information.  That's a
 6    pretty broad period of time.  I would think, if
 7    you're going to raise the theory of somebody else did
 8    this, that you've probably got a list of suspects,
 9    right?
10              MS. DUNCAN:  Your Honor, our theory is not
11    that somebody else did this, our theory is this never
12    happened.  So, I mean, the Government has alleged
13    suspects in this case.  But that's not really what
14    we're looking at.  What we're looking at is it's not
15    possible.  What the Government has alleged isn't
16    possible.  And so the housing records would show
17    that.  They would show that -- you know, they would
18    show that Mr. Baca was never next to any of the
19    people that the Government is alleging moved
20    paperwork from PNM down to Southern.  But also that
21    the people who are next to Mr. Baca were never next
22    to the people who moved from PNM Level 6 down to
23    Southern.  So that's why it is a broad net, but it's
24    because this allegation is somewhat amorphous.
25              And what I don't want to happen is we make
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1704

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 160705

1  this defense at trial, and the Government comes up

2  with someone else who we weren't aware of and didn't

3  know who to ask for, who it was PNM Level 6 or PNM

4  Level 5 at the time.  So this just gives us a full

5  picture of who was there.  And that will enable us to

6  rebut this theory, which we believe is fundamentally

7  untrue.

8        THE COURT:  Well, if you were at trial

9  today, and you wanted to make this argument to the

10  jury, how many examples would you want to go through

11  to show that this was impossible?

12        MS. DUNCAN:  I think we could summarize.

13  We could summarize where people -- it's hard for me

14  to answer that question without knowing what the

15  populations were like.  I think that the population

16  can be somewhat stable.  So it may be fairly easy for

17  us to summarize this information in a way that the

18  jury could understand.  But I think -- so this is

19  just knowing this whole period -- I mean, I think it

20  is a fairly easy request to fulfill.  The Department

21  of Corrections keep these records.  And it's really

22  up to the defense to distill it in a way that's

23  useful to us.  But it's critical evidence for Mr.

24  Baca, given that this is the Government's sole theory

25  of how he's somehow responsible for the Molina

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1705

 1   murder.

 2             THE COURT:  Well, I think it is an awfully

 3   broad request.  Here's what I'm inclined to do:  Take

 4   ten names that you think would be most likely in

 5   play, and send them over.  And, Mr. Beck, you give

 6   the information for those ten people, rather than --

 7   I don't know how many are there.  And then, Mr. Beck,

 8   if y'all decide you're going to throw in somebody

 9   else, then I'll order the Government to disclose

10   that -- any additional names.  If you look at the

11   list, and you think you're going to advance other

12   people, then you'll need to disclose that name and

13   provide that information.  Otherwise, I think just

14   ten names, and I think you can make your point with

15   that.  And the Government can't surprise you with

16   another name at trial.

17             MR. BECK:  Understood.

18             THE COURT:  All right.

19             MS. DUNCAN:  I guess an alternative to that

20   request, Your Honor, then would be to ask for the

21   housing records for everyone, so from the same

22   period, August 1, 2013, until March 8, 2014, for the

23   pod at PNM North, where Mr. Baca himself was held,

24   which would tell us who was in that pod with him for

25   that certain period of time.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1706

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 162707

```
 1              THE COURT:  Well, let's do what I
 2    suggested.  I'll deny it without prejudice.  Let's
 3    see what this gets you.  It seems to me that's a lot
 4    of information, and I think you can make your point
 5    that he just wasn't near anybody, with you selecting
 6    some key people and making your point.  And if
 7    they've got somebody else that they think you were --
 8    that was near Mr. Baca, then they need to tell you
 9    that name.  But he will give you ten, so that you can
10    say he wasn't near this person, wasn't near this
11    person, wasn't near this person.  And if they're
12    going to come in and say, Yeah, but he was here,
13    they've got to give you that information.
14              MS. DUNCAN:  Understood.
15              So we have one last request, Your Honor,
16    that's still in dispute.  And that is, in March 2014,
17    shortly after the murder of Javier Molina, Mr. Baca
18    and other defendants were moved out of state to
19    out-of-state prison facilities.  At the time of their
20    transfer, then Department of Corrections Secretary
21    Gregg Marcantel held some public speeches.  First, to
22    Mr. Baca, Mr. Mauricio Varela, and I believe
23    Mr. Daniel Sanchez.  And then to a bunch of other
24    inmates who the Government alleges are SNM members,
25    where Mr. Marcantel was lecturing about he perceived
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163 of 708

 1   to be their conduct, and what his expectations were

 2   going to be in the future.

 3            It's our understanding that --

 4            THE COURT:  These were prompted by what?

 5            MS. DUNCAN:  The murder of Javier Molina in

 6   March 2014.

 7            It's our understanding that these speeches

 8   were video recorded as part of the Behind Bars

 9   television A&E television series.  So we've asked for

10   production of those, the videos of Mr. Marcantel's

11   meeting with Mr. Baca and other alleged members of

12   SNM at PNM.  And this is relevant as Giglio.  We

13   expect Mr. Marcantel to testify, the alleged victim

14   of -- I believe it is Count 9 of the indictment.

15            So it's information that's relevant to

16   impeach whatever testimony he may give at trial.

17   Because it's our understanding from other discovery

18   during these speeches, Mr. Marcantel made disparaging

19   remarks about Mr. Baca and others.

20            THE COURT:  Mr. Beck, your thoughts?

21            MR. BECK:  Well, I guess I don't see where

22   it's impeachment information.  It seems like it would

23   be statements by Mr. Marcantel.  If he is a witness

24   in the Government's case, I understand how that would

25   be Jencks material.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1708

```
 1              THE COURT:  Is he likely to testify?

 2              MR. BECK:  I don't think we've made that

 3    decision.  But, I mean, we haven't ruled it out.  So

 4    I think, at this point, maybe 51 percent.  So it's

 5    pretty close.  But he may be a witness.

 6              THE COURT:  In favor of testifying?

 7              MR. BECK:  Right, yes.

 8              MS. DUNCAN:  And, Your Honor, if I could

 9    just respond briefly.

10              THE COURT:  Did you have anything else?

11              MR. BECK:  I don't think -- no, you weren't

12    cutting me off.  I think I was done.  I guess I'm

13    trying to put myself, in Your Honor's words, in the

14    shoes of the defense attorney.  And I think Ms.

15    Duncan may help us with that.  But I don't see how

16    disparaging remarks about a defendant and a prisoner

17    would be impeachment information.  I guess it depends

18    on your view of impeachment information.  But I think

19    that's the Government's position is, if he testifies,

20    it's Jencks.  If not -- and I think it's -- if it was

21    on an A&E show, it seems like it could be gathered

22    from our sources.  But I would trust that they've

23    probably explored that.

24              So I think that's all I have to say.  I

25    think you begged me to go on longer than not.  I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1709

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165 of 710

```
 1    sit down.
 2              THE COURT:  All right.  Thank you, Mr.
 3    Beck.
 4              MS. DUNCAN:  Your Honor, it's classic
 5    impeachment information.  It's a Government witness
 6    who is making biased statements against defendants in
 7    this case.  It shows his bias and his animosity.
 8              THE COURT:  What if they don't call him?
 9    Then what is it?
10              MS. DUNCAN:  Your Honor, then I think it's
11    relevant, it's potentially relevant to impeach other
12    Government witnesses.  So Mr. Roy Martinez was
13    present during the second meeting with the larger
14    group, and made statements about his feelings about
15    what Mr. Marcantel had said.  So having those
16    recordings potentially is impeachment of Mr. Martinez
17    about his representations about what happened during
18    that conversation, and also his reaction to Mr.
19    Marcantel's comments.
20              THE COURT:  How many of these lectures or
21    speeches were there?
22              MS. DUNCAN:  There were two.  So there was
23    one that was with Mr. Baca and the other men who are
24    being transferred to out-of-state prisons.  And then
25    the second one was with a big group of people who
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1710

```
 1   were being left behind.  And I believe they were on

 2   the same day.  It was March -- I don't have the date

 3   in here -- but it was March of 2014.

 4            MR. BECK:  Your Honor, I don't want to cut

 5   into Ms. Duncan.  So I think some people at the table

 6   are hearing what she's asking for.  We don't believe

 7   that recordings, audio or video, exist.  We don't

 8   believe A&E had begun recording at that point in

 9   time.  So it may short-circuit to just say that it's

10   the position of the United States that it's not in

11   the United States' possession, including NMCD.  If

12   that changes, I will let Ms. Duncan and the Court

13   know, and we can come back.

14            MS. DUNCAN:  Your Honor, just to add, I

15   think it's possible that it was recorded by a

16   Department of Corrections administration.  It's my

17   understanding that there were recorders present.  So

18   I assumed it was part of A&E, and that may have been

19   a mistake on my part.  But I think, even if A&E

20   hadn't started filming, that it's still possible this

21   exists.  So I'd ask the Government inquire of the

22   Department of Corrections whether or not the

23   administration recorded this as well.

24            THE COURT:  Sounds like you're willing to

25   do that, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1711

1           MR. BECK:  Yes, Your Honor.

2           THE COURT:  And you'll let Ms. Duncan know?

3           MR. BECK:  I will.

4           THE COURT:  If they exist, at the present

5    time, I'm not going to require their disclosure.  I

6    think that it will be Jencks material, would have to

7    be disclosed with Jencks material, if Marcantel

8    testifies.I will ask you, if they exist, Mr. Beck, to

9    review them for any Giglio-Brady material.  I'm like

10   you, I'm kind of hard pressed to see how they would,

11   just visualizing it.  But look at them yourself, and

12   make a Rule 16, Giglio, Brady review, and see if

13   there is anything there.

14          MR. BECK:  If they do exist, I'm happy to

15   talk with Ms. Duncan about that inquiry also.

16          THE COURT:  All right.

17          MS. DUNCAN:  Your Honor, I think that was

18   the last item of dispute.

19          THE COURT:  All right.  Thank you, Ms.

20   Duncan.

21          There was no reply to your motion, was

22   there, Ms. Duncan?

23          MS. DUNCAN:  Yes, Your Honor, there was.

24   It is --

25          THE COURT:  Yes, okay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1712

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 168 of 713

```
 1                All right.  Do you want to argue, Mr.
 2     Lowry, your -- Mr. Baca's motion for a bill of
 3     particulars?
 4                MR. LOWRY:  Yes, I do, Your Honor.  And I
 5     heard Your Honor's comments earlier today that you
 6     hadn't -- given the way these were put on the
 7     schedule, you might not have devoted the full
 8     attention you normally do to these, so I don't know
 9     if Your Honor has any questions or if it's helpful
10     for me to run through some of the underlying evidence
11     to tee this up for you.
12                THE COURT:  Why don't you go ahead.  I've
13     looked at them, but I haven't been able to study them
14     like I normally do.
15                MR. LOWRY:  You know, before we start doing
16     this, Your Honor, could Mr. Beck and I approach, or
17     whoever is going to handle -- and this was, Your
18     Honor, part of the agreement about discussing CIs.  I
19     don't want to discuss anybody unnecessarily, so I
20     would ask to approach.
21                THE COURT:  Okay.
22                (The following proceedings were held at the
23     bench at 2:40 p.m.)
24                MR. LOWRY:  Your Honor, there is a few
25     pieces of evidence in State Police reports that we'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1713

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 169

```
 1   discuss.  Eric Duran, I believe -- again, these are
 2   my -- I strongly believe this -- they were disclosed
 3   on the motion itself.  But I have one that's going to
 4   deal with Sammy Gonzales.  I think was a state police
 5   report.  And they've been disclosed in evidence.  But
 6   I believe in the motion on confidential informants
 7   that the Government indicated they weren't going to
 8   use Sammy Gonzales in the case.  So I don't want to
 9   say his name unnecessarily.  And if the Government
10   has any qualms about it, I'm not going to say that.
11   But I just want to make sure I'm not stepping out of
12   the bounds here, Your Honor.
13           THE COURT:  Do you have any thoughts about
14   what you want, Mr. Castellano?
15           MR. CASTELLANO:  If these are the only two
16   he's discussing -- I mean, for purposes of this
17   argument, we could just call them CW1 or 2 or CI-1,
18   CI-2.
19           MR. LOWRY:  I'll just refer to everybody as
20   a confidential human source, Your Honor.
21           THE COURT:  So you want to call Duran CI-1
22   and call Gonzales the CI-2.
23           MR. LOWRY:  And there might be a Jerry
24   Montoya in there as well.  I'll just -- as I refer to
25   different CIs, I'll just start in serial numbers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1714

```
 1                  THE COURT:  All right.

 2                  MR. LOWRY:  Don't hold me to that

 3      particular list.  But I won't mention anybody by

 4      name.

 5                  THE COURT:  I'm going to need to know to

 6      make an informed decision.  I don't know if y'all

 7      want to give me a sheet of paper afterwards.

 8                  MR. LOWRY:  I'll work with Mr. Castellano

 9      and we'll do that.

10                  THE COURT:  Give me a sheet of paper like

11      we did in Chris Garcia's last week, so I can take it

12      back.

13                  MR. LOWRY:  I'm fine to do that.  Thank

14      you.

15                  (The following proceedings were held in

16      open court at 2:42 p.m.)

17                  THE COURT:  All right.  Mr. Lowry.

18                  MR. LOWRY:  As Ms. Johnson pointed out,

19      this motion for bill of particulars deals with three

20      evidentiary items.  And the first one is really how

21      to define what evidence constitutes an enterprise

22      here.  And the reason we requested a motion for a

23      bill of particulars to identify this is to eliminate

24      undue surprise at trial, and really try to clarify,

25      with some certainty, what the Government's theory of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1715

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171716

1    the case is, so we can prepare a defense as to the

2    enterprise element.

3           So this is just an example of a pattern

4    instruction for VICAR crimes.  And you can see that

5    the Government bears the burden of proving the

6    existence of an enterprise.  And, as we've talked

7    about -- and it came up throughout a number of

8    motions today, even the 404(b) motion -- that one of

9    the things that's concerned the defendants from the

10   start, and what I've briefed here, Your Honor, is it

11   appears that what the Government is attempting to do

12   is establish the existence of an enterprise by merely

13   showing a pattern of racketeering activity.

14          And if you look at the United States

15   Supreme Court opinions, and even circuit opinions,

16   the cases are very clear that in a limited number of

17   circumstances, that's permissible.  But in a case

18   like this, it's not.  And we cite the Tenth Circuit

19   opinion in U.S. v. King, and even the Boyle opinion

20   there is a footnote -- I believe, it's Footnote 4 in

21   the Boyle opinion, which really says, Look, if you're

22   dealing with different individuals at different times

23   and different places, it's not enough just to show a

24   pattern of racketeering activity; that you really

25   need to set -- prove the enterprise separate in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1716

 1 | existence from that pattern.
 2 | And that's been an ongoing struggle in this
 3 | case to try to identify how or what enterprise the
 4 | Government is particularly talking about.  And this
 5 | starts even in the second superseding indictment
 6 | itself.  There is just not much in terms of clarity.
 7 | And if you look at this page -- it's paragraph 2 --
 8 | it says, "The SNM" --
 9 | THE COURT:  This is the indictment you're
10 | showing me?
11 | MR. LOWRY:  Yes, it is, Your Honor.  This
12 | is Document 949, at page 2.  And this is sort of what
13 | we see in terms of the definition of an enterprise.
14 | And, you know, these are sort of the elemental pieces
15 | of the enterprise definition:  "An ongoing
16 | organization that functions as a continuing unit with
17 | a common purpose."  What's left out of here is an
18 | additional requirement that's set out by the United
19 | States Supreme Court in Boyle, is that there be
20 | interpersonal relationships between the memberships
21 | in any kind of criminal enterprise.
22 | So what the indictment went on to say --
23 | THE COURT:  That's certainly been added to
24 | the conspiracy.  Is it added to this as well?
25 | MR. LOWRY:  Well, the 4268 -- well, okay,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1717

1    when you say "conspiracy," Your Honor, do you mean

2    the 1613 conspiracy?

3              THE COURT:  That additional element that

4    you were asking.  That's an element of conspiracy,

5    but has it been added to this as well?

6              MR. LOWRY:  Well, this is the elements for

7    the definition of an enterprise.  And so, with every

8    VICAR count in 4268, these are the defining elements

9    that the Government would need to prove.

10             It didn't give me a great deal of

11   satisfaction, but as I researched this issue, I don't

12   think the Government even bears the burden of proving

13   the existence of an enterprise in 1613.  Because,

14   when you look at RICO conspiracy under 1962(d), it's

15   just whether the parties reached an agreement.  It

16   doesn't even -- as long as there is agreement that's

17   reached, the existence or not of an enterprise

18   doesn't matter.

19             So when we talk about the conspiracy, I

20   just want to make sure we're seeing eye to eye on

21   which conspiracy we're talking about.  We're talking

22   about a conspiracy to commit a VICAR count, yes,

23   these are the elements that the Government would need

24   to prove, but not necessarily for the 1613 case.

25             So what concerned me in this matter is the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1718

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 174

1    part of the indictment that simply says that the SNM

2    is operated under a panel or mesa -- Spanish for

3    table -- of leaders, who issued orders to subordinate

4    gang members.  That's the way, Your Honor, the

5    Government indicted this case.  And this is what

6    apparently the Grand Jury had in mind when they

7    arrived at these VICAR crimes.

8            And this is important because it dovetails

9    with a lot of arguments you heard earlier from Mr.

10   Benjamin that, you know, are we here with appropriate

11   jurisdiction to listen to a federal criminal case,

12   rather than a string of state homicides?  So in doing

13   so, the Government is saying, Well, all of these

14   crimes, these activities were done as part of the SNM

15   enterprise.

16           Now, what started giving me some pause and

17   some concern was looking at the evidence in this

18   case.  And what we found, Your Honor -- and this is

19   attached to the motion -- and this is DeLeon Bates

20   No. 2665 -- is, as early as 2008, FBI Special Agent

21   Karen Kraft says that there is really four distinct

22   organizations of the SNM.  And she refers to them as

23   The Founders, The All Stars, The Old Timers and The

24   Rejects.  And it doesn't really bear on this motion,

25   but she goes through and identifies the various

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1719

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 175720

```
 1    individuals she thinks are associated with each

 2    distinct group.

 3            THE COURT:  I've read that memo.  Who is

 4    the author of it?

 5            MR. LOWRY:  It was FBI Special Agent Karen

 6    Kraft, Your Honor.  And I believe we'll see in later

 7    302s that she worked with the prosecution team, and,

 8    in fact, worked with other members -- well, I'm

 9    assuming -- I don't know about members currently, but

10    she was one of the initial FBI agents assigned to

11    this way back when they opened the serial number on

12    the SNM, which I believe, Your Honor, was in 2008.

13            Now, this particular document, I believe,

14    Your Honor, is based in part on an FBI 302, again is

15    attached at DeLeon 16194.  And this was an interview

16    with a retired gang investigator from the Bernalillo

17    County Sheriff's Office, Robert Martinez.  And Robert

18    Martinez -- then retired -- talked about the SNM

19    organization and how it came about.  But the crux of

20    this, at page 3 of that -- and this is 16196 -- says

21    that "The organization started falling apart because

22    some of the very young inmates were given the

23    opportunity to run the SNM at prison facilities."

24    And he goes on to say -- and I'll characterize

25    this -- but he basically draws a distinction from a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    generational standpoint, that the younger inmates

2    coming into the facility didn't heed or didn't really

3    live up to the creed, if you will, of what they

4    believe the SNM to be, as alleged by the Government.

5           And one of the things I wanted to say here

6    at the onset of this, Your Honor, I'm going to refer

7    to the Government's discovery.  Just to keep me from

8    saying "as alleged by the Government," if we can

9    assume that; I don't want to concede the existence of

10   an enterprise called "the SNM."  But that's what the

11   Government has alleged.  And as I refer to these, I

12   don't want my shorthand version of a reference to be

13   misconstrued as a concession that an enterprise known

14   as "the SNM" actually exists.

15          But what Mr. Martinez says is -- again,

16   that one of the things that happened is separate

17   organizations started branching out, one known as The

18   All Stars.  And The All Stars operated in a

19   completely different fashion.  And he starts

20   describing this; "that they would tolerate,

21   apparently, anyone to order random hits without going

22   through any kind of structure or leadership

23   channels."  And in Mr. Martinez' words, the lack of

24   recruiting standards for what he believed to be the

25   original SNM enterprise, as alleged by the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1721

1  Government, was the beginning of the demise of the

2  SNM.  And realize that this is in 2008, when he's

3  saying that this organization that the Government

4  believes exists as SNM had been falling apart,

5  fracturing, disintegrating into various subgroups,

6  which the FBI then described in the first exhibit as

7  attached to the memo as The Founders, The All Stars,

8  The Old Timers, and The Rejects.

9          THE COURT:  Could I finish reading that?

10  I'm a little slow there.

11          MR. LOWRY:  Sure, Your Honor.  And this is

12  attached to -- and again --

13          THE COURT:  Okay.

14          MR. LOWRY:  As you can see, Your Honor,

15  part of Mr. Martinez' assessment of the generational

16  discrepancies between alleged memberships and

17  members, was that, in his view, the olders -- The

18  Founders, if you will, would never cooperate with the

19  Government; whereas, the new kids on the block, for

20  lack of a better term, would cooperate with the

21  Government rather than being sent back to prison.

22          So this just continues through the

23  discovery.  And again, this is Exhibit 3 attached to

24  the motion, and if you look at Bates No. 15418 in the

25  DeLeon.  And this is a confidential human source that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1722

1    the Government has redacted -- we'll refer to this as

2    CHS-1, Your Honor -- recognizes the existence of

3    these individualized cliques.  And this informant

4    says, "Currently, each SNM clique is giving its own

5    instructions for issuing hits, which is putting some

6    members in very compromising situations.  For

7    example, Archuleta is currently in a compromising

8    position within the SNM, because he issued an order

9    to hit SNM member, only known as Junior, without

10   approval from other SNM leaders."

11           Why these are critical, Your Honor, is it

12   goes to show one of the things we've been struggling

13   with is there is really no structure in this

14   allegedly described enterprise.  It's an

15   association-in-fact enterprise.  And there is no

16   structure because it has devolved into various

17   factions, subgroups, however you want to characterize

18   it, but it's not an overarching continuing unit with

19   interpersonal relationships as federal law requires.

20           To just drive home this point, Your Honor,

21   this is, again, a piece of discovery under DeLeon,

22   Bates No. 12963.  And I'll refer to this exhibit as

23   CI-2, where CI-2 -- this is dated March 17, 2014, and

24   this was an interview done by the Corrections

25   Department, in the wake of the Javier Molina murder.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1723

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179724

 1   And this particular CI, who the Government said

 2   they're not going to call as a witness, tells the New

 3   Mexico Corrections Department that he was getting

 4   tired of this SNM politics because nobody knew what

 5   was going on, and there is no structure and

 6   leadership.  And this is from somebody we believe who

 7   was in the genre, perhaps, of a founding member.

 8          So what you see throughout the discovery,

 9   Your Honor, is a lack of distinct structures, a lack

10   of any kind of ability for an organization that's

11   characterized as an enterprise to operate, much less

12   operate as a continuing, functioning unit.  And

13   that's critical.  And that's exactly why we need a

14   bill of particulars in this case, Your Honor.

15          This all came to a head on November 28 at

16   the hearing to cordon off Mr. Baca in the courtroom.

17   The FBI testified -- and it's set out in the brief,

18   and I can put that up on the Elmo, if you'd like --

19   but they really had no idea -- they were questioned

20   on this idea that there was a tabla running the

21   alleged SNM criminal enterprise, as set forth in the

22   indictment.  And what the testimony was, that they

23   didn't know there was a tabla in 2015.  And when I

24   asked if there was tabla in 2014, they didn't know.

25   And what eventually was conceded is over various

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1724

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 180

1    periods of time, throughout the history of the

2    organization, efforts were made to create this tabla

3    and place individuals on it.  And as far as the exact

4    time periods -- I can't give you the dates -- but at

5    certain points, based on our understanding, that

6    tabla did exist.

7            Well, that is, in my view, Your Honor, far

8    too vague, far too amorphous, far too nebulous to

9    constitute the discrete, the definite, and certain

10   information that Mr. Baca needs to defend himself

11   against the allegation that a criminal enterprise,

12   known as the SNM, existed under the definition -- the

13   legal definition of an enterprise, that requires --

14   as we set forth in the brief -- requires at least

15   three critical elements.  It requires interpersonal

16   relationships between the members of the enterprise.

17   It requires that those individuals share a common

18   interest.  And, critically, it requires that those

19   individuals function as a continuing unit over time.

20           And what we've seen in the small tip of the

21   iceberg of the discovery is that simply was not the

22   case.  That this was a fractured -- you know, I hate

23   to use allegedly fractured organization, if you will,

24   that was comprised of subgroups.

25           In the Government's reply they describe the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1725

1   leadership as fluid, based on the exhibits we

2   described.  And that's exactly the problem, that we

3   can't go to trial under a mercurial, fluid, amorphous

4   set of facts, not knowing how or what the Government

5   is going to do to prove the existence of an

6   enterprise.

7            This sort of goes to the point Mr. Benjamin

8   was making in his argument for disclosure of the

9   Grand Jury testimony, is he wants to know how his

10  client could have done this particular act as part of

11  the enterprise.  And he was saying, rightfully so,

12  that he was afraid of his client getting tainted with

13  other predicate acts that the SNM has done in front

14  of a jury, because that jury will look unfavorably

15  towards his client after hearing a lot of prejudicial

16  evidence.

17           Well, the flip-side of that also holds

18  true, Your Honor.  Hypothetically, if one would

19  concede being a member of the SNM, that individual

20  doesn't necessarily want to get prejudiced by Mr.

21  Gallegos' actions that have nothing to do with the

22  SNM.So there is a problem here.  And I think all of

23  the defendants need to know exactly what kind of

24  enterprise we're talking about, in terms of how it

25  functions.  And just to say, as apparently the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Government is saying, that there is a pattern of

 2   racketeering activity is insufficient under the law.

 3   And we cited in our reply brief -- I believe it's the

 4   case of Bailey, which another district court judge

 5   did the same thing -- it's Bailey, at 689 F.Supp.

 6   1463 -- that the judge in that case ordered a bill of

 7   particulars to describe how an association-in-fact

 8   enterprise functioned to give the defense an

 9   opportunity to fashion and marshal its evidence.

10           Your Honor, one of the reasons I jumped up

11   when Ms. Duncan was arguing the motion to compel,

12   Your Honor, was saying, Well, why doesn't the defense

13   send a list of ten names over to the Government, so

14   the Government can have some sense of, you know, what

15   names you might think could have been involved in the

16   couriering of information.  And the point I'm making

17   in my reply brief, Your Honor, at page 3, is this

18   really isn't a defense burden.  And other courts have

19   so stated.  And again, Mr. Baca bears the presumption

20   of innocence.  And on page 3 -- this is the United

21   States v. JM Huber Corp., at 179 F.Supp. 570, and the

22   court -- I'm going to quote the court, "Being

23   presumed to be innocent, it must be assumed that he

24   is ignorant of the facts on which the pleader founds

25   his charges.  It must never be forgotten that what is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    sought by a bill of particulars is not what actually

2    happened but what the opponent claims happened."

3           And that's exactly where we stand in this

4    case.  It's not enough for us to surmise or

5    conjecture or guess, in order to defend Mr. Baca.  We

6    need to know with certainty in more of a definitive

7    nature of what or how the Government intends to show

8    an association-in-fact over the course of years.

9           THE COURT:  Well, but that's what I think

10   is the difference.  I don't disagree with what you

11   read about a bill of particulars.  You want to know

12   what they're charging.  But then you shifted it

13   slightly when you said:  What we need to know with

14   certainty is how they're going to show it.  Those are

15   two different things.  And that's the problem I'm

16   having with some of the defendants' requests, is the

17   theory seems pretty clear to me.

18          I mean, I've had cases where I can't figure

19   out what the Government is alleging.  But that

20   doesn't seem to be the case here.  It seems to be

21   these are being used more as discovery tools, in

22   various forms.  We've done different motions.  So

23   when you shifted it; you read the statement, then

24   shifted it, that's the problem I'm having today.

25          MR. LOWRY:  If I shifted, Your Honor, I

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                            1-800-669-9492




PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

 1    apologize.  It wasn't intended to be a shift.

 2            My problem is this:  The Government clearly

 3    in the indictment says the SNM is run by a tabla.

 4    And when you put a Government agent on the stand

 5    under oath and saying:

 6            Was there a tabla in 2015?

 7            They say, I don't know.

 8            Was there one in 2014?

 9            I don't know.

10            THE COURT:  Well, let's say they don't have

11    any evidence of a tabla.  What do I do with that with

12    a bill of particulars?

13            MR. LOWRY:  Well, if they don't have any

14    evidence -- this is a very interesting point, Your

15    Honor, because when Mr. Benjamin asked for his Grand

16    Jury transcript, which the Government said, Well,

17    what he needs to do is ask for a bill of particulars.

18    Well, I'm up here asking for a bill of particulars.

19    But what you're describing is, if there is none, I

20    want to look.

21            THE COURT:  Put the Government's arguments

22    aside.  How is a bill of particulars going to help

23    you with the tabla?  If they're going to have

24    witnesses come in and agree that, at certain points,

25    particularly late in this -- in what they've alleged

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1729

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185 of 730

1    is a racketeering enterprise, they didn't have an

2    organization that looked like it did earlier in its

3    existence, what do we do with that as far as a bill

4    of particulars are concerned?

5            MR. LOWRY:  Well, Your Honor, this is the

6    problem:  What tabla?  For what organization are we

7    talking about?

8            Now, I don't doubt that the Government is

9    going to come in with a series of confidential human

10   sources that say, at a certain particular time, there

11   was a tabla that existed in this institution, and

12   here's who was on the tabla.  Frankly, I've never

13   seen any continuity between CHSs on who was on the

14   tabla.

15           But we'll set that aside.  What you're

16   asking me is this discovery motion, I'm saying no,

17   but what we need to know with some certainty is,

18   there is a tabla.  But my question and my problem

19   with defending Mr. Baca is this -- and this is why I

20   think the identities of the people on the tabla is

21   critical, Your Honor -- was this a tabla for, quote,

22   "the SNM," allegedly, or was this a tabla for -- as

23   the FBI recognized, is this a tabla for the original

24   founders?  Or this is a tabla for The All Stars?  Or

25   is this a tabla for The Old Timers?  Or is this a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1730

1    tabla for The Rejects?  And the reason this is

2    important is one of the -- Mr. Martinez describes in

3    his memo in his statement to the FBI is The All

4    Stars, for instance, had a motto, and their motto

5    was -- no, I don't believe it was Mr. Martinez, but

6    it's one of the exhibits, Your Honor; I can go get

7    it.  But one of the confidential human sources told

8    the FBI and told the Government that the motto of The

9    All Stars was:  "In with the new and out with the

10   old."  And The All Stars had a mission which was to

11   kill, frankly, and put hits out on all of the

12   original founding members in The Old Timers, so they

13   could eliminate competition.

14          And so when we are talking about was there

15   a tabla, this is the crux of the problem.  A tabla

16   for who?  A tabla for what?  And there is a

17   difference between a tabla, just like I pointed out

18   in the motion.  There is a difference between being a

19   senator in the United States Congress and a senator

20   in the New Mexico Legislature.  And that's the

21   problem we have with this whole tabla concept.

22          THE COURT:  But, see, that sounds to me

23   more like a closing argument than it does a bill of

24   particulars.  I mean, it just sounds like you figured

25   out what you're going to argue to the jury, and tell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1731

1    them that:  There is no organization here.  Everyone

2    in this room is just an individual, and there was no

3    organization at all.

4              MR. LOWRY:  Well, that may be true, Your

5    Honor.  But then that begs the question of how the

6    Grand Jury came to indict this case.  And if the

7    Grand Jury was confused or mislead or just befuddled

8    about what SNM organization they were cuing up for

9    criminal federal prosecution, you know, I would

10   wonder -- and what I see happening here is, frankly,

11   that may be an argument one can make to the jury.

12   But that also might be an argument one would want to

13   make a directed verdict.And I think what's going to

14   happen here is there is going to be a huge mishmash

15   of confusion.  And in order for Mr. Baca to present

16   an effective defense, we need to be on this today,

17   not as the trial develops, unfolds before us.  I

18   don't think this is going to be the type of thing

19   that, one -- I mean, we're already hearing about a

20   number of, you know, Jencks productions.  I think Mr.

21   Castle pointed out, and the Court recognized how

22   crushing this motions practice is going to be on the

23   eve of trial, as we're given Jencks Acts and other

24   things.

25              And what I hear the Court suggesting is,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1732

1   Well, you can develop that during the course of the

2   trial.  Well, that's -- you know, just defending Mr.

3   Baca at this trial is going to take an inordinate

4   amount of energy and time.  And I would rather have

5   that kind of investigation done before trial starts,

6   not during the middle of trial.

7          So I don't -- again, if you look at the

8   case law, and you look at other judges have done just

9   this, saying:  We think a bill of particulars is

10  appropriate when we're talking about an

11  association-in-fact, because, as the United States

12  Supreme Court said, just establishing a series of

13  predicate acts isn't sufficient.  And especially not

14  sufficient here when you have predicate acts that

15  span over the course of, you know, some 15, 16, 17

16  years that involve wildly different groupings of

17  individuals that, as far as I can tell, have nothing

18  to do with each other over time, with their

19  particular predicate act.

20         So I would rather get some clarity on this,

21  Your Honor.  And I don't think it's really fair to

22  the defense to say, Well, we're not bound to give you

23  clarity.  You can do just what we do.  We just guess.

24  We just think it's fluid.  And you've just got to

25  roll with it.  I mean, to say it's fluid begs the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189 9734

 1   question of whether the enterprise exists.

 2           THE COURT:  Well, isn't the reality,

 3   though -- I mean, I'm not the judge of the facts, but

 4   I mean, it sure seems to me that, as the men aged,

 5   The Founders, the organization changed.  And that

 6   doesn't strike me as startling observation.  That's

 7   often what happens in churches, nonprofits, prison

 8   gangs; you know, they change over time, and the young

 9   bucks sometimes toss out the older guys.  It happens

10   at law firms.

11           MR. LOWRY:  Don't say that, Your Honor.

12           So I guess, you know, you call it fluid.  I

13   just call it a bit of an evolution in the

14   organization, which is not unexpected over time.

15           MR. LOWRY:  Taking that analogy, Your

16   Honor, I think what I'm trying to suggest, at some

17   times the young bucks just say, We're not going to

18   stay at this law firm, and branch out and start their

19   own law firm.  And that's my concern here.  It's not

20   that --

21           THE COURT:  But how do I address it with a

22   bill of particulars?  I mean, what do I tell the

23   Government to do?  If they're going to be very open

24   about the fact that the organization has changed; at

25   one time there was more rigid structure, or a more

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   identifiable structure, how do I -- what do I --

2   that's their theory.

3          MR. LOWRY:  That's their theory, Your

4   Honor.  But I think it's not enough to have a theory.

5   And I hope the Grand Jury had more than a theory.  I

6   would hope the Grand Jury had some evidence to back

7   that theory up.

8          THE COURT:  Let's do this:  I don't want to

9   cut you off, but I'm under pressure from a Chief

10  Judge, and probably more important, from Ms. Wild, as

11  we got a big event here tonight in this building.

12  Everybody -- well, I can't say everybody is invited,

13  but --

14         MR. LOWRY:  Mr. Baca would love to be

15  there, Your Honor.

16         THE COURT:  I don't have enough food for

17  everybody.  But certainly the lawyers are invited,

18  and they've been told about it.  But I've got to --

19  the Chief didn't want me to go this afternoon, but I

20  did go this afternoon, so I'm pushing it.

21         Let's break, be back at 8:30 tomorrow.

22  I'll let you continue to make your argument.

23         Think about, though, what I'm saying.  I'm

24  trying to -- you know, I understand.  When we're

25  going after -- if you don't want to listen to me, at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1735

```
 1    least let Ms. Bean hear -- we've really got to focus
 2    on what I can do with a bill of particulars.  I mean,
 3    I hope that people have picked up I'm sensitive to
 4    trying to get information, evidence into the
 5    defendants' hands.  But I'm having a little hard time
 6    with some of these tools, whether it be bill of
 7    particulars, Grand Jury, or other things that are
 8    seen more as maybe discovery devices.  So think about
 9    what a bill of particulars -- how it really helps you
10    with the situation here.
11            Let me ask a question.  If I could get
12    everybody's attention for a second.  Do we need the
13    Baca people tomorrow?  Is there -- I'm sitting here
14    looking at Mr. Lowry's motion here, and then we've
15    got one more that's the -- Mr. Benjamin's motion on
16    behalf of Mr. Gallegos to sever.  So it seems to me
17    that we're getting really into DeLeon stuff, and I'm
18    not seeing the Baca stuff.  I don't want to exclude
19    people that want to be here.  But is there anybody in
20    the Baca case that can foresee how the discussions
21    that I'm having with Mr. Lowry, I'm going to have
22    with Mr. Benjamin tomorrow on the motion to sever,
23    how the Baca people need to be here, want to be here?
24    Is there anybody that feels like they need to be here
25    for constitutional purposes or any other purpose?  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1736

 1   don't want to cut you loose.

 2            THE COURT:  Mr. Assed?

 3            MR. ASSED:  On behalf of Mr. Archuleta, I'd

 4   like to be here, Judge.

 5            THE COURT:  All right.  Let's just leave

 6   everybody here.  I don't think it's going to be a

 7   long day.  So let's just leave everybody coming back.

 8            Let me ask y'all to begin to think, though,

 9   because I'm going to stay working on this case for a

10   while.  Sorry, Ms. Sirignano, Mr. Adams, Mr. Garcia,

11   I'm going to put yours aside.  I'm going to work on

12   this case.  So be thinking of giving me a batting

13   order.  If you thought that there were some things I

14   was either tentative about, you want me to take a

15   closer look at, give me a batting order what you want

16   me to work on, so that when I leave here, we all

17   leave tomorrow, I know exactly what I need to do and

18   need to work on to give you as much guidance as I can

19   for the trial.

20            All right.  Mr. Jewkes?

21            MR. JEWKES:  And, Your Honor, I presume

22   that we are still scheduled for next week?

23            THE COURT:  Yes, we are.

24            MR. JEWKES:  On the 19th, on DeLeon.

25            THE COURT:  Let's leave it scheduled, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1737

1    let's let Ms. Wild sort that out with you.  I know

2    there are still a lot of motions here that were not

3    teed up.  So let's leave that in place for the time

4    being.

5              Did you have something, Mr. Cooper?

6              MR. COOPER:  I was just trying to listen.

7              THE COURT:  Just trying to listen.  All

8    right.

9              Mr. Lowry?

10             MR. LOWRY:  Your Honor, one housekeeping

11   matter.  Because we attached discovery to the 4268

12   motion, my bill of particulars motion, we filed it

13   under seal, may we share that particular set of

14   briefing with -- just briefs -- with the individual

15   parties in 1613?

16             THE COURT:  1613 would be the Baca case?

17             MR. LOWRY:  Yes, Your Honor.

18             MR. BECK:  We don't oppose that, Your

19   Honor.

20             THE COURT:  Okay.  All right.  Anything

21   else from the Government we need to discuss before we

22   take our break?  Ms. Armijo?

23             MS. ARMIJO:  No, Your Honor.

24             THE COURT:  Any other defendants for

25   tonight?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1738

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 194739

1          See you at 8:30, then, tomorrow.  Have a

2     good evening.  Appreciate your hard work.

3          (The Court stood in recess.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on May 19, 2017.

15

16

17

18         _____
                Jennifer Bean, FAPR, RMR-RDR-CCR
19              Certified Realtime Reporter
                United States Court Reporter
20              NM CCR #94
                333 Lomas, Northwest
21              Albuquerque, New Mexico 87102
                Phone:  (505) 348-2283
22              Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1                IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF NEW MEXICO

 3     UNITED STATES OF AMERICA,

 4          Plaintiff,

 5          VS.                        CR. NO. 15-4268 JB

 6     ANGEL DELEON, et al.,

 7          Defendants.

 8                       VOLUME 3

 9          Transcript of Omnibus Proceedings before
       The Honorable James O. Browning, United States
10     District Judge, Albuquerque, Bernalillo County,
       New Mexico, commencing on May 11, 2017.
11

12     For the Government:  Ms. Maria Armijo; Mr. Randy
       Castellano; Mr. Matthew Beck
13
       For the Defendants:  Mr. Brock Benjamin; Mr. Richard
14     Sindel; Ms. Cori Harbour-Valdez; Mr. Robert Cooper;
       Mr. Roberto Albertorio; Mr. Orlando Mondragon; Mr.
15     Noel Orquiz; Mr. Scott Davidson; Mr. Billy Blackburn;
       Mr. Santiago Hernandez; Mr. Steven Potolsky; Mr.
16     Richard Jewkes; Ms. Amy Jacks; Mr. Josh Spencer; Mr.
       B. J. Crow; Mr. Marc Lowry; Ms. Theresa Duncan; Ms.
17     Amy Sirignano; Mr. Christopher Adams; Mr. Michael
       Davis; Mr. Ryan Villa; Ms. Justine Fox-Young; Mr.
18     Donovan Roberts; Ms. Erlinda Johnson; Ms. Angela
       Arellanes; Mr. Samuel Winder; Mr. Don Kochersberger;
19     Ms. Susan Burgess-Farrell; Mr. Diego Esquibel; Mr.
       Marc Grano; Mr. Ahmad Assed; Mr. Gregory Acton
20

21     For the Defendants (Via telephone):  Ms. Carrie
       Bhalla
22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1741

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2742

```
 1              THE COURT:  Good morning everyone.  I
 2   appreciate everyone making themselves available to me
 3   this morning.  I'll switch seating charts here.
 4              All right.  We'll continue the hearings
 5   that we've had this week.  Yesterday we were down to
 6   just the -- what I call the DeLeon case, and then the
 7   Baca case.  Let me see if I can confirm who is here
 8   as far as attorneys.  Let's see, Ms. Morrissey is not
 9   here today, and Mr. Acton, you're here alone; is that
10   correct?
11              MR. ACTON:  I am, Your Honor.
12              THE COURT:  And Mr. Creecy is not here.
13   You're back, Mr. Winder; is that correct?
14              MR. WINDER:  Yes, Your Honor.
15              THE COURT:  All right.  Mr. Winder, good
16   morning to you.
17              And let's see, I want to confirm for the
18   record, Ryan Villa was not here at all yesterday;
19   correct?
20              MR. VILLA:  I was not, Your Honor.
21              THE COURT:  But you're here today?
22              MR. VILLA:  I am.
23              THE COURT:  Good to see you, Mr. Villa.
24              MR. VILLA:  You, too.
25              THE COURT:  Mr. Castle is gone for today;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1742

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3743

```
 1   is that correct, Mr. Cooper?
 2            MR. COOPER:  That's correct, Your Honor.
 3            THE COURT:  All right.  Mr. Cooper, good
 4   morning to you.
 5            MR. COOPER:  Good morning to you, Judge.
 6            THE COURT:  Let's see, we've got Ms.
 7   Sirignano and Mr. Adams.  Patrick Burke is not here
 8   for Mr. Troup, but you're here, Ms. Harbour-Valdez?
 9            MS. HARBOUR-VALDEZ:  Yes, Your Honor.
10            THE COURT:  Good morning to you, Ms.
11   Harbour-Valdez, Mr. Troup.
12            And Nate Chambers is not here for Mr.
13   Alonso, but you're here, Mr. Orquiz?
14            MS. ORQUIZ:  Yes, sir.
15            THE COURT:  Good morning to you,
16   Mr. Orquiz.
17            Let's see.  All right.
18            A couple of things to be thinking of before
19   we break today.  I did mention to you that I wanted
20   to talk to you about what work you want me to do.
21   We've got one more motion to sever to argue today.
22   I'm inclined to -- I made a lot of rulings on motions
23   to sever, and I still got one more to argue.  Then we
24   have one more.  I think Burke has one next Friday
25   that we're going to argue.  But at least for the ones
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1743

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4744

 1   that have been argued so far -- that will be argued
 2   today -- I'm inclined to roll those into one opinion.
 3   So rather than just quickly getting out the one I'm
 4   pretty far on, I'm inclined to put them all together,
 5   so that I can explain why I'm doing what I'm doing
 6   with these trials.  So that's my thoughts.  But you
 7   may want me to shift to something else.  So, again,
 8   be thinking of the batting order that you want to
 9   leave with me before we part today and come back next
10   week.
11          Also, I will want to -- with the first
12   group of the DeLeon people, I want y'all to be
13   thinking about a real timeframe for the trial of that
14   case.  Because the trial of that case is going to
15   really impact, really, my second half of the year.
16   However long that takes, that's realistically what
17   I've got to line up for the other what we call the
18   SNM cases, as well as other work that I have.  So be
19   thinking and discussing a real timeframe.  Because
20   once I set it, I probably am going to get it tried
21   within that timeframe.
22          On the 19th, it doesn't look like we need
23   the Baca people at all.  I don't see any items that
24   need to be argued.  So I think we'll just be bringing
25   back the DeLeon people on that Friday.  So unless

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1744

 1    somebody thinks otherwise, that's my plan for the

 2    present time.

 3              All right.  Mr. Lowry, you were up arguing

 4    your bill of particulars, if you wish to continue

 5    that argument.

 6              MR. LOWRY:  Thank you, Your Honor.

 7              THE COURT:  Mr. Lowry.

 8              MR. LOWRY:  Your Honor, I just had one

 9    brief evidentiary matter.

10              Your Honor, just to follow up a point that

11    I made yesterday.  And we're talking about DeLeon

12    Bates No. 14478, and this would be Confidential Human

13    Source No. 3.  But the point I was making, Your

14    Honor, is this notion that the younger generation

15    was, for lack of a better way to say it, was trying

16    to "off" all the older members.

17              THE COURT:  All right.

18              MR. LOWRY:  And again, Your Honor, just for

19    clarification, it does mention the All Stars.  This

20    is about the All Star faction.

21              But, Your Honor, I put some thought into

22    the Court's comments at the end of the day yesterday,

23    and if the Court looks at our reply brief, I don't

24    disagree with the Court one iota, in that Mr. Baca is

25    not trying to manipulate or weasel into this bill of

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                 (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1745

 1   particulars a discovery device or mechanism.  We

 2   recognize that, and we don't disagree that that's an

 3   improper use for the bill of particulars.

 4           But what we are trying to accomplish in the

 5   bill of particulars is for a fixed indefinite theory

 6   of the Government's notion of how this alleged

 7   enterprise was structured.

 8           And the problem I'm having with where I

 9   stand before Your Honor today is, instead of fixed

10   indefinite, I'm in the middle of fluid and mercurial.

11   And I think the purpose of the bill of particulars is

12   to put a defendant on notice of what the case is so

13   he can defend against it.  And in that vein, what

14   we're looking for is a fixed indefinite idea of what

15   the theory of the enterprise is so I can start

16   preparing a defense.  And that's, you know, where

17   we're coming from.

18           And I think if you go back to our reply

19   brief and look at the six questions that we laid out

20   that we'd like the bill of particulars to address,

21   they really aren't "who" questions, except in the

22   last one, I laid out six on page 7 and 8 of the

23   brief, but they're all "how" questions.  So I hear

24   what Your Honor is saying, and I want the Court to

25   clearly understand that what we're looking for is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1746

1    more of a functional result here, and not necessarily

2    a "who" test.  Who did what?  That having been said,

3    Your Honor, sometimes the "whos" will have to come

4    out in that test.  And this is the United States

5    Supreme Court in Will v. United States, at 389 U.S.

6    90, and you can see it here at the page break 98 and

7    99.  But our Supreme Court has acknowledged and

8    recognized for decades that -- and I'll quote -- "It

9    is not uncommon for the Government to be required to

10   disclose the names of some potential witnesses in the

11   bill of particulars where that information is

12   necessary or useful to the defendant's preparation

13   for trial."

14          Now, I'm not yielding -- we're not looking

15   for a discovery device.  But what I am looking for is

16   a fixed target.  And what the indictment has said --

17   I look at the indictment, and I look at paragraph 4

18   of the indictment, it was fairly fixed.  "The SNM

19   operated under a panel."  "The," singular, of this

20   alleged organization, and "a single panel."  And we

21   haven't seen any evidence in the discovery to support

22   that.

23          What we have seen, in my view, is what I've

24   characterized in our briefing is sort of a variation

25   on the federalist.  We haven't seen the congress that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1747

 1    control the SNM.  What we've seen is a balkanized
 2    series of local states.  And what I'm really looking
 3    for here in the bill of particulars is how was this
 4    enterprise structured?  And they've alleged one
 5    thing, and they backed off on that in the direct
 6    testimony before this Court, and they backed off of
 7    it in their briefing before this Court.  So I'm at a
 8    loss to understand how they want to move forward with
 9    their theory about how this enterprise was
10    structured.  And that's really what we're seeking
11    here, Your Honor, with regard to our argument
12    concerning the alleged enterprise.  Because if
13    they're talking about, you know, a constellation of
14    subgroups, as opposed to an umbrella organization,
15    that's -- I think that's a problem for the
16    Government, but that's something we need to know for
17    certain, so we have sufficient notice to prepare our
18    defense.
19           And I don't know if that answers Your
20    Honor's question directly, or if you want me to be
21    more specific.  But I've laid out the questions I
22    would like to have answered on page 7.  And the first
23    one was, you know, how the co-defendants functioned
24    as an enterprise, apart from the racketeering
25    activity, meaning how did these individuals share

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    interpersonal relationships, common interests; how

2    did they function as a continuing unit over time.

3    And I think that's, you know, going to be helpful for

4    us to understand how they did this.

5            What the response said is:  Everything is

6    fluid.  It might have been fluid in the past; it

7    could be, in theory, fluid today, but what happened

8    in the past should be fixed indefinite.  And that

9    should be not a huge pull for the United States to

10   pull together and say, Okay, from 2001 to 2008, here

11   was the structure; from 2008 to 2011, it operated

12   like this, or 2011 to present, here's how it

13   operated.  But we don't have any kind of sense of

14   that, Your Honor.  And I think, in fundamental

15   fairness to the defendants, we have to get a better

16   idea of what they're alleging happened.  Because,

17   again, it's not for the defendants to guess about

18   what their theory is.  They have to clearly

19   articulate it, so we can provide an adequate and

20   effective defense.

21           And I don't think this is too far afield

22   from what this Court ordered in the Aispuro case.

23   And just to remind Your Honor -- and this was a drug

24   conspiracy case, but if I look at the F.Supp.

25   opinion, you said that, "The general allegation that

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1749

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10

```
 1    all of the defendants engaged in a conspiracy does

 2    not sufficiently apprise each defendant of the United

 3    States' theory as to how each was involved in the

 4    alleged conspiracy."  This is really what I'm driving

 5    at.  Like, how was my client involved in this alleged

 6    enterprise?  Where did he fit into the structure?

 7    How did he participate in it?  And we don't -- I

 8    mean, it's really easy, and we have a lot of

 9    confidential human sources that will glibly say, Oh,

10    my gosh, he was the shot-caller.  But we don't know

11    how that happened or when that happened, or you know,

12    who -- depending on how they want to phrase the

13    structure of the enterprise.

14            I mean, that's sort of contrary to this

15    idea laid out in the indictment that the SNM was

16    controlled by a table or mesa, that, to me, that

17    seems like it would have to be a group decision.  It

18    doesn't seem like a single person can say, I want so

19    and so hit.  It seems like it's by committee.  And

20    what I'm hearing throughout the course of the

21    hearings is it's not a committee; it is committee; it

22    may be committee; depends on the year; depends on the

23    era.  And I think we need a more fixed and definite

24    idea of that, Your Honor.

25            And I don't know if you have any questions
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1750

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 11751

 1   with regard to the bill of particulars, but I think

 2   that's it in a nutshell.

 3           THE COURT:  All right.  Thank you, Mr.

 4   Lowry.

 5           MR. LOWRY:  Well, there are two other

 6   parts.  I don't know if you want to take them one at

 7   a time.  I'm happy to do that, Your Honor.

 8           THE COURT:  No.  Go ahead.

 9           MR. LOWRY:  Well, the same issues arise, in

10   my view, with the Molina murder and the Romero count.

11   What we have in the Javier Molina murder, and you

12   heard some of this in the motion to compel is --

13   well, the Government's theory again has shifted.  And

14   when we were arguing the confidential informant

15   motions, we heard for the first time that this really

16   wasn't a hit based on paperwork that came down from

17   Santa Fe; that this was a long, outstanding hit.  And

18   that was news to us.  And then we started getting

19   additional information about the timeliness of when

20   this happened.

21           And I think, again, to be -- have some

22   rational understanding about what theory they want to

23   go to trial on is instrumental in providing an

24   effective defense.  And part of the problem here is

25   Mr. Baca was sequestered at Level 6 during this time.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1751

```
 1              And there are all kinds of functional
 2    questions that have yet to be even touched upon in
 3    discovery.  One notion that's floated in the
 4    discovery is that Mr. Baca had paperwork, and
 5    delivered paperwork from his cell at Level 6, all the
 6    way down to Southern in Las Cruces.  And that's one
 7    reason we were interested in the location matrix of
 8    who was where when.  And I understand the Court's
 9    ruling it's like, Well, you tell the Government who
10    you think carried the material down there.
11              But if I look at the cases in a bill of
12    particulars context, Your Honor, I really
13    respectfully think that's the Government's burden.
14    And we cite the cases at page 3 of our reply; that
15    it's really on the Government to enlighten us about
16    what their theory of what happened is.  And again,
17    this is the JM Huber case I cited yesterday:  "It
18    must never be forgotten that what is sought by a bill
19    of particulars is not what actually happened but what
20    the opponent claims happened."
21              I mean, what we think may have happened --
22    I mean, we can hypothesize all day long.  But we need
23    a fixed and clear vision of what the Government
24    thinks happened.  And that's why we need to be
25    prepared, if we're -- at this point to have the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1752

1    entire matrix.  So if we get up during trial, and

2    none of our ideas of who that might be ring true, we

3    don't want to be surprised at trial.  I mean, what I

4    suspect could, in theory, happen is our ideas of who

5    may have done this, who may have been potentially

6    available to carry documents, they'll easily

7    construct a way around that, and it might be somebody

8    else.

9          What would be helpful, and what I think a

10    bill of particulars demands is they put us on notice

11    what their theory is and how that happened.  We don't

12    even have any idea whatsoever, despite all of these

13    colorful allegations, of how in the world Mr. Baca

14    would have any paperwork in his cell related to

15    Javier Molina at all.  And I have not come across

16    anything in the discovery that has enlightened me one

17    bit about how that happened.  I mean, that would be

18    helpful to know so we could structure a defense

19    against that.

20          So I just go back to this Court's ruling in

21    Aispuro, which would be really helpful to know, is

22    what the Court ordered there at the end will require

23    the United States to provide overt acts for which it

24    believes each defendant is responsible.  That's what

25    we're really looking for in the Molina and the Romero

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1753

```
 1   cases, Your Honor.

 2           Again, the same deficit is apparent in the

 3   Romero alleged assault.  There is no "there there"

 4   with regard to Mr. Baca's role in that assault.

 5   There is a bald allegation in the indictment.  But we

 6   haven't seen anything in the discovery that ties Mr.

 7   Baca to this alleged conspiracy.

 8           And what we'd ask this Court to do is what

 9   the Court did in Aispuro, is to tell us in clear

10   fashion what they think happened so we can provide an

11   effective defense.

12           Unless the Court has any questions, I'll

13   yield my time to the United States.

14           THE COURT:  Thank you, Mr. Lowry.

15           If anyone else wants to speak on Mr. Baca's

16   motion?

17           All right.  Mr. Castellano.

18           Did you have something else, Mr. Lowry?

19           MR. LOWRY:  Just briefly.  I don't want to

20   hold up the United States, but Your Honor, I know

21   that three other defendants joined this motion.  And

22   I would just say, in terms of the Molina murder,

23   there seems to be various theories about who carried

24   the paperwork allegedly.  And for Mauricio Varela's

25   behalf, I'll just say that one of the Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1754

1    theories could be that he had nothing do with it.

2    And it just a bit boggles my mind, and what I

3    anticipate is some of the confidential human sources

4    say that Mr. Varela had nothing do with that.  So I

5    think it would be helpful for this Court and for the

6    defendants to understand what their theory is, so we

7    could clearly define who the proper defendants would

8    be in this case, Your Honor.

9            THE COURT:  All right.  Thank you, Mr.

10   Lowry.

11           Any other defendants wish to speak on Mr.

12   Baca's motion?

13           All right.  Mr. Castellano.

14           MR. CASTELLANO:  Thank you, Your Honor.

15           I want to say there is probably just over

16   20,000 pages of discovery now.  And if this is the

17   best example of the problems the defense thinks we

18   have with our case, I think we're in pretty good

19   shape.  And I'm going to show you that from the

20   documents that the defense provided as attachments.

21           So the first thing I want to note here is

22   that -- this is from Document 1056-3.  This is a

23   defense filing.  It's DeLeon Bates stamp 15420.

24           And something I mentioned yesterday and

25   that's that "Once incarcerated within the New Mexico

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492
                                                                   e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1    Department of Corrections, most 18th Street Gang

2    members align themselves with the SNM."  That's one

3    of the examples I used yesterday from Santos Gonzalez

4    when we talked about -- said there is actually an

5    example from one SNM member indicating that 18th

6    Street members align themselves with SNM.  So that's

7    one example from the discovery of how that happens.

8            Two other people are Sammy Silva and Fred

9    Quintana.  Those are 18th Street members, who are

10   also SNM Gang members.  So I give the Court some

11   examples, even from the defense's exhibits how street

12   gang members align themselves with the SNM.

13           Now, looking at the documents here.  This

14   is also Document 1056-1.  Something important to note

15   here, the claim is that the SNM, or the FBI

16   recognized the four different SNM gangs.  But that's

17   actually not the case.  So looking here -- this is

18   actually not an FBI special agent, it's a staff

19   operations specialist, who generated a chart.  And

20   that was on December 10th of 2008.

21           If you look at the next document, which is

22   the report by the gang expert, that happened on

23   October 1, 2008.  So, in essence, what happened was

24   somebody from the FBI interviewed Robert Martinez.

25   Robert Martinez told them about factions within the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1756

 1   SNM, and a report was generated by the FBI.  So it's

 2   not the FBI recognizing that there are, in essence,

 3   four gangs.  It's just a report reflecting what

 4   Robert Martinez said in his report.

 5          So let me turn to his report now.  If this

 6   person in this report were a witness at trial, we

 7   could, in essence, make almost all of our elements

 8   from this one person alone.  There is an indication

 9   in '83 or '84 that Juan Baca established the rules of

10   membership in the organization.  So, as Mr. Lowry

11   stated, they have to do things separate and apart

12   from the acts they commit, the racketeering acts.

13   One of those is establishing rules for the

14   organization.  So, in this case, the gang was

15   established, and there were rules also established.

16          People needed to be sponsored by a member

17   in good-standing.  That's also a rule by the gang.

18   And then the membership sometimes had background

19   checks conducted to make sure they didn't have

20   charges that were not approved by the SNM.  Prospects

21   had to be voted in by three individuals.  And that

22   happens even to this date.  There are means of

23   communication known as kites.  And communication

24   happens through visitors, and sometimes through

25   corrections officers.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1757

```
 1              On 1056-2, page 2, it talks about how
 2    members communicate through codes, also with the use
 3    of friends and family members.  And once a vote is
 4    taken, Baca -- this Baca mentioned in the report --
 5    will provide the prospect with a knife and send them
 6    on a mission.  So, basically, people had to earn
 7    their bones or make their way into the organization.
 8              At that time, there was a rule that the hit
 9    be witnessed by another member of the SNM.  So once
10    again, there is a rule.
11              And at that time there was a membership of
12    30 to 35 members.
13              The other important thing here is that at
14    that point in time, it wasn't that there are two
15    different gangs.  It's just that there is a claim by
16    this one particular person that young members were
17    disrespectful to the older members of the
18    organization.  Once again, this is discussing only
19    one organization.
20              The next is that when Baca was away, he
21    passed the keys to SNM member Angel Munoz.  So what
22    we have here is a delegation of authority to another
23    person.  And that still happens to this day.  They're
24    called llaveros, or keyholders.  So persons at a
25    particular prison is given authority over that pod or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1758

1   that prison to make decisions.

2          So these are all things separate and

3   distinct from any acts they commit.  It happens to

4   show the organization and how they're established.

5          When Munoz took over, he also kept to the

6   same code of conduct established by Baca.

7          And it talks about heroin addiction, which

8   presented a problem in the organization.  So like all

9   organizations they do have problems that interrupt

10  the flow of their work.

11         The organization started falling apart

12  because some of the young inmates were given

13  authority to run the SNM throughout New Mexico.  Once

14  again, it's still the same organization.  And part of

15  the problem was that people were randomly ordering

16  hits without going through the proper channels.  So

17  that tells us that there were rules for ordering hits

18  on people, and sometimes people could fall out of

19  favor when they didn't follow those rules.

20         Another indication here is racketeering

21  activity.  This person reports that drug operations

22  were part of the SNM's business.  But at that time,

23  Angel Munoz historically was a primary leader of the

24  SNM during that period.  So at that point, there was

25  a leader of the organization, and people who fell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1759

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20

1    under him.

2              There is also an indication of a Dan-Dan,

3    another Daniel Sanchez, who was a right-hand man

4    during the late '80s and early '90s, but he

5    eventually lost his status within the organization.

6    So you had people who were leaders and people who

7    were their right hand, who helped them run the

8    organization.

9              Okay.  At this point, they still have

10   rules.  The young members are trying to maintain a

11   low status because they knew the level of loyalty

12   within the SNM was low, and they were trying to

13   improve that.  So once again, it's only one gang

14   we're talking about that has its own problems, like

15   any organization.

16             Eventually, when Munoz went back to prison,

17   he was once again recognized as the leader of the

18   SNM.  And at that point there were two known

19   shot-callers under Munoz.

20             There is an indication that during the late

21   '90s, Ray Baca, or "Pup," was also an influential SNM

22   member, but was not accessible because he was often

23   out of the state.  So when he was in the state, he

24   wielded more power.  And when he was out of the

25   state, other people would have to make decisions.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1760

1    That might be a time you'd have the mesa, or the

2    table, who would make decisions.

3              Okay.  Now, the important thing here that

4    defense focused on, other than everything else that's

5    listed here, is that this expert, in 2008, indicates

6    there were different factions within the SNM.  It

7    doesn't say there are four gangs.  It says that there

8    is one gang with different factions.  So the example

9    used in the pleadings was Congress.  And Congress is

10   one body.  People are members of Congress; they have

11   different committees of Congress.  You have

12   Republicans, Democrats, Independents, and others, but

13   they're still members of Congress.  The same thing

14   applies here with the SNM.  So here, once again, I

15   said even the expert in the best example they can use

16   from all the discovery is that there are factions

17   within the organization.  And at the end of this,

18   you'll see that the person concludes that the SNM is

19   a statewide gang, singular.

20             Something else here is the SNM adopted

21   ligature strangulation as its method of choice for

22   murders.  And this has been a traditional means of

23   doing so.  So the 2001 murders alone, executed on the

24   same day, were ligature strangulation murders.  So it

25   was a signature murder at the time, and one of the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1761

```
 1   ways they executed people.

 2           And here's what I talked about earlier.

 3   Even this expert indicates the SNM is a statewide

 4   prison gang.  So it's a gang that operates throughout

 5   the state.  It's one gang and not multiple gangs.  So

 6   that was a 2008 report.

 7           The next report -- Document 1056-3, which

 8   is a defense exhibit -- is a 2009 meeting.  And once

 9   again, even though 2008 says the gang is in disarray,

10   even in 2009, it's alive and well.  And someone is

11   talking about this particular person's experience

12   with the gang.

13           So once again, the SNM is a New

14   Mexico-based prison gang.  And it references a number

15   of names here.  In the next paragraph it indicates

16   each of these became members of the SNM.

17           Going back to structure and leadership,

18   this is on Bates stamp 15409, "Eventually" -- the

19   name is redacted -- "met Juan Baca, the original

20   founder of the SNM.  Baca had just returned to the

21   NMDOC, and had been working to solidify the presence

22   of the SNM gang in the prison system."  This tells

23   you there is a continuity of the gang, and there are

24   times when they're fighting to solidify their

25   presence and make sure their existence continues.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1762

```
 1              Here, there's another part indicating that
 2     "Baca and Jacobo were still working to formally set
 3     up the SNM.  And they asked" -- the name is redacted
 4     -- "to be one of the first to set up the blood-in
 5     blood-out example.  In order to do this, the person
 6     had to either stab or kill someone from the rival
 7     gang."  So once again, there are rules for membership
 8     and the rules for getting in and possibly out of the
 9     gang.
10              Okay.  "When outside the Department of
11     Corrections, the SNM still aligns itself with the MM,
12     which I think is the Mexican Mafia.  Although the SNM
13     is outnumbered in some prison facilities in other
14     parts of the country, the organization has a
15     reputation of being a powerful gang."
16              Let's talk about the next page, 15411.
17     "The founding members include Baca, Armijo, Kendrick
18     Duran" -- some other redacted names -- "Julian Romero
19     and Billy Garcia."  As the Court knows, Billy Garcia
20     is charged in this case, and Julian Romero is a
21     victim in this case.  And once again, "these senior
22     members would have to vouch for potential members."
23     So the same thing is happening -- a separate person
24     indicating what the rules are of the organization,
25     how to get in, and it requires other people to raise
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1763

```
 1    their hand for you.
 2              "Baca told another person to recruit
 3    members to grow the organization."  So once again,
 4    we're talking about recruitments, and one
 5    organization.
 6              "There are known SNM members throughout the
 7    U.S. Bureau of Prisons system."  So once again, once
 8    the SNM become members of the federal system in the
 9    Bureau of Prisons, they latch on to other members if
10    they can.
11              Here is an indication that when this person
12    left the federal system, he tried forming a different
13    group, with the idea being that they utilized the
14    organization as a cover for holding its own
15    organizational meetings in the prison system.  So
16    there is a indication of a cover, so that they
17    continue meeting as a group.
18              On Bates stamp 15414 of DeLeon, it says
19    here, "There is an agreement between the SNM and the
20    LC" -- which is Los Carnales -- "that outlines a
21    mutual respect between the organizations, despite
22    their different affiliations."  So that's another
23    example of one organization having an agreement with
24    another organization.  It's not different
25    organizations called the SNM having an agreement with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1764

```
 1    the LC.

 2            The SNM always maintained a hit list, which

 3    had names of individuals who were known to

 4    misrepresent themselves by calling themselves SNM

 5    members or associates.  So here is an example of

 6    somebody -- if somebody claims to be an SNM member,

 7    and isn't a member, there are consequences for that,

 8    or even if they claim to be an associate.  So

 9    claiming to be a member could result in death.  So

10    there is definitely a difference between members and

11    nonmembers.

12            At the bottom, there is an indication

13    that -- the names are redacted --

14            THE COURT:  What would be the benefit of

15    somebody wanting or identifying themselves as an SNM

16    member, but not being an SNM member?  Why would

17    anybody do that?

18            MR. CASTELLANO:  It may be so they have the

19    protection of the SNM, or at least someone believing

20    they're a member will know that someone won't move

21    against them because they think they are a member.

22    And if you move against a member and you don't have

23    the right to do so, there could be retaliation.  So

24    that's an easy example, at least, of why you might

25    claim that.  Especially, if you don't belong to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1765

 1   someone in prison, you don't have anyone to protect

 2   you necessarily, so this would be a means of doing

 3   so.

 4            "These are the people, along with Ray Baca

 5   a/k/a "Pup," are running the SNM in the Southern New

 6   Mexico Correctional Facility.  Both have been members

 7   since the early '80s, and were brought into the SNM

 8   by another person and Kendrick Duran."  Here is a

 9   notification, in 2009, that "Pup" is running the SNM

10   at the Southern New Mexico Correctional Facility.  So

11   there is a question about leadership and where and

12   when.

13            On the next page, 15416, "Currently the SNM

14   is attempting to organize itself on the outside of

15   prison.  In Las Cruces approximately five or six

16   members are recruiting and organizing on the streets.

17   Members are also trying to recruit and organize in

18   Albuquerque.  As long as the SNM considers itself

19   organized on the outside of the prison, individuals

20   are expected to send money to members in the prison."

21   So this is another means of supporting members in

22   prison.  People are supposed to send money in prison

23   so people can have commissary and other privileges.

24            THE COURT:  This note, though -- if this is

25   a 2008 document -- or 2009 -- I guess I'm surprised

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1    that it's like in the present tense, like the SNM is

2    not organized outside of the prison.  I would have

3    thought from the allegations that it was organized

4    outside of the prison before that date.

5           MR. CASTELLANO:  Oh, before that date?

6    Well, the prison system is a rotating door, so you

7    have members who are in prison and who are released

8    from prison.  So, obviously, once you're out of

9    prison, you may still be S, or you may go back to

10   your street gang.  But once you go back into prison,

11   you belong to the S, and you support the gang.

12           In terms of rules, once again, at the

13   bottom of the page, "Before being released from

14   prison, members get instructions from their

15   leadership regarding drug sales, hits, and are often

16   provided with phone numbers to put them in contact

17   with other members on the outside who can help them

18   start making money."  So once again, there are rules

19   and there are instructions and a means of continuing

20   the organization and hitting those who fall out of

21   grace with the organization.

22           Okay.  15417 is the Bates stamp number for

23   this page.  It indicates -- this is even as far as

24   back at 2009 -- "Ray Baca, a/k/a "Pup," was sent to a

25   Nevada prison in approximately 1996 or 1997, because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1767

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 28768

1    he was creating a great deal of disruption within the

2    system.  Because of his strong influences within the

3    SNM, he had control over much of the violence

4    occurring in the prison."  And this is the last time

5    this person spoke to Mr. Baca directly.  "Mr. Baca

6    always has a strong influence on new recruits joining

7    the SNM."

8           There is another rule, separate and apart

9    from the acts they commit:  "Before a person is hit,

10   he is supposed to be given the opportunity to explain

11   his side of the story.  This is written in the SNM

12   bylaws."

13          THE COURT:  Have you ever seen a written

14   set of bylaws?

15          MR. CASTELLANO:  I have not, Your Honor.

16          Here, a "person named Juan Mendez is

17   currently not in good standing with the SNM, and is

18   trying to reestablish himself within the

19   organization.  When members like Mendez come back

20   into the fold, they're expected to do something to

21   prove themselves."  There is an indication here that

22   at that time the rules of the SNM at Southern were

23   stricter than they were previously.  So, like I said,

24   there are people who have control or shot-calling

25   ability at each facility.  And at that time Southern

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1768

```
 1   had a tougher set of rules.

 2              The other thing I want to indicate about

 3   the All Stars is that I don't think there is any

 4   person in this room that's a member of the All Stars.

 5   The All Stars was an attempt to start a group, and as

 6   far as I know, they are extinct.  I don't think

 7   anyone in this room represents the All Stars.

 8              THE COURT:  What happened to them?

 9              MR. CASTELLANO:  The SNM attacked them.

10   When they tried to separate and form their own group,

11   that didn't work out too well for them.  In the

12   16-1613 case there is a -- in some of the overt acts

13   there is an indication of an assault on, I think, LT;

14   might be Leroy Torres.  And he was assaulted for his

15   attempts to try to break away and form a group.  And

16   like I said, that didn't go well for him.

17              THE COURT:  What happened to them?  Did

18   they become ex SNM members?  Did they get kicked out?

19   Get killed?  What happened to them?

20              MR. CASTELLANO:  I think all of the above,

21   Your Honor, depending on what they were trying to do,

22   and how disrespectful they were to the organization

23   as they tried to do so.

24              THE COURT:  So the All Stars, every one of

25   them are no longer SNM Gang members according to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1769

```
 1    Government?
 2            MR. CASTELLANO:  I don't believe that they
 3    are.  I'm not aware of any -- and I can check with
 4    the case agent -- but like I said, as they started to
 5    try to form a different group, the All Stars fell out
 6    of the favor.  And that is indicated in some of the
 7    overt acts in 16-1613.  There was a person who was
 8    assaulted as a result of his attempts to form the All
 9    Stars.
10            So looking at even the defense's exhibits,
11    one person alone, even out of one or two documents
12    here, could establish the enterprise, its existence,
13    the fact that it's ongoing, the fact that it engages
14    in racketeering activity, the fact that it engages in
15    interstate commerce.  So the only thing left would
16    be -- we would have to prove -- is that each
17    individual committed the crime charged, the
18    underlying crime of violence, and that they did so to
19    maintain or increase their position in the
20    enterprise, or to gain admission into the enterprise.
21    And even these reports indicate how someone gains
22    admission.  And that would be normally committing an
23    act of violence, and three people vouch for you to
24    gain entry into the enterprise.  So all the evidence
25    they need is here in the documents they presented.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1770

```
 1   And as I stated, we have over 20,000 pages of
 2   hardcover discovery.
 3           So, as I say, based on this, Your Honor, I
 4   would ask the Court to deny the motion for bill of
 5   particulars, especially in light of the fact that we
 6   have an indictment that covers the elements of the
 7   offense.  The report by the expert was 2008.  Our
 8   agents have been talking to people more recently than
 9   that.  The indictment is formed from the discussions,
10   from the discovery, the historical discovery, and
11   discussions with current leaders and members who have
12   given statements to the agents.  So that information
13   is accurate in the indictment.  It's based on the
14   overall investigation, as well as -- including the
15   investigation, discussion with gang members.  We've
16   had a lot of time to meet with members since the 2008
17   report was authored by Robert Martinez.  But as I
18   stated, even that report falls in our favor.
19           I don't have anything else, unless you have
20   questions.
21           THE COURT:  Is there anything you want to
22   say on these questions that Mr. Lowry has listed in
23   his reply brief?
24           MR. CASTELLANO:  Let me take a look, Your
25   Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I answered question 3 from their documents.

2    I answered question 4 from their documents.  I

3    answered, basically, question 5 from their documents.

4    And the question then is:  "Who are the individuals

5    responsible for putting or authorizing each act in

6    this case?"  That's not necessarily a requirement

7    for -- I think some of that was in the discovery, and

8    some of it will be revealed in Jencks.  But there is

9    no requirement that we show who authorized it.  We

10   have to show that they either they committed the act

11   or aided and abetted in the act that's charged in the

12   indictment.  And I answered question number 1 as well

13   from their own documents attached, and I think

14   question 2 as well.

15          THE COURT:  All right.

16          MR. CASTELLANO:  As I stated, these are

17   their documents.  I'm assuming it's the best example

18   they could find from 20,000-plus pages of discovery,

19   which means there is more out there, and probably

20   better and stronger evidence from the other

21   documents.

22          THE COURT:  All right.  Anything further,

23   Mr. Castellano?

24          MR. CASTELLANO:  No, Your Honor.

25          THE COURT:  Thank you, Mr. Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1772

```
 1              Before Mr. Lowry speaks, any other
 2    defendant want to speak on this motion for bill of
 3    particulars?  All right.  Mr. Lowry.
 4              MR. LOWRY:  Thank you, Your Honor.
 5              I would like to thank my colleague for
 6    getting up and sort of underscoring some of the
 7    problems we faced during the investigation and
 8    document review.  The United States just took the
 9    record here and stated that there are certain rules,
10    and went over a document saying that all of these
11    were the rules of the SNM.  And this is exactly why a
12    bill of particulars is warranted.  Because, if the
13    United States is saying, as they just told Your
14    Honor, that this was a blood-in blood-out gang, and
15    that that was a rule of the SNM, well, that would
16    tell me that anybody that didn't blood-in was not an
17    SNM member.  And, Your Honor, I think they would have
18    a great deal of problem.  Because I think a number of
19    the confidential human sources that they will offer
20    to this Court as SNM members never blood-in to this
21    gang.  So if that's a rule --
22              THE COURT:  Yeah, but you just told me in
23    your argument you don't need to know the evidence,
24    you want to know what their charges are.  You just
25    got a disclosure of what their theory is.  And now
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1773

 1    you're coming back and saying, Well, where is the

 2    evidence.

 3              MR. LOWRY:  No --

 4              THE COURT:  That's the problem I'm having

 5    with your argument, and I indicated this yesterday:

 6    You want to know what their theory is.  You've heard

 7    their theory, it's fairly detailed.  Then you come

 8    back and say, Well, they're going to have problems

 9    with it.  Well, that's not a bill of particulars.

10              MR. LOWRY:  Okay.  But, no, Your Honor, I

11    apologize.  That is --

12              THE COURT:  That is what you just said.

13              MR. LOWRY:  Well, I'm saying --

14              THE COURT:  That's inconsistent with what

15    you said yesterday and earlier today.

16              MR. LOWRY:  Well, I beg to differ, Your

17    Honor.  What I'm saying is that this is exactly what

18    I wanted to know, what their -- what I'm saying is I

19    would really like the United States to think about

20    this, because I think this was a rather hasty

21    response.

22              THE COURT:  But, Mr. Lowry, with all due

23    respect, that's not what the bill of particulars is

24    for, to make the Government think.

25              MR. LOWRY:  Okay.  It's to put us on notice

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1774

 1   of how this enterprise existed.  And if they're going

 2   to say that -- take the example, if you will, they

 3   said that these different factions are like different

 4   memberships of Congress, and I want to take that

 5   analogy head-on.  Well, Congress has to vote on

 6   something in order to ratify a decision.  And that's

 7   what I'm looking for here, Your Honor, is if they're

 8   saying that these factions of the SNM was like

 9   Congress, what I'm looking for is, well, how did they

10   make a collective decision?  Because what I'm

11   struggling with in this case is how to distinguish

12   decisions that were made by individuals, non-SNM

13   people, that are being attributed to this alleged

14   enterprise of the SNM.  And having an idea of how the

15   Government thinks this enterprise was structured

16   would be instrumental to the defense to articulate a

17   difference between allegedly valid SNM activity and

18   otherwise non-SNM activity.

19          That's really where I'm going with this,

20   Your Honor.  It's not to delve into specific -- the

21   detail of this, but I was using that as a point to

22   say, if they're saying that these are the rules, then

23   let's talk about that.  Because they just got up and

24   said Southern had different rules.  And this is the

25   point I'm trying to make:  If there are different

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1775

1   rules in different places, then we're talking about

2   different organizations, different subgroups.  We're

3   not talking about an umbrella group.  And I'm trying

4   to figure out what is the structure of the umbrella

5   group.  And this is a constant battle.  And I think

6   the United States just highlighted that, that

7   Southern has different rules.  Well, that to me, is

8   talking about a different organization.  It's not

9   talking about the SNM.

10          I just heard that the All Stars completely

11  broke away from the SNM.  That's interesting to me,

12  as we pointed out in a footnote in our brief.  On the

13  All Stars, your Honor asked the United States what

14  happened to the All Stars.  Well, they all became

15  government informants.  I mean, Mr. Archuleta,

16  Leonard Lujan and others.  So that's what happened to

17  the All Stars.  Not only did they break away and

18  apparently drop out of the SNM, they became

19  informants.

20          So I'm just -- this is the problem I'm

21  having:  Different rules, different places.  I would

22  like to know how the overarching organization was

23  structured.  And if we want to say that one 302 laid

24  out all the rules, that would give me a template.

25  But there are plenty other 302s from different

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1776

 1    confidential human sources that have different ideas
 2    about players, who was the leader.  We saw in that,
 3    you know, that particular CHS thought Mr. Baca had
 4    influence.  And there are other people that would
 5    say, Well, I think Mr. Archuleta had the influence.
 6    And there are other people that talk about the
 7    differences between Mr. Archuleta and Mr. Baca, and
 8    who followed who, and for what reasons.
 9             So what I'm looking for is clarity here,
10    Your Honor, so we can structure a defense.  For
11    instance -- and I'm not trying to get down in the
12    weeds here -- but the United States said that there
13    is a rule of the SNM that before somebody was hit,
14    that they would get to explain their side of the
15    story.  Well, if that's the rule, and an individual
16    never got to explain their side of the story, that
17    tells me that that was not an SNM hit.
18             And so this is -- I'm a little befuddled,
19    frankly, that there is this hodgepodge of statements
20    by all kinds of people.  And, Your Honor, not
21    surprisingly, many of these confidential human
22    sources are contradictory.  And trying to discern
23    what the, quote, "rules" for the SNM are, based on
24    any one report, is fraught with peril.
25             So, again, what we're looking for is not --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1777

1    what we're looking for is to understand how this

2    enterprise is structured in a way that it made

3    collective decisions.  And it's like any type of

4    agency.  If they're going to claim that any

5    individual was acting as an agent of the umbrella

6    organization, we need to know how that agent was

7    empowered with that authority to act on behalf of the

8    whole.  And that's what we're driving after here in a

9    bill of particulars.  And I still don't have it.

10              I mean, there was a great mishmash of

11   references to tablas, and this person was the leader.

12   But I didn't get any sense of how a collective

13   decision was made.  And that's what I'm looking for,

14   Your Honor.

15              If you have any questions --

16              THE COURT:  I do not.  Thank you, Mr.

17   Lowry.

18              Well, I'm going to deny the motion for a

19   bill of particulars.  I think the charges against Mr.

20   Baca and the other defendants who joined the motion

21   are sufficiently clear.  One of the things the case

22   law teaches you is that even if you might have

23   concern about the particularity of an indictment, the

24   discovery can cure any -- cure some of the problems

25   with a lack of specificity.  I know we had a special

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1778

```
 1    date or something for filing this motion, and pushed
 2    it to April.  But, generally, these are brought early
 3    in a case, when defendants are grappling with an
 4    indictment that may have been drafted rather rapidly,
 5    and not as full and robust as the indictment,
 6    superseding indictments that we have here.  And it's
 7    been supplemented with a large amount of discovery.
 8              I think, largely what Mr. Baca is pointing
 9    to are problems with the Government's case.  And I
10    think those are more appropriately resolved at trial
11    and arguments, rather than continuing to try to hit
12    the Government with more specificity as to what their
13    theory is going to be.  It seems to me it's pretty
14    well set.  So I don't think that we need to
15    supplement it with a bill of particulars.  So I'll
16    deny that request.
17              All right.  Then the final motion that I
18    think we have for today is the one I talked about a
19    little bit earlier, is that -- is the one that Mr.
20    Gallegos filed, Andrew Gallegos, and then Joe
21    Gallegos joined it as well.  So Mr. Roberts, Mr.
22    Benjamin, one of you going to argue this motion?
23    Looks like Mr. Roberts.
24              MR. ROBERTS:  Thank you, Judge.
25              THE COURT:  And I guess you joined this as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1779

```
 1    well, Ms. Arellanes, for Shauna Gutierrez?

 2              MS. ARELLANES:  I did, Your Honor.

 3              THE COURT:  Okay.  All right.  Sorry I

 4    didn't mention that.

 5              Let me, Mr. Roberts, indicate that Mr.

 6    Creecy just appeared for -- at 9:10.  Mr. Creecy, are

 7    you back there?

 8              MR. WINDER:  He did, but he left.

 9              THE COURT:  All right.  So he appeared and

10    went.

11              And Mr. Blackburn, you just appeared as

12    well for Mr. Garcia.  Good morning to you.

13              MR. BLACKBURN:  Good morning, Your Honor.

14              THE COURT:  All right.  Mr. Roberts.

15              MR. ROBERTS:  Thank you, Judge.

16              THE COURT:  Mr. Roberts.

17              MR. ROBERTS:  Judge, I won't take up, I

18    don't think, too much of your time.  These issues

19    have been sort of litigated.  The Court has already

20    made -- looks like -- a decision on this, or at least

21    proposed a decision.  But to the extent that the

22    Court will remain fluid, as it's indicated on these

23    issues, we would like to say a few things on behalf

24    of Mr. Andrew Gallegos specifically, and just a few

25    things we'd like to point out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              First of all, this motion to sever is not
 2    too unsimilar to that filed by Mr. Santos (sic), by
 3    Erlinda Johnson, in that there are some similarities,
 4    in that my client, and I believe also Mr. Joe
 5    Gallegos, denies being a member of the SNM group.  My
 6    guy specifically, Andrew, has no affiliation that I'm
 7    aware of, or that I see in the discovery, in the
 8    20,000-plus pages of discovery, that indicates that
 9    he's a member of the SNM.
10              There is also similarity in that the crimes
11    occurred outside of prison.  This was not a prison --
12    Counts 4 and 5 are very specific to Adrian Burns --
13    was not done in prison, so it was not a prison crime.
14              There is wide disparity, as Ms. Johnson
15    pointed out, in terms of the time, the location of
16    these crimes, and that they were not connected or
17    similar in any way.
18              And there is also questions that she
19    pointed out in terms of the enterprise, who ordered
20    the hit, how the papers came down, the hits came
21    down, or how the enterprise worked.  Those are all
22    similarities.  And I'm not going to belabor that.
23              What I'd like to talk about is the
24    disparity of evidence against my client, as
25    against -- as opposed to the other individuals in
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1781

 1   this case collectively.  There is very little

 2   evidence as to my client, Andrew Gallegos',

 3   involvement in this enterprise or in this crime.

 4            As the Court's aware, this was first

 5   indicted against him back in 2012 by the state.  It

 6   was a state case.  And shortly after its indictment,

 7   it was dismissed, nolle pros'd for lack of evidence.

 8   So they determined at that time that there was not

 9   enough evidence to go against my client or against

10   Joe Gallegos.  I think that nolle pros came down in

11   November of 2012.

12            And the state picked it up four-plus years

13   later.  And the only difference was this issue of

14   VICAR that they brought into it, that made it not a

15   state case but a federal case.  As far as I'm aware,

16   there is no real new evidence from what the state had

17   to what the Government now has four or five years

18   later, except I heard yesterday that there were a

19   couple -- or maybe it was the day before yesterday --

20   a couple of corroborating or cooperating witnesses

21   that will give some information as to the beef

22   between Joe Gallegos and Adrian Burns.  That's sort

23   of the first time that was really confirmed to me.

24   I'm not sure exactly what these witnesses are going

25   to testify, but I suspect it's something to indicate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1782

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43783

1    that Joe had a beef with Andrew.

2              THE COURT:  Now, are these -- did you

3    understand these to be witnesses that the defendants

4    are going to present or the Government is going to

5    present?

6              MR. ROBERTS:  The Government stated that

7    they had these witnesses; that they had them after

8    they indicted him.  Remember, they stated that the

9    Grand Jury --

10             THE COURT:  I remember the beef.  But I

11   didn't -- I thought it was more a defense theory than

12   it was a Government's theory.  But maybe I

13   misunderstood it.

14             MR. ROBERTS:  The Government stated, I

15   believe, in Mr. Benjamin's motion to release the

16   Grand Jury statements, they stated they didn't put on

17   any specific evidence on VICAR.  But after the Grand

18   Jury was -- the indictment came down, they had other

19   witnesses -- two -- I believe a couple was stated --

20   other witnesses that would testify regarding the

21   conflict between the Gallegos brothers and Mr. Burns.

22   That statement was made at that time.

23             And that was fairly new to me.  Like I

24   said, I'm not sure exactly what these witnesses are

25   going to say.  I suspect it's mostly -- may refer

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1783

1    mostly to Andrew.  It's probably hearsay, for all I

2    know.  I'm not sure.

3            But what I do know in terms of what they

4    have or don't have in terms of Count 4 and 5, they

5    don't have any DNA evidence.  They don't have any

6    fingerprint evidence.  There is no confession.  There

7    is no statement regarding this that I'm aware of.

8    There was, supposedly, a wire that was withdrawn, so

9    there is no wire.  There is no tape-recording that

10   I'm aware of.  There is no video evidence.

11           The body of Mr. Burns was found sometime

12   after he was killed at a different location.  So I'm

13   not sure if we have evidence as to when exactly he

14   was killed.  He was apparently shot in a different

15   location, and brought to a remote location in the

16   bosque, and burned, from the evidence.  But we don't

17   know exactly when that happened, when that occurred.

18           The gang connection, in terms of what the

19   Government has proposed, is somewhat tenuous.  This

20   feeder gang concept that they've put forward, it's

21   not clear, even -- again, how, or who ordered this

22   murder, where it came from, how it came down.

23           There is issues on the VICAR regarding how

24   that all operates, as you've heard some arguments on

25   that today and yesterday with the bill of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1784

 1    particulars, and Mr. Benjamin's motion yesterday.

 2         So five years after this apparently

 3    happened, there is very little evidence that I see in

 4    the discovery that links Andrew Gallegos to anything.

 5    I don't have anything.  I don't see it.  He's only in

 6    this case, it appears to me, because he's Joe

 7    Gallegos' brother.  That's it.  If he was not Mr.

 8    Gallegos' brother, he wouldn't be here, I wouldn't be

 9    here.  That's the only way -- Joe Gallegos,

10    unfortunately, is charged in six counts.  My client

11    is charged in one count, one count alone.  Now, when

12    I say "one count," I meant one murder.  There are two

13    counts, obviously, 4 and 5, but one incident and one

14    murder, alleged murder.

15         Now, that's what they have on Andrew.

16    That's pretty much it.  But in terms of what they

17    have on all the other defendants, I'd like the Court

18    to consider that they have much more, and that this

19    disparity of evidence is what prejudices my client,

20    puts him at a disadvantage.  Because there is going

21    to be quite a bit of testimony, as you've heard

22    already, and seen, regarding the other defendants.

23    And I'm using that collectively, because there are a

24    lot of defendants, and there is a lot of testimony

25    that will be heard.  There is over 20,000 pages,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   you've heard, of testimony (sic), mostly dealing with
 2   everyone else except my client.  There will be
 3   evidence of -- much stronger evidence of actual
 4   events that took place.  There's a videotape, gross
 5   gruesome murder, stabbing video.  There is
 6   tape-recordings, wires of people making statements
 7   or -- damning statements; secret statements that were
 8   made as well.  There will be a multitude of CIs,
 9   known and unknown, against the other defendants.
10   There are some defendants that very clearly were
11   members of the SNM, who have a pedigree of sorts in
12   the organization, that will be presented aside from
13   my client's involvement.  There will be possible DNA
14   evidence, I believe.  Maybe even fingerprint
15   evidence.  But all going towards these other 19 or so
16   defendants, none towards my client.  But yet, my
17   client will have to be seated in the same courtroom
18   and in the same position.
19           And if the Court would imagine for a minute
20   a scale, and I just crudely am making a scale here,
21   Judge.  Say that's the scale.  And we have my client
22   on this side, and we put a few marbles on this side
23   for what the Government has.  Basically, they say a
24   feeder organization, brother of Joe Gallegos, a few
25   other things perhaps; maybe four or five items
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1786

 1    they're going to place on my side, on my client,

 2    Andrew Gallegos.  On the other side, they have all

 3    this other evidence.  They have, like I stated, a

 4    video of a gruesome murder.  They have audio

 5    recordings, they have taped confessions and written

 6    confessions.  That scale starts to tip, and starts to

 7    tip in that way.  And if you imagine the marbles on

 8    this side, the three or four on this side from Mr.

 9    Gallegos, it starts to roll down; slowly, slowly roll

10    down to the other side.  Sooner or later, the bucket

11    with all that 20,000 documents in evidence starts to

12    get filled up with my client's three or four items,

13    and they all become lumped in and they become one.

14    There is that spillover effect where they become one.

15    And once that happens, there is no corrective

16    instructions, or anything that's going to get him out

17    of that bucket.  He's going to be part of that

18    conspiracy no matter what.  And so he becomes highly

19    prejudiced by being lumped in with all these other

20    defendants.

21            And for those reasons, we're asking the

22    Court to consider to separate him.  Like I said, in

23    the Zambrano case, the jury is predisposed to convict

24    the defendant, when they would not otherwise convict

25    him because of the disparity of the evidence.  And I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1787

1  propose to the Court that that disparity exists here,

2  and that my client will be prejudiced.

3           THE COURT:  All right.  Thank you,

4  Mr. Roberts.

5           Anyone else?  Particularly anybody that

6  joined the motion?  Anybody else want to speak on

7  this motion to sever?

8           All right.  Mr. Castellano, is this going

9  to be a motion you take?

10          MR. CASTELLANO:  Yes, Your Honor.

11          THE COURT:  Mr. Castellano.

12          MR. CASTELLANO:  Your Honor, as you may

13  have guessed, we oppose the motion to sever.  We

14  think that this case is properly joined, and these

15  counts are properly joined with the rest of the

16  defendants.

17          I will note that Andrew Gallegos is not the

18  only defendant charged with only one count.  There

19  are a number of other defendants charged with one

20  count who are properly joined.  I believe Allen

21  Patterson and Christopher Chavez are only in Count 2.

22  And I'll ask someone to correct me if I get this

23  wrong.  Mario Rodriguez is charged in one incident.

24  A number of people from Counts 6 and 7 are in those

25  two counts.  So there are other examples even in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1788

 1   Counts 13 through 16, or at least 14, 15, and 16,
 2   people are involved in basically multiple counts, but
 3   one encounter.
 4           So I think the Court has considered the way
 5   this case is going to be divided up, it's not going
 6   to be 19 people at trial now that the Court has
 7   severed these trials.  So it's going to be a smaller
 8   trial.  Mr. Gallegos will not be the only person who
 9   was in one count or one incident.  So I think that
10   joinder is proper under these circumstances.
11           As far as membership is concerned, Mr.
12   Andrew Gallegos is an East Side Loco member.  That's
13   also a feeder gang into the SNM.  We also believe
14   he's an SNM Gang member.  We will have evidence at
15   trial indicating that he is, and that people who have
16   lived with him indicate that he is an SNM Gang
17   member.  Also, their brother, Frankie G, also known
18   as "Cunte," is an SNM Gang member in the federal
19   system, in the Bureau of Prisons in Texas.  So they
20   have three brothers who are members of the S.
21           In terms of this theory of evidence in this
22   case, I mean, it's a good argument, but it's --
23           THE COURT:  Does the gang function -- I
24   mean, is it the Government's theory or allegation the
25   gang functions even when some of these people go to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1789

```
 1    federal prison?

 2              MR. CASTELLANO:  Yes, Your Honor.  I think

 3    though, in the federal system they fall under other

 4    groups, but they still are identified as the SNM

 5    under other groups.  And they don't always

 6    necessarily keep close ties with the state system,

 7    even though they may.

 8              THE COURT:  Is that just because of the

 9    difficulty of doing so in federal prison?

10              MR. CASTELLANO:  I think the difficulty,

11    and then, like I said, they're not the biggest fish

12    in the pond in the federal system.  So they may

13    belong to each other and be recognized as S, but they

14    will also fall under other larger gangs.

15              As I was saying, the disparity of evidence

16    is a double-edged sword because there is a lot of

17    evidence regarding other defendants.  But it's not a

18    bad defense to say, Look at all this evidence

19    regarding these other guys, and they have almost

20    nothing on me except for this one incident.  And that

21    actually can be used to someone's advantage.  So when

22    we talk about the evidence and how much there is,

23    that's as good as it is bad, when you talk about

24    putting forth a defense before the jury.  You could

25    sit there for days and not ask any questions
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1790

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 51791

```
 1   indicating -- and indicate to the jury that you

 2   didn't ask questions because your guy wasn't

 3   involved.  I don't think that disparity of the

 4   evidence is a winning argument here, because it's

 5   just as advantageous the other way.

 6          I'd also indicate that, as the case law

 7   indicates, the jury instructions also are useful and

 8   can cure any prejudice.  The jury will be instructed

 9   that each defendant should be considered on his or

10   her own, and the jury should consider the evidence

11   only as to that person.  There is also a spillover

12   instruction, which tells the jury not to let that

13   happen.

14          And, Your Honor, I think for the most part

15   you have considered this.  I don't want to stand here

16   longer and argue unless you have questions for me.  I

17   think you made your decision.  I think you thought

18   through it carefully, and you divided in case in the

19   proper way.  And we would ask that it stay together

20   in that way.

21          THE COURT:  All right.  Thank you, Mr.

22   Castellano.

23          MR. CASTELLANO:  Thank you, Your Honor.

24          THE COURT:  Anyone else before I give

25   Mr. Roberts the last word on the motion to sever?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1791

1           All right.  Mr. Roberts, anything further?

2           MR. ROBERTS:  Nothing further, Your Honor.

3           THE COURT:  All right.  Well, as I

4    indicated on Tuesday, when I spent a little bit of

5    time at the beginning, I thought long and hard about

6    it, and I was working even this morning putting

7    charts into the opinion that I have written, that's

8    getting a little bit longer.  And, as I indicated, I

9    want to roll these motions in.  At the present time,

10   I'm not inclined to sever it further.  I think I've

11   broken it out in a way that is manageable, increases

12   the fairness to all the defendants.  I tried to

13   reduce, to a minimum, any prejudice, and still try to

14   be efficient and get these things moving toward

15   trial.  So I think I've done the best I can on

16   severance.  I'll continue to look at it.  I'll

17   continue to evaluate it as we barrel forward.  But at

18   the present time, I'm inclined to keep it on the path

19   I've indicated on Tuesday.  So I'm going to deny this

20   motion, but will continue to look at the shape of the

21   case as we get closer.  But at the present time,

22   that's how I'm going to divide it up and get ready to

23   get these tried.

24           Well, I think I've come to the bottom of my

25   well.  I think there were about 21 motions that we've

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1792

Case 2:15-cr-04268-JB   Document 1162   Filed 05/23/17   Page 53 of 67
Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 53

53

1    scheduled.  I guess the first thing I'd like to ask,

2    since most of these were defendants' motions, does

3    anyone have a batting order that you'd like for me to

4    work on on any of the motions, either that we have

5    heard, that I didn't have opinions out to you before

6    the end?  I think I've given pretty clear rulings the

7    last three days, so I don't think there is any

8    confusion.  But if you want me to look at something

9    closer, if you want me to revisit something, or want

10   an opinion on it, I'd like to serve you as best I

11   can.

12          Why don't I hear from the defendants first,

13   Mr. Castellano.

14          Mr. Benjamin, were you going to speak for

15   everybody?

16          MR. BENJAMIN:  Actually, I was going to

17   speak for myself, Your Honor, and then, actually, I

18   decided I'd rather talk to Mr. Sindel.  So if I

19   could --

20          THE COURT:  Go ahead.  Y'all speak.  You

21   can speak for yourself as well.

22          We're just going to take a break.  So we'll

23   take our morning break, and I'm going to leave the

24   courtroom.  But nobody else go anywhere.  We're

25   recessing, but y'all need to stay in here.  So

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1793

```
 1    Ms. Wild will help people if they need to use the
 2    restroom.  But right at the moment, everybody stay in
 3    here.  But I'm going to leave, and my clerk is going
 4    to leave.  Maybe that will facilitate some stuff.  So
 5    we'll be in recess for about 15 minutes.  But you
 6    need to stay in the courtroom.
 7              (The Court stood in recess from 10:28 a.m.
 8    to 11:09 a.m.)
 9              THE COURT:  All right.  I don't know why
10    I'm putting this burden on you, Mr. Benjamin, but do
11    you have a batting order?  Do the defendants have a
12    batting order of the work they'd like for me to do?
13              MR. BENJAMIN:  As to Joe Gallegos, we do
14    not, Your Honor.
15              THE COURT:  All right.  Anybody else?  Any
16    of the other defendants want me to work on something
17    earlier rather than later?  Do you feel like you need
18    some guidance, or want me to look harder at anything
19    I've done?
20              How about the Government?  I'm on my own,
21    huh?
22              MR. CASTELLANO:  None at all.  We'll defer
23    to the defense.
24              THE COURT:  All right.  Mr. Cooper, did you
25    have some suggestions?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. COOPER:  I think Ms. Johnson wanted you

2     to reconsider that severance.

3          (Laughter.)

4          THE COURT:  Just stay working on severance.

5     All right.

6          MR. COOPER:  Judge, seriously, I don't

7     think we have any preference.

8          THE COURT:  I'll just keep working on the

9     severance, then.  There is a lot there.  I'm going to

10    roll them into this other.  And then we've got the

11    Burke one coming up.  But that's going to keep me

12    busy putting that together.

13         Okay.  Second question is:  Let me get my

14    calendar.  With the trial starting July 10 for the

15    first 11 defendants -- or the first 11 that we're

16    going to try -- I think the Government had -- that's

17    a Tuesday -- I think the Government wanted to start

18    on a Tuesday rather than starting on Monday.  No, the

19    10th is a Monday.  I'm sorry.  That was something

20    else, I guess.  All right.  How long does the

21    Government anticipate that the trial will last, given

22    the 11 defendants that are in that trial, and --

23         MS. ARMIJO:  I believe in talking to all

24    defense counsel in both parts of the case, both the

25    first one and the second part, we'd anticipate six to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  eight, no more.

 2          THE COURT:  How about, just give me the

 3  first trial.  How long is the first trial going to

 4  last?

 5          MS. ARMIJO:  Six to eight weeks.

 6          THE COURT:  I severed them, so how long is

 7  the first trial going to last?

 8          MS. ARMIJO:  I think six to eight weeks,

 9  the first trial.  Because I think the Government

10  thought that it would take about four.  But I'm

11  getting from the defense eight.  And so unless

12  somebody disagrees with me, I think that, in general,

13  some attorneys said six weeks.  But to be safe, we

14  should probably say eight for the first trial.

15          THE COURT:  All right.  Any of the

16  defendants in that first trial of the DeLeon have any

17  different viewpoint?

18          All right.  Let me talk to Mr. Cooper.

19          MR. COOPER:  Judge, I think it's going to

20  be a lot closer to the eight, and I think we may even

21  exceed the eight weeks.  Judge, we have four murders

22  that we're dealing with.  And I think eight weeks is

23  conservative.

24          THE COURT:  Well, I just got done with a

25  three-day murder trial, so just because it's a murder

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1796

1    doesn't tell us a whole lot.  I know these may be

2    different, but just because it's a murder case,

3    doesn't tell us how long.

4              MR. COOPER:  We have a lot of witnesses

5    that we expect are going to hit the stand, Your

6    Honor.  I'm personally involved in the Counts 1 and

7    2; 2001 is when those murders were alleged to have

8    occurred.  Just given the fact that we have 11

9    co-defendants, 10 maybe, maybe even 9, eventually, I

10   believe that eight weeks is a conservative number.

11             THE COURT:  All right.  I'll take eight

12   weeks, we'll block off eight weeks.  But let's get it

13   tried in eight weeks.  That's a lot of time for even

14   four murders.  So let's -- I'll give you eight weeks.

15   I'll go with that estimate.  And we'll set it aside.

16   But let's get it done.  So I'm going to be monitoring

17   every day, going to be talking to everybody at the

18   end of the day:  How are we doing?  Are we on-track?

19   Let's keep it on-track, and we'll get it done in

20   eight days -- eight weeks.

21             Let me look, then, and see what that does

22   to us.  That takes us the 10th, 17th, 24th, 31st;

23   those are the first four weeks.  The 7th, 14th, 21st,

24   28th.  So the trial will end on Friday, September

25   1st.  Let me talk to Ms. Wild a second here.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              (A discussion was held off the record.)

 2              THE COURT:  We had outlined these trials --

 3    I mean, one of the things that we could do, we could

 4    keep the trials that we have scheduled:  Varela for

 5    October, and then Baca for November, and then come

 6    back and finish up the DeLeon.  What's the

 7    Government's thoughts about that?

 8              MS. ARMIJO:  Your Honor, I think our

 9    position is that the -- all of the DeLeon case be

10    tried before the Baca case.

11              And, Your Honor, I know that the Court had

12    indicated that 1613 is not coming back next Friday.

13    But is there a way to bring them back?  And I'll tell

14    the Court why.  I think that -- we've all been

15    talking -- I think that, quite honestly, we are

16    working with Mr. Santos to try and get -- Mr.

17    Gonzalez, Santos Gonzalez -- to try and get his case

18    resolved.  But our hands -- at this table our hands

19    are tied with Washington.  And so we can't get that

20    resolved this morning.  But I think that we may be

21    able to get that resolved, which would then give us

22    breathing room to continue cases.

23              The only issue then is the people in the

24    Baca case.  I think we have one or two persons that

25    the Government needs to work with, as far as whether
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1    or not there is anything we can do as far as a trial
 2    date with them or not.  And it would give us more
 3    time to work with that.  So that there is a
 4    possibility that next Friday we could come and have
 5    everything resolved.  And if we're able to resolve it
 6    beforehand, as far as the dates and everything, we
 7    could probably take the Baca people off.  But I think
 8    that given everybody's schedule, and the time crunch,
 9    that we could possibly work things out to where we're
10    not looking at any trial, other than maybe Garcia,
11    the drug trial in July.  But we just need a little
12    bit more time given that Washington needs to weigh in
13    on things.
14              THE COURT:  Well, here's my problem with
15    the Baca people.  There is no motions to be heard.
16    And if Ms. Johnson's case goes away, there is nothing
17    to be heard next Friday.  It's a whole lot of -- it's
18    hard for the marshals to put everybody together when
19    there is absolutely nothing that's going to be heard.
20    And it sounds like we're barreling toward a Friday
21    that doesn't have anything to be heard.
22              So I guess I'm reluctant -- I'm inclined to
23    just say let's have DeLeon, no Baca, because there is
24    no motions to be heard.  It's just a glorified
25    scheduling conference.  And we can do that today, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1799

 1   y'all can try to work it out.  But that's a lot of

 2   work on the marshals to just bring them in for a

 3   glorified scheduling conference.

 4           Well, let's do this, this is what I'll do:

 5   I'll set the trial.  I'll just give y'all a

 6   running -- I'll give you a trailing docket then.  So

 7   I'm going to put the rest of DeLeon on October 2.

 8   We'll put Varela on October 2.  We've got the trial

 9   set for July 10.  We'll keep Baca on for November.

10   And that will keep -- everybody has got a trial date.

11   We'll just see how it goes.  It's a long time till

12   October 2, so I'm not going to start getting too

13   worked up about that.  I think the visibility will be

14   clear.  Let's plan on DeLeon 8:30 next Friday.

15           Ms. Johnson, if yours goes, you're going to

16   be first up.  Do you have an estimate how long your

17   motions are going to take?

18           MS. JOHNSON:  We're talking about the

19   motion to suppress and the motion for Jencks hearing,

20   Your Honor?

21           THE COURT:  Yes.

22           MS. JOHNSON:  The motion to suppress may

23   take -- depending -- I don't know if the Government

24   is going to call any witnesses, but that may take

25   maybe half an hour, 45 minutes, depending.  And if

SANTA FE OFFICE                                                     MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1800

1801

```
 1   they call a witness, I would say maybe about an hour.
 2   The Jencks hearing, obviously, that one is going to
 3   be a lot longer.  That may take a full day.
 4           Your Honor, with regard to what Ms. Armijo
 5   just mentioned, we have been -- the Government and
 6   Mr. Gonzalez have been in negotiations, and I think
 7   we're very close to resolving his case.  However, I
 8   would ask -- and I know it's in D.C.'s hands -- I
 9   would ask that perhaps the Court order the
10   Government, so that they could relay this to
11   Washington, that you set a deadline.  Because I have
12   actually blocked out pretty much the rest of the week
13   and the weekend and next week to work on motions in
14   limine.  And so it would be nice to know if we're
15   going to resolve Mr. Gonzalez.  I'd like to know, and
16   Mr. Gonzalez, I know, would like to know.  Perhaps by
17   the end of today?
18           THE COURT:  Well, how do you feel about
19   that, Ms. Armijo?
20           MS. ARMIJO:  Well, one, this table over
21   here, at least the attorneys, are going to be
22   traveling from here to Las Cruces, a three-hour drive
23   with intermittent cell reception.  And so I don't
24   think that's a good idea.  They know.  I spoke to
25   them last night.  They know that we're in court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1801

```
 1   today.  And I think I could probably get an answer.
 2   But I don't know that I'll get an answer today.  So I
 3   would prefer not to have the Court order anything,
 4   just because I don't want them to push back and just
 5   say, Okay, well, then we just forget it.
 6           THE COURT:  Well, that's just not my style.
 7   I don't get involved in plea negotiations.  And that
 8   seems to me getting my feet down the path.  So I'm
 9   not going to get involved in that.
10           MS. JOHNSON:  Your Honor, what I was asking
11   was perhaps just a deadline.
12           THE COURT:  That's just not my style.  You
13   know, there are some judges that set deadlines on
14   pleas.  If one of these guys wants to plea, you know,
15   we'll take a plea.  But it's just not my style to get
16   involved.
17           MS. JOHNSON:  I understand.  So we'll be
18   ready for our motions.
19           THE COURT:  All right.  Now, it sounds like
20   what you're telling me is I can't set anything up in
21   other cases.  Troup and Garcia want their motion to
22   sever teed up and heard on the 19th.  So as far as
23   Garcia and Troup, be patient with me.  If it doesn't
24   get heard, don't be upset with me if your expert
25   comes in.  I have no control over it.  We'll do Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1802

 1 | Johnson's motions first.  If your expert is sitting
 2 | there, I can't do anything about it.  So you might
 3 | want to be really talking to Ms. Johnson.  But at the
 4 | same time, I don't want to set aside the 19th for
 5 | SNM, and then we not hear that motion.  So I know
 6 | that's putting you in a bind.  But it's called
 7 | litigation, right?
 8 | MS. HARBOUR-VALDEZ:  Thank you.
 9 | THE COURT:  How long do you think that will
10 | take?
11 | MS. HARBOUR-VALDEZ:  My understanding, in
12 | talking to Mr. Burke, is that we were going to forego
13 | putting Professor Lieberman on the stand, and just
14 | submit his affidavit.  It was clear that the Court
15 | had considered that, based on your comments on
16 | Tuesday.  If that changes, I will notify Ms. Wild.
17 | THE COURT:  Okay.  Let Ms. Wild know.  All
18 | right.  Do you know how long you think the motion
19 | hearing will last for your motion?
20 | MS. HARBOUR-VALDEZ:  Without Professor
21 | Lieberman, I think the motion to sever is 30 minutes.
22 | And on the motion to compel, we've been in
23 | conversations with the Government.  We're going to
24 | try to work that out.  And that motion may go away as
25 | well.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1803

```
 1                THE COURT:  Okay.  If Ms. Johnson goes
 2    away, I'm going to give you two hours, and then I'm
 3    going to go work on other stuff.  So I'll give
 4    everybody two hours that morning, and then I'm going
 5    to fill it up with other stuff.
 6                Okay.  What else?
 7                THE CLERK:  That's all.
 8                THE COURT:  All right.
 9                MS. DUNCAN:  Your Honor, if I could have a
10    moment?
11                THE COURT:  Certainly.
12                MS. DUNCAN:  I was going to raise an issue
13    on Document 1124, which is our motion to -- with
14    respect to the tablets.  We'd mentioned to the Court
15    that we asked the Government to preserve the tablets
16    of the informants who had tampered with them and
17    accessed the internet.  And I wanted to clarify what
18    our request was.  And I think the Government has now
19    agreed with our request.  Our request is that for the
20    informants who tampered with their tablets, they
21    abused the Government's and Court's trust accessing
22    the internet.  We don't know what they accessed.  It
23    could be pornography, they could be communicating
24    with people about the case.  So the tablets
25    potentially contain Brady and Giglio information.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1804

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 65

```
 1    we'd ask the Government to conduct a Brady-Giglio
 2    review of the informants' tablets, and to turn over
 3    that information.  My understanding, the Government
 4    does not object to the request.  So we wanted to put
 5    that on the record to close out that motion.
 6              THE COURT:  Is that correct?
 7              MR. BECK:  I think I agree with the end of
 8    it, that we will conduct a Brady and Giglio review.
 9    I'm not sure I agree with her characterizations at
10    the beginning.  But we understand our Brady and
11    Giglio obligation, and we will conduct a review.
12              THE COURT:  Okay.  I'm sorry, what did you
13    disagree with what she said?
14              MR. BECK:  I think I disagreed with the
15    fact that it was a breach of the Government's trust.
16              THE COURT:  Oh, okay, oh, the wind-up.
17              MR. BECK:  Right.  Yes.  Where it came over
18    the plate, I saw that pitch clearly.
19              THE COURT:  But the agreement, you agree
20    with what you agreed to do, right?
21              MR. BECK:  Yes.
22              THE COURT:  All right.  What else, Ms.
23    Duncan?
24              MS. DUNCAN:  That's it, Your Honor.  Thank
25    you very much.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1805

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 66806

```
 1              THE COURT:  Thank you, Ms. Duncan.

 2              All right.  Ms. Wild, anything else?

 3              All right.  Is there anything else we need

 4      to discuss while we're together?  Anything else I can

 5      do for you, Ms. Armijo?  Mr. Castellano?  Mr. Beck?

 6              MS. ARMIJO:  No, Your Honor.

 7              THE COURT:  How about from the defendants?

 8      Anything else?

 9              All right.  I appreciate your hard work.

10      Be safe on your trips.  See you next Friday in the

11      DeLeon case -- no Baca case -- 8:30.

12              (The Court was adjourned.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1               C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7          I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13         In testimony whereof, I have hereunto set my

14   hand on May 17, 2017.

15

16

17

18         _____
           Jennifer Bean, FAPR, RMR-RDR-CCR
19         Certified Realtime Reporter
           United States Court Reporter
20         NM CCR #94
           333 Lomas, Northwest
21         Albuquerque, New Mexico 87102
           Phone:  (505) 348-2283
22         Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                        CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8

9

10

         Transcript of Motion Proceedings before
11   The Honorable James O. Browning, United States
     District Judge, Albuquerque, Bernalillo County,
12   New Mexico, commencing on May 19, 2017.

13

     For the Government:  Ms. Maria Armijo; Mr. Randy
14   Castellano; Mr. Matthew Beck

15   For the Defendants:  Mr. Brock Benjamin; Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
16   Mr. Robert Cooper; Mr. James Lahann; Mr. Orlando
     Mondragon; Mr. Noel Orquiz; Mr. Billy Blackburn; Mr.
17   Scott Davidson; Mr. Santiago Hernandez; Mr. Richard
     Jewkes; Ms. Amy Jacks; Mr. Josh Spencer; Mr. B. J.
18   Crow; Mr. Marc Lowry; Ms. Theresa Duncan; Ms. Amy
     Sirignano; Mr. Michael Davis; Mr. Ryan Villa; Ms.
19   Justine Fox-Young; Mr. Donovan Roberts; Ms. Erlinda
     Johnson; Ms. Angela Arellanes; Mr. Alfred Creecy

20

21   For the Defendants (Via telephone):  Ms. Carey
     Bhalla; Mr. Christopher Adams

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Good morning everyone.  I
 2   appreciate everyone making themselves available to me
 3   this morning.
 4              All right.  Court will call United States
 5   of America versus Angel DeLeon, Criminal Matter No.
 6   15-CR-4268 JB.
 7              If counsel will enter their appearances for
 8   the Government.
 9              MS. ARMIJO:  Good morning, Your Honor.
10   Maria Armijo, Randy Castellano, and Matthew Beck on
11   behalf of the United States.
12              THE COURT:  All right.  Ms. Armijo, Mr.
13   Castellano, Mr. Beck, good morning to you.
14              And for -- we'll take these in some order.
15   For Defendant Lawrence Gallegos?
16              MR. BENJAMIN:  Good morning, Your Honor.
17   Brock Benjamin on behalf of Mr. Gallegos.
18              THE COURT:  All right.  Mr. Benjamin, Mr.
19   Gallegos, good morning to you.
20              THE DEFENDANT:  Good morning.
21              THE COURT:  And for Defendant Edward Troup?
22              MS. HARBOUR-VALDEZ:  Good morning, Your
23   Honor.  Cori Harbour-Valdez and Patrick Burke on
24   behalf of Mr. Troup.
25              THE COURT:  All right.  Ms. Harbour-Valdez,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Burke, Mr. Troup, good morning to you.
 2              THE DEFENDANT:  Good morning, sir.
 3              THE COURT:  And for Defendant Billy Garcia?
 4              MR. COOPER:  Your Honor, Bob Cooper and Jim
 5    Castle on behalf of Mr. Garcia, and he's present
 6    today.
 7              THE COURT:  All right.  Mr. Cooper, Mr.
 8    Castle, Mr. Garcia, good morning to you.
 9              And for Defendant Allen Patterson?
10              MR. LAHANN:  Good morning, Your Honor.
11    Jeff Lahann on behalf of Mr. Patterson.
12              THE COURT:  All right.  Mr. Lahann, glad to
13    have you back.
14              MR. LAHANN:  Good to be here.
15              THE COURT:  Mr. Patterson, good morning to
16    you.
17              THE DEFENDANT:  Good morning, Your Honor.
18              THE COURT:  For Defendant Christopher
19    Chavez?
20              MR. MONDRAGON:  Good morning, Your Honor.
21    Orlando Mondragon on behalf of Christopher Chavez.
22              THE COURT:  All right.  Mr. Mondragon, good
23    morning to you.  Mr. Chavez, good morning to you.
24              THE DEFENDANT:  Good morning, Your Honor.
25              THE COURT:  And for Defendant Javier
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1810

1   Alonso?

2           MR. ORQUIZ:  Good morning, Noel Orquiz for

3   Mr. Alonso.

4           THE COURT:  All right.  Mr. Orquiz, good

5   morning.  Mr. Alonso, good morning to you.

6           And for Defendant Arturo Arnulfo Garcia.

7           MR. BLACKBURN:  Billy Blackburn and Scott

8   Davidson on behalf of Mr. Garcia.

9           THE COURT:  All right.  Mr. Blackburn,

10  Mr. Davidson, Mr. Garcia, good morning to you.

11          And for Defendant Mario Rodriguez?

12          MR. HERNANDEZ:  Good morning, Your Honor.

13  Santiago Hernandez on behalf of Mr. Rodriguez.

14          THE COURT:  All right.  Mr. Spencer (sic),

15  good morning to you.  Mr. Hernandez, good morning to

16  you.  And Mr. Rodriguez, good morning to you.

17          THE DEFENDANT:  Good morning, Your Honor.

18          THE COURT:  And for Mauricio Varela?

19          MR. SPENCER:  Good morning, Your Honor.

20  Joshua Spencer, standing in for Joe Spencer and Mary

21  Stillinger on behalf of Mr. Varela.

22          THE COURT:  All right.  Mr. Spencer, good

23  morning to you.  Mr. Varela, good morning to you.

24  And, Mr. Varela, do you consent to Josh Spencer

25  standing in for Joe Spencer and Ms. Stillinger?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1811

```
 1              THE DEFENDANT:  Yes, sir.
 2              THE COURT:  Mr. Varela, good morning to
 3    you.
 4              And for Defendant Daniel Sanchez?
 5              MR. JEWKES:  Good morning, Your Honor.
 6    Richard Jewkes and Amy Jacks, representing Daniel
 7    Sanchez, who is present before the Court.
 8              THE COURT:  All right.  Mr. Jewkes,
 9    Ms. Jacks, good morning to you.  Mr. Sanchez, good
10    morning to you.
11              THE DEFENDANT:  Good morning.
12              THE COURT:  And for Defendant Conrad
13    Villegas?
14              MR. CROW:  Good morning, Your Honor.  B.J.
15    Crow for Mr. Villegas, who is present.
16              THE COURT:  All right.  Mr. Crow, Mr.
17    Villegas, good morning to you.
18              THE DEFENDANT:  Good morning.
19              THE COURT:  And for Defendant Anthony Ray
20    Baca?
21              MR. LOWRY:  Good morning, Your Honor.  Marc
22    Lowery and Theresa Duncan on behalf of Anthony Ray
23    Baca.
24              THE COURT:  Mr. Lowry, Ms. Duncan, good
25    morning to you.  And Mr. Baca, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1812

```
 1              THE DEFENDANT:  Good morning.
 2              THE COURT:  And for Defendant Christopher
 3    Garcia?  Let's take those that are present here in
 4    the courtroom first.
 5              MS. SIRIGNANO:  Good morning, Your Honor.
 6    Amy Sirignano on behalf of Christopher Garcia.  Mr.
 7    Adams is on the phone.
 8              THE COURT:  All right.  Ms. Sirignano, good
 9    morning to you.  Mr. Adams, good morning to you.
10              MR. ADAMS:  Good morning, Your Honor.
11              THE COURT:  Mr. Garcia, good morning to
12    you.  And Mr. Adams, are you on the phone?
13              MR. ADAMS:  I am.
14              THE COURT:  Good morning to you, Mr. Adams.
15    And for -- let me do the same thing for the Defendant
16    Carlos Herrera?
17              MR. DAVIS:  Good morning, Judge.  Michael
18    Davis on behalf of Mr. Herrera.  And Ms. Carey
19    Bhalla --
20              MS. BHALLA:  Excuse me, Your Honor.  Carey
21    Bhalla here on the phone.
22              THE COURT:  All right.  Mr. Davis, Ms.
23    Bhalla, good morning to you.  Mr. Herrera, good
24    morning to you.
25              And Defendant Rudy Perez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1813

```
 1              MR. VILLA:  Good morning, Your Honor.  Ryan

 2    Villa and Justine Fox-Young on behalf of Mr. Perez.

 3              THE COURT:  All right.  Mr. Villa, Ms.

 4    Fox-Young, good morning to you.  Mr. Perez, good

 5    morning to you.

 6              THE DEFENDANT:  Good morning.

 7              THE COURT:  And for Defendant Andrew

 8    Gallegos?

 9              MR. ROBERTS:  Good morning, Your Honor.

10    Donovan Roberts for Mr. Gallegos.

11              THE COURT:  All right.  Mr. Roberts, Mr.

12    Gallegos, good morning to you.

13              For Defendant Santos Gonzalez?

14              MS. JOHNSON:  Good morning, Your Honor.

15    Erlinda Johnson on behalf Santos Gonzalez, who

16    appears before the Court.

17              THE COURT:  All right.  Ms. Johnson, Mr.

18    Gonzalez, good morning to you.

19              And for Defendant Shauna Gutierrez?

20              MS. ARELLANES:  Good morning, Your Honor.

21    Angela Arellanes for Ms. Gutierrez, who appears.

22              THE COURT:  All right.  Ms. Arellanes, Ms.

23    Gutierrez, good morning to you.

24              And for Defendant Brandy Rodriguez?

25              MR. CREECY:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1814

 1   Alfred Creecy on behalf of Ms. Rodriguez, who is

 2   present before the Court.

 3          THE COURT:  All right.  Mr. Creecy, Ms.

 4   Rodriguez, good morning to you.

 5          THE DEFENDANT:  Good morning.

 6          THE COURT:  All right.  We're here on a

 7   couple of motions.  Let me say to you that I have

 8   been working on the motion to sever, that opinion.

 9   It's now -- because of all the ones we argued over

10   the last -- last week, over those three days, and the

11   one we're probably going to argue today, I haven't

12   worked on the one today, other than reading for it --

13   but I'll probably put it in the opinion -- we're

14   right at 151 pages just trying to understand all the

15   arguments.  And I expect it to increase another 20

16   pages at least.  So that is the opinion I'm working

17   on, and I will try to get that out to you.  I do want

18   to try to analyze each one of the arguments that all

19   the parties have made.

20          And I probably will give some guidance on

21   the Brady issue, as much as I can.  So I probably

22   will make a ruling on the materials that I have on

23   the Brady issues.  Of course it will be subject to

24   people bringing in new information that I may have to

25   analyze down the road.  But I think we're barreling

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1815

1    toward trial, so I need to give you as much guidance

2    as I possibly can.  So when issues are presented, I'm

3    going to try to do that.  So the Brady material -- I

4    keep saying Brady, I mean Bruton -- and that issue as

5    much as possible.  So every time I was using the word

6    Brady I meant Bruton.

7           But the reason I had Brady on my mind is

8    because the Government filed their brief on the

9    timing.  I have had a chance to read it -- I haven't

10   had a chance to look at it.  I still think that most

11   of those cases that -- particularly the ones that I

12   wrote, and Ruiz, and the Tenth Circuit responding to

13   Ruiz are backward-looking cases.  And certainly, if

14   somebody raises probably at trial, or on the eve of

15   trial or after trial that there has been a Brady

16   violation, I'm going to probably draw some

17   distinctions, just as other judges have between

18   Giglio and Brady material, as far as finding some due

19   process violation.

20          But I think going forward, it's a totally

21   different issue of how to manage this case.  I was

22   somewhat influenced by the -- some of the discussion,

23   I think in the D.C. Circuit, that, you know, there

24   might be situations in which Giglio material might

25   impinge greatly upon the Government's Jencks

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1816

1    privileges of when to disclose things.  There may be

2    some issues, as far as endangering some witnesses or

3    something like that.  On a case-by-case basis, I'm

4    willing to take a look and say that some things may

5    need to be delayed; that occurs even sometimes with

6    Brady material.

7           But in a case of this magnitude, with this

8    many documents, I think the general rule still has to

9    remain that Brady material and Giglio material has to

10   be disclosed at -- on the same basis, because Giglio

11   is a subset of Brady material.  So at the present

12   time, I'm not inclined to change that rule.

13          But I also think the Government is always

14   free to approach the Court and say, Look, if I have

15   to disclose this, this is going to create some real

16   problems.  And so I -- but that occurs with Brady.

17   And that's really what we're doing with some of the

18   confidential informants; I'm ordering the disclosure

19   of some of those under Brady and Giglio and Rule 16,

20   not under Roviaro.  And so some of that is we're

21   still working as Brady and Giglio.  So the timing of

22   that is always subject to the Government coming in

23   and saying this particular situation, this particular

24   document, this particular identification, this

25   particular evidence, can we delay it some because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1817

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 11

1818

```
 1    this is what's going to happen:  We're going to

 2    endanger somebody or something like that.  But I

 3    think that has to be on a case-by-case,

 4    evidence-by-evidence basis, and the Government has to

 5    come in and show that, rather than -- but I think as

 6    a general rule, we're moving forward.  We're not

 7    talking about plea agreements.  We're not talking

 8    about post-trial failures to disclose.  Those are the

 9    kind of things that I think Ruiz and those are

10    talking about.  And in that situation, you're

11    balancing.  And yes, Giglio material is probably not

12    going to create the due process problems that the

13    failure to disclose Brady, which is exculpatory

14    material, may create.

15            But, as a general rule, I still think --

16    and I'll look at it closer -- but I'm still inclined

17    to think that those cases don't cause me to deviate

18    from treating those two categories one a subset of

19    the other.

20            I understand Ms. Armijo will be stepping

21    out around 9:30 to cover another hearing.

22            I understand, Ms. Johnson, that you worked

23    out something, but not quite worked out -- I guess

24    this is public, so it's not something that I'm

25    breaching any obligations on.  So you do not want
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1818

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1819

```
 1   your motions heard today, is the upside from you

 2   working out something that still needs to have some

 3   details to be hammered out.  Is that correct?

 4          MS. JOHNSON:  That is correct, Your Honor.

 5   We are trying to work out -- in principle, we have an

 6   agreement.  There are some -- we're still working on

 7   some of the language and some of the stipulations.

 8   But the Court is correct.  We'd ask that the Court

 9   not hear our motions today.  In the event that we are

10   unable to work out an agreement, obviously, or work

11   out the details, then we'll proceed.

12          THE COURT:  All right.  Thank you, Ms.

13   Johnson.

14          Then I guess that leaves us then for today

15   with Defendants Troup and Billy Garcia's motion to

16   sever Counts 1 and 2 of the agreement.  So Mr. Burke,

17   Ms. Harbour-Valdez, Mr. Cooper, Mr. Castle, are you

18   going to take the lead on this?

19          MR. BURKE:  I will, Your Honor.

20          THE COURT:  All right.  Mr. Burke.

21          MR. BURKE:  Thank you, Your Honor.  Good

22   morning.

23          THE COURT:  Good morning to you.

24          MR. BURKE:  Your Honor, we filed this

25   motion on behalf of Mr. Troup and Mr. Bill Garcia on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1819

 1    February 2.

 2              THE COURT:  Right.

 3              MR. BURKE:  And since then several

 4    important things have happened.  First, we had a long

 5    discussion on February 7.  I think we took the better

 6    part of the day discussing severance issues that day.

 7    There was considerable back and forth with the

 8    parties.  And the Court took all of that under

 9    advisement.

10              Something else that has happened is that on

11    March 9, there was a second superseding indictment.

12    So to some extent our pleading is modified in

13    accordance with that second superseding indictment.

14              And then the most important thing that has

15    happened is that on May 9th you gave us your ruling,

16    and you went into exquisite detail as always.  You

17    had analyzed Rule 8.  You talked about the Gould

18    case, the Pursley case.  You talked about Judge

19    Weinstein's opinion in the Gallo case.  You talked

20    about Zafiro.  And you came out at a place, after

21    analyzing Rule 14, that you have almost unlimited

22    discretion.  And I believe that is the law under all

23    of these circumstances.  The crux of it was that you

24    said that a jury must be reasonably able to consider

25    the evidence as to each defendant separately.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1820

```
 1    you said many more things, but that was a kernel of
 2    your ruling.  You noted that judicial resources can
 3    be considered.  The hardship on administrative
 4    structure of the Court is also --
 5              THE COURT:  How do you feel -- as I reread
 6    everything, I was again struck by the Government's
 7    insistence that I have to find such things as
 8    prejudice to the defendants -- however you find
 9    that -- before I can consider the administrative
10    hurdles of trying 19, 20 people in a single case.
11    How do you feel about that argument?
12              MR. BURKE:  If I may be blunt, Your Honor,
13    I thought it was dumb.  I think the way you analyzed
14    it -- and I read the transcript of your ruling from
15    the bench on May 9, and I think you nailed it.  Those
16    are not conditions precedent to getting to the larger
17    issues that you then addressed in your remarks on May
18    9.  I do not believe those are conditions precedent
19    and I do not believe that's what the law is.
20              THE COURT:  Well, what case would you point
21    to?  I guess what they're saying is that I have to
22    satisfy the -- I'll call them statutory, but they're
23    really the rule requirements before I proceed to
24    discuss just the administrative hurdles.  In other
25    words, I've got to analyze it in terms of some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1821

1    prejudice to either one of the parties, be it the

2    United States, or be it the defendants, before I can

3    start looking at the size of tables, courtrooms,

4    shackles, that sort of stuff.

5            MR. BURKE:  Your Honor, I hadn't

6    anticipated the question, but fortunately, I did

7    bring our reply to the podium.  And I believe the

8    cases that would indicate that that test is

9    inappropriate would be some of your remarks in United

10   States v. Gould, which is cited on page 4 of the

11   reply, Document 1014.  In addition, the cites to

12   Zafiro, which is on page 5 of 14 pages in the reply.

13   And in Fox v. Ward, the Court explained a description

14   of "real prejudice means that the risk of prejudice

15   is not illusory.  In order to prevail on such a

16   theory of severance the defendant must show real

17   prejudice rather than merely note that each defendant

18   is trying to exculpate himself."  And I may have some

19   additional cites in the reply, which I think point to

20   your analysis being absolutely correct.

21           THE COURT:  I reread yesterday your

22   attachment to Dr. Lieberman, out of the University of

23   Nevada.  After I made my ruling at the beginning of

24   the hearings in mid May, did y'all sit down with Dr.

25   Lieberman, and did he say I was solving all your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1822

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 16823

1   problems?

2        MR. BURKE:  He sure liked a lot of the

3   solutions that came about as a result of the

4   severance that you indicated you were pursuing.  And

5   I don't want to mislead the Court.  I have had an

6   exchange with Professor Lieberman.  I've had many

7   exchanges with him.  I've had a couple since May 9.

8   And that is my short answer to the question.

9        THE COURT:  So you did convey the -- where

10  we're going with the severance that has been granted,

11  and he thought it solved some of the problems?

12       MR. BURKE:  Exactly.

13       THE COURT:  And what do you think now about

14  your particular situation, your representation of Mr.

15  Troup?  How do you -- what is left, then, of your

16  motion?  And maybe, more particularly, what do you

17  see as the prejudice that remains from the severance

18  that we now have?

19       MR. BURKE:  Your Honor, I was here to ask

20  you to get us down to the Counts 1 and 2 defendants.

21  That's the first answer.  And that would be Joe

22  Gallegos, Edward Troup, Billy Garcia, Allen

23  Patterson, and Christopher Chavez.  That is my hope.

24  I know you're not going to change your mind today,

25  and say, Sure, Mr. Burke, that sounds like a great

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1823

```
 1    idea.

 2            But the prejudice for the Counts 1 and 2

 3    defendants is that Adrian Burns homicide is nasty,

 4    and that's Counts 4 and 5.  And then you have -- we

 5    would have Counts 13 through 16, and we have this old

 6    homicide, you know, 2001.  And yet the events that

 7    are portrayed in Counts 13 through 16 not only bring

 8    us out of prison into the real world, so to speak,

 9    and that's the 2012 homicide involving Adrian Burns.

10    We then have the beatdown of Jose Gomez, and that's

11    Counts 14 through 16.  And then there was an

12    incident, and that's in 2016.

13            So expanding from 2001 forward to 2012, and

14    then 2016, does create some prejudice for what I'm

15    calling the Counts 1 and 2 defendants, the five

16    people.

17            THE COURT:  Let me ask you this, because

18    this is kind of what I'm thinking, and you react to

19    it and tell me if you think I'm wrong:  Now that

20    we've kind of reduced the trial, and now you're

21    thinking about the trial that you are going to have

22    on July 10th, and what that looks like, it seems to

23    me that the jury will be able to compartmentalize the

24    stories much better.  I mean, it's helped me, in

25    fact -- you know, I mean, it's a lot of people to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1824

```
 1    learn, a lot of names to learn, and things like that.
 2    It helps me now.  But it seems like sitting in a jury
 3    room -- or sitting with a jury, y'all over here, over
 4    there, they can compartmentalize the story, memorize
 5    the characters pretty well, and understand it.  I'm
 6    sure you've thought about what that trial is going to
 7    look like.  It seems to me it's a much more
 8    manageable trial for all of us, but particularly for
 9    the jury.  Your thoughts?
10         MR. BURKE:  I have thought about that every
11    day since then, and what a trial will look like.  And
12    I am -- to be candid -- so glad that we are not in a
13    trial with the Counts 6 through 12 defendants,
14    because that would have been -- I don't know how we
15    could have -- how a jury could have compartmentalized
16    all of that.
17         I am still here as an advocate for Edward
18    Troup to not relent entirely and say that dealing
19    with Counts 4 and 5 and 13 through 16 in the same
20    trial as Counts, you know, 1 and 2, there will have
21    to be some spillover from the ongoing discussion, as
22    we bring it forward into the more recent times.
23         So I'm very happy about some things.  But
24    as an advocate, I can't say that I will stop.
25         THE COURT:  All right.  What else, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Burke, on this motion?

 2           MR. BURKE:  Your Honor, I did want to

 3   say -- one of the reasons -- and it isn't much

 4   because I know you've read it thoroughly -- but, for

 5   example, the 2001 defendants, Edward Troup, my

 6   client, he was released from prison in 2012, and then

 7   was arrested December 2015.  And in that three and a

 8   half year period he did catch some more time in jail

 9   for violations relating to addiction, but he really

10   made a life, and had been married and was working.

11   And that's why I want to keep it pushed back to -- as

12   far back as I can, and avoid 13 through 16.  And I

13   just wanted to make that factual point.

14           THE COURT:  You'd like to tell the jury

15   this is an arrest for an old crime?

16           MR. BURKE:  That's going to be one of the

17   things that will be said, and as long as we're being

18   candid, and then link it into the arguments about the

19   enterprise.  And you saw our arguments about there

20   being different factions.  We are not convinced there

21   is a single enterprise, and we will be making that

22   argument.  But again, being candid with the Court,

23   we're not there yet.  We couldn't ask you to make a

24   preliminary ruling on that.  You'll need to see and

25   hear more facts before we get back to that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1826

```
 1                THE COURT:  Is that something that I will
 2    ever have to make some ruling on, or is that just one
 3    of the issues that the jury has to hear the evidence
 4    and make some determination at the end of the trial?
 5                MR. BURKE:  Well, you'll certainly be
 6    hearing about it at halftime, Your Honor.  And then
 7    maybe it then goes to the jury.  But I don't think
 8    it's an automatic that it's a jury question.
 9                THE COURT:  Okay.
10                MR. BURKE:  And, Your Honor, what has
11    happened is our back and forth has sort of taken up
12    all the comments I was going to make.  I did
13    conclude -- or we concluded our reply with a comment
14    that there should be no illusions that if Counts 1
15    and 2 are tried with 4 and 5 and 13 through 16, it
16    will be prejudicial.  And I don't want to ignore that
17    final argument.
18                THE COURT:  And nothing that I have done
19    over -- since I've been working on this opinion has
20    shaken my thoughts that that needs be severed.
21                MR. BURKE:  Very good, Your Honor.
22                THE COURT:  All right.  Anything else, Mr.
23    Burke?
24                MR. BURKE:  That's all.  Thank you.
25                THE COURT:  Thank you, Mr. Burke.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1827

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 21

```
 1              Anyone else that joined the motion want to
 2    say anything?  Anybody?  Mr. Castle, Mr. Cooper,
 3    anything you want to say?
 4              MR. CASTLE:  Yes, Your Honor, Jim Castle.
 5              THE COURT:  Mr. Castle.
 6              MR. CASTLE:  In response to the Court's
 7    first question about whether a finding of prejudice
 8    was necessary for severance, I think --
 9              THE COURT:  I'm characterizing the
10    Government's correct; that's their argument?
11              MR. CASTLE:  Yes, I believe so.  And I
12    think what they've conflated is the inherent
13    authority of the Court, then the procedural rules.
14    Rule 14 doesn't even talk about the concept of case
15    management.  The idea of case management -- and it
16    actually isn't really addressed at all -- that
17    flows -- it derives itself from the Court's
18    independent power and supervisory power to handle its
19    docket.
20              So these are two different considerations
21    that proceed along separate paths.  So I think that
22    the proper construct is, in dealing with these kinds
23    of issues, you're looking at Rule 8, Rule 14, and
24    then also the independent authority of the Court to
25    supervise its docket as separate considerations.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, I guess what I hear the
 2    Government saying -- and these are my words -- is
 3    like, Look, Judge, we've got the power to indict 100
 4    people if we want to.  We can throw them all in the
 5    same case.  And you can't come along -- if it's not
 6    misjoined under Rule 8, you don't have the power to
 7    start severing it away under Rule 14, unless you
 8    first find that there is going to be prejudice to the
 9    defendants.  You can't start worrying about size of
10    your courtroom, you can't be worrying about the size
11    of the -- where the shackles are going to be shown.
12    You can't be worried about this or that until you
13    first find that this somehow prejudices one of the
14    parties.  And it doesn't prejudice us, because we
15    brought the case.  So you've got to show that it
16    prejudices the defendant.  What's wrong with that
17    argument?
18              MR. CASTLE:  Well, what's wrong with that
19    argument is it doesn't take into account the Court's
20    inherent authority to manage its courtroom.  I mean,
21    100 -- let's take it to its ridiculous extreme.
22              THE COURT:  Let's look at it as overriding
23    their prosecutorial discretion.  They could have
24    brought 100 indictments, but they didn't.  They
25    wanted them in one.  And they're saying you've got to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1829

```
 1   have a good reason to overrule our separation of

 2   powers decision that we want to bring these people in

 3   one case rather than 100 cases.

 4              MR. CASTLE:  Well, I agree with their

 5   concept, but there has to be a good reason.  But I

 6   believe the inherent authority of the Court to manage

 7   its docket is good reason.  And the separation of

 8   powers favors the judiciary in managing its docket,

 9   not the executive branch in defining, essentially,

10   how this Court is going to provide justice to the

11   defendants.

12              THE COURT:  All right.  Anything else, Mr.

13   Castle?

14              MR. CASTLE:  No, Your Honor.

15              THE COURT:  All right.  Thank you, Mr.

16   Castle.

17              Any other defendant want to speak on

18   Mr. Billy Garcia and Mr. Troup's motion to sever 1

19   and 2?  Anyone else?

20              All right.  Mr. Castellano, are you going

21   to take the lead for the Government on this?

22              MR. CASTELLANO:  Yes, Your Honor.

23              THE COURT:  Mr. Castellano.  After a week

24   of reflecting on the severance and the trial I'm

25   giving you, any second thoughts?  Any reflections on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the trial we're looking at?

 2              MR. CASTELLANO:  Not really, Your Honor.  I

 3    mean, I would note our objection for the record

 4    regarding severance, but I think the Court has broken

 5    up the case in the best way possible.  We're not

 6    going to fight severance any longer, if that's the

 7    Court's decision.  So I won't belabor that point.

 8              I will just state where our position came

 9    from, which was a quote from the Gould case, which

10    talks about first looking at antagonistic defenses

11    and prejudice, before getting to the meaning of the

12    first two factors, followed by the Court's

13    administration of justice.  So that's where our

14    position comes from.

15              But I also agree that the Court does have a

16    great deal of discretion under Rule 14.  Even in our

17    brief we cite to that.  It says, "Even if prejudice

18    is shown, Rule 14 does not require severance.

19    Rather, it leaves the tailoring of the relief to be

20    granted, if any, to the district court's sound

21    discretion."  We don't dispute that.  We think the

22    Court has discretion.  We think the Court has

23    exercised that discretion.  If the Court's going to

24    leave the case severed this way, we really don't have

25    much more to say about it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1831

```
 1            I will say regarding Mr. Troup, he is
 2    charged not only in Count 1, he's charged in Count 3.
 3    So those are two murders six years apart from each
 4    other.  So there is an indication even from one
 5    defendant of the ongoing nature of the enterprise,
 6    just one person.  So splitting it up would also -- I
 7    mean, I don't think it changes the presentation at
 8    trial.  I think both murders will still be presented
 9    at two different trials, even if he was tried in two
10    trials.
11            But having said that, if you're not
12    inclined to change your decision, I'm not inclined to
13    argue any further, Your Honor.  I think we can save
14    the time.
15            THE COURT:  Do you have any thoughts --
16    same thing I was asking Mr. Burke -- have you sort of
17    sat here and visually thought of this trial and how
18    it's going to look in all its robustness, and you
19    have to work with everybody here to try to do justice
20    to everybody in the room and help me try this case to
21    provide justice for everybody in the room?  Have you
22    thought about the people that you think are going to
23    be in that room on July 10th, who you think is going
24    to be left, and these sort of three different stories
25    we're going to be presenting to the jury?  Do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1832

1   think we can compartmentalize it and present it in a

2   way so it's going to be fair to everybody that's on

3   the defense side?

4        MR. CASTELLANO:  I do think we can

5   compartmentalize, Your Honor.  I mean, there are

6   individual counts, and within those counts there are

7   individual stories.  So the jury will hear about a

8   Garza murder, a Castillo murder, a Sanchez murder, a

9   Burns murder.  So each of those, even though there is

10  an overarching presentation of the evidence, we still

11  have to prove each of those individual murders.  And

12  I think they have their own story, and the jury can

13  compartmentalize each of those stories.

14       THE COURT:  All right.  Anything else you

15  want to say on this motion to sever, Mr. Castellano?

16       MR. CASTELLANO:  No, Your Honor.

17       THE COURT:  All right.  Thank you, Mr.

18  Castellano.

19       Mr. Burke, anything further?

20       MR. BURKE:  No.  Thank you, Your Honor.

21       THE COURT:  All right.  Anyone else want to

22  say anything else on this motion?

23       Well, I'm granting it in part, denying it

24  in part.  And that's probably how I'll write it up in

25  this current opinion that way.  I think for the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1833

1    present time, I'm staying with the severance that

2    I've granted.  I'm not backing off from that, but I'm

3    also not inclined to expand it.  I think we all noted

4    last week we may be looking at this thing to the very

5    end.  But right at the moment, I think I'm inclined

6    to keep it where it is.

7         There is always a changing landscape in a

8    case like this, or any case, but particularly this

9    one, with so many defendants.  And my prediction

10   that -- and the Government's prediction that some

11   people in the room may not be around for trial may

12   change the landscape.  And I'll just have to take

13   that into consideration when it comes.  But on the

14   present landscape, I'm inclined to stay where I am

15   and grant the motion in part and deny it in part.

16        All right.  The other motion that we need

17   to take up is the Mr. Troup and Mr. Billy Garcia's

18   motion for an order to compel the disclosure of

19   certain materials.  My impression, from reading the

20   Government's response, and the fact there wasn't a

21   reply, was that there may have been some progress,

22   maybe considerable progress, in meeting some of the

23   concerns of Mr. Troup and Mr. Garcia.

24        Mr. Burke, are you arguing this?  Okay.

25        All right.  Mr. Castle.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1834

1            MR. CASTLE:  Your Honor, the basis of the

2    motion to compel, essentially, had eight different

3    categories that have been pending in requests from

4    the defense for almost a year.  In fact, next Tuesday

5    will be the one-year anniversary of when we first

6    requested all these items.  There are eight different

7    categories.  Of those eight categories, the

8    Government and the defense have come to an agreement

9    for production by May 30, 2017.  And when I say

10   production, they'll either produce it or essentially

11   explain why it can't be produced, and if it was

12   destroyed whether -- you know, when it was destroyed,

13   if they can obtain that information.

14            There are some subagreements for different

15   categories --

16            THE COURT:  If it was destroyed, you want

17   to know when it was destroyed?  Is that what you

18   want?

19            MR. CASTLE:  Yes.  We made this

20   agreement -- depending on the category, there are

21   some different terms, but we have an agreement in

22   writing for all those.  I don't know if the Court

23   wants us to put that on the record.

24            THE COURT:  That's totally up to you.  I

25   mean, if y'all are happy, I'm happy.  If you feel

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1835

```
 1    like you need protection and you want to put it on,

 2    it's totally your call, Mr. Castle.

 3              MR. CASTLE:  I accept the Government's

 4    word, and that's good enough for me.  Obviously, if

 5    something happens, then we can always reraise it.

 6              THE COURT:  Okay.

 7              MR. CASTLE:  So I'd like to, if possible,

 8    address the one contested area.

 9              THE COURT:  All right.

10              MR. CASTLE:  That is in the motion to

11    compel, it's Section F, which is the FBI

12    investigative files.  The request for the Government,

13    namely, the U.S. Attorneys in this case to review

14    various FBI files has somewhat of a tortured history.

15    It first raised its head in Document 360, which was a

16    response by the defense concerning the Government's

17    disclosures about Judge Gonzales' involvement in

18    previous investigations.

19              THE COURT:  Yeah, I saw that attachment to

20    your -- to one of the things here.  It may have been

21    the response.  But I did see that.

22              MR. CASTLE:  In that motion we essentially

23    took the first layer of the onion off, and identified

24    a few files that we noticed being referenced in our

25    view of discovery.  Our motion -- our first motion
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1836

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 30 of 837

```
 1    for specific discovery was the second layer of that
 2    onion and identified some additional files.  And
 3    finally, I think our follow-up pleadings unveiled a
 4    third layer.
 5            Essentially, there has been ten motions
 6    dealing with this issue that have been filed by the
 7    defense.  And we still don't have these materials.
 8    There has also been one hearing, in October, the
 9    Court held on this issue.  And there is two
10    problems --
11            THE COURT:  And this is the one where -- I
12    have written on this one, right?
13            MR. CASTLE:  Yes.
14            THE COURT:  I've given you a written
15    opinion on this issue?
16            MR. CASTLE:  Yes, you did, Your Honor.
17            The first problem is -- there are
18    essentially two problems.  One is the general
19    approach by the Government to their obligations.  And
20    the second issue is specific files that the
21    Government has decided not to review, or they have
22    decided to do a cursory review of.
23            Addressing the first issue, the Government
24    had the FBI review five files.  And in that review --
25            THE COURT:  Just so I make sure I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1837

```
 1    understand the files.  These are files of previous
 2    investigations by the FBI, and to a certain degree
 3    the U.S. Attorney's Office of the SNM Gang or SNM
 4    Gang members?  Is that what we're talking about?
 5              MR. CASTLE:  There are eight files that we
 6    believe are specific to SNM.  And there is one file
 7    that we believe referenced SNM Gang members.  The
 8    Government -- what they've done, is out of the nine
 9    files that we identified, they reviewed -- well, they
10    had the FBI review five of those files.  And those
11    are up on the screen.
12              What I'll do when I refer to files, I'll
13    just use the last five digits because they're all
14    distinct from each other.
15              And they had the FBI review those files,
16    and the FBI made a decision on what materials were
17    relevant or favorable to the defense that related to
18    the SNM Gang, and those were turned over to the U.S.
19    Attorney's Office for review and production.
20              THE COURT:  Have you gotten a sense -- I
21    know you haven't seen all these files, but have you
22    gotten a sense from your discussions with the
23    Government as to how big these files are?
24              MR. CASTLE:  I have no idea, Your Honor.
25              The problem -- so for these five files
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1838

1    they've indicated that the FBI agents made a thorough

2    review and turned over materials to them.  And I

3    believe the upshot of it is that the U.S. Attorneys

4    turned over all those materials to us.  I believe

5    that's the case.  But the memo only says that they

6    reviewed it, then produced.  But I don't know whether

7    they produced everything the FBI identified as

8    relevant or favorable.  The problem with that is --

9              THE COURT:  Where do you get the

10   information -- maybe I just haven't reviewed it far

11   enough -- but where do you get the information that

12   the FBI did the initial review?  Is that something

13   that was told to you orally or am I just missing it?

14             MR. CASTLE:  The last paragraph of the

15   document that's up on the screen indicates that FBI

16   special agents -- and they're listed -- accompanied

17   the files to the U.S. Attorney's Office and conducted

18   a complete review of the files.  So I believe that

19   sentence means that it was the agents who did the

20   complete review.  And then all the reports pertaining

21   to the SNM Gang were turned over to the U.S.

22   Attorneys for their review.

23             THE COURT:  Let's say that Mr. Beck gets up

24   here in a minute and says, Well, what happened is

25   that the FBI did review all these files, and said:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1839

```
 1    Here's the universe of files that we have involving
 2    SNM or SNM members, and they brought all those files
 3    and brought them to Mr. Beck, and then Mr. Beck did
 4    the review for Brady, Giglio, and Rule 16, would you
 5    feel differently about their review?
 6              MR. CASTLE:  Yes.  And I think that we
 7    would have heard that -- in our motion to compel we
 8    indicated that was a problem that the U.S. Attorneys
 9    didn't do the personal review of the files.  And in
10    their response they did not indicate that they did
11    that.  So I believe that that won't be what's
12    represented, or either that or they missed an
13    opportunity to kind of head this train off at the
14    pass in their response.
15              The obligation for the U.S. Attorney's
16    Office to do that review is found not only in this
17    Court's ruling on October 4, 2016, but also in United
18    States Supreme Court precedent.  I'll turn to this
19    Court's order first, which was -- the Court
20    indicated -- and I quote the October 4, 2016
21    transcript, page 111, lines 7 through 12, the
22    following:  "I'm not comfortable with there not being
23    an Assistant U.S. Attorney putting their feet in the
24    shoes of the defendants and the defendants' counsel,
25    and being creative about how this information could
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1840

```
 1    possibly be used to benefit the defendant."

 2            The Court's ruling is supported by the U.S.

 3    Supreme Court case of Kyles versus Whitley, 514 U.S.

 4    419, at page 438, where the U.S. Supreme Court

 5    stated, and I quote, "Any argument for excusing a

 6    prosecutor from disclosing what he does not happen to

 7    know about boils down to a plea to substitute the

 8    police for the prosecutor, and even for the courts

 9    themselves, as the final arbiters of the government's

10    obligation to ensure fair trials."

11            So the upshot and the meaning of Kyles is

12    that we do not leave it to law enforcement to decide

13    what needs to be disclosed and what is relevant.  And

14    there is a good reason for that.  They don't

15    necessarily understand exactly what the parties have

16    been arguing, what the defenses are, what the

17    potential defenses are.  They may not be even

18    familiar or extremely familiar with the

19    constitutional obligations.  I noted that some of the

20    agents that did the review here are fairly new on the

21    case.  They may not know the history.  They may not

22    know the players.

23            And I think, as the Court has commented,

24    and all of us have observed, this is a very

25    complicated case.  There are a lot of tendrils.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1841

```
 1    to understand how a particular item in a file might

 2    be relevant, or might be favorable to a defendant,

 3    that really falls upon the U.S. Attorney to make that

 4    determination.

 5            So the United States Supreme Court has

 6    entrusted the U.S. Attorney's Office with a great

 7    responsibility, and that is to make these

 8    determinations.  And I think, as the Kyles court

 9    said, you know, it's the U.S. Attorney who decides

10    how close to tack to the wind, to make those fine

11    determinations of whether something should be

12    disclosed or not.  So that's their responsibility,

13    they're given that power.  And, of course, with that

14    power, is that very responsibility.  So that's the

15    first problem that I see with the Government's

16    approach to this issue.

17            The second problem --

18            THE COURT:  Why don't we take them one at a

19    time.  Let me just -- if you don't have anything more

20    to say on the review process, why don't I hear from

21    the Government, and then I'll let you come back and

22    take up the other issues.  Is there anybody else, any

23    other defendants that want to comment on this before

24    I hear from -- looks like Mr. Beck -- on the process

25    they used?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1842

```
 1                   All right.  Mr. Beck.

 2                   MR. BECK:  So I think that 302 report is

 3      not how, perhaps, we would have written it.  But we

 4      don't write the 302s.  What it says is that the files

 5      were taken down to the Las Cruces branch of the U.S.

 6      Attorneys' --

 7                   THE COURT:  Just the complete files?

 8                   MR. BECK:  The complete files.  We all sat

 9      there in the room and reviewed them.  So --

10                   THE COURT:  And when you say "we" reviewed

11      them, you're talking about people from the United

12      States Attorney's Office?

13                   MR. BECK:  Right, yes, the three

14      prosecutors here.

15                   THE COURT:  All right.

16                   MR. BECK:  Two -- sorry, Mr. Castellano was

17      not there.  Maria Armijo was.

18                   THE COURT:  So the five files that are on

19      the 302 that Mr. Burke had up there, attorneys have

20      been through all of it and made the determination as

21      to what to produce under Brady, Giglio, and Rule 16?

22                   MR. BECK:  That's correct.

23                   THE COURT:  Not the FBI?

24                   MR. BECK:  Right.

25                   THE COURT:  And, as far as you know, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1843

1    you can say this with some due diligence, you

2    received all the materials that were in those five

3    files?

4             MR. BECK:  Yes, I can represent that.

5             THE COURT:  All right.  Anything else on

6    that issue then, Mr. Beck?

7             MR. BECK:  I think that's it.  I think that

8    clears it up.

9             THE COURT:  All right.  Thank you, Mr.

10   Beck.

11            Mr. Burke -- I mean, Mr. Castle, does that

12   give you comfort, those representations?

13            MR. CASTLE:  Yes, Your Honor, we would

14   accept the position of the Government.

15            In the future, if I'm in the middle of one

16   of these arguments, and we can cut it off at the

17   pass, I have no problem with anyone interrupting me.

18            Does the Court want me to go to the second

19   aspect?

20            THE COURT:  Yes, let's go to -- unless you

21   have something else on that issue.  Anybody else?

22   Everybody comfortable?

23            All right.  Mr. Castle.

24            MR. CASTLE:  There are four files, and in

25   addition to the four files that I'm going to talk

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1844

1    about, in Document 360, we identified four separate

2    criminal proceedings against SNM Gang members that

3    happened over the last seven years.  And from our

4    review of the materials provided to date, and also

5    the Government's responses to the motion to compel,

6    it appears that those four files -- out of those four

7    files, three of them have not been reviewed at all,

8    one was reviewed only cursorily.  And then it doesn't

9    appear that the Government has looked at the four

10   criminal cases that were filed in this district

11   involving the SNM.

12          And so I'll go through those one by one.

13   And if the Court wants me to, I'll stop after each

14   one and then we can address it.

15          THE COURT:  Let's do that.  I think it will

16   help me to keep them straight.

17          MR. CASTLE:  The first one is a file that

18   is referenced in the 302 that the Court just saw, and

19   it indicated that that particular file numbered 63435

20   was -- that a cursory review was done.  And I don't

21   know -- the 302 says the cursory review was only done

22   by the FBI.  It may very well be that it was done by

23   the U.S. Attorneys also.  But a cursory review is

24   insufficient.  And the reasoning that they gave to

25   only doing a cursory review is that the file itself

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1845

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 39

```
 1    was considered a Barrio Azteca file called Operation

 2    Tar Pit.  And the reason we believe this is a

 3    relevant file to have more than a cursory review is

 4    based upon the information contained in some

 5    documents we found in discovery.  This is the

 6    beginning of a 302 that I'm displaying on the board

 7    that talks about this particular file, 63435.  The

 8    Court can see it at the bottom of the --

 9              THE COURT:  Point that number.

10              MR. CASTLE:  It's right there.

11              THE COURT:  Okay.

12              MR. CASTLE:  And when we go through the

13    302, this is essentially what it is, is a --

14              THE COURT:  Is that what this, is a 302?

15              MR. CASTLE:  It appears to be a 302.  I

16    think it might indicate that up somewhere at the top.

17              But whatever it is, it's a report of an

18    interview they did with a CHS.  And during that

19    interview -- I'll go to page 3 of that interview --

20    there is a discussion about my client, Bill Garcia.

21    And this CHS indicates that "Mr. Garcia was running

22    the line at Southern New Mexico Correctional Facility

23    when Frank Castillo and 'Looney' were killed."  And

24    "Looney" is the nickname for the other victim in the

25    Counts 1 and 2 pair of charges.  And the CHS says
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1846

 1    that the sanctioned hits would have had to have gone

 2    through Mr. Garcia, and then he mentions some --

 3    something about Edward Troup, which it doesn't

 4    really -- we don't really understand why that got

 5    brought up.  It's in the same paragraph as this

 6    discussion about the murders in 2001.

 7            So, essentially, what I think happens, Your

 8    Honor, is that when an informant talks to the

 9    Government -- at least this is my experience.  I

10    mean, I represented people that have gone in for

11    debriefings -- and they'll talk to them, not only

12    about the area that they're primarily there for, but

13    they ask them generally about anything else that they

14    might know about, and especially CHSs that come from

15    the prison facility, it would be expected that they

16    would talk to them about anything they might know

17    about various investigations.  And so the

18    investigations interrelate.

19            And I think, as the Court saw on page 1,

20    the investigator that was doing this interview, one

21    of them is Special Agent Lance Roundy, which was one

22    of the main investigators in the 2001 murders, in the

23    early years of the various investigations in the 2001

24    murders.  And I'll try to take my chubby little

25    finger here and show the Court where I'm talking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1847

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 41

1848

```
 1    about again.
 2           So, Your Honor, I think that -- oh, I'm
 3    sorry, was the Court done seeing --
 4           THE COURT:  I think, so yeah.
 5           MR. CASTLE:  When you have an indication
 6    that there might be some crossover, which we have in
 7    this document between various investigations, then
 8    the Government is on notice that -- the U.S.
 9    Attorney's Office is on notice that there might be
10    material in that file that may be relevant, and may
11    be favorable to the defense, or might be inculpatory,
12    for that matter.  But it's certainly relevant.  And
13    at that point it's incumbent upon the prosecution to
14    review that file.
15           I think all the case law indicates,
16    essentially, that defense doesn't have to point and
17    tell the Government where to look and how to look.
18    But it's certainly helpful.
19           In this case, we showed them the file
20    number and asked them to do a thorough review, and
21    they decided to do a cursory review.  I don't think
22    that should give anyone confidence that that file
23    doesn't contain more material that is relevant or
24    helpful to the defense.  That's my argument
25    concerning that particular file.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1848

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 42 2849

1          THE COURT:  All right.  So I guess to put

2    the issue, your concern is two-fold; one, has it been

3    reviewed at all; and then, B, has Mr. Beck or an

4    attorney reviewed that file for Giglio, Brady, and

5    Rule 16 material?

6          MR. CASTLE:  Yes.

7          THE COURT:  Okay.  All right.  Mr. Beck?

8          MR. BECK:  So I just want to point out why

9    we feel confident that we have at least met our

10   obligations.  And so what happens is, the way we

11   perform this case, is we search the SNM files and

12   then we search all the FBI files, wherever they be,

13   for certain names, whether they be the defendants'

14   names, other SNM members' names, the SNM, their

15   monikers, things like that.  So what happens is

16   sometimes we get sources from different documents.

17          So, for instance, if we look at this case,

18   we've been asked to review this file, 63435.  When we

19   go down here to the other files that Mr. Castle was

20   pointing to, Substantive Case File number, you'll see

21   again 63435.  Now, next to it you'll see 62017.  If

22   we look at the report that Mr. Castle was showing

23   earlier, the files we reviewed, the first one is

24   62017.

25          THE COURT:  So those are the same file?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1849

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43850

```
 1              MR. BECK:  Right.  So what this document is

 2    saying is that this document, filed in 63435, was

 3    sent to two different files.  It was sent to 62017,

 4    the SNM file that we reviewed, but because this

 5    particular source also had information about the

 6    Barrio Azteca Gang, it was also sent to that case

 7    file, the Barrio Azteca file.  So this document

 8    appears in two different files.  And it looks like

 9    the one that we sent out was from the Barrio Azteca

10    file.

11              So for these source reports -- and I think

12    that Mr. Castle -- I don't want to ruin the ending

13    here -- I think there are two files that are source

14    files.  You have a file for the source, at least

15    that's the way they used to do it.  And then, like

16    this document, where the information comes, it's

17    funneled into open investigations in those files.

18              THE COURT:  Well, okay, so it looks to me

19    like what you're representing is that you've reviewed

20    62017, right?

21              MR. BECK:  That's right.

22              THE COURT:  But you have not reviewed

23    63435?

24              MR. BECK:  That's right.

25              THE COURT:  How big a file is it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1850

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 44

```
 1              MR. BECK:  We don't know.  We don't have
 2    that file.  It's my understanding that that file is
 3    in Texas related to the Barrio Azteca Gang.  So we
 4    don't have that file.  The same thing with the other
 5    files that -- the other three files we're going to be
 6    talking about.  We don't have those files.
 7              THE COURT:  Your office never did an
 8    investigation of that gang?
 9              MR. BECK:  I don't know.  That
10    investigation is in Texas, not in New Mexico.
11              THE COURT:  Is that a West Texas Gang?  Is
12    that an El Paso gang?  What is that gang?
13              MR. BECK:  Yes, that's my understanding.
14    West Texas, El Paso.
15              THE COURT:  So it's probably in the Western
16    District of Texas?
17              MS. ARMIJO:  It is, Your Honor.
18              THE COURT:  Probably in El Paso?
19              MS. ARMIJO:  It's a huge file.
20              THE COURT:  I'm sorry?  It's a huge file?
21              MS. ARMIJO:  And it's a rather extensive
22    investigation.
23              THE COURT:  When you say "huge," you're
24    talking about what?  What kind of numbers?
25              MS. ARMIJO:  I believe they've done --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1851

```
 1    Texas has done two RICOs that I believe have many
 2    more defendants than our case.  And it's been pending
 3    for quite some time.  So I'm sure it's quite
 4    voluminous.
 5              THE COURT:  What judge has it?
 6              MS. ARMIJO:  I don't remember.
 7              THE COURT:  They all look alike, right?
 8              MS. HARBOUR-VALDEZ:  Your Honor, Judge
 9    Cardone had the one that I was involved in.
10              THE COURT:  Okay.  Is it still pending,
11    still going?
12              MR. BENJAMIN:  Your Honor, I just left that
13    matter.  That matter has been over the course of 2010
14    to today.  So it's not this.  There is two defendants
15    pending for the last year that I was involved in in
16    that case.  It's a piecemeal.  And there was a 2008
17    case before that that related to that case.  And that
18    case, once again, was a piecemeal case.  I believe
19    the 2010 case resulted in one trial.
20              I'm not intending to interrupt, Mr. Beck,
21    Your Honor, so I apologize.
22              MR. BECK:  Oh, no need.  I think it's --
23              THE COURT:  So it's got two people left?
24              MR. BENJAMIN:  No, no, no.  It's piecemeal.
25    I was involved in the last year, Your Honor.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1852

```
 1    there were two defendants that were pending during
 2    that year.  It's just kind of been extraditing them
 3    one by one.
 4              THE COURT:  Oh, they didn't bring a
 5    30-defendant case, they'd just bring two at a time?
 6              MR. BENJAMIN:  It is not this, Your Honor.
 7              THE COURT:  Okay.  All right.
 8              MR. BECK:  And so, I guess the reason that
 9    I think Mr. Castle said we made a conscious decision
10    not to review these files is that we feel confident
11    we have the files related to SNM, SNM members, we
12    understand our obligations.  And I think as the Court
13    found, rightly so, last October, in the decision Mr.
14    Castle was reading from -- the March memorandum
15    opinion and order -- that beyond that, beyond these
16    SNM files right now, is a fishing expedition.  And I
17    think that's the right conclusion, and we stand
18    behind that today, that there are certainly lots of
19    other files out there in the FBI.  And they are, I
20    think, in the United States' possession, or in the
21    federal government's possession.
22              And so this case, just like any other case
23    that the FBI, the DEA, you know, the ATF takes on,
24    there is certainly a certain risk out there that
25    there is some document that references the defendant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1853

1    in the Government's possession that didn't make it

2    into the United States Attorney's hands, didn't make

3    it into the case file.  That's a risk in this case,

4    just like it is in other cases.

5         The FBI, to rebut that, places different

6    documents in multiple files.  And that's what's

7    happened here.  So that's why the United States made

8    this conscious decision.  We recognized there is a

9    risk.  There always is a risk, but we feel it's very

10   small in this case, given the search that we've done

11   through all the SNM files.

12        THE COURT:  All right.  Thank you, Mr.

13   Beck.

14        Mr. Castle, did that give you any

15   information you didn't have before you got up this

16   morning?

17        MR. CASTLE:  It's more information, but it

18   doesn't give me any more comfort.

19        THE COURT:  Okay.

20        MR. CASTLE:  And I'll tell the Court why.

21   When we were here last -- I think my pages got out of

22   the order, Your Honor.  If I could have a second.

23        THE COURT:  Certainly.

24        MR. CASTLE:  When we were last arguing this

25   issue in October, the issue came up that there was a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    rival gang to the SNM, by the name of Los Carnales,

2    and that because they were rival gangs, there would

3    be potential that there would be a cross-pollination

4    of reports that were relevant to the SNM Gang in a

5    particular Los Carnales investigation.  And the Court

6    indicated that, if we identify a file that we believe

7    might have this possibility of cross-pollination of

8    reports, that the Government was to review that file

9    for any discovery.

10           Well, the Barrio Azteca organization has

11   been identified by the FBI as a rival organization to

12   the SNM.  And because I didn't know this argument was

13   coming up, I don't have this in paper form, but I

14   would reference the Government to a -- on the 28th of

15   April, 2011, the Federal Bureau of Investigation

16   produced a situational information report.  And I'd

17   invite Mr. Beck -- this is in discovery, if he wants

18   to view over my shoulder.  And in that report, it was

19   titled, "Identification of Syndicato de Nuevo

20   Mexico/SNM membership requirements."  And in that

21   report it indicates that the Barrio Azteca is a rival

22   gang to the SNM.  And so --

23           THE COURT:  Where are they going to be --

24   educate me a little bit.  Where are they going to be

25   a rival gang?  Is there some prison in New Mexico

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1855

1   that contains both gangs?

2        MR. CASTLE:  It indicates in this report

3   that it's, "As of February 2011, the SNM leadership

4   at the Southern New Mexico Correctional Facility,"

5   which is the facility where these two murders took

6   place, attempted to align with the Sinaloa Cartel.

7   And the Sinaloa Cartel is aligned with Barrio Azteca.

8   And it says the SNM, in return, allegedly would

9   allegedly kill Barrio Azteca members on behalf of the

10  Sinaloa.  So what they're talking about is, they're

11  linking the SNM with Barrio Azteca in the very

12  facility that we're talking about.

13       THE COURT:  And where did you get this

14  document that you're referencing?  Was this in

15  production in this case?

16       MR. CASTLE:  It doesn't have a Bates stamp,

17  Your Honor.  And so what I -- frankly, what I was

18  doing is a search on my computer for Barrio Azteca,

19  and this popped up.  I'm fairly certain that this is

20  out of this case, because this is a memo for the

21  Albuquerque Division of the FBI, and it's an

22  unclassified law enforcement document.  So it might

23  have been in our investigation; it might have been in

24  some other form, but --

25       THE COURT:  All right.  Anything else you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1856

```
 1    want to say on that topic?
 2              MR. CASTLE:  No, Your Honor.
 3              THE COURT:  Anybody else?  Any other
 4    defendant want to comment on this topic?
 5              Let me ask you, Mr. Beck, if you have the
 6    answers to these questions.  Let me ask you about
 7    this file.  And if I'm impinging on work product,
 8    then you can tell me you'd prefer not to answer the
 9    question.  But let's say in this file -- let's say in
10    this case, do y'all have all the documents on a
11    computer system?  If I was in a civil case with
12    40,000 documents, I'd expect Ms. Wild to have every
13    one of them on a computer database, and I could
14    probably search different things to get ready for
15    different depositions, cross-examination, that sort
16    of thing.  Is this file on that sort of database?
17              MR. BECK:  It is in an electronic database.
18              THE COURT:  Let me ask, then, if you're
19    doing it that way -- and that's pretty standard for
20    everybody getting ready for trial -- is it likely the
21    Western District of Texas would have it the same way?
22    And then, you can see my next question is:  Without
23    you having to manually get all these documents and
24    review every one of them, could you ask your
25    colleague to do some limited word hits, and see what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1857

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 51

```
1    comes up as a way of seeing if there is anything in

2    that file that is related to SNM?

3               MR. BECK:  That's how these documents came

4    to be produced in this case.  That's what happened,

5    is that through the -- so, to view it, I would have

6    to sit at a desk at the FBI that has access to the

7    file.  I can't view it from my computer, I can't view

8    it from here.  I would have to be at the FBI

9    reviewing the pages.  The way that you search through

10   that system, it's my understanding -- I don't

11   think -- I mean, I don't think I'm giving up anything

12   there -- but it's my understanding, just as you said,

13   you can do a word search.  And so when the word

14   search was done for all the defendants, for SNM, for

15   Syndicato de Nuevo Mexico, all the terms related to

16   this case, that's where sometimes these documents

17   came up and where duplicates came up.

18               THE COURT:  So they were coming out of --

19   were they coming out of -- was this done for file

20   63435?

21               MR. BECK:  Yes, it was done -- I mean, it

22   was more robust than that -- it was done across the

23   FBI.  So files from 63435 -- if I'm saying that

24   right -- the number that you just said -- files came

25   down from that, documents --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  In other words, you have sort

2    of -- I'll call it a Westlaw/Lexis sort of system,

3    where the FBI can plug in every 302 that's been

4    dumped into the system and do a massive word search?

5          MR. BECK:  Yes, that's my understanding,

6    and I think that's right.

7          THE COURT:  Now, it's typical in a civil

8    case, where we're trying to use either algorithms or

9    some of the more sophisticated programs to substitute

10   for paralegals and young associates going through

11   massive amounts of materials, to have a fairly robust

12   sharing of information about the protocols being used

13   so that we can dispense with a paper-by-paper or

14   page-by-page review, and just rely upon what I think

15   are increasingly reliable search techniques and

16   search engines.  Would you be willing to share with

17   the defendants the search terms that you used for

18   63435, which I understand probably is not going to be

19   just limited to that; it's going to be the search

20   terms that you used?

21          MR. BECK:  Right.  Hold on one second, Your

22   Honor.

23          (A discussion was held off the record.)

24          MR. BECK:  Yes, we're comfortable with

25   that, Your Honor.  And again, it's not -- we don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1859

1    search a case file.  We search the FBI, and then it

2    comes down from the different case files.

3            THE COURT:  I understand.

4            MR. BECK:  We're happy to share the search

5    terms we used with the defense team.

6            And I'm guessing where you're going next,

7    if there is any additions or anything else that they

8    would like us to add, we will certainly consider

9    doing that, and searching those additional terms for

10   them, if that's where you're going.

11           THE COURT:  That was where I was going.

12   Thank you, Mr. Beck.

13           Mr. Castle, that seems to me to be a good

14   modern approach to trying to make sure that you have

15   the information.  Any flaws you see with where I'm

16   going?

17           MR. CASTLE:  Well, I think it covers some

18   of the gap, but not all of it.  Now, I'll explain

19   why.  Just going back to the original report.  This

20   was done because they did a search for the name

21   Edward Troup.  And so that revealed this file number.

22           THE COURT:  So you know some of the search

23   terms they're actually using?

24           MR. CASTLE:  Some of them.  And, for

25   example, they don't use Mr. Troup's nickname of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    "Guero."  They did a search under Billy Garcia, but
 2    not under the name "Wild Bill."  So we can probably
 3    fill in some of those gaps with that.
 4              But we have to understand to some extent
 5    the history of what's gone on here.  When this case
 6    started, when we got the discovery, they did not
 7    review the five files that produced over 1,000 pages'
 8    worth of relevant material already.  So we have to
 9    understand there is a gap here, and there has been a
10    hole here that needs to be filled.
11              And so I think last time we did talk --
12              THE COURT:  Let's see what Mr. Beck says.
13    You said you didn't mind being interrupted.  Let's
14    see what he says.  Mr. Beck.
15              MR. BECK:  So it's my understanding that
16    the way this search was done is we did search "Wild
17    Bill" and "Guero."  Guero, I think everyone agrees is
18    a common moniker.  So if you search "Guero," I don't
19    think anyone wants to see the number of documents
20    that would come up.  But the FBI searched
21    "Guero/SNM," so that they would get documents that
22    tied "Guero" or "Little Guero" to the SNM.  So that
23    is a caution that -- I can't guess the number of
24    documents that would come up if we looked through
25    just "Guero" by itself.  So we did search those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   monikers as well.
 2               MR. CASTLE:  If I could just -- I'd like to
 3   give the Court an analogy.  When I've been doing some
 4   research online on case law that Your Honor has
 5   written on an issue such as Brady, I could put Your
 6   Honor's name into the search engine, and I can find a
 7   page with your name on it.  But I have to then review
 8   the whole case to understand what is relevant.
 9               And what they're talking about is:  We'll
10   give you the page where the hit shows, with Edward
11   Troup.  But to me, what that tells them really is
12   that's a file.  Now, when you do that, you see a file
13   number, that tells you that that's a file you need to
14   review, because they've discussed here the 2001
15   murders.  And what if in that file there is an
16   informant who said it was somebody else who did the
17   murders?  That wouldn't show up on a search for
18   Edward Troup or Billy Garcia, because it would show
19   someone else's name.
20               So just like a Westlaw search, I think once
21   the FBI and the Government hits on a file that has
22   relevant material, that triggers an obligation to
23   review that file to see if it contains other
24   information that is relevant.
25               And to give the Court another example of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1862

1    this:  If we go right back to this one -- same

2    document, this CHS gives this report, and there might

3    be other material in this file about the CHS that

4    says -- that shows that the informant is credible or

5    incredible.  There might be Giglio material in that

6    file concerning the informant.  And that's not going

7    to show up in any search of this.  So that's the

8    problem with the proposal that they have.

9            THE COURT:  Well -- go ahead, Mr. Beck.

10           MR. BECK:  I was going to say, I think

11   there is a distinction.  I think, as that report

12   shows, when a name comes up from another file, we

13   take the entire report.  And so I think that is

14   analogous to reading Your Honor's entire decision.  I

15   think, to go and look through that whole file page by

16   page, would be more like, if we see something in Your

17   Honor's opinions that's helpful, then we review all

18   the District of New Mexico's decisions for the entire

19   year to see if there is something inconsistent.

20           If that source -- now, going to the next

21   argument, if that source has something in the file

22   that makes them an incredible witness, if we're using

23   them as a witness, if we're using that information,

24   then that's helpful, and we need to know that.  But

25   for a lot of these people who will come out in the CI

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1863

```
 1   disclosures, and a lot of these sources, we don't
 2   know anything about them, other than that they gave a
 3   certain document, right?  So we can't -- I mean, we
 4   can't bring that in.  There is hearsay rules and
 5   confrontation clause rules that prevent that.  So I
 6   think that's -- I think that reading the entire
 7   decision is a bad analogy for what we're being asked.
 8            THE COURT:  Let me make sure I understand
 9   the analogy.  You're saying that when you get a
10   hit -- let's say you get one of my 151 pages on
11   motion to sever, you're going to look at my name,
12   and -- somewhere on page 49, and then you kind of
13   look at it, and you make a determination.  You know,
14   if I understand "Guero," that's slang for a pale
15   person, pale one.  You look at it and you say it
16   doesn't have anything to do with SNM.  This is Jim
17   Browning's opinion about Federal Rule of Civil
18   Procedure 15(a) and amendments to the complaint.  You
19   make a professional judgment this doesn't have
20   anything to do with it, and you're not reading the
21   whole opinion?  Is that the analogy?
22            MR. BECK:  No, I don't think so.  What
23   we've done in this case is, if we find the 151-page
24   motion to sever, we produce that document.  Now,
25   we --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1864

```
1              THE COURT:  You just turn over the
2    document.
3              MR. BECK:  Right.  Right.  Unless --
4              THE COURT:  But you're not going and
5    reading the whole FBI file that contained that
6    document?
7              MR. BECK:  Right.  That's right.
8              And I don't want the Court to misunderstand
9    that we did do a search for "Guero," and looked
10   through every hit on that to see if it was Mr. Troup.
11             THE COURT:  Right.  You did "Wild Bill,"
12   and you did "Billy," and "Bill"?
13             MR. BECK:  I can't make those
14   representations now, but I can represent --
15             THE COURT:  It's something like that?
16             MR. BECK:  Something like that.  And we
17   will turn that list over to the defense.
18             THE COURT:  All right.  Does that help you
19   at all?
20             MR. CASTLE:  It helps us.  But again --
21             THE COURT:  You still think they ought to
22   review the whole file?
23             MR. CASTLE:  Yes.  I mean, this is an
24   investigation of an organization that they've been
25   doing for 15 years.  And they have a number of files.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1865

1   And the way it's proceeded so far is the Government

2   waits until we identify a file before they have

3   either the FBI or themselves review it.  And that's

4   not the way it's supposed to be.

5           THE COURT:  Well, but in fairness -- I

6   mean, we know they have a Brady obligation, but there

7   is a give and take.  I mean, defendants always come

8   in in any case -- sometimes it's plaintiffs in my

9   civil cases, they're saying:  Did you look here, you

10  know.  And defendant said, No, I didn't think to look

11  there.  And they look there, and there will either

12  be -- so I mean, there is a give and take in

13  discovery.  That's what we're doing here.  I'm trying

14  to massage this thing to get your hands on the

15  documents you need to defend these defendants.  But

16  at the same time I'm trying to be realistic about it.

17          I think the Government has presented a good

18  solution.  I think, if you got more hits and

19  searches, give it to them.  It looks like they're

20  giving you documents.  It seems to me that they're

21  taking their obligation seriously.  It may not be

22  exactly what you want, but they're taking it

23  seriously.  And they have to make some professional

24  adjustment -- everybody does in any case -- the civil

25  defendants, or the Government in the criminal cases,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to say:  We're going to cut it off here, and we're
 2   going to go there.  And it seems like they put in
 3   some safeguards, primarily you and the other defense
 4   lawyers here to say, Well, have you looked here?
 5           So I think I'm going to live with the
 6   Government's proposal.  And you can go back with some
 7   search terms.  Mr. Beck, you'll put a letter together
 8   telling them what search terms you used.  And let's
 9   continue to rock along here before we start requiring
10   just a wholesale review of documents that I think are
11   going to probably produce very marginal materials
12   that are beneficial to the case.  It seems to me
13   we've got a good check and balance in place here.
14   And I've got to rely -- we all got to rely to a
15   certain degree on the Government's taking seriously
16   their Brady obligations.  And it seems to me they're
17   doing it.
18           All right.  What else, Mr. Castle?
19           MR. CASTLE:  Your Honor, the second one is
20   concerning a file with the last five numbers of
21   61844.  I'm going to show the Court a document and
22   point out the file number.  Once again, it's right
23   here.  And it's a linked file with a subfile, which
24   the Government has reviewed, which is titled "SNM."
25   This is a report of another source of information,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1867

1    and an identified source.  It talks about a number of

2    the defendants in this case, such as Mr. Baca.  And

3    on page 2, my client is discussed by this source of

4    information.  I'm trying to find -- yes, Billy

5    Garcia.  And so it's our position that they should

6    review that file.  And I'm not sure -- perhaps, I

7    should stop now, and indicate whether they've

8    identified whether that file is something unrelated

9    to the SNM at all, or the 2001 murders?

10            THE COURT:  This is 62017?

11            MR. CASTLE:  No, this is 61844.  And in the

12   original file that we showed the Court they did not

13   review that file according to this 302.

14            THE COURT:  Mr. Beck.

15            MR. BECK:  Again, just above that 61844A,

16   immediately above it is 57713, case ID, and the 302

17   that shows which files we did put our hands through

18   includes 57713.  So again, this, and the primary case

19   up at the top is 57713-SNM.  So again, this file came

20   from the SNM file.  It may link up, again, with

21   another file below there.  So again, this is another

22   example of a document that went to two different

23   files.  Two different documents out there; one of

24   them went to 57713, which we hand reviewed; one of

25   them went to 61844, which we did not review.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1868

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2869

```
 1                THE COURT:  Okay.  So this one, then, is
 2    electronically searched then?
 3                MR. BECK:  Right.  Yes, this is the same
 4    status as the one we just talked about.
 5                THE COURT:  Do you know off the top of your
 6    head -- we have a little better sense of that other
 7    file.  I don't have the number up in front of me.
 8    But we had a little better sense to what gang it was
 9    referring to.  Do we have any sense to what this one
10    is?
11                MR. BECK:  That's not referring to a gang.
12    That's my understanding that's referring to the
13    source.  So the way that I understand the FBI used to
14    do these things is the source would have a file.  So
15    that is the source's file.  I don't have any idea how
16    big that is.
17                THE COURT:  So you've got a CHS and he's
18    doing something in SNM, but he also might be doing
19    something else and giving you information, so you
20    send it to that file as well?
21                MR. BECK:  Right.  So when you have a
22    source, the way they used to do it -- they probably
23    still do some modification of this -- but in this
24    case, that source had a file.  If they provided
25    information that related to another open file in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1869

```
 1   FBI, a document was placed in their file, a document
 2   was placed in that file.  So this is an example like
 3   that.
 4            THE COURT:  So this file has been
 5   electronically searched for the same code words that
 6   you're going to --
 7            MR. BECK:  When we searched the FBI files,
 8   this document came up.
 9            THE COURT:  Okay.  Mr. Castle.
10            MR. CASTLE:  Your Honor, I accept the
11   Government's representation that they have a separate
12   file for these particular CHSs.  But I think they're
13   under a duty to search the CHSs' files.  Now, I don't
14   know if the CHS is going to be used in this case.  I
15   have no idea.  But certainly with regards to CHSs
16   that are going to be used in this case, they need to
17   go through their personal -- that file.  Because, if
18   they gave false information in a different
19   investigation, that's Giglio.  If they had --
20            THE COURT:  Let's see what Mr. Beck is
21   going to say on this, if you don't mind being
22   interrupted.
23            MR. BECK:  I mean, I was going to say we
24   understand our Giglio obligations as they relate to
25   that.  We know that witnesses that we have previous
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   inconsistent statements are Giglio.  We know we have

2   an obligation to know that information, if it's in

3   the United States' possession.  So we haven't looked

4   at this file.  That probably tells everyone that

5   we're not using this person as a witness.

6            THE COURT:  Not using this guy.

7            MR. BECK:  So --

8            THE COURT:  All right.  Anything else on

9   that one, Mr. Castle?

10            MR. CASTLE:  The only thing I would note is

11   that this document came up because it was searched

12   under Mr. Garcia's name.  And it indicated -- I think

13   what this means is that these files were the primary

14   case file for an investigation of Mr. Garcia.

15            THE COURT:  So you have a little sense as

16   the search terms they're using?

17            MR. CASTLE:  Yes.

18            THE COURT:  Mr. Beck.

19            MR. BECK:  That's not what "primary case"

20   means.  I don't know what it means, but it doesn't

21   mean that.  And I will say that, again, I think we've

22   heard numerous times that people have found

23   productions of the same discovery multiple times at

24   different Bates numbers.  And this is an example of

25   why.  Because when we did the search with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1871

```
 1    monikers, we produced that information, and the
 2    names, we produced that information.  Then, as Your
 3    Honor said, the checks and balances, they asked to us
 4    go back and search those files.  We did search those
 5    files, those hand files.  So that's why this document
 6    is likely to have been produced twice, because it was
 7    produced with the Billy Garcia search on the top.
 8    Then, when we went back through 62017, it was
 9    produced again from that source file.  So that's why
10    I'm saying the United States feels comfortable and
11    confident with the process we've worked out.
12            THE COURT:  All right.  Anything else on
13    that one, Mr. Castle?
14            MR. CASTLE:  No.
15            THE COURT:  All right.
16            MR. CASTLE:  Your Honor, the next one is
17    59388.  I'm pointing to the case number, 59388.  This
18    is titled, "Full investigation."  And the document
19    title is "The Syndicate of New Mexico uses murders
20    and assaults," dated July 21, 2005.  It talks
21    considerably -- it's an individual who has agreed to
22    testify provided the following information.  And then
23    it goes down and talks about various individuals that
24    are indicted in this case, and it goes on to page 2
25    of that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1872

```
 1              Looking back at the 302, the file, which is
 2   59388, has not been reviewed by the Government.  So
 3   based upon our review of the original 302 --
 4              MR. BECK:  I think if we go back, you'll
 5   see it's the second number on that 302.
 6              THE COURT:  Which one, Mr. Beck?
 7              MR. CASTLE:  Oh, I'm wrong.  Apparently,
 8   they did search it, Your Honor.  My eyes failed me.
 9   So we can move on.  We withdraw the claim of 59388.
10              The next one is file number 54711, which
11   unless my eyes fail me again, is not on the 302.  But
12   I will show the Court what 54711 is.  This is 54711.
13   This is a 302 contained within that file.  And this
14   is -- in this 302 they're questioning people about
15   the deaths of inmates, Frank Castillo and Rolando
16   Garza, at the Southern New Mexico Correctional
17   Facility.  So that's what the purpose of this 302 and
18   investigation is.  That's the exact case that we're
19   talking about in Counts 1 and 2.
20              MR. BECK:  Scroll that down a little bit.
21              MR. CASTLE:  Judge, I don't mean to be
22   confusing the Court.
23              THE COURT:  No, that's fine.
24              MR. CASTLE:  And it goes on for several
25   pages, where it identifies various individuals, such
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1873

1   as one defendant, Allen Patterson; an alternate

2   suspect in this case by the name of Ray Molina; one

3   of the defendants who has recently pled out, Eugene

4   Martinez.  It discusses additional inmate interviews

5   in the Castillo and Garza murders.  And goes on, Your

6   Honor.  It talks about various defendants,

7   Mr. DeLeon, Mr. Troup, and again Mr. Gallegos.

8   That's not the only document.

9             THE COURT:  Let's do this:  We're beginning

10  to have defendants that need to go use the restroom.

11  If you don't mind, let's take a break here and let

12  everybody do what they've got to do, and come back in

13  about 15 minutes.  We're getting pretty close to our

14  morning break anyway.  We'll be in recess for 15

15  minutes.

16             (The Court stood in recess from 10:30 to

17  10:53 a.m.)

18             THE COURT:  All right.  Do we have

19  everybody?  Look around.  Everybody back in?

20             All right.  Mr. Castle.

21             MR. CASTLE:  Your Honor, the break was

22  timely because we resolved the remaining matter.

23             THE COURT:  Okay.

24             MR. CASTLE:  In regard to file 54711, the

25  Government thinks they may have done a full review of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1874

```
 1    that.  And my review of -- and I was wrong, it was
 2    like 3,000 pages that we were provided.  There were a
 3    number of documents from that file that we received
 4    in discovery.  So what they're going to do is between
 5    now and May 30, make sure that they did a full
 6    review.  If they didn't, they'll do the full review
 7    and produce accordingly.  And if they already did do
 8    the review, they'll let us know.  And we accept that
 9    resolution.
10             THE COURT:  Okay.
11             MR. CASTLE:  The other aspect is the
12    Government also is going to get us that list of names
13    by May 30.  They might have earlier.  But they have a
14    number of disclosure obligations in the next couple
15    of weeks.  And so we thought that was appropriate.
16    And then we'll get together and try to give them a
17    comprehensive list among all the defendants.  And
18    I'll take it on myself to collate, essentially, and
19    remove duplicates of various counsel's requests.
20             THE COURT:  All right.
21             MR. CASTLE:  And I think that resolves the
22    issues that I have.
23             THE COURT:  All right.  Does that resolve
24    everything in your motion?
25             MR. CASTLE:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1875

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9876

```
 1              MR. BECK:  Yes, Your Honor.
 2              THE COURT:  All right.  And anybody else on
 3     those motions, those issues?
 4              All right.  Thank you, Mr. Castle.
 5              I think that, then, ends the motions that
 6     we have for today.
 7              You just let Mr. Castle in, Ms. Johnson?
 8              MS. JOHNSON:  Oh, yes, Your Honor.
 9              THE COURT:  All right.  Let me ask this:
10     Is there anything else we need to discuss before we
11     end this case?  I have a detention hearing.
12              Mr. Creecy?  Ms. Harbour-Valdez?
13              MR. CREECY:  Yes, Your Honor.  On behalf of
14     Ms. Rodriguez, we were brought into this case in the
15     second superseding indictment in March.  And since
16     that time, and just over the last week, we have been
17     working with the United States Attorneys to get
18     discovery in this case.  We've just started receiving
19     a little bit of discovery this week.  And we
20     appreciate efforts of the United States Attorneys
21     working with us in order to do that.  We have a very
22     small amount of discovery that we received so far.
23              And I just wanted to inform the Court that
24     as we review this, we might have to file motions on
25     behalf of Ms. Rodriguez concerning that discovery, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1876

```
 1    concerning events in this case.  While we don't want
 2    to duplicate what has been done in the past -- and
 3    we'll definitely review the Court's opinion on other
 4    motions that have been filed -- we just wanted to
 5    alert the Court that we do have that issue that might
 6    be looming, that we might have to file other motions
 7    on behalf of Ms. Rodriguez.
 8         THE COURT:  All right.  Well -- and a lot
 9    of stuff has been done orally.  You've been with me
10    long enough in a lot of cases, but you also have been
11    witnessing this morning -- and I know Mr. Winder was
12    last week -- a lot is being done like we did this
13    morning, a lot of hands-on sort of orders and
14    agreements and things like that.  So you may have to
15    review some transcripts as well to get a good feel
16    for exactly what discovery is being required, and
17    what I haven't been requiring, so to try to get a
18    feel for it.  But I know you're doing that.
19         MR. CREECY:  Yes, Your Honor.  If we have
20    any unique issues for Ms. Rodriguez, which might be a
21    little different than other defendants, then that's
22    what we'll be looking at.  We'll try not to duplicate
23    anything that's been done with other defendants.
24         Thank you, Your Honor.
25         THE COURT:  I appreciate it, Mr. Creecy.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1877

```
 1    Thank you, Mr. Creecy.

 2              Ms. Harbour-Valdez.

 3              MS. HARBOUR-VALDEZ:  Your Honor, we would

 4    like the Court to reconsider the motion for

 5    continuance that was filed on behalf of the Counts 1

 6    through 5 and 13 through 16.  The Court may recall

 7    that all of the defendants were in agreement with

 8    that continuance, and the Government would not oppose

 9    it.  But we had one defendant who was asserting his

10    speedy trial rights.  It appears that that one

11    defendant's case has been worked out this week.  And

12    we would like the Court to reconsider -- I know you

13    denied it without prejudice.  I don't know if you

14    want us to do any additional briefing on it.  But

15    since you opened the door to hear other things, we

16    would like the Court's thoughts on that.

17              THE COURT:  You don't want all my thoughts,

18    do you?

19              MS. HARBOUR-VALDEZ:  Probably not.

20              THE COURT:  Let me ask the Government, and

21    let me ask, Ms. Johnson:  Is your deal -- I know that

22    you've got some details to work out -- is your

23    agreement done enough that I can rely on it for

24    anything that Ms. Harbour-Valdez is asking me to

25    consider?  I mean, can I consider it that Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1878

 1    Gonzalez is out of the case, and I can rely on that

 2    for making scheduling decisions?

 3            Let me ask you first, Ms. Armijo?

 4            MS. ARMIJO:  Yes, Your Honor, I believe so.

 5    Obviously, Ms. Johnson would be in the best position.

 6    But we believe so.  We provided her with a plea

 7    agreement, and we're just working out some minor

 8    details on wording.  But I believe you can do this.

 9            THE COURT:  Ms. Johnson?

10            MS. JOHNSON:  Yes, Your Honor.  There are

11    some minor details -- well, actually not minor for

12    Mr. Gonzalez.  We've requested some change in some of

13    the language, which if they are not changed as

14    requested, those would be a deal-breaker.

15            And just -- Your Honor, may I confer with

16    my client for just one second?

17            THE COURT:  Yeah.  And I guess the question

18    I probably would ask you is:  Am I probably ever

19    going to see you again asserting Speedy Trial Act

20    rights in this case?

21            MS. JOHNSON:  You could be.

22            THE COURT:  Can I rely upon that to

23    schedule with the rest of the folks, or am I -- do

24    you think I might see you again?  I guess the reason

25    is, I'm wondering is if what I need to do with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Ms. Harbour-Valdez's request is wait.  I mean, I
 2    think I've said that if everybody is on board to move
 3    this trial, that's going to probably be very
 4    influential on me.  I do worry about the ripple
 5    effects on the other cases and other defendants in
 6    the other cases.  But nonetheless, I may have to
 7    solve those problems by not honoring the Government's
 8    request to try one case before the other.  But --
 9              MS. JOHNSON:  May I confer with my client?
10              THE COURT:  Certainly.  Take your time.
11              (A discussion was held off the record.)
12              THE COURT:  All right.  Let's go back into
13    order.
14              Ms. Johnson, do you have something to say
15    to the Court?
16              MS. JOHNSON:  Yes, Your Honor.  We do have
17    an agreement now.  So the Government is going to
18    finalize it, send it over, and we'll get it
19    scheduled.
20              THE COURT:  All right.  So I can rely upon
21    you not to be present at any more of these hearings
22    and assert your Speedy Trial Act rights?
23              MS. JOHNSON:  Not in this case, Your Honor.
24              THE COURT:  Not in this case, okay.  I
25    don't want to kick you out of federal court.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1880

```
 1                MS. JOHNSON:  Another case, possibly.

 2                THE COURT:  All right.  Thank you, Ms.

 3      Johnson.

 4                Ms. Armijo?  Mr. Castellano?  Is that a

 5      fair representation?

 6                MS. ARMIJO:  Yes, Your Honor, it is.

 7                THE COURT:  All right.  What's your

 8      thoughts on Ms. Harbour-Valdez' renewed motion to

 9      continue the trial?

10                MS. ARMIJO:  We don't have any objection as

11      long as the deadlines that have passed, some of them

12      can be reinstituted.  The only issue we have is -- of

13      course, we've always said that we want the Baca case

14      to go last.  And I believe there was one hold-out in

15      that case -- they're not here today -- 1613.  But I

16      believe there may be some other attorneys here that

17      have more insight on that.  And it was just one

18      person that was kind of holding out.  But I've been

19      told by counsel here that they think that that person

20      will agree to a continuance.  And if that's the case,

21      then everything can be shifted, Your Honor.

22                And I believe, for the short term at least,

23      I think we can get the July one off the table.  We

24      can at least push that one down a little bit more.

25                THE COURT:  Now, Baca -- we've got the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1881

1    second half of DeLeon, and we've got Baca all set for

2    November -- no?  When do we have Baca set?

3         Well, let me ask you, Ms. Harbour-Valdez,

4    take the first condition first, put aside any

5    problems with Baca.

6         (A discussion was held off the record.)

7         THE COURT:  So my memory is the second half

8    of DeLeon, and then the Baca are both set for

9    November 6.  Putting that issue aside, what that

10   hold-out in Baca -- his position on that is -- on the

11   first set of conditions about the passed deadlines,

12   and those sort of things, is that something that the

13   defendants in DeLeon would agree with?

14        MS. HARBOUR-VALDEZ:  Yes, Your Honor.  We

15   anticipated a new scheduling order would be submitted

16   for the Court's approval.

17        THE COURT:  And that's what you're

18   basically saying as well, Ms. Armijo?

19        MS. ARMIJO:  Yes, Your Honor.

20        THE COURT:  Okay.  Well, why don't we do

21   this:  I'm a little reluctant, because I have -- I do

22   have some memory of that person in Baca -- was it Mr.

23   Acton -- I think it was Mr. Acton saying:  I'll agree

24   to this continuance, but I'm not going to agree to

25   another because of my client's Speedy Trial Act

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    rights.  I'm a little reluctant to run roughshod over

 2    them.  I think y'all probably need to sit down with

 3    him and see -- until you talk to him and see if he

 4    agrees.  So I'm not going to grant it today.

 5             And what I'm about to say, I'm going to do

 6    for my own self-preservation.  I'll take another

 7    motion to continue.  I'll grant it if everybody in

 8    this case is onboard, and if everybody in the other

 9    case understands the ripple effect.  If they can't

10    agree on the ripple effect -- you know, I know the

11    Government wants to try this case before they try

12    Baca.  But I'm not -- that's the Government's

13    preference.  I'm not necessarily locked in on that.

14    The defendants may prefer that, too.  And I

15    understand that.

16             So I'll go along with -- probably, if

17    everybody wants to go along.  But I'm not just going

18    to sign a motion to continue.  Y'all have had some

19    problems working out scheduling orders.  And so I'm

20    going to need to have a motion to continue with an

21    agreed scheduling order.  And if you can't agree on

22    the scheduling order, let's get that front and

23    center; we'll get back together, and I'll hammer it

24    out.  But we've had so much difficulty with

25    scheduling orders.  Maybe if everybody wants the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1883

```
 1    continuance, they'll work harder together to get the
 2    scheduling order put in place.  So from a
 3    self-preservation standpoint, I'll make that
 4    requirement as well.
 5            All right.  Anything else I can do on that
 6    today, Ms. Harbour-Valdez?
 7            MS. HARBOUR-VALDEZ:  No.  Thank you, your
 8    Honor.  I'll take the lead on working with the
 9    Government on that scheduling order.
10            THE COURT:  All right.  Thank you.
11            Mr. Davis.
12            MR. DAVIS:  Judge, I would like a bit of a
13    clarification.  Because based on the Court's ruling,
14    it's my understanding that when the Court granted the
15    severance, the Government indicated that they were
16    going to try the Gallegos group first, and then the
17    Counts 6 through 13 people would go thereafter.
18            The Court now has continued the Gallegos
19    group July trial, and you indicated that.  And I
20    guess now the trial has been rescheduled for November
21    2.  It was my understanding, in accordance with the
22    Government's wishes, the Gallegos group trial would
23    go first on November 2.  But I'm not sure that that's
24    what I heard from the Court; that the Court is now
25    inclined to try the Counts 6 through 13 group in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1884

```
 1    November?

 2              THE COURT:  Well, all we've done right now

 3    is -- all that we have -- we may be barreling towards

 4    something like you're saying.  But right now we still

 5    have a July 10th on what you're calling the Gallegos

 6    group.  I call it the first batch, the first counts

 7    with the later count.  So that's still on July 10th.

 8    It does look like there may be a continuance of that.

 9    The Government has expressed, I think, a preference

10    to trying the first half of the DeLeon first, and

11    then those later date counts at a later date.

12              I think it would be hard to pick a jury,

13    and I'm not sure anybody would want to at the same

14    time, do them back to back.  That would have a jury

15    hanging out eight weeks, first estimate.  I'm not

16    sure that's anybody's advantage.  If we're going to

17    sever the trial, I'm not sure it's probably a good

18    idea to have all the voir dire taking place with the

19    same venire.  So I think we're looking at two fairly

20    separate trials.

21              MR. DAVIS:  I think that's what all of us

22    anticipated.  We're just trying to -- I mean,

23    obviously, November of this year gives us a bit of

24    headway.  But, obviously, the sooner that either of

25    the two groups know for a fact that we'll be up to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1885

```
 1   bat in November, that would be helpful.  Obviously,
 2   we may have concerns to raise about the November
 3   trial, either group may have, I don't know,
 4   particularly in light of the 1613 issues.  I just
 5   don't know, Judge.  But I just wanted to clarify that
 6   issue, and make sure where we were at on that.
 7            THE COURT:  Well, right where we're at
 8   right now is we still have the first half DeLeon,
 9   this case, on July 10th, and we've got the second
10   half of DeLeon on November 6, but it's on a trailing
11   docket with Baca.  So somebody has got to probably do
12   something with that.  But that's where we stand at
13   the present time.
14            MR. DAVIS:  Thank you, Judge.
15            THE COURT:  Then somebody will have to
16   move.  And if y'all can agree and -- you'll have to
17   work with Baca -- then I'll probably go along.  But
18   if you don't agree, then I'll probably then wade in
19   and decide what I think is best.
20            MR. DAVIS:  Thank you, Judge.
21            THE COURT:  All right.  Ms. Armijo.
22            MS. ARMIJO:  And, Your Honor, I believe
23   that when we were in court last, we did say, because
24   there was speedy trial issues, that the trial to go
25   first in July would be the counts -- the first
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1886

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 0887

```
 1    counts, the first batch, as you called it.
 2            THE COURT:  That was because of Ms.
 3    Johnson.
 4            MS. ARMIJO:  That was because of Ms.
 5    Johnson.  But now, because we don't have that issue,
 6    I believe that the United States would prefer to do
 7    counts 6 through 12 first, which would entail the
 8    Molina murder, and then also several conspiracies to
 9    murder, and others.  And then do -- for the second
10    trial the --
11            THE COURT:  Older case.
12            MS. ARMIJO:  -- the older cases.  And I
13    would anticipate that the second trial would probably
14    be longer than the first trial, just as far as -- and
15    I'm sure people may disagree with all that, but
16    that --
17            THE COURT:  Well, I would think it would be
18    a little bit longer, just because I'm anticipating
19    we're going to have more defendants in that -- what
20    I've been thinking of is the first half, but --
21            MS. ARMIJO:  And there is four murders on
22    that one.  So we would only have one murder and
23    assault and some conspiracies to commit murder as
24    well.  So I believe I have shared that information
25    with some people that were asking before court.  But
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1887

```
 1   I just wanted to let the Court know as well.  And
 2   we're fine, again, with continuing everything, as
 3   long as we have new scheduling orders, and that
 4   everything -- as you say, the ripple effect works.
 5           THE COURT:  Well, any quick reaction from
 6   the defendants?  Y'all may want to think about it.
 7   Anybody got any -- Ms. Sirignano?
 8           MS. SIRIGNANO:  Your Honor, I just reached
 9   out to Marcia Morrissey, who is counsel for Anthony
10   Cordova in the Baca case.  And they're agreeing to
11   continuance of the November Baca trial date.  I
12   understand from Mr. Blackburn we might need a little
13   bit more time on that.
14           THE COURT:  Okay.  Well, y'all talk about
15   it.  One trial has got to go before another.  The
16   defendants may have a preference.  And if you can't
17   agree with the Government's proposal, then I guess
18   I'll have to decide.  I guess I'm trying to think,
19   you know, really what the criteria would be.  It
20   seems just choice.
21           All right.  So let's maybe put that into
22   the scheduling order.  That may require you to --
23   again, you've got to consult with the Baca people,
24   because I do remember Mr. Acton saying that was the
25   last time he was going to agree.  And if we can't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1888

```
 1    satisfy Mr. Acton, then I may be looking at -- I know

 2    that's not what the Government wants -- pulling that

 3    Baca case up and dealing with it, to deal with that

 4    problem.

 5            All right.  Anything else we need to

 6    discuss while we're together?  Anything else I can do

 7    for you --

 8            MS. ARMIJO:  No, Your Honor.

 9            THE COURT:  -- Ms. Armijo?

10            How about from the defendants?  Anything

11    else we need to discuss?  Anything else I can do for

12    you?

13            Let me ask, from the DeLeon standpoint, I'm

14    working on this motion to sever.  Is there anything

15    that you'd prefer, opinion-wise, order-wise,

16    me-thinking-about-wise, that you'd prefer rather than

17    that?

18            Let me ask you, Ms. Sirignano, we're going

19    to be looking at trial with Mr. Garcia before we

20    probably see anything with DeLeon.  Is there anything

21    that you would prefer I work on in your case rather

22    than in this case?

23            MS. SIRIGNANO:  No, Your Honor.  I spoke to

24    Mr. Beck earlier today, and if this July 10th comes

25    off, then the parties anticipate taking the July 10th
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1889

1    date for the drug case, the 4275 case.

2            THE COURT:  And that was all right with

3    Ms. Wild?

4            MS. SIRIGNANO:  I'll check with her next.

5            THE COURT:  Okay.  I think I vaguely recall

6    us talking about that when we moved your May date to

7    June date.

8            MS. SIRIGNANO:  Thank you, Your Honor.

9            THE COURT:  And you don't have any

10   preference on what I work on, because I may have to

11   shift back to you and Mr. Garcia sooner rather than

12   later?

13           MS. SIRIGNANO:  No, Your Honor.  I think

14   the severance issue is probably pretty important for

15   most of us.

16           THE COURT:  All right.  Well, I appreciate

17   everybody's presentations, hard work on this.

18           Have a good weekend.  I may not be seeing

19   you for a while.  So I appreciate everybody's hard

20   work.  We'll be in recess.

21           I'm going to have a detention hearing

22   following this.

23           (The Court stood in recess.)

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

84

1                          C-E-R-T-I-F-I-C-A-T-E

2

3      UNITED STATES OF AMERICA

4      DISTRICT OF NEW MEXICO

5

6

7          I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8      Official Court Reporter for the State of New Mexico,

9      do hereby certify that the foregoing pages constitute

10     a true transcript of proceedings had before the said

11     Court, held in the District of New Mexico, in the

12     matter therein stated.

13         In testimony whereof, I have hereunto set my

14     hand on May 26, 2017.

15

16

17

18                      _____
                        Jennifer Bean, FAPR, RMR-RDR-CCR
19                      Certified Realtime Reporter
                        United States Court Reporter
20                      NM CCR #94
                        333 Lomas, Northwest
21                      Albuquerque, New Mexico 87102
                        Phone:   (505) 348-2283
22                      Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                        CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8

9         Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on November 8, 2017.
11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
13

14

15   For the Defendants: Mr. Brock Benjamin, Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
16   Mr. Robert Cooper; Mr. James Lahann; Mr. Orlando
     Mondragon; Mr. John Granberg; Mr. Billy Blackburn;
17   Ms. Amy Jacks; Mr. Richard Jewkes; Mr. Marc Lowry;
     Ms. Amy Sirignano; Mr. Michael Davis; Ms. Carey
18   Bhalla; Mr. Ryan Villa; Mr. Donovan Roberts; Ms.
     Angela Arellanes; Mr. Jerry Walz
19
     For Defendant Martinez:  Ms. Marcia Milner
20
     For the Defendants (Via telephone):  Ms. Justine
21   Fox-Young; Mr. Christopher Adams

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   (The Court went on the record at 10:59 a.m.
     Defendant Christopher Chavez was not present the
 2   morning session.)

 3           THE COURT:  Good morning everyone.  I

 4   appreciate everyone making themselves available to me

 5   this morning.

 6           All right.  The Court will call United

 7   States of America versus Angel DeLeon, et al.,

 8   Criminal Matter No. 15-4268.

 9           If I could get entries of appearance for

10   the Government.

11           MS. ARMIJO:  Good morning, Your Honor.

12   Maria Armijo, Randy Castellano, and Matthew Beck on

13   behalf of the Government.

14           THE COURT:  All right.  Ms. Armijo, Mr.

15   Castellano, Mr. Beck, good morning to you.

16           And let's go to Defendant Joe Lawrence

17   Gallegos.

18           MR. BENJAMIN:  Good morning, Your Honor.

19   Brock Benjamin on behalf of Mr. Gallegos.

20           THE COURT:  All right.  Mr. Benjamin, Mr.

21   Gallegos, good morning to you.

22           And for Defendant Edward Troup.

23           MS. HARBOUR-VALDEZ:  Good morning, Your

24   Honor.  Cori Harbour-Valdez and Pat Burke on behalf

25   of Edward Troup.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1893

```
1              THE COURT:  All right.  Ms. Harbour-Valdez,
2    Mr. Burke, Mr. Troup, good morning to you.
3              THE DEFENDANT:  Good morning.
4              THE COURT:  And for Defendant Billy Garcia.
5              MR. COOPER:  Good morning, Your Honor.  Bob
6    Cooper and Jim Castle on behalf of Mr. Garcia, who is
7    present today.
8              THE COURT:  All right.  Mr. Cooper, Mr.
9    Castle, Mr. Garcia, good morning to you.
10             THE DEFENDANT:  Good morning, Your Honor.
11             THE COURT:  And for Defendant Allen
12   Patterson.
13             MR. LAHANN:  Good morning, Your Honor.
14   Jeff Lahann on behalf of Mr. Patterson.
15             THE COURT:  Mr. Lahann, good morning to
16   you.  Mr. Patterson, morning to you.
17             THE DEFENDANT:  Good morning, Your Honor.
18             THE COURT:  All right.  We don't have
19   Mr. Chavez yet, but he's en route.  He's still a
20   couple of -- an hour and a half out.  But I
21   understand that counsel are going to waive his
22   appearance, and we're going to try to dance around
23   and do motions that maybe don't require his
24   appearance.
25             MR. MONDRAGON:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Orlando Mondragon and John Granberg on behalf of Mr.

 2   Chavez.  We have no objection having the hearing

 3   without his presence.

 4            THE COURT:  Okay.  Well, the rules of

 5   engagement are that if you get to a place where it's

 6   getting to the heart of your case, and you'd like for

 7   him to be here then tell me, and we'll stop and

 8   reconfigure.  We've got a lot of work here to do.  So

 9   I want you to feel comfortable, and want Mr. Chavez

10   to feel comfortable about what's going on here.

11   We'll try to make the most of this time.

12            All right.  Mr. Mondragon, Mr. Granberg,

13   good morning to you.

14            All right.  Let's go to Defendant Arturo

15   Arnulfo Garcia.

16            MR. BLACKBURN:  Good morning, Your Honor.

17   Billy Blackburn on behalf of Mr. Arturo Garcia, who

18   is present.

19            THE COURT:  Mr. Blackburn, good morning to

20   you.  Mr. Garcia, good morning to you.

21            THE DEFENDANT:  Good morning.

22            THE COURT:  And for Defendant Daniel

23   Sanchez.

24            MR. JEWKES:  Good morning, Your Honor.  Amy

25   Jacks, Richard Jewkes representing Daniel Sanchez,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1895

```
 1    who is present before the Court.
 2              THE COURT:  All right.  Mr. Jewkes,
 3    Ms. Jacks, and Mr. Sanchez, good morning to you.
 4              THE DEFENDANT:  Good morning.
 5              THE COURT:  And for Defendant Anthony Ray
 6    Baca.
 7              MR. LOWRY:  Good morning, Your Honor.  Marc
 8    Lowry on behalf of Anthony Ray Baca, who is present
 9    in the courtroom.
10              THE COURT:  All right.  Mr. Lowry, Mr.
11    Baca, good morning to you.
12              THE DEFENDANT:  Good morning, Your Honor.
13              MR. LOWRY:  Your Honor, I'd like to excuse
14    Ms. Duncan.  She had an emergency court hearing in
15    Albuquerque, so she will not be here today or
16    tomorrow.
17              THE COURT:  All right.  I understood that
18    she wasn't going to be present.
19              All right.  For Christopher Garcia?
20              MS. SIRIGNANO:  Good morning, Your Honor.
21    Amy Sirignano, and Christopher Adams appearing by
22    telephone, and Cynthia Gilbert, and Michelle Gallegos
23    on behalf of Christopher Garcia.
24              THE COURT:  All right.  Ms. Sirignano,
25    Ms. Gilbert, Ms. Gallegos -- Mr. Adams, are you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1896

```
 1    there, Mr. Adams?

 2              MR. ADAMS:  I am, Your Honor.

 3              THE COURT:  All right.  Good morning to

 4    y'all.  Mr. Garcia, good morning to you.

 5              And for Defendant Carlos Herrera?

 6              MR. DAVIS:  Michael Davis and Carey Bhalla

 7    on behalf of Mr. Herrera.  Also present is our

 8    paralegal, Sonya Salazar.

 9              THE COURT:  All right.  Mr. Davis, Ms.

10    Bhalla, Ms. Salazar, and Mr. Herrera, good morning.

11              And for Defendant Rudy Perez.

12              MR. VILLA:  Your Honor, good morning.  Ryan

13    Villa on behalf of Rudy Perez, who is present.  My

14    co-counsel, Justine Fox-Young, is with us on the

15    phone.

16              THE COURT:  All right.  Are you there, Ms.

17    Fox-Young?

18              MS. FOX-YOUNG:  Yes.  Good morning, Your

19    Honor.

20              THE COURT:  How is that new baby doing?

21              MS. FOX-YOUNG:  He's doing great.  Thank

22    you.

23              THE COURT:  All right.  Are you doing okay?

24              MS. FOX-YOUNG:  Doing great.

25              THE COURT:  All right.  Mr. Villa, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1897

```
 1    Fox-Young, good morning to you.  Mr. Perez, good
 2    morning to you.
 3              THE DEFENDANT:  Good morning.
 4              THE COURT:  And for Defendant Andrew
 5    Gallegos.
 6              MR. ROBERTS:  Good morning, Judge.  Donovan
 7    Roberts on behalf of Andrew Gallegos.
 8              THE COURT:  All right.  Mr. Roberts, good
 9    morning to you.  And Mr. Gallegos, good morning to
10    you.
11              THE DEFENDANT:  Good morning.
12              THE COURT:  And for Defendant Shauna
13    Gutierrez.
14              MS. ARELLANES:  Angela Arellanes with Ms.
15    Gutierrez, who appears in person.
16              THE COURT:  All right.  Ms. Arellanes, good
17    morning to you.  Ms. Gutierrez, good morning to you.
18              THE DEFENDANT:  Good morning.
19              THE COURT:  And for Defendant Brandy
20    Rodriguez.
21              MR. WALZ:  Good morning, Your Honor.  Jerry
22    Walz on behalf of Brandy Rodriguez, and she's
23    present, Your Honor.
24              THE COURT:  All right.  Mr. Walz, good
25    morning to you.  Ms. Rodriguez, good morning for you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1898

```
 1            THE DEFENDANT:  Good morning.

 2            THE COURT:  All right.  Well, we've got a

 3    number of motions -- I think I had 21 when I came

 4    down here, and I've managed to get through most of

 5    them except right at the tail end.  It's a two-day

 6    hearing.  I didn't quite get done.  I was in court

 7    till about 4:00 or so yesterday afternoon, so I was

 8    up there for a while.  I certainly can take them

 9    seriatim, and take them in the order that -- I think

10    there has been some discussions between y'all and

11    Ms. Wild about the order of them.  I can take them in

12    that order.  If, on the other hand, I think they're

13    mostly -- they're all defendants' motions, unless I'm

14    missing something.  So I certainly am willing to be

15    educated in a different way than how they're sort of

16    teed up.

17            But without any objection it seemed to me

18    that maybe the thing we ought to do is -- and maybe I

19    ought to get your appearance at this time,

20    Ms. Milner.  I think you're here for Mr. Martinez; is

21    that correct?

22            MS. MILNER:  Marcia Milner for Mr. Roy Paul

23    Martinez.

24            THE COURT:  All right.  Ms. Milner, good

25    morning to you.  And Mr. Martinez, good morning to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1899

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9900

 1    you.

 2              THE DEFENDANT:  Good morning.

 3              THE COURT:  Do you want to take that motion

 4    up first, so we can get you in and out of here?

 5              MS. MILNER:  Mr. Davis --

 6              THE COURT:  Unless anybody thinks

 7    otherwise, why don't we skip to that one.  I think

 8    that's kind of number 2 on my docket.  If you'll give

 9    me a chance.  And Mr. Davis -- I think it's -- no,

10    it's the Government's motion.  This is the

11    Government's motion.  So I'll pull that out.  And let

12    me -- let me make a few comments and make sure you

13    know where I am or what I know on this.

14              What I understand the situation to be is

15    that the Government wants Mr. Davis off the case.

16    Now, y'all may feel a little softer about it than

17    your briefing about it, but at least your briefing

18    is, they want him off the case.

19              And I understand, Mr. Davis, that

20    Mr. Martinez is not consenting to you staying on this

21    case and waiving any conflict.  It looks to me like

22    it's an actual conflict.  Now, you can try to

23    persuade me it's potential, but it looks to me like

24    it's an actual.  And we're sitting right here in the

25    same courtroom.  That was always William Bennett

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1900

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10

```
 1    Williams' Rule on Conflicts, if you're in the same
 2    room, then probably it's an actual conflict.  So it
 3    seems to me we're probably there.  And if you don't
 4    have a defendant that's going to waive, I'm not sure
 5    I can force it down.  I think I can take a waiver of
 6    an actual conflict.  I have done a little bit of
 7    research, and it looks like I can take a waiver of an
 8    actual conflict.  But I'm not so certain I do a cram
 9    down of an attorney over an objection.  So I'm
10    concerned.  I'll put that it way.  I'll be
11    open-minded, but those are my thoughts.
12              So, Ms. Armijo, if you wish to speak in
13    support of it.  Let me make sure I've got a yellow
14    pad.  I may have walked out of my -- I think I had a
15    white pad on the desk, if you could just bring it to
16    me.
17              Are you a little softer than your motion?
18              MS. ARMIJO:  Well, I wish I were softer
19    than the motion, but I think that it is a true issue
20    in this case.
21              THE COURT:  Tell me what you're concerned
22    about.  You think Mr. Davis is going to end up
23    being -- cross-examining Mr. Martinez; is that your
24    worst fear?
25              MS. ARMIJO:  Well, looking at Document
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1901

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 11

1    1164-1, he says, "It is my intent to cross-examine

2    all Government witnesses, including Mr. Martinez, to

3    the best of my ability in a manner best suited to Mr.

4    Herrera's defense."  And that is a sworn affidavit by

5    him.  So I believe I do have to go with the idea that

6    he will, in fact, cross-examine Mr. Martinez.

7            THE COURT:  It looks to me like that would

8    fall into the category of an actual conflict, not

9    just a potential conflict; right?

10            MS. ARMIJO:  I agree, Your Honor.  And I

11   think that what's important is -- especially

12   important in this case -- is the fact that he

13   represented Mr. Martinez on an SNM murder.

14            Mr. Martinez will be testifying in the

15   trial that Mr. Herrera is set to be tried, the first

16   group, the Javier Molina murder and the other

17   conspiracy murders.  He will be testifying in that

18   case.  He will be talking about the SNM.  He will be

19   talking about the racketeering activities, et cetera.

20   And as part of that, he will be talking about murders

21   that he committed.  Specifically, he killed a person

22   with the last name of Cavalier, at the Metropolitan

23   Detention Center.

24            THE COURT:  Is that the one that Mr. Davis

25   represented him on?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1902

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 12

```
 1              MS. ARMIJO:  Yes.  That's the one that's
 2    the true issue.  He actually represented him on two,
 3    I learned this morning.  He represented him on two
 4    murder cases.  One of them Mr. Davis got off on
 5    because he had a conflict.  Mr. Martinez was charged
 6    with killing a police officer.
 7              THE COURT:  Mr. Davis got off that case?
 8              MS. ARMIJO:  Because he had a conflict,
 9    yes.  So apparently Mr. -- and Ms. Milner can give
10    more specifics, because I just found out about this
11    one this morning.  We based our conflict based upon
12    the J & C in his Cavalier murder case.  But I learned
13    this morning that he represented Mr. Martinez on two
14    murder cases.  One of the murder cases he got off on
15    because, I believe, shortly before trial, one of the
16    witnesses was a former client of Mr. Davis'.
17              Then he went on to represent him in the
18    other murder case, which is the case that I was
19    telling you about, which will be testified about.
20    And there is another person, the co-defendant that
21    was charged in this case, that has some involvement
22    in that murder as well.  He's not one of these
23    gentlemen here today.  But one of the co-defendants
24    that may be -- well, is expected to testify as well,
25    was involved in that murder.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            So we have Mr. Martinez testifying about
2    this murder, talking about it with -- talking about
3    other people involved, other SNM gang members.  And
4    he will also be testifying that Carlos Herrera is an
5    SNM gang member that he knows.  So those are things
6    that he will be testifying about.
7            I'm sure that the defense team, Herrera
8    defense team, may question him about how he knows
9    Carlos Herrera, how he knows he's a gang member.  I'm
10   sure they'll test that, you know, to the best of
11   their ability cross-examine him on all of his
12   testimony regarding the gang, the enterprise, the
13   racketeering activities, about the previous murders
14   that he committed, which Mike Davis was involved in
15   two of them; one that he already got off on because
16   of the conflict.
17           And so it does go to the heart of the
18   matter.  I anticipate Mr. Davis will come up here and
19   say, Well, Your Honor, I take back number 13, that I
20   don't cross-examine Mr. Martinez.  And that will take
21   care of it.  And maybe I'll firewall myself off this.
22           But here's -- but where does it stop?  The
23   reason that I mentioned that there will be another
24   witness involved in that murder that he represented
25   him on testify, is that does that mean, then, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1904

1   Mr. Davis does not cross-examine -- it's Gerald

2   Archuleta -- Gerald Archuleta, because Mr. Martinez

3   will be testifying about him?  Do we take him off of

4   that and firewall him off of that?  What about

5   closing arguments, when he wants to talk about the

6   veracity of Mr. Martinez' testimony, then does that

7   mean he isn't allowed to argue that.

8            The fact that he indicates he doesn't

9   really have an independent recollection of

10  communications with Mr. Martinez, what if in the

11  middle of his testimony things start to resonate, he

12  starts to remember, oh, yeah -- because, again, it

13  was an SNM hit.  The victim was strangled.  And for

14  the very reasons that we have motives of the murders

15  in this case.

16            So I just don't know that -- I do think

17  it's an actual conflict, and I don't know that it's

18  such that we can separate him and cure the problem.

19            And Mr. Martinez has told me through his

20  attorney that he is not willing to waive the

21  conflict.  One of his concerns is that Mr. Davis

22  knows how to push his buttons.  And so he feels --

23            THE COURT:  I'd like explore that a little

24  bit.

25            MS. ARMIJO:  Yes.  And I'm sure that was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1905

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1906

```
 1    what was communicated to me by his attorney, that
 2    Mr. Davis and he did have a close relationship.  He
 3    knew how to push his buttons, and so it would impact
 4    him being cross-examined by him.
 5              THE COURT:  All right.  So you want him
 6    off?
 7              MS. ARMIJO:  I don't want him off.  I
 8    believe the law calls for him to be off.
 9              THE COURT:  All right.  Okay.  Thank you,
10    Ms. Armijo.
11              MS. ARMIJO:  Thank you.
12              THE COURT:  All right.  Mr. Davis, did you
13    know you pushed his buttons, huh?  Do you do that
14    with all your clients?
15              MR. DAVIS:  Well, I can tell you this:  I
16    like to think I have a close relationship with all of
17    my clients, and I get to know them well.
18    Unfortunately, once 17 years passes, I have very
19    little, if any, recollection, which is the case here.
20              THE COURT:  You don't want to admit that in
21    open court, that you're getting older and can't
22    remember.
23              MR. DAVIS:  I don't think --
24              THE COURT:  That's not good for your career
25    here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1906

 1          MR. DAVIS:  I don't think I could deny the

 2    gray hair, and I look at some of my colleagues --

 3          THE COURT:  Let me tell the marshals

 4    something real quick.  We're going to take our break

 5    at 12:30.  So if you want to plan for the defendants

 6    to eat around there, it will be 12:30.

 7          Go ahead, Mr. Davis.

 8          MR. DAVIS:  In any event, Judge, first off,

 9    I take issue with the Court's position.  There is no

10    actual conflict.  An actual conflict --

11          THE COURT:  Tell me, if this is not an

12    actual conflict, what an actual conflict is.

13          MR. DAVIS:  An actual conflict would be, is

14    if I represented a witness in the case in another

15    separate legal matter, and in the course of that

16    legal matter that I would receive some confidences

17    that somehow I could use to benefit Mr. Herrera.

18          THE COURT:  But isn't that the fear, is

19    that, whether you remember it or not, you have some

20    information that, if your memory gets refreshed or

21    something like that, that you could use against Mr.

22    Martinez, if he takes the stand?

23          MR. DAVIS:  Well, first off, that's not an

24    actual conflict.  That would be a potential conflict.

25    And so it's our position that there is no actual

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1907

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1908

```
 1    conflict.  So the only thing we're arguing about is

 2    whether there is a potential conflict.  Now --

 3              THE COURT:  Here's the problem:  Even if

 4    it's a potential conflict, isn't it going to come at

 5    a point that I -- I'm going to get to a point where

 6    if you're actually cross examining Mr. Martinez, I --

 7    boy, I'm going to be in a hard spot to rectify

 8    situations at that point.

 9              MR. DAVIS:  Well, Judge, the only way that

10    that would be an issue is if I had client confidences

11    with Mr. Martinez that I was going to somehow use

12    against him in my cross-examination.

13              What I'm telling the Court, and with

14    everything Ms. Armijo just told you, everything I

15    know about Mr. Archuleta today is all in the public

16    record.  And the case law is very clear on this.  If

17    a person has knowledge of things that are in public

18    record, that doesn't rise to the level of a conflict.

19              I have no recollection of my conversations

20    with Mr. Martinez.

21              THE COURT:  But that's not -- I mean, I've

22    been in your position before, I couldn't remember if

23    I represented somebody, or much about the case, but

24    with all due respect, isn't that just irrelevant?  I

25    mean, there is nothing in the cases that say we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1908

 1   going to ask the attorney whether they remember the

 2   client or remember the matter, and determine a

 3   conflict.  That's not a relevant issue, is it?

 4             MR. DAVIS:  Well, what is a relevant issue

 5   is that Mr. Herrera has a right to his choice of

 6   counsel, and he's chosen me.

 7             THE COURT:  Well, we're all CJA lawyers

 8   here.  So there is not much choice.

 9             MR. DAVIS:  Right.  But he wants me as his

10   lawyer.

11             THE COURT:  Well, that's great.  You're a

12   good lawyer.

13             MR. DAVIS:  Right.  And so he has a right

14   to have me.  And the presumption is that it's the

15   Government that has to show that --

16             THE COURT:  I'm not seeing a right here.

17   Where are you getting that right?

18             MR. DAVIS:  Well, Judge, I'm reading from

19   Weed versus U.S., and it says --

20             THE COURT:  Well, if he wants to retain you

21   or something, we've got a different issue.  But as

22   long as it's CJA, and we're trying to avoid problems

23   on appeal in a 2255, it's kind of my problem, isn't

24   it?

25             MR. DAVIS:  Well, I don't want to quibble

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1909

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 1910

```
 1    with the Court over his choice of counsel, whether it
 2    relates to being retained or CJA.  I'm not being
 3    forced upon him.  I think he would stand up and tell
 4    you he wants me to represent him.
 5            But it's our position that, in fact, this
 6    is not an actual conflict.  It's only a potential
 7    conflict.  And in order to be a potential conflict,
 8    the law is clear that you have to establish that two
 9    things -- one of two things -- one is that it comes
10    from the same transaction, which this isn't the same
11    transaction.  This is a murder that occurred over 17
12    years ago.
13            THE COURT:  But isn't it going to be a
14    predicate act here?
15            MR. DAVIS:  Well, Judge, the law is also
16    clear that the fact that there is some superficial
17    resemblance to the case at matter does not rise to
18    the level of a conflict.  And that's what we have
19    here.  There is a lot of stuff about what I have
20    previously represented.  And frankly, you're going to
21    find, I think, with a lot of my colleagues that have
22    been in practice for at least the 35 years that I've
23    been, and others have been here longer, this
24    routinely comes up, where we'll end up representing
25    somebody who may have been a witness in a case many
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1910

1    years ago, in a case that we may have had.  And this

2    happens quite frequently.  And so long as we're not

3    revealing client confidences --

4              THE COURT:  I've certainly had those

5    issues.  I've been down here in Las Cruces and been

6    in this room and taken waivers.  But don't we have a

7    problem here that makes it very difficult, given that

8    Mr. Martinez won't waive it?

9              MR. DAVIS:  Well, he wouldn't waive if a

10   conflict existed, but there is no conflict.  That's

11   why I'm trying to get to the point, Judge, there is

12   conflict, there is no actual conflict because we

13   don't have the situation --

14             THE COURT:  But even if it's a potential

15   conflict, he's not going to waive it.

16             MR. DAVIS:  But in a potential conflict you

17   have to show this:  You have to show it was in the

18   same transaction or that it was substantially

19   related.  And the case law being substantially

20   related -- because it's clearly not the same

21   transaction -- is clear.  And I'm reading from the

22   disciplinary commentary to Rule 16-109C, quote,

23   "Matters are substantially related for purposes of

24   this rule if they involve the same transaction or

25   legal dispute."  And again superficial resemblance

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1911

```
 1   doesn't amount to this.  "Or if there is otherwise a
 2   substantial risk that confidential factual
 3   information, as would normally have been obtained in
 4   a prior representation would materially advance the
 5   client's position in a subsequent manner."
 6            And what I'm categorically saying is I
 7   don't have any such confidential information.  So
 8   this whole idea of a conflict is a fabrication.  It
 9   simply doesn't exist, Judge.  I don't have any
10   confidences, knowledge of my representation of Mr.
11   Martinez.
12            In fact, Ms. Armijo brought to my attention
13   apparently -- and I vaguely remember this case where
14   I represented him on, and I believe it was about the
15   same time, and I was representing him on this murder
16   with Mr. Cavalier, that -- that I apparently
17   represented him on this other case.  And in that case
18   I had an actual conflict, because I was in the
19   process of representing -- his probation officer, I
20   learned, was going to be a witness in the case.  And
21   so I had to get off.  That's an actual conflict that
22   I, in fact, had.
23            THE COURT:  Are you standing?
24            MS. MILNER:  Ms. Armijo wanted to talk to
25   me, but I guess she changed her mind.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1912

```
 1                THE COURT:  Do you need to talk?

 2                MS. ARMIJO:  No, Your Honor, it's okay.

 3                THE COURT:  All right.  Go ahead,

 4    Mr. Davis.

 5                MR. DAVIS:  So that's my position.  I don't

 6    have any conflict.

 7                Now, if the Court takes a different

 8    position, although I disagree, and I've made my

 9    record here, I think, this morning.  But as the Court

10    knows, I have co-counsel in the case, Ms. Bhalla.

11    And Ms. Bhalla, the courts are very clear on this as

12    well, if you have co-counsel who doesn't have the

13    conflict, that she can be allowed to do the

14    cross-examination on Mr. Martinez.  And I tell you

15    for the record I would object to that.  Now, it could

16    be Ms. Bhalla and I have decided how we're going to

17    handle the witnesses in this case.  I can tell that

18    categorically, Judge, and perhaps as our decision

19    from trial strategy we would want her to do the

20    cross-examination of Mr. Martinez anyway.  But I

21    don't want my hand forced to do that.  I think I

22    should have the ability to make that decision, and we

23    should make that decision together.

24                But if the Court is concerned, you can

25    obviate any concern of a conflict by simply allowing
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
                                                         e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1913

```
 1    her to conduct the cross-examination.

 2             And that's our position.

 3             THE COURT:  All right.  Thank you,

 4    Mr. Davis.

 5             MR. DAVIS:  Thank you, Judge.

 6             THE COURT:  Ms. Milner, do you want to

 7    speak on this?

 8             MS. MILNER:  Beg your pardon?

 9             THE COURT:  Do you want to speak on this?

10             MS. MILNER:  No, Your Honor.

11             THE COURT:  I've got a few questions.  Why

12    don't you come up to the podium, okay?

13             MS. MILNER:  Do you want my client here as

14    well?

15             THE COURT:  No, let's just you and I talk

16    here.  Seriously, what do we mean here by Mr. Davis

17    pushes his buttons?  What is the conflict?

18             MS. MILNER:  I guess, during the course of

19    their relationship -- I mean, they were difficult

20    cases, I'm sure that there were issues.  But Mr.

21    Martinez made it very clear to me, once he realized

22    that Mr. Davis was on the case, that he had concerns

23    that based on their relationship, Mr. Davis would

24    know how to push his button, without disclosing what

25    those actual issues were.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1914

```
1            THE COURT:  Okay.

2            MS. MILNER:  And he's not prepared to

3    waive.  He does not want to be crossed by Mr. Davis.

4            THE COURT:  Well, you've been representing

5    Mr. Martinez in this case.  You're also an officer of

6    the court.  Are you concerned about Mr. Davis being

7    on this case?

8            MS. MILNER:  Yes, Your Honor, I am.

9            THE COURT:  All right.  Anything else you

10   or Mr. Martinez wants to tell the Court about this

11   motion?  Anything else, Mr. Martinez?

12           THE DEFENDANT:  No, sir.

13           THE COURT:  All right.  I want to make sure

14   I have your views.  So if you want to tell me, or if

15   you want to tell Ms. Milner and she tell me.

16   Anything else?  Okay.

17           All right.  Anything else, Ms. Milner?

18           MS. MILNER:  No.  Thank you.

19           THE COURT:  All right.  Thank you, Ms.

20   Milner.

21           All right.  Ms. Armijo, I'll give you the

22   final word on this.

23           MS. ARMIJO:  A couple of things, Your

24   Honor.  Substantially related:  The murder in this

25   case is not the only element the United States has to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1915

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25916

1    prove.  It's a VICAR --

2              THE COURT:  The what's not the only

3    element?

4              MS. ARMIJO:  The murder.  So it is a

5    violent crime in aid of racketeering.  We have to

6    prove that there was an enterprise, in this case the

7    SNM.  We have to prove our interstate commerce.  We

8    have to prove racketeering activity, the murder, and

9    the motive in the case.

10             And I'm just going to give the Court an

11   example of how -- why Mr. Davis' representation is

12   important.  He says that, you know, it was just a

13   murder case.  But in that case, as I indicated

14   before, it was an SNM hit.  But if I am recalling --

15   there could be something that Mr. Martinez told

16   Mr. Davis back during that representation.  For

17   instance, he could have said:  It isn't an SNM hit,

18   it was a personal beef.  I just wanted to kill this

19   guy.  So I'm taking the rap for anybody involved.

20   Nobody else was involved.  I'm pleading guilty.  And

21   this was not gang related.

22             And I don't know if that conversation took

23   place.  But let's say for argument's purposes it did

24   take place.  And now Mr. Martinez is taking the

25   stand, now that he is cooperating, and he's going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1916

 1    say that this was an SNM hit, and he's going to name
 2    other people that committed the crime with him, that
 3    were co-conspirators.  And Mr. Davis then could say,
 4    You know what, he told me something different.  He
 5    told me that it wasn't an SNM hit.  And that's where
 6    the issue comes up.
 7           There were two other attorneys that were
 8    removed in this case, early on, before Your Honor
 9    took over the case, in which the conflict wasn't
10    nearly as obvious in this case.  So it shouldn't be a
11    surprise, certainly, to anybody on this case.
12    Although I think that was probably before Mr. Davis
13    got on.  I know that other counsel know about the
14    issue.  So it shouldn't certainly be a surprise that
15    this is an issue and that we needed to bring it up.
16           THE COURT:  Well, I will not rule on it
17    today, Mr. Davis.  I will take it under advisement.
18    I will -- at the end of tomorrow, I will be asking
19    people for a batting order.  Maybe this is the first
20    thing that goes in the batting order.  And I'll take
21    a hard look at what you've said.  I don't know the
22    rules on actual and potential conflicts well enough
23    to make an informed decision.  So I will -- I'll get
24    you an opinion on it.  But my inclination is you
25    better get your house in order for a change of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1917

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1918

```
 1   counsel.  But I'll give it a hard look.

 2            MR. DAVIS:  Can I be heard, please?

 3            THE COURT:  You may.

 4            MR. DAVIS:  Judge, let me restate.  I have

 5   no recollection of --

 6            THE COURT:  But I guess I just don't think

 7   that's relevant.  Now, you may find a case that says

 8   that a lawyer's memory is important on this issue.

 9   But I don't know of one.

10            MR. DAVIS:  Judge, what's relevant is

11   client confidences.  And what I'm telling the Court,

12   that's the whole issue of conflict of interest.

13            THE COURT:  But if he's been talking to you

14   and he remembers the confidences, then kind of --

15   it's irrelevant whether you remember them or not.

16            MR. DAVIS:  It's not relevant whether the

17   client remembers stuff.  It's whether the attorney,

18   who is potentially --

19            THE COURT:  But it's his interests that are

20   at stake.  If he's sitting there thinking, I bet old

21   Mr. Davis remembers that, I told him that --

22            MR. DAVIS:  But what I'm telling you is, I

23   don't remember anything.  And the things that Ms.

24   Armijo has told you about SNM, those are in the

25   police reports.  That was in the discovery.  That's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1918

```
 1    public record that all the attorneys have, that

 2    they're going to use to cross-examine Mr. Martinez

 3    on.

 4              THE COURT:  Well, when you get back to

 5    Albuquerque, you shoot me any cases that tell me that

 6    a lawyer's memory is relevant to this issue.  If you

 7    find them, I'll take a look at them.

 8              MR. DAVIS:  It's not the lawyer's memory,

 9    Judge, it's the fact that I don't have any client

10    confidences that I recall.  There were none there.

11              THE COURT:  If you've got a case that says

12    that, I'll take a look at it.

13              MR. DAVIS:  The cases say -- are all about

14    conflicts exist if you're going to reveal client

15    confidences.  What I'm telling the Court is I don't

16    have any client confidences to reveal.

17              THE COURT:  And I'm sure there have been

18    attorneys that have thought the same.  If you can

19    find a case that says that's relevant, I'll take a

20    hard look at it.

21              MR. DAVIS:  Thank you, Judge.

22              THE COURT:  Thank you, Mr. Davis.

23              MS. ARMIJO:  Your Honor?

24              THE COURT:  Yes.

25              MS. ARMIJO:  Along those lines, there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1919

1   another potential conflict that the parties are aware

2   of, and I spoke to both parties today, and I can

3   explain it to the Court.  We did not file a notice,

4   but I wanted the Court to at least be aware of it,

5   because I know that Mr. Blackburn is a very difficult

6   person to get ahold of.

7          THE COURT:  Get along with or get ahold of?

8          MR. BLACKBURN:  Both.

9          MS. ARMIJO:  And I believe that, from what

10  he told me this morning, Mr. Blackburn represented

11  Mr. Daniel Sanchez in a habeas corpus -- is that

12  right -- matter in which I think he was retained by

13  Mr. Sanchez' brother, Ron Sanchez.  And so I don't

14  know the nature of it.  I don't know if it is

15  something that would be SNM related or anything else.

16  So I'm at a loss.  That's why we didn't file a

17  motion.  I did email him several times to try and get

18  clarification.  Because Mr. Jewkes is actually the

19  one that brought it to our attention.

20         I was told this morning that I know -- I

21  believe Mr. Garcia waived something.  But I can't

22  provide the Court with more information.  I don't

23  know if Mr. Sanchez is going to waive any potential

24  conflict.  And I don't even know the nature of the

25  habeas corpus.  But we are -- Mr. Garcia's trial is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   set to be in the latter part of it, but I think that

 2   this is something that we do need to at least address

 3   for the record.  I think the representation was for

 4   four years; is that correct?

 5          MR. BLACKBURN:  A little more than that.

 6          MS. ARMIJO:  So I think this is an issue

 7   that -- I'm at a loss since I don't know what it is,

 8   and I would ask that maybe Mr. Blackburn file

 9   something with the Court, at least that we could

10   figure out if there is an actual or potential

11   conflict, and if it is waive-able.  And that is why I

12   haven't filed anything, Your Honor.

13          THE COURT:  Well, do you want to speak to

14   that, Mr. Blackburn?

15          MR. BLACKBURN:  Sure, Your Honor.  Your

16   Honor, and I discussed this with the Government.  I

17   think, at the first or second arraignment I spoke

18   with Mr. Castellano when we were here, because Gary

19   Mitchell was involved in the case.  So, yes, I

20   represented Mr. Sanchez and his brother, Ronald

21   Sanchez, as it relates to a habeas from a murder case

22   that was in Los Lunas, New Mexico, that dealt with a

23   fight at a bar.  I did not represent -- this was I

24   think either 1990 or 1989.  I can't remember the date

25   of the case.  I did not represent him at the trial.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1921

```
 1    He was represented by Ben Gonzalez, and Reggie

 2    Storment was appointed to represent him.

 3            On appeal, the appeal was handled by Gary

 4    Mitchell.  They retained Gary Mitchell to do the

 5    appeal to the New Mexico Supreme Court.  At the New

 6    Mexico Supreme Court they lost, and then they came to

 7    see me about a habeas, both of Sanchezes.  Now, I

 8    represented them on the habeas.

 9            THE COURT:  What was the nature of the

10    habeas?

11            MR. BLACKBURN:  The nature of the habeas

12    was ineffective assistance of counsel in that the --

13    there were two issues, basically two main issues.

14    The case is in front of Judge Pope, and he

15    transferred the case from Los Lunas to Belen due to

16    some pretrial publicity.  The victim's advocate for

17    the District Attorney's Office in Los Lunas, when

18    they went to trial in Grants, the sister of the

19    victim's advocate that had been with the family for

20    the victims in Los Lunas, ended up being on the jury

21    panel, and was not stricken by the defense lawyers,

22    even though they were aware of that particular

23    situation.

24            THE COURT:  I didn't pick juries in Los

25    Lunas without local counsel.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1922

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2923

```
 1                 MR. BLACKBURN:  The case is in Grants.
 2                 THE COURT:  Oh, okay.
 3                 MR. BLACKBURN:  So the case goes to Grants.
 4                 THE COURT:  I didn't pick one in Grants
 5      either.
 6                 MR. BLACKBURN:  Okay.  So anyway --
 7                 THE COURT:  There was always a cousin on
 8      the jury.
 9                 MR. BLACKBURN:  Well, in particular, it was
10      the sister of the victim's advocate.  So, anyway --
11      and it wasn't like they ran out of challenges.  They
12      only used eight of their challenges on a murder case.
13                 Anyway, that was one of the issues.  There
14      was another issue about preparation as it relates to
15      an expert.  That was the issue.  Judge Pope was the
16      judge in the case.  And based upon the pleading
17      itself, and the fact that Judge Pope was the --
18      because you go back in state cases in front of that
19      judge, at the time he granted the habeas for an
20      evidentiary hearing.
21                 One of the reasons why the case took so
22      long was there was a few issues involving Judge Pope
23      that we don't need to go into on the record here.
24                 THE COURT:  That would be fun.
25                 MR. BLACKBURN:  Well, do you want to know
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 1923

```
 1   the time that he --
 2              THE COURT:  No, no.
 3              MR. BLACKBURN:   No.  But there was -- so
 4   eventually, after he took a 30- or 60-day hiatus,
 5   when he came back, he was requested, I think, by the
 6   Supreme Court to get rid of some of his cases.  And
 7   the first case he got rid of was this case.
 8              And the case then went to Judge Davis out
 9   in Sandoval County, who was not happy about that,
10   because obviously, it makes a difference when you're
11   the judge that heard the case.  And this was back in
12   the days where everything was done on tapes.  So
13   Judge Davis was not going to go back and listen to a
14   week's worth of testimony, and requested that we
15   transcribe those tapes.
16              And it took about six months to get that
17   done, because the District Attorney's Office wanted
18   to use Judge Camille Martinez' court reporter to do
19   it.  So this was sort of something she did after
20   hours, because she could do it for a minimal amount.
21   And that took forever.  By the time that was done,
22   the Sanchezes decided to hire somebody else, because
23   there was a family member that was a lawyer, who
24   could do this.  And I did not proceed any further.
25              The case went to an evidentiary hearing.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1924

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34

```
 1    had nothing to with the evidentiary hearing.  I
 2    turned everything over to another lawyer who did the
 3    evidentiary hearing.  And that this was basically it.
 4              We raised this -- I know that Mr. Mitchell
 5    and I talked to the Government briefly at one of the
 6    first hearings about that.  So that's what the case
 7    is about.
 8              I had talked to Mr. Jewkes, I think that
 9    particular day when I came down here -- I think it
10    was Mr. Garcia's initial arraignment, in 2016, in
11    January 2016.  Because he wasn't arraigned with the
12    rest of the people.  He was out of custody for a
13    number of years before he was brought in on this
14    case.  He was arrested in Denver.  And it took them
15    like 45 days to get him down here.
16              So that was basically it.  I've explained
17    all the circumstances to my client, Mr. Garcia.  And
18    he has had no objection to me going forward.  This
19    has been vetted back and forth with Mr. Sanchez'
20    lawyers, and they know the circumstances.  And it was
21    my understanding from the beginning that they had no
22    objection to me --
23              THE COURT:  And you're in the April trial
24    and Mr. Sanchez is in the January trial?
25              MR. BLACKBURN:  Yes, Your Honor.  So if the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1925

```
 1   Court needs to know any more, or --
 2            THE COURT:  Well, let me ask Ms. Armijo --
 3   direct your questions to me -- but is there anything
 4   else you want to know from Mr. Blackburn about that
 5   case?  Did that give you enough information?
 6            Mr. Davis, look at all that memory.  And
 7   Mr. Blackburn could keep going.
 8            MR. DAVIS:  I just remembered I forgot to
 9   make my record on something.  So I'd like to be
10   heard.
11            THE COURT:  Okay.  I'll give you a chance.
12            MS. ARMIJO:  And, Your Honor, I think that
13   the fact that it is -- that incident is not part of
14   the SNM; it's not an SNM-related activity.  So I
15   don't think that it would be necessarily relevant.
16   They are in two different trials, so I don't
17   anticipate -- if Mr. Sanchez took the stand for Mr.
18   Blackburn to cross-examine him.  So I don't believe
19   it's an actual conflict.  If anything, it's a
20   potential, and our position would be that, you know,
21   quite possibly to save the record for future
22   purposes.  If there is a waiver by both parties, then
23   that should take care of the issue.
24            THE COURT:  Okay.  Thank you, Ms. Armijo.
25            Mr. Jewkes -- why don't I get this one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1926

 1    taken care of, and I'll come back to you, Mr. Davis.

 2    Mr. Jewkes, do you have any thoughts on this?  Did

 3    you talk to Mr. Sanchez about it?

 4            MR. JEWKES:  No, Your Honor.  We were

 5    unaware that it was coming up today.  We will.

 6            THE COURT:  All right.  Do you know all

 7    that?  Was that new to you, or did you have knowledge

 8    of it?

 9            MR. JEWKES:  Yes.  What Mr. Blackburn just

10    explained to the Court is something that he explained

11    to me.  I'm not sure if Ms. Jacks -- no, it was the

12    first arraignment.  Yes, that's pretty much the way

13    it went down.

14            THE COURT:  Okay.  So you're going to talk

15    to -- you're getting a request here from Ms. Armijo

16    to get a waiver.  You haven't had a chance to talk to

17    Mr. Sanchez about that yet?

18            MR. JEWKES:  No, Your Honor.  We will --

19            THE COURT:  Okay.

20            MR. JEWKES:  -- in short order.

21            THE COURT:  All right.  Thank you,

22    Mr. Jewkes.

23            Anything else on that, Ms. Armijo?

24            MS. ARMIJO:  No, Your Honor.  The person I

25    spoke to was Ms. Jacks this morning about it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1927

```
 1              THE COURT:  All right.  Anything else you
 2   want to say on that, Mr. Blackburn?
 3              MR. BLACKBURN:  No, Your Honor.
 4              THE COURT:  All right.  So I'll just wait.
 5   And why don't I let you drive things, Ms. Armijo.
 6   Since you're wanting the waiver, why don't you get
 7   back with Ms. Wild, and tell her what you want and
 8   when you want it.  And then, if everybody is on
 9   board, we'll do a colloquy.  If not, then we'll see
10   what the problem is at that time.
11              All right.  Mr. Davis.
12              MR. DAVIS:  Thank you, Judge.  Judge, I
13   just want to perfect my record with regard to having
14   my second counsel do the cross-examination on Mr.
15   Martinez.  That really solves any conflict issue.
16   The case law is very clear on that.  It's in my
17   response and set forth all the case law.  I can tell
18   you that -- whether you want to take testimony from
19   Ms. Bhalla, but I can tell you that we have not
20   discussed anything regarding Roy Martinez, other than
21   what's set forth in my response and my affidavit,
22   which I've stated here clearly I just don't remember
23   anything about him.
24              Despite Mr. Blackburn's good memory, I
25   don't have his memory.  And I don't think he's had my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1928

1     caseload over the last 17 years, or so.

2             THE COURT:  Oh, oh, oh.

3             MR. DAVIS:  My caseload is much higher than

4     his.  I've had a state public defender contract for

5     the last 20 years, and it keeps me pretty busy, so --

6     and Mr. Martinez' case did not go to trial.  They

7     were both state cases where I received all the

8     discovery, including Grand Jury transcripts.  We did

9     interview witnesses.  And most of my contact was with

10    witnesses.  The district attorney on the case is

11    dead.  It's just -- the case is just buried to me.

12            But I ask the Court to really consider

13    that.

14            THE COURT:  I will.

15            MR. DAVIS:  Even if you find that I can't

16    do anything, I should be able to stay on the case,

17    Judge.  Mr. Herrera is entitled to the continuity of

18    counsel.  And Ms. Bhalla can adequately cross-examine

19    Mr. Martinez instead of me.

20            THE COURT:  Well, I'm not eager to knock

21    you off, Mr. Davis.

22            MR. DAVIS:  I would hope not, Judge.

23            THE COURT:  I'll take a hard look at it.

24            MR. DAVIS:  Thank you.

25            THE COURT:  All right.  Let me get a little

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1929

1   organized here.  If nobody has anything better, why

2   don't we talk about maybe the motion for extension of

3   time to provide expert witnesses and notices and

4   reports that Mr. Baca filed.  Do you want to take

5   that on?

6           MR. LOWRY:  Your Honor, I think we've

7   discussed that with the Government.  That's a moot

8   point.  We've all been satisfied.

9           THE COURT:  All right.  Can you do this for

10  me, to help me clean up my docket:  Can you file a

11  notice -- you don't need to file another motion, just

12  file a notice withdrawing this motion.

13          MR. LOWRY:  Absolutely, Your Honor.

14          THE COURT:  Is that agreeable to you, Ms.

15  Armijo?

16          MS. ARMIJO:  Yes, Your Honor, it is.

17          THE COURT:  Anybody have an objection to

18  that?  All right.  Just file a notice, and we'll put

19  that aside then.

20          MS. MILNER:  Your Honor?

21          THE COURT:  Yes, Ms. Milner.  Do you want

22  to be excused?

23          MS. MILNER:  Yes, Your Honor.

24          THE COURT:  All right.  Any objection to

25  Ms. Milner being excused, and probably Mr. Martinez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1930

```
 1   being excused?  All right.  Hearing none, Ms. Milner,

 2   thank you for your assistance.  Mr. Martinez, have a

 3   good day.

 4              (Ms. Milner and Mr. Martinez left the

 5   courtroom.)

 6              THE COURT:  All right.  So let's take up

 7   then the motion for timely discovery of Giglio

 8   materials.  This will be Document 1163.

 9              Let me speak a little bit about discovery.

10   And I've got great respect for all the counsel in the

11   room, so what I'm about to say is not meant to

12   criticize anyone.  But we've got to get real.  We're

13   getting into that wingspan of a trial here.  So we've

14   got to get very real.

15              We've got Mr. Garcia very close, Chris

16   Garcia is very close to trial on the drug thing.  I

17   went through about 20 motions to get ready -- I think

18   it was 21 -- which is the exact number I have teed up

19   today to get ready for that trial -- 20 today, 21

20   then.  And I'm not being critical here.  Mr. Garcia,

21   I don't think won any of the motions.  A lot of what

22   I'm seeing are overlaps from that preparation for

23   that trial in this trial.  Now, part of the reason he

24   didn't prevail there is because I didn't think that

25   material was relevant to that case.  But it might be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1931

1    relevant here, so I'm going to keep a very open mind.

2         But at the same time, putting Mr. Garcia

3    aside, Chris Garcia, a lot of you defense lawyers are

4    joining in on those motions.  That's fine, you can do

5    that.  But you can get buried behind that train.  And

6    that's all we can do here is do Mr. Chris Garcia's

7    motions.  I can do that, two days here, three days at

8    Thanksgiving, most of the month of December, most of

9    the month of January.  So I'm not criticizing anybody

10   and what their strategy is.

11        But if you want Mr. Chris Garcia to run the

12   show, that's your call.  If you want to get your

13   stuff ahead of that you're going to need to speak up

14   and tell me that you want your stuff first.

15   Otherwise, I'm just going to take them in order.

16        Now, let's talk a little bit about

17   discovery.  I think you know that I try to give

18   people their day in court, and I've tried to be

19   patient and tried to plow through this discovery.

20   Ultimately, however, I have to depend upon the United

21   States to do their job, to provide Brady, Giglio, and

22   Rule 16 information to you.

23        Now, Mr. Garcia can file a 45-page motion

24   to compel, and we can go through all those things.

25   But ultimately, it's that table over there that's got

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1932

1   to do its job to produce the information under Brady,

2   Giglio, and Rule 16, to get it in your hands to try

3   the case.

4          Now, we can prod, we can push, we can bring

5   things to their attention.  But 45 pages, I don't get

6   that, guys, in a civil case.  You know, they don't do

7   that anymore.  So a criminal case in which you're

8   sitting there dictating every possible document you

9   can possibly think of, like it's a civil case, you

10  know you're not going to get that.  You've got to

11  make the showing under those cases that you're going

12  to get it.  Otherwise, we're relying on them.

13         So I'll be patient.  I will listen.  But I

14  think we know where a lot of that is going.  And I

15  say that only because you folks that are behind

16  Mr. Garcia, you may have more important issues than

17  all those motions to compel that Mr. Garcia is

18  preparing and filing.  If you don't, if you want to

19  sit here and listen to Mr. Garcia advocate for

20  documents multiple times, we'll do it.  But the rest

21  of you are going to have to decide if that's in your

22  best interests.  And if it is, I take your word for

23  it.  We'll just take all of Mr. Garcia's motions and

24  plow through them.  But if it's not, you need to

25  speak up.  You need to tell me, Judge, we've got some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1933

1    more important issues here.  We've got motions to

2    suppress.  We've got things that need to get us ready

3    for trial.  Because the reality is, if we run out of

4    time on all the motions that Mr. Garcia is going to

5    file, they're going to be deemed denied, and we're

6    going to go to trial.  And we're going to all rely

7    upon the Government having done work under Brady,

8    Giglio, and Rule 16.  If they didn't do their job,

9    we'll find out about it, and people will be in

10   trouble.

11          So I hope that was of some help.  I don't

12   mean to be critical.  Everybody has got to do their

13   job, and I'm not questioning it.  But just take that

14   as an observer here, a somewhat interested observer,

15   and how we're going to get this thing ready for

16   trial.

17          All right.  Mr. Castle, were you going to

18   make -- argue on this motion?

19          MR. CASTLE:  Yes, Your Honor.

20          THE COURT:  Mr. Castle.

21          MR. CASTLE:  Before I do, the Court had

22   just made some comments.

23          THE COURT:  Sure.  I'd love your feedback.

24          MR. CASTLE:  Would the Court appreciate it

25   if the defense would discuss amongst each other and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1934

1    try to give the Court a proposal -- of course, with

2    the Government -- a proposal of what we think are the

3    motions that should be heard, and in what order to

4    the extent we can, with our schedules and things of

5    that nature?

6              THE COURT:  Well, I'm not dictating it.

7    But you might -- if what I said prompts some way to

8    help you get ready for trial, you know, I don't want

9    to get form over substance.  If there is issues -- if

10   there is issues you want to talk about, let's talk

11   about issues, let's pull them out, and don't get

12   trapped in the motions.

13             Tell me what -- you know, tell me what is

14   concerning you as you get ready for trial that you

15   don't think the Government has done.  I think it

16   would be better to pull some key issues out.  And

17   some of that stuff, I mean, boy, I -- some of that

18   stuff that I read in that 45-page motion, quite

19   frankly, I don't know what it is.  I mean, I think

20   people are being very creative.  But it looked a

21   whole lot a civil RFP than it did anything I'm

22   familiar with seeing here in court.  And we're all

23   experienced in this room.  I just sometimes wonder

24   if, is anybody else doing that in any other case?

25             MS. HARBOUR-VALDEZ:  Your Honor, I'm sorry

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to interrupt, but --
 2              THE COURT:  Let me say one thing here.  To
 3    just respond specifically to Mr. Castle's point.
 4    Ms. Wild worked very hard with some of the counsel to
 5    get a batting order here.  So if you do that, it may
 6    conflict with some of the stuff that she and counsel
 7    have been doing over the last few days.  We put some
 8    dates out there.  And this is me, so -- but I'm going
 9    to probably -- at this point we're not going to --
10    we'll work with counsel to try to make sure motions
11    are heard in a good order.
12              But you're going to have to start being
13    here.  You know, these dates are going to become
14    inflexible, and you're just going to have to tell
15    other judges and courts that you've got to be there.
16    We're within that sort of wingspan.  So just be
17    careful.  I'm not trying to be inflexible.  But at
18    the same time it's my job to keep this thing on a
19    track to get it to trial.
20              Now, Mr. Castle, Ms. Harbour-Valdez wanted
21    to say something.  Do you want to yield the floor?
22    All right.
23              MS. HARBOUR-VALDEZ:  Your Honor, I just
24    wanted to know which motion you were referring to.
25    Because on my list we're talking about 1163 right
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1936

 1   now; correct?  You're making reference to another

 2   motion?

 3            THE COURT:  The 45-pager.

 4            MS. HARBOUR-VALDEZ:  Yes.  I wasn't sure.

 5            THE COURT:  Yeah.  But a lot of people

 6   signed on to it.  And I know who wrote it, but a lot

 7   of people signed on to it.  So I thought I needed to

 8   give some general comments.  And y'all can dissuade

 9   me.  I mean, maybe I'm wrong.

10            MS. SIRIGNANO:  Your Honor, may I be heard?

11            THE COURT:  Well, let me let Mr. Castle

12   decide what we're going to do here.  It's his motion.

13   If he wants to argue it, he can.  If he wants to

14   yield the floor, he can as well.

15            MR. CASTLE:  I'm the person from out of

16   state, so I'm going to yield the floor to the

17   representative of the great State of New Mexico.

18            THE COURT:  Okay.  Ms. Sirignano.

19            MS. SIRIGNANO:  Thank you, Judge.

20            THE COURT:  You can get up here close.  I'm

21   not going to bite you.

22            MS. SIRIGNANO:  Oh, I know that, Judge.

23   We've been doing this too long.

24            For everybody's reference, that's Doc 1267.

25   And I'm happy to pare that down, Judge, that's no

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492
                                                            e-mail: info@litsupport.com



PROFESSIONAL COURT
REPORTING SERVICE

1   problem.  And I appreciate the comment on my

2   creativity, and my firm's.

3            THE COURT:  Okay.

4            MS. SIRIGNANO:  And for the record, I'm

5   happy to yield the floor to anyone after this.  We

6   can take this at the bitter end.  And any other

7   co-defendant can go before me.  You did state

8   Ms. Wild, Ms. Harbour-Valdez, and I did literally

9   spend two or three days trying to get this line-up

10  teed up.  And so if there is anyone unhappy about the

11  order of that, Mr. Garcia is happy to go last.  And

12  if, perhaps, we got a response from the Government on

13  these motions, then maybe we'd be able to pare it

14  down, the length of it, and the seriousness of it.

15           And, as you know, the Government is

16  responsible for its own obligations under Brady, Rule

17  16, Giglio, and Jencks.  It's just that we are all

18  suffering from discovery issues right now, leading up

19  into January.  And so that was my intent.  And what I

20  can do is withdraw this document and pare it down, if

21  you'd like, Judge, and get it heard in early

22  December.  That's no problem.

23           THE COURT:  Well, you don't worry about

24  what I think or want.  You've got to represent

25  Mr. Garcia.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1938

```
 1                MS. SIRIGNANO:  Indeed.

 2                THE COURT:  And I'll trust you to do the

 3     best job you can for him.  Let's hold that.

 4                MS. SIRIGNANO:  And I'll yield the floor to

 5     anybody.

 6                THE COURT:  Okay.  Let's let Mr. Castle --

 7     and it's his motion, if -- like I said, most of these

 8     are defendants' motions, so if y'all want to juggle

 9     them and bring issues, I'm game.

10                MS. SIRIGNANO:  Thank you, Judge.

11                THE COURT:  Thank you, Ms. Sirignano.

12                MR. CASTLE:  Your Honor, 1163 is titled

13     motion for timely discovery of Giglio material.  So

14     there is two issues:  The timeliness issue and

15     specific areas of Giglio materials.  And I'd like to

16     take those in kind of reverse order.

17                THE COURT:  Okay.  Why don't we do this:

18     Why don't we take issues, and then, as I've done in

19     the past, after we get through an issue, let me go

20     ahead and hear from the Government, so we can take

21     this a bite at a time.  Does that work for you, Mr.

22     Castle?

23                MR. CASTLE:  That sounds good.

24                THE COURT:  All right.  Thank you, Mr.

25     Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1939

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1940

```
 1              MR. CASTLE:  Your Honor, there were a
 2    couple of issues the Government didn't respond to,
 3    and so I don't know whether they're in disagreement.
 4    And so --
 5              THE COURT:  Why don't you list them out,
 6    let's see what they say.
 7              MR. CASTLE:  The first one was that we had
 8    indicated that Giglio obligations extend to, quote,
 9    "any individual whose statements the Government
10    intends on offering as an exception or exclusion to
11    the hearsay rule."  I believe --
12              THE COURT:  Help me think through what
13    you're trying to say there.  What is your concern?
14              MR. CASTLE:  Well, I think the Government
15    is going to take a pretty wide view of what is a
16    co-conspirator statement, for example, because they
17    take a wide view of what the SNM is.  And we have the
18    right under Federal Rule of Evidence 806 to impeach
19    the credibility of any declarant.  And so, if they're
20    offering that, their Giglio obligations should extend
21    to those declarants, whether they call them as a
22    witness or whether they don't.  And, in fact, I would
23    argue their need to give us Giglio materials to
24    people that we don't get to cross-examine at all is
25    probably greater.  So they didn't address that.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1940

```
 1    don't know if they're objecting to that.  But that is
 2    our request.  And I can give the Court a little more
 3    argument if they're going to object.
 4               THE COURT:  Well, give me a little bit more
 5    explanation as to what the issue -- tell me the kind
 6    of witness that you're thinking of.  A witness in a
 7    document that is saying something about a defendant,
 8    and you want to impeach that person; is that what
 9    you're thinking of?
10               MR. CASTLE:  Yeah.  They could call one of
11    the informant witnesses.  And he says:  I was having
12    a discussion with another SNM member, who relayed to
13    me that -- the following.  And so, all of a sudden,
14    we have this other individual, and the Government
15    says, Well, you know, maybe establish a foundation
16    where they say:  Was this in a discussion of how the
17    SNM should operate in furtherance of the SNM
18    conspiracy?  The informant witness says:  Yes, it
19    was.  We were talking about SNM business, and he told
20    me the following.
21               And so, at that point, we have the right
22    to -- whoever that declarant is, if they've got five
23    felonies, and you know -- or perhaps they're not even
24    a member of the SNM.  There might be things that we
25    would impeach that person with if they testified at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1941

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 51

```
 1    trial.  But they're not there.  And so we need to

 2    have that material to bring in under 806.

 3           THE COURT:  What if they got cumulative

 4    evidence that a number of people are saying the same

 5    thing?  So they are not going to show a witness --

 6    they're not going to bring a witness; they're not

 7    going to bring a document; there is not going to be

 8    any reference to another person, do you still --

 9    because that person has knowledge, you think you're

10    entitled to Giglio material?

11           MR. CASTLE:  Well, I think we are, because

12    the determination of whether that's going to help the

13    jury is a matter of weight.  And whether the Court

14    makes a finding of it's redundant, and also requires

15    the prosecution to know whether all that other

16    information is going to come in in their assessment

17    of Giglio.  And I think it's almost impossible to

18    tell how the Court is going to rule, whether this is

19    cumulative or things of that nature.  And so the

20    better rule is, if you're going to bring a hearsay

21    statement in --

22           THE COURT:  Well, I agree with you.  Don't

23    bring the hearsay statement in of that witness.  You

24    would agree with me that you don't need the Giglio

25    material for that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  I would.

 2              THE COURT:  If they decide we've got 10

 3    witnesses who will say it, but we're not bringing the

 4    tenth in?

 5              MR. CASTLE:  Right, I agree.

 6              THE COURT:  All right.  Well, let me pause

 7    there.  Mr. Castellano, Mr. Beck, are you going to

 8    handle these?  Where are you drawing the line?

 9              MR. BECK:  I'm handling this one.  I agree

10    with both you and Mr. Castle.  I think the rules

11    provide that you can impeach a hearsay declarant.  So

12    if it's impeachment, it falls under Giglio.  But I

13    agree with you that if there is cumulative statements

14    all saying the same thing --

15              THE COURT:  And you're not going to bring

16    in the statement, and you're not going to bring that

17    witness, so the jury will never know that there was a

18    person there whose credibility needed to be

19    determined.  That's where you're drawing the line?

20              MR. BECK:  Right, right.  If --

21              THE COURT:  Are you drawing it any tighter

22    than that?

23              MR. BECK:  No.  You put it better than I

24    could.

25              THE COURT:  Well, I don't know about that,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1943

```
 1    but -- all right.  Can you live with that line then?
 2              MR. CASTLE:  Absolutely, Your Honor.
 3              THE COURT:  All right.  And Mr. Beck, any
 4    other guidance on that?
 5              MR. BECK:  No.  I agree with the Court.
 6              THE COURT:  Let me ask this:  Is that what
 7    you needed is the line, or do you need any sort of
 8    rulings on any particular witnesses or statements?
 9              MR. CASTLE:  No, Your Honor.  All we
10    requested was Giglio on witnesses who are going to
11    testify, or declarants whose statements are going to
12    come in at trial.
13              THE COURT:  All right.  Let's go to the
14    next issue, if that -- let me ask this, since a
15    number of people joined your motion, anybody else
16    want to say anything on that issue?  Giglio?  Mr.
17    Lowry?
18              MR. LOWRY:  Your Honor, if I may real
19    quickly.
20              THE COURT:  Yeah.  You've got to come up to
21    the mic.  Ms. Bean can't hear you.
22              MR. LOWRY:  I don't really have much to add
23    to that.  But the concern I have on behalf of Mr.
24    Baca is I think the problem we're going to run into
25    is the one we've been confronting.  And I think it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1944

```
 1    frustrating.  The production of discovery is the
 2    Government is going to say, Well, we don't know who
 3    that tenth person is going to be yet.
 4              THE COURT:  Yeah.
 5              MR. LOWRY:  So we don't have the obligation
 6    to disclose.
 7              THE COURT:  I assume that's going to come
 8    up a little bit somewhere; right?
 9              MR. LOWRY:  Yeah.  And I think that's
10    really the nub of the issue.  So I would beg to
11    differ slightly from Mr. Castle's position.  I don't
12    disagree with the sentiments of my learned
13    colleagues, that that might not be relevant or
14    admissible if they're not going to call that person.
15    But my concern is that's going to be a roadblock to
16    the disclosure.
17              And the Court is well aware of this.  As
18    you said, we're within the wingspan of trial.  And
19    we're already getting enormous document dumps, and
20    electronic data dumps.  And this is going to compound
21    that problem immensely if we wait for the Government
22    to fine-tune their prosecution.
23              And I don't think, with all due respect to
24    the Government's obligation -- and I know that this
25    is something they're wrestling with -- but I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1945

```
 1   see the harm in overdisclosing, and let them figure
 2   our their tenth person that they're not going to call
 3   later, so the defense teams can begin their
 4   preparation in utilizing that material now to
 5   complete their investigations.  As this Court's well
 6   aware, we're all running out of time, and we have to
 7   create our task list of what's important and what's
 8   not.
 9           And for some of us in particular counts,
10   this case is all about confidential informant
11   testimony.  If there is no tangible evidence, it's
12   going to be a circumstantial case.  And this kind of
13   impeachment material is critical to the defense, Your
14   Honor.  So that's my concern.
15           THE COURT:  All right.  I think, though,
16   the line we've drawn is unassailable.  What you're
17   saying is it's going to create problems, but you
18   probably --
19           MR. LOWRY:  Yes, Your Honor.
20           THE COURT:  -- know me as well.  I'm not
21   going to force the Government to do disclosures that
22   they're not required to disclose.  And I think that
23   this would be getting into the area of forcing them
24   to do something that they're not required to do.
25           MR. LOWRY:  I would think --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1946

```
 1                    THE COURT:  I'd rather work with the
 2      problem than start ordering the Government to do
 3      something that I don't really have the power to do.
 4                    MR. LOWRY:  Well, I understand that, Your
 5      Honor.  But I think there are some witnesses that are
 6      indisputable that are going to be called.  And I
 7      don't see the harm in producing that material now,
 8      instead of waiting until the 11th hour.  And I'm
 9      thinking about Eric Duran, who is one of the key
10      witnesses in this whole Molina case, the Marcantel
11      case.  They can't move their case forward without
12      Mr. Duran.
13                    THE COURT:  Yeah.
14                    MR. LOWRY:  And to sit on the Brady and
15      Giglio information that's relevant to Mr. Duran is --
16      under the notion that they don't know whether they're
17      going to call him or not is a little disingenuous, I
18      hate to say.
19                    THE COURT:  All right.  Well, let's hold
20      that thought.  I know that's an issue, and we'll come
21      back to it.  The Government can be thinking about it.
22      But let's get the legal principles out, and then
23      we'll deal with some of the individual stuff as we go
24      along.
25                    Mr. Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTLE:  The only thing I neglected to
 2    tell the Court was we heard at previous hearings that
 3    the Government intends to offer statements of
 4    co-defendants that were against their interests
 5    against other co-defendants.  We obviously need to
 6    impeach those individuals under 806.  And so I
 7    believe the same Giglio obligation would apply.
 8            We heard, I think in another motion -- I
 9    don't know which one -- I think Rudy Perez' team
10    asked for their prior bad acts.  And the Government
11    is saying:  We don't want to give those out.  Well,
12    that would be Giglio, if his statements were going to
13    be used against my client, for example.
14            So I think the same obligation goes towards
15    the defendants.  Whatever Giglio information they
16    have against a defendant, if they're going to --
17    there is a chance they're going to use that statement
18    against another defendant, they have a Giglio
19    obligation.
20            THE COURT:  That seems to make sense to me.
21    Do you agree with it, Mr. Beck?
22            MR. BECK:  Yes, Your Honor.
23            THE COURT:  Okay.  Anything else you need
24    on that issue?
25            MR. CASTLE:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1948

```
 1              THE COURT:  All right.  Anybody else want
 2    to speak on that?
 3              All right.  Mr. Castle.
 4              MR. CASTLE:  The second area is what does
 5    the obligation extend to?  The Government, in their
 6    motion, conceded their obligation to obtain Giglio
 7    materials that are in their possession and in the
 8    possession of the New Mexico Department of
 9    Corrections.
10              In a motion that we filed, 1183, which is
11    not scheduled this week, we set forth evidence,
12    fairly significant evidence, that the Joint Task
13    Force, the two New Mexico Joint Task Forces were
14    involved in the investigation into at least the 2001
15    murders, and probably the other murders in this case
16    throughout the time of this indictment.  And so I
17    believe that the obligation extends to the Joint Task
18    Force; obviously FBI, any federal agency that has
19    assisted the Government in this case, including the
20    United States Marshal's Office, and also the New
21    Mexico Department of Corrections.
22              And I don't know if they object to that, so
23    I won't make any further argument unless that's
24    necessary.
25              THE COURT:  It would seem to that if you've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1949

```
 1    got a federal person in a Joint Task Force, it
 2    probably extends that far.  I mean, if the State
 3    Police is doing their thing, I don't think it extends
 4    that far.  If you've got Bernalillo County.  But if
 5    you got it as part of a task force, it would seem to
 6    me, then, that the duty extends.  And we've already
 7    talked about the corrections department.  What do you
 8    think about that line?
 9              MR. BECK:  Well, two things.  Number one,
10    this isn't the motion that we're discussing now, so I
11    didn't brief that portion of it.  I have some
12    thoughts on it.  But I worry about the parade of
13    horribles if we just start going down motions that
14    we're not talking about at this point.
15              Secondly, to address the point that we're
16    not talking about in this motion, I think Your Honor
17    is right, that when we're talking about task force
18    officers involved in this investigation, the SNM,
19    these cases, that would be NMCD, which Your Honor has
20    already ruled; we acknowledge we have custody and
21    control over their records, and we've been proceeding
22    that way.
23              Now, again, we're getting into other
24    motions.  But my anticipation of that argument is
25    going to be that a 2001 task force may have been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1950

```
1    comprised of different agents.  And the federal
2    government may have been more closely aligned with
3    different state agencies than it is at this point.
4    So we may not have the same relationship.  So, at
5    this point, in 2017, the case law would reflect
6    differently upon our ability to get custody or
7    control over those records than maybe it would have
8    in 2001.
9              So I anticipate that will be the argument.
10   And I think that's a proper argument.
11             THE COURT:  Understanding that problem, can
12   you do it this way, so that the defendants know
13   exactly where the problems are and not.  I'm not sure
14   they can do anything about it.  But at least -- I'm
15   thinking somewhat protection for you in any 2255, as
16   well as just they know the problem.  If it's current
17   task force, or it's task forces that were involved in
18   the prosecution -- in the development of this case,
19   then if you had federal government officials
20   involved, you then have to produce those materials,
21   and we'll assume that you're doing that.
22             If, on the other hand, it is task forces
23   that go back to 2001 and 2002, if because of your
24   working relationships with, you know, say, Bernalillo
25   County Sheriff's Department, you can't get those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1951

 1   documents, and so they are not in your possession,

 2   custody, or control in the sense you can pick up a

 3   phone and get them --

 4            MR. BECK:  Right.

 5            THE COURT:  -- you'll send a letter to

 6   defense counsel telling them:  I don't have those.

 7   We tried, and we do not have that.  We don't have the

 8   control aspect on that document.  That way, they know

 9   the problem.  And I think it might protect you down

10   the road with a 2255.  What would you think about a

11   procedure like that?

12            MR. BECK:  I think that's how we've been

13   proceeding.  And I think it makes sense logically if

14   you look at the case law.  If we have task force

15   agents from NMCD, which we do, then those task force

16   agents can go back to NMCD, and we have that flow of

17   information.

18            If we don't have task force agents from New

19   Mexico State Police or Dona Ana Sheriff's Department

20   or Bernalillo County Sheriff's Department, we don't

21   have that the flow of information, so logically, it's

22   not in our custody and control.  And I think that's

23   what we're saying, is that in 2001, there may have

24   been task force agents from NMSP, DASO, that we don't

25   have any longer contacts on.  So that's my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1952

```
 1    distinction.  I think we're in the same place, and

 2    I'm happy to convey that to defense counsel.

 3              THE COURT:  And you can tell them on these:

 4    I don't have control, these I do?

 5              MR. BECK:  Yes, Your Honor.

 6              THE COURT:  Can you live with that line,

 7    Mr. Castle?

 8              MR. CASTLE:  I can live with that line.

 9              The one thing I would note is this was in a

10    motion, so it wasn't something from another motion.

11    But I think it's a good line to draw, because of

12    this.  The case law says that we cannot subpoena

13    documents that are within the control of the

14    Government.  And so, if we subpoena something, and we

15    get the answer, well, you're denied -- and I give the

16    Court an example of that -- we've requested materials

17    under IPRA from the New Mexico Department of

18    Corrections for phone calls that informers have made

19    while they're in custody.  And we've been told by the

20    New Mexico Department of Corrections that they don't

21    have them anymore.  They gave them to the US

22    Government.  We've asked the US Government for them,

23    and they said they don't have them, the New Mexico

24    Department of Corrections has them.  That's an agency

25    that everyone's agrees is under the prosecution.  We
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    can't really --

 2              THE COURT:  I'm not sure they agree.  But

 3    they fought it hard.

 4              MR. CASTLE:  That's the law of the case at

 5    least.

 6              So I think it's a starting point, because

 7    then we can know what we can do with subpoenas, and

 8    what we cannot do, and we have to rely upon the

 9    Government, and looking at 2255 if they didn't.  But

10    I think that's a starting point that we can live

11    with.

12              THE COURT:  Everybody comfortable with

13    that, as where we're going to draw the line on that

14    material?

15              All right.  Next issue, Mr. Castle.

16              MR. CASTLE:  Well, the only thing I would

17    ask is that they inform us fairly soon.  And I don't

18    know if a suggested date by which they would inform

19    us, but it won't do us any good if it's the day

20    before trial.

21              THE COURT:  Mr. Beck, can you propose a

22    date by which you'll send this letter?

23              MR. BECK:  Well, I don't know what I'm

24    responding to.  So if I get inquiries -- if I get a

25    letter from Mr. Castle or an email, easily an email,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    that says:  Can you get documents from these
 2    agencies, I can respond back to that.  But I think
 3    there is just a class of which I might not be
 4    responding to if I don't have some kind of inquiry
 5    from him which agencies he's looking at.
 6              THE COURT:  All right.  Are you agreeable
 7    to sending a letter, Mr. Castle?
 8              MR. CASTLE:  Yes, I can state right now.
 9    It's what's said in the U.S. Attorney's Manual, which
10    is "federal, state, and local law enforcement
11    officers and other government officials that
12    participated in the investigation and prosecution of
13    the criminal case against the defendant."  That's
14    what their manual says they're supposed to collect
15    and give to us.  I can put it in a letter, but it's
16    right there.  It's in our motion.  We put it in our
17    motion saying:  Here's what we want.  That's as good
18    as a letter.
19              THE COURT:  I read the manual.  You know
20    I'm not going to enforce the manual.  What do you
21    need, Mr. Beck?  Tell Mr. Castle what you're needing
22    that you're not hearing today.
23              MR. BECK:  Well, I think we're talking
24    about two different things.  If he and I can talk
25    afterwards, and he can just tell me who he's looking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1955

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5956

1    for.

2              THE COURT:  Go ahead over there, Mr.

3    Castle.  Y'all talk right now.

4              MR. CASTLE:  Judge, we're going to give him

5    a list.

6              THE COURT:  All right.  And then, Mr. Beck,

7    you're going to get a list today.  How long would you

8    propose to take to respond to that list?

9              MR. BECK:  Considering we're working

10   through the week here, probably Tuesday.

11             THE COURT:  All right.  Can you live with

12   that, Mr. Castle?

13             MR. CASTLE:  Yes, Your Honor.  And what I

14   agreed with him was that I would give him a list

15   today.  I don't know about all the counsel that

16   joined in this motion.  I think that we can say that

17   two weeks from whenever a particular counsel provides

18   their list to the Government.

19             THE COURT:  Can you live with that, Mr.

20   Beck?

21             MR. BECK:  Two weeks from when we're

22   provided a list?  Yes.  And so I'm clear on this,

23   because I think we're -- we may have some issues at

24   our table -- we're just asking for a list of who we

25   think is in our custody and control, which of these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    agencies; not actual, like, Giglio information?
 2              THE COURT:  No, this is -- you can correct
 3    me if I'm wrong -- what you'll be indicating is on
 4    this task force, this list, on this item, we are
 5    accepting our role as having possession, custody, and
 6    control, because we had federal officers involved.
 7    And on other task forces or joint efforts, because of
 8    the passage of time and whatever your relationship
 9    with those law enforcement agencies are, you do not
10    have possession, custody, and control in the sense
11    that you can't pick up the phone and order that
12    state, local agency to provide documents to you.  Did
13    I state it correctly?
14              MR. CASTLE:  Yes, sir.
15              THE COURT:  Can you live with that?
16              MR. BECK:  And we will --
17              THE COURT:  So we're not talking about
18    specific Giglio material.  We're sort of just setting
19    the parameters here, so that we know what you got and
20    accepting responsibility for.  They know what you've
21    got and accepting responsibility for.  And then we'll
22    maybe fight over the consequences of that another
23    day.
24              All right.  Live with that, Mr. Castle?
25              MR. CASTLE:  Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1957

```
 1                THE COURT:  Live with that, Mr. Beck?
 2                MR. BECK:  Yes, Your Honor.
 3                THE COURT:  Anyone else?  Ms. Sirignano?
 4                MS. SIRIGNANO:  Yes, Your Honor.  I just
 5     want to make sure the order covers all joined
 6     defendants as well.  We'll be providing our request
 7     to Mr. Castle or to the Government independently.
 8                THE COURT:  And these rules of engagement
 9     apply to everybody in the room, Mr. Beck?
10                MR. BECK:  Yes, Your Honor.
11                THE COURT:  All right.  Does that do it for
12     you, Ms. Sirignano?
13                MS. SIRIGNANO:  Yes, Your Honor.
14                THE COURT:  All right.  Anyone else?
15                All right.  Next issue, Mr. Castle?
16                MR. CASTLE:  These are not general
17     considerations.  These are specific requests.  I can
18     tell the Court that my review of the Government's
19     responses is they've agreed to -- either agreed to or
20     say that certain categories do not exist.  So I'm
21     only going to address two areas that I believe we're
22     still asserting, other than the ones that they've
23     conceded.
24                THE COURT:  All right.
25                MR. CASTLE:  The first is competency or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1958

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8959

1   mental illness.  The Government cited a case from

2   Judge Brack, which says that if they're aware of such

3   materials for their witnesses, they then have an

4   obligation to provide that.  And they indicate that

5   for one defendant they're aware of such materials.

6   For that one defendant --

7          THE COURT:  Do we know the defendant?

8          MR. CASTLE:  Yes, Eugene Martinez.

9          THE COURT:  And do we know where the

10  documents are located?

11         MR. CASTLE:  No, because we have not been

12  provided them.

13         THE COURT:  Okay.  Let me ask you this:  Is

14  this still you, Mr. Beck?

15         MR. BECK:  I think in some ways it is, and

16  some ways it's not.  I think Giglio area it is.  I

17  think Eugene Martinez it's not.

18         THE COURT:  Do you know where the documents

19  are?  You must know some information about them.

20         MR. BECK:  That's the portion that's not.

21  That's Mr. Castellano.

22         THE COURT:  Okay.  Mr. Castellano?

23         MR. CASTELLANO:  Regarding Mr. Martinez, I

24  think our basic response for Eugene Martinez, is a

25  lot of documents are actually what we considered the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1959

 1    Court's documents, because there was competency

 2    evaluation.  So a lot of those documents -- what we

 3    had suggested was the Court conduct an in camera

 4    review to see what the Court believed was Brady,

 5    Giglio.  And we agree there are probably materials in

 6    those documents and in those materials which the

 7    defense is entitled to.

 8            The Court wrote a 69-page opinion which is

 9    on the docket.  I think it has probably just about

10    everything the defense needs.  I mean, they can look

11    at that and see if they need more.

12            But we can't release the competency

13    evaluation to the defense.  And so our position is

14    the Court has those documents.  Those are the Court's

15    documents.  And that was the Court's determination.

16    And so what we'd asked -- what was a review of those

17    documents.  And then, what I would recommend with

18    regard to those documents is the Court -- and if the

19    Court wants counsel to chime in, the Court can make a

20    determination about what should or shouldn't be

21    disclosed from those documents.

22            And I would ask possibly that Eugene

23    Martinez' attorney have the opportunity to review

24    those to see if there is any objection that he may

25    have to the disclosure.  But I think he will also

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1960

 1    agree that there are materials in there which the
 2    defense is entitled to.  And we don't dispute that.
 3          THE COURT:  Well, my memory is a little
 4    fuzzy on exactly what the psychological reports said.
 5    But I bet I can tell you what they say.  There is
 6    going to be a long list of documents that the
 7    psychiatrist or psychologist reviewed at the
 8    beginning of that report, right?  And then they gave
 9    me the report.
10          Here's the problem:  Where do we want to
11    cut it off?  Is what you really want is those two
12    reports?  Because all that background stuff, I don't
13    have.  And chances are -- wasn't it a Buttner -- it
14    was a Buttner review, wasn't it?  We had a local
15    review, and then we had a Buttner review.  It was
16    two-step, wasn't it?
17          MR. CASTELLANO:  That's correct, Your
18    Honor.  It was a facility in Los Angeles, rather than
19    Buttner.  But basically --
20          THE COURT:  Right, yeah, it was LA.  Yeah.
21    Was it Terminal Island?  Long Beach?  It wasn't in a
22    federal facility.  Was it at Metropolitan?
23          MR. CASTELLANO:  It was Metropolitan
24    Detention Center.  So your document is Doc 1118.  The
25    Court has made findings of fact.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1961

```
 1            THE COURT:  And I've unsealed that?
 2            MR. CASTELLANO:  Yes.  There is initially a
 3   sealed document.  You gave the parties an opportunity
 4   to seek redaction as necessary.  And then the Court
 5   placed it on the docket.  So if -- and the other
 6   thing we were concerned about is whether or not the
 7   defense is entitled to all of his records, or whether
 8   what's more relevant are the facts from the records
 9   that they need for purposes of impeachment.
10            THE COURT:  Well, I'm sure Mr. Castle knows
11   this, and probably everybody in the room, but just so
12   we're on the same wavelength, when I get a report, I
13   don't typically get the backup information.  I'm
14   going to get the report from the psychologist, local;
15   and then, when I get it from the BOP, it's going to
16   be a report.  It's lengthy.  That's the reason it
17   took a while to put that together because it's
18   lengthy, and there is a lot of information in there.
19   But I don't have the backups.
20            So the questions is, are you comfortable,
21   if we can limit the universe to the two psychological
22   reports, then it seems to me -- if that's what you
23   want, then it seems to me, given that Ms. Milner
24   didn't ask for a lot of -- or any redaction, she may
25   not care whether I give you the two reports.  We
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1962

```
 1    could put them in a confidentiality order.  It can be

 2    attorneys' eyes only, or something like that, to

 3    protect Mr. Martinez' privacy as much as possible.

 4    But it may be that we just contact her during the

 5    lunch hour, and see if she'd have any problem with us

 6    doing that.

 7            Now, if you're wanting all the backup

 8    stuff, it seems to me that, you know, certainly the

 9    local expert is not going to be under the

10    Government's possession, custody, or control.  And

11    I'm not even really sure that you could impute all

12    the medical records over at the BOP to the Government

13    because of HIPAA, and those sort of things.  So you

14    might have to do a subpoena on those if you want to

15    get the hard records.

16            What are you thinking?  Do you think those

17    two reports would be enough?

18            MR. CASTLE:  I don't.

19            THE COURT:  You don't?

20            MR. CASTLE:  I'd like to agree, because it

21    makes it easy.  But --

22            THE COURT:  Would you agree with me that

23    probably the local psychologist that we used to do

24    the initial evaluation is not going to be in the

25    possession -- the Government's possession, custody,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1963

```
 1    and control?
 2              MR. CASTLE:  Well, I don't know who hired
 3    that individual.
 4              THE COURT:  Well, it was probably
 5    technically me, in the sense that I get a CJA request
 6    to hire, and probably I defer to Ms. Milner's
 7    suggestion of who it was.  And then I sent them out.
 8              MR. CASTLE:  Yeah, I believe that would be
 9    a defense expert.
10              THE COURT:  Okay.
11              MR. CASTLE:  Whenever they waived, and
12    provided to the Court and to the prosecution, that
13    would be in the possession of the Government that
14    they would have to turn over.
15              THE COURT:  So if we get Ms. Milner to
16    agree on the report, you'd have the name -- I'm
17    sorry, Mr. Couleur -- yeah, I'm getting my Martinezes
18    confused here.  Get Mr. Couleur to agree, because he
19    didn't have any objections to the memorandum opinion,
20    if he would agree, you'd have that name.  And then,
21    if you want to subpoena it, you could.
22              MR. CASTLE:  Yes, Your Honor.
23              THE COURT:  What about the BOP, though?  It
24    seems to me a little bit hard to say the U.S.
25    Attorney's office has possession, custody, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   control over Mr. Martinez' medical records at the

 2   BOP.

 3          MR. CASTLE:  Well, I'm somewhat arguing in

 4   a vacuum, because I don't know if the Government

 5   requested the evaluation by BOP.  And if they did,

 6   then I believe it would be under their umbrella.  But

 7   it's the Government's obligation.  And so we all know

 8   that the materials that were sent there, there is no

 9   confidentiality anymore because the defendant waived

10   it by providing them outside.

11          THE COURT:  Well, but there is really no --

12   I don't know, when you say documents sent there, who

13   are you thinking of?  Me or the Government or Mr.

14   Couleur?

15          MR. CASTLE:  Normally, in the competency

16   evaluation, the parties will send to the evaluator

17   materials they think are relevant.  My guess is Mr.

18   Couleur sent materials, because he was raising

19   competency, that supported a finding of incompetency.

20   The Government would have turned over some discovery:

21   I don't care about that, it's material we already

22   have; that they may have sent over, so the evaluator

23   can make some kind of an intelligent decision about.

24   What I'm basically talking about is materials that

25   Mr. Couleur sent over, likely.  So at that point

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 1965

```
 1    there is no waiver.  It's in the possession of a
 2    governmental agency.
 3         I can tell the Court what the problem is
 4    going to be, if the burden is on us, we're going to
 5    have to file a subpoena.  We're going to have to do a
 6    Touhy letter.  We're going to have to litigate this
 7    out.  We're going to bring in individuals.  But why
 8    are we doing all that, when frankly, there is no
 9    privacy right anymore.  He waived it.  He raised
10    competency as something that he thought he needed to
11    do to try to protect himself and avoid answering the
12    charges here.  But we believe that that is their
13    obligation.
14         THE COURT:  Let me ask this, Mr.
15    Castellano, could everybody live with this?  Rather
16    than requiring you to go get those materials, if what
17    we really need here is a court order, would everybody
18    agree to a stipulated court order?  Are y'all not
19    opposed to a court order?  And we put it on the BOP
20    to produce whatever it is.  Because we know -- I
21    think we're all in agreement it's going to contain
22    some material.  The question is who's -- if we have
23    to -- somebody has to go through that, it's going to
24    take a tremendous amount of time.  What would you
25    think about that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1966

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 76967

```
 1            MR. CASTELLANO:  For the most part, I
 2   agree, Your Honor.  The problem is that I don't
 3   believe Eugene Martinez waived all confidentiality.
 4            THE COURT:  Well, I'm not saying he does.
 5   I think probably what we need to do is get hold of
 6   Mr. Couleur and say, Would you be willing to just
 7   stand down, not fight on this, allow the two reports
 8   that the Court got to be given to the defendants, so
 9   we can put it into some confidentiality order or
10   something like that.  If he says no, then I agree
11   with you, we're probably back to a little bit square
12   one on this.  But if we get Mr. Couleur to play a
13   little ball with us on this, and everybody just stand
14   down and issue an order to the BOP, and let's see
15   what we get, could you live with that?
16            MR. CASTELLANO:  I think so, Your Honor.
17   And like I said, I agree there are materials in there
18   to which they're entitled.  I just don't agree that
19   they're entitled to all of the materials.  And I
20   think, if I remember correctly, there is a report
21   from MDC, and then the defense wanted its own expert
22   to evaluate --
23            THE COURT:  I believe that it was Dr. Cave,
24   but I could be wrong on that.
25            MR. CASTELLANO:  It might be in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1967

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 77

```
1    memorandum opinion and order.  But there is a second

2    opinion by the defense expert.  Is it Dr. Westfried?

3              THE COURT:  Is that the first one?

4              MR. CASTELLANO:  Dr. Westfried was the

5    defense expert.  And so that was -- Dr. Johnson

6    was --

7              THE COURT:  The first time?

8              MR. CASTELLANO:  Dr. Johnson was from MDC,

9    and Dr. Westfried was the defense expert.

10             THE COURT:  So there were two

11   psychologists?

12             MR. CASTELLANO:  Yes, I believe that's

13   correct.

14             THE COURT:  Yeah, okay.  Well, since I used

15   those so extensively in the opinion, it may not be

16   that Mr. Couleur cares about those.  We can get those

17   rather quickly in the defendants' hands.

18             Stopping right there, would that be okay

19   with you?

20             MR. CASTELLANO:  What I would ask is that

21   Mr. Couleur be given a chance to review the materials

22   and make objections.

23             THE COURT:  Okay.

24             MR. CASTELLANO:  Because I know there are

25   materials he probably won't want to disclose, they're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1968

1    probably embarrassing to his client and not relevant.

2         THE COURT:  All right.  And then I can take

3    a look at those redactions and see if I think there

4    is any Brady or Giglio, Rule 16 material, and then go

5    from there.

6         MR. CASTELLANO:  Yes, sir.  We would be

7    fine with that procedure.

8         THE COURT:  And then could you live, then,

9    with the -- if the defendants want to pursue these

10   documents, we do it the same way; that they come

11   maybe to the courthouse, Mr. Couleur look through

12   them before they're turned over to the defendants?

13        MR. CASTELLANO:  Yes.

14        THE COURT:  Okay.  Mr. Castle, what I

15   suggest is maybe some of y'all on the team call Mr.

16   Couleur -- and let's maybe even while we're here in

17   Las Cruces, see if we can get hold of him, see if he

18   can live with that.  If he can't live with it, then

19   we'll be down here, and we can talk about the next

20   options.  Could you live with that?

21        MR. CASTLE:  That sounds fine, Your Honor.

22        THE COURT:  All right.  Anybody have a

23   problem with that?  All right.  So that's tentative.

24   We'll see what Mr. Couleur says.  If he plays ball,

25   then that will solve that problem.  If he won't, then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1969

1    we'll regroup sometime while we're down here.

2              MR. CASTLE:  And at that time we'll also

3    discuss the underlying facts that might have been

4    shipped off to Buttner; is that right?

5              THE COURT:  Well, I'm assuming -- if

6    Mr. Couleur will give you what he shipped.

7              MR. CASTLE:  Yes, then that would be fine.

8              THE COURT:  That would solve problems.  And

9    tell him we can probably work with attorneys' eyes

10   only, we can do confidentiality, things like that.

11   But I'm assuming that if he doesn't say that, then we

12   get a court order, and then, you know, we'll have to

13   deal with Buttner and see if they'll just produce it.

14   And he may want that for his protection, too.  I

15   don't know.

16             MR. CASTELLANO:  And I'm fairly certain the

17   materials we would have sent would have been the

18   discovery materials.  I will double check that.  I

19   expect any other confidential materials would have

20   come from Mr. Couleur.

21             THE COURT:  Well, educate me a little bit.

22   Sometimes on those competency, do y'all send

23   materials out to the BOP?

24             MR. CASTELLANO:  Yes.  From time to time,

25   Your Honor, what they'll ask is for basic reports

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1970

```
 1    regarding the incident, so they can ask the person
 2    being subjected to testing.  So they will ask for
 3    copies of the indictment and copies of the discovery.
 4    And we send those over.
 5              THE COURT:  Okay.  Well, I didn't know
 6    that, so that's good to know.
 7              All right.  Anything else on that issue?
 8              MR. CASTLE:  Yes, Your Honor.  The
 9    Government said they were only aware of two different
10    individuals --
11              THE COURT:  Let's do this, if we're going
12    to have a couple more individuals, why don't we take
13    them up after lunch.  Would that work for you?
14              MR. CASTLE:  Okay.  And I'll share that
15    with the Government again and see if it resolves some
16    of those.
17              THE COURT:  Okay.  All right.  Let's shoot
18    for about an hour.  I'm going to leave the building.
19    I'm going to take a walk.  So let's shoot for an
20    hour.  Nobody is going to start without anybody.  But
21    let's shoot for being back here about 1:30.  All
22    right.  See you then.
23              (The lunch recess was held.)
24              THE COURT:  Las Cruces has a new barbecue
25    place across the street there.  I guess we don't need
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1971

```
 1    to all show up at one time, but I recommend it.  I
 2    think Mr. Jewkes tried it, so you can ask his
 3    thoughts on it.
 4            All right.  Mr. Castle, if you want to
 5    resume -- and I think where we were is you were going
 6    to bring up a couple more folks that we needed to
 7    think about the medical records on.
 8            Hold on just a second.
 9            MR. LOWRY:  Judge, can I take up one quick
10    housekeeping matter?
11            THE COURT:  Is that all right, Mr. Castle?
12            MR. CASTLE:  Sure.
13            THE COURT:  All right.  Go ahead, Mr.
14    Lowry.
15            MR. LOWRY:  Your Honor, I don't want to
16    belabor this.
17            At the very beginning of this case, Your
18    Honor had instructed and frankly admonished the
19    defendants about their behavior in the courtroom.
20    And there seemed to be, over the course of the
21    proceedings, some type of agreement that as long as
22    their courtroom behavior was top-notch, that over
23    time the courtroom security issues perhaps could get
24    more relaxed.  And I couldn't help but notice this
25    morning everybody is back in the black boxes.  And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    was wondering if the Court could address this.  And

 2    so if there is anything we can talk about --

 3              THE COURT:  Yeah.  Yeah, the guys are

 4    misbehaving.

 5              MR. LOWRY:  Okay.

 6              THE COURT:  You know, I told you, I said,

 7    if you want to -- we'll work with you.  But you're

 8    misbehaving.

 9              MR. LOWRY:  Is there anything in

10    particular?

11              THE COURT:  Don't bring stuff to the

12    courthouse.  Talk to your clients.  Don't bring stuff

13    to the courthouse.

14              MR. LOWRY:  Okay.

15              THE COURT:  Okay.  You tell them.  You tell

16    them not to do that.

17              MR. LOWRY:  I believe you, Your Honor.  And

18    I've talked to the marshals.

19              THE COURT:  I'm talking to contraband.

20              MR. LOWRY:  Your Honor, I agree.  I've

21    talked to them, and as far as I know my client --

22              THE COURT:  Don't bring stuff here.

23              MR. LOWRY:  Okay.

24              THE COURT:  Now, if I can get an assurance

25    people are going to behave and not bring contraband

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1973

```
 1   to the courthouse, we'll talk about it.  But we're

 2   going to go back to the old days if they're going to

 3   misbehave.

 4            MR. LOWRY:  Understood.  Are we talking

 5   drugs?

 6            THE COURT:  Shanks.  Razor blades.  Don't

 7   bring them to the courthouse.

 8            MR. LOWRY:  Understood.

 9            THE COURT:  Not here; not in Albuquerque.

10            MR. LOWRY:  Nowhere.  No.

11            THE COURT:  And the reason is, you know,

12   I'm okay.  People are going to protect me, they're

13   going to protect the staff.  I'm worried about you

14   guys in the room.  I'm worried about your clients.

15            MR. LOWRY:  Understood.

16            THE COURT:  We know what's going on here.

17   And I don't want anybody hurt.  So I'm watching out

18   for you guys, you know.  I know some of you are

19   the -- you know, there is the huntees and the

20   hunters, I know that.  But we don't need that.  We

21   don't need that in a federal courthouse.  We want

22   everybody to be safe.  So when you come to the

23   courthouse, we want everybody to be safe.

24            MR. LOWRY:  I appreciate that.

25            THE COURT:  So you talk to them.  Everybody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1974

```
 1    talk to their client.  If we can make it a little

 2    more comfortable, I'd love to do it.  But right now,

 3    I'm feeling that -- like we got some folks here that

 4    are in danger.

 5              MR. LOWRY:  Okay.

 6              THE COURT:  So let's work together.  And

 7    we'll try to work together.

 8              MR. LOWRY:  Okay, Your Honor.  Thanks.

 9              THE COURT:  All right.

10              MS. JACKS:  May I just ask a question, Your

11    Honor?

12              THE COURT:  Sure.  I may not answer it, but

13    you can ask it.  You remember that old rule?  Don't

14    ever ask a judge a question because it embarrasses

15    him or her.

16              MS. JACKS:  If you're able to say, was

17    there something brought to the courthouse today,

18    or --

19              THE COURT:  I don't know about today.  I

20    don't know about today.

21              MS. JACKS:  Okay, thank you.

22              THE COURT:  But it's happened.

23              Mr. Blackburn, are you going to ask me

24    another question?

25              MR. BLACKBURN:  Sure.  If you'll answer it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1975

```
 1              THE COURT:  I answered that one, didn't I?
 2              MR. BLACKBURN:  Yeah, can you out the team
 3   that's doing that so we can come talk to you?
 4              THE COURT:  No, I probably can't do that.
 5              MR. BLACKBURN:  I mean, because as you say,
 6   there is the hunters and the huntees.
 7              THE COURT:  Yeah.
 8              MR. BLACKBURN:  You know, and that's not
 9   fair to all of us.  It's one sweeping agenda.
10              THE COURT:  Well, you know, I can't keep
11   track of everything.
12              MR. BLACKBURN:  I understand.
13              THE COURT:  And to be honest, I probably
14   couldn't tell you the names.  If I sat here for a few
15   minutes -- I can remember one, I can remember one.
16   But I can't remember them all.  So why don't you talk
17   to the Government, why don't you talk to the
18   marshals.  If that helps you --
19              MR. BLACKBURN:  I mean, most definitely we
20   will do that, because if there is a problem, I think
21   it's because of -- it's for all of us to address
22   because it's affecting all of us.  So if there is one
23   person, I would like to out them.
24              THE COURT:  Well, I think I've demonstrated
25   that we worked with you when everybody is behaving.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1976

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 86977

1  Now, I don't know if it's because we're getting

2  closer to trial or what, but we've got to get back to

3  that, if we're going to make it work.

4          MR. BLACKBURN:  Okay.  Well, I'll talk --

5          THE COURT:  I don't like people being

6  uncomfortable just to be uncomfortable.  That's not

7  my --

8          MR. BLACKBURN:  Well, we were speaking

9  about this, like, this morning they brought my client

10  by himself, when everybody else comes together from

11  Otero, which makes it look like that he has been

12  outed doing something that -- maybe he's talking to

13  somebody or something, and that causes issues itself.

14          THE COURT:  I don't minimize the problem.

15  And I fully understand what you're saying.  But

16  that's below the level I get involved in.

17          MR. BLACKBURN:  Okay.

18          THE COURT:  So you'll have to talk to the

19  U.S. attorneys and marshals about that.  Because I

20  just can't micromanage everybody getting here.

21          MR. BLACKBURN:  No, I understand.  And if

22  they are not willing to talk to us, do we get to come

23  back and talk to you?

24          THE COURT:  You can come back.  The

25  courthouse door is never closed, especially to you,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1977

```
 1   Mr. Blackburn.

 2             MR. BLACKBURN:  Thank you, Judge.

 3             MR. CASTLE:  Will you remember that?

 4             MR. BLACKBURN:  I won't forget it.

 5             THE COURT:  You won't forget it.

 6             Let's see, Ms. Fox-Young, are you on the

 7   phone?

 8             MS. FOX-YOUNG:  I am, Your Honor.

 9             THE COURT:  And let's see, Mr. Adams, are

10   you on the phone?  Mr. Adams?

11             MR. ADAMS:  I am, Your Honor.

12             THE COURT:  All right.  Good afternoon to

13   you.

14             Mr. Castle.

15             MR. CASTLE:  Your Honor, over the break, we

16   resolved a couple of things, or at least agreed to

17   shelve some of them.  There were two other

18   individuals that we believed there was evidence in

19   the discovery that indicated they had mental health

20   issues other than Mr. Martinez.

21             I can tell the Court with regard to Mr.

22   Martinez -- we've contacted his attorney -- his

23   attorney is going to discuss things with Mr. Martinez

24   and get back to us, and we'll inform the Court.

25             THE COURT:  Did he give you any sort of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1978

1    time frame?  Is that something we can wrap up down

2    here?  Mr. Cooper?

3              MR. COOPER:  His client is in Lovington,

4    he's in Santa Fe.  He asked if there was a time

5    crunch.  I said, Absolutely there is.  And he said,

6    Let me see what I can do.  But beyond that, I don't

7    have any --

8              THE COURT:  What's he doing in Lovington?

9              MR. COOPER:  I don't know.

10             THE COURT:  At the Hobbs facility, okay.

11             All right.  Thank you, Mr. Cooper.

12             MR. COOPER:  Thank you.

13             THE COURT:  Mr. Castle.

14             MR. CASTLE:  There is another individual,

15    Leonard Lujan, the Court has heard about.  The

16    discovery indicates that he was on all kinds of

17    medicines for antipsychotic, bipolar medicines,

18    things like that.  The Government is going to contact

19    his lawyer, Mr. Clark -- who was here earlier, but

20    he's not here now -- and we're going to try to see

21    what we can resolve before we use the Court for any

22    assistance.

23             THE COURT:  Okay.

24             MS. ARMIJO:  Mr. Clark will be here at

25    3:15.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1979

```
 1              THE COURT:  Okay.
 2              MS. ARMIJO:  Maybe if there is a break or
 3    something, you can meet with him.
 4              MR. CASTLE:  Then the third individual
 5    is --
 6              THE COURT:  If we come back to this, y'all
 7    may need to refresh my memory on Lujan.
 8              MR. CASTLE:  I will.
 9              And the third individual is an individual
10    by the name of Jimmy Ray Gordon.  The Government
11    indicates they're not going to call him as a witness
12    so I don't believe they have an obligation under
13    Giglio, unless of course his statements are going to
14    come in.  But I don't believe they're offering that.
15              With that, there was one other general
16    issue -- oh, actually there are two other matters.
17    One is we'd asked for prior placement records.  I
18    think we've come to an agreement on that.  Now, what
19    our concern was, they indicate that three individuals
20    other than Mr. Lujan, who they said participated in
21    the crime with our client, but three individuals who
22    say:  On some unknown date in the last 15 years was
23    housed with our client, and our client confessed to
24    them his involvement.  They can't identify the dates
25    that happened.  And so they're going to give us the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1980

```
 1    placement records for those individuals, so we can
 2    compare them to our client's placement records to see
 3    if it's even possible that that conversation
 4    happened.  And so I don't think there needs to be any
 5    court orders in that regard, because they're agreeing
 6    to that.
 7            The other issue I looked at over the lunch
 8    hour was, when we had asked for Giglio materials, we
 9    asked for evidence of illegal drug use of their
10    witnesses.  The Government did not respond to that.
11    I'm not sure they disagree with that.  But before I
12    make argument about that, perhaps the Court can
13    inquire.
14            THE COURT:  All right.  So this is probably
15    going to be -- let me see if I can state what the
16    request is -- that if the Government knows or has
17    some document or some witness, 302, something like
18    that, that indicates that the witness has used drugs
19    in the past, you'd like some ruling on that whether
20    it's going to be a Giglio?
21            MR. CASTLE:  Yes, Your Honor.  They've done
22    some of that, for example, in the crime base that
23    we're dealing with, in 2001 --
24            THE COURT:  You're just trying to confirm
25    across the board they're treating illegal drug use as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1981

 1    a Giglio issue?

 2           MR. CASTLE:  Right, because a lot of them

 3    were using heroin at the time they were apparently

 4    observing things.

 5           THE COURT:  Mr. Beck, is that what you're

 6    doing?

 7           MR. BECK:  Yeah.  I think to the extent

 8    that the Government knows about that, it would be in

 9    the defendants' disciplinary reports, which have been

10    produced and will be produced in the next disclosure.

11           THE COURT:  But as far as -- when you're

12    doing your Giglio and Brady review, you're treating

13    illegal drug use as a Giglio issue?

14           MR. BECK:  Yes.

15           THE COURT:  Okay.  Is that all you need on

16    that?

17           MR. CASTLE:  That's all I need on that,

18    Your Honor.

19           THE COURT:  Anybody else?  Resolve that?

20           All right.  Mr. Castle.

21           MR. CASTLE:  The final issue is one that's

22    probably the most concerning for us is timing.  When

23    we filed our motion, the Giglio motion, it was filed

24    in May of 2017.  And the Government's response, they

25    filed it on June 7, 2017.  And in that response they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1982

1  indicated that they would, quote -- well, "disclose,"

2  quote, "impeachment evidence immediately."  They

3  haven't.  What we've gotten on all the people that we

4  know are going to be witnesses is their criminal

5  history and their plea agreements, with some minor

6  exceptions.  We haven't gotten Giglio material.  And

7  their most recent responses to the motion to compel

8  said they're not going to give us that until they

9  finally decide on witnesses two weeks prior to trial.

10         Now, the irony in that is earlier this

11  morning the Government moved to remove an attorney in

12  the case because they said that Arturo -- not Arturo,

13  but --

14         THE COURT:  Martinez.

15         MR. CASTLE:  Roy Paul Martinez was going to

16  be a witness in the case.  So they were going to the

17  extreme length to try and remove an attorney for one

18  of the defendants here, yet they haven't turned over

19  Giglio material concerning Mr. Martinez.

20         I'm using that as an example to tell the

21  Court that, look, they've made some decisions.  And

22  I'd be shocked if they hadn't.  They were within two

23  or three weeks of trial last summer.  And to say that

24  they haven't made any decisions on what witnesses

25  they're going to call, I think is disingenuous.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1983

```
 1   Sure, there are couple.  I mean, maybe the answer is
 2   that's the tenth person that might confirm something,
 3   and they have marginal use.  But for most of our
 4   clients, we can identify who the chief witnesses of
 5   the Government are.
 6           THE COURT:  Well, let me -- and, you know,
 7   the Government can speak for itself on this issue --
 8   but is the somewhat dwindling number a factor in
 9   probably the Government deciding who they're going to
10   call and not call at trial?
11           MR. CASTLE:  I think it isn't.  Because
12   they --
13           THE COURT:  Is not?
14           MR. CASTLE:  Is not.  Because they've
15   retained defendants on almost every crime base.
16           THE COURT:  They've done what?
17           MR. CASTLE:  They've retained at least some
18   defendants on each crime base.  I can't say with
19   100%, but I know that counsel one and two, for
20   example, have a number of defendants.
21           THE COURT:  Well, give me the solution.
22   What do you see the solution as being?
23           MR. CASTLE:  Well, I think the Court had
24   already provided a solution, which indicated that the
25   prosecution was to review its files and produce
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1984

1   Giglio materials by June 9 to --

2           THE COURT:  Well, they disagreed with that

3   ruling, but they also are living by it.  And I mean,

4   they disagree that the timing on Giglio material is

5   the same as Brady material, but they acknowledge that

6   that's my ruling, and they'll live with it.  But tell

7   me from a practical standpoint how we now sort of

8   implement that to get you what you need?

9           MR. CASTLE:  Well, Your Honor, with all due

10  respect, I think they told the Court in their

11  responses that they're not going to live with it.

12  They're not going to do it until two weeks prior to

13  trial, even though the Court ordered it previously.

14          So we're here at an impasse.  And what I

15  suggest is anything that's in their possession right

16  now that they haven't turned over needs to be turned

17  over within a week.  There is no reason to hold it

18  back, other than a strategic tool to try to put

19  defense at a disadvantage.  That wasn't the design of

20  Jencks, for example.  And this Court already

21  indicated Giglio and Brady trump Jencks.  So I would

22  say that within a week they should produce that

23  material.  And then within a reasonable period --

24          THE COURT:  Well, I'm treating Brady and

25  the Giglio differently than I'm treating Jencks.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTLE:  Yes.  Brady-Giglio --
 2            THE COURT:  I won't say "trump," but we're
 3   not going to talk about Trump.  We're not going to
 4   talk about Trump, we're going to talk about the law
 5   here, right?  But they run alongside each other,
 6   right?
 7            (Defendant Christopher Chavez entered the
 8   courtroom.)
 9            THE COURT:  Mr. Christopher Chavez just
10   walked into the courtroom.  Mr. Chavez, good
11   afternoon to you.  We missed you.
12            THE DEFENDANT:  Good afternoon.
13            THE COURT:  All right.  And your attorneys
14   said it was all right to proceed without you.  We
15   tried to take some motions that didn't involve you.
16   That's okay?
17            THE DEFENDANT:  That's fine.
18            THE COURT:  All right.  Good to see you.
19   Glad you're here.
20            THE DEFENDANT:  Good to see you.
21            MR. CASTLE:  I won't say trump, but I would
22   say there is a huge difference, following along with
23   humor.
24            THE COURT:  Okay.  I got it.
25            MR. CASTLE:  So what do we do now when the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Court has already ordered it and they haven't

2   produced it?  One of the defendants, I believe --

3   well, maybe with one exception -- didn't ask for

4   sanctions.  We asked to come back here and let's give

5   it another try, to try to get them to get the

6   materials to us.  So what I am suggesting is

7   everything they've already collected within a week,

8   and two weeks to collect the remaining, with

9   obviously an option that they in good faith, and

10   still haven't been able to obtain it, they could

11   indicate so.

12          I would ask for a certificate of

13   compliance, because the history of this case -- and

14   it's unfortunate, I don't want to cast aspersions --

15   but the history of this case is this Court has

16   ordered production of things, and they don't get

17   produced many times, when they have been ordered to

18   have been produced.  We've had motions to compel on

19   the table that clearly set forth that the Court

20   ordered this back in June, and those motions to

21   compel have been standing here for a month or two,

22   and still we don't have it.

23          And so, you know, I don't think -- and I'm

24   not counting on the Court, if I violate the orders of

25   the Court that the Court is going to look very fondly

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1987

1    on that, and I'm sure I'll pay a sanction.  I'm not

2    asking for a sanction.  I don't believe almost all

3    the defendants are.  We're just asking for

4    production.  And I think they do need to indicate

5    that they've complied, and give us a timeframe.  If

6    they want it outside two weeks, they need to tell us.

7    So I cannot reiterate enough that their plan was two

8    weeks prior to trial.  That's going to be

9    insufficient for us to make real use of it.  I mean,

10   there are materials where we need to follow up, find

11   witnesses, some of the witnesses might be Government

12   witnesses, where you have to file a Touhy affidavit.

13   It's a huge burden.

14          The bottom line is this has been litigated.

15   The law of the case is they were supposed to produce

16   it.  They haven't.  So now we're here.

17          And I believe some other defendants want to

18   address this issue, because I think it underlies all

19   the motions to compel.  But I don't know what else to

20   tell the Court.

21          THE COURT:  Well, I don't want to cut

22   anybody off.  But why don't I hear -- let me talk to

23   the Government a little bit, and then I'll hear from

24   other people.  But let me sort of hear what the

25   Government is thinking on this.  Mr. Beck?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1988

```
 1              MR. BECK:  So I think -- I mean, I think
 2     there is some misunderstandings here.  And it's
 3     probably everyone's fault.  In terms of Giglio
 4     information, we understand the Court's ruling.  And
 5     as the Court said, we don't agree with it, but we're
 6     abiding by it.  There has been numerous productions
 7     of jail calls, disciplinary history, classification
 8     records, pen packs, STIU files, jail calls.  There
 9     has been numerous productions, and those are still
10     ongoing.
11              I mean, the jail calls alone for Eric Duran
12     I believe so far are at 5.6 gigabytes.  And those are
13     coming out.  So that production is huge.
14              I think what the defendants are really
15     latching onto here is, like, the payments to these
16     cooperating defendants, and these haven't been turned
17     over.
18              And as Court acknowledged, our trial
19     strategy is different today than it was in June, in
20     terms of who we're anticipating we'll call as
21     witnesses.  Some cooperating defendants who we
22     intended to call as witnesses are not looking so
23     appealing to call as witnesses after a few incidents
24     that we've discussed here in court.  Some others who
25     have recently made the decision to come onboard are
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 1989

1   looking more appealing.  So that is in flux.  And

2   until -- I think the United States' position is that

3   until we decide who we're going to call as witnesses,

4   certain information is not Giglio.  So I think we've

5   been consistent on that.

6           In terms of payments, we take the same

7   position.  But that being said, we're just going to

8   turn it over to what we paid these co-defendants,

9   because people know that they were here sitting with

10   them months ago, and now they're not.  So we're not

11   protecting their identities.  And in the interest of

12   just being done with these arguments, we're turning

13   that stuff over.  We're not conceding that it's

14   Jencks or Brady because we don't know whether we're

15   going to call these people.  But as I said, I think

16   that's what the thrust of the case is that we haven't

17   turned over these payments or cooperator agreements,

18   which don't exist.  You know, things like that.

19           So I think there is a fundamental

20   misunderstanding of information that we have,

21   information that falls under Giglio, in terms of our

22   current posture for this case, and what we've turned

23   over.

24           So I hope I've answered the Court's

25   question, that some of this stuff is lengthy in terms

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1990

```
 1    of -- Eric Duran, for example, we've been talking a
 2    lot about him.  We don't know that we're going to
 3    call him at this point.  We may.  That being said, as
 4    I said, his jail calls alone are 5.6 gigabytes.  We
 5    turned over his disciplinary report, 277 pages.  His
 6    classification records, 330 pages.
 7            This next round of discovery coming from
 8    the discovery coordinator will have 122 pages of his
 9    visitation records, his pen pack, his STIU file, a
10    phone dump from his cellphones.  So that we're not --
11    I just want everyone in this room to be aware that we
12    understand the Court's order; that we're abiding by
13    it.
14            And I think their view of our trial
15    strategy is different than ours.  And it is in flux
16    to some extent.
17            So I don't know if the Court has any more
18    questions.
19            THE COURT:  Well, I want to hear from
20    everybody.  But let me begin to work with an idea.
21    Y'all may all shoot it down, but let's see if there
22    is something here we can work with.
23            Normally, I wouldn't start getting witness
24    lists until the pretrial conference.  And I don't
25    know when the pretrial conference is set here -- it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1991

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101 1992

```
 1    not been set.  But what if I just set a deadline for
 2    witness lists.  And the witness list that the
 3    Government gives to the defendants is the one that
 4    the Giglio responsibilities are immediate.  And that
 5    will -- I'm not saying it's due today, but we set a
 6    time -- because at some point, we're going to have to
 7    have a witness list -- let's set it.  Leave
 8    everything else for the pretrial conference, but set
 9    it.  And then that would give those people you're
10    responsible for the production of Giglio and Brady
11    material -- people not on the list -- and it will
12    force you to sort of maybe front-end load this
13    discussion some.  And you can be generous.  But you
14    know that if you keep them on the list, you're going
15    to be responsible for it.
16              How would the Government react to that?
17              MR. BECK:  I have two thoughts on that.
18    The first is that we have a witness list disclosure
19    deadline in the current scheduling order by the
20    Court.
21              THE COURT:  When is it?
22              MR. BECK:  January 19 is when the witness
23    lists are due.
24              THE COURT:  Well, what if we moved it up
25    some.  And you can revise it --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Right, understood.
 2              THE COURT:  You can revise it to knock some
 3    people off.  But it's going to put a little bit of
 4    teeth into my ruling that the Giglio material is due
 5    immediately.
 6              MR. BECK:  Right.  So I think it's January
 7    12, which I believe is 17 days before trial, it
 8    sounds like; 17 days, a little more than two weeks.
 9    And again, I'm thinking that -- I think that's fine,
10    and I understand the Court's position.  I think the
11    defendants are primarily concerned with cooperator
12    testimony.  And I think that, with the information
13    that I just described to the Court, that we're
14    turning over -- that we have turned over in the
15    past -- excuse me, and that we're turning over now,
16    including payments to cooperators --
17              THE COURT:  If I just left you alone, when
18    do you think you'd have all that material to the
19    defendants?
20              MR. BECK:  I mean, honestly, I'll listen to
21    my co-counsel here, but I think they're largely
22    getting all of it now, aside from Jencks statements.
23    The Court separated Jencks.  And I mean Jencks
24    statements in the Court's -- what I think is proper
25    under the law view of Jencks statements, which means
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1993

```
 1    that we've taken a broad, inclusive approach to
 2    Giglio and Brady in this case, looking at what we may
 3    have at one point considered Jencks statements in the
 4    context of statements that these now cooperating
 5    defendants have provided to law enforcement in the
 6    past, that may be inconsistent with what they
 7    provided to the United States in proffer statements
 8    or debrief statements that we may have otherwise held
 9    back as Jencks.
10           So I think largely -- I think it would be
11    much ado about nothing if we do impose this new
12    witness list deadline.
13           THE COURT:  Well, if you are saying that if
14    you haven't turned over -- and I'll give it a big
15    category, the compensation or the payments to the
16    cooperators, if that's sort of the last big bundle of
17    stuff that hasn't been turned over, what would be
18    your deadline, if I left you alone, to getting that
19    into the defendants' hands?  If you're guessing right
20    this is what this is all about, when do you think you
21    could have that bundle of discovery into the
22    defendants' --
23           MR. BECK:  As I said earlier, we are
24    turning that over in this next round of discovery.
25    We don't agree that it's Jencks, but we'd rather just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 1994

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 104

```
 1    get it out there to stop arguing about it.
 2              THE COURT:  When is that going to be turned
 3    over?
 4              MR. BECK:  I assume it will probably go to
 5    the discovery coordinator in two weeks.  And I don't
 6    know the dissemination on the tablets, but I think
 7    it's rather quick.
 8              THE COURT:  Well, then -- and this is what
 9    I was thinking when I was saying moving up the
10    list -- we're not very far apart -- I was thinking
11    about the end of business on the 22nd, which is that
12    week is when I'm going to be back down here.  So that
13    will give you a couple of weeks, solidify your
14    witness lists, get whatever is out there.  If you do
15    it in advance, we can use a little bit of that time
16    when I'm down here to talk about where we are.  And
17    if not, if it is by the end of business on that
18    Wednesday, we'll kick it back in when I'm back down
19    here the first week of December.
20              MR. BECK:  The only --
21              THE COURT:  Tell me what you see is the
22    problems from the Government's standpoint if I do
23    that.  That would formalize it rather than -- what I
24    think the defendants are concerned about is, if I
25    don't put some deadlines on this thing, they're just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    never going to get it.  So that would formalize it,

2    but it sounds like it's about on your schedule

3    anyway.

4                 MR. BECK:  Right.  I understand the Court's

5    position with that.  So there are two different sort

6    of trial dates in this.  So if the Court is inclined

7    to do that, I guess that would be about two months

8    before the trial.

9                 THE COURT:  Pretty close.

10               MR. BECK:  If the Court's anticipating

11   setting that deadline, we would ask that there be two

12   different deadlines for the two different trials.  So

13   the April trial, then, would be moved out two months

14   for that witness list.

15               The second thing I would ask the Court is

16   that I can't think of anybody offhand, but there may

17   be a situation in which -- there may be a situation

18   in which we anticipate a Government informant

19   testifying who may not be outted, who may not -- and,

20   as I said, I can't think of anyone, so there may be

21   some name or names that we would need to provide to

22   defense counsel, attorneys' eyes only at this point.

23   As I said, I can't think of anyone.  But if the

24   defense would agree to that, then I think maybe we

25   could come to an agreement that the Court's deadline

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1996

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106997

1   for the witness list.

2           THE COURT:  Okay.  The rough framework is

3   doable then?

4           MR. BECK:  And since this is with the

5   understanding that it would be something that we

6   could amend in the future, we'd ask that if the Court

7   imposes this deadline it's agreed to, that it be

8   mutual.

9           THE COURT:  I would look favorably upon

10  deletions.  I would look a little bit more askance at

11  additions, given what we're trying to do here.

12          MR. BECK:  Understood.

13          THE COURT:  Okay.  Thank you, Mr. Beck.

14          Mr. Castle.  Let me have you back up here.

15  I know other people want to talk.  But I want to talk

16  to you a little bit and see if there is a framework

17  here that we can maybe work with, put in place.  What

18  do you think?

19          MR. CASTLE:  Well, I think the defense

20  needs it sooner than that.  I mean, that's why we

21  asked for it last year.

22          THE COURT:  Well, it sounds like you're

23  largely going to get it sooner.  I mean, you're going

24  to get this document production pretty quickly.  But

25  I'm putting in some deadlines now that it can't go

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1997

1    beyond that.

2           MR. CASTLE:   The reason I have hesitancy,

3    Your Honor, is the Government has disclosed to us,

4    against Mr. Billy Garcia, the identities of five

5    people, essentially, that can provide evidence

6    against him.

7           Now, they told the Court just now that

8    they've given massive amounts on the major witnesses.

9    For all but one of those witnesses we haven't

10   received any of the categories of evidence that they

11   said they've already given us; phone calls, STIU

12   files, the criminal history, any of that, for all but

13   one.  We have it for Mr. Lujan.  That's it.

14          So normally -- it's fine if we agree and we

15   can rely upon their assurances that they will

16   produce.  But they've now given assurances that

17   they've produced things that they haven't produced.

18   So I'm concerned about that.  And that's why I think

19   we should build in more time so that when we get

20   this, and we look and see we didn't get everything,

21   we have some time to be able to come back to the

22   Court and litigate it.  I think 30 days prior to

23   trial, unfortunately there is going to be a lot of

24   litigation.  I know the Court has indicated, for

25   example, that with regards to statements issues that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1998

1    that's going to be the subject of more targeted

2    litigation once we know statements are going to be

3    issued.  There is going to be other matters that

4    everyone needs to be doing in that last 30 days.

5              So I can understand why the Court is going

6    the direction it's going.  But I can tell the Court

7    that they haven't been complying so far.  As a

8    defense attorney and the history of this case, I'm

9    not willing to rely on their assurances at this

10   point.  It's a sad statement to say.

11             But I mean, they're relying, for example,

12   on a man by the name of Ray Molina.  I've gotten two

13   statements from -- Mr. Molina statements.  That's it.

14   Not a criminal history.  Nothing.

15             On September 13th of this year -- I tried

16   do this informally first -- on September 13th of this

17   year, I asked for Mr. Lujan's and Frederico Munoz'

18   phone calls while they were in the Bureau of Prisons.

19   Nothing so far at all, at all.  I don't know, maybe

20   that's the next up.  But that's been the problem.

21             And I know the Court is probably tired of

22   hearing lawyers complain about discovery.  I can

23   imagine.  But this case is almost two years old.

24   They've had plenty of time to collect all this

25   information.  And so the only reason to delay any of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 1999

```
1    it is to try to get a tactical advantage.  And I
2    don't think that is the purpose of any of these rules
3    that we're relying on, either the Jencks Act, the
4    statute, is to give them a tactical advantage.  The
5    advantage that the Jencks acts talks about is to
6    protect witnesses.  We know these witnesses.  We know
7    the identities of every one of them.  So to withhold
8    their Giglio material is not to protect these
9    individuals.  A protective order would take care of
10   that.  It is to prejudice the defendants and their
11   preparation for the case.  I want to make no mistake.
12   That's the goal.
13           And we're enlisting the Court's help in any
14   way it feels comfortable to help us so that we could
15   have a fair trial in that regard.
16           And we're not talking an ordinary case.
17   We're talking cases which my client not only has to
18   defend against the people who say he may have
19   confessed some unknown date in the past, he's got to
20   defend against the entire VICAR criminal enterprise.
21   You know, we may not choose to at some point, but
22   we're required to at least review that, and then
23   defend against it.  So we're not just talking about
24   five people that may be relevant to my client.  It's
25   really all their witnesses are relevant to my client.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2000

 1          And so that's the problem we're here for.
 2     And I haven't yet once heard them say why, why delay
 3     is necessary, other than perhaps maybe we haven't
 4     decided our final witness list.  But I don't think
 5     the Court is concerned with that.  But I think the
 6     real reason is:  Let's hold it back so we can get an
 7     advantage and the defense can't use it in time, to
 8     effectively use it at trial.  And I don't think
 9     that's a proper purpose.
10          THE COURT:  Mr. Beck, if I move this back
11     to the Friday before, say 5:00 on the 17th, and then
12     you get your documents out that you indicated that
13     you were going to produce in two weeks, you get it
14     out by the end of business on the 17th, so then we've
15     got those three days when I'm back down here to start
16     taking up problems, could you live with the end of
17     business on the 17th?
18          MR. BECK:  Are you asking about the witness
19     list or the production, or both?
20          THE COURT:  Yeah, instead of you delaying
21     your production till two full weeks, have it done by
22     the 17th.  And then you also give the witness list by
23     the end of business on the 17th, so then we can use
24     some of the next week to discuss and see where we
25     are.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112002

```
 1              MR. BECK:  So to answer Your Honor's
 2    question, I think we can do that.
 3              I want to note that I take extreme issue,
 4    as I have the whole time in this case with what
 5    they're classifying Giglio, in terms of phone calls,
 6    and pen pack information.  I mean, this is stuff that
 7    we've agreed to turn over to them without conceding
 8    that there is impeachment materials.  And if they
 9    search through these 5.6 gigabytes and find something
10    they want to impeach someone with, I wouldn't be
11    surprised.  But I'm just saying that I take issue
12    with them saying we're delaying this for tactical
13    reasons, when there is 5.6 gigabytes of information
14    that are not in the United States' possession.  It's
15    not like when someone makes a phone call, we're
16    sitting on the other end with a recording device
17    waiting to hand it over to someone and use it in our
18    back pocket.
19              So I understand Mr. Castle's position.  I
20    understand his frustration.  The United States is
21    frustrated that we have to get this stuff, too.  And
22    we know it's our burden to do so in some cases.  But
23    I take issue with that.
24              So, yes, to get back to your position, I'm
25    out of town next week, so it won't be my burden to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2002

```
 1   get it out, so I'm saying yes, we can, because I
 2   don't have to deal with it.
 3            THE COURT:  Nothing like throwing
 4   co-counsel under the bus, is there?
 5            MR. BECK:  No, it's the people who are much
 6   more important on that stuff than my co-counsel.
 7            THE COURT:  All right.  Mr. Castellano.
 8            MR. CASTELLANO:  Your Honor, as Mr. Beck
 9   alluded to, there are two trial dates that we're
10   dealing with currently.  One is January 2 and April.
11   So one point is whether or not, in order to expedite
12   the disclosures we can have a deadline for the
13   January trial, which is what the Court is asking,
14   which is November 17, and a second deadline for the
15   April trial, otherwise -- then we have five
16   defendants in January, and I believe nine defendants
17   currently set for April.
18            And the other question is reciprocal.  So
19   once the witness lists and things of that nature are
20   due by the Government, so I would expect the same
21   from the defense.
22            THE COURT:  All right.  Let me open this up
23   a little bit.  Let me tell you what the proposal is
24   as I'm thinking of it.  It would be that the
25   Government is going to do the document production
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2003

1    that they said they would do in two weeks, they'll do

2    it by 5:00 on the 17th.  And that will give us a

3    fighting chance of maybe having some of that material

4    in the defendants' hands so we can talk about

5    problems, if any, the following week.  They would

6    also give a good faith best statement of their

7    witnesses, with the inclination being overinclusive

8    rather than being underinclusive.  I would not be

9    pleased, and I don't think the defendants would be if

10   they were adding names after that point, since the

11   whole purpose of this is to try to set some deadline

12   to get Giglio material.

13           I'm not ruling at this point what's Giglio

14   and what's not Giglio.  I'm simply trying to

15   facilitate getting the material in.  And we'll talk

16   about Giglio, what is in and out of the box as we go

17   through the next two days.

18           We would then set another date for the

19   April trial, on February 5, for them to give you the

20   same list for the April 9 trial.  That's the proposal

21   on the table.  I'm leaning toward it.

22           Let's see, who wanted to speak?  Ms.

23   Sirignano, did you want to speak earlier on this?

24           MS. SIRIGNANO:  I did, Your Honor.

25           THE COURT:  What do you think about the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2004

1    proposed?

2            MR. CASTLE:  Just wanted to interrupt.  I

3    thought the Court was talking about January 17, when

4    I was up to the podium last.

5            THE COURT:  I'm talking about November 17.

6            MR. CASTLE:  I wanted the Court to know

7    that's what I thought we were talking about.

8            THE COURT:  You like it better.

9            MR. CASTLE:  If I sounded a little strident

10   than I should have.

11           THE COURT:  You're pretty controlled.  If

12   that's strident, I'll take that any day.

13           MS. SIRIGNANO:  Your Honor, just for the

14   record, and I do like --

15           THE COURT:  Let me ask Mr. Castle, could

16   you live with that, though?  You like the proposal

17   now?

18           MR. CASTLE:  Yes.

19           MS. SIRIGNANO:  I guess I will start out

20   that way.  The proposal is fine.  I'm not in the

21   second wave, I'm in the first wave, Judge.

22           THE COURT:  I know.

23           MS. SIRIGNANO:  And so, all along, though,

24   however, I'd just like to make it very clear that the

25   deadlines in the scheduling order have been for both

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2005

1    waves.  So we've been held to that standard.

2         THE COURT:  There is, there is.  I realize

3    that, that we have been sticking with it.  But we're

4    only varying this primarily to get documents, I

5    think -- correct me if I'm wrong, Mr. Beck -- the

6    idea of having a separate deadline, I think Mr.

7    Castellano was making this point, it will facilitate

8    people in the first trial getting things quicker,

9    right?  You're not dealing with 15 people, you're

10   dealing with six.

11        MR. BECK:  That's right, Your Honor.

12        THE COURT:  So I would think from your

13   standpoint that would be a plus.

14        MS. SIRIGNANO:  Yes, Your Honor, I agree.

15   So, in that regard, I don't have any issue.  I just

16   was pointing out that --

17        THE COURT:  It is.  And I'm staring at the

18   fourth scheduling order.  I'm not suggesting we make

19   any big changes.  It was just trying to address Mr.

20   Castle's point of the Government is trying to decide

21   what their witness list is.  And I thought, well,

22   okay, let's have an early production of witness

23   lists, and see if that can bring my prior rulings --

24   give it a deadline.

25        MS. SIRIGNANO:  Thank you, Judge.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 2007

```
 1              The only other thing that I wanted to say
 2    was that I had filed, with a number of joined
 3    defendants, Document 1329, which was not teed up
 4    today.  It was teed up -- it's the order to show
 5    cause.  And I just raise it.  The Government
 6    responded in Document 1401.  This was the order that
 7    the Court made in the May 9 and 10 hearings.  Mr.
 8    Castle was talking about June.  But this was your
 9    order from May, May 9th and 10th.
10              And so there is a number of items there
11    regarding specifically Giglio and Brady and Rule 16
12    that were not addressed in the Government's response.
13              So I'm happy to stay this until another
14    time when the Court is prepared to address this and
15    the Government is prepared.  But I just wanted to let
16    you know that there are some things from May 9th and
17    10th of 2017, which the Court had already ordered
18    that have not yet been produced, nor addressed by the
19    Government in its response.
20              THE COURT:  Well, two things.  One is, as
21    you can tell -- and these are discussions that I
22    think Ms. Wild has had with some of y'all -- the
23    proposed plan has 1329 being in the December 18, 19
24    period.  But I don't mind using the next two days to
25    take issues and start trying to give some calls, so I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2007

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 117

```
 1    can give you maximum guidance when we leave here.
 2    And if then y'all want to move up, you can talk to
 3    Ms. Wild a little bit about that.
 4              Am I making a mistake here?
 5              (A discussion was held off the record.)
 6              THE COURT:  Well, let me just say this to
 7    everybody.  It would seem to me, if I'm down here and
 8    I can give them guidance on issues, it would be
 9    better if I gave them the guidance they want.
10              You don't like that?
11              (A discussion was held off the record.)
12              THE COURT:  Well, let's play it by ear.
13    Maybe I need to be more disciplined, and take them by
14    motions.  But I was earlier encouraging us to try to
15    do form over -- substance over form.  And that meant
16    maybe not taking motions.  Maybe what we can do to
17    help keep this docket clear is, if I gut out a motion
18    with a bunch of rulings --
19              MS. SIRIGNANO:  Yes.
20              THE COURT:  -- maybe we can all say, Judge,
21    you took care of all that, and we can either withdraw
22    it or just indicate that we've taken care of that.
23              MS. SIRIGNANO:  Indeed, Judge.  Because I'm
24    requesting Giglio in my discovery motion.  And I'm
25    sure there are others that have addressed Giglio, in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2008

1   Mr. Perez', Mr. Sanchez', Mr. Herrera's motions that

2   if it's ruled upon once, I don't know why we'd have

3   to revisit it.

4            THE COURT:  Okay.  Well, just keep that in

5   mind, everybody, if we can help the Court.  And if we

6   gut out a motion, because they've taken issues, help

7   us out, and maybe we can pull some of those off or

8   withdraw them or deem them ruled on in some way.

9            MS. SIRIGNANO:  Thank you, Your Honor.

10           THE COURT:  All right.  Thank you, Ms.

11  Sirignano.

12           Anybody else want to say anything about the

13  proposal on the table?

14           MR. LOWRY:  If I may.

15           THE COURT:  Mr. Lowry.

16           MR. LOWRY:  Your Honor, I agree with the

17  Court's proposal.  I like that, the substance of it,

18  gutting out motions.  I have a stand-alone

19  Brady-Giglio motion I think your ruling just

20  neutralized completely.

21           Your Honor, I just want to make sure I

22  understand the scope of the disclosure correctly.

23  Because in my thinking, when we were talking about

24  Brady and Giglio information, in terms of the

25  benefits, it's not just the payments, per se, cash

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2009

```
 1    payments, but all kinds of other incentives or

 2    inducements provided to cooperating individuals:

 3    Lump sum meritorious awards, you know, fixing traffic

 4    tickets, fixing arrest warrants, favoritism given to

 5    people, to their families, to their loved ones.

 6             THE COURT:  Well, I'll say this:  I read

 7    your list, and -- I think it was your list where you

 8    listed that out -- as a general matter, I think I

 9    agree that is Giglio material.  Did you have any

10    disagreement with that list?  I think it was in Mr.

11    Lowry's motion, Mr. Beck.  Did you have any

12    disagreement that that was probably a rather

13    detailed, but good list of what --

14             MR. BECK:  Benefits provided to spouses

15    and --

16             THE COURT:  Right, right.

17             Now, when you say you're going to produce

18    the compensation, are you thinking it's going to

19    include such an extended list here, or are you

20    thinking that you're probably just producing the

21    cash?

22             MR. BECK:  I'll look through it.  I know

23    we're producing cash that's paid to their commissary

24    accounts and cash that's paid to them.  I can't say

25    for certain as I stand here, because I haven't looked
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120

```
 1    through it all, whether that's included.  But I
 2    understand Mr. Lowry's point.
 3              THE COURT:  At some point you would agree
 4    that that has to be produced, but it may not be in
 5    this bundle that you're trying to get together by the
 6    17th?
 7              MR. BECK:  Right.
 8              THE COURT:  All right.  So if we have an
 9    agreement -- and now you get the witness list, so the
10    witness list begins to put pressure on the
11    Government, because I've already had a ruling it's
12    immediate with Brady material.
13              MR. LOWRY:  Understood, Your Honor.  I just
14    wanted to --
15              THE COURT:  Pretty good shape?
16              MR. LOWRY:  Absolutely.
17              THE COURT:  Okay.  All right.
18              MR. LOWRY:  Thank you.
19              THE COURT:  Anything else, Mr. Lowry?
20              MR. LOWRY:  No, Your Honor.
21              THE COURT:  Anybody else?  Mr. Burke?
22              MR. BURKE:  Thank you, Your Honor.
23              Forgive me for being a bit greedy, but I
24    like the compromise a lot.  When you said a list of
25    witnesses, it was music to my ears, because it drives
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   so many things.

 2           What I am asking for on behalf of my

 3   client, who is charged in Counts 1 and 3, those are

 4   historic homicides going back to 2001 and 2007.

 5   Those cases have no physical evidence to speak of.

 6   Those are cases that are based entirely on informants

 7   that the Government intends to use.  I am wondering,

 8   and I am asking and requesting that our list of

 9   witnesses also be pegged to November 17.  Not the

10   Giglio or Brady materials.  And then that will enable

11   us during the two or three months, while you're tied

12   up with Group 1, to be doing some of our due

13   diligence, so that we can work for our client if we

14   have that list.

15           And I would say to Your Honor that these

16   three prosecutors are very bright, and they could

17   tell you if they stood up here to a 90 percent

18   certainty exactly who those witnesses would be,

19   because they're historic figures going back talking

20   about what they believe happened in 2001 and 2007.

21           So that is my request, that as to the list

22   of witnesses for the early counts that we be given

23   that on November 17, skipping the Giglio and Brady

24   material until after the trial of Group 1.

25           THE COURT:  So you say give a witness list,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   but not -- but delay the production of Brady and
 2   Giglio material?
 3             MR. BURKE:  Yeah.  The names, but not the
 4   stuff.  And with the flexibility that you've talked
 5   about, you know, understanding that they may hear
 6   something in the trial of Group 1, where they're
 7   going to want to add somebody, or they're going to
 8   want to take somebody off.  So it's a good faith list
 9   that we can work with while Group 1 is forging ahead
10   to trial.
11             THE COURT:  Thank you, Mr. Burke.
12             MR. BURKE:  Thank you.
13             THE COURT:  Well, what I understand is the
14   offer on the table, you might be interested in it.
15   Mr. Castellano was talking about the two month -- we
16   were kind of pegging it to two months.  But what is
17   also being offered is you don't have to mess with
18   their Brady and Giglio material until after the
19   trial.  I don't know how everybody else is going to
20   feel about that, but if everybody was to buy into
21   that -- if you sit down, you might want the
22   trade-off, if you spend a little bit of time putting
23   a witness list together for them that then -- and
24   then -- but you can delay the -- your November 17th
25   date until after the first trial, that might be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2013

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2014

```
 1   something you're interested in.
 2         MS. ARMIJO:  Your Honor, quite honestly, I
 3   don't think we're interested, because when we're
 4   going to be doing the disclosures that you request,
 5   that they're requesting, we're going to be doing it
 6   for everybody.
 7         For instance, the jail calls, which despite
 8   the allegation that they haven't received a lot of
 9   things, we've already done a significant amount of
10   that back in 2016.  I won't go into that right now.
11   But we're going to be providing it for all of the
12   cooperators, for all.  For instance, jail calls have
13   been requested of several people.  We're going to go
14   back to -- I believe initially we said January
15   2015 -- but we're going back to January 2014, to
16   present, to any of these defendants that were in
17   custody -- that's all of them -- is my belief is what
18   we requested.  What we requested was people who are
19   in the New Mexico Corrections Department, all of
20   their calls from that date to present.
21         So they're going to get not only
22   cooperators or former co-defendants that are now
23   cooperators, but their own calls as well.  So we're
24   doing things in blankets that apply to everybody.
25   We're not agreeing to -- and we'll get to this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2014

```
 1   later -- jail calls as to people in the U.S.
 2   Marshal's custody, if we don't have it.  But what we
 3   have we're giving to everybody.
 4            So quite frankly, Your Honor, it would be
 5   easier to do the November 17th -- what I'll refer to
 6   as the first five defendants that are going, Javier
 7   Molina murder, and then some murder conspiracies, it
 8   would be easier to do that witness list, and then do
 9   what we were planning on doing anyway, what Mr. Beck
10   was talking about, all the things that we were going
11   to be doing anyway.  Because I think that will take
12   care of what we've already been planning on doing.
13   And then later doing the witness list for the other
14   group.  Because the other group still has more
15   murders, and right now still has nine defendants.
16   And that would be more time consuming, and taking
17   away our ability to be reviewing all of the discovery
18   that we still have to do now by the 17th of November.
19            THE COURT:  Let me ask you -- and I'm not
20   trying to tell you over at this table how to answer,
21   but since Mr. Castellano brought it up earlier, to
22   address Mr. Burke's issue, I just pulled the February
23   5th date out based on two months.  Could you move up
24   a little bit that witness date?  We don't touch the
25   Brady-Giglio rulings or deadlines, but we just --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2015

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2016

 1    could you move up your date a little bit to give them

 2    a little bit earlier a witness list for that second

 3    trial, so they could be working on it?

 4         MR. CASTELLANO:  We're already going to be

 5    in trial in the Molina murder case.  And so we'll be

 6    trying the case and trying to get disclosure prepared

 7    at the same time.  I don't think we can get -- we

 8    already have a deadline that we've set for certain

 9    things.  And of course, we'll abide by that.  But if

10    we add to that, it's going to be that much more

11    difficult.

12         THE COURT:  All right.  Let me listen a

13    little bit.  Ms. Sirignano?

14         MS. SIRIGNANO:  Judge, thank you.  We

15    received notice from Mr. Aoki, the discovery

16    attorney, that approximately 218 gigabytes of phone

17    calls are coming.  We presume that these are jail

18    calls.  We weren't told what kind of calls they were,

19    but that they were coming.  And that's a massive,

20    massive amount of phone calls.  I remember one of the

21    very first hearings that we had Mr. Baca's attorney,

22    Marc Lowry, asked the Government for his client's

23    jail calls.  And so this is something that's been

24    going on since the very beginning of the case.  The

25    defense has been diligent.  We have IPRA'd the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2016

```
 1    facilities, New Mexico Department of Corrections,

 2    asking for these phone calls.  And DOC's response is

 3    that they are in the custody of the Government; that

 4    the Department of Corrections is part of the

 5    prosecution's arm now, and they're not going to be

 6    giving us those phone calls.

 7              And so this is an issue, Judge, that could

 8    derail not only the fourth scheduling order --

 9              THE COURT:  I guess I'm lost.  If you're

10    about to get a large amount of phone calls, why is

11    the Department of Corrections still making any

12    decisions here?

13              MS. SIRIGNANO:  This was done earlier,

14    Judge, months ago, months ago.

15              THE COURT:  All right.  But you're about to

16    get them?

17              MS. SIRIGNANO:  Well, I don't know what

18    we're getting, Judge.

19              THE COURT:  I know.

20              MS. SIRIGNANO:  We were just told we were

21    getting 218 megabytes, which is a huge number of

22    calls, thousands.

23              THE COURT:  What's the problem?

24              MS. SIRIGNANO:  The problem is that we've

25    been asking for these for months and months and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2017

```
 1    months and months.  And I do understand the
 2    Government has the Molina trial that they're getting
 3    ready for.  We've got the first wave that we're also
 4    getting ready for.  But the pure number of phone
 5    calls that have to be listened to, reviewed, Brady
 6    determined, Giglio determined, Rule 16, Jencks, it's
 7    just going to be impossible if we don't get these
 8    calls earlier, both waves 1 and 2.
 9              THE COURT:  It sounds like they're in
10    Aoki's hands?
11              MS. SIRIGNANO:  Not yet, Judge.  We were
12    told they were coming.  But I guess there was some
13    kind of difficulty with the external hard drive that
14    was provided to actually get these calls.
15              And so, Judge, just respectfully, we're
16    running out of time here, with the holidays, and
17    January is coming.  And I've had literally three
18    women, my staff, paralegals, listening -- no, four --
19    listening to phone calls from the Government's
20    discovery that we received, and then other relevant
21    phone calls.
22              And so I just want to alert the Court and
23    everybody, the longer this goes on, and the longer
24    the delay in actually obtaining these phone calls --
25    which of course we tried to get -- it's going to be a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2018

```
 1    very big burden on the defense, Judge.
 2              THE COURT:  Okay.  Thank you, Ms.
 3    Sirignano.
 4              MS. SIRIGNANO:  Thank you, Judge.
 5              THE COURT:  All right.  Mr. Villa?  I've
 6    never known you to creep to a microphone.
 7              MR. VILLA:  Usually run right up, Judge.
 8    But they put me up in the box today.
 9              THE COURT:  I thought you were coming out
10    of the exit door.
11              MR. VILLA:  I like the proposal that the
12    Court has submitted for Counts 6 through 12.  I don't
13    want to jump into the fray for the other counts.  But
14    I wanted to highlight one issue for the Court that is
15    a Giglio issue in my view, and something that the
16    Court has previously ruled upon for Mr. Perez.
17    Because in the Molina count, if you recall, the
18    initial folks, who are now some of them cooperating
19    co-defendants, had made statements that didn't
20    include Mr. Perez, didn't mention him, he wasn't
21    involved.  It just didn't come up.  The Court made a
22    ruling that the plea agreements, the debriefs, the
23    302s from the debriefs, the 5K agreements attached to
24    the plea was something that the Government had to
25    disclose.  And the Government did that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 2019

1          But recently, another co-defendant, Mario

2   Rodriguez, entered a plea.  I don't know whether it's

3   a cooperation plea.  But if I went to Vegas and put a

4   bet on it, I'd be betting that it is, based on how it

5   looks.

6          And we've asked the Government, along the

7   same lines, to disclose those same things as Giglio.

8   The Government disagrees that that's Giglio.  This

9   all happened very recently, so we haven't been able

10  to file motions.  But given our time crunch, I wanted

11  to highlight that.

12          THE COURT:  Now, I could be wrong -- and

13  you can correct me, and Mr. Beck can -- there was an

14  agreement to produce Mario Rodriguez' material, but

15  the Government preserved its position that it wasn't

16  Giglio material, but it's going to produce it to get

17  it in the hands.  So it was more of an agreement than

18  it was a ruling that it was Giglio.  Is my memory

19  off?

20          MR. CASTELLANO:  The agreement, Your Honor,

21  as to Mr. Rodriguez was something that is coming out

22  in the next round of discovery.  And those were the

23  disciplinary packets related to the Molina murder.

24  So the Corrections Department had its own

25  disciplinary hearings, and we disclosed those, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2020

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130 of 2021

```
 1   think, that day.  So that is what we were talking
 2   about when it came to Mr. Rodriguez and his trial.
 3            THE COURT:  But when you were doing it, you
 4   weren't conceding that that was Giglio material, you
 5   were just getting it into his hands, if I recall.
 6            MR. CASTELLANO:  That's correct, Your
 7   Honor.
 8            THE COURT:  Do you recall it differently,
 9   Mr. Villa?  I didn't think I made a ruling.  I
10   thought the Government sort of said, We're just going
11   to get it in your hands because of the time that we
12   were working.
13            MR. CASTELLANO:  Mr. Villa wasn't there.
14   That was Mr. Rodriguez' hearings only, so there were
15   no other defense counsel present.  I made that
16   representation to the Court that we did receive
17   those.  And we turned those over early to him because
18   his trial was set.
19            What Mr. Villa is asking for is the plea
20   agreement and any debrief reports, and any addenda to
21   the plea agreement.  We informed him the plea
22   agreement is already on the docket.  He has those.
23   The statement does list his client in the factual
24   basis.  So we know that it's not exculpatory as to
25   Mr. Perez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2021

1           The plea addendum hasn't been disclosed --

2    will be -- it's the same thing as the other addenda,

3    so that shouldn't be a surprise.

4           The reports themselves will be Jencks.

5           THE COURT:  The 302s will be Jencks?

6           MR. CASTELLANO:  Yes.  And I'm not even

7    sure those are finalized yet, they're so new.

8           And the other distinction which was made in

9    the email was that people like Mr. Montoya and Mr.

10   Armenta had previously made statements, so any more

11   recent statements could be contradictory to the prior

12   statements, and therefore, possibly Giglio.

13          Mr. Rodriguez is not in that position.  So

14   we don't have prior statements like the other

15   individuals did.  That's the concern that Mr. Villa

16   had was whether or not it's Giglio.  But I think at

17   this point it's strictly Jencks.

18          THE COURT:  What do you see as problems

19   there?

20          MR. VILLA:  Here's the problem, Judge, is

21   maybe they don't call Mario Rodriguez, or maybe they

22   don't call one of the other co-defendants.  But the

23   first round of statements made by the co-defendants,

24   that is now different from what they're saying once

25   they've entered cooperation agreements, is

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2022

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132

```
 1    contradicting what -- part of what Mario Rodriguez
 2    says in his debrief, because I've read the factual
 3    basis in the plea agreement.  So that impeaches
 4    either Mr. Mario Rodriguez, if he's going to testify,
 5    or it impeaches the other cooperating co-defendants,
 6    if they're going to testify.  What Mr. Rodriguez said
 7    in his debrief will contradict what these other --
 8    what we would predict testifying co-defendants are
 9    going to say, because we know what they said in the
10    beginning, which did not mention Mr. Perez.  And so I
11    think that is impeachment.  That is Giglio.
12              THE COURT:  So I understand what you're
13    saying, we're focusing on the 302s, the debriefs,
14    after Mr. Rodriguez pled?
15              MR. VILLA:  Yes, Your Honor.
16              THE COURT:  All right.  And you're saying
17    that there is going to be statements in there that
18    you would then use to impeach another witness, right?
19              MR. VILLA:  Another cooperating
20    co-defendant.
21              THE COURT:  Another cooperating, because
22    they would be inconsistent.
23              MR. VILLA:  Inconsistent with some of the
24    statements the other cooperating co-defendants have
25    made.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2023

```
1            THE COURT:  What's your thoughts -- if this
2    is yours, Mr. Beck, what would your thoughts be about
3    whether that's in or out of the Giglio box; that if
4    you've got 302s, that you've got Mario Rodriguez
5    giving statements that are inconsistent with
6    statements that other people have made, other
7    cooperating witnesses have made, that that's in the
8    box or out of the box?  How are you treating that?
9            Let me ask you this:  Would you be willing
10   to do this:  If the rest of the material -- would you
11   be willing to sit with the 302s, look at it with that
12   eye in mind, and instead of producing the entire
13   statement, you can hold that back for Jencks
14   material, but if there is a statement in there, in
15   which it is inconsistent with another cooperating
16   statement, you produce a redacted 302 that gives them
17   that statement.
18            MR. BECK:  Yeah, I mean I'd have to think
19   more about it, but I'm inclined to agree with both of
20   you that that's appropriate material, prior
21   inconsistent statement.  I don't know, I'd have to
22   think about the admissibility, if he's -- but I mean,
23   I see the Court's point.  And I agree to sit down and
24   think about it and look at Rodriguez --
25            THE COURT:  Could you live with that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2024

```
 1              MR. VILLA:  Just a couple of things.  I'd
 2    like Mr. Beck to look at the precooperation
 3    statements of these other cooperating co-defendants,
 4    because those are the ones I'm thinking of.  You
 5    know, they gave a statement to the State Police, or
 6    whoever is investigating this homicide initially,
 7    that X happened.  And now Mario Rodriguez' statement
 8    in the 302 is contradicting X; it's Y.  That would be
 9    the eye.  So not just --
10              THE COURT:  That's what I'm thinking.
11    You're just saying instead of just looking at the 302
12    that's been produced on Mario Rodriguez, have in his
13    lap the cooperating statements.  He rereads it, so he
14    can refresh his memory as to what's conflicting.
15              MR. VILLA:  Pre- and post-cooperation of
16    these other co-defendants.  Because they've changed
17    their stories pre-cooperation to post-cooperation.
18    So I just ask that he be looking at both of those,
19    because their post-cooperation statements are
20    probably going to be a lot similar to Mr. Rodriguez.
21    And if you just looked at post-, you'd say, well,
22    that doesn't contradict --
23              THE COURT:  So it conflicts with either
24    one.
25              MR. VILLA:  And I want Mr. Beck to do it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   next week while he's in trial.

 2              THE COURT:  Are you in trial next week?

 3              MR. BECK:  No, no, I've got training next

 4   week.  I'm in trial two weeks after.

 5              MR. VILLA:  That's when I want him to look

 6   at it.

 7              THE COURT:  Are you doing something fun

 8   next week?  You just said --

 9              MR. BECK:  I'm prepping for two trials

10   coming up in the next month, while I'm take basic

11   criminal discovery training at the NAC, so I will

12   learn the right way to do what we're arguing about

13   today.

14              Yeah, I understand.  I'll sit down and

15   think about it and read through the reports.

16              THE COURT:  Well, let's do this:  If you

17   want to come back and argue with me before we leave

18   town tomorrow, you can, but for the present time that

19   will be the ruling.

20              MR. VILLA:  And, Your Honor, I'm going to

21   go out on the ledge, you're probably not going to

22   like this, but getting back to the black boxes, I

23   don't know what happened.  I don't think you know

24   everything that's happened.  I know that a lot of

25   things happened after Mario Rodriguez's plea
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2026

```
 1   agreement; things that lead me to believe that
 2   perhaps information that he's providing, whether
 3   accurate or not, has led to the reason why our
 4   clients are in black boxes.  So I would just ask the
 5   Court to look at that.
 6            And we have the same issue with the
 7   tablets.  It wasn't our clients that were messing
 8   with the tablets, it was the cooperating witnesses.
 9   And then all of our clients had to suffer to having
10   them taken away.  Because I don't know enough about
11   what happened, and that information hasn't been
12   provided to us, I do know that a lot happened
13   following his plea agreement.  And some rumor and
14   innuendo and hearsay and speculation around the
15   courthouse leads me to believe that something he said
16   is the reason why our clients are in the black boxes.
17            THE COURT:  Well, that's fair enough.
18   That's fair enough.  We'll all work together.  So
19   talk to the U.S. Attorneys, talk to the marshals, and
20   see if we can move forward on it.  But I understand
21   what you're saying.
22            All right.  Let me ask this -- I'm going to
23   push you a little bit, Mr. Castellano -- I'm still
24   trying to work with Mr. Burke's issue here.  Could
25   you give a witness list -- move it up a little bit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to -- before you step into trial in the Molina case,

2    you give it to them by the end of business on the

3    26th?  That will give you two full months from now to

4    think about it.  You can be jotting it down.  But

5    give them the good faith list by the 26th.  Move it

6    up a little bit.  It gets it out of your hair, it's

7    not in the middle of your trial.  You can give it to

8    them earlier if you want.  But before you go into

9    trial, and then you're not messing around with it in

10   trial.

11           MR. CASTELLANO:  So we're talking strictly

12   about the witness list; is that correct, Your Honor?

13           THE COURT:  Yeah.

14           MR. CASTELLANO:  And I take it that's

15   reciprocal, both parties, both sides will be

16   providing witness lists overinclusive on that date?

17           THE COURT:  We've been talk primarily about

18   the Government, set some Giglio, but can we make it

19   reciprocal across the board, November 17th, and then

20   Mr. Burke, I don't know if this is helping you a

21   whole lot, but it's a nod in your direction.  Can we

22   make it reciprocal on both sides?

23           MS. HARBOUR-VALDEZ:  Your Honor, I think we

24   might need a couple of days after we receive their

25   list to decide who our witnesses might be.  Is that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2028

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

```
 1   fair?
 2              THE COURT:  How long do you want after you
 3   get their list to put your list together?
 4              MS. HARBOUR-VALDEZ:  A week.
 5              THE COURT:  A week.  Could you live with
 6   that, Mr. Castellano?  Mr. Beck?
 7              MR. BECK:  Your Honor, I think something
 8   needs to be taken into consideration here.  On the
 9   front end, this is part of the same indictment.  So
10   what some folks refer to as the enterprise witnesses
11   or the enterprise stuff, they will already have a
12   witness list that talks about a lot of these
13   enterprise witnesses now four or five months before
14   trial.  For those keeping score, I'm not very good at
15   math.  So they'll already have that.
16              They're saying they know who our witnesses
17   are going to be.  Well, as I said, our witness list
18   has changed as people have dropped out.  And we
19   expect that to happen again in their case, that as we
20   start focusing on that trial, people will drop out.
21   And that will happen sometime in the future.
22              So I think there is a different impetus and
23   a different rationale between making this first
24   witness list early, as opposed to the second witness
25   list even earlier, because they will have the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2029

```
 1   majority of those witnesses, and we will not know who

 2   our witnesses will be to testify to those, because we

 3   haven't had an opportunity to try to work on that.

 4          And so I think that where we're saying that

 5   is a rationale in providing it earlier so we're

 6   thinking about it in trial, I think the opposite is

 7   true.  I think there is a rationale for doing it

 8   after the trial, and we can sit down and really think

 9   hard about who the witnesses will be for that.  And

10   they've already had notice for the majority of those

11   witnesses, because they're enterprise witnesses.

12          And so I don't want to go down this road

13   that -- let's just provide this witness list, because

14   I think the Court's well aware -- we briefed it in

15   the past in relation to this Giglio stuff -- there is

16   no obligation to present the witness list.  There is

17   no right for a defendant to have a witness list of

18   the Government's witnesses.

19          So I think we're sort of backing ourselves

20   into an agreement here that really doesn't make

21   sense, when they have these witnesses, the law

22   doesn't provide for it, and it will change

23   drastically.

24          And I worry about the Court's guidance that

25   we shouldn't be underinclusive in our witness list,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2030

1    because if we provide that before the Molina trial,

2    before we focus, before we even turn our attention to

3    the second trial, the witness list may not be worth

4    anyone's life.

5           And so it's putting a burden on our plate

6    for sure that I don't think we should be under, under

7    the law.  But I don't think it makes a lot of sense.

8           So I ask the Court to reconsider moving

9    this back further, and instead, to see how things

10   develop, to see what they're providing in our witness

11   list and our Giglio report here.  And if it becomes a

12   problem, then set it for a week or two after the

13   Molina trial, and we can work on a witness list.  We

14   can work on plea agreements.  We can provide stuff to

15   them.

16          Again, I think they're going to get most of

17   everything they want in this round of discovery.  So

18   I'm worried we're backing ourselves into the door,

19   and we're going to get ourselves in trouble with the

20   Court and the defendants for no reason at all.  And

21   so I think for this reason we should not move up this

22   second witness list that far.

23          THE COURT:  Okay.  Let me -- I agree with

24   some of what Mr. Beck is saying, but I don't agree

25   with his conclusion.  Let me tweak this just a little

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2031

1    bit, Mr. Burke, and see if this would work for you.

2    So I move up the list; I'm still inclined to move it

3    up so they have to give you a list before the trial.

4    Here's, though, the kicker.  If that trial goes away,

5    you come back to me and we'll relook at the due date

6    for the list.  Because if for some reason that first

7    trial goes away, then I'm focused, then, on April 9.

8    And you can come back in and say, Okay, Judge, they

9    don't have a trial on January 29 anymore.  Can you

10   start pushing the list and the Giglio and that stuff.

11   Could you live with that?

12            MR. BURKE:  Yes, I could, Your Honor.  That

13   makes sense.

14            THE COURT:  Okay.  All right.

15            MR. BURKE:  May I say one more thing about

16   witnesses?  And I'm not a prosecutor, so I don't know

17   how they're going to go about doing this.  But it

18   seems to me a logical approach.  And it's hard to

19   believe this wouldn't be an approach, is to focus on

20   the witnesses that they need for Counts 1 2, and 3,

21   and so forth.  Then if they have additional

22   overarching enterprise witnesses, then they get to

23   those.  "Styx" Archuleta, for example, might be

24   someone that fits into that.  But they don't begin

25   with the enterprise witnesses and say we just have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2032

 1   this whole morass of witnesses.  You're going to be

 2   organized and have witnesses designated to --

 3          THE COURT:  Well, what you and I don't have

 4   the advantage of is things are fluid --

 5          MR. BURKE:  Yes, sir.

 6          THE COURT:  -- you know, and I think I have

 7   a little bit of sympathy, and can try to figure out

 8   what they're doing over at that table.  If things are

 9   fluid, they may be thinking of trials differently

10   than you are, representing one defendant.

11          MR. BURKE:  That's true, Your Honor.

12          THE COURT:  So let me do this:  Let me

13   stick with where we are.

14          So the Government is going to get this

15   production they talked about to Mr. Aoki by the end

16   of business on November 17; 5:00.  They will also

17   produce a good faith best estimate of what the

18   witnesses are going to be for the Molina trial on

19   January 29, and pushing everybody to make it

20   overinclusive, rather than underinclusive, so we're

21   not looking at additions that are going to cause

22   problems for us down the road.

23          The defendants will give a list of their

24   witnesses -- same admonitions -- seven days later, on

25   the Molina trial.  The Government will then produce

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2033

Appellate Case: 20-2058    Document: 010110415675     Date Filed: 09/29/2020    Page: 143

```
 1    by the end of business on January 26, 5:00, a second

 2    list for the April 9 trial.  And the defendants will

 3    produce a witness list seven days later for that

 4    trial as well.

 5           Anything else anybody want to talk about on

 6    that issue?  All right.

 7           Mr. Castle, are we back to you?  Are we

 8    done with you?

 9           MR. CASTLE:  We rest.

10           THE COURT:  You rest.  Is there anything

11    else on your motion?  Can I move beyond your motion

12    then?

13           MR. CASTLE:  Yes, you can.

14           THE COURT:  All right.  Thank you, Mr.

15    Castle.

16           All right.  I'm going to get organized

17    slightly here, and then we will move on to the next

18    issue or next motion.

19           MR. VILLA:  Your Honor?

20           THE COURT:  Hold on just a second.  Let me

21    just get organized so you can disorganize me, okay.

22           Okay.  What I'm pulling up -- I'm not

23    ignoring you, Mr. Villa -- what I'm pulling up is

24    going to be Mr. Davis' motion on behalf of Mr.

25    Herrera, the Rule 16 motion to compel.  So Mr. Davis,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  you've got the floor.  Do you want to concede it to

2  Mr. Villa?

3          MR. DAVIS:  Judge, it's Ms. Bhalla.

4          THE COURT:  Ms. Bhalla, are you going to

5  argue this motion?

6          MS. BHALLA:  Yes, Your Honor.  But Mr.

7  Villa can go ahead.

8          THE COURT:  All right.  Mr. Villa, you have

9  the floor.

10          MR. VILLA:  Sorry, Judge.  As Government's

11  witness list will be due the 17th, ours seven days

12  later, that's the Friday after Thanksgiving.  And --

13          THE COURT:  Let's make it the Monday, 5:00

14  on the following Monday.  Ms. Armijo?

15          MS. ARMIJO:  Can we at least then have the

16  following Monday as well to have that weekend?

17          THE COURT:  Well, what I was hoping with

18  this is I would -- I could try to deal with as many

19  issues when I'm down here the next week as I could.

20          MS. ARMIJO:  And if for some reason that

21  schedule changes, we can revisit this?  For instance,

22  I know that several defense attorneys, although I

23  believe the United States will -- is available that

24  week, or at least part of us -- I think a lot of the

25  defense was going to be indicating they were not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2035

 1    available.  So I would just ask that, if for any

 2    reason the Court is not going to have hearings that

 3    week, that --

 4         THE COURT:  All right.  Is everybody

 5    agreeable to that; that if this schedule doesn't

 6    work, then we allow the Government to have until the

 7    end of business on the 20th, at 5:00, if I'm not back

 8    down here on the 20th?  Not hearing any objection --

 9    but if we're going to be back down here, stick with

10    that 17th?

11         MS. ARMIJO:  Yes, Your Honor.

12         THE COURT:  All right.  Okay.

13         All right.  Ms. Bhalla.

14         MS. BHALLA:  Thank you, Your Honor.

15         Your Honor, I don't think there is a lot to

16    say on this.  I did speak with Ms. Armijo.  I think

17    that the Government is in agreement to produce the

18    materials that we've requested.  I think that given

19    the Court's ruling about Giglio materials being due,

20    I guess, on the 20th now.

21         THE COURT:  We're sticking with the 17th.

22    I want to be here on the 20th.

23         MS. BHALLA:  The 17th is good for me, too,

24    Your Honor.  So if the Government can agree that that

25    will go out in the next batch as well on the 17th, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2036

1   think that we'll be fine.

2          MS. ARMIJO:  The problem is we're still

3   awaiting -- we can't disclose -- and maybe there are

4   a couple of different things that we've agreed to

5   disclose.  Well, we've agreed to disclose all of

6   this.  It's just a timing issue.

7          One of the issues that we have is

8   transcripts.  One third of them, what we sent out we

9   have back.  But we don't have the other two-thirds.

10  If we have the other two-thirds, it will go out.  But

11  what we do have, we will give out.  So that's fine.

12         THE COURT:  Can you live with that?

13         MS. BHALLA:  I think so.  I mean, we

14  requested these recordings back in December of 2016,

15  so -- and I don't doubt that the Government has been

16  trying to get them to us.  But it just seems like

17  sooner rather than later would be helpful.

18         MS. ARMIJO:  The recordings, they have.

19  They have all the recordings.  What they don't have

20  are the transcripts.  And the transcripts just came

21  about within the last month as a result of this

22  motion.  So they have the recordings, they have

23  everything related to what is requested.

24         What they're asking for is -- we're going

25  above and beyond, and we are providing pinpoints just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2037

1    to their team as to incriminating statements that we

2    believe Mr. Herrera made.  But I know that they have

3    recordings.  And I know the defendants have listened

4    to these recordings, given the debriefs that we've

5    had.  So we will turn over the transcripts when we

6    get them, and we'll turn over the ones that we

7    already have.

8              THE COURT:  When do you think these

9    transcripts are going to be available, do you know?

10             MS. ARMIJO:  I'm told that maybe within a

11   couple of weeks.  We made this original request when

12   the original motion was filed, which was mid

13   September.  And so I think they got one-third of them

14   done in about a month.  So --

15             THE COURT:  Are you producing them on a

16   rolling basis?

17             MS. ARMIJO:  We'll produce them on a

18   rolling basis.

19             THE COURT:  Do you know which ones

20   specifically you're wanting transcribed?  Could you

21   send a letter that Ms. Armijo could hand to the court

22   reporter and say:  Do these next?

23             MS. BHALLA:  Well, Your Honor, the

24   Government actually indicated to us the recordings

25   they believe contained statements against interests.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2038

1    We've listened to those, and haven't found that to be

2    the case, which is why the Government, I believe, is

3    ordering the transcripts of those particular

4    recordings.  So I believe that we've already

5    identified those and that they've identified those.

6    So that's not going to be an issue in determining

7    which ones need to be transcribed.

8              THE COURT:  Well, if we're just waiting on

9    the court reporter, can you live with that?

10             MS. BHALLA:  Yes.

11             THE COURT:  I mean, if we get there the

12   week of Thanksgiving, and you still don't have them,

13   then we can revisit this issue.  Would that work for

14   you?

15             MS. BHALLA:  Yes.  And as long as we get

16   the pinpoints on the rolling basis, and then I think

17   that the certification --

18             THE COURT:  Let me make sure I understand

19   what you mean by pinpoints.  Once a transcript is

20   produced, then they tell you where it is in the

21   transcript?

22             MS. BHALLA:  Yes, Your Honor.

23             THE COURT:  But they're not doing that, or

24   unable to do that with the recordings themselves.

25             MS. BHALLA:  That's my understanding.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2040

```
 1            THE COURT:  Okay.

 2            Am I understanding things correctly?

 3            MS. ARMIJO:  Yes, Your Honor.  And just so

 4  we're clear, we are going to point out things that we

 5  think are good.  But if we're in trial, and we bring

 6  out something else that we think is good, and they

 7  object, it may just be because the evidence has

 8  changed.  So we've agreed to pinpoint for the Herrera

 9  team, so to speak, things that we feel at this point

10  are incriminating.  But we're not going to keep doing

11  their job for them, so to speak.  We're doing this as

12  a courtesy in providing this information for them.

13            THE COURT:  You look like you're pleased

14  with this courtesy.

15            MS. BHALLA:  I think it's --

16            THE COURT:  All right.  But you understand

17  the rules?  You can live with them?

18            MS. BHALLA:  I do, Your Honor.  I would say

19  that -- how many people have listened to the

20  recordings now on our team, one, two, three --

21            THE COURT:  Well, you don't have to agree.

22            MS. BHALLA:   No, I don't.

23            THE COURT:  I mean, there may be a

24  disagreement on whether it's incriminating or not.

25            MS. BHALLA:  That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2040

```
 1              THE COURT:  I probably can't resolve that.
 2   But I guess everybody is going to need to probably
 3   stare at them with a judge's eyes to see whether it's
 4   going to come into evidence as an admission against
 5   interest, or a statement against interest.  So
 6   everybody is going to have to, at some point, take
 7   probably their litigator's eyes off and start looking
 8   at it is this thing really going to get into
 9   evidence?
10              MS. BHALLA:  Thank you, Your Honor.  And
11   just for clarification, in terms of the certification
12   packet, do you anticipate that coming out on the 17th
13   as well?
14              MS. ARMIJO:  Yes.  It's already ready to
15   go.
16              MS. BHALLA:  Thank you, Your Honor.  That's
17   it.
18              THE COURT:  What is the certification
19   package?
20              MS. BHALLA:  The certification packet,
21   according to our expert, is a document that was
22   created, that lists the structure of SNM.  And so it
23   would address issues about who was in an authority
24   position and who was not, which is relevant to our
25   defense, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2041

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

```
1              THE COURT:  Who prepares this?
2              MS. BHALLA:  The Department of Corrections.
3    It would be through STIU, I believe, in that
4    classification process.
5              THE COURT:  Is this an historical document
6    or is this a document that they're preparing for
7    trial?
8              MS. BHALLA:  It's a historical document.
9    Now, it certainly could be something that's been
10   updated over time.  And I don't know the answer to
11   that.
12             THE COURT:  All right.  Okay.  Anything
13   else you need on your motion?
14             MS. BHALLA:  No, Your Honor.  Thank you.
15             THE COURT:  All right.  How about anybody
16   else?  I don't think there is a lot of people that
17   joined this motion, but is there anybody else that
18   has any issue that's related to it they want to bring
19   up?  Okay.  So we will move beyond what I'm calling
20   motion number 6.
21             And we're going to what I'm calling motion
22   number 7, which, Mr. Villa, is motion to compel Rule
23   16 and Brady material, if ordered, to preserve law
24   enforcement notes.  What else on this -- what other
25   issues or rulings do you need, given the response of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2042

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152

```
 1    the Government on this one, Mr. Villa?  Take your

 2    time.  Take your time.

 3              MR. VILLA:  Your Honor, Ms. Armijo has

 4    offered to discuss with me some of our outstanding

 5    issues.  Maybe we can set this one aside and do it

 6    tomorrow or later today.  And she and I can discuss

 7    it during a break.

 8              MS. ARMIJO:  We can discuss it at the next

 9    break, Your Honor.  Because it would take care of

10    most everything and it would save court time.

11              THE COURT:  All right.

12              MR. VILLA:  While I have the floor, thank

13    you -- it doesn't have anything to do with this.  I

14    wanted to flag something for the Court.  I think

15    Ms. Wild is aware of it, and I apologize for filing

16    late, but it's Document 1408 that I filed Monday, a

17    motion for statewide jury pool and jury

18    questionnaire.  I don't expect the Court to have made

19    any decisions.  But do I understand, at least with

20    respect to the jury questionnaire, that the jury

21    division needs -- they're estimating eight weeks.

22              THE COURT:  Yeah.  We've got to move on

23    that pretty quick, if we're going to do something on

24    that.

25              MR. VILLA:  So the one thing I guess I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2043

```
 1    could ask the Court to do, if you're inclined, is

 2    order the United States to respond in an expedited

 3    fashion, so that we can get this questionnaire

 4    hammered out.

 5              THE COURT:  Tell me what your motion

 6    requests.

 7              MR. VILLA:  So two things:  One is a

 8    statewide jury pool, which I guess we have to get

 9    decided, so we know who to send the jury

10    questionnaire to.

11              THE COURT:  Tell me why you want a

12    statewide jury pool?

13              MR. VILLA:  Well, I think there are a

14    number of issues, Your Honor.

15              THE COURT:  What does it get you?  As

16    defendants what do you want it for?

17              MR. VILLA:  Well, for Counts 6 through 12,

18    a number of the --

19              THE COURT:  You want more Sandia Lab people

20    over there in that jury?  Is that what you're

21    wanting?

22              MR. BLACKBURN:  Farmington.

23              THE COURT:  You want Farmington.

24              MR. VILLA:  Nortenos, Your Honor.

25              THE COURT:  We'll get you some oil guys
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2044

 1    over there in the jury box.

 2              MR. VILLA:  I think there are a number of

 3    things that will help prevent venue-type issues and

 4    other prejudice, you know.  A large amount of press

 5    coverage.  The Molina incident occurred --

 6              THE COURT:  Let me ask you this:  I don't

 7    live down here in Las Cruces, but I don't think there

 8    has been any coverage down here about this, has

 9    there?

10              MS. HARBOUR-VALDEZ:  Yes.

11              THE COURT:  Has it been anything like The

12    Journal in the north?

13              MS. HARBOUR-VALDEZ:  Your Honor, my

14    understanding is that a lot of times the Las Cruces

15    Sun News picks up the Journal article and repeats it.

16    At least that's what I've found when --

17              THE COURT:  Well, I would guess, correct me

18    if I'm wrong, you've got a lot less coverage down

19    here than we have up there, just by location of

20    articles on the front page and stuff.

21              MR. VILLA:  Yeah, I don't -- I'm not

22    familiar with Las Cruces.

23              THE COURT:  I'll come back to you.

24              MR. VILLA:  I have to rely on --

25              THE COURT:  Well, just think about it.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2045

```
 1   guess I --
 2              MR. VILLA:  I think it's the cross-section,
 3   Judge.  You get more than what you get from the
 4   southern pool, and if you're in the northern pool,
 5   you get more than you got from the northern pool.
 6   The Sandia Lab folks, you know, we may or may not
 7   want on our jury, but I think we need different
 8   mindsets from different geographical locations.
 9              The incidents that are going to be tried in
10   6 through 12 are one that, basically, I guess is
11   Santa Fe, because this is the alleged conspiracy to
12   put a hit out on the Secretary of Corrections.  And
13   then the Molina murder is down here in Las Cruces.
14   So I think, geographically, a statewide jury pool
15   would be more representative.
16              THE COURT:  Well, let me ask you, since I
17   haven't reviewed your motion, are all the defendants
18   on board?
19              MR. VILLA:  Yes.
20              THE COURT:  They all want a statewide jury?
21              MR. VILLA:  All 13, both trials.
22              THE COURT:  Now, these are lengthy trials.
23   I know you've got to represent your defendants, but
24   have you thought about jury convenience on this?
25   That's going to be a hardship if you decide to get
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2046

1    some people from Farmington.

2            MR. VILLA:  I have, Your Honor.  But, you

3    know, when you look at the two maps of the southern

4    division and the northern division, we're going to

5    get people that -- if we're just in the southern

6    division, are going to have to drive three or four

7    hours.  They're going to have to stay here.  I'm not

8    sure that a couple extra hours that it takes to come

9    down from Taos or Santa Fe or Angel Fire makes that

10   big of a difference, as opposed to the folks in

11   Lovington, Carlsbad, and Hobbs, that are going to

12   have to come here even if we're just in the southern

13   division.

14           THE COURT:  Okay.  And what was the second

15   point?

16           MR. VILLA:  It's the questionnaire, Your

17   Honor.  The Government -- we provided it to the

18   Government, and they initially said, "We object."

19           And we said, "Well" --

20           THE COURT:  Did you actually provide a

21   questionnaire?

22           MR. VILLA:  Yes.

23           THE COURT:  It's attached to the motion?

24           MR. VILLA:  It is.  And I think the

25   Government, you know, initially their feedback was:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2047

```
 1    We object.  And we said, Well -- you know, and it's
 2    too long.  There are questions we can change, stuff
 3    we can cut out.  Maybe we can agree on this.
 4              THE COURT:  Hold on a second.
 5              (A discussion was held off the record.)
 6              THE COURT:  Go ahead.
 7              MR. VILLA:  Sure, Judge.  And the
 8    Government said, Okay, we'll look at it with that
 9    eye.  And then I think we just kind of ran out of
10    time.  So I filed a motion in a sense to press the
11    Government and the Court to get this issue resolved,
12    so if we can get a questionnaire issued in time to
13    have it back, you know, we'd need at least a week or
14    two to review it.
15              THE COURT:  Anybody else on the defense
16    side want to say anything about this issue?
17              MR. VILLA:  The one thing I'll add -- I
18    know you haven't seen it -- I did cite to the Court
19    some other decisions that you have made on this
20    issue.  And to the extent that that can help you --
21              THE COURT:  What did I say?
22              MR. VILLA:  Well, you gave the
23    questionnaire --
24              THE COURT:  Was it SEC?
25              MR. VILLA:  You know, I think that may have
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2048

1   been one.  Rodella was another.  Vigil -- and in all

2   the cases, I believe, you did grant the

3   questionnaire.  And the statewide jury pool, it was a

4   mixed bag.

5              THE COURT:  When did I deny the statewide?

6              MR. VILLA:  I believe in Vigil you denied

7   it.

8              THE COURT:  Well, I had to in that, because

9   what happened on that is Gorence asked for the trial.

10  But the way our jury plan was written at the time --

11  no, he did not ask for a statewide.  What he did is

12  he asked --

13             THE CLERK:  Vigil was Bregman.

14             THE COURT:  You're talking about Rodella,

15  right?

16             MR. VILLA:  Well, I think it came up in

17  both.  But I think what Ms. Wild is reminding the

18  Court is that Vigil was Bregman, not Gorence.

19             THE COURT:  Right.  But Vigil, we did do a

20  statewide.

21             MR. VILLA:  So maybe I had them backwards.

22  I think in Rodella it was denied, and Vigil it was

23  granted.

24             THE COURT:  Here's what happened in

25  Rodella.  What Gorence wanted was he wanted --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    because I could not get the courthouse in Santa Fe,

2    he wanted to have a Santa Fe venire, which I somewhat

3    agreed with.  But then we looked at our jury plan,

4    and the jury plan required that the venire come from

5    the location where the trial was.  And remember back

6    then, we had a Santa Fe venire, then we a central, we

7    had three -- and then we had in the south.  I don't

8    think he wanted a statewide venire, which is

9    interesting.  You might give that some thought.  I

10   don't think he wanted a statewide venire.  He wanted

11   a Santa Fe venire.  And you can think of maybe the

12   reasons why.

13             MR. VILLA:  We'll take a Santa Fe one,

14   Judge.

15             THE COURT:  You'll take a Santa Fe one.

16             But here was the upshot of that is, when we

17   looked at the plan -- I made a pitch that no jurors

18   were coming from Santa Fe.  Because if you're having

19   a criminal trial, you almost had to do it in

20   Albuquerque.  And then, that meant that you couldn't

21   do the venire from there.  So we were not using,

22   really, the people up in Santa Fe, Taos, Raton.  So I

23   made a pitch to abolish that.  And so that's what we

24   did.  We abolished that, so now I've got a north and

25   south.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2050

```
 1            So I don't think -- I think if I could have

 2   had an agreement on that, I probably could have done

 3   it.  But I think the Government objected.  And so our

 4   jury plan was such that it didn't give me the

 5   flexibility.  It gives me the flexibility now, so

 6   it's been rewritten to allow a statewide venire.  And

 7   then it abolished the north.  So I think what you're

 8   asking is permissible.  It's just a question of

 9   whether to do it or not.

10            Disagree?

11            THE CLERK:  No, I don't disagree.

12            THE COURT:  Anybody else want to comment on

13   that?  I want to hear from the Government, so you may

14   want to hear what the Government has to say.

15            MR. VILLA:  And, Your Honor --

16            THE COURT:  You're not remembering stuff

17   again, are you, like Mr. Blackburn?

18            MR. BLACKBURN:  It's yesterday, so I've got

19   to help him out.

20            MR. VILLA:  I had to sit through dinner

21   with him last night with all these memories.

22            MR. BLACKBURN:  Those were Mr. Cooper's

23   memories.

24            MR. COOPER:  That he would like to forget.

25            MR. VILLA:  Mr. Sorrell, Lincoln Sorrell,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2051

1  we visited with Lincoln yesterday when we were here,

2  and he did say he'd be available to the Court if you

3  had questions about some of these issues.

4          THE COURT:  Okay.  Thank you, Mr. Villa.  I

5  love Lincoln Sorrell, but it's probably better you

6  stay with Ms. Wild here.  Don't end run her.  You

7  know, it's probably not a good idea.  So I encourage

8  you to keep your contact with Ms. Wild.  Don't try to

9  end around.

10          I'll come back -- well, go ahead.

11          MS. SIRIGNANO:  Judge, the only thing that

12  I was going to say is that all the media coverage was

13  briefed in 4275, and we're happy to refile that

14  motion here in 4268.  That lists out all the articles

15  that Mr. Villa --

16          THE COURT:  I'm sorry.  Don't give me

17  numbers because I get confused.

18          MS. SIRIGNANO:  I'm sorry.  In Mr. Garcia's

19  drug case, the 15-CR-4275.

20          THE COURT:  Yeah.

21          MS. SIRIGNANO:  We filed a very extensive

22  motion, if you recall, with all of the media articles

23  that we had found up until that point.  There have

24  been subsequent articles.

25          And just as a reminder to the Court, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2052

```
 1   problem isn't The Journal or the Las Cruces paper.
 2   There has actually been articles in the El Paso
 3   paper.  But the television picks it up.  All the
 4   major networks, both in Albuquerque, here, and as
 5   well as social media.  I've seen significant media
 6   coverage of this case over Facebook, Twitter, and the
 7   other social media outlets that people look at.
 8           THE COURT:  I'll ask you the same question
 9   I'm asking Mr. Villa:  Let's assume all that is true,
10   I still think it's probably less down here than up
11   there.  Let's assume that's true.  How does doing a
12   statewide venire help you on that?
13           MS. SIRIGNANO:  I think it lessens the
14   exposure that the defense has to worry about.  And
15   why use the pool so we can cast the net broader, to
16   make sure that there isn't any juror poisoning from
17   all of the media articles.
18           THE COURT:  I'll get you some folks out of
19   Jal that don't know anything about this case.
20           All right.  Thank you, Ms. Sirignano.
21           MS. SIRIGNANO:  Thank you, Judge.
22           THE COURT:  The reason I want to go ahead
23   and discuss this a little bit -- I know the motion
24   just got filed -- is this is an extremely tight
25   schedule.  Ms. Wild is right now is seeing if we can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2053

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2054

```
 1   do this.  And if we do, what kind of deadlines we
 2   have.  Let's take the first issue about a statewide
 3   venire.  What's your thoughts on that?
 4           MS. ARMIJO:  Your Honor, our thoughts are
 5   we would agree with the Court's proposition that the
 6   media coverage here has been far less than up north.
 7   And if you remember, with the Chris Garcia case and
 8   with that motion -- and not that we are inviting a
 9   motion to be filed in this case -- but the majority
10   of those were all articles that occurred up north,
11   not down south here.
12           And the primary concern is juror
13   convenience.  Because if we are going Monday through
14   Friday, and we end at Friday, 5:00; and let's just
15   say we get somebody from Farmington, you know, that
16   isn't just a couple of added hours, that's a seven,
17   eight-hour drive I believe from down here.  Or even
18   for, say, we get somebody even further away.  When
19   we're down here -- I think Albuquerque is more
20   centralized than Las Cruces, per se.  But down here,
21   we may get people, if you pick some people from up
22   north, that would have a very difficult drive.  If
23   we're doing it in January, it snows up north.  I
24   mean, if they're going to be driving late at night
25   home, it's going to make it impossible for them to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2054

```
 1   have any type of home life, if they're picked up that
 2   far.  And it's just a hardship on them.  So that's
 3   primarily our reasons, Your Honor.
 4            THE COURT:  Well, those sound like good
 5   reasons to try it in Albuquerque.
 6            MS. ARMIJO:  Yeah, but I don't -- yes, but
 7   we would disagree with that.
 8            THE COURT:  All right.  Talk to me about
 9   the second issue, then, on the questionnaire.
10            MS. ARMIJO:  The questionnaire that was
11   provided, we think, for one, we think -- and I'm not
12   sure, I know probably not the learned counsel that's
13   from out of state has never had a trial with you, but
14   certainly probably some of the Albuquerque attorneys
15   have.  But those of us sitting at the Government
16   table have -- know that you do a very extensive voir
17   dire; you ask a lot of questions, you're very
18   thorough.  I think that the parties can propose voir
19   dire questions for the Court, and follow-up.  Because
20   we know that this group is not shy about asking
21   questions certainly.  And so the questionnaire, we
22   just oppose it, because it will be burdensome, one;
23   and two, what they have proposed is, I think -- it's
24   quite lengthy, and it's quite one-sided.  It goes
25   into -- and I can give the Court examples, but it has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2055

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165 2056

1    a lot of questions about gangs, about Corrections,

2    and knocking people off that would be conservative,

3    quite frankly, and not giving the other side of the

4    picture.  Not going into the people that the

5    Government --

6            THE COURT:  I thought that was your

7    picture.

8            MS. ARMIJO:  I'm sorry?

9            THE COURT:  I thought that was your

10   picture.

11           MS. ARMIJO:  That we want conservative?

12           THE COURT:  No, I thought you wanted --

13   this was gang members knocking people off.  I thought

14   that was --

15           MS. ARMIJO:  That is our picture.

16           THE COURT:  That is your picture.

17           MS. ARMIJO:  What I mean is that their

18   questionnaire is such that they will get a good

19   picture of people that they do not want on the jury

20   pool, on the jury itself; whereas, the one that they

21   proposed to us does not give the United States a fair

22   shake.

23           So if there is one, I think that there may

24   be a lot of work to come up with one in talking to --

25   well, I know that time is short.  So if the Court is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    inclined to give one, then we need to start working
 2    on that right away.  But I just don't think -- this
 3    isn't a death penalty case.  And for once, I will
 4    agree with defense that death is different.  But this
 5    is not death.  So we do not need a jury questionnaire
 6    to figure out if the jury can decide a death penalty
 7    case.  So we, quite frankly, are opposed to a jury
 8    questionnaire.  And we are certainly opposed to the
 9    one that they proposed to us.
10              THE COURT:  Let me ask a couple of
11    questions.  And this is going a little bit deeper
12    into the pretrial conference than we would normally
13    be doing at this point.  But I think I need to ask
14    these questions to get a better feel for what we're
15    looking at on the jury.  How many jurors is the
16    Government going to be requesting that we seat for
17    this trial?  In other words, how many alternates are
18    we going to have?
19              MS. ARMIJO:  I think we would need at least
20    four alternates, if not six.
21              THE COURT:  All right.  Anybody from the
22    defendants want to begin to put -- do you have a
23    different figure?  It would be closer to four?
24    Closer to six?  So that we're looking at 18 in the
25    jury box, or 16 in the jury box?  We'll get chairs.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    We can handle that logistics.
 2              MR. BLACKBURN:  I would say six, Your
 3    Honor.
 4              THE COURT:  All right.  Well, let's plan on
 5    seating 18 for the jury then.
 6              I would have to have my memory refreshed,
 7    but how many peremptory challenges are the defendants
 8    going to get?
 9              MR. CASTLE:  Your Honor, we're entitled to
10    10, but the Rule of 24 allows to us request more, and
11    in fact, there is already a draft motion to request
12    additional peremptories.  That will be filed shortly.
13              THE COURT:  Well, maybe I didn't state the
14    question well.  I think you're entitled to 16
15    peremptory challenges.  So you're entitled to 16, but
16    is that for the five?
17              MS. ARMIJO:  Collectively.
18              THE COURT:  That's your question, right?
19    Would it be your position that the five get 16
20    peremptory challenges?
21              MS. ARMIJO:  Together?
22              THE COURT:  Yes.
23              MS. ARMIJO:  Yes.
24              THE COURT:  Any disagreement from the
25    defendants?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2058

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 168

```
1              All right.  So let's plan on then
2    defendants get 16 -- does that address your concern,
3    Mr. Castle?  Does 16 give you about what you were
4    shooting for?
5              MR. CASTLE:  Well, I apparently --
6              THE COURT:  You want to up the ante now?
7              MR. CASTLE:  The math got fuzzy for me, so
8    I'm not sure.
9              THE COURT:  Here's the deal.  Let me sort
10   of explain it.  It's a little bit more nuanced than
11   that.  The Government is going to get 10.  The
12   defendants are going to get 16 in total.  So the five
13   defendants are going to exercise 16 peremptory
14   challenges.
15             Here's the tricky part, and I'll have to
16   look at the statute, there is a statute on this.
17   After then we have the jurors -- after we have our
18   18th, at that point we know what our 12 are.  So
19   that's frozen.  So we know 1 through 12, who the
20   jurors are.  Then I give to each side -- and this is
21   where I don't know the math; I can't remember -- if I
22   were seating two alternates, then I would give the
23   defendants one peremptory challenge to exercise only
24   against the alternates, and I'd give the Government
25   one peremptory challenge only to be exercised against
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2059

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62060

```
 1    the alternates.  You can waive it, whatever you want

 2    to do.

 3            With six alternates, my memory is that it

 4    goes.  It only goes to --

 5            (A discussion was held off the record.)

 6            MS. ARMIJO:  Your Honor?

 7            THE COURT:  Hold on just a second here.

 8            (A discussion was held off the record.)

 9            THE COURT:  Let me clean something up.  I'm

10    wrong.  It's only 10 peremptory challenges for the

11    defendant.  So you will have to move if it goes

12    beyond --

13            MS. ARMIJO:  16.

14            THE COURT:  16 together.  But I'm going to

15    look at the statute.  There is a statute on the

16    alternates I need to -- my memory is that it goes up

17    by one for every two.  So I think you're going to get

18    three extra peremptory challenges on each side to be

19    exercised against the alternates.  But we'll check

20    that.

21            All right.  Now, somebody was going to say

22    something, and I can't remember who was going to say

23    what.  But I'll go back to you, Ms. Armijo.

24            MS. ARMIJO:  Your Honor, I believe it is

25    Rule 24.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  It's a rule.

 2              MR. BLACKBURN:  It's a rule.

 3              MS. ARMIJO:  Rule 24(c)(4)(C).

 4              THE COURT:  What does it say?

 5              MS. ARMIJO:  It says three additional

 6    peremptory challenges are permitted when five or six

 7    alternates are impaneled.  So we'll get three each.

 8              THE COURT:  All right.  So everybody clear

 9    what we're going to do?  And then you've got a motion

10    for more peremptory challenges?

11              MR. CASTLE:  Yes, Your Honor.

12              THE COURT:  All right.  But we're going to

13    treat them as joint.  So what are you requesting,

14    Mr. Castle?  How many additional were you asking for?

15              MR. CASTLE:  Well, Your Honor, we floated

16    over a motion with that aspect blank to get the group

17    consensus.  And we haven't been able to get

18    consensus, just because everybody has been busy

19    getting prepared for this hearing.

20              THE COURT:  Do you have a range?

21              MR. CASTLE:  I think mine was, because of

22    the number of defendants, we were asking for ten

23    additional peremptories.  But of course, we've always

24    been -- well, we haven't -- horse trading goes on

25    west of the Mississippi, so I understand that there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2061

 1   might be a different position from the Government.

 2          What I haven't done, Judge, is to see what

 3   the courts have done locally in complex cases, to

 4   see -- there are cases where they granted extra

 5   peremptories, and I'm trying to get a feel for what

 6   other courts have done.

 7          THE COURT:  It's not going to be very

 8   encouraging.  It's just hard to talk us into it, even

 9   in the most complex cases, just because -- here's the

10   problem:  If you start passing out that many

11   peremptories, let's say we get 46, which would be

12   about a standard number for just a routine trial.

13   You get about 46 jurors in there.  I've got 16

14   peremptory challenges total.  Then I've got to add on

15   now three.  So I'm up to six.  So that gives me 22.

16   And then let's say I'm going with about -- what was

17   my last trial?  Maybe about 11 for cause challenges.

18   It's going to be higher on this.  It just makes it

19   hard for y'all, and for the Court, and for the

20   Government to try to do a voir dire.  It's just

21   tough.

22          And so, I know you'd like to have more

23   peremptory, but what you give up on the other side is

24   you've got a whole roomful of people you're trying to

25   deal with.  You know, it's always Juror No. 51 back

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    there that yaps up, and everybody knows they're not
 2    going to be selected.  And they just chatter.  You
 3    know, we've all been there, right?
 4              So give it some thought.  I'm not saying
 5    no.  But, you know, you get a little bit more with
 6    the peremptories, but you also give up that sort of
 7    intimacy you get with a smaller venire.  And I work
 8    real hard to try to reduce the venire that you have
 9    to a manageable level, so we have a good voir dire
10    without running out of jurors.  And I'll tell you
11    what, I've sweated it at times, but I've always
12    gotten a jury without maybe sacrificing a little bit
13    of intimacy.
14              So I don't know if that's any guidance.
15    I'm not saying no.  It sounds like y'all need to
16    think a little bit about what you're going to ask
17    for.
18              Mr. Castellano.
19              MR. CASTELLANO:  Your Honor, if we can
20    change topics back to the questionnaire itself.  I
21    think there are two issues.  One is should we have a
22    questionnaire, and two is what's going to be in that
23    questionnaire?  And what Ms. Armijo alluded to with
24    problems with a questionnaire are --
25              THE COURT:  Let's do this.  I am way over
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2063

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173

```
 1   with Ms. Bean.  I was having so much fun talking
 2   about selecting a jury that I just let the time get
 3   away.  Let me let you speak to us after the break.
 4   So we'll be in recess for about 15 minutes.
 5              (The Court stood in recess.)
 6              THE COURT:  All right.  Mr. Castellano.
 7   You were going to give me two reasons why we
 8   shouldn't do a questionnaire.
 9              MR. CASTELLANO:  Yes, Your Honor.  And I'm
10   only going to cover three questions from the
11   questionnaire.  I don't think we need to go over the
12   whole thing.  So this is page 18 of the
13   questionnaire, Question 87A.  "Would it matter to you
14   that becoming an informant was their only avenue to
15   avoid the full consequences of their actions?"
16   That's a loaded question, because any defendant in
17   this case has multiple ways of avoiding the
18   consequences, including going to trial, or motions
19   practice.  And cooperation is another one.  So I
20   think that's somewhat of a loaded question.
21              Question 88, once again referring to
22   informants, says, "How do you feel about the
23   truthfulness of that testimony," when they haven't
24   heard it yet.  So they're kind of loading that up by
25   saying they're going to be lenient, how do you feel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   about it?  And the Court is already going to give an

 2   instruction as it relates to cooperators.

 3          The next on Question 90B says, "Will you

 4   stand for the right of every juror to vote their

 5   decision in the manner they feel is appropriate?"

 6   That's not what the law says.  The jurors can vote in

 7   a way they think is appropriate.  They have to vote

 8   in conformance with the Court's instructions.  So not

 9   only I don't think we should do it, but the question

10   is whether or not we're going to have any agreement

11   on questions especially such as that.  That's just

12   simply not what the Court is going to instruct them

13   to do.  They can't do what feels right to them.  They

14   have to follow the Court's instructions.  And this

15   instruction tells them that that's not necessary, or

16   at least suggests that.

17          So those are just three examples, Judge, of

18   why I think we're going to have problems with the

19   questionnaire.

20          THE COURT:  All right.  Thank you, Mr.

21   Castellano.

22          Well, let's do this:  The Government hasn't

23   had an opportunity to respond to that motion, so I'm

24   not going to rule definitively today.  I can tell you

25   that I am strongly inclined to allow a jury

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 175 of 2066

```
 1    questionnaire.  I'm less convinced that a statewide

 2    venire is going to help us with any problem that we

 3    have.  But if the defendants think it's important for

 4    the appearance of justice that you have a statewide

 5    venire, I'm willing to do that.  I want the

 6    defendants to feel like they've got a fair jury.  So

 7    it will be some juror inconvenience, but I'll trade

 8    off juror inconvenience of a few people to make sure

 9    the defendants feel like the jury is fair and

10    impartial to them.

11            The reality is, if I get some folks from

12    Hobbs, they're going to be traveling about five hours

13    over here anyway.  Not a lot different from coming

14    out of Bernalillo County, which is where most of --

15    probably your northern folks are going to come -- I'm

16    going to probably have a few from Farmington and

17    stuff.  But like I said, I'll trade off juror

18    inconvenience to make sure the defendants feel like

19    they've got a fair jury.

20            The jury questionnaire, I'm inclined to

21    allow one.  Again, I'll allow the Government to,

22    after they listen to me talk this afternoon, decide

23    they want to continue to oppose it, then we'll --

24    they can file their response.  I read most of the

25    defendants' motions during the break.  But if the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2067

```
 1   Government wants to oppose it, we'll pick it up on
 2   the 20th, and resolve any issues and objections.
 3            But if I'm going to have a questionnaire,
 4   I've got to go ahead and move now.  So I'm going to
 5   set some deadlines for some things to be done.  This
 6   will be without prejudice to the Government.  If you
 7   want to take another swipe at it on November 20th,
 8   you can.
 9            And while I'm setting some deadlines --
10   these are not in stone, because Ms. Wild is going to
11   have to walk out of here and talk to Mr. Sorrell and
12   see if they're doable, so she'll get back with you
13   and finalize these.  But while we're together let's
14   talk about the trial.  We're going to seat 18 jurors.
15   We're going to have, we just decided, 22 peremptory
16   challenges without prejudice to trying to increase
17   that number from the defendants.  But that puts us at
18   38 right there.
19            Let's see, I wrote it down, and then I
20   crossed it out.  I think Ms. Wild anticipates, with
21   18 jurors, that she thinks that for cause might be as
22   high as 30.  I'll have to think about that.  We're
23   moving awfully quick on this today.  But the longer I
24   serve, the more for cause challenges there seems to
25   be.  I don't know if it's just getting people --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2067

 1   harder to get people to sit on juries or what.  But
 2   let's work with her 30.  That's going to put us at
 3   68.  That's a lot of people to work with in the
 4   courtroom.  So here's what I propose, is I don't
 5   think I can probably, with 18 jurors, get mine out of
 6   my usual 45, 46 in Albuquerque.  So I propose to
 7   bring 60 into the courtroom.  Let's see if we can get
 8   our 18 out of that 60.  I'll leave another 60 in the
 9   jury assembly room -- actually, I'll leave another
10   80.
11            THE CLERK:  No, 140 down there.
12            (A discussion was held off the record.)
13            THE COURT:  So we'll have 60 minus 140,
14   will be 80.  So I'll have 80 in there, and then we
15   can think about this.  And we can do this in waves
16   and bring another 60 in; do our voir dire.  And if
17   necessary, bring another 20 in.  What I've done in
18   the past -- and I think it's only happened once that
19   I haven't gotten my jury out of that first batch --
20   maybe twice -- but maybe, we just bring up another 10
21   or something like that.  We can agree on it so nobody
22   gets an advantage at the time.  But we can agree on
23   it.  But I guess my thoughts would be, if we're
24   looking around at -- rather than bringing 60 in and
25   doing it all again, bring in five, 10, see what our

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 178

```
 1   needs are at that point.  But to do the voir dire
 2   again it sure goes quicker with five or 10 than it
 3   does with the jury box.  And then add those to the 60
 4   and start doing our peremptory challenges.  So that's
 5   what I'm thinking of.
 6           So we'll -- so the Government, if it wants
 7   to say something, it needs to do it before the 20th.
 8   We'll pick this back up.  And then I'll use the 20th
 9   to resolve any issues or objections.
10           Here's what I propose as far as a
11   schedule -- and this is what Ms. Wild will be working
12   with Mr. Sorrell to see if we can finalize this --
13   the parties shall, by the end of business on November
14   22, 2017 -- I think that's Wednesday -- the parties
15   shall submit to the Court the final version in an
16   executable format, a cover letter from Jury -- so
17   that's the cover letter that will go from the Jury
18   Services, the jury technician, to accompany the
19   special questionnaire to give some detail about the
20   case.  So you'll need to agree, or attempt to agree
21   on a cover letter and then the questionnaire.  We'll
22   draft the cover letter, then y'all just work on the
23   questionnaire.
24           See if you can agree.  And if you can't
25   agree, then submit to me a questionnaire that shows
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2069

1    how much you agree.  And then I'll make the final

2    decision on what goes out.  I don't think we're going

3    to have time for argument on it, because I'm going to

4    have to send those out on November 27, which is

5    Monday.  So that's going to be over those holiday

6    weekends.  So you get it to me by the end of business

7    on the 22nd, and we're sending it out on the 27th.

8    And so I'll just have to make some calls as to

9    whether it's in and out.  If you want to send a

10   little brief, want to send a little letter making a

11   pitch as to why I should keep something in or take

12   something out, you can do that.  And I'll just make

13   the best call I can.  It goes out on the 27th.

14          These dates are horrible with the holidays.

15   But on December 27, the projected jurors are going to

16   have to return the special jury questionnaire, which

17   will mean -- I mean, literally these days are falling

18   on the 25th, so I'm bumping them over.  Then January

19   1st -- so I'll bump it over to the 2nd -- the VDQ,

20   which is that standard voir dire questionnaire that

21   you get, you're going to get, and the special jury

22   questionnaire, those will be available to counsel.

23          And then -- so we're into 2018 now.  On

24   January 15, 2018, by that point, the parties give the

25   Court an agreed for cause challenges due in writing.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    So try to agree as much as you can on the for cause
 2    challenges, and then send them to the Court.  And
 3    then the ones you can't agree on, tell me what they
 4    are and then I'll make the best call I can.
 5              MS. SIRIGNANO:  Judge, can you repeat them
 6    again, please?
 7              THE COURT:  Yeah, I'll repeat them.  Let me
 8    get through them first, and then I'll just repeat
 9    them all.
10              So I'll get a list on the 15th, the
11    parties' agreed for cause challenges due in writing.
12    And then the parties' disputed for cause challenges
13    due in writing.
14              I will then exercise for cause challenges
15    based upon the parties' for cause challenges.  I will
16    not excuse anybody for cause that nobody has
17    challenged.  So I'm not going to do -- I know some
18    judges do this, they go through it and make
19    independent cuts.  I'm not going to do that.  If
20    y'all don't put one on the table, I'm not going to
21    for cause it, because, otherwise, people will be mad
22    saying, why did the judge excuse that person?  I
23    wanted that person on the jury?  So I won't do that.
24              On January 22nd, that will be when you'll
25    get my ruling and order on the disputed for cause
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2071

```
 1    challenges.  I'll issue it by that date.
 2            For prospective jurors calling in to
 3    determine if need to appear for selection:  The
 4    reason we're doing it that date, we're going to be a
 5    week out from trial, and so I need to tell the
 6    prospective jurors that are calling in whether they
 7    need to appear for selection.  So I'll make the
 8    ruling and the order.  And then we'll be telling
 9    simultaneously Jury Service that they can inform
10    those jurors that they don't have to -- they'll be
11    notified they don't have to appear, should they plan
12    to be present for the selection.
13            Then our jury trial is January 29, 2018.
14    I'll repeat the dates here in a minute.  But here's a
15    few thoughts.  I haven't studied this jury
16    questionnaire that you've -- at all -- Mr. Castellano
17    has pointed out more than I've read.  I tend to think
18    that, having done a number of jury questionnaires,
19    and y'all have done a lot -- they're a little bit
20    better if they're shorter rather than longer.  You
21    get some irate jurors.  Remember these people can end
22    up on your jury.  And they get a little irate if they
23    have to fill out the standard voir dire
24    questionnaire, the voir dire questionnaire sent by
25    the court -- remember there is one that you never
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2072

1   see, unless they don't fill these out.

2          So by the time you get to the special

3   questionnaire, it's the third questionnaire they

4   filled out.  And then they come to court and you ask

5   them more questions.  And they get a little irate.

6   So I tend to think a little bit shorter rather than

7   longer is better.  But I'll play ball with you,

8   Counsel.  This is for your benefit.

9          The other thing is:  Don't kill each other

10  over the questionnaires.  I tend to think that

11  sometimes we are critical of the other side's

12  questions.  And sometimes, if you just listen,

13  sometimes your opposing counsel can ask a really good

14  question.  All you're trying to get is the jurors to

15  talk and open up their thoughts.  And sometimes your

16  opposing counsel can ask a question that reveals a

17  lot that you're grateful that they got them to

18  talking.  So all I would say to you is be generous

19  with each other.  It's voir dire.  And see if you can

20  live with things rather than trying to hone them.

21          And the same way with the other side.  If

22  people are making suggestions, see if you can live

23  with those.  A lot of times a word or two tinkering

24  can satisfy the other side, and get you through it,

25  and get your question in, rather than risk me looking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2073

```
 1    at it and crossing the whole thing out.

 2              So those are just some words of advice.

 3              Do I have any other words of advice,

 4    Ms. Wild, that I usually give on questionnaires?

 5    That's about it.

 6              THE CLERK:  I don't think so.

 7              THE COURT:  All right.  So let me give you

 8    the dates again.  Motions filed, if the Government

 9    wants to file any response, it needs to do it before

10    the 20th, so I can look at it and be ready for the

11    20th.  We'll have a hearing on the 20th to resolve

12    any further issues or objections the Government might

13    have or the parties might have.

14              November 22nd, which will be that

15    Wednesday, you'll submit to the Court the final

16    version in an executable format.  We will prepare the

17    cover letter from the jury technician to accompany,

18    to give some detail about the case.

19              And on November 27, 2017, the SJQ, special

20    jury questionnaire, will be mailed out.

21              December 25 -- or 26, 2017, the prospective

22    jurors will return, by that date, the SJQ.

23              By January the 2nd, 2018, the VDQ and the

24    SJQ will be available to counsel.

25              January 15, 2018, the parties' agreed for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   cause challenges will be due in writing.  And the

 2   parties' disputed for cause challenges will be due in

 3   writing.

 4           And on January 22, 2018, I will issue a

 5   ruling and order on the disputed for cause

 6   challenges.  I will issue it that day, or by that

 7   day.  And then the jury selection, jury trial, will

 8   be January 29, 2018.  Again, that's subject to

 9   Lincoln Sorrell blessing it.  It's also subject to

10   the Government taking another shot at me.  And what

11   else anybody want to say about that?  Are you

12   comfortable with that, Mr. Castle?

13           MR. CASTLE:  Your Honor, I was talking to

14   the Government over the break.  And one concern we

15   have is, I think that we have, is pretrial publicity.

16   And we haven't briefed it, but there seems to be some

17   law that might encourage individual voir dire on

18   pretrial publicity.  Since there has been a

19   significant amount of it, what I'm proposing is the

20   Court consider, after the questionnaires and after

21   people have agreed on cause challenges, that if there

22   is some ambiguity as to whether certain individuals

23   that are left have been exposed to pretrial

24   publicity, that the Court consider doing that

25   individual voir dire, so as to protect, possibly,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2075

```
 1    from poisoning the rest of the pool, either by
 2    general voir dire questions that might go to that, or
 3    discussions out in the hallway.  If we can identify
 4    those people earlier and reduce the chances of
 5    poisoning the whole venire.
 6              THE COURT:  Well, let me break that down in
 7    a couple of things.  One is, if we do individual voir
 8    dire, I think we'll be here forever.  But I hear what
 9    you're saying.
10              I will handle questions on:  Do you know
11    anything about this case?  And if somebody raises
12    their hand and think they know something about the
13    case, I will bring them to the bench.  We'll do a
14    sidebar.  And I will do all that questioning outside.
15    We'll fog everything so that they can't hear.  But
16    we'll do that at the bench.  I will not have jurors
17    telling us what they've read, because that would
18    defeat the purpose of it.  So does that address your
19    concern?
20              MR. CASTLE:  Yes, Your Honor.
21              THE COURT:  All right.  Anybody else on the
22    questionnaire?  On the venire?
23              All right.  Let's then move to --
24              MR. BLACKBURN:  Judge, before you move on,
25    may I address the Court?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2076

```
 1          THE COURT:  Certainly.
 2          MR. BLACKBURN:  I spoke to Mr. Castellano
 3    about this before the Court mentioned about a
 4    statewide questionnaire, when you were talking about
 5    jury convenience.  We were wondering about counsel
 6    convenience.  And I understand that the Court may
 7    have made some comments at one of the last hearings
 8    that didn't involve this group.  But I know the Court
 9    has a specific method of the number of days a week
10    that we will work, and whether we will, in big trials
11    like this, whether we will take Fridays off or
12    Mondays off for those issues.  And I know the Court
13    has made comments on other cases.  But I don't think
14    you've ever addressed this group, the 4268, or this
15    case, as to trial schedules, and whether we will
16    break early for those people who need to get out of
17    town.  My argument was going to be, if you don't want
18    to do a convenient statewide, to accommodate the
19    jurors who want to get home on a Friday afternoon,
20    after they've been here all week, you can always take
21    a Friday off, or something.
22          But I'm more looking now that we've passed
23    the juror convenience to lawyer convenience and staff
24    convenience.  So that we can start working on that.
25    So if the Court has that in mind, or your standard,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1   if you could let us know what that is, so that we can

2   start making arrangements for -- if we need to hire

3   more people, or we need to hire people to drive us

4   back on a Friday night, or something like that.  I

5   don't know if Uber goes all the way back to

6   Albuquerque.

7         THE COURT:  Oh, you can pay anybody.  Kind

8   of like Lloyd's of London.  They'll sell you a

9   policy.  I don't know how much it would cost you, but

10  they'll sell you one.

11        MR. BLACKBURN:  Do you think Ms. Waters

12  would approve that on our budget?

13        THE COURT:  I don't know.  Y'all got as

14  about a good feel for that as I do.

15        Well, look, it's not going to be easy.

16  It's not going to be easy.  And I don't tend to like

17  to drag things out.  I will be slightly open minded.

18  But I will tell you what I'm inclined to do is:

19  Let's just get her done.  So we're not going to be

20  taking Fridays off.  We're not going to be quitting

21  early.  I think the best way to help the jurors get

22  it done, get them back up there.  If we drag it out,

23  it will just be more painful for us.  I don't know

24  about y'all, but about the third week of a month-long

25  trial, I always wished I'd gone into coaching or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2078

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2079

1    ministry, or something else.  But that third week

2    just seems like, wow, you just wish you'd have done

3    something else with your life.  So I'll keep an open

4    mind.  But I'd be inclined, let's just get it done.

5    So if that's any guidance to you in planning where we

6    are.

7              MR. BLACKBURN:  Does that include

8    Saturdays?

9              THE COURT:  No, we won't work Saturdays.

10   We won't work Saturdays or Sundays.  We'll try to

11   keep good hours.  We're dealing with a lot of people

12   here.  It's going to be reduced for the first trial,

13   and the second trial.  I hope we'll be able to move

14   it better, shorter breaks, get in here and get

15   started and stuff like that.  But we've had a lot of

16   things to consider with so many people.  But with a

17   smaller group, I think we can keep better hours and

18   just get it done.

19             All right.  Then I think that the next

20   motion we're up to is -- I hope I haven't gotten

21   everything out of the order.

22             THE CLERK:  We're not doing 7.

23             THE COURT:  What I'm showing as next -- and

24   correct me if I'm wrong -- is Mr. Perez' motion.  I

25   can't find the motion.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2080

```
1              THE CLERK:  We're tabling that.

2              THE COURT:  We're tabling number 8?

3              THE CLERK:  Number 7.

4              THE COURT:  Did I think I did number 7?

5         All right.  Mr. Villa, do you want talk to

6    me about your Rule 16 and Brady motion?

7              MR. VILLA:  Yes, Your Honor.  If you

8    recall, before I took us into the world of statewide

9    jury pools and jury questionnaires, we asked the

10   Court to put this aside so we could talk.  I have

11   spoken to Ms. Armijo, and she has agreed to turn over

12   the items that the Government was initially

13   resisting.  And I'll let her speak, I guess there is

14   a couple of caveats.  With respect to the first issue

15   in dispute, which was a map or a layout of Southern

16   New Mexico Correctional Facility, they're willing to

17   provide us something that -- an internal document

18   that Department of Corrections may have, subject to

19   what she hears back from them.  They have had some

20   security concerns.

21             I told her what I needed, which is

22   essentially just the buildings, and the names of each

23   building.  I don't need anything else.  So, depending

24   upon whether Department of Corrections says, We need

25   a court order, we'll come back to you on that.  The
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2080

 1    Government will also agree to give me -- if we can

 2    come up with a Google Earth or Google Map picture

 3    that has the buildings, one of their folks will

 4    identify those.  So both of those things will be

 5    coming our way.  Again, with the caveat that the

 6    Department of Corrections might resist us, even on a

 7    more trimmed down schematic, if you will.

 8           The other thing that was at issue was more

 9    identifying information about the confidential human

10    source.  BM are the initials.  The Government has

11    agreed to tell me where he is.  In fact, they already

12    have told me where he is.  And he has counsel, so I

13    can speak to counsel about trying to get his client

14    interviewed -- his or her client interviewed.  So I

15    think that settles that issue.

16           And the last issue, I'm not sure if there

17    was a dispute with the phone calls of the cooperating

18    witnesses.  So the Department of Corrections has

19    provided to the Government all of the phone calls of

20    the cooperating witnesses that they have in their

21    custody.  With respect to the United States Marshals,

22    there was some mentioned this morning by Ms. Armijo

23    that maybe there was going to be some resistance.

24    But it turns out that we're going to get all of the

25    phone calls of the cooperating informants that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2081

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2082

```
 1    identified in my motion -- and I mean, cooperating

 2    defendants -- from Sandoval County Detention Center,

 3    as well as Otero County, where our newest member,

 4    Mario Rodriguez was.  And I think unless one of my

 5    colleagues corrects me, that covers all of the phone

 6    calls that we were after in this motion.

 7              THE COURT:  All right.  Anybody else have

 8    anything they want to say on this motion?

 9              Ms. Armijo, did Mr. Villa correctly state

10    your and Mr. Villa's agreement?

11              MS. ARMIJO:  Yes.

12              THE COURT:  All right.  Anything else on

13    this motion?

14              MR. VILLA:  The only thing I would add is

15    the Government -- one of the things I mentioned in my

16    reply is even the things that the Government agreed

17    to provide, they have not.  The Government has

18    informed me that those are coming in this next batch

19    that's gone on to Mr. Aoki.  So we're expecting to

20    get it within a week or two.

21              THE COURT:  So these are coming in that

22    batch?

23              MS. ARMIJO:  Your Honor, they're already

24    all queued up.  We're just waiting for -- so the

25    calls, there was an initial hard drive we received,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   218 gigabytes.  And the FBI received another set.
 2   And that was the ones that include the detention
 3   facilities.  But several defendants have made
 4   requests for NMCD calls, either through their IPRA
 5   requests, or through us.  Those calls just went to
 6   the -- got to the FBI-Albuquerque, and will be sent
 7   down to us tomorrow.  I think they're being driven
 8   here tomorrow.  So that's another hard drive.  We
 9   have to get with Mr. Aoki and see if the hard drive
10   he sent to us is able to do that as well.  That's
11   going to be another, I understand, another 400
12   gigabytes calls.  So given all that, as long as there
13   are no hard drive issues, we should be able to get
14   those out with everything else.
15           THE COURT:  All right.  Does that work for
16   you then, Mr. Villa?
17           MR. VILLA:  That does work.  And maybe this
18   brings up the issue with respect to the tablets.  If
19   for some reason, given our time crunch, there isn't
20   enough room on the tablets, the tablets have recently
21   been modified to have more room.  What I would ask
22   the Government to do is to produce those to us.
23   Because if there is 400 calls -- forget how many
24   megabytes or gigabytes -- we have to start listening
25   to them.  And then we can figure out a solution so
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2083

 1   that our clients can listen to them.  But I don't

 2   want to see, Well, the tablets don't have room, so we

 3   can't turn them over to defense counsel.

 4              THE COURT:  How much extra storage did we

 5   add on those things when we did it?

 6              MS. HARBOUR-VALDEZ:  500 gigabytes.

 7              MR. VILLA:  Thank you.

 8              So maybe it's not an issue, but if it is,

 9   we can start listening to them in our offices to get

10   ready for trial, and figure out a solution for our

11   clients.  But, you know, there are some things that

12   we've asked for that we don't get, because it's got

13   to go to Seattle first, and get put on the tablet.

14   And now that we're running out of time, that's the

15   one concern I have.

16              THE COURT:  Well, let's -- go ahead, Ms.

17   Armijo.

18              MS. ARMIJO:  I don't know what he means by

19   having us do anything first.  When I spoke to Mr.

20   Aoki, he said that he can deal with it; that we send

21   them as we get it, and he can shrink them or do

22   whatever else he does.  And that would probably add

23   more time.  And the Court has given us a deadline on

24   some things.  So we're not going to be tinkering with

25   it.  We're just going to get it, copy it, and send it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2084

 1   out.

 2          THE COURT:  Well, let's see if we have a

 3   problem.  If we have a problem, I'll be back down

 4   here right after the deadline to get that material to

 5   Mr. Aoki.  Let's see if we have a problem.  If we do,

 6   we'll raise that.

 7          MR. BLACKBURN:  Judge, we received a phone

 8   call, email from Mr. Aoki's office this afternoon, or

 9   just recently, asking us about recalling the tablets.

10   And it says that they were provided with 9,000 jail

11   calls, and it was going to take 218 gigabytes.  So

12   they're recalling the tablets.  But now I don't know

13   if there is going to -- so I just say that to the

14   Court, because it sounds like we're getting a few

15   more.

16          THE COURT:  Well, are these 218 part of the

17   400?

18          MS. ARMIJO:  No.  In addition to.  There is

19   218, and then there is 400.  Is that the correct

20   number?

21          THE COURT:  Why don't you get on the phone

22   with Mr. Aoki, they're an hour behind us here, and

23   see if -- y'all can tell him that he's going to get

24   more, is he going to be able to squeeze that down, or

25   is that --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2086

1          MS. SIRIGNANO:  Your Honor, he says the 500
2    gigabyte drives can be installed on the tablets.  And
3    that the 9,000 calls are approximately 218 gigabytes.
4    So they should fit on the upgraded drives.
5          THE COURT:  Okay.
6          MS. SIRIGNANO:  But Mr. Aoki is going to
7    need time to convert all these calls, including the
8    additional 400.  So there seems to be some extra
9    space on the drives.  But the delay will be receiving
10   the calls, converting the calls to a format that will
11   play on the tablets, then installing them, recalling
12   tablets, then installing them on the tablets, and
13   sending them back to the clients.
14         THE COURT:  Well, it sounds like the
15   Government is going to -- is in good shape to meet
16   the deadline.  So maybe we can squeeze a little time
17   out before.  Because they've got a deadline.  But
18   they're not waiting until the deadline.  They're
19   trying to get it done, maybe even today or tomorrow.
20   So maybe we're going to get -- find some time at the
21   front end rather than the back end that Mr. Aoki is
22   having to work with.  Do you see with I'm saying?
23         MS. SIRIGNANO:  Yes, Your Honor.  And we'll
24   talk with Mr. Aoki after the hearing.
25         THE COURT:  Yeah.  Tell him if there is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



 BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2086

```
 1    something I can do, I'll try to make it happen.
 2              MS. SIRIGNANO:  Thank you, Judge.
 3              THE COURT:  All right.  Anything else, Mr.
 4    Villa?
 5              MR. VILLA:  No, Judge.
 6              THE COURT:  All right.  That takes care of
 7    everything in your motion?
 8              MR. VILLA:  It does.
 9              THE COURT:  All right.  So let's go to what
10    is teed up as motion number 8.  This is also your
11    motion.  Did I get everything out of order here?
12              THE CLERK:  1253 is the next one, Dan
13    Sanchez' motion to compel.
14              (A discussion was held off the record.)
15              THE COURT:  All right.  So we'll take up
16    Document 1253.  This is Defendant Daniel Sanchez'
17    motion to compel specific discovery.  Ms. Jacks.
18              MS. JACKS:  Good afternoon, Your Honor.
19              THE COURT:  What's left on this issue you
20    need rulings on?
21              MS. JACKS:  Not a lot.  And we can just go
22    right to it.  So number C was a request for the audio
23    visual recordings of the informants during contact
24    visits with girlfriends or wives, and other family
25    members.  And these are visits in which the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    informants engaged in sexual activity in front of

2    children over a period of several hours on multiple

3    different occasions.

4            The Government has agreed -- well,

5    obviously, this is relevant to the credibility of the

6    informants, and the benefits they received because of

7    their cooperation.  What the Government is saying is

8    those videos are only going to be available for

9    review at the U.S. Attorney's Office.

10           I think they should be provided to counsel

11   for review in their office.  These are videos that

12   we're going to want to take excerpts of for various

13   motions hearing, and perhaps trial exhibits for

14   cross-examining the informants.  And that can't be

15   done in the U.S. Attorney's Office.

16           And I guess the other thing is, just as a

17   logistical matter for me, and I think for others

18   here, we're not local.  And the amount of time that

19   it takes for such a review, is substantial.

20           THE COURT:  And these are, as you said,

21   obviously relevant because that would be a violation

22   of some prison privileges?

23           MS. JACKS:  Well, for sure.  And I think

24   also because, as a benefit of cooperation, these

25   informants, who are generally only permitted to visit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2088

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2089

1   for very limited periods of time, through a glass

2   partition, using a phone, were allowed access to

3   their family members in some sort of contact

4   situation that was not monitored in real-time by

5   prison staff.  And the visits, from what I can tell,

6   went on for several hours.  That's clearly something

7   that's unusual for inmates of this -- held in this

8   type of custody.  And was clearly done after they

9   agreed to cooperate with the Government.

10          THE COURT:  So your theory is that these

11   were additional rewards for cooperating?

12          MS. JACKS:  Yes.  And I also think it goes

13   to the informants' attitudes towards cooperating and

14   towards these proceedings.  I mean, they -- as a

15   benefit of their cooperation, they were able to get

16   contact visits, which many of them immediately

17   abused, by engaging in what I think is felonious

18   criminal activity in front of children, involving sex

19   offenses.

20          THE COURT:  Well, if they were married,

21   what's the felony?

22          MS. JACKS:  Well, I think, depending on the

23   age of the children, contributing to the delinquency

24   of a minor would be at least one that I can think of

25   with respect to engaging in intercourse in front of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2089

1    children that aren't old enough to understand what

2    that is.

3            THE COURT:  Okay.

4            MS. JACKS:  Indecent exposure might be

5    another, depending on the situation.

6            THE COURT:  All right.  Anything else,

7    Ms. Jacks, on that issue?

8            MS. JACKS:  On that particular request?

9            THE COURT:  Anybody else?  I can't remember

10   on this if anybody joined your request on this one?

11   No, it was just y'all.  But does anybody else have

12   anything to say on that?  Mr. Lowry?

13           MR. LOWRY:  Your Honor -- and I just

14   briefly add to this, along with the benefits that

15   Ms. Jacks is talking about, another one that I was

16   mentioning earlier, in terms of the scope of Brady

17   and Giglio, there is a complete failure to report any

18   of this child abuse to CYFD, which would also be a

19   benefit that ran to the cooperating individuals in

20   this case.  Given that we have reason to believe,

21   based on the paper discovery that's been disclosed,

22   that there were fairly obvious sex acts going on in

23   front of very small children that went unpunished and

24   unreported.

25           THE COURT:  Okay.  Thank you, Mr. Lowry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2090

```
 1              Ms. Bhalla, did you have anything?

 2              MS. BHALLA:  I think Ms. Jacks can cover it

 3    if she needs to.

 4              THE COURT:  All right.  Anyone else want to

 5    comment on this?

 6              All right.  From the Government, are you

 7    going to handle this, Mr. Castellano?

 8              MR. CASTELLANO:  Yes, Your Honor.

 9              So in terms of benefits, they were allowed

10    contact visits with their family.  They were not

11    allowed conjugal visits.  And so clearly that was a

12    problem with their conduct.

13              In terms of investigation, and CYFD,

14    actually all of these incidents were turned over to

15    New Mexico State Police.  We took a hands-off

16    approach to the investigation.  So New Mexico State

17    Police made its own decisions about charging or not

18    charging any of that conduct.

19              So we have made -- as the rules allow, we

20    have made available the video, the visitations to

21    defense counsel.  And the reason we didn't want to

22    put it out there, or put it on the tablets, is that

23    it does involve sexual activity.  One of the

24    incidents involves heavy petting over the clothing.

25    But there are other sexual acts on the videos.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2091

 1   what we wanted to prevent was that information being

 2   disclosed.  So we've agreed to make it available for

 3   viewing at the office.

 4              THE COURT:  All right.  So we're just

 5   fighting over where this is going to be produced?

 6              MR. CASTELLANO:  Yes, Your Honor, that's

 7   correct.

 8              THE COURT:  Okay.

 9              MR. CASTELLANO:  There is no doubt that it

10   will be produced, it's just the manner in which it

11   will be produced.

12              THE COURT:  All right.  Thank you, Mr.

13   Castellano.

14              Ms. Jacks, I'll give you the last word on

15   it.

16              MS. JACKS:  Well, Ms. Bhalla was just

17   reminding me that apparently there are drug exchanges

18   occurring upon the videos as well.  And my point is,

19   as the Court noted, we're in the final push towards

20   trial.  And so what I think an efficient use of

21   defense counsel and defense team time would be would

22   be to watch these videos, and arrange to make the

23   excerpts as we're watching them, that we feel might

24   be necessary for cross-examination of these

25   informants.  And that's not something that we can do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2092

```
 1   in the U.S. Attorney's Office.
 2            THE COURT:  Well, let's say I say they
 3   should remain at the U.S. Attorney's Office rather
 4   than at the prison.  How would you, then, go about
 5   making your excerpts?  Telling the Government what
 6   you want excerpted, and them sending it to you?
 7            MS. JACKS:  I wouldn't want to do that,
 8   because I think that would reveal our strategy with
 9   respect to cross-examination.
10            I'm not asking, just so that it's clear,
11   that these videos go into the prison.  What I'm
12   asking is that these videos be released to the
13   various defense teams so that they can prepare their
14   cross-examination, as they deem appropriate, or their
15   examination of these informants during whatever
16   hearings this Court may hold on other issues such as
17   suppression.
18            THE COURT:  Well, did you give that some
19   thought, Mr. Castellano, of just making these
20   attorneys' eyes only, making a copy and sending it
21   just to counsel that want it?
22            MR. CASTELLANO:  May I have a moment, Your
23   Honor?
24            THE COURT:  You may.
25            MR. CASTELLANO:  Your Honor, the discussion
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2093

1    we're having -- let's say, for example, we put the

2    recordings on CDs or DVDs for the defense teams for

3    their eyes only.  The question then is whether any

4    redactions need to be made.  For example, at least

5    one of them has children in the room.  So would they

6    expect us to do that, or would they be willing to

7    redact any identities of children or anything else

8    for purposes of showing the video to anybody else?

9              THE COURT:  Would you be willing to redact

10   them?  If you're given a copy, redact it?

11             MS. JACKS:  Let me see if I understand.  I

12   think the issue is the identities of the children,

13   not the fact that there are children.  Because the

14   fact that there are children goes to the conduct of

15   the informants.

16             THE COURT:  If they don't want to get the

17   children in, if they just black out the face, would

18   that work for you?

19             MR. CASTELLANO:  We are talking about the

20   identities of the children, not the fact that

21   children are present.

22             THE COURT:  All right.

23             MS. JACKS:  I think that's reasonable.

24             THE COURT:  Could you do that?  All right.

25             MR. CASTELLANO:  And anything else that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204 2095

1    needs to be redacted.

2            MS. JACKS:  I guess we would have to

3    discuss that.  I haven't seen the videos, so I don't

4    know --

5            THE COURT:  What else are you thinking of?

6            MR. CASTELLANO:  Well, sexual acts,

7    including display of a penis, would be at least one

8    of those.  So the question is what will be shown and

9    to whom will it be shown?

10           THE COURT:  It seems to me you probably get

11   your full bang for the buck by just blacking out what

12   you're wanting there, right?  I mean -- and the jury

13   is going to know.  Do they need to see them having --

14   do we really need to see the penis?

15           MS. JACKS:  I haven't seen the videos.  And

16   I think it could possibly depend on the situation.

17   But I think what we could do is certainly try to use

18   our discretion.  And we're not here to offend

19   anybody.  We're here to show the degree of the

20   activity.  So I think we could use our discretion and

21   show them to the Government before we were to use

22   them.

23           THE COURT:  All right.  I'd be inclined to

24   go with the Government on that.  So I'll keep an open

25   mind, but if you can't work it out, bring it back up

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2095

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205

```
 1   with me.  But I think you made your point.  If
 2   somebody wants to say what's there, you can have them
 3   testify as to what's there.  But I'm not sure we need
 4   to actually see that.
 5          MS. JACKS:  I hear the Court's comments.
 6          THE COURT:  Okay.  So you're going to do
 7   the redactions.  The Government is going to give you
 8   the videos, but you'll do your own redactions, be for
 9   attorneys' eyes only.
10          MS. JACKS:  Okay.  And I'm understanding
11   that that's each defense team will be given access?
12          MR. CASTELLANO:  Yes, in the Molina case.
13          THE COURT:  Are these just Molina?  These
14   inmates just relevant to the Molina case?
15          MS. JACKS:  I don't think so.  But I think
16   that would a question for the Government to answer.
17          MS. SIRIGNANO:  Your Honor, I would object.
18   I believe that all defendants should get copies of
19   this.
20          THE COURT:  Let me, first of all, hear from
21   Mr. Castellano.  What would be the reason of limiting
22   it to the Molina homicide?
23          MR. CASTELLANO:  Well, this would be Giglio
24   as to those witnesses in the case, which currently is
25   the Molina murder trial.  And that would include
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2097

1    Christopher Garcia.  He's part of that trial.  And if

2    they were called in another trial, then we would also

3    disclose that in the other case.

4            So, basically, when it becomes Giglio as to

5    any of those people being witnesses, we would

6    disclose that.

7            THE COURT:  Let me think this through.  We

8    a minute ago had a proposal on the table, that the

9    Government did not want, that would set a different

10   deadline for Giglio and Brady disclosures, because

11   it's doing this for everybody throughout.  I guess

12   I'm a little reluctant to now go back on this

13   particular production only making it available to the

14   Molina people.  So it seems to me that's

15   inconsistent.  I'd be inclined just to not start

16   picking and choosing.

17           MR. CASTELLANO:  We'll just disclose it to

18   everybody.  That's fine.  We don't need to argue.

19           THE COURT:  All right.  Anything else,

20   then, on that issue, Ms. Jacks?

21           MS. JACKS:  No.  That's taken care of.

22           THE COURT:  All right.

23           MS. JACKS:  If we can move to I, which --

24   this is a request -- if the Court may recall, there

25   were several Government cooperators who apparently

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2097

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 207

1   performed some sort of reset on their tablets that

2   were provided to them pursuant to this Court --

3   pursuant to a court order -- and were able to access

4   the internet.  And this became a subject of

5   controversy earlier this year.  So at the time that

6   that happened, I think what we requested was we

7   wanted to know what informants manipulated their

8   tablets, what they did, and we wanted some sort of

9   history about whether they accessed the internet,

10  what they accessed, whether they accessed email, what

11  they accessed.

12          We haven't gotten anything as of this

13  point.  And I think originally the request from Ms.

14  Duncan was to have the tablets seized so that they

15  could be examined by experts for the defense to

16  determine that information for ourselves.

17          The Government's response is that they

18  received permission from some of the cooperators for

19  an inspection of their tablets, and is waiting for

20  the position of the remaining cooperators.

21          I have to say that the response blew my

22  mind.  They're waiting for permission from people who

23  violated this Court's order, abused the tablets and

24  accessed the internet, to get the tablet back?  It

25  seems to me that the tablet should have been seized

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2098

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

```
 1    when the person violated the court order.  I don't

 2    understand why they got it back.

 3           THE COURT:  Well, educate me a little bit

 4    about what portion of the court order it violated.

 5           MS. JACKS:  Well, I should pull the court

 6    order out.  I don't have it before me.  But I thought

 7    the tablets were to be used for viewing discovery.

 8    And I think part of the court order was the

 9    defendants were supposed to let their tablets be

10    examined to determine if there was contraband or if

11    they had somehow abused the tablets.  And it was my

12    understanding, and certainly it was explained to Mr.

13    Sanchez, that if he chose to abuse the tablet and it

14    was taken from him, that there is a chance he'd never

15    get it back.  And I think that's how we all

16    understood the deal with the tablets.

17           So I don't understand why Government

18    cooperators misused the tablets, accessed the

19    internet, they get them back before there is any sort

20    of examination made about what exactly they did.  And

21    now we're waiting their permission to see what

22    happened.

23           THE COURT:  Let me pull up the court order.

24    I think I handwrote this portion.  There was a

25    disagreement on how we were going to handle
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2099

1    government and security.  I guess given that -- to

2    the extent that these cooperators are defendants, and

3    I guess that's the definition of what we're using by

4    cooperator, it would seem to me that the same rules

5    apply.  They're still a defendant in this case.  They

6    may have pled, but I'm not sure that I can treat them

7    any differently than I can any other defendant.  So

8    let me look at what the court order said, and then

9    we'll figure out what --

10        MS. JACKS:  I think the way you treated the

11    defendants who are here was that their tablets were

12    submitted for examination to the United States

13    Marshal's Service, and returned to them once it was

14    confirmed that they hadn't abused the tablets.

15        Now, I don't know what happened with the

16    cooperators, since they did abuse the tablets, and

17    they got them back.

18        THE COURT:  Why don't we come back to this

19    one.  Let me print out that order and then let's take

20    a look at it and we'll go from there.

21        What else do you have, Ms. Jacks?

22        MS. JACKS:  I have, I think, two more.

23        J is the next one.  And I'm not the only

24    person -- I'm probably not the best person to be

25    arguing this request.  But this is a request for the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2100

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2101

1    access to the electronic surveillance devices that

2    the Government provided to its cooperators so they

3    could record jailhouse conversations with other

4    inmates, including some of the defendants.

5          And originally -- again, I think this came

6    up at the hearing where Ms. Duncan made this

7    request -- and I think it was originally represented

8    that these electronic surveillance devices did not

9    contain meta data.  Shortly after that hearing, I

10   think it was then the Government then changed their

11   position, and conceded that the devices, in fact, did

12   contain meta data.

13         But the United States continues to try to

14   keep the defense from accessing those devices and

15   examining the meta data, because they don't want --

16   they don't want the defendants to know what kind of

17   devices they are.

18         And I think, again, what we have -- and

19   this issue has been brought up by a variety of

20   motions.  I think it's addressed in Defendant Baca's

21   1264, their request number 9.  And I think it's also

22   the subject of some of the motions to suppress these

23   recorded conversations.  Because, if you listen to

24   the conversations, what you see is that the people,

25   the informants that are operating these electronic

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  surveillance devices are turning them on and off

2  during conversation as they see fit.  They're not

3  recording the entire conversation.  They're recording

4  bits and pieces that are then provided to the

5  Government.

6        What the analysis of the meta data on these

7  electronic surveillance devices would show is how

8  many times they were turned on and off; whether

9  things were deleted; whether things were edited.

10 That's the kind of information that's stored in the

11 device that needs to be examined by an expert in

12 order to make those determinations.

13       THE COURT:  Mr. Beck, I recall -- was it

14 you and I had this conversation at the hearing?

15       MR. BECK:  We did, Your Honor.

16       THE COURT:  And I think you at that time

17 didn't think that there was any meta data on there,

18 and so we decided there may not be an issue.  And you

19 were going to check it out.

20       MR. BECK:  Yes, that's right.  And we

21 checked it out.  I think we found out, either while

22 the hearing was still going on or later that week

23 that there was meta data.  I represented that to the

24 defense, and we disclosed the meta data on June 16.

25       THE COURT:  Oh, you disclosed the meta

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2102

1  data?

2          MS. JACKS:  What was disclosed is a report,

3  and it's a Government analysis of the recording

4  device.  It's my understanding -- and maybe someone

5  else who is more familiar with this issue can help me

6  out, but for the meta data to be disclosed, or for

7  the defense to make use of it in a meaningful way,

8  our expert needs to be able to examine the device.

9  We have reports of an examination conducted by the

10  FBI.  But that is not the same as the meta data, is

11  my understanding.

12          THE COURT:  Well, tell me what -- you know,

13  if you could get your hands on everything you wanted

14  on this, what is it that you're hoping it will tell

15  you?

16          MS. JACKS:  That the informants who were

17  trying to earn favors from the Government edited the

18  conversations so that they appeared to say things

19  that was not the true content of the conversation.

20          THE COURT:  Well, but are you going to be

21  able to tell from the meta data -- all it's going to

22  tell you is it was turned on and off during the

23  conversation?

24          MS. JACKS:  When it was turned on and off,

25  potentially for how long, whether segments of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2103

1    conversation that were recorded were subsequently

2    deleted before the device was downloaded by the

3    Government.

4              THE COURT:  Is the meta data that specific

5    that it can tell you that it was turned off 13

6    seconds in, stayed off five seconds, goes 13 more

7    seconds, and then turned off five?  Is it going to be

8    that specific?

9              MS. JACKS:  It's my understanding that it

10   can be.  I don't know what the electronic

11   surveillance device is.  The Government won't tell

12   us.  But I certainly have seen experts produce that

13   kind of information from electronic recording

14   devices.

15             THE COURT:  Mr. Beck, are all the devices

16   the same?

17             MR. BECK:  Your Honor, I don't know.  And I

18   don't think that I could rightly tell you in open

19   court.  As we had this discussion in the summer, when

20   you ruled that you wouldn't allow the defendants to

21   inspect these devices -- which I think was proper --

22   I don't know about these devices.  We don't know

23   about these devices, because they are means and

24   methods that law enforcement uses in ongoing

25   investigations.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2104

1          So if we're going to get into this level of

2     depth, I'm not the right person.  I don't think

3     Ms. Jacks is the right person.  I think we're going

4     to have to call experts, and the FBI people from

5     Washington, D.C. fly down here and probably meet with

6     you in camera before we do this in open court.

7          So I think Your Honor's ruling there was

8     correct.  The FBI produced the meta data that was

9     asked for.  And frankly, I think that's where things

10    stand, unless we want to go down the road of bringing

11    in bigger guns to battle this out.

12         THE COURT:  I don't -- you can correct me

13    if I'm wrong, I don't think at the time that I left

14    the hearing I knew there was meta data on there.

15         MR. BECK:  I don't think --

16         THE COURT:  I think this round of briefing

17    is new to me.  And I think, quite frankly, we were

18    kicking the can down a little bit down the road.

19    Because if we found out there wasn't meta data, it

20    probably wasn't a big issue.  But now that there is

21    meta data, it's a little larger issue.

22         Here's what I would propose:  Check with

23    your people in Washington, see if you could live with

24    this.  If you can confirm that all the audio devices

25    are of one type, could you send a letter to one of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   the counsel here -- and I'll let the defense counsel

 2   sort of pick who they think is the one that should

 3   work with the expert.  And then, if they have -- if

 4   they have the type of device -- and this would be for

 5   one attorney's eyes only and the expert, and would be

 6   subject to a confidentiality, if they knew that, can

 7   they then tell us if it's going to produce any

 8   reliable information?  In other words, if it's not

 9   going to be able to do what I'm saying it can do, or

10   suggesting it can do, that can tell you with

11   precision that there was a gap -- there was a

12   recording of 10 seconds or 10 minutes, and then there

13   was a gap of five minutes, and so we can look at a

14   transcript and we can say right here there was gap of

15   five minutes in between, then I guess I'm a little

16   bit hard pressed to think of how it could be useful

17   to the defendants.  If they have -- if they have that

18   information.  Then, if the meta data can be more

19   specific, then I guess it becomes a bigger issue.

20           MR. BECK:  I think I understand what Your

21   Honor is getting at.  And we certainly will see if we

22   can find a person to answer that question, and see if

23   they're willing to talk about that.  I think that's

24   probably as far as we could go with that, as I said,

25   without bringing in some other folks to help us out.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2106

```
 1              THE COURT:  Well, let's take it a step at a
 2    time.  I'm sensitive to the FBI's need to keep their
 3    techniques, things as confidential and possible.  But
 4    I'd like to find out if we're dealing with a real
 5    issue or a phantom issue.  I understand if it's a
 6    phantom issue, and if I can get that limited
 7    information into one counsel's hands and one expert's
 8    hands, and throw it under a confidentiality order,
 9    and they can then determine whether there is a bigger
10    issue here, then maybe we can just take it a step at
11    a time.
12              MR. BECK:  Sure.
13              THE COURT:  So I'm not denying it, but I'm
14    going to take it a step at a time.  I do think that I
15    do have to be careful here about disclosing
16    Government techniques.  This is the kind of thing
17    that has ramifications outside of this room.
18              MS. JACKS:  I think that makes sense.  And
19    I think we can work with that, Mr. Lowry?
20              MR. LOWRY:  May I be heard on this, Your
21    Honor?
22              THE COURT:  You may.
23              MR. LOWRY:  Because this overlaps with part
24    of our motion to compel.  The Court is wondering why
25    this is relevant, and I just want to put a quick fine
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2107

```
 1   point on this.
 2           Your Honor, we believe one of the
 3   Government's key witnesses in this case will be Eric
 4   Duran.  In Eric Duran's first FBI 302 on February 19,
 5   2015, he put himself out as being at the epicenter of
 6   this so-called conspiracy to murder Gregg Marcantel.
 7   And over the course of the summer of 2015, he relayed
 8   to the FBI, that's documented in other 302s, that Mr.
 9   Baca was very eager and motivated to murder Gregg
10   Marcantel.  And that was based on, frankly, on other
11   chatter that other Government informants had put into
12   the ether in the New Mexico prison facility, when Mr.
13   Baca was not even present in the facilities.
14           The reason this is material and relevant to
15   Mr. Baca's case is because when he came back to the
16   Department of Corrections, October 22nd of 2015, the
17   Government had placed Eric Duran right in the cell
18   next to him.  And it was Eric Duran's prerogative and
19   mission to record Mr. Baca about this murder.  In the
20   very first recording Duran sets up with Mr. Baca, is
21   like, wouldn't it be a great idea to kill Gregg
22   Marcantel?  And the emphatic answer was no.  And it
23   was unequivocal.
24           So this whole idea that Mr. Baca had
25   concocted this plan to murder the Secretary of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Department of Corrections was a myth.  And what we

2    need to analyze the meta data take for is to

3    demonstrate quite clearly to this jury that after

4    being told that this was a bad idea, and one that he

5    wasn't motivated and engaged in and enthusiastic

6    about participating in, to demonstrate how long, and

7    the steps Mr. Duran had to take to convince Mr. Baca

8    to join this conspiracy.  And that's relevant and

9    material to his defense under the state defense of

10   entrapment.

11        So this is not a hypothetical issue.  This

12   is a very real issue for Mr. Baca.  And we need

13   access to this meta data, which is why Ms. Duncan

14   requested it back in May.

15        THE COURT:  Let's see if we can get you

16   information, so we can see whether you get the meta

17   data, it's going to tell you that.  If it's not, then

18   I probably am not going to force them to do any more.

19   But if I can put in your hands what kind of equipment

20   this is, so you can talk to your expert, then I'll

21   have a hard issue to decide at that point.

22        MR. LOWRY:  We have no problem with a

23   protective order, Your Honor, or limit it to a single

24   forensic expert to look at the material.  The goal

25   here is not to divulge, or you know, out FBI

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    surveillance secrets.

 2            But on the flipside of that is this is

 3    relevant and material evidence to our defense.  And I

 4    believe, under Rule 16, we're entitled to that.

 5            THE COURT:  So you'd agree with me that if

 6    the meta data on this particular equipment doesn't do

 7    that for you, then it's not going to do a lot of good

 8    to start producing a lot of -- ordering the

 9    Government to do a lot more?

10            MR. LOWRY:  I wouldn't argue against that,

11    Your Honor.  I don't disagree with that.  I would

12    feel more comfortable to have our expert look at a

13    single device to make sure that that meta data isn't

14    there.  And pardon me for being paranoid, but you

15    know, I prefer to have our own independent set of

16    eyes on the device to see what is and isn't there.

17    But I don't disagree with you.  If there is nothing

18    tangible in terms of dates, times, you know, if we

19    can't assess time gaps, and you know, the lengths

20    of -- periods of time between recordings, yeah, I

21    think the issue of relevancy would fade to a certain

22    extent.  But I would prefer to have our own

23    independent expert look at that so we could have a

24    firm, solid assessment from a defense perspective

25    about what's available and what's not, and how we can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2110

```
1   effectively use that at trial.
2           THE COURT:  All right.  Thank you, Mr.
3   Lowry.
4           Ms. Sirignano?
5           MS. SIRIGNANO:  Your Honor, thank you.
6           I just wanted to point out that I have some
7   overlap as well in my Document 1270, my sealed Rule
8   16 motion, page 12, paragraph 7.  And the Court did
9   order defense and defense expert access to
10  Mr. Garcia's electronic materials and CART reports.
11  But the Government is not allowing our expert, that
12  the Court's approved, to look at Mr. Garcia's
13  electronic devices.  Part of that request also
14  includes the cellular telephones of Mr. Duran, Marvin
15  Montoya, and a few other Government cooperating
16  witnesses at this point.
17          And as Mr. Lowry stated, for the exact same
18  reason about the conspiracy involving his client,
19  it's the same cellphone that implicates my client,
20  Your Honor.  So we would request also that our expert
21  be given access, if there is information, to review
22  it, to make sure that there is nothing there that
23  could help our defense, or that there is something
24  there that could help our defense.
25          THE COURT:  Is there something different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2111

1    than the sort of incremental step I'm taking that

2    would be different for Mr. Garcia?

3            MS. SIRIGNANO:  Well, Your Honor, I just am

4    receiving conflicting information.  Because in

5    Mr. Garcia's drug case we were told by the Warden of

6    PNM, that Eric Duran's cellphone was not taken away

7    from him by the FBI or the DOC until some later time

8    which the warden could not provide when he was on the

9    stand, and that the cellphone was taken during a

10   sweep of the facility.

11           So I don't even have confirmation yet from

12   the Government whether or not that cellphone actually

13   exists to do an independent examination by our

14   defense experts to see if that data is there.

15           So that would be the first step, Your

16   Honor.  And then, if there is meta data or any other

17   cellphone data, in terms of deleting text messages --

18   there were thousands of text messages -- we presume

19   that some were deleted -- between the informant and

20   Agent Acee.  And other on and off stops and starts of

21   the recording.  It's something that we'd like to have

22   our expert review independently, Your Honor.

23           THE COURT:  All right.  Let's do this:

24   We've kind of got two different issues on the table.

25           Let's come back and try to finalize what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2112

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2113

```
 1   we're doing on the laptops or the tablets first in

 2   the morning.  I think I've got bring it to an end

 3   here for everybody to get out of here.  So that will

 4   be the first issue.

 5          If you can report anything, Mr. Beck, that

 6   would be great.  If you can't, we may just have to

 7   confirm this is what we're going to do.

 8          And then we'll take up the telephone with

 9   Mr. Garcia.  So that will be the second issue.  So be

10   thinking about that, Mr. Beck, as to where we are on

11   the phone.

12          Then, Ms. Jacks, I'll come back to you,

13   because it sounds like you've got one or two more

14   issues on your motion.

15          MS. JACKS:  Right.

16          THE COURT:  All right.  I appreciate

17   everybody's hard work.  Have a good evening.  We'll

18   start again at 9:00.  And y'all have a good evening.

19   See y'all tomorrow.

20          (The Court stood in recess.)

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on November 16, 2017.

15

16

17

18         _____
              Jennifer Bean, FAPR, RMR-RDR-CCR
19            Certified Realtime Reporter
              United States Court Reporter
20            NM CCR #94
              333 Lomas, Northwest
21            Albuquerque, New Mexico 87102
              Phone:  (505) 348-2283
22            Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4        Plaintiff,

5   VS.                        CR. NO. 15-4268 JB

6   ANGEL DELEON, et al.,

7        Defendants.

8                    VOLUME 2

9        Transcript of Motion Proceedings before
    The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
    New Mexico, commencing on November 9, 2017.

11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
    Castellano; Mr. Matthew Beck

13
    For the Defendants: Mr. Brock Benjamin, Ms. Cori
14   Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
    Mr. Robert Cooper; Mr. James Lahann; Mr. Orlando
15   Mondragon; Mr. John Granberg; Mr. Billy Blackburn;
    Ms. Amy Jacks; Mr. Richard Jewkes; Mr. Marc Lowry;
16   Ms. Amy Sirignano; Mr. Michael Davis; Ms. Carey
    Bhalla; Mr. Ryan Villa; Mr. Donovan Roberts; Ms.
17   Angela Arellanes; Mr. Jerry Walz

18
    For the Defendants (Via telephone):  Ms. Justine
19   Fox-Young

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2115

```
 1              THE COURT:  All right.  Good morning
 2   everyone.  I think we were about to get the
 3   Government's response on both the recording device
 4   and on the phone that Ms. Sirignano brought up.
 5              Before I get that response, let me say
 6   three things about the jury questionnaire, reviewing
 7   my notes real quickly here.  I did finally get to
 8   review the actual questionnaire.  I have three
 9   suggestions, is get a copy of our VDQ from the
10   clerk's office.  That will just show you the
11   questions that are being asked.  There is
12   duplications between your special form and then just
13   the standard question we send out.  I do encourage
14   you to eliminate those.  I know there is a temptation
15   to get some basic information twice.  But having
16   gotten a lot of feedback from jurors, that does drive
17   them wild when you ask them their gender three times.
18   They kind of go:  Why can't they just accept the
19   answer the first time?
20              Second thing is I ran into this problem
21   last -- what is this, we're November -- September --
22   up in Tulsa.  We did a special questionnaire.  I was
23   trying a case there for the judges up there, they all
24   had to recuse themselves.  We sent out the
25   questionnaire.  And I guess the questionnaire was so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2117

1    interesting and fascinating that they all went on and

2    did internet searches and learned a lot about the

3    case.  And that's not what we're trying to do.  So

4    your questionnaire is going to interest people.

5    They're going to go, wow, what kind of case is this?

6    And they're very likely to do the same thing.

7           So I would work with Ms. Wild or with

8    Mr. Sorrell.  The letter that goes out, maybe in

9    bold, some kind of disclaimer that says, While you're

10   reading this questionnaire, while you're filling out

11   this questionnaire, and after you fill out this

12   questionnaire, do not do any research for purposes of

13   this case on the internet.  Don't look at social

14   media.  Don't get on Google.  You know, you can track

15   the -- my jury instructions that I give in the

16   preliminary, if you look at any preliminary jury

17   instruction I give in a criminal case, I list out all

18   the things you shouldn't do as far as looking at

19   social media.  And you may want to track that and put

20   that in the cover letter.

21          Since we may not see each other again

22   before I have to start ruling on for cause

23   challenges, I encourage you to be generous to each

24   other.  You know, if the Government wants a for

25   cause, take a hard look at it.  And the same thing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    for the Government, if they're looking at the
 2    defendants' for cause.  Because it's not going to do
 3    any good for anybody, if we have 60 people in this
 4    courtroom, if we've got three people that if
 5    everybody is a little objective, they know they're
 6    not going to end up on the jury -- you can read me,
 7    I'm going to knock them off -- why are we spending
 8    time with them here in the courtroom?  So you might
 9    want to just be generous with each other.  If I'm
10    likely not to seat that person because of some
11    statement they've made, be it for the defendant or
12    for the Government, be generous with each other,
13    because it's going to waste everybody's time if we've
14    got three, four, five of those of our 60 in here, and
15    they get bumped off; then we're sitting here and we
16    have to start bringing other people up and redoing
17    things.
18            So just some comments after reading the
19    jury questionnaire that was attached to the motion.
20    I had a chance to read the motion yesterday, but I
21    hadn't had a chance to plow through the questionnaire
22    itself.
23            Mr. Castellano, you were going to tackle
24    the phones -- well, the recording devices, then the
25    phones.  The recording devices are the ones that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2118

 1    really on the table right now.

 2              MR. CASTELLANO:  Yes.  What I found out

 3    after the hearing yesterday is, when it comes to the

 4    recording devices, there is no information on the

 5    devices anymore for inspection.  So what happens is

 6    the agent checks out a device.  Basically deploys it

 7    into the field for whoever uses it.  The device only

 8    is on or off.  So there is no ability, even by the

 9    agent, to delete information from the device.  So an

10    informant or the agent can't delete.  It's either

11    recording or it's not recording.  Once the device is

12    finished, the agent returns it to the -- whoever

13    maintains the devices.  The device is downloaded, and

14    the device is redeployed into the field for use.  So

15    the information is basically deleted or recorded

16    over.  So there is no information to get from the

17    devices.

18              THE COURT:  So it's basically a -- it's not

19    really so much a recording device as a transmitting

20    device?

21              MR. CASTELLANO:  It's actually a recording

22    device.  So the information is put on for the device.

23    It records.  When the device is turned back in, the

24    information is basically input --

25              THE COURT:  So it's physically turned in,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2119

1   and then it's -- then the information is taken off?

2          MR. CASTELLANO:  Yes.  The information is

3   downloaded into the system, it's maintained in the

4   system with any information tied to it.

5          THE COURT:  I know I'm going to sound old

6   school, but you know, we used to have little

7   cassettes that we had on recording devices.  I assume

8   we don't have those.  Is it a CD?  Is it a flash

9   drive?  What is it?

10          MR. CASTELLANO:  I think it's

11   electronically input into the system.  The agents

12   don't even do --

13          THE COURT:  It's like a hard drive on these

14   devices that record on?

15          MR. CASTELLANO:  I don't know, Your Honor.

16   The agent -- like I said, the agent doesn't even get

17   the ability to download the information even.

18          THE COURT:  So they hand it to somebody and

19   they get the information off of it?

20          MR. CASTELLANO:  That's correct.  It's an

21   electronic surveillance technician who receives it,

22   and then downloads the information into the system.

23          THE COURT:  So all the devices right now

24   are, for lack of a better word, just empty, they're

25   just devices ready to go, but there is nothing on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    them?

2              MR. CASTELLANO:  That's correct, Your

3    Honor.  I do have an example of -- I'm going to play

4    for the Court now, with the Court's permission, it is

5    a recording with the meta data defense counsel is

6    asking about.  So it will show the start time, stop

7    time, and the recording itself.  So we have a better

8    idea.  Because it's kind of abstract when we just

9    talk about it.  So for the information that contains

10   meta data, the Court's going to see an example of

11   that this morning.  This is a recording --

12             THE COURT:  Okay.

13             MR. CASTELLANO:  -- regarding Rudy Perez

14   and an informant who recorded him with the body

15   recording device.  And while it's setting up, what

16   the Court should be able to see is a screen that has

17   a number of recordings.  It should be --

18             THE COURT:  Are everybody's screens up?

19   Mine is up.  Everybody's up?  All right.

20             MR. CASTELLANO:  The Court should see a

21   start time and a stop time.  And so, for example,

22   Number 1 on the screen shows a date of February 1,

23   2016, a recording length time of 8 minutes and 40

24   seconds.  I don't think we'll need to play the whole

25   thing, though, I'll play enough for the Court to get

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2121

```
 1    an idea what we talked about, when defense counsel is
 2    talking about dates and times and lengths of
 3    recording.  And this is in the discovery.
 4              THE COURT:  So when we're talking about the
 5    meta data that was produced yesterday, that's what
 6    they got is that screen right there?
 7              MR. CASTELLANO:  Yes.  On this device.
 8    This is in discovery.
 9              (Played Session #1.)
10              MR. CASTELLANO:  Your Honor, I just played
11    an excerpt for the Court.  This is actually the
12    subject of a motion to suppress, so the Court will
13    actually hear this on another date with the
14    transcript, so -- but what you can tell is the closer
15    voice is the informant and the farther voice in this
16    recording is Mr. Perez.  And you heard just the
17    beginning of the top of family business and the
18    murder of Javier Molina.  That's the subject matter
19    of that recording.  But I wanted to give the Court an
20    example of what we have here.  This was disclosed in
21    June of this year.
22              THE COURT:  Can I ask a question?  Looking
23    at this, you played the first one, right?
24              MR. CASTELLANO:  Yes, sir.
25              THE COURT:  And it went 8 minutes and 40
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2122

```
 1   seconds.  And then, if I'm looking correctly, it
 2   looks to me like there has been a six-second gap
 3   before we go to the second one; is that correct?
 4            MR. CASTELLANO:  If the time stamp is
 5   correct, yes, it looks like there is approximately a
 6   six-second gap; the recording stops; there is a
 7   six-second gap; then an 18-second recording.
 8            THE COURT:  And then between the second and
 9   third, it looks like there is -- are the first two
10   numbers -- is that hours, or is that -- that's going
11   to be minutes, isn't it?
12            MR. CASTELLANO:  I believe that's minutes.
13   So that would reflect a 19-minute gap, and then
14   another 18-minute recording.
15            THE COURT:  All right.  So the first two
16   numbers are minutes, the second or seconds, and then
17   the next are hundredths of a second?
18            MR. CASTELLANO:  I believe so, Your Honor.
19            THE COURT:  Because on the length it
20   says --
21            MR. CASTELLANO:  It may actually be hours,
22   minutes, seconds.
23            THE COURT:  It must be hours, minutes, and
24   seconds.  So then going from the second -- from the
25   first to the second, we've got a six-minute gap, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2123

 1  then from the next one we've got just hundredths of a

 2  second of a gap, right?

 3          MR. CASTELLANO:  Which numbers are you

 4  referring to?

 5          THE COURT:  Second and third, it goes from

 6  14:14:27 to 14:14:45; that's hundredths of a second,

 7  two-tenths of a second --

 8          MR. CASTELLANO:  Actually, it's 14 minutes

 9  to 33 minutes.

10          THE COURT:  Well, I was going from the

11  second to third.

12          MR. CASTELLANO:  Right.  From second to

13  third it's 14:14:27.

14          THE COURT:  Yeah.

15          MR. CASTELLANO:  And then 14:33:20.  I read

16  that as 19 minutes between the recordings.

17          THE COURT:  When you go to the start time

18  on the next line, not the end time --

19          MR. CASTELLANO:  I understand what you're

20  saying, yes.  That would be the end time.

21          THE COURT:  Okay.  We've got a couple of

22  gaps.  What causes the gaps?  What is the -- why do

23  gaps exist?

24          MR. CASTELLANO:  I don't know, Your Honor.

25  I don't know the technology.  Or if that's a start



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2125

```
 1    and stop function.  So my guess, which I think is

 2    going to be pretty close, is either there is a

 3    problem with the technology, or it's a start and stop

 4    by the person using it.

 5              THE COURT:  So the person that's got the

 6    recording device on has the ability to start and stop

 7    it?

 8              MR. CASTELLANO:  Yes, my understanding is

 9    the only thing the person can do is either have it on

10    and recording, or off.  There is no deletion or

11    anything else.

12              THE COURT:  So he or she just has an on and

13    off button?

14              MR. CASTELLANO:  Yes.

15              THE COURT:  And this is what we were

16    talking about yesterday, you're preparing transcripts

17    of these?

18              MR. CASTELLANO:  Yes, sir.  I think there

19    were 11 recordings.  There are 8 transcripts because

20    the other recordings are just a matter of seconds,

21    and so there are no transcripts for those three very

22    short recordings.

23              THE COURT:  All right.

24              MR. CASTELLANO:  Does the Court have any

25    more questions about the electronic surveillance?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2125

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 12126

1        THE COURT:  No.  I guess I'd like to see

2   what it is.  Maybe Ms. Jacks would like to inform me

3   or designate somebody else.  It seems to me that the

4   recording device is rather irrelevant.  Let me ask

5   this:  Were y'all willing to disclose the type of

6   devise this was, so they could get a prototype and

7   look at it and see if they had any thoughts about it?

8        MR. CASTELLANO:  I don't know.  We didn't

9   have a chance to check with the FBI overnight.  My

10  guess will be no.  In almost no circumstances, is my

11  understanding, these devices have actually been

12  disclosed or turned over.

13       THE COURT:  Even with a confidentiality

14  order to one attorney, and then that one expert?

15       MR. CASTELLANO:  That's my understanding,

16  Your Honor.  But if we needed to, we would call the

17  people from the FBI to explain that to the Court.

18  There are certain things we don't have the answers

19  to.

20       THE COURT:  Okay.  All right.  Well, ask,

21  and then we'll go from there.

22       MR. CASTELLANO:  We will, Your Honor.

23       THE COURT:  Okay.  Let me get the

24  defendants' thoughts on this to see what they think

25  about this.  Ms. Jacks?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2126

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2127

1          MS. JACKS:  I do want to respond.  Thank

2    you, Your Honor.

3          So I have to say I'm not an expert in

4    computers, although I was an applied math major in

5    college.

6          THE COURT:  And you stayed at the Holiday

7    Inn Express.

8          MS. JACKS:  Some 25 years ago, I actually

9    was taught how to program a computer using machine

10   language.

11         But I just want to use some common sense to

12   respond to what Mr. Castellano just said, because

13   what he's showing you is basically a software

14   interface that shows the files that they chose to --

15   that were saved on this electronic recording device.

16   And it's similar to a software interface on your

17   computer.  And I think -- I'm sure the Court has had

18   cases where computer experts have testified.  When

19   you delete a file from, say, your word processing

20   program in your computer, you can't access it from

21   that word progressing program.  But that doesn't mean

22   the file is gone from the hard drive of the computer.

23   The electronic remnant of that file remains.  And

24   unless you --

25         THE COURT:  Well, they may not remain on



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2127

1    this device.  They may be somewhere in Washington or

2    at the FBI headquarters, right?  They may not be on

3    this device.

4           MS. JACKS:  Well, I don't know what was

5    done to this device.  And I do know that, like, for

6    example, if you have a computer where you deleted a

7    file, it still has the electronic data from that file

8    on it until it's either completely wiped or until

9    it's written over.  And that's what a forensic

10   computer expert can do.  They can see what's on the

11   hard drive or on the electronic -- whatever the

12   electronic data is that you can't access through a

13   software program.

14          So what Mr. Castellano is showing you is

15   what the software program can access.  But that

16   doesn't mean that there weren't other files that were

17   deleted before those files were downloaded.

18          So I think that -- I guess, what I think

19   would be helpful, or what I think the defense would

20   prefer is to be able to have an expert have access to

21   a similar type device, so that we could, in fact,

22   verify the representations that were just made by Mr.

23   Castellano.

24          And if, in fact, these devices are wiped,

25   when the Government was fully aware that the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2128

1    recordings were started and stopped during these

2    various conversations, that may be an issue that is

3    akin to a Trombetta-Youngblood-type motion for

4    intentional destruction of exculpatory evidence.

5          But I think first we have to be able to

6    understand what electronic data, if any, did the

7    Government destroy by wiping the devices or not

8    preserving the devices for inspection by the defense.

9          THE COURT:  Well, do this -- I'm going to

10   push Mr. Castellano to push the Government, the FBI

11   for as much information about the devices as I can

12   probably squeeze out of them -- send them a letter

13   saying these are the questions you want Mr.

14   Castellano to ask the FBI; copy me in, and let's file

15   it.  And let's see what the answers are.

16          I'm sensitive to the FBI's needs to keep

17   their recording devices secret.  But I also think

18   you're getting very close to having enough

19   information to do whatever you want to do here.  I

20   mean, you've got gaps.  They're saying they don't

21   know the gaps, whether they were stop and start,

22   and -- or whether there was a malfunction.  But there

23   is clearly gaps.  So you're going to --

24          MS. JACKS:  Gaps are good.  Deleted

25   conversations would be even better.  And I do want to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2130

1    say, the Government makes this big deal about we

2    can't tell a defense lawyer what the device was, but

3    they gave these devices to people that have been

4    convicted of murder and all sorts of other heinous

5    offenses to possess in their cell, in prison, with

6    absolutely no supervision.  So I'm not really

7    understanding what is lost by allowing a defense

8    lawyer and a defense expert to have access to the

9    device to try to determine what has been deleted from

10   it.

11           And I have one other just point, which is

12   normally in a situation like this, where you're

13   giving somebody who has a lack of trustworthiness the

14   ability to collect and gather evidence for a criminal

15   prosecution, the Government would be monitoring that,

16   either in real-time, or very shortly thereafter.  I

17   think the fact that the Government gave these

18   informants a device to possess in their cell for some

19   lengthy period of time, where they're free to figure

20   out and do whatever they want to it, you know, to the

21   extent that they now don't want us to be able to

22   examine the device or understand what could have been

23   done, I mean, there was an easy way to make sure that

24   these informants used the device in a proper,

25   reliable manner.  And there is absolutely no effort

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2130

```
 1    made to do that here.
 2              THE COURT:  Well, I'm going to push them
 3    for more information until I fully understand what it
 4    is that's -- you know, where their problem point is.
 5    I don't quite understand it, because I do think what
 6    you saying has some force.  They've got a bunch of
 7    these recording devices running around in prison.
 8    What is so secret now that we're in a court that I
 9    can't have one lawyer and one expert look at it?  But
10    let's push them and see what their problem point is.
11    I'm not quite convinced that, A, it's going to
12    produce anything, other than what you've got.  I'm
13    also not convinced that it's the most secretive thing
14    in the world.  So I'm still trying to get my legs on
15    the ground with this issue.
16              MS. JACKS:  Okay.  We'll put the letter
17    together.
18              THE COURT:  Okay.
19              MS. JACKS:  So do you want to move to the
20    next item?
21              THE COURT:  Well, Mr. Castellano is back on
22    his feet.  Let me hear what he has to say.
23              MR. CASTELLANO:  I was just waiting for
24    Ms. Jacks to finish, and I'll just wait for the
25    letter.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2131

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2132

```
 1                    THE COURT:  All right.  Well, let's hear

 2      what you have then on the -- I'll come back to you in

 3      a moment, Mr. Villa.  But why don't we take up the

 4      phone at this point.

 5                    MR. VILLA:  Your Honor, this had to do with

 6      the recording device.

 7                    THE COURT:  I know.  Let me get the phone

 8      out.  And go ahead, Mr. Castellano, and let's talk

 9      about the phone.

10                    MR. CASTELLANO:  Your Honor, which phone

11      are you talking about?

12                    THE COURT:  This is the one that Ms.

13      Sirignano brought up at the end of the day yesterday.

14      I guess she's thinking the phones that were used had

15      the same issues.

16                    MR. CASTELLANO:  Let me check on that.  I

17      did not check on that.  My understanding is the

18      phones we had were going to be turned over.

19                    MS. ARMIJO:  Your Honor, I believe the FBI

20      has some of the phones here.  We're turning the phone

21      over to them.  There is only one phone that we no

22      longer have.  With the exception --

23                    THE COURT:  Tell me it's not Ms.

24      Sirignano's phone.

25                    MS. ARMIJO:  It would be one that she's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2132

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2133

```
 1    interested in.
 2              THE COURT:  It's always that way, isn't it?
 3    We've got a bunch of phones that nobody is interested
 4    in.
 5              All right.  Anything else, then, Mr.
 6    Castellano?
 7              MR. CASTELLANO:  Yes, Your Honor.  Just to
 8    put the recording in context.  I know there is an
 9    allegation of unsupervised recording.  But it's
10    important to understand that this was done in a
11    prison setting.  It was dangerous for the CI to have
12    any kind of device which might record people.  And
13    the FBI couldn't go to the prison every day, go visit
14    somebody in prison, and then leave the prison setting
15    without people noticing or talking about it.  So we
16    just have to consider this in the proper context, in
17    terms of it being an undercover operation where even
18    many of the prison officials didn't know that device
19    was in a prison.  So it's not as easy as just saying
20    this is something we could supervise on a regular
21    basis.
22              THE COURT:  Well, understanding that, I
23    guess maybe I simply don't know enough about what I'm
24    talking about.  But a lot of times in these wiretaps,
25    we're transmitting the information to some, you know,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2133

1    to a van or something, recording that.  Why is that

2    not done in the prison context?  Why is it not being

3    automatically transmitted, rather than recorded there

4    and then later downloaded?

5              MR. CASTELLANO:  I don't know.  I know

6    that, of course, in a prison setting you have a great

7    deal of concrete.  And it could be anywhere in the

8    facility.  And you would still have to have somewhere

9    where you could receive a signal.  So that alone

10   could create attention with somebody camped outside

11   the prison, assuming you could get a signal from in

12   the prison outside of the prison.

13             THE COURT:  How do you respond to

14   Ms. Jacks' point that, you know, here we are in a

15   court of law, and I'm pushing you to give it to one

16   lawyer and one expert under attorneys' eyes, expert

17   eyes only, so they can figure out what the model is,

18   and you're resisting that, and yet, you had four or

19   five of these devices you gave to felons in a prison

20   setting?  How do you respond to that?

21             MR. CASTELLANO:  Well, the first one is

22   that it assumes that the people are unsavory.  And,

23   obviously, they do have prior convictions that put

24   them in prison in the first place.  But it doesn't

25   mean that they can't keep law enforcement secrets,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2134

1    and they're working on behalf of law enforcement.

2    And if they violate those secrets, there could be

3    other consequences.

4              THE COURT:  Isn't that the same way with

5    the one attorney and one expert that I've got here?

6    If they misbehave, I have a lot of powers to --

7              MR. CASTELLANO:  You have a lot of powers,

8    but there is a lot of damage done.  You can't unring

9    the bell in a situation like that.  And the same

10   thing occurs with an informant.  But an informant

11   isn't in a position to tell anybody about the devices

12   in prison.  That's only something that gets the

13   prisoner killed.

14             THE COURT:  Well, I'll listen, but it

15   sounds weak to me.  That sounds like a weak argument,

16   that I've got six guys and felons in a prison running

17   around with a recording device, but we can't have a

18   member of the bar that's subject to the powers of

19   this Court at least know the name so they can go out

20   and do their own research.

21             MR. CASTELLANO:  I understand, Your Honor.

22   I mean, as this gets closer, my guess is that someone

23   from the FBI who litigates this on a regular basis

24   and has better explanations for the Court will be

25   here.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Okay.

2          MR. CASTELLANO:  Related to -- I think that

3    takes up to the tablets, if we're finished with the

4    ELSUR devices.

5          So to clarify, the cooperators do not have

6    the tablets.  They are not in their possession,

7    they've been seized.  And pursuant to the Court's

8    protective order related to the tablets, the only

9    thing that could happen was the -- if it's a belief

10   that the tablet was tampered with, the Warden had the

11   ability to seize the tablets, and only then check to

12   see whether or not the tablet was tampered with or

13   not.  That's as far as I recall the order going.

14         So we're a step removed from that in terms

15   of getting the forensic analysis done.  And what I

16   can tell the Court is that not everybody to this date

17   has agreed to forensic analysis of their tablets.  So

18   that means we probably need a court order to get past

19   that.  Because just like all the defendants in this

20   room, there may be privileged information on the

21   tablets, there may be things in there which we're not

22   supposed to be seeing.

23         And so with that in place, without a court

24   order, I don't know what we have to override a lack

25   of consent.  Because the order only allows us to --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2136

```
 1   or even the Warden to either know that it's been

 2   tampered with or that it hasn't been tampered with.

 3   There is no indication that this gives us permission

 4   to do a forensic analysis of the tablet.

 5         THE COURT:  So all the cooperators no

 6   longer have tablets?

 7         MR. CASTELLANO:  I can tell you that Mr.

 8   Montoya, Jerry Montoya does, because his tablet was

 9   cleared, and there was no indication of tampering.

10   So his has been returned.  The others have not been

11   returned, and I believe are possibly in the marshal's

12   custody in Albuquerque.  So they have not had access

13   to their tablets since that time.  And we did that so

14   that they could be preserved for analysis.

15         I can tell you that Timothy Martinez

16   agreed.  Yesterday Ruben Hernandez agreed.  Some of

17   the others are still outstanding.  Mr. Martinez, Roy

18   Martinez, doesn't have his tablet either, and he has

19   agreed.  So we have at least three people at this

20   point who agreed to forensic analysis.

21         THE COURT:  How many total do we have?

22         MR. CASTELLANO:  Ben Clark does not have

23   his tablet, and he has not agreed yet.  I think his

24   attorney may be here.  I haven't seen him, but --

25         MS. ARMIJO:  He's here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2137

```
 1              MR. CASTELLANO:  He's here.

 2              So Benjamin Clark has not agreed.  Jerry

 3      Armenta; I have not heard back on Jerry Armenta yet.

 4              THE COURT:  There is a total of how many

 5      cooperators with laptops or tablets that we're

 6      talking about?  Six?

 7              MR. CASTELLANO:  Possibly 11.  But there

 8      are certain ones we're pretty sure we won't have

 9      problems.  We don't think we'll have a problem with

10      Gerald Archuleta's or Robert Martinez'.  Leonard

11      Lujan, and the other ones we'll have to figure out.

12              So really what we need now is a new

13      protocol.  Because we don't know what happened to the

14      computers, we don't have probable cause to ask the

15      Court for a warrant to search them.  We just know

16      they may or may not have been tampered with, but not

17      there was evidence of crime.  So what we need is a

18      mechanism, if we don't have consent, to access the

19      computers for analysis.

20              THE COURT:  Well, do you think I've got the

21      power to just issue an order?

22              MR. CASTELLANO:  Your order would

23      potentially have to overcome the privilege for anyone

24      who asserts privilege.

25              THE COURT:  Is there any way that these can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2138

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25

1   be reviewed for tampering without looking at

2   information that would be privileged?

3          MR. CASTELLANO:  In theory, yes.  The way

4   it's supposed to work is that when this tablet is

5   going to be inspected just for tampering, the inmate

6   gives the password to the person inspecting.  They

7   turn on the tablet.  If it looks like the tablet is

8   in working order, and otherwise looks like it's

9   supposed to, that should be an indication that there

10  is no tampering.  For someone else whose computer

11  doesn't have any information on it, that should tell

12  us that there has been tampering.

13         THE COURT:  What do you suggest?  Do you

14  suggest you prepare an order and we give it to

15  everybody and see who is going to object and who is

16  not?

17         MR. CASTELLANO:  I think so, Your Honor.  I

18  think we could do that short of a hearing, because

19  otherwise, what we would need to do is have some sort

20  of status conference, where we have each of the

21  attorneys come in and state what objections they

22  have.

23         THE COURT:  If you have an order and

24  everybody signed off on it, and then that will

25  identify the people that we probably then need to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2139

```
 1   bring back for the hearing?

 2           MR. CASTELLANO:  Yes, sir, I think we could

 3   do that.  If we do that, it would probably save us a

 4   hearing, because we'll have the answers at that

 5   point.  And then we have to figure out what happens

 6   for those who say no.

 7           THE COURT:  Okay.  All right.  Well, let's

 8   proceed that way, and we'll take it a step at a time.

 9           MR. CASTELLANO:  And for those who have

10   given us consent, we will work on moving forward with

11   the analysis, and then just focus on those who may

12   still be objecting.

13           THE COURT:  With the what analysis?

14           MR. CASTELLANO:  Moving forward with the

15   analysis.

16           THE COURT:  The analysis, okay.

17           All right.  Anything else, Mr. Castellano?

18           MR. CASTELLANO:  No, sir.

19           THE COURT:  All right.  Thank you, Mr.

20   Castellano.

21           All right.  Let's go back then to the

22   recording devices.  Mr. Lowry, did you want to speak

23   on the recording devices?

24           MR. LOWRY:  Your Honor, no.  The Court

25   actually hit the nail on the head with my concerns.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2140

```
 1    It just seems rather odd to me that the Government
 2    was more than willing to share these devices with
 3    convicted felons, and it has a problem sharing them
 4    with officers of the Court.  The Government just got
 5    up and relayed that these individuals were capable of
 6    keeping Government secrets.  That's a bit ironic to
 7    me, because one of the first recorded conversations
 8    that Eric Duran had with his girlfriend disclosed the
 9    fact that he was an informant, and they had a
10    contract, that he would keep that secret.  So I think
11    that's a pretty flimsy argument.  But the Court
12    recognized that.  That's all, Your Honor.
13              THE COURT:  All right.  We'll push them.
14    They haven't yet convinced me that we shouldn't get
15    this limited disclosure.  But I'll keep listening.
16              Mr. Villa, I think you were up next.
17              MR. VILLA:  Judge, I just wanted to comment
18    on the recordings.  So at the May 10th hearing, we
19    argued motion 1037, Ms. Fox-Young did, and Ms. Duncan
20    argued Doc 1037.  And both of those were asking for
21    meta data, as well as inspection of the very
22    recordings that Mr. Castellano just played for you.
23    And some of the things that the Court did order gives
24    us a little more insight on what was going on.
25              So a couple things.  We got to examine the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2141

 1   cells where this took place, at PNM.  And if I could

 2   sort of paint a picture.  You've got a very firm,

 3   concrete bed.  And underneath that bed is a vent.

 4   And the conversations that were taking place between

 5   Mr. Cordova and Mr. Perez were through these vents,

 6   because that's the only way they could hear each

 7   other.

 8          And it's our understanding from the

 9   Government that it's a small recording device.  I've

10   got three or four of them at my house -- or, excuse

11   me, at my office -- you just turn it on and turn it

12   off.  And I don't necessarily want to play all those

13   recordings for you, but when you listen to them, it

14   becomes very clear that they were turned off and on.

15          And we understand, I think from the

16   Government, that Agent Acee was one of the folks that

17   was helping handle Mr. Cordova during this period of

18   time.  It was not the type of recording device that

19   you traditionally think of, where there is a wire and

20   the agents can listen to it and kind of hear what's

21   going on.

22          And one simple solution is ask Agent Acee,

23   ask Mr. Cordova:  What did you do?  What sort of

24   device was it?  Were you turning it on and off?  Was

25   it malfunctioning?  Did you delete any recordings

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2142

1   that you made?  I mean, I think that's an easy step

2   for the Government to make.

3           The Court in the May 10th hearing said that

4   it was inclined -- you didn't order the meta data,

5   because Mr. Beck represented that he could produce

6   it.  We attached to our motion an affidavit from our

7   audio expert that said he would need to examine the

8   device in order to determine its functioning, and

9   that sort of thing.

10          So I think that there are ways that the

11  Government can respond to some of this information

12  for us.

13          THE COURT:  Stand right there.  Let me ask

14  Mr. Castellano if he knows the answer to this.  If

15  the meta data -- let me see if I understand what I'm

16  trying to ask.  If the information -- if there is

17  nothing on the recording device, is there something

18  somewhere that tells us whether the information in

19  the gaps, whether, A, there was ever a recording of

20  that device -- of that information, and if so, what

21  it is?

22          MR. CASTELLANO:  I don't know, Your Honor.

23  There are technicians who work with these devices,

24  issue them, manage them.  They would probably know.

25  Or, like I said, we'll probably have someone from the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2143

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32

```
 1    FBI here to answer those questions, if we need to.
 2              THE COURT:  Ms. Jacks, try to put my
 3    question, if you understand it -- what I'm asking is
 4    is there somewhere -- is there somewhere -- if it's
 5    not on the recording device now, and if it's not in
 6    the meta data that's being produced, is there
 7    somewhere information that shows that, A, those gaps
 8    were recorded, and if that information is still
 9    available?  So I'd like to know that for my own
10    benefit.  That may be what you were going to ask,
11    too.  But I'd like to know -- get the FBI's answer on
12    that as well.
13              MS. JACKS:  We'll put that in the letter.
14              THE COURT:  All right.
15              Mr. Villa, anything else?
16              MR. VILLA:  That's all, Your Honor.
17              THE COURT:  All right.  Anybody else have
18    anything else they want to say on what I'm calling
19    motion number 8; it's the electronic devices?
20    Anything else?
21              All right.  I did review the protective
22    order, and I'm quite willing to go over it.  We've
23    got two big paragraphs on this.  One is the paragraph
24    4, which was the correction officer asking the
25    attorney to unlock the defendant's computer, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2144

 1   briefly conduct a visual examination of the computer

 2   in the presence of the attorney.  I'm assuming that's

 3   not the provision that we're operating under here.

 4   Because then the one I handwrote was "at any other

 5   time correction officials may periodically ask the

 6   defendant to unlock the computers and visually scan

 7   the devices."  But, again, it doesn't seem that that

 8   one probably is going to address our situation

 9   either.

10          So I do think that maybe this one is going

11   to require some other order to do what we're trying

12   to do here.

13          MS. JACKS:  Your Honor, I did have a chance

14   to review that, and I thought perhaps it fell within

15   the language in paragraph 4, which talks about -- it

16   starts, "If a cursory inspection of a computer

17   provides cause to believe the computer contains

18   contraband or is damaged, or if the Government

19   otherwise has cause to believe the computer contains

20   contraband or is damaged," which would be the case

21   here because they had information that the informants

22   were emailing.

23          THE COURT:  Well, if I'm looking at the

24   sentence you're looking at, it says, "A correction

25   officer may seize the computer."  It looks like that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2145

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32

 1    the point, right?  If I understand what Mr.

 2    Castellano is saying, they're all seized.

 3              MS. JACKS:  I'm not understanding that.

 4              MR. CASTELLANO:  That's correct, Your

 5    Honor.

 6              THE COURT:  There are no cooperators that

 7    have their devices.

 8              MS. JACKS:  Can I just ask when that

 9    occurred?

10              MR. CASTELLANO:  I don't remember.  It's

11    been at various times.  I don't have the exact dates,

12    because they were at different facilities at

13    different times.  I did say that Jerry Montoya is the

14    one who has his returned because it was clear --

15              THE COURT:  Okay.  That's right.

16              MR. CASTELLANO:  So one person has his

17    after it was cleared.

18              THE COURT:  All right.  So Jerry Montoya

19    has his?

20              MS. JACKS:  I guess I have information

21    that, at least as of yesterday, other informants have

22    theirs.

23              THE COURT:  Well, y'all can talk and see if

24    you can exchange information.  Mr. Castellano is

25    saying Jerry Montoya's was seized.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2146

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2147

```
 1                 MR. CASTELLANO:  If you can give us the
 2    names, Your Honor.  It's not a secret.
 3                 MR. BENJAMIN:  I understand Lujan has his.
 4                 MR. CASTELLANO:  Like I say, give us the
 5    names.  Mr. Lujan's -- my understanding, he doesn't
 6    use his.  It's damaged and he doesn't use it.
 7                 THE COURT:  Help me out.  Tell me what --
 8                 MS. JACKS:  Here's the thing, Your Honor:
 9    Once the tablets were seized, because people were
10    accessing the internet or had reset them or had
11    broken them or had shown them to someone that they
12    shouldn't have shown them to, it seems like the next
13    part of this protective order should have kicked in.
14    So that the corrections officer seizes it, and then
15    what this order says is that it has to be turned off.
16    "If any computer is seized in this manner, it shall
17    be taken directly to the Warden of the institution
18    and placed in" --
19                 THE COURT:  Which sentence are you looking
20    at?
21                 MS. JACKS:  The next sentence.
22                 THE COURT:  Just count how many lines down
23    from the top.  You're on page 3?
24                 MS. JACKS:  I'm on page 3, ninth line down
25    starting with, "If any computer is seized in this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2147

 1   manner, it shall be taken directly to the Warden of

 2   the institution and placed in a secure, locked area,

 3   accessible only to the Warden until further order of

 4   the Court."

 5           If they've been seized, and then

 6   provided -- or given back to these informants without

 7   some further order of the Court, the Government

 8   hasn't followed the protective order.

 9           THE COURT:  Well, I don't know.  I think

10   that's stretching this whole paragraph.  This is that

11   cursory inspection of a computer.  And this was

12   largely done, I think, for the protection of the

13   defendants; that we didn't have, quite frankly, Mr.

14   Acee seizing computers out there and looking at them.

15   I think it was for the purpose of protecting the

16   defendants.  So I'm a little bit concerned about

17   trying to stretch this paragraph, this sentence, into

18   the current situation.

19           MS. JACKS:  I don't want to push the Court

20   into a place where you're uncomfortable.  But I would

21   just point out that this does contemplate the cursory

22   inspection.  But it also seems to me that the

23   language contemplates -- the language -- six lines

24   down, it says, "If a cursory inspection provides

25   cause to believe the computer contains contraband or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2148

```
 1   is damaged" -- and then there is an or -- "or if the
 2   Government otherwise has cause to believe the
 3   computer contains contraband or is damaged."  So I
 4   think that encompasses a situation where the
 5   Government has information from something other than
 6   a cursory inspection.
 7           In this instance, what the Government had
 8   was informants emailing the case agent.  That was the
 9   scenario.  So I think it does cover the situation.
10           THE COURT:  But isn't the whole purpose of
11   this to protect the defendants?  I mean, you're
12   trying to use this to assert your rights for your
13   defendant to get computers that don't belong to you.
14   I mean, this was designed to protect your client from
15   having the Government just seize the computers and
16   get to the information or look at it.  We were trying
17   to --
18           MS. JACKS:  I think that's fair.  I don't
19   think anybody, when this was written, thought that
20   somebody would actually reset the computer and access
21   the internet through a McDonald's wireless
22   connection.
23           But I do think that was an abuse of the
24   tablets, as was contemplated by this order.  And so
25   I'm stunned that people that did that got them back.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2149

```
 1                But the other thing that I guess I want to
 2      point out, just as part of this discussion is there
 3      seems to be this idea that the Government needs to
 4      ask permission from people who have abused the
 5      tablets, to look at the tablets and determine the
 6      scope of the abuse and what they did.  And I want to
 7      just point out, the tablets were provided to the
 8      defendants to read Government discovery.  So the
 9      tablets do not have the ability, or at least if
10      they're used properly, do not have the ability to
11      contain attorney-client privileged information.  And
12      if someone abused the tablets, accessed the internet
13      and emailed their attorney, I don't see how that
14      could be a privileged conversation or a privileged
15      communication because it's directly in violation of
16      the way the tablets were given to the defendants and
17      the order that encompassed that.  So --
18                MR. CASTELLANO:  Your Honor --
19                MS. JACKS:  -- my guess is that when they
20      accessed the internet, they weren't communicating
21      with their lawyers.
22                THE COURT:  But the problem is we don't
23      know if any of these -- we can't identify which one
24      of these did it.  So I mean, there is no probable
25      cause just to go seize somebody's computer.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2150

```
 1              MS. JACKS:  You mean we can't identify

 2    which informants accessed the internet?  I think

 3    that's incorrect.

 4              THE COURT:  Who is it?

 5              MS. JACKS:  It certainly hasn't been

 6    disclosed directly to us, but --

 7              THE COURT:  Well, I mean, you're saying --

 8              MS. JACKS:  Well, I think the Government

 9    knows, because they got emails from them.

10              THE COURT:  Mr. Castellano is saying --

11              MS. JACKS:  They told on each other.

12              THE COURT:  Mr. Castellano just said he

13    doesn't have probable cause to even ask for a

14    warrant.

15              MR. CASTELLANO:  Right.

16              THE COURT:  I want to ask Ms. Jacks.  You

17    tell me why you think they got probable cause to

18    seize somebody's computer.

19              MS. JACKS:  Because it's been disclosed to

20    us that --

21              THE COURT:  Well, then tell me the names.

22              MS. JACKS:  They haven't disclosed the

23    names.  What they disclosed to me is --

24              THE COURT:  Wait a minute.  I want to ask

25    the questions.  What have they disclosed?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. JACKS:  I'll be as specific as I can --

 2              THE COURT:  No.  Answer my question.

 3              MS. JACKS:  I will.

 4              THE COURT:  What have they disclosed?

 5              MS. JACKS:  That there were informants that

 6    were --

 7              THE COURT:  I know that.

 8              MS. JACKS:  -- housed together --

 9              THE COURT:  All right.

10              MS. JACKS:  -- in a jail --

11              THE COURT:  You tell me the name of the

12    informant then.

13              MS. JACKS:  I don't believe they disclosed

14    the names.

15              THE COURT:  All right.  Mr. Castellano, let

16    me hear from you.

17              MR. CASTELLANO:  Your Honor, I'm not quite

18    sure why we're having this discussion.  Defense

19    counsel recalls it took us one or two months to get

20    these protective orders in place for the defendants'

21    protection.  And the whole purpose was to remove

22    these tablets from them if there was any indication

23    of tampering.  So we're all on the same page here.

24    It doesn't matter if it was contraband or it's

25    tampered with in some way.  All the order tells us is
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2152

```
 1   that those things can be seized.  It doesn't tell us
 2   we can just search them.  And the defense fought us
 3   hard on the ability to search them.  They put
 4   protocols in place at their request, that we wouldn't
 5   search these except in certain circumstances.  And
 6   that was only to allow inspection for the purpose of
 7   figuring out whether there is tampering.  So I don't
 8   even know why we're having this discussion.  I've
 9   already asked the Court, the Court's agreed that
10   we're going to have an order to get this done.
11            I think we're just wasting time at this
12   point.  Because what Ms. Jacks wants, and what she's
13   going to get is the Court's order.  So this whole
14   thing about the protective order, you know, like I
15   said, we're wasting time.  We spent two months on
16   this, trying to get it in place for their protection,
17   as the Court stated.  It's not for us to be able to
18   just view them just because we think there is
19   tampering.  That doesn't give us cause to do a
20   forensic analysis.
21            So I'm ready for your order.  And once that
22   happens, we'll move forward.
23            THE COURT:  All right.  Thank you, Mr.
24   Castellano.
25            Anything further on your motion, Ms. Jacks?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2153

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2154

```
 1              MS. JACKS:  I do.  And I know the Court is
 2    frustrated with my response.  But I would like an
 3    opportunity to just tell you what we know so that you
 4    can -- that you can consider it.  I mean, the fact is
 5    that a lot of things aren't forthcoming from the
 6    Government, in terms of this misconduct.  And so we
 7    know just sort of a smattering.  And if I could have
 8    two minutes to explain it to you, I'd like to do
 9    that.
10              THE COURT:  Okay.
11              MS. JACKS:  So what I believe we know is
12    that there were informants housed in a jail facility
13    that was near either a Walmart or a McDonald's.  They
14    were housed in the same cell.  The cell had a window
15    which allowed them to access the free internet at
16    either the Walmart or the McDonald's.  And that the
17    informants through some -- these informants that were
18    housed together, through some ingenuity, figured out
19    how to reset the tablets, access the internet, and
20    set up emails, and I believe emailed the case agent.
21              The other thing that I believe we know from
22    the discovery is that there was an additional
23    informant or informants that was not housed in the
24    cell with a window.  And that informant wanted to be
25    moved to the cell or a cell with a window so he, too,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2154

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 41

```
 1    could access the internet.  And when he wasn't moved,

 2    then that informant told the Government that the

 3    other informants were accessing the internet.

 4            So that is the scenario that I think has

 5    been spelled out to us in discovery, without

 6    providing us the names of the people who did this.

 7            THE COURT:  And why do you think the

 8    Government knows the names right now?

 9            MS. JACKS:  Well, because then they -- my

10    understanding is then they investigated that

11    situation.  And I think the Government knows because

12    the case agent received emails.

13            THE COURT:  Mr. Castellano, do you know the

14    names?

15            MR. CASTELLANO:  Yes -- I don't remember

16    which ones, but yes, people told Agent Acee that they

17    would have the ability to email him by use of the

18    internet, and they displayed that by sending him

19    messages.  I could ask him for the names.

20            But once again, it doesn't get us to what

21    we need.  All we need is an order, and they'll have

22    all that information.  So as soon as we get the

23    order, the sooner they're going to get that

24    information.

25            THE COURT:  Well, if you know the names,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 42

```
 1   and you don't have any problem giving the names?  Do
 2   you have any problem giving those names?
 3             MR. CASTELLANO:  No, that's not an issue.
 4             THE COURT:  All right.  So they'll give you
 5   the names.
 6             MR. CASTELLANO:  My understanding is that
 7   Leonard Lujan's tablet is not with him.  It's with
 8   Corrections.
 9             THE COURT:  You understand what, Mr.
10   Castellano?
11             MR. CASTELLANO:  Leonard Lujan's tablet, my
12   understanding -- I've just been told -- is not with
13   him.  It's with Corrections.  He does not physically
14   have it, because it was destroyed.
15             THE COURT:  Okay.
16             MR. CASTELLANO:  Once again, as soon as we
17   have the order, they're going to have all the
18   information they want.  So we should move on.
19             THE COURT:  Anything else on your motion,
20   Ms. Jacks?
21             MS. JACKS:  Yes.  I'm happy to move on.
22             I think the only reason I wanted to make
23   that response is I think, if you know who did it,
24   then I think you could easily make a statement of
25   probable cause.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTELLANO:  Doesn't tell us a crime
 2    was committed, Your Honor.
 3            THE COURT:  All right.  Well, I'm not going
 4    to order anything other than we'll put an order
 5    together and we'll get the information.  And then it
 6    sounds like, if we can do it with an order, without
 7    doing it with a search warrant, I think that will be
 8    an easier step to do and make our record cleaner.
 9            MS. JACKS:  Can we move to K?  K -- and
10    this I'm just looking for some assurance by the
11    Government that everything has been turned over.
12            Let me just go back.  The issue -- one of
13    the issues in the Molina homicide is that it's
14    alleged that inmates that were transported from PNM
15    in Santa Fe to Southern New Mexico Correctional
16    Facility the day prior to the homicide carried
17    paperwork.  And in reviewing the New Mexico
18    Department of Corrections regulations, there are very
19    strict -- as the Court might imagine -- search and
20    inventory procedures for transporting inmates between
21    facilities.  And there are paperwork and inventory
22    lists that are required to be filled out or supposed
23    to be filled out on both ends.
24            What we've requested, through the New
25    Mexico Public Records Act, were copies of these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2157

1    inventory forms for the inmates that were transferred

2    that day.  I believe there were three inmates

3    transferred from the north to Southern New Mexico

4    Correctional Facility.  And we received one property

5    form indicating that Mr. Urquizo's property was

6    inventoried at PNM, and nothing from the south.  And

7    we received one from a third inmate that was

8    uninvolved, inventorying his property in the south.

9          So out of six property inventory forms,

10   through the IPRA request we received two.  And this

11   discovery request was pointing, I guess pointing that

12   situation out to the Government, and asking for some

13   assurance that it's also conducted an inquiry or

14   requested that the Department of Corrections conduct

15   that inquiry to make sure there aren't the four

16   additional forms that -- well, to make sure that they

17   turn over the four additional forms, if they do

18   exist.

19         THE COURT:  All right.  Is this -- Mr.

20   Castellano, is this you?

21         MR. CASTELLANO:  Yes, Your Honor.

22         That is answered in our response.  And I

23   don't have any additional information.  So basically

24   it says we know that they had an IPRA request to the

25   Corrections Department.  The Corrections Department

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    sent us the same material; nothing in addition to the
 2    request.  They responded with everything they had
 3    that was responsive to that request.  And so that
 4    information will just be redisclosed to the entire
 5    defense team in the next round of discovery.  But
 6    there is nothing in addition to what they have.
 7             THE COURT:  All right.  Is that response
 8    satisfactory, Ms. Jacks?
 9             MS. JACKS:  That answers my question, yes.
10             THE COURT:  What else do you have on your
11    motion?
12             MS. JACKS:  And then finally L.  With
13    respect to -- we -- through the IPRA request, we
14    discovered the identity of the officers that were
15    responsible for transporting the inmates.  And we
16    wanted to speak with them.  When we made an inquiry
17    about this one employee, Herman Gonzalez, we were
18    told he no longer worked at the New Mexico Department
19    of Corrections.  We were told that by James Brewster,
20    who is the General Counsel for the New Mexico
21    Department of Corrections.
22             We asked now for some additional
23    identifying information regarding this person.  The
24    Government's response is:  He's still employed there,
25    and that the New Mexico Department of Corrections
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2159

 1   will inquire if he wants to be interviewed.  I think

 2   that's -- well, first of all, we reiterate -- given

 3   the inconsistent information, we reiterate our

 4   request for some additional identifying information.

 5   And second, we think that we should be provided

 6   contact information so that we can contact Mr.

 7   Gonzalez, and ask if he wants to be interviewed.  I

 8   don't think we're required to take the representation

 9   of his employer, if in fact, that's who it is.

10           THE COURT:  What is the representation of

11   the employer that you don't want to accept?  That he

12   works there?

13           MS. JACKS:  Well, he's told us inconsistent

14   information, so I'm not sure which is right.  And

15   because the name is so common, we're unable to narrow

16   down with any sort of specificity which Herman

17   Gonzalez we're talking about.

18           THE COURT:  All right.  Mr. Castellano?

19           MR. CASTELLANO:  Your Honor, when I spoke

20   to the Corrections personnel -- and I think it was

21   Mr. Brewster -- he indicated that he had located him;

22   that he still worked there; that they didn't feel

23   comfortable giving out any of his personal

24   information, and that they would ask him if he wanted

25   to be interviewed by the defense.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2160

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 47

1           THE COURT:  When you say he works there,

2    does he work at -- do we know what the department's

3    position is?  Does he work at PNM?

4           MR. CASTELLANO:  I don't recall which

5    facility it was.  I want to say he may have moved to

6    Central New Mexico Correctional facility.  But I

7    don't remember for certain.  But they're saying he

8    works for the Department of Corrections.

9           THE COURT:  What happened initially to

10   cause them to say he was not an employee of the

11   department?

12          MR. CASTELLANO:  I don't know.  I think

13   probably just a further inspection of their records

14   or their computer systems indicated that he still

15   worked there.  I don't know the initial

16   representations made to Ms. Jacks.  I just know what

17   they told me and that's that they were able to locate

18   him and that he still works for Corrections.

19          THE COURT:  All right.  But you're pretty

20   confident that the second answer is now correct?

21          MR. CASTELLANO:  Which answer?

22          THE COURT:  That he works there.

23          MR. CASTELLANO:  That's what they told me,

24   Your Honor.  They said they would reach out to him

25   and see if he was willing to be interviewed.

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                         FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  And what is it that
 2   you need further or want further?
 3              MS. JACKS:  His contact information and
 4   some personal identifying information.
 5              THE COURT:  Well, I think you've probably
 6   got enough.  So that's denied.
 7              All right.  Anything else on your motion,
 8   Ms. Jacks?
 9              MS. JACKS:  That's the last request.
10              THE COURT:  Thank you, Ms. Jacks.
11              Anybody else have anything on any of the
12   issues that were raised by Ms. Jacks' motion, Mr.
13   Sanchez' motion?
14              All right.  Let's move then to --
15              MR. DAVIS:  Judge Browning.
16              THE COURT:  Yes.
17              MR. DAVIS:  I'd ask the Court permission at
18   some point during the day to revisit the conflict
19   motion that we argued yesterday.  And I'm bringing it
20   up, raising it now, Judge, because Ms. Bhalla is
21   going to be leaving to go to a family visit in
22   Mississippi at 11:30 this morning.  So I'd ask the
23   Court to promptly address that, or address that
24   before --
25              THE COURT:  She's going to leave here at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2162

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2163

```
 1   11:30?

 2            MR. DAVIS:  Yes, sir.

 3            THE COURT:  All right.  How long does she

 4   need to -- how long do we need to revisit this?

 5            MR. DAVIS:  Judge, probably five, 10

 6   minutes.

 7            THE COURT:  Okay.  Let's try to plow ahead

 8   a little bit before the break, then we'll pick it up

 9   after the break.

10            So let's pick up Christopher Garcia's

11   motion to continue the defendant's deadline to file

12   Rule 16 motions.  Do you want to address that, Ms.

13   Sirignano?

14            MS. SIRIGNANO:  Yes, Your Honor.

15            THE COURT:  Mr. Adams, are you back on the

16   phone?  Was Mr. Adams supposed to be on the phone

17   today?

18            MS. SIRIGNANO:  Your Honor, I'm not

19   entirely sure.  I believe he was going to be on the

20   phone.

21            THE COURT:  Ms. Fox-Young, are you there?

22   I'm not hearing anybody.  So if you have your mute

23   buttons on, you may want to undo them and indicate

24   you're there.

25            MS. FOX-YOUNG:  Your Honor, this is Justine
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2163

```
 1    Fox-Young.  I'm on the phone.
 2              THE COURT:  All right.  Mr. Adams, are you
 3    there?
 4              All right.  Ms. Sirignano.
 5              MS. SIRIGNANO:  Thank you, Your Honor.
 6              THE COURT:  On that last request,
 7    Ms. Jacks, I think you've got enough information
 8    where you and your investigator can probably track
 9    that down.
10              MS. JACKS:  I will try to get the
11    information from Mr. Castellano.  And if we can't
12    track him down, I'll revisit the request.
13              THE COURT:  Yeah, well, I think this is
14    probably just one of those categories you're just
15    going to have to do your own investigation rather
16    just getting discovery from the Government.
17              MS. JACKS:  We actually have spent quite a
18    bit of time trying to track down Mr. Gonzalez.
19              THE COURT:  Well, if he works at the
20    prison, how hard is it?
21              MS. JACKS:  We were actually told, when we
22    contacted the prison, he didn't work there.
23              THE COURT:  Well, you're told now that he
24    does.  So you know he works at the prison.
25              MS. JACKS:  We'll contact the prison and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   see.

 2              THE COURT:  All right.  Ms. Sirignano?

 3              MS. SIRIGNANO:  Your Honor, thank you.

 4              I filed Document 1258 on the evening of

 5   September 15th.  As the Court is well aware our

 6   scheduling order contemplates every Friday there is a

 7   deadline for the parties.  And so I was awaiting

 8   additional information from expert witnesses.  I was

 9   having a difficult time getting people's positions on

10   motions.  And so I did email the Government, all

11   three attorneys, after hours.  And so I filed this

12   just to preserve the proper motion to continue.  And

13   the Government did oppose.

14              Judge, in all the years that I've been

15   doing this, I've never really had problems with

16   getting continuances from opposing counsel.  I guess

17   there was one instance here where our reply deadline

18   was cut short, and the Government started taking the

19   position that they weren't going to agree to

20   continuances, and that's why you see a number of

21   one-day continuance motions in Mr. Garcia's drug case

22   and this case.  I do believe that we reached some

23   kind of an understanding going forward, as the

24   parties have been agreeable with continuances.

25              So this motion -- there was confusion about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2165

```
 1    Mr. Villa's continuance, whether or not it was for
 2    all defendants or just Mr. Villa and his client.  And
 3    so I just did this to preserve the continuance.  And
 4    I filed the two substantive motions, Document 1267
 5    and Document 1270, which I admit to the Court was a
 6    couple of days late because of trying to get people's
 7    positions, and going through all the discovery.  So
 8    that's really all I have to say, Judge, is that we
 9    just needed additional time.  And we filed the
10    motions, which were joined by, as you said yesterday,
11    by many co-defendants.
12           And I don't believe there was any prejudice
13    to the Government, Your Honor, because they were
14    filed as quickly as possible.  And the Government
15    chose not to respond to them.  I'm happy to let the
16    Government respond to them even though it's out of
17    time, just to resolve these discovery issues.
18           THE COURT:  All right.  And which document
19    did it end up being that we're talking about?
20           MS. SIRIGNANO:  1258 was my motion to
21    continue.  The Government's response was 1278.
22           THE COURT:  I guess what I meant to ask was
23    what is the document number that was filed late?
24    What is the document we're talking about?
25           MS. SIRIGNANO:  It's the 1267, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    enterprise motion, and Mr. Garcia's Rule 16 motion,

 2    Document 1270.  Actually, 1267 was filed on time, if

 3    you construe Mr. Villa's order to apply to all

 4    defendants, which is how the Court ordered it.  And

 5    1270 was two days late, Your Honor.

 6              THE COURT:  All right.  Anything else, Ms.

 7    Sirignano, on this motion?

 8              MS. SIRIGNANO:  No, Your Honor.

 9              THE COURT:  All right.  Anybody else want

10    to say anything on this motion?

11              All right.  Mr. Beck.

12              MR. BECK:  Sure, Your Honor.  I think our

13    response makes pretty clear our position on this

14    case.  There was confusion with the extension that we

15    provided to Mr. Villa and some of the defendants.  As

16    the United States says in the response, generally

17    what happens with these -- and we've had a good

18    relationship between the defense counsel and the

19    Government -- is that defense counsel will provide us

20    their motions.  We try to work through some issues,

21    and we were successful this time around.  And then,

22    if there are any disputes, then they file their

23    motion.  So that's how we had it.  And generally

24    we've been pretty good about providing extensions,

25    and they've been good at reciprocating that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2167

```
 1              The unique thing about this, as I think the
 2      Court alluded to yesterday, is that this was a
 3      request for a 45-page motion and a 29-page motion,
 4      the majority of which were already filed in the
 5      Christopher Garcia drug case, the majority of which
 6      requests the Court denied -- after hearing two days
 7      of argument -- denied as beyond the bounds of the
 8      criminal discovery rules.  And I think the Court was
 9      correct in that.  And then I think it was five out of
10      the 11 requests, or four out of the 11 requests,
11      Garcia just abandoned in that case, and said, Okay, I
12      don't need this stuff, we can figure it out later,
13      and then -- so just left those aside only to be
14      brought up here again.
15              So the United States -- and we've granted
16      extensions on requests for motions from Garcia after
17      this.  But seeing what was filed in the 45-page
18      discovery motion and the 29-page other discovery
19      motion, and the requests, how overly broad they were,
20      how just untargeted they were, frankly, the United
21      States thought that rather than waste another two
22      days, just have the Court deny the motion -- deny the
23      majority of the requests, if not all of the
24      requests -- that the proper thing to do is to just
25      say that these motions are late, they weren't filed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2168

 1      under the scheduling order.

 2              And, you know, if Mr. Garcia wants to come

 3      back to the United States and ask for a targeted set

 4      of documents, then I think a targeted set of

 5      documents and information that haven't already been

 6      provided -- because the majority of what Mr. Garcia

 7      asked for has been provided -- ask for a targeted

 8      list of documents, I've already had this discussion,

 9      then we'd be willing to work with Mr. Garcia on

10      coming up and producing documents and information

11      that we have to which he's entitled.  But we take the

12      position, unique to Mr. Garcia in this room, that

13      these were late, they were improperly filed, and it's

14      a waste of time to have discussion on them anyway.

15              Of course, knowing the Court's inclination,

16      I know the Court's position has been -- will likely

17      to continue to be that the court door is always open,

18      and the Court isn't one to shut the door and say you

19      can't file your motions untimely.

20              So I understand the Court's position.  I

21      think the Court should treat this motion for an

22      extension uniquely, because of the motions that were

23      asked to be continued.  And as I said, we didn't see

24      a copy of this until it was filed.  That doesn't give

25      me heartburn as much as 45 pages of requests that the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2169

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56

 1    Court has already looked at.

 2              THE COURT:  How late are you saying this

 3    motion was?

 4              MR. BECK:  So I believe the first one,

 5    1267 -- so the deadline was the 15th.  1267 was filed

 6    on the 19th, which is, I guess, the enterprise

 7    discovery motion.  And 1270, which I guess is the

 8    other DNA discovery motion, was filed on the 22nd.

 9    So that would be effectively four days and seven

10    days.

11              THE COURT:  If I hear what you're saying,

12    your primary concern is not about their lateness but

13    about what they are?

14              MR. BECK:  That's right, Your Honor.

15              THE COURT:  What is the issue with Mr.

16    Villa's order?  I guess I'm not quite understanding.

17              MR. BECK:  So I think what happened was we

18    had an email exchange with Mr. Villa.  He said, "The

19    defense is diligently working on preparing the

20    discovery motions.  We're working with you -- you

21    being the Government, us -- which was true -- can the

22    defense have an extra, I think it was two weeks -- I

23    think their deadline was the 1st, and he was asking

24    for the 15th.

25              The United States responded and said, If

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2170

```
 1    you can guarantee that this will be reciprocated if
 2    we ask for extensions, not a problem.
 3              Mr. Villa said I can speak for myself.  I
 4    believe that we've had a good working relationship.
 5    He said I will have no problem, that Mr. Perez will
 6    have no problem granting the extension.  I can't
 7    speak for all defense counsel.
 8              And so our response to that was then you
 9    may have an extension, and anyone else who is going
10    to reciprocate may.
11              Then the order came down, which Mr. Villa
12    sent to us for approval before it was submitted to
13    the Court.  We approved of it.  There was language in
14    the order that said "grants to all defendants an
15    extension."
16              So the order that I believe the Court
17    actually signed in probably didn't memorialize our
18    understanding of the agreement.  That we take
19    responsibility for not paying more particular
20    attention to maybe the syntax of the order.
21              THE COURT:  But the order that got entered
22    does grant an extension for the motions that Ms.
23    Sirignano filed?
24              MR. BECK:  No.  It grants an extension to
25    the 15th.  Her motions were filed on the 19th and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2171

1    22nd.

2              MS. SIRIGNANO:  And Your Honor, my motion

3    requests --

4              THE COURT:  Hold on, Ms. Sirignano.  Let

5    Mr. Beck finish here.  Anything further, Mr. Beck?

6              MR. BECK:  That's it, Your Honor.

7              THE COURT:  All right.  Ms. Sirignano.

8              MS. SIRIGNANO:  I was trying to say in my

9    reply, which was filed 1331, Document 1331, lays out

10   the whole story here.  And your order was for all

11   defendants to the 15th.  And then my motion, Document

12   1258, requested until the 20th.  So the enterprise

13   motion was filed on the 19th.  My opposed motion

14   requested to the 20th.  And then I was two days late

15   on the Rule 16 motion.

16             And I just would like to comment on the

17   Government's -- I don't believe Mr. Beck was there at

18   that hearing, but I did put in a very large footnote

19   my understanding of Mr. Garcia's drug case, the

20   hearing.  The Court did not deny Mr. Garcia's

21   requests for discovery.  In fact, many were granted.

22   And Ms. Armijo argued that motion, and was told to go

23   back and look for additional materials, which were

24   ordered, which we never got.  Mr. Garcia never

25   abandoned any Rule 16 request.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                          1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 2172

```
 1              We had Ms. Arvizu testify that day.  The
 2    Court produced memorandum opinion and order, which
 3    only discussed the motion up until that point.  And
 4    in fact, in my reply here, in 1331, Your Honor, I
 5    pinpoint where in the transcript the Court was going
 6    to allow Mr. Garcia to supplement its motion
 7    regarding the drug or the scientific evidence.
 8              I'm happy to show the Court, if you put
 9    Mr. Garcia's drug Rule 16 motion and this motion,
10    Document 127, Rule 16 motion, that's been filed late,
11    they are significantly different requests.
12    Specifically, we've got DNA evidence in this case.
13    And I don't have any DNA discovery right now.  All I
14    have is one report, and no bench notes, no
15    electropherograms, no protocols, procedures manuals.
16    And the FBI is using a computer program, and the
17    statistics are all new.  I'm going to need that for
18    my expert.
19              So this is a huge domino effect, Judge,
20    because if we don't get the discovery, then I've got
21    problems with my expert notices as well.
22              I admit I was late, Judge.  You know, there
23    is no excuse for that I was late.  I filed the
24    motion.  I piggybacked off of Mr. Villa's motion, and
25    asked for an extra five days.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2173

 1            I'm sorry if the Government thinks that the
 2    enterprise motion is too long.  That was circulated
 3    to defense counsel, which was joined.  Quite frankly,
 4    you know, I tried to resolve this yesterday with the
 5    Government, and I was told by Mr. Beck that it was a
 6    bullshit motion, 45 pages, and it was just too long.
 7    And he characterized it as untargeted and overbroad.
 8            So on my weekend this weekend, I'm going to
 9    go through this motion, save the Court some time, go
10    through all the enterprise discovery, which we
11    received from Mr. Aoki, and go through the 45 pages,
12    and itemize for the Court what we have received, and
13    then narrow it down so it's more targeted, yes, but
14    we'll do a comparison to see what I was asking for,
15    what I have, and what I still need.
16            THE COURT:  Well, don't -- I have, as I
17    expressed yesterday, some concerns about the motion,
18    but -- particularly given my experience with
19    Mr. Garcia and his drug case -- but I don't see any
20    prejudice to the Government from a timing standpoint.
21    Substantively, it's going to create a lot of work for
22    the Government and for the Court to try to deal with
23    it.  But it was a small delay.  I don't think Mr.
24    Villa's motion covers this at all.
25            So I just think it's late, and we just have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2174

1   to say it's late.  But I think that the parties have

2   been cooperating pretty well.  And I'm reluctant to

3   deny a motion to continue on a substantive basis.  I

4   think, if we're going to deny it on substantive

5   basis, it needs to be denied on substantive basis.

6   And I can't say that there is nothing here that we

7   don't need to address to make certain that the

8   defendants get the discovery they need.

9           So I will grant the motion to continue the

10  defendant's deadline to -- does it need to be

11  September 22nd, Ms. Sirignano, to cover your motions?

12  Is that what it needs to cover?

13          MS. SIRIGNANO:  Yes, Your Honor.

14          THE COURT:  All right.  I'll grant that

15  motion, then.

16          All right.  Let's go ahead and get started

17  on Mr. Baca's motion for an order compelling specific

18  discovery.  So, Mr. Lowry, let's get started and see

19  what issues remain for you.

20          MR. LOWRY:  Your Honor, I'll try to make

21  this as brief as possible.  Your Honor, I tried to --

22  well, not tried, Your Honor -- I did confer with the

23  Government yesterday to try to resolve some of these.

24          On number 1, we've had agreement except --

25  with the exception of records involving Eric

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Duran's -- both his phone records, his prison phone
 2    calls, and his visitation records for a single month
 3    of December 2014, Your Honor.  And the reason we want
 4    to focus on December 2014, is because, obviously,
 5    that's a holiday month.  And one of our motions that
 6    we filed on the suppression of the Eric Duran phone
 7    calls is based on coercion.  And we want to explore
 8    the familial relationships that were at issue over
 9    the holiday period to help strengthen the substance
10    of that motion.  And that's why we want in particular
11    December.
12             The Government is willing to give us
13    everything after January 1st, but we would just ask
14    for a single extension for the month of December of
15    2014, on both the phone records and the visitation
16    records.
17             THE COURT:  All right.  Ms. Armijo?
18             MS. ARMIJO:  Your Honor, as I indicated
19    yesterday, I believe we are getting and disclosing
20    prison calls from January 1, 2014, which would
21    include -- that would include December 2014.  That
22    will be disclosed.  Mr. Lowry has not told me a
23    specific reason why he wanted the month before.  And
24    so given it's important to his motion, we will go
25    ahead and agree to get the visitation records.  But
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2176

1    the issue with the calls, we indicated yesterday it

2    will be disclosed.

3            THE COURT:  Am I missing something?  Is

4    there a dispute here?

5            MR. LOWRY:  Not now, Your Honor.

6            THE COURT:  Okay.  All right.

7            MR. LOWRY:  Your Honor, just down to what I

8    have is number 3 on my list, and we'd asked for

9    records regarding Eric Duran's significant other,

10   Grace Duran.  The Government indicated there is

11   nothing there.  You know, I'm willing to take that at

12   face value.  But having reviewed a lot of the phone

13   calls in this matter, there are quite numerous

14   meetings between Grace Duran and the case agent in

15   this matter, for the case agent to deliver money to

16   her, in part -- I would assume in part of payments

17   for Eric Duran.  And it just strikes me as a bit odd

18   that there wouldn't be some kind of receipt if it was

19   actually cash that was exchanged.  I don't know what

20   was exchanged.  Because, as we heard yesterday, we

21   haven't received those receipts.  But it's my

22   understanding there are quite a few of these meetings

23   over the course of 2015 and 2016, some of which may

24   have involved substantial sums of money, in the

25   thousands, $6,000, for instance, to put down payments

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    on homes or living quarters that were apparently,

 2    according to the phone records, may have been

 3    misspent on other items.

 4            So it just seems to me that there may be

 5    something there.  And if the Government is saying

 6    there is not, I accept that.  But I just want to

 7    reserve the right to renew this at a later date if we

 8    learn information to the contrary.

 9            THE COURT:  Still feel comfortable with

10    your representation, Ms. Armijo, there is just

11    nothing there?

12            MS. ARMIJO:  Yes, Your Honor.  The payments

13    were made to Eric Duran.  He's in prison, however,

14    and requested that money be given to his wife.  So

15    there was -- and I believe yesterday we agreed to

16    give receipts by next Friday as part of Giglio for

17    Mr. Duran.  So they will have that information.  But

18    the money was given to Mr. Duran, not his wife, as

19    far as paperwork.

20            THE COURT:  All right.  Anything else on

21    that?

22            MR. LOWRY:  No, Your Honor.

23            THE COURT:  All right.

24            MR. LOWRY:  Your Honor, I think we've taken

25    care of 4, 5, and 6, the Brady-Giglio, we've resolved
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2178

1    that.

2         Number 7, again, this -- I just want to

3    make a brief record.  It strikes me again as a bit

4    odd.  There were two recordings after the Molina

5    murder.  One was a specific recording with my client,

6    Mr. Baca, Mr. Sanchez, and Mr. Mauricio Varela,

7    before they were transferred out of state.  The same

8    videographer was there with a camera crew.  And after

9    they were interviewed, the camera crew and Secretary

10   Marcantel went and met with a larger group of SNM

11   members.  The video for the larger group has been

12   disclosed.  But we haven't been able to obtain the

13   video for the smaller group with the three gentlemen.

14   The Government says it doesn't exist.  But, you know,

15   the lights of the camera were on, according -- from

16   what I understand of that meeting.  It just strikes

17   me as a bit odd, again, that that video doesn't

18   exist.  And again, the Government is saying it

19   doesn't have it, the Department of Corrections

20   doesn't have it.  And, again, if we learn information

21   to the contrary, we'd like to renew this, Your Honor.

22        THE COURT:  All right.  Well, I think -- is

23   that still your representation this morning, Ms.

24   Armijo, that it doesn't exist?

25        MS. ARMIJO:  Yes, it is.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2179

```
 1                THE COURT:  All right.  You're welcome to
 2      renew if you are able to find out that there is some
 3      reason that exists.
 4                MR. LOWRY:  Sure.  Your Honor, number 8 --
 5                THE COURT:  I tell you what, I hate to cut
 6      you off.  But why don't we go ahead and take our
 7      break, and we'll be in recess about 15 minutes.
 8      We'll come back in, and after this motion then we'll
 9      pick up your renewed motion.
10                And give some thought -- because Ms.
11      Sirignano is telling us she's going to take the
12      day -- if anybody wants to jump, talk to her a little
13      bit about -- do you want rulings on some other
14      motions before we close out today.
15                All right.  We'll be in recess for about 15
16      minutes.
17                (The Court stood in recess.)
18                THE COURT:  All right.  Mr. Lowry, why
19      don't we finish your motion, and then we'll do some
20      housekeeping things.  I think y'all have been
21      talking, and so we'll confirm those on the record.
22                Mr. Lowry.
23                MR. LOWRY:  Thank you, Your Honor.
24                THE COURT:  Mr. Lowry.
25                MR. LOWRY:  Your Honor, I want to back up
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2180

1    for a second to go to my item number 22, or item

2    numbered request number 2 on Document 1264.  We had

3    asked for any audio recordings of phone calls and

4    texts from Eric Duran's cellphone from December 5th

5    until his release from the DOC.

6              THE COURT:  Let me see -- make sure I'm

7    looking at the right thing.

8              MR. LOWRY:  Sure.

9              THE COURT:  I had 11 items.  But you're

10   saying now look at 22.

11             MR. LOWRY:  No, it was 2, Your Honor.  I

12   apologize, I misspoke.

13             THE COURT:  I'm sorry.  All right.

14             All right.  I have it.

15             MR. LOWRY:  Your Honor, the reason we made

16   this request is in the recorded conversations, the

17   jailhouse calls with Eric Duran, he discusses with

18   the case agent in this matter sending him text

19   messages during the summer of 2016.  Obviously, the

20   only way he could send a text is if he had either a

21   cellphone or access to a cellphone.  And it just

22   seems to me -- we never got a clear indication if and

23   when Eric Duran's cellphone was collected after the

24   takedown of the SNM in December of 2015.  And at a

25   certain point -- and I reviewed Warden Franco's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2181

1    testimony in the Garcia matter with regard to the

2    cellphone -- it wasn't clear from his testimony if

3    and when the cellphone was collected after the

4    arrests were made in this case.  And so we're under

5    the impression that Eric Duran, perhaps as a benefit

6    of his cooperation, was able to keep a cellphone,

7    especially in light of the comments he was making.  I

8    know, again, the Government is saying that that's not

9    the case.  But there is certainly evidence in this

10   case to the contrary.

11            THE COURT:  Okay.  So you're raising the

12   question as to whether Mr. Duran got his phone back,

13   basically?

14            MR. LOWRY:  And if it was taken back from

15   him, when that happened.

16            THE COURT:  Okay.  There is no question it

17   was taken from him once, right?

18            MR. LOWRY:  No, there is a question whether

19   it was taken from him once.  We don't know that it

20   was ever taken from him.  For all I know today, Your

21   Honor, he walked out of the Department of Corrections

22   with a government-issued cellphone.

23            THE COURT:  All right.  Ms. Armijo,

24   thoughts?

25            MS. ARMIJO:  I don't know why Mr. Lowry

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2182

1   would think that, because we've indicated that we are

2   in possession of the phone.  I think we have the

3   phone here in court today.  And have allowed them

4   to -- we're going to turn it over for their expert to

5   examine the phone.  The phone was taken on December

6   3, 2015.  It is the subject of a court ordered

7   wiretap.  So they have everything that happened on

8   that phone that was received from a wiretap.

9           On December 3, there was a big roundup,

10   which most of these defendants were arrested that

11   date, if not that date, later.  And I believe that

12   Corrections went in during that time and did a big

13   sweep and collected the phone on that date.  And FBI

14   has had it since December 3, 2015.

15           THE COURT:  So it was never given back to

16   Mr. Duran?

17           MS. ARMIJO:  It was never given back to

18   Mr. Duran.

19           THE COURT:  All right.  Anything else on

20   that, Mr. Lowry?

21           MR. LOWRY:  I just, if -- did he have

22   access to any other device where he could send text

23   messages to the case agent in the summer of 2016?

24           MS. ARMIJO:  No.

25           THE COURT:  Mr. Acee is shaking his head

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2183

```
 1   no.
 2              MS. ARMIJO:  No.
 3              THE COURT:  Anything else on that, Mr.
 4   Lowry?
 5              MR. LOWRY:  No, Your Honor.
 6              I think that brings us in my list of the 11
 7   items up to item number 8.  And I'm hoping that we've
 8   resolved this.  We had tendered a proposed order as
 9   an exhibit to the motion that we filed in Document
10   No. 1264.  You know, this is something that the
11   parties had agreed to back in May.  And the
12   Government has had the order since, I think, probably
13   mid June.
14              MS. ARMIJO:  Your Honor, if defense counsel
15   will tender the order to the Court, once the Court
16   signs the order, we will get the records.
17              THE COURT:  I'll just take this off here.
18   Is there any objection to the order from anybody in
19   the room, the one that's attached, I think it's
20   actually Document 1264-1?  Any objection to that?
21   All right.  Then I will sign this order and hand it
22   to Ms. Wild.
23              All right.  What else, Mr. Lowry?
24              MR. LOWRY:  Your Honor, I mean number 9 has
25   been -- I think we have an agreement on number 9 as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2184

1   to access to the cellphones.  Obviously, that's been

2   the subject of extensive debate this morning.  Your

3   Honor, I just want to point out for the Court, Eric

4   Duran's, the cellphone calls and the recordings made

5   by Mr. Duran using the electronic surveillance

6   devices are the subject of two pending motions by Mr.

7   Baca.  Those are still in the process of being

8   briefed by the Government, so -- but I don't want the

9   Court's ruling today to, you know, be law of the case

10  with regard to these other two motions in effect.

11         So I don't know how far you want me to go

12  with the argument there.  But let's just say I agree

13  with the statement Ms. Jacks made earlier that, I

14  mean, potentially, there is a Youngblood issue with

15  the destruction of evidence in the case, if, you

16  know, they won't give us access to the devices, and

17  we can't have our independent expert assess whether

18  there was other data than the data that the

19  Government has disclosed to us.  It becomes an open

20  question.

21         I will add one wrinkle.  In the text

22  messages to Eric Duran by his handlers in this case,

23  there was at least an indication that it takes ten

24  seconds by the time you hit the on button before the

25  device begins recording.  And if that was the case,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2185

```
 1    it wouldn't explain some of the gaps we were looking

 2    at earlier.

 3            THE COURT:  It would or would not?

 4            MR. LOWRY:  It would not.  I think some of

 5    the gaps were shorter than that.  And the reason I

 6    bring that up is one of the motions we filed with the

 7    Court was for the Government to authenticate these

 8    recordings.  They have to show that the recordings

 9    were done in a reliable manner.  And one of the

10    standards that the Tenth Circuit uses is, you know,

11    the parties need to look at the device and see what

12    it was capable of doing, and how the device was able

13    to produce the recordings.  And if the recordings

14    were subject to manipulation, I think that's, again,

15    something the defense wants to explore mightily.

16            THE COURT:  Well, given the argument that

17    we had with Ms. Jacks and Mr. Villa earlier on the

18    phones, is there any -- not on the phones, but the

19    electronic recording devices, and then the one

20    cellphone as to Ms. Sirignano, Mr. Garcia -- is there

21    anything else we can do on that right at the moment?

22            MR. LOWRY:  Not at the moment, Your Honor.

23    I'm willing to work with the Court on this.  I

24    understand the Court's position from the discussion

25    this morning.  I just wanted to flag that for Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

 1   Honor, and say that we had a heightened interest in

 2   this matter, Mr. Baca does.

 3          THE COURT:  Other than the phone that Ms.

 4   Sirignano has identified and the phone you have with

 5   Mr. Duran, what other phones are we talking about?

 6          MR. LOWRY:  There was a telephone with

 7   Sammy Griego, another telephone with Tomas Clark.  My

 8   understanding was that Mario Montoya also had a

 9   telephone.  And then there was an Eric Duran

10   telephone.  When I say telephones, cellphones,

11   government-issued cellphones, that were provided.

12          THE COURT:  So four phones?

13          MR. LOWRY:  Yes.  My understanding, based

14   on my conversations with the United States yesterday,

15   was all of those phones existed, with the exception

16   of the Mario Montoya's cellphone, which, if my

17   understanding is correct, that cellphone, it sounds

18   like, may have been destroyed when the phone was

19   inadvertently dropped and ran over by an automobile.

20   And my understanding is that none of the remains of

21   that cellphone exist; that it's been disposed of.  Is

22   that correct?

23          THE COURT:  Anything you want to add or

24   confirm on that, Ms. Armijo?

25          MS. ARMIJO:  On the destruction of that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2187

```
 1    phone?

 2              THE COURT:  Well, just what else do you

 3    need confirmation, other than that?

 4              MR. LOWRY:  Well, if there is any other

 5    cellphones used by cooperating individuals in this

 6    case, we'd like to get access to them.  Ms. Armijo

 7    asked me to be specific, and obviously, I can't

 8    answer a negative.  You know, I don't know.  I mean,

 9    the Government has disclosed the number of wiretaps

10    that they have.  I mean, I'm not going to sit here

11    and presume that all the wiretaps were associated

12    with cellphone devices given to cooperating

13    informants.  But I mean, she wants me to be specific.

14    There would be my specificity that all of the

15    wiretaps that were disclosed, we'd want access to

16    those devices.

17              THE COURT:  All the telephones that were

18    wiretapped; is that what you're saying?

19              MR. LOWRY:  No.  What I'm trying to

20    articulate, Your Honor, is we just want access to the

21    cellular devices that were provided to the Government

22    cooperating agents in this case.  So we can have them

23    forensically reviewed by our own independent forensic

24    experts.

25              It's our opinion, based on the review of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2188

1    the Eric Duran phone, for instance -- and this is

2    somewhat interesting, because the Government has

3    disclosed what appears to be their own forensic

4    reviews of two cellphones, which is the Tomas Clark

5    and Sammy Griego cellphone.  But I'm not aware that

6    similar forensic reviews were done of the other

7    cellphone for either Eric Duran or Mario Montoya.  I

8    mean, there are different reviews of those phones.

9    But our independent review of the Duran phones

10   indicates, from the limited information we have --

11   and we haven't had forensic expertise on this -- is

12   that there were missing -- there were deleted calls

13   and deleted messages and things like that.

14           THE COURT:  All right.  Well, this is

15   taking a little longer than anticipated, so why don't

16   I take up Mr. Davis' and Ms. Bhalla's point, and then

17   we'll come back and talk some more about a cellphone.

18           Mr. Davis.

19           MR. DAVIS:  Thank you, Judge.  And I'll try

20   to be brief.

21           Yesterday the Court had asked that I,

22   perhaps, do some research to provide the Court some

23   authority.  My research isn't by any means

24   exhaustive, Judge, but I was able to locate an

25   opinion that you wrote in U.S. versus Roach, a couple

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2189

 1    of years ago.  And it had some law in there that I

 2    thought perhaps would provide us with some guidance.

 3              If you recall that case, the Roaches --

 4              THE COURT:  It was down here in this room.

 5              MR. DAVIS:  Excuse me?

 6              THE COURT:  It was down here in this room.

 7              MR. DAVIS:  Yeah.  The Roaches --

 8    apparently there was some relation; they were brother

 9    and sister --

10              THE COURT:  Husband and wife.

11              MR. DAVIS:  Yeah, husband wife.  They had

12    worked for this oil waste removal company.  And they

13    ended up getting sued by the company for some

14    misappropriation.  And Barry Crutchfield apparently

15    represented both of them in two civil suits, and both

16    got dismissed.  And after the second case got

17    dismissed, they got indicted by the feds.  And Mr.

18    Crutchfield started representing both of them in the

19    federal case.  He then moved to withdraw on one

20    because of a perceived conflict.  And then he -- the

21    other Roach apparently hired, retained, or was

22    appointed Gary Mitchell.

23              Despite that fact, the Government raised

24    the issue that there may be a potential conflict of

25    interest in light of the successive representation.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2190

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 77

 1   And so that was kind of the issue before the Court.

 2           So in Roach, Judge, you quoted from U.S.

 3   versus Ross, which is a court of appeals out of the

 4   District of Columbia.  And they laid forth an

 5   analysis when analyzing a successive representation

 6   case, which is what I am faced with.  I represented

 7   Mr. Martinez 17 years ago.

 8           And there were three areas to determine if

 9   there was a conflict of interest.  "The trial court

10   should examine whether the subject matter of the

11   first representation is substantially related to that

12   of the second."  I think we discussed this before

13   that they're not substantially related due to a

14   number of factors, not the least of which is the

15   passage of time, my lack of any memory of the

16   substance of conversations with Mr. Martinez.

17           The next question is "whether the conflict

18   caused the defense attorney to improperly use

19   privileged communication in cross-examination."

20   Again, that's not present here because I don't have

21   any privileged communications in my memory.

22           And, finally, "whether the conflict would

23   deter the defense attorney from an intense probing of

24   the witness on cross to protect privileged

25   communications with the former client."  That's not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

DNM 2191

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 78 of 192

 1   here either.

 2          If the Court is going to consider removing

 3   me, before do you that, you cite to another opinion

 4   out of the Seventh Circuit:  What to do when

 5   analyzing whether to remove an attorney.  "Before

 6   disqualifying an attorney based on the potential

 7   conflict, the Court should evaluate the following:

 8          "1.  That the likelihood that the conflict

 9   will occur."  And I think we all agree that that is

10   entirely speculative.  I assure the Court that it

11   would not occur.  This is my own assurance, based on

12   my evaluation of the case, the conflict -- my

13   experience in criminal work.  I've represented joint

14   defendants in cases before.  I understand those

15   conflicts.  I've made them clear in advance.  I've

16   discussed those with my clients.  And although this

17   is not a joint representation, it's not my first

18   rodeo dealing with potential conflict.  So I

19   understood that.  If I felt at all that I had some

20   confidential privileged information of Mr. Martinez,

21   then I wouldn't have taken the case to begin with.

22   But I did this conflict analysis a year-and-a-half

23   ago, Judge.  So the likelihood the conflict will

24   occur is basically nonexistent.

25          The severity of the threat to counsel's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2192

1    effectiveness to Mr. Herrera:  Well, that's

2    nonexistent either.  I intend to zealously represent

3    him.  I have been zealously representing him, and I

4    intend to do the best I can for him, without any

5    concern about confidences of Mr. Martinez.

6           And then, finally, whether there are

7    alternative measures available other than

8    disqualifying me.  And I know if the Court has these

9    concerns about disqualifying me, I'm asking the Court

10   to consider doing the -- I don't want to call it a

11   Chinese wall, but some sort of a mechanism to prevent

12   any concern about confidences or any confidential

13   conflict that the Court may see or perceive.  And

14   that is to allow Ms. Bhalla to conduct the

15   cross-examination, and keep me on the case for the

16   rest of the case.

17          Because there are some serious consequences

18   to my removal, Judge.  If you remove me from this,

19   Ms. Bhalla is left alone on this case.  And she was

20   brought in as second chair.  She's not the lead

21   counsel on this case.  She was to assist in research,

22   writing, assisting me in the trial work on the case.

23          And, frankly, I don't even know who is left

24   on the CJA panel, if I'm removed from this case.

25   I've taken a quick look at the conflicts panel, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2193

```
 1    it's pretty thin pickings.
 2           The next thing is, if I am replaced, the
 3    new attorney is going to need time to get up to speed
 4    on a case that I've been working for a
 5    year-and-a-half.  And, Judge, I'm not ready, and I
 6    still have things I have to do, and the trial is in
 7    two months.  That sets up a motion for a continuance,
 8    or a motion for severance from the main group,
 9    because Mr. Herrera will not be prepared to go to
10    trial.  And forcing him to trial could lead to a
11    claim of ineffective assistance of counsel.
12           Now, with regard to Roy Martinez making
13    these claims that I push his buttons, I have no idea
14    what he's talking about with that.  That's some sort
15    of inchoate claim that he has some fear of me.  For
16    the life of me, I have no idea why.  I've had no
17    contact with Mr. Martinez since I represented him
18    back in 2001.
19           If he's got a complaint with me proceeding
20    to cross-examine -- if that's the Court's ruling that
21    I'm allowed to stay on the case, even if you allow
22    Ms. Bhalla -- if he's unhappy with that, he can
23    always complain to the Disciplinary Board, Judge.
24    And I'd be more than happy to defend myself on that
25    issue.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            Carlos, however, if I'm removed from the
 2   case, now has a new basis for an appeal if he's
 3   convicted in this matter.
 4            It makes sense to me that the alternative
 5   and the best alternative, rather than removing me
 6   from the case, with all these serious consequences,
 7   is to simply just put in a wall that would allow Ms.
 8   Bhalla to conduct the cross-examination of
 9   Mr. Martinez.
10            She's prepared to testify by way of
11   affidavit or by, you know, colloquy with the Court,
12   that she has no knowledge of Mr. Martinez; that we
13   haven't discussed Mr. Martinez, other than what's in
14   the public records, that's in the discovery.  She
15   knows nothing about Mr. Martinez.  So that would be a
16   good alternative.
17            So I'd ask the Court to consider those; not
18   remove me from the case.  If the Court deems to have
19   a conflict, then I'd ask the Court to allow Ms.
20   Bhalla to do the cross, but I stay on the case.
21            Thank you, Judge.
22            THE COURT:  All right.  Do this for me,
23   since Ms. Milner and Mr. Martinez are not here, why
24   don't you work with Ms. Bean to get the pages of what
25   you just said to the Court, and have those sent over
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to Ms. Milner so she knows about this additional

2    argument that you made today.

3            MR. DAVIS:  Okay.  Thank you, sir.

4            THE COURT:  Thank you, Mr. Davis.

5            MR. DAVIS:  Thank you, Judge.

6            THE COURT:  All right.  Mr. Lowry, if you

7    want to -- what is it that you want the Government to

8    confirm or what question do you have of the

9    Government?

10           MR. LOWRY:  Your Honor, if I may for a

11   second.  I just don't want the Court to think I've

12   lost all my marbles or scruples, which is easy to do

13   at times.

14           Your Honor, I'd just want to, if I may,

15   play for the Court a snippet of a phone conversation

16   between the Government's cooperating agent and the

17   case agent in this case.  And this was a conversation

18   in the summer of 2016, where Eric Duran is upset

19   because he was wanting to get a lump sum cash

20   payment, and he wanted to get a lump sum meritorious

21   deduction off of his sentence for his cooperation in

22   this case.  And in this conversation is where he

23   talks about sending text messages to the case agent.

24           (The audio was played.)

25           MR. LOWRY:  Your Honor, I don't know if I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2196

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2197

```
 1    captured that quick enough.
 2              (The audio was played.)
 3              MR. LOWRY:  That was it.  Did you hear
 4    that, Your Honor?
 5              THE COURT:  It was hard for me to hear.
 6              MR. LOWRY:  Let me back that up.  We're
 7    playing an audio recording that was disclosed on July
 8    16 of 2016, and it's -- there is no Bates number
 9    attached to it, since it's an audio recording.
10              But it is recording:
11    10-92-0-21-F076850085C00156A2361B04A50332.
12              I'll try this again.
13              (The audio was played.)
14              MR. LOWRY:  He said "that's what I was
15    explaining in a text."  So, your Honor, my concern is
16    here we are with this confidential human source in
17    the facility, in the summer of 2016, talking about
18    texting the case agent about some benefits he was
19    supposed to receive, but wasn't getting.  And the
20    Government is telling me he didn't have access to a
21    cellphone.  So I'm trying to square these two, and
22    it's really difficult for me.
23              THE COURT:  So what is your question?
24              MR. LOWRY:  My question -- I guess my
25    question is really quite simple.  The Government is
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2197

1   saying he didn't have access to a cellphone.  The

2   Government -- Eric Duran is saying he was sending the

3   case agent texts.  And I guess, at this point, if

4   they're saying he didn't have access to a cellphone,

5   but he's saying he sent Mr. Acee a text to that

6   particular number, I guess we need to get access to

7   Mr. Acee's cellphone to review that phone to match it

8   up with what his confidential informant is saying

9   that he was sending him texts in the summer of 2016.

10           THE COURT:  All right.  Ms. Armijo?

11           MS. ARMIJO:  So now this is extended to

12   Special Agent Acee's cellphone, which he uses on a

13   number of operations, not just this case, which we

14   would highly object to.

15           I am sure what is going on here, and I've

16   conferred with Special Agent Acee, is that many

17   times -- not just limited to Eric Duran, it happens

18   with a lot of CHSs that can't talk to them -- their

19   significant others text them.  So you'll have the

20   girlfriends or wives of the inmate saying, Hey, tell

21   so and so X, Y, Z.  And then he'll get a call or a

22   text message from the wife or girlfriend.  It's not

23   limited to Mr. Duran.  It's quite common that he

24   would get messages from Mr. Duran's wife.  He did not

25   have the phone in question.  They are going to have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2198

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2199

1  the phone --

2         THE COURT:  When you say "he," you're

3  talking about Mr. Duran?

4         MS. ARMIJO:  Mr. Duran did not have the

5  phone at the time period when this phone call was

6  made.  If he did, he probably would have been calling

7  Special Agent Acee on that phone.  But he didn't.

8  He's calling him from a line that is recorded.  And

9  that's why they have it, because it's a prison call.

10  And he's calling him on the prison phone and he's

11  telling him about -- he's complaining basically about

12  not being released.  And what they're talking about

13  is the calculations made by Corrections on his

14  release date.  And that's what's going on in that

15  phone conversation.  And so he's upset, and he's

16  talking to him about that time.  And he's saying the

17  text messages, which I'm sure probably are text

18  messages that Special Agent Acee received from

19  Mr. Duran's wife.  They're not from Mr. Duran.

20         And they will have the phone.  They can

21  review the phone.  And so I don't know what else Mr.

22  Lowry wants.

23         THE COURT:  All right.  Mr. Lowry?

24         MR. LOWRY:  Your Honor, that is a very

25  interesting response, because I believe we asked for,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    in number 3 of our request in Document 1264, all of
 2    the call records, texts, memos, 302, field notes, or
 3    any other kind of audio or audiovisual recording or
 4    debrief notes with Grace Duran, Eric Duran's current
 5    partner.  And the Government just got up and tried to
 6    explain, first when we talked about this, that there
 7    were no such things.  And now the Government is
 8    telling us that the texts we just heard referenced in
 9    this phone call were from Grace Duran.
10              So I'll back up a little bit here and say,
11    now I'm having a hard time squaring those two
12    statements.  So can we get the calls and texts that
13    Grace Duran sent to the case agent in this matter?
14              Because what the Government has done in
15    their response is to say there is nothing there.  And
16    then the U.S. Attorney just got up and said that
17    there is something there.
18              THE COURT:  Ms. Armijo?
19              MS. ARMIJO:  Your Honor, as to text
20    messages, I'm sure that Special Agent Acee doesn't
21    still have any text messages from her.  There were no
22    memos.  There are no 302s.  She wasn't signed up.
23    And I guess what the response to this was, because it
24    was in response to her being a signed -- I believe
25    the request was insinuating that she was a signed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2200

```
 1    CHS, that she was part of the investigation, that she

 2    had charges she was working off.  The refer to the

 3    second part about her smuggling drugs.  And to that

 4    extent, she wasn't a CHS.  There aren't things like

 5    that exist for her where she's a target.  And so to

 6    that extent, no, there isn't anything.  And I've

 7    checked with Corrections as far as are there any

 8    investigations regarding that.  Her relationship in

 9    this case, as far as receiving money, was that she

10    was receiving money on behalf of her husband.  The

11    money was her husband's money.  And so that is the

12    involvement.

13            THE COURT:  So she was just a girlfriend or

14    partner, that's it?

15            MS. ARMIJO:  Yes.

16            THE COURT:  And Mr. Acee is shaking his

17    head that he doesn't have any texts from her.

18            MS. ARMIJO:  Currently, you don't have any

19    texts from her.

20            THE COURT:  Do you mind saying whether he

21    received texts from her?

22            MS. ARMIJO:  He did receive text messages

23    from Grace Duran.  Like I said, it's pretty common

24    with CHSs that they do receive messages on an ongoing

25    basis from the significant others, when the CHSs
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2201

```
 1   cannot communicate directly with the agent.  However,

 2   he did not communicate back to her.  Most of the

 3   texts that he received from her were one-way texts,

 4   so to speak.

 5           THE COURT:  What kind of texts?

 6           MS. ARMIJO:  Her complaining for him.  Her

 7   complaining for him.  Much like the telephone

 8   conversation that he received.

 9           THE COURT:  Complaining for Eric?

10           MS. ARMIJO:  Yes.

11           THE COURT:  All right.  What are you

12   wanting or needing, Mr. Lowry?

13           MR. LOWRY:  Your Honor, I guess I really

14   want a full and fair accounting of the communications

15   between Ms. Duran and the case agent in this case, or

16   the Department of Justice or the FBI.

17           THE COURT:  How do we get it at this point?

18   There is not any text messages left.  So how do we

19   get that?

20           MR. LOWRY:  Well, I can't imagine -- this

21   case isn't that old, and I can't imagine that there

22   is not an ample record of the text messages that were

23   sent to Mr. Acee's number here from Ms. Grace Duran.

24   And I would like access to those records so we could

25   explore both the duration and the length of that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2202

```
 1    relationship.

 2           They want to claim that Ms. Duran was very

 3    uninvolved in this.  But Ms. Duran was, frankly, an

 4    instrumental go-between between Eric Duran and the

 5    FBI in this matter.  I mean, she handled money.  She

 6    looked for independent places to live.  She was quite

 7    instrumental in this case.  And for them to suggest

 8    that this is a trifling matter is not the case.

 9           And it also spills into our request for

10    Brady and Giglio of benefits that were not only

11    extended to cooperating agents, but to significant

12    others.  And we have reason to believe, based on the

13    telephone conversations that took place between

14    Ms. Duran and Mr. Acee, that she was receiving

15    benefits in the form of quashed bench warrants and,

16    you know, minor traffic affairs, things like that.

17           So I mean, we just haven't -- again,

18    they're claiming they're going to give us the

19    Brady-Giglio material, but I think the telephone

20    records would be instrumental in helping understand

21    the nature of that material.

22           THE COURT:  Well, do you have any -- I

23    think I know the answer to this -- but Mr. Acee

24    didn't keep any log, doesn't have any sort of log

25    indicating what texts he received from Ms. Duran?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  I don't think that he did.  But
 2    I don't know -- I mean, I don't know the relevance or
 3    the basis for this.  If we look at Giglio.
 4              THE COURT:  I tend to agree.  And at some
 5    point, if the information is not available, then that
 6    solves a lot of problems.  But I'm not sure I'm
 7    seeing how this is Rule 16 or Giglio or Brady
 8    information.  It seems to me it's discovery, and
 9    fishing, and there is really no evidence or basis for
10    anything being useful here.  It's just speculation
11    and hoping something turns up.
12              But am I correct there is no log?
13              MR. BECK:  That's correct.
14              THE COURT:  And if I understood Ms. Armijo,
15    there are no benefits that were extended to
16    Ms. Duran, right?
17              MR. BECK:  That's right.
18              MR. LOWRY:  Okay, Your Honor.  I will
19    reserve the right to reraise this.
20              THE COURT:  Okay.
21              MR. LOWRY:  Your Honor, I believe that will
22    lead us to number 10.  And I think we had an
23    agreement on number 10 that the visitation records
24    were going to be provided.
25              THE COURT:  Is that correct, Ms. Armijo?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2204

1          MS. ARMIJO:  Yes, Your Honor.  We already

2     have them.  They're going to go out in the next round

3     of discovery.

4          THE COURT:  All right.  Mr. Lowry, does

5     that take care of number 10?

6          MR. LOWRY:  It does, Your Honor.  And then

7     on number 11, the disclosure of all audio recordings,

8     calls, and texts made from the informants'

9     government-issued phones, we attached an exhibit to

10    our reply to sort of outline -- there were a few

11    calls or text messages that preceded that.  And, Your

12    Honor, I'm willing to say that if we can get access

13    to the cellphones ourselves -- I'm hearing that we

14    are -- that this could be a moot point.

15         THE COURT:  Is that correct, Ms. Armijo?

16         MS. ARMIJO:  Yes, Your Honor.

17         THE COURT:  All right.  Anything else,

18    then, on number 11?

19         MR. LOWRY:  No, Your Honor.

20         THE COURT:  Anybody else have anything on

21    the issues that Mr. Lowry has raised on behalf of Mr.

22    Baca that we need to discuss?

23         All right.  Thank you, Mr. Lowry.

24         All right.  I understand -- and I'll just

25    go ahead and state these -- if somebody tells me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2205

1   otherwise that we're moving Mr. Garcia's motion

2   number 11, which is 1267, we're going to move it to

3   the end of the hearing.  That's the one that's

4   projected to take all day.  So I'm going to put it

5   aside unless somebody tells me I'm wrong on that.

6           So we're going to take up Mr. Perez'

7   renewed motion for notice to Count 6 through 12

8   defendants of Rules of Evidence 404(b), 405, 406,

9   608, and res gestae evidence.

10          Mr. Villa.

11          MR. VILLA:  Thank you, Judge.  If you

12  recall, Your Honor, shortly before the Counts 1

13  through 5 and 13 through 15 trial was set to begin in

14  July, we had a hearing on this, and the Court

15  ordered, sort of as a trial run, that the Government,

16  in the response to Mr. Castle -- Billy Garcia's

17  motion -- that, well, let's let those defendants,

18  because they're going to go first, get these letters

19  from the Government.  And the letters essentially set

20  out all of the prior bad acts, if you will, or other

21  evidence that the Government was going to rely on

22  under the rules cited in the motion.

23          And the Court -- the 6 through 12

24  defendants joined, but the Court at that time denied

25  the 6 through 12 defendants without prejudice to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   renewing at a later date.  And I think it was
 2   explicit from the Court that this would be sort of a
 3   trial run.
 4          And so I renewed that motion for the same
 5   reasons that Mr. Castle argued at the previous
 6   hearing, which is basically two.  One, we need to
 7   file motions in limine and try to hammer out as much
 8   of these issues before trial as possible.  And two,
 9   if there are particular acts or other things that we
10   need to investigate or follow up on, we need the time
11   to do that.  So, for instance, if Mr. Perez is
12   accused of having drugs sent to him in the facility,
13   perhaps there are people I need to interview, or
14   reports I need to gather, things like that.
15          And I don't think the Government -- I mean,
16   the Government has renewed its opposition to this.
17   But the only real request I think they've made in
18   their response is give them a little more time.  Last
19   time you gave them 10 days, because we were bearing
20   down on a July trial.  They have asked for 30.  That
21   was in their response filed in early October.  You
22   know, the motions in limine deadline was originally
23   scheduled for Friday.  The parties have agreed, and I
24   believe there is a motion filed -- and I'm sorry I
25   can't tell you whether an order has been signed -- to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2207

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 94

```
 1    extend that deadline.  So there is a little more time

 2    for us to prepare motions in limine.

 3            But I think, given the pendency of our

 4    January trial, we need the letters from the

 5    Government as soon as possible.

 6            THE COURT:  Stay right there.  I think, Mr.

 7    Beck, you've been handling this aspect, correct?

 8            MR. BECK:  Your memory is probably better

 9    than mine, but luckily, I didn't sign up for it

10    today.

11            THE COURT:  Well, here's what I remember us

12    doing -- and this is not in the detail that Mr. Villa

13    just explained -- but I thought we had come back to

14    that in -- was it the trial we were just about to

15    have down here?

16            MR. BECK:  Yes.

17            THE COURT:  And correct me if I'm --

18            MR. VILLA:  Oh, the Mario Rodriguez/Varela

19    trial.

20            THE COURT:  Yeah, the Rodriguez trial.  I

21    thought that we had adopted as a course -- it wasn't

22    just any longer an experiment, it was going to be --

23    and here was my thinking on it, or my memory of my

24    thinking was that the Government may take a position

25    that this is not 404(b) evidence.  The defendant may
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2208

```
 1    say it is.  The only way we're going to be able to
 2    reasonably sort this out was for you to list out the
 3    404(b), 405, 406, 608, res gestae, say:  Here's what
 4    we're going to throw at this guy.  And, you know,
 5    they've got to look at it, and if they think it's
 6    404(b), and they've got a way of keeping it out, they
 7    can.  If they want to look at it and say it's coming
 8    in, they can pass on it.  But the only way to do
 9    this -- and it's partly -- and also I think a
10    protection of the Government, because you've got to
11    give notice of a 404(b).  And until we have these
12    listed out, it's hard for anybody for argue
13    intelligently about it.  So I thought we were going
14    to do that just across the board.
15              MR. BECK:  I don't know that we thought
16    that.  But we were operating under the assumption
17    that that's what --
18              THE COURT:  It was going to happen.  Okay.
19              MR. BECK:  Yes.
20              THE COURT:  All right.  So if we're going
21    to plow ahead with that sort of working
22    arrangement -- and that's we're talking about, right,
23    Mr. Villa?
24              MR. VILLA:  Yes, Your Honor.
25              THE COURT:  All right.  What is getting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2209

1   this into Mr. Perez' hands, this letter to him, what

2   do you need or want?

3           MR. VILLA:  Your Honor, I'm sorry to cut it

4   off, but it is joined by all the 6 through 12

5   defendants.  So it would be letters for the remaining

6   five of us.

7           THE COURT:  Okay.  So this is for the April

8   group.

9           MR. VILLA:  The January group.

10          THE COURT:  The January group, the Molina

11  group, yes.

12          MR. VILLA:  Yes, Your Honor.

13          MR. BECK:  Right, Your Honor.  Yeah, so

14  that's why we responded and asked for 30 days, that

15  we could compile these notices for --

16          THE COURT:  Okay.

17          MR. BECK:  -- bad act notices.

18          THE COURT:  That was from September 22.  Do

19  you still need 30 days from November 9?

20          MR. BECK:  We still do, Your Honor.

21          THE COURT:  Can you live with that?

22          MR. VILLA:  Well, I don't know, Your Honor.

23  I mean, we're talking December 9th.  We've got our

24  hearings.  We've got the holidays.  And as I said, I

25  don't know that getting the motions in limine out are

SANTA FE OFFICE                                                         MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                       1-800-669-9492
                                                                e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2210

 1   a problem.  We're going to need another extension.

 2   But the investigation piece is what concerns me.

 3           THE COURT:  Well, given what they need,

 4   what you need, what are you proposing, if it's not 30

 5   days?

 6           MR. VILLA:  Why don't we split the baby,

 7   two weeks.  I mean, I wanted them in September.  I

 8   wanted them in July, when we argued it.  Two weeks is

 9   what I would ask.

10           THE COURT:  All right.  Two weeks is going

11   to put us right on Thursday, Thanksgiving.

12           MR. VILLA:  Maybe the Monday following.

13           THE COURT:  The Cowboys play three games in

14   12 days.  So that's a very important period of time.

15           MR. VILLA:  Is Zeke going to get suspended?

16           THE COURT:  I'm a federal judge.  I cannot

17   comment.

18           MR. VILLA:  Give us a preview.

19           MR. BECK:  Zeke is staying in.

20           MR. VILLA:  He's out.

21           THE COURT:  I'm going to get myself in

22   trouble here.

23           How about the Monday after that, 5:00?  I

24   think that's the 27th.  That's the 27th.  5:00 on the

25   27th.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                      1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                          e-mail: info@litsupport.com

DNM 2211

 1                    MR. VILLA:  We'll take that, Judge.

 2                    MR. BECK:  Your Honor, honestly, December 9

 3      puts us a month and a half out from trial.  A month

 4      and a half gives them time to file a motion in limine

 5      that responds and asks to exclude this 404(b)

 6      evidence, if that's what they want to do; gives the

 7      Court time to hear it.  It gives them a month and a

 8      half to investigate it, if they need to.  So I don't

 9      think that 30 days from today, December 9th, is an

10      unreasonable request.

11                    THE COURT:  Well, it puts us -- not only

12      this hearing, the next hearing, the next hearing, it

13      puts us into the fourth hearing.  So the next time

14      I'd be able to address anything is going to be mid

15      December.  How about us do this:  Let me see if you

16      can live with this, Mr. Villa -- I forget to bring my

17      calendar.

18                    THE CLERK:  No, you didn't.  It's right

19      here.

20                    MR. VILLA:  Judge, I don't doubt that it's

21      hard on the Government.  But they were able to do it

22      with a much higher number of defendants, twice the

23      number of defendants, back in the summer.  Here,

24      we're just talking five.  And so, if you would

25      consider that when you determine this deadline.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    think it will be a little bit easier on the

 2    Government this time around.

 3              THE COURT:  What if I -- see if you could

 4    live with this, give them a week after Thanksgiving,

 5    the end of business on the 30th.

 6              MR. VILLA:  We'll take whatever you give

 7    us, Judge, we'll do it.

 8              THE COURT:  Let's do that.  That will give

 9    you three weeks from -- two weeks from today --

10    excuse me, three weeks from today.  It's not quite 30

11    days, but it puts it at the end of the month.  So the

12    end of business on the 30th.

13              All right.  Anything else on your motion,

14    Mr. Villa?

15              MR. VILLA:  Can you at least give us an

16    advisory opinion whether you have jurisdiction over

17    the NFL?

18              THE COURT:  Well, the federal courts seem

19    to be rocking along.  I got to actually meet the guy

20    up in Minnesota that does all the --

21              MR. VILLA:  That's where it usually

22    happens.

23              THE COURT:  I know.  It's Judge Magnuson up

24    there.  And he told me that he played college

25    football.  He told me he's not even going to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Minnesota games, I guess he's got so many cases.

 2              MR. VILLA:  That's a shame.

 3              THE COURT:  So I don't want that many

 4    cases.  I wouldn't mind having a few NFL cases.  But

 5    I wouldn't get to the point where I wouldn't go to a

 6    NFL game.  That would be sad.

 7              MR. VILLA:  We'll try to get you some

 8    cases, Judge.

 9              THE COURT:  All right.  Thank you,

10    Mr. Villa.

11              MR. VILLA:  Your Honor, Mr. Castle is

12    telling me something.

13              Just that the current extension on the

14    motions in limine isn't sufficient, so we're going to

15    need another two weeks after the deadline that the

16    Government has to provide the letters.

17              THE COURT:  What is the motion in limine

18    deadline?

19              MR. VILLA:  The current extension I believe

20    it's the 2nd of December.  And I don't imagine the

21    Government is going to oppose.  But since we're all

22    here --

23              MR. BECK:  I think what we did back in May

24    is probably appropriate here.  I think we left open

25    that motion in limine until after they received the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101

1    notice of the 404(b) evidence.  So I think that's

2    appropriate in this case also, to leave open that

3    motion in limine to exclude 404(b) evidence, if they

4    see it's appropriate.

5            THE COURT:  All right.  So we'll just do a

6    carve-out for anything related to this letter you're

7    about to get from the Government?

8            MR. VILLA:  That sounds good.

9            THE COURT:  All right.

10           MR. VILLA:  Thank you, Judge.

11           THE COURT:  Anything else?

12           MR. VILLA:  No, Your Honor.

13           THE COURT:  Anybody else on that issue.

14           All right.  So, Ms. Sirignano, I understand

15   we're pulling your 13, which is the other all-day

16   motion.  So that will go at the very end.  And then

17   we come up with -- I think we're skipping over one,

18   so we're going to go to Mr. Sanchez' motion to sever.

19   I think we're going to take that up because of a

20   flight schedule or something.  But, in any case,

21   that's what I understand is next.  Ms. Jacks?

22           MS. JACKS:  Thank you, Your Honor.  Yes, I

23   just let the Court know I have to leave at 4 to catch

24   a flight.

25           THE COURT:  Let's go ahead and take yours

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2215

```
 1    up then.
 2             MS. JACKS:  So Your Honor, in this motion
 3    what Mr. Sanchez is asking is for the Court to
 4    provide some remedy, whether it's severance of trials
 5    or using two juries to separate the Molina homicide
 6    from the charges in Counts 8 and 9 -- well, 8 through
 7    12, but specifically, the charges regarding the
 8    conspiracy to murder the Secretary of the Department
 9    of Corrections and the head of the Security Threat
10    Intelligence Unit.
11             And I guess I want to just start with the
12    Government's response.  Because the Government's
13    response in opposition is basically saying, Look, you
14    already decided this, so don't consider these
15    arguments.  And I had a different reading of the
16    Court's proceedings regarding the last round of
17    motion for severance.  The Court's order that was
18    filed on June 30 --
19             THE COURT:  Hold on.  Let me see who is
20    either getting on or off.  It there anybody on the
21    phone?
22             THE CLERK:  She just got off.
23             THE COURT:  Is that -- Ms. Fox-Young, is
24    that you on the phone?  You got off?  No Mr. Adams?
25    All right.  We have nobody on the phone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2216

```
 1                 Ms. Jacks.

 2                 MS. JACKS:  Okay, thank you.  Maybe they're

 3      back.

 4                 THE COURT:  Is that Ms. Fox-Young?

 5                 MS. FOX-YOUNG:  Yes, it is, Your Honor.  I

 6      got cut off.

 7                 THE COURT:  Okay.  Ms. Jacks.

 8                 MS. JACKS:  Thanks.

 9                 So, Your Honor, I had a different reading

10      of the prior court proceedings and of the Court's

11      order, Document 1204, filed June 30.  And I just want

12      to focus the Court to two parts of that order that I

13      took as -- a basically, an invitation to -- if we did

14      have some specific prejudice that we should brief it,

15      and we should discuss that specifically with the

16      Court.

17                 And where I got that message -- and

18      hopefully, that's not incorrect -- is at Document

19      1204, starting at page 183 -- I'm sorry, 180 through

20      183.  And specifically, I think what the Court said

21      is that you didn't agree that further -- that

22      sufficient prejudice for further severance exists at

23      this time.  And on page 183, you said that what the

24      defendants had done at that point was only make

25      general assertions of prejudice, and failed to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    specifically identify the prejudice and the concerns

2    of the joinder.

3            And I want to point out at that time all of

4    the counts were together.  And so it was only at the

5    hearing on the motion when the Court announced its

6    intent to separate Counts 6 through 12 as one trial,

7    did we have any sort of a clear indication that the

8    Court intended to try -- or at least at that time the

9    Molina counts with Santistevan-Marcantel counts.

10           So what I tried to do in this motion to

11   sever was to address the specific prejudice that

12   would inure to Mr. Sanchez, if he's tried alongside

13   Defendants Baca and Garcia in the Santistevan and

14   Marcantel conspiracy counts.

15           So I think the Government's response in

16   opposition just misses the point.

17           THE COURT:  All right.

18           MS. JACKS:  So I think I spelled out the

19   argument as clearly as I possibly could in the

20   pleadings.  But just to review it, I just want to

21   kind of review the key points or the key issues.  And

22   in doing this, or in making this argument, I'm not --

23   I don't want to lend credence to the Government's

24   case against Mr. Baca or Mr. Garcia.  And I'm not

25   intending to make any sort of comment about whether

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    those defendants are guilty or not guilty.  But the

2    bottom line is that the evidence in those counts is

3    very different than the evidence in the Molina counts

4    in an important way.

5           In Molina, the evidence against Mr. Sanchez

6    is uncorroborated testimony from informants who are

7    currying favor with the Government to get favorable

8    treatment on their own case.  And it's not

9    corroborated by contemporaneous recordings.  These

10   informants have made numerous prior inconsistent

11   statements.  And remember, in that case, in the

12   Molina homicide, the Government's theory of Mr.

13   Sanchez' involvement is he received an order from Mr.

14   Baca that Molina needed to be killed, and then he

15   made efforts to carry out that order, which resulted

16   in Mr. Molina's death.

17          On the other hand, the evidence in the

18   Marcantel-Santistevan counts is informant testimony.

19   But importantly, the Government at least contends

20   they have recorded corroboration of whatever those

21   informants are expected to testify to.  And they have

22   additional physical evidence and additional video

23   evidence, and additional phone call evidence to

24   corroborate the testimony of the informants.

25          So you have a case against Mr. Sanchez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2219

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106

 1   that's driven by uncorroborated informant testimony.

 2   And then you have another case being tried that the

 3   Court proposes to try along with it, which also

 4   involves allegations that Mr. Baca was ordering

 5   homicides, but in this case corroborated by a

 6   substantial body of evidence.

 7          If you look at the case law, and try to

 8   assess whether there is a serious potential for

 9   prejudice to Mr. Sanchez, it looks to me like there

10   is essentially four factors that the Court should

11   consider.  The first being whether the evidence

12   that's being -- or that's potentially causing the

13   prejudice is otherwise admissible against

14   Mr. Sanchez.  And I submit in this Court -- and the

15   Government hasn't argued otherwise -- that the

16   evidence of the Santistevan-Marcantel murder

17   conspiracies is not admissible against Mr. Sanchez.

18   He had nothing to do with it.  That's a factor that

19   weighs in favor of severing.

20          The second factor is that -- and this is

21   just sort of a generic factor, but it's an important

22   one -- is that in a large case, with varying degrees

23   of culpability, the potential for prejudice to any

24   one defendant increases.  And we have that.  We have

25   a large case with varying degrees of culpability.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2220

```
 1              The other point, or the other issue is that
 2      the nature of the allegations in Counts 8 through 12
 3      is the type of evidence that I think is very easily
 4      used by jurors, by anybody, as propensity character
 5      evidence.  If they have -- if the jury believes that
 6      there is evidence beyond a reasonable doubt that Mr.
 7      Baca ordered the homicides of the Secretary of the
 8      Department of Corrections and the head of the STIU
 9      Unit, it's not a far jump for them to say, Well,
10      that's the kind of person that could order the
11      homicide of a prison inmate.
12              And that's the part that I think makes it
13      really difficult for Mr. Sanchez to avoid prejudice
14      by being in that same trial.  Because I think, as I
15      pointed out in my pleadings, A, that's an inference
16      the jury should not make.  It's an inference that's
17      very natural to make.  And it's an inference that if
18      you call it out and tell them not to make it, you're
19      basically highlighting that fact for the jury.  It's
20      counterproductive.  So I don't think it's the type of
21      evidence that can be -- or the type of inference from
22      the evidence that the Court can somehow cure or
23      protect with the use of a limiting instruction.
24              And then, I think finally, the final
25      factor -- and I think this has been briefed in some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2221

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108

1   motion work by Ms. Sirignano in Christopher Garcia's

2   case, the serious and sensational nature of the

3   allegations.  I mean, prison homicides happen all the

4   time, and they're litigated in courts around this

5   country.  It is a rare and headline grabbing

6   occurrence when someone from prison conspires and

7   makes -- conspires, and there is an effort to kill

8   public officials from prison.  And the serious and

9   sensational nature of the evidence is a fourth factor

10  that weighs in favor of severing the Molina counts,

11  or doing something to isolate the jury considering

12  whether Mr. Sanchez is guilty or not guilty of the

13  Molina homicide from the evidence regarding the

14  Santistevan-Marcantel conspiracy to commit murder.

15          THE COURT:  All right.  Anything else,

16  Ms. Jacks?

17          MS. JACKS:  No.

18          THE COURT:  Thank you, Ms. Jacks.

19          Anybody else want to speak on the severance

20  before I hear from, it looks like Mr. Castellano?

21          All right.  Mr. Castellano.  If these cases

22  were severed, would you still use or have the

23  potential to use the Molina murder to establish the

24  racketeering activity that would be then, I guess,

25  the predicate for 6 and 7?

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2222

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 109

1          MR. CASTELLANO:  Yes, Your Honor.  It's an

2     element of the offense.

3          THE COURT:  So you're going to use the

4     Molina murder, whether these cases are tried

5     separately or together, to establish the racketeering

6     activity?

7          MR. CASTELLANO:  Yes, because we have to

8     establish that an enterprise exists; Mr. Baca being

9     one of the leaders of the enterprise, and as someone

10    who issues orders.

11         And Ms. Jacks said that the jury couldn't

12    make this conclusion.  But circumstantial evidence

13    would allow them to conclude that someone like Mr.

14    Baca, who issues orders, could issue an order to kill

15    someone in another prison.

16         THE COURT:  That's exactly what you're

17    going to try to prove, right?

18         MR. CASTELLANO:  Yes, it is, Your Honor.

19         THE COURT:  And under racketeering, you

20    think you're allowed to do that, and that's what you

21    have to do?

22         MR. CASTELLANO:  That's correct.

23         THE COURT:  What -- if you don't want to

24    answer this question, nobody wants to answer this

25    question, that's fine, but you were helpful to me,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2223

```
1    and people were helpful to me earlier when I was
2    working with the earlier severance motion.  And,
3    again, if nobody wants to comment on this, that's
4    fine.  But do you expect all five of these folks to
5    be around for trial on July 29?
6              MR. CASTELLANO:  We do.
7              THE COURT:  What did I say?  July?
8    January.
9              MR. CASTELLANO:  Well, let me put it this
10   way.  We would like to make the case smaller.  We
11   think there is a possibility, but I couldn't say more
12   than that.
13             THE COURT:  You couldn't say what number it
14   may end up with?
15             MR. CASTELLANO:  No, I couldn't, Your
16   Honor, not at this point.  But we would like to
17   shrink the case.  And if we can, we will.  So
18   currently, we have five defendants in that trial.
19             THE COURT:  Well, anything else you want to
20   say in response to Ms. Jacks' arguments?
21             MR. CASTELLANO:  Yes, sir.  Related to the
22   sensational nature of the charges, I'm borrowing Ms.
23   Johnson's motion to sever as an exhibit here.  It's
24   Document 858.  So my basic point here is that the
25   allegation is that the conspiracy to murder
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    corrections officials is a highly sensational act,
 2    which would cause prejudice.  But I'm not sure I
 3    agree with that so much.
 4              I'm showing the Court one of the photos.
 5    That's the victim, RG, in this case.  So we expect to
 6    show photos of that nature to the jury.  I'm showing
 7    a picture on page 8 of that document of the victim,
 8    FC.  And in Count -- let's see, we have decedent, FS,
 9    on page 10 of that document.  And then in Counts 4
10    and 5, we have -- I'm showing the Court victim AB;
11    that's a charred, burned body of that victim.  And
12    then for Counts 6 and 7, the Molina murder, on page
13    12 of that document there is another photo.
14              In my opinion, the jury is going to be more
15    disturbed by pictures of dead people than victims who
16    are able to walk into the courtroom and testify.  Of
17    course, it's a serious thing to order the murder of a
18    corrections official.  But at least those people will
19    be able to walk in the courtroom and testify.
20              In terms of the serious nature of the
21    offenses, under VICAR, a conspiracy to murder is a
22    10-year penalty; murder is life or death.  So even
23    the statute tells us how much more serious murder is
24    than a conspiracy to murder.  And I agree that is a
25    serious allegation of trying to murder prison
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2225

1    officials.  But I think it's probably more disturbing

2    to see photos of dead people than who can take the

3    stand and testify.  So I don't know that argument

4    carries much weight.

5           Related to uncorroborated testimony, that's

6    also not accurate.  I know it's a subject of a motion

7    to suppress, but Rudy Perez' recording is independent

8    corroboration of the murder.  He lists two other

9    co-conspirators in his statement.  The Court has

10   already ruled under the Cook and Smalls cases that

11   this is a statement against interests, not

12   specifically on this, but generally speaking, is a

13   statement against interest, which could be used

14   against the other people named in the statement.

15          So Mr. Perez' statement to an informant in

16   prison names Mr. Sanchez and another person.  So we

17   do have independent corroboration of that murder.

18   There is other testimony and other evidence

19   indicating that Mr. Sanchez was involved with this

20   murder.

21          In addition, according to some of the other

22   statements, the video will show Mr. Sanchez sitting

23   at a table during the time that Mr. Molina is being

24   stabbed.  And that is actually some corroboration of

25   what the cooperators say, because they indicate Mr.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                       e-mail: info@litsupport.com

DNM 2226

 1   Sanchez wanted to be seen on the video doing nothing,

 2   so he would appear as if he was not involved with

 3   this incident.  So he is clearly in plain view.  And

 4   as people normally expect the cameras to be covered,

 5   they weren't, and that was also for the same reason.

 6          So there are a number of things along the

 7   way which will corroborate the testimony.  So there

 8   is corroboration.

 9          So defense counsel focuses once again just

10   on the mere acts, which are a conspiracy to murder

11   and a murder.  But those are only one out of five

12   elements that we have to prove in this case.  So we

13   have to prove the enterprise, commerce, racketeering

14   activity, and the motive.  And so we can use the same

15   evidence against Mr. Sanchez as we could in the

16   others, in the other counts that we'll be using in

17   trial.  So once again, focusing on one element is the

18   only thing that she's doing, and not focusing on the

19   other elements of the offense.

20          There is an allegation that a lot of this

21   will be 404(b) evidence.  But, once again, we allege

22   that much of the racketeering activity is an element

23   which we actually have to prove, and not 404(b)

24   evidence.

25          So I think based on all of those things, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2227

```
 1    focus on --

 2            THE COURT:  So you think all the evidence

 3    you're going to use on the Molina murder is going to

 4    also be admissible against anybody on 6 and 7?

 5            MR. CASTELLANO:  Yes, because we have to

 6    show the ongoing nature of the enterprise.  This is

 7    an association-in-fact enterprise, so we do have to

 8    show the ongoing nature.  And in this case, these

 9    murders, the murder and the conspiracy are not far

10    apart; they're actually fairly close in time.

11            And previously -- I understand there are

12    more specific arguments -- but I focused on your

13    ruling when you said you did not agree that there was

14    sufficient prejudice for further severances to exist.

15    And you also noted that mere assertions of spillover

16    prejudice are not sufficient to warrant a severance.

17            So I think the Court considered this.  I

18    think the Court severed the case, and already granted

19    some relief in this case.  And I don't think that a

20    further severance is called for.

21            And unless you have any other questions, I

22    don't have anything else, Your Honor.

23            THE COURT:  All right.  Thank you, Mr.

24    Castellano.

25            Anyone else have anything they want to say
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 115

```
 1    before I give Ms. Jacks the final word?

 2              All right.  Ms. Jacks.

 3              MS. JACKS:  Thank you.

 4              I just want to comment on a couple of

 5    things that Mr. Castellano said.  Because the Court

 6    asked if -- I think what the Court asked, or meant to

 7    ask was whether the Santistevan-Marcantel murder

 8    conspiracy were predicate acts for Mr. Sanchez in the

 9    trial of the Molina homicide.  And I want to just, I

10    guess, clarify something.  Because the charges -- the

11    charge here in Counts 6 and 7 are Section 1959 VICAR

12    crimes.  There is not a racketeering -- a substantive

13    racketeering offense.  And there is a difference

14    about the type of racketeering activity that needs to

15    be proven in a substantive racketeering offense

16    versus a VICAR.

17              THE COURT:  But can't the Government use

18    the same evidence and the same predicate acts to

19    establish both?

20              MS. JACKS:  Well, I guess I'm getting

21    wrapped up in the term "predicate act."  The

22    substantive RICO offense requires the proof of two

23    predicate acts within certain relationship to each

24    other to prove the elements of the offense.  But the

25    VICAR does not.  And what the VICAR requires -- and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2229

1    I'm actually referencing the U.S. Attorney Manual on

2    VICAR prosecutions.  And what the manual recognizes

3    is that, unlike a substantive RICO, Section 1959 does

4    not by its explicit terms require that a defendant

5    commit a pattern of racketeering activity.

6            The elements, as defined actually by Mr.

7    Castellano and the U.S. Attorney Manual, with respect

8    to that particular element, is that the Government

9    has to prove that the charged enterprise engaged in

10   racketeering activity.

11           THE COURT:  So -- but doesn't that give

12   them the freedom, then, to choose which racketeering

13   activity they want to prove?

14           MS. JACKS:  Subject to the Court's

15   discretion, and subject to the Court's determination

16   that what they want to prove isn't going to unfairly

17   prejudice a defendant in the case, and prevent them

18   from receiving a fair trial.

19           So my point is this:  With respect to the

20   VICAR offense, the Government can prove that members

21   of the SNM engaged in drug trafficking in prison.

22   That alone could be sufficient to prove the

23   racketeering activity.

24           THE COURT:  Yeah, but we know from Old

25   Chief that the Government gets to prove its case with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2230

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 117 2231

 1    al the robustness that it wants.  I mean, if it wants

 2    to come in here and use this crime to prove, aren't

 3    they free to do it?

 4              MS. JACKS:  Subject to the Court's

 5    discretion.

 6              THE COURT:  Well, I mean, really, wouldn't

 7    I be terribly heavy handed to tell the Government how

 8    to try their case?

 9              MS. JACKS:  I don't think so at all.  And I

10    think what would be --

11              THE COURT:  Doesn't that violate Old Chief,

12    in the sense that I'm cramming down a stipulation

13    that they don't want?  They want the robust evidence

14    in front of the jury.

15              MS. JACKS:  Well, apparently, based on what

16    Mr. Castellano just said he wants to come in here and

17    prove to the jury that Anthony Baca orders murders,

18    and therefore, Daniel Sanchez is guilty.  And that's

19    where the Court has a duty to step in and stop.

20    They're not just allowed --

21              THE COURT:  Tell me why I have a duty, and

22    tell me also why I would even have the ability to not

23    allow the Government to do that.

24              MS. JACKS:  Because I think that's a

25    completely improper argument regarding character

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2231

1   evidence that's prohibited by the Evidence Code, and

2   has been prohibited in courts in this country

3   forever.  Just --

4            THE COURT:  Character evidence?

5            MS. JACKS:  Right.

6            THE COURT:  If the case, though, is against

7   Baca -- he's ordering these two hits -- how is it

8   character evidence against Mr. Sanchez?

9            MS. JACKS:  Well, I think it will be used

10  in that argument that Mr. Castellano just made, it's

11  using it as character evidence against Mr. Sanchez.

12  Because what it's saying is that -- let's just

13  assume, for the sake of argument, Mr. Castellano

14  proves that Baca ordered or conspired to commit

15  murder.  To make the argument that because Mr. Baca

16  conspired to commit murder in one instance, he must

17  have conspired to commit murder with Mr. Sanchez in

18  another is exactly the type of improper character

19  inference that should not be allowed.  And I think,

20  if that argument is allowed at the trial, there is

21  going to be some serious issues on appeal.

22            THE COURT:  Well, I mean, you can give a

23  limiting instruction.  But if somebody commits two

24  murders, nobody is thinking about character evidence.

25  They're thinking he committed two murders.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 233

```
 1                MS. JACKS:  Well, Mr. Sanchez --

 2                THE COURT:  You can say just because he

 3     committed one murder doesn't mean he committed

 4     another.  But the whole point of the case is to prove

 5     two murders, right?

 6                MS. JACKS:  I think you're analyzing the

 7     evidence from the perspective of a prosecution

 8     against Mr. Baca.

 9                And I think what should be highlighted is

10     that in a prosecution of the VICAR offense alleged

11     against Mr. Sanchez, what I'm saying is it's

12     prejudicial to provide evidence of an unrelated

13     conspiracy to commit murder he had nothing do with.

14                THE COURT:  I will give you that it's going

15     to be prejudicial.  The problem is, it seems to me I

16     don't really have -- I mean, you say I have the

17     discretion.  But I'm not really seeing that I have

18     the discretion to tell the Government how to prove

19     either the RICO or the VICAR.  It seems to me the

20     evidence is going to be so close together that I

21     don't have the ability to tell them how to try their

22     case.

23                MS. JACKS:  Well --

24                THE COURT:  If they tell me that if they

25     tried Sanchez, they're going to bring in this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    predicate act and prove it against him, I don't guess

2    I see any benefit to the severance.

3              MS. JACKS:  Let me go back again, because

4    the Court --

5              THE COURT:  In fact, it would seem to me he

6    would be benefiting from the other defendants trying

7    to disprove those acts, rather than having Mr.

8    Sanchez alone defending against those without the

9    other defendants there.

10             MS. JACKS:  If Mr. Sanchez was in a trial

11   alone as to Counts 6 and 7, the evidence of another

12   murder conspiracy to commit murder, that he had

13   nothing to do with is -- I believe would be improper

14   to admit that evidence.

15             THE COURT:  But isn't that evidence going

16   to come in against any defendant to prove the

17   enterprise?

18             MS. JACKS:  I don't believe so.  And I

19   believe this Court has discretion to regulate -- this

20   Court is a referee.  And what this Court can't do is

21   let the fact that we're trying joint defendants

22   together -- shouldn't let the Government trod over

23   the rights of one defendant to prove a case against

24   another.  And that's the issue with joint trials.

25             And so what I'm saying is to make the trial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 122

```
 1    fair --
 2              THE COURT:  If the evidence is coming in on
 3    the enterprise, I guess I'm not seeing how I can tell
 4    the Government you can only prove the enterprise one
 5    way.
 6              MS. JACKS:  I'm not saying that.
 7              THE COURT:  But aren't you really saying
 8    that, because you're saying they've got to prove the
 9    drug trafficking, not with murders.
10              MS. JACKS:  No, what I'm saying it's the
11    Court -- the Court should exercise its discretion in
12    how they prove the enterprise.  And I wouldn't say
13    they can only prove it one way.  I would say what the
14    Court can tell the Government is:  You can prove the
15    type of enterprise as required.  You can prove that
16    the SNM engaged in racketeering activity.  But what
17    you can't do is bring in other crimes -- well,
18    specifically, another conspiracy to commit murder
19    against Mr. Sanchez that he had nothing to do with.
20    I mean, they could prove it a million ways.  There is
21    just one way they shouldn't be allowed to prove it,
22    because it's going to unfairly prejudice Mr. Sanchez
23    and deny him a fair trial.
24              THE COURT:  Okay.
25              MS. JACKS:  And I just want to respond, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    guess, to two things that Mr. Castellano said.  With

2    respect to the sensational or serious nature of the

3    case, I mean, yes, Mr. Castellano is right, a

4    conspiracy to commit murder is not punished as

5    severely as an actual homicide -- as an actual

6    murder.

7             But what is sensational about the

8    allegations regarding Santistevan and Marcantel is

9    the fact that people in prison are conspiring or

10   allegedly conspiring to kill civilians, high-ranking

11   civilians who hold a state office.  That's the

12   sensational nature.  And that's headline-grabbing --

13   the headline-grabbing allegations from this case.

14            And, finally, Mr. Castellano talked about

15   some slight corroboration that I guess the Government

16   is hopeful, or going to try to argue -- is hopeful of

17   getting in, or evidence that they're going to try to

18   argue is corroboration of their contradictory

19   informants.  And I think even the Government would

20   have to admit that the quality of their, quote,

21   "corroboration" in the Molina homicide pales in

22   comparison to the corroboration they have in the

23   Marcantel-Santistevan cases.

24            THE COURT:  That the Marcantel side is much

25   stronger, in your view?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. JACKS:  The evidence, in terms of the
 2    type of corroboration the Government collected, yes.
 3              THE COURT:  All right.  Anything else,
 4    Ms. Jacks?
 5              MS. JACKS:  No.  Thank you.
 6              THE COURT:  Well, I'll take a further look
 7    at this.  But I'm inclined to deny the motion.  I'll
 8    study -- there is a possibility I'm not quite
 9    understanding this evidence as well.  And I'll make
10    sure I understand.  But it seems to me that I don't
11    have really the ability or power to tell the
12    Government how to try its case.
13              If it has a number of ways of proving
14    enterprise and other elements of the VICAR offense,
15    it's not really my power to start telling them that
16    they have to prove it a certain way.  It seems to me
17    this evidence is likely -- given the way they're
18    planning to try this case, or try it separately, to
19    bring this evidence in.  And so severance is not
20    going to do us any good.
21              I still think we're a ways out.  I share
22    Mr. Castellano's assessment.  I think that we may be
23    looking at a little bit smaller number anyway.  And
24    so it's probably a little early to do any further
25    severance.  I think we're down into mid-single digits
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2237

1   now, and I think that that gives me a lot more

2   confidence that I can instruct and manage to keep

3   things separate so the jury cannot be prejudiced by

4   everything with 32 or 40 defendants in the room.

5           So I think we're -- I think we've reduced

6   the prejudice to manageable levels.  And I feel like

7   we can get this one tried, and it be a fair trial for

8   the five men that are in that case.  So I'm inclined

9   to deny that, but I'll take a look at that.

10          All right.  Let's go back, then, to 14,

11  which is 1281.  This is another one of the full-day

12  motions that Mr. Garcia filed.  Are we ready to

13  basically turn over the day to you, Ms. Sirignano?

14          MS. SIRIGNANO:  Your Honor, that's a typo.

15  I think we could probably get through that before

16  lunch.  It should have said "hour."

17          THE COURT:  Okay.  Well, do you think

18  you're going to need an hour on it?

19          MS. SIRIGNANO:  Likely.

20          THE COURT:  Let me talk to Ms. Wild here a

21  second.

22          (A discussion was held off the record.)

23          THE COURT:  Well, probably against

24  everybody's advice, but let's pick up No. 16, which

25  is Mr. Troup's motion for extension of time to file

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2238

```
 1    Daubert motion.  I'm sorry, I didn't have my mic on.
 2    So, Mr. Burke, if you want to address this motion --
 3              MR. BURKE:  Yes, Your Honor.  I don't
 4    believe this is contested.  We just wanted to get all
 5    of the CVs before we filed our Daubert motions.  And
 6    we haven't received the CV of Kristin Radecki, the
 7    forensic serology analyst.  Ms. Armijo was fine with
 8    giving us a week extension.  And we asked for four.
 9    We could probably live with either, frankly.  We just
10    need to get the last of those CVs, and then we can
11    proceed with our Daubert motions after that.
12              THE COURT:  Okay.  What did they agree to
13    give you?
14              MR. BURKE:  She went with a week.  We were
15    looking for four.
16              THE COURT:  But you could live with a week?
17              MS. ARMIJO:  And, Your Honor, we have it.
18    It was going to go out in discovery with the next
19    round, but we can email it to them today.
20              THE COURT:  All right.
21              MR. BURKE:  Well, take your time.  And when
22    we get it in the next batch, then we'll get our
23    Daubert motions.
24              THE COURT:  All right.  So a week extension
25    from when he gets it; is that fair?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2239

```
 1            MS. ARMIJO:  That's fine.  And, Your Honor,
 2    I believe it's teed up to go.  We're going to make a
 3    big one probably now, obviously by next Friday.  So
 4    it will go out by then.  I guess we can take our
 5    time.  We have it.
 6            THE COURT:  All right.  Can we live with a
 7    week from when you get it?
 8            MR. BURKE:  Yes, sir.  Thank you.
 9            THE COURT:  All right.  So anybody else on
10    that?  All right.  That motion is granted in part.
11    We'll go a week from the date that you get the resume
12    or the CV.
13            MR. BURKE:  Your Honor, the next one, if we
14    wanted to move along to --
15            THE COURT:  Do you want to do number 17?
16            MR. BURKE:  1046 is similar, Your Honor.
17    We just wanted more time.
18            THE COURT:  Let's take it up then.
19            MR. BURKE:  We asked for an extension of
20    time to provide scientific expert notices.  We just
21    wanted to see everything they have before we did what
22    we're going to do.
23            THE COURT:  All right.
24            MR. BURKE:  And I believe the Government's
25    concern was that the Government didn't want to see
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2240

```
 1    anything being used along these lines for a
 2    continuance.  And that is certainly not our purpose.
 3              THE COURT:  What's your thoughts on this,
 4    Ms. Armijo?
 5              MS. ARMIJO:  Your Honor, if it's not being
 6    used for a continuance, that's fine.
 7              The other concern is, with the holidays
 8    coming up, I just don't want the Government to be
 9    placed in a bind if we're having to respond to
10    anything over the holidays.  But I think we've been
11    pretty cordial about giving extensions.  So that's
12    fine.
13              MR. BURKE:  And that is not our purpose to
14    create extra work.  They do have enough work over the
15    holidays, Your Honor.
16              THE COURT:  All right.  So when is the
17    extension to, then?
18              MR. BURKE:  Well, Your Honor, a couple of
19    weeks after we get the final scientific reports from
20    the Government.
21              THE COURT:  All right.  Does that work for
22    you, Ms. Armijo?  Two weeks, 14 days after they get
23    the scientific expert reports from you?
24              MS. ARMIJO:  That should be fine.
25              THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2241

1           MR. BURKE:  Your Honor, I can move through

2     to the next one, which was our 1250.

3           THE COURT:  Let me just see.  Anybody else

4     have any issue on that?  All right.  Go ahead, Mr.

5     Burke.

6           MR. BURKE:  Our 1250; and the Government's

7     response to that was 1275; and the reply was 1324.

8     As it turns out, the issues and arguments raised in

9     those pleadings were subsumed in the argument taken

10    up yesterday regarding Giglio, Brady, and the

11    deadlines for lists of witnesses.  So I believe that

12    the Court's orders and rulings on yesterday's would

13    cover what we were seeking in 1250, the second motion

14    to compel discovery.

15          THE COURT:  All right.  Any other issues,

16    then, on that, Ms. Armijo, on 1250?  Consider those

17    rulings that I made yesterday to apply to 1250?

18          MR. BECK:  Yeah, I agree with Mr. Burke.

19          THE COURT:  All right.  Anybody else have

20    anything on 1250?

21          All right.  That's tab number 18 on our

22    list.

23          MR. BURKE:  Thank you, Your Honor.

24          THE COURT:  Thank you, Mr. Burke.

25          Let me just, before we take our break, on

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

DNM 2242

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2243

1    Document 1190, which was the motion to obtain mental

2    health records, I had read almost everything, but I

3    didn't get quite to this one.  And then we discussed

4    it yesterday.  And that's where I saw Mr. Couleur had

5    then filed a notice of assertion of privilege.  So

6    maybe I was too optimistic yesterday that we were

7    going to get Mr. Couleur's cooperation on this.

8           Anything further that we need to discuss on

9    that?  Does anybody have any more information on it?

10   Can the rulings I made yesterday apply till we get

11   back together to see if we're going to -- or is there

12   something else here that I'm missing, Mr. Castellano?

13           MR. CASTELLANO:  I believe the Court's

14   rulings will cover it for now, Your Honor.  I didn't

15   get a chance to talk to Mr. Couleur.  But I think

16   he'll be able -- basically, just want have the

17   ability to reserve the right to object to any

18   information that gets disclosed.

19           THE COURT:  Well, here's what I was

20   thinking:  Generally, the rule is the person that's

21   resisting the information has to do a privilege log,

22   prove that the privilege exists.  So I guess in

23   y'all's communication with Mr. Couleur tell him that

24   I'm inclined to think that the documents ought to be

25   given to him; he ought to go through those things,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2243

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130

1    and, you know, the stuff he just doesn't care about,

2    I'd encourage you just to let it go.  If there is

3    things that he does care about, that he marks them

4    up, and then I guess that's what I'll take in camera

5    and try to review.  Just remind him that we've got an

6    opinion out there where I use the two reports pretty

7    extensively.  So I'm not telling him what to do, but

8    it seems to me that a lot of it is probably not going

9    to be privileged, and some of it is.  I think

10   everybody agrees in this room that the defendants are

11   entitled to some of it.  So if you'll look at with

12   those two eyes:  A, is it irrelevant?  B, is it

13   privileged anyway?  And then C, is it likely I'm

14   going to overrule the privilege.  Maybe he can reduce

15   it to something he doesn't care about or reduces the

16   amount of rulings I need to make on that.

17            Mr. Cooper, did you have anything you

18   wanted to say on that?

19            MR. COOPER:  No, Your Honor.  I just wanted

20   to tell you we hadn't heard anything else.

21            THE COURT:  Was this your motion?  Do you

22   think I've taken care of it over the last two days?

23            MR. COOPER:  Yes, Your Honor.  Thank you.

24            THE COURT:  If y'all just talk to him about

25   it, and we can get a transcript to him if he wants to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2244

1    review my comments here, he can.

2              All right.  Mr. Castellano.

3              MR. CASTELLANO:  Story to interrupt, Your

4    Honor.  Just to make sure I understand the process.

5    So you want to have Mr. Couleur look at the documents

6    and submit them to the Court for in camera review?

7              THE COURT:  Well, I'm not excited about

8    that, given the volume that we're talking about.  But

9    I guess I'm not seeing a way to avoid it.  So I guess

10   the question is he needs to -- if he's going to

11   assert the privilege, he needs to go through these

12   documents and see if there is actually a privilege.

13             I have written on that.  And you might tell

14   Mr. Couleur as to exactly what the privilege is.

15   I'll tell you where to look.  Ms. Wild will be able

16   to tell you the case.  It's in excessive force cases

17   that I've been doing up there in Albuquerque with

18   police officers.  He's got to be making it for his

19   benefit.  If he's making it for some other benefit,

20   that may be questionable whether he can assert the

21   privilege on it, because it's being done for the

22   decision of the Court rather than for himself.

23             So the privilege, if I understand it

24   correctly, protects him going in and getting

25   psychiatric help.  Some of these evaluations may not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2245

 1    qualify.  I'll let him -- I'm not ruling on it yet

 2    because I've not had it come up in this context.  But

 3    when I've got an APD officer over there, he goes and

 4    gets a psychiatric exam for the benefit of APD, I

 5    say, well, that's not really for his benefit, so

 6    there is not privilege there.  If he's going in, if

 7    he's just shot somebody, and goes and gets

 8    counseling, that's for his benefit.  That's being

 9    provided by the city, it's being paid for, but it's

10    to help him deal with the shooting.

11         So just talking to a psychiatrist or a

12    psychologist may or may not get you a privilege.  So

13    he probably needs to look at my opinions and see if

14    they're helpful, decide whether he really can assert

15    it.  I think a lot of stuff in those reports are not

16    going to be privileged, a lot of materials that he's

17    receiving, a lot of those.  So if he can clean all

18    those out, and then he can decide what he really

19    wants to assert a privilege on.

20         And then he needs to look at it with a

21    third eye, and that is whether I'm going to override

22    it to provide it to the defendant.  Once we're done

23    with that, I guess I'll probably have to then make

24    the ruling with what's left.  And that's what he

25    probably ought to be submitting to me.  Otherwise,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2246

 1   everything else I assume is being produced to the

 2   defendants.

 3           All right.  Let's take our break.  We'll be

 4   in recess for about a hour.  And then we'll pick

 5   up -- I guess we'll go to Ms. Sirignano's motion

 6   number 14, 1281, after lunch.

 7           (The lunch recess was held.)

 8           THE COURT:  Good afternoon everyone.

 9           All right.  I think we're ready to start

10   with your motion, Ms. Sirignano.  If you want to --

11   while you're coming up to the podium -- the opinion

12   y'all might want to tell Mr. Couleur to take a look

13   at -- it's Dorato, D-O-R-A-T-O, versus Smith.  It's

14   case number, Civil Matter No. 14-365.  And it's

15   Document 139.  So y'all might have Mr. Couleur look

16   at that, and see if we can maybe reduce the

17   disagreements on that.

18           All right.  Ms. Sirignano, if we want to

19   take up your 12(b)(4)(B) motion, let's do that now.

20           MS. SIRIGNANO:  Thank you, Your Honor.

21           THE COURT:  Ms. Sirignano.

22           MS. SIRIGNANO:  Your Honor, I filed

23   Document 1281 on October 2nd.  And the Government

24   responded by filing Document 1334.  A reply was

25   filed, Document 1388.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2247

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

```
 1            And so this formal motion triggers the
 2    requirements of 12(b)(4)(B), so the defendants can
 3    make motions to suppress in this case.
 4            Practically speaking, this request is being
 5    made to move this case smoothly, more smoothly, so we
 6    can file the motions sooner than later.  As you know,
 7    we've got thousands of phone calls.  And Team Garcia
 8    is planning on filing motions to suppress those phone
 9    calls as well.
10            And so we are just requesting, not to get
11    the Government's strategy, as they are arguing, but
12    rather, just to get everything all teed up, all lined
13    up, and make these motions to suppress, based on what
14    the Government is going to use in their
15    case-in-chief.
16            The Government did spend time, Your Honor,
17    in their response, which really didn't address the
18    issue of whether or not they were going to turn this
19    over.  They were more interested in the rebuttal
20    witnesses or the rebuttal evidence.
21            And I did cite some cases that say that the
22    evidence wouldn't be precluded if the evidence wasn't
23    noticed up initially pursuant to Rule 12(b)(4)(B).
24    I'm not so concerned about rebuttal evidence right
25    now.  If we could just get the evidence that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2248

```
 1   Government plans on using in its case-in-chief and
 2   start there, then we could get these motions to
 3   suppress filed promptly.
 4           And in my reply, Document 1388, I cited a
 5   number of cases that provide that we're not
 6   requesting the Government's trial strategy.  But just
 7   merely to provide us with sufficient information to
 8   file necessary suppression motions.
 9           And Judge Brack, in the Lujan case, did
10   write specifically on the 12(b)(4)(B) evidence, the
11   requirements of 12(b)(4)(B).
12           So that's all I have, Judge.  And this
13   motion was joined by just about everybody in this
14   case.  And after it was filed --
15           (Cellphone interruption.)
16           MS. SIRIGNANO:  So that's all I have,
17   Judge.
18           THE COURT:  Thank you, Ms. Sirignano.
19           At least it's happy music, right?
20           MR. CASTELLANO:  I don't think I'll need
21   any music for my argument, Your Honor.
22           THE COURT:  Okay.  I'm going to be
23   disappointed.
24           MR. CASTELLANO:  I'm going to go without.
25           Well, Your Honor, we do oppose the motion.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2249

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32250

```
 1  I don't know of any judge in the district who has
 2  granted this motion.  Judge Brack looked at it in the
 3  Lujan case, and Judge Herrera looked at it in the
 4  McCluskey case, which were both death penalty cases.
 5  So it's not as if those weren't complex cases with
 6  serious consequences.  So we do have these that are
 7  somewhat similar to what we're looking at here.  But
 8  I'm not aware of any judge who has granted it.
 9            THE COURT:  I've got to tell you, I'm not
10  sure I've ever focused on this rule before, so I'm
11  not sure that anybody has made a motion that --
12  12(b)(4) motion.  But it's in the rules.  What is its
13  intended purpose, and when can a defendant use it and
14  invoke it and get information?
15            MR. CASTELLANO:  I think we litigated this
16  in Christopher Garcia's stand-alone case.  I don't
17  know if the Court ruled on it because there was a
18  plea prior to the ruling, probably.
19            So we had looked at this case.  The rule is
20  designed to allow the defense enough information to
21  file motions to suppress.  And the rule says -- or
22  the rulings have stated "germane motions to
23  suppress."  Defense counsel --
24            THE COURT:  So it uses the word "suppress,"
25  so it is directly tied to try to find out whether --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2250

1    to educate the defendant so they can meaningfully

2    file a motion to suppress; that's the purpose of the

3    rule?

4              MR. CASTELLANO:  Yes, Your Honor.

5              THE COURT:  I can certainly imagine in some

6    of the typical drug stop -- bus cases, train cases,

7    car cases on I-40, those sort of cases, everybody is

8    pretty clear as to what the evidence is going to be,

9    and what the motion to suppress is going to be.  How

10   do we turn this sort of rule -- how do we use it in a

11   case like this?  If Ms. Sirignano wants to file every

12   possible motion to suppress she can think of.  How do

13   we tell her -- how do we go about telling her what

14   evidence to do that with?

15             MR. CASTELLANO:  Well, she has the

16   evidence.  And she's already told the Court that she

17   already plans to file an additional motion to

18   suppress based on telephone calls.  So she doesn't

19   need that information to file a motion to suppress.

20   She's just told the Court she's already intending on

21   filing another motion to suppress.

22             THE COURT:  Well, if I read the rule -- and

23   correct me if I'm wrong -- it says "Request notice of

24   the Government's intent to use."  So it's not that

25   she has to have possession of it.  This is not a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2251

1   motion to compel or a motion to get further

2   information.  She has a right to ask you to tell her

3   what you're going to use so she can file a motion to

4   suppress.

5        MR. CASTELLANO:  Right.  And what Judge

6   Herrera held was that the purpose of the rule is to

7   provide a defendant with sufficient information to

8   enable him to file germane motions to suppress, but

9   ultimately ruled that the Government had to tell the

10  defense what it intended -- what it did not intend to

11  use in its case-in-chief.

12        THE COURT:  Oh.

13        MR. CASTELLANO:  So that way, if we tell

14  you we're not going to use this, the defendant says,

15  I don't need to worry about it.  I was worried about

16  it before.  You're telling me you're not using it.

17  Now I don't need to worry about filing a motion to

18  suppress.

19        THE COURT:  Okay.

20        MR. CASTELLANO:  So that's what Judge Brack

21  ruled -- Judge Herrera has held that twice -- and so

22  really what it tells the defense is, okay, this is

23  something you don't need to worry about, so you don't

24  need to file a motion.  And that's how the rule has

25  played out.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2252

```
 1              THE COURT:  Okay.  Other courts have done
 2    that besides Herrera and Brack?  Is that sort of the
 3    judges do it in big volume cases?
 4              MR. CASTELLANO:  I don't know about the
 5    other cases.  I know in the district.  But it looks
 6    like the other cases we've cited, that is basically
 7    the way it comes down.
 8              And, of course, today, I guess, the defense
 9    is backing off the rebuttal argument.  So I don't
10    know if we need to address that or not.
11              THE COURT:  Let's put it aside, because I
12    agree with you, it sounds like Ms. Sirignano really
13    wanted to get these motions to suppress filed, and
14    she'd fight over rebuttal another day.
15              MR. CASTELLANO:  So the rule just doesn't
16    intend anything more than that.  And the reason the
17    Court doesn't see that is because it's typically just
18    not an issue.
19              THE COURT:  So what are you suggesting the
20    Government is going to do to give its notice under
21    (4)(b)?  Do you have some categories of evidence that
22    you're not going to use, that you produced to her?
23              MR. CASTELLANO:  I can't think of any at
24    this point.  Because she's mentioned phone calls.
25    And phone calls will be relevant.  Mr. Garcia was
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 2253

1   captured on the phone making admissions and making

2   requests.  So she's mentioned that.  We will be using

3   that.  There is a -- the execution of a warrant at

4   his home.  There is evidence from that that we can be

5   using.

6            So I don't have a category, or I

7   wouldn't -- because of the elements and because of

8   how expansive the VICAR statute is, there is a lot of

9   information.

10           THE COURT:  So right at the moment, you

11  can't think of any category of specific evidence that

12  you've produced to her that you're not going to use?

13           MR. CASTELLANO:  No.

14           THE COURT:  All right.  Anything else you

15  want to say on this motion, Mr. Castellano?

16           MR. CASTELLANO:  No, sir.  It's been

17  briefed.  And like I said, other than what's been

18  briefed here, I don't think any court has granted

19  what they're requesting, which is basically a list of

20  what we intend to show, which, in essence, would show

21  our trial strategy in some ways.

22           MS. SIRIGNANO:  Your Honor, I'm really not

23  asking for what they aren't going to use.  I'm

24  asking -- and the joined defendants --

25           THE COURT:  But is there any problem with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2254

1   doing it the way that I understand other judges have

2   done; and that is, they say we're going to use

3   everything except this, and if they're not going to

4   except anything, if they say they're going to use

5   everything they've given you, is that not -- does

6   that not comply with the request?

7            MS. SIRIGNANO:  Judge, I think you're

8   asking me to cull through -- all of us -- let me get

9   the amount here -- the discovery -- as you know

10  yesterday we were told that we're getting at least

11  9,000 phone calls, and probably double that.  And so

12  you're asking me -- the rule contemplates the formal

13  request by the defendant to the Government to -- in

14  order to properly file motions to suppress to

15  designate evidence it reasonably plans to use against

16  each defendant.

17           I don't really want to know what they're

18  not going to use, because then that would require us

19  to go back and look at all of the evidence that's

20  already been produced, which right now Mr. Aoki

21  estimates -- this was as of September 28 -- there was

22  2,824 documents; about 1100 of them are Bates

23  stamped -- those are the PDF files -- 4,939 audio

24  files, which aren't Bates numbered -- as you saw from

25  Mr. Lowry's argument earlier today -- and 38,963 jpg

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2255

```
 1    files, okay?  So I think that's what the rule

 2    contemplates.

 3           And as you've been hearing for the last two

 4    days, the Government still is producing Rule 16

 5    discovery, Brady, Giglio.  We're going to anticipate

 6    Jencks material right before trial.  And so what I'm

 7    trying to find out by filing this motion is to get --

 8    and I don't want their strategy -- all I'm asking for

 9    is what documents will you be using, or will you be

10    introducing in your case-in-chief?

11           THE COURT:  Well, if they are saying

12    everything they've produced to you, then isn't it

13    just a lot of make-work for somebody to do?  If they

14    say everything, and they're going to put an exhibit

15    together that says Bates stamps 1 through 50,000, all

16    these phone calls, isn't it just make-work?

17           MS. SIRIGNANO:  Well, no, what you're

18    contemplating, Judge, would be make-work.  I'm

19    requesting what evidence the Government plans to

20    introduce in its case-in-chief at trial.

21           THE COURT:  Well, but if I understand

22    Mr. Castellano, everything they've produced to you

23    they're going to use.

24           MS. SIRIGNANO:  That's what I understand.

25           THE COURT:  So what do I do?  I mean, they
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

DNM 2256

1   told you it's everything.

2           MS. SIRIGNANO:  Well, I want it

3   specifically.  And that's what the rule contemplates,

4   in order for a motion to suppress to be filed.

5           THE COURT:  Well, it seems to me that it's

6   a lot of make-work.  If they say "everything," you're

7   going to have to term what in that evidence that

8   you're going to have to move to suppress.  But it

9   looks like they're --

10          MS. SIRIGNANO:  So of all these phone

11  calls, Judge, right, we have thousands and thousands

12  and thousands of phone calls, right?  I guess what

13  I'm trying to narrow down here is, we're going to be

14  here for more than two months in the first wave of

15  trial, if they're going to use every single phone

16  call.

17          THE COURT:  Aren't we contemplating six

18  weeks?  So I mean, we're kind of right there, aren't

19  we?  They're going to dump it all on you.

20          MS. SIRIGNANO:  Six weeks, fine.  I guess

21  what I'm trying to say is -- and I'm definitely not

22  articulating this well enough -- if they're going to

23  use every single phone call that they have given us,

24  I understand that.  But their evidence list will be

25  thousands of pages long.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2257

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 144

1          What I'm trying to do is identify for the

2    Court, for us, to file suppression motions on the

3    evidence that's actually going to be admitted.  Not

4    the whole discovery production, every single call,

5    every single piece of paper.  I'm trying to focus in

6    on what the Government is going to use so we can get

7    these motions before the Court.

8          I mean, we can wait until just before the

9    trial and I'll file motions to suppress at that time.

10   But the rule contemplates that they identify what

11   they're planning on using in their case-in-chief, so

12   we can timely make motions.

13         And whether or not another judge in this

14   district has done it by the rule, I can file a

15   supplemental brief, Judge, from other districts if

16   that's what the Court requires.

17         Like I said, I don't know that I'm backing

18   off entirely the rebuttal witnesses or the rebuttal

19   evidence.  But right now I'm really more interested

20   in the four corners of the rule, and get the evidence

21   that the Government is going to be using for each

22   defendant in its case-in-chief.  So I can not only

23   file a motion to suppress the phone calls,

24   Mr. Garcia's post-arrest statement, search warrant on

25   his home -- and I'm sure the co-defendants that have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2258

```
 1    joined this motion are also contemplating additional
 2    motions to suppress.
 3            And that would also, Judge -- if the
 4    Government still has this evidence that it needs to
 5    be turned over, it would require them to get it out
 6    sooner than later so we can timely get to trial.
 7            And that's all I have right now, Judge.
 8    Thank you.
 9            THE COURT:  All right.  Thank you, Ms.
10    Sirignano.
11            MR. BURKE:  May I?
12            THE COURT:  Did you want to speak to that,
13    Mr. Burke?
14            MR. BURKE:  I'm not going to argue much,
15    Judge.  But I did want to offer a perspective.  This
16    motion, or one like it, has been, and is being
17    granted in Colorado, several federal judges.  And it
18    is -- I can give you -- one was a fairly complicated
19    smash and grab case, where some watches and jewelry
20    went missing, and there were a lot of people
21    involved, and tens of thousands of pages of
22    discovery, and one of them was a major narcotics
23    conspiracy, 20 defendants, tens of thousands of
24    pages.  And the motions were granted.  And you're
25    exactly right, it is make-work.  And the prosecutors
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2259

```
 1    groused, and ended up complying, of course, with the
 2    court order, but it ended up streamlining things for
 3    the parties, and helped the Court understand exactly,
 4    you know, what were the key issues going to be.  And
 5    so it is -- you don't see the motion all that often,
 6    but it is perhaps trendy, and it is being granted,
 7    and it does help move the litigation along.
 8              I just wanted to offer that perspective.
 9              THE COURT:  Well, what do you do, though,
10    in the face of the Government's representation it's
11    going to use everything?
12              MR. BURKE:  Well, what I've seen -- in the
13    specific instances that I'm referring to what I've
14    seen the judges do is say, Okay, you are going to
15    spend some time trying to narrow things down.  But
16    then what the judges do is they make it nonbinding,
17    so if something else comes up where they go, I want
18    to use this as well.
19              And then to an argument that I made
20    yesterday, these are very bright prosecutors.  They
21    know what they're going to do at trial.  And we'd be
22    making them work to lay it out with more specificity,
23    but with the wiggle room of saying, Look, if you
24    missed something, you're still going to be able to
25    introduce it.  It may narrow the issues.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2260

1              And I just wanted to offer that perspective

2      for the Court.

3              THE COURT:  All right.  Thank you, Mr.

4      Burke.

5              MR. BURKE:  Thank you, Your Honor.

6              THE COURT:  Any other defendant want to say

7      anything on this motion?

8              All right.  Mr. Castellano.

9              MR. CASTELLANO:  Your Honor, first off,

10     we're really not that bright so we shouldn't get that

11     much credit for prosecuting this case.

12             THE COURT:  Between you and Mr. Davis,

13     y'all are running toward incompetency.

14             MR. CASTELLANO:  We're going to have to get

15     a firm together, I think.

16             MR. DAVIS:  I'm going to apply for a job

17     over there.

18             MR. CASTELLANO:  He'll fit right in.

19             So we're already past the motions'

20     deadlines that we're talking about, with the

21     exceptions of motions in limine.  So, for starters,

22     if we're going to start another round of litigation,

23     I don't know where that's coming from.

24             And we've had more than one scheduling

25     order in this case, and we've actually had more than

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2261

1     one round of litigation, even for substantive motions

2     and for discovery motions.  So I'm not sure where

3     we're going to squeeze that in, because it's not on

4     our timeline for this case.

5             Now, the phone calls is a good example,

6     because the defense is getting probably hundreds of

7     hours of phone calls at their request.  They've

8     requested phone calls going back years.  And this

9     motion would require us to do the work for them, and

10    sort through every single phone call to decide what

11    we may or may not use.  This is at their request.

12            So, I mean, they've continued to ask for

13    discovery.  They've received it.  And then they

14    complain there is too much discovery.  And then they

15    want us to tell them what we're going to use from

16    what we disclosed.  Then we're in a bind when it

17    comes to things like phone calls, because if we had

18    to go through any phone calls -- because some of

19    these phone calls probably will not be relevant, in

20    any event, or most of them will not be relevant.

21    But, of course, we're in a bind because if we don't

22    turn them over, and there is something that's

23    potential Brady or Giglio, then we're in trouble for

24    that.  So the best thing to do is to turn them all

25    over to the defense.  But now that they have them,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2262

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2263

```
 1    they want us to do the work for them, and that's just
 2    not going to happen.
 3              So I mean, that's basically what it comes
 4    down to.  And as I stated other judges have already
 5    ruled that the intent of the rule is really not to
 6    have us introduce or make a list for them, or spell
 7    it out for them or give them our trial strategy.  It
 8    is so they can file motions.
 9              And at this point, we're actually past that
10    point.  I understand if other things come up that may
11    raise other issues, but Ms. Sirignano is talking
12    about phone calls she already has.
13              THE COURT:  All right.  Thank you, Mr.
14    Castellano.
15              Ms. Sirignano.
16              MS. SIRIGNANO:  Thank you, Judge.
17              Well, first of all, the motions in limine
18    deadline has not passed.  That was just recently
19    rescheduled with Ms. Armijo.
20              Second of all, the defense takes the
21    position -- I'm sure everybody in here -- that since
22    the Government are still on a rolling basis complying
23    with their Rule 16, Brady, Giglio obligation that
24    there is a potential to file these motions.  And I
25    don't believe they're out of time.  Because we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2264

```
 1    still getting discovery.  So I think that argument is

 2    incorrect.

 3              I'm not complaining about the discovery,

 4    Judge.

 5              THE COURT:  Not yet.

 6              MS. SIRIGNANO:  Well, Judge, you know,

 7    we've been doing this for, what, a year-and-a-half

 8    now, and we weren't the ones that charged this case.

 9    They charged this case the way they did.  And I

10    wonder why it was charged this way.  But that's their

11    obligation, right?  Brady, Giglio; every time they go

12    in front of the Grand Jury, they know that they've

13    got these obligations.  And we're not complaining

14    it's too much discovery.  Maybe what we're

15    complaining about is the timeliness of all of this, a

16    year-and-a-half later.

17              What I'm trying to do is abide by the rules

18    of procedure, the criminal rules.  I don't want their

19    strategy.  They got up here and said, Well, we're

20    going to use everything.  Now, Mr. Castellano says,

21    well, the defense is getting hundreds of hours of

22    phone calls at their request, but it might have

23    Brady, or it might have Giglio, it might have Jencks

24    in it, so we're required to turn it over, but we're

25    not going to do their work for them by culling out --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2264

1   which the rule requires, at the defendant's request,

2   at the arraignment or soon afterward as practicable,

3   the defendant may, in order to have an opportunity to

4   move to suppress evidence, under Rule 12(b)(3)(C),

5   request notice of the Government's intent to use in

6   its evidence in its case-in-chief at trial, evidence

7   that the defendant may be entitled to discovery under

8   Rule 16.

9           We're still getting Rule 16 discovery,

10  Judge.  The Government said:  In the next batch we're

11  going to produce this.  In the next batch we're going

12  to produce this.  There wasn't one discovery

13  production the entire month of October, which you can

14  see from Mr. Aoki's status report that was just

15  filed.

16          So I guess what I'm trying to say, Judge,

17  is that we get this evidence.  We're less than 90

18  days away from trial.  What I'm trying to do is not

19  make the Government do make-work.

20          And I liked Team Troup's proposal, which

21  was have them bring this down with specificity, start

22  with the first five defendants that are going to go

23  to trial, allow them some wiggle room.  If they don't

24  know what evidence they're going to use against these

25  five defendants in the first trial, I'd be surprised.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152

1    I know specifically what calls I would use against

2    Mr. Garcia.  This is stuff that they know.  They just

3    have to write it down and say, Defense, pursuant to

4    Rule 12(b)(4)(B), this is what we're planning on as

5    of today using in our case-in-chief at trial.

6             And in this way, if they're not going to

7    use any evidence from Mr. Garcia's search of his

8    residence, I don't have to bore the Court with

9    another 30-page motion.  So that's all I'm trying to

10   do, Judge, is just get it down to a workable -- a

11   workable identified specific bunch of evidence.

12            If they're not going to use Mr. Garcia's

13   cellphones that were taken from his house, then I

14   won't have to worry about that.  That's all I'm

15   trying to do is just make things easier for all of

16   us.

17            Thank you, Judge.

18            THE COURT:  If I were to just -- if I were

19   to do nothing, right at this moment, how many motions

20   to suppress -- do you have a sense as to what you

21   would file and how many you would file and what they

22   would be against?

23            MS. SIRIGNANO:  Judge, we filed, I think it

24   was four.  And we did file a 12(b)(4)(B), I believe,

25   in Mr. Garcia's drug case, and it was not ruled upon.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    And I don't believe that any of the motions to

2    suppress that we filed in Mr. Garcia's drug case was

3    ruled upon either.

4            So I would probably venture to guess four

5    or five, depending on the evidence, of course.

6    That's why it would seem fruitful for everybody.

7            THE COURT:  And you haven't yet filed any?

8            MS. SIRIGNANO:  Not yet, Judge, because

9    discovery is still ongoing.

10           And while we have a scheduling order --

11           THE COURT:  But you probably know what

12   evidence you probably don't have a good motion to

13   suppress on, and which ones you think you do have a

14   shot at suppressing, right?

15           MS. SIRIGNANO:  Yes, Judge.

16           THE COURT:  All right.  Let me see what Mr.

17   Castellano has to say.

18           I'll give you the last word, Ms. Sirignano.

19           MR. CASTELLANO:  Your Honor, I'm looking at

20   the commentary, part of the commentary says, "In the

21   interests of better administration of criminal

22   justice, we suggest that wherever practicable the

23   prosecutor should within a reasonable time before

24   trial notify the defendant as to whether any alleged

25   confession or admission will be offered in evidence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    at trial.  We also suggest, in cases where such

2    notice is given by the prosecution, that the defense,

3    if it intends to attack the confession or

4    administration as involuntary, notify the prosecutor

5    of a desire by the defense for a special

6    determination on such issue."

7           It also cites to another case, Rasmussen

8    versus Tahash, which says, "The state will advise the

9    court as to whether the case against the defendant

10   will include evidence obtained as a result of a

11   search and seizure, evidence discovered because of a

12   confession or statements in the nature of a

13   confession obtained from the defendant or confessions

14   or statements in the nature of confessions."

15          So there are certain things that are

16   contemplated, which is kind of your traditional

17   motion to suppress type of evidence:  Search and

18   seizure, confessions, and those things are already

19   teed up before the Court.  We have a few motions to

20   suppress statements.  The defense has what it needs

21   for those, and the defense has filed those motions.

22          So what the defendants are trying to do is

23   expand this to let them know every part of our case

24   that we intend to introduce at trial.  And that's

25   just not contemplated by the rule.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2268

```
 1            And then, furthermore, we filed the
 2   notice -- we're now going to be turning over the
 3   potential 404(b) list to them, which is going to give
 4   them also other specific evidence which could be
 5   introduced against them at trial.  So we're already
 6   making work.  And this is something that's just not
 7   contemplated.
 8            THE COURT:  Mr. Beck.
 9            MR. BECK:  Your Honor, I'll just add to
10   that:  The commentary in the case law, the limited
11   case law that discusses this, the case law seems to
12   be quite a bit older.  And that commentary is from
13   the rule enacted in 1974, when it was Section D of
14   the rule.  And I think the reason for that was --
15   what I understand from back in those days, because I
16   wasn't litigating a lot in 1974, was that trials were
17   much quicker.  You had the arraignment; you proceeded
18   to trial, and things would come up where someone
19   would be blind-sided by evidence.  You'd have to stop
20   and have a motion to suppress right in the middle of
21   the trial and continue the trial.  So this rule
22   contemplated -- and the case law says this --
23   fairness to both parties; that in all fairness, if
24   the Government decides to use evidence that was
25   subject to search and seizure, post-arrest
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   statements, things that we all contemplate in motions
 2   to suppress coming forth on, in all fairness, the
 3   Government tells the defendant they're going to use
 4   that.  As Mr. Castellano just showed you, the
 5   defendant, says, Well, I'm going to move to suppress
 6   that, then you handle that before the trial.  Trials
 7   take a lot longer now.
 8           And in a rule based on fairness, to ask the
 9   United States to comb through thousands of calls that
10   the United States has taken the position on, and
11   continues to take the position on, it didn't have to
12   disclose, it doesn't -- I mean, no doubt, we don't
13   intend to look through those and look through every
14   single statement in there.  I mean, that just totally
15   subverts the purpose of that rule.  Because it is
16   unfair to us to have to go through all this evidence,
17   and pick and choose what we want to use, when we also
18   have to prepare for trial in two months, along with
19   the 404(b) list, and everything else that's been
20   done.
21           So I'd caution the Court to look closely at
22   the case law and understand that the purpose behind
23   the rule doesn't support what's being asked of the
24   Government in this case.
25           THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            Ms. Sirignano.
 2            MS. SIRIGNANO:  Just one last comment.
 3   Judge, I really think the Government is misconstruing
 4   what we're asking here.  I'm not asking for them to
 5   go through the 9,000 calls that they still haven't
 6   produced, or the gigabytes of all these calls that we
 7   haven't received yet.  They know what they're going
 8   to use against each defendant in this case.
 9            And they're right, we have issues here that
10   motions to suppress can be filed:  Post-arrest
11   statements, searches of Mr. Garcia's home, the phone
12   calls that came out of the snitch in the Department
13   of Corrections.  There are ripe motions to suppress
14   which can be filed here.
15            I'm not asking them to go through the
16   discovery that they still yet haven't disclosed.
17   They know what they're going to use for each
18   defendant to prove the elements of their case, their
19   case-in-chief.
20            All I'm asking for is identification of
21   those documents, that evidence, so instead of going
22   on a wild goose chase with motions to suppress, we
23   can focus on the ones, if they're going to use that
24   evidence at trial.
25            That's all I'm asking for, Judge.  Thank
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2271

```
 1   you.

 2              THE COURT:  Thank you, Ms. Sirignano.

 3              Well, let me see if I can come up with

 4   something that I think is maybe a little practical.

 5   And let me put this idea out.  I'm a little skeptical

 6   that the Government is going to use every piece of

 7   evidence that they've produced to the defendants in

 8   this case.

 9              I tried enough cases, and wasn't very

10   successful when I introduced more than 70, 80

11   documents, you know.  At some point the jury is going

12   to fuse out on us.  So I imagine you're going to be

13   trimming it down a lot.

14              At the same time, I'm not interested in

15   just having the Government do a bunch of make-work at

16   this stage.

17              Here's what I propose:  Let's see if

18   everybody could live with this proposal.  Let me ask

19   you one question before I give it.  Ms. Sirignano, on

20   the drug case that we had for Mr. Garcia, my memory

21   was that there were some motions to suppress that,

22   because he pled, we didn't get to those -- maybe we

23   argued them and I didn't rule -- but anyway, I think

24   we were going to -- I think there was some

25   discussions between you and Ms. Wild about maybe me
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2272

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

1  going ahead and finishing those motions for this

2  case.  Are there already motions that are written,

3  teed up in the drug case, that I could just take and

4  go ahead and rule on, without you having to refile

5  them in this case?

6          MS. SIRIGNANO:  Yes, Your Honor.

7          THE COURT:  Well, let's -- so you don't

8  have to do any additional work, here's what I would

9  propose:  You take those motions that you've already

10 filed, that you want me to go ahead and rule on in

11 this case; put them in a letter, and the additional

12 motions that you intend to file right now, assuming

13 the Government is going to use everything that they

14 have, they've produced, you send the letter over now

15 and say, "I am about to prepare a motion to suppress

16 this evidence.  These are the ones I think I have a

17 good basis for."

18          And then the Government, if it wants to

19 say, We're going to use every drop of that evidence,

20 that's fine, but let Ms. Sirignano know before she

21 writes the motion.  Here's what I don't want to

22 occur:  I don't want to have her write a motion, or

23 me write an opinion, or we have a suppression

24 hearing, and then the Government get there and say,

25 We don't want to use it.  I think on the stuff that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2273

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62

```
 1   she identifies that she's about to file a motion, or
 2   she's triggering for me that I need to finish my work
 3   from that case, in this case, I think the Government
 4   does need to sit down and give a hard thought to it,
 5   and say, We're either going to use it or not use it.
 6   And that way, you don't have to catalog a bunch of
 7   information that is make-work for you, and she really
 8   doesn't have a shot at suppressing it anyway.  That
 9   seems to me to be getting beyond the parameters of
10   (4)(b), which is try to facilitate motions to
11   suppress.
12           So that would reduce, I think, the work on
13   both sides.  It front-ends the work, so you're going
14   to have to look at certain evidence and say, She's
15   about to file a motion to suppress, am I going to
16   stand there and tell the judge, you know, that we're
17   going to use this?  If she's going to file a motion
18   to suppress, I think you ought to make a decision on
19   that now.  If you're not going to use it, tell her.
20   She doesn't file a motion to suppress.  If you say,
21   We're going to use it, then I'll expect to see it
22   used.
23           And what would you think about that as a
24   solution?  I think that's maybe a little more
25   practical than not giving you any sort of relief, but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2274

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 161

```
 1    at the same time, requiring the Government to do a
 2    lot of make-work that I don't think is going to help
 3    us with motions to suppress.
 4            MS. SIRIGNANO:  That's a good alternative,
 5    Judge.  It's a good compromise.  And we could do
 6    that, and I can talk with the Government.  And I'm
 7    happy to prepare the letter.  That's just fine.
 8            THE COURT:  All right.  Mr. Castellano, Mr.
 9    Beck, could you live with that?
10            MR. CASTELLANO:  I think we can live with
11    it, Your Honor.  And the Court is correct, I mean, as
12    we get closer to trial, there is some trimming to be
13    done.  But that's an ongoing and fluid process.
14            THE COURT:  And I don't want to also create
15    an incentive to you trying a case and throwing a
16    bunch of evidence because you said, Well, I told the
17    judge I was going to use the evidence.  That doesn't
18    benefit anybody.  So I'm trying to take that
19    incentive out, but at the same time put a little bit
20    of teeth into it.
21            MR. CASTELLANO:  I think there is some
22    incentive to follow that protocol, Your Honor.
23            Ms. Sirignano says she hasn't necessarily
24    abandoned the rebuttal argument, which is kind of the
25    flipside of what we're dealing here with.  I mean, a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    rebuttal case is in response to the defense case.  So
 2    I don't think the defense would want to tell us what
 3    they're going to use in trial, so we can tell them
 4    whether or not we're going to present rebuttal
 5    evidence, if that makes sense.  So I'm not going to
 6    argue it too much because I think I've just made the
 7    point.  If they want to tell us what they're going to
 8    use at trial, then maybe we can consider doing the
 9    same protocol for rebuttal.  And I don't think they
10    want to do that.
11            THE COURT:  Well, if I understood, we're
12    putting rebuttal evidence aside, right, Ms.
13    Sirignano?  We're trying to come up with a solution
14    that their case-in-chief, what do you want to move to
15    suppress so you never see that evidence at all,
16    right?
17            MS. SIRIGNANO:  Yes, Your Honor.  I'm just
18    trying to make it easier for everybody.  I mean, I
19    understand that that's what they focused their
20    response on.  And the cases that I cited talked
21    about -- there was rebuttal evidence.  There was
22    discussion of rebuttal evidence.
23            THE COURT:  How does -- I'm just staring at
24    the rule, when it puts in paren "request notice of
25    Government's intent to use," paren, "in its evidence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2276

1   in chief at trial," close paren, how does -- then,

2   how does anybody get from that that they're entitled

3   to rebuttal evidence?  How do they get there?

4        MS. SIRIGNANO:  Judge, I cited a case in my

5   brief.  Let me get it really fast.

6        THE COURT:  All right.

7        MR. CASTELLANO:  And while she's doing

8   that, Your Honor, we don't know what the defense will

9   be.  People may say they're not members or

10   associates.  They may attack the enterprise.  So

11   obviously some of our case is in response to even

12   their questioning at trial.  So that's why it's

13   fluid.

14        MS. SIRIGNANO:  Judge, I'm looking at

15   Document 1338, and page 2.  It's the Court's --

16        THE COURT:  Is it 1388?

17        MS. SIRIGNANO:  Yes, Judge, 1388, page 2.

18        And what I argued was that it's within the

19   Court's inherent authority under Rule 12 that that

20   evidence could be ordered.  I cited United States

21   versus Anderson, 416 F.Supp. 2d 110.  And it's a 2006

22   case from the District of Columbia.  And in

23   parentheses, "as long as rebuttal evidence was not

24   planned in advance of trial, the court would not

25   prevent the Government from using evidence it had not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2277

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 164

```
 1    noticed under Rule 12 for purposes of rebuttal."

 2              And then I cited the Lujan case, Judge

 3    Brack's opinion.

 4              So honestly, Judge, if we could streamline

 5    the Government's evidence for these motions to

 6    suppress, with the case-in-chief right now, then I

 7    could worry about this at another time.

 8              And it is within the Court's discretion and

 9    your inherent authority to add that rebuttal

10    evidence, if you wanted to.  But that's my position

11    on that rule regarding --

12              THE COURT:  Well, let's exclude rebuttal.

13    I'm not sure that that's what the rule is

14    contemplating.  So let's exclude rebuttal.

15              But, obviously, if you see some evidence

16    that you think the Government might not use until

17    rebuttal, it would behoove you to put in your letter,

18    and force them to say yay or nay as to whether

19    they're going to use it.  And you can say:  Would you

20    ever use this in rebuttal?

21              MS. SIRIGNANO:  I'll do that, Judge.

22              THE COURT:  And if they say, No, we're

23    never going to use this at all, then I think you know

24    you don't need to file a motion to suppress on.

25              If you get a response back of, Well, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2278

 1   don't know, we may file it in rebuttal, but we're not

 2   going to file it in our case-in-chief, then you

 3   probably know your defenses better, and can make a

 4   better decision as to whether it's ever going to show

 5   up in rebuttal.

 6          Because I take a pretty narrow view of

 7   rebuttal.  If we're sitting here today, and we know

 8   that's going to come out, it's not rebuttal; it needs

 9   to be in the case-in-chief.  So I've got a pretty

10   narrow view on rebuttal.  So if everybody is sitting

11   around -- the Government doesn't get another shot at

12   putting in evidence after defendant puts on its

13   case-in-chief of stuff that it raised in its

14   case-in-chief, its case-in-chief; it's got to do that

15   in its case-in-chief.  You can't use it as another

16   opportunity.  So it's things that are unanticipated,

17   that they couldn't anticipate.  So if they anticipate

18   it, that's not rebuttal.

19          So using that sort of narrow rebuttal

20   approach, you can probably say, Well, I'm not going

21   to raise that defense.  I'll never see it again.  So

22   I think this will protect you enough so that you know

23   what you need to move on and not move on.

24          And the Government has an interest,

25   probably, in not having another motion filed this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2279

 1   close to trial.  And they may, you know, indicate

 2   that they're just not going to use it at all.

 3          MS. SIRIGNANO:  Thank you, Judge.

 4          THE COURT:  All right.  Can we live with

 5   that, Mr. Castellano?  Mr. Beck?

 6          MR. CASTELLANO:  Yes, sir.

 7          THE COURT:  And you can live with that, Ms.

 8   Sirignano?

 9          MS. SIRIGNANO:  Yes, Your Honor.  Thank

10   you.

11          THE COURT:  What -- of the work that I had

12   from Mr. Garcia's drug case, is it going to be all

13   the motions, some of the motions?  And remind me, did

14   we argue those, and we took all the evidence, we did

15   all the suppression, so there is not reason to redo

16   all that work again, right?

17          MS. SIRIGNANO:  No, Your Honor.  In fact, I

18   was contemplating this.  We were thinking about it

19   over lunch.  We did argue all the motions.  We were

20   just waiting on opinions.  And so, I guess, to

21   perfect the record, would it be best to --

22          THE COURT:  Let's do this:  You file a

23   notice in 15-4268 that outlines the doc numbers from

24   15-4275 that I need to decide.

25          And Mr. Castellano, look at those, and if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    there is some issue there you don't think I need to

 2    decide because you're not going to use that evidence,

 3    tell me and Ms. Sirignano, so we can drop it.

 4    Otherwise, probably that's something I need to turn

 5    to because the three of us have already done that

 6    work.  Do you agree?

 7             MR. CASTELLANO:  Agreed, Your Honor.  I

 8    think there was a motion to suppress the statement, a

 9    motion to suppress the search of the house, and a

10    motion to suppress the calls from the prison after an

11    allegation that the phones were not properly

12    admitted.  Three at least.

13             THE COURT:  Yeah.  I think I -- we were

14    done with those, weren't we?

15             MS. SIRIGNANO:  Yes, Your Honor.  We took

16    all evidence on that, yes.

17             MR. CASTELLANO:  We did, Your Honor.  We

18    are done.

19             THE COURT:  So I think we can now rule on

20    those.

21             MS. SIRIGNANO:  Judge, you want me to file

22    a notice?

23             THE COURT:  Just file a notice in this case

24    that those motions -- what motions in that case need

25    to be decided in this case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                  MS. SIRIGNANO:  And in terms of
 2      transcripts, do we want the transcripts filed for the
 3      record?
 4                  THE COURT:  Just cross-reference them.
 5      Were they -- did you get a final on those?
 6                  MS. SIRIGNANO:  We did, Your Honor.
 7                  THE COURT:  Well, just tell me where the
 8      final is in your notice.  Just give me the document
 9      number.
10                  MS. SIRIGNANO:  Thank you, Your Honor.
11                  THE COURT:  Anybody else want to comment on
12      this, this procedure of dealing with -- other people
13      joined this motion.  Is everybody comfortable with
14      dealing with 12(b)(4)(B) this way?
15                  All right.  So we'll apply that across the
16      board.
17                  Mr. Castellano.
18                  MR. CASTELLANO:  Your Honor, only for the
19      purpose of perfecting the record.  I will note as an
20      objection to the Court's ruling on the 12(b)(4)(B)
21      motion just so we can preserve that for appeal.  But
22      we understand the Court's ruling, and we'll move
23      forward in that fashion.
24                  THE COURT:  Okay.  I think you largely won
25      it.  You can appeal that one, then.  Go ahead.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  All right.  I said we
 2     weren't smart.
 3              THE COURT:  I've got a thousand more that
 4     I'm more worried about.
 5              Let's see.  Ms. Arellanes, I think your
 6     motion is next.  Since you may be arguing when this
 7     occurs, I have been told that about 18 journalism
 8     students are going to come in the courtroom in a
 9     minute.  So when you see all them coming in, that's
10     what's happening.
11              All right.  Ms. Arellanes.
12              MS. ARELLANES:  Judge, I did file a motion
13     to dismiss Shauna Gutierrez out of the indictment for
14     the reason that -- well, Shauna has been charged with
15     Counts 14, 15, and 16 of the second superseding
16     indictment, which a couple of charges are the VICAR
17     charges, and one is the tampering with the witness
18     charge.
19              And the facts are -- that support the
20     alleged -- the allegations is that on February 27,
21     2016, Shauna Gutierrez lent her truck to Brandy
22     Rodriguez, Santos Gonzalez, and Paul Rivera, in which
23     they traveled to a woman's house, Charlene Parker
24     Johnson's house, where Jose Gomez was living at the
25     time.  And they assaulted Mr. Gomez, causing serious
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2283

```
 1   bodily injury.  And that is the sole basis -- that is

 2   the complete basis for the VICAR counts and the

 3   tampering count.

 4           And the question is, you know, whether that

 5   is adequate.  The Government did respond to my motion

 6   saying, Well, that's premature, that is something for

 7   the jury to decide.  But nonetheless the Court has to

 8   make some decisions at some point concerning whether

 9   SNM is an enterprise within the meaning of the

10   racketeering statutes, or within the meaning of RICO;

11   whether the enterprise engaged in racketeering --

12   what was the other point -- whether Ms. Gutierrez was

13   a member of SNM, and whether she did participate in

14   the predicate violent crime, and whether she received

15   anything of pecuniary value.

16           So given the evidence, given the facts that

17   have been outlined for the Court, Ms. Gutierrez is

18   not a member of SNM.  She is the girlfriend of Joe

19   Lawrence Gallegos.  She is not a member of SNM by

20   virtue of the fact that she had a romantic

21   relationship with Mr. Gallegos.  That does not make

22   her a member of SNM.  And so the Government will not

23   be able to show one of the elements that they are

24   required to show.

25           Second of all, she did not receive anything
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2284

```
1    of pecuniary value.  And pecuniary value could be a

2    variety of things.  One is that she wanted to enter

3    SNM; two, that she wanted to advance her position

4    within SNM; or receive some sort of monetary

5    compensation for it.  Well, that's simply just not

6    true.

7           So given the burden on the Government to

8    show the elements of the offense for which they have

9    charged, Ms. Gutierrez should be completely dismissed

10   out of this case completely.

11          THE COURT:  All right.  Let me make sure

12   that I understand Shauna's role, and I'm not mixing

13   her up with Brandy's role.  Shauna was the one that

14   said that they live in this house?

15          MS. ARELLANES:  Shauna pointed out to

16   Brandy where JG was staying at the moment.  He kind

17   of traveled.  He was kind of a moocher, traveled from

18   place to place.  So at that particular moment he was

19   staying with Charlene Parker Johnson.  And she didn't

20   direct them to go to her house.  But they borrowed

21   her truck, she admits that.  And they traveled over

22   to Ms. Parker's house and beat him up.  And that is

23   the basis of the VICAR counts.

24          THE COURT:  It's enough to be an associate

25   of the enterprise, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172286

```
 1            MS. ARELLANES:  Well, the Government needs
 2    to show certain elements to show that a person is an
 3    associate in fact.  And the fact that she is the
 4    girlfriend of Joe Lawrence Gallegos does not make her
 5    an associate.
 6            THE COURT:  What do you think is missing
 7    here?  What would it take, in addition, in your view,
 8    to have a girlfriend who is loaning trucks, pointing
 9    out where people live?  What more does somebody have
10    to do, then, to become an associate?
11            MS. ARELLANES:  Judge, I think Mr. Lowry
12    argued this point at some point at some of the other
13    motions hearings, and argued to become an
14    associate -- let me see, what did I write -- there
15    has to be longevity, sufficient to perform the
16    purpose of the enterprise.
17            First of all, the case of -- and Mr. Lowry
18    argued it was before, and I kind of cited the same
19    case -- in order to be an associate, there has to be
20    a purpose, a relationship among those associated with
21    the enterprise -- those being in the plural -- and
22    longevity sufficient to permit those associated with
23    the enterprise to pursue the enterprise's purpose.
24            And so Ms. Gutierrez was involved with Joe
25    Lawrence Gallegos for two months prior to his arrest.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2286

```
 1   So the longevity aspect of being an associate-in-fact

 2   is going to be difficult.

 3           And really she's just not a member of SNM

 4   at all.  And really she should not even be in this

 5   case at all.  So that's the reason why I filed the

 6   motion.

 7           The Government will state that she was an

 8   associate.  But she's not an associate -- there is

 9   certain things that have to be satisfied in order for

10   someone to be an associate, other than being a

11   girlfriend.

12           THE COURT:  All right.  Thank you, Ms.

13   Arellanes.

14           MS. ARELLANES:  Thank you, Judge.

15           THE COURT:  Mr. Castellano.

16           Before you start, let me ask Ms. Arellanes

17   this question:  I thought in these motions to

18   dismiss -- I think the case is called United States

19   v. Hall, but my memory could be off -- that,

20   basically, the Government had to consent to file a

21   motion for the Court to decide the motion to dismiss.

22   In other words, if they want to say, since there is

23   no summary judgment procedure in the criminal side,

24   basically if they want to present their facts to a

25   jury, you've got to wait until the directed verdict
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2287

1    stage.  You can't get a preliminary ruling over

2    whether, A, that evidence is sufficient.

3           Now, if they consent to it -- and I just

4    found a couple of weeks ago in a case that the

5    Government basically consented; they wanted a ruling

6    just as much as the defendant did -- then I can go

7    ahead and make those pretrial rulings.

8           Am I reading the law from the Tenth Circuit

9    wrong, that if they insist on going to a jury, you're

10   stuck with waiting for the directed verdict?

11   Sometimes with the statute of limitations, or

12   something like that, you can -- there is a little bit

13   of a law there.  But on a case like this, we're stuck

14   with going to trial, and then saying at the end of

15   it:  That's not enough, Judge.  But they get their

16   shot.  Am I reading it wrong?

17          MS. ARELLANES:  Judge, in all honesty, I

18   didn't read that case.  I wasn't planning on.

19          THE COURT:  Well, and I may have the wrong

20   case.

21          MS. ARELLANES:  I think you're correct,

22   Judge.  It is cited in the Government's brief.  I did

23   read through it.  I think based on what's written in

24   their brief, I think that if there is undisputed

25   facts.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2288

```
 1              THE COURT:  Right.

 2              MS. ARELLANES:  Similar to a summary

 3     judgment.  And undisputed facts do not establish

 4     likelihood, then the Court can make ruling.

 5              THE COURT:  But even if they're undisputed,

 6     I think it's a timing issue that it's not like a

 7     summary judgment, where you go through and determine

 8     they're undisputed.  It's basically the Government's

 9     call, is that if they want the Court to decide it --

10     they don't want to go through a trial either, this is

11     what the evidence is going to be, go ahead and decide

12     it -- they can say -- they can consent, and then the

13     Court can decide it.

14              But if they don't, which I don't think

15     they're doing here, we're stuck, and this decision

16     comes up at the end of their case.  Not now.

17              MS. ARELLANES:  That may be true, Judge.

18              THE COURT:  Okay.  Thank about it.

19              MS. ARELLANES:  Okay.

20              THE COURT:  All right.  Thank you, Ms.

21     Arellanes.

22              Mr. Castellano.

23              MR. CASTELLANO:  That is correct, Your

24     Honor.  The case is Hall.  And Hall tells us that the

25     preferred approach in testing the sufficiency of an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2289

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176 2290

1    indictment cautions against considerations of the

2    strengths and weaknesses of the Government's case

3    through the fact-finding pretrial hearing.  And as

4    you stated, if we had a stipulated set of facts that

5    were undisputed, the Court could just rule on the

6    motion.

7            But, basically, what this motion amounts to

8    is the equivalent to a plea of not guilty at

9    arraignment.  "I dispute all the facts and do not

10   admit any of elements of the offense."  And that's

11   basically what's been done here.

12           So I think there are disputed facts.

13           THE COURT:  You're saying that she is

14   disputing your facts?

15           MR. CASTELLANO:  Well, yes.  She's

16   certainly not agreeing with our facts.  And so she is

17   disputing them.  And we're not agreeing with her set

18   of facts.  So there is a dispute.

19           THE COURT:  How do your facts and her facts

20   differ?

21           MR. CASTELLANO:  Well, she says she's not

22   an associate of the enterprise, and that this wasn't

23   done for the purpose of either getting entrance or

24   maintaining or increasing position in the enterprise.

25   But she also forget about a theory of aiding and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2290

1   abetting.  For example, Joe Gallegos' position in the

2   enterprise.

3          And our theory is that the victim in this

4   case was going to be a witness against Joe Gallegos.

5   Ms. Gutierrez knew that he was a witness against him;

6   that Mr. Gallegos did not like him.  And as she's

7   basically admitted to, once she found out where he

8   was, Ms. Gutierrez told three other people where this

9   person was located, and they then proceeded to go

10  over to the house and attempt to murder him.

11         So her own statement to law enforcement was

12  that she was aware that Mr. Gutierrez was an East

13  Side Loco member, had been to his house, and had seen

14  ESL- and SNM-related material at Gallegos' house.  So

15  certainly she had information that he had ties, not

16  only to ESL, but to the SNM Prison Gang.

17         She admitted that she knew the victim was a

18  quote/unquote a snitch.  She also knew that Brandy

19  Rodriguez was angry with the victim because she

20  believed he was going to testify against Gallegos.

21  And that Rodriguez and Mr. Gallegos are close

22  friends.

23         Then she basically laid out what happened

24  in this case, including telling those people where

25  the victim was located, and then went forward and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2291

 1    beat him almost to death.

 2            So really what she's talking about is her

 3    belief that our case isn't strong.  But that is not a

 4    way to attack the sufficiency of an indictment.

 5            THE COURT:  What do you think, besides

 6    being the girlfriend and besides loaning the truck,

 7    what other evidence do you have that's going to go to

 8    being an associate?

 9            MR. CASTELLANO:  Well, she knew Brandy

10    Rodriguez, was also a longtime friend of Mr.

11    Gallegos, who she's also an alleged associate.  The

12    other person, Oso, was an SNM Gang member.  And he's

13    one of the people she sent over to the house.  And

14    then Santos Gonzalez, who has pled guilty, has

15    already admitted that he was, at a minimum, an

16    associate of the SNM, in order to be -- to support a

17    factual basis for the plea.

18            So it wasn't that she just sent anybody

19    over.  She sent friends of Joe Gallegos' over,

20    including at least one other associate, another gang

21    member and an SNM Gang member.

22            In addition, she did have a relationship

23    with him for at least a couple of years.  And, as I

24    stated, she'd been at his house and was aware of his

25    gang status, his ties to a gang, and the fact that he

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492



 1   had SNM-related material at his home.  And that's by

 2   her own admission.

 3          THE COURT:  And you think that will be

 4   enough to make her an associate?

 5          MR. CASTELLANO:  Yes, Your Honor.  And what

 6   Ms. Arellanes said wasn't quite accurate in terms of

 7   the elements of an association-in-fact enterprise.

 8   Longevity applies to the enterprise, not to the

 9   person's membership or ties to the enterprise.

10          And we know that's not true, because people

11   who aren't members of the enterprise at all commit

12   acts to get into the gang, which means they had no

13   longevity to the gang whatsoever, no ties to the gang

14   for any period of time.  So we know longevity applies

15   to an association-in-fact enterprise, but not

16   associates of the enterprise.  So she doesn't have to

17   be tied to the gang for any specific period of time

18   in order to meet the element.

19          THE COURT:  Kind of like conspiracy to make

20   one sale, you're stuck with everything being

21   attributed to you?

22          MR. CASTELLANO:  Correct.  Once you join

23   the conspiracy, then you are largely responsible for

24   the acts of others.

25          THE COURT:  All right.  Anything else, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2293

1    Castellano?

2           MR. CASTELLANO:  No, Your Honor.

3           THE COURT:  Anybody else have anything they

4    want to add here?

5           All right.  Ms. Arellanes, I'll give you

6    the last word.

7           MS. ARELLANES:  Judge, Mr. Castellano

8    mischaracterized what Ms. Gutierrez said in her

9    statement.  Ms. Gutierrez said in her statement --

10   and I've listened to the statement, it's on audio --

11   is that she had no idea that Joe Lawrence Gallegos

12   was a member of SNM.  And he really didn't have much

13   paraphernalia at his house, insignias in his house

14   that showed that is he was a member of SNM.  She was

15   aware he was a member of ESL, East Side Locos, and

16   that Brandy was a member of ESL, and that maybe

17   Santos.  She didn't know much about Paul Rivera.  But

18   I think the characterization of some of the

19   statements of Mr. Castellano is just not correct.

20          THE COURT:  All right.  Thank you, Ms.

21   Arellanes.

22          Well, I don't have the case number, but I

23   issued an opinion here in the last couple of weeks.

24   It's called Olivas-Perea, United States v.

25   Olivas-Perea.  And the power that I have in this area

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2294

```
 1   is very restricted.  I mean, there is just not a
 2   summary judgment or analog for summary judgment under
 3   Rule 56 of the Federal Rules of Criminal Procedure.
 4   Under Tenth Circuit law, the Court is not free to
 5   determine, like on a motion for summary judgment,
 6   whether a genuine issue of material fact exists.  And
 7   when I hear two lawyers debating what I think may be
 8   the inferences of what it says, that concerns me.
 9             In Hall, the court said, "Generally, the
10   strength or weakness of the Government's case or the
11   sufficiency of the Government's evidence to support a
12   charge may not be challenged by a pretrial motion."
13             I've got to take the indictments'
14   allegations as true.  And there is no Twombly or
15   Iqbal standard for those.  And I'm not really
16   supposed to consider evidence outside of the
17   indictment.  There are some procedures by which I can
18   do that.  So if we start getting into tapes and
19   things like that, my power becomes even more
20   restricted, I think, under Rule 47 or Rule 12.  In
21   Hall it said, "Where the underlying facts are
22   essentially undisputed and the Government fails to
23   object to the district court's resort to evidence
24   beyond the four corners," then that exception I can
25   deal with.  Under this scenario, a pretrial dismissal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2295

 1    essentially is a determination that, quote, "as a

 2    matter of law, the Government is incapable of proving

 3    its case beyond a reasonable doubt."

 4         "The Court can determine a pretrial

 5    motion" -- and this is Judge Gorsuch in the United

 6    States v. Pope case -- he said, "The Court can

 7    determine a pretrial motion without a trial on the

 8    merits when a motion goes to what evidence might be

 9    admitted at trial or the conduct of or preparation of

10    trial."  But see, we're going here to the guts of the

11    case.  He says, "Pretrial motions that seek and

12    result in dismissal of the case altogether, that can

13    be decided at least in the circumstance of the case

14    at hand without deciding any disputed questions of

15    fact about the circumstances of the alleged crime,

16    any motions that involve only the taking of the

17    evidence that is entirely segregable from the

18    evidence to be presented at trial."  See, we're

19    really just talking about the evidence at trial.

20         So I think my power here is very

21    restricted.  And I'm not at all confident that I have

22    the power to -- with the Government objecting to

23    it -- to grant a motion to dismiss of this nature.

24         So I'm inclined to deny the motion.  I'll

25    take a look at it, but I'm inclined to think that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2296

```
1    there is at least disputed issues of inferences from
2    the evidence that's here.  And I'm not prepared to
3    say that the Government is incapable of proving its
4    case beyond a reasonable doubt.  So I think I'll be
5    denying this motion.
6         All right.  I think that concludes all
7    motions -- that was 1155 -- other than the last two
8    that we have from Mr. Garcia.  So, Ms. Sirignano, if
9    you want to take up, I think 1267, which is our Tab
10   3, we'll start going through that motion.
11        MS. SIRIGNANO:  Your Honor, I'd like to
12   defer that motion, if I could, please, for the next
13   time we get together, after the Court's comments
14   yesterday.  And I do believe that with a little bit
15   of redirection, I can better focus it and confer with
16   the Government and use Ms. Gilbert to go through the
17   evidence that has been produced and come up with a
18   chart for the Court and the Government to get through
19   this thing much more quickly than it would go today.
20   If that's agreeable with the Court.
21        THE COURT:  Let me defer for a few minutes.
22   Let's see how we go.  I mean, we did set up this
23   hearing to deal with these motions.  And there was an
24   indication that each one of these were going to take
25   a day.  So we're going to -- if I start deferring
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2297

```
 1    stuff over to the -- too much over the next time,

 2    we're kind of defeating our purpose of being down

 3    here.  So let's go to number 13, and we'll see how

 4    much time this one is going to take.

 5               MS. SIRIGNANO:  Judge, could we switch to

 6    Document 1270?  That's the Rule 16 motion.

 7               THE COURT:  Yes.

 8               MS. SIRIGNANO:  And that one I think that

 9    that will go much better than the 1267.

10               THE COURT:  All right.  Let's take it for a

11    while.

12               MS. SIRIGNANO:  Thank you, Judge.

13               The first six pages, Judge, of Document

14    1270, which was filed on September 22, 2017, is just

15    the basic law and the procedural posture of this

16    case.  I did state earlier that the Government did

17    not file a response to this motion.  They chose not

18    to file a response.

19               So what I'd really like to start with,

20    Judge, is on page 12, the DNA discoverable materials,

21    which is new in this case.  There was DNA -- a DNA

22    report from the FBI regarding the DNA that was taken

23    from Mr. Garcia up at the Santa Fe County Adult --

24               THE COURT:  Which item is this?

25               MS. SIRIGNANO:  I'm sorry.  On page 12,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2298

```
 1    it's number 8.  And it goes through all of page 13,
 2    all of page 14, 15, to the top of page 16, Your
 3    Honor.
 4              THE COURT:  Okay.
 5              MS. SIRIGNANO:  So part of the discovery
 6    that we received recently was a report of examination
 7    of DNA from the FBI laboratory.  DNA allegedly from
 8    the firearm in this case and the holster was compared
 9    to the DNA that was taken from Mr. Garcia up at the
10    Santa Fe County Adult Detention Center.  And so all
11    we have right now, Judge, is the examiner's report.
12              As I alluded to earlier, the FBI has
13    changed its DNA procedures in the laboratory, and is
14    using a program called STR Mix.  And so these
15    requests, pages 12, 13, 14, 15, and the top of page
16    16, are required in order for the defense DNA expert
17    to do what it needs to do based on the subjectivity
18    of the DNA STR Mix program and the changes in the
19    computer software, and the actual statistics
20    involving the DNA analysis.
21              So, Judge, the only way I know how to do
22    this is to go through each request, which I did
23    before.  That's why I requested a day.  And so I need
24    this DNA notice in order to properly notice up our
25    DNA expert for this upcoming trial, Judge.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2299

 1           THE COURT:  Well, I'll let you argue each

 2    category if you want.  But I guess my problem is, if

 3    there is no problem with the DNA that you know of, it

 4    just seems to me that this is a fishing expedition, a

 5    discovery request like you might see in the civil

 6    side.  But we don't have any reason to think that

 7    there is a problem with the DNA or the lab or the

 8    testing.  And so it seems to me this is probably

 9    something you're not entitled to under the criminal

10    rules.  Those are my sort of thoughts, that it's just

11    a discovery request rather than something that we

12    have any reason to think there is a problem with what

13    the lab did.

14           MS. SIRIGNANO:  Judge, I do believe there

15    is a problem that the FBI has completely changed

16    their DNA procedures, their protocols.  They're using

17    this new program.  Everything that they had used in

18    the past, in terms of DNA testing, has been changed.

19    And, in fact, our reports from June 2017 and the

20    following month, they changed their ratios for the

21    actual testing, their likelihood ratios.

22           The report that I have says there are four

23    possible individuals, both male and female, the

24    alleged DNA on the firearm, and four, possibly, on

25    the holster.  And so it is discovery that I'm

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    entitled to.  Based on the subjectivity of the new

2    standards, the way that the examiner is now looking

3    at different electropherograms, and --

4              THE COURT:  Well, but what I'm hearing you

5    say is:  Any defendant that has DNA testing could get

6    all this material.  And I just don't think that's the

7    law.  I mean, that's what you're basically saying:

8    Any criminal defendant that has DNA tested by the FBI

9    is entitled to all this information.  That just can't

10   be the law, can it?

11             MS. SIRIGNANO:  Judge, what I'm saying is

12   is that based on the lack of reliability, the lack of

13   consistency --

14             THE COURT:  But you haven't shown me -- you

15   haven't shown me that there is any evidence of

16   unreliability in this.

17             MS. SIRIGNANO:  I'm happy to file a motion

18   specifically on the DNA, based on what I've learned

19   over the last week regarding this new computer system

20   and this new program.

21             All I have right now from the Government is

22   a two-page piece of paper that says that there is --

23             THE COURT:  But if you're, in fact, saying

24   that all FBI DNA testing is unreliable, then what do

25   you need -- why do we need to do any discovery?  It

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2301

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2302

```
 1   sounds like you're ready to make that argument with

 2   your expert and what you already have.

 3             MS. SIRIGNANO:  Because I don't have any

 4   discovery to show me what they did.

 5             THE COURT:  Tell me how you're any

 6   different than any criminal defendant in the United

 7   States.

 8             MS. SIRIGNANO:  Right now --

 9             THE COURT:  Every one of them could make

10   your argument, right?

11             MS. SIRIGNANO:  Absolutely, Judge.

12   Absolutely.  And what I've been told -- I went to DNA

13   boot camp last week, Judge, in Oakland, California.

14   And so what I've been told is that the FBI --

15             THE COURT:  Couldn't they find a seminar

16   site better than Oakland?  Across the Bay, for crying

17   out loud, you know.

18             MS. SIRIGNANO:  Government rates, Your

19   Honor.

20             THE COURT:  At least put it at Berkeley.

21             MS. SIRIGNANO:  Funny.

22             So what I'm trying to say, Judge, here is

23   that I have nothing.  I have a piece of paper with an

24   opinion.  I don't know how this examiner from the FBI

25   got to the conclusion that it made.  I don't have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2303

1    of the bench notes.  I don't have any of the charts.

2    I don't have their sampling protocols.  I don't have

3    any storage records.  I don't have any accreditation

4    for the examiner or the laboratory, the quality

5    manual, how they validate for each test that was

6    done, if there were blanks run before.

7            I don't have anything, Judge.  And so all

8    I'm asking for is what the FBI normally gives up in a

9    DNA case what they did.  And I don't believe it's a

10   fishing expedition at all.  I can't challenge what

11   they did without having a record of each step that

12   every DNA examiner must take now with this new

13   science, and to make sure that it was done properly.

14           If there were four people's DNA that were

15   found routinely, if an examiner says four, it could

16   be more, it could be five, it could be six.  I

17   learned if you run a DNA sample with the STR Mix

18   program, and it's run on a different sample, you can

19   have different results come out with different

20   proprietary programs.

21           And so that's all I'm asking for is what

22   they did, their standard operating procedures; if

23   they followed the standard operating procedures, why

24   the FBI changed their likelihood ratios in June 2017

25   to a different standard of likelihood ratios in July.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Did they get better or worse?
 2              MS. SIRIGNANO:  They got better for the
 3   defense.  So I don't understand this.
 4              THE COURT:  So why do you want to impeach
 5   them then?
 6              MS. SIRIGNANO:  No, Judge.  I'm trying to
 7   figure out what they did and why they did it, and
 8   move to exclude this DNA evidence, because I don't
 9   believe any of it's reliable right now.  I don't have
10   amplification logs.  I don't have any
11   electropherograms, which they actually look at and
12   look at the peaks to see what DNA allele is present
13   from the sample that was taken from the firearm and
14   the holster compared to Mr. Garcia, compared to Mr.
15   Montoya.  And Mr. Montoya's DNA is likely on that
16   firearm.  There could be two or three other people.
17   There could be confusion in the peaks, which might
18   implicate Mr. Garcia.
19              So I think not only is it relevant, but it
20   could be Brady material, Judge.  So that's all I'm
21   asking for is the bench logs, the work that was done,
22   why it was done that way, their protocols, their
23   procedures, and to see if we can identify anybody
24   else's DNA on these items of evidence.
25              And I do believe that the FBI routinely
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2304

 1   turns over this stuff from the DNA unit.  Because you

 2   can't really test reliability or accuracy, or the

 3   Court can't really do its gatekeeping function

 4   without really knowing if what they did is generally

 5   accepted.

 6        And this is all new stuff.  It's all new

 7   cutting-edge DNA analysis, Judge.  And there are

 8   challenges that are going on right now.  If I have a

 9   minute here, I can pull a couple of opinions for you

10   from, I think the Second Circuit, that they're

11   finally getting these challenges in the court system

12   since -- Mr. Donatelli, I think, did a challenge last

13   week in this district.  But they're finally getting

14   into the pipeline on this DNA analysis.

15        THE COURT:  Well, it's one thing to

16   challenge the DNA and the Government's DNA; that

17   sounds to me like a Daubert challenge, right?  It's a

18   different thing to get discovery from the Government

19   to prepare a Daubert issue.

20        MS. SIRIGNANO:  Indeed.

21        THE COURT:  I mean, has anybody written an

22   opinion saying you get this discovery to decide

23   whether you're going to file a Daubert motion?

24        MS. SIRIGNANO:  I can find out for the

25   Court.  The only way I see it happening is actually

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2305

1    having the discovery in order to properly challenge

2    it, Judge.

3            THE COURT:  Well, but has anybody said --

4    has anybody written an opinion that says the court

5    should order this discovery?  It's one thing -- what

6    I'm hearing you say is there are cases out there with

7    Daubert hearings.  But I'm not hearing that there is

8    an opinion out there that says the court should order

9    this so the defendant can determine whether a Daubert

10   motion is appropriate.

11           MS. SIRIGNANO:  Okay.  Judge, what I'm

12   learning right now is that the Government has already

13   turned over the DNA for Counts 4 --

14           MS. HARBOUR-VALDEZ:  Counts 1, 2, 3, 4, and

15   5.  All the underlying data.  It's almost 100 pages

16   of discovery.

17           THE COURT:  What did they turn over?

18   Turning over DNA is different than turning over

19   training records for field evidence collection

20   personnel.  Seems to me that's a gap between DNA and

21   training records for field evidence, collection

22   personnel.

23           MS. SIRIGNANO:  Judge, Ms. Harbour-Valdez

24   is telling me that they got all the underlying data,

25   the electropherograms, the bench notes, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    procedures, the manuals.

2           And to your question, Judge, the training

3    records and the way that the DNA is collected is very

4    relevant.  As you know, here Mr. Garcia's DNA was

5    taken by the FBI agents in Santa Fe South.  But I

6    don't know how the DNA swabs of the firearm and the

7    holster were taken:  If it was taken from one side of

8    the holster, if it was wiped all over the holster, if

9    it was taken from the back, if it was taken from the

10   inside.  I'd like to know how these people were

11   trained to do it, and whether or not they abided by

12   that training when they took the swab of the sample,

13   of the DNA sample, which was compared to Mr. Garcia.

14   And the two-page report, his DNA is implicated on the

15   holster.

16          I don't believe it's a fishing expedition

17   at all, if you carry it out from the time the DNA was

18   taken through the actual examination and the report.

19   There is very structured, rigid protocols from each

20   step which have to be abided by, or else the test is

21   invalid, Judge.

22          THE COURT:  All right.  Anything else on

23   the DNA then?

24          MR. BENJAMIN:  Your Honor, may I be heard?

25          THE COURT:  Well, let me see if Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Sirignano is done first.

 2              MS. SIRIGNANO:  I'm done with the DNA,

 3    Judge.

 4              THE COURT:  All right.  Mr. Brock -- Mr.

 5    Benjamin.

 6              MR. BENJAMIN:  Either way, Your Honor.  I

 7    have two first names.

 8              THE COURT:  Sorry about that.

 9              MR. BENJAMIN:  Your Honor, my specific

10    request -- and I spoke with the Government briefly,

11    and I don't know if they're going to agree with

12    this -- but normally, most of the materials that are

13    being requested, especially the bench book and the

14    policy manual are provided.

15              And a specific instance I can provide the

16    Court is in January of 2017, I cross-examined the

17    Government's DNA witness in this courthouse.  And the

18    materials that were provided, that are being

19    requested, were helpful in cross-examining her,

20    because their procedures and what they report are not

21    what Ms. Ryan, who I've designated as an expert, will

22    agree with what the report shows.  And so the only

23    way to know that and the only way to deal with that

24    is to, essentially, obtain the DNA policy manual and

25    those items that were in place during the different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2308

 1   times.  And as this indictment spans -- were indicted

 2   in 2001, 2012, those policy manuals have had

 3   revisions.  And so that's the reason for the need for

 4   the underlying, and the policy manuals from the

 5   agency that did the testing.

 6           THE COURT:  Well, it would seem that even

 7   if you're entitled to the information, you'd only be

 8   entitled for the materials at the time that the DNA

 9   was tested.

10           MR. BENJAMIN:  I think that's accurate,

11   Your Honor.  But the concern is the fact that, if

12   they provide the policy manual now, that's not the

13   same one that was in 2001.  And for instance, for Mr.

14   Gallegos, that won't be the same one that was in

15   2012.  And then there was additional DNA testing that

16   was performed, I believe, as late as 2016.  And so

17   there is multiple different time frames that apply.

18           THE COURT:  All right.  Thank you, Mr.

19   Benjamin.

20           MR. BENJAMIN:  Yes, Your Honor.

21           THE COURT:  Ms. Harbour-Valdez, do you have

22   anything you want to say on this?

23           MS. HARBOUR-VALDEZ:  I have nothing else to

24   add, Your Honor.

25           THE COURT:  All right.  Anybody else have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2309

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2310

1   anything they want to say on this?

2        All right.  The Government?

3        MR. BECK:  Yeah.  I think I'm up to bat on

4   this one.

5        I think Your Honor is correct that there

6   doesn't seem to be anything wrong with these.  That

7   being said, one of the reasons it's nice to have

8   these requests in advance of filing the motion is so

9   we can talk about it.

10        I don't think we have a problem providing

11   the bench notes from the testing of this DNA

12   evidence.  We'd have to talk to the FBI about

13   policies.  Again, I don't think that Rule 16 --

14   unless there is some reason to question the

15   credibility, I agree that most of what was discussed

16   sounds more like a Daubert motion, or motion in

17   limine than Rule 16 request.

18        So as I said, I don't think we have any

19   problem turning over the bench notes from the lab

20   testing.

21        THE COURT:  Let me make sure I understand

22   what bench notes are.  I'm imagining some technician

23   that's looking at the DNA, and they're making notes

24   that are specific to this case.

25        MR. BECK:  I didn't go to DNA boot camp so

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2311

```
 1    I couldn't tell you.  But that's what I imagine, too.
 2              MS. SIRIGNANO:  I can tell you, Judge,
 3    that's right.
 4              THE COURT:  Is that generally it?
 5              MS. SIRIGNANO:  Right.
 6              THE COURT:  These are notes that are
 7    specific to a specific defendant?
 8              MS. SIRIGNANO:  The testing of the
 9    evidence.
10              THE COURT:  It's not a bench book that's
11    just generic to DNA testing; it is notes that are
12    specific to a specific test.
13              MS. SIRIGNANO:  That's correct, Your Honor.
14              But I'll let Mr. Beck finish.
15              THE COURT:  All right.  So it sounds like
16    these test notes, desk notes --
17              MR. BECK:  Right.
18              THE COURT:  -- I guess I would think those
19    are equivalent to when you send off cocaine to a lab,
20    and it's tested; you get the results back, and there
21    is something for the defendant to look at.  The same
22    with -- I had another example, but something along
23    that line where you get a report -- fingerprints.
24              MR. BECK:  Yes.
25              THE COURT:  You send it to the FBI lab; you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2311

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 98

1   get a report on that set of fingerprints.  That's

2   what we're talking about?

3            MR. BECK:  Right.

4            THE COURT:  That makes some sense that they

5   get to see what the evidence is.  Rather than just

6   having the expert come in and give the conclusions,

7   they get to see what the backup to those conclusions

8   are.

9            MR. BECK:  I think so, too.  And I think

10  that's a fine place to draw the line for now.  If the

11  notes or some other briefing or something provides a

12  basis to question those, and there is good authority

13  that she may be entitled to more information before a

14  Daubert hearing, then I think we can go down that

15  road at that point.  But I think that the bench notes

16  would be a good place for us to turn over to her.

17  We're willing to do that.  She can come back to us

18  with questions or request more documents based on

19  what she's found.

20           THE COURT:  How is Ms. Harbour-Valdez

21  saying she got 110 pages?

22           MR. BECK:  She got a list from Aoki after

23  we gave them to him.

24           THE COURT:  But are you going to have desk

25  notes of one single DNA testing that's going to be

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                      1-800-669-9492

PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

DNM 2312

```
 1    110 pages?  That sounds like a lot of notes to me.

 2            MR. BECK:  So my understanding -- and they

 3    may be able to answer the question better than I --

 4    my understanding is that's from the state lab; that's

 5    how the state lab tested it; those are the notes that

 6    the state lab had.  So I'm not the expert at that.

 7    They may be able to enlighten that, provide some

 8    color on that comment, but I can't.

 9            THE COURT:  Well --

10            MS. SIRIGNANO:  Judge, if I could take a

11    second here.

12            THE COURT:  Let me talk just a second to

13    the Government so I understand their position.

14            So I'm not seeing something in the request

15    something called desk notes.  But I think probably it

16    overlaps with some of these.  But, for example, when

17    Ms. Sirignano requests relevant training records for

18    field evidence collection personnel, you're not

19    turning those over?

20            MR. BECK:  No.

21            THE COURT:  And you did not turn those over

22    to Mr. Troup and his counsel?

23            MR. BECK:  That, I couldn't tell you

24    standing here.  I don't know.

25            MS. SIRIGNANO:  Judge, the --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2313

 1              THE COURT:  Hold on, hold on.  I still want
 2    to talk to Mr. Beck for a while.
 3              You didn't turn over, and you're not
 4    prepared to turn over copies of the statement of
 5    qualifications for each analyst or technician
 6    involved in preparation, testing, or interpretation
 7    of the subject case?  You did not turn over those to
 8    Mr. Troup, and you're not prepared to turn those over
 9    to Mr. Garcia?
10              MR. BECK:  Well, I don't know what "the
11    subject case" is.  I'm guessing it's --
12              THE COURT:  I would think it's Mr. Troup
13    and Mr. Garcia.
14              MR. BECK:  Right.  Or interpretation or
15    statement of interpretation.  I don't really know
16    what that is.  It sounds like something that would be
17    provided in the CV.
18              THE COURT:  I would think so, too.
19              MR. BECK:  Right.
20              THE COURT:  And how about the next
21    category, copy of the laboratory's quality manual,
22    however named, in effect at the time of the subject
23    casework.  This is what Mr. Benjamin was saying, he
24    wanted it for the period of time that the testing was
25    done.  Are you -- did you turn those over to Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2314

1    Troup, and are you prepared to turn them over to

2    Mr. Garcia?

3            MR. BECK:  I don't know.  And no.  I mean,

4    it's an FBI -- I'm guessing they have a quality

5    manual, but I don't know from the time the casework

6    was performed.  It sounds like defense counsel is

7    pretty well informed on that.

8            And, as I said, if they find something from

9    the bench notes that may make them question that, I

10   think that's fine to ask for, and that's fine to

11   explore on cross-examination during a Daubert

12   hearing.

13           THE COURT:  Am I going to get the same

14   answer for copies of relevant internal and external

15   proficiency results during the relevant accreditation

16   period for each analyst?

17           MR. BECK:  Yes.

18           THE COURT:  All right.  Let me see if I can

19   categorize what you're saying.  If it's a report or

20   information specific to Troup and Mr. Gallegos -- and

21   Mr. Garcia's DNA, you'll give it to them.  If it's

22   more just general policy, accreditation reports, CVs,

23   that sort of thing, you're not going to produce?

24           MR. BECK:  Right.

25           THE COURT:  Okay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2315

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202

 1              MR. BECK:  And, as I said -- I mean, I

 2      don't think that this is -- I don't think that we're

 3      drawing a line in the sand here, never to be

 4      revisited again.  I think the defense all knows that

 5      if they have issues, they can come to us and we'll

 6      discuss them with them.  And so I think this is a

 7      good place to start.  And then, if we get past that,

 8      we get past that.

 9              THE COURT:  All right.  Well, let's do

10      this:  Let's take our break for the afternoon.  When

11      I come back in -- where did Ms. Harbour-Valdez go?

12              MS. HARBOUR-VALDEZ:  Over here.

13              THE COURT:  Okay.  Be prepared to tell me

14      what your 110 pages include.  Do they fall all within

15      the category that the Government is willing to

16      produce?  Did they produce that?  Or did they drift

17      over into the second category of more this sort of

18      the general lab accreditation, CVs, that sort of

19      stuff?  Let me get the universe that you have, and

20      then we'll see if people can live with this.  If they

21      can't live with this, I'm probably inclined to say

22      no.  But I want to be fully informed on it.

23              MR. BECK:  And I know you're going to walk

24      away from me as I say this, but it looks to me like

25      G, internal and external proficiency results, if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    there was information there that may be relevant and
 2    material, it seems to me that what that's getting at
 3    would be Giglio material for our Government
 4    witnesses.
 5          To the extent that there is something to be
 6    explored there, it seems like we may have to turn
 7    over what she's looking for anyway, which may
 8    short-circuit looking through all the internal and
 9    external accreditation as opposed to just what Giglio
10    would entitle her to, which would be relevant anyway.
11          THE COURT:  All right.  I want to know what
12    an amplification log is when I come back, too.
13          All right.  See y'all in a minute.
14          (The Court stood in recess.)
15          THE COURT:  All right.  We'll go back on
16    the record.
17          Let me see if I can approach this problem
18    from the back end rather than the front end, and then
19    see what y'all's thoughts are.  And I'll certainly
20    hear, Ms. Harbour-Valdez, whatever you wanted to say.
21          But let me -- Mr. Beck, when y'all put on
22    your evidence, your DNA evidence at trial -- I assume
23    you are going to present that, correct?
24          MR. BECK:  The DNA evidence?  Yes.
25          THE COURT:  So you're going to have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2317

```
 1    somebody presenting that evidence, correct?

 2              MR. BECK:  Yes, Your Honor.

 3              THE COURT:  At that time, that would be --

 4    given what y'all usually do, the Department of

 5    Justice usually does, the U.S. Attorney's Office,

 6    they would file a notice of that person being an

 7    expert, right?

 8              MR. BECK:  That's right, Your Honor, yeah.

 9    I mean, unless, of course, the defendants all

10    stipulate to all the DNA evidence coming in, then we

11    won't have to call that person.

12              THE COURT:  But assuming they don't, you're

13    going to be looking at giving a certain amount of

14    information at the time.

15              I was looking at the Attorney General --

16    there was a National Commission on Forensic Science.

17    I think it no longer exists; it went out of business,

18    I think, in April, April 23rd of this year.  Its

19    charter expired.

20              But before that, in January of 2017,

21    Loretta Lynch took the recommendations of the

22    National Commission on Forensic Science, and then

23    gave some guidelines for the department.  And it

24    says, "This is information providing the defense with

25    an avenue for challenging test results."  It says,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2318

```
 1    "It may be Brady-Giglio."  "And for forensic
 2    witnesses employed by the Government, Giglio
 3    information must be gathered" -- well, here is what I
 4    said, "In meeting obligations under Rule
 5    16(a)(1)(E)(F) and (G), the Jencks Act, Brady, and
 6    Giglio, and to comply with the department's policies
 7    of broad disclosure, the prosecutor should be attuned
 8    to the following four steps."  And I'm not saying I'm
 9    going to order what's in this guideline, but I'm just
10    wondering if it provides us some guidance as to what
11    maybe ought to be produced.  I'll summarize, because
12    it's lengthy.  But the first step is:  In most cases
13    the best practice is to turn over the forensic
14    expert's report to the defense if requested.  That
15    seems to be what you and I were talking before the
16    break; that's what you're willing to give.
17            Then it also says, number two:  The
18    prosecutor should disclose to the defense a written
19    summary -- I'm not sure that's really important,
20    but -- sufficient to explain the basis and reasons
21    for the expert's expected report.
22            And then it says, third:  If requested by
23    the defense, the prosecutor should provide the
24    defense with a copy of or access to the laboratory or
25    forensic expert's case file, either electronic or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2319

```
 1    hard copy.  Normally, this will describe the facts or
 2    data considered by the forensic expert, including the
 3    underlying documentation of examination or analysis
 4    performed, and contain the material necessary for
 5    another examiner, the defendant's expert, to
 6    understand the expert's report.  The exact material
 7    contained in the case file varies depending upon the
 8    type of forensic analysis performed.  It may include
 9    such items as chain of custody, photographs,
10    analysis, worksheets, bench notes, scope of work, and
11    examination plan data.
12              It then says:  In some circumstances the
13    defense may seek laboratory policies and protocols.
14    To the extent that a laboratory provides this
15    information online, the prosecutor may simply share
16    the website address with the defense.  Otherwise,
17    determination regarding disclosure of this
18    information should be made on a case-by-case basis in
19    consultation with the forensic analysis involved,
20    taking into account the particularity of the
21    defendant's request and how relevant the request
22    appears to be to the anticipated offenses.
23              And then fourth:  The qualifications of the
24    expert.
25              I'm wondering if we can use this somewhat
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2320

1   as a guideline to work backwards; that they're

2   entitled to what your expert and proffering witness

3   at the time -- if they're entitled to it at the

4   time -- get a little closer to trial -- use it now to

5   get them the information they need to challenge any

6   of the DNA expert report.  What would you think about

7   using your department's guidelines as a guideline for

8   what should be produced in this case?

9          MR. BECK:  Yeah, I think that's right, Your

10  Honor.  And I think that's largely where I was, that

11  we produced the notes.  And if things came up, we

12  could talk about the protocols and procedures.

13         I mean, so that the documents that were

14  produced to Troup and some of those defendants were

15  documents done by the state lab.

16         We submitted the same questions to the DEA

17  lab, and the DEA lab adamantly objected to providing

18  some of the same materials that the state lab was

19  willing to produce.

20         So I'm guessing that's where it comes in in

21  that fourth category you were saying, that procedures

22  and protocols not published online, you see how

23  things play out under the circumstances.

24         And I think that's a good framework for all

25  of us to work in.  Obviously, since it's the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2321

```
 1    department, I'm not going to throw too much of an

 2    objection to it.  So I think that's right, Your

 3    Honor.

 4              THE COURT:  Okay.  Could you live with

 5    that?

 6              MS. SIRIGNANO:  No, Your Honor, I can't

 7    live with that right now, because I'm just going to

 8    come back again and ask for more -- there is no

 9    reason --

10              THE COURT:  Let me ask you:  Have you

11    looked online to see what's available?

12              MS. SIRIGNANO:  I did some looking, yes,

13    Your Honor.  Not specifically regarding the protocols

14    and procedures and accreditation documents, I did

15    not.  But I did find a number of reports.

16              The National Institute of Standards and

17    Technology, or NIST, published a paper on October 12,

18    2017, titled, "NIST Experts Urge Caution in Use of

19    Courtroom Evidence Presentation Method.  The use the

20    of the 'likelihood ratio' -- in quotes -- is not

21    consistently supported by scientific reasoning

22    approach."

23              So that's why I'm saying that I have

24    challenges to the way --

25              THE COURT:  But NIST, which is out of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Department of Commerce, their heading is at the top

2    of the recommendations to the Department of Justice

3    or to the Attorney General.  And what they're

4    doing -- I mean, you can tell what they're doing --

5    they're just taking Rule 26(a)(2)(B), and kind of

6    slicing and dicing it slightly for use as a criminal

7    rule.

8            It doesn't look like the Attorney General

9    did this, but she pretty much did, in the sense that

10   when she adopted it, she expanded it.  I gave her

11   rendition of it.  But, again, all that NIST and the

12   National Commission on Forensic Science do are they

13   recommend 26(a)(2)(B) -- so you've done enough civil

14   cases, you know what those expert reports look like.

15   So that's what it is.

16           And then 2, the Attorney General should

17   direct federal prosecutors to allow the defendant

18   full access to the expert's case record.  So that

19   seems to be what Mr. Beck is saying, that's what he

20   thinks the Attorney General requires.

21           And then recommendation 3, to the extent

22   the aforementioned disclosures exceed what is

23   presently required by federal law, the Attorney

24   General should authorize federal prosecutors to

25   condition such additional disclosure on the defense's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2323

```
 1    agreeing to provide the same disclosure.  So, in

 2    other words, it's reciprocal.

 3          So if I'm looking at what NIST is doing,

 4    it's being cautionary because it's trying to provide

 5    some basis for your experts, the defense experts to

 6    challenge the Government's experts.  But it doesn't

 7    seem to be that it's requiring protocols and those

 8    sort of things.  So I'm wondering where your support

 9    for me ordering protocols and guidelines and those

10    things would come from, because I'm not seeing them.

11          MS. SIRIGNANO:  Well, it's just a matter of

12    common sense, Judge, that I'm not able to effectively

13    cross-examine or confront the Government's expert

14    without the quality manuals or the standard operating

15    procedures.  And the experts themselves are getting

16    the language, and basing their opinions and their

17    conclusions from actual protocols and the manuals.

18          THE COURT:  Well, if we were doing a

19    negligence test, I mean, it would be nice to know

20    what the internal procedures of the company are, to

21    see if they violated it, and then you might argue

22    that, Okay, jury, they were negligent because they

23    didn't even follow their own regulations and rules.

24          But if you got the case file, if your

25    expert has the case file, he or she can look at it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2324

```
 1    and say, This is garbage.  This isn't the way to do a
 2    DNA test.  It doesn't matter what the protocols say.
 3    If you're looking at the case file and you can see
 4    exactly what the examiner did, your expert should be
 5    qualified enough to look at that and say, That's
 6    garbage.
 7              MS. SIRIGNANO:  Well, Your Honor, I wish it
 8    was that easy.  But the problem is that all these
 9    laboratories have different protocols and procedures.
10              THE COURT:  Does it matter if they were
11    followed?  What you want to know, is that going to
12    produce -- regardless of what the protocols are, if
13    the person did a test, let's say it exceeded the
14    protocols --
15              MS. SIRIGNANO:  Okay.  So, for example,
16    Judge, there are thresholds in this analysis.  It's
17    called the likelihood ratio, okay?  And the technique
18    is the -- it's PCR testing, right?  And so they take
19    a sample of this DNA, a swabbing from, say, a
20    countertop or a holster or compare it to the DNA from
21    a suspect, okay?  And they amplify it.  You had asked
22    me about amplification, okay?  A little tiny piece of
23    DNA.  And the loci in the DNA gets amplified so it
24    becomes this DNA string, like you saw in science
25    class.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2325

1        And so there can be problems in the

2   amplification process, which is based on their

3   standard operating procedures, okay?  There can be

4   problems with the testing, if there is a hiccup or a

5   burp or a peak that either comes in the testing that

6   shouldn't be there, and they call it a drop-in or a

7   drop-out peak.  There is problems with the

8   fluorescent dye on the polymer that is added to the

9   DNA mixture in the amplification process.  And it

10  goes through this little tiny capillary; it's heated

11  up; it's hit with light, and that's what causes the

12  peaks on the electropherogram, okay?

13       So that's three examples right there.  If I

14  don't have what the procedures are -- there is noise

15  in the background based on the heating process; what

16  their threshold levels within that laboratory are for

17  noise; what the thresholds are in the laboratory for

18  drop-in peaks, drop-out peaks.  And then what they

19  count, Judge.  The DNA is looked at by batch.  And if

20  the peak happens in a specific batch, is the peak

21  high enough in the electropherogram to be counted as

22  part of the match or the exclusion?

23       So the only way you can really look at it,

24  look at the case file, and say, Well, this peak came

25  at 156, but the threshold is at 200 for the lab --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2326

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2327

```
 1   and I'm just making these numbers up, because I don't

 2   know what the FBI laboratory's threshold is for peaks

 3   on an electropherogram right now, okay?  They didn't

 4   count it.

 5          And these are mixed-use samples.  They're

 6   not single-source samples.  We've got from the report

 7   the DNA examiner said that, "Male and female DNA was

 8   obtained from item 3."  That's the alleged -- the

 9   Phoenix Arms pistol that was sent for testing.  And

10   so the interpretation of item 3 was performed

11   assuming that the DNA originated from four

12   individuals.

13          Well, my expert says, Well, if they're

14   saying four individuals, it likely could be five, it

15   likely could be six.

16          So without the proper manuals, the SOPs,

17   the written procedures, when the tests were

18   performed -- because obviously, I said their

19   likelihood ratio has changed the month after I got

20   this report -- my expert and I are unable to really

21   do the right job in cross-examining the Government's

22   DNA expert.

23          So I had put together -- well,

24   Mr. Harbour-Valdez and I put together what she got.

25   And the Government is comparing the state lab's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2327

1    production.  What they're saying is that they

2    overproduced this.  Well, I don't believe it was

3    overproduced.  This is stuff that --

4              THE COURT:  Who said that?

5              MS. SIRIGNANO:  I'm sorry, Judge?

6              THE COURT:  Who said "overproduced"?

7              MS. SIRIGNANO:  Well, during the break the

8    Government position was that Team Troup had gotten

9    the state DNA discovery, and that it was

10   overproduced, in the sense that they got materials

11   that the state lab provided to them, and they

12   overproduced it.  But it might not be materials that

13   the FBI produces.

14             Each lab has --

15             THE COURT:  Well, life would be easier if

16   people overproduced, wouldn't it?

17             MS. SIRIGNANO:  Absolutely, Judge.

18             So it just doesn't make any sense.  If the

19   state lab is producing it, and it's needed in order

20   to do a proper evaluation, then there is no reason

21   why the FBI shouldn't produce it.

22             Mr. Beck brought up the DEA.  And that was

23   in regards to the drug evidence.  We're talking about

24   a totally different agency, a totally different lab.

25   The DEA is known throughout the country that they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2328

 1   don't want to produce any of their standard operating
 2   procedures and manuals and all of that, which they've
 3   been able to keep, except for very few instances
 4   where there has been protective orders entered.
 5           But our position is consistent with the
 6   NIST papers that this likelihood ratio method, based
 7   on more than one source of DNA is not supported by
 8   the current scientific reasoning.  That's why they
 9   keep changing their ratios.  And that we need all
10   this stuff to make a proper Daubert challenge, Judge.
11           THE COURT:  All right.  Thank you, Ms.
12   Sirignano.
13           Ms. Harbour-Valdez, do you want to
14   enlighten me on what you've got, your overproduction?
15           MS. HARBOUR-VALDEZ:  Your Honor, I had a
16   chance to run through some of it.  And I'm referring
17   first to DeLeon production 13017, through --
18           THE COURT:  How did you get this?  From the
19   Government.
20           MS. HARBOUR-VALDEZ:  Yes, Your Honor --
21   through 13228.
22           THE COURT:  So they went to the state; the
23   state gave all this stuff, and then they gave it to
24   you?
25           MS. HARBOUR-VALDEZ:  My recollection and,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2329

 1   the Government can correct me if I'm wrong, we also

 2   got it in Count 3.  And I'll give you those page

 3   numbers for the record.  It's 13485 through 13754,

 4   for the Count 3 homicide.

 5          My recollection is that this was

 6   litigated --

 7          THE COURT:  Your stuff came from the state;

 8   they went to the state and got it and gave it to you?

 9          MS. HARBOUR-VALDEZ:  Right.  These two

10   homicide were initially investigated by the New

11   Mexico State Police.

12          THE COURT:  Okay.

13          MS. HARBOUR-VALDEZ:  But my recollection is

14   that we received this after it was requested in one

15   of the discovery motions that Mr. Castle and Mr.

16   Cooper filed, and Nate Chambers filed.  I don't know

17   if --

18          MR. BECK:  Yes, I think we agreed to go

19   back to the state and ask them what they produced,

20   and turned over what we could and come back to you.

21          THE COURT:  And what is the significance of

22   that?

23          MS. HARBOUR-VALDEZ:  Do you want -- you

24   asked me to make a list.  I'm happy to do that.

25          THE COURT:  Well, I mean, what is the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 217

1    significance that this was produced after it was

2    requested or --

3              MS. HARBOUR-VALDEZ:  Well, Ms. Sirignano is

4    questioning the same thing, so it's the same request.

5    The underlying data that we need and that our experts

6    need --

7              THE COURT:  But I take it her material is

8    not at the state lab, right?

9              MS. HARBOUR-VALDEZ:  That may be the

10   difference here.  But according to our experts, this

11   is the underlying data that you should get in order

12   to make any sense of the one- or two-page report that

13   you get.

14             THE COURT:  All right.  What did you get?

15             MS. HARBOUR-VALDEZ:  Match detailed

16   report -- and I hope you don't ask me to explain what

17   all of these are, because I went to the same seminar,

18   but I'm not up on every one of these things.

19             THE COURT:  Tell me this, since you and I

20   are probably going to know what you're going to list,

21   does any of it look like it's protocols of the

22   department --

23             MS. HARBOUR-VALDEZ:  Yes, absolutely.

24             THE COURT:  -- or does it look like it's

25   more case file related?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2331

1          MS. HARBOUR-VALDEZ:  We did receive the

2     standard operating procedures related to biology,

3     standard operating procedures related to serology,

4     and the New Mexico Department of Public Safety

5     Northern Forensics Lab standard operating procedures.

6          THE COURT:  Okay.

7          MS. HARBOUR-VALDEZ:  Everything else, I

8     would think, be considered the underlying data chain

9     of custody reports, the serology section worksheets,

10    DNA extraction logs, electropherograms, control logs

11    slot/blot quantification, statistics reports,

12    specimen detail reports, state match detail reports,

13    DNA acceptance code worksheet.  It included

14    communications.  There was a communications log,

15    which actually had emails from AUSA Jack Burkhead.

16    There was some communications back and forth about

17    testing and retesting.  Lab reports that contained

18    statistical analysis, results and conclusions,

19    serology reports.  The items, obviously, that were

20    examined.  The chelex DNA extraction, the

21    quantification worksheets, the standard curve graphs,

22    the amplification sheets.  And my understanding on

23    these two, there were two different proprietary

24    programs that Ms. Sirignano spoke a little bit about.

25    One of them was the ABI prism.  The other was the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2332

```
 1    3500 genetic analyzer 96.  Both of those are

 2    proprietary programs that may produce different

 3    results depending on the samples that are used.

 4    Statistics reports, extracts.  And again, the chain

 5    of custody receipts.

 6              So that was underlying data, and then the

 7    standard operating procedures that I previously

 8    mentioned.  And those were both -- that's Counts 1,

 9    2, and 3 DNA.

10              THE COURT:  All right.  Thank you, Ms.

11    Harbour-Valdez.

12              MS. SIRIGNANO:  Judge, during the break, I

13    circled the letters that I thought maybe I could ask

14    for regarding the whole case file that I would need.

15    And it includes item A, C, E, F, H, I, J, K, L, N, O

16    P -- I have Q, the final report -- R, the copies of

17    correspondence, I did find with the help of

18    Ms. Gilbert.  We had a request by Agent Sainato,

19    Bates No. 21717 to 21718, one email.  The bench logs,

20    which is S.  The statistical analyses, which is T.

21    V, regarding contamination control procedures.  W,

22    which is in regards to maintenance records and

23    calibration.

24              And that's what I thought I could ask for

25    right now, and then revisit the other documents at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2333

```
 1   another time after my expert looks at it.

 2          THE COURT:  Well, let's do this:  I think

 3   I'm going to draw the line about where the Government

 4   is agreeing to draw it, where the Department of

 5   Justice is drawing it, where NIST seems to be drawing

 6   it, where National Commission on Forensic Science

 7   seem to be drawing it.  So that y'all can look and

 8   get your guidance from it, it will be the Loretta

 9   Lynch, her memorandum for Heads of Department,

10   Components From the Attorney General, dated January

11   6, 2017, Recommendations of the National Commission

12   on Forensic Science, Announcement for NCFS meeting

13   12.  And then also the recommendations themselves to

14   the Attorney General.  And that's dated -- the

15   current version is dated August 5, 2016.  And then,

16   if you look at the website for the National

17   Commission on Forensic Science, it will give you a

18   little background on that.

19          Rather than trying to deal with these

20   categories, I'll just say that the line will be drawn

21   according to the duty to disclose on paragraphs 1, 2,

22   3, and 4.  In 3 it talks about the laboratory

23   policies and protocols.  I won't grant that request

24   at the present time.

25          But I -- after we get the hard data into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2334

1    your expert's hands, if for some reason they can't

2    give an opinion because of that, discuss that with

3    Mr. Beck.  If you can't reach a reconciliation, you

4    can come back to me and I'll look at it.  But I'm

5    going to need to have expert testimony telling me we

6    cannot criticize the Government's expert without

7    protocols and procedures.  I guess I'd be a little

8    surprised if an expert needs those to criticize a

9    specific DNA evaluation.  But I'll keep an open mind

10   on that.  But I think I'm going to need probably

11   expert testimony on it.  But let's get what the

12   Government is willing to give, and I think should be

13   given, and then you can come back to me and make

14   another run at protocols and the procedures.

15           Mr. Benjamin.

16           MR. BENJAMIN:  Your Honor, and just for --

17   and I realize the Court's advising what it intends to

18   do, but that is Ms. Ryan's position.  Ms. Ryan is who

19   I've designated as a DNA expert, Your Honor.  That is

20   her position that you have to have those.  And Ms.

21   Sirignano covered essentially the bases.  I think Ms.

22   Ryan has put it to me a little more succinctly

23   before, but at the same time, New Mexico lab has

24   always provided those.  And I believe the FBI lab in

25   a court martial case I had provides those, because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2335

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 222336

 1   those are -- excuse me, Ms. Ryan's position is you

 2   have to have those in order to deal with the

 3   application issues, and the other things that, quite

 4   frankly, I'm not qualified to talk about.

 5           THE COURT:  Well, that's the thing.  I'm

 6   not qualified to a talk about it either.  I'm going

 7   to need expert testimony on that.  If you can work it

 8   out with Mr. Beck, that's fine, if they produce it in

 9   other cases.

10           I mean, I think it's interesting that the

11   state lab produces it, and you're lucky that you got

12   it.  But I think it's a different issue as to whether

13   I order it out of the federal labs.  And unless

14   somebody is going to actually put it in an affidavit,

15   and swear to me they cannot give an expert opinion

16   without protocols and procedures -- which I guess

17   I'll take a look at that when I see it -- but I think

18   a lot of people opine in front of me without

19   protocols and procedures:  In DEA cases, fingerprint

20   cases, and if you jump over to the civil side, all

21   sorts of stuff, without having the protocols and

22   procedures of other labs.

23           But I'll keep an open mind.  So let's get

24   those materials into the defendants' hands, and we'll

25   start there.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2336

```
 1              So that's granted in part and denied in
 2    part.
 3              What else do you have with motion 1270, Ms.
 4    Sirignano?
 5              MS. SIRIGNANO:  Judge, during the break, I
 6    talked with Ms. Beck.  And instead of wasting the
 7    Court's time and everybody else's time, we agreed to
 8    sit down after this hearing, or tomorrow, and go
 9    through all of these, and sit down and try to come to
10    a compromise, if the Court's agreeable with that.  I
11    know we've got probably an hour left.  But, honestly,
12    Judge, it might save everybody a little bit of time
13    if Mr. Beck and I sat down with these and worked it
14    out, without having to go back and forth.
15              THE COURT:  Your thoughts, Mr. Beck?
16              MR. BECK:  Yeah, Ms. Sirignano is right, we
17    did discuss that.  And we'll come up with a time
18    before the next set of hearings to discuss that and
19    work out our agreements.
20              THE COURT:  Well, I don't think that we can
21    run a railroad this way, regardless of what we do
22    today.  If we're going to show up, we've got to have
23    our discussions before we get to the hearing.  I
24    mean, I told everybody you've got to meet and confer
25    before you file a motion in federal court.  That's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224

```
 1    required by local rules.  That's required by the
 2    federal rules.  So I don't like bringing everybody
 3    together -- this is quite an ordeal to put everybody
 4    together, bring everybody down, we schedule two days,
 5    and then we break in the middle of it and want to
 6    meet and confer.  So that's not the way to run a
 7    railroad.
 8            I don't want to force everybody to sit here
 9    and listen to stuff that's going to get worked out.
10    So I don't want to, you know, just have everybody
11    fill up the next hour.  But I'm not happy with that.
12    And I don't think that's good way for us to litigate.
13    So --
14            MS. SIRIGNANO:  Judge, this is my fault.  I
15    take full responsibility for that.
16            THE COURT:  This can't happen again.  It's
17    kind of like the Government don't run out of
18    witnesses; don't show up and say:  Thank you for
19    everybody's being here, but we're going to meet and
20    confer and we'll come back at another time.  We've
21    got a very tight schedule here.
22            MS. SIRIGNANO:  Judge, I fully anticipated
23    the Government would have responded to that motion
24    and the other motions.
25            THE COURT:  Let me ask this:  Are there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2338

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 225

```
 1    issues in the remaining portion of this motion, and

 2    in the motion, the 45-page motion that we know you

 3    guys are not going to work out?  I mean, let's just

 4    tackle them.  I mean, even if we don't get through

 5    all of them, if we just absolutely know that there is

 6    something you want, and we know that the Government

 7    is not going to give it to you, can we tackle that

 8    issue and get after it this afternoon?

 9             MS. SIRIGNANO:  Sure, Judge, absolutely.

10             We can go to page 7.  I am interested in

11    the confidential human source documents.  Agent Acee

12    had prepared a criminal complaint in 17-MJ-2280.  It

13    was a defendant where -- hang on one second, Judge --

14    it was a complaint rather, Judge, not a defendant --

15    by the name of Lupe Urquizo, a/k/a "Marijuano."  And

16    in that complaint, Agent Acee said that there are 114

17    arrestees of suspected SNM Gang members.  And he had

18    also said, part of that complaint, that -- and this

19    is Item K on page 10 -- that there were -- more than

20    80 members have been charged, suspected SNM Gang

21    members.  And I included a link in the Albuquerque

22    Journal.  That's where I got this information.  It

23    was a recent article, September 20, 2017, regarding

24    this SNM case.

25             And so I'm interested in getting the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2339

1    information that is relevant to our case based on the

2    114 arrestees and more than 80 members have been

3    charged.

4           And to support that, there was another

5    criminal complaint that he authored, Agent Acee; it

6    was 16-MJ-2346; defendant by the name of Jose Antonio

7    Gomez.  I started looking after I read that article.

8    And in that criminal complaint it says, allegedly,

9    that in late 2015, Mr. Gomez allegedly brokered a

10   four-ounce heroin deal between an Andy Quintana, and

11   SNM Gang member, Christopher Garcia.

12          So what concerns me, Judge, is we've got

13   all of these cases that were started, allegedly

14   related to our case, and either were dropped or

15   prosecuted separately.  And this was -- this is

16   information that I had learned on my own.  None of

17   this information regarding these separate criminal

18   complaints, possible related confidential human

19   sources, has been provided to us.

20          So yes, Your Honor, I don't believe that

21   the Government is going to want to turn this

22   information over.  As well as all of the -- their

23   related investigatory documents, audio and video,

24   related to Agent Acee's statements.

25          So that's the first thing, Judge.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  So to make sure we've got a

 2    live dispute here.  If I were to leave this until the

 3    next hearing, this is not something you would

 4    compromise on?

 5              MS. SIRIGNANO:  I probably could compromise

 6    on it.  I would like the information especially

 7    relating to my client.  But I don't believe they're

 8    going to provide any Sting Ray or Sting Ray-type

 9    surveillance investigatory documents, and any

10    additional information, like Mr. Gomez or Mr. Urquizo

11    or confidential human sources.  I don't believe the

12    Government would compromise with that, Your Honor.

13    I'm always happy to compromise, but I don't believe

14    that they're going to want to turn this information

15    over.

16              And, quite frankly, I don't know how

17    that -- Agent Acee for the Albuquerque Journal, or in

18    his criminal complaint is saying that these are all

19    related.  Phase 1, takedown in December 2015; Phase

20    2, takedown, Phase 3, takedown.  It's all part of his

21    affidavit in support of this criminal complaint.  And

22    he states that he's examined more than 500 letters

23    and writings from SNM Gang leaders, members and

24    associates coordinated over 85 controlled drug and

25    firearm purchases from SNM Gang leaders; members and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2341

 1   associates obtain court-authorized wiretap orders

 2   with 11 extensions, targeting certain cellular

 3   telephones of SNM Gang leaders and members.

 4          So this is just an example in one criminal

 5   complaint that I found on my own that hasn't been

 6   produced.  And I believe -- if Agent Acee believes

 7   these are all related, then I believe we're entitled

 8   to these investigatory documents.

 9          THE COURT:  But they've indicated they're

10   going to give you everything that shows payments,

11   benefits, anything to Mr. Duran.  If they're going to

12   show up in this stuff, they're going to give it to

13   you.  I guess what, then, is the fight?  They told

14   you that they're going to give you all that

15   information.  So is there really an issue here?

16          MS. SIRIGNANO:  Duran is completely

17   separate, Judge.

18          I know very little about these two

19   gentlemen:  Gomez, who says that he --

20          THE COURT:  Maybe I'm not looking at the

21   right one.

22          MS. SIRIGNANO:  I'm on page 7, number 1.

23          THE COURT:  I thought we were on K on 10.

24          MS. SIRIGNANO:  Oh, it's both related, K

25   and 1.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2342

```
 1              And today we did resolve the Eric Duran
 2    payment thing.  So I think that's already resolved,
 3    Your Honor.
 4              THE COURT:  I'm looking at page 7.  I do
 5    not see --
 6              MS. SIRIGNANO:  Number 1 at the top.
 7              THE COURT:  I thought you said 11.
 8              Well, Mr. Beck, do you see any room for
 9    discussion here?  Do you think this one is ripe for a
10    decision?
11              MR. BECK:  I mean, we can discuss it.  I
12    see that Bryan Acee said these are related, Agent
13    Acee said these are related to the SNM, meaning that
14    they are related to the SNM.  There are a number of
15    one-off cases that have been going on since 2015,
16    when the Marcantel incident occurred outside of
17    context of this case.  They're not related to these
18    cases.  They're related to the SNM, but they have no
19    relation to these cases.
20              So anything that's really of interest, to
21    which the defendants are entitled under Rule 16,
22    Brady, Giglio, has been turned over from these -- I
23    mean, from the investigation.
24              To the extent that there are other cases
25    involving SNM members, that wouldn't be admissible.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2344

```
 1    It's not something that the United States intends to

 2    put into this trial.  It's not something that would

 3    be relevant to the issues in this trial.  So it's our

 4    position that all of this information is not

 5    relevant, and that's why it hasn't been produced.

 6              THE COURT:  When you use the word

 7    "one-off," you mean some of the single defendant SNM

 8    Gang cases, where people may be cooperating, not

 9    cooperating; they're just single SNM Gang members?

10              MR. BECK:  I mean, I would think -- I mean,

11    the majority are not.

12              So, again, if we get back into cooperators,

13    and we're going to back into the whole Roverio thing

14    that I think we've done before and that we agreed

15    with them on all the requests that we've turned over.

16              What I mean by one-off cases is that, in

17    2015, when the whole Marcantel incident came to

18    light -- go over what's been beaten to death here --

19    the FBI, the task force started to investigate the

20    SNM.  As they did so, they targeted the people in

21    this room for this case, the people in the RICO for

22    RICO.

23              But along the way, as they did that, they

24    found SNM members who were dealing drugs, who

25    possessed a weapon, who did any number of federal
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2344

```
 1   offenses, and arrested them and put them in prison.
 2   They are not charged incidents if they are not here
 3   in front of the Court.  And so they are not -- while
 4   they may be related because they are SNM members or
 5   associates, they are not -- they don't -- they're not
 6   probative of any material fact in this case.  We
 7   don't intend to use them in our case-in-chief at
 8   trial.  We don't intend to introduce evidence of
 9   these folks or these crimes.  And that's why they
10   haven't been provided.
11          Most of them -- I mean, Urquizo will be
12   testifying in this trial, so that's why we provided
13   his information to the defense.
14          So the majority of the rest of these that
15   they don't have information about they don't have
16   information about because they are not relevant.
17          MS. SIRIGNANO:  See, that's my problem,
18   Your Honor, is that just looking at this complaint
19   generally, regarding Mr. Urquizo, it's got the
20   identical language of the first 14 paragraphs of our
21   indictment, Document 949.  And so they are related.
22   The way that this was written was Phase 1 takedown,
23   which involves December 2015, 48 SNM Gang members and
24   associates were arrested and indicted on
25   racketeering, drug, and firearm charges.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2345

```
 1              And so, while the Government would like to
 2     distance all of these, quote, "one-off" cases, they
 3     are intertwined.  And the language is nearly
 4     identical.
 5              And in the Gomez complaint, which is
 6     similar, my client is implicated.  And this
 7     information, this complaint, none of this was
 8     provided to me.  And so, if the FBI and the
 9     Government is going to use identical language, and
10     part of what they have to prove here is that the SNM
11     Gang is an enterprise, we are entitled to this
12     information.  It's absolutely relevant.  And
13     especially the documents that may have some mention
14     or some relevance to particular defendants that have
15     been indicted in this case.  So that's why I'm asking
16     for all the investigatory documents.
17              MR. BECK:  To the extent that I said that
18     the Urquizo complaint and that case is a one-off and
19     unrelated to that -- which I'm not sure I said -- I
20     didn't mean that.  Lupe Urquizo is related to this
21     case.  He was a participant in the Molina murder, and
22     he was indicted as such.  So that is relevant.  And I
23     can say that we have already produced his gang file,
24     his STIU file.  We're producing in this next round
25     his inmate misconduct reports, his pen pack.  So they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2346

 1   have the information for him.  Because he will be a

 2   material witnesses in this case, his information is

 3   relevant.

 4           The rest of them, the majority of the rest

 5   of them are simply not relevant.  And that's why -- I

 6   mean, if the language in his indictment is similar,

 7   that's intentional, because it is related.  The

 8   language in the other indictments, if there are

 9   indictments or complaints, is not, because they are

10   not similar.  So --

11           THE COURT:  All right.  Mr. Lowry.

12           MR. LOWRY:  Your Honor, may I be heard just

13   briefly on this?

14           THE COURT:  You may.

15           MR. LOWRY:  Your Honor, the issue here --

16   and, frankly, you heard it a little earlier with

17   Ms. Gutierrez' motion to dismiss.  I raised it in my

18   motion for a bill of particulars back in May.  And

19   we've talked about this today.  The Government has

20   the burden of proving the enterprise.  And they've

21   taken this very large macro perspective that the SNM

22   is this huge organization, with all of these members.

23   And if the Government is correct in that

24   interpretation, then every single SNM member is

25   responsible for every criminal act of the SNM

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 2347

```
 1   organization.

 2            And so this becomes, in my view, a Kyles v.

 3   Whitley mode of impeachment that they want to say

 4   that somebody like Ms. Gutierrez, who happens to know

 5   somebody who happens to know somebody who is an SNM

 6   member is responsible for all of the conduct of the

 7   enterprise, but yet, here they have, apparently, you

 8   know, 10, 20, 30, 40 other people that aren't

 9   responsible for it.  They made a charging decision

10   that they're just one-offs; they're not part of a

11   larger group.

12            My perspective would be this:  Those names

13   would be helpful in order for me to argue what I

14   argued in my motion for a bill of particulars, that

15   there is no one big enterprise; that this is a small

16   collection of states or small microgroups that are

17   participating in criminal conduct, isolated events

18   charged to different collectives.

19            Ms. Arellanes explained that earlier.  You

20   know, there has to be continuity, not necessarily

21   membership, but the purpose of the organization and

22   interplay between the members for an enterprise to

23   exist.  And the list of names of people like this

24   that the Government claims is associated with the SNM

25   would be very relevant for us to dissect the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2348

 1    structure of the so-called organization.

 2              THE COURT:  Thank you, Mr. Lowry.

 3              Mr. Benjamin.

 4              MR. BENJAMIN:  And briefly, Your Honor, one

 5    of the one-offs that was not responded to by the

 6    Government, that Ms. Sirignano had mentioned, was

 7    Jose Antonio Gomez.  He is the victim in Counts 13

 8    through 16.  And, I guess, my only request would be,

 9    if they're producing other documents, that they

10    produce the same documents for Jose Antonio Gomez,

11    who is not a one-off member.  He is somebody they

12    have chosen to assert is the victim.  There are other

13    documents that I haven't seen.  But if they're

14    producing documents in this next batch, I would ask

15    that those be in there.

16              THE COURT:  All right.  Thank you, Mr.

17    Benjamin.

18              Mr. Beck.

19              MR. BECK:  Your Honor, I mean, I haven't

20    heard how these items would be material to preparing

21    the defense.  These cases are unrelated, other than

22    that these targets, these convicts, or suspects, or

23    however you want to refer to them as, Rule 16

24    requires that it be material to preparing the

25    defense, or that we're going to use in our

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2349

1    case-in-chief at trial.  We're not going to use in

2    our case-in-chief in trial; they're not indicted acts

3    in the RICO.  To the extent that they are, they have

4    evidence of all this stuff.  And so I hear that

5    they're saying we're casting the net broad, and you

6    know, we've got this wide brush on what the SNM is,

7    and they have over 40,000 pages of discovery of what

8    they think is material to their defense in

9    preparation.  And they have everything that we think

10   is material and everything that we think we'll use at

11   trial to prove that element of the case.

12           And these one-off cases are not within that

13   realm of possibly material documents, possibly

14   helpful to the defense.  So that's why we have not

15   produced information on these other SNM arrestees, or

16   suspected gang members.  And I don't think that Rule

17   16 comprehends that we have to now go on all this

18   information on unrelated cases that are just a

19   fishing expedition, and just going to be another wild

20   goose chase in this case.

21           THE COURT:  All right.

22           MS. SIRIGNANO:  Judge --

23           THE COURT:  Before I give you the last

24   word, let me have Mr. Lowry speak.  Then I'll give

25   you the last word, Ms. Sirignano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  Your Honor, very briefly.
 2              This isn't a fishing expedition.  The
 3    Government has already made the connection in their
 4    mind that these people are SNM members.  So it's not
 5    a fishing expedition.  They're the ones that have
 6    made an affirmative link between these people and
 7    this organization.  So they're material for us to
 8    dissect and understand the breadth, the extent, and
 9    the true structure of this organization, which will
10    be a material part of the defendants' defense on the
11    enterprise element.
12              THE COURT:  Thank you, Mr. Lowry.
13              All right.  Ms. Sirignano, I'll give you
14    the last word.
15              MS. SIRIGNANO:  Judge, I was just going to
16    repeat what Mr. Lowry said.  And the materiality
17    would be that they are alleged SNM Gang members.
18    Based on the Government's own charging documents, one
19    is allegedly the victim in this case, and the other
20    one is a material witness.
21              And these are just ones that I just picked
22    out and started looking at to file this motion.
23    Agent Acee's own words say that there are over 114 of
24    these, quote, "one-off" cases that are related.  So I
25    would just ask that the Court order these documents
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2351

```
 1   be provided.

 2           THE COURT:  All right.  Thank you, Ms.

 3   Sirignano.

 4           Well, I don't think there is any secret

 5   there is more SNM Gang members than are in this room,

 6   so I don't think we need to engage in a lot of

 7   discovery to establish that point.

 8           I haven't heard anything that I think

 9   constitutes a showing this is going to produce

10   material information, Brady information, Giglio

11   information.  There may be some particular files that

12   the defendants can make a greater showing that this

13   is going to lead to Rule 16 evidence.  But I haven't

14   heard it this afternoon.

15           So I'll deny it without prejudice.  If you

16   want to come back and ask the Government.  And then,

17   if the Government is not receptive, to the Court,

18   about some specific files, specific defendants and

19   why those might be particularly material to the

20   issues that are going to be tried in this case, you

21   have an opportunity to do that.

22           But at least as far as en masse 114

23   additional files, I haven't seen a showing that's

24   necessary for Rule 16, Giglio, or Brady.

25           All right.  What is the next issue you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2352

1   don't think there is going to be any ability to

2   compromise on, that you would want to pursue, Ms.

3   Sirignano?

4            MS. SIRIGNANO:  Your Honor, I'm on page 8,

5   letter B.  And this is all under paragraph number 5,

6   regarding Eric Duran.  I'm requesting any and all

7   call records, texts, memos, 302s, field notes, or any

8   kind of recordings or debrief notes with Grace Duran

9   No. 1, Grace Duran No. 2, Felicia Cordova, and

10  Caroline Buena.  And these were all Mr. Duran's wives

11  or girlfriends or partners when he was incarcerated,

12  and he had a cellphone in the PNM in Santa Fe.

13           And I say Grace Duran 1 and 2 because they

14  have the same name; Grace Duran married to Eric

15  Duran, so that's why I labeled them like that.  And

16  so, as we heard today, there was text messages that

17  were deleted by Agent Acee with Grace Duran 2.  And

18  the Government is taking the position that they don't

19  need to provide this information.  And so I would

20  just like to request those documents.

21           And the second part of that paragraph is

22  regarding all financial payments.  And so --

23           THE COURT:  And I'm looking at paragraph D.

24           MS. SIRIGNANO:  Oh, B as in "boy," Judge; 5

25  B, as in boy.  Paragraph 5 deals specifically with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2353

1    Mr. Duran.

2              MR. BECK:  And, Your Honor, I think we

3    already talked about at least text messages today.

4    But I can say that these don't exist, so we can

5    probably make short shrift of this request.

6              THE COURT:  All right.  Anything else, with

7    that representation that nothing in 5B exists?

8              MS. SIRIGNANO:  Is the Government making

9    the statement that none of this exists for all of

10   these women:  Grace Duran 1, 2, Felicia Cordova,

11   Caroline Buena?

12             And I'd like to revisit the financial

13   payment issue for all of them except for Grace Duran,

14   because the Government has already said that Grace

15   Duran 2 was not paid; that the money went to

16   Mr. Duran.  And that request also encompasses any and

17   all documents that Mr. Duran signed regarding his

18   cooperation with the Government, with the Department

19   of Corrections, or any other law enforcement agency.

20             MR. BECK:  I think the first part of that

21   is yes.

22             I think the second part of that:  Documents

23   Eric Duran signed, I think that would be encompassed

24   in the Giglio stuff we already said we're going to

25   produce.  So if it exists, it will be produced.  If

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2354

```
 1    it's not produced, it doesn't exist.

 2              So, to the extent there is something there,

 3    we agree to produce that.

 4              THE COURT:  All right.  Anything further

 5    you need or can get on that one?

 6              MS. SIRIGNANO:  I still am waiting to hear

 7    what the Government's position is on the other women.

 8              MR. BECK:  That was the first part of it

 9    was, yes, that does not exist.

10              THE COURT:  Yes, that does not exist?

11              MR. BECK:  Yes.

12              THE COURT:  Is what you said?

13              MS. SIRIGNANO:  So just to clarify,

14    Judge -- I'm sorry, so the Government is stating that

15    all call records, texts, memorandums, 302s, field

16    notes, or any kind of audio or audio-visual

17    recordings, or debrief notes with these women do not

18    exist?  Is that what I'm understanding correctly?

19              MR. BECK:  Yes.

20              MS. SIRIGNANO:  I think we are done with

21    that one, Judge.

22              THE COURT:  All right.  What's your next

23    one, then, that you don't think there is going to be

24    any compromise on but you'll still pursue it?

25              MS. SIRIGNANO:  Page 8, paragraph E --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2355

1    excuse me, F -- "Any and all law enforcement

2    cooperating agreements regarding any individual

3    providing information to any law enforcement agency

4    that is related to these investigations."

5    Specifically, Eric Duran, Grace Duran 1 and 2, and

6    the list goes on and on, Judge.  I'd like to have the

7    whole cooperation agreement and the confidential

8    informants or the CHS files, the entire files.

9              MR. BECK:  To the extent that "these

10   investigations" means this case -- and I'm guessing

11   the RICO case, too -- I don't really know what that

12   means.

13             But as for the cooperation agreements and

14   all that stuff, again, I think that's comprehended in

15   the Giglio we said that we would produce, and we

16   don't object to that.

17             It seems like there is a lot of language in

18   here, and I'll probably object to something.  Yeah,

19   if it's just -- yeah, we don't have it as to some of

20   those.  I don't know who "others not specifically

21   mentioned" is, so I'm not sure we'll agree to produce

22   it with those folks.  But people who are written

23   there, for whom we do have that information, we'll

24   produce it.

25             MS. SIRIGNANO:  I'm not sure what that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   means, Judge.
 2           THE COURT:  Well, he's editing out the last
 3   five words, "and others not specifically mentioned."
 4   So taking that out, it sounds like he's willing to
 5   produce the documents you request to the extent they
 6   exist.  Is that a fair understanding, Mr. Beck?
 7           MR. BECK:  Yeah.  And also, as I read the
 8   breadth of this request, on the top of page 9, where
 9   it says, "Providing information to any law
10   enforcement agency," I mean, I think it's probably
11   implicit, but I'll make it explicit, that we're only
12   producing that for agencies for which their files are
13   in our possession, custody, and control.
14           And so I think we can harken back to
15   yesterday, in which, if there is a question about
16   agencies that are, I'm happy to answer a reply email
17   as to which I think are.
18           THE COURT:  With that -- those two edits of
19   your request, can you live, then, with the
20   representation and promise of production?
21           MS. SIRIGNANO:  Yes, Your Honor, with a
22   little tweak.  I do believe Rule 16 encompasses not
23   just in their custody and control, but upon an
24   exercise of due diligence that they can get within
25   their custody and control.  So I would anticipate at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2357

```
 1   least the local police agencies and agencies that
 2   have worked on this case.
 3            THE COURT:  Well, we talked about yesterday
 4   I was drawing the line with joint task force, is if
 5   the federal agents were part of the joint task force,
 6   I would expect that those documents would be
 7   produced.  But if there is some old joint task forces
 8   that were investigation the SNM, and those people --
 9   the local agencies no longer will produce those, or
10   can't produce those, then the federal government in
11   this case would not be required to produce it.
12            I think I'm still comfortable that line,
13   rather than just saying all local police departments.
14   Because I don't think that the federal government is
15   required to go to their files.  It may be necessary
16   for the most recent.
17            And Mr. Beck is going to provide a letter
18   saying what's in and what's out as far as what he's
19   taking possession, custody, and control.  If you want
20   to quibble with that down the road after you get it,
21   you can come back.  But at least it defines with
22   clarity what your request says; what you're going to
23   get.
24            Down the road, if you disagree with what
25   possession, custody, or control is, you can come back
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2358

```
 1    and argue about that.
 2              MS. SIRIGNANO:  Thank you, Judge.  I'll
 3    reserve the right to revisit that down the road.
 4              THE COURT:  All right.  With that, then, do
 5    those two edits and the representation and promise of
 6    production take care of F?
 7              MS. SIRIGNANO:  Yes, Judge.
 8              THE COURT:  All right.  What other issues
 9    do you think, even after discussions, are going to
10    survive, and you're not going to -- you're going to
11    want to continue to pursue them?
12              MS. SIRIGNANO:  Judge, I would like to
13    discuss the request regarding Mario Montoya.
14              THE COURT:  Is that 6A?
15              MS. SIRIGNANO:  I'm on page 10.  Yes,
16    starts on page 10.  I'm just looking briefly here.
17    What we might not agree on, 6 and 6A relates to what
18    we just talked about regarding the informant files
19    for Mario Montoya, and criminal history and
20    motivation to work with law enforcement.  So 6A, 6B,
21    "Any and all records of payments or in-kind
22    benefits."  And the records of his telephone calls
23    would be 6C.
24              THE COURT:  All right.  Your thoughts on
25    these, Mr. Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2359

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2360

```
 1              MR. BECK:  I'm not sure we have them from
 2   January 1st, in relation to C or E or D.  But we'll
 3   produce the recordings to the extent that we have
 4   them.  I think I already said yesterday that we're
 5   going to produce the benefits for these folks.  There
 6   are some instances -- and I think this may be one,
 7   but I can't say for sure -- there are some instances
 8   in which some of the benefits require us to go
 9   through certain procedures to disclose those
10   benefits.  And so we're going through those
11   procedures, but disclosure of those benefits may take
12   more time than the 17th.
13              THE COURT:  But they will be produced at
14   some point?
15              MR. BECK:  They will be produced.  It's
16   not -- so in this case -- I don't want to hide the
17   ball -- it's just something that we would have to go
18   through a procedure with the Court to provide
19   benefits for some of these folks.  So that may not be
20   done till November 17.  But, as I said, we're
21   agreeing to provide benefits, so I think it's
22   encompassed in these requests.
23              THE COURT:  So if I'm hearing what you're
24   saying on Mario Montoya, you'll give them what
25   they're requested if they exist?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                   MR. BECK:  Right.

 2                   THE COURT:  And then you've got to go

 3      through some procedure on the payments and benefits?

 4                   MR. BECK:  Yeah.  It wouldn't be payments;

 5      it would be benefits.

 6                   THE COURT:  Any problem with that

 7      representation and those -- and that agreement?

 8                   MS. SIRIGNANO:  No, Your Honor.

 9                   Regarding item D, "Any and all audio

10      recordings of cellular phone calls and text messages

11      from Mario Montoya's cellular phone from January 1,

12      2015 to the present," we heard earlier that this was

13      the cellphone was dropped and destroyed.  And so I'm

14      wondering if those even exist.

15                   THE COURT:  Do you know, Mr. Beck?

16                   MR. BECK:  Well, I'm guessing they don't

17      exist after it was dropped and destroyed.  Whether

18      they existed beforehand, as I said, we'll produce

19      what we have.  So that's as far as I can go.  I can't

20      say, standing here, whether they exist.  I don't

21      know.

22                   THE COURT:  But you'll produce them if they

23      exist?

24                   MR. BECK:  Right.

25                   THE COURT:  All right.  Can you live with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2362

1    that, Ms. Sirignano?

2            MS. SIRIGNANO:  Yes, Your Honor.

3            THE COURT:  All right.  What else do you

4    think you'll pursue, and the Government is not going

5    to give it to you, and you'll nonetheless, be back

6    here wanting it?

7            MS. SIRIGNANO:  We resolved the digital

8    evidence, Your Honor, during the break with the

9    Government.

10           I believe the majority of the Giglio was

11   resolved also.

12           THE COURT:  Educate me.  What is Henthorn?

13           MS. SIRIGNANO:  It's like a Giglio request.

14           THE COURT:  Is that a circuit case or

15   Supreme Court case?  What is that?

16           MS. SIRIGNANO:  I'll have to get back to

17   you on that, Judge.

18           MR. VILLA:  Judge, if I'm not mistaken, I

19   think it's officer personnel files, discipline

20   history, stuff like that.

21           MS. SIRIGNANO:  Yes.  Personnel files like

22   administrative, mostly for police officers, FBI

23   agents.

24           THE COURT:  Was it a Supreme Court case or

25   Tenth Circuit?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2362

```
1              MR. VILLA:  I believe it's Supreme Court,
2    but I could be wrong about that.
3              Like James, I always thought that was a
4    Supreme Court.  And it's Fifth Circuit.
5              MS. SIRIGNANO:  Judge, on page 19C, I've
6    asked for this -- I did ask for this in the drug
7    case.  I'm interested in seeing if the administrative
8    subpoenas, any of the judicial subpoenas, what was
9    subpoenaed, and just to make sure that -- especially
10   regarding the telephone providers and the wiretaps,
11   the correctional facilities, if they're going to be
12   used, this information is going to be used in the
13   Government's case-in-chief, I'd like to see a copy of
14   that.
15             Page 19, Judge, Item C.
16             THE COURT:  Any thoughts on that, Mr. Beck?
17             MR. BECK:  Well, I know that all the
18   consensual wires have already been disclosed.
19             MS. SIRIGNANO:  Yes.
20             MR. BECK:  So I think they have all that.
21             Whatever else is in here, I haven't thought
22   much about.
23             To answer your question, no, Judge, no real
24   thought on that.  I think, Your Honor, we could
25   produce those that aren't sealed if they exist.  So,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    yes, we can agree to that.  That's fine.  To the

2    extent they're not sealed.

3              THE COURT:  Okay.  Can you live with that

4    representation and promise?

5              MS. SIRIGNANO:  Yes.

6              THE COURT:  All right.  Ms. Sirignano.

7              MS. SIRIGNANO:  Your Honor, I'd like to

8    discuss agent notes, and that's back on page 7,

9    number 3 and 4.  And I'm requesting all law

10   enforcement agents' notes from all debriefs of all

11   defendants and CHSs in this case, including, but not

12   limited to all statements made by all defendants,

13   co-defendants, and testifying and nontestifying CHSs.

14             And then number 4 requests all law

15   enforcement agents' notes regarding the defendants'

16   statements of -- I believe you ordered in the drug

17   case, Mr. Garcia's drug case.

18             THE COURT:  Well, I think in 3, we probably

19   covered that in the past, and I think the Government

20   disagrees with my decision, but we've agreed that

21   those will be produced if they exist.  Correct, Mr.

22   Beck?

23             MR. BECK:  I don't think that's the case.

24   My recollection is that we said that agents have to

25   keep their notes and preserve their notes for Jencks

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2364

1  purposes.  And I think that's true.  I think their

2  notes and statements and debriefs are Jencks.

3          To the extent that there is Brady material,

4  we'll produce that.  And they've done a Brady and

5  Giglio review.  So I don't think Your Honor has

6  ordered us to produce those.

7          THE COURT:  No.  I think you've accurately

8  stated.

9          Now, on number 4, "all law enforcement

10  agents' notes," I'm not sure that would be Jencks

11  material.  That's just any -- if Mr. Acee was sitting

12  around making notes, I'm not sure that those need to

13  be produced.

14          MS. SIRIGNANO:  And --

15          MR. BECK:  It doesn't occur to me that how

16  those notes would be -- so I have a thought as to

17  those notes would not be Rule 16 material.  I think

18  they may be Brady-Giglio material, if there is some

19  inconsistency in those notes with what goes in the

20  302s.

21          And so we'll continue to ask our agents to

22  preserve their notes, as they've been doing, and to

23  continue to review those notes for Brady-Giglio

24  material, which they've been doing.

25          So I think that still falls under the same

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2365

1   category.

2           MS. SIRIGNANO:  And, Judge, more

3   specifically, "statements of defendants in those

4   notes," that was ordered produced by the Court in

5   Mr. Garcia's drug case.

6           THE COURT:  Well, I would think if there

7   are notes being taken during debriefs or statements

8   or those sort of things, yes.  I think if Mr. Acee

9   two weeks later is making notes, it's going to be

10  less likely that's going to be a verbatim or

11  something I would think that would fall in Jencks.  I

12  think that might be a little bit more difficult to

13  make that into a statement of the defendant.

14          I guess if Mr. Acee has excellent

15  recollection of -- close to word-for-word, like he

16  would with writing, it might be more of a statement.

17  But if it's not approaching something like a

18  statement of the defendant, then I'm not sure I would

19  require it.  That will probably take Mr. Beck looking

20  at them one by one to make that judgment with that

21  sort of test in mind.

22          All right.  With those rulings and

23  thoughts, can you live with those, Ms. Sirignano?

24          MS. SIRIGNANO:  I can.

25          THE COURT:  Does that work for you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2366

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253 2367

```
 1   Beck?

 2           MR. BECK:  Yes.

 3           THE COURT:  All right.  Mr. Lowry?

 4           MR. LOWRY:  Your Honor, if I understood the

 5   Court's ruling, you're not requiring notes from

 6   individual debriefs, or we are?

 7           THE COURT:  Well, I think, by and large,

 8   we're considering those Jencks statements, so that

 9   those will be statements of the defendants and

10   witnesses called at trial.

11           MR. LOWRY:  All right.  Thank you, Your

12   Honor.

13           MS. SIRIGNANO:  Judge -- and I think just

14   about everything else Mr. Beck and I can work out.

15   Thank you.

16           THE COURT:  Do you have anything on your --

17   we've been looking at 1270 -- I think I got that

18   marked as 1269 -- but I'm looking at 1270.

19           MS. SIRIGNANO:  1267, Judge?

20           THE COURT:  Well, that was going to be my

21   next question.  Is there anything that's in the 1267

22   that you don't think you're going to be able to work

23   out with Mr. Beck, and you're still going to want to

24   pursue it?

25           MS. SIRIGNANO:  Can I have a moment, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2367

1    Honor?

2            THE COURT:  You may.

3            MS. SIRIGNANO:  Judge, this discovery

4    request tracks the first 14 paragraphs of this

5    indictment, as well as the RICO indictment,

6    16-CR-1613.

7            So while it is long, it really encompasses

8    what the Government alleges in its indictment.  And

9    the Government, Judge -- just by way of background --

10   goes all the way back to 1980 and the prison riots.

11           So what I'm just asking for in this motion

12   is evidence, actual evidence, that supports each

13   statement in each sentence in the first 14 paragraphs

14   in the indictment.

15           So, for example, Document 949; that is the

16   second superseding indictment, Judge.  And it's

17   called the "Introductory allegations, the

18   racketeering enterprise, Syndicato de Nuevo Mexico

19   Gang."  And so what I asked for is just evidence

20   supporting.

21           THE COURT:  What page or paragraph are you

22   looking at?

23           MS. SIRIGNANO:  I'm starting on page 8,

24   which is where I started the request.

25           And I'm looking at the indictment right

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   now, Judge.
 2          And so general background of the SNM in the
 3   indictment it says that, "The Syndicate of New Mexico
 4   is a powerful and violent prison gang which
 5   controlled drug distributions and other illegal
 6   activities within the New Mexico penal system, and
 7   was also involved in street-level narcotics
 8   trafficking."  That's the beginning of paragraph 3 in
 9   the indictment.  "It was formed in the early 1980s at
10   the Penitentiary of New Mexico after the prison riot
11   at the penitentiary in February 1980."
12          And then they go on to say that, "During
13   the prison riot 12 correctional officers were taken
14   hostages, and several of them were seriously
15   assaulted and raped by inmates.  33 inmates were
16   killed during the riot, and more than 200 were
17   injured."
18          So what I did in this motion, Judge, was to
19   go through all of these introductory paragraphs, and
20   requested documents -- which the Government says that
21   they provided all that they have.  And if that's what
22   they want to go on, then the Court can just deny this
23   motion.  But I'm trying to tie my client into this
24   alleged prison gang, the SNM Gang, and get the
25   evidence of this gang being part of the prison riots
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2369

 1   in the early '80s.  That's just by way of example.

 2   We can start out there at paragraph 3.

 3         So that's how this motion goes, Judge.  And

 4   so I haven't seen anything like that in the discovery

 5   thus far.  So what I'd like to do is have the

 6   opportunity to put this in a chart for the Court, and

 7   narrow this down a little bit for the Court, and the

 8   documents, in a chart for the Court and the

 9   Government.  So it's a very large document, like you

10   said yesterday.  But I'd like to streamline it a

11   little bit and see what the Government and I can

12   agree on, and then come back and make a shorter

13   presentation on what we can't agree on, Judge.

14         THE COURT:  Well, let me give you a little

15   guidance.  You know, look at page 23, for example.

16   Let's just take L there, "All documents that reflect

17   or relate to behavior observed of SNM leaders

18   conveying orders to SNM Gang members and associates

19   inside and outside the prison system, including any

20   Founds, secret notes called kites, or huellas, coded

21   letters, message conveyed to alleged complicit

22   visitors."  I'm not likely to grant anything like

23   that.  That would be what I would call a contention

24   interrogatory or contention request in the civil

25   area.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2370

```
 1              MS. SIRIGNANO:  Yes, Judge.

 2              THE COURT:  And just going through the

 3   complaint and tracking it with contention

 4   interrogatories, I think that may have some utility

 5   in the civil area.  But I don't think it really

 6   relates to what we have to do with Rule 16 and Giglio

 7   and Brady.

 8              So as you go through, you're going to have

 9   to tighten any additional information you want.  It

10   seems to me that there may be a boatload of

11   information out there about the SNM Gang, just tons

12   of information.  But they don't have to produce any

13   and all of it.  They get to select what they're going

14   to introduce to show the SNM Gang, that it's an

15   enterprise, it's an organization, it's organic.  And

16   that's the information you're entitled to.

17              But I think that, just because they have

18   information on the SNM Gang, I don't think that is

19   going to probably get it.  So when you sit down with

20   Mr. Beck, think about really tightening it down to

21   what I'm likely to give.  And just take those into

22   consideration.

23              MS. SIRIGNANO:  I will, Judge.  Thank you.

24              THE COURT:  All right.  Before I leave here

25   tonight, I would like to have a batting order of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2371

```
 1    things that you would like for me to do.  We've

 2    discussed a lot of issues, a lot of motions.

 3          And so let me start with the Government.

 4    Do you have a batting order of issues that you want

 5    written up, looked at closer, opinions, orders on

 6    sooner rather than later?

 7          MS. ARMIJO:  Not as to the discovery

 8    motions, nothing else.  But we would like -- we filed

 9    a motion for termination of counsel for Mr. Herrera

10    in May.  We're getting close to the trial, so I think

11    that is obviously --

12          THE COURT:  So Mr. Davis' conflict issue?

13          MS. ARMIJO:  Yes.

14          THE COURT:  All right.

15          Any second, third, or you just want that

16    one?  And you'll call Ms. Wild if you want another

17    one?

18          MS. ARMIJO:  That's it, Your Honor.  Thank

19    you.

20          THE COURT:  How about the defendants?  Is

21    Mr. Davis at the top of the batting order for the

22    defendants, particularly Mr. Davis?

23          MR. DAVIS:  Well, we need to --

24          THE COURT:  Do you want it earlier or do

25    you want me to sit on it for a couple of months?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2372

```
 1              MR. DAVIS:  I'm sorry, I may be a little
 2    slow on this, Judge.  But the motion, I think we have
 3    the main interest in is the motion to suppress, where
 4    we're going to need our expert to testify, and I
 5    think there has been some communication with K'Aun,
 6    setting that on the 12th of December.
 7              THE COURT:  Okay.  But that's an upcoming
 8    motion?  Okay.  All right.
 9              MR. DAVIS:  But other than that, I don't
10    care about the batting order.
11              THE COURT:  I mean, are you in need of
12    getting this conflict issue cleaned up sooner rather
13    than later?
14              MR. DAVIS:  Well, yeah, that should
15    probably be first on your list, I would think.
16              THE COURT:  Okay.  Mr. Jewkes, did you have
17    a candidate?  Anybody else have a candidate?  The
18    next two or three motions, after I get Mr. Davis'
19    done?
20              All right.  Well, I appreciate your hard
21    work.  I will see you on the 20th, looks like, at
22    9:00.  That's about as early as we can get started.
23    Have a good weekend, next week.  See you the
24    following week.  Thanks for your hard work.
25    Everybody be safe.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    (The Court was adjourned.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2374

1                      C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on November 16, 2017.

15

16

17

18      _____
        Jennifer Bean, FAPR, RMR-RDR-CCR
19      Certified Realtime Reporter
        United States Court Reporter
20      NM CCR #94
        333 Lomas, Northwest
21      Albuquerque, New Mexico 87102
        Phone:   (505) 348-2283
22      Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8                    VOLUME 1

9         Transcript of Motions and James Hearing
     Proceedings before The Honorable James O. Browning,
10   United States District Judge, Las Cruces, Dona
     County, New Mexico, commencing on November 27, 2017.
11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
13
     For the Defendants: Mr. Brock Benjamin, Mr. Richard
14   Sindel; Ms. Cori Harbour-Valdez; Mr. Patrick Burke;
     Mr. Jim Castle; Mr. Robert Cooper; Mr. James Lahann;
15   Mr. Orlando Mondragon; Mr. John Granberg; Mr. Scott
     Davidson; Ms. Amy Jacks; Mr. Richard Jewkes; Mr. Marc
16   Lowry; Ms. Theresa Duncan; Ms. Amy Sirignano; Mr.
     Christopher Adams; Mr. Michael Davis; Ms. Carey
17   Bhalla; Mr. Ryan Villa; Mr. Donovan Roberts; Ms.
     Angela Arellanes; Mr. Samuel Winder
18

19   For the Defendants (Via telephone):  Ms. Justine
     Fox-Young; Ms. Amy Sirignano (a.m. only)
20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Good morning, everyone.

 2              I appreciate everyone making themselves

 3    available to me this morning.  How are y'all all

 4    doing?

 5              All right.  The Court will call United

 6    States of America versus Angel DeLeon, et al.,

 7    Criminal Matter No. 15-4268 JB.

 8              If counsel will enter their appearances for

 9    the Government.

10              MS. ARMIJO:  Good morning, Your Honor.

11    Maria Armijo, Randy Castellano, and Matthew Beck on

12    behalf of the United States.

13              THE COURT:  Ms. Armijo, Mr. Castellano, Mr.

14    Beck, good morning to you.

15              All right.  And let's go through -- for

16    the -- on the defendants, for Defendant Joe Lawrence

17    Gallegos.

18              MR. SINDEL:  Good morning, Your Honor.

19    Richard Sindel for Mr. Gallegos.

20              THE COURT:  Mr. Sindel, Mr. Gallegos, good

21    morning to you.

22              THE DEFENDANT:  Good morning, Your Honor.

23              MR. SINDEL:  Mr. Benjamin is in trial.  So

24    he may be here later.

25              THE COURT:  All right.  And for Defendant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2378

```
 1   Edward Troup.

 2              MS. HARBOUR-VALDEZ:  Good morning, Your

 3   Honor.  Cori Harbour-Valdez and Pat Burke on behalf

 4   of Edward Troup.

 5              THE COURT:  All right.  Ms. Harbour-Valdez,

 6   Mr. Burke, Mr. Troup, good morning to you.

 7              THE DEFENDANT:  Good morning, Your Honor.

 8              THE COURT:  And for Defendant Billy Garcia.

 9              MR. COOPER:  Good morning, Your Honor.  Bob

10   Cooper and Jim Castle on behalf of Billy Garcia.  He

11   is present today.

12              THE COURT:  All right.  Mr. Cooper, Mr.

13   Castle, Mr. Garcia, good morning to you.

14              And for Defendant Allen Patterson.

15              MR. LAHANN:  Good morning, Your Honor.

16   Jeff Lahann on behalf of Mr. Patterson.

17              THE COURT:  Mr. Lahann, good morning to

18   you.  Mr. Patterson, good morning to you.

19              THE DEFENDANT:  Good morning, Your Honor.

20              THE COURT:  And for Defendant Christopher

21   Chavez.

22              MR. GRANBERG:  Good morning, Your Honor.

23   John Granberg on behalf of Christopher Chavez.

24              THE COURT:  Mr. Granberg, Mr. Chavez, good

25   morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2378

 1              THE DEFENDANT:  Good morning.

 2              THE COURT:  And for Defendant Arturo

 3     Arnulfo Garcia?

 4              MR. DAVIDSON:  Your Honor, Scott Davidson

 5     here on behalf of Mr. Garcia.

 6              THE COURT:  All right.  Mr. Davidson,

 7     Mr. Garcia, good morning to you.

 8              THE DEFENDANT:  Good morning.

 9              THE COURT:  And for Defendant Daniel

10     Sanchez.

11              MS. JACKS:  Good morning, Your Honor.  Amy

12     Jacks and Richard Jewkes for Mr. Sanchez.

13              THE COURT:  All right.  Ms. Jacks,

14     Mr. Jewkes, Mr. Sanchez, good morning to you.

15              And for Defendant Anthony Ray Baca.

16              MS. DUNCAN:  Good morning, Your Honor.

17     Theresa Duncan and Marc Lowry on behalf of Mr. Baca,

18     who is present.

19              THE COURT:  Ms. Duncan, Mr. Lowry, Mr.

20     Baca, good morning to you.

21              THE DEFENDANT:  Good morning, Your Honor.

22              THE COURT:  And for Defendant Christopher

23     Garcia.

24              MR. ADAMS:  Good morning, Your Honor.

25     Chris Adams, here with Cindy Gilbert in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2379

```
 1   courtroom, and Amy Sirignano is joining us by phone.

 2   She was ill this morning.  We are here for Mr. Chris

 3   Garcia.

 4            THE COURT:  All right.  Mr. Adams, Mr.

 5   Gilbert, Ms. Sirignano, Mr. Garcia, good morning to

 6   you.

 7            MS. SIRIGNANO:  Good morning, Your Honor.

 8            THE COURT:  And for Defendant Carlos

 9   Herrera.

10            MR. DAVIS:  Good morning, Judge.  Michael

11   Davis and Carey Bhalla on behalf of Mr. Herrera.

12   Also appearing with us is our legal assistant, Sonia

13   Salazar.

14            THE COURT:  All right.  Mr. Davis, Ms.

15   Bhalla, Ms. Salazar, Mr. Herrera, good morning to

16   you.

17            And for Defendant Rudy Perez.

18            MR. VILLA:  Your, Honor, good morning.

19   Ryan Villa on behalf of Mr. Perez, who is present and

20   in custody.  And Ms. Fox-Young is joining us on the

21   phone.

22            THE COURT:  All right.  Mr. Villa.  Ms.

23   Fox-Young, are you there?

24            MS. FOX-YOUNG:  I am, Judge.  Good morning.

25            THE COURT:  Good morning.  And Mr. Perez,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2380

1    good morning to you.

2            THE DEFENDANT:  Good morning.

3            THE COURT:  And for Defendant Andrew

4    Gallegos.

5            MR. ROBERTS:  Good morning, Your Honor.

6    Donovan Roberts on behalf of Mr. Andrew Gallegos, who

7    is present.

8            THE COURT:  All right.  Mr. Roberts, Mr.

9    Gallegos, good morning to you.

10           THE DEFENDANT:  Good morning.

11           THE COURT:  And for Shauna Gutierrez.

12           MS. ARELLANES:  Good morning, Your Honor.

13    Angela Arellanes for Ms. Gutierrez, who appears in

14    person.

15           THE COURT:  All right.  Ms. Arellanes, Ms.

16    Gutierrez, good morning for you.

17           THE DEFENDANT:  Good morning.

18           THE COURT:  All right.  And Ms. Wild, are

19    you on the phone as well?

20           THE CLERK:  I am, Judge.  I think you may

21    have missed an entry for Brandy Rodriguez.

22           THE COURT:  All right.  Ms. Rodriguez.

23           MR. WINDER:  Good morning, Your Honor.

24    Samuel Winder on behalf of Jerry Walz on behalf of

25    Brandy Rodriguez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2381

```
 1              THE COURT:  All right.  Ms.  Rodriguez,
 2    good morning to you.  Mr. Winder, good morning to
 3    you.
 4              All right.  A couple of things -- I've got
 5    so much paper here that -- on the jury
 6    questionnaires, I wanted to send out about 2,000
 7    questionnaires, given my experience in high profile
 8    cases, large cases, where I think that there might be
 9    some difficulty in seating a jury.  I had to kind of
10    negotiate with Jury Services.  That shows you the
11    power of a federal judge.  But I negotiated.  They
12    wanted about 600, so we ended up with 1500.  So Jury
13    Services ultimately decided to send out 1500
14    questionnaires.  I think we can get a jury picked
15    with that.  It's a little lower than what I wanted,
16    but I think that's where we are.
17              Mr. Davis, I've been working on your
18    opinion.  I worked on it during the Thanksgiving
19    holidays.  I didn't get it done.   I'll get it in
20    front of me.  I brought a draft with me.  So the
21    draft is currently about 39 pages.  I'm going to have
22    to work on it some more.  But right now it's drafted
23    as a grant for the motion to disqualify.  I'm just
24    having a hard time seeing how I can say that this is
25    not a similarly related case.  So I think I indicated
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2382

```
 1   at the last hearing that you probably need to get
 2   your house in order.  But that's where I'm leaning.
 3   I apologize for not being able to get it out, but I
 4   just had a lot of stuff going on.  But I have been
 5   working on it.  I read your supplemental materials
 6   and things like that, but that's where I am on that.
 7           MR. DAVIS:  Judge, is there any possibility
 8   the Court would consider --
 9           THE COURT:  You've got a mic right there
10   beside you, Mr. Davis.
11           MR. DAVIS:  Judge, has the Court considered
12   the possibility of just disqualifying me from
13   handling Mr. Martinez, as opposed to removing me from
14   the entire case as an alternative to
15   disqualification?
16           THE COURT:  Yeah, I think that's part and
17   parcel of the motion and the discussion, so I'll deal
18   with that.  But I'm not sure I can really sort that
19   out and leave you in the case.  So I'll work on it.
20   I'll try to get this out to you.  I'll try to get it
21   out to you this week.  I was hoping I'd get it out
22   before, but did not.  But I'll try to get it out.
23           MR. DAVIS:  Judge, what is your Court's --
24   what's the Court's consideration of me at this point
25   staying in court?  Do you want me to stay?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2384

```
 1              THE COURT:  Go ahead and stay in court.  I
 2    haven't issued it, and -- I've been working on the
 3    thing.  It's got some issues.  I'm not completely
 4    done, but I wanted to give you a heads-up where I'm
 5    headed, so you can work to get your house in order.
 6    But I'm not ready to issue an opinion or order yet.
 7              MR. DAVIS:  Thank you, Judge.
 8              THE COURT:  All right.  Unless somebody has
 9    something else that we need to raise from a
10    preliminary matter, I think y'all have been working
11    with Ms. Wild to put some order together to the
12    hearings that we have today.  So unless there is
13    another reason to approach these, why don't we take
14    up Mr. Perez' motion for production of alleged
15    co-conspirator statements and for pretrial hearing on
16    their admissibility.
17              I guess I think -- and correct me if I'm
18    wrong -- sometimes in my mind -- and I hope y'all
19    bear with me a little bit -- I merge some of the
20    issues that we dealt with with Mr. Garcia since we
21    had so many motions that are similar to the ones
22    here, and so I'm not always quite certain what I have
23    said in regard to those motions in here.
24              But, in any case, if I haven't said it
25    here, I guess I'm having a hard time figuring out
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2384

```
 1    what the basis is for me ordering the Government to
 2    put a list of co-conspirator statements together.  It
 3    does not exist, so it would have to be something that
 4    would have to be put together.  It would be in the
 5    nature of an interrogatory.  And so I'm not sure
 6    that -- except for my just ability to use my raw
 7    judicial power to require the Government to do it,
 8    I'm not sure there is really much justification and
 9    reasons for it.  So I'm not inclined to order them to
10    produce any sort of list of co-conspirator statements
11    that they have to prepare.
12            On the other hand, let me talk a little bit
13    about the James hearing and those things that we're
14    going to be taking up today.  The Tenth Circuit, as
15    everybody has noted, has a strong preference for a
16    pretrial determination of the admissibility of
17    co-conspirator statements.  I don't see any reason to
18    deviate from that strong preference.  We're still
19    two-plus months out from trial.  And I think we've
20    got time to do it, and I think we should do it.  And
21    I don't think we should be trying to have a trial
22    like this, and just relying upon the Government's
23    linking it up down the road is the way to go.  So I
24    think that we will have a James hearing, and the
25    Government will have to produce a live witness or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2385

```
 1    witnesses.  I don't think that a written proffer is

 2    enough.  The Government -- I mean, the Tenth Circuit

 3    has also indicated that those are not favored.  And

 4    so I would prefer to have live witnesses, live

 5    witness or witnesses.

 6              The Government has asked that they be able

 7    to put on a case agent that summarizes the

 8    co-conspirator statements.  It seems the Tenth

 9    Circuit has approved that.  I'm not telling the

10    Government how to try their case, and I'm not going

11    to tell them how to do the James hearing.  But you've

12    got to make your proof by a preponderance of the

13    evidence.  If you think you can establish it with one

14    agent, subject to cross-examination, bringing in the

15    statements, then the Tenth Circuit seems to have

16    approved that, and I will, too, but -- so it's not

17    the method that I'm approving.  You just have a

18    burden of proving it by a preponderance of the

19    evidence.  If you can do it with one witness or 20

20    witnesses, that's -- the Government always has to

21    make that assessment as to how they're going to prove

22    their case.  And I can't tell you in advance whether

23    one witness or more are going to be necessary.  So

24    you'll have to make that judgment.  But in certain

25    situations the Tenth Circuit has indicated that is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2386

 1   appropriate.

 2          So Mr. Villa, with that guidance -- and I

 3   think I've been fairly consistent on this throughout,

 4   although we might not have touched on it in some

 5   detail -- what do you need with your motion?

 6          MR. VILLA:  I think that probably satisfies

 7   it, Your Honor.  If this was six months earlier, I

 8   might have pressed you to try it, and make the

 9   Government identify statements so we can try to work

10   some of these issues out.  But I think we're past

11   that point now.  I think if the Court is going to

12   order a pretrial James hearing, I think we should go

13   ahead and get on with it as we're as close as we are

14   to trial.  So that's -- I think that was really the

15   goal of the motions, to get us to the James hearing,

16   and see if we couldn't work some of these issues out.

17   But we're prepared to proceed on the James motion.

18          THE COURT:  Okay.  Let me ask:  Since your

19   motion is first, but a lot of other motions teed up,

20   let me see from the defendants' side, anybody else

21   want to talk about procedure, how I'm inclined to

22   proceed on the James hearings, co-conspirator

23   statements?

24          MS. JACKS:  Your Honor, may I --

25          THE COURT:  Ms. Jacks, you may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2387

```
 1              MS. JACKS:  I just have a comment.  And
 2   that is that to the extent that the Government
 3   provides us with what statements it intends to
 4   introduce as co-conspirator statements, we could
 5   brief that for the Court prior to any hearing, and it
 6   might make the hearing shorter.  And I thought that
 7   was part of Mr. Villa's thought in filing his motion.
 8              THE COURT:  Well, I'm going to let the
 9   Government -- I'm not going to order it.  If they
10   want to do that to try to expedite things, that's
11   their business.  But I'm not going to order them to
12   prepare and produce a document that the law doesn't
13   require them to produce.
14              Mr. Burke?
15              MR. BURKE:  Your Honor, I endorse the
16   comments of Mr. Ryan Villa and Amy Jacks.  And your
17   suggestion makes good sense.  I did want to just
18   advise the Court, in Colorado -- where we are not --
19   it's routine to have one of these lists, and the
20   judges there have found that it streamlines things.
21   And I think almost all the judges do that there.  And
22   I attached one to one of the pleadings.  And I then
23   asked a law clerk -- third-year student at CU Law
24   School to check.  And as it turns out, New Mexico is
25   the only place that doesn't do that.  But the goal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2388

```
 1    was to have a pretrial hearing sufficiently in
 2    advance that it makes sense and streamlines the
 3    process.
 4             So I believe what the Court has adopted
 5    will work.  But I didn't want the Court to think that
 6    it was some sort of idle suggestion.  It's followed
 7    by a number of courts.
 8             THE COURT:  Yeah, I looked at it.  I mean,
 9    I can't disagree that it would make sense and be
10    helpful.  But I'm -- just seems to me it would be
11    kind of raw judicial power for me to start ordering
12    the Government to do it.  I just don't see any basis
13    for it other than just:  I want it.  And it doesn't
14    seem like I can really rightfully require it.
15             MR. BURKE:  I understand.
16             THE COURT:  All right.  Thank you, Mr.
17    Burke.
18             Anyone else?
19             All right.  Mr. Castellano, are you going
20    to handle this portion?
21             MR. CASTELLANO:  Yes, Your Honor.
22             THE COURT:  Mr. Castellano.
23             MR. CASTELLANO:  Your Honor, I hear where
24    you're coming from this morning, so I'm not going to
25    belabor the point too much.  I can tell you -- and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2389

 1   you probably know this from your memory -- in the

 2   Vigil case you did not hold a James hearing.  I will

 3   say it was slightly different.  The Government moved

 4   for the James statements to be admitted prior to a

 5   first trial, which Judge Parker tried.  And the case

 6   was reassigned to you.  You reviewed the record, and

 7   based on that, agreed not to hold a James hearing.

 8              THE COURT:  Judge Parker, though, held one,

 9   didn't he?

10              MR. CASTELLANO:  I don't recall if Judge

11   Parker did.  I think --

12              THE COURT:  I thought Judge Parker held

13   one, or in some ways satisfied James, and so it

14   wasn't necessary to redo it.  But is my memory off?

15              MR. CASTELLANO:  It might be.  And I may

16   have missed it in the case.  What I remember from

17   reading the case is that there were frequent

18   objections during trial on hearsay grounds.  So it

19   may be that there was --

20              THE COURT:  What happened is on the first

21   trial, Mr. Bowles and Mr. Bregman chose not to object

22   to any of the exhibits.  And on the retrial they

23   chose to object to them all.  So the second trial was

24   a whole lot different on objections, because I had to

25   make a lot of rulings that Judge Parker did not have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2390

1   to make.  I do remember that.  I don't know if that's

2   helpful or not.  But it was a different trial.  There

3   were 680 exhibits, and every one was objected to.

4         MR. CASTELLANO:  Ultimately, you concluded

5   that the United States -- you conditionally granted

6   the motion; it was the United States' motion --

7   subject to the United States proving that the

8   statements were made in the scope of the conspiracy

9   and in furtherance thereof.  So, ultimately, you did

10  not hold a hearing, and left it to the United States

11  to prove up the final basic element of James, which

12  is to prove it was in furtherance of conspiracy.

13        One thing I have done before, when we did

14  the Aryan Brotherhood cases, is we did prepare, I

15  think basically a summary.  We put on a summary

16  witness.  The defense stipulated that that would

17  basically be the agent's testimony because it was

18  clear that was going to be the case.  And then the

19  defense stipulated to the direct examination, and

20  then went straight to cross-examination to ask the

21  agent about the statements.  So that is one

22  possibility.

23        We will -- depending on when the hearing is

24  set, how much time we have, we will consider

25  potentially putting a list like that together, if it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2391

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2392

1    moves things along.  I don't expect that we're going

2    to have numerous witnesses, because it will become,

3    in essence, a pretrial trial.  So more than likely it

4    will be a summary witness.  And I understand the

5    Court's leanings, with the understanding that the

6    burden is on us.

7          Your Honor, I don't know if we want to get

8    a head start on this, or we can just make them

9    exhibits at the hearing itself, but we have about 14

10   plea agreements in this case which will establish at

11   least the first two requirements of James, which is

12   the existence of the conspiracy, as well as

13   membership in the conspiracy.  So I can proffer those

14   to the Court today, or I can just make them exhibits

15   at the hearing, or I can just give you the numbers.

16   But they're all on the docket.

17          THE COURT:  I agree with you.  Let's go

18   ahead and get those in, because I do need to have the

19   defendants start telling me where the battle is.  You

20   know, if they're not going to contest these two

21   elements, then where is the battle?  So let's go

22   ahead and mark those.  Shall we mark them

23   individually?  Do you want to mark them as one, as a

24   group?  How do you want to proceed on that, Mr.

25   Castellano?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2392

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2393

1        MR. CASTELLANO:  I will get some stickers

2   during the break and mark them individually, because

3   I think they could be taken in a group.  But if we're

4   going to talk about individual plea agreements from

5   time to time, it would be easier just to identify

6   them by exhibit number.

7        THE COURT:  And you said there were 14 of

8   them?

9        MR. CASTELLANO:  I believe it's 14.  I was

10  just counting as the Court was talking.  But it's in

11  the vicinity of 14.  But it's basically the plea

12  agreement of each defendant who has pled guilty in

13  this case, including admissions that a conspiracy

14  existed and admissions that other people remaining in

15  the case were members of the conspiracy.  So I think

16  we'll be a long way down the road for the first two,

17  which will allow us probably just to focus on the

18  statements themselves, once we get to the hearing.

19       THE COURT:  All right.  So for the purposes

20  of the James hearing, any objection to admitting

21  Government's Exhibits 1 through 14, which are the

22  plea agreements?  Not hearing any objections, the

23  Government --

24       MR. CASTLE:  Your Honor, I would object,

25  because I believe that this needs to be subject to an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2393

```
 1   evidentiary hearing.  A lot of these plea agreements
 2   basically are saying:  Yes, the SNM existed, and they
 3   committed some bad things during a long period of
 4   time.  And there is no analysis as to whether there
 5   is different sets or groups within the SNM, whether
 6   there is individual agreements that are made between
 7   members that are not in furtherance of the conspiracy
 8   that is alleged.  These plea agreements are very
 9   imprecise in the definition -- or in defining what
10   the conspiracy is.
11           And so these are documents that are drafted
12   by the Government, not by the witness.  These aren't
13   witness statements.  These are drafted by the
14   Government.  Obviously, one of the purposes is not
15   only to do a plea agreement, but to establish a James
16   proffer apparently.  And so I object to them because
17   they're not subject to any kind of evaluation here by
18   the Court as to whether they're to be trusted.
19           THE COURT:  Well, you're going to get your
20   evidentiary hearing.  So, I mean, all it is is some
21   documentary evidence, and I think it has some weight.
22   We've got 14 people signing off on the plea
23   agreement.  That's what they're going to testify to.
24           MR. CASTLE:  I guess, to the extent that
25   we're able --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20395

1           MR. ADAMS:  Judge, I'm told that people on

2     the phone can't hear Mr. Castle.  May I share my mic

3     with him?

4           THE COURT:  Yeah.  However we want to get

5     it to him.  Are y'all hearing me at the back okay?

6           MR. CASTLE:  Perhaps the people on the

7     phone are a little luckier than those in the

8     courtroom.

9           But as long as the defense has the

10    opportunity to call those witnesses and examine them,

11    I guess we could proceed in this fashion.  But if the

12    idea is the Government is going to make its proffer a

13    part, through plea agreements, and then protect these

14    individuals from being examined about these

15    statements, I would object.  So I think if the Court

16    is going to take them as exhibits with the idea that

17    the defense believes that it needs to examine these

18    witnesses on the statements that are in the plea

19    agreements, that that would probably be a sufficient

20    remedy to allow us to contest the information within

21    those plea agreements.

22          THE COURT:  Well, I'm not sure I've seen --

23    maybe you have -- I haven't seen where the defendants

24    have called witnesses at a James hearing.  It's

25    usually the Government's burden of proof, so it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2395

```
 1    their witnesses who are put on the stand and

 2    cross-examined.  As I just indicated, I'm not

 3    requiring them to call any particular witness or put

 4    on any -- you know, try their case or their hearing

 5    any particular way.  But I doubt it's going to

 6    include calling 14 witnesses.

 7              MR. CASTLE:  No, I understand they may not

 8    wish to do that.  But since it is a preliminary issue

 9    for the Court to decide by a preponderance of the

10    evidence, obviously, the defense is allowed to put on

11    evidence against it.

12              Normally, those courts that actually

13    conduct a James hearing within the context of a

14    trial, the witnesses who are being called by the

15    Government to establish the conspiracy are subject to

16    cross-examination by the defense.  And so I believe

17    the defense does have the right to not only

18    cross-examine the witnesses the Government chooses to

19    put on, but put on contrary evidence to convince this

20    Court that the conditions precedent necessary for

21    admission are not satisfied.

22              THE COURT:  Well, would it be better to go

23    back to what Mr. Castellano is saying, and do it at

24    trial?

25              MR. CASTLE:  No, I don't believe it would,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2396

```
 1   because there runs the risk that the rules of
 2   evidence cautions against, which is, to the extent
 3   possible, preventing the exposure to a jury of
 4   evidence that may end up being considered
 5   inadmissible by the Court.
 6           THE COURT:  Well, I'm not foreclosing you
 7   from presenting your own evidence and what you need
 8   to do at James.  I probably am not going to be too
 9   excited about the defendants calling 14 witnesses to
10   try to rebut the Government's presentation.  But I'm
11   not foreclosing it.  Whatever evidence you think you
12   need --
13           MR. CASTLE:  Your Honor, I understand.
14   That wasn't my point to do that.  Granted, I'd love
15   to call any witness that's going to be against my
16   client, and get a free run at them.  But that's not
17   what my goal is here.  It's that here we're having
18   exhibits being introduced that were drafted by the
19   Government, in their words.
20           And so this is a difficult situation.  This
21   isn't giving the Court a transcript of an interview
22   with a confidential informant who we can at least
23   assess what their own words are.  This is Mr.
24   Castellano and Ms. Armijo's words, or whoever drafted
25   this plea agreement.  They drafted it and gave it to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2397

```
 1    the man to sign.

 2            So under those particular circumstances, I

 3    think there is a need, perhaps in certain situations,

 4    to call those witnesses.

 5            THE COURT:  All right.  I understand your

 6    position.  I won't foreclose it.  But I'm probably

 7    tipping my hand that that's not the way we're going

 8    to really run a James hearing.

 9            All right.  Anyone else on the defendants'

10    side want to say anything on this issue?

11            All right.  Then I'll admit Government's

12    Exhibit's 1 through 14 -- if that's the correct

13    number -- for the purposes of the James hearing.

14            MR. CASTELLANO:  Your Honor, during the

15    break I will get exhibit stickers and put them on

16    there and make sure the record is clean in terms

17    of --

18            THE COURT:  Ms. Solis can hand them to you

19    right now.

20            What else, Mr. Castellano?

21            MR. CASTELLANO:  Nothing else, Your Honor.

22    Thank you.

23            THE COURT:  All right.  Anything else you

24    want to say, Mr. Villa?  Anything else on your

25    motion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. VILLA:  Your Honor, I don't think so.
 2   I guess I just wanted to clarify when the Court
 3   intends to have this hearing.
 4              THE COURT:  Well, let me ask Ms. Wild that.
 5   She's been continuing to work on this.  As I prepared
 6   for this hearing and, of course, it's always a little
 7   bit difficult to do things over holidays, but I
 8   wasn't quite certain if we were having the James
 9   hearing this week, from reading all the materials.
10   So I thought we might be here doing a James hearing
11   this morning with your motion.
12              Ms. Wild, what was your sort of
13   anticipation?  Did you think that it was going to be,
14   I hear these motions today, and then do a James
15   hearing?  Or did you think we were setting up a James
16   hearing today?  And if we weren't setting up a James
17   hearing today, when do you think that we're going to
18   set the James hearing?
19              THE CLERK:  My anticipation was the same as
20   yours.
21              THE COURT:  That we were going to have a
22   James hearing today?
23              THE CLERK:  Yes, sir.
24              THE COURT:  All right.
25              MR. VILLA:  That's kind of what I thought,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Your Honor.
2              THE COURT:  I guess that's what I was
3    thinking we were here for today with these motions
4    set up.  Mr. Castellano, are you ready to put on Mr.
5    Acee, or whoever you're going to have as your person?
6              MR. CASTELLANO:  No, Your Honor, not to lay
7    out all of the statements.  My understanding of the
8    hearing today was to decide whether or not we were
9    going to have a James hearing, and then possibly set
10   the parameters for the hearing.  And even some of the
11   defense motions indicated that they would request --
12   actually, some of the requests were that they get the
13   statements before the James hearing.  So I think even
14   the defense anticipated that we would have a hearing
15   at a later date, as did I.
16             THE COURT:  Well, let's do this:  We've got
17   some motions we've got to cover.  But why don't you
18   begin to prepare for a James hearing this week while
19   I'm down here.  So work with Mr. Acee or whoever
20   you're going to have present those.  And I'll try to
21   skip around and get through these other motions.  But
22   if I run out, we'll probably start the James hearing
23   at some point this week.  Okay?
24             MR. CASTELLANO:  Understood, Your Honor.
25             THE COURT:  Thank you, Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 2400

```
 1              MR. ADAMS:  Your Honor, may I?

 2              THE COURT:  You may, Mr. Adams.

 3              MR. ADAMS:  We also filed for a James

 4    hearing in 1303, and the Government's response was

 5    1379, and our reply was 1436.  I think we were on the

 6    schedule as well, and asked -- said we have the same

 7    position as Mr. Villa.

 8              THE COURT:  Yeah, I'm probably putting --

 9    the reason I started with those comments is I know

10    there are a lot of motions that raise this in various

11    forms.  Some of them want conspirators' statements,

12    some want a James hearing.  So I thought I'd just

13    start with that and get us on track.  But I

14    understand that there are a number of motions that

15    that applies to.

16              MR. ADAMS:  Thank you.

17              THE COURT:  All right.  Thank you, Mr.

18    Adams.

19              All right.  Let's then go to the United

20    States' amended notice of expert witness testimony.

21    And again, if I had Ms. Wild here and had been able

22    to talk with her a little bit more before the --

23    without the intervening holidays, I might be more

24    precise as to where I have made these comments; if I

25    made them in the case of Mr. Garcia when he was going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2401

```
 1   to trial on his drug case, or whether it's in this

 2   context.

 3           Let me exhort everybody on these experts.

 4   After reading everything -- and I have read

 5   everything, so I'm not sitting up here without having

 6   read materials.  I mean, everybody has got to do what

 7   they've got to do to defend their clients here.  I'm

 8   not trying to shortcut anything.  But it does seem to

 9   me that it behooves us to get to the core issues.

10           It seems to me that there are probably some

11   experts, regardless of what the defendants do or want

12   to do, are going to testify in this trial.  And then

13   there are others that there may be genuine issues

14   about either their testimony or the scope of their

15   testimony.  And I guess I'd like to get to the core

16   issues, and encourage the defendants to get to the

17   core issues as soon as possible; identify for me

18   where the battles are, and then maybe on some of the

19   others we can just move ahead.

20           I mean, when I look at Dr. Zumwalt, who is

21   the state coroner, I guess I'm having a hard time

22   seeing why he wouldn't be allowed to testify in this

23   trial.

24           And on the other hand, the gang experts,

25   I've already indicated that I'm probably going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2402

1    clip significantly that testimony on both the

2    Government and the defendants' side to conform to the

3    Second Circuit's opinion, which I think the Tenth

4    Circuit has adopted or indicated they approve of in

5    the Martinez -- Second Circuit's case in Martinez.

6          So there is areas like that.  But by and

7    large, it seems to me, it would be wise if we really

8    focus in on what needs to be decided, and try to cut

9    through some of the -- I won't say -- just cut

10   through some of the static that is here.

11         So the Government has sort of put out their

12   position.  Maybe I ought to hear from the defendants.

13         Mr. Adams, I think you've been taking the

14   lead on this.  With that sort of admonition, tell me

15   where we're going with the Government's experts.

16   What do you need?

17         MS. SIRIGNANO:  Your Honor, this is Amy

18   Sirignano.  I apologize, I'm ill this morning, but I

19   can take this one just briefly.  The main issue --

20   and I don't disagree with the Court regarding

21   Dr. Zumwalt.  But we haven't received -- and it might

22   be in this most recent batch of discovery which we

23   received right before the holidays that I haven't had

24   an opportunity to go through yet -- but we haven't

25   received three CVs from the Government.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2403

1    Dr. Zumwalt's is one of them.  So that was the issue

2    with him.

3           And frankly, Your Honor, it would be -- the

4    discussion in the motion that -- or the response that

5    we filed, Documents 1255, was that the Government is

6    not abiding by the requirements of Rule 16.

7           And I have this issue right now in the

8    Tenth Circuit Court of Appeals in a case before Judge

9    Herrera, United States v. Raymond Moya.  And so on

10   page 7 of Document 1255, I put forth what Rule 16

11   requires, which is the written summary of any

12   testimony of the expert, which must describe the

13   witness' opinion, the basis and reasons for the

14   opinions and the witness' qualifications, citing this

15   United States v. Sandoval case.  It's from March 1st

16   of 2017.

17          And so, Judge, the Government's amended

18   notice of expert witness testimony doesn't abide by

19   the Rule 16 requirements, and we don't have what we

20   need in terms of the basis and reasons, and the

21   qualifications with the missing CVs.  And so we're

22   just looking for more information.

23          And we expected to have a Daubert hearing

24   today.  I don't know if the Government has their

25   witnesses there.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 2404

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32405

```
 1                THE COURT:  Well, let's focus a second on
 2    Dr. Zumwalt.  Do you have his autopsy reports?  Has
 3    that been produced?
 4                MS. SIRIGNANO:  Your Honor, I'm going to
 5    defer to Ms. Harbour-Valdez.  Dr. Zumwalt's
 6    information pertains to her counts and not
 7    Mr. Garcia's counts.
 8                THE COURT:  My understanding, those have
 9    been produced, right?
10                MS. HARBOUR-VALDEZ:  They have, Your Honor.
11    In the discovery that was produced last week, we
12    received Dr. Zumwalt's CV, as well as Ms. Radecki's
13    CV.  And those were the two we were concerned about.
14                THE COURT:  I mean, my guess is that, with
15    Dr. Zumwalt, you've got his report.  He does lots of
16    autopsies.  He's probably not going to say anything
17    that's not in his report.  You've got his CV.  What
18    else do we need with Dr. Zumwalt?
19                MS. HARBOUR-VALDEZ:  We don't have any
20    other issues, Your Honor.
21                THE COURT:  Anybody else need anything on
22    Zumwalt?  Mr. Villa?
23                MR. VILLA:  I'll try to talk really loud,
24    Your Honor.  My only concern is -- with respect to
25    the Javier Molina murder, is that the notice just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2405

```
 1    said he's going to testify to what's in the autopsy
 2    report.  And you've seen those reports; they're long.
 3    So if we get into trial and he wants to say something
 4    else, things that I could imagine he might want to
 5    say about the Molina murder, I just want to be clear
 6    that he's sort of limited to what's in that autopsy
 7    report.  He can't go beyond it, because it's not in
 8    the Government's notice that he's going to say
 9    anything else.
10            THE COURT:  Well, I am going to do this,
11    I'm going to say his reports are adequate disclosure,
12    I will have to hold the Government to that; that if
13    it's not in his report, he can't go beyond that.
14            Who is handling this?  Mr. Beck, is this
15    your area?
16            MR. BECK:  Yes, Your Honor.
17            THE COURT:  All right.  Can you live with
18    that, that if I say, as far as Zumwalt, if he's going
19    to testify about anything else beyond his report, you
20    need to send the defendants a letter, or file
21    something with the Court that indicates:  Here's an
22    additional area he's going to testify about.  But
23    otherwise, I'll let the Government rest on his
24    reports and his CV.
25            MR. BECK:  That sounds fair, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2407

```
 1                THE COURT:  All right.  So that will be the
 2      rule on Zumwalt.  Anything else on Zumwalt?
 3                All right.  Let's go to Radecki.  I guess
 4      what I'm going to have to do on these, Mr. Beck, is
 5      I'm going to have to hold the Government to what's in
 6      the rule.  So I'm looking at your notice here.  Tell
 7      me where on page 2 it states her opinions.
 8                MR. BECK:  Her opinions are those revealed
 9      in her written reports disclosed to the defendants.
10                THE COURT:  Okay.  And so, again, using the
11      same sort of thing we did with Zumwalt, everything
12      she is going to say is in her reports.  And if you're
13      going to try to get anything else in, you'll send,
14      something to the defendants about that?
15                MR. BECK:  That's fine, Your Honor.
16                THE COURT:  Can everybody live with that on
17      Ms. Radecki?  Anything else we need on Ms. Radecki?
18                All right.  Let's go to Tokumaru,
19      Ms. Tokumaru.  I believe there is also -- she has
20      done a written report.  Is that also the case?
21                MR. BECK:  That's right, Your Honor.
22                THE COURT:  Same rules as for Zumwalt?
23                MR. BECK:  Yes, Your Honor.  I think that's
24      fair.
25                THE COURT:  Anybody have any different need
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2407

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2408

```
 1   on Ms. Tokumaru?  All right.  So --
 2            MS. SIRIGNANO:  Judge, this is Amy
 3   Sirignano.  I'm just wondering, are we foreclosing
 4   the opportunity to have a full Daubert hearing, going
 5   through the Government's notice at this point?
 6            THE COURT:  No, I'm not shutting down any
 7   Daubert hearings.  I'm just trying to clear up this
 8   issue.  There was a lot of complaints in the
 9   briefing, and I'm not saying it's in yours, but that
10   the Government was giving a one-sentence summary.
11   And what I'm doing is I'm making certain that,
12   basically with this motion, that Rule 16(a)(1)(G) is
13   being complied with so we eliminate that issue today.
14   And if I need to order further disclosures, I
15   disclose those.  But I'm not foreclosing any Daubert
16   issues with this motion.
17            MS. SIRIGNANO:  Thank you, Judge.
18            THE COURT:  All right.  So anything else on
19   Ms. Tokumaru?  Mr. Villa?
20            MR. VILLA:  Your Honor, just generally with
21   this procedure that we're talking about, the concern
22   I have is, if the Government does decide these
23   experts are going to say something else and they want
24   to supplement it, when that happens.  I mean, the
25   deadline has already passed.  So I would say that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2408

```
 1    they can't supplement it anymore.  But it seems like

 2    the door is a little bit open for them to do that.

 3            THE COURT:  Well, I take it with these

 4    people that have done reports, you don't anticipate,

 5    Mr. Beck, having any further disclosures from them?

 6    They're pretty much locked in with their reports; is

 7    that correct?

 8            MR. BECK:  That's correct, Your Honor.

 9            THE COURT:  All right.  I mean, I can't

10    ever just say "never."  I mean, trials are dynamic.

11    But I'm with the defendants' position that the time

12    has come, has already passed.  So the Government is

13    going to have to justify if something is -- they're

14    going to try to get these experts to say something

15    that's not in these reports, we've got some of these

16    people that are not quite locked in with reports, if

17    I understand the situation.  And we have to figure

18    out what to do with those in a moment.  But at least

19    these with reports the Government is not

20    anticipating, and I think the time has passed.  And

21    if they try to do it, then I'll just have to listen

22    to arguments and see what the situation is.

23            MR. CASTLE:  Your Honor, I have an

24    additional concern which actually applies to all the

25    experts.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.
 2              MR. CASTLE:  And I didn't want to remain
 3    silent and thereby waive these arguments.
 4              Many of the Government's experts in their
 5    reports are relying upon another expert or another
 6    investigator's statements.  So, for example, they
 7    might have an autopsy report, and at the end it
 8    indicates that there was narcotics found in the
 9    system or there weren't narcotics found in the
10    system.  That was analyzed by some other lab and some
11    other individual.
12              I raised some of these concerns in the
13    context of the brief that we filed concerning gang
14    experts.  The Government, as a rule, has not endorsed
15    those other experts that their own experts are
16    relying upon.  And I'll give an example that concerns
17    me.  The DNA expert that analyzed a blood sample
18    found at the murder scene in the 2001 murders
19    indicates that -- they analyzed it, and it was
20    consistent with the missing defendant, Mr. DeLeon, as
21    being a contributor to the mixture.  The only way
22    that expert got that information was from some other
23    source.  Someone said they did a blood-draw on
24    Mr. DeLeon back in 2001, and said this is his blood
25    sample.  I asserted in my briefing that that is a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2410

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36

 1   problem, a confrontation problem, under Melendez-Diaz

 2   and the Bullcoming cases.

 3          So what I'm trying to tell the Court is:

 4   By not commenting here, I don't want the Court to

 5   understand that we're not going to make objections on

 6   the constitutional level to various aspects of these

 7   experts' opinions.  Because, frankly, they're relying

 8   upon either hearsay or testimonial materials that the

 9   Government either hasn't endorsed or intends to bring

10   in at trial.

11          So, as an overlay, I just wanted to raise

12   that objection.  When we get to the gang expert

13   issue, I'll be a little more specific on it.  But I

14   didn't want my silence to be interpreted that I'm

15   not -- that we're waiving any other objections on a

16   constitutional or rule of evidence basis.

17          THE COURT:  No, I understand that.  I put

18   those arguments -- I know they're different than what

19   Ms. Sirignano was talking about -- but I put them in

20   the same category.  All we're trying to do is make

21   sure that Rule 16 objections are taken care of.  I

22   know the defendants may have some Daubert issues.

23   They may have individual challenges to some

24   particular testimony the experts are going to do.

25   None of that is being waived here by trying to make

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

 1   sure that we get the Rule 16 issues dealt with here

 2   at the very beginning.

 3          All right.  Anything else on Ms. Tokumaru?

 4          Everybody happy with where we are?  I

 5   probably shouldn't use it that way.  Nobody is happy.

 6          All right.  Let's go, then, to Ms. Shirley

 7   Garcia.  She also has a written report, Mr. Beck?

 8          MR. BECK:  Yes, Your Honor.

 9          THE COURT:  You provided the CV?

10          MR. BECK:  Yes, Your Honor.

11          THE COURT:  Anyone else need anything else

12   under Rule 16 from Ms. Garcia, with the understanding

13   that if she's going to testify about anything

14   further, it will need further disclosures by the

15   Government?

16          All right.  Then let's move to Jennifer

17   Otto.  She also has a written report.

18          MR. BECK:  Yes, Your Honor.

19          THE COURT:  Same rules of engagement.

20   Anybody else need anything under Rule 16 from Ms.

21   Otto?

22          All right.  Let's go to Mr. Paul --

23   Dr. Paul.  He has an autopsy report.

24          MR. BECK:  Yes, Your Honor.

25          THE COURT:  So, same as Dr. Zumwalt.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2412

```
 1    Anybody need anything further under Rule 16?  Same
 2    rules of engagement?
 3            All right.  Let's go to Mr. Streine -- am I
 4    staying his name correctly?  Streine?  Dr. Streine.
 5            MR. BECK:  That's as good of a guess as
 6    mine.
 7            THE COURT:  Mr. Streine.  Remind me on him.
 8    Did he -- he has written reports on his ballistics?
 9            MR. BECK:  Yes, Your Honor.
10            THE COURT:  Okay.
11            All right.  Same rules of engagement, Mr.
12    Streine?
13            MR. BECK:  Yes, Your Honor.
14            THE COURT:  All right.  Then Ms. Mikesica?
15    And she has a written report as well; correct?
16            MR. BECK:  Yes, Your Honor.
17            THE COURT:  All right.  Anything else
18    needed on her?
19            Tracy Zehringer?
20            MR. BECK:  She has a written report.
21            THE COURT:  She has a written report as
22    well?
23            MR. BECK:  Yes.
24            THE COURT:  All right.  Ms. Vigil.
25            MR. BECK:  Yes, Your Honor, she has a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2413

```
 1   written report.
 2           THE COURT:  She has a written report.
 3   Dr. -- I'm sorry, it's not a doctor, but Mr. Young.
 4           MR. BECK:  Yes, Your Honor, he has a
 5   written report.
 6           THE COURT:  He has a written report as
 7   well.  That's been disclosed.  Ms. Smith?
 8           MR. BECK:  Yes, Your Honor, she has a
 9   written report.
10           THE COURT:  Written report.
11           MS. SIRIGNANO:  Your Honor, this is Amy
12   Sirignano.  And I just don't have all of the DNA
13   reports that I requested, and so I don't have
14   everything that I need for Rule 16 regarding the
15   tests that she did regarding the DNA analyses.
16           THE COURT:  All right.  What I'm seeing in
17   your disclosure, Mr. Beck, is that she has produced
18   one report.  Are you anticipating any further reports
19   from her, or is it just one report she's going to
20   prepare?
21           MR. BECK:  I think my understanding is that
22   her written report is the final written report, and
23   that includes her opinions to which she'll testify.
24           THE COURT:  So if she's only got one
25   report, what else do you need, Ms. Sirignano?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2414

```
 1              MS. SIRIGNANO:  Your Honor, I think there
 2    might be two.  Because she worked on the examination
 3    regarding the homicide of AB.  And then she also
 4    performed unknown examination of the alleged firearm
 5    for the possible DNA match with my client.  And the
 6    expert notice says she will testify about the tests
 7    she performed on the firearm and the findings as to
 8    the firearms described in her report.
 9              Well, I don't know what -- exactly what
10    tests she performed, how she did them, you know.  And
11    this goes back to the argument I made last time we
12    were before this Court.  And so, in order for my DNA
13    expert to be able to challenge her final report, I
14    need Rule 16 discovery that backs up her report.
15              MR. BECK:  Your Honor, I think we hashed
16    this out last week when we talked about going through
17    that four-step process, in which if the defendants
18    need more information for some of these DNA tests or
19    forensic examinations, that they ask, and then they
20    disclose the underlying data pursuant to that DAG
21    memo on forensic examinations.
22              That wasn't last week -- it feels like last
23    week -- that was three weeks ago, two weeks ago.  So
24    I think we're --
25              THE COURT:  Let me ask this:  After
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2415

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 41

```
 1    listening to Ms. Sirignano, do you think there is one
 2    report still, or --
 3              MR. BECK:  I think there may be two.  I
 4    think we ran into this issue what was now three weeks
 5    ago.  She did perform two different tests on two
 6    different firearms, and they were disclosed in, I
 7    think, the same report, some of the same testing.  So
 8    whether we consider it one report or two, I think Ms.
 9    Sirignano is correct, that there are two different
10    firearms she examined.
11              THE COURT:  But you think they're all in
12    one report?
13              MR. BECK:  I'm not --
14              MS. SIRIGNANO:  I don't think they are,
15    your Honor.  I think there are two reports.
16              MR. BECK:  So there may be two reports.
17              THE COURT:  Okay.
18              MR. BECK:  So it sounds like there is two
19    reports.
20              THE COURT:  But you think she has both of
21    them?
22              MR. BECK:  I think so.
23              THE COURT:  And do you disagree with that,
24    Ms. Sirignano?
25              MS. SIRIGNANO:  I definitely have her final
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 42

1    report regarding my client, and it's just limited to

2    my client.  So that's why I'm saying there are two

3    reports, because it doesn't mention the homicide of

4    AB in our report.

5             My concern, I think we came up with an

6    agreement the last hearing that the Government would

7    produce the additional DNA documents, and that we

8    would -- I would come back and request for more once

9    we got the initial production out.  But I need the

10   underlying data regarding the tests that she

11   performed on this firearm, and the underlying data

12   regarding her findings as to the DNA on the firearms

13   and the holster, which I don't believe I've received

14   yet.

15            THE COURT:  All right.  But the report

16   states the opinions; correct, Mr. Beck?

17            MR. BECK:  Yes, Your Honor.

18            THE COURT:  I mean, all the opinions are

19   set forth there.  What does she say about the basis

20   of her opinions, the reasons for her opinions?  What

21   does she say in the report?

22            MR. BECK:  I can't say without the report

23   in front of me.  I'd have to get back to the Court on

24   that.

25            THE COURT:  Are you willing, able to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  produce this backup that Ms. Sirignano is looking

2  at -- looking for -- for the opinions?

3          MR. BECK:  I think so.  I assume -- I mean,

4  I can't say for sure whether the FBI would have it.

5  I assume that they do.  I think, as I said I think a

6  couple of weeks ago, we talked about, if the

7  defendants had a need or a request for the underlying

8  data, the DAG memo report, that we disclose that to

9  them.  And we're happy to abide by that.

10         THE COURT:  Have you sent that letter over,

11  Ms. Sirignano?

12         MS. SIRIGNANO:  No, Your Honor.  I'm

13  working on it right now.

14         My concern is just timing, when we're going

15  to get these materials.

16         THE COURT:  Well, get your letter over.  It

17  sounds like we worked out a procedure three weeks

18  ago, and it's triggered by your letter.  So get it

19  over.  And once you get it over there, if you don't

20  get the satisfaction you want, then you can reraise

21  it with the Court.  But it sounds to me like we're

22  pretty close to the Government satisfying its Rule 16

23  obligations.  Because you know what the opinions are;

24  you know her qualifications, and some basis and

25  reasons for her opinions.  And the Government is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2418

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2419

```
 1    willing to give you more.
 2              MS. SIRIGNANO:  Very well, Your Honor.
 3    I'll get it today to the Government.
 4              THE COURT:  All right.  So anything else on
 5    Ms. Smith?
 6              Let's go to Dr. Kastenbaum.  He has -- or
 7    she has an autopsy report.  Anything further on Dr.
 8    Kastenbaum?
 9              All right.  Let's go to Cindy Wood.  And
10    she has a written report as well.
11              MR. BECK:  Yes, Your Honor.
12              THE COURT:  Anyone else need anything
13    further on Ms. Wood?
14              All right.  Then Roger Cain; he has a
15    written report as well.
16              MR. BECK:  I don't know that he has a
17    written report.
18              THE COURT:  You say in your disclosure that
19    he has one.  But --
20              MR. BECK:  Yes, you're right.  Sorry.
21              THE COURT:  All right.
22              MR. BECK:  He does have a written report.
23              THE COURT:  All right.  Anything else on
24    Mr. Cain?
25              All right.  Then the final one is Theodore
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2419

1    Chavez.

2              MR. BECK:  And he has written a report.

3              THE COURT:  And he has a written report.

4    Anything further on Mr. Chavez?

5              MS. SIRIGNANO:  Your Honor, the same

6    question that we raised with Tiffany Smith.  I don't

7    have -- I've got this report, but I don't know what

8    tests he performed on the firearm, all the backup,

9    the underlying data that he did to the firearm.  The

10   firearm was modified.  You know, what his expert

11   opinion is based on.  And so I need that additional

12   information to back up the tests he performed on this

13   firearm.

14             THE COURT:  Are you willing to produce

15   that, Mr. Beck?

16             MR. BECK:  Yes, Your Honor.

17             THE COURT:  All right.  So that will be

18   produced.  And that will satisfy the reasons and

19   basis requirement of Rule 16.

20             So with the understanding the Government is

21   going to produce some additional material on

22   Ms. Smith and Mr. Chavez, for the basis and reasons,

23   the reports will serve then otherwise as the

24   parameters of these individuals' opinions, basis and

25   reasons.  And if the Government is going to call or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2420

1    solicit any opinion beyond what's in the reports,

2    they will need to do a further disclosure on that.

3           So with that, I will grant in part and deny

4    in part any sort of request associated with the

5    United States' amended notice of expert witnesses as

6    it relates to the Rule 16 issues, and I will not,

7    with this motion, dispose of or address any other

8    expert issues.

9           All right.  Anything else we need to take

10   up on the Rule 16 issue?

11          Let me get a little organized here so I can

12   get my materials back to Albuquerque.

13          MS. SIRIGNANO:  Your Honor, if I could just

14   request a date to have these materials disclosed,

15   assuming I get this letter over to the Government

16   today.

17          THE COURT:  Mr. Beck, when would those

18   disclosures -- what would you propose as a --

19          MR. BECK:  Well, we'll get working on it

20   once we have her letter.  I would say we'd need a

21   week from the date we receive the letter at least.  I

22   think we need more, but I think a week is fair.

23          THE COURT:  All right.  Can you live with

24   that, Ms. Sirignano, that it will be one week after

25   the Government receives your letter?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2421

1          MS. SIRIGNANO:  Yes, Your Honor.

2          THE COURT:  All right.  So let's turn,

3   then, to Mr. Troup, Mr. Garcia's motion for

4   production of alleged co-conspirator statements and

5   for pretrial hearing on their admissibility.  This

6   seemed to me to be about the same issues that we had

7   with Mr. Villa's motion.

8          Anything else we need to address on that,

9   Mr. Burke?

10          MR. BURKE:  No.  May I speak from here,

11   Your Honor?

12          THE COURT:  As long as everybody can hear.

13          MR. BURKE:  Your Honor, I have no

14   additional comments.  You have addressed our motion

15   with your previous rulings.

16          THE COURT:  All right.  So it looks like

17   we're moving along.  So I'm putting the Government on

18   notice that we're probably going to have a James

19   hearing this week while I'm down here.

20          All right.  Anything else on Mr. Troup,

21   Mr. Garcia's motion?

22          All right.  Let's go to the United States'

23   motion, notice and motion in limine to admit gang

24   expert witness and testimony.  Again, this is seeming

25   like deja vu, but is it because it was in this case,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2422

1    or was it in Mr. Garcia's case?

2            MR. BECK:  Neither.  It was in the PNM

3    case, United States v. Mauricio Varela, et al.  We

4    were barreling towards Mr. Rodriguez.

5            THE COURT:  All right.  Well, let me

6    restate what I said.  And then, Mr. Beck, you were

7    going to relook at the Government's position.  So let

8    me sort of restate what I said sort of at the

9    beginning of the hearing.

10           It seems to me that with gang experts, and

11   people have identified them on both sides, so this

12   rule will cut the same way for both sides, although I

13   think the reality is it's the Government that wants

14   to put on a gang expert, and the defendants are

15   putting one on -- or more than one -- in rebuttal.

16   It seems to me that a gang expert can come in and

17   testify to how gangs operate in a generic sense; that

18   they can talk about some terms.

19           I think we all ought to look hard -- I

20   mean, our juries are fairly sophisticated.  They know

21   a lot about organized crime and gangs, and those sort

22   of things, so they don't need a lot of education on

23   those.  But I'm not precluding gang experts entirely,

24   because the Tenth Circuit hasn't precluded gang

25   experts entirely.  But it does seem to me it clips

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2423

```
 1    their wings in the sense that they cannot come in,

 2    and because they worked at the prison, and they got

 3    very familiar with the SNM Gang, come in and testify

 4    about the SNM gang; that they can't talk and testify

 5    specifically about that.

 6            And so I'm anticipating that most of the

 7    Government's case here about the SNM Gang, its

 8    structure, its lingo, its tattoos, its mode of

 9    operation, those things are going to come through

10    cooperating witnesses and other people.

11            It does seem to me -- and people are

12    welcome to argue on any of these issues, but

13    particularly this one -- the Government's expert

14    witnesses, since they're fact witnesses in part can

15    come in and testify how the Corrections Department

16    classified these people.  I don't think they ought to

17    be saying:  In my opinion so and so is a gang member,

18    but they can say that this is what we did at the

19    prison, we classified and put these people in as SNM

20    Gang members, and that's the reason they were in this

21    cell, in this unit and this prison.  Sort of implied

22    in that is their opinion.  But I don't think they

23    ought to be offering opinion testimony.  They can

24    offer fact testimony as to what they did, what they

25    saw, what they observed.  But the minute they shift
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2424

1    over to opinion testimony; that these people in their

2    opinion, that they're SNM Gang members, that they're

3    going to need to have some firsthand knowledge.

4           So a concern here is that most of these

5    experts, how they've accumulated their experience has

6    been through things that have been told to them.  If

7    they can testify to what they've seen or heard

8    themselves, then they're fact witnesses.  But to just

9    bring them in as opinion witnesses, and then have

10   them be a conduit for a lot of things that were just

11   told to them, I think the case law precludes that,

12   and should preclude that.  And so those would be the

13   lines that I would draw.

14          I guess after I sort of gave that ruling on

15   the PNM case, you were going to take a harder look at

16   the Second Circuit's case, Tenth Circuit cases.  Can

17   you live with what I'm saying, Mr. Beck?  Or do you

18   want to --

19          MR. BECK:  Well, I can, Your Honor, to a

20   certain extent.  I think Your Honor is right.

21          I went back and looked at United States

22   against Garcia, and that's 793 F.3d 1194.  It's a

23   case out of the Tenth Circuit, in 2015.  And it cites

24   heavily from the Second Circuit's decision in Mejia.

25   And, generally, I think the outlines the Court gave

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2425

1    is correct.  I think last time, in PNM, what was

2    maybe a little bit too restrictive was saying that

3    the experts can't testify to the SNM Gang.

4           I think that, if we look at the Garcia

5    opinion -- and I'm looking at page 1213 of the

6    Federal Reporter 3rd -- it says that, "Expert

7    testimony about a gang's history, territory, colors,

8    hand signs, graffiti use, naming practice, tattoos,

9    structure, membership rules, and similar sociological

10   evidence can assist the jury in understanding and

11   evaluating the evidence considering the specific

12   crimes charged.  But there is no sociological

13   expertise in testifying to gang members' specific

14   travels, specific uses of gangs funds, or commission

15   of specific crimes."

16          So I think what the Tenth Circuit is saying

17   there is that it's okay to talk in generalities about

18   a gang.  It's not okay to talk about specific

19   instances of gang conduct.

20          And I think that falls in line with what

21   the Court is distinguishing here, in just parroting

22   hearsay testimony.  When the officer -- when the

23   experts, as corrections officers, testify to certain

24   events that they didn't perceive, that they only

25   heard secondhand, certainly that's inadmissible

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 52

```
 1   hearsay testimony.

 2           When they're talking about gangs in

 3   general, New Mexico Corrections Department gangs, and

 4   even the SNM that's, under the Tenth Circuit's

 5   classification, admissible expert opinion.  And the

 6   reason for that is that their experience, through

 7   what they've seen, and through different seminars and

 8   classes they take on gang culture, they become

 9   experts in identifying gang symbols, including the

10   SNM symbols, Los Nortenos, et cetera.

11           So when we use experts, they're able to

12   filter through inadmissible evidence, come up with

13   their own opinions based on their knowledge,

14   expertise, and then give their opinions.  So I think

15   it's permissible to have these experts testify to

16   specific tattoos associated with the SNM.  And I

17   think this goes along with how they classify certain

18   inmates as SNM members, and one of their indicators

19   is SNM tattoos.

20           So I think, if the Court looks closer at

21   the Garcia opinion's outlines and what is permissible

22   and what isn't permissible, I think the Court will

23   correctly conclude that certain testimony about the

24   SNM's operations is okay, as long as they don't get

25   into specific crimes or instances of conduct or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2427

```
 1   operations of the gang.
 2            THE COURT:  Other than tattoos, what can
 3   you think of that you would want these experts to
 4   testify that you think I'm being too restrictive on?
 5            MR. BECK:  There is certain slang terms I
 6   can think of, the ways in which members identify and
 7   talk with other members of the SNM; code words that
 8   they use.  It may be -- I don't know whether it's
 9   unique to just the SNM, but I know it is a way that
10   they associate, folks with the SNM, the way that the
11   SNM operates.
12            THE COURT:  Would you want the expert just
13   to testify that a lot of gangs use slang words to
14   communicate, or are you wanting your expert to
15   specifically talk about how SNM Gang members
16   communicate?  See, I can live with your expert --
17            MR. BECK:  Right.
18            THE COURT:  I'm not -- this is my
19   preliminary ruling -- I'll certainly hear from the
20   defendants -- I think I can live with your expert
21   coming in and saying:  One of the ways that we
22   identify who is in what gang, for placement,
23   classification, those sort of things, is tattoos.
24   And I think I could also live with the fact that your
25   expert is going to come in and say:  One of the ways
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2428

1    that gangs communicate is through slang.  I think

2    those are some things that maybe not all jurors are

3    going to know.  I think some might, some might not.

4    So I think it's an area that an expert could assist.

5         I guess I would expect, though, somebody

6    else is going to tell us what are the SNM tattoos,

7    and what are the SNM slang?  Can you live with that?

8         MR. BECK:  I think that's too restrictive.

9    Because, again, looking at the language in Garcia,

10   expert testimony about a gang's history, territories,

11   colors, hand signs, graffiti use, naming practice,

12   tattoos.  A gang's tattoos, a gang's naming practice.

13   And so what we're talking about is the way particular

14   gangs operate.

15        And if we're talking about the way they

16   identify gang members, I don't expect they're going

17   to testify that if someone has a tattoo, then they're

18   classified as an SNM member.  I think it's a specific

19   tattoo.  I expect that it will be SNM tattooed on

20   their body, with the Zia symbol, among other tattoos

21   that they use to identify SNM members.

22        But, again, I don't know that they'll get

23   into that level of detail.  What I'm saying is that

24   there may be certain language.  I think the carnal as

25   an example, I think that's a way that SNM members

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 55

1   refer to other SNM members.  I don't know if that's

2   exclusive to the SNM, or if other prison gangs or

3   gangs also use that.  But I expect that they will

4   testify about that and give their opinion that that

5   would indicate that someone is an SNM member, as

6   opposed to being an associate or another member.

7        I think that based on Garcia that's

8   appropriate.  I think if they came in and said that,

9   In 2007, Mr. Baca sent a letter to another SNM member

10  that said, Carnal -- and that's what we used to

11  identify him and classify him as an SNM member --

12  that may be inappropriate, that may be hearsay

13  testimony they cannot come in.  I mean, I guess we're

14  not offering it for the truth of the matter asserted

15  in that case, but rather, why they're classified as a

16  gang member.

17        But I think that's where Garcia talks about

18  specific instances of gang conduct, is that they

19  would be referring to hearsay testimony that they

20  didn't perceive; that they didn't use that knowledge

21  and expertise to come up with that opinion.

22        THE COURT:  All right.  Other than tattoos

23  and slang words, what else do you think I'm drawing

24  the line too tightly for your experts?

25        MR. BECK:  I think they can talk about




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2430

```
 1    recruitment methods that gangs and the SNM use.  I
 2    think they can talk about communication methods that
 3    the SNM uses, the gangs use.  I think that would be
 4    like hand signs in Garcia.  I think they can talk
 5    about the types of crimes that SNM members engage in.
 6    I think they can talk about the membership rules.
 7    And I think they can talk about the structure and how
 8    they validate other SNM members.  I think history and
 9    territory in Garcia comprehends rival gangs to the
10    SNM, both within and without New Mexico Corrections
11    Department.  Then -- I think I said this, but I'm not
12    sure -- where Garcia says "expert testimony about a
13    gang's history is helpful," they could testify about
14    the SNM's history.
15              THE COURT:  Well, it sounds like to me
16    you're pretty much strongly disagreeing with my
17    proposed ruling.
18              Mr. Hammond, why don't you grab my glasses.
19    This is pretty small print for me to look at.
20              All right.  Anything else you want to say
21    about my proposed rulings?
22              MR. BECK:  I think that's it, Your Honor.
23              THE COURT:  All right.  Thank you, Mr.
24    Beck.
25              Mr. Castle, I think Mr. Garcia was the one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2431

 1   that took the lead on this.  Let me first ask, the

 2   line I was drawing, how did you feel about that line?

 3           MR. CASTLE:  To be completely frank, I'm

 4   not quite sure where the line is, because I hear the

 5   Government, and they kind of construe it different.

 6           THE COURT:  Well, that's their line.

 7           MR. CASTLE:  Right.

 8           THE COURT:  I'm talking about the line I

 9   drew, which is that the gang experts can talk about

10   gangs in general.  I mean, they can certainly talk

11   about:  Tattoos is often a way that gangs identify

12   themselves.  They did talk about slang words,

13   communication.  They can talk about crimes in

14   general, without specifically, you know, talking

15   about the SNM Gang.

16           MR. GRANBERG:  Your Honor, I apologize for

17   interrupting.  I was wondering if the Court would

18   permit Mr. Chavez to use the restroom, please.

19           THE COURT:  Tell him to wait about 15

20   minutes.  Then we'll take a break.  All right.

21           MR. CASTLE:  Generically, about gangs, I

22   could understand why there might be need for a jury

23   to hear about why gangs generically use slang terms

24   and tattoos.  I'm not sure you need to do it through

25   an expert.  Because the concept of experts is where

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2432

```
 1    they can't -- a jury can't draw those conclusions
 2    from actual lay testimony.  I imagine that the
 3    Government has a number of inmates who are going to
 4    be able to come before the Court and tell the jury
 5    that the SNM Gang uses tattoos.  And we identify
 6    ourselves by our tattoos.  And we use slang terms to
 7    mean the following.  I'm not sure why you need an
 8    expert at all.  Because this is not something that's
 9    so complicated the jury is not going to understand,
10    you know, one of these informer witnesses saying:
11    This is what we do.
12            This is not an area of expertise.  I
13    understand the Tenth Circuit has talked about it, but
14    I think more in the context of more drug cases, such
15    as this Court dealt with in the Rodriguez decision,
16    where perhaps certain words you're overhearing on an
17    audiotape between members.  There is a need to do it
18    there, because -- let's say that this was a drug --
19            THE COURT:  Hold on just a second, Mr.
20    Castle.  Where -- give me the language you were
21    referring to --
22            MR. BECK:  The paragraph that starts on
23    page 1212 and goes through page 1213.
24            THE COURT:  I don't have the full opinion,
25    so -- what page is it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  The language that I was
 2    referring to starts -- it's the first full sentence
 3    on page 1213.  "Expert testimony about a gang's
 4    history, territory, colors," then continuing
 5    throughout that paragraph.  I read you that sentence
 6    and the next sentence, omitting the citation.
 7              THE COURT:  Are you using Lexis rather than
 8    Westlaw?
 9              MR. BECK:  I'm using Westlaw.
10              THE COURT:  Okay.  I'm having a hard time
11    matching your pages up.  I've got page 717, so I
12    don't have any --
13              MR. BECK:  Page 717 is not included in this
14    Garcia opinion.
15              THE COURT:  Okay.  All right.  Go ahead,
16    Mr. Castle.
17              MR. CASTLE:  Yes, Your Honor.
18              I'll actually jump start right where the
19    Government just left off.  In that exact page they
20    indicate that, "There is no sociological expertise in
21    testifying to gang members' specific travels,
22    specific uses of gang funds, or commission of
23    specific crimes.  When the experts' testimony on such
24    matters is not based on personal knowledge, but on
25    testimonial hearsay, the testimony violates not only
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the rules of evidence but also the confrontation

2    clause."

3          But going back to the original question

4    from the Court is:  Could I live with the Court's

5    order?  You know, I don't believe -- we're probably

6    in disagreement with that, if it's generic.  But when

7    you get to the specifics of the SNM Gang, I believe

8    that's a problem.

9          So if that's where the Court is drawing the

10   line, you're going to talk about gangs generically,

11   whether it be a street gang, a prison gang, things

12   like that, I don't have any heartburn over that.  But

13   when you get to the specifics, I believe that is

14   absolutely going to be based upon the testimonial

15   statements that they've obtained from other gang

16   members or other officers over a period of time.

17          THE COURT:  Well, what do you do with this

18   language that Mr. Beck is relying on, that indicates

19   that the Tenth Circuit in Garcia said "a gang," so it

20   seemed to allow some expert testimony by an expert

21   witness about a gang?

22          MR. CASTLE:  Well, it I guess depends on

23   what the source of that information is.  Because

24   right after that particular sentence, they go on to

25   talk about, if the basis of your knowledge as an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2435

1    expert is testimonial statements of others, then it's

2    not admissible.  So you can't take the sentence in

3    isolation.  That's what they're doing.  They're

4    leaving out the analysis below, which is the

5    confrontation analysis.

6            And I would invite the Court possibly to

7    proceed in the method it did in the Rodriguez case,

8    which for the record, the citation is 120 F.Supp. 3d

9    1216.  In that case -- which coincidentally were with

10   these prosecutors and with Agent Acee -- the Court

11   said, Let's put the expert on the stand, find out the

12   specific opinions, and then find out what the source

13   of their knowledge is, so that we can determine

14   whether it's in violation of various rules of

15   evidence.  In that case there was no objections on

16   the confrontation clause.  I don't believe there were

17   really objections under various other rules that I've

18   raised.  But there were a lot of them.  And the Court

19   restricted significantly the areas of expertise.

20           THE COURT:  And whose opinion is Rodriguez?

21           MR. CASTLE:  That's yours, Your Honor.  And

22   the Court in that case stated -- the Court then held

23   an evidentiary hearing to examine Acee; the dual

24   purpose of calling Acee established to analyze his

25   expertise pursuant to Daubert, and to allow

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    Rodriguez, the defendant, to fully cross-examine Acee

2    on his testimony, thus alleviating any deficiencies

3    in the Rule 16 notice.  So it was combined issue

4    there.

5            THE COURT:  Was Rodriguez the case out of

6    El Paso, where they came -- okay.  Well, was Mr. Acee

7    testifying as an expert in that case?

8            MR. CASTLE:  Yes, he was.  And it was out

9    of El Paso.  And it was concerning a cartel out of

10   Mexico, and how they operated.

11           THE COURT:  But was he testifying as an

12   expert?

13           MR. CASTLE:  Yes, he was.

14           MS. ARMIJO:  Our expert, Your Honor.

15           MR. CASTLE:  So that's what I think we need

16   to do.  Because, otherwise, this is kind of

17   nonspecific.

18           For example, the Court indicated that it

19   was inclined to allow the expert to testify about

20   corrections classifications.  And I believe that the

21   Court was saying individual SNM Gang members, the

22   defendants.

23           THE COURT:  Well, here's what I was saying

24   on that:  It seemed to me that these corrections

25   officers, these three experts, do have some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

DNM 2437

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 63

1    possible -- they do have some -- in fact, it seems to

2    me that that's probably their greatest value is that

3    they are fact witnesses.

4         I guess I have trouble -- I guess I have

5    some concern about them testifying that in their

6    opinion Mr. Garcia is an SNM Gang member.  But if

7    they testify that the Corrections Department

8    classified Mr. Garcia as an SNM Gang member, and

9    that's the reason they had him in this facility, it

10   seemed to me that was okay.  I mean, implicit in that

11   is they made a determination.  But that's something

12   they did, and they acted on it.  That seems to me to

13   be different.

14        MR. CASTLE:  Well, with all due respect, I

15   disagree.  And I'll explain why.  If one of these --

16   I don't want to call them experts -- these three

17   witnesses; if they're testifying as fact witnesses,

18   they're not an expert.  They're testifying, and they

19   say, I talked to Billy Garcia; Mr. Garcia told me he

20   was a member of the SNM Gang, then that's

21   permissible.

22        If what they're doing is reading from a

23   document that -- where someone else has classified

24   Mr. Garcia as an SNM member, frankly --

25        THE COURT:  Did you say it's impermissible

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2438

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64

```
 1    or permissible?

 2              MR. CASTLE:  That would be permissible.

 3              THE COURT:  Okay.

 4              MR. CASTLE:  If they're testifying that

 5    they looked at a classification document and it says

 6    Mr. Garcia is an SNM member, my position is that's

 7    hearsay, but also --

 8              THE COURT:  I'm agreeing with you.

 9              MR. CASTLE:  Okay.

10              THE COURT:  On those two points, you and I

11    are in agreement.  But it seems to me, if PNM, for

12    example, if it classified him as an SNM Gang member,

13    that's a fact.  You can explore the basis for it, or

14    whatever, but that's a fact, they classify him as a

15    gang member.  And they may have put him into either

16    segregation or a particular unit or a particular

17    prison because of that classification.  Those are

18    facts.  It may be right or wrong.  They can't -- but

19    these men -- these three experts can't come in and

20    say:  In my opinion, Mr. Garcia is a gang member.

21    They can't do that.  But it's a fact that they

22    classified him as an SNM Gang member, and that may

23    have affected his classification and where he was

24    housed in segregation.  Those are facts.

25              MR. CASTLE:  Well, my argument is that if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2439

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 65440

 1    it's being offered for the truth of the matter, if

 2    it's being offered, not to show why he's in a

 3    particular cell or block, but it's being offered to

 4    show that he's an SNM member, they need to call the

 5    witness that --

 6             THE COURT:  Well, it is being offered for

 7    that purpose because it is some evidence that the

 8    world views these people as SNM Gang members.  It's

 9    not the definitive one.  It's just some evidence.

10             MR. CASTLE:  Right.  And I think they need

11    to call the person who has actual percipient

12    knowledge that Mr. Garcia is an SNM member; not based

13    upon some document that they've reviewed, that

14    someone else compiled.  And we have no idea how they

15    compiled it; whether it was for the purposes of law

16    enforcement, which likely is the purpose, that would

17    make it within the core area of testimonial

18    statements that Crawford and its progeny say is

19    impermissible to enter in trial.

20             Now, I think they're going to be able to do

21    this independently through legitimate means.  They're

22    going to call somebody who is going to say:  I'm a

23    member of the SNM Gang, and I know Billy is, because

24    we talked about it together and he's a member.  And

25    they're going to be able to do it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2440

```
 1                But to have a witness from the Department
 2      of Corrections come in and read, essentially from
 3      another document or classification document, I
 4      believe is in violation of the confrontation clause.
 5                I would indicate -- one of the things that
 6      I think is a little different about this case than
 7      Garcia and the Rodriguez case that this Court
 8      presided over is that we have a very unique
 9      situation, which I haven't seen addressed.  And that
10      is the Government's experts, three experts, work for
11      one of the victims.  They're employed by the victim.
12      And one of the things that I think the Court can take
13      into account on whether it permits these three
14      individuals to testify as experts, as opposed to
15      percipient witnesses is that fact.  Is this really
16      the proper role of an expert, is to have a victim,
17      essentially, be able to employ experts that are
18      presented before the Court?
19                The other areas that I believe that the
20      Government had talked about, at least today, and also
21      addressed in their motion, they wanted specific
22      evidence about how the SNM Gang operates.  I believe
23      that that would be based upon testimonial hearsay.
24      The particular code words that the SNM used; the only
25      way that these three individuals know that is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2441

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 67

```
 1   somebody told them.  Unless they're a member, a
 2   former member of the SNM.  The only way they'd know
 3   it is if they interviewed SNM members.  That's a
 4   testimonial statement they're relying on.
 5   Communication reference is the same.  The types of
 6   crimes that SNM members commit; there is a particular
 7   danger in that.  And I know the Court is probably
 8   with me on that.
 9            So if the Court is ruling that way, but
10   that actually goes to mental state of -- there is a
11   dual mental state in VICAR prosecutions.  One is the
12   mental state of the underlying offense.  But there is
13   also a second mental state, which is that they have
14   to say that that crime was committed for the purpose
15   of maintaining their position, et cetera, in the SNM
16   Gang.  That's a second mental state.  And I believe
17   Rule 704 prohibits expert testimony on that
18   particular area.  So if they're bringing up these
19   crimes that are being committed for the purpose of
20   maintaining their position in the SNM, they're really
21   commenting on a defendant's mental state, which is
22   prohibited under 704.
23            So, you know, what I -- I could go through
24   the rest of these areas.  But if the Court is not
25   going to allow them to put in evidence of it, then I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2442

1  don't need to continue.  But I do think there is a

2  considerable concern that, frankly, all the areas of

3  expert testimony that's being offered is all based

4  upon testimonial out-of-court statements of inmates

5  that have been interviewed over the years by these

6  officers.

7          I see someone standing.

8          THE COURT:  Well, let me do this:  We'll

9  take a break.  Let me put the proposal on the table,

10  because -- here is -- looking at the statement that

11  the court -- the Tenth Circuit made in Garcia, Judge

12  Hartz, I don't have any disagreement that expert

13  testimony about a gang's history, territory, could be

14  helpful to the jury.  But I think that only -- I

15  don't disagree with that.  I mean, that's the kind of

16  stuff that I think an expert could help on.  But

17  that's a totally different question as to whether the

18  expert can testify to that.

19          And I think Mr. Castle is correct -- and

20  this is what's prompted me to draw the line where it

21  is -- he's saying that there is no sociological

22  expertise in testifying about specific things.  And

23  he says:  When the experts' testimony on such

24  matters -- now, the question is does that just relate

25  to the prior sentence, or does it relate to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2443

```
 1    sentence going back, is not based on personal
 2    knowledge but on testimonial hearsay, the testimony
 3    violates not only the rules of evidence but also the
 4    confrontation clause.
 5              It doesn't seem to me to make sense to say
 6    one category has to comply with those, but these
 7    others, they're helpful, but they don't have to
 8    comply with the confrontation clause or the rules of
 9    hearsay.  I don't think that's what Judge Hartz is
10    saying.  And so I'm not -- I'm inclined not to adopt
11    that reading of his ruling.  And what you've really
12    got to go back to is Judge Hartz -- you can correct
13    me if I'm wrong -- was really relying on the Second
14    Circuit's opinion in Mejia.  So I'm drawing the line
15    where the Second Circuit draws it in Mejia.  And I
16    think that's consistent with what Judge Hartz is
17    saying.
18              And so here's what I will do:  We'll come
19    back and argue this -- if anybody else wants to speak
20    on this -- the experts are not going to be able to
21    really talk about the SNM case -- gang specifically.
22    They can talk generally about gangs.  The fact that
23    SNM comes out of their mouth as they talk about other
24    gangs I don't think is important, but they can't
25    specifically talk about the SNM Gang and offer
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2444

2445

```
 1    testimony on that.  They can talk about a gang.

 2           If, on the other hand, the Government wants

 3    to push that and have them particularly, say, the

 4    tattoos, they really want the experts to testify

 5    about tattoos rather than something else, then I'm

 6    going to have to go back to the procedure I used in

 7    Rodriguez.  You'll have to identify those, and then

 8    we'll have to have a hearing where those three

 9    experts come in, and then I listen to what the basis

10    of their opinion is, and then make balls and strikes

11    calls on an individual basis, and we'll script it

12    out.

13           So I think that's going to have to be the

14    sort of dividing line, and that will have to be the

15    procedure we're going to use on those three experts

16    if they want to get into some areas that I know the

17    Government wants them to get into.  You'll have to

18    make a judgment as to whether talking to them, you

19    think you can satisfy -- they satisfy hearsay and the

20    confrontation clause issues.

21           All right.  We'll be in recess for about 15

22    minutes.

23           (The Court stood in recess.)

24           THE COURT:  All right.  Mr. Benjamin, are

25    you here and ready to enter an appearance?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2445

```
 1              MR. BENJAMIN:  Your Honor, Brock Benjamin
 2    on behalf of Mr. Joe Gallegos.
 3              THE COURT:  All right.  Mr. Benjamin, good
 4    morning to you.
 5              All right.  Well, I've been looking at the
 6    break at United States v. Pablo from the Tenth
 7    Circuit; then looking at Judge Tymkovich's opinion on
 8    the Sandoval case, I think.  I thought I had it here.
 9    It's an unpublished opinion.  Is that Sandoval;
10    Tymkovich, is that Sandoval?  I've been looking at
11    Garcia and looking at Mejia.  I guess I'm fairly
12    comfortable with where I'm drawing the line.
13              So let me go to the defendants.  Mr.
14    Castle, are defendants comfortable with where I'm
15    drawing the line?
16              MR. CASTLE:  I believe so.  What I'm not
17    comfortable necessarily with is what the Government
18    is going to be offering as percipient witness or fact
19    witness testimony in this regard.  I think it's -- I
20    tried to resolve this prior -- during the break --
21    and apparently what the Government wishes to do is
22    put their experts on, and have them indicate what it
23    is they're going to testify about, some of which will
24    be percipient fact witness testimony, some of which
25    will be expert testimony.  I think it's good that we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2446

1    figured that out right off the bat, and find out

2    whether it's admissible or not.  If any of these

3    witnesses are allowed to testify as both an expert

4    and as a percipient witness, I believe that that's

5    going to have to be delineated for the jury as well.

6           But the problem is, their notification --

7    their actual motion, I think it was 1299 -- it's

8    really hard to understand whether the basis of their

9    individual's testimony is something they perceived

10   personally, or whether it's -- it was all couched as

11   expert testimony, but it only says one opinion -- so

12   I am very comfortable where the Court is drawing its

13   line.  But with regards to specific areas that

14   they're going to be getting into, I think we're going

15   to have to just analyze it as it's presented at the

16   hearing.

17          I noticed that the Court in Rodriguez at

18   the hearing told the prosecutors to put their expert

19   up, and let's have the defense cross-examine.

20   Because of that -- what I read in Rodriguez, I asked

21   the Government to have their experts here; gave them

22   Touhy letters, and told them the areas in which I was

23   going to cross-examine.  I don't believe they brought

24   them.  But I think we could certainly get them up

25   here tomorrow.  And I think we could go on that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2447

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73

2448

```
 1    process, and we could have a definitive ruling.
 2             THE COURT:  All right.  Thank you, Mr.
 3    Castle.
 4             MR. CASTLE:  Thank you.
 5             THE COURT:  Any other defendants want to
 6    speak on this issue?  Everybody pretty comfortable
 7    with where I'm drawing the line?  Mr. Villa?
 8             MR. VILLA:  Judge, I'm comfortable.
 9             I think a couple of things that come up, I
10    think with the Court's ruling, one of the main
11    objections that we had on behalf of Mr. Perez was the
12    experts testifying that SNM is an enterprise.  It
13    sounds like the Court would not permit that.
14             But if we're going back to the generic
15    testimony, if you will, about gangs or that sort of
16    thing, I think we would want the Court to make a
17    ruling that they can't testify that gangs are an
18    enterprise or gangs are engaged in racketeering
19    activity.  I mean, if they testify about the facts
20    they've observed, I think that's different.  But
21    getting to that ultimate issue, I think, is important
22    for the Court to address, even if it's in generic
23    fashion.
24             The other two pieces which I think maybe
25    the Court is going to get to is, of course,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2448

1  challenges to these witness' qualifications, whether

2  they can even testify about gangs in the generic

3  fashion.  And then I think -- you know, there is

4  three of them, so are they covering the same ground?

5  Are they going to be offering different testimony?

6  Is it cumulative?  So those are the issues that I

7  think perhaps the Court is getting there, but I

8  wanted to address.

9          THE COURT:  Well, it would seem to me --

10  and I haven't heard Mr. Beck, and I haven't read

11  anything where they're going to testify that this is

12  an enterprise or this is racketeering activity,

13  whether they would offer opinions that the gangs are

14  enterprises.  It seems to me those are legal

15  conclusions that would be left for the jury to

16  determine after I give them jury instructions to tell

17  them how to determine those.

18          So I'll hear from Mr. Beck in a moment.

19  But I would think that the experts would not be

20  testifying about whether gangs in general, or SNM in

21  particular, are an enterprise, and whether they're

22  engaged in racketeering activity, again, generally or

23  specifically.  I wouldn't think that would be

24  appropriate for the expert.  If the expert is going

25  to testify that gangs commit crimes to advance their

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2449

```
1    purposes, I would think that would be the general

2    testimony that a gang expert could provide.

3            What else did you say?  What other areas

4    did you --

5            MR. VILLA:  So the other challenges that we

6    had raised in our brief were the qualifications of

7    these particular experts.

8            THE COURT:  I guess I don't think that's a

9    Daubert issue.  I think that's a qualification issue.

10   I don't know how and when you raise it.  But I didn't

11   see anything glaring here that would cause me to not

12   think that these people were qualified.  But, you

13   know, I'll let you argue that.  But nothing jumped

14   out at me saying these people weren't qualified to be

15   general gang experts.  You've got people that are

16   former gang members, prison officials.

17           I'm looking and comparing the ones that the

18   defendants brought in, it seems to me that they're

19   all kind of the same genre, and it's fairly broad as

20   far as gang experts.

21           What was other area?

22           MR. VILLA:  I think the cumulative nature

23   of their testimony.  There is three of them.  The

24   notice says they're going to testify to basically the

25   same thing, the way I read it.  And so I'm not sure
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    what the purpose of the three of them are.
 2              I think the qualification issue may answer
 3    some of that.  You know, one of the guys appears to
 4    have a lot more experience as a higher rank.  A few
 5    of these folks are, you know, a little bit lower
 6    ranking.  I mean, if I get hired at DOC tomorrow, and
 7    in two years I'm a sergeant in STIU, does that
 8    qualify me as a gang expert for this case?  And I
 9    think that's some of the folks we might be dealing
10    with.
11              THE COURT:  Okay.  All right.  Thank you,
12    Mr. Villa.
13              Anyone else on where I'm drawing the line?
14              MS. JACKS:  If I may, Your Honor.
15              THE COURT:  Ms. Jacks.
16              MS. JACKS:  Our document is 1345, and it
17    was our objection to the Government's Rule 16 notice.
18    And I think the Court was asking just a few minutes
19    ago:  Where is it that we asked for the
20    qualifications, the specific opinions, and the basis
21    for those opinions.  And this is with Rule 16.
22              So I think, even if the Government is going
23    to be permitted to call, perhaps, one or more of
24    these witnesses as a more generalized generic gang
25    expert, I still think we're entitled to know what the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    witness' qualifications are and what their specific

2    opinions are and the bases of those opinions.  So --

3             THE COURT:  Well, you have the resumes of

4    all three; correct?

5             MS. JACKS:  We actually don't.  I think all

6    we have is, in the text of the Government's notice

7    about the gang experts, they recited some of what I

8    think they believe their qualifications were.  But

9    it's nothing to the degree of a CV.  And we don't

10   have specific -- at least at this point -- the

11   generic opinions that the Government would be

12   proposing to offer.  And we don't have any specific

13   information about the bases of those opinions.

14            THE COURT:  Well, if the Government calls

15   these witnesses -- we do the Rodriguez procedure --

16   that's going to satisfy the Rule 16 issues; correct?

17            MS. JACKS:  You mean do it outside the

18   presence of the jury prior to the testimony?

19            THE COURT:  Yes.

20            MS. JACKS:  It does in part.  I think the

21   part that I don't think it satisfies is I think we're

22   entitled to -- the opportunity to prepare and to

23   assemble materials to counter these witnesses'

24   opinions and specific bases for those.  And that's

25   not really something that we can do on the fly.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   I think that's why we had that expert disclosure date

 2   so far in advance of the trial date.

 3           I mean, there is thousands of pages.  There

 4   is a vast array of information that we might want to

 5   access to prepare to cross-examine those witnesses.

 6           THE COURT:  Well, let's see how it goes.

 7   If you -- after we have them testify, if there is

 8   still some problem with the basis and reasons or

 9   qualifications, we can take it up at that point.  But

10   I think at the present time you're about to get a lot

11   of basis and reasons.  And we'll have to sort through

12   those and see if it's still inadequate.

13           All right.  Anyone else on where I'm

14   drawing the line on the defendants' side?

15           All right.  Mr. Beck, your thoughts on

16   anything else here where I'm drawing the line?

17           MR. BECK:  No.  I mean, I think I've made

18   my position clear.  And I understand the Court's

19   position.

20           We have not received Touhy letters for any

21   of our witnesses.  And they have the CVs for the

22   three --

23           THE COURT:  They got CVs for the three?

24   Because they were complaining about -- I can't

25   remember which it was, but they were complaining that

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                         1-800-669-9492
                                                              e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2453

```
 1    they hadn't received them for some of these gang --
 2            MR. BECK:  I think it was very recently.  I
 3    think it was the last production.
 4            THE COURT:  Okay.
 5            MR. BECK:  We don't intend to elicit
 6    testimony that the SNM is a racketeering enterprise.
 7            THE COURT:  Okay.
 8            MR. BECK:  And I think -- I can't remember,
 9    there was a fourth.
10            THE COURT:  The cumulative.
11            MR. BECK:  Thank you.  The cumulative.
12    That was the fourth one.  We don't intend to put all
13    three of these witnesses on in each trial.  There are
14    a lot of trials coming up.  And since all three of
15    them are qualified, based on their experience and
16    training, we list them as experts, but we don't
17    intend to elicit cumulative expert testimony.
18            THE COURT:  Okay.  To satisfy the basis and
19    reasons for the opinion, so that I can do my job of
20    making sure that they're not just parroting hearsay
21    or confrontation clause testimonial --
22            MR. BECK:  I think you just made your job
23    on that a lot easier.  I mean, with the breadth of
24    the opinions that they're limited to, they're going
25    to be able to testify based on their experience and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 82 of 273

```
 1    knowledge.
 2              THE COURT:  Are you going to try to -- for
 3    example, are you going to try to have them testify
 4    about tattoos, slang words, communication methods,
 5    recruitment methods, hand signals, membership rules,
 6    crimes that they commit, structure; those items?
 7              MR. BECK:  Well, I mean, it seems that the
 8    Court has already staked out its ground on that, that
 9    we're going to ask them:  Do prison gangs use hand
10    signals or communication tools?  Sure.
11              THE COURT:  Well -- and I thought you
12    were -- correct me if I'm wrong -- maybe we have an
13    agreement here, I thought you were saying you still
14    wanted to try to get these experts to testify on
15    these areas, and you were ready to go through the
16    procedure we used in Rodriguez to try to establish
17    that they obtained their information in some way
18    other than in a hearsay or a testimonial.  But it
19    sounds like maybe you're not.  So you're willing to
20    live with the line I've drawn?  I understand you
21    disagree with it, but if you're willing to live with
22    the line I've drawn, then it doesn't seem to me we
23    need to have a Rodriguez procedure in which they're
24    called to testify.
25              MR. BECK:  Okay.  So I think we're in
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    agreement on all of those.  I think it sounds like

2    the Court -- as I understand the Court -- it made its

3    decision, but it's not ordering that at this point.

4    It's going to look at the issues further and take it

5    under consideration.  Because it's doing that, the

6    Court would allow us to go through Rodriguez

7    procedures to try to get any opinions that we believe

8    are proper.

9              THE COURT:  Well, I think given the place

10   we are, what I'm ordering -- what I'm saying is going

11   to have to be the order, and we're going to have

12   to -- it's going to have to be the order if we go to

13   trial.  I'll leave here today or tomorrow or

14   Wednesday, and try to get from y'all, everybody, what

15   you want me to look at and write an opinion on, and

16   take a second look at, or evaluate more closely.

17             But given the number of issues here,

18   unless -- I think this has to be the order.  And so

19   now I need to know whether you want a Rodriguez

20   procedure to try to get in additional information

21   from the experts, or you're willing to just say

22   they'll testify generally about gangs, but you're not

23   going to try to get specific information about the

24   SNM Gang through these three experts.

25             MR. BECK:  Okay.  May have a moment, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2456

```
 1    Honor?
 2              THE COURT:  Okay.
 3              (Conferred.)
 4              MR. BECK:  Your Honor, may we put off the
 5    Rodriguez-type hearing until after lunch; at that
 6    time come back and either do the hearing or tell you
 7    that we don't need it?
 8              THE COURT:  Okay.  That's fair enough.  I
 9    think we've got enough going on here.  So I'll put it
10    off for the present time.  I can't tell you about the
11    timing here, but we'll put it off for the present
12    time and let you make a more informed decision.
13              MR. BECK:  Understood.
14              THE COURT:  Let me come back to you,
15    Ms. Jacks.  If the Government says:  We disagree with
16    you, Judge; we think we could get more in through
17    these experts legally under the Tenth Circuit law
18    than what you're allowing us, but we'll live with it;
19    in other words, we're not going to call these experts
20    to talk specifically about the SNM Gang, what else do
21    you need from a Rule 16 standpoint, or from a
22    qualification standpoint -- I'll come back to you,
23    Mr. Villa, as well on this, so be thinking of this
24    question -- for these three people to testify to the
25    general gang testimony that I'm allowing?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. JACKS:  What I would like -- it sounds
2     like we've got the CVs in the most recent disclosure.
3          THE COURT:  Right.
4          MS. JACKS:  So that would probably satisfy
5     me on that basis.
6          With respect to the opinions, I'd still
7     like to know what the specific opinions they're going
8     to offer are, and what they're based on.
9          THE COURT:  Let me -- stay right there.
10    Mr. Beck, there has not been an opinion -- there
11    hasn't been reports on these three, right?
12         MR. BECK:  They have not issued written
13    reports.
14         THE COURT:  How -- if there is no summary
15    at the present time of their opinions, then the
16    reasons and basis for those opinions, how do you
17    propose to address that concern?
18         MR. BECK:  Well, I think -- so the problem
19    is, is that their opinions are expressed in the
20    notice and motion in limine.  Now, given the Court's
21    ruling, I think a lot of those opinions are going to
22    be excluded.  So we would have to go back and talk to
23    them about what their opinions would be under the
24    framework that the Court articulated here.
25         I think -- as Your Honor said, I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    looking at their CVs, looking at their

2    qualifications, and looking at the opinions that

3    they're going to be able to offer at trial, it's not

4    really a close call whether they're qualified to give

5    opinions about prison gangs, when they've worked in

6    the prison system for years, and seen the way

7    multiple gangs operate.

8            I understand that sort of the sticky place

9    we're in now that there isn't -- I guess there isn't

10   really an effective Rule 16 disclosure for the

11   Court's order on this.  And I think that's something

12   that the United States will have to work with the

13   defense team to come up with a solution for.  I think

14   one can be reached.  I think we can draft a similar

15   Rule 16 disclosure to what we have in there, where

16   they give the generic-type opinions this Court will

17   allow at hearing.

18           And I think those -- to the extent that the

19   defense feels there is a need to explore those on

20   cross-examination, I think that's a perfectly

21   appropriate place.

22           THE COURT:  Well, if you come back from

23   lunch, and you say, Okay, we can live with where the

24   Court is drawing the line, and so we don't have to do

25   a Rodriguez procedure, would the Government be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    willing to produce, within a certain amount of time,

2    with these three experts, a summary of the

3    opinions -- I would expect -- what I'm envisioning in

4    my head is bullet points.  You bullet point what now

5    you want these people to talk about as far as prison

6    gangs or gangs in general, and then something in the

7    way of reasons and basis for those opinions?  And

8    this is what I would expect it to be, is that, you

9    know, what they have done to formulate that opinion;

10   that they explain to the defendants how they have

11   formed those opinions.

12        MR. BECK:  Well, I think -- so for the

13   first part of that, sure.  Maybe seven days after

14   Your Honor issues the order saying what the opinion

15   will be, then we could write those opinions.

16        I'm being sort of facetious on that.

17        We can put together a list of opinions, if

18   that's the course we're pursuing.

19        On the second part of that, I think the

20   case law is pretty clear that, with these law

21   enforcement type experts, drug activity, law

22   enforcement type experts that saying their experience

23   and observations and working for the Corrections

24   Department over the last couple of years form the

25   basis of this opinion is sufficient to meet Rule 16

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2460

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 86

```
 1    requirements.
 2              THE COURT:  Okay.  Can you live with that?
 3              MS. JACKS:  I think it would depend on what
 4    the opinions were, whether I would agree.
 5              THE COURT:  All right.  Well, let's take it
 6    a step at a time.  Let me get the opinions in your
 7    hands.  You've got the CVs.  And they can probably
 8    put a paragraph together saying it's based on their
 9    experience working in prisons.  I tend to agree
10    that's probably where we are.  And I think that's
11    probably going to apply to defendants' experts as
12    well as the Government's experts.  So let's see if we
13    can work with that.
14              Thank you, Ms. Jacks.
15              Before I hear from you, Mr. Castle, let me
16    hear from Mr. Villa.  Now, we've got -- assuming the
17    Government comes back and says they can live with
18    where I'm drawing the line, you've got the CVs;
19    you're about to get the bullet points of opinions
20    they're going to offer on the general prison gang;
21    it's based upon their experience that's stated in the
22    CVs.  Anything else on that?
23              MR. VILLA:  I don't think so.  Nothing is
24    popped into my mind, Your Honor.  I have been
25    communicating with Ms. Fox-Young who may want to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2461

1   chime in, along with her three-month old, if the

2   Court is willing to hear her out real quick.

3           THE COURT:  No, that's fine.  Ms.

4   Fox-Young, are you there?

5           MS. FOX-YOUNG:  Yeah, I'm here, Your Honor.

6   I just would like to add -- I guess we need to see

7   what the Government does produce.  And we briefed

8   this in our response and our request for a Daubert

9   hearing.  But I think under Healy, the Court needs

10  look real closely at what facts outside the

11  investigation of this case these experts rely on.

12          The Court was pretty specific under

13  Rodriguez.  And I know the Court has looked at that.

14  But the Court needs to ensure that facts outside of

15  the case at hand, fact witnesses' expertise.  And I'm

16  just not sure that that's clear here.  I think

17  especially because we're looking at experiential

18  witnesses.  The Tenth Circuit has been clear, and

19  this Court has been clear that the gatekeeping role

20  needs to be relatively probing before the Court gives

21  the imprimatur of an expert monitor to these

22  witnesses.  And so I think we're going to want to

23  have a hearing.  But we'd like to see -- of course,

24  we'd like the Court to grant the hearing, but we'd

25  like to see what the opinions are first.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, I guess I'm not excited
 2   about having a qualification hearing.  I mean, we can
 3   do that at trial, if y'all want to challenge the
 4   qualifications at trial.  I'm not seeing Daubert
 5   issues here, so I'm not seeing a Daubert issue here.
 6            It seems to me that they are going to be
 7   experienced outside of the investigation of the SNM
 8   case.  I mean, I've excluded them talking about the
 9   SNM case.  So the fact that they're testifying
10   generally, I think that their reasons and basis could
11   state that it is -- and maybe I could require this --
12   that they state their experience beyond this case --
13   what is the reason they're testifying this, beyond
14   their investigation in this case.  So I guess that's
15   kind of what I'm thinking on that; that you're going
16   to get what you're entitled to in one shape or
17   another.  And some of the things that maybe you're
18   raising, we can -- I can order that the summaries
19   state the reasons and basis beyond the investigation
20   of this case.
21            All right.  Do you have anything else, Mr.
22   Villa?
23            MR. VILLA:  No, Your Honor.
24            THE COURT:  All right.  Mr. Castle?
25            MR. CASTLE:  Yes, Your Honor.  The one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2463

1    problem I see is that experience can be drawn upon

2    from a number of sources.  It's a saying that

3    experience doesn't really get us to the question of

4    whether this is a confrontation clause problem again.

5          So I believe the Government in their

6    explanation of what the bases and reasons for this

7    expert opinion are, they need to tell us what the

8    source of that is.  Because, once again, if it's

9    interviews with other inmates, SNM inmates, or if

10   it's reading another report from somebody else that

11   works for STIU, that's a confrontation problem.

12         And so it would help the Court in doing the

13   analysis, beyond just whether the witness is

14   qualified, but it's really going to whether there is

15   a confrontation issue that's present, or hearsay

16   issue present.  So I would just ask --

17         THE COURT:  Well, here's the thing I

18   always -- you know, if they talk to 2000 gang

19   members, I mean, that's probably not a confrontation

20   problem, right?  It's not hearsay.  They're forming

21   an opinion based upon 2000 interviews.  If they talk

22   to one, and they come in and tell them, it's probably

23   a confrontation.  But at some point, somebody that's

24   talked to 2000 people is probably an expert, and

25   somebody that's talking to one is a conduit.  I would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think that once we have elevated these people to

2    talking about things on this investigation they're no

3    different than your experts, for example.

4           MR. CASTLE:  Well, I didn't endorse a

5    corrections expert.  But with that said, the courts

6    haven't really addressed this.  And that was one of

7    the things I brought up in our supplement -- I can't

8    remember the number -- that was filed just last

9    week -- and that is:  Can an opinion be composed or

10   derived from a series of testimonial statements, and

11   then somehow become insulated from the confrontation

12   clause?  And I don't believe the whole is any

13   different than the sum of its parts.

14           So if it's made of 2000 testimonial

15   statements, that opinion itself is a violation of the

16   confrontation clause.  And the reason being is,

17   you're doing indirectly what you can't do directly.

18   What you're doing is making it so that defense cannot

19   cross-examine the source of the information that the

20   expert is forming its opinion on.

21           Now, I understand that no courts have

22   really addressed this yet, and so it's a novel

23   concept.  But I believe that a pure understanding of

24   the confrontation clause would apply to it.

25           Very quickly, I went back and analyzed this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    thing from an original intent aspect.  And at the
 2    time the Framers framed the Constitution Sixth
 3    Amendment, they had expert witnesses that were
 4    testifying at that point.  But experts were required
 5    to testify in the form of hypothetical questions.
 6    And so they weren't allowed to make opinions that
 7    were the kinds that the Government is issuing.  When
 8    the Sixth Amendment was enacted, it did not delineate
 9    between what kind of witness it was.  It says
10    "witnesses."  So that would apply to experts and
11    nonexpert witnesses.
12             And so I believe that -- well, our position
13    is -- doesn't matter what I believe -- what our
14    position is, is that the Sixth Amendment is violated
15    when the prosecution puts up an expert whose opinion
16    is derived from out-of-court testimonial statements
17    by others.
18             THE COURT:  All right.  Well, take a look
19    at the Fourth Circuit's opinion in United States v.
20    Johnson, which was the one that the Tenth Circuit
21    relied on, I think, pretty heavily in Pablo, which is
22    this March opinion that Judge Tymkovich -- it's an
23    unpublished opinion -- but it came out this year.
24    And I think it may address some of the things that
25    you're talking about.  It doesn't maybe put it in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2466

1    language that you're using.  But when it says:  The

2    question is whether the expert is, in essence, giving

3    an independent judgment, or merely acting as a

4    transmitter for testimonial hearsay, I think once we

5    started getting more general information, the less

6    likely it is that it's a conduit for testimonial

7    information.  I'll probably draw the line somewhere

8    around that Fourth Circuit case which Judge Tymkovich

9    relied upon -- Chief Judge Tymkovich relied upon in

10   Pablo.

11          All right.  Anything else on this?  It

12   looks like we're going to wait till after lunch to

13   make a final decision.  Anything else anybody wants

14   to say?  Mr. Villa?

15          MR. VILLA:  I think you alluded to it in

16   speaking to Ms. Fox-Young.  But the Government's new

17   notices will include the basis of these experts'

18   opinions outside of investigation of this case.

19          THE COURT:  It should say -- the basis of

20   the opinion should specify what it's done outside of

21   scope of the investigation in this case.

22          MR. VILLA:  And I notice that the Court is

23   mentioning the defense experts.  And I know the law

24   is not going to change just because they're defense

25   experts.  But the Government hasn't filed objections

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2467

1    or anything else.  And the Court's not expecting us

2    to do anything different.

3           THE COURT:  We'll get to your experts in a

4    moment.  I mean, I have read all the notices that the

5    defendants have filed.

6           I did notice the Government hadn't done

7    anything with those.  Let's see what they want to do

8    on that score.  But let's focus on the Government's

9    experts at this point, because I think whether y'all

10   end up calling expert witnesses at all may be greatly

11   reduced if the Court's proposed line drawing is

12   adopted.

13          All right.

14          I guess Pablo was written by Judge Ebel in

15   2012.  That's published.  It's Sandoval that's the

16   Judge Tymkovich opinion that came out in 2017.

17          All right.  Let me set that material aside

18   and we'll pick that up after lunch.

19          But to answer your question, Mr. Villa, no,

20   I don't think you need to do anything more.  I think

21   it's -- probably the Government's got to do the next

22   move to see whether they -- what they want to do with

23   your expert or experts.

24          The next motion I have up, Ms. Sirignano,

25   Mr. Adams, is Mr. Garcia's motion for a Daubert

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2468

```
 1   hearing, and to exclude Government expert witness
 2   testimony.  And I think this is joined by Defendant
 3   Patterson and quite a few other defendants.
 4           Is there anything that's still alive that I
 5   haven't ruled on or taken care of with this motion
 6   and our prior motions?  Mr. Adams?  Ms. Sirignano?
 7           MS. SIRIGNANO:  Your Honor, we were
 8   requesting the Daubert hearing of the experts, in
 9   addition to the Rule 16 violations that we believed
10   in the previous response to the Government's expert
11   notice.  And so I was hoping to be able to have the
12   Daubert hearing this week sometime, so the Court
13   could perform its gatekeeping role in determining the
14   reliability and the basis and the relevancy of each
15   Government expert witness.  So that's why this motion
16   was filed.
17           THE COURT:  Well, that was the reason I was
18   trying to start the hearing with the bit of an
19   exhortation.  Do the defendants really want a Daubert
20   hearing of Dr. Zumwalt?  I mean, is that really where
21   we're going?  I mean, some of these people -- I mean,
22   is that really what you're thinking, Ms. Sirignano,
23   we need to have Daubert hearings of Dr. Zumwalt and
24   some of these people?
25           MS. SIRIGNANO:  Judge, Dr. Zumwalt is not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2469

```
 1    part of my client's alleged counts in the indictment.
 2    Your question is better directed to those who joined
 3    that, as well as to their counsel.  But I definitely
 4    would like a Daubert hearing for sure on the two
 5    experts that are specifically relevant to our case,
 6    FBI forensic examiner Tiffany L. Smith, as well as
 7    the FBI forensic examiner Theodore Chavez.
 8              THE COURT:  So you're wanting a Daubert
 9    hearing of Smith and Chavez.
10              Let me ask the defendants?  Who else are
11    you going to want, if anybody, Daubert hearings of?
12    Is there anybody else besides Smith and Chavez?
13              MR. VILLA:  Again, Your Honor, I think it
14    depends on the new notices we get with respect to the
15    gang experts.  But I don't want to foreclose that.
16              THE COURT:  Okay.  I guess it seems to me
17    the defendants are in a little bit of a difficult
18    position demanding a Daubert hearing on the gang
19    experts, given that y'all got gang experts as well.
20    There seems to be some agreement there is expertise
21    in this area.  I don't know how you're going to
22    evaluate whether a certain gang expert's opinion is
23    peer reviewed or subject to error rates.  I mean, I
24    don't know what the standard, really, on gang experts
25    is going to be as far as a Daubert hearing.  It seems
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2470

```
 1   to me it's going to be the field of

 2   cross-examination, rather than any Daubert issue.

 3            MR. VILLA:  I certainly think it's

 4   nontraditional, Your Honor.  But, you know, if there

 5   is a particular opinion that we have concerns about

 6   the reliability, I think the purpose of the Daubert

 7   would be to explore the basis for those opinions, how

 8   they came to that conclusion, you know, that gangs

 9   have tattoos, gangs use slang words.  I don't

10   anticipate Daubert hearings on that.

11            But the issues -- depending on what comes

12   up in the notice -- that touch more on what's

13   happening at least in Counts 6 through 12 or the

14   other counts, those types of opinions we may ask the

15   Court to scrutinize prior to trial for their

16   reliability.

17            MS. SIRIGNANO:  And, Judge, if I could just

18   chime in, I think what's concerning -- at least to

19   our client -- is that the bases really haven't been

20   disclosed with many of these experts.  And I don't

21   know, particularly, if some of these medical

22   examiners relied on toxicology reports or other

23   scientific reports in determining their expert

24   opinion.  And whether or not those tests were done

25   with reliability and meet the standards of 702, Rule
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2471

1    702, Daubert, and Kumho Tire.  So that's why this

2    motion was filed, just to make sure that the

3    confrontation issue, Sixth Amendment confrontation

4    issue, is satisfied, and the Court can satisfy its

5    gatekeeping function, with making sure that this

6    evidence is reliable and credible with all the

7    Government's experts.

8              THE COURT:  Well, I guess I'm a little

9    disappointed to hear now that the basis and reasons

10   have been disclosed with many of these experts, given

11   that we spent a good chunk of the morning carefully

12   going through the Rule 16 requirements, and everybody

13   being satisfied that the written reports for almost

14   all the experts satisfied that requirement.  So I

15   guess now I'm disappointed to hear you saying, Ms.

16   Sirignano, that you don't know the basis and

17   opinions; they haven't been disclosed.  So what are

18   you trying to say?

19             MS. SIRIGNANO:  Well, Judge, I think my

20   position earlier this morning was that, at least in

21   the two experts that concern Mr. Garcia -- I've been

22   consistent -- that they haven't been disclosed.

23             THE COURT:  Well, now, you just -- Ms.

24   Sirignano, you just used "many of these experts."  So

25   if you're just limiting your comments to Ms. Smith

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2472

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 98

```
 1    and Mr. Chavez, I can deal with it.  But if you're

 2    making a blanket statement that "many of these

 3    experts" you do not know the basis and reasons for

 4    their ruling, after we've spent a long time this

 5    morning going through the Rule 16 and talking about

 6    the written reports, I need to have you either

 7    withdraw that comment or clarify it.

 8              MS. SIRIGNANO:  I apologize, Your Honor.  I

 9    overstated.  I'm concerned with our two experts,

10    Judge.

11              THE COURT:  All right.  Well, then my

12    memory with Smith and Chavez is you do have written

13    reports from both of them.  Am I correct?

14              MS. SIRIGNANO:  Yes, Your Honor.

15              THE COURT:  And we have worked out a

16    procedure for getting opinions, and the basis and

17    reasons for those opinions for the gang experts;

18    correct?

19              MS. SIRIGNANO:  Yes, Your Honor.

20              THE COURT:  So can I put aside that there

21    is any disclosure issues or problems?  If you want a

22    Daubert issue on those people, that's a separate

23    issue.  But can I put aside the basis and reasons for

24    the time being?

25              MS. SIRIGNANO:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2473

```
1              THE COURT:  All right.  Who else?  Anybody
2    else think there is going to be Daubert issues to
3    anybody else other than Smith, Chavez, and possibly
4    the gang experts after the Government discloses their
5    opinions?
6              MR. BENJAMIN:  Your Honor, if I may have
7    just a second.  That is my position, but it's
8    regarding Dr. Zumwalt.
9              THE COURT:  Take your time.
10             Mr. Benjamin?
11             MR. BENJAMIN:  Yes, Your Honor.  And Your
12   Honor, I would refer the Court to something that my
13   investigator, Bill Elliott, had provided to me this
14   morning, that I'm still in the process of reviewing,
15   but the reason we joined the motion regarding
16   Dr. Zumwalt was some, essentially, information that
17   I've been -- Bill Elliott, my investigator, has
18   communicated to me over past investigations.  But
19   there was an article this morning, on Monday,
20   November 27 --
21             THE COURT:  Well, I was only using Zumwalt
22   as an example.  Is that really -- I wasn't suggesting
23   that you were -- or even Ms. Sirignano -- were
24   challenging Mr. Zumwalt.  You may, but I was just
25   using him as an example.  Is that really -- were you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2474

```
 1    really challenging Dr. Zumwalt on a Daubert basis?
 2              MR. BENJAMIN:  Your Honor, I am -- I
 3    believe Mr. Gallegos will be, at least at this point
 4    in time, Mr. Gallegos will.  And I apologize, I
 5    misunderstood the Court's question.
 6              THE COURT:  So we add Dr. Zumwalt to -- as
 7    a person there is going to be a Daubert challenge to.
 8              All right.  Anyone else besides Smith,
 9    Chavez, Dr. Zumwalt, and possibility the Government's
10    gang experts?
11              All right.  Mr. Beck, are you handling the
12    Daubert issues here on the experts?
13              MR. BECK:  That's right, Your Honor.
14              THE COURT:  All right.  What about Smith?
15    Are you going to -- how are you going to deal with
16    the Daubert challenge, or propose to deal with it?
17              MR. BECK:  Well, Your Honor, I don't
18    understand what the basis of the Daubert challenge
19    is.  I mean, I guess if we're going to have to get
20    into whether the conclusions were reliable -- and I
21    mean, if the Court is going to order a Daubert
22    hearing, then we're going to have to present
23    Ms. Smith for a Daubert hearing.
24              THE COURT:  All right.  Same for Chavez,
25    Dr. Zumwalt, and if in fact, there are Daubert issues
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101

```
 1    with the gang experts?

 2              MR. BECK:  Right.

 3              THE COURT:  Same response?

 4              MR. BECK:  Yes, Your Honor.

 5              THE COURT:  Let me ask Ms. Wild -- are you

 6    still on the phone?

 7              THE CLERK:  Yes, sir.

 8              THE COURT:  Were you, in setting up these

 9    hearings this week, anticipating that we would do

10    Daubert hearings while we were here?

11              THE CLERK:  Yes.

12              THE COURT:  Okay.  Where is Ms. Smith?

13              MR. BECK:  I think they're in --

14              MS. SIRIGNANO:  Your Honor, I believe she's

15    in Quantico.

16              MR. BECK:  Right, in Virginia.

17              THE COURT:  And where is Chavez?

18              MR. BECK:  Quantico, Virginia.

19              THE COURT:  And Dr. Zumwalt is in

20    Albuquerque?

21              MR. BECK:  That, I don't know.

22              MS. SIRIGNANO:  Not any longer, Your Honor.

23              THE COURT:  Where is he now?

24              MS. SIRIGNANO:  I just know he's left OMI,

25    but I'm not sure where he's living or working.
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                       201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2476

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102

```
 1              THE COURT:  Your gang experts are all in
 2    Santa Fe?
 3              MR. BECK:  No.  Ron Martin is here; he just
 4    stepped into the courtroom during the last break,
 5    Chris Cupit is in Albuquerque on his way down here, I
 6    believe.  And Sergeant Sapien, I believe, is in Santa
 7    Fe.
 8              THE COURT:  Well, on the gang experts --
 9    well, think about how we can use this time
10    profitably.  If we need to start moving some of those
11    experts here to do the Daubert, think about which
12    ones you want to try to get here, and whether we've
13    got the time to do it.
14              I'll keep plowing through motions.  And
15    we'll be taking a lunch break here in about 45
16    minutes.  But let's think about trying to turn part
17    of this week into Daubert hearings, and which
18    witnesses you want to get here and start dealing
19    with.
20              MR. BECK:  Understood.
21              THE COURT:  All right.  So I think we've
22    fleshed out the Daubert issues.
23              Is there anything else, Ms. Sirignano, Mr.
24    Adams, you want to say on the Daubert issues, other
25    than, I guess, we'll have to set up the Daubert
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2477

 1    hearings themselves either this week -- or if we

 2    don't get them done this week -- in the future?

 3              MS. SIRIGNANO:  No, Your Honor.  Thank you.

 4              THE COURT:  Anybody else?  Any other

 5    defendants on the Daubert issues, other than what

 6    we're -- the hearings themselves?

 7              All right.  So let's take up Mr. Garcia's

 8    motion for specification of co-conspirator statements

 9    in a pretrial hearing on the statement's

10    admissibility.  Given what I've already ruled and how

11    we're going to proceed on satisfying the James

12    requirements -- I understand there has been some

13    development, some discussions among the parties, so

14    we may be refining that.

15              But, Mr. Adams, it's your motion.  Is there

16    anything else I need to do to address the issues in

17    your motion?

18              MR. ADAMS:  No, sir.  We are still on the

19    same page with Mr. Villa and his request.  And if

20    there have been discussions, we've not been privy to

21    them.  So we'd like the hearing.

22              THE COURT:  Okay.  But my rulings have

23    addressed them all?  Everything in your motion I've

24    already addressed?

25              MR. ADAMS:  Yes, sir.  I think we were just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    asking for the James hearing.  And you said:  We'll
 2    have the James hearing, and it looks like we'll have
 3    it in short order.  That sounds like fun.
 4              THE COURT:  All right.  Anybody else on
 5    Mr. Garcia's motion?
 6              Mr. Castellano, are you handling this?
 7              MR. CASTELLANO:  Yes, Your Honor.
 8              I don't know if we finalized all the
 9    discussions, but during the break there were
10    discussion with some of the teams about potentially
11    providing statements to them, and streamlining the
12    process, and going forward from there.
13              I think at least -- possibly two teams may
14    want to have a Daubert hearing, so we just need to
15    prepare our witnesses during the break, maybe
16    tomorrow have the hearing, whatever the Court's
17    pleasure is.  I believe Defendant Garcia and
18    Defendant Perez may be the two who want them.
19              The other ones, we've agreed to prepare the
20    statements.  It basically would be a summary, who
21    made the statement to whom, the context of the
22    statement.  And then I think streamline things in
23    that fashion.
24              THE COURT:  Okay.
25              MR. CASTELLANO:  So I think we may have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2479

 1   bifurcation of the James hearing.

 2          THE COURT:  All right.  So it sounds like

 3   Mr. Adams, Ms. Sirignano, Mr. Villa, y'all are going

 4   to get the James hearing.  Everybody else has worked

 5   out a proceed with the Government to satisfy --

 6          MR. ADAMS:  I mean, nobody asked me about

 7   it.  But had they asked me, I would have said that's

 8   exactly what had been requested in 1303.  And I

 9   think, at this point, with a January 29 date, we'd

10   rather just have a witness put up cold, and get into

11   it, just so we can know what we're dealing with right

12   around the corner.  So we would have loved the

13   Government's response to have been:  Hey, let's do

14   this bifurcated way, so you can actually prepare for

15   the hearing.  But since we're here, and it's the week

16   after Thanksgiving, and we're going to be in front of

17   a jury in two months, we'd just like to get a witness

18   up and get it going.

19          THE COURT:  Well, I think that's what Mr.

20   Castellano is saying.

21          MR. ADAMS:  So I guess that's my way of

22   saying I'm in agreement with brother counsel.

23          THE COURT:  All right.  So everybody, other

24   than really Mr. Villa and Mr. Adams, y'all have

25   worked out -- you're going to get a statement from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2480

```
 1    them.

 2             And does that bring -- Mr. Castellano, does

 3    that bring their James hearing to a conclusion, or is

 4    that -- they're going to get the statement and then

 5    they can request or have a James hearing without --

 6    how does it work?  Is it bifurcated?

 7             MR. CASTELLANO:  Yes, Your Honor.  It's my

 8    understanding they'll get the statements and they'll

 9    make a determination at that point whether they want

10    to challenge the statements.

11             THE COURT:  All right.  So it's two-step

12    for everybody else.  And it's -- we go immediately

13    into hearings with --

14             MR. ADAMS:  Judge, I'm sensing there are a

15    number of people who have not made that agreement, or

16    feel like they've not made that agreement.

17             THE COURT:  Well, they need to speak up.

18             MR. VILLA:  Your Honor, I think I can speak

19    to that.

20             THE COURT:  I don't really need to hear

21    from you or from Mr. Garcia.  I need to hear from

22    other people in the room.  So Mr. Lowry looks like

23    he's up.

24             MR. LOWRY:  Thank you, Your Honor.

25             No, Mr. Castellano did mention that to us
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2481

```
 1    during the break.  And in the middle of that

 2    conversation we discussed with the Rudy Perez team,

 3    Mr. Baca would join Mr. Perez in just moving this

 4    forward.  We have a trial, I would point out, is in

 5    less than two months at this point.

 6              THE COURT:  Is it the 29th, or I have the

 7    date wrong?

 8              MR. LOWRY:  29th, Your Honor.  Two months.

 9    Losing track of time.

10              THE COURT:  Too far behind.

11              MR. LOWRY:  I know these two months are

12    going to go by very rapidly, Your Honor, so we would

13    like to move this forward.

14              THE COURT:  All right.  So let me ask you,

15    Mr. Castellano, is your evidence on the James going

16    to be any different with Baca than it is Perez?  Is

17    it going to be the same hearing?

18              MR. CASTELLANO:  Mr. Baca is involved in

19    multiple conspiracies, so his would include

20    additional statements.

21              THE COURT:  Additional statements, okay.

22              What's your thoughts on what Mr. Lowry just

23    said?

24              MR. CASTELLANO:  Sounds like he wants to

25    have a hearing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2482

```
 1              THE COURT:  Right.
 2              MR. CASTELLANO:  So we just need to have
 3   time to prepare the witnesses.  What I'd ask is
 4   sufficient time, so that we can have a smooth --
 5              THE COURT:  But you're ready to go on
 6   Perez?  You're ready to go on Garcia?  And if we've
 7   got more time, then we'll start with Baca?
 8              MR. CASTELLANO:  Yes.  We'll do what we
 9   need to do.  I just ask time to prepare it so that
10   way we can avoid a lot of refreshing recollection and
11   a disjointed hearing.  So I'm asking time to prepare
12   the witnesses to make sure we know which statements
13   we're covering for the hearing.
14              THE COURT:  Okay.  All right.  Other than
15   Perez, Baca, Garcia --
16              MS. JACKS:  We don't have any agreement --
17              THE COURT:  You don't have any agreement?
18              MS. JACKS:  -- with the Government.  So
19   we're ready to proceed as well on behalf of Mr.
20   Sanchez.
21              MR. CASTELLANO:  We'll cover the entire
22   Molina case with the James hearing.
23              THE COURT:  All right.  Is that then --
24   we're going to get an immediate James hearing on the
25   Molina murder, and then everybody else is going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2483

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 109 2484

```
 1    get bifurcated, get to see the statements first, then
 2    you get to decide whether you want a James hearing?
 3    Everybody in agreement on that?
 4              All right.  Anything else, Mr. Garcia, Ms.
 5    Sirignano, on your motion, that I need to deal with?
 6              MR. ADAMS:  No, sir.  Thank you.
 7              MS. SIRIGNANO:  No, Your Honor.  Thank you.
 8              THE COURT:  All right.  The next motion is
 9    one that I think we've covered.  It's Daniel Sanchez'
10    motion on the Rule 16 issue, the gang expert issue,
11    how we're going to proceed.  Is there anything else
12    on that issue, that motion, Ms. Jacks, Mr. Jewkes?
13              MS. JACKS:  No.
14              THE COURT:  We've covered it all?
15              MS. JACKS:  Yes.
16              THE COURT:  All right.  And then the next
17    motion, I think, is yours, Mr. Benjamin, for a James
18    hearing.  And you're -- if I understand where you
19    are, are you in the bifurcation, or immediate
20    hearing?
21              MR. SINDEL:  Your Honor, if I may address
22    that.  We are in the bifurcation.
23              THE COURT:  You're in the bifurcation.
24              So is there anything else, then, with your
25    motion that I need to address at this time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. SINDEL:  Not that I could think of at
 2    this time.
 3              THE COURT:  Okay.  How about you, Mr.
 4    Benjamin.  Anything you can think of?
 5              MR. BENJAMIN:  No, Your Honor.
 6              THE COURT:  All right.  So the bifurcation
 7    will take care of that.
 8              While we're waiting probably for the
 9    Government to tell us what they're going to do on
10    experts, and then on the James hearing, let me see if
11    I can pick up a couple of issues.  If I can't, I
12    can't.  But let me see if I can pick up a couple of
13    issues.
14              Let me take up these peremptory challenges.
15    Let me give you some musings out loud here, and then
16    formulate it into a probable ruling here.  With this
17    many defendants, it seems to me it's going to be very
18    difficult to give three additional peremptory
19    challenges.  That's going to be 45, if we have all 15
20    heading toward -- we just talked about -- I mean,
21    just think about that, we're going to have 60 people
22    probably in the courtroom as we select the jury.
23    I'll probably end up summoning -- I haven't talked to
24    Ms. Wild -- maybe we have, and I have forgotten the
25    specifics -- and if she remembers, maybe she go ahead
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2485

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112486

```
 1    and fill us in -- but I guess what I'm envisioning in
 2    my mind, we'll probably have 60 people in the
 3    courtroom, in this courtroom, and we will probably
 4    attempt to pick the jury from that.
 5            If I give every defendant three, that's
 6    going to be in the first trial, that's going to be
 7    18, that's going to be very difficult to try to do.
 8    I don't think we'll get a jury picked.  If I, in the
 9    second trial, with nine, that's -- you can just start
10    multiplying the numbers.  It gets very difficult to
11    try to pick a jury.
12            So I'm probably not going to allow three
13    peremptory challenges.  I would like to wait a little
14    bit to see if everybody that's in the room is going
15    to trial.  If everybody in the room is going to
16    trial, then I'm going to probably have to be very
17    restrictive and not allow additional peremptory
18    challenges.
19            If I end up with one person, there is no
20    need for additional peremptory challenges, if there
21    is two -- you know, I've got a little leeway to give
22    each person a little bit of independent judgment
23    rather than collective judgment, I'd probably be a
24    little receptive to that.
25            On the other hand, if we're dealing with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2486

1    these numbers here, I'm just not going to get a jury

2    picked if I start giving individual peremptory

3    challenges.

4           So I guess what I'm inclined to do is deny

5    the motion without prejudice.  Let's see what things

6    happen over the next 62 days.  And then I can make a

7    little bit more informed decision.  The defendants

8    can sort of reraise it a little closer to the trial.

9    But right at the moment I just don't think I can, at

10   this point, tell the defendants that they're going to

11   get additional peremptory challenges.  I think we're

12   going to have to work within the parameters of the

13   rules, and me not exercise my discretion to give it.

14          If the picture looks different than it does

15   right this minute in this room, maybe I can be a

16   little bit more liberal, and then it's possible that

17   we get down to a number that doesn't require any

18   additional peremptory.

19          So I guess that's what I'd like to do is

20   deny it without prejudice, and the defendants reraise

21   it as we get closer to trial, and test my temperature

22   there.

23          Mr. Villa, it looked like you were going to

24   get up and talk first.

25          It's Mr. Cooper's motion, so I better ask

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    him if he has anything.  Mr. Castle, do you want

 2    to --

 3            MR. VILLA:  I was just getting the mic for

 4    Mr. Castle.

 5            MR. CASTLE:  The case law is clear that

 6    it's the discretion of the Court.  And I think the

 7    Court is within its discretion to delay ruling or to

 8    deny this without prejudice at this point.

 9            I mean, frankly, we'll take whatever we can

10    get.  And our arguments might be better focused when

11    we get farther down.  And I think the Court is wise

12    to hold off on this at this point.

13            THE COURT:  All right.  Thank you, Mr.

14    Castle.

15            Did you have anything you wanted to say,

16    Mr. Villa, on this?

17            MR. VILLA:  No, Your Honor.

18            (A discussion was held off the record.)

19            THE COURT:  I think Ms. Wild has reminded

20    me -- if this is agreeable to everybody -- we'll

21    bring 60 in, and if we don't get them picked, we'll

22    bring them in waves of 20.  So we'll keep people down

23    in the jury room, and then we'll bring in waves of 20

24    until we get our jury picked.

25            Anybody else on peremptory challenges?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2488

```
 1            How about from the Government?  Who was

 2   going to speak on that issue?

 3            MS. ARMIJO:  Your Honor, I can speak on

 4   behalf of the United States.  We're in agreement with

 5   the Court's preliminary ruling:  Deny it without

 6   prejudice, and just see how we end up.

 7            THE COURT:  All right.  Anybody else have

 8   anything on peremptory challenges?

 9            So I'll deny it without prejudice.  Let's

10   see where we are as we get closer to trial.

11            All right.  Mr. Villa, I want to take up

12   the issue that you had raised a little bit earlier.

13   And that is the expert report or expert notices --

14   notices of experts that the defendants have filed.  I

15   think that's what all these are.

16            Let me ask the Government:  After you have

17   reviewed -- I think there is nine that the defendants

18   have filed.  Mr. Beck, are you going to take these,

19   this part of expert testimony?

20            MR. BECK:  Yes, Your Honor.  I think, given

21   the Court's ruling, if we're going to be required to

22   talk about a given Rule 16 notice disclosure about

23   the bases of the opinions -- more than I think Rule

24   16 requires -- I think what's good for the goose is

25   good for the gander -- there should be a reciprocal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2489

1  requirement for the defendants on that.  If we see

2  anything at that time, we might object to it.

3          THE COURT:  Well, I mean, in a case like

4  this, the goose for the gander argument doesn't

5  strike me as very helpful.  I didn't think I was

6  requiring anything beyond Rule 16.

7          I guess my question to you is:  Do you have

8  specific Rule 16 challenges or Daubert challenges to

9  their experts?  I mean, for example, some of this

10  stuff is pretty voluminous.  I mean, most of it is

11  resumes, and stuff like that.  But --

12          MR. BECK:  Right.  And I mean -- no, with

13  the bases of Rule 16, no, with the additional

14  requirements.  That's what I was asking for was the

15  reciprocal from the defendants on the bases for their

16  opinions.  I mean, I get their base on their

17  experience and their knowledge.  And I think that's

18  what Rule 16 requires.  But to the extent that the

19  United States is now going to have to talk about

20  additional bases for our experts, I think that should

21  be reciprocal.  I understand if the Court is not

22  going to order, that that's the Court's discretion.

23          THE COURT:  Well, let's take them one at a

24  time, as we did your experts.  Let's go with

25  Dr. Graham.  This is I think, Mr. Benjamin, your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2490

```
 1    expert.  Have you produced any expert report here?  I
 2    know you've given them a CV, but have you produced
 3    any expert report?
 4              MR. BENJAMIN:  You said Dr. Graham, Your
 5    Honor?
 6              THE COURT:  Yeah, I'm looking -- medical
 7    examiner, Michael Graham, M.D.
 8              MR. BENJAMIN:  Mr. Sindel is going to
 9    handle that, Your Honor.
10              MR. SINDEL:  Your Honor, we have not.  We
11    have produced the CV.  We have not produced any
12    reports.  We will be able to do that.
13              THE COURT:  All right.
14              MR. SINDEL:  Although I'm really doubting
15    that we will be calling him as a witness at this
16    point in time.
17              THE COURT:  All right.  What do you
18    propose, Mr. Beck, as a deadline to produce the Rule
19    16 report for these experts?
20              MR. BECK:  I think two weeks is fine.
21              THE COURT:  Let me ask -- I'm going to go
22    through these experts.  If I determine that the
23    disclosures have not complied with Rule 16, could all
24    the defendants live with a deadline of two weeks from
25    today to produce either a report or a summary that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    complies with Rule 16 requirements?  Mr. Benjamin?
 2              MR. BENJAMIN:  Your Honor, for Ms. Susana
 3    Ryan, she has given me a list that she says -- she's
 4    the DNA expert that I've designated -- she has a list
 5    that she has provided me that I was going to give to
 6    the Government today of materials she requires,
 7    essentially materials that we talked about last time,
 8    in order do that.  And these are materials that have
 9    been provided, as I said, in a prior trial in this
10    district.
11              THE COURT:  Well, you may need to
12    supplement her report.  But can you still live with
13    14 days from today that everybody produce either
14    opinions or either a report or a summary that
15    complies with Rule 16?  You may have to supplement it
16    after you get some material.  But can everybody live
17    with that?
18              MR. BENJAMIN:  I think, as long as the --
19              MS. SIRIGNANO:  Your Honor, this is Amy
20    Sirignano.  I'm definitely going to need to
21    supplement.  But we can make an initial disclosure,
22    yes.
23              THE COURT:  Okay.
24              MR. BENJAMIN:  Yes, Your Honor.  Same thing
25    as Ms. Sirignano said for Ms. Ryan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2492

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118

```
 1              THE COURT:  All right.  Mr. Lowry?

 2              MR. LOWRY:  Your Honor, we noticed up two

 3      experts for Mr. Baca.  One was a computer forensic

 4      expert.  Another was a handwriting expert.  The

 5      handwriting expert was noticed out of abundance of

 6      caution for rebuttal.  We'd like to consult with our

 7      colleagues from the United States to see whether that

 8      would be necessary.

 9              As for the computer forensic expert, the

10      last hearing we addressed the cellphones and the

11      ELSUR devices.  We haven't had access to them yet.

12      So, Your Honor, if we could have the two weeks run

13      after we get access to the cellphones.  We'll set

14      that up as soon as possible.  But it still leaves

15      open the question of the ELSUR devices that I'm

16      working with other colleagues on our side of the case

17      to designate an expert if the Court allows access to

18      those devices.  But, of course, all of that is yet to

19      be determined by the Court.  So what I'm asking for

20      is the two weeks to run after the relevant experts

21      have had time to get access to the material they

22      would need to generate a report.

23              THE COURT:  Well, what's your thoughts

24      about that, Mr. Beck?

25              MR. BECK:  Your Honor, I think if there is
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2493

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119

```
 1    opinions they know the expert is going to testify to,
 2    then they can provide those in two weeks.  If it's
 3    something that -- I mean, obviously it's not going to
 4    have any opinions on the ELSUR devices.  The expert
 5    hasn't seen them.  So that wouldn't make any sense.
 6    So I think an initial disclosure in two weeks, if an
 7    initial disclosure is necessary, that's fine.  And
 8    then, if it needs to be supplemented after more
 9    discovery is submitted, or in this case the ELSUR
10    devices are reviewed.  I think that's appropriate.
11              THE COURT:  Yeah, I guess I'm still
12    inclined to stick with that.  Everybody has got to
13    comply with Rule 16 within 14 days.  If we have to
14    supplement, we have to supplement.  But not delay the
15    initial report.  I think you've got to start getting
16    some stuff out there.  I mean, some of you -- I'm not
17    being critical here, but you know, we set up a
18    procedure three weeks ago, and some of you haven't
19    sent your letters to the Government.  So,
20    realistically, you can't be complaining too much if
21    you're not -- we set up a procedure and you don't
22    send in the letters to the Government.  That doesn't
23    trigger anything.  I'm not going to be real
24    sympathetic to everybody saying, Well, the Government
25    hasn't produced stuff when we set up a procedure, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2494

1    nobody has taken advantage of it, or some people

2    haven't taken advantage of it.

3              So I think the disclosure on Graham is

4    inadequate.  So you'll need to supplement or produce

5    a report that complies with Rule 16 within two weeks

6    from today.

7              As far as Ryan is concerned, I think the

8    same ruling on that.

9              Let's go, then, to Dr. Raven.  I think all

10   her testimony -- well, same thing, Mr. Villa, I think

11   you're going to have to given the Government more on

12   that.  So report in two weeks.

13             MR. VILLA:  Your Honor, I think Dr. Raven

14   was noticed purely as a rebuttal witness.  And based

15   on the Court's rulings this morning that the

16   Government's experts on the pathology -- I think

17   earlier I said Dr. Zumwalt.  I misspoke.  It's Dr.

18   Kastenbaum.  If there aren't any additional

19   supplementation made by the Government beyond what's

20   in the autopsy report, we wouldn't intend to call

21   Dr. Raven.

22             THE COURT:  Okay.

23             MR. VILLA:  I think we were just trying to

24   meet the deadline at that point.

25             THE COURT:  All right.  So unless you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2495

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 122496

1    supplement, there is no need for any additional

2    information on Dr. Raven.  Would you agree with that?

3          MR. BECK:  That's fine.

4          THE COURT:  All right.  Then, let's go to

5    Mr. Troup's notice for Karen Green.  I'm going to

6    have to refresh my memory about Ms. Green.

7          MR. BURKE:  Your Honor, Karen Green is a

8    DNA expert.  And we actually did send an email over

9    to the prosecutors in October asking for additional

10   information.  And I think in all of the busywork that

11   we've been engaged in, that email has been ignored.

12   The additional request that we made related to

13   protocols that the lab had back in 2001, as well as

14   protocols in 2014, when some DNA was retested.

15         So we would ask for two weeks from when we

16   get the material that we asked for five or six weeks

17   ago.

18         THE COURT:  All right.  Well, I think I've

19   got to treat everybody consistent here.  So I need

20   something that complies with Rule 16 on what you

21   already have, and then you can supplement it.

22         MR. BURKE:  Within two weeks.

23         THE COURT:  Within two weeks.

24         MR. BURKE:  All right.  Thank you, Your

25   Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2496

```
 1              THE COURT:  Is that agreeable, Mr. Beck?
 2              MR. BECK:  Yes, Your Honor.
 3              THE COURT:  All right.  Mr. Baca's
 4    handwriting expert, Songer.
 5              MR. LOWRY:  Your Honor, we'll enter a
 6    preliminary report within two weeks.
 7              THE COURT:  And same for Kesden?
 8              MR. LOWRY:  Yes, Your Honor.
 9              THE COURT:  Is that acceptable, Mr. Beck?
10              MR. BECK:  Yes, Your Honor.
11              THE COURT:  Mr. Garcia's chemist, Janine
12    Arvizu.  I guess I don't think that's probably
13    adequate either.  I mean, we had some areas of
14    testimony, but we don't have her opinions and the
15    basis or reasons for them.  So I'm inclined to
16    require some report in two weeks.  Ms. Sirignano?
17    Mr. Adams?
18              MS. SIRIGNANO:  That's fine, Your Honor.
19              THE COURT:  Okay.  Same for Brian, Mr.
20    Brian?
21              MS. SIRIGNANO:  Your Honor, he's a computer
22    specialist.  And we haven't yet received access to
23    the digital evidence.  So I can get something out,
24    and then we'll need to supplement on him.
25              THE COURT:  Where are we on -- y'all had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2497

1   some placeholders, firearms experts and DNA experts.

2   Where are you on that?  Have you chosen experts yet

3   on those categories?

4          MS. SIRIGNANO:  Yes, Your Honor, with the

5   DNA expert.  And I'm having some difficulty with the

6   firearms expert, which we can resolve within the next

7   two weeks.

8          THE COURT:  Okay.  So let me have some

9   reports on those two.  And you'll need to identify

10  your expert and give your expert's CV within two

11  weeks.  If we don't have a name and an expert, then I

12  think we're probably going to have to start excluding

13  experts.  So we need to pin that down.

14         MS. SIRIGNANO:  Yes, Your Honor.

15         THE COURT:  All right.  Anything else, Mr.

16  Beck, on Mr. Garcia's experts?

17         MR. BECK:  No, Your Honor.

18         THE COURT:  All right.  Did you have

19  something you wanted to say, Mr. Villa?

20         MR. VILLA:  No, Your Honor.

21         THE COURT:  Okay.  Let me go then to Carlos

22  Herrera's expert, Shannon McReynolds.  We've got the

23  CV, but no report.  So I think, given this is a

24  prison gang person, I need to hold you to the same

25  requirements I am the prison gang expert of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2498

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124

1   Government.  So I need something that complies with

2   Rule 16.  So you'll need to bullet point the

3   opinions.

4            MS. BHALLA:   Your Honor, I don't have a

5   problem with that.  The issue with that, I think

6   we're going to need a little bit more --

7            THE COURT:  Is the microphone floating

8   around here?

9            MS. BHALLA:  As we identified in our

10  disclosure, Your Honor, a lot of Mr. McReynolds'

11  testimony is going to be in the form of rebuttal

12  testimony.  And until we get some more opinions from

13  the Government witnesses laid out, I don't know how

14  much more we can actually supplement our disclosure.

15  We'll do the best we can with what we have.  But we

16  don't have a lot to work with at the moment.

17           THE COURT:  I well, I think you do.  I

18  think you do.  I mean, if the Government comes back

19  in after lunch and says they can live with the line,

20  they've today identified some areas they're going to

21  talk about generally, about 10 areas they're going to

22  talk about generally with gang experts.  So --

23           MS. BHALLA:  As long as we have that, we

24  won't have a problem doing that, Your Honor.

25           THE COURT:  Okay.  And if you need to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2499

 1   supplement, you can.  So I think the disclosure is

 2   not adequate on that.  So you'll need to be more

 3   specific.

 4          I think probably, Mr. Beck, the basis and

 5   the reasons for his opinion are probably pretty well

 6   set out.  If you need anything further on that, it's

 7   going to be his experience.  Like your experts, he's

 8   not going to be constrained by an investigation of

 9   this case.  So I think the basis and reasons,

10   probably the notice is sufficient.  It's -- what you

11   need is the opinions?

12          MR. BECK:  I think so, yeah.  It's a pretty

13   easy thing to meet with these law enforcement

14   experts.  So I agree that the bases is adequate.

15          THE COURT:  So Ms. Bhalla, I think what I'm

16   looking for is the same thing I'm looking for from

17   the Government, just bullet points, what the opinions

18   are.  We've got a CV.  I think you've given the basis

19   and reasons.  So it's just bullet points in the

20   opinions.

21          MS. BHALLA:  Thank you, Your Honor.

22          THE COURT:  All right.  Mr. Lowry?

23          MR. LOWRY:  Your Honor, just briefly a

24   housekeeping matter.  At the last hearing we

25   discussed the ELSUR devices and the cellphones.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2500

```
 1    if I understand it correctly, Ms. Armijo --

 2              THE COURT:  I was going to address those

 3    after I get through with the experts.  Does this

 4    relate directly to the experts?

 5              MR. LOWRY:  It does, Your Honor, because I

 6    think there is an open question before the parties,

 7    are the multidefense team limited to one computer

 8    forensic expert to review both classes of devices?

 9    And if that's the case, the defense team needs to

10    select a specific expert.  Because I think we've

11    noticed an expert, and I think Amy Sirignano's team

12    noticed an expert.

13              THE COURT:  Let me come back to that.  Let

14    me come back to the devices probably after lunch.

15    But I want to address the Ms. Jacks' letter to the

16    Government and see where we are on that.

17              Here, do I get to laugh that Rudy Perez is

18    calling John Shanks to be an expert on shanks?  I

19    mean, do we all get to enjoy that?

20              MR. VILLA:  Yes, Judge.

21              THE COURT:  All right.  Thank you.

22              What else do you need on Mr. Shanks?  You

23    need bullet points on his opinion, and that's it?

24              MR. BECK:  Yes.

25              THE COURT:  All right.  So two weeks, give
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2501

```
 1   me that.  Then you may have to supplement after you

 2   get the Government's opinions.  But --

 3             MR. VILLA:  Judge, we don't have a problem

 4   supplementing.  Mr. Shanks just underwent a back

 5   procedure, and I don't know the current state of his

 6   health.  Could I have three weeks?  And if there is

 7   any issues, we can report back to the Court?

 8             THE COURT:  Let's do it the other way.  Let

 9   me set a deadline of two weeks.  And if you need to

10   move for an extension on it, work with your

11   colleagues and Mr. Beck and move for it.  But let me

12   go ahead and set it so I'm consistent with everybody.

13   And if you need to move, you can.  Let's just do a

14   list of opinions.  Does that work for you, Mr. Beck?

15             MR. BECK:  Yes, Your Honor.

16             THE COURT:  So that's all you'll get for

17   Mr. Shanks is just a list of bullet point of

18   opinions.

19             The same way on Mr. Garcia and Mr. Troup's

20   gang or corrections expert?  Mr. Cooper, Mr. Castle,

21   and Ms. Harbour-Valdez, Mr. Burke, can y'all live

22   with two weeks, you'll give us bullet points on your

23   people, and you can supplement later if you --

24             MR. BURKE:  Yes, Your Honor.

25             THE COURT:  All right.  And then does that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2502

1   work for you as well?

2            MR. COOPER:  Judge, I don't believe that we

3   endorsed an expert.

4            THE COURT:  I had you down as -- okay, so

5   this is a placeholder.

6            MR. COOPER:  I think we just declined to

7   endorse one particular -- or the gang expert, Mr.

8   McReynolds.  We chose to decline to endorse him, and

9   I think that was the nature of that filing.

10           THE COURT:  Well, I guess then what I need

11  from you is -- I guess you need to make a decision

12  within two weeks.  You need to indicate if you're not

13  going to call an expert, state that.  If you are,

14  then in two weeks you need to provide a CV and a list

15  of opinions.

16           MR. COOPER:  We will, Your Honor.  Thank

17  you.

18           THE COURT:  Does that work for you as well,

19  Ms. Harbour-Valdez?

20           MR. BURKE:  Yes, Your Honor.

21           THE COURT:  Is that satisfactory on that,

22  Mr. Beck?

23           MR. BECK:  That's fine, Your Honor.

24           THE COURT:  All right.  And then let's see,

25  Mario Rodriguez's expert?  Anything I need to deal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2503

```
 1   with on that one?
 2             MR. BECK:  No, Your Honor.  He's no longer
 3   a defendant.
 4             THE COURT:  We'll just put that aside.  All
 5   right.  Anything else?  Do you, at the present time,
 6   Mr. Beck, intend to Daubert challenge any of the
 7   defendants' experts?
 8             MR. BECK:  No, Your Honor.
 9             THE COURT:  Okay.  So we're looking at
10   additional Rule 16 disclosures for the defendants'
11   experts, but nothing further on that.  All right.
12   Why don't, after lunch, we do two things:  One is we
13   take up this issue, Ms. Jacks, your letter, and y'all
14   can then -- Mr. Lowry, that can be your point to
15   inform me on where we are, what I need to help you
16   with as far as experts on that.  I'll look forward to
17   the Government telling me what they're going to do,
18   if they can live with the line I'm drawing on gang
19   experts.
20             And then the Government has two choices.  I
21   think they can either go into a James hearing, or if
22   we need to do something on the gang experts, we can
23   go into that direction, but we'll probably move
24   rapidly into those two areas after lunch.
25             All right.  Mr. Castle?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2505

```
 1                MR. CASTLE:  Yes, Your Honor.
 2                THE COURT:  Let me have Mr. Villa first.
 3    He was up first.  Let me see him.
 4                MR. VILLA:  Judge, I just wanted -- I mean,
 5    I know this is sort of sua sponte with respect to the
 6    defense experts, but we did notice a couple of
 7    experts in the spring under the first deadline.  I
 8    think it was the third or second scheduling order.  I
 9    don't think the notices are deficient, but I didn't
10    want to waive any ability to call those experts
11    because they hadn't been mentioned this morning.
12                THE COURT:  Why don't you do this:  Before
13    you go to lunch, tell Ms. Solis where they are,
14    because they weren't in my bundle of material.  And
15    I'll take a look at them.  Mr. Beck, you take a look
16    at them and see if you think they are deficient.  If
17    you are, we can raise those after lunch.  You've got
18    two of them?
19                MR. VILLA:  I believe we had three,
20    although one we probably won't call anymore.  But
21    I'll identify all of them.
22                And Mr. Castle informs me he has the same
23    issue that he wanted to raise.  So --
24                THE COURT:  All right.  So if y'all just
25    tell Ms. Solis what I'm looking at.  Mr. Beck, if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2505

1    you'll take a look at them and see if you have Rule

2    16 problems with them; if not we'll move on.   If

3    there are, if we'll take those up after lunch.

4              All right.   Y'all have a good lunch.   We'll

5    meet back here in about an hour, hour and 5 minutes,

6    the best we can.   Nobody is going to start without

7    anybody.   But let's shoot for an hour.

8              (The Court stood in recess.)

9              THE COURT:   All right.   I believe Mr.

10   Benjamin has left.   Mr. Sindel, you're still here.

11   Is that where we are?

12             MR. SINDEL:   That's my punishment, Your

13   Honor.

14             THE COURT:   Okay.   All right.

15             All right.   During the break, I looked at

16   these additional notices.   So let's take those up.

17   Mr. Perez, I think, has five additional ones.   On

18   Laura Child -- well, let me ask you, did you have a

19   chance to look at these during the break, Mr. Beck?

20             MR. BECK:   Your Honor, I did not.   We were

21   working with our experts to prepare them for Daubert

22   and James hearings.   So I did not get a chance to

23   look at those.

24             THE COURT:   Okay.   Well, it looked to me

25   like Laura Child, we probably needed to supplement

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2506

1    hers, so I would just include it in the same.

2            Raymond Carrillo, I think you probably need

3    to do more.  That may be one that you're going to

4    have to supplement depending on what happens down the

5    road.  So I'm just going to plow through these unless

6    you have comments, Mr. Beck.

7            On Dr. Brislan, I thought that was pretty

8    complete, so I don't think you need to do anything

9    more on Brislan.  If the Government wants to come

10   back and ask for more, they can.

11           I think on Dr. Spence, I think you do need

12   to supplement that, so that's not adequate at the

13   present time.  So we'll do the two weeks.

14           And let me refresh my memory on French.

15   Yeah, I think we need opinions of Dr. French.  You

16   give the scope or area of testimony, but not exactly

17   what he's going to testify.  So I think we're going

18   to need more on that.  So if you'll supplement that

19   within 14 days.

20           And I believe, Mr. Lowry, you joined some

21   of those.  I don't have in my head which ones you

22   joined, but I'll put you in the same category that

23   those that need supplementing, you'll need to

24   supplement within 14 days.  Dr. Brislan, if you

25   joined Dr. Brislan, I don't think we need to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2507

```
 1   supplement that.  I think that's pretty adequate,
 2   unless the Government comes back and thinks
 3   otherwise.
 4            Let's see.  Mr. Castle for Mr. Garcia, I
 5   think you had Dr. Danielson.  I think there was
 6   sufficient disclosure on his qualifications, if I
 7   recall.  But given that you've gotten -- you now have
 8   the reports of the Government's witnesses.  I think
 9   you'll need to supplement your report.  It may be
10   that after there is more disclosure on the DNA, you
11   will need to supplement.  But I think we need more at
12   the present time.  So I'll require that.
13            And then finally -- oh, that was the notice
14   of joinder.  Let's see, Mr. Lowry, Ms. Duncan, you
15   joined Child, Carrillo, and Spence.  So you didn't do
16   Brislan.  So my rulings will apply to that.
17            Mr. Villa, I think you joined Mr. Garcia's
18   notice, Ms. Troup's notice, Mr. Sanchez.  So if you
19   have anything further on those, you'll need to do
20   those within two weeks.  Unless my memory is off, I
21   think I required supplemental disclosures in all
22   three of those.
23            All right.  Anything else on Rule 16
24   obligations?  At the present time no Daubert motions
25   from the defendants, so that should cover the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2508

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

```
 1   defendants' experts.

 2            Ms. Jacks, you may not be the right one to

 3   jump on here, but I'll start with you.  Where are we

 4   on -- and then I'll maybe go over to Mr. Lowry --

 5   where are we on the dispute about the recording

 6   devices?  Are you just waiting for a response from

 7   the Government?  Is that kind of the status of that?

 8            MS. JACKS:  We are, Your Honor.  We filed

 9   our letter, which is Document 1459, on November 20.

10   And so we haven't heard from the Government.  I think

11   what we realized is that in conducting our analysis,

12   we maybe made some assumptions about who had phones

13   and who had recording devices.  And I think what

14   we've realized is that we really need to flesh out

15   which cooperators had what devices, and go from

16   there.

17            You have seen the letter, right?

18            THE COURT:  I have.  And so let me make

19   sure I understand.  The letter is, after you sat down

20   and looked at it, you thought you needed more

21   information, you were making assumptions.  So the

22   letter reflects your need you're rethinking the

23   assumptions that you had, and now your current

24   information needs?

25            MS. JACKS:  Correct.  We also consulted
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

```
 1   some experts both in academia and in law enforcement
 2   regarding how -- regarding what is an FBI ELSUR
 3   device, as opposed to some other recording device,
 4   and how are those devices maintained and handled, and
 5   how is the integrity of the information preserved on
 6   those devices versus a cellphone, or some sort of
 7   some other recording device.  So we tried to divide
 8   up our questions very specifically to the Government,
 9   so that we could identify which recordings were made
10   on some sort of FBI dedicated and monitored recording
11   device versus some other -- by some other method.
12         THE COURT:  All right.  So you're just in
13   the waiting stage.  All right.  Do you need anything
14   from me at the present time?
15         MS. JACKS:  Well, it would be nice -- I
16   think we can't really move forward on this issue
17   until we have answers from the Government.  And then
18   we can determine whether we want to look at the
19   devices, who can look at the devices, what they need
20   to be looking for, and try to make an argument to the
21   Court about why we need that.  But until we have
22   these answers, we can move slower.
23         THE COURT:  Thank you, Ms. Jacks.
24         All right.  Mr. Lowry, you were going to, I
25   think, begin to educate me on how this is tied to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2510

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2511

```
1    some expert issue.  So let me let you -- now that
2    you've got my full attention on that issue, why don't
3    you --
4              MR. LOWRY:  Thank you, Your Honor.  I did
5    consult and conferred with Ms. Jacks both in the
6    development of the letter that was sent to the
7    Government, because after the last set of hearings,
8    it was --
9              THE COURT:  So your input is into
10   Ms. Jacks' letter.
11             MR. LOWRY:  Yes, Your Honor.  We would join
12   that letter.
13             But it was our understanding after the last
14   set of hearings that you had appointed Ms. Jacks to
15   be the point person for the defense teams, if you
16   will.  That's my interpretation of it given the
17   Court's directive.  And it seemed at the time that --
18   because there were numerous requests in motions to
19   compel addressed to the ELSUR devices, and if I
20   recall correctly the Court said, Well, I'm going to
21   appoint -- let's have one person work with the
22   Government to development access.  If memory serves
23   correctly, you were emphatic that maybe, you know, if
24   the Court was inclined to give access to those
25   devices, it would be a single defense counsel or a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2511

1    defense expert.  And as Ms. Jacks has since stated,

2    we've identified a couple of experts.  One is our

3    Mr. Kesden.  And Ms. Sirignano identified -- we have

4    the academician, and they have a retired FBI agent.

5    And if the Court's inclined to grant access to the

6    devices, if both of them could work collaboratively

7    on this, it would get it done quicker, because time

8    is of the essence as we roll into trial.

9            Now, it's my understanding from the United

10   States -- and I didn't understand the Court's ruling

11   on the ELSUR devices to actually cover the cellphones

12   as well.  But from my communications with my

13   colleagues on the other side of the case today, it

14   appears to be that the United States believed that

15   the Court's directive applied to both genres of

16   devices, both the cellphones and the ELSUR devices.

17   I didn't understand the Court's ruling to be that

18   way.  We'd like to have some guidance from the Court,

19   just so we'd like to move forth expeditiously in

20   this.  And if we could get, you know, both experts to

21   look at the cellphones, at least initially, that

22   could be accomplished much quicker and much more

23   efficiently, and pool the knowledge, both the

24   practical hands-on knowledge from the retired FBI

25   agent, and the point of view of a professor from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2512

```
 1   Carnegie Mellon University to do this more

 2   expeditiously, Your Honor.

 3           So that was the concern.  We'd like, I

 4   guess, the Court's directive on how to handle that,

 5   because there seems to be --

 6           THE COURT:  Well, this what I would think,

 7   that if you're going to have experts, it seems to me

 8   that you probably ought to go ahead and do a

 9   disclosure now on those experts.

10           MR. LOWRY:  We disclosed them.

11           THE COURT:  What are their names?

12           MR. LOWRY:  Well, Greg Kesden was in the

13   disclosure we made.  And I don't think Ms. Sirignano

14   is here, but I'm sure Mr. Adams has the disclosure

15   that the Chris Garcia team did.

16           THE COURT:  So the two experts --

17           MS. SIRIGNANO:  Judge, I'm here.  It was

18   Tim Brian in our expert notice.

19           THE COURT:  Say that again, Ms. Sirignano.

20           MS. SIRIGNANO:  Tim Brian is our computer

21   forensic expert.  He was disclosed as a retired FBI

22   agent, works with him.

23           THE COURT:  So the two experts you're

24   talking about, they've been disclosed?

25           MR. LOWRY:  Yes, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2513

1           THE COURT:  And so the question is you're

2   going to need more information before you can state

3   what they're going to testify about?

4           MR. LOWRY:  And I know that we've done this

5   in other cases.  And this is -- my understanding,

6   this is fairly routine within the Department of

7   Justice at this point.  If they have mirror images of

8   the cellphones, they could ship those to other FBI

9   offices within the country.  In a different case

10  right now I'm working with the local AUSAs that

11  shipped computer images, images of other digital

12  devices to the FBI office in Pittsburgh to work with

13  Mr. Kesden.  And that's worked out, frankly, very

14  smoothly and efficiently.  I haven't had an

15  opportunity to speak with my colleagues on the other

16  side of the case.  But something like that could

17  hasten the process, if you will.

18          THE COURT:  All right.  Thank you, Mr.

19  Lowry.  Before I hear from you, Mr. Beck, anybody

20  else on this cellphone or this recording device issue

21  on the defendants' side?

22          All right.  Mr. Beck?

23          MR. BECK:  I think we have the same

24  understanding as Mr. Lowry about the Court's order.

25  The cellphones we're making available to defense

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2514

```
 1   counsel on request.
 2          The ELSUR devices are the devices that the
 3   Court ordered us to disclose via letter to the
 4   defense, whether they're available.  I've worked with
 5   one defendants' attorney and one expert to allow them
 6   to inspect the devices, as long as that's okay with
 7   the FBI.
 8          THE COURT:  Have you gotten any more
 9   information, after you looked at this a little bit,
10   as to the FBI's position on this?  Are they that
11   nervous about an order saying one attorney and one
12   expert on the defense side look at this stuff, before
13   we go any further with a confidentiality order, that
14   they not disclose it to any of the defendants, any
15   other counsel, or anybody else, until that person
16   thinks there is something there that's worth looking
17   at?
18          MR. BECK:  Yeah, I don't think we've had a
19   lot more clear guidance.  I believe that the FBI
20   general counsel wants to be involved if we are going
21   to turn any more information --
22          THE COURT:  How do I move this forward?  If
23   I were to -- do you need a court order?  I mean, if I
24   ordered it, and then with the understanding the
25   Government could come back and ask me to reconsider
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2515

1    before anything is done, would that move things

2    forward so we can get a final answer from the FBI?

3              MR. BECK:  I mean, I think we can get

4    together and let FBI counsel know what's going on.  I

5    hasten to say no, because I think that would move it

6    forward.  And it sounds like the Court is willing to

7    reconsider once we get FBI involved.

8              THE COURT:  Why don't we do this:  Why

9    don't I order it.  Because I've thought about it, and

10   it just seems to me that we need to move this issue

11   forward a little bit.  So I'll order it produced.

12   If -- we're going to be here a few days and be back

13   soon, if the Government wants -- the FBI is that

14   uncomfortable with it, they can explain it.

15             I mean, I guess my rationale is these

16   devices were given to people, you know, who then used

17   them in the prison context.  Some of them's resumes

18   are probably not equivalent of Ms. Jacks' and the

19   experts here.  And so I think that the FBI has

20   trusted them with some people that the Court would

21   feel less comfortable with them having it than

22   Ms. Jacks and their expert.  That's sort of the

23   rationale I have.  And with the very limited

24   disclosure, just to see whether there is anything

25   moving forward on this, given where we are, and they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2516

1   have trial preparation, that's my rationale for doing

2   it.

3            MR. BECK:  I understand that, Your Honor.

4            THE COURT:  All right.  With that, okay on

5   the cellphones, Mr. Lowry?  Now we know what we're

6   doing with the devices?

7            MR. LOWRY:  Yes, Your Honor.  If we could

8   just get some guidance if our experts could work

9   collaboratively together or do you truly want us to

10  pick one --

11           THE COURT:  Right at the moment, I think

12  that I'm going to get more cooperation with the FBI

13  if we have one.  So let's -- I'll let Ms. Jacks pick

14  the one.

15           MS. JACKS:  Actually, what I'd like to do,

16  Your Honor, if you don't mind, is confer with Mr.

17  Lowry and with Ms. Sirignano, and then between us

18  we'll pick the lawyer and the expert.  How's that?

19           THE COURT:  Okay.  All right.  And then let

20  the Court and Mr. Beck know.

21           MR. BECK:  That's fine with the United

22  States.

23           THE COURT:  And let's just have one expert

24  at the present time.  And then, if this person finds

25  that something is there that needs further

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2517

 1   disclosure, we can take it an incremental step at a

 2   time.

 3            Now, on the letter, do you need the

 4   information still in the letter?

 5            MS. JACKS:  We really do, for our expert to

 6   be able to know what needs to be done.

 7            THE COURT:  Let me ask Mr. Beck, do you

 8   have a time frame in which you'll be responding to

 9   the letter, Mr. Beck?

10            MR. BECK:  I believe that they're working

11   on a response to the letter right now.  So I don't

12   know the timeframe, but I would think it would be

13   quickly.

14            THE COURT:  Why don't you propose one?

15            MR. BECK:  A week from today.

16            THE COURT:  Could you live with that,

17   Ms. Jacks?

18            MS. JACKS:  I can.

19            THE COURT:  All right.  So a week from

20   today, unless we hear otherwise, we'll get a letter

21   from the Government with a response to Ms. Jacks'

22   letter.

23            Mr. Lowry?

24            MR. LOWRY:  Your Honor, well --

25            THE COURT:  You need to talk to Ms. Jacks

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    or -- y'all talk.
 2            MS. JACKS:  I think Mr. Lowry has just
 3    reminded me that we owe some sort of disclosure
 4    within two weeks.  I'd ask that that disclosure be
 5    within two weeks of when we get the Government's
 6    response to the letter.
 7            THE COURT:  Give me what you have in two
 8    weeks.  I've got to stick tight on that deadline, or
 9    I'm going to start making individual ones on the
10    defense side.  And I can't do that.  So give me what
11    you got in two weeks.  And then you can supplement.
12            All right.  Anything else on the phones,
13    the recording devices, Mr. Lowry, Ms. Jacks?  Any
14    other defendants?
15            MR. LOWRY:  No, Your Honor.
16            THE COURT:  Mr. Beck, anything further on
17    that?
18            MR. BECK:  No, Your Honor.
19            THE COURT:  All right.  So how does the
20    Government wish to proceed?  Let's go to the -- why
21    don't we discuss where we were before lunch on how
22    the Government wants to -- whether they can live
23    with, even if they don't agree with -- live with my
24    operating rule for the Government gang expert.
25            MR. BECK:  Your Honor, I don't think so.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think we intend to put on our -- we've got two

2    experts here.  We've got Chris Cupit and Ron Martin.

3            THE COURT:  Those are both your gang

4    experts?

5            MR. BECK:  Yeah.  Sergeant Sapien is not

6    available right now.

7            THE COURT:  Okay.

8            MR. BECK:  But we've got them, we intend to

9    proceed with them.

10           But before we do that, we were hoping that

11   we could proceed with the James hearing, as it

12   concerns the Molina murder at this time.  And then

13   stop that once we're done with the statements from

14   the Molina murder, and then probably at that time go

15   into the Daubert hearing for Mr. Cupit and

16   Mr. Martin.

17           THE COURT:  All right.  Any objections from

18   the defendants to so proceeding?

19       A.   All right.  Mr. Beck, do you wish to

20   present you -- or Mr. Castellano, if you want to

21   present your evidence or witnesses.

22                   JAMES HEARING

23           MR. CASTELLANO:  Yes, Your Honor.  The

24   United States calls Special Agent Bryan Acee.

25           THE COURT:  Mr. Acee, if you'll come up and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2520

```
 1    stand next to the witness box on my right, your left.

 2    Before you're seated, Ms. Solis will swear you in.

 3                      BRYAN ACEE,

 4         after having been first duly sworn under oath,

 5         was questioned and testified as follows:

 6                      DIRECT EXAMINATION

 7              THE CLERK:  Take a seat and state and spell

 8    your name for the record.

 9              THE WITNESS:  My name is Bryan Acee,

10    B-R-Y-A-N, A-C-E-E.

11              THE COURT:  Mr. Acee, Mr. Castellano.

12              MR. CASTELLANO:  Thank you, Your Honor.

13              Your Honor, I'm going to try to -- in terms

14    of organization, what we tried to do over the lunch

15    hour was probably break this down potentially by

16    witness, and by count or charge.  So, as Mr. Beck

17    indicated, this is a discussion of statements related

18    to the Molina murder, which is Counts 6 and 7,

19    occurring on or about March 7, 2014.

20    BY MR. CASTELLANO:

21         Q.   Okay.  Agent Acee, I want to talk to you

22    about a witness named Lupe Urquizo.  Are you familiar

23    with him?

24         A.   I am.

25         Q.   And have you had a chance to visit with him
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2521

1    and discuss any statements made in relation to the

2    Molina murder?

3         A.   I have a couple times.

4         Q.   Let me start with the statement by Anthony

5    Ray Baca to Mr. Urquizo about the Molina murder.

6    What do you recall about shot callers being

7    mentioned?

8         A.   Mr. Urquizo told me that he had a

9    conversation with Mr. Baca, in which Mr. Baca told

10   Urquizo to get with the shot callers down at the

11   Southern New Mexico Correctional Facility, or

12   Southern, and to let them know that Baca wanted

13   Javier Molina hit.  The "he" being Baca reiterated to

14   Urquizo to make sure those guys knew to take care of

15   Molina, and that if they didn't do it, he told

16   Urquizo to just stab him.

17        Q.   When you say "stab him," who are you

18   referring to?

19        A.   Molina.

20        Q.   And do you know the approximate timeframe

21   in which these statements were made, how close in

22   time to when Mr. Urquizo was moved down to the

23   Southern facility?

24        A.   I don't.  I just recall off the top of my

25   head that it was before Urquizo went down while he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2522

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 148

1   was still at the Level 6 up at PNM, the north

2   facility.

3        Q.   And were you aware whether David Calbert

4   was involved with the paperwork from the north to the

5   south?

6        A.   Yes, Urquizo told me that Calbert brought

7   him that paperwork.

8        Q.   When we refer to the "paperwork," are we

9   talking about the paperwork indicating or

10  substantiating the hit on Javier Molina?

11       A.   Yes, I believe specifically it was a

12  two-page LCPD report, or two pages from that report.

13       Q.   What was the purpose of the report being

14  moved from the north facility down to the south?

15       A.   Well, at the time there was some

16  disagreement within the SNM about the significance of

17  the paperwork.  There had been some hits carried out

18  where it was on one or two members' word.  And

19  members were now, at this time, insisting on actually

20  seeing the paperwork.  So that was the significance

21  of the actual documents traveling down to the

22  south -- excuse me to the Southern facility, where

23  Molina was located.

24       Q.   And just so the Court understands, when we

25  talk about PNM North and South, is that a different

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 142

1   facility than the Southern New Mexico Correctional

2   Facility?

3       A.   It is.  If you think of PNM as a campus, if

4   you will, there are different facilities there.  So

5   the north facility is the Level 6.  The south

6   facility is the Level 5.  And then you also will hear

7   us talk about the Southern New Mexico Correctional

8   Facility, which is here in Las Cruces, which is

9   referred to as "Southern."

10          MR. DAVIS:  Judge, we're having difficulty

11  hearing back here.  If he could speak into the

12  microphone.

13          THE COURT:  Pull it a little closer to you,

14  Mr. Acee.

15      Q.   What did Mr. Urquizo say about conversation

16  that he and David Calbert had about the paperwork?

17      A.   Well, Calbert explained to Urquizo that

18  Baca wanted the paperwork to go down to Southern in

19  Las Cruces.  And Urquizo said, I already know,

20  because he'd already talked to Baca about that

21  paperwork going down.

22      Q.   And at some point after that was Mr.

23  Urquizo transferred to the Southern New Mexico

24  Correctional Facility in or near Las Cruces?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       Q.    Tell the Court about the conversation that

2    Mr. Urquizo had with Mario Rodriguez and Timothy

3    Martinez?

4       A.    Urquizo had a conversation with both Mario

5    Rodriguez and Timothy Martinez once he arrived down

6    at Southern.  At that time, Urquizo was in I believe

7    they call it orientation, so he wasn't out in the

8    population, so to speak, with the other inmates,

9    where he could freely talk.  So they were passing

10   notes on a window.

11           And in the first note that Urquizo

12   received, it was from Mario Rodriguez and Timothy

13   Martinez, and they were asking about the paperwork on

14   Javier Molina and Jerry Montoya, because they had

15   been expecting paperwork for both.  Urquizo wrote

16   back saying that he had the paperwork for Molina

17   only.  He didn't have the paperwork for JR, for

18   Montoya.  But that it was still in his property.  As

19   he sat in this cell in orientation, he didn't have

20   his property.

21           So some additional conversations happened

22   the next day.  A few of the other members came back

23   to find out if Urquizo had his property.  And they're

24   passing notes again -- or holding notes up to the

25   window, excuse me.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492
                              
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                 e-mail: info@litsupport.com

DNM 2525

```
 1              So the following day, Carlos Herrera
 2    inquired whether or not Urquizo had the paperwork.
 3    Urquizo had just received his box of property.  And
 4    amongst that he had an envelope that he'd indicated
 5    was his legal paperwork.  And among dozens of other
 6    documents from past cases were these two LCPD -- two
 7    documents from the LCPD report that indicated Molina
 8    cooperated or gave a statement to the police.
 9              So he retrieved that and turned it over to
10    Carlos Herrera, Dale Chavez, Juan Mendez, Alex Munoz.
11    Those four "S" members reviewed the paperwork, and
12    each made a comment to the effect of, Damn, this is
13    it?  It's just two sentences in this report.
14         Q.   Did Mr. Urquizo and Mr. Herrera have any
15    other conversations related to the Molina hit?
16         A.   They did.  I'm just looking over my notes.
17              MR. VILLA:  Your Honor, I don't have a
18    problem with Agent Acee refreshing his recollection.
19    But I'd ask that he not testify to his notes or have
20    them in front of him unless he's refreshing his
21    recollection.
22              THE COURT:  Well, it's a James hearing.
23    You can cross-examine him about what he's looking at
24    and things, but I'll let him get this information out
25    to you in the form that the Government wants.  But
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2526

```
 1    you can cross-examine him about it.  Overruled.
 2         Q.   Let me move forward to Mr. Rodriguez
 3    showing the paperwork to Daniel Sanchez.  Is there
 4    any indication that Mr. Rodriguez wrote a letter to
 5    Urquizo?
 6         A.   Yes.
 7         Q.   What did he do with it?
 8         A.   He sent it under the door.  And in that
 9    Rodriguez -- he communicated that Rodriguez and
10    Sanchez were going to move on Molina.  Rodriguez
11    explained the plan.  And apologized to Urquizo for
12    moving so quickly.  And that the reason he did that
13    is during the Molina hit there were actually supposed
14    to be three individuals that were supposed to be hit
15    at the same time.  However, the paperwork didn't come
16    down supporting the subject being hit that Urquizo
17    wanted hit.  So that's what that apology was about.
18    And he wanted to -- he, Rodriguez -- wanted to make
19    sure that Urquizo wasn't upset about that fact.  He
20    had a lot of respect for him, and just said, Hey,
21    we've got to move, and it's going to happen quickly.
22              And that was generally what was in that
23    letter.  And Urquizo said he wrote back to Rodriguez
24    and said he understood.
25         Q.   And I mentioned Rodriguez.  Are we talking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2527

1    about Mario Rodriguez?

2        A.   Yes.

3        Q.   I'm going to talk to you about something

4    that Mr. Urquizo heard Mr. Sanchez say during the

5    Molina hit.

6        A.   It was actually what I would characterize

7    toward the end of the hit, because now the

8    correctional officers are starting to respond to the

9    pod, and they're running there en masse.  And Urquizo

10   said he heard Daniel Sanchez yell, "Fuck, yeah."

11       Q.   Okay.  While we're on Mr. Urquizo, I'm

12   going to talk about a couple of statements related to

13   the Julian Romero assault.

14            MR. CASTELLANO:  Your Honor, that's Count

15   8.

16       Q.   Okay.  While we're on him, what did you

17   learn from Mr. Urquizo about conveying information

18   regarding the Julian Romero assault?

19       A.   Julian Romero was down here at the Southern

20   Facility at the time Urquizo and another member named

21   Jonathan Gomez were in charge of the pod.  Word had

22   come down via Jonathan Gomez that they were to hit

23   Julian Romero.  And they picked Conrad Villegas to do

24   that.  They discussed that.  They agreed to it, and

25   they gave that instruction to Conrad.  And he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2528

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154

```
 1   followed through with it.
 2          The other thing that Urquizo related was
 3   that it was important to Baca -- that is Anthony
 4   Baca -- that Julian not be killed; that he just be
 5   stabbed or beat up, but not killed.
 6          Q.   Let me go back to the Molina murder and
 7   talk about Jerry Montoya.  Are you aware of
 8   statements that he made related to the Javier Molina
 9   murder?
10          A.   Yes.
11          Q.   And were some of these statements made on
12   the actual day of the murder?
13          A.   Yes.
14          MR. LOWRY:  Your Honor, can I just raise a
15   quick objection.  This happened so quickly, I didn't
16   realize there is two other witnesses that are in the
17   courtroom.  Can we invoke the rule?
18          THE COURT:  Who are your other witnesses
19   here?
20          MR. CASTELLANO:  Nancy Stemo is one
21   witness, and --
22          MR. LOWRY:  I believe it's Mr. Cupit.
23          MR. CASTELLANO:  The two individuals in
24   back are Mr. Cupit and Mr. Martin, the experts for
25   the other hearing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 2529

```
 1                    THE COURT:  I think the experts can stay.
 2      Do you have another witness you're presenting on the
 3      James hearing?
 4                    MR. CASTELLANO:  No, only -- Ms. Stemo is
 5      the only one here in the court presently, so yes, she
 6      would be the other witness.
 7                    THE COURT:  On the James hearing?
 8                    MR. CASTELLANO:  Yes.
 9                    THE COURT:  Let's exclude her from the
10      proceedings.  The experts can stay.
11                    MR. CASTELLANO:  All right.  The witness
12      has left the room, Your Honor.  So I'll proceed, if
13      that's okay with the Court.
14                    THE COURT:  You may.
15      BY MR. CASTELLANO:
16          Q.   Okay.  So tell us about what Mr. Rodriguez,
17      Mario Rodriguez, said or did with Mr. Montoya, that's
18      Jerry Montoya?
19          A.   Mr. Montoya told me that sometime after
20      5:00 p.m., while in the pod, Mario Rodriguez called
21      out to him and told him to follow him to Rodriguez'
22      cell.  Rodriguez gave Montoya a shank and said that
23      it was from Rudy Perez.  Rodriguez told Montoya that
24      it was time to put in some work.
25                    Montoya asked who, inquiring who was going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2530

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2531

1   to be the recipient of the work, if you will.  And

2   Rodriguez answered "Javier."

3           Montoya asked, "Why?"

4           And Rodriguez said, "Because he's a rat."

5   Montoya asked to see the paperwork, and Rodriguez

6   said that it had already been passed to another pod,

7   but that he didn't need to worry because he,

8   Rodriguez, had verified it, as had "Dan Dan" or

9   Daniel Sanchez.  Montoya had some other questions and

10  asked where he was to actually hit Molina.  Rodriguez

11  told him that it would be in Molina's cell.

12          Montoya protested a little bit and said

13  that he didn't think that would be a good location

14  because of the cameras.  He argued about the angles

15  of the cameras with Rodriguez.  And Rodriguez

16  ultimately said, "Dan doesn't want the cameras

17  covered.  He has an evidentiary hearing coming up,

18  and needs to be seen on camera."

19      Q.   When you say "Dan," who do you understand

20  that to be?

21          THE COURT:  Do you have an objection, Mr.

22  Lowry?

23          MR. LOWRY:  No.  I just want to point out

24  for the record that Special Agent Acee was reading

25  off his notes, Your Honor, during that entire

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    response.
 2              THE COURT:  Okay.
 3              MR. LOWRY:  That wasn't an independent
 4    recollection, but it was a direct recital from his
 5    notes, Your Honor.
 6              THE COURT:  All right.
 7    BY MR. CASTELLANO:
 8         Q.   We're going back to the question of who you
 9    understood the "Dan" to be?
10         A.   Daniel Sanchez.
11         Q.   Ultimately, what was Mr. Montoya's
12    response?
13         A.   He accepted the directive and said that
14    he'd help.
15         Q.   Did he inquire whether anyone else would be
16    helping?
17         A.   He did.
18         Q.   What was Mr. Rodriguez' response?
19         A.   Mr. Rodriguez explained to Mr. Montoya that
20    Jerry Armenta would also have a shank and would help,
21    and that Daniel Sanchez had already talked to Armenta
22    and Armenta was ready.  He also told Montoya that
23    "Red," or Timothy Martinez would be helping; that
24    he'd go into Molina's cell and get him high, and then
25    knock him out, so that the two Jerrys, Jerry Montoya
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2532

1    and Jerry Armenta, could come in and commence with

2    stabbing Molina.

3         Q.   So is it your understanding that Timothy

4    Martinez was supposed to knock out or incapacitate

5    Mr. Molina before he was stabbed?

6         A.   Yes.

7         Q.   What happened when Mr. Montoya went back to

8    his cell?

9         A.   Dan Sanchez came in sometime later and

10   asked, You know what's up?"

11             Montoya said, "Yeah."

12             Sanchez said, "Okay, be trucha," which I

13   understand to mean to be careful or to watch out.

14        Q.   And was there any conversation between

15   Jerry Montoya and Jerry Armenta related to the Molina

16   murder?

17        A.   Yes, Armenta explained that he was -- he,

18   Armenta -- was perching in front of his cell, which

19   is just kind of squatting and hanging out.  Daniel

20   Sanchez signaled for Montoya to go upstairs because

21   he'd been downstairs.

22             Montoya did.  After getting to the top of

23   the stairs, he squatted next to Armenta, and in a low

24   voice said to him, said to Armenta that, "It's him or

25   us," and by "him," he was referring to Molina.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

1   Armenta basically repeated the same thing back, like,

2   "Yeah, it's either him or us."

3       Q.   Let me turn your attention to statements

4   taken from Timothy Martinez.  You referred to Timothy

5   Martinez as also related to the Molina murder?

6       A.   I have several times.

7       Q.   What do you recall about Timothy Martinez

8   saying that Mario Rodriguez said to him that he was

9   supposed to do before the Molina murder?

10      A.   So on the morning of the Molina murder, Tim

11  Martinez had come back from his work detail at the

12  wheelchair program.  And shortly after entering the

13  pod, Mario Rodriguez called him over, and then told

14  him to go get high.  Timothy thought that was an

15  unusual request.  I think he described himself as not

16  a regular user of drugs.  And so he asked Mario why.

17  Mario Rodriguez again told him, "Just trust me.  Go

18  get high."  And Timothy kind of objected to that and

19  kept questioning him.  So Mario said, "Sit down, I'll

20  explain what's going on."  And then they had a

21  conversation about what was to take place.

22      Q.   Did the conversation cover the paperwork on

23  Javier Molina?

24      A.   Yes.

25      Q.   What was explained to Mr. Martinez by Mario

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2534

1  Rodriguez?

2      A.   It was explained to him that the paperwork

3  on Molina had arrived; that he was a snitch, and that

4  he was to get hit.  And then from there they went

5  into more detail.

6      Q.   And what did Mr. Rodriguez tell Timothy

7  Martinez what Daniel Sanchez said about Martinez

8  getting involved?

9      A.   That Daniel Sanchez wanted Timothy to go,

10  to be on the mission.

11      Q.   When you say "the mission," what are you

12  talking about?

13      A.   To hit Molina.  And that Daniel Sanchez had

14  insisted on Martinez participating.  Specifically

15  Rodriguez said, "Dan is making you go."

16          Martinez said, "Okay.  What do I have to

17  do?"

18          Rodriguez answered, "Dan wants you to go

19  into the room and beat him up so he can't leave."  By

20  "him," that would be Molina.  "So that he can't leave

21  the room and Jerry and Jerry" -- being Montoya and

22  Armenta -- "will go in and hit him.  They have some

23  bone crushers.  And Molina has to go."  By bone

24  crushers, that's a slang term for larger shanks.

25      Q.   What was Martinez' response to that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2535

```
1        A.   He said, "Okay, I'm going to go get high."

2        Q.   So was that an indication that he was going

3   to go get high in preparation for the Molina murder?

4        A.   Yes.

5        Q.   At some point was there an indication by

6   Mr. Martinez that Daniel Sanchez talked to him about

7   the Molina murder?

8        A.   Yes.  Sanchez was in the cell next door to

9   Martinez and began pounding on the wall.  Sanchez

10  asked of Martinez, "Did 'Blue' talk to you" --

11  something to that effect, "'Blue' talk to you yet?"

12  And Martinez told him that he, "Blue," or Rodriguez

13  had talked to him.

14       Q.   What was Daniel Sanchez' explanation to

15  Timothy Martinez about why he should be involved?

16       A.   What Martinez told me -- and this is a

17  direct quote -- "You've got to do this.  You got to

18  earn your huesos," or your bones.

19            Sanchez went on about how the SNM had lost

20  respect over the years, and they needed to take

21  things back to the old days when the S used violence

22  to get respect.  Sanchez said, "S is about violence.

23  We get respect through violence."  Martinez said that

24  he questioned Sanchez about why Molina had to be hit

25  and why he needed to be involved in it.  Why he,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Martinez, needed to be involved in it.

2      Q.   What was Daniel Sanchez' explanation?

3      A.   He basically said that Martinez hadn't done

4  anything yet.  He hadn't earned his bones, hadn't

5  committed any violent acts, and that he needed to do

6  something more significant than just bring drugs into

7  the institution.

8      Q.   And did Mr. Sanchez give any ultimatum to

9  Timothy Martinez related to this hit?

10     A.   Yes.  Martinez told me that Sanchez told

11  him he'd have to do it or else.  And Martinez took

12  that to understand that "or else" would be you need

13  to do this or you're going to get hit.

14     Q.   Now, did Mario Rodriguez at some point

15  explain to Timothy Martinez that he didn't want him

16  to go?  By that I mean go to commit the murder?

17     A.   Yes.  As Mr. Martinez explained it, they

18  were friends, and that he had lobbied -- he, Mario

19  Rodriguez -- had lobbied to have Timothy not go and

20  to get a pass on it.  But that Daniel Sanchez had

21  insisted.  And Rodriguez said -- and this is a quote

22  -- "But if it's your time, you've got to go.  You got

23  to do this for the family.  Then it will be someone

24  else's time."

25     Q.   Did Mr. Martinez indicate that he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2537

1    understood?

2        A.   He did.

3        Q.   And was there an explanation by Mr.

4    Martinez about something to do with Mr. Molina's

5    shank?

6        A.   Yeah, quite by coincidence, Molina -- I

7    mean, he had a shank, but he gave it to Timothy

8    Martinez that morning.  He was going to go shower, if

9    I recall.  And he said, Here, hold my shank, hold my

10   fiero, or whatever term he used.  And Timothy

11   Martinez took the shank and put it in his cell in his

12   commissary bag.  Timothy Martinez related that to

13   Mario Rodriguez.  And I think they both just thought

14   it was, based on their comments, good fortune on

15   their part that Molina wouldn't have a shank and be

16   able to fight back.

17       Q.   And what was Mr. Rodriguez' comment to

18   Timothy Martinez about having taken the shank?

19       A.   He said, "Perfect, now he can't stab you."

20       Q.   Let me turn your attention to after the

21   assault or close in time to the assault.  Did Mr.

22   Rodriguez say anything to Mr. Martinez about not

23   saying anything to others?

24       A.   He did.  He told them to stay quiet and

25   that everything would be okay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2538

1          Q.   I want to also go back to where the shank

2     came from.   What did Timothy Martinez explain about

3     at least one of the shanks?

4          A.   Martinez told me that Sanchez, Daniel

5     Sanchez, had obtained one of them from who they

6     referred to as "Fat Ass," which was sort of a

7     in-house nickname for Rudy Perez.   Sanchez had told

8     Martinez that Perez had given him two pieces of metal

9     from his walker, and that that's what they'd made the

10    shanks out of.   Sanchez had made the comment to

11    Martinez, "What else is Fat Ass going to do?"   And

12    actually, the comment made after that was Martinez'

13    opinion.   So that concluded what Sanchez said about

14    that.

15         Q.   I want to turn your attention now to

16    statements by Anthony Baca about keeping an eye on

17    Javier Molina or any distrust about him.

18         A.   Okay.

19         Q.   Is there any indication that Anthony Baca

20    was suspicious of Molina?

21         A.   Yes.   Martinez -- and this is all taking

22    place after the Molina murder; this is well after,

23    almost two years later.   Baca and Martinez are

24    incarcerated up at the Level 6 at PNM North.   And

25    Baca told Martinez, "If they would have let me out,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   Javier wouldn't be dead, and that man would still be

 2   alive.  But they didn't, and what's done is done.

 3   When they wouldn't let me out we had to make a

 4   statement.  They called my bluff.  And now they have

 5   a dead man on their hands."

 6        Q.   Was there ever any indication that Mr. Baca

 7   had kept in touch with Jonathan Gomez?

 8        A.   Yes.

 9        Q.   And what was that discussion?

10        A.   Jonathan Gomez, or "Baby G," was and is

11   often referred to as Mr. Baca's protege, and that

12   communications would come down to other members

13   through Jonathan Gomez, and that Jonathan Gomez had

14   related to Timothy Martinez and others that "Pup"

15   didn't trust Molina and to -- they should keep their

16   eye on Molina.

17        Q.   What can you tell the Court about a

18   statement by Mr. Sanchez about people just going back

19   to the old ways and not just beating people up

20   anymore?

21        A.   I thought I might have already covered

22   that, but I can go back to that.

23             Daniel Sanchez had told Martinez and others

24   within the S that the gang needed to go back to the

25   old ways, and that there would be no more just



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2540

1    beating people up.  Sanchez said, "We're going to

2    take it back to where the S is feared and respected.

3    No more jumping people.  We'll kill so people know

4    there are consequences."

5              (Mr. Benjamin entered the courtroom.)

6         Q.   I'll turn your attention to a January 26

7    statement by Timothy Martinez.  That's going to be a

8    statement relating to Javier Molina when they were in

9    the cell with him.  What was said at that point?

10        A.   I had some follow-up questions for Mr.

11   Martinez after the first debrief.  So I specifically

12   asked what conversation or what statements were made

13   by Mario Rodriguez when they were in the cell, in

14   Molina's cell.  And Martinez said that Mario

15   Rodriguez was standing in the doorway.  And as Molina

16   was getting up, Mario Rodriguez said, "He's getting

17   up.  What the fuck?"

18        Q.   And was Mr. Molina supposed to be getting

19   up or was he supposed to be incapacitated?

20        A.   No, he was supposed to be knocked out.

21        Q.   Let me turn your attention now to

22   statements by Mr. Baca to Mr. Martinez about hitting

23   Corrections Department officials.

24              MR. CASTELLANO:  Your Honor, this is now

25   going to relate to Counts 9 and 10.  That's the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2541

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 162542

1   conspiracy to murder Dwayne Santistevan, and Count 9

2   and 10 is conspiracy to murder Gregg Marcantel.

3       Q.   So if you can, what did Mr. Baca say to Mr.

4   Martinez about hitting corrections officials?

5       A.   This conversation took place after Baca

6   kind of went on a rant with Martinez about Javier

7   Molina, and the fact that the Corrections Department

8   should have listened to him, Baca.

9            Baca told Martinez that there was stuff in

10  the works for Marcantel and Santistevan.

11  Specifically, he said that he'd like to get the

12  wardens, too.  Baca explained that to Martinez, that

13  "If we hit them, what's the worst that's going to

14  happen?  They'll send us out of state, but then

15  they'll ship us back.  And then they'll know we're

16  for real.  It started with Javier Molina, and now it

17  continues.  Javier was a building block for bigger

18  jobs for Marcantel and for the respect we once had."

19      Q.   And what about statements relating from --

20  to Timothy Martinez by Mr. Garcia, Christopher

21  Garcia?

22      A.   That conversation took place after the

23  first wave of indictments and take-down arrests.

24  When they were out at the Otero prison facility,

25  Martinez said that Chris Garcia -- they were actually

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2542

1    talking about the guy named Jeremiah Martinez, a/k/a

2    "Cyclone."  And the conversation turned to Gregg

3    Marcantel.  At the time, Chris Garcia was upset about

4    the situation and blamed it on Baca.  He specifically

5    said to Martinez, "Pup" -- which is an alias for Baca

6    -- "called me saying he needed guns.  It was right

7    after the Holly Holmes fight and people were shooting

8    guns in the air.  So "Pup" tells me he needs some

9    guns for a job to hit Marcantel and Santistevan.  And

10   I thought:  Who the fuck is going to do that?  'Pup'

11   was talking all drunk, saying Krazo" -- who is Eric

12   Duran -- "had a phone.  I didn't trust Krazo so

13   anyway."

14        Q.   And that was a statement by Christopher

15   Garcia?

16        A.   It was.  He and Martinez continued to talk

17   about it.  And that's where this Jeremiah Martinez

18   comes up, and how they acquire the firearm that's to

19   be used.

20        Q.   What was the nature of that conversation?

21        A.   Garcia was kind of laying out what happened

22   with the Marcantel and the Santistevan hit, or the

23   planned hit, and why it was so screwed up.  And he

24   said, "I called 'Cyclone'" -- in this case that's

25   Jeremiah Martinez -- "for the guns.  He gave me some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2543

```
 1   piece of shit .22 or .25" -- caliber.  "Those fucking
 2   things weren't going to do shit.  They would have
 3   just made Marcantel mad.  'Cyclone' claimed it was
 4   good one.  He had used it a few times."  And Garcia
 5   said, "It was a piece of shit, maybe one or two shots
 6   because the clip was all fucked up."
 7       Q.   All right.  Let me turn your attention now
 8   to statements taken from Jerry Armenta.
 9       A.   Mr. Castellano, I am happy to do that one,
10   but I think Agent Stemo was on that one.
11       Q.   Oh, was she on that one?
12            MR. CASTELLANO:  Your Honor, at this point,
13   I pass the witness related to these statements.
14            THE COURT:  All right.  Thank you, Mr.
15   Castellano.
16            Who wants to go first?  Mr. Villa?
17            MR. VILLA:  I'm happy to, Your Honor.
18            THE COURT:  Do you want to go first?  Y'all
19   decide.  I'm not --
20            MR. LOWRY:  No, Your Honor.  Under Rule
21   613, I believe we're entitled to see Mr. Acee's
22   notes.  I mean, he's read extensively from his notes
23   throughout his entire testimony.
24            MS. JACKS:  I would join.
25            MR. LOWRY:  I think, Your Honor, if we
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2544

```
 1    could take an afternoon recess to allow the defense

 2    teams an opportunity to review the notes, which we're

 3    entitled to do under Rule 613.

 4            THE COURT:  You can look at the notes.  But

 5    let's go ahead with cross-examination.  Who is going

 6    to do the cross-examination?

 7            MR. VILLA:  I'm not concerned about the

 8    order, but I think the purpose of looking at the

 9    notes would be to aid the cross-examination.

10            THE COURT:  Well, take a look at them.  Ask

11    him for them.

12            MR. VILLA:  Do you want us to do it now?

13            THE COURT:  You can do it now.  But let's

14    keep the pace up on cross-examination.  It's a little

15    bit of an ordeal getting people in and out, so --

16            MR. LOWRY:  Your Honor, is it okay if I sit

17    next to him?

18            THE COURT:  You bet.  You can look at it

19    together.

20            MR. CASTELLANO:  Your Honor, I'll object to

21    the extent that many of those are not his statements.

22    613 refers to his statements.  So for any of those

23    not prepared by Agent Acee, I would object.

24            MS. JACKS:  I think it's 612, and I think

25    if he looks at any writing, we're entitled to see it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2545

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172

```
 1              THE COURT:  You can look at the notes.
 2              MS. JACKS:  Your Honor, it's 24 pages.
 3    There are how many attorneys here attempting to read
 4    it.  I'm wondering if we could get some copies made
 5    before we proceed.
 6              THE COURT:  I'm sure y'all have some
 7    questions of Mr. Acee about his testimony.  Y'all
 8    have been waiting for it for a while, so I'm sure
 9    there are some things you can do.  Y'all can take the
10    notes back.  One of you can start asking some
11    questions that you've been wanting to ask him for a
12    while.
13              MR. VILLA:  Your Honor, I've got a few
14    questions that I'll ask while my colleagues are
15    looking at these, and let them clean it up
16    afterwards, I guess.
17              THE COURT:  All right.  Go ahead, Mr.
18    Villa.
19                        EXAMINATION
20    BY MR. VILLA:
21         Q.   Agent Acee, good afternoon.
22         A.   Good afternoon.
23         Q.   Let's start with the conversations you
24    relayed from Mr. Urquizo.  I believe you testified --
25    and I'm just going to jump ahead to the point in time
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    when Mr. Urquizo and Mario Rodriguez and Timothy

 2    Martinez are passing notes.

 3         A.   Yes.

 4         Q.   So this occurred at Southern New Mexico

 5    Correctional Facility?

 6         A.   Yes.

 7         Q.   At the time Mr. Urquizo had been recently

 8    transferred to Southern New Mexico from PNM?

 9         A.   Correct.

10         Q.   When was Mr. Urquizo transferred?

11         MS. ARMIJO:   Your Honor, if I may, I

12    believe they've taken Agent Acee's notes to go and

13    make copies of.   Some of his notes may not have been

14    disclosed yet.   We don't mind them looking at them.

15    But we do object to the defense making copies of

16    them, which we don't have control of.

17         THE COURT:   Don't make copies.   That wasn't

18    what I intended.   So somebody go back and do that.

19    That's not what I said you could do.   I said you

20    could look at them.

21         MS. ARMIJO:   Sorry, Your Honor.

22         THE COURT:   Mr. Villa.

23         A.   Mr. Villa, off the top of my head, I'm not

24    sure the exact dates of what his transfer were.

25         Q.   Can you tell me relative in time to when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172548

1    Mr. Molina was murdered?

2        A.   Right before.

3        Q.   When you say right before, we're talking

4    just days?

5        A.   Days.  Because, as I recall, the

6    orientation is two days, so it was within two or

7    three days.

8        Q.   And orientation, that's the point when

9    someone is brought to a new facility and they're not

10   released to population and they go through some sort

11   of process?

12       A.   I believe that's correct.

13       Q.   It's your understanding that period is

14   approximately two days?

15       A.   That's my understanding.

16       Q.   So Mr. Urquizo gets transferred down to

17   Southern from PNM -- and I tend to refer to

18   Southern -- Las Cruces as Southern, and PNM South as

19   the South, if that's okay?

20       A.   I agree with you.

21       Q.   Okay.  So Mr. Urquizo is transferred down

22   to Southern.  And within a couple of days he's out of

23   the orientation?

24       A.   Correct.

25       Q.   And isn't it true that he was placed into

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2548

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 174

1   what I'll call yellow pod.  I don't know the exact

2   number, but that's the name of the housing unit that

3   he was in?

4        A.   My recollection is the same.

5        Q.   The adjacent housing pod is blue pod;

6   correct?

7        A.   Yes.

8        Q.   And it's in the blue pod where Mr. Molina

9   was?

10       A.   Yes.

11       Q.   It's in the blue pod where Mr. Molina was

12  attacked and stabbed and murdered?

13       A.   Yes.

14       Q.   So while the inmate is in orientation, they

15  don't get to get out into the pod?

16       A.   That's my understanding.  I've not

17  witnessed that.  I've never worked for Corrections,

18  but that's how it's been explained to me.

19       Q.   Explained to you by those in Corrections?

20       A.   Yes.

21       Q.   And when these conversations took place

22  between Mr. Urquizo, was it after orientation -- I'm

23  sorry, Mr. Urquizo, Mario Rodriguez, and Timothy

24  Martinez?

25       A.   I think that it's happening as part of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2549

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 175 2550

```
 1    orientation process.  And I say that because Mr.
 2    Urquizo was not free to exit his cell, so his house
 3    or his cell was closed, and he was having to pass
 4    notes through a window and converse through a door.
 5    I just don't know enough about the orientation.  But
 6    at some point he arrives at the facility and there is
 7    an orientation and he ends up assigned to yellow pod.
 8         Q.   And within yellow pod he's got his own
 9    cell?
10         A.   That's my understanding, yes.
11         Q.   The cell is shut and locked during
12    orientation?
13         A.   Yes.
14         Q.   He can't get out of that cell?
15         A.   Again, I've never been there.  That's
16    what's been explained to me.  I haven't witnessed it
17    or observed anyone go through orientation, but that's
18    my understanding from talking to Corrections folks
19    and the cooperating defendants.
20         Q.   Is that how Mr. Urquizo explained it to
21    you?
22         A.   Yes.
23         Q.   Mario Rodriguez and Timothy Martinez were,
24    I think you testified on direct, passing notes
25    discussing with Urquizo the paperwork that he had?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 176

1       A.   Yes.

2       Q.   Mario Rodriguez and Timothy Martinez were

3   housed in blue pod; correct?

4       A.   Correct.

5       Q.   The adjacent pod?

6       A.   Yes.

7       Q.   And those two pods are separated by a door?

8       A.   A couple.

9       Q.   And if you will, the pods -- I kind of

10  think of them as pie-shaped, where the control center

11  is at the tip of the pie, and the crust of the pie

12  would be where the cells are?

13          MR. CASTELLANO:  Objection, Your Honor.

14  This isn't related to any statements.  We're only

15  talking about statements at this point.

16          THE COURT:  Well, give me -- tie it in to

17  what the James hearing is about.

18          MR. VILLA:  Well, I'm trying to determine

19  how these conversations took place between Timothy

20  Martinez and Mario Rodriguez when they're in an

21  adjacent pod.

22          THE COURT:  I'm going to give defense

23  counsel a little leeway.  Keep it tight to the

24  statements here.  But overruled.

25      Q.   Just to paint the picture real briefly:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2551

```
 1    There is two stories, the top cells and bottom cells;
 2    correct?
 3         A.   Correct.
 4         Q.   And if you put two pie crusts together,
 5    that's where the two pies sort of adjoin each other?
 6         A.   Yes.
 7         Q.   And that door between the two pods doesn't
 8    get opened?
 9         A.   It shouldn't.
10         Q.   So it's your testimony that Urquizo tells
11    you he's passing notes of some kind between Mario
12    Rodriguez and Timothy Martinez discussing the
13    paperwork that he has brought down?
14         A.   Would you like me to explain that, sir?
15         Q.   Well, did I state your testimony correctly?
16         A.   Yes.
17         Q.   Okay.  Now, you want to provide an
18    explanation of how that took place?
19         A.   Just what Urquizo told me.
20         Q.   What did Urquizo tell you?
21         A.   That "Blue" and "Red" -- or, excuse me,
22    Rodriguez and Martinez, were on some kind of -- I
23    don't know if it was a cleaning detail or a work
24    detail or painting or something, where they were
25    outside the pod, able to walk by yellow pod.  So they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178

```
 1    held up notes.  They're standing outside yellow pod,

 2    holding up a note on the glass to that entry door.

 3    And Urquizo would either motion, or at some point he

 4    did write a note back.

 5         Q.   And "Blue" and "Red," sometimes it's

 6    easier -- Mario Rodriguez is "Blue"; right?

 7         A.   Yes.

 8         Q.   Timothy Martinez is "Red"; correct?

 9         A.   Yes.

10         Q.   Those are their nicknames?

11         A.   Yes.

12         Q.   You indicated that Mr. Urquizo at one point

13    wrote back that he had paperwork on Javier Molina but

14    not on Jerry Montoya?

15         A.   Correct.

16         Q.   Did you determine how it was that Mario

17    Rodriguez or Timothy Martinez would have known that

18    Urquizo had this paperwork?

19         A.   Well, it was -- my understanding was that

20    it was anticipated -- highly anticipated -- and

21    Urquizo explained it as everybody was really excited,

22    like the place came alive when he came down on the

23    transport with Varela.

24         Q.   Urquizo came down with Mauricio Varela?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2553

1        Q.   But he didn't tell you how it was that
2   these individuals were excited or anticipated that he
3   had this information?
4        A.   No, he just explained it as -- I mean,
5   there had been failed attempts before.  The order had
6   come down at least three times.  So this time it was
7   being talked about again.  But this time, paperwork
8   was actually supposed to show up.  So people were now
9   asking:  Did the paperwork show up?
10            MS. JACKS:  Your Honor, I'm going to
11   object.  This is unclear whether this is a narrative
12   of this witness, or something that Urquizo told him.
13            THE COURT:  Well, I'll let Mr. Villa
14   control his own cross-examination.  Overruled.
15            Mr. Villa.
16        Q.   Let me ask you this:  Mr. Urquizo told you
17   that the order had been made three different times?
18        A.   Well, several defendants have told me that.
19   Urquizo was one of them.  I'm struggling to remember
20   exactly how he said it.  But I've heard that from
21   several defendants.
22        Q.   Let's focus on Urquizo.  Your testimony is
23   that Urquizo told you the order had come to kill
24   Javier Molina three separate times?
25        A.   More than once.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2554

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2555

```
 1        Q.   More than once?

 2        A.   Yes.

 3        Q.   From whom did he say the order came?

 4        A.   I couldn't say as I sit here.

 5        Q.   Now, you indicated that there was

 6   communication between Urquizo and "Blue," Mario

 7   Rodriguez, where Mario Rodriguez apologized that one

 8   of the three people supposed to be hit wasn't part of

 9   this plan; correct?

10        A.   Correct.  I can't recall his name, but yes.

11        Q.   The name of the third person?

12        A.   Yeah, he was someone in yellow pod, I

13   believe.

14        Q.   The other two would be Javier Molina and

15   Jerry Montoya?

16        A.   Yes.

17        Q.   But you don't remember the name of the

18   third person in yellow pod?

19        A.   I think it's in my report, which I don't

20   have in front of me anymore.

21        Q.   The one that was taken off --

22        A.   Yes.

23        Q.   See if we can get that back.

24             MR. LOWRY:  May I approach the witness,

25   Your Honor?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  You may.
 2         Q.   Mr. Acee, would you take a look at your
 3    notes and see if that refreshes your recollection as
 4    to who the third person was?
 5         A.   You know what, sir, it doesn't, because I
 6    have a mixture of 302s here, with reports I've
 7    written.  And I also just have some Word documents
 8    with notes.  And for Urquizo I just have notes
 9    pertinent to what I thought I'd be testifying about
10    today.  So I don't actually have my 302 on that
11    interview.  I'm sorry.
12         Q.   All right.  We'll see if we can't find it
13    while I'm finishing up here.
14              And I take it, because you didn't testify
15    to it, that at no point in the communications with
16    Mr. Urquizo and Mario Rodriguez did Mario Rodriguez
17    explain how they were going to try to obtain shanks
18    to use on Javier Molina?
19         A.   No.  Urquizo didn't relate that to me.
20         Q.   And at any point in any communication you
21    had with Mr. Urquizo, he did not relate to you that
22    he had knowledge about the source of the shanks used
23    on Javier Molina?
24         A.   That's a tricky one.  Because after the
25    fact, everybody talks about it.  So that wasn't --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2556

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2557

```
 1    I'm not sure how to answer that.  After the fact, a
 2    lot of guys knew about it.  But they didn't have what
 3    I'd call direct knowledge at the time.  They heard
 4    about it later.
 5         Q.   So other cooperating defendants, other
 6    folks had heard, via rumor or otherwise, the source
 7    of the shanks?
 8         A.   Lots of people heard about it after the
 9    fact.
10         Q.   You testified that one of the things Mr.
11    Urquizo stated in his conversation with Anthony Baca,
12    while still up at PNM, was that Mr. Baca wanted
13    Urquizo to get in touch with the shot callers down at
14    Southern?
15         A.   Correct.
16         Q.   Who were those individuals?
17         A.   I don't know.  I don't know that Urquizo
18    knew until he got there.
19         Q.   Mr. Urquizo didn't relay that Mr. Baca
20    identified a specific person?
21         A.   No, his specific term was "shot callers."
22         Q.   Was it understood that Mr. Urquizo would be
23    able to figure that information out or -- is that
24    what it is?
25         A.   Yes.  I don't think it's difficult.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2557

```
 1        Q.   Mr. Baca didn't know?

 2        A.   I don't know what Baca knew.  What Urquizo

 3   told me was:  "Get in touch with the shot callers at

 4   Southern.  I think there are different ones in each

 5   pod."

 6        Q.   I'm going to jump now to Jerry Montoya.  I

 7   believe it was your testimony that Jerry Montoya told

 8   you that Mario Rodriguez talked to him and provided

 9   him a shank for the killing of Javier Molina?

10        A.   Yes.

11        Q.   And it was your testimony he said that the

12   shank was from Rudy Perez?

13        A.   Yes.

14        Q.   That's the extent of what Jerry Montoya

15   told you on that subject, right; the shank was from

16   Rudy Perez?

17        A.   On the subject of Rudy Perez?

18        Q.   This statement that Mario Rodriguez made to

19   Jerry Montoya, the shank was from Rudy Perez, right,

20   Jerry Montoya didn't tell you anything else about

21   that statement, did he?

22        A.   I'd have to refer to my 302s.  I did more

23   than one debrief of Jerry.  But, yeah, I'd want to

24   review my reports.

25        Q.   Let me ask you this:  Before we get into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2558

 1   those reports, did it matter to Mario Rodriguez --

 2   when you were interviewing Jerry Montoya, did it

 3   matter the source of the shanks that Mario Rodriguez

 4   provided to him, or just that he provided the shank?

 5        A.   Did it matter to me?

 6        Q.   Did you glean from the conversation between

 7   Jerry and Mario Rodriguez that it made any difference

 8   where the shanks came from?

 9        A.   I don't know that I understand.

10        Q.   Well, I guess what I'm trying to say is

11   whether Mario Rodriguez provided the shanks to Jerry

12   Montoya, the purpose of that was to execute the hit

13   on Javier Molina; correct?

14        A.   Right.

15        Q.   And he was providing him a murder weapon?

16        A.   Correct.

17        Q.   It didn't matter where the murder weapon

18   came from, as far as you understood that

19   conversation, right?

20        A.   No.

21        Q.   There were other shanks in the pod; you

22   knew about that?

23        A.   Yes.

24        Q.   Other places to get shanks from?

25        A.   I believe so.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2559

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2560

```
1          Q.   And it was clear from the conversation that
2     what Mario wanted was for Jerry Montoya to use that
3     shank and stab Javier Molina?
4          A.   Right.
5          Q.   Regardless of where the shank came from?
6          A.   Correct.
7               MR. VILLA:  May I have just a moment?
8               THE COURT:  You may.
9          Q.   Let's turn to Timothy Martinez.  You said
10    that Mr. Martinez told you -- I think this is the day
11    that the hit goes down, but he'd gotten back from his
12    work detail at the wheelchair program.
13         A.   Yes.
14         Q.   And the wheelchair program is a program
15    that's at Southern, where inmates fix up wheelchairs
16    and walkers and things like that?
17              MR. CASTELLANO:  Objection, Your Honor.
18    We'd ask that we not make this a discovery
19    expedition, but focus on the statement again.
20              THE COURT:  Tie that into the James
21    hearing.
22              MR. VILLA:  Well, Your Honor, the second
23    element for Mr. Perez is whether they can prove that
24    he was a participant in the conspiracy with Javier
25    Molina.  And I think to do that they're asserting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2561

```
 1    that the shank came from Mr. Perez' walker, and this
 2    wheelchair program is another source of shanks that
 3    are going to be similar or exactly the same as the
 4    one that the Government claims is Mr. Perez'?
 5              THE COURT:  Well, I'll allow a little
 6    leeway here.  It's kind of hard to cabin this stuff.
 7    But if it goes too far afield, renew your objection.
 8    Overruled.
 9         A.   You were asking me what the purpose of the
10    wheelchair program was?
11         Q.   That's right.
12         A.   I think that the inmates at Southern at
13    that time could construct wheelchairs that I think
14    were sent overseas.  I don't know if they made
15    walkers.  My understanding, walkers are something
16    that's checked out from the medical facility, or
17    assigned to an inmate by medical staff.  So I think
18    there is a distinction there.
19         Q.   All right.  So setting aside walkers that
20    come from medical staff to inmates that need a
21    walker, you don't know whether walkers were in the
22    wheelchair program, as one of the things that inmates
23    would fix up?
24         A.   I've not heard that, no.
25         Q.   Okay.  So now I want to talk to you about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2561

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2562

1    the conversation between Timothy Martinez and Daniel

2    Sanchez, where there is this conversation again about

3    the source of the shanks used for Javier Molina's

4    killing.  Did I understand your testimony to be that

5    that conversation took place after the assault?

6          A.   Do you mind if I look at my report?

7          Q.   By all means.

8          A.   I have three 302s here, debriefs of Timothy

9    Martinez.

10          Now, the first conversation that Martinez

11    and Sanchez had, it was what I would characterize as

12    Sanchez verifying, where he was asking:  "Did 'Blue'

13    talk to you yet?  Do you know what you need to do?"

14    So there was that conversation which would have

15    happened before.

16          Q.   And during that conversation they discussed

17    the shanks that Mario Rodriguez was providing?

18          A.   I don't see anything -- in that initial

19    conversation, I don't see anything referencing the

20    shanks.  It's more about the loss of respect for the

21    S over the years.

22          Q.   Okay.  And earning your bones, that sort

23    thing?

24          A.   Yes, sir.

25          Q.   When did you understand the conversation

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2562

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 188

```
 1    between Timothy Martinez and Dan Sanchez had taken
 2    place regarding where the shanks came from?
 3         A.   I'm on page 8 of my 302, my December 29,
 4    2016 debrief of Timothy.  It's on page 8, toward the
 5    bottom.  Do you want me to read it?
 6         Q.   Well, does that refresh your recollection?
 7         A.   Yes, sir.
 8         Q.   Why don't you tell me in your own words
 9    when you understood that conversation to have
10    occurred.
11         A.   I asked Timothy to tell me about the
12    shanks.  And that's when he related that Daniel
13    Sanchez told him he got them from Rudy Perez.  He
14    used a different name for him, a nickname.  But
15    that's when he mentioned that.
16         Q.   But he didn't tell you when the
17    conversation took place?
18         A.   No.
19         Q.   So you don't know when that conversation
20    occurred?
21         A.   I think it may have happened after.  But
22    that's just my opinion.
23         Q.   So you're speculating?  I mean, you didn't
24    ask Mr. Martinez when it occurred?
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2564

```
 1        Q.   You didn't ask him:  Did this occur before
 2   or after the assault?
 3        A.   That's right.
 4        Q.   Now, whenever this conversation took place,
 5   it's your testimony that "Dan Dan" told Timothy
 6   Martinez that Rudy had given him two pieces?
 7        A.   Yes.
 8        Q.   And he said something to the effect of what
 9   else is "Fat Ass" going to do?
10        A.   That's what Martinez related to me, yes.
11        Q.   And Martinez didn't -- related to you what
12   Daniel Sanchez was saying to Timothy Martinez?
13        A.   Correct.
14        Q.   And Martinez didn't ask Daniel Sanchez to
15   clarify that statement as far as you know, right?
16        A.   I don't think he did.
17        Q.   So "What else is 'Fat Ass' going to do"
18   could mean:  He's sick, he's lying in bed, he's not
19   going to be able to fight us; we're going to take his
20   stuff?
21        A.   That's not my interpretation of that.
22        Q.   But you didn't ask?
23        A.   Correct.
24        Q.   And you don't know?
25        A.   I have an idea.  But I didn't ask that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 2564

```
 1    question.
 2         Q.   Okay.  Whatever your idea is, you're
 3    speculating?
 4         A.   Yes.
 5              MR. VILLA:  Your Honor, I'm going to pass
 6    the witness on to colleagues.  But if I may, I may
 7    have a few follow-up questions.
 8              THE COURT:  All right.  Thank you, Mr.
 9    Villa.
10              Mr. Adams, did you want to go next?
11              Mr. Lowry?
12              Ms. Jacks, do you want to go?
13              MS. JACKS:  I'll defer.
14              THE COURT:  Mr. Lowry?
15                        EXAMINATION
16    BY MR. LOWRY:
17         Q.   Good afternoon, Special Agent Acee.
18              Special Agent, you said you spoke to Lupe
19    Urquizo?
20         A.   Yes.
21         Q.   And according to your testimony earlier
22    today you said that Mr. Urquizo claimed that he had
23    spoke with Mr. Baca?
24         A.   He did.
25         Q.   And where did that conversation take place?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2565

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2566

```
 1        A.   I believe that took place at the Level 6,
 2   the north facility.
 3        Q.   Level 6 is the most secure facility in the
 4   New Mexico Department of Corrections; isn't that
 5   right?
 6        A.   You're correct.
 7        Q.   Inmates aren't free to roam the halls of
 8   Level 6, are they?
 9        A.   No.  I think there are some exceptions
10   for -- I think they call them porters and stuff like
11   that, but generally, no.
12        Q.   Did you ever -- how do you know these two
13   individuals were in a position to speak with each
14   other?
15        A.   I don't.  I'm just reporting what Urquizo
16   told me.
17        Q.   So for all you know -- well, when you spoke
18   to Mr. Urquizo it was with a debrief with the United
19   States Government; correct?
20        A.   I don't think so.  I think the first time I
21   just went up to the penitentiary, and introduced
22   myself.  I don't think he had an attorney at that
23   point.
24        Q.   And he was at Level 6?
25        A.   He was at 5 or 6, so he was either at the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2567

```
1    South, or he was at the North.  I'm not sure.
2         Q.   So you don't recall where you met with him?
3         A.   I met with him at PNM.  And it's limited
4    where I can meet with these guys and talk to them.
5    But actually, come to think of it, I think it might
6    have been at the South, at the Level 5.
7         Q.   Would it refresh your recollection if you
8    looked at your 302?
9         A.   It would, except that I don't have it in
10   front of me.  I don't have the Urquizo.  The 302 that
11   I have -- I have all of the 302s of the Timothy
12   Martinez debrief.  And then the other people I spoke
13   about are just on notes.
14        Q.   Your bullet points.  Do you have any sense,
15   was Urquizo, to your knowledge, ever a porter?
16        A.   Well, I think as a cooperator he was, but
17   before that I don't know.
18        Q.   Was he a cooperator at the time he had this
19   alleged conversation with Mr. Baca?
20        A.   No.
21        Q.   So my question for you was:  Was he one of
22   these rare individuals that had the liberty to roam
23   the halls of Level 6 when this conversation took
24   place?
25        A.   Doubtful.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2567

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2568

1       Q.    So it would be a rather simple task to

2   check the housing records to see if this conversation

3   was possible, wouldn't it?

4       A.    I think so.

5       Q.    So if the housing records reflect that

6   these two individuals lived in completely different

7   units in Level 6, do you think it was possible that

8   this conversation happened?

9       A.    I think the only thing I would want to

10  check was, like, the rec schedule:  Could they have

11  been on the yard at the same time?  Because I'm not

12  exactly sure how that works.  But I think I

13  understand what you're asking.  I would want to

14  follow up and check that.

15      Q.    Did you?

16      A.    No.

17      Q.    So you don't even know if this conversation

18  was possible?

19      A.    I don't.  I'm just simply reporting what

20  Urquizo's statement is.

21      Q.    Right.  And by the time you spoke to Mr.

22  Urquizo, the take-down of the SNM -- what the

23  Government refers to as the take-down of the SNM had

24  already transpired.

25      A.    At least one or two phases, yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2568

1    Q.   Okay.  So it's fair to say that it was

2  common knowledge within the inmates residing within

3  the Department of Corrections that you could exchange

4  information, in terms to dodge an indictment?

5    A.   They might have thought that.  We were up

6  there quite a bit.

7    Q.   There was a good reason for them to think

8  that, wasn't there?

9    A.   Probably.

10   Q.   And that's because the FBI agents routinely

11 visited people, the unindicted people that resided in

12 Level 6 and Level 5?

13   A.   Probably tried to talk to all of them.

14   Q.   Right.  And that was one of the common

15 conversation techniques, if you will, to tell the

16 folks:  You can be with us or against us, your call?

17       MR. CASTELLANO:  Objection, Your Honor.

18 Once again, I'd ask that it be focused on the

19 statements.

20       MR. LOWRY:  Your Honor, I'm trying to get

21 to the context with which Mr. Urquizo made the

22 statement, because it goes to the credibility of the

23 statement.

24       THE COURT:  Well, I guess I'm not quite

25 convinced that we're at the credibility stage.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2570

```
1              MR. LOWRY:  Here's where I'm really going
2    with this, Your Honor.  The fact of the matter is, it
3    was physically impossible for this conversation to
4    have taken place based on housing records, and the
5    fact that the United States didn't even do its due
6    diligence to examine whether --
7              THE COURT:  But even if that's the case,
8    what does that have to do with --
9              MR. LOWRY:  Well, it goes into how -- the
10   United States wants to introduce these alleged
11   statements as co-conspirator statements that come in.
12   And if they never transpired, it seems to be like
13   fabrication, rather than a co-conspirator statement.
14             THE COURT:  Well --
15             MR. CASTELLANO:  That's the subject of
16   cross-examination at trial.
17             THE COURT:  Yeah, I'm going to sustain the
18   objection.  I think we're getting into the merits.
19        Q.   Do you know when the conversation took
20   place?
21        A.   Between Baca and Urquizo?
22        Q.   Correct.
23        A.   I couldn't give you a date when they were
24   both housed there.  And I agree with you that that
25   wouldn't be difficult to narrow down.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2570

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 196

```
 1          Q.   Could you give me a month?

 2          A.   No, I -- as you know, Mr. Baca was out of

 3     state a lot, transferred a lot.  I couldn't tell you.

 4          Q.   So I take it you would agree with me that

 5     the conversation didn't happen when Mr. Baca was out

 6     of the state?

 7          A.   I would agree with that.

 8          Q.   So in relation to the Molina, would you

 9     agree with me the Molina homicide or the Molina event

10     happens on March 7, 2014?

11          A.   Correct.

12          Q.   So this conversation took place -- do you

13     have any sense -- a week before?  Two weeks before?

14     A month before?  A year before?

15          A.   No, I think it's going to be the latter, as

16     opposed to the sooner.  It's not going to be in close

17     proximity to March 7, 2014.  It's going to be

18     sometime before.  As I had explained earlier, this

19     was from my recollection the third time the hit order

20     had come down.

21          Q.   Why wasn't the hit carried out, though, the

22     first two times it was ordered?

23          A.   Well, I'm going to speculate, because

24     it's --

25               MR. CASTELLANO:  Objection, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2571

1    Doesn't relate to the statements.

2            THE COURT:  Tie it to the James hearing.

3    How is this going to relate to what I've got to

4    determine?  I think we're getting a little afield.

5            MR. LOWRY:  I'll withdraw it, Your Honor.

6       Q.    Well, let's move on to you said that Mr.

7    Urquizo talked to David Calbert?

8       A.    Yes.

9       Q.    Do you know when that conversation took

10   place?

11      A.    That would be closer to the March of 2014.

12   Because Calbert was transferred from the Level 6 to

13   the Level 5, where Urquizo was at.

14      Q.    And so, if I understand this right, did Mr.

15   Calbert tell you this?  Because if I understood your

16   testimony correctly, you said Mr. Urquizo said that

17   Mr. Calbert had said --

18      A.    Correct.  So I was recalling or reading

19   from my notes, what Urquizo told me.

20      Q.    What does Mr. Calbert say?

21      A.    His statement was very, very similar to

22   Urquizo's.  I think it matched on everything.  But

23   they -- the most glaring difference I noticed had to

24   do with Varela's involvement.

25      Q.    Okay.  Explain to me the match points.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2572

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 198

1     A.   That there were two pages of paperwork.  It
2   was an LCPD report.  It looked kind of fishy, as they
3   described it; that Calbert took it to the south
4   facility, the Level 5; gave it to Urquizo, and then
5   Calbert believed that it went down -- of course he
6   remained behind.
7     Q.   And where did the conversation between Mr.
8   Baca and Mr. Calbert take place?
9     A.   Well, I'd be making an assumption there.
10     Q.   Well, you had access to Mr. Martinez;
11   correct?  Pardon me, Mr. Urquizo.
12     A.   I had access to him, I debriefed him --
13     Q.   Right.
14     A.   -- Mr. Calbert.  My interactions with Mr.
15   Calbert have been far less, because he was assigned
16   to other places when I came on board.  So I'm not
17   sure -- I have talked to him, but I don't know if I
18   wrote his debrief.
19     Q.   Would it be important for you to know when
20   the conversation took place?
21     A.   Between Calbert and Mr. Baca?
22     Q.   Correct.
23     A.   It's an important timeframe.
24     Q.   Was it before January of 2014?
25     A.   I couldn't tell you, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Was it in January of 2014?

 2        A.   Mr. Lowry, I don't mean this

 3   disrespectfully.  You keep asking, but I honestly

 4   don't know.

 5        Q.   You don't have any idea.  So if I

 6   understand your testimony correctly you don't know

 7   where, and you don't know when?

 8        A.   Well, I presume it happened at the Level 6,

 9   because Calbert went from the 6 to the 5.  But that's

10   what I was told by Urquizo.

11        Q.   And again, Calbert wasn't the type of rare

12   individual that would have an all-access pass to roam

13   Level 6?

14        A.   No, I don't think so.

15        Q.   Did Mr. Baca enjoy those kinds of

16   privileges when he was at Level 6?

17        A.   Very doubtful.

18        Q.   Why were the other -- why was -- what did

19   they tell you -- well, they said -- why the paperwork

20   was necessary for the Molina hit.  Where did this

21   requirement come from, the one you described in your

22   direct, that sort of the rules -- and I don't know

23   how to describe it -- changed, evolved, morphed?

24        A.   Well, to answer that I'd be combining what

25   dozens of SNM members have told me.  I mean, I have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    an opinion, if that's what you want to hear.

2         Q.   Well, I want to know what your

3    understanding of the rules were, how they changed,

4    why the paperwork was necessary?

5         A.   There were political hits over the years

6    that there wasn't paperwork.  And again, it wasn't a

7    snitch, and then it was later found out that it was a

8    bad hit or he wasn't a snitch.  It was a hit over

9    someone not sharing dope, or over a female.

10             And that was against the rules of old.  But

11   the rules have changed over time.

12        Q.   So that would be unauthorized, if you will?

13        A.   Well, the guys that called it wouldn't say

14   it's unauthorized.  But the general opinion is, yeah,

15   they -- the SNM needed to get control over what were

16   the rules, and what's the understanding of what the

17   rules are?  There has to be paperwork.

18        Q.   Okay.  So -- and this is where I want to

19   drill down on this, because these are supposedly

20   co-conspirator statements.  So who was in charge of

21   making the rules for this endeavor?

22        A.   Well, my understanding is that when Baca is

23   in New Mexico, when he's not out of state -- it's not

24   disputed -- that he sets the rules -- and in his

25   absence, there is a top-down mesa or a table, or a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2575

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1    panel of leaders.  And that's even disputed because

 2    of politics in different facilities.

 3         Q.   So if Mr. Baca makes the rules, why is he

 4    in Level 6?

 5              MR. CASTELLANO:  Objection, Your Honor.

 6    This is not relating to the statements.

 7              MR. LOWRY:  Your Honor, actually it is.

 8    Because what they're trying to allege -- and we've

 9    gone through this throughout the entirety of this

10    case -- but they're trying to allege a single

11    overarching conspiracy.

12              THE COURT:  Well, I'll allow this question.

13    Overruled.

14         Q.   So if Mr. Baca is the -- I believe you

15    said:  When he's in New Mexico, he's the guy?

16         A.   Correct.

17         Q.   Then why was he a Level 6 and not Southern?

18         A.   Well, Level 6 is where Department of

19    Corrections, being the leader of the S -- I think

20    over the years he's been at a lot of facilities.  But

21    at that time that's where the Department of

22    Corrections wanted to keep an eye on him as a leader.

23              A lot of the leaders of the various prison

24    gangs are housed at the Level 6.

25         Q.   But if I understand the disclosures in this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2576

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202577

1    case, he was in Level 6 because other people in

2    Southern had him sent there?

3         A.    Kited him out, I think they called it.

4         Q.    Would that be fair to say?

5         A.    I've heard that, too.  I've not seen those

6    statements.  Or I haven't talked to any SNM members

7    who said I'm the one that kited "Pup" out.  So I

8    understand how that concept works.  But I'm not sure

9    I can answer that.  I don't know what they were doing

10   back then.

11        Q.    But your colleague, Lance Roundy, was one

12   of the individuals that actually was instrumental in

13   passing along the message to the Department of

14   corrections that Mr. Baca needed to be taken from

15   Southern to Level 6 for his own safety?

16        A.    That may have happened.  I wasn't part of

17   the case when Roundy was working it.  I was working

18   other stuff in another place.

19        Q.    And you haven't studied his 302s as part of

20   your investigation in this case?

21        A.    I've read them.  I wouldn't say I studied

22   them.  But I have read them, and I know he worked

23   closely with Corrections.

24             THE COURT:  Mr. Lowry, would this be a good

25   time for us to take our afternoon break?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2577

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 203 2578

```
 1                MR. LOWRY:  Your Honor, may I review the
 2      notes during the break?
 3                THE COURT:  You can review the notes during
 4      the break.
 5                MR. LOWRY:  I won't make a copy.
 6                THE COURT:  All right.  We'll be in recess
 7      about 15 minutes.
 8                (The Court stood in recess.)
 9                (Ms. Sirignano entered the courtroom.)
10                THE COURT:  All right.  Ms. Sirignano, you
11      rose from the grave, and you're with us now?
12                MS. SIRIGNANO:  Yes, Your Honor.
13                THE COURT:  Are you feeling better?
14                MS. SIRIGNANO:  Yes.
15                THE COURT:  All right.  Mr. Mondragon, I
16      was told you came in.  All right.  You're here as
17      well.  You want to enter your appearance?
18                MR. MONDRAGON:  Yes, Your Honor.
19                THE COURT:  All right.  Okay.  Any others?
20                All right.  Mr. Acee, I'll remind you
21      you're still under oath.
22                Mr. Lowry, if you wish to continue your
23      cross-examination of Mr. Acee, you may do so at this
24      time.
25                MR. LOWRY:  I do, Your Honor.  Thank you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2578

```
 1    very much.
 2           THE COURT:  Mr. Lowry.
 3    BY MR. LOWRY:
 4       Q.   Special Agent Acee, how are you doing?
 5            Special Agent, you testified on direct
 6    that -- I believe I have this right -- that Mr.
 7    Urquizo, if I understood you correctly, once the
 8    assault on Mr. Molina takes place, Mr. Urquizo
 9    explained to you that he heard Daniel Sanchez say
10    something to the effect of "Fuck, yeah"?
11       A.   Yes.
12       Q.   Now, I just want to make sure I understand
13    this right.  Mr. Sanchez is in the blue pod?
14       A.   Correct.
15       Q.   And Mr. Urquizo was in the yellow pod?
16       A.   Yes.
17       Q.   And Mr. Urquizo, because he's a new arrival
18    in the yellow pod, is locked into his room?
19       A.   He was when he first arrived.  At the time
20    of the hit, he was or was not, I'm not sure.  I think
21    he's locked in his room, though, in yellow pod.
22       Q.   And Mr. Urquizo's claim is that he's locked
23    in his room; as the doors open between the two pods
24    he hears this?
25       A.   No, he said he just heard it.  And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2579

1    said -- I asked, "How did you know it was 'Dan Dan'?"

2         Q.   And what did he say?

3         A.   "I just know his voice, he has a unique

4    voice."  Made fun of him for being a farmer in his

5    former life or something.

6         Q.   So does he know what he's saying, "Fuck,

7    yeah" about?

8         A.   Molina getting hit was his impression.

9         Q.   How do you know that was his impression?

10        A.   That's what we talked about.  I said,

11   "Well, how do you know what was going on?  What could

12   you hear from yellow pod?  How did you know when it

13   went down?"

14             He said it was loud and he heard a lot of

15   commotion, and specifically heard "Dan Dan" say that.

16             And I had the same question, "Like, how do

17   you know it was him?"

18        Q.   Now, with regard to -- I want to move on

19   from the Molina situation to talk about the Julian

20   Romero assault.  And I believe you testified on

21   direct that -- was this still Mr. Urquizo?  What did

22   Mr. Urquizo tell you about Mr. Baca and the Julian

23   Romero?

24        A.   That Mr. Baca did not want Romero killed.

25   You know, he'd made a mistake regarding the whole

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206

```
 1    "Styx" thing, and the wife there.  But he'd been
 2    around a long time and that he should just be beat up
 3    or stabbed, but not killed.
 4         Q.   Okay.  Now, did Mr. Urquizo hear Mr. Baca
 5    say this?
 6         A.   I don't think so.  He related that that
 7    came down when Jonathan Gomez, "Baby G," came down,
 8    who I referred to as a protege of Mr. Baca's.
 9         Q.   Did you speak to Mr. Gomez?
10         A.   I have spoken with him.
11         Q.   And what did he relate to you about what
12    Mr. Baca allegedly said?
13         A.   He didn't comment on that.
14         Q.   Did you ask Mr. Gomez about that?
15         A.   Yes.
16         Q.   So he didn't confirm what Mr. Urquizo had
17    told you?
18         A.   Not exactly.
19         Q.   What do you mean "not exactly"?
20         A.   He danced around for a long time.  But no,
21    he didn't -- to answer your question, he didn't.
22         Q.   Did he get the award for Dancing With the
23    Stars?
24         A.   He was one of the better -- yeah, ones to
25    avoid answering questions about Mr. Baca.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 207

1        Q.    Did he answer the questions at all?

2        A.    In a roundabout way, yes.

3        Q.    Describe for me what you mean by "a

4    roundabout way."

5        A.    Sure.  It was -- what we were talking about

6    was why the hits hadn't happened.  The Molina hits

7    hadn't previously happened because "Baby G" or

8    Jonathan Gomez was in Southern at the time.  And I

9    had been hearing from different SNM members that the

10   order had gone down when "Big Jake," Manuel Jacob

11   Armijo was there, "Baby G," some of the Clarks.  And

12   that because Molina was from Las Cruces the hit

13   didn't take place.  So I was trying to question

14   Jonathan about that.  "Is that true?  What do you

15   think of all that?"

16          And he said there were times that orders

17   came down from the top.  He didn't say Baca

18   specifically, but orders came down from the top, and

19   basically, if he didn't agree with those orders, it

20   didn't happen.  And that was sort of his offer to me

21   to say, "See, we don't always follow the orders."

22          So that's what I'm recalling regarding Mr.

23   Baca and the Molina hit and Jonathan Gomez and our

24   conversation.

25       Q.    Now, if I understand you correctly,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

 1   Mr. Gomez says that, "We don't follow Mr. Baca's

 2   orders"?

 3       A.   Not exactly.  He just wanted to make it

 4   clear that he might receive an order, but he was his

 5   own man, and would process it, and think and consider

 6   what was best for all the guys in the pod and all the

 7   guys in the facility.  Because there was a rift

 8   between people living in the north Santa Fe, and the

 9   guys in Cruces; that the guys in the north wanted --

10   they didn't think the guys in Las Cruces had it as

11   bad as them.  So they'd send these orders down to hit

12   people, and then the guys down south wouldn't do it.

13       Q.   Now, there was a period of time in 2013,

14   where Mr. Baca lived with -- at Southern, with Mr.

15   Molina; correct?

16       A.   I believe so.  I don't know how close, in

17   what proximity.  But I believe so.

18       Q.   Would you -- if I told you that they both

19   lived in blue pod together for a period of time at

20   Southern, would you have reason to doubt that?

21            MR. CASTELLANO:  Objection, Your Honor.

22   Straying away from the statements again.

23            MR. LOWRY:  Your Honor, no, this gets right

24   back to the conspiracy.

25            THE COURT:  Well, I'm going to allow this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2583

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209

1    testimony.  Overruled.

2         A.   If you told me that, I believe you.

3         Q.   I believe you said earlier that when Mr.

4    Baca was in New Mexico, his word ruled what you claim

5    to be the SNM?

6         A.   In the latter years, yeah.  Certainly not

7    when he was a young man, but in the latter years,

8    yes.

9         Q.   Was 2013 one of the latter years?

10        A.   Yes.

11        Q.   So if Mr. Baca wanted Mr. Molina dead in

12   2013, and they lived in the same pod, why wasn't Mr.

13   Molina killed?

14             MR. CASTELLANO:  Objection, calls for

15   speculation.

16             THE COURT:  Well, would you just be

17   speculating?

18             THE WITNESS:  Yes, sir.

19             THE COURT:  Sustained.

20        Q.   I want to bring your attention to some

21   statements that you said that Tim Martinez overheard

22   Mr. Baca say.  And I believe -- and you kind of

23   pointed that out to me in your 302.  I'm happy to

24   return this to you, if you'd like.

25             MR. LOWRY:  May I approach the witness,



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2585

1    Your Honor?

2              THE COURT:  You may.

3              MR. LOWRY:  May I ask him a question first?

4        Q.    According to your 302 -- and I'm looking at

5    this, and it's page 2 of 7 on a 302, dated January

6    26, 2017.  You've written in your 302 that Baca told

7    Martinez, quote, "If they would have let me out,

8    Javier wouldn't be dead.  That man would still be

9    alive.  But they didn't, and what's done is done.

10   When they wouldn't let me out, we had to make a

11   statement.  They called my bluff.  And now they have

12   a dead man on their hands."  What did he mean by

13   "they called my bluff"?

14       A.    Well, I believe that had to do with Mr.

15   Baca's communications or requests to the Department

16   of Corrections referred to as the Jerry Roarke

17   letter.  I believe that's what it's in reference to.

18       Q.    But what was the bluff?

19       A.    I'm speculating:  That if they would

20   have -- if the Department of Corrections would have

21   followed Mr. Baca's recommendation or idea, that this

22   wouldn't have happened, the Molina homicide wouldn't

23   have happened.

24       Q.    But when Mr. Baca lived with Mr. Molina in

25   Southern, Mr. Molina was alive; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2585

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212586

```
 1         A.   He was.

 2         Q.   And why do you think that this is a

 3    statement meaning that Mr. Baca wanted Molina dead?

 4         A.   Like why did I record that?  Why did I

 5    think that was --

 6         Q.   No, why did you think this is a statement

 7    concerning a conspiracy to kill Mr. Molina?

 8         A.   Well, he's -- Mr. Baca is relating to

 9    another SNM member that -- again, and part of this is

10    what I'm surmising -- if they'd listen to me, is what

11    he says, this wouldn't have happened.  This was an

12    SNM hit, and he's a known leader of the SNM.  So, to

13    me, this is an important statement regarding that

14    homicide.

15         Q.   But if I understood your testimony on

16    direct -- correct me if I'm wrong -- you said after a

17    homicide takes place all kinds of people take credit?

18         A.   Did I say that today?

19         Q.   Something along those lines.

20         A.   I've seen that in this case where -- I'm

21    trying to think of a specific example.  But I have

22    seen within the SNM where -- yes, I can think of it

23    now -- members have claimed, when talking to other

24    members, that they've participated in a crime that

25    they didn't.  I have seen that.  I don't know that I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2587

```
 1   talked about that today, but --
 2        Q.   Okay.  So you wouldn't -- again, I just
 3   want to make sure I understand your testimony
 4   correctly.  But if I understand what you're saying
 5   now, you wouldn't disagree with me that people lay
 6   claim to things they didn't do?
 7        A.   Sure.
 8        Q.   And there may be all kinds of motivations
 9   for making those kinds of claims?
10        A.   Yes.
11        Q.   And one of them might be for
12   self-preservation?
13        A.   Certainly.
14        Q.   So this particular quote was much after the
15   fact?
16        A.   Yes, a couple of years.
17        Q.   And you understand that when Mr. Baca was
18   residing with Mr. Molina in Southern, Mr. Molina was
19   safe and sound?
20        A.   Yes.  In fact, I think there is even some
21   pictures in discovery of them posing together, yeah?
22             MR. LOWRY:  May I have a moment, Your
23   Honor?
24             THE COURT:  You may.
25        Q.   And quickly, Agent Acee, do you know where
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2587

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213 2588

```
 1   Mr. Baca allegedly made this statement to Mr.

 2   Martinez?

 3        A.   Yes, while they were housed together at the

 4   Level 6.

 5        Q.   And when was that?

 6        A.   Shortly before the take-down, when we

 7   brought Mr. Baca back.

 8        Q.   And where was Mr. Martinez' -- where was

 9   his cell in relation to Mr. Baca's cell?

10        A.   I couldn't tell you.

11        Q.   At the time the statement was made, Eric

12   Duran was residing right next to Mr. Baca?

13        A.   It would have been around that timeframe,

14   yes.  It took us a while to arrange movements and

15   stuff, but it would have been that general timeframe.

16        Q.   And that's my point, is if not you, someone

17   in the FBI, the Department of Justice arranged --

18   orchestrated this living arrangement where Mr. Baca

19   would live right beside Mr. Duran?

20        A.   Yes.  We asked them at the Department of

21   Corrections -- they're a partner -- ultimately, it's

22   their move, but yes, we asked for it.

23        Q.   And they obliged you --

24        A.   Yes.

25        Q.   -- in all of your requests?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 214589

```
 1        A.    Not all of them.

 2        Q.    But -- well, they obliged you in putting a

 3   cellphone and a recording device in the room with

 4   Mr. Duran?

 5        A.    Yes.

 6        Q.    So why didn't Mr. Duran capture those

 7   statements on the recording devices if they were

 8   made?

 9        A.    I don't know.  I surmise that Mr. Baca is

10   conversing -- I know for a fact he's conversing with

11   Mr. Duran through the ventilation pipes under the

12   bed.

13        Q.    Right.

14        A.    I don't know if the conversation with

15   Martinez is in the yard, if it's passing within the

16   pod for showers or meals.  Or I know some inmates are

17   able to talk through the opposite vent on the other

18   side of the wall, or through sometimes ventilation or

19   pipes that lead down between the tiers.

20        Q.    Is there documentation of the time inmates

21   would have spent together in the yard, rec yard?

22        A.    That's a question for Corrections.  I'm not

23   sure.  I know it's not much for a Level 6 inmate,

24   maybe an hour.  And I don't think they have to go, if

25   they don't want to.  But that's a question for them.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 215

2590

```
 1              MR. LOWRY:  No further questions, Your
 2    Honor.
 3              THE COURT:  All right.  Thank you, Mr.
 4    Lowry.
 5              Ms. Jacks, do you have cross-examination?
 6              MS. JACKS:  Yes, Your Honor.  Thank you.
 7                        EXAMINATION
 8    BY MS. JACKS:
 9         Q.   Good afternoon, Agent Acee.
10         A.   Good afternoon.
11         Q.   I'm going to try to approach this in a
12    logical fashion.  We'll see how long that lasts.
13              Let's start with your interviews with Lupe
14    Urquizo.  You testified about a bunch of statements
15    he made to you.  Do you recall that testimony?
16         A.   Yes.
17         Q.   Just, in general, were all those statements
18    made during the same interview with him or different
19    interviews?
20         A.   Different.
21         Q.   Okay.  How many total interviews have you
22    had with Mr. Urquizo?
23         A.   At least three.
24         Q.   And in that three, does that include the
25    one where you mention that you spoke to him before he
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2590

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2591

1    had an attorney and before he was even a suspect in

2    the case?

3         A.   Yes, that would have been my first one, up

4    at PNM.

5         Q.   And do you recall the date or the month and

6    year of that interview?

7         A.   No.  It would be the first sentence of the

8    my 302.  But no.

9         Q.   Well, the information that you related here

10   today, is that information he told you in that first

11   interview before he became a potential suspect in

12   this case?

13        A.   That's a summary of all of the debriefs

14   with him.  So if I did three, it would be a summary

15   of all three.

16        Q.   I guess my question was -- did he talk to

17   you freely in that first interview?

18        A.   Yes.

19        Q.   And he told you things about the murder or

20   the homicide of Javier Molina?

21        A.   Yes and no.  I mean, he was worried, and

22   that's why we got him an attorney.  I mean, he

23   started down that road, and he started to tell me

24   stuff.  And then we wanted him to cooperate, and we

25   made the decision that we should get him an attorney.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2591

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2592

1        Q.    So you facilitated him getting counsel, and

2    then the next meeting was actually with his counsel

3    present?

4        A.    Yes.

5        Q.    And then the third meeting was with his

6    counsel present?

7        A.    Any subsequent ones after would have been

8    with his counsel.

9        Q.    Okay.  And is it fair to say that all of

10   your contacts with Mr. Urquizo occurred after the

11   initial take-down in this case in December of 2015?

12       A.    Definitely.  I didn't even know who he was

13   until his name was mentioned here in court.

14       Q.    And it sounds like when you talked with him

15   the first time, he became concerned, noticeably

16   concerned, about some sort of liability he might

17   have?

18       A.    He did to a lesser extent than I did.  I

19   definitely did.

20       Q.    Okay.  So you viewed him as a potential

21   suspect, but he initially maybe didn't?

22       A.    I think I could have let him keep talking

23   but that would have hurt the relationship later.

24       Q.    I want to talk, though, specifically about

25   the first statement that you told us about, which was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2593

```
 1    Mr. Urquizo claimed during one of your interviews
 2    that Mr. Baca had told him that he wanted Javier
 3    Molina hit?
 4         A.   Yes.
 5         Q.   It was in the first interview, second
 6    interview, or third?
 7         A.   I think we didn't get into details until
 8    the second, at least the second interview.
 9         Q.   So I guess I should be more specific.  Did
10    he tell you that Baca wanted Javier Molina hit in the
11    first interview?  Did he mention that at all?
12         A.   I'd have to refer to my 302.
13         Q.   Do you have it?
14         A.   No.
15         Q.   But your recollection is that he did tell
16    you something to that effect in the second interview.
17         A.   What my recollection was I spoke to
18    Urquizo, and he told me that.  Whether it was in the
19    first, second, or interview -- I don't think it would
20    be in the third; it would be the first or second.
21         Q.   Okay.  You're the case agent for this case,
22    right?
23         A.   I am.
24         Q.   You're an FBI agent?
25         A.   I am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219

```
 1        Q.   For how many years?

 2        A.   A little over nine.

 3        Q.   I would assume that you've been in

 4   situations where people make false statements to you?

 5        A.   Yes.

 6        Q.   Or people lie to you?

 7        A.   Yes.

 8        Q.   Or people tell you what they want to hear,

 9   because they want to ingratiate themselves to you in

10   some way?

11             MR. CASTELLANO:  Objection, relevance.

12             THE COURT:  Overruled.

13        A.   I'm sure they do.

14        Q.   Because people want to avoid going to jail,

15   right?

16        A.   Generally, yes.

17        Q.   And so part of your job as the investigator

18   is to make inquiries about what people tell you, to

19   try to verify those things, right?

20        A.   Yes.

21        Q.   Because if you're going to take action

22   based on something, you'd want it to be reliable?

23        A.   True.

24        Q.   You'd want it to be credible?

25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2595

```
 1         Q.   Did you record any of your meetings with
 2   Mr. Urquizo?
 3         A.   Certainly not after he had an attorney, and
 4   I don't think I recorded the first one.
 5         Q.   But that's something you could check on?
 6         A.   Yes.
 7         Q.   So it's possible that you recorded it?
 8         A.   Possible.  I record a lot of my interviews.
 9         Q.   When you spoke with Mr. Urquizo about his
10   claim that Baca wanted Javier Molina hit, did you ask
11   him:  Was this is a face-to-face conversation with
12   Mr. Baca?
13         A.   Yes, because I asked him where:  "Like,
14   where were you?"
15         Q.   And what did he say?
16         A.   I believe he said they were at the North,
17   Level 6.
18         Q.   That he was at PNM Level 6, and that Mr.
19   Baca was at PNM Level 6?
20         A.   Yes.
21         Q.   And that they were both -- PNM Level 6 is
22   divided into various units, isn't it?
23         A.   It is.
24         Q.   So it wouldn't be -- like, a person from
25   one unit couldn't talk to a person from the other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2595

```
 1    unit, could they?
 2         A.   We've arranged that to happen, and I think
 3    it naturally can happen, but it's not a daily
 4    occurrence.
 5         Q.   Did you ask Mr. Urquizo where he was when
 6    Mr. Baca supposedly made this statement?
 7         A.   Not beyond they were incarcerated together
 8    at the Level 6 -- or it may have been the Level 5.  I
 9    don't recall.
10         Q.   Well, you said Level 6 before, now you
11    can't recall if it's Level 5 or Level 6?
12         A.   Yeah.  I'd want to look at my 302 to tell
13    you specifically but I'll say that it was at PNM.
14         Q.   Okay.  So now you're just saying it was at
15    a prison, the Penitentiary of New Mexico, at any one
16    of their facilities?
17         A.   No, I'm saying it was either at the Level 5
18    or the Level 6.  And if I had my 302, I might be able
19    to be more specific.
20         Q.   But you don't have it?
21         A.   I don't.
22         Q.   Did you ask Mr. Urquizo how it was that he
23    came to speak with Mr. Baca?  Was it as he was
24    passing his cell?  Was it through the vents in the
25    cell?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2596

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2597

```
 1        A.   No.

 2        Q.   You didn't ask him?

 3        A.   No.

 4        Q.   Did you ask him who was present -- if any

 5   other inmates were present at the same time?

 6        A.   No.

 7        Q.   And did you ask him what year this was?

 8        A.   I would have asked, you know, generally

 9   when did this take place.

10        Q.   What did he say?

11        A.   I don't remember.

12        Q.   Well, was it in 2014?

13        A.   I think it would have been.  I'm only

14   hesitating because the homicide was in March.  That's

15   early in the year.  And I know that movements and

16   transfers take a while.  So it could have been in

17   late 2013.

18        Q.   I'm not asking you to speculate.  I'm

19   asking what Mr. Urquizo told you.

20             When did Mr. Urquizo say that Baca told him

21   he wanted Javier Molina dead?

22        A.   If you are asking for a specific date, I

23   don't have it.

24        Q.   Okay.  You were the investigator on the

25   case, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2597

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223

```
 1          A.   I was.  Not in 2014, but I am now.

 2          Q.   Did you ask Mr. Urquizo:  "When did you

 3     have this conversation with Mr. Baca?"

 4               MR. CASTELLANO:  Objection, asked and

 5     answered.

 6          A.   Yes.

 7               MS. JACKS:  I don't think it's been

 8     answered.

 9               THE COURT:  Overruled.

10          A.   Yes, I asked.

11          Q.   What did he say?

12               THE COURT:  Direct comments to the Court,

13     not to opposing counsel.

14          A.   Yes, I tried to flesh that out.  What I

15     don't have in front of me is my 302 with those

16     details.

17          Q.   Maybe we'll come back to this tomorrow.

18     But I guess, do you have any -- did Mr. Urquizo give

19     you a date, a general date, when this conversation

20     supposedly happened?

21          A.   I kept pressing him for a timeline.  The

22     problem is, as I sit here right now, I don't know

23     what that timeline is.

24          Q.   Okay.  Did he ever give you a timeline?

25          A.   To the best of his abilities, he did.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224

1      Q.   Okay.  And you said you had to press him.

2  You had to repeatedly question him about that?

3      A.   Not that he was uncooperative.  The problem

4  is these guys don't have calendars or a way to know

5  what day it is.  So they go with what pod they were,

6  what color it was, and what room.  So I don't have

7  access to that information.  So I kept pushing him

8  for, Well, what was the weather like?  What color pod

9  was it?  And so that's typically how I got the

10  timelines from guys that have been incarcerated, like

11  Mr.  Urquizo, for so long.

12      Q.   Is it fair so say that if he gave you a

13  timeline it should be in your 302s?

14      A.   Yes.

15      Q.   And that you would be able to reference

16  that and give us the timeline, if it exists?

17      A.   Yes.

18      Q.   I may have lost the answer to this in that

19  last exchange.  You didn't ask him or you didn't get

20  information from him exactly how the conversation

21  occurred, whether it was between cells, through a

22  door, in the rec cage, on some sort of transport?

23      A.   No.  Those are the questions that I would

24  ask.  But again, as I sit here, I don't know how to

25  answer that without looking at my report.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225600

1      Q.   Okay.  And if he gave you an answer, it

2    should be reflected in your 302?

3      A.   It should be.

4      Q.   Now, assuming that Mr. Urquizo gave you

5    some sort of timeline about when this alleged

6    conversation took place, what efforts did you make to

7    verify that Urquizo was in a place where he could

8    have actually had the conversations?

9      A.   So all of these interviews are -- it's

10   myself and one or more STIU officers.  So I'll

11   typically conduct the interview, and then I'll look

12   to one of the STIU guys.  They'll also be taking

13   notes, or in some cases they're in a location where

14   they can check on a computer and give me like a yeah

15   or a no, and can I press on with that interview.

16   That's typically how we do these debriefs.  So I,

17   myself, don't have that access.  I have to rely on

18   the Department of Corrections.

19      Q.   So who was the STIU person that was present

20   during your interviews of Lupe Urquizo?

21           MR. CASTELLANO:  Objection, Your Honor.

22   We're straying away from the statements again.

23           THE COURT:  Tie this to the James hearing.

24           MS. JACKS:  I think one of the issues is

25   whether the statement was actually made.  And so I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226

```
 1   think what I'm trying to get to is what corroboration
 2   there is that the inmates even had access to speak
 3   with each other.
 4              THE COURT:  I'm going to sustain.  I still
 5   think the credibility issues are getting a little far
 6   afield.
 7        Q.   You're saying, as an FBI agent, when Mr.
 8   Urquizo told you, "I was with Baca during this time
 9   period," the way you would investigate that is look
10   over to somebody else who was conducting the
11   interview with you and wait for them to nod yes or
12   no?
13              MR. CASTELLANO:  Objection.
14              THE COURT:  Sustained.
15        Q.   Did you make any other effort besides
16   looking to a correctional officer to verify the
17   information Mr. Urquizo gave you about his location?
18              MR. CASTELLANO:  Objection.
19              THE COURT:  Sustained.
20        Q.   All right.  I want to move on.
21              I think the next thing you said was Mr.
22   Urquizo told you that David Calbert brought the
23   paperwork to him, Mr. Urquizo, at PNM Level 5?
24        A.   Yes.
25        Q.   And is that accurate?  Did I make that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2601

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2602

```
 1   statement correctly?

 2        A.   I think you did.

 3        Q.   Okay.  Did you ask Mr. Urquizo when that

 4   supposedly happened?

 5        A.   Yes.

 6        Q.   And what did he say?

 7        A.   Again, that timeline that I referred to

 8   earlier would be in my 302, if he described how that

 9   happened.  As I sit here today, I don't remember all

10   the details of that.

11        Q.   Okay.  My question was when?  My next

12   question was going to be how.  But my question then

13   was when, so your answer is "I don't know"?

14        A.   My answer is I'd need to look at my 302

15   where I recorded all that.

16        Q.   And if he provided you an answer to when,

17   that would be in your 302?

18        A.   Yes.

19        Q.   And how did he -- did Mr. Urquizo say that

20   Calbert brought this paperwork?

21        A.   Calbert was transferred from the Level 6 to

22   the Level 5, so he brought it with him.

23        Q.   And how did he bring it with him, according

24   to Mr. Urquizo?

25        A.   I don't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   You'll agree with me that police reports

 2   regarding other inmates is contraband within the

 3   Department of Corrections?

 4        A.   No, I don't agree with that.

 5        Q.   Oh, you don't?

 6        A.   No.

 7        Q.   So you think that police report -- I guess,

 8   let me go back.  For Mr. Calbert to bring some

 9   paperwork from PNM Level 6 to Level 5, would his

10   property have to be searched?

11        A.   No, not that intently.  I found my

12   affidavits in SNM pods in Level 6.

13        Q.   So you're talking from personal experience?

14        A.   Yes.

15        Q.   Okay.  Did Mr. Urquizo tell you whether Mr.

16   Calbert had to engage in any sort of special

17   surreptitious paperwork to get their paperwork over

18   from PNM Level 5?

19        A.   No.  And I don't believe I asked that

20   question.

21        Q.   Did Mr. Urquizo tell you how Mr. Calbert

22   supposedly gave them the paperwork?

23        A.   No, not beyond:  He just gave me the

24   paperwork.

25        Q.   So like they met in the hallway of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 229

```
 1   prison and exchanged paperwork?
 2        A.   Yeah.  They're in the same pod.  They can
 3   stand around and dance if they want.
 4        Q.   Is that how Mr. Urquizo said he got it?
 5        A.   He said he got it from Calbert when he
 6   arrived.
 7        Q.   When Mr. Calbert arrived?
 8        A.   Correct.
 9        Q.   And how much before that or how long after
10   that was Mr. Urquizo transferred, if he told you?
11        A.   I think he said he had it -- Urquizo said
12   he had it for two weeks, is my recollection.
13        Q.   Did Mr. Urquizo tell you that he made any
14   sort of effort to hide it or obscure it in some
15   manner?
16        A.   Yes.  He put it amongst his legal
17   paperwork, which was nothing more than a folder, or a
18   manila envelope, with police reports stemming from
19   his conviction.
20        Q.   So Mr. Urquizo -- is this the first
21   interview, second interview, or third interview that
22   he told you these details?
23        A.   Mr. Urquizo gives us a synopsis.  He kept
24   saying, "I know what you're looking for.  I know what
25   you want."  He referenced a conversation that he'd
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2604

```
 1    had with you at the prison.  And that's when he just

 2    kind of started sweating and getting nervous.  And

 3    that's when I made the -- not a singular decision, it

 4    was with consultation with the U.S. Attorney's

 5    Office, but that we should get him a target letter

 6    and get him an attorney, and then do a thorough

 7    debrief.  So he gave me just a snippet.

 8         Q.   In the first interview.  But it sounds like

 9    most of your information came from the second or

10    third interview?

11         A.   That's fair, yes.

12         Q.   And he told you that he made an effort to

13    hide this supposed paperwork by putting it in with

14    his legal materials?

15         A.   Yes.

16         Q.   And then I'm assuming -- well, I don't want

17    to assume -- did he tell you that he transported his

18    legal materials when he was moved?

19         A.   Well, he didn't transport it on his person.

20    He caused it to be transferred.  You know, because

21    he's locked down, he's shackled like the defendants

22    are today.  But it was in his box, if you will, of

23    property.

24         Q.   In his property?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2605

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231

1    Q.   So when Mr. Urquizo was moved from PNM to

2    Southern New Mexico Correctional Facility, he went in

3    a van, and he had some property that was towed behind

4    him?

5    A.   Something like that, yes.

6    Q.   And he told you that he brought it in his

7    legal work?

8    A.   Yes.

9    Q.   Now, are you aware that when inmates are

10   transferred from one prison to another, their

11   property is inventoried?

12   A.   It is.

13   Q.   Well, are there New Mexico Department of

14   Corrections regulations requiring that an inmate's

15   property be inventoried at the institution that's

16   sending him and at the institution that's receiving

17   him?

18   A.   I'm not familiar with their policies that

19   closely.  But that sounds -- that seems reasonable,

20   and I'm sure something like that exists.

21   Q.   Okay.  And did you make any efforts to look

22   into those policies as they applied to Mr. Urquizo's

23   supposed transportation of legal materials to

24   Southern in the days before the Molina homicide?

25   A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 232

```
 1          Q.   So you don't know if there are property
 2    inventories that exist that show that Mr. Urquizo
 3    transmitted legal paperwork with him; that Mr.
 4    Urquizo transferred legal paperwork along with
 5    himself, when he came down to Southern?
 6          A.   There could be, but I'm doubtful.
 7          Q.   Why are you doubtful?
 8          A.   Well, I mean, the same correctional
 9    officers -- no offense to them, there are some even
10    in this courtroom -- those are also the same ones
11    we're arresting for bringing in contraband.  So if
12    I'm going to sit here and say, Yeah, everybody does
13    their job perfectly, and there is a perfect
14    inventory, most of the COs, in my experience, are
15    scared to look at anything that says "legal mail."
16    That's how they get most of their dope in.
17          Q.   Well, did you make any effort to find out
18    what the property inventories for Mr. Urquizo showed?
19          MR. CASTELLANO:   Objection, Your Honor.
20          THE COURT:   Tie it -- tell me where -- how
21    this goes to the James stuff.  It looks like it's
22    more credibility issues.  Do you still want to pursue
23    it?
24          MS. JACKS:   I do.  I think I already know
25    the Court's ruling.  I think one of the issues is
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.                    e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE


DNM 2607

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 232608

1    whether the statements were actually made.

2           THE COURT:  All right.  Sustained.

3      Q.   Now, when Mr. Lowry was talking to you

4    about this issue, I think you brought up -- I didn't

5    really understand this, but I think you brought up

6    that there was some difference or there was some

7    inconsistency between what Urquizo said and what Mr.

8    Calbert said involving Mauricio Varela.

9      A.   Yes.

10     Q.   Regarding this alleged transfer of

11   paperwork?

12     A.   Yes.

13     Q.   What was that?

14     A.   Well, Urquizo spoke -- or implicated Varela

15   more significantly.  I think part of that was because

16   he was on a transport with him, and he ended up in

17   Southern with him, where Calbert didn't travel with

18   him.  So he had more time with him.  And they had

19   different opinions on how involved Varela was and how

20   influential he would be in pushing for Molina to get

21   hit.

22     Q.   Did Urquizo ever tell you that Varela

23   carried the paperwork?

24     A.   No.

25     Q.   Okay.  And did Calbert ever tell you that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2608

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 234609

1    Varela -- that he gave the paperwork to Varela?

2         A.   No, they matched to a tee there, that it

3    went to Urquizo.

4         Q.   I want to move forward to after Mr. Urquizo

5    is transferred to Southern New Mexico Correctional

6    Facility.  And I think you testified earlier that

7    when an inmate is first transferred they're placed

8    in, quote, "orientation"?

9         A.   That's my understanding.

10        Q.   And orientation, basically, means that

11   you're locked in your cell?

12        A.   I think so.  But I'm not an expert on that.

13   I've never witnessed that take place.  Like, I have

14   no firsthand knowledge of that.  But that's my

15   understanding.

16        Q.   Okay.  Well, you used the word

17   "orientation," so is that what you meant, that he was

18   somehow locked in his cell and isolated from having

19   interactions with other inmates?

20        A.   Orientation -- I got that term from

21   Department of Corrections personnel, that a person

22   would be in orientation for two days when they first

23   arrive.

24        Q.   Did you ask the Department of Corrections

25   personnel that told you that what that meant?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.

 2        Q.   And what did he or she say?

 3        A.   When inmates are transferred -- and I don't

 4   know -- I'm hesitating, because I don't know if it

 5   only applies to STGs or prison gangs, or all inmates,

 6   but that, in this case, SNM members, when they were

 7   moved from facilities, there was a two-day

 8   orientation.  Their property arrived sometime later.

 9   And I'm not sure.  It sounded like there was some

10   kind of checklist that a person going through

11   orientation had to go through.  Maybe medical and

12   other stuff.  And again, it's not my area of

13   expertise.

14        Q.   Well, you referenced that Mr. Urquizo told

15   you that during this period of orientation he was

16   able to pass notes on a window with Mario Rodriguez

17   and Timothy Martinez?

18        A.   I want to clarify.  He said that he held

19   notes up, as opposed to passing.  He held it up to a

20   window.

21        Q.   And was it a window from his cell into the

22   pod, or some other window?

23        A.   No, I believe it's his -- it's a window

24   affixed to his door that's viewable from people

25   passing the pod, like on the first level outside the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2611

1    pod.

2         Q.   The common areas of the unit?

3         A.   The part of the common area of the unit.

4    But in this case you have guys that live in another

5    pod that are passing in the hallway, where there is a

6    door and a window as well.

7         Q.   Okay.  Well, did you ask Mr. Urquizo what

8    window he supposedly held some note up to?

9         A.   Yes, and he told me, you know, blue pod 1A

10   12, which means nothing to me.  But he made those --

11   he, as best he could, identified what rooms, like all

12   these guys do when they recount where they've been.

13        Q.   And did you put that information in your

14   notes?

15        A.   I believe I did.

16        Q.   And is that reflected in your 302?

17        A.   I think so.

18        Q.   Was it your -- I mean, you're sitting here

19   talking to him, interviewing, you need to have an

20   understanding of what he's saying, right?

21        A.   Well, I can understand what he's saying

22   without having the exact layout of the facility.

23   That wasn't an area I was familiar with.

24        Q.   Was it your understanding when you spoke

25   with him that these notes he was talking about, he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2611

1    held up to a window that was on the door of his cell?

2        A.   Yes.

3        Q.   And do you know whether from the door of

4    his cell he can see into another pod?

5        A.   I don't think he can.  And I'm going off my

6    walking around the facilities.

7        Q.   And from the door of his cell -- is the

8    door of his cell -- the window in the door of his

9    cell visible to another pod?

10       A.   I don't think so.  I think you have to be

11   walking by in that hallway, that common hallway.  I

12   don't know that you can see into another pod.

13       Q.   So my question is:  You do know that the

14   people he allegedly told you he showed a note to,

15   Mario Rodriguez and Timothy Martinez, were in a

16   different pod?

17       A.   Yes.

18       Q.   So did you ask Mr. Urquizo:  How is it that

19   two guys from a different pod could see a note that

20   you held up on the door of your cell?

21       A.   Yes.

22       Q.   What did he say?

23       A.   That those two, being "Blue" and "Red,"

24   Rodriguez and Martinez, were on some kind of -- he

25   described it as, I think, a work detail or something;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2612

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2613

1    something had them out in the hallway working or

2    cleaning or painting.

3        Q.   So Mr. Urquizo told you that Mario

4    Rodriguez and Timothy Martinez were able to see these

5    notes he wrote because they were in a position where

6    they could see his cell door window?

7        A.   Yes, that's what he said.

8        Q.   And you said you walked through that

9    facility, Southern New Mexico Correctional Facility?

10       A.   Once.

11       Q.   Do you have a way to verify that that's

12   possible?

13           MR. CASTELLANO:  Objection, Your Honor.  I

14   believe that goes to credibility and not the actual

15   statements.

16           THE COURT:  I'll allow this statement, this

17   question.  Overruled.

18       A.   You're asking if I believe that's possible?

19       Q.   I just asked if you did anything to confirm

20   whether or not that's possible?

21       A.   Not beyond talking to the corrections

22   officers, no.

23       Q.   Well, did you talk to a corrections officer

24   that told you that was possible?

25       A.   Yes, several.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.    And did they explain how that would be?

2     A.    Yes.

3     Q.    How?

4     A.    That those guys would be allowed to travel

5     between pods, or in that -- around that unit.  And

6     that you could hold up a note or make hand signals or

7     any other kind of gesture through a window.

8     Q.    So what they told you is that if Mario

9     Rodriguez and Timothy Martinez had access to Lupe

10    Urquizo's pod, then they could walk by his cell door

11    and see what was hanging up in his window?

12    A.    Well, I think -- no, what I'm saying, is if

13    they had access to that hallway.  I don't believe

14    that they ever entered his pod.

15    Q.    Well, what hallway are you talking about?

16    A.    I'm talking about -- maybe I shouldn't call

17    it a hallway -- but the area outside the pod.

18    Q.    The area outside Mr. Urquizo's pod?

19    A.    Yes.

20    Q.    You mean outdoors?

21    A.    No.  His pod door doesn't open up to

22    outdoors.  There are hallways.

23    Q.    Well, his pod door opened up to a common

24    area, right?

25    A.    Yes.  Ms. Jacks, I think we're just not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2614

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240

```
 1    agreeing on what we should call it.  But I'll call it

 2    the area outside the pod door.

 3         Q.   Okay.  So the information you got, or your

 4    verification consisted of talking to correctional

 5    officers, who told you that if Mario Rodriguez or

 6    Timothy Martinez were outside Mr. Martinez' pod door,

 7    they could see a note held up?

 8         A.   Yes.

 9         Q.   And did you make -- this is a Level 4, New

10    Mexico State penal facility, right?

11         A.   Yes.

12         Q.   So inmates' movements are fairly highly

13    regulated, right?

14         A.   Less so than in other facilities.

15         Q.   Less so than Level 5 and Level 6?

16         A.   Correct.

17         Q.   But more so than Level 1, 2, and 3?

18         A.   Fair to say.

19         Q.   And did you make any effort -- do you know

20    whether inmates from one pod can travel into a

21    different pod?

22              MR. CASTELLANO:  Objection, relevance.

23              THE COURT:  Sustained.  I think we're

24    getting a little far afield.  I've given you a little

25    bit of leeway.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2615

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242

```
 1              MS. JACKS:  I appreciate that.

 2              THE COURT:  But I think we better bring it

 3   back in.

 4         Q.   Did you speak with any correctional

 5   officers to find out whether on March 6 or 7, 2014,

 6   Mario Rodriguez and Timothy Martinez had left blue

 7   pod?

 8         A.   No.

 9         Q.   Now, with respect to this note on the

10   window, did Mr. Urquizo tell you what day he got to

11   Southern New Mexico Correctional Facility?

12         A.   I think he got there on the 4th or 5th, is

13   what he said.

14         Q.   Did you verify that with any independent

15   information?

16         A.   Yes.

17         Q.   And what was that?

18         A.   Department of Corrections' records.

19         Q.   Okay.  What did the Department of

20   Corrections' records show?

21         A.   Inmates' travel.

22         Q.   On what day did Mr. Urquizo arrive at

23   Southern New Mexico Correctional Facility according

24   to the Department of Corrections records?

25         A.   I'd have to look at them.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2616

```
 1        Q.   What day was Javier Molina -- what day was
 2   the Molina homicide?
 3        A.   The 7th.
 4        Q.   March 7?
 5        A.   Yes.
 6        Q.   Okay.  Did you ask Mr. Urquizo what day it
 7   was that he first started putting these notes up on
 8   the door -- on the window of his cell door?
 9        A.   My recollection was that these guys were on
10   him as soon as he got there.  They were eager to find
11   out if the paperwork came down, because there was
12   supposed to be three people hit.  And --
13        Q.   May I stop you right there?
14        A.   Sure.
15        Q.   My question was:  Did you ask Mr. Urquizo
16   when it happened?
17        A.   Yes.
18        Q.   And what was his answer?
19        A.   That's what I'm thinking about.
20        Q.   It sounds like what his answer was is right
21   away he started holding up his notes.
22        A.   What does that mean?  I mean, I have to ask
23   follow-up questions.  And that's what I'm thinking
24   about.
25        Q.   Okay.  So from the time that he got there,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2617

```
 1   Mr. Urquizo told you he started holding up these
 2   notes?
 3        A.   No.
 4        Q.   Okay.
 5        A.   He got there; he was put in orientation.
 6   And that as soon as he was around these guys, being
 7   other S members, they were all over him to find out
 8   if he had paperwork.  So he had to answer by writing
 9   a note, because he wasn't free -- either in
10   orientation or locked up in his cell -- to freely
11   speak with them or communicate, other than through
12   note and hand signals and talking through the door.
13        Q.   So do you know, was that on March 4, March
14   5, March 6, or March 7?
15        A.   I would want to look at my notes and my
16   report to be more specific.
17        Q.   If there is a date, it would be in your
18   302?
19        A.   Yes.
20        Q.   Or I'm sorry, if Mr. Urquizo gave you a
21   date?
22        A.   He gave me one.  We also pulled records
23   from Corrections to verify what we're told.  We've
24   done that, and turned those over as well.
25        Q.   Now, Mr. Urquizo, I think you testified
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2618

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2419

1    earlier, told you that he had held additional notes

2    up to the window the next day?

3         A.   Do you mind if I look at my notes?

4         Q.   Not at all.

5         A.   Okay.  So I make two references to a

6    letter, or notes.  One is when "Blue" and "Red"

7    inquire about the paperwork.  And that's done via

8    them holding up the note and him holding up a

9    response.

10             Later, I made reference to Rodriguez

11   sending a letter to Urquizo, sort of apologizing and

12   explaining why they had to move so quickly.

13             Those are the two letters or notes I

14   referred to.

15        Q.   Okay.  And it may be something got lost in

16   my listening to your testimony.  So let me go back.

17   So, according to what you've just said -- again,

18   you've had a chance to refresh your memory --

19   according to what Lupe Urquizo told you, he said that

20   Mario Rodriguez and Timothy Martinez were the first

21   ones to hold up a note to the window of his cell?

22        A.   Yes.

23        Q.   And they wanted to know if there was

24   paperwork?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2415620

```
 1        Q.   And then he held up a note back; is that
 2   right?
 3        A.   Confirming that there was.
 4        Q.   Okay.
 5        A.   And he brought it.
 6        Q.   So that's the first -- and this is the
 7   window of Mr. Urquizo's cell door?
 8        A.   Yes.
 9        Q.   And then there was another exchange at the
10   window of Mr. Urquizo's cell door?
11        A.   Between other people and Mr. Urquizo, yes.
12        Q.   Involving Mario Rodriguez?
13        A.   No.
14        Q.   Oh.
15        A.   Carlos Herrera, Dale Chavez, Juan Mendez.
16        Q.   And Alex Nunez?
17        A.   Yes.
18        Q.   Okay.  You did testify about that earlier.
19   So this is the second time notes are being held up to
20   the cell door?
21        A.   I don't think I said it was notes.  They
22   were conversing through the door.
23        Q.   Okay.
24        A.   Because they're in the same pod.
25        Q.   All right.  So I was talking about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2620

2621

```
 1    notes.  So let's go -- I'm going to get back to that
 2    conversation.  But I was talking about the notes.
 3    And I thought what you answered was you also talked
 4    about a letter that Mario Rodriguez wrote to Mr.
 5    Urquizo, where he was apologizing to him for
 6    something?
 7         A.   That's a subsequent letter, yes.
 8         Q.   And is that -- according to Mr. Urquizo's
 9    story, is that also a note that was supposedly held
10    up to the window of his cell door?
11         A.   No, that was a letter that he sent up.
12         Q.   Okay.  A letter that Mario Rodriguez sent
13    to Mr. Urquizo?
14         A.   Yes.
15         Q.   And how is that -- did Mr. Urquizo tell you
16    how that letter was sent?  Obviously not through the
17    mail.
18         A.   Just the SNM prison mail, yeah.
19         Q.   Did he tell you?
20         A.   Yes.  He sent it over from the other pod.
21    We didn't break down the specific movements of it.
22         Q.   Okay.  So you're saying he got some sort of
23    prison communication.  Was this also supposedly held
24    up in his window?
25         A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2622

```
1        Q.   Okay.  It was something that was slid under
2   his door, the door?
3        A.   That's what I surmise, yes.
4        Q.   Did you ask him how he got the letter?
5        A.   Not beyond "Blue" sent me a letter, and
6   this is what it said.
7        Q.   Okay.  He didn't have a copy of the letter,
8   did he?
9        A.   No.
10       Q.   And you didn't ask him exactly how he got
11   it; you're just guessing when you say it was somehow
12   slid under his door?
13       A.   I think I'm more than guessing.  But no, I
14   didn't ask that question.
15       Q.   Okay.  And with respect to this supposed
16   letter that he got, when did he say he got that?  Was
17   it the same day that the note had been held up, the
18   first note had been held up to his cell door, or a
19   different day?
20       A.   Different day.
21       Q.   Was it the next day?  Two days later?
22       A.   I think it was the next day.
23       Q.   And did he tell you what time of day or
24   whether he was still on, quote, "orientation"?
25       A.   I believe he still was on orientation.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2623

1  if he mentioned what time it was, it's going to -- if

2  he told me, it's in my 302.

3      Q.   And correct me if I'm wrong, but the gist

4  of this letter that Mr. Urquizo told you about was it

5  was some sort of an apology because there was a

6  person he wanted hit that wasn't on the list, that

7  wasn't going to be hit?

8      A.   No.  He was due to be hit.  The paperwork

9  didn't come, so there wouldn't be one.

10     Q.   So he was going to have to wait?

11     A.   Yes.

12     Q.   Now, I want to go back to the conversation

13  with the four individuals:  Carlos Herrera, Dale

14  Chavez, Juan Mendez, and Alex Munoz?

15     A.   Yes.

16     Q.   Okay.  Mr. Urquizo told you that he had a

17  conversation with the four of these individuals while

18  he was still on orientation?

19     A.   Well, I want to clarify something.  We keep

20  saying it's while on orientation.  What I can tell

21  you as I sit here is it was in the pod and Urquizo

22  was locked down in his room.  Whether we're going to

23  call that orientation or not, I'm not sure if I'm

24  technically correct, but that's where it happened and

25  that was the setting.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   So Urquizo was locked in his cell, and

2  these guys were talking to him from the area outside

3  of cell?

4    A.   Yes.

5    Q.   All at the same time, according to Mr.

6  Urquizo?

7    A.   Yes.

8    Q.   And when did he say this conversation

9  happened?  The same day that the first note was held

10  up -- that he says the first note was held up to his

11  window, or a different day?

12    A.   Both days.  The guys -- those guys and

13  others in the pod hovered around his door talking to

14  him.  But he didn't have his property yet.  So I

15  moved forward in my question of Urquizo to, "Well,

16  when you got your property, tell me what happened

17  then."

18    Q.   Okay.  So did he get his property?

19    A.   He did.

20    Q.   When did he say he got it?

21    A.   It was definitely not the first day.  I

22  think it was the second day.  And that I covered in

23  the 302 quite a bit.

24    Q.   Okay.  And do you know approximately when

25  the second day?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         A.   I don't.

 2         Q.   Did he tell you?

 3         A.   I think so, but I just don't remember.

 4         Q.   And when he got his property, did Mr.

 5    Urquizo tell you what he did with it?

 6         A.   Yes.  He slid it under the door.  And those

 7    four people that you just mentioned read it and

 8    commented on it.

 9         Q.   And the comment was, "Damn, this is it?

10    Two sentences," something like that?

11         A.   Something like that.

12         Q.   So sort of an incredulous sort of comment?

13         A.   Yes.

14         Q.   And the paperwork that he claims that he

15    slid under his door was this paperwork he'd

16    supposedly smuggled drown with his legal materials?

17         A.   Yes.

18         Q.   Now, did you make any inquiries of anybody

19    at the New Mexico Department of Corrections about who

20    inventoried Mr. Urquizo's property at Southern New

21    Mexico Correctional Facility?

22         A.   I have not.

23         Q.   Did you find out who it was, if anybody,

24    that gave him his property back?

25         A.   I don't know the name of the person that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2625

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 251 2626

```
 1    did.
 2         Q.   Or when?  Do you know when, in relation to
 3    the Molina homicide?
 4              MR. CASTELLANO:  Objection, Your Honor.
 5              THE COURT:  Sustained.
 6         Q.   Do you have any independent verification
 7    that shows that Mr. Urquizo's property was returned
 8    to him prior to Mr. Molina being killed?
 9              MR. CASTELLANO:  Same objection.
10              THE COURT:  Sustained.
11         Q.   All right.  I'm going to move on to Mr.
12    Urquizo's claim about Mr. Sanchez.  And if my notes
13    are correct, you say that during one of your
14    interviews, Mr. Urquizo told you that after Molina
15    was killed, or during the time period that Molina was
16    killed, that he heard Daniel Sanchez yell, "Fuck,
17    yeah"?
18         A.   Correct.
19         Q.   Did he tell you that in all three of the
20    interviews, or --
21         A.   No.  I mean, I try not to cover the same
22    stuff we already talked about.  It came up in one of
23    the interviews.  And I, frankly, found that kind of
24    hard to believe.  So I asked him about it:  "How do
25    you know it was Sanchez?"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2626

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 252

1          Q.    Well, Mr. Urquizo and Mr. Sanchez were in

2     separate pods; correct?

3          A.    Yes.

4          Q.    They were separated by concrete walls?

5          A.    They were.

6          Q.    And was there any way that from his cell,

7     Mr. Urquizo could see into the adjacent pod?

8          A.    No, not really.  I mean, Urquizo and others

9     have described the response, but -- you know, of

10    officers and medical staff, but not -- no one has

11    been able to say they could see into the pod.

12         Q.    Do you know the distance between Mr.

13    Urquizo's cell and the blue pod where Mr. Molina was

14    killed?

15         A.    I don't.

16         Q.    Do you know the last time Mr. Urquizo and

17    Mr. Sanchez ever spoke with each other?

18         A.    Not off the top of my head, no.

19         Q.    Do you know if they ever spoke to each

20    other?

21         A.    Yes, I think they have.

22         Q.    Did Mr. Urquizo tell you when, before

23    claiming to hear Mr. Sanchez yell, "Fuck, yeah," the

24    last time he'd spoken to Mr. Sanchez?

25         A.    I don't know if I asked him that.  I don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2627

```
 1    know the answer to that.
 2         Q.   Now, during the homicide of Mr. Molina,
 3    from when the attack on Mr. Molina first started, was
 4    there an inmate that was on the phone in blue pod, to
 5    your recollection?
 6         A.   At the specific time of the homicide, I
 7    don't believe so.  I know that I've spoken with two
 8    defendants who told me they used the phone, and they
 9    loitered about the phone.  But I don't know that
10    someone was on it at the time of the homicide.
11         Q.   Do you know if there is a recording from a
12    telephone call that encompasses the Molina homicide?
13    That was disclosed as part of discovery in this case.
14         A.   If you said it did, I believe you.
15         Q.   You don't have any independent
16    recollection?
17         A.   No.
18         Q.   Have you made any effort to listen to that
19    recording to see if you can hear somebody yell,
20    "Fuck, yeah," on the recording?
21         A.   I just said I'm not aware of a recording.
22         Q.   I'm going to move on to your statements
23    that you testified about regarding Jerry Montoya.
24    And I think where I want to start is, according to
25    your testimony, it sounds like Mr. Montoya initially
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2628

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254

```
 1    claims he was approached by a Michael (sic) Rodriguez
 2    to participate in the stabbing of Mr. Molina?
 3         A.   Mario.
 4         Q.   Yeah, I'm sorry.  Did I say --
 5         A.   You said "Michael."
 6         Q.   I'm sorry, Mario Rodriguez.  Is that right?
 7         A.   Yes.
 8         Q.   And according to Mr. Montoya's statement,
 9    he said it was around 5:00 p.m., the day of the
10    actual homicide?
11         A.   Yes.
12         Q.   According to what Mr. Montoya told you, he
13    told you that Mario Rodriguez told him not to worry
14    because he, meaning Mr. Sanchez, verified it.  Is
15    that what Mr. Montoya told you?
16         A.   That, yes, Montoya said that both Mario
17    Rodriguez and Sanchez had reviewed it and verified
18    it.
19         Q.   Okay.  But Montoya said that the person who
20    gave him the information that Mr. Sanchez had
21    verified it was actually Mario Rodriguez?
22         A.   Yes.
23         Q.   Mr. Montoya didn't say he heard that
24    directly from Mr. Sanchez?
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2629

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255630

1      Q.   And again, Mario Montoya (sic) said that he
2  was told something about Mr. Sanchez not wanting the
3  camera covered?
4      A.   Right.
5      Q.   But that wasn't from Mr. Sanchez either;
6  that was, according to Mr. Montoya, that was from
7  Mario Rodriguez?
8      A.   Yes.
9      Q.   When was it that Mr. Montoya first made
10 these statements to you?
11     A.   Well, Mr. Montoya already had an attorney,
12 so it took us a little bit longer to arrange a
13 debrief.  So the specific answer is that would be,
14 again, the first sentence of my 302, I'll note where,
15 what date, when it took place.
16     Q.   It was after the original indictment in
17 December 2015, right?
18     A.   It was definitely after, yes.
19     Q.   And it was after the second indictment in
20 2016, wasn't it?
21     A.   I don't remember.
22     Q.   Well, in fact, it was sometime, what,
23 almost a year ago, right?
24     A.   If you have the date, ma'am, I trust you.
25 I'm not sure.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2630

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2631

```
 1          Q.   Prior to telling you this at that -- prior
 2     to telling you that it was Mario Rodriguez who told
 3     him what he wanted him to do and said, "Don't worry,
 4     Sanchez verified it," and that Sanchez didn't want
 5     the camera covered, prior to telling you that, had
 6     Mr. Montoya made inconsistent statements about his
 7     participation in the stabbing of Mr. Molina?
 8          A.   To other law enforcement?
 9          Q.   Yes.
10          A.   I believe he did.
11          Q.   And, in fact, did he deny his
12     participation?
13          A.   I assume he would.
14          Q.   Is that a yes?
15          A.   It's been some time since I read it, but he
16     probably did.
17          Q.   I think based on the direct examination,
18     the only direct communication that you testified
19     about today between Mr. Sanchez and Mr. Montoya is
20     that Mr. Montoya claims that Mr. Sanchez said to him
21     something along the line of, "You know what's up?"
22          A.   "Okay, be trucha."
23          Q.   Meaning, "Okay, be careful"?
24          A.   Yes.
25          Q.   And that's the only conversation that Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Montoya claims to have had with Mr. Sanchez directly?

2        A.    That I recall, yes.

3        Q.    And when was that communication with Mr.

4    Sanchez according to Mr. Montoya?

5        A.    The day of the homicide.

6        Q.    And was it before or after Mr. Rodriguez

7    had told him that he was supposed to be participating

8    in the stabbing of Mr. Molina?

9        A.    After.

10       Q.    So if the conversation between Montoya and

11   Rodriguez happened at 5:00 p.m., this was sometime

12   after 5:00 p.m.?

13       A.    That makes sense.

14       Q.    Okay.  And did you ask Mr. Montoya where he

15   was and where Mr. Sanchez was when that communication

16   supposedly happened?

17       A.    In Montoya's cell.

18       Q.    Now, there is video recording of the

19   activities in blue pod on March 7, 2014, surrounding

20   the time of the Molina homicide, right?

21       A.    Yes.

22       Q.    Have you watched those recordings?

23       A.    I have.

24       Q.    And have you reviewed those recordings to

25   see if, in fact, Mr. Sanchez and Mr. Montoya entered

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258   2633

```
 1    Mr. Montoya's cell, or were present in Mr. Montoya's
 2    cell sometime after 5:00 p.m.?
 3         A.   As I sit here, I couldn't tell you.
 4         Q.   Did you make any effort to look?
 5         A.   I've watched it several times, yes.
 6         Q.   And, specifically, did you make any effort
 7    to identify that moment in time where these two were
 8    supposedly alone in Mr. Montoya's cell?
 9         A.   I don't remember making note of that.
10         Q.   And obviously if it did happen, that would
11    have been something you would have made a note of,
12    right, because it would have been important, it would
13    have corroborated the claims of Mr. Montoya?
14         A.   I don't think I did.
15         Q.   You don't think did you what?
16         A.   I don't think I sought out that specific
17    section to corroborate that.
18         Q.   Did you make any effort to corroborate the
19    statement of Mr. Montoya with respect to --
20              MR. CASTELLANO:  Objection, relevance.
21              THE COURT:  Sustained.
22         Q.   All right.  So now I'm moving on to, I
23    think, a statement of Mr. Armenta that you testified
24    about.  And just to direct your attention, I think on
25    direct examination you testified that Mr. Armenta
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2633

```
 1    said that he was --
 2         A.   Ma'am, I'll stop you.  I didn't talk about
 3    him.
 4         Q.   So maybe my notes are bad.  I have
 5    something here about Mr. Sanchez supposedly signaling
 6    to Mr. Montoya to go up, and Montoya went up the
 7    stairs and sat next to Armenta, who was hanging in
 8    front of his cell.  Do you recall that testimony?
 9         A.   I do.  Montoya's version of what happened,
10    yes.
11         Q.   Okay.  So that's something that Mr. Montoya
12    told you supposedly happened?
13         A.   Yes.
14         Q.   And when he told that you, did you ask him,
15    Well, where was -- where were you?  Where was Mr.
16    Sanchez?  What was the signal that he supposedly
17    gave?
18         A.   Yes.  I asked him to walk me through it.
19         Q.   And what did he say?
20         A.   I don't remember if it was a nod or a
21    point, I'd have to look at my 302.  But that's a
22    summation of what Mr. Montoya told me occurred.
23         Q.   And where did Mr. Montoya say Mr. Sanchez
24    was when the signal was supposedly made?
25         A.   I believe he said he was downstairs.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 2634

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2635

```
 1          Q.   And where was Mr. Montoya when the signal
 2   was supposedly made?
 3          A.   Down as well.
 4          Q.   So both people were allegedly on the -- in
 5   the common area downstairs?
 6          A.   Yes.
 7          Q.   And again, did you review the video from
 8   blue pod the evening of the Molina stabbing to
 9   determine whether such a signal was actually made by
10   Mr. Sanchez?
11          A.   Yes.  And I don't recall seeing the signal.
12   I just recall seeing Montoya go upstairs.
13          Q.   All right.  I'm moving on to Timothy
14   Martinez.  One of the first things in my notes is
15   that -- I have you saying that Timothy Martinez told
16   you that Mario Rodriguez told him the morning of the
17   Molina homicide to go get high?
18          A.   Yes.
19          Q.   Is that accurate?
20          A.   It is.
21          Q.   Okay.  And the morning being sometime
22   before noon?
23          A.   I'd assume so.
24          Q.   And is -- according to the story of Timothy
25   Martinez, was it also in the morning that he then
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2635

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261

1    engaged Mr. Rodriguez in this conversation about:

2    Why would I go get high, and was getting sort of an

3    attitude about why Rodriguez was telling him what to

4    do?

5         A.   Yes.

6         Q.   So, again, before noon, right?  That's what

7    morning means?

8         A.   It does to you and I, yes.  I think it was

9    probably before noon.

10        Q.   You can confirm that Mr. Martinez actually

11   said the word morning --

12        A.   Yes.

13        Q.   -- the morning of?

14        A.   Yes.

15        Q.   And again, when was this interview with Mr.

16   Martinez?  Or maybe we should say -- I don't know how

17   many you've had.  More than one?

18        A.   I definitely had more than one.  This --

19   the first interview looks like December 29.

20        Q.   Of what year?

21        A.   2016.

22        Q.   So after the indictment?

23        A.   Yes.

24        Q.   The first indictment.  Actually, over a

25   year after the first indictment, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2636

1          A.    Yes.

2          Q.    And prior to December 29 of 2016, Mr.

3     Martinez had made statements that were -- that denied

4     any sort of participation in the Molina homicide,

5     right?

6          A.    Yes.

7          Q.    Okay.  And was it during the same interview

8     with Mr. Martinez that Mr. Martinez told you that

9     Michael (sic) Rodriguez said that it was Daniel

10    Sanchez that wanted Timothy Martinez to participate

11    in the assault on Molina?

12         A.    Mario.  Yes.

13         Q.    Okay.  So that wasn't something that Daniel

14    Sanchez told Mr. Martinez?

15         A.    No, they had their own subsequent

16    conversation.  But the one you just recounted was

17    between Mario Rodriguez and Timothy Martinez.

18         Q.    And this is the same conversation when

19    Mario Rodriguez told Timothy Martinez that he's

20    supposed to go in and beat up Molina so that he can't

21    leave?

22         A.    Essentially, I think it was "knock him

23    out," yes.

24         Q.    And was this conversation part of the same

25    morning conversation about how the assault on Molina

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2637

```
 1    was going to go down?
 2         A.    Yes.   I can clarify an earlier answer if
 3    you want me to regarding times.
 4         Q.    That's fine.
 5         A.    I see it on page 3 of my December 29
 6    debrief report.   Martinez returned to the pod, you
 7    and I were discussing it being in the morning.   He
 8    specifically says he returned to the pod at around
 9    3:40 or 3:45 p.m.
10         Q.    Okay.   So he's saying it was the afternoon?
11         A.    The day of the homicide, yes.
12         Q.    Was there a previous statement that he made
13    to you that it was in the morning of the Molina
14    homicide that Mario Rodriguez told him he needed to
15    go get high?
16         A.    I don't know how you and I got on that.   I
17    went along with that, but I'm not sure how we got on
18    morning.
19         Q.    Yeah, well, I think when you initially
20    testified about the statement, you said the morning,
21    but --
22         A.    I think I read from my notes.   And I can
23    check them.
24         Q.    Sure, if you have them up there.
25         A.    We're talking about Martinez, and I went
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2638

1    directly from the 302, so -- I'm sorry, I just don't

2    know where we got morning.

3        Q.   Okay.  Was that something in your notes?

4        A.   Well, no.  When I was being questioned by

5    Mr. Castellano, I went off some highlights in my 302.

6    So I think maybe where we got stuck on morning was

7    that at 7:30 in the morning he left the pod to attend

8    his shift at the wheelchair program.  I just wanted

9    to clarify.

10       Q.   I think that's important, so I appreciate

11   that.  So Martinez, basically according to what you

12   seem to recall from these interviews, was gone from

13   7:30 in the morning till about 3:30 in the afternoon.

14       A.   I'm recording what he tells me, yes.

15       Q.   So if you did say morning, that was a

16   mistake?

17       A.   If I did -- I thought I was following your

18   lead.

19       Q.   I was just looking at my notes what you

20   said before.  Whatever, I'm glad we got it cleared

21   up.

22            So according to your 302, the conversation

23   that supposedly Martinez had with Mario Rodriguez was

24   somewhere around 3:40, 3:45 in the afternoon.

25       A.   Yes.  That's when he returned to the pod,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2640

```
 1   yes.
 2        Q.   And it was the same day of the Molina
 3   homicide?
 4        A.   Yes.
 5        Q.   Now, you testified about some conversations
 6   that Mr. Martinez claimed to have had with Mr.
 7   Sanchez?
 8        A.   Yes.
 9        Q.   And I want to start with the first one
10   where I think you said that Mr. Sanchez asked if
11   "Blue" had talked to him yet?
12        A.   I remember that, yes.
13        Q.   So did you ask Mr. Martinez when that
14   conversation occurred and where?
15        A.   Yes.
16        Q.   What did he say?
17        A.   It was after count, which was I think at
18   4:00 p.m.  So this is shortly after returning from
19   the wheelchair program.  I mean, I can read from my
20   report, but what I recall is he was making coffee,
21   and Mr. Sanchez came in and asked him some questions
22   relating to:  "Did "Blue" talk to you and explain
23   what's going on?"
24        Q.   So he -- Mr. Martinez was making coffee
25   where?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2641

```
 1        A.    In his cell.
 2        Q.    So this is a conversation that Mr. Martinez
 3   told you took place with -- between himself and Mr.
 4   Sanchez and Mr. Martinez' cell?
 5        A.    No, I think that they had the ability to do
 6   that, except that now it's count, or it's about to be
 7   count, so everyone has to go into their house, or
 8   their cell.  And Martinez was making coffee, and Mr.
 9   Sanchez was pounding on his wall to get his
10   attention.  They had adjoining cells.
11        Q.    So this was a conversation, according to
12   Martinez, that was between cells through the wall or
13   a vent or something?
14        A.    Yes.
15        Q.    And then I think you went on to say that
16   Mr. Martinez told you that Mr. Sanchez said something
17   about SNM needing to take things back, and that when
18   the S used violence, the S gets respect.  I'm
19   paraphrasing.
20        A.    That paraphrases it.
21        Q.    When was that it Mr. Martinez claimed that
22   Mr. Sanchez said that?
23        A.    This would be sometime around the 4:00
24   count.  And I don't know how long count takes, but
25   sometime after.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2641

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267

```
 1        Q.   So this was part of the conversation that
 2   he claimed to have with Mr. Sanchez between the two
 3   of them while they're both in their cells?
 4        A.   Yes.
 5        Q.   While they're both in their separate cells?
 6        A.   Correct.
 7        Q.   And I think the final statement that you
 8   attribute -- that you said Timothy Martinez
 9   attributed to Mr. Sanchez was to the effect of --
10   that Mr. Martinez needs to participate in the assault
11   on Molina because he hadn't earned his bones, and
12   that he needed to do it or else?
13        A.   Correct.
14        Q.   When did Mr. Martinez claim that happened?
15        A.   That's that same conversation.
16        Q.   Mr. Martinez told you that Mario Rodriguez
17   lobbied to give Martinez a pass, but that Mr. Sanchez
18   insisted that he participate?
19        A.   That's the story, according to --
20        Q.   Mr. Martinez?
21        A.   Correct.
22        Q.   Did Mr. Martinez give you the details of
23   that situation?  I mean, did he actually see Mario
24   Rodriguez speaking with Mr. Sanchez about that?
25        A.   No.  I mean, he related that they were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2642

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268

1   tight, Mr. Sanchez and Mr. Rodriguez.  But he didn't

2   say he saw them having that conversation.

3       Q.   Okay.  Did he say anything other than

4   that's what Mario Rodriguez told him?

5       A.   No.  I mean, he gave me some background on

6   why Mr. Sanchez might feel that way.  But that's all

7   he said about that.

8       Q.   Did he say when that supposedly happened?

9       A.   When Mario and Mr. Sanchez talked?

10      Q.   When Mario Rodriguez was doing his lobbying

11  to give Martinez a, quote, "pass"?

12      A.   No.  I'd assume it was earlier that day or

13  in the days leading up to it.  But I don't have the

14  exact time.

15      Q.   And you didn't ask Mr. Martinez when that

16  allegedly happened, if it did?

17      A.   No, he just related what Rodriguez told

18  him.

19      Q.   And other than Rodriguez telling him, he

20  didn't have any other personal knowledge about that

21  conversation actually taking place between Rodriguez

22  and Daniel Sanchez?

23      A.   No.

24      Q.   Now, I'm unclear -- and I'll admit that my

25  notetaking suffered during the direct examination.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2643

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 269

```
 1    But I have here something about on January 26, of

 2    some unknown year, there was somebody -- and I'm not

 3    sure if it's Mr. Rodriguez or somebody else talking

 4    about statements by Mr. Rodriguez -- that Mr.

 5    Rodriguez stood in the door, as Molina was getting up

 6    and yelling, "He's getting up.  What the fuck?"

 7         A.   Yes, so I probably referred to my January

 8    26, 2017, 302 report.

 9         Q.   And that's of who?  What interview?

10         A.   Timothy Martinez.

11         Q.   Okay.  So that was something that Timothy

12    Martinez told you?

13         A.   Yes.  This is -- more specifically, I had

14    some issues or follow-up questions with my earlier

15    interview.  So I'm drilling down, if you will, on

16    other additional details.

17         Q.   And so on that date it was Martinez that

18    was attributing some statements to Mario Rodriguez

19    about yelling, "He's getting up.  What the fuck?"

20         A.   Correct.

21         Q.   And at that point, Mr. Martinez claims that

22    Rodriguez is standing by the cell door of Javier

23    Molina?

24         A.   Yes.

25              THE COURT:  Ms. Jacks, would this be a good
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2644

```
 1    point for us to take our break for the evening?

 2             MS. JACKS:  I think it is.  And I actually

 3    think I'm done.

 4             THE COURT:  Okay.  All right.

 5             MS. JACKS:  Then I have overnight to think

 6    about things.

 7             THE COURT:  I know.  I've had that

 8    experience many times in my life.

 9             All right.  I appreciate everybody's hard

10    work.  See you tomorrow morning.  And have a good

11    evening.  Be safe in your travels.

12             (The Court stood in recess.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                     C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on December 6, 2017.

15

16

17

18   _____
     Jennifer Bean, FAPR, RMR-RDR-CCR
19   Certified Realtime Reporter
     United States Court Reporter
20   NM CCR #94
     333 Lomas, Northwest
21   Albuquerque, New Mexico 87102
     Phone:   (505) 348-2283
22   Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                    CR. NO. 15-4268 JB

6   ANGEL DELEON, et al.,

7        Defendants.

8                  VOLUME 2

9        Transcript of James Hearing and
    Daubert/Rodriguez Hearing Proceedings before
10  The Honorable James O. Browning, United States
    District Judge, Las Cruces, Dona County, New Mexico,
11  commencing on November 28, 2017.

12
    For the Government:  Ms. Maria Armijo; Mr. Randy
13  Castellano; Mr. Matthew Beck

14  For the Defendants: Mr. Brock Benjamin, Mr. Richard
    Sindel; Ms. Cori Harbour-Valdez; Mr. Patrick Burke;
15  Mr. Jim Castle; Mr. Robert Cooper; Mr. James Lahann;
    Mr. Orlando Mondragon; Mr. John Granberg; Mr. Scott
16  Davidson; Ms. Amy Jacks; Mr. Richard Jewkes; Mr. Marc
    Lowry; Ms. Theresa Duncan; Ms. Amy Sirignano; Mr.
17  Christopher Adams; Mr. Michael Davis; Ms. Carey
    Bhalla; Mr. Ryan Villa; Mr. Donovan Roberts; Ms.
18  Angela Arellanes; Mr. Samuel Winder

19
    For the Defendants (Via telephone):  Ms. Justine
20  Fox-Young

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2647

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2648

```
 1            THE COURT:  Good morning everyone.  I
 2   appreciate everyone making themselves available to me
 3   this morning.
 4            Hey, we had a little trouble getting in
 5   this morning.  So I know tensions are going to run
 6   high with what we're having to go through and that
 7   we're having to listen to.  I know we're getting 61
 8   days away from trial.  Everybody is getting a little
 9   cranky, anxious, overworked, nobody likes to be here
10   eight hours a day or more.  But we've got to work
11   together.  We've got to work with the marshals.
12   We've got to transport people, got to work with the
13   Court.  It's getting harder on all of us if we can't
14   get people in and out quickly.  So, gentlemen, just
15   be cooperative with the marshals as they move you in
16   and out.  Try to keep your emotions under control.
17            Counsel, speak to your clients.  This is
18   part of it, we've got to move in and out so we don't
19   lose 15, 20 minutes every day.  This is a lot later
20   than I usually start court.  Most days I start 8:30.
21   And they made a concession to marshals on transport;
22   we'll start at 9:00.  See, we're starting at 9:20.
23   So we've got to work harder to move in and out.  And
24   everybody sort of keep their emotions under control.
25   So everybody work real hard to do that.  It's going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2648

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2649

 1    to be harder as we get closer to trial.  They don't

 2    call it a trial for nothing.  It's a hard thing.  But

 3    we've got to work together to make sure it happens.

 4            All right.  I'm ready to resume the James

 5    hearing.

 6            I understand Ms. Armijo wants to discuss

 7    scheduling before we resume the James hearing?

 8            MS. ARMIJO:  Yes, we did.

 9            THE COURT:  All right.  Ms. Armijo.

10            MR. BECK:  So, Your Honor, after we talked

11    about the Daubert motions yesterday, the witnesses

12    aren't available on short notice to get here either

13    today or tomorrow.  I'm fairly confident we may have

14    enough material, since we're going to go through the

15    Daubert hearing with two of our gang experts, that

16    we'll have enough material to go through Wednesday.

17    So we would like to schedule the Daubert hearings for

18    at least Ms. Smith and Mr. Chavez, I think the

19    Daubert hearing that Mr. Garcia was requesting for

20    further down the road.  And then Dr. Zumwalt, I

21    think, to the extent that a Daubert hearing is

22    required for Dr. Zumwalt -- and my understanding is

23    they're requesting one -- I think that can be put on

24    the back burner since that relates to counts in the

25    second trial, not this trial.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Ms. Wild, do you have any
 2   thoughts on that?  Does that sound doable from a
 3   scheduling standpoint, Ms. Wild?
 4            MR. VILLA:  Your Honor?
 5            THE COURT:  Hold on.
 6            THE CLERK:  Judge?
 7            THE COURT:  Yes.
 8            THE CLERK:  Can you hear me?
 9            THE COURT:  Yeah.  From a scheduling
10   standpoint, does that sound like it works?
11            THE CLERK:  Let me look at a few things.
12   I've got communications coming in from other folks
13   about shuffling some things around.  So let me look
14   at it.  It would be helpful if folks can give me some
15   kind of a time estimate as to how long they think
16   they're going to need to get this Daubert hearing
17   done.
18            THE COURT:  Well, without responding
19   whether that's okay, let's just kick it down the road
20   a little bit, and see how today goes.  And then we'll
21   see where we are as the two days develop.
22            MR. BECK:  That sounds fair.
23            THE COURT:  All right.  Thank you, Mr.
24   Beck.
25            Mr. Villa?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. VILLA:  I was going to tell you that

2    Ms. Fox-Young couldn't hear you, so I thought maybe

3    that was what was going on.

4              THE COURT:  Can you hear us now, Ms.

5    Fox-Young?

6              MS. FOX-YOUNG:  Yes, Your Honor.

7              THE COURT:  Ms. Sirignano?

8              MS. SIRIGNANO:  Your Honor, I just would

9    ask that -- I appreciate what the Government is

10   trying to do here with getting these experts in from

11   Quantico.  My request would be to just try and get it

12   set up before Christmas, with the dates that we have

13   already calendared for the hearings.  That's just our

14   request.

15             THE COURT:  Well, I'm sure Ms. Wild can

16   hear you.  Communicate that to her, talk to Mr. Beck.

17   I probably can't, you know, realistically sort all

18   that out this morning.  So we'll just -- you talk to

19   the Government, talk to Ms. Wild, and bring it up

20   before we leave here tomorrow.

21             MS. SIRIGNANO:  Thank you, Your Honor.

22             THE COURT:  All right.  Thank you,

23   Ms. Sirignano.

24             All right.  Mr. Acee, if you'll return to

25   the witness box.  Mr. Acee, I'll remind you that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2651

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2652

```
 1    you're still under oath.

 2            Ms. Jacks, did you have some further

 3    questions overnight?

 4            MS. JACKS:  I actually don't.

 5            THE COURT:  Really?  Okay.

 6            Ms. Sirignano, are you up next?  Mr. Adams?

 7            MS. SIRIGNANO:  Mr. Adams is.

 8            THE COURT:  All right.  Mr. Adams.

 9                      EXAMINATION

10    BY MR. ADAMS:

11        Q.   So you made one reference, I think, Special

12    Agent Acee, to statements attributed to Chris Garcia?

13        A.   I think that's correct.

14        Q.   And that was only in relation to statements

15    communicated to you by Timothy Martinez?

16        A.   Yes.

17        Q.   And did you give that full statement in

18    your direct?

19        A.   I think I read from my report.  I think I

20    did.

21        Q.   And that was your report which you handed

22    over to us for us to be able to look at?

23        A.   Yes, sir.

24        Q.   And there were three reports related to

25    statements made by Timothy Martinez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2652

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 2653

```
 1          A.   Yes.

 2          Q.   To law enforcement?

 3          A.   Yes.

 4          Q.   And which report were the Chris Garcia

 5     references in?

 6          A.   They're on page 3 of the January 26, 2017

 7     meeting with Tim Martinez.

 8          Q.   What number meetings or debriefings was

 9     that for Mr. Martinez?

10          A.   I think that was the third one.  Yes, the

11     third one.

12          Q.   Had Mr. Garcia been referenced prior to

13     that?

14          A.   I don't think so, because we primarily

15     covered the Molina murder.

16          Q.   What was the context in which the

17     statements being attributed to Mr. Garcia came up?

18          A.   Well, I usually follow a format in the

19     debriefs.  And so one of the standard questions I ask

20     is about the Shane Dix homicide.  I also ask about

21     other members.  And then I ask about the defendants

22     that either haven't cooperated or haven't entered a

23     plea.  And so in covering that format, that's how

24     Mr. Garcia came up.

25          Q.   So you would just run through a list of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2653

```
 1  people who still had active cases?
 2       A.   Yes.
 3       Q.   And you said:  What do you know about Chris
 4  Garcia?
 5       A.   No, that's a little too broad.  I generally
 6  ask if -- with regard to Mr. Garcia, I usually ask
 7  what they think of him, what they know about him,
 8  whether or not they had any interactions with him,
 9  with drugs, and if they knew anything about the Shane
10  Dix homicide, or any other useful material in our
11  investigation.
12       Q.   And what -- who was present when you had
13  this conversation with Timothy Martinez?
14       A.   So this third conversation took place here
15  at this courthouse when Mr. Martinez pled, and his
16  attorney notified me that Mr. Martinez wanted to
17  speak with me.  So I joined Mr. Almanza in visiting
18  with his client down in the attorney-client room, so
19  it was the three of us.
20       Q.   After the plea?
21       A.   Yes.
22       Q.   And that's when he told you that he had had
23  conversations with Chris Garcia at Otero?
24       A.   He told me -- he started off by clarifying
25  some details of his earlier debrief.  And then the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  conversation kind of followed in a chronological

2  order as reported, as documented in my 302.  So he

3  walked away from the first debrief like a lot of the

4  guys will do.  And then he'll, at the second debrief,

5  he'll produce a note either out of his sock or his

6  attorney will provide it to me of other stuff they

7  went back after the first debrief and thought of.  So

8  that's what took place at this third debrief.

9       Q.   A note from the sock, or a note from --

10      A.   I think he pulled a -- yeah, he pulled a

11 piece of paper out of his sock or his shoe.  And that

12 was material that he wanted to cover.  So he had

13 organized his own notes, so --

14      Q.   And was Chris Garcia and this alleged Otero

15 conversation on that list?

16      A.   That was one of the things that he covered,

17 yes.

18      Q.   And it was one of the things referenced

19 specifically on his list from the sock, or wherever?

20      A.   Yes.

21      Q.   And do you have that note?

22      A.   I don't think I do.  I think his attorney

23 kept it.

24      Q.   So let's talk about this alleged

25 communication out in the prison yard.  Where was this

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                         1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

DNM 2655

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2656

1   supposed to have occurred?

2       A.   At the Otero prison facility when all the

3   defendants were there.

4       Q.   Out in the rec yard?

5       A.   Yes.

6       Q.   When?

7       A.   Well, I understood it to mean when we

8   initially arrested everyone, they went to MDC up in

9   Bernalillo County.  From there, they went down to

10  Otero.  So within a few days to maybe about a

11  week-and-a-half of the December arrest.  And then

12  from that point, the marshals disbursed the

13  defendants to different facilities.  So I don't have

14  an exact date, and I don't think Mr. Martinez did

15  either.

16      Q.   Who else was around for this conversation?

17      A.   It was just the two of them.

18      Q.   Were other people out in the yard?

19      A.   Yes.

20      Q.   Who else would have seen these two

21  gentleman talking privately with each other?

22      A.   Perhaps some of the gentlemen here today.

23  The defendants were housed together and would -- my

24  understanding is they would -- initially they rec'd

25  together.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2656

```
 1          Q.   Do you have any corroboration of that other

 2   than what Mr. Martinez told you?

 3          A.   I don't.

 4          Q.   No video of the yard?

 5          A.   No.

 6          Q.   No logs showing them out in the yard

 7   together at the same time?

 8          A.   No.

 9          Q.   Did you attempt to get any corroboration of

10   this alleged communication?

11          A.   No.

12          Q.   How much time passed between the alleged

13   communication and when it was reported to you?

14          A.   A little over a year.

15          Q.   And is that the only hearsay-type statement

16   related by Mr. Martinez regarding Mr. Garcia, the one

17   you went through on your direct examination

18   yesterday?

19          A.   I believe so.

20          Q.   You read from Mr. Martinez' third 302?

21          A.   I believe so.

22          Q.   And all those statements were clearly after

23   the conclusion of the incident related to Mr.

24   Marcantel, correct, 13 months after the arrest?

25          A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2657

```
 1            MR. ADAMS:  May I have the Court's
 2    indulgence?
 3            THE COURT:  Certainly.
 4            MR. ADAMS:  Thank you.  Nothing further.
 5            THE COURT:  Thank you, Mr. Adams.
 6            Anyone else want to question Mr. Acee on
 7    the Molina side?  Mr. Villa?
 8            MR. VILLA:  Thank you, Your Honor.
 9            MR. CASTELLANO:  Your Honor, Mr. Villa
10    questioned Agent Acee yesterday.  Is he getting a
11    second shot?
12            THE COURT:  Yes, he did.  But given that
13    the defendants may not always have the same
14    interests, I probably am going to be a little bit
15    generous, liberal, to the defendants, to make sure
16    they exhaust their questions before I turn it back
17    over for redirect.  So Mr. Villa.
18            MR. VILLA:  And I appreciate that, Your
19    Honor.  As the Court recalls, I didn't get an
20    opportunity to review Agent Acee's notes as I began
21    his cross-examination.  So I think I had reserved in
22    order to do this.
23                      EXAMINATION
24    BY MR. VILLA:
25        Q.   Agent Acee, I just want to back up a little
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2659

 1   bit.  You talked about the December arrests; correct?

 2        A.   Yes.

 3        Q.   Those arrests were made following the first

 4   indictment in this case?

 5        A.   Correct.

 6        Q.   And Mr. Perez was not included in that

 7   first indictment; true?

 8        A.   True.

 9        Q.   He wasn't arrested in December on any other

10   basis by you?

11             MR. CASTELLANO:  Objection, relevance.

12             THE COURT:  Overruled.

13        A.   No, he was not.

14        Q.   Or anybody under your direction?

15        A.   No.

16        Q.   And, in fact, he was not charged in this

17   case until the first superseding indictment, which

18   occurred in approximately April of 2016?

19        A.   That's right.

20        Q.   So let me take you back.  I had asked you,

21   when I first examined you yesterday, about statements

22   Mr. Martinez made during his debrief to you relative

23   to the wheelchair program.  Do you remember that?

24        A.   Yes.

25        Q.   And I think you testified that you didn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2659

```
 1   recall exactly what Mr. Martinez had said.  I might

 2   be a little bit off about what you said yesterday.

 3   Does that sound right?

 4        A.   I don't remember that part of our

 5   conversation, but --

 6        Q.   Let me ask you this:  Isn't it true that

 7   Mr. Martinez told you that at the Southern New Mexico

 8   Correctional Facility, which I'll just call Southern,

 9   that inmates who were members of SNM used to steal

10   metal from the wheelchair program to fashion into

11   shanks?

12        A.   Yes.

13        Q.   And he also told you that two of those

14   inmates, Dale Chavez and Jason Wright, would bring

15   those metal pieces back and give them to Daniel

16   Sanchez and Mario Rodriguez?

17        A.   Yes.

18        Q.   And it's true, isn't it, that both Dale

19   Chavez and Jason Wright were in the blue pod, same

20   pod where Daniel Sanchez and Mario Rodriguez were?

21        A.   Yes.

22        Q.   The same pod where Javier Molina was

23   killed; correct?

24        A.   Yes.

25        Q.   Now, when Mr. Martinez told you about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2660

```
 1    statements that Daniel Sanchez made with regard to

 2    the source of the shanks used on Javier Molina, he

 3    didn't tell you that he had any other basis to

 4    believe that, other than what Daniel Sanchez said to

 5    him; correct?

 6         A.   Well, yes, and no.  I mean, yes, in that he

 7    related what Daniel Sanchez told him.  But with

 8    regard to the shanks, I think he also heard about

 9    that from Mario Rodriguez.

10         Q.   Okay.  So Mario Rodriguez, who I think you

11    also testified allegedly told Jerry Montoya when he

12    gave him the shank, it came from Rudy Perez' walker?

13         A.   I think that's accurate.

14         Q.   I mean, I think that was part of your

15    testimony yesterday, and what Jerry Montoya told you;

16    true?

17         A.   Yes.

18         Q.   But other than what Timothy Martinez had

19    heard, he didn't have any other basis?  For instance,

20    he didn't see anybody taking Mr. Perez' walker or

21    removing pieces from Mr. Perez' walker, that sort of

22    thing?

23         A.   No, he didn't tell me that.

24         Q.   And Mr. Perez was also in the blue pod, the

25    same pod where all of our players were; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2661

```
 1        A.   Yes, sir.
 2        Q.   You didn't see any video evidence
 3   demonstrating somebody going into Mr. Perez' room,
 4   removing the walker, taking pieces from the walker,
 5   anything like that?
 6        A.   I have not.
 7        Q.   Any video evidence at all corroborating the
 8   statements that Timothy Martinez told you?
 9        A.   With regard to getting metal pieces out of
10   Mr. Perez' cell, no.
11        Q.   Yeah, that should be --
12        A.   No.
13        Q.   Nothing like that?
14        A.   No.
15        Q.   And video cameras do capture the rooms in
16   the pod; true?
17        A.   Externally, the doorway.
18        Q.   But if the door was open and somebody went
19   in, you could see that?
20        A.   Parts of the room, yes.
21        Q.   And maybe you could see somebody trying to
22   dismantle the walker?
23             MR. CASTELLANO:   I'm going to object again.
24   Once again, we're getting away from the actual
25   statements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2663

1            THE COURT:  Tie it to the James portions

2     here.

3            MR. VILLA:  Again, Your Honor, the second

4     element that the Government must establish is that

5     Mr. Perez was member of this conspiracy to kill

6     Javier Molina.  This would be independent evidence

7     other than the statements we've heard that would or

8     would not corroborate that.

9            THE COURT:  Well, I'll give you a little

10    leeway.  But let's tighten it up on the statements.

11        Q.   And I think that's probably the end of this

12    line.  But Agent Acee, just to answer that last

13    question, the video could capture somebody going into

14    the room messing with the walker?

15        A.   That's possible, yes.

16        Q.   Now, the Government in its response has

17    said that the shanks apparently used to kill Javier

18    Molina make a perfect fit to Mr. Perez' walker.  Are

19    you familiar with that?

20        A.   I have heard that.

21        Q.   Where is Mr. Perez' walker?

22        A.   I'm not sure.

23        Q.   Are you aware whether it's being held in

24    evidence anywhere?

25        A.   I don't believe it is.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2663

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2664

```
 1          Q.   Isn't it true that the walker is gone?
 2          A.   Well, I don't know where it is.  It's
 3   not -- unfortunately, it's not unusual for
 4   Corrections to have evidence somewhere, and I don't
 5   always know about it until sometime later.  But I
 6   have not seen it and I don't know where it is.
 7          Q.   And you, yourself, didn't take some of the
 8   shanks recovered following Mr. Molina's murder and
 9   try to see if they fit in a walker, did you?
10          MR. CASTELLANO:  Objection as to relevance,
11   Your Honor.
12          THE COURT:  Overruled.
13          A.   I have not handled the shanks at all or
14   pieces of them, or the walker.
15          Q.   Anybody under your direction have done the
16   same thing?
17          A.   No.
18          Q.   So nobody came to you from the Department
19   of Corrections and said:  I matched this up to a
20   walker that I believe came from Mr. Perez, and it's a
21   perfect fit?
22          A.   No one came to me and did that.  And I
23   didn't direct anyone to do that.  I have heard some
24   conversation or back and forth on someone possibly
25   having done that.  But it wasn't me or any of the
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2664

1    agents that work with me.

2         Q.   And have you seen any reports or photos of

3    such a demonstration being done?

4         A.   No, I think I've only seen photos of the

5    weapons themselves, the evidence photos.  But I don't

6    think I've seen any photos of the comparison.

7         Q.   There is a photo of a walker; correct?

8         A.   I believe so.

9         Q.   Do you have any idea who took that photo?

10         A.   I believe the Department of Corrections or

11    the State Police.

12         Q.   But you don't know which one?

13         A.   As I sit here, no, I don't know.

14         Q.   And as you sit here today, you don't know

15    where the walker in question is, or if it's still

16    available?

17         A.   That's right.

18              MR. VILLA:  That's all my questions, Your

19    Honor.

20              THE COURT:  Thank you, Mr. Villa.

21              Anyone else on the defense side that wants

22    to cross-examine Mr. Acee on the Molina murder,

23    alleged Molina murder?

24              All right.  Mr. Castellano, do you have

25    redirect of Mr. Acee?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2665

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 20666

```
 1              MR. CASTELLANO:  Yes, Your Honor.
 2              THE COURT:  Mr. Castellano.
 3                     REDIRECT EXAMINATION
 4    BY MR. CASTELLANO:
 5         Q.   Just a follow-up from yesterday, Agent
 6    Acee.  People asked you -- Mr. Lowry asked you about
 7    people sometimes making false claims about various
 8    acts they've done for the SNM.  Do you recall that?
 9         A.   Yes.
10         Q.   And are you aware that sometimes there are
11    also consequences for people making false claims
12    about criminal conduct?
13         A.   Yes.
14         Q.   What kinds of consequences are you aware
15    of?
16         A.   That's one of the questions I will usually
17    ask the SNM members that I talk to.  And the
18    consequences have ranged from some guys saying that's
19    tolerable or acceptable, it happens; to others saying
20    that they should get a beat-down for it.
21         Q.   Now, other than face-to-face communications
22    within the prison system, how else can inmates
23    communicate with each other?
24         A.   Through third parties, three-way calls,
25    through kites, wilas, or notes; through correctional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2666

1    staff either, you know, intentionally passing a

2    nefarious message, or unintentionally doing it.

3        Q.   So is it then possible that people can

4    communicate with each other, including communicating

5    orders to hit somebody without having a face-to-face

6    interaction?

7        A.   Yes.

8        Q.   And explain the third party communications

9    you mentioned.

10       A.   Well, the inmates -- obviously, their calls

11   are recorded, with the exception of legal calls.  The

12   way the three-way call works is that an inmate places

13   a call to, say, a girlfriend, who then simply puts

14   her phone on speaker, has a secondary phone, and

15   calls another party.  I've observed this where two

16   inmates at different facilities are able to talk to

17   each other through that three-way call.

18       Q.   Yesterday Ms. Jacks asked you about Lupe

19   Urquizo and when you first spoke to him.  Do you

20   remember that?

21       A.   Yes.

22       Q.   And you first -- well, you stated you first

23   learned about him in court.  Do you remember that?

24       A.   Yes.

25       Q.   How was it that you learned about him in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2667

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22

```
 1   court?
 2        A.   We were having, I believe it was a motions
 3   hearing, and I overheard one of Mr. Sanchez'
 4   attorneys mention Lupe Urquizo.  And I don't want to
 5   misquote him, but the gist of it was Lupe Urquizo was
 6   the one that brought the paperwork down from PNM to
 7   Southern.  That piqued my interest and so I went and
 8   talked to him.
 9        Q.   And when you talked to him the first time,
10   was he represented by counsel?
11        A.   No.
12        Q.   And had you learned that anyone else had
13   spoken to him before you had spoken to him?
14        A.   Yes.
15        Q.   Who was that?
16        A.   Ms. Jacks, and possibly a defense
17   investigator.
18        Q.   I wanted to clarify the statement made by
19   Chris Garcia that Timothy Martinez relayed to you.
20   At that point, was he housed with Defendant Garcia,
21   or had he been moved?
22        A.   At the time in which he told me the
23   statement, they were no longer housed at the same
24   facility.  At the time that he spoke with Garcia,
25   they obviously were.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Relating to Mr. Perez, have other members

2    indicated to you that Mr. Perez is a member of the

3    SNM?

4      A.   Yes.

5      Q.   And are you aware of him making admissions

6    to law enforcement that he's a member of SNM?

7      A.   Yes.

8           MR. CASTELLANO:   May I have a moment, Your

9    Honor?

10          THE COURT:   You may.

11          MR. CASTELLANO:   Thank you, Your Honor.   I

12   pass the witness.

13          THE COURT:   Thank you, Mr. Castellano.

14          All right.   Mr. Acee, you may step down.

15   Thank you for your testimony.

16          You have something, Mr. Lowry?

17          MR. LOWRY:   I do.   He just opened it up on

18   redirect, Your Honor.

19          THE COURT:   All right.   Mr. Acee, if you'll

20   be seated and take Mr. Lowry's questions.   Mr. Lowry.

21          MR. LOWRY:   Thank you, Your Honor.

22                       EXAMINATION

23   BY MR. LOWRY:

24      Q.   Good morning, Mr. Acee, Special Agent Acee.

25      A.   Good morning.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   You had mentioned about consequences for

2   taking credit for something you didn't do?

3      A.   Yes.

4      Q.   And what are some of the types of

5   consequences?  You said there were beat-downs or --

6   what else?

7      A.   Well, in some cases some of the members

8   told me that they didn't really see it as a problem,

9   and that it's a common occurrence to take credit for

10   something they didn't do or to brag.

11      Q.   And sometimes consequences for violating

12   the rules of the organization, you could be kited out

13   or sent to Level 6?

14      A.   I think that occurs.  I don't know that

15   that's part of reglas or the rules, but I think that

16   does occur, yes.

17      Q.   So if you didn't live up to the standards

18   of the SNM, you could be removed from, for instance,

19   Southern facility, here in Las Cruces, to Level 6,

20   based on the communication of other alleged members

21   of the SNM to the Correctional Department?

22      A.   I think anyone -- yes, I think anyone can

23   send a kite at any time saying anything.

24      Q.   Now, you had mentioned just on redirect

25   that the first time you were aware that Lupe Urquizo

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2670

1    may have been involved was something you overheard in

2    the courtroom after the case had been indicted?

3         A.   Yes.

4         Q.   How long have you been actively involved in

5    the investigation of this case?

6         A.   It started in March of 2015.  I was up at

7    the facility investigating a different gang.  And the

8    letters came out, and so that's when I was asked to

9    look into it.

10        Q.   Now, from March of 2015 forward, were you

11   involved with looking at Jerry Armenta's

12   participation in the allegations with the Molina

13   murder?

14        A.   Yes.

15        Q.   Did you review the videotaped interview in

16   the state case that was done at the Department of

17   Corrections?

18             MR. CASTELLANO:  Objection.  This is beyond

19   the scope of redirect, Your Honor.

20             MR. LOWRY:  Your Honor, I can tie this

21   straight --

22             THE COURT:  I'm going to give you a little

23   leeway.  Then I'll give Mr. Castellano an opportunity

24   to expand his redirect.  Overruled.

25        A.   At the time I heard Urquizo's name, I had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2671

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 26

```
 1    not.  I have since then, though.

 2         Q.   My question is very simple:  Did you review

 3    the videotaped -- I would call it interrogation; you

 4    might take offense to that -- but the videotaped

 5    conversation between the Department of Corrections

 6    staff, the state prosecutor, and Jerry Armenta?

 7         A.   Well, my answer is I have seen it.  But it

 8    sounds like you're asking me had I seen it prior to

 9    hearing the name in court.

10         Q.   Well, let me ask you really simply:  When

11    did you first review the video?

12         A.   Maybe about nine months ago.

13         Q.   So you hadn't reviewed that video before

14    the case was indicted?

15         A.   No.

16         Q.   But you are aware in that video, having

17    reviewed it, that Jerry Armenta pinpointed Lupe

18    Urquizo as one of the two people that, quote,

19    "donkeyed the paperwork down"?

20         A.   Yes.

21         Q.   That wasn't of interest to you at the time

22    the statement was made by Mr. Armenta to

23    prosecutorial officials and Department of Corrections

24    officials?

25         A.   It was.  But there were so many different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2672

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 27

1    versions of what happened, I was trying to put my own

2    eyes on it, and look at it from an unbiased or fresh

3    perspective, not relying on the prior stuff.

4         Q.   What do you mean "different versions of

5    what happened"?

6         A.   Well, their initial version of what

7    happened that they told the state investigators,

8    versus what they're telling me in their second or

9    third debrief.  There are a lot of variance and

10   differences.

11        Q.   And, for instance, one of those differences

12   may have led the United States Government to

13   incorrectly indict Mauricio Varela for the Molina

14   murder?

15        A.   I don't think he was incorrectly indicted.

16   I had -- as more defendants began cooperating, I

17   learned more.  And at the time we sought the

18   indictments, we went with the information that we had

19   at the time.  I don't want say it was incorrect.  I

20   just learned more since then.

21        Q.   And since you learned more, the Molina

22   counts against Mr. Mauricio Varela were dropped,

23   weren't they?

24        A.   I believe they were.

25        Q.   And that's because you learned that the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2674

```
 1    initial statements that you relied upon were
 2    unreliable?
 3         A.   Yeah.  We got clarity, we got more
 4    information.  I mean, the decision to drop a case
 5    certainly isn't mine, to drop an indictment.  But my
 6    role is to keep gathering information and try to
 7    verify stuff, and then report that back to the
 8    prosecutors.
 9         Q.   That's fair enough.  But it's also fair to
10    say that, as you gather information, that changes the
11    legal landscape of a case?
12         A.   That's fair, yes.
13         Q.   And in some cases the information you learn
14    may change the legal landscape to the point where the
15    right thing to do is to dismiss a charge?
16         A.   Absolutely.
17              MR. LOWRY:  I have no further questions,
18    Your Honor.
19              THE COURT:  Thank you, Mr. Lowry.
20              Any other defendant following up on
21    redirect or Mr. Lowry's questions, have any questions
22    of Mr. Acee?
23              MS. JACKS:  I do, Your Honor.
24              THE COURT:  Ms. Jacks.
25              MS. JACKS:  Thank you.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2674

```
 1                        EXAMINATION
 2    BY MS. JACKS:
 3          Q.   Good morning, Agent Acee.
 4          A.   Good morning.
 5          Q.   I want to start with some questions that
 6    Mr. Castellano asked you this morning regarding the
 7    way inmates communicate with each other.  And I think
 8    you listed that you said there are ways other than
 9    face-to-face conversations that inmates can
10    communicate with each other?
11          A.   Yes.
12          Q.   And is that something that you've been
13    aware of prior to beginning your investigation in
14    this case?
15          A.   Yes.
16          Q.   So you knew this back before you became
17    involved in March of 2015?
18          A.   That inmates can communicate?
19          Q.   In various ways.
20          A.   Yes.
21          Q.   Through notes, through phone calls, in rec
22    cages, through third parties.  You're aware of that?
23          A.   Yes.
24          Q.   That's not something that's new to you?
25          A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2675

```
 1            Q.   And when you're interviewing somebody that
 2    is trying to be a cooperator for the Government,
 3    somebody that's trying to leverage information they
 4    have for a reduced punishment, you interview that
 5    person differently than, say, an eyewitness to a
 6    crime, right?
 7            A.   Perhaps.
 8            Q.   Perhaps you're a little more suspect about
 9    the information that they're giving you?
10            A.   I'm always suspect, but probably a little
11    bit more.
12            Q.   And you want to make sure that you pin them
13    down about things that they're telling so you that
14    can you go either corroborate, cross-reference it, or
15    check it out?
16            A.   Yes.
17            Q.   And that's something that you were doing
18    ever since you started working on this case, right?
19            A.   Yes.
20            Q.   It's not something that you just learned to
21    do?
22            A.   No.
23            Q.   And so is it fair to say that when you were
24    interviewing cooperators involved, or informants
25    involved in this case, that it was in your mind that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2676

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 31

```
 1    you needed to test their information?
 2         A.   Yes.
 3         Q.   That you needed to try to pin down their
 4    information or what they were trying to give to you?
 5         A.   Yes.
 6         Q.   And it was also in your mind that inmates
 7    can communicate in many different ways?
 8         A.   Yes.
 9         Q.   And so, with that in mind when you were
10    questioning these informants, did you, when they told
11    you, Oh, I heard this from so and so, did you then
12    try to pin them down on how they heard it?
13         A.   In some instances, yes.  In others, no.
14         Q.   Well, was one of the things that you asked
15    these informants -- let's say, for example, Mr.
16    Urquizo, when Mr. Urquizo claimed to have had a
17    conversation with somebody, did you ask him when and
18    where and how?
19         A.   Yes.
20         Q.   And if he told you that information, if he
21    was able to tell you that information, did you put it
22    in your report?
23         A.   Yes.
24         Q.   With respect to the questions this morning
25    about Lupe Urquizo, when you spoke with Mr. Urquizo,
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2677

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 2678

1    did you ask him whether he had met with other people

2    from the defense, met with people from the defense?

3         A.   Yes.  By way of introduction, I told him I

4    was there because his name came up in court.

5         Q.   Okay.  And did he tell you that he had met

6    with me and an investigator working on behalf of Mr.

7    Sanchez?

8         A.   Yes.

9         Q.   And I would assume you were curious about

10   what he might have told us?

11        A.   Yes.

12        Q.   Because you don't have a copy of the report

13   of that interview, do you?

14        A.   No.

15        Q.   And did you ask Mr. Urquizo what he told me

16   and my investigator when we spoke with him about this

17   story regarding paperwork being transferred from PNM

18   to Southern?

19        A.   I didn't frame the question that way.  I

20   was after the same information.  I wanted to know:

21   Why is Mr. Sanchez' defense team bringing your name

22   up in court, and what do you have to do with this?

23        Q.   So that's what you told Mr. Urquizo?

24        A.   Yes.

25        Q.   And what did he say?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2678

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32679

 1        A.    Well, we had a couple-hour conversation.

 2        Q.    Well, what did he say about what he told us

 3   regarding he was the person who transported the

 4   paperwork to Southern?

 5        A.    I think that he said that he lied to you

 6   and said that he was not.  And then he had some

 7   comments about that.  And then this is where he

 8   started getting kind of nervous, and he said

 9   something along these lines -- this isn't a direct

10   quote -- I know what you're looking for, I know the

11   information, but what's going to happen to me?

12             And so I explained the possibilities of

13   what could happen.  We went back and forth on that.

14   We got to the point where I thought it was best to

15   probably get him an attorney so that he could feel

16   comfortable being truthful.

17        Q.    So this was in the first meeting that you

18   had with him?

19        A.    Yes.

20        Q.    And he said:  I know what you're looking

21   for.  What's going to happen to me?

22        A.    Those aren't direct quotes, but I'm

23   summarizing a two-hour conversation.

24        Q.    And did you tell him in that conversation

25   that if he provided you with what you were looking



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2679

```
 1    for, that you could do something for him?
 2         A.    Not that -- no, not -- I talked about the
 3    possibilities.  I did not --
 4         Q.    Possibilities of what?
 5         A.    Well, like charging him in the homicide,
 6    doing his time in the feds instead of the state, of
 7    getting him an attorney.  I talked to him about what
 8    I perceived to be the realistic possibilities with
 9    him giving us that information.
10         Q.    So before he told you anything about the
11    paperwork, you gave him information about benefits he
12    could receive if he told you what you were looking
13    for?
14         A.    Getting charged by the feds and getting
15    additional time is not a benefit.  I wouldn't
16    consider that a benefit.
17         Q.    Well, the way you phrased it, going and
18    doing his time in the feds, and getting an attorney,
19    were those benefits?
20         A.    I don't think so.
21         Q.    What about money or social visits?
22         A.    No.
23         Q.    Or confinement conditions?
24         A.    No.   Those are all things that are part of
25    the process of cooperation, but those aren't things
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

2681

```
 1   that I advertise in our first sit-down.
 2        Q.   So did you talk to him about it in your
 3   second and third sit-downs, things like money, social
 4   visits, and improved conditions of confinement?
 5        A.   Yes, not exactly in those terms, but
 6   ultimately, it's the same thing.  Security concerns;
 7   that has to do with probably comfort level and what
 8   facility they're at.
 9        Q.   In the first conversation you had with Mr.
10   Urquizo did you tell him that it was possible that he
11   could be charged with racketeering or VICAR charges?
12        A.   Yes.
13        Q.   And that he could face a punishment of life
14   in prison, or worse?
15        A.   I don't know that I said that.  But I
16   definitely said that he could be charged with
17   racketeering offenses.
18        Q.   And in any of your interactions with Mr.
19   Urquizo -- well, have you paid Mr. Urquizo any money
20   from the first time met with him till now?
21             MR. CASTELLANO:  Objection, Your Honor.
22   We're way beyond the statements at this point.
23             THE COURT:  How do you tie that to the
24   James hearing?
25             MS. JACKS:  I think it goes to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2681

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2682

 1    credibility, and whether or not the statement was, in

 2    fact, made.

 3              MR. CASTELLANO:  Credibility is for

 4    impeachment at trial, Your Honor.

 5              THE COURT:  I think we better leave that

 6    for another day.  Interesting question, but I think

 7    we better leave it for another day.  Sustained.

 8        Q.    Now, if I understand your testimony

 9    correctly, in your second interview with Mr. Urquizo,

10    where he had his attorney there, he told you that he

11    was the person, not Mauricio Varela, that brought

12    paperwork from PNM to Southern?

13        A.    Yes.

14        Q.    And that was on what date?

15        A.    I don't know.  I'd need to look at my

16    reports.

17        Q.    Do you have your reports?

18        A.    No.

19        Q.    Was that -- well, let's just go back for a

20    second.  Was that in 2016?

21        A.    I don't think so.  I think it was 2017.

22    I'm not entirely sure, though.  It took us months to

23    get him an attorney.  The process was really drawn

24    out.

25        Q.    It took you months to go back and talk to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2682

```
 1    him the second time?

 2         A.   Yes.

 3         Q.   When he told you that, did you make any

 4    disclosures?  Did you tell that to the Government

 5    prosecutors that Mr. Urquizo said he brought the

 6    paperwork, and the role they'd assigned to Mr.

 7    Varela, and the thing they'd indicted him for was

 8    untrue?

 9         A.   No.

10         Q.   And you didn't tell the prosecutors?

11         A.   The prosecutors were present during the

12    second -- any subsequently debriefs, at least one of

13    the prosecutors was there.

14         Q.   And after Mr. Urquizo provided you that

15    information, what efforts, if any, did you on behalf

16    of the Government make to correct the presentation to

17    the Grand Jury?

18         A.   Well, I sought out corroborating

19    information.

20         Q.   On Mr. Urquizo's statements?

21         A.   Yes, on the whole transaction, on whether

22    or not Varela -- because others said Varela did it.

23         Q.   And so what corroborating information did

24    you find, if any?

25              MR. CASTELLANO:   Same objection, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2683

```
 1    Honor.  We're getting away from statements.
 2              THE COURT:  Sustained.
 3              MS. JACKS:  I have nothing further.
 4              THE COURT:  Thank you, Ms. Jacks.
 5              Any other defense lawyers that want to
 6    follow-up on this line of questioning, Mr.
 7    Castellano's questioning?
 8              All right.  Mr. Castellano, you have
 9    redirect?
10                    REDIRECT EXAMINATION
11    BY MR. CASTELLANO:
12         Q.   Agent Acee, when it comes to Mauricio
13    Varela, did you have information in this case
14    initially that both he and Lupe Urquizo brought the
15    paperwork down to Southern?
16         A.   Yes.
17         Q.   And also during this investigation have you
18    learned that Mauricio Varela was present during
19    conversations related to the hit on Mr. Molina?
20         A.   Yes.
21              MR. CASTELLANO:  I have no further
22    questions, Your Honor.
23              THE COURT:  All right.  Thank you, Mr.
24    Castellano.
25              All right.  Mr. Acee, you may step down.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2684

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2685

```
 1    All right.  How do we want to proceed?  Do we want to
 2    have argument now on the James hearing and those
 3    related here?  Do we want to take testimony?  How do
 4    we want to proceed, Mr. Castellano?
 5              MR. CASTELLANO:  Your Honor, we have more
 6    testimony to present to the Court.
 7              THE COURT:  Okay.  I recall that now.  I
 8    apologize.
 9              MR. CASTELLANO:  What I want to at least
10    propose to the Court is Agent Stemo is prepared to
11    present testimony on three other people related to
12    the Molina murder.
13              THE COURT:  Okay.
14              MR. CASTELLANO:  To the best we can,
15    assuming we haven't left anything out, I'd like to
16    close out the Molina murder, and then any residual
17    statements, and then potentially take a break from
18    that testimony, and move to the experts, because
19    we've had them sitting here since yesterday.  So I
20    think we can get them on and off, that would be
21    great.  But it's up to the Court obviously.
22              THE COURT:  No, that sounds fine with the
23    Court.  I think we ought to cooperate to get
24    witnesses on or off.  Anybody have any objections so
25    proceeding?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2685

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 40686

```
 1                   All right.  That's how we will proceed.
 2                   MR. CASTELLANO:  All right.  With that, we
 3     will call Special Agent Nancy Stemo.
 4                   THE COURT:  Ms. Stemo, if you'll come up
 5     and stand next to the witness box on my right, your
 6     left.  Before you're seated, Ms. Solis will swear you
 7     in.
 8                        NANCY STEMO,
 9         after having been first duly sworn under oath,
10         was questioned and testified as follows:
11                      DIRECT EXAMINATION
12                   THE CLERK:  Please be seated and state and
13     spell your name for the record.
14                   THE WITNESS:  Nancy Stemo; N-A-N-C-Y,
15     S-T-E-M-O.
16                   THE COURT:  Ms. Stemo.  Mr. Castellano.
17                   MR. CASTELLANO:  Thank you, Your Honor.
18     BY MR. CASTELLANO:
19         Q.   Ms. Stemo, I want to draw your attention to
20     statements or information provided by Jerry Armenta.
21     And can you tell the Court what Mr. Armenta said that
22     Daniel Sanchez said to him or ordered him to do?
23         A.   Daniel Sanchez ordered Armenta to carry out
24     the hit on Javier Molina because he needed to put in
25     work for the SNM.  And he stated that if Armenta
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2686

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2687

```
 1   refused, he could also be killed.
 2        Q.   And what did he say that Mr. Sanchez said
 3   during the time that Mr. Armenta was assaulting
 4   Javier Molina?
 5        A.   After Javier Molina exited his cell and
 6   Jerry Armenta and Jerry Montoya were following Molina
 7   down to the bottom tier, Armenta overheard Daniel
 8   Sanchez saying, "Get him, get him."
 9             MR. CASTELLANO:  While we're on Mr.
10   Armenta, Your Honor, that's related to the Molina
11   murder.  I'm going to shift gears towards the Gregg
12   Marcantel/Dwayne Santistevan counts.  I think those
13   are Counts 9 and 10.
14        Q.   What did Mr. Armenta tell you about
15   conversations he had related to the Marcantel
16   conspiracy to murder?
17        A.   Jerry Armenta mentioned that Robert
18   Martinez had told him that Robert Martinez and Roy
19   Martinez had put a hit order on Gregg Marcantel and
20   Dwayne Santistevan.
21        Q.   Okay.  Now, I want to turn your attention
22   to a conversation you had with Mario Rodriguez.  Did
23   you have a chance to speak to him?
24        A.   I did.
25        Q.   I want to draw your attention to -- I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2687

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 42

```
 1   it's page 5 of your report.  What did Mr. Rodriguez
 2   indicate about a statement made to him by Daniel
 3   Sanchez related to the Molina paperwork?
 4       A.   While Rodriguez and Daniel Sanchez were
 5   reading the paperwork, Daniel Sanchez stated, "It's
 6   done."
 7       Q.   And in what context was that made in terms
 8   of reviewing the paperwork?
 9       A.   That the decision had been made because
10   they had received the paperwork.
11       Q.   And what did Daniel Sanchez want Timothy
12   Martinez to do?
13       A.   He wanted Timothy Martinez to be involved
14   in some fashion in the murder.
15       Q.   I also want to ask you about a statement
16   from Carlos Herrera to Mr. Rodriguez about the Molina
17   murder?
18       A.   When Carlos Herrera gave Mario Rodriguez
19   the paperwork, Daniel Sanchez wanted to verify it,
20   and Carlos Herrera told him to, "Get that shit
21   fucking done."
22       Q.   And had Mr. Rodriguez volunteered to
23   participate in the murder?
24       A.   He had.  But Daniel Sanchez told him not
25   to.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2688

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 43

1      Q.   And what was said from Mr. Sanchez about

2   covering the cameras?

3      A.   He stated he did not want the cameras

4   covered because the murder would be in a blind spot.

5      Q.   And what did you take that to mean when the

6   term "blind spot" was used?

7      A.   That the cameras would not have an angle on

8   where the murder occurred.

9      Q.   Can you tell the Court about a statement

10  made by Rudy Perez when Mr. Sanchez was in his cell?

11     A.   When Mario Rodriguez went to Rudy Perez'

12  cell, Daniel Sanchez pointed at a piece of Perez'

13  walker, and Perez stated he was "down for whatever,

14  as long as it was not me."

15     Q.   And what did Mr. Rodriguez say about a

16  conversation he had with Timothy Martinez, once Mr.

17  Martinez returned from the wheelchair program?

18     A.   Rodriguez told Timothy Martinez to go get

19  high because the paperwork had arrived.

20     Q.   What was the purpose of getting high, do

21  you remember?

22     A.   I don't.

23     Q.   And was there a clarification about who the

24  paperwork was for?

25     A.   There was.  Timothy Martinez initially

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2689

```
 1    volunteered to do the hit, because he thought the
 2    paperwork on Jerry Montoya had arrived.  But
 3    Rodriguez clarified that the paperwork on Javier
 4    Molina had arrived instead.
 5         Q.   And what statements did Timothy Martinez
 6    make about Javier Molina's fiero or shank?
 7         A.   Martinez stated that Molina had given him
 8    his shank prior to count, and Martinez had placed
 9    that shank inside of a bag of canteen.  Martinez
10    later gave that shank to Rodriguez.
11         Q.   And what directions did Mr. Rodriguez give
12    to Mr. Martinez about Javier Molina?
13         A.   Rodriguez told Timothy Martinez that he,
14    Rodriguez, would handle it, but later told Martinez
15    to choke out Molina.
16         Q.   What was the statement about Jerry Montoya
17    being approached regarding the Molina murder and the
18    paperwork?
19         A.   Do you mean Montoya?
20         Q.   Yes.  What was Montoya's response regarding
21    the Molina murder initially?
22              MS. JACKS:  Your Honor, I'm going to
23    object, because I'm not clear who the declarant is.
24    The way the questions are being asked, I can't
25    ascertain what statements are being elicited.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2690

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2691

1           THE COURT:  Well, I'll let you explore that

2   on cross.  Let me let Mr. Castellano put on his

3   evidence the way he wants to proceed.  And we'll deal

4   with that on cross.  Overruled.

5       Q.   Can you tell the Court whether Mr.

6   Rodriguez confirmed to Mr. Montoya that he had seen

7   the paperwork on Javier Molina?

8       A.   He did.

9       Q.   What was Mr. Montoya's response?

10          MS. JACKS:  Same objection.

11          THE COURT:  Overruled.

12      Q.   Once Mr. Montoya learned that the paperwork

13  was there, what was his response?

14      A.   He said he would do it.

15      Q.   What did Mr. Sanchez tell Mr. Rodriguez

16  about leaving any dope behind in Javier Molina's

17  cell?

18      A.   Mr. Sanchez told Rodriguez to not leave any

19  dope behind in Molina's cell and that they could go

20  halfers on it later.

21      Q.   Once they were inside Javier Molina's cell,

22  what did Mr. Rodriguez tell Timothy Martinez about

23  exiting the cell?

24      A.   Rodriguez told Martinez to exit the cell.

25      Q.   What happened next?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2691

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2692

1    A.   Jerry Armenta and Jerry Montoya entered and

2    began stabbing Molina.  Rodriguez instructed both

3    Armenta and Montoya to not let Molina out of the

4    cell.  Rodriguez overheard Montoya tell Molina to

5    stay back, and Molina did not.

6    Q.   And when Mr. Molina made a statement that

7    he was done, saying, Come on, I'm done now, what was

8    Rodriguez' response to that?

9    A.   He told Molina that he was no carnal.

10   Q.   When it came to Mr. Herrera wanting to pass

11   the paperwork to green pod, what was Mr. Rodriguez'

12   response to him?

13   A.   Rodriguez told Herrera not to pass the

14   paperwork to green pod because the individuals in

15   green pod had been protecting Molina.

16           MR. CASTELLANO:  May I approach the

17   witness, Your Honor?

18           THE COURT:  You may.

19   Q.   Okay.  Ms. Stemo, I'm handing you what's

20   been marked for identification as Government's

21   Exhibit 16.  Do you recognize that exhibit?

22   A.   I do.

23   Q.   And what is it?

24   A.   It's a transcript between -- or transcript

25   of a recording of conversations between Rudy Perez

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                            1-800-669-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 2692

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 2693

1    and the confidential human source.

2         Q.    And in what month was that recording taken?

3         A.    February.

4         Q.    Of what year?

5         A.    2016.

6         Q.    And have you had an opportunity to review

7    that transcript beforehand?

8         A.    I have.

9         Q.    And to the best of your understanding, is

10   it a fair transcript of the recording?

11        A.    Can you repeat that?

12        Q.    To the best of your knowledge, does the

13   transcript accurately reflect the contents of the

14   recording?

15        A.    Yes.

16        Q.    And does this transcript contain admissions

17   by Rudy Perez?

18        A.    It does.

19        Q.    And are you aware whether or not he names

20   other people involved in the Molina murder

21   conspiracy?

22        A.    I don't think he does in this transcript.

23        Q.    Let me draw your attention to the second

24   page toward the bottom of the transcript, and ask you

25   if anyone else's name is mentioned?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2693

```
 1        A.    The source mentions "Dan Dan."
 2        Q.    And who do you understand "Dan Dan" to be?
 3        A.    Daniel Sanchez.
 4              MR. CASTELLANO:  Your Honor, I move the
 5   admission of Government's Exhibit 16.
 6              THE COURT:  Let me ask you, yesterday when
 7   you did all those plea agreements, I think we went 1
 8   through 14.
 9              MR. CASTELLANO:  I was mistaken, Your
10   Honor.  They were 1 through 15, and I have marked
11   them accordingly.
12              THE COURT:  All right.  So I understand the
13   defendants' objection, but I'll admit Government's
14   Exhibit 15.
15              And any objection to 16 now?
16              MS. JACKS:  Your Honor, we --
17              MR. ADAMS:  I'd like to see it.
18              MS. JACKS:  We haven't had a chance to look
19   at it.
20              THE COURT:  All right.  Do you have a copy
21   for the defendants?
22              MR. CASTELLANO:  Sure.  We can put it on
23   the visualizer, Your Honor.
24              THE COURT:  All right.
25              MS. JACKS:  Well, I'd like a chance to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2694

1    review it before I make arguments about it.

2              MR. CASTELLANO:  This is in discovery, Your

3    Honor.  It's beginning at Bates stamp 20529 of the

4    DeLeon discovery.

5              THE COURT:  All right.  Any objection?

6              MR. VILLA:  Your Honor, I have to get to

7    the microphone.

8              MR. ADAMS:  I'll pass that over.  Judge,

9    could I ask you to please ask the witness to speak

10   into the microphone a little more.  We have a hard

11   time hearing her.

12             THE COURT:  All right.  If you'll speak up.

13   I know you're speaking into the microphone.  So if

14   you'll just speak a little louder.

15             THE WITNESS:  Yes.

16             MR. VILLA:  And Your Honor, Exhibit 16 is a

17   transcript of a statement that is subject to a motion

18   to suppress that's set to be heard by this Court week

19   after next.  And the basis is that the statement was

20   made involuntarily.  And I haven't -- can't say I

21   have a cite at my fingertips whether that applies in

22   a James hearing.  But I guess I would ask the Court

23   to perhaps consider reserving ruling on the James

24   hearing until it makes a decision about the

25   voluntariness of the statement.  Because if it is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    involuntary, it's in violation of due process, and I

2    think the Court should not, then, be able to use it

3    in making any determinations with respect to James.

4              THE COURT:  All right.  Well, let me do

5    this, if this works for everybody:  Why don't I admit

6    it for purposes of this hearing, so we can take the

7    testimony while we've got the witness here.  And then

8    in our arguments we'll -- I'll ask the Government and

9    I'll ask the defense lawyers to also point out to me

10   if I'm about to rely on in any way this testimony,

11   and I'll try then to tie the ruling I'm going to make

12   on the other, and then research this issue.  Because

13   I'm not sure I know the answer to it either.

14             MR. VILLA:  And I'll take a look and come

15   up with some kind of brief for you, too, as well.

16             THE COURT:  All right.  So let's just flag

17   it.  But I'll admit it for purposes of the hearing,

18   and not yet make a determination whether I'll rely on

19   it.  All right.  Does that work for everybody?

20             MR. CASTELLANO:  Yes, Your Honor.  And I

21   agree with the Court's approach, but I need to get

22   the statements before the Court.

23             THE COURT:  All right.  Mr. Castellano.

24             MR. CASTELLANO:  May I approach the

25   witness?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2696

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 51

 1              THE COURT:  You may.

 2        Q.   Just for ease of the testimony, Ms. Stemo,

 3    I'll put it on the visualizer so everyone can see it.

 4    Do you see here the discussion about the shanks

 5    coming from --

 6              MR. DAVIS:  Judge, we're not on back here.

 7              MR. CASTELLANO:  The TV screen isn't on,

 8    Your Honor.

 9              MS. JACKS:  Is this Exhibit 16 for the

10    record?

11              MR. CASTELLANO:  This is Exhibit 16.

12              MS. JACKS:  What Bates number?

13              MR. CASTELLANO:  20531.  It's coming on the

14    screen back there, Your Honor, but there is menu

15    screen.

16              THE COURT:  All right.  Let's go ahead and

17    proceed.  I think we know what the document is and

18    we'll try to get it up as soon as we can.

19              Mr. Castellano.

20              MR. CASTELLANO:  Thank you, Your Honor.

21        Q.   Do you see on here, Agent Stemo, that there

22    is a discussion of the shanks coming from Mr. Perez'

23    walker?

24        A.   I do.

25        Q.   And at that point, what does Mr. Perez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2697

 1    acknowledge that "Dan Dan," or Daniel Sanchez was

 2    running the pod at that time?

 3         A.   He does.

 4         Q.   And what does he say about them approaching

 5    him about the shanks from his walker?

 6         A.   They say that they approached him; that

 7    they needed -- that they needed it taken care of, and

 8    they needed squina from Rudy Perez, and they didn't

 9    need him to do anything aside from that.

10         Q.   What was Mr. Perez' response about his

11    willingness to give up the parts of his walker to

12    make shanks?

13         A.   He essentially said he was willing, as long

14    as it was a justified moved.  He needed to something

15    for the familia.

16              MR. CASTELLANO:  Your Honor, I won't go

17    anymore, the statement is already in evidence, the

18    Court can look at the rest of it.  But I think that's

19    a summary of the statement.

20              May I have a moment, Your Honor?

21              THE COURT:  You may.

22              MR. CASTELLANO:  Thank you, Your Honor.  I

23    pass the witness.

24              THE COURT:  All right.  Thank you, Mr.

25    Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2698

```
 1                 Defendants have cross-examination of Ms.
 2    Stemo?
 3                 MR. JEWKES:  Yes, Your Honor.
 4                 THE COURT:  Mr. Jewkes.
 5                 MR. JEWKES:  May it please the Court.
 6                           EXAMINATION
 7    BY MR. JEWKES:
 8        Q.   Good morning, Agent Stemo.
 9        A.   Good morning.
10        Q.   Okay.  Regarding your interview of Jerry
11    Armenta, can you tell us when your first interview
12    with him took place?
13        A.   The report that I was reading off of I was
14    not present at that interview.
15        Q.   Okay.  So you were referring to another
16    agent's 302; is that correct?
17        A.   It's a 1023, it's a source reporting
18    document.
19        Q.   All right.  When were you first assigned to
20    the investigation of this case?
21        A.   October 2016.
22        Q.   All right.  And you were aware that Jerry
23    Armenta had given numerous versions of what happened,
24    were you not?
25        A.   I'm aware of that, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2699

```
 1        Q.   And have you actually talked to him
 2   yourself?
 3        A.   Numerous occasions.
 4        Q.   All right.  You told us that Mr. Armenta
 5   said that Daniel Sanchez told Armenta he had to carry
 6   out the hit?
 7        A.   He did.
 8        Q.   And did Mr. Armenta tell you anything about
 9   having been high on drugs at that time?
10        A.   He did not.
11        Q.   You're aware that he made prior statements
12   to that effect, are you not?
13        A.   I haven't read them.
14        Q.   So you're not aware of that?
15        A.   No, I'm not.
16        Q.   When Mr. Armenta told you that Daniel
17   Sanchez said that he, Jerry Armenta, needed to put
18   the work in, did you ask him what he interpreted that
19   to mean?
20        A.   I was not at that interview.
21        Q.   You were not.  This is something you're
22   relating to us that came from another interview that
23   you weren't involved in; is that correct?
24        A.   Correct.
25        Q.   Now, you spoke somewhat briefly about an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 55

```
 1    interview of Mario Rodriguez?

 2         A.   Correct.

 3         Q.   How many times have you interviewed him?

 4         A.   I believe three times.

 5         Q.   Can you tell us approximately when the

 6    first interview was?

 7         A.   In October 2017.

 8         Q.   Just a few months ago?

 9         A.   Correct.

10         Q.   Where did that take place?

11         A.   Here in Las Cruces.

12         Q.   Did you ever tell him that he could gain

13    benefits by talking to you?

14         A.   I did not, no.

15         Q.   Did you hear any other person in law

16    enforcement do that?

17         A.   No.

18         Q.   Did he ever ask for any benefits?

19         A.   No.

20         Q.   Did he tell you why he wanted to cooperate

21    with the United States Government?

22         A.   He did.

23         Q.   He did?

24         A.   He did.

25         Q.   What did he say?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2701

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56

```
 1          A.    He was tired of the gang lifestyle.

 2          Q.    I'm sorry, ma'am, I didn't --

 3          A.    He was tired of the gang lifestyle.

 4          Q.    Tired of the lifestyle?

 5          A.    Correct.

 6          Q.    Wanted to change his life?

 7          A.    He did.

 8          Q.    But didn't say anything about wanting

 9   benefits?

10          A.    Not to me, no.

11          Q.    Do you know whether he asked any other

12   agent?

13          A.    I don't.

14          Q.    Okay.  Mr. Rodriguez, according to your

15   testimony on direct examination, page 5 of your

16   302 -- I'll give you a moment if you need to look at

17   that.

18          A.    You can go ahead.

19          Q.    All right.  Daniel Sanchez read the

20   paperwork and said, "It's done"?

21          A.    Correct.

22          Q.    What did you interpret that to mean?

23          A.    That the decision had been made on Javier

24   Molina.

25          Q.    Did Mr. Rodriguez tell you that he had told
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2702

1    anyone else about that before he spoke to you?

2         A.    What do you mean?

3         Q.    About this business about Mr. Sanchez

4    reading the paperwork and said, "It's done"?

5         A.    No, he didn't mention speaking to anybody

6    else about that.

7         Q.    There has been a lot of discussion about

8    paperwork.  Do you know where that paperwork is?

9         A.    I don't.

10        Q.    As part of the investigation have you

11   attempted to locate that so-called paperwork that

12   came from PNM down to SNM?

13        A.    I have not personally.

14        Q.    Do you know if anyone in the FBI has?

15        A.    I believe so.

16        Q.    And who would that be?

17        A.    Task Force Officer Mark Myers.

18        Q.    Mark Myers.  Have you had any conversations

19   with Mark Myers about the paperwork?

20        A.    No.

21        Q.    So other than what's been said, we don't

22   really know if that paperwork ever existed.  Would

23   you agree with that?

24        A.    I would not.

25        Q.    You would not agree with that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2703

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 52704

```
 1        A.   No.  Just because I haven't seen it,
 2   doesn't mean it doesn't exist.
 3        Q.   And you're relying strictly upon what
 4   you've been told by cooperators; correct?
 5        A.   And other law enforcement officers.
 6        Q.   With regard to what you were told, that
 7   Carlos -- and you were told this, I believe, by Mario
 8   Rodriguez -- that Carlos Herrera read the paperwork;
 9   is that correct?
10        A.   Correct.
11        Q.   Where did that take place?
12        A.   At Southern.
13        Q.   The reading.
14        A.   The reading of the paperwork?
15        Q.   Um-hum.
16        A.   At Southern.
17        Q.   And did Mr. Rodriguez tell you what Carlos
18   Herrera did with the paperwork after he read it?
19        A.   No.
20        Q.   In other words, you don't know if it was
21   conveyed to someone else?
22        A.   I do not.
23        Q.   Agent Stemo, there has been some testimony,
24   partly from you, that my client, Mr. Sanchez, did not
25   want the cameras covered.  Do you recall that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2704

```
 1        A.    I do.
 2        Q.    And what was the reason for that that you
 3   were told?
 4        A.    That the location for the murder was in a,
 5   quote, "blind spot," and therefore the cameras did
 6   not need to be covered.
 7        Q.    So based upon what you were told, there was
 8   a belief that it would be done in a certain location
 9   that could not be captured by video; is that correct?
10        A.    Correct.
11        Q.    But, in fact, the assault -- the homicide
12   was captured on video?
13        A.    It was.
14        Q.    Partially.
15        A.    Yes.
16        Q.    So how do you account for that, that there
17   would be a belief that it would be done where the
18   cameras couldn't capture?
19        A.    I could speculate.  Do you want me to do
20   that?
21        Q.    Not particularly, no.  Thank you.
22              Agent Stemo, I know you've been asked this
23   question before as to why someone wanted Tim Martinez
24   to get high, at least that's what was told to you by
25   Mario Rodriguez; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2705

```
 1        A.    Um-hum.
 2        Q.    Did you ask Mr. Martinez why someone would
 3   want him to get high, what was the purpose for that?
 4        A.    I believe Rodriguez wanted Martinez to get
 5   high because Martinez was close to Javier Molina.
 6        Q.    You aware that Daniel Sanchez and Javier
 7   Molina were roommates for over a year there at SNM?
 8        A.    I was not.
 9        Q.    Are you aware that there was never any
10   problems between them, I mean that were reported?
11        A.    Reported to whom?
12        Q.    Disciplinary actions.  In other words,
13   there was no disciplinary actions between Daniel
14   Sanchez and --
15        A.    No, I was not aware of that.
16        Q.    Regarding your testimony and the shank,
17   Timothy Martinez, whom you interviewed, said that
18   Javier Molina gave him the shank -- a shank -- the
19   day of the homicide; is that correct?
20        A.    Correct.
21        Q.    Did that seem somewhat strange to you as an
22   investigator?
23        A.    It did.
24        Q.    And did it cause you to be somewhat
25   suspicious as to whether or not that was true?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2706

```
 1        A.   No.  Because we asked Timothy Martinez why

 2   he would do that, and he was able to explain that.

 3        Q.   And what did Mr. Martinez explain?

 4        A.   Martinez indicated that he and Javier

 5   Molina were really close and trusted each other, and

 6   therefore, Molina was okay with giving his shank to

 7   Martinez for safekeeping.

 8        Q.   Okay.  So assuming that's true, Javier

 9   Molina gave a shank to Timothy Martinez for

10   safekeeping, to keep it safe from what?  Did you

11   inquire as to why, any further than that?

12        A.   Javier Molina was going to take a shower,

13   and he did not want the shank in there with him.

14        Q.   Have you interviewed any other cooperators

15   or witnesses that corroborated the fact that Javier

16   Molina gave a shank to Timothy Martinez?

17        A.   That they personally saw Molina give the

18   shank over?

19        Q.   All right.  Let's start with that.

20        A.   No.

21        Q.   That knew about it?

22        A.   Yes.

23        Q.   Who else told you that story?

24        A.   Mario Rodriguez.

25        Q.   Mario Rodriguez confirmed what Timothy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2707

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62

2708

```
 1    Martinez had told you?

 2         A.    Yes.

 3         Q.    And were you aware that Mario Rodriguez and

 4    Timothy Martinez had been communicating with each

 5    other?

 6         A.    At which point?

 7         Q.    Since they decided to cooperate.

 8         A.    Yes.

 9         Q.    You're aware that they have been

10    communicating with each other since they cooperated;

11    correct?

12         A.    Yes.

13         Q.    And how do they communicate?

14         A.    I believe they do it through their wives or

15    girlfriends.

16         Q.    And have you monitored some of those?

17         A.    I have not.

18         Q.    Do you have reason to believe that they are

19    comparing their stories, shoring each other up?

20         A.    I do not.

21         Q.    You do not?

22         A.    No.

23         Q.    What do you think they talk about?

24         A.    I'm not sure.  I don't monitor those calls.

25               MR. CASTELLANO:  Objection, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2708

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 63

```
 1    Moving away from the statements themselves again.
 2              THE COURT:  It sounds like we're moving
 3    away.  Do you have a way to tie it a little closer?
 4              MR. JEWKES:  We'll move on, Your Honor.
 5              If I may have just a moment, Your Honor?
 6              THE COURT:  You may.
 7         Q.   Agent Stemo, Government's Exhibit 16, the
 8    transcript of a conversation allegedly between Mr.
 9    Perez and a confidential human source, you know who
10    that confidential human source is; correct?
11         A.   I do.
12         Q.   And I believe his name would be Billy
13    Cordova, would it not?
14         A.   Correct.
15         Q.   And how long has Mr. Cordova been
16    cooperating in this investigation?
17         A.   I'm not sure exactly.
18         Q.   Has he been cooperating since you joined
19    the investigation?
20         A.   I believe so.
21         Q.   And Mr. Cordova has worn a wire into the
22    penitentiary system, has he not?
23         A.   Yes.
24         Q.   And it was given to him by the FBI?
25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2709

```
 1        Q.   And Mr. Cordova is a paid informant, is he
 2   not?
 3             MR. CASTELLANO:   Same objection regarding
 4   statements, Your Honor.
 5             THE COURT:   Sustained.
 6             MR. JEWKES:   Pass the witness.
 7             THE COURT:   Thank you, Mr. Jewkes.
 8             Other defense counsel that wish to ask --
 9   cross-examine Ms. Stemo?   Mr. Adams?
10                         EXAMINATION
11   BY MR. ADAMS:
12        Q.   So you referenced one statement related to
13   the Marcantel conspiracy?
14        A.   I did.
15        Q.   From Jerry Armenta?
16        A.   Yes.
17        Q.   And that was:   Robert Martinez told Jerry
18   Armenta that Robert Martinez and Roy Paul Martinez
19   put a hit order out on Marcantel?
20        A.   Correct.
21        Q.   All right.   When was this statement
22   allegedly made?
23        A.   The statement from Robert Martinez to Jerry
24   Armenta?
25        Q.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2710

```
 1          A.   I don't know.
 2          Q.   Where was the statement allegedly made?
 3          A.   PNM.
 4          Q.   When was Mr. Armenta at PNM?
 5          A.   I don't know.
 6          Q.   When was Mr. Robert Martinez at PNM?
 7          A.   I don't know.
 8          Q.   Who else was present when this alleged
 9     statement was made?
10          A.   I don't know.
11          Q.   Where were they at PNM when this statement
12     was allegedly made?
13          A.   X pod.
14          Q.   And as you were testifying, you don't know
15     if that statement was made prior to the arrest in
16     this case, and the passing of the gun at issue, in
17     November and December of 2015, or after?
18          A.   I'm not sure.
19          Q.   And you don't know if it was after the
20     arrests were made in this case?
21          A.   I believe it was before.
22          Q.   But you don't know when?
23          A.   Correct.
24          Q.   So you don't know for sure if it was before
25     or after?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2711

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 66

```
 1        A.    Correct.

 2              MR. ADAMS:   Thank you.

 3              THE COURT:   Thank you, Mr. Adams.

 4              Ms. Sirignano, I think, wants to give you

 5   something, I think, Mr. Adams.

 6              MR. ADAMS:   Thank you, Your Honor.   I just

 7   had a new thought to follow-up on.

 8        Q.    Do you have any other corroboration of Mr.

 9   Armenta's assertion that Mr. Robert Martinez made

10   this statement to him at PNM?

11        A.    I don't.

12              MR. ADAMS:   Thank you.   Do I have any other

13   thoughts?   No.   Thank you.

14              THE COURT:   Thank you, Mr. Adams.   Mr.

15   Lowry, do you have cross-examination of Ms. Stemo?

16              MR. LOWRY:   I may, Your Honor.

17              THE COURT:   Mr. Lowry.

18              MR. LOWRY:   Briefly.

19                          EXAMINATION

20   BY MR. LOWRY:

21        Q.    Good morning, Ms. Stemo.

22        A.    Good morning.

23        Q.    I believe you said you'd interviewed Jerry

24   Armenta?

25        A.    I've been at interviews with him, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2712

```
 1        Q.   And if I understand things correctly, Mr.
 2   Armenta was housed in the blue pod where the Molina
 3   event happened?
 4        A.   I don't know the coloring scheme, but he
 5   was in the pod.
 6        Q.   And actually you can see Mr. Armenta on the
 7   video participating in the murder of Mr. Molina?
 8        A.   Yes.
 9        Q.   And I take it as part of that interview --
10   how many interviews were you present with Mr.
11   Armenta?
12        A.   Approximately three.
13        Q.   And I would assume, as your role as FBI
14   agent, you want to get all of the information you can
15   from Mr. Armenta to understand exactly what happened?
16        A.   I do my best.
17        Q.   But I would assume -- well, you do your
18   best to get all the information you can from Mr.
19   Armenta?
20        A.   Yes.
21        Q.   And you're trained to get all the
22   information you can from Mr. Armenta?
23        A.   Yes.
24        Q.   And to make sure you get all of that
25   information from Mr. Armenta, you visit with him
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2713

```
 1   repeatedly?
 2        A.   Yes.
 3        Q.   In any of your visits with Mr. Armenta did
 4   he ever tell you or the prosecution team that he
 5   heard Mr. Sanchez say, "Fuck, yeah"?
 6        A.   Not at any of the interviews I was at.
 7        Q.   And again, you wanted to learn everything
 8   you could about what happened in the pod where that
 9   murder took place?
10        A.   Yes.
11        Q.   I want to follow-up with the comment that
12   Mr. Adams was asking you about, about the Gregg
13   Marcantel conspiracy, alleged conspiracy.  If I
14   understood your statement correctly, or your
15   testimony, that Tim Martinez reported that Roy
16   Martinez had mentioned something about the Gregg
17   Marcantel hit?
18        A.   No, it was Robert Martinez.
19        Q.   Okay.  And Robert Martinez said that to
20   who?
21        A.   Jerry Armenta.
22        Q.   And according to Mr. Armenta, Roy Martinez
23   ordered the hit on Gregg Marcantel?
24        A.   Armenta was told by Robert Martinez that --
25   go ahead.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2714

1        Q.    No, go ahead.  Too many Martinezes.  I

2   can't keep them all straight.

3        A.    Timothy Martinez was not involved in this

4   conversation.  Robert Martinez told Jerry Armenta

5   that he, Robert, and Roy Martinez had put out hit

6   order on Marcantel and Santistevan.

7        Q.    That those two had?

8        A.    Yes.

9        Q.    In all of the interviews Mr. Armenta never

10  said anything about Mr. Baca putting out the hit?

11       A.    Not that I'm aware of.

12             MR. LOWRY:  No further questions, Your

13  Honor.

14             THE COURT:  Thank you, Mr. Lowry.

15             Any other defense lawyers wish to

16  cross-examine Ms. Stemo.  Ms. Bhalla?

17             MS. BHALLA:  Yes, Your Honor.  Thank you.

18                       EXAMINATION

19  BY MS. BHALLA:

20       Q.    Good morning, Agent Stemo.

21       A.    Good morning.

22       Q.    Is it Stemo?  Did I say it right?

23       A.    Stemo.

24       Q.    Stemo.  Okay, thank you.

25             You mentioned earlier that you had had some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2715

```
 1    conversations with Mario Rodriguez concerning

 2    paperwork that -- when you mentioned Carlos Herrera;

 3    is that correct?

 4         A.   Correct.

 5         Q.   And when did Mr. Rodriguez provide you with

 6    that information?

 7         A.   In October of 2017.

 8         Q.   And did he say where he was when he had

 9    that conversation that involved Carlos Herrera?

10         A.   At Southern.

11         Q.   Where specifically in Southern?

12         A.   He did not mention where.

13         Q.   Okay.  So you're not aware of where exactly

14    the conversation took place?

15         A.   No.

16         Q.   Did he say when the conversation took

17    place?

18         A.   I believe so, if I can check my report.

19         Q.   Yes, please.

20         A.   He didn't tell me specifically, and I

21    didn't write it down specifically in my report.  But

22    I believe it happened on the morning of the murder.

23         Q.   Okay.  And you're reviewing that report now

24    to refresh your recollection?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2716

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 72

```
 1        Q.   Do you know whether or not that report has
 2   been provided in discovery yet?
 3        A.   I don't think it has.
 4        Q.   Okay.
 5             MS. BHALLA:  Your Honor, I would like the
 6   opportunity to review the report to see what
 7   information it contains.  I think that would be
 8   helpful for our cross-examination.
 9             THE COURT:  Why don't we do this:  Why
10   don't you discuss that with the Government.  We're
11   probably right up against the break here.  So why
12   don't you discuss it during the break, and we can
13   then discuss it afterwards.
14             MS. BHALLA:  Thank you, Your Honor.
15             THE COURT:  If you don't reach a resolution
16   there, can't resolve it.
17             All right.  Let's be in recess for about 15
18   minutes and we'll come back and continue the James
19   hearing.
20             (The Court stood in recess.)
21             THE COURT:  All right.  Let's go back on
22   the record and see if we can keep things moving on
23   pace.  I think Ms. Harbour-Valdez has a sentencing,
24   so she's left.  But we still have Mr. Burke.  And I
25   think Mr. Granberg has had to leave, but we still
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2717

```
1    have Mr. Mondragon.  So I think we're okay.
2            All right.  I'll turn it over to you, Ms.
3    Bhalla.
4            MR. CASTELLANO:  Your Honor, I just want to
5    make sure Agent Stemo got her reports back.  They
6    were left out during the break for defense counsel to
7    review.
8            THE COURT:  Did you get them back?
9            THE WITNESS:  Yes, sir.
10           THE COURT:  Did you getting everything you
11   needed to continue your cross-examination?
12           MS. BHALLA:  I did, Your Honor.  Thank you.
13           THE COURT:  All right.  Ms. Bhalla.
14           I'll remind you, Ms. Stemo, that you're
15   still under oath.
16           THE WITNESS:  Yes, Your Honor.
17           THE COURT:  All right.  Ms. Stemo.  Ms.
18   Bhalla.
19           MS. BHALLA:  Thank you, Your Honor.
20   BY MS. BHALLA:
21      Q.   I did have a chance to review your report
22   and I wanted to ask you a question about it.  Your
23   report indicates a conversation that took place
24   between Mario Rodriguez and Mr. Sanchez about the
25   paperwork.  And the conversation went along the lines
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2718

 1    of something that Sanchez indicated, well, "It's

 2    done," and that they were reviewing the paperwork

 3    together.  Do you recall that conversation?

 4         A.   I do.

 5         Q.   Who relayed that conversation to the

 6    Government?

 7         A.   Mario Rodriguez.

 8         Q.   Mario Rodriguez did.  Okay.

 9              And was it your understanding of that

10    conversation that Mario Rodriguez and Mr. Sanchez

11    were reviewing the paperwork together to make a

12    determination about what to do next?

13         A.   Yes.

14         Q.   And there is no indication that Mr. Herrera

15    was present for that conversation in your report, is

16    there?

17         A.   No.

18         Q.   Okay.  The statement that Mr. Rodriguez

19    made to you regarding Carlos Herrera, I just want to

20    draw our attention back to that.  Who else was

21    present during that conversation, do you know?

22         A.   I don't.

23         Q.   Okay.  So you don't know exactly where the

24    conversation took place, and you don't know how many

25    people were present for that conversation?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2719

```
 1        A.   Correct.

 2        Q.   And is it your understanding that Mr.

 3   Rodriguez told -- at least told you -- that he

 4   instructed Mr. Herrera not to send the paperwork to

 5   the green pod; is that correct?

 6        A.   Yes.

 7        Q.   Okay.  Are you aware of the statements that

 8   Mr. Urquizo has given in this case?  Have you

 9   reviewed any of those statements?

10        A.   Yes.

11        Q.   Okay.  And are you aware of a statement

12   where Mr. Urquizo indicated that when he showed the

13   paperwork to Mr. Herrera, Mr. Herrera said, "Damn,

14   that's it?"

15        A.   I don't remember verbatim what it says, but

16   that sounds similar.

17        Q.   Okay.  So you reviewed that statement from

18   Mr. Urquizo at some point?

19        A.   Yes.

20        Q.   Are you aware of whether or not any 302s

21   have been completed on Mr. Rodriguez?

22        A.   Yes.

23        Q.   Okay.  Do you know how many?

24        A.   I would approximate three.

25        Q.   And do you know the dates of those,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2720

```
 1   roughly?

 2        A.   Sometime in October and November, 2017.

 3        Q.   So all of the 302s on Mr. Rodriguez were

 4   done in October and the November of this year?

 5        A.   Correct.

 6        Q.   Okay.

 7             MS. BHALLA:  Can I have just a moment, Your

 8   Honor.

 9             THE COURT:  You may.

10             MS. BHALLA:  I have nothing further.

11             THE COURT:  Thank you, Ms. Bhalla.

12             Mr. Villa?

13             MR. VILLA:  Thank you, Your Honor.

14                      EXAMINATION

15   BY MR. VILLA:

16        Q.   Good morning, Agent Stemo.

17        A.   Good morning.

18        Q.   Let me talk briefly to you about Jerry

19   Armenta.  If I understand it correctly, you weren't

20   present for the debriefs or statements that Mr.

21   Armenta gave; correct?

22        A.   Correct.

23        Q.   But you have reviewed them?

24        A.   Some of them, yes.

25        Q.   And you've had conversations with Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2721

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 76

```
 1    Armenta?

 2         A.   Yes.

 3         Q.   And it's true that in at least the

 4    recordings, or the formal debriefs interviews that

 5    have been disclosed by Mr. Armenta, he never mentions

 6    the source of the shanks used in the murder; correct?

 7         A.   I believe so.

 8         Q.   So he never says "Dan Dan" told me it came

 9    from Rudy Perez' walker?

10         A.   I believe so.

11         Q.   He never says Mario Rodriguez said the

12    shanks came from Rudy Perez' walker?

13         A.   I don't think he does.

14         Q.   So let's talk about Mario Rodriguez.  You

15    testified that he said Daniel -- and sometimes I say

16    "Dan Dan." I apologize.  That's Daniel Sanchez,

17    right?

18         A.   Correct.

19         Q.   So if I say "Dan Dan," you know who I'm

20    talking about?

21         A.   I do.

22         Q.   You said that Mario Rodriguez told Mr.

23    Sanchez that he wanted to be involved or he wanted to

24    volunteer for the Javier Molina murder; correct?

25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2722

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 72723

1       Q.   But Daniel Sanchez told him not to?

2       A.   Correct.

3       Q.   Do you know why?

4       A.   No, I don't.

5       Q.   Did you ask Mario Rodriguez why?

6       A.   No.

7       Q.   Did he ever say why?

8       A.   I believe Daniel Sanchez did not want Mario

9    Rodriguez involved because he wanted Timothy Martinez

10   involved.  There had been an incident in which Daniel

11   Sanchez had been complaining about Javier Molina and

12   Timothy Martinez having dope and food and having

13   meals without inviting others.  And Daniel Sanchez

14   was upset about that.  And he felt that if Timothy

15   Martinez was instructed to go, that Timothy Martinez

16   would refuse, and Daniel Sanchez could then have a

17   reason to hit Timothy Martinez.

18       Q.   So if Timothy Martinez, as you understood

19   it, refused the order from Daniel Sanchez, Timothy

20   Martinez could then be hit?

21       A.   Correct.

22       Q.   Killed?

23       A.   Yes.

24       Q.   Or assaulted in some way?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2723

1          Q.   And you understood from Mario Rodriguez

2     that "Dan Dan" thought that that's what was going to

3     happen, so now he could hit Timothy Martinez?

4          A.   Correct.

5          Q.   Because he didn't like him or was upset

6     with him over this dope issue?

7          A.   Yes.

8          Q.   And on the flipside, if Timothy Martinez

9     did do what he was supposed to do, he might get in

10    trouble, right?

11         A.   Who is "he"?

12         Q.   Timothy Martinez.

13         A.   Correct.

14         Q.   So "Dan Dan" probably also understood that

15    sending Martinez to do this put him in jeopardy of

16    getting in trouble for committing a murder?

17         A.   I don't want to speculate as to what Mr.

18    Sanchez understood would happen.

19         Q.   Okay.  Well, let's talk about it with Jerry

20    Armenta.  Did you understand there to be a reason why

21    Jerry Armenta was asked to do the hit on Javier

22    Molina in your conversations with Jerry Armenta?

23         A.   I believe he had to put in work for the

24    SNM.

25         Q.   Wasn't it also true that there was issues

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2724

```
 1    between Daniel Sanchez and Jerry Armenta?

 2         A.   Not that I know of.

 3         Q.   No beef or reason for "Dan Dan" to want to

 4    hit Jerry Armenta?

 5         A.   Not that I know of.

 6         Q.   Okay.  What about Jerry Montoya?

 7         A.   If there was a personal issue between

 8    Daniel Sanchez and Jerry Montoya?

 9         Q.   Yes.

10         A.   I'm not aware of any.

11         Q.   Were you aware that -- from Lupe Urquizo --

12    that when he arrived at Southern -- there was some

13    testimony yesterday -- I know you weren't here -- but

14    there was an expectation that there was going to be a

15    hit on Jerry Montoya?

16         A.   Yes.

17         Q.   You knew about that?

18         A.   Yes.

19         Q.   Do you know if Daniel Sanchez was aware of

20    this potential hit going to be put on Jerry Montoya?

21         A.   I don't know.

22         Q.   Did Mario Rodriguez ever tell you that that

23    was the reason Daniel Sanchez asked Jerry Montoya to

24    commit the hit on Javier Molina?

25         A.   I don't think he did.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2725

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2726

 1     Q.    Anybody else?

 2     A.    Not that I know of.

 3     Q.    But Mario Rodriguez was clearly intimately

 4  involved in executing this hit, wasn't he?

 5     A.    Yes.

 6     Q.    So even though Daniel Sanchez told him not

 7  to do the hit himself, he still had Mario Rodriguez

 8  essentially orchestrate everything that was going to

 9  lead up to this hit; true?

10     A.    Yes.

11     Q.    And Mario Rodriguez, although they thought

12  there was a blind spot, is seen on video going into

13  Javier Molina's room with Timothy Martinez; correct?

14     A.    Yes.

15     Q.    And minutes or seconds later, Jerry Armenta

16  and Jerry Montoya go in and start to stab Javier

17  Molina?

18     A.    Correct.

19     Q.    And Mario Rodriguez is then seen collecting

20  one of the shanks, or what is believed to be one of

21  the shanks used, and hiding it in the shower drain?

22           MR. CASTELLANO:  Objection, Your Honor.

23  Moving away from the statements.

24           THE COURT:  I think we are.  Sustained.

25     Q.    So let me ask you about the statement that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2726

1   you testified Mario Rodriguez told you Rudy Perez

2   made.  You said that Mario Rodriguez went into Mr.

3   Perez' room; correct?

4        A.   Correct.

5        Q.   This is the cell in blue pod?

6        A.   I'm not sure of the color scheme.

7        Q.   Okay.  The cell where, or the pod where Mr.

8   Molina was killed?

9        A.   Correct.

10       Q.   And did Mario Rodriguez tell you the

11  purpose for which he went into Rudy Perez' room?

12       A.   Mario Rodriguez stated that Daniel Sanchez

13  called him over to Perez' cell.  And Daniel Sanchez

14  proceeded to point out a piece on Rudy Perez' walker.

15  And that's when Rudy Perez made the statement that he

16  was down for whatever, as long as it wasn't him.

17       Q.   Now, let me back this up a little bit.  Did

18  Mario Rodriguez tell you on what day this occurred?

19       A.   Not specifically.

20       Q.   Did he tell you any sort of timeframe in

21  relationship to when the murders occurred?

22       A.   No.  The way I conducted the interview was,

23  it was kind of chronological from the moment he got

24  the paperwork to the moment the homicide occurred.

25       Q.   Well, when did you understand Mario

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Rodriguez to have obtained the paperwork?

 2         A.    Earlier that morning.

 3         Q.    The morning of the homicide?

 4         A.    Correct.

 5         Q.    Was there any doubt from Mario Rodriguez

 6    that he got it in the morning?

 7         A.    No.

 8         Q.    He was pretty clear on when he got it?

 9         A.    He was.

10         Q.    Did he tell you whether he got the -- or

11    went into Mr. Perez' room, before or after that time?

12         A.    After he received the paperwork?

13         Q.    Yes.

14         A.    He received it after he received the

15    paperwork -- or he went in, sorry.

16         Q.    So he went to Mr. Perez' room sometime

17    after he got the paperwork?

18         A.    Correct.

19         Q.    Do you know if it was still morning?

20    Afternoon?

21         A.    I don't.  All I know is he went into Perez'

22    cell, retrieved the metal before count.

23         Q.    Do you know if there was any conversation

24    by Mr. Perez about how that removing a piece of metal

25    might affect the ability for him to use his walker?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2728

```
 1          A.   No.
 2          Q.   Are you familiar with Mr. Perez' state of
 3   health at the time?
 4          A.   I'm not.
 5          Q.   So you didn't know whether he needed that
 6   walker in order to walk?
 7          A.   I do not.
 8          Q.   Have you since this time examined the
 9   walker?
10          A.   I have not.
11          Q.   So you don't know whether it still works or
12   not without this supposed missing piece?
13          A.   I do not.
14          Q.   Do you know where the walker is?
15          A.   I do not.
16          Q.   Do you know if it's gone?  Lost?
17               MR. CASTELLANO:  Objection, Your Honor.
18               THE COURT:  Sustained.
19          Q.   Isn't it true that, as Mario Rodriguez was
20   going into Mr. Perez' room, he observed that Daniel
21   Sanchez and Mr. Perez were having a conversation?
22          A.   Correct.
23          Q.   And he couldn't hear what was said in that
24   conversation?
25          A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2729

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 84730

```
 1        Q.   That being Mario Rodriguez, couldn't hear

 2   the conversation between Daniel Sanchez and Rudy

 3   Perez?

 4        A.   Correct.

 5        Q.   And when he saw Rudy Perez, before Rudy

 6   Perez made that statement, Rudy Perez looked scared

 7   to him?

 8        A.   He did.

 9        Q.   That's what Mario Rodriguez told you?

10        A.   Correct.

11        Q.   That Mr. Perez looked scared?

12        A.   Correct.

13        Q.   Not excited, not pumped up and ready to go;

14   scared?

15        A.   Yes.

16        Q.   And after he made the statement to Mario

17   Rodriguez that he was down for whatever, as you said,

18   Mario Rodriguez understood that Rudy Perez just

19   didn't want to get hurt?

20        A.   Correct.

21        Q.   Because if Rudy Perez had said no, or put

22   up a fight, much like Timothy Martinez' situation,

23   Rudy Perez could have been in trouble?

24        A.   I believe so.

25        Q.   In danger of getting hit himself?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   I believe so.

 2          Q.   Do you know if there is any video that

 3   captures Mario Rodriguez obtaining a piece from Rudy

 4   Perez' walker?

 5          A.   I do not.

 6          Q.   Do you know if the video cameras are

 7   capable of capturing that?

 8              MR. CASTELLANO:   Objection, Your Honor.

 9              MR. VILLA:   I think this goes to the

10   issue --

11              THE COURT:   I'll allow this question.

12          A.   I do not.

13          Q.   Let me turn your attention now to Exhibit

14   16, which I have here.  I'm going to put it on the

15   Elmo.  The date of the recording is indicated on the

16   first page of Government's Exhibit 16; correct?

17          A.   Yes.

18          Q.   And it's February -- we don't have a day --

19   the year 2016?

20          A.   Yes.

21          Q.   That's 23 months after the Javier Molina

22   murder?

23          A.   Sure?

24          Q.   Are you unsure?

25          A.   I don't know if I'm good at math to tell
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2731

```
 1    you the exact months.
 2         Q.   Well, I'm no good at math either, but the
 3    Javier Molina murder occurred March 7, 2014; correct?
 4         A.   Yes.
 5         Q.   And March 7, 2016, would have been two
 6    years or 24 months later; correct?
 7         A.   Correct.
 8         Q.   So sometime in February is approximately 23
 9    months?
10         A.   Okay.
11         Q.   Is that fair?
12         A.   Yes.
13         Q.   So well after the fact?
14         A.   Yes.
15         Q.   And as you told Mr. Jewkes, the CHS or
16    individual on this recording talking to Mr. Perez is
17    Billy Cordova?
18         A.   Correct.
19         Q.   This recording occurred at PNM?
20         A.   I believe so.
21         Q.   Were you present at PNM when this was
22    taking place?
23         A.   I was not.
24         Q.   Were you assisting in this operation of Mr.
25    Cordova recording Mr. Perez?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2732

```
 1          A.   I was not.

 2          Q.   Who was?

 3          A.   Other FBI special agents.

 4          Q.   Do you know who they are?

 5          A.   I'm not sure exactly.  I could tell you who

 6     is on the SNM investigation team.

 7          Q.   Well, that's okay.  If you're not sure.

 8               Mr. Jewkes asked you if Mr. Cordova was

 9     wearing a wire.  But it wasn't exactly a wire, was

10     it?

11          A.   No, that's just the term a lot of people

12     use for recording devices.

13          Q.   So it was a digital recording device?

14          A.   Correct.

15          Q.   Like a little one that you can just turn on

16     and off and record things?

17          A.   Yes.

18          Q.   And at the time Mr. Perez was in, you said

19     PNM -- was it Level 6?

20          A.   I don't know.

21          Q.   Okay.  Do you know how long he'd been there

22     at PNM?

23          A.   I don't.

24          Q.   Do you know whether he had been kept in

25     what I call solitary confinement, what the Department
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2733

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2734

 1    of Corrections calls Administrative Segregation?

 2         A.   I don't.

 3         Q.   Do you have any idea of the basis for why

 4    Mr. Perez was at PNM?

 5         A.   I don't.

 6         Q.   Do you know why Mr. Cordova was at PNM?

 7         A.   I don't.

 8         Q.   Do you know which cells they were in?

 9         A.   I don't.

10         Q.   Do you know that this communication took

11    place while they were both in cells adjacent to each

12    other?

13         A.   I don't know that.

14         Q.   Did you actually listen to the recording?

15         A.   I haven't.

16         Q.   You just read the transcript?

17         A.   Correct.

18         Q.   Have you spoken to Billy Cordova about this

19    transcript?

20         A.   I have not.

21         Q.   Have you been present when another agent or

22    individual part of your team spoke to him about this?

23         A.   No.

24         Q.   Do you know whether Billy Cordova provided

25    Mr. Perez Suboxone before questioning him about this?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   I do not know that.

 2          Q.   Are you aware of any investigation into

 3   whether Billy Cordova had Suboxone?

 4          A.   I don't know.

 5          Q.   Were you aware of Mr. Perez' medical state,

 6   now 23 months later, in February, 2016?

 7          A.   I don't know.

 8          Q.   You do know that the first indictment in

 9   this case occurred a couple months before this, in

10   the fall, November, December, 2015?

11          A.   Yes.

12          Q.   Mr. Perez was not included in that

13   indictment?

14          A.   Yes.

15          Q.   He was not?

16          A.   I believe so.

17          Q.   Were you aware whether there were rumors

18   that Mr. Perez was cooperating with the Government at

19   the time, February 2016?

20          A.   I was not aware of that.

21          Q.   Have you reviewed any other recordings

22   between Rudy Perez and Billy Cordova?

23          A.   I've read over some of the transcripts.  I

24   haven't listened to the recordings.

25          Q.   And are you familiar with the transcript in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   which Billy Cordova refers to these rumors, saying to

2   Rudy Perez:  "Is this why the carnales or home boys

3   are talking shit about you?"

4        A.   Yes.

5        Q.   So you're aware of that?

6        A.   Yes.

7        Q.   And that statement was made by Billy

8   Cordova to Rudy Perez before Rudy Perez made this

9   statement?

10        A.   I'm not sure which transcript I read that

11   in.  So I don't know which order those statements

12   were made.

13        Q.   Fair enough.  Would you agree with me that

14   some of these individuals that you've been

15   investigating here in SNM will take responsibility

16   for things they did not do?

17        A.   I don't know that.

18        Q.   Do you know whether that's something that

19   you guys are on the lookout for or aware of?

20        A.   We try to find that, yes.

21        Q.   Okay.  So let me direct your attention --

22   I'm going to zoom in.  This is page 20531, USA versus

23   DeLeon, page 20531 of Exhibit 16.  And I'm showing

24   you the bottom statement by Mr. Perez which is

25   highlighted in pink.  Do you see that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2736

```
 1        A.   I do.

 2        Q.   Did you do the pink highlights?

 3        A.   I did not.

 4        Q.   Okay.  You would have done yellow maybe?

 5        A.   What was that?

 6        Q.   Would you have done yellow maybe?

 7        A.   I don't know.

 8        Q.   I'm just kidding.

 9             So Mr. Perez says here, and I'm just going

10   to read along, "Que watcha, they come to me and

11   they're like, look big dog, something has to be taken

12   care of, but we need squina.  You don't have to do

13   nothing.  You don't have to do nada.  You don't have

14   to do fuck.  We just need that.  You know what I'm

15   saying?  Do you understand what I'm saying?"

16             Did I read that right?

17        A.   Yes.

18        Q.   And that's what you understand Mr. Perez to

19   be saying, right?

20        A.   Yes.

21        Q.   And then the CHS, or Mr. Cordova, says,

22   "They just need that piece from the walker," right?

23        A.   Yes.

24        Q.   So he's trying to clarify what Mr. Perez

25   said?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 92

```
 1          A.    Correct.

 2          Q.    So going back to Mr. Perez' statement.  Do

 3   you know what squina means?

 4          A.    I do.

 5          Q.    What does it mean?

 6          A.    It's like giving someone support.

 7          Q.    Helping them out?

 8          A.    Yes.

 9          Q.    And later on, Mr. Perez essentially says --

10   I won't read through it -- but you would agree with

11   me that Mr. Perez in this statement is purportedly

12   telling Billy Cordova that he wanted to help him out,

13   right?

14          A.    Correct.

15          Q.    He was cool with it?

16          A.    Yes.

17          Q.    Because it was a legitimate hit?

18          A.    Correct.

19          Q.    Right.  That's what he told Billy Cordova?

20          A.    Yes.

21          Q.    Two years later?

22          A.    Yes.

23          Q.    While they were rumors that he, Mr. Perez,

24   was cooperating?

25          A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2738

1        Q.    Right.  And that doesn't sound like

2   somebody who turned over a piece of metal because he

3   was scared, does it?

4        A.    I don't know.

5        Q.    And I think my question is answered on this

6   that, because you haven't listened to the audio

7   recordings, you don't know whether the transcript

8   here, Exhibit 16, accurately reflects the recording?

9        A.    No, I don't.

10       Q.    Have you reviewed any of the documentation

11  regarding Mr. Perez' placement at PNM around the time

12  this statement was given?

13       A.    I have not.

14       Q.    Have you reviewed any of Mr. Perez'

15  documentation from the Department of Corrections

16  about why he was at PNM?

17       A.    I have not.

18       Q.    You were asked by Mr. Jewkes if you knew

19  how long Mr. Cordova had been cooperating.  I think

20  you said you weren't sure?

21       A.    Correct.

22       Q.    But that he had been cooperating since you

23  joined the investigation?

24            MR. CASTELLANO:  Objection, Your Honor.

25  Beyond the scope of the statements.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2739

```
 1                THE COURT:  Well, I think we're getting a
 2     little further.  Let's rein it in.  Sustained.
 3                MR. VILLA:  May I have just a moment?
 4                THE COURT:  You may.
 5                MR. VILLA:  Judge, that's all the questions
 6     I have.
 7                I would like the Court to reconsider
 8     Government's Exhibit 16, given the testimony we just
 9     heard from Agent Stemo.  I still stand on my
10     objection regarding the due process issue.  But, you
11     know, this transcript -- I think there is a lack of
12     authentication.  We don't have a recording.  Agent
13     Stemo has not listened to the recording, is unable to
14     say whether this transcript accurately reflects the
15     recording.  She simply read it and has presented the
16     substance of it.  I don't think that's sufficient for
17     the Court to consider it in the context of this James
18     hearing.
19                THE COURT:  All right.  Well, I'm going to
20     leave it in.  And I'll consider it for the weight of
21     the evidence.  I think we -- if somebody points out
22     problems with the transcript, then I can deal with
23     those.  But it's going to be -- I think we all know
24     how hard it is to work from the audiotape.  So I'll
25     keep it in for the present time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2740

```
 1              All right.  Anything else, Mr. Villa?

 2              MR. VILLA:  No, Your Honor.

 3              THE COURT:  All right.  Any other defense

 4     lawyer that wants to cross-examine Ms. Stemo?  Mr.

 5     Adams?

 6              MR. ADAMS:  No, sir, Judge.  I just -- we

 7     would join the motion as to Exhibit 16.  I don't know

 8     if you need us to state that or we can all

 9     implicitly --

10              THE COURT:  I understand the objection.

11              Mr. Lowry, do you have anything?

12              MR. LOWRY:  No, sir, Your Honor.

13              THE COURT:  Ms. Jacks?  Anybody?

14              All right.  Mr. Castellano, do you have

15     redirect of Ms. Stemo?

16              MR. CASTELLANO:  I do.  And for the record,

17     Your Honor, if the Court is inclined, we can also

18     produce the audio of that recording.

19              THE COURT:  Well, it might be wise.  I

20     think it would stem that objection, that people will

21     have both in evidence and they can point out any

22     discrepancy between the two.

23              MR. CASTELLANO:  Yes, sir.  We'll do our

24     best to provide it on a CD or DVD.

25              THE COURT:  Any objection to the audio
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2741

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 96 of 742

```
 1   coming in?  Let's mark it as Exhibit 16 A.  Does that
 2   give anybody heartburn to go that direction?
 3               MS. JACKS:  Your Honor, I think the defense
 4   would reserve any objection regarding the
 5   voluntariness of the statement.
 6               THE COURT:  I understand.  Just to address
 7   this issue that Mr. Villa is raising, but the one on
 8   due process we'll still have to deal with.
 9               MR. VILLA:  And we could do it on a break
10   or something.  But if we could just have an
11   opportunity to examine it.  I don't want any other
12   recordings to be admitted.  I think it's just going
13   to be copied onto a CD, if I understand Mr.
14   Castellano.
15               MR. CASTELLANO:  That is the plan, Your
16   Honor.
17               MR. VILLA:  With that, and our other
18   reserved objections, that's it.
19               THE COURT:  All right.  Mr. Castellano.
20                           EXAMINATION
21   BY MR. CASTELLANO:
22       Q.   Agent Stemo, this is -- I have a different
23   copy of Exhibit 16, I put on the visualizer.  It's
24   DeLeon page 20532.  And do you see that portion of
25   the conversation regarding whether or not Mr. Perez
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2742

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 97

1    would not have provided the walkers, had it just been

2    a personal issue?

3         A.   I see that.

4         Q.   So there is an indication there that Mr.

5    Perez indicated that if it wasn't family business, he

6    would have refused to provide the shanks?

7         A.   Correct.

8         Q.   And you mentioned meetings with Mr.

9    Rodriguez.  Are you aware that the first meeting with

10   him in October was merely to present the case against

11   him, and for the Government to show the evidence that

12   was to be used against him?

13        A.   Yes.

14        Q.   And not for the purpose of cooperation?

15        A.   Correct.

16        Q.   Are you aware of other people's statements

17   indicating that "Dan Dan" or Daniel Sanchez didn't

18   want the cameras to be covered because he wanted to

19   actually be seen on camera?

20        A.   That sounds familiar.

21        Q.   In other words, he wanted to be seen not

22   involved in the murder?

23        A.   Correct.

24        Q.   Now, I want to make sure there is not any

25   confusion here.  You were asked earlier about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2743

1    benefits discussed with Mr. Rodriguez.  Do you recall

2    whether or not you discussed benefits with him?

3         A.   I did not personally.

4         Q.   Okay.  Now, do you recall whether or not

5    benefits were the subject of the conversations with

6    Mr. Rodriguez?

7         A.   They were.

8         Q.   So, for example, were you aware of him

9    being -- asked to move to a facility where there

10   would not be gang members?

11        A.   Yes.

12        Q.   Would you consider that a benefit?

13        A.   Yes.

14        Q.   And would that facility have possibly

15   provided additional visits?

16        A.   Yes.

17        Q.   Was a discussion about whether or not money

18   could be placed on his books or his commissary?

19        A.   There was.

20        Q.   And was there a discussion about whether or

21   not cooperation could result in a reduced sentence?

22        A.   Yes.

23             MR. CASTELLANO:  Pass the witness, Your

24   Honor.

25             THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2744

1    Castellano.

2            All right.  Ms. Stemo, you may step down.

3            THE WITNESS:  Thank you, Your Honor.

4            THE COURT:  Thank you for your testimony.

5            All right.  If I remember correctly, Mr.

6    Castellano, you now wanted to move to the Daubert

7    hearings?

8            MR. CASTELLANO:  Yes, sir, please.

9            THE COURT:  Or, I guess, Rodriguez

10   hearings, depending on how we want to proceed.

11           MR. CASTELLANO:  Yes, sir.  We would prefer

12   to do that, if it's okay with the Court.  And then we

13   will afterwards present additional statements.

14           DAUBERT/RODRIGUEZ HEARING

15           THE COURT:  All right.  Who is your first

16   expert?

17           MS. ARMIJO:  Ron Martin.

18           THE COURT:  All right.  Mr. Martin, if

19   you'll come up and stand next to the witness box.

20   Before you're seated, Ms. Solis will --

21           MR. SINDEL:  Your Honor, we would invoke

22   the rule.

23           THE COURT:  All right.  I think we have

24   experts here.  So are you -- I guess some of this

25   might get into factual testimony.  Since some of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    these are going to be fact witnesses/experts, while
 2    we're sorting things out, so why don't I go ahead and
 3    invoke the rule.  Otherwise, we're just going to be
 4    bleeding back and forth between whether they're fact
 5    witnesses or experts.  So who is your other expert or
 6    fact witness that's here?
 7             MR. CASTELLANO:  Your Honor, Mr. Cupit is
 8    sitting in the back of the courtroom, and of course,
 9    we have the case agent remaining at the table.
10             THE COURT:  All right.  Mr. Acee can
11    remain.  Who is the other expert?
12             MR. CASTELLANO:  Chris Cupit.  He's with
13    the New Mexico Corrections Department.
14             THE COURT:  Mr. Cupit, you'll need to step
15    outside.  Do not discuss your testimony with anyone
16    before you testify.  You can discuss it with the
17    attorneys, but otherwise, you'll need to remain
18    outside and not discuss your testimony.
19                      RONALD MARTIN,
20        after having been first duly sworn under oath,
21        was questioned and testified as follows:
22                    DIRECT EXAMINATION
23             THE CLERK:  Have a seat and state your full
24    name for the record.
25             THE WITNESS:  Ronald Martin.  M-A-R-T-I-N.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2746

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102747

```
 1              THE COURT:  Mr. Martin.  Ms. Armijo.
 2   BY MS. ARMIJO:
 3       Q.   Good morning, Mr. Martin.
 4       A.   Good morning.
 5       Q.   Where are you employed?
 6       A.   I'm employed for the Department of
 7   Corrections, New Mexico Department of Corrections.
 8       Q.   And how long have you worked for the
 9   Corrections Department?
10       A.   I have worked for the Department of
11   Corrections for 17 years.
12       Q.   And how did you start, what was your first
13   position there?
14       A.   My first position was as a correctional
15   officer.
16       Q.   And what are the duties of a correctional
17   officer?
18       A.   There are several different types of
19   duties, but mainly our duties as correctional
20   officers are for the safety and security of the
21   prison, which means that we monitor the inmates
22   that -- if they're assigned in our area, for example,
23   if I worked in a pod area, I make sure that the
24   inmates are alive and there is no escapes, or that
25   they're fed, or in the general population that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2747

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102748

```
 1    they're allowed to go to medical or they're allowed

 2    to see a caseworker; in a segregation unit, that they

 3    are allotted things they can't get to, like, for

 4    example, toiletries; sometimes acting as a liaison to

 5    property officers, caseworkers, unit managers.  But

 6    mainly to monitor and make sure that there is

 7    safety -- safety of the inmates and the staff.

 8         Q.   And how long were you in the position of a

 9    correctional officer?

10         A.   I was a correctional officer, I believe,

11    for about eight years or so.

12         Q.   And what were the different facilities that

13    you were assigned to?

14         A.   I was assigned at Penitentiary of New

15    Mexico.  I've worked at Los Lunas Correctional

16    Facility.  And I've worked at the Southern New Mexico

17    Correctional Facility.

18         Q.   Okay.  What was the next position that you

19    held after -- and in that capacity -- let me back

20    up -- as a correctional officer, did you have daily

21    contact, daily as in your workday, contact with

22    inmates?

23         A.   Yes.

24         Q.   And what was next position that you held?

25         A.   The next position was STIU officer at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2748

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

1    Southern New Mexico Correctional Facility.  I

2    transferred over to the Penitentiary of New Mexico,

3    where I was a sergeant for the last three years.  So

4    I spent a total of 11 years in the Security Threat

5    Intelligence Unit.

6         Q.   Okay.  And we'll get back to that.  What is

7    your current assignment?

8         A.   My current assignment is Office of

9    Professional Standards, which means I'm an internal

10   investigator.

11        Q.   Okay.  And when did that one start, that

12   position?

13        A.   That position started now in November.

14        Q.   So you're brand-new to that position?

15        A.   Brand-new, yes.

16        Q.   Let's go back to the STIU.  What does STIU

17   stand for?

18        A.   STIU is a gang unit, but the titles are

19   Security Threat Intelligence Unit.

20        Q.   Okay.  And I am going to offer into

21   evidence -- and I don't know if somebody wants to

22   take the lead from defense counsel for some of the

23   documents.  Anybody else have an objection to Exhibit

24   17?

25             This is going to be Government's Exhibit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2749

1    17, which I am marking into evidence without

2    objection.

3         THE COURT:  All right.  Any objection?  All

4    right.  Government's Exhibit 17 will be admitted into

5    evidence.

6         Q.   All right.  And I'm placing it there on the

7    Elmo.  Are you familiar with this item?

8         A.   Yes, I am.

9         Q.   Okay.  Now, you indicated that you were

10   with the STIU, and in different capacities and at

11   different facilities I'm assuming?

12        A.   Correct.

13        Q.   Okay, what is the Security Threat

14   Intelligence Unit?

15        A.   The Security Threat Intelligence Unit was

16   established, I believe, in 1998, after the Department

17   of Corrections -- once they were coming out of the

18   Duran Consent Decree.  We had a high level of gangs

19   that were -- we really didn't have a lot of

20   information on, or there wasn't a lot of information.

21   So we kind of copied -- we didn't reinvent the wheel,

22   but we kind of copied what other states had and we

23   built a Security Gang Unit.  The function of it is to

24   monitor gang activity, monitor street gangs coming

25   into the prison system, and to basically keep the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   safety and security of the prison in order.  And we
 2   report to the wardens where we work.
 3        Q.   And were you in that unit starting back in
 4   2006?
 5        A.   Yes, I was.
 6        Q.   So that was -- you mentioned the purpose of
 7   the STIU.  And on the screen is the first paragraph
 8   of your CV.  Does that also contain some of the
 9   duties that you had and worked on while you were in
10   STIU?
11        A.   Yes, it does.
12             (Ms. Harbour-Valdez entered the courtroom.)
13        Q.   Have you heard the term STG?
14        A.   Yes.
15        Q.   What does that stand for?
16        A.   That's Security Threat Groups.
17        Q.   What are Security Threat Groups?
18        A.   Security Threat Groups are prison gangs
19   that have been identified as prison gangs that are
20   disruptive to the normal operation of a prison.  And
21   we go through an investigation point, and we gather
22   information to corroborate and confirm that a unit or
23   an organization, such as a prison gang, has become a
24   threat.  And we certify them.  And during that
25   process, we segregate them from the rest of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   population.

 2        Q.   Okay.  Certification of an STG, what does

 3   that include?

 4        A.   It includes a lot of corroborating

 5   information, documentation on assaults that have

 6   happened, and interviewing inmates, interviewing

 7   individuals that have dropped out of the gang,

 8   particular gangs, interviewing active members of that

 9   Security Threat Group.  Basically, it's a long

10   process.

11             The one I did on the California Surenos

12   took at least two years, a two-year process.  And

13   this comes with corroboration with outside law

14   enforcement, to include other states, like

15   California, Nevada, any area where we can find

16   individuals that are -- that belong to that gang, or

17   other facilities within the New Mexico Corrections

18   Department, to include jails that have documentation

19   that violent acts have taken place, or that there is

20   security threats involving murders or intimidation of

21   staff, intimidation of other inmates, or a lot of

22   drugs coming in, or officers or staff being taken

23   advantage of.

24        Q.   Now, that process that you talked about,

25   the certification to be an STG, are all prison gangs

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2752

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2753

```
 1    STGs?
 2         A.   No, they're not.
 3         Q.   Okay.  How many different prison gangs are
 4    there, just roughly?
 5         A.   Roughly possibly about seven.
 6         Q.   And how many are STGs?
 7         A.   Three.
 8         Q.   And what are the three STGs?
 9         A.   The three STGs are the Syndicato de Nuevo
10    Mexico; Los Carnales, the LC; and the California
11    Surenos.
12         Q.   And which one of those three was first
13    designated by the New Mexico Corrections Department
14    as an STG?
15         A.   The Syndicato de Nuevo Mexico.
16         Q.   Is that also known as SNM?
17         A.   Yes, it is.
18         Q.   Now, going back a little bit to your job in
19    STIU, in addition to the things that you were talking
20    about, and what's listed, does that also include
21    talking to inmates?
22         A.   Yes, it does.
23         Q.   On how many occasions do you think, in your
24    career with the Corrections Department, have you had
25    an opportunity to talk -- and I don't mean just like:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2753

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108

1    Hello, how you doing, or you know, moving people -- I
2    mean had conversation with inmates where you were
3    able to gather information from them?
4         A.    That's hard to say.  I would say into the
5    thousands.
6         Q.    And what would be some of those different
7    types of encounters that would have included those?
8    Like under what circumstances would you talk to them?
9         A.    Well, different circumstances.  For
10   example, if they come into our RDC.  RDC is a
11   diagnostic center where -- every inmate first comes
12   into our prison system goes through a diagnostic
13   center, and they're classified.  We have STIU
14   personnel in that that identify them.  They either
15   self-identify that they're a street gang member or
16   they identify that they're a prison gang member, or
17   we identify them by tattoos, by markings.
18              And at other times, if there has been an
19   assault happening in our prisons, we'll interview
20   both victim and the suspect, and we'll also interview
21   individuals that have been in the pod before or have
22   any knowledge of any of the incidents that have
23   happened.
24              When we're doing security threat
25   assessments, mood assessments, we'll interview

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2754

1    inmates.  If an individual is claiming protective

2    custody, we'll interview that individual as to why

3    he's asking for protective custody.  If we're

4    interviewing an individual that wants to leave the

5    gang life and renounce his gang, we'll also talk to

6    him or them.

7            There is multiple reasons.  Anything that

8    has to do with a security of the institution, most

9    likely we'll talk to them:  Drug interdiction, drugs

10   being found in the cells, shanks being found in the

11   cells, any number of reasons that would include a

12   security threat issue, we'll most likely talk to

13   them.

14       Q.   And do you also have opportunities to read

15   some of these individuals' communications, written

16   communications?

17       A.   Yes.  As a unit, we sometimes will flag

18   certain individuals that we believe are conducting

19   business that we deem a security threat.  For

20   example, individuals that are trying to bring drugs

21   into our facility, or individuals that may pose a

22   threat, as far as we may have heard that one

23   individual is not getting along with another

24   individual, and there might be an assault that

25   occurs.  And we monitor that pretty closely.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2755

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110

1    that's how we -- we would monitor their mail.

2         Q.   I'm going to be marking into evidence

3    Exhibit Number 18, which is the -- what is an STIU

4    packet on an individual?

5         A.   An STIU packet?

6         Q.   Yes.  Or is there a more proper name for

7    it?

8         A.   A packet would be, if an individual comes

9    in and he's either a street gang member or prison

10   gang member, we try to get as much information as we

11   can from -- and put it into a packet, specifically

12   under that inmate.  And the reason that we do this

13   is, for example, if there is letters written from one

14   inmate to another inmate, and it's relevant to us

15   that there is business being discussed in it, then if

16   we have found that a certain individual was a suspect

17   into this gang, this would give us more evidence to

18   validate that individual as being part of that gang,

19   if there is gang business being discussed.

20              But those are several of the reasons,

21   several different reasons why we would put it into a

22   packet.  Just information purposes.  Because if we go

23   to court, and let's say, for example, a gang member

24   refutes the fact that he was put into or identified

25   into a certain gang, then we have all the information



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2756

 1   necessary to counter that and say, Well, we have this

 2   evidence to prove that you are part of that gang.

 3       Q.   Is part of the packet the process that

 4   Corrections uses to determine if a person is a

 5   suspected gang member or a gang member or verified by

 6   corrections gang member?

 7       A.   Yes.  We have a criteria that would -- that

 8   we follow to either suspect or validate.

 9            MS. ARMIJO:  And, Your Honor, at this time,

10   I'm going to move in Exhibit Number 18, which I've

11   shown to Mr. Baca's counsel.  That has been disclosed

12   as Mr. Baca's STIU packet.  And I believe Mr. Baca's

13   attorney does not oppose --

14            MS. JACKS:  What is the Bates number?

15            MS. ARMIJO:  It starts Bates 11275, and

16   continues to 11441.

17            THE COURT:  All right.  Any objection to

18   Government's Exhibit 18?

19            MS. DUNCAN:  Your Honor, we don't have any

20   objection to her using it for demonstrative purposes,

21   but we object to the accuracy of any information

22   contained herein.

23            THE COURT:  I didn't hear all that you

24   said.  I'm sorry.

25            MS. DUNCAN:  I haven't had a chance to look

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2757

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112758

1    over the whole document, Your Honor.  But we don't

2    object to it being used for demonstrative purposes.

3    But --

4                THE COURT:  I'm not sure your microphone is

5    on.

6                MS. DUNCAN:  Your Honor, we're not opposed

7    to using this pen pack for demonstrative purposes,

8    but obviously, we don't agree that any of the

9    information contained therein or all the information

10   contained therein is accurate or true.

11               THE COURT:  All right.  But it doesn't

12   sound like you object to it coming in as evidence; is

13   that correct?

14               MS. DUNCAN:  I guess not for the truth of

15   the matter.  But I understand that Ms. Armijo is

16   using it just to show how the classification works.

17   So I don't object to it on that ground.

18               THE COURT:  Well, if that's the only

19   objection, I'm going to admit Government's Exhibit

20   18.

21               Did you have something, Mr. Castle?

22               MR. CASTLE:  Yes, Your Honor.  I believe

23   this is only being offered for the purposes of this

24   hearing.  But I don't really know what the purpose is

25   in admitting it.  I do have a number of questions

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2758

```
 1    concerning the exhibit, which could be classified as

 2    voir dire, but if the Court would allow, I can just

 3    combine that with my cross-examination at the time,

 4    and the Court can conditionally admit this and make a

 5    final ruling at that time.

 6              THE COURT:  Do you want to do voir dire at

 7    this time?

 8              MS. ARMIJO:  You can do the voir dire.

 9              THE COURT:  Go ahead, Mr. Castle.

10                   VOIR DIRE EXAMINATION

11    BY MR. CASTLE:

12         Q.   Agent Martin, did you have an opportunity

13    to look at Exhibit 18 prior to testifying today?

14         A.   No, I have not.

15         Q.   So you don't know what's in it?

16         A.   No.

17              MR. CASTLE:  I object to 18.

18              THE COURT:  Well, I don't think there is

19    any doubt what this document is.  It's coming into

20    evidence.

21              MR. CASTLE:  Then I'm going to ask for some

22    additional questions, if that's all right, Your

23    Honor.

24    BY MR. CASTLE:

25         Q.   If you could look at Exhibit 18 and tell me
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2759

```
 1    whether you authored any of the documents contained

 2    therein?

 3         A.   No, I don't believe I have.  But I'm

 4    familiar with most of the documentation.

 5         Q.   How are you familiar with the

 6    documentation?

 7         A.   I reviewed it.

 8         Q.   You reviewed it in preparation for today

 9    or --

10         A.   No, I reviewed it before as part of my job.

11         Q.   Would it be fair to say that Exhibit 18

12    contains a variety of different documents, different

13    types?

14         A.   Yes, from STIU.

15         Q.   I'm sorry?

16         A.   From the STIU department, yes.

17         Q.   Now, when these files or these folders or

18    packets are produced, are they ever purged of

19    material as long as the person is in custody?

20         A.   I'm not sure I understand your question.

21         Q.   Well, are items taken out of the packet

22    ever, or are they just added to the packet?

23         A.   I suppose on some occasions some things

24    could be removed, but mostly added.

25         Q.   What would be the occasions where items
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115

1   would be removed from an individual's security threat

2   or STIU packet?

3       A.   If the coordinator had done an audit on the

4   packet and found that it had no -- it wasn't related

5   to anything that would be classified gang activity,

6   it would probably be removed.

7       Q.   So who would have access to this packet?

8       A.   STIU staff.

9       Q.   So anyone in the STIU staff could access a

10   particular packet?

11       A.   They could review it, yes.

12       Q.   And could they add to it or remove from it,

13   anyone in the STIU unit?

14       A.   They could add to it.  They cannot remove.

15       Q.   Who can remove them?

16       A.   The administrator.

17       Q.   Is there a particular -- is that a singular

18   person, or is there multiple administrators?

19       A.   Well, the way it works is, let's say, for

20   example, that the coordinator did an audit and found

21   on a validated individual, a gang validated

22   individual, that there was information in there that

23   was not valid, relevant to gang activity, then the

24   coordinator could make a request to the administrator

25   that it be removed.  And that's the process that we'd

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2761

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116

```
 1    have to follow.
 2        Q.    And if such happened, would there be some
 3    kind of a memorandum within the packet that indicated
 4    what had been removed?
 5        A.    There would probably be -- I don't think
 6    that would be in the packet, no.  That would probably
 7    be correspondence between the administrator and the
 8    coordinator.
 9        Q.    And where would that correspondence be
10    filed, if not in the packet?
11        A.    I do not know.
12        Q.    Now, just leafing through this packet, it
13    contains interviews of individual inmates at the
14    facility; is that right?
15        A.    Correct.
16        Q.    And that would be by STIU officers or
17    corrections officers?
18        A.    STIU personnel, or -- let's say, for
19    example, a unit manager or a caseworker did an
20    interview, and during that interview there was
21    information regarding gang activity, and that would
22    be turned over to us.  And if we're going through
23    mail scan, and there was a letter written from one
24    inmate to another inmate that contained gang
25    information, that would also be included in there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   You talked about some security threat
 2    interviews that are conducted by STIU officers --
 3          A.   Correct.
 4          Q.   -- right?  Those are contained within this
 5    packet or some of them are?
 6          A.   No, we don't always put them all in that
 7    packet, no.
 8          Q.   No, I'm not saying that all of them are.
 9    But some of them are in this packet; is that right?
10    There are some security threat officer interviews in
11    here?
12          A.   Only if it pertains to that individual.  If
13    it doesn't, it's not always going to be in there, no.
14          Q.   What I'm asking is are there documents
15    within the file that are investigative reports or
16    interviews conducted with inmates?
17          A.   I suppose there is.
18          Q.   Would you like to take a look at one?
19          A.   Well, I believe you.  There are some, I'm
20    sure.
21          Q.   When those interviews are conducted, would
22    those be fairly characterized as investigatory
23    interviews by the STIU officers?
24          A.   The file's purpose is for it to contain
25    gang activity or corroboration that there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118764

1    legitimate gang concerns or security concerns.  We

2    don't put every interview that we've had into a gang

3    packet.

4         Q.   Well, let me show you a document at page,

5    Bates page 11375.

6         A.   Sure.

7         Q.   Is that a page from this packet, if you'd

8    look at the lower right-hand corner?

9         A.   Are you asking me if this interview is in

10   this packet?

11        Q.   No, I'm asking if page 11375, is that a

12   page that's contained within the packet that's been

13   identified as Exhibit 18?

14        A.   Yes.

15        Q.   Is that an interview conducted with a

16   confidential human source?

17        A.   Yes, it is.

18        Q.   And that's with -- who attended that

19   interview?

20        A.   It appears that it was written by Corianne

21   (phonetic), an STIU officer at the Penitentiary of

22   New Mexico.

23        Q.   And also with him was a Special Agent from

24   the Department of Justice, FBI; is that right?

25        A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2764

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 12765

1    Q.   Okay.  So would you characterize that

2    document as an investigatory interview by law

3    enforcement with an informant in the case?

4    A.   Yes, I would.

5    Q.   Without going through all the materials,

6    would it be fair to say that the collection of

7    materials, which you have identified as Exhibit 18,

8    are all materials that are collected for the purposes

9    of investigating whether Mr. Baca was a member of a

10   Security Threat Group?

11   A.   Not only if he's a member, but it tells you

12   other things as well.  Is he a leader in that

13   organization?  Is he a target in that organization?

14   So it will contain a lot of different things.

15   Q.   But in regards to Exhibit 18, all of this

16   is information that has been collected by someone

17   other than you?

18   A.   Correct.

19   Q.   And almost always it would be information

20   collected by STIU officers or other corrections

21   officers, and put into written form to include into

22   the packet?

23   A.   Yes.  If it's given to us and the

24   coordinator finds it to be relevant to put into that

25   file, then he would give the -- he would say we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2765

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120

1    should put it into that file.

2        Q.    Have you vetted the information contained

3    within that packet to determine whether it's all

4    true?

5        A.    I have not.

6             MR. CASTLE:  Your Honor, at this time, I

7    would object to it being admitted without limitation,

8    because this witness neither compiled it, nor is he

9    the author of any of the documents, nor can he verify

10   the accuracy of a single document or of the packet in

11   its whole.

12            If it's being offered merely as an example

13   of the types of material that are contained within an

14   STIU file and types of material that this expert

15   might look at or this proposed expert might look at

16   in his work, I don't have an objection, if it's for

17   that purpose.

18            THE COURT:  What's the purpose that you're

19   offering it for?  Is it for the truth of all the

20   matters asserted in it, or is it for some other

21   purpose?  What's the --

22            MS. ARMIJO:  Well, Your Honor, it's also a

23   business record.  It's part of -- it's maintained in

24   the normal course of business.  It is added to at or

25   near the time of the entries.  It's part of what the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2766

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 121

1    STIU uses for suspected gang members or gang members

2    in the verification process in it.  It does contain

3    letters to -- it contains a variety of things.

4    Certainly --

5            THE COURT:  Well, I wasn't so concerned

6    about the hearsay objection.  I was just wondering

7    what do you want me to glean from this document

8    that's being offered?  And maybe that will clear up

9    some of the problems that the defendants have.

10           MS. ARMIJO:  Well, it goes in part to the

11   witness' explanation of persons that are gang

12   members, and it also contains the certification

13   process which, I believe, is important for the Court

14   to hear and to weigh in considering the amount of

15   expert testimony that we can get into with this

16   witness and his knowledge of what's in this package.

17   And it's specifically, as an example, Mr. Baca.

18           THE COURT:  Well, I'm going to admit the

19   document, and we can argue about what I should and

20   shouldn't consider from it for purposes of either the

21   Daubert/Rodriguez hearing.  So I'll admit it.  I'm

22   not quite sure what I'm supposed to do with it.  But

23   we can argue that out.

24           All right.  So Government's Exhibit 18 will

25   be admitted into evidence for purposes of this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2767

```
 1    hearing.

 2              MS. SIRIGNANO:  Your Honor, if I may enter

 3    an objection just for the record, please?

 4              THE COURT:  You may.

 5              MS. SIRIGNANO:  Team Garcia doesn't believe

 6    that this document has been properly -- Your Honor,

 7    I'd just like to lodge this objection for the record.

 8    We don't believe this document has been properly

 9    offered.  While I understand that the rules of

10    evidence aren't necessarily obligatory during these

11    types of pretrial proceedings, I'd like to lodge that

12    objection.  This is not the proper witness to admit

13    to evidence in.  He has not authored it.  While it

14    might be a business record under the hearsay

15    exception, he's not the custodian of these records.

16    He hasn't written anything in these records.  And I

17    believe that this is just the Government's attempt to

18    get this in before the Court without the proper

19    witness.  Thank you.

20              THE COURT:  All right.  Ms. Armijo.

21    BY MS. ARMIJO:

22         Q.   And Mr. Martin, what we're looking at, just

23    so we're clear, Exhibit 18, we're looking at it on

24    the Elmo, what does the face sheet illustrate, which

25    is Bates 11275?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2768

 1        A.    That's a New Mexico Corrections Department

 2   master record entry.  This information is collected

 3   at the diagnostic center, Reception and Diagnostic

 4   Center, when an inmate is admitted into the prison

 5   system.  Also, it's updated as they do their prison

 6   time.

 7        Q.    Okay.  And I'm going to go to the bottom of

 8   the page.  And for instance -- the bottom of the page

 9   we have a couple of different sentences; is that

10   correct?

11        A.    Yes.

12        Q.    For instance, there is one that says,

13   "Sentence began 1990 for" looks like "possession of a

14   deadly weapon."  And then there is another entry:

15   "Sentence began 2004," with a sentence of "998.7

16   years for murder in the first degree and possession

17   of a deadly weapon"?

18        A.    Correct.

19        Q.    All right.  Now, going to the second page,

20   what is it that we're looking at?  Are you familiar

21   with this form?

22        A.    Yes, I am.

23        Q.    And what is this form?

24        A.    This is a form that we use, "STG

25   Documentation Index," and we mark down documents that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2769

1    are in the file.

2         Q.   So, for instance, that is 5/30/08 -- looks

3    like it's typed.  Is that information that may have

4    been originally in this file?

5         A.   Yes, that would indicate the first photo

6    that you showed, that escape flier is in the packet.

7         Q.   Okay.  And does this contain -- under

8    "document description," does this contain all of the

9    original information that was contained in the

10   original packet in May of 2008?

11        A.   Yes.

12        Q.   Okay.  We can see on this page that there

13   is additional entries in there with dates that are

14   handwritten.  Can you explain that to us?

15        A.   Yes, in 2/14/09, the inmate's name is

16   Anthony Ray Baca; his MDC number to identify his

17   number for the Corrections Department.  The document

18   description that was added -- it's added documents.

19   And it was entered by staff entry that would have

20   been James Mulherron, who was the STIU coordinator at

21   Southern.

22        Q.   Okay.  Are all these dates that are

23   handwritten are dates that things were added to this

24   file?

25        A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 125

 1          Q.   And this page would document that?

 2          A.   Yes, it would.

 3          Q.   And I'm going to the next page, which is

 4     the third page in the packet.  Are you familiar with

 5     what is on the screen?

 6          A.   Yes, I am.  It's a criteria that we use for

 7     suspecting or validating members of an STG group.

 8          Q.   An STG group or member?

 9          A.   Member, I'm sorry.

10          Q.   Okay.  And tell us how it works.

11          A.   If we interview the individual and he

12     self-admits that he is a member of that group, we

13     would put -- we would -- the criteria would be slided

14     off.  So self-admission would also indicate a tattoo,

15     so a tattoo would indicate self-admission as well.

16               Symbolism:  If there is any symbolism, such

17     as codes or signs or tattoos that are used by this

18     gang to indicate that they have membership in it, and

19     documents that we found, maybe writing to another

20     gang member, and within that they have, for example,

21     the SNM symbol, a Zia with an SNM in it, or the

22     Surenos with the Nahautl lettering, three dots and

23     two lines.  So different gangs will have different

24     identifiers, depending on symbolism.

25               So anything within that, that we find on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2771

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 126

1    documentation, anything that we find that can give us

2    more information or intelligence that this individual

3    belongs to that group, then that verifies that he's

4    most likely a member of that group.

5            And then the point system -- we work by the

6    point system.  So the criteria here would indicate

7    that all the marks -- the markings that were marked

8    off add two points.  So at the end of it, on 5/13/11,

9    when they did this, the total criteria that was met

10    was 29 points.  And the minimum criteria that we have

11    to meet is 10.

12    Q.    Okay.  So in order for the STIU to indicate

13    that a person is a validated gang member on this

14    sheet, they would have to reach 10 points; is that

15    correct?

16    A.    Ten points, correct.

17    Q.    And at least as of the last entries on

18    this, Mr. Baca had met 29; is that correct?

19    A.    Correct.

20    Q.    So does Corrections consider him a

21    validated gang member?

22    A.    Yes, they do.

23    Q.    Of what gang?

24    A.    The Syndicato de Nuevo Mexico.

25    Q.    You were talking a little bit about stuff,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2772

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127

1    and we will leave that on there, because I want to

2    talk about the SNM.

3           Are you familiar -- did you have an

4    opportunity to read Document 1299, which was the

5    United States expert notice and motion in limine to

6    admit gang witness expert testimony, which contained

7    proposed expert testimony from you and two other

8    persons?

9        A.   Yes.

10       Q.   And did you, in reference to the proposed

11   expert testimony that's listed out on pages 1 through

12   6 of that document, do you agree with all of what's

13   written on that document, after having a chance to

14   review it?

15       A.   Yes.

16       Q.   Now, what is the SNM?

17       A.   The SNM is a prison gang in the New Mexico

18   Department of Corrections, that has been certified as

19   a disruptive -- I mean a Security Threat Group.

20       Q.   And I'm going to -- before you get any

21   further, I think I have -- do you know when it was

22   certified -- oh, wait I think I -- hold on, let me

23   get to something here.  I'm referring to Bates stamp

24   11278, which is in Exhibit 18.  Are you familiar with

25   this document?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2773

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 128

```
 1          A.   Yes, I am.

 2          Q.   And what is it that we're looking at?

 3          A.    It's a memorandum to the Director of Adult

 4     Prisons, John Shanks, from the Security Threat Task

 5     Force.  The subject is Syndicato de Nuevo Mexico,

 6     certification of Security Threat Group.  So this was

 7     offered up to Mr. Shanks at the time, and he

 8     concurred that, with all the information that was

 9     provided, that the Syndicato de Nuevo Mexico was

10     considered a Security Threat Group.

11          Q.   So was this when they actually became an

12     official Security Threat Group?

13          A.   Yes, once it's signed, absolutely.

14          Q.   Okay.  So February 8, 1999; is that

15     correct?

16          A.   Correct.

17          Q.   Now, when did -- do you know when the

18     SNM -- have you had an opportunity -- let me lay a

19     little bit of foundation.  Have you had an

20     opportunity to interact with SNM Gang members?

21          A.   Yes, I have.

22          Q.   In what capacity?

23          A.   As a correctional officer, as a Security

24     Threat Intelligence Unit officer, basically that's

25     it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2774

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2775

1        Q.    So in your time in Corrections?

2        A.    Yes, while working in Corrections, correct.

3        Q.    And also during that time, I believe you

4    testified earlier about the different circumstances

5    that you've talked to individuals.  Would that apply

6    to SNM Gang members?

7        A.    Yes, it would.

8        Q.    And through that, have you gained

9    information about the SNM?

10       A.    Yes, I have.

11       Q.    And have you had any training about prison

12   groups?

13       A.    Yes, I have.

14       Q.    And I believe it's listed on your -- you

15   have your qualifications on your CV.  In addition to

16   that, have you given trainings?

17       A.    Yes, I have.

18       Q.    And when did you start being an instructor

19   on prison groups?

20       A.    I started being an instructor, I believe,

21   in 2010.

22       Q.    Now, specifically as to the SNM, you

23   indicated, I believe earlier, that STIU was created

24   in -- was it 1998?

25       A.    Yes.  It was called the Security Threat

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2775

1    Groups Intelligence Unit, which was later changed to

2    Security Threat Intelligence Unit.

3         Q.   And then, in 1999, we have our first

4    certified security threat group; is that correct?

5         A.   Correct.

6         Q.   Now, what sort of activities is the SNM

7    involved in?

8         A.   The SNM, are you talking about?

9         Q.   Let's start in the prison.

10        A.   In the prison system?

11        Q.   In the prison system.

12        A.   Well, in the prison system, they're

13   involved in the control of, mainly of narcotics,

14   narcotics coming into the prison, trying to control

15   other gangs that are involved in narcotics in the

16   prison.  For example, if there is another -- if there

17   was another group bringing in drugs to the prison,

18   they would be taxed, and they would have to give some

19   of that money to the SNM, because they were bigger

20   and more powerful and more viable.

21             So anything -- any underground economy that

22   goes into the prison, for example, of selling goods,

23   contraband, the selling of shanks, the selling of

24   narcotics; protection, if an individual needed

25   protection, he'd have to pay protection money.  Also

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    rat money.  If an individual wanted to live in peace,

2    and he belonged to no other gang, he might be forced

3    to pay a protection tax.

4        Q.   Okay.  Those are --

5        A.   Pretty much anything that they could make

6    money on, or that would make money for the

7    organization, they were involved in it.

8        Q.   What about violent crimes?  Are they in any

9    way associated with prison gangs?

10       A.   Yes.  They differ a little bit, like, for

11   example, from the Mexican Mafia.  The Mexican Mafia

12   is a violent group as well, and -- but their primary

13   goal is to make as much money as they can, and tax as

14   many inmates, not only inside the prison, but outside

15   the prison, to collect money.  The SNM is mainly

16   known for violence.  They're known that they're a

17   very violent organization.

18       Q.   And okay, and how so?

19       A.   They prey on the weaker inmates.  And if

20   orders are not followed within the organization, it

21   could result in violent retaliation against its own

22   members.

23       Q.   Do they have a structure, the SNM?

24       A.   Yes, they do.

25       Q.   What kind of structure do they have?

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2777

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 132

 1         A.   At the beginning, they had what I would
 2    call a Don, who was a jefe, who was a guy that's in
 3    charge.  At the time, it was Juan Baca.  He was the
 4    originator.  And he basically wanted to structure the
 5    SNM after the Mexican Mafia, which would only allow
 6    individuals that were violent into the group.  As it
 7    changed later on, after Juan Baca left, you had Angel
 8    Munoz, "Papa Smurf," who went by the moniker of "Papa
 9    Smurf."  "Papa Smurf" would allow individuals to come
10    into SNM not to commit violent acts sometimes, but if
11    he had a drug connection or -- his primary focus was
12    to control the drug market.
13         Q.   And about -- what time period is this
14    approximately?
15         A.   This is in the '90s.  It started off in the
16    '80s, the early '80s, right after the prison riot.
17    And in the '90s, when Juan Baca was gone, Angel Munoz
18    took over, and what he would have was a table of
19    individuals that he would call captains.  He put
20    captains on the boards.  And those captains would
21    then have soldiers underneath them.  And those
22    soldiers -- primarily, if you brought an individual
23    into the SNM, he pretty much fell under you.  But he,
24    had a table or a tabla, what they called, of
25    individuals that were captains.  And then a Don at

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                      1-800-669-9492
                                                          e-mail: info@litsupport.com



DNM 2778

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132779

```
 1    the top.
 2         Q.   Now, has that structure varied throughout
 3    the years?
 4         A.   It has, yes.
 5         Q.   And how so?
 6         A.   When we removed a lot of individuals that
 7    we knew were high ranking members within the SNM, and
 8    we moved them out of state, our objective was kind of
 9    to cut the head off the snake.  At this time, other
10    individuals started to take rein of -- well, control
11    of the SNM.  And there was a lot of infighting within
12    the SNM, because they didn't believe that one leader
13    was either going in the right direction or that he
14    had individuals that were plotting against other
15    individuals.  So a lot of jealousy and a lot of
16    bickering started.  So you would have what you would
17    call different cliques within the SNM.  Yet, overall,
18    if something were to happen, they would still come
19    together as a unit.  But there was a bunch of
20    different cliques that would say, "I'm not following
21    this guy," for example.  They would say, "I'm not
22    following 'Styx.'  I'm going to follow" --
23         Q.   Who is "Styx"?
24         A.   Gerald Archuleta.  Or they would say, "I'm
25    following 'Shotgun.'"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.    Who is "Shotgun"?

 2          A.    Arturo Torrez.

 3          Q.    Okay.

 4          A.    Arturo -- I think that's right.

 5                But they would have different individuals

 6    following different groups.  And that's what brought

 7    in a lot of the infighting.

 8                And then, in 2008 or 2009, we had an

 9    individual that came back into our prison system as

10    one of the main leaders, and started taking control

11    of the SNM again.

12          Q.    And who was that?

13          A.    Anthony Ray Baca.

14          Q.    Now, have you had conversations with Mr.

15    Baca?

16          A.    Yes, I have.

17          Q.    Have you -- on more than one occasion?

18          A.    Yes.

19          Q.    Now, when you indicated 2008, 2009, he came

20    in and he took control of it?

21          A.    Right.  Mr. Baca was -- I believe in 1997

22    or '98, he was transferred out of state, to the

23    Nevada Department of Corrections.  He returned back

24    to the New Mexico Department of Corrections, I

25    believe in 2008 or 2009.  And he went through -- I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



DNM 2780

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135 781

```
 1    believe he was put back at the Penitentiary of New
 2    Mexico, and then transferred to Southern New Mexico.
 3         Q.   Now, are there -- there are several
 4    different correctional facilities in the state;
 5    correct?
 6         A.   Correct.
 7         Q.   Now, are there basically, though, two main
 8    campuses, for lack of a better word, in which your
 9    STG members will be held?
10         A.   Yes.  SNM, in particular, was housed at
11    Southern.  The population setting was set at
12    Southern.
13              PNM was used as -- it's more of a place
14    where we have segregation.  And it's a program,
15    basically, where they have to go if they go to
16    segregation.  It's a step-down program that would
17    take them from the Level 6 to the Level 5, and then
18    return back to a Level 4 setting, which the SNM was
19    categorized as a Level 4 population setting.
20              THE COURT:  Ms. Armijo, is this a pretty
21    good time --
22              MS. ARMIJO:  Oh, sure, Your Honor.
23              THE COURT:  All right.  Why don't we take
24    our lunch break now.  See you back in about an hour.
25    Shoot for that.  We'll be in recess.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2781

```
 1                    (The Court stood in recess.)

 2                    THE COURT:  All right.  Everyone ready to

 3        go?  Mr. Martin, if I could have you return to the

 4        witness box.  Does everybody have counsel?

 5                    (Mr. Burke is no longer in attendance.)

 6                    THE COURT:  All right.  We'll go back on

 7        the record.  Let's everybody try to keep it closer to

 8        an hour, rather than an hour and 15 minutes in

 9        getting back from lunch.  That delays everybody.

10                    MR. DAVIS:  Judge, I apologize.  This is my

11        fault.  I just completely mistook the time.  So I

12        apologize, Judge.

13                    THE COURT:  All right.  Two things, one is

14        the CJA lawyers have been asking Ms. Wild for a CJA

15        meeting.  I don't know if we're going to get it

16        squeezed in.  We're losing some time today getting

17        lawyers and defendants into the courtroom, so we're

18        losing some time today.  So I don't know if we'll

19        have the meeting.  But I can tell you this, every CJA

20        voucher that I have been presented with is signed and

21        on its way back, or already in Albuquerque.  Every

22        motion that has been presented to me by the

23        defendants has been signed and either is in Fed Ex

24        packages or already there.  So if that's of any

25        comfort to anybody, anything there is.  If we need a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2782

 1    CJA meeting, we can have it.  But every request that

 2    I know of has been dealt with.

 3            Secondly, I'm going to begin to turn

 4    attention from the disqualification motion to

 5    something else.  And so, unless somebody proposes

 6    other work they would like me to concentrate on a

 7    little bit more in detail or either reconsider or

 8    rethink, I'm going to turn to Shauna Gutierrez's

 9    motion to dismiss.  I said I'd take a look at that.

10    So unless somebody has got a better candidate, that's

11    what I'm going to turn to.

12            So be thinking of that.  When I leave here

13    tomorrow, I certainly want a batting order of things

14    the parties want me to work on in greater detail.

15    Let me get -- let's see, Mr. Burke is gone.  So he is

16    gone.  But we do have Ms. Harbour-Valdez.

17            What we did here to move things along, all

18    the voucher numbers were sent to Ms. Wild and she's

19    already processed.  So any voucher is processed, so

20    that's where we stand on any vouchers.  Okay.

21            So Mr. Burke is gone.  Anybody else leave

22    us during the lunch hour?  All right.

23            All right.  Mr. Martin, I'll remind you

24    that you're still under oath.

25            THE WITNESS:  Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2783

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

```
 1              THE COURT:  Did you have something you
 2    wanted to take up before Ms. Armijo continues the
 3    direct examination of Mr. Martin, Mr. Castellano?
 4              MR. CASTELLANO:  Yes.  Just a housekeeping
 5    matter.  I have a disc, which is marked Exhibit 16 A.
 6    It's the audio of the transcript that was introduced
 7    this morning.  So it will be available for defense
 8    counsel to listen to during a break if they need to.
 9              THE COURT:  All right.  It has been
10    admitted into evidence.
11              All right.  Ms. Armijo, if you wish to
12    continue your direct examination of Mr. Martin, you
13    may do so at this time.
14              MS. ARMIJO:  Thank you, Your Honor.
15              THE COURT:  Ms. Armijo.
16    BY MS. ARMIJO:
17         Q.   I believe, when we broke for lunch, we were
18    talking about the different levels of classification.
19    Can you please explain those again?
20         A.   The different levels the New Mexico
21    Corrections Department works under is classification
22    from a Level 1 to a Level 6.  The Penitentiary of New
23    Mexico holds classifications from a Level 6, Level 5,
24    and Level 4.
25         Q.   And which is the highest security-wise?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2784

2785

```
 1          A.    Level 6 would be the highest.

 2          Q.    And then I think you had mentioned before

 3    lunch that up at the PNM it's people working down

 4    from 6 to go back to 4?

 5          A.    Right.  With the new administration that we

 6    have gotten, the classification kind of changed a

 7    little bit, where the north facility is Level 6.

 8    It's called the predatory management program where

 9    individuals are locked up for a period of about four

10    months, and they work themselves into congregate

11    movement.

12          Q.    And how does that differ from Southern?

13          A.    Southern is a population prison.  It's a

14    Level 3.  A level 3 and Level 4 -- Level 3, Level 4,

15    and it holds some segregated inmates, which are Level

16    6.

17          Q.    Now, at this point in time, was a

18    determination made that the SNM members would be held

19    down there?

20          A.    Yes.  I believe that they've been held down

21    there, wow, maybe since 2003, they've been down

22    there, or even longer than that.

23          Q.    All right.  Are you aware of the Castillo

24    and Garza murders?

25          A.    Yes, I am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 140

```
 1          Q.   Okay.  And if those occurred in 2001, would
 2     they have been held down there, in 2001?
 3          A.   Yes.  At that time, they were still in the
 4     population setting.  So they were certified as a
 5     security prison group.  But there was still members
 6     that were out in the -- so it was an ongoing process.
 7     It was a new process to us.  So it was an ongoing
 8     process.  So we -- after the murders is when we
 9     started segregating members of the SNM into their own
10     population setting.
11          Q.   After the murders of whom?
12          A.   Of Garza and --
13          Q.   Castillo?
14          A.   Castillo, yes.
15          Q.   And now, I believe you were talking a
16     little bit about the structure of the SNM and
17     leadership.  How does somebody become a member?
18          A.   A member usually is brought in by -- he has
19     to be voted on by -- by the hierarchy.  So, for
20     example, if I'm already an SNM member, and I want to
21     bring someone in that I know is pretty credible, and
22     he meets the criteria for the gang, then I'll
23     introduce him, and I have to vouch for him.  I
24     believe that not only I, but two other members would
25     have to vouch for him as well; that he would be in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    good standing.  And after a period of orientation, if

2    you would call it that, then he would be allowed in.

3            In the early '80s and into the mid '90s,

4    that individual was obligated to commit some kind of

5    a violent act in order to show his loyalty to the

6    gang, if you will.  Their motto at the time was blood

7    in-blood out.  You bring blood to get in, and you

8    can't get out unless you're taken out by blood.

9        Q.   Now, are you aware of whether or not things

10   more recently than the '80s and '90s have been a

11   little bit more relaxed about that?

12       A.   Yes, I believe they have.  We haven't seen

13   so much of that.  There has been, like the murder of

14   Freddie Sanchez; that was considered a hit because he

15   ratted to law enforcement.  Also, there has been

16   individuals that have left for religious purposes,

17   and they have been let go.  And now we created a

18   program called Restoration Into Population, which is

19   basically a dropout unit, a gang dropout unit.  So

20   that's another area or an avenue of individuals that

21   can take that route.

22           I haven't seen a lot of -- I haven't really

23   seen any -- in the 2000s I haven't seen really

24   anybody get murdered or heard of anyone getting

25   murdered because they wanted out of a gang.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2787

```
 1        Q.    All right.  But what about rules of the
 2   gang?
 3        A.    Yeah.  They have rules.  And they've
 4   changed as well.  At the beginning, they had rules;
 5   the three rules that existed were:  You don't snitch
 6   on anyone.  That's an automatic -- they would murder
 7   you.  You don't leave a brother hanging or a carnale
 8   hanging.  That was also -- so there was a rule of
 9   where you either were beat up; that was a sanction,
10   you were either beat up, you were either stabbed, or
11   you were killed.
12             I believe that some of those rules have
13   flexed a lot, and they changed the way that they
14   operated.
15        Q.    What about the rule as to cooperators?  Are
16   cooperators seen as people who should be killed?
17        A.    Absolutely.  They're seen as snitches or
18   rats.
19        Q.    And are you familiar with the murders that
20   are charged in this case?  And I can -- you don't
21   have the indictment in front of you.  Are you aware
22   of the motive for the Javier Molina -- let's use that
23   as an example?
24        A.    Yes, I am.
25        Q.    And what was the motive behind the killing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2788

```
 1    of Javier Molina?
 2         A.   The motive behind killing Molina was there
 3    was written documentation on law enforcement that he
 4    had told on someone else or provided information to
 5    law enforcement on someone else.  So basically
 6    ratting.
 7         Q.   Have you heard the term "paperwork"?
 8         A.   Yes.
 9         Q.   What does that refer to?
10         A.   They refer to that, in order to move on a
11    brother or a carnal, they have to have it in black
12    and white.  So it's got to be written documentation
13    that offers proof that this person indeed ratted.
14         Q.   And if that person did, in fact, rat, what
15    happens?
16         A.   It's an automatic death sentence.
17         Q.   Now, are you familiar with the murder of
18    Freddie Sanchez?
19         A.   Yes, I am.
20         Q.   And how are you aware of that murder?
21         A.   I conducted an interview with Mr. Sanchez
22    before he was killed.
23         Q.   Was Mr. Sanchez a SNM Gang member?
24         A.   Yes, he was a validated SNM Gang member.
25         Q.   Was he in good standing when he was killed?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2789

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 144

```
 1        A.    No, he was not.

 2        Q.    And why not?

 3        A.    There was documentation that Mr. Sanchez

 4   had provided information to law enforcement in

 5   Roswell.

 6        Q.    And did Mr. Sanchez know that he was not in

 7   good standing?

 8        A.    Yes, he did.

 9        Q.    Where was he at when you spoke to him?

10        A.    He was at Southern Correctional Facility.

11        Q.    In reference to his murder, which was in

12   2007, when exactly did you talk to him, or I should

13   say approximately when did you talk to him?

14        A.    I talked to him approximately three days

15   before he was murdered.  And he was in the

16   orientation status.

17        Q.    What does that mean?

18        A.    Orientation status means that when a new

19   arrival show up at a prison, we keep them in

20   segregation within the pod, or the unit where

21   everyone else lives.

22            After a certain amount of time, we have a

23   committee meeting to involve STIU, the unit managers,

24   and classification officers.  At this point, the

25   inmate can state whether he feels comfortable living
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 145791

 1   there, or if maybe other individuals in the pod have

 2   given him a heads-up or have told him that he's going

 3   to be a target for assault, and at this point he can

 4   request to be removed out of that unit.

 5         Q.   Okay.  Is that part of the interviews that

 6   you mentioned earlier, when you were talking about

 7   opportunities that you've had to talk to gang

 8   members?

 9         A.   That's some of the opportunities, yes.

10         Q.   And Mr. Sanchez, was he concerned for his

11   safety?

12         A.   When I spoke to him, he was.

13         Q.   Now, what about different ways of

14   communication between SNM Gang members?  Are you

15   aware of how they communicate, other than just

16   standing next to each other and talking?

17         A.   Yes.  Sometimes they'll use sign language

18   to communicate with one another.  Do you mean --

19         Q.   I'm sorry?  Oh, no, I mean, like -- okay,

20   if they can't talk to each other, do they send each

21   other letters?

22         A.   Oh, yes.  I'm sorry.  I didn't understand

23   your question too well.  They will send what you call

24   kites, which are really small notes they'll pass to

25   each other.  And there is a lot of different ways to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2791

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 146

 1    circumvent the security system.  Sometimes they'll

 2    send it through the laundry.  We do their laundry and

 3    they'll pass notes through the laundry.  Or they'll

 4    get the bag and they'll mark the laundry bag belongs

 5    to whomever, the inmate they want to send the kite

 6    to, and the kite usually gets to them.  Sometimes

 7    they'll get staff to inadvertently pass letters for

 8    them.  Or at other times, they'll situate themselves

 9    where they can end up in the same recreation pen

10    together, and they're able to talk to each other that

11    way.

12         Q.   What about telephone calls?

13         A.   Yes, telephone calls.  There is different

14    ways to do this.  Sometimes they'll have a

15    conversation about absolutely nothing for a long

16    period of time where, you know, the purpose is to

17    bore you of the conversation that there is nothing

18    going on.  And for about 10 seconds or so, even less,

19    they will discuss business.  Sometimes they'll use

20    letters -- I mean words, such as "Washington," which

21    would interpret them -- meaning themselves, mi

22    garito, different things like that, that would state

23    that they're talking about themselves.  Or they use

24    different words for codes to mean different things.

25    If they're talking about heroin, they might refer to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    a singer like Michael Jackson, different things like

2    that.  They'll refer to games, such as soccer games,

3    for example.  If there is a soccer game going on,

4    they will be on the phone saying:  Did you see the

5    soccer game last night?  Yeah.  Did you see Juan

6    scored three goals, which would mean that Juan paid

7    or didn't pay.  If they're mentioning his name, that

8    means he paid for the dope, or didn't pay for the

9    dope, different things like that.

10          Or the females will also pass on messages.

11   When they're in contact visits, that some of them are

12   not monitored, some of the visits not monitored, so

13   that they're able to get a code of only what them two

14   know what it means.  So when they're talking on the

15   phone, and they pass this code on, then that person

16   knows exactly what they're talking about, and that's

17   a harder code to break.

18       Q.   Now, you talked a little bit earlier about

19   activities within the prison.  What about, does SNM

20   have any activities on the street?

21       A.   Yeah, I believe so.  Usually inmates, when

22   they're getting out of prison would have a -- what

23   you would call a mission; they would be sent on a

24   mission.  And they were obligated out there to meet

25   with one another.  And usually there was one guy on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2793

1    the street would be in charge -- let's say, for

2    example, the Albuquerque area, if you have

3    individuals in the Albuquerque area, then they were

4    obligated to meet with each other and conduct

5    criminal business, or come up with criminal business

6    in order to send drugs and money back into the prison

7    system.

8         Q.   And does the SNM Gang even operate outside

9    the State of New Mexico?

10        A.   In the federal system, yes.

11        Q.   Now, what about rivals?  What rivals do

12   they have?

13        A.   In the '80s and '90s their biggest rival

14   was the Los Carnales Gang.  At this point, I believe

15   there might be a verbal truce, where there is no

16   violence with one another.

17             One of their main rivals right now is the

18   Burquenos and the Barrio Aztecas.

19        Q.   And what happens with rivals; for instance,

20   if you were to see a rival on the street?

21        A.   Well, if you see a rival, it would be

22   mandatory that you would assault them or hurt them in

23   some way, I know in the prison system more than on

24   the street.  I'm not too sure about the street.

25   Because sometimes, especially nowadays, a lot of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2794

```
 1    times, you know, they'll sell each other drugs.  So,
 2    you know, there might not be that big of a rivalry on
 3    the streets as it is inside the prison system.
 4         Q.   Are you aware of there being murders that
 5    have been committed for that, and specifically, are
 6    you aware -- do you know who Frederico Munoz is?
 7         A.   Yes, I do.
 8         Q.   And who is he?
 9         A.   He is an ex-SNM member.
10         Q.   And while he was an SNM member, are you
11    aware of a murder that he committed out on the
12    streets?
13         A.   I believe he committed a murder while he
14    was in the county detention center.
15         Q.   All right.  And you're not aware of the one
16    that -- he committed another one out on the street.
17    Are you aware of that one?
18              MR. SINDEL:  Object to the leading form of
19    the question.  She's continuing to testify.
20              THE COURT:  I think they're fine.
21    Overruled.
22         A.   I know an individual that he shot out on
23    the street, yes.
24         Q.   Okay.  And what was that -- why don't you
25    tell us about that.  What was that in reference to?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 152

```
 1         A.   That was in reference to -- I believe that
 2    he shot Julian Romero.   Julian Romero was a high
 3    ranking member of the SNM.   Julian Romero had ended
 4    up dating and going with another high ranking
 5    member's -- SNM high ranking member's wife.   And
 6    that's an unspoken -- well, it's a no-no within the
 7    gang.   And so it was a retaliation for Gerald
 8    Archuleta.
 9         Q.   And how long has -- so has there been a
10    green light on Julian Romero?
11         A.   As long as I've known, there has always
12    been a green light on Julian Romero.
13         Q.   Now, the person that put the green light
14    initially, was he at that time in a position of
15    power?
16         A.   Yes, he was.
17         Q.   Now, what about tattoos?   I believe you
18    talked about it earlier in reference to trying to
19    identify them.   What kind of tattoos are you familiar
20    with?
21         A.   The tattoos that identify SNM?
22         Q.   Yes.
23         A.   SNM originally used to use the Zia symbol
24    with the S in it, or with the SNM emblem inside the
25    Zia symbol.   They've used the number 19, or just the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   letter S, or the SNM together.  As recent as 2010, I
 2   believe, they started using that Nahautl numerical
 3   Mayan tattoos that symbolized the number 19 for the
 4   letter S.
 5        Q.   I'm going to be marking -- I believe I'm at
 6   19.  Are you familiar, when people come into prison,
 7   I believe you had said earlier sometimes they come
 8   from street gangs; is that correct?
 9        A.   That's correct.
10        Q.   Can you explain how that works?
11        A.   Primarily, in Albuquerque, it's one of the
12   biggest metro areas in the State of New Mexico, so
13   you get most of your gang members out of Albuquerque.
14   So you had a wide variety of different gangs in
15   Albuquerque by itself.  You have the West Side Locos.
16   You have older street gangs like Barelas,
17   Martineztown, Los Padillas, San Jose, Brewtown.
18             So you have a wide variety of different
19   street gangs and across the State of New Mexico.
20   Usually, when they come into the prison system,
21   they'll have tattoos on themselves, a representation
22   of their gang, and confirmation when you ask.  Most
23   of them are pretty honest and tell you what gang
24   they're from.
25        Q.   Now -- and how does that feed into when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    they go into prison and possibly becoming a member of

 2    the SNM, for instance?

 3         A.   Well, it serves for a better purpose.

 4    Because in New Mexico, the prison system only holds

 5    about 8,000 inmates, that's to include females.  So

 6    we're not that big of a prison system, so somebody

 7    always knows somebody from an area, or they can vouch

 8    for them, as far as who they are or how much work

 9    they put in in the street.

10         In the gang life, the more horrible

11    criminal activities that you conducted, the better

12    your stature is inside of a prison, or the better

13    that you're looked at as an all right guy, a credible

14    person to be in the gang.

15         MS. ARMIJO:  And Your Honor, at this time,

16    I'm going to move for the admission of Exhibit

17    numbers 19 through 22; 19 and 20 are photographs of

18    Mr. Herrera, and 21 and 22 are photographs of Mr.

19    Baca.

20         THE COURT:  Any objection?

21         MS. HARBOUR-VALDEZ:  Could you give us the

22    Bates numbers, Bates stamp?

23         MS. ARMIJO:  I don't have them on 21 and

24    22.  But on 19 and 20, it is 8341 and 8356.

25         MR. DAVIS:  Judge, on behalf of Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2798

```
 1    Herrera, with regard to Exhibits 19 and 20, we don't

 2    have any objections to their use at this hearing

 3    only, but we reserve the right to raise objection

 4    later on.

 5              THE COURT:  Oh, certainly this is just for

 6    purposes of the hearing.

 7              Ms. Duncan?

 8              MS. DUNCAN:  And, Your Honor, on behalf of

 9    Mr. Baca, we take the same position.

10              THE COURT:  All right.  We'll admit them.

11    If there are no other objections, Government's

12    Exhibit 19, 20, 21, and 22, and just admit them for

13    purposes of the hearing.  Ms. Armijo.

14         Q.   Showing first Exhibit 19.  Can you explain

15    what we're looking at?

16         A.   In the abdomen area of Mr. Herrera he has a

17    Zia symbol, with the letter S in the middle, and I

18    believe the English lettering.

19         Q.   And are you familiar with who Mr. Herrera

20    is?

21         A.   Yes, I am.

22         Q.   And what is your information about him in

23    relationship to SNM?

24         A.   He was a street gang member with 18th

25    Street out of Albuquerque.  And this I know because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2799

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154

 1    he also had a brother that was an 18th Street Gang

 2    member out of Albuquerque, that was not an SNM

 3    member.  But once he came into prison, he became

 4    associated and became part of the SNM Gang.  And

 5    that's part of the tattoo that he would put on

 6    himself.

 7        Q.   All right.  So the tattoo that's in the

 8    middle here, is that what you're talking about,

 9    specifically with the S in the middle?

10        A.   Yes.  The Zia would represent the State of

11    New Mexico.  And the representation of the Zia is to

12    indicate to other gang members that the SNM controls

13    the whole State of New Mexico.

14        Q.   Now, you were talking earlier about 18th

15    Street.  Are you familiar with this photograph of Mr.

16    Herrera?

17        A.   Yes, I am.

18        Q.   And what is it that we see that's

19    significant in this photograph, and I'm showing

20    Exhibit 20?

21        A.   It's a tattoo of an 18, which would

22    represent the 18th Street Gang.

23        Q.   Now, showing Exhibit 21, what is it that

24    we're looking at?

25        A.   In the middle, again, in the abdomen, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2800

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 155

1    Baca has in Spanish, "Sindicato de Nuevo Mexico."

2        Q.    Okay.  And do you see on top?  What does

3    that say?  Can you read that?

4        A.    Barely.  Nuevo Mexico Syndicato.

5        Q.    And what about this up here?  Duke City?

6    Do you know what that's in reference to?

7        A.    Yes, that would have referenced that Mr.

8    Baca is from Albuquerque, and that's symbolism that

9    the Burquenos would indicate that they're from

10   Albuquerque.

11       Q.    Right.  And I'm showing Exhibit 22 now.

12   Can you see that?

13       A.    Yes.

14       Q.    And what does that indicate?

15       A.    That would indicate that -- it's a Zia

16   symbol, I believe.

17       Q.    And I can try and --

18       A.    Yes, it would have an S in the center of

19   it.

20       Q.    Now, in reference to Mr. Baca, I believe

21   earlier you had testified that you were aware that

22   when he came back, he kind of became the leader of

23   the SNM?

24       A.    Yes.  Well, when he left, he was pretty

25   influential within the SNM.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2801

1      Q.   And what was the reason for him leaving?

2      A.   The reason for him leaving is that at the

3  time the administration and Corrections decided that

4  they were going to remove who they thought were all

5  the leader heads of the SNM or influential leaders of

6  the SNM.

7      Q.   And eventually he was brought back to New

8  Mexico?

9      A.   Yes.

10     Q.   And since he has been brought, in your

11 capacity with STIU, did you have conversations with

12 him?

13     A.   Yes, I did.

14     Q.   Okay.  And can you describe the nature of

15 the conversations that you had with him?

16     A.   When he first came back, I believe he was

17 transferred from the Penitentiary of New Mexico to

18 Southern New Mexico.  And because we have known that

19 he was a high ranking member within the SNM, it was

20 important that we, as an STIU unit, talk to him

21 first.  So I met him at intake when he came in, and I

22 introduced myself as an STIU officer.  And I had

23 known him from before.  And he just asked me where

24 his familia was placed at.

25          And at that time, all the SNM Gang members

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2802

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 157

 1    were placed in housing unit 1-A at Southern.  They

 2    had their own unit.  So I had advised him that he was

 3    going to be placed there.  I also advised him that he

 4    would be on an orientation, for a 7-day orientation;

 5    then after that, I would come in and talk to him

 6    again about coming out in congregate movement.

 7         Q.   Okay.  And when you say "la familia," what

 8    did you take that to mean?

 9         A.   The SNM family, his family, the SNM.

10    Because he had no relatives there.  So I've known him

11    for a long time; I know what he was referring to.

12         Q.   Did you continue to have conversations with

13    him when you were at the same unit, working STIU,

14    that he was being housed.

15         A.   Yeah.  On occasion, when there would -- if

16    there was an incident that happened or a situation

17    that might prove to be a security threat issue, I

18    would talk not only to him, but to other members of

19    the SNM in the units.  But, yes, I did have

20    conversations with him.

21         Q.   I'll be showing you Exhibit 23, which is a

22    photograph, Bates No. 3140.

23              MS. ARMIJO:  Your Honor, at this time, we'd

24    move for the Exhibit 23.

25              THE COURT:  Any objection to Government's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2803

```
1    Exhibit 23 coming in on the same conditions, just for
2    the purposes of this hearing, and not for not
3    purposes of trial?
4              All right.  Mr. Government's Exhibit 23
5    will be admitted into evidence.
6         Q.   Are you familiar with the picture that is
7    in Exhibit 23?
8         A.   Yes, I am.
9         Q.   And how so?
10        A.   I believe one of the STIU officers may have
11   confiscated it or found it in the mail.  And I think
12   it was confiscated from Mr. Baca's property.
13        Q.   Now, photographs in regard to the SNM, are
14   you familiar with group photographs?
15        A.   Yes, I am.
16        Q.   Okay.  Tell us about that.
17        A.   Well, generally, like when SNM was out in
18   general population, before they were separated from
19   the general population, usually when they would take
20   group photographs -- I don't think I ever seen a
21   group photograph of an individual that was not a
22   member of the SNM.  So, basically, what we would
23   allow them -- individuals in gangs to do is take
24   photographs.  That would give us a better idea of
25   identifying them, but specifically the SNM did not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2804

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2805

```
 1    really allow anyone to take a photograph in a group

 2    setting that was not SNM suspected or validated

 3    member.

 4        Q.   So unless you were in some way associated

 5    with the SNM, you were not allowed to be in group

 6    photographs?

 7        A.   I don't know if you weren't allowed.  I've

 8    just never seen it.  So I would imagine you weren't

 9    allowed.

10        Q.   Now, in this picture in particular, who is

11    in the middle?

12        A.   In the middle of the photo is marked

13    "Anthony Ray Baca."

14        Q.   And who is next to him, as you look on the

15    photograph, to the right?

16        A.   To the right is Javier Molina.

17        Q.   And is that the same Javier Molina that was

18    killed in 2014?

19        A.   Yes, it is.

20        Q.   And how about the person on the far end as

21    we're looking at in the picture, on the left?

22        A.   That would be identified as Daniel Sanchez.

23        Q.   Do you know approximately when this picture

24    was taken?

25        A.   I believe that was taken right before
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2805

```
 1    Anthony Ray Baca was sent back to PNM.  So that could
 2    have been in 2014; 2013, 2014.  So I don't think
 3    Daniel Sanchez was up there that long before Mr.
 4    Molina was murdered.  So it was approximately about
 5    right before Mr. Baca was sent back to the
 6    Penitentiary of New Mexico.
 7         Q.   So was there a point in time -- you
 8    indicated that you came down to Southern; is that
 9    correct?
10         A.   Yes.
11         Q.   And is that when you had the conversation
12    with him where he said, "Where is my familia?"
13         A.   That was the first time that he arrived at
14    Southern.  I think that was in 2009.
15         Q.   And then, at some point, did he leave
16    Southern?
17         A.   Yes.  We had -- he had left Southern,
18    because we had gotten information at the time, the
19    STIU unit that is, had gotten information at Southern
20    that there was a possible threat on his life.  And
21    the information had come at this time, I believe,
22    from the Penitentiary of New Mexico.
23              So we interviewed him; the coordinator and
24    myself had interviewed Mr. Baca, and advised him of
25    what was happening.  And that just err on the side of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 161

```
 1   caution, that he was going to be locked up.  But that

 2   was something that was coming from the administration

 3   at the time, that he was to be locked up.

 4        Q.   So when you say "locked up," was he moved

 5   somewhere else?

 6        A.   He was moved back to the Penitentiary of

 7   New Mexico, I believe, in a segregation unit.

 8        Q.   And then, at some point, did he make it

 9   back down to Southern?

10        A.   Yes, he did.

11        Q.   All right.  And then at some point, did he

12   go back up to the penitentiary?

13        A.   Yes.  I believe the second time that he

14   went up was right after this photograph was taken.

15             MS. ARMIJO:  At this time, I'd move for the

16   admission of Government's Exhibit 24, which is a

17   letter Bates stamped 4476.

18             THE COURT:  Any objection to Government's

19   Exhibit 24?

20             MS. DUNCAN:  On behalf of Mr. Baca, Your

21   Honor, we have no objection for the purposes of this

22   hearing only.

23             MS. ARMIJO:  It is a letter that is

24   authored by Mr. Baca.

25             THE COURT:  All right.  Any other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2807

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 162808

1    objections or comments?  Government's Exhibit 24 will

2    be admitted into evidence.

3              Mr. Adams?

4              MR. ADAMS:  No objection.  Just curious

5    about the Bates number.

6              MS. ARMIJO:  I'm sorry.  I said it earlier.

7    4476.

8              MR. ADAMS:  Okay.

9    BY MS. ARMIJO:

10        Q.   All right.  Are you familiar with Exhibit

11   24?

12        A.   Yes, I've seen it before.

13        Q.   Okay.  Where was the first time that you

14   saw the original version of this?

15        A.   The first time I saw the original version,

16   Mr. Baca showed it to me.

17        Q.   And where was that at?

18        A.   I believe it was at the Penitentiary of New

19   Mexico's North facility.

20        Q.   And there is a date on it of 2/7/2014.

21   Would that be approximately when you saw it?

22        A.   Yes, that would be about the right time.

23        Q.   And did Mr. Baca tell you what the

24   intention of this letter was?

25        A.   Well, Mr. Baca felt that he was being

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2808

1   segregated unfairly with -- he didn't believe that

2   any of the things people were saying against him were

3   true or were credible.  And so I believe this whole

4   thing was in frustration of him being locked down.

5   That's what I remember him conveying in a sense.  And

6   that he was writing this letter to the

7   administration.

8        Q.   Okay.  And who was Jay Roarke?

9        A.   Jay Roarke was -- I believe he was the

10  Director of Prisons at the time.

11       Q.   And in the beginning it says, "Greetings,

12  in reference to the interview conducted on 2/6/2014,

13  I'd like to inform you that I carefully thought over

14  our discussion, and not only do I agree with your

15  concerns, but I assure you that I will, upon my

16  release from Level 6 confinement" -- and then he

17  gives a series of -- I believe there are four

18  different things that he lists.  And so what did he

19  tell you that the purpose of this was?

20       A.   I believe he was trying to make a deal with

21  the administration; if they allowed him to go back

22  into population segregation with the SNM units, that

23  he would make sure that that these agreements were --

24  that they were followed, or that he would make sure

25  that this was the agreement.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 164810

1      Q.   Okay.  And is that -- for instance, number

2   2 says, "Call a ceasefire between SNM members and all

3   other STG gang members currently housed at SNM CF

4   Level 4"?

5      A.   Correct.

6      Q.   Now, going to number 4, it says, "Prevent

7   SNM members from targeting any and all suspected

8   validated SNM members who have or wish to subject

9   themselves to the RPP program."  Did you, in

10   particular, have a conversation with him about that

11   offer that he was making to Mr. Roarke?

12      A.   Yeah.  I think I just made -- I advised him

13   of a correction on it.  That was it.  And I think he

14   had put RIP.  And I said, "That might look bad."  So

15   it was actually called RPP.  So I just corrected him

16   on what it was called; RPP, not RIP.

17      Q.   And what is the RPP Program?

18      A.   It's the Restoration Into Population

19   Program, which gang members that denounce or do no

20   longer want to be part of the gang can go into this

21   program.

22      Q.   Now, was Mr. Baca sending this to the

23   administration as the leader of the SNM?

24          MS. DUNCAN:   Objection, Your Honor; that

25   calls for speculation.

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2810

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2811

```
 1              THE COURT:  Well, we better hear what his
 2    opinions are.  I'm going to let you all get into
 3    where he's getting these opinions, but we better get
 4    them out on the table.  Overruled.
 5         A.   Yeah, it was widely known; it wasn't like a
 6    secret or anything like that.  It was widely known
 7    that he was, through interviews and self-admission,
 8    that he was the head of the SNM.  And, of course,
 9    he's not going to write all these things unless he is
10    in charge of the SNM.  So, in my opinion, yes, he was
11    writing it as the leader of the SNM.
12         Q.   And you actually discussed this letter with
13    him before he sent it to Mr. Roarke?
14         A.   I read it.
15         Q.   That's what I should say.  You didn't
16    discuss it with him.  But did he show you the letter
17    before he sent it to Mr. Roarke?
18         A.   Yes.
19         Q.   And was it contemporaneous when he was
20    writing the letter that you saw it?
21         A.   Yes.
22         Q.   Now, going back to Exhibit 23, you see Mr.
23    Baca in the middle, right next to Javier Molina, who
24    is later killed?
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2811

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2812

```
 1        Q.   And what's your opinion of the fact that --
 2   or I should say, do you find it unusual that Mr.
 3   Molina is actually even holding hands with Mr. Baca,
 4   it appears, just within a close time to his death, a
 5   close time even being a year or two, whenever this
 6   photograph was taken?
 7        A.   Well, if individuals believe that a guy is
 8   a rat in the unit, that doesn't mean he's a rat.  If
 9   they didn't have any paperwork at the time that this
10   photograph was taken, then there wouldn't be nothing
11   to -- there would be no argument as to -- they would
12   have to have what you would call "in black and white"
13   in order to move on him.  So my professional opinion
14   is that they didn't have the letter at the time this
15   photograph was taken.  So he was a brother or a
16   carnal at the time, in good standing.
17        Q.   Okay.  Even if somebody -- let's say they
18   suspected him or wanted him to be killed, would that
19   not have happened unless there was paperwork?  Does
20   that make sense?
21        A.   Yeah.  Let's say, for example, that there
22   is some individuals -- if you don't have the
23   paperwork, and there is some individuals saying:
24   This guy is a rat, this guy is no good, I know.  And
25   other individuals are saying, No, you can't do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2812

```
 1    something.  That's not the way we do -- that's not
 2    the way we do things.  That's not the way we do
 3    business.  We have to have it in black and white.
 4    And people that are highly influenced will have to
 5    say, yes, I believe that this is true after they see
 6    the paperwork, and that would be carried out then.
 7              But until then, you know, to be fair to
 8    Molina, you know, they didn't have no paperwork at
 9    the time stating that he was a rat.
10         Q.   So there could have been people that -- let
11    me ask it this way:  Could there have been people
12    that suspected him of being a rat, who wanted him
13    dead?
14         A.   Yes.
15         Q.   Prior to this?
16         A.   Yes.
17         Q.   But what is the trigger that actually gets
18    the green light carried out?
19         A.   Well, there has to be paperwork.  And then
20    the influential leaders or the key holders or leaders
21    would have to make that decision.
22         Q.   Now, are you -- we talked about that.  Oh,
23    just how many different ways have you seen
24    "Syndicato" spelled?
25         A.   I've seen it spelled with S-I-N and S-Y-N.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I've seen it spelled both ways.

2              MS. ARMIJO:  And if I could just have a

3    moment, Your Honor?

4              THE COURT:  You may.

5         Q.   I believe you've stated this.  Just so that

6    we're clear, what's your opinion on SNM as far as

7    whether or not they are a prison gang?

8         A.   They've been a prison gang for over 30

9    years.

10        Q.   And how many members did they have when

11   they had the most members?

12        A.   Probably about 500.

13        Q.   Has that number gone down?

14        A.   Yes.

15             MS. ARMIJO:  If I may just have a moment.

16             THE COURT:  You may.

17        Q.   Now, the opinions that you've given about

18   SNM, I believe earlier you said that you've talked to

19   thousands of inmates in the course of your 14 years;

20   is that right?

21        A.   Seventeen.

22        Q.   Seventeen, see I'm bad at math, too.

23   Seventeen years with New Mexico Corrections.

24             In reference to the SNM, during the course

25   of time, how many times do you think that you've had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 162815

1    an opportunity to talk to SNM Gang members?

2         A.    Multiple times.   There has been a lot of

3    times; I've talked to a lot of SNM Gang members.

4    More particular on the individuals that -- when we

5    started the Restoration Into Population Program, I

6    was one of the individuals that started that program.

7    So my whole focus within the gang unit was to try to

8    talk as many gang members out of being gang members

9    as possible.   That was my whole goal.   And if I could

10   get as many SNM members to get involved in that, I

11   would.

12        So we've had over 250 inmates go through

13   that program.   And a large population on mostly SNM

14   Gang members.   And I debriefed most of those

15   individuals.   And I've been able to get a lot of

16   information that corroborates itself as far as gang

17   structure, codes, the inner workings of the SNM.

18   I've also spoken to individuals that are on the

19   streets that were ex-gang members that no longer are;

20   don't see themselves -- have never been to a

21   restoration program, but no longer see themselves as

22   part of SNM, and been able to get a historical

23   breakdown of the SNM as well.

24        Q.    What about in addition to those people,

25   either cooperators or people who dropped out, and you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2815

1    indicated that there has been over 250, the majority

2    of those are SNM, so is it fair to say of that

3    category of people, that you've spoken to probably

4    over 200?

5         A.   Yes.

6         Q.   Now, in addition to that, have you also had

7    the opportunity when people are coming down for

8    orientation, like you spoke earlier about, with Mr.

9    Baca when he came down to Southern?

10        A.   When I was at Southern, primarily, I would

11   be the one that talked to them when they were going

12   to orientation, as far as SNM members.

13        Q.   Did you talk to, like, Mr. Sanchez when he

14   came through?

15        A.   I was no longer at Southern when Mr.

16   Sanchez arrived.  I was at PNM, but I did interview

17   Mr. Sanchez before he went to Southern.

18        Q.   All right.  And so in addition to the

19   orientation, you talk to people just in the regular

20   course of business as far as being in STIU; is that

21   fair to say?

22        A.   Yes.  One of the things we do is, when they

23   leave the Level 6 system to go to a Level 5 or a

24   Level 4, STIU is required to speak with them.  And at

25   that point I did speak to Mr. Daniel Sanchez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2816

```
 1        Q.   And so is it fair to say that you've
 2   probably -- or how many -- is it over -- we already
 3   counted one group is over 250.  Is it in the
 4   hundreds, then, of SNM Gang members that you've
 5   spoken to?
 6        A.   Yes.  Usually, if they were leaving the
 7   Penitentiary of New Mexico and going to Southern, I
 8   would have to speak with them, and then make a
 9   recommendation to the unit managers or to the
10   administration on whether they should be moved or
11   not.
12        Q.   Do you know if SNM has a particular means
13   or methods for murdering inmates?
14        A.   The method that I've seen used is
15   strangulation, the most.
16        Q.   Have there been other ways, such as
17   stabbing?
18        A.   Stabbings, yes.
19        Q.   So now I believe you've talked about
20   structure and codes of conduct.  All the things that
21   you've testified about, the method of communication,
22   the operations, and the rival gang and the group
23   photographs, all those things, are these opinions of
24   yours -- and we spoke specifically about SNM -- do
25   those things apply, in general, to prison gangs?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2817

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172

```
 1        A.    Most of them yes, apply.

 2              MS. JACKS:  Objection, compound.

 3              THE COURT:  Overruled.

 4        A.    I would say that the majority of prison

 5   gangs have basically the same type of subculture.

 6   The prison gangs, the STGs will operate a little bit

 7   different because they have more structure and more

 8   rules.

 9        Q.    All right.  So in other words, the STGs,

10   being SNM, is a little more structured than some of

11   the others that have not made it to the level of STG?

12        A.    Right.  The disruptive groups like

13   Burquenos or the Cruces Boys, they're not as

14   structured or organized with the hierarchy like the

15   SNM.  So I guess, in that sense, that would be the

16   difference.

17        Q.    And I believe you also spoke a difference

18   earlier about the SNM versus the Mexican Mafia, for

19   instance?

20        A.    Right.

21        Q.    Now, these opinions of yours, are they

22   based on your personal observations?

23        A.    No, I've gone through training with the

24   Bernalillo County Sheriff's Office.  I'm a member of

25   the New Mexico Gang Task Force.  I've been -- I've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2818

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173

```
 1   talked and been instructed by Al Valdez, who is a
 2   leading gang expert in the State of California, who
 3   is also a Ph.D. at Cal-Irving (sic); he's written
 4   over 13 books and he's one of my mentors.  And
 5   anytime that I've inquired about gang activity or
 6   gang organizations, he's always freely given me
 7   advice, or sent me books to read, which I've read
 8   four of his books.
 9        Q.   I guess my question was poorly worded.  In
10   addition to learning about gangs and how prison gangs
11   work and various prison gangs, in applying it to the
12   SNM, based on your years of being in Corrections, did
13   you personally see things like the tattoos and the
14   conversations, and the conversations and all those
15   things, does that help with your -- the basis for
16   your opinion as to SNM?
17        A.   Yes, it does.
18        Q.   And what about, like, recorded phone calls?
19   Have you had opportunity to listen to those?
20        A.   Yes, I have.
21        Q.   And do you base your opinion on recorded
22   phone calls that you've listened to in reference to
23   SNM Gang activity?
24        A.   I do.  And my training within the different
25   gangs, and knowing the SNM as long as I have.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2819

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 74820

```
 1        Q.    And intercepted notes?

 2        A.    Yes.

 3        Q.    And, for instance, I'm just going to grab

 4   this again.  Exhibit 18; for instance, I'm going to

 5   go to Bates 11316, which is in Exhibit 18, you talk

 6   about intercepted notes.  Have you ever seen this

 7   before?

 8        A.    Yes, I have.

 9        Q.    What is it that we're looking at?

10        A.    It is a --

11        Q.    And if you can't see it, I can bring it to

12   you.

13        A.    I believe it's a writing on the Aztec

14   culture, and how -- oh, I'm sorry, now I know what

15   you're -- it's a breakdown of different counties

16   within New Mexico, but they're writing it in the

17   Aztec lettering.  And so it looks like it's the start

18   of a plan of a breakdown of counties.

19        Q.    All right.  Are you aware that that was

20   found in Anthony Baca's cell?

21        A.    Yes, I am.

22        Q.    Now, I didn't do this earlier, but does

23   this Exhibit 18 have the breakdown, like, for

24   instance, on Bates stamp 11314, it says, "Category D,

25   documents, 5 points."  Is that how this file is kind
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    of broken down, where you would have the different

 2    categories under its own --

 3         A.    Right.

 4         Q.    Documents under each of the categories?

 5         A.    Correct.

 6         Q.    And then, for instance, just as an example

 7    with this one, 1134 then has memos and documents that

 8    were found, including what we were just talking

 9    about, which is 11316; correct?

10         A.    Correct.

11              MS. ARMIJO:  Thank you.  Your Honor, I pass

12    the witness.

13              THE COURT:  All right.  Thank you,

14    Ms. Armijo.

15              All right, let me see.  Who wants to start?

16    Do you want Mr. Castle to start, Ms. Duncan?

17              MS. DUNCAN:  That's fine.

18              THE COURT:  All right.  Mr. Castle.

19                        EXAMINATION

20    BY MR. CASTLE:

21         Q.    Agent Martin, do you know an individual by

22    the name of Dwayne Santistevan?

23         A.    Yes, I do.

24         Q.    And who is he?

25         A.    He's a former STIU administrator.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2821

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 176822

 1        Q.   He's no longer employed by the Department

 2   of Corrections?

 3        A.   No.

 4        Q.   How about Gregory Marcantel?

 5        A.   Yes, I do.  He's a former Secretary of

 6   Corrections.

 7        Q.   Did you ever serve under them?

 8        A.   Yes, I did.

 9        Q.   And how long did you serve under them?

10        A.   Under Dwayne Santistevan, I believe I

11   served about nine years under him, and Gregg

12   Marcantel, during his time as Secretary of

13   Corrections.

14        Q.   And to your knowledge, are they both named

15   victims in the indictment that's before this Court?

16        A.   Yes.

17        Q.   Agent, what do you believe you are an

18   expert in?

19        A.   Gang culture and subculture of gangs.

20        Q.   Does that include street gangs?

21        A.   Sure.

22        Q.   And all across the country?

23        A.   I've studied primarily prison gangs around

24   the country, yes.

25        Q.   So are you holding yourself out as an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2822

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 72823

1  expert generally in all kinds of gangs within the

2  United States?

3      A.   Primarily within the prison system of New

4  Mexico.

5      Q.   Are you confining your expertise to prison

6  gangs within the State of New Mexico?

7      A.   Yes.

8      Q.   And how long have you been an expert in

9  this area, or at least you have felt that you've been

10 an expert in this area?

11     A.   Well, I grew up in a gang-infested

12 neighborhood, so I've been around gang members all my

13 life.

14     Q.   Let me stop you there, let me stop you

15 there.  So what you're saying is, at least as far as

16 that part, that a person from a gang, the actual

17 gang, would be able to essentially talk about all the

18 kinds of details about a gang that you've discussed

19 today?

20     A.   I don't know.

21     Q.   Well, we'll just depart for a second and

22 I'll get back to the original question.

23     A.   Okay.

24     Q.   The tattoos you were talking about, right?

25     A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2823

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2824

```
 1        Q.   How did you learn that those are tattoos
 2   that are used by the SNM Gang?
 3        A.   When I first started at Corrections, the
 4   veteran officers explained to me what the SNM tattoos
 5   meant, who the SNM members were.  And so they kind of
 6   gave me a breakdown as part of becoming an officer
 7   and learning who was who within the prison system.
 8        Q.   How did they find out what the tattoos
 9   meant?
10        A.   I'm sure from time working there.  They
11   were also told, maybe some of the gang members told
12   them.
13        Q.   Okay.  So gang members would know what the
14   tattoos meant?
15        A.   Correct.
16        Q.   Symbolism that you were talking about in
17   letters and things like that, I guess code words and
18   things like that, that the SNM Gang uses, do you
19   recall testifying about that?
20        A.   Symbolism in letters.
21        Q.   Yes.  Terms they used?
22        A.   Different terms that they use.
23        Q.   Yes.
24        A.   Yes.
25        Q.   Where did you learn about that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2824

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

1    A.   This was information we received from other

2    inmates that were SNM Gang members.

3    Q.   Okay.   So an SNM Gang member could come

4    into court and tell us all what those symbols mean?

5    A.   Well, I learned it from multiple gang

6    members.

7    Q.   So you might have to call -- multiple

8    members might be able to discuss it?

9    A.   I'm just telling you that's where I learned

10   it.

11   Q.   Going back to the expertise.   So within --

12   how long do you believe that you -- well, when did

13   you become, in your mind, an expert in the prison

14   gangs in New Mexico?

15   A.   Probably after conducting a certification

16   on the California Surenos, getting them certified as

17   a Security Threat Group.   And I pretty much have

18   known about gangs for a long time, and I've always

19   went to conferences or classes on gang

20   identification, gang subculture, street terrorism,

21   street gangs.

22   Q.   When did you become certified in

23   California?

24   A.   I'm sorry?

25   Q.   When did you get that certification on the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2826

```
 1   California Surenos?

 2        A.    2014.

 3        Q.    2014, okay.  So would you have been an

 4   expert in gangs in 2001?

 5        A.    2001?

 6        Q.    Right.

 7        A.    I wouldn't call myself a gang expert in

 8   2001.

 9        Q.    The defendants in this courtroom, can you

10   identify which individuals you have personally

11   interviewed?

12        A.    I have interviewed -- I believe I've

13   interviewed the majority of them.  Perhaps Joe

14   Gallegos, I've never interviewed, or his brother.

15        Q.    Did you interview Billy Garcia?

16        A.    I interviewed Billy Garcia.

17        Q.    When?

18        A.    When he was at the Penitentiary of New

19   Mexico, Level 6 system.  At that time we had -- I

20   believe Billy was in a segregation unit for

21   protective custody issues.

22        Q.    When was that, though?

23        A.    It might have been 2012, 2013.  I'm not

24   exactly sure when.

25        Q.    And did you do a written statement for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2826

```
 1   Mr. Garcia?

 2        A.   Did I get a written statement from him?

 3        Q.   Did you produce a written statement?

 4        A.   I'm sure I did.

 5        Q.   Do you recall what he said to you?

 6        A.   Not much.

 7        Q.   He didn't want to talk to you?

 8        A.   Pretty much he didn't want to talk.

 9        Q.   So he wouldn't have -- you wouldn't have

10   interviewed him about his gang membership and things

11   of that nature?

12        A.   Well, that was the premises on the

13   interview was to find out why he was in bad standing

14   within the SNM, or perceived to be in bad standing

15   with the SNM.  And he offered no comment to that.

16        Q.   So no admissions?

17        A.   No admissions.

18        Q.   What materials did you review in

19   preparation to offer expert testimony in this case?

20        A.   Eleven years of serving within the New

21   Mexico Gang Unit.

22        Q.   Well, okay, what materials, paper,

23   documents, or audiotapes, or media of any kind did

24   you review to prepare to give expert opinions in this

25   case?
```

SANTA FE OFFICE                                                         MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2827

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2828

```
 1        A.   None.
 2        Q.   What expert opinions precisely are you
 3   giving?  Let me kind of explain to you.  Agent
 4   Martin, you've talked today a little bit about things
 5   you've experienced personally and observed
 6   personally, right?
 7        A.   Um-hum.
 8        Q.   You've talked about things you've read
 9   about, such as four books by your mentor?
10        A.   On the Mexican Mafia, yes.
11        Q.   And other officers' reports and things like
12   that; you've reviewed a lot of things, right?
13        A.   Correct.
14        Q.   So what I want to try to figure out is what
15   areas are you -- do you have an opinion about that
16   relate to this case and expert opinion about?
17        A.   Well, I give law enforcement classes on
18   gangs and the subculture of gangs.
19        Q.   Are you going to give an opinion about the
20   guilt of anybody in this courtroom?
21        A.   No.
22        Q.   Are you going to give an opinion about
23   whether any of these individuals participated in any
24   of the crimes or any aspect of the crimes?
25        A.   Am I going to give an opinion if they've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2828

1    participated in crimes?

2         Q.   Yes.  The crimes that they're charged with.

3         A.   Not that I'm aware of.

4         Q.   Are you going to be giving an expert

5    opinion that these individuals are all members of the

6    SNM?

7         A.   If you're asking my opinion if they're all

8    members of the SNM?

9         Q.   I'm not asking if you're going to be

10   offering an expert opinion.  Are you going to be

11   offering an expert opinion about their membership?

12        A.   If I'm asked if an individual is a member

13   of the SNM, yes, I'll give that opinion.

14        Q.   And that will be sometimes based on

15   personal interviews, right?

16        A.   We have --

17        Q.   Will it sometimes be based upon a personal

18   interview of the individual?

19        A.   It will be based on documentation, if they

20   say they're validated or not or if they're a member

21   of that group.

22        Q.   So documents that someone else may have put

23   in their file?

24        A.   Documents that I have access to, like, for

25   example, the Criminal Management Information System,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2829

1   which would indicate whether they're a gang member or

2   not.

3       Q.   And who would put the information into that

4   system?

5       A.   Whoever is interviewing them.

6       Q.   Would it be someone that was conducting an

7   investigatory interview of that individual?

8       A.   I've entered individuals into the system

9   that have admitted to me that they're gang members,

10  yes, and then started.

11      Q.   If we're looking at a printout of that

12  system, are we going to whatever the screen shot?  I

13  take it it's a computerized program?

14      A.   Are you going to look at it?

15      Q.   Let's back up.  Is that a computerized

16  program you're talking about?

17      A.   Yes.

18      Q.   And can you look at it on the screen and

19  determine if someone is a gang member?

20      A.   Yes, it's part of my job, yes.

21      Q.   And when you look at that screen, there is

22  data that populates the screen; is that correct?

23      A.   Correct.

24      Q.   And when you look at that data, does it

25  indicate who input it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2830

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185831

```
 1         A.    Yes.

 2         Q.    So each item that's inputted has the

 3    individual who put it in?

 4         A.    Correct.

 5         Q.    Now, did you review any particular

 6    materials -- as opposed to your life experiences --

 7    any particular materials to prepare to be an expert

 8    in this case?

 9         A.    Just my experience within the gang unit and

10    all the training that I've had.

11         Q.    So you weren't shown, for example, STIU

12    packets on the defendants that are here today?

13         A.    No.

14         Q.    Specifically with regard to Mr. Garcia,

15    Billy Garcia?

16         A.    No.

17         Q.    Have you personally observed him involved

18    in gang activities?

19         A.    No.

20         Q.    Have you personally overheard him say he

21    was a member of the SNM Gang?

22         A.    No.

23         Q.    Were you in Southern New Mexico

24    Correctional Facility in 2001?

25         A.    No, I was not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2831

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 186 2832

```
 1         Q.   How about the Penitentiary of New Mexico?

 2         A.   No.

 3         Q.   How about in 2000, for those facilities?

 4         A.   No.

 5         Q.   Now, I notice on your resume that you

 6    indicated that you are currently, and have been since

 7    2015, a member of an FBI Task Force; is that correct?

 8         A.   That's correct.

 9         Q.   And what task force is that?

10         A.   The task force was an investigation into

11    the California Surenos.

12         Q.   Tell me about this FBI Task Force, if you

13    could.  Are they just FBI people or a group of

14    agencies that are represented?

15         A.   I believe there are different agencies.  In

16    particular, we were working with the FBI, the

17    Corrections Department.  The STIU was working with

18    FBI on the California Surenos at the time.

19         Q.   In the time that you've been working for

20    New Mexico Department of Corrections, has there been

21    an ongoing relationship between New Mexico

22    Corrections and the FBI?

23         A.   I'm sure there has.

24         Q.   I think you said earlier that, in 1998, is

25    when the Security Threat Intelligence Unit was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2832

```
 1   formed; is that right?
 2        A.   Yes.  It was a pilot program at the time.
 3        Q.   And when did it go from being a pilot
 4   program to -- I guess -- what did it become after it
 5   was a pilot program?
 6        A.   An official unit.
 7        Q.   When did it become an official unit?
 8        A.   I believe that was in 1999 to 2000.
 9        Q.   Now, you had indicated on your resume that
10   you obtained a certification in the Surenos; is that
11   right?
12        A.   Yes.  What I did was a two-year
13   investigation into -- the California Surenos at the
14   time were a disruptive prison group.  And at the time
15   we had enough evidence to certify them as a Security
16   Threat Group.  So it took about two years into that
17   investigation.
18        Q.   So were the Surenos certified, or did you
19   obtain a certification, or both?
20        A.   Once we conduct our investigation, all the
21   paperwork is turned in to the STIU administrator, all
22   the way up to the Director of Prisons, to the
23   Secretary of Corrections.  And if they agree that we
24   have all the evidence necessary to certify them, then
25   the Secretary of Corrections signs off on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2834

```
 1   certification.
 2        Q.   So when you put down two years
 3   certification of the Surenos, you mean --
 4        A.   It's an investigation.
 5        Q.   It's hard for them to take down when we're
 6   both talking.  The certification of the Surenos, not
 7   your certification; is that right?
 8        A.   Yes.  It was a certification into the gang,
 9   the prison gang, California Surenos.
10        Q.   Is there any process by which a gang -- a
11   person who wants to be a gang expert can get
12   certified or, you know, get a degree or something
13   like that?
14        A.   I believe that you have to be able to give
15   gang presentations to law enforcement entities, which
16   I've done.  I have also given them to the FBI.  I
17   also give them to Homeland Security.  Also to law
18   enforcement academies.  Also to our own academy.  So
19   under that criteria, I think.
20        Q.   But would I be correct in saying that there
21   is no degree that you have to obtain to become a gang
22   expert; is that --
23        A.   Well, if there is, nobody has given me one
24   yet.
25        Q.   Is there a certification process by which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2834

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2835

```
 1    an entity or a body of your peers certify or accept
 2    you as a gang expert or something of that nature?
 3         A.   Well, I've given gang presentations,
 4    probably about eight or nine presentations.  During
 5    this time, I've never had anybody rebut or say that
 6    any of the things that I'm saying is incorrect.
 7         Q.   How many times have you testified?
 8         A.   Twice.
 9         Q.   And twice prior to today?
10         A.   I testified one other time in the Sureno
11    case.  And I've testified on an SNM case once.
12         Q.   And those cases, I take it those are
13    criminal cases?
14         A.   The Sureno case was a case that was filed
15    in Federal Court.  I believe it was in the RLUIPA.
16    And the --
17              MR. DAVIS:  I'm sorry, Judge.  I didn't
18    hear that answer.
19         A.   I believe it was a religious right, where
20    they filed a habeas on a religious right.
21         Q.   Was that here in New Mexico?
22         A.   Yes.
23         Q.   It was a civil suit; is that --
24         A.   I believe, yes.  It might have been a civil
25    suit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2835

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2836

```
 1        Q.   And then what was the other case?

 2        A.   The other case was an SNM member that had

 3   filed a habeas to return back to the SNM unit, which

 4   he claimed he was in good standing.  But we have

 5   evidence to oppose that.

 6        Q.   And was that individual representing

 7   himself?

 8        A.   No, he had counsel.

 9        Q.   During those two proceedings no one from

10   either of those cases contested your qualifications

11   as an expert?

12        A.   No.

13        Q.   I guess what I'm trying to get at, is there

14   an organization like, I don't know, the American

15   Association of Gang Experts, or something like that,

16   that will look through someone's qualifications and

17   say:  You have reached the level that you are now an

18   expert?  And the reason I'm asking you that, kind of

19   like a doctor gets a Ph.D., is there something that

20   you have to do to become a prison gang expert?

21        A.   I'm a member of the New Mexico Gang Task

22   Force.

23        Q.   So are all people that are members of that

24   gang experts?

25        A.   I don't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2836

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2837

```
 1        Q.    What are the requirements to become a
 2   member of that group?  Can I be one?  Can I go in
 3   there?
 4        A.    I don't know.
 5        Q.    So you don't know what the requirements are
 6   to join that?
 7        A.    I don't.  Give gang presentations, I guess.
 8        Q.    Is there any database of gang information
 9   that we could access, that we'd be allowed to access,
10   defense lawyers, where we could verify the accuracy
11   of the information that you're giving an expert
12   opinion about?
13        A.    I don't know.
14        Q.    Well, for example, let's take a look at --
15   let's take the tattoos.  Is there a book of tattoos
16   or something like that, or a document that lists:
17   Here are all the tattoos, that is what they mean,
18   this is what gang they're members of they represent?
19        A.    Yeah.  I'm sure if you go into the search
20   engine on your computer you could find all that stuff
21   out.  On the internet, for example, different prisons
22   will put or different law enforcement entities will
23   put prison gangs, their tattoos, their symbolism,
24   what they represent, who their enemies are, and
25   different things like that.  So, yeah, sure you
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2838

 1    could.

 2          Q.   Are these peer-reviewed materials?

 3          A.   Peer-reviewed?

 4          Q.   Peer-reviewed.

 5          A.   They're open to the general public.  You

 6    can look them up on the internet.

 7          Q.   So, to your knowledge, the only review is

 8    how many, perhaps, times it's been visited on the

 9    internet?

10          A.   Well, the credibility would be who put them

11    on there.

12          Q.   You talked today a little bit about your

13    interviews of a lot of different gang members that

14    are inmates at the New Mexico Corrections; is that

15    right?

16          A.   Correct.

17          Q.   When you do that interview, those

18    interviews, did you identify yourself as a

19    corrections official?

20          A.   I have a shirt on that would say "STIU."

21    It's pretty widely known that I'm an STIU officer.

22          Q.   When inmates are given orientation, are

23    they told what an STIU officer is?

24          A.   I introduce myself.

25          Q.   Okay.  And so do the inmates basically know

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2838

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2839

1    that you guys are all law enforcement officers, all

2    the STIU people?

3         A.   They know we're part of the gang unit, yes.

4         Q.   And that you have the ability, as a member

5    of the gang unit, to change their classification, if

6    it's deemed necessary?

7         A.   We can't change their classification.

8         Q.   Or provide input that might change their

9    classification?

10        A.   Some are; maybe some aren't, depending on

11   what the conversation is about, depending on what the

12   interview is.

13        Q.   Well, let me put it in more common terms.

14   Did inmates consider STIU officers the cops?

15        A.   They consider us the gang unit.

16        Q.   Okay.  Are you considered law enforcement?

17        A.   I don't know.  I suppose.

18        Q.   Now, you've talked to how many SNM members

19   over the years -- different, not the same ones -- but

20   how many different SNM members over the years?

21        A.   I couldn't really put a number on that.

22   But it's been plenty, plenty.

23        Q.   Over 100?

24        A.   Yes.

25        Q.   So would you go out on a limb to say a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 194

 1    motto of "no snitching" doesn't really work with the
 2    SNM?
 3         A.   If you were to put a snitch in the pod with
 4    the regular SNM members, I think that motto would
 5    work.
 6         Q.   Well, it sounds like a lot of SNM members
 7    talk to you about the SNM, their activities, and what
 8    other SNM members do.  Is that fair to say?
 9         A.   In confidence, yes.
10         Q.   So is snitching only considered telling on
11    somebody in front of them, or is it also considered
12    when you're telling on someone in confidence?
13         A.   Correct.
14         Q.   Both ways, right?
15         A.   I would imagine it's both ways.  But the
16    way it works in prison is, if an individual is found
17    out to have given information about the gang, he's
18    considered a snitch.
19         Q.   When these individuals would talk to you,
20    the members of the SNM, and they'd talk to you, would
21    you tell them that you'd keep it in confidence?
22         A.   Of course.
23         Q.   Would you tell them why you wanted this
24    information?
25         A.   It's up to them.  If they want to tell me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2840

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2841

1    in confidence, and they'll be forthright about

2    whether they want to tell me something in confidence

3    or not.

4         Q.   How do you start these interviews, just

5    generically?

6         A.   Depending on what the conversation is

7    about.  If it's about a fight, we'll discuss the

8    fight.  We'll discuss the individuals that got in a

9    fight.  We'll discuss how -- what the mood of the pod

10   is.  We'll discuss if there are other individuals

11   that are in harm, or why the fight occurred.  It all

12   depends.  There is a lot of variables to what the

13   interview would be about.

14        Q.   Would some of these individuals be

15   interviewed particularly by you, because they'd

16   asked, for example, to be removed from general

17   population?

18        A.   If someone has requested to speak with me

19   on the topic of being removed for their own

20   protection, yeah, it would be in confidence, of

21   course, also.

22        Q.   Would sometimes these SNM Gang members come

23   to tell you things to perhaps get a rival in trouble?

24        A.   That's not really how they work.

25        Q.   They never tell on each other to get each

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 196

1    other in trouble?

2        A.    There is a different type of honor system

3    that works within the prison gangs.  And so I'm not

4    saying it wouldn't happen.  But I don't see that as

5    something that would be something that they would

6    normally do to try to get a rival in trouble.

7        Q.    Well, when these confidential sources have

8    come in and talked to you, do they always share with

9    you their purpose in coming to talk to you?

10       A.    Well, yes.

11       Q.    And you always believe everything they say?

12       A.    Well, I'd be an idiot if I did that.

13       Q.    So would it be fair to say it's very

14   difficult to determine what the reasoning or the

15   purpose is when one SNM member informs on another?

16       A.    If I get what you're asking me correctly,

17   is if somebody comes in confidence and says something

18   about another individual, am I going to corroborate

19   that information, to make sure that what he's saying

20   is the truth, or to ascertain what his motive is for

21   telling me that information, of course, I'm not going

22   to put anybody's life in jeopardy because somebody is

23   telling me something that may not be true.

24            MR. CASTLE:  Is there a way to connect my

25   laptop?  Judge, I apologize, but the printer was not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    working downstairs.
 2              THE COURT:  Mr. Martin is asking to use the
 3    restroom.  Let's take a little bit early break.  Does
 4    that work for you?
 5              MR. CASTLE:  That works for me, Your Honor.
 6              THE COURT:  All right.  So we'll be in
 7    recess for about 15 minutes.
 8              MR. CASTLE:  All right.
 9              (The Court stood in recess.)
10              THE COURT:  All right.  We'll go back on
11    the record.  Mr. Martin, I remind you you're still
12    under oath.
13              THE WITNESS:  Yes, sir.
14              THE COURT:  Mr. Castle, if you wish to
15    continue your cross-examination of Mr. Martin, you
16    may do so at this time.
17              MR. CASTLE:  Thank you.
18        Q.    Exhibit 18, I think you've indicated is an
19    STIU packet for Mr. Baca; is that right?
20        A.    That's correct.
21        Q.    And there would be a similar kind of packet
22    for everyone that's a defendant in this case?
23        A.    Everyone that's gang affiliated, yes.
24        Q.    I'm looking at page 1.  Are you able to
25    tell from that document who entered the data on page
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2843

```
 1    1?

 2         A.    No.

 3         Q.    I want to turn to page -- the third page of

 4    that exhibit, which doesn't have a number on it --

 5    but is this a checklist of criteria that is used by

 6    the Department of Corrections to determine whether

 7    someone is a gang member?

 8         A.    Yes.

 9         Q.    When was that set of criteria developed?

10         A.    I really don't know.

11         Q.    When is that sheet -- when was that put

12    into Mr. Baca's file?

13         A.    I believe when he returned back from the

14    Nevada Department of Corrections.

15         Q.    So would this date here, May 13, 2011, be

16    the date that it was produced?

17         A.    I believe that's probably when someone

18    reviewed it.

19         Q.    And it contains certain areas that have

20    been checked off; is that right?

21         A.    Correct.

22         Q.    When I look at this document, there is --

23    there are certain areas.  User:  What does "user"

24    mean?

25         A.    That would indicate that the user is the
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2844

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 199

```
 1   one that put the information in.
 2        Q.   And is this an ongoing database that
 3   continues to be updated through time?
 4        A.   Yeah.  Let me just clarify.  When Anthony
 5   Ray Baca left to Nevada, this document wasn't in use
 6   at the time.  So when he came back, that's when --
 7   that's why it was entered like this in 2008.
 8        Q.   Now, I want to show you a packet which we
 9   received in the discovery, and was represented as
10   Mr. Billy Garcia's STIU packet.  Okay?
11        A.   Okay.
12        Q.   Sorry I couldn't print it out, the printer.
13        Okay.  I believe the Government will
14   stipulate to this as the packet that was provided to
15   us in discovery.
16        MS. ARMIJO:  Well, I don't know how far
17   into it that is, but I do know this particular screen
18   shot was provided.
19        MS. DUNCAN:  I'm sorry to interrupt Mr.
20   Castle.  Can you give us the Bates number?
21        MR. CASTLE:  Yes.  It begins on page 9557,
22   and continues to 9744.
23        MS. DUNCAN:  Thank you.
24        Q.   I'm going to turn to page 3.  What is this
25   document right here?  Tell me if you need me to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2845

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200 2846

1    scroll up or down.

2         A.    I believe that's an STIU audit form.

3         Q.    And who puts this information in?

4         A.    Whoever audited the file.

5         Q.    Are you able to tell that by looking at the

6    document?  Would that be Adam Vigil, the auditor?

7         A.    Correct.

8         Q.    What's an auditor?

9         A.    He would be the individual that went

10   through his file to find that everything is still

11   current, all the information is current, or he hasn't

12   denounced or -- it's to find out if he's still a

13   validated member.

14        Q.    So they go through the file, read it, and

15   audit what's in the file?

16        A.    Yes.

17        Q.    So the next page, page 4, now, is this the

18   same kind of document that we saw in Exhibit 18, page

19   3?  In other words, is it a set of criteria as

20   applied to Mr. Garcia?

21        A.    Yes.

22        Q.    And so if we look here, there is a box for

23   self-admission.  Do you see that?

24        A.    Yes, I see that.

25        Q.    Is that checked off?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2846

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201847

```
 1        A.    No.

 2        Q.    What does that mean?

 3        A.    That he didn't self-admit.

 4        Q.    Okay.  There is tattoos.  Do you see that?

 5        A.    Yes.

 6        Q.    Is that checked off?

 7        A.    No.

 8        Q.    What does that mean?

 9        A.    That means that they didn't see any tattoos

10   that were affiliated with the SNM Gang, or any gang.

11        Q.    So I won't go through all of them, but I'll

12   go through the ones that are checked.  Number 6 is

13   authorship.  Do you see that?

14        A.    Yes.

15        Q.    When was the last time that -- well, is

16   there a comment about authorship?

17        A.    The comment would say that there was a

18   letter that was found in his property, most likely

19   that he authored.

20        Q.    On February 19 of 1999; is that right?

21        A.    If that's when he wrote it, yes.

22        Q.    So okay.  And then the next one is group

23   photos.  It appears there is a group photo in 1998;

24   is that right?

25        A.    Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202 2848

```
 1        Q.   And then the next one that's checked is
 2   contacts.   What's contacts?
 3        A.   The individuals that he contacts or
 4   associates with.
 5        Q.   If they're seen together out in the yard?
 6        A.   Or maybe he's written letters to them.
 7        Q.   Okay.   And again, that's from July of 2001;
 8   is that right?
 9        A.   Yeah.   This one indicates that he received
10   or was the author or he received the letter from --
11        Q.   I apologize.   That wouldn't be 2001; it's
12   actually from April 4 of 1999.
13        A.   Correct.
14        Q.   And then the next one is CI information
15   from January 14 of 2000?
16        A.   Correct.
17        Q.   What is CI information?
18        A.   Confidential information received.
19        Q.   From another inmate?
20        A.   Or from -- yeah, it could be an inmate, or
21   from -- yeah, most likely, it would be another
22   inmate.
23        Q.   You don't need to keep the identities of
24   investigators anonymous, do you?
25        A.   Correct.   That's what I was saying.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2848

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 203 of 290

1        Q.   And then other agencies, there is another

2    indication from 1998?

3        A.   Correct.

4        Q.   So is there anything from 2001 that is on

5    that checklist?

6        A.   From 2000 what?

7        Q.   2001.

8        A.   It looks like they were all entered in

9    2001.

10       Q.   They're entered, but I'm talking about the

11   date of any information concerning gang.  Was there

12   anything under the column comment, do you see 2001?

13       A.   You're saying that -- there was letters

14   found in there.  They entered letters that were

15   written in 1999, and in turn in 2001; is that what

16   you're saying?

17       Q.   Is that all the information that's on here

18   is from 1998, 1999, and 2000, on Mr. Garcia?

19       A.   That appears so.

20       Q.   And anything since 2000, the last 17 years?

21       A.   I don't know how long he was out before he

22   returned back into prison.

23       Q.   But is there any information in the last 17

24   years?

25       A.   On what you're showing me, no.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2849

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204   2850

1          Q.    Okay.  Are inmates informed that they

2     they're identified as a particular member of a

3     Security Threat Group?

4          A.    Yes.

5          Q.    And are they given an opportunity -- how

6     are they notified of that?

7          A.    With a questionnaire.

8          Q.    Well, let me show you -- once again, it's

9     page 9, which would be discovery page 9605.  Is this

10    a notification to Mr. Garcia?

11         A.    It appears it is.

12         Q.    And do you see that it indicates that he

13    was classified as a STG member, January 20, 2003?

14         A.    Correct.

15         Q.    But he's not provided the copy of it until

16    January 15 of 2008, five years later?

17         A.    At the time that this interview was done,

18    he was able to view the document.  And if he didn't

19    ask for a copy, then I'm sure one wasn't provided.

20         Q.    Okay.  So on January 15 of 2008, he was

21    provided with a copy and asked to sign it, and he

22    refused to sign it?

23         A.    That was probably at the time that he

24    returned back to prison.

25         Q.    Okay.  So the answer is yes?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2850

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205

```
 1          A.   Yes.

 2          Q.   Now, is the purpose in informing or

 3   notifying an individual that the Department of

 4   Corrections considers them an STG member, is that

 5   purpose to give them an opportunity to request a

 6   hearing or any kind of due process to contest that

 7   label?

 8          A.   I believe that they can write to the STIU

 9   administrator and request a hearing to review it.

10          Q.   Let's look back at the notice again.  Does

11   the notice inform them that they have any ability to

12   contest that determination, other than to check a box

13   saying:  I'm currently an active member or an

14   inactive member?

15          A.   Yes.

16          Q.   Yes, there is?

17          A.   Are you asking if there is a box that

18   indicates whether they're active or inactive?

19          Q.   Yes.

20          A.   There is a box saying that they're active

21   or inactive.

22          Q.   Is there any indication anywhere where you

23   can contest your designation in any other form other

24   than checking a box?

25          A.   During the interview, he has the right to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2851

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205852

```
 1    contest it.  And it would be written.
 2         Q.    Now, when you talked about some of the ways
 3    that an individual is classified is by the letters;
 4    is that correct?  You look at a letter, and determine
 5    that it's between two SNM Gang members, and somehow
 6    that gets into their different packets, saying that
 7    they've having gang communications?
 8         A.    If there is gang business communication.
 9         Q.    How are you able to determine who authored
10    the letters?
11         A.    They write their name on it.
12         Q.    Sometimes they say:  This is from Billy
13    Garcia, right, for example?
14         A.    Well, yeah, and his inmate number, and
15    where he's housed.
16         Q.    Okay.  I want to show you another document
17    from Mr. Garcia's file, which is page 9641.  And I
18    want you to review this for a second.  If you've
19    gotten halfway, that's enough.
20              So this document basically indicates that
21    some member of the staff of one of the facilities
22    opened a letter addressed from what appeared to be
23    Anthony Padilla, to Toni Padilla.  But this staff
24    member renders an opinion that the handwriting of the
25    contents of it was for a Gerald Archuleta; is that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2852

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 207

```
 1    right?

 2         A.    That's what it states.

 3         Q.    So does the Department of Corrections have

 4    handwriting experts available to them in the building

 5    to be able to analyze handwriting?

 6         A.    Not that I'm aware of.

 7         Q.    In regards to gang symbols, is there any

 8    specific methodology that you're aware of that the

 9    Department of Corrections uses to interpret symbols

10    associated with a gang?

11         A.    Such as SNM?

12         Q.    Yeah.  Is there any methodology that's

13    applied to that?

14              Let me back up.  Let me give it to you a

15    little bit differently.  Has the Department of

16    Corrections assessed everyone for a period of time at

17    the prisons who had that Zia symbol, or whatever the

18    name of it was, the symbol, and verified that every

19    one of the people that have that are an SNM Gang

20    member?  And that -- okay I'll stop there.  Have they

21    done that?

22         A.    Not if I'm hearing you correctly, not

23    everyone that has a Zia symbol is an SNM Gang member.

24         Q.    What percentage do?

25         A.    At this point, I couldn't answer that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2853

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

1    Q.   So not everyone that has a Zia symbol is an

2  SNM Gang member, right?

3    A.   Correct.

4    Q.   And not everyone who is an SNM member has a

5  Zia symbol?

6    A.   Correct.  They usually, when they put a Zia

7  symbol, they'll put a letter in it which would

8  indicate -- that's what makes the difference.

9    Q.   When you say "usually," how often is that?

10  Is that 9 out of 10; 7 out of 10?  Can you quantity?

11    A.   I don't remember ever seeing an SNM Gang

12  member with a Zia symbol that didn't have "SNM" or

13  the letter "S" in it.

14    Q.   So that's based on your personal

15  observation?

16    A.   Yes.

17    Q.   Are you aware of any data that the

18  Department of Corrections keeps on this particular

19  area that you're testifying about?

20    A.   I'm not, unless administration does.

21    Q.   Are you aware of instances in which someone

22  has been identified by the Security Threat

23  Intelligence Unit as a gang member and they weren't a

24  gang member?  Do you guys ever make mistakes?

25    A.   Yes.




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2854

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202855

```
 1        Q.   What's the percentage of that, the error
 2   rate?
 3        A.   It's pretty low.
 4        Q.   Ballpark, 10 percent, 5 percent, 9?  Do you
 5   know?
 6        A.   I couldn't say, because if I'm working at
 7   the Penitentiary of New Mexico, and I noticed a
 8   mistake, then I would have to say 1 in 700.  But I
 9   can't say for across the state, because I don't keep
10   those stats.
11        Q.   So does the State keep those stats?
12        A.   I don't know.
13        Q.   So you're just saying you've made that
14   mistake maybe 1 out of 700 times?
15        A.   No.
16        Q.   Okay.  How often?  Well, are you aware of
17   anyone's error rate other than your error rate?
18        A.   I don't have an error rate.  I'm sorry, I
19   was giving you an analogy.
20        Q.   Okay.  How often -- we'll move on.
21             The SNM, in general, does it have different
22   factions?
23        A.   What do you mean by "different factions"?
24        Q.   Well, different groups within the SNM.
25        A.   Do they have different leaders within the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2855

```
 1    SNM?

 2         Q.   Yes.

 3         A.   Yes.

 4         Q.   And do all those leaders work together, or

 5    do they, at times, act at odds with each other?

 6         A.   I'm sure they act at odds against each

 7    other at times.  But overall, as a whole, they act

 8    together.

 9         Q.   Okay.  Well, what are -- are there dtheir

10    subgroups for the SNM?

11         A.   Subgroups?

12         Q.   Yes.

13         A.   Not that I'm aware of.

14         Q.   Have you ever heard of the All Stars?

15         A.   Yes.

16         Q.   And what are they?

17         A.   They're a group that doesn't exist.

18         Q.   Okay.  No long exist or never existed ever?

19         A.   I believe they tried to exist, but it was

20    short-lived.  It was really never established.

21         Q.   So there was never a group of SNM members

22    that held themselves out as the All Stars?

23         A.   I believe that was an attempt that didn't

24    go anywhere.

25         Q.   And what was the attempt to do?  What were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 211

2857

```
 1    they attempting to do?

 2         A.   They were attempting to recreate the SNM.

 3         Q.   Were they trying to recreate it under a

 4    different leader than the existing leader?

 5         A.   Correct.

 6         Q.   And who would have been the head of that

 7    group?

 8         A.   I'm not sure.

 9         Q.   Okay.  Are you familiar with an individual

10    by the name of Gerald Archuleta?

11         A.   Yes.

12         Q.   Was he the head of that, I guess, splinter

13    group that tried to be formed, called the All Stars?

14         A.   No.

15         Q.   Who was, if you recall?

16         A.   My best recollection would probably be an

17    individual by the name of JR Torrez.

18         Q.   JR Torrez?  I'm sorry?

19         A.   Junior Torrez.

20         Q.   And when did that happen?  When did this

21    splinter group attempt to form?

22         A.   I believe this was probably in the '90s,

23    the late '90s.

24         Q.   Are you familiar with the term Old Timers?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2857

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212858

```
 1        Q.    And what does that term mean?
 2        A.    That means the veteran -- a veteran group,
 3   veteran individuals, if you're talking about inmates.
 4        Q.    When did they exist?
 5        A.    I think they all just -- are you making
 6   reference to a name or an organization?
 7        Q.    Is there a group of SNM members that were
 8   either identified by STIU or by themselves as, quote,
 9   the "Old Timers," end quote?
10        A.    No.  Within the SNM, the Old Timers are
11   probably individuals that are probably no longer in
12   prison, and probably just retired out of the SNM and
13   probably are no longer active members within the
14   organization, or don't have that same influence
15   within the group.
16        Q.    Billy Garcia over here to the left, is he
17   an Old Timer?
18        A.    I would consider him an Old Timer, yes.
19        Q.    And are you aware, is he still a member of
20   the SNM?  Do you have any personal knowledge of that?
21        A.    I believe he's still a member of the SNM.
22        Q.    What do you base that on?
23        A.    Individuals that I have interviewed.
24        Q.    Have you ever interviewed an individual by
25   the name of Jerry Montoya?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 2858

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213859

 1        A.    I've spoken to Jerry.  I don't think I've

 2   ever interviewed him.

 3        Q.    When you spoke to him, what did you speak

 4   to him about?

 5        A.    Just in generalization, to see how he was

 6   doing, if he was okay; if -- how his family was,

 7   different things like that.  But it wasn't an

 8   interview.

 9        Q.    You were talking about how members could

10   leave the SNM.  They could exit it because of their

11   religion?

12        A.    Right.

13        Q.    And that's by becoming a Christian.  Do you

14   recall that?

15        A.    Yes, sir.

16        Q.    I want to show you a document.  Let's see

17   if this assists you in any fashion.

18             Do you recall the Department of Corrections

19   obtained information that Mr. Garcia had walked away

20   from the SNM to pursue Christianity?  When you go to

21   the first page.

22        A.    I wasn't aware of Mr. Garcia.  But I was

23   aware of Ernest Guerrero.

24        Q.    And, in fact, the founder of the SNM, Juan

25   Baca did; is that right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 214

```
 1        A.   After he got out of prison, yes.

 2        Q.   So is it your testimony today that the SNM

 3   is one organization without any subgroups within the

 4   organization?

 5        A.   Yes.

 6        Q.   And it's your testimony that the various

 7   leaders are all -- they all work together

 8   cooperatively?

 9        A.   I don't know to what extent they cooperate,

10   but overall, yes, they work together.

11        Q.   You indicated that you talked to Mr. Garcia

12   when he was in administrative segregation in 2013.

13   That was your memory?

14        A.   That might be true.  I think so.

15        Q.   Give or take a year?

16        A.   Yes, give or take a year.  Before he left

17   prison.

18        Q.   What was he in administrative segregation

19   for?

20        A.   I believe we had gotten confidential

21   information that his life would be in danger if he

22   was in congregate movement with the other members of

23   the SNM that were active.

24        Q.   Do you recall that it was that Gerald

25   Archuleta had put out a green light to murder
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1

1    Mr. Garcia?

2        A.    I knew that there was a disagreement

3    between Mr. Garcia and Mr. Archuleta while they were

4    in the county jail, yes.

5        Q.    So when you say that the group works

6    together, they don't have subgroups, how do you

7    explain that a person like Mr. Archuleta, who put out

8    a hit or a green light on someone else, such as

9    Mr. Billy Garcia?

10       A.    He was in charge of the SNM at the time.

11       Q.    So I think you said earlier that the only

12   way you get out of the SNM is either through death or

13   becoming a snitch, or becoming a Christian; is that

14   right?

15       A.    That was one of the earlier ways that they

16   did business, yes.

17       Q.    And when did that end?

18       A.    It seemed to change a lot more in the early

19   2000s.

20       Q.    Okay.  So did the gang itself kind of

21   change?  How did it change?  How did the gang change?

22       A.    Probably a new generation of individuals

23   that were coming into the gang.

24             I believe the gang started getting more

25   hooked on drugs, heroin, and started doing a lot more

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2862

1    heroin.  There was a lot more individuals that were

2    influential that were giving individuals passes.

3        Q.   "Passes" being --

4        A.   "Passes" being that they shouldn't be

5    touched -- or let's say, for example, if a guy was

6    not in good standing, but he was bringing in a lot of

7    drugs, they would give him a pass because he was

8    bringing in a lot of drugs and money for the

9    organization.

10       Q.   Would this have been around 2002, 2003, in

11   that time period?

12       A.   That's probably the beginning of the

13   decline on that.

14       Q.   So the leadership of the SNM -- I think

15   you've said a few things, and I just want to break it

16   down.

17       A.   Sure.

18       Q.   The leadership kind of changed to younger

19   guys -- is that right -- around that time?

20       A.   I think the younger soldiers, and

21   individuals that were leading the SNM at the time

22   probably had a different philosophy.

23       Q.   So then the "different philosophy" meaning

24   that they ran things differently than the older

25   group; is that right?

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                           Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

DNM 2862

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2863

```
 1         A.   Correct.

 2         Q.   And they had different, perhaps, goals such

 3    as distribution of drugs?

 4         A.   Correct.

 5         Q.   So they had different methods, different

 6    goals, and different leaders?  Would that be fair to

 7    say?

 8         A.   Yes.  It changed, simply because they were

 9    now in segregated congregated movement, other than in

10    population setting with other individual inmates.

11         Q.   I want to talk to you a little bit about

12    this photograph.  You were talking about separated --

13    I think you just said segregation; is that right?

14         A.   Segregated population.

15         Q.   So when did that start?

16         A.   I believe after the murders in 2001.

17         Q.   Okay.  So in 2001, before the murders, they

18    did not -- did they have a prison that housed SNM

19    members?

20         A.   I believe all the prisons housed SNM

21    members.

22         Q.   How about Southern New Mexico Correctional

23    Facility?

24         A.   Yes.

25         Q.   Was that the predominant location of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2863

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2864

```
 1   members who were not in PNM?
 2        A.   I'm not sure what you're saying.
 3        Q.   Did they house a majority of SNM members
 4   who were not in PNM at Southern New Mexico
 5   Correctional Facility?
 6        A.   There was a large amount of SNM members at
 7   Southern, yes.
 8        Q.   I want to talk to you a little bit about
 9   phone calls.  You've listened in on phone calls
10   various gang members have made; is that right?
11        A.   Correct.
12        Q.   And you've heard them use terms -- I think
13   you used some like "Michael Jackson"?
14        A.   Correct.
15        Q.   How do you determine "Michael Jackson,"
16   that that phrase means heroin?
17        A.   I didn't determine that right out.  I
18   didn't say, Well, you know, this means Michael
19   Jackson.  It's a breakdown of interviews with inmates
20   and confidential informants that will eventually tell
21   you that that's what they mean.  So that's how we get
22   the meaning.
23        Q.   So a gang member could tell you that
24   "Michael Jackson" means heroin?
25        A.   And it would make sense within the content
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219 2865

```
 1    of what we were listening to.
 2         Q.   So the source of the information would be,
 3    number one, the tape, or what you're hearing?
 4         A.   Correct.
 5         Q.   And then you'd also use a source which was
 6    an inmate or inmates?
 7         A.   Correct.
 8         Q.   And they would tell you what that term
 9    meant.  And then you go back and listen to it, and
10    then it would make sense to you?
11         A.   Yes.
12         Q.   So when that happens, what expertise do you
13    have to apply to do that, other than the ability to
14    listen?
15         A.   Well, when we find that individual with
16    heroin, it would usually indicate that that was
17    corroborated truth.
18         Q.   Okay.  So if that happens and you find them
19    with heroin --
20         A.   So that source becomes credible.
21         Q.   Okay.  So that would be personal
22    observations, that you observed someone with heroin,
23    right?
24         A.   Well, we're conducting the investigation.
25    If what the source has told us becomes credible,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 220866

 1   then, yes.

 2        Q.   Well, let me just ask a different way.

 3   Assume for the moment I have no expertise.  I mean

 4   someone on the street that's not an expert and had

 5   any training in prison gangs, right?  Would they be

 6   able, if they were given the phone call and listened

 7   to it, and got the interview of the gang member

 8   saying "Michael Jackson" means heroin, would they be

 9   able to go back and listen to that phone call and

10   make sense of it?

11             MS. ARMIJO:  Objection; calls for

12   speculation.

13             THE COURT:  Well, I think he gets to

14   explore what the basis of these opinions are.  So I'm

15   going to allow it.

16        A.   I'm basing my opinion on my experience in

17   training within the gang unit.  I cannot say whether

18   a normal person would come to that conclusion, that's

19   never had any training in gangs.

20        Q.   And so under that situation -- let's go

21   through this for a minute -- if you were to come into

22   court and testify that on a particular phone call you

23   heard "Michael Jackson."  You interviewed an inmate

24   that said Michael Jackson was heroin, and that's what

25   that means, how would I be able to verify whether

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2866

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221

1    that's accurate or not?  I'd have to -- would I have

2    to go talk to the inmate?

3         A.   The way that we verified it is that he's

4    not only telling us that that's Michael Jackson, but

5    he probably also tells us when they're bringing in

6    the drugs.  And then we would be able to verify that

7    what he's saying is true.

8         Q.   So the verification would be by listening

9    to the inmate and looking at the drugs?

10        A.   Correct.  That's a high probability that

11   that's the truth.

12        Q.   Now, you indicated that some of the code

13   words are used, I guess, transmitted during

14   visitations that are not monitored; is that right?

15   Is that what you indicated?

16        A.   Contact visits.

17        Q.   And then I take it you learned about this

18   because at some point in time somebody involved in

19   that unmonitored conversation told you what the code

20   meant?

21        A.   Individuals like, for example, for

22   different reasons we've gotten them as sources have

23   indicated to us that that's how they pass

24   information; that would make logical sense to me

25   since I've worked in the prison.  And if I was an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2867

```
 1    inmate, that's the way I'd do it.
 2        Q.   So how do you, then, break the code?
 3        A.   The code of --
 4        Q.   Whatever code was developed during these
 5    unmonitored visits.  How does the Department of
 6    Corrections break the code?
 7        A.   That's hard.  Sometimes you can't;
 8    sometimes you can.
 9        Q.   Is there a certification in code breaking
10    of some sort?  I mean, like interpreters have
11    certifications.  Are there --
12        A.   No.  Because gangs change the meaning of
13    codes all the time.
14        Q.   I understand.  But like military has code
15    breakers, right, that go to code school?
16        A.   Right.
17        Q.   Do you guys have a code school to break
18    code of inmates?
19        A.   Just the training and experience.
20        Q.   You'd indicated earlier that if you knew --
21    I think what you said is the higher the rank someone
22    is in a prison gang, what that means is that they've
23    committed more horrible crimes, I think is what you
24    said, or horrible acts?
25        A.   No.  The stature of which you would be in a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2868

```
 1   gang would be predicated on the amount of -- how many
 2   crimes you've committed or horrible acts you've
 3   committed.  That will give you stature.  That
 4   wouldn't give you influence to be the leader or
 5   anything like that.  It could.
 6           But let's say, for example -- that's why
 7   it's a subculture, like in the military, if somebody
 8   conducted an act of bravery, maybe he'd be given an
 9   award for act of bravery.  In the gang life, if he's
10   done something for the betterment of the gang, he's
11   seen in a higher stature as a good guy, if you will,
12   within that gang, a solid individual.
13      Q.   But he wouldn't necessarily get a higher
14   rank?
15      A.   He could.
16      Q.   He could, but not necessarily?
17      A.   Correct.
18      Q.   So if I tell you there is a leader of the
19   SNM today, and I just said, "John Doe is a leader of
20   the SNM" --
21      A.   Right.
22      Q.   -- top leaders, what does that tell you
23   about that person?  Does it tell you anything?
24   Whether they committed any crimes other than the one
25   that got them in prison?  What does that tell you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224870

```
 1    about that person?

 2         A.   That would tell me that the rest of the

 3    individuals in that group believe in him and they

 4    find him credible.

 5         Q.   So it wouldn't tell you necessarily that's

 6    a person who is going to order hits and murders

 7    around the prison, would it?

 8         A.   Well, in the gang life, you're probably an

 9    individual that would order hits.

10         Q.   Probably means what:  100 percent?  Over 51

11    percent?  What would be?

12         A.   I would say 100 percent.

13         Q.   So you're saying, if you're a leader in the

14    SNM, you've ordered murders?

15         A.   I wouldn't say murders, no.

16         Q.   Then what are you saying that they did?

17         A.   They could order assaults.

18         Q.   Could they maybe be a good source of drugs?

19         A.   Yes.

20         Q.   Be someone that is honored and respected

21    because of their honesty and their physical stature?

22         A.   Honesty within the gang?

23         Q.   Yes.

24         A.   Or you mean the operating loyalty -- what

25    you call loyal, and maybe what they defer -- they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2870

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2871

1    might think of loyalty different than what you think

2    of loyalty.  But an individual that is a high ranking

3    member within an organization that's a criminal

4    organization, my professional opinion is that he's

5    conducted some kind of heinous crimes in the past, or

6    has ordered them.

7         Q.   And that professional opinion is based on

8    what?

9         A.   Training and experience.

10        Q.   So interviews with inmates, and

11   information?

12        A.   Right.

13        Q.   And I take with regard to Mr. Garcia you

14   didn't do any -- you haven't gathered information

15   about him?

16        A.   Mr. Garcia is Billy Garcia?

17        Q.   Yes.  Thank you for that.

18        A.   I really didn't know Billy Garcia too much.

19   Only by reputation, or what other inmates have told

20   me about him.  I met Billy Garcia when he returned

21   back to prison.  I attempted to interview him.  And

22   he declined, didn't say anything.  So that's the last

23   time I've ever spoken to him.

24        Q.   And after that, are you aware of any gang

25   activity he's been involved in?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Monitoring his mail or his phone calls, I
 2   was not aware of any gang activity.
 3        Q.   Now, you talked about Frederico Munoz?
 4        A.   Correct.
 5        Q.   What rank did he end up achieving in the
 6   SNM?
 7        A.   As far as I know, he was a soldier within
 8   the SNM.
 9        Q.   And did he commit two murders, at least
10   that you know of -- all right, I guess the shooting
11   on the street and a murder in a county facility; is
12   that right?
13        A.   I believe so.
14        Q.   And how did you learn about that?
15        A.   I believe I debriefed him when he went to
16   the RPP Program.
17        Q.   When would that have been?
18        A.   Maybe 2013, 2014.
19        Q.   And that would have been a debrief where
20   you would have written down what he said to you?
21        A.   Correct.
22        Q.   And he admitted to murders and shootings;
23   is that right?
24        A.   He admitted to -- yeah, I believe that was
25   probably public record already.  But, yes, he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2873

```
 1    admitted to whatever he had done in the gang, yes.

 2         Q.   So these are all matters that were already

 3    part of the public record; is that what you said?

 4         A.   I believe so.

 5         Q.   So he didn't admit to anything new that

 6    wasn't already known?

 7         A.   Other than how the SNM structure works or

 8    the SNM organization, yes.

 9         Q.   Now, the source of this -- Mr. Munoz, is a

10    good example, I'll use him -- when you get inmates

11    that are giving you information about the SNM that

12    used to be members, or are currently members, are

13    they often given any incentives -- are they ever

14    given any incentives to assist?

15         A.   To assist in giving information?

16         Q.   Yes.

17         A.   They volunteer the information.

18         Q.   They just give it freely, without any

19    problem?

20         A.   Well, if an individual is tired of being

21    part of the gang and wants out, and we have -- he

22    would like to go to a restoration program, then part

23    of the criteria is for him to share or debrief

24    information about his past and about his involvement

25    within the group.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 2873

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228

 1        Q.   So the Department of Corrections doesn't

 2   say:  Cut their sentence, or anything like that?

 3        A.   No, sir.

 4        Q.   Give him money?

 5        A.   The Department of Corrections does not give

 6   money.

 7        Q.   That would be wrong to get information from

 8   them; would that be fair to say?

 9        A.   I'm saying that the Department of

10   Corrections does not give money.

11        Q.   How about the ability to give special

12   credits to inmates; is that right?

13        A.   Credits earned.

14        Q.   How about a special cut in the length of

15   their sentence, if they cooperate?  Do they have that

16   ability?

17        A.   Not that I'm aware of.  I don't know if

18   it's been done or not.  But not that I'm aware of.

19   STIU has not done anything like that.

20        Q.   Has STIU ever sought the permission to be

21   able to do things like that?

22        A.   Not that I'm aware of.

23        Q.   Why not?  I mean, I'm asking because that

24   sounds like it would be a really good incentive to

25   get a lot of information from inmates.  Why would the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2874

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2875

```
 1    STIU not request the ability to cut people's
 2    sentences in order to gain information about the
 3    case?
 4         A.   You're asking for my opinion on it?
 5         Q.   Yes.
 6         A.   We don't do it probably because it's
 7    against our policy to do it.  The incentive would be,
 8    most likely, that we remove them from the gang, the
 9    gang life, that he no longer wants to be part of, and
10    put him into a congregate population, where they
11    don't have to be subjected to the politics of gang
12    life.
13         Q.   Well, if the STIU had the ability to cut
14    people's sentences or give money to inmates, in your
15    expert opinion, do you believe that would, all of a
16    sudden, cause a lot of inmates to want to come and
17    cooperate?
18         A.   I don't know.
19         Q.   Do you think it would affect whether they
20    would be reliable?
21         A.   I don't know.
22         Q.   Are gang members motivated by getting out
23    of jail?
24         A.   I think, when an individual decides that he
25    no longer wants to be a part of something, and wants
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2875

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2876

 1   to change, that's the motivation that they use to ask
 2   for help to get out.
 3       Q.   So are you saying that you're an expert in
 4   the motivations of inmates in cooperating with STIU?
 5       A.   I'm saying that during the questioning, I
 6   ask them why they're doing this.  And what I get as a
 7   motivation is that they no longer want to be part of
 8   the organization.  So they've been thinking about it
 9   for a while.  They didn't just wake up in the morning
10   and say:  I don't want to do this.
11            Most likely, in my experience, most of the
12   individuals have thought about it for a while, and
13   had weighed their options; maybe talked to their
14   family members, and then made a decision to exit.
15       Q.   So is that an expert opinion or just a
16   personal opinion?
17       A.   That's what I've seen.
18       Q.   I'm asking is that your expert opinion or
19   just an opinion as a layperson?
20       A.   No, that's my expert opinion and what I've
21   seen.
22       Q.   Did you go to school, or trainings that
23   talked about the motivations of inmates that come
24   forward with information; is that part of the
25   training?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231

```
 1          A.    Just time and experience.
 2          Q.    And in your time and experience do inmates
 3    ever ask to get out of jail in return for
 4    information?
 5          A.    I don't have the ability to get people out
 6    of jail.
 7          Q.    No:  Do they ask?
 8          A.    Do they ever ask to get out of jail?
 9          Q.    Yeah, do they ever ask to --
10          A.    If a guy is serving 998 years, I don't
11    think he's going to ask to get out of jail.
12          Q.    So all the gang members are serving that
13    kind of sentence?
14          A.    No.  You're asking me a question that I
15    thought fit that analogy.
16                I'm guessing it didn't make sense to me.
17          Q.    Agent, you've indicated that you're an
18    expert, and you want to give an expert opinion --
19          A.    Correct.
20          Q.    -- about motivations of inmates when they
21    come forward and talk to you about gang information,
22    right?
23          A.    Right.
24          Q.    So what I'm trying to explore is what is
25    your experience in this regard.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                     e-mail: info@litsupport.com

DNM 2877

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 232

1        A.   My experience is --

2        Q.   I'm trying to set the stage, okay?

3             So in the interviews that you've had with

4    inmates who are providing information about gang

5    members, is it your testimony that none of them have

6    ever asked for any relief from their sentence in

7    return for their information?

8        A.   Not to me.

9        Q.   And is it also your testimony that none of

10   them have ever asked for any kind of favor at all in

11   return for their information?

12       A.   I make it clear that I can't give nobody

13   any favors, that I can't promise any favors.

14       Q.   So is it your testimony that every one of

15   these informants that come forward with information,

16   at least from your perspective, are doing it for

17   noble reasons?

18       A.   For the restoration to population, is that

19   what we're talking about?  Or just for information in

20   general?

21       Q.   The information about SNM Gang members.

22   Let's make it specific.

23       A.   The majority of the individuals that have

24   given information are either based on their own

25   protection or the protection of other individuals

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2878

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2879

```
 1   that they care about.
 2        Q.   Okay.  And what are the minority of the
 3   individuals that do that?  What are their
 4   motivations?
 5        A.   They just don't want any violence.
 6        Q.   So they're all doing it for good and noble
 7   reasons?
 8        A.   It's different.  It varies.  There is
 9   different reasons for what they do.
10             But if we're talking about the Restoration
11   Into Population, usually that requires an individual
12   to have a lot of thought process and a change of mind
13   in order to enter that program.
14        Q.   Does the Department of Corrections keep
15   data on the motivations of inmates coming forward?
16        A.   They don't.
17        Q.   You talked about Julian Romero having a
18   green light.  Do you recall that?
19        A.   Yes.
20        Q.   What's the source of that information that
21   you possess?
22        A.   One of the sources of information came from
23   Mr. Munoz.
24        Q.   So interviews with inmates?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2879

```
 1         Q.    And so, what part of your expertise did you
 2    apply to determine that Julian Romero has a green
 3    light?
 4         A.    The conducting of interviews and
 5    individuals, pretty much telling me the same story.
 6         Q.    Okay.  You indicated that the SNM -- I
 7    guess one opinion you were making is the SNM commits
 8    murders through strangulation and stabbings?
 9         A.    Correct.
10         Q.    And is that on the streets and in the
11    facilities?
12         A.    Correct.
13         Q.    So, any other methods that you can think
14    of?
15         A.    Well, I'm sure, if they're on the streets,
16    and they have access to firearms, they'll use
17    firearms.
18               But inside the prisons, I've seen
19    strangulations and stabbings.
20         Q.    That's the majority of all killings in the
21    prisons, are either strangulations or stabbings,
22    right?
23         A.    Correct.
24         Q.    So you don't have to be a gang member to
25    strangle somebody or stab someone, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2880

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2881

```
 1        A.   Correct.
 2        Q.   Now, was there a particular time when the
 3   SNM kind of had strangulation as a signature method?
 4        A.   Not that I'm aware of.
 5        Q.   Okay.  So would they do it in a particular
 6   fashion that if someone were to come across, someone
 7   who had been murdered that way, you'd go, Oh, that's
 8   obviously by the SNM?
 9        A.   No.
10        Q.   How about the stabbings?  Was it a certain
11   way that you could tell that that was an SNM
12   stabbing?
13        A.   It was an SNM member stabbing another one,
14   yes.
15        Q.   Okay.  I'm just talking about the nature of
16   which the stabbing occurred.
17        A.   Like you said before, there is stabbings in
18   prisons.
19        Q.   So you don't have any expert opinion that
20   you're offering concerning the manner of any murder?
21        A.   No.
22        Q.   Or whether that could be associated with
23   the SNM?
24        A.   Correct.
25             MR. CASTLE:  If I could have one moment,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2881

```
 1    Judge?

 2            THE COURT:  Certainly.

 3            MR. CASTLE:  I have no other questions,

 4    Your Honor.

 5            THE COURT:  All right.  Thank you, Mr.

 6    Castle.  Who would like to go next?

 7            MS. JACKS:  I'll go, Your Honor.

 8            THE COURT:  All right.  Ms. Jacks.

 9                    EXAMINATION

10    BY MS. JACKS:

11        Q.  Good afternoon, Mr. Martin.

12        A.  Good afternoon.

13        Q.  So I guess I want to just start back at the

14    very beginning, about your career path, and some of

15    the training that put you where you are today.

16        A.  Okay.

17        Q.  So, first of all, you said that your

18    training for this position in the STIU started with

19    being a correctional officer?

20        A.  No, ma'am, I had to apply and interview for

21    the position.

22        Q.  Okay.  But before you did that, you were a

23    correctional officer, right?

24        A.  Correct.

25        Q.  And that was for a period of about eight
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2882

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 237 2883

```
 1    years?

 2         A.    Approximately.

 3         Q.    And during that time, you rotated through

 4    various penal institutions?

 5         A.    Three.

 6         Q.    And then, in order to become an STIU

 7    officer, you had to make some sort of application?

 8         A.    Correct.

 9         Q.    Did you have to take any sort of test?

10         A.    I had to interview.

11         Q.    So an oral interview?

12         A.    Correct.

13         Q.    What about any sort of test of proficiency

14    or knowledge?

15         A.    You had to be able to read and write.

16         Q.    Okay.  Did you have to know any particular

17    policies and procedures at the New Mexico

18    Correction's Department?

19         A.    Yeah.  How the policies and procedures work

20    in the Department of Corrections is, if there is a

21    certain area that we're not aware of, or that we have

22    question about, we can look at policy and procedure

23    on it.  That's how we use it.

24         Q.    Okay.  But my question is:  In order to

25    become an officer in the Security Threat Intelligence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2883

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2884

```
 1    Unit were you tested on your knowledge of any
 2    specific policy and procedure?
 3         A.    Basic knowledge of gangs.
 4         Q.    So that's not policy and procedure, though,
 5    is it?
 6         A.    No.
 7         Q.    My question is directed to policies and
 8    procedures of the New Mexico Corrections Department.
 9    Did you have to show any sort of proficiency with
10    areas of those?
11         A.    No.
12         Q.    And I'm assuming that you have a high
13    school diploma?
14         A.    Yes, ma'am.
15         Q.    Do you have any formal education above and
16    beyond high school?
17         A.    Other than the trainings that I've gone to,
18    no.
19         Q.    Okay.  By formal education, I mean like
20    attending community college; getting an AA
21    certificate; attending college; attending graduate
22    school; anything of that nature?
23         A.    No, ma'am.
24         Q.    So apart from your high school diploma, you
25    have no other formal education?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2884

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2 of 2885

```
 1           A.    No, ma'am.
 2           Q.    And the training that you're relying on is
 3    training that you received in the New Mexico
 4    Department of Corrections?
 5           A.    The training that I -- yes.
 6           Q.    Okay.  And it sounds like you also had some
 7    contact with an individual in California regarding
 8    training, specifically on the Mexican Mafia and
 9    Sureno prison gangs?
10           A.    And also the individuals that were our
11    counterparts within the California Department of
12    Corrections.  Also, other law enforcement agencies.
13           Q.    Okay.  You've had some contact with them on
14    the job?
15           A.    Yes.
16           Q.    And maybe contact at a seminar here and
17    there?
18           A.    Correct.
19           Q.    Okay.  So those would consist of just
20    basically personal conversations and sharing
21    experience?
22           A.    Well, I've gone to courses that -- like
23    narcotics courses.  I've gone to gang trainings;
24    tattoo identification courses; handwriting analysis
25    courses; hostage negotiation courses.  So I've taken
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2885

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240

1     a lot of everything that was offered to me within the

2     Department of Corrections.

3          Q.   Okay, and --

4          A.   For training.

5          Q.   -- these are courses and training that are

6     within the New Mexico Department of Corrections?

7          A.   Within the New Mexico Department, across

8     the United States.

9          Q.   Specifically, do you have any training in

10    the science of sociology?

11         A.   No.  Other than what I've read, no.

12         Q.   Have you done any upper level classwork --

13    I'm talking about community college, college, or

14    graduate level class work -- in sociology?

15         A.   No, ma'am.

16         Q.   What about the same with respect to

17    psychology?  Any formal education above high school

18    in psychology?

19         A.   No, ma'am.

20         Q.   What about anthropology?  Have you studied

21    any anthropology in classes beyond high school?

22         A.   No.

23         Q.   Have you received any training whatsoever

24    in what motivates people to join gangs, or how gangs

25    are formed, whether it be prison gangs or street



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 241

```
 1    gangs?

 2         A.    Other than interviewing, no.

 3         Q.    Other than interviewing prison inmates?

 4         A.    Correct.

 5         Q.    You don't have any other training or

 6    exposure to ideas about that from professional

 7    organizations?

 8         A.    Yes.  I was working with an individual, Dr.

 9    Robinson, that worked for the Department of

10    Corrections, on gangs and gang behavior.

11         Q.    Okay.  Is Dr. Robinson a psychologist, or

12    what kind of doctor is Dr. Robison, do you know?

13         A.    He's a philosopher.  He has a Ph.D in

14    philosophy.

15         Q.    Okay.  And he's employed by the New Mexico

16    Department of Corrections?

17         A.    Yes.

18         Q.    And you had a course from him, or you

19    interacted with him on occasion?

20         A.    Well, we're collaborating together in

21    putting together a program for individuals that are

22    entering our dropout -- gang dropout.

23         Q.    Okay.  So you were working with him to try

24    to develop some sort of program for people who were

25    leaving gangs?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2887

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 242888

1        A.    Yes.   To enhance the rate of these

2    individuals.

3            For example, California uses a yard, where

4    their ex-members drop out of prison gangs and they're

5    put into separate yards like the RPP program.   Their

6    success rate is not that great, because usually gang

7    members will tend to go back to what they know;

8    they'll revert back to what they've always practiced.

9    And that's one of the things that we were trying to

10    work on with a program that would change that

11    behavior.

12        Q.    Okay.   And that was in connection with your

13    involvement with the RPP Program?

14        A.    In the gang unit, the STIU gang unit.

15        Q.    Okay.   And let me go back.   Do you have any

16    training on gang prevention?

17        A.    I think the STIU gang, that's one of our --

18    one of the things that we try to do is prevent

19    individuals from joining gangs or staying in gangs.

20        Q.    But my question is:   Do you have any

21    training, from either experts or taking courses or

22    learning the theories behind gang prevention?

23        A.    Only what I've read.

24        Q.    And what have you read?

25        A.    I've read books on -- different books on

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                 1-800-669-9492
                                                           e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2888

1  gangs.  All the way from the inception of gangs when

2  they first started in the United States.  We've

3  always had them; just in different formats, different

4  things like that.  So I've always tried to keep

5  myself up to date on the philosophy of gangs and how

6  gangs were formed.

7         And the whole idea behind this is to

8  prevent -- to attempt to prevent any type of

9  individuals joining gangs.

10         But other than that, no.

11     Q.   How many books would you say you've read on

12  this topic, or it sounds like the general topic of

13  gangs?

14     A.   Oh, quite a few.

15     Q.   How many is "quite a few"?

16     A.   Probably about 20, 25.

17     Q.   Okay.  And who are these books written by?

18  Can you tell me?

19     A.   Right offhand, no, I couldn't tell you.

20     Q.   Were they written by gang members?  Were

21  they written by law enforcement officers?

22     A.   Correct.  Some from gang members.  For

23  example, the last one I read was written by an

24  individual that was -- spent 30 years in the gangs

25  and got a Ph.D. in sociology, De La Cruz -- and he

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 2889

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 244 2890

1  testifies as a gang expert.  So that's the last one I

2  read.

3      Q.   And you've read books that were written by

4  law enforcement?

5      A.   Correct.

6      Q.   And any other type of individual that's

7  written these books that you've read, these 25 books?

8      A.   I can't right offhand remember all the

9  names of the individuals, so --

10     Q.   And I think you indicated on your CV that

11 you have a certification.  You have an FBI

12 certification in hostage survival crisis negotiation

13 and Arab culture?

14     A.   I studied that for six years.

15     Q.   Do you have any other certifications like

16 that?

17     A.   Just certifications where I've attended

18 classes for narcotics or gang identification, tattoo

19 identification, graffiti identification.

20     Q.   You're talking about, like, certificates

21 saying you attended a two-hour lecture on something?

22     A.   Yeah, 40-hour lecture, 80-hour lecture.

23     Q.   Okay.  What is the -- well, you haven't

24 listed it on your CV -- is there some certification

25 with respect to prison gangs that you have that's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2890

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2891

```
 1    omitted from your CV?
 2         A.   Other than working in the prison system for
 3    17 years, no.
 4         Q.   No, okay.
 5              And this CV, when did you prepare this, or
 6    was it prepared for you?
 7         A.   I think I have had it prepared since I went
 8    to court in -- it might have been 2014.  But the CV
 9    one, I prepared it probably about six months ago.
10         Q.   Did you print it in connection with the
11    Government's intent to qualify you as a gang expert
12    in this case?
13         A.   Correct.
14         Q.   And did you have assistance from the
15    Government in preparing it?
16         A.   No.
17         Q.   And you mentioned previously that you
18    testified in two prior cases before this case; is
19    that right?
20         A.   Correct.
21         Q.   And in those cases, were you testifying as
22    an expert on prison gangs, or were you testifying as
23    a witness to some fact that happened that was
24    relevant in the litigation?
25         A.   On the Sureno case, I was testifying as a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2891

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 248

2892

```
 1    witness to the Sureno prison gangs.
 2         Q.   Okay.  And the other case that you
 3    mentioned?
 4         A.   The other case that I mentioned that -- I
 5    was a witness on an individual, I guess, that was
 6    attempting to -- that filed a habeas to reenter the
 7    SNM active population.
 8         Q.   And so were you a witness as to the facts
 9    of why he was classified one way or another, that
10    were at issue in the case?
11         A.   Correct.
12         Q.   So you'd agree that wasn't an expert
13    witness?
14         A.   Correct.
15         Q.   Mr. Martin, have you published any sort of
16    articles regarding your findings or thoughts about
17    prison gangs in any sort of journal or magazine or
18    other type of publication?
19         A.   No, ma'am.
20         Q.   Have you ever submitted an article that you
21    prepared regarding your thoughts on prison gangs, or
22    gangs in general, for submission into a journal or a
23    magazine?
24         A.   No, I have not.
25         Q.   Have you prepared any writings regarding
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2893

```
 1    your thoughts, analysis, evaluation of prison gangs?

 2         A.   To --

 3         Q.   For public dissemination; not just for

 4    placement of New Mexico Department of Corrections?

 5         A.   I have not, no.

 6         Q.   And can you tell me what publications, if

 7    any, you read on a regular basis to stay abreast of

 8    developments in this area of prison gangs?

 9         A.   Other than going into the internet and

10    going to different prisons, or speaking to different

11    individuals that work in different prisons, no,

12    that's the only thing.

13         Q.   Well, let's talk about the internet.  So

14    what you're referring to is, sometimes when you have

15    a question, you might Google a question and see what

16    the internet says about the answer?

17         A.   No.

18         Q.   Oh.  How do you use the internet?

19         A.   Informational.

20         Q.   For what type of information?

21         A.   Just to see what different cultures in

22    gangs are doing in different places.

23         Q.   Okay.  And how do you find information

24    about different cultures in gangs on the internet?

25         A.   There is different law enforcement web
```

SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                                FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2893

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 248

1    sites that I will print out.  For example, I believe

2    one is Code 10, or Code 1, that give information

3    about what's going on in different prisons and the

4    gang activity, or security threat gangs on the

5    internet.  Whenever I see any of these things,

6    usually I'll try to contact the individuals for more

7    information on topics.

8         Q.    So are these, like, websites where law

9    enforcement officers, corrections officers, would

10   share stories about gangs and information they have

11   about gangs?

12        A.    No.  Usually, it's counterparts.

13        Q.    Usually it's what?

14        A.    Counterparts, like gang unit officers.

15        Q.    From different prisons?

16        A.    Or different law enforcements, like Las

17   Cruces, or Albuquerque.

18        Q.    Okay.

19        A.    The Bernalillo County Sheriff's Department

20   Gang Unit.

21        Q.    Okay.  And you regularly visit these

22   websites?

23        A.    No.

24        Q.    Code 10 or Code 1?

25        A.    No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2894

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 242895

1          Q.   Occasionally?

2          A.   I have, though.

3          Q.   And apart from reading what they say, do

4    you do anything to validate the veracity of the

5    information that you obtain from the website?

6          A.   Usually, it's the same information we have,

7    as far as gang culture and gang activity.

8          Q.   So with respect to becoming an STIU

9    officer, what are the requirements, according to the

10   New Mexico Department of Corrections?

11         A.   It's been a long time.  You just have to --

12   you have got be a person that doesn't have any

13   misconducts, a person of good character.

14         Q.   Do you have to be a correctional officer?

15         A.   No.

16         Q.   So you have to be a person that doesn't

17   have a history of misconduct.  And I think you said

18   you have to be able to read and write.  Are there any

19   other requirements that you're aware of?

20         A.   Probably a basic knowledge of gangs.

21         Q.   You said "probably," so is that a

22   requirement?

23         A.   Well, in 2006 -- I'm sure the criteria has

24   changed now -- but in 2006, when I first started, I

25   had an application.  I applied.  I was interviewed by

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                          1-800-669-9492
                                                             e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2895

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 250   2896

1    a panel, and I was picked.  And so I did ask that

2    person:  So has the criteria changed now?  I don't

3    know.  I've never applied again for --

4        Q.    Once you're in, as long as you don't commit

5    some sort of misconduct, you stay in, or promote out?

6        A.    Correct.

7        Q.    Now, does the New Mexico Department of

8    Corrections have --

9            Let me go back for a second.  Ms. Armijo

10   asked you some questions about Security Threat Groups

11   and disruptive groups?

12       A.    Correct.

13       Q.    Do those terms have specific definitions?

14       A.    They do.  They vary a little.  I don't know

15   specifically.  I'm not -- I'm not specifically sure

16   what they say, other than an organized group of three

17   or more individuals that are -- that compile the same

18   signs, symbolisms, and conduct criminal activities;

19   disruptive groups haven't met the same criteria to be

20   validated -- the disruptive groups haven't met the

21   same criteria to be validated or certified as

22   validated groups, STG groups.

23       Q.    So is that -- first of all, let me just

24   make sure I understand what you're saying.  Are you

25   saying that a Security Threat Group and a disruptive

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2896

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 251

```
 1    group are defined by the same criteria?
 2         A.   Other than organization, yes.
 3         Q.   And is there somewhere in the New Mexico
 4    Department of Corrections' regulations, policies, and
 5    procedures manuals that define specifically what a
 6    Security Threat Group is and what a disruptive group
 7    is?
 8         A.   Yes.
 9         Q.   And can you tell me where that is?  What's
10    the policy?
11         A.   I couldn't tell you right offhand what the
12    policy is.
13         Q.   Is there something you need to look it up?
14         A.   The policies of the New Mexico Corrections
15    Department, yes.
16         Q.   Okay.  So you could look that up this
17    evening, and let us know tomorrow, right?
18         A.   I could let you know tomorrow, yes.
19         Q.   Okay.  And do you know the number, the
20    chapter that those policies and procedures or
21    definitions would be located in?
22         A.   I don't.
23         Q.   And the information that you just gave me
24    about an organized group of three or more individuals
25    with a sign or symbol that engage in criminal
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    activity, is that a paraphrasing or what you can best

2    remember at this point about how a security threat

3    group is identified, or is defined?

4         A.   I'm paraphrasing.

5              MR. SINDEL:  I'm sorry.  I can't hear.

6              THE COURT:  He's paraphrasing.

7              MR. SINDEL:  Thank you.

8         Q.   And do you know how the New Mexico

9    Department of Corrections came up with a definition

10   of what a Security Threat Group is?

11        A.   I'm not sure, ma'am.  I know I've seen it

12   in other prison policies.  But a lot of our policies

13   come from state statutes, so I'm not sure if that's

14   where it came from.

15        Q.   So as you sit here today, you don't know

16   the origin of that?

17        A.   No, ma'am.

18        Q.   And did you have anything to do with how

19   that group, the Security Threat Group was defined?

20   Did you sit in on policy discussions, or --

21        A.   I did not.

22        Q.   So, by the time you joined the STIU, was

23   that already something that was defined as a security

24   threat group versus a disruptive group?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2898

1        Q.    And then I think you were also asked some

2   questions about the criteria for trying to validate

3   or attempting to validate a prison inmate as a gang

4   member.  Do you recall those questions?

5        A.    To validate an individual as a security

6   threat group.

7        Q.    Yes.  I think there was list of criteria.

8   I'm looking at Exhibit 18.  Can you see Exhibit 18,

9   page 3?

10       A.    Yes.

11       Q.    Is there a regulation of the New Mexico

12  Department of Corrections that outlines this list of

13  criteria as criteria for validating somebody, or

14  attempting to validate somebody as a gang member?

15       A.    That would fall under the STIU policy.

16       Q.    Okay.  And do you know what policy,

17  specifically, that is?

18       A.    I couldn't say for sure.

19       Q.    Can you give us an indication, maybe what

20  chapter or what section of the policy and procedure

21  manual that would be in?

22       A.    No, that's my weakness there; policy, as

23  far as numbers.  Whenever I look policy up, I usually

24  go in to the policies that I need.  But I don't ever

25  refer -- I mean, I don't memorize the policy number.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2899

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 254900

```
 1          Q.   This type of criteria, did you have any

 2    input about how this was developed, as how this would

 3    help you determine whether somebody is a gang member

 4    or not?

 5          A.   That was before I started STIU.

 6          Q.   And do you know anything about the

 7    reasoning behind it?

 8          A.   Well, that would be to establish whether

 9    the individual is a suspected gang member or a

10    validated gang member.

11          Q.   That's the ultimate goal.  But I mean, do

12    you know anything about the reasoning behind it?  For

13    example, why you would consider, say number 8, group

14    photos?

15          A.   I don't.

16          Q.   What's the policy behind that?

17          A.   I don't.

18          Q.   And just as an example, inmates aren't

19    allowed to have cameras in prison, right?

20          A.   Correct.

21          Q.   So when photos are taken of inmates in

22    prison it's with the prison's cooperation?

23          A.   Correct.

24          Q.   The prison actually facilitates it?

25          A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          Q.   And it's a perk to some inmates to have

 2    pictures to send out to family and friends?

 3          A.   I believe they have to pay for it.

 4          Q.   They have to pay for it?

 5          A.   Correct.

 6          Q.   But it's a privilege that can be denied if

 7    an inmate is misbehaving, right?

 8          A.   I'm not sure if that falls into the

 9    category of discipline, that he can't take a picture

10    or he can take a picture.

11          Q.   Okay.  Going back to just the idea of

12    pictures:  The prison controls how the picture can be

13    taken, right?

14          A.   At the request of the inmate.

15          Q.   And when it can be taken?

16          A.   Yes.

17          Q.   And who is going to take it?

18          A.   Usually, the guy with the camera.

19          Q.   And who is permitted in the area where the

20    photography is going to occur, right?

21          A.   I don't know.

22          Q.   You don't know how photographs are taken of

23    prison inmates?

24          A.   I would imagine, if individuals want to

25    take pictures, they would say who they wanted in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2902

 1   their picture and who they wouldn't want in their

 2   picture.

 3       Q.   I want to show you an exhibit that's been

 4   marked as Government's Exhibit 23.  This is a picture

 5   that you talked about -- I think Ms. Armijo asked you

 6   some questions about this picture, and whether this

 7   picture had people that were all SNM members.  Do you

 8   recall those questions?

 9       A.   Yes.

10       Q.   And I just want to follow up on that for a

11   second, okay?

12       A.   Okay.

13       Q.   Does the New Mexico Department of

14   Corrections have a policy of housing people who are

15   suspected or validated SNM members together in the

16   same pod?

17       A.   Yes.

18       Q.   And do they do that because they think, if

19   they do that, people will get along more easily;

20   there will be less friction?

21       A.   They're segregated because they're a

22   Security Threat Group.

23       Q.   And so if photo day comes to, say, a pod at

24   Southern New Mexico Correctional Facility, do you

25   know whether it's possible for inmates to take photos

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2902

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 257

```
 1   with people from other pods?
 2       A.   I don't know that.  But I would speculate
 3   that they're not allowed to.
 4       Q.   And looking at Government's Exhibit 23, do
 5   you know whether every single individual in that
 6   photograph was housed in the same pod on the day that
 7   picture was taken?
 8       A.   I couldn't tell you if they were or not.
 9   But I believe they were all in the same pod.
10       Q.   Okay.  Well -- and if we're talking about
11   there is rarely a situation where a non-SNM member,
12   or SNM suspect, would be in a photo with the SNM
13   members; do you recall that testimony?
14       A.   Yes.
15       Q.   But that's because SNM members and suspects
16   are segregated from non-SNM members?
17       A.   I believe I was referring to the time that
18   they were in a population setting with other
19   individuals that were not SNM members.  So that would
20   have been prior to them being segregated.
21       Q.   And what year, to the best of your
22   recollection, were they segregated?
23       A.   2001, 2002.
24       Q.   So any photograph taken of SNM members
25   after 2001 or 2002, would necessarily have included
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258 2904

```
 1   more than one person, contain people that the prison,
 2   the New Mexico Department of Corrections believe were
 3   validated SNM members or suspects, just by
 4   definition?
 5       A.   Are you asking me if -- can you ask me the
 6   question again?
 7       Q.   What I'm asking you is:  Let's just say for
 8   a second, I'm an SNM member, okay, and I'm housed in
 9   an SNM pod, and photo day comes around --
10       A.   Right.
11       Q.   If I want to get my picture taken with
12   somebody that's not an SNM member, how am I going to
13   do that if I can't leave the pod?
14       A.   Right.  You wouldn't be able to.
15       Q.   Okay.  So the significance of everybody in
16   Government's Exhibit 23, being an SNM member or
17   suspect, is a result, really, of the Department of
18   Corrections housing policy?
19       A.   Correct.
20       Q.   Not of individuals' decisions to exclude
21   others from the photograph?
22       A.   Correct.
23       Q.   So if I understand your testimony
24   accurately, one of the duties that an STIU officer
25   has is to put together these validation packets on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2904

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2905

```
 1   various prison inmates?
 2        A.   The validation packets.
 3        Q.   Similar -- so that we're talking about the
 4   same thing -- this Exhibit 18 that Ms. Armijo showed
 5   you regarding Mr. Baca.
 6        A.   Usually, those validation packets are put
 7   together -- or the packets are put together on gangs
 8   or gang affiliation during their Reception and
 9   Diagnostic Center, when they first enter the prison.
10        There is some occasion where we find an
11   individual that's gang associated within the prison,
12   when they've been there maybe a couple of years or so
13   that would identify them; then, yes, we would start
14   the packet.
15        Q.   Okay.  So the majority of the packets would
16   be put together right as a person enters prison?
17        A.   Correct.
18        Q.   And so that would not be done by somebody
19   in the STIU?
20        A.   It would be done by STIU.
21        Q.   Okay.  It would be, but they'd be at the
22   Reception and Diagnostic Center?
23        A.   Correct.
24        Q.   And then these packages are then circulated
25   within the prisons?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2905

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2906

```
 1          A.   No, the packet -- the file stays wherever
 2    the inmate is.
 3          Q.   And people in the STIU office have access
 4    to the file?
 5          A.   They're secured.  But yes.  They're in a
 6    secured location within the coordinator's office.
 7          Q.   So would you have to physically go and look
 8    at the file in the coordinator's office if you wanted
 9    to review it, or is there a computer database as
10    well?
11          A.   You would have to physically go.
12          Q.   Physically go?
13          A.   Yes.
14          Q.   And where are these files kept?  What
15    prison or what coordinator's office?
16          A.   Wherever the STIU coordinator is for that
17    prison, they're kept under his care.
18          Q.   So there would be a coordinator's office in
19    each prison?
20          A.   Yes.
21          Q.   So the STIU officers from that particular
22    prison could access the packets?
23          A.   Correct.
24          Q.   And would you agree with me that the
25    information in these packages -- well, tell me the
```

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2906

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 261 2907

```
 1    source of the information in a package like this, the

 2    sources?

 3         A.   What the sources would be?

 4         Q.   Correct.  They'd be, for example, the

 5    inmate -- possibly, the inmate himself, right?

 6         A.   Um-hum.

 7         Q.   Correctional officers?

 8         A.   No.  I'm not sure what your question is.

 9         Q.   Well, I'm asking you, if somebody is

10    putting together a package like this?

11         A.   The STIU is the only ones that put packages

12    together.

13         Q.   And you were an STIU officer, right?

14         A.   Correct.

15         Q.   So did you put together packages like this?

16         A.   I have put packages together.

17         Q.   Okay.  And so where did you get the

18    information that you put in this type of validation

19    package?

20         A.   Well, it's -- let's say, for example, that

21    I found an individual that was self-admitted to be to

22    me that he was a gang member when I'm interviewing

23    him --

24         Q.   Okay.

25         A.   -- then the packet is already -- we already
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2907

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 262

 1    have packets made.  So what we do is we download them

 2    into our file -- I mean to our computers.  And then,

 3    once we go talk to the inmate, then we take what we'd

 4    call a questionnaire.

 5            If we found if there is already an existing

 6    file for -- let's say, for example, an inmate is

 7    already known to be a gang member, and we found more

 8    information to gang activity, then we would

 9    categorize it in the file where it goes:  If it's

10    photographs, under photographs; if it's tattoos,

11    under tattoos; if it's other information, under other

12    information.

13        Q.   If it's law enforcement reports, you obtain

14    copies of those reports?

15        A.   Yes.

16        Q.   If it's -- I think you talked about, if an

17    inmate self-admits, there would be a form that would

18    show that the inmate self-admitted?

19        A.   Correct.

20        Q.   If it's confidential information from other

21    inmates, that would be placed in this file?

22        A.   Correct.

23        Q.   And if it's information from correctional

24    officers, that would be placed in this file?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2908

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 263 2909

1        Q.    And if it's information --

2        A.    If it's credible.

3        Q.    I want to get to that in a second.  But I

4   want to get an idea first of the kind of information.

5              Oh, if it's intercepted communications,

6   such as letters, would that be placed in the file?

7        A.    Yeah, they could, yes.

8        Q.    If it's intercepted communications, such as

9   telephone calls, what happens with those?

10       A.    The telephone calls, we can download them,

11   a recording of them, and sometimes we'll do bullet

12   points.

13       Q.    Sometimes you'll do bullet points?

14       A.    Yes.

15       Q.    Like a memo stating:  Here is what was

16   discussed in the phone call?

17       A.    Correct.

18       Q.    And place that in the file?

19       A.    Correct.

20       Q.    And then save the actual phone call?

21       A.    Yes, on an alert form.

22       Q.    So I want to ask you about the regulations

23   that the New Mexico Department of Corrections has

24   about putting information into the file, okay?

25              Is there a regulation that says:  Before

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2909

```
1    information can be put in a file it has to be
2    validated?
3         A.   Yes.
4         Q.   And can you tell me the number of that
5    policy and procedure regulation?
6         A.   I couldn't.
7         Q.   Can you tell me the chapter that's located
8    in?
9         A.   No.
10        Q.   Can you tell me the text of the policy or
11   procedure that requires the validation of
12   information?
13        A.   No.   I believe it's under CI policy,
14   though.
15        Q.   So what you're thinking of would be some
16   effort, or some regulation about validating
17   information from informants before it's placed in the
18   file?
19        A.   Correct.
20        Q.   So that would apply only to that category
21   of information?
22        A.   I'm not sure what your question is.
23        Q.   Can you tell me what the policy and
24   procedure about verifying CI information -- what it
25   is; what does it require as an STIU officer to do?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2910

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2911

```
 1        A.    Well, it depends what it is.  For example,
 2   if I have CI information that this individual is
 3   telling me that another inmate is a Sureno, or
 4   whatever gang member, and my question, of course,
 5   would be:  How do you know that?  And if they say
 6   they've indicated to us that that's where they're
 7   from, that's where they're saying they're from, and
 8   also they have letters and/or symbolism in their
 9   personal property, then to verify, we check the
10   inmate's property to verify that that's true.  And
11   usually, we'll interview the inmate to find out if
12   that's true.
13            Usually, inmates that are gang members for
14   the most part will tell you they're gang members.
15        Q.    And so in that scenario you gave me, the
16   information from the informant would be verified or
17   corroborated by the inmate's admission, property from
18   the inmate's cell --
19        A.    Correct.
20        Q.    -- perhaps the inmate's tattoos?
21        A.    Right.  Because I couldn't say -- if
22   somebody came to me and said:  This individual is an
23   SNM member, and I could not corroborate that, I'm not
24   going to place that guy as an SNM suspect or a
25   member, because I don't know that to be true.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2911

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2912

1          Q.    Okay.  And I understand you're saying you

2     wouldn't do that.  My question is, is there something

3     in the policy and procedures of how the STIU unit is

4     supposed to operate that would prohibit someone --

5          A.    That's something that the coordinator

6     oversees.  The STIU coordinator at every prison

7     oversees that, to make sure that doesn't happen.

8          Q.    To make sure that doesn't happen?

9          A.    Correct.

10         Q.    So that wouldn't be your responsibility as

11    an officer?

12         A.    No.

13         Q.    It would be the coordinator's

14    responsibility?

15         A.    Correct.

16         Q.    And my question, I think that I was in the

17    middle of asking was, is there a specific New Mexico

18    Department of Corrections regulation that says as an

19    STIU officer you cannot put confidential information

20    into an inmate's validation package unless it's

21    corroborated?

22         A.    I'm not sure it says it that way, but I'm

23    sure there is a policy on it.

24         Q.    But it's a policy you don't know?

25         A.    It's a policy, most likely, in the STIU

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2912

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267

```
 1   policy.

 2        Q.   Okay.  What is the policy?

 3        A.   I don't know.

 4        Q.   And how long have you been working as an

 5   STIU officer?

 6        A.   Eleven years.

 7        Q.   I think you were asked some questions

 8   earlier.  We talked about adding things to an

 9   inmate's validation package.  I think you were asked

10   some questions earlier about removing things.

11        A.   Correct.

12        Q.   And first of all, I want to ask you, is

13   there a Department of Corrections policy or procedure

14   or regulation that talks about when something has to

15   be removed from somebody's, quote, "validation

16   package?

17        A.   I believe there is.  I believe the inmate

18   has to request that.  If he's not an active gang

19   member for a certain amount of time, he can request

20   an investigation into that.  And that's how they're

21   removed, or the individual is -- denounces.  But

22   rarely is that ever done.

23        Q.   Well, I just want to go back to what the

24   process is, if there is a process.

25        A.   I'm not sure, because I've never really
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2913

1    seen it done.

2         Q.   Okay.  You've never removed any?

3         A.   I never have, no.

4         Q.   And you haven't seen anybody else that

5    you've worked with remove anything?

6         A.   No.

7         Q.   And do you know what the regulation or

8    policy or procedure is for removing something as you

9    sit here?

10        A.   No.  No, the reason I don't know, most

11   likely, is because I've never really had to do that,

12   so I've never gotten to see what the policy is on

13   that, or if that is a policy on it.

14        Q.   Okay.  Is there a policy or procedure or

15   regulation that allows an inmate to contest

16   information in this validation package put together

17   by the Department of Corrections?

18        A.   I don't believe there is.

19        Q.   And can you tell me, in 2014, who the

20   administrative coordinator was for STIU at Southern

21   New Mexico Correctional Facility?

22        A.   I believe it was Daniel Blanco.

23        Q.   And what about the administrative

24   coordinator at PNM --

25        A.   Adam Vigil.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2914

1        Q.    -- I'm sorry, during that time period?

2        A.    Adam Vigil.

3        Q.    And are administrative coordinators in the

4   STIU people that were formerly STIU officers that

5   then promoted to that position?

6        A.    No.

7        Q.    Do you know the criteria or the

8   requirements for somebody to obtain that position?

9        A.    No, I don't.

10        Q.    During your time as an STIU officer, did

11   you receive any training or instruction in how to

12   follow the policies and procedures of the Department

13   of Corrections, to ensure that you were accurately

14   and reliably classifying inmates according to the

15   regulations?

16        A.    I'm sure I had some training in that, yes.

17        Q.    Okay.  Can you tell me when you had

18   training and how much it was?

19        A.    I think I went to the diagnostic and

20   reception area and learned their procedures on how to

21   build files.  But primarily, that wasn't in my area

22   or my field of my operation as an STIU officer.

23   That's primarily something that was done at RDC.  So

24   the fact that, you know, I don't know a whole lot

25   about the files is because I really don't deal with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2915

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2916

1    them too much, other than review them, or look into

2    them when I need information from them.

3         Q.   You use them for information, right?

4         A.   Correct.

5         Q.   And you rely on the fact that somebody else

6    produced them in some sort of hopefully accurate or

7    credible manner, right?

8         A.   Correct.

9         Q.   And as part of your -- was your term at the

10   reception center in learning about building these

11   files, was that at the beginning of your appointment

12   as an STIU officer?

13        A.   Correct.

14        Q.   So 10 years ago?

15        A.   About 11 years.

16        Q.   Eleven years ago.  And that was how long of

17   a rotation through that diagnostic center did you

18   have?

19        A.   About a day or so.

20        Q.   I'm sorry?  One day?

21        A.   About a day or so.

22        Q.   And the regulations that govern the

23   designation of individuals as gang members, and how

24   you back that up as a corrections officer, how many

25   pages of regulations are there in the New Mexico

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2916

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2917

```
 1    Department of Corrections regarding that issue?
 2         A.   I don't know.
 3         Q.   Is it, you know, tens of pages, hundreds of
 4    pages?
 5         A.   No, not that many.  I'm not sure -- let me
 6    see if I understand your question.  Are you asking me
 7    how many pages are there to build a file?
 8         Q.   No, I'm asking you about the regulations.
 9    You said you spent about a day sort of learning about
10    the regulations and how these files are supposed to
11    be built, right?
12         A.   Right.
13         Q.   So you spent about a day doing that.  I'm
14    trying to get an idea of how much information you
15    were trying to assimilate in that short time period.
16         A.   Well, the regulations or the procedure
17    would be for interviews when an individual comes in,
18    and a gang identification, if he offers any details,
19    or if he has any more information that would properly
20    indicate that he's gang affiliated.  Those are all
21    things that are entered into.  So those are all done
22    at the reception.
23              Again, you're asking me questions that I
24    did 11 years ago.  So I'm not too familiar with that.
25    Usually, with the gang files that we have, they're
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                    1-800-669-9492
                                                          e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2917

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 272918

```
 1   already -- they're done.
 2        Q.   Well, I think what you're telling me is the
 3   way you rely on the files now is you just assume
 4   they're true?
 5        A.   Well, yeah.
 6        Q.   And you assume they're true, but you don't
 7   have any -- you don't have any responsibility for
 8   checking the information to make sure they're true?
 9        A.   No, that's the coordinator's job.  He
10   allotted them.
11        Q.   And my question was how many pages are
12   these regulations that talk about the criteria and
13   how you're supposed to go about evaluating
14   information and placing it in these files?  Do you
15   remember?  I realize it was 11 years ago, but --
16        A.   I think there is a couple of forms there
17   that indicate to you, the index form that tells you
18   what goes into the file, and what the procedures are.
19        Q.   So it sounds like the answer is "I don't
20   know" or "I don't remember."
21        A.   Correct.  I don't remember.
22             THE COURT:  Ms. Jacks, let me pause here.
23   I'd like to try something here.  This will require
24   all of us to work together.  I need to let Ms. Bean
25   rest her fingers for a few minutes before we plow
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2918

```
 1    ahead.  I'm not going to go any later than 5:30, but
 2    I'd like to get a little more time in.  If I could
 3    get the defendants to stay in place.  We're only go
 4    to go to 5:30, stay in place.  Let Ms. Bean rest her
 5    fingers just long enough.  If counsel want to slip
 6    out and use the restroom or something real quick,
 7    that's fine.  We'll take our cue from her.  Let's
 8    take a little bit of a break, see how long she takes
 9    to rests her fingers, we'll come back in.  If the
10    defendants can stay here.  We'll be done at 5:30 and
11    get you on the road.  All right.  Let's try this.
12    We'll be in recess for a few minutes.
13              (The Court stood in recess.)
14              THE COURT:  Let's see if we can get
15    everybody back in and seated.  All right.  Everybody
16    got an attorney?  Look around, help your co-defendant
17    there.  Everybody got an attorney?  All right.
18              MS. JACKS:  We need a witness.
19              THE COURT:  All right.  Mr. Martin, if
20    you'll return to the witness box.  I'll remind you
21    you're still under oath.
22              Ms. Jacks, if you want to continue your
23    cross-examination of Mr. Martin.  And thank you, I
24    appreciate everybody cooperating.  We get a little
25    more work done this afternoon.  Ms. Jacks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2919

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 274920

```
 1              THE COURT:  Ms. Jacks.
 2              MS. JACKS:  Thanks.  I'm going to wait till
 3     he gets seated.
 4         Q.   Okay.  So, Mr. Martin, I want to move on to
 5     a different subject matter.  Because I think after
 6     she talked to you about the validation criteria, Ms.
 7     Armijo asked you if you'd reviewed this document.
 8     And what I'm putting up here is Document 1299, which
 9     is the Government's notice of experts.  And I believe
10     you indicated to her that you had reviewed it.
11         A.   Correct.
12         Q.   And then she asked you:  Do you agree with
13     page 1 through 6 of this document?  And I think you
14     said you did; is that right?
15         A.   Correct.
16         Q.   Can you summarize for me what's on page 1
17     through 6 of Document 1299 that you agree with?
18         A.   Looking at it now, the only thing I
19     disagree with is that they put me down as unit
20     coordinator.
21         Q.   Okay.  Wait, so you -- okay, you're looking
22     at page 1 of the document now, right?
23         A.   Correct.
24         Q.   And you see something on there you disagree
25     with now?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2920

```
 1         A.   Yes.  I haven't read it before.  I was the
 2    sergeant of STIU, not unit coordinator.  That was an
 3    oversight on my part.
 4         Q.   Okay.  So let me see if I can mark that on
 5    this document.  You're looking here on the paragraph
 6    "Proposed Expert Testimony, where it says "Unit
 7    Coordinator Martin"?
 8         A.   Correct.
 9         Q.   Now that you're looking at it more
10    carefully, you're saying that you were actually a
11    sergeant?
12         A.   Correct.  I was sergeant, I wasn't the unit
13    coordinator.
14         Q.   Okay.  Do you remember what's on the other
15    pages, the rest of page 1, and pages 2 through 6,
16    that you testified you agreed with?
17         A.   Not without looking at it.  Yeah, but I
18    hadn't read it before.  I had an oversight on that.
19         Q.   On your title?
20         A.   Correct.
21         Q.   With respect to this document, and pages 1
22    through 6 -- first of all, did you write this
23    document, 1299?
24         A.   No, I did not.
25         Q.   Did you contribute information to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2921

1   Government lawyers so that they could write it?

2       A.   Yes, I did.

3       Q.   Okay.  And when did you do that?

4       A.   I'm not sure if it was six months ago or

5   more or -- I'm not sure.  I know that -- I'm not

6   sure.

7       Q.   Did you give them something in writing or

8   did you sit down with them and talk about things

9   verbally?  Or how was your contribution made?

10      A.   Yes, I gave them something in writing.

11      Q.   And do you remember what that was?

12      A.   I believe it was a CV that I had written.

13      Q.   Oh, you gave them your CV.  But let me be

14  more specific.  With respect to the content of pages

15  1 through 6, regarding the expert opinions, did you

16  provide the Government with some sort of input as to

17  those opinions?

18      A.   I may have.

19      Q.   Well, did you or didn't you?

20      A.   I don't remember.  But I know that I had a

21  general conversation with them about it, yes.

22      Q.   Okay.  I want to be very specific.  Prior

23  to this document being produced, did you provide the

24  Government with anything in writing regarding the

25  nature of these opinions that are reflected in pages

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2922

1    1 through 6?

2         A.   Did I give them anything in writing to

3    indicate that I'm an expert?

4         Q.   No, regarding the nature of these expert

5    opinions that are supposedly contained in pages 1

6    through 6.

7         A.   I think I wrote them something.

8         Q.   Okay.  And my question is:  What did you

9    write them and when did you write it?

10        A.   I don't remember when I wrote it, but I'm

11   sure I wrote it.

12        Q.   May I see it?  Do you have a copy?

13        A.   No.

14        Q.   How did you transmit your writing about

15   these opinions to the Government?  Did you email it?

16   Did you mail it?  Did you hand it to them?

17        A.   I may have emailed them.

18        Q.   So does that mean you did or you didn't?

19        A.   Well, I know we've had conversations,

20   verbal conversations.  So I'm not sure if some of

21   those verbal conversations are in here or something

22   that I wrote.

23        Q.   Okay.  Well, how could you be sure?

24        A.   If I still have the writings.

25        Q.   In your emails or in your -- on your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2923

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2924

```
 1   computer?
 2        A.   Right.
 3        Q.   So that's something you can check for us
 4   tonight, right?
 5        A.   Yes.
 6        Q.   And that would help us see what you
 7   actually told the Government and when?
 8        A.   Correct.
 9        Q.   Okay.  Prior to today, had you reviewed
10   this Document 1299?
11        A.   No, it was not shown to me other than
12   today.
13        Q.   You saw it for the first time today?
14        A.   Today or yesterday.
15        Q.   And I wanted to start with some of the
16   first information in it that you testified that you
17   agreed with.  And that's under A.  It says that
18   you're going to testify about the "history, culture,
19   codes of conduct, methods of operation, and
20   communication, and the behaviors of the SNM Security
21   Threat Group."
22        A.   Okay.
23        Q.   Okay.  So my question to you is:  How did
24   you become aware of the history of the SNM?
25        A.   Through interviews and -- mainly through
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2924

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

1    interviews, and also coworkers, when I first started

2    at the Corrections Department.

3        Q.   So your knowledge about the history of the

4    SNM is through interviews of inmates?

5        A.   Of individuals that were original members

6    of the SNM.

7        Q.   Inmates, prison inmates?

8        A.   Correct.

9        Q.   And in discussions with coworkers in the

10   STIU unit?

11       A.   When I first started Corrections would be

12   in 1993.  Some of the veteran officers had explained

13   to me some of the history of the SNM.  And during my

14   time in STIU, and through interviews, I've come to

15   know that -- the history of the SNM.

16       Q.   So through word of mouth of other people is

17   how you've become aware of the history?

18       A.   Yes.  Corroborated by inmates that were

19   originators of the SNM, yes.

20       Q.   And did you prepare any sort of writings or

21   memo or contemporaneous notation about these

22   interviews and conversations as they occurred?

23       A.   Yes.

24       Q.   And where is that?

25       A.   It's property of STIU.  I'm no longer in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2926

```
 1    STIU.  But I'm sure they have it.
 2         Q.   So there is a writing in the STIU that you
 3    prepared regarding the history?
 4         A.   I'm sure there is.
 5         Q.   Can you tell us what it was entitled or
 6    when you authored it?
 7         A.   If I wrote the history of the SNM, it would
 8    be just individual interviews.  Those would be
 9    interviews.  Also, listening to recorded testimony or
10    recorded interviews from the -- I believe it was the
11    Bernalillo County Sheriff's Department interviews
12    with ex-members that were original members of the
13    SNM.
14         Q.   Let's move on to the second thing, the
15    culture of the SNM.  How is it that you have an
16    opinion about the culture of the SNM?  What
17    information informs that opinion?
18         A.   The same.
19         Q.   Interviews with inmates, other officers?
20         A.   SNM members.
21         Q.   SNM members, and listening to recordings
22    that other people had made of interviews with
23    inmates?
24         A.   Correct.
25         Q.   Okay.  The codes of conduct.  How is it
```

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                       1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                       e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2927

```
 1    that you're able to form some sort of opinion

 2    regarding that?

 3        A.   Those, again, with interviews and

 4    documentation on those.

 5        Q.   What do you mean "documentation"?  I'm

 6    sorry.

 7        A.   I've seen documentations of their code of

 8    conduct.

 9        Q.   So documentation prepared by alleged SNM

10    members?

11        A.   Confiscated from SNM members.

12        Q.   And do you have copies of that

13    documentation?

14        A.   I don't, no.

15        Q.   Can you tell us when you obtained it or

16    looked at it?

17        A.   I believe, when I was working at Southern

18    as an STIU officer -- I mean, STIU gang unit officer.

19        Q.   And when did you come into possession of

20    this documentation, what year?

21        A.   I don't believe I found them.  I believe

22    one of the coworkers found them.  And I'm just saying

23    I witnessed them.

24        Q.   So you looked at them?

25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2927

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 282 2928

```
 1        Q.   And you don't know where that documentation

 2   is now?

 3        A.   No.  But also with the interviews of

 4   inmates on the code of conduct, to be more specific,

 5   with individuals that have denounced.

 6        Q.   And just going back to that documentation

 7   do you know where the documentation came from, or how

 8   it was -- came into the possession of a correctional

 9   officer?

10        A.   Correctional officer?  No, STIU unit.

11        Q.   Of an STIU officer?

12        A.   I believe during a cell search they may

13   have found them.

14        Q.   Do you know whose cell and when?

15        A.   I am not -- I don't remember.

16        Q.   Let's go to methods of operation and

17   communication.  Is your opinion about methods of

18   operation and communication again based on

19   conversations with inmates and other correctional

20   officers, reviewing reports?

21        A.   Yes, and also individuals that had been

22   active members that have stated this as well.

23        Q.   Well, that would be interviews of inmates,

24   right?

25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2928

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2929

```
 1          Q.   Or former inmates?
 2          A.   Former inmates, and also active inmates
 3     that are members of the SNM.
 4          Q.   Okay.  And the behaviors of the SNM, what
 5     informs your opinion as to that?
 6          A.   Their behaviors is again, interviews, time
 7     and experience, eyewitnessing SNM behaviors.
 8          Q.   So with respect to that one criteria,
 9     behaviors, you, because you were present in the
10     prison, actually saw some behavior yourself?
11          A.   Right.  And also talking to members of the
12     SNM.
13          Q.   Okay.  Is there anyplace where you've
14     compiled these interviews and conversations and
15     observations that were made into something that you
16     can reference today, or that somebody else could
17     reference?
18          A.   Depending on what facility I was, those
19     were always turned in to the coordinator.
20          Q.   Do you know where any of that stuff is now?
21          A.   I don't.
22          Q.   Let's go to the second thing, B, the
23     specific membership and affiliation of the defendants
24     and victims in SNM.  Is that something that you have
25     an opinion about?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 284930

```
 1          A.    The specific membership and affiliation?
 2          Q.    Correct.  I mean, are you -- do you have
 3   some sort of opinion about every defendant seated in
 4   this room, about whether they're members or
 5   affiliates of SNM?
 6          A.    Usually, if we have written down
 7   information on individuals and it's in their file,
 8   then, yes, I would have to read that file, and I
 9   would have an opinion, yes.
10          Q.    So what you're saying is -- we were talking
11   about the validation packet of Mr. Baca as Exhibit
12   18.
13          A.    Correct.
14          Q.    And what you're saying is that you could
15   have an opinion about somebody's membership or
16   affiliation with SNM based on reviewing this file,
17   and then just telling us what you think the file
18   says?
19          A.    No.  I also have information on what other
20   individuals have told me --
21          Q.    Okay.
22          A.    -- or what he's told me himself.
23          Q.    I'm sorry?  What other individuals have
24   told you or what the suspected SNM member has told
25   you himself?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Correct.

2        Q.    Do you have admissions of SNM membership

3   from every -- do you personally have admissions of

4   SNM membership from every defendant seated here in

5   this courtroom?

6        A.    No.

7        Q.    So for any defendant who hasn't personally

8   admitted to you that they're a member of SNM, your

9   opinion would be based on your review of these

10  packages that were prepared regarding validation of

11  an inmate?

12       A.    Yeah, based on whatever information we have

13  in our computer system and what's in their file.

14       Q.    Okay.  I'm confused, because I thought --

15  what is different between your, quote, "computer

16  system" and this validation packet?

17       A.    There is also a classification file kept on

18  inmates, as far as their court documentation, what

19  they've done in court, or their history of doing time

20  in the New Mexico Corrections Department.

21             Also, our Criminal Management Information

22  System might have some things that are not contained

23  within that file as well.  So I would have to

24  research some things on them in order to come up with

25  a conclusion whether they're an SNM member or not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2931

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2932

 1   based on the information that I have that's provided.

 2       Q.   And are you personally responsible for

 3   inputting information into the CIM system?

 4       A.   No.

 5       Q.   And are you personally responsible for

 6   putting together the classification files?

 7       A.   No.

 8       Q.   And would you agree with me that those two

 9   sources of information are simply compiling

10   information from other sources?

11       A.   Correct.

12       Q.   So would it be your -- or it was your

13   understanding -- let me just go back.

14            What did you think that you were saying

15   when you said that you were going to testify or you

16   were going to -- yeah, testify -- to the specific

17   membership and affiliation of the defendants and

18   victims in the SNM?  I mean, did you think you were

19   going to have to go through all those things, and

20   then research it and come up with a conclusion as to

21   each person sitting here in court?

22       A.   A lot of them I know.  A lot of them I've

23   interviewed before.

24       Q.   I think you said you interviewed some, but

25   not all.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2933

```
 1        A.    Correct.
 2        Q.    So as to the ones that you haven't, was it
 3   your understanding that, in order to formulate some
 4   sort of opinion, you were going to have to review
 5   those things?
 6        A.    Correct.
 7        Q.    And have you done that before today?
 8        A.    No.
 9        Q.    So as you sit there right now, you don't
10   know what your opinion would be as to the specific
11   membership and affiliation of each defendant in this
12   courtroom?
13        A.    Correct.
14        Q.    I'm going to go to the next one.  This is
15   page 2, C.  The next thing that it's represented
16   you're going to testify to is, in general, and
17   specific to the SNM, Security Threat Group sanctions.
18   I'm just going to go piece by piece.
19        A.    Okay.
20        Q.    So that's something you have an opinion on?
21        A.    Correct.
22        Q.    And can you tell me what does it mean?
23   Security Threat Group sanctions?
24        A.    Sanctions are violations that are broken
25   within the prison gang, rules that are broken, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2933

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2934

```
 1   the sanctions that they would get.
 2        Q.   So, basically, what's being represented
 3   here is that you're prepared to testify in general,
 4   gangs in general, and specifically the SNM, what kind
 5   of sanctions might be imposed if a member violated
 6   some sort of rule, right?
 7        A.   Correct.  Like if he ratted on someone,
 8   pretty much, he would be given the death penalty.
 9        Q.   And so my question is:  What informs or
10   what's the basis of that opinion?  How do you know?
11        A.   Through the interviews that I've conducted,
12   and members, too.
13        Q.   And so your opinion would simply be based
14   on things that other people have told you?
15        A.   Right.  And there is documentation to
16   corroborate that that's happened, yes.
17        Q.   But there is no requirement that there be
18   corroboration?
19        A.   Well, my time and experience have pretty
20   much told me that those things are true based on the
21   interviews that I've done and members that I've
22   talked to.
23        Q.   So any one of the people that you've talked
24   to or members that you've interviewed, could come in
25   and testify as to what the Security Threat Group
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 289 2935

```
 1    sanctions are for various misbehaviors?

 2        A.   I don't know.

 3             THE COURT:  Ms. Jacks, I promised the men

 4    that we'd get them out of here at 5:30.  Is this a

 5    good place to break?

 6             MS. JACKS:  That's fine.

 7             THE COURT:  All right.  Be safe.  See y'all

 8    tomorrow.  I appreciate everybody's hard work.

 9             MS. DUNCAN:  Your Honor, we have one

10    housekeeping matter.  I would just ask the Court to

11    caution the witness, since he is on

12    cross-examination, not to discuss his testimony with

13    anyone else.

14             THE COURT:  All right.  Is that agreed to?

15    All right.  Don't discuss your testimony with anybody

16    else.

17             (The Court stood in recess.)

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2935

```
1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on December 6, 2017

15

16

17

18   _____
                    Jennifer Bean, FAPR, RMR-RDR-CCR
19                  Certified Realtime Reporter
                    United States Court Reporter
20                  NM CCR #94
                    333 Lomas, Northwest
21                  Albuquerque, New Mexico 87102
                    Phone:  (505) 348-2283
22                  Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2936

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF NEW MEXICO

 3   UNITED STATES OF AMERICA,

 4        Plaintiff,

 5   VS.                        CR. NO. 15-4268 JB

 6   ANGEL DELEON, et al.,

 7        Defendants.

 8                   VOLUME 3

 9        Transcript of Daubert/Rodriguez Hearing and
     James Hearing Proceedings before The Honorable
10   James O. Browning, United States District Judge,
     Las Cruces, Dona County, New Mexico, commencing
11   on November 29, 2017.

12
     For the Government:  Ms. Maria Armijo; Mr. Randy
13   Castellano; Mr. Matthew Beck

14   For the Defendants: Mr. Brock Benjamin, Mr. Richard
     Sindel; Ms. Cori Harbour-Valdez; Mr. Jim Castle; Mr.
15   Robert Cooper; Mr. James Lahann; Mr. John Granberg;
     Mr. Billy Blackburn; Mr. Scott Davidson; Ms. Amy
16   Jacks; Mr. Richard Jewkes; Mr. Marc Lowry; Ms.
     Theresa Duncan; Ms. Amy Sirignano; Mr. Christopher
17   Adams; Mr. Michael Davis; Ms. Carey Bhalla; Mr. Ryan
     Villa; Mr. Donovan Roberts; Ms. Angela Arellanes; Mr.
18   Samuel Winder

19
     For the Defendants (Via telephone):  Ms. Justine
20   Fox-Young

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              THE COURT:  Good morning everyone.  I
 2   appreciate everybody making themselves available to
 3   me this morning.
 4              All right.  We've got some new folks with
 5   us today.  Mr. Blackburn is here on behalf of
 6   Mr. Garcia.
 7              MR. BLACKBURN:  Good morning, Your Honor.
 8              THE COURT:  Mr. Blackburn, good morning to
 9   you.  Let's see, I think Mr. Granberg has left?  No.
10              MR. GRANBERG:  No, I'm back.
11              THE COURT:  Mr. Mondragon has left, and
12   Mr. Granberg is here.
13              MR. GRANBERG:  Yes, Your Honor.
14              THE COURT:  All right.  Mr. Granberg, good
15   morning to you.
16              Ms. Fox-Young, you're on the phone at this
17   time?
18              MS. FOX-YOUNG:  Yes, I am.  Good morning,
19   Your Honor.
20              THE COURT:  Good morning, Ms. Fox-Young.
21              Anyone else that I have missed as far as
22   changes from yesterday?  All right.  Well, good
23   morning to everyone.
24              All right.  Well, I don't think I have any
25   announcements.  It did look like there was a number

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2938

```
 1   of filings that came in, so I guess we'll address
 2   those in due course.  Anything anybody needs to take
 3   up before we put Mr. Martin back on the stand and
 4   continue cross-examination of him?
 5           MS. JACKS:  I'd like to just bring
 6   something to the Court's attention and make a
 7   request.
 8           THE COURT:  Okay.
 9           MS. JACKS:  Your Honor, we had a discussion
10   with the marshals this morning about conditions in
11   the courtroom.  And one of the things that we asked
12   was whether we could pitch in and get the defendants
13   lunch from a pizza or a sandwich place.  The marshals
14   don't have an objection.  But they asked us to bring
15   that up with you.
16           THE COURT:  That's fine.  Just as long as
17   the marshals know.  I do think the marshals -- what I
18   heard is they don't want defense lawyers individually
19   bringing in food.  And I can understand.  I think we
20   all can appreciate that we don't want to have just
21   individual things going along.  But as long as they
22   approve y'all buying them lunch and bringing it in,
23   that's fine.  The taxpayers aren't going to be paying
24   for that, are they?
25           MS. JACKS:  No, I think --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2939

```
 1              DEFENDANT PEREZ:  Thank you, Judge.

 2              THE COURT:  I'm popular now?  It will go

 3    downhill from now, right?

 4              DEFENDANT PEREZ:  You got my vote.

 5              THE COURT:  I'm not running for anything.

 6    That's the thing about a lifetime appointment, you

 7    never run again.

 8              All right.  Mr. Martin, are you out there?

 9              All right.  Mr. Martin, I'll remind you

10    you're still under oath.

11              Ms. Jacks, if you wish to continue your

12    cross-examination of Mr. Martin, you may do so at

13    this time.

14              MS. JACKS:  I would like to.  I just want

15    to make sure -- I don't think the Elmo is on.

16                        EXAMINATION

17    BY MS. JACKS:

18         Q.   Good morning, Mr. Martin.

19         A.   Good morning.

20         Q.   Before I pick up where we left off

21    yesterday afternoon, I just want to -- you had a

22    little homework last night.  And I'm just wondering

23    if you got a chance to do it?

24         A.   Were you --

25         Q.   Well, I think there were a couple of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2940

```
 1    things, so let's just start at the beginning.
 2         A.   Okay.
 3         Q.   One of the things I was asking you about,
 4    the New Mexico Department of Corrections policies and
 5    procedures that govern the classification of inmates
 6    as a member of a Security Threat Group.
 7         A.   Right.
 8         Q.   And you were having some trouble
 9    remembering what chapter and what those regulations
10    were.  Did you, last night --
11         A.   Those are all under the STIU policy.
12         Q.   And were you able, last night, to find
13    those policies?
14         A.   I was not, because on my personal computer
15    I'm not able to access MDC policies.  And I thought I
16    might have had it on one of my PowerPoints, or maybe
17    on my personal laptop.  But I did not.
18         Q.   Okay.  So you weren't able to do that.  The
19    other thing -- I forgot, what was the other thing
20    that you were going to take a look at or do, do you
21    remember?
22         A.   I don't.
23         Q.   I'll have to go back and look at my notes,
24    because there was one other thing as well.
25         A.   Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2941

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5942

```
 1        Q.   I wanted to pick up where we left off,
 2   which was I was asking you about the bases for your
 3   opinions in pages 1 through 6 of Document 1299 --
 4        A.   Okay.
 5        Q.   -- which was the Government's expert
 6   notice.  And I think where we left off was page 2,
 7   where I marked "stop."  So let's go back to that.  We
 8   were looking at C.  And I think we talked about
 9   Security Threat Group sanctions.
10           So I want to move on to the reasons for
11   sanctions.  You're offering -- you're purporting or
12   proposing to offer an opinion about the reasons for
13   sanctions?
14        A.   Correct.
15        Q.   And can you tell me what would be informing
16   that particular opinion?
17        A.   Those opinions would be based on
18   information that I've obtained from individuals that
19   are gang members, that are inactive gang members, and
20   from documentation that I've discovered.
21        Q.   So interviews from active and inactive gang
22   members.  And when you say documentation you've
23   discovered, things in people's files, in STIU files?
24        A.   No, ma'am.  When we do a cell inspections
25   or cell searches, sometimes we'll find items that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2942

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2943

1    contain, for example, rules of conduct within the

2    gang.  And those rules of conduct will say, you know,

3    if -- for example, if you fail to work out a couple

4    of days there, and if it's a mandatory issue, then

5    you're subject -- you could be subject to assault.

6         Q.   So you're talking about writings that

7    particular inmates might have in their cell?

8         A.   Correct.

9         Q.   Do you have copies of those writings that

10   you're relying on?

11        A.   I personally don't.  But they belong to

12   STIU.  I'm sure STIU has them.

13        Q.   Have you reviewed any or obtained any in

14   preparation for offering some sort of expert opinion?

15        A.   Not yet.

16        Q.   Let's move on to the next thing in C:  How

17   those sanctions are carried out.  Would that be the

18   same sources of information?  Interviews with inmates

19   and documents or writing that you discovered in the

20   course of being a correctional officer?

21        A.   Correct, or gang unit officer.

22        Q.   What about the next item?  A description of

23   weapons manufactured and used.  What informs that

24   opinion?

25        A.   A description of weapons manufactured and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2943

```
 1    used?

 2         Q.   Yes.

 3         A.   Usually, individuals that make weapons are

 4    usually things that are available to them inside the

 5    prison system.  So they could take maybe a light

 6    switch apart.  Sometimes, if they were porters, they

 7    might be working out and take pieces of metal and

 8    manufacture them into weapons.  They might be out in

 9    the rec yard, and take a piece of the fence apart,

10    and manufacture that as a weapon.

11         Q.   Are these things that you personally

12    observed?

13         A.   I've seen through interviews, and also

14    photographs of the weapons, and self-admittance,

15    individuals that have done it, yes.

16         Q.   I just want to go back for a second and ask

17    you some just general questions about the prison.

18         A.   Sure.

19         Q.   Would you agree with me that prison is an

20    environment that's different than any other

21    environment?

22         A.   Than like shopping at the mall or

23    something?

24         Q.   Or -- right, prison is different than

25    everyday life here in the United States?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   It's an environment of its own, yes.

 2          Q.   Right.  And there is rules and ways of

 3     conducting oneself that are different in prison than

 4     in everyday life?

 5          A.   There are rules for inmates?

 6          Q.   Yeah.

 7          A.   Is that specifically what you're asking?

 8          Q.   Right.  Maybe I should say codes of conduct

 9     among inmates.

10          A.   Yeah.

11          Q.   And would you agree with me that things, or

12     slights that may be overlooked in everyday life, like

13     bumping into somebody, are things that can take on

14     added significance in a prison environment?

15          A.   I would say that their awareness level is

16     higher.  And their awareness and how they conduct

17     themselves and they carry themselves is -- their

18     awareness is higher inside the prison than it would

19     be out in the free world.

20          Q.   And would you agree with me that things

21     that might be overlooked in the free world are things

22     that can be the subject of serious disputes in a

23     prison environment?

24          A.   It could escalate really fast, yes.

25          Q.   Specifically, I want to ask you about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2945

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2946

```
 1    weapons in prison.  Are weapons a common thing in a
 2    prison environment?
 3          A.    They can be, yes.  I mean, in general
 4    population, we don't conduct -- well, let's see how I
 5    can answer your question.  There is weapons in
 6    prisons.
 7          Q.    People in prison get pretty ingenious about
 8    making some sort of weapons to defend themselves if
 9    something would happen?
10          A.    Yes, they make weapons to defend themselves
11    and they make weapons to sell.
12          Q.    And to sell?
13          A.    Yes.
14          Q.    So for profit, to get --
15          A.    Correct.
16          Q.    -- canteen items, or stamps --
17          A.    I don't know.
18          Q.    -- phone cards?
19          A.    Buying drugs a lot of times as well.
20          Q.    Drugs.  So weapons are a method of commerce
21    in prison in some sense as well?
22          A.    Yes.
23          Q.    And would you agree with me that inmates in
24    prison make weapons -- just let me go back.  Would
25    you agree with me that weapon manufacturing or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2946

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 12947

 1   weapons possession in prison isn't limited to

 2   disruptive group members or Security Threat Group

 3   members; it's across the board?

 4        A.   Correct.

 5        Q.   And your information about -- that informs

 6   your opinion about descriptions of weapons

 7   manufactured and used, that's weapons that you've

 8   seen or seen photographs of in the prison context

 9   across the inmate population?

10        A.   Yes.  Or out, yes.

11        Q.   So it's not strictly limited to gang

12   members or Security Threat Group members?

13        A.   Correct.

14        Q.   I want to move on to D:  The rules and

15   requirements for members and associates to

16   participate in SNM-sanctioned violent crimes,

17   including homicides.  You're proposing to offer an

18   opinion on that.  And can you tell us what informs

19   that opinion?

20        A.   Well, if -- okay, I understand the question

21   now.  If a member of the SNM is going to take out

22   another member of the SNM, he has to be a member, or

23   he has to be a prospective member.  He just --

24   otherwise, there is -- there will be greater

25   consequences.  For example, if a Sureno Gang

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2947

1    member -- an SNM member is not going to get a Sureno

2    Gang member to hit another SNM member.  That would be

3    against the rules that -- you know, that individual

4    himself would himself be in trouble.  So it has to

5    be -- it would have to be an SNM member that would

6    have to carry out a sanctioned hit on another SNM

7    member.

8         Q.   Okay.  I understand that that's the opinion

9    that you'd like to offer.  What my question is is

10   where did that come from?

11        A.   From interviews of individuals that are

12   members of the SNM, and also members that are

13   denounced members of the SNM.

14        Q.   And do you have copies of those interviews

15   or memos regarding those interviews that you've

16   acquired over the years to back up that opinion?

17        A.   Yes.  If I've interviewed individuals and

18   they've given me this type of information, I type out

19   all the interviews.

20        Q.   So where is that stuff?

21        A.   Any interviews that I type out usually will

22   go to the STIU administrator or the STIU coordinator.

23        Q.   Well, have you gathered those in

24   preparation for your testimony as an expert in this

25   case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2948

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2949

```
 1        A.   Not yet.

 2        Q.   I want to go back because I was reminded

 3   about the other issue that we sort of left for you to

 4   think about overnight or check out overnight.

 5        A.   Sure.

 6        Q.   That was -- yesterday, there was -- I guess

 7   you weren't quite sure of how you communicated with

 8   the United States Attorney's Office in helping them

 9   prepare this Document 1299.  You said you might have

10   emailed them your opinions or the proposed areas of

11   your testimony.  And I'm wondering if you had a

12   chance to go back and look to see?

13        A.   Yes, I emailed it.

14        Q.   You did?

15        A.   Yes, because I looked it up.

16        Q.   And did you locate that email last night?

17        A.   Yes.

18        Q.   And did you bring it to court today?

19        A.   No.

20        Q.   Why not?

21        A.   You didn't ask me.

22        Q.   Okay.  What did you email them?

23        A.   I emailed them pretty much everything

24   that's written on here.

25        Q.   In the format that is written here in 1299?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2949

```
 1          A.   No.  Just the description of things that
 2     I've done in that type of format.
 3          Q.   I'm sorry, the things on here you're
 4     referencing is Document 1299, right?
 5          A.   Correct.  I'm not sure what you're asking.
 6     I gave them all the information about my
 7     qualifications as an STIU gang unit.
 8          Q.   Okay.  And I think you told us that
 9     yesterday that you gave them --
10          A.   Correct.
11          Q.   -- your CV that has your training and
12     experience, right?
13          A.   Right.
14          Q.   But what I asked you was, in addition to
15     that, did you email them proposed areas of your
16     expertise, some sort of summary of your various
17     opinions, anything that is contained or referenced
18     here in this Document 1299?
19          A.   I'm sure that I've spoken to them about it
20     or I've written it to them.
21          Q.   Okay.  Well, last night what you were going
22     to check was to see whether you had written it to
23     them.
24          A.   Right.
25          Q.   And you said that you did check, and that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2950

```
 1    you had written it to them?
 2         A.   Right.
 3         Q.   Is that still your testimony?
 4         A.   Yes.
 5         Q.   And so my question -- my next question is:
 6    How long was the email that you wrote them that you
 7    reviewed last night?
 8         A.   How long ago?
 9         Q.   No.  How long was the email?  How many
10    pages?  This is 6 --
11         A.   I probably emailed them about three or four
12    times.
13         Q.   So you didn't bring any of those to court?
14         A.   No, ma'am.
15         Q.   But you still have them, right?
16         A.   Yeah.
17         Q.   So you could produce those if we request
18    you to bring them?
19         A.   Right.
20         Q.   So can you please bring those then next
21    time you're in court?
22         A.   Sure, absolutely.
23         Q.   All right.  I want to move on.
24              I'm going to try to speed this up a little
25    bit.  So I want to just go through the next few pages
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2951

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2952

1    of this notice, sort of paragraph by paragraph.  So

2    let's take a look at the next paragraph.  I'm going

3    to number this paragraph 1.  So paragraph 1 reads:

4    "The Syndicato de Nuevo Mexico, SNM, Spanish for

5    syndicate of New Mexico is a powerful and violent

6    prison gang, which controlled drug distribution and

7    illegal activities within the New Mexico penal

8    system, and was also involved in street level

9    narcotics trafficking.  It was formed in the early

10   1980s at the Penitentiary of New Mexico after a

11   prison riot at the penitentiary in February 1980.

12   During the prison riot, 12 correctional officers were

13   taken hostage and several of them were seriously

14   assaulted and raped by inmates.  33 inmates were

15   killed during the riot, and more than 200 were

16   injured."

17          Is that an opinion or testimony that you're

18   seeking to offer as an expert?

19      A.   Yeah, it's an opinion.

20      Q.   Okay.  And first of all, do you have any

21   personal knowledge about the prison riot at the

22   Penitentiary of New Mexico?  Were you there?

23      A.   No.

24      Q.   So you didn't see it, you didn't hear it?

25      A.   No, I was not there.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2953

1      Q.   And in terms of the information about the

2    prison riot at the Penitentiary of New Mexico, and

3    what happened, how do you know about that?

4      A.   I know about that because I've interviewed

5    individuals that were in the prison riot, and I've

6    interviewed SNM members that were present during the

7    prison riot.  I've read books about the prison riot.

8    I've read the general -- I've read the general report

9    about the prison riot.

10     Q.   Okay.  Apart from reading books about it,

11   have you performed any sort of independent research

12   or analysis?

13     A.   Like I said, I've gathered information from

14   individuals that were there at the prison riot, at

15   least three of them.

16     Q.   And those individuals, do you have reports

17   or memorandum of the interviews that you had with

18   them?

19     A.   I believe I do.

20     Q.   And where are those?

21     A.   STIU.

22     Q.   And did you produce them to the Government

23   or anybody in preparation for your testimony?

24     A.   I'm not sure if I did or not.

25     Q.   When is the last time you saw them?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2953

```
 1          A.   I can't even remember.

 2          Q.   So years ago?

 3          A.   Might have been a couple years ago.

 4          Q.   With respect to the SNM being a "powerful,

 5     violent prison gang controlling drug distribution and

 6     other illegal activities in the New Mexico penal

 7     system and involved in street level narcotics

 8     trafficking," is that based on information that you

 9     received in speaking with inmates?

10          A.   Yes.  From multiple sources of inmates that

11     I've interviewed.

12          Q.   And also in speaking with other

13     correctional officers?

14          A.   Yeah.  But mostly through inmate testimony

15     or interviews with inmates that have given me this

16     information.

17          Q.   You said inmate testimony?

18          A.   I meant interviews.

19          Q.   Okay.  You understand the difference

20     between an interview and testimony, right?

21          A.   Yes, ma'am.

22          Q.   Testimony is under oath --

23          A.   I meant interview.

24          Q.   What about, let's look at what I'm labeling

25     paragraph 2 in Document 1299, which essentially
```



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                      1-800-669-9492
                                              e-mail: info@litsupport.com

DNM 2954

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2955

1    discusses what happened after the prison riot, or

2    discusses the expansion of the SNM Gang, and various

3    slang, or ways that gang members refer to each other,

4    and the fact that SNM operates under a panel or mesa

5    of leaders.

6         A.   Um-hum.

7         Q.   What is the source of that information?

8         A.   Again, it's historical acknowledgment from

9    interviews from SNM members that were part of that

10   panel or original members of the SNM.

11        Q.   And are the interviews that you're

12   referencing interviews that you've conducted or

13   interviews that you've conducted and that other

14   people have conducted?

15        A.   I know some of them are some that I've

16   conducted, and perhaps some that others have

17   conducted.

18        Q.   And the interviews that you're referencing,

19   are they all interviews conducted by law enforcement

20   officials?

21        A.   Yes.

22        Q.   Let's look at what I'm labeling paragraph

23   3, which starts at the bottom of page 2.  I'm just

24   going to ask you to take a moment to read that.  And

25   I'm going to see if I can get the second part up

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20

1   there.  Let me just start with the first part of it,

2   then I'll stick the second part up.

3       A.   Sure.

4       Q.   Let's look at the bottom of page 2.  There

5   is an opinion about how SNM Gang members and

6   associates communicate.  Do you have an opinion on

7   that?

8       A.   Yes.

9       Q.   And how was that -- what's the basis of

10  that opinion?  How did you form it?

11      A.   The basis of that opinion is based on

12  individuals that I've interviewed that have given me

13  this information, as well as finding individuals

14  that -- when they're exiting the prison system, they

15  are going through -- we do what you call an exit

16  interview.  And during these exit interviews

17  sometimes they'll go ahead and give us information

18  about this.  Or the property that's being taken out

19  at the time, we search it, and at times we have been

20  able to find kites or letters going out about SNM

21  business.

22      Q.   So interviews that you've conducted and

23  that other law enforcement agents have conducted with

24  inmates is one source, and the other source is

25  actually seeing evidence of these letters?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2956

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 21

2957

```
 1          A.   Correct.
 2          Q.   And are kites something that are used by
 3   all sorts of prison inmates to communicate with each
 4   other?
 5          A.   Yes.
 6          Q.   Not just members of Security Threat Groups
 7   or disruptive groups?
 8          A.   Correct.
 9          Q.   Now, I want to look at the second part of
10   that paragraph that talks about when SNM members or
11   associates rejoin the communities what the
12   expectations of them are.  Do you have any personal
13   knowledge of that?  Have you seen or observed that
14   personally?
15          A.   Not personally, no.
16          Q.   And so the source of that would be your
17   interviews with inmates?
18          A.   Correct.
19          Q.   And other law enforcement agents'
20   interviews with inmates?
21          A.   Correct.
22          Q.   Let me just go back.  Are you aware or have
23   you spoken to inmates that told you that they, in
24   fact, broke ties with their Security Threat Group
25   after they were released from prison?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2957

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22

```
 1          A.   Yeah.   How I found out a lot of information
 2     about what we would call individuals sent on a
 3     mission when they get out of prison, and their
 4     failure to carry out these missions.   When they
 5     return back into prison, and they are requesting
 6     protective custody because they feel -- because they
 7     did not carry out the mission, that they would be
 8     subjects of assault.
 9               During this time, during this interview
10     they've volunteered information as to what their
11     mission was, and that it's a mandatory thing for them
12     to carry out missions or to meet out in the public
13     and have a gathering together to again further the
14     mission of the SNM.
15          Q.   So, if I understand you, the circumstances
16     of where you might come about some inmate telling you
17     this is when he wants to get something, like be
18     transferred to another unit, because -- when he's
19     coming back to prison?
20          A.   It's just one of the sources and one of the
21     ways, yes.
22          Q.   And just while we're on that topic, I just
23     want to follow up on something, because you said that
24     you've been an STIU officer for 11 years, right?
25          A.   In the STIU unit for 11 years, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23

```
 1        Q.   Okay.  And you've interviewed thousands of
 2   inmates?
 3        A.   I've interviewed a lot of inmates.
 4        Q.   And based on your -- because of your
 5   position in a prison, if you interview somebody and
 6   make a recommendation, or think that they're in
 7   danger or think that they need to be moved for some
 8   reason, and you make that recommendation, is your
 9   recommendation generally followed by prison
10   management?
11        A.   Yes.
12        Q.   So inmates in prison know that you have
13   power to get them moved?
14        A.   I don't know if they know I have power.
15   But I'm upfront with most of these guys.  If I
16   interview them, and I say, "I'm going to recommend
17   this for you," they understand that I don't have the
18   power.  I just have the recommendation.
19        Q.   But they know that your word carries
20   weight?
21        A.   Maybe, I guess, yeah.
22        Q.   And would you agree with me that there are
23   prison inmates that are highly manipulative?
24        A.   Yes.
25        Q.   And one thing -- prison inmates can't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 24

2960

1    control too much about their environment?  They're

2    told where they're going to be and when they're going

3    to sleep and when they're going to eat and what

4    they're going to do, right?

5         A.   In segregation, yes.

6         Q.   Well, when you're in prison, you don't get

7    to pick and choose where you're going to be, right?

8         A.   You can request it.  But I understand what

9    your question is.  But, no.  Yeah, in general terms,

10   no.  I mean, we put them where they are.

11        Q.   Would you agree with me that there are --

12   that one way that a prison inmate can get moved is to

13   convince you that they need to be moved?

14        A.   Convince me how, ma'am?

15        Q.   By telling you that they're in danger of

16   some sort?

17        A.   If a person is telling me they're in

18   danger, I'm going to err on the side of caution, and

19   believe that they're in danger.

20        Q.   And people can be in danger in prison for

21   all sorts of reasons, can't they?

22        A.   There is a lot of different reasons, yes.

23        Q.   I mean, one way that inmates are frequently

24   in danger is they use drugs, and they don't pay their

25   drug debts?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25

```
 1        A.    Correct.
 2        Q.    Another way is that they disrespect
 3   somebody in some manner, that they're living with,
 4   and they're worried that that person is going to
 5   retaliate with violence?
 6        A.    It could happen.
 7        Q.    Okay.  So there is all sorts of reasons
 8   someone could be in danger in prison?
 9        A.    Correct.
10        Q.    And one way that an inmate knows they can
11   get moved is by claiming they're in danger from a
12   prison gang, right?
13        A.    Correct.
14        Q.    So if an inmate tells you they're in danger
15   from a prison gang, you're going to err on the side
16   of caution and move that inmate?
17        A.    Yes, while I investigate, yes.
18        Q.    Let's go to paragraph 4, which is the top
19   of page 3.  This is a paragraph about SNM exerting
20   control or operating on the streets of New Mexico.
21   And I want to ask you, in general, what forms the
22   basis of your opinion about how SNM supposedly
23   operates on the streets of New Mexico?
24        A.    Again, the primary basis of that is from
25   interviews.  Also, debriefing individuals that have
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2961

```
 1    left the gang.

 2         Q.   And is part of your opinion based on

 3    conversations with other law enforcement officers

 4    that are actually enforcing the law on the streets of

 5    New Mexico?

 6         A.   To some extent.  But not really.  Most

 7    of -- again, most of the -- for example, if I'm

 8    talking to outside law enforcement, they might

 9    confirm that some of the things are going on, but not

10    the totality of information that I get from

11    individuals inside the prison.

12         Q.   So these are people that are in prison that

13    are telling you about their exploits on the streets

14    of New Mexico?

15         A.   They're telling us how the gang operates on

16    the streets, yes.

17         Q.   And what would be the circumstances of

18    those type of discussions?  Why would inmates be

19    discussing that with you?

20         A.   Some of them have just given up on the

21    gang -- on the lifestyle, or they're debriefing, or

22    as part of a debriefing that we receive, or an

23    individual might just say, "You know what, I'm going

24    to tell you how things are done."

25         Q.   Let me start with the concept of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 27

```
 1   debriefing.  In your mind is a debriefing where
 2   somebody sits down and supposedly tells you about all
 3   of the criminal activity they've been involved in
 4   over the course of their lives?
 5        A.   Well, one of the things that we do is we
 6   allow them to write more or less a biography of their
 7   activities within the gang.  And then based on that,
 8   we'll ask questions.
 9        Q.   So the person writes a multi-page biography
10   of their activities?
11        A.   However long.
12        Q.   Do you have those?
13        A.   Do I have them?
14        Q.   Right.
15        A.   They are part of the -- the coordinator for
16   the RPP Program would have those.
17        Q.   Okay.  Have those been produced in
18   connection with your expert testimony?
19        A.   They have not been produced, no.
20        Q.   And yet you're relying on those
21   inmate-authored biographies to form your opinions?
22        A.   Yes.
23        Q.   And this debriefing -- that was my next
24   question.  When an inmate debriefs and writes one of
25   these biographies and answers your questions, what do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2963

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 28

2964

1  they get, or what do they obtain in exchange for

2  that?

3      A.   They obtain the ability to be segregated

4  from the gang that they're in, and a chance for them

5  to change.  It's kind of a starting over, I guess a

6  clean slate, not being affiliated with the gang.  And

7  in the course of time, within the RPP Program, you

8  know, eventually the tag will be removed from them as

9  a gang member.

10     Q.   So just -- do inmates that want to join the

11 RPP Program --

12          THE COURT:  Mr. Villa?

13          MR. VILLA:  Sorry, Judge.

14          THE COURT:  Is he okay?  Are you all right?

15          MR. VILLA:  He's okay.

16          MS. JACKS:  Sorry that I'm putting Mr.

17 Perez to sleep.

18          THE COURT:  He just may be resting.  But

19 you're okay?

20          Ms. Jacks.

21 BY MS. JACKS:

22     Q.   Mr. Martin, do inmates have to debrief and

23 provide you with this sort of information to be

24 accepted into the RPP Program?

25     A.   That's one of the conditions, yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2964

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2965

1       Q.   Okay.  And the RPP Program is a program

2    that actually has -- that actually allows inmates

3    eventually to gain more privileges within the prison

4    system, right?

5       A.   It's categorized more like a Level 3.  That

6    whole concept behind this is to reintegrate them,

7    eventually, into a congregate population, with

8    general population inmates, within time.

9       Q.   And when an inmate does that, they get

10   expanded social visitation and expanded privileges as

11   an inmate, right?

12      A.   Correct.

13      Q.   And they also get more opportunities for

14   programming and self-enrichment?

15      A.   That's the whole goal is to try to get them

16   more programming, if we can.

17      Q.   Because prison can be really boring, right?

18      A.   It can.

19      Q.   Okay.  So this information that's in

20   paragraph 4 is primarily based on these inmates

21   debriefs --

22      A.   Some of them, yes.

23      Q.   -- from inmates that are seeking to enter

24   the RPP Program and drop out?

25      A.   Some of them are.  Some of them are just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2966

1    individuals that have been in prison for a long time;

2    they're still members of the SNM, but haven't

3    debriefed or dropped out.  And I've known them for a

4    long time.

5        Q.   And to a very small extent some of the

6    information in paragraph 4 is from conversations with

7    outside law enforcement?

8        A.   Yes.

9        Q.   Let's look at the next paragraph, which I'm

10   going to label paragraph 5, that talks about SNM

11   rivalries within the prison.

12       A.   Correct.

13       Q.   And the type of -- I guess it talks also

14   about recruitment and illegal activities within the

15   prison that SNM members supposedly engage in; is that

16   right?

17       A.   Yes.

18       Q.   So is the basis for those opinions the same

19   as basis for the opinions that we've discussed in the

20   other paragraphs?  Basically interviews with inmates

21   and correctional officers and other law enforcement?

22       A.   Yes.  Also with the rival gangs.

23       Q.   With members -- various members of rival

24   prison gangs?

25       A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32967

```
 1        Q.   Okay.  Here is page 4.  We're getting
 2   through this slowly but surely.  I've labeled
 3   paragraph 6.  It starts with "The SNM Gang sought to
 4   the maintain its reputation for being strong and
 5   powerful and maintain its membership to continue
 6   functioning as an organization in prison and on the
 7   streets."  And then it talks about what would happen
 8   if the SNM was perceived as weak.  And it concludes
 9   with the opinion or the statements, "A member of the
10   SNM Gang was expected to confront and attack any
11   suspected law enforcement informants, cooperating
12   witnesses, homosexuals, or sex offenders."
13            I'm sorry, let me go back.  "A member of
14   the SNM Gang was expected to seek out and beat, stab,
15   or shoot rival gang members.  Similarly, a member of
16   the SNM Gang was expected to confront and attack any
17   suspected law enforcement informants, cooperating
18   witnesses, homosexuals, or sex offenders."
19            So what is the basis for the information in
20   paragraph 6?
21        A.   Again, the basis for these are interviews
22   I've had with inmates, SNM members, and ex-SNM
23   members.
24        Q.   And anything in addition to interviews with
25   inmates?
```

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2967

1      A.    Other correctional officers that have been

2    previously in STIU, or outside law enforcement

3    officers, like BCSO.

4      Q.    And I think you told us that you were in

5    the habit of documenting the interviews that you had

6    with inmates --

7      A.    Um-hum.

8      Q.    -- in some manner.  And that you haven't

9    accessed those interviews, but you think they are in

10   the possession of the Department of Corrections

11   somewhere, right?

12     A.    Correct.

13     Q.    What about discussions that you had with

14   other correctional officers or outside law

15   enforcement officers?  Did you prepare memos or some

16   sort of report of those interactions?

17     A.    Sometimes I do, and sometimes I don't.  For

18   example, if I get information and I don't really need

19   to write it down, and then I get more information

20   that seems to be the same over and over, then I start

21   documenting that information.

22     Q.    So there is some information that you get

23   that you just catalog in your head?

24     A.    Correct.

25     Q.    And there is no requirement from the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2968

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32969

1    Department of Corrections policy and procedures that

2    you write things down or document it, is there?

3         A.   Well, we're an information -- our unit is

4    based on the gathering of information.  There is some

5    information that I don't, and some information that I

6    do.

7         Q.   Is there any rule that you have to follow

8    about when you do write stuff down and when you

9    don't?

10        A.   Well, if it's an issue concerning the

11   threat of the security of the institution, yes,

12   absolutely, then I'll write it down.

13        Q.   Is that according to some sort of policy of

14   the Department of Corrections, or that's just your

15   general rule?

16        A.   Well, no, it's an STIU policy.

17        Q.   Can you tell us what policy that is, what

18   number the policy is?

19        A.   I couldn't.  I mean, STIU policies number

20   about 88 pages.  So, you know, there is a policy in

21   there where you do write down -- document information

22   that's the nature -- that would meet the nature of a

23   security threat.

24        Q.   Okay.  And I just want to stop you there,

25   because I think yesterday I asked you about how many

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 2969

```
 1   pages was the New Mexico Department of Corrections

 2   policies and procedures for the STIU unit --

 3        A.   Right.

 4        Q.   -- and you didn't know?

 5        A.   Exactly.

 6        Q.   And today you know down to the fact that

 7   it's 88 pages long?

 8        A.   Exactly.

 9        Q.   So what happened between yesterday and

10   today that helped you now remember that it's 88

11   pages?

12        A.   I looked it up, that it was 88 pages.

13        Q.   And how did you do that?

14        A.   I have it on my computer.

15        Q.   Okay.  When we first started this morning,

16   I thought I asked you if you had looked it up, and I

17   thought you said you had some problem --

18        A.   You asked me if I looked up policies.  And

19   I said that I was not able to get policies on my

20   computer.  I have the STIU policies.

21        Q.   Okay.  So can you tell us -- well, did you

22   bring the 88-page document that is the STIU policy?

23        A.   I have it on my cellphone.  I mean, I'm not

24   allowed to bring it in here, but I don't have like a

25   printer at home or anything that I could print
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 35

```
 1    anything out with.  But if you like, I could show it
 2    to you on my cellphone.
 3         Q.   Yeah, or you could forward it to me?
 4         A.   Sure, I can do that -- well, I'm sorry, I
 5    take that back.  I cannot forward it to you, because
 6    it's a confidential file.  The STIU policy is
 7    confidential, and so I'd have to get permission from
 8    the Secretary of Corrections to forward it to you.
 9         Q.   Okay.  Have you produced that to the
10    Government in connection with your proffered expert
11    opinion?
12         A.   I have not.
13         Q.   You have not.
14              Let's move to paragraph 7, which talks
15    about how SNM Gang members identify themselves in
16    various things that supposedly represent membership
17    in the SNM.  I think you talked about this a little
18    bit yesterday, when Ms. Armijo showed you some
19    photographs of various tattoos and markings.  Do you
20    recall that testimony?
21         A.   Yes, I do.
22         Q.   And, I guess, correct me if I'm wrong, this
23    is one of the areas where you actually have made some
24    personal observations --
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2971

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 36972

1      Q.    -- of markings or tattoos or symbols,

2  right?

3      A.    As part of my job, yes.

4      Q.    I want to go to what I'm labeling paragraph

5  8.  And I'm just going to -- paragraph 8 is a summary

6  of the purposes of the SNM enterprise.  And I'm going

7  to put it up here.  There is a list of A through F

8  that are listed out here in this Document 1299, what

9  the purposes of the SNM enterprise are.  Are these

10  opinions that you intend to offer, that you're being

11  asked to offer as a gang expert?

12      A.    Yes.  I believe that these were opinions,

13  not only found through interviews, but also when the

14  certification was done on the SNM, these were part of

15  the criteria.

16      Q.    Okay.  When you talk about the

17  certification of the SNM, is this the reference that

18  the Department of Corrections has classified SNM as a

19  Security Threat Group?

20      A.    Yes.

21      Q.    And I think you told us yesterday that's

22  not something that you did?

23      A.    Correct.

24      Q.    That's something that happened before you

25  became an STIU officer?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2972

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 2973

1        A.   It's documented, so, yes.

2        Q.   And have you read the materials that were

3   put together certifying the SNM as a Security Threat

4   Group?

5        A.   Yes, I have.

6        Q.   Is there a package or something like that

7   that is in the possession of Department of

8   Corrections?

9        A.   Yes.

10        Q.   Is that something that has been produced to

11   the Government in connection with your expert

12   testimony in this case?

13        A.   I have not produced anything to the

14   Government.

15        Q.   Do you know when that -- I think you told

16   us, 2008?

17        A.   I believe it was in 1999 -- 2008, what?

18   I'm not sure.

19        Q.   When was SNM certified as a Security Threat

20   Group?

21        A.   I believe it was in 1999.

22        Q.   Okay.  And that's the date of this

23   certification package, 1999?

24        A.   Correct.

25        Q.   So your opinions that you're offering with



SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com

1   respect to these categories A through F are based on

2   your personal interviews as a corrections officer, or

3   an STIU officer, with inmates, and your review of

4   that package of materials that was prepared back in

5   1999?

6        A.   Correct.

7        Q.   Let me go to paragraph 9, which is the

8   means and methods in which people participate in the

9   affairs of SNM.  Let me know when you're done with

10  reviewing the first part, and then I'll put up the

11  second part.  That also has bullet points A through

12  E.  Let me put up the next part.  I want to make sure

13  you review them before I ask you the question.

14       A.   Okay, ma'am.

15       Q.   Have you had a chance to fully review that?

16       A.   Yes.

17       Q.   And these are opinions that you want to

18  offer as -- or the Government wants you to offer as

19  an expert witness?

20       A.   Correct.

21       Q.   And are the basis of these opinions similar

22  to the other opinions that you're proposing to offer,

23  your experience as a correctional officer, and your

24  interviews with inmates and other correctional

25  officers?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2975

```
1        A.    Correct.
2        Q.    Is there anything else that informs the
3   basis of these opinions?
4        A.    Just my time and experience on speaking
5   with these individuals, inmates, correctional
6   officers.  But mainly, yes, what you're saying.
7        Q.    Okay.  I think we're through the six pages,
8   so I'm going to move on to a different area.
9              Yesterday, Ms. Armijo asked you some
10  questions about the type of activities SNM Gang
11  members engage in in prison.  And I think you talked
12  about the narcotics activity, taxation, possession of
13  shanks, contraband, protection-type racket.  Do you
14  recall that testimony?
15       A.    Yes, ma'am.
16       Q.    Is that testimony like the other -- is that
17  opinion or those opinions like the other ones that
18  we've just discussed, based on your interviews with
19  inmates and correctional officers?
20       A.    Right, and also working in that environment
21  as well.
22       Q.    I think you testified yesterday that SNM is
23  known for violence, and that they engage in violent
24  crimes in prison.  And that if orders aren't
25  followed, they will violently retaliate against their
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2975

1    own members.  Do you recall that testimony?

2         A.    Yes.

3         Q.    What is the basis of that testimony?

4         A.    Interviewing inmates that are current

5    members of the SNM and ex-inmates.  Also,

6    correctional officers and staff.

7         Q.    You testified yesterday about the structure

8    of the SNM, I think, starting from the early 1980s,

9    up through the present?

10        A.    Correct.

11        Q.    What is the basis of those opinions?

12        A.    Those opinions are on individuals that are

13   still active members, but as you noted, are called

14   veteranos, individuals that are really not in the

15   politics of SNM anymore, but they had information on

16   the structure and history of the SNM, as well as

17   outside law enforcement debriefing an individual that

18   was part of the original SNM structure.

19        Q.    So that would be you not only interviewing

20   other inmates, but reviewing reports of other law

21   enforcement officers regarding their interviews of

22   other alleged SNM members?

23        A.    Yes.  And also the debriefing of the

24   individuals that understand the history of the SNM,

25   that corroborates.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2976

1       Q.   So the debriefing of inmates who are going

2   into or seeking to get into the RPP Program?

3       A.   Yes, individuals that were part of the

4   original SNM structure, as well as individuals that

5   were debriefed and schooled in the history of the

6   SNM.

7       Q.   You testified yesterday about infighting

8   within the SNM, among the SNM Gang members, and

9   jealousy and bickering.

10      A.   Correct.

11      Q.   Is the basis of that opinion similarly

12  interviews of people you and other law enforcement

13  officers have conducted with SNM, and alleged SNM

14  members?

15      A.   Correct.

16      Q.   That's not based on any sort of personal

17  knowledge?

18      A.   I'm not a member of the SNM, no.

19      Q.   You testified yesterday about how somebody

20  becomes a member of SNM, when Ms. Armijo asked you

21  the question.  What is the basis of that opinion?

22      A.   I'm sorry?  Can you repeat that?

23      Q.   Yeah.  Yesterday, you were asked:  How does

24  somebody become a member of SNM?  And you talked to

25  us about that, how they became a member in the '80s

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2977

```
 1    and how they changed over time.  Do you recall that
 2    testimony?
 3         A.   Yes.
 4         Q.   How did you form that opinion?
 5         A.   Those are individual SNM members that have
 6    given that information either through the RDC process
 7    or through debriefing, that have stated how they
 8    became members or the process of becoming a member.
 9         Q.   And you also talked about how people might
10    leave the SNM?
11         A.   Correct.
12         Q.   And is that similarly -- is that opinion
13    based on the same type of interviews?
14         A.   Correct.
15         Q.   You talked yesterday about the rules:  Not
16    snitching, don't leave a brother hanging.
17         A.   Um-hum.
18         Q.   What is the basis of your knowledge about
19    the, quote, "rules of SNM"?
20         A.   The same, interviewing inmates.
21         Q.   You testified yesterday that cooperators
22    are people that the SNM thinks should be killed.  Do
23    you recall that testimony?
24         A.   Yes.
25         Q.   And what is the basis of that opinion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2978

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2979

```
 1        A.    Interviewing individuals that have left the

 2   organization, and also interviewing individuals that

 3   are current active members.

 4        Q.    Anything else besides that?

 5        A.    No, ma'am.

 6        Q.    Yesterday you were asked what the motive

 7   behind the Javier Molina murder was.  Do you recall

 8   that question?

 9        A.    What was the question?

10        Q.    What the motive behind the Javier Molina

11   murder was?

12        A.    Okay.

13        Q.    Do you recall that question?

14        A.    Yes.

15        Q.    Okay.  Were you present at Southern New

16   Mexico Correctional Facility when Mr. Molina was

17   murdered?

18        A.    No, I was not.

19        Q.    Have you spoken with the people who

20   actually wielded the shanks, Mr. Montoya, Mr.

21   Armenta?

22        A.    About the murder?

23        Q.    Yes.

24        A.    No.

25        Q.    So neither one of those people have told
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2979

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 44 2980

1   you what the, quote, "motive behind the murder was,"

2   have they?

3        A.   Correct.

4        Q.   Have you spoken with Timothy Martinez or

5   Mario Rodriguez about the homicide of Mr. Molina?

6        A.   I have not.

7        Q.   So neither one of those individuals told

8   you what the, quote, "motive behind the Molina murder

9   was"; is that right?

10       A.   That's correct.

11       Q.   And I think what you testified was that the

12  murder was motivated by the fact that he had ratted

13  on somebody.  Do you recall that testimony?

14       A.   I don't know if I said that was the motive,

15  but I believed that was the purpose.

16       Q.   And what forms the basis of that belief?

17       A.   The documents that I've read, when they

18  refer to being charged by the state.

19       Q.   So like police reports --

20       A.   Correct.

21       Q.   -- from the New Mexico State Police?

22       A.   Just -- I'm trying to remember.  The

23  interviews collected by STIU at the time of the

24  murder that happened, interviewing some individuals

25  at PNM regarding the murder, and interviewing other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2980

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2981

```
 1    SNM members regarding the murder, which would
 2    indicate that it was based on paperwork.
 3         Q.   Okay.  The interviews that you read, do you
 4    have a list of the interviews or the documents you're
 5    relying on?
 6         A.   I don't.
 7         Q.   Based on your recollection of the
 8    documents, is it your analysis that the people that
 9    were interviewed gave consistent reasons for the
10    murder of Javier Molina?
11         A.   I think they were pretty consistent, yes.
12         Q.   And so you didn't have to reconcile -- I
13    mean, you didn't have to figure out which statements
14    to accept as credible and which statements to reject
15    as not credible in making this analysis of the
16    motive?
17         A.   Based on my experience and knowledge of
18    gangs, I have an understanding that -- through my
19    extensive research -- I mean interviewing of inmates
20    that the SNM is -- if they're going to kill someone,
21    they're going to produce paperwork for it.
22         Q.   So --
23              MR. SINDEL:  Excuse me?  I'm sorry, I
24    didn't hear the last part of the answer.
25              THE COURT:  He said that they were going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    produce paperwork for it.

 2            MR. SINDEL:  Okay, thank you.

 3       Q.   So what you're saying is, it's your belief

 4    that, because in the past people were killed because

 5    there were paperwork showing they were a cooperator,

 6    it's your opinion that the murder of Mr. Molina

 7    occurred because there was paperwork showing he was a

 8    cooperator?

 9       A.   Correct.

10       Q.   That's the basis of your opinion?

11       A.   Correct.

12       Q.   You testified yesterday about the murder of

13    Freddie Sanchez.  Do you recall that testimony?

14       A.   Yes, I do.

15       Q.   And what was the basis of all of that

16    testimony?  I mean, were you present at the murder of

17    Mr. Sanchez?

18       A.   I wasn't present when they killed him, no.

19       Q.   And was your rendition of how that homicide

20    happened based on your review of police reports and

21    other paperwork?

22       A.   I interviewed him two days before he was

23    murdered.

24       Q.   And he told you he was in danger of being

25    killed by the SNM?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2982

```
 1           A.    They had paperwork on him.

 2           Q.    Did you recommend that he be moved?

 3           A.    Correct.

 4           Q.    And was he moved?

 5           A.    No.

 6           Q.    Was the interview with the homicide victim

 7     the only thing that you based your opinions on with

 8     respect to that crime?

 9           A.    Primarily, yes.  I didn't think he had any

10     reason to lie that he knew they had paperwork on him.

11     He stated also that they told him that they had

12     paperwork on him.  And he knew there was paperwork on

13     him.

14           Q.    I'm not really asking you what he said.

15     I'm asking you if there is anything else besides what

16     he told you before he was killed?

17           A.    I'm explaining what the basis of my

18     understanding is --

19           Q.    I just want to go back.

20           A.    -- or my opinion.

21           Q.    All right.  I just want to make sure that

22     I'm clear about it.  Is there anything else that

23     you're relying on besides Mr. Sanchez' statements

24     before he was killed?

25           A.    No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2983

 1    Q.   We touched on this earlier, but I'm not

 2   sure I covered it thoroughly, so I just want to go

 3   back.  You testified yesterday about the ways of

 4   communication between people in SNM.  And I think you

 5   talked about sign language, kites, conversing out in

 6   the recreation cages, ways that telephones can be

 7   used to communicate between members.  Do you recall

 8   that testimony?

 9    A.   Yes, ma'am.

10    Q.   Would you agree with me that that's how

11   prison inmates, in general, communicate, not just

12   members of Security Threat Groups or disruptive

13   groups?

14    A.   Absolutely.

15    Q.   It's the ingenious ways people think up to

16   communicate with each other when they are -- their

17   communications are restricted?

18    A.   Correct.  Or when they don't want you to

19   hear their communication.  It's subversion kind of.

20   It's a subversion.

21    Q.   We talked about -- we went through the

22   Document 1299, the expert notice about SNM activities

23   in the street.  And I just want to follow-up on

24   something you said yesterday.

25    A.   Okay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2984

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2985

1      Q.   Yesterday you testified that an inmate that

2    was released from prison that was a member of SNM

3    was, quote, "obligated to meet up with the guy who is

4    in charge on the street and to come up with criminal

5    business to send drugs and money back to prison."  Do

6    you recall that testimony?

7      A.   Yes, I do.

8      Q.   What is the basis of your opinion that

9    inmates that are released are obligated to meet up

10   with the person in charge and then engage in criminal

11   activity?

12     A.   Interviewing inmates that have gone out to

13   the streets and have returned back to prison.  Also

14   on individuals that have debriefed.

15     Q.   And I just -- I guess I want to follow up

16   on this a little bit.  So it's the circumstance where

17   somebody has been released from prison, gone back to

18   criminal activity, and then ends up back in prison,

19   and you're talking to him?

20     A.   Yes, when they return back, and if they're

21   in my area of contact, yes.

22     Q.   Okay.  And in certain instances, these

23   individuals have told you that they were actually

24   forced or were obligated to engage in further

25   criminal activity because of the gang?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2986

```
 1          A.    Yes, that's part of the rules.
 2          Q.    And my question to you is:  In evaluating
 3     those statements, do you ever consider that that's a
 4     way that an individual might seek to lessen his own
 5     personal responsibility for his continued criminal
 6     activity?
 7          A.    Well, it's none of my concern on that deal,
 8     because if he's still going back to the unit, he's
 9     just giving me information.
10          Q.    Okay.  But my question is:  Do you consider
11     that potential motivation in evaluating the
12     credibility of that information?
13          A.    I just didn't see any reason for them to
14     lie about it, I guess.  Because I'm not offering
15     anything, and they're not getting anything.
16          Q.    Well -- but I'm giving you a reason they
17     might have to lie:  To save face, to make it look
18     like they didn't just go out and commit crimes on
19     their own after they just got out of prison, but that
20     they were somehow forced to do so?
21          A.    Well, you know, that would be something
22     more or less that they would tell their fellow
23     inmates, not me.  I mean, for them to tell me that,
24     it gains them absolutely nothing.
25          Q.    So you don't consider that in evaluating
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    the credibility of those inmates?

 2         A.    I consider all things.  But what you're

 3    asking is probably -- the probability is pretty low.

 4         Q.    And how do you evaluate the probability

 5    that that might or might not happen?

 6         A.    Just time and experience of knowing inmates

 7    and knowing how gangs operate.

 8         Q.    Have you conducted any studies on that?

 9         A.    No, ma'am.  Just a lot of experience in the

10    time that I've worked in prison.

11         Q.    You testified yesterday that if an SNM Gang

12    member saw a rival in prison, that it was mandatory

13    that they assault that person?

14         A.    Correct.

15         Q.    And what is that based on, that opinion?

16         A.    Well, it's on the interviews that I've had

17    with individuals that have either assaulted someone,

18    or that has been assaulted, either way; individuals

19    that have debriefed, and current members of gangs.

20    You know, it's part of their creed.

21         Q.    So interviews with people who are now

22    facing you after they've either been apprehended for

23    an assault or the victim of an assault?

24         A.    Within the prison, yes.

25         Q.    You testified yesterday, I believe, about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 52

```
 1    some sort of murders that were committed by Frederico
 2    Munoz?
 3         A.   Correct.
 4         Q.   What was the basis of your expert opinion
 5    on that topic, or those topics?
 6         A.   Interviews with Frederico Munoz and other
 7    members of the SNM.
 8         Q.   So I want to move to a little bit of a
 9    different topic.  In preparation for your testimony
10    today, or your testimony as an expert witness in this
11    case, have you reviewed the STIU file regarding
12    Daniel Sanchez, and whether or not he's a validated
13    member of the SNM?
14         A.   I think it's been a while since I reviewed
15    his.  But I think he's still under suspect.  But I
16    couldn't tell you for sure.
17         Q.   Okay.  You don't know, as you sit here
18    today, whether or not he's a validated member of the
19    SNM?
20         A.   I couldn't honestly tell you.  Again, this
21    was, like, last minute for me to come up here, so I
22    didn't know -- I would have looked up all that
23    information.  But honestly don't know.  I believe
24    he's still a suspected member.
25         Q.   Okay.  And I want to -- so you haven't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 2988

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 2989

```
 1    recently reviewed his STIU file?
 2         A.    No.
 3         Q.    Okay.  In evaluating whether somebody is a
 4    validated member of SNM, is one of the things that
 5    the STIU officers are instructed to look for is
 6    whether an inmate possesses some sort of leadership
 7    capability?
 8         A.    Correct.
 9         Q.    And can you explain the rationale behind
10    that, if you know what it is?  Why would leadership
11    lead towards someone being a validated gang member?
12         A.    Well, because if he's a leader of the gang,
13    he -- if he's not all the way in, ain't nobody going
14    to pay attention to him.
15              So the way we do things is, you know, we've
16    got to find documentation that relates to factually
17    saying -- I mean, I know that he's a member of the
18    SNM; I have to prove that he's a member of the SNM.
19    So I have to have documentation that corroborates the
20    fact that he is an SNM member.
21         Q.    So I guess my question to you is:  What
22    type of information or documentation would you need
23    to give somebody these leadership points or to say
24    that somebody is a leader, that could lead towards
25    their gang validation?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   I guess confidential information would be

2   one.  Documentation where it states that he's a

3   leader.

4       Q.   Let me stop you.  When you say

5   "confidential information," is the kind of

6   documentation you're referring to, that means like a

7   report of an informant, who doesn't want his name to

8   be known, saying, you know, Amy Jacks is a leader of

9   the SNM?  Is that what you're talking about?

10      A.   Honestly, I'm sure I'm lost as to this

11  whole question, what you're asking.

12      Q.   Well, let me --

13      A.   If you're asking me if being a leader is

14  the criteria for validation, I'm not sure that that's

15  the criteria for validation.

16      Q.   Okay.  Well, that's fair.

17          Let me just ask you specifically:  Do you

18  think it's relevant, with respect to the New Mexico

19  Department of Corrections' validation of somebody as

20  a gang member, that they point out that a particular

21  gang member -- a particular individual is known to

22  have the ability to organize inmates to a specific

23  purpose?  For example, organizing a pod-wide informal

24  complaint project concerning the heating and

25  ventilation of a housing unit?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2990

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 55

```
 1        A.   Your question is what?
 2        Q.   Is that something that's a relevant fact
 3   towards determining whether somebody is a validated
 4   gang member?
 5        A.   No.
 6        Q.   And do you think that the fact that
 7   somebody was successful in addressing the temperature
 8   of the inmates' food when served is a relevant fact
 9   in determining whether somebody is a validated gang
10   member?
11        A.   No.
12        Q.   Are you aware of documents prepared -- do
13   you know who Hope Salazar is?
14        A.   Yes.
15        Q.   And do you know who Gabriel Salazar is?
16        A.   Yes.
17        Q.   Are you aware of communications between
18   Gabriel Salazar and Hope Salazar regarding Mr.
19   Sanchez that's contained in his gang validation file
20   to that effect, that he successfully organized a
21   complaint about heating and ventilation in his
22   housing unit, and was successful in addressing the
23   temperature of the inmates' food when served?
24        A.   I'm not aware of that.  It's been a long
25   time since I read his file.  I've known Daniel.  He's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2991

```
 1    never really been in the same place as I have, so
 2    I've known -- very limited knowledge of Mr. Sanchez.
 3         Q.   But my question is, if something like that
 4    is in Mr. Sanchez' STIU file, is that relevant at all
 5    to whether Mr. Sanchez is or isn't a member of a
 6    Security Threat Group?
 7         A.   Unless there is more written into that, no.
 8         Q.   And I want to follow up on one more thing
 9    that you said yesterday, regarding the tattoos that
10    you've seen validated SNM members have.
11         A.   Correct.
12         Q.   Okay.  And I think one of the pictures you
13    were shown showed the Zia symbol with an "S" inside
14    of it?
15         A.   Correct.
16         Q.   And you said that was a tattoo that you
17    recognized as a tattoo that only validated SNM
18    members have?
19         A.   Not only validated members, no.
20         Q.   Okay.  I'm sorry, then I misunderstood.
21         A.   It's part of a validation process.
22         Q.   Okay.  But is somebody who -- let me go
23    back, because I think I didn't ask the question a
24    good way.
25              You were asked a question about the Zia
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   symbol without the "S" inside.

 2        A.    Correct.

 3        Q.    And can you remind me what you said about

 4   that?

 5        A.    Yeah, the Zia symbol in itself doesn't mean

 6   other than the Zia symbol.

 7        Q.    The Zia symbol is a symbol that the State

 8   of New Mexico uses all over the place, right?

 9        A.    Correct.

10        Q.    And the fact that somebody has a Zia symbol

11   would not indicate that they were a member or

12   claiming membership in SNM?

13        A.    Not in my opinion, no.

14        Q.    And if you saw somebody with a Zia symbol

15   with the S inside -- I'm going to ask this a

16   different way, so let me go back.

17             Have you ever seen somebody who is not a

18   member of SNM, or who you believe not to be a member

19   of SNM, have a Zia symbol with the S inside tattooed

20   on them?

21        A.    No.

22             MS. JACKS:   I have nothing further at this

23   time.

24             THE COURT:   All right.  Thank you,

25   Ms. Jacks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2993

```
 1              Any other defendants want to cross-examine?

 2              Ms. Duncan?

 3              MR. SINDEL:  Your Honor, if I may.

 4              THE COURT:  Let's see, I think Ms. Duncan

 5    got up first.  So I'll let you go next, Mr. Sindel.

 6              MR. SINDEL:  Ladies first?

 7              THE COURT:  Well, I'm not going to go

 8    there.  I'm just saying.

 9                        EXAMINATION

10    BY MS. DUNCAN:

11         Q.   Good morning, Mr. Martin.

12         A.   Good morning.

13         Q.   I would like to ask you -- I'm a little

14    confused about the prior cases in which you

15    testified, so I'd like to ask you about those.

16         A.   Sure.

17         Q.   So I believe you testified you testified,

18    or that you've testified in two prior cases; is that

19    correct?

20         A.   As a witness, yes.

21         Q.   And one was about a person who was a member

22    of the Surenos Gang; correct?

23         A.   Correct.

24         Q.   And then the other about a person you

25    considered to be a member of the SNM Gang; is that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 2994

1    correct?

2          A.    Correct.

3          Q.    And in neither of those cases did you

4    testify as an expert witness; correct?

5          A.    I testified as to gang knowledge.  The

6    whole reason I was there is to testify on behalf of

7    my gang knowledge.

8          Q.    In which case are you talking about?

9          A.    Both.

10         Q.    Well, in the case -- the case about the

11   Surenos, that was Gonzalez versus Joey; correct?

12         A.    Correct.

13         Q.    And you recall you testified about a

14   person, Mr. Gonzalez, who was an admitted member of

15   the California Surenos; correct?

16         A.    Correct.

17         Q.    And about disputes he had with members of

18   the New Mexico Surenos; correct?

19         A.    No, it was a religious right, so it was a

20   civil suit.

21         Q.    Sure.  And Mr. Gonzalez wanted to

22   participate in sweat lodges; correct?

23         A.    Correct.

24         Q.    And the Department of Corrections was

25   denying him that in part because he was a Sureno?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   Because his -- he was claiming religious

2   rights, indigenous michika (phonetic) religious

3   rights that he claimed required him to go to a sweat

4   lodge.

5       Q.   Correct.  And the Department of Corrections

6   was denying him that right because of security

7   concerns; correct?

8       A.   Correct.

9       Q.   And that was because he had been identified

10  as a Sureno?

11      A.   Correct.

12      Q.   So you were called by Mr. Gonzalez'

13  attorney to testify about interviews you had

14  conducted with New Mexico Surenos members; correct?

15      A.   I was deposed by his attorney.  I wasn't

16  called as a witness.  I was a witness for the State.

17      Q.   The first person who questioned you at that

18  trial was an attorney named Matthew Garcia; correct?

19      A.   Correct.

20      Q.   And Mr. Garcia is a civil rights attorney

21  who represented Mr. Gonzalez?

22      A.   Correct.

23      Q.   So during that testimony, Mr. Garcia asked

24  you about interviews you had done with the New Mexico

25  Surenos; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2996

```
1              A.    I'm not sure, ma'am.

2              Q.    So do you recall testifying about a hit

3    list that you found that identified Mr. Gonzalez as a

4    subject of a hit?

5              A.    Yes, ma'am.

6              Q.    And testifying about disputes between Mr.

7    Gonzalez, as a California Sureno, and the New Mexico

8    Surenos, because Mr. Gonzalez believed the California

9    Surenos were the real deal?

10             A.    I think so.  I'm not sure.

11             Q.    And do you recall during that -- when you

12   were being questioned, that at some point the

13   attorneys objected that you had not been qualified as

14   an expert?

15             A.    I didn't attend as an expert, no.

16             Q.    And you did not attend as an expert in the

17   case involving the SNM; is that correct?

18             A.    Correct.

19             Q.    So I'd like to show you Document No. 1299?

20             A.    Sure.

21             Q.    I'm on page 7.  If you look here at the

22   bottom of the page, it's discussing your credentials

23   as a potential expert in this case; correct?

24             A.    Correct.

25             Q.    And if you turn to page 7, what I've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 2997

1    highlighted, it reads that "Sergeant Martin was

2    qualified as a gang expert and provided testimony

3    concerning the California Sureno Gang culture and

4    ideology."  Did I read that correctly?

5         A.   Correct.

6         Q.   But that's not true?

7         A.   No.  I believe that I was the -- one of the

8    main guys that certified, that did the certification

9    on the California Surenos.  Yeah, that's not correct.

10   I did not testify as a gang expert, just as my

11   knowledge on the California Surenos, since I had

12   certified them.  I had provided all the information

13   and I conducted all the -- I had conducted the

14   investigation into the California Surenos, and

15   compiling everything to get them certified as a

16   Security Threat Group.  And that was my expertise

17   within that group.

18        Q.   When you testified for Mr. Gonzalez, you

19   were testifying about how you certified the

20   California Surenos, given that Gonzalez self-admitted

21   to being a member of the California Surenos; correct?

22        A.   Correct.

23        Q.   And so have you discussed -- since you left

24   court yesterday, and before taking the stand again

25   this morning, have you discussed your testimony with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    anyone?

2        A.    No.

3        Q.    And can you tell me how did you come -- how

4    did it happen that the United States identified you

5    as a potential gang expert in this case?

6        A.    I was working with Mr. Acee on the

7    California Surenos before the SNM, so I had knowledge

8    of him.  And he worked with some of the individuals

9    in STIU on the SNM case.  And so I've also been

10    involved a little bit in helping him with that.  But

11    not too much.  Not directly.  Indirectly, I guess.

12        Q.    So what do you mean?  Can you explain more,

13    what do you mean that you've been involved in helping

14    Mr. Acee?

15        A.    For example, if he calls me and asks me who

16    this guy is or that guy is, I'll look it up and

17    advise him who it is, what's going on.

18        Q.    Have you provided any documents to Mr.

19    Acee?

20        A.    Only what he's requested, if any he's

21    requested.

22        Q.    What has Mr. Acee requested from you?

23        A.    A couple years, just fliers; maybe looking

24    up documentation on where an individual lives, stuff

25    like that.  Mainly, I really haven't -- like I said,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I really haven't been directly involved in collecting
 2    documentation.
 3         Q.   And how would you convey those documents to
 4    Mr. Acee?
 5         A.   By scanning email to him.
 6         Q.   Would those emails still be on your
 7    computer?
 8         A.   I doubt it.  I erase all that stuff.
 9         Q.   You erase all your emails?
10         A.   I have to.  I'll run out of storage room.
11         Q.   Do you have -- is there a system by which
12    your emails are backed up regularly?
13         A.   Yes.
14         Q.   How often are your emails backed up?
15         A.   I get a lot of email, so I probably get rid
16    of them once a week.
17         Q.   And are you currently an employee of the
18    State of New Mexico?
19         A.   Yes.
20         Q.   And are you aware of the record retention
21    policies for the State of New Mexico?
22         A.   Yes.
23         Q.   And do you comply with those policies?
24         A.   I would say yes, I guess.
25         Q.   I'd like to ask you about Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 65

                                                                              65

1    Exhibit 18, which was the STIU file of Mr. Baca.

2        A.   Sure.

3        Q.   I'm going to put it on the Elmo so we all

4    know what we're talking about.  Yesterday you

5    testified about the different categories used to

6    validate a suspected gang member; correct?

7        A.   Correct.

8        Q.   And here we see the box is checked for

9    self-admission, tattoos, symbolism, documents, and

10   contacts; correct?

11       A.   Correct.

12       Q.   Now, in Mr. Baca's STIU file for

13   self-admissions those alleged admissions were made to

14   people other than you; correct?

15       A.   I'm sorry, I don't understand the question.

16       Q.   Sure.  It was badly worded.

17            The admissions on which the Department of

18   Corrections relied to validate Mr. Baca were made to

19   people other than you; correct?

20       A.   Yes.  I never interviewed him for

21   validation purposes.

22       Q.   And then the section entitled "documents,"

23   I'm looking, Counsel, starting at page 11316.

24            THE COURT:  Ms. Duncan, I'm wondering, if

25   we're shifting gears, would this be a good time for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3001

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 66 3002

```
 1    us to take a break?
 2            MS. DUNCAN:  It would, Your Honor.
 3            THE COURT:  All right.  Let's take our
 4    morning break.  We'll be in recess about 15 minutes.
 5            (The Court stood in recess.)
 6            THE COURT:  It's a busy courthouse.  We've
 7    got defendants in other rooms.  So I know there is
 8    limitation on the restrooms.  So I appreciate
 9    everybody working trying to get back in here quickly.
10    I think we've got all counsel.  Everybody got
11    counsel?
12            All right.  Mr. Martin, I'll remind you
13    you're still under oath.
14            THE WITNESS:  Yes, sir.
15            THE COURT:  Ms. Duncan, if you wish to
16    continue your cross-examination of Mr. Martin, you
17    may do so at this time.
18            MS. DUNCAN:  Thank you, Your Honor.
19            THE COURT:  Ms. Duncan.
20    BY MS. DUNCAN:
21        Q.  So I think when we had the break we were
22    talking about documents that were included in the
23    STIU file.  And am I correct that you did not collect
24    any of those documents?
25        A.  On Anthony Ray Baca, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3002

```
 1        Q.   And I wanted to ask you about a hit list.
 2   Let me find it here.  And I'm looking at Bates No.
 3   11330.  And it talks about three documents that were
 4   found in the STG soft file of inmate Anthony Baca.
 5   Can you tell me what is an STG soft file?
 6        A.   It would be a file that we -- for example,
 7   it's probably not put in his gang file, but would be
 8   a file that's kept on Mr. Baca.
 9        Q.   And where would that file be kept?
10        A.   Depending on who the STIU officer was
11   working on it, but mostly, it would be kept in the
12   coordinator's office.  I believe he keeps all those.
13        Q.   So the soft file is also an STIU file, but
14   it's not the official file?
15        A.   Yeah.  And I'm not sure if they're talking
16   about his case file.
17        Q.   Would it help if I show you the document?
18        A.   Yeah.
19        Q.   And again, this is 11330.
20        MS. DUNCAN:  May I approach, Your Honor?
21        THE COURT:  You may.
22        A.   I take it to mean it would be a file
23   someone has on him.  So probably the coordinator
24   would have the soft file on him.
25        Q.   Do you know -- so that report documents
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3003

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3004

```
 1    three -- the review of three documents that were
 2    found in the soft file; correct?
 3         A.   As far as I understand it.
 4         Q.   Do you know when those documents were
 5    placed in the soft file?
 6         A.   I do not.
 7         Q.   Do you know who placed them in the soft
 8    file?
 9         A.   I do not.
10         Q.   Do you know where the documents came from,
11    other than the soft file?
12         A.   No.
13         Q.   Or who wrote those documents?
14         A.   I do not.
15         Q.   The next criteria on the list were
16    contacts.  And this is at Bates No. 11334.  And the
17    contact file contains letters to and from people
18    other than Mr. Baca; correct?
19         A.   Correct.
20         Q.   And is that normal for an STIU file to
21    contain communications that aren't from the inmate,
22    to or from the inmate at issue?
23         A.   To be put in his file, is that what you're
24    suggesting?
25         Q.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3004

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 69

```
 1          A.   Well, if they're trying to build an
 2    association between a known, validated member and a
 3    suspected member, that would be something that we
 4    would be put in there for basis of either suspecting
 5    that individual or to build documentation to say that
 6    that person is a member of that group.
 7          The other part is that within that -- the
 8    context of that document, if there is what we believe
 9    to be gang business being discussed, that's evidence
10    that that individual is talking business between
11    gangs.
12          Q.   Am I correct that it's common to find
13    documents that are neither authored by or received by
14    a particular person in their STIU file?
15          A.   Let's see if I can get your question
16    correctly.  Are you asking me that it's common for us
17    to put letters that don't relate to that inmate, or
18    that he didn't author or receive?
19          Q.   So -- yes.  So letters -- let's say is it
20    common to find in the STIU file letters that were not
21    authored by the inmate whose file it is?
22          A.   But were written to him?
23          Q.   Or just that he didn't write, let's ask
24    that first question.
25          A.   Yeah.  I mean, yes, if it's written to, it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3005

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3006

1    could be.

2        Q.   So the second part, is it common to find

3    letters that are written from someone other than that

4    person to a third person?  So, for example, if we're

5    talking about Mr. Baca, so a letter that's neither

6    written by Mr. Baca, nor written to Mr. Baca?

7        A.   If his name is mentioned in it, it could be

8    common that they would place it in there, yes.

9        Q.   And the letters that we find in Mr. Baca's

10   file, they include some analysis by STIU staff;

11   correct?

12       A.   Correct.

13       Q.   And that analysis was not conducted by you;

14   correct?

15       A.   Correct.

16       Q.   In the document -- going back to the

17   criteria for Mr. Baca.  In contacts it has letters

18   from Joe Barros, and then it's cut off, too.  Would

19   you expect to see the documents that STIU relies on

20   to designate a particular inmate in this STIU file?

21       A.   I'm not sure I understand the question.

22       Q.   I'm not asking good questions.  This

23   references a letter or letters from Joe Barros;

24   correct?

25       A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3006

1       Q.   Would you expect to see the letters from
2  Joe Barros in this file?
3       A.   Yes.
4       Q.   And I'm going to hand you this exhibit and
5  ask you to let me know if you see any letters from
6  Joe Barros in this file?
7       A.   I can't say that I see a letter from Joe
8  Barros in there, no.
9            MS. DUNCAN:   Okay.  I'm just going to
10 retrieve the file, Your Honor.
11      A.   Sure, ma'am.
12      Q.   Let me ask you a quick question.  This is
13 Government's Exhibit 23 that you testified to on
14 direct.  Can you tell me whose handwriting is on this
15 document?
16      A.   I can't tell you whose it is, no.
17      Q.   You also testified on direct about Mr. Baca
18 being transferred from Southern New Mexico
19 Correctional Facility to PNM based on CI information
20 that there were threats on his life; correct?
21      A.   Correct.
22      Q.   And I think the first time that you
23 testified that that occurred was in 2011?
24      A.   I believe it was about 2011.
25      Q.   And was that based exclusively on CI

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3008

```
 1   information?
 2        A.   It was -- I'm not sure how that information
 3   was gathered; whether it was -- well, my guess is it
 4   was CI information.  It was relayed to us that Mr.
 5   Baca's life may be in danger, and that the
 6   administration had made a decision to move him back
 7   to the penitentiary.
 8        Q.   Were you involved in that investigation?
 9        A.   I wasn't involved.  My only involvement was
10   to interview Mr. Baca.
11        Q.   Were you part -- were you involved in the
12   decision to move him from Southern to PNM?
13        A.   I was not.
14        Q.   Do you know the identity of the informant
15   who provided the information that there was a hit
16   against him?
17        A.   I do not, ma'am.
18        Q.   And I want to ask you the same questions
19   about the alleged threat against his life in 2013.
20   Were you involved in the investigation of that
21   threat?
22        A.   No, I was not, ma'am.
23        Q.   Were you involved in the decision to move
24   Mr. Baca from Southern to PNM Level 6?
25        A.   I was not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3008

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73009

1     Q.   Are you aware of how that decision was

2   made?

3     A.   I believe that came from the STIU

4   department at Southern, and the STIU administration

5   made that decision or the Director of Adult Prisons.

6     Q.   Were you involved in Mr. Baca's appeal of

7   that decision?

8     A.   I was not.

9     Q.   Now, are you aware that, in 2014, Mr. Baca,

10   Daniel Sanchez, and Mauricio Varela were sent out of

11   state?

12     A.   Yes, I'm aware of that.

13     Q.   And are you aware that before they were

14   sent out of state, then Secretary Marcantel spoke

15   with Mr. Baca, Mr. Sanchez, and Mr. Varela?

16     A.   I'm aware that happened.

17     Q.   Were you present during that meeting?

18     A.   No, I was not.

19     Q.   Were you present -- are you aware that

20   there was also a meeting with alleged SNM members

21   about the transfer of the three men?

22     A.   A meeting with -- between Mr. Marcantel and

23   the inmates?

24     Q.   Yes.

25     A.   I think I'm aware of that, but I wasn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3009

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3010

74

 1   present during that time.

 2        Q.   When you interviewed alleged SNM members in

 3   the course of your duties, did you ever record those

 4   interviews?

 5        A.   No.

 6             MS. DUNCAN:  Your Honor, if I could just

 7   have a moment?

 8             THE COURT:  You may.

 9             MS. DUNCAN:  No further questions, Your

10   Honor.

11             THE COURT:  Thank you, Ms. Duncan.

12             Mr. Sindel, do you have cross-examination

13   of Mr. Martin?

14             MR. SINDEL:  Thank you, Your Honor.

15                       EXAMINATION

16   BY MR. SINDEL:

17        Q.   Good afternoon.

18        A.   Good afternoon, sir.

19        Q.   We're almost there.

20        A.   Correct.

21        Q.   You can hardly hope.

22             Did you -- you referred to, when answering

23   the questions from Ms. Jacks about having reviewed

24   the policy and procedure manual that was 88 pages

25   long last night; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3010

```
 1         A.   I looked it over.

 2         Q.   You looked over it.  I mean, did you look

 3    over it from a distance or did you actually read it?

 4         A.   No, it's -- I was specifically looking for

 5    if it says -- I was looking for the first part of her

 6    question, which was the difference between a Security

 7    Threat Group and a disruptive group.  I know I have

 8    it in my PowerPoints, because I show it.  But it's

 9    just old in memory sometimes, as far as that in

10    particular.  I read it off my PowerPoint most of the

11    time.

12         Q.   Is the manual arranged by chapters?

13         A.   Yes.

14         Q.   And so that there is -- you know, a subject

15    matter is covered by a particular chapter; correct?

16         A.   Correct.

17         Q.   And that the chapters are then subdivided

18    amongst the issues that are covered in that chapter,

19    right?

20         A.   Correct.

21         Q.   And when she asked you to identify them,

22    you couldn't identify the chapters, right?

23         A.   Yeah, it's not something I look at all the

24    time, yes.

25         Q.   Is it true that you could not identify the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3011

```
 1    chapter?

 2         A.   Correct.

 3         Q.   Okay.  And you say you don't look at it all

 4    the time.  Is this something that's important for you

 5    to understand and know what's in the policy and

 6    procedure manuals for the prison?

 7         A.   Right.  If it applies to what I'm doing,

 8    and I have a question about it, I'll look at the

 9    policy, yes.

10         Q.   Doesn't certification and the rules and

11    regulations that determine how to certify and how to

12    validate someone as a member of an STG, isn't that

13    something that you do all the time?

14         A.   No, it's not.

15         Q.   And is it something that you do -- do you

16    frequently have to determine whether or not a

17    particular group is an STG or a disruptive group?

18         A.   I already know that.

19         Q.   You already know that?

20         A.   Yes.

21         Q.   From the policies?

22         A.   It's already documented that they are.

23         Q.   Okay.  So do you ever make that

24    determination yourself, or is there someone else who

25    is charged with doing that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3012

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3013

```
 1          A.   Yeah, usually the coordinator, the STIU
 2     coordinate does that.
 3          Q.   The coordinator makes those decisions?
 4          A.   Correct.
 5          Q.   Although you were listed in Document 1299,
 6     which you reviewed yesterday, as the coordinator, you
 7     are not?
 8          A.   Correct, sir.
 9          Q.   Now, besides counting the pages upon the
10     policy and procedure manual last night, did you
11     review any other documents before coming here today?
12          A.   No.
13          Q.   Did you review any other documents before
14     testifying yesterday?
15          A.   No.  Like I said, it was a surprise to me.
16     I got a call on Monday to show up.
17          Q.   You got a call on Monday, and then you came
18     in.
19               Now, you were sort of sitting here, you
20     know, all day Monday, or most of it, right?
21          A.   Yeah.  I'm not allowed to have any -- my
22     phone in here, so I wouldn't have been able to review
23     anything.
24          Q.   Well, you were sitting out in the hallway.
25     Are you allowed to have your phone there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3013

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3014

```
 1          A.    No.
 2          Q.    Who told you you couldn't have a phone here
 3     in the courthouse?
 4          A.    The people when I checked in the front said
 5     I wasn't allowed to bring in a cellphone.
 6          Q.    So that was security downstairs?
 7          A.    Correct, sir.
 8          Q.    And at any time did you go to retrieve your
 9     phone so could you look at these items?
10          A.    No.
11          Q.    Now, did you request from anyone on the
12     Government's team for access to any of these
13     documents that you were being asked about yesterday?
14          A.    No.
15          Q.    Okay.  When you said you had the 88-page
16     manual that you could look over, did you -- and you
17     said you couldn't print it; is that right?
18          A.    Yes, sir.  I have a laptop at home, but I
19     have no -- I don't have a printer, so I couldn't
20     print out any of the stuff.
21          Q.    Did you make any attempt to contact members
22     of the Government's team of prosecutors to see if
23     they could assist you in printing these documents, so
24     you could comply with Ms. Jacks' request?
25          A.    I did not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3014

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79

```
 1        Q.   And did you make any request of members of
 2   the prosecution team for any assistance in providing,
 3   for example, the written information you gave them so
 4   that they could compile their 1299, six-page summary?
 5        A.   I'm sorry, I don't understand the question.
 6        Q.   You said yesterday that, and again today,
 7   that you had provided them with a written document
 8   that basically parroted what was in that Document
 9   1299.  You know what I'm talking about?
10        A.   Correct.
11        Q.   That six pages, right?
12        A.   Did I ask them for a copy of it?
13        Q.   Yes.
14        A.   No.
15        Q.   Did you make any attempt to try and secure
16   a copy of it?
17        A.   I thought I had it on my laptop, but I
18   didn't.  So I did make an attempt, yes.
19        Q.   All right.  So it is something you provided
20   to the prosecution, but it is not something that you
21   made any further attempt after being questioned by
22   Ms. Jacks about it?
23        A.   It's probably in my work computer, which I
24   have no access to at this point.
25        Q.   I know you don't have access to it now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3015

```
 1          A.   I didn't have access to it last night as
 2     well.
 3          Q.   Does anyone there at the institution have
 4     access to your work computer besides you?
 5          A.   No, sir.  I'm -- based on the height of the
 6     building, and it's a secure building, no one else
 7     would have access to.
 8          Q.   Now, you had also submitted Government's
 9     Exhibit 17, which is the CV that you have referred
10     to; is that right?
11          A.   Correct, sir.
12               MR. SINDEL:  Your Honor, does the Court use
13     alphabetical for defendants' exhibits?
14               THE COURT:  I do.  It may be that if we're
15     going to do these, you might want to put your
16     client's name right across the top and then each -- I
17     don't know, let's talk about that.  How do we want to
18     run exhibits?  Ms. Wild, do you have an opinion?
19               THE CLERK:  I guess I do.  I think we need
20     to know the defendant that is proffering it.  So
21     somehow that defendant's names needs to be associated
22     with the letter or the number.
23               THE COURT:  So should each defendant just
24     start with A?
25               THE CLERK:  Well, what if we did this:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3016

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3017

```
 1    What if we had -- it's more complicated than that.
 2    For purposes of this hearing, that's fine, as long as
 3    the defendant's first and last name precede the
 4    letter.
 5              THE COURT:  All right.  So let's do it that
 6    way for the hearing.  And I'll give some thoughts as
 7    to how we're going to do it at trial.  But if
 8    everybody starts with A, if you introduce an exhibit;
 9    then put your client's first and last name on it.
10              MR. SINDEL:  May I approach the witness?
11              THE COURT:  You may.
12         Q.   I'm going to show you what's been marked
13    for identification purposes as Defendant Joe Gallegos
14    Exhibit A.  Do you recognize that?  Is there a
15    statement at the top of that exhibit, as to what it
16    is?
17         A.   I don't -- yeah, I'm not -- this is Captain
18    Sergio Sapien's.  Are you asking me if I know what
19    this is?
20         Q.   Is it indicated it's a curriculum vitae?
21         A.   Correct.
22         Q.   For Mr. Sapien?
23         A.   Yes, it does.  I wasn't sure what your
24    question was.  I'm sorry.
25         Q.   I'm sorry.  No, no, my fault.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3017

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3018

```
 1              Now, you said yesterday that you had
 2    authored your curriculum vitae, right, you had
 3    written it?
 4         A.   Yes, sir.
 5         Q.   And so when you're talking about what
 6    appears in that, for example, the FBI Task Force,
 7    that's you?
 8         A.   Yes, sir.
 9         Q.   And you wrote that?
10         A.   Yes, sir.
11         Q.   All right.  And it says there that you
12    assist the FBI in serving subpoenas?
13         A.   I've gone along with them when they've done
14    this, yes.
15         Q.   So you haven't actually served them, you
16    just sort of hung out with them while they served
17    them?
18         A.   Assist, yeah.
19         Q.   Have you served any subpoenas in connection
20    with this investigation?
21         A.   Personally, no.
22         Q.   Have you assisted them in serving any
23    subpoenas?
24         A.   I've gone with them when they've served
25    them.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3018

```
 1          Q.   I'm sorry, what?
 2          A.   I've gone with them when they served them.
 3          Q.   It says you assist with the service of
 4     search and arrest warrants, right?
 5          A.   Correct.
 6          Q.   How many searches have you conducted since
 7     you've become indoctrinated in the FBI Task Force?
 8          A.   I can't really say.  Maybe four or five,
 9     maybe, on the streets.
10          Q.   On the streets?
11          A.   Yes.
12          Q.   So you've gone out on the streets with the
13     FBI, and actually participated in search warrants and
14     the execution of search warrants?
15          A.   Correct.
16          Q.   And it says that you also conduct
17     surveillance.  Is that electronic surveillance?
18          A.   I've taken pictures of exchanges, of
19     criminal exchanges and stuff like that.  But yes,
20     I've assisted law enforcement, or the FBI Task Force
21     in that, in surveillance, yes.
22          Q.   So that you would be basically somewhere
23     where you saw some activity going on, and you had
24     preserved it for the FBI by means of photographs,
25     right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 84020

 1        A.   In assistance, yes.

 2        Q.   Is there anything that you've done in terms

 3   of surveillance in connection with this case, this

 4   investigation?

 5        A.   No.

 6        Q.   Are there any search warrants that you've

 7   executed in connection with this case?

 8        A.   In this case?  There may be, I'm not sure.

 9        Q.   Well, do you remember arresting someone

10   with the FBI in connection with this investigation?

11        A.   No.

12        Q.   It wouldn't be something you would likely

13   forget, is it?

14        A.   Correct.  That's why I'm saying -- oh, I'm

15   sorry, I did assist them in arresting Brandy, yes.

16        Q.   And who was that again?  I'm sorry, I just

17   didn't understand.

18        A.   Ms. Brandy.

19             THE COURT:  I think Ms. Gutierrez.

20        A.   Ms. Gutierrez, I'm sorry.

21        Q.   And, obviously, we know that you conduct

22   interviews and interrogation, because primarily, your

23   expertise is based on it, isn't it?

24        A.   Correct, sir.

25        Q.   Now, you saw today -- I gave you a copy of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3020

1    Defendant's Exhibit A, Joe Gallegos A, which was the

2    curriculum vitae for Sergio Sapien.

3         A.   Correct.

4         Q.   Did you work with him in trying to compose

5    these -- well, I call them CVs, that's what we call

6    them.  Did you work with him in terms of composing

7    these?

8         A.   No.  He showed me his, and he showed me the

9    structure that he used to do it, and I kind of used

10   that pattern, the same pattern.

11        Q.   Did you use the same words?

12        A.   Of course not.

13        Q.   So your words were your words, and his

14   words --

15        A.   Well, there might be some similar words,

16   but I'm not saying that -- if you're asking me if I

17   copied his, no.

18        Q.   All right.  See there number 2?

19        A.   Yes, sir.

20        Q.   All right.  And that's Defendant Joe

21   Gallegos Exhibit A.

22             MS. ARMIJO:  Your Honor, for the record,

23   since we have two documents up there, can we make a

24   clear record, and at least, if he's going to be

25   offering these into evidence, move them into

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3021

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3022

```
 1   evidence, and then also can you refer to which items

 2   he has?

 3             MR. SINDEL:  I would move the introduction

 4   into evidence of Defendant Joe Gallegos Exhibit A.

 5             THE COURT:  Is it A and B?  Is it two or

 6   one?

 7             MR. SINDEL:  I've only talked to him about

 8   one exhibit.

 9             THE COURT:  All right.  Any objection?

10             MS. ARMIJO:  No objection, Your Honor.

11             THE COURT:  Any objection from the

12   defendants?  Defendant's Exhibit A will be identified

13   in evidence.  That's Joe Lawrence Gallegos'.

14        Q.   Just for clarification, this document

15   here --

16             THE COURT:  And just for clarification,

17   when you said "Brandy," did you mean Ms. Rodriguez or

18   did you mean Ms. Gutierrez, Shauna, over here?

19             THE WITNESS:  Ms. Gutierrez, Your Honor.

20   I'm sorry.

21             MR. SINDEL:  Thank you.

22        Q.   So this document here is Sapien's, right?

23        A.   That's what it says, yes.

24        Q.   And this paragraph 2, when you compare it

25   to your paragraph 2 --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3022

```
 1        A.   Correct.
 2        Q.   -- is coincidentally word for word what he
 3   says?
 4        A.   We've done the same things together, yes.
 5   We participated in that same -- so the fact that what
 6   he's saying and what I'm saying is absolutely true.
 7        Q.   I didn't ask you if it was true, sir.  You
 8   said you didn't copy anything from his document,
 9   right?
10        A.   Correct.
11        Q.   And to your knowledge, he didn't copy
12   anything from yours; correct?
13        A.   Correct.
14        Q.   And yet the exact same words appear in the
15   same order in both documents, right?
16        A.   Correct.
17             MR. SINDEL:  May I approach, Your Honor?
18             THE COURT:  You may.
19        Q.   I'm going to show you what has been marked
20   as Defendant's Joe Gallegos Exhibit B.  And is there
21   any indication at the top of that document what it
22   is?
23        A.   Yes.  It's Christopher Cupit's curriculum
24   vitae.
25        Q.   And did you talk with Mr. Cupit or review
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3023

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3024

1    his CV before you authored your own?

2         A.   That's the first time I've seen it, now

3    that you've shown it to me.

4         Q.   That's the first time you've seen it?

5         A.   Correct.

6         Q.   Did you give him your CV so he could look

7    at and see what you had written?

8         A.   I did not.

9         Q.   Okay.

10             MR. SINDEL:  Your Honor, I'd move the

11   introduction of Defendant's Joe Gallegos Exhibit B.

12             THE COURT:  Any objection, Ms. Armijo?

13             MS. ARMIJO:  No, Your Honor.

14             THE COURT:  From any defendants?

15             All right.  So Joe Lawrence Gallegos

16   Exhibit B will be admitted into evidence.

17        Q.   So I take it that it is your testimony that

18   it is simply coincidence that the words in Sapien's

19   CV are identical to yours; correct?

20        A.   Since we did the same things and we

21   participated in the same -- on the same action, I

22   probably used the same wording.  But not because I

23   was trying to say it's the same as his, but because

24   it was we did -- the thing was -- I didn't change

25   anything because it was exactly what was -- what we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3024

```
 1    did.  So --
 2         Q.   When you say you didn't change anything,
 3    what would you have changed?  You were writing your
 4    own?
 5         A.   I probably could have changed a word or
 6    two, but it still wouldn't have changed the fact that
 7    it's still the same.  But I see your point.
 8         Q.   Well, I'm simply asking you, is it a
 9    coincidence, as far as you're concerned, that the
10    documents -- the paragraph in Sapien's CV is word to
11    word identical to your own?
12         A.   I read his, and I agreed with it, so I put
13    it in mine.
14         Q.   I thought you said earlier when asked by
15    Ms. Jacks and by myself that it was your words that
16    you put in there, and you authored it?
17         A.   Correct.  I agreed with those words, so
18    they were my words.
19         Q.   So did you just copy and paste it into your
20    CV?
21         A.   No, I believe I typed it in there.
22         Q.   Did you have it in front of you so you
23    could look at it and make sure you got it word for
24    word?
25         A.   I agreed --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3026

1    Q.   Please wait for the questions for the court

2    reporter.

3    A.   Okay.

4    Q.   So you could put it in there word for word

5    just like he did?

6    A.   I believe I looked at his, and then I typed

7    what was written already, because I agreed that

8    that's also something I had done.  So I didn't try

9    to -- I guess I could have changed a few words here

10   and there.  But his was fine, so, yes, I understand

11   what you're saying.

12   Q.   Well, I know you understand.  You could

13   have told Ms. Jacks and you could have told me that

14   you copied it, some portions of your CV, from Mr.

15   Sapien's, right?

16   A.   I used the same words that were there.  I

17   didn't copy/paste.

18   Q.   I didn't say copy and paste, did I?

19   A.   You said copy.

20   Q.   You did that, right?

21   A.   I used those words, yes.

22   Q.   You copied it, right?

23   A.   Okay, I copied it.

24   Q.   When you said earlier "I used my own

25   words," that wasn't accurate?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3026

```
 1          A.   Yes.  What I meant by using by my own words
 2     is that I agreed with the words that he had put on
 3     there, so yes, I used the same words.  But I agreed
 4     that those were the words that I was going to use.
 5     So they were my own words.
 6          Q.   So you didn't go through that same process
 7     with Mr. Cupit, right?
 8          A.   No, sir.
 9          Q.   I'm going to show you what's previously
10     been marked as Defendant's Exhibit Joe Gallegos
11     Exhibit B.  Do you see that paragraph 2 right here?
12          A.   Yes, I do.
13          Q.   Okay.  Compare that paragraph to the words
14     that you used in your paragraph about your work with
15     the FBI.
16          A.   Correct.
17          Q.   Word for word the same, right?
18          A.   They appear to be yes.
19          Q.   I don't want to rush you.
20          A.   One of them says "telephone calls," and the
21     other one says "telephone tolls."
22          Q.   Other than that, they're absolutely
23     identical, right?
24          A.   They're the same, with the exception of
25     telephone calls and the telephone tolls.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3027

1        Q.    What are telephone tolls?

2        A.    Well, I would imagine that's another word

3    for telephone calls.

4        Q.    Well, telephone tolls, that comes from your

5    CV, right?  17, your CV, right?

6        A.    It might have been just a miswriting.

7        Q.    Telephone tolls?

8        A.    It would have been a misspelled word.

9        Q.    That's your CV?

10       A.    Correct.

11       Q.    Can you imagine that telephone tolls and

12   telephone calls are the same, or do you know?

13       A.    No, I don't know.  That's why I'm saying it

14   might have been a misspell.

15       Q.    Are there any other portions of Mr.

16   Sapien's CV that you copied, that aren't your words?

17       A.    I'm sure I used the same words in certain

18   areas, but I don't think Mr. Sapien has had the same

19   experiences and training that I have.

20       Q.    I didn't ask you that.  Were there any

21   other words that you specifically copied from his CV?

22       A.    Not that I'm aware of.

23       Q.    I'm showing you again what was previously

24   marked as Defendant's Joe Gallegos Exhibit A.  It has

25   special training and certification, bullet points; is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3029

 1    that right?

 2         A.   Correct.

 3         Q.   And are those -- that special training and

 4    certification, is that exactly identical to what

 5    appears in your --

 6         A.   I don't know.  I can't see mine.  I believe

 7    there are different dates involved in that.  So it's

 8    not exactly identical, no.

 9         Q.   But the words -- not the dates, the words

10    are identical, are they not?

11         A.   Well, we work together, as a team we do

12    things together.  So it's not uncommon that we would

13    have done the same things, yes.

14         Q.   I'm not saying what you did.  I'm saying

15    what you put in your CV.

16         A.   Yeah, they're not identical at all, sir.

17         Q.   They're not identical at all?

18         A.   Not identical because the dates are

19    different.

20         Q.   Other than that, are they identical?

21         A.   Other than that, I would agree, yeah,

22    they're primarily identical.

23         Q.   And you say probably, do the first four

24    bullet points --

25         A.   If you're asking me directly if they're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 94

```
 1    identical, no, they're not identical, because they
 2    don't have the same dates.  So I'm not sure what
 3    you're getting at.
 4        Q.   I'm getting at the fact that other than the
 5    dates, did you copy these from Mr. Sapien's CV?
 6        A.   No.  I looked over his CV, and I agreed
 7    that we have done the same things at the same time;
 8    that I have done those things as well.  So, yes, I
 9    used -- I didn't read it, if that's what you're
10    asking.  I used the same method, the same format that
11    he used, yes.
12        Q.   I mean, it's really simple.  You could say,
13    yeah, I copied them except for the dates, if that's
14    true.
15        A.   Are you asking me if I lied on it?
16        Q.   No, I didn't ask you that.  I asked you if
17    you copied it?
18        A.   I'm not sure what you're getting at.
19        Q.   If you're concerned about that, you can
20    tell us.  I'm only asking whether you copied it?
21        A.   I used the same format.
22        Q.   Did you use the same words, sir?
23        A.   I may have used the same words with
24    different dates.
25        Q.   Did you use the same words as contained in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3030

 1    Mr. Cupit's, Defendant Joe Gallegos Exhibit B?

 2        A.    No, because I never looked at his.

 3        Q.    Are you looking at it now?  Are you looking

 4    at your screen?

 5        A.    Are you asking me if I used his to do mine?

 6        Q.    I'm asking if you used the same words?

 7        A.    That's the way I'm interpreting what you're

 8    saying, sir, so --

 9        Q.    I'm sorry I wasn't clear.  Did you use the

10    same words?

11        A.    I did not, because I didn't see Cupit's.

12    Are they the same words there, yes.

13        Q.    Why don't you take a look at the words he

14    used to describe bullet point one.

15        A.    I don't know what he used.  I didn't do

16    his.

17        Q.    It's right there in front of you.

18        A.    What are you asking me?

19        Q.    I'm asking you if you used --

20        A.    If I used?

21        Q.    Yeah.

22        A.    If I used what Cupit wrote?

23        Q.    If you used the same words that Cupit used

24    to describe the training and certification?

25        A.    I never looked at his, so I didn't use the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3031

```
 1   same words.  Are the same words there?  Yes.
 2       Q.   Look at it now.
 3       A.   You're asking me if I used them, and I said
 4   I didn't use them.  If you're asking me if they're
 5   identical the way they're written now, yes.
 6       Q.   Okay.  So they are identical by
 7   coincidence?
 8       A.   Except for the dates.  We worked together.
 9   We've been working together.
10       Q.   Sir, I'm sorry --
11       A.   Well, I'm explaining why they would be
12   identical.
13       Q.   If I need to know why, I'll ask you.  I'm
14   just asking you now are they identical?
15       A.   Yes.
16       Q.   Now, I take it that you have never -- do
17   you know what a Daubert hearing is?
18       A.   I don't.
19       Q.   And you know that's what we're doing now,
20   right?
21       A.   I've heard the term.  I don't know what it
22   is.
23       Q.   Well, have you seen it in the six pages
24   that you've reviewed of the Government's pleading in
25   this case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 3033

```
 1          A.   Excuse me?

 2          Q.   You said yesterday that you read document

 3     1299.

 4          A.   Correct.

 5          Q.   And did you see the word Daubert,

 6     D-A-U-B-E-R-T, in that document?

 7          A.   Yes, sir.

 8          Q.   And did you understand the words and the

 9     context of that particular word?

10          A.   I believe so, yes.

11          Q.   Do you understand that's why we're here

12     today?

13          A.   Correct.

14          Q.   To determine whether you are an appropriate

15     expert to testify in this case?

16          A.   Correct.

17          Q.   And this would be the very first time that

18     you've testified as an expert?

19          A.   Correct, sir.

20          Q.   You've never been qualified as an expert in

21     any federal or state court?

22          A.   Correct.

23          Q.   And no one has ever challenged before your

24     qualifications as an expert in court?

25          A.   Not as an expert, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3033

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3034

```
 1          Q.   The other day you said that you had

 2   lectured on prison gangs from all over the country?

 3          A.   I've heard lectures on prison gangs from

 4   all over the country.  And I have -- from information

 5   I have gathered from these lectures and stuff, I've

 6   incorporated them into my PowerPoints as lectures,

 7   yes.

 8          Q.   And do you have a PowerPoint that you use

 9   when you do the lectures that you referred to in your

10   original CV?

11          A.   The presentations, yes.

12          Q.   And do you still have that PowerPoint

13   available to you?

14          A.   I do, sir.

15          Q.   And would you make it available to the

16   Government so they could make it available to us?

17          A.   It's the property of NMCD, so I would have

18   to get permission to do that.

19          Q.   Can you do that?  Can you try to do that?

20          A.   I could ask.  I could ask.

21          Q.   Now, you said -- have you ever made a

22   presentation or a lecture outside the State of New

23   Mexico?

24          A.   No, sir.

25          Q.   So, basically, all your academics or all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3034

```
 1    your efforts to advise other individuals concerning
 2    your knowledge has always been confined to New Mexico
 3    Department of Corrections and law enforcement?
 4         A.   To law enforcement within New Mexico, yes.
 5         Q.   I think you said something about Homeland
 6    Security and FBI.  I assume that was also in New
 7    Mexico?
 8         A.   Yes, sir.
 9         Q.   Now, when you say you worked for the FBI
10    Task Force, do they provide you with any salary?
11         A.   They do not.
12         Q.   Do you have any identification as a member
13    of the FBI Task Force?
14         A.   Not anymore, I don't.
15         Q.   Well, it says 2015 to the present, right?
16         A.   Correct.
17         Q.   That's today.
18         A.   That's because I changed jobs.  I don't
19    anymore.
20         Q.   So when did you stop being an FBI Task
21    Force agent?
22         A.   I don't know if I've stopped.  I just
23    haven't participated in anything.
24         Q.   So when you talked about serving search
25    warrants and talking about arrests, and talking about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    surveillance --

 2         A.    Correct.

 3         Q.    -- when did you stop doing that as a member

 4    of the FBI Task Force?

 5         A.    Probably on the surveillance --

 6         Q.    All right.  We'll break it down each

 7    category, okay?  When did you stop conducting

 8    surveillance as a member of the FBI Task Force?

 9         A.    I don't recall.  It's been --

10         Q.    Years?

11         A.    No, probably about six months, a year,

12    maybe.

13         Q.    Six months or a year?

14         A.    Yes.

15         Q.    Do you remember the last person you

16    conducted surveillance on?

17         A.    No, I don't.  I don't remember.

18         Q.    You talked about serving subpoenas.  Do you

19    still do that for the FBI, or is that something --

20         A.    I haven't assisted in doing that in a

21    while, no.

22         Q.    How long is "a while"?

23         A.    Probably a year or so.

24         Q.    A year or so.  And in terms of serving

25    arrests -- or search warrants, when was the last time
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3036

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3037

1    you did that for the FBI?

2         A.    Maybe a year ago; six months, a year ago,

3    something like that.

4         Q.    Would it be safe to say that you really

5    haven't been performing any function on the FBI Task

6    Force for about a year?

7         A.    Other than sending any available

8    information that they may need.

9         Q.    I mean, they may --

10        A.    Other than that, no.  If they've asked me

11   to listen to a phone call here or there, maybe.  But

12   not on the streets, no.

13        Q.    So you really haven't been working with the

14   FBI Task Force --

15        A.    Indirectly, right.

16        Q.    -- for at least a year, right?

17        A.    I haven't -- I'm still involved.  I haven't

18   been working with them now for a little bit.

19        Q.    When you said on your CV, 2015 to the

20   present --

21        A.    Correct.

22        Q.    -- it really ended in 2016?

23        A.    Well, if they needed me to go with them

24   today, I would still go with them.

25        Q.    I'm sorry?  I didn't understand.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102 3038

 1        A.   That just means that I'm available when --
 2   if they needed me to, yeah.
 3        Q.   I suppose we all are available --
 4        A.   So that's still present.
 5        Q.   -- to provide the FBI with information, but
 6   that doesn't mean we are on the task force?
 7        A.   I'm explaining that that's the reason that
 8   it's still to present.  I don't believe I've ever
 9   been taken off.
10        Q.   The same thing that Mr. Sapien said, "2015
11   to the present," isn't it?
12        A.   I suppose so.
13        Q.   Look on the screen and see -- you don't
14   have to.  Is that the same thing that Mr. Cupit said?
15        A.   It appears it is.
16        Q.   Did you ever possess any sort of personal
17   identification that indicated that you were a member
18   of the FBI Task Force, a badge, a card, anything like
19   that?
20        A.   Just written documentation that I was.
21        Q.   Documentation?  What are you referring to
22   when you say "documentation"?
23        A.   Well, if I worked any overtime for them and
24   stuff, I would get paid.  For example, if I was
25   conducting something as part of the task force, there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3038

```
 1    is documentation that I was part of that task force,

 2    so I would be compensated back for -- if I had to

 3    stay overnight in a hotel or anything like that.

 4         Q.   So the only documentation --

 5         A.   So I was identified, yes, so I was

 6    identified as a task member.

 7         Q.   So the documentation that you were

 8    referring to is basically part of your compensation

 9    package?

10         A.   Well, in order for the New Mexico

11    Corrections Department to be compensated back for

12    overtime paid for the task force work that I've done,

13    I had to be identified as a task force member.

14         Q.   All right.  So you want to make sure that

15    you get identified as a task force member so that you

16    receive overtime pay or compensation for your

17    expenses; true?

18         A.   True.

19         Q.   Now, did the federal government ever pay

20    you for your role as a member of the FBI Task Force?

21         A.   In the form of overtime, yes.

22         Q.   So the federal government would issue you

23    checks directly?

24         A.   No.

25         Q.   All right.  Let me rephrase that question
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3039

```
 1    then.  Did you ever receive compensation from the
 2    federal government for your work as a member of the
 3    FBI Task Force?
 4         A.   Yes, through the Department of Corrections.
 5         Q.   So that money went to the Department of
 6    Corrections to reimburse them; is that how you
 7    understand it?
 8         A.   Correct.
 9         Q.   So you never got a 1099 from the federal
10    government, did you?  Do you know what a 1099 is?
11         A.   The only -- no.
12         Q.   Then don't answer the question, if you
13    don't know.  Don't guess at it.
14         A.   Okay.
15         Q.   A 1099 is a form that is part of the income
16    statements that is part of your tax returns --
17         A.   Okay.
18         Q.   -- indicating you've been paid by an agency
19    or an individual for work that you performed.  Did
20    you have a 1099 --
21         A.   No, sir.
22         Q.   -- just wait -- from the federal
23    government?
24         A.   No.
25         Q.   Do you receive retirement benefits?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3040

```
 1          A.    No.

 2          Q.    From the federal government?

 3          A.    No.

 4          Q.    So really, the FBI Task Force, up until,

 5    let's say, 2016, was just in name only, right?

 6          A.    I don't know.

 7          Q.    Now, I had started out by asking you

 8    questions concerning your lecturing for -- about

 9    various prison gangs, and that would be besides the

10    one in New Mexico.  You said all over the nation.

11    Can you tell me the names of any of those prison

12    gangs?

13          A.    The prison gangs all over the nation?

14          Q.    Yes.

15          A.    Well --

16          Q.    That were part of your lecture series.

17          A.    Yeah, easily the ones that surrounded areas

18    close to New Mexico, like Texas, California --

19          Q.    Okay.

20          A.    -- Nevada.

21          Q.    Give me the names of those.

22          A.    The major gangs within Texas would be the

23    Barrios Aztecas, the Texas Syndicate, the Mexicali,

24    the Surenos, the Tango Blast, and the Aryan

25    Brotherhood out of Texas.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106 of 042

1    Q.    Were they all basically prison gangs that

2    were populated by members of the Hispanic or Latino

3    community?

4    A.    Yes, with the exception of the Aryan

5    Brotherhood.

6    Q.    The Aryan Brotherhood; that was in Texas?

7    A.    Correct.

8    Q.    That was in California?

9    A.    California; you have the California Aryan

10   Brotherhood out of California, then you have the

11   Mexican Mafia, the Nuestra Familia, the Surenos.

12   Those are the primary gangs within -- and then of

13   course, Black Guerilla.

14   Q.    And did you testify concerning their codes

15   of conduct?  Or not testify, I'm sorry.  Did you

16   lecture concerning those particular prison gangs'

17   codes of conduct?

18   A.    Just their codes of conduct, just

19   variations of it.

20   Q.    Variations of it.  Variations from gangs

21   you were more familiar with?

22   A.    My point was -- my point in the

23   presentations was to show the similarities in prison

24   gangs and organizational structure.

25   Q.    Okay.  And, for example, what did you

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3042

1   understand was the organizational structure of the

2   Aryan Brotherhood?

3        A.   The organizational structure; that they

4   have an ideology of white supremacy.

5        Q.   I don't want to interrupt, but I didn't ask

6   you about their ideology.  I asked you about their

7   structure.  We all know what their ideology is.  You

8   don't have to be an expert to figure that out.

9        A.   Well, their ideology is what makes them --

10   is part of what their structure is.

11        Q.   I'm talking about structure; you had talked

12   in response to Ms. Jacks' questions about their

13   structure of the SNM, so I'm trying to draw some

14   parallel when you give these lectures about the Aryan

15   Brotherhood, what you know about the structure of

16   that particular prison gang?

17        A.   Oh, how the structure is as far as their

18   hierarchy?

19        Q.   Yes.

20        A.   The hierarchy of the -- they also operate

21   under a board of directors or individuals that run

22   the Aryan Brotherhood, and then they have their

23   captains and soldiers as well.

24        Q.   Captains and soldiers and a board of

25   directors?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    A panel, if you will.
 2        Q.    I want you to use your words, not copy them
 3   from somewhere else.  Is it a board of directors or a
 4   panel?
 5        A.    It's a panel.
 6        Q.    Do you know how they're selected?
 7        A.    The same concept.  Primarily the same
 8   concept, where individuals are brought in and voted
 9   upon, and a sponsor -- they're sponsored.  And they
10   go through an orientation process, as well as the
11   structure indicates that they have a
12   blood-in-blood-out.
13        Q.    Okay.  They go through an orientation
14   process, is that what you testified to?
15             MS. ARMIJO:  Objection, argumentative.
16             THE COURT:  Overruled.
17             MR. SINDEL:  I'll withdraw it.
18             THE COURT:  I think it's okay cross.
19        Q.    Let's talk a little bit about the source of
20   the information that you have that you believe makes
21   you an expert in this case.
22             What I heard from your testimony yesterday
23   and today, it is almost, it is primarily based upon
24   interviews that you have had or other members of your
25   staff have had with people that are familiar with the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3044

```
 1    SNM; correct?
 2         A.    That are members.
 3         Q.    Well --
 4         A.    Yes.  So that would make them familiar,
 5    yes.
 6         Q.    I mean, you know, the people that you talk
 7    to in law enforcement, they're not members, right?
 8         A.    Correct.
 9         Q.    Okay.  So it's all based upon interviews
10    that you have conducted, really, isn't that --
11              MS. ARMIJO:  Objection; misstates --
12         Q.    -- the bottom line?
13              MS. ARMIJO:  Objection; misstates his
14    testimony.
15              THE COURT:  Well, he can clear it up if
16    it's not correct.  Overruled.
17         Q.    Isn't that the bottom line?
18         A.    Could you repeat your question?
19         Q.    That the information that you receive, that
20    you use in order to qualify as an expert is based
21    upon interviews that you have done with law
22    enforcement, cooperating individuals, members of the
23    SNM?
24         A.    That I have done and other people have
25    done.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3045

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9046

```
 1        Q.   So you or other staff members, right?

 2        A.   Correct.  Or law enforcement.

 3        Q.   You said that some gang members or other

 4   members of the prison population sometimes seek

 5   favors as a result of their cooperation; correct?

 6   I'm not saying you grant them.  I'm saying they ask

 7   for them.

 8        A.   You're asking me if inmates, when I

 9   interview them, ask me for favors?

10        Q.   I'm asking whether or not one of the

11   purposes of them providing information is to see if

12   they can secure better housing, or a transfer, or

13   some favor from the prosecuting authorities, anything

14   like that?

15        A.   I suppose in some cases.

16        Q.   Okay.  I mean, it wouldn't be unusual at

17   all for them to see if there is something they could

18   possibly gain from giving you information that may,

19   as you said, put their lives in danger?

20        A.   Well, I suppose anytime they give

21   information, they want to gain something from it.

22        Q.   So, you know, when they go in there to talk

23   to you, and you say:  What do you know?  They can

24   sometimes say, Well, what can I get if I tell you?

25        A.   There have been instances when that has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3046

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113047

```
 1    occurred, yes.

 2              THE COURT:  Mr. Sindel, would this be a

 3    good time for us to take our lunch break?

 4              MR. SINDEL:  I think I can just finish up

 5    this particular topic in a few minutes, if that's

 6    okay with you.

 7              THE COURT:  I need to attend to some stuff.

 8    So why don't we take a little bit of an earlier lunch

 9    break.  We'll be back in about an hour.

10              MR. SINDEL:  Well, as they say, it's your

11    show.

12              THE COURT:  All right.  See you in about an

13    hour.

14              (The Court stood in recess.)

15              THE COURT:  All right.  We'll go back on

16    the record.  Has everybody got counsel?  I know Mr.

17    Castle is not going to be here this afternoon, so

18    he's not here.  Everybody else got counsel?

19              All right.  I stepped up here to the bench

20    to get some papers, and the men looked like they were

21    enjoying their pizza.  Was it the Domino's?

22              DEFENDANT TROUP:  Yes, sir.

23              THE COURT:  Was it good?

24              DEFENDANT TROUP:  Yes, sir.

25              THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3047

```
 1              DEFENDANT TROUP:  You should have had some
 2      with us, Judge.
 3              THE COURT:  You don't want any ex parte
 4      contact.  They did ask for beer, and I just -- might
 5      be going a little far there.
 6              MR. SINDEL:  Not now.
 7              DEFENDANT BACA:  We really appreciate it.
 8              THE COURT:  All right.  You thank your
 9      counsel for that.
10              All right.  Mr. Martin, I'll remind you
11      you're still under oath.  Mr. Sindel, if you wish to
12      continue your cross-examination, you may do so at
13      this time.
14              MR. SINDEL:  Thank you, Your Honor.
15              THE COURT:  Mr. Sindel.
16      BY MR. SINDEL:
17          Q.  I hope you had a good lunch.
18          A.  I did.
19          Q.  Got a chance to relax, gather your
20      thoughts.
21          A.  Yes, sir.
22          Q.  So we left off when we were talking about
23      the fact that a number of people who come to you to
24      provide you with information are seeking some sort of
25      assistance or benefit; correct?  That's what you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3048

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113 3049

```
 1    testified to.  But if you want to change it, you can

 2    change it.

 3         A.   Yes, sir.  Looking for some kind of

 4    assistance, correct, in some cases.

 5         Q.   Not 100 percent, but, as you said to

 6    Ms. Jacks, these guys really are good at manipulating

 7    people, right?

 8         A.   I believe she said that.

 9         Q.   You answered yes?

10         A.   Yes.  There are individuals that are good

11    at manipulation, yes.

12         Q.   So you agreed with her; when she said it,

13    you said yep, that's right?

14         A.   Some people are good at manipulation.

15         Q.   So some of the things they're looking for

16    may be better housing or different housing?

17         A.   Yes, different housing.

18         Q.   Okay.  And they might be looking for better

19    visits with their family?

20         A.   I don't have control of whether they were

21    getting better visits or not.

22         Q.   I'm not asking you that, sir.

23         A.   If they're reclassified, will they get

24    different visits?  On some occasions, yes.

25         Q.   And those visits can include contact
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14050

```
 1    visits?

 2         A.   Yes, sir.

 3         Q.   Okay.  And they can include visits with

 4    their wives and their children and their girlfriends

 5    and things like that?

 6         A.   Correct, sir.

 7         Q.   And it can be contact visits?

 8         A.   Correct, sir.

 9         Q.   And you said the other day when you were

10    testifying, you talked about monitoring those visits.

11    And sometimes they don't get monitored that well.

12         A.   I would imagine that some visits are not

13    monitored well.

14         Q.   Now, are those -- when an inmate has a

15    visit that occurs within a closed room, are those

16    monitored as well?

17         A.   We try to keep a visual monitor, yes.

18         Q.   And when you say a "visual monitor," is

19    that a human being with eyeballs, or that is a

20    camera?

21         A.   We'll do rounds and do -- depending on what

22    facility you're at, so different facilities are

23    different as far as their visitation.  So, for

24    example, the contact visits are out in the open, and

25    there is an officer keeping observation.  And then
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3050

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115 3051

```
 1    there are individuals that are in segregated areas,

 2    where they talk over the phone, where there is no

 3    contact visit.  And those -- depending on what

 4    facility you're at, you can keep a visual on that as

 5    well.  Or in other areas, you'll have to -- we can

 6    also do it by camera.

 7         Q.   You can also do it by camera.  So that, at

 8    least in the situation in which an inmate -- well,

 9    let me ask you this:  There are no contact visits

10    with inmates in a room where they can't be watched;

11    correct?

12         A.   They should be monitored, correct.

13         Q.   And you said the contact visits, that

14    occurs out in the open, because there is a

15    correctional officer there, and he can watch and make

16    sure that everything is sort of copacetic?

17         A.   Correct, sir.

18         Q.   There wouldn't be an occasion for a contact

19    visit in a closed room, correct, for an inmate?

20         A.   No.

21         Q.   And even if they're informing, and even if

22    they're providing information, that's not going to

23    occur, from what you understand of the rules and

24    regulations of the Department of Corrections?

25         A.   I'm not sure I understand your question.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3051

```
 1        Q.   Well, it's not -- in other words, if it's
 2   contact, it's in the open, right?
 3        A.   It's in the open.
 4             MS. ARMIJO:  Your Honor, I'm going to
 5   object, because now we're beyond his basis for expert
 6   opinion.  And I believe he's fishing for information
 7   on a different case.
 8             THE COURT:  How do you connect it with the
 9   Daubert/Rodriguez hearing we're having, Mr. Sindel?
10             MR. SINDEL:  Well, I think that this
11   basically goes to show that there are inmates who are
12   cooperating, who receive significant benefits as a
13   result, and therefore, their information, and he's
14   testified that's basically all he relies on is the
15   information he gets from inmates.  So I'm trying to
16   show that there is a motivation behind the inmates
17   for providing this information.
18             THE COURT:  Well, it's kind of difficult --
19   the breadth of his testimony -- to cabin it too much.
20   I'll give you a little leeway on this and overrule
21   the objection.  But I think you're making your point
22   so maybe you don't need to spend too much time on it.
23             MR. SINDEL:  I will not, Your Honor.
24             THE COURT:  Mr. Sindel.
25        Q.   Do informants who are providing information
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3052

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3053

```
 1    in connection with this investigation receive

 2    conjugal visits?

 3         A.    No.

 4         Q.    Never?

 5         A.    They're not allowed conjugal visits.

 6         Q.    And that would include visits that include

 7    physical sexual contact?

 8         A.    Correct.

 9         Q.    Have you interviewed the defendants in this

10    case before the case was brought?

11         A.    I've interviewed some, yes.

12         Q.    Are there any that you have not

13    interviewed?

14         A.    Yes.

15         Q.    Okay.  My client is Joe Gallegos.

16         A.    Correct.

17         Q.    And, Mr. Gallegos, have you interviewed

18    him?

19         A.    I've never interviewed Joe Gallegos.

20         Q.    His brother, Andrew, have you ever

21    interviewed him?

22         A.    I've never interviewed Joe Gallegos or his

23    brother.

24         Q.    Okay.  And the inmates you have

25    interviewed, that are now defendants in this case,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3053

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118 3054

```
 1    have you provided the memorandum or notes that you
 2    took as a result of that interview to the Government?
 3          A.    I have not.
 4          Q.    Are they stored anywhere?
 5          A.    My memorandums on interviews are turned
 6    over to the STIU coordinator.
 7          Q.    I'm sorry?
 8          A.    Any interviews that I conducted, written
 9    interviews or memorandums, are turned over to the
10    STIU coordinator.
11          Q.    Who is that individual now?
12          A.    At the Penitentiary of New Mexico, is that
13    what you're asking?
14          Q.    Yes.
15          A.    Adam Vigil.
16          Q.    Could you spell that name, please, for me?
17          A.    Adam Vigil, A-D-A-M.  V-I-G-I-L.  Vigil.
18          Q.    I'm a Yankee.
19                So this individual, he then -- he gets all
20    these interviews, notes, and materials that you
21    prepared in connection with this defendant, and then
22    it is up to him whether he distributes them to the
23    Government or anyone else, right?
24          A.    I suppose if they wanted them, that's how
25    they would acquire them.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3054

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119

1      Q.   In other words, the place to go, if you
2  want to see your notes, your work product, is go to
3  Adam?
4      A.   Correct.  Well, he's the one I forward all
5  my stuff to, since he's my boss.
6      Q.   Is there any particular location, either
7  physical or within the computerized system, where
8  these items are stored?
9      A.   I suppose some are stored.  The purpose is
10  not to provide them to the Government.  The purpose
11  of doing the interview is to establish different
12  things.  For example, if I'm interviewing an
13  individual that wants to seek protective custody,
14  that will go to the coordinator, and the coordinator
15  will get ahold of the proper individuals to make sure
16  that that happens.
17        If I'm interviewing an individual
18  because -- let's say, for example, he's in the Level
19  5 system and he needs to go to a Level 4 system, or
20  to a Level 3 system, then that documentation would be
21  given to Adam Vigil.  And again, he would distribute
22  that to CBC or whomever -- unit managers, whoever is
23  responsible for the movement of that inmate.
24      Q.   And I understand that it is not routine to
25  provide that information to the Government.  But if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3055

```
 1    it was requested and went through proper channels,

 2    that information would be available; correct?

 3         A.   Correct.

 4         Q.   And that information, if it had gone

 5    through proper channels, could be made available to

 6    the Government, and through them to the defense

 7    lawyers in this case; correct?

 8         A.   I guess I don't know how they do their

 9    business.

10         Q.   And in terms of -- you said -- had you

11    interviewed any defendants that are involved in this

12    case, or the related case, who were seeking

13    protective custody?

14         A.   Have I interviewed them before?

15         Q.   Yes.

16         A.   Yes.

17         Q.   Have you interviewed those who were seeking

18    protective custody that are defendants in this case

19    or the related case?

20         A.   I probably have.

21         Q.   I'm not asking the names.  But can you

22    think of any particular individual, as you sit there

23    now, that falls outside of the "probably" and the

24    ideas?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3056

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23057

1       Q.   So the answer really would be yes?

2       A.   Yes.

3       Q.   All right.  Now the STIU coordinator, that

4   is a individual who is above you in terms of

5   supervision?

6       A.   He's my boss.

7       Q.   Okay.  Have you ever made application for

8   that particular position yourself?

9       A.   I believe I applied for the coordinator's

10  position at Southern at one point.

11      Q.   At one point?

12      A.   Yes, I'm trying to remember.

13      Q.   When was that?

14      A.   I think it may have been in 2012 or

15  something like that.

16      Q.   And when you applied for that, is that a

17  formal procedure in which you fill out an

18  application?

19      A.   No.  You have to go through the state

20  government SPO.

21      Q.   And do you know whether or not there is any

22  test or qualifications that you have to have in order

23  to secure a designation to that position?

24      A.   No.

25      Q.   So, you know, you go through the state

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3057

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23058

1    government, and then they just say, look at your

2    application, and they say yay or nay?

3         A.   They determine if I meet the

4    qualifications.

5         Q.   But you don't have to go in for an

6    interview?

7         A.   If SPO says you met the qualification, then

8    they set up an interview, yes.

9         Q.   No test?

10        A.   Interview.

11        Q.   That person wouldn't have to identify the

12   policies or procedures either; correct?

13        A.   Depends what the questions are.

14        Q.   Now, the Exhibit 22, which you had referred

15   to, the packet concerning Mr. Baca, that basically

16   exists for other defendants in this case, a similar

17   packet; is that right?

18        A.   Correct.

19        Q.   I'm going to show you what's been

20   previously marked as Defendant Joe Gallegos Exhibit

21   C.   And that starts at page number 9386.  Do you

22   recognize that document as being the packet that

23   bears in connection with Mr. Gallegos' status in

24   terms of STG or Security Threat Group?

25        A.   Yes, sir, it seems to be similar.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3058

```
 1              MR. SINDEL:  Your Honor, I'd move the

 2    admission of Defendant Joe Gallegos Exhibit C.

 3              THE COURT:  Any objection?

 4              MS. ARMIJO:  No, Your Honor.

 5              THE COURT:  All right.  Any objection from

 6    the defendants?

 7              All right.  Joe Lawrence Gallegos' Exhibit

 8    3 will be admitted into evidence -- oh, I meant C.

 9         Q.   Okay.  I'm going to show you basically the

10    cover page on this Exhibit C.  That contains a

11    picture of Mr. Gallegos, his name up there in the

12    upper left-hand corner; is that right?

13         A.   Correct.

14         Q.   Can you see there his age?

15         A.   Yes.

16         Q.   46; is that right?

17         A.   I see it says 46, yes, as his age.

18         Q.   And you see there under gangs?

19         A.   Correct.

20         Q.   Syndicato de Nuevo Mexico, suspected;

21    correct?

22         A.   Correct.

23         Q.   And Eastside Locos, ESL, Valencia?

24         A.   Correct.

25         Q.   Suspected, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3059

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3060

1        A.    Correct.

2        Q.    So, in other words, there hasn't been made

3   a determination as to whether or not he's a member?

4   He's simply suspected?

5        A.    That's what it appears to be, sir.

6        Q.    I mean --

7        A.    That's what it says, yes.

8        Q.    Okay.  And part of that packet is the

9   criteria that you had referred to earlier on Mr.

10  Baca, you know, with a level 29.  This is for Mr.

11  Gallegos; correct?

12       A.    Correct, sir.

13       Q.    All right.  And that has group photos,

14  right?

15       A.    Correct.

16       Q.    And we know from the cross-examination that

17  Ms. Jacks did, that that's really nebulous as to

18  whether that's a particular aggravating circumstance,

19  since Mr. Gallegos would be living with other -- with

20  SNM designees?

21       A.    Unless he was in the population setting in

22  2001.

23       Q.    Do you know if he was?

24       A.    I don't.

25       Q.    So he gets two points for that, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3060

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25061

```
1         A.    Correct.

2         Q.    And there is some CI information.  That's

3    one of these -- you referred to them as rats and

4    snitches, confidential informant information, right?

5         A.    That I referred to them as rats and

6    snitches?

7         Q.    You did when you were testifying, you

8    called them rats or snitches, right?

9         A.    I agreed that that's what they're called.

10        Q.    And that's a two-point, right?

11        A.    Correct.

12        Q.    And he totals out at 4?

13        A.    Correct.

14        Q.    Is 4 sufficient to designate him as a

15   member of the SNM?

16        A.    It's enough to suspect him.

17        Q.    Is it sufficient to identify him as a

18   member of the SNM?

19        A.    Yes.

20        Q.    So when they say on page 1 he's suspected,

21   that's wrong, in your opinion?

22        A.    No, it's enough to suspect him.  I guess I

23   misunderstood your question.

24        Q.    When that happens, just stop me.

25        A.    Okay.  I'm sorry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3061

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 26062

```
 1          Q.   Don't answer a question if you don't
 2    understand it.
 3          A.   Correct.  I misunderstood your question.
 4          Q.   So is 4 points on the criteria sufficient
 5    to identify him as a member of the SNM?
 6          A.   No, it's just a suspected.
 7          Q.   And if the photo is meaningless, he's down
 8    to 2 points, right?
 9          A.   Correct, sir.
10          Q.   This is another page of the packet
11    identifying Mr. Gallegos; correct?
12          A.   Yes, it is.
13          Q.   And his age is 35?
14          A.   Correct.
15          Q.   Nine years before the other one you had
16    seen?
17          A.   Correct, sir.
18          Q.   And he is still only suspected; is that
19    right?
20          A.   That's correct.
21          Q.   And as you said, you can keep adding things
22    to these packets if there is more information, right?
23          A.   Documentation, yes, sir.
24          Q.   And one of the things that you guys use is
25    tattoos?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3062

```
 1          A.   Our documentation, yes, sir.
 2          Q.   And, in fact, there is only one thing -- or
 3    two things that are equal to tattoos.  One is a
 4    self-admission, right?
 5          A.   Correct, sir.
 6          Q.   And you would certainly understand that a
 7    self-admission is pretty much as good evidence as
 8    you're going to get?
 9          A.   Correct.
10          Q.   And the other that has the same consequence
11    is tattoos?
12          A.   Correct, sir.
13          Q.   And then also court records?
14          A.   Correct.
15          Q.   And, of course, you know that you just
16    can't like scrub a tattoo off, right?  Once you got
17    it, you got it?
18          A.   Correct, sir.
19          Q.   So even the people that go into RPP, are
20    still going to still have those distinguishing
21    tattoos, aren't they?
22          A.   They are.
23          Q.   And people who leave and go on the street,
24    they're still going to have those tattoos; correct?
25          A.   Correct, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3063

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3064

1      Q.   So that classification or criteria goes on

2    forever?

3      A.   It appears so.

4      Q.   Blood-in-blood-out, it's always going to be

5    there?

6      A.   Correct.

7      Q.   Let's take a look at Mr. Gallegos'

8    notification concerning the tattoos that exist on his

9    head, his face, his rear end, or his front side.  Any

10   that are designated?

11     A.   From the document you're showing me, no.

12     Q.   Yeah.

13     A.   There is no tattoos designated.

14     Q.   No tattoos.  And as far as you know, there

15   have never been tattoos from the time up until he's

16   age 45, right?

17     A.   There is no documentation of it, no.

18     Q.   There is no documentation.  When they do

19   these documentations on tattoos, do they have them

20   take off their clothes?

21     A.   Yes, they do.

22     Q.   So they would be able to see all of Mr.

23   Gallegos' body and make some notation as to whether

24   or not he had these damning tattoos?

25     A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129

```
 1        Q.    And as part of his packet, that's an STG
 2   validation, right?
 3        A.    It's a form that's part of the packet,
 4   correct.
 5        Q.    And on that form, basically, it has ten
 6   points to be confirmed as a member and a minimum of
 7   two criteria?
 8        A.    Correct.
 9        Q.    Must be validated by STG administrator?
10        A.    Correct.
11        Q.    Is that the same thing as the STG
12   coordinator?
13        A.    No, it's not.
14        Q.    Now, is the STG administrator higher or
15   lower than the coordinator?
16        A.    Higher.
17        Q.    And two points makes him a suspect?
18        A.    Correct.
19        Q.    And these particular forms then go through
20   all the criteria, and basically, just like before,
21   check them off with a little more information.
22        A.    Correct.
23        Q.    And I'm assuming that, in terms of making
24   the decision whether or not that Mr. Gallegos is a
25   suspect, or nothing, it is all up to Cheryl Lackey;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3065

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3066

1    is that right?

2         A.   No, it's not.  It's -- she just turns this

3    documentation in, and the coordinator would determine

4    whether she had sufficient documentation to indicate

5    he's a suspect.

6         Q.   Is it the coordinator or the administrator,

7    or both?

8         A.   For validation purposes, it's the

9    administrator.

10        Q.   And one of the criteria that's referenced

11   there refers to information that was given by a

12   confidential informant?

13        A.   Correct.

14        Q.   We'll look at this paragraph here.  Is that

15   the paragraph that refers to information that was

16   provided by some unknown confidential informant?

17        A.   That doesn't appear to be a memorandum as

18   to the confidential informant, no.

19        Q.   Well, in that packet that you reviewed, did

20   you see anywhere a memorandum that indicated his

21   membership or his cooperation or his affiliation with

22   the SNM?

23        A.   Did I see in the packet the CI information,

24   is that what you're asking?

25        Q.   Yeah, a memorandum, something?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3066

```
 1              A.   I wasn't looking for it, so, no.
 2              Q.   I could show you again, or you can take my
 3     word for it.  It's not there?
 4              A.   I'll take your word for it if you say it's
 5     not there.
 6              Q.   So if the group photo is meaningless and
 7     the memorandum isn't there, he's down to a zero,
 8     isn't he?
 9              A.   If the group photo is no good and the
10     memorandum is not there, and it's not in his file?
11              Q.   Yeah.
12              A.   Well, yeah.
13              Q.   Zero?
14              A.   Yeah, it would be a zero.
15              Q.   On this criteria that we've been talking
16     about, do you know who it was that assigned the
17     particular numeric value to each of the headings or
18     topics?
19              A.   I don't.  I would imagine it was the --
20              Q.   Excuse me.
21              A.   I don't know.
22              Q.   All right.  Now, if you want to imagine
23     how, go ahead, you could do that.
24              A.   I would imagine --
25              MS. ARMIJO:  Objection, calls for
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3067

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132 3068

1   speculation.

2          THE COURT:  Well, if he can do it, I'll

3   listen to his testimony.  Overruled.

4      A.   It may have come from the administration,

5   the New Mexico Corrections administration policy, the

6   individuals who make policy.

7      Q.   And as far as you can tell, of the packets

8   you reviewed, those numerical assessments of how to

9   value the criteria have not changed for decades, have

10  they?

11     A.   They don't seem to have changed very much,

12  no.

13     Q.   Not very much.  They haven't changed at

14  all, have they?

15     A.   I don't believe they have.

16     Q.   And have you ever participated in any sort

17  of process where you had input in how to value these

18  particular criteria?

19     A.   No, I have not.

20     Q.   Now, when somebody comes back from the

21  streets, and having been compelled to commit a

22  criminal act by the SNM members, and he comes back

23  and he's wearing all those tattoos, he's going to be

24  designated as an SNM member, isn't he?

25     A.   If he has the criteria of the SNM tattoos,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    yes.

2        Q.   Now, I believe you may have been asked

3    these questions -- and if I repeat them, I

4    apologize -- but would it be fair to say that books

5    and articles and magazines and journals, the only

6    written material that you have prepared are

7    PowerPoints; true?

8        A.   The only material that I have prepared?

9        Q.   Written material that you have prepared in

10   connection with your expertise in gang membership and

11   conduct and behavior are PowerPoints, right?

12       A.   That's fair to say.

13       Q.   Okay.  Has anyone ever approached you about

14   writing an article for a magazine or a journal?

15       A.   I believe that's prohibited by NMDC policy.

16       Q.   You believe it is, or you know?

17       A.   It is.

18       Q.   So that the only thing you could ever do,

19   as far as you're concerned, unless you left the

20   confines of the employment of the Department of

21   Corrections, is PowerPoint; is that right?

22       A.   Unless they gave me permission to do

23   otherwise, yes.

24       Q.   So it's prohibited unless they tell you

25   okay?

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3069

1        A.    Correct.

2        Q.    And you could go to the powers that be and

3    say, Look, I've gotten a lot of information; I'm an

4    expert; let me please write some articles for the

5    journals that will have national publication or

6    statewide publication, because I have information

7    that is valuable that I can share?

8        A.    The Secretary of Corrections has the

9    ability to circumvent policy.

10       Q.    Well, they have ability to allow you to do

11   that, right?  It's not circumventing; it's giving you

12   permission.

13       A.    Yes, he could.

14       Q.    All right.  So tell me how many times you

15   have approached these individuals and say:  I have an

16   expertise that should be shared with the world?

17            MS. ARMIJO:  Objection, argumentative.

18            THE COURT:  Overruled.

19       A.    I've done this through presentations.

20       Q.    How many times have you approached him and

21   said:  I would like to write a book, an article, a

22   journal entry, anything like that?

23       A.    Never.

24       Q.    You referred to a gentleman the other day

25   during your direct and again in cross-examination, a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3070

```
 1    Dr. Robinson.  Do I have that right?
 2         A.   Yes, Dr. Robinson.
 3         Q.   What is Dr. Robinson's first name?
 4         A.   His first name is Robert Robinson.
 5         Q.   And you said he taught -- and I'm sorry, I
 6    just didn't hear what you had said the other day.
 7         A.   I said he had a Ph.D.
 8         Q.   Is he a professor somewhere, or does he
 9    just have a Ph.D.?
10         A.   He has a Ph.D. in philosophy.  I don't know
11    if he's a professor anywhere.
12         Q.   So you don't know if he is actively
13    instructing students on matters that might concern
14    prison gangs or street gangs or anything like that;
15    correct?
16         A.   He works directly for the Department of
17    Corrections as an educator.
18         Q.   Where?
19         A.   I believe different prisons.  But he works
20    directly for the Department of Corrections.
21         Q.   You mean New Mexico Department?
22         A.   Yes.
23         Q.   Okay, then.  So that basically, am I
24    understanding that your information is primarily
25    confined to the boundaries and borders of the State
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3071

1   of New Mexico?

2          A.   I'm not understanding the question.

3          Q.   All right.  Well, are you consulting with

4   other individuals concerning your area of expertise

5   that are in other areas besides the State of New

6   Mexico?

7          A.   To write my PowerPoints?

8          Q.   I mean, do you pick up the phone, or do you

9   send an email, or do you ask to visit someone who is

10  not within the New Mexico Department of Corrections

11  so you can discuss your findings and their beliefs?

12         A.   Yes.

13         Q.   All right.  So there are other people,

14  right?

15         A.   There is another person, yes.

16         Q.   There is another person.  Who is that other

17  person?

18         A.   Al Valdez.

19         Q.   Alan Valdez?

20         A.   Al.  A-L.  Valdez.

21         Q.   And where is Mr. Valdez located?

22         A.   He's a professor at the University of

23  California Irving (sic).

24         Q.   Irvine?

25         A.   Irvine, I'm sorry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3072

1     Q.   That's okay.  Does he have a Ph.D. in

2   philosophy, too?

3     A.   No, sir.

4     Q.   How often would you say you consult with

5   Professor Valdez?

6     A.   On occasion I've consulted with him.  He's

7   a gang expert in California.  He spent over 27 years,

8   I believe, or 30 years, as a gang unit police officer

9   in California.

10     Q.   You said a police officer; is that right?

11     A.   Correct.

12     Q.   Part of his time was on the streets?

13     A.   As a gang unit officer, yes.

14     Q.   And he went on to become a professor.  Do

15   you know anything of his educational background?

16     A.   I don't know too much about his educational

17   background, other than I consult with him on gang

18   issues.

19     Q.   Would it be fair to say that his background

20   is very similar to you as primarily experience?

21     A.   I think he's written over 13 books.

22     Q.   Same number as Dr. Robinson?

23     A.   I never said Dr. Robinson wrote 13 books.

24     Q.   Has Dr. Robinson written any books?

25     A.   I don't know.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3073

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

```
 1        Q.   So when you said "13 books," I may have
 2   misunderstood.  You were referring to this
 3   individual, Mister or Professor Valdez?
 4        A.   Correct.
 5        Q.   Have you ever communicated with him in
 6   writing, either by email or letter?
 7        A.   Yes.
 8        Q.   And are those documents or those letters or
 9   emails saved?
10        A.   Yes.
11        Q.   Those are in the backup material?
12        A.   I believe they are.
13        Q.   Do you put them in any particular file or
14   folder?
15        A.   They may be in my gang education folder.
16        Q.   Your gang education folder?  Is that what
17   you call it?
18        A.   Correct.  That's what I named it in my
19   folder.
20             MR. LOWRY:  Your Honor, may we have a
21   moment?
22             MS. DUNCAN:  I was just wondering if the
23   Court would excuse me.  I have a family medical
24   emergency and I need to go.
25             THE COURT:  No, that's fine.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3074

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3075

```
 1        Q.   If the biography at the University of
 2   California Irvine indicates that Al Valdez has
 3   published four books, not 13 --
 4        A.   Okay.  I may have been mistaken on the
 5   amount.
 6        Q.   By nine books?
 7        A.   Well, I thought he had told me 13.  I've
 8   read a couple of his books.
 9        Q.   You read his books?
10        A.   A couple.
11        Q.   All right.  Four?
12        A.   I've read --
13        Q.   Three?  Two?
14        A.   I've read two of his books.
15        Q.   I think the other day you said that you had
16   read other books.  Can you provide us with the names
17   and the authors of the books that you have read that
18   have informed you concerning gang activities in the
19   various prisons throughout United States?
20        A.   One was written by Rene Enriquez, "Boxer,"
21   a former Mexican Mafia member.  Another one was Mr.
22   Medina, was also a former member of the Mexican
23   Mafia.  And I'm horrible as far as remembering titles
24   and names of the books.
25        Q.   But at least the two that you remember were
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3075

1  written by former gang members; is that how you

2  understand it?

3       A.   Yes, the two, yes.

4       Q.   They're the Mexican Mafia, both of them?

5       A.   Correct.

6       Q.   None of them with the SNM?

7       A.   I've not read any books on the SNM, no.

8       Q.   Do you know what the definition of the word

9  "enterprise" is?

10       A.   Enterprise, as I believe it, is a

11  structured organization.

12       Q.   Do you know what association-in-fact means?

13       A.   Association-in-fact?

14       Q.   Yes.

15       A.   I can't say that I do.

16       Q.   Now, we had talked a little bit about your

17  work as an FBI uncertified task force participant.

18  Have you investigated the SNM outside the prison

19  walls?

20       A.   Usually, when the FBI calls me and I

21  accompany them, I don't really always know exactly

22  what -- other than the briefing -- what we're going

23  to do.  But the investigation is not conducted by me.

24       Q.   All right.  Who from the FBI regularly

25  calls you to assist them in their activities?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3076

1        A.    Usually, if I go, it will be Mr. Bryan

2    Acee.

3        Q.    And I think you said it's been about a year

4    since any of those things have happened.  Do you do

5    any active investigation of the street activities of

6    any prison gangs?

7        A.    I don't.

8        Q.    And we heard testimony that the SNM rules

9    have changed over time; is that true?

10       A.    Correct.  Some of their rules and how they

11   run.

12       Q.    Have they changed since 2001, to your

13   knowledge?

14       A.    Yes.

15       Q.    And what are the changes that you're aware

16   of that took place around 2001?

17       A.    In particular to what?

18       Q.    You said you knew of rule changes.  I'm

19   asking you what are the rule changes?

20       A.    The rule changes?

21       Q.    Yeah.

22       A.    On how they conduct business.  Well, when

23   they were segregated, of course, their rules changed,

24   because they were no longer in a population setting

25   so they couldn't control the population setting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3077

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143078

1    anymore.  So a lot of their rules, as far as how they

2    collected money, how they taxed other individuals,

3    that was no longer applicable to them; they couldn't

4    do that anymore.  So that kind of rule has changed,

5    as far as being able to assault other inmates.

6        Q.   Hold on for just a second.  The rule about

7    collecting money, what was it before it changed, and

8    what is it after it changed?

9        A.   What's the rules of collecting money?  In

10   the population setting, they would have one of their

11   soldiers -- if another inmate in the population

12   setting owed them money, they would go and collect

13   that money.  If that money wasn't paid, they would

14   get assaulted.

15            Afterwards, they're in the segregation

16   population setting, so the rules of that would change

17   a lot differently.  So they weren't able to actively

18   assault other inmates.

19       Q.   I know.  But what was the change in the

20   rules?

21       A.   Well, the change in the rules would be they

22   would have to do it on the outside, not on the

23   inside.

24       Q.   Do it on the outside?

25       A.   They would have to figure out a way to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3078

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

1    collect the money on the streets and not inside the

2    prison.  So --

3        Q.    PayPal?  I mean, how do they get the money

4    outside in to the inmates on the inside?

5        A.    Family members.

6        Q.    And when it was inside, did somebody come

7    up and just pull out a roll of dollar bills, and give

8    it to someone?

9        A.    They were paid in canteen sometimes.  And

10   other times money was added onto their books by

11   family members.

12       Q.    So the family members were doing it before

13   this rule change, and the family members were doing

14   it after this rule change, right?

15       A.    Yes.  Except for the rules changed in a

16   sense where it was limited to how they could do it.

17   So that was a change in itself.

18       Q.    Well, certainly, if it's money they want,

19   it's going to go through family members and not

20   through the prison setting, right?

21            MS. ARMIJO:  Objection, vague, as to whose

22   family members.

23            THE COURT:  Well, if he can answer the

24   question.

25       Q.    Inmates' family members --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 MR. SINDEL:  I'm sorry.  I apologize.
 2                 THE COURT:  Overruled.
 3        A.    What was the question again?
 4        Q.    If the money was going to go in to an
 5   inmate from someone's family members, the inmates'
 6   family members, that's the only way they were going
 7   to get currency, right?
 8        A.    Not the only way.  Sometimes they'll
 9   smuggle money into prisons.
10        Q.    How frequent is that?
11        A.    Not very.
12        Q.    So would you say generally the way that an
13   inmate can get money is to put it on his books so he
14   can spend it at the canteen?
15        A.    Or exchange of canteen within the prison.
16        Q.    Can you tell me of one of these other sea
17   changes in the rules?
18        A.    I believe one of the changes had occurred
19   when different individuals took control of the gang.
20   For example, when Anthony Ray Baca returned back, the
21   violations and the changes in the rules changed,
22   simply because there was a lot of bickering and
23   infighting within the organization.  So I believe
24   that we did confiscate some rules and violations that
25   were different than they had before.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145

```
 1        Q.   Let's talk about the rules first.  When the
 2   rules are confiscated, where are they?
 3        A.   They're in the possession of STIU.
 4        Q.   I'm sorry, what?
 5        A.   They're in the possession of STIU.
 6        Q.   Have those been, to your knowledge, turned
 7   over to the Government to substantiate the allegation
 8   that these rules have changed?
 9        A.   I don't know.
10        Q.   Let me ask you this:  Somebody goes to the
11   administrator, your immediate supervisor -- I'm
12   sorry, the coordinator, your immediate supervisor?
13        A.   Correct.
14        Q.   Does he go to you and say:  You need to
15   send this stuff, or does someone else have that job?
16        A.   He will usually send it.
17        Q.   He will usually send it.
18        A.   He will usually send it, or he'll designate
19   someone to send it.
20        Q.   Okay.  So who would he designate?
21        A.   I don't know.
22        Q.   Has he ever designated you?
23        A.   No.
24        Q.   Despite the fact that you are the author of
25   some of these memos, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3081

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3082

```
 1          A.    Correct.

 2          Q.    You probably know the most about them;

 3   correct?

 4          A.    Correct.

 5          Q.    You know more than Mr. Sapien does;

 6   correct?

 7          A.    I don't know if I know more than Mr.

 8   Sapien.

 9          Q.    You know -- certainly, you know more, as

10   you indicated earlier, you are more qualified than

11   Mr. Cupit, right?

12          A.    I don't know if I'm more qualified than Mr.

13   Cupit.

14          Q.    Do they have the same jobs you do?

15          A.    No, they do not.

16          Q.    Are they on the same pay grade, as far as

17   you know?

18          A.    No.

19          Q.    Are they higher or lower?

20          A.    One is higher, one is lower.

21          Q.    Who is higher?

22          A.    The captain.

23          Q.    And who is -- obviously, the one that's

24   left is lower?

25          A.    Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3082

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3083

```
 1          Q.   And you also discussed the database where
 2    you can enter things into a computer?
 3          A.   Correct.
 4          Q.   Is that simply just entering information
 5    that you've already been provided, so it's stored
 6    within the memory of the computer?  Is that what
 7    that's about?
 8          A.   Well, there is a lot of databases.  Which
 9    one are you referring to?
10          Q.   Well, I'm talking about whatever the
11    computer -- do you use a particular software program?
12          A.   To look up an inmate's status, it's by
13    different staff members, and different people have
14    access to, or a limited access to the different
15    areas, depending what their job description is.  So
16    it's a Criminal Management Information System.
17          Q.   What's the software called?
18          A.   I'm not sure, but it's the Department of
19    Corrections software.
20          Q.   In making the calculations, does it use any
21    logarithms?
22          A.   I'm not particularly -- I wouldn't know.
23          Q.   Do you know what a logarithm is?
24          A.   No.
25          Q.   So at least as far as you know, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3084

1    computer is used primarily as a storage device?

2         A.   Yes, to store information, correct.

3         Q.   Do you know what methodologies are used

4    within the Department of Corrections in monitoring

5    the activities of prison gangs?

6         A.   I'm not sure I understand the question.

7         Q.   Well, do you know what methodology is used

8    within the prison system in monitoring STG

9    activities?

10        A.   Do I know what method we use?

11        Q.   Methodology.  I can't pronounce

12   accreditation, but I can hit methodology?

13        A.   I'm not sure what you're asking.

14        Q.   Do you know what a methodology is?

15        A.   Well, I'm taking it as the method that we

16   use to monitor gang members.

17        Q.   Yeah.  So what method or methodology do you

18   use?

19        A.   What we have is a security threat module.

20   And what we do with that module is we determine how

21   many inmates -- how many different classification of

22   gang members are in a certain prison.  What

23   percentage of our certain gang members, or we have --

24   for example, if I wanted to look at the Penitentiary

25   of New Mexico to indicate how many SNM members I had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    in that prison, that module would let me know how

2    many I have.  So, yes, that's what we use as

3    methodology.

4         Q.   As I understand it, at least the way that

5    you've explained it, that this module is basically

6    used in order that you can assess how many members in

7    a particular institution may be validated as STG

8    members or disruptive group members?

9         A.   Yes.

10        Q.   It's math, right?

11        A.   Correct.

12        Q.   Now, the other day when Ms. Jacks was

13   asking you questions, she asked you whether or not

14   you compiled data on the motivations that are given

15   to you if people wanted to leave the gangs.  And you

16   said no?

17        A.   That's correct.

18        Q.   When an offender comes in for a second

19   go-around, and he is -- was a former member of the

20   SNM, and he says he wants basically out, do you have

21   any place where you keep that information stored?

22        A.   If an individual came back into prison and

23   I interviewed him, and he told me that he wanted out,

24   what I would do is write a memorandum to that effect,

25   and turn it over to my boss, which in turn, he would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3085

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150

```
 1   turn it over to the RPP coordinator.
 2        Q.   Okay.  So where, then, does that memorandum
 3   finally end up?
 4        A.   With the RPP coordinator.
 5        Q.   Who is the RPP coordinator?
 6        A.   The RPP coordinator would be Captain --
 7   give me a moment.
 8        Q.   He's pretty important, isn't he?
 9        A.   Jeffrey Medina.
10        Q.   How do you spell that last name?
11   M-O-L-I-N-A?
12        A.   Medina, M-E-D-I-N-A.
13        Q.   So he would be the one that would have the
14   information about people who come back for their
15   second, third, fourth, fifth, sixth go-around, and
16   finally say, I don't want to be an SNM member, right?
17        A.   He would have the information that we
18   forward to him that an individual wants to drop out
19   of the gang, yes.
20        Q.   Do you keep a copy of that to put in the
21   individual's packet?
22        A.   I turn those over to the coordinator, which
23   should go into the packet, correct.
24        Q.   Now, you said yesterday you've never
25   removed anything from the packet, right?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3086

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 151 3087

1        A.    I have never, not me.

2        Q.    You would add certain things.  Would then

3    the fact that the person that comes back from the

4    streets and says, "I don't want to have anything to

5    do with the SNM," would that be in the packet?

6        A.    It should be, yes.

7        Q.    And in terms of -- is there any table that

8    you use or any compilation you make of the reasons

9    that these people give for wanting to leave the SNM?

10       A.    Yes, it should be within the interview.

11       Q.    Do you put it anywhere that's not

12   particularized to the individual?

13       A.    I'm not sure I understand what you're

14   saying.

15       Q.    In other words, do you say, Look, these are

16   the top 10 reasons people want out of the prison

17   gangs.  Do you keep that anywhere?

18       A.    No.  And that's something, like I was

19   saying before, that Dr. Robinson and I are trying to

20   work on, for the exact reasons that you're saying,

21   because we do not compile those things.  And those

22   are very important reasons for being able to be more

23   successful with individuals that enter the RPP

24   Program, to reduce the recidivism of these guys

25   returning back, but also for their success within

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3087

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152 3088

1  that program.

2      Q.   All right.  So you think it's a good idea

3  to keep that data, those statistics, that

4  information, right?

5      A.   Correct.

6      Q.   Have you gone to the administrator and say,

7  Hey, I've got a great idea?

8      A.   Yes, Dr. Robinson and I did.

9      Q.   And Dr. Robinson went as well?

10     A.   Correct.

11     Q.   And they poo-pooed the idea?

12     A.   No.  They said it was a good idea.

13     Q.   Are you doing it?

14     A.   We're in the research stage right now.

15     Q.   When was it that you went to them and said,

16 I've got this great idea, let's let it percolate for

17 a while?

18     A.   Probably about three or four months ago.

19     Q.   Now, in the Government Document 1299, it

20 indicates that "failure to conduct SNM business in

21 the community can result in concerns when the SNM

22 member or affiliate or associate returns to prison

23 after having violated the law again."  Do you

24 remember that?

25     A.   Right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3088

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3089

1          Q.   So when you said in that summary that you

2     provided to them that they used to compose the

3     six-page information for the Court, was there any --

4     you said that the gang had members on the outside who

5     could take care of people who weren't doing their

6     jobs, right?

7          A.   Are you --

8          Q.   Let me rephrase.   That was a really lousy

9     question.

10          What you say in that document is that when

11     they go out on the street, basically, they continue

12     with SNM business, including making sure that people

13     do what they're supposed to do?

14          A.   Correct.

15          Q.   And yet you say that that doesn't happen

16     because the people in prison have to do it, and they

17     have to wait for them to come back in, right?

18          A.   I'm not sure what you mean.

19          Q.   Well, it says in there that they're

20     concerned about when they return to prison, that they

21     have not done their jobs.

22          A.   Yeah, they probably stop associating on the

23     outside.

24          Q.   Okay.   So the people on the outside

25     apparently haven't had too much control; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3089

```
 1          A.   Correct.
 2          Q.   The people that have provided you with the
 3     biographies that have been referred to, do you
 4     remember that testimony?
 5          A.   Correct.
 6          Q.   Where is that information stored?
 7          A.   With the RPP coordinator.  He has a file on
 8     that.
 9          Q.   The coordinator?
10          A.   Correct.
11          Q.   And then in terms of when you reviewed that
12     Document 1299, you were identified as the
13     coordinator, right?
14          A.   Yes, I was misidentified as the
15     coordinator.
16          Q.   You didn't catch that until yesterday,
17     right?
18          A.   Correct.
19          Q.   You were identified as an expert who has
20     been qualified in court?
21          A.   Correct.
22          Q.   And you didn't catch that till today?
23          A.   Correct.
24          Q.   So when you reviewed it, I guess it wasn't
25     a detailed, cautious, and careful review?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3090

1        A.    That's correct, sir.

2        Q.    That's six pages, that's a lot to read,

3    isn't it?

4        A.    It is.

5        Q.    And the people you have used in order to

6    formulate many of the opinions that you discussed,

7    and you may discuss if you're allowed to testify in

8    front of a jury, that information primarily comes

9    from interviews?

10        A.    Primarily, yes.

11        Q.    And the people you interviewed could also

12    come into this courtroom and tell this Court and any

13    jury that's assembled the same thing that you heard?

14        A.    I don't know.

15        Q.    Well, if they tell what they told you, it

16    would be the same thing, right?

17        A.    If they tell what they told me, yes.

18        Q.    So you don't have to necessarily be the

19    conduit to provide that information to the Court.

20    They can go right to the source?

21        A.    I don't know.

22        Q.    They can, or can't?

23        A.    I don't know.

24        Q.    Well, if this person is still alive, they

25    could ask them to come in to court and testify,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156092

1   right?

2       A.   They could.

3       Q.   They could use the power of subpoena to

4   bring them in, as far as you know?

5       A.   As far as you know, yes.

6       Q.   Pretty hard to get away from the federal

7   government if they're chasing you, right?

8       A.   I don't know.

9            MR. SINDEL:  I believe that's all I have,

10  Your Honor.

11           THE COURT:  Thank you, Mr. Sindel.

12           MR. SINDEL:  Thank you, sir.

13           THE COURT:  All right.  Any other

14  defendants?

15           Mr. Adams?

16                    EXAMINATION

17  BY MR. ADAMS:

18      Q.   So you had talked with Ms. Jacks about

19  there being no known error rate when you identify

20  somebody as an SNM member or gang member; correct?

21      A.   I'm sorry, I don't understand the question.

22      Q.   That, as far as you knew, there was nobody

23  who kept up with whether people were properly

24  validated or not properly validated as SNM members,

25  or any other gang member in the Department of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3092

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3093

```
 1    Corrections; correct?
 2          A.   I'm trying to -- I guess I'm not
 3    understanding what you're asking.
 4          Q.   Okay.  I'm asking about error rates.
 5          A.   Oh, error rates.
 6          Q.   Whether you had error rates, whether you
 7    know what those are?
 8          A.   I don't know what the error rates are.
 9          Q.   You don't know what your own error rates
10    are, much less, the error rates of any of your
11    coworkers who classify other inmates?
12          A.   Well, when they classify them, they have to
13    go -- if they're suspected, it still has to be
14    approved by the unit coordinator, STIU unit
15    coordinator.  If they're validated, it still has to
16    be approved.  And the only one that can approve it is
17    the administrator or someone higher.
18          Q.   My question is about error rates.  Do you
19    know if any of those people keep up with how often
20    they get it right versus how often they get it wrong?
21          A.   We do audits on their files.  So I don't
22    know.
23          Q.   What's an audit on a file?
24          A.   Well, the coordinator usually does the
25    audits.  And he'll determine whether there is enough
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3093

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158 3094

1    information there, or if the information is not valid

2    to be in the file, so -- and to make sure that he has

3    the file and everything is accurate in it.

4        Q.   Okay.  Well, how would he determine if

5    everything is accurate in it?

6        A.   He'll go through it.

7        Q.   So he reads through one of these letters,

8    like in Mr. Baca's STIU file.  And how would he know

9    if that's accurate or not?

10       A.   Well, he has a checklist that tells him,

11   for example, everything that should be in there.  And

12   once he goes through that audit, if everything is not

13   in there, his job should be to eliminate that -- the

14   point, and find out where it's at.

15       Q.   So what you're talking about is whether or

16   not the file is complete?

17       A.   Correct.

18       Q.   All right.  So who goes through and figures

19   out every four years, every 10 years, whether

20   somebody is actually an SNM member who is living in

21   an SNM pod?

22       A.   I believe that every time an individual

23   comes into a unit, and he's classified as an SNM

24   member and he's brought to us, we interview him, and

25   we check documentation to make sure he is currently

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   documented.
 2        Q.   Okay.  And so if somebody answers no
 3   questions -- like I think you said Mr. Billy Garcia,
 4   you tried to interview him, and he answered none of
 5   your questions?
 6        A.   Correct.
 7        Q.   So how would you know -- I'm sorry, Billy,
 8   to use you as an example -- how would you know
 9   whether Billy Garcia was an active SNM member or a
10   retired SNM member, or never an SNM member, who
11   happened to get called an SNM member by an informant
12   of some sort?
13             MS. ARMIJO:  Objection, compound.
14             THE COURT:  Overruled.
15        A.   He would -- within the interview he would
16   tell me if he's no longer an SNM member.
17        Q.   If he talked to you?
18        A.   Correct.
19        Q.   He might tell you that he was no longer an
20   SNM member because he didn't do any work on the
21   outside?
22        A.   Correct.
23        Q.   And so don't send me back into those
24   restrictive conditions, because I've had a falling
25   out with those guys because I've retired?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      A.   Correct.

 2      Q.   And then you send him back in because he'd

 3  previously been validated?

 4      A.   Correct.

 5      Q.   All right.  So what if somebody doesn't

 6  talk to you and tell you anything?

 7      A.   It's up to the coordinator to say, okay, we

 8  need to find out who is still active and who is still

 9  not active.  If they're in the same unit -- let's

10  say, for example, we conduct random interviews of the

11  SNM unit.  It's their opportunity to tell us if

12  they're not active or they are inactive.  Or if we've

13  seen that they're no longer associating with

14  active -- or they're no longer associating, then we

15  write the documentation on that.  And again, it would

16  be up to the administrator or the coordinator to make

17  that decision, I think, if that's the way I

18  understood your question.

19      Q.   Well, I'm trying to get to error rates.

20  But I'm going to stay with what you mentioned, and

21  we'll come back to error rates.

22          So, if somebody -- one thing you look at is

23  whether somebody is active or inactive as an SNM Gang

24  member?

25      A.   Correct.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3096

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163097

```
 1        Q.   All right.  But everybody who has ever been
 2   called an SNM Gang member, rightly or wrongly, is
 3   housed together in a pod, right?
 4        A.   Correct.
 5        Q.   For security reasons; correct?
 6        A.   Correct.
 7        Q.   In a restricted pod, some Level 5, or Level
 8   6?
 9        A.   Yeah, it's -- yeah, I guess you could say
10   it's a restricted pod.
11        Q.   And it's only suspected SNM members who are
12   in the pod.  There are no other people who aren't
13   thought to be SNM members living in with the SNM
14   guys?
15        A.   Correct.
16        Q.   All right.  So how is somebody going to
17   show that they're an inactive member, if all day,
18   every day, the only people they're around are guards
19   and SNM members, or thought to be -- suspected SNM
20   members?  How is any guard going to pass information
21   along to you saying, like, Hey, I think this guy is
22   inactive?
23        A.   Right.  And if that were to happen, then I
24   would interview the individuals in the pod, the other
25   SNM members, who would tell you that they're not a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    member.

 2         Q.   Okay.  And then what happens?

 3         A.   Then we remove them.

 4         Q.   How often has that happened over the last

 5    five years?

 6         A.   I'm not sure.

 7         Q.   Can you think of one time that that's

 8    happened over the last five years?

 9         A.   Yes.

10         Q.   Okay.  Who?

11         A.   An individual by the name of Arturo Torrez.

12         Q.   Arturo Torrez.  When?

13         A.   I think maybe within the last couple of

14    years.

15         Q.   Who else?

16         A.   I believe another individual by the name

17    of -- I can't remember his name.  I know there has

18    been a couple.

19         Q.   All right.  And the thought was those guys

20    did not appear to be interacting with any of the

21    other SNM members in the pod?

22         A.   They were interacting -- they just weren't

23    part of SNM group.

24         Q.   So did they go through the RPP Program to

25    be able to get out of the restricted environment?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3098

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163

```
 1        A.   No.

 2        Q.   All right.  They were just removed because

 3   you guys thought maybe you had gotten it wrong?

 4        A.   No, because we interviewed, and did an

 5   investigation, and came to the conclusion that they

 6   were not.

 7        Q.   Okay.  Well, were they -- had they ever

 8   been?  Do you believe the initial determination that

 9   they were validated was accurate?

10        A.   Yes.  In the case of Arturo Torrez, yes, he

11   was an active member.

12        Q.   When?

13        A.   When was he an active member?

14        Q.   Yes.

15        A.   In the '90s.

16        Q.   Then did he get out of the DOC and then

17   come back in to the DOC, and was placed back into the

18   SNM unit?

19        A.   Correct.

20        Q.   And somebody raised it to your attention

21   that, Hey, he may not be an active member anymore,

22   because he's not interacting with the fellow?

23        A.   He did.

24        Q.   He sent you a letter?

25        A.   He sent someone a letter.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3099

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3100

1    Q.   So do you view that as an error in

2    classifying him when he came back into the Department

3    of Corrections?

4    A.   No.

5    Q.   Why not?

6    A.   Because he was still documented as an

7    active member.

8    Q.   So my question is why do you believe the

9    document is correct if he, in fact, was not an active

10   SNM member, but you guys labeled him as one based on

11   historical documents?

12   A.   I wouldn't have known until we did an

13   investigation.

14   Q.   So you -- just to be fair, you just relied

15   on whatever was in the old report when he came back

16   in?

17   A.   Correct.  So when he came back in, and then

18   he went through the RDC process, he mentioned nothing

19   about not being an active member.  He actually stated

20   that he was still a member of the SNM.  So under

21   those circumstances, he was put back into the SNM

22   unit.  After that, he had written a letter stating

23   that he was no longer an active member, and did not

24   want to participate or be in the same unit as active

25   members.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3100

1      Q.   Okay.  And he didn't have to go through the

2  renouncing or restoration program?

3      A.   Correct.  His was basically a protective

4  custody issue.

5      Q.   So getting back to the example -- and I'll

6  make up facts, so I'm not talking about Billy

7  Garcia's case, but using Billy Garcia as an example.

8      A.   All right.

9      Q.   Let's say somebody had been in the DOC in

10  the '90s.

11      A.   Um-hum.

12      Q.   They may or may not have been an SNM

13  member, but the paperwork said they were an SNM

14  member.  Okay?  And then they parole out and they go

15  home?

16      A.   Correct.

17      Q.   And they come back into prison, and you

18  have no idea what's happened to them in the decade

19  they've been out?

20      A.   Right.  That's why we have an initial

21  interview when they come into the Reception and

22  Diagnostic Center.

23      Q.   All right.  And what happens if that person

24  comes in and says, "I'm not a gang member anymore.  I

25  Christianed out?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3101

1    A.   Then we'll segregate them from the rest of
2   the unit.  If he no longer wants to be within the
3   active unit of the SNM, we'll segregate him out, and
4   give him a chance to debrief or go into an RPP
5   Program.
6    Q.   Okay.  Well, but the RPP Program is for
7   active SNM members who are renouncing.  We're talking
8   about somebody who is coming back into the DOC, who
9   is no longer a member.
10   A.   What do you mean by active?
11   Q.   Well, you're using the word "active."
12   A.   Well, as long as they're SNM, and it's
13   classified as SNM until they debrief, they're not
14   active anymore.
15   Q.   Okay.  So that circles back to my questions
16   about error rate.  Once somebody has been called SNM
17   by your team, they're always going to be viewed as
18   SNM, unless something extraordinary happens?
19   A.   Unless they denounce, yes.
20   Q.   Unless they denounce.
21        So if somebody was wrongfully classified,
22   they're going to remain wrongly classified their
23   entire life, and you guys don't have any programs to
24   evaluate that to see if you got it right back in '94
25   or '96, when somebody was first labeled, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3102

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163103

1        A.   Correct, I guess.

2        Q.   Any chance we can get you to take the "I

3   guess" off that?  Is this a correct statement or

4   question to you, or not?

5        A.   I guess I could explain it this way.  If an

6   individual has been wrongly classified as an SNM

7   member, we will get requests from them that they are

8   not an SNM member.  And once we get the request, we

9   will look into it, and we'll do an investigation to

10  prove yes or no.

11       Q.   So you may allow them the opportunity to go

12  into the RPP Program to get out of the SNM unit?

13       A.   No.  If there is evidence that they're not

14  an SNM member, of course, then they're not an SNM

15  member, and we remove them.

16       Q.   All right.  And has that ever happened?

17       A.   I'm sure it has.

18       Q.   When?  How many times and who?

19       A.   One person that I know of was an individual

20  by the name of Anthony.  I can't remember his last

21  name.  Give me a second.  I remember the moniker

22  Kujo.  Anthony -- I'm sorry, I can't remember the

23  last name.

24       Q.   Okay.  So Kujo.  Anthony "Kujo," last name

25  unknown, you believe had been falsely diagnostically

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3103

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3104

```
 1    validated as an SNM member?
 2         A.   Not me.   I didn't take it off of him.   I
 3    just know of that person.
 4         Q.   But you believe he had been placed in the
 5    SNM unit falsely; that he had been improperly
 6    validated as an SNM member sometime prior by somebody
 7    in the STIU?
 8         A.   That's what the conclusion had come to by
 9    the administration, yes.
10         Q.   And that was because he self-reported that
11    to you?
12         A.   He must have self-reported that to -- to
13    the STIU, yes.
14         Q.   And if he had been of the philosophy,
15    Mr. nickname Kujo, if Mr. Kujo had been of the
16    philosophy that:   I don't write prison guards
17    letters, period, because that doesn't help me live my
18    life here in the prison, so I don't communicate with
19    prison guards.   I'm certainly not going to complain
20    to prison guards about how I'm housed, then you guys
21    would have never known that he had been wrongly
22    placed in the SNM unit and wrongly labeled an SNM
23    member?
24         A.   If you file a habeas, that's another way.
25         Q.   So if he pursued it through the courts or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3104

```
 1    pursued it internally, maybe you would learn of the

 2    initial error?

 3         A.   If it was an error, yes.

 4         Q.   Well, you're assuming it was an error that

 5    he was in the unit?

 6         A.   They cleared him of it, yes.  My

 7    understanding, he came back later, and was

 8    reclassified as an SNM member.

 9         Q.   Okay, I'm going to leave that one alone.

10         Let me go on to this thing.  You said

11    yesterday that your understanding of SNM, it was

12    blood-in-and-blood-out?

13         A.   Correct.  That's the way their motto was

14    when they first originated.

15         Q.   Did that mean you had to do an act of

16    violence to get into the gang?

17         A.   Correct.

18         Q.   And if you wanted to get out of the gang,

19    that means you leave in a casket?

20         A.   Correct.

21         Q.   So there is no way to retire?

22         A.   There was no way to retire.

23         Q.   But then you talked about -- with

24    somebody -- you talked about the Old Timers.  And

25    what the Old Timers mean is that it was somebody who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3105

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 170106

```
 1    could just retire from the SNM?

 2         A.   Correct.

 3         Q.   So there are people who retire without

 4    blood out?

 5         A.   It appears that way, yes.

 6         Q.   And you believe that's correct?

 7         A.   Yes.

 8         Q.   And you also talked about that some people

 9    become -- have religious conversions, and they

10    withdraw from the SNM Gang?

11         A.   Correct.

12         Q.   And that that is permitted under the

13    current rules that have been in place for the last 20

14    years for SNM?

15         A.   That's how I understand it, yes.

16         Q.   And you understand that from your

17    interviews with inmates?

18         A.   Correct.

19         Q.   And that other people are allowed to

20    withdraw for whatever personal life reasons they

21    need?

22         A.   Right.  I mean, the older guys, they're not

23    expected to put in work anymore, and they've done

24    their part.  So they're no longer -- they're no

25    longer expected to comply with any of the rules.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3106

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171   3107

1      Q.    And yet, if they don't go through the RPP

2    Program, they remain a validated SNM member; correct?

3      A.    Correct.

4      Q.    And they would live in that pod surrounded

5    by SNM members, right?

6      A.    Correct.

7      Q.    Where they would only have the opportunity

8    on picture day to be photographed with SNM members;

9    correct?

10      A.    Before they were segregated into that unit,

11   yes.

12      Q.    All right.  And their whole life would

13   be -- in the prison, would be surrounded by other SNM

14   members; correct?

15      A.    Correct.

16          We have another population that's called

17   the Special Management Population.  We have SNM

18   members in there that are no longer, for whatever

19   reason, they're no good, but they don't want to go to

20   the RPP Program.  But they cannot associate with

21   active members of the SNM for whatever -- green light

22   issues, whatever.  So they've been put into a

23   different setting, population setting as well,

24   without going to the RPP.  So there is an alternative

25   as well.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3107

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172 3108

1     Q.   All right.  Put people in protective

2  custody?

3     A.   We don't like to call it "protective

4  custody."  We just call it a different type of

5  population.

6     Q.   But is it tantamount to being in protective

7  custody?

8     A.   Yes.

9     Q.   You might put them in there if you think

10  they're in danger?

11     A.   It's with a different population setting,

12  yes.

13     Q.   All right.  Well, let me back up to my

14  example.  So we've got people who could have been in

15  prison earlier, who had been validated as an SNM

16  member, rightly or wrongly, and they may have tattoos

17  that are viewed as SNM-related tattoos by different

18  members of the STIU; correct?

19     A.   Correct.

20     Q.   And then they could get out on the street,

21  away from the gang, and withdraw from SNM membership

22  through either a religious conversion or in other

23  ways withdraw from membership?

24     A.   Correct.

25     Q.   All right.  And then they could come back

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173

1    into the prison.  And unless they tell you they'll go

2    through RPP, or unless they tell you they're no

3    longer a member, they get revalidated because their

4    prior paperwork said they were validated, right?

5         A.   They remain validated.

6         Q.   They remain validated.  And you guys have

7    no idea about they've withdrawn from the gang for 10

8    years?

9         A.   Usually they'll tell you.

10        Q.   If they tell you, then what happens?

11        A.   If they tell us, then we'll -- if they feel

12   that they would be in danger if returned into that

13   SNM population setting, we would remove them.

14        Q.   Okay.  Over to that unit where people are

15   locked down all the time?

16        A.   No, they're not locked down.  It's a

17   population setting.

18        Q.   So they could go into that unit, or they

19   could go back into the SNM unit, or they could go to

20   RPP, if they'd been previously validated?

21        A.   Correct.

22        Q.   So you would have -- so assume with me for

23   a second, the situation where somebody leaves; they

24   withdraw, retire from the gang, for whatever -- old

25   age, religion, mama made them promise they'd

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173110

```
 1   withdraw, whatever the reason -- they come back into
 2   prison, and they don't have a conversation with you.
 3   They go back into the SNM unit, don't they, as a
 4   validated member?
 5         A.   As part of the process they'll always have
 6   a conversation with us.
 7         Q.   They don't have to answer your questions?
 8         A.   Correct.
 9         Q.   And if they don't answer your questions,
10   what happens?
11         A.   They go back to the SNM.  Or if they're
12   validated, they'll return back to the validation.
13         Q.   Right.  So once somebody is there, they
14   could be in the unit, and in that circumstance
15   they're not an active SNM member, but they're still
16   going to be in the unit and be as a validated member
17   by you and your team; correct?
18         A.   They're considered active.
19         Q.   Right, you consider them active?
20         A.   Correct.
21         Q.   And so if that's an error, you're not
22   looking to find out whether that's an error or not?
23   Unless they prove to you by whatever level of proof
24   is needed that they're no longer a member, they are
25   going to be treated like they're a member, just based
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3110

1    on prior paperwork?

2         A.    If they were out in the streets, and they

3    were on probation and parole, probation and parole

4    would keep offender notes on them, offender reports.

5    And we have access to those as well, so we would

6    review those.

7              If there is no indication in there that

8    this individual has ever stated that he's no longer a

9    member or he's no longer a member in good standing,

10   unless he tells us, and there is basically no reason

11   why they wouldn't tell us that they're no longer

12   active or a good member in standing with the SNM,

13   yeah, you're right, I wouldn't know.

14        Q.    And you're certain -- in your experience

15   you're certainly aware that there are a lot of

16   inmates that just aren't going to talk to the guards,

17   period?

18        A.    Not too many.

19        Q.    Not too many?  That's just Hollywood myth?

20        A.    Correct.

21        Q.    I'd like to ask you a couple of questions

22   about the doing work out on the street or doing

23   missions on the street once SNM members are paroled

24   out and they go home.  You had mentioned that

25   earlier, and I wanted to follow-up with a couple more

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3111

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176 3112

1    questions.

2          Is your source of information about that

3    simply your interviews with inmates when they return

4    to the DOC?

5          A.   Yes, interviews with inmates that have

6    returned back, and have stated this, or individuals

7    that have been debriefed, that were active members of

8    the SNM.

9          Q.   Who are going through the RPP Program?

10          A.   Correct.

11          Q.   And that's -- your full understanding of

12    what's happened on the street is based on what you

13    just said:  The RPP debriefings and inmates returning

14    to the DOC who are choosing to talk with you?

15          A.   I also believe that there are active

16    members that I've spoken to that have told me the

17    same.

18          Q.   I'd like to ask you a couple of questions

19    about your seminar presentations.  Do you know how

20    many seminar presentations you've given?

21          A.   More than 10.

22          Q.   I'm going to ask you where?  The first one,

23    where was it?  What was the title?

24          A.   The first one was with the New Mexico Gang

25    Task Force.  The title was "Prison Gangs."

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                              1-800-669-9492
                                                    e-mail: info@litsupport.com
                                                                    DNM 3112

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3113

```
 1          Q.   When was it?
 2          A.   It may have been, maybe 2012.
 3          Q.   Did you prepare materials for that
 4   presentation?
 5          A.   Yes.
 6          Q.   How long was the presentation?
 7          A.   Four hours.
 8          Q.   Was it you presenting by yourself for four
 9   hours?
10          A.   No.
11          Q.   How long was your part of the presentation?
12          A.   I was the primary presenter.  So I don't
13   have primarily a part; would just interject when I'm
14   speaking.  The individual that's with me can
15   interject at any time.
16          Q.   All right.  And what were the materials?
17          A.   The materials were slide shows.
18          Q.   Do you still have the slides?
19          A.   That particular one, I don't know.
20          Q.   How could we get those slides from you, if
21   you have them?
22               MS. ARMIJO:  Objection, Your Honor.  That
23   might be law enforcement sensitive.
24               THE COURT:  Why don't y'all talk about it
25   on the break.  I think we need to take an afternoon
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3113

```
 1    break.  So we'll be in recess for about 15 minutes.
 2    And if there is an issue there, we'll take it up at
 3    the appropriate time.  All right.
 4              (The Court stood in recess.)
 5              THE COURT:    Let's see if we got
 6    everybody.  All right.  I think we've got everybody.
 7    Looks like we've got enough counsel for everybody.
 8              Let me take up a matter.  I've been talking
 9    to Ms. Wild, who has been in communication with both
10    Ms. Armijo and Ms. Bhalla about your second counsel.
11    And I'm inclined to give you a second counsel.  But
12    I'm getting a little frustrated that you're wanting
13    to delay it.  So I'm putting this on the record,
14    because I don't want you to use the fact that you
15    don't have a second counsel as a delay to, you know,
16    delay the trial, or something like that.
17              So 10:00 tomorrow morning let Ms. Wild know
18    who you want.  And work it out.  Because I've been
19    telling y'all you need to get your house in order.
20    And I'm putting on the record that you're the one
21    delaying it.  Okay.
22              MS. BHALLA:  Yes, Your Honor.  And I
23    actually have been working on it.  And I think that
24    we have found somebody.  And I've communicated with
25    Ms. Waters and with Ms. Wild about that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3114

```
1              THE COURT:  10:00 o'clock tomorrow morning
2    you let us know.  Otherwise, I'm appointing somebody.
3    Okay?
4              MS. BHALLA:  Yes, Your Honor.
5              THE COURT:  Because I don't want you to be
6    delaying it.  There is nothing on the record.  So now
7    it's on the record that you're the one that's
8    delaying it.  I'm ready to appoint somebody.  And so
9    let us know.  Otherwise, at 10:00 tomorrow, I'm going
10   to do my own thing.
11             MS. BHALLA:  Yes, Your Honor.
12             THE COURT:  All right.  Mr. Martin, I'll
13   remind you that you're still under oath.
14             Mr. Adams, if you wish to continue your
15   cross-examination of Mr. Martin, you may do so.
16             MR. ADAMS:  Thank you, Your Honor.
17        Q.   So I'm going to return back to this list of
18   presentations you've done.  And we were at number
19   one.  And you were saying you were unsure if you
20   could provide us your materials or not.
21        A.   Correct.
22        Q.   How do you find that out?
23        A.   I would have to talk to the STIU
24   administrator to see if that's permissible or not.
25        Q.   When can we follow-up with you?  Because we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3115

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3116

```
 1    really need those before you testify, and we didn't
 2    get them.  So when can we circle back with you to see
 3    if we can get those materials, or whether we need the
 4    file something with the court?  I mean, is Friday
 5    enough time?  Two days?
 6         A.   Yeah, I suppose.
 7         Q.   Will you be at your regular office on
 8    Friday?
 9         A.   Correct.
10         Q.   So number one was a presentation on gangs
11    in 2012.
12              What was presentation number two?
13         A.   All the presentations have been pretty
14    similar.  They're all on prison gangs.
15         Q.   All right.  So all on New Mexico prison
16    gangs?
17         A.   Correct.
18         Q.   Who were the different audiences?  Has it
19    all been Department of Corrections' employees?
20         A.   No.  New Mexico Gang Force is open to law
21    enforcement.
22         Q.   So those materials would not be protected
23    under the DOC, because that's an outside group;
24    correct?
25         A.   That's law enforcement sensitive.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3116

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3117

 1    know.  It's still their property.

 2        Q.   All right.  And has that PowerPoint changed

 3    over time, or this one basic PowerPoint that you've

 4    used in all ten of your presentations?

 5        A.   No, it's changed.

 6        Q.   All right.  So that number two -- do you

 7    remember the ten presentations that you've given?

 8        A.   I don't.  Some of them have been the same.

 9    I've used the same presentation maybe three or four

10    times.

11        Q.   All right.  What are the -- so you've done

12    a gang -- prison gang talk that you worked on as

13    number one for 2012, and you've used that three or

14    four times?

15        A.   On the same topic.

16        Q.   What are your other topics?

17        A.   It's been the same topics.

18        Q.   So prison gangs in New Mexico?

19        A.   Yes.

20        Q.   Have you ever included materials on SNM?

21        A.   Yes.

22        Q.   How many times?

23        A.   Every time.

24        Q.   Every time.  And is it fair for me to

25    assume this was not exclusively SNM, but it was all

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3117

```
 1    the different identified gangs in the DOC?

 2         A.   Correct.

 3         Q.   And yesterday with Ms. Jacks you indicated

 4    that you sometimes go get information from the

 5    internet.  I believe you said informational on

 6    cultures and gangs from law enforcement websites.

 7         A.   Yes.

 8         Q.   How does that assist you?

 9         A.   Just to see the commonalities within the

10    prison gangs around the country.

11         Q.   All right.  And so you do that as part of

12    your job?

13         A.   No.

14         Q.   Just part of an interest that you have?

15         A.   Correct.

16         Q.   And you said that you went on a site named

17    Code 10 or Code 1.

18         A.   Something like that.  I don't remember.

19         Q.   And what do you look for when you're on

20    that site?

21         A.   I think that site, in particular, talks

22    about things that are going on in different prisons.

23    The other sites that I go to are -- would be

24    classified under prison gangs.

25         Q.   What sites?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3118

1     A.   I don't remember.  This has been a while

2   since I've done this.

3     Q.   How often do you go on to Code 10 or Code

4   1?

5     A.   I probably haven't done it in a couple of

6   years.

7     Q.   Okay.  So this is not something that you

8   are using material from there as a part of your

9   purported expert opinion in this case?

10     A.   No.

11     Q.   All right.  I looked for a website called

12   Code 10 or Code 1, and could not find one.

13     A.   I'm not sure.  I thought that was the name.

14     Q.   I did find this thing called Corrections 1.

15     A.   Maybe that's the one.  It might be that

16   one.

17     Q.   It has this photograph.  And I just

18   couldn't resist showing it to you.  Does this look

19   like the website you referenced?

20     A.   Yes.

21     Q.   How does that help you with prison gangs?

22         And for what it's worth is

23   www.corrections1.com.  And there is a very

24   frightening guy's picture there on the home page with

25   a skull tattooed on his face.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3119

1          A.   I used that for information about security

2     threat issues that they're having in different

3     prisons.

4          Q.   You just looked to see whatever the news

5     articles are that are linked there?

6          A.   Correct.

7          Q.   Okay.  So this is not some sort of insider

8     baseball type of website?  This is just a law

9     enforcement website that links to media articles?

10         A.   Correct.

11         Q.   Are there any other websites that you rely

12    on as part of the bases of your purported expert

13    opinions?

14         A.   No.  I use them as information.

15         Q.   Have you been retained by the Government in

16    this case?

17         A.   Are they paying me?  Is that what you're

18    asking me?

19         Q.   Well, I will ask you that.  But let me ask

20    you this first:  Do you have a retainer agreement?

21    Have you a signed document with them?

22         A.   No.

23         Q.   To be an expert for them?

24         A.   No.

25         Q.   All right.  Are you getting paid?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         A.    No.
 2         Q.    When were you contacted about assisting the
 3   Government in this prosecution?
 4         A.    I believe it was a collaboration of all
 5   STIU staff, when they first started to collect
 6   information on indictments.  So it was -- at that
 7   time I was part of a lot of other STIU officers that
 8   were asked to meet -- to meet in -- I believe, it was
 9   in Albuquerque -- to talk about the collection of
10   documentation.
11         Q.    This would be in late 2015?
12         A.    Correct.
13         Q.    Would this have been right after the main
14   arrests in this case, or before that?
15         A.    It may have been before.
16         Q.    I believe the arrests or most of the
17   arrests occurred on, I believe, December 3, 2015.
18         A.    It was before.
19         Q.    So you were part of a meeting with other
20   STIU officers?
21         A.    Yeah, administrators and the FBI, yes.
22         Q.    And were you asked at that time if you
23   would offer expert assistance?
24         A.    No.
25         Q.    When were you asked if you would offer
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3121

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 186

```
 1    expert assistance?

 2         A.   I don't remember, to be honest.  Probably

 3    six months or a year ago.  Six months maybe.

 4         Q.   When were you provided a copy of the expert

 5    disclosure that Ms. Jacks went over with you

 6    basically line by line?  When were you given that

 7    document?

 8         A.   I've seen that document, I believe, on

 9    Monday.

10         Q.   And that was prepared for you; you didn't

11    write that?

12         A.   I didn't write that, no.

13         Q.   Were you interviewed about that?  At some

14    point, did you have a conversation where you gave

15    your thoughts and ideas and it was put in writing?

16         A.   The only time that that happened was when I

17    provided my qualifications.

18         Q.   So your resume that's been marked as

19    Government's Exhibit 17?

20         A.   Correct.  We might have had a verbal

21    discussion about it.  But I don't recall.

22         Q.   And I'd like to ask you a little bit about

23    the information about the historical part of SNM.

24    You went over with the other lawyers that part of

25    your opinions are on the formation of SNM, as far
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3122

1  back as the 1980s, when you weren't working for the

2  DOC?

3      A.   Correct.

4      Q.   And you said that you learned that from

5  veteran officers; learned about that history from

6  veteran officers, and then confirmed it with

7  interviews of inmates?

8      A.   I learned about the SNM through veteran

9  officers.  I learned about the history of the SNM

10  through individuals that were actively at the time a

11  part of the SNM.

12     Q.   What veteran officers educated you about

13  the SNM, or shaped part of your views about the SNM?

14     A.   That was about 20 years ago.  I don't know.

15     Q.   So is the answer you don't remember?

16     A.   I don't remember.

17     Q.   Okay.  You had talked a little bit about

18  this FBI Task Force, which is listed on your resume.

19  Were you ever officially a member of the task

20  force -- of a federal task force?

21     A.   I don't know if I would call it official.

22  I'm not sure how that would work.  All I know is that

23  I would assist.  For example, overtime or whatever

24  was paid, any overtime incurred by me was paid by the

25  federal government to the State of New Mexico.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3123

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3124

```
 1        Q.   Was there ever a memo of understanding done
 2   by the federal government, law enforcement agencies,
 3   and your employer, about them using your time and
 4   then getting flow-through payments to you, to your
 5   knowledge?
 6        A.   Yes, I believe there was.
 7        Q.   Do you think there was a memo of
 8   understanding?
 9        A.   I believe there was something in writing,
10   yes.  But I don't know what it is.
11        Q.   Did you receive any type of credentials or
12   identifications that would identify you as a task
13   force officer?
14        A.   No.
15        Q.   When do you think this memorandum of
16   understanding may have been executed?
17        A.   I believe this was executed when we were
18   working with the California Surenos, probably in
19   2014, 2015.
20        Q.   And are you not sure if that would still be
21   in effect today?
22        A.   I'm not sure.
23        Q.   Did you ever change offices to move from
24   wherever you were doing your work to some task force
25   office facility?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3124

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3125

1       A.    No, sir.

2       Q.    Have you ever interviewed Chris Garcia?

3       A.    No, I have never interviewed Chris Garcia.

4       Q.    Have you ever observed Chris Garcia?

5       A.    No.

6       Q.    Have you ever reviewed Chris Garcia's STIU

7   file?

8       A.    No, I have not.

9       Q.    Have you ever reviewed any pictures about

10   his tattoos?

11       A.    No, I have not.

12       Q.    Ever reviewed his classification scores?

13       A.    No.

14       Q.    So you'd have no opinion at all about Chris

15   Garcia, whether or not he's an SNM member?

16       A.    At this point, no.

17            MR. ADAMS:  Thank you.

18            THE COURT:  Thank you, Mr. Adams.

19            Any other defendants that want to

20   cross-examine?

21            Mr. Villa?

22            MR. VILLA:  I'm sorry, Your Honor.  I know

23   you were hopeful.

24            THE COURT:  I don't hope for anything.

25   Just stay steady.  Don't hope for anything.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3125

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3126

```
 1                        EXAMINATION
 2    BY MR. VILLA:
 3         Q.   Good afternoon, Mr. Martin.
 4         A.   Good afternoon.
 5         Q.   I'll try to be brief.  I'm just going to
 6    kind of jump around.
 7              You mentioned the STIU Coordinator Adam
 8    Vigil, that's your direct supervisor?
 9         A.   He was, yes.
10         Q.   He's no longer?
11         A.   No.
12         Q.   That's while you were still at STIU?
13         A.   Correct.
14         Q.   Mr. Vigil is still at STIU?
15         A.   Correct.
16         Q.   This is the same Adam Vigil that worked at
17    Southern New Mexico?
18         A.   No.
19         Q.   Was there a different Adam Vigil that
20    worked at the Southern New Mexico Correctional
21    Facility?
22         A.   I don't know any Adam Vigil that's ever
23    worked at Southern Correctional Facility.
24         Q.   Do you happen to know Mr. Vigil's position
25    prior to him becoming the STIU coordinator?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3126

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3127

1      A.   I believe he retired as a major at the

2  Penitentiary of New Mexico, and he came back as the

3  STIU coordinator.

4      Q.   You testified I believe on your direct

5  about the different levels of classification, Level 6

6  being the highest?

7      A.   Correct, sir.

8      Q.   And if I understand it correctly, somebody

9  who is a member of an STG, like SNM, they're not

10 necessarily placed in Level 6; correct?

11     A.   Level 6 is used as a disciplinary, behavior

12 modification.  If an -- so SNM members can be placed

13 in Level 6, correct.

14     Q.   If they have some sort of disciplinary

15 issue?

16     A.   Correct.  That's what Level 6 is used for.

17     Q.   Just because they're SNM doesn't mean they

18 go there?

19     A.   Correct.  Any inmate that is deemed a

20 threat or is serving disciplinary sanctions will end

21 up at the Level 6.

22     Q.   Some SNM members are kept in the same pod

23 together; correct?

24     A.   In Level 6, is that what you're saying?

25     Q.   No, not on Level 6.  Just in general.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

 

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3127

```
 1        A.    In a Level 4 setting, yes.

 2        Q.    So SNM members who aren't doing some sort

 3   of discipline or other corrective action that's being

 4   taken against them, can be housed in a Level 4

 5   setting with other SNM members; true?

 6        A.    Correct.  In a congregate setting, yes.

 7        Q.    So if an SNM member is in Level 4, in that

 8   setting, to get themselves put into Level 6, they've

 9   got to have some sort of disciplinary infraction?

10        A.    Yes, they would have to -- misconduct

11   report would have been written on them, and they

12   would have been placed in segregation, yes.

13        Q.    And do you know how long they can be placed

14   in segregation?

15        A.    Depends on the severity of the infraction.

16        Q.    Is there some process by which that

17   determination is made?

18        A.    Yes, a hearing officer determines.  We have

19   a criteria in Corrections.  And depending on what the

20   severity of that is, there is a minor misconducts,

21   and then major misconduct reports.  But they have to

22   be found guilty, of course, of misconducts.

23        Q.    Does someone in STIU play any role in those

24   determinations that -- whether they're found guilty

25   of misconduct, and how long the period of time they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3128

1    should be in discipline is?

2         A.   No.

3         Q.   It's just done by the hearing officer?

4         A.   Correct.

5         Q.   Same process that someone who is not in SNM

6    or STG would go through?

7         A.   Correct.

8         Q.   Is Level 6 used for anything else besides

9    discipline?

10        A.   It used to be used for protective custody

11   inmates as well.  But we've changed that process.  So

12   at this point at the Penitentiary of New Mexico, it's

13   primarily used as a disciplinary unit.

14        Q.   When did the process change?

15        A.   I believe it changed about a year ago.

16        Q.   2016?

17        A.   Maybe less.  I'm not sure.  But I know it

18   did change.

19        Q.   And when you say "protective custody,"

20   you're talking about somebody who has a threat to

21   their safety, their life?

22        A.   Right.  I'm not saying that we don't hold

23   individuals that have protective custody issues in

24   there as well.  I guess I should have clarified that.

25   Because it's primarily used for individuals that are

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                              1-800-669-9492
                                                        e-mail: info@litsupport.com



DNM 3129

1    in segregation, but there is occasion where we would

2    put individuals in there for protective custody

3    issues until we reclassify them somewhere else to a

4    different prison.

5         Q.   So, for instance, somebody who has a green

6    light or a hit out on them from an STG, like SNM,

7    might be placed in protective custody until you can

8    reclassify them?

9         A.   Correct.

10        Q.   Or anybody else whose life might be in

11   danger?

12        A.   Right.

13        Q.   So aside from protective custody and

14   discipline, is Level 6 used for any other reason?

15        A.   Not to my knowledge.  I'm not understanding

16   what you mean.

17        Q.   I mean, is somebody placed into Level 6

18   classification for some other reason besides

19   discipline or protective custody?

20        A.   We have federal holding in there at times

21   as well.

22        Q.   Inmates who are being held there pending a

23   federal trial?

24        A.   Right.  Or a county might not be able to

25   keep the inmates.  Or there might be a security

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3131

```
 1    threat issue with a county inmate, and they'll
 2    contract him to us.
 3         Q.    Somebody who is in danger in the county
 4    jail, they're placed in Level 6 pending their trial?
 5         A.    Yes.  Those are some of the reasons, yes.
 6         Q.    Any other reason somebody can be placed in
 7    Level 6?
 8         A.    I'm not sure.
 9         Q.    Not that you're aware of?
10         A.    Not that I'm aware of, correct.
11         Q.    Are you familiar with the housing of
12    members believed to be SNM or are SNM at the Southern
13    New Mexico Correctional Facility in 2014?
14         A.    Yes.
15         Q.    Were you in the STIU at that time?
16         A.    Yes, I was.
17         Q.    Did you make decisions or have input on how
18    SNM members were housed?
19         A.    I do not have -- I did not have input on
20    how they were housed or where they were housed, no.
21         Q.    Were you involved at Southern New Mexico
22    when Javier Molina was murdered, March 7, 2014,
23    allegedly murdered?
24         A.    I was working at the Penitentiary of New
25    Mexico.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3131

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 196 3132

```
 1        Q.   At PNM?

 2        A.   Yes.

 3        Q.   Did you come down and participate in the

 4   investigation in any way?

 5        A.   No.

 6        Q.   Were you asked to consult and provide any

 7   opinions about the homicide?

 8        A.   I was not.

 9        Q.   And you didn't conduct any of the

10   investigatory interviews that took place in

11   connection with that homicide?

12        A.   Well, let me back up a minute.  When that

13   homicide did happen, the SNM members that we did have

14   at the Penitentiary of New Mexico, I believe we did

15   interview those individuals that were there, the STIU

16   unit did interview the individuals that were there,

17   in order to try to get information on the reason or

18   the motive.

19        Q.   Did you personally interview anyone or

20   attend an interview of anyone that was believed to be

21   SNM, housed at PNM?

22        A.   I may have.

23        Q.   Who was that?

24        A.   There was several.  I can't remember right

25   offhand.  I'm sure there was some that I did
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3133

```
 1    interview.
 2         Q.   And did you use those interviews to help
 3    form the opinions you intend to offer in this case?
 4         A.   I would have to look at them.  Because I do
 5    not remember the interviews, or if I ever gained any
 6    information.
 7         Q.   Have you been asked by the Government to
 8    offer opinions about the Javier Molina homicide?  For
 9    instance, why it was carried out?
10         A.   I've given my opinion on it, yes.
11         Q.   I mean, is it your understanding that
12    you're going to, depending on the outcome of the
13    Judge's ruling, testify at the trial regarding the
14    Javier Molina homicide and why it happened?
15         A.   Yeah, I've spoken to them about it, yes.
16         Q.   Do you have an opinion about whether Javier
17    Molina was an SNM member?
18         A.   Yes.
19         Q.   And what is that opinion?
20         A.   That he was.
21         Q.   And that's based upon what?
22         A.   Information received from interviews of
23    other SNM members that he was a member.
24         Q.   Anything else?
25         A.   I don't recall.  I believe maybe court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3133

```
 1   documents.
 2        Q.   Do you know what court documents?
 3        A.   Excuse me?
 4        Q.   Do you know what court documents?
 5        A.   They are either court documents or police
 6   reports that he was a self-admitted SNM member.  But
 7   to be honest with you, I'm not sure.  I haven't -- I
 8   remember from the interviews with individuals that --
 9   the active members of SNM and inactive members of
10   SNM -- that they did state that Javier Molina was a
11   member of the SNM.
12        Q.   Do you intend to testify that Javier Molina
13   was murdered because he was believed to be -- well,
14   strike that.
15             Is it your opinion to testify that Javier
16   Molina was murdered as a result of an SNM-ordered
17   hit?
18        A.   Yes.
19        Q.   Is that based upon interviews with other
20   SNM members?
21        A.   Correct.
22        Q.   Or review of documents related to similar
23   interviews?
24        A.   Correct.
25        Q.   Is it based upon anything else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3134

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3135

1        A.   No.

2        Q.   Now, you're probably aware, my client Rudy

3   Perez is charged in connection with the Javier Molina

4   homicide; true?

5        A.   Correct.

6        Q.   Do you have an opinion about whether Mr.

7   Perez is a member of the SNM?

8        A.   Only through documentation, and his

9   self-admission to me that he is a member of the SNM.

10       Q.   His admission to you?

11       A.   Correct.

12       Q.   He -- when did that admission occur?

13       A.   I've interviewed Mr. Perez on several

14  occasions, and he's admitted to me that he's an SNM

15  member.

16       Q.   How many times have you interviewed Mr.

17  Perez?

18       A.   I believe about two or three times.

19       Q.   And was that in connection with classifying

20  him as a member of SNM?

21       A.   No.

22       Q.   What were the interviews for?

23       A.   I can't remember.

24       Q.   Okay.

25       A.   I'd have to look at my notes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3136

```
 1          Q.   Did you ever interview him related to the

 2     Javier Molina homicide?

 3          A.   I don't believe I have.

 4          Q.   Did he ever tell you anything about the

 5     Javier Molina homicide?

 6          A.   He's never told me, no.

 7          Q.   Did you, since he was indicted in this

 8     case, which I'll represent to you occurred

 9     approximately April 2016, did you attempt to

10     interview him about the Javier Molina homicide?

11          A.   I don't remember.

12          Q.   Did you ask him whether he would talk to

13     you and cooperate with the Javier Molina homicide?

14          A.   Yes, I did.

15          Q.   And he told you, "No."

16          A.   Correct.

17          Q.   Were you aware that members of -- alleged

18     members of the SNM -- in the pod where Javier Molina

19     was murdered were working in the wheelchair program

20     in Southern New Mexico?

21          A.   Was I aware they were working in the

22     wheelchair program?

23          Q.   Yes.

24          A.   Correct, yes.

25          Q.   And did you have an understanding that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3136

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1    those inmates were obtaining metal from the
 2    wheelchair program to make shanks to bring into the
 3    pod?
 4         A.   After the fact, yes.
 5         Q.   You found out about it after the fact?
 6         A.   Yes.  I didn't know during -- that they
 7    were working in there to manufacture weapons.
 8         Q.   And that's based upon interviews with other
 9    inmates?
10         A.   Correct.
11         Q.   So I want to ask you just a little bit
12    about that.  You talked about the manufacturing of
13    shanks; correct?
14         A.   Correct.
15         Q.   And shanks can be made, I think as you
16    testified, to carry out an assault or a murder,
17    right?
18         A.   Right.
19         Q.   But also, I think you said that they can be
20    used as a form of commerce, for trading, selling,
21    that sort of thing?
22         A.   Correct.
23         Q.   And that's the sort of things you've
24    learned through interviews of inmates?
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3137

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202

```
 1        Q.    Did you interview in connection with this

 2   case any of the cooperating defendants or cooperating

 3   witnesses that are involved in the Javier Molina

 4   homicide?

 5        A.    Did I interview them?

 6        Q.    When I say in connection with this case, I

 7   mean about the Javier Molina homicide?

 8        A.    No.

 9        Q.    Or about cooperating with the Government to

10   testify regarding the Javier Molina homicide?

11        A.    I don't believe I did.

12        Q.    So you haven't conducted an interview of

13   Timothy Martinez?

14        A.    No.

15        Q.    About the Javier Molina homicide?

16        A.    No.

17        Q.    Mario Rodriguez?

18        A.    No.

19        Q.    Jerry Armenta?

20        A.    No.

21        Q.    Jerry Montoya?

22        A.    No.

23        Q.    Billy Cordova?

24        A.    No.

25        Q.    Lupe Urquizo?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3138

```
 1        A.    No.
 2        Q.    I forgot to ask you this question earlier.
 3   Can you tell me what a bone crusher is?
 4        A.    Yes, that's a term used by inmates when
 5   they have a good-sized shank that will go right
 6   through your bones, that will crush your bones when
 7   they hit you with it.  So a bone crusher would refer
 8   to something that would definitely cause fatal blows.
 9        Q.    And you know that from interviewing
10   inmates?
11        A.    Correct.
12        Q.    Do you have any other source of knowledge
13   for how you learned what a bone crusher is?
14        A.    Yeah.  I think we discussed it with, like
15   Mr. Valdez; I've discussed that with him before.  And
16   they use the same term in California with other
17   counterparts in the California prison system, that
18   they also say that -- a bone crusher is also
19   something that they know to be a weapon or a shank
20   that causes -- that could cause fatal damage.
21        Q.    I'm going to move on now.
22              You were talking -- this came from the
23   notice about sanctions and reasons for sanctions;
24   correct?
25        A.    Correct.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3139

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204 3140

1    Q.   So the sanction, if I understand it
2    correctly, is a punishment on a member of an STG by
3    other members of that STG; correct?
4    A.   Correct.
5    Q.   For violating some code or rule or
6    unwritten rule of that STG?
7    A.   Correct.
8    Q.   And I think that you testified that one of
9    the grounds someone might receive a sanction is if
10   they don't follow the orders of a member of that STG?
11   A.   Correct.
12   Q.   So if a higher-up, if you will, orders
13   someone to do something, and they say no, that person
14   who says no could be in trouble?
15   A.   Correct.
16   Q.   Have violence used against them?
17   A.   They could have, yes.
18   Q.   And if a higher-up orders a hit, they order
19   someone to be killed, and another member of the STG
20   interferes with that in some way, they could receive
21   a sanction?
22   A.   Correct.
23   Q.   And this is information that you've learned
24   from doing interviews; correct?
25   A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3140

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 205

```
 1          Q.   Is that also something you've discussed
 2   with -- I lost his name -- the individual from
 3   California?
 4          A.   Sanctions, as it pertains to their prison
 5   gangs?
 6          Q.   Yeah, the idea that if you refuse an order,
 7   or interfere with an order, like a hit, that you can
 8   then be subject to violence?
 9          A.   Yeah, I did.  That did -- I did have those
10   conversations with my counterpart in California when
11   I was working on the certification, or the
12   investigation into the certification of the
13   California Surenos.
14          Q.   And that was when you were working with
15   Mr. Al Valdez.
16          A.   No, some counterparts within the California
17   Corrections Department on that case.
18          Q.   Okay.  But, in general, you've consulted
19   with Mr. Valdez from California about some of the
20   commonalities you all see?
21          A.   Correct.
22          Q.   And is that one of the things you've talked
23   with Mr. Valdez about, this idea of being sanctioned
24   for interfering with an order?
25          A.   I'm sure that that's a good part of our
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3142

```
 1    conversation.  I don't recall for sure, but I'm sure
 2    that's a part of our conversation.
 3         Q.   I want to try to clarify something.  You
 4    testified, when Ms. Jacks was examining you, about
 5    emails that -- I thought you said you still had them,
 6    emails that maybe you had shared with the prosecution
 7    team.  And then, when you spoke to Ms. Duncan, when
 8    Ms. Duncan was examining you, you testified that you
 9    were in the habit of deleting your emails.  So I
10    wanted to try to clarify that, and determine if you
11    still have emails that have been corresponded in
12    relationship to this case?
13         A.   I think I had said that some of my emails
14    had been deleted, that pertained to something else
15    with Agent Acee, not pertaining to this case, not
16    pertaining to the SNM.
17         Q.   But you believe you still have the emails
18    related to this?
19         A.   Yeah, I believe that they should still
20    exist.  Because even if they get erased, even if I
21    delete them, it goes into a backup system.
22              MR. VILLA:  May I have just a moment, Your
23    Honor?
24              THE COURT:  You may.
25              MR. VILLA:  I think those are all my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    questions.

 2              THE COURT:  Thank you, Mr. Villa.

 3              Any other defendants' counsel that wishes

 4    to cross-examine Mr. Martin on the Daubert or

 5    Rodriguez motion?

 6              All right.  Ms. Jacks, you're about ready

 7    to leave?

 8              MS. JACKS:  Actually I was kind of waiting

 9    to see what was going to happen.

10              THE COURT:  Okay.

11              MS. JACKS:  But I appreciate --

12              THE COURT:  Well, if I don't get to speak

13    to you, have a safe trip.  Thank you for your

14    participation.

15              MS. JACKS:  Thank you.

16              THE COURT:  Ms. Armijo, do you wish to

17    conduct redirect of Mr. Martin?

18              MS. ARMIJO:  Yes, Your Honor.  Thank you.

19              THE COURT:  Ms. Armijo.

20                   REDIRECT EXAMINATION

21    BY MS. ARMIJO:

22         Q.   Now, a lot has been asked of you over the

23    last 24 hours.  And I wanted to ask you some

24    questions in general.  I know that you've testified

25    that part of what you consider in coming to your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3143

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3144

```
 1    opinions about the SNM is interviews, but you also
 2    mentioned other things as well.  As far as the
 3    interviews, does it include all the things you
 4    previously testified, which include the orientation
 5    reclassification, people dropping out, or being moved
 6    around?
 7         A.   Yes, there is a lot of variations in the
 8    interviews, they don't -- specifically for just one
 9    reason.  There are multiple reasons we interview.
10         Q.   Does it include current members and past
11    members?
12         A.   Correct.
13         Q.   Are your opinions also based upon the
14    trainings that you've attended?
15         A.   Correct.
16         Q.   And what about talking to other law
17    enforcement sources?
18         A.   Yes.
19         Q.   What about letters that you have been --
20    either that you or others in Corrections have
21    obtained from gang members?
22         A.   Correct.
23         Q.   Do you use that information?
24         A.   Yes.
25         Q.   Do you also use as part of your opinion
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209 3145

```
 1    jail calls that are listened to by law enforcement
 2    regarding gang activity?
 3         A.   Yes.
 4         Q.   Do you also for your opinion depend on STIU
 5    files and other law enforcement or Corrections'
 6    documents pertaining to gang members?
 7         A.   Yes.
 8         Q.   And do you also base your opinion based on
 9    books and articles, such that you've already
10    testified to?
11         A.   Yes.
12         Q.   Now, the notice that you were provided to
13    look over, was that actually drafted by the U.S.
14    Attorney's Office, in comparing it to the indictment
15    in this case?
16         A.   I'm not sure.
17         Q.   It's the Document 1299 that Ms. Jacks went
18    over with you.
19         A.   Right.
20         Q.   Was that actually drafted by the U.S.
21    Attorney's Office, and you were asked to review it?
22         A.   Yes.
23         Q.   Now, a lot has been said about the
24    validation process by the Corrections.  Is validation
25    different -- if you're a validated member is that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    different from a different criteria -- let me see,
 2    I'm sorry, I'm wording this poorly.  Can somebody be
 3    a member of SNM, but not necessarily validated by
 4    Corrections Department?
 5         A.   Correct, yes.
 6         Q.   All right.  And is that because the
 7    validation process is such that Corrections has to
 8    basically, you know, dot the Is and cross the Ts, to
 9    make sure that there are certain verifications that
10    are met for validation?
11              MR. SINDEL:  Your Honor, I'm going to
12    object to the leading form of the questions.  She can
13    just ask what process they use rather than suggesting
14    it.
15              THE COURT:  Don't lead.
16         Q.   Let me ask the question differently.  For
17    validation, is that -- can somebody be a member and
18    not be validated by the Corrections Department?
19         A.   Yes.
20         Q.   And explain how.
21         A.   A person could have -- we just might not
22    have gotten all the documentation to provide that
23    they are a member.
24              For example, Timothy Martinez came into the
25    prison system and was not suspected or validated as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3146

1    an SNM Gang member.  And once he was assaulted in the

2    general population, he ended up self-admitting that

3    he was an SNM member.

4         Or members that have been recruited in the

5    county jail that we don't know about.  Or they could

6    have been in the system for a long time, and we

7    haven't acquired enough documentation for validation

8    purposes.

9         Q.   And you were also talking about removing

10   someone from that.  If you remove someone that is --

11   was previously validated, does that necessarily mean

12   that there was a previous error?

13        A.   No.

14        Q.   What does that mean?  What can that mean?

15        A.   That means that he has been inactive for a

16   long period of time, and that there is no reason to

17   keep him validated.  He's no longer associated or an

18   active -- what we would consider an active member.

19        Q.   Now, you were questioned a great deal about

20   why somebody who is an active SNM member while

21   incarcerated, and they go out on the street and then

22   they come back in, and maybe they, you know, didn't

23   put in their work on the street.  And if they came

24   back in, why you would believe them as far as -- or

25   why would you put truth in the entry -- I'm going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3147

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 212

```
 1    say -- reentry interview as to where to place them?

 2         A.   Because we're trying to protect them from

 3    harm or death.  So there is no reason for me not to

 4    believe that someone is in fear for their life, if

 5    they're telling me they're in fear for their life.

 6         Q.   So, for instance, let's just say a person

 7    comes back in; he's been out on the street, and they

 8    don't want to talk to you.  Now, they're not telling

 9    you, yes, I'm active, or no, I'm active.  And as a

10    result, you put them back in the SNM pod.  Would it

11    be dangerous, yes or no -- you tell me -- if someone

12    is not good standing to go back into the SNM pod?

13         A.   Yes, it would.

14         Q.   And does that go into your -- I guess your

15    judgment call of whether or not this person is

16    telling you the truth, because they would know that

17    their safety is in danger?

18         A.   Correct.

19         Q.   Now, is it a practice for prison gang

20    experts to research and understand a prison gang's

21    history?

22         A.   Is it a common practice for them to

23    research?  Yes.

24         Q.   And is it a common practice for gang

25    experts and law enforcement officers to read books
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3148

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3149

213

```
 1    about the formation of prison gangs?
 2         A.   Yes.
 3         Q.   Is that something that you have done?
 4         A.   Yes.
 5         Q.   Is it a common practice for gang experts
 6    and law enforcement officers to interview gang
 7    members and ex-gang members to find out this
 8    background and historical information?
 9         A.   Absolutely.
10         Q.   And is that something that you have done?
11         A.   Yes.
12         Q.   Is it a common practice for prison gang
13    experts and law enforcement officers to speak to
14    other law enforcement and corrections officers to
15    understand their observations, opinions, and
16    background and history of certain prison gangs?
17         A.   Absolutely.
18         Q.   And is that something that you have done?
19         A.   Yes.
20         Q.   Is it common for prison gang experts and
21    law enforcement officers to --
22              MR. ADAMS:  Your Honor, objection to the
23    leading nature of these questions.
24              THE COURT:  Well, I agree they're leading.
25    But I think she's trying to establish some record
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3149

 1    here.  I think we know what the answers are, so I'll

 2    allow it.  Overruled.

 3         Q.   Is it common for prison gang experts and

 4    law enforcement officers to review historical prison

 5    documentation to form opinions about a gang's origin,

 6    background, and history?

 7         A.   Yes.

 8         Q.   Is that something that you have done?

 9         A.   Yes.

10         Q.   And lastly, did you personally use all of

11    these common research methods to form the basis of

12    your opinions on the SNM's origins, background, and

13    history?

14         A.   Yes.

15              MS. ARMIJO:  I have nothing further.  Thank

16    you.

17              THE COURT:  All right.  Thank you, Ms.

18    Armijo.

19              All right.  Mr. Martin, may step down.

20    Thank you for your testimony.

21              THE WITNESS:  Thank you, sir.

22              THE COURT:  Mr. Castellano, remind me the

23    procedure?  We were going to take some evidence, keep

24    the evidence going, because of your expert, so you

25    want to, before we do any argument or anything

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3150

```
 1    further, you want to put on your next expert?

 2              MR. CASTELLANO:  Yes, sir.  We have

 3    additional information.  I believe, Ms. Armijo may

 4    want to take up a housekeeping matter first.  But we

 5    are ready to present more evidence related to the

 6    James hearing after that.

 7              THE COURT:  Okay.

 8              MS. ARMIJO:  Your Honor, and I believe that

 9    Mr. Beck actually is going to be taking care of it.

10    It has to do with an update on the electronic issue.

11              THE COURT:  All right.  Mr. Beck.

12              MR. BECK:  Your Honor, so, on Monday we

13    discussed that the Court was going to order

14    disclosure of a single ELSUR device.  And I relayed

15    that to FBI.  And I had a conversation with the

16    general counsel in Albuquerque last night, and then a

17    conversation with the general counsel in Albuquerque

18    and couple attorneys from the Operational Technology

19    Division and the Office of the General Counsel in

20    Quantico for FBI.  And we will be filing a motion to

21    reconsider the Court's order.  I expect that I'll

22    discuss with the Operation Technology Division some

23    of the things that they expect that I'll include in

24    that motion to reconsider, and some of the arguments

25    that are a little bit more technical than I'm able to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3151

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3152

```
 1    articulate right now.  But they have gotten in
 2    contact with me, and do intend to at least raise
 3    their objections to the Court's order at this point.
 4            So I want to alert the Court to that,
 5    because I know it's something that's been time
 6    sensitive for everyone in here; that they're working
 7    on it.  And I expect that I've given them the
 8    timeline, and I expect that we will file a motion to
 9    reconsider before December 7th's hearing.
10            THE COURT:  Would it be helpful so that we
11    have people that are fully able to answer the
12    questions that I order, or you could make sure that
13    the people from the FBI that are able to answer all
14    questions are here?
15            MR. BECK:  So I told -- I told everyone
16    that I talked to that the Court did order production.
17    And that the Court ordered production.  And so I told
18    them that the Court expects a written motion to
19    reconsider.
20            What I understand is that they are not, at
21    this point, interested in being here to argue it
22    personally.  But they, for some reason, think that
23    they may be able to download information into my head
24    so that I may -- I know, I agree, no, please, I
25    laughed when they said that, too.  My words, not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3152

1   theirs.  They had better technology words than I do.

2   But for some reason they think they'll be able to

3   help me articulate a better basis for our objection

4   to the Court.

5          I told them I'm willing to do that.  I

6   said -- I gave them the Court's instructions on

7   Monday, that -- the Court's reasoning behind its

8   order.  To be frank with the Court, with everyone

9   here, I'm not sure it will change the Court's

10  decision, since it will again be coming from my

11  mouth.  But I told them that I would be willing to do

12  my best and to raise that with the Court, and to see

13  the Court's point of view.

14         THE COURT:  Well, let me say this:  And I

15  don't mean to be disrespectful in any way, but it's

16  signaling to me -- and you can tell me if this is

17  wrong -- it's signaling to me that the FBI is sort of

18  taking a pro forma position.  This is something they

19  feel like they need to do in the federal courts of

20  the nation, is to protest against this, but they're

21  not fighting me very hard.  And so I'm probably on

22  the right -- at least in my own mind, I think I'm on

23  the right track.

24         So you might convey that to them, so that

25  if I'm misreading what the FBI -- if this is a more

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3153

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3154

```
 1    sensitive nature, and I'm not picking up all the
 2    security implications from it, it would probably
 3    behoove them to send somebody here that can answer
 4    all questions.  Otherwise, I'll probably persist in
 5    this sort of impression that I'm getting.
 6              MR. BECK:  That's similar to the
 7    conversation that I had with them last night.
 8              THE COURT:  All right.  Just as long as
 9    we --
10              MR. BECK:  I just wanted to raise that with
11    the Court.
12              THE COURT:  I appreciate it.  Maybe we can
13    take that up -- I know it's not going to give the
14    defendants much time to file a written response, but
15    I think you're going to be reading with me at the
16    same time, I think we're all going to be prepared to
17    argue, and then maybe I can rule so that we can keep
18    the things moving.
19              More housecleaning?
20              MS. SIRIGNANO:  Just in response, Your
21    Honor.  Thank you.
22              THE COURT:  Oh, okay.  Responses to
23    housecleaning.
24              MS. SIRIGNANO:  Yes, thank you, Judge.
25              THE COURT:  It's housekeeping, isn't it;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    it's not housecleaning.

2            MS. SIRIGNANO:  Maybe a little of both.

3            Judge, Ms. Jacks and I and a number of

4    defense counsel worked on that letter that she filed

5    with the Court regarding the electronic evidence.

6    And I would just like to request the Court to give

7    the Government a deadline as to when they're going to

8    file that motion to reconsider.  And also --

9            THE COURT:  I think Mr. Beck says he's

10   going to have it by the 7th.  So what I was proposing

11   is take it up the first thing on the 7th.  That's

12   clear.  And that will move things along.

13           MS. SIRIGNANO:  Well, I'm sorry.  I'm

14   confused.  He's going to file the motion on the 7th,

15   or we're going to argue it on the 7th?

16           THE COURT:  He's going to file it before

17   the 7th.  He's nodding affirmatively.  And we'll take

18   it first thing up on the 7th.

19           MS. SIRIGNANO:  Well, I'd like to get a

20   date, Your Honor, only because we have to respond to

21   it.

22           THE COURT:  That's what I was just saying.

23   I mean, we're all just going to be reading.  I mean,

24   and do we really need to -- I mean if we delay the

25   response -- I mean if we delay argument because of




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3155

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3156

```
 1    the response, we're probably delaying the production.
 2            MS. SIRIGNANO:  Judge, the only reason why
 3    I ask --
 4            THE COURT:  I think Mr. Beck may solve my
 5    problem.  Mr. Beck.
 6            MR. BECK:  Being somewhat familiar with the
 7    Court's practice, the Court tends to give us an
 8    inclination the way the Court is leaning.
 9            THE COURT:  Is that helpful?  Everybody is
10    nodding.
11            MR. BECK:  In this case the Court has
12    already ordered production.  So I think the morning
13    of the 7th, if a response is required, a written
14    response, or helpful to the Court, I think the Court
15    probably will give the defense more time to respond
16    in a written fashion.  If it's not going to be very
17    helpful in oral argument, may keep the Court leaning
18    the same way as Court has already ordered us to
19    proceed with production.  I think we'll know that
20    that morning.  So I don't want to put words in the
21    Court's mouth.  But I think we could probably handle
22    it on the 7th.
23            THE COURT:  Let me ask you, then I'll see
24    if that works for Ms. Sirignano.  Are you sort of
25    thinking that this may be a late night on Wednesday
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3156

1   filing?

2           MR. BECK:  Those who know me well know that

3   I don't do late nights very well.  So I wouldn't

4   expect it will be a late night filing.  It might be

5   filed on the 6th, on Wednesday the 6th.  But I think

6   most people in this room would be up for it.  I think

7   most people would still be at work by the time this

8   gets filed.

9           THE COURT:  Let me ask this:  I guess what

10  I hear Mr. Beck saying is that:  Could you live with,

11  he'll file his motion whenever he gets it filed

12  working with the FBI.  We'll argue it on the 7th.

13  And if you still feel at that point you need more

14  time to file a written response, then we can delay

15  ruling and for you to file a written response.

16          MS. SIRIGNANO:  Judge, with all respect,

17  and with deep regret, I can't agree to that.

18          THE COURT:  I think everyone is signaling

19  you may not need to file a response at all.

20          MS. SIRIGNANO:  Could be.  But I'd like to

21  have the name of the expert that the Government

22  intends to bring.

23          THE COURT:  They're not intending to bring

24  anybody.

25          MS. SIRIGNANO:  Okay.  I'd like to have my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3157

```
 1    expert there, if needed.  That's the only reason why
 2    I'm asking.  And so if we were able to file a
 3    response, and I could get my expert --
 4              THE COURT:  Have the expert here at 9:00.
 5              MS. SIRIGNANO:  On the 7th, or --
 6              THE COURT:  9:00 on the 7th.  We'll take it
 7    up first thing.
 8              MS. SIRIGNANO:  So will we have an
 9    opportunity to have a response before or after?  I'm
10    just worried about time running out, Judge.  That's
11    the only thing.  I'm not trying to be difficult at
12    all.  We've been asking for this for months now,
13    literally.
14              THE COURT:  I know you've been asking for
15    it for months.  But we've been very careful about
16    some things.  Let's just leave it at this:  The FBI
17    will file their response when they want it.  You have
18    your expert here if you want him at 9:00.  We'll take
19    it up first thing in the morning.  If you don't want
20    a ruling at that point, then we can delay it further
21    for you to file a written response.
22              MS. SIRIGNANO:  Thank you, Your Honor.
23              THE COURT:  All right.  Do you have some
24    housekeeping?
25              MR. VILLA:  If you don't mind, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3158

```
 1    It doesn't have to do with that issue, but I thought

 2    if the Government is going to put on more witnesses

 3    and go to the 5:30, and we're all going to get out of

 4    here.  So what I wanted to address with the Court is

 5    scheduling for next week.  Depending on what happens

 6    and what other evidence the Government might intend

 7    to put on, we have teed up -- and we've been in

 8    northbound communication with Ms. Wild -- Mr. Perez'

 9    motion to suppress for lost evidence.  And Mr. Baca

10    has a couple of suppression motions that we, in our

11    communications with Ms. Wild, have suggested will

12    take up those two days that we have set for next

13    week.  So I want to make sure that, if that's still

14    the case:  One, because we have some experts coming

15    down that don't have to be here; but two, because we

16    think those need to get heard then.  And, if

17    necessary, the presentation of evidence that the

18    Government is doing now would have to be put off

19    later to the next set of hearings.  And I don't know

20    when that's going to be.  Because the week after that

21    is the other two suppression motions for Mr. Perez

22    and Mr. Herrera.  And there is even more experts

23    queued up to be here for that, too.  So I just want

24    to try to get some clarity before we all get out of

25    here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Ms. Wild, are you there?  She's

 2    not there.  She was heading for a meeting.  We'll see

 3    if she's available later on, and maybe we can pick it

 4    up.  It may be that you are just going to have to

 5    talk to her between now and then.  And then I'll have

 6    to be better informed.  I know y'all had a lot of

 7    discussions with Ms. Wild while this hearing is going

 8    on, and I'm probably less informed about that.  So I

 9    don't think I can answer anything right at the

10    moment.  We'll see if she can get back on the phone.

11    If she can contribute to this, then we'll spend a

12    little bit of time doing it.  Otherwise, we may just

13    have to try to work it out during the week through

14    Ms. Wild.

15              MR. VILLA:  So the issue, Judge; I think

16    everything is set up just fine, assuming we don't

17    spill over from today.  And I'm sure the Government

18    would like to be heard on that.

19              But the only other issue that I had for

20    housekeeping was real-time at counsel table for

21    trial.  Does the Court need a motion for something

22    like that, or is that something you can just ask IT

23    about?

24              THE COURT:  Well, I think it's going to

25    incur some cost.  Why don't y'all first talk to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3160

```
 1    Ms. Waters.  And then work with Ms. Bean.  She's done

 2    it a lot of times.  It's been more in the civil

 3    context than it has in criminal.  But start with

 4    Ms. Waters, then work with Ms. Bean.  I don't think

 5    it takes a court order.  But somebody can enlighten

 6    me if it does.

 7              MR. VILLA:  Yes, Your Honor.  Thank you.

 8              THE COURT:  All right.  Let me hear from

 9    Mr. Lowry, unless he wants to defer.  If it's on the

10    scheduling, I'd like to kick it down the road a

11    little bit, but --

12              MR. LOWRY:  Yeah, Judge.  Not to belabor

13    this, but I join what Mr. Villa said.  And I just

14    think I'm anticipating a motion for disqualification

15    for the Court to assess the conflict.  And I think

16    that's going to eat up into some of the time next

17    week.  But I appreciate the Court's ruling and

18    treating everything expeditiously here.  But I just

19    wanted to bring that to your attention.

20              THE COURT:  Okay.  Ms. Armijo.

21              MS. ARMIJO:  Yes, Your Honor, I agree with

22    Mr. Lowry.  I think that we could probably take up

23    that issue.  I do anticipate filing something,

24    hopefully within the next day or two.  And I know

25    that they want to take care of it quickly.  And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3161

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226

3162

```
 1   believe that the person at issue may be available for
 2   that as well.  So that should be taken care of next
 3   week, to add to the agenda.  I'll email Ms. Wild
 4   about that.
 5           And I guess the issue to put out for the
 6   defense at the end of the day so that Cori and Amy
 7   and I can get back in touch with Ms. Wild about, is I
 8   anticipate we are now probably a day and a half
 9   behind.  Because we will start the next segment now
10   of our James hearing.  But I anticipate that would
11   be, with cross-examination, at least half a day.  And
12   we anticipate for the second expert at least one day.
13   So I think we're a day and a half behind.  So then
14   the question for the defense to consider is:  Are we
15   going to be bumping some of these hearings that we
16   already have set, or are we going to be adding a
17   makeup day for what we have?  And we would like to
18   know, just because it also requires us to get
19   witnesses here.  So I think that's just going to be a
20   matter of what the priorities are, Your Honor, and
21   for the defense to consider.
22           THE COURT:  All right.  Well, since Mr.
23   Lowry brought it up, and you brought it up,
24   Ms. Armijo, take a look, Mr. Lowry, at New Mexico
25   Rule 16-109.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  Your Honor, I've been studying
 2    that particular rule.
 3              THE COURT:  16-109(b) applies only when
 4    there is a former client and a former law firm.  So
 5    when I get this opinion on Mr. Davis issued, take a
 6    look at it, because I think it may answer some
 7    questions there.
 8              Let me make this comment:  I'll make two
 9    comments here, so it will be even-handed.  I'm seeing
10    a lot of -- the Government raising a lot of conflict
11    issues.  You've got to do what you have got to do,
12    and I know the rules.  But I hope that -- these may
13    be late -- I don't mean late in the sense that they
14    couldn't have been raised before -- but they're late
15    in this process, these motions to disqualify counsel
16    are not a backdoor attempt to move the trial.
17              And as far as defense lawyers, we can sit
18    here and do Daubert hearings, like we did for 24
19    hours here, but -- we can do it.  We'll start a
20    trial.  So think about how you're going to use your
21    time.  We're not going to go into a filibuster here.
22    So if it's really important to ask every one of those
23    questions, okay.  But we're going to start a trial on
24    the 29th.  So if not every motion is heard, not every
25    expert is asked every question, every argument has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   not been made, every motion hasn't been file, we're
 2   starting on the 29th.  So you've got to start
 3   thinking about how you're going to use this time
 4   wisely.  So think about that.
 5            All right.  Shall we take up the next
 6   expert?
 7            MR. CASTELLANO:  Yes, Your Honor.
 8            THE COURT:  I guess it's the James
 9   hearing -- the next witness on the James hearing.
10            JAMES HEARING (Continued)
11            MR. CASTELLANO:  The United States re-calls
12   Special Agent Bryan Acee.
13            THE COURT:  Mr. Acee, I'll remind you that
14   you're still under oath.
15                     BRYAN ACEE,
16       after having been previously sworn under oath,
17       was questioned and testified further as follows:
18                  DIRECT EXAMINATION
19            MR. CASTELLANO:  Your Honor, in order to
20   focus the Court's attention a little bit in terms of
21   which conspiracy we're talking about, these next
22   statements will be largely focused on Counts 9 and
23   10, conspiracies to murder Wayne Santistevan and
24   Gregg Marcantel.  There will be some other conspiracy
25   related statements mixed in there.  But those are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   heavily focused on those two conspiracies.

2   BY MR. CASTELLANO:

3       Q.   Agent Acee, I want to ask you about some

4   letters that were either intercepted or retrieved by

5   STIU agents in this case related to the murders of or

6   the conspiracies to murder Mr. Marcantel and

7   Mr. Santistevan.  Are you familiar with those?

8       A.   I am.

9       Q.   Let me turn your attention to one that was

10  received by STIU on or about March 27, 2015.  Can you

11  tell me who authored that letter?

12      A.   Yes.  Sir, I have in front of me notes and

13  302s.  Am I able to reference those?

14      Q.   Okay.  For the record, the first letter I'm

15  referring to is at DeLeon 3372.

16      A.   Okay.  The first letter is from Roy

17  Martinez, a/k/a "Shadow."  It's addressed to Juan

18  Carlos Gutierrez, a/k/a, "Gotti."  In this letter

19  Martinez orders Gutierrez to kill Gregg Marcantel

20  pursuant to orders that were given to him by Anthony

21  Baca, while they were housed together at the Southern

22  New Mexico Correctional Facility in 2013.

23          The letter goes on instructing Gutierrez to

24  contact other members on the street to make this

25  happen.  And if the other members on the street

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    failed to help carry out the hit, they should be

2    killed.  And that other members would be in contact

3    with him to help him -- him being, excuse me,

4    Gutierrez -- to help ensure that that hit took place.

5              (Ms. Jacks left the courtroom.)

6        Q.   Let me turn your attention to the next

7    letter, also on page 3372 of DeLeon.  Tell us who

8    wrote that letter and to whom it was written?

9        A.   The letter was written by Roy Martinez,

10   addressed to Damian Lobrado, a/k/a "Cuba."  And in

11   this letter Martinez tells him that the time has come

12   for "Cuba" to show his loyalty to the S, which he had

13   not yet done, and that he was to kill Gregg

14   Marcantel.

15             It also goes on to say that Gutierrez --

16   the person that we just talked about on the first

17   letter would be in contact, and that they should work

18   together.  Other members would be in touch, and that

19   they should not fail this mission.

20             MR. CASTELLANO:  For the record, Lobrado is

21   spelled L-O-B-R-A-D-O.

22       Q.   Let me turn your attention to page 3373 of

23   the discovery.  Can you tell us about the letter on

24   that page received on or about March 30, 2015?

25       A.   This letter is also from Roy Martinez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231

```
 1    This one is addressed to Arthur Chavez, a/k/a
 2    "Lonely."
 3         Q.   What's the content?  Well, who is it
 4    written to?
 5         A.   Again, this is to Chavez, a/k/a "Lonely,"
 6    and Martinez is telling him that at the direction of
 7    the viejo, who we believe is Anthony Baca, and that
 8    it's about a list Anthony Baca and Chavez had
 9    previously discussed.  Martinez said that Gregg
10    Marcantel had degraded Anthony Baca and dishonored
11    the SNM.  In the letter he ordered Chavez to handle
12    the hit carefully and discreetly.  Martinez concluded
13    the letter by threatening Chavez that there were
14    other members on the street to take out any members
15    who refused to carry out the hit.  Martinez advised
16    that there would be no more second chances.  And then
17    Martinez again referenced a hit list that Anthony
18    Baca discussed with Chavez, and named Marcantel as
19    the priority.  And I'm quoting Martinez; he said, "He
20    must go," a reference to Marcantel.
21         Q.   And further down on that document, do you
22    see where there is additional information about a
23    green light for members who refused to carry out the
24    hit?
25         A.   Yes.  Martinez gave Chavez the green light
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3167

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 232

1    to take out any SNM members who refused to assist

2    with completing the objective of killing Marcantel.

3    Martinez also gave Chavez a deadline of August 31,

4    2015, at midnight, to complete the hit.  Martinez

5    also threatened Chavez that if he failed to do this

6    or refused to conduct it, that he'd be hit as well,

7    as would any other member that failed to go along

8    with the mission.

9            He also claimed -- Martinez claimed that

10   there were three SNM members watching Chavez at the

11   time Chavez was on the street.

12       Q.   What was purpose of watching him?

13       A.   To ensure that he was making good on

14   progressing on the mission.

15       Q.   Let me turn your attention to page 3375.

16   Can you tell us about the letter on top of that page?

17       A.   Yes.  This pertains to a letter from Robert

18   Martinez, a/k/a "Baby Rob," and it's addressed to

19   Sammy Griego, a/k/a "Sammy G."  In this letter Robert

20   Martinez stated that the SNM leadership had decided

21   to allow Griego one opportunity to show his loyalty

22   to the SNM by taking out Gregg Marcantel and Dwayne

23   Santistevan.  In the letter Martinez gave Griego the

24   flexibility to work out the details of the hits on

25   his own.  Martinez threatened Griego by stating if he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3168

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 233

 1    failed to conduct the hits, he'd be taken out.

 2           Martinez also told Griego that other SNM

 3    members would be in touch with him; that they should

 4    work together.  Martinez instructed Griego to get in

 5    touch with Gerald Archuleta, a/k/a "Styx."

 6           In the letter Archuleta is referred to as

 7    "Grandma."

 8        Q.   Let me turn your attention to the next

 9    letter.

10        A.   This letter is from Robert Martinez, "Baby

11    Rob," to Ruben Hinojosa.  In this letter Martinez

12    stated that the SNM leadership are tired of SNM

13    members getting out of the prison and doing nothing

14    for the SNM.  Martinez said that this type of

15    behavior would no longer be tolerated and ordered

16    Ruben to show his loyalty by taking out Gregg

17    Marcantel and the Dwayne Santistevan.  Martinez

18    threatened Ruben just like the other letters, and

19    advised that other SNM members would be getting in

20    contact with him.  And concluded that, if he didn't

21    follow through with the mission, that his life would

22    be in jeopardy.

23           MR. CASTELLANO:  For the record, Ruben

24    Hinojosa's last name is spelled H-I-N-O-J-O-S-A.

25        Q.   At the bottom of the page I'm going to ask

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3169

```
 1    you about information received regarding another

 2    statement by Mr. Baca on August 5, 2015.

 3         A.   On that date, myself and Joseph Sainato and

 4    Task Force Officer Mark Myers interviewed a

 5    confidential human source.  This particular source is

 6    one of the original members of the SNM.  I don't

 7    believe I had previously met this person.  So this

 8    was my introductory meeting with this person and

 9    debriefing.

10         During that debriefing, in reference to the

11    hits on Marcantel and Santistevan, the CHS told me

12    and the other agents that Anthony Baca was eager to

13    hit both Marcantel and Santistevan; that according to

14    this source, Baca told the source that he was excited

15    about the recognition the SNM would get all over the

16    country if they were successful.

17         This source claims that Baca told him that

18    not even the Mexican Mafia had been able to kill a

19    prison director or cabinet secretary.  The CHS stated

20    that Baca first ordered Billy Cordova, a/k/a "Little

21    Shadow," and Robert Sanchez, a/k/a, "Tiny," to hit

22    STIU Administrator Dwayne Santistevan back in 2014,

23    when they were both released from prison.  However,

24    both got picked up while they were on parole, and

25    were unable to enact that plan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3170

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 235

```
 1                MR. ADAMS:  May I ask for the Bates number

 2    of that, please?

 3                MR. CASTELLANO:  It's 3375 of DeLeon.

 4                MR. ADAMS:  Okay.

 5        Q.   Let me turn your attention to page 3376.

 6    And let me ask about other statements made by Mr.

 7    Baca.

 8        A.   So with this particular document, I have a

 9    number of dates and times.  Do you want me to just

10    continue going through those?

11        Q.   Yes.  At 3376, I want to focus on the

12    person housed next to him.

13        A.   Okay.

14        Q.   And focus on Mr. Baca's return to New

15    Mexico, and what he stated at that time.  It's in the

16    first paragraph on the top of page 3376.

17        A.   Yes, sir.  Okay, so in October, on October

18    22, 2015, as part of our investigative strategy,

19    Anthony Baca was returned to New Mexico from U.S.

20    Prison -- one of the facilities, one of the four

21    facilities up in Florence, Colorado.  He was housed

22    at the Level 6 facility, and he was housed next to

23    one of our confidential human sources.

24                We utilized electronic surveillance, both

25    what I'll refer to as body wires or ELSUR devices, as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3171

```
 1   well as what would otherwise be considered a

 2   contraband cellular telephone that I had a wire

 3   interception order on.

 4              During Mr. Baca's incarceration at the

 5   Level 6, Mr. Baca and the CHS, as well as other

 6   people, other SNM members in and around the CHS,

 7   engaged in conversations.  Much of those

 8   conversations were recorded via the body wire and/or

 9   the contraband phone.  The CHS had a reputation for

10   having phones in the past, and I don't think it

11   surprised anyone that he had one in this

12   circumstance.  And so as I mentioned numerous phone

13   calls were made and recorded, as were conversations.

14        Q.   And what was said about the conspiracy to

15   kill Messrs. Marcantel and Santistevan?

16        A.   Quite a bit.  In fact, agents on my team

17   that I work with prepared a summary document that

18   consists of several pages, where we summarize those

19   conversations.  And then, of course, we also obtained

20   full transcription of those same conversations.

21        Q.   Okay.  Let's start with the top of page

22   3376.  And it's the portion at the end of the first

23   paragraph that says -- starts with the word

24   "Additionally."

25        A.   "Additionally, upon his return to New
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3172

1  Mexico, Baca added STIU Coordinator Adam Vigil to the

2  hit list.  He added Vigil because Vigil was scheduled

3  to testify against the SNM as an expert witness for

4  the State of New Mexico in the Molina homicide

5  prosecution."

6       Q.   And is Adam Vigil the same person we heard

7  about earlier today in Mr. Martin's testimony?

8       A.   Yeah.

9       Q.   I want to refer to some of the summaries

10 you mentioned.  This will be DeLeon 3298.  And are

11 these first statements that we're going to discuss

12 taken on or about October 22, through October 26,

13 2015?

14      A.   Yes, they were.

15      Q.   Let me turn your attention then to page

16 3299 at the bottom.  It's the conversation ending in

17 010.  Can you tell us about that statement, please?

18      A.   "CHS says to 'Pup' that Robert" -- in this

19 case Robert Martinez -- "wrote 'Pup' a wila saying he

20 was going to take care of Santistevan because he

21 knows 'Pup' hates him.  'Pup' responds with 'Yes.'"

22      Q.   What's a wila, as best as you know?

23      A.   A kite or a note, a letter.

24      Q.   And who did "Pup" refer to?

25      A.   Anthony Baca.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3173

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 238

1      Q.   Let me turn your attention to the next
2   page, the statement ending in 012.
3      A.   "'Pup' explains that Javier Molina and
4   Jerry Montoya were close despite what people thought.
5   Javier would go to Montoya's door and call him names
6   so people thought there was a beef.  But they were
7   actually close.  'Pup' told Montoya that if Javier
8   kept talking to him like that, then Montoya needed to
9   hit Javier.  But Montoya told 'Pup' it was not
10  serious.  'Pup' then said, 'I even told 'Conejo,'
11  Samuel Silva, 'I'm going to push this shit, eh.'?
12           "Probably a reference to ordering a hit on
13  Javier."  That last sentence is the agent's comments.
14           MR. LOWRY:  Can we get the number of the
15  call, the call reference number for that?
16           THE COURT:  I can't hear you, Mr. Lowry.
17           MR. LOWRY:  Pardon me, Your Honor.  I just
18  want to get the call reference number to -- the
19  exhibit lists a whole bunch of calls.
20           MR. CASTELLANO:  On DeLeon 3300.  It's the
21  call ending in 012.
22      Q.   On that same page, let me turn your
23  attention to the call ending or the statement ending
24  in 019.
25      A.   "'Pup' tells CHS to have Mario, "Poo-poo,"

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3174

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 239

1    who is Mario Montoya hit Santistevan, and/or Adam

2    Vigil, not Marcantel, and have Chris Garcia finance

3    it.  He says it needs to be done because the

4    administration is going to tear us to shreds little

5    by little.  'Pup' says after the hits are done, all

6    the brothers will be separated in various states, and

7    that communication with one another will be

8    critical."

9         Q.   Earlier we had an indication that Marcantel

10   was to be hit.  And here we have an indication that

11   he is not to be hit, by Mr. Baca; is that correct?

12        A.   Yes.

13        Q.   And does that matter change in the later

14   conversations or statements?

15        A.   Definitely.

16        Q.   Let me turn your attention to the next

17   statement, ending in 020.

18        A.   "'Pup' decided that it's better to" -- I

19   believe that's a typo.  It says his; I think it

20   should say "hit.  "'Pup' decided that it's better to

21   hit Santistevan and Adam Vigil because they are the

22   one telling lies to Marcantel.  Once the hits are

23   carried out and the investigation is done, the news

24   media will realize the corruption and scandals in the

25   prison system and fire Marcantel.  'Pup' is adamant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3175

1    that he wants it done.  And says the worst that will

2    happen to the SNM that is they will be sent out of

3    state."

4         Q.   And for reference, were these -- the last

5    two statements provided, were those taken on or about

6    October 24, 2015?

7         A.   Yes.

8         Q.   Now, turning the page to DeLeon, 3301.  Can

9    you tell us about the statement that ends at 021?

10        A.   "'Pup' wants research to be done on where

11   Vigil and Santistevan live.  He believes that the

12   warden lives on prison grounds on Oasis Street, but

13   also observed other houses that could belong to Vigil

14   or Santistevan.  He says it will be easier to get

15   them if they do not reside on the prison grounds.  He

16   also says he wants to bring down Bustos, a former

17   Associate Warden, who 'Pup' blames for sending him to

18   the ADX.  'Pup' does not specify that he wants Bustos

19   hit, but it appears he wants the get him in trouble.

20   'Pup' believes that Bustos owns a Santa Fe real

21   estate company."

22        Q.   Once again, is it your understanding that

23   "Pup" refers to Mr. Baca?

24        A.   Yes.

25        Q.   And what is Mr. Baca's statement about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3176

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

1   where he believes Mr. Marcantel lives in the next

2   statement?

3       A.   "'Pup' believes Marcantel also lives on

4   prison grounds."

5       Q.   And just to be clear, for the Court's

6   determination on these statements, at any point did

7   Mr. Baca talk about murdering Mr. Vigil with anyone

8   other than a cooperator that you're aware of?

9       A.   I think he talks about it with Mario

10  Rodriguez, "Blue."

11      Q.   I just want to make sure we're keeping

12  track of who they are.

13      A.   He may also talk about it with Chris Garcia

14  during the phone conversations.

15      Q.   Let me turn your attention now to DeLeon,

16  3303.  And I'll turn your attention to the statement

17  at 007.  And it's the fourth bullet point down on

18  that summary.

19      A.   "'Pup' and CHS ask Garcia" -- in this case

20  it's Chris Garcia -- "for Mario's phone number."

21  Mario is Mario Montoya.

22      Q.   And to put the statement in context, what

23  was the purpose of obtaining Mario's phone number?

24      A.   Mario Montoya is a good SNM soldier on the

25  streets, and the one that's designated to lead the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3177

```
 1   mission, the hit on Marcantel and Santistevan.
 2        Q.   And at this point, for the Court's
 3   consideration, was Mario working as a cooperator for
 4   the Government?
 5        A.   He was.
 6        Q.   And were Mr. Baca or Mr. Garcia aware of
 7   that?
 8        A.   No.
 9        Q.   Let me turn your attention to the statement
10   on the same page, at 008.
11        A.   "'Pup' instructs the CHS what to tell Mario
12   regarding Santistevan and Vigil hits.  'Pup' says,
13   'All the shit that's going on with the rasa, it's all
14   fucked up because of those two individuals.  So we
15   need this fucking perro done.  We'll give you a few
16   days to try to hunt down this motherfucker.  'Pup'
17   also says, 'That's only way this shit is going to
18   stop.  If they get handled, you know.  Either one of
19   them, it don't matter which one."
20            The CHS then asks, "Either Santistevan or
21   Adam?
22            "Pup" responds, "Yes, either one.  It
23   doesn't matter.  One of them will be dealt with in
24   order to stop this foul ass shit that they are
25   doing."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3178

```
 1          Q.   Next, let's discuss the statements at 009
 2     on the same page?
 3          A.   "Pup" and the CHS talk with Mario on the
 4     cellphone.  "Pup" tells Mario to reach out and touch
 5     Santistevan or Adam Villa.  "Pup" says, "Fucking Adam
 6     Vigil and fucking Santistevan are making it real
 7     fucked up.  They're creating a lot of perro that --
 8     making the brothers fight with each other.  And we
 9     need -- and we need somebody on the calle to fucking
10     touch either of them.  It don't matter."
11          Q.   And do you know the word calle to mean
12     street?
13          A.   Yes.
14          Q.   What's the next statement?
15          A.   "Pup" says, "And if he, Mario, needs any
16     squina or feria to finance the perro to get it done,
17     then we're gonna -- we're gonna to work on it till it
18     gets done."
19          Q.   What's your understanding from the context
20     of what squina or feria refer to?
21          A.   The SNM members refer to squina as to put
22     in work, and feria is money.
23          Q.   What's the next statement?
24          A.   "Pup" instructs Mario to make a silencer
25     out of a lawn mower muffler and a packet with steel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 243180

1    wool.  Pup says that Chris Garcia can finance Mario

2    if needed.  "Pup" asks Mario, "Okay, now, how are the

3    brothers acting out there?"  Mario tells him that the

4    brothers don't do anything, and like to get high, but

5    deny it.  "Pup" says, "We're going to fucking start

6    identifying them fuckers.  That way, when we come in

7    here, knock them off."

8         Q.   Let me turn your attention now to page

9    3304.  The first statement at the top of the page.

10        A.   "'Pup' tells Yvonne to mail in Suboxone

11   strips and 2K so that he can make money."

12        Q.   What's your understanding of what 2K refers

13   to?

14        A.   It's a synthetic marijuana.

15        Q.   And who is Yvonne?

16        A.   I believe that's Mr. Baca's girlfriend.  I

17   don't believe they're married.  They may be, though.

18             MR. CASTELLANO:  For the record, that would

19   be conspiracy to bring contraband into the jail or to

20   distribute narcotics.  So we still consider it a

21   co-conspirator statement, but just not related to

22   those two counts.  We'll be moving for its admission

23   at trial.

24        Q.   All right.  The next statement at the 011.

25        A.   "Pup" and the CHS are talking about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3180

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3181

1    planning the hits and the best weapon to be used.

2    "Pup" says, "What's a good cuete for that?  It has to

3    be a revolver, carnal, not an automatic.  Automatic

4    might jam.  Those are easier to put a silencer on,

5    too, a homemade silencer, because it has a barrel."

6        Q.   And what's your understanding of what a

7    cuete is?

8        A.   Firearm.  I made some additional notes

9    after reviewing the transcript.

10       Q.   Okay.  Tell us what those statements are,

11   please.

12       A.   "Pup" said, "You can't say cuete on the

13   phone."  And Eric says -- excuse me, Eric, the CHS,

14   Eric Duran, says, "Well, it's my phone," like this

15   phone is good.  And then Pup tells him, "Yeah, but we

16   don't know that Chris' phone is good because Chris is

17   always hot."

18       Q.   And what is your understanding who "Chris"

19   is?

20       A.   Christopher Garcia.

21       Q.   On -- let me now refer you to the call or

22   the statement ending in 012, which takes place on or

23   about November 4, 2015.

24       A.   "Pup" and the CHS are talking via the

25   cellphone to Mario, getting an update on how Mario's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3181

1   planning is going.  "Pup" insists that Mario find out

2   addresses on Google.  And again, I'm going to add

3   some notes here from my review of the transcripts.

4   "Pup" is telling Mario to run their names, and make

5   sure he uses someone else's computer, like going to

6   the library.  And Mario kind of jokes back and says,

7   Well, "I can't just put their name in and it's going

8   to tell me all this stuff about them."  So they kind

9   of banter back and forth about that.

10          MS. SIRIGNANO:  Your Honor, can we get a

11   copy of his notes that he's reading off of, that's

12   not part of the Bates number that's been produced to

13   us.

14          THE COURT:  Well, I'll let you look at it.

15   If the Government doesn't mind making a copy of it.

16   Do you mind on this one, them getting a copy?

17          MR. CASTELLANO:  No, Your Honor.

18          THE COURT:  Okay.

19          MR. CASTELLANO:  Those will be available to

20   the defense.

21          THE COURT:  We'll recess in about 10

22   minutes, and we'll make a copy at that point and you

23   can take a look at it then.

24          MS. SIRIGNANO:  Thank you, Your Honor.

25          MR. CASTELLANO:  For the record, let me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3182

1    just show you what we're talking about, just so the

2    Court understands.  I'm putting on the screen a page

3    of discovery DeLeon 3304 at the bottom.  And I'm

4    referring to the calls ending in 013, for example --

5    or the statements, I should say.  And so what Agent

6    Acee has done in a few of these places is handwrite

7    some notes.  And that's what the defense will see

8    when they get a look at the notes.

9         A.   Mr. Castellano, could I point out something

10   on -- you were just referencing these call numbers.

11   That might be helpful.  These are also going to be

12   the devices.  So you can identify the device.  You

13   would want device 1188; then it's going to be call 11

14   on that device.

15        Q.   Okay.  So let me turn your attention then

16   to the recording ending 012, the last statement in

17   that portion of the recordings.

18        A.   "Pup" suggests that Mario research upcoming

19   meetings or charities that the targets might attend.

20        Q.   For what purpose?

21        A.   To locate them; that they're -- especially

22   Marcantel, he'd attend various meetings and

23   functions.  I added a note there that you'll see when

24   you review this that says, "Pup" encourages Mario to

25   take his time, that it needed to be done right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3183

```
 1        Q.   Next, let me turn your attention to the
 2   recording ending in 014 on the same page?
 3        A.   "Pup" and the CHS are talking about Michael
 4   Snow.  "Pup" tells the CHS, "Ask him if he could try
 5   to get me a cuete.  If he could, just get one, and
 6   I'll have him give it to somebody."  Specifically,
 7   "Pup" asks for a revolver.
 8        Q.   And once again, cuete refers to a firearm?
 9        A.   Yes.
10        Q.   And are you aware of whether or not Michael
11   Snow is a convicted felon?
12        A.   He is.
13        Q.   Okay.  Two bullet points below that it
14   says, "'Pup' asks Snow if he's heard" -- can you tell
15   us the rest of that statement?
16        A.   "'Pup' asks Snow if he's heard from Becky,
17   and if she still gets prescriptions for Suboxone.
18   'Pup' tells Snow to acquire some Suboxone strips, and
19   then give them to his hita."  And the agent that
20   wrote this puts in parentheses, "Probably Yvonne."
21        Q.   Does that refer to the same Yvonne we
22   believe was referenced earlier?
23        A.   Yes, Yvonne Griego.
24        Q.   And the next calls, do they take place on
25   or about November 4 through November 7, 2015?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3184

1        A.   Yes.

2        Q.   And that same page, 3304, look at the

3   statement ending in 017, please, and tell us about

4   that?

5        A.   "'Pup' wants to send us a message to

6   'Creeper'" -- who we believe was Jerry Armenta's

7   "family that they will be harmed if he testifies for

8   the state.  'Pup' wants the family to know 'Creeper'

9   is fucking up.  If he take the stand against this

10  perro, against anybody, we're coming for your ass.

11  'Pup' agrees that Mario is the best person to deliver

12  the message."

13       Q.   And can you tell the Court whether at this

14  point the Molina murder was still charged at the

15  state level?

16       A.   It was.

17       Q.   So when he refers to Jerry Armenta

18  testifying for the state, are we talking about Molina

19  at the state level at that point?

20       A.   Yes.

21       Q.   Let me turn your attention to DeLeon 3305.

22  Now, these statements are taken around November 13

23  and December 3, 2015.

24       A.   They're taken between those dates, yes.

25       Q.   Okay.  Starting on or about November 13,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   2015, under recording 001, what is that first

2   statement?

3        A.   "'Pup' and CHS are talking with Mario

4   Montoya.  'Pup' says he is working on getting Mario

5   guns."

6        Q.   In that call are you aware of what the

7   purpose is of obtaining guns at that point in time?

8        A.   Hit Marcantel, Santistevan, Vigil.

9        Q.   On DeLeon 3306, please tell us about the

10  statement ending in 005 on that page?

11       A.   "CHS read a text message from Chris Garcia

12  to 'Pup.'  Chris is nervous about giving guns to

13  Mario because other brothers have been coming to him

14  asking for Suboxone strips for 'Styx.'  But then they

15  never send them to 'Styx.'  Chris wants "Pup" to make

16  sure Mario is completely on board before he gives

17  them the guns.  Chris says, 'So just see what's up.

18  Make sure that everything is going to be good,

19  because these are nice toys.  And if they're in the

20  wrong hands and the carnal needs to get right, then

21  those are gone.'"

22       Q.   Who is "Styx" referring to?

23       A.   Gerald Archuleta.

24       Q.   Tell us about the next statement, please.

25       A.   "This message from Chris concerns 'Pup.'

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3186

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 251 187

1    'Pup' is getting nervous about too many people

2    knowing about the mission, and says that they just

3    kept only one carnal on it."

4         Q.   So what's the concern at that point?

5         A.   Too many people know about it.

6         Q.   Tell us about the statement ending at

7    statement 006, please?

8         A.   "'Pup' is trying to work out what to do

9    with Chris not trusting Mario enough to give him a

10   gun.  'Pup' thinks it may just be best to get Mario

11   money so he can get his own gun."

12        Then I add some comments from my review of

13   the transcripts, which is "'Pup' wants Mario to watch

14   out for cameras."  He was real concerned that

15   Marcantel would have cameras on his house.  He made

16   the comment, "He needs to make sure he's not wearing

17   a beanie or a mask when he walks up there."

18        Q.   Now, the previous two statements that we

19   were talking about ending at 005 and 006, did they

20   take place on or about November 25, 2015?

21        A.   Yes.

22        Q.   And when we say "on or about," why do we

23   think those dates are approximate or very close to

24   those dates?

25        A.   Because I kept reminding the CHS to make

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3187

1    sure he's putting dates on there.  Because I

2    otherwise have a difficult time figuring out when the

3    conversation takes place.  So the CHS would sometimes

4    have a conversation, and then I believe deactivate

5    the device, then turn it back on, so it starts a new

6    entry.  And he would say, "That was me and 'Pup' on,"

7    and he would give the date.

8        Q.   So that's an example of how the date might

9    be approximate or very close?

10       A.   Yes.

11       Q.   On the same page, DeLeon 3306, let's

12   start -- I think there are a series of statements

13   there.  Let's take them one at a time, ending in 008.

14       A.   To put this in context, this is happening

15   on December 3, 2015.  "Mario should have done the hit

16   over the night.  'Pup' and CHS are wondering if the

17   feds are going to charge the SNM.  'Pup' talks about

18   the steps the feds would have to take, gather state

19   evidence, bring in STIU and local law enforcement.

20   'Pup' complains about carnals doing interviews for TV

21   shows like Gang Land and MSNBC."

22       Q.   Let me stop you there, just so I don't have

23   to keep asking the question.  Each time we refer to

24   "Pup" in these statements, are we referring to Mr.

25   Baca?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   We are in the SNM.   Although there is

2    members that have the same moniker, I've only come

3    across one that uses "Pup," and that's Mr. Baca.

4        Q.   So let me turn your attention to the next

5    statement that begins with "The CHS asked 'Pup' if

6    the SNM will get respect."

7             THE COURT:   Could I use this maybe as a

8    break here?

9             MR. CASTELLANO:   Anytime you're ready.

10             THE COURT:   I'd like to take a 15-minute

11    break, come back in, and go for another half hour,

12    and let everybody go at 5:30.   Here's what I'd like

13    to do during the break.   Ms. Wild, are you there?

14             THE CLERK:   Yes, sir, I am.

15             THE COURT:   All right.   I'd like for Mr.

16    Lowry, Ms. Armijo, and Mr. Villa to talk to you on

17    the phone.   So I'm going to leave it on and you talk.

18    This will be off the record.   Y'all just talk.   And

19    get you informed, while you were off the phone, they

20    brought some things and concerns to my attention, and

21    then we'll address those afterwards.

22             THE CLERK:   All right.

23             THE COURT:   Also, I'd like for counsel to

24    talk about what you want me to do.   I have signed off

25    on my edits and things for the motion to disqualify.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3189

```
 1   So I'm going to take it back to Albuquerque.  It's
 2   got some clerk work to do before it's issued.  But I
 3   hope to get it out.  So I'll get that out of the way.
 4   And then that should maybe help Mr. Lowry and the
 5   Government on their issue.
 6           But -- and I'm also 10 pages into Ms.
 7   Gutierrez' opinion.  So I've got about a 10-page
 8   opinion started on that.  So I need work.  So you
 9   tell me what -- I want either three from each side as
10   a batting order, or if y'all can agree, what do you
11   need more from me; what is it you'd like me to be
12   more precise, more accurate, more thoughtful, more
13   detailed, reconsider something.  So give me your top
14   three.
15           Mr. Davis, I'll say it now:  I don't get
16   any joy out of the entering the order that I'm
17   probably going to enter when I get back to
18   Albuquerque.  I respect you a lot.  Thank you for
19   your hard work.  And if I don't see you again, good
20   luck to you.  You and I have done a lot of stuff over
21   the years.  So I appreciate all your hard work.
22           MR. DAVIS:  Thank you.
23           THE COURT:  All right.  We'll be in recess
24   for about 15 minutes.
25           (The Court stood in recess.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3190

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255

```
 1                    THE COURT:  All right.  Everyone be seated.
 2      Sounds like everybody had a good conversation.  We're
 3      back on-track.  Everybody is happy and pleased.
 4                    All right.  Has everybody got a lawyer?
 5      You don't have all your lawyers.  Everybody got a
 6      lawyer?  All right.  Look around, help your
 7      colleagues.
 8                    All right.  Mr. Acee, I'll remind you
 9      you're still under oath.
10                    Mr. Castellano, if you wish to continue
11      your direct examination of Mr. Acee, you may do so at
12      this time.
13                    MR. CASTELLANO:  Thank you, Your Honor.
14                    THE COURT:  Mr. Castellano.
15                    MR. CASTELLANO:  Before I begin with the
16      questioning, would it help the Court for me to mark
17      this document as an exhibit?  I mean, we're reading
18      basically verbatim from the docket.
19                    THE COURT:  I think everybody would like
20      that.  Let's go ahead -- it's Government's Exhibit
21      19?
22                    MR. CASTELLANO:  I think it's 24, Your
23      Honor.
24                    THE COURT:  You're right.
25                    MR. CASTELLANO:  And that way the Court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3191

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 256192

 1   will have the statements as well.  And I think the

 2   copy I have is also the one that has Agent Acee's

 3   notes on it.  For the record, it's going to be 25.

 4            THE COURT:  All right.  Government's

 5   Exhibit 25?  Any objections?  Hearing none,

 6   Government's Exhibit 25 will be admitted into

 7   evidence.

 8            MR. CASTELLANO:  For the record, this is a

 9   summary of statements, beginning at DeLeon 3298, at

10   the bottom, Your Honor.

11   BY MR. CASTELLANO:

12      Q.   Agent Acee, we were at DeLeon 3306.  And

13   under statement heading 008, I want you to talk about

14   the statement which I think is the fifth bullet point

15   down that begins "The CHS asked 'Pup' if the SNM will

16   get respect."

17      A.   "The CHS asked 'Pup' if the SNM will get

18   respect from the Mexican Mafia if Mario successfully

19   kills the Secretary and all the carnales get sent

20   into the federal system.  'Pup' responds, 'They

21   already respect us.  And with us going over there

22   like that, with that type of fucking charge, oh,

23   yeah, they fucking -- not only them' -- the Mexican

24   Mafia -- 'everybody else respects the fuck out of

25   that shit.'"

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3192

```
1        Q.   And since we have more than one Mario
2    mentioned in this case, who is this Mario referring
3    to?
4        A.   Montoya.
5             Continuing on?
6        Q.   Yes.  Next statement, please.
7        A.   "'Pup' says that the murder will fucking
8    bring us all kinds of" -- unintelligible -- "fuck --
9    unintelligible -- "get notoriety like fuck.  And then
10   all them vatos and the feds will be like, 'Fuck,
11   yeah, you fucker.'"
12       Q.   Okay.  Next statement, please.
13       A.   "'Pup' realizes that once the Secretary is
14   killed, law enforcement will probably identify Mario.
15   'Pup' says that he woke up early this morning to
16   watch the news, and see if the secretary was killed.
17   And also he warned 'Dan Dan' that the feds would be
18   coming after them.  CHS explains to 'Pup' how Javier
19   Molina's murder went down.  And 'Pup' says, 'That
20   wasn't to happen like that.'  CHS says that 'Blue' is
21   upset about how the murder happened.  And 'Pup' said
22   he would talk with 'Blue.'  CHS asked 'Pup' what
23   'Blue' said when 'Pup' told him they would threaten
24   "Creeper's" -- again, Jerry Armenta's family --
25   "'Pup' responds, 'Oh, he said, 'Fuck, yeah.'"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3193

1       Q.   So we have context here, who is "Blue"?

2       A.   Mario Rodriguez.

3       Q.   And earlier I asked you about a statement

4   where Mr. Baca said not to kill Mr. Marcantel.   At

5   this point has he -- in the investigation, has he

6   agreed that Mr. Marcantel should be killed?

7       A.   Clearly.

8       Q.   Let me turn your attention to the next

9   page, 3307.

10      A.   At the top?

11      Q.   Yes, please.

12      A.   "Pup" is talking about Jerry Armenta

13  testifying.  "And his family, his family gets hit.

14  And that shit will hit the news, carnal.  And they're

15  going to say the only motive behind that has been

16  because that fucker testified.  That shit hits the

17  news, too.  That gives us more power.  Because of

18  that fact, everybody is going to know, a la verde,

19  they're going to hit my family, I'm never going to

20  tell them."

21      Q.   Let me turn your attention to the same

22  page, the statement ending in 010.

23      A.   The CHS tells "Pup" that if Mario gets

24  caught, and the news gets out that the SNM hit the

25  Secretary, then the Eme will look at the SNM

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3194

```
 1   different.  'Pup' responds, "Hell, yeah, they are."
 2   "'Pup" complains to the CHS that 'Dan Dan' is too
 3   quick to want to fall under the Eme.  'Pup' views the
 4   SNM as equal to the Eme."
 5       Q.   Let me turn your attention now to the
 6   Christopher Garcia Bates stamp 1085 of the
 7   transcript.  Do you have that with you?
 8       A.   Yes.
 9            MR. CASTELLANO:  Your Honor, I'm going to
10   mark this Government's Exhibit 26.
11            THE COURT:  Do you want to move its
12   admission?
13            MR. CASTELLANO:  I am, Your Honor.
14            THE COURT:  All right.  Any objection to
15   Government's Exhibit 26?  Not hearing any --
16            MR. ADAMS:  Not for the purposes of this
17   hearing.
18            THE COURT:  For purposes of this hearing,
19   just for here.  All right.  Not hearing any
20   objection, Government's Exhibit 26 will be admitted
21   into evidence.
22   BY MR. CASTELLANO:
23       Q.   In order to lay the groundwork for this
24   exhibit, which I'm putting up on the visualizer --
25   it's Government's Exhibit 26 -- what is the context
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3195

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3196

1    in which this statement takes place?

2         A.   So this is November 29, 2015.  The previous

3    evening, Chris Garcia called Mario Montoya and said

4    that he had the gun that was to be used to hit

5    Marcantel.  I didn't want to go out in the evening.

6    It's more difficult to do surveillance.  So Mario

7    told Chris something, and we set it up for the

8    following day.

9              So this is a transcript from a body wire

10   that Mario wore when he went to Chris Garcia's house

11   to pick up the firearm.

12             MR. CASTELLANO:  And for purposes of the

13   James hearing, Your Honor, I'm actually moving in the

14   entire conversation as part of the co-conspirator

15   statements.  But I'll just touch on some of these for

16   purposes of testimony.

17        Q.   Look at some of the highlighted areas,

18   Agent Acee.  There is discussion about a .22 long

19   rifle.  What is that referring to?

20        A.   Ammunition, a bullet, a cartridge.

21        Q.   A .22 long rifle cartridge goes in what

22   type of firearm?

23        A.   A .22 caliber firearm.

24        Q.   And was there a firearm turned over from

25   one person to another on that date?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3196

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261

1       A.   Yes.   Chris Garcia gave Mario Montoya a .22

2    caliber semi-automatic pistol.

3       Q.   For what purpose?

4       A.   To kill Gregg Marcantel.

5       Q.   Okay.   And can you tell the Court what this

6    reference is regarding the clip?

7       A.   He's referring to the magazine.   He says,

8    "Well, the firearm didn't have a magazine.   It needs

9    a magazine to be fully loaded."   So what Garcia is

10   explaining to Montoya is:   "Put the bullet in the

11   fucker and then you can shoot it.   Or you can get a

12   clip and, you know, do it the right way.   Order a

13   clip."

14      Q.   Down here -- this is on page 1086 at the

15   bottom of this exhibit, there is a reference to

16   somebody named "Chuco."   Can you tell us who that

17   person is?

18      A.   That's Mandel Parker.

19      Q.   And can you tell the Court whether Mandel

20   Parker became part of this conspiracy?

21      A.   He did.

22      Q.   What was the context in which he became

23   involved?

24      A.   Mario Montoya contacted SNM members on the

25   street, explained the mission that he was on.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    "Chuco" volunteered, and was actually eager to help.

 2         Q.   Did he show his interest in joining the

 3    conspiracy to murder Gregg Marcantel?

 4         A.   Enthusiastically.

 5         Q.   On the next page at the bottom is 1087.

 6    Tell us about the discussion here with the word

 7    feria?

 8         A.   So here, the CHS is expressing some concern

 9    that -- well, one he's trying to get some money out

10    of this.  And then I think that he's kind of

11    negotiating that he should get some money because

12    Marcantel is a, quote, "big motherfucker."  And at

13    this point he's been given a .22 to kill him that can

14    only hold one bullet.

15         Q.   And so is there a concern that one .22

16    caliber round won't do the job for someone as big as

17    Mr. Marcantel?

18         A.   Yes.

19         Q.   And what's the discussion in here about

20    River's Edge 3?

21         A.   This is where the CHS is reporting that --

22    kind of how he's going to do the hit.  They've done

23    their reconnaissance or their scouting.  And he's

24    saying that Marcantel, he has two big old dogs.  He

25    lives over there on River's Edge 3.  That's a housing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3198

3199

```
 1    neighborhood off -- I think it's off 528 in either
 2    Rio Rancho/Bernalillo area.  And he's just saying
 3    that he walks the dogs two or three times a week, and
 4    that that would be a good place to hit him.
 5         Q.   And you see further discussion about
 6    killing Santistevan, the question by Mr. Garcia?
 7         A.   Yes.
 8         Q.   And if you recall from this conversation,
 9    you know what they're talking about when they talk
10    about giving him a double, and leaving him with
11    everything?
12         A.   Yes.  They're talking about killing Mandel
13    Parker, and then leaving the murder weapon and any
14    other evidence with Parker, so it looked like he did
15    it.
16         Q.   On the next page at the bottom, it's 1088.
17    Is there -- the word "gauge" is used there.  Do you
18    remember what the discussion referred to at that
19    point?
20         A.   Yes.  Chris Garcia said that when Montoya
21    expressed some concern about it just being a .22,
22    Garcia said that he also had a shotgun, but he needed
23    more time to get it.  I think he said it was at his
24    brother's house.  And so he said he'd get the gauge
25    too.  It was a good one.  He actually did follow up
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3199

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3200

1   and tell -- send Mario either a phone call or a text

2   message saying that, Hey, he had the gauge, do you

3   want to come get it.

4        Q.   And what ultimately happened there?

5        A.   Well, we didn't, because we ended up

6   arresting everybody.

7        Q.   Now, turning to page 1090 of the exhibit.

8   Some discussion about somebody eating at Barelas

9   Cafe.  How can you put that in context for us?

10       A.   This is where Chris Garcia is telling the

11  CHS that he saw Marcantel eating, and that he

12  couldn't believe it.  He was at the Barela's Cafe.

13  He was eating by himself.  And then later on down

14  there, where you have the highlighted, it says, "He

15  carries a cuete, too."  Garcia is telling the source

16  that he carries a gun also, he being Marcantel.

17       Q.   Once again, what does the word cuete refer

18  to?

19       A.   A gun.

20       Q.   And at the bottom of the page under the

21  next page it says, "That's the one I'm going to send

22  'Pup' out of the state."  Who is that referring to?

23       A.   That's referring to Marcantel.  After the

24  Javier Molina murder, Marcantel is regarded by the

25  SNM and being responsible for sending "Pup" and Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3200

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3201

```
 1   Sanchez and others out of state.
 2        Q.   Okay.  Can you put the rest of the
 3   conversation in the context for us?  Go ahead and
 4   take a chance -- a moment to look it over.
 5        A.   Do you want me to start at the top?
 6        Q.   Sure.
 7        A.   So where he says him and Myers -- I think
 8   the CHS actually made a mistake.  At the time it was
 9   a little bit comical, because Myers' name never came
10   up he's one of the task force guys.
11        Q.   Who is Myers?
12        A.   It's Mark Myers.  At this time he was the
13   Deputy Secretary.  I think they later changed his
14   title to Chief of Staff.  But he's a Deputy Secretary
15   under Marcantel.  Marcantel being the victim in the
16   case, we never went to Marcantel for stuff.  Myers
17   was our point of contact for Corrections.  And so
18   here --
19        Q.   What else was discussed?
20        A.   So this is just Mario Montoya, the CHS, and
21   Chris Garcia talking about -- they're talking about
22   what "Pup" wanted, what "Pup" -- excuse me, what Mr.
23   Baca's instructions were to Mario.  And they're
24   talking about the neighborhood.  They're talking
25   about the gun.  It looks like the fourth block down
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3201

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3202

1   it says, "See if I get this clip.  If not, um, let me

2   get that gauge, too.  What he's saying is if I can

3   order the clip in time for the magazine for this .22,

4   sure.  Otherwise, let me get the gauge.

5        And I had instructed Montoya to get

6   whatever Garcia was providing for this.  It didn't

7   matter what they were.

8        Q.   What was Mr. Garcia's response?

9        A.   He says, "Yeah, that gauge, that gauge is

10  perfect.  You could even tell what's his name where

11  it's at."  Some of that is unintelligible.  "If

12  you're around the neighborhood where he walks the

13  dogs, there is going to be cameras."  And Garcia is

14  just warning them, "I have cameras at my pad."

15       The CHS goes on to say, basically he

16  scouted it.  "There is a back way in.  It's down

17  there by the bosque."  I think what he's referring to

18  is below River's Edge is the Rio Grande River, so

19  there are some walking trails and stuff like that.

20       Q.   What is Mr. Garcia's suggestion about going

21  to the barber shop and getting hair?

22       A.   You know, I'm actually -- I have reviewed

23  this, but that's not -- I guess he's making reference

24  to going to the barber shop to get some hair.  Act

25  like they had to use the restroom, and then maybe put



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3202

```
 1    it in your pocket and leave, to leave at the crime
 2    scene, somebody else's hair.  That's what I'm
 3    discerning from that.
 4         Q.   So, in other words, if you left someone's
 5    hair at the scene, would that provide a DNA sample of
 6    other people?
 7         A.   Yes.  Either that or even attaching someone
 8    else's hair to your head.  Either way, it's to throw
 9    off the crime scene.
10         Q.   At this point the whole statement is in,
11    but I'm going to ask you to look at the statement,
12    take a moment, and highlight for us the remaining
13    portions that are important to you.
14         A.   Do you want me to do that on my copy?
15         Q.   Yes.  Take a moment, and then you can tell
16    us what page you're on, and then we'll go to the
17    statement.
18         A.   I think I only had maybe a couple.
19         Q.   Tell us the page number, please.
20         A.   1088.
21         Q.   1088?
22         A.   Yes.  Halfway down the page.
23              MS. SIRIGNANO:  What page, please?
24              MR. CASTELLANO:  1088.  I'll back out so
25    you can see the whole page.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3203

1      Q.    Okay.  Go ahead.

2      A.    I would start there where the arrow is.  It

3   says -- this is Garcia talking and there is some

4   overlap.  He's talking about what I believe is a

5   light affixed to the shotgun.  He says, "This fucker

6   is bright.  You turn the bright on it, and I swear to

7   God, the light on it is bright as fuck.  And" --

8   unintelligible -- "during the daytime, like that,

9   where the, where the" -- unintelligible -- "I got

10  it" -- unintelligible -- "it's a pretty bright

11  light."  He goes on to say, "You know what I mean

12  brights" -- and the something -- and so the CHS and

13  Garcia are kind of interacting how to come up with

14  this light affixed to it, I believe, and approach

15  somebody, and all they can see is the light and then

16  you see it says, "Boom!" there.

17         So that's based on my listening live at the

18  time, reviewing this, and then debriefing the source

19  immediately after, that that's what they were talking

20  about.

21         The next one, I would turn the page to

22  1089.  This was -- this stood out with me starting at

23  the top where they're talking about Andrew.  And

24  that's Andrew Romero.  Now, he's not a defendant in

25  this case.  He was just convicted in the state of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3204

1    murdering the Rio Rancho Police Officer.  And shortly

2    after that he was brought into the SNM, while he was

3    incarcerated at Central.  And there has been some

4    disagreement among members on whether or not he

5    should be in or not, because he may have been a rat

6    before.  And that's what they're talking about here.

7    But there is other conversation where that murder of

8    that cop may have made him a good guy.

9            THE COURT:  Mr. Castellano, is this a good

10   place for us to close for the evening?

11           MR. CASTELLANO:  It's fine, Your Honor.

12   There are just a couple pages.  But I'm happy to

13   conclude now.  And we can start again next week.

14           THE COURT:  Let's do that.  We'll kind of

15   keep everybody on schedule.

16           Did y'all come up with a batting order for

17   me to take back to Albuquerque?  Anybody want to

18   propose what they want me to work on?  Mr. Lowry?

19           MR. LOWRY:  No, Your Honor.  I think we

20   worked out a schedule, if you talk to Ms. Wild.

21           THE COURT:  You told her what you want me

22   to work on opinion-wise, orders?

23           MR. VILLA:  No, Your Honor.  I think the

24   discussion we had was about scheduling.  But in

25   terms --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3205

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 270

```
 1            THE COURT:  I wanted everybody during the
 2    break to do that.  Well, listen, y'all stay here and
 3    work out a batting order.  Call Ms. Wild and tell me
 4    what you want me to work on, so when I get up to
 5    Albuquerque, I can finish up the Davis opinion,
 6    finish up the Gutierrez opinion, and then I get
 7    started, so can I keep things moving.
 8            All right.  I appreciate your hard work.
 9    Be safe on your trips.  Good to see everybody.  We'll
10    see everybody at 9:00 on Thursday morning.
11            (The Court was adjourned.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                     C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on December 6, 2017.

15

16

17

18    _____
                Jennifer Bean, FAPR, RMR-RDR-CCR
19              Certified Realtime Reporter
                United States Court Reporter
20              NM CCR #94
                333 Lomas, Northwest
21              Albuquerque, New Mexico 87102
                Phone:  (505) 348-2283
22              Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3207

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5    VS.                         CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8

9                        VOLUME 1

10        Transcript of Motion to Suppress Proceedings
     before The Honorable James O. Browning, United States
11   District Judge, Las Cruces, Dona County, New Mexico,
     commencing on December 7, 2017.

12

13   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
14
     For the Defendants: Ms. Sara Priddy; Ms. Cori
15   Harbour-Valdez; Mr. Patrick Burke; Mr. Robert Cooper;
     Mr. Jeff Lahann; Mr. Orlando Mondragon; Mr. John
16   Granberg; Mr. Billy Blackburn; Mr. Scott Davidson;
     Ms. Amy Jacks; Mr. Richard Jewkes; Ms. Amy Sirignano;
17   Mr. Christopher Adams; Mr. Marc Lowry; Ms. Theresa
     Duncan; Ms. Carey Bhalla; Mr. William Maynard; Mr.
18   Ryan Villa; Ms. Justine Fox-Young; Mr. Donovan
     Roberts; Ms. Lisa Torraco; Ms. Angela Arellanes; Mr.
19   Samuel Winder

20
     For the Defendants (Via telephone):  Ms. James Castle
21

22

23

24

25


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3208

```
 1              THE COURT:  All right.  Let's get started.
 2   Look around the room.  I think we've got everybody
 3   that is supposed to be here today.  Help your buddies
 4   out, make sure that everybody has an attorney.
 5              All right.  The Court will call United
 6   States of America versus Angel DeLeon, et al.,
 7   Criminal Matter No. 15-CR 4268 JB.
 8              If counsel will enter their appearances for
 9   the Government.
10              MS. ARMIJO:  Good morning, Your Honor.
11   Maria Armijo, Randy Castellano, and Matthew Beck on
12   behalf of the United States.
13              THE COURT:  All right.  Ms. Armijo, Mr.
14   Castellano, Mr. Beck, good morning to you.
15              And sitting in for Brock Benjamin and
16   Richard Sindel for Defendant Joe Lawrence Gallegos?
17              MS. PRIDDY:  Sara Priddy for Mr. Gallegos.
18              THE COURT:  All right.  Ms. Priddy, good
19   morning to you.  Mr. Gallegos, good morning to you.
20              THE DEFENDANT:  Good morning, Judge.
21              THE COURT:  And Mr. Gallegos, I understand,
22   through Mr. Benjamin, you consent to Ms. Priddy being
23   your counsel for today and tomorrow.
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  I understand Mr. Benjamin had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3209

 1   some family member having some surgery, and so
 2   something came up really suddenly.  Most of the
 3   motions we're going to hear today, I don't think
 4   directly impact you as well.  And I think Mr.
 5   Benjamin talked to you about that; is that correct?
 6           THE DEFENDANT:  Yes, sir.
 7           THE COURT:  All right.  For Defendant
 8   Edward Troup.
 9           MS. HARBOUR-VALDEZ:  Good morning, Your
10   Honor.  Cori Harbour-Valdez and Pat Burke on behalf
11   of Edward Troup.
12           THE COURT:  All right.  Ms. Harbour-Valdez,
13   Mr. Burke, Mr. Troup, good morning to you.
14           THE DEFENDANT:  Good morning.
15           THE COURT:  And for Defendant Billy Garcia.
16           MR. COOPER:  Good morning, Your Honor.  Bob
17   Cooper on behalf of Billy Garcia.  Judge, Mr. Castle
18   just texted me and says he's getting a busy signal
19   when he's calling in.  He would like to be --
20           THE COURT:  Is anybody on the line?
21           THE CLERK:  I am, Judge.
22           THE COURT:  All right.  That's Ms. Wild.
23           I don't know, Ms. Standridge, is there a
24   way to check and see what's happening as far as --
25           THE CLERK:  Does he have the right call-in



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3210

 1    number, Judge?

 2            THE COURT:  Why don't you give me the

 3    number so I can give it out.

 4            THE CLERK:  505-348-2041.

 5            THE COURT:  2041?

 6            THE CLERK:  Yes, sir.

 7            THE COURT:  Do you want double-check, Mr.

 8    Cooper, and see if he's got the right number.

 9            MR. COOPER:  505-348 --

10            THE COURT:  -- 2041.

11            MR. COOPER:  That is not the number.  But

12    we'll get it to him thank you.

13            THE COURT:  All right, we'll try it.  Good

14    morning, Mr. Cooper, Mr. Castle, Mr. Garcia, good

15    morning to you.

16            THE DEFENDANT:  Good morning.

17            THE COURT:  All right.  For Defendant Allen

18    Patterson.

19            MR. LAHANN:  Good morning, Your Honor.

20    Jeff Lahann on behalf of Mr. Patterson.

21            THE COURT:  Mr. Lahann, Mr. Patterson, good

22    morning to you.

23            THE DEFENDANT:  Good morning, Your Honor.

24            THE COURT:  For Defendant Christopher

25    Chavez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3211

```
 1              MR. GRANBERG:  Good morning, Your Honor.
 2    John Granberg for Mr. Christopher Chavez.
 3              THE COURT:  All right.  Mr. Granberg and
 4    Mr. Chavez, good morning to you.
 5              THE DEFENDANT:  Good morning, Your Honor.
 6              THE COURT:  And for Defendant Arturo
 7    Arnulfo Garcia.
 8              MR. BLACKBURN:  Good morning, Your Honor
 9    Billy Blackburn and Scott Davidson on behalf of
10    Mr. Garcia, who is present.
11              THE COURT:  All right.  Mr. Blackburn,
12    Mr. Davidson, Mr. Garcia, good morning to you.
13              THE DEFENDANT:  Good morning, Your Honor.
14              THE COURT:  For Defendant Daniel Sanchez.
15              MR. JEWKES:  Good morning, Your Honor.
16    Richard Jewkes and Amy Jacks representing Daniel
17    Sanchez, who is before the Court.
18              THE COURT:  All right.  Mr. Jewkes,
19    Ms. Jacks, Mr. Sanchez, good morning for you.
20              THE DEFENDANT:  Good morning.
21              THE COURT:  And for Defendant Anthony Ray
22    Baca.
23              MR. LOWRY:  Good morning, Your Honor.  Marc
24    Lowry and Teri Duncan on behalf of Anthony Ray Baca,
25    who is present.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3212

```
 1              THE COURT:  All right.  Mr. Lowry, Ms.
 2    Duncan, Mr. Baca, good morning to you.
 3              THE DEFENDANT:  Good morning, Your Honor.
 4              THE COURT:  And for Christopher Garcia.
 5              MR. ADAMS:  Good morning, Your Honor.
 6    Chris Adams and Amy Sirignano on behalf of
 7    Mr. Garcia.
 8              THE COURT:  All right.  Mr. Adams, Ms.
 9    Sirignano, Mr. Garcia, good morning to you.
10              THE DEFENDANT:  Good morning.
11              MR. ADAMS:  Thank you, Your Honor.
12              THE COURT:  And for Defendant Carlos
13    Herrera.
14              MS. BHALLA:  Good morning, Your Honor.
15    Carey Bhalla for Carlos Herrera, with Mr. William
16    Maynard, who is joining us today.  And Sonia Salazar,
17    our paralegal.
18              THE COURT:  All right.  Ms. Bhalla, Mr.
19    Maynard, good morning to you.  Mr. Herrera, Ms.
20    Salazar, good morning to you.
21              For Defendant Rudy Perez.
22              MR. VILLA:  Your Honor, good morning.  Ryan
23    Villa and Justine Fox-Young on behalf of Mr. Perez,
24    who is present in custody.  We have with us at our
25    table Ms. Laura Schile.  She's our expert.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3213

```
 1              THE COURT:  All right.  Mr. Villa, Ms.
 2    Fox-Young, Mr. Perez, good morning for you.
 3              THE DEFENDANT:  Good morning.
 4              THE COURT:  Ms. Schile, good morning to
 5    you.
 6              And for Defendant Andrew Gallegos.
 7              MR. ROBERTS:  Your Honor, Donovan Roberts
 8    for Andrew Gallegos.  With me today is Lisa Torraco,
 9    who is joining us.
10              THE COURT:  All right.  Mr. Roberts, Ms.
11    Torraco, and Mr. Gallegos, good morning to you.
12              THE DEFENDANT:  Good morning.
13              THE COURT:  And for Defendant Shauna
14    Gutierrez.
15              MS. ARELLANES:  Angela Arellanes for Ms.
16    Gutierrez, who is present today.
17              THE COURT:  All right.  Ms. Arellanes, Ms.
18    Gutierrez, good morning to you.
19              THE DEFENDANT:  Good morning.
20              THE COURT:  And for Defendant Brandy
21    Rodriguez.
22              MR. WINDER:  Good morning, Your Honor.  Sam
23    Winder on behalf of Jerry Walz on behalf of Brandy
24    Rodriguez.
25              THE COURT:  All right.  Mr. Winder,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3214

```
 1   Ms. Rodriguez, good morning for you.
 2          And then for Eric Duran, we're going to
 3   have some -- is Eric here?  Do we have -- is
 4   Mr. Duran in the courtroom?
 5          MS. ARMIJO:  Your Honor, Mr. Duran -- there
 6   is a warrant out for his arrest.  He's not present.
 7          THE COURT:  Okay.  All right.  Let me check
 8   my notes.  We've got some new counsel and things.
 9   We've got Ms. Priddy, Ms. Torraco, Mr. Maynard, and
10   then Ken del Valle will be appearing for Mr. Duran if
11   we get him available.
12          All right.  I think that's everything.
13          I did get the opinion entered on Ms.
14   Gutierrez, Ms. Arellanes, so I did get that opinion
15   entered.  You may not have seen it because it didn't
16   get entered, I think, till this morning.  But it is
17   entered.
18          MS. ARELLANES:  All right.  Thank you,
19   Judge.
20          THE COURT:  So I didn't hear back -- that
21   doesn't mean that you didn't do what I asked you to
22   do -- I didn't hear back through Ms. Wild whether
23   y'all had a new batting order.  So presently I'm
24   working on an opinion on Mr. Sanchez' motion to
25   sever, which is a reconsideration motion.  So I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3215

 1    working on an opinion there.  If y'all got something

 2    better or more pressing or something you want me to

 3    reconsider or look at more closely or give you more

 4    detailed guidance, let me know.  That will give me a

 5    little bit of guidance.  But that's what I'm working

 6    on at the present time.

 7            Let's see, we've got a table over here for

 8    Mr. Perez and his attorneys.

 9            Ms. Wild has worked with you to come up

10    with a batting order to try to use these days as

11    efficiently as possible.

12            My understanding is that the first motion

13    we're to take up today is a suppression motion that

14    was filed by Defendant Carlos Herrera.  And so,

15    Ms. Bhalla, are you taking the lead on that?

16            MS. BHALLA:  Well, Your Honor, to be

17    perfectly candid with the Court, the conversations

18    that we had would be that the conflict motion would

19    go first, then our motion to continue would go

20    second, and then Mr. Villa was going to start with

21    the motion to suppress lost and destroyed evidence.

22    So that's sort of my -- I think that was our

23    understanding of the batting order.

24            THE COURT:  Well, let me -- Ms. Wild,

25    that's an inverted order from what I have.  Do you

SANTA FE OFFICE                                                   MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                                1-800-669-9492
                    BEAN & ASSOCIATES, Inc.          e-mail: info@litsupport.com
                    PROFESSIONAL COURT
                      REPORTING SERVICE
                                                                    DNM 3216

```
 1    see any problems from a scheduling standpoint in

 2    taking the, I guess conflict, motion up first?

 3              THE CLERK:  No, Judge.  And actually there

 4    is a note that I gave you; there was an addition, and

 5    it didn't reflect it.  It looked like to me you'd

 6    probably be taking up 4 -- and it's actually 4 and 5

 7    first.  So that's right, that's what the plan was.

 8              THE COURT:  Okay.  So Ms. Bhalla, do you

 9    want to take up -- do you want take up the motion

10    regarding attorney conflict first, or your motion

11    to -- I've already taken care of, I think, appointing

12    another counsel, Mr. Maynard.  So I guess it would be

13    then the motion to continue portion of that.  Do you

14    want to take that up first or the attorney conflict

15    first?

16              MS. BHALLA:  Your Honor, I wasn't raising

17    the attorney conflict motion.  That was Mr. Lowry's

18    motion.

19              THE COURT:  No, but I was going to you to

20    look at the order.  And you said that y'all had an

21    agreement on order.  So which one do you want to take

22    up first?

23              MS. BHALLA:  Oh, I'll defer to Mr. Lowry on

24    that, Your Honor.

25              THE COURT:  Do you want to go then?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3217

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3218

1          MR. LOWRY:  Well, Your Honor, it's the

2    United States' motion, but I very much appreciate if

3    we could address this first.  They filed a written

4    pleading on Monday.  I haven't had an opportunity to

5    respond in writing.  But I think I'm ready to proceed

6    on my feet, if you will, and to file a written

7    pleading, you know, over the weekend, if necessary.

8    But I'm prepared to argue it today.  But it's,

9    obviously, not my motion.  It's the United States'

10   motion.

11         THE COURT:  Do you want to take it up at

12   this time, Mr. Castellano?

13         MR. CASTELLANO:  Yes, Your Honor.  That was

14   our understanding of the order as well.

15         THE COURT:  Okay.

16         MR. CASTELLANO:  The conflict motion would

17   go first, and the motion to continue would be second.

18         MS. HARBOUR-VALDEZ:  Your Honor, I'm sorry

19   to interrupt, but I'm getting messages from the folks

20   on the phone that they can't hear anyone except you.

21         THE COURT:  All right.  So folks, you've

22   got to speak into the microphone so the people on the

23   phone can hear.  I guess I probably need to know who

24   all is on the phone.  I know Ms. Wild.  And I guess

25   Mr. Castle is on the phone; is that correct, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3218

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3219

```
 1    Castle?

 2              MR. CASTLE:  Yes, Your Honor.

 3              THE COURT:  Who else is on the phone?

 4              MS. HARBOUR-VALDEZ:  Your Honor, our

 5    paralegal, Raquel Rodriguez, is also on the call.

 6              THE COURT:  Okay.  Anybody else on the

 7    phone?

 8              All right.  Mr. Castellano, if you wish to

 9    argue the conflict motion.

10              MR. CASTELLANO:  Yes, sir.  Thank you.

11              Last week, you kind of hinted that the

12    timing of this motion -- and what I can tell the

13    Court is that this came up, I think, two weeks ago

14    now, as I was reviewing discovery for the next set of

15    disclosures.  And one of the items in the discovery

16    was STIU file of Eric Duran.  As I looked through

17    that file, there were a couple of documents in there.

18    And one of them indicated that he said that Mark

19    Donatelli was his attorney.  That was the first time

20    I had seen that.

21              And then somewhere else in the discovery

22    there was also a paycheck or a check, and it was also

23    written to attention of Mark Donatelli.  And so, once

24    that happened, we inquired of Mr. Lowry whether or

25    not he knew or believed there was any conflict as it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3219

```
 1    related to his firm's representation of Eric Duran.

 2              Eric Duran is a cooperator in this case.

 3    The Court has heard a few times that he has recorded

 4    some of the defendants, including Mr. Baca.  So one

 5    of the issues we'll have to address is whether or not

 6    the prior representation and the current

 7    representation create a conflict, since part of the

 8    defendants will be attacking Eric Duran, who will be

 9    a witness for the Government and against Mr. Baca

10    among others.

11              THE COURT:  Could you elaborate?  Maybe Mr.

12    Lowry is prepared to elaborate on what that prior

13    representation was.  What was the Rothstein firm

14    representing Duran on?

15              MR. CASTELLANO:  I'll give my limited

16    understanding.  And I think Mr. Lowry will be better

17    at focusing on that, Your Honor.  But my

18    understanding was that Mr. Duran had a lawsuit

19    against the Corrections Department.

20              THE COURT:  So it was a civil suit?

21              MR. CASTELLANO:  That's my understanding.

22              THE COURT:  And I assume it was probably in

23    the nature -- not of a 2254, or anything like that,

24    habeas; it was something to do with his corrections

25    facility?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3220

```
 1              MR. CASTELLANO:  That's my understanding.
 2   It may have been a suit against corrections guards
 3   themselves.  And so the firm represented him while he
 4   was an inmate at the facility.  And there is
 5   another -- that's the first issue.
 6              THE COURT:  Do you know any more about the
 7   suit than that?
 8              MR. CASTELLANO:  No, I know very little
 9   about the suit.  Only that he indicated that Mr. --
10   we may have a copy of the complaint, Your Honor.
11              THE COURT:  You don't have --
12              MR. CASTELLANO:  We may have a copy.
13              THE COURT:  You do.
14              MR. CASTELLANO:  What I've just been handed
15   is a complaint for damages for deprivation of civil
16   rights and for supplemental state law claims, Civil
17   No. 01-14 -- I can't tell if there is another 1,
18   WWD/DJS.  And in that, apparently what happened was
19   some guards were alleged to have beat up Mr. Duran in
20   the facility.  He filed suit and the suit was
21   dismissed after there was a settlement in the case.
22   And the Donatelli firm represented him as a prisoner
23   at the facility.
24              THE COURT:  So the guards allegedly beat up
25   Mr. Duran?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3221

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 15222

```
 1            MR. CASTELLANO:  That's my understanding,
 2    Your Honor, yes.
 3            THE COURT:  Is there any discussion in the
 4    complaint, just perusing it, that SNM was involved;
 5    that that was an issue at all in that case?  Was it
 6    at all SNM related?
 7            MR. CASTELLANO:  I'm looking at it right
 8    now, Your Honor.  So I'm just kind of skimming it.
 9    It's a 28-page document.  When I sit down I can give
10    it a closer look, but as I'm looking through this,
11    obviously, at the time Mr. Duran was an inmate.  And
12    so I'm only speculating here, in the context of the
13    representation, assuming there would have been
14    discussions about his status as an inmate, which
15    could have touched on his status as a gang member,
16    that I'm not sure of.  I don't know about the
17    communications between counsel and Mr. Duran.  And
18    there is --
19            THE COURT:  What is -- let me ask you this:
20    Given what you know about the case, would you say
21    that that civil lawsuit is the same case as this one?
22            MR. CASTELLANO:  Well, I think, given the
23    nature of the racketeering enterprise, I think it
24    certainly could be.  Because if he is viewed as an
25    SNM Gang member, or was housed with the SNM Gang
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3222

 1   members, then that would certainly touch on it.  And

 2   so the answer is I think it could be.

 3          THE COURT:  So it's not that you see an

 4   actual conflict at this time?  You're seeing this as

 5   more of a potential conflict?

 6          MR. CASTELLANO:  Certainly a potential

 7   conflict.  I'd have to think more about the actual

 8   conflict.  Because once again, I don't know of the

 9   communications between Mr. Duran and the Donatelli

10   law firm in terms of how much of the overlap was with

11   his status as an SNM member or associate in the

12   context of being an inmate at the facility.

13          THE COURT:  You know, that's -- I'm having

14   a harder time with this one saying that it's the same

15   or related case.  It seems to me that most of your

16   briefing went off on the confidential information

17   prong of that, rather than in -- like in Mr. Davis'

18   situation, where I went off more on the same or

19   related case, given that murder is going to be used

20   by the Government to prove enterprise and

21   racketeering activity.

22          MR. CASTELLANO:  I agree.  I think the

23   murder certainly was stronger in terms of raising the

24   conflict issue.  So what we're going to have here is

25   really a lot of it's going to be based on the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3223

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3224

1   communications between counsel and Mr. Duran, and

2   whether or not any conversations that were gained or

3   any information gained from the law firm can be used

4   in cross-examination.  And so a lot of that is going

5   to be based on communications between counsel and

6   Mr. Duran.

7          THE COURT:  Do we know at all about whether

8   Mr. Duran is willing to waive any conflict here?

9          MR. CASTELLANO:  We don't, Your Honor.  And

10  as part of the motion, we've asked that counsel be

11  appointed to him so someone else independent can have

12  a conversation with him.

13         THE COURT:  And I have appointed Ken Del

14  Valle to do that.  But we don't know where any of

15  that stands?

16         MR. CASTELLANO:  No.  There is an

17  outstanding warrant for Mr. Duran's arrest.  And so

18  at this time, until he's apprehended, no one will

19  have a chance to meet with him to discuss the

20  conflict issue.

21         THE COURT:  That's not much of a

22  cooperating witness, is it?

23         MR. CASTELLANO:  Not right now.  He's

24  taking a little time off right now.

25         THE COURT:  He's the only one?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  Right.  And if you're done
 2    with this, there is actually a second issue which
 3    came up.  So, in the context of asking about this
 4    lawsuit, Ms. Armijo asked counsel for the Department
 5    of Corrections whether this is the same Duran from
 6    the Duran Consent Decree.  And it's not the same
 7    person.  And that was, I believe, Dwight Duran.
 8              But this is an issue I discussed with Mr.
 9    Lowry probably a year ago.  And it didn't seem to be
10    an issue at the time.  And the discussion was related
11    to the Donatelli law firm's representation or
12    oversight of the Duran Consent Decree.  And so the
13    consent decree was a class action.  And all the
14    inmates I believe in Level 3 or above were considered
15    members of the class.  So most of the consent decree
16    was pretty much finished and resolved.  Mr. Lowry, I
17    think at that time, also believed the litigation had
18    resolved.  So we thought it was a past issue.
19              When this came up with counsel,
20    Mr. Brewster, from the Department of Corrections, he
21    indicated that the consent decree has been revived in
22    the last couple of years, and there has been ongoing
23    litigation including the Donatelli law firm.  Some of
24    the litigation, as I understand it, is related to the
25    rules on how many people can be housed together and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    how much square footage is permitted for housing

2    prisoners.  And the other -- I think it has to do

3    with recreation rooms and game rooms.  But there has

4    been ongoing litigation.

5            So in that context the Donatelli law

6    firm -- I discussed this with Mr. Lowry this week --

7    he's aware of the issue.  So their firm, in essence,

8    potentially represents all defendants in this case,

9    due to the consent decree because they are

10   potentially members of a class.  So --

11           THE COURT:  Where is that case, though?  I

12   thought that case had been terminated.

13           MR. CASTELLANO:  That's correct, Your

14   Honor.  Most of that case, I believe, has been

15   terminated.  Except, like I said, in the last couple

16   of years, it's been revived in a couple of areas

17   related to housing of prisoners and use of day rooms

18   and, I think, recreation rooms.

19           THE COURT:  Who has that case?  What

20   federal judge has that case?

21           MR. CASTELLANO:  I don't know.  I only know

22   that the Department of Corrections is involved, and

23   the Donatelli firm is involved, and I think a couple

24   of other firms are involved in the oversight of the

25   remaining litigation.  So, apparently, it's alive and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3226

1    well.

2            So the other question we have to answer is

3    whether or not that creates other conflicts, because

4    the Donatelli firm, in essence, could represent any

5    member of the class, which could be any of the

6    individuals in this courtroom or any cooperators who

7    were housed in Level 3 or above, which would probably

8    be everybody.

9            So the other issue we have there is whether

10   or not there are conflicts, whether or not the firm

11   has represented these people, which I think they have

12   as part of the class, and whether or not they've had

13   discussions, including confidential discussions, with

14   anyone in this case; that would be defendants and

15   cooperators who have not been charged.

16           So it may be an issue we have to look into

17   further.  It may be that the firm has to go through

18   its records and see whether or not it's interviewed

19   anybody in this case as part of that representation.

20   But, in essence, they represent anyone in custody, I

21   think, at Level 3 or above.

22           THE COURT:  All right.  Anything else, Mr.

23   Castellano?

24           MR. CASTELLANO:  Not right now, Your Honor.

25   I will look through this complaint a little bit more

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3227

```
 1   when I have time, and if anything else comes up, I'll
 2   let the Court know.
 3              THE COURT:  Well, I certainly should let
 4   everybody know I'll have to give this some thinking
 5   myself.  Of course, I was Deputy Attorney General
 6   representing the State during the time of the Duran
 7   Consent Decree, so I was attorney for the State
 8   during that period of time.  I don't know if that
 9   creates any problems or not.
10              Ms. Standridge just told me that Duran is
11   assigned to Judge Gonzales.  So I guess you're right.
12   I thought the thing was long over.  But I did some
13   work on that myself when I was state attorney.  So we
14   need to keep that in mind.
15              All right.  Thank you, Mr. Castellano.
16              MR. CASTELLANO:  Thank you, Your Honor.
17              THE COURT:  Anybody else want to weigh in
18   on this before I hear from Mr. Lowry?
19              All right.  Mr. Lowry.
20              MR. LOWRY:  Good morning, Your Honor.
21   Thank you.
22              THE COURT:  Mr. Lowry.
23              MR. LOWRY:  Your Honor, I have -- well, let
24   me get right to the point.  When we were initially
25   assigned representation in this case for Mr. Baca, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3228

1    had no inclination whatsoever that Eric Duran was

2    involved whatsoever.

3            And it wasn't until the first -- what I

4    would call the real substantive discovery production

5    by the United States on March 25, 2016, that my

6    colleague, Teresa Duncan, started plowing through

7    discovery, as she's prone to do.  And during that, we

8    looked at the confidential recordings from the a/k/a

9    Ironman.  And it was pretty quickly ascertained by

10   Ms. Duncan who the real identity of Ironman was.  And

11   she determined that it was Eric Duran.  So she did

12   what a methodical defense attorney did --

13           THE COURT:  That Mr. Duran has never been a

14   party to any of the SNM cases that I have; correct?

15           MR. LOWRY:  Not to my knowledge, Your

16   Honor, unless there is a sealed pleading -- of which

17   there are many that I'm unaware -- but, to my

18   knowledge, he is not.

19           So, in the context of her research, Ms.

20   Duncan came across press reports regarding this civil

21   case.  And she immediately contacted me.  And we

22   immediately contacted Mr. Donatelli to set up a

23   firewall.  And our thinking at the time was:  This

24   was a civil case that was completely unrelated to the

25   SNM matter.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3229

1    And I have, Your Honor, since the filing of

2    this motion, in talking about it with opposing

3    counsel last week, just looked at the publicly

4    available material in this case.  And we ordered the

5    transcript.

6         These aren't allegations, by the way.  The

7    reality of this case was -- and this is what I've

8    learned from publicly available information, because

9    Mr. Donatelli and I really haven't spoken about it --

10   that Mr. Duran was a resident of Hobbs, in the Lea

11   County Correction Facility there, and went to the

12   dining hall with about 30 other inmates.  And one of

13   the correctional officers assigned him a seat, unlike

14   anybody else in the dining hall.  Mr. Duran took

15   offense to that, and there were words exchanged,

16   which ended up with the correctional officer telling

17   him he was going to return to his cell and he had

18   forfeited his right to have lunch.

19        That caused a little bit of ill will.  And

20   Mr. Duran said, No, I'm going to go get another tray

21   because the guard had discarded the first tray, the

22   lunch tray.  And he went and stood back in line.  The

23   guards, at that point, extricated him out of the room

24   and took him to a hallway where approximately --

25   according to the criminal complaint that was filed

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                    1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3230

```
 1    against the guards -- proceeded to handcuff him

 2    behind his back, put him prone on the floor and

 3    kicked -- two guards, one on each side, kicked his

 4    head repeatedly, for which there was a criminal

 5    complaint filed against three guards.

 6              One pled guilty, cooperated with the United

 7    States.  And the Department of Justice, Barbara

 8    Bernstein, prosecuted three guards who didn't plead

 9    guilty and got guilty verdicts on all three.  So

10    there were four convictions.

11              So there is no allegations -- this is

12    proven fact -- that the correctional officers with

13    the Department of Corrections beat the stuffing out

14    of Eric Duran.  And it didn't involve any

15    gang-related activity at all.  It's just about a

16    kerfuffle that happened in the dining hall.

17              Now, we've looked -- and I have, Your

18    Honor -- we've looked at the transcript that's

19    available in that case.  I can mark them as exhibits.

20    We have the opening statements, all of Duran's

21    testimony, and the closing statements for the Court.

22    I will mark them today and tender them as Exhibits A,

23    B, and C.

24              But the only reference of gang activity at

25    all in that case was in the criminal case -- not the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3231

 1  civil case, but the criminal case -- was the United
 2  States, Barbara Bernstein, when they were putting on
 3  Mr. Duran, had an oral motion in limine in front of
 4  the Court, and said:  Whatever these guards are going
 5  to do with their defense, we want to make sure that
 6  they're not going to say that this -- they were
 7  afraid there was going to be a gang incident in the
 8  cafeteria that led them to Mr. Duran.  And the
 9  criminal defense attorneys agreed that gangs weren't
10  at issue in that case at all.  And so that's the only
11  time gangs were mentioned.  And it wasn't
12  SNM-specific.  It was generic, and --
13          THE COURT:  It was a motion in limine to
14  keep it out of the trial?
15          MR. LOWRY:  Yes.  And they just didn't want
16  the defendants, the correctional officers, trying to
17  curry favor with the jury saying that this guy was
18  affiliated with gang X, whatever it was.
19          At the time, it strikes me as odd because,
20  as we all know, the Department of Corrections had
21  made specific housing assignments related to the SNM,
22  and that never was the Hobbs facility or the Lea
23  County Correctional Facility.  We all know that
24  that's been Southern for some years.
25          So there is no objective indication at all

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3233

1  that this was SNM-related.  In fact, all of the

2  objective evidence indicates that this was not gang

3  related at all; that this was just an altercation.

4          And if you look at the trial transcript in

5  its totality -- and the Court can take judicial

6  notice of the trial transcript as part of the Court's

7  records, but I'll mark these as A, B, and C.  This

8  was really about the guards -- at that time Wackenhut

9  had just opened that facility; they had just taken it

10  over.  There was a lot of push-back about them being

11  ineffective caretakers of the facility because there

12  was a widespread feeling that the guards didn't

13  really control the facility and the guards were

14  trying to demonstrate who was boss, so to speak.  So,

15  when they ran across an uppity inmate in the

16  institution, they were going to be determined to set

17  the record straight and show who was in charge.

18          That didn't work out so well, because there

19  were four criminal convictions on the COs as a result

20  of that.  But it wasn't gang-related at all.

21          So that's what I know today.

22          Frankly, back in March of last year, we

23  just had a couple of press reports that I shared with

24  opposing counsel.

25          But at the time, we did what I consider to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 3233

1    be double duty.  We said:  Mr. Donatelli, don't talk

2    about this case with us, ever.  And between Ms.

3    Duncan and I, we said she would handle Eric Duran as

4    a witness, and I would not, because of the firm's

5    prior representation of Mr. Duran.

6            So at the time we really thought that, you

7    know, we had done due diligence at -- A, we'd made a

8    determination that this case wasn't substantially

9    related to this case; that no conflict actually

10    existed.  But, as a prophylactic measure, we wanted

11    to double down and make sure we did the right thing.

12    So we assigned Ms. Duncan the honor of handling the

13    Duran witness, and having Mr. Donatelli refrain from

14    ever talking about this.

15            Now, I want to back up for a second because

16    it bears repeating.  I did a little research after

17    your opinion came out on Sunday.  I think it's

18    important for the Court to understand the physical

19    dynamic of the firm.  A, this case had come -- was

20    litigated and had been resolved; the settlement

21    agreement was reached September 18 of 2012.  I didn't

22    join the firm until September of -- well, pardon me,

23    not 2012, but 2002.  I joined the firm in September

24    of 2003.  So this case had been mothballed by the

25    time I took employment with the firm.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3234

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 28

```
 1              But more importantly, is that Mr. Donatelli
 2    has always worked and lived in Santa Fe -- out of the
 3    Santa Fe office of the Rothstein Law Firm.  And since
 4    day one I've always lived and worked in the
 5    Albuquerque office of the Rothstein Law Firm in
 6    Albuquerque, New Mexico.  This is important, because
 7    I think a lot of the Rules of Professional Conduct
 8    with imputed conflicts and these kinds of things
 9    really imagine lawyers in the same firm sharing the
10    same filing cabinets, talking about the case over the
11    water cooler break, at lunch, whatever.  And the
12    reality of this case is that, for a number of years
13    with the firm, I've rarely, if ever, saw Mark
14    Donatelli -- maybe two or three, half a dozen times a
15    year, and just at social functions.  So there is no
16    pipeline, electronic or otherwise, between the
17    Albuquerque office and the Santa Fe office, where we
18    can share files.  Unfortunately, even with the
19    internet, even today, we don't share files between
20    the offices.  So the commingling of information just
21    wasn't possible, and in fact, never happened.  So I
22    just want to bring that to the Court's attention so
23    you could understand that, obviously, one of the
24    rules of professional conduct is concerned acutely
25    with how confidential client information is handled.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3235

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3236

 1    And I never had access to -- either before we became

 2    aware of this or after, except for what I've just

 3    done in preparation for this -- defending this motion

 4    in reality.  So that's important for the Court to

 5    understand.

 6              So we've analyzed this as the case is

 7    fundamentally not a conflict, because this civil case

 8    is just not substantially related to this present

 9    RICO case at all.  And I can say that with a high

10    degree of confidence, having reviewed the civil

11    complaint.  And I have a copy I'll tender as Exhibit

12    D.  And having reviewed -- not completely, because

13    the trial transcript is about approximately 1300

14    pages long -- but I have reviewed the openings and

15    closings and the Eric Duran testimony.  And there was

16    just no real issue about gang involvement, in

17    general.  More specifically, there is absolutely no

18    mention of SNM throughout the case.  I had a

19    paralegal do a word search, once we PDF'd the trial

20    transcript, and we can't find any reference under SNM

21    at all.

22              So I just don't think there is a conflict,

23    because I don't think the cases are substantially

24    related, as the Rules of Professional Conduct

25    contemplate.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3236

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3237

```
 1              Which brings us to the second part of the
 2    analysis.  Because, as you know through your opinion,
 3    there is two parts:  Where the case is substantially
 4    related, and then what do we do about the
 5    confidential information?
 6              And with regard to the confidential
 7    information, like I said earlier, there is really no
 8    overlap between my office and Mr. Donatelli's office.
 9    Although, if we take the rule as logical extreme, one
10    could argue that that's irrelevant.
11              But what I would suggest, Your Honor, that
12    if you look at Rule 109(c), which is really talking
13    about representation of current clients, vis-a-vis
14    former clients, and how you handle confidential
15    information, there is exceptions where that
16    information has become more available, or there is a
17    waiver on behalf of the former client.
18              And I think that's important here, Your
19    Honor.  And I want to point the Court to the
20    Government's actual motion.  And when the Government
21    raised this last week -- and I've worked as
22    transparently as I can with my colleagues on the
23    other side of this case to explain to them my role,
24    how the firm functioned.  Last week, they even took a
25    picture of me to send to Mr. Duran, to see if he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3237

1    recognized me.  To my knowledge, he didn't ever

2    recognize me, which is not surprising, because I

3    wasn't at the firm at the time.

4            And when we were in the hall speaking with

5    Ms. Wild, Ms. Armijo had mentioned to me that, Well,

6    of course, you have a problem with confidential

7    information because Mr. Duran would have talked to

8    Mr. Donatelli about his drug dealing for the SNM.

9    And at the time I said, Well, that's pretty

10   remarkable, because this is the first I've heard

11   about it from you, the prosecutor for the United

12   States.  And that sentiment is repeated at page 2 of

13   Document 1534, at the bottom of the page in the

14   motion.  It says, "It is believed during the course

15   of this representation, Duran discussed his prison

16   activities, to include illegal drug activity at a

17   minimum."  And that sentiment is carried over into

18   Footnote 7, which says, "Assume Duran testifies at

19   trial, Duran would likely be cross-examined about his

20   involvement as an SNM inmate and member.  During his

21   representation of Duran, Mr. Lowry's firm dealt with

22   that very issue."

23           Well, Your Honor, I'm just going to submit

24   to the Court that the only way my colleagues on the

25   other side of this case could know of anything like

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that -- which I have no idea whatsoever -- is if they
 2   consulted with Mr. Duran about it.  And if they
 3   consulted with Mr. Duran about it, Mr. Duran has
 4   waived his attorney-client confidences that he had
 5   with Mr. Donatelli.  And it bears repeating again.  I
 6   know nothing about what those confidences were.  But
 7   it strikes me as a bit ironic that the United States
 8   knows more about those confidences than I do.  And
 9   they're saying that I have a conflict.
10          In preparing for this motion, we did talk
11   to Mr. Donatelli.  He's available, but not until
12   after lunch, if Your Honor wants to talk to him about
13   the nature of his representation.  He's at the ADX
14   taking some death penalty teams through the facility
15   this morning.  But what he did tell me -- and you'll
16   see this in the exhibit -- that there is a Barbara
17   Bernstein, who was the Department of Justice attorney
18   out of Washington, D.C., who prosecuted the three
19   guards who wouldn't plead guilty, and that they
20   worked very closely together throughout the duration
21   of the criminal case and the civil case.  And my
22   understanding is, without going into any detail at
23   all, is -- Mr. Donatelli told me yesterday -- that
24   there was nothing that he knew that Ms. Bernstein
25   with the Department of Justice didn't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3239

1          And so, again, I'm just coming back to this

2     idea that to the extent there could be any

3     confidential information imputed to me, that's

4     information that the client waived by sharing it all

5     with the Department of Justice.

6               THE COURT:  Well, are you relying, then, on

7     waiver rather than on --

8               MR. LOWRY:  Well, Your Honor, it's a

9     two-for.  I'm saying I didn't have any, as a

10    practical matter --

11              THE COURT:  But you and I talked at the

12    last hearing -- I don't have the number in front of

13    me -- about the fact, on this issue, it seemed to me,

14    just looking at the rules in connection with the

15    Davis motion, that any sort of information that the

16    firm has is imputed to all members of the firm.  So

17    we can't -- we wouldn't be able to take a practical

18    approach, and say, Well, this attorney doesn't have

19    it and this one does.  It's imputed to the firm and

20    all the attorneys in the firm.

21              MR. LOWRY:  And I -- well, let me take a

22    step back before I jump into that pool too deeply.

23    And I think Your Honor struck the right cord in the

24    Davis opinion, which is, really at the first cut at

25    examining and analyzing the confidential information

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3240

1    is really an objective inquiry.  And this is set out

2    in the Committee Commentary No. 3 of Rule 16-109.

3    And I'm going to quote from the rule.  And it says,

4    quote, "A conclusion about the possession of such

5    information may be based on the nature of the

6    services the lawyer provided the former client and

7    the information that would in ordinary practice be

8    learned by a lawyer providing such services."

9          What that standard does is really focus us

10   back to the original civil suit, and say, jeez, if

11   I'm representing a prison inmate in a personal injury

12   case, does that really necessitate me making an

13   inquiry into his drug dealing habits for any

14   particular gang?

15         And I think, Your Honor, the appropriate

16   analysis is:  Well, no.  There is nothing objective

17   about the civil suit, which is, you know, a half a

18   dozen or so guards kicking in Mr. Duran's head, that

19   had anything to do with gangs, drug dealing, or

20   anything.  There was just the opportunity to share

21   that kind of information never availed itself, if you

22   look at the cases objectively.

23         And so I would argue to the Court that we

24   really don't need to get deep into the weeds of what

25   confidential information was provided to Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Donatelli, because an objective analysis indicates

2  that there would have been none.  That would be my

3  first argument.

4         Then my second argument would be, Your

5  Honor, as you pointed out, that if there was

6  confidential information about drug dealing or SNM

7  Gang-related activities, I'm certainly not aware of

8  it.  And the fact that Ms. Duncan is available to

9  handle this means that any imputed knowledge that I

10  could possibly have under Rule 16-110 is not relevant

11  to Ms. Duncan's handling of this particular witness.

12  So, I mean, I think that's a factor the Court needs

13  to consider, as you're well aware.  Even if you think

14  there is a potential conflict or an actual conflict,

15  alternative measures to remedy that conflict are

16  relevant to the analysis.  In here, we have a ready,

17  willing and able attorney that's not

18  conflict-burdened at all, no matter how you slice it

19  or dice it, available, and who has handled

20  Mr. Duran's file and investigation from the

21  beginning.  And so I just -- I don't think it ripens

22  into a cause that the Court needs to be concerned

23  about.

24         Now, this spirals into the fact, as the

25  United States just conceded, Mr. Duran is a fugitive

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3242

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36 3243

1   from justice.  He's absconded.  I mean, he's not even

2   available.  We don't know what his position is.

3          The fact of the matter is, Mr. Duran has a

4   very colorful history of doing precisely this.  His

5   first adult conviction, in 1997, was for aggravated

6   burglary and forgery.  And the court in Clovis tried

7   to remedy his initial felonious nature with drug

8   treatment.  And he walked away from drug treatment in

9   early 1998, and absconded.

10          The Court should know that when he was

11   located in Portales, in June of 1998, the officers

12   detained him, put him in a police car, and somehow he

13   got into the driver's seat of the police car.  And

14   when the police tried to apprehend him from driving

15   away, he drug a police officer about 30 or 40 feet,

16   and the police officer discharged his service weapon

17   about eight times at the departing car.  And

18   Mr. Duran got away.

19          So he's not the type of individual who is

20   going to walk in freely, and you know, renew his

21   cooperation with the United States.

22          I mean, at this point, Your Honor, I'm not

23   convinced that we will have Mr. Duran available for

24   trial.  So, if Mr. Duran is not here, obviously,

25   there is no need to cross-examine him in any event,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3243

1   and then there is no conflict.  So I mean, that's

2   just in Mr. Duran's nature.

3          Then finally, Your Honor, I've asked my

4   colleagues -- and I cooperated with them in good

5   faith to the extent I could, and I've asked them, and

6   we've asked in Brady, and explicitly and otherwise in

7   Document 1053 and in our other motion to compel that

8   we just heard at the beginning of this month, for the

9   CI contracts and the information related to

10  Mr. Duran, that still haven't been filed.

11          And the reason I would like to see them --

12  and if I could put this up on the Elmo, Your Honor --

13  and I realize these aren't quite compatible.  But

14  this is a cooperation agreement that the United

15  States just entered into with Michael Flynn.  And I'm

16  certainly not trying to put them on equal pedestals

17  here.  But if you'll see, in paragraph 8 of Mr.

18  Flynn's agreement, the United States demanded that:

19  "Your client shall cooperate fully, truthfully,

20  completely and forthrightly with this office and

21  other federal, state, and local law enforcement

22  authorities identified by this office in any and all

23  matters to which this office deems cooperation

24  relevant."  And I'm almost positive that such an

25  agreement would have attached to Mr. Duran's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   cooperation in this case, given that the United

2   States has compensated him in over $45,000 worth of

3   United States' funds.  I just don't think that that's

4   a sum of money that escaped the Department of

5   Treasury coffers very lightly, without a similar type

6   of agreement.

7           And this is where I'm talking about waiver;

8   that Mr. Duran has gone to the United States, has

9   told them everything he knows.  And that there is no

10  confidential information with regard to his SNM

11  activities, A, that could be imputed to the firm,

12  but, B, that could be imputed to me, in this

13  roundabout way, to establish even a potential

14  conflict, much less an actual conflict, Your Honor.

15          So I just come back to the central point

16  that there is no conflict in this case.  The matters

17  aren't substantially related.  And to the extent one

18  could even ever assume, if you got into -- not an

19  objective analysis, but a substantive analysis to

20  find out what Mr. Duran told Mr. Donatelli -- that

21  that type of information has been waived.

22          Your Honor, with regard to the Duran

23  Consent Decree, I would just say that -- again, these

24  cases aren't substantially related -- my

25  understanding is that the current iteration of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    consent decree is that the Department of Corrections

 2    had signed a permanent order with the court that the

 3    Department of Corrections would not use public

 4    facilities, meaning gymnasiums, open rooms, that kind

 5    of thing, to house inmates, and the inmates wouldn't

 6    be sleeping on boats in gymnasiums and other types of

 7    public spaces.  And I don't claim to know the details

 8    of that.  I think we could all look at the court

 9    docket and get a better feel for it.  But the idea

10    that Mr. Donatelli, or his successor at the firm, is

11    looking at the sleeping arrangements of Department of

12    Corrections' inmates, I just really don't see the

13    overlap or the dovetail here.

14              Again, if you look at the case objectively,

15    there is no real reason for anybody to share the type

16    of information about gang activities or drug dealing

17    activities or murders or homicides or witness

18    intimidation or any of the type of activities that

19    are alleged in the indictment.  I mean, none of those

20    activities are related to where he slept last night.

21    I mean, they're not related to how good is the

22    medical providers at your facility.

23              So, Your Honor, I'm not saying the Court

24    shouldn't be concerned about it.  I think the Court

25    will do an exacting analysis of it, as it did in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3246

```
 1    Mr. Davis' case.  But I think that the allegations
 2    that these cases warrant the disqualification of
 3    myself because of confidential information being
 4    shared has been amply remedied by Ms. Duncan, taking
 5    Duran from the onset, as soon as we identified him;
 6    firewalling Donatelli out of this case completely.
 7    And with regard to Mr. Duran, I'm just the fifth
 8    wheel, so to speak.
 9              So, if the Court has any questions for me,
10    I'm happy to answer them.
11              THE COURT:  My law clerk has given me a
12    copy of the Duran case, the one involving Eric Duran.
13    I'm looking at the list of defendants here in this
14    case.  Of course, Robert Perry, the Secretary, I know
15    him; I've known Mr. Perry for a long time.
16              It also has John Shanks, who is Rudy Perez'
17    expert.
18              Any thoughts about that?
19              MR. LOWRY:  Is that the Duran case?
20              THE COURT:  Yeah.  You're suing Mr. Perez'
21    expert.
22              MR. LOWRY:  Your Honor, honestly, if it
23    causes the Court any concern, I believe that's why I
24    wanted to get this matter before the Court as soon as
25    possible.  I'm happy to go back and do a fine-tune
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3247

```
 1    analysis of that, and compare the involvement of any
 2    witnesses with the record here.
 3              But it doesn't give me -- at this moment,
 4    no, I don't have any reason to be concerned about it
 5    because, frankly, I'm vastly ignorant about why
 6    Mr. Shanks or anybody else would have been sued and
 7    what their role was in the case.  So, unfortunately,
 8    I'm not in a position to give the Court any
 9    meaningful guidance on that.
10              THE COURT:  All right.  Let's get your
11    exhibits marked; see if there is any objection from
12    Mr. Castellano about them.  I have a copy of the
13    complaint.  That doesn't mean that I've got a
14    complete one with all the exhibits and everything.
15    So give me whatever you've got.  And, Mr. Castellano,
16    give me whatever you've got.
17              MR. CASTELLANO:  Your Honor, if you have
18    the complaint, you have what I have.  And there is no
19    objection to the admission of defendant's exhibits.
20              The only other question I would ask related
21    to the representation for the consent decree is, for
22    example, in terms of confidential communications, the
23    attorney might ask the defendant why he's classified
24    at Level 4, 5, or 6, and this could relate to them
25    being a gang member.  And I don't know the answer to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3248

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 43249

```
 1    that question.  Their firm would.  So that still

 2    remains to be seen in terms of who they may have

 3    interviewed or spoken with, who is a part of this

 4    case.

 5                THE COURT:  I marked up my copy.  Do you

 6    have a clean copy of the complaint, Mr. Lowry?

 7                MR. LOWRY:  I do, Your Honor.  I have a set

 8    for everybody here.

 9                THE COURT:  Why don't you identify for the

10    record what you're about to give to the Court.

11                MR. LOWRY:  I will, Your Honor.

12                Your Honor, I'm about to hand to the Court

13    exhibits that I've marked A through D.  Exhibit A is

14    Volume 2; it's a partial trial transcript of the

15    criminal case.  It is criminal number 01-CR-593.  It

16    was in front of Chip Johnson, Your Honor.  That's

17    Defense Exhibit A.

18                Defense Exhibit B is an additional trial

19    transcript.  It's the opening statements from that

20    trial.

21                And Exhibit C is the trial transcript of

22    the closing statements from that trial.

23                And Exhibit D would be the civil suit that

24    was filed on December 18, 2001.  And that is

25    01-CV1411, assigned to WD -- that's Judge Deaton --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3249

```
 1   and DJS.  So, Your Honor, if I may approach.
 2              THE COURT:  All right.  Any objections to
 3   Defendant Baca's Exhibits A, B, C, and D, Mr.
 4   Castellano?
 5              MR. CASTELLANO:  No objection, Your Honor.
 6              THE COURT:  Any objection from any of the
 7   other defendants?
 8              All right.  They'll be admitted.
 9              And that has about everything that you
10   would be able to give me as well, right, Mr.
11   Castellano, you don't have any additional exhibits?
12              MR. CASTELLANO:  That's correct, Your
13   Honor.
14              THE COURT:  All right.  Anything else, Mr.
15   Lowry?
16              MR. LOWRY:  If I may approach?
17              THE COURT:  You may.
18              MR. LOWRY:  Your Honor, if I may, Ms.
19   Duncan would like to be heard on a few of the matters
20   involved in this.  And if I could relinquish the
21   podium to her, so she could speak on this matter,
22   Your Honor, I'd greatly appreciate it.
23              THE COURT:  All right.  Thank you, Mr.
24   Lowry.
25              Ms. Duncan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3250

 1          MS. DUNCAN:  Your Honor, I'll be brief.  I
 2   won't repeat anything that Mr. Lowry has already
 3   pointed out.
 4          I just -- I wanted to tell the Court that I
 5   have independently investigated this issue on behalf
 6   of Mr. Baca.  I agree with Mr. Lowry's analysis that
 7   there is no conflict.  I've read through these
 8   transcripts.  There is nothing in the civil lawsuit
 9   that Eric Duran filed against Wackenhut that would
10   bear on this case.
11          As Mr. Lowry mentioned, the Government
12   filed a motion in limine in the criminal case, which,
13   essentially, was exactly the same allegations, which
14   is why those transcripts are relevant.  And moved in
15   limine to exclude any evidence of gang activity by
16   Mr. Duran.  The defense agreed that it wasn't
17   relevant, that the incident was not at all
18   gang-related.
19          But one point I wanted to make to the Court
20   is, according to discovery and available public
21   information, Mr. Duran wasn't even a member or
22   affiliated or suspected of being a member of the SNM
23   in 2001, when this lawsuit was pending.  If you look
24   at the Government discovery, the gang that he was
25   allegedly affiliated was the Eastside Locos.  And the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3251

```
 1    first place I can see him being allegedly involved,
 2    or any kind of allegation that he was involved with
 3    the SNM was in 2005, so long after the civil lawsuit.
 4           The other issue that I wanted to raise with
 5    the Court is in its motion, the Government alleges
 6    that, perhaps, Mr. Duran spoke with Mr. Donatelli
 7    about his drug dealing.  So, number one, if there was
 8    drug dealing, it certainly wasn't on behalf of the
 9    SNM, because he had no affiliation with them at that
10    point.
11           But number two is, during the criminal
12    case, there was another motion in limine about
13    Mr. Duran's use of drugs, and whether the defense
14    intended to introduce that evidence at trial.  And
15    the court excluded the evidence because the defense
16    didn't -- that wasn't their argument -- their
17    argument wasn't Mr. Duran was on drugs, and
18    therefore, they had to take him down.  The only
19    argument they intended to make was some general
20    argument about drugs in prison, and prisons are
21    dangerous.  So that wasn't an issue.  There is
22    nothing on the objective record that would indicate
23    it would have been an issue that Mr. Duran would have
24    discussed with counsel.
25           So, you know -- and I am -- in a sense, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3252

1    discovered the civil lawsuit last year.  As Mr. Lowry

2    said, I've been prepared to cross-examine Eric Duran.

3    I've taken the lead on the investigation, and putting

4    together that cross-examination.  So, you know, there

5    is no conflict.  But out of an abundance of caution,

6    we have taken protective measures.  And those

7    protective measures are more than adequate under the

8    circumstances.

9              THE COURT:  Have you talked to Mr.

10   Donatelli?

11             MS. DUNCAN:  I spoke to him briefly in

12   March of -- March of last year, I did.  When we

13   first -- when I first discovered that Mr. Donatelli

14   had represented Eric Duran, I called him and spoke to

15   him, with Mr. Lowry, about it.  And Mr. Donatelli

16   expressed to me that he did not see it as a conflict,

17   because of the limited nature of the litigation.

18             THE COURT:  I'm just thinking a little bit

19   out loud:  I wonder if it might make some sense if

20   you sit down, with some of the things that Mr. Lowry

21   was suggesting that I do ex parte, maybe you do, and

22   then do some affidavit or letter or report to the

23   Court about what he would say about those topics that

24   Mr. Castellano has raised.

25             MS. DUNCAN:  I'm happy to do that, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3253

 1   Honor.  I could have a conference call with Mr.

 2   Donatelli and report back to the Court.

 3              THE COURT:  Why don't you get a

 4   transcript -- I know y'all are getting transcripts of

 5   this -- and go through carefully what Mr. Castellano

 6   is talking about as far as confidential information.

 7              Because it seems to me that I'm having a

 8   harder time saying this is a related case, or the

 9   same case.  But it does seem to me there is at least

10   the potential for some confidential information of

11   the nature that Mr. Castellano is raising.  And it

12   seems to me I don't have something that forecloses

13   that.

14              So maybe your report, your affidavit, your

15   investigation, might go a long way.  Because Mr.

16   Castellano is not going to be able to get that.  And

17   without me sitting and talking to Mr. Donatelli, and

18   then, perhaps, finding out information I really

19   probably don't need to know, I'm not sure there is a

20   way of putting -- closing the gap.

21              MS. DUNCAN:  I'm happy to do that, Your

22   Honor.  I'll get a transcript as soon as I can and

23   share that with Mr. Donatelli, and report back to the

24   Court.

25              But I am -- just based on my own

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3254

```
 1   investigation and my responsibilities to Mr. Baca, I
 2   am convinced that there is no conflict.
 3           And, like I said, I am able and willing to
 4   handle the Duran matter.
 5           THE COURT:  I know that Mr. Davis kept
 6   bringing that up -- Ms. Bhalla as well -- but I
 7   didn't see a lot in my work on -- with the Davis
 8   memo -- that told me that handing it to co-counsel
 9   solved any problems.
10           So if you, in y'all's work, Mr. Lowry said
11   he wanted to file something over the weekend -- you
12   might look at that a little bit, because I didn't see
13   a lot that gave me much encouragement that that
14   was -- helped any on the conflict issues.
15           MS. DUNCAN:  I think there are some cases
16   on point on that, Your Honor.  And we definitely will
17   brief it and have it filed by Monday.
18           THE COURT:  All right.
19           MS. DUNCAN:  Thank you.
20           THE COURT:  Thank you, Ms. Duncan.
21           Mr. Castellano, before I give you the last
22   word, Mr. Lowry, did you have anything else you
23   wanted to say?
24           MR. LOWRY:  Your Honor, just -- I think the
25   best case, with the issues you just raised -- pardon
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3255

 1   me, Jennifer -- the best case I can recall, Your

 2   Honor, would be a district court out of West

 3   Virginia -- or pardon me, out of the Western District

 4   of Virginia, Durham v. Blankenship.  That's at 461

 5   F.Supp., 492.  And in that case, like this one, the

 6   defendant had two attorneys, and the court -- as this

 7   Court was -- was concerned about the zealous and

 8   impartial defense of the present client.  And I'll

 9   quote from the opinion at page 499.  "The court notes

10   that two attorneys, Simpson and Singer, represented

11   petitioner at his 1972 trial.  While petitioner

12   alleges that Simpson was limited by divided loyalty,

13   petitioner made no such allegation against Tisinger,

14   nor has he alleged that Simpson influenced Tisinger.

15           "Furthermore, the Court finds no evidence

16   whatsoever in the record to indicate that there was a

17   conflict of interest of any nature that would taint

18   the assistance that Tisinger would afford the

19   petitioner."

20           Now, albeit, this is one of those cases

21   that's looking in the rearview mirror at a

22   conviction, but I think the analysis here is sound;

23   that, if there is nothing that can be -- whatever

24   could be said about the Rules of Professional

25   Conduct, imputing knowledge to me, Your Honor,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3256

1   wouldn't bear on Ms. Duncan's ability to represent

2   Mr. Baca.

3           And, Your Honor, I don't want to belabor

4   the point.  But I would point out, as you pointed out

5   in your opinion, that the Rules of Professional

6   Conduct don't necessarily govern or completely

7   control the constitutional analysis with regard to

8   Mr. Baca's right to the attorney of his choice.  And

9   the reason I say that -- and I'm not diminishing the

10  role or, you know, sliding the Rules of Professional

11  Conduct in this matter -- but, as this Court knows as

12  well, you know, there is certain rules that the Court

13  has declined out of the Rules of Professional Conduct

14  to apply to federal practitioners.

15          Interestingly enough, the one rule applies

16  to the United States Attorney's Office, and those

17  attorneys' right not to interfere with

18  attorney-client relations by subpoenaing defense

19  attorneys to federal grand juries.

20          So, you know, the Court has the authority,

21  as you pointed out, to rule that, in a specific case,

22  the Rules of Professional Conduct don't necessarily

23  apply.  And I'm not suggesting that the Court should

24  take the rules lightly.  But I think, given the

25  nature that -- the way we handle this, the degree we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3257

1    took to make sure that no confidential information

2    was ever shared with Mr. Baca's defense team, and

3    even within the defense team to make sure that Ms.

4    Duncan handled this particular witness -- more than

5    ensured that whatever could be said about the

6    confidences that Mr. Duran may have shared with Mr.

7    Donatelli, that those were maintained, and they

8    weren't either used or revealed in the sense that

9    Rule 16-109 contemplates.

10            Thank you, Your Honor.

11            THE COURT:  And I assume that, if I decide

12   this can be waived, or if there is a conflict and it

13   can be waived, Mr. Baca will waive?

14            MR. LOWRY:  That's my understanding, Your

15   Honor.  Ms. Duncan and I went and spent an hour with

16   Mr. Baca last night, and told him that this was going

17   to be teed up first thing this morning.  And he's

18   prepared to discuss that with Your Honor, if you'd

19   like.  Ms. Duncan led that conversation, for the

20   obvious reasons.  But I wanted to be there, just in

21   case Mr. Baca had any questions of me about the role

22   I had in this case and my participation.

23            But I would assure the Court that, when

24   this whole thing arose back last spring that we

25   brought it to Mr. Baca's attention at that time.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3258

 1    it just never -- you know, it hasn't cropped up in

 2    the context of our conversations.

 3            But if the Court wanted to speak with him,

 4    I'm sure he's willing to speak with you.

 5            THE COURT:  Well, I won't do a colloquy

 6    today.  But I'm understanding that he's prepared and

 7    willing to waive any conflict, if I decide that's a

 8    necessary step.

 9            MR. LOWRY:  Yes, Your Honor, that's my

10    understanding.

11            THE COURT:  All right.  Thank you, Mr.

12    Lowry.

13            Mr. Castellano, I'll give you the last word

14    on this issue.

15            MR. CASTELLANO:  Your Honor, I really don't

16    have any argument.

17            What I want to ask the Court is:  In Ms.

18    Duncan's discussions with Mr. Donatelli, if there is

19    anything the Court wants to know about the

20    representation of the class?  That's another topic

21    particular that she can discuss with him.

22            I don't know what he discusses with inmates

23    when he goes out to oversee the consent decree or

24    what's left of it.  So that would be another issue to

25    explore, would be whether or not they talk about gang

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3259

1 membership; why they're classified at a certain

2 level, things of that nature; and whether they can

3 search their files to see if they've represented

4 anyone in this case.

5    So I just put that out there as a

6 suggestion, other answers that we can get now.

7    THE COURT:  I appreciate it.  And if you

8 think of anything else, pass those on to Ms. Duncan,

9 because I think it would be a good idea to be as

10 comprehensive at this fact-gathering stage as we can.

11    MR. CASTELLANO:  I will, Your Honor.

12    THE COURT:  All right.  Anything else, Mr.

13 Castellano?

14    MR. CASTELLANO:  No, sir.  Thank you.

15    THE COURT:  Thank you, Mr. Castellano.

16    Well, as I've indicated, I'm not convinced

17 that this is the same or related case.  It seems to

18 me that it's different.  So it seems to me that, to

19 establish that they're the same case, related case,

20 we're going to have to look at this confidential

21 information.  It seems to me it's more in the nature

22 of a potential conflict.  And it seems to me that it

23 is in the nature of a conflict that can be waived.

24    So we've got a lot of more information that

25 we need to get.  And we also need to probably find

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3260

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 54

```
 1    out where Mr. Duran is on this issue.
 2             The consent decree case, I guess the case
 3    was reopened.  It is before Judge Gonzales.  So it's
 4    not really a successive representation case.  It may
 5    be a concurrent representation case.  I'm afraid I'd
 6    just be thinking out loud, but it would seem to me
 7    that some of the same rules of waiver and substantial
 8    case or related case would still apply, so we may be
 9    able to do that analysis together.
10             And then, with the additional information
11    we may get from talking to Mr. Donatelli about how he
12    interviews and what he does in that case, it may be
13    that that is a waivable situation as well.
14             So I'm not inclined to disqualify anybody
15    today.  I think we've got some more work to deal
16    with.  So we're a little bit down the road before
17    we're going to be able to make an informed decision
18    on that.
19             All right.  Let's, then, take up -- I guess
20    the next motion is, Ms. Bhalla, your motion to --
21    your portion of the motion to continue the January 29
22    trial as to Mr. Herrera.  Let me give you what my
23    thoughts are.  I guess I'm inclined to deny the
24    motion without prejudice to you renewing it down the
25    road.  It seems that Mr. Maynard -- I would assume,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3261

```
 1    you know, that your case is in good shape in the
 2    sense that despite there being a lot of material
 3    here, you can probably sort it out and figure out
 4    what's relevant to Mr. Herrera and what's not.  In
 5    some ways, the case has some complexities, but on the
 6    other hand, in some ways, once you get through it and
 7    figure out the evidence, it's a rather
 8    straightforward murder case, and with, in fact,
 9    fairly limited information.  We're still about 60
10    days out, a little bit less.  I guess I wouldn't be
11    inclined to grant the motion, and wouldn't be
12    inclined to grant it, certainly, at this time.  It
13    seems to me you're probably in pretty good shape to
14    try the case with Mr. Maynard.  But those are my
15    thoughts after reviewing your motion.
16            Ms. Bhalla.
17            MS. BHALLA:  Well, first off, Your Honor, I
18    appreciate the vote of confidence on that, in that
19    regard.  But, Your Honor, I think that one of the
20    reasons most of these gentlemen have two lawyers is
21    to deal with exactly what you said:  The amount of
22    discovery.  In my motion, I stated to the Court that
23    there were over approximately, you know, 10,000
24    anticipated documents in the beginning of the case.
25    And I was filing that in a little bit of a hurry,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3262

1    because I knew about the Court's position on the

2    conflict, and I was trying to move things along as

3    quickly as I could, in terms of getting counsel

4    appointed and figuring out where we were.  But I've

5    relooked at those numbers.  And just for the 4268

6    case -- this isn't including 1613 and the other

7    matter -- there are 38,963 JPG files.  There are

8    2,824 PDF files.  And there are 4,939 audio files.

9    And the Court is correct, it is a lot of discovery,

10   but, you know, at the end of the day, you know what

11   you have on your client, and you prepare with that,

12   and you proceed.  And I think that I would be more

13   game if I felt that that were the picture in this

14   case.

15            But we really have had a hard time getting

16   some of the discovery sorted out.  There is so much

17   of it, but it's also been a little bit difficult to

18   get sort of a straight answer about what evidence the

19   Government intends on using.  And that sort of segues

20   in a little bit to our suppression motion, although I

21   don't anticipate us getting into that this

22   afternoon -- maybe this afternoon.

23            But one of the things that the Government

24   alleged a year ago, in November, which was pretty

25   recently after I'd been assigned to the case -- and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3263

```
 1   that's another little aside, Your Honor.  Most of the
 2   lawyers in this courtroom -- of course that doesn't
 3   apply to Ms. Torraco being here today as well -- but
 4   most of the lawyers have been here for a couple of
 5   years.  I came in a year later.  And, you know,
 6   Mr. Davis and I had divided things up, and analyzing
 7   all of the discovery wasn't in my division of labor
 8   task.  That being said, I'm going to do the best I
 9   can to catch up.  But one of the issues, as I was
10   beginning to articulate, is that after that hearing
11   in November, the Government alleged that Carlos
12   Herrera had made some statements, and, basically,
13   that amounted to admissions.  And we asked for those
14   statements back in November.  And we've been asking
15   for those statements repeatedly over the course of
16   the last year.
17            And in November -- at the November we
18   had -- at one of the early November hearings, we had
19   a motion to compel.  And the Government indicated
20   that they would provide that, pinpointed transcripts.
21   Well, I still don't have the pinpointed transcripts.
22   And I communicated with Ms. Armijo via email last
23   week, and I said, You know, it seems to me like, if
24   there is an admission, it would be nice for us to
25   know before we litigate a suppression motion.  And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    still haven't received that.

 2            Now, I've narrowed down which transcript I

 3    think the Government is referring to, and I've

 4    reviewed it, and I still don't necessarily see an

 5    admission.  And that's something that we'll get into

 6    later.  But I think what it shows to the Court is

 7    that this isn't easy to determine what evidence the

 8    Government plans on introducing against our clients,

 9    and that's part of the problem when the discovery is

10    this massive.  It's finding what is applicable to our

11    client, and having the time necessary to review that

12    evidence.

13            The other issue, Your Honor, is experience.

14    And I am going to put out there that I'm going to do

15    my best to catch up.  I've sort of laid out my

16    experience for the Court.  I'm not shy about the fact

17    that I don't have a lot of federal criminal

18    experience.  And I think why that is relevant is,

19    when I called Mr. Maynard to help me with this case,

20    I said, you know, it's complex, and there is not a

21    lot of lawyers left on the complex panel, and I

22    really need somebody to help.  And he looked at me

23    and said, okay.  And we talked about it.  Well, once

24    he got in, after he'd been appointed and started

25    looking at the evidence, he said, "Well, you know,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3265

```
 1    Ms. Bhalla, there are complex cases, and then there
 2    are complex cases."  And I don't think that I had
 3    done a very good job of alerting him to the fact that
 4    this was of the more severe complex category.  And
 5    that goes to my experience, Your Honor, because I
 6    haven't had a lot of complex federal criminal cases.
 7    And to me, I guess I just assumed they were all like
 8    this, which I'm glad to say is not the case.
 9              But I think that when you're looking at
10    sifting through that much discovery, and trying to
11    figure out what is applicable to your client, then it
12    does become relevant.  This hasn't been a very
13    straightforward process for us.
14              And with that being said, Your Honor, I
15    think I might let Mr. Maynard address some of the
16    issues that he feels arise from coming in so late in
17    the game, Your Honor.
18              THE COURT:  Well, a couple of -- some of
19    the things you raise, I think, are just issues that
20    all the defendants are having, and -- or at least
21    complaining about, as far as discovery and those
22    things.  Those don't seem to me to rise to a level of
23    a motion to continue right now, because nobody else
24    seems to be thinking that that is -- you know, that
25    discovery is at a point where they need to move
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3266

 1    because of lack of discovery.  So it seems to me

 2    you're not unique in that complaint about needing

 3    something here or something there to get the case

 4    ready to try.  Your thoughts on that?

 5            MS. BHALLA:  Well, I would just say that I

 6    agree that that's true, that I think that is a common

 7    theme among all the parties.  But the difference is

 8    the other parties have been here for two years and

 9    have been able to review a lot more of the discovery

10    than I have been able to review.  And I don't know if

11    the Court -- you know, one of the -- a huge issue we

12    had when I first came into the case was that our

13    investigator, Daniel Berge, got a job at the Federal

14    PDs, and is no longer on this case, and we had to

15    bring in a new investigator.  So Michael Davis came

16    in, I believe, six months later than all the other

17    attorneys.  I came in a year after all the other

18    attorneys.  And I don't know how long our

19    investigator has been on the case, but not as long --

20    you know, for a shorter amount of time than I've been

21    on the case.

22            And so, yes, that problem is not unique to

23    us.  But we've had less time to try to go through

24    this discovery and find on our own initiative and

25    through our own investigation, which discovery is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3267

```
 1   relevant.
 2          Just yesterday, I found some discovery that
 3   may be pretty exculpatory, that we hadn't seen
 4   before, and that's because we're playing catch-up
 5   here.  And I've lost the person who was trying to
 6   really understand the discovery.  It's one thing to
 7   read it and relay what you've read.  It's another to
 8   really sift through it and see what's relevant and
 9   what's not.  And we haven't had the same amount of
10   time to prepare on this issue as others.
11          THE COURT:  All right.  Thank you, Ms.
12   Bhalla.
13          Mr. Maynard.
14          MR. MAYNARD:  Your Honor, I have five days
15   in this case.  It is true that when I spoke to Ms.
16   Bhalla at first I was very hesitant to get into the
17   case and then I said, Okay, well, let's give it a
18   try.  I knew nothing about this case except that it
19   existed and that it was a complex case.  I've really
20   known nothing about the SNM Gang in any detail
21   whatsoever.  I haven't been following it in the
22   press.  And I'm still trying to get oriented, with my
23   head spinning, about the cast of characters, the
24   names and the relationships, who is going to trial in
25   January, and who is going to trial in April.  I can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3268

```
 1    tell the Court I will do my best, if a continuance is
 2    denied, to be ready.  I can't guarantee in any way I
 3    will be ready.  I'm not in a position to know if my
 4    colleague is prepared, because I don't know enough
 5    about her preparation.  And, of course, since Friday
 6    afternoon, when I learned I was going to be on the
 7    case, when I was appointed, I've also had to spend
 8    much of my time trying to ethically shed my
 9    responsibilities to my existing clients.  I've taken
10    my name off the criminal appointment panels in state
11    court and federal court.  But I can't just instantly
12    dump some of these cases.  I have continuing
13    obligations to them.
14            So, with the quantity of evidence I'm,
15    frankly, very concerned that there are some critical
16    pieces of evidence that because of the lack of time I
17    won't be able to appreciate and perceive.  And this
18    is the risk.
19            THE COURT:  All right.  Thank you, Mr.
20    Maynard.  There used to be a -- Joe Namath used to
21    throw to an El Paso wide receiver named Maynard.  Is
22    that any relation to you?
23            MR. MAYNARD:  I don't think so, Your Honor.
24            THE COURT:  All right.  He was a pretty
25    good UTEP ballplayer.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3269

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 63

```
 1                MR. MAYNARD:  Right.

 2                THE COURT:  Caught a lot of Joe Namath's

 3     passes.  I just wondered.  He used to come over to

 4     Hobbs, too -- shows you where the NFL is today -- in

 5     the off season he'd tell ties.  He'd hang the ties in

 6     the laundry shops in Hobbs.  I'd get his autograph.

 7     That's what he'd do in the off season.

 8                All right.  Good to have you in the case,

 9     Mr. Maynard.

10                MR. MAYNARD:  Thank you, Your Honor.

11                THE COURT:  All right.  Any other

12     defendants want to speak on this motion to continue?

13                All right.  From the Government's

14     standpoint, Mr. Castellano, are you going to handle

15     it?

16                MR. CASTELLANO:  Yes, Your Honor.

17                THE COURT:  All right.  Mr. Castellano.

18                MR. CASTELLANO:  At this point, I'd say I

19     agree with the Court's approach.  I understand the

20     position that Mr. Herrera's attorneys are in.  I

21     think that, in addition to the position they're in,

22     though, there is a joint defense agreement.  And so,

23     obviously, the teams are working together in

24     preparation for this case.  So if the Court needs

25     to -- I don't have any objection to the Court hearing
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3270

```
 1    ex parte what they have and haven't done, or how far

 2    they are in their preparation, just so we can make a

 3    record here.

 4              But what I would ask is that the Court deny

 5    the continuance for now.  Move us closer to trial, to

 6    see where they are.  And if they truly are not ready

 7    to continue to trial, then I think we make our record

 8    at that point.  And the question then becomes whether

 9    or not it's a continuance of all the defendants in

10    the Molina case, or whether or not it results in a

11    severance.  But I just don't think we're there yet.

12              THE COURT:  All right.  Thank you, Mr.

13    Castellano.

14              Does anybody have any objection if Ms.

15    Bhalla and Mr. Maynard want to submit additional

16    material to me ex parte so that I can see any

17    problems that they have in making this determination?

18              Not hearing any, I'll give you that

19    additional opportunity, if you want to send anything

20    ex parte so I can see it, and you can make your

21    record as well.  And I'll also give you the last word

22    on your motion, Mr. Maynard, Ms. Bhalla.

23              MS. BHALLA:  Just briefly, Your Honor, you

24    know, one of the things that I failed to mention to

25    the Court is, at this time, there are 290 something,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3271

```
 1    I think, witnesses disclosed on the Government's
 2    witness list.  And so, you know, trying to get Mr.
 3    Maynard up to speed on who the actual players are in
 4    this case is a challenge.  But I think that we can
 5    submit that in part of the ex parte comments, and so
 6    I won't go into that too much here, Your Honor.
 7            THE COURT:  Okay.  Do you have anything
 8    else you want to say, Mr. Maynard?
 9            MR. MAYNARD:  No, Your Honor.
10            THE COURT:  All right.  So I'm going to
11    deny the motion without prejudice to renew.  I do
12    think we're still far enough out from the case that I
13    think that the defendant can be prepared.  I reviewed
14    Mr. Maynard's impressive resume.  And also I have
15    every confidence, given my work with Mr. Davis, that
16    he's handing off the case in very good shape, and
17    that the documents that have been in discovery that's
18    been produced, it's been searched very well for the
19    materials that Mr. Herrera -- that is pertinent to
20    Mr. Herrera and important to his defense.  So I think
21    the case is being handed off.  We'll take a look at
22    it.  We'll continue to monitor it.  I certainly want
23    Mr. Herrera and all the defendants to get a fair
24    trial.  But at the moment, I feel like he's going to
25    get a fair trial, and he's going to get it starting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3272

1    January 29, because I think that the hand-off has

2    been relatively smooth, and the amount of documents

3    and the discovery that's really pertinent to Mr.

4    Herrera is fairly contained.  But we'll continue to

5    monitor the situation.

6              All right.  Are we now ready to go to the

7    motions to suppress?  Ms. Bhalla, do you know what

8    the order is?  What's next?

9              MS. BHALLA:  My understanding, Your Honor,

10   was that Mr. Villa's intention was to start with the

11   motion to suppress lost evidence.  I will ask him if

12   that's going to be different or the same today.

13             THE COURT:  And when we talk about the

14   motion to suppress, are we talking about your motion

15   1294 to suppress the statements that Mr. Herrera made

16   to Billy Cordova, or are we talking about one of the

17   other motions to suppress?  Is that the one?

18             MS. BHALLA:  I was just here first, Ryan.

19   There were two motions to suppress, Your Honor.  Mr.

20   Villa and I both filed motions to suppress statements

21   to Billy Cordova that are similar.  And that's why we

22   joined those motions.

23             Mr. Villa also has a second -- I don't know

24   which, if it was first or second -- but a separate

25   suppression motion for lost or destroyed evidence.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3273

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3274

 1   Our conversations about the schedule included that
 2   the lost or destroyed evidence motion would go first.
 3   And then we would try to begin the suppression
 4   motion, if there was enough time.  And we may have to
 5   do the suppression motion a little bit in
 6   installments, because our expert isn't here until
 7   next week.  And so there was going to be a little bit
 8   of shuffling around on that issue.  But that the
 9   motion to suppress lost or destroyed evidence would
10   go first.
11           THE COURT:  All right.  Is that your
12   understanding, Mr. Villa?
13           MR. VILLA:  It is, Your Honor.  I think
14   that Ms. Wild indicated to me -- to the group -- a
15   little while ago that I think there is a different
16   set of notes that perhaps the Court needs to look at.
17   But we're going to proceed with the number 1300, Mr.
18   Perez' motion for lost or destroyed evidence.
19           We asked to move up 1294 and 1295, the
20   suppression motions regarding Billy Cordova's
21   statements to at least start them this week, because
22   of, my understanding, the absence of Eric Duran made
23   it so we couldn't do those motions for Mr. Baca, so
24   we're trying to fill, essentially, tomorrow with
25   those other suppression motions.  So we're going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3274

 1   start 1300 this morning.  And I believe that's the

 2   Government's understanding as well.

 3              THE COURT:  Is that correct, Mr.

 4   Castellano?  Ms. Armijo?

 5              MS. ARMIJO:  Yes, Your Honor.

 6              THE COURT:  Well, I reviewed the material

 7   on this lost or destroyed evidence.  We've had some

 8   discussion about this walker.  Certainly, we'll hear

 9   anything anybody wants to say, but it seems to me

10   that what you're doing, and unless I'm wrong and

11   don't understand how this area of law works, is that

12   I thought the Tenth Circuit had made it somewhat

13   clear that before you begin to get remedies for lost,

14   destroyed information, you were going to have to

15   establish a very heightened standard on the

16   defendant's part -- on the Government's part -- that

17   there was intentionality, bad faith, those sort of

18   things.

19              And here, it seems to me -- and again,

20   maybe I don't understand all the facts, but if there

21   was any sort of problem with the way the evidence was

22   handled, it was by the New Mexico State Police, and

23   not by the United States Attorney's Office.  And so

24   it's difficult to, A, impute any bad faith or the

25   heightened standards that are required to receive

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   relief to the Department of Justice, when those were
 2   the actors.  And secondly, it didn't seem to me that
 3   there was any bad faith, or -- here, it was more just
 4   a very negligent way of, perhaps, handling
 5   information that may not have been perceived as very
 6   important then, but now, as we get ready for trial
 7   against Mr. Perez, it looks a whole lot more
 8   important.
 9            So it seemed to me it was going to be
10   difficult for you to get to those high standards that
11   were necessary to get any sort of relief.  It seemed
12   to me that you may have a lot of impeachment
13   information here; you may be able to really nick the
14   Government around for some of the things they've
15   said, and representations they've made, and the
16   importance of the shank.  But it fell into the
17   cross-examination category rather than something the
18   Court should either instruct the jury, suppress
19   evidence, or those sort of things.
20            So those are my thoughts coming in, after
21   reading everything.
22            MR. VILLA:  And, Your Honor, I think that
23   there is a heightened standard, essentially bad
24   faith, with respect to Youngblood.  And Youngblood
25   says:  If there is potentially exculpatory evidence,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    in order to get some kind of relief, I think that the

2    Court has to find that the Government acted in bad

3    faith.  And I think it's interesting to note, you

4    know, in Youngblood, a jury instruction was given.

5    So --

6              THE COURT:  Let's do this:  I've kind of

7    lost track on time --

8              MR. VILLA:  Oh, sure.

9              THE COURT:  Why don't we take our morning

10   break, and I'll come back in.  Because I need to have

11   you talk to me fully, without being rushed, about

12   Youngblood.  So we'll be in recess for about 15

13   minutes.

14             MR. VILLA:  Yes, Your Honor.

15             (The Court stood in recess.)

16             THE COURT:  Everyone got an attorney?  Look

17   around, help your buddies out, so we can make sure

18   everybody has got an attorney.

19             All right.  While we're shifting Mr. Perez

20   around in his table, let me ask, Mr. Castellano --

21   everybody kind of be quiet.

22             Mr. Castellano, on the conflict motion, I

23   think I asked the same question I did of you on the

24   Davis motion; I'll ask it here:  There, you felt like

25   the ethics compelled Mr. Davis to be disqualified.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3277

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73278

1   Are you at that position where you think that Mr.

2   Lowry and his firm have to be disqualified, or are

3   you at a different position on this motion?

4            MR. CASTELLANO:  At this point, I think we

5   are at a slightly different position, just because

6   there is information that we don't know.  And we

7   don't know what we don't know at this point.  But on

8   its face, where we are now, it seems to be a lesser

9   of a problem than it was with Mr. Davis.  That's what

10  I can say based on what we have now.

11           THE COURT:  Okay.  All right.

12           MR. CASTELLANO:  I think the issue is still

13  looming, but it doesn't seem as strong as it did with

14  Mr. Davis.

15           THE COURT:  It looks to me like the Duran

16  Consent Decree, that the notes take care of

17  themselves.  I don't think they treat the class

18  members as clients of the firm.  So I'll explore that

19  a little more, but a quick look at that doesn't

20  indicate that they're treated as class members.  I'll

21  have to look at that, because I do think, in certain

22  situations, it sure looks to me like there is a close

23  similarity.  But there is something in the notes.  So

24  I think it's probably going to be a confidential

25  information problem.  And it looks like to me like,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3278

 1   if it's contained -- in other words, Mr. Lowry

 2   doesn't have any confidential information, and he's

 3   walled off, I'm not sure then I can then find that

 4   it's the same or a related case with the information.

 5   Even if there is some information there that might

 6   concern me.  So I'm at least moving or thinking in

 7   the direction of not granting that motion.  So that's

 8   kind of where I am.

 9           MR. CASTELLANO:  I agree.  I think the Eric

10   Duran issue seems like a lesser problem.  I guess one

11   thing we'll have to figure out with the class -- I

12   don't look at class actions often at all -- but I

13   assume in any class there could be conflicts within a

14   class.  And the attorneys representing them would

15   have to sort through any conflicts that are with the

16   class.  They still cannot represent people who are

17   completely within the class.  And I think that's what

18   we have to get to the heart of.

19           THE COURT:  Yeah, and that class was

20   certified so long ago, that class certification

21   decision was made so long ago that, you know,

22   conflicts that may exist now probably weren't

23   something that Judge Burciaga was thinking about, or

24   could have had knowledge about.  So it's probably a

25   different world now.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3279

```
 1                  MR. CASTELLANO:  It may be, Your Honor.
 2   And my understanding, which is very limited, from
 3   what Mr. Brewster told me, I think that all
 4   defendants who, I believe are Level 3 or higher may
 5   be members of the class.  So they have the different
 6   classifications levels, so that would, I believe,
 7   include probably everyone in this case who has been
 8   in the prison system at some point.
 9                  THE COURT:  All right.  Thank you, Mr.
10   Castellano.
11                  Did you want to say something on that, Mr.
12   Lowry?
13                  MR. LOWRY:  Your Honor, not particularly on
14   that.
15                  I just have one housekeeping matter that I
16   raised during the argument.  And I'd asked to get
17   the, what I call the confidential informant contracts
18   disclosed from the United States.  I mean, we're
19   still, you know, struggling to get that material.  I
20   think it's Brady and Giglio that should already have
21   been released.  But I think it helps us.  And the
22   reason I put on the Michael Flynn cooperation
23   agreement, so we could just understand the type of
24   language that's often used in those.  And I think it
25   would be helpful to pin down the Court's concerns
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3280

```
 1    about the confidential information, to have that, so
 2    we could talk more intelligently about waivers and
 3    the scope of, quote, "confidential information,"and
 4    how it was used.
 5              THE COURT:  Where are we on the production
 6    of those, Ms. Armijo?
 7              MS. ARMIJO:  Your Honor, I believe it was
 8    requested specifically towards the end of last week,
 9    or maybe even this weekend.  I think, when we spoke
10    on Saturday, actually.  And so Special Agent Acee
11    brought down documents with him this morning.  And I
12    have not had an opportunity to review them, but I
13    believe we are inclined to disclose all of that
14    information, as far as any paperwork.  And I say
15    "paperwork," because I don't believe we had an
16    official contract.  The FBI had a contract.  So there
17    is paperwork, but we will go ahead and disclose that,
18    that he had with Special Agent Acee.
19              THE COURT:  All right.  Why don't you take
20    a look at what they give you, Mr. Lowry.  If it's
21    different from what you're needing, then you can
22    reraise that issue.  But let's hold it off until you
23    get the documents, which look like you're going to
24    get today.  Is that acceptable?
25              MR. LOWRY:  Yes, it is, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3281

1            THE COURT:  All right.  Mr. Villa.

2            Now, let me just ask, because I may be

3    ignorant on this issue:  Is this Youngblood test the

4    same one that I use over in the civil context for

5    deciding whether I should give an adverse inference

6    instruction to a jury when there has been a

7    spoliation of evidence?  Is it the same analysis in

8    the civil area and the criminal area?  Because I'm

9    very familiar with the civil area; less so in the

10   criminal later.

11           MR. VILLA:  I don't think it is, Your

12   Honor.  But I also don't think Youngblood dictates

13   whether you give a jury instruction or not.  The

14   reason is, what I was getting to before I stepped

15   away, was they gave a jury instruction in Youngblood.

16   It was a dismissal at a higher sanction, when

17   evidence is destroyed.  And the Court came down and

18   said exactly as you said, Your Honor:  There has to

19   be bad faith on the part of Government in order to

20   get to a dismissal-type remedy under the due process

21   test.  The Youngblood court didn't say You can't give

22   a jury instruction, or some other remedy.  And I

23   think it's important to note that one of the reasons,

24   in Youngblood, for the holding they reached is there

25   was a jury instruction given.  I think the Court can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3282

```
 1    look at some other things.

 2            And Youngblood also is a different test

 3    than California versus Trombetta.  That's 1984.

 4    Youngblood did not overrule Trombetta.  And Trombetta

 5    deals -- and the distinction is, evidence that is

 6    apparently exculpatory before it's destroyed, right?

 7    Youngblood says it is exculpatory.  It's exculpatory,

 8    and the Government destroys it, and they do it in bad

 9    faith, the court can dismiss.  We haven't even asked

10    the Court for dismiss as a remedy.  We're asking for

11    suppression.  And I think the Court has the authority

12    to do that, if it found bad faith, and if the

13    evidence was exculpatory under Youngblood.

14            THE COURT:  What exactly are you

15    suppressing here?  I mean, if it's lost, what are we

16    suppressing?

17            MR. VILLA:  So what we would ask the Court

18    for the remedy to be is to suppress all the evidence

19    in connection with the walker.  So the photos that

20    the Government purports to say is Mr. Perez' walker,

21    the shanks that the Government purports to say came

22    from Mr. Perez' walker, the testimony from

23    cooperating witnesses, who by the way, never

24    mentioned Mr. Perez' walker until they cooperated in

25    this case; that the shanks came from Mr. Perez'
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3283

1    walker, the Court heard some of that testimony last

2    week.  We've listed a number of those things, both

3    our motion and our reply, the evidence that we've

4    identified that the Court ought to suppress, if it

5    finds either a Youngblood or a Trombetta violation.

6    And I think that's the appropriate remedy.

7         The alternative request we have of the

8    Court would be a jury instruction.  I think the Court

9    could probably give the jury instruction regardless

10   under the ideas of Youngblood and Trombetta.  But to

11   get to suppression, I think we need to establish a

12   Youngblood or a Trombetta violation.  But we haven't

13   asked, under the specific circumstances of this case,

14   for a dismissal.

15        And I think, to respond to the Court's

16   comment about, Well, the Department of Justice didn't

17   do it, or these prosecutors didn't do it:  I don't

18   think that's the standard.  I think that, clearly if

19   state actors were on the investigation team, and they

20   said:  This evidence is exculpatory to Mr. Perez, we

21   better throw it in the fireplace so he doesn't win

22   his case because we really want to get him, and the

23   United States Government decided they wanted to

24   prosecute the case because they have jurisdiction, I

25   don't think they're off the hook.  There is still a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3284

1    due process violation for which a remedy is due.  And

2    I think the same thing under Trombetta.  If the

3    agents are state actors, and they determine that --

4    there is an objective standard under Trombetta that

5    the evidence was apparently exculpatory, and then

6    they don't preserve it, it doesn't matter that

7    they're state actors and it's a federal prosecution.

8              And, Your Honor, I think that we believe

9    that we can establish, with the witnesses that we

10   have prepared to put on today and the evidence that

11   we submit, that there was both a Trombetta violation

12   and a Youngblood violation.  I mean, the Court will

13   have to make some, perhaps, credibility

14   determinations, when it comes to Youngblood and bad

15   faith.  But Trombetta is objective.  Did these

16   individuals know -- and you're going to -- some of

17   the evidence you're going to see today that is three

18   days after this alleged homicide, Mr. Perez was

19   interviewed, and he told Agent Palomares that STIU

20   had taken his walker that morning, or perhaps it was

21   the day before, and they had said there was a piece

22   missing from the walker.  And Mr. Perez said, "I

23   didn't do anything.  I don't know anything, it was

24   missing when I" --

25              THE COURT:  I thought I also read -- and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   correct me if I'm wrong -- that Mr. Perez said that

2   there was piece missing.  Did he also confirm that

3   there was piece missing?

4           MR. VILLA:  He didn't.  He says in the

5   statement --

6           THE COURT:  Did or did not?

7           MR. VILLA:  He did not.  He says in the

8   statement that STIU told him there was a piece

9   missing, and then Mr. Perez says, "I'm not involved

10  in this.  And I don't know who is involved.  And I

11  was in the shower."  So three days after the

12  homicide, it's apparent that the walker is

13  exculpatory, because Mr. Perez is denying any

14  involvement, and he's denying that he has any

15  knowledge.

16          And the only way we figure that out is, if

17  we have the walker, and we have the alleged shanks,

18  and we can do what the Government says they can do.

19  I don't know how.  They've told this Court many, many

20  times that the shanks demonstrate a perfect fit with

21  the walker.  Well, those are the types of tests or

22  other things that Trombetta talks about.  So the next

23  step of Trombetta is, if the evidence was apparently

24  exculpatory before it was lost or destroyed, then,

25  can you show -- what would you have done with that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3286

1    evidence?  And we have our expert witness here today

2    prepared to talk about that, and I think we can get

3    that out through some of the testimony you're going

4    to hear today.  But is there a perfect fit?  Could

5    these pieces have come from this walker?  Does it

6    look the same as Mr. Perez' walker?  Is it the same

7    type of metal?  Is it the same color?  Would it fit

8    in the location where the piece was missing?  Those

9    types of things, I think the Court has to analyze in

10   determining a Trombetta violation.  I mean,

11   Youngblood is, yes, you have to look at bad faith.

12   But with respect to Trombetta, those are the issues

13   that we intend to present to the Court.

14           THE COURT:  All right.  Are you ready to

15   put on evidence?

16           MR. VILLA:  Yes, Your Honor.

17           THE COURT:  Mr. Beck, are you handling the

18   argument on this?

19           MR. BECK:  I'm going to handle some

20   portions of the legal argument, so can I respond to

21   some of those legal principles.

22           THE COURT:  All right.  Do you want to make

23   an opening statement?

24           MR. BECK:  Sure.  I think the Court's

25   initial argument -- initial impressions are correct

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3287

```
 1    here, that there is really no basis to suppress the
 2    evidence, and there wouldn't be evidence suppressed.
 3    There wasn't any apparently exculpatory nature.
 4            And I'll point the Court to a couple of
 5    Tenth Circuit decisions:  United States against
 6    Glass, which is 128 F.3d 1398, a 1997 decision, and
 7    then a 2006 decision, United States against
 8    Pettigrew, 468 F.3d 626.  And those cases don't deal
 9    with -- I guess what we're talking about on the
10    substantive law, but the procedural law.  And what
11    they say is that the Court doesn't need to hold an
12    evidentiary hearing if there aren't contested
13    materials of fact, sort of a civil standard test, as
14    I would take it here.
15            And if the Court looks at the pleadings in
16    this case, and Mr. Perez' contentions, the things
17    that he contends aren't material facts to suppress
18    the evidence.  What it is, is it's basically "he said
19    she said."  Perez said he wasn't involved.  But
20    everyone agrees that the shanks came from the walker;
21    everyone agrees that they fit the walker.  Mr. Perez
22    says, "They took it while I was in the shower."
23            So, really, it's a question of who is the
24    jury going to believe?  And that is a question for
25    the jury.  To suppress evidence of a walker that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3288

 1   doesn't exist isn't an appropriate remedy.  So I

 2   think that was the Court's impression.  And I think

 3   it's a correct one, is that really what -- I mean,

 4   everyone agrees that there was a walker; the shanks

 5   came from the walker; and that the walker is gone

 6   now.  Really, it's a question, will the jury believe

 7   the United States' cooperators and officer witnesses,

 8   and the photographs that they've seen, or will they

 9   believe Mr. Perez' story that:  Yes, it was my walker

10   that they took, but I didn't have any part in putting

11   the shanks there.

12          And so -- and the Court can also consider

13   Mr. Perez' statements that were played, I think, a

14   couple weeks ago in court, where he admits that he

15   gave the walker so that the shanks could be made.

16          So I think the point that there wasn't -- I

17   think the point that these statements only came after

18   people were cooperating, I think, is inaccurate.  I

19   think Mr. Perez' statements were the first times that

20   the walker came into the picture, that they came from

21   his shank (sic).

22          So I expect that, if the Court holds a

23   hearing, that's the evidence that will come out, is

24   that everyone agrees that the walker doesn't exist;

25   everyone agrees that the shanks came from the walker.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          I also think that the Court -- I also think

2     that the Court had a point about look at Corrections

3     Department separately from the United States

4     Department of Justice, with the nuance that I think

5     Mr. Villa is correct that, if there is a violation of

6     a person's constitutional rights, regardless whether

7     that was the state actor, you know, the state

8     counterpart or the federal government, obviously

9     that's grounds for suppression.

10          THE COURT:  Yeah, I would agree with that.

11     I hope I wasn't -- didn't bungle that that badly.

12     But I was trying to get on this -- all the time I

13     have suppression hearings where it's the State

14     Police; you know, they're doing it, and we determine

15     whether it's a violation.

16          But here, I was trying to think of the

17     parallels in the civil area, where you have to prove

18     bad faith, it would seem to me that it's a little

19     more difficult then to take away probative evidence

20     from the federal government that --

21          MR. BECK:  Right.  And I think that's where

22     the nuance comes in about objectively exculpatory

23     evidence.  And there has to be some quantum of proof

24     that it is exculpatory if the evidence is lost.  So

25     if the Court looks at the Court's Harry decision in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3290

```
 1   2011 -- I think it carried on into 2012, that case --
 2   you know, there were text messages that everyone
 3   agreed were lost.  And there was evidence that those
 4   were exculpatory text messages that were lost by the
 5   Government.
 6           The evidence, I assume the Court will hear
 7   in the coming day, is that there isn't any dispute --
 8   I mean, there isn't any evidence that this was
 9   exculpatory evidence, as opposed to inculpatory
10   evidence.
11           So, I think, if the standard were that
12   helpful evidence to the Government is lost, or didn't
13   appear, whether we're talking about the walker, or
14   whether we're talking about the paperwork that we'll
15   hear about later today, there would be very few cases
16   that actually went to the jury, if any.  Because
17   either we have the evidence, and so a defendant is
18   going to plead guilty, or we don't have the evidence
19   and the Court dismisses the charges.
20           THE COURT:  Do you have any thoughts, so as
21   I keep this law in mind, this distinction that Mr.
22   Villa is drawing between Youngblood and Trombetta,
23   which standard applies here, and what standard I'm
24   going to need to apply in this case?
25           MR. BECK:  Not currently.  But I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3291

```
 1    certainly -- I anticipate having some thoughts about
 2    that by the time we're done today.  So I have to look
 3    at that.  I haven't looked at that issue.
 4              THE COURT:  You said in your briefing --
 5    Mr. Villa, you cited a lot to a case I wrote back in
 6    2014, about United States v. Harry.  And my memory of
 7    that case, and then what you put in there about the
 8    case still seemed to talk about bad faith.  Isn't
 9    that still going to be one of the things you're going
10    to have to establish, is going to be bad faith?
11              MR. VILLA:  Your Honor, I think, yes, for
12    purposes of a due process Youngblood-type violation,
13    I think we have to get to bad faith.
14              THE COURT:  I'm looking at what you say on
15    page 10, you're quoting me, you say:  "The inquiry
16    into bad faith must necessarily turn on the
17    Government's knowledge of the exculpatory value of
18    the evidence at the time it was lost or destroyed.
19    And if I understand the facts at the time, is that
20    they were not focusing on Mr. Perez at all at the
21    time that they were doing the initial arrest,
22    investigation, and prosecution.  It was only later
23    that any government began to focus on Mr. Perez.  Am
24    I wrong on that?
25              MR. VILLA:  Well, to some degree, I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3292

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 86 of 3293

```
 1   you are, and I think that's why we have to elicit

 2   some of these facts.  I think that your quote there

 3   on page 10 from Harry doesn't change my analysis.

 4   The inquiry into bad faith must necessarily turn on

 5   the Government's knowledge of exculpatory evidence.

 6   So if the Government knows it's exculpatory, it's

 7   obviously exculpatory, we have to show bad faith.

 8   That's Youngblood.

 9           But Trombetta, if it's apparently

10   exculpatory or potential exculpatory, right, this

11   objective standard, then we don't have to show bad

12   faith.

13           And the next step under Trombetta is, Well,

14   what could you have done if they had preserved this

15   stuff and done their job the way they were supposed

16   to?

17           And I disagree with a couple of the factual

18   allegations.  We don't agree that the shanks came

19   from the walker.  We don't agree that the shanks fit

20   the walker.  We don't know that because the evidence

21   was lost.  That's the second part of Trombetta.

22   We're not able to make that determination.

23           And we disagree -- I mean, whether Agent

24   Palomares is willing to admit to it or not, he was

25   told by Mr. Perez that the walker was in play.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   because, under Trombetta, we submit it's an objective

 2   standard, it doesn't matter what he subjectively

 3   believed.

 4          THE COURT:  But aren't you going to have to

 5   establish that it was the exculpatory value of Mr.

 6   Perez' walker that was apparent; not that the walker

 7   was in play, but that the exculpatory value of the

 8   walker was apparent.  If anything, it was

 9   inculpatory.  It was establishing that Mr. Perez was

10   involved, or at least something that he had was

11   involved.  And they never did -- the state folks

12   never did anything with it.

13          MR. VILLA:  That's the second piece.  And I

14   think you'll hear evidence about that.  And that gets

15   me to the wheelchair program, in that there was

16   evidence within the same timeframe, within a couple

17   of weeks, from the informants primarily, that metal

18   was coming into this particular pod from the

19   wheelchair program.

20          Jason Wright is here today.  He's -- I

21   believe he will testify about that.  He told STIU

22   agents -- or excuse me, a couple of folks told STIU

23   agents that Jason Wright, as well as three or four

24   others in blue pod were getting metal into the

25   wheelchair program.


SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                    1-800-669-9492
BEAN & ASSOCIATES, Inc.              e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3294

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3295

1          It's our contention that it is absolutely

2   plausible that these shanks were not from Mr. Perez'

3   walker, but from another walker or another source out

4   of the wheelchair program.  And they knew that within

5   a couple weeks of this investigation.

6          We don't know when the walker was disposed

7   of.  We don't even know -- and, Your Honor, I'll show

8   you on the Elmo here -- this photo, which is going to

9   be admitted, because the Government agrees, is one of

10  the few photos that have been produced in discovery,

11  that we think the Government is going to say is Mr.

12  Perez' walker.  But we don't know that.  There isn't

13  a single piece of paper in this evidence documenting

14  the confiscation of Mr. Perez' walker.  The

15  centerpiece of the Government's case against Mr.

16  Perez here is that the shanks came from a walker.  I

17  don't know if they're going to say it's this walker.

18  It's produced in discovery along with some other

19  pictures of the shank, and the same sort of set of

20  photographs.  So I think that's the Government's

21  theory.  But I don't know.

22          I don't know what Agent Palomares, or the

23  other individuals who are going to testify today, are

24  going to say about this walker.  Why was it taken

25  into this room, wherever this room is, looks like

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3295

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 89

 1    maybe somebody's office.  Why was it photographed?

 2              And then, when you take that information,

 3    and you couple it with what Mr. Perez' says to Agent

 4    Palomares, which is, I don't know.  I mean, the piece

 5    is missing, but that doesn't mean it had anything to

 6    do with this murder.  Maybe it did; maybe it didn't.

 7    But Mr. Perez tells him, "I'm not involved.  I didn't

 8    do anything wrong.  Tell STIU I didn't do anything

 9    wrong."

10              So the value, then, becomes exculpatory

11    immediately, or the potential value, because there is

12    metal coming in from the wheelchair program.  There

13    is information within the first two weeks that there

14    is lots and lots of shanks in this pod.  There is

15    contradictory information about which one of the

16    actual hands-on killers used which shank.

17              And, therefore, having the walker -- I

18    mean, perhaps, if you have it, and you can do the

19    testing on it, it becomes inculpatory.  But it also

20    might be exculpatory.  So it has potential

21    exculpatory value, and, therefore, you preserve it.

22    It was seized for a reason.  It was photographed for

23    a reason.  This photograph -- I don't know when it

24    was taken, we're hoping to explore that with these

25    witnesses.  But I think that all dictates whether

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   these agents knew it had potential exculpatory value

 2   before they lost or destroyed it.

 3            THE COURT:  All right.  Well, are you ready

 4   to put on your first witness or evidence?

 5            MR. VILLA:  We are.  There is a little bit

 6   of housekeeping.  So that the Government and Mr.

 7   Perez have stipulated to all these exhibits, which

 8   they're all marked, and we can move to admit them

 9   now, and we'll use them as we go along, if that's

10   okay with the Court.

11            THE COURT:  All right.  Why don't you go

12   ahead and move their admission?

13            MR. VILLA:  So, Your Honor, we've labeled

14   them RP, for Rudy Perez, and then A through MM.

15            THE COURT:  A through MM?  So is that A

16   through Z, and then you go back and it's AA through

17   MM?

18            MR. VILLA:  Yes, Your Honor.  So with the

19   Government's agreement, we would move to admit all of

20   those pieces of evidence.  Primarily it's reports,

21   photographs, and there is one video.  I could go

22   through each, if you'd like.

23            THE COURT:  All right.  Well, I'll go ahead

24   and admit these.  In the future, on the defendants'

25   side -- this is one area that I do have a little bit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3297

```
 1   of a rule -- you go A to Z, and then when you start
 2   going back, it's AA, AB, AC.  And so then, if you
 3   keep going, it's BA, BB, BC.  So a little bit of
 4   order there; otherwise, we get into seven or eight
 5   Zs, and my mind begins to shut down when we have that
 6   much lettering going on.
 7            But I'll go ahead and admit these.  Any
 8   objection, Mr. Castellano?  Are you going to, or Ms.
 9   Armijo?
10            MS. ARMIJO:  No, Your Honor, no objection.
11            THE COURT:  All right.  Any defendant have
12   any objection?
13            Before I start taking evidence, any
14   defendant want to say anything on this motion to
15   suppress?  Anything you want to say?
16            All right.  Mr. Villa.
17            MR. VILLA:  The last other piece of
18   housekeeping is we've also agreed that the Court can
19   incorporate the prior testimony, to the extent it
20   matters, and we'll point the Court to that from last
21   week, with respect to this matter, as well as the
22   suppression hearings that we're going to hear later
23   today or tomorrow, including the Government's
24   exhibits that have been admitted already.
25            THE COURT:  All right.  You may have to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3298

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3299

```
 1   help me figure out what's relevant out of that.
 2              MR. VILLA:  Absolutely.
 3              THE COURT:  All right.
 4              MR. VILLA:  With that, Your Honor, we would
 5   call Agent Palomares from the New Mexico State
 6   Police.
 7              THE COURT:  Mr. Palomares, if you'll come
 8   up and stand next to the witness box on my right,
 9   your left.  Before you're seated, Ms. Standridge, my
10   courtroom deputy, will swear you in.
11                      ANTONIO PALOMARES,
12         after having been first duly sworn under oath,
13         was questioned and testified as follows:
14                      DIRECT EXAMINATION
15              THE CLERK:  Please be seated and state your
16   name for the record.
17              THE WITNESS:  Antonio Palomares.
18              THE COURT:  Mr. Palomares.  Mr. Villa.
19              MR. VILLA:  Thank you, Your Honor.
20   BY MR. VILLA:
21         Q.   Mr. Palomares, how are you employed?
22         A.   I'm employed by New Mexico State Police.
23         Q.   What is your title?
24         A.   I'm a sergeant.
25         Q.   So is it okay if I refer to you as Sergeant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3299

```
 1    Palomares?
 2         A.   Yes, sir.
 3         Q.   How long have you been employed by the New
 4    Mexico State Police?
 5         A.   Eleven years.
 6         Q.   Prior to that, were you in law enforcement?
 7         A.   No.
 8         Q.   When you became employed with the New
 9    Mexico State Police, did you go to the law
10    enforcement academy?
11         A.   Yes, I did.
12         Q.   That's in Santa Fe?
13         A.   Yes.
14         Q.   You became a certified law enforcement
15    officer?
16         A.   Yes.
17         Q.   What year was that?
18         A.   2006.
19         Q.   At the academy did you receive training
20    with respect to investigations?
21         A.   I was an officer, so not at the time.
22         Q.   When did you become -- well, let me ask you
23    this:  After you were an officer and worked on the
24    streets, did you do patrol?
25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3300

```
 1          Q.   Did you -- at some point you become an
 2     investigator or detective?
 3          A.   Yes, I did.
 4          Q.   When was that?
 5          A.   2014.
 6          Q.   And was there some process that you went
 7     through to become -- what do they call it?
 8     Investigator?  Detective?
 9          A.   Yes, basically, an agent for State Police
10     Investigations Bureau.
11          Q.   So can I refer to that as a detective?
12          A.   Yes.
13          Q.   What process did you go through to become a
14     detective?
15          A.   Oh, there is some tests you've got to take
16     through the State Police, some interviews.  And
17     eventually they choose the most qualified person for
18     the position.
19          Q.   Do you receive training at some point about
20     conducting investigations?
21          A.   Yes.
22          Q.   Is that after you become an investigator?
23          A.   Correct.
24          Q.   Can you tell me briefly about that
25     training?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3301

1    A.   There is different trainings, whichever we

2    put in for some type of investigations, interviews,

3    how to deal with -- so it's interviews, any type of

4    confidential informants.

5    Q.   So, as of 2014, you were a detective?

6    A.   I promoted to detective in 2014.  I worked

7    as a detective for three years, and last year I

8    promoted to sergeant.  Now I'm a sergeant with the

9    Investigations Bureau.

10   Q.   So you supervise other investigators and

11   detectives?

12   A.   Yes, sir.

13   Q.   When did you -- what month in 2014 did you

14   become a detective?

15   A.   It was the first of the year.

16   Q.   January?

17   A.   Yes, sir.

18   Q.   And the training you received, was that

19   before January or during January?

20   A.   It was after.

21   Q.   After?

22   A.   Yes.

23   Q.   Can you tell me what month you received the

24   training?

25   A.   I don't recall.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   In the spring and summer?
 2          A.   It would be hard to say.  I don't recall.
 3    There is different classes that we attend.
 4          Q.   Were you trained on evidence collection?
 5          A.   I don't think so.
 6          Q.   What about evidence preservation?
 7          A.   I don't think so.
 8          Q.   What were you trained on as an investigator
 9    with respect to evidence for a crime?
10          A.   Well, I mean, I was trained as evidence
11    since 2006, in the academy.
12          Q.   Were you trained then about collecting
13    evidence?
14          A.   Yes.
15          Q.   And preserving evidence?
16          A.   Correct.
17          Q.   And when I say "preserving evidence," you
18    understand I mean not destroying evidence, losing
19    evidence; making sure that there is a chain of
20    custody for the evidence?
21          A.   Correct.
22          Q.   Is that fair?
23          A.   Yes.
24          Q.   And were you trained on the Department of
25    Public Safety's policies and procedures with respect
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3303

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3304

1    to evidence and property handling?

2        A.    Yes.

3        Q.    All right.  I'm going to show you on your

4    screen there -- you should be able to see that --

5    what's already been admitted as Defendant's Exhibit

6    RP-MM.  Have seen that before?

7        A.    I seen it.  I haven't seen it lately, but

8    yes, that's evidence property handling from the

9    Department of Public Safety.

10        Q.    Is that the policy and procedure that was

11    in effect in 2014 for the Department of Public

12    Safety?

13        A.    I'm not sure.  The policies change over

14    time.  So I don't know if that's the same one or not.

15        Q.    Are you able to tell me when this

16    particular policy was changed or amended?  I'll let

17    you answer that question?

18        A.    According to the one we have here, it says

19    effective date, 3/12/2012.

20        Q.    And can you tell me when, if you know, or

21    if ever this particular policy was changed?

22        A.    I don't know that.

23        Q.    Would you agree with me that this was the

24    appropriate policy in effect, at least as of March

25    12, 2012?

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1        A.   Yes.

 2        Q.   This is the policy that you, as a State

 3   Police Officer, were required to know about, right?

 4        A.   Correct.

 5        Q.   And to follow?

 6        A.   Yes.

 7             MS. JACKS:   For the record, is there an

 8   exhibit number?

 9             MR. VILLA:   Yes, it's RP-MM.

10        Q.   Agent Palomares, you investigated the

11   homicide -- the alleged homicide of Javier Molina

12   that occurred at the Southern New Mexico Correctional

13   Facility; is that true?

14        A.   I did.

15        Q.   And that investigation began March 7, 2014?

16        A.   Correct.

17        Q.   Let me ask you this:   You came to the

18   Southern New Mexico Correctional Facility that

19   evening about 7:15, March the 7th; is that correct?

20        A.   Yes.

21        Q.   And following this investigation, initially

22   at least, you prepared some search warrants for DNA?

23        A.   Correct.

24        Q.   And those were individuals that you

25   believed might have had a role in this investigation;

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE                                                      1-800-669-9492
                                                            e-mail: info@litsupport.com

DNM 3305

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3306

```
 1    correct?
 2         A.   Yes.
 3         Q.   I'm going to show you what has already been
 4    admitted as Defendant's Exhibit RP-D.  It is a search
 5    warrant for Jerry Montoya; correct?
 6         A.   Yes.
 7         Q.   I'm going to turn the page to the next
 8    page.  This is an affidavit for search warrant for
 9    that same Jerry Montoya?
10         A.   Yes.
11         Q.   You prepared this affidavit; correct --
12         A.   I did.
13         Q.   -- based on, at least part of the
14    investigation you were conducting of the Javier
15    Molina homicide?
16         A.   Yes.
17         Q.   Now, you understood that at least on March
18    7, 2014, Mr. Molina had been assaulted by at least
19    two inmates in the Southern New Mexico Correctional
20    Facility?
21         A.   Two inmates or four inmates?
22         Q.   Well, when I say assaulted, I mean the
23    individuals who were actually seen stabbing him.
24         A.   I don't understand your question.  I mean,
25    there was four people involved.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3306

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100 of 307

1     Q.   Okay.  Why don't you tell me who the four

2     people were involved, as you understood it?

3     A.   It was Jerry Armenta; Jerry -- I forgot his

4     last name.  I'd have to see the paperwork.

5     Q.   Would that have been Jerry Montoya?

6     A.   Yes.  Mario Rodriguez and Timothy Martinez.

7     Q.   And that evening, when you came to

8     Southern, you were shown a video of the assault;

9     correct?

10    A.   Correct.

11    Q.   That was a video that is captured from

12    video cameras within the pod where the assault

13    occurred?

14    A.   Yes.

15    Q.   And on that video, you were -- or at least

16    informed by others the identities of these four

17    individuals that were involved in the assault?

18    A.   Yes.

19    Q.   Who informed you of that?

20    A.   It was -- I don't recall names.  STIU from

21    Corrections.

22    Q.   What is STIU?

23    A.   Security Threat Intelligence Unit.

24    Basically, correctional officers.

25    Q.   Were they assisting you in this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3307

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 101

1   investigation?

2        A.   Yes.  I mean, they were on scene there.

3   They work there.

4        Q.   They were helping you identify who these

5   individuals were?

6        A.   Correct.

7        Q.   Now, would you agree with me that the video

8   that you saw, you saw it about 8:20 p.m. that

9   evening?

10        A.   That's fair to say.

11        Q.   Okay.  And I'm not actually going to play

12   this video.  It's already been admitted as evidence

13   as RP-C.  The video of the Javier Molina murder,

14   would you -- if you recall, is approximately 17, 18

15   minutes long?

16        A.   Possibly, yes.

17        Q.   Let me show you Exhibit RP-E.  This is a

18   New Mexico Correctional Department Inmate Misconduct

19   Report prepared by -- I'll show you the last page,

20   second to the last page -- Daniel Blanco?

21        A.   Okay.

22        Q.   And it indicates Daniel Blanco is a

23   Captain?

24        A.   Yes.

25        Q.   Who is Captain Daniel Blanco?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3308

```
 1        A.    At the time he was a Captain for STIU at
 2   the Corrections Department.
 3        Q.    And did you work with him in investigating
 4   the Javier Molina homicide?
 5        A.    Yes, he was there as well.
 6        Q.    Now, this particular document that I've
 7   shown you discusses timeframes from the video of the
 8   Javier Molina homicide, does it not?
 9        A.    I haven't read it.
10        Q.    Have you ever seen this document before?
11        A.    Yes.
12        Q.    Okay.  Do you remember when the last time
13   you read it?
14        A.    I don't remember.
15        Q.    Okay.  Do you agree with me that this
16   document discusses various timeframes as things occur
17   in the video?
18        A.    I can't agree with it because I haven't
19   read it.
20        Q.    Would you like to look at it?
21        A.    Sure.
22              MR. VILLA:  May I approach?
23              THE COURT:  You may.
24        Q.    Have you read the document?
25        A.    I read the first part.  It shows times and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

1    dates.

2        Q.   And do you recall, when you watched the

3    video, knowing that there were times and dates

4    related to that video?

5        A.   Yes, sir.

6        Q.   And did you watch the video with Captain

7    Blanco?

8        A.   I don't know if he was there at the time I

9    was shown the video.  Numerous STIU members were

10   there at the scene of the video.  So I'm not sure who

11   was there at the time.  But I was shown a video by

12   STIU.

13       Q.   Where were you when you were shown the

14   video?

15       A.   I believe it was in the STIU office.

16       Q.   Whose office?

17       A.   STIU.

18       Q.   It's just generally the STIU, or is there

19   an individual in STIU that has an office?

20       A.   It's a squad room for STIU.  They have

21   their own cubicles or computers.

22       Q.   It's what kind of room?  I'm sorry?

23       A.   It's a squad room where they have their

24   computers.

25       Q.   A squad room?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3310

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3311

```
1          A.    Yes.

2          Q.    So you were there, and there were a number

3    of other individuals there?

4          A.    Correct.

5          Q.    How did they get the video?

6          A.    How did they get it?

7          Q.    Well, let me back up a little bit.

8                The video is from within the pod; correct?

9          A.    Correct.

10         Q.    There is a couple of different camera

11   angles?

12         A.    Yes.

13         Q.    And the camera angles cover the entire pod?

14         A.    Correct.

15         Q.    And so my question to you is:  Do you know

16   how that video came from wherever it was recording

17   from the pod into the STIU squad room where you were

18   able to view it?

19         A.    I don't know how that works.  I was shown a

20   video.  So I don't know how they -- I wasn't sure how

21   they got video.  I'm not sure of your question.

22         Q.    Okay.  So you don't know?

23         A.    I don't know.  I mean, I was shown a video.

24         Q.    But you don't know how they captured it?

25         A.    It captures the pod with two different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3311

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3312

```
 1    angles on the camera.

 2         Q.   I understand that.  But you don't know how

 3    whatever you were being shown in the squad room was

 4    recorded so that you could see it?

 5         A.   Right, yes.

 6         Q.   You don't know that?  Is that true?  I

 7    mean, you didn't ask them:  How did you record this

 8    so I can watch it here now?

 9         A.   No, I didn't go into that detail.

10         Q.   Did you ask them how far back the video

11    would capture recordings before it, say, recorded

12    over or deleted?

13         A.   No.

14         Q.   Were you ever shown any other video beside

15    the video you saw at the STIU squad room?

16         A.   I don't think so.

17         Q.   And the video, you were able to use for the

18    preparation of your affidavit for a search warrant

19    for Jerry Montoya; is that true?

20         A.   Yes.

21         Q.   And on -- I believe -- excuse me, starting

22    at page 3 of your affidavit -- it indicates that

23    Sergeant -- the last paragraph on the bottom there --

24    Sergeant Archuleta advised that 1 A B pod video

25    cameras recorded the incident; true?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3312

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106

```
 1            A.   Correct.

 2            Q.   So Sergeant Archuleta is of STIU?

 3            A.   Yes.

 4            Q.   He told you that?  Was Sergeant Archuleta

 5       the one that told you there was video from the pod?

 6            A.   Possibly.  He probably did.

 7            Q.   Okay.  And it indicates, the last sentence

 8       there, at 8:20 you were shown the video recordings of

 9       the incident?

10            A.   Correct.

11            Q.   All right.  Now, the remainder of your

12       affidavit documents the times and things that are

13       seen on the video; correct?

14            A.   Yes.

15            Q.   And it identifies the individuals in the

16       video; true?

17            A.   Correct.

18            Q.   And you didn't know who those individuals

19       were; correct?

20            A.   I was given names.

21            Q.   By STIU?

22            A.   Yes.

23            Q.   Because they knew who they were?

24            A.   Yes.

25            Q.   So they would have told you -- this is --
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

DNM 3313

 1    for instance, on your paragraph that I'm pointing to

 2    here, in the middle where it begins, "At

 3    approximately 5:16:03, Inmate Rodriguez" -- they told

 4    you when you're watching the video that's Inmate

 5    Rodriguez, right?

 6         A.   Yes.

 7         Q.   So they were helping you with this

 8    investigation?

 9         A.   Correct.

10         Q.   And you also identified Inmate Montoya as

11    an individual that's involved in the assault;

12    correct?

13         A.   Correct.

14         Q.   And Inmate Martinez; true?

15         A.   Yes.

16         Q.   That's Timothy Martinez?

17         A.   Yes.

18         Q.   And Inmate Jerry Armenta, which you

19    testified about; correct?

20         A.   Yes.

21         Q.   And all of those individuals, the

22    identities were provided to you by STIU?

23         A.   Correct.

24         Q.   The same individuals that were showing you

25    this video?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3314

```
 1          A.   Correct.

 2          Q.   And you used that to prepare this affidavit

 3   to get DNA from those four individuals; correct?

 4          A.   Yes.

 5          Q.   This particular document, RP-D, is just for

 6   Jerry Montoya.  But you used the same affidavit for

 7   the other three individuals, didn't you?

 8          A.   I used different search warrants; same

 9   affidavit for all four.

10          Q.   Okay.  Relying on the evidence from the

11   video?

12          A.   Correct.

13          Q.   And I'll represent to you, by agreement of

14   the prosecution, that this video is on RP-C, just so

15   that you know that.

16               But I wanted to make sure that, other than

17   the video you've discussed in your affidavit, did you

18   capture any other video in connection with this

19   investigation?

20          A.   No.

21          Q.   Did STIU, to your knowledge, capture any

22   other video with respect to this investigation?

23          A.   I don't know that.

24          Q.   Now, as you arrived at Southern -- and when

25   I say "Southern," I'm just referring to the prison;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3315

1    that's okay?

2         A.   Yes.

3         Q.   And when you arrived at Southern, there

4    were some other officers there from State Police

5    helping you with the investigation along with these

6    STIU officers; correct?

7         A.   Yes.

8         Q.   And a K-9 officer came with a K-9; correct?

9         A.   Yes, that was a correctional officer.

10        Q.   I'm sorry.  So there was a correctional

11   officer from Southern that had a K-9; right?

12        A.   Correct.

13        Q.   And the K-9 went into the pod where this

14   alleged homicide occurred, right?

15        A.   Yes.

16        Q.   What kind of K-9 was that?  Was it a drug

17   sniffing dog, or something else?

18        A.   I don't know that.

19        Q.   Do you know what the purpose of bringing

20   the K-9 into the pod was?

21        A.   Looking for any type of narcotics or -- I

22   wasn't sure, positive -- weapons.

23        Q.   Let me show you what has already been

24   admitted as Defendant's RP-F.  This is a diagram of

25   the lower cells anyway, in the pod where Javier

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3316

```
 1    Molina was allegedly murdered; correct?

 2         A.   Correct.

 3         Q.   And it indicates on the top of the pod is B

 4    pod 1 A?

 5         A.   Yes.

 6         Q.   Do you know if it's referred to shorthand

 7    as blue pod?

 8         A.   Yes, I believe so.

 9         Q.   Is it okay if I call it blue pod?

10         A.   Yes, that's fine.

11         Q.   So this first page of this exhibit shows

12    you where the cells are along the edges of the pod;

13    correct?

14         A.   Correct.

15         Q.   And the common room, and that sort of

16    thing?

17         A.   Yes.

18         Q.   And would you agree with me that these

19    cells are on the bottom floor of the pod, and the pod

20    is two floors?

21         A.   I believe that's the top floor.

22         Q.   Well -- so let me point you to the top of

23    this document where it says "depicting lower level"?

24         A.   Correct.

25         Q.   So this is the lower level of the pod?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3317

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113318

```
 1            A.   Yes.

 2            Q.   Now, I'll show you the second page, so you

 3     can see it.  That's the upper level of the pod;

 4     correct?

 5            A.   Correct.

 6            Q.   So the lower level of the pod -- and on

 7     this diagram, which is prepared, it indicates where

 8     certain things were found.  For instance, bloodstains

 9     are documented, where I'm pointing to the lower

10     right-hand corner of the diagram, near the main

11     entrance; is that true?

12            A.   Correct.

13            Q.   And you're aware here -- I'm pointing to

14     cell 115 -- that that's the cell where Mr. Rudy Perez

15     was housed?

16            A.   I believe so, yes.

17            Q.   Do you have any reason to believe that's

18     incorrect?

19            A.   No, sir.

20            Q.   Now, do you know that the K-9 went into

21     each of the cells in the pod?

22            A.   I believe so.

23            Q.   Are you aware that the K-9 apparently

24     alerted to cell -- some other cells -- but to cell

25     115?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I don't recall if it alerted to 115.   I

2  think it alerted to two cells.   I can't remember

3  which ones.

4      Q.   Do you know if any evidence was discovered

5  as a result of those alerts?

6      A.   I don't think so.

7      Q.   Now, I think you testified that you weren't

8  sure if the K-9 alerted to cell 115?

9      A.   I don't think any evidence was collected

10  from the K-9 search.

11      Q.   Okay.   I understand that.   But you weren't

12  sure if the K-9 had alerted to cell 115?

13      A.   I would have to review my reports.   I know

14  it alerted to two holding cells.   I'm not sure if 115

15  was one of those holding cells.

16      Q.   If I showed you your report, would that

17  refresh your recollection?

18      A.   Yes, sir.

19           MR. VILLA:   May I approach, Your Honor?

20           THE COURT:   You may.

21      Q.   Agent Palomares, let me show you the cover

22  of what's called Supplemental No. 2.   Is that a

23  report you prepared?

24      A.   Yes, I did.

25      Q.   And it begins at Bates 1591, so people can

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3319

```
 1   follow along.

 2            On Bates 1602, will you look at what I've

 3   highlighted.  Don't read it out loud, just let me

 4   know if that refreshes your recollection.

 5       A.   Yes, sir.  According to my reports, the K-9

 6   alerted to holding cell 108 and 115.

 7       Q.   115 being the cell that Mr. Perez was

 8   housed in?

 9       A.   Yes, sir.

10       Q.   But you don't know -- well, you know that

11   no evidence was recovered as a result of the alert,

12   but you don't know what the K-9 necessarily was

13   alerting for?

14       A.   Correct.

15       Q.   Whether it was drugs or bombs or weapons or

16   something else?

17       A.   I believe it was drugs at the time.

18       Q.   Now, a little while later, you were

19   present, were you not, for a debriefing -- this is

20   now March 8, 2014, at 4:30 a.m.?

21       A.   Yes.

22       Q.   And at that debriefing, there were agents

23   from the State Police present; correct?

24       A.   Correct.

25       Q.   And agents from -- well, I don't know if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3320

```
 1    they're agents -- but STIU officers from the
 2    Department of Corrections?
 3         A.   Yes.
 4         Q.   Who was present?
 5         A.   There was a lot of people there, basically
 6    involving -- from state police personnel to
 7    corrections personnel, from correctional officers to
 8    supervisors.
 9         Q.   What was the purpose of the debrief?
10         A.   The purpose of the investigation, to see if
11    we had any other leads at the time that we'd
12    investigate, just to make sure we cover everything on
13    our investigation.
14         Q.   And what were the leads that were discussed
15    at that point?
16         A.   At that point, it was just -- the only
17    information that we had was a video.  So, you know,
18    we wanted to make sure that we recover all the
19    evidence, conducted interviews.
20         Q.   And so, at some point, you did learn that
21    this alleged homicide on Javier Molina was carried
22    out purportedly as an SNM hit, I mean, it was
23    ordered; correct?
24         A.   Not on this date.
25         Q.   Well, not necessarily on March 7.  But you
```



SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                           1-800-669-9492
                                                              e-mail: info@litsupport.com

DNM 3321

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3322

1   learned at some point that this was allegedly an

2   SNM-ordered hit?

3        A.   Yes.

4        Q.   And on what date did you say you learned

5   that?

6        A.   I don't remember a date.  Possibly --

7   maybe -- once I -- well, we went back -- I went back

8   to the scene once, on March 7 -- well, March 8, we

9   left the location.  I went back on March 10, 2014.

10  At that point I learned there was some type of orders

11  that were sent to commit the crime.

12       Q.   You mean orders -- the orders from an SNM

13  Gang member to assault Javier Molina?

14       A.   Correct.

15       Q.   How did you learn that information?

16       A.   That was information that came through

17  STIU.

18       Q.   They provided you the information?

19       A.   Yes.

20       Q.   How did you understand they learned the

21  information?

22       A.   I wasn't sure.  I was assuming they spoke

23  to SNM -- to the inmates that were involved.  I'm not

24  sure.

25       Q.   And as you sit here today, do you know how

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3322

```
 1    they first discovered this alleged hit?

 2         A.    I wasn't sure.

 3         Q.    Are you aware that STIU discovered this on

 4    March 8, 2014?

 5         A.    No.

 6               MR. VILLA:  Well, let me -- may I approach

 7    again, Your Honor?

 8               THE COURT:  You may.

 9         Q.    I need to get this back from you, Agent.

10         A.    Okay.

11         Q.    That report of Captain Blanco's, that I

12    showed you, which is Defendant Rudy Perez's Exhibit

13    E, right above Mr. Blanco's signature, it indicates,

14    does it not, that on March 8, 2014, STIU members

15    conducted interviews with all SNM members housed in

16    Unit 1 A?

17         A.    Yes.

18         Q.    And 1 A, that's the blue pod, right?

19         A.    Yes.

20         Q.    And it indicates that, "At the conclusion

21    of the interviews information was obtained which

22    indicated Inmate Molina was to be moved on" --

23    parenthetical assaulted -- "due to paperwork that was

24    brought from Santa Fe with SNM members; correct?

25         A.    Is that a question?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3323

```
 1        Q.   This report indicates that, does it not?

 2        A.   Yes.

 3        Q.   And when you went back on March 10th, you

 4   learned about that as well?

 5        A.   I learned their orders came from -- we were

 6   told a name by the name of "Pup."  I can't remember

 7   his name.  That's what I learned, that the orders

 8   came from a different leader of the gang.

 9        Q.   And on March the 10th, you then conducted

10   some interviews yourself of some of the inmates;

11   correct?

12        A.   Correct.

13        Q.   Isn't it true that you interviewed Mr. Rudy

14   Perez?

15        A.   I did.

16        Q.   And when you interviewed him, he told you

17   that during the homicide he was in his room?

18        A.   Correct.

19        Q.   Right?

20        A.   Yes.

21        Q.   He said:  "If you don't believe me, you can

22   get the tape," right?

23        A.   Yes.

24        Q.   And do you recall whether you saw Mr.

25   Perez, from the video that you observed?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3324

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118

```
 1        A.   I don't recall my -- I was more concerned

 2   on the people involved with the incident.  There were

 3   numerous inmates that were in view.  I don't -- I

 4   didn't pay attention to that.  I was paying attention

 5   to the inmates who were involved in the altercation.

 6        Q.   And so you didn't see Mr. Perez being

 7   involved in the altercation?

 8        A.   No.

 9        Q.   And you did not ask for any video, say, of

10   the day before, a couple days before that, to try to

11   determine how this paperwork got passed around?

12        A.   No, sir.

13        Q.   Were you aware that the video system at

14   Southern went back approximately 23 days?

15        A.   No.

16        Q.   Did you ever ask that question?

17        A.   I don't recall.

18        Q.   Do you know if the STIU agents that were

19   involved in this investigation were aware of the

20   video system's capabilities?

21        A.   I don't know that.

22        Q.   And during the interview that you conducted

23   of Mr. Perez, he told you that STIU took his walker

24   from him, didn't he?

25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            Q.   He didn't tell you that it was a
 2     wheelchair; he told you it was a walker?
 3            A.   Correct.
 4            Q.   And he told you that STIU had told him that
 5     there was a piece missing from his walker, right?
 6            A.   He said something was missing from his
 7     walker.
 8            Q.   And that was the reason STIU took it from
 9     him?
10            MS. ARMIJO:   Objection; calls for
11     speculation.
12            THE COURT:   Well, I'm going to allow him to
13     testify, because I think a lot of this goes to -- I'm
14     still focusing on bad faith.   So I've got to know
15     what his knowledge is.   And if he's -- if he has some
16     idea as to where evidence is or things, I think that
17     may play into it, so I'm going to probably be fairly
18     broad here.   Overruled.
19     BY MR. VILLA:
20            Q.   Go ahead, Agent.
21            A.   He said, "They took it away from me," so I
22     understood as correctional officers.
23            Q.   And you understood that the reason -- or at
24     least you suspected that the reason the walker was
25     taken from him was related to a piece being missing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from it?

2         A.   Correct.

3         Q.   And he said that it had just happened; they

4    had just taken it from him, right?

5              MS. ARMIJO:  Your Honor, I'm going to

6    object to the leading nature now, at this point.

7              THE COURT:  Well, I'm assuming that this is

8    more your witness than it is Mr. Villa's.  So I'm

9    going to let him get the information out however he

10   wants.

11             MS. ARMIJO:  Your Honor, I just note that

12   he is not in any way appeared to be hostile.  And

13   this is his burden.  So we would object, because

14   there is no hostility here.  And he should be put to

15   the same rules as all parties.

16             THE COURT:  Well, I'm going to let him

17   conduct the examination the way he wants.  Overruled.

18        Q.   Do you remember the question?

19        A.   Can you replay again?  Repeat?

20        Q.   Sure.  Mr. Perez told you that it had just

21   happened, they had just taken the walker?

22        A.   Yes, he mentioned something about his

23   walker taken away from him on March 8 -- I'm sorry,

24   March 10th.

25        Q.   Just a couple days after the homicide?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3327

```
 1        A.   Correct.

 2        Q.   The homicide was March 7?

 3        A.   Yes, sir.

 4        Q.   And you were there to talk to him about the

 5   Javier Molina homicide?

 6        A.   Yes, that was on March 10th.

 7        Q.   And in response to the questions you had of

 8   him about the Javier Molina homicide, he conveys to

 9   you that his walker had been taken from him?

10        A.   Correct.

11        Q.   And that's sort of close to the beginning

12   of the interview; do you remember that?

13        A.   Yes, sir, I think so.

14        Q.   And later in the interview he repeats to

15   you again that they said -- "they" being STIU or a

16   CO -- that a piece was missing off of his walker?

17        A.   Correct.

18        Q.   And he told you that he thought it came up

19   missing when he was in the shower?

20        A.   Yes.

21        Q.   He told you he didn't know who took it,

22   right?

23        A.   He knew, he had an idea, and he was going

24   to handle it on his own.

25        Q.   Okay.  So he said:  I suspect I know who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3328

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123329

```
 1   took it -- didn't tell you any names -- but said he
 2   was going to take care of it?
 3        A.   Correct.
 4        Q.   Okay.  And he also told you, did he not,
 5   that -- referring to the homicide of Javier Molina --
 6   that he didn't know there was anything going on; he
 7   didn't know there was problem with Javier Molina?
 8        A.   Correct.
 9        Q.   He didn't know that -- if this was a hit,
10   he didn't know it was going to happen?
11        A.   Correct.
12        Q.   And he wasn't involved?
13        A.   Correct.
14        Q.   So let me back up.  Well, let's do this.
15             MR. VILLA:  May I approach, Your Honor?
16        Q.   Agent Palomares, I'm showing you what's
17   been already admitted as Mr. Perez' Exhibit LL.  It's
18   a transcript of the interview that you and I just
19   discussed, is it not?
20        A.   I'm not sure I have ever seen this paper
21   before.
22        Q.   Would you like to go ahead and look at it?
23             THE COURT:  Ms. Fox-Young, why don't you
24   check on Mr. Perez, to make sure -- this is all his
25   stuff here, so make sure he's doing okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123

```
 1                    MR. VILLA:  Thank you, Your Honor.

 2                    THE COURT:  Mr. Villa.

 3          Q.   Would you like to look at that, Agent, to

 4     see if you recognize it?

 5          A.   I've never seen it.  What do you mean to

 6     "look at it"?

 7          Q.   Let's do it this way:  The cover page is

 8     State of New Mexico versus Jerry Armenta, right?

 9          A.   Yes, sir.

10          Q.   And there was a state prosecution of Jeremy

11     Armenta, was there not?

12          A.   Yes.

13          Q.   You were the case agent for that

14     prosecution on that case, were you not?

15          A.   Yes.

16          Q.   And on the cover page it has listed an

17     attorney for the State of New Mexico, right?

18          A.   Correct.

19          Q.   Who is that?

20          A.   It's Daniel Dougherty.

21          Q.   You worked with Mr. Dougherty in

22     prosecuting this case.

23          A.   Yes, I did.

24          Q.   And it has listed there the attorney for

25     Mr. Armenta; Gary Mitchell, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3330

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123

```
 1        A.   Correct.

 2        Q.   And isn't it true that Mr. Mitchell, at

 3   some point, interviewed you in preparation for this

 4   trial?

 5        A.   I don't recall.  It's been three or four

 6   years.

 7        Q.   So I'll represent to you this transcript

 8   came from the DA's office, and that's how I came to

 9   have it.  But you've never seen it before?

10        A.   I don't recall, sir.

11        Q.   Okay.  Well, maybe on a break I'll ask you

12   to look at it a little closer and see if it's the

13   transcript of the interview you and I were just

14   discussing.  Okay?

15        A.   I'm sure -- I mean -- it's the interview,

16   so I'm sure that's the interview that I conducted.

17        Q.   You are sure?

18        A.   Yes, sir.  I mean, if it's the paperwork,

19   yes.

20        Q.   Okay.  And I think I discussed this -- so

21   excuse me if I'm repeating myself -- but at any point

22   in time, did you ever go back, with the video system

23   at Southern, and look to see if you could determine

24   anything about this paperwork business on Javier

25   Molina?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 125

1      A.   Going back to Southern?

2      Q.   Going back and looking at the video.  Maybe

3  not the day of the homicide, maybe the day before, or

4  12 hours earlier, some point in time, to see if you

5  can discern how this whole hit was orchestrated.

6      A.   No, sir.

7      Q.   And you did understand -- I think you said

8  this -- but you understood that there was some

9  paperwork that came down from Santa Fe to Southern,

10  and was passed around in the pod, and that was the

11  paperwork that led to the hit on Javier Molina?

12      A.   Not at the time, I didn't know anything

13  about paperwork.  I knew that orders came from Santa

14  Fe.

15      Q.   Okay.  Did you, at any point in time, go

16  back into this video and look and see if you could

17  determine -- see somebody go in, say, Mr. Perez' room

18  and fiddling with his walker?

19      A.   I had no reason it, to go back.

20      Q.   Okay.  After the interview -- or let me

21  just make sure I'm clear with my question -- after

22  the interview of Rudy Perez, did you ever go back and

23  look at the video to see if you saw somebody taking

24  his walker or messing with his walker?

25      A.   I probably reviewed the video.  It was an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3332

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3333

1    ongoing investigation.  I wasn't concerned with the

2    walker.  I was concerned on the investigation that

3    took place at the time of the incident.

4         Q.   Okay.  And I'm not asking about your

5    concerns or your thoughts.  I'm just asking whether,

6    after this interview with Mr. Perez, you went back to

7    look at the video and see if you saw somebody going

8    into Mr. Perez' room and messing with his walker?

9         A.   I mean, that's my question.  I wasn't

10   concerned on the walker.  I was concerned on the

11   investigation.

12        Q.   And I believe you.  I understand you

13   weren't concerned.  But I just want to know what you

14   did and what you didn't do.

15        A.   No, I didn't go back and look for a walker.

16        Q.   Okay.  Maybe look for a time when Mr. Perez

17   went to the shower and somebody went into his room?

18        A.   No, sir.

19        Q.   You didn't do that?

20        A.   No, sir.

21        Q.   Did you ever see Mr. Perez' walker?

22        A.   I saw the first time on the interview on

23   March 7.

24        Q.   Where was it?

25        A.   We conducted an interview with him, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3333

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127

```
 1    he -- when he walked into our office, he had it with
 2    him.
 3          Q.   This is on March the 7th?
 4          A.   Yes, sir.
 5          Q.   And during that interview Mr. Perez told
 6    you that he didn't see anything; didn't know anything
 7    about the homicide?
 8          A.   Correct.
 9          Q.   And so you conducted a second interview
10    March the 10th?
11          A.   Correct.
12          Q.   So the first time that you interviewed him
13    on March the 7th, he came to your office?
14          A.   It was at one of the offices there at the
15    correctional facility.
16          Q.   And he was using a walker?
17          A.   Correct.
18          Q.   Did you examine that walker?
19          A.   No.
20          Q.   Okay.  Let me show you what's been marked
21    as Mr. Perez' Exhibit HH.  Do you know who took this
22    photo?
23          A.   No, I don't.
24          Q.   Do you know where this photo was taken?
25          A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3334

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 128 3335

```
 1          Q.   Are you able to tell me -- well, I guess we
 2   could agree this is a walker, right?
 3          A.   Yes, sir.
 4          Q.   Can you tell me whose walker it is?
 5          A.   I don't know that.
 6          Q.   So you knew on March the 7th that Mr. Perez
 7   had a walker?
 8          A.   Yes.
 9          Q.   And on March the 10th he didn't have the
10   walker anymore?
11          A.   Correct.
12          Q.   Let me show you just a few photographs
13   here.  This is Defendant Perez' I.  Are these
14   photographs that were taken by some state police
15   investigators that you were working with on March the
16   7th?
17          A.   Yes.
18          Q.   And this is the front door of 1 A blue pod;
19   correct?
20          A.   Yes, sir.
21          Q.   It's a series of four different photos?
22          A.   Yes.
23          Q.   And that's how it was on March the 7th?
24          A.   Yes.
25          Q.   Exhibit J is walking into 1 A blue pod;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3335

 1    correct?

 2         A.   Correct.

 3         Q.   In the bottom right-hand corner photo you

 4    can see what appears to be blood in the left bottom

 5    corner of that photo; is that right?

 6         A.   Yes.

 7         Q.   Is that where you know Mr. Molina was --

 8    had collapsed following the assault?

 9         A.   Yes.

10         Q.   Let me show you K.  And I'll switch it in

11    just a minute, but the bottom left-hand corner is

12    that same door walking into blue pod, right?

13         A.   Yes.

14         Q.   And then, if I rotate the picture, the

15    photograph identified as DSC0012 is sort of a shot

16    into the center of the pod, right?

17         A.   Correct.

18         Q.   And well, then DSC0011 is the left side of

19    pod, the stairway going up to the second level?

20         A.   Yes.

21         Q.   Would you agree with me that Mr. Perez'

22    cell -- and it may not be in view here, but on

23    DSC0012, it would be the right-hand side of that

24    photo on the bottom?

25         A.   Correct.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1         Q.   And from the video you watched, you could
 2    see all of the cells, correct, from the two different
 3    camera angles?
 4         A.   I think so.  I'm not sure if it covers 115
 5    and the one above 115.  I'm not sure.
 6         Q.   Let me show you L.  These are also from
 7    blue pod, all four of them?
 8         A.   Correct.
 9         Q.   And let's focus on the right-hand side,
10    DSC0016, there is a TV there?
11         A.   Yes.
12         Q.   That TV -- and then there is a phone as
13    well on the right-hand side of DSC0016 -- those are
14    both in the pod; correct?
15         A.   Correct.
16         Q.   And inmates in the pod can use the phone
17    and the TV?
18         A.   I'm assuming, yes.
19         Q.   And orienting to the left side of that
20    photograph, that's where the units begin, the cells
21    begin; correct?
22         A.   Correct.
23         Q.   And that's the side where 115 is?
24         A.   Yes.
25         Q.   And the other photos, again, are just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3337

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131

```
 1   different shots -- 14 and 13 shots of the inside of
 2   the pod?
 3        A.   Correct.
 4        Q.   15, DSC0015, you can see the edge of the TV
 5   there sticking out, right?
 6        A.   Correct.
 7        Q.   That's the same TV from 16?
 8        A.   Yes, sir.  I'm assuming yes.
 9        Q.   And I don't want you to assume.  You were
10   in there.  Does that appear like how it was on March
11   7th?
12        A.   It is, but it's the picture from 15 to 16,
13   the picture is different.  But, yes, there is a TV
14   there on 16.
15        Q.   Got it.  That's a different angle?
16        A.   Right.
17        Q.   And on 15 -- I'm going to point with my
18   finger, and actually I think we can mark this cell.
19   Can you tell me, is that cell 115?
20        A.   Correct, yes.
21        Q.   All right.  And then the last one of this
22   is M.  This is just a photo of 115, with the door and
23   then inside of 115; correct?
24        A.   Yes, sir.
25        Q.   Do you know if, at the time this photo was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3338

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132 3339

1   taken, there was a walker in that cell?

2       A.   I don't know that.

3       Q.   Do you know these photos to be taken on

4   March 7 or March 8 of 2014?

5       A.   Yes, sir.

6       Q.   Let me jump over to N.  This is a different

7   series of photos that were taken by the defense.  Was

8   that also a photo of blue pod?

9       A.   Yes.

10       Q.   And the telephone we were talking about

11   earlier is in this photo?

12       A.   Yes.

13       Q.   Now, at the top right-hand corner of the

14   photo -- I'm going to identify, first, this black

15   cylindrical object.  Is that a camera?

16       A.   I'm not sure.

17       Q.   Okay.  And over here, above the exit sign,

18   there is another same looking object.  Do you know if

19   that's a camera?

20       A.   It appears to be a camera, yes.

21       Q.   This is C -- or excuse me, O, pretty much

22   the same photo; true?

23       A.   Correct.

24       Q.   Okay.  And now I'm going to show you P.

25   Again, this is a little bit different angle of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3339

1    blue pod, but it indicates right in the middle of the

2    photo 1 A B pod.  That's the blue pod; correct?

3         A.   Yes.

4         Q.   And again, in the left-hand side center is

5    cell 115?

6         A.   Correct.

7         Q.   Now, you're familiar with the recovery of

8    what's believed to be the shanks that were allegedly

9    used to assault Javier Molina, are you not?

10        A.   Yes.

11        Q.   One of the shanks was found in the blue pod

12   in a trash can; correct?

13        A.   Yes.

14        Q.   And another one was found upstairs in the

15   shower drain?

16        A.   Correct.

17        Q.   And if I understand it correctly, from your

18   observations of the video, you saw Mr. Armenta to be

19   one of the people that appeared to be stabbing Javier

20   Molina; correct?

21        A.   Correct.

22        Q.   And Mr. Armenta then goes to the trash can

23   where a shank is found, and it looks like he drops an

24   object in there?

25        A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3340

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

1    Q.   The other shank that ends up in the shower

2    drain, Mario Rodriguez is seen getting that shank and

3    going into the shower; correct?

4    A.   Correct.

5    Q.   And that's the shank that came from Jerry

6    Montoya; did it not?

7    A.   Yes.

8    Q.   Jerry Montoya was the other person alleged

9    to be -- or on video appeared to be stabbing Javier

10   Molina; correct?

11   A.   Correct.

12   Q.   So we have two -- I'll call these

13   individuals "stabbers," right?

14   A.   Yes.

15   Q.   Mario Rodriguez and Timothy Martinez, who

16   you also got affidavits for DNA for, were not seen

17   stabbing Mr. Molina; correct?

18   A.   Correct.

19   Q.   They were just seen going into his room and

20   coming out right before the two stabbers went in?

21   A.   Yes.

22   Q.   And then Mr. Rodriguez, who we just

23   discussed, put one of the shanks in the shower drain?

24   A.   Yes.

25   Q.   Okay.  So let's focus on Mr. Armenta.  You

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3341

1    see him on the video.  He appears to be stabbing

2    Javier Molina.  And then he puts an object in the

3    trashcan, which is in the downstairs portion of the

4    pod; correct?

5         A.   Yes.

6         Q.   And I want to show you Mr. Perez' Y.  These

7    are photographs of -- at least the first three --

8    225, 226, and 227, are photographs of the shank that

9    was recovered from the trashcan; correct?

10        A.   Correct.

11        Q.   Same trashcan that you saw Mr. Armenta

12   appear to put an object in right after the assault?

13        A.   Yes.

14        Q.   And this particular shrank was then taken

15   out, and put into a box for evidence collection,

16   right?

17        A.   Yes.

18        Q.   And it's a dark picture.  But you can see

19   the shank in the box in 228, right?

20        A.   Yes.

21        Q.   So let me show you Z.  That's the same

22   shank from the trashcan; correct?

23        A.   Yes.

24        Q.   All four of the photos in Z?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136 3343

1      Q.   This is a shank that had some sort of

2    cellophane or tape wrapped around the end of it?

3      A.   Correct.

4      Q.   Then a rope attached to the end?

5      A.   Yes.

6      Q.   And AA, that's a close-up photo of that

7    same shank; true?

8      A.   Correct.

9      Q.   Show you another one, BB; the same shank?

10     A.   Yes.

11     Q.   And then I just want to show you DD.  Is

12   this a close-up of the same shank?

13     A.   I believe so.

14     Q.   Can you tell me the significance of this

15   close-up picture?

16     A.   I'm not sure.  I didn't take those

17   pictures.

18     Q.   Does it appear like the tip or the point of

19   the shank is bluish, or has some sort of paint or

20   something on it?

21     A.   Yes.

22     Q.   Now, let's show you EE, which is pictures

23   of the shower inside of the blue pod on the second

24   level; correct?

25     A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3343

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137

```
 1          Q.    And there is a marking in there, a yellow
 2     number 3.  That's a crime scene number for you to
 3     document where things were found; correct?
 4          A.    Right.
 5          Q.    And this is the upstairs shower, where the
 6     shank that Mario Rodriguez was believed to have put
 7     in the drain was found?
 8          A.    Yes.
 9          Q.    The shank that Jerry Montoya allegedly
10     used?
11          A.    Correct.
12          Q.    And EE has got the same crime scene number
13     3, with a close-up picture of the shank; true?
14          A.    Yes.
15          Q.    And it looks like maybe some of the
16     drainpipe area of the shower?
17          A.    Yes.
18          Q.    Y'all actually had to take some of the
19     pipes out to get to the shank?
20          A.    Yes, sir.
21          Q.    These three shanks -- let me show you
22     Defendant's S -- are pictured -- well, excuse me, two
23     of the shanks are pictured here, are they not?
24          A.    Yes.
25          Q.    And so the top picture, if you're looking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3344

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138 3345

```
 1    at Defendant's S, is the shank seen from -- recovered

 2    from the shower?

 3         A.   Correct.

 4         Q.   And the bottom is the shank recovered from

 5    the trashcan?

 6         A.   Yes.

 7         Q.   The middle is just a piece of metal that

 8    was also recovered from the same trashcan; was it

 9    not?

10         A.   Yes.

11         Q.   Now, do you know if this middle piece, that

12    was also recovered from the trashcan, do you know

13    where that came from?

14         A.   That came from the trashcan, first level.

15         Q.   Do you know the source, how it ended up in

16    the trashcan where it came from?

17         A.   No, sir.

18         Q.   What about either of the other two?

19         A.   Well, they were -- the bottom one was

20    thrown in the trashcan.  The top one was taken to the

21    shower by Jerry.

22         Q.   Mario Rodriguez.  To the shower?

23         A.   Correct.

24         Q.   Okay.  But my question for you is:  Do you

25    know where this metal came from?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3345

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 139 3346

```
 1            A.   No, sir.

 2            Q.   These shanks, these pieces of metal and the

 3     shanks, were discovered on late night, March the 7th,

 4     maybe early morning March the 8th, by you and your

 5     investigative team?

 6            A.   Correct.

 7            Q.   And V is just one more picture of the same

 8     three pieces of metal on the bottom, right?

 9            A.   Yes.

10            Q.   And you can see on the left-hand side the

11     State Police evidence boxes that they were packaged

12     in?

13            A.   Yes.

14            Q.   Okay.  One more close-up of this is

15     Defendant's W.  The same three pieces of metal we

16     were just discussing.

17            A.   Yes.

18            Q.   And then here is X; it's a close-up of that

19     other piece of metal that was found in the trashcan?

20            A.   Correct.

21            Q.   You didn't think this piece of metal was

22     actually used as a shank, did you?

23            A.   No, sir.

24            Q.   When this piece of metal was discovered,

25     did you have an idea what you thought it was, or why
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3346

```
 1    you guys took it as evidence?

 2         A.   It's a metal.  It shouldn't be there.  It

 3    was the same material as the other shanks; that's why

 4    it was taken into evidence.

 5         Q.   So was it the same material as -- let me

 6    show you N -- or, excuse me, W -- this shank here on

 7    the bottom?

 8         A.   At the time I observed the shrank, I didn't

 9    see it as a close-up.  To me, it looks the same.

10         Q.   Okay.  I mean, it appears the same.  I'm

11    not asking if it is the same.

12         A.   Yes, sir.

13         Q.   But this top piece of metal from the shower

14    drain, that's a little different than the other two,

15    isn't it?

16         A.   The shape, yes, sir.

17         Q.   I'm sorry?

18         A.   It's a shape, different shape.

19         Q.   It looks a little older, maybe rusted?

20         A.   I'm not sure.

21         Q.   Okay.  In the course of your investigation,

22    did you learn about the wheelchair program at

23    Southern?

24         A.   Yes, I did.

25         Q.   And you learned that individuals in blue
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3347

1    pod were working in the wheelchair program at

2    Southern, did you not?

3         A.   I did.

4         Q.   And you learned that those individuals

5    would often bring metal from the wheelchair program

6    into the blue pod; correct?

7         A.   That they would bring metals into the blue

8    pod?

9         Q.   Pieces of metal from the wheelchair

10   program.

11        A.   That was my understanding at the time.

12        Q.   At the time of this investigation?

13        A.   Correct.

14        Q.   Within a week of this investigation, you

15   learned about this information; correct?

16        A.   When I arrived on scene, that's when I

17   learned that the inmates were working at the

18   wheelchair program.

19        Q.   And were taking metal from the wheelchair

20   program into the blue pod, right?

21        A.   That was my understanding, yes.

22        Q.   And, at least, you had information to that

23   effect?

24        A.   Correct.

25        Q.   And making shanks out of it?

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                      1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3348

```
 1          A.   Correct.

 2          Q.   And you knew that in the wheelchair

 3     program, that inmates that worked there would take

 4     wheelchairs and rehabilitate them, fix them up, give

 5     them to nonprofits, or things like that, right?

 6          A.   I believe so, yes.

 7          Q.   And they also did that with walkers?

 8          A.   I only heard wheelchair.  I didn't hear

 9     anything else.

10          Q.   You never heard about a walker?

11          A.   No.

12               MR. VILLA:  May have a moment, Your Honor?

13               THE COURT:  You may.

14               MR. VILLA:  Pass the witness.

15               THE COURT:  All right.  Thank you, Mr.

16     Villa.

17               Any other defendant want to ask any

18     questions of Mr. Palomares?

19               All right.  Ms. Armijo, if you have

20     cross-examination of Mr. Palomares.

21                         CROSS-EXAMINATION

22     BY MS. ARMIJO:

23          Q.   Sergeant Palomares, was your initial

24     understanding, after responding on March 7, and that

25     initial investigation leading to the early morning
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

```
 1   hours of the 8th, was that it was potentially a
 2   wheelchair involved, as far as a source for the
 3   shanks?
 4        A.   Yes.
 5        Q.   Now, at any point in time, prior to your
 6   leaving Southern for the first part of the
 7   investigation, did you have any idea that, instead of
 8   a wheelchair as a source, that it could have been a
 9   walker?
10        A.   No.
11        Q.   Now, I believe you indicated that, as part
12   of your investigation -- let me ask you this way:  As
13   part of your investigation, did you, or members of
14   your team attempt to interview the inmates of blue
15   pod?
16        A.   We did.
17        Q.   And is it fair to say that the majority of
18   those people were not forthcoming with information?
19        A.   Correct.
20             MR. VILLA:  Objection, Your Honor.
21             THE COURT:  I'm sorry?
22             MR. VILLA:  I think it's leading and
23   argumentative.
24             THE COURT:  Don't lead.  Don't lead.  But,
25   otherwise, the question is proper.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3350

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3351

```
 1              MS. ARMIJO:  So you're not going to allow
 2    me to cross-examine him.
 3              THE COURT:  You can cross-examine him.  I'm
 4    not saying it's argumentative.  But don't lead.
 5    BY MS. ARMIJO:
 6         Q.   Now, as far as witnesses, was Mr. Perez
 7    part of that?
 8         A.   Yes, he was.
 9         Q.   And what did he initially tell you or
10    members of the state police team when he was
11    interviewed?
12         A.   He told me that he didn't see anything.  I
13    believe he said he was in his room, holding cell.  He
14    didn't see anything.
15         Q.   Did he provide you any further information
16    at that time?
17         A.   No.
18         Q.   And at the time that he came to the
19    interview, what did he use, if anything, to assist
20    him with his walking?
21         A.   He had a walker.
22         Q.   At that point in time -- is that point in
23    time included in the information, in the period of
24    the first time that you were investigating that case?
25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3351

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145

```
 1        Q.   Going to your return to Southern.  What
 2   date was that again?
 3        A.   March 10th, 2014.
 4        Q.   Wait, I'm sorry, let me go back to that
 5   first time.  Were you in charge of the portion of the
 6   investigation that dealt with evidence collection?
 7        A.   No.
 8        Q.   Is there a special team that deals with
 9   evidence collection?
10        A.   We have a Crime Scene Team.  They are in
11   charge of collecting evidence.
12        Q.   And who was in charge of collecting
13   evidence?
14        A.   I believe it was Agent Norman Rhodes.
15        Q.   So now, then, going to March 10th, at that
16   point, did you conduct additional investigations?
17        A.   I did.
18        Q.   And as part of those additional
19   investigations, did you interview Mr. Perez?
20        A.   Yes, I did.
21        Q.   And, at that point in time, what did you
22   learn as you recall -- well, let me back up.  Did you
23   have an opportunity to actually listen to your
24   recorded interview?
25        A.   I did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3352

```
 1          Q.   And what did he indicate to you as far as
 2   his walker at that point in time?
 3          A.   He indicated a part of his walker was
 4   missing.  And he said, "They took it away from me."
 5   So I understood that he was referring to correctional
 6   officers.
 7          Q.   And did he indicate to you at what point in
 8   time it came up missing?
 9          A.   He indicated a part of his walker was
10   missing.
11          Q.   And I'm going to show you Defendants'
12   Exhibit --
13               MS. ARMIJO:  Mr. Villa, do you have the
14   transcript?
15               MR. VILLA:  Oh, I believe I --
16          Q.   I'm going to refer to Exhibit RP-LL,
17   specifically, which, just so that you're familiar
18   with -- now, have you had an opportunity to review
19   this to see if it's accurate?
20          A.   No.
21          Q.   I'm going to page 26 of this.  And in
22   looking there, do you see around line 12, he talks
23   about when the piece came up missing.  Does that
24   refresh your recollection?
25          A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3353

1      Q.   And what did he indicate?

2      A.   He advised me that he was in the shower

3   when his piece of evidence -- the walker was missing.

4      Q.   All right.  And what does he go on to tell

5   you about the walker?

6      A.   He tells me that a piece was missing, and

7   they took it away from him.  And he advised that he

8   was going to handle it on his own.

9      Q.   At any point in time did he tell you that

10   he thought that weapons could have been made with it?

11      A.   No.

12      Q.   Now, as you were doing that interview, what

13   was your understanding of where possible shanks could

14   have come from?

15      A.   From the wheelchair program.

16      Q.   And at that point in time, when he was

17   talking about the walker, given what he told you, did

18   you at that time associate the walker with being used

19   with shanks?

20      A.   No, I didn't.

21      Q.   Now, on March 10th, did you have -- I

22   believe you testified previously that somewhere

23   around that date that you had information that -- an

24   idea that it had been authorized prior to that date

25   by people other than the ones that committed the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                            1-800-669-9492
                                                             e-mail: info@litsupport.com



```
 1   actual stabbing; is that correct?

 2       A.   Correct.

 3       Q.   Now, did you have any idea at that time

 4   that there was actual, what we would refer to as

 5   paperwork, that came down from Santa Fe?

 6       A.   Not at that time.

 7       Q.   And specifically, I'm talking about March

 8   of 2014.  Were you aware of any paperwork coming down

 9   from Santa Fe?

10       A.   No.

11       Q.   At some later point in time, did you become

12   aware of paperwork possibly coming down from -- and

13   when I say "Santa Fe, I guess I'm referring to the

14   penitentiary up there?

15       A.   Correct.

16       Q.   And why don't you tell us about that.

17       A.   I learned on the paperwork, a few months

18   later after the investigation.  I can't remember the

19   date.  But it was when FBI started assisting with the

20   investigation.

21       Q.   Okay.  So -- but you indicated that it was

22   a few months later?

23       A.   Correct.

24       Q.   And when you say FBI, would that have been

25   Special Agent Lance Roundy?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 149356

```
 1        A.   Correct.
 2        Q.   Now -- and that was the first time that you
 3   actually learned about some potential paperwork?
 4        A.   Yes.
 5        Q.   Now, as far as the walker, did anyone ever
 6   tell you -- prior to this case being dismissed by the
 7   State of New Mexico for federal prosecution, had you
 8   been provided with any information about a walker
 9   being part of the -- as a potential source for
10   shanks?
11        A.   I don't think so.  I think a question -- I
12   was asked a question about the walker, but I didn't
13   know at the time that the walker was used as part of
14   the incident.
15        Q.   Okay.  And when was that -- this happened
16   in -- just so that we can get a timeframe -- if this
17   incident occurred March 7 of 2014 -- well, let me ask
18   some other questions of you first.  Were charges
19   initially brought by the State of New Mexico?
20        A.   What charges?
21        Q.   Were charges initially brought out of this
22   incident by the State of New Mexico?
23        A.   Yes.
24        Q.   And did that prosecution continue to some
25   point in time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3356

```
 1        A.   It was dismissed at some point.
 2        Q.   Okay.  Do you recall the reason for the
 3   dismissal?
 4        A.   Because the federal government was going to
 5   charge at the federal level.
 6             THE COURT:  Ms. Armijo, is this a good
 7   place for us to maybe take our lunch break?
 8             MS. ARMIJO:  Absolutely, Your Honor.
 9             THE COURT:  All right.  We'll be in recess
10   for about an hour.  Let's try to get back here.  I
11   brought food in so that I will not leave the
12   building.  And I'm not saying y'all do the same
13   thing.  But we're going to be ready to go pretty
14   quick.  We've done pretty well this morning getting
15   people in and out.  Let's keep it up.  All right.
16   Have a good lunch.
17             (The Court stood in recess.)
18             THE COURT:  All right.  Let's take a head
19   count here.  I think we've got everybody, a lawyer
20   for everybody.  Take a look around the room, help
21   your friends out.  All right.
22             Looks like, Mr. Mondragon, you've entered
23   an appearance this afternoon.  Good to see you.
24             MR. MONDRAGON:  Yes, Your Honor.
25             THE COURT:  All right.  Anything, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3357

 1    Villa, y'all need to discuss with me, or are you

 2    ready to go?

 3              MR. VILLA:  I think we're okay, judge.

 4              THE COURT:  All right.  Ms. Armijo, if you

 5    wish to continue your cross-examination of Mr.

 6    Palomares.

 7              Mr. Palomares, I'll remind you you're still

 8    under oath.

 9              THE WITNESS:  Okay.

10              THE COURT:  Ms. Armijo.

11    BY MS. ARMIJO:

12         Q.   Sergeant Palomares, at some point during

13    your investigation, did you realize that there was an

14    allegation that actual paperwork came down, possibly

15    from Santa Fe, in reference to the Javier Molina

16    murder?

17         A.   Yes, I did.

18         Q.   And do you have an idea approximately when

19    that was during this investigation?

20         A.   It had to have been maybe May or June of

21    2015, roughly.

22         Q.   Okay.  So May or June, 2015.  And were you

23    ever in possession of that paperwork?

24         A.   No.

25         Q.   And when I say "you, I should also include

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3358

```
 1    State Police?

 2         A.   Correct, no.

 3         Q.   Are you aware of any law enforcement entity

 4    that was in possession of that paperwork?

 5         A.   No.  Because I was the case agent.

 6              MS. ARMIJO:  Thank you.  No further

 7    questions.

 8              THE COURT:  Thank you, Ms. Armijo.

 9              Any other defendant have any questioning?

10    Mr. Villa, do you have redirect?

11              MR. VILLA:  Yes, Your Honor.

12              THE COURT:  Of Mr. Palomares.  Mr. Villa.

13                   REDIRECT EXAMINATION

14    BY MR. VILLA:

15         Q.   Good afternoon, Agent Palomares -- or

16    excuse me, Sergeant Palomares.

17         A.   That's okay.

18         Q.   So you were the case agent for this case?

19         A.   Yes, sir.

20         Q.   As the case agent, you're responsible for

21    directing the investigation of the homicide itself?

22         A.   Correct.

23         Q.   And I understand that you had individuals

24    helping you with the state police, who were

25    documenting evidence, taking photographs, things like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3359

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 153360

1     that, right?

2          A.   Yes.

3          Q.   You had individuals from New Mexico

4     Department of Corrections that were also assisting

5     you, showing you video, and those sorts of things;

6     correct?

7          A.   Yes.

8          Q.   And they had identified this plot, if you

9     will, to put a hit on Javier Molina, and they told

10    you about it, right?

11         A.   Yes.

12         Q.   You said that you were not aware of

13    paperwork until sometime in May or June of 2015?

14         A.   Yes, sir, roughly.

15         Q.   How did you become aware of that?

16         A.   That's when I attended a meeting with the

17    FBI personnel at the AUSA Office here in Las Cruces.

18         Q.   The FBI told you about it?

19         A.   Correct.  I think it was FBI or DEA -- USA

20    personnel.

21         Q.   There were FBI agents assisting in this

22    investigation from the beginning; true?

23         A.   Yes.

24         Q.   Agent Lance Roundy conducted some

25    interviews in that first few days after the homicide?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 153361

```
 1        A.   Correct.
 2        Q.   So you were also working with them as part
 3   of this investigation?
 4        A.   Yes.
 5        Q.   And as the case agent, you're responsible
 6   for essentially the entire case, right?
 7        A.   Correct.
 8        Q.   Including all the evidence that's
 9   collected?
10        A.   Yes.
11        Q.   All the evidence that's seized?
12        A.   Yes.
13        Q.   And all facets of the investigation,
14   knowing who has done what, and what needs to be done;
15   that sort of thing?
16        A.   Oh, basically, the way it works, we have
17   the Crime Scene Team.  It is -- there are state
18   police agents, and they are the ones in charge of
19   collecting any type of evidence.  At that time, once
20   evidence is collected, then they release evidence to
21   me.
22        Q.   And so you're aware of the evidence that's
23   been collected?
24        A.   Correct.
25        Q.   So if there was other evidence that needed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to be seized or collected or followed up on, that
 2    would be your job?
 3         A.   Yes.
 4         Q.   And your Crime Scene Team from the state
 5    police was there collecting a lot of this evidence,
 6    right?
 7         A.   Yes.
 8         Q.   But the NMCD personnel, STIU, they were
 9    collecting evidence, too, weren't they?
10         A.   Well, depends.
11         Q.   Some evidence, right?  They got the video?
12         A.   Right, yes.
13         Q.   And then they got you some other
14    information, like about how -- this plot on Javier
15    Molina; correct?
16         A.   Yes.
17         Q.   And they were trying to gather intelligence
18    for you?
19         A.   Yes.
20         Q.   Now, you talked a little bit about with Ms.
21    Armijo the wheelchair program.  Who informed you
22    about the wheelchair program?
23         A.   I was notified -- when I first arrived on
24    scene, I was notified by STIU.
25         Q.   What were you notified?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3362

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156 363

1        A.   The inmates had a wheelchair program; that

2   they were allowed to work during work hours.

3        Q.   And STIU notified you of that because they

4   thought it might be important to your investigation?

5        A.   Correct.

6        Q.   Did you learn about the facts, that metal

7   or shanks were coming into blue pod from the

8   wheelchair program from STIU?

9        A.   Yes, that was my understanding initially,

10   that the shanks came from the wheelchair program.

11        Q.   And can you tell me who with STIU gave you

12   this information?

13        A.   I don't recall, sir.   There was too many

14   STIU officers at the time.

15        Q.   Did you go over to the wheelchair program

16   and investigate it?

17        A.   No, I didn't.

18        Q.   Have you been there at any point in time

19   during this investigation?

20        A.   No.

21        Q.   Did you interview anybody from the

22   wheelchair program, like a CO, or somebody that would

23   be supervising over there?

24        A.   No.

25        Q.   And these case agents who took the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                               e-mail: info@litsupport.com

DNM 3363

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 157 3364

 1   evidence -- including the shanks that we saw this
 2   morning -- you're supervising them; correct?
 3         A.   Correct.  But there is a supervisor
 4   assigned to impact team -- I'm sorry, Crime Scene
 5   Team.  He's the one in charge of collecting any type
 6   of evidence.  But at the same time, yes, I'm making
 7   sure all the evidence that we need to obtain at the
 8   time of the incident, it's collected.
 9         Q.   You were aware at the time of the discovery
10   of the shanks in the trashcan?
11         A.   Yes.
12         Q.   And the shower drain?
13         A.   Yes.
14         Q.   You saw the shanks yourself?
15         A.   Yes.
16         Q.   And these shanks appear to be -- I mean,
17   perhaps, they're broken or bent a little bit, but
18   solid pieces of metal, right?
19         A.   Correct.
20         Q.   That may have come from some other source,
21   such as the wheelchair program?
22         A.   Correct.
23         Q.   And you knew that information in the first
24   two days of your investigation:  March 7, March 8?
25         A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Q.   So, on March 7 -- you testified about this

2     with Ms. Armijo -- you interviewed Mr. Perez.  He

3     told you he didn't see anything, right?

4          A.   Correct.

5          Q.   And Mr. Perez had a walker that day?

6          A.   Yes, he did.

7          Q.   And on March the 10th, you went back and

8     you interviewed Mr. Perez again.  And he didn't have

9     a walker that time?

10         A.   Correct.

11         Q.   The walker that he had the first time

12    looked normal to you?

13         A.   I didn't pay attention to it.  I was more

14    concentrated on conducting an interview.

15         Q.   But you knew that the walker was made of

16    metal?

17         A.   Yes, I mean some -- yes, it was metal.  I

18    didn't look at it.  Like I said, I was more

19    concentrated on conducting the interview.

20         Q.   It wasn't the type of walker -- I guess

21    I've seen a few walkers -- maybe more than I care to

22    since this case -- but some of them are a little less

23    solid and plastic, and others have wheels, are a

24    little more solid and metal; true?

25         A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3365

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159366

1      Q.   And Mr. Perez' was the type that was a

2  little more solid and metal?

3      A.   I can't recall.  I think the walker had

4  wheels.  But other than that, I don't recall paying

5  attention to the walker.

6      Q.   And when you interviewed Mr. Perez -- I

7  just want to make sure that this is clear -- he told

8  you that, "they," being somebody from the Department

9  of Corrections, said a piece was missing from his

10  walker, right?

11      A.   Yes, sir.

12      Q.   He did not tell you himself:  A piece was

13  missing from my walker, right?

14      A.   He said a piece was missing from his

15  walker, and they took it away.

16      Q.   No, I understand that.  But he said, in

17  terms of they told him, when they took it away that a

18  piece was missing from his walker, right?

19      A.   I'm not sure.  I don't recall.

20      Q.   Well -- and he said that it must have come

21  up missing in the shower?

22      A.   Correct.  He said he was in the shower.

23      Q.   And I just want to make sure that we're

24  clear.  When you had this conversation with him, you

25  did tell him -- or you asked him about, you know, did

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3366

1  orders come down from Santa Fe, in terms of orders to

2  hit Molina?

3       A.   Yes.

4       Q.   And he didn't say -- he said he didn't know

5  about that, right?

6       A.   Correct.

7       Q.   When you learned about these orders, did

8  you have some idea how the orders came down from

9  Santa Fe?

10      A.   No.  I never worked the case.  I was more

11 concentrated on investigating the homicide.

12      Q.   I mean, if somebody had ordered Javier

13 Molina to be hit from Santa Fe, they would be part of

14 this homicide investigation, wouldn't they?

15      A.   Yes, sir.  But I was never told by any

16 witnesses that the orders came from Santa Fe.

17      Q.   You learned that from STIU?

18      A.   Yes, sir.

19      Q.   And STIU learned that from doing interviews

20 of inmates; correct?

21      A.   Yes, sir.

22      Q.   Did you ask about -- STIU about those

23 interviews that they had done?

24      A.   We spoke briefly about the interviews.  And

25 that's what I gather, somehow the orders came from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3367

1    Santa Fe.

2         Q.   Did you make any attempt to follow up on

3    that investigation and try determine if to orders had

4    come from Santa Fe?

5         A.   Well, when we asked Mr. Perez, we asked if

6    orders came from Santa Fe, and he said he didn't know

7    anything about it.

8         Q.   Independent of Mr. Perez, did you --

9         A.   No, sir.

10         Q.   Let me make sure I get the whole question

11    out.  Did you do any other investigation to try to

12    determine whether that was true?

13         A.   No, sir.

14         Q.   Did you try to figure out how, if orders

15    came down, how they came down?

16         A.   No, sir.

17         Q.   And I want to make sure that I understand

18    completely.  You did not go back and actually try to

19    view footage from prior days, or other than the

20    footage of the assault, you didn't try to view any

21    other footage?

22         A.   No.

23              MR. VILLA:  May I have a moment, Your

24    Honor?

25              THE COURT:  You may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                MR. VILLA:  That's all the questions I
 2     have.
 3                THE COURT:  Thank you, Mr. Villa.
 4                All right.  Mr. Palomares, you may step
 5     down.  Is there any reason that Mr. Palomares cannot
 6     be excused from the proceedings?
 7                MS. ARMIJO:  Your Honor, we have asked him
 8     to wait around.
 9                THE COURT:  Okay.  All right.  You need to
10     stay under charge then.
11                All right.  Ms. Fox-Young, does Mr. Perez
12     have his next witness or evidence?
13                MS. FOX-YOUNG:  Yes, Your Honor.  Mr. Perez
14     calls Daniel Bustamantes.
15                THE COURT:  Mr. Bustamantes, if you'll come
16     up and stand next to the witness box on my right,
17     your left.  Before you're seated, Ms. Standridge, my
18     courtroom deputy will swear you in.
19                     DANIEL BUSTAMANTES,
20         after having been first duly sworn under oath,
21         was questioned and testified as follows:
22                     DIRECT EXAMINATION
23                THE CLERK:  Please be seated and state your
24     name for the record.
25                THE WITNESS:  Daniel Bustamantes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3369

```
 1              THE COURT:  Mr. Bustamantes.  Ms.
 2    Fox-Young.
 3    BY MS. FOX-YOUNG:
 4         Q.   Good afternoon, sir.
 5              Can you tell me where you're currently
 6    employed?
 7         A.   I'm employed with the Las Cruces School
 8    Districts.
 9         Q.   Okay.  And how long have you been employed
10    there?
11         A.   Approximately three years.
12         Q.   And where you were employed on March 7 of
13    2014?
14         A.   Southern New Mexico Correctional Facility,
15    State of New Mexico, Department of Corrections.
16         Q.   And what was your position there?
17         A.   I was a sergeant for STIU.
18         Q.   When did you start in that job, if you can
19    recall?
20         A.   Maybe a year before.
21         Q.   So maybe spring of 2013?
22         A.   Maybe.
23         Q.   Okay.  And do you have a recollection of
24    the events on March 7, 2014, involving the death of
25    Javier Molina?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163

```
 1          A.    No, I don't.  I can't remember.

 2          Q.    You don't remember anything about that?

 3          A.    I remember I took pictures at the hospital.

 4          Q.    Okay.  And I'll get to that.

 5                But you remember Javier Molina dying?

 6          A.    Yes.

 7          Q.    And you remember that you had some role in

 8    that investigation?

 9          A.    Yes.

10          Q.    Do you recall, on March 7, 2014, when you

11    learned of the death?

12          A.    No.

13          Q.    Do you recall who gave you a role in that

14    investigation, who gave you a job to do?

15          A.    No.

16          Q.    Okay.  Tell me what you do remember.  You

17    remember going to the hospital, you said?

18          A.    Yes.

19          Q.    And you photographed Javier Molina?

20          A.    Yes.

21          Q.    And did you conduct any interviews that you

22    recall?

23          A.    I can't remember.

24          Q.    Do you remember photographing anything else

25    in the course of the investigation?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3371

1      A.   No.

2      Q.   Mr. Bustamantes, when you -- if you recall,

3  when you took photographs in the course of this

4  investigation, or any investigation, did your name

5  get applied to the photograph?  Was there a marker on

6  the photograph that showed that you took it?

7      A.   Yes.

8      Q.   And was that always true when you did STIU

9  investigations?

10      A.   Yes.

11      Q.   Do you remember anybody else who you worked

12  with on this case?

13      A.   Particularly, or just in general?

14      Q.   Do you remember any other officers who

15  worked on it with you?

16      A.   STIU; the members themselves.

17      Q.   How many STIU officers were located at

18  Southern at that time?

19      A.   I can't remember exactly the number.  I

20  mean, four or five.

21      Q.   And do you remember an Ernest Holguin?

22      A.   Yes.

23      Q.   Was he an STIU officer at Southern in March

24  of 2014?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3372

1      Q.   Did he work with you during the course of

2   this investigation?

3      A.   Yes.

4      Q.   Do you remember Adam Vigil being present?

5      A.   No.

6      Q.   Do you remember anybody coming from Santa

7   Fe during the course of the investigation, with STIU?

8      A.   No.

9      Q.   Do you recall seeing a walker during the

10  course of your investigation?

11     A.   No.

12     Q.   And you didn't photograph a walker?

13     A.   No.

14     Q.   And as far as you know, you didn't do

15  anything else related to the Javier Molina

16  investigation?

17     A.   All I did was -- all I remember is taking

18  pictures of Javier Molina at the hospital.

19     Q.   After you took the pictures, do you know

20  what you did with them?

21     A.   I can't recall who I turned them in to.

22     Q.   Do you recall if it was state police you

23  turned them in to?

24     A.   For sure, no, I don't remember.

25     Q.   Do you remember if Agent Palomares was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167

```
 1    present for any of your work on the investigation?

 2        A.   Yes.

 3        Q.   Was he present for briefings with you?

 4        A.   I can't remember.

 5        Q.   Was he at the hospital?

 6        A.   No.

 7        Q.   So you just remember him being present at

 8    the jail?

 9        A.   At the facility?

10        Q.   At the prison.

11        A.   Yes.

12             MS. FOX-YOUNG:  Your Honor, I'll pass the

13    witness.

14             THE COURT:  Thank you, Ms. Fox-Young.

15             Any other defendant want to ask any

16    questions of Mr. Bustamantes?

17             All right.  Mr. Castellano.

18             MR. CASTELLANO:  There is no cross, Your

19    Honor.

20             THE COURT:  No cross.  All right, Mr.

21    Bustamantes, you may step down.

22             Is there any reason that Mr. Bustamantes

23    cannot be excused from the proceedings,

24    Ms. Fox-Young?

25             MS. FOX-YOUNG:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3374

```
1              THE COURT:  Mr. Castellano?

2              MR. CASTELLANO:  No, Your Honor.

3              THE COURT:  All right.  You are accused

4    from the proceedings.  Thank you for your testimony.

5              Anybody else need him for anything?

6              All right.  Ms. Fox-Young, does Mr. Perez

7    have his next witness or evidence?

8              MS. FOX-YOUNG:  Yes, Your Honor.  Mr. Perez

9    will call Ernest Holguin.

10             THE COURT:  Mr. Holguin, if you'll come up

11   to the witness box on my right, your left.  Before

12   you are seated, Ms. Standridge, my courtroom deputy,

13   will swear you in.

14                   ERNIE HOLGUIN,

15       after having been first duly sworn under oath,

16       was questioned and testified as follows:

17                 DIRECT EXAMINATION

18             THE CLERK:  Please be seated and state your

19   name for the record.

20             THE WITNESS:  My name is Ernie Holguin.

21             THE COURT:  Mr. Holguin.  Ms. Fox-Young.

22   BY MS. FOX-YOUNG:

23        Q.  Good afternoon, Mr. Holguin.  I see you're

24   wearing an STIU shirt.  Are you currently employed by

25   STIU of the Department of Corrections?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3375

```
 1              A.   Yes, ma'am, I am.

 2              Q.   And where are you located?  Where do you

 3      work for them?

 4              A.   I work here at Southern, in Las Cruces, New

 5      Mexico.

 6              Q.   Sir, how long have you worked there in this

 7      capacity?

 8              A.   In this capacity, 10 years; total 16.

 9              Q.   I'm sorry a, total of 16?

10              A.   In corrections; but 10 within the STIU.

11              Q.   And the whole time you were at Southern?

12              A.   Yes, ma'am.

13              Q.   Were you at any time -- well, could you

14      tell me what your first assignment was at Southern,

15      ten years ago?

16              A.   I was Correctional Officer 1.

17              Q.   And how long did that last?

18              A.   For five years.  And then I promoted to

19      K-9, and gang unit.

20              Q.   Were you at any time, working as a

21      correctional officer, in a pod with alleged or

22      validated SNM members?

23              A.   Yes, ma'am.

24              Q.   And which pod was that?

25              A.   At the time, it was 1 units.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3376

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 170

1       Q.    Could you repeat that?

2       A.    In the 1's.

3       Q.    The 1's?

4       A.    One units, yes, ma'am.

5       Q.    Is that 1 A and 1 B?

6       A.    1 A.

7       Q.    And what period of time were you there?

8       A.    As a correctional officer, I believe, like

9   two years.  And STIU, through my whole career we've

10   been in and out of there.  We don't work the floor

11   every day.

12       Q.    So you stopped working the floor in about

13   2006?

14       A.    2007.

15       Q.    And then you said you moved to the gang

16   unit and K-9?

17       A.    Yes, ma'am.

18       Q.    And what do your job duties entail?

19       A.    Primarily K-9 searches, and monitoring

20   gangs within the prison.

21       Q.    And in the course of your job duties, do

22   you interview inmates?

23       A.    Yes, ma'am, I do.

24       Q.    And informants?

25       A.    Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3377

```
 1        Q.   Continuing to this day; correct?

 2        A.   Yes, ma'am.

 3        Q.   Do you recall where you were on March 7,

 4   2014, which is when Javier Molina was killed?

 5        A.   I believe I was off shift, and was called

 6   back in to our facility.

 7        Q.   You think you were called in that night?

 8        A.   Yes, ma'am.

 9        Q.   Do you remember who called you?

10        A.   It would have been our coordinator,

11   Mr. Blanco.

12        Q.   Could you tell me Mr. Blanco's full name?

13        A.   Daniel Blanco.

14        Q.   And is Daniel Blanco employed at Southern

15   New Mexico Correctional Facility?

16        A.   Yes, ma'am.

17        Q.   And he's STIU?

18        A.   Coordinator, yes, ma'am.

19        Q.   He's a captain?

20        A.   He's a coordinator; he's a little bit above

21   the captain.

22        Q.   I see.  And was he a coordinator at that

23   time?

24        A.   Yes, ma'am.

25        Q.   And so it's your recollection that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3378

1   Coordinator Blanco called you in and -- called you on

2   your phone --

3        A.   Yes, ma'am.

4        Q.   -- and asked you to come in?

5        A.   Yes, ma'am.

6        Q.   Do you remember what happened when you

7   arrived?

8        A.   There had been a stabbing at our facility,

9   so all of the gang unit was called in.

10       Q.   And how many individuals comprised the gang

11   unit at that time?

12       A.   At that time, I believe there was five of

13   us total, plus the coordinator.

14       Q.   Do you remember who else -- so you were

15   one?

16       A.   I'm one, yes.

17       Q.   And there are four more?

18       A.   Yes.  It was officer -- K-9 Officer

19   Maldonado, Sergeant Ruben Archuleta, Officer Josh

20   Segala.  And this was our total unit at the time.

21       Q.   So four, plus the coordinator?

22       A.   Yes, ma'am.

23       Q.   And everybody arrived that night?

24       A.   Yes, ma'am.

25       Q.   And did Coordinator Blanco have you in for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3379

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173380

```
 1    a briefing when you arrived?

 2          A.    Yes, ma'am.

 3          Q.    At that time was State Police on scene?

 4          A.    No.

 5          Q.    So it was just you guys?

 6          A.    It was just us guys, yes.

 7          Q.    And did Captain Blanco give you all

 8    directives at the time of that briefing?

 9          A.    Yes.

10          Q.    What was your directive?

11          A.    I was sent to assist Sergeant Bustamantes,

12    at the hospital for -- to take pictures, to assist in

13    taking pictures.

14          Q.    So you traveled to the hospital right away

15    with Sergeant Bustamantes?

16          A.    I went separately.

17          Q.    And that was that night?

18          A.    Yes, ma'am.

19          Q.    And then did you return to the facility?

20          A.    Later on that night, yes, ma'am.

21          Q.    Did you meet again that night with the rest

22    of the gang team?

23          A.    I don't believe so.  I went to the back,

24    where I was sent to talk to Mr. Blanco.

25          Q.    Are there -- we've heard some testimony
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3380

```
 1    that there is something called -- I don't know what
 2    it's called exactly, but a large room that STIU uses
 3    that has computers at Southern?
 4         A.   Yes, ma'am.
 5         Q.   What do you call that?
 6         A.   It's just our office, just the STIU office.
 7         Q.   Are there individual offices contained in
 8    that area?
 9         A.   Not in that area.  I think you're probably
10    referring to the phone yard, and the units where
11    there are actually separate offices there.
12         Q.   Who had offices in the phone yard at that
13    time?
14         A.   I don't recall who the unit manager was,
15    but it's usually the unit manager and the two
16    caseworkers.  I couldn't tell you who they were at
17    that time because they rotate.
18         Q.   So they're not STIU officers, per se?
19         A.   No.
20         Q.   And do you recall what role -- I think you
21    said Officer Maldonado -- had?
22         A.   Yes, he was with me when we conducted
23    interviews.
24         Q.   And how about Sergeant Archuleta?
25         A.   I don't recall where he was at.  I'm sure
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3381

```
 1   he was in the back somewhere.
 2        Q.   But he took his orders from Coordinator
 3   Blanco?
 4        A.   Yes, ma'am.
 5        Q.   And did you say Officer Segura?
 6        A.   Segala.
 7        Q.   Segala.  What was his role?
 8        A.   I don't know exactly what he was doing, but
 9   he's one of the other gang officers that conducts
10   interviews.
11        Q.   So when you returned from the hospital that
12   night, did you begin conducting interviews?
13        A.   Yes, ma'am.
14        Q.   Can you tell me who you interviewed?
15        A.   I believe Timothy Martinez, Rudy Perez -- I
16   can't remember; he has three names -- but I ended up
17   doing five that night total.
18        Q.   And all with Officer Maldonado?
19        A.   Yes, ma'am.
20        Q.   And did you watch any video that night?
21        A.   No, I didn't, no.
22        Q.   Did you ever watch any video of the
23   homicide?
24        A.   Later on, after it was all -- we were done
25   with our stuff, yes, I did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3382

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 176383

```
 1        Q.   Do you remember when?

 2        A.   That would probably have been the next day.

 3        Q.   Do you recall when State Police arrived on

 4   scene?

 5        A.   I remember them showing up.  I don't know

 6   the exact time, or anything like that.

 7        Q.   Do you remember how many officers?

 8        A.   I believe there was two.

 9        Q.   Do you remember who came?

10        A.   I believe Agent Palomares, and I can't

11   remember the other officer's name.

12        Q.   So you conducted five interviews that

13   night.  What did you do the next day?

14        A.   I believe we just completed our paperwork,

15   and go and just review what we'd gone over basically.

16        Q.   And you all met?

17        A.   Yes, ma'am.

18        Q.   And did you all -- did the whole gang unit

19   watch the video together at some point?

20        A.   No, not that the whole unit, no.  Just

21   individually one or two guys at a time would be

22   looking at it.

23        Q.   Did you watch it by yourself?

24        A.   No, I watched it with Officer Maldonado.

25        Q.   Where were you when you watched it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3383

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173384

```
 1        A.    Within our office, in the main building.
 2   We have a separate office from the offices in the
 3   back.  It's actually our office.
 4        Q.    So if you know, did somebody pull a tape
 5   from the pod itself and retrieve it and take it into
 6   the main office to be viewed?  Do you know how that
 7   works?
 8        A.    No, we actually can view it off of our
 9   computers in our office.
10        Q.    So from the STIU office you have access to
11   all of the video in the facility?
12        A.    Yes.
13        Q.    How long does that last, say -- and I'm
14   talking about March of 2014.  If you wanted to look
15   back at video from two weeks prior, could you from
16   the STIU office?
17        A.    Yes, we can look back two weeks.
18        Q.    How far back could you look?
19        A.    I couldn't tell you -- give the exact date
20   or time on that.  I know we can go back to at least a
21   month.
22        Q.    At least a month.  Do you know how long
23   that video exists before -- well, do you know if the
24   video is kept permanently?
25        A.    I wouldn't know.  I would assume they make
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3384

 1   a copy of it.

 2        Q.   I didn't ask a very clear question.  If you

 3   wanted to go today and -- well, let me move on.

 4             So you think you could go back at least a

 5   month at that time?

 6        A.   Yes.

 7        Q.   Have you ever been involved in -- for

 8   purposes of this investigation, were you involved in

 9   making a copy of that video?

10        A.   No.

11        Q.   Do you know who was?

12        A.   No, I don't.

13        Q.   So after you watched the video with Officer

14   Maldonado, what steps did you take?  You said you did

15   some paperwork?

16        A.   Yes.  We were just referencing to the video

17   from the interviews that we conducted.

18        Q.   You were watching the video and comparing

19   it to what you had learned in the interviews?

20        A.   Correct.

21        Q.   Can you tell me specifically what you were

22   looking for?

23        A.   We were just trying to make sure we had the

24   correct inmates that were involved.

25        Q.   Okay.  And so you confirmed that Timothy

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3385

1    Martinez was pictured?

2        A.   Yes, ma'am.

3        Q.   And that Jerry Montoya was pictured?

4        A.   Yes, ma'am.

5        Q.   And that Jerry Armenta was pictured?

6        A.   Yes, ma'am.

7        Q.   And Mario Rodriguez.

8            Did you do anything else in the course of

9    your investigation, vis-a-vis the video?

10       A.   No.

11       Q.   And do you know when -- you said you

12   could -- did you actually pull it through the

13   computer system, or did somebody else pull it up for

14   you to see?

15       A.   I believe somebody else pulled it up.

16       Q.   Do you know?

17       A.   It might have been Officer Maldonado.

18       Q.   Do you remember when you started watching

19   it, at what point in the video?

20       A.   I think we just went off the times that

21   were given to us, and we started at that particular

22   time and we just watched it from there.

23       Q.   Who gave you that time?

24       A.   Through the interviews.

25       Q.   So the inmates gave you times?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3386

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189387

```
 1        A.   Correct.
 2        Q.   And you watched from there.  But you didn't
 3   look prior to the times that the inmates gave you?
 4        A.   "Prior"?  What do you mean by --
 5        Q.   You didn't look to see any video from
 6   earlier that afternoon?
 7        A.   Yeah, I looked back just to check things.
 8   But I mean, from the interviews, we actually used
 9   those times and started from there to get right to
10   where it actually started.
11        Q.   To corroborate what you had heard?
12        A.   Yes.
13        Q.   But you think you looked back earlier in
14   the video?
15        A.   Right.  Yeah, we may have gone -- instead
16   of, you know, at 13 minutes, we may have gone back to
17   like, 11, just to make sure we covered everything to
18   that point.
19        Q.   Okay.  And I'm not asking you to speculate,
20   and I know it's been a little while, but do you
21   remember looking back before the time stamp given to
22   you by those inmates?
23        A.   Maybe minutes.
24        Q.   Okay.  Just to get ahead of it, so that you
25   could watch from that time?
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                                 e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 181388

```
 1          A.    That's right.

 2          Q.    Not hours?

 3          A.    That's right.

 4          Q.    When you -- what paperwork did you

 5    complete?

 6          A.    Just all of our memos, completed the

 7    interviews.

 8          Q.    And were those memos to Captain Daniel

 9    Blanco?

10          A.    Yes, ma'am.

11          Q.    Did you do a separate memo for each

12    interview that you conducted?

13          A.    Yes, ma'am.

14          Q.    So there was a memo with regard to your

15    interview of Mr. Armenta?

16          A.    Yes.

17          Q.    And Mr. Montoya?

18          A.    Yes.

19          Q.    And Mr. Rodriguez?

20          A.    Yes.

21          Q.    And Mr. Martinez?

22          A.    Yes.

23          Q.    Do you remember any other memos that you

24    did?

25          A.    I did one for Mr. Perez.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3389

```
 1        Q.   And those were all within the day of the
 2   murder?
 3        A.   Yes, ma'am.
 4        Q.   Do you remember talking to any other
 5   inmates in the days following about the Molina case?
 6        A.   Not in the days following -- well, maybe
 7   within a couple of weeks I talked to another inmate.
 8        Q.   Tell me about that.
 9        A.   It was basically the same type of
10   interview, just asking if he could -- you know, what
11   had happened that night, or what knowledge he had.
12        Q.   Was that interview conducted in the phone
13   yard?
14        A.   Yes, ma'am.
15        Q.   Who was that of?
16        A.   I can't remember his name.  I have it,
17   though.  Oh, I know, Inmate Gonzalez.
18        Q.   That's Samuel Gonzalez?
19        A.   Yes, ma'am.
20        Q.   And what brought you to interview Samuel
21   Gonzalez?
22        A.   I just felt that he'd be somebody we needed
23   to talk to.  We were just doing interviews, random
24   interviews of other inmates.
25        Q.   It was random?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes.  I felt it was maybe somebody we

2   needed to talk to, so I talked to him -- or

3   interviewed him.

4      Q.   If you remember, what made you think that

5   he was somebody you needed to talk to?

6      A.   I just felt he was influential.

7      Q.   Do you remember what he may have told you

8   of note or what he did tell you of note in that

9   interview related to this case?

10     A.   Not at this time.

11     Q.   Do you remember doing a memo to Captain

12  Blanco with regard to that interview?

13     A.   Yes, ma'am.

14          MS. FOX-YOUNG:  Your Honor, may I approach?

15          THE COURT:  You may.

16     Q.   Sir, without telling me what this document

17  is, do you remember it?

18     A.   Yes, I do.

19     Q.   And actually this document has been

20  admitted into evidence, and so I'll go ahead and

21  publish it.  This is Defendant's Exhibit RP-B.  And

22  you'll see on the first page it looks like this is

23  your enclosure memo, is it not, to Captain Blanco?

24     A.   Yes, ma'am.

25     Q.   And it's dated March 19, 2014?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3390

```
 1          A.   Yes, ma'am.

 2          Q.   And so was this actually the day that you

 3    interviewed Mr. Gonzalez?

 4          A.   Yes, ma'am.

 5          Q.   I know you said you don't recall exactly

 6    what was said.  Do you recall receiving a letter from

 7    Mr. Gonzalez that you attached to the memo?

 8          A.   Yes.

 9          Q.   And you reviewed that for purposes of

10    crafting a memo?

11          A.   Yes, ma'am.

12          Q.   Do you recall Mr. Gonzalez, on the 14th of

13    March, telling you something about Javier being

14    killed because of what the papers these guys had in

15    their possession?

16          A.   Yes, ma'am.

17          Q.   And that was also in the written document

18    that he gave you?

19          A.   Correct.

20          Q.   Did he tell you anything else about that

21    paperwork?

22          A.   Everything that was explained to me is

23    there in the memo.  I couldn't tell you off the top

24    of my head.

25          Q.   Okay.  And do you recall Mr. Gonzalez
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3391

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3392

```
 1    telling you that you should look at the cameras

 2    because the cameras don't lie, and that some of what

 3    he had told you would be shown on the cameras?

 4         A.    I don't remember that exactly.  But I know

 5    it was brought up.

 6         Q.    But you did review the document that he

 7    gave you fully?

 8         A.    At that time, yes.

 9         Q.    It's not typed.  It's a little hard to

10    read, but do you see the very last portion of this

11    memo on page 12976 --

12         A.    Yes.

13         Q.    -- from Mr. Gonzalez, where he says that

14    "Cameras don't lie, and what I said about some of

15    this will prove I'm right through cameras."

16         A.    Yes, ma'am.

17         Q.    Do you remember him telling you that now?

18         A.    Yes.

19         Q.    What, if anything, did you do after talking

20    to Mr. Gonzalez about the paperwork and the cameras?

21         A.    That came back -- like I was telling you,

22    we went and reviewed everything, and made sure that

23    it matched up to what we already had.

24         Q.    Okay.  You reviewed that same segment

25    starting with the part that the inmates told you this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3392

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 186

1    is where the assault began?

2         A.    Correct.

3         Q.    You didn't look at any footage from that

4    afternoon or the morning?

5         A.    No.

6         Q.    Do you know if anybody did?

7         A.    I don't know.

8         Q.    Do you remember from that camera footage --

9    do you remember where Rudy Perez was housed, what

10   cell he was in?

11        A.    I don't remember the cell, but I know it

12   was on the bottom tier.

13        Q.    Do you remember if you could see it when

14   you looked at the camera footage?

15        A.    If we looked at the cameras, we probably

16   could see, but I don't recall.

17        Q.    Specifically.

18        A.    Specifically.

19        Q.    Do you remember talking to anybody else

20   regarding the Molina murder in the days following?

21        A.    Inmate-wise?

22        Q.    Yes.

23        A.    No.

24        Q.    When you talked to Mr. Gonzalez about the

25   paperwork, and he told you that he thought that Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3393

1    Molina was killed because of papers?

2        A.    Um-hum.

3        Q.    And that's in his -- the written submission

4    he gave you.

5        A.    Yes.

6        Q.    You're somewhat familiar with SNM, right?

7        A.    Yes, ma'am I, am.

8        Q.    You've been working with SNM since --

9        A.    Actually, since I started, since 2002.

10       Q.    Okay.  So can you tell me if SNM needs

11   paperwork to validate a hit?

12       A.    Yes, they do.

13       Q.    And so during the course of this

14   investigation, did you learn that paperwork was

15   actually transferred between pods?

16       A.    We knew it was transferred between

17   facilities, and then once it got to our facility, it

18   was transferred through pods.

19       Q.    From the yellow pod to the blue pod?

20       A.    Correct.

21       Q.    But you never were able to look at the

22   cameras to see if you could find that paperwork

23   transfer?

24       A.    Right, it would be difficult to do that.

25       Q.    But you didn't look for it, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3394

```
 1          A.   I didn't look for it.
 2          Q.   Okay.  And you don't know if anybody else
 3     did?
 4          A.   No, ma'am, I don't.
 5          Q.   Going back to the interviews that you
 6     conducted on the night of the 7th.
 7          A.   Yes, ma'am.
 8          Q.   I think you said there were five.
 9          A.   Yes.
10          Q.   Did you learn anything that night about the
11     paperwork?
12          A.   Yes, I believe so.  I believe several, or
13     three of the inmates had brought it up.
14          Q.   Do you remember who told you that?
15          A.   Not off the top of my head, no.
16          Q.   But you and Mr. Maldonado heard about the
17     paperwork on March 7?
18          A.   Correct.
19          Q.   And I know that you said you don't
20     specifically remember any other interviews.  If I
21     told you that you did do an interview, or there is a
22     memo that's been produced to the defense from March
23     17, 2014, detailing an interview that you conducted
24     in the phone yard, with Art Maldonado present, does
25     that remind you -- do you remember who you might have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3395

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3396

```
 1    interviewed?
 2         A.   No, ma'am, I don't.
 3         Q.   I'm showing you here on the Elmo what's
 4    been marked as Exhibit RP-A.  It appears to be
 5    another memo that you did to Captain -- Coordinator
 6    Blanco.
 7         A.   Yes, ma'am.
 8         Q.   On the 17th.  And you can take a minute to
 9    take a look at it.  I know this is only the first
10    page of it.
11         A.   Right.
12         Q.   It's two-and-a-half pages.  And if you'd
13    like to look -- do you remember who this is?
14         A.   Yes, I believe that's Inmate Gonzalez
15    again.
16         Q.   Okay.  How do you know that it's Inmate
17    Gonzalez?
18         A.   Just from the first paragraph.  I remember
19    that discussion.
20         Q.   In any event, in the course of this
21    interview, which is 10 days after the murder, you
22    learned, did you not, that there were a number of
23    shanks in the SNM pod?
24         A.   Correct.
25         Q.   And I think this inmate tells you, in your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3396

1    words, that he knows where there are shanks, and he

2    can give you one right then, but first he wanted his

3    property back?

4         A.    Correct.

5         Q.    And he told you about one that was in 7

6    blue pod --

7         A.    Correct.

8         Q.    -- in particular.  And I think he went into

9    a great deal of detail about some history of the SNM

10   with you?

11        A.    Correct.

12        Q.    And then he -- showing you the second page

13   of this memo -- and if you look down the second to

14   last paragraph, the last full paragraph there -- I

15   think you reported to Captain Blanco that you asked

16   more about where the shanks were in the pod, right?

17        A.    Correct.

18        Q.    And do you remember what this individual

19   told you about the wheelchair program?

20        A.    Yes.

21        Q.    What did he tell you?

22        A.    He explained to me that that's where one of

23   them had come from, one of the shanks.

24        Q.    He said, "That's where all the shanks come

25   from"?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3397

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3398

```
 1          A.   Yes.
 2          Q.   Did he give you any detail about what kinds
 3     of things would come in from the wheelchair program?
 4          A.   I believe he just talked about metal,
 5     basically metal, and how they would get around the
 6     officer to bring it in.
 7          Q.   How did they get around the officer to
 8     bring it in?
 9          A.   Allegedly, they would get patted down.
10     They would leave a jacket inside the work area, and
11     then request to go back and pick it up.  And inside
12     that jacket would be the contraband.
13          Q.   Did he tell you how long that had been
14     going on?
15          A.   I don't recall how long.
16          Q.   And he told you that Jason Wright is the
17     one that brought those in from the wheelchair
18     program, right?
19          A.   Yes.
20          Q.   And he also told you that it was his own
21     duty to know where all the shanks were; is that
22     right, and who had them?
23          A.   Yes.
24          Q.   Did he tell you where all the shanks were
25     in the pod?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3398

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 192

```
 1        A.   Some were given out.  I don't believe all
 2   of them were, but some were given.
 3        Q.   And did you ask him where the shanks -- the
 4   shank or shanks that were used in the Molina killing
 5   came from?  Do you remember?
 6        A.   I don't recall, no.
 7        Q.   This same individual also told you that --
 8   something about Lupe Urquizo asking him what to do
 9   with paperwork, did he not?
10        A.   Yes.  He asked if he could help him get rid
11   of it.
12        Q.   He asked this person how he could get rid
13   of that paperwork?
14        A.   Yes, ma'am.
15        Q.   And he told you that if you or anybody
16   investigating this case were to look at the camera,
17   that you would actually see Mr. Urquizo get his
18   property, and then give an envelope to Carlos
19   Herrera; is that right?
20        A.   Yes, ma'am.
21        Q.   And having learned about these two sort of
22   major areas of inquiry from this individual, you
23   learned about metal coming from the wheelchair
24   program, you learned about the paperwork, did you go
25   back to the video at any point, and look to see if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3399

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3400

1    you could see metal coming in, or if you could see a

2    paperwork transfer?

3         A.   I didn't personally do that.

4         Q.   Okay.  How did you transmit this memo to

5    Captain Blanco?

6         A.   I typed it out and handed it to him, gave

7    him copies of it.

8         Q.   Do you know what happened to it after that?

9         A.   I don't know.

10        Q.   Did you ever talk to State Police about

11   these findings?

12        A.   I believe they received the same memos that

13   Captain Blanco -- Coordinator Blanco received.

14        Q.   Agent Palomares received the same memos?

15        A.   Yes, ma'am.

16        Q.   How do you know that?

17        A.   I gave them to him.

18        Q.   You gave them to Agent Palomares?

19        A.   Yes.

20        Q.   Did you give them to Agent Palomares the

21   same day that you wrote them?

22        A.   No.

23        Q.   Do you know when you gave them to him?

24        A.   No, I don't remember.  It was probably a

25   short time after that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3401

1        Q.   But there is not a report documenting the

2    transfer of those memos; you just handed them to him?

3        A.   I don't know.

4        Q.   Do you recall how long the investigation of

5    the murder continued after -- obviously, it was still

6    going on on the 19th -- after the 19th, did you

7    continue to interview anybody else?

8        A.   Not specifically for this particular

9    reason.  But, you know, I did continue interviewing

10   inmates, but not for this particular thing.

11       Q.   Okay.  What, if anything, did you do upon

12   learning that metal was coming out of the wheelchair

13   program and being used to make shanks?

14       A.   It was reported to Coordinator Blanco, then

15   he turns around and reports that information to the

16   Warden, and then they get together and make up a

17   plan, or whatever they're going to do.

18       Q.   And it was reported to Palomares?

19       A.   Yes.

20       Q.   Did you ever go visit the wheelchair

21   program to investigate those claims?

22       A.   Yes, I did.

23       Q.   Tell me what you did there.

24       A.   Me and Officer Maldonado, we just went down

25   to where the program is held, and we just did a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3401

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 195 3402

```
 1    walk-through, and looked at their security procedures
 2    for our own --
 3         Q.   What were those security procedures?
 4         A.   They described pretty much the same thing;
 5    that they would put tools up, do an inventory, pat
 6    down the inmates, and then release them from there
 7    back to their unit.
 8         Q.   Did you have any reason to disbelieve Mr.
 9    Gonzalez when he told you metal was coming out of
10    there?
11         A.   No.
12         Q.   You believed him?
13         A.   I believed him.
14         Q.   And do you know if anybody else did any
15    further -- made any further inquiries as to how metal
16    was coming out of the wheelchair program?
17         A.   I don't.
18         Q.   There are wheelchairs worked on in the
19    wheelchair program, right?
20         A.   Right.
21         Q.   Do you know if there were also walkers in
22    the wheelchair program?
23         A.   I believe there was just various different
24    types of wheelchairs, walkers, wheelchairs, the
25    aluminum walkers that don't have wheels on them, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3402

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 196

```
 1   sort of thing, a wide variety.
 2        Q.   Did you photograph it at that time?
 3        A.   I didn't, no.
 4        Q.   Do you know if anybody photographed the
 5   wheelchair program at the time of your walk-through?
 6        A.   No, nobody did.
 7        Q.   Did you then make a report to Captain
 8   Blanco about what you had learned at the wheelchair
 9   program?
10        A.   We verbally spoke to him and explained what
11   we had learned.
12        Q.   Was it your belief then that these inmates
13   had obtained shanks from the wheelchair program?
14        A.   I believed it was possible.
15        Q.   So you believed that it was possible, but
16   you didn't know exactly where the shanks came from,
17   right?
18        A.   We weren't for sure, but that was an avenue
19   we had to look at, and it was very possible.
20        Q.   Did anybody else do anything to exhaust
21   that avenue, to further inquire as to the metal
22   coming out of that program?
23        A.   I couldn't tell you on that.
24        Q.   Okay.  Were you present or involved in any
25   subsequent -- I think you said that the night of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3403

1    murder, you interviewed -- you talked to Rudy Perez?

2         A.   Yes, Rudy -- five of the total, I believe.

3    The memos were submitted.

4         Q.   Did you ever talk to Rudy Perez again?

5         A.   I don't recall.

6         Q.   Do you remember that Rudy Perez had a

7    walker?

8         A.   Yes, we discussed it on one of the memos

9    that I turned in.

10        Q.   One of your memos discussed Mr. Perez'

11   walker?

12        A.   Yes, ma'am.

13        Q.   That was a memo to Captain Blanco?

14        A.   Yes, ma'am.

15        Q.   What did it say about Mr. Perez' walker?

16        A.   We were just discussing the color, what

17   type, if he did have one, if anything was missing off

18   it.

19        Q.   What caused you to write that memo?

20        A.   I think we were still looking at different

21   avenues on weapons.  So we knew that was in the pod,

22   so we conducted an interview with Mr. Perez.

23        Q.   Did you compose that memo before or after

24   talking to Mr. Gonzalez, if you remember?

25        A.   I can't remember.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3404

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 198 3405

```
 1          Q.   Okay.  Was it close in time to the murder?

 2          A.   Yes.

 3          Q.   And did you, yourself, examine Mr. Perez'

 4    walker?

 5          A.   No.

 6          Q.   How did you know what color it was?

 7          A.   Through questioning through him, his

 8    answers.

 9          Q.   You asked Mr. Perez what color the walker

10    was?

11          A.   Yes, I did.

12          Q.   And what else did you ask him?

13          A.   You know, why he had it in his cell.  He

14    explained to me that he needed it to walk, to get

15    around, basically.

16          Q.   Was this on the night of the murder?

17          A.   I don't remember if it was on the night of

18    the murder.

19          Q.   Was this even close in time to the Molina

20    murder?

21          A.   Yes.

22          Q.   It was after?

23          A.   It was after.

24          Q.   And so you drafted a memo to Captain Blanco

25    that included the color of the walker?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3405

```
 1         A.   Yes.

 2         Q.   And what other details?

 3         A.   Parts that were missing off it.

 4         Q.   What parts were missing?

 5         A.   Specifically, a rod that was held down with

 6    two nuts.

 7         Q.   And how did you know that part was missing?

 8         A.   He advised me that it was missing.

 9         Q.   Mr. Perez told you that?

10         A.   Yes, ma'am.

11         Q.   But you don't know the date?

12         A.   It would be on the memo.

13         Q.   Have you seen the memo since you wrote it?

14         A.   No.

15         Q.   When you talked to Mr. Perez, he was

16    unwilling to tell you anything, make any statements

17    about the murder; is that right?

18         A.   Correct.

19         Q.   And so you recall composing this memo about

20    the walker, but it was totally based upon

21    information, secondhand information; you didn't

22    examine the walker?

23         A.   Correct.

24         Q.   Did you ever see the walker?

25         A.   No, I didn't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3406

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200 of 407

1       Q.   And you also gave this memo to Agent

2   Palomares, like the others?

3       A.   Yes, ma'am.

4       Q.   And you handed it to him?

5       A.   Yes.

6       Q.   Do you remember composing any other memos

7   with regard to this investigation?  I know there are

8   the two Gonzalez ones, and you said there were five

9   on the night of the murder, and there was one about

10   the walker.  Any others?

11       A.   I think that's all.

12       Q.   Did you ever talk to Jason Wright?

13       A.   I spoke to him, but I don't recall the date

14   or time.

15       Q.   Did you try to talk to him about taking

16   metal out of the wheelchair program after you learned

17   that from Mr. Gonzalez?

18       A.   Yeah, I believe so.

19       Q.   Would you have done a memo if you did talk

20   to him?

21       A.   Yes.

22       Q.   But sitting here today, you just don't

23   remember?

24       A.   I just don't, yeah.

25       Q.   Do you know if Mr. Perez' walker was taken

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3407

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 201

```
 1    from him?
 2         A.   He -- during the interview that I had with
 3    him, he did say that the pod had been shaken down,
 4    and he was questioned as to why his walker had been
 5    taken.  And I told him it had nothing to do with me;
 6    that it had to do with the shakedown crew that had
 7    conducted the shakedown.
 8         Q.   Do you know who took it?
 9         A.   No, I don't.
10         Q.   Somebody in the shakedown crew?
11         A.   From his statement I would assume.
12         Q.   But you don't know from any other source?
13         A.   I don't know.
14         Q.   And you've never seen it?
15         A.   No.
16         Q.   And you've never examined it.  Do you know
17    if anybody with STIU has seen it?
18         A.   Not that I know of, no.
19         Q.   Did you ever ask anybody where it was?
20         A.   No, ma'am.
21         Q.   But you talked about it as a potential
22    avenue to consider?
23         A.   Correct.
24         Q.   But never tried to locate it?
25         A.   When Mr. Perez had advised me it had been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3408

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202

```
 1    taken, I figured it had been taken for a reason.  So
 2    I no longer went to look for any of that stuff.
 3         Q.   But you were in the middle of conducting a
 4    murder investigation, right?
 5         A.   Yes, ma'am.
 6         Q.   And trying to find the source of those
 7    shanks?
 8         A.   Um-hum.
 9         Q.   But you never looked for the walker?
10         A.   I never went looking for it, no, ma'am.
11         Q.   Do you know when the shakedown -- if there
12    was any pattern to it -- when the shakedown crew
13    would shake down a pod at that time, where any
14    contraband would go?
15         A.   Usually, they confiscate and take it to ID.
16         Q.   ID?
17         A.   Yes.
18         Q.   What does that stand for?
19         A.   Inmates' property, is what it is.  And
20    that's where they put all their personal belongings,
21    things that they can't have, stuff like that, goes
22    through ID first.
23         Q.   And according to policy, they give the
24    inmate a receipt?
25         A.   Yes.  And if that was confiscated, they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    would have given him a confiscation slip.
 2         Q.   Did you ever see a confiscation slip for
 3    the walker?
 4         A.   No, I didn't.
 5         Q.   Did you ask about one?
 6         A.   No, I didn't.
 7         Q.   Did you review anything that was shaken
 8    down from those pods on the night of the murder?
 9         A.   No.
10         Q.   Do you know if anybody in STIU looked at
11    any of that property?
12         A.   No.
13         Q.   You don't know?
14         A.   I don't know if they did.
15         Q.   Do you know if State Police did?
16         A.   I don't.
17         Q.   Did your memo on Mr. Perez' walker discuss
18    the fact that it was actually taken into -- that it
19    was actually seized as contraband by the shakedown
20    officers?
21         A.   Yes.  In that memo I did put that.
22         Q.   And that it was in a property room?
23         A.   I didn't put that.  I just put down what
24    Mr. Perez had told me about it being confiscated.
25         Q.   But you didn't do any other follow-up?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3410

```
1         A.    No.
2         Q.    I understand.  Are you familiar with the
3    New Mexico Corrections Department policies regarding
4    cameras that apply to all prisons?
5         A.    I don't know it by word, but I'm familiar
6    with it.
7         Q.    You're generally familiar?
8         A.    Yes.
9         Q.    Are you familiar with the policy that
10   requires original recordings to be secured and
11   maintained for a minimum of 10 years?
12        A.    No, I'm not.
13        Q.    And that's because you didn't really handle
14   anything to do with the recordings?
15        A.    Exactly.
16             MS. FOX-YOUNG:  Your Honor, just a moment.
17             THE COURT:  Certainly.
18        Q.    Did you ever meet Agent Palomares at any
19   point during the course of the investigation?
20        A.    Yes, that night.
21        Q.    On the 7th?
22        A.    Yes, ma'am.
23        Q.    And then you described handing him memos.
24   Did you meet with him when you handed him memos?
25        A.    The memos were given to him at a later
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205412

```
 1    date, not that night, because I still hadn't written

 2    them.

 3         Q.   Okay.  I understand.  So on the 17th, when

 4    you wrote a memo that you gave to Captain Blanco, and

 5    you also gave to Agent Palomares, did you just hand

 6    it to Agent Palomares, or did you actually talk with

 7    him about the contents of it?

 8         A.   No, I believe on that one, I think it was

 9    emailed to him.

10         Q.   You emailed it to him?

11         A.   Yeah.

12         Q.   Do you know if you still have those emails?

13         A.   I might on my cell.

14         Q.   You have your e-mails going back to 2014?

15         A.   I'm hoping I do.

16         Q.   I'm sure you do a lot of emailing.

17         A.   Yes.

18         Q.   So some of the memos you emailed, but some

19    of them you handed to him?

20         A.   Yes.

21         Q.   But you gave him every memo that you wrote

22    with regard to this investigation?

23         A.   Yes.

24         Q.   Now, in addition to emailing him and

25    handing him the memos, did you also talk to him about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3412

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206

```
 1   any of these findings?
 2        A.   I believe the night of, I talked a little
 3   bit with him about some interviews, information I had
 4   received from the interviews.
 5        Q.   But everything else was in writing?
 6        A.   Yes, everything else was in writing.
 7        Q.   All right.  I'd like to show you --
 8             MS. FOX-YOUNG:  Your Honor, I'd like to
 9   move the admission of Defendant Exhibit RP-NN.  The
10   Government, I think, doesn't object.
11             THE COURT:  Any objection?
12             MR. CASTELLANO:  No objection.
13             THE COURT:  Anybody else?  Rudy Perez'
14   Exhibit NN will be admitted into evidence.
15        Q.   All right.  Looking at Exhibit NN -- it's a
16   little hard to tell with the way the light is, but it
17   appears that there is a carpeted floor.  Can you see
18   that?
19        A.   Yes.
20        Q.   And maybe a soft piece of furniture.  Do
21   you know what this is looking at?  If this is taken
22   at a room located at Southern New Mexico Correctional
23   Facility?
24        A.   I couldn't tell you.
25        Q.   Do you know if any of the facility has a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3413

```
 1   carpeted floor?

 2        A.   Yeah, a lot of the rooms have carpeted

 3   floors.

 4        Q.   Does the carpet look like this?

 5        A.   It's hard to see it in this light.

 6             MS. FOX-YOUNG:  Your Honor, may I approach

 7   the witness?

 8             THE COURT:  You may.

 9        Q.   It's a little easier to see on the

10   original.  Can you tell a little bit better looking

11   at that printout?

12        A.   Yes.

13        Q.   Do you know where that carpet is?

14        A.   No, I don't.

15        Q.   Is the STIU area carpeted?

16        A.   Yes, ma'am, it is.

17        Q.   Is it carpeted in this color?

18        A.   Yes -- well, it's similar to this.

19        Q.   Okay.  Is there anything else about that

20   photograph that indicates to you where it was taken?

21        A.   No, ma'am.

22        Q.   Okay.

23             MS. FOX-YOUNG:  Your Honor, just a moment.

24             THE COURT:  Certainly.

25        Q.   Is there wood paneling in that STIU area?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3414

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

```
 1        A.   No, not in our office, no.
 2        Q.   Okay.  But the carpet that you said looked
 3   similar to this carpet, was that there in March of
 4   2014?
 5        A.   Yes.
 6        Q.   Is there an evidence room in that area?
 7        A.   No, ma'am.
 8        Q.   Is that just the big open area?
 9        A.   This one right there?
10        Q.   The area that's carpeted, with the carpet
11   that looks like this carpet.
12        A.   Oh, yes, it's our office.  It's a big room
13   with computers and desks.
14        Q.   Okay.  In the initial interviews that you
15   conducted the night of the murder, and the next day
16   that you've told me about --
17        A.   Yes, ma'am.
18        Q.   -- that you did memos of, did you learn
19   anything about the source of the shanks in the course
20   of those interviews, the shanks that were recovered
21   and -- the shanks that were recovered that night?
22        A.   I believe there was a statement made that
23   it came from this particular wheelchair -- walker.
24        Q.   Who do you think made a statement about the
25   piece coming from a wheelchair?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3415

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 209 3416

```
 1         A.   I can't remember.  I'd have to look at the

 2    memos.

 3         Q.   Okay.  And do you know if those memos

 4    became part of the investigative file in this case?

 5    Would they be recoverable?

 6         A.   Yes.

 7         Q.   They all exist somewhere?

 8         A.   Yes.

 9         Q.   Where is that?

10         A.   I probably have copies of them for sure.

11    I'm sure my supervisor also.

12         Q.   Captain Blanco?

13         A.   Yes.

14         Q.   But you maintain a file of all of your

15    memos?

16         A.   Yes, I do.

17         Q.   Okay.

18              MS. FOX-YOUNG:  Your Honor, I'll pass the

19    witness.

20              THE COURT:  Thank you, Ms. Fox-Young.

21              Any other defendant have any questions?

22              All right.  Mr. Castellano, do you have

23    cross-examination of Mr. Holguin?

24              MR. CASTELLANO:  Yes, sir, I do.

25              THE COURT:  Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 3416

```
 1                        EXAMINATION
 2   BY MR. CASTELLANO:
 3        Q.   Good afternoon, Mr. Holguin.
 4             Let me ask you about paperwork.  In all
 5   your years with the Corrections Department, how many
 6   times have you recovered paperwork in a case like
 7   this, where you actually found evidence of the order
 8   to kill somebody?
 9        A.   There has been a couple of instances.
10        Q.   A couple of instances in how many years?
11        A.   Seventeen.
12        Q.   And what is the difficulty of recovering
13   paperwork in a situation like that?
14        A.   Nobody gives it up, so you have to actively
15   be out there looking for it.
16        Q.   And in your -- based on your training and
17   experience, how is it that people get rid of
18   paperwork?
19        A.   Tear it, flush it, burn it, swallow it.
20        Q.   So in your experience, have there been
21   times where you've asked people about paperwork and
22   later learned that it had been destroyed?
23        A.   Yes.
24        Q.   Give us some examples, if you would, about
25   a conversation about paperwork, and why it's no
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3417

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213418

```
 1   longer around?

 2        A.   Basically, it's no longer around because

 3   they don't want anybody to find out about it, or be

 4   traced.  So, like, on certain types of drug

 5   transactions, with names on it, obviously they don't

 6   want people to know who is buying the drugs, or

 7   whatever contraband is being introduced.  And they

 8   get rid of it in that manner so that we can't recover

 9   it.

10        Q.   And in this case you said there was a

11   shakedown group?

12        A.   Yes.

13        Q.   Did they find any paperwork?

14        A.   I wouldn't know about that, sir.

15        Q.   So, in other words, after the shakedown,

16   were you aware of anyone forwarding paperwork

17   regarding this murder?

18        A.   From the shakedown crew?

19        Q.   Correct.

20        A.   No, sir.

21        Q.   And from anyone else, were you aware of the

22   recovery of paperwork?

23        A.   No, sir.

24        Q.   Were you aware of whether anyone was

25   looking for the paperwork?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3418

```
 1          A.   No, sir.

 2          Q.   Now, in this case, Mr. Gonzalez actually

 3    told you what happened to the paperwork, didn't he?

 4          A.   Yes.

 5          Q.   And what did he tell you?

 6          A.   I'd have to read the memo.  I don't have it

 7    in front of me.

 8          Q.   I'll show it to you.

 9          A.   Okay.

10          Q.   I'm showing you -- this is Defendant RP-A.

11    And for the record, it's also DeLeon 12964 on the

12    Bates stamp.  I'm going to just go ahead and point to

13    it, so you don't have to read the whole document.

14               What can you tell us about the paperwork?

15          A.   Just what I wrote right there.

16          Q.   We have to make a record, so go ahead and

17    tell us what you read.

18          A.   If you can put it up, I'll read it.

19          Q.   Sure.

20          A.   I put, CI looked bad so he got rid of it.

21    He said, if you look at the camera, you'll see, and

22    then give a yellow envelope to Carlos Herrera.

23          Q.   You said here, what happened to the

24    paperwork?

25          A.   So he got rid of it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3419

1      Q.   Right.  Who got rid of the paperwork?

2      A.   He doesn't specify.

3      Q.   And who are the two people we're talking

4   about?  We're talking about Lupe Urquizo, a

5   conversation between him and Mr. Gonzalez; is that

6   correct?

7      A.   Right.

8      Q.   So one of those two people apparently got

9   rid of the paperwork?

10      A.   Well, it's insinuating Urquizo.

11      Q.   And this is a memo that's dated March 17 of

12   2014?

13      A.   Right.

14      Q.   So, in other words, 10 days after the

15   murder they tell you what happened to the paperwork?

16      A.   Correct.

17      Q.   So if someone tells you the paperwork has

18   been destroyed, are you going to continue looking for

19   it?  Or what's your next step?

20      A.   We'll continue to look for it.

21      Q.   Did anybody find it?

22      A.   No.

23      Q.   Since this report takes place 10 days after

24   the murder, do you know from your recollection, from

25   reading this, when the paperwork was destroyed?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3420

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3421

```
 1        A.   No, I don't.

 2        Q.   So you just know sometime between the

 3   murder itself and 10 days later it was destroyed?

 4        A.   Correct.  Or it could have been prior to

 5   the murder.

 6        Q.   Why do you think it could have been prior,

 7   just from your training and experience?

 8        A.   We don't know exactly when it came in, so

 9   it could have been read and destroyed at that time

10   prior to the murder.

11        Q.   And so, in other words, even though

12   paperwork may be necessary for a hit like this, once

13   everybody reviews the paperwork, is there a need to

14   keep it around anymore?

15        A.   Not that I -- I wouldn't think so.

16        Q.   And you also had an indication here that

17   Jason Wright was taking metal from the wheelchair

18   program.  Do you recall that?

19        A.   Yes.

20        Q.   Now, even though there was a discussion

21   about the source of the murder weapons, is it fair to

22   say you believed you had already recovered the murder

23   weapons in this case?

24        A.   Yes.

25        Q.   How important to you was it at that point,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3421

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 215

 1   since you actually recovered the murder weapons, to

 2   look for the source of the weapons?

 3        A.   It was still important, because we were

 4   still looking for weapons.  I believe we continued

 5   days after that looking for weapons.

 6        Q.   Okay.  Now, weapons in general, or the

 7   weapons from the murder?

 8        A.   Weapons in general.

 9        Q.   Okay.  So, in other words, since you had

10   the weapons from the murder, were you looking for any

11   other murder weapons from the Molina murder?

12        A.   Yes, we were still looking.

13        Q.   Did you find anything else that you knew or

14   believed to be those weapons?

15        A.   No.

16        Q.   Now, why was it important to have

17   information that Jason Wright was bringing weapons or

18   metal from the wheelchair program?

19        A.   During the course of the interviews, it was

20   just questions that we were asking, trying to figure

21   out where the contraband was coming from.  And these

22   were statements that were made.

23        Q.   Was it one of the theories that the weapons

24   may have come from the wheelchair program?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3422

```
 1          Q.   Okay.  I'm going to test your memory here a
 2     little bit.  From the initial interviews you did of
 3     Timothy Martinez and the others, what did you
 4     learn -- I'm going to go down the list.  What did you
 5     learn from Timothy Martinez about the murder from
 6     your discussion with him?
 7          A.   I would be more comfortable referring back
 8     to the memo, because I did notate exactly what was
 9     said.
10          Q.   Do you recall if he pointed the finger at
11     anybody?
12          A.   I don't recall that he pointed the finger
13     at anybody.
14          Q.   What about Mario Rodriguez, also known as
15     "Blue"?
16          A.   No, I don't recall.
17          Q.   What about Jerry Montoya or Jerry Armenta?
18          A.   Without the memo, I couldn't.
19          Q.   What about Rudy Perez?
20          A.   No.
21          Q.   No, you don't recall, or no, he didn't give
22     you anything?
23          A.   No, he didn't say anything in reference to
24     the murder.
25          Q.   When was Rudy Perez a suspect in this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3423

```
 1    murder in your eyes?

 2                MS. FOX-YOUNG:  Objection, leading.

 3                THE COURT:  Overruled.

 4         A.    In my eyes?  I never had him as a suspect

 5    in the murder.

 6         Q.    Please explain that.

 7         A.    Well, I know Mr. Perez, and he was not

 8    healthy at the time, so I didn't -- me, personally, I

 9    did not believe that he would be involved in that

10    type of activity, due to his health.

11         Q.    And in addition to what you knew of him,

12    what did you hear about him and his involvement with

13    this murder?

14         A.    I heard nothing other the discussion I had

15    with him about his wheelchair -- or his walker.

16         Q.    So if that were the case, how much of this

17    investigation did you focus on Mr. Perez?

18         A.    Me, personally?  Just that memo and

19    interview that I conducted with him.

20         Q.    So what was your belief, then, about his

21    walker and how it may have been involved?

22         A.    It was explained on that memo.

23         Q.    So, in other words, was it your belief at

24    all that he had given the pieces of his walker to be

25    made into shanks?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3424

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3425

```
 1        A.   According to his statement, no.

 2        Q.   At that point, did you have anything to

 3   indicate otherwise?

 4        A.   No.

 5        Q.   And based on that, how much further did you

 6   look into Rudy Perez as a suspect in this murder?

 7        A.   That would be the extent of it right there.

 8        Q.   Now, is it fair to say, even for Mr.

 9   Gonzalez, that you had other people who became

10   suspects?

11        A.   Yes.

12        Q.   Do you remember what he said -- first of

13   all, what did he say about people like "Dan Dan" or

14   Daniel Sanchez, in terms of their authority to call a

15   hit like this?

16        A.   Again, without the memo, I couldn't.

17        Q.   Let me start with -- this is page 12968,

18   and this is from Defendant's RP-B.  I'll go ahead and

19   show you, for starters; by looking at this, do you

20   remember him telling you about a tabla or a table?

21        A.   He wrote this.  He didn't tell me.

22        Q.   Well, did you review it and discuss it with

23   him in any way?

24        A.   No.

25        Q.   Now, reading this, and based on what you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3425

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219

```
 1    knew about the SNM, what significance did it have

 2    that people like "Dan Dan" and Carlos Herrera are

 3    mentioned as being on the table?

 4         A.   Correct.  That would indicate they were

 5    some kind of decision makers within our facility.

 6         Q.   And what significance did that have, in

 7    your mind, that they were decision makers?

 8         A.   That they could make decisions on anything

 9    that happened in that unit.

10         Q.   Including a murder?

11         A.   Including a murder.

12         Q.   Okay.  I'm going to point out to you, so

13    you don't have to read the whole thing.  It's on page

14    12972 of that exhibit.  And it says, "Sparky got his

15    shank from detail.  'Dan Dan's shank was also from

16    detail.  And that's the one that Scarface was caught

17    with."

18              So did you actually catch "Dan Dan," or

19    Daniel Sanchez, with any shanks as a result of these

20    searches?

21         A.   Not me.

22         Q.   Are you aware of anyone else?

23         A.   No.

24         Q.   Going back to the authority to call shots,

25    according to this witness, do you see here where Mr.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3426

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 220

```
 1    Gonzalez claimed he told Alex and Carlos that he was
 2    going to stick this dude?
 3         A.   Yes.
 4         Q.   And do you know who he was talking about
 5    when he referred to Alex and Carlos?
 6         A.   I'm guessing Carlos Herrera and -- I don't
 7    know Alex's last name.
 8         Q.   I'm showing you the same page I showed you
 9    earlier about the table.  Was it your understanding
10    that Alex referred to Alex Munoz and Carlos Herrera?
11         A.   Yes.
12         Q.   Going back to page 12974.  I'm going to go
13    ahead and indicate for you here as well.  So on the
14    day of the murder, he was called to the door by "Dan
15    Dan."  Who do you understand "Dan Dan" to be?
16         A.   That's one of the individuals on the table.
17         Q.   Is that Daniel Sanchez?
18         A.   Yes.
19         Q.   And is it your understanding here that he
20    was advised not to move on "Marijuano"; in other
21    words, "Dan Dan" was telling him not to do something?
22         A.   Correct.
23         Q.   Is that because he had authority to order
24    him not to do things?
25         A.   Well, he's just advising him, so I guess
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221 3428

```
 1    he's just telling him.
 2        Q.   Or, if he did, he would get dealt with?
 3        A.   Um-hum.
 4        Q.   Okay.  I'm going to focus on the bottom of
 5    the page now here.  Do you know who "Marijuano" is?
 6        A.   Lupe Urquizo.
 7        Q.   Lupe Urquizo?
 8        A.   Yes.
 9        Q.   And so it's Mr. Gonzalez' version that when
10    "Marijuano" got his property, he noticed he was
11    giving some type of paperwork to Alex and Carlos?
12        A.   Correct; that's what he wrote.
13        Q.   Do you know why he would have given
14    paperwork to Alex and Carlos, as people who were on
15    the table?
16        A.   No.
17        Q.   And when we talk about paperwork, was it
18    your understanding that that was the paperwork that
19    would result in the murder of Javier Molina?
20        A.   According to this, yes.
21        Q.   So anywhere in here, in this statement, do
22    you see any mention of Rudy Perez?
23        A.   No, I don't.
24        Q.   Once again, you do you see the discussion
25    at the bottom of the page, page 12975 of the exhibit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3428

 1   It says, "He asked me if he should throw the papers

 2   away.  I couldn't say no because it would sound

 3   fishy.  So I told him, 'Do what you think is right.'"

 4   And so is that a discussion, once again, of the

 5   paperwork on Javier Molina?

 6        A.   Yes, I guess so.

 7        Q.   Based on that statement, were you surprised

 8   that there was never a recovery of the paperwork?

 9        A.   No.

10        Q.   Are you ever surprised when you can't

11   recover paperwork such as this?

12        A.   No.

13        Q.   When you saw the video of the Molina

14   murder, what do you recall about how many camera

15   angles you had?

16        A.   I only looked at one, so I only know of

17   one.

18        Q.   So you had one angle that you were able to

19   see?

20        A.   That I looked at.

21        Q.   Now, you mentioned earlier that it was your

22   belief that three inmates told you about paperwork

23   the night of the murder.  Do you remember that?

24        A.   Yes.

25        Q.   Do you remember who that was?



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                            1-800-669-9492
                          PROFESSIONAL COURT        e-mail: info@litsupport.com
                          REPORTING SERVICE
                                                              DNM 3429

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223430

```
 1          A.   I don't.
 2          Q.   Do you remember what they said other than
 3    discussion of paperwork?
 4          A.   Yes.
 5          Q.   What do you remember?
 6          A.   I just remember that the paperwork was
 7    brought down from Santa Fe, from the facility in
 8    Santa Fe, to the facility at Southern.
 9          Q.   And what did you or others do in response
10    to receiving that information?
11          A.   What did we do?
12          Q.   Yes.  In other words, did you begin
13    searching for the paperwork?
14          A.   Yes.
15          Q.   Did you find the paperwork?
16          A.   No.
17          Q.   And how soon after you received that
18    information did you search for the paperwork?
19          A.   This was after the homicide had already
20    occurred.  So it was during that period of the
21    shakedown that they were given directives to look for
22    this paperwork also.
23          Q.   So to give us an idea, it would have been
24    within a day?  Within two days?  What's your best
25    recollection?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3430

```
 1        A.    Probably within hours.

 2        Q.    And based on the information you received,

 3   where would you have searched for the paperwork?

 4        A.    We would have probably started in the pod.

 5   With the information that we received we would have

 6   probably started with that, and then worked our way

 7   to there.

 8        Q.    And that still resulted in no finding of

 9   paperwork?

10        A.    As far as I know, no.

11             MR. CASTELLANO:  May I have a moment, Your

12   Honor.

13             THE COURT:  You may.

14             MR. CASTELLANO:  Thank you, Your Honor.

15             THE COURT:  Mr. Castellano.

16   BY MR. CASTELLANO:

17        Q.    I just want to make sure I understood you.

18   If I understood you correctly, going back to your

19   discussion of Rudy Perez and his walker, was he a

20   suspect at all in your eyes, from the information you

21   learned and from your discussions with him?

22        A.    In my eyes, no.

23        Q.    And even with a piece missing from his

24   walker?

25        A.    Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3431

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225

1              MR. CASTELLANO:  I pass the witness, Your

2    Honor.

3              THE COURT:  Thank you, Mr. Castellano.

4              Any defendant have anything?  Mr. Maynard?

5                        EXAMINATION

6    BY MR. MAYNARD:

7         Q.   Mr. Holguin, being with the prison system

8    corrections for a long time, you're familiar with the

9    camera operation system?

10        A.   Yes.

11        Q.   And you're familiar with how the different

12   pods segregate inmates out from each other?  I mean,

13   it's not easy to walk from one pod to the other if

14   you're an inmate?

15        A.   Correct.

16        Q.   All right.  And you were describing the

17   capacity or the technical capacity of the cameras a

18   while ago.  The cameras go on 24 hours, 24/7?

19        A.   Yes, sir.

20        Q.   And digitally, do they record and then

21   overwrite, and record and overwrite?

22        A.   My understanding is that, yes, they record

23   continuously, and somewhere it starts pushing stuff

24   out as it gets full.

25        Q.   I mean, how much history is in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3432

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226

```
 1    recording before it's pushed out?  Like a day, 24
 2    hours?  Two days?
 3         A.   I couldn't tell you exactly.  I would
 4    assume more than a day.
 5         Q.   You would assume more than a day?
 6         A.   Yes, because --
 7         Q.   Now, when you first started investigating
 8    this homicide, you hadn't spoken with Mr. Gonzalez,
 9    Samuel Gonzalez?
10         A.   No.
11         Q.   And you spoke with him, was it, how many
12    days later?
13         A.   I believe I said 10.
14         Q.   The 10th?
15         A.   Ten days.
16         Q.   Ten days later, around the 17th?
17         A.   Correct.
18         Q.   Okay.  Now, had the cameras in the pod
19    where the homicide occurred, had the memories been
20    completely recorded?
21         A.   I couldn't tell you that.
22         Q.   You don't know?
23         A.   No, sir.
24         Q.   And you've seen what is preserved for
25    purposes of this particular case, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3433

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3434

1        A.    Yes.

2        Q.    And how long is that?

3        A.    I couldn't tell you exactly.

4        Q.    Like 10 minutes?

5        A.    Yeah.

6        Q.    Five minutes, 10 minutes?

7        A.    Like 10 minutes.

8        Q.    And so, as far as you know, the rest of

9   those 24 hours, or maybe 23 hours and 50 minutes, was

10  just deleted.  Has it been preserved?

11       A.    I couldn't tell you if it has or hasn't.

12       Q.    Now, there is also cameras covering angles

13  between pods?

14       A.    Correct.

15       Q.    Now, Mr. Herrera was not in that pod when

16  the homicide occurred, was he?

17       A.    I don't recall where he was at.

18       Q.    You don't know.  Okay.

19             When did you first start focusing on

20  paperwork?

21       A.    Probably right when we started conducting

22  the interviews, it was brought up.

23       Q.    And how soon?

24       A.    That would have been the night of.

25       Q.    The night of, and there was mention of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228435

```
 1    paperwork?

 2         A.   Yes.

 3         Q.   All right.  And the paperwork naturally

 4    would be something that's exchanged between different

 5    people?

 6         A.   Correct.

 7         Q.   Would there be a good probability that that

 8    paperwork exchange would be on a camera?

 9         A.   If the camera caught it, yes.

10         Q.   Was there any attempt to preserve -- and

11    apparently not, not that you know of -- there was no

12    attempt to preserve the entire memory that was

13    present in the camera after the homicide was

14    discovered?

15         A.   Correct.  To my knowledge, yes.

16         Q.   To your knowledge.  And as far as you know,

17    there was no attempt to preserve any of the memory in

18    the cameras of the neighboring pods?

19         A.   Correct.

20         Q.   Now, has there been any attempt to your

21    knowledge -- not just personal knowledge, but your

22    awareness that you've heard from other

23    investigators -- to try to pin down what the

24    paperwork that's missing might have been about?

25         A.   Yes.  But, like I said, we have no
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3435

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229

```
1    resources to evaluate that, so it would be

2    speculation.

3         Q.   But it would have something to do with the

4    victim of the homicide?

5         A.   Yes.

6         Q.   And so the state and the feds have

7    resources to trade 302s or reports of investigation

8    in which Mr. Molina was involved?

9         A.   I would guess, so yes.

10        Q.   Okay.  And we've heard reference to a

11   Mr. -- is it, Urquizo, the name?

12        A.   Urquizo.

13        Q.   Urquizo.  Had he been transferred from

14   another facility?

15        A.   Yes.

16        Q.   From Santa Fe?

17        A.   Yes.

18        Q.   Now, security measures are taken when

19   inmates travel from pod to pod?

20        A.   Correct.

21        Q.   And security measures are taken when

22   inmates travel from facility to facility?

23        A.   Correct.

24        Q.   And if you could describe those security

25   measures.  There is a pretty thorough check of all of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3436

1    the personal property and paperwork, is there not?

2         A.   I couldn't tell you exactly what they do.

3    I could tell you what I do in reference to that.

4         Q.   Well, let's first hear what you do.  And

5    then, if you're aware of any policy.  We'll find out

6    if you comply with policies, I guess.

7         A.   When we transfer somebody out, we go

8    through their property.  We strip search, pat-down,

9    place handcuffs, restraints on the individual.  But

10   the most important thing is we do go through the

11   property.  We do check the property.

12        Q.   Okay.  And the property, typically, would

13   not be a lot, but what would it consist of?

14        A.   Personal stuff, their personal clothing,

15   paperwork, pictures, things of that nature.

16        Q.   Okay.  Now, if the paperwork looks anything

17   like a legal document, do you read it?

18        A.   No.  We go through it.  We don't read it,

19   though.

20        Q.   Okay.  So you don't look -- your practice

21   is not to actually read papers?

22        A.   No, not to read legal documents --

23        Q.   Okay.

24        A.   -- that pertains to the case.

25        Q.   How about handwritten personal letters?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231438

```
 1        A.   Yes, we'll look through that as well.

 2        Q.   You'll look through that.  And, if you're

 3   aware, would a staff member in Santa Fe or in Las

 4   Cruces look through those papers in that manner when

 5   a person is transferred out and transferred in?

 6        A.   I'm sure they do.

 7        Q.   And presumably there is a record of that

 8   somewhere?

 9        A.   Yes.

10             MR. MAYNARD:  No further questions.

11             THE COURT:  Thank you, Mr. Maynard.

12             Anyone else?  Ms. Fox-Young, do you have

13   redirect of Mr. Holguin?

14             MS. FOX-YOUNG:  Thank you, Your Honor.

15             THE COURT:  Ms. Fox-Young.

16                    REDIRECT EXAMINATION

17   BY MS. FOX-YOUNG:

18        Q.   Mr. Holguin, I think Mr. Castellano asked

19   you about recovering the murder weapons and whether

20   you continued to look for source of weapons.  And you

21   said that it was important to keep looking, right?

22        A.   Correct.

23        Q.   And you don't know, sitting here today, do

24   you, whether the shanks recovered were the murder

25   weapons?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3438

1        A.    From the video, yes, we're assuming that

2    those are the ones that were used.

3        Q.    You're assuming, though, you don't know

4    that you had the murder weapons?

5        A.    Right at that time, no.

6        Q.    And you don't know where they came from?

7        A.    No.

8        Q.    The night of -- well, during the course of

9    all of your interviews, your investigation, nobody

10   pointed the finger at Rudy Perez?

11       A.    No.

12       Q.    And are you aware that someone at the New

13   Mexico Corrections Department did photograph a

14   walker?

15       A.    I'm personally not aware of it --

16       Q.    Okay.

17       A.    -- other than this picture you just showed

18   me.

19       Q.    You were asked a lot of questions about

20   whether you had tracked down the murder weapons, and

21   what evidence you had collected, and what conclusions

22   you had drawn.  Your job in this case was just to

23   chase down evidence, right, and conduct interviews?

24       A.    Exactly.

25       Q.    And it was State Police's job to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3439

1    investigate the case and figure out who ought to be

2    charged, right?

3         A.   Yes, ma'am.

4         Q.   And that was Agent Palomares?

5         A.   Yes, ma'am.

6         Q.   With regard to the video, I just wanted to

7    clarify, you told me -- and I know you couldn't put

8    an exact time on it -- but you told me that in March

9    of 2014, you think you could go back and look at a

10   month's worth of video prior to current, right?

11        A.   Yes.

12            MS. FOX-YOUNG:  Thank you, Your Honor.

13   That's all.

14            THE COURT:  Thank you, Ms. Fox-Young.

15            All right.  Mr. Holguin, you may step down.

16   Is there any reason that Mr. Holguin cannot be

17   excused from the proceedings?  Mr. Castellano?

18            MR. CASTELLANO:  No, Your Honor.

19            THE COURT:  How about you, Ms. Fox-Young?

20            MS. FOX-YOUNG:  No, Your Honor.

21            THE COURT:  Anyone else?  Mr. Maynard?

22   Anybody?  All right.  You're excused from the

23   proceedings.  Thank you for your testimony.

24            All right.  Why don't we take our afternoon

25   break.  We'll be in recess for about 15 minutes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3440

```
 1                    (The Court stood in recess.)
 2               THE COURT:  All right.  Let's everybody
 3    grab a seat.  If we've got everybody with an
 4    attorney.  Look around and help your fellow man on
 5    this.  Make sure everybody has got an attorney.
 6               All right.  Mr. Villa, you've got your next
 7    witness or evidence?
 8               MR. VILLA:  Your Honor, Ms. Fox-Young is
 9    actually bringing back Mr. Holguin.  There is some
10    new information that's come to light, so I'm going to
11    let her re-call him and examine that.
12               THE COURT:  All right.
13               All right.  Mr. Holguin, if you'll come up
14    and take your seat in the witness box.  I'll remind
15    you that you're still under oath.
16               Ms. Fox-Young.
17               MS. FOX-YOUNG:  Thank you, Your Honor.
18                 FURTHER REDIRECT EXAMINATION
19    BY MS. FOX-YOUNG:
20          Q.   Mr. Holguin, I apologize.  I neglected to
21    ask you in your earlier testimony whether you brought
22    any paperwork with you today.  Did you?
23          A.   Yes, ma'am, I did.
24          Q.   And is the paperwork that you brought with
25    you your investigative file related to the Molina
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3441

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 235

```
 1    case?

 2         A.   Yes, ma'am, it is.

 3         Q.   And what does that contain?

 4         A.   Memos, copies of the pod, the inmates in

 5    the pod at the time, and I believe some other

 6    personal notes that I took during my interviews.

 7         Q.   Related to your investigation?

 8         A.   Yes, ma'am.

 9         Q.   And that memo that you talked to me about

10    earlier with regard to Rudy Perez' walker, and your

11    interview of him, is that in there?

12         A.   Yes, ma'am, it is.

13         Q.   Okay.  And that memo talks about when Mr.

14    Perez told you a piece went missing from his walker,

15    doesn't it?

16         A.   Yes, it does.

17         Q.   What does it say about that?

18         A.   I'd have to look at it again.

19              MS. FOX-YOUNG:  Okay.  Your Honor, I think

20    the Government has Mr. Holguin's investigative file.

21    I'd like to move its admission as an exhibit in

22    total, but I don't have it in my hands.

23              THE COURT:  Any objection to that, Ms.

24    Armijo?

25              MS. ARMIJO:  Yes, for several reasons.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3442

 1   One, there is information here that's not related to

 2   the Molina murder, or this motion.

 3          During the course of his direct

 4   examination, when he was talking about memos that he

 5   had written, that we had not seen, I went out to try

 6   and find his file.  And in looking at it, there are

 7   some memos here that I know that we, prosecution,

 8   don't have.  And I don't believe that Palomares has

 9   seen it.  We will disclose it immediately.  In fact,

10   I suggested that he go and copy it immediately.  And

11   I don't oppose some of the items.

12          But other items have inmates' personal

13   information that we normally redact.  There is

14   information in here about other homicides that we

15   would be opposed to -- that are some that are

16   possibly ongoing investigations, that we would object

17   to.

18          We certainly don't object to the admission

19   of this 3/14/14.  We just need to make a copy,

20   because this is the only copy that could be in

21   existence.

22          THE COURT:  Let me have Ms. Fox-Young --

23   and maybe you could ask him some questions -- what is

24   this?  It sounded like, when you were questioning Mr.

25   Holguin, it was the investigation file for the Molina

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3443

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 233444

 1  murder.  Now, Ms. Armijo seems to look at it, and her

 2  description of it is it may be much broader than

 3  that; just murders.  Do you want to talk to him a

 4  little bit about what's in this file?

 5  BY MS. FOX-YOUNG:

 6      Q.   Certainly.  Mr. Holguin, I know you said

 7  that this file contains memos related to the Molina

 8  murder; is that right?

 9      A.   Yes, ma'am.

10      Q.   And also notes related to the Molina

11  murder?

12      A.   Yes.

13      Q.   Does it contain anything that, in your

14  opinion, is unrelated to the murder?  Is it all work

15  that you did in this investigation?

16      A.   There is probably some stuff in there

17  that's unrelated to the murder.

18      Q.   Okay.  Have you reviewed it?

19      A.   Not recently.

20      Q.   But you brought it in response to our

21  subpoena today, as responsive on this case?

22      A.   Yes, ma'am.

23           MS. FOX-YOUNG:  Your Honor, we've had only

24  a moment, maybe 30 seconds, to look at the file.  It

25  clearly contains Brady material.  And if the Court

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3444

 1   would like, I can get into the details.  I don't

 2   think the Government objects.  I don't think the

 3   Government will tell you it's not Brady.  It's pretty

 4   significant, and it's highly relevant to our motion.

 5   The problem is we take time -- I mean, I don't want

 6   to waste the rest of the Court's day messing around

 7   with what is or isn't in it, and I would suggest that

 8   maybe we could have it admitted under seal.

 9        I understand that there is confidential

10   information the Government is concerned about

11   disclosing.  But we don't want to lose any of the

12   contents.  And there is Brady in there that should

13   have, frankly, been disclosed to the defense a long

14   time ago.  I think, for the Government to say now

15   they're going to make a determination about what's

16   relevant and what isn't, is somewhat problematic.  I

17   think, if we can just get it admitted, and it's under

18   the seal, and maybe the Court can review it in

19   camera, then we don't have a problem with any

20   documents disappearing.

21        THE COURT:  Well, I think it's in the

22   Government's possession.  I don't think any documents

23   are going to disappear.  Why don't we do this:  Why

24   don't we give it an exhibit number, and it will just

25   be a placeholder right now for those documents that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3445

```
 1    the Government is going to turn over.  And then, if
 2    we have a dispute on some, then we'll work out a way
 3    to resolve it.  So why don't you give me a number.
 4    What's your next number?
 5              MS. FOX-YOUNG:  It's RP-OO, Your Honor.
 6              THE COURT:  Should have remembered,
 7    shouldn't I?  All right.  So is this an acceptable
 8    way to do it?
 9              MS. ARMIJO:  Yes, Your Honor.
10              THE COURT:  All right.  So I'll admit
11    RP-OO.  We don't exactly know the contents of it.
12    But it will be at least some materials that the
13    Government, after reviewing Mr. Holguin's file, are
14    willing to produce.  And then, if there is some that
15    they don't produce, we'll figure out what we're going
16    to do with that.
17              MS. FOX-YOUNG:  Your Honor, I think it
18    might make sense if we move to admit the one memo
19    that the Government doesn't object to admitting,
20    that's clearly related to Rudy Perez and Mr.
21    Holguin's investigation with regard to the walker.
22    It's just, I think, a three-page document.  And I
23    don't think the Government believes it needs to be
24    redacted.  If we could move its admission as a
25    separate exhibit and get that in the record.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3446

```
 1                  THE COURT:  Any objection to that, Ms.
 2    Armijo?
 3                  MS. ARMIJO:  As long as I can go get a copy
 4    of it because this is the only copy we have.
 5                  THE COURT:  All right.  So that copy of
 6    that three-page memo will be admitted as Rudy Perez'
 7    Exhibit RP-PP; correct?
 8                  MS. FOX-YOUNG:  Yes, Your Honor.
 9                  THE COURT:  Anybody got a problem with the
10    way we're doing this?  All right.  So it will be
11    admitted into evidence.
12    BY MS. FOX-YOUNG:
13        Q.    Mr. Holguin, I only have one copy of this
14    memo, and I don't know, did you have a chance to look
15    at it today?
16        A.    No.
17        Q.    Okay.
18                  MS. FOX-YOUNG:  Your Honor, may I approach
19    the witness?
20                  THE COURT:  You may.
21        Q.    Mr. Holguin, is this another memo that you
22    drafted for Captain Blanco?
23        A.    Yes, ma'am, it is.
24        Q.    And what is the date on it?
25        A.    3/14/14.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3447

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

1       Q.   Okay.  And you maintained a copy for

2    yourself and submitted one to Captain Blanco?

3       A.   Yes.

4       Q.   And you also submitted one to Agent

5    Palomares?

6       A.   Yes.

7       Q.   And did you submit that to Agent Palomares

8    by email or by hand?

9       A.   I can't remember.

10       Q.   One or both?

11       A.   Yes, ma'am.

12       Q.   And if you did send to it him by email, you

13    might still have those emails?

14       A.   Yes, ma'am.

15       Q.   We talked earlier about Mr. Perez' walker

16    and the memo that you wrote with regard to the

17    missing part.  Is this the memo you were talking

18    about?

19       A.   Yes, ma'am, it is.

20       Q.   And this has been admitted as -- or, Your

21    Honor, I move the admission of Defendant's Exhibit

22    PP.

23            THE COURT:  We've admitted it.

24       Q.   It's in evidence.

25            In this memo do you tell Captain Blanco and



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com

DNM 3448

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 242

1    Agent Palomares anything about a part that was

2    missing from Rudy Perez' walker?

3         A.   Yes.  Through this memo, yes, I do.

4         Q.   What did you tell them?

5         A.   I advised them in the memo where it states

6    that a piece of metal was taken from his walker.  And

7    there was two nuts laying on the floor, was how he

8    knew it was missing.

9         Q.   Okay.  Did your memo say anything about

10   when that piece went missing?

11        A.   I don't have a date on it.  I just -- where

12   he advised me that they were conducting shakedowns in

13   his unit, and found that the metal part was missing

14   from it.  And that's why they confiscated his walker,

15   three to four weeks ago, prior.

16        Q.   So your memo is dated March 14, 2014?

17        A.   Yes, ma'am.

18        Q.   Is that the day -- I'm sorry, you say in

19   the memo that you conducted the interview the day

20   before?

21        A.   Yes.

22        Q.   And as you just said, you learned from Mr.

23   Perez, he told you that he noticed the part was

24   missing three to four weeks prior?

25        A.   Yes.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492


PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

DNM 3449

```
 1          Q.    So that would put the part missing sometime
 2   in February?
 3          A.    Yes.
 4          Q.    Well in advance of Javier Molina's death?
 5          A.    Yes.
 6          Q.    And apart from providing this information
 7   to Agent Palomares and Captain Blanco -- Coordinator
 8   Blanco, did you do anything else to chase down what
 9   might have happened to that walker?
10          A.    No, ma'am, I didn't.
11          Q.    In the course of your memo, you also talk
12   about Mr. Perez telling you that he wasn't a part of
13   the murder; is that right?
14          A.    Correct, the memo, yes.
15          Q.    And that he had heard some things after the
16   fact, but that he wasn't a part of it, and that he
17   was in his cell that night?
18          A.    Correct.
19          MS. FOX-YOUNG:   Thank you, Your Honor.
20   I'll pass the witness.
21          THE COURT:   Any other questions, Mr.
22   Castellano?
23          MR. CASTELLANO:   Yes, Your Honor.
24          THE COURT:   All right.   Mr. Castellano.
25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1                    EXAMINATION
 2   BY MR. CASTELLANO:
 3        Q.   Okay.  Mr. Holguin, this is the same
 4   Exhibit RP-PP, and what we're talking about here is a
 5   statement where Mr. Perez claimed the parts went
 6   missing three or four weeks ago.  Do you see that?
 7        A.   Yes.
 8        Q.   By his claim, this would be a time before
 9   the Javier Molina murder?
10        A.   Correct.
11        Q.   And then at the bottom of the page, there
12   is an indication where you ask him what he knew about
13   the murder.  Do you see that?
14        A.   Yes, I do.
15        Q.   And then he just claimed he wasn't part of
16   it.  He claimed he didn't see anything.  And that he
17   saw Javier Molina on the floor; is that correct?
18        A.   Yes.
19        Q.   But he did hear afterwards, in segregation,
20   that everybody knew there was paperwork on Molina,
21   and they had been waiting for it for a while to come
22   in?
23        A.   Correct.
24        Q.   Do you know how long people had been
25   waiting for the paperwork, from your conversation
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    with Mr. Perez?

 2         A.   No, I don't.

 3         Q.   And are you aware of any later evidence,

 4    where Mr. Perez admitted that the shanks came from

 5    his walker?

 6         A.   No.

 7              MR. CASTELLANO:  I pass the witness, Your

 8    Honor.

 9              THE COURT:  Thank you, Mr. Castellano.

10              Anything further, Ms. Fox-Young?

11              MS. FOX-YOUNG:  Nothing further.

12              THE COURT:  All right.  Mr. Holguin, you

13    may step down.  Thank you for your testimony.

14              All right.  Ms. Fox-Young, Mr. Villa, does

15    Mr. Perez have his next witness or evidence?

16              MS. FOX-YOUNG:  Yes, Judge.  Mr. Perez

17    calls Adam Vigil.

18              THE COURT:  Mr. Vigil, if you'll come up

19    and stand next to the witness box on my right, your

20    left.  Before you're seated, the courtroom deputy Ms.

21    Standridge will swear you in.

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3452

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 246

```
 1                    ADAM VIGIL,
 2        after having been first duly sworn under oath,
 3        was questioned and testified as follows:
 4                    DIRECT EXAMINATION
 5             THE CLERK:  Please be seated.  And state
 6   your name for the record.
 7             THE WITNESS:  My name is Adam Vigil.
 8             THE COURT:  Mr. Vigil.  Ms. Fox-Young.
 9   BY MS. FOX-YOUNG:
10        Q.   Good afternoon, Mr. Vigil.
11        A.   Good afternoon.
12        Q.   Can you tell me where you're currently
13   employed?
14        A.   I'm currently employed with the New Mexico
15   Department of Corrections at the Penitentiary of New
16   Mexico, in Santa Fe.
17        Q.   How long have you been at the Penitentiary
18   of New Mexico, working for NMCD?
19        A.   Approximately 34 years.
20        Q.   What is your position?
21        A.   I'm the STIU coordinator.
22        Q.   How long have you been in that job?
23        A.   This time around 10 years.
24        Q.   So the last 10 years you've been doing that
25   job?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3453

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 3454

```
 1          A.   Yes.

 2          Q.   And is there anybody in STIU who you report

 3    to?  Are you at the top of STIU?

 4          A.   I'm a coordinator.  I have two other

 5    individuals above me.

 6          Q.   Who is above you?

 7          A.   Two other individuals.  We have a deputy

 8    director and an STIU administrator.

 9          Q.   Can you tell me their names?

10          A.   Currently, the deputy director position is

11    vacant.  And acting administrator is Andrew Sweeney.

12          Q.   And in March of 2014, you were the STIU

13    coordinator for the state?

14          A.   For the Penitentiary of New Mexico.

15          Q.   For the Penitentiary of New Mexico.  And

16    was there a separate coordinator, STIU coordinator,

17    for Southern New Mexico Correctional Facility?

18          A.   Yes.

19          Q.   Who was that?

20          A.   I believe it was Daniel Blanco at the time.

21          Q.   And is he still the coordinator?

22          A.   Yes.

23          Q.   Do you remember -- do you have an

24    independent recollection of anything related to

25    Javier Molina's death on March 7, 2014, at Southern?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3454

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3455

```
 1          A.    As to what?

 2          Q.    Do you remember that case?

 3          A.    I remember the murder, yes.

 4          Q.    Did you go to Las Cruces after the murder?

 5          A.    Yes.

 6          Q.    When did you go?

 7          A.    That was a while back.  I can't remember

 8    exactly when, but it was either a month or a week

 9    after.

10          Q.    Either a month or a week?

11          A.    Somewhere in between there.

12          Q.    Okay.  And when there is a murder anywhere

13    in a New Mexico Correctional Department facility, do

14    you always go in your current position?

15          A.    No.  Sometimes different coordinators are

16    designated to do different things.  And I happened to

17    be the one that was sent down there.

18          Q.    Who sent you down there?

19          A.    My boss.  I believe it was either Andrew

20    Sweeney, or Dwayne Santistevan.

21          Q.    So you got the word from Mr. Santistevan or

22    Mr. Sweeney that you needed to go to Southern because

23    there had been a murder?

24          A.    Yes.

25          Q.    And you drove down to Las Cruces?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 249456

```
 1        A.   Yes.

 2        Q.   And the investigation was already underway

 3   when you arrived?

 4        A.   Yes.  Pretty much it was already done and

 5   over with.

 6        Q.   Okay.  Tell me what you did with regard to

 7   that case.

 8        A.   I was one of the components that went down

 9   there to conduct an after action review of the

10   incident.

11        Q.   Is that customary for all murders?

12        A.   It's customary for major incidents.

13        Q.   What does it consist of?  What does an

14   after action review consist of?

15        A.   This group of individuals are sent down

16   there to assess what happened, you know, what to look

17   for, and see if any discrepancies occurred during or

18   after the incident occurred.

19        Q.   Who else was part of this after action

20   review?

21        A.   It was myself, Ms. Visti Curry.

22        Q.   Could you repeat that?

23        A.   Her name is Visti Curry.

24        Q.   Who is she?

25        A.   She currently holds the rank of Deputy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 250

```
 1    Warden at Central New Mexico Correctional Facility.
 2         Q.   And Mr. Santistevan or Mr. Sweeney also
 3    selected her for this job?
 4         A.   I don't know who selected her.
 5         Q.   Okay.  But you both arrived at the same
 6    time?
 7         A.   No.  I believe she was already there before
 8    I was.
 9         Q.   Okay.  What happened when you got there?
10         A.   We were given different tasks.  We had a
11    briefing on the different tasks that we were assigned
12    to do.
13         Q.   Who assigned you tasks?
14         A.   I believe it was Warden Missy Ortiz.
15         Q.   She was the Warden at Southern?
16         A.   Yes.
17         Q.   What were your tasks?
18         A.   My particular task was to go and look at an
19    area called the wheelchair project.
20         Q.   Did you go by yourself?
21         A.   No.  I had a group of people with me, a
22    little team.
23         Q.   Who was on that team?
24         A.   I don't recall.
25         Q.   Was Ernie Holguin on that team?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3457

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 251458

```
 1          A.    I don't believe so.

 2          Q.    How many people?

 3          A.    Maybe four.

 4          Q.    So the Warden asked you to go look at the

 5    wheelchair program?

 6          A.    That was one of my -- that was my task was

 7    to go look at the wheelchair.

 8          Q.    From the Warden?

 9          A.    From the Warden -- or yeah, it was from the

10    Warden and maybe Major -- not major -- yeah, Major

11    Herman.

12          Q.    Was a Major at Southern?

13          A.    Yes.

14          Q.    And so you did that; you went and visited

15    the wheelchair program?

16          A.    Yes, we went and checked out the area.

17          Q.    What did you do to check it out?

18          A.    We went in there.  We looked at what was

19    going on in there.  We checked inventories.  We

20    checked the tool system.  We checked the shakedown

21    procedure areas.  Just basically did a scan of what

22    was going on in that particular room.

23          Q.    When you say you checked inventories, did

24    you mean you checked inventories of all the metal

25    that it was in there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3458

```
 1        A.   No.  That wasn't -- the way it was
 2   explained to me by the project manager that was there
 3   then -- and I don't recall his name --
 4        Q.   Was that Ernie Rodriguez?
 5        A.   I don't know.
 6        Q.   Okay.  Go on.
 7        A.   Anyway, first thing we did was check the
 8   tools and the inventory to see if they were going on
 9   there.  We checked on how they brought in the
10   wheelchairs, how they were taken apart, disassembled,
11   and how they put different parts in different bins
12   and stuff.
13        Q.   What were you looking for?
14        A.   Anything that could be fashioned into a
15   weapon.
16        Q.   And did you find that they could?
17        A.   Well, there are several items on a
18   wheelchair that could be fashioned into a weapon,
19   yes.
20        Q.   There is a lot of metal in that program?
21        A.   Metal as to what?
22        Q.   Lots of different kinds of metal used in
23   that program?
24        A.   Yeah.  For the chairs that are made out of
25   metal, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3459

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253460

```
 1          Q.    And did you see walkers?

 2          A.    No, I saw mainly wheelchairs.

 3          Q.    Mainly wheelchairs?

 4          A.    Um-hum.

 5          Q.    Did you catalog what was there?

 6          A.    No.

 7          Q.    Did anybody catalog what was in there?

 8          A.    I saw some documents from the project

 9    manager on how they get boxes of stuff in.  But there

10    was nothing individually cataloged, no.

11          Q.    Did you make copies of those documents?

12          A.    No.

13          Q.    You just viewed them when you were in

14    there?

15          A.    Yes.

16          Q.    Did you photograph the wheelchair program?

17          A.    No.

18          Q.    Did anybody?

19          A.    No.  Not my little team, no.

20          Q.    Did you generate a report?

21          A.    I did a briefing at the end of our little

22    stay.  And then I passed on some information to

23    Ms. Curry, who was the team leader.

24          Q.    Was that an oral briefing?

25          A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3460

```
 1        Q.   Who was present?

 2        A.   There was a bunch of us there.  I can't

 3   recall everybody who was there.

 4        Q.   STIU officers?

 5        A.   No.  The only one that maybe had been

 6   there, Daniel Blanco; that's about it.

 7        Q.   And a bunch of others?

 8        A.   Yes.

 9        Q.   Were they all NMCD employees?

10        A.   Yes.

11        Q.   Any State Police?

12        A.   No.

13        Q.   Were they all employees at Southern New

14   Mexico?

15        A.   Yes.

16        Q.   So you gave an oral briefing, and then you

17   met with the Warden?

18        A.   Well, she was one of the members in that

19   briefing.

20        Q.   Okay.  And what was message of your

21   briefing?  What was the substance of it?

22        A.   That there was poor accountability on some

23   of the equipment that was there.

24        Q.   You said "poor"?

25        A.   Yes.  The shakedown procedures needed to be
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3461

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255

```
 1    enhanced a little bit.

 2         Q.   What was faulty about the procedures?

 3         A.   Just the coverage of one person in that

 4    particular area.  There should have been at least

 5    two.

 6         Q.   So while the inmates were in there working

 7    on the wheelchair program, there was just one person?

 8    Is that what you were saying?

 9         A.   There was one supervisor, yes.

10         Q.   And while they were shaken down, there was

11    only one person?

12         A.   Yes.

13         Q.   And you found that that was problematic?

14         A.   Yes.

15         Q.   What else did you brief the Warden and

16    others on?

17         A.   That was it.  That was my assignment, and I

18    was done.

19         Q.   Do you know what prompted the Warden to ask

20    you to review the program?

21         A.   Well, the murder happened; that's why I was

22    down there.  I would have been part of an after

23    action team.

24         Q.   But why, in particular, did you go to the

25    wheelchair program?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3462

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 256463

1        A.    That was the task I was assigned to go do.

2        Q.    Okay.  You don't, yourself, know why?

3        A.    No.

4        Q.    You said you had tasks as part of this

5    after action procedure.  Did you have additional

6    tasks besides the one you told me about?

7        A.    No.  Just look at the tool inventories, how

8    the equipment came in and out; shakedown procedures;

9    and this was it.

10        Q.    Okay.  And you gave an oral briefing, and

11    then you were done?

12        A.    Yes.

13        Q.    Did you have anything to -- did you view

14    any evidence in this case?

15        A.    No.

16        Q.    Did you collect any evidence?

17        A.    No.

18        Q.    Did you maintain any evidence back in Santa

19    Fe at your office?

20        A.    No.

21        Q.    So you didn't look at any physical evidence

22    while you were down there whatsoever?

23        A.    No.

24        Q.    Except for anything that was in the

25    wheelchair program?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3463

1    A.   That's it.

2    Q.   Okay.  Are you familiar with the

3  Corrections Department's inventory chain of custody

4  forms?

5    A.   To an extent, yes.

6    Q.   Have you ever completed one?

7    A.   Yes.

8    Q.   And you don't think you did one in this

9  case?

10   A.   I don't believe so.

11   Q.   Okay.  If I represented to you that the

12  Government has produced a chain of custody form that

13  has the name "A. Vigil, STIU Coordinator" on it, is

14  it possible that's you?  Or --

15   A.   Yeah, it more than likely is.

16   Q.   Okay.  I know it's been a while.

17   A.   Yes.

18   Q.   Would it refresh your memory -- well, are

19  you sure that you didn't complete a chain of custody

20  form in this case?

21   A.   Not that I recall.  But if you have a

22  document saying I did --

23   Q.   It's possible you did?  Would it refresh

24  your memory if I showed you a chain of custody form?

25   A.   Sure.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3464

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258 3465

```
 1          Q.   Do you recognize that document?

 2          A.   Yes.

 3          Q.   Do you know what it is?  Can you tell me

 4   what it is?

 5          A.   It's a chain of custody form.

 6          Q.   Okay.  And without telling me anything that

 7   is contained in it, you recognize that form?

 8          A.   Yes.

 9          Q.   And did you actually complete that form?

10          A.   No, I did not.

11          Q.   Is your name anywhere on that form?

12          A.   My name is typewritten at the top as

13   "evidence recovered by," and then somebody printed my

14   name down at the bottom there.

15               MS. ARMIJO:  Your Honor, can we have a

16   Bates stamp number, at least for reference?

17               MS. FOX-YOUNG:  Yes.  It is 30188.

18               Your Honor, I'd like to move the admission

19   of Defendant's PP -- I think that's what we're on.

20               THE COURT:  I think we already have --

21               MS. FOX-YOUNG:  QQ.

22               THE COURT:  All right.  Any objection, Ms.

23   Armijo?

24               MS. ARMIJO:  No, Your Honor.

25               THE COURT:  Any objection from anyone else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3465

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 259

```
 1              All right Rudy Perez' Exhibit QQ will be
 2    admitted into evidence.
 3    BY MS. FOX-YOUNG:
 4         Q.   Mr. Vigil, on this chain of custody form
 5    that you looked at you, you noted that your name is
 6    printed at the top, and your name is written in at
 7    the bottom in these areas to fill in receipt or
 8    transfer of evidence; is that right?
 9         A.   That's correct.
10         Q.   But you didn't write that?
11         A.   No, that's not my writing.
12         Q.   Do you know who did?
13         A.   No, I don't.
14         Q.   This chain of custody form appears to be
15    for a DVD of video evidence; is that right?
16         A.   Yes, that's what it says on the first
17    number 1 line there.
18         Q.   And it's from March 13, 2014?
19         A.   Yes.  That's the date of evidence
20    recovered, 3/13.
21         Q.   It says, "The DVD of video evidence was
22    recovered on March 13, 2014," which was six days
23    after the Molina murder; is that right?
24         A.   Yes.
25         Q.   And it says the "evidence was recovered by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3466

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 260467

1   A. Vigil, STIU coordinator."  And that's you?

2        A.   Apparently so, yes.

3        Q.   But you don't remember recovering it?

4        A.   No, I don't recall it.  It's been a while.

5        Q.   Do you have any reason to disbelieve that,

6   based upon this chain of custody form, you did

7   recover it?

8        A.   Can you repeat the question?

9        Q.   Oh, do you have any reason to disbelieve

10  that you recovered it, based upon this chain of

11  custody form that the Government has produced?

12       A.   No.

13       Q.   Okay.  Well, if you can just tell me, does

14  this show that -- if you look at the bottom where

15  it's written in in somebody's handwriting, it says,

16  "April 11, 2014, 4:40 p.m."  And then it has your

17  name.  And it says, "Transfer."  Would this indicate

18  that the video evidence was transferred to somebody

19  else on April 11, 2014?

20       A.   Yes.

21       Q.   Do you know who that person is?

22       A.   No, I don't.

23       Q.   Do you -- I know you don't specifically

24  recall taking in video evidence in this case.  Do

25  you, as a practice, take in evidence in other cases?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3467

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261 468

```
 1          A.    Cases that I handle at my facility, I do.

 2          Q.    Just at PNM?

 3          A.    Yes.

 4          Q.    And where do you keep that evidence?

 5          A.    We have a secured area, evidence locker

 6    area, we secure evidence in.

 7          Q.    And if you had taken in the video evidence

 8    in this case, is that where it would have been, at

 9    PNM, according to this form?

10          A.    No.  I don't recall taking it to PNM.

11          Q.    Did you have any part in a disciplinary

12    officer's investigation report of Mario Rodriguez in

13    this case?

14          A.    Not that I recall.

15          Q.    You don't remember doing that?

16          A.    No, I don't remember.  Like I said, it's

17    been a while.

18          Q.    This is Bates 30174 and 75.  Mr. Vigil, do

19    you recognize this document?

20          A.    Yes.

21          Q.    Okay.  If you can, tell me what it is.

22          A.    It's a disciplinary officer's investigative

23    report.

24          Q.    Okay.  And you said you don't remember

25    having anything to do with any evidence related to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3468

1    Mario Rodriguez, or the Molina murder, taking it in.

2    But if you look at the second page of that document,

3    you see where I've highlighted at the bottom?

4         A.   Yes.

5         Q.   Does that refresh your recollection as to

6    your role with the evidence?

7         A.   It refreshes my memory, yes.

8         Q.   Okay.  And so, having looked at that, what

9    do you now remember?

10        A.   That I took it with me.

11        Q.   What was it?

12        A.   The videotape.

13        Q.   Okay.

14        A.   The video, DVD, or whatever you call it.

15        Q.   And you kept it in your office?

16        A.   Yes.

17        Q.   And this is just your personal office at

18   PNM?

19        A.   Yes.  And I'm the only one who has access

20   to it.

21        Q.   Oh, you're the only one with access?

22        A.   Yes.

23        Q.   Okay.  Do you sometimes keep other evidence

24   in that office?

25        A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3469

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 263470

```
 1        Q.   This was a unique circumstance?

 2        A.   Yeah.  I think it was -- this case was

 3   going on at the time is why I held onto it.

 4        Q.   Why didn't it go to State Police?

 5        A.   That, I don't know.

 6        Q.   Did you ever view the video when you had it

 7   in evidence?

 8        A.   No.

 9        Q.   So this is the only time in your 34-year

10   career at PNM that you've ever taken in evidence and

11   put it in your office?

12        A.   Yes.

13        Q.   And did somebody instruct you to do that?

14        A.   I think it was just a transfer of the

15   evidence for the case up in Santa Fe.  It wasn't

16   there to be permanent, just to be made part of case

17   to turn over to somebody else.

18        Q.   Okay.  So you remember you transferred it

19   to somebody else, to this A -- on Exhibit QQ, it

20   appears to be a name that starts with a W.  You're

21   not sure who that is?

22        A.   No, I don't.

23        Q.   Okay.  Is it possible that you also took

24   other evidence to your office at the same time as you

25   took that video evidence?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3470

```
 1        A.   No.

 2        Q.   It's not possible?

 3        A.   No.

 4        Q.   How do you know?

 5        A.   Because there would have been other forms

 6   generated, if I had taken more evidence.

 7        Q.   Okay.

 8             MS. ARMIJO:  No objection.

 9             MS. FOX-YOUNG:  Your Honor, I'd like to

10   admit Defendant's RR.

11             THE COURT:  I heard you say "no objection,"

12   Ms. Armijo.

13             MS. ARMIJO:  No objection.

14             THE COURT:  All right.  Anybody else have

15   an objection?  All right.  Rudy Perez' Exhibit RR

16   will be admitted into evidence.

17        Q.   So Mr. Vigil, it's your testimony that for

18   the first time in 34 years, or at least in 2014 it

19   was the first time, or the only time, you took

20   evidence, the video evidence from this case to your

21   office in Santa Fe, but you don't know precisely why?

22        A.   No, other than maybe I turned it over to

23   the disciplinary officer.  But that was it.

24        Q.   And this document, Exhibit RR, which you

25   just looked at, indicates -- and you agreed that --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3471

1    this was to allow for your completion of the after

2    incident review.  Do you recall that?

3        A.   No.

4        Q.   This is the second page of this

5    disciplinary officer's investigation report.  The

6    very last paragraph reads, "The video evidence stayed

7    secure in STIU Coordinator A. Vigil's office, to

8    allow for his completion of the after incident

9    review."  You don't dispute that that is what this

10   investigator concluded?

11       A.   He may have.  If that's what he put, then

12   that's probably what I did.  Like I said, it's been

13   quite a while.

14       Q.   Okay.  But you say that your only task as

15   far as the after incident review was concerned, was

16   to go to the wheelchair program?

17       A.   Right.

18       Q.   You didn't have anything to do with the

19   video evidence?

20       A.   No.  Not that I recall, no.

21       Q.   Okay.  You didn't watch it.  You didn't

22   take it -- other than taking it into evidence and

23   holding it in your office in Santa Fe?

24       A.   I remember watching it one time, when I

25   initially went for the state case, on the trial.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3472

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 266

```
 1        Q.   Where was that?
 2        A.   That was at the DA's here in Dona Ana
 3   County.
 4        Q.   Did you go for a pretrial interview and you
 5   watched it?
 6        A.   Yes.
 7        Q.   Okay.  So that wasn't as part of the
 8   investigation; it was after the fact?
 9        A.   Right.
10        Q.   And it's your testimony that you didn't
11   have anything to do with any other physical evidence
12   at Southern on this case outside of the wheelchair
13   program?
14        A.   Yes.
15        Q.   Did you ever see a walker that was taken
16   into evidence?
17        A.   No.
18        Q.   Never saw one.  Did you ever see a
19   photograph of one?
20        A.   No.
21        Q.   Are you aware that a walker was taken in?
22        A.   No, I wasn't aware a walker was taken in.
23        Q.   Okay.  You're only aware of the various
24   ambulatory devices that you saw in the wheelchair
25   program, but you don't know if anything was taken
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3473

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267

```
 1   into evidence?

 2        A.   No, I don't.

 3        Q.   Okay.  Did you bring any files with you

 4   today --

 5        A.   No.

 6        Q.   -- in response to the subpoena?

 7        A.   No.  I didn't know why I was here to begin

 8   with.

 9        Q.   Do you have any files or documents related

10   to the Javier Molina murder?

11        A.   No.

12        Q.   Do you have any emails?

13        A.   Emails, no.

14        Q.   Did you talk to anybody with State Police

15   about this murder?

16        A.   I sat in on an interview with one suspect.

17   But that was it.

18        Q.   Who was the suspect?

19        A.   Armenta.

20        Q.   And who else was at that interview?

21        A.   Detective Paul Garnice (phonetic).

22        Q.   Do you recall the date of that interview?

23        A.   No, I don't.

24        Q.   It was not the day of the murder?

25        A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3474

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268

```
 1          Q.    It was later?

 2          A.    Later.

 3          Q.    And so you had occasion to talk to

 4     Detective Palomares at that time?

 5          A.    Well, I transported Inmate Armenta to the

 6     State Police headquarters, and there was an interview

 7     conducted.

 8          Q.    You transported him?

 9          A.    My crew did, me and my crew.

10          Q.    You drove him from Southern to State

11     Police?

12          A.    No.  I believe he was housed at PNM at the

13     time.

14          Q.    And was this in March of 2014, or this was

15     later?

16          A.    This was later.

17          Q.    When you -- was it in 2014?

18          A.    I don't recall.

19          Q.    Was it -- you don't know what year it was?

20          A.    No, I don't recall.  I just know we

21     assisted with transporting this inmate to the State

22     Police, and that was it.

23          Q.    Was it close in time to the murder?

24          A.    I don't recall.

25          Q.    But you sat in on the interview?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3475

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 269

```
 1          A.   Yeah.

 2          Q.   Did you take any notes?

 3          A.   No.

 4          Q.   And at that time, you talked to Agent

 5     Palomares about the case?

 6          A.   I didn't talk to him, no.  They said this

 7     guy was a suspect, and he was going to interview him.

 8          Q.   Okay.  Are you generally familiar with the

 9     New Mexico Corrections Department policies and

10     procedures?

11          A.   Pretty much.

12          Q.   Have you been trained on them?

13          A.   I reviewed and trained on some, yes.

14          Q.   You probably had a part in drafting and

15     revising them, too?

16          A.   Yes.

17          Q.   Okay.  I don't know if you know it by

18     number, but are you familiar with the policy on

19     cameras, video, portable stationary, pan, tilt and

20     zoom?

21          A.   No.

22          Q.   I'm going to show you what's been marked as

23     RP-KK.  Do you know what this is?

24          A.   According to the heading up there, it's a

25     policy for New Mexico Department of Corrections.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3476

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 270 477

1      Q.   So it's a single policy in the New Mexico

2   Corrections Department policy manual?

3      A.   Yes.

4      Q.   And you see the date on it?

5      A.   Which one?

6      Q.   Well, the last date.  It was effective

7   when?  It was last revised when?

8      A.   The review revised date is 2/29/12.

9      Q.   And you've never reviewed this policy?

10      A.   I may have.  I may have skimmed it and gone

11   through it.  But I couldn't tell you verbatim what it

12   is.

13      Q.   Okay.  I don't expect you to be able to

14   recite it verbatim.  But do you recall the

15   requirement and policy that original video recordings

16   be properly secured and maintained for a minimum of

17   10 years?

18      A.   No.

19      Q.   Well, in this policy, that requirement is

20   right here in the middle of the page, under

21   Subsection B, "Storing of video recordings."  Do you

22   see where it says that, "The original recording shall

23   be properly secured and maintained for a minimum of

24   10 years"?

25      A.   The first paragraph?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3477

```
 1          Q.   Yes, Subsection B 1.

 2          A.   Yes.

 3          Q.   And looking at that now, are you familiar

 4    with that requirement in NMCD policy?

 5          A.   I am now.

 6          Q.   You are now.  Okay.  Do you have any reason

 7    to disbelieve that this document is the policy that

 8    was last revised on February 29, 2012?  In form, does

 9    it appear to be an NMCD policy on cameras?

10          A.   Yes.

11          Q.   You just don't know it by heart?

12          A.   No.

13          Q.   Do you remember any other STIU personnel

14    that you worked with at Southern on the Molina

15    investigation?

16          A.   No, other than my counterpart, Daniel

17    Blanco.  But it's his facility.

18          Q.   Okay.  And have you talked with Captain

19    Blanco -- or Coordinator Blanco about this case?

20          A.   No.

21          Q.   Not at any time?

22          A.   No.  My involvement in the case was, like I

23    said, for the initial state trial.  And we haven't

24    discussed the case with anybody since then.

25          Q.   But back in March of 2014, after the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3478

1    murder, did you work with Captain Blanco on this

2    case?

3        A.    No.

4        Q.    Was he present at your briefing?

5        A.    I believe so.

6        Q.    Okay.  So other than that?

7        A.    Other than that, I don't believe.

8        Q.    Okay.  Now, at PNM, you must be familiar

9    with the Corrections Department policy governing

10   contraband control, tracking, and disposal, right?

11       A.    Yes.

12       Q.    Are you familiar with the requirement that

13   when contraband is seized from an inmate, that inmate

14   receives a receipt?

15       A.    Contraband?

16       Q.    Yeah.  When somebody is shaken down and

17   contraband is seized, is there a document that gets

18   generated?  Or is there a contraband log?

19       A.    Contraband log; there is a contraband log.

20   There is a log, but the inmate is not required to get

21   a receipt of that.

22       Q.    Just -- it's only logged?

23       A.    It's only logged, yes.

24            MS. FOX-YOUNG:  Your Honor, I move the

25   admission of Rudy Perez exhibit -- I think we're at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3479

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273

```
 1    PP?  No, we're not.
 2                THE COURT:  I think your next one is SS.
 3                MS. FOX-YOUNG:  SS.  Thank you, Judge.
 4                MS. ARMIJO:  No objection.
 5                THE COURT:  Is it RR?  Any objection to
 6    Rudy Perez' Exhibit RR?  It was SS.  So SS will be
 7    admitted into evidence.
 8    BY MS. FOX-YOUNG:
 9        Q.    So this document, Exhibit SS, I think is
10    the Corrections Department policy governing
11    contraband control, revised January 25, 2012, is it
12    not?
13        A.    Yes.
14        Q.    And at the bottom, the attachments include
15    a miscellaneous contraband log?
16        A.    Yes.
17        Q.    And is that the document that you're saying
18    does get filled out when contraband is seized?
19        A.    I have to actually look at the log that
20    you're talking about.
21        Q.    I understand.  But the reference to the
22    contraband log, that's what you're talking about,
23    gets filled out when contraband is seized, and that's
24    required by policy?
25        A.    That's a log that gets filled out.  It's a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3480

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273481

```
 1    general log.  If I remember the policy, if I'm being
 2    correct, the log itself is just a general log.
 3         Q.   For contraband, when it's seized?
 4         A.   That's correct.  But the inmate doesn't get
 5    a copy of that.
 6         Q.   I understand.  And this is the policy that
 7    requires that, that you're looking at, this NMCD
 8    090300?
 9         A.   Yes.
10         Q.   Okay, thank you.
11              MS. FOX-YOUNG:  Your Honor, I move
12    Defendant's Exhibit TT.
13              THE COURT:  Any objection, Ms. Armijo?
14              MS. ARMIJO:  No, Your Honor.
15              THE COURT:  Any other defendant?  All right
16    Rudy Perez's Exhibit TT will be admitted into
17    evidence.
18              Is there somebody on the telephone that
19    doesn't have their mute button on?  Y'all might put
20    the mute button on.  Check it, because we're getting
21    a lot of feedback here.
22    BY MS. FOX-YOUNG:
23         Q.   The New Mexico Corrections Department also
24    has a separate policy on inmate property; is that
25    right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3481

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275482

```
 1          A.   Yes.

 2          Q.   And is that what we're looking at here on

 3   Exhibit TT, revised September 4, 2013?

 4          A.   Are you talking about the policy name?

 5          Q.   Yes.  Is that this policy, the inmate

 6   property policy from -- that was revised September 4,

 7   2013, and in effect in March of 2014?

 8          A.   Yes.

 9          Q.   And this separate policy requires, does it

10   not, that a receipt for confiscated property form be

11   filled out when property is confiscated?

12          A.   Yes.

13          Q.   And that form is listed there on this first

14   page?

15          A.   Yes, it's the highlighted one you have

16   there.

17          Q.   Yes.

18               I understand that you did an oral briefing

19   after the conclusion of your review of the wheelchair

20   program.  Do you know if -- and you didn't generate a

21   report, right?

22          A.   Not that I recall, no.

23          Q.   Okay, that you remember.  Do you know if

24   there was an after incident report that was generated

25   by anybody?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3482

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 276

1      A.   I believe Ms. Curry generated one.

2      Q.   Okay.   And did she include any of your

3  findings in that report?

4      A.   She probably did.

5      Q.   Have you seen it?

6      A.   I don't recall if I did or not.

7      Q.   Do you say that you believe she did it

8  because after action reports are customarily done

9  when you do an after action review?

10      A.   Yes.

11      Q.   And there would be no reason why she

12  wouldn't have done one?

13      A.   No, there wouldn't be a reason why.

14      Q.   Where are those kept?

15      A.   That, I don't know.   Probably -- the after

16  action report usually goes to the warden of the

17  facility, and probably to the deputy director of the

18  department.

19      Q.   You said you do after action reviews in

20  cases of major incidents.   When there are crimes

21  charged and there is a law enforcement agency

22  investigating, as in this case, when there is a

23  murder, does that after action report go to that law

24  enforcement agency?

25      A.   I don't know.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3483

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273484

1     Q.   Do you know if there is a policy that

2   governs that?

3     A.   That, I don't know either.

4     Q.   Do you know if the after incident review

5   gets sent to the ACA for accreditation purposes?

6     A.   I wouldn't be able to answer that.  I don't

7   know.

8     Q.   You don't deal with that process?

9     A.   No, I don't.

10         MS. FOX-YOUNG:  Thank you, Your Honor.

11   Pass the witness.

12         THE COURT:  Thank you, Ms. Fox-Young.

13         Any other defendants have questions of

14   Mr. Vigil before the Government engages in

15   cross-examination?

16         MR. LOWRY:  Your Honor, just briefly.

17         THE COURT:  Mr. Lowry.

18                   EXAMINATION

19   BY MR. LOWRY:

20     Q.   Good afternoon, Mr. Vigil.

21     A.   Good afternoon.

22     Q.   Mr. Vigil, after the Molina -- after March

23   7, after you went down to Southern, you returned back

24   to Santa Fe?

25     A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3484

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 278485

1      Q.   How many days were you in Las Cruces?

2      A.   I don't remember.  It's been a while.

3  Maybe one, maybe two days.

4      Q.   Do you recall an event where you and the

5  Secretary of Corrections and a film crew went and

6  spoke with Mr. Baca, Mr. Sanchez, and Mauricio Varela

7  before they were sent out of state?

8      A.   No.

9      Q.   You don't recall that?

10      A.   I was not part of that.

11      Q.   Okay.  Do you recall participating in a

12  video of the other alleged members of the SNM that

13  were housed in Level 6?

14      A.   No.

15      Q.   You don't recall that?

16      A.   I don't recall video cameras being there.

17  I know that was with Mr. Marcantel and one of the

18  units, and he was explaining why the SNM members were

19  housed at the north facility.

20      Q.   Do you recall the Secretary explaining to

21  that group of people his discharge of Mr. Baca, Mr.

22  Sanchez, and Mr. Varela?

23      A.   I know that he referred to suspects.  I

24  don't remember him mentioning them by name.

25      Q.   Do you recall a comment that the Secretary

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    made that they were crying when they left?

 2         A.   No.  That, I do not recall.

 3         Q.   So you don't recall being with him when he

 4    was with those three gentlemen when he addressed

 5    them?

 6         A.   I wasn't there for the meeting with the

 7    three gentlemen.

 8              MR. LOWRY:  Okay.  No further questions,

 9    Your Honor.

10              THE COURT:  All right.  Thank you, Mr.

11    Lowry.

12              Any other defendant?

13              All right.  Ms. Armijo, if you wish to

14    cross-examine Mr. Vigil.

15                          EXAMINATION

16    BY MS. ARMIJO:

17         Q.   Mr. Vigil, do you know what was on the

18    video that Ms. Fox-Young was referring to that you

19    took up there?

20         A.   I knew it was about the incident that

21    occurred in the pod.

22         Q.   All right.  So was it your understanding

23    that that was a video of the actual murder?

24         A.   Yes.

25         Q.   And the interview that you were referring
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3486

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 280 of 487

```
 1    to with Mr. Armenta, did that take place after Mr.
 2    Armenta had been charged by the state?
 3         A.   Yes.
 4         Q.   And was it in reference to him being a
 5    possible witness?
 6         A.   Yes.
 7              MS. ARMIJO:  And I believe that is all I
 8    have.  Thank you.
 9              THE COURT:  All right.  Thank you,
10    Ms. Armijo.
11              Any other defendants have any further
12    redirect?  Ms. Fox-Young?
13              MS. FOX-YOUNG:  No, Your Honor.
14              THE COURT:  All right.  Mr. Vigil, you may
15    step down.  Is there any reason that Mr. Vigil cannot
16    be excused from the proceedings?
17              MS. ARMIJO:  No, Your Honor.
18              THE COURT:  Ms. Fox-Young?
19              MS. FOX-YOUNG:  No, Your Honor.
20              THE COURT:  All right.  You're excused from
21    the proceedings.  Thank you for your testimony.
22              All right.  Mr. Villa, do you have further
23    witnesses or evidence that Mr. Perez wants to
24    present?
25              MR. VILLA:  Yes, Your Honor, Mr. Perez
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3487

```
 1   calls Jason Wright.
 2            MR. CASTELLANO:  Your Honor, may we
 3   approach regarding Mr. Wright?
 4            THE COURT:  You may.
 5            All right.  We're going to do it in open
 6   court.
 7            MR. CASTELLANO:  My understanding is that
 8   Mr. Wright is a former SNM member.  I don't think
 9   he's represented by counsel, so I just want to make
10   sure we tread lightly before we put him on the stand,
11   because he can be subject to potential criminal
12   liability.  I don't know what they're going to ask
13   him.  Mr. Villa gave me a little preview.
14            But if he's talking about shanks coming
15   from the wheelchair program, there is potential
16   criminal liability.  And I want to say that before
17   he's in the courtroom, so I don't influence his
18   testimony in any way.  But I just want to make sure
19   that we know what we're doing when we put him on the
20   stand.
21            THE COURT:  Your thoughts, Mr. Villa?
22            MR. VILLA:  Well, Your Honor, I don't
23   intend to ask him about anything that he, himself,
24   did directly, but more the knowledge that he had.  I
25   don't know what cross-examination the United States
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3488

```
 1    has.  But, you know, I think with respect to

 2    questions that might relate to self-incrimination, we

 3    probably have to take them a question at a time.

 4              THE COURT:  Well, I'm sure y'all would

 5    agree with me, I'm not sure any of us want to be the

 6    ones making the call.

 7              MR. VILLA:  I certainly can't do that for

 8    him, Your Honor.

 9              THE COURT:  Yeah.  I guess what I'm

10    concerned about is, I'm running out of quickly

11    available lawyers to come over here.

12              MR. VILLA:  Across the street.

13              THE COURT:  Well, I'm dipping pretty deep

14    into El Paso.  Let me ask this:  Can I work with

15    Ms. Wild to see if I can get an attorney for him and

16    then we come back to Mr. Wright at another point?

17              MR. VILLA:  I think that's fine, Your

18    Honor.  That was the last of the witnesses Mr. Perez

19    intended to call -- oh, I'm sorry, there is one more.

20    Oops.  But we could move on to the next witness, Your

21    Honor.

22              THE COURT:  Ms. Wild, are you still on the

23    phone?

24              THE CLERK:  She's away from her desk.

25              THE COURT:  All right.  Well, let's move
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    forward, and let me see if I can contact her.  I
 2    hadn't gotten a response to one question I had asked
 3    her a little earlier, so I don't know if she's
 4    quickly available.  But let's move on to your next
 5    witness, and let me see if I can get an attorney
 6    appointed for Mr. Wright.
 7              MR. VILLA:  Yes, Your Honor.  And that's
 8    Ms. Fox-Young's witness.
 9              THE COURT:  All right.  Ms. Fox-Young.
10              MS. FOX-YOUNG:  Your Honor, Mr. Perez calls
11    Laura Schile.
12                       LAURA SCHILE,
13         after having been first duly sworn under oath,
14         was questioned and testified as follows:
15                    DIRECT EXAMINATION
16              THE CLERK:  Please be seated.  State your
17    name, spelling it for the record.
18              THE WITNESS:  Thank you.  My name is Laura
19    Schile, S-C-H-I-L-E.
20              THE COURT:  Ms. Schile.  Ms. Fox-Young.
21    BY MS. FOX-YOUNG:
22         Q.  Ms. Schile, could you tell the Court what
23    your educational background is?
24         A.  I am -- well, absolutely.  I have a
25    bachelor's degree from St. Mary College in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3490

1    Leavenworth, Kansas.  Would you like me to go on with

2    my career?

3         Q.   Yes, go on.

4         A.   From there, I started graduate school in

5    microbiology at the University of Kansas.  I did not

6    finish.  But I was recruited to do DNA breakage and

7    repair research at the University of Texas, M.D.

8    Anderson.  After about three years of performing DNA

9    breakage and repair research as a molecular biologist

10   for M.D. Anderson, I started with the Texas

11   Department of Public Safety, when DNA -- STR DNA just

12   started up in the forensic field.  They wanted to get

13   molecular biologists and train them to be forensic

14   scientists.  So that's when I started my career as a

15   forensic scientist.

16            I was trained in hair comparison, serology,

17   DNA, crime scenes, blood spatter, evidence handling

18   procedures, all by the Texas -- and hair

19   comparisons -- all by the Texas Department of Public

20   Safety.  I was stationed in Houston.

21            After approximately five-and-a-half years,

22   I went to the Oklahoma City Police Department and got

23   that crime laboratory on line with DNA.  I wrote --

24   in this whole process I was writing protocols and

25   procedures, as well as doing casework, crime scenes,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3491

 1    DNA analysis.  So I started the DNA laboratory in --
 2    for the Oklahoma City Police Department.  I was with
 3    them for approximately 23 months.  Then I resigned
 4    and went to work for the Oklahoma Indigent Defense
 5    System.  I was with them for approximately nine
 6    years, at which time, in the middle of that, I
 7    started my own business.  Then, in 2010, I went
 8    full-time with my own business as a forensic
 9    consultant.
10         Q.   Okay.  And since that time, you have been
11    proffered as an expert in other cases, and we have
12    proffered you as an expert in this case?
13         A.   That's correct.
14         Q.   And you have listened to the testimony in
15    the hearing on this motion.  What else have you done,
16    generally speaking, to prepare as an expert in this
17    case?
18         A.   I've reviewed numerous documents, numerous
19    pages.  I have gone on several site visits.  I have
20    reviewed -- I've viewed evidence in this case.
21         Q.   And have you reviewed the video evidence
22    that has been admitted, taken in the pod on March 7,
23    2014?
24         A.   Yes, I have.
25         Q.   And you have reviewed the statement by Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3492

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 286493

 1   Perez?

 2        A.   Yes.

 3        Q.   And you've reviewed all the exhibits that

 4   have come into evidence in the course of this

 5   hearing?

 6        A.   Yes, I have.

 7        Q.   In the course of your review of the

 8   video --

 9             MS. FOX-YOUNG:  Your Honor, in the

10   interests of time, I'm not going to go through

11   proffer her as an expert and getting her qualified

12   unless the Government is going to object, and we can

13   go through in detail.  But I know the Court would

14   like to streamline some of these matters.

15             THE COURT:  Any objection --

16             MR. BECK:  No, Your Honor.

17             THE COURT:  -- to her offering opinion

18   testimony?  It doesn't sound like it.  Anyone else?

19             MR. BECK:  Not for purposes of this

20   hearing.

21             THE COURT:  Anyone else?  All right.  So

22   Ms. Schile will be allowed to offer opinion

23   testimony.

24   BY MS. FOX-YOUNG:

25        Q.   Ms. Schile, you reviewed the video that was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3493

```
 1    collected in this case.  Can you tell me how long it
 2    is?
 3         A.   One is approximately -- on my computer,
 4    what it reads -- 35 minutes and 17 seconds; one is 35
 5    minutes and 50 seconds --
 6         Q.   Okay.  So --
 7         A.   -- approximately.
 8         Q.   And both of those videos were produced.
 9              And you made some site visits in this case
10    as well, did you not?
11         A.   That is correct, yes.
12         Q.   Where have you visited?
13         A.   Southern; several locations within the
14    Southern.  And I believe Central or -- I apologize.
15         Q.   PNM?
16         A.   PNM.
17         Q.   Okay.  Did you visit the wheelchair program
18    at Southern?
19         A.   Yes, twice.
20         Q.   And did you visit the pods that we've been
21    discussing today, 1 A and 1 B?
22         A.   Yes, blue pod and yellow pod.
23         Q.   And the video that you reviewed, is 35
24    minutes, that's in evidence, that was taken from blue
25    pod?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3494

```
 1          A.   Yes.

 2          Q.   And that's Exhibit RP-C.

 3               I'm going to show you Defendant's Exhibit

 4    N.  Do you know what this is?

 5          A.   That's a photo within blue pod.

 6          Q.   Okay.  And do you know who took this photo?

 7          A.   I believe I took this photo.

 8          Q.   And does the photo depict the cameras that

 9    picked up the video that's Exhibit C?

10          A.   Yes.

11          Q.   And that is here, here, and here?

12          A.   There are three cameras, but we were

13    informed that one was not working.

14          Q.   Okay.  And the two cameras that were

15    working, did they reveal in the video all the cells

16    in the pod?

17          A.   Yes.

18          Q.   I'm going to show you Defendants RP-P.

19    It's a little hard to see on the Elmo.  But this cell

20    right here, can you read the number on that cell?

21          A.   It appears to be 115.

22          Q.   115.  And do you know where Rudy Perez was

23    housed in this pod?

24          A.   I believe it was 115.

25          Q.   And is that cell clearly visible on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    video that you reviewed?

 2         A.   Yes, it is.

 3         Q.   And can you also see the doors located in

 4    the upper right and the lower right on the video?

 5         A.   Yes, you can.

 6         Q.   And the same is true with respect to the

 7    other side of the pod?  Can you see all the way to

 8    the doors?

 9         A.   That's correct.

10         Q.   And those doors are the doors -- I mean,

11    you inspected the scene there.  Are those doors the

12    doors that lead into the neighboring pod?

13         A.   Yes, they are.

14         Q.   Okay.  Is that yellow pod, as is referred

15    to in this case?

16         A.   Yes.

17         Q.   Okay.  And so you could see on the video

18    the four doors in blue pod as --

19         A.   Yes.

20         Q.   -- in full?

21         A.   Yes.

22         Q.   And there is direct -- would you say there

23    is direct line of sight into cell 115 on the video?

24         A.   Yes.  I mean, you can see that cell in that

25    video quite clearly.  Well, as clearly as any of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3496

```
 1   cells in the video.
 2        Q.   And the video starts -- I know you've
 3   watched it; you know the length of it.  You know what
 4   it records.  And you've heard testimony earlier today
 5   about it starting just before the homicide occurs; is
 6   that right?
 7        A.   Yes.
 8        Q.   In your expert opinion -- and you've worked
 9   on numerous crime scenes; is that right?
10        A.   That is correct.
11        Q.   If you were working on reviewing this crime
12   scene and collecting evidence, knowing the evidence
13   that is in the record, would you have collected
14   earlier video footage?
15        A.   Absolutely.
16        Q.   And why is that?
17        A.   For some of the allegations that have been
18   made in statements.  One of the things -- working out
19   of the Texas Department of Public Safety, or the
20   Oklahoma City Police Department, one of the things
21   we're trained in is that if statements were made,
22   then you go out of your way to do everything you can
23   to corroborate or not corroborate the statements.
24   And so it would be very important to be able to view
25   what the statements are alleging.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3497

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 291

 1    Q.   Based on the evidence in this case, and the

 2  timeline in this case that you've reviewed and heard,

 3  how much video would you preserve in order to

 4  investigate those allegations?

 5    A.   Well, I would think in the least you would

 6  want to do 48 hours.  But I think that what I would

 7  do, if I had been doing the crime scene and

 8  collecting it, I would have collected to the point

 9  that the statement said that information was coming

10  in, and you could see it on the video.  And then I

11  would also have collected it throughout the crime

12  scene, to have a video documentation of the crime

13  scene.

14    Q.   So you're talking about the allegations

15  about paperwork, you'd want to capture that?

16    A.   Yes.

17    Q.   Okay.  And in the course of your work on

18  this case, you said you visited the wheelchair

19  program.  Did you photograph the wheelchair program?

20    A.   Yes.  Both times I visited, I did photo

21  documentation.

22    Q.   You visited twice.  And tell me what you

23  observed the first time.

24    A.   It was a room with several tables, and I'd

25  say numerous and various pieces of wheelchairs in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 292 3499

```
 1    there at some point in their lifespan, either
 2    completely put together or partially put together.
 3         Q.   I'll show you what has been marked as
 4    Defendant's Exhibit H.  Is this a photograph of the
 5    wheelchair program?
 6         A.   Yes, it is.
 7         Q.   Now, does this capture everything that was
 8    in the room where the wheelchair program was housed?
 9         A.   No, it certainly doesn't.
10         Q.   Okay.  And this visit was made when?  In
11    December of 2016; is that right?
12         A.   Yes, I believe so.
13         Q.   And you can see -- although it doesn't
14    capture the whole room, you can see some shelving
15    with materials on it.  Did you inspect that area?
16         A.   Yes.  So there is shelving with various
17    parts of wheelchairs, wheelchairs in whole.  There is
18    also shelving containing containers -- actual
19    containers that hold parts of wheelchairs.
20         Q.   Okay.  And other pieces of metal --
21         THE COURT:  Hold on.  Is that Ms. Wild?
22         THE CLERK:  Yes, sir.
23         THE COURT:  The witness that Mr. Perez
24    wants to call, Jason Wright, is a former SNM Gang
25    member, or an SNM Gang member.  And we're a little
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3499

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 293 3500

 1    concerned that he may need an attorney to advise him

 2    about testifying.  Any thoughts?

 3            THE CLERK:  My thoughts are I'm going to

 4    have to take a look and see what's available.  And

 5    I'll just have to look into it just a bit.

 6            THE COURT:  All right.  If you don't mind

 7    beginning that process, I'd appreciate it.

 8            THE CLERK:  I don't.  Do we know when he is

 9    going to testify?

10            THE COURT:  Well, we were going to call him

11    a minute ago.  But we've moved on to Mr. Perez'

12    expert.  So we're buying some time right now for you.

13            THE CLERK:  All right.  I'll see what I can

14    do.

15            THE COURT:  Thank you.

16            THE CLERK:  Sure.

17            THE COURT:  Ms. Fox-Young.

18            MS. FOX-YOUNG:  Thank you, Your Honor.

19    BY MS. FOX-YOUNG:

20        Q.  So you visualized various kinds of metal, I

21    think you were describing in the wheelchair program

22    on that visit?

23        A.  Yes, I did.  And there were -- on the table

24    there were nuts and bolts out -- well, nuts and

25    bolts.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3501

3494

```
 1          Q.   Okay.  And then you visited again?

 2          A.   Yes, I did.

 3          Q.   And what did you see that time?

 4          A.   It was quite different.  It was not as

 5    clean.  There was a lot more equipment present.  I

 6    believe I visited in June.  There was a lot more

 7    equipment present.  There were not only wheelchairs,

 8    but there were numerous walkers as well.

 9          Q.   There were walkers the second time, but not

10    the first time?

11          A.   That is correct.

12          Q.   And the first time everything was pretty

13    cleaned up and tidied up?

14          A.   Yeah, it was pretty pristine.  The second

15    visit, not so much.

16          Q.   And you say walkers, were they -- this is

17    Defendant's RP-NN, and this is appears to be a walker

18    with wheels on it.  Were they walkers like this, with

19    seats and wheels?  Or can you describe what they

20    looked like?

21          A.   Many of them had seats or an area to sit

22    down.  Wheels, possible brake mechanisms on the

23    handles.  So many of them looked very similar to

24    that.

25          Q.   Okay.  And you also went to view the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3501

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3502

 1   evidence in this case, did you not?

 2       A.   Yes, I did.

 3       Q.   And you photographed it?

 4       A.   Yes, I did.

 5       Q.   This is Defendant's RP-W.  Do you recognize

 6   this picture?

 7       A.   Yes, I do.

 8       Q.   What is this?

 9       A.   That is a picture of what was represented

10   to me as three of the shanks that were found in blue

11   pod.

12       Q.   This is Defendant's RP-V.  What is this?

13       A.   That is a picture that I took that

14   represents -- or that photo documents four of what

15   was represented to me as the shanks found in the blue

16   pod.

17       Q.   Okay.  And were you able to examine these

18   materials?

19       A.   Yes, I was.

20       Q.   Now, you weren't able to test their metal

21   component or anything, were you?

22       A.   Oh, no.  Just by examining photo document,

23   is all I was able to do.

24       Q.   And this photograph here shows them next to

25   boxes.  Are these the evidence collection boxes that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3502

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3503

```
 1    Agent Palomares testified about?
 2         A.   Yes.  I am assuming that those are the same
 3    boxes.
 4         Q.   I'm going to show you Defendant's RP-W
 5    again.  You've heard testimony that, allegations that
 6    a shank used to kill Javier Molina came from a walker
 7    that was Rudy Perez', right?
 8         A.   Yes.
 9         Q.   And you went and you inspected -- you
10    viewed the evidence in this case; you looked at what
11    are the purported shanks that were recovered?
12         A.   Yes, I did.
13         Q.   And can you tell, in viewing them, what
14    they came from?
15         A.   Oh, no, I wouldn't be able to do that.
16         Q.   Can you tell if they are all the same
17    material?
18         A.   No.  I wouldn't purport to be able to tell
19    you that.
20         Q.   And your photograph looking at them pretty
21    close-up shows that one of them appears to be,
22    perhaps, rusted or dirty, can you tell what that is,
23    aged.  Do you know?
24         A.   I do not know.
25         Q.   Okay.  Now, you've heard a lot of talk
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3503

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3504

```
 1   about this walker that doesn't seem to exist anymore,

 2   but perhaps existed at one time.  And it's not in

 3   evidence.  And you have viewed all the physical

 4   evidence in this case; is that right?

 5        A.   Yes.  When I was there, I asked if that was

 6   everything.  And I was instructed that, in fact,

 7   everything that I had viewed was every piece of

 8   evidence in the case.  So, going on that, yes, I will

 9   say that I viewed all the evidence in the case.

10        Q.   And there was no walker there.

11             Now, if there were a walker that had been

12   preserved, a walker that the Government alleges

13   belonged to Rudy Perez, what forensic analysis, what

14   testing would you want to do with respect to these

15   shanks, these pieces, to see if it, in fact, came

16   from that walker?

17        A.   I think that forensic tool mark analysis

18   would be done.  I think it would be sent to the

19   forensic trace department.

20        Q.   And would that be done in comparison to the

21   walker, or can it be done in isolation, with no

22   walker?

23        A.   No.  You would most definitely need the

24   walker to do a comparison-type forensic examination.

25             You could also do metallurgy.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3504

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3505

1      Q.   And what else would you want to do in order

2    to explore possible theories that the pieces didn't

3    come from the walker?  What else would you do to rule

4    that out?

5      A.   Well, I think your main thing would -- your

6    main forensic disciplines would consist of trace

7    analysis, which would consist of tool mark

8    comparisons.  And, again, metallurgy are

9    possibilities.

10     Q.   Okay.

11     A.   And you can also do, you know, depending on

12   what you're looking at -- obviously, there is other

13   trace analysis, as well as DNA analysis.

14     Q.   But you can't do any of that because you

15   don't have the walker itself.

16          Now, what we do have are photographs that

17   the Government purports are of a walker that was

18   seized.  Now, do these photographs tell you, for

19   purposes of your analysis, how big this walker is?

20     A.   There are no scales on any of the pictures

21   that I have seen, no scales whatsoever.  So there is

22   no way of knowing how -- the size of that.

23     Q.   Okay.  Do they tell you what the metal

24   component is, what it's made of?

25     A.   No.  There is no brand, make, model, serial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3506

1   number, there is no identifying marks that would help

2   get the information needed to be obtained.

3         Q.   Okay.  And then all the documents you've

4   reviewed, all the discovery in this case, you've not

5   seen a report that does include those

6   characteristics:  Measurements?

7         A.   I have not found anything like that.

8         Q.   And so, in your opinion, is there any way

9   to determine, based upon the shanks themselves and

10  these photographs, whether they came from this

11  walker?

12        A.   No.  In my opinion, you would absolutely

13  need the walker to do the comparison to, to be able

14  to answer a question like that.

15        Q.   Okay.  And you're also trained in evidence

16  collection and preservation.  And you've talked about

17  that with regard to the video.  How, just according

18  to standard practices, not necessarily the local

19  practice, how should a walker in this case have been

20  taken into evidence, and examined and preserved?

21        A.   Well, it would be taken into evidence.  It

22  would be packaged.  And then, if it goes on for photo

23  documentation, then the proper photo documentation

24  with proper scales, 90 degree photos, you can get an

25  idea of size.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3506

1          But, initially, you would take that in; you

2     would write a case number, initials, and then make

3     sure that it immediately gets -- or it gets into a

4     secured storage evidence area.  And then submit it to

5     the laboratory.

6          Q.   And have you seen any documentation that

7     demonstrates proper chain of custody for this item in

8     Defendant's NN?

9          A.   No, I have not.

10          Q.   Okay.  And how about for the photo?  Is

11     there any documentation whatsoever as to who took the

12     photo, and where the item photographed was held?

13          A.   No, not that I have received.

14          Q.   Okay.  I think you have heard -- it's not

15     testimony from the Government, but claims from the

16     Government that there is a perfect fit:  Using the

17     shanks, which you photographed and apparently the

18     photo of the walker itself, the Government claims to

19     have established that those pieces of metal fit

20     perfectly into this item, and so it's clear that they

21     came from it.  Do you know how anybody could properly

22     say that they fit perfectly, given these photos?

23          A.   I honestly have no idea how anybody would

24     have been able to make any sort of match, let alone

25     that statement, without having the walker and the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    pieces of metal in the same room, or at least sizes,

 2    and make and model number.

 3         Q.   Okay.  And you've also -- have you reviewed

 4    any policies of the New Mexico Corrections

 5    Department, State Police, in this case?

 6         A.   Yes, I have.

 7         Q.   And what is your opinion as to whether or

 8    not the New Mexico Corrections Department followed

 9    their policies in terms of preserving evidence?

10         A.   In my opinion, they have not followed the

11    protocols and procedures that they have in place.

12         Q.   In what ways have they failed to follow

13    those protocols and procedures?

14         A.   For example, the wheelchair is on the

15    screen.  There is no name of who took this photo, the

16    time, the date, where it was taken, the walker

17    itself.  There is no evidence log.  There is -- in

18    their protocols and procedures there is a designated

19    evidence custodian that is supposed to not only

20    secure the chain, but also make sure that the

21    appropriate paperwork is filled out.  And there is no

22    evidence custodian listed in any paperwork that I

23    have seen, nor is there any evidence logs that should

24    have been filled out by the said evidence custodian,

25    per protocol.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3508

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3509

1    Q.   Okay.  And the walker itself was not

2    preserved, we've heard that; don't know where it is

3    today; don't know when it was destroyed.  But can you

4    tell the Court in your expert opinion what is the

5    standard practice for evidence preservation on an

6    item like this in a homicide case?

7    A.   On something like -- well, any item of

8    evidence, in my experience in a homicide case, is --

9    as far as how long it's preserved?  Is that the

10   question?

11   Q.   Yes, how long should it be preserved?

12   A.   It would be preserved until -- well,

13   forever, essentially, until the -- all parties

14   have -- are deceased, or that litigation has

15   completely stopped.

16   Q.   And when I say an "item like this," I mean

17   a potential source of a murder weapon.  It is your

18   opinion that that should be preserved until the

19   conclusion?

20   A.   It is my experience that items such as

21   this, such as a potential murder weapon, is held and

22   stored indefinitely, if you will.

23   Q.   And have you ever seen a homicide case

24   where a potential source of a murder weapon was not

25   preserved?  Was photographed and then not preserved?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3509

1      A.   Not photographed and not preserved.  But it

2   is not something that I have seen common, no.

3           MS. FOX-YOUNG:  Your Honor, I'll pass the

4   witness.

5           THE COURT:  Let me ask everybody if we

6   could do what we did, I think, last week.  We're kind

7   of at an odd break time.  But Ms. Bean and I just

8   finished up a jury trial last night, then I drove

9   down here.  So I don't want to wear her out.  If I

10  get the men to just stay in their place, I'll sit

11  here too, none of us will move.  Attorneys, you can

12  move around, but be coming back in as soon as

13  Ms. Bean rests her fingers just a little bit.  I'd

14  like to get a little bit more done here.  So we'll be

15  in recess for about 15 minutes.  The men can hang

16  with me.  I'll sit here at the bench as well.  I

17  guess I should say the defendants.  If the attorneys

18  want to drift out a little bit, they can.  As soon as

19  Ms. Bean is ready to go we'll get back in here.

20           (The Court stood in recess.)

21           THE COURT:  Let's try to get back in our

22  seats here.  Look around, make sure everyone has got

23  an attorney.  Everyone got an attorney?

24           Ms. Schile, I'll remind you you're still

25  under oath.  Anybody want to ask Ms. Schile questions



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   before Mr. Beck does?

 2          All right.  Mr. Beck, if you wish to

 3   cross-examine Ms. Schile, you may do so at this time.

 4                      EXAMINATION

 5   BY MR. BECK:

 6      Q.   Ms. Schile, on your direct examination you

 7   talked about -- you said you would have collected

 8   video earlier; is that right, in this case?

 9      A.   Yes.

10      Q.   I think you said you came to that

11   conclusion based on the allegations that were made?

12      A.   I came to that conclusion based on the

13   statements that were made.

14      Q.   And which statements were those?

15      A.   For example, there was an interview on

16   March 14, followed up by a written report on March

17   17, that said at least twice, but I believe several

18   more times -- I don't have that right in front of me

19   -- "Go and look at the videos, you'll see it on the

20   video," a couple of times.

21      Q.    And what are we looking for on those

22   videos?

23      A.   People passing information from one pod to

24   another pod through a door.

25      Q.   So that's related to the paperwork that you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3511

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3512

```
 1    were saying you would have got in these videos
 2    earlier?
 3         A.   That's one thing.
 4         Q.   Is there another thing?
 5         A.   Well, then, of course, to look at anything
 6    that was going on with -- throughout the day of the
 7    incident.
 8         Q.   So you would have wanted the videos from
 9    the day, to see what was going on?
10         A.   Absolutely.
11         Q.   In the pod?
12         A.   Yes.
13         Q.   Now, did you put together a timeline in
14    this case of who knew what at what time?
15         A.   No, I have not.
16         Q.   You said, I think, you reviewed a lot of
17    documents in this case?
18         A.   Yes.
19         Q.   And you did site visits?
20         A.   Yes.
21         Q.   And then you reviewed evidence?
22         A.   That's correct.
23         Q.   And did you take a log of the evidence that
24    you reviewed?
25         A.   I believe that everything I reviewed is on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3512

1    a sheet of paper with my initials on it that one of

2    the detectives had.

3         Q.   One of the detectives here today had?

4         A.   I think it could have been Detective

5    Palomares.  And I apologize for not saying his name

6    right.

7         Q.   That's all right.  So the evidence you

8    reviewed, I'm guessing you're talking about the

9    physical evidence that you reviewed at Southern?

10        A.   No, this was physical evidence that I

11   viewed at the State Police here in Las Cruces.

12        Q.   Okay.  So when you talked earlier about the

13   evidence you reviewed, that was the physical evidence

14   you reviewed here with the State Police?

15        A.   Yes, that's correct.

16        Q.   Do you have a log of the documents that you

17   reviewed?

18        A.   No, I do not.

19        Q.   Okay.  When you said that you reviewed the

20   tape about the allegations about the paperwork, in

21   what you reviewed and what you heard today, Detective

22   Palomares didn't know about the paperwork after the

23   incident, did he?

24        A.   According to one of the correctional

25   officers, he did.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3513

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3514

```
 1          Q.    According to Agent Palomares, did he?

 2          A.    Yes -- no, I'm sorry.  What I'm saying is

 3    that one of the corrections officers that we heard

 4    today said that he gave the detective all of the

 5    notes that he had.  And, of course, that 14th and

 6    17th of March statement was one of the memos that he

 7    was referring to.

 8          Q.    Agent Palomares today said he didn't know

 9    about it, didn't he?

10          A.    That's what I -- I believe that he did not

11    say that he didn't know about it.  I believe he said

12    that he found out about it in 2015.  My recollection

13    of testimony.  And I apologize if that is incorrect,

14    but that's what I recollect.

15          Q.    Fair enough.  Now, Exhibit W, which I can't

16    seem to find here.  Give me a moment.  You testified

17    about this picture on direct examination with

18    Ms. Fox-Young, right?

19          A.    Yes, I did.

20          Q.    And as I'm looking down at the bottom of

21    that picture, it appears to me that those two left

22    pieces of metal have threads on them.  Is that what

23    it looks like to you?

24          A.    Yes.  Certainly, the middle piece is

25    threaded.  And it does appear that there might be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3514

```
 1   demarcations of what could be threads on the left
 2   piece from this picture.
 3        Q.   And you saw those when you viewed evidence
 4   with the New Mexico State Police, like you were
 5   saying?
 6        A.   Yes, that is correct.
 7        Q.   And did they have threads on them?
 8        A.   Yes.
 9        Q.   And you'd agree with me that you
10   reviewed --
11             THE COURT:  Hold on, Mr. Beck.  Somebody on
12   the phone doesn't have their mute button on.  If
13   you'll put your mute button on.  We're getting a lot
14   of feedback.  Thank you.
15             Mr. Beck.
16        Q.   In the testimony you reviewed from Mr.
17   Perez, he said that a piece of his walker was taken
18   out, right?
19        A.   Yes.
20        Q.   And you heard testimony today that I think
21   one of the correction officers said he said a piece
22   of his walker was taken out with nuts and bolts,
23   right?
24        A.   Did he say that that's what Mr. Perez said,
25   or that's what the shakedown people said?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3515

1      Q.   I believe the testimony was that's what Mr.

2   Perez said.

3      A.   Okay.  If that's the testimony, then -- I

4   was under the impression that it's what the shakedown

5   people reported.

6      Q.   Okay.  In either case, if that's the

7   testimony, that's fine.  You'd agree with me that it

8   would be helpful to you to compare those threads with

9   Mr. Perez' walker, right?

10      A.   With the threads?

11      Q.   The threads on this shank, or this piece of

12   metal here, in Exhibit RP-W, it would be helpful to

13   compare those threads to the threads on Mr. Perez'

14   walker?

15      A.   Yes.  Or it would be helpful to be able to

16   compare those pieces.

17      Q.   Right.  That would be helpful to you?

18      A.   Yes.

19      Q.   Why would that be helpful?

20      A.   Because that's only way to know if -- that

21   would be the only way to be able to do a tool mark

22   comparison or to even do a size comparison.

23      Q.   What would that tool marker size comparison

24   tell you, if you're able to do that?

25      A.   If those pieces could even fit into an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9517
310

1    unknown area of where a piece is supposed to have

2    been missing.

3         Q.   In this case, if you took those pieces and

4    compared them with Mr. Perez' walker, what would that

5    tell you?

6         A.   Well, I can't tell you what it would tell

7    me.  I could say what it could tell me.

8         Q.   Okay.

9         A.   It could tell me whether those pieces were

10   a possibility for having been associated with that

11   walker at some point, or whether those pieces were

12   not forensically associated with that walker at some

13   point.

14        Q.   And through those tests, that's the only

15   way you could tell that; you said that earlier,

16   right?

17        A.   In my opinion, that's correct.

18        Q.   And you didn't perform those tests?

19        A.   No, sir, I did not.

20        Q.   You'd agree with me that, if they did fit

21   in Mr. Perez' walker, under those two tests, that

22   would be evidence that those came from Mr. Perez'

23   walker, right?

24        A.   It would be an indication that they

25   possibly came from the walker.  It would not be an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3517

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3518

```
 1    indication of a certainty.
 2         Q.   Okay.  So even if we had the walker, you
 3    couldn't tell for certain that those came from Mr.
 4    Perez' walker?  Is that what you're saying?
 5         A.   That is correct.  If you did metallurgy,
 6    and added some tests, then the possibility would go
 7    up, or down.  But that's correct.
 8         Q.   Did you do metallurgy tests on these pieces
 9    in Exhibit RP-W?
10         A.   No.
11         Q.   Did you do metallurgy tests on Mr. Perez'
12    walker?
13         A.   I've never seen the walker.  I've only been
14    told that one exists.
15         Q.   So is that a no?
16         A.   Pardon me?
17         Q.   Is that a no, you didn't do those tests on
18    Mr. Perez' walker?
19         A.   That is correct.
20         Q.   And just to follow up on that, you'd agree
21    with me, if you did those tests, those metallurgy
22    tests on those pieces and on Mr. Perez' walker, and
23    those matched, that would indicate that those pieces
24    of metal came from his walker?
25         A.   That could be a possibility, yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3518

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3519

1        Q.   And that would corroborate his statements

2   that you reviewed, in which he said it came from his

3   walker; is that right?

4        A.   It certainly could.

5        Q.   Could it not corroborate his statements, if

6   it was the same metal?

7        A.   It can be the same metal and not fit.  I

8   mean, other aspects -- again, it would be a series of

9   things.

10       Q.   Right.  I'm not asking about that.  We can

11   move on.

12       A.   Okay.

13       Q.   So I just want to be clear.  You don't know

14   what size walker Mr. Perez' walker was, right?

15       A.   No, sir, I don't.

16       Q.   And you don't know what metals Mr. Perez'

17   walker was made out of?

18       A.   I do not.

19       Q.   And you don't know what metals, those

20   pieces, the shanks we saw, were made out of the?

21       A.   I do not.

22       Q.   So you'd agree with me that, at this point,

23   it's indeterminate whether those shanks came from Mr.

24   Perez' walker, in your expert opinion?

25       A.   I cannot determine that, that's correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3519

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3520

```
 1          Q.   Now, did you ever -- in your involvement in
 2     this case, did you ever tell the State Police to
 3     preserve Mr. Perez' walker?
 4          A.   No, I did not.
 5          Q.   Did you ever tell the New Mexico
 6     Corrections Department to preserve Mr. Perez' walker?
 7          A.   No, sir, I did not.
 8          Q.   Did you, in the documents you reviewed, see
 9     an instance in which someone told STIU or the New
10     Mexico Corrections Department to preserve Mr. Perez'
11     walker?
12          A.   I apologize.  Did I see a memo in regard --
13     did I see anything regarding --
14          Q.   A request to preserve Mr. Perez' walker?
15          A.   No, I did not.
16          Q.   And that goes to anyone.  Did you see a
17     request to anyone to preserve Mr. Perez' walker?
18          A.   Protocol would say that, if it was
19     collected, then it is preserved.  So insofar as
20     reviewing two protocols, the State, and then the New
21     Mexico Corrections facility --
22          Q.   I don't want to cut you off.
23          A.   Okay.
24          Q.   My question was:  Did you see, in the
25     documents you reviewed, a request to preserve Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3520

1   Perez' walker?

2        A.   Well, in my opinion, the protocol is -- I

3   mean, you follow your protocol.  So a request from a

4   named single individual, no.  But as far as following

5   a protocol, then, yes.  If that makes sense.

6        Q.   Not quite.  I think I understand what

7   you're saying.  But I guess -- let me better phrase

8   my question.  Did you see a request in the documents

9   you reviewed from a person to another person or

10  entity asking to preserve Mr. Perez' walker?

11       A.   No, sir, I did not.

12            MR. BECK:  Pass the witness, Your Honor.

13            THE COURT:  All right.  Thank you, Mr.

14  Beck.

15            Any defendant have any recross they want to

16  do?

17            All right.  Ms. Fox-Young, do you have

18  recross of Ms. Schile?

19            MS. FOX-YOUNG:  Thank you, Your Honor.

20                      EXAMINATION

21  BY MS. FOX-YOUNG:

22       Q.   Ms. Schile, the prosecutor asked you if

23  you -- why you might want to see the video evidence

24  from earlier in the day, before the portion that was

25  preserved.  And you talked about the paperwork.  Is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3521

```
 1    there anything else going on in the pod that day that
 2    you would want to see, if you could go back in time
 3    and look at the video from before the time it was
 4    preserved?  Would you want to look in any particular
 5    cell?
 6         A.   Well, I think that it would be helpful to
 7    know what's going on throughout the day in that pod.
 8    Again, if certain statements have been made about
 9    allegations or corroborating allegations, I think
10    that you always want to go and see if you can do
11    that.
12         Q.   Okay.  And specifically, the allegations in
13    this case that somebody went in to Rudy Perez' cell
14    and took a piece which was subsequently fashioned
15    into shanks and used in the murder, would the video
16    evidence from earlier in the day tell you anything
17    about that?
18         A.   Absolutely.  It would tell you who is going
19    in and out of, you know, cells; how people are
20    carrying themselves; if it appears that things are
21    getting carried in and out.  All of that is a
22    possibility.  I can't tell you anything for sure,
23    because there was no video of such.  But I can say
24    what I would have hoped to have done, if I was doing
25    the crime scene.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3522

1      Q.   Right.  And you told me for sure earlier

2    that there is direct line of sight from those cameras

3    into Rudy Perez' cell?

4      A.   Yes, I did.

5      Q.   Okay.  The prosecutor asked you about

6    comparing these shanks to the walker, and asked you,

7    I think, if you could be certain that they came from

8    a walker, if we had the walker and you could compare

9    threads.  And I think you said it would tell you

10   something, but you couldn't be certain.

11          If we had the walker, and you could examine

12   the walker, and you could order testing of the metal

13   pieces, these shanks and the walker, and do all the

14   other forensic testing that you described, or some

15   portion thereof, you could potentially exclude the

16   walker as a source of weapons; correct?

17     A.   Oh, absolutely.

18     Q.   Okay.  And so, if we had the walker with

19   us, while you might not be able to definitely say

20   with absolute certainty the pieces came from it, you

21   could definite exclude it, given certain results.

22     A.   I hate to use the word "definitely."  Yes,

23   it's absolutely possible that you would be able to

24   exclude it.

25     Q.   And I know you haven't done these tests.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3523

 1    And we don't have the walker here to test?

 2         A.   Yes.

 3         Q.   But the prosecutor asked you:  You didn't

 4    test the metal of these shanks.  And if we had the

 5    walker, you'd want to test -- would you want to test

 6    the metal on the shanks?

 7         A.   Yes, absolutely.  And the walker itself.

 8         Q.   Okay.  And I won't have you recite all the

 9    other things that you have told me and told the

10    Government that you'd want to do.  But you have

11    already sort of run through that litany.  And is one

12    of the reasons that you'd want to do that, to exclude

13    the walker as a source of weapons?

14         A.   Yes, either include or exclude.

15              MS. FOX-YOUNG:  Thank you, Your Honor.  No

16    more questions.

17              THE COURT:  All right.  Thank you, Ms.

18    Fox-Young.

19              All right.  Ms. Schile, you may step down.

20    Thank you for your testimony.

21              THE WITNESS:  Thank you.

22              THE COURT:  Well, we're working on getting

23    an attorney for Mr. Wright.  We've got -- Ms. Wild

24    has got calls to three different attorneys.  The one

25    I had in mind, she had in mind, doesn't look like he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3524

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3525

1   can do it.  So we're going to have to scramble.

2   They've all got telephone numbers, so if they get her

3   message, they can talk to her tonight.  And we'll try

4   to get somebody in place.

5         But let's break for the evening.  I

6   appreciate everybody's hard work.  Everybody be safe

7   on their travels.  And we'll see you in the morning.

8   Have a good evening.

9         (The Court stood in recess.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3525

```
1                    C-E-R-T-I-F-I-C-A-T-E

2

3     UNITED STATES OF AMERICA

4     DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8     Official Court Reporter for the State of New Mexico,

9     do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13        In testimony whereof, I have hereunto set my

14    hand on December 14, 2017.

15

16

17

18    _____
      Jennifer Bean, FAPR, RMR-RDR-CCR
19    Certified Realtime Reporter
      United States Court Reporter
20    NM CCR #94
      333 Lomas, Northwest
21    Albuquerque, New Mexico 87102
      Phone:  (505) 348-2283
22    Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8                         VOLUME 2

9         Transcript of Motion to Suppress and James
     Hearing Proceedings before The Honorable James O.
10   Browning, United States District Judge, Las Cruces,
     Dona County, New Mexico, commencing on December 8,
11   2017.

12
     For the Government:  Ms. Maria Armijo; Mr. Randy
13   Castellano; Mr. Matthew Beck

14   For the Defendants: Ms. Sara Priddy; Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Robert Cooper;
15   Mr. Jeff Lahann; Mr. Orlando Mondragon; Mr. John
     Granberg; Mr. Billy Blackburn; Mr. Scott Davidson;
16   Ms. Amy Jacks; Mr. Richard Jewkes; Ms. Amy Sirignano;
     Mr. Christopher Adams; Mr. Marc Lowry; Ms. Theresa
17   Duncan; Ms. Carey Bhalla; Mr. William Maynard; Mr.
     Ryan Villa; Mr. Donovan Roberts; Ms. Lisa Torraco;
18   Ms. Angela Arellanes; Mr. Samuel Winder

19
     For the Defendants (Via telephone):  Ms. James Castle
20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  Let's get started.  It looks

2    like everybody is here.  Everyone has got an

3    attorney, ready to go.

4           A couple of announcements.  Peter

5    Giovannini will be coming over.  But I'm not sure I

6    can get him over here till this afternoon to

7    represent Jason Wright.  So I may have to work around

8    him.  I think he's waiting for a state court verdict,

9    so we'll work with his schedule.  But he'll be here

10   this afternoon.

11          As far as the defense lawyers, I am caught

12   up with CJA vouchers through November 30.  In my

13   view, that's not bad.  And then there is another

14   packet that I worked on yesterday that got Fed Ex'd

15   back to my office in Albuquerque.  So there will be

16   another batch that will hit probably today.  And then

17   there was a small batch that I didn't see in my

18   briefcase that I'll take back tonight.  That will be

19   in the chair and probably get processed on Monday.

20   So I'm waiting for a Fed Ex to come in today and it

21   may have some more vouchers.  But I'm working on

22   them, staying on top of them.  So if anybody has any

23   complaints or concerns, let us know, but I think

24   we're doing a pretty good job on that score.

25          All right.  How do you we want to shift

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3528

1    here, given that we're probably not going to have

2    Giovaninni over here till noon?

3            MR. VILLA:  Your Honor, we have one more

4    witness to call, that may or may not obviate

5    Mr. Wright.  But in response to the events of

6    yesterday, we've got another witness to call.

7            THE COURT:  All right.

8            MR. VILLA:  Would you like us to proceed?

9            THE COURT:  Yes, go ahead and call your

10   next witness.

11           MR. VILLA:  Mr. Perez calls Gary Ainsworth.

12           THE COURT:  Mr. Ainsworth, if you'll come

13   up and stand next to the witness box on my right,

14   your left.  Before you're seated, Ms. Standridge, my

15   courtroom deputy, will swear you in.

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3529

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3530

```
 1                    GARY AINSWORTH,
 2         after having been first duly sworn under oath,
 3         was questioned and testified as follows:
 4                       EXAMINATION
 5             THE CLERK:  Please be seated and state your
 6   name for the record, spelling your last name.
 7             THE WITNESS:  My name is Gary Ainsworth.
 8   A-I-N-S-W-O-R-T-H.
 9             THE COURT:  Mr. Ainsworth.  Mr. Villa.
10             MR. VILLA:  Thank you, Your Honor.
11   BY MR. VILLA:
12        Q.   How are you employed?
13        A.   Private investigator.
14        Q.   Just briefly, can you tell me about your
15   professional background?
16        A.   Sure.  I've been a private investigator
17   since January 1, 2009.  Prior to that, I was a
18   Special Agent with ATF.  Retired from ATF in 2008,
19   after about 20 years.
20        Q.   And Mr. Ainsworth, did I hire you to
21   conduct investigation on behalf of Mr. Perez?
22        A.   Yes, sir.
23        Q.   And specifically with respect to Jason
24   Wright, can you tell me, did you conduct an
25   investigation?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3530

 1          A.   Yes, sir.  I accompanied you to

 2    Northeastern New Mexico -- I don't remember if it's

 3    detention facility or correctional facility -- in

 4    August, this past August, 2017.  And we interviewed

 5    Mr. Wright.

 6          Q.   So I want to ask you just a little bit

 7    about that interview.  Mr. Wright did speak to us?

 8          A.   Correct.

 9          Q.   And just focusing on the issue of the

10    wheelchair program and walkers, did you interview

11    Mr. Wright about his memory of the type of walker

12    that Mr. Perez had on March 7, 2014?

13          A.   Yes, sir.

14          Q.   And just for background, where was Jason

15    Wright, as you understood it from the interview, on

16    March 7, 2014?

17          A.   In the same pod where Mr. Molina was

18    murdered.

19          Q.   And that's also the pod where Mr. Perez

20    was?

21          A.   Correct.

22          Q.   And what was Mr. Wright's memory of the

23    type of walker that Mr. Perez had?

24          MR. CASTELLANO:  Objection; calls for

25    hearsay.



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                         BEAN                            1-800-669-9492
                         & ASSOCIATES, Inc.
                         PROFESSIONAL COURT        e-mail: info@litsupport.com
                         REPORTING SERVICE
                                                                        DNM 3531

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5532

```
 1              THE COURT:  Well, we're trying to figure
 2    out whether evidence should come in.  I think I
 3    better hear it.  Overruled.
 4         Q.   Can you answer?
 5         A.   He recalled the walker that Mr. Perez, that
 6    Rudy Perez used.
 7         Q.   Was he able to describe it?
 8         A.   He said he recalled it, and he described.
 9    Because he said it had, like, that middle seat in it.
10         Q.   Now, did Mr. Wright discuss whether he
11    worked in the wheelchair program around the time,
12    March 7, 2014?
13         A.   He did.  And he said that he did work in
14    the wheelchair program during that time.
15         Q.   And just briefly, what did he say that they
16    did in the wheelchair program?
17         A.   It was basically repairing and rehabbing
18    wheelchairs and walkers.
19         Q.   Now, he did say that they repaired and
20    rehabbed walkers?
21         A.   Correct.
22         Q.   Did he talk about whether the walkers that
23    he worked on and repaired bore any similarity to the
24    type of walker Mr. Perez had?
25         A.   Yes, sir, he did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3532

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3533

```
 1          Q.   What did he say?

 2          A.   He said there was up to 10 of them in the

 3     wheelchair program that were similar to Rudy Perez'

 4     walker.

 5               MR. VILLA:  May I have just a moment, Your

 6     Honor?

 7               THE COURT:  You may.

 8               MR. VILLA:  I'll pass the witness.

 9               THE COURT:  All right.  Thank you, Mr.

10     Villa.  Before the Government cross-examines, other

11     defendant have any questions of Mr. Ainsworth?

12               All right.  Mr. Castellano, do you have

13     cross-examination of Mr. Ainsworth?

14               MR. CASTELLANO:  Yes, Your Honor.  May I

15     have a moment?

16               THE COURT:  Mr. Castellano.

17                         EXAMINATION

18     BY MR. CASTELLANO:

19          Q.   Good morning, Mr. Ainsworth.

20          A.   Good morning.

21          Q.   When you interviewed Mr. Wright, did you

22     prepare any report or have any notes from that

23     interview?

24          A.   No, sir, no notes.

25          Q.   What do you have that recorded the essence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3533

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3534

```
 1   of the interviews?
 2        A.   The interview was recorded.  And --
 3        Q.   Are you able to produce that, a copy of the
 4   recording for us?
 5             MR. VILLA:  Your Honor, I mean, he can
 6   certainly answer the question.  But I believe that
 7   recordings of witness interviews are protected under
 8   Rule 16 from disclosure.  And he certainly has not
 9   relied on it to refresh his recollection for his
10   testimony.
11             MR. CASTELLANO:  We're able to see what the
12   witness used to refresh his recollection, Your Honor.
13             THE COURT:  He said he didn't.  You can ask
14   questions, but Mr. Villa said he didn't listen to it.
15   Is that what you said?
16             MR. VILLA:  What I meant to say is I didn't
17   ask him to refresh during the course of his
18   testimony, right?  I think if he forgot something and
19   he used it to refresh his recollection, the
20   Government would be entitled to it.  But I hadn't
21   asked him to do that during the course of the direct.
22             THE COURT:  Lay a little more foundation.
23   Let's see -- he may have some questions on that score
24   of Mr. Ainsworth, and we'll see what we're going to
25   do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3534

1      Q.   Mr. Ainsworth, what did you do to prepare

2  for your testimony today?

3      A.   Reviewed the recording.

4      Q.   And when was the last time you heard the

5  recording?

6      A.   Last night.

7      Q.   And so I take it you reviewed the recording

8  to refresh your recollection for testimony today?

9      A.   Correct.

10         THE COURT:  Well, I think he's entitled to

11  it then.

12         MR. VILLA:  Well, Your Honor, I think under

13  612, if it refreshes his recollection during his

14  testimony, they'd be entitled to it.

15         THE COURT:  I think if he did it in

16  preparation for the testimony, he's entitled to it as

17  well.

18         MR. VILLA:  So we can make arrangements to

19  provide it then.

20         THE COURT:  Okay.

21         MR. CASTELLANO:  Thank you, Your Honor.

22  BY MR. CASTELLANO:

23      Q.   Mr. Ainsworth, I'm going to show you what's

24  been admitted as Defendant's Rudy Perez' HH.  Can you

25  tell us whether this photo or a similar photo was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10536

```
 1    shown to Mr. Wright?

 2        A.   It was not.

 3        Q.   So when you spoke to Mr. Wright, were you

 4    just basically testing his memory without the use of

 5    anything such as a photograph?

 6        A.   Well, we were asking him questions.  But I

 7    did not have that photograph in the interview.

 8        Q.   And so he described as -- a walker with

 9    kind of, as you described it, a seat in the middle;

10    is that accurate to say?

11        A.   I believe that was what he said, correct,

12    that it did have a seat.

13        Q.   And what did he say about having any

14    knowledge of whether or not Rudy Perez' walker was

15    used in any way in relation to the Molina murder?

16            MR. VILLA:  Objection, Your Honor.  Outside

17    scope.

18            THE COURT:  Overruled.

19        A.   I'm sorry.  Could you repeat it?

20        Q.   What did he say about his knowledge or his

21    belief about the use of Rudy Perez' walker in the

22    Molina murder?

23        A.   You know, it was a long interview, and

24    without -- I would be rather hesitant -- there may

25    have been something said about it.  I don't recall
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3536

 1    the exact details, though.

 2         Q.   Did you listen to the entire recording last

 3    night in anticipation of your testimony?

 4         A.   No, I only listened to portions.

 5         Q.   Which portions did you listen to?

 6         A.   The portion where he talked about, I

 7    believe, that there was ten walkers in the wheelchair

 8    program that were similar to Mr. Perez'.  And there

 9    was couple of other portions that I listened to also.

10         Q.   And when you say "similar," did you dig

11    down to what he meant by similar, in terms of were

12    they exact duplicates?  Were they also just walkers?

13         A.   I believe his words were they were exactly

14    the same, but -- and again, that's from my

15    recollection of it.

16         Q.   To the best of your recollection, you think

17    there were 10 exactly the same?

18         A.   I believe it was up to 10, is what he said,

19    that he recalled working on.

20              MR. CASTELLANO:  May I have a moment, Your

21    Honor?

22              THE COURT:  You may.

23         Q.   Okay.  And I understand I'm testing your

24    recollection here, Mr. Ainsworth.  What, to the best

25    of your recollection, what do you recall exactly what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3538

1   Mr. Wright told you about the walkers, starting with

2   Mr. Perez' walker?

3        A.   He recalled the walker.  He recalled that

4   Mr. Perez relied on the walker to get around.  And

5   then he spoke about the wheelchair program and what

6   went on within the wheelchair program.  And I believe

7   it was primarily that there was -- I believe he said,

8   like, up to 10 walkers in the program that were like

9   Mr. Perez'.

10       Q.   Okay.  What did he recall about the color

11   of the --

12            MR. VILLA:  I apologize for the

13   interruption.  Your Honor, Mr. Perez has to go to the

14   bathroom fairly urgently.  Can we take just a short

15   break?

16            THE COURT:  All right.  Let's just wait for

17   a second.

18            (The Court stood in recess.)

19            MR. VILLA:  Your Honor, the U.S. Marshals

20   wanted me to let you know Mr. Perez is having some

21   intestinal problems.  That's what's going on right

22   now.  I just wanted you to know that.

23            THE COURT:  All right.  We'll just have to

24   gut through it.

25            MR. VILLA:  Thank you, Judge.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3538

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3539

```
 1              MR. CASTELLANO:  It's so early.

 2              (The Court stood in recess.)

 3              THE COURT:  All right.  Let's go back on

 4     the record.

 5              All right.  Mr. Ainsworth, I'll remind you

 6     you're still under oath.

 7              Mr. Castellano, if you wish to continue

 8     your cross-examination of Mr. Ainsworth.

 9     BY MR. CASTELLANO:

10         Q.   Okay.  Mr. Ainsworth, tell us about the

11     dimensions -- well, first of all, the size of Rudy

12     Perez' walker, as related to you?

13         A.   I'm sorry, I couldn't -- I don't think

14     you're speaking into the mic.  I couldn't hear you

15     back here.

16         Q.   Tell us about the size of Rudy Perez'

17     walker as it was relayed to you by Mr. Wright.

18         A.   I don't think he gave the size.

19         Q.   Or the shape or the dimensions?

20         A.   I don't think he gave any of that either.

21         Q.   What about the same questions as to those

22     that were in the wheelchair program?

23         A.   None of that either.

24         Q.   Was there any discussion about Mr. Wright

25     bringing shanks into the pod from the wheelchair
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3539

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3540

```
 1  program?

 2       A.   There was a discussion about shanks, and

 3  how they could have been brought in from the

 4  wheelchair program.

 5       Q.   Okay.  Tell us about that, please.

 6            MR. VILLA:  Objection; outside the scope.

 7            THE COURT:  Well, I think that it's within

 8  the scope.  Overruled.

 9       A.   And I'm sorry, you wanted to know again --

10       Q.   Yes, tell us about the discussion of shanks

11  being brought into the pod.

12       A.   I believe that what he said was that when

13  you worked in the wheelchair program, there were

14  times when you were searched, and I believe he said

15  there were times when you weren't.  And to the best

16  of my recollection, when you went to the restroom,

17  when you were working at the wheelchair program,

18  there were times that you were not searched.  So I

19  believe it would be possible then -- I'm paraphrasing

20  here -- but to possibly put shanks in the restroom,

21  and somehow coordinate with the folks in the laundry,

22  to have shanks brought back in.  And again that's

23  paraphrasing, so --

24       Q.   Was it your understanding that he was

25  either a current or former SNM Gang member?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   I believe so, yes, sir.  I don't remember
 2    if he told me that or not.  But just from the fact
 3    that he was in that pod, that was my understanding.
 4          Q.   All right.  That would have been an SNM
 5    pod; is that correct?
 6          A.   From my understanding.
 7               MR. CASTELLANO:  Pass the witness, Your
 8    Honor -- no, I don't.
 9          Q.   Did Mr. Wright admit to you that he brought
10    shanks into the pod?
11          A.   I don't believe that he did.
12          Q.   Is that your best recollection today; is
13    that correct?
14          A.   That's correct.  And like I said, I did
15    bring -- there is a recording, so --
16          Q.   Do you know when you might be able to
17    produce that recording for us?
18               MR. VILLA:  Your Honor, I have it.  I'm
19    happy to produce it, so we don't have to put the onus
20    on Mr. Ainsworth.
21               THE COURT:  Okay.
22               MR. CASTELLANO:  That's fine, Your Honor.
23               THE COURT:  All right.
24               MR. CASTELLANO:  I pass the witness.
25               THE COURT:  All right.  Thank you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3541

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 16542

```
 1    Mr. Castellano.

 2             Anybody else have any redirect of Mr.

 3    Ainsworth?

 4             All right.  Mr. Villa, if you wish to

 5    conduct redirect?

 6                      REDIRECT EXAMINATION

 7    BY MR. VILLA:

 8        Q.   Mr. Ainsworth, did you or I ever ask

 9    Mr. Wright whether he, himself, brought shanks into

10    the pod?

11        A.   I don't think we did.

12        Q.   I just want to back up a little bit.  You

13    were aware, because you've been working on this case,

14    that we were having this hearing this week?

15        A.   Correct.

16        Q.   And in advance of that hearing, did I ask

17    you to come down and testify?

18        A.   Yes.

19        Q.   Well -- and I don't mean today.  I mean,

20    this week, prior to this week?

21        A.   Prior to this week, no.  You asked me --

22    you called me last night, I believe, about 6:30, 6:00

23    or 6:30 to come testify today.

24        Q.   So prior to 6:30 last night, had you

25    anticipated testifying today?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3542

```
 1          A.   I did not.

 2          Q.   About when was the interview of Mr. Wright?

 3          A.   August of 2017; August 18, I believe.

 4          Q.   And since that time, have you conducted

 5     many other interviews?

 6          A.   Yes, I have.

 7               MR. VILLA:  That's all the questions.

 8               THE COURT:  Thank you, Mr. Villa.

 9               All right.  Mr. Ainsworth, you may step

10     down.  Thank you for your testimony.

11               What do you want to do with Mr. Wright?

12     Are you satisfied with the record where it is now,

13     and we can move beyond Mr. Wright?  Do you want to

14     pick him up this afternoon?

15               MR. VILLA:  May I have one moment?

16               THE COURT:  Sure.

17               MR. VILLA:  Your Honor, see if maybe this

18     proposal would work.  I think that the Government

19     intends to put on a couple of witnesses.  Can we

20     reserve Mr. Wright and see what happens?

21               THE COURT:  Sure.  Are you done, otherwise,

22     other than Mr. Wright?

23               MR. VILLA:  Yes, Your Honor.

24               THE COURT:  All right.  Anyone else have

25     anything they want to put on as far as witnesses or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3543

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3544

```
 1    evidence on this motion to suppress?  All right.  Mr.
 2    Castellano, does the Government -- Ms. Armijo, does
 3    the Government wish to put on any witnesses or
 4    evidence?
 5            MS. ARMIJO:  Yes, we're going to call James
 6    Mulheron.
 7            THE COURT:  Mr. Mulheron, if you'll come up
 8    and stand next to the witness box on my right, your
 9    left.  Before you're seated, my courtroom deputy, Ms.
10    Standridge, will swear you in.
11                    JAMES MULHERON,
12        after having been first duly sworn under oath,
13        was questioned and testified as follows:
14                   DIRECT EXAMINATION
15            THE CLERK:  Please be seated.  State your
16    name, spelling it for the Court.
17            THE WITNESS:  James Mulheron,
18    M-U-L-H-E-R-O-N.
19            THE COURT:  Mr. Mulheron.  Ms. Armijo.
20    BY MS. ARMIJO:
21        Q.  Mr. Mulheron, where are you employed?
22        A.  Southern New Mexico Correctional Facility.
23        Q.  And how long have you worked for -- so do
24    you work for New Mexico Corrections Department?
25        A.  Yes, ma'am, I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3544

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 19

```
 1         Q.   And how long have you worked for them?

 2         A.   Twenty-five years.

 3         Q.   And what is your current position?

 4         A.   Warden at the facility.

 5         Q.   Okay.  And when you say "Southern New

 6  Mexico Correctional Facility," is that commonly known

 7  as "Southern"?

 8         A.   Yes, it is.

 9         Q.   And that is different from what is known as

10  South, which is part of the Penitentiary of New

11  Mexico; correct?

12         A.   Correct, it is different.

13         Q.   And back in March of 2014, where were you

14  working with Corrections?

15         A.   I was a Deputy Warden at the Southern New

16  Mexico Correctional Facility.

17         Q.   And were you working on March 7, 2014, when

18  Javier Molina was killed?

19         A.   I had worked that day.  The incident was

20  after hours.

21         Q.   And were you called in that evening?

22         A.   Yes, I was.

23         Q.   Now -- and did you assist -- or why don't I

24  ask you:  What did you do when you were called in?

25         A.   Basically, responded to the facility.  We
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3545

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3546

1  ensured that the crime scene was secure and that we

2  had proper security in the housing unit.

3      Q.   And then, after that, did you assist with

4  the investigation as needed?

5      A.   As needed, yes, ma'am.

6      Q.   Were you ever made aware that shanks were

7  recovered?

8      A.   I was.

9      Q.   And did you assist in the investigation

10  that night or early morning in reference to shanks?

11      A.   That evening, yes, ma'am.

12      Q.   And can you tell us what you did?

13      A.   One of the things we did, I went to the

14  wheelchair restoration program.

15      Q.   Can you tell us what that is?  I think

16  we've heard a lot about it, but I don't know that

17  anybody has explained what it is.

18      A.   It's a program where the facility receives

19  wheelchairs, walkers that are in bad condition.

20  Those wheelchairs and walkers are then restored to

21  like-new condition.  Once we get a significant load

22  of them, say 200, those wheelchairs are shipped to

23  third world countries.  And the work is performed by

24  inmates.

25      Q.   So the inmates are not working on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    wheelchairs for people in Corrections, are they?

2         A.   No, ma'am.

3         Q.   Okay.  So it's a program to basically allow

4    inmates to work on something to send to third world

5    countries?

6         A.   A couple reasons we do it.  One is to give

7    employment to inmates, and also the goal is that the

8    inmates give something back to other people, that

9    they're doing something useful.

10        Q.   Now, why that night did you decide to go

11   and look at the area where the wheelchair program is?

12        A.   Based on what the shanks looked like, they

13   weren't -- to me, they felt something consistent with

14   the wheelchair piece, a walker piece.  We had, I

15   believe, three or four inmates that lived in that pod

16   that were employed in that program.  So it kind of

17   made sense that we would go look in the wheelchair

18   program, where they have access to the metal.

19        Q.   Off the top of your head, do you remember

20   the inmates in that program?

21        A.   No, ma'am, I don't remember who they were.

22        Q.   But at least that night you were made aware

23   of that fact?

24        A.   Yes, I was.

25        Q.   And had you had an opportunity that evening

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3547

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22

1    to actually look at the shanks that were recovered?

2        A.   I believe I looked at photographs of the

3    weapons recovered.

4        Q.   And just for the record, what is a shank?

5        A.   It's a homemade weapon, made of metal,

6    wood.  It's any kind of a piece of contraband

7    fashioned into a weapon.

8        Q.   Now, so then you went into the area, and

9    what did you observe?

10       A.   We did a thorough search of the wheelchair

11   restoration area.  We didn't find any of the metal in

12   there consistent with the shanks that were recovered

13   in the unit.  And what I mean, like they weren't

14   consistent, as the shanks were black in color.  None

15   of the wheelchairs or walkers had any kind of metal

16   on them that were black, that were consistent with

17   that color.

18       Q.   Now, do you remember if there were any

19   walkers on March 7?  Let me ask you, did do you it

20   late on March 7 or early March 8?

21       A.   I couldn't tell you.  It would have been

22   late at night or early, early morning the 8th.

23       Q.   And during that search of the wheelchair

24   program area, did you find any walkers?

25       A.   I believe at that time there was maybe two

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 23549

```
 1    walkers in there.  All the other were wheelchairs.

 2         Q.    And were there any missing pieces from

 3    those walkers?

 4         A.    No, those two walkers were intact.

 5         Q.    And after that -- and you say that not only

 6    you but other people did the search with you?

 7         A.    Yes, ma'am.

 8         Q.    Now, after that night, at some other time,

 9    did you do further looking into the situation with

10    the shanks?

11         A.    Yes.

12         Q.    And why don't you tell us about that.

13         A.    I'd say a couple days later, a week or so,

14    as the investigation was still going on, and they

15    still hadn't located where the shanks had been taken

16    from, or made from, I remember that there was an

17    inmate in that pod that had a walker.  By off chance,

18    I went in there and talked to the inmate.

19         Q.    And who was that inmate?

20         A.    It was Rudy Perez.

21         Q.    All right.  And you went in to go see him?

22         A.    Yeah.  I was doing my rounds at the

23    institution.  So when I got --

24         Q.    Explain what your rounds are, what you do

25    you do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3549

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 24

```
 1          A.    As a Warden or a Deputy Warden, you do
 2    weekly rounds in Level 6 units, housing units,
 3    program areas, basically check on the conditions, you
 4    make yourself available.
 5          Q.    And so during the rounds -- and do you do
 6    the rounds in the morning, afternoon, at night?  When
 7    do you do them?
 8          A.    Typically, first thing in the morning
 9    between 8:00 and 10:00 a.m.
10          Q.    And so what did you -- you indicated that
11    you went to go talk to Mr. Perez?
12          A.    Yeah, as far as my rounds, eventually I got
13    to the housing unit that he was in.  So I decided --
14    I talked to Mr. Perez.  Naturally, I opened the door.
15    I went in.  His walker was present.
16          Q.    Okay.  Now, I'm going to stop you there.
17    What housing unit was he in?
18          A.    That I remember, it was housing unit 2 A.
19          Q.    Okay.  Now, was that a different housing
20    unit than he was in on March 7, the day of the
21    murder?
22          A.    Yes.  He was in housing unit 1 A the night
23    of the murder.
24          Q.    And so when you went to go see him, he was
25    in 2 A.  Where is that, you know, in connection
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3550

```
 1   with -- or how far away is that from where he was?
 2        A.   It's a couple hundred yards away from the
 3   previous housing unit.
 4        Q.   Is it in the same building?
 5        A.   No, it's a separate building.
 6        Q.   Okay.  So you went to go see him, and -- in
 7   his cell; is that right?
 8        A.   Yes, ma'am, that's correct.
 9        Q.   And what did you see?
10        A.   The walker was there.  And the first thing,
11   I looked at the walker, and I did observe a piece of
12   metal missing.
13        Q.   All right.  And did you talk to him about
14   that?
15        A.   I did.  You know, initially, I asked Mr.
16   Perez what happened to the metal.  At first he told
17   me he didn't know, and, you know, didn't know what I
18   was talking about.  I asked him a few more times, and
19   he told me, "They took it."
20        Q.   Okay.  And did you ask who took it?
21        A.   I asked him who took it.  Again, initially,
22   he didn't want to answer.  And then he finally told
23   me -- I can't remember exact words, but he said, No
24   disrespect, but they told me, if I said anything,
25   I'll be next.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   Okay.  And did he indicate to you anything
 2    as far as how he would deal with the issue?
 3          A.   No.
 4          Q.   Based on that, what did you do?
 5          A.   Based on that, I left the housing unit.  I
 6    directed -- I don't know who it was, one of the
 7    officers -- to bring the walker up to my office.  And
 8    at that point, I contacted STIU Ruben Archuleta.
 9          Q.   Why did you contact him?
10          A.   To take photographs of the walker.
11          Q.   Now --
12               MS. ARMIJO:  I'm going to mark for evidence
13    Exhibits 27, 28, and 29, which are similar to defense
14    exhibits, except they have a sticker on them.  So
15    I'll move for their admission.
16               THE COURT:  Any objection?
17               MR. VILLA:  No, Your Honor.
18               THE COURT:  Any objection from any other
19    defendants?  Not hearing any, Government's Exhibits
20    27, 28, and 29 will be admitted into evidence.
21          Q.   All right.  And I'm showing you Exhibit
22    Number 27.  Can you see that photograph?
23          A.   Yes, ma'am.
24          Q.   All right.  And I'm looking at the top
25    here.  There is a sticker on it.  And do you have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3552

```
 1    reason to believe that -- so you indicated that you
 2    had STIU Officer Ruben Archuleta take the
 3    photographs?
 4         A.   Yes, ma'am.
 5         Q.   All right.  And did you do anything -- did
 6    you direct anyone to do anything with the walker
 7    prior to him taking pictures of it?
 8         A.   No, I did not.
 9         Q.   Did somebody move it from the cell to
10    another location?
11         A.   Yes.
12         Q.   Okay.  And how did that happen?
13         A.   Correctional officer -- the housing, the
14    rover picked it up and took it from the cell to my
15    office.
16         Q.   All right.  And then did Ruben Archuleta
17    actually take a photograph of it?
18         A.   Yes, ma'am.
19         Q.   And then, did you make any further requests
20    at that time?
21         A.   Yeah.  I believe I contacted STIU, and I
22    believe it was Officer Ernie Holguin, and I provided
23    him with that additional information I got from Rudy
24    Perez.
25         Q.   And what did you ask him to do?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3553

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3554

```
 1         A.   Conduct an interview.
 2         Q.   And after that, did you -- was that your
 3    way of getting follow-up done on it, so to speak?
 4         A.   Yes, ma'am, that was my follow-up.
 5         Q.   Now, do you know what happened to the
 6    walker?
 7         A.   I do not know, ma'am.
 8         Q.   Did it stay in your office for some period
 9    of time, or you don't know?
10         A.   No.  I really don't remember.  I don't
11    believe it did.
12         Q.   Okay.  And as I'm showing these pictures,
13    is that how it appeared?  I'm showing Exhibit 28.  Do
14    you know what we're looking at here?
15         A.   Yes, ma'am, I do.
16         Q.   What is it we're looking at?
17         A.   The bottom of a walker, the cross-members,
18    the support things.  I'm not sure what the
19    terminology would be.  But the two pieces -- those
20    are actually two separate pieces of metal that are
21    tied together.
22         Q.   Okay.  And when you say -- and I'm showing
23    you Exhibit 29.  What is it that we're looking at?
24         A.   It's another view of the cross-member.
25    They're tied together with -- I forget what it was, a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3554

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29

```
 1   washcloth or something.  The missing piece of metal
 2   would have run from one side to the other and would
 3   have held those two pieces together.
 4        Q.   Okay.  So you say "from one side to the
 5   other," you mean where this -- and I'm looking at the
 6   photograph, on the left side where there is a white
 7   piece of cloth, to the other side; is that correct?
 8        A.   That's correct.
 9        Q.   And is that what was obvious to you when
10   you went in the cell?
11        A.   Yes.  The first thing that brought my
12   attention to it was the way it was tied off.  And
13   then I looked down, and that cross-member was
14   missing.
15        Q.   Now, you indicated that there was a couple
16   other walkers in the wheelchair program.  Were they
17   the same color or were they a different color?
18        A.   No, ma'am.  And that's one of the things;
19   the two that were in that program were stainless
20   steel, where this one was painted black.
21        Q.   Okay.  So --
22        A.   And they were different models, they were
23   stainless steel.
24        Q.   As we're looking at -- and I'm putting up
25   Exhibit 27.  Were there any walkers in the wheelchair
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3555

```
 1   program when you did your review of it March 7/8 that
 2   were consistent with the wheelchair that is depicted
 3   on Exhibit 27?
 4        A.   No, there was not.
 5        Q.   And just so that we're clear, Exhibit 27,
 6   whose wheelchair was this?
 7        A.   That was Rudy Perez.
 8             MS. ARMIJO:  And if I may just have one
 9   moment, Your Honor?
10             THE COURT:  Certainly.
11        Q.   Now, are you also familiar with the video
12   system that was in place at Southern back in March of
13   2014?
14        A.   Somewhat familiar with it.
15        Q.   Specifically, are you familiar with how
16   long the retention was?
17        A.   Yes, ma'am.
18        Q.   And explain to us how long the taping, so
19   to speak, or the video portion would be retained?
20        A.   Typically, we retained anywhere from 22 to
21   about 50 days of video.  It would depend on which
22   DVR; if a DVR had 10 cameras hooked up to it or five
23   cameras, which would kind of determine the retention
24   on it.
25        Q.   And would how active an area also determine
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 31

1    the retention?

2        A.    It could.  The more area, the more

3    movement, the more storage space it will take up,

4    versus if a camera was just pointed off into, say,

5    the rec yard, where there is limited movement.

6        Q.    And so why does it not retain?  Does it

7    tape over it, or what happens?

8        A.    Yeah, because of the storage space that

9    would be required to retain anything more than that,

10   basically what the system does -- anywhere from 22 to

11   50 days it will start recording over it.

12       Q.    Now, is there -- and I believe the defense

13   has marked one -- is there a policy for retaining

14   that footage that's just there recorded?

15       A.    No, ma'am.

16       Q.    Okay.  Now, I believe yesterday the defense

17   had pointed out in one of the policies that there is

18   a 10-year retention of something -- of either DVDs or

19   CDs.  Do you know what that's in reference to?

20       A.    I would view that in reference to if there

21   is actually an incident with a misconduct report, and

22   you're going to use the video recording as evidence,

23   so you would download it onto a disc, and the

24   retention for that disc would be the 10 years.

25       Q.    All right.  So just so that we're clear,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3557

1    Corrections is not required to keep all footage that

2    they ever record in all facilities for 10 years, are

3    they, by policy?

4         A.   No, ma'am, we are not.

5         Q.   Okay.  It's just items that are downloaded

6    and kept as part of either an investigation, or for

7    whatever reason?

8         A.   Investigation criminal matter, in-house

9    behavioral management problem, something that that

10   item is going to be used as evidence.

11        MS. ARMIJO:  All right.  I have no further

12   questions.  Thank you.

13        THE COURT:  Thank you, Ms. Armijo.

14        Let me see if any of the defense lawyers

15   have questions of Mr. Mulheron before Mr. Villa does.

16        All right.  Mr. Villa, if you wish to

17   conduct cross-examination of Mr. Mulheron, you may do

18   so at this time.

19        MR. VILLA:  Thank you, Your Honor.

20        THE COURT:  Mr. Villa.

21                     EXAMINATION

22   BY MR. VILLA:

23        Q.   Good morning, Mr. Mulheron.

24        A.   Good morning.

25        Q.   So let me make sure I understand.  You



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3558

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3559

```
 1    don't know what happened to the walker?

 2         A.   No, sir, I don't.

 3         Q.   It was brought to your office?

 4         A.   Yes, it was.

 5         Q.   After you went to Mr. Perez' cell and spoke

 6    to him?

 7         A.   Yes.

 8         Q.   After the Javier Molina murder?

 9         A.   Yes.

10         Q.   Within -- I think you testified -- it was a

11    week or so; is that right?

12         A.   I believe it was a week or so.

13         Q.   And you asked STIU Officer Archuleta to

14    photograph the walker?

15         A.   I did.

16         Q.   In your office?

17         A.   Yes.

18         Q.   Because you thought it was important?

19         A.   Yes.

20         Q.   You thought it might have something to do

21    with this Molina homicide?

22         A.   Possibly.

23         Q.   Okay.  And this is, well, almost three

24    years ago; a little less than three years ago?  A

25    long time ago, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3559

```
 1         A.   Right.
 2         Q.   But you don't know what happened to the
 3    walker?
 4         A.   I don't.
 5         Q.   You don't know where it went?
 6         A.   I do not.
 7         Q.   But you seem to remember pretty clearly the
 8    details about the two other walkers that were in the
 9    wheelchair program; do I understand that right?
10         A.   Yes, you do.
11         Q.   Okay.  That memory is good?
12         A.   I remember that, yes, sir.
13         Q.   All right.  Let me ask you this:  Did you
14    document taking Mr. Perez' walker from him?
15         A.   I did not.
16         Q.   Why not?
17         A.   I didn't see no reason in it.
18         Q.   I'm sorry?
19         A.   I didn't see no reason to document that I
20    took it.
21         Q.   Well, it's true that there is a policy for
22    confiscation of inmate property, isn't there?
23         A.   There is.
24         Q.   And doesn't that policy say that you're
25    supposed to give an inmate a receipt when you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3560

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35

3561

```
 1    confiscate their property?
 2         A.   Well, I don't think it addresses State
 3    property.
 4         Q.   I'm sorry?
 5         A.   The walker was State property.
 6         Q.   Okay.  Did you think that it might have
 7    been important to document potential evidence in a
 8    homicide?
 9         A.   I did.  Like I said, that's why I contacted
10    STIU.
11         Q.   At the time, you were the Deputy Warden?
12         A.   Correct.
13         Q.   Let me make sure I have this right.  You
14    think that you went to see Mr. Perez about a week
15    after?
16         A.   Yes.
17         Q.   So the homicide occurred March 7?
18         A.   Correct.
19         Q.   And the week after would have been
20    approximately March 14?
21         A.   Yes.
22         Q.   You don't think it was sooner than that?
23         A.   I don't -- that I recall, it was March 14.
24         Q.   That you saw Mr. Perez?
25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3561

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3562

1          Q.   All right.  And then you asked Mr. Holguin

2     to go interview him?

3          A.   I did.

4          Q.   Do you know how soon Mr. Holguin

5     interviewed Mr. Perez after you asked him to do that?

6          A.   I do not.

7          Q.   Did you see a memo or documentation from

8     Mr. Holguin about his interview?

9          A.   Not that I recall.

10          Q.   Did he report back to you after he

11     conducted the interview?

12          A.   No.

13          Q.   Now, you were aware that the State Police

14     were conducting investigation into this homicide,

15     right?

16          A.   Correct.

17          Q.   And actually, there were some briefings

18     that took place in connection with their

19     investigation?

20          A.   I'm sure there were.

21          Q.   Were you present at those briefings?

22          A.   I could have been.  I don't recall.  I

23     probably was, but I don't recall specifically.

24          Q.   Okay.  Well, let's assume for sake of

25     argument that there might have been more than one.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3562

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3563

```
 1    Do you think you attended more than one briefing?
 2         A.    I probably did.
 3         Q.    Okay.  And you attended at least one
 4    briefing?
 5         A.    Yeah, absolutely.
 6         Q.    And maybe two?
 7         A.    I would say I did, at least one.
 8         Q.    And at that briefing, members of the State
 9    Police were present?
10         A.    Correct.
11         Q.    Did that also include Agent Palomares?
12         A.    I believe so.
13         Q.    Now, were you aware of what happened with
14    the video of the Javier Molina homicide, how that was
15    captured and provided to the State Police?
16         A.    No, I do not.
17         Q.    You didn't have any involvement in that?
18         A.    No.
19         Q.    Let me back up just a little bit.  Did you
20    review anything to prepare for your testimony today?
21         A.    Actually, I don't believe I reviewed
22    anything.  Well, I reviewed a memorandum on the
23    cameras, on which cameras were operational and not
24    operational.
25         Q.    Cameras within the blue pod?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3563

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3564

```
 1          A.    That was facility-wide.

 2          Q.    Oh, facility-wide?

 3          A.    Yes.

 4          Q.    And where is that memorandum?

 5          A.    I believe it's in the room in the back.

 6          Q.    Who prepared that memorandum?

 7          A.    I think it was Deputy Warden Edgman.

 8          Q.    Why did you review that?

 9          A.    Just to see what cameras were working or

10    not, so I would be familiar with -- if I was asked

11    which cameras were working that day of the murder, I

12    would know.

13          Q.    Did you review anything else?

14          A.    No.

15          Q.    Did you meet with members of the

16    prosecution team before your testimony?

17          A.    Yes, I did.

18          Q.    When did you do that?

19          A.    This morning.

20          Q.    And was that to discuss your testimony this

21    morning?

22          A.    It was.

23          Q.    Did you meet with them before this morning

24    regarding this case?

25          A.    No, I haven't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3564

 1         Q.   This was the first time?

 2         A.   This is the first time I've met them.

 3         Q.   And that includes the three attorneys here

 4   sitting at the counsel table, as well as FBI Agent

 5   Acee?

 6         A.   Yes.

 7         Q.   Did you bring anything else with you

 8   besides that memorandum you just discussed?

 9         A.   No.

10              MR. VILLA:  Your Honor, I'd ask that the

11   Court ask Mr. Mulheron to produce that memorandum.

12              THE COURT:  Any thoughts on that, Ms.

13   Armijo?

14              MS. ARMIJO:  Your Honor, he didn't bring

15   it.  I gave it to him.  He actually is filling in --

16   was coming in to fill in for a witness that we had

17   coming from Santa Fe, but was snowed in.  And so I

18   don't mind giving it to them.

19              THE COURT:  Mr. Villa, I think she's

20   handing you the memo.

21              MS. ARMIJO:  I provided it to him.  But I

22   believe we've called in the person that wrote the

23   memo to come testify, and he's on his way here.

24              MS. JACKS:  Is there a Bates number on

25   that?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3565

```
 1                MS. ARMIJO:  It is not.  It's not been
 2     disclosed.
 3     BY MR. VILLA:
 4          Q.   Mr. Mulheron, when you went to Mr. Perez'
 5     cell, you testified that he was in a different pod;
 6     correct?
 7          A.   Correct.
 8          Q.   And which pod was that again?
 9          A.   The pod, I don't know specifically.  I
10     think it was blue pod.  But the housing unit was 2 A,
11     housing unit 2 A.
12          Q.   So the homicide was housing unit 1 A where
13     Javier Molina was allegedly murder, right?
14          A.   Correct.
15          Q.   In blue pod housing unit 1 A?
16          A.   Yes.
17          Q.   And when you went to see Mr. Perez, it was
18     in housing unit 2 A; you're not sure which pod?
19          A.   Right.  I'm not sure.  I believe it was
20     blue pod also.
21          Q.   Which cell was it?
22          A.   I don't recall.  It was on the top tier.
23          Q.   He was on the top tier?
24          A.   Or the bottom, I don't remember.
25          Q.   So you don't remember which tier?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3566

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3567

```
 1        A.   No.
 2        Q.   Did you take a photograph of the walker as
 3   it was in Mr. Perez' cell?
 4        A.   I did not.
 5        Q.   And I think, if I understand correctly, you
 6   didn't actually take the walker; you had Officer
 7   Archuleta do that?
 8        A.   No, I had a housing unit officer take it.
 9        Q.   The housing unit officer in that pod?
10        A.   Yes.
11        Q.   He took it to your office?
12        A.   Correct.
13        Q.   Okay.  It's your testimony that this is the
14   walker -- I'm showing you Government's Exhibit 27 --
15   that was taken to your office?
16        A.   Yes.
17        Q.   Was that in your office?
18        A.   It appears to be.  Well, yeah, it's in my
19   office.
20        Q.   Your office have wood paneling on the
21   walls?
22        A.   Yes.
23        Q.   And I'll show you another picture, Exhibit
24   29.  Do you recognize that carpeting from your
25   office?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3567

```
 1          A.   I do.
 2          Q.   Now, there is stickers here on the top that
 3     indicate it's from Inmate Rudy Perez; it has a date,
 4     a time, who the photo was taken by.  Do you know
 5     where this particular photo with the stickers on it
 6     came from?
 7          A.   Ruben Archuleta.
 8          Q.   Do you know how they came to be in the
 9     Government's possession in this case?
10          A.   I don't.
11          Q.   When was the last time you saw these
12     photographs?
13          A.   This morning.
14          Q.   When was the first time you saw these
15     photographs?
16          A.   I would say -- I don't know the first time.
17          Q.   Okay.  So you did review these photographs
18     before your testimony?
19          A.   I did, yes.
20          Q.   So aside from the memo about the cameras,
21     and these photographs, did you review anything else
22     for your testimony?
23          A.   No.
24          Q.   How long did the walker stay in your
25     office?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I don't remember.
 2        Q.   Do you know where the walker was from the
 3   time of Mr. Molina's homicide until you had the
 4   housing officer take it from Mr. Perez?
 5        A.   No, I don't.
 6        Q.   Now, would you agree with me -- maybe you
 7   can't see it quite as well in 27 -- but in 29, it
 8   looks like the outer metal parts of the walker, for
 9   lack of a better word, have some kind of coloring,
10   red or black coloring?
11        A.   Yes.
12        Q.   Do you see that there?
13        A.   Are you talking about the pieces as a
14   whole, or --
15        Q.   Yeah, it's like it's painted or something,
16   decorative painting?
17        A.   I see black.
18        Q.   Okay.  So let me like direct your attention
19   to -- see where I put the arrow?
20        A.   Right.
21        Q.   So that post appears to me to have two
22   different colors on it, maybe a shade of red and
23   black?
24        A.   It's hard to say.  Possibly looks like a
25   flash from the camera.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3570

```
 1        Q.   Okay.

 2        A.   I think my copy is a little darker.

 3        Q.   Let me show you --

 4        A.   As far as it's coming up on the screen.

 5        Q.   Maybe it's the screen.

 6             MR. VILLA:  May I approach, Your Honor?

 7             THE COURT:  You may.

 8        Q.   See if that looks a little better.

 9        A.   Okay.

10        Q.   Does it look like it has some red coloring

11   on there?

12        A.   It looks like it possibly could.

13        Q.   Do you remember that's what it looked like?

14        A.   I remembered it as being black.

15        Q.   You talked about the alleged shanks that

16   were recovered.  You didn't actually see the shanks

17   yourself; you saw photographs of them?

18        A.   Correct.

19        Q.   Let me show you Defendants' RP-BB.  Do you

20   recognize that?

21        A.   Yes, I do.

22        Q.   Does that look like one of the shanks that

23   was recovered?

24        A.   It does.

25        Q.   I'm going to show you a closer up picture
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3570

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 45

```
 1    of that RP-DD.  Do you remember seeing a picture like

 2    that?

 3         A.   I believe I might have, yes.

 4         Q.   And I don't know, maybe the glare is not

 5    any good, but can you see any coloring near the tip

 6    of the shank, where I've put the arrow there?

 7         A.   It appears to be blue.

 8         Q.   Blue, okay.

 9              You did not try to -- well, we know you

10    didn't because you never got the shanks; correct?

11         A.   Correct.

12         Q.   Did you ever ask anybody to look at the

13    shanks and see if they matched or were similar to the

14    metal on Mr. Perez' walker?

15         A.   No, I did not.

16         Q.   And do you know if anybody actually tried

17    to do that?

18         A.   No, I do not know that.

19         Q.   Have you ever had potential evidence of a

20    homicide in your office before?

21         A.   I don't believe so.

22         Q.   Have you ever had evidence of any crime in

23    your office before?

24         A.   I doubt it.

25         Q.   I'm sorry?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I doubt it.
 2        Q.   Is there any procedure that you have for
 3   handling evidence that you have in your office?
 4   Like, what's supposed to happen to it?
 5        A.   Typically, it would be taken in possession
 6   by whoever is investigating it.
 7        Q.   That would be, in this case, the State
 8   Police?
 9        A.   The State Police or STIU.
10        Q.   All right.  But you don't know what
11   happened to the walker at your office?
12        A.   No, I don't.
13        Q.   One day it was there; one day it wasn't?
14        A.   It was there.  I know somebody picked it
15   up.  I believe it was Officer Ernie Holguin.  But I
16   couldn't tell you a hundred percent.
17        Q.   Do you know if Officer Holguin documented
18   in any way his dealings with this walker?
19        A.   No, I don't.
20        Q.   What about Officer Archuleta?
21        A.   I don't know if he did or not.
22        Q.   So you haven't seen any documentation
23   demonstrating a chain of custody for this walker?
24        A.   No.
25        Q.   When you went over to the wheelchair
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3572

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3573

```
 1    program, and you say you saw just a couple of
 2    walkers, did you take photographs of them?
 3         A.   No.
 4         Q.   Did you measure them in any way?
 5         A.   No.
 6         Q.   What about Mr. Perez' walker, did you
 7    measure it in any way?
 8         A.   I did not.
 9         Q.   Did you ask anybody else to?
10         A.   No, I didn't.
11         Q.   Same question with the ones in the
12    wheelchair program.  Did you measure those, or did
13    you ask anyone else to measure those?
14         A.   No, I did not.
15         Q.   Now, the reason you took the walker is you
16    thought perhaps it might have been related to the
17    homicide of Javier Molina, right?
18         A.   Yes.
19         Q.   Mr. Perez didn't tell you that?
20         A.   No.
21         Q.   He just told you they took it?
22         A.   Told me that they took it.
23         Q.   He didn't tell you when they took it?
24         A.   No, he didn't.
25         Q.   And you knew that there were other shanks
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3573

```
 1    that made their way into blue pod where Javier Molina
 2    was murdered, right?
 3         A.   No.
 4         Q.   So you didn't think that shanks were
 5    getting into that pod?
 6         A.   As far as how?
 7         Q.   Just generally.
 8         A.   I didn't know.  Do I think?  Yeah, I
 9    probably did.
10         Q.   All right.  And did you have a belief that
11    perhaps metal from the wheelchair program was being
12    brought into that pod to be made into shanks?
13         A.   No.
14         Q.   You didn't have any idea that that might
15    have been happening?
16         A.   I didn't have any evidence it was
17    happening.  When you're dealing with an inmate
18    population, there is always a belief that it's
19    happening.
20         Q.   Okay.  So it's something you're on the
21    lookout for?
22         A.   Yes.
23         Q.   It's a security concern?
24         A.   Yes.
25         Q.   So you have to be wary of it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Correct.
 2        Q.   You knew there were several inmates in the
 3   pod where Javier Molina was murdered that were
 4   working in the wheelchair program, right?
 5        A.   Yes.
 6        Q.   And you knew there was a possibility they
 7   may have taken metal from the wheelchair program into
 8   the pod, perhaps for Mr. Molina's assault, but also
 9   earlier in time?
10        A.   There is always that belief.  I don't know
11   if it was true or not.
12        Q.   When did the wheelchair program begin?
13        A.   I couldn't really tell you.  I can guess.
14        Q.   I don't want you to guess.  But were you
15   present at Southern when the wheelchair program
16   began?
17        A.   I was.
18        Q.   Can you tell me if it began prior to the
19   year 2014?
20        A.   It did.
21        Q.   It did?
22        A.   It did.
23        Q.   Okay.  And how long were individuals, if
24   you know, in the blue pod where Javier Molina was
25   murdered working in the wheelchair program?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50

```
 1          A.   I would believe a couple of months.
 2          Q.   And you knew that throughout the life of
 3     the program, if you will, walkers and wheelchairs
 4     were coming in and out of there; correct?
 5          A.   Correct.
 6          Q.   And they were rehabbing them, or perhaps
 7     using some for spare parts, and then they would rehab
 8     them and send them off to third world countries, as
 9     you testified?
10          A.   Correct.
11          Q.   Both walkers and wheelchairs?
12          A.   Correct.
13          Q.   So you knew it was possible that somebody
14     at some point in time took some metal from the
15     wheelchair program, and got it to the blue pod?
16          A.   It's possible they could attempt to.  I
17     can't say that they did.
18          Q.   No, I'm not asking if you knew they did.
19          A.   There is always a possibility.  It's a
20     prison.  You know, it is what it is.
21          Q.   At the time you were investigating the
22     Molina homicide and talking to Mr. Perez, you knew
23     there was a possibility?
24          A.   Correct.
25          Q.   And that there was a possibility that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3576

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 51

```
 1   shanks used on Mr. Molina may have come from Mr.
 2   Perez' walker?
 3        A.   Correct.
 4        Q.   And have come from a different walker?
 5        A.   Correct.
 6        Q.   Not necessarily the two that you saw when
 7   you went, but from an earlier point in time?
 8        A.   Correct.
 9        Q.   Now, let's go back to the video.  You said
10   that a video can hold images from approximately --
11   did you say 50 or 15 -- at the high end?
12        A.   At the high end, it was 50.
13        Q.   And then the shorter end was how long?
14        A.   Twenty-two days.
15        Q.   And you didn't know when Mr. Perez -- when
16   he told you they took it, you didn't know when that
17   happened?
18        A.   No, I did not.
19        Q.   But you didn't go to the video to try to
20   determine if you could see somebody perhaps going
21   into Mr. Perez' cell and taking something from his
22   walker?
23        A.   No, I did not.
24        Q.   But you didn't ask anybody else to do that?
25        A.   No, I didn't specifically ask him to do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3577

```
 1    that.
 2         Q.   But you knew your cameras were capable of
 3    going back in time, that maybe you could have seen
 4    that?
 5         A.   Correct.
 6         Q.   Are you aware that an after action review
 7    was done in connection to the Javier Molina homicide?
 8         A.   Yes.
 9         Q.   Were you involved in that?
10         A.   I don't believe I was.
11         Q.   So you just knew they were there doing it,
12    but you didn't get involved yourself?
13         A.   I don't believe I did.
14         Q.   When you say you don't believe, what do you
15    mean?
16         A.   I mean, I could have talked to them.  They
17    might have interviewed me.  I don't remember.
18         Q.   I see.  But you weren't actively conducting
19    an investigation yourself?
20         A.   No.  That would have been done by
21    individuals from outside of the institution.
22         Q.   Did you ever review a report concerning
23    that after action review?
24         A.   I don't believe I did.  That would have
25    been sent to the Warden.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3578

 1          Q.   Did you ever participate in a meeting
 2     concerning the findings or conclusions of that after
 3     action review?
 4          A.   Not that I remember.
 5          Q.   Or briefing of any kind?
 6          A.   That would have been done with the Warden.
 7          Q.   I mean, did the Warden ever come to you and
 8     say:  We had a briefing from this after action
 9     review, and these are the things we think we should
10     do differently?
11          A.   Not in that way.  She would have come and
12     say, We're going to institute this new thing, so
13     let's start it on so and so date, or we're going to
14     do this differently.
15          Q.   Did she do that?
16          A.   I don't remember if she did or not.
17          Q.   Did you ever get an email or memo about
18     changes that were being made?
19          A.   I don't recall if I did or not.
20          Q.   Who was responsible for determining who
21     could work in the wheelchair program?
22          A.   It would have been the housing unit
23     manager.
24          Q.   So for this particular case that's housing
25     unit 1 A?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3579

```
 1        A.    Correct.

 2        Q.    And the manager of that housing unit can

 3   decide which inmates in their housing unit are

 4   allowed to work there?

 5        A.    Yes.

 6        Q.    Is that decision reviewed by anybody or --

 7        A.    No, that's the job of the housing unit

 8   manager.

 9        Q.    Do you know Adam Vigil?

10        A.    Adam Vigil, I do.

11        Q.    From Santa Fe.  I believe he's the STIU

12   coordinator?

13        A.    Yes.

14        Q.    Were you aware that he had reviewed the

15   wheelchair program and found that the security there

16   was deficient, after the homicide?

17        A.    No, I wasn't.

18        Q.    Is that the first time you've heard that?

19        A.    It is.

20        Q.    Okay.  Now, are you aware that Officer

21   Holguin, other than interviewing Mr. Perez, had also

22   conducted other interviews of inmates concerning the

23   Javier Molina homicide?

24        A.    I was aware, yes.

25        Q.    You knew he was doing that while -- in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3580

```
 1   aftermath of the homicide?

 2        A.   Yes.

 3        Q.   Did he talk to you about what he learned in

 4   his interviews?

 5        A.   No.

 6        Q.   Did he provide you memos of those

 7   interviews?

 8        A.   No.  And it wouldn't --

 9        Q.   I'm sorry?

10        A.   It wouldn't go to me.

11        Q.   Why not?

12        A.   I'm the Deputy Warden.

13        Q.   Who would it go to?

14        A.   To the Warden.

15        Q.   Anyone else?

16        A.   To the STIU coordinator, somebody within

17   STIU chain of command.

18        Q.   What about the State Police who were

19   conducting the investigation?

20        A.   Maybe not.  I don't know.  That would be

21   better left answered to the Warden or STIU.

22        Q.   Or Officer Holguin?

23        A.   Correct.

24        Q.   When you went to the wheelchair program,

25   other than looking at the two walkers that you said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3581

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56

```
 1    were there, did you do any sort of inventory of what

 2    you had on hand there?

 3         A.   We went through the inventory.  We didn't

 4    just look at the walkers.  We looked at the

 5    wheelchairs, the tools, spare parts.

 6         Q.   When you said "we," who else was with you?

 7         A.   I don't recall.  It would have been Deputy

 8    Warden Edgman; there would have a few correctional

 9    staff.

10         Q.   So you looked at what was there on hand in

11    the wheelchair program?

12         A.   Correct.

13         Q.   Did you look at documentation that was

14    there?

15         A.   We looked at the tool inventory.

16         Q.   Tool inventory.  What does the tool

17    inventory consist of?

18         A.   Consists of an inventory of the tools.

19         Q.   Does it consist of an inventory of the

20    wheelchairs or walkers?

21         A.   No.

22         Q.   Was there an inventory of the wheelchairs

23    or walkers?

24         A.   I don't recall there being one.

25         Q.   So you think maybe there wasn't one?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3582

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 57 of 3583

1        A.    It's possible.

2        Q.    As you sit here today, you're not aware of

3    an inventory that says what walkers, what wheelchairs

4    came in or went out?

5        A.    No.

6        Q.    And then was there an inventory of any kind

7    of the spare parts that were being used to

8    rehabilitate the walkers or wheelchairs?

9        A.    No.   What they had was basically bins with

10   spare parts in it.   But I don't recall any

11   inventories.

12       Q.    Okay.   And, of course, without an

13   inventory, you wouldn't necessarily be able to know

14   what was supposed to be there and what was missing?

15       A.    Correct.

16       Q.    Did you know that the agent who was

17   investigating the homicide in this case had a belief

18   or understanding that perhaps the shanks used in the

19   Molina homicide came from a wheelchair?

20       A.    No, I did not.

21       Q.    Did you ever have an understanding that

22   they might have come from a wheelchair?

23       A.    I did not.

24       Q.    Did you ever tell anybody that it came from

25   a wheelchair?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No, I did not.

 2        Q.   Did you ever speak to Agent Palomares, the

 3   investigator from the State Police?

 4        A.   I believe I may have just greeted him the

 5   night -- that evening.  But I've dealt with him a few

 6   times on different issues, but nothing besides:  Hi,

 7   and how are you doing, and this is what we got.  And

 8   I think our conversation that night was very limited

 9   to just a greeting.

10        Q.   Did you talk to him after that?

11        A.   I don't believe I've talked to him beside,

12   I seen him this morning and talked to him.

13        Q.   You didn't tell him about the walker that

14   you took from Mr. Perez?

15        A.   I don't think I had any more contact with

16   him after that night.

17        Q.   Did you tell anybody else besides Officer

18   Archuleta about the walker you took from Mr. Perez?

19        A.   I would have told the Warden.

20        Q.   Told the Warden.  And the Warden at the

21   time was who?

22        A.   Melissa Ortiz.

23        Q.   Do you remember what Ms. Ortiz told you in

24   response to that?

25        A.   I don't remember specifically what she
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3584

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9585

1    said.

2         Q.   She didn't ask you to document it in any

3    way?

4         A.   No.

5         Q.   Are there procedures or protocols that you

6    follow when taking evidence that might be from a

7    crime occurring in the prison?

8         A.   Yes.

9         Q.   Can you tell me what those are?

10        A.   Typically, it's documented with a chain of

11   custody.

12        Q.   Say again?

13        A.   It's documented with a chain of custody,

14   typically.

15        Q.   But this particular walker, you're not

16   aware of any documentation of a chain of custody?

17        A.   No.

18        Q.   What about Archuleta's photography?  Are

19   you aware of a report documenting that he photoed

20   this walker?

21        A.   I'm not.

22             MR. VILLA:  May I have just a moment, Your

23   Honor?

24             THE COURT:  You may.

25             MR. VILLA:  May I approach, Your Honor?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                        e-mail: info@litsupport.com

DNM 3585

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 60

```
 1              THE COURT:  You may.
 2       Q.   I'm going to show you the memo that you
 3   reviewed with respect to the video cameras.
 4       A.   Yes.
 5       Q.   And it indicates there about the cameras in
 6   the blue pod where Mr. Molina was murdered; correct,
 7   is that right?
 8       A.   It does.
 9       Q.   And it has in parentheses "poor quality"?
10       A.   It does.
11       Q.   What does that mean?
12       A.   Maybe poor quality film.  One of the things
13   is the recordings are delayed.  So when you see
14   someone move, it kind of skips a little bit.  So some
15   of them are more distorted than others.  I couldn't
16   answer for sure what "poor quality" -- I didn't write
17   the document, so I wouldn't --
18       Q.   Do you know if all the cameras in the pod
19   were working on March 7, 2014?
20       A.   I don't remember specifically.  I believe
21   two, at least two were.
22       Q.   Now, were you aware that a site visit of
23   the wheelchair program, as well as the blue pod, was
24   conducted by the defense attorneys and others in this
25   case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3586

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 61

```
 1          A.   I am.

 2          Q.   And I believe that the first one occurred

 3   in December.  I may be a little off on my times.

 4   Does that sound about right?

 5          A.   I'll take your word.  I don't remember the

 6   specific dates or times.

 7          Q.   Were you familiar with the inventory at the

 8   time in the wheelchair program when we did our site

 9   visit?

10          A.   No.

11          Q.   Did you know that at the time, during the

12   site visit, there wasn't any walkers in there?

13          A.   I did not know that.

14          Q.   Now, the second site visit was conducted by

15   smaller members of the defense team.  I think that

16   was in the summertime in June.  Do you remember that?

17          A.   Not specifically.  But I know there was a

18   couple of visits.

19          Q.   Okay.  And were you familiar with the

20   inventory in the wheelchair program at that time?

21          A.   No.

22          Q.   Did you know that there were quite a few

23   walkers during that second visit?

24          A.   No.

25          Q.   Had you been in the wheelchair program at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3587

 1    all as part of your job duties?

 2          A.   I go randomly.

 3          Q.   You go randomly?

 4          A.   I do.

 5          Q.   Let me show you -- this is a photo on a

 6    laptop -- forgive me -- from the wheelchair program.

 7    Can you see that okay?

 8          A.   I do.

 9          Q.   And there are, looks to me, half a dozen or

10    so walkers in there.  Would you agree?

11          A.   Yes.

12          Q.   Have you been in the wheelchair program at

13    other times when there is quite a few walkers in

14    there?

15          A.   I don't remember specifically.  There could

16    have been.

17               MR. VILLA:  I'll pass the witness, Your

18    Honor.

19               THE COURT:  Thank you, Mr. Villa.

20               Let's go back to Mr. Castellano -- Ms.

21    Armijo, do you have redirect of Mr. Mulheron?

22               MS. ARMIJO:  No, Your Honor.  No questions.

23               MS. JACKS:  Your Honor, I'm going to ask a

24    few questions, but I'd like to confer with Mr. Villa.

25               MR. VILLA:  Sure.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492
                                                     e-mail: info@litsupport.com



DNM 3588

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3589

```
 1                THE COURT:  All right.  Let me find out for
 2     the record who is on the telephone.
 3                MR. CASTLE:  Jim Castle.
 4                THE COURT:  All right.  Mr. Castle, good
 5     morning.  Who else?
 6                MR. CASTLE:  Good morning, Your Honor.
 7                THE COURT:  Who is that?
 8                MR. CASTLE:  That was still Mr. Castle,
 9     just saying good morning.
10                THE COURT:  Oh, okay.  Just Mr. Castle is
11     on the phone.  All right.
12                MR. VILLA:  Your Honor, I may have a couple
13     more questions, if the Court would indulge me.
14                THE COURT:  All right.
15     BY MR. VILLA:
16         Q.   You testified that Mr. Perez, when you were
17     asking him about the missing part of his walker,
18     said, No disrespect, but if -- they told me if I said
19     anything to anybody, I'd be next.
20         A.   Yes.
21         Q.   And that occurred while you were in Mr.
22     Perez' cell in the other housing unit?
23         A.   Correct.
24         Q.   And you didn't write that down?
25         A.   I didn't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64

```
 1        Q.    You didn't document that?

 2        A.    I didn't.  I didn't have a need to.

 3        Q.    Well, you understood that the State Police

 4   were investigating the Javier Molina homicide;

 5   correct?

 6        A.    Correct.

 7        Q.    And you had a thought or a belief perhaps

 8   that one of the shanks may have came from Mr. Perez'

 9   walker?

10        A.    Correct.

11        Q.    And you also knew that the FBI was involved

12   in the investigation?

13        A.    At that time, no, I did not.

14        Q.    Well, the FBI was conducting interviews

15   within a couple of days of Javier Molina homicide of

16   inmates at your facility, were they not?

17        A.    Not that I know of.

18        Q.    All right.  But it's your testimony that

19   you did not have a need to document Mr. Perez'

20   statement?

21        A.    I didn't.  That's why I contacted STIU.

22        Q.    Did you tell STIU about the statement?

23        A.    I did.

24        Q.    Did STIU -- well, who did you tell?

25        A.    Ernie Holguin.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3590

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3591

```
1        Q.    Did Ernie Holguin document that anywhere?

2        A.    You'd have to ask Ernie Holguin.

3        Q.    And after you talked to Mr. Perez, you went

4   back to your office?

5        A.    I did.

6        Q.    And had the walker brought to your office?

7        A.    I did.

8        Q.    In your office you have a computer?

9        A.    I do.

10        Q.    And can you type on that computer?

11        A.    Yes.

12        Q.    You had paper there?

13        A.    Probably copier paper.

14        Q.    Okay.  That you could print out a document,

15   if you wanted to type a document?

16        A.    If I wanted to.

17        Q.    And a notepad, you can write things down?

18        A.    I don't have a notepad.

19        Q.    No notepad?

20        A.    No.

21        Q.    Pen and paper?

22        A.    I have a pen.

23        Q.    Are you allowed to have your cellphone in

24   the office?

25        A.    No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3591

```
 1        Q.   You have to keep it in the car?

 2        A.   At that time -- are you referencing --

 3   which date?

 4        Q.   The day after -- well, the day you talked

 5   to Mr. Perez and then went back to your office, were

 6   you allowed to have a cellphone?

 7        A.   No.

 8        Q.   Is that because you have to keep it outside

 9   in the car?

10        A.   Correct.

11        Q.   Okay.  So you have the computer, pen and

12   paper, but you didn't document that Mr. Perez told

13   you this?

14        A.   That's correct.

15             MR. VILLA:  Those are all the questions I

16   have.

17             THE COURT:  All right.  Thank you, Mr.

18   Villa.

19             Ms. Jacks, did you have anything?

20             MS. JACKS:  Just a few follow-ups.

21             THE COURT:  All right.  Ms. Jacks.

22                      EXAMINATION

23   BY MS. JACKS:

24        Q.   Mr. Mulheron, when is the first time that

25   you told anybody associated with law enforcement, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3592

```
 1    FBI, or the prosecution about that statement that you

 2    claim Mr. Perez made?

 3         A.   A couple days ago.

 4         Q.   So sometime in December of 2017?

 5         A.   Correct.

 6         Q.   And I think Mr. Perez (sic) asked you some

 7    questions.  You didn't have any notes or anything

 8    that you referred to to refresh your memory about

 9    that alleged statement from Mr. Perez?

10         A.   No.

11         Q.   You just, two or three days ago, remembered

12    it out of the blue, and told the Government?

13         A.   I didn't remember it out of the blue.  It

14    was the first time I was asked about it.

15         Q.   You're aware -- in your position, you were

16    aware that the FBI was investigating the homicide of

17    Javier Molina, right?

18         A.   At that time?

19         Q.   At any time?

20         A.   Well, I'm aware now.

21         Q.   When did you become aware of that?

22         A.   I don't know, several years ago.

23         Q.   So sometime shortly after the homicide?

24         A.   I'd say about two years ago or so.

25         Q.   Okay.  And did you also become aware that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3593

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3594

```
 1    the FBI was investigating that homicide as part of

 2    alleged activities in furtherance of the SNM Gang?

 3         A.   I did.

 4         Q.   And how many times do you think, since the

 5    homicide of Mr. Molina, have you met with somebody

 6    from the FBI investigating the SNM Gang?

 7         A.   Maybe once, if that.

 8         Q.   You have a phone, right?

 9         A.   I do.

10         Q.   And you use that to contact prosecutors?

11         A.   I don't believe I've talked to any

12    prosecutors.

13         Q.   You didn't talk to any prosecutors today?

14         A.   In person, I did.

15         Q.   Okay.  But let me ask you this:  How did

16    you know to come to court today?

17         A.   Oh, I was contacted by Mark Myers.

18         Q.   And who is Mr. Myers?

19         A.   The Chief of Staff for Corrections

20    Department.

21         Q.   Okay.  And he's in touch with Government

22    prosecutors and investigators?

23         A.   I would believe so.

24         Q.   Did you ever mention to Mr. Myers this

25    alleged statement that you claimed to have heard from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3594

```
 1   Mr. Perez?
 2        A.   I did.  And that's when it came up a few
 3   days ago.
 4        Q.   So the first time you mentioned it was a
 5   few days ago to Mr. Myers?
 6        A.   Yes.
 7             MS. JACKS:  Thank you.  I have nothing
 8   further.
 9             THE COURT:  Thank you, Ms. Jacks.
10             All right.  Ms. Armijo?
11                    REDIRECT EXAMINATION
12   BY MS. ARMIJO:
13        Q.   Now, in addition to meeting this morning,
14   is it possible that you met the prosecutors a few
15   months ago when we went out to Southern?  And you may
16   not remember.
17        A.   And I don't remember.  I get a lot of
18   visitors, a lot of people.
19        Q.   All right.  So talking about this case was
20   the first time that you met with the prosecutors to
21   discuss the case?
22        A.   Yes, it is.
23        Q.   And by telling -- by requesting a housing
24   officer to take the walker to your office, requesting
25   Ruben Archuleta to take a photograph of it, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3595

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 70

```
 1   requesting Holguin to interview him, was that what
 2   you did to basically further the investigation on the
 3   walker and Mr. Perez' involvement?
 4        A.   That is what I did.
 5        Q.   Okay.  In your duties as Deputy, and
 6   Warden, do you go and interview inmates and document
 7   it, and take an active part of the investigation, or
 8   is that left to people in STIU?
 9        A.   It's left to STIU.
10             MS. ARMIJO:  That's all I have.  Thank you.
11             THE COURT:  Thank you, Ms. Armijo.
12             All right.  Mr. Mulheron, you may step
13   down.  Is there any reason Mr. Mulheron cannot be
14   excused from the proceedings, Ms. Armijo?
15             MS. ARMIJO:  Your Honor, from this motion,
16   yes.  We may call him on other motions that will be
17   next week.
18             THE COURT:  All right.
19             MS. ARMIJO:  Or possibly, depending on
20   where we are later today.
21             THE COURT:  All right.  Is there any reason
22   he cannot be excused from this hearing, Mr. Villa?
23             MR. VILLA:  No, Your Honor.
24             THE COURT:  Any of the defendants?
25             All right.  You're excused from this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3596

 1    hearing.  Thank you, Mr. Mulheron.
 2            All right.  Ms. Armijo, does the Government
 3    have its next witness or evidence?
 4            MS. ARMIJO:  We do.  It's the person that
 5    wrote the memo.
 6            And Your Honor, for clarification, we were
 7    having another person to come testify, but -- as I
 8    indicated as to this, but it will be William
 9    Edgman -- but they were stuck up in Santa Fe.
10            THE COURT:  I don't know your name yet, but
11    you look like the witness.  So if you'll come up and
12    stand next to the witness box on my right, your left,
13    before you're seated, Ms. Standridge, my courtroom
14    deputy will swear you in.
15                    WILLIAM EDGMAN,
16        after having been first duly sworn under oath,
17        was questioned and testified as follows:
18                    DIRECT EXAMINATION
19            THE CLERK:  Please be seated.  State your
20    name, spelling your name for the record.
21            THE WITNESS:  William Edgman.  My last name
22    is E-D-G-M-A-N.
23            THE COURT:  I guess I got confused.  I
24    thought Mr. Edgman was stuck up in Santa Fe.
25            MS. ARMIJO:  Mr. Roarke was.



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                           1-800-669-9492
                                                   e-mail: info@litsupport.com
                                                              DNM 3597

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 72 3598

```
 1                THE COURT:  Mr. Who?

 2                MS. ARMIJO:  Roarke.

 3                THE COURT:  All right.  Mr. Edgman.  Mr.

 4     Castellano.

 5                MR. CASTELLANO:  Thank you, Your Honor.

 6                I just want to check.  Is the next number,

 7     number 30?

 8                THE COURT:  I think so.

 9     BY MR. CASTELLANO:

10         Q.   Good morning.  Please tell us what you do

11     for a living?

12         A.   I am the Deputy Warden at Southern New

13     Mexico Corrections Facility.

14         Q.   How long have you worked for the

15     Corrections Department?

16         A.   I just started my 20th year this year.

17         Q.   And back in 2014, what was your position?

18         A.   I was the Major, Chief of Security.

19         Q.   I'm going to show you what's been marked

20     for identification as Government's Exhibit 30.  While

21     I'm doing that, tell us what your responsibilities

22     were as the Major back in 2014.

23         A.   I had several duties as the Major.  The

24     primary duties -- I'm the overall highest ranking

25     security officer out there at the facility.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3598

```
 1    Supervise day-to-day operations from what the shift
 2    supervisor is doing, what the officers are doing;
 3    doing security audits, making sure that the officers
 4    are following proper policies, following the post
 5    orders, again, while doing the security audits,
 6    ensuring the infrastructure of the facility is well
 7    maintained.
 8         Q.   Did you know that you were testifying this
 9    morning?
10         A.   I did not.
11         Q.   When did you find out you were testifying?
12         A.   About 30 minutes ago.
13              MR. CASTELLANO:  May I approach the
14    witness, Your Honor?
15              THE COURT:  You may.
16         Q.   Handing you what's been marked for
17    identification as Government's Exhibit 30.  Do you
18    recognize that document?
19         A.   I do.
20         Q.   Tell us what it is.
21         A.   It's a review of the camera system, and
22    it's listing all the discrepancies in the cameras for
23    March 10, 2014.
24         Q.   Do you know who prepared that document?
25         A.   I did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3599

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 74

1        Q.   When did you prepare the document?

2        A.   March 10, 2014.

3        Q.   And does it accurately reflect your

4    findings from a review of the camera system at that

5    time?

6        A.   Yes, it does.

7             MR. CASTELLANO:  Your Honor, I move the

8    admission of Government's Exhibit 30.

9             THE COURT:  Any objection, Mr. Villa?  Ms.

10   Fox-Young?

11            MS. FOX-YOUNG:  No objection, Your Honor.

12            THE COURT:  Any other defendants?  Not

13   hearing any, Government's Exhibit 30 will be admitted

14   into evidence.

15       Q.   Now, you noted the date was March 10 of

16   2014.  Do you recall why you prepared this document

17   on that date?

18       A.   For that date I was told to get a list of

19   all the cameras that were not operational.

20       Q.   Why was that?

21       A.   Due to having a homicide at the facility.

22   We had been working towards upgrading our camera

23   system, and this was going to help us upgrade our

24   camera system, identifying the numerous cameras that

25   were out.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3600

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 75

```
 1        Q.   So going down the list here, there is an
 2   indication that says, "the following cameras are
 3   nonoperational"?
 4        A.   Correct.
 5        Q.   Can you explain that to us?
 6        A.   The following cameras are nonoperational,
 7   meaning I didn't have any video, or there was an
 8   issue with some of those cameras.
 9        Q.   In terms of where the murder occurred on
10   March 7, 2014, did you take any notes about any of
11   the cameras in that pod?
12        A.   Camera 106, which is 1 A B pod right
13   camera, says "poor quality."
14        Q.   I indicated there on the exhibit an arrow
15   near 106.  And can you, for the Court, explain what
16   you mean -- first of all, when it says 1 A B right,
17   what does that tell us?
18        A.   It is the right camera in the pod.  There
19   are three cameras in the pod:  Left, center, and
20   right.
21        Q.   And what did you learn or discover when you
22   reviewed the cameras in that pod?
23        A.   That that right camera had poor quality.
24   By noting that it had poor quality, it was either out
25   of focus or the reticle in the camera was out,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3601

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 76

1    showing a bright spot.  So the video itself, you

2    couldn't identify anything or be able to make

3    anything out on the video, but the camera itself was

4    not out.

5         Q.   So by process of elimination, if the -- if

6    you only had a notation as to the right camera, did

7    that tell you that the left and center cameras

8    appeared to be functioning as they should have?

9         A.   Yes.

10        Q.   And were you familiar with the system at

11   that time, in terms of video retention and how long,

12   for example, the system would retain a video?

13        A.   The retention of video at that time -- I'm

14   not familiar with each DVR.  The only thing I can say

15   is when it was initially set up what the retention

16   policy was supposed to be.

17        Q.   Well, as time passed, tell us about trends

18   you noticed in the video system, in terms of how much

19   it would retain or not retain, things of that nature.

20        A.   Depending on some DVRs.  Some DVRs we were

21   lucky to get seven days of retention.  Other DVRs, we

22   might get 30 days of retention.

23        Q.   And how often -- well, did you do this in

24   response to the homicide that occurred at the

25   facility?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3602

```
 1          A.   Yes.

 2          Q.   And did you do this at other times?

 3          A.   Yes.

 4          Q.   What was the purpose of doing it on the

 5     other occasions?

 6          A.   As one of my jobs as the Chief of Security

 7     at the time is, again, to look for failures in our

 8     infrastructure, our security processes, which is a

 9     camera is part of infrastructure and security.  So

10     I'd note discrepancies in the camera system in order

11     to get the contractor out to conduct the proper

12     repairs.

13               THE COURT:  Mr. Castellano, would this be a

14     good time for us to take our morning break?

15               MR. CASTELLANO:  Yes, Your Honor.

16               THE COURT:  All right.  We'll be in recess

17     for about 15 minutes.

18               (The Court stood in recess.)

19               THE COURT:  Let's try to go back on the

20     record.  All right.  Let's settle down.  I think --

21     look around, I think every defendant has counsel.

22     Make sure your co-defendants are all represented

23     here.

24               All right.  Mr. Edgman, I'll remind you

25     that you're still under oath.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3603

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3604

```
 1              Mr. Castellano, if you wish to continue
 2     your direct examination of Mr. Edgman, you may do so.
 3              MR. CASTELLANO:  Yes, sir.  Thank you.
 4              THE COURT:  Mr. Castellano.
 5     BY MR. CASTELLANO:
 6         Q.   Okay.  I'm showing you what's been admitted
 7     as Rudy Perez Exhibit F.  And when we were talking
 8     about your testimony this morning I had you draw a
 9     diagram.  But if we can make this work, I'll use this
10     instead.  If you can, first, can you tell us -- and
11     when you touch your screen, you'll be able to
12     basically draw on the screen.  So if you can just
13     touch the places where you recall where the pods are,
14     where the cameras are in the pod?
15         A.   Okay.  So there are three cameras in each
16     pod.  So you have -- is that coming out?  So where
17     that arrow is would be your right camera.  Close to
18     this corner here would be the center camera.  And
19     then right above the pod door would be the left
20     camera.
21         Q.   Okay.  So you have three cameras in the
22     pod.  And if you can, can you tell us how the cameras
23     work in terms of capturing what is inside the pod?
24     Does it capture sectors or certain segments of the
25     pod?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3604

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79

1      A.   Correct.  Each camera will capture a

2  certain sector of the pod.

3      Q.   To the best of your ability, can you draw

4  lines showing what might be captured by each camera

5  angle, or which sector?

6      A.   So the left camera would capture

7  approximately the left of the pod.  The right camera

8  would capture the right portion of the pod.  And the

9  center camera would overlap those sectors.

10     Q.   Okay.  So for the record, you've drawn some

11 lines on the exhibit from the area labeled "Main

12 Entrance," and you've drawn four lines showing

13 various segments of the pod.  Is that accurate?

14     A.   Correct.

15     Q.   And do you recall in which pod the Molina

16 murder or assault started?

17     A.   In which pod?

18     Q.   I'm sorry, in approximately which portion

19 of this diagram, or which cell?

20     A.   Cell 105, which is on the top tier.  But it

21 corresponds with 113, which is on the bottom.

22     Q.   So, in other words, is this diagram a

23 diagram of the lower section of the pod?

24     A.   Correct.

25     Q.   And then there is an upper section.  And

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3605

```
 1   you've got corresponding numbers for top and bottom?

 2        A.   Correct.

 3        Q.   And do you recall where Rudy Perez' room

 4   was?

 5        A.   I believe he was 115.

 6        Q.   So I've drawn a circle around 115 there.

 7   So when you mentioned that the right camera was

 8   having difficulty, or was of poor quality, was that

 9   the area where Rudy Perez' cell was?

10        A.   Yes.

11             MR. CASTELLANO:  I pass the witness, Your

12   Honor.

13             THE COURT:  Thank you, Mr. Castellano.

14             Let me go ahead and have Ms. Fox-Young

15   cross-examine Mr. Edgman.

16             Ms. Fox-Young.

17             MS. FOX-YOUNG:  Thank you, Your Honor.

18                          EXAMINATION

19   BY MS. FOX-YOUNG:

20        Q.   Good morning, sir.

21        A.   Good morning.

22        Q.   I didn't catch your current rank.  Did you

23   say you're currently the Deputy Warden at Southern?

24        A.   Correct.

25        Q.   And so your title is Deputy Warden?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3606

```
 1        A.   Yes, ma'am.
 2        Q.   All right.  Deputy Warden, you said that in
 3   2014, you were the Major and the Chief of Security
 4   for the facility; is that right?
 5        A.   Correct.
 6        Q.   And one of your duties in that job capacity
 7   was to make sure that the proper policies were
 8   followed at Southern; is that right?
 9        A.   Correct.
10        Q.   And that included policies on evidence
11   collection?
12        A.   Correct.
13        Q.   I think you said that.  Correct me if I am
14   mischaracterizing your testimony.
15        A.   No, that's what I said.
16        Q.   Okay.  And did that include chain of
17   custody for evidence collection?
18        A.   That's part of our policies, yes, ma'am.
19        Q.   Can you tell me what the policy on chain of
20   custody for evidence collection was in March 2014?
21        A.   As far as?
22        Q.   What's the proper protocol to follow in
23   March 2014, if you're collecting evidence at the
24   facility?
25        A.   With the chain of custody, if you collect
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3607

1    things on the chain of custody, date and time you

2    collected it, and the disposition of that evidence

3    after you collected it, whether it went to the

4    evidence locker, you turned it over to somebody else.

5         Q.    And the facility has chain of custody forms

6    to use for that purpose?

7         A.    Yes, ma'am.

8         Q.    In conformity with the New Mexico

9    Corrections Department policy on evidence collection?

10        A.    Yes, ma'am.

11        Q.    Do you have -- in March 2014, were there

12   labels that were to be affixed to evidence collected

13   to make that process easier?

14        A.    No, ma'am.

15        Q.    When evidence was collected at that time --

16   and if it's the same today, you can tell me that --

17   how was somebody supposed to document that they

18   actually collected evidence on a certain date and

19   time, and the disposition, where was that recorded?

20        A.    On the evidence envelope.

21        Q.    The evidence envelope?

22        A.    Yes, ma'am.

23        Q.    So all evidence was to be in an envelope as

24   well?

25        A.    If it would fit in an evidence envelope, it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3608

1    would go into a evidence envelope.  I can't say all

2    evidence would go into an evidence envelope.

3         Q.   Some evidence is too big to fit in an

4    envelope.  And when evidence is too big to fit in an

5    envelope, what is the proper protocol for collecting

6    it and maintaining chain of custody?

7         A.   You would affix that evidence envelope to

8    the item, because the evidence envelope itself has

9    the chain of custody with a description of the

10   evidence.

11        Q.   So the envelope itself, with the

12   information, date and time collection, and

13   disposition would be attached to the piece of

14   evidence?

15        A.   Right.

16        Q.   And that was under you, as Chief of

17   Security in March of 2014, that was proper protocol?

18        A.   Yes, ma'am.

19        Q.   Where was any evidence collected at the

20   facility to be held?

21        A.   In our evidence locker.

22        Q.   Where is that located?

23        A.   Master control.

24        Q.   Is that evidence -- how big is that

25   evidence locker?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3609

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3610

```
 1         A.   Maybe a 2 by 4 by 4.

 2         Q.   Two feet by four feet?

 3         A.   Two feet deep, four feet wide, four feet

 4    high.

 5         Q.   Is it still there?

 6         A.   Yes, ma'am.

 7         Q.   If an outside entity is investigating a

 8    case, some other law enforcement agency, do they take

 9    custody of that evidence, or does it remain at the

10    facility?

11         A.   They take custody of it.

12         Q.   At what point do they take custody?

13         A.   When they collect it.

14         Q.   When who collects it?

15         A.   The outside agency.  If the outside agency

16    is conducting the investigation, then they're the

17    ones collecting the evidence.

18         Q.   Okay.  And in this case, the Javier Molina

19    homicide, who was conducting the investigation?

20         A.   From my understanding, it was State Police.

21         Q.   And so did State Police collect the

22    evidence in this case?

23         A.   One would assume they did.

24         Q.   Do you know for certain?

25         A.   No, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3610

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3611

```
 1        Q.   Okay.  Did you have anything to do with
 2   collection of evidence related to the Javier Molina
 3   homicide?
 4        A.   No, ma'am.
 5        Q.   Did you ever review any evidence related to
 6   the homicide?
 7        A.   No, ma'am.
 8        Q.   To this date, have you reviewed any
 9   evidence related to the homicide?
10        A.   No, ma'am.
11        Q.   Did the prosecution?
12             MR. JEWKES:  Your Honor, could we ask the
13   witness to speak up?
14        A.   How's that?
15        Q.   I can hear you fine, Deputy Warden.
16   Everybody?
17             So to this day, you haven't reviewed any
18   evidence related to the Molina homicide?
19        A.   No, ma'am.
20        Q.   And you didn't participate in collecting
21   any?
22        A.   No, ma'am.
23        Q.   When did the prosecution contact you
24   regarding your testimony today?
25        A.   At about 9:30 this morning.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

DNM 3611

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3612

```
 1        Q.   Okay.  Who contacted you?
 2        A.   As a matter of fact, it was my Warden that
 3   called me and said, "Come on down."
 4        Q.   Who is that?
 5        A.   James Mulheron.
 6        Q.   He said, Come on down to court to testify?
 7        A.   He said, "Come on down, they want to talk
 8   to you."
 9        Q.   Okay.  And you arrived here and you talked
10   to the Government?
11        A.   Yes, ma'am.
12        Q.   Who did you talk to?
13        A.   I forget his name, but the gentleman with
14   the goatee right behind you.
15        Q.   And did you bring any documents with you?
16        A.   I did not.
17        Q.   Did you have any documents related -- as
18   far as you know, related to the Molina case?
19        A.   I do not.
20        Q.   No emails?
21        A.   No, ma'am.
22        Q.   No memos?
23        A.   No, ma'am.
24        Q.   Did you ever receive any emails or memos
25   that you recall related to the Molina case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3612

```
 1        A.    No, ma'am.

 2        Q.    Have you ever talked to Rudy Perez?

 3        A.    When I do my rounds.

 4        Q.    Okay.  Are you aware that Rudy Perez, at

 5   one point when he was housed at Southern, had a

 6   walker in his possession?

 7        A.    Afterwards, I heard about that.  At the

 8   time, I really wasn't familiar with Mr. Perez nor did

 9   I even realize he had a walker with him in his cell.

10        Q.    Did you customarily -- you said when you

11   did your rounds, you would see Mr. Perez?

12        A.    Yes, ma'am.

13        Q.    Did you customarily do rounds in blue pod

14   in March of 2014?

15        A.    In March of 2014, yes.

16        Q.    Every day?

17        A.    No.

18        Q.    When did you do rounds?

19        A.    Usually, around once a week.

20        Q.    And that was in your capacity as Chief of

21   Security?

22        A.    Correct.

23        Q.    Did you do rounds in every pod once a week?

24        A.    Yes, ma'am.

25        Q.    Did you ever see Mr. Perez' walker?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3613

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3614

```
 1            A.    Not that I recall.
 2            Q.    Have you ever seen a walker that somebody
 3     claims belonged to Mr. Perez since?
 4            A.    No, ma'am.
 5            Q.    Now, you testified that you think after the
 6     fact -- I think you mean after the homicide -- you
 7     heard something about a walker?
 8            A.    Yes.
 9            Q.    What did you hear?
10            A.    That Mr. Perez had a walker, and it was
11     confiscated from him.
12            Q.    Who told you that?
13            A.    I don't recall.
14            Q.    Was this close in time to the murder?
15            A.    Yes, a short period after.  I don't know
16     exactly how many days or whatnot, but maybe a couple
17     of weeks afterwards.
18            Q.    You think it was a couple of weeks later?
19            A.    That's what I -- from my recollection, yes,
20     ma'am.
21            Q.    Okay.  But you don't have any notes or
22     reports or other documentation that tells you that?
23     That's just your memory?
24            A.    Correct.
25            Q.    Do you remember who told you that Rudy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3614

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3615

1    Perez had a walker?

2         A.   No, ma'am.

3         Q.   Do you remember if it was somebody in STIU?

4         A.   I don't remember.

5         Q.   Did you attend any briefings pertaining to

6    the Molina homicide?

7         A.   We had debriefings pertaining to the

8    homicide, yes, ma'am.

9         Q.   Who conducted those debriefings?

10        A.   At the time it would be the Warden.  We'd

11   have STIU in there.  The Warden, STIU.

12        Q.   Okay.  Can you educate me, just because I'm

13   not entirely familiar with your organizational

14   structure.  Was STIU underneath you?  Currently, are

15   they underneath you in the facility as Chief of

16   Security?  Were you supervising STIU officers?

17        A.   No, ma'am.

18        Q.   Who was supervising them?

19        A.   They had a deputy director, an STIU manager

20   up in Central Office.  They didn't fall under the

21   facilities.

22        Q.   Who was that person?

23        A.   I don't recall who it was at that time.

24        Q.   In Southern, was that person Captain

25   Blanco?

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9616

1        A.    He would be the STIU Coordinator for the

2    facility, correct.

3        Q.    But he answered to somebody at Central?

4        A.    At Central Office.

5        Q.    You mean PNM?

6        A.    Central office, Santa Fe; deputy directors,

7    director, yes, ma'am.

8        Q.    Okay.  But in March of 2014, you were not

9    part of STIU at all?

10       A.    No, ma'am.

11       Q.    Have you reviewed the video that the

12   prosecutor was asking you about that was produced by

13   the cameras in the blue pod?

14       A.    I've seen the video.

15       Q.    Okay.  Sir, I'm showing you what's been

16   marked as Rudy Perez Exhibit N.  And this is an

17   exhibit that has been admitted.  I'll represent to

18   you that it's a photograph that was taken in blue

19   pod.  Do you recognize it as that?

20       A.    Yes, ma'am.

21       Q.    And the Government asked you some questions

22   about the three cameras in blue pod, right?

23       A.    Yes.

24       Q.    Do you see them pictured here?

25       A.    I do.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                         1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                                       e-mail: info@litsupport.com

DNM 3616

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3617

 1          Q.   Is this camera that I'm pointing to one
 2    that was working on March 7, 2014?
 3          A.   Yes.
 4          Q.   And this camera?
 5          A.   Yes.
 6          Q.   And this camera?
 7          A.   That's the camera with poor picture
 8    quality.
 9          Q.   Okay.  So it was working, but you say it
10    had poor picture quality?
11          A.   Yes, ma'am.
12               MS. JACKS:  For the record, what camera is
13    that?
14               MS. FOX-YOUNG:  For the record, this is the
15    camera on the far left of Rudy Perez Exhibit N.  The
16    upper left.
17          Q.   Is that right, sir, this camera?
18          A.   Looking at it from this perspective, yes,
19    it's on the left.  If you're in the pod, that would
20    be the right camera.
21          Q.   That visualized the -- facing the cells and
22    the pod, the far right side?
23          A.   Yes, ma'am.
24          Q.   And I think you testified that you
25    conducted a review or an inspection of all the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3618

1    cameras at Southern in the days following the Molina

2    homicide?

3         A.   Yes, ma'am.

4         Q.   When did you start that review?

5         A.   March 10th.

6         Q.   And I apologize if you've already testified

7    to this, but who asked you to do the review?

8         A.   The Warden.

9         Q.   And so you went in and physically inspected

10   each camera?

11        A.   I did not physically inspect each camera.

12        Q.   How did you do your review?

13        A.   There is a monitor at master control, which

14   we have the capability of reviewing every camera in

15   the facility.  So what I did is I scrolled through

16   every camera in the facility, to see if we were

17   getting video feed from those cameras.

18        Q.   And is that -- were you sitting in the STIU

19   office when you did that?

20        A.   No.

21        Q.   Master control.

22        A.   Master control.

23        Q.   Okay.  And you produced this memo on March

24   10, 2014?

25        A.   Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3618

1      Q.   I see that for several cameras -- three of

2   the cameras you indicate poor quality; is that right?

3      A.   Yes, ma'am.

4      Q.   Now, where you didn't indicate poor

5   quality, were you representing to the warden that the

6   camera was totally nonfunctional?

7      A.   Correct, no video feed at all.

8      Q.   None at all.  And was there any way for you

9   to tell when you did that review how long that had

10   been the case?

11      A.   For that would I have to go back to my last

12   review of the cameras.

13      Q.   Do you know when your last review was?

14      A.   Probably six months prior to that.  And

15   that would be a guess.

16      Q.   So probably around the fall of 2013?

17      A.   Possibly.

18      Q.   So what this memo then says is that on

19   March 10, 2014, this is the state of these cameras?

20      A.   Correct.

21      Q.   But you don't know the state of the cameras

22   on March 9?

23      A.   No, ma'am.

24      Q.   Okay.  Or any other day?

25      A.   My guess would be similar to this, but no,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3619

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 3620

```
 1    not unless I did a review of the cameras each and

 2    every day and say:  This date, this is how the state

 3    of our cameras were this date, and this date.  But,

 4    no.

 5        Q.   Okay.  Now, could you have actually -- I

 6    can't remember if you explained how far back in time

 7    you could go.  If you wanted to pull a specific feed

 8    in doing that review, could you look back three

 9    weeks?

10        A.   It would depend on how the state of the

11    DVR.

12        Q.   Okay.  But you didn't do it?

13        A.   No, ma'am.

14        Q.   I understand that you did periodic reviews

15    to see if the cameras were working, maybe every six

16    months?

17        A.   Correct.

18        Q.   Or upon request of the Warden?

19        A.   Correct.

20        Q.   If a camera wasn't working, would master

21    control report that to you?

22        A.   Master control doesn't have a view of every

23    camera at any given time.

24        Q.   Does anybody?

25        A.   No.  You have to scroll through the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3620

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 3621

```
 1    cameras.
 2         Q.   So is there anybody at the facility, in
 3    March of 2014, who would report a faulty camera?
 4         A.   Again, if master control was scrolling
 5    through a camera and they found out a certain camera
 6    wasn't operational, they would report to the shift
 7    supervisor.  We did have electronics technician whose
 8    job at the time was to -- the upkeep of the system as
 9    far as he could upkeep it.  So there is a reporting
10    mechanism in place, yes, ma'am.
11         Q.   Okay.  And those reports would make their
12    way to you?
13         A.   Not all the time, no, ma'am.
14         Q.   Sometimes they would just go to the
15    technician?
16         A.   Yes, ma'am.
17         Q.   In the course of your review, on March 10,
18    2014, did you look to see if there were any reports
19    of faulty cameras?
20         A.   Not on that day, no.
21         Q.   Okay.  So you didn't look to see whether
22    anybody had made a report that a camera wasn't
23    working?  You just looked to see if they were working
24    on that day?
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3621

1     Q.   Okay.  The cameras that appear on

2  Government's Exhibit 30, numbered 50 and 51, labeled

3  Education Exterior PTZ, and Education Interior PTZ,

4  are those of the education building?

5     A.   Yes, ma'am.

6     Q.   Are there any other cameras that are

7  located at the education building, either inside or

8  outside?

9     A.   Today or back then?

10    Q.   Back then.  Thank you.

11    A.   I believe so.  I couldn't tell you a

12 hundred percent.

13    Q.   Do you know what cameras 50 and 51 face,

14 what they look at and record?

15    A.   I do not.  That's the title of those

16 cameras, Education Exterior, PTZ.  If I were to guess

17 on it, would be the PTZ on the outside of education,

18 facing our E gate, which is our gate going on to the

19 compound.

20    Q.   Is that where inmates enter the education

21 building?

22    A.   No, ma'am.

23    Q.   Is it where they exit?

24    A.   No, ma'am.

25    Q.   So would either of these cameras capture

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3622

1    anybody leaving that building?

2        A.   Probably the interior PTZ, depending on

3    where it was facing, because it's a PTZ.

4        Q.   Okay.  I know you said you conducted this

5    review to see if they were working.  Did you actually

6    look at the feeds from any of these cameras for

7    purposes of determining what might have happened in

8    the days prior to March 10, 2014?

9        A.   No, ma'am.

10       Q.   Did anybody ask you to?

11       A.   No, ma'am.

12       Q.   Do you know what building the wheelchair

13   program is located in?

14       A.   Yes, ma'am.

15       Q.   What building is that?

16       A.   Education building.

17       Q.   Do you know if camera 50 or 51 captures any

18   portion of the wheelchair program, the entry to it?

19       A.   50 would not.  But 50 is exterior PTZ; 51,

20   I would say would not, because if I were to look at

21   it, the interior PTZ would probably be at the

22   innermost part of education, as you first walk in.

23   The wheelchair program is at the back of education.

24       Q.   Is there a camera -- was there a camera, in

25   March of 2014, that did capture any portion of the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                     1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

DNM 3623

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 98 3624

```
 1    wheelchair program?

 2         A.    Not that I'm aware of.

 3         Q.    Were there cameras inside the wheelchair

 4    program?

 5         A.    At that point in time, not that I'm aware

 6    of.

 7         Q.    And you just don't think there was a camera

 8    angle that captured the door?

 9         A.    Correct.

10         Q.    Is there any way you could find out?

11         A.    Possibly.

12         Q.    I mean, is there a document that exists

13    that details what camera -- where the cameras were in

14    March of 2014, and what they captured?

15         A.    No, ma'am, not that I'm aware of.

16         Q.    Only your memory?

17         A.    Sure.

18         Q.    Okay.  Have you been -- you were asked by

19    the Warden to do this review of the surveillance

20    system.  Were you asked to do anything else by the

21    Warden around this time related to -- well, were you

22    asked to do anything else related to the Molina

23    homicide?

24         A.    No, ma'am.

25         Q.    Did the Warden ask you in person to do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3624

1   this?

2        A.   I'd say most likely, yes, ma'am.

3        Q.   Okay.  How did you find this document?

4        A.   The one that's in your hand, it was

5   presented to me by the attorney this morning.

6        Q.   Did they present you with any other

7   documents?

8        A.   No, ma'am.

9        Q.   You said that the camera had poor quality

10   on the right side?

11        A.   Yes, ma'am.

12        Q.   When is the last time that you reviewed the

13   camera -- the footage from the Molina homicide?

14        A.   2014.

15        Q.   Not since?

16        A.   No.

17        Q.   Okay.  So do you have any recollection of

18   whether the footage captured all of the cells in blue

19   pod, whether there was an actual image of the cells

20   on March 10th?

21        A.   The left camera would pick up some of the

22   cells in its sector.  The center camera would pick up

23   its sector.  And the right camera -- again, if I put

24   down poor quality, it's because you couldn't make out

25   anything in the pod, but still sending video feed.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Just so I understand, this assessment that

 2   you made on March 10th was based upon what you saw on

 3   March 10th?

 4        A.   Yes.

 5        Q.   But you also -- correct me if I'm wrong --

 6   reviewed the video that was captured on March 7?

 7        A.   Yes.

 8        Q.   And when did you review that?

 9        A.   Probably the next day after the homicide.

10        Q.   Did you -- were you by yourself?

11        A.   No.

12        Q.   Who did you review it with?

13        A.   Probably there with me, the Wardens, the

14   Deputy Wardens.  I couldn't tell you exactly who I

15   was with.  I don't remember everybody that was there.

16        Q.   Do you remember how the camera quality was

17   on that tape?  I don't know if it was a tape or you

18   were watching it live?

19        A.   No, we weren't watching it live.

20        Q.   Well, I don't know if you were playing a

21   tape, or if you were pulling it from the system.  Do

22   you know?

23        A.   It was probably a CD.

24        Q.   A CD.  Okay.  Do you remember one way or

25   another whether the quality was poor?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3626

 1        A.   On the video that we saw, the quality was

 2   pretty good.

 3        Q.   Okay.  And was that for all of the cameras?

 4        A.   No.

 5        Q.   Tell me which cameras did not have good

 6   quality?

 7        A.   I can't tell you because we didn't have a

 8   video of a bad quality camera.  The video had two

 9   cameras in it, the left and the center.  There are

10   three cameras in the pod.  The right camera, there

11   was no recording.

12        Q.   Okay.  But the two cameras that we talked

13   about; the one in the middle --

14        A.   That's the center.

15        Q.   -- of Defendant's Exhibit N.

16        A.   Yes.

17        Q.   And the one on the --

18        A.   Left; that is the left camera.

19        Q.   The left camera, you think were working and

20   did not have poor quality?

21        A.   Correct.

22        Q.   And were those cameras able to capture all

23   of the cells in the pod, from your recollection from

24   2014?

25        A.   All the cells in the pod?  No, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3627

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3628

```
 1    Those two cameras would not capture all the cells in
 2    the pod.
 3         Q.   Which cells were not captured on the feed
 4    that you watched in March of 2014?
 5         A.   I couldn't tell you exactly off of that
 6    video.  But off of my experience, I could tell you
 7    which cells would have been captured based off those
 8    two cameras locations.
 9         Q.   Do you remember any cells not being
10    captured when you watched that video?
11         A.   No.
12              MS. FOX-YOUNG:  Your Honor, just a moment.
13              THE COURT:  Certainly.
14         Q.   Sir, are you familiar with the New Mexico
15    Corrections Department policy regarding cameras that
16    existed in March of 2014?
17         A.   I'm not familiar with it, no.
18         Q.   Was it your job as Chief of Security to
19    make sure that all of the policies in effect at the
20    institution were abided by?
21         A.   Security policies, yes, ma'am.
22         Q.   Okay.  And you said evidence collection
23    policies?
24         A.   Yes.
25         Q.   Have you ever seen -- I'll show you -- this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3628

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3629

1  is Rudy Perez' Exhibit KK.  Do you remember -- are

2  you familiar with this policy number 130700 governing

3  cameras?

4       A.   I'm sure I've seen it before.

5       Q.   And I'll represent to you that this -- you

6  can see the date on it.  This was last revised in

7  February 2012.  It was in effect in the early part of

8  2014.  And you'll see there is some portions of this

9  policy that pertain to the stationary cameras at the

10  facility.  Are you familiar with that?

11       A.   I see it.

12       Q.   Okay.  And in March of 2014, it was

13  required, was it not, by the department that the

14  Chief of Security or designee will review all

15  stationery cameras and PTZ cameras weekly; is that

16  right?

17       A.   That's what it says there, yes, ma'am.

18       Q.   Okay.  And so, in March of 2014, were you

19  then required to review all those cameras weekly

20  according to this policy?

21       A.   According to the policy, yes, ma'am.

22       Q.   Okay.  And in practice, sounds like it

23  didn't always happen?

24       A.   No, ma'am.

25       Q.   And the policy also requires the Chief of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3629

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104

```
 1   Security to document those inspections, and forward
 2   them to the Warden's office for review, right?
 3        A.   Yes, ma'am.
 4        Q.   Do you know if you ever documented -- I
 5   know we have this document that was presented to you
 6   by the prosecution.  Are there other documents where
 7   you forwarded to the Warden, a document detailing
 8   your inspections?
 9        A.   Yes, ma'am.
10        Q.   Okay.  Did you do that every time you did
11   an inspection?
12        A.   Yes, ma'am.
13        Q.   Do those still exist?
14        A.   I do not know.
15        Q.   You send them to the Warden?
16        A.   We gave them to the Warden.
17        Q.   Would you email them, or hand them to the
18   Warden?
19        A.   I'd write it out in a hard copy and hand it
20   to him.
21        Q.   Are you familiar with the locations of all
22   the cameras at the facility in your current capacity?
23        A.   As the cameras are at right now?
24        Q.   Yes.
25        A.   Not every single one of them, because we
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492

                    **BEAN**
                    **&ASSOCIATES**, Inc.
                    PROFESSIONAL COURT
                    REPORTING SERVICE

                                            1-800-669-9492
                                     e-mail: info@litsupport.com

                                                   DNM 3630

1    just had a new camera system put in.

2        Q.   When was that?

3        A.   That got completed two months ago.

4        Q.   Okay.  Prior to the installation of the new

5    system, are you familiar with the locations of all

6    the cameras?

7        A.   Not of every single camera, no.

8        Q.   You described where the cameras were

9    located in the education building to me; is that

10   right?

11       A.   I didn't describe where all the cameras

12   were located in the education building.  I described

13   where 50 and 51 were located.

14       Q.   I'm showing you an image.  Do you recognize

15   this image?  Do you know where this is at Southern?

16       A.   Yes.

17       Q.   And you're familiar with which portion of

18   which building that's in?

19       A.   Yes.

20       Q.   Can you tell me which one?

21       A.   Okay.  So that door that you see open, if

22   you went through that door, you would be going up the

23   hallway to the entrance and exit of the actual

24   education building.  Coming down the hallway, that's

25   a portion that we call the horseshoe.  So if you came

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3631

1    down the hallway, you would make a right, and that

2    would get you to the doorway to get to the wheelchair

3    program.

4         Q.   Okay.  It's a little hard to see.  But on

5    your description this open door, is that to the

6    wheelchair program?

7         A.   No, ma'am.

8         Q.   Where is -- is that around to the left?  Do

9    you have to turn left at the end of this hallway to

10   get to the wheelchair program?

11        A.   You come down the hallway, and you have to

12   turn right.

13        Q.   And go through that door?

14        A.   No.

15        Q.   Can you show me on your screen where the

16   wheelchair program is related in relation to this --

17        A.   Okay.

18        Q.   -- hallway?

19        A.   You'd have to come through the door, come

20   down the hallway, and then you're going to veer right

21   at the end of this hallway.

22        Q.   Okay.  And do you see any cameras depicted

23   in this image?

24        A.   No.

25        Q.   Do you see these devices in the upper right

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3632

```
 1    corner of the screen?

 2         A.   I see that there.

 3         Q.   And also this one?

 4         A.   To my knowledge, that's a smoke detector.

 5         Q.   Okay.  Is this a camera that you circled,

 6    do you know?

 7         A.   Based off the image, I couldn't be one

 8    hundred percent sure, but I'd say it's a camera.

 9         Q.   Okay.  Do you know if there is a camera in

10    that location?

11         A.   Right now?

12         Q.   Yes.

13         A.   Right now, I'd say yes, there is a camera

14    in that location.

15         Q.   Do you know if there was a camera in that

16    location in March of 2014?

17         A.   Looking at this picture, that looks like

18    our old camera system.  So if there is a picture of

19    it there, when this picture was taken, I'd say yes,

20    there was.

21         Q.   Okay.  Would this camera, or does this

22    camera capture any portion of the wheelchair program,

23    if you know?

24         A.   It would not.

25         Q.   It does not.  And do you know if there was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3633

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3634

```
1    another camera that was in place in March of 2014

2    that did?

3          A.   I do not.

4          Q.   You don't know?

5          A.   No.

6          MS. FOX-YOUNG:  No further questions, Your

7    Honor.

8          THE COURT:  All right.  Thank you, Ms.

9    Fox-Young.

10          Any other defendants have questions for

11    Mr. Edgman?

12          MS. JACKS:  Your Honor, I do.

13          THE COURT:  Ms. Jacks.

14                      EXAMINATION

15    BY MS. JACKS:

16          Q.   Good morning, Mr. Edgman.

17          A.   Good morning.

18          Q.   I just want to clear up some questions that

19    I have about this memo.  So I'm holding what's

20    Government's Exhibit 30, which is a memo that you

21    prepared on March 10, 2014?

22          A.   Yes, ma'am.

23          Q.   And you reviewed that today before

24    testifying?

25          A.   Yes, ma'am.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3634

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9635

```
 1          Q.   But the memo was provided to you by the
 2     Government?
 3          A.   Yes, ma'am.
 4          Q.   You didn't bring it with you?
 5          A.   No, ma'am.
 6          Q.   Okay.  And I'm looking at it.  Let's see,
 7     if I'm just looking at the top -- I need to make this
 8     smaller.  So you prepared this memo to the Warden to
 9     document which cameras were working, partially
10     working, or nonfunctional; is that right?
11          A.   Yes, ma'am.
12          Q.   And the first sentence of this memo says,
13     "The following cameras are nonoperational," and then
14     that is a colon?
15          A.   Right.
16          Q.   Then there is a three-page list of cameras?
17          A.   Correct.
18          Q.   So are you meaning to say that every camera
19     listed in this memo is nonoperational?
20          A.   Yes, ma'am.
21          Q.   Okay.  So every camera on the three-page
22     list was either partially working or not working on
23     March 10, 2014?
24          A.   Yes, ma'am.
25          Q.   Okay.  And I want to direct you to cameras
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3635

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10636

```
 1    102, 106, and 107.  Okay, is that how you designate

 2    those cameras?

 3         A.   That's how they are identified on the

 4    camera system, yes, ma'am.

 5         Q.   Okay.  And I want to show you the

 6    photograph that's been marked as Rudy Perez Exhibit

 7    N, which is a diagram depicting the unit where the

 8    Molina homicide occurred.  Do you recognize this

 9    diagram?

10         A.   Yes, ma'am.

11         Q.   Okay.  So can you tell me, there is a

12    camera over the blue exit door on the far right-hand

13    side of the photograph.

14         A.   Correct.

15         Q.   Is that camera 102, 106, or 107?

16         A.   No.

17         Q.   What camera is it?

18         A.   I couldn't tell you the number of the

19    camera.  I could tell you it would be the left

20    camera.

21         Q.   Okay.  Well, can we go back to this list?

22         A.   Sure.

23         Q.   That's where I'm having trouble.

24              Which camera is the left -- I see another

25    way to designate the cameras, 1 A A, 1 A B, and 1 A
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3636

1   C?

2        A.   1 A A is housing unit 1 A, A pod.  1 A B is

3   B pod, 1 A C is C pod.  Three different pods.

4        Q.   All right.  So the cameras in the exhibit I

5   just showed you, RP-N, can you tell me what cameras

6   they are?

7        A.   Sure.  If you can put up the picture, I can

8   tell you.

9        Q.   Let's start with the one on the far right

10  over the blue exit door, the blue door with the exit

11  sign?

12       A.   That would be the right camera.  This is

13  the center camera for the pod.  And that would be the

14  left, or the right camera.  So left, center, and

15  right.

16       Q.   So the camera over the blue exit door is

17  the left camera?

18       A.   Yes, ma'am.

19       Q.   Center is obvious.  And the other camera is

20  the right?

21       A.   Correct.

22       Q.   Okay.  On this list of cameras in the memo

23  that you prepared on March 10th, can you tell me

24  where those cameras -- if they're located on the

25  list, where they were on the list?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

DNM 3637

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3638

 1        A.    So 1 A B right is poor quality.  So the

 2   right camera in B pod.

 3        Q.    So that is this one right here, number 106,

 4   1 A B, right?

 5        A.    Correct.

 6        Q.    And that's the camera that's poor quality?

 7        A.    Correct.

 8        Q.    So it was functioning on March 10, 2014,

 9   but it wasn't functioning well?

10        A.    Correct.

11        Q.    The images were fuzzy?

12        A.    I'm not one hundred percent certain if the

13   images were fuzzy, or if the reticle inside the

14   camera itself was showing a bright picture.

15        Q.    Okay.

16        A.    Poor quality; you couldn't make anything

17   out.  But as to whether it was a blurred picture, or

18   a bright picture due to the reticle in it; that, I

19   don't remember.

20        Q.    Okay.  But the camera wasn't broken; it was

21   running, it was functioning?

22        A.    It was sending video feed, yes, ma'am.

23        Q.    It just wasn't functioning at top quality?

24        A.    Correct.

25        Q.    And that would be the camera -- just so we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113639

```
 1    are all clear, I'm showing you Rudy Perez N.  That
 2    would be the camera that's --
 3         A.   The right camera.
 4         Q.   The camera that's not over the blue exit
 5    door?
 6         A.   Correct.
 7         Q.   Okay.  So that one was, on March 10th,
 8    filming, but filming poor quality, camera 106?
 9         A.   Correct.
10         Q.   Okay.  Let's talk about the camera over the
11    blue exit door, the camera that you call the left
12    camera.
13         A.   Correct.
14         Q.   Which camera is that on this Exhibit 30?
15         A.   It's not on that list, because it was
16    operational.
17         Q.   That camera was working?
18         A.   Yes, ma'am.
19         Q.   A hundred percent?
20         A.   Yes, ma'am.
21         Q.   So not on the list of nonoperational
22    cameras?
23         A.   Correct.
24         Q.   And what about the center camera; is that
25    on this list?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3639

 1         A.   No, ma'am, it's not.

 2         Q.   So that was working on March 10, 2014?

 3         A.   Yes, ma'am.

 4         Q.   Referring to the camera, the 106, the 1 A B

 5    right.  On March 10, 2014, if you'd been asked to

 6    pull video feed from that camera, the poor quality

 7    camera, could you have done that?

 8         A.   I'd imagine so, yes, because it's sending

 9    video feed to the DVR.

10         Q.   Okay.  Now, is the Southern New Mexico

11    Correctional Facility accredited by some sort of

12    agency?

13         A.   Back then, or at this point in time?

14         Q.   Back then, back in March of 2014.

15         A.   I'm not one hundred percent sure, but I'd

16    probably say in 2014 our ACA accreditation had

17    expired.

18         Q.   As part of your ACA accreditation, do you

19    have to make reports regarding surveillance cameras

20    in the institution?

21         A.   I'm not one hundred percent sure on their

22    standards for video surveillance.

23         Q.   If a camera is broken -- and I mean by

24    broken, not sending video feed -- do you have some

25    sort of duty, either under the ACA standards or New

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mexico Department of Corrections standards, to make a

2    report within a certain period of time?

3         A.   Not that I'm aware of.

4         Q.   This report that you prepared about the

5    following cameras being nonoperational is dated March

6    10, 2014.  Do you know the previous report, the one

7    before this, the date on that?

8         A.   I do not.

9         Q.   Would there be one?

10        A.   Yes, ma'am.

11        Q.   Do you know how often you prepared reports

12   about the list of nonoperational or partially

13   functioning cameras?

14        A.   About every six months.

15        Q.   So at the longest you would expect to have

16   a report maybe from October?

17        A.   The fall of '13.

18        Q.   October, November, 2013?

19        A.   Yes, ma'am.

20        Q.   And where are these reports kept?

21        A.   Where are they kept?

22        Q.   Right.

23        A.   I don't know what the Warden would do with

24   them after I gave it to her.

25        Q.   But you provide the report to the Warden?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3641

     1          A.   Correct.

     2          Q.   And then the Warden maintains custody of

     3     it, or does whatever she does with it?

     4          A.   Correct.

     5          Q.   And if a camera is not working, what is the

     6     reason for that?

     7          A.   I don't know.

     8          Q.   Could be anything?

     9          A.   Could be anything.

    10          Q.   Could be turned off?

    11          A.   We can't just turn off the camera.

    12          Q.   And when a camera is not functioning, is

    13     there a specific period of time that you have, or

    14     that you're supposed to get the camera fixed?

    15          A.   Not that I'm aware of.

    16          Q.   And I want to go back to this list in

    17     Government's Exhibit 30.  Are there -- first of all,

    18     are there cameras in unit 1 A C pod?

    19          A.   Yes.

    20          Q.   And were there cameras there in March of

    21     2014?

    22          A.   Yes.

    23          Q.   How many?

    24          A.   Three.

    25          Q.   And would they be the same configuration as



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3642

1    the cameras in B pod?

2         A.   Yes.

3         Q.   Right, center, and left?

4         A.   Correct.

5         Q.   And according to this list on March 10,

6    2014, were any of those three cameras not working

7    based on your observations?

8         A.   Yes, ma'am.

9         Q.   Which one?

10        A.   1 A C right.

11        Q.   And is that what you call -- is that on

12   this list, camera 107?

13        A.   Yes, ma'am.

14        Q.   And in your terminology, right, center, or

15   left, which camera is that?

16        A.   Right.

17        Q.   The right.  What about the other two

18   cameras in unit 1 A C, based on your March 10, 2014

19   review?

20        A.   They would be operational.

21        Q.   So on March 10, 2014 there were two

22   functioning cameras in unit 1A C?

23        A.   Yes, ma'am.

24             MS. JACKS:  Thank you.  I have nothing

25   further.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3643

```
 1              THE COURT:  Thank you, Ms. Jacks.

 2              Did you have something, Mr. Lowry?

 3                      EXAMINATION

 4   BY MR. LOWRY:

 5       Q.   Good morning.

 6       A.   Good morning.

 7       Q.   I just want to get a little clarification.

 8   Hope this helps everyone in the room.  This is Rudy

 9   Perez Exhibit N, and this is a photograph of the blue

10   pod; is that correct?

11       A.   Yes, sir.

12       Q.   Okay.  Above these cameras, this is the

13   guards' observation station, isn't it?

14       A.   Yes, that's the officers' station, yes.

15       Q.   And as a matter of perspective, that's why

16   the cameras are labeled right, center, and left,

17   because they're labeled from how the guards would

18   observe the pod?

19       A.   Correct.  Or how you're looking at the pod

20   coming in the door.

21       Q.   Correct.  And that's the same for each pod?

22       A.   Yes, sir.

23       Q.   And so the blue pod, as I recall, housing

24   unit 1 A was on one end, then there is blue, yellow,

25   and then green?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3644

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9645

```
 1          A.   Yellow, blue, and then green in 1 A.
 2   Yellow is A pod.
 3          Q.   And that's where I'm going with this.  If
 4   you could explain the layout of how they were laid
 5   out.
 6          A.   How the pods are laid out in the housing
 7   unit?
 8          Q.   Correct.
 9          A.   So yellow pod was A, blue pod was B, and
10   red pod was C.
11          Q.   So that would correspond with what we see
12   on Government's Exhibit 30, with 1 A A right would
13   be --
14          A.   The right camera in A pod.
15          Q.   And that is green pod?
16          A.   A pod is yellow.
17          Q.   So A pod is in the center?
18          A.   Yes.
19          Q.   A pod is yellow.  B pod is blue?
20          A.   Correct.
21          Q.   And then C pod would be the green pod?
22          A.   Correct.
23          Q.   So in each pod, as you looked at it from
24   the guards' station on top, the camera on the
25   right-hand side of the pod was out?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3645

 1          A.    Correct.

 2          Q.    Now, I just want to be clear on this, and

 3     this is Rudy Perez Exhibit F.  I believe you

 4     described this is a schematic of the lower level of

 5     the pod; correct?

 6          A.    Correct.

 7          Q.    Okay.  And right here, where it says "long

 8     walkway" over here, there would be a transit door

 9     between the blue pod and the yellow pod; correct?

10          A.    Correct.

11          Q.    And the camera that was out in this pod

12     would have captured that door; correct?

13          A.    Correct.

14          Q.    But the same guard station, the camera on

15     the other side of that door in yellow pod was

16     functioning on March 7, 2014, wasn't it?

17          A.    It should have been.

18          Q.    According to Government's Exhibit 30, it

19     was, wasn't it?

20          A.    That's dated March 10th.

21          Q.    Okay.  On March 10, 2014, was this camera

22     functioning?

23          A.    Yes.

24          Q.    Do you have any reason to believe it was

25     not functioning on March 7?

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3646

1          A.   No, I don't.

2          Q.   In fact, Ms. Jacks had discussed a little

3     earlier about your policy to report nonfunctioning

4     cameras, and I believe you said you weren't aware of

5     the policy?

6          A.   Correct.

7          Q.   Okay.  But if we look at the Department of

8     Corrections policy, which is marked Rudy Perez

9     Exhibit KK -- and this is New Mexico Corrections

10    Department policy 130700, at page 3 -- any

11    nonfunctioning camera should have been reported to

12    the Warden within 48 hours; isn't that right?

13         A.   That's what it says.

14         Q.   Well, that was the policy of the

15    Corrections Department, wasn't it?

16         A.   Yes.

17         Q.   And that policy wasn't followed by the

18    staff at Southern, was it?

19         A.   No.

20         Q.   So would there be any -- and the reason --

21    you're Chief of Security at that time?

22         A.   Yes.

23         Q.   As Chief of Security, is it important for

24    you to have the cameras fully functioning?

25         A.   Oh, of course.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com

DNM 3647

1        Q.    Why didn't you make sure this policy was

2    adhered to?

3        A.    As far as reporting it, or getting them

4    fixed?

5        Q.    Well, I would assume that the reason you

6    report it is so it gets fixed?

7        A.    So we could attempt to get them fixed,

8    correct.

9        Q.    Okay.  Do you just attempt to do the job,

10   or do you do the job?

11       A.    We have contractors that come out to do the

12   cameras, which goes through the business office, get

13   the contractors to come out to work on the cameras,

14   to look at the cameras.  Then they tell you what's

15   wrong with them.  They give you a quote to get them

16   fixed.  And you have a certain amount of time to get

17   them fixed.  You exceed that time, then you start the

18   whole process all over again.

19       Q.    Which would be why you'd want 48 hours

20   notice, so you could start that policy as quickly as

21   possible, isn't it?

22       A.    Yes.

23       Q.    So it doesn't really help once every six

24   months.  You could lose six months' worth of security

25   video?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3648

1       A.   I can tell you this about getting the

2   contractors in to come fix those cameras; those

3   contractors were called in numerous times.

4       Q.   But my question is nobody would know to

5   make the call unless the Warden was put on notice

6   within 48 hours of a camera going bad?

7       A.   The camera system was an ongoing issue.  So

8   it was an ongoing process to get the contractors to

9   come in to work on the cameras, ongoing.

10      Q.   But if you're the Warden, you want to know

11  if you have a nonfunctioning camera, don't you?

12      A.   Yes.

13      Q.   And that's why you have this policy in

14  place?

15      A.   Okay.

16      Q.   No, I'm asking you.

17      A.   Yes, yes.

18      Q.   So at any time during the course of the

19  Molina investigation, were you aware of anybody

20  asking to see the left-hand camera in yellow pod?

21      A.   No.

22      Q.   Was there any interest ever expressed by

23  anybody to view any of the cameras in yellow pod?

24      A.   Not that I'm aware of.

25           MR. LOWRY:  No further questions, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3649

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3650

```
 1    Honor.
 2              THE COURT:  Thank you, Mr. Lowry.
 3              Any other defendants have
 4    cross-examination?
 5              Ms. Bhalla?
 6              MS. BHALLA:  Thank you, Your Honor.
 7                        EXAMINATION
 8    BY MS. BHALLA:
 9         Q.   Good morning.
10         A.   Good morning.
11         Q.   I just have a couple of questions.  Was
12    part of your job as -- in security to review
13    classification files on the inmates?
14         A.   No, ma'am.
15         Q.   Okay.  Who would be responsible for that?
16         A.   Several people.  The unit manager and the
17    classification officer.
18         Q.   And who was unit manager at the time?
19         A.   That, I don't recall.  Unit managers have
20    changed.  They change quite often.
21         Q.   Okay.  So you said the unit manager.  And
22    who was the other person?
23         A.   Classification officer.
24         Q.   And do you know who the classification
25    officer was at the time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3650

```
 1              A.    I do not.

 2              Q.    Did you ever review the classification

 3       files as part of security?

 4              A.    No.

 5              Q.    Did you ever take time to study which

 6       inmates were put on which levels of restrictions for

 7       security reasons?  Were you aware of what, in

 8       general, the pods -- were they on lockdown, or if

 9       they were classified as Level 6, or classified as

10       Level 4?  Would you be aware of that information?

11              MR. CASTELLANO:  Objection, relevance, Your

12       Honor, this doesn't touch on the cameras.

13              THE COURT:  Well, I'll give her a little

14       leeway.  Let's not go too far.  I don't want to turn

15       this into discovery.

16              A.    That housing unit in general, it housed the

17       SNM.

18              Q.    And what does that mean?

19              A.    They're Level 4s.

20              Q.    And were they treated as Level 4s after the

21       homicide, do you know?

22              MR. CASTELLANO:  Objection, relevance.

23              THE COURT:  What's the relevance of this to

24       the motion to suppress?

25              MS. BHALLA:  Well, I'm trying to understand
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3651

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3652

```
 1    exactly what his role was in security at the time,

 2    and how they were reviewing the files.  It may be a

 3    little far afield, Your Honor, and it's my last

 4    question.

 5            THE COURT:  I think we're getting a little

 6    far afield.  Sustained.

 7            MS. BHALLA:  Thank you, Your Honor.

 8            THE COURT:  Thank you, Ms. Bhalla.

 9            Anyone else have any other

10    cross-examination of Mr. Edgman?

11            All right.  Mr. Castellano, if you wish to

12    redirect Mr. Edgman.

13            MR. CASTELLANO:  Thank you, Your Honor.

14            THE COURT:  Mr. Castellano.

15                    REDIRECT EXAMINATION

16    BY MR. CASTELLANO:

17        Q.   Deputy Warden, you were asked about the

18    sectors, once again, in terms of what was captured.

19    I'm going to show you Rudy Perez' Exhibit F.  You

20    said on cross-examination you had -- based on your

21    experience -- an idea of what would have been cut out

22    if the right camera was not working.  Can you just

23    draw a line on the diagram approximating where you

24    think would have been cut out.  We'll see the video

25    eventually, but from your experience, what would have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3652

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3653

```
 1    been cut out by the absence of a working camera on

 2    the right side?

 3              MS. JACKS:  Objection; that misstates his

 4    testimony.

 5              THE COURT:  Well, he can clear it up if he

 6    disagrees with it.  Overruled.

 7         Q.   Okay.  So for the record, you've drawn

 8    basically a cut-out of this exhibit with a line

 9    between cells 114 and 115; is that accurate?

10         A.   Yes, sir.

11         Q.   So if a right camera was not working, is it

12    fair to say you couldn't see that portion that's been

13    cut out?

14         A.   Correct.

15              MS. JACKS:  Same objection; misstates the

16    testimony.

17              THE COURT:  Overruled.

18         Q.   Let me ask that again.  So you cut out a

19    section of this diagram which cuts out exhibits

20    115 -- or cells 115 and 116; is that your

21    approximation of what would not be captured by the

22    cameras?

23         A.   Yes, sir.

24         Q.   And did you know cell 115 to be Rudy Perez'

25    cell?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I do now.

2      Q.   You were asked about this policy regarding

3  the cameras, and a number 5, on Rudy Perez KK.  This

4  is page 3 of the exhibit, talks about reporting

5  cameras to the Warden within 48 hours.  Now, do you

6  actually know whether or not that part of the policy

7  was followed?

8      A.   I'd say it wasn't.

9      Q.   Okay.  Now, let me ask you this.  Were you

10  responsible for reporting every outage of the

11  cameras, or were there others who were also

12  responsible?

13      A.   There is others that are responsible.

14      Q.   So, as far as you know, you may not have

15  done this, but you can't speak for others?

16      A.   Correct.

17      Q.   Now, when the security system or the camera

18  system was first put in place, did that come with a

19  means of maintaining those cameras?  Was there

20  anything tied to that contract which meant people

21  would come out routinely and monitor and fix those

22  cameras?

23      A.   I'm not aware of that.

24      Q.   In other words, each time you became aware

25  of a camera not working, did you or others as far as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3654

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29655

 1   you know put in a work order to get cameras repaired?

 2       A.   Yes.

 3       Q.   What would be some of the problems when you

 4   tried to get cameras repaired?

 5       A.   So I believe the contractor at the time was

 6   HEI.  So they would contact the contractor.  The

 7   contractor would come out, give us an estimated cost

 8   of what, you know, it would cost to either replace

 9   DVRs, replace cameras; tell us what was wrong.  And

10   then we would have 30 days to get the purchase order

11   together to have them come out and abide by that

12   quote.  After 30 days, if there was no purchase order

13   in place, then the contractor would have to come back

14   out, give another analysis of the system and a new

15   quote.

16       Q.   To the best of your knowledge and

17   recollection, tell us about the fastest repair that

18   you witnessed and the slowest repair that you

19   witnessed.

20       A.   None.

21       Q.   Well, in other words, how fast have you

22   seen a camera get repaired?

23       A.   I never saw a camera get repaired by HEI.

24       Q.   Well, in terms of knowing that a camera was

25   repaired.  Let's say you had a report that a camera

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3655

 1    wasn't working, there is a work order, and then the

 2    camera appears to be working.  So based on that part

 3    of your experience, what can you tell us?

 4         A.   I never saw it happen.

 5         Q.   Now, how regularly were you aware of work

 6    orders being put in to repair the cameras?

 7         A.   I couldn't give an exact amount or when

 8    they're put in.  I know what I did on my part as far

 9    as getting with the business office to get the

10    contractors to come in to look at things.

11         Q.   Tell us about your part.

12         A.   In my part, after I submit the

13    documentation with the Warden, I'd get with the

14    business office, let them know that we have issues

15    with our camera system.  And in turn, they would go

16    contact the contractor who was in charge of the

17    camera system.

18         Q.   Can you tell the Court whether you do this

19    on a regular basis?

20         A.   Constantly.

21              MR. CASTELLANO:  I pass the witness, Your

22    Honor.

23              THE COURT:  All right.  Mr. Edgman, you may

24    step down.  Is there any reason Mr. Edgman cannot be

25    excused from the proceedings?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3656

```
 1              MR. CASTELLANO:  No, Your Honor.

 2              MS. FOX-YOUNG:  No, Your Honor.

 3              THE COURT:  All right.  You're excused from

 4    the proceedings.  Thank you for your testimony.

 5              All right.  Ms. Armijo, Mr. Castellano,

 6    does the Government have further witnesses or

 7    evidence it wishes to present?

 8              MS. ARMIJO:  Not as to this motion, Your

 9    Honor.

10              THE COURT:  All right.  How about Mr.

11    Perez?  Does he have further witnesses or evidence he

12    wishes to present in rebuttal?

13              MR. VILLA:  We do not, Your Honor.  And

14    that includes Mr. Wright, so he can be released from

15    the writ.

16              THE COURT:  So we don't need Mr. Wright.

17    All right.  So are you done with, then, the evidence

18    portion?

19              MR. VILLA:  We are.

20              THE COURT:  Do you want to argue in support

21    of your motion?

22              MR. VILLA:  Ms. Fox-Young would, Your

23    Honor.

24              THE COURT:  All right.  Ms. Fox-Young.

25              MS. FOX-YOUNG:  May it please the Court,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3657

 1   Your Honor.

 2          THE COURT:  Ms. Fox-Young.

 3          MS. FOX-YOUNG:  As the Court heard in

 4   opening argument, Mr. Perez argues that the Court

 5   should suppress all evidence pertaining to the walker

 6   and the video in this case.  I won't detail the

 7   litany of evidence, unless the Court would like to

 8   hear it.

 9          On the basis of both Trombetta, and if the

10   Court moves to Youngblood, Youngblood.  It's our

11   position that based upon the evidence that the Court

12   has heard, and that we have submitted and detailed in

13   the pleadings and the attachment to our reply, the

14   evidentiary value of the walker was -- it was clearly

15   apparent that it was exculpatory very near in time to

16   the Molina murder.

17          The Court has heard evidence from the case

18   agent, State Police, that he heard directly from Mr.

19   Perez that his walker had been taken, and also that

20   he had nothing to do with the murder.  And I'll just

21   reiterate for the Court.  I know the Court heard

22   testimony on this, but it was somewhat contradictory.

23   The transcript for Mr. Perez' interview on March 10th

24   with Agent Palomares has been admitted.  And Mr.

25   Perez actually told the case agent, "They took my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3658

 1    walker today saying a part was missing off my walker.

 2    And I was, like, you know what I mean, that was news

 3    to me, you know what I mean?"  He says again, "They

 4    took my walker from me."  He never says to Agent

 5    Palomares that he was involved in the removal of a

 6    piece.  He says again, in response to Agent Alvarado

 7    and Agent Palomares, "You know what I mean, they came

 8    and they said a piece was missing off my walker,"

 9    meaning STIU had.

10          The Court heard a litany of evidence from

11    various STIU officers and other Corrections

12    Department employees and personnel about the fact

13    that the investigators on this case never were able

14    to rule out a separate source for shanks.  They don't

15    know, to this day, where they came from.

16          And the Court heard a lot of testimony

17    about the wheelchair program.  Agent Palomares

18    himself, and the Government in their response say,

19    you know, we think this metal actually came from the

20    wheelchair program, from a wheelchair.  The Court

21    heard this morning the Major testify that it

22    certainly is -- this piece certainly could have come

23    from other walkers in the wheelchair program.  That

24    was Mr. Mulheron.

25          The Court heard significant testimony

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3659

Appellate Case: 20-2058   Document: 010110415875   Date Filed: 09/29/2020   Page: 3660

1    impeaching Agent Palomares from Mr. Holguin that he

2    knew from multiple sources about metal coming out of

3    the wheelchair program.  He testified that not only

4    did he submit this to the head of STIU at Southern,

5    Coordinator Blanco, but he gave it all to Agent

6    Palomares.  He gave every memo to him, including a

7    memo that we received yesterday, which the Government

8    represents it had not seen until yesterday, that

9    states that Mr. Perez -- and this is our Exhibit

10   PP -- that Mr. Perez actually advised Ernie Holguin

11   that he had found that a metal part was missing from

12   the walker weeks prior, three to four weeks prior.

13          He describes -- and Mr. Holguin asks if he

14   had a purple walker; totally different from the

15   walker photographed and purported to be Mr. Perez'.

16          And this is clearly Brady, first of all,

17   Your Honor, and should have been produced long ago,

18   highly relevant to the Court's inquiry here as to the

19   exculpatory nature of this walker.  I mean, the

20   Corrections Department knew it.  They -- we don't

21   know today, because we haven't heard from a witness

22   who will own up to having confiscated it and seized

23   it -- we heard that it was seized in the process of

24   shakedowns.  We've heard that somebody took it and

25   brought it to an office -- not an evidence room --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   and photographed it with these grainy photographs,

2   that don't show scale, size, color, material.  But

3   they seized it, and they photographed it because they

4   knew it was important.  And the reason they knew it

5   was important is because they cannot identify the

6   source of these shanks.  And to this day, they can't.

7           They knew there was lot of metal floating

8   around that pod.  They had informants telling them

9   exactly how the metal was getting out of the

10  wheelchair program, which is why in their after

11  action review the Warden and the folks in Santa Fe

12  said:  You've got to go look at this wheelchair

13  program; this may be coming from there.

14          They didn't document any inventory.

15  Sitting here today witnesses tell you:  We don't know

16  what was there and we don't know what was missing.

17          This is classic exculpatory evidence.  This

18  is textbook law school Trombetta evidence.  You

19  heard -- the Court heard from Mr. Ainsworth, who said

20  that Mr. Wright absolutely testified that walkers

21  like Mr. Perez' walker, which he had an independent

22  recollection of, were in the wheelchair program in

23  March of 2014.  He worked in that program.  He told

24  Ernie Holguin, and possibly others -- or it was

25  represented that he had actually taken metal out of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3661

1    the wheelchair program.  I don't know that Mr. Wright

2    told him that, but Mr. Gonzalez did.

3            And so the prosecution team knew the value

4    of this walker.  What we know after this hearing is

5    that it existed for some time.  It was not tested.

6    It was not swabbed.  It was not -- we don't know the

7    metal component.  And we don't actually know how long

8    it was around.  But we know that Agent Palomares was

9    apprised of all of this information, and that nobody

10   on the prosecution team was able to rule other

11   sources of metal out as a source of the weapon.  And

12   so I think clearly under Trombetta, the exculpatory

13   value was apparent.

14           Even if the Court moves to the Youngblood

15   analysis -- and as we argued in opening, Youngblood

16   didn't overrule Trombetta, but if the Court moves to

17   the Youngblood analysis, and finds that it's

18   necessary for suppression that Mr. Perez show bad

19   faith --

20           THE COURT:  Well, haven't I already -- as

21   at least me -- decided that you have to do that in

22   Harry?  I mean, haven't I already made that sort of

23   legal determination that that's required?

24           MS. FOX-YOUNG:  I don't know the facts of

25   Harry well enough to distinguish it for the Court.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3662

1  think the Court may have moved quickly to find that

2  there was no apparent exculpatory value of the walker

3  before hearing evidence.  And if the Court doesn't

4  want to hear any more argument on Trombetta, I'll

5  move to Youngblood.

6          THE COURT:  Well, I'm just asking.  I mean,

7  I'm not cutting you off in any way.  I may need to

8  re-look at it.  But at least once before I took a

9  hard look at this issue, and I thought I had

10  concluded that it's going to require a showing of bad

11  faith.

12         MS. FOX-YOUNG:  Certainly under Youngblood,

13  if the Court makes a finding that the exculpatory

14  value of the walker was not apparent, even after

15  hearing that the Corrections Department seized it;

16  that there was a lot of talk about whether or not the

17  piece came from it or from another source --

18         THE COURT:  It would seem to me that, if

19  anything was apparent -- and I'm not sure where I'm

20  going to go on the apparent part of -- if anything

21  was apparent, it was not that it was exculpatory, but

22  that it might have been inculpatory.  Because it

23  seems to me the people that were focusing on Mr.

24  Perez were looking at him from a possible player in

25  it.  Those people who were not focusing on him would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3663

1    not have been looking at inculpatory.  So it's hard

2    to match up your people in a way that would get you

3    to the point where the people that were focusing on

4    Mr. Perez were looking at that as inculpatory.  It

5    seems to me it's the opposite.

6              Your thoughts on that?  Maybe I'm missing a

7    piece of evidence that would get you to where you

8    need to go.  But it seems to me, anybody that was

9    focusing on Mr. Perez were looking at him in an

10   inculpatory way.  And everybody that wasn't focusing

11   on him wouldn't have been focusing on the walker as

12   an exculpatory piece of evidence.

13             Does that make sense?

14             MS. FOX-YOUNG:  I think the Court is right

15   that that was the focus of the witnesses.  However,

16   it's an objective standard under Trombetta and under

17   Youngblood.

18             And so, back in 2014, it's apparent from

19   all the testimony, that nobody seemed to care about

20   chasing down the source of those shanks.  Yet, in

21   their minds, Your Honor, they did nothing to chase

22   that down, and to do anything that could quantify --

23             THE COURT:  But that's the thing:  If

24   nobody was interested in chasing down the shanks, it

25   seems to me that it wasn't apparent that any of that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3664

```
 1    information was going to be exculpatory.
 2              MS. FOX-YOUNG:  Well, I think --
 3              THE COURT:  If anything, looking back at
 4    it, you would have thought they would have gone after
 5    it more vigorously as inculpatory evidence.
 6              MS. FOX-YOUNG:  Well, I think it's hard to
 7    say.  I'm not sure that the subjective -- I think the
 8    subjective view of those witnesses doesn't matter
 9    because it's an objective standard.
10              But if the Court wants to move to
11    Youngblood, finding that it wasn't -- the exculpatory
12    value was not apparent under Trombetta, I think the
13    Court has to find that a complete failure to
14    investigate even evidence that was seized.  I mean,
15    clearly, Your Honor, they knew this walker was
16    important.  If they thought it was inculpatory, why
17    wasn't it tested?  Why wasn't it fit against the
18    shanks that they had?
19              But a complete failure to complete any
20    investigation.  I mean, you heard testimony that --
21    from a witness who says, yes, this walker was
22    important.  It was in my office.  We thought it might
23    be the source.  We did nothing with it.  And short of
24    saying we took it outside and melted it in the
25    dumpster -- I mean, they have absolutely lost or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3665



 1   destroyed this evidence.  And as far as the value is
 2   concerned, from an objective standard, the possible
 3   exculpatory nature or possibly utility under
 4   Youngblood, the Court has heard from Ms. Schile as to
 5   what should have been done and what could be done now
 6   if we had it.  You know, whether --
 7          THE COURT:  Well, I agree with that.  If
 8   I'm looking, though, for -- if I'm looking for bad
 9   faith, it seemed to me Ms. Schile didn't close the
10   gap.  She just gave us a negligence standard; that
11   this is what, in her view, a reasonable police
12   investigation would have done.  But she didn't give
13   me anything that would get me up to the bad faith
14   standard.
15          What would you -- I know you disagree on
16   the standard -- but if you were to -- if you had to
17   argue what in the evidence I've heard over the last
18   two days would get you to bad faith, what would you
19   point to?
20          MS. FOX-YOUNG:  I would point, Your Honor,
21   to the firsthand knowledge that Agent Palomares had
22   of the importance of this walker, and the fact that
23   other sources hadn't been ruled out.  That was from
24   Mr. Perez himself.
25          Numerous memos from Ernie Holguin.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  You think that's bad faith or
 2      just not good work?
 3                MS. FOX-YOUNG:  I think, when this Court
 4      saw the impeachment of Agent Palomares, and that
 5      either he absolutely buried his head in the sand, to
 6      quote Judge Posner, or lied on the stand -- and I'm
 7      not saying he did -- but it's one or the other.  He
 8      received this information from Ernie Holguin as to
 9      all these other sources of metal; the fact that metal
10      was coming in; the fact that Mr. Perez told him the
11      part had been missing for three or four weeks, all
12      these memos that the Court saw that are in evidence,
13      either received those and threw them in the trash --
14      which is clearly bad faith -- or he lied to the
15      Court.  And the same thing with the witness this
16      morning of their own.
17                So I don't know what the point a completely
18      botched investigation --
19                THE COURT:  Well, let's pause on that.
20                What's your position?  Do you think he lied
21      to the Court, or do you think that he was up to
22      monkey business when he was throwing that material
23      out?  What's your theory?
24                MS. FOX-YOUNG:  Your Honor, I'm not -- I
25      don't think it matters.  Either way, it's bad faith.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3667

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 142 3668

```
 1    Either -- I mean, you're the case agent for the New

 2    Mexico State Police investigating a murder --

 3              THE COURT:  But you're making a closing

 4    argument here.  Tell me what you want me to find.

 5    When I make my findings of fact, do you want me to

 6    find monkey business at the time, or that he came

 7    into federal court and lied here yesterday?

 8              MS. FOX-YOUNG:  I think that, with respect

 9    to each of these witnesses, the Court has to make a

10    credibility determination.  And --

11              THE COURT:  Was he telling the truth

12    yesterday, or was he -- I mean, do you want me to

13    find that the bad faith occurred back when he threw

14    out the material, or the bad faith occurred -- or

15    that he was lying yesterday?  And if he was lying

16    yesterday, what is the story here?  What's the story

17    he's lying about?  I mean, he came in and seems

18    rather credible, because how does it help him to say

19    he just tossed it out?

20              MS. FOX-YOUNG:  It's hard to explain why

21    you didn't actually preserve exculpatory evidence and

22    why you didn't do anything to chase down the source

23    of the murder weapon.

24              THE COURT:  But if you're going to lie,

25    wouldn't you come in and say, I never had it?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3668

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3669

 1            MS. FOX-YOUNG:  Which is what he said, Your

 2    Honor.  He said that he did not receive those

 3    materials from Ernie Holguin; that he never saw a

 4    walker; that he never saw any evidence of a walker;

 5    that he never talked to anybody about the walker.

 6    And then the Court heard all these witnesses from the

 7    Corrections Department say:  We were totally focused

 8    on the walker, we seized the walker, we photographed

 9    the walker, we talked to people about the walker.

10            I just don't think it stands to reason that

11    the case agent didn't know about it.  Maybe he forgot

12    about it.  But the important thing is that at the

13    time he received these materials.  And it was -- at

14    some point I think the Court has to find that it's

15    bad faith not to -- I mean, this is a case agent for

16    New Mexico State Police investigating a murder.  How

17    do you not look into the source of the murder weapon?

18            Now, the fact that the State didn't care

19    about a broader conspiracy in 2014, and the feds have

20    picked it up and cast a wide net, I think, is

21    immaterial.  The source of that --

22            THE COURT:  Why is that immaterial?

23    Because it seems to me it's the bad faith at the time

24    of the evidence gathering that I have to focus on.

25    Would you agree?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            MS. FOX-YOUNG:  I would agree.

2            THE COURT:  So, if for some reason, they

3    didn't make a broader investigation, isn't the fact

4    that the United States has decided to broaden the

5    investigation, isn't that really relevant?  Because,

6    otherwise, Mr. Perez wouldn't be in this case, or in

7    any case.  And that has to explain -- it's the United

8    States' plowing here that's picked up Mr. Perez.

9            MS. FOX-YOUNG:  Your Honor, let me be more

10   precise.  At the time of the investigation, in March

11   of 2014, the Court heard testimony from witnesses

12   that everybody in those pods was a suspect.  They

13   talked to as many people as they could.  Everybody

14   who is SNM validated or suspected was a suspect.

15   They didn't know who committed that murder.  And the

16   reason they talked to Rudy Perez was to find out

17   where the thing came from.

18            And so the fact that they didn't follow-up

19   on those leads I think is immaterial.  The fact that

20   Agent Palomares absolutely disregarded clear

21   exculpatory evidence -- maybe the Court finds that

22   it's potentially exculpatory, but I think you have to

23   find that the walker itself -- I'll tell you this:

24   Had the Corrections Department ruled out the

25   wheelchair program as a source, if they put on



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3670

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145

1   witnesses who said:  We know this came from the

2   walker, here are all the reasons that we know that,

3   it would be clearly inculpatory, and we would have no

4   argument.

5         But they told the Court the opposite.  I

6   think much to the Government's surprise.  Witness

7   after witness said:  We don't know where this thing

8   came from.  It could have come from the walker; it

9   could have come from somewhere else.  In fact, there

10  was a lot of hard evidence that it did come from

11  somewhere else.  And that was all known at the time.

12  That was all -- I mean, whether Agent Palomares will

13  cop to it or not, I think a very credible witness, in

14  Ernie Holguin, testified he provided it all.  He had

15  a very distinct memory.  And he's the only witness

16  who documented anything.  It's all in his memos, and

17  he provided it.  Nobody else -- I mean the

18  Government's theory isn't documented in notes.  There

19  is no report as to what happened to this thing.

20        So I think if the Court is going to make a

21  credibility determination, it's got to be that Ernie

22  Holguin was believable when he said he gave all this

23  to the case agent.

24        THE COURT:  Well, tell me the credibility

25  determination.  If you want to write my opinion and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    my facts, who lied and what did they lie, and what

 2    then was the truth?

 3              MS. FOX-YOUNG:  The truth is that the

 4    prosecution team had the information that this walker

 5    was exculpatory, and this video was potentially

 6    exculpatory at the time of the murder.  I think that

 7    is clearly elicited in the testimony.  Witness by

 8    witness, and I think that comes from Ernie Holguin --

 9    you know, clear impeachment of Agent Palomares --

10    whether Agent Palomares was lying or misremembering

11    he's got documented material that he turned over.  If

12    the Court looks closely at Defendant's Exhibit PP,

13    it's really material to this question as to what they

14    knew.

15              Now, because of the nature of this

16    investigation, it's easy for the Government to say,

17    Well, STIU knew this, and Santa Fe knew this, and

18    State Police knew this.  But they can't point fingers

19    in opposite directions and claim that nobody was

20    responsible for carrying out the investigation.

21              And so, as a unit, as a whole, the

22    Corrections Department, working hand in hand with

23    State Police, they had this information and they

24    disregarded it.  I think Agent Palomares clearly lied

25    to the Court when he said he didn't know that the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3672

 1   walker was in play.  If I were the Court, I would

 2   make that finding based upon the testimony.  That's

 3   presumptuous of me, but since the Court has asked how

 4   I would write the findings.

 5          I think Major Mulheron this morning was

 6   less than honest when he said he didn't know what

 7   happened to the walker.  He knew the shank may have

 8   come from another walker.  And nobody has come

 9   forward to tell this Court what happened to the

10   thing.  The Court has heard that, you know, for the

11   first time in history this critical piece of evidence

12   that might have been the source of a murder weapon

13   was held in somebody's office.

14          I mean, I can go on and on about how the

15   investigation was odd, and evidence wasn't preserved.

16   And I think the Court has to take that into

17   consideration when you make a bad faith

18   determination.  At what point do we go over the

19   precipice and say:  You have to conduct a real

20   investigation.  You cannot just ignore significant

21   evidence.  I don't know if that answers the Court.

22          THE COURT:  Well, I guess the thing that's

23   somewhat telling to me is that when the State did its

24   prosecution, it didn't go this direction with Mr.

25   Perez.  So I find that to be very telling, that they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3673

```
 1    did their thing, and the United States is doing their

 2    thing.

 3              MS. FOX-YOUNG:  Well, is the Court

 4    asking --

 5              THE COURT:  Well, I mean, it sort of fits.

 6    I mean, you brought in a lot of people that were back

 7    there.  And they weren't focused on Mr. Perez or this

 8    walker.  And that's exactly where the prosecution

 9    went, too.  They didn't focus on Mr. Perez.

10              MS. FOX-YOUNG:  Well, and the prosecution

11    dismissed folks out.  I mean, the State case looks

12    entirely different for a whole bunch of reasons.

13              THE COURT:  But isn't that very

14    significant?

15              MS. FOX-YOUNG:  I don't think so, because

16    in any investigation --

17              THE COURT:  They dismissed the State case;

18    the feds take over, and it went a different

19    direction.  But the fact that nobody in the State was

20    interested in Mr. Perez and his walker, I don't know,

21    I think that's of some significance.

22              MS. FOX-YOUNG:  It is of significance.  But

23    it is the job of investigators, it is the job of

24    State Police to ferret out the evidence.

25              THE COURT:  If the feds hadn't been around
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3674

 1    here, you wouldn't be complaining about their

 2    investigation, right?

 3              MS. FOX-YOUNG:  They wouldn't be here for

 4    me to complain about.

 5              THE COURT:  Let's take this up after lunch.

 6    All right.  We'll be in recess for about an hour.

 7    I'm going to leave the building, so depending on how

 8    quickly we get food.  I'm not going to start without

 9    anybody.

10              (The Court stood in recess.)

11              THE COURT:  All right.  Let's go on the

12    record.  I think everybody has now got counsel here.

13    Look around the room, make sure everybody has got

14    counsel.

15              All right.  Mr. Granberg, looks like you're

16    joining us for the afternoon.

17              MR. GRANBERG:  Yes, Your Honor.

18              THE COURT:  Good afternoon, Mr. Granberg.

19              Mr. Burke, you're going to leave after the

20    first break; is that correct?

21              MR. BURKE:  Yes, Your Honor.

22              THE COURT:  All right.  So be safe on your

23    travels.

24              MR. BURKE:  Thank you, Your Honor.

25              THE COURT:  Are there any other changes?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3675

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150

```
 1      Anybody on the phone?
 2              MR. CASTLE:  Yes, Your Honor.  Jim Castle.
 3      I'm on the phone.
 4              THE COURT:  All right, Mr. Castle.
 5              All right.  Ms. Fox-Young, do you wish to
 6      continue your argument?
 7              MS. FOX-YOUNG:  Thank you, Your Honor.  I
 8      believe, when we left off, the Court was asking what
 9      our position is as to the fact that the State did not
10      charge Mr. Perez in the State case.  And I think the
11      Court wonders what knowledge -- I won't speak for the
12      Court, but what knowledge could be imputed, or what
13      the exculpatory -- what the apparent or potential
14      exculpatory value of evidence is, if these
15      investigators aren't going after Rudy Perez.  Is
16      that --
17              THE COURT:  Well, I guess -- let me break
18      it down a little bit, because I probably was merging
19      two things.  But one is on the, sort of, first prong,
20      the Trombetta prong.  It seems to me that, if the
21      prosecution didn't focus on Mr. Perez, it's more
22      difficult for you to say that the walker was either
23      exculpatory -- of exculpatory significance, or that
24      it was apparent before destruction, so it seems to
25      me, if the whole sweep of the investigation is more
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3676

```
 1    difficult to say than it was apparent, because it was

 2    focused.

 3              And then the second thing -- I think this

 4    is where we were talking -- is that it seems

 5    difficult to say, if we get into the bad faith, that

 6    they were acting in bad faith, given that nobody was

 7    focusing on Perez, even through the State

 8    prosecution.

 9              MS. FOX-YOUNG:  Okay.

10              THE COURT:  So it sort of goes, I think, to

11    both your Trombetta argument, and also to the bad

12    faith, the Youngblood.

13              MS. FOX-YOUNG:  And I would just say that I

14    think the Court is right to point --

15              THE COURT:  Take the first one first.

16    Let's go back and plow a little bit the Trombetta,

17    because I jumped a little bit to the bad faith.  But

18    go back and plow that a little more.

19              MS. FOX-YOUNG:  Yes, Your Honor.

20              I think the Court is right to point out

21    that the New Mexico Corrections Department and, of

22    course, the district attorney, did not, perhaps, have

23    Mr. Perez in their sights as investigation matured.

24    But I think that also cuts other way, Judge, and that

25    is because he wasn't charged.  You know, so what --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3677

```
 1   and we maybe know a portion of what the Corrections
 2   Department did with that walker.  We know that it was
 3   seized, confiscated, inspected to some degree,
 4   photographed.  And they didn't charge Mr. Perez.  And
 5   so there --
 6            THE COURT:  If you're not charging, you're
 7   not focusing, is really the Government -- and I think
 8   would it be the State officials would be charged with
 9   this -- can you really charge them with, you know,
10   looking for exculpatory evidence?  I mean, generally,
11   you begin to look at exculpatory evidence when you're
12   focusing on someone as a suspect or target.  Not
13   looking for exculpatory evidence of people you're not
14   targeting.
15            MS. FOX-YOUNG:  Well, I think in doing
16   this --
17            THE COURT:  I mean, your argument is --
18   almost has to be that they should have been targeting
19   Mr. Perez from the very beginning, and therefore,
20   they should have been looking for exculpatory
21   evidence from the very beginning.
22            MS. FOX-YOUNG:  Yes, Judge.  And I think,
23   either under Trombetta or Youngblood, in assessing
24   the value of the evidence, in doing the analysis, the
25   Court should look, not -- I think it's irrelevant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3678

```
 1    what the DA decided to do, vis-a-vis Mr. Perez.  What
 2    is relevant is that all these folks with the
 3    Corrections Department, part of the prosecution team,
 4    whenever they were working, and Agent Palomares, the
 5    case agent -- whether or not they'll admit it -- were
 6    focused on Perez.  They interviewed him.  They say
 7    that's why they took the walker.  They thought it
 8    might have come from him.  They were exploring that.
 9    And they're the ones that lost the evidence.  It's
10    not the DA who made that decision.
11              So we have to look early on.  This is
12    structurally a little bit strange, because the
13    investigation was conducted in 2014, and after the
14    State case dropped, the feds bring it up.  But the
15    feds are relying on this investigation, and they've
16    worked hand in hand with this team.  And so I think
17    the Corrections Department is either part of the team
18    or not.
19              Objectively, they had to know, when they
20    were looking at Mr. Perez as a suspect in that pod,
21    that this piece of evidence had exculpatory value.
22              THE COURT:  Well, let's back up for a
23    second, because don't you have to establish that for
24    it to be apparent that it was exculpatory before
25    destruction, don't you have to first establish that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3679

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154

```
 1    it's apparent and obviously exculpatory now?  And if

 2    it's not, then it's kind of irrelevant, a lot of the

 3    things you and I are talking about, because isn't it

 4    your duty to establish, right this minute, that that

 5    walker, wherever it is, is exculpatory?

 6              MS. FOX-YOUNG:  Your Honor, I think that's

 7    the easy part of the inquiry, you know, given

 8    multiple -- and the answer is yes.

 9              THE COURT:  What is the most -- what is the

10    best evidence you have that that walker had no parts

11    missing?

12              MS. FOX-YOUNG:  Well, I don't think that's

13    the only question.

14              THE COURT:  But isn't it really?

15              MS. FOX-YOUNG:  Well --

16              THE COURT:  If you can't establish right

17    this minute that that walker -- whether it's in a

18    garbage dump or still floating around at the Pen, you

19    know, has all its parts there, then it's not

20    apparently exculpatory now; it wouldn't be apparently

21    exculpatory then, would it?

22              MS. FOX-YOUNG:  I don't think anybody

23    disagrees -- in fact, Mr. Perez made a statement that

24    STIU had found a piece was missing there.

25              THE COURT:  So from that alone, how can we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3680

```
 1    say that the walker is obviously exculpatory?
 2              MS. FOX-YOUNG:  Well, because there was
 3    metal all over that pod.  And because this Court has
 4    heard testimony from Corrections Department officials
 5    that they had strong belief that walkers in the
 6    wheelchair program could have produced that shank.
 7              THE COURT:  But it seems to me that that
 8    undercuts, though, the obviously or apparently.
 9    Because if that walker would show up this afternoon
10    about 3:00, you know, and it had parts missing, I
11    don't think we still could say it's apparently or
12    obviously exculpatory.  You've got to take some --
13    several inferences in your direction.  And the
14    Government will take some inferences in their
15    direction.
16              MS. FOX-YOUNG:  And I understand, if the
17    Court doesn't feel that this is in the universe of
18    Trombetta --
19              THE COURT:  Well, but argue with me.  I
20    mean, I've got to first deal with your Trombetta
21    argument.  So I'm grappling with it so I can write an
22    opinion on it.
23              MS. FOX-YOUNG:  Your Honor, given --
24              THE COURT:  Tell me what's wrong with my
25    analysis.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3681

```
1              MS. FOX-YOUNG:  Given the testimony from
2    witnesses yesterday and today that the shanks may not
3    have come from the walker.  Folks who were on the
4    prosecution team telling this Court that they believe
5    the shanks could have come from the wheelchair
6    program; that was not.  There are inmates who say
7    metal was coming in from the wheelchair program.
8              It's a strange coincidence that, in March
9    of 2014, there were walkers of the same type as Mr.
10   Perez' in the wheelchair program where SNM, or at
11   least blue and yellow pod inmates were working.  And
12   so I think the Court has to grapple with that; that
13   there has been strong testimony that the shanks may
14   not have come from the walker.  It's unusual to see a
15   case like this, where perhaps there is an identical
16   walker with missing pieces in the wheelchair program.
17             The Court has heard evidence that there was
18   no inventory.  The Government doesn't know what may
19   have been missing.  And so from the defense
20   perspective, and even from an investigative
21   perspective, you can't rule out a very obvious
22   source.  And you have multiple individuals telling
23   you that's where they think it came from.  There is
24   apparent exculpatory value.  How do you not --
25             THE COURT:  But you've shifted now to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3682

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3683

```
 1    Youngblood with that language, would you agree?

 2              MS. FOX-YOUNG:  Apparent exculpatory value?

 3              THE COURT:  Well, if it's indeterminate --

 4    I mean, isn't that what Youngblood is saying?  If

 5    it's indeterminate, exculpatory value, you just don't

 6    know.  You've got a walker back there that has pieces

 7    missing.  That seems to be the best we have.  So

 8    that's indeterminate as to which way it goes, whether

 9    it's exculpatory or not.  And that could be used very

10    much against the defendant.  Here's your walker, it's

11    missing pieces.

12              MS. FOX-YOUNG:  And I think drawing the

13    line there, you may never have anything that

14    satisfies the Trombetta standard.

15              And Youngblood didn't overrule Trombetta

16    And I understand where the Court is coming from.  I

17    can't say, standing here today, that it absolutely,

18    you know, would prove -- if we had the walker here

19    today and could test it, that it absolutely would

20    prove to be exculpatory.  But it clearly has value

21    and should be tested.  I think that is what is

22    apparent.

23              THE COURT:  It seems to me, once you make

24    that argument, you shift over to Youngblood.  That's

25    my only point, is once I hear those words out of your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3683

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 158 3684

1  mouth, it sounds to me like we're in Youngblood.  And

2  if that's your point, we both agree, you've got to go

3  the bad faith route.

4       MS. FOX-YOUNG:  I think, given the

5  testimony, we meet the Trombetta standard.  But I

6  understand the Court's reluctance to find that it

7  absolutely was apparent.  We think it was apparent.

8  We think that, according to these witnesses, it was

9  apparent.

10       THE COURT:  It seems to me the witnesses --

11  the best you can probably establish is that it's an

12  interesting piece of evidence.  But it's not

13  exculpatory.  I didn't think you got really somebody

14  to say, Yeah, that -- we were looking at it, and it

15  was all together and it was exculpatory.

16       MS. FOX-YOUNG:  Well, I mean, if the Court

17  would like, we can move to Youngblood.

18       THE COURT:  All right.

19       MS. FOX-YOUNG:  And I know the Court did

20  look at Youngblood closely, and Harry, and the other

21  cases.  I know the Court is familiar with the factors

22  from the Bohl case, Tenth Circuit, and the inquiry

23  that must be made into bad faith.  I think clearly

24  the Government knew, the Corrections Department and

25  State Police knew, at the time that this walker was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3684

```
 1   lost or destroyed or whatever happened to it, that it
 2   had evidentiary value, and that it should be tested.
 3   I mean, witnesses have told the Court that they
 4   examined it; that they kept it.  We don't know what
 5   happened to it after that.  But that, without testing
 6   it, essentially, they couldn't rule out whether or
 7   not it was the source of the murder weapon.
 8            THE COURT:  What test would you really have
 9   done here?
10            MS. FOX-YOUNG:  Well, for one thing, Your
11   Honor, I think the test that the prosecution claims
12   to have done, that we haven't heard evidence was
13   done, of simply taking the pieces that were recovered
14   and comparing them to the walker.  I mean, the
15   Government has told you that they make a perfect fit.
16   We haven't heard evidence of that.  But that might be
17   the first think that any layperson would do.  I think
18   the Court heard a lot about forensic testing that
19   could be done.  We don't know whether it's the same
20   sort of metal, the same color, the same dimensions.
21   I mean, they are pretty basic testing, which maybe it
22   was done, and witnesses haven't told this Court about
23   it.  But all of those things would comprise a pretty
24   basic investigation to determine the source.
25            THE COURT:  If you were to point to a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3685

```
 1   case -- do you have a case in which the Court has

 2   concluded, from anywhere, Tenth Circuit or otherwise,

 3   in which the Court concluded that failure to do tests

 4   is going to rise to the level of bad faith?

 5            MS. FOX-YOUNG:  I don't think we're arguing

 6   that it was the failure to do tests.  I mean, I think

 7   it's the failure to preserve it so it could be

 8   tested.

 9            But the Court has heard that the

10   Corrections Department didn't even follow their own

11   policies and procedures as to preserving this

12   evidence.  When they took it in, they put it in an

13   office, photographed it, in blatant disregard of

14   their own policies.

15            And I do think there are cases -- let me

16   see if I can cite to the Court -- that address that,

17   that sort of circumstance.  I think Agent

18   Palomares -- and I don't know what the Court's

19   findings will be with respect to the knowledge that

20   he had at the time of the investigation --

21            THE COURT:  If you were writing it, what

22   would you say I should say about that?

23            MS. FOX-YOUNG:  That based upon the

24   testimony of the other witnesses, he completely

25   disregarded and failed to consider clearly
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   exculpatory evidence pertaining to Mr. Perez.  And

2   that is, for one thing, the memo from Mr. Holguin

3   that states that Mr. Perez said that the piece had

4   been missing since February.  Didn't chase that down

5   at all.  All of the information that was coming from

6   informants that these shanks came out of the

7   wheelchair program.

8            And so -- and then, even if the Court finds

9   that a failure to investigate is in bad faith, I

10  think to come into this Court and demonstrate that

11  all that material was disregarded, or to lie to the

12  Court, shows bad faith.

13           At some point --

14           THE COURT:  But do you look at the bad

15  faith that's going on now?

16           MS. FOX-YOUNG:  Bad faith in the course of

17  the investigation, which is continuing.  I mean,

18  today, we've had production of Brady materials, today

19  we've had production of materials pertaining to the

20  cameras that recorded the homicide.  I mean, the

21  investigation has been ongoing since March 7, 2014.

22  So yes, I think the bad faith continues.  I think the

23  analysis of whether or not there is bad faith

24  continues.

25           The pertinent period for the Court -- the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Court obviously is focused on March of 2014, and what
 2   happened to that walker, and whether agents acted in
 3   bad faith.  But I think it's very telling that the
 4   case agent was pretty severely impeached by STIU
 5   officers who say he had all this information.  And
 6   Palomares said he didn't explore it.
 7          There is a case I'd like to cite for the
 8   Court, United States v. Elliott, which is 83 F.Supp.
 9   2d 637, it's out of the Eastern District of Virginia
10   from 1999, and --
11          THE COURT:  Who is the judge on it?
12          MS. FOX-YOUNG:  That's a good question,
13   Your Honor.  Let me see if I can pull it up.  Let me
14   give the Court first a pin cite.  It's at 650 to 51.
15   And the Court there discusses that -- it's Judge
16   Payne, P-A-Y-N-E.  The Court discusses the fact that
17   it was -- the Government was arguing that it was
18   stupid for the DEA agent to have destroyed evidence;
19   said it wasn't in bad faith, because bad faith can
20   only be found if there is specific intent.  And the
21   court addresses how Trombetta and Youngblood analyses
22   play into that, and says the bad faith really isn't
23   confined to the circumstance in which a DEA agent
24   deliberately says:  I'm going to deprive the private
25   defendant of due process or hurt his case.  That,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3688

```
 1   basically, can't be the test.  Because if that's the

 2   test, there is nothing to stop -- there is no line to

 3   draw to place a check on the destruction of evidence.

 4   And in every case, law enforcement agents would be

 5   able to defend the destruction of evidence, as they

 6   are here, by lying about their subjective intent, or

 7   by violating with impunity the rules they're

 8   obligated to follow.  It's an objective standard,

 9   Your Honor.  And think the Court -- any law

10   enforcement officer can come in and say:  I didn't

11   know, I didn't care to know, I can't remember.

12   That's not the standard.  I mean, this is clearly

13   highly relevant evidence.  Corrections Department

14   knew that; that's why they confiscated the walker;

15   that's why they took it in to STIU.  That's why they

16   took pictures of it.  That's why they questioned Rudy

17   Perez, that's why they questioned all these other

18   guys.

19          And for them to come in now and say, Well,

20   we just don't know what happened.  It was in my

21   office.  I remember all these other specifics, but I

22   just can't tell you what happened to it.  I think

23   that's bad faith.  And Judge Payne speaks to that.

24          I would like to make another -- I don't

25   want to jump the gun, if the Court has other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3689

 1   questions about the bad faith inquiry, but I would

 2   like to --

 3        THE COURT:  Go ahead.

 4        MS. FOX-YOUNG:  On the question of whether

 5   a remedial jury instruction is proper, this is a

 6   somewhat active area of law.  And I know in the

 7   opening, the Court asked whether the civil standard

 8   applies.  And I know the Court is very familiar with

 9   the Henning case and spoliation claims in the civil

10   context.  I don't think it applies in the due process

11   context.  I think the Court should look at this

12   through a different lens.

13        THE COURT:  What is the difference between

14   the civil standard and bad faith?  I'm having trouble

15   seeing in the Tenth Circuit spoliation jurisprudence

16   how it's different than bad faith, which is the words

17   the Supreme Court used.  Do you have any thoughts on

18   that?

19        MS. FOX-YOUNG:  I don't know that the Tenth

20   Circuit has construed that point.  I haven't found a

21   case on that.  But other circuits have.  There is a

22   case out of the first circuit, United States v.

23   Flores-Rivera, 787 F.3d 1, at 19, and Note 13, which

24   says:  Negligent destruction of a particular piece of

25   evidence likely to be exculpatory might justify an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3690

1     instruction, a spoliation instruction.

2             THE COURT:  Isn't that where the Tenth and

3     the First differ, is that the Tenth -- the First

4     sometimes -- some of the other circuits will give you

5     negligence, but the Tenth won't.

6             MS. FOX-YOUNG:  In the civil context?

7             THE COURT:  In spoliation?

8             MS. FOX-YOUNG:  That may well be.  I can't

9     say I know exactly the jurisprudence out of the First

10    Circuit on the civil --

11            THE COURT:  I thought that's what made the

12    Tenth a little bit -- about the highest standard.

13    I'm not saying they are the highest, but they employ

14    the highest standard as far as spoliation before you

15    start giving those instructions.

16            MS. FOX-YOUNG:  I think the difference in

17    the criminal context is the Court has to look to

18    prejudice to the defendant.  This is all through the

19    lens in the context of a due process inquiry.

20            So, even if the Court finds -- and I think

21    the Court has ample evidence to make a finding of bad

22    faith here -- but even if the Court finds that this

23    falls short of bad faith in some way, looking at a

24    remedial jury instruction in the criminal context is

25    different.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                   And as I said, I don't have a Tenth Circuit
 2       cite for the Court.   There is another case out of the
 3       Ninth Circuit, United States v. Sivilla, which is
 4       Noonan from 2013, finding that bad faith is not
 5       required for a remedial jury instruction.   And that
 6       again, you're looking at negligent destruction of
 7       evidence.   I think the Court clearly has found there
 8       was negligence here.   Well, the Court hasn't made any
 9       findings, but seems to have observed that.   And that
10       you look at significant prejudice to the defendant.
11                   There has got to be some mechanism for the
12       Court to address the fact that the linch pin of the
13       Government's case here, the walker that is alleged to
14       have produced the murder weapon, the case against
15       Rudy Perez, you know, the walker is missing, and
16       there is no explanation for why.   I mean, clearly, it
17       was important to the prosecution team at the time, in
18       2014.   And there has not been a reasonable
19       explanation to the Court.
20                   Bohl speaks for that in the bad faith
21       inquiry.   You know, whether the Government is able to
22       offer an innocent explanation for its failure to
23       produce evidence.   I don't think the Court has heard
24       that.
25                   And so, of course, we think there is ample
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3692

1    evidence for the Court to make that bad faith finding

2    if the Court turns to Youngblood.  But we want the

3    Court to also consider the value of a remedial

4    instruction here, as we get closer to trial.

5           THE COURT:  All right.  Anything else, Ms.

6    Fox-Young?

7           MS. FOX-YOUNG:  Not at this time, Judge.

8           THE COURT:  Thank you, Ms. Fox-Young.

9           Mr. Beck, let me see if any other

10   defendants want to weigh in on this debate before I

11   hear from the Government.  Anyone else?

12          All right.  Mr. Beck?  Why don't we start

13   where Ms. Fox-Young left off.  Would you concede

14   negligence?

15          MS. BECK:  Well, if you notice by where I'm

16   sitting at the table there, I'm not in a position to

17   concede much.  But I think --

18          THE COURT:  You're at the podium.

19          MS. BECK:  But I think the facts -- I think

20   the undisputed facts, I think --

21          THE COURT:  Well, what --

22          MS. BECK:  I think there is negligence.

23          THE COURT:  What do you think about this

24   investigation?  I mean, do you think it was shoddily

25   done?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MS. BECK:  I wrote down a note from Ms.

2    Fox-Young's closing argument just now that -- I think

3    she said -- and I want to get this right -- the

4    investigation was odd.  And I would say it was more

5    than odd.  I would say the evidence today shows that

6    it was not a well-performed investigation.  I think

7    that losing the walker -- and there is no testimony

8    that I recall as to where that was, how it was

9    destroyed, how it was lost.  I think that shows that

10   it was not a good investigation.

11          So I'm not conceding that there was

12   negligence, but I wouldn't be surprised if the Court

13   looks back at the lengthy transcript and finds there

14   was negligence.

15          But negligence doesn't meet the standard

16   under Youngblood.

17          THE COURT:  Well, let's start with

18   Trombetta and go back.  And maybe I'm wrong in

19   looking at it this way, but it seems like there may

20   be some evidence here that, if we had the walker

21   here, it might -- if you had other evidence, would

22   show something exculpatory.

23          MS. BECK:  And that takes us -- that

24   statement right there takes us from Trombetta to

25   Youngblood.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  So you think that to meet
2    Trombetta, if somebody would wheel in, at 3:00, the
3    walker, and it had parts missing, which seems to be
4    what everybody is conceding, that because we look at
5    that and can't instantly conclude that that's
6    exculpatory, then we're out of Trombetta?
7              MS. BECK:  Exactly, yes.  I think to be in
8    Trombetta --
9              THE COURT:  So we've got to be able to do
10   it, and the officers back then had to be able to do
11   it.  They had to look at it and say:  It can't go
12   either way; it's got to be apparently or obviously --
13             MS. BECK:  That would take us into
14   Trombetta.
15             THE COURT:  Take it out.
16             MS. BECK:  No.  So, if the officers back
17   then looked at Mr. Perez' walker, and saw that there
18   was no part missing --
19             THE COURT:  Then that would be exculpatory.
20             MS. BECK:  That would be Trombetta.  That
21   would be apparently exculpatory, talking about the
22   walker then --
23             THE COURT:  Is there any evidence over the
24   last two days that that was the case?
25             MS. BECK:  No, there is no evidence of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3695

```
 1    that.
 2            THE COURT:  Everybody seems to agree that
 3    there were some parts missing.
 4            MS. BECK:  Right, exactly.  And I would
 5    point out to the Court some of our best evidence.  I
 6    think yesterday morning I said:  Mr. Perez does not
 7    dispute that he noticed, and told officers that the
 8    walker was gone.
 9            And so I will point the Court to the
10    defendants' exhibit -- I have it written down here
11    somewhere.  All right.  Maybe I don't.  The
12    transcript of the interview with Palomares.  And Ms.
13    Fox-Young began her closing argument pointing out
14    portions of the interview from March 10th of 2014.
15    And the Court should note on the front page of
16    this -- again, this is in evidence -- that this is
17    against Jerry Armenta.  And that gets to the Court's
18    point, which the Court has made multiple times, that
19    no one was looking at Perez.
20            So, for the Court to read later on -- I'd
21    like the Court to start at page 19, and read
22    through -- read all the way through page 28.  Because
23    in here, Mr. Perez admits to being a member of the
24    SNM.  And that's on page 20.  Agent Alvarado asked
25    him:  "When did you get validated?  When did you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3696

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

```
 1    start with SNM?"

 2              And he says, "Way back.  They just barely

 3    validated me in 2008, though."

 4              They, meaning STIU.  And now we're talking

 5    about validation, not when he joined.

 6              Mr. Perez has said, "I was under the radar.

 7    I was on the line the whole time, then (Spanish)

 8    didn't bother me because I do my time."

 9              He goes on to talk about why he can't say

10    anything to law enforcement, because he would be

11    killed if he does.  And he talks here -- and

12    basically, says, "I'm an old timer," this is page 21,

13    line 16.  "Nobody tells me.  'Pup' don't tell me what

14    to do.  Styx don't tell me what to do.  Yeah, there

15    is not a motherfucker here who is going to tell me

16    what to do no more."

17              So he's saying:  I don't get told what to

18    do.  I don't do anything.  And that lays the context

19    here for page 26, where he says, "You know what I

20    mean, and because they came and they said a piece of

21    my walker was missing" -- that's STIU.

22              Agent Alvarado says, "Yeah."

23              And he says, "When that piece came up

24    missing, I was in the shower.  What was I going to

25    do?  Go make a big thing about it?"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 172

```
 1            And that right there is his admission,
 2   which the defendants put into evidence, that he knew
 3   that piece was missing from his walker.  That
 4   admission takes us out of the Trombetta, because now
 5   we have undisputed evidence, even he admits.  And
 6   again, we're assuming that some portion of this is
 7   truthful.  But it is undisputed that the walker was
 8   missing a piece right here.
 9            Then he goes on to say, "I was going to
10   clean that up on my own."  And that plays back into
11   the piece that no one was telling him what to do.
12            Now, I also want to point out that -- and
13   I'm jumping ahead a little bit here -- but in the
14   Court's decision in Harry, and looking back at the
15   Tenth Circuit's case in Bohl, one of the indicia that
16   we're looking for in bad faith is whether this is a
17   crucial piece of evidence, okay?  And this is not a
18   crucial piece of evidence.  "This" being the walker
19   in this case.  Because Rudy Perez was only found
20   after the original indictment.  And the Court and
21   everybody has heard this multiple times, when he
22   admitted to the CHS that he provided his walker to
23   other defendants to be made into shanks to kill
24   Javier Molina, because that is the work that he could
25   do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           Okay.  And this is Exhibit 16.  This is

2    from the hearing on November 27, 28, 29.  But they

3    were all incorporated and admitted here.  Where Rudy

4    Perez now admits to Cordova, the CHS in this case,

5    that he provided his walker.

6           And so here, at the bottom of Bates 20531,

7    he says, "Rudy Perez says they came to me and they're

8    like, Big Dog, something has to be taken care of, but

9    we need squina.  You don't have to do nothing.  You

10   don't have to say nada.  You don't have to do fuck."

11   Basically, that's when they took his walker and made

12   the shanks.

13          And again, when the Court is deciding this,

14   I would urge the Court to read through that entire

15   transcript, because in that transcript he says, I

16   have never told anyone except for you, the CHS, that

17   I did this, that I provided my walker to put in work

18   for the family.

19          And so now, again, this is the only time we

20   have competing stories from Rudy Perez throughout the

21   testimony here, that this was missing when he went in

22   the shower; it was missing two weeks earlier; they

23   took his walker on the morning of the 10th; they took

24   it the 14th.  And Rudy Perez explains in Government's

25   Exhibit 16 why that is.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Those statements -- and again, I will note
 2    that the reason I said it was undisputed yesterday is
 3    because it's on page 5 of Mr. Perez' motion here in
 4    the brief, where he says, "Mr. Perez disclosed to
 5    NMSP Agents Palomares and Alvarado that prior to the
 6    murder, a piece of his walker went missing while he
 7    was in the shower."
 8              So that's why, until yesterday, I thought
 9    it was undisputed.  Because he pointed that out in
10    his brief --
11              THE COURT:  Well -- and I didn't hear Ms.
12    Fox-Young going in a different direction on that.
13              MS. BECK:  Right.
14              THE COURT:  I thought she gave you that.  I
15    think everybody agrees that right now, if we were to
16    find that, everybody would expect it to be missing
17    pieces.
18              MS. BECK:  So now we're into Youngblood.
19    In Youngblood we have to have possible exculpatory
20    evidence -- or indeterminate, I think, is the
21    language.  And I think we've got that from Ms. Schile
22    yesterday.  She said, at best, it's indeterminate.
23              This is the Court's decision in United
24    States against Harry, 927 F.Supp. 2d 1185.  And so
25    now I'm reading from page 1216 there.  "The inquiry
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3700

```
 1    into bad faith must necessarily turn on the

 2    Government's knowledge of the exculpatory value of

 3    the evidence at the time that it was lost or

 4    destroyed."

 5           And that's, Your Honor, quoting the Bohl

 6    decision from the Tenth Circuit, which we've talked a

 7    lot about today.

 8           So when we're talking about bad faith and

 9    about the negligence, and about some conflicting

10    testimony today, the salient inquiry here is the

11    evidence of the Government's knowledge of the

12    exculpatory value of the evidence at the time it was

13    lost or destroyed.

14           To this date, the Government doesn't have

15    any knowledge of the exculpatory value of that piece

16    of evidence.  And it never did.  Because everyone

17    agrees that the walker was inculpatory.

18           THE COURT:  Well, I guess right at this

19    moment, you would just as soon have that walker here

20    to wave in front of the jury --

21           MS. BECK:  Precisely.

22           THE COURT:  -- to show the missing pieces?

23           MS. BECK:  Precisely.

24           I think everyone would agree -- and most

25    having more experience than me -- that this is a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3701

1    unique case, where the United States is not relying

2    on a lot of hard, or material -- material is the

3    wrong word -- hard or physical evidence.  A lot of

4    our best evidence is co-conspirator statements.

5           And, here, you just saw Mr. Perez'

6    co-conspirator statement, which is our best evidence.

7    No one is hiding that.  That's why he's indicted.

8           And so here -- well, we can come back to

9    that --

10          THE COURT:  Hold on just a second.

11   Mr. Hammond, could you get my glasses?  I'm trying to

12   read these cases.

13          Go ahead, Mr. Beck.

14          MS. BECK:  So, if we look -- and I can find

15   this because I have this decision here -- but I

16   copied this note down, and I think it's a little bit

17   more clear -- this is from the Bohl decision -- "The

18   Trombetta standard of exculpatory evidence has not

19   been met here, because on the record before us, the

20   Government's test results suggest that the towers'

21   chemical composition failed to conform to the

22   contract specifications."

23          In that case, it was fraud, alleging that

24   the materials used in these towers were less than the

25   contract called for.  And so, in that case, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3702

 1    towers were the best evidence.  But because the

 2    Government had some evidence that backed up its

 3    theory that the towers wouldn't have been

 4    exculpatory, it took it out of Trombetta.  And when

 5    the Court goes back and reads that decision, you'll

 6    see that the possibility of the towers being

 7    exculpatory --

 8              THE COURT:  You're talking about Bohl?

 9              MS. BECK:  Bohl.  The possibility of the

10    towers being exculpatory was much greater than here,

11    because there had been tests performed by the

12    company, for which these defendants worked, that

13    manufactured the towers, that showed that the

14    materials actually complied with the contract.  So

15    there was some physical testing evidence that showed

16    there may be exculpatory value.

17              But, as you'll see, even Bohl and Bell seem

18    to agree that it takes it out of the apparently

19    exculpatory evidence category of Trombetta.

20              And, so then we get into Youngblood.  And

21    the Court -- the Tenth Circuit laid out a test, which

22    this Court adopted, looking at the text messages in

23    its Harry decision -- and I think there is some good

24    language here -- the first I'll point out -- and this

25    is on page -- this is, again, on page 910 of that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3703

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178704

 1    decision -- the Tenth Circuit said that it had

 2    previously observed that the mere fact that the

 3    Government controlled the evidence and failed to

 4    preserve it by itself is insufficient to establish

 5    bad faith.

 6              And I'd submit to the Court, that when we

 7    look back, that would be the extent of the evidence;

 8    that we controlled it -- not United States, of

 9    course -- that STIU or NMCD controlled it, and that

10    it was lost.

11              But down at the bottom of that page, find

12    "potentially useful evidence" as evidence which,

13    quote, "no more can be said than that it could have

14    been subjected to tests, the results of which might

15    have exonerated the defendant."

16              And I think that is probably the Defendant,

17    Mr. Perez', best evidence here, is Ms. Schile's

18    testimony that she could have performed tests on the

19    walker that may have exonerated the defendant.

20              So now, we're into the bad faith.  And this

21    is the test that the Court adopted.  As I said, it

22    must necessarily turn on what the Government knew.

23    And so here, when we're looking at page 911 -- this

24    is what I said, is that -- I said earlier -- is that

25    there was -- "Bell and Bohl had additional

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3704

1    independent evidence, the possibility that the steel

2    met the contract specifications.  They had done tests

3    previously and it met those."

4            And that's what I'm talking about.  We

5    don't have that physical probative evidence here.

6            Nevertheless, when we're looking at bad

7    faith, the first thing we do is look to notice to

8    preserve.  There is no testimony that anyone put the

9    government -- whether that be New Mexico State

10   Police, STIU, or NMCD -- on notice to preserve the

11   walker before it was lost.

12           The second part is more than mere

13   conclusory potential exculpatory value.  And that is

14   where they talk about TSL; the company that

15   manufactured these, had done tests on the towers

16   before, that showed the materials they were made of

17   complied with the contract, which negated the most

18   crucial piece of evidence, that the materials in

19   fact -- what the United States was saying, the

20   materials, in fact, did not meet the contract

21   specifications.

22           Here, I submit to the Court that, when we

23   look at all of the evidence, from everyone who

24   testified over the last day and a half, that all we

25   had is mere conclusory potential exculpatory value,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3705

```
 1    at best.
 2            So, that's two.
 3            The third is, not only --
 4            THE COURT:  Are you standing or have an
 5    objection?
 6            MS. FOX-YOUNG:  I thought he was winding
 7    up.
 8            THE COURT:  Well, we'll let you know when
 9    he's wound up.
10            MS. BECK:  Yeah.
11            The third is possession and control.  And
12    this is after the notice is received.
13            So, again, we don't have evidence of notice
14    here, and we certainly don't have evidence of
15    possession and control after the notice was received.
16            THE COURT:  Well, when you say "notice,"
17    you're certainly not saying that some defendant has
18    got to send notice, right?  It's just notice in a
19    practical sense, right?
20            MS. BECK:  I think -- I mean --
21            THE COURT:  You could have a situation
22    where we're in a case, and somebody says, Hey, don't
23    destroy this evidence.  I mean, that would be notice.
24    But I mean, back then, you still have a Trombetta or
25    Youngblood situation before lawyers are involved,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3706

```
 1   or --

 2            MS. BECK:  I don't know the answer to that,

 3   Your Honor.

 4            In this case, in Bohl, the towers were in

 5   existence when this litigation started.  And the

 6   lawyers and the defendants all -- and the company

 7   made notice multiple times to preserve the towers

 8   before they were taken down and destroyed.

 9            So, in this case, they have notice from

10   lawyers and defendants before they were taken down

11   and destroyed.

12            The fourth category is -- and I can't even

13   read my handwriting there -- but, if we look at

14   Headnote 7, there is the evidence disposed of here

15   was central to the Government's case.

16            As I said -- and I think, as Your Honor

17   pointed out -- rightly so -- we would love to have

18   the walker here, because that would be, probably, our

19   best evidence against Mr. Perez.

20            But right now, central to the Government's

21   case is Mr. Perez' statements, and Mr. Rodriguez'

22   statements -- who is going to come in and say he saw

23   Mr. Perez giving his walker to be made into shanks.

24            The fifth, is that the Government --and

25   this is what Ms. Fox-Young alluded to -- the fifth
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3707

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 182 3708

 1    category there is that the Government offers innocent

 2    explanation for its failure to preserve.  But it is a

 3    little bit more nuanced.  When the Tenth Circuit

 4    looks at authority, it says it teaches that if the

 5    government destroys or facilitates the disposition of

 6    evidence, knowing of its potentially exculpatory

 7    value, then we look to whether there might exist an

 8    innocent explanation.

 9             And so, in this case, the Government didn't

10    know -- still doesn't -- of any potentially

11    exculpatory value.

12             So that fifth category, is once we have

13    notice, once there is potential --

14             THE COURT:  Well, I'll ask you the same

15    question I asked Ms. Fox-Young:  If you were writing

16    my findings of fact, what would you put here?  What

17    is the Government's explanation for how this

18    disappeared?

19             MS. BECK:  The -- I think the evidence

20    would reflect that Warden Mulheron -- and I hope I'm

21    pronouncing his name right -- observed the walker, in

22    the Warden's office.  I don't think he was the Warden

23    at the time.

24             He had photos taken of it, which photos

25    have been entered into evidence twice in this.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3708

1    then we don't know.  His testimony at that point was

2    that he believes that Officer Holguin took possession

3    of the walker.  But I don't think Mr. Holguin

4    testified to that.

5              So, I wish I had a better answer for Your

6    Honor, but the answer is we don't know.

7              We know where it was on March 14, which is

8    in the Warden's office, and then after that, we don't

9    know.  So there is no explanation here.

10             But no explanation may be negligence, at

11   best.  It is certainly not bad faith under the

12   circumstances here.

13             Which gets me into where we started, and

14   then both departed from, which was the spoliation

15   sanction remedial jury instruction.  I think the

16   Court is right that the Tenth Circuit has a higher

17   civil standard.  I also have not seen any departure

18   from this in the criminal versus civil context.

19             But I think Youngblood, incorporating a bad

20   faith component to any sanction, to any due process

21   violation for destruction of evidence, likely, is the

22   same thing for remedial jury instructions.  And I say

23   likely, intentionally, because the case from which --

24   I think Ms. Fox-Young cited to the Court -- said

25   that, if the Government likely destroyed or lost

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3709

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3710

```
 1   evidence that might have had exculpatory -- or excuse
 2   me, that was likely exculpatory -- if the Government
 3   destroyed or lost evidence that was, quote, "likely
 4   exculpatory," that, quote, "might warrant a remedial
 5   instruction."
 6            And whether we looked to bad faith or
 7   negligence, we don't have, number one, that this was
 8   likely exculpatory.  I think that all the evidence
 9   shows that it was likely, if not totally inculpatory.
10   And even if we had that, that case says that it might
11   warrant a jury instruction.
12            In this case, if we look back at the
13   testimony; if we look back at Officer Holguin; if you
14   look back at Palomares -- but particularly Holguin --
15   he said:  Mr. Perez came to me; he said they took the
16   piece out of my walker three to four weeks before
17   that.  And I didn't have any reason not to believe
18   Mr. Perez.
19            And I think there are reasons Mr. Perez was
20   not targeted as one of the participants, number 1.
21            No one contends that he stabbed Mr. Molina.
22            Number 2, no one contends that he
23   manufactured the shanks that were used.
24            And he also -- there may be other reasons
25   that a targeted investigation into a murder by the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3710

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185 3711

1    limited resources of the State don't look to a wide

2    range of conspiracy, as maybe a VICAR or a RICO

3    prosecution by the United States would.

4            And so if -- although, the destruction of

5    the walker, in retrospect, isn't ideal, it's

6    understandable what happened.  And if you could

7    not -- if you suppressed evidence, or even gave a

8    jury instruction because of lost or destroyed

9    inculpatory evidence that may have some exculpatory

10   value, there would be very few, if any, RICO

11   conspiracy prosecutions that happen afterwards.

12   Because, what happens in these types of cases -- and

13   what happened here -- is that, as we get evidence, as

14   we collect evidence, prosecute defendants; those

15   defendants cooperate with the United States, and more

16   evidence is collected -- which largely -- especially

17   in this case -- relies on only statements where

18   evidence is destroyed -- that happens.  And that does

19   not support a basis for suppression of any evidence,

20   or a negative jury instruction.

21           I think -- and now I am wrapping up -- but

22   before I do, I think this motion included suppression

23   of paperwork.  The same principle applies.  Although,

24   in this case, I would say, if you look back at your

25   Harry decision, it also talks about in that case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    evidence that was never in the United States'

2    possession.  It is a much higher bar for exclusion or

3    suppression.

4           And I think it may have been Officer

5    Holguin who testified about his interview of a CI

6    witness who said that Urquizo asked him what to do

7    with the paperwork.  And he said:  "Destroy it."

8           Mr. Urquizo destroyed it.

9           I think that establishes that the paperwork

10   was never in the Government's possession, and so it

11   was not destroyed by the Government.

12          But, again, if you look back at the Harry

13   case, in that case there were text messages that

14   allegedly were possessed by the United States, the

15   Court couldn't come up with any exculpatory valve of

16   those.  I would say the same thing about the

17   paperwork.  I don't see how that could have been

18   exculpatory.

19          In the Harry case, the Court said that

20   those text messages likely came in under the Best

21   Evidence Rule.  And I would submit to the Court that

22   that is the correct analysis here.  When we talk

23   about the paperwork, it was never in the United

24   States' possession.  There certainly wasn't bad faith

25   in its instruction on behalf of the Government.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3712

```
 1    any discussion about that in testimony at trial just
 2    goes back to the Best Evidence Rule and the best
 3    evidence would be those statements about it.
 4              THE COURT:  All right.  Thank you, Mr.
 5    Beck.
 6              All right.  Before I give Ms. Fox-Young the
 7    last word on this motion, anyone want to say anything
 8    on the defense side?
 9              All right.  Ms. Fox-Young.
10              MS. FOX-YOUNG:  Your Honor, first, it
11    simply isn't true that there is a different standard
12    under the due process clause for RICO cases.  I think
13    the Court, of course, knows that.  The federal
14    government picked this case up, and they have to take
15    the evidence as they find it.  And the standard
16    applies:  Trombetta, Youngblood, and all the other
17    case law applies, just as it does to non-RICO cases.
18              With regard to the civil standard that the
19    Court is very familiar with, and the question of
20    notice, I would just -- and I think the Court
21    knows -- is familiar with all these cases, but I
22    would point the court to Baker 2012 Westlaw 12294413,
23    Tenth Circuit case.  That's United States -- I'm
24    sorry, Tenth Circuit case from August 2012.  The
25    Tenth Circuit talks about the duty to preserve
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3713

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 188

```
 1    evidence, which arises at the time that litigation is

 2    imminent, the obligation to preserve evidence when

 3    the party has notice that the evidence is relevant to

 4    litigation, or when a party should have known that

 5    the evidence may be relevant to future litigation.

 6            The Browder case, which Judge Brack handled

 7    in 2016, explores the law on spoliation, and includes

 8    these Tenth Circuit cites.

 9            I think it does inform the notice inquiry.

10    And there is no question, in March of 2014, that the

11    Corrections Department, State Police are on notice,

12    to the extent the civil standard applies, are on

13    notice that this is going to pertain to a criminal

14    case.

15            So the Government's argument that the

16    defense has some burden to inform the Government that

17    they shouldn't destroy evidence, I think, is

18    unavailing.

19            And the Court pointed out that we're well

20    after the fact.  There certainly are cases, and Mr.

21    Beck explored them, where the Government is on actual

22    notice from a defense attorney.  But this is apparent

23    notice.  I think the Court can find that they should

24    have known that litigation was imminent; that a

25    criminal case was imminent.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           I would like to draw the Court's attention

2   to some additional testimony from last week, and the

3   parties have agreed that it's incorporated into this

4   hearing.  Agent Stemo testified about Mario

5   Rodriguez' debrief.  And in short, in summary, Mario

6   Rodriguez described Mr. Perez as scared when he came

7   in, when Mr. Rodriguez came in to the cell, and

8   basically stated that Mr. Perez didn't want to be

9   otherwise involved.  He appeared scared, and he made

10  some statements that he didn't want be hurt.  And

11  then Mario Rodriguez went on at some length about

12  that.

13          And so we'd ask the Court to consider this

14  is not an open-and-shut case, where -- I know that

15  the Court has said the fact that a lot of evidence

16  points to a missing piece from the walker is very

17  significant and material.  Nobody knows where those

18  shanks came from.  And that's what makes this

19  evidence so important.

20          Mr. Perez himself, in the subsequent

21  statements made to an informant that are the subject

22  of a separate suppression motion that the Court will

23  hear, Mr. Perez doesn't know what was ultimately used

24  to kill Javier Molina.  And if it didn't come from

25  his walker, he's innocent.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3715

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 190 of 716

```
 1                And so the Government likes to say because
 2     he made these subsequent statements, that's why he
 3     was charged, we absolutely know what happened.  The
 4     Government's own witnesses don't know what happened,
 5     they don't know where the shanks came from, and that
 6     is precisely why it would be so useful, so critical,
 7     and we argue of an exculpatory nature, to examine the
 8     walker.
 9                The Court will recall that Agent Acee, with
10     regard to those statements -- I'm not going to get
11     into this in any great detail because we are going to
12     argue this on the other suppression motion -- but
13     Agent Acee testified that people do take credit for
14     things that they didn't do.  The Court will hear some
15     of the other reasons for that on our other motion.
16                But, as the Court continues to point to
17     what's relevant, is what was known in 2014 about the
18     importance of this walker.  And I think Mr. Beck
19     conceded that, to some degree.  With all due respect,
20     the Government can say all day that they'd like to
21     have the walker here today; that that would be
22     preferable.  But, in fact, I think they're in a much
23     more advantageous position just being able to rely on
24     grainy photographs, without scale, and to be able to
25     get up and say to the jury and to the Court:  We can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3716

1    demonstrate a perfect fit.  And they have done that

2    in open court.  They have done it in the pleadings.

3         That is precisely what we are asking the

4    Court to suppress and to not allow, because the

5    defense cannot counter that.  We don't have the

6    actual walker to compare.  We have a bunch of murky

7    testimony about what wasn't done.  And people don't

8    know what happened to it.  But when the Government

9    gets up and argues:  It's a perfect fit, we know it

10   came from his walker for all these reasons, that is

11   the linch pin of their case; that is what makes this

12   so material; and that is why I think the Court has to

13   consider, under Bohl and the Bohl factors, that it

14   goes directly to Mr. Perez' defense.

15        And so, if the Court is inclined to make

16   any ruling as to where the Government can and can't

17   go, we would ask the Court to not allow the

18   Government to make statements that there would have

19   been a perfect fit, when there is no evidence to

20   support it, and, of course, to suppress these grainy

21   photographs, other evidence of the walker, and

22   testimony as to any way that anybody can represent

23   that it is the source of the murder weapon in this

24   case.

25        And I have nothing further unless the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3717

```
 1    has any questions.
 2              THE COURT:  I don't.  Thank you,
 3    Ms. Fox-Young.
 4              Well, as I said in the Harry case, under
 5    the two-prong Trombetta test, the Government violates
 6    a defendant's right to due process when it destroys
 7    evidence whose exculpatory significance is apparent
 8    before destruction.  I will give some further thought
 9    to my analogy that I've been using, but I still think
10    that it's useful, that if we had the walker here
11    today, its exculpatory significance would not be
12    apparent even today.  You have to draw some other
13    inferences, and have some other evidence before it's
14    available.  And so it doesn't meet Trombetta
15    standard.  So I think it fails on its exculpatory
16    significance being apparent, and that there is no
17    evidence here that anybody thought it being
18    exculpatory at the time.
19              So I think that we are dealing with a
20    Youngblood situation.  And looking at the test in
21    Bohl that Judge Ebel wrote, again, he repeated the
22    Trombetta standard, but then he added that in
23    Youngblood, Trombetta was extended; that the
24    exculpatory value of the evidence is indeterminate,
25    and all that can be confirmed is that the evidence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3718

1   was potentially useful for the defense, then

2   defendant must show that the Government acted in bad

3   faith in destroying the evidence.  Youngblood tells

4   us why they have this bad faith standard, why it's

5   not just negligence, or why Trombetta is not the

6   standard to use.  The Supreme Court in Youngblood

7   stated that part of the reason for the difference in

8   treatment is found in the observation of Trombetta,

9   that, quote, "Whenever potentially exculpatory

10  evidence is permanently lost, the Court faces the

11  treacherous task of divining the import of materials

12  whose contents are unknown and very often disputed.

13  Part of it stems from our unwillingness to read the

14  fundamental fairness requirement of the due process

15  clause.  And Lisenba versus California, as imposing

16  on police and undifferentiated duty to retain and

17  preserve all material that might be of conceivable

18  evidentiary significance in a particular

19  prosecution."  The Supreme Court continued, "We think

20  that requiring a defendant to show bad faith on the

21  part of the police both limits the extent of the

22  police's obligation to preserve evidence to

23  reasonable bounds, and confines it to that class of

24  cases where the interests of justice most clearly

25  require it; i.e., those cases in which the police

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3719

1    themselves, by their conduct, indicate that the

2    evidence could form a basis for exonerating the

3    defendant.  We, therefore, hold that unless a

4    criminal defendant can show bad faith on the part of

5    the police, failure to preserve potentially useful

6    evidence does not constitute a denial of due process

7    of law."

8            I don't think I'll be able to find from the

9    evidence that's been presented over the last two days

10   any bad faith.  I think the Government has conceded

11   negligence.  I think Ms. Schile's testimony would

12   confirm that.  But that's about as far as it rises.

13   It just doesn't look like it was the most thorough

14   investigation.  And, obviously, the United States has

15   been more thorough in uncovering some evidence at

16   this point for an additional defendant.

17           So I'm inclined to rule that this case does

18   not fall within Trombetta because the evidence, even

19   if it was here, would not be apparently exculpatory.

20   It's a Youngblood situation.  And the defendant has

21   not proven that the state officials at the time acted

22   in bad faith.  As far as the notes, I just don't

23   think they were ever in the possession of the

24   Government, so it's not a situation where the

25   Government can be blamed for not having those notes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        So if this is a motion that the defendant

2   or defendants would like me to take a closer look at,

3   I'd be inclined to do so.  Otherwise, barreling

4   toward trial, that will have to be my ruling is that

5   I'm not going to suppress any evidence as a result of

6   this motion.

7        All right.

8        MS. FOX-YOUNG:  Your Honor?

9        THE COURT:  Yes.

10       MS. FOX-YOUNG:  Just one quick cleanup

11  item.

12       Mr. Beck informed me that -- and I don't

13  want to misstate the Government's position, but I

14  think they're willing to file -- I don't remember the

15  exhibit number, but Mr. Holguin's investigative file

16  under seal.  I think it's Exhibit OO.  And I would

17  just like to get that done before the day is over.

18  And then they're going to go ahead and do the

19  redactions, figure out what's not relevant, and

20  provide it in discovery.  But we want to get that

21  done while we're here today.

22       THE COURT:  All right.  Is that where you

23  are, Mr. Beck?

24       MS. BECK:  That's correct, Your Honor.

25       THE COURT:  All right.  So I will so order.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3721

 1              All right.  Ms. Fox-Young, do you and Mr.

 2    Villa have your next motion to suppress?

 3              MR. VILLA:  Yes, Your Honor.  This is the

 4    motion to suppress concerning the statements

 5    allegedly made by Mr. Perez to Billy Cordova, so I

 6    believe the burden is on the Government to proceed.

 7    And I think they have intended to put on some

 8    witnesses, but I don't want to speak for them.

 9              THE COURT:  Do you wish to make any opening

10    statement?

11              MS. ARMIJO:  Your Honor --

12              MR. VILLA:  I'll hear from Ms. Armijo, but

13    yes, I can give an opening.

14              MS. ARMIJO:  Your Honor, this is the motion

15    that I had talked about this morning with Mr. Roark;

16    that he was going to be our first witness to testify,

17    and probably more to the point on a lot of the

18    issues.  He was supposed to come down yesterday, and

19    did not because of the snow and icy roads.  I asked

20    him to come down this morning, but he did not come

21    down this morning, presumably for the same reasons,

22    for icy roads.  However, he will be here Tuesday.

23              We were trying to possibly get another

24    witness in his place, but didn't realize till the

25    noon hour that that person did not have the same

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3722

1    knowledge that Mr. Roark has.

2              So with that, Billy Cordova -- his attorney

3    is not available till next week.  We would propose to

4    start -- to finish the James hearing at this time,

5    and then go ahead and start the motions to suppress

6    with all of the witnesses next week.

7              THE COURT:  Any thoughts?

8              MR. VILLA:  Your Honor, I think that's

9    fine.  I'll consult with Ms. Fox-Young real quick,

10   and maybe Ms. Bhalla, because so that the Court knows

11   we really want the Court to consider 1294 and 1295,

12   the two motions to suppress together.

13             THE COURT:  All right.

14             MR. VILLA:  But I don't think that's a

15   problem.  That would be fine, Your Honor.

16             THE COURT:  Let me ask Ms. Armijo, are

17   there any witness problems here?  I mean, it's not

18   snowing in Albuquerque.  I had to drive back here.  I

19   didn't know there was any bad weather.  Where is the

20   bad weather?

21             MS. ARMIJO:  Your Honor, I'm telling you

22   what he indicated to me last night, and -- that there

23   were icy roads.  I don't think there is any snow now.

24   I had asked him to drive this morning, and to provide

25   a reason why he did not drive this morning, and I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3723

1   have not gotten that reason.  All I know is that he

2   had last told me that there were icy roads.  And he

3   is in Santa Fe, Your Honor.  He's not in Albuquerque,

4   he is in Santa Fe.

5            THE COURT:  All right.  We'll then take

6   up -- anybody have a problem with that?

7            MS. SIRIGNANO:  Your Honor, I do.  This is

8   Amy Sirignano for the record.  And just for the

9   record, because I'm trying to get along here and move

10  this along as quickly as possible, I live in Santa Fe

11  right now.  And yes, there was some snow yesterday.

12  But I was on a telephonic hearing this morning with

13  Judge Attrep in Santa Fe, and there was no issue at

14  all with the roads this morning.  Last night it was a

15  little bit problematic, in the afternoon.  But, as

16  you know, in Santa Fe, it melts the same day.  We

17  also have a witness here, who spoke to her mother,

18  and the roads were -- this morning -- the roads were

19  fine from Chama to Santa Fe.

20           The only real issue that I have about this,

21  Judge, is that if we proceed to the James hearing, I

22  anticipate that they're going to put on statements

23  regarding my client, Mr. Garcia, and Mr. Baca,

24  because we requested this James hearing.  And I have

25  spent a significant amount of time, me,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3724

 1    Ms. Harbour-Valdez, Ms. Wild, and the Government --

 2    specifically, hours trying to get an order on this.

 3    And I asked the Government in an email if they

 4    subpoenaed their witness.  And I never got a

 5    response.  We have an obligation, if we make an

 6    agreement with opposing counsel, the Court, the

 7    Court's representative, that they're going to have

 8    evidence on the day that we all scheduled it, to make

 9    sure that we know that this isn't going to happen;

10    not, you know, at noon, during the lunch hour, or

11    with the Court at 2:30, but to let us all know, so we

12    can shift gears, if we need to, to take up something

13    else, Your Honor.  And so I just want the Court to

14    know that I'm trying not to make a big deal about

15    this, but the reasons of this change are really

16    suspect.  And I'd like to know if these witnesses

17    were subpoenaed, after we all made this arrangement

18    among the parties to be here today.

19            Thank you, Judge.

20            THE COURT:  Were they under subpoena?

21            MS. ARMIJO:  Mr. Roark was not under

22    subpoena.  But he was going to be here, planning to

23    be here, and we spoke to him about it.  Given his

24    position with the Department of Corrections, I don't

25    think he is trying to avoid being down here.  He is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200726

1   cooperative.  And so we had no reason to believe that

2   he had to be subpoenaed.  I certainly will subpoena

3   him for next week.  But there really was no reason to

4   believe that he would not be here.

5           As to the James hearing, I believe Mr.

6   Castellano was just about finished.  I think he only

7   has one more statement to go over, and then it was

8   just going to be cross-examination.

9           THE COURT:  All right.  Well, I think the

10  best we can do is work on the James hearing.  And I

11  always knew that was going to be the fumes here; that

12  if we got through with all the suppression, we were

13  going to go back to the James hearing.  So 2:30

14  Friday afternoon, let's try to finish up, or make

15  some progress on the James hearing.

16          MR. VILLA:  Your Honor, just to perhaps

17  save us a little bit of work this weekend, the

18  Government and I have -- Ms. Armijo and I have

19  discussed which witnesses they're going to be

20  calling.  It sounds like they are going to call Billy

21  Cordova.  The previous exchanges we had with each

22  other were sort of, if necessary.  If we need to do a

23  writ, we'll do a writ, we'll get him down here

24  ourselves.  But if Ms. Armijo is planning to have him

25  here, then we'll save a little bit of time in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1   preparing that and having the Court prepare a writ.

 2              MS. ARMIJO:  I believe he will be here.

 3   Well, he'll be in Southern New Mexico, yes.

 4              MR. VILLA:  I just want to see if we're off

 5   the hook on getting a writ.  He'll be in court.

 6              MS. ARMIJO:  He will be available to both

 7   parties.

 8              MR. VILLA:  Thank you.  Is that okay,

 9   Judge?

10              THE COURT:  That's fine.  You're going to

11   make him available; is that what you're saying, Ms.

12   Armijo?

13              MS. ARMIJO:  Yes, Your Honor.  We've

14   requested him to be moved.

15              THE COURT:  He'll be in the building.

16              MS. ARMIJO:  We have to make arrangements

17   with the US Marshals to have him in the actual

18   building, but yes.

19              MR. VILLA:  You'll do that, I don't need to

20   prepare the writ?

21              MS. ARMIJO:  Yes.

22              THE COURT:  That's what he is trying to

23   find out, if he needs to prepare any paperwork for me

24   to get him here.

25              MS. ARMIJO:  And I don't want to make any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3727

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202 of 728

```
 1    promises where he is, because obviously his safety is
 2    an issue, and I don't want to say that in open court.
 3              THE COURT:  I understand.  But Mr. Villa
 4    doesn't need to prepare any paperwork for me to order
 5    that he be here.
 6              MS. ARMIJO:  No, you do not.
 7              MR. VILLA:  Thank you.
 8              MS. ARMIJO:  And if there is anybody
 9    else -- I think we were working together last weekend
10    to try and streamline things -- if there is anybody
11    else that he or Ms. Bhalla needs, that we can try to
12    streamline things, and we'll be working over the
13    weekend to do that.
14              MR. VILLA:  Thank you.
15              THE COURT:  All right.  Ms. Bhalla?
16              MS. BHALLA:  I can speak with Ms. Armijo
17    after the hearing.
18              THE COURT:  All right.  Ms. Armijo.
19              MS. ARMIJO:  Your Honor, I believe we just
20    have another housekeeping matter to take care of,
21    that Mr. Beck will take care of, and I'll try to take
22    it up before we start, if there is anything else.
23    But I do know we want to put something on the record.
24              THE COURT:  All right.  Mr. Beck.
25              MS. BECK:  I wish I knew how to do this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3728

 1   better, but unfortunately I don't.  I'm going to work

 2   as best I can here.  It was brought to our attention

 3   today that there, at some point, was a request for

 4   compensation to specific individuals in this case.

 5   And so we disclosed what starts at Bates No. 30709

 6   and goes to Bates number 30714, a list of persons who

 7   the defense asked us for compensation.  At the bottom

 8   there are three names:  Manuel Armijo, Richard

 9   Gallegos, and Santos Gonzalez, for whom there isn't a

10   CHS number, and for whom there isn't a code name, no

11   payments provided.  That indicates that they are not

12   cooperators in this case.  Their names -- and the

13   defense specifically requested their compensation,

14   and so we answered the defendants' request.  But we

15   don't want to create any impression that these folks

16   are cooperating with the Government for obvious

17   reasons.  So we just wanted to make that perfectly

18   clear, that it was brought up to us that there may be

19   some confusion in this document.  But that's why they

20   don't have CHS numbers.  They're not signed up with

21   the FBI.  Thank you.  I misspoke.  So Manuel Armijo

22   and Richard Gallegos do not have CHS numbers, and

23   Santos Gonzalez is not cooperating in any capacity.

24   I should have made that clear.

25                THE COURT:  All right.  Directing your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3729

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204

1  questions to the Court, any defense lawyers have

2  questions you want me to ask Mr. Beck about what he

3  just said?

4          All right.  Mr. Lowry?

5          MR. LOWRY:  Your Honor, only to the sense

6  that in the Brady-Giglio materials that we talked

7  about at the last hearing.  I appreciate the

8  Government disclosing the total amounts.  But what we

9  had really anticipated seeing are the individual

10  receipts, individualized payments that were made.

11  They're important to us.  As we recall from our

12  motion to compel, we had asked information related to

13  Grace Duran.  We believe that some of these receipts

14  were probably signed by Ms. Duran on Eric Duran's

15  behalf.  And understanding the timing and the amount

16  and the nature of individualized payments would be

17  very critical for us to understand.  And we haven't

18  been able to -- I've asked opposing counsel for that.

19  I don't think we've had explicit agreement to get

20  that material to date.  And I would just like the

21  Court's assistance here in making sure that we get

22  that in as timely a manner as possible.  Thank you.

23          MS. ARMIJO:  They were turned over as to

24  Mr. Duran, which is what he was requesting.

25  Typically, they were turned over today to our office

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to go out in the next set of discovery.  But we do

2    have them and we will provide them.

3            THE COURT:  Do you know when that next set

4    is going out?

5            MS. ARMIJO:  We can probably get a

6    condensed set out possibly Monday to Mr. Aoki.

7            THE COURT:  All right.  Does that work,

8    then, for you, Mr. Lowry?

9            MR. LOWRY:  In the bigger picture it does,

10   Your Honor, but if I remember correctly from

11   yesterday, I think I owe the Court a brief.  And if

12   the United States would be so kind as to send me the

13   confidential human source or confidential informant

14   contracts to assist me with my brief writing over the

15   weekend, I'd greatly I appreciate it, Your Honor.

16           THE COURT:  Can that be done?

17           MS. ARMIJO:  I don't know off the top of my

18   head -- because I don't have them here -- if it has

19   information that needs to be redacted.  I know that

20   our office requires us to do it over USAFX, which I

21   don't know how to do.  And if I can figure out a way

22   to do it, I will.

23           THE COURT:  Can you just delay filing your

24   brief, Mr. Lowry?

25           MR. LOWRY:  You just read my mind, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206 3732

1    Honor.

2              THE COURT:  All right.  So do you want to

3    just do that then?

4              MR. LOWRY:  That's fine.

5              THE COURT:  Because it sounds like you're

6    going to get this information maybe as early as

7    Monday.

8              All right.  Mr. Castellano?

9              MR. CASTELLANO:  Yes, Your Honor.  We will

10   re-call Special Agent Acee.

11             THE COURT:  Mr. Acee, I'll remind you

12   you're still under oath for the purposes of the James

13   hearing.

14             Mr. Castellano, if you wish to continue

15   your direct examination of Mr. Acee.

16             MR. CASTELLANO:  Yes, sir, thank you.

17                       BRYAN ACEE,

18      after having been previously duly sworn under oath

19       was questioned and testified further as follows:

20                  DIRECT EXAMINATION

21   BY MR. CASTELLANO:

22        Q.   Just to get us up to speed, Agent Acee,

23   when we were here last time, we were discussing

24   Government's Exhibit's 26, and that's Christopher

25   Garcia Bates stamp 1085.  Do you recall that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I do.

 2        Q.   And do you remember what the nature of this

 3   conversation or interaction dealt with?

 4        A.   Yes.  This conversation was between Mario

 5   Montoya, the confidential human source, and Chris

 6   Garcia.  They are at Garcia's house as this is taking

 7   place and being recorded.

 8        Q.   What was the purpose of the meeting?

 9        A.   Mario Montoya went to Garcia's house to

10   pick up firearms; in this case just one, to be used

11   on the hit on Gregg Marcantel.

12        Q.   Okay.  I'm going to go ahead -- and we've

13   covered some other parts of the conversation, so I'll

14   move to Bates stamp 1095 on that transcript.  I'll

15   start here with the highlighted portion, where the

16   CHS says, "I'm going to put this away and Imma come

17   back."  Can you tell us what's going on there?

18        A.   The CHS has received a .22 caliber pistol

19   from Garcia, and he's telling him that he's going to

20   go put it away, and that he'll come back to the house

21   afterward.

22        Q.   Okay.  Then tell us about the rest of the

23   conversation.

24        A.   Mr. Garcia brings up "Chuco," who is Mandel

25   Parker.  Do you want me to read from this, or just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3733

 1   tell you what I know of it?

 2        Q.   Yes, tell us what the rest of the

 3   conversation means in the context of this page.

 4        A.   Sure.  So Mr. Garcia says, "Then with

 5   'Chuco' too he has to be, like you said, right after

 6   we take him, if he looks" -- unintelligible.  Both

 7   are speaking at the same time, there is overlap --

 8   "take it all."  Garcia says, "At all just right

 9   there.  Even if he has to take him to the fucking

10   thing and get him and put the thing on him.  The

11   weapon on him, and leave it on, leave it there.  A la

12   verga.  It's fucked up, but if he -- if he right away

13   gets out and says, What's up fool."

14             Montoya says, "I'm gonna say nothing.  He's

15   not gonna say nothing.  You're gonna get down and do

16   it and that's it.  I mean" -- unintelligible -- "do

17   it.  I'm going to do it."

18             Garcia says, "Yeah."

19             Montoya says, "I'll do it and then I'll do

20   him right after, know what I mean.  I already, I

21   already pretty much got" -- unintelligible -- "good."

22        Q.   Let me stop there.  What's going on in the

23   context of that conversation?

24        A.   Garcia is expressing some doubts about

25   "Chuco," Mandel Parker, who had previously agreed to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3734

1    help Mario Montoya kill Marcantel and Santistevan.

2    And what they're discussing is "Chuco," or Mandel

3    Parker, might be a weak link.  If he gets picked up,

4    he might tell.  So that they're discussing killing

5    Parker, and leaving all the evidence, to include the

6    murder weapon, with Parker.

7         Q.   So was it your understanding from the

8    operation that Mr. Baca, Mr. Garcia, and Mr. Parker

9    had agreed to kill Secretary Marcantel?

10        A.   Yes.

11        Q.   Okay.  I'm turning to the next page.  It's

12   Bates stamped 1096.  And I want to focus on the last

13   statement highlighted on the page, which is

14   Mr. Garcia's.

15        A.   Garcia says, "Give him a hotshot, you know,

16   whatever.  But hey, just tell him, yeah, fucking a,

17   my only chance, let me put in some jale for you.  I

18   told him."

19        Q.   What was your understanding of the

20   discussion about the hotshot?

21        A.   Garcia is suggesting to the CHS, Mario

22   Montoya, that he give Mandel Parker a hotshot, which

23   is a fatal dose of heroin.

24             MR. CASTELLANO:  Your Honor, just so the

25   Court knows, for the record, the next statements are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3735

1    attributable to Rudy Perez, and so I'll note for the

2    record that these are the subject of the motion to

3    suppress, this set here.

4                  THE COURT:  Okay.

5                  MR. CASTELLANO:  I'm going to bring them in

6    to the Court's attention, like we did last week.  So

7    last week the Court heard evidence related to

8    Government's Exhibit 16, so I won't cover that today.

9    I believe that was already covered.  Okay.  I'm

10   turning to the record.  This is DeLeon Bates stamp

11   20540.  And for the record, this is a marked-up

12   transcript.  The transcripts, once introduced, will

13   be clean transcripts.  But this is for ease of

14   focusing the testimony.

15        Q.    Okay.  I want to turn attention to a

16   statement here by Rudy Perez referring to "Crocodile"

17   answering for it and BB answering for it.  Do you see

18   that portion?

19        A.    Yes.

20        Q.    Can you tell us basically what the

21   statement is and who was involved in the statement?

22        A.    Do you want me to read it first, or just --

23        Q.    Go ahead and read it, and then put it into

24   context, please.

25        A.    Rudy Perez says, "Yeah, and you know, check

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3736

1    this out, a, and it's like what was discussed.

2    'Crocodile' about has to answer for it.  BB has to

3    answer for it, um, I think there is four or five that

4    have to answer.  Why it was never done the first the

5    paperwork got sent down."

6        Q.   Do you know what that is a discussion

7    about?

8        A.   Yes.

9        Q.   What is it?

10       A.   Mr. Perez is talking about the prior times

11   the paperwork for Javier Molina was sent down to

12   Southern.  "Crocodile" is an SNM member who was in

13   charge of the pod; I don't remember his name.  BB was

14   another SNM member in charge of the pod down there.

15   That's Javier Rubio.  And they're going to have to

16   answer for the fact that paperwork went down and

17   Molina wasn't hit.

18       Q.   And who is that statement attributed to?

19   I'm going to draw your attention to the next portion

20   there.

21       A.   Mr. Perez is saying, "I, I heard 'Pup' say

22   they have to answer for that no matter how close I am

23   to them."

24       Q.   Okay.  And so what type of conspiracy are

25   we talking about when it comes to the paperwork and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212

```
 1   "Pup," or Mr. Baca saying people have to be
 2   responsible?
 3        A.   There was an expectation that when the
 4   paperwork was produced, the other members of the gang
 5   would act on it.  They didn't.  And in this statement
 6   Mr. Perez is saying that he heard from "Pup," Anthony
 7   Baca, that they would have to answer for it.
 8        Q.   And is that because from the investigation
 9   you've learned that the paperwork went down
10   previously, but the murder was not committed?
11        A.   Yes.
12        Q.   The next statement is from DeLeon Bates
13   stamp 20544.  I'm going to direct your attention now
14   to more discussion about paperwork.  Who is making
15   the statement this time?
16        A.   Mr. Perez.
17        Q.   And what is the statement as it relates to
18   paperwork?
19        A.   Within that statement he's saying, quote,
20   "He's got the paperwork a year before.  That's when
21   he told me, hey, we got it.  Yes, but we're not gonna
22   show it.  So you just make sure you show some love,
23   no?"
24        Q.   Okay.  And then continue.
25        A.   The CHS says, "Orale, so hey, that's -- so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3738

```
 1    that's why -- so that's why that fool Javi, Javier

 2    was fucking always sending coffee to him because he

 3    knew he was a chaffa fucker."

 4           Perez says, "He was.  He was covering his

 5    ass, dog."

 6       Q.   Can you tell the Court whether that was a

 7    further discussion of the paperwork that was

 8    discussed just a minute ago in your testimony?

 9       A.   Yes, I believe it is.

10       Q.   And for purposes of context, are you

11    familiar with the word "chaffa" that's on that page?

12       A.   Yes.

13       Q.   What does that generally refer to?

14       A.   They're no good.

15       Q.   I'm drawing your attention to DeLeon Bates

16    stamp 20555.  And I want to talk to you once again

17    about discussions about paperwork.

18       A.   I'll start where you pointed, or --

19       Q.   Yes.

20       A.   So the CHS is asking, "So that's what it

21    was, it was the paperwork on Jesse Sosa."

22           Mr. Perez responds, "That, that, that, that

23    was part of it, and then Archie's boy was the other

24    half."

25       Q.   And I'll show you right here.  Tell us what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Mr. Perez says about his discussions with others.
 2         A.   Toward the bottom of his statement, Mr.
 3    Perez says, "I told them vatos not like" --
 4    unintelligible -- "think about that, and they
 5    basically told me, you know what, a this is going to
 6    happen regardless, just stay out of it."
 7         Q.   Now, what's your understanding of the
 8    context of this statement?  Stay out of what?
 9         A.   The Molina hit.
10         Q.   And was it your understanding from the
11    investigation that there was a conspiracy to murder
12    Javier Molina?
13         A.   Yes.
14         Q.   And once again, DeLeon 20557.  I'm going to
15    direct your attention here to a statement by Mr.
16    Perez.
17         A.   Mr. Perez is saying, "You feel me?  Like I
18    say, they told me to shut up and just stay out of it,
19    and they did what they wanted to do.  Then later on,
20    suicide mission was there."
21         Q.   And what's the discussion about the pieces?
22         A.   CHS asked Mr. Perez, "So why did you give
23    them pieces, carnal?"
24         Q.   Okay.  Continue on down the page with the
25    discussion, and tell us who was making each statement
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3740

```
 1    here.

 2         A.    They continue talking about the pieces, and

 3    Mr. Perez says, "I just, I just get out of it, let

 4    them do their own thing.  I was nobody, I just, fuck

 5    it."

 6              The source says, "Yeah, but they fucking

 7    got them" -- unintelligible -- "from your fucking,

 8    from your walker, carnal.  Could have gotten you

 9    caught up, you know what I'm saying?"

10              Mr. Perez says, "Oh, it did, it did.  Look

11    where I'm at."

12         Q.    Let me take you down the page here to Mr.

13    Perez' explanation.

14         A.    Mr. Perez says, "I just got out of the

15    hold" -- I believe that's a mistake; it should be

16    hole -- "I was real sick.  So for me to actually

17    participate in doing some dirt" -- unintelligible --

18    "physically I wasn't able to.  But we all have to do

19    our part."

20         Q.    Continue with that statement, please.

21         A.    "But we all have to do our part, you know

22    what I mean?  One way or another, homes, everybody

23    has to put their part.  Do you feel me?"

24         Q.    Now, taking you back to the pieces.  What

25    is that a discussion of?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    The shanks.

2        Q.    From where?

3        A.    Mr. Perez' walker.

4        Q.    And can you put it in the context of him

5    saying he has to do his part?

6        A.    He just got done describing that he got out

7    of the hole.  He was sick.  He physically wasn't able

8    to do his part.  But he was, by providing the metal

9    that were fashioned into shanks to do the hit.

10       Q.    Turning your attention to DeLeon Bates

11   stamp 20558, and I want to draw your attention to the

12   top of the page here, where it says, "The old man was

13   pissed."  Can you tell us who made that statement?

14       A.    Mr. Perez made that statement.

15       Q.    Okay.  Please continue reading the

16   statement and we'll put it into context.

17       A.    "The old man was pissed, bro, he was like,

18   he, he, he, he was upset with them, the other fools

19   over there.  They -- why didn't they handle it a year

20   sooner when the" -- unintelligible -- "took the

21   paperwork over there.  Well you send the paperwork up

22   there."

23       Q.    Okay, continue.

24       A.    CHS asks "Who?"

25             Mr. Perez says, "Who?"

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3742

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 217

```
 1              CHS says, "Spider."

 2              Mr. Perez says, "Yeah."

 3       Q.    Continue.

 4       A.    Source says, "Yeah, I already know."

 5              Mr. Perez:  "And, and, and see, that was

 6   something that he was going to have to handle when he

 7   got over there, a."

 8              CHS asks:  "Who, 'Spider'?"

 9              Mr. Perez says, "Yup, they told him you

10   send the fucking" -- unintelligible -- "over there

11   and find out why the fuck it wasn't taken care of."

12              The CHS asked:  "Is that what 'Pup' told

13   him?"

14              Mr. Perez says:  "Huh?"

15              CHS asked:  "Is that what 'Pup' told him?"

16              Mr. Perez says:  "I know somebody told him.

17   I don't know who exactly but I knew, I knew" --

18              The CHS asks:  "What did 'Pup' say, because

19   what did 'Pup' say because the" -- unintelligible --

20   "wasn't done earlier?"

21              Mr. Perez responds:  "He, he didn't like

22   it."

23       Q.    Let me stop you there.  First of all, there

24   is mention of "Spider" here.  Do you know who

25   "Spider" is?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3744

1      A.    That's David Calbert.

2      Q.    And do you know what "Spider"'s role was in

3  the Molina murder?

4      A.    Mr. Calbert passed the paperwork, in this

5  case, two pages from an LCPD police report, that

6  indicated Molina gave a statement to the police and

7  cooperated.  Mr. Calbert took that from the Level 6

8  at PNM to the Level 5 at PNM and gave it to Lupe

9  Urquizo, "Marijuano."

10      Q.    What was the purpose of moving the

11  paperwork?

12      A.    Urquizo and Varela -- Mauricio Varela --

13  were scheduled to be transported down to the Southern

14  New Mexico Correctional Facility.  So they were

15  passing paperwork to eventually make it down to

16  Southern, where Molina was.

17      Q.    For what purpose?

18      A.    To provide the paperwork so Molina could be

19  hit.

20      Q.    So when there is a discussion about the

21  "old man" on top, and then "Pup," who is that

22  referring to?

23      A.    One and the same, Mr. Baca.

24      Q.    So is it an indication that Mr. Baca was

25  not happy that the hit had not been taken care of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3744

1    earlier?

2        A.   Yes.

3            MR. CASTELLANO:  Your Honor, I pass the

4    witness.

5            THE COURT:  All right.  Thank you, Mr.

6    Castellano.  Let's do this:  Let's take our break

7    before we start cross-examination.  I think it would

8    be a good time for us to do that.  So we'll be in

9    recess for about 15 minutes.

10           (The Court stood in recess.)

11           THE COURT:  All right.  Looks like

12   everybody has counsel.  So let's go back on the

13   record.  Look around, make sure everybody has got

14   counsel.

15           I understand that Ms. Fox-Young has left,

16   and she's now going to join us by phone.  Are you

17   there, Ms. Fox-Young?  Not yet.

18           All right.  Ms. Schile has left us.

19           And Ms. Jacks, you're going to leave at

20   4:00; is that correct?

21           MS. JACKS:  I may.  We'll see how things

22   are going.

23           THE COURT:  All right.  Be safe.

24           There has been some inquiries about Monday

25   or Tuesday.  My understanding is that we're starting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3745

1    at 1:00 o'clock on Monday.  So I think if you look at

2    CM/ECF, I think it shows that.  So that's my

3    understanding.  Ms. Wild had a death in her family

4    this morning, so she's en route to north Texas now.

5    She's a little bit out of pocket.  But CM/ECF says

6    1:00.  I thought it was 1:30.  But it looks like it's

7    1:00.  But I'm planning on being here on Monday, and

8    I'd like for you to join me.

9              MR. BLACKBURN:  Is that an invitation?

10             THE COURT:  No, that's a court order.  I

11   don't want there to be an ambiguity.  It's a court

12   order.

13             MS. ARMIJO:  And Your Honor, Ms. Wild knew

14   this when we scheduled that, I will be in trial.  But

15   Mr. Castellano and Mr. Beck will be sure to carry on

16   without me.

17             THE COURT:  Okay.  Mr. Acee, you're back on

18   the stand.  I remind you you're still under oath.

19             It looked like Ms. Fox-Young was going to

20   be the one to get up, and she's gone.  So who is

21   going to lead off?

22             MR. VILLA:  Your Honor, it was actually

23   going to be me for my team, but I'm happy to defer to

24   my co-counsel to start first, Ms. Jacks.

25             THE COURT:  Do you want to go first,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3746

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221

```
 1    Ms. Jacks?
 2              MS. JACKS:  I would like to, if I might.
 3              THE COURT:  All right.  Ms. Jacks.
 4              MS. JACKS:  And I won't be long.
 5                        EXAMINATION
 6    BY MS. JACKS:
 7         Q.   Good afternoon, Agent Acee.
 8         A.   Good afternoon.
 9         Q.   So last week you testified about some
10    conversations or some statements made by Mr. Baca and
11    Mr. Garcia that were the subject of recordings;
12    correct?
13         A.   Yes.
14         Q.   And then you added to that this afternoon
15    with one additional or some additional recorded
16    statements by Mr. Garcia; is that right?
17         A.   Yes.
18         Q.   And those statements are being offered, I
19    guess as -- or being proffered as coconspirator
20    statements relating to the conspiracy to kill
21    Corrections Secretary Marcantel and STIU Chief
22    Santistevan?
23         A.   Yes.
24         Q.   Mr. Sanchez wasn't involved in any
25    conversations regarding those crimes, was he?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3747

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 222

```
 1          A.   He was not.

 2          Q.   In fact, he's not charged with those

 3    crimes, is he?

 4          A.   No.

 5          Q.   So if there is a conspiracy to kill

 6    Marcantel or Santistevan, Mr. Sanchez is not a part

 7    of it, not even alleged to be a part of it?

 8          A.   Not that I'm aware of.

 9          Q.   Now, I want to ask you a few questions

10    about the statements you testified to this afternoon

11    regarding Rudy Perez.

12          A.   Okay.

13          Q.   And you referenced a transcript which is

14    Government's Exhibit 16.  Is that a transcript of a

15    recording?

16          A.   Yes.

17          Q.   And it's a recording that was made by who?

18          A.   Billy Cordova.

19          Q.   And Billy Cordova is one of the

20    Government's cooperators in this case?

21          A.   He is.

22          Q.   And do you know -- how did he make that

23    recording?

24          A.   With what I'll call a body wire, or I think

25    in the past in these hearings we've been calling them
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223

 1    an ELSUR device, which stands for electronic

 2    surveillance.

 3         Q.   Okay.  So some sort of electronic

 4    surveillance device?

 5         A.   Yes.

 6         Q.   And where was Mr. Cordova and Mr. Perez at

 7    the time those recordings were made?

 8         A.   They were at the Penitentiary of New

 9    Mexico.  And I believe they were at the Level 6 or

10    the north facility.

11         Q.   And were they housed in adjacent cells?

12         A.   Yes.

13         Q.   What was the date of the statements that

14    you testified about this afternoon?

15         A.   I don't have the exact date, but it took

16    place in February of 2016.

17         Q.   So almost two full years after the homicide

18    of Mr. Molina?

19         A.   Yes.

20         Q.   And with respect to the statements that

21    Rudy Perez made regarding paperwork, do you know

22    whether that was something that Rudy Perez had

23    personal knowledge of, or whether he was relaying

24    something that was told to him by someone else?

25         A.   My interpretation of listening to the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                            1-800-669-9492
                                                     e-mail: info@litsupport.com



DNM 3749

1    conversation and reading the transcripts is that he

2    had quite a bit of knowledge about it.  I'm not

3    sure --

4          Q.   Well, my question was:  Do you know?  It

5    wasn't what your interpretation was.

6          A.   No.

7          Q.   You don't know?

8          A.   I don't know.

9          Q.   And you said you don't know the date of the

10   recordings.  Is there a reason that you don't know

11   the date?

12         A.   Yes.

13         Q.   What is that reason?

14         A.   The informant didn't state the date at the

15   beginning or the end of the recording.

16         Q.   Okay.  Well, he had some high-tech FBI

17   recording device, didn't he?

18         A.   That's your opinion.  I don't consider it

19   high-tech.

20         Q.   So it's an unreliable recording device?

21         A.   It's reliable, but I wouldn't call it

22   high-tech.

23         Q.   Is there a reason the FBI recording device

24   doesn't record the date of conversations that are

25   being made by its informants?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3750

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225

```
 1          A.    That's not my area of expertise.

 2          Q.    How are you sure it was February 2016?

 3          A.    I met Billy Cordova just a few weeks before

 4    that.  He agreed to go up there.  We transferred him;

 5    gave him the device.  And that was in February.  We

 6    collected it before the month was over.

 7          Q.    Okay.  So you personally provided him with

 8    a device?

 9          A.    No, because I can't walk into the facility

10    freely.  But I set in motion him receiving a device.

11          Q.    And did you check out the device?

12          A.    Me or one of the agents who works with me

13    did.

14          Q.    Was it you or somebody else?

15          A.    I can't tell you.  I don't know.  We'd have

16    to look at the logs.

17          Q.    And did you collect the device?

18          A.    No, not from the informant, because, again,

19    I can't get in the facility to do that.  So I would

20    have collected by way of Corrections.

21          Q.    So the way the device was transferred to

22    Mr. Cordova is it went from you or some other agent

23    to a New Mexico Department of Corrections official of

24    some sort?

25          A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3751

```
 1        Q.   And he or she provided the device to Mr.

 2   Cordova?

 3        A.   Yes.

 4        Q.   And then, that or some other corrections

 5   official, collected it from Mr. Cordova?

 6        A.   Correct.

 7        Q.   And then gave it back to somebody in the

 8   FBI?

 9        A.   Yes.

10        Q.   And all of that happened in February of

11   2016?

12        A.   It did.

13        Q.   Which is how you know the conversations

14   recorded on the device had to be sometime in

15   February --

16        A.   Yes.

17        Q.   -- 2016?

18             When you spoke with Mr. Cordova about

19   wearing the electronic surveillance device or using

20   the electronic surveillance device, was he at a

21   different institution?

22        A.   Yes.

23        Q.   And once he was transferred to PNM, did you

24   speak to him any further?

25             MR. CASTELLANO:  Objection, relevance.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Tie it to the James hearing.
 2       Q.   Let me go -- once he was transferred to
 3   PNM, did you go to PNM and personally speak with him
 4   about the device or the conversations he was
 5   recording on it?
 6       A.   Not in February 2016, no.
 7       Q.   Prior to sending Mr. Cordova, or having Mr.
 8   Cordova transferred up to PNM did you -- you or
 9   anybody else in your presence -- provide him with
10   instructions on how to operate the device?
11       A.   Yes.
12       Q.   And was it you?
13       A.   I believe it was me.
14       Q.   What did you tell him?
15       A.   "Here's how you turn it on.  Here's how
16   turn it off."
17       Q.   Did you tell him anything else?
18       A.   Yes.  I explained to him that -- I pointed
19   out that it's a small device; consequently, it has
20   small batteries.  And that I didn't want people's
21   life stories.  I just wanted pertinent information,
22   so to keep it relevant to what we're looking for.  He
23   can't just turn it on and let it run for days.
24       Q.   I'm assuming -- implicit in that comment is
25   you told him what kind of information you wanted him
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3753

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228

1    to go get, right?

2         A.   Yes.

3         Q.   And specifically what did you tell him the

4    kind of information that you were sending him up

5    there to go get?

6         A.   Information about the Javier Molina murder.

7         Q.   And did you specifically tell him you

8    wanted statements that incriminated people that he

9    was housed next to?

10        A.   No, I don't talk like that.  I told him I

11   wanted information about Javier Molina's murder.  And

12   he knew he'd be next to Rudy Perez.

13        Q.   You told him that:  Once you go up to PNM,

14   you'll be housed next to Mr. Perez?

15        A.   Yes.

16        Q.   Was Mr. Cordova -- I'm sorry, did you

17   discuss with Mr. Cordova what you believe to have

18   happened with respect to the homicide of Molina?

19        A.   No.

20        Q.   Did Mr. Cordova have access to any

21   discovery materials?

22        A.   No.

23        Q.   And what sort of -- I mean, Mr. Cordova

24   obviously isn't somebody that does something for

25   nothing.  What was he expecting in exchange for going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3754

```
 1    and getting these statements?

 2              MR. CASTELLANO:  Objection, relevance.

 3              THE COURT:  Tie it to the James hearing.

 4    What's the relevance of it?

 5              MS. JACKS:  I'll withdraw the question for

 6    the time being.

 7              THE COURT:  Okay.

 8              MS. JACKS:  I have nothing further at this

 9    time.

10              THE COURT:  All right.  Thank you, Ms.

11    Jacks.

12              Do you want to go next, Mr. Villa?

13              MR. VILLA:  I'm happy to, unless one of my

14    colleagues wants to.

15              THE COURT:  I think they're deferring to

16    you, Mr. Villa.

17              MR. VILLA:  And, Your Honor, Mr. Castellano

18    was relying on some transcripts that he showed to

19    Agent Acee for refreshing his recollection, I

20    imagine, that he read to the Court.  I was just

21    wondering if I can use those same materials.

22              THE COURT:  Any objection, Mr. Castellano?

23              MR. CASTELLANO:  Not at all, Your Honor.

24    All I would say, if we can just keep them in this

25    order, because these will be exhibits for the next
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3755

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 230

 1   hearing.  But as long as I get them back, there is no

 2   problem with anyone using them.

 3              THE COURT:  Can you keep them in order, Mr.

 4   Villa?

 5              MR. VILLA:  Yes, Your Honor.  It looks like

 6   it's already -- has it already been admitted?

 7              MR. CASTELLANO:  Your Honor, one of these

 8   is Exhibit 16, which was already admitted in one of

 9   the previous hearings, but the other ones have not

10   been.  I have exhibit stickers on them without

11   numbers.  So 16 has been admitted, but the rest have

12   not, so I identified them by the Bates number.

13              THE COURT:  Thank you, Mr. Castellano.

14              Mr. Villa.

15                     EXAMINATION

16   BY MR. VILLA:

17        Q.   Good afternoon, Agent Acee.

18        A.   Good afternoon.

19        Q.   So with respect to your handling of Mr.

20   Cordova, you told him that it was a small device and

21   so it had a small battery life; correct?

22        A.   Yes.

23        Q.   How long was the battery life?

24        A.   I don't know.  I mean, the techs give us a

25   guess, but they're not reliable.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3756

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3757

 1      Q.   We're talking about a digital recording

 2   device, right?

 3      A.   Yes.

 4      Q.   You called it a body wire, but it's not a

 5   wire that he wears on his body, right?

 6      A.   It is not.

 7      Q.   It's like a little recording device,

 8   rectangular in shape?

 9      A.   Yes.

10      Q.   Something like I could pick up at Best Buy?

11      A.   I don't think so.

12      Q.   No?

13      A.   I haven't seen one there.

14      Q.   Produced at the Department of Justice, or

15   something you can get commercially?

16         MR. CASTELLANO:   Objection, relevance.

17   This is going to the subject of the motion to

18   suppress.  I would just ask that we focus on

19   statements.

20         MR. VILLA:   We can deal with it next week,

21   Judge.

22         THE COURT:   All right.

23      Q.   You said that you knew he'd be next to Mr.

24   Perez.  How did you know that?

25      A.   I knew Mr. Perez had some kind of sanction

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3757

1    or disciplinary action, and he was being sent to

2    Level 6 to do some amount of time there.  And our

3    strategy was to put what I'll call wired informants

4    next to Mr. Perez and Mr. Herrera, to see if we could

5    collect information about the Molina homicide.

6             So my conversations with Corrections,

7    trying to figure out how to make that happen --

8    because I'm not able to do that without them -- I

9    learned that Mr. Perez was due to be sent up there.

10   And so then we put in motion those two inmates being

11   next to each other.  The mechanics of that I rely

12   largely on the Corrections to tell me when that could

13   happen.

14        Q.   Because they're the ones that put people

15   where they're supposed to go in their cells, or

16   housing plans, that sort of thing.

17        A.   Yeah.  They move the bodies.

18        Q.   So getting back to the question about these

19   statements that Mr. Perez made, and whether he had

20   personal knowledge or whether he was telling Mr.

21   Cordova things that he, himself, had learned,

22   second-, or perhaps thirdhand, did you have any

23   information before putting Mr. Cordova next to Mr.

24   Perez, or helping to arrange that, that Mr. Perez did

25   have this knowledge firsthand or secondhand or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3758

1    thirdhand?

2        A.   I believed he did.  But I wanted evidence

3    of it.

4        Q.   So you didn't have -- well, what was your

5    belief based on?

6        A.   My review of the old -- what I'll call "the

7    old SNM files," I inherited those as part of this

8    case, and information that I had learned from

9    cooperators.

10       Q.   Did any of that include statements that Mr.

11   Perez himself had made either in a document you

12   reviewed or to a cooperator?

13       A.   I remember reviewing his statements that he

14   made to either detectives or STIU.

15            As far as with regard to cooperators, I

16   couldn't tell you which cooperators; there is too

17   many of them.  But I believe that I did have

18   information from cooperators.  But I wanted

19   recordings.

20       Q.   Okay.  And the information that you had

21   from cooperators, was that firsthand information from

22   Mr. Perez, so Mr. Perez saying:  I did X, or I did Y?

23       A.   No, I think it's more of guys relating what

24   they heard.  I can't say that it was firsthand.

25       Q.   And the statements that Mr. Perez made,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3759

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3760

 1   that you reviewed to STIU, or to detectives, those

 2   were the statements made in the aftermath of the

 3   Molina homicide?

 4       A.   Yes, sir.

 5       Q.   Statements that we've examined for the

 6   previous motion?

 7       A.   Yes.

 8       Q.   So it's fair to say that you suspected

 9   perhaps he had a role in providing pieces from his

10   walker?

11       A.   At best, I suspected.

12       Q.   And you told Mr. Cordova that's what you

13   wanted him to talk to Mr. Perez about?

14       A.   Yes.  I don't know that I mentioned the

15   walker.  I just said "the Molina homicide."

16       Q.   So, for instance -- let me jump to the

17   right page here.  I believe it's 20557.

18       A.   I have copies, too.  Do you want me to go

19   to that?

20       Q.   Let's see here.  No, I'm sorry.  I'll get

21   it for you.  So there is the part where Mr. Cordova

22   and Mr. Perez are talking about the pieces coming

23   from his walker; correct?

24       A.   Yes.

25       Q.   And Mr. Cordova asks -- hang on just a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3760

 1    second here.  Well, right here where I'm -- wrong

 2    one.  Mr. Cordova asks, "Yeah, and then yeah they

 3    used those as the fierros, you know what I'm saying?"

 4            A fierro is a shank; correct?

 5    A.   Yes.

 6    Q.   He's referring to the pieces which were

 7    brought up here -- I just pointed to it earlier --

 8    from the walker, right?

 9    A.   Yes.

10    Q.   So do you know how Mr. Cordova had the

11    knowledge, or the allegation anyway that Mr. Perez

12    gave pieces, or pieces were taken from his walker to

13    make shanks?

14    A.   Are you asking for my opinion, or --

15    Q.   No, I'm asking if you know how Mr. Cordova

16    knew that?

17    A.   I think I do.

18    Q.   Okay.  Go ahead.

19    A.   Most of the guys in the S know quite a bit

20    about that hit.

21    Q.   About the Molina hit?

22    A.   Yes.

23    Q.   And just from talking to each other?

24    A.   Yes.

25    Q.   And you know that from talking to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3761

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3762

```
 1   cooperating witnesses?

 2        A.   Yes.  And I mean, I interview a lot of SNM

 3   guys, and not all of them cooperate.  They'll talk to

 4   me but, they don't want to cooperate.  But I know it

 5   from talking to probably close to 100 members or

 6   associates, former members.

 7        Q.   So a lot of those guys know about the

 8   Molina murder, right?

 9        A.   Guys that were in the feds at the time,

10   yes; weren't even in the state know about it.

11        Q.   Weren't even in the blue pod?

12        A.   Correct.

13        Q.   Word travels fast?

14        A.   It's been a few years.

15        Q.   So this information that Mr. Cordova knew

16   about the Molina homicide or the source of the shanks

17   for the Molina homicide, you didn't provide that to

18   Mr. Cordova?

19        A.   No.

20        Q.   He knew it on his own, before he gave

21   these -- or had these recordings made of Mr. Perez?

22        A.   Yes.  In fact, when I first met Mr.

23   Cordova, he related a lot of details of that homicide

24   to me.  And I didn't expect that when I met him.

25        Q.   So you were surprised at the knowledge he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3762

1  had?

2      A.   I was surprised he even talked to me.

3      Q.   And the knowledge he had was gained from --

4  like many of the other members of the SNM, talking to

5  other people in the gang, talking about what happened

6  because the word travels fast, right?

7      A.   Yes.

8      Q.   But you knew that Mr. Cordova, himself,

9  didn't have direct knowledge about how the shanks

10  were made or whether they were taken from Mr. Perez'

11  walker?

12      A.   I didn't know what he knew until I started

13  talking to him.  Some guys obtain confessions from

14  people that were present in blue pod.  But Mr.

15  Cordova was pretty popular and had talked to a lot of

16  guys, so I think he had some firsthand knowledge when

17  I first met him.

18      Q.   And as you testified a minute ago with

19  Ms. Jacks, you don't know whether Mr. Perez'

20  knowledge about the shanks or the source of the

21  shanks came from secondhand information or firsthand

22  information that he knew himself?

23      A.   Well, I don't know what Mr. Perez knew,

24  because I've never talked to him.

25      Q.   So it's possible that he got knowledge

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   about the Molina homicide just like many of the

2   others, through word-of-mouth?

3        A.   Not according to his recordings, no.

4        Q.   Well, before these recordings got made?

5        A.   Well, I didn't know what Mr. Perez knew

6   before the recordings, no.

7        Q.   Okay.  Fair enough.

8             You testified that you weren't certain who

9   provided the recording device on a particular day to

10  an NMCD official, to then provide it to Mr. Cordova.

11  And I think you said you needed to check the logs.

12            THE COURT:  Hold on just a second.

13            MR. CASTELLANO:  Objection, relevance.

14  We're not talking about statements at all at this

15  point.

16            THE COURT:  Can you wait on this?

17            MR. VILLA:  Yes, I guess so.  It's fair.

18       Q.   You would agree with me that the -- if

19  there was a conspiracy to murder Javier Molina, that

20  conspiracy was over by the time these statements were

21  made?

22       A.   I assume so.  When does the conspiracy end?

23       Q.   Well, if it's a conspiracy to murder Javier

24  Molina, wouldn't it be when Mr. Molina is killed?

25       A.   I suppose, unless they were still getting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3764

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 239

1    rid of evidence years later.  But, yeah, it sounds

2    like it was over.

3         Q.   Well, that might be a conspiracy to destroy

4    evidence or tamper with evidence, right?

5         A.   Yeah, I guess if the walker showed up

6    today, it would still be -- if someone had been

7    hiding it this whole time, maybe we could pull them

8    into that.  I'm not sure.  I'd have to talk to the

9    U.S. Attorney's office on that.

10        Q.   Would you pull in some of these NMCD guys

11   on that conspiracy?  Just kidding.

12             But there is no question that these

13   statements were made 23 months after Javier Molina

14   was killed?  Approximately 23 months.

15        A.   No question.

16        Q.   All right.  Getting back to -- it's on

17   20540, Bates number, the statements Mr. Perez made

18   about "Crocodile."  Okay.  So they are right here in

19   the center when Mr. Perez said, "Yeah, and you know

20   check this out, and it's like what was discussed,

21   'Crocodile' about has to answer for it."  Did I

22   understand your testimony you don't know who

23   "Crocodile" is?

24        A.   I've heard of him.  But off of top of my

25   head, no, he wasn't a focus of this case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3766

```
 1        Q.   Okay.  Did BB -- the other person
 2   identified in the same statement, did you testify
 3   that was Javier Rubio?
 4        A.   I did.
 5        Q.   And you were interpreting that statement as
 6   to mean they had to answer for not carrying out the
 7   Javier Molina murder at some point earlier in time?
 8        A.   Correct.
 9        Q.   Do you have any knowledge about how Mr.
10   Perez gained his knowledge that he conveyed to Mr.
11   Cordova about these two individuals?
12        A.   No.
13        Q.   Or about how they were supposed to have
14   carried out a hit of Javier Molina?
15        A.   No.
16        Q.   How was it that you came to the conclusion
17   that this conversation was about carrying out a hit
18   on Javier Molina?
19        A.   The short answer is my knowledge of the
20   case.  And I've debriefed Javier Rubio, BB.
21        Q.   I see.  So you're making the conclusion
22   about what Mr. Perez is saying here based upon your
23   knowledge of the case, a debrief of Mr. Rubio, that
24   sort of thing?
25        A.   Yeah, my interpretation of it, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3766

1      Q.   Okay.  Would you agree with me, in the
2   course of these conversations that Mr. Perez and Mr.
3   Cordova had, that we've been reviewing for this
4   hearing, that the recording device appears to have
5   been turned on and off; correct?
6      A.   Absolutely.
7      Q.   So all these recordings that you've
8   reviewed are from a series of different digital audio
9   files?
10     A.   Yes.
11          (Ms. Jacks left the courtroom.)
12     Q.   And a lot of the times the recordings are
13   turned off what I would say midstream?
14     A.   Turned on midstream as well.
15     Q.   Okay.  So that was my second question.
16   They're turned off midstream, meaning in the middle
17   of the conversation, right?
18     A.   Yes.
19     Q.   Or at least it appears the conversation is
20   not ended, right?
21     A.   I agree with you.
22     Q.   And turned on in the same fashion?
23     A.   Yes.
24     Q.   And it was Mr. Cordova who had complete
25   control to turn on and off the device, as you

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 3767

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242 of 308

1    testified?

2            MR. CASTELLANO:  Objection, relevance.

3            MR. VILLA:  Well, I think that does go to

4    whether we've got a complete conversation here.

5            THE COURT:  I'll give you a little room

6    here.  Overruled.

7        A.   Mr. Cordova was in sole control of that

8    device being turned on or off, absent a battery

9    failure or being out of power, yes.

10       Q.   And then was it the same procedure for you

11   to get the recording device back; you had to get it

12   from an employee of NMCD?

13       A.   Yes.

14           MR. VILLA:  May I have just a moment, Your

15   Honor?

16           THE COURT:  You may.

17           MR. VILLA:  That's all the questions I

18   have.

19           THE COURT:  Thank you, Mr. Villa.

20           Any other defendant have -- Mr. Maynard?

21           MR. MAYNARD:  Your Honor, I wasn't here

22   last week, so I'm not sure if I'm taking the

23   issues -- the questions out of turn.

24           THE COURT:  All right.

25           MR. MAYNARD:  The Court is going by

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 243769

```
 1   declarant or by defendant?

 2          THE COURT:  Well, I probably won't

 3   interrupt you, but Mr. Castellano might.  So just

 4   plow ahead.

 5                    EXAMINATION

 6   BY MR. MAYNARD:

 7      Q.   Now, Mr. Acee, you testified, was it last

 8   week --

 9      A.   Yes, sir.

10      Q.   -- about these James statements?

11      A.   I did.

12      Q.   Okay.  Co-conspiracy statements?

13      A.   Yes, sir.

14      Q.   All right.  And you testified briefly this

15   afternoon about -- is that a continuation of your

16   direct?

17      A.   Yes, it was.

18      Q.   All right.  Now, your testimony right here

19   was about statements made -- recorded by Mr. Cordova,

20   and made by Mr. Perez?

21      A.   That's correct.

22      Q.   And this was in February of 2016?

23      A.   Yes, sir.

24      Q.   And shortly thereafter, or maybe at the

25   same time recordings were being made with respect to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 243770

 1   Mr. Herrera, Carlos Herrera?

 2        A.   Yes, they were, by two different

 3   informants.

 4        Q.   Okay.  So the recordings that were made of

 5   Mr. Herrera's statements were from a different

 6   informant?

 7        A.   Well, there were two.  Mr. Cordova was one

 8   of the informants that recorded Mr. Herrera.  And

 9   Mr. Gerald Archuleta also recorded Mr. Herrera.

10        Q.   Okay.  Both did?

11        A.   Both did.

12        Q.   Okay.

13        A.   And I believe at different times.

14        Q.   And this was in February and March of 2016?

15        A.   I'd want to look at our reports.  But that

16   sounds about the time frame.  Because we picked up

17   Mr. Archuleta in December, and it took some time to

18   work all that out.

19        Q.   Now, you testified to statements that were

20   recorded and put on a transcript this afternoon?

21        A.   Yes, sir.

22        Q.   In your opinion, from your understanding of

23   the context, are any references being made directly

24   or indirectly in any of those statements to Carlos

25   Herrera, the ones that you referred to, and that were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3770

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245

1    brought out in the Bates stamped transcripts today?

2         A.   Just today?  Your question is --

3         Q.   Just about today for now.

4         A.   I don't believe so.

5         Q.   And have you gone into yet the supposed or

6    alleged James statements made by Mr. Herrera?

7    Because these were made by Mr. Perez.

8         A.   Correct.  I think I may have covered that

9    last week.  And I believe my colleague, Agent Stemo,

10   did as well.  And I was -- we kind of split -- there

11   were so many transcripts and stuff, we kind of split

12   the duty last week.

13        Q.   Okay.  Now, you're familiar with most all

14   of the James statements that you have obtained, that

15   the FBI has obtained, during the investigation?

16        A.   Don't give me too much credit, sir.  I've

17   got a lot of reports up there.  I mean, I have

18   reviewed them at one time.  But I definitely need to

19   look at them again.

20        Q.   I understand perfectly well.  I've been

21   trying to do this for just a few days.

22             Now, looking back over the statements made

23   by other defendants and other people involved -- not

24   Mr. Cordova, not Archuleta -- are there other

25   statements in which Mr. Carlos Herrera is a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3771

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 246 3772

```
 1    participant in conversations, co-conspiracy
 2    conversations according to any information available
 3    to you?
 4         A.   Yes.  So if I understand you correctly, did
 5    Mr. Herrera participate in conversations other than
 6    were recorded by either one of the informant?
 7         Q.   Right.
 8         A.   Yes.
 9         Q.   And I may be taking this out of turn, but
10    do you have these statements indexed?  Do you have an
11    index?
12         A.   Can I point you to them?
13         Q.   Do you have an index of co-conspiracy
14    statements?
15         A.   A mental one, or --
16         Q.   Or one written?
17         A.   No.
18         Q.   Because what I would like to do -- and I
19    don't know if I'm out of turn -- but I'd like to go
20    through them one by one.
21         A.   I'll defer to somebody else on that.
22         Q.   During the conspiracy, and in furtherance
23    and VICAR conspirators.
24         A.   I think I understand what you're asking.
25    I'm just not sure how to proceed.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3772

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3773

```
 1          Q.   Well, the first one that comes to mind.

 2          A.   Would you like names of people who have

 3     mentioned him; is that what you're asking me?

 4          Q.   Yes.

 5          A.   Okay.  So Mario Rodriguez, "Blue."

 6          Q.   Now, these are conversations that you've

 7     come to be aware of through your investigation?

 8          A.   Yes, sir.

 9          Q.   Okay.

10          A.   Timothy Martinez, "Red."

11          Q.   "Red"?

12          A.   "Red."  There is a "Blue" and there is a

13     "Red."

14          Q.   Okay.

15          A.   Jerry Armenta, "Creeper."

16          Q.   And you have 302s reflecting these?

17          A.   Yes, sir.

18          Q.   Okay.

19          A.   Which I prefer to have in front of me when

20     I do this.

21          Q.   I understand.

22          A.   Okay.  So I said Jerry Armenta.

23               Jerry Montoya, JR or "Plaz," or "Little

24     Plaz."

25               And this is where I'm slowing down, because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3773

1    we've interviewed so many SNM members.  I believe

2    there were some individuals up at the RPP Program,

3    which is the gang dropout program.  We interviewed

4    everybody up there as well.  And there are -- forgive

5    me, sir, but there are literally dozens, you know, a

6    significant number of 302s.

7         Q.   Sure.

8         A.   So tough to do, but I think the names I

9    gave you are the people that were all present in the

10   pod, and --

11        Q.   Present in what pod?

12        A.   Blue pod.  And gave statements.  Oh, I left

13   out a significant one.  That's Lupe Urquizo,

14   "Marijuano."

15             So if I had to point you to the 302s, those

16   would be the ones I would certainly want to start

17   with, if I were in your position, sir.  But I want to

18   note that there are going to be other ones.  I just

19   can't come up with them all as I sit here.

20        Q.   Is that advice for defense counsel?

21   Anyway.

22             Now, these are not recorded that you're

23   referring to; these are just other -- these are 302s

24   from interviews with suspects or with members?

25        A.   Yes, sir.  I mean, some of the -- to be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    clear, some of the conversations I had with these
 2    guys are recorded.  But they're not your client or
 3    Mr. Perez.  Those gentlemen aren't recording those
 4    guys.  This is just me taking a statement from
 5    somebody, and some might be recorded.  So there could
 6    be some recordings.
 7         Q.   In any of the recordings, are there any
 8    confessions made that are -- you know, made by Mr.
 9    Herrera that are recorded?
10         A.   No.  The only recordings of Mr. Herrera are
11    either jail calls.  And I can't think of anywhere he
12    discusses the homicide, or the conversations with the
13    two informants.
14         Q.   That were recorded?
15         A.   Yes, sir.
16         Q.   Well, are there any admissions or
17    confessions in those conversations?  You've seen the
18    transcripts, haven't you, or you've listened to them?
19         A.   I have.  And I believe there are.
20         Q.   And you believe there is a confession, or
21    an admission?  Which?
22         A.   I believe there is an admission by Mr.
23    Herrera for his role, describing his role, an
24    admission relevant to, or pertaining to his role in
25    that incident.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3775

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3776

```
 1        Q.   And what would that role be?
 2        A.   Well, he had a lot of opinions about it.
 3   But specifically passing the paperwork on to the guys
 4   in blue pod, and reviewing the paperwork, seeing the
 5   paperwork.
 6        Q.   And you remember having seen that in a
 7   transcript?
 8             MR. MAYNARD:  May I approach the witness,
 9   Your Honor?
10             THE COURT:  You may.
11        Q.   And I'll be loaning to the witness a
12   transcript that's Bates No. 20839.  And if you'd just
13   take a couple of minutes and see if you might see it
14   in this particular document.  You may not, but this
15   is not the only one.
16        A.   Do you know which CHS this is?
17        Q.   My understanding is that this informant is
18   Mr. Davila, but I may be incorrect.
19        A.   Mr. --
20        Q.   I mean, Mr. Cordova.
21        A.   Okay.  I hate to take this much time to do
22   this.  I think I found probably the first reference,
23   and I'm on -- I guess it's Bates No. 20843.  I'm at
24   the middle of the page.  Mr. Herrera's sentence
25   starts with, "And they wanna sit there."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3776

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 251 of 777

```
 1        Q.   Where?

 2        A.   Yes, sir.  This is where I'm referring to

 3   this statement in here.

 4        Q.   Okay.

 5        A.   I'd have to -- what would you like me to

 6   do?

 7        Q.   No, just if you'd point it out what you

 8   think is an implicating statement?

 9        A.   Yes, sir.

10        Q.   And why do you think it's implicating?

11        A.    What I believe Mr. Herrera is talking about

12   here is, after the fact, the guys in the SNM are

13   talking about what happened with Javier.  And here it

14   just says, "Javier," but I believe that's Javier

15   Molina.  And he says, "And they wanna sit there and

16   talk all that shit when that shit happened with

17   Javier.  They were hurt about me.  And they said, a,

18   that fucking" -- unintelligible -- "I was" --

19   unintelligible -- "and, a" -- unintelligible --

20   "fucking" -- unintelligible -- "when you wanna

21   criticize people that are on the tabla because they"

22   unintelligible -- "because it wasn't done correctly.

23   Well, why did you do -- everybody has their own" --

24   unintelligible -- "carnal" -- unintelligible --

25   "what's your solution then?"
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 252

1      Q.   Now, unless you listen to the recording,

2   you don't know how long the unintelligible

3   information is in those breaks, do you?

4      A.   I think it's just a word or two that our

5   interpreters didn't understand.

6      Q.   And can you even tell if, in fact, the

7   recording had been turned off for a few seconds or

8   for a minute?  Is there a way technically to find

9   out?

10      A.   Yes, there is.  And I don't believe that's

11   what happened in the middle of this statement.

12      Q.   And you've listened to it?

13      A.   Yes, sir.

14      Q.   And what makes you believe not?  What makes

15   you believe it hasn't been tampered with, on and off?

16      A.   Because it flowed continuously.  The

17   "unintelligible" is not silence.  It's not a break in

18   conversation.  It's -- some other noise covers it, or

19   the person listening can't make out word, the

20   specific word that was said.  But these sentences

21   flow pretty well.  And it looks like there is just a

22   missing phrase or word.

23      Q.   Or there could be a missing sentence?

24      A.   There could be.

25      Q.   All right.  And go on.  If you find another

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3778

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3779

```
 1    implicating statement.
 2             So you think he's talking about himself in
 3    that particular excerpt that you mentioned?
 4        A.   I do.  I think he's part of the tabla that
 5    he's referencing.
 6        Q.   But if he's not part of tabla, maybe he's
 7    talking about someone else.
 8        A.   If he's not part of it?
 9        Q.   Right.
10        A.   I don't think he's not part of it.  I think
11    he is part of it.
12        Q.   I understand.
13        A.   Okay.  I think I just went -- I did, I just
14    went to the next page, at 20844.  On this page we're
15    in the -- starts off with the long statement by Mr.
16    Herrera.
17        Q.   And that statement has probably close to
18    two dozen unintelligible gaps?
19        A.   Sir, I would say there is some
20    unintelligible words.  With respect, I disagree on
21    saying they're gaps.  Did you want me to read what
22    I'm referring to?
23        Q.   Are you talking about the upper half of
24    that page?
25        A.   Yes, sir, probably a few sentences in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3779

```
 1        Q.   Okay.  And any other -- I don't want to
 2   take up more time than is necessary, but I'd like
 3   to -- if you can go through it.
 4        A.   Keep going?
 5        Q.   Keep going.
 6        A.   Okay.  The next one, I would point you to
 7   20845, the last statement on the page by Mr. Herrera,
 8   and it flows into the next page.
 9        Q.   All right.  And what puts this -- what's
10   the context in this that implicates, in your opinion,
11   Mr. Herrera?
12        A.   I think this speaks to the -- I think what
13   they're talking about is they're touching a little
14   bit on the background of the failed hits before, the
15   last two times it came down; things were good in
16   Cruces.  There was some politics and some drama
17   there.  The orders had come down a couple of times.
18   My understanding is that the guys that had the keys
19   and were running Southern liked when things were
20   peaceful.  And I think that part of this conversation
21   talks about that.
22        Q.   You refer to having "keys."  What do you
23   mean by that?
24        A.   Being in charge of the facility for the
25   SNM.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1          Q.   Okay.

 2          A.   And that when the paperwork came down, it

 3    was rejected by certain individuals because things

 4    were good:  Drugs were coming in, people were getting

 5    along.  And that was important to those that were

 6    there.

 7               So, to specifically answer your question, I

 8    think that they're talking about some of the politics

 9    in that.

10          Q.   So this may not relate to the Molina

11    homicide?

12          A.   I think it does.  Because Mr. Herrera seems

13    to go on, and he's discussing the fact that -- that

14    it ultimately does happen, and now some of the same

15    people are upset.  They were complaining that it

16    wasn't happening.  It happened.  And now they're mad

17    that it did happen, and everyone is on lockdown.

18          Q.   So people are complaining about being on

19    lockdown?

20          A.   As an aftermath of the hit.  And then that

21    is a reference that the feds are coming and the RICO

22    Act -- they're bringing the RICO Act.

23          Q.   All right.  So they're complaining -- he's

24    talking about lockdown?

25          A.   Well, he's talking about -- I have to read

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56782

 1    it more closely.  I had moved on, but what he's --

 2         Q.   You can move on.

 3         A.   Okay.

 4         Q.   If I could interrupt.  Let me ask you this

 5    way: is a lot of the conversation about gang politics

 6    and not necessarily about Molina?

 7         A.   A lot of it is.  But I thought you were

 8    asking me to show co-conspirator statements.

 9         Q.   Right, regarding the counts relating to the

10    death of Mr. Molina.

11         A.   Sure.  And I respect that we might

12    disagree.  I think some of these politics -- because

13    Mr. Herrera exerts what he thinks the politics should

14    be, and what the philosophy should be.  And think

15    that's on point with what happened in Molina.  But

16    that's just --

17         Q.   That's your opinion?

18         A.   -- my opinion, sir.

19         Q.   In fact, he's also complained about

20    decisions made higher up than he is?

21         A.   Absolutely.

22              MR. MAYNARD:  All right.  No further

23    questions.

24              THE COURT:  Thank you, Mr. Maynard.

25              Any other defendant?  Mr. Adams, did you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3782

```
1    have questions?
2                        EXAMINATION
3    BY MR. ADAMS:
4         Q.   Chris Garcia was not in custody in 2014;
5    correct?
6         A.   I don't think he was.
7         Q.   And he was arrested December 3, 2015, when
8    you took down all the people who were out on the
9    streets?
10        A.   Yes, sir.
11        Q.   And he's not alleged to have any
12   involvement in the Molina homicide?
13        A.   None at all.
14        Q.   And, in fact, he wasn't even incarcerated
15   at the time when Mr. Molina was killed, and was not
16   in the unit?
17        A.   He may have been in the feds.  I can't
18   remember.  But, no, he wasn't down in Southern New
19   Mexico.
20        Q.   So is it a safe assumption on my part that
21   none of the statements related to the Molina homicide
22   are in any way being offered by you as James
23   statements against Mr. Garcia?
24        A.   Yes, sir, that's correct.
25             MR. CASTELLANO:  Your Honor, I'm going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3783

1   object, because it calls for a legal conclusion, and

2   that will be for the parties to argue to the Court.

3          THE COURT:  All right.  Well, I'll let him

4   testify.  And I think I'll have to sort out what is a

5   legal conclusion or not.  But I'll allow him to

6   testify.

7          MR. ADAMS:  Judge, I guess what's going to

8   help me in the scope of my questioning, if there are

9   a bunch of statements that are being offered against

10  other defendants related to the Molina homicide, and

11  not Mr. Garcia, then I don't have a dog in that

12  fight.  But if those statements are also being

13  arguably used against Mr. Garcia, who had no

14  involvement at all in that incident, then we need to

15  explore a lot more than I thought we would be

16  exploring.

17         THE COURT:  Mr. Castellano?

18         MR. CASTELLANO:  I understand where Mr.

19  Adams is coming from, but Agent Acee won't be making

20  that determination.  I'm okay if he asks those

21  questions.  But our arguments won't be to that.  But

22  he's welcome to ask them.

23         THE COURT:  Okay.  So you're pretty

24  restricted on questioning.  But I'm going to have to

25  sort out down the road.  It sounds like these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3784

1    statements are going to be offered against

2    Mr. Garcia, right?

3           MR. CASTELLANO:  Yes, Your Honor.  As I

4    explained to Mr. Adams on the break, some of these

5    statements relate directly to the murder, so

6    therefore, they are clearly co-conspirator

7    statements, if they relate to the murder.

8           But the issue with the VICAR and the

9    enterprise is that there are other conspiracies out

10   there, and there are other elements that are met by

11   the statements.  Some of these statements could even

12   result, or result in co-conspirator statements as

13   relating to a legal conspiracy.  And these statements

14   don't have to be charged to be co-conspirator

15   statements.  That's my point about what we're

16   bringing in here.

17          THE COURT:  But the bottom line is these

18   statements are going to be used against Mr. Garcia,

19   right?

20          MR. CASTELLANO:  They are, Your Honor, I

21   agree.  We will tend to use them in that way against

22   all members of the enterprise.

23          MR. ADAMS:  Judge, I find that to be a bit

24   of a curious position taken by the Government --

25          THE COURT:  It may be.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. ADAMS:  -- for this reason --
 2              THE COURT:  But for right now you just need
 3     to get these statements out.
 4              MR. ADAMS:  Yes, sir.
 5              THE COURT:  Because at least the
 6     Government's position is they're trying to use them
 7     against Mr. Garcia.
 8              MR. ADAMS:  That's what I'm hearing.  But
 9     the other day they said they were calling Agent Stemo
10     to testify, to put in the statements about the Molina
11     conspiracy.  And then they referred to the Marcantel
12     conspiracy as separate conspiracies.  And now their
13     position is they don't want to be limited by their
14     own view of two separate conspiracies.
15              THE COURT:  Well, I shouldn't be making
16     arguments for the Government, but I'm trying to
17     formulate this in my head, so I'm talking out loud to
18     try sort to it out myself.  What I understand is that
19     they are using certain agents to get the James
20     statements to the defendants and to the Court.  And
21     so they're using different people.  And they broke it
22     down by conspiracy between Molina, and then the
23     Corrections Secretary.  But they're not conceding by
24     doing that that all this evidence is going to be used
25     against each of the defendants in the first trial.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3786

```
1            How did I do?  Did I state your position?
2            MR. CASTELLANO:  Yes, Your Honor.  And for
3    example, from time to time, when we had a conspiracy,
4    when we're talking about statements by certain
5    people, I flagged that I was deviating and touching
6    on another potential conspiracy.
7            For example, in the Baca statements, I
8    highlighted a conspiracy to murder members of
9    Mr. Armenta's family.  So I did try to deviate and
10   highlight other things that were out there, including
11   the drug conspiracy and a conspiracy by Mr. Baca to
12   bring drugs into a facility.  So I highlighted those
13   where I could.  But we're definitely not painting
14   ourselves into a corner saying Molina's (sic)
15   statements only go to Molina.
16           THE COURT:  Let me ask:  Maybe I'm
17   interpreting the Government's position too broadly.
18   But when you have an enterprise, are you saying that
19   whole enterprise is a conspiracy, so that any
20   statements in furtherance of the enterprise can be
21   used against any member of the enterprise?
22           MR. CASTELLANO:  Well, I don't think that
23   we're saying the enterprise is a conspiracy.  But
24   these statements touch on other elements of the
25   crime.  So, for example, we have to prove the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3787

```
 1    enterprise engaged in racketeering activities.  Any
 2    of these statements which establishes another crime
 3    is something that establishes that the enterprise has
 4    engaged in racketeering activity.  And so that's
 5    something that might be used against other
 6    defendants.
 7              THE COURT:  Okay.
 8              MS. SIRIGNANO:  Your Honor, just a point of
 9    clarification.  And I was on the phone during the
10    last hearing when this happened.  And I remember what
11    the agreement was, was that some of us wanted to go
12    forward with these James hearings, and some of us
13    wanted to have the Government write down what the
14    statements would be.  I don't know if it was split
15    out between the Group 1 trial and the Group 2 trial.
16    But I just remember not everybody wanted to go
17    forward with this hearing.
18              So based on what I'm hearing from the
19    Government at this point, based on that all these
20    statements are going to be used against all
21    defendants, I'm to assume that we have to wait until
22    we get these statements from the Government in
23    writing, which was the agreement that was proposed at
24    the last hearing?  I'm just curious --
25              THE COURT:  My understanding is that this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3788

1   James hearing is basically against the five

2   defendants that are going to go on January 29.

3          MR. CASTELLANO:  That's how it ended up.

4          THE COURT:  That the others -- there were

5   some other people that had agreed to take the written

6   statements that the Government had always wanted to

7   proceed.  But given the fact that we were barreling

8   toward trial on the 29th, they were prepared to go

9   ahead and give you what you wanted.

10          MS. SIRIGNANO:  Okay.  I guess that just

11   doesn't jive with what I'm hearing right now, based

12   on the Government's theory, or statement to all of us

13   that any co-conspirator statement, whether or not it

14   comes out at this hearing, or in written form, could

15   be used to prove up the -- any alleged criminal act,

16   or based on their enterprise evidence to be used at

17   trial.  And so I'm just trying to get a clarification

18   of that, because if they're going to try and bring in

19   statements that aren't subject of an actual hearing,

20   I'd like to be able to plan for that.

21          Quite frankly, we weren't ready to go

22   forward with this today.  So I just need to know one

23   way or the other.

24          THE COURT:  Well, I do want to correct --

25   it's at the bottom of my notes here from Ms. Wild.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3789

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 264

1    It says:  "If there is time left, evidence will

2    resume on the James hearing."  So I certainly came

3    down here expecting that if we barreled through

4    motions, we would be at a James hearing.  So I don't

5    think that's quite fair.

6              But let me let Mr. Castellano respond on

7    the -- we're not getting all the evidence of the

8    enterprise in the James hearing; is that correct?

9              MR. CASTELLANO:  That's correct, Your

10   Honor.  And I understand what they're saying about

11   statements.  The way it broke down with the

12   stipulation at the last hearing was that the people

13   in the January trial, a number of them, decided they

14   did not want the statements in writing.  So we

15   proceeded with breaking it down in that way.  The

16   people in the April trial ended up being those who

17   wanted the statements in writing.

18             THE COURT:  Let me give a shot at trying to

19   clarify what we're saying.  You're going to prove two

20   conspiracies on January 29:  One Molina; one the

21   Corrections Secretary, correct, those are your two

22   conspiracies?

23             MR. CASTELLANO:  Well, those are the two

24   conspiracies -- well, those are the crimes we have to

25   prove.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3790

```
 1              THE COURT:  And those are the two
 2   conspiracies that you're going to prove for
 3   evidentiary purposes at the James hearing?
 4              MR. CASTELLANO:  Yes and no.  Because, if
 5   there is other evidence, then the other evidence
 6   could be presented.  But, yes, in terms of the trial
 7   presentation, those are the conspiracies.
 8              THE COURT:  Those are the two conspiracies.
 9              Now, you may have other evidence that
10   you're going to produce for purposes of establishing
11   enterprise, and for purposes of producing -- or
12   proving racketeering activity, other crimes in
13   furtherance of the enterprise, those sort of things.
14   But those, you will rely upon normal evidentiary
15   rules, other than the exemption for -- exception for
16   conspiracy, co-conspirator statements; correct?
17              MR. CASTELLANO:  We will.  And frankly, I
18   hadn't thought through it that well in terms of using
19   a lot of the co-conspirator statements for the Group
20   2 people.  But I think those could be admitted.  But,
21   of course, the Court hasn't ruled on those.  So I'm
22   not sure we can admit them if the Court hasn't ruled
23   on them.
24              THE COURT:  Well, the Group 2 people,
25   you're talking about the people we're going to try in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3791

```
 1   April?

 2               MR. CASTELLANO:  That's correct.

 3               THE COURT:  All right.  So I'm wondering,

 4   though, if we can have some agreement that the

 5   conspiracies that are in the statements that are

 6   being provided for the April trial are not going to

 7   be used in this case here under the exception for

 8   co-conspirator statements.  You may be able to get

 9   that evidence in under other exceptions or other

10   rules of evidence.  But it seems to me that, if

11   you're going to try to get it in for a co-conspirator

12   statement, then we need to probably -- not

13   probably -- we need to have it as part of this James

14   hearing.

15               MR. CASTELLANO:  I agree with the Court,

16   that in order to introduce those, the other

17   statements, which are going to the April trial, we

18   would probably need to do that.

19               But the other part of an

20   association-in-fact enterprise is the ongoing nature

21   of the enterprise.  So we may go back years, to

22   crimes predating the crimes charged in this

23   indictment.  As the Court knows, we've got crimes

24   charged back to 2001.

25               THE COURT:  But you would not rely on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3792

 1    co-conspirator statements that are not being

 2    introduced as part of this James hearing?

 3           Let me see if I can articulate better.  If

 4    they don't hear from your agents in this James

 5    hearing, which is the one for the January 29 trial,

 6    they don't have to worry about it coming in to this

 7    case under the exception for co-conspirator

 8    statements.  Is that fair?

 9           MR. CASTELLANO:  I understand the Court's

10    question.  That is a fair question.  I just hate to

11    limit our presentation of evidence at trial.

12           THE COURT:  Don't you think I have to,

13    though?  I mean, don't you think, if we're going to

14    have a meaningful James hearing, I've got to say:  If

15    they're not going to bring it out here orally --

16    that's the way we've decided to proceed -- that you

17    can't use it -- you can use the evidence, but you

18    can't get it in through the co-conspirator

19    statements.  You've got to get it in some other way.

20           MR. CASTELLANO:  I understand what the

21    Court is saying.  And --

22           THE COURT:  I think that will have to be

23    the rules of engagement.

24           MR. CASTELLANO:  I understand that.  And I

25    think the Court would obviously have to rule on those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3793

```
 1   other statements in order for them to be

 2   co-conspirator statements anyway.  So we could try to

 3   focus on presenting other crimes, and possibly

 4   staying away from the co-conspirator statements

 5   themselves.  I understand that.

 6            THE COURT:  Well, I'm not limiting you.  I

 7   mean, if you want to load these guys up and have them

 8   present some more, you can.  It's your James hearing,

 9   and you're putting on your evidence.  But I do think

10   the rules of engagement have to be that whatever

11   they're going to hear is an exception to the hearsay

12   rule under the co-conspirator statements, that

13   somebody has got to spit it out in a James hearing

14   here.

15            MR. CASTELLANO:  I understand.

16            THE COURT:  For the first one.  Then we'll

17   figure out the rules of engagement for the second

18   one.

19            MR. CASTELLANO:  I understand where the

20   Court is coming from.  I'll discuss it with counsel.

21   And plan to proceed that way now.  But there may be

22   something we want to bring out.  We'll do that.

23            THE COURT:  We may have to reopen the James

24   hearing.

25            MR. CASTELLANO:  That's correct, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3794

```
 1    Honor.
 2              THE COURT:  All right.  Now, is that
 3    addressing y'all's concerns?  Did I get close?
 4              MS. SIRIGNANO:  Yes, Your Honor.  Well, to
 5    the extent for this hearing and not a new reopened
 6    hearing, what I'm hearing is, is that we're going to
 7    proceed today and finish this James hearing.  But it
 8    seems like they, once they consult with themselves on
 9    how they're going to get statements in, whether it be
10    direct evidence or any other hearsay objection, or
11    they might need to reopen the James hearing, I
12    understand.
13              THE COURT:  We're probably not going to
14    have a hearing on all of their evidence.
15              MS. SIRIGNANO:  Yes, Your Honor.
16              THE COURT:  I mean, the James hearing is
17    limited to co-conspirator exception, and getting that
18    evidence out.  You're getting a lot of evidence with
19    suppression, so you're getting some free discovery
20    here, no doubt about it.  But you're not going to get
21    everything.
22              MS. SIRIGNANO:  I understand.
23              THE COURT:  They get to put on evidence of
24    their enterprise, but they just won't get it in
25    through the co-conspirator statements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3795

```
 1                  MS. SIRIGNANO:  Thank you, Judge.

 2                  THE COURT:  Does that address your

 3      concerns, Mr. Lowry?

 4                  MR. LOWRY:  Your Honor, I think it does.  I

 5      just want to make sure I understand a point of order

 6      quickly.  One of the purposes I raised the bill of

 7      particulars was to sort of pin down what I would call

 8      the predicate acts.  And if I understood Mr.

 9      Castellano and I understood the Court's ruling, that

10      you weren't going to limit them to what predicate

11      acts they chose to prove the enterprise.  That's

12      okay.  But I was a little concerned, why I stood up

13      is I thought I heard Mr. Castellano say that they

14      were going to use those predicate acts through the

15      co-conspirator exception.  And I think the Court

16      addressed that by saying we're going to limit that to

17      what statements are provided through the agents as

18      part of the Molina and Marcantel charges.

19                  THE COURT:  The James hearing.

20                  MR. LOWRY:  Exactly, the James hearing.

21      But, if I understood things correctly, the Government

22      is reserving the right to reopen this after they

23      consider --

24                  THE COURT:  I mean, they always have that

25      right.  They can always come back.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3796

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 271

 1              MR. LOWRY:  I didn't want to argue with

 2      that.  I wanted to make sure I understood the playing

 3      field.

 4              THE COURT:  We'll see what they do.  Maybe

 5      we're getting our box and we can bring the box with a

 6      lid on it.

 7              You don't look happy, Mr. Adams.

 8              MR. ADAMS:  My head is spinning, Your

 9      Honor.

10              THE COURT:  Oh, you understand everything.

11              MR. ADAMS:  I'm trying to -- I was trying

12      to figure out how to jump in here, because I'd really

13      not given thought to asking much related to the

14      Molina conspiracy.  So I'll have to make some

15      adjustments.

16      BY MR. ADAMS:

17          Q.   Mr. Acee, do you have the notes that you

18      had with you the other day that I believe were DeLeon

19      3298?

20          A.   Yes.

21          Q.   May I have those?  And we'll just put them

22      on the Elmo.

23          A.   I think I referred to this.  This was a

24      timeline, I called it.  And then this was the

25      transcript that I started today.

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                    FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 272

1      Q.   And these were documents that you went over

2    during your direct exam last week, or the week

3    before, with Mr. Castellano?

4      A.   Yes, sir.

5      Q.   I'm on page DeLeon 3298.  Which of these

6    statements, here on 3298, were you thinking applied

7    to Mr. Garcia directly, or by, in your view, in

8    furtherance of his involvement in the conspiracy?

9      A.   I don't believe any do on that first page.

10      Q.   Turn to page 3299.  We'll start at the top.

11    These pages contain highlights.  Were those your

12    highlights and check marks added onto the document?

13      A.   Yes, sir.

14      Q.   Do any of these statements relate -- and I

15    don't know how to take the blue arrow off, or I

16    would.  I'll just leave that alone, because I'm not

17    techie and I know that.

18           Do any of these at the top half of the page

19    relate to Mr. Garcia or his role in the alleged

20    conspiracy?

21      A.   The conspiracy on Mr. Marcantel?

22      Q.   Hard for me to know.  That's what I thought

23    I would be asking you about, but I guess I should ask

24    you more globally about Mr. Garcia, as it relates to

25    any of these statements, in any way, in your mind, as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3798

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273

1    the witness to offer all this stuff on behalf of the

2    Government, related to Mr. Garcia and SNM?

3        A.   Not on the top of that page, I don't see

4    anything.

5        Q.   All right.  Let me go to the bottom of the

6    page.

7        A.   I think that the first time it might come

8    up -- and I want to be cautious to make sure I'm

9    pointing out everything to you.  It might be at

10   0730.010.

11       Q.   Where it says, "CHS says to 'Pup' that

12   Robert" -- Robert Martinez, "wrote 'Pup' a wila

13   saying he was going to take care of Santistevan,

14   because he knows 'Pup; hates him.  'Pup' responds

15   with yes."

16       A.   Yes, sir.

17       Q.   And first of all, what is the 0730 signify?

18       A.   That's the recording device.

19       Q.   All right.  And who had that recording

20   device?

21       A.   Eric Duran.

22       Q.   And do you know what date this was on?

23       A.   So I have all the transcripts for 0730.  I

24   can look through them.  Off the top of my head, I

25   don't.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3800

1          Q.   All right.  Up above, at 730.007, it says,

2    "The CHS gives the date of October 23, 2016."  Is

3    that in the ballpark?

4          A.   Definitely in the ballpark.

5          Q.   How does that have any direct impact on

6    Mr. Garcia?

7          A.   I don't think it has any direct impact on

8    him.  Yet it's one of the first indications that this

9    plot is being discussed or mentioned.

10         Q.   And this is on a body wire?

11         A.   Yes, sir.

12         Q.   And was it a full recording of the body

13   wire, or were there unintelligible parts?

14         A.   There is probably unintelligible parts.  I

15   have the actual transcript here.

16         Q.   All right.  Will you please look at the

17   actual transcript?

18         A.   Sure.  I see one unintelligible.  There

19   might be some other ones.  It's not a very long

20   transcript.  It's only two and a quarter pages.

21         Q.   And for the purpose of our record, can you

22   tell us what page of the discovery the transcript is

23   on?

24         A.   Yes, it starts at 6043, and it ends at

25   6046.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Of DeLeon?

 2        A.   Yes, sir.

 3        Q.   All right.  Thank you.  So do you have any

 4   corroboration, or was this one-on-one alleged

 5   conversation between Mr. Baca and Mr. Duran?

 6        A.   It's a one-on-one conversation.

 7        Q.   No one else was around?

 8        A.   Well, I wasn't there.  I think it would be

 9   pretty tough for other people to hear, given how they

10   have to communicate in the cells.

11        Q.   No other context was provided for that

12   conversation?

13        A.   Yes, sir.  There is definitely more

14   context, because the transcript is quite a bit

15   lengthier than this one sentence summary.  And this

16   is a summary written by an agent other than myself.

17        Q.   Why would there be unintelligible parts of

18   the transcript?

19        A.   Somebody could cough.  There could be a

20   noise.  The person transcribing it simply might not

21   understand the word.  I've had that happen to me,

22   where you keep playing it, and you just can't

23   understand what the word being used is.

24        Q.   You are the case agent, and -- yes?

25        A.   I am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3801

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 276802

```
 1          Q.   And you're familiar with the different
 2    people involved --
 3          A.   Yes, sir.
 4          Q.   -- in this case?  You've reviewed the
 5    audiotapes?
 6          A.   Yes.
 7          Q.   Did you review this audiotape and try to
 8    help out with any unintelligible spots?
 9          A.   Yes, I've reviewed it.  No, I didn't try to
10    help out with any unintelligible spots.
11          Q.   Were you able to hear stuff that is not
12    included on the transcript?
13          A.   In this particular one, I don't believe so.
14          Q.   How did -- there is one more conversation
15    listed at the bottom of the page, 0730.011.  Does
16    that, in your view, have any relation to Chris
17    Garcia's involvement -- alleged involvement with SNM?
18          A.   Yes.
19          Q.   How?
20          A.   Well, you said -- does it show his
21    involvement in SNM, and it makes reference to proper
22    drug dealing.  I would think Mr. Garcia would be a
23    good teacher of proper drug dealing.
24          Q.   Fair enough.  I'll ask it more narrowly and
25    then more broadly, if I can.  Does it have any
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3802

```
 1   relation, specifically, to the allegations related to

 2   the attempted harming of Mr. Marcantel?

 3        A.   No, sir.

 4        Q.   But you do believe it has references to

 5   drug dealing and the gang, and that Mr. Garcia might

 6   be relevant that way?

 7        A.   I do.

 8        Q.   All right.  Let's go to the next page.

 9   Well, let me back up.  On the bottom of that

10   Mr. Garcia is in no way referenced directly in that

11   conversation, is he?

12        A.   He is not.

13        Q.   And the conversation as to 0730.011.

14             Just to be clear, Eric Duran was wearing

15   the body wire for most of these conversations?

16        A.   Yes.  I keep calling it the body wire, but

17   he had the wire.

18        Q.   And he was not a member of SNM at that

19   time?

20        A.   He was a member.  He was a member.

21        Q.   He was also a member of the FBI's

22   cooperating witness group, wasn't he?

23        A.   He was.

24        Q.   All right.  And you can't conspire with a

25   federal agent or government agents?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   My understanding is we and our informants

2   cannot be part of the conspiracy.

3      Q.   All right.  So at this point he was working

4   for you; no doubt about that?

5      A.   No doubt.

6      Q.   And he was infiltrating -- or the plan was

7   for him to infiltrate suspected SNM activities, so

8   you could find out more information about them?

9      A.   He was already in the middle.  And we were

10  late to the game, so we joined it.

11      Q.   Well, you sent him in next to Mr. Baca with

12  a recording device for the purpose of getting

13  evidence to use in court?

14      A.   To be correct, we brought Mr. Baca in.

15  Mr. Duran was already there.

16      Q.   All right.  On the top of the next page,

17  3300, 730.011 continues.  Is there anything else in

18  that reference, that part, that you believe has any

19  significance for Mr. Garcia?

20      A.   No.

21      Q.   Let me try to show you the rest of the

22  page.  You have a lot of items checked off and

23  highlighted.  So will you just please look at this

24  and tell me the next section that you believe has

25  implications for Mr. Garcia?  Christopher Garcia, of

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                                1-800-669-9492
                                                       e-mail: info@litsupport.com



DNM 3804

 1   course.

 2        A.   I think we need to move down, sir, to 019.

 3        Q.   Yes.

 4        A.   I would start at 019.

 5        Q.   All right.  Is it the whole section of 019?

 6        A.   To play it safe, I'd say all of that

 7   transcript, yes.

 8        Q.   All right.  So we have "Pup" tells CHS to

 9   have Mario "Poo Poo" hit Santistevan and/or Adam

10   Vigil, not Marcantel, and to have Chris Garcia

11   finance it.  So let me stop there.  So that mentions

12   Chris Garcia's name.  Was Chris Garcia's name

13   mentioned on the actual transcript?

14        A.   I believe it was.

15        Q.   All right.  Was there any -- did you have

16   any information at that time whether Chris Garcia was

17   in the loop on anything related to Marcantel at that

18   point?

19        A.   I may have, because, as you may know, Duran

20   would provide me updates on the cellphone.  So I, of

21   course, am not seeing this information until after we

22   recover the device and download it.  So I think I may

23   have known that -- actually, I think I did know that

24   Chris Garcia's name was coming up before I heard the

25   actual recording.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3805

1      Q.   That his name was coming up or that he had

2   been contacted and talked to?

3      A.   Well, I know that he was contacted and

4   talked to because of, course, that happened on the

5   phone that we had the wiretap on.

6      Q.   Related to procuring guns?

7      A.   Yes, sir.

8      Q.   As opposed to drugs?

9      A.   He helped with both.  But yes, firearms.

10      Q.   You think that had happened by October 24,

11   2015?

12      A.   I believe so, yes.

13      Q.   All right.  And so, as a result -- and then

14   it says on here that -- it says, "It needs to be done

15   because the administration is going to tear us to

16   shreds little by little."

17          Then the next bullet point is "'Pup" says

18   after the hits are done all the brothers will be

19   separated in various states, and that communication

20   with one another will be critical."  And it says that

21   he and "Baby G" have a code that they use to write to

22   each other using two key numbers.

23          Do those statements have anything to do

24   with Garcia?

25      A.   I suspect the middle one does, but not the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 281807

1    one related to "Baby G" and the codes.

2         Q.   That the brothers will be split up and

3    communication will be critical?

4         A.   Yes.

5         Q.   At the bottom of the page, 0730.020, there

6    is more stuff about Marcantel.  Again, Garcia's name

7    is not referenced in that?

8         A.   It's not referenced in this very short

9    summary, but I would want to double check the actual

10   transcript.

11        Q.   All right.  You think that this -- okay,

12   feel free to.

13        A.   Sure.  So, sir, just to be clear, you want

14   me to point out if Mr. Garcia's name is mentioned?

15        Q.   Referenced in the 020 entry.

16        A.   I don't see Mr. Garcia's name referenced.

17        Q.   And in both the 019 and 020 entries, the

18   statements attributed to Mr. Baca is that he's

19   actually saying:  Do not harm Marcantel.  That's what

20   Eric Duran is reporting?

21        A.   Yes.  I'm only hesitating because this was

22   written by another agent, and that was his

23   interpretation of the recordings.  This is before we

24   had stuff transcribed.

25             Mr. Adams, should I follow you with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3807

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 282 3808

1    actual transcript to make this quicker?

2         Q.   Sure.

3         A.   I'll track it.

4         Q.   I turned to page 3301.  And again, you have

5    highlighted and checked off materials related to

6    entries 0730.021 and 0730.022.  Are those being

7    offered, in you view, against Mr. Garcia?

8         A.   I think they are.

9         Q.   Why?

10        A.   It's discussed in the conspiracy.

11        Q.   Right after the part about:  Don't hurt

12   Marcantel; hurt other people so Marcantel can be

13   fired, which we just went over on the previous page.

14   So these are the next entries.  And how does this

15   have relation or connection in your mind to

16   Mr. Garcia?

17        A.   Well, this is the conspiracy.  Mr. Baca is

18   laying out where he believes some of the would-be

19   victims live.  And so I believe this is -- from an

20   investigative standpoint, I believe this is relevant

21   to the conspiracy.

22        Q.   And is it your belief that Mr. Garcia had

23   joined the Marcantel conspiracy at this point in

24   time?

25        A.   I don't think he had yet.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3808

 1        Q.   So those would be statements prior to his

 2   being recruited or asked to join that conspiracy?

 3        A.   Perhaps.  I need to line up the timeline a

 4   little tighter, but I think you're correct.

 5        Q.   Again, is there any other corroborations

 6   for these communications or the context of them other

 7   than what's on the body wire and the transcript?

 8        A.   Well, there subsequently is.

 9        Q.   All right.  Fair enough.  How about as to

10   this particular conversation and the particular

11   recording.  Were there any other guards around, any

12   other inmates or anything?

13        A.   No, I'm just pausing because I'm thinking

14   of the letters.  And I'm trying to remember what was

15   sent out in the letters.  But no, there was no one

16   else that I believe witnessed this conversation.

17        Q.   All right.  I'll turn to DeLeon 3302.  And,

18   again, there are many entries with check marks and

19   highlighted marks.  Please let me know what you

20   believe applies to Mr. Garcia for purposes of the

21   James hearing.

22        A.   I think we can go to the next page.

23        Q.   All right.  So nothing on 3302?

24        A.   No, sir.

25        Q.   See how easy that was?  If we could just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    have nothing on all these pages, we could really move

2    through this.  All right.  Page 3303?

3         A.   I'm looking at 1188.007.

4         Q.   All right.  And what is device 1188?

5         A.   That's what we've been calling a body wire,

6    an ELSUR device.

7         Q.   Who had that?

8         A.   Mr. Duran.

9         Q.   What was the other one?

10        A.   The other one was 0370.  This is evidence

11   of us switching the devices out, because I'm either

12   worried they're full or out of batteries.

13        Q.   So it's a similar device, similar

14   technology; it's just a different version?

15        A.   Yes.

16        Q.   All right.  So we have 1188.007.  And this

17   is where there are actual conversations with Chris

18   Garcia?

19        A.   Correct.

20        Q.   And Mr. Garcia was telling Eric Duran that

21   he had was at home recuperating from surgery?

22        A.   Well, they talk about the surgery.  It's

23   kind of a funny conversation.  I think it had been

24   some time ago, though.

25        Q.   It might be funny to you, and it might not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3810

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 285

```
 1    be funny to Mr. Garcia.

 2         A.   I apologize.

 3         Q.   There is a conversation about surgery on

 4    his testicles as a result of being shot?

 5         A.   Correct.

 6         Q.   All right.  And then tell me what part of

 7    this entry that you're focusing on?

 8         A.   I highlighted it.  It says "Pup" and CHS.

 9    CHS:  "Ask Garcia for Mario's phone number."  That

10    would be Mario Montoya.

11         Q.   And what else on the page?

12         A.   Well, to speed it up, sir, everything that

13    I highlighted.

14         Q.   Okay.  You believe all this relates to

15    Chris Garcia and the Marcantel conspiracy?

16         A.   I do.

17         Q.   I'm showing you page 3304.  This is the one

18    that has the handwritten notes.

19              THE COURT:  Before we take on this

20    statement, why don't we take about a 15-minute break.

21    Let me let Ms. Bean rest her fingers.  Then we'll

22    come back in and go for another half hour.

23              All right.  We'll be in recess for about 15

24    minutes.

25              (The Court stood in recess.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3812

```
 1                THE COURT:  Everybody grab a seat.  Looks
 2    like all the defendants have an attorney.  Look
 3    around, make sure that everybody is covered.
 4                All right.  Mr. Roberts, you're leaving at
 5    about 5:15.
 6                MR. ROBERTS:  Yes, Judge.
 7                THE COURT:  All right.  Be safe on your
 8    trip.
 9                MR. ROBERTS:  Thank you, Judge.
10                THE COURT:  All right.  Mr. Acee, I'll
11    remind you you're still under oath.
12                Mr. Adams, if you wish to continue your
13    cross-examination of Mr. Acee, you may do so at this
14    time.
15                MR. ADAMS:  Thank you, Your Honor.
16                THE COURT:  Mr. Adams.
17    BY MR. ADAMS:
18         Q.   Mr. Acee, on what day did Chris Garcia, in
19    your view, join the conspiracy to kill Gregg
20    Marcantel?
21         A.   The day he agreed to -- he said he had
22    firearms, and agreed to pass them on to whomever
23    needed them.
24         Q.   In November of 2015?
25         A.   October or November.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3812

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3813

```
 1          Q.   All right.  So you don't have an actual

 2     date?

 3          A.   Not off the top of my head, no.

 4          Q.   Can you find a date?  Is there something I

 5     can give you to help you find a date?

 6          A.   If you have the wire intercept transcripts.

 7     What I have are the body wire ones here.

 8          Q.   All right.  Which one do you think

 9     establishes the date that Chris Garcia allegedly

10     joined the Marcantel conspiracy?

11          A.   I think that the telephone recordings would

12     be the ones I would want to refer to.

13          Q.   Okay.  Which phone call in particular?

14          A.   Well, I'm going to say the one in which he

15     agrees to provide the firearms.

16          Q.   All right.  So that was the one -- and in

17     your mind, that's the time Chris Garcia entered the

18     conspiracy related to Gregg Marcantel?

19          A.   In my mind, yes.

20          Q.   All right.  Chris Garcia was arrested on

21     December 3, 2015, we mentioned earlier; correct?

22          A.   Yes, sir.

23          Q.   What time of day?

24          A.   Early morning.

25          Q.   6:00 a.m.?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3813

```
 1         A.   No, I had nighttime service warrants, so it
 2    was before 6:00 a.m.
 3         Q.   There are statements that you referenced in
 4    your direct on December 3, 2015.  And they were on
 5    DeLeon 3306.  And item 1168.007, the date listed
 6    there is December 3, 2015.  Do you believe that to be
 7    accurate?
 8         A.   No.
 9         Q.   What date do you think that is?
10         A.   I think it's early December; I think it's
11    the 1st or 2nd.
12         Q.   It's typed out twice.  It says December 3,
13    2015.  And the CHS gives the day of the 12/3/2015?
14         A.   Correct.
15         Q.   So you think that's inaccurate?
16         A.   I do.
17         Q.   All right.  And 1168.080, which are
18    highlighted items that you went over with the AUSA in
19    your direct, they're references to "Mario should have
20    done the hit over the night."  Wouldn't that be
21    consistent with it being on December 3, 2015, or
22    later?
23         A.   Not necessarily, no.
24         Q.   All right.  Well, what date do you believe
25    this is?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3814

```
 1          A.   I think it's December 1st or 2nd.

 2          Q.   So you think it was prior to the arrest of

 3   Mr. Garcia?

 4          A.   Yes, I think it was just prior, within a

 5   day or two.

 6          Q.   All right.  In your direct examination, you

 7   referenced statements from Roy Martinez and Robert

 8   Martinez related to killing Gregg Marcantel, didn't

 9   you?

10          A.   Yes, sir.

11          Q.   And let me put DeLeon 3371, which were part

12   of your notes.  At the bottom there is a reference to

13   March 23, 2015, you had a meeting with the STIU

14   administrator related to that information; correct?

15          A.   No, sir.  This was actually -- yes and no.

16   We were up there on a separate case, and then the

17   STIU sort of interrupted that meeting to point out

18   that they discovered this information.

19          Q.   And was that the first you'd heard about

20   any talk about killing Gregg Marcantel?

21          A.   Yes, sir.

22          Q.   What was the source of that information?

23          A.   If I remember correctly, Captain Sapien

24   said that he either obtained letters from one of his

25   informants, who I believe was Eric Duran, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3816

1    Mr. Duran caused Captain Sapien to become aware of

2    it.  But that was the gist of it.  The SNM was

3    sending out leaders to hit Marcantel and Santistevan.

4         Q.   So either Gregg Marcantel sent a letter to

5    the STIU administrator, or somehow got word to him

6    that he had heard this information?

7         A.   I think you might have misstated.  You said

8    Marcantel got the word?

9         Q.   No, I'm sorry.  That Eric Duran got the

10   word that there was a conspiracy forming against Mr.

11   Marcantel.

12        A.   Yes, sir.

13        Q.   All right.  You referenced in here to a

14   credible and reliable CHS.  And that would be Eric

15   Duran?

16        A.   Yes.  And let me clarify, this isn't my

17   report, but I used it for the timeline.  I thought it

18   was a good timeline.  But this is -- the STIU is

19   claiming that it's a credible and reliable informant.

20   I didn't know Eric Duran at this time.

21        Q.   Okay.  So you had never met the man.  He

22   wasn't one of your guys at that point?

23        A.   Correct.  And it would be, I think, a

24   couple of months before I'd meet him.

25        Q.   And so you, or whoever wrote this report,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   relied on their vouching for him being credible and

 2   reliable?

 3        A.   Yes, sir.

 4        Q.   Where was this conversation allegedly held?

 5        A.   The one with me?

 6        Q.   No, about the Martinezes discussing taking

 7   action against Mr. Marcantel.

 8        A.   I don't know.

 9        Q.   Was it in a cell pod?

10        A.   Well, it would have to be.

11        Q.   It could be in a rec yard?

12        A.   Perhaps.

13        Q.   Were there any other witnesses other than

14   the credible and reliable CHS, Eric Duran?

15        A.   Not at that time, no.  Cooperators come

16   forward later, but at that time, no.

17             MR. ADAMS:  Judge, I beg your indulgence.

18             THE COURT:  Certainly.

19             MR. ADAMS:  Thank you.  May I pass the

20   witness to my colleague, Mr. Lowry?

21             THE COURT:  All right.  Thank you, Mr.

22   Adams.

23             Mr. Lowry, cross-examination of Mr. Acee?

24             MR. LOWRY:  Thank you, Your Honor.

25             THE COURT:  Mr. Lowry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3817

```
 1                      EXAMINATION
 2  BY MR. LOWRY:
 3       Q.   Good afternoon, Special Agent Acee.
 4       A.   Good afternoon.
 5            MR. LOWRY:  May I approach, Your Honor?
 6            THE COURT:  You may.
 7       Q.   Let me start off, Agent Acee, you just
 8  testified -- I think it was on the last document we
 9  were looking at were the last calls, that you didn't
10  believe those calls were placed on December 3, 2015.
11       A.   Those recordings, I don't think that's an
12  accurate date.
13       Q.   Okay.  And why don't you think that's an
14  accurate date?
15       A.   I think Mr. Duran got the wrong date.
16       Q.   And if I understood your testimony earlier,
17  that particular document was created before the
18  transcripts of those conversation were made?
19       A.   Yes.  And I should clear something up, if
20  you'll permit me, about the date.
21       Q.   Absolutely.
22       A.   Okay.  So Mr. Adams asked me what time we
23  started serving search warrants.  And we started very
24  early, perhaps as early as 4:00 in the morning.  And
25  that would apply to Mr. Garcia.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            But we, the FBI, didn't serve any search
 2    warrants at the Department of Corrections.  It was
 3    STIU and their cert team that rounded up the
 4    gentlemen that were up there.  So I think that date
 5    may be off.  But it is possible that recording was
 6    made, because that device wasn't recovered until
 7    December 3.  So it is possible.  I've sat here and
 8    said I think the date is wrong, but I'm actually
 9    backpedaling.  And it could be possible.
10       Q.   And that's fair.
11            My next question would be:  Did you ever
12    have the opportunity to review the HAWK data
13    regarding the conversations before drafting that
14    report?
15       A.   No.
16       Q.   So you didn't have --
17       A.   And I didn't draft the report, sir.
18       Q.   Fair enough.  So whoever drafted the
19    report, do you think they had access to that kind of
20    information, the downloads from the ELSUR devices?
21       A.   No.
22       Q.   So we're not quite sure what the date would
23    be for that recording, if I'm understanding you
24    correctly?
25       A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3820

3820

 1     Q.   Now, I want to back up for a second and
 2  talk about the Marcantel conspiracy.  And I believe
 3  in your testimony last week you had talked about --
 4  if I understood you correctly, there were statements
 5  made by Roy Martinez and Rob Martinez?
 6     A.   Yes.
 7     Q.   To the best of your knowledge, that is the
 8  first anyone in the Department of Corrections or the
 9  FBI learned about that conspiracy?
10     A.   Yes.
11     Q.   And I believe you testified that there was
12  a letter sent by one of those two to Mr. Baca after
13  he was shipped out of the state?
14     A.   I don't recall that.
15     Q.   If there was communication like that, would
16  that be the type of corroborative information you
17  would need to know, whether Mr. Baca understood the
18  conspiracy or not?
19     A.   That would be helpful, yes.
20     Q.   Was STIU actively monitoring the mail of
21  Roy Martinez at that time?
22     A.   I believe so.
23          And Mr. Lowry, I'll be honest, I didn't
24  know who Roy Martinez was.  I didn't know much about
25  the SNM before that date.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3820

1    Q.    Before March of 2015?

2    A.    Correct.

3    Q.    But it's fair to say that you worked

4  closely with STIU since March of 2015?

5    A.    Absolutely.

6    Q.    And you developed a pretty substantial

7  working knowledge about their basis of knowledge

8  about the Marcantel conspiracy?

9    A.    Yes.

10    Q.    And so I'm asking you, from your training

11  and experience and your investigation in this case if

12  you are aware that Roy Martinez' mail was being

13  scrubbed or censored as it left the facility?

14    A.    I hope it was.  But sometimes I'm

15  disappointed.  And I make mistakes as well.

16    Q.    And I'll ask you the same question with

17  regard to Rob Martinez or "Baby Rob"?

18    A.    My answer would be the same.  I hope it

19  was.

20    Q.    Do you have any sense from your

21  investigation in this case whether Mr. Baca's mail

22  was being screened as it entered either the Arizona

23  facility?

24    A.    I believe it was.

25    Q.    And it would also have been screened when

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3821

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3822

 1   he was at ADX in Florence, Colorado?

 2        A.   It definitely was up there.

 3        Q.   And you don't have any letters -- there is

 4   no correspondence from either one of those facilities

 5   referencing the Marcantel --

 6        A.   That is correct.

 7        Q.   Now, if I understand the case correctly,

 8   Mr. Baca was transferred out of the Department of

 9   Corrections within the days following -- I think it's

10   March 12, if I'm correct?

11        A.   That's my understanding as well.

12        Q.   Did Mr. Roy Martinez have an opportunity to

13   talk to Mr. Baca between the Molina murder and his

14   transport out?

15        A.   I don't believe so.

16        Q.   The same question for "Baby Rob"?

17        A.   I don't believe so.

18        Q.   So, to the best of your knowledge, as the

19   case agent investigating that conspiracy, was there

20   any direct communication between either Roy Martinez

21   or "Baby Rob" Martinez with Mr. Baca?

22        A.   Not after the murder, no.

23        Q.   And it's your understanding that this

24   scheme, the conspiracy, plot originated post-Molina

25   murder?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.   No.

2      Q.   When do you think it originated?

3      A.   I later learned, through talking with

4  cooperators, that the idea went back as early as

5  2013.  My investigation on what we always refer to as

6  the hits or the conspiracy started in March of 2015.

7  But in talking with guys, I learned that it had been

8  talked about before.

9      Q.   What guys?

10      A.   A few -- well, I'd have to get back to you.

11  I'd have to spend some time looking at 302s.  But I'd

12  feel comfortable saying two to three SNM members who,

13  of course, would be cooperators now, told me they had

14  conversations with Mr. Baca relating to hitting -- I

15  think they all pertain to Santistevan.

16      Q.   And those would have predated the Molina

17  March 7, 2014?

18      A.   Yes, sir.  Because the dates that I'm

19  thinking of in my reports is, the best that those

20  informants could come up with, was 2012, 2013.

21      Q.   Do you have reason to believe that those

22  informants' statements were credible?

23      A.   Well, I never fully believe informant

24  statements, I mean -- but I write down what they tell

25  me.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3824

1    Q.   And I guess that's my point, is you don't

2  have -- did you do any independent corroboration of

3  those statements?

4    A.   Tough to do.  But I try where we can, yeah.

5    Q.   We'll come back to that next week or the

6  next James meeting, if you will.

7         I want to jump up a bit.  Just this

8  afternoon you were talking about the statements, the

9  Perez/Cordova recordings.  And if I read the language

10  you were highlighting correctly, you believe that Mr.

11  Perez had made statements about Mr. Baca's desire

12  to -- regarding Mr. Baca in which conspiracy?  The

13  Molina conspiracy?

14    A.   Molina.  Yes, I don't -- I've read Mr.

15  Perez' transcripts a lot in the last couple of days.

16  I don't think there is any mention of Marcantel.  So

17  it mostly pertained to the Molina.

18    Q.   And any opportunity Mr. Baca had to speak

19  with Mr. Perez would have been after the Molina

20  homicide?

21    A.   Well, I don't -- about the homicide?

22    Q.   Correct.  That's what --

23    A.   Based on what I have reviewed, I think

24  that's correct.

25    Q.   So all of the statements referenced in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3824

```
 1    the -- what I'll call the Perez/Cordova recorded
 2    conversations, those statements took place after that
 3    event had transpired?
 4         A.    I believe so.
 5         Q.    So those statements couldn't have been made
 6    in an effort to have Mr. Molina killed, could they
 7    have?
 8         A.    No, if they're made after.   No.
 9              MR. LOWRY:   May I approach, Your Honor?   I
10    just want to get the marked statements.
11              THE COURT:   You may.
12              MR. LOWRY:   Your Honor, I have a request.
13    It's 5:25.  I don't want to waste the five minutes,
14    but I think I could save the five minutes if we
15    adjourned early, and I resumed the next time we had
16    the James hearing with Mr. Acee, rather than fumbling
17    through the exhibits.
18              THE COURT:   Go ahead.   We'll wait on you.
19    Don't worry about it.   Take your time.
20              While you're looking through those, I want
21    to come back to a point with Mr. Adams.   Let me
22    explore a little bit with you, while Mr. Lowry is
23    looking at these documents, it seems to me -- you
24    were talking about your head swimming and trying to
25    get a grasp -- this is what I think is going on --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    tell me if I'm wrong -- what I'm doing with this
 2    James hearing is trying to determine whether certain
 3    statements are going to come in for two conspiracies
 4    in the first trial, Molina and the Secretary.  But
 5    that both conspiracies are going to be used against
 6    all five defendants to establish enterprise,
 7    racketeering, furtherance of the enterprise, and
 8    things like that.  Do you see it differently?
 9              MR. ADAMS:  Judge, we have been working on
10    some jury instructions.  And I have not been one of
11    the point people on that.  So I would like to consult
12    our work product on that.  But I think that does make
13    sense.  But, obviously, the focus has to be on the
14    indicted VICAR offenses.  And for us, that is not the
15    Molina incident.  For us, that is the Marcantel
16    allegations.  So I do think there can -- by their
17    charging decision, it's messier than a traditional
18    trial.  But --
19              THE COURT:  But isn't the reality we're
20    going to be in this room on the 29th, and the
21    Government is going to be putting on two
22    conspiracies.  And both are harmful to you, right?
23    Because, even if you're not involved in one, you're
24    going to be sitting there, and they're going to be
25    saying, Yeah, but it's the same enterprise, it's the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3826

1    same furtherance of that enterprise, and these are

2    the crimes that were committed in furtherance of it?

3    Isn't that the reality?  I mean, you may not --

4              MR. ADAMS:  I think that is.  I think that

5    was why there have been motions to sever.  Even

6    within the January 29 group, people wanted to sever

7    because of the overlap or prejudice, or however you

8    want to refer to it.

9              THE COURT:  But even if they were severed,

10   you were just sitting there with Mr. Garcia, they can

11   come in with any group of crimes they want to,

12   though, to try to prove their enterprise?  I mean,

13   that's the reality.  That's the reason the

14   severance -- I'm working on Mr. Sanchez, so I've been

15   up here looking at his anyway.  But the reality is,

16   they could pick their crimes to show it, so --

17             MR. ADAMS:  But Judge, there are not overt

18   acts in this indictment.  So I would think 403 --

19   this is off the top of my head -- I believe 403 would

20   have to be used by the Court to regulate what kind of

21   evidence could be admissible.  If we were solely in

22   the Gregg Marcantel counts, and nothing else were

23   merged, if they wanted to put up, you know, a 2008

24   homicide that five other alleged SNM members

25   committed, you know, we would have a hard time with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3827

1   that, and we would ask you not to let them do it.

2   And I suspect you would be troubled by their wanting

3   to just scare the jurors.  And so there has to be

4   some limit.

5           1613, it may be different.  They have overt

6   acts; they've alleged hundreds of them.  But in this

7   case there aren't overt acts, so I would think the

8   403 balancing has to kick in and guide what can be

9   used against different people, and where curative

10  instructions and limiting instructions come into

11  play.

12          THE COURT:  Well, I'll certainly listen,

13  but I think I've signaled early on that I'm not

14  seeing those limitations.  It seems to me that the

15  Government, pretty much, they get to choose how they

16  want to prove the enterprise.  And you might think

17  one crime is worse than another crime, but, you know,

18  from a 403 standpoint, I think it's very difficult to

19  go in and start telling the Government, Well, that

20  crime is not too prejudicial, but this crime is okay.

21  I probably am not going to go that direction.

22          We don't have to argue it today, but put it

23  in the back of your mind.

24          MR. ADAMS:  I will look at the jury

25  instructions in the very near future, because I look

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3828

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3829

```
 1    forward to continuing the discussion.
 2           THE COURT:  I'm not seeing this as really
 3    more jury instructions.  I'm seeing this as more
 4    evidentiary rulings I've got to make.  And I'm
 5    sitting here going:  It looks like this stuff is
 6    coming in.
 7           So, anyway, we don't have to discuss it,
 8    but that's -- when you said your head was swimming,
 9    it seems to me that it shouldn't be swimming because
10    it's coming in.  You may not have an interest in that
11    conspiracy, and sitting there and being the lawyer
12    that gets up and tries to defend against it; you may
13    want to rely on your co-counsel for that, or other
14    defendants' counsel.  But it seems to me, you know,
15    from a legal, theoretical standpoint, you have an
16    interest.
17           That's the reason I've been having a fairly
18    wide open James.  Anybody got any -- because I'm
19    seeing that the Government is planning to use this
20    evidence potentially against everyone in the room.
21           MR. ADAMS:  Well, that's the purpose of the
22    RICO statute.  There is an overarching conspiracy,
23    Your Honor.  And under that, there are smaller
24    conspiracies under the same roof according to the
25    theory of the Government.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3829

```
 1              THE COURT:  Well, I don't mind being
 2    educated on this, but -- you can tell I'm trying to
 3    be honest with you what's in my head.  And if I'm
 4    wrong, if I don't understand how the evidence is
 5    going to come in, you probably need to start
 6    educating me earlier rather than later.  Because I've
 7    signaled several times in this case that I'm not
 8    seeing how to keep this evidence out.  It seems to me
 9    that, once they made this a racketeering case and a
10    VICAR case, and when they are trying it that way, the
11    evidentiary standards are quite broad.
12              Anyway --
13              MR. LOWRY:  Your Honor, if I may on that
14    point.
15              THE COURT:  Okay.
16              MR. LOWRY:  Well, this -- I don't want to
17    belabor the issue, but this was one of the reasons I
18    brought up the bill of particulars motion earlier in
19    the year, is because, frankly, the palette of
20    possibilities for the Government is fairly large
21    here.  And I'm concerned about the nature of, you
22    know, surprise.  I mean -- or just what the
23    Government plans on to base the predicate acts.  And
24    I think that's why one's head may swim at a certain
25    point in time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3830

```
 1              And I just didn't know if we can get any
 2      additional -- I understand the Court's position.  I
 3      don't think it's a matter of saying one is more
 4      prejudicial than the other.  But it would be nice to
 5      know what the constellation of those prejudicial acts
 6      could be, so the defense could properly prepare.
 7              THE COURT:  Well, we've crossed that
 8      bridge.  If you want an opinion on it, that might be
 9      something that you want me to turn to sooner rather
10      than later, is trying to put out an opinion on it.
11              But do you want to say something else, Mr.
12      Adams?  I'll let you have the last word.
13              MR. ADAMS:  I do.  But I'm going to stew on
14      it a little bit longer and bring it up another time.
15              But I think, Judge, I will say that we did
16      get -- and we filed a response this morning, or last
17      night -- we got the 404(b) notices.  And they were
18      every single Overt Act from 1613 alleged against
19      Mr. Garcia.  So I guess in the Government's view, it
20      would be similar to what you're saying, that there
21      are no parameters on what might be relevant evidence
22      in this trial.  And so I'm wondering how -- if we --
23      we're not really going to have any notice on what
24      we're facing.
25              THE COURT:  Well --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3831

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3832

```
 1            MR. ADAMS:  If 255 overt acts for a July
 2    trial are somehow now all potentially relevant for a
 3    January 29 trial, A, I don't know that we know what
 4    we're facing; and B, I don't know how we're going to
 5    finish our rodeo in six weeks, as scheduled.
 6            THE COURT:  Well, I would assume that, at
 7    some point, the Government is going to decide what it
 8    is going to throw at you.  I mean -- and so they'll
 9    probably say:  We're not going to throw 210, we're
10    going to throw 30, 15.  But that's kind of their
11    choice.
12            MR. ADAMS:  It would be wonderful to be
13    able to litigate the real stuff and not the fake
14    stuff.  I think it would be helpful for all of us to
15    know what we're really facing January 29th, not the
16    hypothetical Titanic situation.
17            THE COURT:  You can think over the weekend,
18    and tell me what -- other than raw judicial power --
19    I have to force them to tell you that.  We're back to
20    where we're plowing old ground.
21            Let's call it a night.  See y'all at 1:00
22    on Monday.  Everybody be safe.
23            If you do decide you want me to be writing
24    or working on something in particular, so this is
25    informed discussion, you tell me.  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3832

1          MS. SIRIGNANO:  Judge?

2          THE COURT:  Everybody be safe.  Have a good

3   weekend.

4          (The Court was adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on December 15, 2017.

15

16

17

18         _____
           Jennifer Bean, FAPR, RMR-RDR-CCR
19         Certified Realtime Reporter
           United States Court Reporter
20         NM CCR #94
           333 Lomas, Northwest
21         Albuquerque, New Mexico 87102
           Phone:  (505) 348-2283
22         Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3834

1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF NEW MEXICO

3     UNITED STATES OF AMERICA,

4          Plaintiff,

5     VS.                          CR. NO. 15-4268 JB

6     ANGEL DELEON, et al.,

7          Defendants.

8                            VOLUME 1

9          Transcript of Motion to Suppress Proceedings
      before The Honorable James O. Browning, United States
10    District Judge, Las Cruces, Dona County, New Mexico,
      commencing on December 11, 2017.

11

12    For the Government:  Mr. Randy Castellano; Mr.
      Matthew Beck
13
      For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14    Harbour-Valdez; Mr. Robert Cooper; Mr. Jeff Lahann;
      Mr. John Granberg; Mr. Scott Davidson; Ms. Amy Jacks;
15    Mr. Richard Jewkes; Ms. Amy Sirignano; Mr.
      Christopher Adams; Mr. Marc Lowry; Ms. Theresa
16    Duncan; Ms. Carey Bhalla; Mr. William Maynard; Mr.
      Ryan Villa; Mr. Donovan Roberts; Ms. Lisa Torraco;
17    Ms. Angela Arellanes; Mr. Samuel Winder

18
      For the Defendants (Via telephone):  Mr. James
19    Castle; Ms. Fox-Young

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3835

```
 1              THE COURT:  All right.  Let's go on the
 2   record.  Does anybody know anything about Angela
 3   Arellanes?  Maybe that's her coming in.
 4              There you are.  I was just asking about
 5   you.
 6              All right.  So it looks like everybody has
 7   got an attorney.
 8              And, Ms. Sirignano, I think you have your
 9   expert, Tim Bryan, here today?
10              MS. SIRIGNANO:  Yes, Your Honor.  Good
11   afternoon.  This is Mr. Bryan here.
12              THE COURT:  All right.  And Ms. Fox-Young,
13   are you on the phone?
14              MS. FOX-YOUNG:  I am, Your Honor.  Good
15   afternoon.
16              THE COURT:  And you'll be joining us
17   shortly?
18              MS. FOX-YOUNG:  Yes.
19              THE COURT:  All right.  And you also have
20   Michelle Anderson coming a little later today?
21              MR. VILLA:  She's going to join me, Your
22   Honor.  Rochelle Anderson.
23              THE COURT:  Rochelle.  Is there any other
24   changes to counsel from Friday?
25              MR. BENJAMIN:  Brock Benjamin, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3836

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3837

```
 1              THE COURT:  Mr. Benjamin, good afternoon to

 2    you.

 3              Ms. Sirignano?

 4              MS. SIRIGNANO:  Mr. Adams is on his way

 5    from the airport and will be here shortly.

 6              MR. DAVIDSON:  Mr. Blackburn will be

 7    joining us later on this afternoon or tomorrow

 8    morning.

 9              THE COURT:  Anyone have issues with

10    counsel?

11              MR. VILLA:  Your Honor, I think

12    Ms. Fox-Young intends to be here around 1:00, but she

13    will be on the phone.  I'm not sure exactly where

14    they are in transit.  I didn't want you to think she

15    was going to walk in.

16              THE COURT:  No, I knew it was later today

17    is what I've been told.

18              All right.  If I understand what we were

19    going to do, and that is we were going to take up the

20    recording device first thing this afternoon.  Is that

21    everybody's agreement?

22              MR. BECK:  That's right, Your Honor.

23              THE COURT:  Let me make a few comments

24    about that, then I'll hear what anybody wants to tell

25    me or argue.  I guess I was surprised by the quality,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3837

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3838

1    amount of material that was put into the motion.  I

2    don't know if this is something that is stock around

3    the country, this is an issue, or what.  But it did

4    seem to me the Government was working pretty hard to

5    protect these devices.  On the other hand, there was

6    a lot of material disclosed in there.  And so I guess

7    I have two reactions to it.  One, is there is so much

8    material disclosed in there, what is the Government

9    concerned about, because they've given so much

10   information?  What is that it they're trying to keep

11   secret?  And I guess, on the flip side, the

12   defendants now have so much information about these

13   recording devices, why do you need to see the ones

14   that the Government actually used here?  It seems to

15   me that the defendants have gotten a lot of

16   information here, and I'm not sure why they need to

17   actually see the devices that the Government has.

18          So -- and I know that Ms. Sirignano wanted

19   to respond to this motion.  That may make some sense,

20   given the effort the Government has put in to

21   protecting these devices.  I think I want to move

22   cautiously and deliberately on this, and not make any

23   sort of rash decisions.  If it really does implicate

24   national security, I think it's in all of us'

25   interests to be careful about forcing the disclosure

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3838

```
 1    of this.
 2              So with those comments, Mr. Beck, it's your
 3    motion to reconsider an oral -- I think my memory
 4    is -- and you can correct me if I'm wrong -- you were
 5    having some difficulty getting the FBI to respond
 6    quickly and fully about these devices.  And so the
 7    oral order was primarily to get somebody's attention,
 8    and let's have an informed debate about it.  So it's
 9    teed up as a motion to reconsider, but it's probably
10    really the first time we're looking at it in this
11    depth.
12              MR. BECK:  I think that's right, Your
13    Honor.  And I'll respond to a couple of the
14    preliminaries that the Court brought up.  The
15    Government's interest is in protecting the method of
16    how these devices are secreted in the prison or
17    hidden in the prison.  And primarily just dimensions
18    of the devices, the look of the devices.
19              THE COURT:  If you've disclosed the exact
20    model that you used here, can't they get information?
21              MR. BECK:  It's possible they can.  I don't
22    know what is out there in the public sphere.  They
23    cannot --
24              THE COURT:  So you're concerned about them
25    seeing the size of it, the actual size and shape?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3839

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6840

```
 1              MR. BECK:  And being able to see the size
 2   and shape, number one, but also sort of the
 3   counterintelligence.  Now, it's my understanding that
 4   you can't just plug in this device with the USB cord,
 5   or like a lightning wire that we have for our
 6   iPhones, or something like that; that you need
 7   special hardware and software to do anything with
 8   these devices.  But that's what the Government's
 9   interested in protecting, as well as just how these
10   devices may look in person.  Aside from that, it's
11   being able to actually access the devices.
12              So ADS, the company that makes these, I
13   don't know whether there is information on the
14   internet of what a HAWK8 device looks like.
15              THE COURT:  Do they sell these to anybody
16   but the federal government?
17              MR. BECK:  They sell them -- and Special
18   Agent Williamson will have more details about where
19   they sell them.  They sell them to government.  I
20   believe they sell them to federal and local and
21   state.  But I'm not sure on that.  And I think they
22   sell them outside the United States to other
23   governments.  But it's a proprietary device, it's a
24   proprietary software.  You and I can't go to ADS and
25   try to purchase one of these.  They don't give the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN**
**& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3840

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3841

1   FBI their software, they don't give law enforcement

2   agents their software.  So they have protections in

3   place, the data integrity systems, for reasons that

4   may appear obvious, after reading the brief.

5         THE COURT:  So shape, and size, and then

6   the charging device, how they are charged?

7         MR. BECK:  It's not how they're charged.

8   It's how the data on the device is accessed and

9   downloaded.  So they're not charged.  They use

10  batteries, as becomes obvious when some of the data

11  is looked at, you see the batteries ran dead.  But

12  the way in which the data is downloaded.

13        THE COURT:  You attached some transcripts

14  of some hearings.  Has any judge or court ordered the

15  production of these, and have they been produced

16  elsewhere?

17        MR. BECK:  Speaking with the FBI

18  Operational Technology Division, the attorneys that I

19  spoke with could not say.  They had never experienced

20  a court ordering disclosure of these devices.  They

21  couldn't say for sure that it had never happened

22  before they'd been there.  But one of the attorneys,

23  I think, had been there 10 or 15 years.  So in the

24  last --

25        THE COURT:  They're not aware of anybody?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3842

1          MR. BECK:  That's right, Your Honor.

2    That's right.

3          And so we can either have response, or I

4    can put Special Agent Williamson up on the stand, and

5    he can go through some of these things.  I do think

6    it's probably helpful to the defense at least -- and

7    that's one of the reasons that the brief is as long

8    it is, is that the Government is not trying to hide

9    things.

10          THE COURT:  I'm not trying to insult you by

11   this, but was this something that was written in

12   Washington and sent out?

13          MR. BECK:  No.

14          THE COURT:  You wrote it.

15          MR. BECK:  Yes.  And I provided it to the

16   attorneys in Washington so that they could make sure

17   that this was publicly available information and okay

18   for public filing.  But, yeah, it was based on my

19   discussions with them.  And so what I was trying to

20   do here was disclose as much information as I could

21   for everyone in the room, so that everyone would see,

22   basically, they have everything that they may get,

23   other than by looking at the devices, which could be

24   used nefariously, if they're able to inspect these

25   devices.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3842

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9843

1          And so what I was saying is I know that we

2    have come up with issues in this case in which the

3    metadata that's displayed through ADS's software, is

4    not accurate in terms of real world.

5          And I was willing to -- I thought it may be

6    helpful for everyone to have Special Agent Williamson

7    explain how that came about, and that that inaccurate

8    metadata is actually the same data that was on the

9    recorder when it recorded.

10         THE COURT:  All right.  So you are going to

11   put on Mr. Williamson?

12         MR. BECK:  I think so, Your Honor.

13         THE COURT:  All right.  Mr. Williamson, if

14   you'll come up and stand next to the witness box on

15   my right, your left, before you're seated, Ms.

16   Standridge will swear you in.

17               HUGH S. WILLIAMSON,

18      after having been first duly sworn under oath,

19      was questioned and testified as follows:

20               DIRECT EXAMINATION

21         THE CLERK:  Please be seated.  State your

22   full name, spelling it for the record.

23         THE WITNESS:  My name is Hugh S. Williamson

24   H-U-G-H, Hugh.  S as in Sam.  Williamson,

25   W-I-L-L-I-A-M-S-O-N.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 10844

```
 1              THE COURT:  Mr. Williamson.  Mr. Beck.
 2    BY MR. BECK:
 3        Q.   Special Agent Williamson, how are you
 4    employed?
 5        A.   I'm the Supervisory Special Agent at the
 6    FBI, assigned to the Operational Technology Division.
 7        Q.   And where are you located?
 8        A.   In the Audio Surveillance Unit at Quantico.
 9        Q.   What is your actual job title?
10        A.   I'm the Program Manager for the FBI's
11    Covert Body Recorder Program.
12        Q.   And what are your duties in that role?
13        A.   I supervise engineers, electronics
14    technicians, in the acquisition, testing, and
15    maintenance of body recorders used throughout the
16    FBI.
17        Q.   How long have you been the program manager?
18        A.   Since 2013.
19        Q.   What did you do before that?
20        A.   Prior to that, I was a Supervisory Special
21    Agent in the Operational Technology Division, working
22    coordination of technical support investigations.
23    And prior to that, at the Counterterrorism Division,
24    I was a supervisor for five years.
25        Q.   What kind of training and experience do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3844

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 13845

```
 1    have with what I'm going to call ADS devices?  ADS

 2    being the company that manufactures these devices.

 3         A.   Training provided by the FBI to tech agents

 4    and to ETs in the use and maintenance of the devices,

 5    and training through on-the-job training working with

 6    the devices in the company.

 7         Q.   Have you ever been qualified to give expert

 8    testimony in a case before?

 9         A.   Yes, sir.

10         Q.   And when was that?

11         A.   That was in the Peterson trial, and I

12    believe that was 2016.

13         Q.   Have you ever testified in court about ADS

14    devices before?

15         A.   Yes.

16         Q.   And do you remember the case that that was

17    in?

18         A.   That was in Cleveland, and I think that

19    was -- actually, that was 2015, the other was 2016 --

20    February 2015, a federal trial in Cleveland.

21         Q.   And other than those two trials, have you

22    ever provided in-court testimony?

23         A.   No, sir.

24         Q.   Generally, what is a body recorder?

25         A.   It's a small, solid state digital recorder,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3845

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3846

1   a little computer.  All it does is record audio.

2        Q.   Are you aware of what audio recording

3   devices were used in this case, which I'll call the

4   SNM case?

5        A.   I provided the makes and models of the ones

6   that were utilized, yes.

7        Q.   What are those devices?

8        A.   The ones I'm aware of was a HAWK8, and a

9   RAVEN2A are the ones specifically.  And then, I think

10  there may have been an EAGLE as well.

11       Q.   And who manufactures those three devices?

12       A.   They're manufactured by Adaptive Digital

13  Systems, ADS.

14       Q.   Can you tell us a little bit about the data

15  integrity systems between ADS and FBI that provide

16  the framework for these Bird devices, these ADS

17  devices?

18       A.   The FBI hired ADS to make a one-way

19  recorder, all it could do is record and download.  It

20  can't be tampered with by agents, or anyone else.

21  And in order to do that, the ADS manufacturer uses

22  proprietary software on the device to manage how it

23  functions, and an onboard device.  It uses cyclic

24  redundancy checks to make sure that the data it

25  collects has a CRC hash, as well as when it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3847

1   downloaded, it uses a SHA256 encryption algorithm to

2   hash the final data.

3       Q.   There was lot there to unpack.  We'll come

4   back to a lot of it.

5            What do you mean a one-way recording?

6       A.   Basically, you turn it on; it energizes the

7   microphone, which sends a signal to the transducer,

8   to the chip that turns it into digital information.

9   And it's recorded as you're recording on the device.

10  And when you turn it off, it stops doing that.

11      Q.   How does the person using the device turn

12  it off or on?

13      A.   It can be turned on or off manually, or it

14  can be programmed to be turned on and off using the

15  USBird software.

16      Q.   When you talked about the data and the

17  coding on the device, does the FBI have source code

18  or a way to access that code?

19      A.   No.  That is held by ADS.  And deliberately

20  so.  We don't want to know what it is.  We want to be

21  able to say that we have no access to the device;

22  can't control it, can't do anything to it except for

23  the propriety software that allows you certain

24  functions.

25      Q.   Now, the person using the device in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14848

1    real world, with the on and off switch, can they

2    manipulate the date on the device?

3         A.   They can only turn it on and turn it off.

4         Q.   Can they record over what's on the device?

5         A.   No.

6         Q.   Can they rewind it?

7         A.   No.

8         Q.   Does the device have a -- what I'll refer

9    to as a computer screen, some screen on it, where you

10   can see the data that's on there or the tracks, or

11   recording sessions?  Does the device have that

12   computer screen?

13        A.   No.

14        Q.   Now, explain to me -- explain to us all how

15   these different, what I'll refer to as recording

16   sessions come about.  How are they created?

17        A.   When the recorder is turned on, the

18   recorder begins collecting audio and putting it into

19   the device.  And it creates a session, an audio

20   session, and attaches -- as I said, the cyclic

21   redundancy checks are created as it's doing that in

22   that session.  And as long as that session -- as long

23   as it's turned on, it will continue to record.  If it

24   reaches a certain length, it will stop that session

25   and begin a new session of recording, in terms of it

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3848

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3849

1   will be a new file.  It will still be recording, it

2   will be an unbroken recording in that regard.  But

3   you won't hear anything when you listen to it.  It

4   won't stop recording until it runs out of power or

5   you turn it off.

6       Q.   If it runs out of power to stop the

7   recording, versus the user turning off the device, is

8   there a way that we can know that looking back at

9   what was on the recorder?

10      A.   Yes.  When the recorder runs out of power,

11  the program on the recorder is designed to indicate

12  that it occurred, and it will gave you a flag.  And

13  it's on the Bird player as well that's provided with

14  the evidence, it gives the flag to indicate if that

15  happens.

16      Q.   And is that also true -- do we get a flag

17  when the device itself, I think, as you said, breaks

18  the recording into different sessions?

19      A.   Yes, there is a series of flags that ADS

20  has designed into it to indicate certain things that

21  occur on the recorder.  Not everything.  One of them

22  is a flag to indicate when the session has reached a

23  certain length and it breaks it up.  And it does that

24  so it can provide the right size to put on an

25  evidentiary disc.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                            1-800-669-9492
                                                 e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3849

1    Q.   So it sounds like one way a session is
2    created is the user turns the device on and then off
3    again; is that true?
4    A.   Yes.
5    Q.   Another way is if the device splits the
6    file because of its size; is that true?
7    A.   That can happen, too, yes.
8    Q.   And then a third way is that the device
9    would run out of power?
10   A.   There is one where it's a low battery, or
11   power stops, is two different flags.
12   Q.   All right.  Is there another way in which a
13   recording session may be created?
14   A.   I don't understand the question.
15   Q.   Is there another -- beside those three, on
16   and off; the internal software, file size, and the
17   running out of power in some method, is there another
18   way in which a recording session may be created on
19   the device?
20   A.   Not that I'm aware of.
21   Q.   How is the information, the data on the
22   device taken off of the device?
23   A.   The data on the device is downloaded using
24   USBird software.  And it's proprietary software
25   that -- it's the only way you can see the device,

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3850

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3851

```
 1   when you mount it to your computer, it's the only way
 2   that you can see that it has recordings on it.  And
 3   it allows you to download those recordings to an
 4   evidentiary disc.
 5        Q.   Who downloads the recordings onto the
 6   evidentiary disc?
 7        A.   In the FBI, depending on the division,
 8   different personnel could do it.  It could be a case
 9   agent.  It could be an evidentiary operations
10   technician.
11        Q.   Are you aware of how it works in the
12   Albuquerque office?
13        A.   My understanding in Albuquerque is that all
14   ELSUR is downloaded by ELSUR operations technicians.
15        Q.   I want to go a little bit more in-depth
16   about when the information is downloaded.  What's
17   your understanding of what is created on this
18   evidentiary disc when you download it, how that's
19   made?
20        A.   When the USBird software conducts a
21   download of evidence from the recorder, it takes all
22   of the recorded sessions, all the sessions that are
23   collected, and takes the metadata that's on the
24   recorder.  And there is another file called an IDS
25   file, which is used when you have a video recording,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3851

1    which was not used in this case.  And it creates a

2    SHA256 hash calculation for that -- those files.

3        Q.   What's a SHA256 hash creation?  I just

4    learned this this morning, so it may be helpful for

5    some.

6        A.   It's a secure hash algorithm that was

7    created by NSA, and was released through the federal

8    government to all industry in 2001.  It's the

9    National Institutes of Standards hash algorithm to

10   secure data, to show that something that was created,

11   the data that was on a computer or device that was

12   downloaded is the same as it was before.  It creates

13   a unique hash to the ones and zeros that make up

14   those files.

15       Q.   What happens if you're downloading from the

16   recording device, and you don't download all the data

17   onto the evidentiary disc?

18       A.   If you don't download all the data from the

19   recorder onto a disc, it's not considered evidence.

20   It has to be everything downloaded to be evidence.

21   That's the way it's designed.  You have to download

22   everything from the recorder onto an evidentiary

23   disc.  And if you don't do that, the device -- you

24   can't erase it.  And also, if you go to try and make

25   another recording, it won't let you make another

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3852

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3853

1    recording.

2         Q.   What happens when all of the data is

3    downloaded from the device onto the evidentiary disc?

4         A.   In terms of the process, or --

5         Q.   Yes.

6         A.   The USBird software, as I said, it

7    generates a SHA256 hash calculation.  And it checks

8    it against the original, and then it burns it to a

9    disc that is finalized.  And the disc itself being

10   finalized cannot be manipulated.  And it allows you

11   to go back, if you desire, if you need to, to erase

12   the recorder.  And you have to erase the recorder if

13   you want to use it again.

14        Q.   Now, the information on the recorder, if

15   you do erase the recorder after the evidentiary disc,

16   is that information stored anywhere else besides the

17   evidentiary disc?

18        A.   No.  And the way that ADS software works,

19   it writes ones and zeros all over the recorder's

20   short-term memory, or its flash memory, they call it.

21        Q.   Is that information, when you download it,

22   stored on an FBI hard drive as well as the disc?

23        A.   It can be copied and put onto something

24   else.  But the evidence is stored in an ELSUR

25   operations storage room.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                              1-800-669-9492
                                                    e-mail: info@litsupport.com
                                                                      DNM 3853

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20 3854

```
 1        Q.   The evidence -- are you referring to the

 2   disc itself is stored in the ELSUR --

 3        A.   The disc itself.

 4        Q.   What I'm asking, the information that goes

 5   on that evidentiary disc, is that stored in the cloud

 6   or at FBI headquarters?

 7        A.   In some cases, it is uploaded to certain

 8   databases in other types of investigations; not -- to

 9   my knowledge, it could also be put into other

10   databases used for language review, if you had a

11   language you needed to review evidence, a copy of it

12   could be put up there.  But it would be a copy of the

13   evidence.  It wouldn't be the original evidence.

14        Q.   Was there a backup of the evidentiary discs

15   in this case?

16        A.   I understand there are copies.  I have

17   several copies here.

18        Q.   Besides copies on CDs, is there a backup in

19   a computer or mainframe or cloud?

20        A.   There is not that I know of, not for this

21   case, no.

22        Q.   How can you ensure that the data that was

23   on your recording device is the same data that was

24   put on the evidentiary disc?

25        A.   Well, we know that the ADS software, using
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    proprietary software, creates a hash calculation.

2    And it provides a text file, which is that hash

3    calculation.  And that's part of the original

4    evidence created at download.  And you can go back

5    and you can run a SHA256 calculation against what you

6    have in evidence, using an after-market SHA256

7    calculator, and compare it to the hash calculation

8    that was originally created with USBird software, is

9    one method.

10        Q.   And did you do that to validate some of the

11   evidentiary discs in this case?

12        A.   I did.

13             MR. BECK:  At this time, Your Honor, I'd

14   like Special Agent Williamson to demonstrate how he

15   checked the evidentiary disc, what we're calling

16   D55 -- checked the metadata, with this third party

17   SHA256 software to ensure that what was downloaded

18   from the device is the same as what appears on the

19   evidentiary disc, which the defendants have.

20             THE COURT:  All right.  You may.

21             THE WITNESS:  Thank you, sir.

22        Q.   And just go ahead, and if you would,

23   Special Agent Williamson, narrate what you're doing

24   on your computer there for us in the courtroom.

25        A.   So first --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3855

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 23856

 1           THE COURT:  Let me ask Ms. Jacks, Ms.
 2   Sirignano, y'all have been the most interested in
 3   this.  If a couple of you want to come up closer and
 4   stand over here, you're welcome to do it.
 5           MS. JACKS:  Okay, thank you.  I thought we
 6   were going to see it on the screen.
 7           THE COURT:  Oh, we're going to see it on
 8   the screen.  Okay.
 9       A.   Okay.  First, to show -- this is the player
10   software.  It shows the sessions for D55, which is --
11       Q.   By the player software, you're referring to
12   what comes on these evidentiary discs entitled
13   player.exe; is that right?
14       A.   Yes.  I can show you that file.  Here is
15   that HAWK file here.  And these files here are all
16   files that are used to make the player work, dll
17   files, they have nothing to do with the evidence, it
18   just makes the player play what's on the evidence,
19   which is this file here, 1168.
20       Q.   Special Agent Williamson, I'm going to cut
21   you off right there.  So 1168, is that the serial
22   number of the device used in that case?
23       A.   Yes, that's the serial number for the HAWK8
24   that was used.  So on that file, there is 11 sessions
25   or 11 files represent 11 sessions, and the IDS file,

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 3856

1   which I mentioned is when you have a video recording

2   and you have to translate that video evidence so the

3   Windows machine can see video.  That was not used

4   here.  There is no video.  The RCD file which

5   contains the metadata.  And that RCD file, we can't

6   access it.  There is a proprietary hash that ADS puts

7   on that, so I can't go in there and manipulate that

8   RCD file.  But it is a hash calculation against all

9   these files.

10       Q.   Not unless you go in and manipulate that

11   file right there, .RCD, on our computer?

12       A.   No one can.  Only the vendor can go back

13   and look at it and tell you what's on there without

14   going through a USBird software.  It would only allow

15   certain information.

16           THE COURT:  Mr. Beck.  Let me make sure I

17   got everybody on the phone.  I know I had Ms.

18   Fox-Young.

19           Ms. Strickland, are you on the phone?  Is

20   there anybody besides Ms. Fox-Young on the phone?

21           MR. ADAMS:  Chris Adams, Your Honor.

22           THE COURT:  Okay.  Mr. Adams, but

23   Ms. Strickland is not on the phone?  Ms. Strickland,

24   if you're on the phone, do you have your mute button

25   on?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3857

```
 1              All right.  Go ahead, Mr. Beck.

 2       Q.    So these files that we're looking at here,

 3  which start at 1168.001 and go through 1168.011, is

 4  there any way to access those files without the ADS

 5  proprietary software that you know of?

 6       A.    No, sir, there is no way, because it's

 7  locked down.  It only can be seen using their

 8  proprietary software, and we don't have the source

 9  code for that.

10       Q.    And are those the files that are on the

11  recording device before it's downloaded?

12       A.    All these files, 001 through 11, and then

13  the IDS and the RCD file, were on the HAWK recorder

14  before it was downloaded.  And then the text file was

15  created by the USBird software when it created the

16  SHA256 hash calculation.  And that text file, if I

17  opened it up, will show you the calculation numbers

18  for the 11 and the RCD and the IDS.

19       Q.    So these are the hash values -- these are

20  the hash values for each of those files?  Is that

21  what we're seeing here on this text file?

22       A.    Yes, sir.  And I'd have to go back and show

23  you the USBird verification to show you the

24  original -- how USBird does it.

25       Q.    All right.  I think earlier you said that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3858

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25

 1   you could check these hash files using a third-party

 2   recorder -- or third-party software.

 3       A.   Yes.  And so because SHA256 is a national

 4   standard, international standard, it's open source to

 5   everyone.  Anyone can use it, that algorithm is

 6   available through third-party vendors.  And this is

 7   one program that OTD-FBI purchased for our use in

 8   this case.

 9       Q.   And so at the top there I see in blue

10   writing of this third-party software, it says

11   http:\\www.quickhashgui.org, is that where you may be

12   able to download this software?

13       A.   Yes.  I think it's a free download.

14       Q.   So continue on to show us how verified.

15       A.   So this software, in particular, provides

16   an ability to check the hash calculation of an item

17   of evidence -- any file that's been hashed against a

18   variety of algorithms.  MD5 is one, SHA1.  And in

19   this case it's SHA256.  So select that algorithm to

20   be used.  And everyone has that algorithm.  It can be

21   obtained anywhere.  And then I select a directory.  I

22   don't want to save to it to a CSC so I took care of

23   that.

24       Q.   So to get to the screen we're looking at

25   that says "select directory," you clicked on the tab

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3859

 1    at the top of the software that is file capital S; is

 2    that right?

 3          A.   Yes, sir, that tab file, capital S, allows

 4    you to run the hash against multiple files.

 5          Q.   How did you run the hash against the files

 6    on this evidentiary disc?

 7          A.   Using select directory, I found it on the

 8    drive where the disc is, go to where the evidence is,

 9    to copy evidences.  And there is the HAWK folder.

10    And there is the 1168 folder.  I select that folder.

11    And then quick hash will run everything on that

12    folder through a SHA256 algorithm and calculate a

13    value for each file.

14          Q.   And that 1168 file we saw there, that's the

15    file we just looked at that had 11268.001 through

16    1168.011?

17          A.   Correct.

18          Q.   Go ahead, press "okay" to run it through

19    that file.

20          A.   So your result for those files on 55, it

21    provides a -- open this up -- it provides a hash

22    value.  So that's the solution.  So look at 001, and

23    there is all those numbers and letters.  That's the

24    solution or the hash value that was created by

25    SHA256, when it ran that file, 001, all the ones and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3860

1    zeros in that file through the algorithm.  And I can

2    go back and I can compare that.

3        Q.   When you say "go back," now you're clicking

4    on the notepad icon at the bottom where you had the

5    .txt file open?

6        A.   Right.  And I'll show you where it came

7    from again.  This is from the original evidence, this

8    is what was created by the USBird software that is

9    from the ADS recorder.  This is a hash calculation

10   value created by USBird when it downloaded the

11   original evidence, is in this file, 1168 text --

12   .txt.  And this is it.  And I can take it and I can

13   compare it against the other files that I just

14   hashed.

15          An example, go to 001, and on the text file

16   from USBird from the ADS recorder, the first four

17   digits are 9DD9.  And if you look at 001 through the

18   quick hash, there is 9DD9.  You look at the last ends

19   FOCAA.  And look down here FOCAA on 001.  And the

20   same thing for all these files.  I did them last

21   night.  They match up.  It's a match.  I'm absolutely

22   certain these are identical files.

23       Q.   Thank you.  If you would, let's go back

24   into the player software.  So now we're looking at

25   the player software that comes on the disc, and there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3861

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 28862

1   seems to be -- how many recording sessions are

2   reflected here?

3       A.    Eleven.

4       Q.    And how many of those recording sessions --

5   and you may have to think about this -- how many of

6   those recording sessions were created because the

7   person who had this device turned it on and then back

8   off again manually?

9       A.    Well, because I know one of them spanned

10  here, I'd have to go back and look at the date -- I'd

11  have to go back and look at the times.

12      Q.    When you say, "one of them spanned here" --

13      A.    Number 8 was definitely a recording that

14  was cut short, so it had to continue recording as

15  another session, because the device said:  I'm going

16  to chop this whole session into lengths that can be

17  put onto a disc.

18      Q.    And you know that how?

19      A.    Look at the date and time here on line 8,

20  that is a green flag, which is -- the green flag

21  comes from the flags here provided by ADS.  There is

22  a green flag, recording was split due to size limit.

23  So that's something that the recorder created during

24  the recording session.  And it was put in there as

25  part of the original session.  You look at the date

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3862

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 29863

1    where it says ending 2/4/2016, the time of 19:52 and

2    26 seconds.  Look at the next line, line 9.  It says

3    the start time is 2/4/2016, 19:52 and 26 seconds.  So

4    the start time and end time are the same, which tells

5    me that it's a continuation of that same recording

6    that was started at 19:30 on 2/4.  And those two

7    there are one recording because then it ends at 19

8    minutes 53 seconds.  And then there is the -- a new

9    recording begins later.  They're not the same,

10   they're not connected.

11        Q.   Let me start looking at session 9 and 10 on

12   this 1168 disc.  Does it look to you like session 9

13   ends on February 4 at 19:53:13?

14        A.   Yes.

15        Q.   Then session 10 begins at 19:57:20; is that

16   right?

17        A.   Yes.

18        Q.   So that's approximately --

19        A.   Five minutes.

20        Q.   -- five minutes apart.  Does that indicate

21   to you -- does that establish that in 9 the device

22   was turned off, and then approximately five minutes

23   later, the user then clicked the on button to turn it

24   back on and begin the next session?

25        A.   If it was a manually turned on and off

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   recording, yes.
 2        Q.   And if this was created with the HAWK8
 3   device, is it a manually operated recording device?
 4        A.   My understanding of the case it was used in
 5   the manual mode, yes.
 6        Q.   Now, did you look at another copy of an
 7   evidentiary disc that we labeled ID56 in this case?
 8        A.   Yes.
 9        Q.   Would you put that into the player, please?
10        A.   There is the HAWK for 56.
11        Q.   And so this disc -- is your understanding
12   that the serial number of this recorder was 2373?
13        A.   Yes.
14        Q.   And how do we know that?
15        A.   Well, I can go back to USBird.
16        Q.   That's okay.  Do we know that because
17   that's the name of the file there?
18        A.   Yes, that's the name of the file there,
19   yes.
20        Q.   Go ahead and open back up the file there.
21   And please bring up the player.exe.  And what does
22   player.exe convey to us about the dates and times and
23   lengths of the recordings on this copy of the
24   evidentiary DVD?
25        A.   Well, knowing ADS recorders, and looking at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 31865

```
1    this it says 12/30/1899, and the same start and end
2    time, and length of zero, I know that what happened
3    is the clock battery -- there is an onboard clock
4    battery on the ADS recorder, that if it goes dead, it
5    no longer generates a time or a date.  So there is
6    negative input to the recorder for that information.
7    So there is a default entry, which they call an epic
8    time, date, and that's the 12/30/1899.  And then,
9    because there is no clock running, then, when the
10   metadata is generating, it won't give duration of the
11   record.  It will record, it does record, and I can
12   verify this, that it was recording, recorded
13   sessions.  You can play them, you can hear them.
14        Q.   So if you would play for us recording
15   session number 1.  Just start the player.
16        A.   (Witness complies.)
17        Q.   So we heard that there is a recording there
18   in session number 1?
19        A.   Yes.
20        Q.   Do we know the length of that recording by
21   what you're seeing on the player?
22        A.   Down here, that number there is not
23   relevant to the recording.
24        Q.   So is that a:  No, we don't know?
25        A.   You'd have to sit and listen to it with a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3866

1    stopwatch.  And you could do that.  It would come to

2    a known time, because --

3        Q.    Looking at these sessions, can you tell

4    which of these sessions was created by the person

5    operating it clicking on or off the device?

6        A.    Only because there is no flag showing.  Can

7    I say, well --

8        Q.    Sure.  So I think I was asking a yes or no

9    question.

10        A.    Yes, I would say, without having that --

11    without listening to each individual one and seeing

12    if there is continuity, I can't from the player, no.

13        Q.    Okay.

14        A.    I can tell from the flag that something

15    occurred, though, that would indicate a connection,

16    recording.

17        Q.    It's my understanding, though, that if

18    there was something that happened besides turning on

19    and off the device, it would be reflected by a flag;

20    is that right?

21        A.    Certain things would be reflected.  The

22    loss of battery power.  And again, the flags, the

23    specific flags provided low battery, power fail, the

24    spanning due to size limit, and other ones that don't

25    appear here and don't apply.  The camera loss,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3867

1    because there was no camera used.  And then things

2    don't apply because we don't have GPS involved with

3    this device.  And then I don't see the yellow flag.

4         Q.   So, for instance, if we look at session 13,

5    what does that flag tell us?

6         A.   13 is a red flag, and red flag is a

7    recording with low battery, which is basically the

8    battery lost enough power to run the device, so it

9    stopped recording.

10        Q.   To your understanding, are there two

11   different batteries in this HAWK device?

12        A.   There are two batteries.  There is the

13   battery that runs the clock battery, which is like a

14   small watch cell size of battery.  And there is a

15   normal battery that it uses.  It has more power to

16   run the recorder.

17        Q.   And which one went out?

18        A.   The clock battery went bad.

19        Q.   All right.  Now, did you validate the hash

20   values?

21        A.   Yes.  Do you want me to do it with USBird

22   as well?

23        Q.   No.

24        A.   So I have the text from the file, and a

25   copy of the evidence it provides.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34

```
 1        Q.   I think what I'm asking is did you verify
 2   the hash values of this disc?
 3        A.   Yes, I did.
 4        Q.   And in that verification, what did you
 5   find?
 6        A.   It was a match.  These are identical.
 7        Q.   Does that mean that all of the data that
 8   was on the recording device was downloaded to the
 9   evidentiary DVD?
10        A.   Yes.  Based on the performance of USBird
11   verification and the confirmation with the quick
12   hash, this information is what was recorded by the
13   recorder and downloaded from the recorder.  It's
14   authentic evidence.
15        Q.   Does the player here on the disc help you
16   understand whether the data on the device matches up
17   with the data on the DVD?
18        A.   Yes.  The data on the device, during
19   recording, it creates a cyclic redundancy check,
20   which is basically a long division problem against
21   every certain block of information.  And it records
22   that with the original evidence, and it allows you to
23   go back and see if the solution comes out, if it's
24   been changed or not.  If it's been changed, you'll
25   have a failure, you won't have the same solution.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3869

1    And it's built into this computer, it's built into

2    every computer; pretty much every computer uses

3    something like is this to make sure that data is not

4    corrupted.

5            In this case, what's on the ADS recorder, a

6    cyclic redundancy check was created, and that was

7    provided with the evidence.  And the player looks at

8    that.  And if it doesn't solve correctly, it will

9    give you a "check some error."

10   Q.   So is it your understanding that if the

11   data on the device is the exact same as the data on

12   the evidentiary DVD after the download, that that's

13   why we can see what's on the player and listen to the

14   recording?

15   A.   It's the only way can you see this

16   evidence, on an ADS USBird player.

17   Q.   If they didn't match up --

18   A.   You'd have an error; you'd have a check

19   some error, and it wouldn't be able to play.

20   Q.   Did you also look at ID60, a disc that was

21   ID60?

22   A.   Yes.

23   Q.   Would you bring that up?

24   A.   So this is the disc on 60.  Again, the

25   serial number.  This is the player display.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3870   36870

1      Q.   So with this DVD, is it possible that the

2   dates and times reflected for start and end for

3   session 1 may not be the exact real world dates and

4   times in which these recordings were made?

5      A.   Yes.   That's very possible.

6      Q.   How is that?

7      A.   The date and time can be assigned.   Because

8   we deploy these around the world in different time

9   zones, we require that the vendor give us an ability

10   to set a date and time on the device.   So prior to

11   deploying the device, the user, usually a tech user,

12   could be a case agent can, using the USBird software,

13   calibrate the date and time on the device with your

14   date and time clock on your computer.   And so it's

15   possible that someone did not correct the date and

16   time on the device, or set it deliberately to another

17   date and time.   There was nowhere -- we ship these to

18   different field offices, so it may have been on

19   eastern time, or a different time zone before it was

20   sent to Albuquerque and was never changed.

21      Q.   So it sounds like the dates and times could

22   be inaccurate based on not setting the device

23   correctly?

24      A.   For many reasons, it could be, yes.

25      Q.   Now, even if that's true, can you account

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3870

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 37

1    for the time between recording session 1 and

2    recording session 2?

3         A.   I would say, from looking at recording

4    session 1, that ends says 13:50, 13 minutes 50

5    seconds on the 11th, purportedly.  And then the next

6    session starts at 12:55 on the 12th.  They stopped

7    the recorder, and they turned it back up on the next

8    day.

9         Q.   Why does this tell you that?

10        A.   Well, I'm looking at the date, 5/11 is when

11   it was ended, session 1, and then starts on 5/12.

12        Q.   And are those -- and this -- when I'm

13   looking there at recording session 2, and I see

14   12:55:44 is that hours, minutes, and seconds?

15        A.   My understanding that's minutes and

16   seconds.  I might have to go back and check.

17        Q.   Well --

18        A.   The way it's written.

19        Q.   Does it tell you anything -- if we're

20   looking at 12:55:44, we look at 12:57:20, and that's

21   a minute and 36 seconds length, displayed on the

22   player.  Does that help you?

23        A.   Yes, I'm sorry, it's minutes and seconds,

24   and then tenths of seconds.

25        Q.   I think that's wrong.

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3871

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 38 3872

```
 1          A.    Okay.  I'm looking at 12:55:57.

 2          Q.    Yeah.  So I think the 55 and 57 --

 3          A.    I'm sorry.  Excuse me, it's -- yeah,

 4    minutes.  So 12 minutes 55 seconds, to -- excuse me

 5    55.44 to 57.20, yeah.

 6          Q.    Is that hours, minutes, and --

 7          A.    Hours, minutes, seconds, yes.

 8          Q.    Okay.  Thank you.  And so did you

 9    validate -- using the SHA256 algorithm, did you

10    validate the date on this evidentiary disc?

11          A.    I did.

12          Q.    And what did that process tell you?

13          A.    It was a match; that the hash calculation

14    for the evidentiary disc, when I ran it, compared it

15    to the hash calculation; with quick hash, they

16    matched.  It was an identical match.

17          Q.    So that means, if the dates and times are

18    off here in this player, they were off when these

19    files were created on the device?

20          A.    Yes, correct.

21          Q.    All right.  Did you also look at disc ID58?

22          A.    Yes.

23          Q.    And just bring that up, if you will.

24          MR. BECK:  For the record, I don't know how

25    it's disclosed to you, but that's how we keep track
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3872

```
 1    of things.

 2         Q.    Is the serial number for this device 0730?

 3         A.    Yes.

 4         Q.    And it looks like, when we bring it up in

 5    the player, we don't see any warning flags; is that

 6    right?

 7         A.    I see some green flags indicate it's

 8    spanned due to the size of the file.

 9         Q.    And that's -- when you scrolled down,

10    that's from sessions 21 through 34.

11         A.    21, 22, 23, 25, 29, 32, and 34 have green

12    flags.  They reached their size limit.

13         Q.    Did you do the hash value validation for

14    this disc, ID58?

15         A.    Yes.

16         Q.    What did that validation tell you?

17         A.    Those hash calculations were a match as

18    well.

19         Q.    So was all the information, all the data on

20    the device downloaded to this evidentiary DVD in the

21    same --

22         A.    Yes.  From what was on the recorder, it's

23    identical to what's on this.

24         Q.    Okay.  And I want to take you back now to

25    the DVD two times ago.  You don't have to do anything
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3873

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 40 3874

```
 1   there.  I just want to ask you a question about it.
 2   That was the DVD where all the dates said they were
 3   in the year 1899.  Do you remember that DVD?
 4        A.   Yes.
 5        Q.   Did you do anything with that evidentiary
 6   DVD to see if you could, in fact, find dates and
 7   times of when those recordings were made?
 8        A.   Yes.  In order -- when we have problems
 9   with the recorders or recordings because of some
10   error, we take them to the vendor who owns the
11   proprietary software and have the source code.  We
12   will have the Los Angeles division EOT take it to the
13   vendor and sit with the technician as they try to
14   access it, and see what they can see.
15        Q.   Did that happen with this DVD?
16        A.   We did.  We sent it back.
17        Q.   And what happened?
18        A.   They could not recover any data because the
19   clock battery had not provided that data regarding
20   the date and the time.
21             MR. BECK:  Thank you, Special Agent
22   Williamson.  Nothing further.  And just for the
23   record, I couldn't read the handwriting on there.
24   It's actually 1D, not ID for those.
25             MS. JACKS:  I'm sorry?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3874

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3875

```
 1              MR. BECK:  It's 1D.  I just read it

 2    incorrectly.

 3              No further questions.

 4              THE COURT:  All right.  Thank you, Mr.

 5    Beck.

 6              Ms. Jacks, do you want to start?

 7              MS. JACKS:  I do.  But I'd just like a

 8    moment to confer.

 9              THE COURT:  You may.

10                      EXAMINATION

11    BY MS. JACKS:

12         Q.   Good afternoon, Agent Williamson.

13         A.   Good afternoon.

14         Q.   I'm going to start with the easy stuff.

15    First of all, you said you're the program manager for

16    the covert body recording program, right?

17         A.   Yes.

18         Q.   So, as the program manager, I think you

19    mentioned you're responsible for the acquisition of

20    the devices?

21         A.   I'm not directly responsible for the

22    acquisition.  Finance division has a protocol in

23    place, through federal law, that governs how we

24    acquire them.  These were acquired before I became

25    the program manager.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3876

1     Q.   You mean all the ELSUR devices that we're

2     talking about today?

3         A.   The contract for their purchase was before

4     I came there.

5         Q.   Okay.  The testing of the devices is under

6     your authority?

7         A.   The testing that we do at Quantico, the

8     limited testing we do, yes.

9         Q.   That's to try to make sure that when they

10    go out in the field there is procedures in place that

11    ensure that the devices work as they're supposed to?

12        A.   I don't understand your question.

13        Q.   Well, what is the testing that you do?

14        A.   To make sure that they work; power them up,

15    they actually make a recording and they actually

16    function the way they're supposed to.

17        Q.   Okay.  And that you can set the date?

18        A.   Yes.

19        Q.   And that the times reflected on the summary

20    charts that you've shown us today are the actual

21    times?

22        A.   That's not set by us.  That's set by the

23    operator in the field.

24        Q.   What's set by the operator in the field?

25        A.   The date and time they're going to use.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3876

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43877

1    Like I set a date and the time for a recorder, and

2    they go somewhere else, and they want to use their

3    date and time.

4        Q.   Right.  I think you explained that.  So,

5    for example, if these devices were checked out in

6    Albuquerque, there would be a person in the

7    Albuquerque office that has the responsibility of

8    setting the devices up with the proper date and time?

9        A.   I'm not familiar with Albuquerque's

10   procedures.

11       Q.   So you don't know if the Albuquerque -- the

12   ELSUR person in Albuquerque or people in Albuquerque

13   are tasked with putting in the date --

14       A.   No.

15       Q.   -- properly?

16       A.   No.

17       Q.   So there is not some sort of national

18   standard for how these devices are to be calibrated

19   before they're sent out in the field?

20       A.   When you say "national standard," I don't

21   understand that.

22       Q.   The standard that you, as the program

23   manager of the covert body recording program, put in

24   place to ensure that when people use these devices

25   they use them right.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3877

 1       A.   When we teach the tech agents how to use
 2  them, we teach them to set the time and date
 3  appropriately.
 4       Q.   Okay.  And the tech agents are the people
 5  that then would be sent out into the field to manage
 6  the ELSUR devices in any particular office?
 7       A.   They would assist the ELSURs, yes.
 8       Q.   I'm sorry?  They would what?
 9       A.   They would assist the ELSUR operations
10  technician in how to properly do that, yes.
11       Q.   Okay.  So the idea would be that they would
12  train the ELSUR operations technician how to set the
13  time and date?
14       A.   And we do also provide training to ELSUR
15  operations technicians to do that as well.
16       Q.   Okay.  Just so that I understand when you
17  say "ELSUR operations technician," that's the person
18  that would be in the FBI field office?
19       A.   They are in the FBI field offices, yes.
20       Q.   And who is the person that would be sent
21  out there to train them?
22       A.   We don't send anyone out to train them.
23       Q.   The person that you were talking about, I
24  think that you actually trained in how to set up the
25  devices, what is that person?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3879

1          A.    We have regular training of technically

2     trained agents.    There is a whole program that does

3     that.    And part of their instruction is teach them

4     how to use these devices.

5          Q.    Okay.    So these would be special agents

6     that are technically trained at Quantico on how to

7     operate the devices?

8          A.    Some of their training does occur at

9     Quantico.

10         Q.    And then they would be sent out the various

11    field offices to train the ELSUR operations

12    technicians?

13         A.    We also run -- that is one thing that can

14    happen.    We also have training, not throughout all

15    ELSUR operations technicians.    There is a ELSUR

16    operations technician program that provides training

17    at times.    And that's a different unit that does

18    that.    Not my unit.

19         Q.    And so the ELSUR operations technician

20    would go to that training and learn about the

21    devices, and receive some sort of acknowledgment that

22    they had completed that training?

23         A.    I would assume so.    I don't know.    I don't

24    run the program.

25         Q.    Okay.    I think you said you were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3880

1  responsible for supervising the maintenance of the

2  ELSUR devices; is that right?

3       A.   To the degree that we can do that at

4  Quantico, yes.

5       Q.   Okay.  So you supervise the maintenance of

6  the devices that are back in Virginia; is that right?

7       A.   Yes.

8       Q.   But you don't have anything to do with the

9  maintenance of the devices that are in the other

10  field offices?

11       A.   We provide guidance, and we ask that

12  certain things be done.  But that's part of what is

13  provided the technically trained agents.  But they're

14  not the ones always holding the devices.

15       Q.   I'm sorry?  They're not the ones --

16       A.   I mean, the tech agents are -- some of the

17  people, ELSUR operations technicians also; it depends

18  on the field office.

19       Q.   Is there some sort of requirement that a

20  field office have somebody that's been through a

21  specific training that you developed?

22       A.   Yes.

23       Q.   And what that is requirement, or what are

24  those requirements?

25       A.   They attend the tech training, which is in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3880

1    a different unit.  And they attend the ELSUR

2    operations training, which is a different unit as

3    well.

4         Q.   And there has to be, what, one person in

5    each field office that has accomplished those two

6    things?

7         A.   I don't know how many people are required.

8         Q.   In connection with your job as the program

9    manager of the covert body recording program, do you

10   provide any sort of instruction or standards on how

11   the devices are to be used in the field?

12        A.   There are -- there is training provided in

13   the TTA program that the TTAs are given.

14        Q.   The TTAs are the technical training agents?

15        A.   Technically trained agents, yes.

16        Q.   And are the technically trained agents

17   given instructions on how a person that's given the

18   ELSUR device is supposed to be educated with respect

19   to its operation?

20        A.   I don't understand what you mean by that.

21        Q.   Well, what I mean is, like, are they told

22   something like:  When you give this device to

23   somebody that you're going to ask to use it in a

24   subreptitious fashion, they should be instructed to

25   leave it on during the entire conversation that's at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    issue?

2        A.    That's not something you would teach

3    everybody to do.

4        Q.    Okay.   Is there any requirement or any

5    training that when you're providing this ELSUR device

6    to somebody who is going to use it in the field, they

7    should keep it in their presence for the entire time

8    of the conversations they're recording?

9        A.    No.

10       Q.    Is the information that these technically

11   trained agents are trained on published somewhere?

12       A.    Do you mean are there syllabi that exist?

13       Q.    Correct, somewhere within the FBI.

14       A.    Yes.

15       Q.    And where is that?

16       A.    At the Technical Operations Development

17   Unit, which is in charge of the TTAs.

18       Q.    And they keep records of what sort of

19   topics and things these technically trained agents

20   are educated about?

21       A.    Yes.

22       Q.    Now, Mr. Beck asked you some questions

23   about the ELSUR device actually terminating a session

24   and starting a new session on its own.  Do you recall

25   those questions?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3882

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 49

```
 1          A.    It doesn't terminate a session and start a
 2     new session by itself.
 3          Q.    Okay.  Well --
 4          A.    Unless you say it's spanning the limit, you
 5     mean.
 6          Q.    That's exactly where I was going.
 7          A.    Yeah.  With an excessive size, it will
 8     create a new session, yes.
 9          Q.    Okay.  And the ELSUR device does that on
10     its own, without any input from the operator?
11          A.    The device does it automatically.
12          Q.    And you're saying that happens when the
13     recording reaches a certain length?
14          A.    Yes.
15          Q.    And is there some sort of set length on the
16     recording?
17          A.    No.  It's dependent upon each device's
18     capacity, and when it was -- different devices, my
19     understanding, have different lengths.  And I don't
20     know them off the top of my head.  I'd have to go
21     look them up.
22          Q.    Within the same device, is there a
23     consistent length that is -- then causes a session to
24     terminate and begin a new session?
25          A.    Well, the models have different series.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50

```
 1    the HAWK8 had multiple models, or variance.  So I
 2    don't know if they changed or they are the same.
 3         Q.   What about within a particular HAWK device,
 4    within -- when we're looking at these folders here,
 5    that are displayed -- let's look at the one that's on
 6    the screen.  You pulled up the recordings that are
 7    designated on HAWK file 0730, right?
 8         A.   This one here?
 9         Q.   Yes.  Does that identify a particular
10    individual HAWK device?
11         A.   Yes.  The HAWK serial number at the top,
12    0730.
13         Q.   Okay.  And with respect to a particular
14    HAWK device; for example, this one, 0730, would there
15    be a distinct length of time that would then cause a
16    session to terminate and start a new session?
17         A.   It wouldn't be time.  And again, you're
18    looking at a video -- audio-video recorded, and so
19    it's data; it's based on data.
20         Q.   It's based on the amount of data?
21         A.   Yes.
22         Q.   So is there, within a device, let's say the
23    amount of data is one gigabyte.  If the amount of
24    data exceeds one gigabyte, would it then
25    automatically reset every time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 51

1    A.   It's much lower than that.

2    Q.   Okay.  Then you pick the number.

3    A.   I don't know it off the top of my head.

4  I'd have to go find out.

5    Q.   But do you understand the tenor of my

6  question?

7    A.   Yes.

8    Q.   I mean, is it like every time when it hits

9  that limit --

10    A.   Yes.

11    Q.   -- it would then reset?

12    A.   When it hits that limit, it will create a

13  new session.  So it can fit all that onto a single

14  evidentiary disc.

15    Q.   And on a single recording device that would

16  be consistent over time, according to you?

17    A.   It should be, yes.

18    Q.   Now, I think that the device that we're

19  looking at here, you said that has audio and video?

20    A.   Excuse me, yeah.  In this case, no, it

21  doesn't.  It has no video at the top, and it has

22  stereo, so it's just audio for this one.

23    Q.   Okay.  So if a device like this device,

24  0730, is simply recording audio, would you expect it

25  to start a new session after a particular amount of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3885

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 52

```
 1  time in a consistent fashion?
 2       A.   No.
 3       Q.   Okay.  And why is that?
 4       A.   Because it's based on data, not time.
 5       Q.   So it would depend on the amount of
 6  talking?
 7       A.   Or noise, how much information is coming
 8  through the microphone.
 9       Q.   So I want to talk to you about the first
10  evidentiary disc that you discussed.  And,
11  unfortunately, we don't have them identified the same
12  as you.  But it was the first one that you pulled
13  up -- I think it had -- it was 1168.  And I think you
14  had a total of 11 sessions.  The file was 1168.
15       A.   Let me see.
16            MS. JACKS:  Do you know which one it was?
17            MR. BECK:  It was 1D55.
18       A.   Do you want me to put that one on?
19       Q.   Please.  Yeah, that's the one.  Thanks.
20            So, just to reiterate the last -- I guess
21  the last series of questions.  If you look at session
22  8, that recorded 21 minutes 55 seconds of audio; is
23  that right?
24       A.   Yes.  The length shows 21 minutes 55
25  seconds.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3887

1        Q.    Then the green flag shows that the session

2    was terminated, and a new session was automatically

3    started by the device?

4        A.    Yes.

5        Q.    Because the size limit was exceeded?

6        A.    Yes.

7        Q.    And then the second part of that same

8    conversation lasted about 47 seconds; is that right?

9        A.    Yes.

10       Q.    Okay.  If you look at session 6, how much

11   time did that session go for?

12       A.    It says 37 minutes 14 seconds.

13       Q.    Okay.  And does the software show any

14   indication that that session was broken into pieces?

15       A.    No, it shows that it was turned off.

16       Q.    It shows that the operator of the device

17   turned it off?

18       A.    Yes.

19       Q.    After 37 minutes and 14 seconds?

20       A.    Yes.

21       Q.    With respect to the dates on this series of

22   recordings, do you know on this particular one

23   whether the recordings occurred on the dates as

24   indicated?

25       A.    I have no idea.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 54888

1      Q.   No idea?

2      A.   None.

3      Q.   And the only way you would know that, or

4  I'm sorry, the only way you could determine if the

5  dates were correct is to know when the device was

6  provided to the person operating it?

7      A.   No.  You'd have to ask the person who

8  operated it when they deployed it.

9      Q.   And what about the ELSUR operations

10 technician who was responsible for the deployment of

11 this device?

12     A.   The ELSUR operations technician is not

13 responsible for the deployment of the device.

14     Q.   They're responsible for setting up the

15 device and providing it to the agent, right?

16     A.   No.

17     Q.   What are they responsible for?

18     A.   For receiving the device that has the

19 evidence on it, and downloading the evidence.

20     Q.   Okay.  Who is responsible for preparing the

21 device to be able to go out in the field?

22     A.   In most field offices technically trained

23 agents provide technical equipment to case agents to

24 use.

25     Q.   So the case agent, the person that was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3888

```
 1   actually going to provide the device to somebody he

 2   was working with, it would be his responsibility to

 3   make sure the device was set appropriately?

 4        A.   I can't speak to Albuquerque, what they did

 5   or did not do.

 6        Q.   Is that a practice at least in some areas

 7   that you're aware of?

 8        A.   Generally, technically trained agents will

 9   provide equipment and instruction on the equipment to

10   case agents, yes.

11        Q.   And then, generally, the case agent would

12   be responsible for preparing the device for

13   deployment?

14        A.   No.  Depends.  Some offices rely more on

15   the tech agent to do that.  It depends on the office

16   and the scenario.

17        Q.   So we'd have to talk to somebody from

18   Albuquerque?

19        A.   Yes.

20        Q.   Now, I think you were asked some questions

21   by Mr. Beck about DVD 1D56.  And that was the one

22   that showed that the recordings were made on December

23   30, 1899, and were zero seconds?

24        A.   Wrong date and time, obviously.

25        Q.   Right.  And you're attributing that to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3889

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56890

1  clock battery being dead or defective in some manner?

2      A.   The clock battery was dead, and that's why

3  it happened.

4      Q.   But you've confirmed that there are

5  recordings on that evidentiary DVD?

6      A.   Yes.  We played one here a minute ago.

7      Q.   And I think you acknowledge that at the

8  time that that device was downloaded onto the

9  evidentiary DVD, 1D56, it was apparent from the

10  download that there had some sort of malfunction of

11  the clock system?

12      A.   That would be immediately apparent when you

13  were to look at the recorder in USBird.

14      Q.   Okay.  You testified that that actual ELSUR

15  device was sent back to the vendor.  Am I

16  understanding you correctly?

17      A.   No.  The copy of the evidence was sent to

18  the vendor to see if they could extract any

19  information.

20      Q.   So a copy of that DVD was sent to the

21  vendor?

22      A.   Yes.  A copy was sent to LA field office.

23  And the EOT took it to the vendor to examine it.

24      Q.   What about the device itself?  Was the

25  device itself ever sent back to the vendor to see if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3890

1    there was information on that that wasn't transmitted

2    to the DVD?

3        A.   If the device was not erased, there would

4    still be those sessions on the device.  If you erase

5    the device, then there is nothing on the device.

6        Q.   Okay.  So my question is -- and maybe you

7    don't know -- if that device, the actual ELSUR

8    device, was that sent back to the vendor?

9        A.   There would be no point in doing that, if

10   it was erased.  If it was not erased, that would be

11   different.

12       Q.   Well, do you know if the device, prior to

13   being erased, was sent back to the vendor because --

14       A.   I don't think it was, no.  It was not to my

15   knowledge, no.

16       Q.   Okay.  Are there some sort of -- you're

17   obviously aware that something was sent back to the

18   vendor.  Is that a notification that somebody makes

19   to you by phone, or is that something that you find

20   out about through some sort of written communication?

21       A.   It can be by phone.  We usually send an

22   email saying:  Would you take something back?  But

23   it's phone or email.  So the response could be a

24   verbal response; the response could be an email

25   response.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3891

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 58 3892

 1      Q.   You mean the response from the vendor?

 2      A.   This specific time?

 3      Q.   Yes.

 4      A.   I had an email back.

 5      Q.   Okay.  So there is a record of some sort of

 6  written communication between you and the vendor

 7  regarding this particular evidentiary DVD?

 8      A.   It was between my unit and the LA field

 9  office's EOT, who contacted the vendor and took the

10  copy of the disc to the vendor.

11      Q.   And when the vendor responded, do they just

12  respond informally in an email, or was there some

13  sort of forensic report generated?

14      A.   I didn't get a response from the vendor.  I

15  think they spoke directly to LA and I got a response

16  from LA.  Actually, my ET got an response from LA.

17      Q.   What's your ET?

18      A.   Electronics technician.

19      Q.   And, essentially, the response was there is

20  no additional information on the copy of the DVD that

21  was created?

22      A.   There is no way to find date and time from

23  that at all.  And all they could say was it was an

24  authentic recording.  But there is no metadata

25  showing date and time because the clock battery had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3892

```
 1   failed.

 2        Q.   And did the vendor ask whether you could

 3   provide the original ELSUR device?

 4        A.   No.

 5             (Mr. Adams entered the courtroom.)

 6        Q.   Apart from this particular DVD recording,

 7   or this particular ELSUR device, was anything else

 8   sent back to the vendor to ask about missing or

 9   incorrect information in connection this case?

10        A.   No.

11        Q.   So there was just that one DVD?

12        A.   That was the one DVD we sent back.

13        Q.   And based on your knowledge, who is

14   responsible for informing the operator of the device

15   the conditions or how it's to be utilized in the

16   field, if anybody?

17        A.   Technically trained agents have the

18   responsibility for teaching the case agents how to

19   use the equipment.

20             MS. JACKS:  If I could just have a moment?

21             THE COURT:  Certainly.

22             MS. SIRIGNANO:  Your Honor, good afternoon.

23             THE COURT:  Ms. Sirignano.

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3893

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 60894

```
 1                      EXAMINATION
 2   BY MS. SIRIGNANO:
 3        Q.   Good afternoon, Agent.
 4             Agent, I'd like to talk a little bit about
 5   training first, like Ms. Jacks started out with, and
 6   then go into the device a little bit.
 7             So who did you speak to before you came
 8   here to Las Cruces to prepare for your testimony?
 9        A.   Mr. Beck.
10        Q.   Assistant United States Attorney Matt Beck?
11        A.   Yes.
12        Q.   And how many times did you talk with him?
13        A.   Less than a dozen times.  In terms of on
14   the phone formally?
15        Q.   Well, any contact with him.
16        A.   I can't recall.  I'd have to go back and
17   get you that information exactly.
18        Q.   You'd say less than a dozen times?
19        A.   If you include emails, more than a dozen
20   times.
21        Q.   What was substance of these communication?
22        A.   When to appear, when come out.
23        Q.   Scheduling, or --
24        A.   He sent me a copy of what he submitted
25   today, a rough draft, to share with the attorneys at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3894

```
 1   OTD and myself.

 2        Q.   The motion to reconsider?

 3        A.   Yes, ma'am.

 4        Q.   Did you proofread it?

 5        A.   Not entirely, no.

 6        Q.   Well, did you proofread any of it?

 7        A.   Some of it.

 8        Q.   What did you proofread?  What did you

 9   change?

10        A.   It referred to -- and again, he already

11   corrected it.  He had the wrong name or wrong model

12   number of the recorder.

13        Q.   Wrong model number of what?

14        A.   The recorder.  He had a HAWK3 instead of a

15   HAWK8.  It was typo.

16        Q.   There were two devices in this case, right?

17        A.   I'm not familiar off the top of my head how

18   many devices there were.  I know of a HAWK and a

19   RAVEN, and I think an EAGLE as well.

20        Q.   So there could have been three?

21        A.   I don't know.  You'll have to ask the case

22   agents.

23        Q.   What was the extent of your review of the

24   actual recordings and the devices before you came

25   here?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3896

```
 1          A.   I didn't view any of the devices.

 2          Q.   I was just going to ask you to let me

 3   please try to finish my sentence, because Ms. Bean

 4   here is going to get upset with us if you step over

 5   me a little bit.  Okay?

 6          A.   Okay.

 7          Q.   I'll give as much time as you need to

 8   answer.  I just don't want to get Ms. Bean upset with

 9   us.

10               So you did not review the devices?

11          A.   No, I did not inspect the devices.

12          Q.   Where are these devices?

13          A.   I don't know.

14               THE COURT:  Ms. Sirignano, would this be a

15   good time for us to take our afternoon break?

16               MS. SIRIGNANO:  It would, Your Honor.

17   Thank you.

18               THE COURT:  All right.  We'll be in recess

19   for about 15 minutes.

20               (The Court stood in recess.)

21               THE COURT:  All right.  It looks to me like

22   everybody has got an attorney.  Everybody look around

23   to make sure everybody has got an attorney.

24               All right.  Mr. Adams, you're now here?

25               MR. ADAMS:  I am, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3896

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3897

1          THE COURT:  Good afternoon to you,

2     Mr. Adams.

3          Ms. Strickland, I think you walked in.

4     We'll note your appearance.

5          I've been told that Ms. Fox-Young is not

6     going to be on the telephone for the rest of the

7     afternoon.

8          Is there any other adjustments we need to

9     make?

10          MR. CASTLE:  Your Honor, this is Jim

11     Castle.  I've been on the phone since the hearing

12     began.

13          THE COURT:  Oh, okay.

14          MR. CASTLE:  I didn't think the Court

15     wanted me to enter my appearance since it wasn't a

16     change from last week.

17          THE COURT:  All right.  Mr. Castle, good

18     afternoon to you.

19          All right.  Mr. Williamson, I'll remind you

20     that you're still under oath.

21          THE WITNESS:  Sure.

22          THE COURT:  Ms. Sirignano, if you wish to

23     cross-examine Mr. Williamson, you may continue.

24          MS. SIRIGNANO:  Thank you, Your Honor.

25          THE COURT:  Ms. Sirignano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3897

```
 1    BY MS. SIRIGNANO:
 2         Q.   Agent Williamson, so I believe right before
 3    the break I asked you if you reviewed the devices in
 4    issue before --
 5         A.   No, I did not.
 6         Q.   Okay.   And then I asked you where these
 7    devices are.
 8         A.   I don't know.
 9         Q.   Presumably, they're in the ELSUR storage
10    unit in Albuquerque?
11         A.   You'd have to ask the Albuquerque office.
12         Q.   So you're the supervisory Special Agent for
13    nationwide FBI on covert recording devices; correct?
14         A.   Yes.
15         Q.   So you have a point of contact in each FBI
16    field division on these devices?
17         A.   Yes.
18         Q.   And who is the point of contact for
19    Albuquerque's division that you talk with routinely
20    about your program and these devices?
21         A.   It's a technically trained agent, Special
22    Agent Hugo Nanez.
23         Q.   I'm sorry?   Hugh?
24         A.   Hugo Nanez.
25         Q.   Hugo N-A-N-E-Z?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3898

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3899

```
 1            A.    Yes, ma'am.

 2            Q.    So when you were talking with Ms. Jacks

 3     earlier, he would be the technically trained agent

 4     that is in charge of these ELSUR devices maintained

 5     in Albuquerque; correct?

 6            A.    Yes.

 7            Q.    And what's his staff look like, in the

 8     ELSUR unit, or in the technically trained agent unit?

 9            A.    I can't tell you.  I don't know.  You'd

10     have to ask Albuquerque.

11            Q.    You don't have any idea of how many

12     personnel are in the Albuquerque covert recording

13     unit?

14            A.    It's not a covert recording unit.

15            Q.    What is it?

16            A.    They're technically trained agents assigned

17     to the Albuquerque office.

18            Q.    How many are in Albuquerque?

19            A.    I'd have to look it up.

20            Q.    More than five?

21            A.    Maybe.

22            Q.    More than 10?

23            A.    I don't think so.

24            Q.    So somewhere between five and 10

25     technically trained agents in Albuquerque; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3899

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 66900

```
 1        A.    I'd have to look it up.

 2        Q.    But you just said it's less than 10, but

 3   more than five, somewhere like that, right?

 4        A.    Probably.

 5        Q.    And then, within this technically trained

 6   agent group, they work with the ELSUR unit; correct?

 7        A.    They do.

 8        Q.    And tell us what an ELSUR unit is.

 9        A.    Where is it?

10        Q.    No.   What it is.

11        A.    It's not a unit, but there are ELSUR

12   operations technicians assigned to Albuquerque whose

13   responsibility it is to receive evidence and enter it

14   into evidentiary storage.

15        Q.    So it's like an evidence clerk, but just

16   for ELSUR-type evidence; correct?

17        A.    They handle all evidence.

18        Q.    Recorded evidence or physical evidence?

19        A.    Again, you'd have to talk specifically to

20   the Albuquerque office.   Because every field office

21   is slightly different.

22        Q.    Slightly different.   But what's the MIOG

23   stand for, M-I-O-G, FBI verbiage?

24        A.    Memory of Investigative Operational

25   Guidelines?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3900

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3901

```
 1        Q.    Correct.  And what is the DIOG?

 2        A.    I can't recall off the top of my head right

 3   now.  But there was no talk to this, as far as I

 4   know, the specific who is in what room, and what they

 5   do.

 6        Q.    Oh, no, I'm not asking specifically about

 7   who is in what room and what they do.  I'm trying to

 8   get a general overview.  Since you are the program

 9   manager for all technically trained agents that

10   handle the covert recording throughout United States,

11   you can tell us exactly what the MIOG or the DIOG or

12   whatever other policy or procedure document is out

13   there to go over what each technically trained agent

14   and ELSUR clerk has to follow; correct, since you're

15   the supervisor?

16        A.    No.  I don't know all the things that the

17   ELSUR operations techs have to do.  That's not my

18   program.

19        Q.    Okay.  Where would we find the ELSUR

20   technicians' job description, responsibilities, and

21   what they do?

22        A.    What unit in the FBI?

23        Q.    Sure.  Let's start with that?

24        A.    The ELSUR Program Management Unit.

25        Q.    And who is in charge of that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3901

```
 1          A.    The Unit Chief is Kris Moxley, Kristen
 2    Moxley.
 3          Q.    And she's --
 4          A.    He is Kristen, K-R-I-S-T-E-N, M-O-X-L-E-Y,
 5    he's the unit chief for the ELSUR program management
 6    unit.
 7          Q.    And is he in Quantico or D.C.?
 8          A.    Quantico.
 9          Q.    Okay.  Thank you.
10          And so we've got this ELSUR program.  Their
11    responsibilities are outlined in the new DIOG or the
12    MIOG or another policy?
13          A.    There is the TIP policy.
14          Q.    Oh.  What's the TIP policy?
15          A.    Technical Investigative Program policy.
16          Q.    When was this written?
17          A.    I can't recall.
18          Q.    Is this a public policy?
19          A.    I don't think so.
20          Q.    So everyone, an ELSUR clerk, or anybody
21    working in the ELSUR unit, would have to abide by the
22    TIP policy; correct?
23          A.    You'd have to ask EPMU.  I don't know.
24          Q.    EPMU is what?
25          A.    ELSUR Program Management Unit.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3902

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 69

1      Q.   Okay.  So let's get to your unit.  You're

2   the Supervisory Special Agent.  Are you the unit

3   chief?

4      A.   I'm the acting unit chief.

5      Q.   Acting unit chief, okay.  Of the covert

6   recording devices unit?

7      A.   The audio surveillance unit.

8      Q.   Audio surveillance unit.  Okay.

9           And how many technically trained agents in

10  Albuquerque report to you?  Just the one?

11     A.   None.

12     Q.   None.  They report to Albuquerque division?

13     A.   Yes.

14     Q.   And what policy do you abide by in the

15  audio surveillance unit and in each division across

16  the FBI, including Albuquerque, regarding covert

17  recordings?

18     A.   The TIP policy.

19     Q.   The TIP policy.  Do you have a copy of that

20  policy with you here today?

21     A.   No.

22     Q.   Why not?

23     A.   It's something I don't carry around with

24  me, and I was not asked to bring it.  And I don't

25  know if I'd be allowed to show it.



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3904

1    Q.   Okay.  So since all agents, including

2    yourself, acting unit chief -- maybe we can talk a

3    little bit about this policy and standards, because

4    within the policy are the standards of operating

5    these devices; correct?

6    A.   No.

7    Q.   Where would the standards be?

8    A.   They are what we follow in accordance with

9    what, how the devices are used and work.  It's not

10   something we have written down as a standard how to

11   use the devices, because they're used in so many

12   myriads of ways.

13   Q.   I don't understand that answer.

14   A.   When you say how do you use them, I mean we

15   have instruction we give to the technically trained

16   agents.  And there is a syllabus of instructions.

17   And there is user manuals from the vendor.

18   Q.   Okay.  I'm going to start with the user

19   manuals of the vendor.

20        MS. SIRIGNANO:  May I approach, Your Honor?

21        THE COURT:  You may.

22   Q.   Agent, I apologize, but I don't have a hard

23   copy of this reg yet.  What does this look like to

24   you?

25   A.   It looks like a user's manual.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3904

1          Q.   Which user's manual?

2          A.   I don't know.

3          Q.   Well, can you read from it, please, sir,

4     the first page?

5          A.   USBird HAWK, FALCON, EAGLE8A, model 8 flex

6     8C audio recorders user's manual, Windows version.

7          Q.   So looking at this first page -- and feel

8     free to scroll down, especially down to page 32.

9     What do you think this purports to be?

10         A.   A user's manual for the devices.

11         Q.   Which devices?

12              MR. BECK:  Your Honor, I'm going to object.

13    It's outside the scope and relevance.  I don't see

14    how this ties back to his testimony on direct.

15              THE COURT:  What are you trying to --

16    explain to me what you're trying to do here, Ms.

17    Sirignano.

18              MS. SIRIGNANO:  Well, Your Honor, I believe

19    the testimony on direct was that the Government

20    didn't want any of this proprietary information

21    regarding the HAWK and the EAGLE, and the -- I can't

22    remember the third device name.  And they didn't want

23    to provide it to the defense and the defense expert

24    because it's proprietary, and it had national

25    security concerns.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3905

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3906

```
 1              But, as you can see, Judge -- and I'll
 2    offer a hard copy of this one when Ms. Gilbert comes
 3    back and gets me a hard copy.  It's the actual user's
 4    manual of these devices.  And also there is at least
 5    one photograph of one of the devices that is here in
 6    the public record.
 7              Thank you.  Let's do it this way --
 8              THE COURT:  Well, I guess at this point,
 9    Mr. Beck, one of the problems I'm having, I'm trying
10    to figure out what it is they want that they don't
11    have.  So I need to probably give her a little
12    leeway, because I'm not sure what the ballgame is
13    right now.
14              MR. BECK:  Yeah.  And I agree, I'm not
15    either.  I don't know that they asked for a user
16    manual of this device.  And we didn't provide one.
17    So, I guess, if they want to put this in the record,
18    it seems to me this would be a little bit more
19    argument than cross-examination of Special Agent
20    Williamson.
21              THE COURT:  Well, I'm going to allow it,
22    because -- and overrule the objection -- because I
23    guess we could have had argument before we had the
24    witness.  But it may be that the witness has taken
25    care of a lot of concerns of the defendants.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3906

```
 1    know.  But anyway, I'll allow it.  Overruled.

 2              MS. SIRIGNANO:  And, Judge, I might be able

 3    to streamline this thing.  The reason why I think

 4    we're going through this exercise is, you know, how

 5    can we learn the person can turn these devices on and

 6    off, and whether or not someone can actually break

 7    into these devices.  And that was the purpose of

 8    Ms. Jacks' letter that was filed at Document 1459 on

 9    November 20.  Really, that's bottom line here.

10              And I can keep going on until 5:30, as you

11    know.  But I'm happy to streamline this thing, if we

12    can get access to it.  Get -- Mr. Bly is here.  He

13    can take a look at it.  The photograph of it is in

14    the public record, as is the user's manual.  And so

15    I'm having a very difficult time trying to figure out

16    why the CHSs have had access to it, and the defense

17    cannot at this point.

18              THE COURT:  Well, I guess my sort of

19    reaction to everything is that this looks like a

20    fishing expedition.  I'm just not seeing that y'all

21    are pointing out -- the defendants keep pointing out

22    some information, either Brady or Rule 16 or Giglio

23    that they're going to get.  It just seems to me it's

24    sort of general discovery.  So I guess I'm not

25    inclined to go much further than where we are now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3907

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3908

```
 1            MS. SIRIGNANO:  I'll proceed, Your Honor.
 2   If you'd like, I can argue about it not being a
 3   fishing expedition.  I could keep going or I can take
 4   some argument now, if you'd like.
 5            THE COURT:  It's your call.  I'm just kind
 6   of telling you where I'm leaning right now.
 7            MS. SIRIGNANO:  I'll proceed, Your Honor.
 8   Thank you.
 9            May I approach?
10            THE COURT:  You may.
11   BY MS. SIRIGNANO:
12       Q.   So Agent, does this reflect the digital PDF
13   that I showed you previously?
14       A.   It looks to be the same, yes.
15       Q.   What did you say it was?
16       A.   It says it's a USBird user's manual.
17       Q.   And the date of it?
18       A.   It says March 2, 2007.
19            MS. SIRIGNANO:  Your Honor, I'd like to
20   move to admit Garcia, Chris, Exhibit B at this time?
21            THE COURT:  Any objection?
22            MR. BECK:  No objection, Your Honor.
23            THE COURT:  All right.  Defendant Chris
24   Garcia's Exhibit B will be admitted into evidence.
25       Q.   And Agent, look at the second page, titled
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3908

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3909

```
 1    Section 6.  What is that?

 2         A.   Section 6, it says HAWK.  It describes the

 3    HAWK recorders.

 4         Q.   And is that an actual HAWK recorder on the

 5    bottom of the page?

 6         A.   It appears to be, yes.

 7         Q.   Consistent with what the FBI was using in

 8    this case?

 9         A.   No.

10         Q.   It's different?

11         A.   Yes.

12         Q.   How so?

13              MR. BECK:  Objection, Your Honor.  I think

14    this is getting into law enforcement sensitive

15    material that I'm going to object to on that basis.

16    I've got my marching orders.

17              THE COURT:  Let me ask Mr. Williamson a

18    question:  Would you agree with that; that the answer

19    here that Ms. Sirignano is requesting is going to

20    reveal some confidential information?

21              THE WITNESS:  It would be information I'd

22    rather not share, yes, Your Honor.

23              THE COURT:  And, Ms. Sirignano, precisely

24    what are you asking here?

25              MS. SIRIGNANO:  I'm trying to determine
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3909

1  between the device in this photograph, and if there

2  is a difference between the FBI device.  And I could

3  make the question more specific:  Is that the

4  configuration of the on and off switch on the device

5  that was used in this case?

6            THE COURT:  Is that still confidential

7  information?

8            THE WITNESS:  No, I can share that

9  information.

10            THE COURT:  Okay.  Do you have any problem

11  with that then, Mr. Beck?

12            MR. BECK:  I do, Your Honor.  And I mean,

13  you have his answer, so I probably know where you're

14  going to go on this.  But my understanding is that's

15  the purpose of holding this hearing, because we're

16  looking for what information the defendants need or

17  are entitled to under Rule 16, Brady, or Giglio, and

18  which they don't have provided to them through either

19  the facts or what Agent Williamson has already

20  testified to.  And so certainly it has an on and off

21  device.  It's probative.  We provided that

22  information.  What the on and off button looks like

23  is not helpful to their defense.  It's not Brady,

24  Rule 16, or Giglio.  And it's treading upon law

25  enforcement sensitive information.  So that we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3910

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73911

1    having this hearing, I don't think, allows them to

2    get into the discovery that we're trying to prevent

3    by having this hearing.

4             THE COURT:  Well, I'm going to sustain the

5    objection.  And you can make an argument for that

6    information when we get to the argument side.

7             MS. SIRIGNANO:  Thank you, Your Honor.

8             THE COURT:  Ms. Sirignano.

9    BY MS. SIRIGNANO:

10        Q.   Agent, can you please identify this third

11   page?

12        A.   It says it's an EAGLE8A and describes an

13   EAGLE8A.

14        Q.   And you testified earlier that the EAGLE8A

15   was used in this FBI case as well; correct?

16        A.   I think there was an EAGLE involved.  I'd

17   have to check with the case agents to make sure.

18        Q.   Was your testimony you thought it was

19   involved, earlier, or it was involved?

20        A.   My understanding, there was one involved.

21        Q.   And is that a picture of the EAGLE8A in

22   Figure 6.2 of this document?

23        A.   Of the type that was used?

24        Q.   No, I didn't ask that question.  I said is

25   this a picture of the EAGLE8A?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3911

```
 1              A.    It is a picture of an EAGLE8A, yes.

 2              Q.    Does law enforcement or the FBI

 3       specifically have a different user's manual than the

 4       one I've shown you here today?

 5              A.    That is dated 2007.

 6              Q.    It is.

 7              A.    And that is not a manual that I have or

 8       that we use, that I'm familiar with.  I might have a

 9       copy of it somewhere from a long time ago.

10              Q.    And your user's manual is dated what?

11              A.    I'd have to go back and look and see.

12              Q.    So, ostensibly, there is a later version of

13       the user's manual that I found on the internet?

14              A.    Are there later ones on the internet?

15              Q.    No.  I asked you -- there is a later

16       user's manual for these three devices?

17              A.    Yes.

18              Q.    And you don't know the date of them?

19              A.    No, I do not.

20              Q.    But the technology and the graphics should

21       be somewhat similar; correct?

22              A.    Somewhat similar.  The technology, yes,

23       somewhat similar.

24              Q.    Were you able to review the letter that

25       Ms. Jacks wrote and filed to the prosecutors in this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3912

 1   case?

 2        A.    No.

 3        Q.    You did not review Document 1459?

 4        A.    I'm not familiar with it.

 5        Q.    What did you review prior to you coming to

 6   testify today?

 7        A.    Specifically, I looked at certain DVDs that

 8   were provided to me, and checked the authenticity of

 9   them.  And I looked very briefly at the motion.  But

10   I didn't understand it because I'm not a lawyer.

11        Q.    Thank you.

12              So those DVDs are the ones that you and Mr.

13   Beck talked about earlier; correct?

14        A.    Yes.

15        Q.    Okay.  So we were provided copies of these

16   recordings.

17              May I approach?

18              THE COURT:  You may.

19        Q.    Agent, I'm providing you what's been marked

20   Garcia, Chris, Exhibit A.  Can you take a look at

21   these screen shots for me.  And I'll ask you a couple

22   of questions.  Do they look familiar to you?

23        A.    I'd have to compare them to the screen

24   shots for the actual DVDs.  They're the same serial

25   numbers.

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3913

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3914

```
 1         Q.   Are you saying they are the same serial
 2    numbers?
 3         A.   I remember the serial numbers are matched.
 4    But I'd have to actually look at the screen to
 5    compare my Bird player to this, to see if they're the
 6    same.
 7              MS. SIRIGNANO:  Your Honor, may I have a
 8    moment?
 9              THE COURT:  You may.
10         Q.   Agent, can you tell us what a 1E number is?
11         A.   A 1E number?
12         Q.   Yes.
13         A.   As in evidence?
14         Q.   Yes.
15         A.   I don't deal with evidence much.  It refers
16    to the piece of evidence, I think.
17         Q.   Well, you testified about a 1E56; correct,
18    and a 1E60?
19         A.   A 1D.  I'm sorry, 1D.
20         Q.   1D, as in dog?
21         A.   1D, as in dog, yes.  I have a copy of 1D55,
22    56, 58, and 60 here.
23         Q.   Now, do you know if those numbers were
24    numbers that were produced to the defense in the
25    Government production?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3914

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83915

```
 1         A.   I don't know.
 2         Q.   And on the top of that exhibit that I just
 3   gave you, in the handwriting, can you see what it
 4   says on the tops of those pages?
 5         A.   DVD 14, DVD 15.
 6         Q.   Correct.  Going all the way to what?
 7         A.   It goes up to 16, 17, 17 page 2, DVD 19,
 8   20, 21, 22, 23, 24, and 24 page 2.
 9         Q.   24 page 2.  And based on that screen shot
10   of the program that you looked at earlier, is the 1D
11   number on the front of those, or anywhere on those
12   documents?
13         A.   No.
14         Q.   So you specifically referred to 1D55, 56,
15   58, and 60.  And I'm going to refer to DVDs 14
16   through 24 page 2.  Is that a yes?
17         A.   I understand.
18         Q.   Yes.
19              MS. SIRIGNANO:  Your Honor, I'd like to the
20   move to admit Chris Garcia, I believe that's Exhibit
21   A.
22              THE COURT:  Any objection?
23              MR. BECK:  No objection, Your Honor.
24              THE COURT:  All right.  Anybody else have
25   an objection?  Not hearing any, Chris Garcia's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Exhibit A will be admitted into evidence.
 2         Q.   Okay.  So you specifically talked about the
 3    ELSUR clerk downloading these recordings into the
 4    software program; correct?
 5         A.   The ELSUR clerks use the USBird software to
 6    download the data on the recorder into the original
 7    evidence DVD.
 8         Q.   And the original evidence CD or DVD?
 9         A.   I think it would be a DVD or a CD.  It
10    depends upon how large the file is.  I think DVDs are
11    used because they contain more information.
12         Q.   Okay.  And this was what you consider the
13    original evidence before the recording device is --
14    the data is either deleted or it's wiped clean;
15    correct?
16         A.   The first download from the recorder is the
17    original evidence.
18         Q.   Where is that maintained?
19         A.   It should be maintained in the ELSUR
20    storage room.
21         Q.   And the ELSUR clerk would put together the
22    original CD or DVD depending on the size, and then
23    they create the chain of custody form and the
24    identification bar code for each download?
25         A.   They would; yes, they would.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3916

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83917

```
 1        Q.   And so this piece of electronic or digital
 2   evidence, the first download is treated just like a
 3   blood sample or a firearm or any piece of physical
 4   evidence in terms of maintenance of that original
 5   evidence; correct?
 6        A.   Yes.
 7        Q.   And what policy do these ELSUR clerks use
 8   to maintain this evidence?
 9        A.   I don't know.
10        Q.   What policy do the technically trained
11   agents use to maintain this evidence?
12        A.   They don't.
13        Q.   They don't.  So I believe your testimony
14   earlier was that the technically trained agents check
15   these devices out; correct?
16        A.   It depends on the field officer.
17        Q.   And in Albuquerque who checks it out?  The
18   technically trained agent or the case agent?
19        A.   I don't know.  You'd have to ask the
20   Albuquerque agents.
21        Q.   So you're saying here today that you don't
22   know if it was Mr. Acee or one of the technically
23   trained agents that checked any of these devices out
24   for this case?
25        A.   That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3917

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3918

```
 1          Q.   And so, presumably, whoever checked out the
 2   device would have looked at the device before they
 3   checked it out; correct?
 4          A.   One would presume.
 5          Q.   It's probably part of the policy; correct?
 6          A.   People who are going to use the device,
 7   before they deploy it, should check in USBird to see,
 8   make sure it functions, yes.
 9          Q.   Correct, because it's going to be used as
10   evidence one day in trial; correct?
11          A.   Not the USBird.  But it will collect
12   evidence.  To make it work -- make sure it works.
13          Q.   I'm talking about the actual device itself
14   that collects the original evidence.  That evidence
15   would eventually be used in court someday?
16          A.   What the recorder records would.
17          Q.   The original evidence.
18          A.   It was downloaded, yes.
19          Q.   Okay.  So we're on the same page here.
20               So either the case agent or the technically
21   trained agent, presumably, pursuant to the FBI's
22   policy, would look at the device before deploying it?
23          A.   The agents are trained they should check
24   the devices, or somebody should check the devices
25   before they're deploying them.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Q.   And that's pursuant to the policies that

2    you were talking about, instructions on how to use

3    these devices, the syllabus of the instruction, and

4    the user's manuals; correct?

5          A.   We teach them in their training how to use

6    the equipment.  So the syllabi includes that.  The

7    TIP policy doesn't specifically state it.  It just

8    says generically who is in charge of the equipment.

9    It doesn't go into that much detail on the TIP

10   policy.

11         Q.   Okay.  And there is a log that each

12   technically trained agent or case agent would have to

13   sign when they check out a specific device; correct?

14         A.   It would depend upon the field offices and

15   what they're doing.

16         Q.   Yes, but -- either a digital log or a hard

17   copy log, there has to be an inventory of these

18   devices; correct?

19         A.   There is an inventory of the devices,

20   that's correct.

21         Q.   And just like a firearm or any other piece

22   of FBI property, whoever is maintaining these

23   devices, like an ELSUR clerk or a technically trained

24   agent or a unit chief at Quantico, would want to know

25   where their devices are at all times; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3919

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3920

```
 1          A.   We do the best to know where they are,
 2     that's correct.
 3          Q.   Do you maintain logs for your devices?
 4          A.   Yes.
 5          Q.   And does the Los Angeles division maintain
 6     logs for their devices?
 7          A.   I would presume.
 8          Q.   So you'd also presume that Albuquerque
 9     would have some kind of log to know where the devices
10     are; correct?
11          A.   I would.
12          Q.   Yes.  Thank you.
13               So who sets the date and time on these
14     devices?
15          A.   It can be anyone who has the USBird
16     software and the device and the computer to do so.
17     It could be a tech agent, an ELSUR operations
18     technician, or a case agent.
19          Q.   And do you know if Mr. Acee here has the
20     ability to get into this software himself?
21          A.   I don't know.
22          Q.   Do you know if he has permission from the
23     ELSUR clerk or the technically trained agent to
24     download or use this original evidence?
25          A.   I don't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3920

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3921

1    Q.   So we're presuming that there is a log in

2    Albuquerque to check in and check out a device.

3         Let's talk a little bit about maintenance

4    records, okay.  So intoxilyzers fail, calibration on

5    these devices sometimes fail.  Who maintains the

6    maintenance records of these devices?

7    A.   There is limited quality control records on

8    devices that come through our unit.  And then ADS

9    has, when they produce a product, or they repair it,

10   there is some record.  But that's the only records

11   I'm aware of.

12   Q.   So what you're saying is that each division

13   does not have a record of when a device malfunctions

14   or needs maintenance?

15   A.   I don't think so.

16   Q.   So when does a device come out of

17   circulation with the FBI?

18   A.   When it fails and breaks and they can't fix

19   it, or it's been determined to be obsolete, and it

20   should be decommissioned.

21   Q.   So if could you look at the exhibit I gave

22   you, and look for DVD 20 -- or just 20, I'm sorry.

23   That's the device that you had talked about earlier

24   that had -- you called it a clock fail or a date and

25   time fail; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Yes.  The clock battery was dead so the

2    clock battery didn't power the clock function.

3    Q.   Was this device decommissioned based on the

4    failure of the clock after this recording?

5    A.   I don't know.

6    Q.   Who would be able to tell us that?

7    A.   I don't think it would be decommissioned.

8    It would be Albuquerque's technical program.

9    Q.   The technical agent that we talked about

10   earlier?

11   A.   Yes, ma'am.

12   Q.   Hugo Nanez?

13   A.   Yes, ma'am.

14   Q.   And there was some discussion with the Los

15   Angeles electronic operations unit about this

16   specific device?

17   A.   We contacted Los Angeles Division's ELSUR

18   operations technicians to ask them to take the copy

19   of the disc to ADS to see if they could find any more

20   data that we couldn't see.

21   Q.   So you presented them with a copy, not the

22   actual device; correct?

23   A.   A copy of the evidence, yes.

24   Q.   So why was a copy of the original evidence

25   made, and not the actual recording and the device

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3923

```
 1   that made the digital evidence, why wasn't that given

 2   to the Los Angeles division?

 3        A.   There was no need.

 4        Q.   Why?

 5        A.   Because it was identical to the evidence;

 6   the copy is identical to the evidence.

 7        Q.   Well, the evidence itself you said you

 8   verified.  But it's just a copy --

 9        A.   I compared the copy, yes.

10        Q.   I'm sorry, if you could just let me finish

11   my question.  You verified a copy; correct?

12        A.   Yes.

13        Q.   Okay.  But the actual data itself regarding

14   the metadata, the date, the time, the hours, the

15   seconds, that could have been on the original

16   recording device; correct?

17        A.   Not based on what I'm seeing in this CD,

18   this CD.

19        Q.   But you don't know because you gave them a

20   copy.  You don't have the original; correct?

21        A.   I never had the original.

22        Q.   Who had the original?

23        A.   Albuquerque.

24        Q.   Who in Albuquerque?

25        A.   I assume the ELSUR operations unit techs.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3923

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3924

1      Q.   You don't know?

2      A.   No.

3      Q.   And you don't know who checked it out to

4   verify that the battery was working when it was

5   checked out; correct?

6      A.   Are you talking about the recorder now?

7      Q.   Yes.

8      A.   No, I don't know.

9      Q.   You don't know.  So did you work in any

10  field office before you became a Supervisory Special

11  Agent in Quantico?

12     A.   I did.

13     Q.   You were a case agent?

14     A.   Yes.

15     Q.   Which division?

16     A.   Baltimore.

17     Q.   Baltimore.  Okay.  So you understand how

18  important, when someone says something to a

19  government informant, that it would be prudent to

20  know the exact date and time of a statement; correct?

21     A.   Yes.

22     Q.   And especially someone like my client,

23  Mr. Garcia, if he had one of his statements allegedly

24  captured by a government informant, when that

25  statement was made would be very important in a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3924

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 91

```
 1    conspiracy case; correct?

 2         A.   Yes.

 3         Q.   So can you please tell us, Agent, why that

 4    original device was not sent back to Quantico or to

 5    ADS to determine exactly that metadata, which is so

 6    importantly needed in this case?

 7         A.   We did send a copy of the evidence to ADA,

 8    and they could not extract the metadata.

 9         Q.   I'm not talking about a copy.  I'm talking

10    about an original piece of evidence or the actual

11    HAWK or the FALCON?

12         A.   The HAWK wouldn't contain it anymore.  It

13    was deleted.  And we know that it was the battery

14    that didn't work.  So we know it's a battery failure

15    that caused it from the CD that we're seeing, the

16    DVD.  And we sent a copy of that to ADS, and they

17    confirmed it was a battery failure.  And that's why

18    there is no date and time.

19         Q.   And who at ADS confirmed the battery

20    failure?

21         A.   I don't know.

22         Q.   But you have an email with that

23    information; correct?

24         A.   Yes.

25         Q.   Is that something that you could please
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3925

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 92 3926

```
 1    produce to the Government and the Los Angeles
 2    technician, so it could be given to the defense
 3    counsel?
 4         A.   Yes.
 5         Q.   Thank you.
 6              Okay.  Let's talk a little bit about
 7    teaching, and teaching technically trained agents and
 8    case agents.
 9              So, when I was back in the FBI, we used to
10    have forms for everything.  And so I'd like to know
11    if there was a form that agents fill out when they
12    provide a recording device to a cooperating witness
13    or a cooperator?
14         A.   You'd have to ask the case agents.  I don't
15    know what they did.
16         Q.   I'm not asking you about what they did.
17    I'm asking you if a form exists?
18         A.   Do you mean a form in which you get consent
19    from someone?
20         Q.   Yes.
21         A.   There are consent forms that are used, yes.
22         Q.   What kind of consent form, Agent?  Tell us
23    a little bit about it.
24         A.   I can't recall off the top of my head all
25    the details about it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3926

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3927

```
 1          Q.   I'm not asking you for all the details.
 2     I'm just asking you for a summary of what the form
 3     says.  As the unit chief, you would be responsible
 4     for teaching every division about these forms;
 5     correct?
 6          A.   No.
 7          Q.   You wouldn't?
 8          A.   No.
 9          Q.   Who would then?
10          A.   The people who run the training of those
11     agents who run those programs involving those
12     investigative matters.  I maintain the equipment.
13          Q.   You maintain the equipment, but don't you
14     also have any buy-in on how the equipment is
15     maintained, how the equipment is used, and the
16     policies the unit chiefs out of Quantico and
17     headquarters routinely develop these kinds of lesson
18     plans and syllabi, correct?
19          A.   No.
20          Q.   They don't.  Okay.
21               Well, so tell us a little bit about this
22     consent form.  It's, arguably, a form between the
23     agent and whoever is using the device, that they
24     consent to the use of this recording device; correct?
25               MR. BECK:  Objection, compound, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3927

```
 1                THE COURT:  Overruled.
 2                MS. SIRIGNANO:  I'm sorry, Your Honor.
 3                THE COURT:  Overruled.
 4        A.   So you'd have to ask the case agent what he
 5    did.  I don't know.
 6        Q.   No, I'm not asking you about what the case
 7    agent did or didn't do.  We'll get a chance with him
 8    later.  But I'm asking you what the consent form is
 9    all about.
10        A.   You need to have consent in most cases to
11    do a covert recording.  So you have to get consent of
12    the person who is carrying the recorder.
13        Q.   Consent of the person who is --
14        A.   Going to carry the recorder.
15        Q.   -- who is going to carry the recorder.
16             Now, as part of that consent form there is
17    also an admonishment, obligations on how to use it;
18    correct?  I'm asking about the form.
19        A.   You're asking about the form?
20        Q.   Yes.
21        A.   I can't recall.
22        Q.   So, as part of your policy in your unit,
23    and in all of the FBI divisions, isn't it basic agent
24    training that whenever an informant or cooperator is
25    given something, they have to sign for it, like money
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3929

```
 1    or a recording device?

 2         A.    In terms of filling out a form, getting

 3    consent to use -- to make the recording, yes.

 4         Q.    And there are certain guidelines on how

 5    recordings should be made; correct?

 6         A.    Guidelines meaning written guidelines?

 7         Q.    Sure.  Or oral guidelines?

 8         A.    You would give oral instructions to a

 9    source of how to -- what to do with a device.

10         Q.    Okay.  And based on your experience --

11    maybe that was done in this case; maybe it wasn't --

12    what kind of oral guidelines does a case agent

13    generally give to a cooperator when they're given one

14    of these devices?

15         A.    I don't know.

16         Q.    Generally speaking, and as the head of this

17    unit, what are the general guidelines?

18         A.    It depends upon the scenario in which the

19    device is being used.

20         Q.    Okay.  So let's talk about a scenario in a

21    correctional facility setting.  The device is covert.

22    Obviously, there is an on and off switch.  Generally

23    speaking, based on your training and experience, what

24    kind of admonition or advice would a case agent give

25    this person?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3929

1              MR. BECK:  Your Honor, I'm going to object

2     to the relevance.  I think we're getting pretty far

3     afield of Agent Williamson's role in this case and

4     expertise.

5              THE COURT:  I'm inclined to agree.

6     Sustained.

7         Q.   Agent, do all your trainings and your

8     syllabi have an outline of how these devices should

9     be deployed when --

10        A.   No.

11        Q.   -- when -- in -- okay, let me rephrase the

12    question then.

13             So how does a case agent know how to deploy

14    these devices, if the training and the policies don't

15    have a standard as to how to use them?

16        A.   The expertise -- the TTA and their

17    expertise.

18        Q.   So the TTA is involved in each deployment

19    then?

20        A.   No.

21        Q.   So I'll restate the question then.  How

22    would a case agent know how to deploy these devices,

23    if it's not in the training, it's not in the policy,

24    and the TTA is not present with them?

25        A.   You'd have to use your ingenuity and

SANTA FE OFFICE                                                                   MAIN OFFICE
119 East Marcy, Suite 110                                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com
DNM 3930

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3931

```
 1   determine a way to do it.
 2           MS. SIRIGNANO:  Your Honor, may I have a
 3   moment?
 4           THE COURT:  You may.
 5           MS. SIRIGNANO:  Pass the witness, Your
 6   Honor.
 7           THE COURT:  Thank you, Ms. Sirignano.
 8           Mr. Lowry, were you up next?
 9           MR. LOWRY:  Yes, Your Honor.  Thank you.
10           THE COURT:  Mr. Lowry.
11                       EXAMINATION
12   BY MR. LOWRY:
13       Q.   Good afternoon, Agent Williamson.
14       A.   Good afternoon, sir.
15       Q.   I want to back up a little bit and just
16   talk about the mechanics of this device.  You've
17   gotten into a lot of technical details about the
18   operation of the program.  But I really want to talk
19   about the mechanics of the particular devices.
20           There is a lot of conversation in this
21   testimony you just had about -- well, describing the
22   evidence at play in this case.  But it's fair to say
23   everything we've looked at today in these charts,
24   they're all copies of the original evidence; isn't
25   that fair?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3931

 1          A.    Yes.

 2          Q.    And the original evidence was destroyed

 3    when the device was wiped clean?

 4          A.    No.

 5          Q.    Why do you say that?

 6          A.    The original evidence is the first download

 7    from the device when it's transferred to an

 8    evidentiary disc.  Because that's when the hashing

 9    authentication is created from the SHA256.

10          Q.    Okay.  But that download is a copy of what

11    was on the device?

12          A.    It's what was on the device with the

13    authentication hashing included.

14          Q.    And who validated this -- what you just

15    described as authentication hashing?

16          A.    When you first -- the first download from

17    the device, after you make a download, there is a

18    verify button.  You click "verify."  And it verifies

19    the hash calculation.

20          Q.    That's a black box technology that ADS

21    developed?

22          A.    Yes.

23          Q.    So you're taking ADS at its word that

24    that's a mirror copy of what was originally on the

25    device?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3932

```
 1        A.    Yes, sir.

 2        Q.    My question to you is:  Who validated their

 3   proprietary software so that FBI could be confident

 4   that that copy is a true copy of the original?

 5        A.    We tested the devices to make sure they

 6   actually performed as designed.  You actually have an

 7   authentic recording, and you listen to them, and say,

 8   yeah, that's an authentic recording.

 9        Q.    But programs like NIST are designed to

10   create validation programs to test computer

11   algorithms; correct?

12        A.    I'm not familiar with NIST function or role

13   in that regard.

14        Q.    But are you aware of FTK reports?

15        A.    No.

16        Q.    No?

17        A.    No.

18        Q.    You don't work with other computer forensic

19   technology?

20        A.    No, I do not.

21        Q.    Just ELSUR devices?

22        A.    The specific devices that are part of

23   technical investigative program are the ones I'm

24   familiar with.

25        Q.    Are you aware of this ADS proprietary
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3933

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100934

1    software ever being validated by a third party?

2        A.   No.

3        Q.   So you're relying completely on their word

4    that it works?

5        A.   I was not in the FBI or onboard when we

6    first initiated this contract with ADS, so I can't

7    speak to what happened when it first occurred.

8        Q.   Because when -- earlier on direct with the

9    Government you were talking about comparing the hash

10   values, and you downloaded your own SHA256 program to

11   compare the hash values to what was on the evidence

12   DVDs that were provided; correct?

13       A.   Yes.

14       Q.   But it's fair to say you're comparing hash

15   values of a copy to a hash value of a copy?

16       A.   I'm running a hash against the files that

17   contain the recordings.  So I'm comparing a new hash

18   calculation made on the original, on those sessions,

19   on those audio recordings.

20       Q.   But it's not the original; it's what was

21   downloaded?

22       A.   It's a copy of the original that's in the

23   ELSUR storage facility in Albuquerque.

24       Q.   And I guess what I'm trying to get at is --

25   I mean, let's back up and ditch the computer lexicon

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3934

```
 1  for a second.

 2            If we pretend the original recording was

 3  like a piece of fine art, like the Mona Lisa, and

 4  it's locked up in a secure room.  What ADS is telling

 5  you is we can send a master artist in there to make a

 6  copy of that and bring it out of that secure room,

 7  and put it on the table for you use; isn't that what

 8  they're telling you?

 9       A.    Meaning what's transmitted down to

10  download?

11       Q.    Correct.

12       A.    Yes.

13       Q.    And we're going to keep this safe.  We're

14  going to make a copy.  We're going to bring it out

15  for you to use; correct?

16       A.    Yes.

17       Q.    And then we'll make a copy of that copy and

18  hand it all around the courtroom, right?

19       A.    Well, the copy is given to appropriate

20  personnel, correct.

21       Q.    Fair enough.  Appropriate personnel.

22            So when would you're doing your hash value

23  comparison, you're comparing a copy that Mr. Beck may

24  have to the copy that I may have in discovery?

25       A.    Yes, I can run a hash calculation on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102

```
 1    copy you have or the copy that Mr. Beck has, any of

 2    those.

 3         Q.   And the original that's in the locked

 4    vault, that's been dispensed with?

 5         A.   We can run a hash calculation on that, too.

 6         Q.   How?  If the ELSUR device has been wiped

 7    clean?

 8         A.   No, the original evidence is sitting in a

 9    DVD in the ELSUR storage room.

10         Q.   I don't want to go around the circle too

11    many times.  But that was the download of the

12    original?

13         A.   We consider that the original evidence.

14         Q.   You consider that the original evidence?

15         A.   Yes.

16         Q.   And that's based on what ADS tells you?

17         A.   There is no way to get onto an ADS recorder

18    and listen to it and hear what's on it without

19    downloading it.

20         Q.   And, again, you're taking ADS at its word

21    that that's a perfect copy of what was there?

22         A.   Yes.  And through experience.

23         Q.   I want to talk to you about -- I think what

24    Ms. Sirignano handed you is a Chris Garcia exhibit

25    with the spreadsheets on there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   Yes, sir.

2       Q.   Well, first, let me back up.  So let's talk

3  about this actual device, if I can.  You mentioned on

4  direct that there is an on/off switch; correct?

5       A.   Yes.

6       Q.   And that's for the person who has been

7  instructed to handle this device to activate?

8       A.   Ideally, yes.

9       Q.   Is there a way this device could

10  accidentally turn off?

11       A.   If you could accidentally hit the switch

12  and turn it on or turn it off by accident, yes.

13       Q.   Is there any kind of way somebody handling

14  the device would know that it was on?

15       A.   I'm sorry.  Say that again?

16       Q.   Sure.  Is there any way the person actually

17  using the device would know that it is on?

18       A.   If they were instructed what to look for,

19  they could see a light that indicates a recording is

20  going on.

21       Q.   That is a light that turns green if it's

22  on?

23       A.   It flashes when recording is going on.

24       Q.   So they would be able to see it flash?

25       A.   If they knew to look for it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3937

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104

1        Q.    So when the device is turned on -- I

2   believe you said on direct that when you turn it on

3   it energizes the microphone?

4        A.    Correct.

5        Q.    How long does that take to energize the

6   microphone from the time you push the on button?

7        A.    My understanding is for audio devices it is

8   practically instantaneously.

9        Q.    So instantaneous, in your mind?

10       A.    As fast as electricity powers up the

11  transducers.

12       Q.    Okay.  So if the people that were handling

13  this case in the field were told it took ten seconds

14  to activate the microphone, they would have been

15  misinformed?

16       A.    With the audio/video, if video is involved

17  there can be a delay if the camera is activated.  It

18  can be a correct instruction.  It depends upon the

19  device.

20       Q.    But if it was just a device in audio only

21  mode, it would only be -- it would be instantaneous,

22  if I understand you correctly?

23       A.    It would be.  But I think people might

24  still hear the delay instruction.

25       Q.    I believe, Agent Williamson, you have

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                     1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                               e-mail: info@litsupport.com

DNM 3938

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105939

```
 1   this -- we've been provided this in a manner that is
 2   labeled DVD 15.  Can you turn to that real quickly?
 3            MS. BHALLA:  Excuse me, Your Honor.  Can
 4   you get this one turned on?  I'll just move over
 5   here, Your Honor.
 6            THE COURT:  We'll have to get IT up here.
 7   But I think everybody has positioned themselves so
 8   they can see it on some screen.  So let's go ahead.
 9   BY MR. LOWRY:
10       Q.   Agent Williamson, so if I understand your
11   testimony correctly, this would be a single download
12   from, in this case, I guess a RAVEN2A device?
13       A.   Yes.
14       Q.   Would you do me a favor:  Could you tell me
15   the time above the pen?
16       A.   On line 6?
17       Q.   Correct.  So how much recording time would
18   we have there, from 1 through 6?
19       A.   The total number lengths of these together?
20       Q.   Correct.
21       A.   It's going to take me a while to add those
22   up.  I'm not that good at math without a pencil.
23       Q.   Just give me an approximation, if you will.
24   Take your time.  You can add them up.
25       A.   Over 53 minutes, if I'm adding close to it,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                              1-800-669-9492


PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

DNM 3939

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106940

```
 1    is the total combined of the length between 1 and 6,

 2    of the total, if you add all those durations up.

 3          Q.   So you have less than 55 minutes; is that

 4    fair?

 5          A.   Yes.

 6          Q.   Why would the person operating this device

 7    tell the FBI handler that they had recorded five to

 8    six hours of video, if we can only see less than 55

 9    minutes of video -- I mean audio -- pardon me.  I

10    meant audio throughout that.

11          A.   I don't know.

12          Q.   Okay.  The person actually handling the

13    device knows when they turned it on; correct?

14          A.   Unless they turned it off by mistake.

15          Q.   But if they turned it off by mistake, they

16    wouldn't see the lights flashing?

17          A.   If they knew to look for it.

18          Q.   Are these individuals handling the devices

19    instructed on how to cut it on or cut it off?

20          A.   I don't know what they were instructed.

21          Q.   Should they have been instructed how to cut

22    it on and cut it off?

23          A.   One would think you'd need to know that to

24    deploy it.

25          Q.   So if you think that person needed to know
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3940

```
 1    that to deploy it, then that person thought that they
 2    deployed it for five or six hours, do you have any
 3    reason to think -- well, why would we only see less
 4    than 55 minutes?
 5         A.   I don't know.
 6         Q.   And I wanted to bring your attention to --
 7    I'm going to go over this briefly, because I'm not
 8    quite sure I understood it earlier.
 9              There is a green flag.  You can't tell on
10    this copy because it's a black and white copy.  But
11    this green flag on line 21 -- and feel free to pull
12    it up on your digital device.
13         A.   No.  I would agree, it's a green flag,
14    given that the end time is 23:25 hours and 52 seconds
15    and the start time is the same for the next session.
16         Q.   And I'm still a little confused.  Why would
17    that recording 21 click off at 4 minutes and 45
18    seconds, when you look at DVD 17 that's part of that
19    same exhibit, and all of these are green flags, and
20    you see the run time is typically over an hour on DVD
21    17?
22         A.   I don't know.
23         Q.   So if I understand the green flag
24    correctly, that's for when the device senses it's
25    going to be a lengthy recording?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3941

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 108

1       A.   It's supposed to create a new session when

2  it detects that the amount of data exceeds the amount

3  that can fit onto an evidentiary disc.

4       Q.   Okay.  So I mean, I'm taking it that the

5  device, while it's a highly technical device is not

6  clairvoyant, it can't predict the future; am I

7  correct?

8       A.   Yes.

9       Q.   So what's the data limit that would cause

10 DVD 15 line 21 to cut off at four minutes, but on DVD

11 17 you have run times of over two hours?

12      A.   I don't know.

13      Q.   As the national leader, I assume you're

14 assigned to understanding how the ADS program works

15 with their proprietary software?

16      A.   I don't know how the proprietary software

17 works.  That's proprietary.

18      Q.   Is there a data limit in kilobytes or

19 megabytes or gigabytes that you have to reach before

20 you hit a green flag and it terminates?

21      A.   My understanding, it changes from recorder

22 to recorder.  In order to make the assessment you're

23 asking, I'd have to actually get the actual recorder

24 and have ADS take a look at it and give us an answer.

25      Q.   But on DVD 15 and DVD 17, we're both

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 3942

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 109943

1    talking about a RAVEN2A device; correct?

2         A.   Yes.

3         Q.   And as we sit here before this Court, you

4    can't tell us why one would transition at a little

5    under 5 minutes and the other would transition after

6    two hours?

7         A.   Assuming it worked according to the way

8    it's supposed to work, it's based on data.  So the

9    time involved doesn't reflect data.  Do you

10   understand what I'm saying?

11        Q.   No.  Help me out there.

12        A.   You could have a recorder going on for an

13   hour, and it be quiet, and there is very little data

14   hitting the microphone transducers, so there is very

15   little data being compiled on the recorder.  Or you

16   can be in a noisy environment, having a lot of data

17   hitting the microphone and recording a lot of data.

18        Q.   How do you measure that type of data that's

19   hitting I believe -- what did you say?  The

20   transducer?

21        A.   The microphone has a device that takes the

22   sound and converts it the electrical impulses into a

23   transducer.  I don't know, to answer your question.

24        Q.   Just another -- this is DVD 20 out of that

25   same series of this exhibit.  And would you agree

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110

```
 1   with me that if we look down at line 13, we have a
 2   red flag at line 13, which I've highlighted here?
 3        A.   I would have to look on my screen to see if
 4   it's red.
 5        Q.   Absolutely.  Help yourself.
 6        A.   Yes, line 13 is a red flag.
 7        Q.   You explained to this Court why, at line 13
 8   and the red flag for everybody in the room means that
 9   it's a low battery?
10        A.   Correct.
11        Q.   And it means that that recording at the end
12   of line 13 ended with a low battery?
13        A.   That's correct.
14        Q.   Can you explain to us then why -- how the
15   battery would have been recharged through lines 14
16   through 23?
17        A.   It wasn't recharged.
18        Q.   That's my point.  If we have a low battery
19   at line 13, and the device has not been recharged,
20   why don't we have the red flag throughout rest of it?
21        A.   Because you don't recharge batteries in
22   RAVEN2A.  You replace them.
23        Q.   Okay.  So do you think the batteries were
24   replaced?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3944

1      Q.   And that would have been by the user?

2      A.   I don't know who replaced it, but someone

3  replaced it.

4      Q.   And I would assume that you don't know what

5  the users in this case, who was in charge of

6  replacing batteries?

7      A.   That's correct.

8      Q.   If I understood your affidavit correctly,

9  there are two types of batteries in the devices, a

10  lithium battery and maybe a regular battery?

11      A.   Well, most of the batteries used are moving

12  to lithium, so both would probably be lithium

13  battery.

14      Q.   Okay.  A lithium battery for the device and

15  a lithium battery for the clock?

16      A.   Probably, yes.

17      Q.   And you're saying "probably" --

18      A.   You can buy nonlithium batteries that will

19  configure and fit into those devices.  So you

20  wouldn't be required to use a lithium battery.  But

21  there are generic batteries that are sold

22  commercially, like AAA batteries, AA batteries,

23  things like that.

24      Q.   Agent Williamson, back to DVD 15 briefly.

25  Can you sit here looking at this spreadsheet and tell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3945

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112 3946

 1   us each time a session ended whether that was

 2   intentional or accidental?

 3        A.    No.

 4             MR. LOWRY:  No further questions, Your

 5   Honor.

 6             THE COURT:  Thank you, Mr. Lowry.

 7             Any other defendant have questions of Mr.

 8   Williamson?

 9             All right.  Mr. Beck, do you have redirect

10   of Mr. Williamson?

11             MR. BECK:  No, Your Honor.

12             THE COURT:  All right.  Mr. Williamson, you

13   may step down.  Is there any reason that Mr.

14   Williamson cannot be excused from the proceedings?

15             Mr. Beck, can he be excused?

16             MR. BECK:  Yes, he may, Your Honor.

17             MS. SIRIGNANO:  No, Your Honor.

18             THE COURT:  All right.  Not hearing anybody

19   say that he can't be excused, you're excused from the

20   proceedings.  Thank you for your testimony.

21             THE WITNESS:  Thank you, Your Honor.

22             THE COURT:  All right.  Mr. Beck, does the

23   Government have further witnesses or evidence it

24   wishes to present?

25             MR. BECK:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3946

```
1            THE COURT:  All right.  Do the defendants
2    wish to present any evidence?
3            MS. SIRIGNANO:  No, Your Honor.
4            THE COURT:  All right.  Mr. Beck, if you
5    wish to argue in support of your motion.
6            MR. BECK:  So, Your Honor, with today's
7    testimony, the defendants have the information to
8    which they would be entitled under Rule 16, under
9    Brady, under Giglio, and more information than that.
10           I think the only information that they
11   don't have at this point are sort of the dimensions
12   of the recorder and to be able to inspect the
13   recorder, which --
14           THE COURT:  You know, this is probably a
15   question that's more appropriate to the defendants,
16   but do you understand what it is they're trying to
17   get from that remaining information that you're
18   withholding?
19           MR. BECK:  I think so.  I think what they
20   were intending to look at -- I mean, we can trace
21   back and see how this was a train wreck on our
22   behalf, the United States' behalf.  We did not do a
23   good job of educating ourselves and the Court in what
24   happened here.  I think what they were looking for
25   was the metadata to understand.  First of all, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3947

```
 1    didn't know there was metadata.  Then we found out
 2    there was metadata.
 3          And I think what the defendants were
 4    looking for in accessing the devices is -- I think
 5    what Ms. Jacks was explaining to the Court in
 6    November, early November hearings, was that she
 7    wanted her forensic computer expert or a forensic
 8    expert to analyze these devices and go back and see
 9    whether there is any trace metadata on these devices
10    when they're deleted.  There is not.  And that is
11    what the hash values and the procedures in place tell
12    us, is that, as he testified, once you download it,
13    the devices are wiped clean.  So once you have a
14    disc, you have everything that was off of that.  That
15    is the evidence.  And the discs are wiped clean.
16          And there is a reason for that.  If we go
17    back to what Mr. Lowry was saying here about the Mona
18    Lisa, that Mona Lisa hangs in a vault or a chamber
19    somewhere, and all we see is the picture.  If we're
20    having a court hearing or a trial that involves the
21    Mona Lisa, the Court doesn't require the Mona Lisa to
22    be produced in court.  A picture that is
23    authenticated by saying that's how it appeared that
24    day, that's how it looks to me, is sufficient.  And
25    the reason why, is because you could have someone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3948

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115949

 1   come in, and you could look at the Mona Lisa, and

 2   someone who is educated on the Mona Lisa could say:

 3   That's now exactly how da Vinci painted that smile;

 4   that is not an authentic reproduction of what the

 5   Mona Lisa is.

 6        You can do that same thing here through the

 7   hash values.  So we're not taking ADS's word for it.

 8   We're not taking his word for it.  There is a

 9   procedure in place, with hash values, that makes sure

10   what was on there is authentically reproduced and not

11   modified in any way.

12        And I would -- and, as an example, I would

13   show the Court the modifications to Rule 902 for

14   authentication that came into effect at the beginning

15   of this month, December 1st.  And you can now have

16   self-authenticating evidence, certified data copied

17   from an electronic device, storage medium, or file.

18   I expect that the Court will see a certification like

19   this in this case that gives some of the same data

20   here.  And so what it allows for is you have a

21   certificate of a qualified person that complies with

22   the certification requirements of 902 (11) or (12).

23        So, in this case, what would happen is an

24   expert who has verified the data in the exact same

25   way that Special Agent Williamson did, writes out in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3949

1   a certificate all of the things by affidavit that he

2   did to certify this.  And so, again, if we're looking

3   here at 902(14), that's Rule 902 evidence that is

4   self-authenticating.

5           And if we go here, this is the committee

6   commentary to the 2017 amendments.  Paragraph 14, the

7   second paragraph in there talks about authentication

8   for hash value; that the Committee on the Federal

9   Rules of Evidence, that the courts recognize that the

10  process that ADS put in place to authenticate the

11  data that was on the ELSUR, or in this case HAWK and

12  other ADS storage devices, the way in which the hash

13  values were obtained, and the way in which they were

14  assigned authenticates the evidence as same as the

15  original.

16          And so that's why the defendant have all

17  the information that may be helpful or may be useful

18  to them, is through this hashing that was contained

19  on the evidentiary DVD that was copied, and then

20  provided to the defendants to look at their DVDs,

21  provides them everything they wanted in the same form

22  as the original.

23          So the way in which an expert on da Vinci

24  would come in and say that smile is different, is the

25  same way in which this hash value, if those files

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3950

```
 1   were ever modified -- which they can't be -- but if
 2   they ever were, the hash value that Special Agent
 3   Williamson showed to the Court there, the long string
 4   of numbers where we looked at the first and the
 5   second, they would be completely different from each
 6   other.  And that's how we can authenticate digital
 7   evidence in court.  We look at the hash values that
 8   were assigned when that recorder was downloaded, the
 9   hash values on the evidentiary DVD, the hash values
10   on the copies of the DVDs that he had today and that
11   the defendants have contain the exact same hash value
12   showing that it is identical to the original.
13            Now, so that the three DVDs that we played
14   at the end are the three DVDs in which the metadata,
15   as I said -- and as Special Agent Williamson pointed
16   out -- the metadata does not match up with the real
17   world.
18            And so in the case of the DVD with the 1899
19   dates, the battery died, and so all the date
20   contained in those files is authentic; it's exactly
21   what was on the device.  It just doesn't -- it
22   just -- when you play it through the player, it
23   doesn't correspond with real dates and times.  But it
24   is the same exact data that was created when the user
25   hit the on and off button.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118

```
1            The same thing for the second and third,
2    although a little bit different, the third and fourth
3    that I played.  Those, there was something in the
4    process so that the internal computer for the devices
5    did not match up with the actual dates and times.
6    And the way in which that was discovered is by
7    looking at either when these devices were deployed
8    out into the field or when these conversations took
9    place accordingly, and that there was no recorder in
10   the jails during those dates or the source recording
11   wasn't placed next to the person who he was recording
12   in those cases.  So in that case, again, even though
13   that data is inaccurate in terms of real world data,
14   nothing would be gained, even if that information
15   were still on the device, which it weren't, because
16   that's just the coding.
17           If -- there is no way to manipulate the
18   date, as Special Agent Williamson testified, there is
19   no rewind button.  There is no way to manipulate this
20   data.  But if you did, again, the hash values would
21   be different, and it would not -- the proprietary ADS
22   software wouldn't read the information.
23           So I think that's why I was hoping that
24   Special Agent Williamson's testimony would make
25   clear -- and it think that it did -- that no helpful
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3952

1   or useful information will be gained from inspecting

2   the devices, from allowing access to the devices.

3   The hash values are in place, they are an accepted

4   method of authenticating the original, and there is a

5   reason why.

6           So if we look at the law, the same law

7   enforcement privilege applies as would apply in

8   Roviaro.  And what I looked at in the case law and

9   what they looked for is that basically there is a

10  compelling need to have access to this law

11  enforcement sensitive information.  And the

12  defendants cannot establish they have a compelling

13  need for the devices or for access to the devices,

14  because nothing would be gained from accessing the

15  devices, nothing helpful.

16          THE COURT:  All right.  Anything further,

17  Mr. Beck?

18          MR. BECK:  Not at this time, Your Honor.

19          THE COURT:  Thank you, Mr. Beck.

20          Who wants to take the lead here?  I'll kind

21  of go in the order of the examination.  Do you want

22  Mr. Lowry to go first?

23          MS. JACKS:  I think Mr. Lowry would like to

24  go first, if the Court doesn't mind.

25          THE COURT:  All right.  Mr. Lowry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MR. LOWRY:  If the Court would indulge me,
 2    Your Honor.  I just wanted to speak briefly.  And I
 3    understand the Court's concern is:  What do we need
 4    that we don't have, if I understood the Court
 5    correctly.
 6           And I think the very last question that
 7    Agent Williamson answered is exactly why, on behalf
 8    Mr. Baca, we would like to examine this device.  The
 9    real issue here is, for Defendant Baca, is how easy
10    was it for Mr. Duran to manipulate this device?
11           Mr. Duran tells Mr. Acee in the text that
12    he provided five to six hours of his recordings of
13    Mr. Baca.  But, as you heard Mr. Williamson say, that
14    the DVD provided has less than 55 minutes.  There is
15    an open question that you pose, is there no way to
16    tell from this metadata that was provided, if the
17    recording sessions were inadvertently cut off or
18    intentionally cut off.  And I didn't get the sense
19    from him how easy it was to inadvertently switch on
20    or off the device, which is, frankly, why we want to
21    see it.  It's less about the metadata, and for Team
22    Baca, I would say, it's almost not about the
23    metadata, but it's about how easy it is to manipulate
24    this device.  And when I say "manipulate" I mean turn
25    it on or off.  And it's really critical for us to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3954

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 121 3955

 1    know is it turned off so easily that it happens, you

 2    know, just by happenstance?

 3              So there is a whole bunch of actually

 4    technical, mechanical questions that one would want

 5    to get from looking at the device:  Like how much

 6    pressure do you have to apply to the button to

 7    actually turn it off?  How bright or luminescent is

 8    this light that's on flashing when your device is on

 9    compared to when it's off?  Whether anybody normally

10    using this device knows it's on, knows it's off?

11    Especially somebody, as in this case who is given

12    this device and tasked with recording other

13    individuals in the prison.  You would think that they

14    would be acutely aware of whether the device was on

15    or not.  Because that, in the words of Eric Duran,

16    was his quote "mission," was to record Mr. Baca.

17              So I find it a little bit disconcerting

18    that the Special Agent testified that he didn't know

19    whether it was an intentional log off or not.  And

20    that's something we need to explore.  And the only

21    way we can explore that is to examine the device.  So

22    I would say that's the primary reason we would like

23    to look at it, Your Honor, so we could understand

24    that fully.  It's a critical part of our defense,

25    because there is a big difference between five or six

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123956

```
 1   hours of recordings and less than 55 minutes of
 2   recording.
 3          But moving to the metadata -- and I'm going
 4   to have to research this authentication element under
 5   federal Rule 902 -- but it concerns me a great deal
 6   that we're just taking ADS's word at face value.
 7          Mr. Beck took me up on the Mona Lisa
 8   example, but let me play with that for a second.  We
 9   all know what Mona Lisa looks like, but let's say we
10   have a Jason Pollack painting locked up in the vault,
11   and I'm coming out and saying, Hey, well, here's the
12   one I have in the vault.  If nobody really knows
13   what's in the vault, and we're all talking about
14   copies, that's the question.
15          And it bothers me a great deal that this
16   process, this proprietary software has never been
17   vetted or validated by any independent agency, and
18   we're taking it at face value that it is what it
19   purports to be.
20          And I'm sure the Government's confident and
21   at ease with a certification of authenticity.  But my
22   question is a little bit broader than that, and
23   perhaps, delves more on a real technical validation
24   issue maybe under Daubert.  But we weren't aware that
25   there is a Daubert issue until we saw this affidavit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3956

```
 1              But I'm familiar with DNA evidence and
 2    those kind of things, and those types of black box
 3    technologies, whether you're talking about
 4    breathalyzers or electropherograms or the STRmix
 5    data, which you also hear about in this case later
 6    on.  The people that develop these types of software
 7    open it up for the FBI, and even independent
 8    organizations to view it and validate it, to make
 9    sure it is what it purports to be, a valid technique
10    to record and then download correctly.
11              And so, again, for Mr. Baca, I'm not saying
12    metadata is of no concern whatsoever, but our primary
13    concern is really about the mechanics of this device:
14    How does it cut on?  How does it cut off?  And is it
15    accidental or not?  And I think that's a critical
16    part of the case.  And I think that's something we
17    don't get from looking at the metadata, and
18    unfortunately, it not even something we get from
19    looking at a picture of a device.  You'd actually
20    have to handle it to understand how the buttons
21    function and how it cuts on and off, and whether it
22    can be accidentally turned on and accidentally turned
23    off, or whether it's damn near impossible.
24              And if you have any other questions, Your
25    Honor, I'd be happy to answer them.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123958

```
 1              THE COURT:  Do you disagree with Mr. Beck
 2    that the standard here to overcome this privilege is
 3    that the defendants have to show a compelling need?
 4              MR. LOWRY:  I think -- yes, I would agree
 5    that it's a compelling need.  And I would think that
 6    based on what I've just argued to you that we have a
 7    compelling need to access the device.
 8              One thing the United States hasn't told
 9    you, Your Honor -- and I'd be remiss if I did not --
10    is that the Seventh Circuit in the United States of
11    America versus Vernon Chapman -- and I don't have a
12    Westlaw cite, but it's appeal numbers 14-3311 and
13    14-3363, and this is an October 2015 Seventh Circuit
14    opinion, ordered the FBI to disclose a HAWK device
15    not once, but twice to two different experts for
16    forensic review.  So you wouldn't be taking the first
17    step on to the playing field.  And this is an opinion
18    by Circuit Judge Bauer, joined by Williams and
19    Hamilton.  And they -- again, the district court in
20    this case had ordered this HAWK device disclosed to
21    two independent experts to evaluate it.  So it's not
22    as if compelling needs cannot be shown under any
23    circumstances.
24              THE COURT:  What were the compelling needs
25    in that case?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3958

```
 1              MR. LOWRY:  It was whether -- sort of what
 2    we're talking about here -- they thought that the
 3    recording had been tampered with, Your Honor, and so
 4    they turned it over to experts to see if it had.  And
 5    I perused the opinion.  The experts actually
 6    determined that it had not; that the recordings
 7    were -- the integrity of the recordings had been
 8    maintained.  But the point being is that once the
 9    need was there, the judge gave them not one, but two
10    bites at the apple, to prove their case.  And they
11    didn't, and the recordings came in.  But the point
12    being is that there was a compelling need
13    demonstrated by the defense, and the judge gave them
14    that opportunity.
15              And I'd be remiss again to say that it
16    strikes me -- and I noted in the Government's brief
17    that the United States claims that they have the
18    prerogative to disclose these devices to whoever they
19    want, whenever they would like.  And they have to say
20    that because they have to justify having given this
21    device to someone like Eric Duran, who not only was
22    convicted of murder, but we know has both in the past
23    fled from the police and caused significant harm to
24    law enforcement in refusing to obey lawful orders of
25    police officers, where they had to discharge their
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3959

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126 3960

```
 1    firearms to try to apprehend him.

 2            And it strikes me as a bit odd that the

 3    protective orders of this Court with a former FBI

 4    agent can't review this device, if there is somehow a

 5    security risk to the United States when you have

 6    somebody who, as we speak in this courthouse, is a

 7    fugitive from justice, who knows everything about

 8    this device.  To think that -- and maybe it is the

 9    United States' prerogative, Your Honor, about who

10    they let see these.  But there is also a balancing

11    test that this Court can entertain, to see whether

12    the defendants have met a compelling need to get

13    access to the device, and inform Mr. Baca getting

14    access to the device is imperative, so we can know,

15    if and when Mr. Duran ever shows up, whether he was

16    turning on this device intentionally and willfully,

17    or accidentally.  And it goes to his credibility.  It

18    goes to the reliability of the recordings.  It goes

19    to Mr. Baca's defense about these recordings being

20    manipulated at his will.

21            So, Your Honor, I would ask the Court to

22    order the production of the device so our expert

23    could examine it under a very strict and robust

24    protective order, frankly.

25            THE COURT:  Let me do this.  I've got some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3960

1    more questions I want to ask you, and I don't want to

2    rush anything.  But I do need to give Ms. Bean a

3    break.  So why don't we take about a 15-minute break,

4    and we'll come back in and go about an hour.

5           All right.  We'll be in recess for about 15

6    minutes.

7           (The Court stood in recess.)

8           THE COURT:  All right.  It looks like

9    everybody has an attorney.  Look around the room,

10   make sure everyone has an attorney.

11          All right.  Mr. Lowry, if you wish to

12   continue your argument.

13          MR. LOWRY:  Well, Your Honor, I think I had

14   finished.  I was standing for the Court's questions,

15   if you had any.

16          THE COURT:  If I understand, all we're down

17   to, pretty much with Mr. Baca, is that you want

18   somebody to be able to press the button and see how

19   hard or how easy it is to record.  Is that what we're

20   down to?

21          MR. LOWRY:  Well, that, and whether, based

22   on the illumination of the lights on the device,

23   whether you would know if it's in active recording

24   mode, or whether -- suppose Mr. Duran goes to

25   activate the device and thinks he's recording a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3961

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 128 3962

1    conversation, he could say, Oh, I missed that part

2    because I saw the light wasn't flashing, so I had to

3    go back and cut it on.  I mean, without knowing how

4    the device is illuminated, in tandem with the

5    buttons, we're at a loss to explain why the person

6    holding the device, employing the device, would or

7    would not know it was on or off at a given moment.

8    And that's imperative to our defense, Your Honor.

9    And I can't overstate.

10            I would just point out for the record --

11   and I believe in the briefing and in the discovery,

12   that the Government indicated that Mr. Duran had two

13   different devices, but based on the Garcia exhibit,

14   he had three different devices.  He had a RAVEN

15   device, a HAWK device, and an EAGLE device.  But, I

16   mean, that's just a little tidbit.

17            But the real point for us, Your Honor, is

18   exactly what I've been talking about is the mechanics

19   of the device.  Would the person holding the device,

20   using the device, know it was on, and would they know

21   it was off?  And that sounds really simple.  And in

22   theory it is.  But in practical application, it's

23   imperative that we know exactly how it functioned so

24   we can be prepared at trial to defend against a claim

25   that, Oh, it was an accidental turn off, it just -- I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3962

```
 1   dropped it and it cut off, or whatever.  I can't even
 2   begin to anticipate what the testimony will be.  But
 3   we need to be prepared for any kind of testimony that
 4   the thing randomly cut on and off.  And the only way
 5   we can defend against that is to actually look at the
 6   device.
 7            I would, you know, analogize it to the
 8   trigger pull on a weapon.  I'm not a firearms person.
 9   But I think people that are into firearms are all
10   about how much pounds it takes to pull the trigger.
11   So, essentially, that's what I want to do with this
12   device.  I need to know how much pressure it takes to
13   cut off.  Does it cut on accidentally, or is it only
14   intentionally?  And when you intentionally cut it on,
15   is it apparent it's on by a glowing bright green, is
16   it glowing red?  I don't know.  I've never seen it.
17            THE COURT:  Well, why not just ask those
18   questions of Mr. Williamson?
19            MR. LOWRY:  Well, I mean, in fairness, Your
20   Honor -- I mean, it strikes me -- again, I want to
21   come back to this idea that, I guess part of my role
22   as a criminal defense attorney is I'm a natural born
23   skeptic.  And I want to handle the device myself
24   rather than take the word of an agency who is trying
25   to prosecute my client and put him in prison for the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130964

 1  rest of his life.  I hope Your Honor would

 2  understand --

 3          THE COURT:  Then that sounds very much

 4  you're just like fishing for evidence.

 5          MR. LOWRY:  No, I'm not.  I'm telling you

 6  exactly why I want it.  It's not a fishing --

 7          THE COURT:  But you've got a witness on the

 8  stand that can answer the lights issue, and tell you

 9  how hard it is.  I mean, you know, that's just

10  fishing after that, to see if you can come up some --

11  you know, play with it and come up with your own

12  theory.

13          MR. LOWRY:  No, I mean, I think I need to

14  know -- I mean, one of the things we can do, if we

15  went in is actually measure the illumination, the

16  lumens that the thing gives off.  So would an

17  ordinary person be aware, based on the lights, that

18  it's on or off?  I mean, you're asking us -- it's not

19  a fishing expedition.  I'm telling you exactly what I

20  want out of this device, in terms of the pressure --

21          THE COURT:  But you're just fishing to see

22  if something turns up.

23          MR. LOWRY:  No.

24          THE COURT:  There is no evidence that

25  anything is wrong with the device, or that it doesn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3964

```
 1    work as intended.
 2            MR. LOWRY:  Well, it didn't work as
 3    intended, Your Honor.  I mean, we're looking at a
 4    bunch of data that's a bunch of goose eggs.  And they
 5    had to come in and explain why it didn't work as
 6    intended.  So I hesitate to agree with Your Honor
 7    that the thing worked as intended.  I mean, if we
 8    look at some of the data sheets, there is no data.
 9    It's everybody's guess, if you look at DVD 20, I
10    believe it is, they all say zero minutes of
11    recording, and the same date and time.
12            But it's really not a fishing expedition,
13    Your Honor.  I mean, we're looking for the pressure
14    it takes to turn on the button, the illumination in
15    terms of lumens for the device, the lights on the
16    device.  I mean, it's concrete information that we
17    want.  We know it exists.  We just want to measure
18    it.
19            THE COURT:  All right.
20            MR. LOWRY:  And I don't think Mr.
21    Williamson would know.  If we want to put him back on
22    the stand, we could ask him, but I don't think he
23    knows that information.
24            THE COURT:  All right.  Thank you, Mr.
25    Lowry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3965

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132

```
 1            Anyone else?  Ms. Sirignano?
 2            MS. SIRIGNANO:  Your Honor, I've just
 3   passed you the Exhibit A and B, which was entered in
 4   today as evidence.  And what Mr. Lowry referred to is
 5   on Exhibit B.  And on the top is DVD number 20, which
 6   has the problems with the metadata.  And I'd just
 7   like the Court to look at that and the different
 8   devices that --
 9            THE COURT:  Which one?  B?
10            MS. SIRIGNANO:  B, Your Honor, yes.
11            And with all due respect, Your Honor -- and
12   very respectfully -- I did try and ask the agent
13   about the device.  And I was shut down because of
14   some alleged national security or proprietary
15   argument privilege.
16            And I was prepared to go through every
17   feature on that HAWK device, which is -- the pictures
18   are in Exhibit A -- and unfortunately, I wasn't
19   allowed to do that.  So, as you can see, the
20   Government's argument about this information being
21   national security privileged, it fails terribly.
22   It's all over the internet.  And while it might be
23   proprietary in nature, it's over the internet, it's
24   on YouTube.
25            And although that manual is 2007, which
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   came into evidence -- there might be a newer one --

 2   but for all intents and purposes I would have liked

 3   to have asked if the buttons were the same.  But this

 4   witness wouldn't give us an answer, nor was I allowed

 5   to go into the specifications of the device.

 6            So just two really quick points, Your

 7   Honor.  I do believe there is a compelling need.  And

 8   this is definitely not a fishing expedition.  You

 9   heard the Government's witness admit to the dates in

10   these devices; that some of them are bogus.  And I

11   did elicit on cross-examination that the dates and

12   times and seconds of these recording devices is very

13   compelling, it's very important to establish in this

14   case the conspiracy statements, co-conspirator

15   statements.  The date and the time is very important

16   for all of us.  As these recordings, either they

17   pre-dated conspiracy or they post-dated the

18   conspiracy.

19            And as you can see, to use Mr. Lowry's

20   language, in DVD number 20, there is a bunch of goose

21   eggs there, Your Honor, all zeros.

22            And what we couldn't hear from this witness

23   was what data integrity checks were done, either at

24   the time that the device was taken out of the ELSUR

25   room or, at the time that the ELSUR clerk downloaded

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3967

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

1    this information.  And arguably, if there was problem

2    downloading this information, then it should have

3    been stopped.  And the original recording on the

4    device itself should have been sent to Los Angeles,

5    and not a copy.  That's not the best evidence.  The

6    best evidence is not a duplicate.  I think it's

7    pursuant to Federal Rule of Evidence 10002 and 1001

8    is where it's defined.  So I think we have shown a

9    compelling need.

10           Additionally, with the testimony that the

11   Government's main snitch said that he had five to six

12   hours of recordings, and we only see 53 minutes

13   here -- and, Your Honor, if you go through each

14   entry, each session time, you can see where one flips

15   over at the end of the recording and it starts at the

16   exact same time with a second session.  That would be

17   a proper recording, one session goes into a second

18   session, depending on the device.  But then you'll

19   also see other sessions that, for whatever reason,

20   only go for a few seconds.

21           And it also came out in the testimony of

22   the handler's ability to start a conversation and to

23   stop a conversation instantaneously.

24           So I would just submit, Your Honor, that we

25   have shown a compelling need.  This national security

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    argument fails.  And all we're asking for is to have

 2    one attorney and our expert, Mr. Bryan, be able to

 3    look at this recording and to ascertain the problems

 4    with this metadata that does exist and the data

 5    integrity issues that we uncovered today.

 6            Thank you, Judge.

 7            THE COURT:  Well, are you where Mr. Lowry

 8    is?  You primarily want to touch the off and on

 9    device, look at the lights.  And the metadata, it is

10    what it is, and there is not much more to be mined

11    there.

12            MS. SIRIGNANO:  Well, I am with Mr. Lowry

13    on actually viewing the device, the on and off

14    switch, and the light issue.  But with the metadata,

15    I agree with the Court, that it's either there or

16    it's not there.  But we don't have any testimony from

17    the FBI about what they did with the data.  And he

18    said he verified it, but he didn't explain how.  And

19    they're just taking the proprietary software and the

20    program that was developed for not just the FBI; it

21    seems for other law enforcement agencies.  And in

22    making the copy of the original recording, the

23    original recording stays with the device, and what

24    the FBI is calling the evidentiary copy.  But, Your

25    Honor, I submit it's a copy.  And without that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3969

1    original device, it's very hard to -- it's impossible

2    to make sure that the integrity of the data exists,

3    or still exists.

4              THE COURT:  But what is -- what more is to

5    be done?  I mean, that's kind of a legal argument,

6    isn't it?  But there is nothing really more as far as

7    tests or anything that can be done on the metadata

8    side, is there?

9              MS. SIRIGNANO:  Yes, the Chapman case --

10   and I reviewed it briefly -- there were a couple of

11   experts that reviewed that date.  And Mr. Bryan, if

12   he was able to get access to the original copy, what

13   they're calling the original evidence, he might --

14   well, he can look at that data to see if there was

15   any manipulation other than the on and off switch.

16             THE COURT:  But if I understood the

17   testimony, there is nothing on the recording device

18   now.

19             MS. SIRIGNANO:  Well, that's what I

20   understand, Your Honor.  So the copy, the original

21   copy -- which we don't have -- it's in FBI's evidence

22   vault somewhere -- we were given copies of copies.

23             So what I would like to look at with Mr.

24   Bryan is the original copy, to see if there is any

25   anomalies or any manipulation.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3970

 1              THE COURT:  So that doesn't have anything

 2    to do with the device.  That's just you're wanting to

 3    see, I guess, whether the copy, your copy, is the

 4    same as the copy of the original?

 5              MS. SIRIGNANO:  Yes, Your Honor.

 6              THE COURT:  So that doesn't have anything

 7    to do with the device?

 8              MS. SIRIGNANO:  Not the device itself,

 9    since the FBI destroyed that evidence.

10              THE COURT:  So the metadata is just limited

11    now to a copy issue, not to the recording device

12    anymore?

13              MS. SIRIGNANO:  Except for disc number 20,

14    which we were told that never -- the metadata was

15    never captured because of a battery issue.

16              THE COURT:  But we can't do anything on

17    that at this point, right?

18              MS. SIRIGNANO:  Not at this point, Your

19    Honor.

20              THE COURT:  All right.  So if I understand

21    where you and Mr. Lowry are, in combination, it's the

22    on and off switch; it's the lights; and you want to

23    look, now, at the original disc to see if it's the

24    same as the copies you're getting?

25              MS. SIRIGNANO:  Yes, Your Honor.  Thank

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3971

```
 1    you.
 2              THE COURT:  So I have the universe, and
 3    that's it?
 4              MS. SIRIGNANO:  You do.
 5              THE COURT:  Thank you, Ms. Sirignano.
 6              MS. SIRIGNANO:  Thank you.
 7              THE COURT:  Anyone else want to argue?
 8    Ms. Jacks?
 9              MS. JACKS:  I have a few comments, because
10    I mean, this has been sort of a moving target.  I
11    think, when we first started, we were requesting the
12    metadata, because we were saying to the Government:
13    How can you have recordings that you don't know what
14    date they were made, if you're saving the metadata?
15    How can you have recordings that show up as having
16    nothing in them, and they have minutes of recordings,
17    you know, in these files?  How can you have
18    recordings that are supposedly made in 1899?  And so
19    those were the questions that were raised by the
20    Government's evidence, and why we were saying, look,
21    we need metadata.
22              And I join the Court in complimenting Mr.
23    Beck to getting some of the answers to those
24    questions.  And I thought he did a good job in
25    briefing, or in setting out and honing in on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    issues here.  And I think what the Government's

 2    answer has been, Well, how that can happen is the

 3    device malfunctioned, or the person that set up the

 4    device sent it out the door of the FBI in Albuquerque

 5    without the right date setting, or -- and I think

 6    we've also heard -- and the Government has answered

 7    the questions about how they know when a date, for

 8    example, on that Exhibit B, that you have before you,

 9    if you look at the one labeled DVD 17 -- I'm sorry,

10    DVD 19 -- this is a summary of recordings that were

11    allegedly made by Billy Cordova with Rudy Perez.  And

12    these purport to have dates on there.  I mean, it's

13    not like you get a date of 1899.  These purport to be

14    recorded between February 1st and February 4th.

15          And what the Government has determined,

16    apparently, that -- this is what I understood through

17    these hearings, and ultimately today -- is that those

18    dates are wrong, and they're wrong because either the

19    device wasn't introduced into the facility on those

20    dates, or because Mr. Cordova wasn't housed next to

21    Mr. Perez on those dates.  You wouldn't know that by

22    looking at it.  By looking at it, it looks like it's

23    purporting to tell you about recordings that happened

24    on February 1st, 2nd, and 4th.

25          So my point -- I guess what I'm saying is I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3973

```
 1    think the Government has answered our questions.  And
 2    I think what we're hearing is that there were various
 3    errors, some mechanical and some human caused, that
 4    produced this confusing data set that we've been
 5    trying to make sense of.  And for that, I think we
 6    understand where we need to go.
 7            I think Mr. Beck and his expert have made
 8    it clear that these ELSUR devices, once the data is
 9    downloaded off them, whether it downloads correctly
10    or incorrectly, or whether the download is accurate,
11    the device is simply wiped clean and never further
12    examined.  So I don't think there is anything that we
13    can gain by looking at the actual ELSUR devices,
14    looking at the metadata on the ELSUR devices.  I
15    think the Court is right, that's long gone.  And any
16    effort to inquire about the integrity of that or
17    whether there is data on the device that wasn't
18    downloaded onto the DVD, that opportunity was missed
19    when the Government just erased the devices and moved
20    forward.
21            With respect to Mr. Lowry's comments, I
22    join in his request to examine the devices.  And I
23    can only sit here and run through in my mind the
24    various excuses that Mr. Duran or Mr. Cordova or
25    other government informants are going to come up with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3974

1    when they're challenged about:  Why are you turning

2    this thing off and on and off and on multiple times

3    during a very short time period?  And certainly,

4    mistake or accident, or the thing shut off, you know,

5    when I set it down, those are the types of, I think,

6    excuses that are going to be offered up here in court

7    to explain this very unusual manner of recording a

8    conversation.

9            I note, in looking at the Government's

10   evidence -- and I think the Court can see that in

11   examining Exhibit B -- there are three separate types

12   of electronic surveillance devices that were used in

13   this investigation.  And it looks like some of the

14   informants used the same device, and some of the

15   informants used multiple devices, depending on which

16   one was introduced into the prison at which point in

17   time.  So I think, to be fair, or to be clear about

18   Mr. Lowry's request, or what's the remainder of the

19   defense request, is an opportunity to examine a

20   prototype of each one of the type of electronic

21   surveillances devices.  So that looks to me like it's

22   a HAWK8A, a RAVEN2A, and an EAGLE8C.

23           But the one other thing I just want to

24   point out -- and that's something that's just become

25   apparent to me over the course of these hearings --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is in responding to our letter, the Government did, I

2    think, make an effort to respond directly and to be

3    concise, and answer our questions.  And for that I'm

4    appreciative.

5         I do note there are errors in the

6    Government's response.  One that jumped out at me

7    today is the Government is reporting to us and to the

8    Court that Mr. Duran had two separate ELSUR devices

9    at different points in time.  And the exhibits in --

10   the pages of Exhibit B show that Duran at least had

11   three separate devices:  1168, 730, and 1188.  And so

12   it is troubling.

13        This stuff is complicated.  It's difficult

14   to understand.  It's difficult to analyze.  But it's

15   troubling that the Government continues to be

16   inaccurate and make mistakes in terms of what it's

17   disclosing about who had what when.  But I think --

18        THE COURT:  But that's a separate issue,

19   though, from looking at the device issue.

20        MS. JACKS:  Correct.  I just want to point

21   out, we've certainly learned a lot.  And I think that

22   it's been helpful to try to understand where we go

23   from here.

24        But I guess my point is only that, sort of

25   the target has changed over the course of this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3976

1    litigation.  And I think we have gotten answers.  And

2    basically what we know now is to examine the devices

3    for the metadata would be a fruitless action because

4    the Government destroyed that information when they

5    downloaded the device and erased it.

6                THE COURT:  Maybe I missed this point, but

7    I thought he testified that when you download, you

8    don't have it on the machine anymore.  I mean, it's

9    not like, if I make a CD of something on my hard

10   drive, it's still on the hard drive.  Here, when you

11   download, you lose it off the device.

12               MS. JACKS:  Maybe I failed to ask the right

13   question on cross-examination.  I have some testimony

14   from the other cases that Mr. Beck provided.  And

15   it's my understanding it's sort of a two-step

16   process; you download, and then you're given the

17   opportunity to delete or not delete.  So if I'm

18   misstating that --

19               MR. BECK:  Ms. Jacks is correct.  Yeah, it

20   prompts the ELSUR operations technician.  When the

21   download is complete, it says, "Download complete,

22   okay, erase the device, okay."

23               THE COURT:  I guess the reason that you're

24   erasing it is because you're going to use it again on

25   another investigation; is that the reason?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  That's right.

2          THE COURT:  Anything else, Ms. Jacks?

3          MS. JACKS:  No, thank you.

4          THE COURT:  Let me ask you one question:

5    So you don't add anything to the universe of requests

6    here that Ms. Sirignano and Mr. Lowry had?  Those

7    three items are still the ones that -- you don't have

8    anything to add to that list?

9          MS. JACKS:  I really don't.  The only thing

10   I wanted to add was there are three devices, and give

11   you the names of them, because those three devices

12   were used by various cooperating witnesses in the

13   same manner.

14         THE COURT:  All right.  Thank you, Ms.

15   Jacks.

16         Anyone else?  Mr. Lowry?

17         MR. LOWRY:  Just to follow up on Ms. Jacks'

18   point.  If the Court was inclined, preferably I'd

19   like to see the original devices, not to examine

20   metadata, but to test the real devices that were

21   used.  But if the Court is inclined to get the

22   prototypes, I'd like to get some kind of admission

23   out of the United States about, Well, you can't

24   complain that the pressure points or the illumination

25   on this device is unlike the one on the actual

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3978

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 145

```
 1    devices, when they have access to those and could

 2    make them available for us to look at, Your Honor.

 3    So that's really the only point.

 4            And finally, Your Honor, in Mr. Beck's

 5    defense I was complimenting his writing on the way

 6    down here to my colleague, Theresa Duncan, to say:

 7    He had a marvelous mentor, because you could tell by

 8    the way he patterned his brief, it was definitely Mr.

 9    Beck's work product.  So I think it's fair to say --

10            THE COURT:  You always want the judge to

11    write his opinion out of your brief.  That's what

12    you --

13            MR. LOWRY:  He did a good job laying it out

14    for you just in a manner that you would like, so.

15            THE COURT:  Thanks, Mr. Lowry.

16            All right.  Mr. Beck?

17            MR. BECK:  So I see -- I think Mr. Lowry

18    makes a point.  I went back over Chapman.  I found it

19    during the break.  It looks to me like in that case

20    what the Court required to be disclosed was the

21    evidentiary DVD.  I didn't glean from that that they

22    required the device to be disclosed.  And in fact,

23    then they had an audio/video technician person look

24    at the DVD, I'm assuming in the way we did today in

25    court.  And they didn't find any sign of tampering.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   And so their request to allow a forensic computer

2   scientist expert to examine the actual device was

3   denied, from what I gather reading it.

4           And I think properly so.  I think, as

5   everyone acknowledges, there is nothing else on these

6   devices afterwards.  And I think Mr. -- and I think

7   Special Agent Williamson's testimony was it is an

8   intentional press of a button by the operations ELSUR

9   technician to delete the device.

10          I will talk about DVD 20 that we've heard a

11  lot of testimony about.  To sum up Agent Williamson's

12  testimony about DVD 20, the problems with the

13  computer battery that recorded the date and time were

14  not -- they weren't -- I guess I'm going to use my

15  own phrasing here -- like a terminal error.  Meaning

16  that it corrupted the data.  What happened was, when

17  that data is recorded on the device, and creates

18  those files we looked at, 1168.001, the binary coding

19  in there is all correct.  But when that goes through

20  the proprietary software, it just displays the date

21  that was on the computer, which is nothing.  Which is

22  that 1899 date.

23          And so I think when Ms. Sirignano was

24  saying, it would be good -- or why didn't they then

25  send that device back to Quantico, and then back to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3980

```
 1    the manufacturer so they could look at the device,
 2    the answer is that, if there is corrupted data on a
 3    device, it doesn't download, you can't complete the
 4    download.  What the download does is it used that
 5    SHA -- I'm not technical, but that check value to
 6    make sure that the data is the same.  And as long as
 7    it is, as long as it's all the same data on the
 8    device that's downloaded onto the DVD, it completes
 9    the download.  And you delete it.
10          And so whether someone, the operations
11    technician in Albuquerque, or the technically trained
12    agent even saw on the player that there was no date
13    and time there, because it downloaded fully, because
14    it completed that DVD, that established that there
15    was nothing else to be gained from the device.
16          So I think Agent Williamson said there
17    would be no point in sending that back to the
18    manufacturer.  And that's why, because he confirmed
19    that all the information on that device was on the
20    DVD.  It's not accurate for when it was recorded, but
21    it's accurate for the information that was created on
22    the DVD.
23          So I think we've established that
24    inspecting, or having access to the devices for
25    purposes of looking at the metadata on them or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3981

 1    examining the metadata won't work.  With one other

 2    caveat:  I think they talked about giving their

 3    computer expert access to the device so that they

 4    could check the data on the evidentiary DVD is the

 5    same as the data provided on the copies to them.

 6              That's what we went through at the

 7    beginning with Special Agent Williamson, where he

 8    used a third-party hash software to check the hash

 9    values.  So that third-party software that's

10    available to anyone, including us in this room,

11    checked and saw that the hash value that was assigned

12    when the recording was downloaded in the ELSUR

13    technician office in Albuquerque was the same as the

14    copy of the DVD he was playing today.

15              And so they can go and use -- I mean, they

16    can provide that evidentiary DVD, I'm assuming, to

17    their computer technician, computer forensic expert,

18    who can then check the hash values, and come up with

19    that same thing, that the hash values that were

20    downloaded originally as part of that file are the

21    same hash values as they will get when they run it

22    through a hash check software.

23              So then we come to the last point here,

24    which is the physical inspection of the devices.

25    Mr. Duran had, in prison, multiple devices.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3982

1    believe that he had an ELSUR-type HAWK, EAGLE

2    recording device; that was one.  And then he also had

3    a consensual wiretap on a phone there, which was two.

4    So to say that there were five or six hours of

5    recording could be those two different mediums for

6    recording conversations.  It also could be a lie.

7    And the way we test that is with Mr. Duran up there

8    on the witness stand.

9            I think that they were saying, the defense

10   was saying that they need access to the device so

11   they can prepare for the witness saying that it was

12   unintentional that they turned it off or not; they

13   didn't know they turned it off, something like that.

14   I think there are a couple of ways to corroborate

15   that or not.  One would be to listen to the

16   recordings.  If it stops at the end of a

17   conversation, and then turns off, that obviously

18   corroborates that they didn't turn it off

19   unintentionally, or they intentionally did it.

20           Special Agent Williamson's testimony was

21   that he couldn't tell whether they intentionally

22   turned off the recording or not was credible.  You

23   can see whether the device malfunctioned in some way,

24   or the batteries died.  That's all told by the flags.

25   So you can tell from the player software whether a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 3983

 1   session was completed by turning on and off the

 2   device.

 3          If you look at the timestamps on there, you

 4   can account for every hour, minute, and second that

 5   it was inside the prison after it had been activated

 6   the first time, to when it was turned off the last

 7   time, aside from DVD 20, you can't do that on DVD 20.

 8   But with the other ones, even though the dates may be

 9   wrong, you're still accounting for all that time

10   there.

11          If one inspects the device and looks at it,

12   I am thinking -- I anticipate that Mr. Lowry's

13   argument about whether you can easily turn on and off

14   the device or see the light blinking would be my

15   interpretation of how easy it is to turn on and off

16   the device and see the light, which would be

17   different than Mr. Duran's or Mr. Cordova's.  And I

18   say that because I anticipate that the defendant will

19   say:  It's very difficult to turn on or off the

20   device unintentionally.  You have to flip the button

21   or you have to press the button.  And you can't do

22   that unintentionally, to which I am sure the person

23   on the witness stand saying that they did so

24   unintentionally, if that would be their testimony,

25   would say, well, it's obviously very easy because I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 153985

1   did it.  I had it in my pocket.  I hit the off

2   button, must have, that's why it stopped recording,

3   or it must have hit the on or off switch, that's why

4   it stopped recording.

5           So I really don't anticipate there will be

6   useful evidence gathered from looking at these

7   devices physically.  I think everyone will disagree

8   about how easy or difficult it is to unintentionally

9   turn off the recording device.

10          THE COURT:  Stay right there.  Let me ask

11  Mr. Lowry:  If the software -- given this rule change

12  that you have, and you have the hash value that on

13  the material you could check it with just commercial

14  software that's available on the market, what are you

15  going to get additional of going and looking at the

16  original?

17          I'm sorry, I should probably ask that of

18  Ms. Sirignano.  What do you gain -- if you can just

19  check it with over-the-counter software, what do you

20  gain by getting the original?  You can tell if there

21  has been monkey business here with over-the-counter

22  software, can't you?

23          MS. SIRIGNANO:  Your Honor, based on the

24  testimony from today, the special agent said that

25  there was this over-the-counter software to compare

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152

1    the hash values, which our expert is saying is like a

2    fingerprint of the actual recording.  Now, whether or

3    not there is something other than a straight

4    comparison of the actual hash values that's on the

5    internet, I'd have to get back to the Court after I

6    speak with Mr. Bryan.

7            THE COURT:  Because when I read that rule,

8    which they are educating us as judges at schools and

9    seminars, it seems to me that what Mr. Beck is saying

10   is correct, you're not going to gain anything by

11   putting your hands on the original, because the copy

12   you can tell there was a problem.

13           MS. SIRIGNANO:  I disagree with that, Your

14   Honor, insomuch as the FBI did decide to destroy the

15   evidence on the device.

16           THE COURT:  But that's going back to the

17   original issue, which, you know, you'll have your say

18   at trial on that.  But at least the copy, I'm not

19   understanding how looking at the copy gives you

20   anything more than -- the first copy gives you

21   anything more than looking at the second or third

22   copy, because of the hash values they're going to be

23   on all.

24           MS. SIRIGNANO:  Your Honor, what we didn't

25   hear today was that the agent did the hash value

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    check on the original.  We heard that the agent --
 2    the original copy, let's just say it that way, which
 3    is in evidence -- and who knows what --
 4              THE COURT:  But I guess what I'm
 5    understanding, from what I'm hearing at schools, and
 6    what the rules say is, you could take the hundredth
 7    copy and determine that -- if there is a problem,
 8    because of the hash value.
 9              MS. SIRIGNANO:  Unless, of course, Your
10    Honor, the scenario would be is that the original
11    copy, the hash value itself was manipulated in some
12    way.  And then each subsequent copy, whether it's the
13    hundredth copy, would reflect the initial
14    manipulation.  We don't know that.  We didn't hear
15    that from the agent today.  What we heard was that he
16    looked at copies, which --
17              THE COURT:  From what I understand, you
18    can't do that.
19              MS. SIRIGNANO:  I don't -- Your Honor, if I
20    could have a minute to consult with my expert, I can
21    get back to you.
22              THE COURT:  All right.
23              MS. SIRIGNANO:  Thank you.
24              MR. BECK:  I think I can answer that.  I
25    got into that with Agent Williamson about how the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3987

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154

1    proprietary software works; that they give that all

2    to ADS, the company that manufactures that, so that

3    they have the checks and balances in place, meaning

4    that, if there is some manipulation of the data,

5    which everyone agrees they really can't do, it just

6    won't play on that player.  So that's how they

7    double-check the ADS works.

8            So if you think about this, where we

9    have -- you know, I think on one hand that other law

10   enforcement, state, local, and international use this

11   company to manufacture devices is probative of the

12   checks and balances they have in place.  But compared

13   to, like a painting that we've never seen, borrowing

14   from Mr. Lowry's example -- he's obviously much more

15   well versed in art history than I am -- but a

16   painting that we've never seen, the way that we would

17   check to make sure that the second -- the copy in

18   court is an accurate representation of the original

19   is different when we're talking about a recording.

20           You can authenticate a voice recording by

21   having, you know, some expert come in and say that

22   person's voice is exactly what I'm hearing on this

23   end.  So the way that we check that -- I think

24   Special Agent Williamson got into this a little

25   bit -- is that they make a recording with the device,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3988

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155989

```
 1    maybe they record themselves -- Special Agent
 2    Williamson would record himself -- and then they go
 3    back and they play that through the recorder.  And if
 4    it plays and it is his voice, well, then you know
 5    that whatever internal coding the proprietary
 6    software has, has worked, because you downloaded it;
 7    it didn't show an error when you downloaded it; you
 8    played it, it was able to play, and it's your voice
 9    on the recording.  And so that's the way that they
10    can double-check to make sure that the data integrity
11    is being maintained without having to, number one,
12    get access of their proprietary software, and number
13    two, check with a third-party vendor to make sure
14    that someone has done that.  Because a voice
15    recording, there are these things that you can do to
16    make sure that the checks and balances are in place.
17              THE COURT:  Well, let me ask you this:  How
18    much resistance do you have to their expert coming
19    over and doing it on the original?
20              MR. BECK:  I think we could -- I certainly
21    think we could accommodate that.  I don't know
22    whether we need to.  Because, as Ms. Sirignano
23    correctly pointed out, Special Agent Williamson did
24    not testify that he has verified the values -- the
25    hash values of the original evidentiary DVDs, because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3989

1   I didn't ask him to.  If we seek to admit these at

2   trial, we would either have to have someone testify

3   to that, stipulate to it, which would mean we'd have

4   to prove that we did it, or a certificate, likely

5   from Special Agent Williamson, that says:  I have had

6   in my possession the original evidentiary DVDs.  I

7   have done the hash value checks and they all check

8   out.

9            So I'm saying I don't have much opposition

10  to that, because it's going to have to be done

11  somehow.  I just don't know if we need to do that.

12            THE COURT:  Ms. Sirignano.

13            MS. SIRIGNANO:  Your Honor, so after

14  consulting with Mr. Bryan, the way he explained this

15  to me is that, when you download the original

16  recording, it creates a hash on that copy.  And then

17  each subsequent copy creates a hash or a fingerprint.

18            And so what we heard today was that this

19  expert didn't go back to the original hash from the

20  original downloaded recording to make that original

21  copy.  And so all he did was compare his copy to the

22  previous hash.

23            There is one file on all of this -- the

24  evidence that was given to us that contains all the

25  data values.  And if there was any way that those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3990

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157

1  data values or the hash within these data values were

2  manipulated, then you'd have a problem with the

3  subsequent copies.  And Mr. Bryan tells me that it

4  would take about an hour total to take a look at this

5  and to ascertain if the integrity of the data is

6  still there, Your Honor.  And we would just ask that

7  we could do that sooner than later.

8       The Government did tell me that they were

9  going to use these recordings.  First on my 12(b) 4 B

10  motion, I wrote the Government a letter, and they

11  wrote me back, and based on my motions to suppress

12  Mr. Beck emailed me and told me they were going to

13  use this evidence at trial.  So I would just request

14  that we get a time as soon as possible, before the

15  holidays, to take look at this digital evidence, Your

16  Honor.  Thank you.

17       THE COURT:  Well, you're still talking --

18  it's still the original request, take the original

19  disc, not the copy, and check the hash values on

20  that?

21       MS. SIRIGNANO:  Right.  And I think we're

22  saying the same thing.  It's the original disc that's

23  in evidence that can be checked out, and looked at by

24  Mr. Bryan and his equipment.

25       THE COURT:  Well, do you oppose that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3991

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

```
 1            MR. BECK:  No, we can coordinate that.  I
 2   mean, there is no reason to oppose that.
 3            THE COURT:  Let me ask on the physical
 4   check that Mr. Lowry -- if the concern of the FBI is
 5   you don't want anybody to see the shape or the size
 6   of it, would there be a way to cover all that device,
 7   including covering the outlets, which doesn't seem to
 8   be of interest to the defendants, and just let Mr.
 9   Lowry come in and push the button, and see if he can
10   any argument from that, and then look at the lights,
11   and but you would keep covered the device's size,
12   shape, and the outlets?
13            MR. BECK:  That, I can't say.  That would
14   go above my head to get clearance on that.  But it
15   seems like that would be a rational middle ground for
16   everyone to meet, and it seems like it would assuage
17   sort of the FBI's concerns, and allow Mr. Lowry to
18   get what he's looking for, which I don't know that
19   he's demonstrated a compelling need.  But it was a
20   good argument.  So --
21            THE COURT:  Well, what concerns me is -- I
22   don't want to put words in Mr. Lowry's mouth, but it
23   seems like attacking Duran's recording abilities is
24   about his only defense, or his chief defense here.
25   If that's really where they're going, but it's that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3992

```
 1   crucial that they're going to go after his recording
 2   abilities, and I guess credibility as well.
 3              MR. BECK:  I agree, Your Honor.  And he did
 4   come forth with -- I mean, I think we look at the
 5   Chapman decision, and why they didn't allow the
 6   devices to be produced, which was that they didn't
 7   have evidence that the data had been manipulated at
 8   all.  I think Mr. Lowry made a good point that, to
 9   corroborate some of Mr. Baca's arguments about
10   Mr. Duran's contentions about the recordings, he
11   needs to have access to the device.
12              So I think the Court's middle ground is a
13   rational solution.  And as I said, I can't represent
14   that we would agree to that, but it sounds rational
15   to me.
16              THE COURT:  What is the -- I mean, if this
17   is revealing some strategy, you know, I'll entertain
18   that I don't want an answer, but what is the
19   Government's position going to be in explaining how
20   Duran is saying he's got five, six hours, and we've
21   got less than an hour?
22              MR. BECK:  I can't say that, because I
23   don't know, not because I don't want to answer it.  I
24   mean, that's just one of those things we have at
25   trial.  If we don't have five or six hours of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recording at that point in time to back that up, I

2    don't know that we'll be able to explain that, other

3    than relying on Mr. Duran's explanation.

4         THE COURT:  All right.  Well, my suggestion

5    on this is maybe you talk to the people you need to

6    talk to, see if something like that could be worked

7    out, and then, I think we probably exhausted the

8    issues on this recorder device.

9         MR. BECK:  I think so, too, Your Honor.  It

10   would be my expectation that we could have an answer

11   to Mr. Lowry by the end of the hearings this week,

12   and to the Court.  To the extent that Mr. Lowry gets

13   to see it, we can decide whether one disclosure is

14   sufficient or whether there will be multiple

15   defendants there who have shown a compelling need for

16   it.  But certainly, I think, Mr. Lowry has, and

17   probably a lot of the other defendants are in the

18   same position as he is.

19        THE COURT:  All right.  Anything else on

20   the motion, Mr. Beck?

21        MR. BECK:  Just -- yeah, for the record, I

22   didn't know this, but I've been informed of the

23   corresponding DVD numbers, so when we were referring

24   to 1D55, that's DVD 19; 1D56 is DVD 20, 1D60 is DVD

25   23, and 1D58 is DVD 17.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  All right.  Anything further?

2           MR. BECK:  Nothing further, Your Honor.

3           THE COURT:  Thank you, Mr. Beck.

4           Everybody comfortable with where I'm

5    leaving it for at least tonight?  Mr. Lowry?

6           MR. LOWRY:  Yes, Your Honor.  I did have --

7    Your Honor, I apologize for not having this printed

8    off earlier, but it goes to the question you just

9    asked.  And I approached the United States, and Mr.

10   Castellano doesn't have any objection.  I was going

11   to ask Mr. Beck.  But we were going to offer as an

12   exhibit the one page out of the master text file,

13   which is Duran's text to the case agent about the

14   five or six hours of recording.

15          I would just point out, at this time it was

16   very early on, about this text took place on October

17   23, 2015.  And while Mr. Beck posed the argument that

18   he may have been talking about other recordings,

19   because he had a cellphone, at the time this text was

20   sent, Mr. Duran hadn't revealed to anyone that he

21   possessed the cellphone, so he hadn't started to

22   actively record anyone, especially my client, using

23   that device.  So I mean, the way I'm reading this is

24   all attributed to that one device.  But I could be

25   wrong, Your Honor.  But I'd like to offer that as an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 3995

```
 1    exhibit.  And I don't think I have an objection from
 2    my opposing counsel.
 3              THE COURT:  What is that, that will be Mr.
 4    Baca's Exhibit A?
 5              MR. LOWRY:  It will be A.
 6              THE COURT:  Any objection to that, Mr.
 7    Beck?
 8              MR. BECK:  No, Your Honor.
 9              THE COURT:  Anyone else have an objection?
10              MS. JACKS:  Do you have a Bates number?
11              MR. LOWRY:  I'm looking at a PDF of the
12    master text file, and that's page 395 out of 838.
13    But I'm happy to circulate a copy to everyone.
14              THE COURT:  Give me one.  Anthony Baca's
15    Exhibit A will be admitted in evidence.
16              MR. LOWRY:  Thank you, Your Honor.
17              MR. BECK:  And I should note, because
18    seeing Mr. Lowry up again made me think of the end of
19    his argument -- I do not know at this point, but I
20    will get answers for everyone -- which of the
21    original recording devices still exist today.  Some
22    have been decommissioned.  These were older model
23    devices.
24              That being said, the FBI Office of
25    Technology Division, Special Agent Williamson
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3996

 1   possesses exemplars of the models.  So I think for

 2   the purposes of what Mr. Lowry and Mr. Baca want to

 3   see the device for, for purposes of looking at the

 4   physical components, the on/off switch and the

 5   recording light, those exemplars will be identical to

 6   the devices used in this case.

 7          THE COURT:  So some of them will be the

 8   actual ones, and some will be the exemplars?

 9          MR. BECK:  That's my expectation.  And I'll

10   let everyone know that.

11          THE COURT:  All right.  Thank you, Mr.

12   Beck.

13          There was some issue about exemplars, some

14   representation.  I've lost track who was wanting some

15   representation.  Was that you, Ms. Jacks?

16          MS. JACKS:  No.

17          THE COURT:  No, it wasn't you?

18          MR. BECK:  That was Mr. Lowry again.  And

19   we will stipulate to his request.

20          THE COURT:  Okay.  All right.  There is

21   nothing else on the recorder device.

22          Ms. Wild has been out of the pocket all day

23   dealing with that funeral.  What was the agreement

24   among the parties in your discussions with her as to

25   what we'd go to next?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3997

```
 1                MR. BECK:  I think the parties intended to
 2     go back to the finishing up of the James hearing.
 3                THE COURT:  The James hearing, okay.  Is
 4     everybody in agreement with that?
 5                MS. SIRIGNANO:  Your Honor, I don't believe
 6     that's correct.  But I need to check my emails first.
 7     I think it was Mr. Villa's and Ms. Bhalla's motions
 8     to suppress, because they've got their witnesses
 9     subpoenaed for tomorrow and Wednesday.
10                MS. BHALLA:  That's correct, Your Honor.
11     Our expert is here from D.C., and --
12                MR. BECK:  I meant this afternoon --
13     tomorrow -- yeah, my impression is that tomorrow
14     morning.  I know the Court likes to use all the time,
15     so we've got three minutes left.  I thought that's
16     what the Court was referring to.
17                THE COURT:  Well, how much more do you have
18     on the James hearing?  A fair amount?
19                MR. BECK:  I think we've still got a fair
20     amount, yeah.  Tomorrow, I believe, first thing we're
21     going to start with the motion to suppress.
22                THE COURT:  All right.  So everybody is in
23     agreement where we're going?
24                Well, let's go ahead -- you're right, I am
25     very tempted to try to get three minutes out.  But
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165999

1   let's go ahead and shut it down for the day.  And

2   I'll see y'all tomorrow morning.

3           All right.  I appreciate everybody's hard

4   work.  Everybody be safe in your travels.

5           (The Court stood in recess.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 3999

```
 1                   C-E-R-T-I-F-I-C-A-T-E

 2

 3   UNITED STATES OF AMERICA

 4   DISTRICT OF NEW MEXICO

 5

 6

 7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8   Official Court Reporter for the State of New Mexico,

 9   do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on December 18, 2017.

15

16

17

18        _____
                    Jennifer Bean, FAPR, RMR-RDR-CCR
19                  Certified Realtime Reporter
                    United States Court Reporter
20                  NM CCR #94
                    333 Lomas, Northwest
21                  Albuquerque, New Mexico 87102
                    Phone:   (505) 348-2283
22                  Fax:     (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4000

1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4        Plaintiff,

5    VS.                           CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7        Defendants.

8                        VOLUME 2

9        Transcript of Combined Motions to Suppress
     Proceedings before The Honorable James O. Browning,
10   United States District Judge, Las Cruces, Dona
     County, New Mexico, commencing on December 12, 2017.
11

12   For the Government:  Mr. Randy Castellano; Mr.
     Matthew Beck
13
     For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14   Harbour-Valdez; Mr. Patrick Burke; Mr. Robert Cooper;
     Mr. Jeff Lahann; Mr. Orlando Mondragon; Mr. John
15   Granberg; Mr. Billy Blackburn; Mr. Scott Davidson;
     Ms. Amy Jacks; Mr. Richard Jewkes; Ms. Amy Sirignano;
16   Mr. Christopher Adams; Mr. Marc Lowry; Ms. Theresa
     Duncan; Ms. Carey Bhalla; Mr. William Maynard; Mr.
17   Ryan Villa; Ms. Justine Fox-Young; Mr. Donovan
     Roberts; Ms. Lisa Torraco; Ms. Angela Arellanes; Mr.
18   Samuel Winder

19
     For the Defendants (Via telephone):  Mr. James
20   Castle; Ms. Margaret Stickland

21
     For the Witness Billy Cordova:  Mr. John Moon Samore
22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4002

```
 1              THE COURT:  Let's go on the record.  Are
 2    there any changes to counsel?  I see Ms. Fox-Young
 3    here.  Anybody have got any changes?
 4              MS. HARBOUR-VALDEZ:  Mr. Burke is here
 5    today.
 6              THE COURT:  Mr. Blackburn, good morning to
 7    you.  Ms. Torraco, good morning to you.
 8              Any other changes or additions?
 9              All right.  I understand today's task, at
10    least beginning, is to get through -- is it the two
11    combined motions, the two we're going to argue
12    together, Mr. Villa's and Ms. Bhalla's, is the one
13    we're going to argue this morning, the combined?
14              MR. VILLA:  Yes, your Honor.  And it may
15    spill into tomorrow.
16              THE COURT:  Ms. Bhalla, are you going to
17    take the lead on it?
18              MS. BHALLA:  Your Honor, certainly.  I
19    think that, if the Court wants to hear some arguments
20    before we get started, or do you want to just go
21    straight into the hearing?
22              THE COURT:  It's up to you, however you'd
23    like to present your motion.
24              MS. BHALLA:  Okay, Your Honor.
25              We are going to present evidence today, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4002

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4003

1    think both teams, that Billy Cordova was providing

2    drugs to both Carlos Herrera and Rudy Perez at the

3    time that he made the recordings in question.  We're

4    going to talk about the times of those recordings.

5    Some of the devices, and how the devices are used

6    will be relevant.  We're certainly not going to be

7    asking about any trade secrets, in terms of the

8    recordings, as we discussed yesterday.

9              So I think, if the Court can give us a

10   little bit of leeway, we're going to demonstrate the

11   use of drugs, and the fact that it was coercive.

12   Certainly, the Government knew about the access to

13   drugs.  Special Agent Acee testified about that -- I

14   don't know if it was last week or the week before --

15   that he knew they were bringing drugs in and out;

16   that that was a common practice; that he was aware of

17   that.  We're going to introduce records to show the

18   Government's knowledge on that issue.

19             And I believe that Mr. Villa has some

20   experts.  His client has some other issues that will

21   be involved.  But for Mr. Herrera's purposes, the

22   crux of what we're going to be proving today and

23   tomorrow is that drugs were used in order to obtain

24   these confessions, at least that's what the

25   Government alleges is that they're confessions.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

**BEAN**
**& ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4003

```
 1            We talked a little bit about that as well
 2    last week in terms of -- in terms of -- I'm trying to
 3    think of the way to phrase it, Your Honor.
 4    Basically, they were moving inmates around on
 5    purpose, putting them in different housing levels on
 6    purpose in an effort to extract information.
 7            The Government has alleged that we have
 8    confessions in this case.  And we argued a little bit
 9    about the context, and we talked about that with Mr.
10    Acee.  But our position is that any and all
11    statements that were made to Billy Cordova should be
12    suppressed based on the evidence that we're going to
13    present that drugs were being given to the defendants
14    in this case.
15            And that's what we're going to talk about,
16    Your Honor.
17            THE COURT:  All right.  Thank you, Ms.
18    Bhalla.
19            Mr. Villa, Ms. Fox-Young, do you want to
20    say anything as a preliminary matter?
21            MR. VILLA:  Thank you, Your Honor.
22            THE COURT:  Mr. Villa.
23            MR. VILLA:  For Mr. Perez' case it actually
24    starts about the day after the alleged murder of
25    Javier Molina.  He was placed, along with everybody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4004

```
 1    else in the pod, into Level 6, temporary
 2    administrative segregation, which Level 6, for all
 3    intents and purposes, is solitary confinement.
 4              For Mr. Perez, however, he remained there
 5    for the next 23 months until the statements that are
 6    at issue in this hearing.  He stayed at Southern
 7    until about June of 2015, and then he was transferred
 8    to PNM, which is the Level 6, Level 6, if you will,
 9    at that point.  So if you are in Southern, and you
10    get into a little bit of trouble, they'll put you in
11    Level 6 as a punishment for 30, 60, 90 days,
12    depending on what the infraction is.
13              If you are going to PNM North, where Mr.
14    Perez goes, that is a much higher standard in place.
15    And what the Court is going to hear is that,
16    essentially, there was no justification for Mr. Perez
17    to have gone there.  The United States in their
18    response claims it was due to that they were
19    handicapped cells at PNM.  But what you will hear,
20    Your Honor, is that there are many, many ADA
21    compliant handicapped cells throughout the New Mexico
22    Department of Corrections.  And placing somebody in
23    Level 6, with the highest restrictions that are
24    available, because they are handicapped or have a
25    disability, would violate the ADA.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4005

```
 1                And what you hear about Level 6 at PNM is
 2      there are no contact visits.  An inmate is allowed
 3      two noncontact visits.  Depending on which witness we
 4      hear from, four to eight phone calls a month.  You're
 5      not entitled to shower every day.  You get it every
 6      couple of days.  And you get to go out to recreation.
 7      But what you'll find out for Mr. Perez' case -- and
 8      you'll see video of the cell that Mr. Perez was in,
 9      the cell Mr. Cordova was adjacent to, Mr. Perez, and
10      the recreation yard.  And it's essentially a giant
11      cage with cement on the floor and not much else.
12                And Mr. Perez had to be transported from
13      the pod where his cell was to recreation, via a
14      wheelchair.  A wheelchair was kept in the pod, not in
15      his cell.  And he wasn't provided a walker.
16                You'll hear that towards the tail end of
17      his time in PNM he was finally being able to walk a
18      little bit on his own.  But this was beyond the time
19      that Mr. Cordova was involved.
20                And so, when they took Mr. Perez to
21      recreation, they wouldn't let him take his wheelchair
22      in to the recreation cage.  And all there is is
23      cement on the floor.  You'll get to see some of that.
24      So rather than crawl around on the floor, Mr. Perez
25      often did not go to recreation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4006

```
 1              So, at the time that he gave this

 2     statement, his state of mind, due to the long-term

 3     solitary confinement, was very compromised.

 4              You'll also hear about his medical

 5     conditions at the time.  We have our expert,

 6     Dr. Heather Brislen, who is going to testify and tell

 7     the Court about Mr. Perez' general medical state at

 8     the time.

 9              You'll also hear from one of the

10     individuals that treated Mr. Perez at the time.  He

11     was on a large number of medications, due to a number

12     of different health conditions.  He had a seizure

13     disorder.  He was on psychological medication,

14     diabetes, pain medication for his leg problems, which

15     is why he has difficulty walking.  And all those

16     things were in play at the time that he gave these

17     statements.

18              In addition, Your Honor, as Ms. Bhalla

19     said, you're going to hear that the same day that

20     Billy Cordova took the statements that are arguably

21     the most inculpatory, or the Government would

22     probably suggest are the most inculpatory, Mr.

23     Cordova provided Mr. Perez Suboxone:  Once in the

24     afternoon, before dinner, and then dinner, and then

25     some after dinner.  And it was at that time it caused
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4008

```
 1    Mr. Perez to be intoxicated.
 2            And you'll hear from Dr. French, who will
 3    tell you about Suboxone, or generically,
 4    buprenorphine -- I might be pronouncing that wrong --
 5    and the effects that it can cause in somebody,
 6    intoxication it will have.  You'll hear about how
 7    high other inmates have reported they've gotten from
 8    Suboxone.  And it was at that time that Mr. Perez
 9    made the statements that we're challenging.
10            And, Your Honor, I cite in the briefs to
11    the Tenth Circuit Gonzalez case, which I think is
12    just sort of reciting U.S. Supreme Court case law.
13    But some of the things the Court takes into account
14    in determining if a statement is involuntary or
15    coerced, in addition to threats, intoxication from
16    drugs, those sorts of things; the typical
17    governmental coercion that is often raised in these
18    cases are the individual's age, Mr. Perez' age, his
19    intelligence, his education, the length of detention,
20    any threats or coercion that are made on him, and
21    those sorts of things.  So it's the totality of the
22    circumstances approach that the Court -- we're asking
23    the Court to consider.
24            And so it's not just 23 months in solitary
25    confinement, without any justification at all from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4008

1    the New Mexico Department of Corrections, in

2    violation of their policies.  It's not just Mr.

3    Perez' medical and mental state.  It's not just the

4    Suboxone.  It's all of those things combined, Your

5    Honor.  And Arizona versus Fulminante has made it

6    very clear that even if it's not a police officer

7    doing these things, if it's a governmental informant,

8    paid informant, as Mr. Cordova was, they can coerce

9    someone.  So we're not in the Colorado versus

10   Connelly territory, where there isn't governmental

11   involvement, it's just somebody on their own

12   extracting a statement.  We're in the territory where

13   this is a paid governmental informant, in conjunction

14   with Agent Acee and the New Mexico Department of

15   Corrections.

16          And as the Court is well aware, this was a

17   joint investigation.  As you heard last week, there

18   were individuals from STIU and the Department of

19   Corrections conducting an investigation.  And they

20   all pulled the strings to get Mr. Perez to where he

21   was to make these statements.

22          THE COURT:  All right.  Thank you, Mr.

23   Villa.

24          Mr. Castellano, Mr. Beck, do you have any

25   opening remarks?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4009

1          MR. BECK:  I'll direct Your Honor to two

2   important cases I think the Court should look at.

3   First, is a Tenth Circuit case from 1996, Nickel

4   against Hannigan, 97 F.3d 403.  The second is the

5   Court's decision from 2005, in United States against

6   Tafoya, which may be found at 399 F. Supp 2d 1227.

7   And in those cases, to find that a statement was

8   involuntary, and therefore inadmissible, due to

9   police coercion or tactics, especially in the Tenth

10   Circuit, the Tenth Circuit lays out sort of the

11   process we have to look at.

12          And the first is whether the mental

13   condition surely led to an involuntary statement.

14   The second is whether law enforcement taking the

15   statement had knowledge of this mental deficiency or

16   condition that made this statement involuntary.  And

17   then, even if those two are met, the third is whether

18   the Government purposefully took advantage of this

19   known mental condition or incapacity to coerce the

20   statement.

21          And the testimony I expect the Court will

22   hear today, and likely into tomorrow, just won't meet

23   that standard.  If we look at Mr. Perez' contentions

24   about being improperly placed in administrative

25   segregation or housing like that, while that may give

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4010

 1    rise to a civil 1983-type claim, the Court will find

 2    that that's not a basis to suppress the statement.

 3          The basis is, again, this three-step

 4    process for whether the Government took advantage of

 5    a known mental defect.  I couldn't find a case in

 6    which administrative segregation or some kind of

 7    prison conditions led to suppression of a statement

 8    as involuntary.

 9          With regard to, I think, Mr. Herrera's and

10    Mr. Perez' arguments and contention that these

11    statements were coerced via Mr. Cordova providing

12    them Suboxone within the prison system, I expect that

13    over the next two days the Court will hear from Mr.

14    Cordova whether he provided them Suboxone, and I

15    expect the answer will be no.  Agent Acee, I expect,

16    will also testify as to what instructions he gave Mr.

17    Cordova as to how Mr. Cordova was placed next to

18    Herrera and Perez; that the Government did not have

19    any control over where Mr. Herrera and Mr. Perez

20    were, the conditions that they were kept --

21          THE COURT:  When you say the word

22    "Government," are you talking about the United

23    States?

24          MR. BECK:  The United States Government.

25    The FBI did not have any control over where Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4011

1    Herrera and Mr. Perez were housed in Corrections.

2    The FBI negotiated to place Mr. Cordova next to where

3    New Mexico government kept Mr. Herrera and Mr. Perez.

4              THE COURT:  So the State made the call

5    where Mr. Perez went, and then what the United States

6    did was come in and say:  Can we have the cell next

7    door?

8              MR. BECK:  Precisely.  That's the case for

9    both Mr. Perez and Mr. Herrera.  And that's where

10   these statements came from.

11             In the Court's case, in Tafoya, the Court

12   looked at the excited state of the person giving the

13   confession, and basically said, yes, the person was

14   excited, but there is no evidence, listening to the

15   recording, listening to the testimony of the

16   officers, that the officers somehow used that excited

17   state in order to coerce a confession.

18             THE COURT:  Will you remind me of the facts

19   in Tafoya?

20             MR. BECK:  Not very well -- so this was a

21   motion to suppress based on an involuntary detention,

22   a prolonged detention.  My understanding from

23   reviewing it briefly this morning is that the police

24   pulled over a car, suspected that there were drugs or

25   other contraband in the car, and detained the person,

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                       201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                      1-800-669-9492

                                       e-mail: info@litsupport.com

DNM 4012

1    did sort of:  You're free to go, do you mind if I ask

2    you a few more questions?  And then at that point

3    found it.  Once the contraband was found, the

4    defendant was apparently very excited and said that

5    because he was excited and had been arrested, he

6    involuntarily provided those statements.

7            I think what the Court looked at in the

8    involuntariness of the statements was that, yes, the

9    person was excited, but looking at the statements,

10   they were voluntary, intelligent statements.  He had

11   no problem answering law enforcement's questions.  He

12   did so intelligently.  And there wasn't evidence that

13   the police used this excitement in a nefarious way to

14   somehow coerce a confession.

15           So I think it's a very high burden to meet

16   that third prong that the Government knowingly used

17   some deficiency to coerce an involuntary statement.

18   I expect that there will not be facts at the end of

19   this hearing that will allow the Court to properly

20   conclude that burden is met in this case.

21           I think that's probably a pretty good

22   introduction, and with that --

23           THE COURT:  Are y'all going to present

24   evidence first?

25           MR. BECK:  We are, Your Honor.  It's our

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4013

```
 1    burden.
 2              THE COURT:  All right.  Mr. Beck, if the
 3    Government wishes to present its first witness or
 4    evidence.
 5              MR. BECK:  We do, Your Honor.  The
 6    Government calls Special Agent Bryan Acee to the
 7    stand.
 8              THE COURT:  Mr. Acee, if you'll come up.
 9    Before you're seated, Ms. Standridge will swear you
10    in.
11                      BRYAN ACEE,
12         after having been first duly sworn under oath,
13         was questioned and testified as follows:
14                   DIRECT EXAMINATION
15              THE CLERK:  Please be seated.  State your
16    name for the record.
17              THE WITNESS:  Good morning.  My name is
18    Bryan Acee, B-R-Y-A-N, A-C-E-E.
19              THE COURT:  Mr. Acee.  Mr. Beck.
20              MR. VILLA:  Your Honor, I apologize, I
21    don't think there is anyone in the courtroom.  Can we
22    invoke the rule with the exception of experts?
23              THE COURT:  Any objection to that, Mr.
24    Beck?
25              MR. BECK:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4014

```
 1              THE COURT:  All right.  So we'll invoke the
 2    rule.  Any witnesses in this suppression hearing will
 3    be required to remain outside of the courtroom until
 4    they are called to testify.  They cannot discuss
 5    their testimony with each other, but they may discuss
 6    their testimony with the attorney.
 7              Mr. Beck.
 8    BY MR. BECK:
 9         Q.   Special Agent Acee, what was your role in
10    this investigation into the SNM that led to the
11    prosecution that we're here for today?
12         A.   I'm the lead case agent for the FBI.
13         Q.   In your role as the lead case agent, did
14    you come in contact with a person named Billy
15    Cordova?
16         A.   I did.
17         Q.   How did that happen?
18         A.   In January of 2016, I was up at the
19    Metropolitan Detention Center, MDC, in Bernalillo
20    County.  I was there with other agents and STG folks
21    from MDC, and we were speaking with SNM members.  I
22    pulled out an SNM member who had agreed to cooperate
23    with us.  The manner in which that informant was
24    brought into the office kind of compromised the
25    informant, so the STG suggested we pull out everybody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4015

```
 1    from the SNM pod, to make it look like it's more
 2    routine questioning.
 3         Q.   Okay.  Let's go back here.  So STG, is that
 4    the Security Threat Group for New Mexico Corrections
 5    Department?
 6         A.   No, STG is the Security Threat Group for
 7    the Metropolitan Detention Center.
 8         Q.   Okay.  So this is different than STIU,
 9    which we've referred to throughout these cases?
10         A.   It's a different unit.  Their functions are
11    the same, just a different facility.
12         Q.   All right.  And so the informant you first
13    pulled out was not Billy Cordova?
14         A.   Correct.
15         Q.   So I think you were talking about STG
16    recommended you pull out all the SNM.
17         A.   Yes, to give that informant a little bit of
18    cover, I guess.
19         Q.   In January of 2016, were you already
20    undergoing the investigation that led to this
21    prosecution?
22         A.   Yes, we were well into it at that point.
23         Q.   Okay.  So what happened after STG
24    recommended you pull out all the SNM members?
25         A.   Well, I asked who else they had.  They
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4016

1    mentioned Billy Cordova.  I didn't know him.  The

2    officers that knew him said he wouldn't talk to us

3    and that he'd probably try to fight us.

4    Nevertheless, they brought him into the office.

5         Q.   Is this an office at the Metro County

6    Detention facility?

7         A.   It is; it's the STG office.

8         Q.   And what happened when Mr. Cordova came in

9    to the STG office?

10        A.   He had a big -- he was unhandcuffed.  He

11   came in, had a big smile on his face, kind of sized

12   everybody up, and then sat down.  And I initially

13   didn't enter the conversation.  I just kind of sat

14   off to the side and watched the STG officers talk to

15   him; told him who we were.  And Mr. Cordova just

16   opened up about being fatigued or tired of the SNM.

17        Q.   What else did he say?

18        A.   Ultimately, he said he was willing to

19   cooperate and talk, because he was unhappy with where

20   his life had gone as a result of being part of SNM.

21        Q.   When you say "he was willing to cooperate,"

22   did you tell him you were investigating the SNM?

23        A.   I did.

24        Q.   And is that what you understood he meant by

25   "willing to cooperate"?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4017

```
 1          A.   Yes.

 2          Q.   Why did you understand that?

 3          A.   Well, we talked about it.  In fact, I

 4     had -- at that time I had assigned an agent to start

 5     compiling overt acts on Mr. Cordova.  I intended

 6     to -- he was a target.  I never envisioned sitting

 7     down and talking to him at that point.

 8          Q.   After he said he was willing to cooperate,

 9     what happened?

10          A.   Well, Mr. Beck, again, it caught me off

11     guard.  I didn't expect to talk to him.  So we were a

12     little bit behind the curve at that point.  He said

13     he wanted to cooperate.  I needed to understand the

14     reasons that he was at MDC, his pending charges, and

15     where he was headed.  I learned that he'd already

16     been convicted and sentenced, and was due to go to

17     state prison any day.  And so we formulated a plan in

18     the following days or weeks to wire him up when he

19     arrived at New Mexico Correctional Facility.

20          Q.   Let me go back there.  Who is "we," when

21     you say "we formulated a plan"?

22          A.   The FBI and the Department of Corrections.

23          Q.   And you said this plan entailed wiring up.

24     What does that mean?

25          A.   Equipping him with a recording device.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4018

1    Q.   And then what happened once you formulated

2    this plan?

3    A.   We had to just kind of sit back and wait

4    for the judicial and corrections systems to kind of

5    wind things up and have him be designated to a

6    facility.

7    Q.   Who designated him to a facility?

8    A.   As part of his sentencing, he was sentenced

9    to the New Mexico Corrections Department.  And then

10    the Corrections Department did what they do with any

11    inmate.  I think they initially go to Central for an

12    intake process, and then he ultimately was sent up to

13    PNM.

14    Q.   Did you play a role in where he was sent

15    when he went to PNM?

16    A.   I did not.

17    Q.   What happened once this process played out

18    and he was designated to go the PNM?

19    A.   I opened him up as a confidential human

20    source, to formalize the process.  I explained --

21    once he ended up at PNM, I got with the STIU folks to

22    see who Mr. Cordova would be around, and then begin

23    formulating a plan to introduce a recording device

24    into the facility, which isn't easy to do.

25    Q.   Where did you learn that Mr. Cordova would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4020

```
 1    be placed at PNM?

 2         A.   I think he was to go to the South or the

 3    North, either the Level 5 or the 6.

 4         Q.   Okay.  Did you at some point talk with STIU

 5    officers about where to place Mr. Cordova at PNM?

 6         A.   Yes.

 7         Q.   And how did that come about?

 8         A.   Well, Mr. Cordova had explained that he was

 9    present during the Molina -- there is a little bit of

10    background to this.  He explained that he was present

11    during the Molina homicide.

12         Q.   When did he tell you that?

13         A.   When I first met him in January.

14         Q.   Okay.

15         A.   So he had some knowledge.  If I remember

16    correctly, he had lived in yellow pod at the time of

17    the homicide.  And he had some information based on

18    his experiences that he thought Carlos Herrera and

19    Rudy Perez were involved in that homicide.  And I'll

20    be honest, that was relatively new information to me.

21         Q.   When you heard that -- did you hear that on

22    January 16?

23         A.   Yes.

24         Q.   And then what happened?

25         A.   He felt that if he were near those guys, he
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4020

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4021

1    could get them to talk about the homicide.  And I

2    thought that was a good idea.  I just wanted to make

3    sure that if there was any conversation it was

4    recorded so it wasn't just him coming back and

5    telling me:  Yeah, they admitted it.  So I discussed

6    that with my counterparts at the STIU.

7           And I don't know their full process of

8    figuring out how they can get folks next to each

9    other, but what was represented to me was that Carlos

10   Herrera was already there, and that Mr. Cordova could

11   be placed next to him.  And that Mr. Perez had some

12   kind of pending disciplinary issue, where he was --

13   don't misquote me, but he was due to be sent to the

14   Level 6, something of that nature.

15       Q.   And what happened when STIU provided you

16   that information about where Mr. Herrera was placed

17   and where Mr. Perez was going to be placed?

18       A.   Well, I represented that, if that was

19   possible, then I wanted Cordova to be next to him and

20   to be wired up.

21       Q.   And was Mr. Cordova placed next to Carlos

22   Herrera and Rudy Perez?

23       A.   He was.

24       Q.   And was he, as you said, "wired up"?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4021

```
 1        Q.   Did you direct STIU or anyone at
 2   Corrections to place either Mr. Perez or Mr. Herrera
 3   in the cell at PNM at which they were placed at that
 4   time?
 5        A.   No.
 6        Q.   Did you ask for Mr. Perez or Mr. Herrera to
 7   be placed in any form of restrictive housing?
 8        A.   No.
 9        Q.   So I want to talk to you a little bit about
10   the process of Mr. Cordova being wired up.  Do you
11   provide any instructions or admonitions to a
12   cooperating source when they're going to be wired up?
13        A.   Yes.
14        Q.   Did you do that with Mr. Cordova in this
15   case?
16        A.   I did.
17        Q.   What did you tell him?
18        A.   Well, you asked two questions there.  So
19   the admonishments that we do are standard
20   admonishments with any informant when we open them.
21   We need to do that within 90 days or sooner if we're
22   going to start tasking them.  So in the case of Mr.
23   Cordova, I met him in January, and he was wired up
24   and in the facility by February.  So we moved fairly
25   quickly on that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4023

```
 1          Q.   All right.  And what are those

 2    admonishments generally?

 3          A.   Sure.   There is four mandatory

 4    admonishments.  And they are that the person know

 5    that their participation or work for the FBI is

 6    completely voluntary; that the FBI will strive to

 7    protect their identity, but there are circumstances

 8    where we're unable to do that, such as legal

 9    proceedings; that they have to be truthful with us.

10    I have some notes that I'm going to refer to.

11          Q.   That's fine.

12          A.   Oh, and that they must follow these

13    admonishments and not take any independent action.

14    Those are the four required admonishments.  There are

15    a dozen or so of what I'll call special

16    circumstances.  For example, if a person is

17    represented by legal counsel, there are extra

18    admonishments, or if they work for the media, or they

19    have access to medical information.  So with each

20    these informants, when we do the admonishments, we'll

21    note which ones we gave them, and those would be

22    reflected in their file.

23          Q.   Did you note which admonishments you gave

24    to Mr. Cordova?

25          A.   Yes, they're noted in his file.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4023

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4024

1    Q.   And did you note which admonishments you

2    gave to Mr. Cordova?

3    A.   My notes don't, but his informant file

4    does.

5    Q.   Beyond those four general admonishments,

6    did you give any admonishments to Mr. Cordova in

7    addition to those four?

8    A.   Yes.  The other -- so the official

9    admonishments were noted in his file, and will still

10   be contained in his file.  The other what I'll call

11   directions or guidance I gave him --

12   Q.   All right.  Let me stop you there.  I think

13   you earlier said that I asked two questions,

14   admonishments and instructions.  I just want to make

15   sure we're all following you.  Are we now moving to

16   the instructions that you gave him?

17   A.   We are.

18   Q.   And what were those instructions that you

19   gave him?

20   A.   They primarily had to do with the devices,

21   him making recordings.

22   Q.   And what were those instructions about the

23   devices and the recordings?

24   A.   I pointed out that the recording devices

25   were simple.  We had a conversation about the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4024

```
 1   devices.  Because I had introduced more complex
 2   devices and they were failing.
 3        Q.   Had you introduced those more complex
 4   devices with Mr. Cordova in the past?
 5        A.   No.  With other informants in the prison.
 6        Q.   All right.  What instructions did you give
 7   to Mr. Cordova about the device that you sent in with
 8   him?
 9        A.   That we dumbed it down.  This is a simple
10   device.  It's small; consequently, the batteries are
11   small.  If you can get these guys talking about the
12   murders, either the murder of Molina or any other
13   murders, that's what I'm interested in.  I'm not
14   interested in drug talk, exploits with girlfriends,
15   or life stories.  What I'm looking for is specific
16   talk about homicides.  I told him to be cognizant of
17   the battery life because there is no way to tell from
18   the device how much battery life is left.  And to be
19   careful with the device, because the correctional
20   staff in the prison -- no one knew that these guys
21   had it.  Only STIU and Deputy Secretary Myers were
22   aware of it.  And then I asked him some questions
23   about whether or not he thought, based on his
24   experience at the Level 6 and Level 5, if he could
25   conceal it, if he thought it would be found in a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4025

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 26

 1   shakedown or other scenarios.

 2       Q.   And what did he say in response to those

 3   questions?

 4       A.   He thought he could conceal it.  He had

 5   some concerns because some of the devices -- not all

 6   of them -- have lights.  And from my conversation

 7   with him and other informants, I knew that the

 8   majority of their conversations took place under

 9   their bunks, because that's where the vent is located

10   between the cells, and that's a relatively -- can be

11   a dark area, and this light might illuminate.  I knew

12   from some failed experience with other informants

13   that that light was a problem.  But, ultimately, Mr.

14   Cordova was positive and thought that he could pull

15   it off.

16       Q.   Did you give him any instructions about

17   saying a preamble before he starts a recording, or

18   any additional instructions telling him about the

19   simplicity of the device?

20       A.   Yes, I told him when he could, try to put

21   the date on there.  And if he was talking about a

22   group of people, or more than one, to make it clear

23   who he was speaking with, to say their name in the

24   conversation.  Or when he walked away, if he could

25   get to the other end of the cell and whisper into it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4026

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 27

```
 1          Q.   Have you listened to all the recordings

 2     that Mr. Cordova took inside the prison?

 3          A.   I have.

 4          Q.   Did he give that preamble of the date or

 5     names of everyone he was talking to in every

 6     recording?

 7          A.   No.

 8          Q.   I want to talk to you now about the

 9     recordings made in this case.  You said that you had

10     heard all the recordings Mr. Cordova took, right?

11          A.   I have.

12          Q.   And those include the recordings of Mr.

13     Herrera?

14          A.   Yes.

15          Q.   Do those also include the recordings of Mr.

16     Perez?

17          A.   Yes.

18          Q.   I want to talk to you about the recordings

19     involving Mr. Perez.  And I'm going to give you seven

20     discs and transcripts.  And if you'd review them and

21     tell me whether these are the recordings that Mr.

22     Cordova made of Mr. Perez.  Are those Mr. Cordova's

23     recordings of Mr. Perez?

24          A.   Yes.

25               MR. BECK:  Your Honor, at this time, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4027

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4028

1   United States is going to move into evidence these

2   seven recordings, and we're going to continue the

3   numbering from the last motions to suppress hearing.

4           THE COURT:  Is there a reason to do that?

5   Should we keep these separate?

6           MR. BECK:  I think we were going to

7   incorporate some of the exhibits from the last motion

8   to suppress hearing into this motion to suppress

9   hearing.

10          THE COURT:  Okay.

11          MR. BECK:  It seems to me it makes sense

12  for the Government to do that.  If the defendants --

13  since Mr. Herrera, I don't think, has entered any

14  exhibits, you might start over and Mr. Perez might

15  continue on.

16          THE COURT:  All right.  So what are your

17  numbers here?

18          MR. BECK:  I might ask for some help.

19          THE COURT:  I've got 30 as being your last

20  one.  Does that sound about right?

21          MR. BECK:  Yes, Your Honor.

22          THE COURT:  So do you want to go with 31?

23          MR. BECK:  Yes.

24          MR. VILLA:  Your Honor, do we want to do 31

25  for the disc and the 31A for the corresponding

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 29 4029

```
 1    transcript?

 2              THE COURT:  Do you want to do that?

 3              MR. BECK:  I think that makes sense, Your

 4    Honor.

 5              THE COURT:  All right.  So you've got 31

 6    through 38, and then the transcripts will be A for

 7    each one; is that correct?

 8              MR. BECK:  I must have miscounted.  We have

 9    31 through 37.  We'll have 31A through 37A.

10              THE COURT:  All right.  Any objections?

11    All right.

12              MR. VILLA:  Not for purposes of this

13    hearing.  I just want to clarify, so we have six

14    discs and six transcripts?

15              MR. BECK:  Yes, we do.  And I have an

16    additional copy of each one of the discs for the

17    defense.

18              MR. VILLA:  No objection.

19              THE COURT:  All right.  Any other

20    objections or comments?  All right.  Government's

21    Exhibits 31, 32, 33, 34, 35, 36, and 37 will be

22    admitted into evidence.  And Government's Exhibit's

23    31A through 37A will be admitted into evidence.

24              MS. DUNCAN:  Your Honor, for us in the back

25    of the courtroom, we have trouble seeing the Elmo.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4029

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4030

1   So would you mind telling us the Bates numbers of the

2   transcripts, and we can pop them up on our computer.

3              MR. BECK:   Transcript 31A will begin at

4   Bates No. 2534 and continue through 2542.   Transcript

5   32A will start at 2543 and continue through 2548.

6   Transcript 33A will begin at 2549 and continue

7   through 2568.   Transcript 34A will start at 2553,

8   continuing through 2568.   Transcript 35A will start

9   at 2569 and continue through 2571.   Transcript 36A

10  will begin at 2572 and continue through 2584.

11  Transcript 37A begins at 2585 and continues through

12  2586.

13             MR. JEWKES:   Your Honor, may it please the

14  Court.   Could you have Mr. Beck announce the page

15  range one more time for 31A, please?

16             MR. BECK:   Transcript 31A begins at page

17  2534 and continues to 2542.

18             MS. JACKS:   Your Honor, it looks like 33A

19  and 34A are crossing over in the same page ranges.

20  Can we read those again?

21             MR. BECK:   33 and 34.

22             MS. JACKS:   Yes.

23             MR. BECK:   33A is 2549 through 2552.   34A

24  is 2553 through 2568.

25             MS. JACKS:   Thank you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4030

```
 1              MR. VILLA:  Your Honor, I'm going to ask
 2    the Court -- the rule has been invoked.  Mr.
 3    Cordova's attorney, I believe, is present in the
 4    courtroom.  I don't know that he has to be excused.
 5    But maybe you could notify him the rule has been
 6    invoked and he can't speak to his client about any of
 7    the testimony that's taken before he testifies.
 8              THE COURT:  Is Mr. Samore, are you Mr.
 9    Cordova's attorney?
10              MR. SAMORE:  Yes, sir.
11              THE COURT:  All right.  So the rule has
12    been invoked.
13              MR. SAMORE:  It has?
14              THE COURT:  It has.  Well, I think nobody
15    is saying you can't be here.  But just be aware that
16    you can't be a conduit back to your client as to
17    what's going on here.  And I know that now that you
18    know the rule is invoked, you wouldn't.
19              MR. SAMORE:  We are very conscientious of
20    that, and I don't intend to see him until after he
21    testifies.
22              THE COURT:  All right.  Thank you, Mr.
23    Samore.  Good morning to you.
24    BY MR. BECK:
25         Q.   Special Agent Acee, in preparation for your
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 4032

```
 1   testimony today, did you review two New Mexico State
 2   Police recordings of Mr. Perez?
 3        A.   I did.
 4        Q.   And I'm showing you what we'll mark as
 5   Government's Exhibit 38 and Government's Exhibit 39.
 6   Are those the two recordings that you reviewed of Mr.
 7   Perez' interviews with the New Mexico State Police in
 8   this case?
 9        A.   They are.
10        Q.   And what's your understanding of when those
11   interviews took place?
12        A.   Shortly after the homicide of Javier
13   Molina.
14        Q.   Special Agent Acee, what was the date of
15   the first interview with Mr. Perez?
16        A.   March 8, 2014.
17        Q.   And what was the date of the second
18   interview with Mr. Perez?
19        A.   March 10, 2014.
20             MR. BECK:  Your Honor, at this time, the
21   United States moves into evidence Government's
22   Exhibit 38 and 39, which are the first and second
23   interviews respectively.
24             THE COURT:  Any objection?
25             MR. VILLA:  So 38 is March 8 and 39 is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4032

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4033

```
 1   March 10?

 2              MR. BECK:  Yes.

 3              MR. VILLA:  No objection for this hearing.

 4              THE COURT:  Anybody else have any comments

 5   or objections?  Ms. Duncan?

 6              MS. DUNCAN:  Your Honor, we have no

 7   objection.  We would again ask for the Bates range.

 8              THE COURT:  All right.  So not hearing any

 9   other objections, Government's Exhibits 38 and 39

10   will be admitted into evidence.

11              Mr. Beck, do you mind providing those Bates

12   ranges?

13              MR. BECK:  I don't and I will after the

14   break.  It doesn't say on these DVDs what are the

15   Bates numbers for the DVDs.  But I will provide that

16   on the record after the break.

17              THE COURT:  All right.  Does that seem

18   satisfactory, Ms. Duncan?

19              MS. DUNCAN:  It does, Your Honor.

20              THE COURT:  Mr. Beck.

21        Q.   You've listened -- have you listened to

22   these recordings that Mr. Cordova took of Mr. Perez?

23        A.   Yes.

24        Q.   And have you listened to the New Mexico

25   State interviews of Mr. Perez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4033

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34034

1      A.   I have.

2      Q.   Does it sound like Mr. Perez is under the

3  influence of drugs during the interviews that Mr.

4  Cordova took of Mr. Perez?

5           MR. VILLA:   Objection; lack of foundation,

6  speculation.

7           THE COURT:   Well, I'm going to have to

8  figure out whether this evidence is admissible.   So

9  I'll start letting people tell me what they think on

10  this stuff, because I'm going to need help deciding

11  whether it's involuntary.   So I'm going to allow it.

12  Because the Government has got to function here and a

13  responsibility not to get information that's

14  involuntary, so that's everybody's responsibility.

15  Overruled.

16      A.   It did not sound to me like he was.

17      Q.   Why is that?

18      A.   Well, I've listened to the recordings

19  several times.   I understand that it's been alleged

20  that Mr. Perez was under the influence of Suboxone

21  provided by Mr. Cordova.   In light of that, when I

22  listened to it, and I compare that to my experiences

23  earlier in my career of arresting people for being

24  under the influence, such as in cases of DUI, or my

25  experiences as a law enforcement officer in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4034

 1    California, where it was unlawful to be under the

 2    influence of a controlled substance, I have conducted

 3    those investigations.  And my review of Mr. Perez'

 4    statements is, he didn't sound like he was under the

 5    influence of a central nervous system depressant.

 6         Q.   You talked about your previous DUI

 7    experience.  Have you had experience in detection of

 8    persons being under the influence of narcotics or

 9    alcohol?

10         A.   I have.

11         Q.   What is that experience?

12         A.   In addition to just the basic California

13    Highway Patrol Academy, and experience arresting

14    persons under the influence, I also completed their

15    advanced drug training 40-hour course, and their drug

16    recognition expert, 80-hour course, to be able to

17    make determinations of people being under the

18    influence of controlled substances.  That was quite

19    some time ago, late '90s, early 2000s.  I haven't

20    kept those certifications up.  But in my time as a

21    police officer/detective, I arrested a lot of people,

22    and many of those arrests were for being under the

23    influence of alcohol or narcotics.

24         Q.   The 40-hour and the 80-hour training you

25    talked about for detecting persons under the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4035

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 36

```
 1    influence of alcohol or narcotics, are those in
 2    addition to the general training you had received as
 3    a California State Highway Patrol Officer?
 4         A.   Yes, sir.
 5         Q.   What's the purpose of that additional
 6    training for you?
 7         A.   It was to be able to arrest people for
 8    being under the influence of substances other than
 9    alcohol.  And then to be able to arrest people for
10    violations of 11-550 of the Health and Safety Code,
11    the California Health and Safety Code, that is; that
12    is being under the influence of a controlled
13    substance.  To walk around in public in California
14    and be under the influence was a crime.  And so the
15    California Highway Patrol saw fit to have officers
16    that were able to make those evaluations.  So that's
17    the training that I underwent.
18         Q.   And did you perfect those arrests under the
19    California State Health Code for people being under
20    the influence after that training?
21         A.   I did when asked to do, so yes.
22         Q.   And although it was some time ago, did you
23    apply that training and experience when you listened
24    to these recordings that Mr. Cordova took of
25    Mr. Perez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4036

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4037

1      A.   I did, as well as, even as an FBI agent,

2   I'm still frequently talking with and dealing with

3   people that are under the influence of either heroin

4   or methamphetamine or other substances.

5      Q.   Did you specifically listen to these

6   recordings of Mr. Perez, Mr. Cordova took, to

7   ascertain whether, in your training and experience,

8   Mr. Perez was under the influence of narcotics or

9   other drugs?

10      A.   I did.  In the last couple of weeks, I went

11   back and listened to them again, to see if I could

12   discern anything.

13      Q.   Before you sent Mr. Cordova into the prison

14   to record conversation with Mr. Perez, did you know

15   about any psychological conditions that Mr. Perez

16   had?

17      A.   No.

18      Q.   Did you instruct Mr. Cordova to take

19   advantage of any psychological conditions that Mr.

20   Perez might have?

21      A.   No.

22      Q.   Did Mr. Cordova tell you he intended to

23   take advantage of any alleged psychological problems

24   Mr. Perez had?

25      A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4037

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4038

 1      Q.   Did you provide Suboxone to Mr. Cordova to

 2   take into the prisons when he was recording these

 3   conversations with Mr. Perez and Mr. Herrera?

 4      A.   No.

 5      Q.   Did you know that Mr. Cordova took in

 6   Suboxone to the prisons during this time?

 7      A.   No.  And I don't think that he did.

 8      Q.   Why don't you think that?

 9      A.   I don't have any information to believe

10   that he did.  I've talked to him about that, and he

11   denies that.  I didn't overhear any conversations in

12   which that took place.  And each time I had to send

13   in a recording device or switch it out, that was

14   accomplished through STIU shaking down his house or

15   his cell.  And they didn't find any contraband

16   either.

17      Q.   What does shaking down his house or his

18   cell mean?

19      A.   Searching it.

20      Q.   To your knowledge, did Mr. Cordova have

21   Suboxone or drugs in the prison during the times he

22   was recording Mr. Perez or Mr. Herrera?

23      A.   No.

24      Q.   Did you instruct Mr. Cordova to threaten

25   Mr. Perez or Mr. Herrera to take these statements

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 4038

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 39-4039

1    from them?

2         A.   No.

3         Q.   Did you instruct him to promise Mr. Herrera

4    or Mr. Perez anything in return for these statements?

5         A.   No.

6         Q.   To your knowledge, did Mr. Cordova threaten

7    or promise anything to Mr. Perez or Mr. Herrera to

8    receive these statements?

9         A.   No.

10        Q.   In preparation for your testimony did you

11   also listen to the recordings Mr. Cordova took of Mr.

12   Herrera?

13        A.   I did.

14        Q.   Did you also, listening to these

15   recordings, specifically listen for whether, in your

16   training and experience, Mr. Herrera was under the

17   influence of drugs or narcotics?

18        A.   I did.

19        Q.   And based on that training and experience,

20   and specifically listening to those conversations,

21   did you conclude that Mr. Herrera sounded like he was

22   under the influence of drugs or narcotics?

23        A.   He did not sound like he was under the

24   influence.

25        Q.   Why is that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   Well, in listening to him speak, I didn't

2   detect that he was.  I also recall some comments

3   where Mr. Cordova and one of the other inmates was

4   talking about Mr. Herrera doing bad, which I

5   understand to mean needing drugs, not high on drugs.

6       Q.   Why do you understand that to mean needing

7   drugs?

8       A.   That's just a term that people who use

9   drugs or are part of that subculture, if you will,

10  that's a term they use to describe -- they'll say:

11  I'm doing bad.  And that means they're in need of a

12  fix or they're in need of drugs, as opposed to are

13  doing bad because now I'm high and I have drugs.

14      Q.   When you listened to that conversation, did

15  you get the impression from your training,

16  experience, and knowledge that Mr. Herrera was on

17  drugs while making those statements?

18      A.   No.

19      Q.   Did you also review a conversation in which

20  Mr. Herrera -- or excuse me -- excuse me, it's not

21  Mr. Herrera.  Did you also review a conversation in

22  which Mr. Cordova discussed drugs and drug prices

23  with another inmate?

24      A.   Yes.

25      Q.   What was that conversation?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492
                                               e-mail: info@litsupport.com



Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4041

```
 1        A.    That conversation is contained on the
 2   Herrera recordings, and it's Mr. Cordova and another
 3   SNM member named Dale Chavez, whose alias is
 4   "Dreamer."  Mr. Chavez and Mr. Cordova are debating
 5   or having a conversation about the price of Suboxone
 6   on the streets.  Mr. Cordova had been on the streets
 7   more recently than Mr. Chavez, and they had a
 8   disagreement with the prices.  They also were talking
 9   about the prices of Suboxone inside the prison versus
10   on the streets.
11        Q.    Was Mr. Cordova selling Suboxone to
12   Mr. Chavez during that conversation?
13        A.    No, it was more the opposite.  He was
14   talking about buying some from him.  In the
15   context -- I looked at that transcript a few times.
16   What it sounds like to me is he's trying to set up a
17   deal where he could have somebody purchase it on the
18   streets for him, and what those prices would be, and
19   then what they would cost inside.  And I think that
20   that is in line with what our objectives were.
21   Because, at that time, I was contemplating
22   introducing another cellphone into the institution,
23   and in this case to Mr. Cordova.  So part of his role
24   would have been to introduce undercover FBI agents on
25   the streets to purchase drugs to make it look like we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4041

```
 1    were smuggling them into the prison.

 2        Q.   Did you ever smuggle drugs into the prison

 3    through Mr. Cordova?

 4        A.   No.

 5        Q.   So we talked about Mr. Cordova supplying

 6    drugs.

 7             I want to talk to you about Mr. Herrera's

 8    psychological condition.  Did you ever know about any

 9    psychological condition that Mr. Herrera had during

10    these recordings?

11        A.   No, I don't know about any of his medical

12    conditions.

13        Q.   Did the FBI know about any of his

14    psychological conditions, if he has any?

15        A.   No.

16        Q.   Did you tell, instruct, or did anyone from

17    the FBI instruct Mr. Cordova about Mr. Herrera's

18    psychological conditions, if he had any?

19        A.   No.

20        Q.   Did you instruct Mr. Cordova to take

21    advantage of any of Mr. Herrera's psychological

22    conditions, if he had any?

23        A.   No.

24             MR. BECK:  May I have a moment, Your Honor?

25             THE COURT:  You may.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4043

```
 1        Q.   Special Agent Acee, when Mr. Cordova
 2   arrived at the PNM North facility, do you know who he
 3   was placed next to first?
 4        A.   I believe he was next to Mr. Herrera first.
 5        Q.   And at the same time was he next to Mr.
 6   Perez?
 7        A.   No.  Because those recordings took place in
 8   different facilities.
 9        Q.   So after he was placed next to Mr. Herrera,
10   was he moved to be placed next to Mr. Perez?
11        A.   Yes.
12        Q.   Did you coordinate that movement of Mr.
13   Cordova?
14        A.   No.
15             MR. BECK:  Pass the witness, Your Honor.
16             THE COURT:  Thank you, Mr. Beck.
17             Ms. Bhalla, do you want to start the
18   cross-examination?
19             Mr. Villa?
20             MR. VILLA:  I think I'm going to go first
21   on this one, if that's okay.
22             THE COURT:  All right.  Mr. Villa.
23             MR. VILLA:  Thank you, Your Honor.
24             THE COURT:  Mr. Villa.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4043

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 44044

```
 1                      EXAMINATION
 2   BY MR. VILLA:
 3        Q.   Good morning, Agent Acee.
 4        A.   Good morning, sir.
 5        Q.   So if I understand it correctly, you were
 6   at MDC, which is the Bernalillo County Metropolitan
 7   Detention Center, in January of 2016?
 8        A.   Yes.
 9        Q.   And that is the first time you spoke to
10   Billy Cordova?
11        A.   It is.
12        Q.   You said you were there with other agents
13   and STG folks?
14        A.   Yes.
15        Q.   The other agents being FBI agents?
16        A.   Yes.
17        Q.   What about STIU?
18        A.   No.
19        Q.   Anybody from New Mexico Corrections
20   Department?
21        A.   Mark Myers may have been there.
22        Q.   Okay.  May have, or he was?
23        A.   Well, he's usually with us, but he
24   sometimes has to go up to Santa Fe for stuff.  I'd
25   have to look at the reports.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4044

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4045

1      Q.    If you saw the report of that initial

2   interview, would that refresh your recollection?

3      A.    Yes.

4      Q.    So the Court knows, I imagine the Court

5   knows, but who is Mark Myers?

6      A.    At that time, Mark Myers was a Deputy

7   Secretary.  I can summarize it -- and he was our

8   go-to person for the Department of Corrections,

9   because Mr. Marcantel was a victim.

10      Q.    I understand.

11          MR. VILLA:  May I approach?

12          THE COURT:  You may.

13      Q.    Agent Acee, I'm handing you what -- I call

14   it a 302; I'm not sure if it is.  But can you tell me

15   if that's the report for your initial interview with

16   Billy Cordova?

17      A.    This isn't the initial one.

18      Q.    What is it?

19      A.    This is similar to a 302.  This is a 1023.

20   I'm sure you have lots of these.  This is when a

21   person has been opened as an informant, and this is

22   how we take in information from the informant.  So

23   what this is is -- looks like this is a debrief of

24   Mr. Cordova, although the CHS number is blocked out,

25   but this is actually taking place back at our office,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4045

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 4046

```
 1    the FBI office.

 2         Q.    Okay.  So let's back up just a little bit.

 3    What's the date of that interview?

 4         A.    The 7th of January, 2016.

 5         Q.    And can you tell me if this was before or

 6    after the meeting at MDC?

 7         A.    Looks like it was three days after, because

 8    on the first sentence I say, "On January 4th, this

 9    confidential human source indicated to me that he

10    wished to leave the SNM."  So on the 7th, we

11    interviewed him at our office.

12         Q.    So does the report there indicate who was

13    with you on January 4?

14         A.    It does not.

15         Q.    Does the report indicate who was with you

16    on January 7?

17         A.    Yes, sir.

18         Q.    Was Mr. Myers present?

19         A.    He was.

20         Q.    Were there also other individuals present

21    from the New Mexico Department of Corrections?

22         A.    There were three STIU officers present.

23         Q.    And who were they?

24         A.    Captain Sergio Sapien, Sergeant Ronald

25    Martin, and Officer Chris Cupit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE


MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4046

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4047

```
 1          Q.   Mr. Martin, that being the same individual
 2     who testified here a couple weeks ago during the
 3     Daubert hearings?
 4          A.   Yes, sir.
 5          Q.   And what was the purpose of the interview
 6     at your office of Mr. Cordova?
 7          A.   This was the first in-depth debrief,
 8     because my time with him at MDC was limited.
 9          Q.   Did you prepare a report of the January 4th
10     interview?
11          A.   I'm not sure.  I may not have.
12          Q.   So the January 7 was the more in-depth
13     debrief, the one you have there in front of you?
14          A.   I would call that the first debrief, yes.
15          Q.   And individuals from the New Mexico
16     Department of Corrections were there throughout the
17     debrief?
18          A.   There were four of them there.
19          Q.   And they stayed there the whole time?
20          A.   I think so, yes.
21          Q.   Were they also part of the plan that you
22     formulated to have Mr. Cordova take recording devices
23     and talk to other suspects?
24          A.   Absolutely.  It can't happen without them.
25          Q.   Got it.  Now, getting back to the January
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                            1-800-669-9492

BEAN & ASSOCIATES, Inc.                        e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4047

```
 1    4th meeting at MDC, Mr. Myers may have been there;
 2    there was STG -- and those are STG folks from MDC;
 3    correct?
 4         A.   Yes.
 5         Q.   Are you aware that those STG folks
 6    communicate with STIU about shared intelligence and
 7    things like that?
 8         A.   I think they do.
 9         Q.   Was anybody else besides other FBI agents,
10    maybe Mr. Myers, and STG present?
11         A.   I think that Sergeant Nathan Lerner would
12    have been present, because he was the supervisor over
13    that unit, and the debriefing took place in his
14    office.  So I think he was there.
15         Q.   Sergeant Lerner of MDC?
16         A.   He was actually a Bernalillo County
17    sergeant at that time.  He's retired now.  He had
18    worked the SNM for many years and had knowledge of
19    them.  I'm pretty sure he was there as well.
20         Q.   Understood.  Did Mr. Cordova have an
21    attorney present during that January 4th visit?
22         A.   He did not.
23         Q.   Did he have an attorney present at the
24    January 7th visit?
25         A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4048

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4049

1      Q.   Do you know if he had an attorney at the

2  time that he was interviewed?

3      A.   Well, he had an attorney in his state case.

4  But he had already been sentenced on the state case.

5  It wasn't until sometime later that we got him a

6  federal attorney through giving him a target letter.

7      Q.   And you did that after these two debriefs?

8      A.   Yes, sir.

9      Q.   Do you know where Mr. Cordova was prior to

10  the time he was at MDC?

11      A.   My impression is he'd been there almost a

12  year; that he'd been at MDC for about a year.

13      Q.   Did you investigate that aspect -- I mean,

14  after you talked to him and thought about this, did

15  you look into where he had been prior to MDC?

16      A.   No.  The only investigation I did was to

17  confirm that he'd been sentenced.  Because I had some

18  concerns talking to him.  And I made it clear to him

19  that I didn't have any questions about his pending

20  state case.  That's the only thing I looked into.

21      Q.   What was that pending state case?

22      A.   He was charged with first degree murder.

23  He was sentenced on a manslaughter.

24      Q.   Did you do any further investigation as to

25  other prior convictions of Mr. Cordova?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4049

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50

1      A.   Yes.  I did that when I opened him as an

2   informant.  That's one of the categories we have to

3   populate, if you will, in the opening documents.

4      Q.   Okay.  So I'll ask you about that in just a

5   minute.  Was it then, during the January 7th

6   formal -- more formal debrief that you guys talked

7   about introducing him into the prison with recording

8   devices?

9      A.   I believe so.

10      Q.   And it's your testimony, I think, that you

11   didn't control where Mr. Cordova actually went?

12      A.   No.  I mean, I think I have lots of good

13   ideas, but the Corrections Department doesn't always

14   listen.  So it's entirely up to them.

15      Q.   So when did you first learn where Mr.

16   Cordova was going to go?

17      A.   I think once he arrived.

18      Q.   When you say "once he arrived," what do you

19   mean?

20      A.   Once he -- because, again, he was still at

21   MDC, and he hadn't been transferred yet.  I didn't

22   have any involvement in that transfer, speeding it up

23   or slowing it down, or otherwise.

24          I was notified by the STIU once -- I think

25   I got some updates as to Mr. Cordova's progress in

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4050

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 51

```
 1   being transferred from MDC to Corrections.  And then,
 2   at some point, they let me know what facility he was
 3   at.  And I'll be honest with you, early on in the
 4   case, I was confused, like everyone else, about the
 5   North and the South and Southern.  So it didn't much
 6   matter to me where he was -- just I needed to know
 7   when to introduce the recording equipment.
 8        Q.   When did he tell you that he thought he
 9   could talk to Rudy Perez and Carlos Herrera about the
10   Javier Molina murder?
11        A.   Early on.  And it may have been at this
12   January 7th debrief.  Because, again, I didn't know
13   who Mr. Perez was.  I didn't know anything about him.
14   I knew a little bit about Mr. Herrera, and I can go
15   into that if you'd like.  But I didn't know, nor did
16   I have a lot of information about them being involved
17   in that homicide.  I didn't know Mr. Perez at that
18   time was alleged to have been --
19        Q.   Well, let's back up then.  This case was
20   originally indicted in November 2015?
21        A.   Yes.
22        Q.   And you were the case agent at that time?
23        A.   I was.
24        Q.   Counts 6 and 7 of that original indictment
25   was the conspiracy to and the murder of Javier
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4051

```
 1    Molina?

 2         A.   Yes.

 3         Q.   And it included some of the other

 4    co-defendants, but not Mr. Perez or Carlos Herrera?

 5         A.   Correct.

 6         Q.   You had investigated the Molina homicide?

 7         A.   Yes.

 8         Q.   Prior to that first indictment?

 9         A.   Yes.

10         Q.   But you didn't know that Mr. Perez was a

11    potential suspect?

12         A.   I'd seen his name mentioned in much of what

13    I refer -- I had to reference at that time was the

14    state investigation.  I didn't have any cooperators

15    yet.  We were looking at, at one time, as many as 30

16    homicides to charge in the SNM case.  And so I didn't

17    have the knowledge that I have now at that time.  No,

18    I largely relied on what had already been done, what

19    the State had done.  And, as you know, Mr. Perez was

20    not a key person in that investigation, if at all.

21         Q.   We might have to agree to disagree on that.

22         A.   Okay.

23         Q.   As of January 7, at least the idea was

24    discussed that Mr. Cordova could talk to Rudy Perez

25    and Carlos Herrera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4053

```
 1        A.   Yes.

 2        Q.   About the Javier Molina homicide?

 3        A.   That's correct.

 4        Q.   And you thought at the time that Mr.

 5   Cordova was on his way to prison?

 6        A.   He definitely was, yes.

 7        Q.   But you didn't know where he was going to

 8   be placed?

 9        A.   I did not, no.

10        Q.   You didn't know where Carlos Herrera or

11   Rudy Perez were placed?

12        A.   No, let me back up.  Being that they were

13   all SNM, I knew that they wouldn't be at a Level 1,

14   2, or 3 facility.  But I had no specific knowledge

15   about where they would be or what level or what pod,

16   or any of that.

17        Q.   Some of the individuals with you on the

18   7th, they might have had an idea, right?

19        A.   Sure.  They're knowledgeable about that

20   stuff, definitely.

21        Q.   The NMDC and STIU folks?

22        A.   I don't think the NMDC guys would know as

23   much as the STIU guys would know the state prison

24   system.

25        Q.   That's what I meant.  On January 7th at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4053

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 54054

1    your office, STG wasn't there from MDC anymore,

2    right?

3        A.   No, they were there.  The MDC guys got

4    there.  And that makes sense, because they're

5    probably the ones that had to transport him because

6    he had to be turned over to the state.

7        Q.   So he was transported from MDC to your

8    office?

9        A.   Correct.

10       MR. VILLA:  And, Your Honor, I'd like to

11   mark a document for identification.  Do you want us

12   to go ahead and keep going continuously from last

13   time?

14       THE COURT:  Are you going to be relying on

15   anything from the prior hearing?  I guess, just as a

16   general rule, I'd like keep these hearings somewhat

17   contained, rather than having just a running number.

18   Now, the Government said they were going to use some

19   of the exhibits from the prior hearing.  Are you?

20       MR. VILLA:  I mean, I don't think so off

21   the top of my head.

22       THE COURT:  Why don't we do this, then:  On

23   the defendants' side, why don't we just start over.

24   Why don't you start with A on this.  If you need to

25   move something over, later down the road, maybe we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4054

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 55

```
 1    can remark it here.

 2              MR. VILLA:  Okay.  So I'm going to mark

 3    this for identification as RP-A.

 4              THE COURT:  All right.

 5              MR. VILLA:  If I could indulge the clerk to

 6    borrow a stapler, it might work better than this

 7    paperclip.  Thank you.

 8         Q.   Agent Acee, I'm showing you what's marked

 9    for identification as RP-A.  Can you tell the Court

10    what that is?

11         A.   This is a judgment and sentence for Billy

12    Cordova.

13         Q.   And is this the judgment and sentence

14    related to the case that he was in MDC for, as you

15    testified here about just a little while ago?

16         A.   Is it?  Where are the charges?

17         Q.   Oh, well, if you turn to the second page,

18    you can look and see what the charges are.

19         A.   It looks like it is.

20         Q.   Voluntary manslaughter?

21         A.   Yes, sir.

22         Q.   And does this document appear to be an

23    accurate copy of the judgment and sentence?

24         A.   It does.

25              MR. VILLA:  Your Honor, I'd move to admit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4055

```
 1    Defendant's RP-A.
 2              THE COURT:  Any objection, Mr. Beck?
 3              MR. BECK:  No objection for this hearing,
 4    Your Honor.
 5              THE COURT:  Rudy Perez' Exhibit A will be
 6    admitted into evidence.  I assume nobody else had any
 7    problem with it.  Not hearing any, it will be
 8    admitted.
 9    BY MR. VILLA:
10         Q.   Agent Acee, I'm going to show you this on
11    the screen.  This is RP-A that we just talked about;
12    correct?
13         A.   Yes, sir.
14         Q.   And at the top it has the clerk's stamp
15    indicating when this was filed, does it not?
16         A.   It does.
17         Q.   And does it not indicate that the judgment
18    and sentence was filed May 12, 2016?
19         A.   Correct.
20         Q.   Which would have been approximately four
21    months after your meeting with Mr. Cordova?
22         A.   Yes.
23         Q.   And three months after he was sent to PNM
24    and took statements from Mr. Perez?
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4056

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4057

```
 1          Q.   Because those statements occurred
 2    approximately February 2016?
 3          A.   Yes.
 4          Q.   So you figured out fairly quickly, in
 5    speaking to Mr. Cordova, perhaps in the first or
 6    second meeting, that he was at Southern, down here in
 7    Las Cruces, when the Javier Molina murder occurred;
 8    correct?
 9          A.   Yes.
10          Q.   He was in the yellow pod?
11          A.   Correct.
12          Q.   And he told you that he had -- or he knew
13    about the case or at least had an understanding of
14    what happened?
15          A.   Yes.
16          Q.   And at the time that you talked to him, I
17    think you testified on direct that you were compiling
18    or about to compile overt acts against Mr. Cordova?
19          A.   Yes.
20          Q.   To indict him?
21          A.   Correct.
22          Q.   Was there an understanding of which case
23    you were going to indict him?  Was it going to be a
24    stand-alone or one of these cases that was already
25    pending?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4057

```
 1         A.   I intended to include him in the RICO

 2    indictment.

 3         Q.   The 1613 case?

 4         A.   Yes.

 5         Q.   Which I believe that came down in the

 6    spring of 2016.

 7         A.   April, yes.

 8         Q.   Did you tell Mr. Cordova that you had that

 9    intent?

10         A.   At some point I did, yes.

11         Q.   When was that point?

12         A.   It may have been at the meeting on the 7th.

13         Q.   So he had an understanding that he was a

14    target of yours in the SNM cases?

15         A.   Absolutely.

16         Q.   Did you tell him that if he cooperated, he

17    wasn't going to be indicted?

18         A.   Not exactly like that.  What I told him was

19    that this was coming, these indictments; the

20    dismantlement of the SNM.  And I even introduced him

21    to the agent that was compiling his overt acts.  And

22    I said, I guess we can stop doing that now.

23         Q.   Who was that?

24         A.   Thomas Neale.

25         Q.   So Mr. Neale was present during this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4058

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 59

```
 1   meeting?
 2        A.   He was.
 3        Q.   And you said:  This is the guy that's going
 4   to compile the overt acts against you for this
 5   racketeering indictment?
 6        A.   Well, that was -- that I had tasked with
 7   that, and he was compiling -- he had a stack of
 8   letters, and he was listening to phone calls.  And
 9   because Mr. Cordova was enthusiastically -- I'll
10   use -- willing to help, I was -- I think saying it
11   more as a joke, but just saying:  I guess we'll be
12   done with that then; we can work on somebody else.
13        Q.   Did you tell Mr. Cordova what the overt
14   acts were that you were considering?
15        A.   No.
16        Q.   Did you tell him the potential charges --
17   did you talked about the RICO conspiracy that he can
18   be charged with?
19        A.   I won't say we talked about it.  I mean, I
20   definitely said:  Let me introduce you to somebody,
21   or this is, you know, Tom; he's putting together the
22   overt acts on what I intended to charge you with by
23   way of grand jury indictment.
24        Q.   Did you tell him the potential penalties
25   for those charges?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4059

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4060

1      A.    No.

2      Q.    The voluntary manslaughter that Mr. Cordova

3  was sentenced for, was that suspected to be an

4  SNM-related killing?

5      A.    He and I probably disagreed whether or not

6  it was.  But I think that it could have been included

7  in overt acts.

8      Q.    So it was clear following that meeting

9  that, in exchange for his cooperation, you were going

10 to stop having Agent Neale compile overt acts against

11 Mr. Cordova for prosecution?

12     A.    It was clear to Agent Neale and I.  I'm not

13 sure what Mr. Cordova's understanding of that was.

14     Q.    But Mr. Cordova was present when you and

15 Agent Neale reached that clarity?

16     A.    Yes.

17     Q.    The other individuals from NMCD and STIU

18 were there as well during that period of time.

19     A.    Yes.

20     Q.    After that, you testified you formalized

21 the process of opening him as a CI; correct?

22     A.    I opened him as a CI after the meeting on

23 the 4th.

24     Q.    After the meeting on the 4th?

25     A.    Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4060

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 61

1       Q.   What do you have to do to open Mr. Cordova

2    as a CI?

3       A.   It doesn't take a whole lot.  I mean, I can

4    go through the process if you like.  We have to do

5    some checks, internal checks, to make sure they're

6    not a target of another investigation.  We run their

7    criminal history.  We make sure -- in doing our

8    internal checks, we're checking to make sure that

9    they haven't been an FBI informant in the past, or

10   they're not currently one.  Because I don't know who

11   another agent's informants are, and I don't have the

12   ability to check.  So I have to go through a central

13   point of contact to check that.  So I did all my

14   checks.  And then I went through our system for all

15   informant things is Delta -- you might have seen that

16   on some of the paperwork.  Like this form here is a

17   Delta FD 1023 document.  So I opened him as an

18   informant in Delta, assigned him a code name, fill

19   out all the forms; supervisor approves it, and now

20   he's open.

21      Q.   Did you speak to Mr. Cordova around this

22   point in time, I guess in one of these two meetings,

23   about the consideration he might receive for becoming

24   an informant?

25      A.   No.  The only consideration he may have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4061

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62

```
 1    been aware of -- I guess that's a better question for

 2    him -- but the only thing he may have been aware of

 3    was that he was a target and now he's not.

 4          Q.   So I'm not asking you to tell me what he

 5    thought.  But did you tell him he could be paid

 6    money?

 7          A.   No, I don't think I did.

 8          Q.   At any point in time, did you talk to him

 9    about being paid money?

10          A.   I think, down the road at some point in

11    time we had a conversation about that.  When he got

12    out of prison.  He indicated he'd like this kind of

13    work.  And I said, Well, if you want to make -- it's

14    not much of a career, but if you want to do this when

15    you get out, I can look at relocating you to another

16    city, where you can work for another agent.  A lot of

17    these guys thought they wanted to do that kind of

18    thing.  So I think that's the only time I talked

19    about that.

20          Q.   And at what point in time was that?

21          A.   This is quite some time later.  At that

22    time he was living in the cooperator pod up at PNM

23    with the other cooperators.  So his operational

24    duties, if you will, were already -- had concluded.

25          Q.   When did his operational duties end?
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4062

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4063

1       A.    In my mind, they ended with the Phase 2

2   takedown in April of 2016.  Because he was burnt.

3       Q.    You mean when Mr. Perez and Mr. Herrera

4   were indicted?

5       A.    Yes, sir.

6       Q.    And I guess it began in January of 2016?

7       A.    Yes.  He was opened in January, but

8   operationally, he wasn't working until February, when

9   he did the recordings.

10      Q.    Getting back to the opening process.  If a

11  CI turns out to be the target of another

12  investigation, are they disqualified from becoming

13  your CI?

14      A.    Not necessarily.  I mean, that could be an

15  opportunity for the case agent that's targeting him.

16  Let me back up actually.  It could.  It just really

17  depends on the circumstances.

18      Q.    What about if they're an informant being

19  used by another agent, you discover that in your

20  checks, does that disqualify them?

21      A.    No.  Because in that case, another FBI

22  agent -- I mean, they're already opened.  So, you

23  know, shame on me for not -- that's one of the first

24  questions I'll usually ask:  Have you ever done this

25  before?  Have you ever worked for anybody?  Try to



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                              1-800-669-9492
                    PROFESSIONAL COURT            e-mail: info@litsupport.com
                    REPORTING SERVICE

DNM 4063

```
 1   get that out of the way right away, so I know what
 2   their experience is being an informant.
 3        Q.   Over the period of time that Mr. Cordova
 4   was operational you testified about, essentially, the
 5   late winter and spring 2016, he was paid for the work
 6   that he did; correct?
 7        A.   No, I disagree with that.  I think he was
 8   given some -- monetary funds were put on his
 9   commissary account.  But in my mind that's different
10   than paying him.  But I'll defer to you.
11        Q.   Well, I guess on that I'd probably defer to
12   the Judge.  But let me just make sure we clarify.
13   There is documentation from the U.S. Attorney's
14   Office that has been disclosed to us that Mr. Cordova
15   received $600.
16        A.   Yes, sir.  To be clear, those are payments.
17   I mean, what Eric Duran got, in my mind, was a
18   payment.  What these guys got was 50 bucks a month in
19   commissary to buy extra soup and make phone calls.
20        Q.   Okay.  So Eric Duran got something on the
21   order of $45,000?
22        A.   Something like that.
23        Q.   That's a good year's salary for a nice
24   paying job?
25        A.   Sure.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1      Q.    Okay.   Mr. Cordova received $600.   And what

2    I'm trying to get at is how he got that.   So is it

3    your testimony that that 600 was the sum total of

4    money that was put on his commissary?

5      A.    Yes, sir.   That's us putting what averages

6    to maybe $50 a month in commissary.   It's money that

7    I check out, the FBI gives to me; I pull out of the

8    bank; I then deliver it to the Department of

9    Corrections, and they put it on his commissary

10   account.

11     Q.    Well, if he's -- I'm no math whiz, but if

12   he's working for you January through April, that's

13   approximately four months.   It averages to a little

14   more than $50 a month, right?

15     A.    Let's be clear, January to April is

16   operational.   But I didn't close it.   I mean, he's

17   still an informant.   Just because he's no longer

18   operational, I'm not going to cut off the guy's

19   commissary.   That might cause some problems between

20   us.

21     Q.    So you kept the gravy train going for a

22   period of time?

23     A.    Is it a gravy train?   I guess.

24     Q.    $50 a month is what you think was provided

25   to Mr. Cordova for some period of time?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4065

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 66

```
1        A.    That's an average.  We never negotiated a

2   deal.  That's just what I either did or instructed

3   the agents that worked with me to do.

4        Q.    When did that begin?

5        A.    I'm not sure.  But what I can tell you is

6   to any monies that were put on any of these guys',

7   these cooperators' accounts, there are receipts that

8   are signed and there is paperwork on it.  So I would

9   defer to that paperwork.

10       Q.    Can you tell me if it began before Mr.

11  Cordova began recording statements with Mr. Perez?

12       A.    I don't think it began before.  It probably

13  started in February, around the same time.

14       Q.    Around the same time?

15       A.    Yes, sir.

16       Q.    And did it just -- for Mr. Cordova, if you

17  know, did it just appear on his account as a

18  Christmas present, or did you or one of your agents

19  inform him it was coming?

20       A.    I'm sure we had a conversation about it,

21  and he had to sign a receipt for it.  So there would

22  have been some conversation.  As to how it appeared,

23  we would cause it to show up on their account as if a

24  family member posted that money, not the FBI.

25       Q.    So it would look like it came from a family
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 67

 1   member, but Mr. Cordova would know, because you told

 2   him, it was coming from you?

 3        A.   That's fair to say.  And, again, he'd have

 4   to sign an FBI receipt acknowledging that he received

 5   that money.

 6        Q.   Understood.  When you open up Mr. Cordova

 7   specifically as an informant, is there any sort of

 8   agreements that he signs?

 9        A.   No.

10        Q.   At any point in time, did you guys broker a

11   deal:  If you do this, I'm not going to charge you in

12   this RICO indictment?

13        A.   No.  I mean, I've described what our

14   informal conversation was.  But there was nothing

15   formal like that, there was nothing like that in

16   writing, no.

17        Q.   To this day, there isn't?

18        A.   No.  I mean.  He got a Kastigar letter at

19   this point.  I know that the U.S. Attorney's Office

20   and his attorney had some conversations.  But between

21   me and Mr. Cordova there was no formalized contract

22   or agreement like that.

23        Q.   Now, getting back to where Mr. Cordova was

24   going to be sent to, I think you testified that,

25   initially, you thought he was going to go to PNM

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4067

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 68 of 4068

```
 1    South or North?
 2         A.   Yes.
 3         Q.   Why did you think that?
 4         A.   Because the Department of Corrections,
 5    following the Molina homicide, moved all the SNM up
 6    to PNM.
 7         Q.   Either North or South?
 8         A.   Yes.  I believe the majority of their pods
 9    were in the South.  And the only guys that were in
10    the North were there on disciplinary problems, is my
11    understanding.
12         Q.   You testified -- and maybe we've gone over
13    this a bit -- you testified that when Mr. Cordova
14    told you he thought he could talk to Rudy Perez and
15    Carlos Herrera about the Javier Molina homicide, that
16    was sort of new information to you?
17         A.   Yes.
18         Q.   And I guess it was in January of 2016 that
19    you sort of connected the two dots:  Billy Cordova,
20    who you were investigating, Javier Molina homicide,
21    which you had investigated, and potentially Rudy
22    Perez and Carlos Herrera?
23         A.   Yes, because when Billy told me he'd been
24    in yellow pod, I'd probably seen that information
25    before, but that kind of jumped out at me.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4068

1      Q.   Did Mr. Cordova tell you that he had spoken

2    to Mr. Perez prior to the date of your meeting with

3    Mr. Cordova in January?

4      A.   Well, he represented that they were friends

5    and carnals, and -- yes.

6      Q.   When he says they're carnals, what does

7    that mean?

8      A.   They're both SNM members in good standing.

9      Q.   What about Carlos Herrera?  I think I

10   brushed over that.  You said you had some information

11   about Mr. Herrera prior to Mr. Cordova mentioning

12   him?

13     A.   Yes.  And that revolved around Mr.

14   Cordova's -- I'll call it business relationship --

15   with Mr. Herrera's mom and some of his brothers.

16     Q.   So Mr. Cordova had a business relationship

17   with Mr. Herrera's mom and brothers?

18     A.   Yes.

19     Q.   That business relationship being drugs?

20     A.   Correct.

21     Q.   Illegal drugs?

22     A.   The sales of illegal drugs.

23     Q.   Including drugs, bringing drugs inside the

24   prison; correct?

25     A.   I don't know how accomplished or



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4069

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4070

1    experienced Mr. Cordova was at that.  I know that he

2    was, by all accounts, a pretty good drug dealer on

3    the streets.  I think that he obtained heroin from

4    some of the members of the Herrera family.  His

5    ability to traffic drugs in the prison I'm not as

6    familiar with.  And he doesn't have a reputation as

7    being very accomplished at that, as opposed to on the

8    streets, he was a little better known for that.

9         Q.   So he's got a rep on the streets, not so

10   much in the prison.  But if I understand it, you are

11   not completely aware of his trafficking abilities or

12   lack thereof within the prison?

13        A.   Fair to say, yes.

14        Q.   Or ability to get drugs into the prison?

15        A.   Correct.

16             THE COURT:  Mr. Villa, would this be a good

17   time for us to take our morning break?

18             MR. VILLA:  Yes, Your Honor.

19             THE COURT:  All right.  We'll be in recess

20   for about 15 minutes.

21             (The Court stood in recess.)

22             THE COURT:  Let's begin to take our seats.

23   It looks like everybody has an attorney.

24             All right.  We'll go back on the record.

25   All right.  Mr. Acee, I'll remind you you're still

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4070

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4071

1    under oath.  Mr. Villa, if you wish to continue your

2    cross-examination of Mr. Acee, you may do so at this

3    time.

4              MR. VILLA:  Thank you, Your Honor.

5              THE COURT:  Mr. Villa.

6    BY MR. VILLA:

7        Q.   Agent Acee, I think we left off talking

8    about Mr. Cordova's reputation for his drug

9    trafficking exploits inside and outside prison.  Does

10   that sound about right?

11       A.   Yes, sir.

12       Q.   You did find out when you interviewed him

13   January 7th that he knew how to smuggle stuff into

14   the prison; correct?

15       A.   I assume he -- I assume he does.

16       Q.   Well, I'm not asking if you assume it.  He

17   told you he could smuggle things into the prison,

18   didn't he?

19       A.   I don't know if he did.

20       Q.   So let me show you that same -- 1023 is

21   what you call it?

22       A.   Yes, sir.

23       Q.   This is Bates 2910.  The second paragraph

24   here, where it says, "Beginning in 2005, CHS

25   regularly purchased crack cocaine from Chris Garcia,

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4071

```
 1    and smuggled it, along with phones and money, via an

 2    unknown correctional officer to fellow SNM members."

 3    Right?

 4         A.   Yes, sir.

 5         Q.   And he told you that during that meeting?

 6         A.   Yes.

 7         Q.   You knew he had been in prison before,

 8    right?

 9         A.   Yes.

10         Q.   That's how he became an SNM member?

11         A.   Yes.

12         Q.   He told you during this meeting what his

13    role, if you will, is in SNM?

14         A.   Yes.

15         Q.   He said he was an enforcer?

16         A.   Correct.

17         Q.   What's an enforcer?

18         A.   He described it as somebody that put in a

19    lot of work, or was a soldier and did the missions

20    that the other SNM members tasked him with.

21         Q.   And when you hear the term "putting in a

22    lot of work," based on your investigation, what does

23    that mean to you?

24         A.   It can mean a few things.  It means that

25    he's assaulting people when it needs to happen; he's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4072

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 73 of 341

1    representing the S in correctional facilities, even

2    if outnumbered.  He's bringing in dope, if that's his

3    thing.  His thing might just be knocking people out

4    or stabbing people.

5         Q.   When he says he's a soldier, he does

6    missions, what does that mean to you?

7         A.   He takes care of business.  He assaults,

8    stabs, shoots rivals, informants, things along those

9    lines.

10        Q.   And you understood that to be the case when

11   you tasked Agent Neale to start compiling overt acts

12   against Mr. Cordova, didn't you?

13        A.   Yes.

14        Q.   Including -- some of those overt acts in

15   1613 were alleged murders, right?

16        A.   On Mr. Cordova, at least one murder.  I

17   felt that his most recent -- that manslaughter, I

18   thought we could make a case for that being an overt

19   act.

20        Q.   What about the alleged murder of Sammy

21   Chavez?

22        A.   That one is a little trickier.

23        Q.   You had information, at least from some

24   sources, that Mr. Cordova shot Sammy Chavez in the

25   back, along with Sergio Rodriguez; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4073

```
 1         A.   I do recall seeing that information.  To
 2    answer your question whether I would have used that
 3    as an overt act or not, I would have had to look at
 4    what evidence we had.  We certainly were reviewing
 5    it.
 6         Q.   It was on your radar?
 7         A.   Yes.
 8         Q.   And Sergio Rodriguez has, in fact, been
 9    indicted in 1613.  And one of the overt acts against
10    him is the murder of Sammy Chavez?
11         A.   I believe you're right.  He definitely has
12    been indicted, and I think that is one of the overt
13    acts.
14         Q.   And Mr. Cordova, because you stopped
15    compiling overt acts, stopped investigating him as a
16    target, and turned him in an informant, has not been
17    charged with those crimes?
18         A.   He has not.
19         Q.   Has he been charged with any crime in
20    connection with your investigation of the SNM that
21    you know about?
22         A.   No.
23         Q.   You said he stopped becoming operational in
24    April of 2016, because he'd been burned by the
25    superseding indictment, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4074

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4075

```
1        A.   Yes.  I mean, that was a decision I made
2   that I didn't want him to be operational any longer.
3        Q.   You didn't use him anymore after that
4   period of time?
5        A.   Not for active or proactive operational
6   stuff.  I mean, he may have continued to help us with
7   historical context, but not operational.
8        Q.   Providing information about the SNM or
9   individuals in the SNM?
10       A.   Yes.
11       Q.   Is that still ongoing?
12       A.   People providing information about the SNM?
13       Q.   Mr. Cordova.
14       A.   No, I closed him.
15       Q.   When did you close him?
16       A.   I closed him in January of 2017, I believe.
17       Q.   Did you continue to pay him through January
18   2017, or is he still being paid?
19       A.   He is not still being paid.  His payments
20   would have ceased when we closed him.
21       Q.   Do you know if that was when the last
22   payment was made, in January of 2017?
23       A.   That would have been the last, or it may
24   have been in December.  I'd have to look through his
25   file.  But what I can represent to you is that no
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   payments were made after he was closed.

2        Q.   Close in time to January, December?

3        A.   He may have received a payment then, yes.

4        Q.   And were all his payments via the same

5   method, through his commissary account, under the

6   guise that it came from family?  Was he paid in any

7   other way?

8        A.   Yes.  Sometimes cooperators, particularly

9   when they're incarcerated, they have a concern for

10  their family, if they've got kids.  I think Mr.

11  Cordova asked us to give his money to his wife once

12  or twice so that she could buy some school clothes.

13  He has a couple young daughters.  And we'll do that.

14  It's his money, wherever he wants it to go is fine

15  with us.  And so I can remember meeting his wife, I

16  think, once.  And I may have sent agents to meet her

17  one other time.

18       Q.   That being Crystal Salas?

19       A.   I don't recall her name.

20       Q.   Do you recall the first name?

21       A.   I think it was Crystal.

22       Q.   Is that the same Crystal Salas against whom

23  he's -- well, maybe that's not the right question.

24  You are aware that he was convicted in 2010 of

25  aggravated assault against a household member?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4076

```
 1        A.   I'm aware of that.
 2        Q.   And that was the against his wife, the same
 3   one that you all paid?
 4        A.   Yes.
 5        Q.   He was convicted in that because he broke
 6   her jaw?
 7        A.   I don't remember what the injuries were.
 8   But that incident was also -- we were going to
 9   include as overt acts, because we thought it was gang
10   related.
11        Q.   Because you had information that Gerald
12   Archuleta, or "Styx," had told Mr. Cordova to do that
13   because he believed she had been fraternizing with
14   another SNM member.
15        A.   Correct.  I'm not sure what exactly
16   Archuleta's representations were, but that wouldn't
17   surprise me.  And I do know that he talked to
18   Archuleta.  And you're accurate to say that it was
19   over her relationship with another SNM member.
20        Q.   Be that as it may, they were still married
21   at the time of Mr. Cordova's cooperation, and you or
22   another agent paid her some of the money that was due
23   to him?
24        A.   Correct.
25        Q.   At his instruction?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4077

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 78

```
 1          A.   Yes.
 2          Q.   Did you speak to him at all about other
 3     things related to being an informant, such as witness
 4     protection, relocation, that kind of thing?
 5          A.   I think we had that conversation.  I
 6     usually do with cooperators, in discussing with the
 7     options are.  I know in his case, he was interested
 8     in tattoo removal.  And in my experience, that's a
 9     lot easier to do in the feds.  And I wanted to charge
10     Mr. Cordova.  I wanted to charge him.  However, once
11     he got an attorney, the trajectory of that changed,
12     so -- it changed.
13          Q.   So he never got tattoo removal on the FBI's
14     dime?
15          A.   Correct.
16          Q.   Or is there some understanding that you're
17     aware of that he's going to be placed in, say,
18     witness protection?
19          A.   Not at this point.  That may -- and I have
20     to -- I am not ultimately the one responsible for
21     that.  My colleagues at the U.S. Attorney's Office
22     have a big part of that, and other parts of the FBI.
23          Q.   So what I want to focus on is the
24     communications that you had with Mr. Cordova about
25     that.  You did discuss those things with him
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4078

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4079

1    generally?

2        A.   I did.  And as I recall, he wasn't very

3    interested in that.

4        Q.   Now, you testified about this, I think, on

5    direct, but -- maybe it was on cross -- that he got

6    an attorney after a target letter was issued; true?

7        A.   Correct.

8        Q.   That was a target letter issued by the

9    United States Attorney's Office?

10       A.   Yes.

11       Q.   For what charge?

12       A.   I think Racketeer Influenced and Corrupt

13   Organizations Act conspiracy.  I think it was RICO

14   conspiracy.  It may have been a drug conspiracy.  I'm

15   not sure.

16       Q.   When was that target letter issued?

17       A.   Early 2016.  Well, I take that back.  It

18   was issued when I was pushing to charge him

19   federally, so it would have been -- to give you a

20   date range, sometime between January, and I would say

21   May of 2016.  And I have copies of that in his files.

22   So I could get you an exact date.  I just don't have

23   it today.

24       Q.   So you can't say whether it was before the

25   recordings of Mr. Perez?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4079

1       A.   I actually took some notes on Mr. Cordova.

2  I may have noted it in there.  If I could take a look

3  at those?

4       Q.   You may.

5       A.   Okay.  March of 2016 is when the target

6  letter was issued.

7       Q.   And are those the same notes you referred

8  to during your direct examination about the

9  admonishments Mr. Cordova was given?

10      A.   No, that was a different note.

11      Q.   So --

12      A.   Would you like me to produce that?

13           MR. VILLA:  Well, I'm going to ask the

14  Court, Your Honor, if we can review the notes that he

15  just reviewed, as well as the notes that he reviewed

16  during his direct?

17           MR. BECK:  No objection to that.

18           THE COURT:  You want to do it now?

19           MR. VILLA:  I might have some of my

20  colleagues help me out, if that's okay with the

21  Court.

22      A.   So this is Mr. Cordova.  I highlighted it

23  so I could find it quickly.  And then this is CHS

24  policy notes.

25      Q.   So you were pushing to prosecute Mr.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4081

1    Cordova federally, either stand-alone, or perhaps

2    bring him into one of these indictments?

3         A.   Yes, sir, I wanted to charge him with RICO

4    conspiracy.

5         Q.   And that was after he had agreed to

6    cooperate?

7         A.   Yes.

8         Q.   So the purpose of charging him would be to

9    have him enter into some sort of cooperation

10   agreement and be perhaps doing his prison time in the

11   federal system?

12        A.   Correct.

13        Q.   Because you thought that was safer place

14   for him?

15        A.   No, I just wanted to charge him.  I don't

16   know that it's safer.  That's debatable.

17        Q.   So you wanted to charge him because of the

18   crimes he'd committed?

19        A.   Yes.  And I thought it was in line with

20   some of his goals for programming and the tattoo

21   removal.  And I urged -- I always urge these guys to

22   move out of state.  They don't always want to.  But

23   bringing him into the feds, obviously, gives us, as

24   FBI agents, a little bit more ability to help that

25   process, as opposed to staying in the state system,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4081

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4082

```
 1   where we don't have a lot of influence.
 2        Q.   And you communicated at least some of that
 3   to Mr. Cordova, did you not; that if he was in the
 4   federal system, he could get some of these benefits
 5   like tattoo removal, or you might have a little more
 6   influence over his location, if he wanted to move
 7   out, those sorts of things?
 8        A.   Those sorts of things.  I just described to
 9   him what I'd seen in the past with other prison
10   gangs, what was possible.  I mean, all these
11   cooperators will tell you I don't promise them
12   anything, and I make it known that I'm a lowly GS 13
13   agent.  I don't make those kinds of decisions.  But
14   that I can push for it.
15        Q.   But he never was prosecuted federally?
16        A.   He was not.
17        Q.   Can you tell me why?
18        A.   My understanding is, once he had counsel,
19   they didn't think, between he and his counsel, that
20   that was a good idea.
21        Q.   So Mr. Cordova and his attorney
22   communicated to you that they didn't think it was a
23   good idea for him to be prosecuted?
24        A.   No, they communicated that to the
25   prosecutors.  I may have been part of that.  I was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4083

```
 1   part of some of those conversations or emails.
 2        Q.   And he never was, in fact, prosecuted?
 3        A.   He was not.
 4        Q.   He got what he wanted?
 5        A.   I don't know.  That's a question for him.
 6        Q.   Okay.  Let's talk about Mr. Perez, your
 7   understanding where he was at the time.  I think you
 8   testified around the time of this January meeting
 9   with Mr. Cordova that you learned that Mr. Perez had
10   some sort of pending disciplinary action?
11        A.   Yes, I believe it was Captain Sapien that
12   explained that to me.
13        Q.   So what did Captain Sapien explain to you?
14        A.   Well, in communicating to me what the
15   possibilities were, to have Cordova next to Perez, he
16   said that Perez had some -- because he was at another
17   facility.  He wasn't at the North -- excuse me, he
18   wasn't at PNM.  And I don't know where he was.  What
19   was communicated to me is that he owed some time --
20   my words -- at PNM for some past disciplinary
21   problem.  And so that because he owed that time, he
22   would be doing that time, and because Billy was a
23   cooperator -- excuse me, Mr. Cordova was a
24   cooperator, he had no disciplinary time coming, but
25   because he's a cooperator, we can throw him into
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4083

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4084

```
 1    Level 6.  So the idea was to put Perez where he was

 2    due to be going and then have Cordova be there as

 3    well.

 4         Q.   So Captain Sapien knew about that idea?

 5         A.   Oh, yes, he knew about it.

 6         Q.   And you didn't yourself independently

 7    investigate where Mr. Perez was on January 2016?

 8         A.   No.

 9         Q.   You relied on what the NMCD and STIU folks

10    were telling you?

11         A.   All I knew he was in state prison, but I

12    had no idea where.

13         Q.   But it was your understanding from what

14    they told you that he was not in PNM?

15         A.   Correct.

16         Q.   And it was your understanding from what

17    they told you that he owed some period of time for

18    some disciplinary infraction so he could be put

19    there?

20         A.   Yes.

21         Q.   And all of the information that you had

22    about where Mr. Perez was, his disciplinary

23    situation, that all came verbally from the other

24    officers you were working with?

25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4084

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4085

```
 1        Q.   Nothing that you reviewed yourself or
 2   documents that you looked at?
 3        A.   No, I didn't look at anything.
 4        Q.   But the idea, anyway, was to get
 5   Mr. Cordova next to Mr. Perez, so that Mr. Cordova
 6   could try to record conversations with Mr. Perez?
 7        A.   Yes, sir.
 8        Q.   Did you conduct any investigation into Mr.
 9   Perez' medical state?
10        A.   None at all, no.
11        Q.   You knew at, least at the time you sent Mr.
12   Cordova in to be operational, the allegation was,
13   anyway, that a piece of metal came from Mr. Perez'
14   walker?
15        A.   Yes, sir.
16        Q.   So you understood at least that Mr. Perez
17   had to use a walker?
18        A.   In 2014, he did.  That's what I understood,
19   yes.
20        Q.   And all that information you got from
21   various sources, but you didn't take any steps to
22   investigate that yourself?
23        A.   No, I didn't investigate anybody's medical
24   conditions throughout this case ever at all.
25        Q.   When, if you know, did Mr. Cordova get
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4085

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4086

1    placed next to Rudy Perez to conduct these recorded

2    interviews, if you will?

3          A.   Can I look at my notes?

4          Q.   Yeah.  Do we still have them?

5          A.   February 2016, he was placed next to Mr.

6    Perez.  I don't have the exact date in February.

7          Q.   And how come you don't have the exact

8    today?

9          A.   Well, the simple answer is I relied on

10   corrections for that.  I could obtain that date by

11   looking at their prisoner location manifest or list.

12   But my involvement with moving, like I'm not part of

13   the transcript.  I'm not at the prison.  I certainly

14   wasn't able to walk into any of those facilities and

15   go where I wanted to go.  I didn't have keys to the

16   place, if you will.

17         Q.   Were you ever shown the pod where Mr. Perez

18   was housed before Mr. Cordova got there?

19         A.   No.  I mean, since then, I've seen it

20   because it's an SNM pod, and we've done a number of

21   searches or shakedowns in there, and FBI agents have

22   participated in those.  But at that time I had not

23   been in there.

24         Q.   So you know now where the pod was that Mr.

25   Cordova recorded Mr. Perez?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058  Document: 010110415675  Date Filed: 09/29/2020  Page: 4087

```
 1        A.   I don't think I've been -- I think it was Q
 2   pod in the North.  I don't know that I've been in Q
 3   pod, but I've walked by it.
 4        Q.   If you saw a diagram of it, would you
 5   recognize it?
 6        A.   I might.
 7             MR. VILLA:  May I have a moment?
 8             THE COURT:  You may.
 9             MR. VILLA:  So I'm going to mark this, Your
10   Honor, as RP-B.  May I approach?
11             THE COURT:  You may.
12        Q.   Agent Acee, I'm showing you what I've
13   marked for identification as RP-B.  This is a
14   three-page document; true?
15        A.   Yes, sir, it is.
16        Q.   And the first page is PNM Level 5; correct?
17        A.   Yes.
18        Q.   Second page is PNM Level 6?
19        A.   Yes.
20        Q.   And it has on PNM Level 6 where Q pod is?
21        A.   Yes.
22        Q.   Then the third page is the layout of PNM
23   Level 6 that shows you where the recreation yard is;
24   is that true?
25        A.   That is true.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4087

```
 1          Q.    In looking at these, can you tell me if
 2    they appear to be an accurate depiction of those
 3    locations?
 4          A.    Yes, sir, they do.
 5                MR. VILLA:   Your Honor, I'd move to admit
 6    RP-B.
 7                THE COURT:   Any objection?
 8                MR. BECK:   No objection, Your Honor.
 9                THE COURT:   Any objection from any of the
10    defendants?   All right.   Rudy Perez' Exhibit B will
11    be admitted into evidence.
12          Q.    So let me show you the second page.   That's
13    the same pod, Level 6 Q pod, which is in the bottom
14    left corner.   That's the pod that you know where Mr.
15    Perez -- Mr. Cordova recorded Mr. Perez; correct?
16          A.    Yes.
17          Q.    And down on the bottom left-hand corner is
18    the cell where Mr. Perez was located?
19          A.    I'll take your word for it.   If it was, I
20    don't know it that well, to know the numbering.
21          Q.    You don't know which cell Mr. Perez was in?
22          A.    I don't.
23          Q.    Or Mr. Cordova?
24          A.    I just know they were next to each other.
25          Q.    In the Q pod?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4088

```
 1          A.    Yes, sir.

 2          Q.    There is an upstairs level and a downstairs

 3    level?

 4          A.    Correct.

 5          Q.    Do you know that it was the downstairs

 6    level?

 7          A.    I think that they may have been moved

 8    around a little bit.  But I do know that Cordova

 9    talked through the vent to -- no, that's when he was

10    next to Herrera.  So I think they were downstairs.

11          Q.    And the cells downstairs, there are maybe

12    four or five on the downstairs level, and maybe four

13    or five on the top, maybe a little more?

14          A.    Maybe a little more.

15          Q.    But there is a cell at the end of each

16    level that only has one neighbor next to it, right?

17          A.    Yes.

18          Q.    Because if you're not in the middle, you

19    don't have neighbors on either side of you, you only

20    have a neighbor on one side?

21          A.    Yes.

22          Q.    Do you know that Mr. Perez, when Mr.

23    Cordova was placed next to him, was at the far corner

24    where the only neighbor he had was Mr. Cordova?

25          A.    If you say that's how it was, I agree.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   haven't seen it.  If Mr. Perez was in the corner,

 2   then he would only have one neighbor.

 3        Q.   I don't want to testify.  I'm just

 4   wondering whether you know that?

 5        A.   I don't.

 6        Q.   How did you get Mr. Cordova the recording

 7   devices that he used to record Mr. Perez?

 8        A.   I gave them to the STIU, and they would

 9   deliver them to not only Cordova but any of the

10   cooperators there, usually via a ruse, where they

11   would shake their house down, they call it, search

12   their cell, and leave it in there for them.

13        Q.   Did the individuals who provided the

14   recording device, those were the same individuals

15   that did the shakedown?

16        A.   Yes.

17        Q.   So they knew, for lack of a better word,

18   that the fix was in?

19        A.   Those officers?

20        Q.   Yes.

21        A.   Yeah, to be clear, only those officers knew

22   there were devices in the facility.  The regular

23   correctional officers didn't.  And that was always a

24   concern because they could find it, and it could be

25   countered contraband.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4090

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 91 4091

1    Q.   I'll talk to you about that in just a

2  minute.  But these individuals that you gave the

3  recording device to would create the ruse like they

4  were doing a shakedown?

5    A.   Correct.

6    Q.   But it wasn't a necessarily a real

7  shakedown, like a housing officer might do on a

8  random basis?

9    A.   Well, it just had the added bonus of

10  introducing an ELSUR device.

11    Q.   So they would do the ruse as a shakedown,

12  introduce the ELSUR device, and they, of course, knew

13  at the time that Mr. Cordova was cooperating with

14  you?

15    A.   Absolutely.

16    Q.   And those individuals were Captain Sapien?

17    A.   Yes, Sergeant Martin.

18    Q.   Sergeant March?

19    A.   And Officer Cupit.

20    Q.   Officer Cupit?

21    A.   Yes.

22    Q.   And I think you testified that Mr. Myers

23  knew it as well?

24    A.   Yes, but he wasn't -- I mean, he is an

25  administrator, so he wouldn't have been involved in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4091

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4092

```
 1    the shakedowns.
 2         Q.    So he didn't do the shakedowns, but he knew
 3    what was going on?
 4         A.    Correct.
 5         Q.    And anybody else?
 6         A.    Well, I mean, there are other officers in
 7    the STIU.  They just weren't my points of contact.
 8    There was probably one or two other officers, and
 9    then their K-9 guys.  I'm sure they had some
10    awareness because we always met at the STIU office,
11    and we would talk.  But the specifics of the
12    operation, those were my points of contact.  And who
13    they told from there, I'm not sure.
14         Q.    But you had a conversation with Mr. Cordova
15    to make sure that hopefully if he had this ELSUR
16    device and got a shakedown, a -- real shakedown from
17    somebody who wasn't in the know -- that he could hide
18    it or prevent from it being discovered?
19         A.    Yes, the STIU and Mr. Cordova had a more
20    in-depth conversation about that, the sort of ins and
21    outs of how to avoid that.  And I think they talked
22    about what officers worked, because some of them were
23    more prone to do shakedowns than others.  But, yeah,
24    that conversation happened.
25         Q.    And you felt confident, or at least Mr.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 93093

1   Cordova told you that he felt confident he could do

2   it?

3       A.   Yes.

4       Q.   He could keep this device hidden from a

5   shakedown or from another officer that didn't know

6   about this?

7       A.   He thought he could.

8       Q.   How big is the device?

9       A.   A couple inches by a couple inches.

10      Q.   And it's plastic or metal or something like

11  that?

12      A.   It's metal.

13      Q.   You're familiar with the size of a Suboxone

14  strip?

15      A.   Yes.

16      Q.   Is it bigger or larger than a Suboxone

17  strip?

18      A.   The recording devices are much larger, much

19  heavier, much thicker than a Suboxone strip.

20      Q.   You were not present during any of these

21  shakedowns when the device was provided to Mr.

22  Cordova?

23      A.   That's correct.

24      Q.   Then you got the recordings back via the

25  same method?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4093

 1        A.   Yes.

 2        Q.   So the ruse of a shakedown, they get the

 3   ELSUR device back and they give it to you?

 4        A.   Essentially, I mean, they may have not had

 5   to do a shakedown.  Perhaps the informant had a

 6   medical visit or some other sort of ruse, but it was

 7   always by ruse.

 8        Q.   For Mr. Perez' recordings how many times

 9   was Mr. Cordova provided the ELSUR device?

10        A.   Well, based on my review of transcripts, I

11   think three different devices were used.  And what

12   that would signify to me, we're switching off the

13   device because, again, we're concerned that the

14   battery is going to die.  So in reviewing

15   transcripts, it looks like three different devices

16   were used.

17        Q.   Over what time period?

18        A.   Somewhere between two weeks and a month, in

19   February of 2016.

20        Q.   Now, I know you prepared at least one

21   report concerning what Mr. Cordova learned from Mr.

22   Perez.  But did you prepare a report each time you

23   got this device back?

24        A.   No.

25        Q.   Did you interview Mr. Cordova following

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4094

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 95 4095

 1  each time that you received the device back?

 2      A.   Definitely not.

 3      Q.   So you interviewed Mr. Cordova at least

 4  once prior to introducing the device to him?

 5      A.   Yes, I think we probably met at least three

 6  times before.

 7      Q.   Okay.  And that's where you discussed with

 8  him, as you testified on direct, to try to do the

 9  preamble and hide the light and all those sorts of

10  things, right?

11      A.   Yes.

12      Q.   After receiving all the recordings back

13  from Mr. Cordova, you listened to them?

14      A.   Not -- I eventually did.  Not necessarily

15  right away, no.

16      Q.   When do you think you first listened to

17  them?

18      A.   I think I first assigned other agents to

19  listen to them, because they were splitting up

20  responsibilities.  And so I didn't listen to them

21  until we were preparing for grand jury in April.  So

22  I would have listened to them in late March.

23      Q.   At any point in time, after receiving the

24  devices back from Mr. Cordova, did you interview them

25  again?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    I think I did.

2      Q.    When was that?

3      A.    I met with most of the cooperators before

4   going to grand jury in April.  So it would have been

5   in late March or early April.

6      Q.    Do you know if Agent Neale reviewed the

7   recordings prior to that period of time when you did

8   and you were preparing for grand jury?

9      A.    It would have been Agent Neale or Agent

10  Sainato.

11     Q.    And Agent Neale prepared a report, did he

12  not, concerning some of the information Mr. Cordova

13  received from Mr. Perez?

14     A.    I believe.

15     Q.    And you saw that report?

16     A.    Yes.

17     Q.    Do you remember the report being dated

18  February 11, 2016?

19     A.    I take your word for it.

20     Q.    If I show it to you, will that refresh your

21  recollection?

22     A.    Thank you.

23           MR. VILLA:  May I approach?

24           THE COURT:  You may.

25     Q.    Agent Acee, is that Agent Neale's 1023

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 97 4097

```
 1    report?

 2         A.    Yes.

 3         Q.    Can you tell me the Bates numbers on the

 4    two pages?

 5         A.    3308, 3309.

 6         Q.    The report, if you want to look at the

 7    second page, it discusses some information that Mr.

 8    Cordova got from Mr. Perez?

 9         A.    Yes, sir.

10         Q.    The report is dated February 11, 2016;

11    true?

12         A.    The report is.  The date of contact was the

13    9th, two days earlier.

14         Q.    So the date of contact was February 9th.

15    Can you tell me what that means?

16         A.    Yes, with all these reports, with these

17    Delta reports, these CHS reports, there is always

18    three dates.  So there is the date of the actual

19    contact; there is the date the agent starts the

20    report, and then the third date is when the

21    supervisor gets around to actually approving it.

22         Q.    Was this report prepared at the conclusion

23    of all the recordings that Mr. Cordova captured of

24    Mr. Perez?

25         A.    I don't believe so.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4097

```
 1         Q.   It was still ongoing?

 2         A.   Yes.

 3         Q.   So let's go back.  We talked about -- you

 4    said you met with Mr. Cordova at least three times

 5    before he started the recording.  Does that include

 6    the first two times?  One at MDC and the one at your

 7    office?

 8         A.   Yes.

 9         Q.   So when was the third time?

10         A.   I'm not sure.  I usually do that just

11    before they're going to go operational, just to make

12    sure.  Because some time goes by, and I want to make

13    sure they haven't changed their mind, they're

14    prepared, they have any questions of me.

15         Q.   Were the same individuals present at least

16    at the third meeting that we know from your report

17    were at the second meeting?

18         A.   Probably.

19         Q.   And when you say "probably," there is a bit

20    of uncertainty?

21         A.   No.  I mean, without having a report in

22    front of me to say this is exactly who was there, I'm

23    just saying that probably, because most of these

24    debriefs were done with the same group of FBI agents

25    and the same group of Corrections officials.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   No question, at the third meeting there was
 2   at least some, if not all of the group of
 3   correctional figures?
 4        A.   Yes.
 5        Q.   In talking to Mr. Cordova to get him
 6   prepared for this, did you talk to him about what
 7   questions he should be asking Mr. Perez?
 8        A.   No.  I told him what I wanted him to focus
 9   on.  But most of these guys are good at conversing
10   and talking, and they know what to say.  It's kind of
11   an insult me telling them what to say or how to
12   strike up the conversation.
13        Q.   You didn't give him a list of questions or
14   write something down for him?
15        A.   I just said I wanted information on
16   murders.
17        Q.   Murders, as opposed to drugs or baby mama
18   drama or whatever?
19        A.   Exactly.
20             MR. VILLA:  I think we're on C.
21             THE COURT:  Yes, you have A and B.
22             MR. VILLA:  May I approach?
23             THE COURT:  You may.
24        Q.   Agent, I want to show you what I've marked
25   as Mr. Perez' Exhibit C.  You've seen that document
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4099

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4100

```
 1  before?

 2       A.   Yes.

 3       Q.   This is the screenshot of -- I guess it's

 4  the metadata or the files for the recordings of Mr.

 5  Perez; true?

 6       A.   Yes.

 7       Q.   The same or substantially the same

 8  condition as when you saw it before?

 9       A.   Yes.

10            MR. VILLA:  Your Honor, I'd move to admit

11  Exhibit C.

12            THE COURT:  Any objection?

13            MR. BECK:  No objection, Your Honor.

14            THE COURT:  Any objection from the

15  defendants?  All right.  Rudy Perez' Exhibit C will

16  be admitted into evidence.

17       Q.   Agent, I'm going to show you Exhibit C

18  here.  Now, this is a printout of the files that

19  contain the recordings that Mr. Cordova captured of

20  Rudy Perez, right?

21       A.   Yes.

22       Q.   And I know we've admitted -- or the

23  Government admitted six of the recordings.  But this

24  actually lists a total of 11; true?

25       A.   True.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4100

1      Q.   And some of them have very short periods of

2    time, so I assume that they didn't capture anything

3    of significance or that sort of thing?

4      A.   I'd have to listen to them.

5      Q.   Okay.  Did you listen to them in

6    preparation for this hearing?

7      A.   Yes.

8      Q.   And of the six that have been introduced,

9    can you see others that perhaps do contain

10   information that you think is significant or should

11   be introduced?

12     A.   I have some questions about maybe one.  It

13   seems to me there might be seven that are pertinent.

14   But I acknowledge that six were introduced.

15     Q.   Other than these 11, are you aware of any

16   other recordings that Mr. Cordova captured of Mr.

17   Perez?

18     A.   Yes.

19     Q.   And what are those recordings?

20     A.   Well, this is -- 1168 is the serial number,

21   1168.  I think there were recordings captured on

22   serial number 0730, and another device.  And I have

23   those on the table back there, if you want me to get

24   them and tell you what the third one was.

25     Q.   Perhaps we can get that up to you so you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4101

```
 1   don't have to come down.

 2          But the exhibits that were introduced by

 3   Mr. Beck, are they all represented here on RP-C, or

 4   did they come from different devices?

 5      A.   No, they were -- the ones that he

 6   introduced today?

 7      Q.   Yeah.

 8      A.   No, they were 1168.  They were these.

 9      Q.   They were all 1168?

10      A.   Yes.

11      Q.   And 1168 denotes the device that was used?

12      A.   Correct; that's the serial number, so, yes.

13          MR. VILLA:  Your Honor, could Mr. Beck

14   provide that information to refresh Agent Acee's

15   recollection?

16          THE COURT:  He may.

17      A.   Mr. Villa, it looks like they were all

18   1168.  I think I got confused with Mr. Baca's

19   recordings, which I also had here.  Sorry about that.

20      Q.   That's all right.  I appreciate it.  So

21   you're fairly sure, after reviewing your file, that

22   1168 was the only device that recorded Mr. Perez;

23   correct?

24      A.   I'm hesitating because I thought we

25   switched the device.  But as I sit here, that must
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4102

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

1  have been the only device we used.

2      Q.   Now, we heard testimony yesterday about why

3  the dates that are depicted here on this metadata,

4  Exhibit C, may not be accurate.  But let me ask you

5  this:  Was there an ELSUR technician or somebody

6  besides yourself that prepared this device before it

7  was given to Mr. Cordova?

8      A.   Yes.  And to be clear, I don't have the

9  equipment, the training, or the ability to do

10  anything with the device other than check them out,

11  transport it, and vice versa.

12      Q.   So you got the device from a tech in the

13  Albuquerque field office?

14      A.   Yes.  We get the devices from the TTAs, the

15  technically trained agents, special agents that

16  specialize in this.  Generally, how it works is we

17  put in a request.  We explain what the environment is

18  like and what our objectives are.  They say:  Here's

19  your choices.  And sometimes we don't have a choice.

20  And we take that device and we bring it back, we're

21  turning it in to a different individual, and that's

22  the ELSUR technician that actually downloads it.

23      Q.   Did either of those individuals inform you

24  whether the dates on the device were accurate?

25      A.   Not that I recall.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4103

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104

```
 1         Q.   Did you have a conversation with either one
 2    of them about whether the dates had been set to be
 3    accurate for, you know, Mountain Time and the current
 4    date, and that sort of thing?
 5         A.   No.
 6         Q.   So is it just the case, then, that you
 7    don't know for certain if the dates of these
 8    recordings are accurate?
 9         A.   I learned a lot about that this week.  And
10    I presume they are.  But based on what I've heard
11    this week, I'm not sure.
12         Q.   So the dates run from February 1st through
13    February 4, 2016?
14         A.   They do.
15         Q.   And that is at least close in time to when
16    this operation was occurring?
17         A.   Yes, sir, it was.
18         Q.   But you can't say precisely what the date
19    is?
20         A.   Now, I have my own doubts.  Based on what
21    I've heard this week, I'd want to compare this to the
22    prison records of what cells those two gentlemen were
23    in.
24         Q.   What about the time -- it has a time of
25    each recording -- do you have any reason to believe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4104

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105

```
 1   the times are incorrect?
 2        A.   I don't.  But if you told me they were or
 3   we found some other document that showed they were, I
 4   guess I wouldn't be surprised, no.
 5        Q.   In each of the transcripts -- so, for
 6   instance, 33A, it has listed on there the date of the
 7   recording.  And it's February/XX/2016, right?
 8        A.   Yes, sir.
 9        Q.   Because you're not able to accurately
10   determine what day these were taken?
11        A.   Correct.
12        Q.   Now, with respect to Mr. Cordova, while
13   this operation, if you will -- and when I say
14   "operation," I'm talking about recording Mr. Perez,
15   and I guess we can include Mr. Herrera -- were you
16   monitoring his prison phone calls?
17        A.   I personally was -- Cordova's or the other
18   guy's?
19        Q.   Mr. Cordova's.
20        A.   No.
21        Q.   Were you monitoring who was coming to
22   visit?
23        A.   No.  And to be clear, I don't have that
24   information at my fingertips.  I'd have to get that
25   from the STIU.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104106

```
 1        Q.   Did you ask the STIU, during the period of

 2   time Mr. Cordova was operational, to listen to his

 3   phone calls?

 4        A.   No.

 5        Q.   Did you ask them to tell you or keep track

 6   for themselves who is coming to visit him?

 7        A.   No.  I mean, they do keep track of that,

 8   but I didn't tell them to, no.

 9        Q.   Same question with respect to mail.  Did

10   you ask them to look into his mail to see who he was

11   receiving mail from?

12        A.   No.

13        Q.   Did Billy Cordova ever talk to you on the

14   phone from the prison?

15        A.   During that time?

16        Q.   During the time he was operational.  I

17   guess from January the time, through, I think you

18   said you closed him was around January 17?

19        A.   I don't think so.  I mean, these -- most of

20   the guys, I tell them:  Don't call me.  But they

21   still do.  I don't think so.

22        Q.   Did he have your number?

23        A.   Would he have had my number?

24        Q.   Yes.

25        A.   Probably.  I think his wife would have had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107

```
 1   my number, yes.  That's usually how the
 2   communications go.
 3        Q.   Did she call you during this time period?
 4        A.   No.  She would send texts once in a while.
 5   I don't know if it was during this time period or
 6   after, though.
 7        Q.   Was Mr. Cordova given urinalysis during the
 8   time he was operational?
 9        A.   I don't know.
10        Q.   Did you ask STIU or anybody from NMCD to
11   give him drug tests?
12        A.   No.
13        Q.   Do you know if his pod -- or excuse me, his
14   cell, was shooken down -- shaken down -- we need a
15   grammar professor -- during the time he was
16   operational, not when it was a ruse -- to give him
17   the ELSUR device?
18        A.   I only know when STIU did it.  I don't know
19   when the regular COs assigned to that pod would have
20   done it.  I don't have any information on that.
21        Q.   Did you ever learn that he was found to
22   have contraband, drugs, anything like that, on him?
23        A.   Not when he was operational.  I'm sure in
24   his past he did.
25        Q.   All right.  But you didn't instruct anybody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4107

```
 1   to say:  Shake him down, check on him, make sure he's
 2   doing what he's supposed to be doing?
 3        A.   No.
 4        Q.   You then listened to these recordings of
 5   Mr. Perez recently, and one of the things you said
 6   you were listening for was if it sounded like he was
 7   intoxicated, right?
 8        A.   Yes, sir.
 9        Q.   And as you listen to it, I think you said
10   you relied on some of your training when you were a
11   police officer?
12        A.   Yes, sir.
13        Q.   So I'll dive into that in a second, but let
14   me ask you this:  Have you ever listened to a
15   recording of Mr. Perez when he was known to be under
16   the influence of any drug?
17        A.   No.
18        Q.   When you were a police officer -- was it
19   California State Police?
20        A.   Yes, sir.
21        Q.   When did you become an officer there?
22        A.   I started out in the sheriff's department
23   in '97; went to CHP in 2000.
24        Q.   I'm sorry?
25        A.   2000.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4108

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 109

1     Q.   CHP, California Highway Patrol?

2     A.   Yes, sir.

3     Q.   When did you get the 40-hour training that

4  you described on direct examination?

5     A.   I was trying to remember that.  It was

6  early in my career.  I think it was -- the 40-hour I

7  had to do first, and I think that was in 2001.  And

8  then the more advanced training was in 2002.

9     Q.   That being the drug recognition training?

10    A.   Yes, sir.

11    Q.   Can you tell me when Suboxone was invented?

12    A.   No.

13    Q.   Can you tell me when the FDA approved it?

14    A.   I recently read that, but I don't recall

15  the date.

16    Q.   Were you trained during this drug

17  recognition, 80-hour course that you did, about

18  Suboxone?

19    A.   No.

20    Q.   Were you trained in how to identify if

21  somebody is under the influence of Suboxone?

22    A.   No.

23    Q.   So the DRE training -- that's Drug

24  Recognition Evaluation for short -- it's not just

25  about any one drug, right?  It's about a number of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110

1    drugs you can detect?

2         A.   Yes, sir.  The focus is more on trying to

3    make a determination.  And I will say that's a

4    determination to the level of what I'll call probable

5    cause.  Not a medical conclusion.  It's just enough

6    probable cause, as an officer, I would feel

7    comfortable making that arrest.  And that focus was

8    primarily on stimulants and depressants, and then

9    alcohol.

10        Q.   And part of the training is you're

11   physically being able to see the suspect and observe

12   them; correct?

13        A.   Yes.  We did our evaluations in the Skid

14   Row area of Los Angeles, the downtown area, between

15   like 3rd and 6th Street.  So we would actually do

16   evaluations on live subjects that we suspected that

17   were under the influence.

18        Q.   You're trained, things to look for when

19   you're looking at a suspect, right?

20        A.   Yes.

21        Q.   You look at their eyes?

22        A.   Yes, sir.

23        Q.   See if they're bloodshot, or pupils have

24   dilation or restriction?

25        A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Look at their skin?

2      A.   Yes.

3      Q.   I think part of it -- I don't know if it

4  did back then, but did it include like taking some

5  vital signs, pulse, things like that?

6      A.   It did.

7      Q.   Looking for other signs of drug use, like

8  needle tracks, or white powder around the nose, those

9  sorts of things?

10     A.   Yes, sir.

11     Q.   And also included -- I guess they're called

12 field sobriety tests?

13     A.   Yes.

14     Q.   People are doing different tasks:

15 Standing, walking, touching their fingers to their

16 nose, all that sort of stuff?

17     A.   Correct.

18     Q.   And you used all of that to try to reach a

19 conclusion about what someone might be under the

20 influence of?

21     A.   Yes.  To the point of either making a

22 determination for an arrest or not to arrest them.

23     Q.   And with respect to Mr. Perez, the only

24 thing you did was listen to the recordings?

25     A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   You didn't look at anything else to try to

2   determine whether or not he was under the influence?

3     A.   That's correct.

4          MR. VILLA:   May I have a moment, Your

5   Honor?

6          THE COURT:   You may.

7     Q.   Agent Acee, you're aware that Mr. Cordova,

8   I think in January of 2017, or so, got in trouble at

9   PNM?

10    A.   Yes, sir.

11    Q.   He got in trouble for having sex in the

12   contact room?

13    A.   Yes.

14    Q.   Okay.   What's the contact room, as far as

15   you understand it?

16    A.   Well, I've watched the video.   And I went

17   up and sort of investigated the circumstances.   And

18   what it was, was a small room located in the North

19   facility.   It had glass windows.   There was a table

20   with a couple of chairs.   And there was a camera in

21   there.

22    Q.   And the PNM North facility is a Level 6

23   facility; true?

24    A.   It is.

25    Q.   And are you aware of what the New Mexico

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4112

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113

 1    Department of Corrections policies were at the time

 2    for contact visits for inmates in Level 6?

 3         A.   No.

 4         Q.   Do you know whether Mr. Perez was given

 5    some special permission on the contact visit for this

 6    January period of time?

 7         A.   I did in my follow-up -- we'll call it

 8    investigation, if you will, I learned more about

 9    that.

10         Q.   What did you learn?

11         A.   I learned that the cooperators -- I'll call

12    it L pod -- that's where they were living, those that

13    were cooperating with the Government -- were housed

14    together.  And they were given, I think, Level 4

15    privileges, although they were housed at the Level 6.

16    And I believe that those privileges include contact

17    visits, which I understand to be a visit with your

18    family.  But things like, you know, physical

19    touching, beyond hugging your kids, is not permitted.

20         Q.   So the inmates were in L pod, which is a

21    Level 6 facility, but given Level 4 privileges?

22         A.   That's my understanding.  I asked the same

23    kind of questions when I found out this happened, and

24    went up there and was trying to get to the bottom of

25    it.  And that's what was explained to me.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4113

1        Q.   Whom did you ask?

2        A.   Well, I had conversations with everyone

3   from the Secretary, on down to managers of the unit.

4        Q.   And I think you called it the cooperator

5   pod, because all of the cooperators in this SNM case

6   were in that pod?

7        A.   Not all of the cooperators.  But all the

8   cooperators that were housed at PNM were in there,

9   yes.

10       Q.   Did you ultimately learn how it was that

11  they were given Level 4 privileges, even though they

12  were in Level 6 pod?

13       A.   Yes.  What was explained to me is that they

14  got the same privileges that an inmate leaving the

15  gang, or renouncing the gang, would get if they

16  stepped down and went to RPP.  These guys were

17  prevented from going to RPP because they were there

18  on CJ holds, on marshals -- federal holds.  And so

19  they were afforded those privileges, even though they

20  couldn't transfer out of the facility because of the

21  case.

22       Q.   And I won't get too far into this, but Mr.

23  Cordova wasn't the only one that was violating the

24  contact rule of doing more than just hugging or

25  kissing their family?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115

```
 1        A.    No.  I believe there were four.

 2        Q.    Okay.  With respect to Mr. Cordova, did he

 3   get any sort of discipline or issue related to his

 4   having a sex in the contact room in violation of

 5   policy?

 6        A.    Yes.

 7        Q.    What was that?

 8        A.    I closed him.  The Department of

 9   Corrections threw him in the hole for six months, or

10   maybe longer, I'm not sure.  My communications with

11   him stopped at that point in time.  And the State

12   referred he and his wife to the CYFD.

13        Q.    Has he been prosecuted?

14        A.    Oh, and the case was referred to the State

15   Police, but I don't believe any of the men were

16   prosecuted.

17        Q.    So you closed him in that period of time?

18        A.    I did.

19        Q.    Is that what caused you to close him?

20        A.    Yes.

21        Q.    And you haven't used him since then?

22        A.    I haven't even talked to him since then, up

23   until yesterday.

24        Q.    You spoke to him yesterday?

25        A.    Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4115

1        Q.    What did you speak about?

2        A.    I greeted him.  He was transported here

3    from Clayton.  So I oversaw the transfer of -- or

4    helped coordinate the transfer of Mr. Cordova from

5    the STIU up north, to the correctional staff out here

6    at Southern.  And I asked him how he was doing.  Told

7    him he needed to shave.  Just small talk.

8        Q.    When you closed him in January, did you

9    talk to him then?

10       A.    Yes, I talked to everybody in the pod.

11       Q.    And what did you tell Mr. Cordova?

12       A.    I'd frame it as I was angry, I was

13   disappointed.  And I told him he needed to take his

14   medicine.  Whatever was coming was coming, and he

15   earned it.  I told him not to be surprised if CYFD

16   got contacted.  And I said some other angry things to

17   him.

18       Q.    Like what?

19       A.    I said it to all four of the guys who were

20   involved that I was disappointed; I didn't do things

21   to make them look bad or disrespect them.  Respect

22   was a big thing for these guys, and guys in that

23   position.  I felt that they had disrespected me.

24   Although I wasn't taking it personally, but they

25   disrespected the Bureau, the FBI.  And they had some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4116

1    rough days coming and they just needed to be men

2    about it and face their ass-whooping.

3        Q.    Is one of the reasons that you canceled him

4    in that period of time is this action by him

5    demonstrated a lack of you're being able to trust

6    him?

7        A.    Yes -- I mean, there had been other small

8    issues in the pod -- nothing that was criminal, but

9    just bickering, and bickering with staff, and I'd had

10   to go up there before.  And I hated doing that.  It

11   was like baby-sitting.  It was like, Come on guys,

12   like, we can get through this.  So this was, yeah,

13   the last straw.  So I'd already given them some

14   admonishments about:  Go along, get along.  You know,

15   the COs don't like you guys -- you're big boys.  Do I

16   have to keep coming up to talk to you kind of stuff.

17   So when this happened, this was a flagrant violation

18   of following the rules, which they have to do, or

19   they get closed.

20       Q.    Because if they don't, you can't trust

21   them?

22       A.    I can't control them.  I mean, I can

23   understand why he did what he did, but he's got to

24   follow the directions that were given.  And the

25   directions are:  Don't cause problems, and follow the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118

```
 1   institution's rules.
 2        Q.   One of the reasons you want to control them
 3   is so that you can trust them, right?
 4        A.   Yes.
 5        Q.   And you can't trust Billy Cordova anymore?
 6        A.   I don't agree with that.  I think, if he's
 7   left alone in a room with his wife, he's going to
 8   have sex with her if he can.  That doesn't mean I
 9   can't trust him.
10             MS. JACKS:  Objection.  He's misstating
11   evidence.  He wasn't alone.  He was with two minor
12   children.
13             THE COURT:  Well, overruled.  He can
14   testify.  You can deal with it in cross.
15             Mr. Villa.
16             MR. VILLA:  That's all the questions I
17   have.  Thank you, Mr. Villa.
18             THE COURT:  Ms. Jacks.  You're kind of
19   eager to get a piece of him.  Do you want him?
20             MS. JACKS:  I do have some questions, Your
21   Honor, but I think Ms. Bhalla is going next.
22             THE COURT:  All right.  Ms. Bhalla.
23                       EXAMINATION
24   BY MS. BHALLA:
25        Q.   Good morning.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4118

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4119

```
 1        A.   Good morning.
 2        Q.   Give me just a second to get organized
 3   here.
 4             Since we're on the topic of Mr. Cordova's
 5   contact with his wife, I had a couple of questions
 6   about that, if you don't mind.
 7             You had indicated -- let me just make sure
 8   I'm stating this correctly -- that they were given
 9   privileges to be in Level 3 because of their
10   cooperation; is that correct?
11        A.   Level 4 privileges.
12        Q.   Level 4 privileges.  And who did you speak
13   to about that so that they got those privileges?
14        A.   No -- these are facts that I learned
15   afterward, when I went up there and tried to piece
16   together how this disaster happened.
17        Q.   Okay.  I'm not asking about who gave him
18   permission to have the contact visits -- that was a
19   little unclear -- what I'm asking you is:  At some
20   point after these guys cooperated, you spoke to
21   someone about them cooperating, presumably STIU; is
22   that correct?
23        A.   Yes.
24        Q.   And they were moved because they were
25   cooperating; is that correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4119

```
 1        A.   Yes.
 2        Q.   And they were moved to a level -- did you
 3   say a Level 4 or a Level 5 facility?
 4        A.   No, they were in the Level 6, in L pod, at
 5   the North.
 6        Q.   Okay.  And when were they given -- at some
 7   point, they were moved to Level 4?
 8        A.   No, they remained in Level 6.  But the
 9   restrictions, I'll call it, that they were under were
10   that of Level 4 privileges.
11        Q.   Okay.  I understand.  So, even though they
12   were in Level 6, they were sort of given more
13   privileges, which would account for maybe Level 4
14   privileges?
15        A.   That was my understanding.
16        Q.   And that was because they were cooperating
17   with the Government; correct?
18        A.   Yes.  And they didn't renounce the gang.
19        Q.   Okay.  Who gave them those privileges?
20        A.   I'm not sure.
21        Q.   Okay.  Did you speak to anybody about who
22   let them be on Level 4 status -- I'll call it interim
23   Level 4?
24        A.   No, that was my question, too.  But I had
25   to be diplomatic about it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1-800-669-9492

DNM 4120

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4121

```
 1        Q.   Diplomatic about asking who gave the
 2   authority for them to be in that classification?
 3        A.   Yes.
 4        Q.   Why is that?
 5        A.   At that point in time, it was difficult for
 6   me to walk into the Department of Corrections and ask
 7   their bosses what they were thinking or what they
 8   were doing.  I asked those questions, but just not as
 9   pointedly as you're asking.
10        Q.   So you don't know who made the decision to
11   allow them to be on interim Level 4 status?
12        A.   I have an idea of the people that were
13   involved in that decision, but maybe not.
14        Q.   Okay.  Can you tell me who you think might
15   have been involved in that decision?
16        A.   I think that it involved Deputy Secretary
17   Booker, Joe Booker; Mr. Roarke, who, at the time --
18   he's since been promoted -- but I think he was the
19   director of adult prisons.
20        Q.   Do you think maybe that's why he wasn't
21   here last week?
22        A.   I don't know.  I guess there was some ice
23   somewhere or something.
24        Q.   Okay.  Who else was responsible for that
25   decision, that you know, our suspect?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   I think the Warden would be -- I mean, my

 2   understanding is you can't really -- you shouldn't do

 3   anything in the facility without giving the warden a

 4   courtesy part in that conversation.  So I think those

 5   three.

 6          Q.   And remind me, who was the warden at that

 7   time?

 8          A.   German Franco.

 9          Q.   Okay.  And do you know if Mr. Mares was

10   involved in that decision at all?

11          A.   Say the name?

12          Q.   Mr. Mares, am I saying that right?

13          A.   Oh, Myers?  Mark Myers?

14          Q.   Yes.  Thank you.

15          A.   He probably would have been.

16          Q.   He probably --

17          A.   I mean, he's with us all the time.  He

18   works out of our building.  But he belongs to them

19   and I'm not always part of his conversations with his

20   colleagues there.

21          Q.   Okay.  What about Roland Mares?  I think

22   that's who I was trying to ask about maybe.

23          A.   I don't know him.  I don't know if I've

24   ever met him.

25          Q.   Okay, that's fine.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            At the time that they were in Level 6, but
 2    they were -- I'll just say classified as Level 4 --
 3    was that what you referred to as the "cooperator
 4    pod"?
 5        A.   Yes.
 6        Q.   Okay.  Who was in the cooperator pod, that
 7    you know about?
 8        A.   Billy Cordova, Frederico Munoz, Gerald
 9    Archuleta, Javier Rubio, Benjamin Clark, Jerry
10    Armenta, Paul Rivera; Timothy Martinez, when he came
11    over; Eric Duran until he was released.  And then, as
12    other defendants started to cooperate -- they may
13    have joined it later, but then, that would have
14    stopped in January of 2017, when these incidents we
15    became aware of, L pod dissolved, and people were
16    transferred out or transferred to other facilities.
17    And that was a decision between Marshal Service and
18    the Corrections Department.
19        Q.   Okay.  Can you give me -- and I know
20    everybody was coming in at different times, so I'm
21    not trying to pin you down to specifics here, but a
22    general timeframe of when the defendants that you
23    listed, or the cooperators that you listed, were in
24    the cooperation pod?
25        A.   Oh, man.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4123

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124

```
 1              MR. BECK:  Your Honor, I'm going to object;
 2    beyond the scope of direct, and irrelevant.  This
 3    doesn't relate to a motion to suppress.
 4              MS. BHALLA:  Your Honor, I think it's
 5    relevant.  Because one of the things that we're
 6    trying to find out is what the Government and what
 7    the informants knew about what was happening when
 8    these guys were in the pods with -- next to Rudy
 9    Perez and next to Carlos Herrera.  If these guys were
10    all in the cooperator pods together, I'm curious
11    whether or not they were talking about that, whether
12    or not they were talking about drugs, what
13    conversations they had about drugs, and whether or
14    not they were conversing as a group about that
15    subject.  So I'd like to link it in, if I can.
16              THE COURT:  Well, this doesn't implicate
17    any -- this is all past history now, so there is not
18    any security --
19              MR. BECK:  No.
20              THE COURT:  -- interests here.
21              MR. BECK:  No.
22              THE COURT:  I think I'll give her a little
23    bit of leeway here and see if she ties it up.
24    Overruled.
25              Ms. Bhalla.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 125

```
 1              MS. BHALLA:  Thank you.
 2         Q.   I think you see where I'm going with this
 3    now.  Can you tell me about what time frame they were
 4    in there?
 5         A.   That's tough to do, for a number of
 6    reasons.  The marshals contract with PNM.  They had
 7    to increase the number of beds so the additional CJ
 8    holds could go there.
 9              I could try to sketch out maybe who the
10    initial L pod people were, and then who joined later.
11         Q.   And I have a feeling we'll probably go into
12    lunch.  So maybe what we can do is take that up after
13    lunch.  If you get a chance to review that, I would
14    appreciate it.  I do have a couple of other questions
15    about it while we're on the subject.
16              You mentioned in your previous testimony
17    that you would go in and talk to them as a group; is
18    that correct?
19         A.   Correct.
20         Q.   Okay.  And so did you all share information
21    or what would you talk to them about when you went in
22    to talk to this group?
23         A.   I feel a little better saying this, but it
24    was like a scolding.
25         Q.   Every time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yes.
 2          Q.   Okay.  So every time you went in there it
 3     was because there was a problem?
 4          A.   That, or to sign receipts.
 5          Q.   Excuse me?
 6          A.   I went there at the request of the
 7     Corrections Department sometimes, to help everybody
 8     stay focused on the long-term goals here, and not to
 9     get -- there was a lot of bickering.
10          Q.   Do you know what the bickering was about?
11          A.   Stupid stuff.  Like personalities; the guys
12     didn't like each other.
13          Q.   Did you say to sign receipts?
14          A.   Yes.  So, if payments were made, then we'd
15     go up and I'd have them sign receipts.
16          Q.   Okay.  And that would be to the informants,
17     payments made to the informants?
18          A.   Yes.
19          Q.   And when you went up there to sign the
20     receipts, did the other informants see that you were
21     signing receipts?  Did they know that's why you were
22     coming?
23          A.   They weren't dumb.  They knew what we were
24     doing.
25          Q.   Did they know how much money, or have an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    idea about who was getting paid what?
 2         A.    Probably.  I don't put anything past these
 3    guys, but I didn't talk to them about it.  And they
 4    didn't complain to me, like, Hey, this guy is getting
 5    more or something.  So I don't know what they talked
 6    about.
 7         Q.    So you don't think that might have been a
 8    source of the bickering?
 9         A.    No.  The bickering was sometimes childish
10    stuff, that I didn't expect to be doing.
11         Q.    I want to move back into the payments.  You
12    talked to Mr. Villa about paying Mr. Cordova $600, is
13    that correct -- or putting it on his books; is that
14    fair to say?
15         A.    That was his number.  That sounds about
16    right.
17         Q.    Okay.  You mentioned that -- in your notes,
18    and I was going to ask you about that -- let me just
19    locate that real quickly.  And you may want to look
20    at your notes, just because I'm going to ask you
21    about them.  On your expenses for Billy Cordova you
22    noted "Reimburse for reasonable cost in support of
23    FBI investigation."  Do you recall that note?
24         A.    Yes.  That's a different note.  So what I
25    did is I have notes on CHS policy.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4127

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4128

```
 1        Q.   Right.

 2        A.   Because I anticipated being asked about

 3   that.  Then I have notes on Cordova's timeline.

 4        Q.   Okay.  So that was on Mr. Cordova's

 5   timeline; is that fair to say?

 6        A.   No.  I think where I'm talking about

 7   payments --

 8        Q.   Correct.

 9        A.   -- and expenses.  I wasn't able to bring in

10   our policy manual on CHSs, because it's a secret.

11   The overall classification is secret.  That being

12   said, the portions that deal with criminal informants

13   is all unclassified.  But I can't bring the document

14   in, so I got approval to take some notes.

15        Q.   That's fine.  And all I'm asking is -- I'm

16   not asking about the how you arrived at those notes.

17   I'll probably ask you that in a minute.  But one of

18   your notes on those -- on that piece of paper says

19   "reimburse for reasonable costs in support of FBI

20   investigation"?

21        A.   Yes.

22        Q.   What does that mean?  What is that about?

23        A.   So there is two kinds of payments we can

24   make.  We can make a payment for services rendered or

25   for expenses.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4128

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 129

```
 1        Q.   Okay.

 2        A.   That is the definition of what would fall

 3   under expense.

 4        Q.   So the payment for services rendered would

 5   also be considered an expense; is that correct?

 6        A.   No.  I'm sorry, I'm probably not doing a

 7   good job of explaining this.

 8             So there is two ways I can request money to

 9   pay an informant for their services, which I would

10   describe as:  Here's your reward, if you will, or

11   here's your payment for helping.

12        Q.   Which would be the money you put on his

13   books?

14        A.   Correct.

15        Q.   Okay.

16        A.   Expenses are -- I can't think of, in a

17   prison scenario where that might come up.  But say on

18   the street, if I'm asking a source to drive

19   somewhere, and they get a flat tire, or I can put

20   fuel in the vehicle, and I can repair the car.

21        Q.   I understand that.  So were there any

22   expenses related to Mr. Cordova's cooperation?

23        A.   Not that can I think of.

24        Q.   Okay.  So that note doesn't indicate that

25   you were getting reimbursed for expenses paid on Mr.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4129

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130

1    Cordova?

2        A.   No.  And I take that back, if I purchased

3    an informant lunch, like if I ever bought Mr. Cordova

4    lunch, I would -- that would fall under expenses.

5        Q.   So you don't recall what your expenses were

6    with Mr. Cordova?

7        A.   I don't think I had any.  If I did -- I'm

8    trying to remember what it could have been -- it

9    might have been maybe a meal.  That's the only thing

10   I could think of.

11       Q.   Okay.  What documents did you review to

12   generate the notes that you brought today?

13       A.   Well, for the CHS policy, I looked through

14   the guide, which is that secret guide; got approval

15   to make these notes.

16            For Mr. Cordova, I opened up -- well, his

17   informant file is closed, so I had to have the closed

18   file electronically sent to me.  I went through it

19   and noted dates I thought I might be asked about.

20       Q.   Can you talk about what information is in

21   Mr. Cordova's file?

22       A.   Sure.

23       Q.   Okay.  Can you tell us what's in Mr.

24   Cordova's file?

25       A.   Any report that we generated as a result of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4130

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131

```
 1    him debriefing with us.  I'll start at the beginning.

 2    It's going to have his photo, his criminal history,

 3    what we call an opening document, which is the agent

 4    that opened him; in this case, me.  Why I was opening

 5    him.

 6         Q.   And this would have been in January?

 7         A.   Yes.

 8         Q.   Of 2015?

 9         A.   '16.

10         Q.   Okay.

11         A.   Any payment information would be in there,

12    copies of receipts, the admonishments, which I think

13    sometimes may have been referred to as contracts, but

14    they're actually just admonishments.  They're the

15    rules that we're telling the person.  It will note

16    which rules we told on what date, and who witnessed

17    it.

18         Q.   Okay.

19         A.   That's all I can think of in a criminal

20    matter.  I mean, when you get into national security

21    stuff, there is other stuff.  But in these cases,

22    that's the bulk of what's going to be in that file.

23         Q.   So there wouldn't be anything in that file

24    that would implicate national security interests?

25         A.   Absolutely not, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4131

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132

1     Q.   And Mr. Cordova's cover has already been

2   blown so to speak; is that correct?

3     A.   Correct.

4     Q.   Would you have any objection to turning

5   over that file?

6     A.   I don't.  I don't object to any of this

7   stuff.  I just have to check with the Bureau.  And I

8   think it would be turned over.

9     Q.   Okay.  Thank you for that.

10        You talked a little bit about the

11   instructions that you gave, or the admonitions that

12   you gave to Mr. Cordova.  Did you ever instruct him

13   not to bring drugs into the facility or to use drugs

14   during the course of this operation?

15     A.   Not specifically.  He was advised, you

16   know, to follow all the rules, and not break any

17   laws.  But not specifically.

18     Q.   Okay.  And I think Mr. Villa asked you a

19   little bit about this.  Did you request -- I know

20   that you couldn't go in and search any of the cells,

21   but did you request STIU to check the cells

22   periodically?

23     A.   No.

24     Q.   During the time that the recording device

25   was in there?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4132

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

```
 1        A.   No.
 2        Q.   You talked a little bit -- and I think Mr.
 3   Villa asked you a little bit about your DRE or DUI
 4   experience in recognizing signs of impairment; is
 5   that correct?
 6        A.   Yes.
 7        Q.   Okay.  Would it be fair to say that part of
 8   what you're looking for when you're doing a DRE
 9   investigation is whether or not a suspect is able to
10   respond to the questions that you ask?
11        A.   Yes.
12        Q.   Would it matter to you if someone was
13   unable to answer a question, if they weren't able to
14   understand their response to your question?
15        A.   That would matter, yes.
16        Q.   Would it matter if they stuttered?
17        A.   Yes.
18        Q.   Okay.  I want to take you to a transcript
19   that I believe you talked to Mr. Maynard about a
20   little bit last week.  And it starts with Bates No.
21   20839.  And I'm going to hand you a copy of that
22   transcript, if that's all right with the Court.
23             THE COURT:  You may.
24        Q.   I want you to just take a couple of
25   seconds, and let me know when you're ready to discuss
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4133

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134134

1    that transcript.

2          A.   I read this this morning, ma'am.

3          Q.   Okay, good.  Do you recognize that as being

4    a transcript between Carlos Herrera and Billy

5    Cordova?

6          A.   Yes.

7          Q.   And this was during the time that Billy

8    Cordova was next to Mr. Herrera?

9          A.   Yes.

10         Q.   Is this the transcript that you discussed

11   with Mr. Maynard last week?

12         A.   Yes.

13         Q.   And you were providing some context on --

14   for us on why you felt that some of these statements

15   were inculpatory?

16         A.   Yes.

17         Q.   I would like you to look at the first real

18   page of the transcript, meaning where the

19   conversations begin.  The top of the page says, "Hey

20   carnal."  Do you see that?

21         A.   Yes.

22         Q.   Do you see Mr. Herrera's response on the

23   second block -- I'll call it a block -- does that

24   make sense to you?

25         A.   I do see it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4134

```
 1        Q.   Okay.  How many lines are in that block?

 2        A.   Five.

 3        Q.   Okay.  I'm going to say four-and-a-half,

 4   but I'll let you go with five.  How many

 5   unintelligibles -- how many unintelligible words are

 6   in those five lines?

 7        A.   Eight.

 8        Q.   Okay.  And I want to take you to the

 9   bottom, several pages later, of 20847, Bates No.

10   20847.  Do you mind taking a look at that?

11        A.   Okay.

12        Q.   If you will please look at the third block

13   from the bottom, where it starts out, "Unintelligible

14   carnal."  Do you see that?

15        A.   Yes.

16        Q.   Would you agree with me that there are 12

17   lines of text in that conversation block?

18        A.   Yes.

19        Q.   And in those 12 lines, there are 23

20   unintelligible words?

21        A.   Yes.

22        Q.   And one stutter?

23        A.   Yes.

24        Q.   I'm going to take you back to page -- the

25   first real page -- which is Bates No. 20840, if you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4136136

```
 1    don't mind.

 2         A.   Okay.

 3         Q.   And this is a conversation going back and

 4    forth between Mr. Herrera and Mr. Cordova; correct?

 5         A.   Yes.

 6         Q.   So some of these blocks belong to Mr.

 7    Cordova?

 8         A.   Yes.

 9         Q.   Blocks of text.

10              Do you have any reason to disagree with me

11    that there are 21 unintelligible words from Mr.

12    Herrera on that single page of this transcript?

13         A.   I don't have any reason to disagree with

14    you.

15         Q.   And if you flip through the transcript, do

16    you have any reason to disagree with me that almost

17    every single page is like this?

18         A.   I agree.

19              MS. BHALLA:  Your Honor, I would like to go

20    ahead and move this exhibit into evidence.  I think

21    that the way we would do it is CH-A; is that correct?

22              THE COURT:  I think that's correct.

23              MS. BHALLA:  Okay.  And if I may take the

24    document from Agent Acee.

25              I'm going to move that into admission.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4136

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137

```
1              THE COURT:  Any objection?
2              MR. BECK:  No objection, Your Honor.  I
3    don't know if Ms. Bhalla intends to move the
4    recording in.  But, if not, then we will probably get
5    the recording entered in later.  There is no
6    objection to the transcript.
7              THE COURT:  All right.  Any other objection
8    or comment?  All right.  Then Carlos Herrera's
9    Exhibit A will be admitted into evidence.
10        Q.   I'm going to shift gears a little bit.  I'm
11   sorry, there is a lot to cover.
12             You mentioned when you first started your
13   testimony this morning that you were surprised when
14   Mr. Cordova told you that Mr. Herrera may be
15   involved; is that correct, when you got that
16   information from Mr. Cordova?
17        A.   Did I say that word?
18        Q.   I wrote it down.  I'd like to think I wrote
19   it down correctly.
20        A.   I like to think nothing surprises me.
21   Perhaps I said that.
22        Q.   Would it be fair to say that you didn't
23   have that information previously?
24        A.   Absolutely.
25        Q.   So this was the first time that you heard
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4137

```
 1    that Mr. Herrera may have been involved?
 2         A.   I might have read it in some of the old
 3    stuff, but it was the first time I recall someone, a
 4    live witness, if you will, or another SNM member
 5    telling me.
 6         Q.   So would it be fair to say it was the first
 7    sort of tangible grasp that you could get on Mr.
 8    Herrera in this case?
 9         A.   Related to the Molina homicide, yes.  I
10    think we had some leads or some information regarding
11    drug trafficking.
12         Q.   Okay.  And that's a fair distinction.  Just
13    in terms of the Molina homicide.
14         A.   Yes.
15         Q.   Okay.  And when you had that first meeting
16    with Mr. Cordova -- and I got a little confused about
17    that for the reason you explained that, when you look
18    at the 302s -- what are the other things called?
19         A.   1023s.
20         Q.   1023s.  You're going to have to bear with
21    me on those.  The dates are sort of different; you've
22    got three dates on there?
23         A.   Yes.  You should know on the 302s, there
24    are three dates, too.  It's confusing.
25         Q.   Okay.  But all of those initial meetings
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4138

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 139

```
 1    with Mr. Cordova were in January?

 2         A.   Yes.

 3         Q.   And how many of those meetings were there?

 4         A.   I think there were three.

 5         Q.   Okay.  And in any of those meetings, did

 6    Mr. Cordova tell you how or why he thought Mr.

 7    Herrera was involved in the Molina homicide?

 8         A.   Yes.

 9         Q.   Okay.  And what did he say to you?

10         A.   Well, what I recall is that he told us that

11    Mr. Herrera was an influential member in yellow pod,

12    and might have been a llavaro or the keyholder or the

13    pod boss.

14         Q.   Okay.

15         A.   He talked about the paperwork having been

16    brought down and given to Mr. Herrera.  And at that

17    point, I thought all that was good, but I wanted

18    recordings.

19         Q.   Okay.  Did you think that that information

20    was important, that he provided you in those meetings

21    in January?

22         A.   Yeah.  I mean, it was -- well, yes and no.

23    I mean, it's important that there is another guy from

24    the SNM telling me a story.  But where can we go with

25    this story?  That's when it becomes important to me.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4139

1       Q.   Well, would it be fair to say that the

2    information that you were provided prompted you to do

3    further investigation?

4       A.   Yes.

5       Q.   And in that sense the information was

6    important?

7       A.   Yes.

8       Q.   Was that information documented in any of

9    the 302s or 1023s that were a result of this January

10   meeting?

11      A.   Definitely not of the first meeting at MDC;

12   that I'll characterize as a recruitment, if you will.

13      Q.   Okay.

14      A.   I think the first report is the 7th, and

15   I'm not sure if that information is in there.

16      Q.   Would it help if you reviewed it?

17      A.   Sure.

18      Q.   Okay.  I'm going to have to see if I

19   brought that one up with me.  I did.

20           I'm going to hand you -- actually since

21   we're going through these, I'm going to hand you --

22   all right.  Here we go.  Basically, what I'm going to

23   hand you are the 302s or the 1023s that I believe to

24   be related to your initial conversations with Mr.

25   Cordova.  And I'm just going to ask you to take a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4140

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 141

 1    look at those.

 2         A.   Ma'am, I'm looking for references to yellow

 3    pod and Carlos Herrera and the murder?

 4         Q.   Correct.  And the first question I'm going

 5    to ask you actually is more -- are those the 302s or

 6    the 1023s that you generated as a result of your

 7    meetings with Mr. Cordova in January?  And to be

 8    perfectly fair, I may have handed you one that's not.

 9    So please take a look and make sure that those are

10    correct.

11         A.   I think that their report also is on point.

12    I think that's the same source.

13         Q.   Okay.  And did you get a chance to

14    review -- I think there are three of them.  Did you

15    get a chance to review all three?

16         A.   Yes.

17         Q.   Would it be fair to say that in one report

18    Mr. Cordova details some of the drug trafficking

19    issues we talked about earlier?

20         A.   Yes.

21         Q.   Okay.  Would it also be fair to say that

22    there is no information contained in those reports

23    that indicates that Mr. Herrera was involved in the

24    Molina homicide?

25         A.   I did not see a mention of that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4141

```
 1           Q.   Okay.  And those were the only documents
 2     that you generated after your meetings with Mr.
 3     Cordova.  Are there any other forms?  I mean, I don't
 4     know what all the names for -- are there any others
 5     that would have documented your initial meetings with
 6     Mr. Cordova?
 7           A.   I didn't generate any of these.
 8           Q.   Okay.
 9           A.   And to answer your question, as to if there
10     are other forms, I'd have to check that closed
11     informant file to see what's in there, and then the
12     SNM case file.
13           Q.   Is that the file that you said you wouldn't
14     have an objection to turning over, provided that you
15     get the permission from your superiors?
16           A.   Yes.
17                THE COURT:  Ms. Bhalla, would this be a
18     good time for us to take our lunch break?
19                MS. BHALLA:  Certainly, Your Honor.  Thank
20     you.
21                THE COURT:  All right.  We'll be in recess
22     for about an hour.  Have a good lunch.
23                (The Court stood in recess.)
24                THE COURT:  Let's everyone take their
25     seats.  I think everybody has got an attorney, a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4142

1   client.  Look around, make sure everybody has got

2   somebody.

3           It's a little warm.  If the lawyers want to

4   take off jackets or something, that's fine, go ahead.

5   We'll be working to try to reduce the heat.  It was

6   probably all that chicken in here that heated it up.

7   I had turkey from Walmart.  I feel jealous.

8           All right.  Mr. Acee, I'll remind you

9   you're still under oath.  Ms. Bhalla, if wish to

10  continue your cross-examination of Mr. Acee.

11          Mr. Mondragon is here.

12          MR. BECK:  Your Honor, we're going to be a

13  little unconventional with the Court's indulgence.

14  Everyone is sort of working on a tight timeline

15  today.  We have Mr. Cordova here in the courthouse.

16  His attorney has a hearing tomorrow afternoon at

17  1:00.  The way things have been going, we're going to

18  try to everyone work together to see if we can

19  finish.  We're going to have Special Agent kind of

20  stop here and redo the rest of Ms. Bhalla's

21  cross-examination and anyone else's.  But we think

22  it's an efficient use of everyone's time if we put

23  Mr. Cordova on the stand and try to get him done this

24  afternoon, if at all possible.

25          THE COURT:  All right.  Everybody in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4143

1    agreement with that?  All right.  Mr. Acee, you may

2    step down.

3            MR. BECK:  So we're going to work on

4    getting Mr. Cordova up here as soon as possible.  I

5    think the marshals are coordinating that as we speak.

6            THE COURT:  Hey, guys, let's talk a second

7    here.  Everyone be on best behavior when Mr. Cordova

8    comes in here, okay?

9            DEFENDANT TROUP:  Yes, sir.

10            MR. BECK:  To make --

11            THE COURT:  Let me make a new comments

12    here.  We've got to start practicing for the jury,

13    right?  There is going to be people walking into the

14    courtroom during the jury trial.  And I bet your

15    defense lawyers are going to tell you:  Look like

16    you're playing poker, you know.  Nothing happened,

17    and you want to be on your best behavior.  So I bet

18    I'm just echoing what your lawyers are saying.  But

19    let's do a practice run here, okay?

20            All right.  Mr. Beck.

21            MR. BECK:  To make an efficient use of the

22    Court's time, I believe that a couple of defendants

23    for this motion to suppress had the marshals execute

24    service of subpoenas this morning for some witnesses

25    to be here as early as this afternoon, or as late as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4144

```
 1    tomorrow.

 2             The attorney for New Mexico Corrections

 3    Department, their general counsel, contacted us, and

 4    German Franco, the Warden at PNM is unable to be here

 5    tomorrow because of some issues that he has.  He's

 6    unable to be here tomorrow.  So the United States --

 7    Corrections Department asked the United States to

 8    move orally to quash that subpoena for him.  I am

 9    doing that now.  I think there is good cause to quash

10    that subpoena, given that it was served this morning,

11    for him to be here tomorrow.  I have a sense with the

12    amount of witnesses that we will present this

13    afternoon and tomorrow morning, through tomorrow

14    afternoon, it's not going to put anyone at a

15    disadvantage.  I don't think that he would testify

16    tomorrow afternoon regardless.  But given the late

17    service, and given that Warden Franco cannot attend,

18    I think there is good cause to quash that subpoena

19    that was served on him this morning.

20             THE COURT:  Any objections to doing that?

21             MS. FOX-YOUNG:  Your Honor, I think it's

22    true that we may not need to call him, and there are

23    some other witnesses.  But we'd like to hold it open

24    for later, if we do decide.  I think --

25             THE COURT:  Do you want me to quash this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4145

 1    subpoena, and then I can reissue at the time that you

 2    need him?

 3              MS. FOX-YOUNG:  Yes, Your Honor.

 4              THE COURT:  All right.  Anybody else have

 5    any problem with that?  All right.  So the subpoena

 6    as to -- it's German Franco, right?

 7              MR. BECK:  Yes.

 8              THE COURT:  -- German Franco, will be

 9    quashed.

10              MR. BECK:  Thank you, Your Honor.

11              I just received an update from the marshals

12    that he should be here in about one minute or right

13    now.

14              THE COURT:  I think he's coming in the back

15    door here.  All right, Mr. Cordova --

16              THE WITNESS:  Do I stand?

17              THE COURT:  Yeah, why don't you stand.  And

18    before you're seated, Ms. Standridge will swear you

19    in.

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 147

```
 1                        BILLY CORDOVA,
 2          after having been first duly sworn under oath,
 3          was questioned and testified as follows:
 4                     DIRECT EXAMINATION
 5              THE CLERK:  Please be seated.  State your
 6    name for the record, spelling it.
 7              THE WITNESS:  Billy Cordova.  B-I-L-L-Y.
 8    Cordova, C-O-R-D-O-V-A.
 9              THE COURT:  Mr. Cordova.  Mr. Castellano.
10              MR. CASTELLANO:  Thank you, Your Honor.
11    BY MR. CASTELLANO:
12          Q.   Good afternoon, Mr. Cordova.
13          A.   Good afternoon.
14          Q.   Have you ever testified in court before?
15          A.   No, sir.
16          Q.   I'm going to ask you some questions, and
17    starting with where you were in January of 2016.  Do
18    you remember where you were?
19          A.   I believe in MDC, county jail.
20          Q.   Where is that located?
21          A.   Albuquerque, New Mexico, on the west side.
22          Q.   And what were you doing at the facility at
23    that time?
24          A.   I was waiting on sentencing for a trial I
25    had went to.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4147

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4148

```
 1         Q.    And do you remember about how long you had
 2   been at that facility?
 3         A.    Maybe about two months.
 4         Q.    And where had you been housed before that
 5   time?
 6         A.    At the PNM North, back and forth from
 7   Central, Los Lunas, CNM CF, back to PNM.
 8         Q.    When you say CNM CF, is that the Central
 9   New Mexico Facility?
10         A.    Yes, sir.  I would go about every two weeks
11   back and forth from motions.
12         Q.    And were those motions related to your
13   trial?
14         A.    Yes, sir.
15         Q.    And can you tell the Judge whether you were
16   convicted in that case?
17         A.    Yes, sir.
18         Q.    What was the crime that you were convicted
19   for?
20         A.    Manslaughter.
21         Q.    And are you currently incarcerated?
22         A.    Yes, sir.
23         Q.    Is it for that same crime?
24         A.    Yes, sir.
25         Q.    Now, during your time at MDC, did you ever
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4148

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 149

```
 1    meet somebody named Bryan Acee?

 2         A.   Yes, sir.

 3         Q.   How did you meet him?

 4         A.   He came and pulled me out, talking about a

 5    RICO Act; that he was looking at me for a RICO Act on

 6    the SNM.

 7         Q.   Did he say he was looking specifically at

 8    you or at the SNM in general?

 9         A.   At the SNM in general.

10         Q.   And did you expect to see him on that day?

11         A.   No, sir.

12         Q.   Tell us what happened when you walked into

13    the room with him.

14         A.   I remember he was sitting to the left, and

15    two other agents were sitting in front of me on the

16    other side, on the opposite side of the table.

17         Q.   And did they explain to you what was going

18    on at that time?

19         A.   Yes, sir.

20         Q.   And what did they tell you?

21         A.   They told me that they had just picked up

22    the SNM on a RICO Act, and they were doing a second

23    indictment, and that they were looking at me for a

24    RICO.

25         Q.   What was your response to hearing that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4149

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150

```
 1   information?
 2        A.   It took a while for it to set in, and I
 3   made the decision to cooperate with the FBI.
 4        Q.   Now, where were you in terms of -- at that
 5   time, were you an SNM Gang member?
 6        A.   I guess you could say, yeah.  But at heart,
 7   no.
 8        Q.   So let me ask you about that, then.  You
 9   said "at heart, no."  Where were you in your own mind
10   in terms of the SNM?
11        A.   I just didn't want nothing do with them
12   anymore.
13        Q.   So if that was the case, how did this
14   timing work out for you between your mindset of
15   wanting to get out of the gang and meeting someone
16   from the FBI?
17        A.   It was just luck, coincidence.
18        Q.   What did you agree to do at that first
19   meeting, and then maybe at later meetings?  Let's
20   start with that meeting.
21        A.   I agreed to get some wiretaps for them on a
22   murder that occurred, Javier Molina.
23        Q.   If you recall, did they ask you
24   specifically about the Molina homicide or just
25   murders in general?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4150

1        A.    They asked me about murders in general.

2   I'm the one that told them about the Molina murder.

3   Because I figured I was there in MDC when they had

4   did the first sweep.  And I was in Southern New

5   Mexico when the Molina murdered occurred, so I know

6   who was involved in it, and I knew who was sweeped up

7   and who was still left behind.  So I was honest with

8   them.  I was honest with them, tell you what I can

9   give you, but this is what it is.

10       Q.    Let me ask you this:  You said that you

11  knew who was swept up.  Does that mean you knew who

12  was charged initially?

13       A.    Yes.

14       Q.    And in your mind, did you think there were

15  some people who had not been charged who were part of

16  the Molina murder?

17       A.    Yes.  I knew, because when I was coming in

18  the middle of my trial, I seen everybody in there.

19  They were all in there.

20       Q.    And at that point who did you think was

21  missing from the Molina murder?

22       A.    Carlos Herrera and Rudy Perez.

23       Q.    Now, you said you were at Southern when the

24  Molina murder took place.  In which pod were you?

25       A.    I was in yellow pod, cell 116, on the top

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4151

```
 1   tier or -- yeah.
 2        Q.   And do you know in which pod the Molina
 3   murder occurred?
 4        A.   It occurred in blue pod.
 5        Q.   And so the Judge knows, where is the yellow
 6   pod in relation to the blue pod?
 7        A.   Right next to it.  Blue pod is the first
 8   pod when you come in, yellow pod is in the middle,
 9   and green pod is to your right.  So, yeah, it's right
10   next to my pod.
11        Q.   And was there any type of door or anything
12   that connected the two pods?
13        A.   Yeah, there is a two-tier separation doors
14   on the top tier and the bottom tier.
15        Q.   So, in other words, could you access the
16   blue pod from the yellow pod through a door?
17        A.   Yes, sir, that is how we communicate with
18   other inmates in the next pods.
19        Q.   Okay.  Now, you mentioned wiretaps of
20   people.  What do you mean by that term "wiretap"?
21        A.   I told them that I could get them talking
22   about the murder, and I agreed to cooperate and go
23   get it.
24        Q.   Now, if this was in January, about how soon
25   do you think it was before you were recording
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4152

```
 1    somebody?

 2         A.    February.

 3         Q.    And did you record somebody in that

 4    timeframe?

 5         A.    Yes, I recorded Rudy Perez at PNM North.

 6    It was in Q pod.  He was in 101 and I was in 102.

 7         Q.    And when you mentioned the numbers 101 and

 8    102, are those the cell numbers in that pod?

 9         A.    Yes, sir.

10         Q.    I'm showing you what's been admitted as

11    Rudy Perez' Exhibit B.  It's Bates stamped 28475 for

12    the record.

13         A.    Yes.

14         Q.    Okay.  Do you recognize what's on the

15    exhibit right now?

16         A.    Yes, yes, sir.

17         Q.    What is that?

18         A.    That is Unit 3A at PNM North.

19         Q.    And you mentioned one of the pods where you

20    recorded Mr. Perez.  Which pod was that?

21         A.    The first pod on the left.

22         Q.    So Q pod?

23         A.    Yes, sir.

24         Q.    Do you recall approximately where you were

25    and where Mr. Perez was?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4153

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4154

```
 1          A.   I was in cell 102 and Perez was in cell
 2     101.
 3          Q.   Do you know where -- approximately where on
 4     that picture those cells would be?
 5          A.   Yes, sir.  About the bottom left-hand
 6     corner.
 7          Q.   I'm going to highlight the screen here, put
 8     an arrow.
 9          A.   Yes, right there.  Right there.
10          Q.   And so you think there were two cells in
11     the corner?
12          A.   Yes, sir.
13          Q.   Top tier or bottom tier?
14          A.   Bottom tier.
15          Q.   And were you given any type of recording
16     device to capture your conversations?
17          A.   Yes, sir.
18          Q.   Okay.  I won't ask you to describe it for
19     us, but was it a device you were able to use to
20     record the conversations?
21          A.   Yes, sir.
22          Q.   And did you know how to turn it on and off?
23          A.   Yes, sir.
24          Q.   Was there any way for you to rewind or
25     delete --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4154

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

1        A.    No, sir.

2        Q.    -- conversations?

3        A.    No, there was only a button for on and off,

4    and that was it.

5        Q.    Once again, without describing the button,

6    was it easy to turn on and off, so that you wouldn't

7    record things by accident or cut things off by

8    accident?

9        A.    Yes, sir.

10        Q.    Tell us about when you were housed in Q

11    pod, what type of housing or classification level was

12    that?

13        A.    Level 6.

14        Q.    And tell us what it means to be in Level 6,

15    as best as you understand it.

16        A.    It's a max secured prison.  So anytime you

17    leave your cell, you got to get cuffed through a food

18    port, and you've got to be with a two-man escort, two

19    COs escort you either to the yard or shower, and that

20    is how you get escorted, in restraints, at all times.

21        Q.    So at this time were you able to move about

22    freely and talk to Mr. Perez?

23        A.    No.

24        Q.    How were you able to communicate with him?

25        A.    Through under the bunk in the cell.  There

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4155

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 154156

```
 1    is a ventilation system right there.  It's a heater.
 2         Q.   And so the Judge understands, how are you
 3    able to talk to people through the vents?
 4         A.   You are able to talk real good, real clear.
 5    There is two ways.  There is one on top, which is the
 6    ventilation system that keeps the air flow
 7    circulating in the cell, and the bottom one is a
 8    heater.
 9         Q.   And have you and other inmates been able to
10    communicate using the vents before?
11         A.   Yes, that's how we communicate without
12    talking on the tiers.
13         Q.   All right.  So other than speaking to Mr.
14    Perez through the vents, did you ever have a
15    face-to-face interaction with him?  Were you able the
16    move around that way?
17         A.   No, sir.
18         Q.   And do you remember approximately how long
19    you were housed next to Mr. Perez?
20         A.   To my recollection, I can't be right-on,
21    but about a month.
22         Q.   Do you remember approximately how many days
23    or times you were able to record him?
24         A.   To my recollection, between three, four, or
25    five.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4156

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157

```
 1        Q.   And just so we're clear, are we saying
 2   three, four, or five times, or days?
 3        A.   Days.
 4        Q.   If you can tell us about your interactions
 5   with Mr. Perez in terms of how you got him to start
 6   talking.  Did you guys know each other from before?
 7        A.   Yes.
 8        Q.   How did you know each other from before?
 9        A.   We were both SNM Gang members.  We gave
10   time in the same unit together.
11        Q.   About how long do you think you knew Mr.
12   Perez?
13        A.   Since 2009, in Las Cruces, New Mexico, in
14   the SNM CF.
15        Q.   When you say SNM CF, is that the Southern
16   New Mexico Correctional Facility?
17        A.   Yes, sir, it's a Level 4 facility there.
18        Q.   And what type of information did you think
19   you would be getting from Mr. Perez during your
20   conversations?
21        A.   About him giving the piece of steel from
22   his wheelchair to provide a shank to murder Javier
23   Molina.
24        Q.   Were you able to get that information from
25   him?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4157

```
 1        A.   Yes, sir.
 2        Q.   When you were recording him, did you try to
 3   put the device close to the vent to capture the
 4   conversation?
 5        A.   Yes, sir, I put it right on.
 6        Q.   Did you try to intimidate Mr. Perez in any
 7   way?
 8        A.   No, sir.
 9        Q.   Do you remember any discussions about him
10   either being a rat or people talking about him?
11        A.   Well, I would say pressure points, because
12   I can't go right-on and ask him about a murder case,
13   you know, what I'm saying?
14        Q.   Well, what, if anything, would be wrong if
15   you went directly to asking him about the Molina
16   murder?
17        A.   Well, it's a hear no, see no evil code we
18   live by.  So anything like heroin or cocaine or weed,
19   outspoken like that, something is wrong, do you know
20   what I'm saying?  So we use code words for
21   everything.  So what I was using was an indirect
22   question to get an honest answer, you get what I'm
23   saying?  I was using pressure points to get him to
24   reveal the truth.
25        Q.   Some of these conversations in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4158

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

```
 1    transcripts appear to start maybe mid-sentence.  What
 2    can you tell us about turning on the device to record
 3    conversations?
 4         A.   Well, the device I had had two AAA
 5    batteries.  I didn't know how long I was going to be
 6    there.  I didn't know what was going to be expected
 7    of me.  So it's not like I go to a 7-Eleven and buy
 8    batteries.  So I turned it on when I felt something
 9    needed to be recorded, and I turned it off when it
10    was just gibberish.
11         Q.   All right.  So when you turned it on, what
12    did you think you would be capturing?
13         A.   The details on him giving the shank to "Dan
14    Dan" Sanchez to sharpen, to do the murder on Javier
15    Molina.
16         Q.   So you touched on that a little bit ago.
17    Did you know how long you would be housed next to Mr.
18    Perez?
19         A.   No, I didn't know.
20         Q.   Do you know how long it would be before you
21    could maybe get new batteries?
22         A.   No.
23         Q.   Did you have concerns about conserving the
24    batteries?
25         A.   Very concerned.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4160

1    Q.   The allegation in this case is that you

2  gave Mr. Perez Suboxone before you spoke to him.  Can

3  you tell the Judge whether or not you ever gave him

4  Suboxone?

5    A.   No, Your Honor, I never gave Rudy Perez no

6  Suboxone.

7    Q.   Do you know what Suboxone is?

8    A.   Yes, sir.

9    Q.   Do you recall if you gave anything to Mr.

10 Perez during the time you were housed next to each

11 other?

12   A.   No, sir.

13   Q.   Just to clarify my last question:  I think

14 you asked you if you recalled giving him anything.

15 Did you give anything to Mr. Perez?

16   A.   No, he gave me some ear buds for an AM/FM

17 radio.  That was about it.  But I never gave him

18 nothing.

19   Q.   So it's your testimony that he gave you ear

20 buds, but you didn't give him anything?

21   A.   No.

22   Q.   As best as you could tell, did Mr. Perez

23 appear to be under the influence of Suboxone or

24 anything of that nature?

25   A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 164161

```
 1         Q.   Did his answers seem responsive to your
 2    questions?
 3         A.   Yes.
 4         Q.   Okay.  Now, after you finished the
 5    recordings with Mr. Perez, were you moved next to
 6    anyone else in this case?
 7         A.   Yes.
 8         Q.   Who was that person?
 9         A.   That was Carlos Herrera.
10         Q.   Now, was that in the same pod or a
11    different pod?
12         A.   No, it was a different pod.  It was a
13    different facility.  It was PNM South.  It was a
14    Level 4 facility.
15         Q.   And approximately how long were you housed
16    next to Mr. Herrera?
17         A.   Approximately, maybe a few weeks, a month
18    tops, I think.
19         Q.   And do you remember approximately how many
20    days you were able to record him?
21         A.   Between seven to eight days, probably about
22    a week, maybe a little over a week.
23         Q.   And how is it that you were able to talk to
24    Mr. Herrera?  Did you know each other from before?
25         A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4161

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 162

```
1         Q.   Where did you know him from?

2         A.   I knew him from the same facility, when we

3    were Level 5 inmates.  We used to have GED classes

4    together.  And then I knew him from the Level 4 in

5    the South.

6         Q.   Were you ever in the same pod with him at

7    the Southern New Mexico Correctional Facility?

8         A.   Yes, sir.

9         Q.   When was that?

10        A.   I was with him in 2009 to 2010, and I was

11   with him in 2013, 2014.

12        Q.   Were you in the same pod as Mr. Herrera or

13   a different pod when the Molina murder occurred?

14        A.   I was in the same pod with him.

15        Q.   So, based on your prior relationship with

16   him, did you feel that he would open up and talk to

17   you?

18        A.   Yes, sir.

19        Q.   And did he, in fact, do that?

20        A.   Yes, sir -- well, to a certain point.  He

21   wasn't really trying to say nothing too much, so I

22   got to him reveal other ways, you know what I mean?

23        Q.   Okay.  What do you mean he didn't appear to

24   want to say anything?

25        A.   At first, he didn't want to say anything.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4162

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4163

```
 1   But then I got him to admit it indirectly.
 2        Q.   And what do you recall he told you?
 3        A.   We were just talking about the tabla, and
 4   about who should be calling hits on rats, such as
 5   Javier Molina.  And how the tabla should be the ones
 6   to say what goes and what don't go.  So that's how I
 7   got him to implicate himself in the murder, because
 8   he was part of the tabla.
 9        Q.   If you can tell the Court what the tabla
10   is?
11        A.   It's a five-person direct board that calls
12   all policies and business transactions, murder
13   transactions, anything that goes on, makes the rules,
14   and does -- they're the ones that say:  What goes --
15   onda -- the onda, which is in the SNM Gang, they say,
16   "What goes and what don't go."
17        Q.   I'll ask you the same question about Mr.
18   Herrera.  Did you give him any drugs before talking
19   to him?
20        A.   No, sir.
21        Q.   Did you and Mr. Herrera exchange anything
22   during your time next to each other?
23        A.   I gave him some canteen, that was about it.
24        Q.   Be a little more specific in terms of what
25   you might give someone with canteen.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4163

1        A.    Canteen is prison store-bought food, nutty

2    bars, soups, chips, coffee; stuff like that.

3        Q.    How were you able to get those things to

4    Mr. Herrera?

5        A.    When I first got to the Level 4 facility

6    there, we were under investigation for the -- no,

7    for --

8        Q.    Was it another assault?

9        A.    Yeah, it was another assault on another SNM

10   member, Julian Romero.  That was his name.  So they

11   had us under investigation, because they didn't know

12   who could be housed with who, and they didn't know if

13   letting us out, there was going to be another

14   assault.  So during that time, we had food ports on

15   our doors and food ports are little holes that open

16   and lock, and there are latches.  And when the latch

17   opened for food, he threw me a bag tied to a line.  I

18   threw some food in it, and he pulled it back.  That

19   was about it.

20       Q.    Do you remember approximately how many

21   times that happened?

22       A.    Once.

23       Q.    I'm going to ask you about a conversation

24   that took place with Mr. Cordova and another person,

25   I believe named Dale Chavez?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4164

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165

1     A.    Yes, sir.

2     Q.    Do you remember that conversation?

3     A.    Yes, sir.

4     Q.    First of all, who is Dale Chavez?

5     A.    Dale Chavez is "Dreamer" from Albuquerque,

6  from a street gang, Valley Gardens.

7     Q.    And were you housed near Mr. Herrera, where

8  were you housed in relation to where he was?

9     A.    Right next to him.

10     Q.    And during that time -- since you said it

11  was Level 4, what kind of movement did you guys have

12  at that point?

13     A.    At that time, we were barely getting ready

14  to come out on tier time, that's for two hours, we

15  just come out on the pod and that's it.

16     Q.    So there were times that you were able to

17  see Mr. Herrera face-to-face?

18     A.    Yes.

19     Q.    Did you guys exchange anything during that

20  timeframe?

21     A.    No, sir.

22     Q.    So if you and Mr. Herrera were next to each

23  other, where was Mr. Chavez located?

24     A.    Directly upstairs from me, in the cell

25  upstairs directly up.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4166

```
 1        Q.   And the times you recorded Mr. Herrera, did
 2   you have a recording device?
 3        A.   Yes, sir.
 4        Q.   And how did you two communicate at that
 5   point?
 6        A.   Underneath the bunk in the heater, the same
 7   way me and Perez did.
 8        Q.   And, as best as you could, did you try to
 9   get the recording device near the heater?
10        A.   Direct on.
11        Q.   During the time that Mr. Chavez was there,
12   were you also able to capture part of the
13   conversation with him?
14        A.   Yeah, but it was a different vent.  It was
15   the ventilation, the one that circulates the air.  So
16   that one is directly on top of the desk.
17        Q.   So you have a lower vent to talk to Mr.
18   Herrera, and then a higher vent to talk to people
19   above you?
20        A.   Yes, sir.
21        Q.   I'm going to show you what's DeLeon Bates
22   stamp 20999.  And I want to ask you about a
23   conversation you had with Mr. Chavez and Mr. Herrera.
24   The time that you finally reached the facility, about
25   how long had it been since you were on the streets?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4166

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167

```
 1        A.   I would say approximately a year and a few
 2    months.
 3        Q.   Now, this is a conversation that starts
 4    mid-sentence.  And do you see the discussion about --
 5    well, you say, "They're still going for five, 10, or
 6    12 out there, no?"
 7        A.   We're talking about Suboxone strips.
 8        Q.   So on that occasion were you actually
 9    talking about drugs?
10        A.   Yes, sir.  I was talking about buying drugs
11    from him.
12        Q.   What was the purpose of having that
13    discussion with him?
14        A.   Because I didn't know what Bryan Acee was
15    going to have me do next.  So I was just trying to
16    collect as much things as I can for the FBI.
17        Q.   So talk about drugs could involve drug
18    trafficking?
19        A.   Yes, sir.
20        Q.   Tell us about this conversation.  You seem
21    to be going back and forth on prices, five, 10, and
22    12 are some of the numbers you mentioned.
23        A.   Those are the cost per strip.
24        Q.   So having been on the streets about a
25    little more than a year before that, were you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    familiar with the drug prices?

2        A.   Yes, sir.

3        Q.   And was this discussion related to you

4    having given any drugs to Mr. Herrera?

5        A.   No, sir.

6        Q.   On the next page, DeLeon page 21000, at the

7    top of the page Chavez says -- calls out the name

8    "Lazy."  Do you know who that person is?

9        A.   Yes, sir, that's Carlos Herrera.

10       Q.   At that point, were you and Mr. Chavez and

11   Mr. Herrera able to communicate with each over?

12       A.   Yes, sir.  That was the top vent above the

13   desk.

14       Q.   Okay.  On that same page are you the person

15   identified as the "CHS" on this?

16       A.   Yes, sir.

17       Q.   Do you see where it says, "Are you crashing

18   out, 'Lazy'?"

19       A.   Yes, sir.

20       Q.   What are you asking Mr. Herrera at that

21   point?

22       A.   Is he going to sleep.

23       Q.   And do you see where Chavez asks him or

24   asked the question:  "He's over there doing bad,

25   huh?"

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4168

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 169

```
1        A.   That means he ain't got no drugs.

2        Q.   Now, explain that to someone who doesn't

3   understand, when Chavez says someone is doing bad,

4   what does that mean?

5        A.   He wasn't high, so he was doing bad.  So

6   like if you're doing good, means you're high.  That's

7   the terms we use.  When we talk about people, we can

8   say:  "That guy is doing good in the streets."  That

9   means he's out there doing the most, robbing,

10  jacking, doing whatever he can for the onda, to

11  further our goals in the onda.  At that point what we

12  were talking about doing bad was not having any

13  drugs.  So you're doing bad is when you're not

14  feeling good, we didn't have no drugs.  We weren't

15  feeling good, in other words.

16       Q.   Had you had drugs at the time, would you

17  have been using them?

18       A.   Of course.

19       Q.   Why do you say that?

20       A.   Because I'm an addict.  And I would

21  probably have been giving them some, too.  I'm just

22  being honest.

23       Q.   About how long do you think you were housed

24  next to Mr. Herrera?

25       A.   Maybe around a month or so.  Maybe a little
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4170

1   over a month.

2        Q.   And if you were with him that period of

3   time you captured maybe a little more than a week,

4   what else were you doing or talking about during that

5   timeframe?

6        A.   I was trying to get him to talk about the

7   Molina murder.  And he wouldn't go into it directly.

8   So I had to get it from him indirectly by getting him

9   to talk about the SNM, the organization, how he's on

10  the tabla, and how the tabla sees things should be

11  done for onda, and how shots should be called.  That

12  was it.

13            MR. CASTELLANO:  May I have a moment, Your

14  Honor?

15            THE COURT:  You may.

16       Q.   You mentioned these words a few times.  But

17  just to clarify the tabla, what are you referring to?

18       A.   The tabla is the five-man desk that calls

19  any shot, such as a murder.  They're the only ones

20  that can call that shot on another brother.  Anybody

21  else hits a brother without probable cause, could be

22  held accountable by the tabla.  So the tabla is the

23  one that issue out all the discipline actions, such

24  as violations, people getting beat up for, you know,

25  breaking policies or regulations, rules of onda, to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

```
 1    murders, to how the whole structure is ran.
 2         Q.   So when you get Mr. Herrera to talk about
 3    hitting snitches, is that something the tabla would
 4    approve?
 5         A.   Yes, of course.
 6         Q.   And he was a member of the tabla?
 7         A.   Yes, sir.
 8         Q.   You mentioned the onda again.  Who are you
 9    referring to when you use the word "onda"?
10         A.   Onda, it's a term used is destiny.  It's
11    our -- what we use for the SNM, supposed to be our
12    destiny.  So that's what I use when I say that, the
13    SNM.
14         Q.   Now, in terms of any instructions given to
15    you, were you instructed to take advantage of any
16    potential psychological or mental problems that Mr.
17    Perez may have had?
18         A.   What do you mean?
19         Q.   Basically, were you instructed to take
20    advantage of any problems that Mr. Perez may have, in
21    order to get statements from him?
22         A.   No, sir.
23         Q.   Did you, in fact, take advantage of any
24    disabilities he may have had in order to get
25    statements from him?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4171

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172

```
 1        A.   No, sir.

 2        Q.   The same question when it comes to Mr.

 3   Herrera.  Were you instructed to take advantage of

 4   any issues or disabilities that he may have had?

 5        A.   No, sir.

 6        Q.   And did you, in fact, do that?

 7        A.   No, sir.

 8        Q.   Going back to your movement next to Mr.

 9   Perez, did you know when you were going to be moved

10   next to him?

11        A.   No, sir, just spur of the moment.

12        Q.   So how much notice did you have before you

13   were moved from your location at the time next to Mr.

14   Perez?

15        A.   Probably about an hour.

16        Q.   And same question regarding Mr. Herrera.

17   Did you know at what point you might be moved next to

18   him?

19        A.   About the same.

20        Q.   In other words, did people share with you

21   details of the operation, about when you might be

22   moved or where?

23        A.   No.  They would just tell me on spur

24   moment.

25        Q.   Now, based on things you said to the FBI,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4172

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 173

1    was it your understanding that at some point you

2    might be placed next to either of those two

3    gentlemen?

4         A.   I just -- like I said, it was a spur moment

5    thing.  Just here, use this.  You said you can get

6    this, you know what I mean?  I was given the rules

7    when he talked to me, told me they don't lie, they

8    don't give us drugs, don't entrap people.  It's all

9    about being honest.  So what he wanted was the truth,

10   plain and simple.  That's what Bryan Acee said.  So

11   he gave me a task and I followed it through.

12              MR. CASTELLANO:  May I have a moment, Your

13   Honor?

14              THE COURT:  You may.

15              MR. CASTELLANO:  Thank you, Your Honor.  I

16   pass the witness.

17              THE COURT:  Thank you, Mr. Castellano.

18              Are you going to take the lead, Ms. Bhalla?

19              MS. BHALLA:  Yes, Your Honor.  Thank you.

20                        EXAMINATION

21   BY MS. BHALLA:

22        Q.   Good afternoon, Mr. Cordova.

23        A.   Good afternoon, Miss.

24        Q.   My name is Carey Bhalla.

25        A.   Nice to meet you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4173

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 174

```
 1        Q.    Nice to meet you also.

 2              Before you came to court today, did you

 3   know what you would be asked to testify about?

 4        A.    To be honest with you, no.  I just got

 5   transferred over here.  Last night I got to CNM CF.

 6   I didn't even know this was coming.

 7        Q.    Did anybody go out to speak you to last

 8   night?

 9        A.    I just spoke to my lawyer.  He told me this

10   is what it's going to be, and this is what we're

11   doing.

12        Q.    Did he tell you what the conversation would

13   be about today?

14        A.    Yes, ma'am.

15        Q.    And who transported you here this morning?

16        A.    I believe correctional officers from CNM

17   CF.

18        Q.    Did you recognize any of them?

19        A.    No, ma'am.

20        Q.    Okay.  And I wanted to ask you a little bit

21   about some of the housing issues that Mr. Castellano

22   was asking you about.  You were housed in Las Cruces

23   or Otero during the Molina homicide?  Where were you

24   housed during the Molina homicide?

25        A.    I was in Southern New Mexico Correctional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4174

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4175

```
 1    Facility.

 2          Q.   Sorry, I was thinking of now, and not back

 3    then.  So you were at Southern?

 4          A.   Yes, ma'am.

 5          Q.   Okay.  And you were in the yellow pod?

 6          A.   Yes, ma'am.

 7          Q.   Okay.  And you were talking a little bit

 8    about how, even though you guys were on Level 4, you

 9    were on lockdown?

10          A.   No, ma'am, I was at the South.

11          Q.   At South?

12          A.   Yes, ma'am.

13          Q.   How were you able to move around, and what

14    was life like for you when you were at Southern

15    during the Molina homicide?

16          A.   We're on tier time.  We were out all day at

17    that time.  The Secretary of Corrections had came

18    down and pretty much said that we'd been doing good,

19    we'd been earning our privileges back.  And we were

20    on a step process routine, because of what kind of

21    individuals we were.

22          Q.   What does that mean?

23          A.   We were in a level program.  It goes based

24    on your behavior.  It's based on the privileges

25    you're allowed to get.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  What happened after the Molina
 2   homicide, in terms of how you guys were housed, or
 3   what things were like for you then?
 4        A.   It was -- you know, they came in, they did
 5   their investigation, they shook everybody down, they
 6   looked for wilas, anything that can help them with
 7   the investigation.  And that was it.  Then we were
 8   kept on lockdown for a little bit.
 9        Q.   How long were you kept on lockdown?
10        A.   I got out in April, so I can't tell you.
11        Q.   Where did you go in April?
12        A.   I went home.
13        Q.   Okay.  You got released?
14        A.   Yes, ma'am.
15        Q.   Did you get let out of the lockdown before
16   you went home?
17        A.   No, ma'am.
18        Q.   Okay.  And what was lockdown like when you
19   were at Southern?
20        A.   Like any other lockdown.  You just get your
21   three meals a day, you get your canteen in your cell,
22   you watch TV in your cell, you listen to radio in
23   your cell.  It's all in your cell.  You get 23 hours
24   a day, you get five days of rec.  You get your
25   showers five days a week.  That's it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4176

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 177

```
 1          Q.    All right.  Do you have any tier time?
 2          A.    No, ma'am.
 3          Q.    What about rec time?  I missed that, I'm
 4    sorry.
 5          A.    Yeah, you get one hour five days a week.
 6          Q.    One hour five days a week.  And when you're
 7    out on rec, are you by yourself or are there people
 8    out there?
 9          A.    No, ma'am, we're in cages.
10          Q.    You're in cages in the rec room?
11          A.    Yes, ma'am.
12          Q.    So it's a cage outside?
13          A.    Yes, ma'am.
14          Q.    How big is the cage?
15          A.    Probably about 7 feet by 7.  You're in
16    there by yourself.  That's only when we were on
17    Interim Level 6 Status.  That's why.
18          Q.    And it's called Interim Level 6?
19          A.    Yes, ma'am.
20          Q.    Is it really rec time?  I mean, what's that
21    like?  Do you get to move around much?
22          A.    Well, for individuals that are murdering
23    each other, that's the best they can do.
24          Q.    Well, I understand that.  But I mean, does
25    it feel like actual rec time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4177

1       A.   Yeah, we went outside, pull a bar, a bar in

2   your rec cage.  You get to talk to your friends out

3   there.  It's rec time.

4       Q.   How do you get to talk to them if you're in

5   a cage?

6       A.   Through the cage.

7       Q.   Are they in other cages?

8       A.   Yes, ma'am.

9       Q.   How many cages are outside?

10      A.   About approximately, I believe, 12.

11      Q.   Twelve?

12      A.   Twelve cages.

13      Q.   And they're all about the same size?

14      A.   Yes, ma'am.

15      Q.   Do you know if Carlos was put on Interim

16  Level 6 during that time as well?

17      A.   We all were.

18      Q.   Okay.  And was he still there when you were

19  released?

20      A.   Yes, ma'am.

21      Q.   And was he still on lockdown when you were

22  released?

23      A.   Yes, ma'am.

24      Q.   After the Molina homicide, did Carlos say

25  anything to you about the homicide?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4178



Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

```
 1        A.   Well, we would all -- he told me before, so
 2   I knew what was going on.  And when we were all out
 3   there in the yard, pretty much everybody was trying
 4   to keep quiet.  But there was things being said.
 5        Q.   Can you give me some details?
 6        A.   That it was about time that (speaks
 7   Spanish) went.  Excuse my language.  So what it means
 8   in English, "It's about time that piece of S went."
 9        Q.   Okay.  And who said that?
10        A.   A few guys.
11        Q.   Did Carlos Herrera say that?
12        A.   Well, they were saying it towards him.
13        Q.   Towards Carlos?
14        A.   Yes, ma'am.
15        Q.   But you never heard Carlos say that?
16        A.   Well, he was the one that called it.
17        Q.   How do you know he was the one that called
18   it?
19        A.   Because the order came out from the hole.
20        Q.   How do you know that he's the one who
21   issued the order from the hole?
22        A.   Because I was right there when it was going
23   on.
24        Q.   And what did you see or what did you hear
25   when it was going on?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4179

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4180

```
 1         A.   I seen paperwork being passed around.  And
 2    he told me, "Get on your phone, call your people,
 3    because we're about to go on lockdown."
 4         Q.   Who said that?
 5         A.   Carlos Herrera.
 6         Q.   What paperwork did you see?
 7         A.   It was some paperwork on Javier Molina,
 8    something about a burglary and Jesse Sosa, something
 9    about the cop, related to heroin, was going to book
10    him on a PV.
11         Q.   Did you read it?
12         A.   Yes, ma'am.
13         Q.   Who all read it?
14         A.   Pretty much everybody Carlos thought was
15    important to see it.
16         Q.   Do you know who brought the paperwork in?
17         A.   It had already been there.  It had already
18    been there, old set of paperwork, and then a new set
19    of paperwork came with Archie and "Marijuano," and
20    they pushed the issue when they were in orientation
21    to do it.
22         Q.   And when did that happen?
23         A.   Around -- it happened within hours.  They
24    arrived, and it happened within a day; maybe at most,
25    two days, if that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4180

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 181

```
 1         Q.   I'm going to break this up a little bit.
 2    So you said there was old paperwork?
 3         A.   Yes, they were extorting the guy for drugs.
 4         Q.   Say that again.
 5         A.   They were extorting him for drugs.
 6         Q.   Okay.  Tell me about -- when did the old
 7    paperwork come down?
 8         A.   Been there for two years.
 9         Q.   Do you know who brought that paperwork?
10         A.   No.
11         Q.   And you said they were extorting him for
12    drugs.  Who they were extorting for drugs?
13         A.   Molina.
14         Q.   Molina.  And what was in that paperwork
15    that led you to believe they were extorting him for
16    drugs?
17         A.   Him ratting on Jesse Sosa, he spoke to the
18    cops.  See, in the SNM, we have a no-talk policy to
19    police officers.  Basic -- a basic sentence, even if
20    you're not ratting, you're helping an agent with his
21    investigation.  That's still talking.
22         Q.   You know what, do me a favor, if you don't
23    mind.  I think what's happening is you're getting
24    just a little bit close --
25         A.   Sorry about that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   No, that's okay.  It gets a little muffled

2   when you're too close to it.

3           So, can you repeat that?  I'm sorry?

4      A.   There is a no-talk policy to cops.  And the

5   way he did, he said, This is where Jesse Sosa was,

6   the last time I seen him, and that was about it.

7      Q.   Okay.  And so that paperwork, I guess, no

8   one ever acted on it?

9      A.   Well, it was because he was hitting drugs,

10  and they seen they can extort him.  But once "Pup"

11  got locked up, "Pup" brought it to the

12  administration, stating:  If you let me out, I'll put

13  a stop to all hits, all green lights.  And when that

14  didn't happen, he sent the order out to "Lazy" to

15  handle it.  And "Lazy" was getting too lazy to --

16     Q.   To handle it?

17     A.   Yes.  And he was getting pressure by all

18  sides saying, Hey, you're on the tabla, you got to

19  handle this.

20     Q.   And that was with the old paperwork or the

21  new paperwork?

22     A.   The new paperwork.

23     Q.   Okay.  I'm going to go back.  Let's stay on

24  the old paperwork for a while, if that's okay with

25  you.  We'll get to the new paperwork.  But I'm still



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4182

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4183

```
 1    a little confused.  With the old paperwork --
 2        A.   It's the same paperwork.
 3        Q.   Okay.  So that paperwork came down two
 4    years previously?
 5             MR. CASTELLANO:  Your Honor, I object to
 6    relevance at this point.  We're not talking about the
 7    recordings, or how the recordings took place.
 8             THE COURT:  What's the relevance of this to
 9    the suppression motion?
10             MS. BHALLA:  Your Honor, I think what we're
11    trying to establish is -- part of what we're trying
12    to establish is what information was provided before
13    they went in to do the recordings, and what
14    information they were trying to obtain, and what
15    lengths -- what methods they would use to obtain that
16    information.  And I think that one of the things that
17    may be relevant for the Court is how much that
18    information is consistent and how much that
19    information is inconsistent.
20             THE COURT:  Well, isn't the real focus here
21    on how voluntary or involuntary the statements that
22    Mr. Herrera and Mr. Perez gave?  It seems to me going
23    back up that way is getting us focused on things
24    that's not terribly important.
25             MS. BHALLA:  I would say, Your Honor, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4183

1    what he knew is relevant to what he was able -- or

2    what tools he would need to utilize to gather more

3    information.  So, for example, if he didn't have a

4    lot of information prior to this, he may be more

5    inclined to use more severe methods to get the

6    information that was promised.  And how that

7    information differs, when he's next to Carlos, or

8    when he's next to Rudy, versus his original

9    knowledge, I think can show -- give the Court some

10   indication of what these informants were doing in

11   order to extract information.

12         THE COURT:  Well, I'll give you a little

13   leeway, but not much here, because I think we're

14   going too much up the Government's food chain.  We

15   need to be looking more at what Mr. Herrera and Mr.

16   Perez were thinking and doing.

17         MS. BHALLA:  Okay.  I understand, Your

18   Honor.  I'll try to wrap this up.

19    Q.   I want to go back to -- so let me make sure

20   I understand this correctly, okay.  The old paperwork

21   was the same paperwork as the new paperwork?

22    A.   To my knowledge, yes.  And when the new

23   paperwork got there, it got there with two different

24   individuals that pushed the issue for him to be hit.

25    Q.   Tell me a little bit more about that.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4185

```
 1          A.   They just said:  Here it is.  What's taking
 2     so long, "Lazy"?  You've got the order to handle
 3     this.  Why haven't you handled this?  So "Lazy" went
 4     on and passed the order for him to get hit.
 5          Q.   Who did he pass the order to?
 6          A.   "Dan Dan" Sanchez -- they all agreed.  "Dan
 7     Dan" Sanchez, Carlos Herrera, Juan Mendez, "Big
 8     Shadow" and "BB" were all in the tabla.  And that's
 9     what happened.  They pushed the issue for him to get
10     hit.
11          Q.   Who brought the paperwork down?  I think
12     you already answered that, and I'm sorry.
13          A.   Archie and "Marijuano."
14               MR. CASTELLANO:  Same objection, Your
15     Honor.
16               MS. BHALLA:  I'm moving on.
17          Q.   You testified earlier that you first began
18     meeting, or the first meeting that you had with Agent
19     Acee was in January; is that correct?
20          A.   Yes, ma'am.
21          Q.   And how long had you been in custody at
22     that point?
23          A.   About a year and three months.  A year and
24     two months -- a year and a month.
25          Q.   So you'd been in custody a year and a half?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4185

```
 1          A.    A year and a month.

 2          Q.    A year and a month, sorry.  So you'd been

 3    in custody a year and a month the first time you met

 4    with Agent Acee?

 5          A.    Yes, ma'am.

 6          Q.    And am I right that STIU brought you in to

 7    meet with Acee?  Who brought you in to meet with

 8    Acee?

 9          A.    STIU Gerardo.

10          Q.    Who did you say?

11          A.    STIU Gerardo at MDC county jail.

12          Q.    Okay.

13          A.    That's in Albuquerque, New Mexico.

14          Q.    And do you remember if any other officers

15    were present?

16          A.    I don't remember.

17          Q.    Okay.  Do you remember how many people were

18    in the room?

19          A.    All I know is there was two agents with

20    Bryan Acee, and that was it.

21          Q.    Okay.  Do you know if they were male or

22    female?

23          A.    They were all male.

24          Q.    Did you give Agent Acee any information at

25    that initial meeting, the very first one?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4186

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 187

```
 1          A.   I told him what I could do for him on the
 2    Molina murder.  And what I was willing to do for him
 3    was work for him and get wiretaps on murders.  If I
 4    can get people talking about old murders, new
 5    murders, whatever, just murders.
 6          Q.   Okay.  So you didn't tell him that you were
 7    going to tie Carlos Herrera and Rudy Perez into the
 8    Molina homicide?
 9          A.   Yes, I did.
10          Q.   Okay.  And how exactly did you tell him
11    that?
12          A.   I told him there is two people that still
13    haven't been convicted on that murder.
14          Q.   Okay.
15          A.   And he asked me who, and I told him.
16          Q.   Did you give him any other names?
17          A.   At that time, no, ma'am.
18          Q.   Okay.  And when did you meet with him
19    again?
20          A.   Approximately two days later.
21          Q.   And still at MDC?
22          A.   Yes, ma'am.
23          Q.   Okay.  And what happened at that meeting?
24          A.   I told him what I could do for him.  And he
25    explained to me more or less the policies of the FBI.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4187

1    He said that they don't give me drugs to give people.

2    They don't want lies.  They don't want -- what they

3    want is the truth.  They don't create perjury, or

4    none of that, so they want the truth.  If I can't get

5    them the truth on murders, then there is no reason

6    for him to work with me.

7         Q.   So did Agent Acee specifically tell you he

8    wasn't going to give you drugs?

9         A.   Yes, he explained the policies.  He said

10   the FBI don't give people drugs to go do things with

11   drugs.  They don't -- ran me down the policies -- if

12   you're going to work, this is how it has to be.

13        Q.   Okay.  Did you tell Agent Acee that you

14   wanted drugs?  What prompted him to give you that --

15   to tell you that?

16        A.   Probably just running me down the policies.

17   That way, I wouldn't do something that would

18   jeopardize his case.

19        Q.   Okay.  What was your agreement?  If you

20   provided the information, what were you going to get

21   out of it?

22        A.   Immunity to anything that I had ties with

23   the SNM.

24        Q.   So you didn't want a reduction in sentence?

25        A.   I'm not asking for nothing.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4188

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4189

1        Q.    You didn't ask him for a single thing?

2        A.    No, ma'am.

3        Q.    Okay.  You testified previously that you

4    were next to Rudy Perez first?

5        A.    Yes, ma'am.

6        Q.    And then you got moved next to Carlos

7    Herrera afterwards?

8        A.    Yes, ma'am.

9        Q.    So you weren't next to them at the same

10   time?

11       A.    No, ma'am.

12       Q.    Did you meet with Agent Acee again after

13   that second meeting, after he gave the instructions?

14       A.    After he gave me the instructions?  What do

15   you mean?  Clarify that question.

16       Q.    Well, we talked about the first meeting and

17   the second meeting.  And the second meeting you

18   indicated that he sort of told you what the rules

19   were, if you will.  Is that fair to say?

20       A.    I passed on the recordings to an STIU

21   officer, and he gave it back to Bryan Acee.

22       Q.    How many times did you meet with Agent Acee

23   before you were given the recorder?

24       A.    One time.

25       Q.    So you only met with him one time prior to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4189

```
 1    getting the recorder?
 2         A.   Yes, ma'am.
 3         Q.   Was it a wire, or was it like a little
 4    hand-held recorder?
 5         A.   It was a hand-held little box that you turn
 6    off and on, had AAA batteries.
 7         Q.   Okay.  When you were placed next to Carlos,
 8    did anyone ever search your cell?
 9         A.   Yes, ma'am -- no, not Carlos.  When, yes,
10    the STIU went in there, they acted like they searched
11    my cell, and they left a recording device.
12         Q.   Explain to me how you got the recording
13    device?
14         A.   That was with Perez.  Cupit, STIU Cupit,
15    went into my cell, acted like he was searching it.
16    He left the recording device for me.
17         Q.   Okay.  So you got two separate recording
18    devices for each -- one for Rudy Perez, one for
19    Carlos Herrera?
20         A.   From my recollection, it was two different
21    times, yes.
22         Q.   Okay.  So the first time was for Rudy
23    Perez?
24         A.   Yes, ma'am.
25         Q.   Okay.  And I will probably let Mr. Villa
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4190

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4191

```
 1   ask you about that, okay?  I'm going to ask you about

 2   the recording device that you were given with Carlos,

 3   okay?  When were you given the recording device for

 4   Carlos?

 5        A.   The same day I arrived to the South.

 6        Q.   The same day you arrived to South, okay.

 7   And how did you get the recording device then?  Is

 8   that when Cupit gave it to you?

 9        A.   Cupit gave it to me then.

10        Q.   And it was under the guise of a cell

11   search?

12        A.   No, ma'am.  He gave it to me when I was

13   entering into the cell.

14        Q.   Okay.  So he just handed it to you?

15        A.   Yes, ma'am.

16        Q.   Where were you?

17        A.   I was coming back from, I believe, court at

18   that time.

19        Q.   So did he give it to you on the van?

20        A.   Yes, ma'am.  When he was strip searching

21   me, he gave it to me.  And I took it back with me to

22   the unit.

23        Q.   Okay.  And did any of the correctional

24   officers know that you had it?

25        A.   No, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4192

```
 1        Q.    Who knew that you had it besides Acee and

 2   Cupit?

 3        A.    Nobody.

 4        Q.    And how long did you have it?

 5        A.    About two or three weeks.

 6        Q.    Okay.  And how many times do you think that

 7   you recorded Carlos?

 8        A.    Probably about seven, eight times, if not

 9   more.

10        Q.    Seven or eight times?

11        A.    That's a lot.

12        Q.    Over the course of, you said, two weeks?

13        A.    Yes, ma'am, about two or three weeks.

14        Q.    Two or three weeks?

15        A.    From my recollection.

16        Q.    During the time that you had the recorder

17   in your cell, with Carlos next to you, did anybody

18   ever -- did you ever turn the recording device in

19   periodically, or did you have --

20        A.    No, ma'am.  I had it the whole time.

21        Q.    Okay.  And during the time that you were

22   next to Carlos, did anyone search your cell?

23        A.    Yes, ma'am.

24        Q.    Who searched your cell?

25        A.    By that time STIU had already came and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4192

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 193

1    picked up the recording device on "Lazy," you get

2    what I'm saying?

3         Q.   Yes.

4         A.   And they'd given me a second recording

5    device.  We had switched it out through the trays.

6         Q.   Through the food trays?

7         A.   Yes, ma'am.  Then after that, they came and

8    they searched, the other COs, and they found the

9    second recording device I had for "Lazy."  At that

10   time they transported me out of there.

11        Q.   Okay.  So during the time that you had the

12   first recording device, no one searched your cell?

13        A.   No, ma'am.

14        Q.   And no one came to check it?

15        A.   No, ma'am.

16        Q.   And you didn't have any conversations with

17   Acee?

18        A.   No, ma'am.

19        Q.   And you didn't have any conversations with

20   Cupit, or anybody from STIU?

21        A.   No, ma'am.

22        Q.   Okay.  And then you got a second device

23   while you were still next to Carlos?

24        A.   Yes, ma'am.

25        Q.   And was that device the same, or was it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4193

```
 1   different?

 2        A.   More or less the same.  It had AAA

 3   batteries, and it had an on and off button.

 4        Q.   Did you look to see if there was date on

 5   it?

 6        A.   No, ma'am.  It was just all silver.

 7        Q.   Silver.  Did it have a digital display?

 8             MR. CASTELLANO:  Objection, Your Honor.

 9   May I ask that the witness not answer questions

10   related to the device itself.

11             THE COURT:  Well --

12             MR. BECK:  Your Honor, if I may, I think we

13   may tread lightly.  I think his answer, I expect,

14   will be the same as what we heard from Special Agent

15   Williamson.

16             THE COURT:  I'm not sure I heard the answer

17   to this.

18             MR. BECK:  I think I elicited that

19   testimony with Special Agent Williamson.

20             THE COURT:  Okay.  All right.  Why don't we

21   take these one at a time, so we -- if we do this:  Is

22   there any objection to this specific question?

23             MR. BECK:  There is not, Your Honor.

24             THE COURT:  Answer this question.  Then

25   we'll take them one at a time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4194

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 195

```
 1        A.    To my recollection, I can't remember.

 2        Q.    Okay.  So how did you know it was

 3   recording?

 4        A.    Because when you hit the switch, the light

 5   would beep, and then you would wait for it to go off.

 6   The light would go red, then you wait for it to go

 7   off, then you would start recording.  And when things

 8   were being said, the light, it will go off and on.

 9   So you knew when things were being said.  That's how

10   you knew, I could hear them, you know what I'm

11   saying?

12        Q.    Did it make an actual noise?

13        A.    To my recollection, kind of like a little

14   hmmmm, kind of thing, but real dim.

15        Q.    Like the noise of a motor?

16        A.    Like a recorder, like when you're hearing a

17   recorder on.  And when someone would speak, the light

18   would flash so you knew that it was catching what

19   they were saying.

20        Q.    So the light would flash, but it wasn't

21   making a noise with the flashing?

22        A.    No.

23        Q.    Okay.  And the times that you were talking

24   to Carlos, did you notice that the light was

25   flashing?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4195

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 196

```
 1          A.   Yes, ma'am.

 2          Q.   Okay.  So you're pretty confident that the

 3     conversations were recorded?

 4          A.   Yes, ma'am.

 5          Q.   And were you pretty close to him in

 6     terms -- you guys were communicating through the

 7     vent?

 8          A.   Yes, ma'am.

 9          Q.   So did you hold the recording device right

10     up to the vent?

11          A.   Yes, ma'am.

12          Q.   And could you understand everything that

13     Carlos was saying?

14          A.   Yes, ma'am.

15          Q.   And you felt that it was easy to

16     understand?

17          A.   Yes, ma'am.

18          Q.   Okay.  And tell me again how you got the

19     second device.

20          A.   I got the second device through the food

21     tray.

22          Q.   Through the food tray?

23          A.   Yes.

24          Q.   And did you -- was it sort of a

25     simultaneous exchange --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4196

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4197

```
 1        A.   Yes, ma'am.

 2        Q.   -- the first device?

 3        A.   They gave me the first, they gave me the

 4   second.

 5        Q.   On the same food tray?

 6        A.   Through different food trays.

 7        Q.   Okay.  On the same day?

 8        A.   Yes, ma'am.

 9        Q.   At the same time?

10        A.   Not at the same time.  Different times.

11        Q.   So when did you -- when did you give the

12   first device?

13        A.   I gave it to them for lunch.  And then I

14   had food trays, because they were serving us

15   styrofoam because we were on lockdown because of an

16   escape.  And a second one came when they came back

17   down for a trash run; that's when they gave me back a

18   second device.

19        Q.   And how long was the trash run after lunch?

20        A.   Probably about 20 minutes.

21        Q.   Twenty minutes.  How did you know to give

22   the device through the food tray?

23        A.   Because he signaled me.

24        Q.   How did you know what the signal would be?

25        A.   I gave him a thumbs up that I had what he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4197

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4198

```
 1    needed on the recorder.  And he said, "All right.

 2    The tray" -- pointed at the tray.

 3        Q.   And who was that?

 4        A.   That was "C Boy" from STIU.  "C Boy,"

 5    that's all I know him by.

 6        Q.   "C Boy"?

 7        A.   Yes.

 8        Q.   You don't know his real name?

 9        A.   No, ma'am.

10        Q.   How did you know -- how did "C Boy" know

11    that that was the signal?

12        A.   Common sense.

13        Q.   Well, you had to know that "C Boy" was the

14    one who was going to take the recording, right?

15        A.   When you go, like I was doing something, I

16    was looking for every little signal, you know what

17    I'm saying?  I'm in a tense environment.

18        Q.   So you never met with "C Boy" ahead of

19    time?

20        A.   I'm not understanding your question.

21        Q.   Well, what I'm trying to ask you is:  You

22    communicated with "C Boy" in a quiet fashion?

23        A.   I gave him a thumbs, and he tells me, "The

24    tray."

25        Q.   Okay.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                 1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 4198

1       A.   Him and Cupit had came to pass out trays,

2  STIU Cupit.  So when I gave him the thumbs up, he

3  pointed to the tray at my window, giving it to me

4  through the food port.

5       Q.   Was "C Boy" a corrections officer, or --

6       A.   STIU officer.

7       Q.   Okay.  And you recognized him as an STIU

8  officer?

9       A.   Yes.

10      Q.   And did you meet with "C Boy" at the same

11 time that you met with Acee?

12      A.   Yes, ma'am.  He was in the room with us as

13 well.

14      Q.   Okay.  Do you remember what other STIU

15 officers were in the room?

16      A.   Cupit, Sapien, just STIU.

17      Q.   Okay.  You don't -- okay.  When you were

18 given the second device through the trash tray, was

19 it basically the same as the first device, or was it

20 different?

21      A.   More or less, but a little bit bigger.

22      Q.   A little bit bigger?

23      A.   Yes, ma'am.

24      Q.   Did it function the same way?

25      A.   Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4199

1          Q.   Okay.  With the light and the hum?

2          A.   Yes, ma'am.

3          Q.   And you felt confident with that device

4     that it was recording everything that you guys were

5     talking about?

6          A.   Yes, ma'am.

7          Q.   And the same thing with the second device,

8     you were close to the vent?

9          A.   The second device, I never recorded

10    nothing.

11         Q.   Oh, you never recorded anything on the

12    second device?

13         A.   No, ma'am.

14         Q.   Why is that?

15         A.   Because the next day they shook down.  And

16    I couldn't get Carlos to say anything else.

17         Q.   When you say, "the next day they shook

18    down," did the correction officers toss your cell?

19         A.   Yes, ma'am.  They came and shook down the

20    whole unit.

21         Q.   Okay.  And they found the recording device

22    at that time?

23         A.   Yes.

24         Q.   And what did they say to you when they

25    found it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4200

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1        A.    "What is this?"

 2        Q.    And what did you say?

 3        A.    "I don't know."

 4        Q.    Did they write you up for it?

 5        A.    No, ma'am.  I told them it was a battery

 6   pack.  By then, they took me to the front, and pretty

 7   much, the STIU had came down and told me, "This is

 8   what it is."

 9        Q.    So they intervened on your behalf?

10        A.    More or less, yes, ma'am.

11        Q.    Okay.  So you never got a sanction for

12   that?

13        A.    No, ma'am.

14        Q.    Okay.  And after that, where did you go?

15        A.    I went, I believe, to MDC county.

16        Q.    Okay.  And how long did you stay there?

17        A.    About two months.

18        Q.    About two months.  Okay.  And what happened

19   after that?

20        A.    I went -- I was sentenced, and I came back

21   to prison.  And I went back to PNM North.

22        Q.    Did you ever get put in the cooperator pod?

23        A.    What do you mean?

24        Q.    Well, are you aware of who the other

25   government informants are in this case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4201

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202 4202

```
 1          A.   More or less.

 2          Q.   Okay.  Were you placed in the same similar

 3     pod as those guys?

 4          A.   Yes, ma'am.

 5          Q.   Okay.  When you were recording Carlos, did

 6     he ever say he authorized the hit?

 7          A.   I got him to admit to it indirectly.

 8          Q.   Okay.  I'm asking you a pretty specific

 9     question here.

10          A.   Yes, he admitted.

11          Q.   Okay.  So Carlos said to you:  I authorized

12     the Molina hit?

13          A.   Yes.

14          Q.   Okay.  How many times did he say that?

15          A.   What he said is, "Rats, fools that rat need

16     to go.  And that's what we're all agreeing on the

17     tabla."  He was talking to me about the tabla, how

18     everybody is on the same page with the tabla.

19          Q.   Did he use the word "Javier Molina" in that

20     sentence?

21          A.   I was telling him about Javier Molina.

22          Q.   How many times has Javier Molina been

23     suspected as a rat?

24          A.   To my recollection, just that once.

25          Q.   Just that one time?  There were no other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4202

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4203

1   times?

2       A.   Not that I know of, Miss.

3       Q.   How many SNM homicides have been related to

4   ratting?

5       A.   Ratting, numerous.

6       Q.   Numerous.  And did Carlos Herrera ever take

7   responsibility for those hits?

8       A.   From my recollection, I know he cooperated

9   one other.

10      Q.   Okay.  And which one was that?

11      A.   "Bobaloo," Bobbie Ortega in Hobbs.

12      Q.   Did you talk to him about that homicide

13  while you were in the cell next to him?

14      A.   No, ma'am.  I never got that on the

15  recorder, I believe.

16      Q.   Okay.  Did you get any other admissions on

17  the recorder?

18      A.   Explain yourself.

19      Q.   From Carlos Herrera, about the Molina

20  homicide?

21      A.   I'm still not understanding.

22      Q.   Well, you said that Carlos took

23  responsibility for the Molina homicide by talking

24  about taking care of rats; is that correct?

25      A.   Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.    And being on the tabla; is that correct?

2        A.    Yes, ma'am.

3        Q.    Did he make any other statements?

4        A.    To my knowledge, just explaining the rules

5    of the onda, what he felt the policy should be, what

6    him and the tabla thought how everything should be

7    ran, and how other members should be X'd out for

8    messing up, other high ranking members.  That was it.

9        Q.    Is it fair to characterize that as

10   political talk?

11       A.    Yeah, it is political talk.

12       Q.    Okay.

13       A.    That's how things get done, Miss.  It's

14   politics, politic in onda, whether it's right or

15   wrong, what that tabla says, it goes.  That's why I'm

16   here today doing what I'm doing, you know what I'm

17   saying?

18       Q.    What was your role in the SNM?

19       A.    I was a soldier.

20       Q.    Okay.  And what does that mean?

21       A.    I did whatever the SNM asked me to do.

22       Q.    Did you ever take any part in the decision

23   making?

24       A.    No, ma'am.  I wasn't that high up.

25       Q.    Okay.  Were you ever able to get Suboxone

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205

```
 1    when you were in custody?
 2         A.   No, ma'am.
 3         Q.   Never, not once?
 4         A.   No, ma'am.
 5         Q.   What about other drugs?
 6         A.   What do you mean in custody?
 7         Q.   Did you ever have or use drugs as an inmate
 8    in custody?
 9         A.   Yes, ma'am.
10         Q.   Okay.  When?
11         A.   All the time.
12         Q.   All the time?
13         A.   Yes, ma'am.
14         Q.   How did you get them?
15         A.   Got them from visits, mostly through
16    visits.
17         Q.   Who would bring them to you?
18         A.   Well, other people would hit -- we call
19    them mules, so they would use them to hit their
20    drugs, and then we just do -- just get our cut.
21         Q.   Did you have anyone that brought it in for
22    you in visits?
23         A.   Yeah.
24         Q.   Who brought it in for you?
25         A.   Different people, "Baby G," Antoine Gomez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4205

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 206

```
 1   But mostly it was for -- that was it.  And I would
 2   use, like, from Carlos Herrera, he would hit a lot of
 3   drugs.  I would use from him.  I would just mostly
 4   get a cut from other big time, what we call carnals,
 5   brothers, that would hit.  And I would get a cut.
 6   They'd send me an issue once in a while, you know
 7   what I mean?
 8        Q.   Why did you get a cut?  Why were you
 9   getting it?
10        A.   Because I was a soldier.
11        Q.   Okay.  And so that was sort of payment?
12        A.   Well, it's in the family.  Most carnals get
13   an issue from what's going in.
14        Q.   Okay.  Were you getting drugs in custody
15   when you were at MDC?
16        A.   No, ma'am.
17        Q.   You never got any drugs while you were in
18   custody at MDC?
19        A.   No, ma'am.
20        Q.   When you were next to Carlos, did you ever
21   get any drugs when you were in custody then?
22        A.   No, ma'am.
23        Q.   Did you ever get written up while you were
24   in custody for having drugs?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4206

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 207

```
 1          Q.   Did you ever get written up while you were
 2     in custody for providing dirty UAs?
 3          A.   Yes, ma'am.
 4          Q.   Do you know when that happened?
 5          A.   Yes, ma'am.
 6          Q.   When?
 7          A.   It happened -- I believe one happened back
 8     in 2012 -- no, no, no -- yeah, 2012 -- I had one for
 9     possession of doing dangerous drugs, and another for
10     dirty urine.  And then, in 2016, I believe I had one
11     for dirty urine, for pills.  And then recently
12     something came through the mail, but the STIU looked
13     into it and looked into it, and they just seen --
14     they don't know what it was.
15          Q.   Say that again.  They didn't see what it
16     was?
17          A.   They don't know who sent it or how it got
18     sent.  It had a return address.  And I never get mail
19     where I'm at.  So they checked the mail logs.  They
20     checked the phone call history.  And they see that I
21     don't ever make a phone call longer than five, 10
22     minutes.  And I never talk about no drugs.
23          Q.   You never talked about drugs on any of your
24     jail calls?
25          A.   No, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4207

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 208

```
 1        Q.   Not once?  Not ever?

 2        A.   No, ma'am.

 3        Q.   Okay.  I'm going to show you a disciplinary

 4   log that we got for you, that I think is going to

 5   detail some of your use or possession or UA history.

 6   Do you mind -- I'm going to put it right up here.

 7   Can you see that on your screen there?  Can everybody

 8   else see it?

 9        A.   Yes, ma'am.

10        Q.   Is that your name at the top left corner?

11        A.   Yes, ma'am.

12        Q.   And does that look like it's an accurate

13   representation of your disciplinary history?

14        A.   Yes, ma'am.

15        Q.   Is anything missing?

16        A.   No, ma'am.

17        Q.   Okay.

18        A.   Yes, ma'am.  Something missing in the mail,

19   like I said, and they investigated it.  And like I

20   said, they went back, they checked all my phone logs,

21   because I'm way on the other side of the state.  I

22   never talked about drugs.  They checked my mail logs.

23   I never get mail.  Once a month, that's it.

24        Q.   You just said they recently investigated

25   your mail.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4208

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209

```
 1            A.   Yes, ma'am.

 2            Q.   Why did they investigate it?

 3            A.   Because something suspicious had came

 4     through the mail.  And they looked into it, and they

 5     said that they were going to investigate it.  And

 6     they did.  And they seen that.  It looked suspicious.

 7            Q.   What about it looked suspicious?

 8            A.   It looked like someone was sending me

 9     something that wasn't -- you know what I mean -- that

10     I wasn't supposed to get, you know what I'm saying?

11     In other words, they sent me something like, saying I

12     was --

13            Q.   Contraband?

14            A.   Yes, ma'am.

15            Q.   What kind of contraband?

16            A.   I don't know.  They just said they were

17     investigating it.  They never told me.  They never

18     got back to me.

19            Q.   And this was in 2017?

20            A.   Yes.

21            Q.   Did you get disciplined for it?

22            A.   No, ma'am.

23            Q.   And you don't know what the contraband was?

24            A.   No, ma'am, because it was through the mail.

25     And it was never in my possession.  And they went
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4209

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4210

1    back, they checked my phone logs.  I was never

2    talking about drugs.  They checked my mail, my mail

3    logs.  They seen that I never got mail like that

4    before.  So the facility checked into it.

5         Q.    Earlier, you talked about how after the

6    Molina homicide you guys got put down because there

7    was an investigation pending, right?

8         A.    Yes, ma'am.

9         Q.    Did you ever go to a hearing on that issue?

10   Did they ever present you with any evidence that you

11   were involved in the investigation?

12        A.    This is what it was, Miss.  They gave us a

13   hearing, and they had us sign a paper saying that we

14   were under Internal Level 6 investigation, because

15   they didn't know if there was more people that were

16   going to get murdered.

17        Q.    Okay.  And did they do anything like in

18   2017, when contraband was sent to you at the jail,

19   that you never received?

20        A.    Well, what they did is they came, and they

21   notified me, and they said, "This is going to be

22   investigated, and if we find out that you had

23   something to do with this, you're going to get a

24   disciplinary action."  So they went back and they

25   investigated it, and they said, "There is nothing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4210

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4211

1  there."

2      Q.   Who said they were going to investigate it?

3  STIU, or --

4      A.   No, the director of the program where I'm

5  at.

6      Q.   Who is that?

7      A.   Hastings.

8      Q.   Hastings?

9      A.   Yes, ma'am.

10         MS. BHALLA:  Your Honor, I'm going to go

11  ahead and move this into evidence.  And I need to get

12  an exhibit sticker, if you can just excuse me.

13         THE COURT:  All right.

14         MS. BHALLA:  Your Honor, at this time, I'm

15  going to move into evidence Exhibit CH-B.  I do have

16  a clean copy which I can provide.  I'm sorry that I

17  wrote on this when I wasn't supposed to.

18         THE COURT:  Any objection, Mr. Castellano?

19         MR. CASTELLANO:  May have a look at it,

20  Your Honor?  I don't believe I have an objection.

21         No objection, Your Honor.

22         THE COURT:  Anybody else have an objection?

23  Not hearing any, Carlos Herrera's Exhibit B will be

24  admitted into evidence.

25         MS. BHALLA:  Thank you, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212

1      Q.   Mr. Herrera, how often did you use drugs

2    when you were in custody?  Daily?  Weekly?  Monthly?

3    Give me an approximation.

4      A.   Depends when we had it.  Sometimes we had

5    it, sometimes we didn't.  It just depends the way the

6    environment was going.  Sometimes we had access to

7    visits.  Most times we didn't have access to the

8    visits.  It just depends on what was going on at the

9    time.  So, yeah, there was time where six months we

10   wouldn't have nothing, and then there was a time

11   where we went six months we did have something.

12     Q.   And when you did have it, how often would

13   you use it?

14     A.   Every day.

15     Q.   Multiple times a day?

16     A.   Yes, ma'am.

17     Q.   Did you ever talk to Agent Acee about that?

18     A.   Yes, ma'am.

19     Q.   About the fact that you used drugs?

20     A.   Yes, ma'am.

21     Q.   When did you have that conversation with

22   him?

23     A.   Well, he let me know that he didn't want me

24   doing that no more, you know what I mean?

25     Q.   When did he let you know that?

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                       201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                       1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 4212

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4213

```
 1        A.   He wanted me to clean up and get my life
 2   right.  If I'm going to be -- he wanted me to do good
 3   for myself.
 4        Q.   When did he tell you that?
 5        A.   When we first met, he explained to me,
 6   like, Look, I want you to do good.
 7        Q.   Did you tell him about your drug problem
 8   then?
 9        A.   Yes, ma'am.
10        Q.   So the first time you met with Agent Acee,
11   you talked to him about the fact that you were a drug
12   addict?
13        A.   No.  We didn't talk about drug addict, but
14   I think he more or less knew, you know what I mean?
15        Q.   How did he more or less know?  What did you
16   tell him?
17        A.   I didn't tell him nothing.  I just told him
18   we get drugs, we use drugs, we're all drug addicts.
19   He didn't sit down and talk to me:  Do you have a
20   drug problem, you know what I mean?  I told him
21   straight up:  That's what we do, we extort drugs, we
22   use drugs and we sell drugs.
23        Q.   Okay.  And I get that it wasn't a
24   counseling session.  I'm not trying to imply that it
25   was.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4213

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4214

```
 1          A.    That's why I'm getting confused at.
 2          Q.    What I'm asking you is what information you
 3   told him about your drug use at the meeting?
 4          A.    Yeah.  I told him that that's what we are,
 5   basically, mostly drug addicts; that's what we kill
 6   for.  That's basically what we stand for, drugs and
 7   money.
 8          Q.    Okay.  Did you ever sign an agreement with
 9   the government, a formal agreement about your
10   cooperation?
11          A.    Just a Kastigar letter.  That was it.
12          Q.    When did you receive that?
13          A.    When they first got me an attorney.
14          Q.    And when was that?
15          A.    Back in, I would say, May.
16          Q.    Of 2017 or 2016?
17          A.    May of 2016, 2017; something like that.
18          Q.    So after you did the recordings is when you
19   got the Kastigar letter?
20          A.    Yes, ma'am.
21          Q.    Did you receive any payments for your
22   services?
23          A.    I got like 50 bucks a month, so like,
24   living expenses, just so I could have for myself, you
25   know what I mean?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4214

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4215

1        Q.    When did you start getting those?

2        A.    Probably like -- I want to say, like, 2016,

3    July, or something, or --

4        Q.    After the recordings or before the

5    recordings?

6        A.    After.

7        Q.    Okay.  And did any of that money go to your

8    wife, Crystal?

9        A.    No, ma'am.

10       Q.    Okay.  And did you ever talk to Crystal

11   about your cooperation?

12       A.    Yes, ma'am.

13       Q.    Okay.  And did you talk to her over the

14   phone about that?

15       A.    Yes, ma'am.

16       Q.    Do you know whether or not Agent Acee ever

17   talked to Crystal about your cooperation?

18       A.    No, ma'am.

19       Q.    Do you know if Crystal ever talked to Agent

20   Acee?

21       A.    Yes, ma'am.

22       Q.    And when did that happen?

23       A.    When she was in fear for her life.

24       Q.    And when was that?

25       A.    Probably around -- she just wanted to know



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4215

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4216

```
 1    if she had help, you know what I mean, if someone
 2    went and tried to hurt her, back like around the same
 3    time July, August.
 4         Q.    After the recording?
 5         A.    Yes, ma'am.
 6         Q.    Did Crystal talk to you about that?
 7         A.    Yes, ma'am.
 8         Q.    After you were finished with the recording
 9    devices, and after you got moved out, did you meet
10    with Agent Acee after that?
11         A.    What do you mean?
12         Q.    Well, after you -- after you got passed the
13    second recording device through the food tray, right,
14    shortly thereafter, you were moved to another
15    facility?
16         A.    We met with my lawyer.
17         Q.    So what I'm trying to ask -- you didn't
18    meet with Agent Acee for -- until you got a lawyer?
19         A.    Yes, ma'am.
20         Q.    In May of 2016?
21         A.    Yes, ma'am.
22         MR. CASTELLANO:  Your Honor, I'm going to
23    object to this line of questioning.  This is the line
24    of questioning following the recording, so it doesn't
25    have anything to do with the voluntariness of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4216

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4217

```
 1    statements.

 2              MS. BHALLA:  Your Honor, if information was

 3    given to Agent Acee in conversations about the

 4    recordings and about the conversations and about what

 5    was going on during this conversations, I do believe

 6    that is relevant.

 7              THE COURT:  Well, I'm getting a little lost

 8    on the timeframe here.  I think we need to maybe

 9    clean that up.

10              But let's don't do it now.  Let's take our

11    afternoon break, let you come back in and establish

12    the timeframe.  I'm getting a little confused as to

13    when you're talking about.

14              All right.  We'll be in recess for about 15

15    minutes.

16              (The Court stood in recess.)

17              THE COURT:  All right.  Let's go on the

18    record.  Make sure everybody has got a lawyer.  I

19    think they do.

20              Mr. Cordova, I'll remind you you're still

21    under oath.

22              THE WITNESS:  Yes, Your Honor.

23              MR. CASTELLANO:  Your Honor, before we

24    proceed, what I'd like to do is just lodge my

25    objection so we avoided every conversation we had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4217

1   with Agent Acee following the recordings.  I mean, if

2   there are specific questions about people's

3   vulnerabilities, or something that goes to the

4   voluntariness of the statement, I understand that's

5   fair game.  But to get into every conversation

6   following the recordings, I think we're getting a

7   little far out there.

8             THE COURT:  Here's what I'm thinking, Ms.

9   Bhalla:  I think -- and Mr. Castellano can speak for

10  himself -- I think everybody recognizes you probably

11  have a little bit of right to test the credibility of

12  the witness, you know.  If you think that Mr. Acee is

13  telling him what to say and feeding him stuff then,

14  you know, you get to explore that a little bit.

15            But I agree with Mr. Castellano, I don't

16  think now is the time and place to go through every

17  conversation.  So if you keep it general and do what

18  you've got to do as far as numbers and meetings and

19  stuff like that, I think probably Mr. Castellano

20  would probably agree that's probably fair game.

21            But as far as just a discovery of

22  everything that Mr. Acee and Mr. Cordova talked

23  about, probably not.

24            Can you fit your questions into something

25  that I'm inclined to allow?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4218

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219

219

```
 1              MS. BHALLA:  Yes, Your Honor.  And I'll try
 2     to be more focused in my questions.  I think I got a
 3     little confused about the timeframe as well, which is
 4     why we may have gone so far afield.
 5              THE COURT:  All right.
 6     BY MS. BHALLA:
 7        Q.   Mr. Cordova --
 8              THE COURT:  Hold on just a second.  Who is
 9     on the phone?  I've been a little negligent about
10     making sure I know who is on the phone.  Who is on
11     the phone right now?
12              MS. STRICKLAND:  I'm on the phone.  This is
13     Margaret Strickland.
14              MR. CASTLE:  Jim Castle; I'm on the phone
15     as well.
16              THE COURT:  Ms. Strickland, Mr. Castle.
17              Okay.  Anyone else?  All right.  I'm only
18     hearing two people.  So if somebody has got their
19     mute button on, we're not hearing you.
20              MS. HARBOUR-VALDEZ:  Your Honor, it may be
21     our paralegal, Raquel Rodriguez.
22              THE COURT:  Ms. Rodriguez, are you there?
23              MS. RODRIGUEZ:  I'm here, Your Honor.
24     Thank you.
25              THE COURT:  Okay.  Anybody else.  I've got
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4219

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 220

1    three people on the phone.  If there is more than

2    three, you've got your mute button on, you haven't

3    entered an appearance?

4             All right.  Ms. Bhalla?

5             MS. BHALLA:  Thank you, Your Honor.

6    BY MS. BHALLA:

7        Q.   After you provided the last recording

8    device to the STIU officer through the food tray, did

9    you meet with Agent Acee after that?

10       A.   Yes, with my lawyer.

11       Q.   Okay.  So when you handed in the last

12   device, is it fair to say that that was in February

13   of 2016?

14       A.   No, it was like in April or May.

15       Q.   When you handed in the last recording

16   device?

17       A.   Around April, I think it was.

18       Q.   For Carlos Herrera?

19       A.   Yes, ma'am.

20       Q.   When were you placed next to Carlos

21   Herrera?  What month?

22       A.   I'm pretty sure it was April, Miss.

23       Q.   Okay.  So you were placed next to Carlos

24   Herrera in April?

25       A.   Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4220

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221

1       Q.   And so for approximately three weeks?

2       A.   I don't know approximately, but around

3   there, three weeks, a month.

4       Q.   Okay.  So maybe not more than a month; is

5   that fair to say?

6       A.   Yes, ma'am.

7       Q.   And so immediately after that -- so if that

8   was in April, so then it would have been late April,

9   early May of 2016, when you were through with your

10  recording device with Mr. Herrera?

11      A.   Yes, ma'am.

12      Q.   Okay.  And so then, in May of 2016, you sat

13  back down with Agent Acee and with your attorney?

14      A.   Yes, ma'am.

15      Q.   Okay.  Did you provide information about

16  the recordings or the conversations that you had with

17  Mr. Herrera to Mr. Acee at that time?

18      A.   With my lawyer?

19      Q.   Yes.

20      A.   Yes, ma'am.

21      Q.   Did you talk to him about the statements

22  that you were able to get from Mr. Herrera?

23      A.   At that time, I can't remember.  But I

24  think he said that -- no, I don't think so.  We sat

25  down, talked to my attorney; talked about, like,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 222

 1    that, yeah.  So I don't think so.  I don't remember,

 2    to tell you the truth.

 3         Q.   Did you ever talk to Agent Acee about what

 4    you got on the recording device when you were next to

 5    Carlos Herrera?

 6         A.   I told him, "I did my best, and here's what

 7    it is."

 8         Q.   When did you tell him that?

 9         A.   When we were with my lawyer.

10         Q.   Okay.  Do you know whether or not they

11    recorded that conversation with you?

12         A.   I don't know, ma'am; pretty sure, probably,

13    more than likely.

14         Q.   So, in May of 2016, you talked to Agent

15    Acee in a very limited fashion about the information

16    that you received from Mr. Herrera when you were

17    placed next to him?

18         A.   It wasn't information.  What was said, it

19    was more or less:  What I told you I would get, it's

20    on there.

21         Q.   Did you talk to Agent Acee any further

22    about the communications that you had with Mr.

23    Herrera?

24         A.   No, ma'am.

25         Q.   So you've never discussed that issue with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4222

```
1    Mr. -- with Agent Acee again?

2         A.   No, ma'am.

3         Q.   Okay.  When Mr. Castellano asked you about

4    a transcript that involved you -- I believe, Dale

5    Chavez and Carlos Herrera -- do you remember that?

6         A.   No, what?

7         Q.   A transcript?

8         A.   About who asked me?

9         Q.   Mr. Castellano, the AUSA.

10        A.   I remember him asking him now, yes.

11        Q.   Okay.  I'm going to give you a copy of that

12   transcript, because I have couple of other questions

13   for you about that.  Okay?

14        A.   All right, Miss.

15             MS. BHALLA:  Your Honor, may I approach?

16             THE COURT:  You may.

17        Q.   Is that the same transcript that Mr.

18   Castellano talked to you about?

19        A.   Just now?

20        Q.   Well, on direct examination, before I got

21   up.

22        A.   Yes, ma'am.

23        Q.   Do you see the little numbers at the bottom

24   right of the page?

25        A.   Yes, ma'am.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4223

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224

1        Q.   Okay.  I'm going to go on the first page,

2   which is 20999, that's the Bates number, just so you

3   know where we are.

4        A.   I don't understand.

5        Q.   Okay.  I'm just trying to show you --

6        A.   I understand what you're saying, 0999?

7        Q.   I just want to make sure we're on the same

8   page.

9        A.   Yes, ma'am, we're on the same page.

10       Q.   Okay, good.  So you testified, I believe,

11  that at the time that you were meeting with Carlos

12  Herrera, or the time you were next to him, you'd

13  already been in custody for a year and a month; is

14  that correct?

15       A.   About a year and a couple months.

16       Q.   Okay.  So roundabout.  So a year and a

17  couple months?

18       A.   Yes, ma'am.

19       Q.   So you hadn't been --

20       A.   I was around about a year and a month.

21  Herrera was around a year and a few months.

22       Q.   Okay.  But you had been in custody for a

23  year and a month or a year in two months?

24       A.   A year and a few months.

25       Q.   Okay.  And you testified that this was the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4224

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225

```
 1    price for street drugs; is that correct?
 2         A.   No.  We were both talking about the price
 3    of street drugs, okay?
 4         Q.   Okay.
 5         A.   And he tells me eight, 10, or 12.  And
 6    we're -- I'm talking about buying Suboxone from him.
 7         Q.   Okay.  So you were trying to buy from
 8    Mr. Chavez?
 9         A.   Yes, ma'am.
10         Q.   Okay.  At that time?
11         A.   Yes, ma'am.
12         Q.   Okay.  And is it fair to say that, if you
13    go -- do you see how on the paper there are little
14    blocks -- I should say rectangles -- that contain the
15    text?
16              Here, I think it might be easier if I just
17    put this on the Elmo.  Can you see the screen okay,
18    if I put this up here?
19         A.   Yes, ma'am.
20              THE COURT:  Mr. Castellano?
21              MR. CASTELLANO:  I just recommend that we
22    do that.  There is no jury here, so we don't need to
23    worry about that.
24              MS. BHALLA:  I'm just not used to this yet.
25         Q.   If you look at this line right here -- and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226

```
 1    I believe that's Mr. Chavez speaking; is that
 2    correct?  "You still get me for ten?"  Question?
 3         A.   Yeah.
 4         Q.   Did Mr. Chavez make that statement?
 5         A.   Yes, ma'am.
 6         Q.   And was that directed at you?
 7         A.   Yes, ma'am.
 8         Q.   Okay.
 9              MS. BHALLA:  Your Honor, if I can just have
10    one moment, I think that I'm probably through.
11              THE COURT:  All right.  Certainly.
12              MS. BHALLA:  Oh, actually, before I do
13    that, Your Honor, I want to move this transcript into
14    evidence.  And I believe that would be CH-C.
15              THE COURT:  Well, I'm not seeing a B.
16              MS. BHALLA:  B is the disciplinary logs,
17    Your Honor.
18              THE COURT:  All right.  So this will be C.
19              Any objection, Mr. Castellano?
20              MR. CASTELLANO:  No, Your Honor.
21              THE COURT:  Anyone else?  Not hearing any
22    objection, Carlos Herrera's Exhibit C will be
23    admitted into evidence.
24              MS. BHALLA:  Okay.  Now, if I can have just
25    a moment, Your Honor, I think I'm almost through.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4226

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227

```
 1                 THE COURT:  Certainly.
 2                 MS. BHALLA:  Thank you, Your Honor.
 3                 I'm going to pass the witness.
 4                 THE COURT:  Thank you, Ms. Bhalla.
 5                 All right.  Mr. Villa, are you next?
 6                 MR. VILLA:  Thank you, Your Honor.
 7                 THE COURT:  Mr. Villa.
 8                           EXAMINATION
 9      BY MR. VILLA:
10           Q.   Good afternoon, Mr. Cordova.
11           A.   Good afternoon.
12           Q.   If I understand it correctly, your role in
13      the SNM is a soldier?
14           A.   Yes, sir.
15           Q.   So you do whatever is asked of you by
16      members that are higher up in the SNM?
17           A.   Yes, sir.
18           Q.   Does that include assaulting people?
19           A.   Yes, sir.
20           Q.   And you might have to just get at little
21      bit closer to the mic when you answer, you can scoot
22      your chair up; that way everybody can hear you.
23                 So that was a yes?
24           A.   Yes.
25           Q.   When did you become a member of the SNM?
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4227

```
 1          A.    About 2003.

 2          Q.    2003?

 3          A.    I was a posfate (phonetic) in 2000, and I

 4   became a carnal in 2003.

 5          Q.    When you become a carnal, that means you're

 6   a member of the SNM, right?

 7          A.    Yes, sir.

 8          Q.    When you first became a member, did you

 9   stay a soldier?

10          A.    Yes, sir.

11          Q.    As part of being a soldier, when there is

12   drugs in the prison, if I understand your testimony

13   correctly, you get to have some of those drugs?

14          A.    Yes, sir.

15          Q.    And you use them?

16          A.    Yes, sir.

17          Q.    And I think you testified that's kind of

18   what you guys do:  You get drugs and you use the

19   drugs, right?

20          A.    Use drugs, sell drugs, yeah.

21          Q.    You're all addicts?

22          A.    Yes, sir.

23          Q.    And drugs include typical street drugs,

24   like heroin, cocaine, and such things?

25          A.    Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229

```
 1        Q.    And Suboxone, too?

 2        A.    Yes, sir.

 3        Q.    So you've used Suboxone?

 4        A.    Yes, sir.

 5        Q.    You had it provided to you before by

 6   others?

 7        A.    Yes, sir.

 8        Q.    When you use Suboxone, it gets you high?

 9        A.    When you're clean from heroin, yes.

10        Q.    But when you're not clean on heroin, it

11   doesn't?

12        A.    No.  It depends how long you've been

13   without heroin.  Have to be usually 36 hours without

14   any opioids in your body.  If you take it 36 hours

15   before, then you get sick; you get what I'm saying?

16        Q.    Yeah.

17        A.    I'm saying, if I just used heroin or pills

18   right now, I have to wait 36 hours, you get what I'm

19   saying?

20        Q.    Yeah, if you take it within 36 hours, you

21   take Suboxone, within 36 hours --

22        A.    You get sick, you go through withdrawals.

23        Q.    Got it.  But if you wait that 36 hours from

24   taking heroin or pills, then you can get high from

25   Suboxone?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4229

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4230

```
 1           A.    Yes, sir.

 2           Q.    And when you get high, what does that feel

 3      like?

 4           A.    Same thing.

 5           Q.    Similar to heroin?

 6           A.    Yes, sir.

 7           Q.    When you said pills, you're talking about

 8      like opiate pills?

 9           A.    Yes, sir.

10           Q.    Prescription pills, things like that?

11           A.    Yes, sir.

12           Q.    Those were some of the things that you got

13      issued to you by other members of the SNM when you

14      were being a soldier?

15           A.    Yes, sir.

16           Q.    Do you also join -- did you also join the

17      SNM for protection?

18           A.    No, sir.

19           Q.    Why did you join the SNM?

20           A.    Because I thought it was a brotherhood.  It

21      was something that was respected.  And that's what I

22      thought it was.

23           Q.    You talked about the onda, or the destiny

24      of the SNM, right?

25           A.    Yeah.  I thought it was a brotherhood.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4230

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231

```
 1    thought guys were going to have your back.  It's not

 2    like that, though.

 3         Q.   Did it serve as protection, while you were

 4    in the prison, to be a member of the SNM?

 5         A.   I didn't need protection.

 6         Q.   I mean, you could have still gotten

 7    assaulted or attacked, but if other members --

 8         A.   We protect our own, yes.

 9         Q.   They protect each other?

10         A.   Yes.

11         Q.   Okay.  So whether you need it or not, it's

12    a benefit you get from being in the SNM?

13         A.   Yeah, I agree.

14         Q.   In addition to being able to get drugs?

15         A.   Yes, sir.

16         Q.   When you decided to cooperate with Agent

17    Acee, it's my understanding that he told you he was

18    investigating you for RICO, right?

19         A.   Yes, sir.

20         Q.   And was going to prosecute you for RICO?

21         A.   Yes, sir.

22         Q.   Did he tell you the specific acts that he

23    was going to prosecute you for?

24         A.   No, sir.

25         Q.   Did he talk to you about murders that he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4231

```
 1    was investigating you for?

 2         A.   No, sir.

 3         Q.   But he told you, or at least you understood

 4    that if you cooperated, you would have immunity from

 5    anything you did as an SNM member?

 6         A.   Yes, sir.  When I got my lawyer, yes, sir.

 7         Q.   What did you understand at the time you

 8    spoke to Agent Acee, in January, that you were going

 9    to get in exchange for your cooperation?

10         A.   Well, nothing was set in stone.  It was:

11    What can you bring to the table?  It has to be

12    honest, it has to be clean.

13         Q.   Did you believe you could avoid being

14    charged for RICO, if you did this cooperation?

15         A.   Yes.

16         Q.   And you also -- at some point you were

17    starting to get money on your books, right?

18         A.   Yes.  But I get more money from my family

19    than I got from them.

20         Q.   All right.  All right.  What else did you

21    think you might be able to get if you cooperated

22    besides not getting prosecuted in this RICO?

23         A.   Nothing.  I didn't ask for nothing.

24         Q.   Okay.  And I guess it's fair to say you

25    didn't want to be prosecuted for RICO, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4232

```
 1         A.   Yes, sir.

 2         Q.   That didn't sound so good to you?

 3         A.   You can say that.

 4         Q.   Now, if I understand it correctly, when you

 5    have drugs available in prison, you would use them?

 6         A.   Yes, sir.

 7         Q.   I think you testified that you would share

 8    them with your fellow members; correct?

 9         A.   Yes, sir.

10         Q.   So, if you had Suboxone in prison, you

11    would use it?

12         A.   Yes, sir.

13         Q.   You would share it with your cellmates or

14    other people that you were being incarcerated with?

15         A.   Yes, sir.

16         Q.   When you use Suboxone, how much would you

17    use?

18         A.   It just depends what you're using.  It goes

19    up, it goes down.

20         Q.   So Suboxone comes in little strips?

21         A.   Yes, sir, or pills.

22         Q.   Let's talk about strips.  If you have a

23    strip, how much of a strip do you use to get high?

24         A.   You can use a quarter of that strip, a half

25    of that strip, or a whole strip.  It just depends on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4233

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 234

```
 1   your tolerance.

 2        Q.   Everybody is a little different?

 3        A.   Yes, sir.

 4        Q.   Now, are you still using drugs?

 5        A.   No, sir.

 6        Q.   When was the last time you used?

 7        A.   The last time I used was probably when I

 8   was on medication.  But for something -- for some

 9   medication that -- I don't know, that wasn't mine, so

10   I just stopped taking medication all in all, because

11   they will report to your pod.  And what they do is

12   you can't see the medication you're taking.  They

13   just just pop the pills.  And there is about 600 guys

14   that got delivered to, and they just pop pills right

15   away, and they've got to crush it, and throw water in

16   it, so you can't see what you're taking, do you get

17   what I'm saying?

18        Q.   Yeah.

19        A.   They hand it to you.  And there is many

20   times they make mistakes.  So one of the times I was

21   UA, I came up dirty for pills.  So I told them I

22   didn't want my pills no more.

23        Q.   When was that?

24        A.   This was back, like, in July.

25        Q.   Of this year?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yes, sir.
 2          Q.   Putting aside the prescription pill
 3   issue -- I'm talking about illegal drugs -- when was
 4   the last time you used an illegal drug?
 5          A.   An illegal drug, it's been a good minute.
 6          Q.   What is a good minute?
 7          A.   A "good minute" is like about a couple
 8   years ago.
 9          Q.   A couple years ago?
10          A.   Yes, sir.
11          Q.   And you haven't used any illegal drugs or
12   nonprescribed drugs intentionally since then?
13          A.   Yes, sir.
14          Q.   So let's go now to the time in -- when
15   you're at MDC in January.  And actually, let's go
16   back a little bit more from that.  If I understand it
17   correctly, you got released from prison before that
18   January timeframe?
19          A.   Yes, sir.
20          Q.   In April of 2014?
21          A.   Yes, sir.
22          Q.   So that was about a month after the Molina
23   murder?
24          A.   Yes, sir.
25          Q.   And you were locked down from the time of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 236

```
 1    the Molina murder until you got released?

 2        A.   Yes, sir.

 3        Q.   When you get released, were you on parole?

 4        A.   Yes, sir.

 5        Q.   How long were you on parole?

 6        A.   Before I came back.

 7        Q.   So did you come back on a parole violation?

 8        A.   Yes, sir.

 9        Q.   Was the parole violation also the facts

10    that led to the murder charge that you got -- went to

11    trial on?

12        A.   Can you clarify that?

13        Q.   So did they violate your parole because you

14    picked up the murder charge?

15        A.   Yes, sir.

16        Q.   And the murder charge, ultimately, you were

17    convicted of manslaughter?

18        A.   Yes, sir.

19        Q.   After a trial?

20        A.   Yes, sir.

21        Q.   Did Agent Acee ever tell you he was looking

22    at you at that particular murder as an SNM murder?

23        A.   No, sir.

24        Q.   Did he ever tell you he was looking at you

25    for the murder of Sammy Chavez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4236

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 237

 1          A.   Later on, yes, sir.

 2          Q.   When was "later on"?

 3          A.   Later on, when I had my attorney, and we

 4     started talking.

 5          Q.   All right.  But not in January when you

 6     guys decided to give you the recording device?

 7          A.   Yes, sir.

 8          Q.   So you were released in April; you pick up

 9     the new charges; parole violates you; and then they

10     take you to MDC first?  Or do you go to PNM,

11     ultimately?

12          A.   No, I go to MDC; then I go to Central; then

13     I went to PNM.

14          Q.   But then they're bouncing you back to MDC

15     because you've got to go to court?

16          A.   Well, to Central, to PNM -- but like, in

17     November of 2015, they had canceled their contract

18     with Central, and I went back to MDC.  So the last

19     two months I was at MDC, on my trial.

20          Q.   The reason you're at MDC is because you

21     have your murder trial in Bernalillo County?

22          A.   Yes, sir.

23          Q.   And the reason they keep taking you back

24     and forth is because your parole had been violated?

25          A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4237

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 238

```
 1        Q.   Previous to being at MDC in January, the
 2   day you had the meeting with Agent Acee, you had been
 3   at PNM for some periods of time in the fall; correct?
 4        A.   Yes, sir.
 5        Q.   Did you know that Rudy Perez was there at
 6   the time?
 7        A.   Yes, sir.
 8        Q.   Had you spoken to him during that period of
 9   time?
10        A.   Yes, sir.
11        Q.   Had you spoke to him about the Molina
12   murder?
13        A.   No, sir.
14        Q.   But just generally?
15        A.   Yes, sir.
16        Q.   All right.  Did you understand -- before
17   you left Southern in April, to get released onto
18   parole, did you understand that Mr. Perez might have
19   been involved in the Javier Molina murder?
20        A.   Yes, sir.
21        Q.   How did you come to that understanding?
22        A.   Because -- how everything was playing out.
23        Q.   Explain that to me.
24        A.   They needed to get shanks.  And them people
25   were, like, don't get them from the wheelchair, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4238

```
 1    know what I mean, because they didn't want to be
 2    responsible for losing the wheelchair program.  And
 3    that's when people were like, just get them from his,
 4    you know what I mean, from his walker?
 5         Q.   Did you hear about that before the Molina
 6    murder or after?
 7         A.   I heard about it before and after.
 8         Q.   All right.  And so there was discussions
 9    about using Mr. Perez' walker instead of something
10    from the wheelchair program?
11         A.   Yes, sir.
12         Q.   Did you ever learn, before that meeting
13    with Agent Acee, whether Mr. Perez actually agreed to
14    let them take a piece from his walker?
15         A.   Yeah, he agreed.
16         Q.   No.  I mean, I'm talking about before you
17    met with Agent Acee.  Did you learn that Mr. Perez
18    agreed to that?
19         A.   Yes, sir.
20         Q.   How did you learn that?
21         A.   I just told you.  I heard before, and I
22    heard after the Molina murder.
23         Q.   That Mr. Perez had agreed?
24         A.   Yes.
25         Q.   Who told you that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4239

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240

```
 1        A.   I talked to "Dan Dan" through the door, and

 2   he told me, "We already got a piece over here.  We're

 3   going to take care of this."

 4        Q.   This is before the murder?

 5        A.   Yes, sir.

 6        Q.   Did "Dan Dan" say:  Rudy agreed to let me

 7   take the piece?

 8        A.   Yes, sir.

 9        Q.   He said that?

10        A.   He said, "We're just going to get it from

11   his walker.  I already hit him up."

12        Q.   Say the last thing again.

13        A.   "I already hit him up," like I already

14   asked him.

15        Q.   Got it.  So you understood from that that

16   Rudy agreed?

17        A.   Yes, sir.

18        Q.   But "Dan Dan" didn't specifically say Rudy

19   had agreed?

20        A.   He specifically said he agreed.  That's our

21   lingo; that's the way we talk.

22        Q.   When he said, "I already hit him up"?

23        A.   Yes.

24        Q.   That's your lingo?

25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4240

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4241

```
 1        Q.    Did you tell that to Agent Acee?

 2        A.    Pretty sure.

 3        Q.    All right.  Other than that conversation,

 4   did you have conversations with anybody else after

 5   the fact that led you to believe Mr. Perez had

 6   agreed?

 7        A.    Yes.  When we were at the North, everybody

 8   was talking.  They even thought he was talking.  They

 9   were going to move on him because they thought he was

10   talking.

11        Q.    They thought Mr. Perez was talking?

12        A.    Yes.  Because they said the shank came from

13   his walker, and they knew where the shank came from.

14   How did they know where the shank came from?

15        Q.    This is what the guys are saying?

16        A.    Yes.

17        Q.    The guys in PNM?

18        A.    Yes.

19        Q.    And you knew that the first indictment had

20   actually happened in the fall of 2015, right, the

21   first federal indictment?

22        A.    The first federal in the fall?

23        Q.    Yeah.

24        A.    You could say that.

25        Q.    Well, you knew at least as of January
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4241

```
 1    that --

 2         A.   Well, I was there in the MDC county jail,

 3    the same thing, when they brought everybody in on the

 4    RICO Act.

 5         Q.   Okay.  So I was going to ask you about

 6    that.  Seg 3 is a pod in NMDC?

 7         A.   Yeah, it's a Seg pod.

 8         Q.   And they brought people in who had been

 9    indicted in the first indictment of this case?

10         A.   Yes, sir.

11         Q.   And it did not include Mr. Perez?

12         A.   Did not include Mr. Perez or Mr. Herrera.

13         Q.   So you thought:  Where are these two guys?

14    They're missing?

15         A.   Yes, sir.

16         Q.   Some of the other guys thought that, too?

17         A.   Probably more or less.  That's just the way

18    it is.  They talk, that's the way it is.

19         Q.   You used the term "they were going to move

20    on him," right, did I say that right?

21         A.   You said that right.

22         Q.   And so they were going to move on him,

23    meaning members of the SNM were going to move on Mr.

24    Perez, because they thought he was cooperating?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4242

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 243

```
 1        Q.    They thought he was the reason the federal
 2   government knew the pieces came from his walker?
 3        A.    Not the federal government.  When they
 4   locked down the pod, they knew where it came from.
 5   So they were thinking:  How did they know where that
 6   piece came from, you get what I'm saying?
 7        Q.    Yeah.
 8        A.    That's why.
 9        Q.    And those discussions were still being had
10   in PNM in the fall of 2015, right?
11        A.    A little before that they were talking
12   about it in the yard.  People would talk behind his
13   back.  When they would see him there, they would talk
14   all cool with him, you know what I mean?
15        Q.    Got it.  Fast-forward to the times when
16   recorded him.  That was in February 2016, right?
17        A.    Yes, sir.
18        Q.    You knew that Mr. Perez knew about these
19   rumors that he had cooperated, right?
20        A.    Mr. Perez knew?
21        Q.    Yeah.
22        A.    About the rumors?  Well, yeah, he told me,
23   Hit up "Pup" when they brought up "Pup" back from out
24   of state.  And "Pup" said, "Don't worry about it,
25   carnal."  Well, that's "Pup," he'll tell you whatever
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4243

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 244

```
 1   you want to hear.
 2        Q.   So Mr. Perez was worried about it, right?
 3        A.   Yeah.
 4        Q.   He was concerned that they thought he was
 5   an informant?
 6        A.   Yes, sir.
 7        Q.   You knew that?
 8        A.   Yes, sir.
 9        Q.   You talked to Mr. Perez about that?
10        A.   Yes, sir.
11        Q.   And you talked to him about that around the
12   time you were recording him; correct?
13        A.   Yes, sir.
14        Q.   And I think you used the term when you were
15   talking to Mr. Perez, "pressure points," right?
16        A.   Yes, sir.
17        Q.   You used pressure points?
18        A.   Yes, sir.
19        Q.   To help get him to talk about the Molina
20   murder?
21        A.   Yes, sir.
22        Q.   And you knew that that was one of the goals
23   of this investigation; that's what Agent Acee wanted
24   you to do was to get Mr. Perez to talk about the
25   Molina murder?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4244

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245

```
 1        A.   Well, I knew myself because I've been in
 2   the game a long time, so I knew more or less what
 3   they would want and what they wouldn't want.
 4        Q.   But Acee told you he wanted murders, right?
 5        A.   That was it.
 6        Q.   He didn't want other stuff, he wanted
 7   murders?
 8        A.   He wanted murders.
 9        Q.   One of the things you thought you could
10   deliver to him was the Molina murder?
11        A.   Yes, sir.
12        Q.   So do you remember when you got moved from
13   MDC to PNM?
14        A.   From MDC to PNM?
15        Q.   Yes, sir.  And I'm talking about right
16   after you meet with Acee in January, you get moved to
17   PNM at some point, right?
18        A.   A matter of days.
19        Q.   Just a matter of days?
20        A.   Yes, sir.
21        Q.   Now, there was a meeting with Acee at MDC,
22   right?
23        A.   I was moved to PNM two days later.
24        Q.   Okay.  Let me ask you this:  There was also
25   a meeting with Acee at the FBI office, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4245

```
 1              A.   Yes, sir.

 2              Q.   So were you moved to PNM after that?

 3              A.   Yes, sir.

 4              Q.   And how soon after that were you placed

 5      next to Mr. Perez?

 6              A.   Right away.

 7              Q.   Right away?

 8              A.   Yes, sir.

 9              Q.   Okay.  So you get placed with Mr. Perez

10      in -- I'm showing you -- it's the same thing, but I'm

11      going to show you the one that's marked Defendant's

12      RP-B.  And when you get moved to PNM within a matter

13      of days, you get moved to the Q pod, right?

14              A.   Yes, sir.

15              Q.   The Q pod is where Mr. Perez is?

16              A.   Yes, sir.

17              Q.   I think you testified that you were at --

18      you were in cell 102; correct?

19              A.   Yes, sir.

20              Q.   And Mr. Perez was in cell 101?

21              A.   Yes, sir.

22              Q.   Cell 101 is at the very end of the bottom

23      tier of Q pod, right?

24              A.   Yes.

25              Q.   So the only neighbor for Mr. Perez would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   have been whoever is in 102?

 2        A.   Yes, sir.

 3        Q.   When you got moved there, that was you?

 4        A.   Yes, sir.

 5        Q.   So he doesn't have any neighbor on the

 6   other side of him, just you?

 7        A.   No, it was -- Jesse Sosa was on the other

 8   side of me.

 9        Q.   Jesse Sosa was in 103?

10        A.   Yes, sir.

11        Q.   Did you record conversations with Jesse

12   Sosa?

13        A.   No, sir.

14        Q.   Was anybody wondering why he wasn't

15   prosecuted in this case?

16        A.   Yes, sir.

17        Q.   The other SNM members were?

18        A.   Were they concerned about it?

19        Q.   Yes.

20        A.   Well, yes.

21        Q.   Because the paperwork on Javier Molina was

22   that he had ratted Jesse Sosa to the police, right?

23        A.   Yes, sir.

24        Q.   So that you and Agent Acee talked about

25   recording Jesse Sosa?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4247

1          A.   Yes, sir.

2          Q.   Did you try to record Jesse Sosa?

3          A.   Yes, sir.

4          Q.   Did you record Jesse Sosa?

5          A.   No, sir.

6          Q.   Why not?

7          A.   Because he never gave me any relevant

8     information.

9          Q.   Did you try?

10         A.   I tried.

11         Q.   Now, where was -- let me ask you this:  Was

12    "Marijuano" in Q pod?

13         A.   He wasn't with me.

14         Q.   And "Marijuano" was Lupe Urquizo, right?

15         A.   He was upstairs.  But I don't remember

16    nobody being downstairs with us.

17         Q.   Lupe Urquizo was the individual that --

18         A.   I know who "Marijuano" is.

19         Q.   Okay.  Just so that the Court recalls, this

20    is the person that supposedly brought the paperwork

21    down the second time right before Molina got

22    murdered, right?

23         A.   Him and Archie, yes.

24         Q.   Archie being Mauricio Varela?

25         A.   Yes, sir.



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                        1-800-669-9492
                                                  e-mail: info@litsupport.com

DNM 4248

```
 1         Q.   Did you ever try to record Lupe Urquizo?

 2         A.   No, sir.

 3         Q.   Were you ever placed next to him?

 4         A.   No, sir.

 5         Q.   Now, when you're at -- I'm going to jump

 6    around in time just a little bit -- but when you're

 7    at Southern in the yellow pod, you knew that Rudy

 8    Perez was in the blue pod, right?

 9         A.   Rudy Perez was in blue pod, yes, sir.

10         Q.   And you knew that he was sick?

11         A.   Yes, sir.

12         Q.   He had some health problems?

13         A.   Yes, sir.

14         Q.   Needed a walker to get around on?

15         A.   Yes, sir.

16         Q.   Had the nurses come giving him medication

17    on a daily basis?

18         A.   Yes, sir.

19         Q.   And when you were -- skipping ahead now --

20    back to PNM, in the fall of 2015, before you meet

21    Agent Acee at MDC, you said that Mr. Perez was there

22    at PNM, right?

23         A.   Yes, sir.

24         Q.   And you spoke to him a little bit?

25         A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4250

```
 1        Q.   And you knew he was still sick?

 2        A.   Yes, sir.

 3        Q.   Still took a lot of medications?

 4        A.   Yes, sir.

 5        Q.   Had to get wheeled around the place in a

 6   wheelchair; he wasn't allowed to walk around?

 7        A.   Yes, sir.

 8        Q.   You knew all that?

 9        A.   Yes, sir.

10        Q.   And you knew that when you got next to Mr.

11   Perez in the Q pod in February of 2016, right?

12        A.   Yes, sir.

13        Q.   As a matter of fact, in the pod outside of

14   his cell they kept his wheelchair, didn't they?

15        A.   Yes.

16        Q.   They took him to medical a lot?

17        A.   Yes, sir.

18        Q.   And every day they would come and give him

19   medication, wouldn't they?

20        A.   Yes, sir.

21        Q.   You saw that happen?

22        A.   Yes, sir.

23        Q.   Just like you described, they come and they

24   crush up the pill, and they make you take it?

25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4250

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 251

1      Q.   So you knew that was happening for Mr.

2   Perez?

3      A.   Yes, sir.

4           MR. VILLA:   May I have just a moment, Your

5   Honor?

6           THE COURT:   You may.

7      Q.   Now, in the Q pod, you were placed there

8   not because of discipline, but because you were going

9   to try to record Mr. Perez, right?

10      A.   Yes, sir.

11      Q.   But individuals that are there normally are

12   there for some sort of disciplinary reason, right?

13      A.   Yes, sir.  Not apparently.  I was at PNM

14   before that.  I was in Q pod.  So I was under

15   investigation pending Interim Level 6.

16      Q.   That was after your parole violation?

17      A.   Yes, sir.

18      Q.   But before you had cooperated?

19      A.   Yes, sir.

20           MR. VILLA:   Your Honor, I believe we're on

21   D for Mr. Perez, if I'm not mistaken.

22      Q.   Mr. Cordova, I'm just going to show you

23   this on the screen.  I have here a disc.  It's

24   entitled, "PNM North Edited Walk-through" with the

25   label Defendant's Exhibit RP-D.  Do you see that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4251

1    there?

2          A.   Yes, sir.

3          Q.   I'm going to represent to you there is a

4    video that I'm going to show you of a walk-through

5    that was done at PNM.  I'm going to see if you

6    recognize that, okay?

7                Do you see that on your screen, Mr.

8    Cordova?

9          A.   Yes.

10         Q.   I've got a video here, you see on the left

11   where it has Q 102 on a door?

12         A.   Yes.

13         Q.   Does that look like the cell that you were

14   in when you were next to Mr. Perez?

15         A.   Yes, sir.

16         Q.   I'm going to play the video here for a

17   little bit.

18                (Video played.)

19         Q.   Now, I paused it here just a second.  Can

20   you see that next to 102 is Q 101?

21         A.   Yes, sir.

22         Q.   And that's the cell where Mr. Perez was in

23   when you recorded him?

24         A.   Yes, sir.

25         Q.   And you see this pole here in the middle of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4252

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253

```
 1    the screen where I just put the pink arrow?
 2         A.   Yes, sir.
 3         Q.   Is that where they kept Mr. Perez'
 4    walker -- or excuse me, wheelchair?
 5         A.   Right there.
 6         Q.   Is that yes?
 7         A.   Yes, sir.
 8         Q.   Okay.  And just make sure -- I know you're
 9    looking at the video, you might have to pull the mic
10    over just so we can hear you.
11         A.   It's a little bit more in front of his
12    door.
13         Q.   The wheelchair was?
14         A.   Yeah.
15         Q.   Okay.
16              (Played video.)
17         Q.   Now, we're going into Q 101 here.  And the
18    last time you see there on the bottom, 14:48:54?  Do
19    you see how that clock is running there on the
20    bottom?
21         A.   Yes, sir.
22         Q.   Is that about where we are?
23         A.   Yes.
24         Q.   Does the Q 101 cell look about the same as
25    the way your cell was?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4253

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254

```
 1        A.   Yes, sir, without that here on that wall
 2   right there, on that side of the wall.  My heater is
 3   underneath the bunk, like his is.
 4        Q.   It's underneath the bunk where the heaters
 5   are that you're able to talk?
 6        A.   Yes, sir.
 7        Q.   And we're about to go under there, I think,
 8   here in just a second.  And this is the upper vent
 9   that circulates the air?  We're now at about
10   14:49:33?
11        A.   Yes, sir.
12        Q.   Sometimes you talked through those vents,
13   right?
14        A.   Yes, sir.
15        Q.   But for Mr. Perez, it was the heater under
16   the bed; is that right?
17        A.   Yes, sir.
18        Q.   So what we're looking at now, at about
19   14:50, that's underneath the desk, right?
20        A.   Yes, sir.
21        Q.   And 14:50:07, we're underneath the bed
22   looking at the heater vent?
23        A.   Yes, sir.
24        Q.   And this is again in Mr. Perez' room; true?
25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4254

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255

1      Q.   Could you hear better talking through this

2  vent than the other one?

3      A.   Almost the same.

4      Q.   Did you ever talk to Mr. Perez through the

5  other vent?

6      A.   When I would just be pacing back in my

7  cell.  Because if you can rewind it, through those

8  holes, you can see into the next cell.

9      Q.   Oh, I see.  Okay.  So from the vent above

10 the desk, you can actually see into the next cell?

11     A.   Yes, sir.

12     Q.   So occasionally you guys spoke that way?

13     A.   Yes, sir.  But I never recorded him right

14 there.

15     Q.   I understand.  So you just recorded him

16 under the bed?

17     A.   Yes, sir.

18     Q.   So now we're going into Q 102.  This is

19 about 14:56:27.  Does that look about right to you,

20 Mr. Cordova?

21     A.   Yes, sir.

22     Q.   Does this cell look about the same as it

23 looked when you were there?

24     A.   Yes, sir.

25     Q.   So now we're looking under the bed.  This

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4255

```
 1   is 14:56:57.  This is the vent where you would have

 2   spoken to Mr. Perez; correct?

 3       A.   Correct.

 4       Q.   And I think you testified you put the

 5   recording device right onto the vent?

 6       A.   Right under it.

 7       Q.   Under it?

 8       A.   Right under it, right up against it.

 9       Q.   Where we're looking right now?

10       A.   Yes, sir.

11       Q.   This is 14:57:23, 24?

12       A.   You can hear clearer under it.

13       Q.   Okay.

14       A.   It's got a screen just like that, with

15   holes in it, and you can see -- you can hear better.

16       Q.   How do you signify to Mr. Perez that you

17   wanted to speak to him?

18       A.   I knock on the desk.  And then I just

19   say -- I just call him through the vent, and I start

20   talking to him.

21       Q.   Now, this particular Q pod, you knew at the

22   time was a Level 6 pod?

23       A.   Yes, sir.

24       Q.   And you had testified, I believe, earlier

25   about the restrictions there in Level 6?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4256

```
 1          A.    Yes, sir.

 2          Q.    So let me go a little bit further.

 3                (Video played.)

 4          Q.    I'm going to pause there at 14:58:47.  Now,

 5     I understand that it's your testimony you didn't

 6     provide Mr. Perez any Suboxone before you questioned

 7     him, right?

 8          A.    Yes, sir.

 9          Q.    But if you were -- if you had Suboxone, at

10     least in the past, it's your testimony that you would

11     happily share it with another carnal?

12          A.    Yes, sir.

13          Q.    And if you're both in a cell similar to

14     this, is there a way that you could provide Suboxone

15     to each other?

16          A.    Yes, sir.

17          Q.    How do you do that?

18          A.    Can you see those holes through the vent?

19          Q.    The holes in the upper vent on the desk?

20          A.    Yeah.  You can see into the next room.

21          Q.    Yes, sir.

22          A.    You make a little fishing pole, and you put

23     it on the end of the fishing pole and send it

24     straight through.

25          Q.    And it works like that, no problem?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4257

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4258

```
 1        A.    No problem.

 2        Q.    Is there any way to pass things under the

 3   doors?

 4        A.    Nah, but Suboxone, you wouldn't want to do

 5   it like because you wouldn't want to get it trapped

 6   on the freeway.  That's what we call the pod out

 7   there, the freeway.

 8        Q.    So the walkway between the two cells is the

 9   freeway?

10        A.    Yes, sir.

11        Q.    And you wouldn't want to try to send the

12   Suboxone that way, right?

13        A.    No.  The only thing we usually send like

14   that is just soups, chips.  Unless we really have to

15   fish.  That's a little different, you know?

16        Q.    Say that again.

17        A.    Unless I have to fish four houses down,

18   then I'll do it like that.  But right there, I just

19   make a little pole, and pass it -- put it on the tip

20   and pass it right through.

21        Q.    But if somebody, say, four houses down,

22   meaning four cells down, wanted something, you could

23   try to fish them a line that way?

24        A.    Yes, sir.

25        Q.    That's like a piece of string?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4258

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 259

```
 1        A.   Yes, sir.

 2        Q.   You could send something down the line, and

 3   they catch it and bring it in?

 4        A.   Yes, sir.

 5        Q.   You can send Suboxone that way?

 6        A.   Yes, sir.

 7             MR. VILLA:  Your Honor, I guess for the

 8   record, I'd move to admit RP-D.  It sounds like Mr.

 9   Cordova is familiar with the video that's on there.

10             THE COURT:  Any objection, Mr. Castellano?

11             MR. CASTELLANO:  If I can just have a

12   representation about what the rest of the video

13   shows, I don't think we'll have a problem.

14             MR. VILLA:  Oh, I'd be happy to show -- the

15   other half is the rec yard.  And Mr. Cordova is

16   probably familiar with it.  But that's coming up here

17   next.

18             THE COURT:  All right.

19             MR. CASTELLANO:  I don't have an objection.

20   I was just wondering what the rest of the video

21   shows.

22             THE COURT:  All right.  Any objection from

23   anyone?  Not hearing any, Rudy Perez' Exhibit D will

24   be admitted into evidence.

25        Q.   Mr. Cordova, when you're in Level 6, during
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4259

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 260 of 260

1   this time that you're actually doing the cooperation,

2   did they take you out to rec and all that sort of

3   stuff?

4        A.   Yes, sir.  I went out maybe about once.

5        Q.   But you're supposed to go or be allowed to

6   go at least five times?

7        A.   You're allowed, but you don't have to go.

8        Q.   You can choose not to?

9        A.   Yes, sir.

10       Q.   So, if you go to rec, they allow you five

11  times a week?

12       A.   Yes, sir.

13       Q.   And you're at rec outside for an hour?

14       A.   Yes, sir.

15       Q.   Did you ever see Mr. Perez go to rec?

16       A.   Once in a while.

17       Q.   But not every day?

18       A.   Not every day.

19       Q.   Did he tell you about why he didn't go to

20  rec?

21       A.   Just some people don't like going out all

22  the time.

23       Q.   Did he ever tell you he didn't go to rec

24  because they wouldn't let him take his wheelchair

25  there?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4260

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261

```
 1          A.   He never told me that.
 2          Q.   How long were you next to Mr. Perez for
 3    this period of time when you're recording him?
 4          A.   I would say a month, approximate; probably
 5    about a month.
 6          Q.   Now, I'm going to continue and see if you
 7    recognize the rec yard here.  When you go to rec,
 8    they take you out one at a time?
 9          A.   Yes, sir.  It's a two-man escort.
10          Q.   You're escorted by two corrections
11    officers?
12          A.   Yes, sir.
13          Q.   So now we're at the elapsed time on this
14    video, 15:58:08.  Do you recognize this as the
15    walkway to get to the rec yard?
16          A.   Yes, sir.
17          Q.   When they take you out to rec, do they put
18    you in handcuffs and a belly chain?
19          A.   Just handcuffs behind your back.
20          Q.   Handcuffs behind your back, that's it?
21          A.   Well, they take you to a strip cage, and
22    then they put you in the strip cage, uncuff you
23    through a cuff port, then they strip you naked, you
24    squat and cough for them.  Then they put cuffs on you
25    and take you to the yard.
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                           1-800-669-9492
                                                                 e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4261

1          Q.   With two corrections officers at a time?

2          A.   Yes, sir.

3          Q.   So now we're looking down this hallway.

4     It's 15:59:02, is this the entrance to the cages for

5     the rec yard?

6          A.   Yes, sir.

7          Q.   Now, it says on the video that it was

8     filmed June 6, 2017.  Do the rec yards look the same

9     or similar to the way they looked when you were

10    there?

11         A.   Yes, sir.

12         Q.   Does anything look different?

13         A.   No, sir.

14         Q.   Did you ever see Mr. Perez out in the rec

15    yard while you were there?

16         A.   Yeah, sometimes.

17         Q.   Did you see him in his wheelchair, or was

18    he walking?

19         A.   Sometimes he'd be in his wheelchair,

20    sometimes he'd be walking.

21              MR. VILLA:  I'll stop it there.  Your

22    Honor.  I'll represent to the Court the rest of it is

23    more parts of the rec yard.

24         Q.   Did you guys have a slang term for

25    Suboxone?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4262

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4263

```
 1          A.    Yeah.

 2          Q.    What was it?

 3          A.    Naranja.

 4          Q.    Is that a Spanish word?

 5          A.    Yeah, it's Spanish for orange.

 6          Q.    For orange.  How did you come up with -- if

 7     you know -- with that slang term for it?

 8          A.    It's because the color is orange.

 9          Q.    The strips are?

10          A.    Yes, sir.

11          Q.    I see.  Did you have slang terms for -- if

12     you want to ask somebody:  Do you want to get high,

13     or are you high?  What kind of terms did you use for

14     that?

15          A.    Yes, sir.  A cura.  "Wanna cura?"

16          Q.    What does that mean?

17          A.    Shot.  A cura is a shot.  It's like Spanish

18     for like a term, like, "Get well."  Like a cura.  So

19     it's like:  "You want a get well shot?"

20          Q.    Did you ever use the term "channel change"?

21          A.    Yes, sir.

22          Q.    What is a channel change?

23          A.    Meaning getting high.

24          Q.    Because a person is getting high, they're

25     changing their own channel?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4263

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 264

```
 1        A.   Yes, sir.

 2        Q.   All right.  Now at the time that you

 3   recorded Mr. Perez, did you know how long he'd been

 4   there?

 5        A.   Maybe at the North.

 6        Q.   At the North?

 7        A.   Probably about a good year,

 8   year-and-a-half.

 9        Q.   And you knew that because he told you?

10        A.   Because we were all there about that much.

11        Q.   Did you know that he was kept there in

12   Level 6 during that entire year-and-a-half?

13        A.   Yes, sir.

14        Q.   Did he ever tell you about whether he had

15   been given a hearing or an ability to challenge being

16   there in Level 6?

17        A.   Well, they would give us hearings, but they

18   would bring us -- and they would tell us that we were

19   placed on Interim Level 6, due to an investigation

20   going on with the SNM, with the power struggle, and

21   like wars, and people getting killed, getting moved

22   on, and stuff.

23        Q.   So did the individuals like Mr. Perez and

24   yourself, at least before your cooperation, did they

25   ever get a chance to get out of the Level 6 after the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Molina murder?

 2         A.   Yes.

 3         Q.   When did that happen?

 4         A.   I don't know.  A lot of them came here, but

 5    some of them went back to the South.

 6         Q.   So the South would be Level 5?

 7         A.   Level 4.

 8         Q.   Level 4?

 9         A.   Yes, sir.

10         Q.   Okay.  But as long as you knew, and at the

11    time you recorded Mr. Perez, he had been locked down

12    there for about a year-and-a-half?

13         A.   Yes, sir.  About maybe a little longer, a

14    couple of years.

15         Q.   Have you ever been locked down that long?

16         A.   Yeah.  I spent most of my time in solitary

17    confinement.

18         Q.   What does that do to you?

19         A.   Nothing.

20         Q.   Does it affect -- does it change you?  Does

21    it affect you at all?

22         A.   Some ways, yeah; some ways, no.

23         Q.   It's different than Level 4, when you can

24    be out in the pod the whole time, isn't it?

25         A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4265

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 266

```
 1        Q.   And the recreation when you're on Level 4

 2   is different?  You're allowed to interact with other

 3   people?

 4        A.   Yes, sir.

 5        Q.   When was the first time that you heard that

 6   Mr. Perez and Mr. Herrera said you gave them Suboxone

 7   before you recorded them?

 8        A.   This is the first time I've heard about

 9   this.

10        Q.   So today?

11        A.   Today.

12        Q.   Nobody mentioned anything to you before?

13        A.   Well, my lawyer talked to me and told me:

14   This is what it is.

15        Q.   Last night?

16        A.   I keep in contact with my lawyer regularly.

17   Yes, last night he told me, when I came down here, he

18   said, You're going to have a court for this, and this

19   is going to be the hearing.

20        Q.   Okay.  So when the Government filed their

21   response --

22             THE COURT:  Hold on just a second.  Mr.

23   Samore, why don't you come up here and get a little

24   closer, in case you need to make any objection.

25             Go ahead, Mr. Villa.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    So Mr. Cordova, when the Government filed a
 2   response in this Court saying that Mr. Perez and Mr.
 3   Herrera's allegations that you gave him Suboxone
 4   weren't true, you didn't tell them that?
 5        A.    Tell -- I don't understand your question.
 6        Q.    Okay.  So we filed a motion, and the
 7   Government files a response.  And you know what a
 8   motion and a response are, right?
 9        A.    Yes, sir.
10        Q.    And the Government's response -- have you
11   seen the Government's response in this case, to this
12   issue, this motion?
13        A.    No.  I talked to my lawyer.
14        Q.    All right.  I don't want to get into
15   necessarily what you found out.  But is it your
16   testimony that today, or maybe yesterday, is the
17   first time you ever heard that there was this
18   accusation being made?
19        A.    Yes, this is when my lawyer talked to me
20   prior to this.
21             THE WITNESS:  When was it, John?
22             MR. SAMORE:   I can't answer that.
23             THE WITNESS:  Oh, you can't.
24        A.    All right.  So about a couple days ago, he
25   told me:  You're going to be subpoenaed.  They're
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4267

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268

1  trying to impeach you.  And then -- so we don't know

2  when the court will be, but it will be soon.  Then

3  all of a sudden, they just picked me up and brought

4  me.

5       Q.  All right.  Let me ask you this:  Did you

6  have a conversation with Agent Acee in January of

7  2017?

8       A.  January of 2017, conversation about what?

9       Q.  Did you have any conversation at all with

10 Agent Acee January of this year?

11      A.  I know he cut me off because of what

12 happened with me, and that was it.

13      Q.  But he came to see you, didn't he?

14      A.  Yes.

15      Q.  He talked to you?

16      A.  Yes.

17      Q.  At any point in that conversation, did he

18 ask you whether you had provided Suboxone to Mr.

19 Perez or Mr. Herrera?

20      A.  No, sir.

21      Q.  Did he tell you that that was an allegation

22 in this case?

23      A.  No, sir.

24      Q.  So you didn't learn that that was an

25 allegation in this case until a couple days ago?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4268

1       A.   No, sir.

2       Q.   Well, is that true?

3       A.   Yes, sir.

4       Q.   And you understand, of course, that if you

5   had provided Suboxone to Mr. Perez before you

6   recorded him, that might put you in some serious

7   trouble?

8       A.   Yes, sir.

9       Q.   And if you'd provided it to Mr. Herrera

10  before you recorded him, that might also put you in

11  serious trouble?

12      A.   Yes, yes, sir.

13      Q.   Now, I think we heard that when you got

14  recording devices for recording Mr. Perez, it came

15  from an STIU officer?

16      A.   Yes, sir.

17      Q.   And they would act like they're doing a

18  shakedown of your room, and leave the recording

19  device?

20      A.   One time they did that.  The other time I

21  got it through a tray.

22      Q.   For Mr. Perez?

23      A.   No.

24      Q.   Just for Mr. Herrera?

25      A.   For Mr. Herrera.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4269

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 270

```
 1        Q.   So with Perez it was the shakedown?
 2        A.   Yes, sir.
 3        Q.   How long did you have that recording device
 4   before you turned it back in?
 5        A.   Till they came and picked me up.
 6        Q.   So the entire time you were next to Mr.
 7   Perez?
 8        A.   Yes, sir.
 9        Q.   And your estimate was a couple weeks, maybe
10   a month?
11        A.   Yes, sir.
12        Q.   Other than when they brought the digital
13   recording device, did they do any other shakedowns of
14   your room during that time period that you were
15   recording Mr. Perez?
16        A.   No, sir.
17        Q.   Did they do any drug testing of you?
18        A.   No, sir.
19        Q.   And who was the STIU officer that brought
20   you the recording device for Mr. Perez?
21        A.   Cupit.
22        Q.   Mr. Cupit.  Do you know his first name?
23        A.   No, sir.
24        Q.   Did you have any conversations with Mr.
25   Cupit when that happened, or he just dropped it off
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4270

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 271

```
 1   for you?

 2        A.   He pulled me out, told me, "I'm going to

 3   drop a recorder in your cell."

 4             I said, "All right."

 5             He went in there, it was shaken down, and

 6   he dropped recorder in, and he left.

 7        Q.   Cupit was present when you had your meeting

 8   with Acee about doing this, right?

 9        A.   Yes, sir.

10        Q.   And he was present at MDC?

11        A.   No, he wasn't.

12        Q.   Was he present at the FBI office when you

13   met?

14        A.   Yes, sir.

15        Q.   And Captain Sapien, was he present for the

16   meeting --

17        A.   I can't recall.

18        Q.   How about any meetings?

19        A.   Huh?

20        Q.   Was Captain Sapien present for any

21   meetings?

22        A.   Yes.

23        Q.   Which ones?

24        A.   When I went to go see my lawyer.

25        Q.   Okay.  You don't recall seeing him before
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4271

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 272

```
 1    that?

 2         A.    No, sir.

 3         Q.    Now, you received a target letter in this

 4    case, didn't you?

 5         A.    What do you mean?

 6         Q.    Well, it's a letter from the United States

 7    Attorney's Office saying that you might be the target

 8    of a grand jury investigation?

 9         A.    No, sir.

10         Q.    You don't ever remember getting a letter

11    like that?

12         A.    No, sir.

13         Q.    Have you ever been prosecuted for anything

14    in connection with this federal investigation?

15         A.    No, sir.

16         Q.    So is it fair to say, since the

17    manslaughter case got resolved, you haven't been

18    prosecuted for anything else?

19         A.    No, sir.

20         Q.    And I think it was your testimony that the

21    money you received on commissary from the FBI, that

22    you were getting more money than that from your

23    family?

24         A.    Yes, sir.

25         Q.    Did the FBI ever give money to your family?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4272

```
 1        A.   No, sir.

 2        Q.   They never gave money to your wife?

 3        A.   No, sir.

 4        Q.   Or anybody else?

 5        A.   No, sir.

 6             MR. VILLA:   May I have a moment, Your

 7   Honor?

 8             THE COURT:   You may.

 9        Q.   Just a couple of things I forgot to ask

10   you, Mr. Cordova.

11             Is the price of Suboxone higher on the

12   streets than it is in prison?

13        A.   No, it's less on the streets, and higher in

14   prison.

15        Q.   Do you know why that is?

16        A.   Because it's prison.

17        Q.   You pay more?

18        A.   Yes, sir.

19        Q.   How do you pay for it?

20        A.   You send money to people.

21        Q.   On the outside.  What if you want it from

22   somebody else that has it on the inside, that wants

23   to sell it to you?

24        A.   You give them canteen.  It's mostly

25   canteen.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4273

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 274

```
 1          Q.   But that value -- whatever the canteen is
 2     is going to be higher than what you might pay for it
 3     on the street?
 4          A.   Yes, sir.
 5          Q.   Okay.  Now, I want to go back to something
 6     you said earlier, that after the Molina murder, when
 7     they locked everybody down, that they knew right away
 8     that the piece -- the shank had come from Mr. Perez'
 9     walker.  You said they knew that, right?
10          A.   Yes.
11          Q.   Who is "they"?  You're talking about STIU?
12          A.   Yes, sir.
13          Q.   How did you know that they knew?
14          A.   Because when "Red" came back, "Red" was
15     telling Perez about that.  And when we would go to
16     yard in the cages, all that was out there, you know
17     what I'm saying?
18          Q.   Yeah.
19          A.   So that's why.
20          Q.   Okay.  And that was information that you
21     knew at the time you recorded Mr. Perez?
22          A.   Yes, sir.
23          Q.   And you used that information, didn't you?
24          A.   Yes, sir.
25          Q.   To talk to Mr. Perez about the Molina
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4274

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275

    1    murder?

    2         A.   Yes, sir.

    3         Q.   And get him to talk to you about the

    4    murder?

    5         A.   Yes, sir.

    6         Q.   And isn't it true that, in the course of

    7    those recordings, Mr. Perez was saying:  I didn't

    8    cooperate, I didn't tell the police anything, or STIU

    9    anything?

    10        A.   What he means when he says that is:  "I

    11   didn't say nothing."  In other words, see no evil,

    12   hear no evil, speak no evil.  So what he's stating is

    13   "I didn't say nothing," get what I'm saying?

    14        Q.   Yes.

    15        A.   So, in other words, I'm telling you, I see

    16   you do something, then I tell you, I didn't see you

    17   do, you know what I'm saying?  So what he's stating

    18   is he gave it to him, but he don't know nothing about

    19   it.  So, in other words, he's keeping his mouth shut,

    20   he's not making a statement to the police.  That's

    21   what he's stating.

    22        Q.   But didn't he also say to you that at the

    23   time, after the Molina murder, he did not say

    24   anything to STIU, he did not cooperate?

    25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 276

```
 1        Q.   He wanted you to know that?

 2        A.   He wanted me to know that.

 3        Q.   Because you could spread the word to the

 4   other carnals that he wasn't a cooperator?

 5        A.   Yes.

 6        Q.   And, therefore, he wouldn't get hit?

 7        A.   Yes.  What he was doing is just trying to

 8   get, I guess, people on his side, and make them

 9   believe -- and he shouldn't have to do that, though,

10   you know what I mean?

11        Q.   I understand.  But he was protecting

12   himself?

13        A.   Well, that's how it goes in the high game.

14        Q.   Right, so he didn't get moved on?

15        A.   Yeah.

16             MR. VILLA:  That's all I have.  Your Honor.

17             THE COURT:  Thank you, Mr. Villa.

18             Anyone else have cross-examination of Mr.

19   Cordova?

20             All right.  Mr. Castellano.

21             MS. JACKS:  Your Honor --

22             THE COURT:  Ms. Jacks?

23             MS. JACKS:  I was told by Ms. Fox-Young

24   that they might seek to interrupt with a witness

25   that --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4276

```
 1              MS. FOX-YOUNG:  Your Honor, we have a very
 2    short witness.  I talked to Mr. Beck about what may
 3    be a ten-minute witness.  He's from way up north, and
 4    I was hoping we might get through him today.  So I
 5    wanted to let Ms. Jacks know that he's got to get
 6    back to El Rito.  And I don't think the Government
 7    objects.  But we don't need to do it now.  Perhaps we
 8    can finish up.
 9              THE COURT:  Okay.  What if we go to 4:30 on
10    cross-examination of Mr. Cordova, then we put him on
11    right after we come back from the break, so about
12    4:45, 5:00?
13              MS. FOX-YOUNG:  I think that would be fine
14    Your Honor.  And I don't want to cut Ms. Jacks short.
15              THE COURT:  I doubt anybody is going to cut
16    Ms. Jacks short.
17              MS. JACKS:  I'm happy to go whenever is
18    convenient.
19              THE COURT:  All right.  Get after it.
20                        EXAMINATION
21    BY MS. JACKS:
22         Q.  Mr. Cordova, you, prior to becoming an
23    informant in this case, you considered yourself an
24    SNM soldier; is that right?
25         A.  Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And you got out of prison shortly after the

 2   Molina homicide?

 3        A.   Yes, ma'am.

 4        Q.   What was the date?

 5        A.   I believe it was April 28.

 6        Q.   Of 2014?

 7        A.   Yes, ma'am.  Is that correct?

 8        Q.   When did you get rearrested?

 9        A.   I got rearrested December 3rd.

10        Q.   Of the same year, 2014?

11        A.   Yes, ma'am.

12        Q.   And that arrest, December 3rd of 2014, was

13   for a homicide?

14        A.   Yes, ma'am.

15        Q.   That you were alleged to have committed?

16        A.   Yes, ma'am.

17        Q.   And you ultimately went to trial on that

18   case?

19        A.   Yes, ma'am.

20        Q.   And you were convicted of a lesser charge,

21   a manslaughter?

22        A.   Yes, ma'am.

23        Q.   And when was that jury verdict?  When was

24   that conviction?

25        A.   I'm sure it was on December 8, if I'm not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4278

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

```
 1    mistaken.

 2         Q.   Of 2015?

 3         A.   Yes, ma'am.

 4         Q.   So when you first were approached, and met

 5    Agent Acee, you were convicted of the manslaughter,

 6    but awaiting your sentencing?

 7         A.   Yes, ma'am.

 8         Q.   And that's when you were at the MDC in

 9    Albuquerque?

10         A.   Yes.

11         Q.   So you would agree with me that you killed

12    somebody in December of 2014, right?

13         A.   Yes, ma'am.

14         Q.   Who?

15         A.   Ray Gurule.

16         Q.   Ray Gurule?

17         A.   Gurule.  Yes, ma'am.  G-U-R-U-L-E.

18         Q.   Okay.  And why did you kill him?

19         A.   I didn't kill nobody, Miss.

20         Q.   So you got convicted of a crime you didn't

21    commit?

22         A.   Yes, ma'am.

23         Q.   And you were falsely accused of the killing

24    of Ray Gurule?

25         A.   Yes, ma'am.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4280

```
 1          Q.    Were there allegations in your homicide
 2    case that you had committed a crime because you were
 3    a soldier for SNM?
 4          A.    In that crime?
 5          Q.    Yes.
 6          A.    No, ma'am.
 7          Q.    So it was -- the prosecutor in that case
 8    alleged that you killed somebody, but they thought
 9    you'd done it for your own purposes?
10          A.    Yes.
11          Q.    And it sounds like your defense was you
12    didn't do it?
13          A.    Yes, ma'am.
14          Q.    And the jury convicted you of a lesser
15    charge?
16          A.    Yes, ma'am.
17          Q.    Would you agree with me that as an SNM
18    soldier, it's possible for you to commit crimes based
19    on your own motivations that have nothing to do with
20    SNM?
21          A.    No, ma'am.  What it is, when you're a
22    soldier, you have to do sanctioned crimes.  They have
23    to be sanctioned by the tabla.  We don't want idiots
24    running around.  That's how they do it.  They don't
25    want idiots running around causing trouble, where
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4280

```
 1    trouble is not to be caused, you know what I'm
 2    saying?
 3         Q.   So I'm just curious, is it possible when
 4    you're an SNM soldier, based on your experience, that
 5    if you, for example, decided to get into a fight with
 6    somebody, that it was for your own personal reasons?
 7         A.   Yes, ma'am, you can also do that.
 8         Q.   Okay.  Because you don't stop being a human
 9    being, do you?
10         A.   Exactly.
11         Q.   And if someone irritates you or aggravates
12    you for a personal reason, you might decide to take
13    action completely on your own?
14         A.   It depends what it is, or who it is.  It
15    gets real political.  If it's another gang member,
16    there might be issues there.  So it depends who it
17    is.  You can't just walk up to anybody and do
18    anything at the time, because it's real straight
19    policies and rules on certain things you need to do
20    in the SNM.
21         Q.   Let me just stop you there, Mr. Cordova.
22    Are you making the assumption I'm talking about
23    crimes in prison versus crimes in the streets?
24         A.   I'm talking about it all in general.
25         Q.   Anywhere?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4281

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 282

```
 1        A.    Anywhere.

 2        Q.    And so your answer would apply to

 3   anywhere -- that anywhere, even if you're an SNM

 4   soldier, anywhere where you are, you're capable of

 5   committing a crime based on your own motivation, and

 6   not being ordered by the gang?

 7        A.    As long as you don't cause conflict within

 8   the clique, they don't really care about it.  But if

 9   it brings conflict and disruption, then they care.

10        Q.    When you met with Agent Acee in January of

11   2016, did Agent Acee communicate to you that he knew

12   you had just been convicted of a homicide?

13        A.    Yes, he knew I'd been convicted of a

14   homicide.

15        Q.    And he knew you were awaiting sentencing?

16        A.    Yes, ma'am.

17        Q.    And did -- I think you testified earlier

18   that during that conversation, that's when Agent Acee

19   told you that he was looking at you as the target of

20   a racketeering prosecution?

21        A.    No, that's not what he said.  He said:

22   This is what things are being said.  But, no, that's

23   not true.  Because in my court it says other.  So you

24   can go ahead and you can look up my case if you want,

25   yourself, and it will state there were no witnesses,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   stated different.  You get what I'm saying?
 2        Q.   I understand.  Your position is your case
 3   had nothing do with SNM Gang activity.  I understand
 4   that.
 5             My question is, when you met with Agent
 6   Acee --
 7        A.   No, he wasn't looking at me for that
 8   murder.
 9        Q.   Okay.  Did he tell you that he was looking
10   at you as the potential target of a racketeering
11   prosecution?
12        A.   What Bryan Acee asked me:  Did that person
13   disrespect you in any way or disrespect the SNM?  And
14   I told --
15        Q.   Mr. Cordova, I'm going to ask you if you'd
16   answer the question, and then we can go on and talk
17   about what you want to talk about.
18        A.   Yes, ma'am.
19        Q.   Okay.  So the question was:  In January of
20   2016, when you first met with Agent Acee, did he tell
21   you you were being looked at or considered as a
22   target of some sort of racketeering prosecution?
23        A.   Yes, ma'am.
24        Q.   And did he tell you the types of crimes
25   that he thought you had committed in the past that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4284

```
 1   made you such a target?
 2        A.   He didn't say that.  But he said I was
 3   being looked at.
 4        Q.   Okay.  Well, did he tell what things you
 5   had done that were causing you to be looked at?
 6        A.   At that time, no, ma'am.
 7        Q.   Did he mention to you that the homicide
 8   that you'd just been convicted of was something he
 9   was looking at, Agent Acee?
10        A.   He asked me:  Is it SNM related?  Did they
11   disrespect the SNM in any way, or anything like that?
12   And I said no.
13        Q.   All right.  So during that conversation,
14   you sought to assure him that the crime that you had
15   just been convicted of had nothing to do with the SNM
16   Gang?
17        A.   Yes, ma'am.
18        Q.   But he was asking you questions about
19   whether that crime was related to the gang, right?
20        A.   Yes, ma'am.
21        Q.   And in your mind -- well, did you know --
22   you said you had witnessed people being arrested on
23   the first SNM racketeering takedown?
24        A.   Yes, ma'am.
25        Q.   When Agent Acee told you that you were
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    being looked at as a target of a racketeering
 2    investigation, and asking you questions about a
 3    homicide that you'd just been convicted of, what went
 4    through your mind in terms of what sort of time you
 5    might be facing?
 6         A.    There again, you're putting words in my
 7    mouth.  He never said I'm being looked at for that
 8    murder.  He asked me:  Is it SNM related?  He didn't
 9    say I was being looked at for the murder.  He just
10    asked me:  Is it SNM related?
11         Q.    When Acee told you you were being looked at
12    as target of a racketeering prosecution, what went
13    through your mind in terms of what sort of time you
14    might be looking at?
15         A.    It wasn't also what he had told me.  It was
16    everything else he had talked to me about:  About
17    doing this; about how he's worked with many other
18    organizations, and if he thinks it's worth it.  At
19    one time I thought it was worth it.  But now, it's
20    not worth it.
21         Q.    So he gave you -- he sort of acted as a
22    counselor?
23         A.    He gave me an opportunity to dismantle the
24    SNM.  And I chose to join on is what happened.
25         Q.    Is that how he put it to you:  That here's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4285

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4286

```
 1      your opportunity to dismantle the SNM?

 2           A.   No.  That's how I took it.

 3           Q.   How did Agent Acee put it?

 4           A.   To stop these guys from committing more

 5      murders.

 6           Q.   Did Agent Acee discuss with you

 7      opportunities that perhaps he could present to you if

 8      you were to become a witness for him?

 9           A.   Opportunities?  Like what?

10           Q.   Well, like let's talk about tattoo removal.

11      Did he talk about that with you?

12           A.   He talked about that, he talked about

13      WITSEC facility and all that.  And I denied it.

14           Q.   Let's just go one by one, okay.  He talked

15      about tattoo removal with you; is that right?

16           A.   Yeah.

17           Q.   And did he talk about that maybe he could

18      help you get tattoos removed?

19           A.   But this was after.  This was later on when

20      I spoke to my attorney and him.

21           Q.   In a different conversation?

22           A.   In a different conversation.

23           Q.   Okay.  Well, I want to stick with this

24      first conversation, so give me a second.

25           A.   So, no.  If it's the first conversation,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4287

```
 1   no.
 2        Q.   In the first conversation did he talk to
 3   you about the fact that -- did he talk to you about
 4   the fact that he was going to ask you to wear some
 5   sort of recording device and record conversations?
 6        A.   He said, "Are you willing to do this?"
 7             And I said yes.
 8        Q.   And did he tell you why he wanted you to
 9   wear some sort of recording device to record
10   conversations?
11        A.   That was in the second conversation.  So,
12   no, we never talked about that.  The first
13   conversation I told him what I can do for him, and
14   then we just stayed at that.  That's all it was.
15        Q.   And the idea was, if you would agree to do
16   something for him, he wouldn't continue to pursue you
17   as a target in a racketeering investigation?
18        A.   We didn't really get into that till later
19   on.
20        Q.   Well, is that what you understood, though?
21   Is that one of the reasons you agreed to record
22   conversations?
23        A.   Well, yeah.  No, I knew something --
24        Q.   You knew if you'd agree, Acee would back
25   off, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4287

```
 1          A.   To be honest with you, I just agreed.
 2          Q.   Let's go to the second conversation.
 3   Because in the second conversation I think you said
 4   that he explained to you why he wanted you to wear --
 5   use a recording device?
 6          A.   Because my say-so, my word, wouldn't
 7   matter.  So he needed me to get it on a recording.
 8          Q.   So, essentially, what he told you, if you
 9   say something is true --
10          A.   Get it on a recording.
11          Q.   -- he's not going to believe you unless
12   there is a recording of it?
13          A.   It's not that.  It's just that he needs it
14   on recording.  He can't --
15          Q.   Rely on your word?
16          A.   Not that he don't believe me, because
17   that's the way the court system works, right?
18          Q.   He told you that he couldn't believe just
19   your word, so he would want you to capture these
20   conversations or statements on recordings?
21          A.   In other words, if it's true, get it for
22   him on recording.
23          Q.   So if it's true, prove it, right?
24          A.   Not prove it.  "If it's true, can you get
25   it for me?"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4288

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 289

```
 1                And I said, "Yes, I can."

 2                He said, "Okay, then go ahead."

 3        Q.   And specifically when you discussed these

 4   recordings, were you discussing recording Mr. Perez?

 5        A.   Now what, miss?

 6        Q.   When you discussed making these recordings

 7   with Acee, were you discussing recording Mr. Perez,

 8   Rudy Perez?

 9        A.   Yes, ma'am.

10        Q.   And you had, just about a month or so

11   prior -- been housed with Rudy Perez at PNM, right?

12        A.   I'd say about a few months before that.

13        Q.   Prior to your conviction in the murder

14   case?

15        A.   Yes, ma'am.

16        Q.   And you knew, because you had lived with

17   Mr. Perez at various times over the years, that he

18   had medical problems, right?

19        A.   Yes, ma'am.

20        Q.   Did you know the nature -- did you know the

21   nature of those problems?

22        A.   He just told me he got stabbed and shot a

23   bunch of times.

24        Q.   Okay.  Did Mr. Perez complain to you about

25   the fact that he was in a lot of pain?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4289

1      A.   I know he said it slowed him down.  But how

2   hard?  He was still going.

3      Q.   Did you know, when you talked with Agent

4   Acee, that Mr. Perez was being prescribed medication

5   while he was at PNM?

6      A.   Yes, ma'am.

7      Q.   And the medication in the form of pain

8   killers, right?

9      A.   Yes, ma'am.

10      Q.   Do you know the names of the medication

11   that he was being prescribed based on your

12   conversations with him?

13      A.   I think that Neurontin, Tramadol, Depakote.

14   And I can't recollect the rest.

15      Q.   Vicodin?

16      A.   Vicodin?  I don't know if it was Vicodin,

17   but he told me a lot.

18      Q.   And you knew, when you talked with Agent

19   Acee, that Mr. Perez had been when you last saw him

20   taking those kind of medications on a daily basis?

21      A.   Yes, ma'am.  No, I hadn't talked to Acee

22   about that.

23      Q.   You didn't mention that to Acee?

24      A.   I didn't mention that to him.

25      Q.   But in your mind you knew that Perez was on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4290

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 291291

```
 1   those kind of medications, right?

 2        A.   Yes, ma'am.

 3        Q.   And did you have any opinion as to how

 4   those medications affected Mr. Perez, based on

 5   watching?

 6        A.   Just made him feel good.

 7        Q.   Making him relaxed?

 8        A.   Yeah.  To make him feel good.

 9        Q.   Now, you testified on direct examination

10   about sort of the plan of how you were going to get

11   some sort of recorded statement from Mr. Perez.  Do

12   you recall that testimony?

13        A.   What do you mean?

14        Q.   Well, I think you had a plan, because you

15   said part of your plan was you weren't going to go in

16   there and intimidate him to try to get him to make

17   statements.

18        A.   Intimidate him?

19        Q.   Right.

20        A.   Do I sound intimidating on the recording?

21        Q.   No.

22        A.   There you go.

23        Q.   You didn't hear my question.  I said part

24   of your plan, at least that you testified about when

25   Mr. Castellano was asking you questions, was that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4291

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 292

1   weren't -- you were not going to try to intimidate

2   him, right?

3        A.   I didn't try to intimidate him.

4        Q.   That's not the question.

5        A.   You're asking me if I tried to intimidate

6   him?

7        Q.   No, I'm not.

8        A.   Then what are you asking?

9        Q.   I'm saying part of your plan was

10   deliberately to not intimidate him, right?

11        A.   To not intimidate him.  So what are you

12   trying to say, I'm going to butter him up?

13        Q.   That you're going to what?

14        A.   I'm going to butter him up.

15        Q.   What I'm trying to ask --

16        A.   Can you please get to the point, Miss,

17   because you're, like, confusing me.

18        Q.   Excuse me, that's for the Judge, Mr.

19   Cordova.

20             My question is that you formed a plan in

21   your mind, and with Agent Acee, about how you were

22   going to get these recorded statements from Mr.

23   Perez, right?

24        A.   Of course.

25        Q.   Okay.  And part of that plan was that you



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4292

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4293

```
 1    were going to not -- you were not going to use

 2    intimidation as a tactic?

 3         A.   No.  I did not use intimidation as part of

 4    a tactic.

 5         Q.   And you testified earlier that you were

 6    going to use --

 7         A.   Same question.

 8         Q.   You testified earlier that you were going

 9    to use -- and I'm going to use the term you said --

10    "pressure points."  Do you recall that testimony?

11         A.   Yes, ma'am.

12         Q.   Where did that term pressure points come

13    from?

14         A.   Pressure points is you can't approach him

15    directly, and say, Hey --

16              MS. JACKS:  Object as nonresponsive.

17              MR. CASTELLANO:  Objection, Your Honor.  He

18    is answering the question.

19              MS. JACKS:  No, he's not.

20              THE COURT:  Well, hold on, hold on.

21              THE WITNESS:  Jeez.

22              THE COURT:  Mr. Cordova, do this for me,

23    okay?

24              THE WITNESS:  Yes, sir.  Sorry, Your Honor.

25              THE COURT:  Let's not add a bunch of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 4293

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 294

```
 1   comments while --

 2              THE WITNESS:  Sorry about that.

 3              THE COURT:  -- while the defense lawyers

 4   are asking the questions.

 5              Probably Mr. Castellano doesn't mind what

 6   you say, but we're in cross-examination.  So listen

 7   very carefully to Ms. Jacks' question.  Just answer

 8   it and then be quiet.

 9              Ms. Jacks.

10   BY MS. JACKS:

11        Q.   Let me repeat the question.  Whose term was

12   pressure points?

13        A.   That's my term.

14        Q.   Okay.  And what did that mean?

15        A.   Pressure points is I can't approach him

16   directly and just say, Hey, did you -- you know what

17   I mean?  So I've got to talk to him, and get the feel

18   about what's going to be said next.

19        Q.   Try to put him at ease?

20        A.   Trying to get him to reveal the truth,

21   without asking him directly.  So it's asking him

22   indirectly, and getting him to reveal it on his own.

23        Q.   And you said that you recorded -- let me go

24   back for a second, because I want to ask you a couple

25   of questions about the recordings.  Do you recall
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4294

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4295

```
 1    that Mr. Villa asked you some questions about whether

 2    you made efforts to record Jesse Sosa?  Do you recall

 3    those questions?

 4         A.   Yes, ma'am.

 5         Q.   And you said that you didn't make any

 6    recordings of Jesse Sosa?

 7         A.   No, ma'am.

 8         Q.   And I think -- do you recall the testimony

 9    that you said that you tried to, but Jesse Sosa never

10    gave you any information?

11         A.   Never gave me any information.  So it

12    wasn't worth turning on the recorder.

13         Q.   Okay.  So that's what I'm getting to.  So

14    when you say that you tried to get information from

15    Jesse Sosa, did you talk to him --

16         A.   Yes, ma'am.

17         Q.   -- about -- let me finish the question.

18    Did you talk to him about the homicide of Mr. Molina?

19         A.   Yes, ma'am.

20         Q.   And did you talk to him with an effort to

21    try to get him to make statements about it?

22         A.   Yes, ma'am.

23         Q.   And on how many occasions do you think you

24    initiated those conversations?

25         A.   Probably a few days.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4295

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4296   296

1          Q.    Over the course of a few days?

2          A.    Yes, ma'am.

3          Q.    And was idea that -- I mean, I'm just

4    trying to understand.  You didn't have the recorder

5    on when you tried to talk to him about this?

6          A.    No, ma'am.

7          Q.    So was your plan -- you had a plan for

8    getting statements from Jesse Sosa, too, right?

9          A.    Yes.

10          Q.    And was the plan to get Jesse Sosa to talk

11    about the Molina homicide when the recorder was off,

12    and then get him to talk about it again, but record

13    it?

14          A.    Yes, ma'am.  Not only when it's off.  Like

15    when you're talking to somebody, you get the feel

16    about what they're about to say.  You get to where

17    it's meeting.  And then you turn it on, you get what

18    I'm saying?

19          Q.    Right.  I do.  And is that the same kind of

20    plan that you used to try to get incriminating

21    statements from Mr. Perez?

22          A.    Yes, ma'am.

23          Q.    Kind of talk to him a little bit about it,

24    see what he's going to say?

25          A.    Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And then try to bring the topic up later
 2   when you turn the recorder on?
 3        A.   Yes, ma'am.
 4        Q.   Or when it gets to a point where he seems
 5   like he's just about to make some sort of statement,
 6   you flip the recorder on real quick?
 7        A.   Yes, ma'am.
 8        Q.   And is that a plan of using the recorder
 9   that you just came up with on your own, or did you
10   have any help from anybody?
11        A.   That was my plan.
12        Q.   Earlier, when you testified, you said you
13   didn't have the recorder; that you would turn the
14   recorder off when the person was talking just
15   gibberish?
16        A.   Yes, ma'am.
17        Q.   What is gibberish?
18        A.   When there is nothing to be said; there is
19   nothing to be talked about.  He wasn't talking about
20   murders.  He wasn't talking about nothing that was
21   going to incriminate him.
22        Q.   So that's what I'm getting to.  So, in your
23   mind, if somebody wasn't saying something that
24   incriminated them in a murder, like Agent Acee
25   wanted, you'd turn the recorder off?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4297

```
 1          A.    Yes, ma'am.
 2          Q.    Now, I think you answered some questions
 3    probably from all the lawyers that have been up
 4    questioning you about Suboxone.  Do you know what
 5    Suboxone is?
 6          A.    Yes, ma'am.
 7          Q.    And have you -- you've used it in custody,
 8    right?
 9          A.    Yes, ma'am.
10          Q.    And you've used it at every place where
11    you've been in custody, right?
12          A.    Most places, yes, ma'am.
13          Q.    Well, is there anyplace where you've been
14    in custody that you haven't used it?
15          A.    Yes, ma'am.
16          Q.    Where?
17          A.    Where I'm at now.
18          Q.    Okay.  So right now, you're in sort of
19    what's called the RPP Program?
20          A.    Yes, ma'am.
21          Q.    And you haven't been -- you haven't used it
22    there?
23          A.    No, ma'am.
24          Q.    Other than that, any other facility housing
25    assignment where you have not used Suboxone?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4298

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4299

1          A.   No, I pretty much used them at every

2     facility I was at in the past.  That's the only

3     facility I never used it.

4          Q.   And if I understand your testimony

5     correctly, the way you get Suboxone when you're in a

6     facility, is either somebody brings it in through a

7     visit -- that's one way, right?

8          A.   Yes, ma'am.

9          Q.   Or somebody gives it to you?

10          A.   Yes, ma'am.

11          Q.   Some other inmate gives it to you?

12          A.   Yes, ma'am.

13          Q.   Is there any other way to get it?

14          A.   Yes, ma'am.

15          Q.   How?

16          A.   The mailman.

17          Q.   The mail?

18          A.   Yes, ma'am.

19          Q.   Any other way?

20          A.   Just visits; COs; someone gives it to you,

21     or visits.

22          Q.   Okay.  So you added one there.  You said

23     correctional officers?

24          A.   Yes, ma'am.

25          Q.   So you can get Suboxone sometimes from a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4299

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4300

```
 1    corrupt correctional officer?

 2         A.   You pay them, and he's willing to bring it,

 3    yes.

 4         Q.   So we have through visits, through the

 5    mail, through correctional officers, and through

 6    other inmates?

 7         A.   Yes, ma'am.

 8         Q.   Does that pretty much complete the list the

 9    ways you can get it?

10         A.   Yes, ma'am.

11         Q.   When you were moved in February of 2016,

12    next to the cell where Mr. Perez was, did you have

13    interaction with correctional officers?

14         A.   Just the STIU.

15         Q.   But what about the officers that were in

16    charge of supervising your unit?

17         A.   All right.  Can you clarify the question,

18    Miss, please?  When you say interaction, what kind of

19    interaction?  Do you mean like them bringing me

20    drugs, or them taking me to the yard, taking me to

21    the shower, bringing me my food?

22         Q.   Interaction I mean any contact.  So

23    maybe --

24         A.   Yes, ma'am.

25         Q.   Did you have any contact with correctional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4300

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4301

```
 1   officers?

 2        A.   Yes, ma'am.

 3        Q.   Did you send and receive mail?

 4        A.   No, ma'am.

 5        Q.   In February of 2016, you didn't send or

 6   receive any mail?

 7        A.   No, ma'am.  If I received any mail, it was

 8   more than likely a money order.  That was it.

 9        Q.   Wait, wait.  What's the answer then?

10        A.   It was just a money order.  That's it.

11        Q.   So then the answer would be, yes, you did

12   receive mail?

13        A.   I'm just saying, because I know I get a

14   money order once a month, you know what I'm saying?

15   So if I did, it was only a money order.  It wasn't a

16   letter out, it wasn't a letter in.

17        Q.   Okay.  But you did receive mail?

18        A.   Not when I was next to Perez, no.

19        Q.   Did the money order come through the United

20   States Postal Service?

21        A.   Yes, ma'am.

22        Q.   And it's your testimony that that is not

23   mail?

24        A.   I said if I received mail, it's a money

25   order.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4301

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 302

 1      Q.   My question was:  Did you receive mail.  So

 2   can you answer that question?

 3      A.   I don't recollect.  I don't remember.

 4      Q.   So it seems like what you're saying is a

 5   money order sent through the mail is not mail?

 6      A.   What I'm saying is, if it's a letter, no, I

 7   didn't receive no mail or no letters, when I was next

 8   to Perez.

 9      Q.   Did you get visits in February of 2016?

10      A.   No, ma'am.

11      Q.   And were there other inmates housed with

12   you in February of 2016?

13      A.   Whoever was there.

14           THE COURT:  All right.  Let's take our

15   break for 15 minutes.  I'm not telling the marshals

16   what to do, but if you want to leave Mr. Cordova

17   outside of the courtroom until we get done with this

18   witness, because we're not going to pick up Mr.

19   Cordova right when we start.  Do you understand?

20           (The Court stood in recess.)

21           THE COURT:  Let's see, Ms. Fox-Young, did

22   y'all have your witness you want to put on at this

23   time?

24           MS. FOX-YOUNG:  Yes, Your Honor.  We call

25   Jose Martinez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4302

```
 1                THE COURT:  Mr. Martinez, if you'll come up
 2    and stand next to the witness box on my right, your
 3    left.  Before you're seated, my courtroom deputy will
 4    swear you in.
 5                JOSE BERNARDINO MARTINEZ,
 6          after having been first duly sworn under oath,
 7          was questioned and testified as follows:
 8                     DIRECT EXAMINATION
 9                THE CLERK:  Please be seated and state your
10    name for the record.
11                THE WITNESS:  My name is Jose Bernardino
12    Martinez.
13                THE COURT:  Mr. Martinez.  Ms. Fox-Young.
14                MS. FOX-YOUNG:  Thank you, Your Honor.
15    BY MS. FOX-YOUNG:
16          Q.   Good afternoon, Mr. Martinez.  What is your
17    profession?
18          A.   I'm a medical provider, a PA.
19          Q.   What does PA stand for?
20          A.   Physician's assistant.
21          Q.   Where are you currently employed?
22          A.   Currently, I'm with the Clinica Del Norte
23    facilities out in El Rito, New Mexico.
24          Q.   Was there a time when you were employed
25    working at the Penitentiary of New Mexico?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 304

```
 1          A.    Yes, ma'am.

 2          Q.    When was that?

 3          A.    Probably 2015 and 2016, part of 2016.

 4          Q.    Were you working as a physician's assistant

 5     there?

 6          A.    Yes.

 7          Q.    What were your job duties?

 8          A.    Everything.  Primarily, sort of like a

 9     family practice practitioner, doing physicals, taking

10     care of emergencies, on-call; seeing whatever needed

11     to be seen.

12          Q.    You were there every day seeing patients?

13          A.    Every day.

14          Q.    And do you remember seeing a patient named

15     Rudy Perez?

16          A.    Yes, I do.

17          Q.    And that was in 2015 and 2016?

18          A.    Yes.

19          Q.    Do you remember what you saw him for?

20          A.    He had multiple things:  High blood

21     pressure.  He was a Type II diabetic.  He had a

22     seizure disorder.  He had cholesterol problems.

23     That's what I can remember.  Primarily, when I was

24     seeing him, I was seeing him because he was morbidly

25     obese, and he was in a wheelchair.  And we were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4304

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4305

```
 1   trying to get him -- my contact with him was
 2   primarily around that.  The other stuff I also saw a
 3   little bit, but I was seeing if we can get him
 4   ambulating.  He had a wheelchair, he had a walker in
 5   his unit.  And we were trying to -- we got him to a
 6   point to where he was able to ambulate, and we were
 7   trying to get him a cane.
 8        Q.   Do you recall what unit he was in?
 9        A.   Level 6.
10        Q.   That's fine.
11        A.   Okay.
12        Q.   And when you saw him, did he come to see
13   you, or did you go to see him in his unit?
14        A.   No, routinely, he -- when I went to see
15   him, he came to see me, because we didn't have direct
16   contact in terms of the cells in the unit.  In that
17   unit, if there was something that needed to be seen
18   faster, they would bring him in to the medical
19   clinic.  If something -- I did the call, I would go
20   out to the unit, but they had to bring him out from
21   his cell into the triage room.
22        Q.   Do you remember how often you saw him?
23        A.   I would say a couple times a week;
24   sometimes less, sometimes more.
25        Q.   Okay.  And I'm going to ask you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4305

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 306

1  specifically about if you remember the time period --

2  Mr. Perez, I'll submit to you, was at PNM from June

3  2015 until about May of 2016.  Were you working at

4  PNM that whole time?

5      A.   Yes.

6      Q.   And during that period of time, do you

7  remember how often you saw him?

8      A.   Sometimes weekly, sometimes once or twice a

9  month.  But I would say once or twice weekly.

10      Q.   Once or twice weekly on average?

11      A.   On average.

12      Q.   And you said he was using a wheelchair.

13  When he came to see you, whether that was in the unit

14  or in the medical facility, did he come in a

15  wheelchair?

16      A.   Yes, he was always escorted.

17      Q.   He was escorted by whom?

18      A.   Officers, unit officers.  Level 6 is a max,

19  so they're not let out to walk on their own.  They

20  have to be escorted everywhere they're going.

21      Q.   So these were correctional officers from

22  Level 6 who brought him to you?

23      A.   Yes.

24      Q.   Were there STIU officers?

25      A.   I don't ever recall any STIU officers.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4306

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4307

```
 1          Q.   You just know he was escorted by officers?
 2          A.   Yes.
 3          Q.   Do you recall if Mr. Perez was in pain?
 4   Did he complain to you of pain during that period of
 5   time?
 6          A.   One of his many complaints.  He was
 7   complaining of pain, complaining of not feeling well.
 8          Q.   And did you talk to him about the seizures?
 9          A.   Yes.
10          Q.   And do you know if he had any seizures
11   while he was at PNM?
12          A.   We had three or four people with seizure
13   disorders.  I can't honestly tell you that I remember
14   specifically him having a seizure, or me being called
15   out.  He could have, but I don't know if it was one
16   the others.
17          Q.   And there is no way for you to know for
18   certain whether he had a seizure or not?
19          A.   No.
20          Q.   Was that no?
21          A.   No.
22          MS. FOX-YOUNG:  Thank you, Your Honor.
23   Just a moment.
24          THE COURT:  Certainly.
25          MS. FOX-YOUNG:  Your Honor, I'll pass the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4307

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4308

```
 1   witness.

 2              THE COURT:  Thank you, Ms. Fox-Young.

 3              Let me ask the defendants if anybody has

 4   any cross-examination of Mr. Martinez?

 5              All right.  Mr. Beck?

 6                        EXAMINATION

 7   BY MR. BECK:

 8       Q.   Good afternoon, Mr. Martinez.

 9              In the time that you saw Mr. Perez from

10   2015 to 2016, did you have conversations with Mr.

11   Perez when you'd see him?

12       A.   Yes.

13       Q.   Did these conversations include a

14   diagnostic of how he's feeling?

15       A.   It was the conversations in terms of his

16   the chief complaint, and my addressing that chief

17   complaint in whatever manner at the time.

18       Q.   Did you have those conversations about his

19   complaints each time you saw him?

20       A.   Yes.

21       Q.   Did you converse with him about anything

22   else during this time?

23       A.   Other than addressing his complaint and how

24   I was going to address it, either order something,

25   fill his medications.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4308

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 309

1    Q.   And he was able to intelligently

2    communicate with you about his complaints?

3    A.   Yes.

4    Q.   He was able to answer the questions you

5    had?

6    A.   Yes.

7         MR. BECK:  Pass the witness, Your Honor.

8         THE COURT:  All right.  Thank you, Mr.

9    Beck.

10        Ms. Fox-Young, any redirect of Mr.

11   Martinez?

12        MS. FOX-YOUNG:  No, Your Honor.  He may be

13   excused.

14        THE COURT:  All right.  Mr. Martinez, you

15   may step down.  Ms. Fox-Young says he can be excused.

16   Mr. Beck, can he be excused?

17        MR. BECK:  Yes, Your Honor, he may.

18        THE COURT:  Anybody else?

19        Did you have anything, Mr. Samore?  No?

20        All right.  You are excused from the

21   proceedings.  Thank you for your testimony.

22        All right.  Are we ready to bring Mr.

23   Cordova back in?  And Mr. Samore, if you want to come

24   back up.

25        Ms. Jacks.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4309

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4310

```
 1              All right.  Mr. Cordova, I'll remind you
 2    that you're still under oath.
 3              THE WITNESS:  Yes, Your Honor.
 4              THE COURT:  All right.  Ms. Jacks, if you
 5    wish to continue your examination of Mr. Cordova, you
 6    may do so.
 7              MS. JACKS:  Thank you.
 8              THE COURT:  Ms. Jacks.
 9                   EXAMINATION (Continued)
10    BY MS. JACKS:
11         Q.   Mr. Cordova, before the break I was asking
12    you some questions about your plan to make these
13    surreptitious recordings.  Do you recall those
14    questions?
15         A.   Yes, ma'am.
16         Q.   Was this your first time acting like an
17    undercover informant, making recordings, or had you
18    done that before?
19         A.   I haven't done that before, Miss.
20         Q.   I want to pick back up on our discussion
21    about Suboxone.  And when you made the recordings of
22    Mr. Perez and Mr. Herrera, you were at PNM Level 6,
23    right?
24         A.   No, Herrera I was at Level 4.  Perez, I was
25    at Level 6.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4310

```
 1          Q.    When you made the recordings of Mr. Perez,
 2    you were at PNM Level 6; correct?
 3          A.    Yes, ma'am.
 4          Q.    And you had gotten Suboxone smuggled in to
 5    you before at PNM Level 6, haven't you?
 6          A.    Yes, ma'am.
 7          Q.    And, in fact, your mother was detained for
 8    smuggling Suboxone into PNM Level 6, wasn't she?
 9          A.    Yes, ma'am.
10          Q.    What year was that?
11          A.    I don't know if it was Suboxone.  But she
12    was caught from my little brother.  That was in 2012,
13    '11, 2011, January.
14          Q.    I want to ask you some questions about the
15    Exhibit CH-C.  And it's a transcript of a
16    conversation between you, Dale Chavez, and Carlos
17    Herrera.  You answered some questions about this when
18    the prosecution asked you about it.  Do you remember
19    that?
20          A.    Yes, ma'am.
21          Q.    And, specifically, I'm going to direct you
22    to what's been marked as page 20999.  Back up a
23    little bit, and just give you a chance to read it.
24    But you'd agree with me that what's reflected on this
25    page is a discussion about Suboxone, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4311

1          A.   Yes, ma'am.

2          Q.   And what are you talking about with

3     Mr. Chavez in this?

4          A.   Comparing prices to Suboxone on the

5     streets.

6          Q.   On the streets versus in prison?

7          A.   No.

8          Q.   Just on the streets?

9          A.   On the streets.

10         Q.   And I think when Mr. Castellano asked you

11    some questions about this, you said that -- and I

12    want to try to quote you -- that you were talking

13    about Suboxone strips with Mr. Chavez because, quote,

14    "I didn't know what Bryan was going to have me do

15    next."  Do you recall that testimony?

16         A.   Yes, ma'am.

17         Q.   And who is Bryan?

18         A.   Bryan Acee.

19         Q.   So Agent Acee is who you were referring to?

20         A.   Yes, ma'am.

21         Q.   And you said you didn't know what Bryan was

22    going to have you do next?

23         A.   Yes, ma'am.

24         Q.   Can you flesh that out for me a little bit.

25    What was going through your mind?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4312

```
 1        A.   I didn't know what was going on, you know
 2   what I mean?  He told me:  Do what you can, and get
 3   as much murders as you can and do what you can.  So I
 4   went in there, and I was doing what I do.
 5        Q.   Did he tell you or did he make you think at
 6   some point that, if you got as much information on
 7   murders for him, that somehow you could get out to
 8   the streets and be working undercover on drug deals
 9   in the streets?
10        A.   No, ma'am.
11        Q.   That wasn't in your mind?
12        A.   No, ma'am.
13        Q.   What did you think it was that -- well,
14   you're talking about Suboxone prices on the street
15   here, right?
16        A.   Yes, ma'am.
17        Q.   And so what did you think Bryan was going
18   to have you do next with respect to Suboxone on the
19   streets?
20        A.   I was just doing what I do in prison with
21   the SNMers, and talk about drugs and prices, and get
22   things going.  And if it was possible, I would have
23   let Bryan know what was going on.  And if he felt it
24   was serious enough, he would act on it.  If not, then
25   throw it to crazy.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Did Bryan -- and by Bryan I'm meaning Agent

2   Acee -- ever talk to you about, after your

3   cooperation was done in this case, possibly moving

4   you to some other state where you could perform

5   undercover services for the FBI out on the streets?

6      A.   No, ma'am.

7      Q.   After you made the recordings that you

8   testified about today, I think you said that you were

9   appointed a lawyer; is that right?

10      A.   Yes, ma'am.

11      Q.   And when was that?

12      A.   Around May.

13      Q.   May of 2016?

14      A.   Yes, ma'am.

15      Q.   And was it also in May of 2016 -- or let me

16   go back.  When were you moved after you made the

17   recordings of Mr. Herrera?

18      A.   Around April or May.

19      Q.   Of 2016?

20      A.   Yes, ma'am.

21      Q.   And were you moved to another facility or

22   another unit or where were you moved?

23      A.   Another facility.

24      Q.   And where was that?

25      A.   MDC.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4314

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4315

1        Q.   In Albuquerque?

2        A.   Yes, ma'am.

3        Q.   And at some point were you moved back to

4    Level 6 in a pod called L pod?

5        A.   Yes, ma'am.

6        Q.   When did that happen?

7        A.   Around May.

8        Q.   So shortly after you got your lawyer?

9        A.   Yes, ma'am.

10       Q.   You went from MDC in Albuquerque back to

11   Level 6 in L pod?

12       A.   Yes, ma'am.

13       Q.   Now, once you were placed in L pod, were

14   your conditions of confinement Level 6 confinement

15   conditions?

16            MR. CASTELLANO:   Objection, relevance.

17            THE COURT:   What's the relevance of that?

18            MS. JACKS:   Well, this is cross-examination

19   on something that was brought out, I believe -- let

20   me see if it was in direct.  And the relevance goes

21   to bias or other motives with respect to benefits.

22            MR. CASTELLANO:   This would be after the

23   recordings, though, so we're talking about a

24   different bias for a different hearing.

25            MS. JACKS:   Well, it goes to his honesty

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4315

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4316

```
 1    and credibility in this hearing.

 2              THE COURT:  It's a little hard for me to

 3    slice it that close.  So I'll overrule the objection.

 4        Q.   So the question, Mr. Cordova -- I think the

 5    Judge says you can answer it -- is, were the

 6    conditions of confinement in L pod, Level 6

 7    conditions of confinement?

 8        A.   It was controlled movement, where we get

 9    tier time.

10        Q.   Okay.  So "controlled movement" meaning

11    that when you went out of the pod, you had to be

12    escorted by correctional officers?

13        A.   Yes, ma'am.

14        Q.   But you weren't locked in your cell 23

15    hours a day?

16        A.   No, ma'am.

17        Q.   In fact, you were able to spend most of the

18    day hanging out on the tier in the unit?

19        A.   Yes, ma'am.

20        Q.   And can you tell me who else was in L pod

21    when you were there?

22        A.   Munoz, Frederico Munoz; Robert Martinez;

23    Gerald Archuleta; Benjamin Clark; I believe Timothy

24    Martinez; Roy Martinez, I think.  And that's it from

25    my recollection.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4316

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4317

1      Q.   Were you moved out of L pod at some point?

2      A.   Yes, ma'am.

3      Q.   When did that happen?

4      A.   In January.

5      Q.   Of 2017?

6      A.   I believe so.

7      Q.   Now, with respect to getting the tier time,

8   did you also get other benefits such as contact

9   visits with your familiar?

10     A.   Yes, ma'am.

11     Q.   What other sort of benefits did you get

12   besides those two things?

13     A.   Basically, that was it.

14     Q.   And was anybody housed in L pod that was

15   not a government cooperator while you were there?

16     A.   To my recollection, no.

17     Q.   So everybody there had something to do with

18   being a government witness in this case?

19     A.   I believe so.

20     Q.   And while you were in L pod, did you --

21   were you able to see any of the discovery in this

22   case?

23     A.   No, ma'am.

24     Q.   Did any of the people housed with you have

25   computer tablets?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4317

```
 1          A.   I didn't have one.

 2          Q.   That's not my question.

 3          A.   I don't know if they had one.

 4          Q.   You never saw one?

 5          A.   No, ma'am.

 6          Q.   Nobody ever showed you one?

 7          A.   No, ma'am.

 8          Q.   You have no idea what's on any of the

 9   tablets?

10          A.   No, ma'am.

11          Q.   Do you know whether people who were

12   defendants and became cooperators in this case were

13   issued computer tablets that they brought with them

14   to L pod?

15          A.   I don't know, ma'am.  I don't know anything

16   about that.

17          Q.   Was it ever explained to you why you were

18   in a Level 6 prison, but getting privileges that were

19   more appropriate for Level 4 inmates?

20          A.   Pretty much, that whole prison was opened

21   up.  Everybody was pretty much getting tier time

22   then.

23          Q.   I understand that.  Everybody in L pod,

24   right?

25          A.   No, the whole prison.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4318

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 319

```
 1          Q.   Everybody in the whole Level 6 of PNM?

 2          A.   Except the 3s.  The 2s and the 1s, they all

 3     get tier time.  They got the Drug Suppression Unit.

 4     You have the Gang Unit, which is in H pod.  You

 5     have -- and all of them get tier time.

 6          Q.   Do you think that the fact that you were

 7     transferred to a pod with a bunch of other Government

 8     witnesses and given contact family visits and tier

 9     time had anything to do with you agreeing be a

10     government witness or making recordings?

11          A.   I think me walking away from the SNM was

12     enough for the administration to trust me and allow

13     me to have my privileges, like a regular RPP inmate

14     would have.  That's what I believe.

15          Q.   So you don't think it had anything to do

16     with the fact that you wore a wire or were agreeing

17     to testify as a government witness?

18          A.   I don't think so.

19          Q.   Now, in addition to getting the privileges

20     and the family visits, you also got money, didn't

21     you?

22          A.   Yes, ma'am.

23          Q.   And who gave you the money?

24          A.   The money just got put on my books.  It was

25     $50 a month.  I'm pretty sure it was Bryan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 4319

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4320

1    Q.   Bryan Acee, the agent?

2    A.   Yes, ma'am.

3    Q.   And did Agent Acee ever explain to you why

4    he was going to start giving you money?

5    A.   Just living expenses, if I needed

6    something.  I need to call my family, put money on

7    the phone to call my family.  You know, get me

8    hygiene, if I need hygiene, stuff like that.

9    Q.   So let's be clear.  Before January of 2016,

10   was Agent Acee or any other member of law enforcement

11   putting money on your books every month?

12   A.   Before January '16?

13   Q.   Before January of 2016.

14   A.   Before?

15   Q.   Yeah.

16   A.   No, ma'am.

17   Q.   And after you made the recordings, Agent

18   Acee started putting money on your books every month;

19   is that right?

20   A.   Yes, ma'am.

21   Q.   Did your wife also receive money from law

22   enforcement?

23   A.   Not that I know of.

24   Q.   Did you ask for your money to be given to

25   your wife for any reason?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4320

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4321

```
 1            A.   No, ma'am.

 2            Q.   Do you have -- or living with you and your

 3     wife, do you have three young daughters?

 4            A.   Yes, ma'am.

 5            Q.   What are their ages?

 6            A.   Teenage ages, 13, 12, 11.

 7            Q.   And did you ever ask Agent Acee to give

 8     money to your wife because your kids needed something

 9     for school?

10            A.   No, ma'am.

11            Q.   Now, while you were -- I'm going to go back

12     to L pod.  I realize I forgot to ask you some

13     questions.

14                 While you were in L pod, you were able to

15     talk freely with other people that were in L pod,

16     right?

17            A.   Yes, ma'am.

18            Q.   And you were housed with them 24 hours a

19     day, seven days a week, right?

20            A.   Yes, ma'am.

21            Q.   Did you ever discuss your testimony or your

22     expected testimony in this case?

23            A.   No, ma'am.

24            Q.   Did you ever discuss the Javier Molina

25     homicide?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4321

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 322

```
 1        A.   No, ma'am.
 2        Q.   Did you ever discuss what sort of benefits
 3   these other informants were getting for being
 4   government witnesses?
 5        A.   No, ma'am.
 6        Q.   Not at all?
 7        A.   No, ma'am.
 8        Q.   It never came up?
 9        A.   No, ma'am.
10        Q.   Did you ever find out that other people
11   were making more money than you, from Agent Acee
12   putting money on their books?
13        A.   No, ma'am.
14        Q.   Did you ever find out that other informants
15   got a -- do you know what a lump sum is?
16        A.   What is that, Miss?
17        Q.   I'm asking you do you know what it is?
18        A.   What are you --
19        Q.   Well, is there a process in the New Mexico
20   Department of Corrections, where the Department of
21   Corrections can just cut time off your sentence by
22   giving you a lump sum of credits?
23        A.   Oh, I don't know.
24        Q.   Did you ever discuss with any of the other
25   people housed in L pod whether any of them received
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4322

```
 1    lump sum payments or lump sum credits against their
 2    sentence because of their position as government
 3    witnesses?
 4         A.   No, ma'am.
 5         Q.   Was Eric Duran in L unit at all while you
 6    were there, or L pod?
 7         A.   Yes, ma'am.
 8         Q.   And did Mr. Duran get released to the
 9    streets while you were in L pod?
10         A.   I know he left.  I don't know where to.
11         Q.   Did Mr. Duran ever talk with you about the
12    fact that he got a lump sum credit so that he could
13    get released from custody?
14         A.   No, ma'am.
15         Q.   Did he ever tell you he got payments in the
16    area of $25,000 from Agent Acee?
17         A.   No, ma'am.
18         Q.   Now, are you still receiving the $50 a
19    month from Agent Acee?
20         A.   No, ma'am.
21         Q.   When did those payments stop?
22         A.   January '17.
23         Q.   This year.  And did something -- well, was
24    something discovered in January of this year that
25    caused the payments to stop?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 324

```
 1           A.   I believe so.

 2           Q.   Well, you believe, or you know?

 3           A.   I know so.

 4           Q.   I mean, I think when you referenced this,

 5     when Mr. Villa was asking you questions, you said

 6     that you were -- the payments were cut off.  Do you

 7     recall that testimony?

 8           A.   I didn't say the payments were cut off.  I

 9     said I was cut off communicating with him.

10           Q.   You were cut off communicating with Acee?

11           A.   Yes.

12           Q.   And did that happen at the same time the

13     payments were cut off?

14           A.   Yes, ma'am.

15           Q.   And I think what you told Mr. Villa is you

16     were cut off because of what happened to you?

17           A.   Yes, ma'am.

18           Q.   Well, the truth is, it's not what happened

19     to you, right, it's what you did?

20           A.   Yes, ma'am.

21           Q.   And what did you do, or what did you do

22     that was discovered in January of 2017, that caused

23     you to be cut off from Agent Acee and the payments?

24           A.   I was caught having inappropriate relations

25     with my wife in a visiting room.
```



SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                      1-800-669-9492
                                              e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

DNM 4324

```
 1          Q.   When you say "inappropriate relations," you
 2   had sex with your wife in the visiting room, didn't
 3   you?
 4          A.   Yes.
 5          Q.   And you did it on more than one occasion?
 6          A.   Yes, ma'am.
 7          Q.   How many times did you do it?
 8          A.   I can't recall.
 9          Q.   Well, was it more than two times?
10          A.   About two times, a couple of times.
11          Q.   And while you were -- we're talking sexual
12   intercourse; correct?
13          A.   Yes, ma'am.
14          Q.   And while you were engaging in sexual
15   intercourse with your wife, were any of your
16   daughters present in the visiting room?
17          A.   Yes, ma'am.
18          Q.   Which ones?
19          A.   My two girls.
20          Q.   The two, the 11- and 12-year-old?
21          A.   Yes, ma'am.
22          Q.   And on one occasion the 13-year-old was
23   present, wasn't she?
24          A.   Yes, ma'am.
25          Q.   And at the time that you were engaged in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4325

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 326

```
 1    sexual intercourse with your wife, how --

 2         A.   I got two girls.  I don't have three girls.

 3    I got two girls.

 4         Q.   Okay.  You have two and your wife has a

 5    daughter from another relationship?

 6         A.   No, ma'am.

 7         Q.   Who is the 13-year-old -- not her name, but

 8    what is her relation to you?

 9         A.   We don't have that.

10         Q.   Was it always the same two --

11         A.   Yes, ma'am.

12         Q.   -- children present every time you had

13    sexual intercourse with your wife?

14         A.   Yes, ma'am.

15         Q.   And at the time that you were engaging in

16    intercourse with your wife, how far were your two

17    daughters from you and your wife in this visiting

18    room?

19         A.   On the other side of the table, playing a

20    game.

21         Q.   Were they closer to you than the courtroom

22    deputy here sitting right in front of you in the pink

23    and white shirt?

24         A.   About that far.

25         Q.   And can you explain to me how it was that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4326

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 327

1   you and your wife engaged in sexual intercourse in

2   front of your daughters?

3       A.   I seen a weakness the system, and I

4   exploited it.  That's all it was.

5       Q.   Okay.  I appreciate that.  You get away

6   with what you can get away with, right?

7       A.   Well, it's not what I can get away with.

8   It wasn't like that at the time.  It's my wife, you

9   know what I'm saying?  Those are my children.  If you

10  and your husband -- I'm assuming, do you have a

11  husband -- you have relations, right?

12      Q.   I'm not going to have sexual relations in

13  front of a 13-year-old, 11-, 12-year-old children.

14           But my question, Mr. Cordova, was how did

15  you --

16      A.   It wasn't my kids where they can see me.

17      Q.   Can you explain to us in this courtroom how

18  was it that you and your wife engaged in sexual

19  intercourse in front of 11 and 12-year-old girls?

20      A.   I covered her up.  And it was mostly

21  touching, more than anything.  They were on the other

22  side playing a game.  I made sure they were

23  distracted.  And that's how it went down.

24      Q.   Did your penis enter your wife's vagina

25  during those -- I mean, that's what sexual

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4327

```
 1    intercourse is, right?

 2         A.   Yeah.

 3         Q.   So we're on the same wavelength, right?

 4         A.   Yes, ma'am.

 5         Q.   So now you're saying is mostly touching,

 6    but it was more than touching, right?

 7         A.   It was, on one occasion, yes.

 8         Q.   So how did you and she have contact in this

 9    visiting room?

10         A.   We were in contact visits.

11         Q.   She sat on your lap, right?

12         A.   Yes, ma'am.

13         Q.   And she bounced up and down while your two

14    little girls were playing Monopoly?

15         A.   Yes, ma'am.

16              MS. JACKS:  I have nothing further.

17              THE COURT:  Thank you, Ms. Jacks.

18              Anyone else on the defense side that has

19    questions?

20              Ms. Duncan?

21              MS. DUNCAN:  Yes, Your Honor.  May I have a

22    moment, Your Honor?

23              THE COURT:  Certainly.

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4328

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 329

```
 1                         EXAMINATION
 2   BY MS. DUNCAN:
 3        Q.   You discussed with Ms. Jacks the benefits
 4   that you received at Level 6, correct, after
 5   cooperating?
 6        A.   Yes, ma'am.
 7        Q.   In addition to those that you mentioned
 8   when you were talking with Ms. Jacks, you also
 9   received unlimited phone calls; correct?
10        A.   Just the regular phone calls an RPP inmate
11   would get.
12        Q.   And they were paid for by someone other
13   than you?
14        A.   By me, but the money was put on my books,
15   yeah.
16        Q.   By someone other than you?
17        A.   Yes, ma'am.
18        Q.   You were also allowed to have shoes from
19   the street brought in by your family?
20        A.   I remember that, yes.
21        Q.   You said that Eric Duran was with you at
22   Level 6; correct?
23        A.   Yes, ma'am.
24        Q.   Are you aware that Eric Duran tried to
25   record you using a wire?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4329

```
 1          MR. CASTELLANO:  Objection, relevance.
 2          THE COURT:  What is the relevance of this?
 3          MS. DUNCAN:  Your Honor, if he's aware of
 4   it, I think that he learned things from Mr. Duran.
 5   So Mr. Duran recorded this witness before this
 6   witness recorded Mr. Perez or Mr. Herrera.  So I'd
 7   ask him if he knew that, and what he learned from
 8   Mr. Duran, based on how to use the recorders and to
 9   get information.
10          THE COURT:  I guess I'm not following how
11   that helps us on this motion to suppress.  I'll
12   sustain.
13          MS. DUNCAN:  Well, Your Honor, if I could
14   just -- I think the way that it's relevant is that
15   Mr. Duran was trying to get information from Mr.
16   Cordova, using certain techniques.  And so what I'd
17   like to explore is --
18          THE COURT:  How does that help me determine
19   whether Mr. Perez and Mr. Herrera gave voluntary
20   statements?
21          MS. DUNCAN:  Because it goes to the
22   techniques that Mr. Cordova used to get Mr. Perez and
23   Mr. Herrera to make statements.
24          THE COURT:  Sustained.  This is getting far
25   afield.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4330

```
 1   BY MS. DUNCAN:
 2        Q.   Who did you discuss the Molina case with or
 3   the Molina murder with before you spoke to Rudy Perez
 4   about the case?
 5        A.   Can you say that again, Miss?
 6        Q.   Sure.  So you recorded Mr. Perez or talked
 7   to Mr. Perez about the Molina murder in February of
 8   2016; correct?
 9        A.   Yes, ma'am.
10        Q.   Before that date, who had you discussed
11   that murder with?
12        A.   Who I had discussed that murder with?
13        Q.   Yes.
14        A.   Everyone would talk about it in the yard.
15        Q.   So can you give me -- who is everyone?
16        A.   All the other Syndicatos that were there,
17   "Spider," "Blue," "Red," Creeper," basically all the
18   ones that were involved in it.
19        Q.   Other than "Spider," "Blue," "Red" and
20   "Creeper," did you discuss the murder with anyone
21   else?
22        A.   "Red."
23        Q.   Did you discuss it with your wife?
24        A.   No, ma'am.
25        Q.   Did you discuss it with STIU?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4331

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 332

```
 1        A.   No, ma'am.

 2        Q.   Before speaking with Mr. Acee in February

 3   or January of 2016, had you discussed it with any

 4   other law enforcement officer?

 5        A.   No, ma'am.  Before Bryan Acee, I never

 6   worked with any other law enforcement.  Never talked

 7   to STIU.  I never made a statement on nobody, none of

 8   that.

 9        Q.   You mentioned that it was STIU Officer

10   Gerardo who introduced you to Mr. Acee; is that

11   correct?

12        A.   Yes, ma'am.

13        Q.   Had you spoken with him before he

14   introduced you to Mr. Acee?

15        A.   Never.

16        Q.   Was that the first time you had met

17   Mr. Gerardo?

18        A.   I know who he is.  I just never spoke to

19   him.

20        Q.   In January 2016, when you were in MDC and

21   spoke with Mr. Acee, were there any other SNM members

22   in the pod with you?

23        A.   Where at?

24        Q.   MDC, in January of 2016.

25        A.   Yes, ma'am.  It was Salamon, "Silent" from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4332

```
 1    Los Lunas or Belen.  That was basically it, that I
 2    can recall.
 3         Q.   And what is "Silent's" real name?
 4         A.   Honestly, I can't tell you.
 5         Q.   What about Salamon?
 6         A.   Can't tell you either.
 7         Q.   Did you discuss with "Silent" or Salamon
 8    the arrest of other SNM members in December of 2015?
 9         A.   We discussed that all the time, Miss.
10         Q.   And what did you discuss?
11         A.   Just what happened with the RICO Act, and
12    all that.
13         Q.   Did you discuss concerns about the three of
14    you being charged?
15         A.   No, ma'am.
16         Q.   Did either Salamon or "Silent" tell you
17    that they were cooperating with law enforcement?
18         A.   I didn't know that at that time.
19         Q.   And when did you know that?
20         A.   Later on, down the line, when things
21    started; people talk, people say things.
22         Q.   So when you say "down the line," when would
23    that be?
24         A.   About a year later.
25         Q.   And in what context?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4333

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 334

```
1        A.   I was at X pod.  I was in the hole for what
2   I got in trouble for doing in the visiting room.  I
3   was there for six months with other individuals,
4   other gang members, like Burquenos, and they would
5   talk about it.  And they would say:  This is what we
6   hear.  But that's it.
7        Q.   Did you talk to any other SNM members,
8   former members or affiliates, about cooperating with
9   the government?
10       A.   No, ma'am.
11       Q.   At no time --
12       A.   No, ma'am.
13       Q.   -- did you ever discuss that?
14            When do you get out of prison?
15       A.   In about 20 months.
16       Q.   Twenty months from today?
17       A.   Yes, ma'am.
18       Q.   And when did you go to the RPP Program?
19       A.   I went to the RPP Program in July of this
20   year.
21       Q.   I think you testified that you left PNM
22   North in January of this year; is that correct?
23       A.   No, I left L pod and went to X pod in
24   January of this year.
25       Q.   And did you remain in X pod until you went
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 335

 1    to the RPP Program in July?

 2         A.   Yes, ma'am.

 3         Q.   And how is it that you went to the RPP

 4    Program in July?

 5         A.   Because Level 6, they don't have Interim

 6    Level 6 no more, so if you have 30-day seg, that

 7    what's the most I was supposed to do in seg.  But I

 8    ended up doing six months because of the wait, the

 9    hold, the bedding, it's real packed down there.

10    Because I was waiting for RPP in the first place.  I

11    was already waiting to go down there.

12         Q.   So you were on a wait list --

13         A.   Yes, I was ready to consider RPP.  And I

14    was waiting to go to RPP.

15         Q.   So for how long had you been on the RPP

16    wait list?

17         A.   For about a year.

18         Q.   Now, I understand that you recorded Rudy

19    Perez and Carlos Herrera; correct?

20         A.   Yes, ma'am.

21         Q.   And you tried to record Jesse Sosa?

22         A.   Yes, ma'am.

23         Q.   Are there any other individuals who you

24    tried to record?

25         A.   No, ma'am.

SANTA FE OFFICE                                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                                (505) 843-9494
FAX (505) 843-9492                                                                     FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4335

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 336

```
 1          Q.   Any other individuals --
 2          A.   Yes, ma'am.  There was Alex Munoz.  Sorry
 3     about that.
 4          Q.   Did you make any recordings of Alex Munoz?
 5          A.   Yes, ma'am, but I don't think -- I don't
 6     know what was said, or what, but, yeah, I made some
 7     recordings with him.
 8          Q.   Other than those four men, did you make or
 9     attempt to make any recordings?
10          A.   No, ma'am.
11               MS. DUNCAN:  If I could have a minute, Your
12     Honor?
13               THE COURT:  You may.
14               MS. DUNCAN:  No further questions, Your
15     Honor.
16               THE COURT:  Thank you, Ms. Duncan.
17               Anyone else on the defense side that has
18     cross-examination of Mr. Cordova?
19               All right.  Mr. Castellano, do you have
20     redirect of Mr. Cordova?
21               MR. CASTELLANO:  Thank you.
22               THE COURT:  Mr. Castellano.
23                      REDIRECT EXAMINATION
24     BY MR. CASTELLANO:
25          Q.   Mr. Cordova, you were asked about coming in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    yesterday and meeting with your attorney.  Do you
 2    remember that?
 3         A.   Yes, ma'am -- I mean, yes, sir.  My bad.
 4         Q.   Do you remember who else was present when
 5    you met with your attorney yesterday?
 6         A.   The US District Attorney and at court
 7    briefly.  And that was it.  Just seen them like
 8    passing by.  That was it.  When they said:  Hi, you
 9    got court.  Spoke with my lawyer.
10         Q.   Do you remember meeting with me last night?
11         A.   Yes, sir.
12         Q.   And did I tell you generally what would be
13    asked of you today?
14         A.   To say the truth.
15         Q.   Now, when you got to go to rec time, when
16    you were housed with Mr. Perez --
17         A.   Yes, sir.
18         Q.   -- you mentioned that he sometimes didn't
19    go to rec time; is that correct?
20         A.   Yes, sir.
21         Q.   And were there, at that time, multiple
22    people who would go to rec time in the cages?
23         A.   Yes, sir.
24         Q.   Now, at that time, do you recall Mr. Perez
25    telling you that he was under investigation?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4337

1        A.   Yes, sir.

2        Q.   Now, in terms of the SNM, do you remember

3   the SNM getting locked down after the Molina murder?

4        A.   Yes, sir.

5        Q.   And what about the Julian Romero assault?

6        A.   That's why we were still under

7   investigation, because we had just came out of

8   lockdown.  And they had moved on Julian Romero.  And

9   SNM is known for killing their own people a lot.  So

10  they didn't know who was next.  So we were under

11  investigation lockdown.

12       Q.   And so do you recall if that was July of

13  2015, or approximately when that was?

14       A.   Yeah, it was in 2015.

15            THE COURT:  Mr. Castellano, are you trying

16  to finish this witness up tonight?

17            MR. CASTELLANO:  I am, Your Honor.  I've

18  got a few more questions.

19            THE COURT:  Okay.  Go ahead.  Let's see if

20  we can finish him up.

21       Q.   Now, you mentioned earlier that you had

22  interacted with Rudy Perez before.  Do you remember

23  that?

24       A.   Yes, sir.

25       Q.   Now, the times you interacted with him, did

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4338

```
 1    you ever have any problem understanding him?
 2         A.   No.
 3         Q.   Did he ever appear to have any problem
 4    understanding you?
 5         A.   No.
 6         Q.   You mentioned that he was in pain and he
 7    took painkillers.  Did you ever notice that affecting
 8    your ability to communicate with each other?
 9         A.   No, sir.
10         Q.   What about when you recorded him?
11         A.   No, sir.
12         Q.   Earlier, you talked about turning on and
13    off the recorder when you were recording Mr. Herrera
14    and Mr. Perez.  Do you ever remember them saying they
15    weren't involved in the Molina murder?
16         A.   No, sir.
17         Q.   Was that even when the recorder was off?
18         A.   Yes, sir.
19              MR. CASTELLANO:  Pass the witness, Your
20    Honor.
21              THE COURT:  All right.  Thank you,
22    Mr. Castellano.
23              All right.  Any reason Mr. Cordova cannot
24    be excused from the proceedings?
25              MR. VILLA:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4339

```
 1              THE COURT:  All right.  Everybody in
 2   agreement with that?  Mr. Castellano?
 3              MR. CASTELLANO:  Yes, Your Honor.
 4              THE COURT:  All right.  Anybody else?
 5   Defendants?  All right.  Not hearing any, Mr.
 6   Cordova, you're excused from the proceedings.  Thank
 7   you for your testimony.
 8              THE WITNESS:  All right, Your Honor.  Thank
 9   you.
10              THE COURT:  All right.  Let's shut her down
11   for tonight.  We'll see y'all tomorrow.  Everybody be
12   safe.  And I appreciate everybody's hard work.
13              (The Court stood in recess.)
14
15
16
17
18
19
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4340

```
1                    C-E-R-T-I-F-I-C-A-T-E

2


3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5


6


7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on December 19, 2017.

15


16


17


18   _____

19   Jennifer Bean, FAPR, RMR-RDR-CCR
     Certified Realtime Reporter

20   United States Court Reporter
     NM CCR #94

21   333 Lomas, Northwest
     Albuquerque, New Mexico 87102

22   Phone:  (505) 348-2283
     Fax:    (505) 843-9492

23


24


25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4341

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8                      VOLUME 3

9         Transcript of Combined Motions to Suppress
     Proceedings before The Honorable James O. Browning,
10   United States District Judge, Las Cruces, Dona
     County, New Mexico, commencing on December 13, 2017.
11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
13
     For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14   Harbour-Valdez; Mr. Patrick Burke; Mr. Robert Cooper;
     Mr. Jeff Lahann; Mr. Orlando Mondragon; Mr. John
15   Granberg; Mr. Billy Blackburn; Mr. Scott Davidson;
     Ms. Amy Jacks; Mr. Richard Jewkes; Ms. Amy Sirignano;
16   Mr. Christopher Adams; Mr. Marc Lowry; Ms. Theresa
     Duncan; Ms. Carey Bhalla; Mr. William Maynard; Mr.
17   Ryan Villa; Ms. Justine Fox-Young; Mr. Donovan
     Roberts; Ms. Lisa Torraco; Ms. Angela Arellanes; Mr.
18   Samuel Winder

19
     For the Defendants (Via telephone):  Mr. James Castle
20

21

22

23

24

25


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Let's go on the
 2   record.  I appreciate everybody being here on time,
 3   ready to go.  I guess we've got three defendants
 4   without the black boxes today.  I guess we got some
 5   injuries, so a few people that have got them off.  So
 6   I appreciate everybody working hard to make
 7   everything work for us.  I do appreciate everybody's
 8   being cooperative here.
 9              Let's see.  Ms. Harbour-Valdez, you're
10   going to need to go to a show cause hearing in front
11   of Judge Vidmar at 9:30?
12              MS. HARBOUR-VALDEZ:  Yes, Your Honor.
13   Thank you.
14              THE COURT:  And, Mr. Burke, you're leaving
15   at noon?
16              MR. BURKE:  At the afternoon break.
17              THE COURT:  Afternoon break.
18              Let's see.  I didn't put on the record Ms.
19   Sirignano left after the last break yesterday
20   afternoon; correct?
21              MS. SIRIGNANO:  Yes, Your Honor.
22              THE COURT:  Who is on the phone?
23              MR. CASTLE:  Jim Castle is on the phone.
24              THE COURT:  Mr. Castle, good morning to
25   you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4343

```
 1              Anybody else on the phone?  I've got one
 2    person on the phone?  Anybody with a mute button on
 3    that's on the phone?  All right.
 4              Any other changes that we have?
 5              All right.  Mr. Adams.
 6              MR. ADAMS:  Judge, I do have one
 7    housekeeping matter related to the black boxes.  The
 8    gentlemen, the defendants have been out of the black
 9    boxes.  Then there was some sort of issue that I
10    heard about in the beginning of the November
11    hearings, November 8 and 9, I believe, and they were
12    put back in the black boxes.  And you had indicated
13    that we should get to the bottom of it.  But you
14    didn't need to necessarily dig that deep in the
15    weeds.  There apparently had been some sort of
16    reference to somebody bringing in shanks.  But that
17    person was actually a cooperating witness, not these
18    defendants.  They have been here, they've been
19    behaving.  From my view in the back, they seem to do
20    great; great yesterday in a situation where nobody
21    really knew how they would behave when a cooperating
22    witness came and testified in the afternoon.
23              So my request is that for the hearings next
24    week, if they could all be out of their black boxes.
25    I believe there was a time when Mr. Baca was behind a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4344

```
 1   screen, and that was challenged, and you listened,
 2   and you addressed Mr. Baca, as I recall, and you
 3   stood up and you stepped down and said:  You're a
 4   leader of men, and he may very well be a leader of
 5   men, and could you get a gentleman's agreement that
 6   if he came out from behind the screen, he would
 7   conduct himself like he should in your courtroom.
 8   And he has.  That was over a year ago.  And he has.
 9           And I think if you have that same address
10   to these gentlemen today, starting next week, you're
11   not going to have any problems with them.  We need to
12   get them starting to feel more natural as their trial
13   approaches, how they might really be in the
14   courtroom, and not just caged up like they're walking
15   someplace in the BOP.  That will help us help them.
16   And we make a request of you today.
17           THE COURT:  Well, let's do this:  Why don't
18   you talk to the marshals, the gentleman right back
19   there at the back of the door is the one to talk to.
20   So talk to him.  And I'll probably take a lot of my
21   cues from what their pulse is.  So why don't y'all
22   talk to them.  We're going to be here all day.  And
23   I'm sure somebody will be get back with me and let me
24   know what they're thinking.  Okay?
25           MR. ADAMS:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1               THE COURT:  Thank you, Mr. Adams.

 2               All right.  Mr. Beck, have you joined the

 3    defense side over there?

 4               (Applause.)

 5               THE COURT:  A lot of times, I've seen where

 6    they wouldn't take you, but --

 7               MR. BECK:  They wouldn't, Your Honor.

 8               I believe -- I think the plan is this

 9    morning that we'll put Bryan Acee back up, and Ms.

10    Bhalla will resume her cross-examination, and we'll

11    pick up where we left off yesterday on the motion to

12    suppress.

13               THE COURT:  Okay.  Boy, I got lost.  We

14    finished with Mr. Cordova.  Had we broken --

15               MR. BECK:  Yes, we did, yesterday we

16    decided after lunch to put on Mr. Cordova to make

17    sure he got finished, and I think Ms. Bhalla was

18    still cross-examining Mr. Acee.

19               THE COURT:  All right.  Mr. Acee, if you'll

20    return to the witness box, I'll remind you you're

21    still under oath.  Ms. Bhalla, if you wish to

22    continue your cross-examination of Mr. Acee.

23               MS. BHALLA:  Yes, sir.  Thank you.

24               THE COURT:  Ms. Bhalla.

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4346

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4347

```
 1                        EXAMINATION

 2   BY MS. BHALLA:

 3        Q.   Good morning, Agent Acee.

 4        A.   Good morning.

 5        Q.   I think where we left off yesterday, we

 6   were talking about the 302s and the 1023s that were

 7   prepared on Mr. Cordova.  Were any -- and you were

 8   here for the testimony yesterday; correct?

 9        A.   Yes.

10        Q.   Okay.  You heard about a meeting that Mr.

11   Cordova says took place after he was pulled from the

12   pods next to Mr. Herrera and Mr. Perez, between you,

13   Mr. Cordova, and his attorney?

14        A.   Yes.

15        Q.   Okay.  Did you prepare any kind of report

16   on that meeting, or was a report prepared?

17        A.   I'm not sure.  My recollection of that

18   meeting was discussing him being charged federally.

19        Q.   Okay.  So you didn't have any conversations

20   with him about -- at that time, about what

21   information he was able to extract?

22        A.   No.  My recollection is that, once he got

23   an attorney, there were no more debriefings.

24        Q.   Okay.  Did you ever have a debrief with him

25   about the statements he was able to retrieve from Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4347

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4348

```
 1    Perez and Mr. Herrera?

 2         A.   Not a full debrief, no.

 3         Q.   Okay.  So did you have an informal meeting

 4    then?  What did you have?

 5         A.   I think we had some informal meetings.  We

 6    had some discussion.  But once his attorney got

 7    involved, I didn't have the same access to him.

 8         Q.   Okay.  Did you memorialize those

 9    conversations in any way?

10         A.   I'm not sure.  I would need to check his

11    informant file and our case file.

12         Q.   Okay.  You testified yesterday that once

13    you found out about what happened with Mr. Cordova

14    and some of the other informants with the contact

15    visits, that you went and spoke to them; is that

16    correct?

17         A.   Yes.

18         Q.   Okay.  After you found out about the issue

19    that we're here for today, about the Suboxone or the

20    allegations that Suboxone was given, did you go talk

21    to Mr. Cordova about that?

22         A.   No.

23         Q.   So you never confronted him or asked him

24    about that allegation?

25         A.   No.  He was asked.  But it was through his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4348

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4349

```
 1    attorney, and the response was provided back through
 2    his attorney.  I didn't speak to him directly.
 3         Q.   Who was responsible for getting him an
 4    attorney?
 5         A.   The Court.
 6         Q.   Okay.  And do you know why that happened?
 7         A.   We gave him a target letter.
 8         Q.   Okay.  To your knowledge, did you discuss
 9    lump sum credits with Mr. Cordova?
10         A.   No.
11         Q.   Were lump sum credits given to Mr. Cordova?
12         A.   No.
13         Q.   Okay.  Are you familiar with Mr.
14    Rodriguez's 302 dated -- the conversation took place,
15    I should say, on November 1st of 2017?
16         A.   Did I write that one, or did Stemo?
17         Q.   I believe you wrote it.
18         A.   I'm familiar with it.
19         Q.   You are?
20         A.   Yes.
21         Q.   Do you recall speaking with him about the
22    effects of segregation and solitary confinement?
23         A.   Yes.
24         Q.   Okay.  Do you recall his statement:
25    Everyone gets paranoid, and that inmates in solitary
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                         FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  confinement develop significant psychological and

2  social problems as a result?

3       A.   He did tell me that.

4       Q.   Okay.  Did he also detail to you how

5  Suboxone is typically mailed into the prison

6  disguised as legal mail?

7       A.   Yes.

8       Q.   Do you also recall him telling you, and I

9  quote, "Suboxone gets you higher than fuck"?

10      A.   Yes.

11      Q.   Okay.

12           MS. BHALLA:  Can I have just one second,

13  Your Honor?

14           THE COURT:  You may.

15           MS. BHALLA:  I have nothing further.

16           THE COURT:  Thank you, Ms. Bhalla.  Any of

17  the defendants have cross-examination?

18           MR. LAHANN:  Your Honor, if I may.

19           THE COURT:  Mr. Lahann.

20                    EXAMINATION

21  BY MR. LAHANN:

22      Q.   Agent Acee, do you recall yesterday, when

23  Mr. Beck was asking you if it appeared that Mr. Perez

24  seemed under the influence in the recordings that you

25  listened to?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4350

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4351

```
 1          A.    Yes, sir.

 2          Q.    And you stated that he seemed fine?

 3          A.    Yes.

 4          Q.    And Mr. Beck, in laying that foundation, he

 5   went through your previous life as a patrol officer.

 6   And I think you said that you had the DRE training in

 7   California?

 8          A.    Yes, sir.

 9          Q.    And were you actually certified?

10          A.    Yes.

11          Q.    And that's -- from what I've heard from DRE

12   experts, they describe it as one of the most rigorous

13   trainings that they've done in their law enforcement

14   careers.  Would you agree with that?   Intellectually

15   rigorous.

16          A.    It had its challenges.

17          Q.    The DRE protocol is a 12-step protocol; is

18   that right?

19          A.    Yes, sir.

20          Q.    And actually, there is a 13th step, because

21   somebody in the field, an officer in the field, has

22   already done field sobriety tests, and they brought

23   somebody in to the station; you're usually called out

24   as a DRE to kind of follow-up; is that correct?

25          A.    Yes, sir.  The first step, though, is I
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4351

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14352

1    would redo many of those same field sobriety tests.

2         Q.    And you would agree that the protocol is

3    much more complicated than a standardized roadside

4    field sobriety test; is that right?

5         A.    Yes, sir, it is.

6         Q.    And if you're doing that entire protocol,

7    the 12 steps -- well, the 11 steps that you do --

8    that should take about an hour and a half?

9         A.    Sometimes longer, yes.

10        Q.    Because during that hour and a half or

11   longer, you're required to take the suspect's pulse

12   and blood pressure, and temperature three different

13   times; is that right?

14        A.    Yes, sir.

15        Q.    You give the standardized field sobriety

16   tests again; is that right?

17        A.    It is, correct.

18        Q.    And you give additional physical tests

19   beyond the standardized tests; is that right?

20        A.    Yes.

21        Q.    The Romberg Balance, and the touching the

22   nose, and all that?

23        A.    Dark room, yes.

24        Q.    Dark room, because you're checking pupil

25   size in light, and then you turn the lights off and



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4352

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4353

 1    you check it again; is that right?

 2         A.   Yes, sir.

 3         Q.   The 11th step in the DRE protocol is,

 4    basically, you writing down your opinion; is that

 5    correct?

 6         A.   Yes, sir.

 7         Q.   And you're taught as a DRE expert that

 8    every opinion needs to be logged, whether you find

 9    somebody under the influence or not; is that correct?

10         A.   Correct.

11         Q.   And the 12th step, of course, is taking

12    blood and sending results to have that analyzed?

13         A.   Toxicology, yes, sir.

14         Q.   Okay.  And because you were listening to a

15    recording in this case, it's safe to say that you

16    didn't do any of those 11 steps that you would be

17    required to do to form an opinion about whether

18    somebody is under the influence?

19         A.   Correct.

20         Q.   So your opinion that Mr. Perez seemed not

21    under the influence really is pretty much a lay

22    opinion; is that correct?

23         A.   Fair to say.

24              MR. LAHANN:  Thank you.  No further

25    questions.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4353

```
 1              THE COURT:  Thank you, Mr. Lahann.

 2              Any other defendants have cross-examination

 3      of Mr. Acee?

 4              MS. JACKS:  I have a few questions.

 5              THE COURT:  Ms. Jacks.

 6              Ms. Armijo, I didn't welcome you today.

 7      Good morning to you.

 8              MS. ARMIJO:  Thank you, Your Honor.

 9                        EXAMINATION

10      BY MS. JACKS:

11          Q.  Good morning, Agent Acee.

12          A.  Good morning.

13          Q.  I just want to follow up on a couple of

14      things that you spoke about yesterday, and I think

15      this was on direct examination.

16              One of the things that you talked about was

17      Billy Cordova's murder conviction or conviction for

18      manslaughter in December of 2015.  Do you recall that

19      testimony?

20          A.  Yes.

21          Q.  And I think what you said was that you were

22      investigating that, or you were considering that as a

23      potential racketeering activity of the SNM; is that

24      right?

25          A.  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4354

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14355

 1          Q.   And I think you also said that you and Mr.
 2   Cordova -- you thought you and Mr. Cordova disagreed
 3   about that?
 4          A.   Yes.
 5          Q.   You heard Mr. Cordova testify about that
 6   offense yesterday, didn't you?  You were here in
 7   court?
 8          A.   I was.
 9          Q.   And Mr. Cordova said that he was convicted
10   of a crime that he didn't commit.  Was that true?
11          A.   Well, he was convicted.
12          Q.   But was he convicted of a crime he didn't
13   commit?
14          A.   I believe he was convicted of a crime he
15   did commit.
16          Q.   Okay.  So the testimony that Mr. Cordova
17   gave yesterday was false?
18          THE COURT:  Well, I think I probably should
19   be the one to determine that rather than Mr. Acee.
20   So I'll not allow that question or answer.
21          Q.   Agent Acee, did you discuss with Mr.
22   Cordova that you were investigating that homicide,
23   whether it be a murder or manslaughter, as a
24   potential overt act in the racketeering conspiracy?
25          A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4355

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 15356

```
 1        Q.   Did you discuss with him the fact that he
 2   was convicted of that offense, and that it could be
 3   used in some federal prosecution?
 4        A.   I don't think I did.
 5        Q.   I also think on direct examination you
 6   testified that, after you opened Mr. Cordova as a
 7   confidential informant, you talked to him about
 8   perhaps continuing his work as a confidential
 9   informant once he got out of the prison.  Do you
10   recall that?
11        A.   He asked me if that was a possibility.
12        Q.   And it was something that you had done with
13   other government informants in this case?
14        A.   Yes.
15        Q.   And you're saying Mr. Cordova initiated
16   that conversation?
17        A.   Yes.
18        Q.   As a potential career path outside of
19   prison?
20        A.   Yes.
21        Q.   In exchange for -- he would work as an
22   informant in exchange for money?
23        A.   I believe that was his thoughts, yes.
24        Q.   And you talked with him about that in
25   either the meeting on January 4, 2016 or January 7,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4356

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4357

```
 1    2016?
 2         A.   No.   That conversation, I remember it
 3    happened up in L pod, what we've been calling the
 4    cooperator pod.   He pulled me off to the side.
 5         Q.   Do you recall approximately when that was?
 6         A.   I think it would have been late 2016,
 7    because the incident where they had the inappropriate
 8    contact or sex was January, is when I terminated him.
 9    So it was prior to that.
10         Q.   So was it shortly before that?
11         A.   It would have probably been within a few
12    months of that.
13         Q.   Well, you worked with another government
14    cooperator, Eric Duran, correct, in terms of hooking
15    him up with some other agent on the outside to work
16    as a confidential informant in exchange for money
17    outside, once he got released from prison, right?
18         A.   It's true that I hooked him up with agents
19    in another division.   I presume they would pay him.
20    But that's their decision.
21         Q.   But that was -- kind of the thought, was to
22    give him a way to support himself once he got out of
23    prison?
24         A.   Well, I always push for:   You need to get a
25    job.   Don't count on a paycheck from us.   But I'm
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4358

1   sure he wanted money, and I believe he was paid some

2   amount of money.

3       Q.   Was the discussion you had with -- the

4   discussion when Mr. Cordova pulled you over and

5   inquired, maybe something like that would work out

6   for him, was that contemporaneous with that working

7   out for Mr. Duran?

8       A.   I was doubtful it could work as well for

9   Mr. Cordova, because he didn't want to leave New

10  Mexico.

11      Q.   That wasn't my question, though.  My

12  question was, was the timing of Mr. Cordova

13  approaching you contemporaneous with the timing of

14  that arrangement being made for Mr. Duran?

15      A.   I'm sorry.  I see what you're saying.

16  Mr. Duran was gone for a few months.  I think they

17  were in the pod at the same time.  So they may have

18  talked about that.  Am I answering your question?

19      Q.   Yes.

20      A.   But I'm not sure.

21      Q.   And the timing -- does that, in your mind,

22  seem to be approximately the same time that that had

23  happened for Mr. Duran?

24      A.   Yes, that could have lined up.  I don't

25  know what Duran told him.  I certainly didn't tell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4358

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4359

1   the other defendants where Duran was going, or what

2   he was going to be doing.

3        Q.   Okay.  And you're clear about the fact that

4   it was Mr. Cordova that approached you, suggesting

5   this arrangement might work out for him?

6        A.   Yes, minus the relocation to another state

7   part.  He wanted to stay in New Mexico and work.

8        Q.   But yesterday, when you talked about this

9   conversation, you said that you talked to him about

10  when he gets out, you could relocate him to another

11  city, and with another agent, do some sort of active

12  cooperation?

13       A.   I don't know that I said that.  And I can

14  try to clarify, if you'd like.

15       Q.   That's all right.  We have a transcript,

16  so -- I want to talk to you a little bit about L pod.

17  When was it that you first became aware that there

18  was an arrangement at the New Mexico Department of

19  Corrections where all the cooperators were being

20  housed together?

21       A.   I think I became aware of it as soon as the

22  marshals had the first six guys up there, because the

23  contract allowed for six.  So that would have been

24  sometime after the first phase takedown, sometime

25  after December 2015.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4359

```
 1        Q.    Sometime shortly after December 2015?

 2        A.    I believe so.

 3        Q.    And how did you find out that that was the

 4   way the informants were being handled?

 5        A.    That they were being sent up there?

 6        Q.    Right.

 7        A.    I track where most of the defendants are,

 8   cooperators and not.

 9        Q.    Because you would need to go up and talk to

10   them?

11        A.    That's one of the reasons.

12        Q.    Were the cooperating witnesses housed in

13   the same pod, L pod, at your request?

14        A.    No.

15        Q.    To make it easier on you or other people

16   participating in the investigation?

17        A.    No.  I'd argue that it didn't make it

18   easier.

19        Q.    Did you have any concerns about -- first of

20   all, do you know who made that decision?

21        A.    No.

22        Q.    And whoever made that decision, did they do

23   it in consultation with you?

24        A.    I don't think so.

25        Q.    Did they do it in consultation with the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4360

1    Government, to your knowledge?

2         A.   No.

3         Q.   When you found out about it sometime after

4    December of 2015, that the cooperators were being

5    housed together, did you have any concerns about that

6    situation?

7         A.   I did.  And those concerns lasted the

8    entire time, men were transferred in and out of that

9    pod.

10        Q.   Did you discuss those concerns with

11   anybody, either from the -- with the Government

12   prosecutors or with people from the New Mexico

13   Department of Corrections?

14        A.   Yes.

15        Q.   And can you tell me who you talked about

16   that with?

17        A.   Yes.  Anytime there were issues, I'd

18   consult with the three prosecutors at the table, and

19   oftentimes the various defense attorneys that

20   represented those men, as well as STIU at the Pen,

21   and sometimes administrators there, depending on what

22   the issue was.

23        Q.   Well, did you have any sort of overarching

24   concerns about the Government housing its cooperating

25   witnesses in the same place, where they could

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                          1-800-669-9492
                                                              e-mail: info@litsupport.com



DNM 4361

```
 1    interact freely with each other?

 2          A.   I had some concerns.

 3          Q.   And what were -- and I'm talking about

 4    overarching concerns, not about personal differences

 5    between people, but just generally, why that might

 6    not be a good idea?

 7          A.   Yes.

 8          Q.   Can you tell me why that would be?

 9          A.   Talking to one another.

10          Q.   And doing what?  Getting their stories

11    straight?

12          A.   Well, they're talking to one another about

13    the case.

14          Q.   And there is no way to prevent that, is

15    there?

16          A.   Not if they're housed together.

17          Q.   Did you bring that issue to anybody in an

18    effort to prevent that situation from continuing, all

19    the cooperators being housed together?

20          A.   No.

21          Q.   And if I understand your testimony

22    correctly, that ultimately -- that pod was ultimately

23    broken up sometime in January of 2017?

24          A.   Yes.

25          Q.   And that was due to the fact that numerous
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4362

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22

```
 1    cooperators were using contact visits to engage in

 2    sexual activity with females?

 3         A.   Four of them were.

 4         Q.   Over an extended period of time, right?

 5         A.   Happened more than once.

 6         Q.   I want to ask you some questions about

 7    providing a recording device to Billy Cordova,

 8    specifically.  When you talked to him about sending

 9    him into the prison to make recordings, did you talk

10    to him about the importance of preserving the

11    integrity of the evidence he was collecting?

12         A.   Not in those words, no.

13         Q.   Well, did you talk -- did you talk to him

14    at all, or did you advise him at all about how the

15    recording device was to be operated, in terms of when

16    he's having conversations with people, what

17    conversations he should be recording?

18         A.   Yes.

19         Q.   And what did you tell him?

20         A.   Well, that if it's not recorded, the

21    conversation, in my mind, didn't happen.  So if there

22    was pertinent information that he was able to talk to

23    these gentlemen about, it needed to be recorded.

24              At the same time I reminded him that it was

25    a small device and that it was battery powered.  That
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4363

1    I had had cooperators in this case tell me they've

2    obtained confessions, if you will, from people; I get

3    the device back and it's not on there.  So it doesn't

4    count in my mind.  So I just reiterated the

5    importance of conserving the battery and making sure

6    he captured the conversations.

7         Q.   Did you give him any instruction about

8    capturing entire conversation, as opposed to just

9    snippets of conversations?

10        A.   No.  And it would be a fair to say I didn't

11   do that.  And I placed the importance on, if they're

12   talking about murders, make sure it's recorded.

13        Q.   When did you start paying Mr. Cordova on

14   his commissary account?

15        A.   A review of his file would enable me to

16   give you an exact answer.  But I believe it was

17   shortly after I opened him.  Because that's normally

18   what I do.  I wouldn't deviate from that.  So I think

19   it was by February of 2016.

20        Q.   And it was a monthly payment of $50?

21        A.   No.  Because it's difficult to get the

22   money in there.  So the average was 50.  So if I

23   could put $300 on the books, and then not deal with

24   it again until several months later, that's what I

25   did.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1       Q.   When was the last time you made a payment

 2   to his commissary account?

 3       A.   I'm not sure.  I think it covered up till

 4   December.  It might have covered January, because I

 5   might have advanced it.  But I closed him in January.

 6   And in order for me to close him, all payments have

 7   to be completed and rectified, and the paperwork is

 8   in.  So January he didn't receive any money after

 9   that for sure.

10       Q.   Okay.  So your testimony is that after you

11   found out about the way he was abusing the privileges

12   and engaging in sexual activity in front of children,

13   you stopped paying him?

14       A.   Not only that, I closed him.  Yes.

15       Q.   So you -- closing means you terminated him

16   as a cooperating witness?

17       A.   No, as a confidential human source.

18   Whether or not he's a witness isn't my decision.

19       Q.   Okay.  So you closed him as a confidential

20   source, you closed the file on him?

21       A.   I did.

22       Q.   And since January of 2017, have you made

23   any effort or any recommendations to charge him as

24   part of an SNM racketeering case, whether it be a

25   violent crime in furtherance of racketeering or RICO

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 4365

```
 1   conspiracy or something else?
 2        A.   I have had no communication with him since
 3   January.  I pushed for him to be charged with RICO
 4   conspiracy.  His attorney had different ideas.  And
 5   those conversations were between the prosecutors and
 6   the attorney.
 7        Q.   Well, that sounds like conversations that
 8   happened prior to his -- prior to January 2017.
 9        A.   I think they were.
10        Q.   I think my question was since January 2017.
11        A.   I don't think there has been any
12   conversation about that.
13             MS. JACKS:  Thank you.  I have nothing
14   further.
15             THE COURT:  Thank you, Ms. Jacks.
16             Any other defendants have cross-examination
17   of Mr. Acee?
18             Mr. Beck, do you want to conduct redirect?
19             MR. BECK:  Yes, Your Honor.
20             THE COURT:  Mr. Beck.
21                 REDIRECT EXAMINATION
22   BY MR. BECK:
23        Q.   Agent Acee, on cross-examination was your
24   testimony that at some of these preliminary meetings
25   with Billy Cordova, STIU officers Sapien, Cupit, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4366

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 26

```
 1    Martin were there?

 2         A.   Yes.

 3         Q.   And was Mark Myers there?

 4         A.   Yes.

 5         Q.   And did they tell you anything about

 6    Mr. Perez or Mr. Herrera's psychological or mental

 7    issues, if there were any?

 8         A.   No.

 9         Q.   Did they tell you anything about the

10    medications that Mr. Perez was taking?

11         A.   No.

12         Q.   And did you ask them to move or house Mr.

13    Perez or Mr. Herrera in any way?

14         A.   No.

15         Q.   I want to talk to you about Exhibit RP-C.

16    Do you remember testifying about that exhibit

17    yesterday?

18         A.   Yes, sir.

19         Q.   I think you said -- did you say there were

20    seven pertinent recordings on there?

21         A.   I think I was asked, would I agree that

22    there were six.  And I thought there could be a

23    seventh, because it looked like there was more than

24    just a few seconds of recording.

25         Q.   Was the seventh you pointed to Number 1
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4367

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 27368

1    yesterday, session Number 1 on there?

2        A.    No.

3        Q.    Which session was the pertinent one that

4    you thought you might not have talked about?

5        A.    Well, I'm not sure, because I was asked, I

6    think, isn't it true there are six, and when I looked

7    at the times I thought it might be.  If the decision

8    is mine, I'm going to look at all of them.  But there

9    might be a seventh one.

10       Q.    I'm going to show you what has been

11   previously admitted last week in a motion to suppress

12   hearing as Government's Exhibit 16.  And who does

13   that transcript say is the participants in that

14   conversation?

15       A.    CHS and Rudy Perez.

16             MR. BECK:  All right.  May I approach, Your

17   Honor?

18             THE COURT:  You may.

19       Q.    Take a look at that transcript, and tell me

20   whether you're familiar with the conversation in that

21   transcript.

22       A.    I am.

23       Q.    Who is the CHS in that transcript?

24       A.    It's -- I have a blank on his name -- it's

25   Mr. Cordova.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4368

1      Q.   Billy Cordova from yesterday?

2      A.   Yes.

3           MR. BECK:  Your Honor, at this time, the

4      United States moves to admit, for the purposes of

5      this motion to suppress hearing, Government's Exhibit

6      16?

7           THE COURT:  Any objection?

8           MR. VILLA:  Your Honor, I don't.  I just

9      want to clarify whether it is the same as, you know,

10     the transcripts that were admitted yesterday.

11          MR. BECK:  It's not.  It's the seventh

12     recording from this.

13          MR. VILLA:  No objection.

14          THE COURT:  Anybody else?

15          All right.  Government's Exhibit 16 will be

16     admitted into evidence.

17          MS. DUNCAN:  I'm sorry, Your Honor.  If we

18     could get the Bates number for the transcript.

19          MR. BECK:  It begins at 20529, and it ends

20     at Bates No. 20533.

21     Q.   Special Agent Acee, I want to clarify, did

22     you request of the New Mexico Corrections Department

23     that the cooperators that were housed in L pod be

24     given special privileges?

25     A.   No, I didn't have anything to do with that.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4369

```
 1        Q.   Did you ask that they be allowed conjugal

 2   visits?

 3        A.   No.

 4        Q.   I want to direct your attention, Agent

 5   Acee, to what was admitted yesterday as Carlos

 6   Herrera, CH-A.  Do you recall looking over this

 7   exhibit with Ms. Bhalla yesterday?

 8        A.   Yes.

 9        Q.   I believe she pointed out some of the UIs

10   or unintelligibles in that.  Do you recall that

11   testimony yesterday?

12        A.   Yes.

13             MR. BECK:  Your Honor, at this time, the

14   United States moves to admit Government's Exhibit 40

15   and 40A, copies of which I provided to Ms. Bhalla.

16   And they are the unenhanced for Exhibit 40, and the

17   enhanced Exhibit 40A, recordings of the conversation

18   from which this transcript is taken.

19             THE COURT:  Any objection, Ms. Bhalla?

20             MS. BHALLA:  No objection for purposes of

21   this hearing.  There is something I would like to

22   point out, but I think I can do that in closing

23   arguments, Your Honor.

24             THE COURT:  Anybody else have any

25   objection?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4370

```
 1            All right, Government's Exhibit 40 and 40A
 2   will be admitted into evidence.
 3        Q.   Looking over this transcript yesterday --
 4   had you reviewed this transcript before yesterday?
 5        A.   Yes.
 6        Q.   Is it fair to say that there is a few --
 7   that there is a fair amount of unintelligibles in
 8   this transcript?
 9        A.   Yes.
10        Q.   Do you know whether Mr. Cordova was
11   recording Mr. Perez person-to-person, or how were
12   they recording each other?
13        A.   Person-to-person; they're separated by a
14   prison wall, speaking through an air vent.
15        Q.   Do you know if Mr. Cordova was recording
16   Mr. Perez through that air vent?
17            MS. BHALLA:  Objection, speculation.  He
18   wasn't present for that, Your Honor.  That testimony
19   was elicited from Mr. Cordova yesterday.
20            THE COURT:  Well, ask him if he knows.  If
21   he says yes, then we'll listen to his answer.  It's a
22   yes-no question.  Do you know?
23        A.   Yes.
24        Q.   How do you know that?
25        A.   Based on Mr. Cordova telling me that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4371

Appellate Case: 20-2058  Document: 010110415675  Date Filed: 09/29/2020  Page: 34

```
 1        Q.    What did he tell you?

 2              MS. BHALLA:   Objection, Your Honor.

 3              THE COURT:   Well, I can hear what he said.

 4   It might differ.   Overruled.

 5        A.    Mr. Cordova explained to me that he got Mr.

 6   Perez to talk to him through the vents and that he

 7   recorded it.

 8        Q.    Have you spoken with a number of SNM

 9   members?

10        A.    Yes.

11        Q.    How many SNM members would you say you've

12   spoken with?

13        A.    Somewhere between 50 and 100.

14        Q.    And in conversations with SNM members,

15   generally, do you understand every word that they

16   say?

17        A.    No.

18        Q.    And I want to go back to sort of the

19   beginning of conversing with SNM members.   Did you

20   have a difficult time maybe understanding maybe every

21   word they say?

22        A.    Yes.

23        Q.    Why is that?

24        A.    They have their own language or phrases

25   that I hadn't heard before.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4372

1      Q.   Yesterday, when I asked you about Mr.

2    Herrera's -- what you learned from listening to his

3    voice here -- I think, did you say that, in your

4    opinion, he was under the influence of any drugs or

5    narcotics during these conversations?

6      A.   I said that I -- it was my opinion that he

7    was not.

8      Q.   And when you listened specifically for

9    whether you thought that he was under the influence

10   of drugs or narcotics, did you listen to the

11   recordings or did you read the transcripts?

12     A.   Both.

13     Q.   And when you listened for whether he was

14   under the influence of narcotics, did you rely

15   primarily on listening to the recordings, or in

16   reading the transcripts?

17     A.   Primarily on listening to the recordings.

18          MR. BECK:  Your Honor, just as sort of a

19   housecleaning matter, at this time the United States

20   would move -- moves for the admission of Government's

21   Exhibit 41 and 41A, which are respectively the

22   recording of the conversation and the enhanced

23   recording of the conversation, the transcript for

24   which was admitted yesterday as Carlos Herrera, CH-C.

25          THE COURT:  All right.  Any objection to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4373

```
 1    those?  All right.  Government's Exhibits 41 and 41A

 2    will be admitted into evidence.

 3          Q.   I believe you discussed with Ms. Jacks the

 4    cooperators being housed together in L pod?

 5          A.   Yes.

 6          Q.   What direction did you give to NMCD to

 7    direct them to house the cooperators together?

 8          A.   None.

 9          Q.   It sounds like you think they could have

10    talked about this case together while they were

11    housed together?

12          A.   They could have.

13          Q.   Did you take statements from each of these

14    cooperators before they went into housing in L pod?

15          A.   I have a list of who I think was there.

16    I'll just look at that real quick.

17          Q.   You may.

18          A.   Yes, I did.

19          Q.   And were those statements reflected in a

20    report that you or someone else later memorialized?

21          A.   Yes.

22               MR. BECK:  May I have a moment, Your Honor?

23               THE COURT:  You may.

24               MR. BECK:  Nothing further, Your Honor.

25    Pass the witness.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  Thank you, Mr. Beck.

2           All right.  Mr. Acee, you may step down.

3           Did you have something, Mr. Villa?

4           MR. VILLA:  Just a brief recross on one

5    exhibit that was admitted from the previous hearings,

6    Government's Exhibit 16.

7           THE COURT:  Go ahead, Mr. Villa.

8           MR. VILLA:  Thank you, Your Honor.

9                        EXAMINATION

10   BY MR. VILLA:

11       Q.   Good morning, Agent Acee.

12       A.   Good morning.

13       Q.   So Exhibit 16 was the seventh, if you will,

14   statement of Mr. Perez to Mr. Cordova that we

15   overlooked yesterday?

16       A.   Yes.

17       Q.   And I'm going to show you Exhibit RP-C.

18   Are you able to tell me which one of these recordings

19   is reflected in the transcript of Exhibit 16?

20       A.   Can you slide it down?  Can I look at the

21   front page of the transcript?

22       Q.   Oh, the transcript, sure.

23       A.   No, I can't.

24       Q.   And is that true with respect to the other

25   exhibits that were admitted yesterday?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                        1-800-669-9492
                                            e-mail: info@litsupport.com



DNM 4375

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35

```
 1          A.   Some of the transcripts -- no, because some
 2    of the transcripts list the serial number of the
 3    device used, and then they're in sequential order, so
 4    it will say dash 001, or 004, so I think we could put
 5    them in order on those transcripts.
 6          Q.   But for this particular one, you cannot?
 7          A.   No, sir.
 8               MR. VILLA:  That's all I have.
 9               THE COURT:  Thank you, Mr. Villa.
10               Mr. Beck, do you have any redirect?
11               MR. BECK:  No, Your Honor.
12               THE COURT:  All right.  Mr. Acee, you may
13    step down.  Thank you for your testimony.
14               All right.  Does the Government have
15    further witnesses or evidence on the suppression
16    motion?
17               MS. ARMIJO:  Yes, Your Honor.  The United
18    States will call Jerry Roark.
19               THE COURT:  Mr. Roark, if you'll come up
20    and stand on the witness box on my right, your left.
21    Before you're seated, my courtroom deputy, Ms.
22    Standridge, will swear you in.
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4376

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36

```
 1                        JERRY ROARK,

 2          after having been first duly sworn under oath,

 3          was questioned and testified as follows:

 4                        DIRECT EXAMINATION

 5               THE CLERK:  Please be seated.  State and

 6    spell your name for the record.

 7               THE WITNESS:  Jerry Roark, J-E-R-R-Y; last

 8    name R-O-A-R-K.

 9               THE COURT:  Mr. Roark.  Ms. Armijo.

10               MS. ARMIJO:  Thank you, Your Honor.

11    BY MS. ARMIJO:

12          Q.   Where Roark, where are you employed?

13          A.   The New Mexico Corrections Department.

14          Q.   When did you start with Corrections?

15          A.   In 1989.

16          Q.   And in what capacity?

17          A.   I started as a correctional officer.

18          Q.   And what different capacities -- what's

19    your current title?

20          A.   My current title is Deputy Secretary of

21    Operations.

22          Q.   And who is your -- how many supervisors do

23    you have?

24          A.   I have one supervisor.

25          Q.   And who is that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4377

1        A.    The Secretary of Corrections.

2        Q.    Okay.  So is it fair to say that only the

3    Secretary of Corrections is above you?

4        A.    Yes, ma'am.

5        Q.    Now, what positions have you held

6    throughout the years since starting as a correctional

7    officer?

8        A.    I went through the ranks of the custody

9    series.  I was a sergeant, lieutenant, captain,

10   major.  I spent a little bit of time as a

11   classification officer.  And I was also a Deputy

12   Warden.  I then became the Director of Adult Prisons,

13   and then this position.

14       Q.    And how long have you been in your current

15   position?

16       A.    About six months.

17       Q.    Prior to that, what was your position?

18       A.    Director of Adult Prisons.

19       Q.    And as Director of Adult Prisons, what were

20   your duties?

21       A.    I oversaw the 11 prison facilities within

22   the State of New Mexico.

23       Q.    And when were you the Director of Adult

24   Prisons, approximately?

25       A.    From October 2011, till June of this year.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4378

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4379

```
 1        Q.   Now, in your capacity in working with the
 2   Corrections Department, are you aware of what an STG
 3   is?
 4        A.   Yes, ma'am.
 5        Q.   What is an STG?
 6        A.   It's a Security Threat Group.
 7        Q.   And are you familiar with Syndicato de
 8   Nuevo Mexico?
 9        A.   Yes, ma'am.
10        Q.   And what is that?
11        A.   It's a Security Threat Group within the
12   State of New Mexico.
13        Q.   Now, let's go over a little bit about
14   classifications.  Are you familiar with the different
15   classifications that New Mexico Corrections
16   Department has for inmates?
17        A.   Yes, ma'am.
18        Q.   Okay.  Tell us a little bit about that.
19        A.   Well, we have a scoring system that scores
20   inmates based on various things, based on various
21   criteria.  So they can score anywhere from Level 1 to
22   Level 4 points.
23        Q.   Okay.  And which is the lowest security?
24        A.   Level 1 would be the lowest security.  It's
25   the minimum security.  And then each -- Level 2 would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4379

```
 1    be, like, a minimum restrict -- it's a little fewer

 2    privileges than a minimum.  Then the Level 3 is like

 3    medium security.  And Level 4 is what we usually, a

 4    lot of times, just call closed custody.

 5         Q.   So would Level 4 be your highest

 6    classification?

 7         A.   It is.

 8         Q.   And now, have you heard people use the

 9    terms before Level 5 or Level 6?

10         A.   Yes, ma'am.

11         Q.   Is that really a correct term?

12         A.   Well, it is a correct term.  A lot of

13    people use it as a classification term.  Level 6 and

14    Level 5 really was designed to be a program.  Inmates

15    who engaged in misconduct or had security issues, we

16    couldn't put them in a general population, at that

17    point they were put in Level 6.  And Level 5 is

18    actually a step-down from Level 6 to prepare them to

19    go back into general population.

20         Q.   Is it an actual classification or is it

21    more programming?

22         A.   Well, it's a secure environment.  No one

23    scores Level 6 points.  You have to engage in --

24    there has to be some either behavior nexus, or some

25    sort of threat to security nexus in order to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4380

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4381

```
 1    placed into Level 6.
 2         Q.   Okay.  And so, in general, the highest you
 3    can go is 4, unless there is some other sort of
 4    special consideration that would bump you up to 6; is
 5    that right?
 6         A.   As far as getting points on your scoring
 7    instrument, yes, it's Level 4.
 8         Q.   Okay.  So now, what are the things that can
 9    happen for someone to -- and how would you refer to
10    it?  I want to use the terms that you would refer to
11    it.  Would it be Level 6 or would it be some other
12    term?
13         A.   It depends on the time frame.  In July of
14    2015, we changed our policies, and we refer to Level
15    6 now as things like predatory behavior management
16    program, restrictive housing.  So we've changed the
17    terminology.
18         Q.   Okay.  So let's go to -- and when was that
19    change?
20         A.   July of 2015.
21         Q.   All right.  So let's go to 2014, the
22    beginning of 2014.  What sort of system or
23    classifications did you have?
24         A.   We still have Level 5 and Level 6 at that
25    time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 44382

```
 1          Q.   Now, in regard to STGs, was there any sort

 2     of consideration as far as classification for

 3     somebody who was either suspected or validated member

 4     of an STG?

 5          A.   Yes, ma'am.  If you're a member of the

 6     Security Threat Group, you can even score below, you

 7     were automatically overridden to Level 4.

 8          Q.   And why is that?

 9          A.   Because we considered membership in a

10     Security Threat Group to undermine our ability to

11     keep other inmates safe.

12          Q.   So was it a threat to the institution?

13          A.   It was a threat to the institution and a

14     threat to particular -- to other inmates.

15          Q.   And so, in 2014 -- and has it changed since

16     then, as far as classification, if you are either

17     validated or a suspected member of an STG?  Is it

18     still an automatic 4?

19          A.   Yes, ma'am.  Nothing has changed on that.

20          Q.   So with the security threat groups, what

21     sort of things did you do to try and manage them?

22     And I'm going to be specific, in about the end of

23     December 2013, early 2014.

24          A.   Yes, ma'am.  In December of '13, we changed

25     the Level 4 policy.  At one time, inmates who were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4382

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4383

 1    Level 4 all got the same privileges.  We decided at
 2    that point that there were certain Level 4 inmates,
 3    including members of security threat groups, and
 4    those also who have a history of escaping from a
 5    secure perimeter, we decided that they were never
 6    going to leave Level 4, so we wanted to give them
 7    additional privileges.  So we changed the privilege
 8    matrix of Level 4, and we developed a Tier 1 and a
 9    Tier 2 privilege system.
10         Q.   Okay.  So at that point in time -- and
11    we're talking December 2013 -- Level 4 was divided up
12    into two different tiers?
13         A.   Yes, ma'am.
14         Q.   And I'm going to hand you -- what exhibit
15    number are we on?
16              MR. BECK:  We're on 42.
17              MS. ARMIJO:  -- what will be marked as
18    Exhibit Number 42.  Your Honor, I'm going to move for
19    the admission of Government's Exhibit 42, which is a
20    Level 4, Table of Services.
21              THE COURT:  Any objection from the
22    defendants?
23              MS. FOX-YOUNG:  No objection, Your Honor.
24              MS. BHALLA:  No, Your Honor.  Although we
25    would like to see it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4383

```
 1              THE COURT:  All right.  Government's
 2   Exhibit 42 will be admitted into evidence.
 3         Q.   And I'm showing a table of services that
 4   said Level 4.  Are you familiar with this document?
 5         A.   Yes, ma'am.
 6         Q.   And when did this -- and I believe it talks
 7   about Tier 1 and Tier 2.  Is that consistent with the
 8   testimony you were just giving about there being two
 9   tier systems in Level 4?
10         A.   Yes, ma'am.
11         Q.   So when did these changes start being
12   implemented?
13         A.   December of 2013.
14         Q.   And is this current today?
15         A.   Yes, ma'am, it is.
16         Q.   So I believe you were talking about Tier 2
17   specifically.  Were they given more privileges than
18   Tier 1?
19         A.   It's the other way around.  Tier 1 actually
20   got more privileges than Tier 2.
21         Q.   Okay.  So Tier 1 got more privileges than
22   Tier 2?
23         A.   Yes, ma'am.
24         Q.   And where were the security threat group
25   people in?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4384

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4385

```
 1          A.    They were in Tier 1.

 2          Q.    Okay.  And the reason again for the

 3   distinction between the two?

 4          Q.    Well, we decided the Security Threat Group

 5   members were -- because we were never able to place

 6   them in a regular general population, that we would

 7   start incrementally giving them more privileges.  And

 8   that was the first step towards doing that.

 9          Q.    And so what -- as of December of 2013, what

10   were the privileges in Level 4, Tier 1?

11          A.    Well, I need to probably differentiate

12   between Tier 1 and Tier 2.

13          Q.    Okay.

14          A.    On things like visits, in the original

15   Level 4 policy, they were allowed three contact/

16   noncontact visits a month.  We increased it to six

17   visits a month, three noncontact, three contact with

18   immediate family members.  We increased tier time in

19   Tier 2.  The original Level 4 in Tier 2 was two to

20   four hours a day.  We made it a mandatory four hours

21   a day in Tier 1.  Meals out of cell, it was two meals

22   out of the cell in the original Level 4.  In the new

23   tier system, Tier 1 got three meals out of their cell

24   every day.

25               And I think we made one other change.  The
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4385

```
 1    religious ceremonies, there were no group religious
 2    ceremonies in the original Level 4, except for a
 3    sweat lodge, because of some state statute issues.
 4            We gave one group recreation a month in
 5    Tier 1.
 6        Q.    And where was SNM -- where was the general
 7    population of SNM members being held at that time?
 8        A.    The majority of them were at Southern New
 9    Mexico Correctional Facility.
10        Q.    And who made the decision for that?  I
11    mean, I should say, why were they being held down at
12    Southern?
13        A.    That's where they had been when I got the
14    job.  And there was no need to move them.  We just
15    had them isolated there.
16        Q.    Now, early in 2014, did you have an
17    opportunity to meet with someone in reference to SNM
18    and possible changes with them?  Let me just be more
19    specific.  Did you have an opportunity to meet with
20    Anthony Baca?
21        A.    I did.
22        Q.    And who was Anthony Baca?
23        A.    He was a member of the SNM.
24        Q.    And what was your understanding of his
25    position?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         A.   The majority of our STIUs thought he was in

 2    a leadership position within the SNM.

 3         Q.   And why did you meet with him?

 4         A.   I was debating whether or not I wanted to

 5    send him back to Southern New Mexico Correctional

 6    Facility.

 7         Q.   Where was he being housed at that time?

 8         A.   The Penitentiary of New Mexico, North

 9    facility.

10         Q.   And what sort of -- at PNM, what sort of

11    classifications did they have there?

12         A.   He was in the Level 6 facility.

13         Q.   And so tell us about the meeting with Mr.

14    Baca.

15         A.   Well, I met with Mr. Baca, and asked him

16    what he thought about going back to Southern.  And he

17    told me that he had enough influence that he could

18    keep it quiet.  And I also asked him about whether --

19    that I appreciated him keeping it quiet, but I also

20    asked him about recruiting for the SNM.  And he would

21    not answer that question.

22         Q.   Now, why was it that you had a conversation

23    with Mr. Baca?  Was there previous -- had you had

24    success with another STG group?

25         A.   I did, with the Los Carnales.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4388

1    Q.   And what was that?

2    A.   Well, I had spoke to them about giving them

3    increased privileges, and allowing them increased

4    privileges, with some guarantees that they would no

5    longer be in the business of recruiting.  And they

6    actually agreed to that.

7    Q.   And did Mr. Baca agree to that same

8    condition when you met with him?

9    A.   He just wouldn't answer.

10   Q.   And what did you take that to mean?

11   A.   I took that to mean that he wasn't going to

12   commit to that kind of a promise, that the answer was

13   no.

14   Q.   And based on that, what did you decide to

15   do or not to do?

16   A.   Well, I just thought the answer was no.

17   But I did do a videoconference with STIU, because I

18   wanted to kind of get another opinion, to make sure

19   my kind of gut reaction was right.

20   Q.   And what decision did you make after that?

21   A.   I decided he wasn't going back to Southern

22   New Mexico Correctional Facility.

23   Q.   Did you, at some point after that meeting,

24   get a letter addressed to you from Mr. Baca?

25   A.   I did, in early February.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4388

1      Q.   And was your meeting before that letter?

2      A.   My meeting with Mr. Baca was.  But my

3   meeting with STIU was after I got the letter.

4      Q.   So even after meeting with Mr. Baca, there

5   were no changes made as far as classification or

6   programming with SNM members?

7      A.   No, not at all.

8      Q.   Did something happen on March 7th of 2014?

9      A.   Yes, ma'am.

10     Q.   What happened?

11     A.   Javier Molina was murdered.

12     Q.   And based upon that, what decision did you

13   make as far as SNM Gang members?

14     A.   At that moment the decision was made to

15   lock down all SNM members in the State of New Mexico.

16     Q.   And did you do so?  Was that your decision?

17     A.   I did consult with the Secretary and Deputy

18   Secretary.  But yes, I mean, ultimately, it was my

19   decision.

20     Q.   So what did that entail?

21     A.   That entails inmates, you know, are in

22   their cell.  They don't have any group activity.  It

23   requires investigation, searches of cells,

24   interviews, going through their property.  Just

25   various things happen in a lockdown, including

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4389

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4390

1  rephotographing inmates, updating emergency lists,

2  updating tattoo lists, all that kind of thing.

3      Q.   And did that happen immediately after the

4  Molina murder?

5      A.   The process began immediately after.

6      Q.   Now, what sort of -- have you been doing

7  anything before then, before March 7, as far as

8  programming with SNM -- or what was their situation?

9      A.   Well, again, we were -- we divided Level 4

10 into Tier 1 and Tier 2, with the hope that we were

11 going to increase programming for the SNM.

12     Q.   And so then, after March 7, you had a

13 lockdown?

14     A.   We did.

15     Q.   Now, were people moved around?

16     A.   Yes, ma'am.

17     Q.   And by "people," I mean SNM members.

18     A.   Yes, ma'am.

19     Q.   And what did you do in general?

20     A.   In general, we decided that some of the SNM

21 were such a threat to security that we felt they

22 needed to be in a facility that was designed and

23 built for maximum security, or higher security

24 inmates.  So we moved several of them to the PNM

25 North facility.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   Did you move any of them out of state?

2     A.   We did.

3     Q.   Who did you move out of state?

4     A.   We moved Daniel Sanchez, Archie Varela, and

5   Anthony Baca out of state.

6     Q.   And was that as a result of the Molina

7   murder?

8     A.   Yes, ma'am.

9     Q.   Now, after moving people -- when you say to

10   the North, do you mean the north facility, or to PNM?

11   I should clarify, is the north facility part of PNM?

12     A.   Yes, ma'am.

13     Q.   And how many facilities are at PNM?

14     A.   There are three separate facilities.

15     Q.   And what is the name for those facilities?

16     A.   There is the North facility, which also is

17   called the Level 6 at that time.  The South facility,

18   which is called -- at that time was called Level 5.

19   And then there is the Penitentiary of New Mexico,

20   Level 2.

21     Q.   Now, so after the Molina murder, what did

22   you do as far as classifications and programming, if

23   anything, for SNM members?  Let me rephrase it.  Did

24   they stay on lockdown until today, all of them?

25     A.   They're not on lockdown anymore today.  But

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 51

4392

```
 1    yes, we had a prolonged step-down for our lockdown.
 2         Q.    Okay.  Explain what a step-down is.
 3         A.    A step-down is where we gradually give
 4    privileges back to the inmates after a lockdown.
 5         Q.    Okay.  And so did you start that process?
 6         A.    We -- yes, ma'am, we did start that
 7    process.
 8         Q.    When did the stepping down process start,
 9    if you can recall?
10         A.    If I'd be able to look at my notes, ma'am.
11         Q.    Okay.  Do you have notes there to refresh
12    your recollection?
13         A.    I do.
14         Q.    And during cross-examination, do you have
15    any problem letting the defense look at those notes?
16         A.    Absolutely not.
17         Q.    And I don't want you to read from your
18    notes.  If you can look at your notes to refresh your
19    recollection and then testify.
20         A.    Yes, ma'am, I can.
21               So as soon as the murder, we did lock them
22    all down, and we kept them on lockdown, with nothing
23    but showers every 72 hours until late in March,
24    around March 26.  And then we allowed them to, in
25    addition to showers, we began giving them recreation
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4392

```
 1    five days a week.
 2         Q.    So they started getting recreation March
 3    26, did you say?
 4         A.    That's correct.
 5         Q.    And would that be in 2014?
 6         A.    Yes, ma'am, 2014.
 7         Q.    Okay.  And then what additional stepdowns
 8    occurred?
 9         A.    We incrementally started stepping them down
10    on April 3 of 2014.  Instead of showers every 72
11    hours, we gave them three showers a week, in addition
12    to the five days of recreation.  And then --
13         Q.    And then what, if you can recall?
14         A.    Over time, we started adding additional
15    canteen.  We started adding additional visits.  And
16    we added visits.  We added phone calls.  We just were
17    on a very slow, methodical step-down for the
18    lockdown.
19         Q.    Was something going to happen in July of
20    2015, and did you take steps to notify members about
21    a change that you were going to make?
22         A.    Yes, ma'am.  At that time, we decided, in
23    July of 2015, we were ready to resume normal
24    activities with the SNM.  And we were ready to go
25    back to the tier process within Level 4.  At that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4393

```
1    point, we conducted what we call townhalls with the

2    SNM, to let them know that we were going to restore

3    them back to normal.

4         Q.   So tell us how the townhalls work?

5         A.   Well, typically a townhall is we just call

6    all the inmates into individual pods.  It depends on

7    how the Warden likes to do it.  Different wardens

8    like to get them all into the gym.  Some like to go

9    pod to pod.  But they went, and actually just kind of

10   talked to the inmates, and tell them:  This is the

11   issues, we're going to restore -- and we call them

12   townhalls, because they're like a townhall.  At that

13   point we allow some dialogue with the inmates.

14        Q.   So if the inmates have questions of you,

15   you'll answer the questions?

16        A.   A warden will typically do that, yes,

17   ma'am.

18        Q.   Okay.  And did you have townhalls with SNM

19   members about increasing their privileges?

20        A.   Yes, there were townhalls.  But it wasn't

21   me.  It was wardens at the facility that did it.

22        Q.   Was it at your direction?

23        A.   Yes, ma'am.

24        Q.   Now, are you aware of an incident that

25   occurred that kind of changed what you had been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4394

1    planning on doing in July of 2015?

2        A.   Yes, ma'am.  On July 13 of 2015, three days

3    after we finished the townhalls, and we began to lift

4    off our lockdown and resume normal, Julian Romero was

5    assaulted.

6        Q.   And who is Julian Romero?

7        A.   He's a member of the Security Threat Group,

8    SNM.

9        Q.   And based upon the investigation and your

10   understanding of what the motive was for that, did

11   you take any more steps to change what was going to

12   be an increase of privileges?

13       A.   Yes, ma'am.  We began to -- we locked them

14   down again.

15       Q.   So after the Julian Romero assault

16   lockdown -- SNM went back into lockdown?

17       A.   Yes, ma'am.

18       Q.   And that would have been July of 2015?

19       A.   That's correct.

20       Q.   Now, also in 2015, in the summer of 2015,

21   were you aware of whether or not there was an ongoing

22   investigation that had commenced with the FBI and

23   members of Corrections into the SNM?

24       A.   Yes, ma'am.

25       Q.   Were you an active part of that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4395

1  investigation, or was that left to other people in

2  Corrections?

3      A.   It was left to other people in Corrections.

4      Q.   But you were aware of it?

5      A.   Yes, ma'am, I was.

6      Q.   Do you know -- and if you don't know,

7  that's fine -- but do you know what started that

8  investigation?

9      A.   Yes, ma'am.  It was because of threats to

10  the safety of Secretary Marcantel and some of the

11  STIU members.

12      Q.   Now, I'm going to fast-forward.  And were

13  you aware of the impending indictment in this case

14  and the initial round-up in December of 2015?

15      A.   Yes, ma'am, I was aware of that.

16      Q.   And up until that time, what was the

17  status, in December of 2015, of SNM members?  How

18  were they being held?

19      A.   They were still on lockdown.

20      Q.   And why were they still on lockdown?

21      A.   Because of the -- because we had concerns

22  for their safety.  We didn't know who was going to be

23  a victim of violence next.

24      Q.   Okay.  When you say you didn't know who

25  would be a victim of violence next, do you mean other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4396

```
 1   SNM members?

 2         A.   Yes, other SNM members.

 3         Q.   Now, fast-forwarding a little bit to

 4   February of 2016, is that after the first initial

 5   round-up that was done by the federal government?

 6         A.   Yes, ma'am.

 7         Q.   And what was the situation with the SNM at

 8   that time?

 9         A.   We decided that it was time to start

10   resuming normal.  And at that point we had a -- in

11   addition to recreation and showers and visits and

12   phone calls, we decided to add tier time to their

13   privileges.

14              MS. ARMIJO:  Your Honor, the United States

15   would move for admission of 43 through 45 into

16   evidence, which is Offender's Physical Location

17   History.  I believe at least a few of these are

18   attached to my response.

19              THE COURT:  All right.  Any objection from

20   the defendants?

21              MS. BHALLA:  None from Mr. Herrera, Your

22   Honor.

23              MS. DUNCAN:  I would ask, offender

24   histories for who?

25              MS. ARMIJO:  For Rudy Perez, Carlos
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4397

```
 1   Herrera, and Billy Cordova.

 2             MS. DUNCAN:  No objection for this hearing.

 3             THE COURT:  All right.  Not hearing any

 4   objection, Government's Exhibits 43, 44, and 45 will

 5   be admitted into evidence.

 6             Ms. Armijo.

 7        Q.   And Mr. Roark, are you familiar with --

 8   first, I'm showing you Exhibit 43 -- are you familiar

 9   with this item?

10        A.   I am.

11        Q.   And can you tell us what -- and this one

12   says, "Offender Physical Location History for Perez,

13   Rudy Lee."  Can you tell us what that is?

14        A.   Yes, that's a history of the inmate's

15   location within NMCD, and it's taken off of our

16   Criminal Management Information System.

17        Q.   And then I'm showing Exhibit 44.  Who this

18   is a history of?

19        A.   It's Carlos Herrera.

20        Q.   And to be fair, are these just the first

21   pages, which would include the year 2016, for them?

22        A.   Yeah, it's -- the last date on these are

23   April 2016.

24        Q.   All right.  And then I'm showing Exhibit

25   45.  Who is that an offender location for?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4398

1        A.    Billy Cordova.

2        Q.    Now, in reference to -- first, let's start

3   with -- have you had an opportunity to compare the

4   Billy Cordova offender location in comparison to --

5   and I can put it right up -- first, let me start --

6   which is 45, to Exhibit 43.  And specifically I'm

7   going to point out on Exhibit 45, there, towards the

8   top it says, "Next to Perez."  And it has a location

9   for him on January 21st of 2016 to February 9th of

10  2016.  Where is that location?  N 3A Q 102 S?

11       A.    That's the Penitentiary of New Mexico North

12  Facility, housing unit 3A, Q pod and the cell is 102.

13       Q.    Okay.  And then I'm showing the Rudy Perez

14  one.  That says, 10/20/2015 to 4/18/2016.  It says N

15  3A, Q 101 S.  Where is that?

16       A.    Again, that's the North facility, housing

17  unit 3A, Q pod, and the cell is 101.

18       Q.    And so is it fair to say then that Mr.

19  Cordova was next to Mr. Perez from January 21st of

20  2016 to February 9th of 2016?

21       A.    Yes, ma'am.

22       Q.    And then moving along to Mr. Herrera's,

23  which is Exhibit 44.  On the first line -- or on the

24  first -- I guess it's the second yellow highlighted

25  line underneath the start date time, it says

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4399

```
 1    2/16/2016 to 4/20/2016.  And the location is S 2A L

 2    101 S.  Where is that located?

 3         A.   That's the Penitentiary of New Mexico,

 4    South facility, housing unit 2A, 1 pod, and the cell

 5    is 101.

 6         Q.   And would that be Level 4?

 7         A.   That would be where we housed the Level 4

 8    SNM, yes.

 9         Q.   And then, looking at Mr. Cordova's, does it

10    look like he was there 2/16/2016 through March 18th

11    of 2016?

12         A.   Yes, ma'am.

13         Q.   And would those two cells, then, would he

14    have been next to him?

15         A.   Yes, ma'am, he was.

16         Q.   Now, in reference to Mr. Perez, what kind

17    of cell is that, the N 3A, Q 101 S?

18         A.   That cell is in a unit that has handicapped

19    access.

20         Q.   And do you know why he was placed there?

21         A.   Because he has a walker, and on occasion,

22    he uses a wheelchair.

23         Q.   Is there -- do you have a handicap cell in

24    the South facility?

25         A.   No, ma'am, we didn't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   And underneath that, it looks like he's at

2   another N 3B X 105 S.  Is that also a handicapped

3   cell.

4        A.   That's in a handicapped -- that's in a pod

5   that has handicapped access, yes, ma'am.

6        Q.   And it looks like, again, on Exhibit 43

7   that, that when he was sent to PNM, on June 17 of

8   2015, he immediately went into the handicapped?  Is

9   that what it appears?  I'm looking at --

10       A.   Well, he immediately went to that pod, yes,

11   ma'am.

12       Q.   I should say to that handicap -- a pod that

13   had a handicapped cell?

14       A.   Yes, ma'am.

15       Q.   Now, when did you start lifting

16   restrictions again for SNM?  The time period being

17   early 2016.

18       A.   Well, we added tier time in February of

19   '16.  We had already started removing restrictions in

20   terms of recreation and showers and visits and phone

21   calls.  But we didn't add congregate activity until

22   February of 2016.

23       Q.   So before then, you had already started

24   adding what other privileges before February of '16,

25   if you can recall?

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                    1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          A.    I don't recall, ma'am.

 2          Q.    Okay.  But you know that you did start

 3    adding other privileges?

 4          A.    We did.

 5          Q.    And what kind of privileges in general

 6    would those have been?

 7          A.    Recreation -- it would have been very

 8    basic.  It would have been recreation, showers --

 9          Q.    How about --

10          A.    -- visits and phone calls.

11          Q.    And was that part, as you referred to

12    earlier, the stepping down process?

13          A.    Yes, ma'am.

14          Q.    Now, when an inmate has -- the medical

15    records for an inmate, are those protected by HIPAA?

16          A.    Yes, ma'am, they are.

17          Q.    And would people -- on the investigative

18    side of New Mexico Corrections Department, would

19    people just -- would anybody have access to the

20    medical records, or are they kept by a different

21    entity?

22          A.    They're kept by our medical vendor.

23          Q.    Okay.  So is that somebody even different

24    from Corrections?  Do you have a special vendor for

25    medical?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   That's right.  We contract our medical

 2   services to a vendor.

 3        Q.   So, for instance, is anybody able to, on

 4   STIU, able to just go and pull up medical records?

 5        A.   No, ma'am, they can't.

 6        Q.   And are you aware of anybody in the

 7   investigation of SNM, in 2016, or at any time,

 8   getting medical records of Mr. Perez?

 9        A.   Not that I'm aware of.

10        Q.   And would they even be able to?

11        A.   Not unless the inmate signs a release form.

12             MS. ARMIJO:  May I have a moment?

13             THE COURT:  You may.

14             MS. ARMIJO:  I pass the witness.  Thank

15   you.

16             THE COURT:  Thank you, Ms. Armijo.

17             Do the defendants have cross-examination of

18   Mr. Roark?

19             MS. FOX-YOUNG:  Your Honor, yes.  I think

20   it might be -- I don't know if the Court would like

21   to take a break now.  I'm happy to begin for a few

22   minutes, if the Court would like, or --

23             THE COURT:  Okay.  We'll take our break.

24   Let me make a little bit better record here of what I

25   said about the black boxes this morning.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1            Billy Garcia doesn't have -- because he's
 2   got abrasions on his wrist.  Arturo Garcia has cuts
 3   on his wrist.  And Allen Patterson doesn't have it.
 4   Those are the reasons for those three gentlemen not
 5   to have theirs on there.
 6            I guess, Mr. Adams, I guess as I sit here
 7   and listen to this testimony, you know, I mean,
 8   what's going through my head a little bit is every
 9   time the prison sort of loosened up on the SNM Gang,
10   it seems like something happened.  So y'all might
11   give that some thought.  That's going through my head
12   as I listen to this testimony.
13            All right.  We'll be in recess for about 15
14   minutes.
15            (The Court stood in recess.)
16            THE COURT:  All right.  We'll go back on
17   the record.
18            Mr. Roark, I'll remind you that you're
19   still under oath.
20            Ms. Fox-Young, if you wish to cross-examine
21   Mr. Roark, you may do so at this time
22            MS. FOX-YOUNG:  Thank you, Your Honor.
23            THE COURT:  Ms. Fox-Young.
24            MS. FOX-YOUNG:  Just briefly, Your Honor.
25   During the break, Mr. Lowry asked the Government if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the defense could take a look at the notes that this
 2    witness brought with him.  And I'd like to move that
 3    they be admitted.  But first, I'd just like to make a
 4    record as to what's contained here.
 5            The Court will be familiar with the
 6    critical incident review that was referenced in
 7    testimony last week, that Corrections Department
 8    didn't produce, the Government didn't produce,
 9    although we requested it.  There is something called
10    a critical incident review, from March 13, 2014,
11    included here.
12            I haven't had time, I haven't had an
13    opportunity, Your Honor, to review everything in
14    detail.  But I'll tell the Court that it is full of
15    Rule 16 and Brady information.  To begin with, there
16    are -- in this critical incident review, there are
17    numerous references to Timothy Martinez, a
18    cooperating defendant in this case, how he was acting
19    strange on the day of the murder, how he had
20    strangely left a pair of shoes behind in the
21    wheelchair program.
22            The Court heard from Ernie Holguin last
23    week -- apparently, Ernie Holguin as part of this
24    review said that Mr. Martinez was acting strange.
25            There is a section titled, "Issues and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4405

 1   concerns," which notes that there was not a metal

 2   detector in the wheelchair program or a frisker for

 3   inmates when they left.  It talks about lack of tool

 4   control, talks about a complete lack of security

 5   measures in place for the wheelchair program, and on

 6   and on.

 7          You know, I don't know what possible

 8   explanation there is for the fact that this hadn't

 9   been produced to the defense.  It's full of Brady,

10   Giglio, and Rule 16.

11          I'm not going to read the entire document.

12   That is one of the documents.  There is also a memo

13   dated February 17, 2014, from Mr. Roark to the Warden

14   at Southern, and Deputy Wardens, involving the SNM.

15   It talks about downgrading Los Carnales, talks about

16   SNM Level 4.  Another memo to Mr. Myers -- who has

17   been present in this court for numerous hearings; I

18   believe he's present today -- dated May 17, 2016

19   regarding Anthony Baca.  A document that was

20   introduced by the Government in the course of Mr.

21   Roark's direct testimony, Level 4 Table of Services.

22   And that's already in evidence.  Some notes with a

23   timeline beginning March 7, 2014, with the Javier

24   Molina murder, running all the way through April 18

25   of 2016.  I believe these are Mr. Roark's notes.  A

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4406

1    memo from Mr. Roark, dated March 14, 2014, to Gregg

2    Marcantel, detailing background on the SNM.  And

3    apparently Mr. Roark's own white paper and incident

4    summary describing the intelligence that the

5    Corrections Department and the Government gathered,

6    their response.  A summary of their critical incident

7    review, vulnerabilities that they found with regard

8    to the prison, the correctional officers,

9    manipulative inmates.  The fact that the wheelchair

10   program was not security friendly.  The fact that

11   wheelchairs have many parts and components, making

12   accountability difficult.  Lack of basic security

13   practices.  Goes on and on, with more and more Brady.

14   A request for an immediate security upgrades request

15   by the Warden herself.  She requested upgrades in

16   equipment and security to assist in the mission, to

17   manage high-risk inmates, and provide them

18   programming.  Asked for metal detectors, asked for

19   video surveillance, asked for easier to access

20   control center, gun ports.  It goes on.

21         Apparently, Mr. Roark in some way,

22   according to this document, assembled and gathered

23   information from a whole variety of sources that the

24   Government has had access to, and sent this on up to

25   Gregg Marcantel the week after the murder.  This has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 67 4408

```
 1   not been provided to the defense.  And I don't know

 2   what the explanation is for that, but we'd like that

 3   entered into evidence now.

 4            There is an email from Mr. Roark to then

 5   Warden German Franco at PNM, I believe, Warden

 6   Melissa Ortiz at Southern, Robert Stewart, and

 7   copying Anthony Romero, regarding SNM recreation.

 8   That's also from March 2014.

 9            This packet includes numerous emails from

10   March 2014 regarding treatment of SNM members, or

11   alleged SNM members, following the assault,

12   monitoring behavior.

13            And I believe those are the categories.  As

14   I represented to the Court, I haven't had an

15   opportunity to look at all this.  I don't know if the

16   Court would like to hear from the Government on this

17   or wants to inquire as to why this hasn't been

18   produced.  But I'm going to mark it as Defendant's

19   Rudy Perez Exhibit D.  Pardon me, Your Honor, Exhibit

20   E.

21            THE COURT:  Yeah, I think so.

22            MS. FOX-YOUNG:  And we'd like a copy of it

23   for the defense to look at as well.  We've got a

24   number of lawyers who want to review this for

25   questioning of Mr. Roark.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Any objection to
 2   Rudy Perez -- marking it as E -- and admitting it
 3   into evidence, Ms. Armijo?
 4              MS. ARMIJO:  No objection.
 5              THE COURT:  All right.  Anybody else have
 6   any objection?
 7              All right.  Rudy Perez' Exhibit E will be
 8   admitted into evidence.
 9                        EXAMINATION
10   BY MS. FOX-YOUNG:
11        Q.   Good morning, Mr. Roark.
12        A.   Good morning.
13        Q.   This packet of documents that's been marked
14   as Exhibit E -- I can show it to you -- I'll
15   represent the Government handed this to us.  Would
16   you like to take a look at it and tell me if this is
17   what you brought?
18        A.   I can look at it quickly, ma'am.  Yes,
19   ma'am.
20        Q.   Mr. Roark, is this a file that you kept in
21   your office?
22        A.   It was an electronic file.
23        Q.   Where is that file kept?
24        A.   It's on my computer in my office.
25        Q.   Is there anything else in that file?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4409

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6341

 1        A.   Yes, ma'am.  I have SNM notes in that file.

 2        Q.   Is it an SNM file, or a Molina file, or

 3   something else?

 4        A.   I have it labeled "SNM."  So it mostly has

 5   to do with the lockdown.

 6        Q.   When did you produce that file to the

 7   prosecutors?

 8        A.   Yesterday, when I came down.  I came down

 9   with those notes that I reviewed.

10        Q.   What time yesterday?

11        A.   3:30, 4:00.  I'm sorry, I don't know the

12   exact time.

13        Q.   And you gave it to the prosecutors when you

14   arrived?

15        A.   Well, I had arrived earlier in the day, but

16   I left those notes in my hotel room.

17        Q.   When did you give it to the prosecutors?

18        A.   Yesterday afternoon.

19        Q.   Sometime after 3:30?

20        A.   Yes, ma'am.

21        Q.   And did you give them anything else?

22        A.   No, that was it.

23        Q.   Did you author the critical incident review

24   that you brought with you, dated 3/13/2014?

25        A.   No, ma'am, I did not.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4410

```
 1        Q.    Who did?

 2        A.    Vistula Curry.

 3        Q.    Could you spell that first name?

 4        A.    V-I-S-T-U-L-A.

 5        Q.    How do you know that?

 6        A.    I assigned her to do the after action with

 7   two other people.  And I have known her for a while,

 8   and I recognize that as her writing style.

 9        Q.    Oh, this is a typewritten report.  I'm

10   going to show it here.  This is the first page of

11   Defendant's Exhibit E, titled New Mexico Corrections

12   Department, Critical Incident Review, Dated

13   3/13/2014.  Facility:  Southern New Mexico

14   Correctional Facility.  Ms. Curry authored this

15   report?

16        A.    Yes, ma'am.

17        Q.    And you said you knew that because you

18   recognized her writing.  Do you see handwriting on

19   this document?

20        A.    I don't.  It has to do with writing style,

21   and the fact that she also used the policy form.  A

22   lot of people, when they do critical incident reviews

23   and after actions, kind of use -- they kind of use a

24   memorandum form, because it's hard to get all the

25   information on the policy form.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4411

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4412

1      Q.   So you recognize Ms. Curry's distinctive

2   memo writing style?

3      A.   And the fact that she used a policy form

4   instead of using a memorandum.

5      Q.   Is she still employed by the Corrections

6   Department?

7      A.   She is.

8      Q.   Where is she now?

9      A.   She's a Deputy Warden at Central New Mexico

10  Correctional Facility.

11     Q.   And you assigned her the task, along with

12  two others, of doing the critical incident review at

13  Southern?

14     A.   That's correct.

15     Q.   And when did you make that assignment?

16     A.   I probably made that assignment that Monday

17  morning after the incident.

18     Q.   Do you know that?

19     A.   I don't know for sure, but it would be

20  shortly after the incident.

21     Q.   Okay.  And on March 13, you received this

22  document back?

23     A.   That's correct.

24     Q.   Who else worked on it?

25     A.   STIU Coordinator Adam Vigil and Captain

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4412

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 72
4413

```
 1   Adam Whitfield.
 2        Q.    How do you know that?
 3        A.    Those are the people I assigned to do it.
 4        Q.    You just remember?
 5        A.    In this case, I do, yes, ma'am.
 6        Q.    And what did you do when you received the
 7   critical incident review back?
 8        A.    Well, I read it.
 9        Q.    Does it mention Rudy Perez anywhere, if you
10   recall?
11        A.    I don't recall without seeing it, ma'am.
12        Q.    And you brought with you a packet of emails
13   between you and other Corrections Department
14   employees; is that right?
15        A.    That's correct.
16        Q.    How did you assemble these emails?
17        A.    They were in my folder on my desktop -- not
18   on my desktop, on my computer.
19        Q.    What folder is that?
20        A.    I believe it's titled "SNM."
21        Q.    Is that within the Outlook program?  Is
22   that within an email program?
23        A.    No, ma'am.  These were emails that were
24   saved onto the folder that's in my -- it's on my
25   computer -- I'm sorry, I'm not an IT person, so I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4413

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4414

```
 1    struggling with terms.  But it's in my folder under
 2    the Adult Prisons Division.
 3        Q.   This is the same folder that the critical
 4    incident review was in?
 5        A.   They're all in the same folder, yes.
 6        Q.   Okay.  All of these documents?
 7        A.   That's correct.
 8        Q.   So at the time you received or sent these
 9    emails, in 2014 or 2015, as they may be dated, you
10    saved them and put them in the folder?
11        A.   They were originally on my email.  My
12    administrative assistant made it easier for me and
13    put them into a folder for me, yes.
14        Q.   You asked your assistant to put everything
15    that was SNM-related in that folder?
16        A.   Yes, ma'am.
17        Q.   Okay.  And is there anything else in the
18    folder that you did not bring with you today?
19        A.   Yes, ma'am, there is other information in
20    the folder.
21        Q.   I think you said there were some notes; is
22    that right?
23        A.   Yes, ma'am.  There is going to be some
24    notes in there, yes.
25        Q.   Okay.  I don't know why you wouldn't keep
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4414

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 74

4415

```
 1    it, but I'm going to ask you to preserve that folder.
 2    If it hasn't already been produced to the Government,
 3    we're going to ask for it.  Or if it hasn't been
 4    produced to us, we're going to ask for it.
 5         A.   Yes, ma'am.  We created that folder for the
 6    fact that we knew we were going to have IPRA
 7    requests.
 8         Q.   Okay.  And you knew that there might be
 9    litigation?
10         A.   Yes, ma'am.
11         Q.   And one of the documents that you brought
12    with you is addressed to Mark Myers, Chief of Staff,
13    NMCD.
14         A.   Yes, ma'am.
15         Q.   Is he still Chief of Staff at NMCD?
16         A.   He is.
17         Q.   Do you know if Mr. Myers provided any SNM
18    documents to the prosecutors?
19         A.   I don't know, ma'am.
20         Q.   Have you talked to him about it?
21         A.   I haven't talked to him about that.
22         Q.   What, if anything, did you do in March of
23    2014, when you got this after action report back from
24    Ms. Curry?
25         A.   I read the report.  And I also -- I also
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4415

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 75416

```
 1   created a document for Secretary Marcantel.

 2        Q.   Okay.  So the document titled, "White

 3   paper, Syndicato de Nuevo Mexico," dated March 14,

 4   2014, which is part of this exhibit -- I'm showing

 5   you the first page of it -- from you to Gregg

 6   Marcantel -- you authored?

 7        A.   Yes, ma'am.

 8        Q.   And you basically summarized the

 9   information that was in the after action report for

10   purposes of this white paper?

11        A.   It was more than just the white paper.  It

12   was also based on some videoconferencing that we

13   had -- I had done with the Security Threat

14   Intelligence Unit.

15        Q.   Tell me about that.  When was that

16   videoconferencing done?

17        A.   I don't know the exact dates, but it was

18   somewhere between March 7 and March 14.

19        Q.   How do you know that?

20        A.   Because we were having regular meetings

21   after the incident to determine what we were going to

22   do with SNM.

23        Q.   Okay.  These are STIU people who were

24   employed at Southern?

25        A.   Well, not just Southern.  I wanted input
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    from everyone that knew the STIU.  So there -- were

 2    on the conference call was STIU staff from Central

 3    New Mexico Correctional Facility and the Penitentiary

 4    of New Mexico.

 5         Q.   Do you remember who?

 6         A.   No, ma'am, I don't.

 7         Q.   These were Skype calls?  Did you say

 8    videoconference?

 9         A.   Videoconferencing, yes, ma'am.

10         Q.   Okay.  And you set them up?

11         A.   I did.

12         Q.   And so, through the course of those

13    videoconferences, you obtained some additional

14    information that wasn't in the after action review?

15         A.   That's correct.

16         Q.   Do you remember what?

17         A.   Well, I'd have to look at the after action.

18    But some of the information was specific to

19    individual SNM members, on how information got down

20    there for the murder, and stuff like that.

21         Q.   Okay.  Do you remember if Ernie Holguin was

22    involved in those calls?

23         A.   I don't remember him specifically, but he

24    was likely on the phone calls.

25         Q.   Okay.  And his feedback went into that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4417

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 77

4418

```
 1    after action report?
 2         A.   It would have been all the STIU.  He
 3    probably didn't speak up, because it's usually -- on
 4    the conference calls it's usually the coordinator
 5    that speaks up in the conference calls.
 6         Q.   Okay.  So you drafted this white paper, and
 7    you sent it to Gregg Marcantel.  What else did you do
 8    in the days following the Molina murder?
 9         A.   I didn't really do anything.  I mean, my
10    job is to just turn it over to the wardens and STIU,
11    and let them investigate.
12         Q.   Did you meet with any prosecutors back
13    then, in 2014?
14         A.   No, ma'am, I didn't.
15         Q.   Did you draft any other documents after you
16    drafted this white paper?
17         A.   I believe that's the last report I did on
18    this.
19         Q.   Okay.  And your report says that
20    intelligence efforts were ongoing, and you expected
21    significant additional information.  Do you know
22    whether you received additional information and
23    further intelligence that wasn't included in your
24    white paper?
25         A.   No, ma'am.  At that point, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4418

1    investigation was turned over to STIU and other

2    investigators to conduct.

3        Q.   Okay.   Do you remember writing to Mr.

4    Marcantel that Inmate Perez' life was threatened in

5    the course of the events leading up to the murder?

6        A.   I don't recall that.   But if you can show

7    me, if it's in the white paper, I'm certainly willing

8    to look at it.

9        Q.   If it's in the white paper, you wrote it?

10   I'll show you right here:   "Inmate Perez' life was

11   threatened if he did not do this or told anyone about

12   it," do you see where it says that?

13       A.   Yes, ma'am.

14       Q.   Do you know how you knew that?

15       A.   This was the initial information after the

16   incident, and that was gathered by STIU.   And who

17   from STIU got that, I don't recall now.

18       Q.   Okay.   But you knew that there had been a

19   threat on Inmate Perez' life.   What, if anything, did

20   you do to follow up on that threat?

21       A.   Well, they were continuing to do

22   investigation.   This was all preliminary and initial

23   information.   So a lot of this hadn't been

24   corroborated.   So this is what we initially thought.

25       Q.   Okay.   So you didn't know if any of this

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



                                                      1-800-669-9492
PROFESSIONAL COURT                             e-mail: info@litsupport.com
REPORTING SERVICE

 1    was true?

 2        A.   Nothing was corroborated.

 3        Q.   Okay.  The critical incident review that

 4    you received talks about Tim Martinez, also known as

 5    "Red," acting strangely on the day of the murder.  Do

 6    you remember that?

 7        A.   I do remember that.

 8        Q.   What, if anything, did you do to follow-up

 9    on that intelligence?

10        A.   Again, that was turned over to STIU and

11    other investigators who were in charge of that

12    investigation.

13        Q.   So you don't know if anything else was done

14    to follow-up on that information?

15        A.   I don't know what they asked, no.

16        Q.   Okay.  That was in the ballpark of STIU at

17    that point?

18        A.   That's correct, ma'am.

19        Q.   When is the first time that you talked to

20    the federal prosecutors about the Molina murder?

21        A.   When they called me last week.

22        Q.   What day?

23        A.   Oh, I don't recall what day.  Tuesday or

24    Wednesday, ma'am.

25        Q.   Okay.  They called you to tell you that




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 84

```
 1    they were going to call you to testify in this
 2    hearing?
 3         A.   Yes, ma'am.
 4         Q.   Okay.  Did you ever talk to them before
 5    that --
 6         A.   No.
 7         Q.   -- in 2015 or 2016 or 2017?
 8         A.   No, ma'am.
 9         Q.   Okay.  Have you talked at all to Mr. Myers
10    about the Molina murder?
11         A.   Just in passing, how things are going.  But
12    that's all, ma'am.
13         Q.   Just because you knew that he was involved
14    in the prosecution?
15         A.   Yes, ma'am.  And also, I needed some
16    updates to just kind of know what to do with SNM, in
17    terms of giving them privileges and stuff.
18         Q.   Okay.  Continue up until the present time.
19         A.   Yes, ma'am.
20         Q.   And have you talked to Agent Bryan Acee
21    about the Molina murder?
22         A.   Yes, ma'am.  At some point, I did have a
23    conversation with Agent Acee, but I don't recall what
24    it was about.
25         Q.   Do you know when you talked to him?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4421

```
 1          A.   Maybe a year ago.

 2          Q.   Where were you?

 3          A.   I was probably in Santa Fe, in my office.

 4          Q.   Did he come to see you?

 5          A.   No, ma'am.  It was a phone call.

 6          Q.   Did he call you?

 7          A.   I believe I was asked to call him.

 8          Q.   Who asked you to call him?

 9          A.   Mr. Myers.

10          Q.   Mr. Myers asked you to call Mr. Acee.

11   Why -- did he tell you why he wanted you to call him?

12          A.   Actually, yes, ma'am.  No one has asked me

13   this for a while, so I'm recollecting my memory.

14          Q.   That's fine.

15          A.   It had something to do with putting money

16   on the inmates' books.

17          Q.   Which inmates?

18          A.   Those who were cooperating with the

19   investigation.

20          Q.   So Mr. Myers told you to call Mr. Acee to

21   discuss putting money on inmates' books?

22          A.   No, that's not exactly right.  It was how

23   the process works.  If someone puts inmate money on

24   inmates' books, how that works.

25          Q.   What did Mr. Myers tell you about making
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4422

1    the call?  He told you he wanted you to call Acee,

2    and I think you're remembering why.  Tell me why.

3        A.   To explain how the whole process of putting

4    money on inmates' books works.

5        Q.   Okay.  And so then you did call Mr. Acee?

6        A.   I did.

7        Q.   And you explained to him how he could go

8    ahead and put money on inmates' books?

9        A.   That's not exactly -- the conversation was

10   more how that works, instead of go ahead and do it, I

11   mean --

12       Q.   Okay.  What did you tell Mr. Acee?

13       A.   I told him that the process works, that you

14   have to send in -- it usually works like this; you

15   send in money, you send in a money order, and it's

16   then placed -- it goes to the inmate accounts person

17   at the facility, and then at that point they debit

18   that, or they put that money into the inmates'

19   account.

20       Q.   Okay.

21       A.   It's a very simple process.

22       Q.   And did he tell you he was going to go

23   ahead and do that?

24       A.   No, ma'am, he didn't.

25       Q.   What, if anything, did he tell you?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4423

```
 1          A.   I don't know if he told me anything other
 2     than:  Thank you for the information, ma'am.
 3          Q.   Okay.  Have you had any other conversations
 4     with Mr. Acee?
 5          A.   No, ma'am.
 6          Q.   Have you had any other forms of
 7     communication with Mr. Acee?
 8          A.   No, ma'am.
 9          Q.   What did you do to prepare to testify
10     today?
11          A.   Mostly, I looked over those forms that you
12     have.
13          Q.   The documents that you brought with you?
14          A.   Yes, ma'am.
15          Q.   Did you look at anything else?
16          A.   I scanned over stuff, but that seemed like
17     the most relevant stuff, so --
18          Q.   Okay.  Is it fair to say you scanned over
19     everything in your SNM file, and then you pulled out
20     these documents because you thought they would
21     pertain to the subject matter?
22          A.   I think that's fair, yes, ma'am.
23          Q.   Okay.  And did you also look at any New
24     Mexico Corrections Department policies?  I know that
25     there is a portion of a policy contained in what you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4424

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4425

```
 1   brought.  Did you look at any other policies in
 2   preparation for your testimony?
 3        A.   Not -- part of my job is to look at
 4   policies, so -- no, I didn't specifically look at
 5   policies for those.  But, yes, I review policies on a
 6   regular basis, ma'am.
 7        Q.   You're very familiar with them, just by
 8   virtue of your job?
 9        A.   Yes, ma'am.
10        Q.   Did the Government -- did the prosecutors
11   ask you to review anything prior to your testimony?
12        A.   Well -- they did.  When we talked, we
13   talked about the privileges and stuff, so that's kind
14   of why I looked at the privileges, so of course I
15   didn't have that memorized.
16        Q.   Oh, the SNM privileges?
17        A.   Correct.
18        Q.   Was it Ms. Armijo who called you?
19        A.   It was.
20        Q.   Did she ask you to bring anything with you?
21        A.   She didn't.
22        Q.   Did she ask you if you had an SNM file?
23        A.   No, ma'am, she didn't.
24        Q.   She's never asked you that?
25        A.   I don't think she has, no, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4425

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 85

```
 1        Q.   Oh, had you talked to her ever before last
 2   week?
 3        A.   No, ma'am, I haven't.
 4        Q.   I think you testified that you were at
 5   some -- I know you've had a long career with the
 6   Corrections Department -- at some point you were a
 7   classification officer; is that right?
 8        A.   I was.
 9        Q.   And that was before you headed up the adult
10   corrections -- the Adult Prisons Division?
11        A.   That's correct.
12        Q.   How long were you a classification officer?
13        A.   Not for very long; about nine months.
14        Q.   And then, did you have another job in
15   between, before you ran adult prisons?
16        A.   I did.
17        Q.   What was that job?
18        A.   Immediately before adult prisons, I was a
19   Deputy Warden.
20        Q.   Okay.  At which facility?
21        A.   The Penitentiary North facility.
22        Q.   How long?
23        A.   About 10 months.
24        Q.   Do you know what year that was?
25        A.   I do.  I got promoted in the summer of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4426

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 84427

1    2010.

2          Q.   So sometime in 2011, you assumed

3    responsibilities as head of adult prisons?

4          A.   I was asked to come over in April of 2011.

5          Q.   Okay.  And you remained in that position

6    until when?

7          A.   Till May or June of this year.

8          Q.   So from 2014 until this last summer, 2017,

9    you were heading up adult prisons?

10         A.   Yes, ma'am.

11         Q.   And where is your -- are you located at the

12   main office in Santa Fe?

13         A.   Yes, ma'am, I am.

14         Q.   Not at PNM?

15         A.   Not at PNM.

16         Q.   But you're very familiar with how things

17   work at PNM, how the Corrections Department runs that

18   facility?

19         A.   Yes, ma'am.

20         Q.   Can you tell me, is the entirety of PNM

21   North, is it comprised of segregation units?

22         A.   We call them restrictive housing, but --

23         Q.   You call them restrictive housing now,

24   right?

25         A.   That's correct.  Yes, we did have a period

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4427

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 87

1    of time where we had a general population type of

2    unit at PNM.  We called it a Drug Suppression

3    Program.  We had it there for about a year, year and

4    a half.

5        Q.   When was that?

6        A.   Beginning of 2016, and we moved it about

7    two months ago.

8        Q.   Okay.  Now, other than that, it's all

9    restrictive housing or segregation?

10       A.   Yes, ma'am.

11       Q.   Okay.  I think you actually -- you prefer

12   to use the term Special Management; is that right?

13       A.   No.  Actually, that's an old term.  It's

14   restrictive housing now.

15       Q.   Now it's restrictive housing.  Okay, in

16   2014, it was special management, right?

17       A.   It was.

18       Q.   Okay.  What's the difference between

19   special management and restrictive housing?

20       A.   Restrictive housing is a term coined by the

21   American Correctional Association, and the National

22   Institute of Corrections.  It's kind of -- they're

23   just trying to get all states and all municipalities

24   and counties to use the same terminology, so we don't

25   have 50 different terms being used across the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4429

```
 1    country.  So when we talk to each other, we know what

 2    we're talking about.

 3         Q.   And it used to be called "solitary

 4    confinement," right?

 5         A.   We never used that term.  But yeah, some

 6    states have used that in the past.

 7         Q.   Well, do you remember, in 2014, testifying

 8    to a committee of the Legislature and, saying that

 9    the Correctional Department is no longer using the

10    term "solitary confinement," instead, we now say

11    "special management"?

12         A.   What year was that, ma'am?  I'm sorry.

13         Q.   2014.

14         A.   We were transitioning.  I don't remember

15    saying that.  I would have -- I don't know why I said

16    that.  We would have -- we never used the term

17    "solitary confinement."  We did use special

18    management, and we transitioned to using restrictive

19    housing.  So I'm not sure why I said that.

20         Q.   Okay.  Well, whatever it's called, you'd

21    agreed with me, would you not, that solitary

22    confinement or special management or restrictive

23    housing has effects on inmates living under those

24    conditions; is that right?

25         A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4429

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4430

1      Q.   And what are those sorts of effects?

2      A.   It does impact their mental health.

3      Q.   In what ways?

4      A.   In negative ways.  Because you're isolating

5   their contact with other people.

6      Q.   And it can make them confused?

7      A.   I'm not a mental health professional.  So I

8   know that from reading studies, it's related to

9   depression and stuff like that.  So --

10     Q.   Okay.  You know from reading studies, and

11  you also know, because you worked in PNM for a pretty

12  long time, and you've worked in other facilities

13  where inmates are held in segregation, right?

14     A.   Yes, ma'am.

15     Q.   And so, have you observed depression in

16  inmates who are housed that way?

17     A.   Yes, ma'am.  They can become depressed,

18  or -- and, yes.

19     Q.   Sometimes they don't know what time it is;

20  they become disoriented in some ways, do they not?

21     A.   They can for periods of time, yes, ma'am.

22     Q.   Only short periods?

23     A.   Again, I'm not a mental health

24  professional.  You're asking me from what I saw.  And

25  I never experienced where someone -- I never had that



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4430

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4431

1    personal experience.  I did see them have mental

2    health crises in short periods of time.  I never saw

3    it where it --

4         Q.   Okay.  So you observed what you call mental

5    health crises for people who were held in seg.  And I

6    understand you're not a mental health professional.

7    I'm not asking for mental health opinions, but I

8    appreciate that explanation.  And so, is it fair to

9    say that housing inmates in segregation can have a

10   deleterious effect on somebody's mental health?

11        A.   Yes.  And again, it's like anything else,

12   it's dependent on that individual.

13        Q.   It affects different people differently?

14        A.   It does, correct.

15        Q.   And it might matter how they are when they

16   go in, right?

17        A.   Oh, yes, ma'am.

18        Q.   So if they're in worse physical health when

19   they go in, would that have an impact on how

20   segregation affects them?

21             MS. ARMIJO:  Objection, foundation.

22        Q.   Just from your personal experience, and the

23   articles that you've read.

24        A.   It could.

25        Q.   Okay.  And also --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4431

```
 1              THE COURT:  I guess you probably need to
 2    term all these questions what he has observed, and
 3    from his experience.  Because I think, if you keep
 4    asking those questions that are more, I think,
 5    appropriate to an expert, I'm going to have to
 6    sustain the Government's objection.
 7              So, if you wanted to ask him what he's
 8    observed, I'll allow that.  But probably, if you just
 9    ask him open-ended questions that are more for a
10    psychologist, then I'll sustain the Government's
11    objections.
12              MS. FOX-YOUNG:  Yes, Your Honor.  And I'll
13    just note the witness did say that he had relied on
14    some, I think, papers and conferences, and he's done
15    outside work.  But I'm going to move on, Judge.
16         Q.   And so I understand that you're no longer
17    at PNM.  Do you know if there has been made an effort
18    to reduce the time that inmates are held in special
19    management -- or I'm sorry, restrictive housing?
20         A.   Yes, ma'am.  Under the previous leadership,
21    we were told to reduce timeframes in restrictive
22    housing, and told to reduce the number of inmates in
23    restrictive housing.
24         Q.   Okay.  Which leadership was that?
25         A.   Secretary Marcantel.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4432

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 92

```
 1        Q.   Okay.  And that was in 2014?

 2        A.   We began the process as early as 2013, yes,

 3   ma'am.

 4        Q.   And why, if you know, was there a move to

 5   reduce time that inmates would be held in restrictive

 6   housing?

 7        A.   There is actually three reasons:  One is

 8   the mental health issues that you talked about.  The

 9   second is the cost issue, it costs more money to put

10   an inmate into restrictive housing, because it's more

11   staff intensive.  And the third reason is access to

12   programming.  It's just more difficult to get an

13   inmate to programming if they're in restrictive

14   housing.

15        Q.   Okay.  So you said that began in 2013, that

16   movement?

17        A.   Yes, ma'am.

18        Q.   And has it -- does it continue through the

19   present?

20        A.   In terms of the percentages in segregation,

21   that's still the department philosophy.  But we've

22   had an increase in violence and other incidents in

23   our prison, so we've -- and we've had some repeat

24   offenders that have had to go back to our restrictive

25   housing programs, so we've had to increase the times
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4433

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 93

1    for inmates.

2        Q.   So back in 2014, the goal was to reduce

3    time in restrictive housing to 30 days, to a month;

4    is that right?

5        A.   That's a difference, ma'am.  That's for

6    disciplinary restrictive housing.

7        Q.   Okay.  That's just if you're there on

8    discipline?

9        A.   That's correct.

10        Q.   And tell me the difference.  Why else might

11    you be in restrictive housing under the department's

12    policies?

13        A.   Well, we need to put people in restrictive

14    housing to protect other inmates, and to protect the

15    public.  So if you are engaged in a misconduct we

16    deem serious enough that we will put you in a

17    program.  At that time it was called Level 6.  It's

18    now called predatory management behavior program.

19    And it's designed, not for disciplinary reasons, it's

20    designed to give you programming to prepare you to go

21    back to general population.

22        Q.   Is there a Corrections Department policy

23    that outlines the requirements for this predatory

24    management behavior program?

25        A.   There is, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   And which one is that?

2        A.   I don't have the policy in front of me.

3    It's in Chapter 7.

4        Q.   And that's one area of Level 6?

5        A.   It's a new name for Level 6, to put it

6    simply.

7        Q.   Okay.  So today -- so in 2014, you called

8    Level 6, Level 6.  Today you call it the predatory

9    management behavior program?

10       A.   We did.  And that's because Level 6 was a

11   very complex policy.  And we wanted to simplify it.

12   And other reasons is because we just felt like we

13   needed to define exactly what inmates we wanted in

14   that program.

15       Q.   Okay.  And so, when did you change the name

16   of this program and make the other changes that

17   you've described?

18       A.   It was July of 2015.

19       Q.   Okay.  Now, the Level 6 policy of governing

20   placement criteria and procedures, has that also been

21   changed?

22       A.   It has.  We don't have a Level 6 policy

23   right now.

24       Q.   There is no Level 6 policy at all?

25       A.   Not right now, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4435

1      Q.   Okay.  But in 2015, there was?

2      A.   Until July of 2015, yes, ma'am.

3           MS. FOX-YOUNG:  Mr. Roark -- we're on F, I

4    think, Your Honor -- I'm going to show you a document

5    I'm marking as Rudy Perez Exhibit F.  Your Honor, I

6    move the admission of this exhibit.  And I think the

7    Government --

8           MS. ARMIJO:  No objection.

9           THE COURT:  Anybody else have an objection?

10   All right.  Defendant Rudy Perez' Exhibit F will be

11   admitted into evidence.

12     Q.   Mr, Roark, do you know what this document

13   is?

14     A.   I do.

15     Q.   Okay.  And it is a Level 5 and Level 6

16   placement criteria and procedures policy; is that

17   right?

18     A.   That's correct.

19     Q.   It looks to me like it was last reviewed or

20   revised in June of 2014?

21     A.   That's correct.

22     Q.   But it's your testimony that this is no

23   longer in effect today?

24     A.   This is no longer in effect today.

25     Q.   And what is the date that it stopped being

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4436

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 96

1    in effect?

2        A.    It was July -- I don't remember the date --

3    it was July of 2015.

4        Q.    Okay.  And I'll represent to you that your

5    general counsel produced this document to us as a

6    document that was in effect, policy document that was

7    in effect, I believe, in the early part of 2015.  And

8    so I think that's consistent with your understanding.

9    I don't have the exact date.  But we both agree,

10   prior to July of 2015, it was in effect?

11       A.    That's correct.

12       Q.    Okay.  And this document requires, does it

13   not, that if somebody -- if an inmate is housed in

14   Level 6, if they're to be housed there, they first

15   must be identified as a validated security threat

16   group member or a suspected STG member, or someone

17   associated with an STG.  It goes on.  Is that right?

18       A.    That's one of the reasons.

19       Q.    Okay.  And there is actually a requirement,

20   if you look at the first page of this policy, that in

21   addition to that, the inmate must have a documented

22   history of institutional behavior that meets one of

23   the following criteria:  Either acts of violence or

24   directing others to engage in violence.  Is that

25   right?  Or threatening or forcing other inmates,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4437

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 97

1    staff, or members of the public, or directing others

2    to engage in threats or coercion, or involvement in

3    or directing others to engage in organized

4    unauthorized activity.  It goes on.

5           So an inmate has to meet one of the

6    criteria from list C1 and list C2; is that right?

7       A.   In order to be placed in a Level 6

8    placement, yes, ma'am.

9       Q.   Or a Level 5, right?

10      A.   No.  Level 5, you can't be placed -- level

11   5 is a stepdown from Level 6, to prepare you to go

12   back to general population of some sort.  You can't

13   get placed straight into Level 5 without going to

14   Level 6.

15      Q.   Okay.  However, if you're going to be

16   placed in Level 6, back at this time, until the

17   policy was no longer in effect, it was not enough

18   just to be a suspected STG member, a validated

19   member; there had to be an act of violence or a

20   credible threat or evidence of coercion of other

21   inmates or something else to hold you in Level 6; is

22   that right?

23      A.   According to the policy, yes, ma'am.

24      Q.   Why is this policy no longer in effect, do

25   you know?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes, ma'am.  It had to do with all the

2    things -- some of the other things I talked about.

3    The policy was very long and confusing to read.  So

4    we wanted to simplify the policy.  The policy was

5    written in such a way that almost half our inmates at

6    the Level 6 were in there for protective custody

7    reasons.  We thought that was a waste of resources.

8    And we wanted to cut down on the numbers in

9    restrictive housing.  And we thought this policy was

10   written in such a way it was easy to put an inmate

11   into restrictive housing.

12      Q.   Okay.  And on the face of this policy that

13   was produced by your department several months ago,

14   it doesn't say it's no longer in effect, right?  It

15   just has the effective date and the revised date?  It

16   doesn't say it's no good anymore?

17      A.   I'm not sure I understand the question,

18   ma'am.

19      Q.   Just looking at this document, you can't

20   tell that it's no longer in effect.  This is the

21   document that your department produced with regard to

22   criteria for Level 6?

23      A.   That's right.  There is no end date on it,

24   ma'am.

25      Q.   Okay.  And so we talked a little bit about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4439

```
 1    reducing time in restrictive housing in 2014.  And
 2    you recalled that, beginning in 2013, and certainly
 3    going into 2014, and even to the present, it's the
 4    department's philosophy, you want to reduce the time
 5    that inmates are held in special management.  Do you
 6    know -- well -- and you recall that you did give
 7    testimony to that effect in the summer of 2014, that
 8    you were trying to reduce the time that inmates were
 9    in special management?
10         A.   Yes, ma'am.
11         Q.   Okay.  And you also recall that you have
12    explained in the past that a panel is to regularly
13    review the status of every inmate who is held in
14    restrictive housing?
15         A.   That's correct.  That's in the new policy,
16    yes.
17         Q.   And that panel is supposed to determine if
18    there is a credible threat that requires the
19    continued use of restrictive housing, right?
20         A.   That's correct.
21         Q.   Okay.  And you talked in your direct
22    examination -- I think you referred to your notes --
23    a timeline that you had created that detailed the
24    history of how SNM has been housed by the Department;
25    is that right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No, ma'am.  That timeline was the timeline
 2   after the Molina murder.
 3        Q.   Okay.  I'm showing you a document that is
 4   part of Defendant's Exhibit E.  And it says, "Primary
 5   tasks," at the top; then it has some handwriting on
 6   it?
 7        A.   Yes, ma'am.
 8        Q.   Did you write this writing?
 9        A.   Yes, ma'am.
10        Q.   Okay.  And I think you walked through this
11   timeline, and you explained to the Court that there
12   had been changes with regard to the way the
13   Corrections Department housed SNM members over the
14   years and months, since March 2014; is that right?
15        A.   We hadn't really started changing until
16   December of 2013.
17        Q.   Okay.  But you talked about specific times.
18   You said that, in July of 2015 -- or June -- yeah,
19   July of 2015, the Department resumed normal
20   activities with regard to the SNM?
21        A.   That was our plan, yes, ma'am.
22        Q.   Okay.  And then you said that that
23   subsequently changed?
24        A.   Yes, ma'am.
25        Q.   And that, again, in February 2016, the
```



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4441

1    Department started resuming normal activities?

2         A.    To include tier time, yes, ma'am.

3         Q.    Okay.  But that hasn't changed since that

4    time?

5         A.    Well, currently, we're resuming normal with

6    the SNM who are in Level 4, that are still living

7    with us.

8         Q.    Okay.  So the status quo hasn't changed

9    since February 2016, when you resumed normal

10   activities?

11        A.    That's right.  The tier process, the Level

12   4 matrix hasn't changed, ma'am.

13        Q.    Okay.  And was that February 1, 2016?

14        A.    That's when we began to resume normal, yes.

15        Q.    Are there documents that reflect that?

16        A.    Just that email that you have.

17        Q.    That's an email from whom to whom?

18        A.    I believe it's from me to the wardens.

19        Q.    Telling them, as of February 1, 2016, you'd

20   be resuming normal activities with regard to the SNM?

21        A.    No.  We began giving them tier time.

22        Q.    Okay.

23        A.    I believe it wasn't until April 18 that we

24   increased the tier time, and we started giving group

25   recreation.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4442

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 102

1        Q.   Okay.  And so beginning February 1, 2016,

2   were there any individuals who were suspected SNM or

3   validated SNM who weren't given tier time?

4        A.   Those that remained in -- those who

5   remained in -- who had been assigned to the predatory

6   behavior management program.

7        Q.   Formerly PNM Level 6?

8        A.   That's correct.

9        Q.   Okay.  And why weren't they given tier

10  time?

11       A.   Because they had been assigned to the

12  program; because of some sort of misconduct they had

13  been involved in.

14       Q.   They had been assigned there for

15  misconduct, and that's pursuant to the policy that

16  you and I just went over?

17       A.   Or a similar such policy, yes, ma'am.

18       Q.   Well, that was the policy that was in

19  effect, right?  I thought there was no other policy

20  dealing with Level 6.

21       A.   The PBMP policy replaced the Level 6.  We

22  changed the name of the program.

23       Q.   The PBMP policy?

24       A.   Yes, ma'am.

25       Q.   When did the PBMP policy take effect?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

DNM 4443

1         A.    July of 2015.

2         Q.    Okay.  So placements in Level 6 prior to

3    July of 2015 were pursuant to the policy you and I

4    just went over?

5         A.    Yes, ma'am.

6         Q.    Subsequent disciplinary placements are

7    pursuant to the PBMP policy?

8         A.    Yes, ma'am.

9         Q.    Did you happen to bring the PBMP policy

10   with you?

11        A.    No, ma'am, I did not.

12        Q.    Are you familiar with Rudy Perez?

13        A.    A little bit, yes, ma'am.

14        Q.    How do you know him?

15        A.    Through my years working in prisons.  I

16   don't know --

17        Q.    You don't know him personally?

18        A.    No, ma'am.

19        Q.    You never talked to him?

20        A.    I may have.

21        Q.    Okay.  Have you ever been involved in

22   making a housing or classification decision about

23   Rudy Perez?

24        A.    Not that I recall, no, ma'am.

25        Q.    Okay.  Are you aware that Rudy Perez was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4444

 1    housed at PNM North for a period of time?

 2         A.   I am aware of that.

 3         Q.   Do you know when that began?

 4         A.   Not without looking at the inmate locator

 5    documents.

 6         Q.   You just remember that he was there?

 7         A.   I do.

 8         Q.   Were you there at the same time?

 9         A.   It's possible that in 2010 he could have

10    been there.  I just don't recall.

11         Q.   Okay.  But how do you know that he was

12    there for some period of time?

13         A.   Because of the lockdown, I know some of the

14    inmates were moved from the Southern to the

15    Penitentiary of New Mexico.

16         Q.   Mr. Roark, I'm going to show you

17    document -- move the Court for admission of Rudy

18    Perez Exhibit G.

19              THE COURT:  Any objection Ms. Armijo?

20              MS. ARMIJO:  Oh, no, Your Honor.

21              THE COURT:  Any objection from any

22    defendant?

23              All right.  Rudy Perez Exhibit G will be

24    admitted into evidence.

25         Q.   Mr. Roark, this is a document called

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4445

```
 1    "Interim Level 6 Disciplinary Placement," dated March
 2    11, 2014, for Rudy Perez.  Are you familiar with this
 3    form?
 4         A.   Yes, ma'am, I am.
 5         Q.   Okay.  Have you ever looked at this Interim
 6    Level 6 Disciplinary Placement for Rudy Perez?
 7         A.   I don't recall ever seeing it before,
 8    ma'am.
 9         Q.   Well, it says that on March 11, 2014, Rudy
10    Perez was involuntarily placed in Level 6; is that
11    right?
12         A.   That's correct.
13         Q.   And do you know the basis for that
14    placement?
15         A.   It was pending the investigation.  It was
16    part of the investigation.
17         Q.   Okay.  So was everybody in blue and yellow
18    pods at Southern placed in Interim Level 6 pending
19    the investigation in March of 2014?
20         A.   We were investigating all of the SNM.  So
21    yes, ma'am, they should have all been placed on
22    Interim Level 6.
23         Q.   Do you know how long those individuals were
24    held in Interim Level 6?
25         A.   No, ma'am, not without reviewing other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    documentation, no.

 2               MS. BHALLA:  We just couldn't hear the

 3    answer in the back of the room.

 4               THE COURT:  He said, "No, ma'am, not

 5    without reviewing other documentation, no."

 6         Q.   So do you know if Mr. Perez was

 7    subsequently released from Interim Level 6 placement?

 8         A.   I don't know, ma'am.

 9         Q.   Do you know if the individuals who were

10    being investigated in March of 2014 were released,

11    those suspected SNM members?

12         A.   Some were released, yes, ma'am.

13         Q.   Okay.  I'm going to show you Government's

14    Exhibit 43, which I think you already looked at --

15    and the Government asked you, the prosecutor asked

16    you about a period of time in 2016.  Can you tell

17    me -- and this is Rudy Perez' Offender Physical

18    Location History, right?

19         A.   Yes, ma'am.

20         Q.   Can you tell me -- looks to me like Mr.

21    Perez was then sent to the Penitentiary of New Mexico

22    on June 17, 2015.  Is that how this reads?

23         A.   That's correct.

24         Q.   Okay.  Do you know why he was sent there?

25         A.   No, not specifically, no, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4447

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107

 1       Q.   You don't know if it was for discipline?

 2       A.   No, ma'am, I don't know.

 3       Q.   Okay.  What are -- what, if any, are valid

 4  reasons for him to have been sent there, if you know,

 5  in June of 2015?

 6       A.   There could have been any number of

 7  reasons.  He could have -- we were moving the SNM a

 8  lot.  We were moving SNM out of the Southern, so we

 9  were bringing a lot of them up to the penitentiary.

10       Q.   Let me ask you this:  We looked at

11  Defendant's Exhibit F, and you explained to me that

12  in June of 2015, in order to be sent to Level 6, you

13  had to be identified as an STG member or suspected

14  STG member, something else C1, but there also had to

15  be a documented history of institutional behavior

16  meeting one of the following criteria.  There had to

17  be an act of violence, or directing others to engage

18  in violence; threats or coercion of other inmates; or

19  involvement in directing others to engage in

20  organized unauthorized activity.  Is that right?

21       A.   That's in the policy, yes, ma'am.

22       Q.   And so you don't know, sitting here today,

23  whether Rudy Perez had done anything that met the

24  criteria contained in this policy?

25       A.   Not without documents in front of me, no.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4448

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108 4449

```
 1    I can't tell you, no.
 2         Q.   Since you've never seen those documents,
 3    you don't know why Mr. Perez was housed in Level 6?
 4         A.   I don't know specifically why he was sent
 5    to Level 6 on that date, no.
 6         Q.   Okay.  Do you know anybody who would know?
 7         A.   You could ask -- could you look at -- that
 8    information should be in his file.
 9         Q.   Who maintains that file?
10         A.   The penitentiary -- whatever, his
11    caseworker.
12         Q.   So that would be a caseworker at PNM?
13         A.   Possibly or -- yes, that's a possibility.
14         Q.   Okay.  That's the only person who would
15    know why Mr. Perez was housed at Level 6 in the June
16    of 2015, that caseworker?
17         A.   The unit manager would also know, and
18    probably the warden and deputy warden.
19         Q.   Okay.  And who are the warden and deputy
20    warden?
21         A.   The deputy warden at this time at the PNM
22    North facility is -- the acting Deputy Warden is
23    Wendy Perez.
24         Q.   Okay.  So she would know all about why Rudy
25    Perez was housed in Level 6 in June of 2015?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4449

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 109

```
1         A.   Well, I can't say she would know
2    everything, because again, she may have to refer back
3    to the documentation.  So --
4         Q.   Okay.  I think it was your testimony, sir,
5    that you don't recall having any involvement at any
6    time in Mr. Perez' housing at PNM; is that right?
7         A.   Not specifically his housing, no.
8         Q.   Okay.  If we look at Government's Exhibit
9    43, you can see that Mr. Perez was held at PNM, as we
10   said, from June 17, 2015.  And can you tell when he
11   left PNM?  Is it this April 18, 2016 that he left?
12        A.   No, ma'am.  It showed that he went to
13   Southern New Mexico Correctional Facility, but the
14   next line shows he was housed back at the North.  So
15   I'm not sure what that entry was.
16        Q.   Okay.  And so he was held, at least until
17   April 18, 2016, from June 17, 2015?
18        A.   No.  It looks like he was held at PNM North
19   from June 17, 2015 to April 28 of 2016.
20        Q.   Okay.  So about 10 months?
21        A.   Yeah, roughly, ma'am.
22        Q.   But you don't know why?
23        A.   Because there was an ongoing investigation
24   with SNM.
25        Q.   Okay.  But you don't know of any threat or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4450

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 110 4451

1   other justification for holding Mr. Perez according

2   to the policies?

3       A.   Not according to the policies.

4       Q.   Okay.  And you don't know who made the

5   decision to house him at PNM?

6       A.   Well, we were moving the SNM out of the

7   Southern New Mexico Correctional Facility, and moving

8   them to the Penitentiary of New Mexico.

9       Q.   When you say "we," who do you mean?

10       A.   The Department.

11       Q.   Okay.  But the Department had to follow the

12   policies in effect at the time, right, in June 2015?

13       A.   We had policies, yes, ma'am.

14       Q.   Okay.  And so, in June 2015, in order for

15   Mr. Perez to be held at PNM, there must have been a

16   finding that there was some sort of credible threat

17   or documented history of violence on his part to

18   justify that; is that right?

19       A.   We can lock up people pending the outcome

20   of an investigation.

21       Q.   Okay.  So is it your testimony that the

22   only reason Rudy Perez was held in June 2015, was

23   because he was thought to be an SNM member?

24       A.   We had -- no, no, ma'am, that's not right.

25       Q.   Okay.  Tell me why he was held.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4451

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 114452

1     A.   He was held because he was part of the

2    investigation, a part of the SNM.  We didn't know who

3    was involved with who.  We didn't know what SNM

4    members were going to conduct acts of violence on

5    what other SNM members.  We didn't understand the

6    factions.  We had had a murder, we had had an

7    assault.  We just -- we were investigating the whole

8    SNM, ma'am.

9     Q.   And June 2015 was 15 months after the

10   Javier Molina murder; is that right?

11    A.   Yes, ma'am.

12    Q.   Okay.  And so what happened 15 months after

13   the Javier Molina murder that caused you to move

14   inmates who were thought to be SNM to PNM?

15    A.   We wanted to put all the SNM in one

16   facility.  So that was our decision.

17    Q.   But all the SNM weren't held at PNM, right?

18    A.   We were moving them, we were transitioning

19   them out of the Southern New Mexico Correctional

20   Facility.

21    Q.   So is it your testimony that you made the

22   decision in June of 2015, 13 months after the Javier

23   Molina murder, to move all the SNM or suspected SNM

24   inmates to PNM Level 6?

25    A.   Well, some of them wound up going to the

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4452

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112453

```
 1   South facility.  But yes, in that course of time.
 2        Q.   Okay.  So you made the decision to move
 3   everybody that you thought was SNM to the
 4   Penitentiary of New Mexico in the summer of 2015?
 5        A.   Yes.  I consulted with the Secretary and
 6   Deputy Secretary, but yes.
 7        Q.   Okay.  And you made the decision, then, to
 8   move Rudy Perez to the Penitentiary of New Mexico?
 9        A.   Yes, ma'am.
10        Q.   Okay.  Now, a little while ago you told me
11   you didn't recall having anything to do with Rudy
12   Perez being housed at PNM.  Tell me what you remember
13   about that now.
14        A.   Well, the decision was made -- I didn't
15   specifically know of Rudy Perez' case, in terms of
16   where we were going to place him, but I made the
17   decision, yes, we're going to move all the SNM to the
18   Penitentiary.
19        Q.   Okay.  And what was the basis for that
20   decision?  What prompted you, 13 months after the
21   Javier Molina murder, to make that decision?
22        A.   The decision was made because it was just
23   going to be easier to do an investigation if we had
24   them all in one place.
25        Q.   So over a year after the murder, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4453

1    decided that you wanted them all to be -- all the SNM

2    members to be at the Penitentiary of New Mexico, to

3    continue the investigation?

4         A.   Yes, ma'am.  I think that's fair.

5         Q.   Okay.  And that is the reason that Rudy

6    Perez was held there in June of 2015, because you

7    were completing an investigation of the SNM?

8         A.   Yes, ma'am.

9         Q.   Are you aware that -- let me ask you this:

10   The Government asked you about N 3A Q 101 S, right?

11        A.   Yes, ma'am.

12        Q.   And the prosecutor asked you -- I think Ms.

13   Armijo asked you if that was a handicapped cell.  And

14   you said, "It's located in an area that has

15   handicapped cells," right?

16        A.   It's in an area that has handicapped

17   access.

18        Q.   Okay.  It is not, in itself, a special

19   handicapped cell, right?

20        A.   I'd have to look at that cell.  We do have

21   handicapped cells that have showers in them.  But

22   that specific one, I can't tell you.

23        Q.   You can't tell me if that's one of them.

24        A.   That's right.

25        Q.   And are you aware that the Government --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have you talked to the Government about their
 2    response to -- the pleading that they filed in this
 3    case for this hearing on Mr. Perez' motion to
 4    suppress?  Did you have anything to do with that?
 5         A.   I'm not sure what you're asking, so I guess
 6    the answer is no.
 7         Q.   Okay.  The court document that was filed in
 8    this case, for this hearing, by the prosecution
 9    stated that Mr. Perez was held in this cell because
10    it's a handicapped cell.  But you can't tell me if
11    this is a handicapped cell?
12         A.   I can tell you the pod has handicapped
13    access.
14         Q.   Okay.  But you've already told me that the
15    reason that Mr. Perez was held in this cell is
16    because you were continuing an investigation of the
17    SNM?
18         A.   We were continuing.  Both items are true.
19         Q.   You've answered my questions on that.
20              Now, are you familiar with Mr. Billy
21    Cordova?
22         A.   I do know Inmate Billy Cordova, yes.
23         Q.   Do you know that he was, for a period of
24    time, held at the Penitentiary of New Mexico Level 6?
25         A.   I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115456

```
 1         Q.    And do you know when he was there?

 2         A.    Unless I look at the -- I can't tell you

 3    off the top of my head.  But --

 4         Q.    Okay.  And he -- do you know him

 5    personally?

 6         A.    I know him a little bit better than Rudy

 7    Perez, just because I happened to work in the same

 8    areas that he lived in.  But, no, I don't really know

 9    him personally.

10         Q.    You had just been at the same facilities

11    that he's been in at the same time?

12         A.    More often than Mr. Perez.

13         Q.    Okay.  Is he one of the individuals you

14    talked to Mr. Acee about, when you talked about

15    putting money on inmates' books?

16         A.    We didn't talk about individual inmates,

17    no.

18         Q.    Are you aware that he was getting money put

19    on his books by the Government while he was at PNM?

20         A.    I probably was -- yes, ma'am, I was aware.

21         Q.    Okay.  And you helped make that happen?

22         A.    I told him how that works.

23         Q.    Because there is a way to do it so that you

24    can't tell, looking at the documentation, that the

25    money is coming from the government, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4456

1    A.   No, ma'am.  That I would have -- no, ma'am.

2    Q.   Okay.  And did you have anything to do with

3  making the decision to house Billy Cordova at PNM?

4    A.   It's kind of like Rudy Perez:  No, not

5  directly.  I didn't tell anyone to put him in that

6  cell.  But yes, I did tell them:  We're moving him to

7  PNM.

8    Q.   But you don't remember when that happened?

9    A.   Not without looking at the dates on the

10  inmate locator.

11    Q.   I'm going to show you Government's Exhibit

12  45.  This is Billy Cordova's location history.  You

13  remember this.  Looking at this document, can you

14  tell me when Mr. Cordova went to PNM?

15    A.   It looks like he originally went to PNM on

16  January 7, 2016.  I'm sorry, ma'am, how far down do

17  you want me to read?

18    Q.   No, that's fine.  January 7, 2016.  And so

19  you explained that in the summer, June of 2015, you

20  made the decision to bring all the SNM inmates to

21  PNM, right?

22    A.   We were transitioning the SNM all to PNM,

23  yes, ma'am.

24    Q.   Do you know if Billy Cordova is SNM?

25    A.   He is.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4457

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 117458

```
 1        Q.   Okay.  But he was not brought there in the
 2   summer of 2015, according to this Government's
 3   Exhibit 45, right?
 4        A.   No, ma'am.  He hadn't transitioned yet, no,
 5   ma'am.
 6        Q.   He wasn't brought there until January 2016.
 7   And so you asked for him to be brought there in
 8   January 2016?
 9        A.   I mean, yes.  Ultimately, I'm responsible.
10   But I don't do the transport orders.  But the answer
11   is yes.
12        Q.   But did you ask that he be moved to PNM?
13        A.   I knew that the SNM were being moved to
14   PNM.
15        Q.   Okay.  And we already talked about Rudy
16   Perez, and he was moved in June of 2015.  And you
17   told me you were involved in transitioning all the
18   SNM to PNM, right?
19        A.   That's correct.
20        Q.   Okay.  Now, we're in January of 2016.  And
21   you asked for Mr. Cordova -- can you tell me if
22   anybody else who is SNM was moved to the Penitentiary
23   of New Mexico in January of 2016?
24        A.   I can't tell you without looking at
25   transport orders and stuff like that, ma'am.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4458

```
 1        Q.   Okay.  But you asked that Mr. Cordova be
 2   moved in January of 2016, looking at Government's
 3   Exhibit 45?
 4        A.   Well, if you look at the locator history,
 5   it looks like he had court -- he had already been at
 6   the PNM North, if you look down.  And he had gone to
 7   Central because he had to go to court.  For those
 8   inmates that are go into court to Albuquerque, we
 9   transfer them to Central until they're done with
10   their court dates.
11        Q.   Okay.  And in January 2016, Mr. Cordova was
12   pending -- do you recall Mr. Cordova was pending
13   sentencing?
14        A.   No, ma'am, I can't say that I recall that.
15        Q.   I know you deal with a lot of people coming
16   in and out of facilities.  And so, if you don't
17   remember specifically, that's fine.  I'm just trying
18   to figure out if you know why he was brought there in
19   January of 2016?
20        A.   It looks like -- I mean, just based on this
21   documentation -- of course, I don't know what he was
22   doing at MDC -- but it looks like he was out to
23   court.
24        Q.   Okay.  And when he came to PNM in January
25   2016, if he had not yet been sentenced, what are the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119460

1    reasons that he could have been held at PNM pursuant

2    to the policies?

3        A.   If he hadn't been sentenced yet?

4        Q.   Yeah.  I know you don't know if he hadn't

5    been sentenced.  But if an inmate is pending

6    sentencing, and they're held at PNM, what are the

7    valid reasons for that?

8        A.   Well, I mean, there is several different

9    reasons.  It could be all the things that we had

10   already talked about.  It could be because he's a

11   county hold.  We hold inmates for the county, and

12   then they reimburse us.  So that's a possibility.

13       Q.   And that's where the county asks the New

14   Mexico Corrections Department to hold an inmate at

15   Level 6?

16       A.   Yeah.  Sometimes they'll specifically

17   request a facility.  But sometimes they'll just

18   say -- they'll remand them to our custody, and we

19   just decide where to place them.

20       Q.   You make that classification decision then?

21       A.   We do.  And we usually -- usually, when the

22   courts send us someone, it's because they're creating

23   some sort of security problem within the county jail.

24   So we just kind of -- most of the time send them to

25   the Penitentiary North facility.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4460

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120 of 461

```
 1        Q.   Okay.  And Mr. Cordova also could have been

 2   held there for discipline, right?

 3        A.   Discipline, yes, ma'am.

 4        Q.   And if that were the case, there would be

 5   documentation of that in his NMCD file?

 6        A.   Yes, ma'am, there would be.

 7             MS. FOX-YOUNG:  Your Honor, I move to admit

 8   Rudy Perez Exhibit H.  I don't believe the Government

 9   objects.

10             THE COURT:  Is that correct?

11             MS. ARMIJO:  No objection.

12             THE COURT:  Anybody else have any

13   objection?  All right.  Defendant Rudy Perez' Exhibit

14   H will be admitted into evidence.

15        Q.   Okay.  And I think, Mr. Roark, you said

16   that you didn't recall having anything to do

17   specifically with Rudy Perez' housing at PNM, but you

18   did request that all the SNM inmates be moved?

19        A.   Yes.  I get transport orders, and I get

20   told about transports.  So, yeah, I would have known

21   that he was getting moved to the penitentiary.

22        Q.   Okay.  Showing you what's been marked as

23   Rudy Perez Exhibit H, and I will try to zoom in on it

24   so can you see it.  And if you want to see the

25   document itself, I'll bring it to you.  But I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4461

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 121 4462

```
 1    represent to you that this is an email chain that

 2    appears to involve you and Ms. Wendy Perez, who I

 3    think you talked about, who is the Deputy Warden; is

 4    that right?

 5         A.   Yes.

 6         Q.   And Roland Mares.  Who is he?

 7         A.   He is -- I believe at the time he was a

 8    classification officer.

 9         Q.   Okay.  And do you see where there is an

10    email from you that's included in this document?

11         A.   I do.

12         Q.   And it appears to be from February 11,

13    2015; is that right?

14         A.   Yes.

15         Q.   It looks like you wrote all the wardens,

16    and you talked to them -- is this to all the wardens?

17         A.   It was.

18         Q.   Okay.  And Wendy Perez received this email?

19         A.   She eventually received it, yes.

20         Q.   Okay.  It looks like you sent an email to

21    the wardens talking about inmates who owe

22    disciplinary time under the old rules, right?

23         A.   Yes, ma'am.

24         Q.   And Ms. Wendy Perez took this email, and it

25    looks like the email was then forwarded to German
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4462

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4463

```
 1   Franco, right?  If you just look up at the top of
 2   this document.
 3        A.   Yes, eventually, yes, ma'am.
 4        Q.   And the subject line reads, "Rudy Perez
 5   40830," and then in the body of the email it says,
 6   "Call me on this so I can explain, please."  Do you
 7   see that?
 8        A.   Yes, ma'am.
 9        Q.   Do you know what that's about?
10        A.   I don't know what Ms. Perez and Mr. Franco
11   talked about, no.
12        Q.   Okay.  And then down at the bottom in this
13   email -- and I know this document contains different
14   emails.  It was produced this way from the
15   Corrections Department, I will represent to you.  At
16   the bottom there is a description from Mr. Roland
17   Mares to Shane Donahue, Wendy Perez.  Who is Shane
18   Donahue?
19        A.   I don't recognize the name.
20        Q.   And it talks about an old report from three
21   years prior, right, February of 2013?
22        A.   It does.
23        Q.   But you don't know anything about that with
24   regard to Rudy Perez?
25        A.   No, not today, I don't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4463

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123

```
 1        Q.   Okay.

 2             MS. FOX-YOUNG:  Your Honor, just a moment.

 3             THE COURT:  Certainly.

 4             MS. FOX-YOUNG:  Your Honor, I'll pass the

 5   witness.

 6             THE COURT:  Thank you, Ms. Fox-Young.

 7             Ms. Bhalla, do you have cross-examination

 8   of Mr. Roark?

 9             MS. BHALLA:  Your Honor, if we could have

10   just a couple of minutes to reorganize the exhibits?

11   It shouldn't take but a minute.

12             (A discussion was held off the record.)

13                       EXAMINATION

14   BY MS. BHALLA:

15        Q.   Good afternoon, Mr. Roark.  I think it's

16   afternoon now.

17             You testified that everybody was put on

18   lockdown in March of 2014, after the Molina homicide;

19   is that correct?

20        A.   Yes, ma'am.

21        Q.   Okay.  And that was in the Southern

22   facility?

23        A.   Well, it was all SNM.  So not just at

24   Southern; it was at Central and --

25        Q.   So wherever they were located?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4464

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124465

```
 1          A.   Yes, ma'am.
 2          Q.   Okay.  And I'm going to show you a
 3     document.  Can you see that on your computer screen?
 4          A.   Yes, ma'am, I can.
 5          Q.   And do you see that that is an Interim
 6     Level 6 placement for Mr. Herrera?
 7          A.   Yes, ma'am.
 8          Q.   And that is dated March of 2014?
 9          A.   Yes, ma'am.
10          Q.   So would you agree with me that Mr. Herrera
11     was also placed on Interim Level 6 lockdown after the
12     Molina homicide?
13          A.   I would.
14          Q.   Okay.  And when you look at these location
15     histories -- I'm going to show you what has been
16     marked as Government's Exhibit 44, which would be the
17     location history for Mr. Herrera.  Can you take a
18     look at that?
19          A.   Yes, ma'am.
20          Q.   Do you see his location history for March
21     of 2014?
22          A.   Yes, ma'am, I see it.
23          Q.   Does that location history indicate whether
24     or not he was on Interim Level 6?
25          A.   It doesn't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4465

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 125466

```
 1        Q.   Excuse me?
 2        A.   The location history itself doesn't show
 3   that.
 4        Q.   Okay.  So by looking at the location
 5   histories alone, you can't tell, wherever these
 6   inmates were, what restrictions were placed on them
 7   in terms of Interim Level 6 or Level 4 or general
 8   population?
 9        A.   That's correct, not just looking at this.
10        Q.   Okay, thank you.
11             Now, I'm going to show you another document
12   for Mr. Herrera.  Would you agree that this is
13   another Interim Level 6 placement for Mr. Herrera?
14        A.   It is.
15        Q.   And then it's dated December of 2014?
16        A.   Yes, ma'am.
17        Q.   And would you agree with me that Mr.
18   Herrera was still on Interim Level 6 at that time?
19        A.   He was.
20        Q.   Okay.
21             MS. BHALLA:  Your Honor, I want to move --
22   gosh there is too many exhibits up here.  I would
23   like to move those two interim placements with Mr.
24   Herrera into evidence as Exhibits D and E for Mr.
25   Herrera.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4466

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126467

```
 1            THE COURT:  Any objection, Ms. Armijo?
 2            MS. ARMIJO:  I don't.  But I would ask in
 3    the future before we show things, that we have an
 4    opportunity to have it placed into evidence.
 5            THE COURT:  All right.  Anybody else have
 6    any objections?  All right.  Then Defendant Carlos
 7    Herrera's Exhibits D and E will be admitted into
 8    evidence.
 9    BY MS. BHALLA:
10        Q.   Do you recall, Mr. Roark, testifying about
11    the Level 5 and Level 6 placement criteria and
12    procedures?
13        A.   I do.
14        Q.   And do you recall that one of their
15    criteria is that they are actively participating in
16    gang-related activities?
17        A.   I do recall that.
18        Q.   Okay.  I'm going to show you a couple of
19    other classification forms, but I believe I need to
20    show Ms. Armijo first.
21            Can you see this document on your screen,
22    Mr. Roark?
23        A.   Up till number 9.
24        Q.   Okay.  I can scroll it down.
25    Unfortunately, I don't think I can make the whole --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127468

```
 1   is there a way to make it smaller?

 2             MS. ARMIJO:  Your Honor, I'm going to

 3   object.  She's going to move it into evidence.  We

 4   don't have any objection.  But at least for the

 5   record if she's going to mark it and put for the

 6   record what exhibit she is referring to.

 7             THE COURT:  Are you going to move this into

 8   admission, Ms. Bhalla?

 9             MS. BHALLA:  Yes, Your Honor, I believe we

10   left off with E.  So I believe it would be Carlos

11   Herrera's F and G.  And I didn't have enough -- I

12   still need to mark it with the exhibits.

13             THE COURT:  All right.  There is no

14   objection from the Government on these?

15             MS. ARMIJO:  No, Your Honor.

16             THE COURT:  Anybody else have any

17   objection?  Defendant Carlos Herrera's Exhibits F and

18   G will be admitted into evidence.

19        Q.   Is that better, Mr. Roark?

20        A.   It is.

21        Q.   Okay.  And can you read the title of that

22   document for us?

23        A.   It's Reclassification Scoring Form.

24        Q.   Okay.  And the review date on this document

25   was June 18 of 2014?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4468

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 128469

```
 1          A.    That's correct.

 2          Q.    And at that time Mr. Herrera was still

 3    being held on Interim Level 6; is that correct?

 4          A.    I believe that's correct.

 5          Q.    Would you also agree with me that, if you

 6    go down to number 9, "Gang membership and activities

 7    in the past ten years" -- can you take a look at that

 8    section?

 9          A.    Yes, ma'am.

10          Q.    And isn't it true that the form indicates

11    that Mr. Herrera had no gang activity or membership

12    in the last 10 years?

13          A.    That's what the form says, yes.

14          Q.    But he was still being held in Interim

15    Level 6?

16          A.    That's correct.

17          Q.    I'm going to show you another form, which

18    would be F, I believe -- G -- thank you.  Is that a

19    similar form to the one that you just reviewed?

20          A.    It is.

21          Q.    And is the review date on that December 2nd

22    of 2014?

23          A.    It is.

24          Q.    And is he still being held in Interim Level

25    6, Mr. Herrera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4469

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 23470

```
 1        A.   Yes.

 2        Q.   And again, if you look at number 9, the

 3   indications are that Mr. Herrera still had no gang

 4   involvement or activities in the past 10 years; is

 5   that correct?

 6        A.   On the first page of the scoring form

 7   that's correct.

 8        Q.   Would you like to see the second page?

 9        A.   Yes, ma'am, I would.

10        Q.   Does the second page tell you anything

11   different?

12        A.   Yes.  It does.  It shows that there is a

13   mandatory override factor; that he can't go to Level

14   1, Level 2, Level 3 facility, because he's a

15   validated or suspected STG member.

16        Q.   That's correct.  But he's still being held

17   in Interim Level 6 based on the STIU investigation;

18   is that correct?

19        A.   That's true, ma'am.

20        Q.   Okay.

21             THE COURT:  Ms. Bhalla, would this be a

22   good time for us to take our lunch break?

23             MS. BHALLA:  Your Honor, you know what, to

24   be honest, I really don't have that much more.  I

25   don't know if you want me to finish up with him.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4470

1    mean, I think maybe four minutes.  We can take a

2    break, that's fine.  But just in the interests of

3    being candid with the Court.

4            THE COURT:  All right.  Go ahead.

5        Q.   I'm just going to show the Government two

6    more documents.

7            MS. BHALLA:  What number am I on?  H.

8    Thank you.

9        Q.   I'm going to show you a document that will

10   be Carlos Herrera's Exhibit H.  Can you take a minute

11   to review that document, Mr. Roark?  Is that form

12   related to Mr. Herrera?

13       A.   Yes, ma'am.

14       Q.   And it's a committee review form?

15       A.   It's a TAP committee review form.

16       Q.   And it's dated December of 2014?

17       A.   It is.

18       Q.   And if you look at the bottom where it

19   says, "Security needs or recommendations," isn't it

20   correct that there are none?

21       A.   That's correct.  No one wrote anything in

22   there.

23       Q.   I'm going to show you -- and you testified

24   previously, Mr. Roark, that a lot of the SNM inmates

25   were being moved to PNM in the summer of 2015; is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4471

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131

```
 1    that correct?

 2         A.    I believe that's when we began moving

 3    them --

 4         Q.    Okay.

 5         A.    -- many of them.

 6         Q.    I'm going to show you what's been marked as

 7    Government's Exhibit 44.  When was Mr. Herrera moved

 8    from Southern to PNM?

 9         A.    It looks like the last time was January 27.

10         Q.    Of what year?

11         A.    2016.

12         Q.    So that would have been after the summer of

13    2015?

14         A.    It was.

15              MS. BHALLA:  Can I have just one moment,

16    Your Honor?

17              THE COURT:  You may.

18              MS. BHALLA:  I have nothing further, Your

19    Honor.  Thank you.

20              THE COURT:  Thank you, Ms. Bhalla.

21              All right.  Let's go ahead and take our

22    lunch break.  We'll be in recess for about an hour.

23    Have a good lunch.

24              (The Court stood in recess.)

25              THE COURT:  All right.  Everybody take
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4472

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132

```
 1   their seats.  We'll go on the record.  Look around,

 2   make sure everybody has got a lawyer.  Looks to me

 3   like everybody does.  Let's just make sure.

 4           All right.  Anybody have any further

 5   cross-examination of Mr. Roark?

 6           All right.  Ms. Armijo, do you have

 7   redirect?

 8           MS. ARMIJO:  I believe Mr. Jewkes does.

 9           THE COURT:  Oh, Mr. Jewkes.  All right.

10   Mr. Roark, I'll remind you that you're still under

11   oath.  Mr. Jewkes.

12           MR. JEWKES:  Thank you, Your Honor.  May it

13   please the Court.

14           THE COURT:  Mr. Jewkes.

15           MR. JEWKES:  Your Honor, if I may, I'd like

16   to look at the white paper admitted for purposes of

17   this hearing as RP-D, if I may have just a moment.

18           THE COURT:  You may.

19                    EXAMINATION

20   BY MR. JEWKES:

21       Q.   Good afternoon, Mr. Roark.

22       A.   Good afternoon.

23       Q.   I pronounced your last name correctly,

24   Roark?

25       A.   It's Roark, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4473

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

```
 1          Q.   Mr. Roark, this white paper that was
 2   discussed earlier this morning, you're the author of
 3   it?
 4          A.   Yes, sir.
 5          Q.   And did you have any assistance in writing
 6   it?  By that I mean, are you the sole author of this
 7   report?
 8          A.   I'm the sole author.
 9          Q.   So all conclusions in this report are your
10   conclusions?
11          A.   They were conclusions based on the
12   preliminary and initial information we received.
13          Q.   Okay.  Did you rely on any information from
14   informants?
15          A.   Not directly.
16          Q.   Not directly.
17               If we may -- can you see this all right?
18          A.   Yes, sir, I can.
19          Q.   How does this magnify?  Thank you.
20               We're looking at -- even though it's not
21   marked as page 1, it's the first page in this packet.
22   And it says, "Video footage shows that inmate Daniel
23   Sanchez, 43068, was orchestrating and directing the
24   assault."  You wrote that?
25          A.   I did, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4474

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

1      Q.   And how many times did you watch that

2  video, the video of the March 7 assault?

3      A.   Once or twice.

4      Q.   Once or twice.  Have you viewed it

5  recently?

6      A.   No, sir, I have not.

7      Q.   Can you tell us exactly what you saw in

8  that video that indicated that Daniel Sanchez was

9  orchestrating and directing the assault?

10     A.   No, sir, I can't do that today.

11     Q.   You can't do that?

12     A.   No, sir.

13     Q.   Would it surprise you if I told you that in

14  the video Mr. Sanchez is seated at a card table, a

15  steel table, in the middle of the pod?

16     A.   I haven't seen the video in a while, sir.

17     Q.   You haven't?

18     A.   No, sir.

19     Q.   Okay.  So having not seen the video in

20  quite a while, is it possible that this statement is

21  incorrect?  In other words, not necessarily the

22  truth, not that you lied.  I'm just saying that you

23  could be wrong?

24     A.   I wrote this three years ago, so

25  perceptions do change, yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4475

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

```
 1          Q.   Fair enough.
 2               Now, what, if anything, do you remember
 3     about the video of the March 7 assault on Javier
 4     Molina?  Anything?
 5          A.   Very little, sir.  I viewed it three years
 6     ago, so I'd have to see it again, sir.
 7          Q.   Mr. Roark, you've been with the Department
 8     of Corrections since 1989?
 9          A.   Yes, sir.
10          Q.   By my count, that's 28 years.  You worked
11     your way up from the bottom, started off as a
12     detention officer, or a correctional officer;
13     correct?
14          A.   That's correct, sir.
15          Q.   Okay.  I take it you're familiar with
16     shanks?
17          A.   I am.
18          Q.   Do you know what a shank is?
19          A.   Yes, sir, I do.
20          Q.   You've probably seen them a bunch of times,
21     haven't you?
22          A.   I have.
23          Q.   Do you know how they're made?
24          A.   Generally, how they're made, yes, sir.
25          Q.   How long does it take to make a shank?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4476

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136

1      A.   Well, it depends.  It depends on the type

2   of material, how motivated the inmate is, the tools

3   he has available, if he has any.  I mean, I don't

4   know there is a time period, but it depends.

5      Q.   It varies, right?

6      A.   Yes, sir.

7      Q.   Okay.  We'll agree that most of the time

8   shanks are made out of steel, would you agree?

9      A.   Most of the time.  There are exceptions.

10      Q.   Okay.  And you're aware that there were

11   three shanks seized in connection with this case --

12   and for the sake of simplicity, let's call it the

13   Molina case, all right?

14      A.   Yes, sir.

15      Q.   Three shanks in evidence.  Have you ever

16   seen those shanks?

17      A.   I haven't seen them in a while, no, sir.

18      Q.   No, okay.  Do we both agree that inmates

19   doing time in the New Mexico Department of

20   Corrections are not allowed to have files or electric

21   grinders?  Do you agree with that?

22      A.   In their personal property, that's correct.

23      Q.   So how are these shanks made?  If they're

24   made out of steel, and they're made surreptitiously,

25   how is that accomplished?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4477

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137

1      A.   Well, a lot of times the inmates will -- if

2    the metal is pliable enough, they'll take the metal

3    and they'll grind it against the concrete, and that

4    sharpens it.

5      Q.   Okay.  So in a typical prison setting,

6    we're talking about either concrete floor, concrete

7    wall, or maybe a concrete pillar?  Would you agree

8    with that?

9      A.   Yes, sir.

10      Q.   And you train your correctional officers to

11   look for grind marks, either on the walls, on the

12   pillars, or on the floors, would you agree with that?

13      A.   That's part of the search training, yes,

14   sir.

15      Q.   They check these various places several

16   times a day, don't they?

17      A.   They're required to do three cell searches

18   a day in each housing unit.  So they do check.  They

19   do look into every cell, but they only do three cell

20   searches that are beyond just a casual observance.

21      Q.   All right, sir.  Well, after March 7, 2014,

22   are you aware of any of the employees, DOC employees

23   out there at Southern, looking for such grind marks,

24   specifically in the blue pod at Southern New Mexico?

25      A.   It should have been part of their job, yes,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

```
 1  sir.
 2       Q.   Did you indicate anything about that in
 3  your white paper, Mr. Roark?
 4       A.   Not in the blue pod, no, sir.
 5       Q.   Not in that blue pod?
 6       A.   No.
 7       Q.   So can we safely assume then that there
 8  were no grind marks found in blue pod on or after
 9  March 7, 2014?  Would that be a safe assumption?
10       A.   There was none that I know about, yes, sir.
11            MR. JEWKES:  Pass the witness, Your Honor.
12            THE COURT:  Thank you, Mr. Jewkes.
13            Did someone else want -- Ms. Duncan.
14            MS. DUNCAN:  Yes, Your Honor.  Thank you.
15            THE COURT:  Ms. Duncan.
16            MS. DUNCAN:  If I may just have a moment,
17  Your Honor.  I need some of these exhibits.
18            THE COURT:  You may.
19                       EXAMINATION
20  BY MS. DUNCAN:
21       Q.   Good afternoon.
22       A.   Good afternoon.
23       Q.   I wanted to talk to you about the
24  conversation that you had with Anthony Ray Baca in
25  January of 2014.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4479

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 139

1          A.   Yes, ma'am.

2          Q.   Can you begin by telling us why was Anthony

3    Ray Baca transferred from Southern New Mexico

4    Correctional Facility to PNM North in 2013?

5          A.   I don't want to mislead you.  I'd have to

6    look at the file exactly to tell you why he was

7    transferred.  I mean, there were some safety issues,

8    but I don't remember exactly.

9          Q.   Okay.  So there were some safety issues.

10   Would I be correct in saying that there were

11   confidential informants that indicated that there

12   might be a threat to Mr. Baca's life?

13         A.   It would be something like that.  Again, I

14   don't remember the exact circumstances.  But, yes,

15   ma'am.

16         Q.   Do you recall that his transfer to PNM was

17   based on an involuntary placement in Level 6;

18   correct?

19         A.   That's correct.

20         Q.   Based on personal safety; correct?

21         A.   That's correct.

22         Q.   And I would like to show you what I'm going

23   to mark as Anthony Baca -- AB-A.  And for the record,

24   this is Bates stamped DeLeon 27801.

25              MS. DUNCAN:  Your Honor, I don't think the




SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                           1-800-669-9492
                                                  e-mail: info@litsupport.com

DNM 4480

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 140

1    Government has any objection, so I would move the

2    admission.

3           THE COURT:  Anybody else have an objection?

4    All right.  Defendant Anthony Baca's Exhibit A will

5    be admitted into evidence.

6    BY MS. DUNCAN:

7       Q.   So I'm showing you Exhibit AB-A.  And this

8    is the Interim Level 6 disciplinary placement for

9    Anthony Baca; correct?

10      A.   That's correct.

11      Q.   And it's dated June 28 of 2013; correct?

12      A.   That's correct.

13      Q.   And it's signed by Captain Daniel Blanco.

14   Who was Captain Blanco at that time?

15      A.   He was the captain of the Security Threat

16   Intelligence Unit at Southern New Mexico Correctional

17   Facility.

18      Q.   At the bottom of the form, in the area

19   that's known as 72-hour review, that gives specific

20   justification for the action; correct?

21      A.   To keep him on -- to remain in Interim

22   Level 6, yes, ma'am.

23      Q.   So let me ask you about the procedure.  So

24   how is it that an inmate is put in involuntary

25   placement for his own protection?  What's the process

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   for that?
 2        A.   Well, in this case -- there is a couple
 3   ways to do it.  Well, I mean, if the inmate asks --
 4   at that time, if an inmate asked to be placed in
 5   involuntary placement, we would do that.  If an
 6   inmate -- if we have information based on
 7   confidential sources that an inmate would be placed
 8   in involuntary segregation, we would do that at that
 9   time.
10        Q.   And so how -- so in this case, Mr. Baca was
11   placed in involuntary segregation; correct?
12        A.   That's correct.
13        Q.   So what is the process for placing an
14   inmate in involuntary segregation?  Is there a
15   procedure that the Department of Corrections follows
16   to do that?
17        A.   There is.  There is this placement form,
18   and then there should have been a confidential
19   information memorandum to support the lockup.
20        Q.   And can you tell us what is the
21   confidential information memorandum?
22        A.   It's a summary of confidential information.
23   We have nine criteria in order to lock someone up for
24   confidential information.  You have to meet four of
25   those nine criteria.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4482

1      Q.   Do you know off the top of your head the

2   nine criteria?

3      A.   I can try.  I don't know about if I'll

4   remember all nine of them, ma'am.  But some of them

5   are date and time of incident; person, date and time

6   of information received; place the information was

7   received; the person who received the information;

8   efforts to corroborate the information; the exact

9   nature of the information; whether the informants had

10  provided reliable information in the past.  I'm

11  missing three I can't recall now.

12     Q.   And with that confidential information, is

13  there a form that is used to verify the confidential

14  information?

15     A.   It's not to verify.  It's to summarize the

16  confidential information.  And you have to outline

17  all the four criteria that you met.

18     Q.   And when is that memorandum written that

19  you submitted?

20     A.   Upon the decision to place him into Level

21  6; to remove him from Interim Level 6 and into Level

22  6.

23     Q.   So after the decision is made to put

24  someone into Interim Level 6 -- I see on this form

25  that is a 72-hour review section at the bottom.  Do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4483

1    you see that?

2        A.    Yes, ma'am.

3        Q.    And what is the purpose of that review?

4        A.    The purpose of the review is to make sure

5    that we're not housing someone in restrictive housing

6    that shouldn't be there.

7        Q.    And what is the process for that review?

8        A.    The chief of security should go talk to the

9    inmate, and then look over the evidence related to

10   the lockdown.

11       Q.    And so is it the chief of security alone

12   who conducts the 72-hour review?

13       A.    It's the chief of security or the unit

14   manager.

15       Q.    And after the 72-hour review, the result of

16   that review is for someone to remain in Level 6,

17   what's the next step?

18       A.    At that point, you have -- at that point

19   the unit manager needs to start working on referring

20   them to Level 6.

21       Q.    And describe that process to us, please.

22       A.    You write -- pretty much, you write a

23   justification on the document to the classification

24   bureau chief, who then makes a determination that

25   this person is going to go to Level 6.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4484

```
 1              MS. DUNCAN:  I'm going to mark another
 2    exhibit.  This would be Anthony Baca B.  For the
 3    record, it is DeLeon Bates stamped 27792 through
 4    27814.  Your Honor, I would move for the admission of
 5    Anthony Baca Exhibit B.
 6              THE COURT:  Any objection, Ms. Armijo?
 7              MS. ARMIJO:  No, Your Honor.
 8              THE COURT:  Anybody else have an objection?
 9              Anthony Baca Exhibit B will be admitted
10    into evidence.
11         Q.   I want to show you the first page of
12    Anthony Baca Exhibit B.  And this is Bates No. DeLeon
13    27792.  Is this an example of the confidential
14    informant memo that you mentioned earlier?
15         A.   This is a confidential information
16    memorandum.
17         Q.   And who would have written -- so on the
18    page -- first, there is a typed summary of the
19    confidential information; correct?
20         A.   That's correct.
21         Q.   And then lower on the document is some
22    handwriting.  Can you tell us, what is that
23    handwriting?
24         A.   It looks like someone reviewed this report
25    to see if it met the four to nine criteria.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4485

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145486

1      Q.   So these four criteria:  Staff member, date

2  received; location received; and efforts to

3  corroborate, those are all confidential information

4  criteria?

5      A.   Yes, ma'am.

6      Q.   Do you know who wrote this?

7      A.   I don't recognize the handwriting at all,

8  ma'am.

9      Q.   So you said that after the 72-hour review,

10  then a packet is put together to do a more formal

11  referral to Level 6; is that correct?

12      A.   That's correct, ma'am.

13      Q.   Let me -- I'm going to hand you this

14  Anthony Baca Exhibit B, and I'm wondering if that

15  packet is contained in this exhibit.

16          MS. DUNCAN:  Your Honor, may I approach?

17          THE COURT:  You may.

18      A.   No, ma'am, it's not.

19      Q.   Where would that packet be held or kept?

20      A.   It would be at the classification -- it

21  would be at the Classification Bureau.

22      Q.   And where is the Classification Bureau?

23      A.   Well, now, we call it the Offender

24  Management Services.  That's in Albuquerque.  They

25  keep packets of all referrals to Level 6 in our new

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4486

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 146

```
 1    program.

 2         Q.   What would you expect to see in a referral

 3    packet?

 4         A.   Just kind of a summary that's -- of what

 5    you have.  It would justify why he needed to be

 6    placed in Level 6, and it would contain a lot of the

 7    confidential information that you handed me.

 8         Q.   And so once you receive the referral

 9    packet, what happens next?

10         A.   It gets approved or denied for placement in

11    Level 6.

12         Q.   And is there a form that's filled out when

13    someone is approved or denied?

14         A.   There is.

15         Q.   And is that form provided to the inmate at

16    issue?

17         A.   Yeah, there will be a committee action for

18    the inmate.

19         Q.   And after someone is approved for Level 6,

20    is there an appeal process?

21         A.   They can appeal their placement in Level 6,

22    yes.

23         Q.   And when that decision is being made to

24    keep someone at Level 6, is there a hearing?

25         A.   The inmate can make an appeal.  It's a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4487

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 147

```
 1    written appeal.
 2         Q.    So is there ever any formal process by
 3    which an inmate can respond to the allegations that
 4    led him to be placed in Interim Level 6?
 5         A.    He can make his response to the committee
 6    through the unit management team, and he can also
 7    make a written appeal also.
 8         Q.    So once someone has been confirmed to Level
 9    6, is there a review process to determine whether
10    they should be released from Level 6?
11         A.    There is.  There is a couple of ways --
12    there are several ways to do it in Level 6.  There is
13    regularly scheduled committee actions.  And they can
14    make a referral.  You can even -- you can request --
15    the unit manager can request a special committee
16    because he thinks, he or she may think the inmate is
17    ready to leave level 6.  There is annual reviews.
18    There is regular reviews being done on the inmate.
19         Q.    And in February or January of 2014, you
20    mentioned that you were deciding whether or not to
21    release Mr. Baca from Level 6; correct?
22         A.    That's correct.
23         Q.    And so what process were you following to
24    make that decision?  I guess, let me go back.  So
25    what triggered you to consider releasing Mr. Baca
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4488

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 148

```
 1    from Level 6?
 2         A.   Well, what triggered me is because the
 3    Secretary and the Deputy Secretary, my bosses, were
 4    saying, Let's reduce the size of segregation, let's
 5    build trust with our gang members.  They were
 6    noticing what other states had done.  And I
 7    decided -- I had already done this with another
 8    prison gang, and I was successful in doing it.  So I
 9    decided I wanted to try to do it with the SNM.
10         Q.   So the SNM, in general, not Mr. Baca
11    specifically?
12         A.   Well, I needed to talk -- it's like any
13    organization.  You talk to the leadership first, and
14    see if that leader is interested in increased
15    privileges, getting him out there.  I just wanted to
16    see where his mind was on all this.
17         Q.   But Mr. Baca was in Level 6 because there
18    was a threat or at least an alleged threat against
19    his life; correct?
20         A.   There was.
21         Q.   So he wasn't in Level 6 because he was
22    alleged to be the leader of the SNM; correct?
23         A.   He wasn't.  But he was a known leader in
24    the SNM.
25         Q.   So when someone is sent into Level 6 as a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4489

1    result of involuntary segregation, for example, if

2    there is a threat on their life, how do they get out

3    of Level 6?  Is there a different process if you're

4    brought in disciplinary versus you're brought

5    arguably for your safety?

6         A.   Yeah.  It's the review process.  At that

7    point when we think that the threat is no longer

8    there, we can release the inmate.

9         Q.   So when you were deciding whether or not to

10   release Mr. Baca, wasn't the question whether it

11   would be safe for him to be returned to general

12   population?

13        A.   That was one of the questions.

14        Q.   What were the other questions?

15        A.   Well, for me, it was was everybody going to

16   be safe.

17        Q.   So having brought him in to Level 6 for his

18   own safety, you felt that that justified keeping him

19   in Level 6 for any other reason?

20        A.   I'm not sure I understand.

21        Q.   I phrased that badly.  So if you bring

22   someone in to Level 6 for their own protection, and

23   then the cause of concern for their safety

24   dissipates, your opinion is that you can continue to

25   keep them in Level 6 for reasons other than why they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4490

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150   4491

```
 1    were originally placed there?
 2         A.   It's possible that that could happen, yes,
 3    ma'am.
 4         Q.   So is there a process for transferring
 5    from:  I'm putting you in involuntary placement for
 6    your own safety to now I'm holding you in
 7    administrative segregation for another reason?
 8         A.   Yes, ma'am.  You should start at Interim
 9    Level 6, and start the process over again.
10         Q.   And did you do that in Mr. Baca's case?
11         A.   I did not.
12         Q.   Do you know, was Mr. Baca ever given
13    notice -- so after that original classification, it
14    was determined he was going to be in Level 6.  Was he
15    given written notice of that decision?
16         A.   He should have been, but I can't -- unless
17    I have his file showing where he signed for it, I
18    can't tell you that for sure.
19         Q.   And if that document existed, would it be
20    in the classification file held in Albuquerque?
21         A.   No -- if -- it should be in Albuquerque
22    now, because he's not in our custody.  But, usually,
23    it's at the files at whatever facility they're in
24    custody at.
25         Q.   So, originally, they would have been at PNM
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

```
 1    Level 6, but then eventually transferred to
 2    Albuquerque?
 3         A.   Correct.
 4         Q.   Do you recall whether Mr. Baca appealed his
 5    placement at PNM Level 6?
 6         A.   I don't recall.
 7         Q.   If an inmate appeals their placement at
 8    Level 6, what's the process?
 9         A.   They write an appeal.  And the appeal goes
10    up to -- the appeal can go all the way up to the
11    director of adult prisons.
12         Q.   And so at the time, that would have been
13    you?
14         A.   It would have.
15         Q.   Then, when you're reviewing an appeal, what
16    do you typically do?
17         A.   Well, it's usually assigned to whoever is
18    the appeals officer.  And they do an investigation
19    into it.  They look at all the documentation.  And
20    then they bring it to me as a summary, and they kind
21    of give me a briefing on what they found.
22         Q.   And do you rely just on the appeals
23    officer's briefing, or do you do any kind of
24    independent investigation?
25         A.   It depends on how serious.  It depends on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4492

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152

1    the inmate and how -- and what they found.  I mean,

2    it just kind of varies.  Occasionally, I would ask

3    for more information.  Sometimes I thought the

4    information was complete, and that was fine, and I

5    signed off on it.  So it depends.

6         Q.   But you have no independent recollection of

7    whether Mr. Baca appealed or you were involved in an

8    appeal for him?

9         A.   Ma'am, almost all the inmates appeal, so I

10   can't remember them all.  No, ma'am.

11        Q.   So the meeting you had with Mr. Baca -- was

12   in it January or February of 2014?

13        A.   It was in January, ma'am, I'm sure.

14        Q.   And was anyone else present?

15        A.   Yes.  Larry Phillips was with me.

16        Q.   And was that a meeting initiated by you or

17   initiated by Mr. Baca?

18        A.   It had -- well, it had to be initiated by

19   me.

20        Q.   Did you take any notes during your meeting

21   with Mr. Baca?

22        A.   No.  Usually, I don't take notes in front

23   of the inmates, because they're less likely to talk

24   if you're taking notes in front of them.

25        Q.   Would you take notes or record what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4493

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 153 494

```
 1   happened at the meeting after it was concluded?

 2        A.   Sometimes I would.  If there was some

 3   very -- if there was a lot of detailed information, I

 4   would.

 5        Q.   Did you do so in this case?

 6        A.   I didn't, because there wasn't really a lot

 7   of detailed information.

 8        Q.   I'd like to show you -- this is from Rudy

 9   Perez Exhibit E.  I'm not sure what page.  I'm

10   showing you a memo from you to Chief of Staff, Mark

11   Myers, May 17 of 2016.  Do you recognize this

12   document?

13        A.   I do.

14        Q.   And in this document you are discussing the

15   meeting you had with Mr. Baca in January of 2014;

16   correct?

17        A.   Yes.

18        Q.   And why did you write this memo on May 17,

19   2016, two years later?

20        A.   Mr. Myers asked me to write a memo.

21        Q.   And tell us about that conversation.  What

22   exactly did he say to you?

23        A.   Well, they had the letter that Mr. Baca had

24   written me in February of 2014.  And they just asked

25   me what -- they just asked me, what brought on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4494

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154495

 1    letter, and, you know, what was my conversation with

 2    Mr. Baca like.  And so I just documented it.

 3         Q.   Have you had conversations with anyone

 4    other than Mr. Myers about -- let's say -- in this

 5    case -- the first indictment was filed in December of

 6    2015.  Since December 2015, have you discussed your

 7    meeting with Mr. Baca with anyone other than Mr.

 8    Myers or during this hearing?

 9         A.   Not that I recall, no.

10         Q.   And in your memo you state that Grievance

11    Administrator, Larry Phillips, was also present;

12    correct?

13         A.   He was.

14         Q.   So why was a grievance administrator at

15    your meeting with Mr. Baca?

16         A.   I probably wanted a witness with me,

17    because Mr. Baca is a high ranking member of the SNM.

18    And, you know, I don't recall, but it is possible

19    that Mr. Baca had filed an appeal.  And I wanted a

20    grievance officer with me there to hear what he had

21    to say.  So that is a possibility.  I just don't

22    remember.

23         Q.   So is the grievance administrator someone

24    who coordinated appeals if they were filed, or

25    response to appeals?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4495

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

```
 1        A.    Yes.

 2        Q.    And Larry Phillips, does he still work for

 3   the Department of Corrections?

 4        A.    No, ma'am, he does not.

 5        Q.    And when did he leave Corrections?

 6        A.    About two years ago.

 7        Q.    Do you know where he works now?

 8              MS. ARMIJO:  Your Honor, I'm going to start

 9   objecting.  This is getting way beyond the scope of

10   what's relevant here.  This is a motion to suppress

11   for Perez and Herrera, and now it's just a fishing

12   expedition, asking about where people are located.

13              MS. DUNCAN:  Your Honor, Ms. Armijo asked

14   this witness a long series of questions about

15   Mr. Baca being transferred to PNM North, about his

16   meeting with Mr. Baca, about the letter that Mr. Baca

17   wrote, and grievance process, and I'm trying to

18   understand how that came -- I think that is fairly

19   within the scope of what came out on direct.

20              THE COURT:  Well, but how is that relevant

21   to what I've got to decide, which is the

22   voluntariness of these statements?

23              MS. DUNCAN:  It's relevant, one, because it

24   came out on direct, but also two, because the

25   question of whether or not Department of Corrections
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4496

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156 497

 1   was following its own procedures and putting people

 2   into Level 6, the punitive measures I think is

 3   directly relevant to Mr. Perez' argument that where

 4   he placed was coercive; also to Mr. Herrera's

 5   argument that the Department of Corrections

 6   classification procedures were not being followed in

 7   his case.

 8           THE COURT:  I guess I'm not seeing what

 9   Baca's -- it's one thing for Perez and for Herrera,

10   but it doesn't -- it seems to me it is just discovery

11   on Baca.  So I'm going to sustain.

12           MS. DUNCAN:  Okay.

13       Q.   You testified on direct that, when you were

14   questioning Mr. Baca about -- well, let me ask you

15   again:  So you testified on direct about your

16   conversation with Mr. Baca; correct?

17       A.   Yes, ma'am.

18       Q.   And remind us of what questions you asked

19   Mr. Baca during that meeting?

20       A.   Well, the only question I asked him --

21   because it really was a conversation for him to

22   convince me that he could go back to Southern.  The

23   only real question, direct question, I asked him was

24   about gang recruitment.

25       Q.   Okay.  Did you ask him about how the gang,





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4497

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157 498

1    SNM, was operating at Southern New Mexico

2    Correctional Facility?

3         A.   No, ma'am, I didn't ask for that kind of

4    information.

5         Q.   Let me show you what I'm going to mark as

6    Anthony Baca Exhibit C.

7              MS. DUNCAN:  Your Honor, I understand there

8    is no objection.  I'm going to move to admit Anthony

9    Baca Exhibit C.

10             THE COURT:  Any objection?

11             MS. ARMIJO:  No objection.

12             THE COURT:  Any other defense lawyer have

13   any objection?  Not hearing any, the Court will admit

14   Anthony Baca Exhibit C into evidence.

15             MS. DUNCAN:  And just for the record, Your

16   Honor, it's Bates stamped 4476.

17             May I approach the witness, Your Honor?

18             THE COURT:  You may.

19        Q.   Mr. Roark, I'm handing you Anthony Baca

20   Exhibit C.  Do you recognize this?

21        A.   Yes.

22        Q.   Tell us what it is.

23        A.   It's a letter that Mr. Baca wrote me about

24   three or four weeks after we met.

25        Q.   And what is -- is the letter in response to

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

DNM 4498

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158

 1    your meeting with Mr. Baca?

 2         A.   Yes, ma'am.

 3         Q.   Can I grab that from you?  Thank you.

 4              And in this letter Mr. Baca is responding

 5    to concerns that you raised during the meeting;

 6    correct?

 7         A.   Yes.

 8         Q.   And the concerns that, according to the

 9    letter, that you had raised were maintaining a

10    peaceful environment at Southern New Mexico

11    Correctional Facility Level 4?

12         A.   That's what he wrote, yes, ma'am.

13         Q.   Do you recall discussing that with

14    Mr. Baca?

15         A.   He's the one that told me that he would

16    keep it peaceful.

17         Q.   And in the letter, Mr. Baca raised -- at

18    the very bottom of the letter -- raised a concern

19    about the STIU staff's negative attitude towards him;

20    correct?

21         A.   I don't see that.  But, yes, I do remember

22    that.

23         Q.   And did you do anything to address Mr.

24    Baca's concerns?

25         A.   No, ma'am, I didn't.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4499

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159 of 500

```
 1        Q.   So after your meeting with Mr. Baca, you
 2   testified you decided not to release him from Level
 3   6; correct?
 4        A.   I did.
 5        Q.   Did you document that decision?
 6        A.   No, ma'am, I didn't.  I didn't document it.
 7             MS. DUNCAN:  If I could just have a moment,
 8   Your Honor?
 9             THE COURT:  You may.
10             MS. DUNCAN:  No further questions, Your
11   Honor.
12             THE COURT:  Thank you, Ms. Duncan.
13             Any other defendant have cross-examination
14   of Mr. Roark?
15             All right.  Ms. Armijo, do you have
16   redirect of Mr. Roark?
17                  REDIRECT EXAMINATION
18   BY MS. ARMIJO:
19        Q.   Mr. Roark, I'm going to start with Exhibit
20   AB-C, which you were just questioned about.  And it
21   says in there -- she was just asking you -- "she"
22   being Ms. Duncan -- about Mr. Baca's concerns about
23   STIU staff's negative attitude.  Did you see that?
24        A.   I do.
25        Q.   In there, does Mr. Baca also talk about his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4500

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4501

1   approach to resolve other problems with no violence?

2   Is that indicated there?

3        A.   He does write that, yes.

4        Q.   He says, "Nor the way I refer to various

5   issues to resolve others' problems with no violence.

6   There is a rush to judgment on their part."  Is that

7   correct?

8        A.   I do see that.

9        Q.   And the date on this is February 7th of

10  2014?

11       A.   It is.

12       Q.   And what happened again on March 7th of

13  2014?

14       A.   There was a murder of an SNM member.

15       Q.   And would you consider that a violent act?

16       A.   Yes, ma'am.

17       Q.   Now, in reference to -- let me go back.

18  Defendant's Exhibit RP-E.  In your memo, your white

19  memo, do you discuss Rudy Perez' walker?

20       A.   I do.

21       Q.   And was there something else that you

22  mentioned in that memo significant to Rudy Perez'

23  cell?

24       A.   Yes.  The initial information was that he

25  had taken parts off his walker, and there were scrape

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4501

```
 1   marks in his cell.
 2        Q.   And what significance do scrape marks have
 3   in a cell?
 4        A.   It's an indicator that there was metal
 5   being sharpened.
 6        Q.   Metal being what, I'm sorry?
 7        A.   Sharpened.
 8        Q.   All right.  And would metal be sharpened
 9   for shanks purposes, possibly?
10        A.   Yes, to make the metal into a point, to
11   make it a shank.
12        Q.   I'm going to show -- what's my next
13   exhibit, I'm sorry?
14             THE CLERK:  46.
15             MS. ARMIJO:  I move for the admission of
16   Exhibit 46, which is Offender Discipline History of
17   Rudy Perez.
18             THE COURT:  Any objection?
19             MS. FOX-YOUNG:  No, Your Honor.
20             THE COURT:  Not hearing any, Government's
21   Exhibit 46 will be admitted into evidence.
22        Q.   And in looking at this document, does it
23   show -- well, why don't you tell us was this document
24   is.
25        A.   It's a document called "Offender
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4502

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4503

1   Disciplinary History."  It's taken off of the

2   Criminal Management Information System.  It's a

3   history of an inmate's misconduct.

4       Q.   And does it show that he had misconduct on

5   September 17 of 2014, looking at the last line there?

6       A.   That's the date of his hearing, his final

7   hearing.  So that doesn't necessarily mean that's

8   when the misconduct occurred.  That's when the

9   hearing occurred.

10      Q.   All right.  So the final hearing date was

11  on September 17.  And what type of classification was

12  it, of a discipline action?

13      A.   It was a major misconduct report.

14      Q.   And was he found guilty?

15      A.   Yes, ma'am, he was.

16      Q.   And as a result of that, would there be any

17  sanctions that would be upon him?

18      A.   There would be some sanctions.

19      Q.   And what kind of sanctions would that

20  include?

21      A.   It could be anything.  It could be loss of

22  privileges, loss of good time, time in disciplinary

23  restrictive housing.

24      Q.   Now, I believe that for Mr. Perez -- I'm

25  showing you Exhibit 43 -- you were asked on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4503

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163

 1    cross-examination as to these pods, and if they were

 2    handicapped pods.  Or how would you describe them?

 3         A.   I would describe that the pods themselves

 4    have handicapped access because they have ramps, and

 5    other ADA.

 6         Q.   And the cells in there, are there special

 7    considerations for handicapped accessibility?  Is

 8    there a distinction between cells in this pod and

 9    cells in other pods?

10         A.   Some of the cell doors are wider in order

11    to allow wheelchair access.

12         Q.   Okay.  And in looking at that, in these two

13    cells, it looks like -- if you can look there, Q 101

14    S and X 105 S, are you aware if those would have been

15    special cells for wider access?

16         A.   I'd have to look at the cells, ma'am.  I

17    can't say for sure yes.

18         Q.   And is that the purpose of the pod being a

19    handicapped pod?

20         A.   It is.  And all those cells are on the

21    bottom tier.  And that's where we have the access, on

22    the bottom tiers.

23         Q.   Okay.  So 101 and 105 are on the bottom?

24         A.   Yes, ma'am.

25         Q.   And is it your belief that you have the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com
DNM 4504

1    access for that and special dimensions on the bottom?

2         A.    Yes, ma'am, I do believe that's correct.

3    Yes, ma'am.

4         Q.    Now, you were also asked about inmates that

5    are in what I will term as confinement.  I believe

6    they were using the term "solitary confinement," but

7    restrictive conditions, and the mental health aspect

8    of it.  Do you recall those questions?

9         A.    Yes, ma'am.

10        Q.    Okay.  Are there efforts that New Mexico

11   Corrections Department has to combat any issues with

12   inmates who are on restrictive housing with limited

13   contact?

14        A.    Yes, ma'am.

15        Q.    Tell us about that.

16        A.    Every inmate that's placed into restrictive

17   housing requires a review, a mental health review.

18   That's a policy, and that's also an American

19   Correctional Association Standard.  So every inmate

20   that goes into restrictive housing is reviewed for

21   mental health.  Mental health is part of unit

22   management team.  Correctional officers in

23   restrictive housing units are required to do half

24   hour unit checks.  That way, if there is a mental or

25   medical breakdown of some sort, they can immediately

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4505

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165

```
 1    call for assistance.  Mental health is also required

 2    to do regular rounds in restrictive housing units.

 3         Q.   And I believe you indicated that before

 4    they go into the restrictive housing, there is an

 5    assessment done?

 6         A.   There is an assessment done, yes.

 7         Q.   And what about caseworker -- what's a

 8    caseworker in New Mexico Corrections Department?

 9         A.   A caseworker, it's more commonly called a

10    classification officer.  Their job is to ensure that

11    the inmate is properly classified, is receiving their

12    services as they need; that they're -- help the unit

13    manager, make sure they're in the proper programming;

14    that their quarterly good time is being done; that

15    all -- any issues with the inmate, aside from

16    security issues, are being addressed.

17         Q.   Okay.  Is it fair to say they're there to

18    assist the inmate and inmate needs, in addition to

19    other --

20         A.   They're not advocates for the inmates.  But

21    yeah, they're there to assist inmates.

22         Q.   And is there a caseworker assigned to

23    people in restrictive housing?

24         A.   Yes.

25         Q.   Was there a caseworker assigned to Rudy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4506

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 166

```
 1    Perez?
 2         A.    There would have been.
 3         Q.    And so would that have been part of his --
 4    when he was staying at the North facility restrictive
 5    housing, would that have been part of what was
 6    happening with him?
 7         A.    Yes, ma'am.
 8         Q.    And how often is it that there is some sort
 9    of issue, mental issue, with someone in restrictive
10    housing?
11         A.    I would say it happens, but it's not an
12    everyday or common incident.  I don't know if I can
13    give you numbers.  But it's -- it happens, but it's
14    rare.
15         Q.    It's rare?
16         A.    Yeah.  It's not a daily occurrence, ma'am.
17         Q.    And what happens when there is a mental
18    health crisis?
19         A.    Well, it depends on the nature of the
20    crisis.  Mental health is called -- mental health is
21    called, and they meet with the inmate and evaluate
22    the inmate in most circumstances.
23         Q.    And are there special provisions made for a
24    person that is having mental issues, that is in
25    restrictive housing for their future housing?  In
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4507

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 167

```
 1   other words, in what was formerly Level 6, did you
 2   have any way to assist an inmate as far as housing
 3   that was having mental issues because of the solitary
 4   nature of it?
 5        A.   Yeah.   There is actually two ways.   If the
 6   inmate we thought was suicidal or going to harm
 7   themselves, we would isolate him in an area where we
 8   could put him on a mental health watch.   And the
 9   other way, if they're just kind of dealing with
10   things like I mentioned earlier, depression and those
11   kind of things, and they were serious enough that the
12   regular treatment or the regular meeting with the
13   mental health professional wasn't working, we have an
14   area called the Alternative Placement Area.   This is
15   an area where inmates can be placed in Level 6, at
16   the time, where they can get mental health treatment,
17   including things like group treatment, until they are
18   stabilized, and then they would go back to Level 6.
19        Q.   And would you be made aware of situations
20   when that happens?
21        A.   Not from my position as Director of Adult
22   Prisons.   I usually wouldn't be made aware.   That
23   would be done at the facility level.
24        Q.   You were asked about changes in July of
25   2015, as to lifting up -- stepping down, I guess you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4508

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4509

1   would call it, on the SNM.  And then something

2   occurred in reference to Julian Romero.  Do you

3   recall that?

4        A.   I do.

5        Q.   And where was Julian Romero being housed?

6        A.   At Southern New Mexico Correctional

7   Facility.

8        Q.   And are you aware of when Southern lifted

9   the restrictions, in relationship to the Julian

10  Romero assault, when that occurred?

11       A.   It was within a couple hours.

12       Q.   The changes you were talking about -- going

13  back to the mental health issue -- would that change

14  the housing of a person?  You were talking about how,

15  if they had a mental breakdown, that you would move

16  the person?

17       A.   We would.

18       Q.   And would that be included in the offender

19  physical location history?  In other words, would the

20  move to the different part, to deal with the mental

21  issue, would that be reflected in the offender

22  physical location history?

23       A.   It would.  It would show a change of pod,

24  or that he was moved to the back of the infirmary for

25  a little bit.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4509

1       Q.   And in regard to Rudy Perez, from 2015 to

2    2016, is there any indication that he was ever moved

3    for mental health reasons?

4       A.   There is no indication on this form, no,

5    ma'am.

6       Q.   Are there other reasons that people are

7    placed at the northern facility, other than being a

8    level -- at the Level 6 for stepdown?  Do you hold

9    other types of inmates there?

10      A.   We do.  We have to place inmates that

11   Interim Level 6 pending investigation.  We house

12   inmates there who are in prehearing detention.

13   Sometimes an inmate will commit an act at their

14   particular facility that we consider so serious and

15   egregious, and egregious against public safety that

16   we feel like he needs to go to the North facility for

17   the sake of protecting the public and protecting that

18   facility.

19      Q.   And I believe you were asked by Mr. Jewkes

20   about Mr. Sanchez -- the statement about Mr. Sanchez

21   orchestrating a murder in your memo?

22      A.   Yes.

23      Q.   Could someone be orchestrating a murder and

24   not be an actual participant in the stabbing?

25           MS. FOX-YOUNG:  Your Honor, objection,

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4510

```
 1   relevance to this whole line.
 2            THE COURT:  Well, it's been asked, and it's
 3   been on the floor.  I guess everybody thought it was
 4   relevant when they were cross-examining.  Overruled.
 5       A.   That's possible, yes, ma'am.
 6       Q.   In reference to -- I'm showing you
 7   Government's Exhibit 47 --
 8            MS. BHALLA:  Your Honor, we're going to
 9   object to that exhibit because it doesn't have any
10   identifying information for our client.  I don't know
11   that that pertains to my client necessarily.  It's
12   got a handwritten note with the identification on it,
13   but --
14            THE COURT:  Well, let's see if the witness
15   can authenticate it.
16       Q.   Are you familiar, first, with that type of
17   document?
18       A.   I am.
19       Q.   And what type of document is that?
20       A.   It's from CMIS; it shows what their
21   privilege level is.
22       Q.   And when you say "their privilege level,"
23   who is it that you're talking about?
24       A.   An individual inmate.
25       Q.   Does that have a name associated with it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4511

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

```
 1          A.   It has a handwritten name.

 2               MS. ARMIJO:  Your Honor, I'm going to move

 3     for the admission of Government's Exhibit 47.

 4               THE COURT:  Is that the one that Mr. Roark

 5     is looking at?

 6               MS. ARMIJO:  Yes.

 7               THE COURT:  What is the name on it?

 8               MS. ARMIJO:  Handwritten, it says "Carlos

 9     Herrera, and there is a signature on there.

10               MS. BHALLA:  I'm going to object again.  I

11     mean --

12               THE COURT:  Do you want to voir dire the

13     witness?

14               MS. BHALLA:  Yes, Your Honor.

15                    VOIR DIRE EXAMINATION

16     BY MS. BHALLA:

17          Q.   Mr. Roark, did you write Carlos Herrera's

18     name on that document?

19          A.   I did not.

20          Q.   Is that your signature?

21          A.   No, ma'am.

22          Q.   Do you know who prepared that document?

23          A.   It's a captain, but I don't recognize the

24     signature.

25          Q.   And were you shown this document prior to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4512

```
1    today?
2         A.   Not prior to today, no.
3         Q.   When were you shown this document?
4         A.   At lunch.
5              MS. BHALLA:  Okay.  I don't think they've
6    laid a sufficient foundation, Your Honor.  I don't
7    think he has any personal knowledge of the document.
8    He can't recognize -- he didn't prepare it.  He
9    wasn't there when it was signed.  He's not sure who
10   signed it, I don't think.  Maybe I'm a little
11   confused about that.  But I don't think they've laid
12   a sufficient foundation.  We're not sure that that
13   actually belongs to Mr. Herrera.
14             THE COURT:  Well, is this a document that's
15   been produced before in discovery?
16             MS. BHALLA:  Not that I've seen, Your
17   Honor, no.
18             MS. ARMIJO:  Your Honor, they're going to
19   check.  While they're checking, I'm going to ask a
20   couple more questions about some of the defense
21   exhibits.
22   BY MS. ARMIJO:
23        Q.   In CH-D and E it has placement history for
24   Mr. Herrera; is that correct?
25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4513

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173

```
 1        Q.    Okay.  And what housing level was he?

 2        A.    He was Level 6.

 3        Q.    And this is back on what date?  And I'll

 4   show you the bottom.

 5        A.    December 12, 2014.

 6        Q.    And in looking at Government's Exhibit 44,

 7   just to compare dates, this is December 2014.  Where

 8   was he in December of 2014?  Can you tell?

 9        A.    He was at -- December of 2014, he was at

10   Southern New Mexico Correctional Facility.

11        Q.    And does Southern New Mexico Correctional

12   Facility, do they have a Level 6 program?

13        A.    They don't have a Level 6 program, no.

14        Q.    Okay.  So even though he was classified

15   Level 6, on December 12 of 2014, was he still being

16   held at a Level 4 facility?

17        A.    He was being housed at Southern New Mexico

18   Correctional Facility, and it was a Level 4.  But we

19   had all the SNM on lockdown.

20        Q.    Okay.  So -- and I guess that would be a

21   question that I have.  So even if he was at Southern,

22   he would have been treated as a Level 6 on lockdown,

23   or is that different?

24        A.    No, everyone in SNM was on lockdown.

25        Q.    Okay.  And the Level 6 start date that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4514

1    have here, were these because he was in SNM -- I'm

2    referring to CH-E -- was that because he was a SNM

3    member?

4         A.   Yes, ma'am.

5         Q.   Now, going to January of 2016, it looks

6    like he went to PNM -- "he" being Carlos Herrera?

7         A.   Yes, ma'am.

8         Q.   And then at that point, where is he housed?

9    What -- which of your facilities at PNM was he

10   housed?

11        A.   He was housed at the South facility.

12        Q.   And what is the South facility?

13        A.   That was the Level 4.  At that time, it had

14   transitioned -- it was being transitioned to the

15   Level 4s for SNM.

16        Q.   So, at least in January of 2016, based upon

17   where he was sent, and his location, what level was

18   his classification?

19        A.   He should have been Level 4, ma'am.

20        Q.   And I'm going to show you Government's

21   Exhibit 47 and 44 together.  And does it appear -- in

22   addition to the handwritten name, does it appear to

23   be consistent with that of Carlos Herrera's, given

24   where he was placed?  And if you can't tell, that's

25   fine?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4515

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 175

1          A.   It's off a little bit.  But that could have

2     been just bad mapping by the caseworker.

3          Q.   But based on Exhibit 44, in January of

4     2016, what was Mr. Herrera's classification?

5          A.   He was Level 4.

6               MS. ARMIJO:  Thank you.  No further

7     questions.

8               THE COURT:  I guess my thoughts are that

9     it's sufficiently authenticated.  There is no -- was

10    the document produced earlier?

11              MS. ARMIJO:  47?

12              THE COURT:  Yeah, was it produced earlier.

13              MS. ARMIJO:  Yes.

14              THE COURT:  It's not been a question of its

15    genuineness, I'll admit it in evidence subject to the

16    criticisms you have.  So I'll take it into account

17    when I make a ruling as to the weaknesses of the

18    document.

19              MS. BHALLA:  That's been marked as 47,

20    that's what I'm confused about.

21              MS. ARMIJO:  Yes.  Government's 47.

22              THE COURT:  So I'm going to admit it into

23    evidence.

24              Ms. Fox-Young?

25              MS. FOX-YOUNG:  Brief recross, Your Honor?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4516

```
 1                THE COURT:  Yeah.
 2                MS. FOX-YOUNG:  That's the only reason I
 3      was standing.  I don't have any objection.
 4                THE COURT:  Do you have anything further to
 5      say on the exhibit, Ms. Bhalla?
 6                MS. BHALLA:  No, Your Honor, I don't think
 7      so.  Thank you.
 8                THE COURT:  All right.  Ms. Fox-Young.
 9                        EXAMINATION
10      BY MS. FOX-YOUNG:
11           Q.   Mr. Roark, you were asked some questions
12      about a hearing that was held on September 14, 2014,
13      for Rudy Perez.  Do you remember that?
14           A.   I do.
15           Q.   It's not your testimony that Mr. Perez was
16      held, beginning in June 2015, six months -- eight
17      months after that hearing, at PNM, as a result of any
18      disciplinary violation discussed at that hearing, is
19      it?  Do you know one way or another if that September
20      2014 hearing had anything to do with Mr. Perez being
21      held at PNM in June 2015?
22           A.   I don't know, ma'am.
23           Q.   You don't know.  Have you seen any
24      documentation that would indicate that Mr. Perez was
25      held beginning in June 2015, and for a subsequent 10
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 177

 1   months, as a result of something in September 2014?

 2        A.   No, ma'am.  I don't know of anything.

 3        Q.   Okay, thank you.

 4             You talked a little bit about -- and

 5   correct me if I'm misstating your testimony -- but

 6   you talked about, at Level 6, every inmate has -- did

 7   you say a caseworker or a classification officer?

 8        A.   They're synonymous terms.

 9        Q.   And that person is an NMCD employee?

10        A.   That's correct.

11        Q.   And everybody is assigned one?

12        A.   That's correct.

13        Q.   And you said that person deals with any

14   issues aside from security that need to be addressed;

15   is that right?

16        A.   That's correct.  That's an

17   oversimplification, but yes.

18        Q.   Generalizing?

19        A.   Generalizing, yes.

20        Q.   And would that then include, getting a

21   little bit more specific, the inmate's physical

22   needs?

23        A.   No.  Other than the obligation if they saw

24   the inmate had a physical need that needed to be

25   addressed, they'd call medical.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4518

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178

```
 1        Q.   Something that was obvious?

 2        A.   Or the inmate complains, yes.

 3        Q.   Okay.  If it came to their attention?

 4        A.   Correct.

 5        Q.   And you talked about mental health needs,

 6   and that person observing any mental health needs,

 7   and potentially moving them to another area of PNM,

 8   right?

 9        A.   That wouldn't be them.  That would be the

10   mental health professional that would do that.

11        Q.   Okay.  So all that testimony about the

12   Corrections Department responding to mental health

13   needs and mental health breakdowns, and moving

14   somebody to a different place at PNM as a result of

15   mental health needs, that's not true?  Correct me.

16        A.   It is true.

17        Q.   Okay.  But that's not the classification

18   officer that does that?

19        A.   They would do it on mapping.  But what

20   happens -- I guess I should explain.  What happens is

21   if an inmate is having a mental health issue, and for

22   whatever reason, how it came to our attention, was it

23   the inmate complaints or whether we notice something

24   unusual, at that point someone intervenes, a mental

25   health professional.  They evaluate the inmate.  If
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4519

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

```
 1   they determine, hey, this inmate needs more help than
 2   I can give them in the particular unit he is in, they
 3   can do a request to place him in Alternative
 4   Placement Area in order for him to get additional
 5   therapy, additional attention to his needs.
 6        Q.   Sure.  And all I'm trying to get at is it's
 7   the classification officer who does that, right, the
 8   New Mexico Corrections Department employee?
 9        A.   The answer to that is yes and no.  The
10   classification officer knows where to place the
11   inmate, right.  But it's the mental health person who
12   says he needs to go to this unit.
13        Q.   Got it.  And the classification officer or
14   caseworker facilitates providing treatment; they
15   would get that inmate to a mental health
16   professional, right?
17        A.   Well, it doesn't necessarily have to be
18   them.  It could be a correctional officer or a unit
19   manager, anyone who comes to the attention, that
20   notices this inmate has needs.
21        Q.   Any NMCD employee?
22        A.   Yes.
23             MS. FOX-YOUNG:  No more questions, Your
24   Honor.  Thank you.
25             THE COURT:  All right.  Thank you, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4520

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4521

```
 1   Fox-Young.

 2            Ms. Armijo, any further redirect?

 3                      EXAMINATION

 4   BY MS. ARMIJO:

 5        Q.   You said unit manager.  Do inmates have

 6   contacts with unit managers as well?

 7        A.   They do.

 8        Q.   Up at PNM, how often?

 9        A.   They're supposed to make weekly rounds, but

10   they also do the committees, the review committees

11   for inmates.

12        Q.   And you indicated previously that it's

13   every half hour they're checked on?

14        A.   Every half hour a security person has to do

15   rounds.

16            MS. ARMIJO:  No further questions.

17            THE COURT:  Thank you, Ms. Armijo.

18            If I didn't make it clear, Government's

19   Exhibit 47 will be admitted into evidence.

20            All right.  Mr. Roark, you may step down.

21   Is there any reason Mr. Roark cannot be excused from

22   the proceedings?

23            MS. ARMIJO:  No, Your Honor.

24            THE COURT:  Anybody on the defense side

25   want to -- any problem with him being excused?  All
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4521

```
 1   right.  You are excused from the proceedings.  Thank

 2   you for your testimony.

 3            All right.  Ms. Armijo, does the Government

 4   have further witnesses or evidence it wishes to

 5   present on the motions to suppress?

 6            MS. ARMIJO:  No, Your Honor.

 7            THE COURT:  Thank you, Ms. Armijo.

 8            Mr. Villa, Ms. Bhalla, do the defendants

 9   have witnesses they wish to present?

10            MR. VILLA:  Your Honor, we do.  I think

11   both defendants do.  But I think we've discussed it,

12   and we'll put on the next three.

13            THE COURT:  All right.

14            MR. VILLA:  So, Your Honor, we call

15   Defendant Rudy Perez.

16            THE COURT:  Mr. Perez, if you'll come up to

17   the witness box.  Before you're seated, Ms.

18   Standridge will swear you in.

19                    RUDY PEREZ,

20       after having been first duly sworn under oath,

21       was questioned and testified as follows:

22                 DIRECT EXAMINATION

23            THE CLERK:  Please be seated and state your

24   name for the record.

25            THE DEFENDANT:  Rudy Perez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4522

```
 1              THE COURT:  Mr. Villa.
 2    BY MR. VILLA:
 3         Q.   Good afternoon, Mr. Perez.
 4         A.   Good afternoon.
 5         Q.   And you might have to get a little closer
 6    to the mic, just to make sure we hear you.  Okay?
 7         A.   All right.
 8         Q.   How old are you?
 9         A.   48; I'll be 49 next month.
10         Q.   And in February of 2016, when the
11    conversations that are at issue in this hearing took
12    place with Mr. Cordova, how old were you?
13         A.   47, I guess.
14         Q.   47?
15         A.   Um-hum.
16         Q.   How far did you go in school?
17         A.   Tenth grade.
18         Q.   Tenth grade?
19         A.   Yes.
20         Q.   Did you ever get a GED?
21         A.   No.
22         Q.   Now Mr. Perez, do you recall when you were
23    in PNM in around January, February 2016, when Mr.
24    Cordova was placed next to you?
25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4523

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4524

 1       Q.   And what cell and pod were you in at the

 2  time?

 3       A.   I was in Q pod, 101.

 4       Q.   The same pod that Mr. Cordova testified

 5  yesterday that you all were in?

 6       A.   Yes.

 7       Q.   And when Mr. Cordova was placed next to

 8  you, did he give you anything?

 9       A.   Yes.

10       Q.   What did he give you?

11       A.   Suboxone.

12       Q.   How did he give it to you?

13       A.   On a pole through the vent.

14       Q.   The vent above the desk that we saw on the

15  video?

16       A.   Yes.

17       Q.   And you said on a pole.  Are you talking

18  about what?

19       A.   Paper rolled up, call it a fishing pole,

20  fish through the vent.

21       Q.   Now, do you recall how much Suboxone he

22  gave you?

23       A.   More than a quarter.

24       Q.   When you say a quarter, a quarter of what?

25       A.   Strip.

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 4524

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4525

```
 1        Q.   And did he give you that Suboxone before he
 2   talked to you about the Javier Molina homicide?
 3        A.   Yes.
 4        Q.   Did you take that Suboxone before you
 5   talked to him about the homicide?
 6        A.   Yes.
 7        Q.   How did you feel after you took the
 8   Suboxone?
 9        A.   High.
10        Q.   You said "high"?
11        A.   Yes.
12        Q.   And how many different times did Mr.
13   Cordova give you Suboxone?
14        A.   A couple of those days that he was there.
15        Q.   So it was more than one day?
16        A.   Yes.
17        Q.   And on a particular day, did you all
18   discuss the Javier Molina homicide a couple of
19   different times?
20        A.   Yes.
21        Q.   And did he give you Suboxone more than once
22   on that day?
23        A.   Yes.
24        Q.   Okay.  So do you remember about the time of
25   day he gave you -- the first time he gave you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4525

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185 4526

```
 1   Suboxone on that particular day?

 2        A.   If I remember right, the first one was

 3   right after lunch.

 4        Q.   And was it the quarter strip?

 5        A.   Yes.

 6        Q.   When was the second one?

 7        A.   After dinnertime, right after they passed

 8   out meds.

 9        Q.   And you took that?

10        A.   Yes.

11        Q.   Now, I know the answer to this, but you

12   don't remember the specific date that that actually

13   happened?

14        A.   No, sir.

15             MR. VILLA:   May I have just a moment, Your

16   Honor?

17             THE COURT:   You may.

18   BY MR. VILLA:

19        Q.   Did you get high each time you took the

20   Suboxone?

21        A.   Yes.

22        Q.   And each time you spoke to Mr. Cordova

23   about the Javier Molina murder, were you high?

24        A.   Yes.

25        Q.   There was also testimony yesterday about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4526

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4527

```
 1    you providing Mr. Cordova some ear buds?

 2         A.   Yes.

 3         Q.   Why did you provide him the ear buds?

 4         A.   He had hooked me up, and I didn't have no

 5    money, no canteen.  So I looked out for him.  That's

 6    the only thing I had.

 7         Q.   What do you mean he hooked you up?

 8         A.   He got me high.

 9         Q.   With the Suboxone?

10         A.   Yes.

11              MR. VILLA:  That's all the questions I

12    have, Judge.

13              THE COURT:  All right.  Thank you,

14    Mr. Villa.

15              Do any of the other defendants have

16    cross-examination of Mr. Perez?

17              Does the United States have questions?

18              MR. CASTELLANO:  Yes, Your Honor.

19                        EXAMINATION

20    BY MR. CASTELLANO:

21         Q.   Good afternoon, Mr. Perez.  So you said on

22    at least one occasion he gave you Suboxone after

23    dinnertime, after your meds; is that correct?

24         A.   Yes.

25         Q.   Now, what meds were you taking?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4527

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 187

```
 1        A.   A bunch.

 2        Q.   Any of them opiates?

 3        A.   No, they don't let us have opiates there.

 4        Q.   All right.  Let's talk about your

 5   medications then, as best as you remember.  Go ahead

 6   and tell us what each of the meds was.

 7        A.   Tramadol, Gabapentin, psych meds, blood

 8   pressure medication, seizure med, diabetes

 9   medication.

10        Q.   I take it this was not the first time that

11   you've had Suboxone in prison?

12        A.   No, sir.

13        Q.   And how did the topic come up about him

14   offering Suboxone to you?

15        A.   Oh, when they brought him in that morning,

16   he talked to the homies upstairs.  And then he tells

17   them:  Who's here?"  He banged on the wall.

18             I say, "What's up?"

19             He says, "'Shadow.'"

20             I said, "What's up, fool?"

21             He says, "Nada."  He says, "You wanna

22   channel change?"

23             I said, "Hell, yeah."

24             He says, "Give me a minute."

25        Q.   So the first day -- the very first day you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4528

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 84529

```
 1    were there, he gave you drugs?

 2         A.   Yes.

 3         Q.   And that very first day is when you made

 4    incriminating statements to him?

 5         A.   I don't remember when they were done.

 6         Q.   One thing we'll have to get to the bottom

 7    of is whether you gave statements the same day that

 8    you were high.  So do you know whether that day you

 9    got high and gave statements?

10         A.   Got high every day he was there.

11         Q.   Every day?

12         A.   Pretty much.

13         Q.   Well, you told your attorney a couple of

14    times, and now you're telling us every.  So let's --

15         A.   He was only there three days, man.

16         Q.   Are you sure?

17         A.   Three days.

18         Q.   Okay.  You know the records show otherwise;

19    correct?

20         A.   Yeah.

21         Q.   So you're saying --

22         A.   The three days.

23         Q.   What do you recall about the statements you

24    gave Mr. Cordova?

25         A.   I really don't remember much.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4529

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4530

1      Q.   Now, even though you don't remember, it's

2   fair to say what you told him was pretty accurate,

3   wasn't it?

4      A.   What I was told?

5      Q.   Well, in other words, you talked about

6   giving your -- pieces of your walker to be served as

7   shanks.  Do you recall that?

8      A.   That's what they said.

9      Q.   Right.  And you've seen the transcripts?

10      A.   Yes.

11      Q.   And you've heard the recordings?

12      A.   Yes.

13      Q.   And you admitted to giving pieces of your

14   walker to be used as shanks?

15      A.   I lied.

16      Q.   Okay.  But your lie was consistent with

17   what the other evidence shows in this case; you know

18   that, right?

19      A.   I lied.

20      Q.   So you lied, but it's consistent with the

21   other evidence in this case?

22           MR. VILLA:  Objection, argumentative.

23           THE COURT:  Well, it's cross-examination.

24   Overruled.

25      Q.   In other words, how did that happen?  You

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4530

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4531

1    lied, but it's consistent with everything else we

2    know from the case?  That's what I want to get to the

3    bottom of.

4              MR. VILLA:  Same objection.

5              THE COURT:  Overruled.

6         A.   If you remember when the crime was

7    committed, alleged crime was committed, and when

8    those recordings were done, there was a whole thought

9    of he said, they said, she said, a lot of things were

10   repeated.

11        Q.   Right.  But you repeated the right things,

12   including the fact that --

13        A.   Because I was told from certain people.

14        Q.   Well, how did you lie, then, if you got it

15   right?

16        A.   No.  I was told by certain people, and I

17   repeated it.  But it was a lie.  I didn't give

18   nothing.

19        Q.   So let's back up a little bit.  You said

20   that "Red" was involved with the murder; correct?

21        A.   No.

22        Q.   You said "Blue" was involved with the

23   murder?

24        A.   No.

25        Q.   You said Mr. Sanchez, "Dan Dan," was

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                           e-mail: info@litsupport.com

DNM 4531

1    involved with the murder?

2        A.    No.

3        Q.    You know the transcripts show otherwise?

4        A.    Yes.

5        Q.    So what I'm saying is, in the transcript

6    you said these things?

7        A.    I repeated what I was told.

8        Q.    And what I'm asking is whether you said

9    that in the transcript -- let's focus on the

10   transcript, first, regardless of whether you say it's

11   a lie -- you said in the transcript that Mr.

12   Rodriguez was involved with the murder?  Yes?

13       A.    That's what the transcript says.

14       Q.    And you said on the transcript that Mr.

15   Sanchez was involved in the murder?

16       A.    I don't remember that part.

17       Q.    And you also said that "Pup" was upset

18   because this should have been done a year earlier?

19       A.    Again, I was repeating what was being said.

20       Q.    And when asked whether or not you would

21   have given up your walker pieces as shanks, you said

22   you would not have unless it was a justified move?

23       A.    That was a lie.

24       Q.    Also, when Mr. Cordova asked you about

25   people talking about you -- because there was an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4532

```
 1    indication that you might be snitching; correct?  Do

 2    you remember that?

 3         A.   Yes.

 4         Q.   And I'll show you on page 20536 of DeLeon,

 5    you indicated to him that you talked to "Pup," and he

 6    said not to worry about it, basically, because you

 7    were good, right?  Show you right here.

 8         A.   Yes.

 9         Q.   All right.  So in other words, you made a

10    conscious decision to defend your honor when other

11    people alleged that you were snitching?

12         A.   You have to.

13         Q.   Right.  And so you made a conscious

14    decision to defend yourself against those

15    allegations?

16         A.   Again, I lied.

17         Q.   So you were snitching then?

18         A.   No.

19         Q.   You were defending your honor?

20         A.   Yes.

21         Q.   And consistent with what you're telling us

22    today, you told him, "I don't know nothing, brother.

23    I didn't see nothing.  I don't know nada.  And that's

24    the way it's going to stay."

25         A.   That's the truth.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4533

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 193 4534

```
 1        Q.   Right, because that's consistent with the
 2   code, right?
 3        A.   No.  That's the truth.
 4        Q.   Well, you said it's consistent with the
 5   code in your statement here.  I'll show you in a
 6   second.  Let me ask you this also:  If you were under
 7   the influence of Suboxone, you were consciously lying
 8   to Mr. Cordova?
 9        A.   When they took me to the North, I started
10   hearing the lies and the gossip and the bullshit.  I
11   had already, you know what I mean, I've got to cover
12   my own ass.  Like I said, I lied.
13        Q.   So you consciously lied to him; you made a
14   decision to deceive Mr. Cordova?
15        A.   Anybody that asked, that's what I said.
16        Q.   But you made a conscious decision to
17   deceive Mr. Cordova?
18        A.   To protect myself.
19        Q.   But that means you did it?
20        A.   No.
21        Q.   By that I mean you deceived Mr. Cordova?
22        A.   No.  If anybody asked, that's what I said.
23   I lied.
24        Q.   And do you have a reputation for being a
25   drug user from the S?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4534

1           MR. VILLA:  Objection, Your Honor.  Outside

2    the scope.

3           THE COURT:  How is this related to the

4    scope?

5           MR. CASTELLANO:  One, it has to do whether

6    or not he truly ingested Suboxone; and two, it may

7    affect how Suboxone affected him.

8           THE COURT:  Overruled.

9      A.   Do you want to come see my arms?

10     Q.   I just want the answer.

11     A.   I'm a full-blown addict.

12     Q.   And so how much did you use close in time

13   to when Mr. Cordova gave you Suboxone?

14     A.   Pretty much gave me around a quarter strip

15   each time.

16     Q.   But you didn't inject it.  You said --

17     A.   No.

18     Q.   -- you said you wanted to show your arm.

19     A.   Yes.  I'm an addict, man.

20     Q.   The question is:  Other than what you claim

21   Mr. Cordova gave you, when was the most recent use

22   before that time?

23     A.   A while.

24     Q.   How long?

25     A.   A while.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   Two days?

 2          A.   After I got out of the hospital.

 3          Q.   Your records don't show that, you know

 4     that?

 5          A.   I got sick -- September 4 is when I had

 6     surgery.  I stayed in the hospital a year.  November,

 7     2012, I had just got back to Southern; stayed at

 8     Southern until they shipped me to the North.  And I

 9     was on pain medication pretty much the whole time.

10          Q.   What kind of medication was for the pain?

11          A.   The gabapentin, the Tramadol.

12          Q.   You also recall that, when Mr. Sanchez

13     returned from out of state, he asked you why certain

14     guys weren't charged.  Do you remember that?  This is

15     DeLeon 20550.

16          A.   Where is that at?

17          Q.   "'Dan Dan' is asking you, or not, why did

18     'Junior' and 'Creeper' get charged, but why didn't

19     'Blue' and 'Red' get charged?"  Do you remember that?

20          A.   That's what it said.

21          Q.   So you're indicating to him that you had a

22     conversation with "Dan Dan," and you're recollecting

23     that.  Do you remember that conversation?

24          A.   Yes.

25          Q.   So were you intimidated by Mr. Cordova?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4536

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4537

```
 1        A.   No.

 2        Q.   He's not intimidating, is he?

 3        A.   No.

 4        Q.   You have to speak up so she can get it.

 5        A.   No.

 6        Q.   And so he, otherwise, he didn't intimidate

 7   you into saying these things?

 8        A.   No.

 9        Q.   And yesterday you heard him say that one

10   way to get drugs from one cell to the other is

11   through the vent; correct?

12        A.   That's pretty much the main way we do it,

13   man.

14        Q.   So after hearing that yesterday, that's

15   your testimony today, after hearing what Mr. Cordova

16   said?

17             MR. VILLA:  Objection, mischaracterizing

18   argumentative.

19        A.   That's the truth.

20             THE COURT:  I don't think it's

21   argumentative.  Overruled.  I'll let you deal with

22   any inconsistency in cross.  Overruled.

23        Q.   And you knew about the paperwork on Javier

24   Molina, did you not?

25        A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4537

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4538

```
 1              MR. VILLA:  Objection, outside the scope.
 2    He's asking whether he knows about a specific fact,
 3    not about the statements.
 4              MR. CASTELLANO:  I'm showing it here on the
 5    screen, Your Honor.  There is discussion about the
 6    paperwork.
 7              MR. VILLA:  So, Your Honor, if the question
 8    is about a discussion with Mr. Cordova --
 9              THE COURT:  I think the paperwork may be
10    exceeding it.  We better stick with what Mr. Villa
11    brought out.
12              MR. CASTELLANO:  Sure, Your Honor.
13         Q.   Do you see here, Mr. Perez, when you're
14    discussing the paperwork?
15              MR. VILLA:  Objection, outside the scope.
16              THE COURT:  Sustained.  You don't have to
17    answer these questions.
18         Q.   Who is "Creeper," Mr. Perez?
19              MR. VILLA:  Objection, outside the scope.
20              MR. CASTELLANO:  Well, Your Honor, these
21    are all Mr. Perez' statements.  And so the question
22    is whether or not these were voluntarily given.  If
23    they're coherently made --
24              THE COURT:  I certainly think your
25    questions are within the scope of this motion.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4538

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 198

```
 1   don't think that they are within the scope of the

 2   direct examination.  Given he's a defendant, I'm

 3   going to guard him carefully.  And so I'll sustain

 4   the objection.  But I do note that, you know, he's

 5   leaving a lot of questions on the table.

 6            MR. VILLA:  Well, the question is who is

 7   "Creeper?"

 8            THE COURT:  I know, but I mean you're

 9   leaving a lot of questions for him.  But that's your

10   call.  But I'll sustain the objection.

11       Q.   Do you recall whether at the time of the

12   Molina murder that you were sick?

13            MR. VILLA:  Objection, outside the scope.

14            THE COURT:  Well, he brought up his health,

15   so I'll let him ask this question.  Overruled.

16       Q.   Do you recall about the time the Molina

17   murder happened, that you had been sick shortly

18   before that?

19       A.   Yes.

20       Q.   And what was the problem back then?

21       A.   I had a bowel obstruction.

22       Q.   And so, when you mentioned that to Mr.

23   Cordova, that was true.  I'll go ahead and show you

24   here on the visualizer.  It's Bates stamp 20557.  And

25   you told him, "I just got out of the hole.  I was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4539

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 199

```
 1    real sick."

 2         A.   I wasn't in the hole.  I just got out of

 3    the hospital.

 4         Q.   Okay.  Were you real sick?

 5         A.   Yes.

 6         Q.   The fact that you were sick was true, about

 7    the time of the Molina murder?

 8         A.   Yes.

 9         Q.   Can you tell the Court whether it was the

10    truth or a lie when you told Mr. Cordova that Mr.

11    Baca was not happy that the Molina murder hadn't been

12    taken care of already?

13              MR. VILLA:  Objection.

14         A.   You have to ask Billy Cordova that.

15              THE COURT:  Overruled.

16         A.   Did you hear me?

17         Q.   I did hear you.

18         A.   You have to ask Mr. Cordova that.

19         Q.   Your statement here -- this is your

20    statement, not Mr. Cordova's.  "Find out why the fuck

21    it wasn't taken care of.  Is that what 'Pup' told

22    him?  Huh, is that what" --

23         A.   Again, you would have to ask Billy Cordova,

24    because he's the one who told me that.

25         Q.   And when Mr. Cordova told you, "What did
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4540

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200 4541

```
 1    'Pup' say," your response was, "He didn't like it"?

 2         A.   Again, that's what they said.

 3         Q.   Who is they?

 4         A.   Billy Cordova.

 5         Q.   Well, you're telling Mr. Cordova that

 6    someone else told you that Mr. Baca wasn't happy?

 7         A.   Eric Duran recorded a conversation between

 8    Billy Cordova and Raviesso (phonetic), when we were

 9    in X pod.  Billy Cordova was the one telling us, when

10    I had just got there.

11         Q.   That "Pup" wasn't happy --

12         A.   And your records will prove that.

13         Q.   -- that the hit hadn't been done a year --

14         A.   No, he just said that "Pup" wasn't happy.

15         Q.   About what?

16         A.   He just said "Pup" wasn't happy about it.

17         Q.   Was it the truth or a lie when you told Mr.

18    Cordova, "No one deserves a free pass on a

19    violation"?

20         A.   Again, you should have had the first part

21    of the conversation.

22         Q.   Is it your testimony that someone should or

23    should not get a free pass on a violation of the

24    rules of the SNM?

25         A.   I might call that.  I don't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4541

```
 1        Q.   Do you know the rules of the SNM?
 2             MR. VILLA:  Objection, outside the scope.
 3             THE COURT:  Sustained.
 4        Q.   Were you lying or were you telling the
 5   truth when you discussed the members of the tabla
 6   with Mr. Cordova?
 7             MR. VILLA:  Same objection.
 8             THE COURT:  I'm going to allow these
 9   questions since he is saying some things are true and
10   some things are false.  So I'll allow this.
11   Overruled.
12        Q.   Okay.  I'll ask the question again.  So
13   once you have reviewed the transcript, this is Bates
14   stamp 20562.  Was that the truth or a lie when you
15   told Mr. Cordova, "People who were on the tabla"?
16        A.   I guess that would be on who you asked.
17        Q.   Well, we're asking you today.
18        A.   Again, I was repeating what I was told.
19        Q.   So being a member of the SNM then, you
20   didn't know who the members of the tabla were?
21        A.   Since you're pointing out this transcript,
22   it's like I told him, I wasn't involved in nothing.
23   I stayed in my room.  I had just got out of the
24   hospital.  I didn't know nothing.  I didn't care
25   about nothing.  I was just trying to get better, man.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4542

```
 1    When I say I lied, I was going by what other people
 2    said.  So whether it's true, not, I don't know.  I
 3    should have never repeated it.
 4              THE COURT:  Mr. Castellano, is this a good
 5    time for us to take our afternoon break?
 6              MR. CASTELLANO:  Sure, Your Honor.
 7              THE COURT:  All right.  We'll be in recess
 8    about 15 minutes.
 9              (The Court stood in recess.)
10              THE COURT:  All right.  Let's go on the
11    record.  Look around, make sure everybody has got an
12    attorney.  Looks like everybody does to me.
13              Ms. Jacks, you're leaving at 3:45 for a
14    flight.  All right.  Be safe going back.
15              Let me give you a little information.  Some
16    of y'all were asking Ms. Standridge what the schedule
17    was for next week.  I haven't been able to get a
18    confirmation of this from Ms. Wild, but what my
19    office back in Albuquerque is showing is that I have
20    hearings on 12/18 and 12/19.  So I'm expecting to be
21    here myself at 9:00 on Monday morning.  I'm traveling
22    back on 12/20.  And then I have hearings in the
23    afternoon at 1:30, 2:30 and 3:30 on 12/20.  So that's
24    what Ms. Standridge is showing.  So I hope that's
25    what everybody else is showing as well.  But somebody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    indicated that they thought we might be doing

 2    something on Wednesday.  But it's not on my calendar,

 3    and I haven't able to confirm it with Ms. Wild.  But

 4    it's not anything I can talk to today.

 5            MS. JACKS:  Can I ask a question?

 6            THE COURT:  You may.

 7            MS. JACKS:  When I found out about those

 8    dates, I did submit a travel request to the CJA

 9    office.  I haven't heard back yet.  I inquired this

10    morning again, and still have not heard back.  So I'm

11    just wondering, if Ms. Wild's absence --

12            THE COURT:  I couldn't tell you on that.

13    You can try to call Ms. Wild.  She's supposed to be

14    back in Albuquerque today.  I can tell you this, the

15    Fed Ex has already come today and it had no vouchers

16    in it.  It's already turned around, and I'm about to

17    open -- the Fed Ex that I sent back had no vouchers

18    in it.  So as far as on my desk, unless some have hit

19    my desk back in Albuquerque today, there is no

20    vouchers.  I'm caught up.

21            MS. JACKS:  Right.  I think this is just a

22    travel request.  I'm not sure how those are approved.

23            THE COURT:  Same way.  I approve them.

24    It's no different than any other.  So my desk here in

25    Las Cruces is clean.  I can't tell you what's on my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204

1    desk building up today.  But there won't be any Fed

2    Exes sent out today.  So I won't be back in till

3    tomorrow.  I've got to start doing some stuff at

4    12:30.  So if there is travel vouchers on my desk

5    today, I'm probably not going to get to them until

6    later in the afternoon tomorrow or tomorrow night.

7            All right.  Mr. Perez, I'll remind you

8    you're still under oath.  Mr. Castellano, if you wish

9    to continue your cross-examination of Mr. Perez, you

10   may do so at this time.

11           MR. CASTELLANO:  Thank you, Your Honor.

12           THE COURT:  Mr. Castellano.

13   BY MR. CASTELLANO:

14       Q.  Mr. Perez, are you willing to execute a

15   medical release so that we can check your

16   medications?

17           MR. VILLA:  Objection, Your Honor.

18           THE COURT:  I'll let him answer that

19   question.

20           MR. VILLA:  I mean --

21           THE COURT:  You're not bound by it.

22           MR. VILLA:  I'm sorry?

23           THE COURT:  You're not bound by it.

24           MR. VILLA:  I'm not sure if you're

25   cognizant of this.  But I just wanted to bring to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4545

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4546

```
 1   Court's attention Rule 104(d), which concerns
 2   cross-examining a defendant in a criminal case.  And
 3   it says that, "By testifying on a preliminary
 4   question, a defendant in a criminal case does not
 5   become subject to cross-examination on other issues
 6   in the case."
 7            THE COURT:  I think I've been trying very
 8   hard to toe the line there.
 9            MR. VILLA:  I think you are.  I just want
10   to bring it up because it's a little more than just
11   scope of direct kind of issues.
12            THE COURT:  No.  But -- by that I mean I'm
13   trying to protect him as much as possible.  I know
14   you're offering him for a limited purpose.  And I'm
15   trying to protect him.  But since he's brought up his
16   medical, I'll let him answer the question.  But
17   you're not necessarily bound by it if you decide it's
18   not in his interests to do so.  But you can answer
19   the question.
20       A.   No.
21       Q.   This is Government's Exhibit 16, Bates
22   stamped 20531.  So Mr. Perez, it's your testimony
23   that you lied when you said the shanks came from your
24   walker?
25       A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4546

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206 4547

1          Q.   You also lied when you told Mr. Cordova

2     that he was the only person who knew that?

3          A.   Again, I lied.

4          Q.   You also lied when you said no one else

5     knows except two other people who were there; is that

6     correct?

7          A.   Again, that was a lie.

8          Q.   Who were you lying about when you mentioned

9     the two other people?

10         A.   Like you were told yesterday and today,

11    there were rumors.  And I know Billy.  I know him

12    real good.  I lied to him.  I told him what I had to

13    tell him, to make sure it got out there.  Because I

14    know he likes to run his mouth, and he'll repeat it.

15         Q.   And actually, you told him, if he repeats

16    any of this, you're going to know, because you're the

17    only person he told that to, that was the truth?

18         A.   No.

19         Q.   Well --

20         A.   That's a lie.

21         Q.   Well, were you the only person who you told

22    this information to?

23         A.   No.

24         Q.   Okay.  So you told this information to

25    other people?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4547

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4548

```
 1            MR. VILLA:  Objection, outside the scope.

 2            THE COURT:  Well, I'll let him answer this

 3   question, but probably not much more.

 4       Q.   I'm not going to ask you about the other

 5   conversations.  What I'm asking is, whether or not

 6   you had told other people this?  Because you told him

 7   here that he is the only one who knows about it.

 8       A.   If you go back to the beginning of the

 9   transcript, he starts off when we left off the last

10   conversation in X pod.  There was two other people

11   involved in that conversation.  So, again, go back to

12   Billy Cordova and ask him who was there when we had

13   that conversation.

14       Q.   But I'm asking you, because you mention it

15   here, who were the two people?

16            MR. VILLA:  Well, Your Honor, I object to

17   that.  I think the Court said he could say yes or no

18   whether he spoke to two other people.  Who the two

19   other people were is outside the scope of direct.

20            THE COURT:  Well, let's don't ask him who

21   are the other two people.  But I will let you get the

22   number.

23       Q.   Your testimony, when you said "the feds

24   took those two people," was that the truth or a lie?

25       A.   A lie.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4548

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208 4549

1          Q.   So the feds did not take those two people,

2     whoever they were?

3          A.   Right.

4          Q.   On DeLeon 20532, you also lied when you

5     said, "I can't put work in for the family, I've got

6     to be willing to do my part"?

7          A.   Yes.

8          Q.   Here's what I was referring to earlier,

9     DeLeon 20535.  You told him, "I talked to you --

10    unintelligible -- I've been a hundred percent honest

11    with you, if somebody else came along and asked me

12    questions I wouldn't even answer one of them."  Was

13    that the truth or a lie?

14         A.   Again, sir, from X pod, we were all in that

15    same conversation.

16         Q.   Was that the truth or was it a lie?

17         A.   A lie.

18         Q.   And so you lied when you told him you were

19    being one hundred percent honest with him?

20         A.   Yes.

21         Q.   Now, when you told Mr. Perez (sic) here on

22    DeLeon 20536, "I don't know nothing, brother.  I see

23    nothing.  I don't know nada," that was actually the

24    truth, wasn't it?

25         A.   That, because I was in my room.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4549

```
 1        Q.   Right.  So you're saying that part was the

 2   truth?

 3        A.   Yes, that was.

 4        Q.   "And that's how it's going to stay"?

 5        A.   I can't tell you something I saw that I

 6   didn't see, man.

 7        Q.   Now, you say you were in your room.  Your

 8   room was in blue pod, was it not?

 9        A.   115.

10        Q.   The same pod where Javier Molina was

11   murdered?

12        A.   Yes.

13        Q.   Was that a yes?

14        A.   Yes.

15        Q.   And then, on page 20537, Mr. Cordova is

16   saying, "That's what they were saying because Jesse

17   gave the weed, the fucking paperwork to 'Spider',

18   'Spider' passed to Archie when he knew he was coming

19   down there to Cruces and then Archie gave to it

20   'Lazy.'  And then he gave it to 'Dan Dan.'"

21             And your response was, "I already know all

22   that."  Was that a lie?  You didn't really know all

23   that?

24        A.   Because of what Billy had told us in X pod.

25        Q.   So you only knew it because Billy Cordova
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 210

```
 1    told you?

 2         A.   Yes.

 3         Q.   And even though Billy Cordova was in the

 4    pod next to you, he knew more about the Molina hit

 5    than you did; is that fair to say?

 6              MR. VILLA:   Objection, outside the scope.

 7              THE COURT:   Well, I'll allow that.

 8    Overruled.

 9         Q.   You could go ahead and answer, sir.

10         A.   Yes.

11         Q.   On Bates stamp 20540, you also lied when

12    you said, "'Crocodile' had to answer for it, 'BB' had

13    to answer for it."

14         A.   Again, I was repeating what Billy had told

15    us.

16         Q.   Okay.  So why it was never done the first

17    the paperwork got down there, was a lie?

18         A.   Again, you'd have to ask Billy Cordova.

19         Q.   And even though you say in the next line

20    you heard "Pup" say they have to answer for that no

21    matter how close you are to them?

22         A.   Again, Billy had told us that.

23         Q.   So Billy told you that "Pup" said to you?

24         A.   No, I never talked to "Pup."  And as I just

25    said, sir, the records will reveal that.  I hadn't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 214552

1   talked to Mr. Baca since March 15, 2010, when I

2   paroled from Cruces.  I never seen him.  I never

3   talked to him again till they brought him back from

4   Florence.  So that was the last time I talked to him.

5        Q.   So you had lied when you said you had a

6   conversation with "Pup" and "Pup" told you that "they

7   have to answer for it no matter how close you are to

8   them"?

9        A.   Again, sir, I had not spoken to "Pup," so

10  it had to be a lie.

11       Q.   Now, you said you heard a lot of rumors

12  about what happened with Molina; correct?

13       A.   There was a whole bunch.

14       Q.   And how was it that you picked these names

15  to lie about, as opposed to other names you heard out

16  there?

17       A.   Like you said, sir, the records will

18  reveal, when DOC took me to the North, they put me in

19  X pod.  And please go look.  And you tell me where I

20  was at.  And you can answer your own question.

21  That's how I knew, and I found out, is that, you know

22  what I mean?

23       Q.   But that wasn't the question, sir.  The

24  question was:  How did you know to pick these names

25  versus other names that you heard?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4552

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212

```
 1        A.   Because those are the names that we were
 2   told.
 3        Q.   You said you heard a bunch of rumors about
 4   a bunch of names.
 5        A.   Yes.
 6        Q.   Okay.  But for some reason, you decided to
 7   pick these names.
 8        A.   After a while, you kind of figure out
 9   what's BS, you know what I mean?  And Billy had told
10   us a whole bunch of BS.
11        Q.   Could you just have fed back to him the
12   same BS he gave you about the names?
13        A.   If you go back to the beginning of the
14   recording, where he comes on and he says, "Do you
15   remember what you were telling me', because that was
16   a conversation we were all having in X pod, when he
17   said, they said, she said.
18        Q.   So in other words, you were just repeating
19   back stories that Billy Cordova told you?
20        A.   That's what I said.  Now, knowing what I
21   know today, they were lies.
22        Q.   How do you know they're lies?
23        A.   I didn't give nobody nothing.  I don't know
24   nothing came from my walker, because they don't have
25   my walker so we can test the material that they say
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4553

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4554

```
 1   came from my walker, sir.
 2        Q.   We're talking about other lies here, as
 3   well, sir.  I mean, you said you lied that "Red" was
 4   involved, and "Blue" was involved?
 5        A.   I don't know none of that.
 6        Q.   You know they pled guilty to it?
 7        A.   Now, because you gave us our tablets.  I
 8   only saw what I saw.
 9        Q.   You didn't know that he had pled guilty?
10        A.   No, I did not.
11        Q.   Or that Mr. Martinez had pled guilty?
12             MR. VILLA:  Objection, Your Honor.  This is
13   getting outside the scope, whether these guys pled
14   guilty.
15             THE COURT:  Sustained.
16        Q.   Now, once again, you lied about the
17   paperwork being there the year before; correct?
18        A.   I wasn't there, so I don't know.  Again,
19   I'm just going by what we were told.
20        Q.   And you lied about one of the dudes being
21   less than a year to the house?
22             MR. VILLA:  Object to the
23   mischaracterization.  He hadn't said that he lied.
24   In some of these questions he lied and some of the
25   questions he's saying he's repeating what he's been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4554

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 214

```
 1   told.
 2            THE COURT:  Well, I'll let you work on that
 3   on redirect.  Overruled.
 4       Q.   Okay.  I'll rephrase it, Mr. Perez.  Was it
 5   sure or not that "one dude was less than year to the
 6   house"?
 7       A.   Who was that?
 8       Q.   I don't know.
 9       A.   I don't know who it was.
10       Q.   How about "Red," "Red" was only two years
11   to the house.  You know who "Red" is?
12       A.   I knew he was less than four or five, yeah.
13       Q.   So that was kind of true, what you told Mr.
14   Cordova?
15       A.   That's -- four or five is a whole lot
16   different than one.
17       Q.   Okay.  So you're still lying?
18       A.   I had to, wouldn't you say?
19       Q.   And then "Blue" was just a couple of years
20   to the house.  Was that true or was that false?
21       A.   I don't know how much time he was doing or
22   what.  I mean, I just met the guy.
23       Q.   Was it true or was it a lie when you told
24   Mr. Cordova you gave him your pin number?
25       A.   Check your records.  I gave him the phone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4555

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 215 4556

```
1    call, because Wendy Perez had came through
2    complaining about his pin number.  She says is
3    somebody using your pin at the South?  He bitched and
4    complained and cried.  I said, "Look, dog, who you
5    been calling?"
6              He says, "My mom."
7         Q.  So that was the truth?
8         A.  Yes.
9         Q.  That's all I'm asking.  Is it true or is it
10   false?  It's true, right?
11        A.  I did give him my pin.
12        Q.  Now, here, you're talking about SNM
13   leadership here.  And was it really the truth or a
14   lie when you said, "They let their addiction cloud
15   their mind to make the right calls"?
16        A.  That was an opinion.
17        Q.  Okay.  Is it your opinion that they have
18   let their addictions cloud their minds?
19             MR. VILLA:  Objection, outside the scope,
20   what his opinion is allegedly about SNM leadership.
21             THE COURT:  I'll let you ask him if his
22   statements are true or false, but I think I'll
23   sustain that objection.
24        Q.  Okay.  You heard the Judge then.
25             THE COURT:  You don't need to answer that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 216

```
 1        Q.   So the question is, is that statement true
 2   or false, based on your opinion?
 3        A.   False now.
 4        Q.   It's false now?
 5        A.   Now, that I know everything.
 6        Q.   Okay.  And your statement on DeLeon 20554,
 7   "The other vatos should have already taken care of
 8   them the year before"?
 9        A.   Again repeating what Cordova had told us.
10        Q.   What did he tell you about who those vatos
11   were?
12             MR. VILLA:  Objection, outside the scope.
13             THE COURT:  Sustained.
14        Q.   So let me ask you this, Mr. Perez:  You
15   said for every single one of these conversations you
16   were under the influence of Suboxone; is that
17   correct?
18        A.   Pretty much.
19        Q.   How were you able to remember all the stuff
20   that Billy Cordova told you under the influence of
21   drugs?
22        A.   You know, when your life is pretty much,
23   you know what I mean, when I was hearing rumors, I
24   had plenty of time to think about it, man.  I was
25   scared.  I couldn't fight.  I couldn't even walk.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4557

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4558

```
 1    I made sure.
 2         Q.   I'm not sure I understand.  You made sure
 3    what?
 4         A.   I lied to Billy to make, because like I
 5    told you, Billy -- everybody, anybody that knows
 6    Billy will tell you, he has a big mouth, he repeats
 7    it.  I figure:  Tell him that, he'll go repeat it.
 8         Q.   But the question is how were you able to
 9    remember all these details under the influence?
10    That's the question.
11              MR. VILLA:  Objection, asked and answered.
12              THE COURT:  Overruled.  You need to answer
13    that question.
14         A.   Pretty much from the whole conversation we
15    were having in X pod.
16         Q.   So even though you were under the influence
17    of Suboxone, you remembered everything that's on
18    these pages?
19         A.   Not everything.
20         Q.   Well, you were able to -- well, you told
21    him these things?
22         A.   Last night, when I went back to the jail,
23    the same papers you're looking at, I went through the
24    tablet, started looking and going through, because I
25    didn't remember half the shit that was said.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4558

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4559

```
 1        Q.   I'm not asking --
 2        A.   I still don't remember most of it.  I'm
 3   only going by what I read on the tablet, and what you
 4   read on the paper.
 5        Q.   I'm not asking about your recollection
 6   today.  I'm asking about your recollection when you
 7   gave the statements to Mr. Cordova.
 8        A.   Go over the calls, and ask Billy Cordova
 9   why he kept turning it on and off.  There is a lot of
10   the conversation that he didn't record.  And I wonder
11   why?  Have you ever thought about that, man?
12        Q.   Sir, I'm wondering why you're not answering
13   the question.  That's what I'm wondering.
14        A.   Call Mr. Cordova and ask him.
15        Q.   Mr. Cordova is not here, sir.
16        A.   Go get him another warrant, bring him back.
17        Q.   The question is about your memory, sir?
18        A.   Bring Billy Cordova back and ask him about
19   his memory and why he didn't record all the
20   conversations that was being had that day.
21        Q.   What I'm hearing you say is that you are
22   referring to answer the question.
23        A.   I don't know.
24        Q.   If you're going to refuse to answer the
25   question, I'll just move on, so just tell me.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4559

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4560

```
 1        A.    I don't remember.

 2        Q.    Was it the truth or a lie when you said,

 3   "No matter what the fuck we do, do not let the

 4   motherfucker out of the door, right or wrong"?

 5        A.    Again, that's opinion.

 6        Q.    Okay.

 7        A.    Because, if you remember, when it's done,

 8   was done, a lot of he said, they said, she said.  My

 9   opinion.

10        Q.    Your opinion was that they shouldn't have

11   let him out of the cell?

12             MR. VILLA:  Objection to what his opinion

13   actually was.  It's outside the scope.

14             THE COURT:  Well, he's brought up his

15   opinion.  He said this is his opinion.  I think Mr.

16   Castellano has a right to figure out what his opinion

17   is.  Overruled.

18        A.    That's my opinion.

19        Q.    But what I'm asking is your opinion is

20   about letting someone out of the cell for a hit?

21        A.    Again, you'd have to hear the whole

22   conversation.

23        Q.    Okay.  Let's continue with the

24   conversation.  Okay.  "They didn't have the fucking

25   door.  He's running down the steps, down the steps."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4560

1        A.    Again, I'm repeating what we were told.

2        Q.    You were being told what?

3        A.    Billy was telling us what had happened.  I

4    didn't know what the hell had happened.

5        Q.    So, in other words, he told you how the hit

6    went down on Molina?

7        A.    I'm telling you, he knows more about it

8    than I did at the time.

9        Q.    But we're talking about Molina here, right?

10       A.    That was part of the conversation, what he

11   was telling us.

12       Q.    Right.  Including the fact that he came out

13   running, referring to Molina?

14       A.    When Acee catches Eric Duran, you can ask

15   Eric Duran, because he's the one that told us that

16   part.

17       Q.    It's your turn to testify today, Mr. Perez,

18   so I need to get this information from you.

19       A.    I'm just letting you know, sir.  When you

20   catch Eric Duran, you can ask him, because when he

21   was recording that conversation between the three of

22   us, Eric Duran was telling us this and that.

23       Q.    And what you're talking about here, based

24   on what other people told you is, about the Molina --

25       A.    What we were told.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4561

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221

```
 1         Q.    About the Molina murder?

 2         A.    Yes.  I don't know what's true and what's

 3    not.  I was just repeating what we were told.

 4         Q.    Okay.  And you don't know whether it's true

 5    or not whether or not this "happened in front of the

 6    camera, and everything"?

 7         A.    Again, just going by what they were saying.

 8         Q.    And they also told you then that someone

 9    was yelling, "Get him, get him, get him"?

10         A.    Yes.

11         Q.    And they also told you that "Dan Dan" was

12    supposed to get rid of the fierros?

13         A.    That was what Billy had said.

14         Q.    And fierros are shanks?

15         A.    Depending on who you ask.

16         Q.    You gave a statement here, where you say --

17    this is DeLeon 20566 -- "How did Alex or 'Lazy' let

18    vatos stay in that pod knowing that 'Lazy" read the

19    discovery himself."  Did someone else tell you that

20    "Lazy," or Mr. Herrera, had read the discovery?

21         A.    That's what Billy was telling us.  That's

22    why I say, what is a lie, true?  Nobody knows.  You'd

23    have to ask Billy Cordova.

24         Q.    Is this the truth or a lie or something

25    that someone else told you, "Somebody knew the truth
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224563

1    about 'Creeper' beforehand, that's what they made him

2    do what he did, do you know what I mean"?

3         A.   That came out of "Creeper"'s mouth.

4         Q.   What came out of the "Creeper"'s mouth?   I

5    didn't understand that.  Someone knew the truth about

6    "Creeper"?

7         A.   You'd have to ask "Creeper."

8         Q.   Do you remember a conversation you had with

9    Mr. Cordova about Mr. Baca going to administration

10   about getting moved back?

11        A.   I didn't know nothing about that until Eric

12   Duran and them were telling us about it.

13        Q.   Okay.  Well, was it a lie or was it the

14   truth when you said, "'Pup' should have known all

15   about that brother when he was there, but the dope

16   got the best of him over there too"?

17        A.   Again, that's opinion.

18        Q.   Was it a truth or a lie when you responded

19   to -- when you said, "Yeah," to Billy's question

20   about remembering what happened to "Pancho" and

21   "Looney" in Cruces, did you really remember that,

22   what happened to those guys?  Or did you lie?

23        A.   Which part?

24        Q.   All right.  "Yeah, but see, they're not

25   bringing him for that shit with 'Pancho' and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4563

1    'Looney', remember that, remember that shit with

2    'Pancho' and 'Looney' in Cruces?"

3           And your response is, "Yeah"?

4       A.   I did remember that.  I remember the

5    situation.  Don't know nothing about it.  But I

6    remember something happened.

7       Q.   So when Mr. Cordova says, "Dawg, you the

8    one that called that Billy.  You see so they might be

9    getting him for that"?

10      A.   Repeat that again.

11      Q.   Right there he's talking about who called

12   the hit on Castillo and Garza.  So right here you're

13   talking about the "Pancho" and "Looney" murders in

14   2001.  And you say that you recall that?

15      A.   Right before that he says, "Billy" -- "I

16   said old school, you know what I mean?"  So I don't

17   know nothing about that.  You'd have to ask, again,

18   Billy Cordova for that.  I wasn't even in the system

19   back then.

20      Q.   And then, when he asked you, Billy, "Called

21   that right?  'Looney' and 'Pancho' after that, they

22   shut us down."

23           And your response was, "Yeah"?

24      A.   Again, that's when we got hurt.  Is it the

25   truth or a lie?  Who knows?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224565

```
 1        Q.   On Bates stamp 20565, was this a truth or a
 2   lie when you told Mr. Cordova, "I tell you dog, I'm
 3   from the old school.  I got schooled right, homes"?
 4        A.   My opinion.
 5        Q.   So in your opinion, you got schooled right?
 6        A.   My opinion.
 7             MR. CASTELLANO:  May I have a moment, Your
 8   Honor?
 9             THE COURT:  You may.
10             MR. CASTELLANO:  Pass the witness, Your
11   Honor.
12             THE COURT:  Thank you, Mr. Castellano.
13             Any other defendants have cross-examination
14   or redirect of -- cross or redirect of Mr. Perez?
15             All right.  Mr. Villa, if you wish to
16   conduct redirect of Mr. Perez, you may do so at this
17   time.
18             MR. VILLA:  Thank you, Your Honor.
19             THE COURT:  Mr. Villa.
20                    REDIRECT EXAMINATION
21   BY MR. VILLA:
22        Q.   Mr. Perez, during this time period when Mr.
23   Cordova was giving you Suboxone, were you taking any
24   other illegal drugs?
25        A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4565

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225566

```
1          Q.   You were taking the medications that you
2     testified about on cross-examination.  And those
3     medications came from the medical folks at the
4     prison?
5          A.   Yes.
6          Q.   You weren't taking any other -- well, let
7     me ask you this:  You weren't taking any other form
8     of illegal drugs besides Suboxone?
9          A.   No.
10         Q.   And when you took the Suboxone that Billy
11    gave you, how did you ingest it?
12         A.   Put it in a spoon, broke it down, swallowed
13    it.
14         Q.   Is that how you did it every time?
15         A.   Yes.
16         Q.   I think Mr. Castellano asked if you
17    injected it.  You did not inject it?
18         A.   No.
19         Q.   You remember the conversation with Mr.
20    Castellano about how you knew Billy would run his
21    mouth and he would talk a lot, and so that's why you
22    were talking to him.  Why did you want Billy to talk
23    a lot about what the two of you were talking about?
24         A.   To stop the rumors.
25         Q.   Which rumors?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224567

```
 1        A.    People were saying that I said this or
 2   that.
 3        Q.    Why did you want the rumors stopped?
 4        A.    Because I don't want to get hurt.
 5              MR. VILLA:  Just a moment, Your Honor.
 6              THE COURT:  You may.
 7              MR. VILLA:  No further questions.
 8              THE COURT:  All right.  Thank you,
 9   Mr. Villa.
10              All right.  Mr. Perez, you step down.
11   Thank you for your testimony.
12              All right.  Mr. Villa, does Mr. Perez have
13   further witnesses or evidence he wishes to present?
14              MR. VILLA:  We do, Your Honor.
15              MS. FOX-YOUNG:  Your Honor, Mr. Perez calls
16   Dr. Edward French.
17              THE COURT:  Dr. French, if you'll come up
18   and stand next to the witness box on my right, your
19   left.  Before you're seated, my courtroom deputy, Ms.
20   Standridge, will swear you in.
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4567

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227568

```
 1                         EDWARD FRENCH,

 2          after having been first duly sworn under oath,

 3          was questioned and testified as follows:

 4                       DIRECT EXAMINATION

 5              THE CLERK:  Please be seated.  State your

 6      name, and spell it for the record.

 7              THE WITNESS:  Edward French, F-R-E-N-C-H.

 8              THE COURT:  Dr. French.  Ms. Fox-Young.

 9      BY MS. FOX-YOUNG:

10          Q.   Good afternoon, Dr. French.

11          A.   Good afternoon.

12          Q.   Can you tell the Court what your profession

13      is?

14          A.   I'm a professor of pharmacology at the

15      University of Arizona College of Medicine.

16          Q.   How long have you been doing that?

17          A.   At the University of Arizona since 1988.

18          Q.   And did you work in that field before 1988?

19          A.   Yes.

20          Q.   Where?

21          A.   I got my doctorate degree in pharmacology

22      from UCLA in 1976.  And then, from there, I did three

23      years of what we call post-doctoral research at the

24      Salk Institute, which was a behavioral pharmacology

25      lab.  And from there, went to the Max Planck
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4568

 1    Institute of Psychiatry in Munich, Germany, for an

 2    additional year of research.  And then to the

 3    University of Maryland, at Baltimore School of

 4    Medicine, from '80 to '88.

 5         Q.   You're aware that you've been proffered as

 6    an expert to testify in this case?

 7         A.   Yes, I have.

 8         Q.   And the areas are for expertise in

 9    pharmacology?

10         A.   Yes.

11         Q.   Do you have any particular background or

12    experience in toxicology?

13         A.   We, in pharmacology, think of everything as

14    "a dose."  So everything can become a toxic substance

15    if there is enough of it around.

16         Q.   Okay.  And also in neuroscience?

17         A.   Yes.

18         Q.   Tell me about that.

19         A.   Well, my interest is in drugs, and how they

20    affect brain and behavior.  So I'd have to know about

21    the connections of the brain and the way that

22    chemicals get moved so that we can process

23    information and evaluate the world we live in.

24         Q.   Thank you, Dr. French.

25              MS. FOX-YOUNG:  Your Honor, I'm not going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4569

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229570

```
 1   to go through a complete detail of Dr. French's
 2   background and experience, unless the Government
 3   wants to challenge him for purposes of this hearing,
 4   which I know with our previous expert the Government
 5   didn't have an issue.
 6             THE COURT:  Do you have any problem with
 7   Dr. French offering opinion testimony?
 8             MS. ARMIJO:  Do you have his CV as an
 9   exhibit?
10             MS. FOX-YOUNG:  Your Honor, we have
11   tendered that as Document 1052-1.  It's in the
12   record.  We filed an expert disclosure back in the
13   spring, and then we supplemented.  So it's all
14   been -- the Government has been provided with all
15   that.
16             MS. ARMIJO:  I was just saying for purposes
17   of the hearing today.  But I'm not questioning his
18   credentials.  I just wanted to see if they had one
19   here today.
20             THE COURT:  All right.  So you don't have
21   any problem with him offering opinion testimony?
22             MS. ARMIJO:  No, Your Honor.
23             THE COURT:  Anybody else?  All right.  So
24   the Court will allow Dr. French to offer opinion
25   testimony.  What is the specific area?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4570

```
 1            MS. FOX-YOUNG:  Dr. French -- we'd like
 2    Dr. French to offer opinion testimony in the areas of
 3    pharmacology, toxicology, and neuroscience for
 4    purposes of this hearing.
 5            THE COURT:  All right.  Without any
 6    objection, then, the Court will allow opinion
 7    testimony in those areas.
 8    BY MS. FOX-YOUNG:
 9        Q.  Dr. French, did you review any materials
10    prior to coming to testify at this hearing?
11        A.  Yes, I did.  Several hundred pages that you
12    sent to me, which were physician directions or -- I
13    forgot the correct term -- physician notes -- and
14    medication records.
15        Q.  Okay.  Are they the medication
16    administration records for Rudy Perez?
17        A.  Yes, they are.
18        Q.  And do you know if they cover the time
19    period -- if they included the time period of
20    February 2016?
21        A.  Yes, 2016, back many years.
22        Q.  Okay.  And are you aware of a substance
23    that -- I think you've been here part of the day and
24    heard some of the testimony.
25        A.  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4571

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4572

```
 1        Q.    Are you aware -- do you have any
 2   familiarity with the substance called Suboxone?
 3        A.    Yes, I do.
 4        Q.    That's been described today?
 5        A.    Yes.
 6        Q.    Tell me what the composition of Suboxone
 7   is.
 8        A.    Suboxone is a combination medication.  It
 9   has an active ingredient, a very, very potent active
10   ingredient called buprenorphine, and also it contains
11   a substance called naloxone.  And if we've been
12   listening to the news, we know that naloxone is also
13   the name to Narcan, which is a opiate antagonist.
14        Q.    And is Suboxone a drug that is approved by
15   the FDA?
16        A.    Yes, it was approved in, I believe 2002, to
17   be used to help maintenance of opiate dependence.
18        Q.    And you've heard testimony -- and maybe you
19   know otherwise -- that it is used by individuals to
20   get high, is it not?
21        A.    Sure.  It's an opiate.
22        Q.    Okay.  Can you tell me -- can you compare
23   it to any other opiates?  Is it similar to any other
24   opiates you've studied?
25        A.    It's very different in many ways.  Similar
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4572

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 232 4573

1   in some ways, but different in many other ways.  If

2   you'll bear with me, I'll try to explain the

3   pharmacology of it a little bit.  So when we think of

4   opiates, they act on receptors in our brain, and also

5   other parts of our body, but in our brain they act on

6   a particular receptor.  And we have substances like

7   morphine, heroin, methadone, which we call full

8   agonists.  In other words, they occupy that receptor

9   to do what it's going to be doing.

10        Now, buprenorphine is a little bit

11   different.  It acts on that same receptor, but it

12   doesn't have the same bang for the buck.  It does

13   certain things well.  It can treat pain.  People can

14   get high with it.  But there is a certain dose

15   limitation; in other words, if you keep pushing the

16   dose, keep taking more of it, you don't get any

17   bigger effect, which is not the same case with

18   morphine or heroin or methadone.

19       Q.   Other than the dosage difference, can you

20   compare it in any way to morphine for me?

21       A.   Well, yes.  So morphine, we would call

22   morphine a full opiate agonist.  We would call

23   buprenorphine a partial opiate agonist.  So it has a

24   ceiling effect -- morphine doesn't have a ceiling

25   effect on the system, but buprenorphine does.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4573

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 234

1      Q.   Would you classify Suboxone as being in the

2   family of morphine-like drugs, or is it in a

3   different family of drugs?  How could you

4   characterize it?

5      A.   It's an opioid.  So it's certainly in that

6   family.  But it's not a drug, I think, that we would

7   see being abused quite a bit because of that ceiling

8   effect.  In other words, people abuse these

9   substances because they can take more of it and get

10  higher and higher.  But buprenorphine, which is in

11  Suboxone, the more you take, you won't get much

12  higher.

13     Q.   Okay.  So you reach a point, you get high

14  and then it stops?

15     A.   Right.

16     Q.   And can you compare it to morphine in terms

17  of its strength?

18     A.   Yes.  So, when it comes to analgesia, in

19  other words, to relieve pain, it is about 25 -- or

20  when it comes to the action of the opiate receptor,

21  it's about 25 times more potent, binding to that

22  opiate receptor.

23     Q.   Okay.  So is it fair to say it's a potent

24  drug, has a ceiling effect, but it is a potent drug

25  that can get you pretty high?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4574

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4575

1        A.   It can get you high, yeah.  And let me -- I

2   want to explain something, so -- because it's

3   confusing when you talk about partial agonist and

4   full agonist.  So we all have heard about Narcan, how

5   Narcan can be used to reverse a heroin overdose.  So

6   Narcan has a lot of affinity for the opiate receptor,

7   but it doesn't produce any opiate effects.

8            So buprenorphine is between what we think

9   of like naloxone and morphine.

10       Q.   Okay.  So is it -- tell me what that has to

11  do with its strength relative to morphine for the

12  person ingesting it.

13       A.   It will produce analgesia like morphine,

14  but there is, again, that limitation to how much

15  analgesia you can get with it.

16       Q.   Okay.  And I think you heard testimony a

17  little bit earlier about, and you looked at the

18  records that Mr. Perez, in February 2016, was

19  prescribed Tramadol.  Do you recall that?

20       A.   Yes.

21       Q.   And also prescribed gabapentin?

22       A.   Yes.

23       Q.   Do you have an opinion as to whether or not

24  taking tramadol or taking gabapentin would affect the

25  efficacy of Suboxone, in terms of getting you high.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4575

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4576

```
 1    Is my question clear?
 2         A.   Yes.
 3              So let me start with the gabapentin,
 4    because gabapentin has no affinity for opiate
 5    receptors.  So we can just put gabapentin aside.
 6    It's used for pain, but it doesn't have an opiate
 7    action.
 8         Q.   So it would not interfere with getting high
 9    and using Suboxone?
10         A.   Correct.
11         Q.   Okay.
12         A.   Now, tramadol is a synthetic opiate, which
13    is used for pain relief.  It's not as potent, for
14    example, as morphine.  And so, if tramadol were on
15    board, let's say, and you were to take Suboxone which
16    has buprenorphine in it, that buprenorphine just
17    overtakes the tramadol.
18         Q.   Okay.  And so, in layman's terms, if I took
19    tramadol, and I also took Suboxone, I would still get
20    high from the Suboxone?  It would sort of override?
21         A.   Yes.
22         Q.   Or you said overtake?
23         A.   Yes.
24         Q.   You talked about the analgesic effects of
25    Suboxone?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4576

```
 1        A.   Yes.
 2        Q.   And you talked about, in layman's terms,
 3   Suboxone can get a person high?
 4        A.   Yes.
 5        Q.   Is there a technical term for that?  Under
 6   the influence?
 7        A.   Well, there is a word for a high.  A high
 8   can be what we call euphoric.  So euphoria would be a
 9   pleasurable sensation, which is what people think of
10   when they think of a high.
11        Q.   And also it can reduce pain?
12        A.   Yes, it can.
13        Q.   Does Suboxone have any other effects on a
14   user?
15        A.   Well, it will bind the opiate receptors.
16   But for some reason, there are certain parts of the
17   brain that don't respond as well to Suboxone as they
18   do to morphine.
19             And the great thing about Suboxone, in a
20   sense, is that ceiling effect.  It's really -- it's
21   pretty hard to kill yourself with Suboxone in a
22   sense, because the breathing, the respiratory
23   inhibitions that morphine produces, which takes our
24   breath away; that's what kills people, is that
25   morphine stops us from breathing.  There is a ceiling
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 237

1    effect with Suboxone so you don't get that big

2    depression of breathing.

3         Q.   So your breathing wouldn't slow as much in

4    taking Suboxone?

5         A.   Yes.  Probably not by dose, yes.

6         Q.   And what I'm trying to get at as well, are

7    there any other effects or side effects of taking

8    Suboxone for a user, that you know of, or have

9    encountered?

10        A.   Oh, sure.  There are side effects that are

11   in some ways similar to other opiate side effects.

12   Some people will get sleepy.  Some people complain of

13   dizziness.  And of course, if you start to depress

14   the central nervous system, which is what these drugs

15   are, they're depressants, you get a diminution in a

16   person's ability to make proper judgments or to think

17   things through.

18        Q.   So it can affect cognition.

19        A.   Yes.

20        Q.   Can it cause sedation?

21        A.   Yes.

22        Q.   And confusion?

23        A.   Yes.

24        Q.   Can it cause a change in the level of

25   consciousness?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4578

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 234579

```
 1          A.   That's a little bit tricky, because I think
 2     of these drugs, if they're causing a person to be
 3     high, and they're causing it because they're
 4     inhibiting our brain, then I would think that it is
 5     changing our level of consciousness.  That's how I
 6     would look at it.  In other words, you're just not in
 7     the game, you're not one hundred percent when you're
 8     high.
 9          Q.   So Suboxone can cause alterations in
10     judgment?
11          A.   Yes.
12          Q.   Changes in level of consciousness?
13          A.   Yes.
14          Q.   Sedation?  Confusion?
15          A.   Yes.
16          Q.   I think you said weakness?
17          A.   I didn't say weakness.
18          Q.   Can it cause weakness?
19          A.   I would think it could cause some weakness,
20     sure, I would think so.
21          Q.   Are there any other effects that you know
22     of?
23          A.   Well, it can maybe cause itching, because
24     opiates cause people to itch.  Maybe reduce blood
25     pressure, because opiates have a central nervous
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 239
4580

```
 1    system depressant effect, so maybe blood pressure
 2    could go down.  There are probably, you know, a
 3    laundry list of side effects that have been reported.
 4            MS. FOX-YOUNG:  Thank you, Your Honor.
 5    I'll pass the witness.
 6            THE COURT:  Thank you, Ms. Fox-Young.
 7            Any other defendants want to cross-examine
 8    Dr. French?
 9            All right.  Ms. Armijo, do you wish to
10    cross-examine Dr. French?
11            MS. ARMIJO:  Thank you, Your Honor.
12                       EXAMINATION
13    BY MS. ARMIJO:
14        Q.   So, Dr. French, you're a Wild Cat?
15        A.   Yes, more or less.
16        Q.   I am, too.
17        A.   But they're not doing very well.
18        Q.   That's okay.  It's early in the season.
19            All right.  Now, in looking at your notice,
20    not the one defense has provided for you.  Sorry.  It
21    indicates that you are going to talk about drugs and
22    everything.  And it says your opinion is based on the
23    review of the defendant's medical records, including
24    medication administration records, as well as
25    information provided by his health care providers,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4580

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4581

 1    other witnesses to Mr. Perez' state at the relevant

 2    time periods, and information provided by Mr. Perez'

 3    defense team.  Is that all correct?

 4         A.   I believe so.  There was a third thing in

 5    there, I wasn't really sure.  Say the third thing

 6    again.

 7         Q.   Okay.  Well, I guess you came and you gave

 8    an expert opinion --

 9         A.   Right.

10         Q.   -- on Suboxone and other things?

11         A.   Right.

12         Q.   And I believe you were asked by defense

13    counsel, and you said that you looked at his medical

14    records?

15         A.   Correct.  Those are the physician

16    instructions that were provided.

17         Q.   Okay.  But you're basing your opinion on a

18    lot more, based upon this notice; correct?

19         A.   Well, I'm basing my opinion that I know

20    that these drugs were used, and I know what these

21    drugs do.  So I guess that's what I'm basing my

22    opinion on.

23         Q.   Okay.  Were you provided with information

24    from his health care providers?

25         A.   What was in the physician records that were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4581

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

1    given to me.

2         Q.   And did you bring those with you today?

3         A.   They're in my briefcase, yes.

4         Q.   Would you mind allowing the prosecution

5    team to look at that?

6         A.   No.

7              MS. FOX-YOUNG:  Your Honor, these have all

8    been disclosed to the Government.

9              And I'll just note that this notice is for

10   trial as well as for this hearing.  And so I think

11   the Government knows that it's broader, and the

12   opinions are broader than subject --

13             THE COURT:  Well, if he's got the materials

14   with him, he can show them to them.  But --

15        Q.   Are you also basing your opinion today --

16   and we also talked about the records -- on:  It says

17   other witnesses to Mr. Perez' state at relevant time

18   periods.  Are you basing anything that you testified

19   today based upon other witnesses to Mr. Perez' state

20   at relevant time periods?

21        A.   No.  I don't have any documentation about

22   what other witnesses said.

23        Q.   Okay.  And it also says, "and information

24   provided by Mr. Perez' defense team."

25        A.   Yes.  I have -- there is a couple of blurbs

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4582

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4583

1    from the defense attorneys about kind of the

2    timeframe when things were happening.

3         Q.   Okay.  And did you use that for your

4    opinion?

5         A.   No, I didn't use it for my opinion.  I

6    just -- I'm going to try to explain this in a simple

7    way.

8              So I was given a timeframe, and I was asked

9    to look at the medication records.  And so, when I

10   looked at the medication records, I tied it in to the

11   events that was in the timeframe.  In other words,

12   there was an event in 2014, I believe in March of

13   2014, and then there was the event in 2016.  So I

14   looked at the medication records that kind of like

15   book-ended those dates.

16        Q.   And you talked a lot about Suboxone use;

17   correct?

18        A.   Yes.

19        Q.   Does anything in those medical records --

20   and did you get the medical records?  I'm sorry.

21             MR. VILLA:  Yes, I have them.

22             MS. ARMIJO:  Could he have them?

23             MR. VILLA:  Could I let Dr. French look

24   through his own stuff?

25        A.   What do I do?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4583

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4584

```
 1              MS. ARMIJO:  I was going to have -- for the
 2    speed of things, I was going to have my co-counsel
 3    look those over for me.  And I believe Mr. Beck is
 4    going to be looking those over for me.
 5         Q.   Now, you talked a lot about Suboxone;
 6    correct?
 7         A.   Yes.
 8         Q.   Do any of those medical records have any
 9    indication that Mr. Perez took Suboxone?
10         A.   No.
11         Q.   So what are you basing your opinion on, as
12    far as -- well, strike that.  Is it your opinion that
13    Mr. Perez took Suboxone?
14         A.   It is my opinion.
15         Q.   Okay.  What are you basing that on?
16         A.   Oh, I'm basing it first on the interactions
17    that I had with the defense attorneys that they had
18    brought this up, that Suboxone was involved.  And
19    then I sat in the courtroom today and I heard a lot
20    about it.
21         Q.   Okay.  Well, let's get -- if you're basing
22    your opinion that he was on Suboxone by what the
23    defense attorneys told you, what did they tell you?
24         A.   That Suboxone was involved.
25         Q.   Okay.  Other than what the defense team has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 4584

```
 1    told you -- and I'm assuming what you're talking
 2    about with Mr. Perez' testimony -- do you have any
 3    other independent proof that Suboxone was -- that Mr.
 4    Perez took Suboxone?
 5         A.   No.
 6         Q.   Okay.  So you're just basing it off his
 7    testimony and what the defense has provided you?
 8         A.   Yes.
 9         Q.   And is what the defense provided to you
10    about his use in those documents?
11         A.   No.
12         Q.   Okay.  So what did the defense tell you?
13         A.   That Suboxone was involved on the events of
14    around -- was it February 2016?
15         Q.   Okay.  In the event, hypothetically
16    speaking, Suboxone was not ingested by Mr. Perez,
17    would you agree with me that all of your testimony
18    about Suboxone use and its impact on a person would
19    not apply to him?
20         A.   I don't follow that, because I just heard
21    that it was involved.
22         Q.   Okay.  Well, that's his testimony.  Were
23    you here yesterday?
24         A.   No.
25         Q.   Okay.  Well, yesterday, let's just assume
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4585

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245

1    there was a witness that testified that he did not

2    give him Suboxone.

3         A.   Okay.

4         Q.   So it was somebody that was on the stand,

5    under oath, just like Mr. Perez, but testified to the

6    complete opposite.

7         A.   Okay.

8         Q.   Okay.  So I understand that you are basing

9    your opinion based upon what Mr. Perez said.  But I'm

10   asking you, hypothetically speaking:  If the other

11   witness was correct, and Mr. Perez was not on

12   Suboxone, your testimony as to the impact on

13   Mr. Perez of taking Suboxone would be irrelevant?

14        A.   Correct.

15        Q.   Now, did you have an opportunity to -- were

16   you provided with the actual recordings of the

17   telephone calls where the defense is alleging he was

18   on Suboxone?

19        A.   No.

20        Q.   Wouldn't that be important for you, based

21   on your expert testimony of whether or not a person

22   is on Suboxone and given all of the different things

23   that you were talking about that they could be under

24   all the impact, to actually listen to the calls?

25        A.   It would be helpful.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4586

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 246

```
 1        Q.   It would have been helpful, right?

 2        A.   Yes.

 3        Q.   And maybe, if you listened to them, you

 4   could have heard somebody who was speaking

 5   rationally, whose words were not slurring?

 6        A.   Oh, wait a minute now.  Can I hold you off

 7   for just a second?

 8        Q.   Sure.

 9        A.   So, you made a giant leap there.

10        Q.   Okay.

11        A.   Your leap is that, because there is no

12   slurred speech and there is another -- no other

13   behaviors which would indicate a person is on an

14   opiate, that they're not on an opiate, and that's

15   false, that's completely false.

16        Q.   Okay.  Now, why did you say then that it

17   would have been helpful for you to listen to the

18   calls?

19        A.   Well, it would have been helpful, if there

20   had been certain indications like slurred speech, or

21   the person is falling asleep and banging their head

22   on the table, or they can't walk or something, that

23   can be useful.

24        Q.   Okay.

25        A.   But just the fact that those aren't there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4587

```
 1    doesn't mean that they're not under the influence.
 2         Q.   Okay.  But it would have been helpful, and
 3    your opinion would been more complete, because you
 4    could have come in and testified that that person did
 5    or did not have those symptoms, while on this call?
 6    I'm just talking about the symptoms now.
 7         A.   Right.  If they didn't have the symptoms,
 8    that's fine, it doesn't necessarily mean they're not
 9    under the influence.
10         Q.   Well, I understand.  But you were talking
11    about them not having those symptoms; correct?
12         A.   Correct.
13         Q.   So now, you weren't provided with the
14    calls.  Were you provided with the transcripts?
15         A.   No.
16         Q.   Okay.  Would that have been helpful for you
17    to at least read them to see if there were any
18    issues?  Again, not to determine whether or not the
19    person was under the influence, but to see whether or
20    not they had any of those symptoms that you might be
21    able to even just read, like slurred speech; if a
22    person was incoherent in a conversation?
23         A.   Well, again, if those things were in the
24    transcripts, then they would substantiate one part,
25    which is maybe there is an overdose of a central
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4588

1    nervous system depressant, causing those problems.

2    If it's not in the transcript, it doesn't mean that

3    it didn't exist.

4          Q.   Well, but if it's not in the transcript, it

5    means that they weren't having the symptoms of that;

6    correct?

7          A.   Having the symptoms doesn't necessarily

8    mean that they're not under the influence.

9          Q.   Okay.  Well, we're going to talk about that

10   in a minute.  But would it have been helpful for you

11   to have the recordings and transcript in order for

12   you to make -- have an opinion based upon something

13   that you're actually testifying about?

14         A.   I could probably answer that question by

15   saying:  It could maybe have been helpful, but I'm

16   not sure it would have been necessary.

17         Q.   All right.  So you don't know if he had

18   slurred speech, was falling asleep, incoherent, or

19   anything on those recordings?

20         A.   I don't know that.

21         Q.   Okay.  Now, did you have a written opinion

22   for the defense?

23         A.   No.

24         Q.   Now, is a person able to -- under the

25   influence, is a person able to rationally think?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4589

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4590

```
 1          A.    To a degree, sure.
 2          Q.    Okay.  And are they able to remember
 3   things?
 4          A.    To a degree, yes.
 5          Q.    And if -- are they able to -- and I guess
 6   you're saying to a degree.  So why don't you explain
 7   that.  Is there -- strike that.
 8                Is there a continuum of under the influence
 9   for, if someone is under Suboxone?
10          A.    Oh, now you're asking about Suboxone?
11          Q.    Yes.
12          A.    Again, it's because it's a unique drug, the
13   continuum is not like the same you'd see with
14   morphine or heroin.  But there is a dose effect.
15   There is always a dose effect with drugs.  So there
16   is a continuum, it's just not as big a continuum.
17          Q.    Okay.  Did you hear any testimony that Mr.
18   Perez was under heroin or morphine?
19          A.    No, I didn't hear anything like that.
20          Q.    Okay.  So then let's stick with Suboxone.
21          A.    Okay.
22          Q.    You said it's a smaller continuum; correct?
23          A.    Correct.
24          Q.    So on that smaller continuum, what would
25   you expect a person under the influence of Suboxone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4590

```
 1    to have symptoms of?

 2         A.   Well, again, it depends on the dose.

 3         Q.   Okay.

 4         A.   So they could be feeling good, be high.

 5    They could have what we call euphoria, a pleasant

 6    sensation.

 7         Q.   Okay.  And under that one -- and I'll stop

 8    there.

 9         A.   Okay.

10         Q.   Under the good and feeling high and feeling

11    the euphoria, is that such a state that they cannot

12    remember things or think rationally?

13         A.   Oh, no, not at all.

14         Q.   They can still remember things and think

15    rationally?

16         A.   Yes, sure.

17         Q.   Make decisions?

18         A.   They can.  Doesn't mean the decisions are

19    correct, but they can.

20         Q.   Not have their will overborne, so to speak?

21         A.   I guess if they're a strong enough person,

22    probably not, but it depends on the person's own

23    personality, how influenced they can be.

24         Q.   Okay.

25         A.   So a drug may reduce that level, and make
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4591

```
 1    them even more under the influence than someone else.
 2         Q.   Okay.  Now, let's go to the -- to something
 3    further down on the continuum.
 4         A.   Okay.
 5         Q.   What would be the signs that you would see
 6    if somebody were not just in that happy, feel good
 7    state?
 8         A.   They could be dizzy.  They could be maybe a
 9    little sleepy.  I think that those would probably
10    be -- maybe a little bit confused.
11         Q.   Okay.  And you would expect if somebody is
12    in that state that that might be obvious from maybe
13    their conversation, if someone is confused or dizzy,
14    possibly sleepy?
15         A.   I don't think from a conversation I would
16    jump to that conclusion.  I think that -- I think
17    that when people are confused, that they're not
18    responding to, let's say, particular questions or
19    particular source, people seeking information from
20    them, they may seem confused.  Like when was the last
21    time you had dinner with your dog?  Well, you know, I
22    don't know.  I can't remember.
23         Q.   Okay.
24         A.   So that confusion could be a drug induced
25    confusion.  What dog?  I don't even have a dog.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4592

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 252

1    Q.   Okay.  Good example.  If you had listened

2    to the recordings of Mr. Perez, wouldn't you be in a

3    better place to know if he had any of that confusion,

4    like you were just talking about with the dogs?

5    A.   I don't know.  Because to me, it's a

6    conversation between -- I don't know between who it

7    is -- but it's a conversation between two people.

8    And I'm not sure that I would be in a position to

9    determine based upon what they're talking about, if

10   one of them is confused.

11        Now, if one of them was, I guess, asking

12   specific questions about specific events or specific

13   times or whatever, and the other person is not able

14   to really answer, then I might be able to say, Well,

15   it sounds a little confused.

16   Q.   Okay.  But since you didn't review that,

17   you can't tell us?

18   A.   Right.  I can't tell you.

19   Q.   You can't tell us.  And other than Mr.

20   Perez' testimony, you don't have any indication that

21   he was under the influence of Suboxone at all?

22   A.   Correct.

23        MS. ARMIJO:  If I may have a moment?

24        THE COURT:  You may.

25   Q.   A quarter of a strip of Suboxone, are you



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4593

 1   familiar with what that amount is?

 2       A.   I don't know the milligrams that would be

 3   in the quarter of a strip.  But a full strip is what

 4   people will put under their tongue.

 5       Q.   And that would be for the medical dosage of

 6   it?

 7       A.   Yes.

 8       Q.   So a quarter strip, would that be a smaller

 9   amount, obviously, than a full strip?

10       A.   Yes.

11       Q.   And so then it would be a quarter dosage of

12   what a normal dosage of Suboxone is; correct?

13       A.   Yeah, it would be one quarter of what would

14   be in that strip, correct.

15       Q.   And does a person's size or weight factor

16   into that?

17       A.   No.

18       Q.   So a person could weigh 350 pounds or 100

19   pounds and the impact would be the same?

20       A.   Pretty much, yes.  Weight doesn't really

21   enter into drug effects very often because -- just

22   because a person is 300 pounds, doesn't mean that

23   they have three times as much blood in their system

24   as a person who is 100 pounds.

25       Q.   Okay.  What about someone who is an addict?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4594

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254

```
 1    Does that impact it?
 2         A.   Impact the --
 3         Q.   Impact the effect of the drug?
 4         A.   Oh, if they're an addict, if they're an
 5    ongoing addict?
 6         Q.   Yes.
 7         A.   Then that's a really, really good one,
 8    because --
 9         Q.   Okay.  Tell us about that?
10         A.   That's why buprenorphine or Suboxone is
11    used, is because, if you are an ongoing addict --
12    let's say you're just using heroin all the time, and
13    you decide to take Suboxone, you don't get high from
14    Suboxone.  You go through withdrawal.  So it actually
15    causes withdrawal.  So that's why it's used for
16    opiate maintenance programs.
17         Q.   Okay.  So if you're a heroin addict and you
18    use Suboxone, it doesn't impact you; correct?
19         A.   It does.  It makes you go through
20    withdrawal.
21         Q.   Okay.  So it doesn't get you high?
22         A.   Oh, no, not at all.
23         Q.   It's used to make you withdraw from it;
24    correct?
25         A.   Well, it was --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4595

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255

```
 1        Q.    From heroin?
 2        A.    It was used incorrectly, so it would make a
 3   person withdraw.
 4        Q.    Okay.
 5        A.    A person wouldn't voluntarily give
 6   themselves Suboxone or naloxone if they were loaded
 7   up on heroin.
 8        Q.    And if a person is not an addict --
 9        A.    Right.
10        Q.    -- what is the impact of it?
11        A.    Then it acts like an opiate.
12        Q.    Okay.  If someone uses Suboxone on a
13   regular basis, so it's a continuous use of Suboxone,
14   does that euphoria, feel good state that you were
15   describing earlier, is that diminished?
16        A.    When you say "continuous," can you define
17   what you mean by continuous?
18        Q.    Well, if they use it daily?
19        A.    No.  It would -- it's -- Suboxone contains
20   the other ingredient I mentioned, naloxone, which is
21   an antagonist also.  So you can get a little bit high
22   from the buprenorphine, and you get some of the
23   opiate effects.  But if you're using it over and over
24   again, then you don't necessarily become what I'd
25   call tolerant, because the naloxone is preventing the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 256

```
 1    opiate from acting.  I know this sounds very
 2    confusing.  But Suboxone is a really fascinating but
 3    confusing drug.
 4         Q.   All right.  But, again, it would still be
 5    on that smaller continuum, correct, that you were
 6    talking about, as opposed to morphine and other
 7    drugs?
 8         A.   Yes.  And I think it's because the morphine
 9    and the other drugs do not have that other ingredient
10    in them, naloxone.
11              MS. ARMIJO:  All right.  Thank you.  No
12    further questions.
13              THE COURT:  All right.  Thank you, Ms.
14    Armijo.
15              Anyone else have any question of
16    Dr. French?  All right.  Ms. Fox-Young, if you have
17    redirect of Dr. French.
18              MS. FOX-YOUNG:  Thank you, Your Honor.
19              THE COURT:  Ms. Fox-Young.
20                   REDIRECT EXAMINATION
21    BY MS. FOX-YOUNG:
22         Q.   Dr. French, did Mr. Villa or I ask you to
23    tender any opinion in this case as to whether Mr.
24    Perez was high?
25         A.   No, you did not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4597

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 257

1    Q.   And did we ask you to tender an opinion as

2    to how high he was?

3    A.   No.

4    Q.   Or whether he was confused?

5    A.   No.

6    Q.   At the end of your cross-examination, there

7    was a discussion of addiction and how addiction might

8    affect a high that you get from Suboxone; is that

9    right?

10   A.   Correct.

11   Q.   Now, addiction is sort of a general term.

12   Is it the recency of use of drugs -- I mean, say

13   you're an addict, and you haven't used for six weeks.

14   Does the fact of your addiction affect the efficacy

15   of the Suboxone in getting you high?

16   A.   That's a very, very good question.  So

17   addiction doesn't really fit in really well with what

18   you're asking.  But I'll try to explain where I'm

19   coming from.  So addiction is a loss of control.

20   People finally get to a point where the drug has

21   highjacked their brain and their behavior, and they

22   lose control over the use of that drug.

23        Now, what happens with repeated use of a

24   drug is that you have to take more, and you become

25   tolerant, so you take even more, and then you become

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   dependent upon that drug.  So that, if you don't have

2   the drug, you need to take more to get back, so you

3   don't go through withdrawal.

4          Now, the thing about -- I guess where I'm

5   going here is that people who are addicted and have

6   lost control, and who are using enormous amounts of

7   drugs like heroin or methadone, or any of the other

8   full opiate drugs, they stop taking it -- we see this

9   all the time in the current opioid crisis, people who

10  are on OxyContin or oxycodone for pain, and they take

11  it, and they like it.  And they take more of it, and

12  they like it even more.  And then they can't get it

13  anymore.  And some of them will go off of the drug

14  and become abstinent so they don't take the drug

15  anymore.  But then their addiction says:  I like that

16  drug, I think you should take that drug, and they go

17  back to taking what they took the last time, which is

18  what kills them.  Because now the drug that they had

19  been taking for, you know, for many, many weeks or

20  months, they're taking too much of it, so they become

21  abstinent.  So the body re-equilibrates, it goes back

22  to a condition, which is like the first time they

23  took it.  I don't know if that answers your question

24  at all.  But if you are off the drug for a while, and

25  then you take an opiate, you'll get high from it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 259 600

```
 1        Q.   Okay.  That does answer my question.  And
 2   more specifically, I know you testified -- you
 3   weren't here to hear the testimony in the proceedings
 4   yesterday, but I'll represent to you that one of the
 5   Government's witnesses, Mr. Billy Cordova, testified
 6   that if an individual has not had Suboxone or
 7   opiates -- I believe you said opiates -- for 36
 8   hours, then you take Suboxone, the Suboxone will work
 9   to get that person high.  Is that consistent with
10   your understanding?  Is that true based upon what you
11   know of the drug?
12        A.   Yes.
13             MS. FOX-YOUNG:  Okay.  No further
14   questions, Your Honor.
15             THE COURT:  All right.  Thank you, Ms.
16   Fox-Young.
17             All right.  Dr. French, you may step down.
18   Thank you for your testimony.
19             THE WITNESS:  Thank you.  Do I get those
20   records back?
21             THE COURT:  What happened to Dr. French's
22   records?
23             MR. BECK:  He may have them back.
24             THE COURT:  All right.  Does Mr. Perez have
25   his next witness or evidence?
```

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                          1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 260

```
 1              MR. VILLA:  Well, Your Honor, we're in a
 2   bit of a conundrum.  We do, and we think that our
 3   next witness may take about the same time as
 4   Dr. French.  However, the last witness that's here
 5   for both Mr. Herrera and Mr. Perez is Shannon
 6   McReynolds, and I think his availability -- so
 7   neither one of these experts is available next week.
 8   Our expert is going to be much more available in
 9   January than Mr. McReynolds is, because he has to
10   leave the country.  So I think what we're going to
11   try to do is put McReynolds on and finish him.  And
12   then we're going to have to find another time to
13   resume the suppression hearing that sounds like won't
14   be next week.
15              THE COURT:  Any objection to taking
16   Dr. McReynolds right now?
17              MR. BECK:  No, Your Honor.  That's fine.
18              THE COURT:  And I have gotten a little
19   information from Ms. Wild.  She's, I guess getting
20   back into pocket.  And this is what she's saying.
21   She says, "I thought we could do a half day on
22   Wednesday."  And they said that she knew -- she said
23   that Michelle, my courtroom deputy that's replacing
24   Ms. Wild, knew that she needed Wednesday.  She said
25   she'll work it all out.  Initially set Monday and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 4601

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261 4602

```
 1   Tuesday, and then picked up the 20th, the week before
 2   last.  So before anybody runs and makes flight or
 3   scheduling connections, you better check with her.
 4   Because I guess she's thinking we've got Wednesday
 5   morning.  So I just say that because people were
 6   asking if we were doing it Wednesday.  And I was
 7   giving you what information I had based on my
 8   schedule.  But Ms. Wild, I think, is trying to pick
 9   up Wednesday morning.
10           All right.  So is it Dr. McReynolds?
11           MR. VILLA:  Your Honor, just a couple of
12   things.  We had a couple of NMCD folks under
13   subpoena.  Given the time, Ms. Armijo has asked if we
14   can release them.  We can.  That is Ms. Wendy Perez
15   and Mr. Roland Mares.  They can be released.  And, of
16   course, we'll have to find a date in January to
17   resume this hearing, because as I said, our expert
18   won't be available next week.  I just want to make
19   sure that that's clear, so whatever is done next
20   week, it won't be the continuation of this hearing.
21           THE COURT:  Okay.  I'm reluctant to do all
22   this wheeling and dealing on scheduling without
23   Ms. Wild.  But is the Government okay with that?
24           MR. BECK:  I mean, it sounds like that's
25   the plan.  It sounds like there is really not much we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4602

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 262

1  can do with that.  We have already -- we've already

2  booked the two witnesses for, I think, Mr. Garcia's

3  Daubert hearing, from FBI headquarters.  They're

4  coming down here next week Monday and Tuesday, so I

5  think that is set in stone.  If we can't do this

6  Wednesday, we can't do much anyway, so --

7          THE COURT:  What are the hearings next

8  week?

9          MR. BECK:  I believe next week Ms. Wild has

10  scheduled, or at least the parties anticipate -- and

11  I think everyone agrees on this -- the parties

12  anticipate next Monday and Tuesday is the Daubert

13  hearings for Mr. Garcia that he asked for, for the

14  two FBI scientists from Quantico to come down.

15  They've already booked their flights.  So they will

16  be here next week.

17          MS. HARBOUR-VALDEZ:  Your Honor, as well as

18  the pretrial hearing that was noticed up for the

19  18th.

20          THE COURT:  Oh, we are going to do the

21  pretrial in December?

22          MS. HARBOUR-VALDEZ:  That was what was

23  noticed.

24          MR. VILLA:  Sounds like we could fill the

25  time, and resume Mr. Perez' hearing later.  I just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4603

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 263

```
 1    didn't want to mess anybody up.  I think that was the
 2    plan anyway, was to try to be done, so we can stay on
 3    task for next week.
 4              MS. SIRIGNANO:  Your Honor, if I could just
 5    have a quick second.  I understand the Government's
 6    witnesses are going to be here Monday and Tuesday.
 7    But I don't believe it's going to take both days all
 8    day.  Mr. Adams is going to handle the firearms
 9    expert, which could be an hour or so, and the DNA
10    expert, depending on how long the Government takes to
11    put on their evidence.  And our expert isn't going to
12    be here.  It's just going to be cross-examination of
13    their expert.
14              THE COURT:  Well, so it sounds like we may
15    have some trouble filling up the days, so I'm not
16    going to commit to anything.  Right at the moment,
17    we'll go ahead and get McReynolds on the stand and
18    get his testimony.  But I really can't commit to
19    anything until we get Ms. Wild back in pocket.
20              MR. VILLA:  And, Your Honor, I'm not trying
21    to get us to commit to what we're doing next week
22    other than that we'd like the opportunity to complete
23    the presentation of our evidence, and aren't able to
24    do that next week.
25              THE COURT:  I understand the situation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4604

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 264 4605

1  But I'm not committing to it.  We'll take McReynolds,

2  and we'll figure out what to do over the next two

3  days before we get back together next Monday.

4            All right.  Do you want to swear in -- is

5  it Dr. McReynolds?

6            THE WITNESS:  No.  It is Shannon

7  McReynolds.

8                    SHANNON McREYNOLDS,

9      after having been first duly sworn under oath,

10      was questioned and testified as follows:

11                    DIRECT EXAMINATION

12            THE CLERK:  Please be seated.  State and

13  spell your name for the record.

14            THE WITNESS:  My name is Shannon

15  McReynolds, S-H-A-N-N-O-N, M-C-R-E-Y-N-O-L-D-S.

16            THE COURT:  All right.  Mr. McReynolds.

17  Ms. Bhalla.

18            MS. BHALLA:  Thank you, Your Honor.

19  BY MS. BHALLA:

20      Q.   Mr. McReynolds, how are you currently

21  employed?

22      A.   I have a third party contract as a senior

23  corrections advisor with the U.S. State Department in

24  their Bureau of International Narcotics and Law

25  Enforcement Activities.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4605

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 265606

```
 1        Q.    And what do you do in that job?
 2        A.    My job is to provide assistance to the
 3   State Department on projects involving prisons in
 4   other countries.
 5        Q.    And how were you employed prior to this
 6   job?
 7        A.    Prior to this job, my career was
 8   approximately 25 years with the New Mexico
 9   Corrections Department.
10        Q.    And what positions did you hold while you
11   were in the Corrections Department?
12        A.    I started in 1990 as a corrections officer.
13   In 1992, I became a classification officer; did that
14   for eight years.  In approximately 2000, I became a
15   programs manager; did that for a year; went on to be
16   a unit manager with the South facility at the
17   Penitentiary.  I then transferred over to Central
18   office.  Over there, I did appeals of placement Level
19   6.  I also did interstate compact.  After that, I was
20   a contract monitor, where I monitored privately
21   operated facilities that the Department had a
22   contract with.  After that, I became the PREA
23   Coordinator for the Department.  And two years from
24   retirement, I was appointed as the Inspector General
25   for the Department.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4606

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 266

```
 1        Q.   And what did you do as the Inspector
 2   General?
 3        A.   As the Inspector General, I had three
 4   primary duties.  First, was to monitor the privately
 5   operated facilities to determine whether or not they
 6   were complying with the terms of the contract, and to
 7   assess liquidated damages.
 8             The second thing that I did was I also
 9   continued our efforts to implement PREA in the New
10   Mexico Corrections Department.
11             And thirdly, I reviewed inmate appeals of
12   placement in Level 6, and briefed the Director of
13   Adult Prisons on what the response should be.
14        Q.   Thank you.  Did you provide me with a copy
15   of your curriculum vitae for this case?
16        A.   I did.
17             MS. BHALLA:  Okay.  Your Honor, I'd like to
18   go ahead and move that into evidence as Carlos
19   Herrera Exhibit I.
20             MR. BECK:  No objection, Your Honor.
21             THE COURT:  All right.  Let's see, Carlos
22   Herrera's Exhibit I will be admitted.
23             MS. BHALLA:  Your Honor, I'm going to move
24   to admit Mr. McReynolds as an expert for purposes of
25   this hearing, only in terms of classification
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4607

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267

```
 1    procedures and policies.  I'm trying to do this in an
 2    abbreviated fashion, so we can get through with this,
 3    because I don't know if the Government has any
 4    objection.
 5           THE COURT:  Mr. Beck, do you have any
 6    objection to Mr. McReynolds offering opinion
 7    testimony in those areas?
 8           MR. BECK:  I mean, I guess is he offering
 9    opinion testimony as to classification for New
10    Mexico, or generally, or is he offering fact
11    testimony to what happened with the defendants in
12    this case?
13           MS. BHALLA:  Fact testimony to what
14    happened with the defendants in this case and opinion
15    testimony as to whether or not the justifications for
16    the classifications given in Interim Level 6 were
17    valid, or if they complied with the relevant policies
18    and procedures.
19           MR. BECK:  I mean, it seems to me that
20    that's just fact testimony, if he's saying they
21    didn't comply with procedures factually.  That's not
22    an opinion.
23           MS. BHALLA:  I'm happy to proceed, and if
24    there is a problem, we can address it as we go along.
25           MR. BECK:  That's fine.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4609

```
 1            THE COURT:  Well, I don't know what that
 2    means.
 3            MS. BHALLA:  If the Government has an
 4    objection, Your Honor, to any of the testimony that
 5    we're going to elicit from him, I can go back and lay
 6    a foundation for that testimony, if the Government
 7    has an objection.
 8            THE COURT:  Are you willing to proceed that
 9    way?
10            MR. BECK:  That's fine.
11            THE COURT:  Okay.  All right.  We're
12    kicking the can down the road, huh?  All right.
13            MS. BHALLA:  I'm just trying to be
14    expedient, Your Honor.
15            THE COURT:  I guess I wonder, though, if he
16    doesn't have personal knowledge of everything, he's
17    not going to be a fact witness.  But it seems to me
18    he's about to tell me whether the New Mexico
19    Corrections Department did something right or wrong
20    based upon just his review of the materials.  And I
21    guess that's an odd expert.  I'm not even sure it's
22    an expert.  It's like -- I mean, I can't say I
23    haven't seen somebody being used this way by a party,
24    but it's more just a summary witness, rather than
25    really an expert witness.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 269

```
 1              But if the Government is willing to allow
 2   him to testify, subject to further objection, I
 3   shouldn't stand in the way.
 4   BY MS. BHALLA:
 5        Q.   Mr. McReynolds, have you done a review of
 6   any of the classification or housing records in this
 7   case?
 8        A.   Yes, I have.
 9        Q.   And have you reviewed some of Carlos
10   Herrera's records in this case?
11        A.   Yes, I have.
12        Q.   And have you reviewed some of Mr. Perez'
13   records in this case?
14        A.   Yes.
15        Q.   Okay.  Can you tell us what you determined
16   about -- let me go back, I'm sorry -- you've been
17   present for the full two days of hearings that we've
18   had in this matter?
19        A.   Yes.
20        Q.   Okay.  And have you been able to listen to
21   some of the testimony that's been elicited in these
22   two hearings?
23        A.   Yes.
24        Q.   And has some of that information helped you
25   with your testimony today?
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4610

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 270

```
 1        A.    Yes.
 2        Q.    Okay.  And that would be in addition to
 3   reviewing those records?
 4        A.    That is correct.
 5        Q.    Okay.  Have you been able to make any kind
 6   of determination about where Mr. Herrera was housed
 7   in 2014?
 8        A.    It started off at the Southern New Mexico
 9   Correctional Facility, and then he was transferred up
10   to the Penitentiary South facility.
11        Q.    And to the best of your recollection, when
12   was Mr. Herrera housed in Southern?
13        A.    From 2014, after the Munoz (sic) homicide,
14   and then he was transferred up to the Penitentiary.
15             MR. BECK:  Your Honor, I'm going to object
16   to hearsay at this point.  And I think this is
17   probably what the Court was getting at.  I'm guessing
18   he's relaying what is asserted on placement histories
19   and documents he's seen.  It would be him testifying
20   to hearsay.
21             THE COURT:  Well, in this hearing, I guess,
22   it's not hearsay I'm troubled with.  I mean, you've
23   got to hear hearsay to sometimes determine whether
24   other evidence is admissible.  So that's not my
25   problem.  And I probably am not going to keep him
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4611

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 271

1    from testifying either as a fact witness or as an

2    expert because he's relying on hearsay.

3            My problem is he seems to me not to be an

4    expert.  He's simply going to -- he may offer an

5    opinion, but he's not an expert in New Mexico

6    classifications and whether they were done properly.

7    Maybe I'm sort of thinking I don't need an expert.  I

8    need two lawyers standing there arguing and telling

9    me what the problem is, not an expert telling me.

10           So I guess, maybe it's more not -- it's not

11   helpful here.

12           MR. BECK:  I think you're getting ahead of

13   me, Your Honor.  What I was going to say is that, if

14   he's going to be testifying to hearsay documents, I

15   think we might as well admit those hearsay documents,

16   and then we can compare them, with two lawyers

17   arguing from one place or another, whether those

18   documents, and what's documented on them, complies

19   with the policy that we've already had testimony was

20   in effect at the time.  So I'm agreeing with Your

21   Honor, that I don't see that there is helpful or

22   useful information coming from this witness.

23           MS. BHALLA:  May I, Your Honor?

24           THE COURT:  You may.

25           MS. BHALLA:  Your Honor, we heard from Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

 1   Roark about placement, about housing histories, about

 2   classification.  Mr. Roark testified about those

 3   placements and transfers and classifications based on

 4   documents, many of which were supplied by the

 5   Government.  I don't understand why Mr. McReynolds

 6   can't testify regarding those same documents, which

 7   I'll go through with him.

 8            THE COURT:  But Mr. Roark works at the

 9   Corrections Department, is a fact witness.

10            MS. BHALLA:  That's correct.

11   Mr. McReynolds worked at the Department of

12   Corrections for over 25 years --

13            THE COURT:  But not --

14            MS. BHALLA:  -- as general inspector.

15            THE COURT:  Not in New Mexico.

16            MS. BHALLA:  Yes, in New Mexico, Your

17   Honor.

18            THE COURT:  It still seems like an odd

19   thing.

20            MR. BECK:  Your Honor, it seems to me that,

21   if they wanted to ask -- and they may have and I may

22   just have missed it -- whether the documents in Mr.

23   Herrera's and Mr. Perez' file complied with what was

24   on -- what was in the policies, we could have done

25   that with Mr. Roark, and why he was placed there, or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4613

```
 1    through other witnesses who may have placed him
 2    there.  And I think we just let Ms. Perez go, Wendy
 3    Perez go, who actually may have had a hand as a fact
 4    witness in placing Mr. Herrera or Mr. Perez, or both,
 5    in a certain facility at the PNM North.  And so --
 6            THE COURT:  Let's do this:  Let's see what
 7    your exhibits are.  If you have some exhibits to
 8    admit, let's go ahead and get those admitted.  Let's
 9    show those to the Government, and then let's see what
10    then we're going to do with the witness here.
11            MS. BHALLA:  Your Honor, I think what we're
12    going to do is go through some of the exhibits that
13    Mr. Roark testified about.
14            THE COURT:  Well, let's do it my way.
15            MS. BHALLA:  Okay.
16            THE COURT:  Hand your exhibits to the
17    Government.  Let's see what we're going to do with
18    them.  I'm not sure I'm going to let you do it with
19    Mr. McReynolds.
20            All right.  Let's take an afternoon break.
21    Maybe you can talk a little bit and come to an
22    agreement about what, if anything, we're going hear
23    from Mr. McReynolds, and I'll make a ruling on it
24    when we get back.
25            (The Court stood in recess.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4614

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 274

```
 1              THE COURT:  All right.  Let's all take our
 2    seats.  Everybody look around and make sure that all
 3    the defendants have an attorney.  Everybody looks
 4    like they've got somebody.
 5              All right.  Mr. Beck, Ms. Bhalla, did y'all
 6    work out some procedure here?
 7              MR. BECK:  We didn't, Your Honor.
 8              THE COURT:  Did not.
 9              Well, here's what I would propose:  That I
10    not accept him for opinion testimony.  If you want to
11    treat him like an agent; sometimes the prosecution
12    puts an agent on, they walk through documents and
13    show me the documents, they can show me the
14    documents.  And you can kind of do a dog and pony
15    show, get your documents in.  I don't think there is
16    any objection to the documents.  Is there, Mr. Beck?
17              MR. BECK:  No, Your Honor.
18              THE COURT:  But he not offer opinion
19    testimony.  And you can make your point, you can go
20    ahead and argue your point.  But I'll not accept him
21    for opinion testimony.
22              MS. BHALLA:  Okay, Your Honor.  I
23    appreciate the Court's --
24              THE COURT:  What do you think about that,
25    Mr. Beck?  I can tell by Ms. Bhalla, that's not her
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4615

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275616

1   favorite thing.

2          MR. BECK:  That's fine, Your Honor.

3          THE COURT:  All right.

4          MS. BHALLA:  Your Honor, I would like to

5   make a record that he is a 702 expert based on his

6   training and experience in classifications in the New

7   Mexico Department of Corrections for over 25 years;

8   that he can offer his opinion on the facts and

9   circumstances that have been presented in this case.

10  He's not a fact witness.  He is a classic 702 expert.

11  Based on his training and his experience in

12  corrections.  And he is qualified to give an opinion

13  about whether or not the policies and procedures in

14  NMDOC were followed.

15         THE COURT:  All right.  Well, I told you

16  how I'm going to rule.  He can't offer opinion

17  testimony.  But if you want to use him to get your

18  documents in and you want to make your point.

19         Seems to me, this is just what lawyers do.

20  They take the policies, they get them, and they argue

21  that they weren't followed.  I guess I'm not thinking

22  that his testimony is useful.  I need two lawyers

23  telling me why they violated the policy.  And then,

24  if they violated the policy, what in the world that

25  has to do with the suppression motions.  But I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4616

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 276

```
 1    that's as far as I'm going to go.
 2              MS. BHALLA:  Let me ask you a question,
 3    Your Honor:  Is your hesitation on this issue in
 4    regards to relevance, or is it in regards to his
 5    expertise?
 6              THE COURT:  Well, if we had a jury over
 7    here, I wouldn't let you put on experts that weren't
 8    helpful to the jury.  I don't see it any different
 9    here.  This is sort of just arguing from the facts.
10    So get your facts in.  He doesn't really offer any
11    facts because he doesn't have any personal knowledge
12    here.  And so you haven't offered him for personal
13    knowledge.  So all you're doing is letting him say
14    something you can say just as well, that I can
15    determine just as well.  And then, we've got to make
16    an enormous leap as to how that's relevant to whether
17    what Mr. Herrera and what Mr. Perez said is
18    involuntary.  I think there is a fairly large gap
19    there.
20              MS. BHALLA:  If you would let me address
21    the question of relevance, I think it might be
22    helpful.
23              THE COURT:  You can address it.  Your time
24    is slipping away.
25              MS. BHALLA:  I understand.  But I think I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4617

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 277

```
 1    need to do that for the record, Your Honor.

 2              THE COURT:  Go ahead.

 3              MS. BHALLA:  Thank you, Your Honor.

 4              In terms of relevance, and why this is

 5    important, one of the things that we've been hearing

 6    about and one of the things that is at issue in this

 7    case --

 8              THE COURT:  I think this is more

 9    appropriate for argument time.  But if you want to go

10    ahead and argue it now, go ahead.

11              MS. BHALLA:  Well, it makes it difficult

12    for me, Your Honor, because if we want to get him to

13    provide expert opinions on what happened here --

14              THE COURT:  He's not going to be allowed to

15    offer expert opinions.  I've ruled.

16              MS. BHALLA:  Okay.  So then do I need to --

17    let me just keep it very brief, Your Honor.  I'm

18    sorry, but I feel that I have to do this.  If what --

19    if Mr. McReynolds provides testimony about whether or

20    not these policies or procedures were followed, it's

21    relevant, because the Government has argued --

22              THE COURT:  He cannot provide that

23    testimony.

24              MS. BHALLA:  I understand.  But what I'm

25    trying to articulate is the relevance.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4618

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4619

```
 1                THE COURT:  Like I said, I think that's
 2    more appropriate for argument.  But if you want to
 3    use your time right now to argue, you can go ahead.
 4                MS. BHALLA:  Can I have just one moment,
 5    Your Honor?
 6                THE COURT:  You may.
 7    BY MS. BHALLA:
 8        Q.   Mr. McReynolds, I'm going to go ahead and
 9    show you some documents that have already been
10    admitted into evidence.  The first will be Carlos
11    Herrera's Exhibit D.  I'm going to put it on the
12    screen here.  Can you take a look at that document,
13    please?
14        A.   Yes.
15        Q.   And is that an interim level disciplinary
16    placement regarding Mr. Herrera?
17        A.   It's a placement of Carlos Herrera into
18    Interim Level 6, involuntary segregation.
19        Q.   And what is Interim Level 6?
20        A.   Interim Level 6 is a status where a
21    referring facility places an inmate on lockdown for
22    five days.  They send the justification to Central
23    office.  Central office then makes a determination as
24    to whether or not they will accept his placement into
25    Level 6, and send him up to the penitentiary, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4619

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

```
 1   North facility.

 2       Q.   And how often is the review supposed to

 3   happen on Level 6 placement?

 4       A.   For the first eight weeks it's supposed to

 5   happen every week.  Thereafter, once every 30 days.

 6       Q.   And have you reviewed other inmate

 7   disciplinary placement records regarding Mr. Herrera?

 8       A.   Yes, I have.

 9       Q.   Do you have any understanding as to how

10   long he was placed in Interim Level 6?

11       A.   From the time of his initial placement,

12   March 11, 2014, up until now.

13       Q.   Okay.  And what is life like for someone

14   who is in Interim Level 6?

15       A.   In Interim Level 6 they are in a cell, a

16   single bunk cell.  It has access to natural light and

17   ventilation.  But all -- there is no congregate.

18   They rec for one hour for five days a week.  They are

19   restricted to a shower three days a week.  They do

20   not have -- they have all their meals taken inside

21   their cell.  They may have a television.  At the time

22   this policy was in effect, they were allowed to have

23   a television.  One of the things that the department

24   was wanting to make sure is that there weren't any

25   sensory deprivation situations there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4620

```
 1          Q.    And what are the policy requirements for
 2   placing someone in Interim Level 6?
 3          A.    There is a number of reasons.
 4                MR. BECK:  Objection, Your Honor.
 5                THE COURT:  Sustained.
 6          Q.    Mr. McReynolds, are you aware of a policy
 7   concerning placement in Level 6?
 8          A.    Yes.
 9          Q.    Do you know what the terms of that policy
10   are?
11          A.    Yes.
12          Q.    Can you tell us what the terms of the
13   policy are?
14                MR. BECK:  Objection, Your Honor.
15                THE COURT:  Sustained.
16                MS. BHALLA:  I'm sorry, Your Honor?
17                THE COURT:  Sustained.  I guess I'm just
18   not seeing.  The defendants have fought very hard the
19   gang experts.  It looks to me like this is a similar
20   sort of person.
21                MS. BHALLA:  I'm sorry, Your Honor.
22                THE COURT:  It seems like to me it's a
23   similar sort of person.  You're wanting to keep the
24   Department's gang experts out.  And this looks like
25   the same sort of thing to me.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4621

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4622

```
 1              MS. BHALLA:  He's not being -- Your Honor,

 2    the testimony that we're trying to elicit today is

 3    about classifications.

 4              THE COURT:  I understand that.  But it's

 5    the same sort of witness.  You're bringing somebody

 6    in from the Department.  They're trying to bring

 7    somebody in to testify about the SNM Gang.  You're

 8    trying to bring somebody in to talk about this

 9    classification.  It seems to me it's a very similar

10    sort of expert.  And I think I'm being fairly

11    consistent in just saying these aren't the kind of

12    experts that are appropriate.

13              MS. BHALLA:  Well, Your Honor, I think that

14    Mr. Roark provided testimony about the policy, about

15    whether or not the policy was followed, about whether

16    or not -- what the situations regarding the policy

17    were.  I think, if we're looking at consistency, that

18    Mr. McReynolds should be allowed to testify regarding

19    the same things.

20              Also, Your Honor, the Government has never

21    filed an objection to Mr. McReynolds being qualified

22    as an expert despite our expert notices being filed a

23    while ago.

24              THE COURT:  Well, if I understood it, the

25    Government didn't understand what he was going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  testify about until today.  There was no written

 2  report.  And the question was whether he was going to

 3  come in and talk about classifications in general,

 4  which is the impression I had, that he was going to

 5  talk about classifications in a general way, and this

 6  isn't where you put people, and things like that; not

 7  specifically talking about what had occurred

 8  factually in this case.

 9          If you can show me your notice, I'd be glad

10  to look at it and be corrected on that.  But I think

11  that was the reason -- the Government didn't know

12  exactly what he was going to testify about.

13          MS. BHALLA:  Well, Your Honor, I believe in

14  our original notice, we did indicate that he was

15  going to testify --

16          THE COURT:  If you have the notice --

17          MS. BHALLA:  I can get it.  I didn't print

18  it off and bring it with me, Your Honor, because I

19  didn't anticipate this being an issue.

20          I also filed a supplemental notice, as

21  requested by the Court, I believe on Monday.  And so

22  that has been filed as well.

23          But if you could give me a second, I can go

24  get a copy of that, or at least pull it up from

25  Pacer.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4623

```
 1            THE COURT:  All right.  But you're using

 2   your time here to do those things.  It's up to you

 3   how you want to use the next 15 minutes.

 4            MS. BHALLA:  I understand that, Your Honor.

 5   But I don't really see that I have a choice at this

 6   point, because if I'm not allowed to elicit testimony

 7   from our witness about the policies and procedures

 8   and about the classifications, I'm not sure how we're

 9   going to proceed.  So, if the Court wants a copy of

10   the original notice to -- so that we can show you

11   he's going to testify about classification procedures

12   and policies, and how inmates were housed, I think

13   that the Government has been put on sufficient notice

14   to that issue.

15            THE COURT:  All right.  I'm not sure it's

16   going to change any of my rulings, but --

17            MS. BHALLA:  If it's not going to change

18   any of the Court's rulings, we can proceed.  But part

19   of what Mr. Roark testified today was to the policies

20   and procedures that were in place regarding the

21   movement of these inmates.  And so I would like to be

22   able to ask him about those policies and procedures.

23   BY MS. BHALLA:

24       Q.   Mr. McReynolds, are you aware of general

25   policies and procedures regarding placement inmates
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4624

```
 1    in Level 6?

 2         A.   Yes.

 3         Q.   I'm going to ask you to review what's been

 4    marked as Government's Exhibit 47.  Can you tell us

 5    what that document is?

 6              MR. BECK:  Objection --

 7         A.   That is a step --

 8              MR. BECK:  Objection, Your Honor.  I think

 9    we're getting into what a New Mexico Corrections

10    Department document is.

11              THE COURT:  I'm just not sure this witness

12    provides any testimony that the Court is going to

13    hear.  So, Mr. McReynolds, you may step down.  Thank

14    you for your testimony.

15              All right.  Where do we go as far as

16    witnesses on the motion?

17              MR. BECK:  I think Ms. Fox-Young may have a

18    witness.

19              THE COURT:  Ms. Fox-Young, do you want to

20    bring your witness, Ms. Fox-Young?

21              MS. FOX-YOUNG:  Thank you, Your Honor.  Mr.

22    Perez calls Dr. Heather Brislen.

23              THE COURT:  Dr. Brislen, if you'll stand

24    next to the witness box before you're seated, Ms.

25    Standridge will swear you in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    HEATHER BRISLEN,

 2        after having been first duly sworn under oath,

 3        was questioned and testified as follows:

 4                    DIRECT EXAMINATION

 5             THE CLERK:  Please be seated.  State your

 6   name and spell it for the record.

 7             THE WITNESS:  Thank you.  My name is

 8   Heather, H-E-A-T-H-E-R; Brislen, B-R-I-S-L-E-N.

 9             THE COURT:  Ms. Brislen, is it doctor,

10   or --

11             THE WITNESS:  Yeah.

12             THE COURT:  Dr. Brislen.  Ms. Fox-Young.

13   BY MS. FOX-YOUNG:

14        Q.   Good afternoon, Dr. Brislen.  What is your

15   profession?

16        A.   I'm an internal medicine physician.

17        Q.   And where do you practice?

18        A.   I practice in a couple of capacities in

19   Albuquerque, New Mexico.  I have my own private

20   primary care practice.  And I'm also a clinical

21   faculty member at the University and the VA, where I

22   teach internal medicine residents.

23        Q.   How long have you been doing that?

24        A.   Since about 2011.

25        Q.   So for the past six-plus years?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4626

1        A.    Right.

2        Q.    And where did you complete your training?

3        A.    At the University of New Mexico.

4        Q.    And that was medical school?

5        A.    Right.  I did medical school at UNM,

6    between 2003 and 2007; residency then from 2007,

7    2011.  I also -- my first job after that was at the

8    VA, and I did clinical informatics training, along

9    with my initial junior faculty position there, while

10   I did primary care.

11             MS. FOX-YOUNG:  Your Honor, just a moment,

12   please.

13             THE COURT:  Certainly.

14             MS. FOX-YOUNG:  Thank you, Your Honor.

15       Q.    Are you aware, Dr. Brislen, that you have

16   been tendered as an expert in this case to give

17   opinions on internal medicine?

18       A.    That's my understanding, yes.

19             MS. FOX-YOUNG:  And Your Honor, I'll again

20   ask the Government if the Government objects to Dr.

21   Brislen giving any opinions as to this hearing?  If I

22   need to lay a better foundation and go through her

23   background, I can.  She was noticed up properly.  And

24   I think the Court found that we didn't need to file a

25   supplemental notice for her.  She was -- the expert

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4627

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4628

```
 1   that the Court did not order us to supplement on

 2   Monday.  So I don't have a document number, but her

 3   CV has been provided.

 4              THE COURT:  Hold on just a second.  Let's

 5   see what Mr. Beck --

 6              MR. BECK:  We'll stipulate to her expertise

 7   for this hearing.

 8              THE COURT:  All right.  And you don't have

 9   any objection to her offering opinion testimony on

10   internal medicine?

11              MR. BECK:  Not for this hearing, Your

12   Honor.

13              THE COURT:  All right.  Anybody else have

14   an objection?

15              All right.  Dr. Brislen can offer opinion

16   testimony on internal medicine.

17              MR. BECK:  May we request which document

18   number she's noticed as an expert in?

19              MS. FOX-YOUNG:  Your Honor, it's Document

20   1050, filed April 5.

21              MR. BECK:  Thank you.

22              MS. FOX-YOUNG:  And we also noticed her

23   within that broader category of internal medicine, to

24   testify as to her opinions on outpatient care and

25   clinical informatics, specifically care for medically
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4628

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 288

```
 1    complex patients.  I don't know if the Government

 2    will stipulate --

 3              MR. BECK:  We'll stipulate.

 4              THE COURT:  No objection to her testifying

 5    on opinion testimony in those areas?

 6              MR. BECK:  No objection.

 7              THE COURT:  Anyone else?

 8              All right.  She may offer opinion testimony

 9    in those areas.

10    BY MS. FOX-YOUNG:

11         Q.   Dr. Brislen, did you review records

12    pertaining to Rudy Perez in the course of your

13    preparation for work as an expert in this case?

14         A.   Yes.  I've reviewed extensive medical

15    records, both in print and digitally provided,

16    spanning -- 1992 was the earliest, though the bulk of

17    the comprehensive set is 2000 to the present.

18         Q.   So from 1992, to the present you looked

19    at --

20         A.   That's right.

21         Q.   And do some of those records detail Mr.

22    Perez' physical health?

23         A.   Yes.

24         Q.   And do some of them detail his mental

25    health?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4630

 1        A.    Yes.

 2        Q.    And do they address physical trauma that he

 3   sustained?

 4        A.    Yes.

 5        Q.    And his mobility?

 6        A.    Yeah.

 7        Q.    Can you tell me, can you tell the Court

 8   what physical diagnoses he has?  And I understand

 9   it's a long period of time.

10        A.    Sure.

11        Q.    I'd like specifically to know if you can,

12   relying on your work and the records, what physical

13   diagnoses he had in February of 2016?

14        A.    Sure.  I think what makes that complicated

15   is that he's had a really remarkable history in both

16   physical, violent trauma, accidental trauma, and

17   surgical trauma.  So he has compounded issues that

18   sort of have occurred in layers, affecting his

19   ability to be mobile and physically healthy.

20             If you were categorizing where he is right

21   now, I would say the primary issues are he's had a

22   number of traumas and surgeries to his abdomen and

23   thorax, which have resulted in really profound

24   alteration of normal musculature.  So his posture is

25   off, his ability to carry himself without falling is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4630

```
 1   off.  And the structural health of his abdomen is
 2   permanently altered.
 3            Internally, he had a dramatic small bowel
 4   obstruction with perforation in 2012, that required
 5   further surgeries, revealing that all of these
 6   different injuries that he's had over time have
 7   developed into a lot of scar tissue.  That makes him
 8   vulnerable not only to digestive issues now, but also
 9   permanently at very high risk for re-obstruction.
10   Devastating sort of intestinal complications --
11        Q.   Okay.  And not to interrupt you, but you
12   heard Mr. Perez testify earlier about a surgery, and
13   that he had been sick and been out.  That was for the
14   intestinal blockage you're describing?
15        A.   That's right.
16        Q.   You also looked at records that pertained
17   to Mr. Perez' IQ and his mental debility?
18        A.   That's right.  Just to comment real quick,
19   there has been sort of almost too many to count
20   musculoskeletal injuries to his extremities, which
21   affect his ability to walk, and permanent sort of
22   disability there as well.
23            For his mental health, he's under pretty
24   continuous psychological care.  And the notes
25   comprehensively add up pretty clearly to some --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 291 4632

1              MR. BECK:  Objection, Your Honor.  I'm not

2    sure she can offer opinion testimony about mental

3    health conditions.  I understood she's an internal

4    medicine doctor and will offer opinions about

5    outpatient care and clinical care.  I think the

6    medical records may speak for themselves, when they

7    talk about a mental conditions.  But I was under the

8    understanding she was an expert in medical

9    conditions.

10             THE COURT:  Well, why don't you lay a

11   foundation.  See what background she has for mental.

12        Q.   As part of your training, your medical

13   training, have you studied psychiatric care?

14        A.   I would say I'm not a psychiatrist, but

15   garden variety psychiatric issues are within the

16   scope of what I do.  And that would include

17   depression, anxiety, PTSD, a variety of supportive

18   care under shared care with a psychiatrist for

19   anything more complex than that.

20        Q.   So you also have experience treating

21   patients for those types of issues?

22        A.   That's right.

23        Q.   In addition to your medical trainings?

24        A.   Right.

25             THE COURT:  Well, I think that so many

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4632

1    internists do some mental health.

2            MR. BECK:  I think that's sufficient, Your

3    Honor.

4            THE COURT:  You know, she's not trying to

5    overdo what an internist, I think, does these days.

6    So I'll continue to allow her to testify.  If you

7    think it's getting into psychiatry, then you can

8    reraise the issue.

9            Ms. Fox-Young.

10           MS. FOX-YOUNG:  Thank you, Your Honor.

11   BY MS. FOX-YOUNG:

12       Q.   And so, Dr. Brislen, along those lines, I

13   think you were starting to say you have reviewed

14   records that pertain to Mr. Perez' mental condition,

15   and also to any medications that he was taking for

16   mental health?

17       A.   That's right.  So he's had mood disorders

18   pretty much throughout the time of the records that I

19   covered, and has been taken from antipsychotics, like

20   Haldol, to -- at the time that we're talking about,

21   he was taking Nortriptyline, which I understood to

22   be -- it's a tricyclic antidepressant, which you can

23   use both for depressive symptoms, mood stabilization,

24   also pain control.

25       Q.   And have you looked at any records that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4634

```
 1  pertain to his IQ?
 2       A.   Yes.  Actually, that's almost always
 3  included in his intake visit at every facility that
 4  he's been at, that he's known to have a low IQ,
 5  innate since childhood, as well as mood disorders
 6  kinds of things.
 7       Q.   And that's seen throughout the records?
 8       A.   Right.
 9       Q.   Do you know if he has any neurological
10  conditions?
11       A.   Yes.  He has seizure disorder, which I
12  think is a major part of his overall health picture.
13  His seizure disorder was known to have existed
14  already in 1992.
15            Subsequent to that, he had a number of
16  traumatic brain injuries from -- one was a violent
17  episode, and then a number of car accidents.  A
18  couple of those were noted to significantly worsen
19  his seizure disorder.  And then he's got
20  throughout -- this is sort of another theme in his
21  health records, is that changing his antiseizure
22  medications in order to get better control; he's done
23  a number of laboratory studies that show that his
24  therapeutic levels of those medications is not high
25  enough to give him adequate control.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4634

```
 1             And then a really sort of profound thing
 2    that happened during those hospitalizations, when he
 3    was acutely sick, and in and out of the sort of
 4    incarceration medical facility and University
 5    Hospital, he was diagnosed with status epilepticus,
 6    which is a life-threatening emergency seizure.  He
 7    had a single seizure that lasted eight days.
 8        Q.   Can you give us the time period for the
 9    status epilepticus diagnosis?
10        A.   Yes.  That, I believe, was in May of 2013.
11        Q.   And he had a seizure that lasted how long?
12        A.   Eight days.
13        Q.   And after that time, his medication was
14    changed?
15        A.   His medication was changed.  And what was
16    interesting about that seizure was it was revealed
17    that he not only has classic tonic-clonic
18    shaking-type seizures, but he also has these
19    subclinical seizures, which is, you know, to an
20    outsider, looks sort of like spacing out, not
21    participating in conversation, maybe a period of
22    lapsed cognition.  But it's not classically
23    identifiable as a seizure.  But because it's a
24    generalized seizure, the person having the seizure
25    may also not be aware that they are having or have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 295 4636

```
 1    had a seizure.

 2            So that particular episode medically was

 3    very interesting, and a number of different

 4    neurologists saw him at UNM.  And he was discharged

 5    on a new medication that he hadn't taken before

 6    called lacosamide at that time.  He's no longer on

 7    that medication now.

 8        Q.   Okay.  Jumping forward from that time to

 9    January and February 2016, you reviewed the records

10    that indicate what medications Mr. Perez was

11    prescribed?

12        A.   That's right.

13        Q.   Can you tell the Court what medications he

14    was prescribed during that period?

15        A.   I can.  And if you'll -- things were kind

16    of in flux, so let me tell you a little bit of a

17    story there, too.  When he first transitioned to that

18    facility, PNM, he was taking gabapentin, initially,

19    which was used, in his case, for neuropathic pain.

20    So he's got a number of pain issues, I would imagine,

21    due to his musculoskeletal disorders and trauma.  So

22    he was switched from a medication called gabapentin,

23    to a medication called Trileptal.  Trileptal is an

24    anti-seizure medication, but in his case at that

25    time, it was being used to control his pain.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4636

1          There are a number of recorded notes

2     between P.A. Martinez, who we met yesterday, and

3     Rudy, that his pain was not well controlled at that

4     time.  And on January 21, his medication was

5     switched.  And that was a switch made from Trileptal

6     to Nortriptyline, which I mentioned earlier, is an

7     antidepressant that can also be used for pain.

8          The problem in that case, though, is even

9     in a healthy person without a seizure disorder, you

10    can't stop Trileptal cold turkey or it will

11    precipitate seizures.  Because it's neuroactive pain

12    medication, it acts on your brain in particular, and

13    it can lower the seizure threshold.  So that

14    medication needs to be weaned off over four to six

15    weeks.  Unfortunately, it wasn't done that way.

16         So starting at the end of January 2016, he

17    had a medication error that would have predisposed

18    him to seizures.  Again, he had several -- we know

19    that he had at least two different kinds of seizures

20    that he was prone to, both obvious shaking,

21    tonic-clonic-type seizures, and also these

22    subclinical or partial or nonshaking-type seizures.

23         THE COURT:  Ms. Fox-Young, let's talk a

24    little bit about scheduling.  How much longer do you

25    have with this witness?  Because we're past 5:30.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4637

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 297   4638

```
 1                MS. FOX-YOUNG:  Three minutes, Your Honor,
 2     or less.
 3                THE COURT:  All right.
 4                MS. FOX-YOUNG:  She talks fast.
 5                THE COURT:  That creates other problems.
 6        A.   Did you want me to go through more of his
 7     medications at the time of --
 8        Q.   Dr. Brislen, I'd just like to ask you,
 9     specifically in February 2016, was Mr. Perez taking
10     any opiates?
11        A.   He was taking tramadol twice a day.  And
12     we -- there is some controversy about whether or not
13     to classify tramadol as an opiate.  Tramadol is a
14     synthetic medication that's sort of like a lesser
15     cousin of classic pain control opiates, like --
16        Q.   Okay.  Sorry to interrupt.  We heard
17     Dr. French testify about tramadol and the way
18     Suboxone can overtake -- like it overtakes tramadol.
19     Are there any other opiates -- and I understand maybe
20     tramadol is not properly characterized as an
21     opiate -- any other opiates that Mr. Perez was
22     taking?
23        A.   No, nothing administered or prescribed.
24                MS. FOX-YOUNG:  Your Honor, I pass the
25     witness.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4639

1              THE COURT:  All right.  Thank you, Ms.

2     Fox-Young.

3              Any of the defendants have questions of Dr.

4     Brislen?

5              Mr. Beck.  How long do you think your cross

6     will last?

7              MR. BECK:  I think it should be short, Your

8     Honor.

9              THE COURT:  All right.

10                      EXAMINATION

11    BY MR. BECK:

12       Q.   And I'm trying to catch up, because you did

13    speak really fast.

14       A.   I'm facing the clock.

15       Q.   No, no, I got you.  That, plus my

16    handwriting is very difficult.  You said at the end

17    there -- and I'll work my way back I guess -- that

18    Mr. Perez was taking no other opiates prescribed.

19    Was that your testimony?

20       A.   That's right.

21       Q.   Was he taking opiates that weren't

22    prescribed?

23       A.   I wouldn't know.

24       Q.   You didn't see anything in the medical

25    records that reflect he was taking opiates that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4639

```
 1    weren't prescribed?

 2         A.    Correct.

 3         Q.    And other than what you've heard from him

 4    or his attorneys, do you have any other evidence he

 5    was taking opiates that weren't prescribed?

 6         A.    No.

 7         Q.    Did you listen to the recordings of Mr.

 8    Perez that have been entered into evidence in this

 9    hearing?

10         A.    No.

11         Q.    Did you form an opinion whether he was

12    having any kind of seizure during those recorded

13    conversations?

14         A.    No.

15         Q.    Did you form an opinion whether he had

16    seizures at any specific times during February of

17    2016?

18         A.    I think, you know, similar to what his

19    primary care provider, P.A. Martinez, said yesterday.

20    It would be hard to know for anyone, including Rudy

21    himself.  But my answer is no, I don't have an

22    opinion.

23         Q.    That's a no.

24              MR. BECK:  Nothing further, Your Honor.

25              THE COURT:  All right.  Thank you, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4640

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 300

```
 1   Beck.
 2            Anyone else?  Ms. Fox-Young, redirect?
 3            MS. FOX-YOUNG:  Your Honor, just one
 4   question, I think.
 5                      REDIRECT EXAMINATION
 6   BY MS. FOX-YOUNG:
 7       Q.   Dr. Brislen, how would you describe Mr.
 8   Perez' general medical health in February 2016?
 9       A.   Gosh, it's hard to narrow that down.  I
10   would say his general health was fragile, and I would
11   characterize him as very high risk of seizures.  If I
12   was his provider at that time, that would have my
13   primary concern, in addition to falls.
14            MS. FOX-YOUNG:  Thank you, Your Honor.  No
15   further questions.
16            THE COURT:  Thank you, Ms. Fox-Young.
17            Dr. Brislen, you may step down.  Thank you
18   for your testimony.
19            All right.  I'm about to finish up on the
20   opinion for the severance motion for Mr. Sanchez.  So
21   I'm going to get that out the door.  If y'all have
22   something else you want me to reconsider, think
23   harder about -- Ms. Sirignano?
24            MS. SIRIGNANO:  Judge, we filed a notice
25   regarding the 4275, the Garcia drug case, which you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4641

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 301642

1   requested to be brought into this case.

2           THE COURT:  I'll tell you what to do:  If

3   you've got a list, tomorrow when y'all are talking to

4   Ms. Wild, give her that list.  Okay?

5           MS. SIRIGNANO:  I will, Judge.  It's been

6   filed and I'll give one to her.

7           THE COURT:  All right.  So there is a

8   notice that tells me what I need -- yeah, I've seen

9   that.

10          MS. SIRIGNANO:  Yes, Judge.

11          THE COURT:  Is everybody in agreement?  If

12  somebody thinks something ought to go ahead of Ms.

13  Sirignano's motions from the Garcia drug case that

14  we're smoothing over here, let me know.  Otherwise,

15  I'll take Ms. Sirignano's as the line-up.

16          All right.  I'll see y'all at 9:00.

17  Lawyers need to talk to Ms. Wild to get the schedule

18  down, what we're doing on Wednesday.

19          Thanks for everybody's hard work.  Be safe.

20  Have a good weekend.  See y'all on Monday.

21          (The Court was adjourned.)

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                   C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on December 20, 2017.

15

16

17

18         _____
                    Jennifer Bean, FAPR, RMR-RDR-CCR
19                  Certified Realtime Reporter
                    United States Court Reporter
20                  NM CCR #94
                    333 Lomas, Northwest
21                  Albuquerque, New Mexico 87102
                    Phone:   (505) 348-2283
22                  Fax:     (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7        Defendants.

8                    VOLUME 1

9        Transcript of Combined Motions to Suppress
     Proceedings and Daubert Hearings before The Honorable
10   James O. Browning, United States District Judge, Las
     Cruces, Dona County, New Mexico, commencing on
11   December 18, 2017.

12

     For the Government:  Ms. Maria Armijo; Mr. Randy
13   Castellano; Mr. Matthew Beck

14   For the Defendants:  Mr. Brock Benjamin; Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Robert Cooper;
15   Mr. Jeff Lahann; Mr. Orlando Mondragon; Mr. John
     Granberg; Mr. Billy Blackburn; Mr. Scott Davidson;
16   Ms. Amy Jacks; Mr. Richard Jewkes; Ms. Amy Sirignano;
     Mr. Christopher Adams; Mr. Marc Lowry; Ms. Theresa
17   Duncan; Ms. Carey Bhalla; Mr. William Maynard; Ms.
     Justine Fox-Young; Mr. Donovan Roberts; Ms. Lisa
18   Torraco; Ms. Angela Arellanes; Mr. Jerry Walz

19

     For the Defendants (Via telephone):  Mr. James Castle
20

21

22

23

24

25




SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                            FAX (505) 843-9492
                                               1-800-669-9492
                                        e-mail: info@litsupport.com

DNM 4644

```
 1              THE COURT:  All right.  Good morning
 2    everyone.  Let's grab a seat.  It looks to me like
 3    everybody has at least one attorney.  So make sure
 4    you look around, check for your co-defendants, and
 5    make sure everybody has an attorney.
 6              I don't think there is a big change in
 7    attorneys from last week.  I know, Mr. Villa, you're
 8    on the telephone, and you will be gone this afternoon
 9    and tomorrow; is that correct?  Mr. Villa, are you
10    there?  Got your mute button on?  Mr. Villa?  All
11    right.  Well, that's what I understand his situation
12    is; is that correct?
13              MS. FOX-YOUNG:  Your Honor, Mr. Villa is
14    going to call in for portions.  He might just be
15    getting on momentarily.
16              THE COURT:  All right.  And I understand
17    Raquel, your paralegal, is going to be calling in?
18              MS. HARBOUR-VALDEZ:  Yes, Your Honor.
19              THE COURT:  Are you on the phone?
20              MS. RODRIGUEZ:  I'm here.
21              THE COURT:  All right.  Ms. Rodriguez, good
22    morning to you.
23              Any other changes in counsel this morning?
24              All right.  I understand from Ms. Wild and
25    Ms. Standridge that you have the same thing I have in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4645

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4646

 1   front of me, and that is the notice, the batting

 2   order for this week.  And so the only other thing I

 3   know to mention to you is I think that Ms. Wild has

 4   been in touch with you about the jury questionnaires,

 5   putting those into your hands.  So if there is any

 6   questions on that, we can discuss it.  Otherwise, I

 7   assume Ms. Wild has discussed that.

 8            Ms. Wild, you're on the phone as well this

 9   morning; correct?

10            THE CLERK:  I am, Judge.

11            THE COURT:  Is there anything I should go

12   ahead and put on the record about the jury

13   questionnaires?

14            THE CLERK:  I don't think so.  I sent out

15   that email.  So just to confirm they received the

16   email and the rolling production and the date set.  I

17   don't have the information.  I think it should be

18   accurate.

19            THE COURT:  How long is the email?

20            THE CLERK:  The email is not very long.

21            THE COURT:  Why don't you go ahead and read

22   it into the record so it's in the record.  You and I

23   have talked about it, but I think it would be good if

24   I heard it and everybody else and it's on the record.

25            THE CLERK:  Sure.  I sent an email this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4646

 1   morning to Ms. Armijo, Mr. Sirignano, and Ms.

 2   Harbour-Valdez that stated the following:

 3           "Good morning.  Please let the parties know

 4   that the juror questionnaires will be distributed

 5   electronically to counsel for the Group 1 defendants

 6   on a rolling basis, as follows:  December 20 -- there

 7   is a typo; it should say 2017 -- December 27, 2017,

 8   and January 3, 2017 (sic).  Please let me know if you

 9   have any questions or concerns."

10           THE COURT:  All right.  Ms. Harbour-Valdez,

11   did you have anything you wanted to say on that?

12           MS. HARBOUR-VALDEZ:  Your Honor, I hadn't

13   circulated that to the group yet.  But now that it's

14   in the record, it's taken care of.

15           THE COURT:  All right.  Everybody knows.

16   Anybody have any comments on that?  All right.

17           Thank you, Ms. Wild.

18           All right.  What I think is originally

19   noticed for today is the defendant's motion for order

20   to show cause for noncompliance of district court

21   orders during the May 9 through the 10th hearings.

22   It looked like that was mostly yours, Ms. Sirignano.

23   Are you going to take the lead on it?  What is left?

24   It looked like y'all were getting things resolved.

25   But tell me what issues are left for us to resolve.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4647

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5648

1   Maybe we'll take them one at a time and deal with

2   them that way.

3          MS. SIRIGNANO:  Good morning, Your Honor.

4   Amy Sirignano for Christopher Garcia.

5          THE COURT:  Ms. Sirignano.

6          MS. SIRIGNANO:  Mr. Lowry is going to take

7   the lead on this one.

8          THE COURT:  All right.  Thank you, Ms.

9   Sirignano.

10          Mr. Lowry.

11          MR. LOWRY:  Thank you, Your Honor.  I

12   conferred with the United States this morning, Your

13   Honor.  I think your instincts are correct.  We've

14   narrowed this down a bit.  And I'm reading off of the

15   reply brief on page 2.  With regard to the rough

16   notes, I believe that the United States has indicated

17   to us that they have preserved all the rough notes.

18   And they've indicated that they're considering them

19   to be Jencks material to be produced on the Jencks

20   timeline.  I know that there is at least a handful

21   that we think may fall into the Brady, Giglio.  I

22   didn't get a chance to speak with Ms. Armijo about

23   that.  But it comes to mind, the February 19 debrief

24   with Eric Duran.  So if we could just again request

25   that the United States do their Brady-Giglio review

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4648

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4649

 1   for those materials, to see if there is exculpatory.

 2             THE COURT:  This is the Eric Duran 302?

 3             MR. LOWRY:  Yes, Your Honor.  And there was

 4   an audio-taped conversation, a sit-down at the FBI

 5   office in Santa Fe that was associated with that.

 6   That's been produced in full.  I guess my concern is

 7   the rough notes may indicate that there is more to

 8   that meeting than the tape recorder captured.  I

 9   think, if I remember correctly, Ms. Armijo didn't

10   seem to think that that was the case.  But I don't

11   have the luxury of looking at the rough notes to

12   understand that or not.  So --

13             THE COURT:  All right.  Do you want to --

14   let's take these one at a time.  Anybody else have

15   anything on that?

16             All right.  Ms. Armijo.

17             MS. ARMIJO:  Your Honor, I believe that

18   what we indicated was we would review all the --

19   there would be a review of the notes for

20   Brady-Giglio.  I don't know that we agreed

21   necessarily that they would be disclosed.  However,

22   they are being preserved at a minimum.  I'll get

23   to -- and I think Mr. Lowry and I had briefly talked

24   about this right before court, and we had agreed to

25   kind of talk over a break to try and resolve some of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4649

1  these issues, because there is a couple of things

2  that I had questions for him about.  So that might be

3  a better use of our time, because most of it, I

4  think, is resolved, and we're working on a couple of

5  other issues.

6          THE COURT:  Well, if it's Jencks material,

7  of course, what I've said in the past, you don't have

8  to disclose it till Jencks requires you to disclose

9  it.  But if it is Brady or Giglio material, I take a

10  little different position than the Government does;

11  that needs to be turned over immediately.  So if you

12  do you find some Brady and Giglio material in here,

13  Duran 302s or materials, then those need to be

14  produced immediately.

15          MR. LOWRY:  Your Honor, I want to echo what

16  Ms. Armijo said.  We had -- before court began this

17  morning, we were working constructively through what

18  few differences we have left.  And I don't know if

19  the Court's preference is to hold off on this to

20  maybe right after the lunch break.

21          THE COURT:  All right.  Why don't we do

22  this:  Unless somebody has an objection, we'll put it

23  aside, and see if y'all have any disputes.  If there

24  are disputes, I'll put it on you, Mr. Lowry and Ms.

25  Sirignano, to tell the Court.  Otherwise, I'll assume

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    all the disputes have been resolved here.  And y'all

2    tell me if you don't have it, you'll bring it back

3    up.

4             MR. LOWRY:  Thank you, Your Honor.  If

5    necessary we'll bring it right back after the lunch

6    hour.

7             THE COURT:  All right.  I understand the

8    next portion of the hearing will be the resuming of

9    the presentation of evidence and argument on the

10   motion to suppress involuntary statements.  This is

11   1294 and 1295.  Are these the two we're taking

12   together?

13            MS. FOX-YOUNG:  Yes, Judge.

14            THE COURT:  All right.  So who has got

15   presentation of evidence?  Do you have it, Ms.

16   Fox-Young?

17            MS. FOX-YOUNG:  Your Honor, for Mr. Perez

18   we have no further witnesses.

19            THE COURT:  All right.  Mr. Maynard, do you

20   have witnesses you want to present?

21            MR. MAYNARD:  Your Honor, we've discussed

22   whether to present witnesses, or in lieu of a

23   witness, an affidavit.  And I would like to present

24   in support of Mr. Herrera's motion to suppress the

25   affidavit as an exhibit, the affidavit which is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4651

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9652

```
 1    attached to the motion itself regarding the

 2    conditions of -- the segregation conditions that he

 3    was in, and receipt of Suboxone from Mr. Cordova in

 4    support of a motion to suppress.

 5              THE COURT:  All right.

 6              MR. MAYNARD:  And that's the end of our

 7    evidence.  We rest.

 8              THE COURT:  All right.  What is this going

 9    to be marked as, as an exhibit in this hearing?

10              MR. MAYNARD:  I need to talk to counsel and

11    see if --

12              MS. BHALLA:  I believe it's J.

13              MR. MAYNARD:  CH-J.

14              THE COURT:  All right.  Help me out, Ms.

15    Bhalla.  Is that where you were on the hearings for

16    the 1294 and 1295?

17              MS. BHALLA:  I believe so, Your Honor.

18              THE COURT:  I have that as your next

19    exhibit; correct?

20              MS. BHALLA:  Yes, Your Honor.

21              THE COURT:  Ms. Standridge, do you agree

22    with that?

23              THE CLERK:  Yes.

24              THE COURT:  All right.  Any objection to

25    that from any other defendants?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4652

```
 1                How about you, Ms. Armijo?

 2                MS. ARMIJO:  No, Your Honor.

 3                THE COURT:  All right.  So Carlos Herrera's

 4      Exhibit J will be admitted into evidence.

 5                All right.  Any further witnesses or

 6      evidence, Mr. Maynard?

 7                MR. MAYNARD:  No, Your Honor.

 8                THE COURT:  How about any other defendants?

 9      Anybody else have anything on 1294, 1295 they want to

10      present?

11                All right.  Ms. Armijo, does the Government

12      have rebuttal evidence or evidence it wishes to

13      present?

14                MS. ARMIJO:  We do not.

15                THE COURT:  All right.  Are the defendants

16      ready to argue the motion?  Ms. Fox-Young?

17                MS. FOX-YOUNG:  Thank you, Your Honor.

18                THE COURT:  Ms. Fox-Young.

19                MS. FOX-YOUNG:  As the Court heard in Mr.

20      Perez' opening argument -- and the Court is well

21      aware and familiar with the standard -- it is the

22      Government's burden to prove the constitutionality of

23      any statements made by Mr. Perez, the statements at

24      issue in this case.

25                The Court knows that a finding of coercion
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4653

1    does not depend -- need not depend upon actual

2    violence by a Government agent, and that a credible

3    threat is sufficient, and that that threat might be

4    mental or physical.  And that comes from Fulminante,

5    which of course we cite, at 49 U.S. 279, at 287.

6             Without rehashing everything that we

7    briefed, and the information that's contained in our

8    pleadings, I would just like to draw the Court's

9    attention to some of the evidence that came out in

10   the course of the hearing.  The Court heard first

11   about Mr. Perez' health -- not first in the hearing,

12   but it's a critical factor -- the Court heard from

13   Dr. Brislen, who at the end of our hearing on

14   Wednesday described Mr. Perez as extremely fragile.

15   She talked about the documentation, the evidence of a

16   series of physical traumas to Mr. Perez, the multiple

17   organ system problems that he had at the time of

18   February 2016, his persistent and uncontrolled

19   seizures, a low IQ that he had had documented since

20   childhood, anxiety, severe pain for which he took

21   tramadol and gabapentin.  She talked about his

22   seizure medication, which was changed in January of

23   2016, right before the statements that he made to

24   Billy Cordova, and talked about how it wasn't

25   tapered, and should have been.  Also talked about his

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4654

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4655

1  diabetes, abdominal problems, and other psych

2  disorders.

3          Clearly, Mr. Perez' physical and mental

4  health was well evident to the Corrections

5  Department.  He had a walker outside his cell.  And

6  the Court heard from Physician's Assistant Martinez

7  who said that he saw Mr. Perez approximately twice

8  weekly during this time for various maladies.  He was

9  taken to and from those appointments by correctional

10 officers.

11          The Court also knows that Mr. Perez had

12 been in segregation all told at PNM, was a total of

13 10 months.  He had been there since the summer of

14 2015.  And prior to that, he was held in segregation

15 at another facility.  But he had been in segregation

16 at PNM Level 6 since June of 2015.  The Court heard

17 that that was not pursuant to the Department's

18 policy, which is only instructive insofar as it

19 demonstrates that the Department was looking for

20 reasons to hold Rudy Perez, reasons contrary and

21 outside of policy, to hold Rudy Perez so that they

22 could extract statements from him.  And, you know,

23 the Court will see that in the Government's response,

24 the Government says Mr. Perez was not specifically

25 targeted to be placed in restrictive housing.  He was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4655

1   held there because he needed a handicapped cell,

2   because he was an SNM member, because he'd had

3   discipline.  There is no documentation of this.

4           What there is documentation of is that well

5   over a year after the Department had closed the books

6   on the Molina investigation, they shipped Mr. Perez

7   to Santa Fe and held him at PNM, and had no

8   justification for it.  He didn't have a hearing.

9   There was no credible threat as required by -- and I

10  don't have the exhibits in front of me, if the Court

11  would like to go through them -- but as required by

12  the Corrections Department policies.  They just held

13  him there because they wanted to put him in a corner

14  cell next to Billy Cordova and work to extract

15  statements.

16          The Court heard from Mr. Roark about the

17  deleterious effects of holding somebody in

18  segregation.  And I know the Court has heard various

19  other cases in the criminal and civil context, and

20  probably could take judicial notice of the effects of

21  living in solitary, with little to no rec, no access

22  to other people, to sunlight.  The Court saw the cell

23  where Mr. Perez was housed in the video.  And just

24  very limited stimulation for weeks and weeks and

25  weeks on end.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4656

```
 1              So at the time, then, that the Government
 2     places Mr. Billy Cordova, who had been opened as an
 3     informant and was acting as a government agent, in a
 4     cell next to Mr. Perez, the Government has already
 5     primed Mr. Perez to do what they want -- I mean, they
 6     want to extract statements.  The Court heard from
 7     Agent Acee that Mr. Cordova was instructed to record
 8     statements and he said to get bodies, to get whatever
 9     he could in order to get that information for
10     Mr. Acee.
11              I think Billy Cordova's testimony was very
12     illuminating for the Court.  One of the first things
13     he talked about were the pressure points that he used
14     to get Rudy Perez to talk.  And he said, Your Honor,
15     he confirmed absolutely the SNM was going to move on
16     Rudy Perez.  He said to this Court, "they were going
17     to move on him," meaning they were going to kill Rudy
18     because they thought that he was cooperating at the
19     time.
20              And he explained -- and for background, the
21     first indictment in this case was in November 2015.
22     Mr. Perez was not indicted.  And so rumors were
23     swirling around the prisons.  Cordova testified that
24     within days they knew the piece came from a walker,
25     and they assumed it was because Rudy talked, that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4657

```
 1   why SNM members, including Billy Cordova, thought
 2   that piece must have come from -- they thought that's
 3   why the Government knew where the piece came from.
 4   Everybody suspected Mr. Perez.  Mr. Perez knew it,
 5   and Billy Cordova knew it.  And that is the main
 6   pressure point, in Billy Cordova's language, that he
 7   used to extract statements.
 8          Mr. Cordova had every reason to do anything
 9   he could to get Mr. Perez to talk.  He was getting a
10   get out of jail free card from Agent Acee on the RICO
11   case.  Agent Acee made it very clear that Agent Neale
12   was going to stop compiling overt acts against Billy
13   Cordova if he cooperated, if he got statements.
14          I think the Court can also deduce from Mr.
15   Cordova's testimony that he really can't be trusted.
16   Agent Acee talked about how he had to close him as an
17   agent because he couldn't follow the rules and he
18   couldn't be controlled.  And the Court should take
19   that into consideration.
20          Next, the Court heard ample evidence, after
21   all of the evidence of Mr. Perez' frailty, his
22   situation, mental and physical, in February 2016,
23   this agent of the Government, Billy Cordova, gives
24   him Suboxone.
25          Now, Billy Cordova, of course, denied that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4658

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4659

1   on the stand.  And the Government will argue that

2   there is no proof that he did provide it.  The Court

3   heard on cross-examination that Cordova said he was

4   never asked by the Government whether he had given it

5   to Rudy, and didn't know it was the subject of a

6   hearing.  He wouldn't cop to giving him Suboxone when

7   he was on the stand, but he knew everything about

8   Suboxone.  The Court heard him talk about using it in

9   every facility except for he says didn't use it in

10  Clayton.  He talked about how he fished a line, how

11  he would fish a line, how he had fished lines through

12  the vents of the cells.  He walked through the video

13  from PNM and said exactly how it was done.  How much

14  it took to get high, when he would take it, how you

15  would get it.  He knew in and out everything there

16  was to know about Suboxone, and freely admitted that

17  he would use it, and he would share it if he had it.

18          The Court heard from Mr. Perez, of course,

19  who testified credibly that he had been given it, and

20  he had taken it on multiple occasions when he talked

21  to Billy Cordova.

22          The Court also heard from Dr. Edward

23  French, who testified both in direct and on cross

24  about the effect that Suboxone could have on

25  overbearing someone's will.  I think Ms. Armijo asked

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4659

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4660

 1 | him directly if that was possible.  And he said,
 2 | Absolutely, reduces judgment, reduces executive
 3 | function.  I think, when you look at Rudy Perez and
 4 | the state that he was in, the time that he had spent
 5 | in seg, the time -- or the numerous and escalating
 6 | physical and mental conditions that he had, then he's
 7 | given Suboxone, I think clearly could overbear his
 8 | will.  And it did.
 9 |         I think when the Court looks at the
10 | standard from Fulminante, and the Fulminante case
11 | itself, the facts here really do parallel that case.
12 | They come about as close as you can come to
13 | Fulminante, given the circumstances here.
14 |         I'll note that the Tenth Circuit in United
15 | States versus Gonzales; that's 164 F.3d 1285, at
16 | 1289, has discussed the relevant factors that courts
17 | have identified in considering whether or not there
18 | is coercion.  Those include the suspect's age,
19 | intelligence, and education, the length of detention
20 | and questioning, the use or threat of physical
21 | punishment, and whether Miranda warnings were given,
22 | and the accused's physical and mental
23 | characteristics, the location of the interrogation,
24 | and the conduct of the police officers.  One by one,
25 | you know, the Court heard about Mr. Perez' age,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4660

```
 1   intelligence, and education, and his extreme

 2   debilitating physical conditions, his mental state.

 3   He had been in seg for a long period of time, which

 4   clearly had consequences and effects for him; the

 5   conduct of the Corrections Department and the FBI and

 6   Billy Cordova all working together to extract these

 7   statements from him; the where he was placed; the

 8   fact that he was placed in a cell where he could only

 9   talk to Cordova, all really significant.

10          And you almost can check every box when you

11   look at these factors that have been identified.  I

12   think this is absolutely a clear, almost textbook

13   case of coercion under those cases.

14          The Court will likely remember the facts

15   from Fulminante, where the Supreme Court affirmed the

16   Arizona Supreme Court.  In that case, a prisoner had

17   confessed to a fellow inmate who was a paid

18   informant.  The prisoner, the defendant there, had

19   been in prison in New York, and he was befriended by

20   the CI.  The CI learned that he was a suspect in the

21   murder of his 11-year-old stepdaughter in Arizona.

22   And the CI told him, Look, I'll protect you from

23   other prisoners who have learned about the fact that

24   you're a suspected child killer, if you'll tell me

25   about the murder.  And he did.  And he did it for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4661

```
 1   protection.  The CI then reported the confession to
 2   police.  And Fulminante was charged.  At trial, the
 3   court denied his motion to suppress, and he was
 4   convicted.  And he was sentenced to death.  The
 5   Supreme Court, on hearing this, explained that
 6   because that CI's offer of protection was based on a
 7   credible threat of violence, Fulminante's will was
 8   overborne in such a way as to render his confession
 9   the product of coercion.  And then the Court didn't
10   rely on these factors in that case, but talked again
11   about low intelligence, lack of education, small
12   stature, and feelings of vulnerability.
13          Mr. Perez, when you look at all these
14   factors that form the context for where he was in
15   February 2016, when he made these statements, he
16   absolutely was vulnerable.  And it was that threat,
17   Billy Cordova saying they were going to move on him,
18   that was in his mind, among other things, when he
19   made the statements.  Cordova knew that he could get
20   him to say virtually anything because he couldn't
21   protect himself.  He couldn't defend himself.  Mr.
22   Perez was largely immobile.  He was very sick.  He
23   knew that -- and as he told the Court, Billy Cordova
24   had a big mouth, and he would protect him if he gave
25   him what he needed.  And that's exactly what he did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4662

1          The Court I think is also well aware of the

2     Guerro, G-U-E-R-R-O, decision; that's Tenth Circuit,

3     983 F.2d 1001 at 1002.  That's a case from 1993.  And

4     the Government cites it.  The Guerro court found that

5     the police must overreach by exploiting a weakness or

6     a condition known to exist in order to find coercion.

7     That's exactly what happened here.

8          And I think the Government -- we'll see

9     what they have to say, but I think they'll likely

10    argue that, Look, Corrections Department put Rudy

11    Perez where they put him.  The FBI didn't know.  And

12    Billy Cordova just popped up in Level 6, and this

13    just happened.  That's not the way it works.  All

14    those entities and Mr. Cordova were working together

15    as government agents, and they exploited the

16    weaknesses and vulnerabilities in Mr. Perez, knowing

17    that there were rumors that he was cooperating, and

18    knowing that he feared for his life.

19         And that, Your Honor, is precisely what

20    makes the extraction of these statements coercive --

21    in our briefing we cite to -- I've given you

22    Gonzalez -- I think the Court in Tafoya looked

23    closely at this issue.  That's your case, Your Honor.

24    Of course, in Tafoya, the individual was Mirandized.

25    And all the cases point out that that's pretty

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4663

```
 1   significant.  Here, of course, Mr. Perez wasn't.  But
 2   I think if the Court looks to the cases that you
 3   cited in Tafoya, they are also instructive.  I'll
 4   also point the Court to Beecher versus Alabama case,
 5   where the Supreme Court held that the confession of a
 6   prison escapee, accused of rape and murder was
 7   involuntary, when he was questioned by investigators
 8   in an infirmary while he was under the influence of
 9   morphine for a gunshot he sustained.  The court heard
10   from Mr. French that Suboxone is stronger than
11   morphine.  And the cocktail that Mr. Perez was on, I
12   think, clearly makes the statements involuntary.
13          And unless the Court has any specific
14   questions, I will respond in a reply.
15          THE COURT:  I don't believe I have any at
16   this time.  Thank you, Ms. Fox-Young.
17          Mr. Maynard, Ms. Bhalla, do you have
18   argument on Mr. Herrera's part?
19          THE COURT:  Ms. Bhalla.
20          MS. BHALLA:  Thank you, Your Honor.  I'll
21   try to keep it brief.  I think that Ms. Fox-Young did
22   a good job going over the case law.
23          You know, Your Honor, I think it's
24   interesting that some of the testimony was that they
25   didn't know why these guys were in seg, or that it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4664

 1   was part of the investigation.  The policy, when you
 2   look at it, is pretty clear that they have to have a
 3   real, justifiable reason why these guys were put in
 4   administrative segregation.
 5          And I think that the evidence that we've
 6   submitted through the records shows that after the
 7   Molina homicide, Mr. Herrera was put on lockdown from
 8   the time of the homicide onward.  They're still in
 9   administrative seg.  And that is absolutely a tool
10   that the Government can use to prime the pump to get
11   people ready to make statements.
12          One of the things I find the most
13   interesting about that argument is when you look at
14   the internal documents regarding Mr. Herrera, you see
15   that there were no articulable safety threats in any
16   of the other documents.  In fact, his classification
17   records indicated that he had no gang activity for
18   the past 10 years, and there were no active security
19   threats on his file, which tells you that that wasn't
20   done as part of the investigation into the Molina
21   homicide.  It was done for a specific purpose and for
22   a specific reason.
23          Mr. Cordova testified that drugs are life.
24   At first, he denied having this conversation with
25   Special Agent Acee.  But later, he admitted to him

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4665

 1    that when Special Agent Acee brought him in to talk

 2    to him before he was put in the cell next to Mr.

 3    Herrera and Mr. Perez, Look, drugs are life.  And

 4    Special Agent Acee testified that he doesn't recall

 5    giving him any special instructions not to use drugs

 6    when he was placed next to Mr. Herrera, even though

 7    Mr. Cordova told Mr. Acee, and Mr. Acee was aware of

 8    the use of drugs.

 9              And I want to think about, or draw the

10    Court's attention to what happens in a typical

11    controlled substance bust.  When you've got an agent

12    working with an undercover person; they go to buy

13    drugs, they get searched.  They search them.  They

14    make sure they don't have any other money, they make

15    sure they don't have any other drugs, they make sure

16    it's a clean site, they send them, they do the bust,

17    they come back and then they make the arrest.  None

18    of that happened here.  And it happened for a reason.

19    They didn't search Cordova.  They didn't make sure he

20    wasn't using drugs.  They weren't checking his tape

21    or checking the recording out to make sure that there

22    were no tools of coercion being employed.  They

23    turned a blind eye to it because it was beneficial to

24    them.  And there is no doubt that Cordova was working

25    as an agent for the Government.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              I'm going to ask the Court to really take a
 2    look at the transcripts that we admitted during this
 3    hearing, and to look at Mr. Herrera's statement, and
 4    to look at the number of inaudibles and the number of
 5    stutters, and the number of times he's nonresponsive.
 6              The evidence in the transcripts, where Mr.
 7    Cordova is talking about how much he can get drugs
 8    for, about purchasing drugs, about giving those drugs
 9    to the people who were next to him in the cells.
10    There is ample evidence for the Court to find that
11    this was happening and that this was going on, and
12    that Mr. Herrera was impaired at the time he made
13    those statements, just by looking at the transcripts.
14    And Special Agent Acee himself testified that that
15    would be something he would consider as a DRE
16    officer:  A person's ability to comprehend,
17    understand, and respond to questions.
18              One thing that Fulminante and these other
19    cases talk about, one of the major reasons we have --
20    we have limits on this.  And one of the reasons the
21    Court should look at suppressing this is to prevent
22    future violations of the Constitution.  And that's
23    the question I have, you know, for the Court:  Is
24    this how we want to do business?  Do we want to be
25    putting informants next to people and allowing them
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4667

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25668

1    to give drugs to defendants who have been in

2    lockdown, who have been isolated, who have been

3    deprived of pretty much anything resembling a normal

4    life, give them drugs so that they can get

5    statements?  Is this how we want to do business?  And

6    I would pose that the answer to that question is no.

7            And I would ask the Court to look at the

8    transcripts, to look at Mr. Herrera's affidavit, to

9    look at the documents that prove that NMDOC had no

10   reason to put these guys on lockdown, and to suppress

11   the statements.

12           Does the Court have any questions for me,

13   Your Honor?

14           THE COURT:  Not at this time.  I appreciate

15   it, Ms. Bhalla.

16           MS. BHALLA:  Thank you, Your Honor.

17           THE COURT:  All right.  How about any of

18   the defendants?  Do y'all want to speak on these two

19   motions to suppress by Mr. Herrera and Mr. Perez,

20   from the defendants?

21           All right.  Mr. Beck, are you going to

22   handle the argument here?

23           MR. BECK:  Yes, Your Honor.

24           THE COURT:  Mr. Beck.

25           MR. BECK:  I think it's important to look



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4668

```
 1    first at Mr. Perez.  And Your Honor was able to view
 2    Mr. Perez on the stand.  And it's important to look
 3    what was in the motion, versus where we've come to
 4    today.
 5           The first thing in the motion was the
 6    statements are not voluntary and not intelligent,
 7    because Mr. Perez was under the influence of Suboxone
 8    provided to him by Mr. Cordova.  You heard Mr.
 9    Cordova get up on the stand and say he didn't do so.
10    You heard Mr. Perez contrary to that.
11           But I want the Court to look at
12    cross-examination of Mr. Cordova, because Mr. Villa
13    brought out from Mr. Cordova that Mr. Cordova was a
14    soldier, and that he was known for talking a lot.
15    And indeed, Mr. Perez was intelligent enough,
16    although purportedly under the influence of Suboxone
17    and couldn't give voluntary or intelligent
18    statements, but yet was intelligent enough to know
19    that he could use Mr. Cordova to spread rumors
20    amongst everyone else in prison that he wasn't a rat.
21    So that gets rid of the not voluntary, not
22    intelligent.  Mr. Perez said that same thing on the
23    stand.  He said he knew Mr. Cordova was a soldier, he
24    knew he talked a lot in the prisons.  And Mr. Perez
25    could use Mr. Cordova to spread rumors around him to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4669

1    insulate himself.

2         So the key inquiry here is whether they

3    were voluntary and intelligent statements, or whether

4    they were coerced statements by some mental

5    incapacity.  Mr. Perez' own testimony, as well as

6    cross-examination of Mr. Cordova, by his own counsel,

7    get rid of any possibility that Mr. Perez did not

8    give voluntary and intelligent statements.  Indeed,

9    both of them brought out that he used Mr. Cordova in

10   a very intelligent manner.

11        And so regardless -- I mean, the inquiry is

12   clear:  There has to be some mental incapacity.  That

13   mental incapacity then has to be known by the

14   Government.  And then, third, the Government has to

15   take advantage of that known mental incapacity.

16        So the Court doesn't even have to reach the

17   decision here whether Mr. Cordova actually provided

18   Suboxone, because Mr. Perez' testimony was clear that

19   he provided a voluntary and intelligent statement.

20   Indeed, Mr. Perez said that he could recall specific

21   details about who was involved in the Molina homicide

22   from months before, when they were in a different

23   facility in the X pod.

24        Now, Ms. Fox-Young got up here and talked

25   about how we can't believe --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4670

```
 1              THE COURT:  I'm not sure I quite understood
 2     that last statement.  If you want to elaborate or say
 3     it again.
 4              MR. BECK:  Yes.  When Mr. Castellano was
 5     cross-examining Mr. Perez, he asked Mr. Perez:  You
 6     have all these specific details that identify exactly
 7     who was involved in the Molina homicide, who had the
 8     shanks, who made the shanks, who stabbed Molina, who
 9     took the shank after the murder, who didn't take the
10     shank after the murder, although he should have.  How
11     do you remember those?  And Mr. Perez said, Well, Mr.
12     Cordova told me, and that's how I knew those.  And
13     Mr. Castellano dialed him down and said, Well, when
14     did he tell you this?  He said, Well, we were all
15     together in X pod months before Billy Cordova came
16     in, and Eric Duran came in, and they had these
17     recorders; months before that we were in X pod.
18              And so now you've got someone who is
19     asserting in the motion that he was under the
20     influence of narcotics, or he didn't have a high
21     enough IQ, or somehow his physical disabilities
22     prevented him from making voluntary and intelligent
23     statements, when he did so, but yet, he can recall
24     specifically the exact things that -- not that he
25     knew, but that he was told only months before that,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4671

1    or months before that.  I mean, that just is not

2    credible, to know every one of those details, having

3    only been told that, as opposed to actually

4    experiencing it and actually being there.

5           So any claim that his statements were

6    involuntary and unintelligent are just vitiated by

7    his testimony and by what Mr. Villa brought out on

8    cross-examination.

9           To the extent -- I think there was

10   something about, if you look at the Fulminante case,

11   in that case, the defendant's statement was

12   involuntary because he was given a promise of

13   protection.  There was never any testimony brought

14   out from Mr. Cordova.  Mr. Cordova never testified on

15   direct examination that he ever promised Rudy Perez

16   anything in exchange for these.  What he said was

17   that he used pressure points, which Ms. Jacks brought

18   out on cross-examination.  He said -- and you'll find

19   this in the transcript when they're produced -- he

20   said in response to Ms. Jacks' cross-examination what

21   he meant by pressure points was that they can't come

22   out directly and say, Hey, did you do this?  And so

23   what he was doing was -- I'm quoting -- "trying to

24   get him to reveal the truth."  So pressure points

25   meant he was talking in coded language to try to get

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4672

1    the truth out, because in the prison walls, if you're

2    surreptitiously recording someone, you can't say,

3    Hey, did you provide the shanks for the Molina

4    homicide?  So with all that evidence, it's destroyed.

5         Now, if we get to the contentions about

6    being kept in involuntary segregation, and this

7    elaborate plan and this ruse to keep all of the SNM

8    members throughout the entire prison system in Level

9    6 secured lockdown, just so that we could go and --

10   just so that the FBI could go and get statements from

11   two people in the SNM, Perez and Herrera, if we think

12   about how illogical that is, when they said they had

13   hundreds of SNM members that were locked down, that

14   contention doesn't hold water.

15        But beyond just that being not logical, the

16   testimony didn't support it.  You heard from Mr.

17   Roark the reasons -- and he was in control of this,

18   he was head of the adult prison system.  You heard

19   from him the reasons they were on lockdown.  The

20   Molina homicide was that, if you look back at the

21   policy, it says, a violent incident was one of the

22   requirements.  That's the Molina homicide.  So he

23   attributed that to the entire STG, Security Threat

24   Group, all SNM members, all SNM-suspected members.

25        Now, that might be too broad, but that's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4673

```
 1    not the inquiry here.  That may be -- as I said in
 2    opening arguments for this, that may be a reason for
 3    a 1983 claim from Mr. Perez, Mr. Herrera, or other
 4    SNM members, but it's not a basis to find the
 5    statements involuntary or coerced by law enforcement
 6    in some manner.
 7            So, to find that there was coercion --
 8    excuse me, let me go back -- so the Molina homicide,
 9    and then as soon as they were being let down and
10    preparing to let them back into Level 4, in the
11    summer of 2015, in July 2015, Mr. Roark told you
12    there was the Julian Romero assault, and they were
13    again -- that was a violent incident, now they're
14    back into Level 6 under the policy.  So the fact
15    testimony from Mr. Roark, you heard it from the
16    horse's mouth about why those decisions were made,
17    and they do fit within the policy.  There is a
18    violent incident.
19            To find that this was a ruse, and that the
20    FBI somehow placed Mr. Herrera and Mr. Perez in the
21    cells solely to put Mr. Cordova next to him, you have
22    to find at least two people's testimony up there on
23    the stand incredible.  You have to find that Special
24    Agent Acee lied when he said he had no information
25    about why they were placed there; he didn't direct
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4674

1   anyone to do that; he didn't ask for anyone to do

2   that.  And you have to find him lying when he said he

3   didn't hear that from any of the STIU officers or

4   from Mr. Myers.  You also have to find that Mr. Roark

5   lied when he said he didn't have any information from

6   the FBI asking him to move Mr. Herrera and Mr. Perez.

7   You have to find that Mr. Roark lied when he told you

8   that they placed them in Level 6 because of the

9   Molina homicide and then because of the Julian Romero

10  assault.  So that's two-fold.

11          I think that gets rid of Mr. Herrera's

12  claim about being put there.  Also, I think the

13  argument was:  Read the transcripts, there is a lot

14  of unintelligibles.  If the Court looks closely at

15  the transcripts here, what the Court will find is

16  Carlos Herrera's Exhibit C.  And this was the

17  transcript in which you heard Mr. Cordova testify

18  that, when Mr. Chavez says, "Over there doing bad,

19  huh," in reference to "Lazy," Carlos Herrera, "doing

20  bad" as in not high, as in sober.  So you have that

21  testimony.  He was sober, was going to bed.  Then you

22  have Carlos Herrera's Exhibit A.  Now, bearing the

23  day -- this is one where I think was brought out how

24  many UIs there are, how many unintelligibles.  But

25  you heard unintelligible doesn't mean anything other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4675

1   than whoever is listening to that can't make out the

2   word.  In this first page we came up with, I think,

3   one stutter.

4          Now, instead of reading the transcripts, I

5   would invite the Court to listen to the recordings.

6   We heard from Mr. Perez.  We got his testimony up

7   there.  Some of the words, some of what he was saying

8   was difficult to understand.  You heard from Special

9   Agent Acee that it's difficult to understand what

10  these guys are saying -- excuse me, what these SNM

11  members are saying in the prison.  And in the

12  recording it's difficult to say.  That doesn't mean

13  he's under the influence, as opposed to it's

14  difficult to understand.

15         Now, we didn't benefit from getting to hear

16  Mr. Herrera up there on the stand, and listen to

17  whether we could understand him perfectly clearly.

18  All that we have from Mr. Herrera is an affidavit, an

19  affidavit in which he didn't take the stand,

20  submitted only this affidavit.  If we look at this,

21  Mr. Herrera says, during the time he was in there,

22  "Billy Cordova was an inmate at PNM South, and was in

23  a cell next to me."  He goes on to say, "Prior to

24  each of these conversations, Cordova would place

25  strips of Suboxone under the door of my cell."  So

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4676

 1   again, we have in paragraph 2, the cell next to Mr.

 2   Herrera.  In paragraph 6, Suboxone strips under the

 3   door.  Except that when we heard about Mr. Cordova's

 4   knowledge of drugs in the prisons -- and I grant it

 5   was extensive -- he said that if someone was in the

 6   cell next door, he passed Suboxone strips through the

 7   vents.  After he said that, you heard Mr. Perez get

 8   up on the stand and he testified under oath that

 9   Billy Cordova placed Suboxone in his cell through the

10   vents, exactly as he heard Mr. Cordova say earlier.

11           This, in paragraph 6 of Mr. Herrera's

12   affidavit, is contrary to that.  Billy Cordova said

13   if there was someone in the cell next to him, he

14   would not give him Suboxone strips under the door.

15   He would only do that if someone was down -- I think

16   he said the freeway or the interstate, or whatever

17   that was.  If there were multiple cells in-between,

18   they would fish them under the door.  If they were

19   next to each other, they went through the vents.  So

20   not only do we have only an affidavit, we have an

21   affidavit that is inconsistent with two people's

22   testimony.

23           Again, I think if we look at -- I know Ms.

24   Fox-Young listed all of what I think the case law

25   refers to as the circumstances of voluntary and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4677

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35678

```
 1    intelligent statement.  Oftentimes, what we're
 2    looking at is that statement in isolation, and we
 3    don't benefit from the testimony that we've heard
 4    over these two days.  We don't benefit from hearing
 5    from the defendant himself.  We don't benefit from
 6    the defendant's testimony that he used,
 7    intelligently, Mr. Cordova to spread rumors about
 8    himself.  We don't hear from the person who recorded
 9    the conversation oftentimes.
10          So I would say, if the Court looks at the
11    transcripts, the Court looks at the evidence over
12    these last two days, the Court should find voluntary
13    and intelligent statements.
14          So, finally, I think there was sort of a
15    policy argument made at the end that, if we go down
16    this road, you know, we're inviting future violations
17    of this.
18          I would say the other side of that policy
19    argument is just as strong.  If this Court finds
20    that, because these folks were in prison, their
21    statements were, as a matter of law, not voluntary
22    and intelligent, there can be no more recordings made
23    of voluntary and intelligent confessions within the
24    jail system.  And in a system in which we have
25    violent prison gangs, we have murders, assaults on a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    daily basis, that can't be a good policy to just say,
 2    as a matter of law, we cannot send recorders in there
 3    to record voluntary and intelligent statements by
 4    other prison inmates.
 5              I'll stand for questions, or else I'm done.
 6              THE COURT:  I don't believe I have any
 7    questions.  Thank you, Mr. Beck.
 8              Let me ask other defendants, before I hear
 9    from Ms. Fox-Young and Ms. Bhalla, if they have any
10    final comments?  Anybody else have anything they want
11    to say on these two motions?
12              All right.  Ms. Fox-Young.  You may
13    certainly say whatever you want to on your motion, or
14    the motions.  What do you -- how do you respond to
15    Mr. Beck's pointing out that in Mr. Perez' testimony
16    he did seem to have a lot of details about the
17    murders?  I think everybody would agree with that.
18    Your story being that he had heard all that.  The
19    Government saying that is really not credible that he
20    knew all those details just from hearing other
21    people?  Your thoughts on that?
22              MS. FOX-YOUNG:  Yes, Your Honor.  I'll
23    respond in a couple of ways.  First of all, more than
24    a year-and-a-half after the statements were given,
25    Mr. Perez has had the benefit of months and months to
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                 1-800-669-9492
                                                      e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4679

 1    look at these statements, and to learn about this
 2    case.  We all have in hearing after hearing.  In
 3    February 2016, you know, things were different.  So
 4    his testimony is retrospective.  That's, I think, the
 5    first point.
 6            Secondly, Judge, we're not arguing that Mr.
 7    Perez had no awareness of reality; that he couldn't
 8    hold a conversation; that he was so drugged and so
 9    infirm that he couldn't converse.  And that's not the
10    test.  I think the Court has to go back to the law,
11    and sort of a distraction to say, well, you know, Mr.
12    Perez admitted that he was lying, or some statements
13    were true, or some statements are corroborated in the
14    discovery.  None of that makes any difference.  The
15    Court has to look back at Fulminante and its progeny,
16    and make the inquiry as to whether or not there was
17    coercion under those cases.  And it's a totality of
18    the circumstances test.  It's a combination of all of
19    the factors that we have identified and that the
20    Court has heard.
21            And so I think it's a bit of a distraction
22    to go into -- remember Mr. Castellano asked Mr.
23    Perez:  Don't you think it's interesting that some of
24    this is corroborated, you know, and this is evidence
25    that has come out in the case?  It's completely

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4680

 1   irrelevant.  If the Court looks at Fulminante, there
 2   was no allegation there or no assertion there that
 3   Mr. Fulminante couldn't carry on a conversation, that
 4   he couldn't make conscious decisions.  That's just
 5   simply not the test.
 6            And so, yes, Your Honor, I mean, I think
 7   Mr. Perez was pretty clear when he went through
 8   statement by statement with the Government what he
 9   knows now about what may or may not be true, what may
10   or may not have really happened.  And he explained to
11   the Court, I think, very clearly and credibly that at
12   the time there was a bunch of stuff that had been put
13   in his mind by Billy Cordova.  And that's what he was
14   fixating on.  That's what he seized on in order to
15   protect himself.  And that's where he had learned
16   some of those facts.  He didn't know whether they
17   were true or not.
18            Again, I don't think it really goes to the
19   Court's inquiry.  I don't know if I've adequately
20   answered the Court's question, or if I should move on
21   to other points.
22            THE COURT:  Go ahead.
23            MS. FOX-YOUNG:  Okay.  Additionally, you
24   know, the Government responds on Billy Cordova's
25   pressure points saying Billy Cordova was just using

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3968239682

1    coded language.  He explained to the Court that

2    that's what he meant by pressure points.  What he

3    explained to the Court was, essentially, he was

4    capitalizing on Rudy Perez' fear.  Mr. Cordova is a

5    smart, manipulative, seasoned guy.  And he said, They

6    were going to move on him. I used that information.

7    I knew that Rudy knew it, I knew it, everybody knew

8    it, that he was thought to be cooperating.  That was

9    a pressure point that I used in order to extract

10   information to get him to talk to me, to get what I

11   needed to get benefits from the Government.

12        And I -- I think his language was the most

13   instructive that the Court has heard, when he talked

14   about those pressure points, what he used as a

15   Government agent to get Rudy to talk.

16        Moving to the fact that Mr. Perez was held

17   in Level 6, without justification, according to

18   policy or even reason, I'd like to show the Court one

19   exhibit that came into evidence last week, and note

20   that, you know, the Government could have put on

21   testimony.  It's their burden.  They could have put

22   on testimony or evidence to explain why Mr. Perez was

23   held.  But it doesn't exist.  There is no rational,

24   reasonable explanation pursuant to policy for why Mr.

25   Perez was there.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4682

```
 1            What I want to show the Court -- I'm not
 2    sure where this exhibit is, but it's the email that
 3    Mr. Roark testified about, that was forwarded by
 4    Wendy Perez, a year after Mr. Roark sent it.  Mr.
 5    Roark's emails was to all the wardens, and it said,
 6    we've got to do these routine audits in order to make
 7    sure that people are doing their proper disciplinary
 8    time.  Ms. Perez, who the Government could have put
 9    on today to rebut these allegations and to meet their
10    burden, then sends that email along to the Warden,
11    and says, "Call me about this."  Subject line:  Rudy
12    Perez.
13            I think it clearly shows a year later, more
14    than a year after Mr. Roark testified that they
15    closed the books on the Molina investigation, and
16    things had returned back to normal with the SNM, they
17    are looking for reasons to hold Rudy Perez in Level
18    6.  And, you know, to the Government's argument that
19    Mr. Cordova just appears, he just sprouts in Level 6
20    one day, he just shows up there.  Special Agent Acee
21    had nothing to do with it.  The New Mexico
22    Corrections Department had nothing to do with it.
23    You know, sort of borders on the absurd.  Of course,
24    they had something to do with it.  Of course, he
25    shows up there just days after Special Agent Acee
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4683

 1 | opens him as an informant.  And he's there for a
 2 | specific reason.  Mr. Perez and Mr. Herrera are there
 3 | for specific reasons.
 4 |        The entire SNM was not held there at that
 5 | time, and the Court heard it had been many months
 6 | since those guys were shipped to Level 6.  They were
 7 | targeting these two potential defendants.  They
 8 | wanted to extract statements from them, and that's
 9 | why they came up, Judge, with a reason to hold them.
10 | And let me just briefly draw the Court's attention to
11 | RP-H, which Mr. Roark testified that he did send this
12 | email, February 11, 2015, to all the wardens about
13 | these routine audits that were to be done.
14 |        Wendy Perez -- the Court can see, Wendy
15 | Perez finds that email a year later, changes the
16 | subject line, and forwards it to Roland Mares, who I
17 | believe is the Warden, and then to German Franco, who
18 | actually I think is the Warden, and says, "Call me on
19 | this, so I can explain, please."
20 |        What subsequently happens is that the
21 | Corrections Department finds a ruse, a reason to hold
22 | Rudy Perez in Level 6.  And Mr. Roark testified there
23 | was no credible threat according to their policy that
24 | existed in February 2016.  There was no paperwork
25 | documenting a reason, a proper reason, to hold Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4684

```
 1   Perez there.  Nothing at all.  And it's the
 2   Government's burden.  They have not put on any
 3   testimony to explain why Mr. Perez was there, except
 4   Billy Cordova and Special Agent Acee and Mr. Roark
 5   saying, Yeah, he was there at the same time.  It was
 6   right after Mr. Cordova was opened as an informant.
 7   Mr. Cordova just ends up next to him.
 8           I mean, it just defies reason that this
 9   just magically happened.  It absolutely was known and
10   engineered.  The Court doesn't have to disbelieve
11   Special Agent Acee.  I think it's reasonable to
12   conclude that Special Agent Acee was forthright with
13   the Court in saying he didn't know exactly where Mr.
14   Cordova would be placed and when.  But it was the
15   Corrections Department, working with the FBI, working
16   with this Government agent, CI, to extract statements
17   from Mr. Perez that matter.  So the Court doesn't
18   have to disbelieve Special Agent Acee.  And the Court
19   certainly doesn't have to disbelieve Mr. Roark when
20   he says, Yes, Mr. Perez was held in Level 6.  It was
21   essentially contrary to policy.  You know, I can't
22   give you an explanation as to why he was there.  You
23   know, Mr. Cordova just showed up next to him.  I
24   can't explain this.  The Government has not given the
25   Court any other reason except for this sort of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4685

```
 1    amorphous testimony, yes, there was no credible
 2    threat.  You know, he was SNM, so we believe we can
 3    hold him there.  I mean, I think the Court can
 4    believe all that and take it all into consideration.
 5    And it clearly fits well within our arguments that
 6    Mr. Perez was held there improperly, and specifically
 7    for the purpose of extracting statements.
 8              Again, Your Honor, it's just the
 9    Government's burden to prove that these statements
10    weren't coercive.  And I don't think that they've
11    given the Court anything to go on as far as a theory
12    that this just appeared magically.
13              With regard to the Suboxone, I think Mr.
14    Cordova's testimony was very clear as to how Suboxone
15    could be fished from one cell to the next.  I think
16    there are multiple ways that can be done.  The Court
17    heard from Mr. Perez as to how he received it and
18    took it.
19              And I think, clearly, the Government falls
20    short of meeting the standard to show that these
21    statements were constitutionally taken.  When you
22    look at the relevant circumstances, the
23    characteristics of Mr. Perez, the details of how
24    these statements were extracted, where he was placed,
25    and what he was up against, there is no question but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4686

```
 1   that the Court should suppress them.
 2            THE COURT:  All right.  Thank you, Ms.
 3   Fox-Young.
 4            Ms. Bhalla, I'll give you the last word on
 5   these two motions.
 6            MS. BHALLA:  Thank you, Your Honor.  I just
 7   want to address a couple of points.
 8            Mr. Perez, at the time that Mr. Cordova was
 9   placed next to Mr. Perez, was in a different facility
10   than when he was placed next to Mr. Herrera.  And
11   while their conditions of confinement were similar,
12   their housing situation was different.  And I think
13   that explains the different methods for getting drugs
14   into the cell.  It's going to be different depending
15   on where they are.  But what is consistent is that
16   Mr. Cordova was providing drugs.
17            I don't think that the Court has to find
18   that Special Agent Acee lied about his knowledge
19   about placement.  He could walk away from that
20   decision.  This was a joint investigation.  NMDOC was
21   working with the feds.  All that Special Agent Acee
22   had to do was tell them, "I want Cordova next to
23   these guys.  You guys make it happen."  And whatever
24   methods they employ to do that are attributable to
25   the Government, whether or not Special Agent Acee
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   approved it.

 2            In terms of the transcripts, the -- I'm

 3   sorry, I don't have the exhibit number in front of

 4   me, Your Honor -- but the exhibit that we talked

 5   about where Mr. Cordova was discussing prices for the

 6   drugs that he could get, the Government alleges that

 7   these were the prices for street drugs.  Mr. Cordova

 8   testified he'd been in custody for 13 months at that

 9   point, and he was able to get a better price than

10   Mr. Chavez.  And that was the discussion.  And

11   Mr. Chavez specifically says:  You can still get them

12   for five, right?  Yeah.

13            Now, when they say Mr. Herrera was going

14   through withdrawals and not high, it's interesting

15   that's their argument now.  Because in their briefing

16   their argument was that it was bedtime, and they were

17   all sleepy.  And I think that's an interesting thing

18   that the argument is changing depending upon what Mr.

19   Cordova has been telling them.  And I would ask the

20   Court to look at the briefing and compare it to the

21   argument today that he was withdrawing rather than he

22   was sleepy.

23            So that's all I have to finish up, Your

24   Honor.  Unless the Court has any questions.

25            THE COURT:  I don't believe so.  Thank you,
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4688

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 46689

1    Ms. Bhalla.

2              MS. BHALLA:  Thank you, Your Honor.

3              THE COURT:  Well, let me say with this

4    motion, since a lot of effort has been put into it, I

5    would be glad to take it under review and advisement.

6    Y'all have pointed out today a number of things that

7    you would like me to review, and issue an opinion

8    with detailed findings of fact and conclusions of

9    law, if that's what you'd like for me to do.  As

10   we've been going through the hearings -- and I'll

11   probably do it every day, and at the conclusion of

12   each hearing, or set of hearings, try to determine

13   what you'd like for me to work on, and take a special

14   look, and this may be one of them.

15             But I am going to give a ruling this

16   morning that will be the ruling for trial, unless --

17   and these will constitute my findings of fact, unless

18   this is one of the sets of motions that the parties

19   would like for me to spend more time on between now

20   and trial.

21             Let me first talk -- there has been an

22   invitation by both sides that I be careful about how

23   my rulings might impact upon other prison

24   investigations.  I think I got my hands full here in

25   determining what I should do with this evidence.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4689

```
1    Certainly, I'm always aware of the impact that my
2    rulings may have on future investigations or other
3    cases.  But I'm also mindful I'm a district judge,
4    and my rulings have only impact on the trial I'm
5    about to have.  And so I will probably not get too
6    wrapped up in trying to figure out what the impact
7    will be on future prison investigations.
8         Let me start by indicating on this the
9    prison placement.  I do think that to go the
10   direction that the defendants want me to go in this
11   case does require me to probably find that Mr. Acee
12   and Mr. Roark were not credible in certain of their
13   testimony.  I know Ms. Fox-Young has offered ways of
14   getting there that do not put their testimony in
15   doubt.  But I do think that, in the end, it would.
16        And I find Mr. Acee credible that he did
17   not have any role in placing Mr. Herrera and Mr.
18   Perez, and that the Corrections Department did that.
19   Mr. Roark seems to corroborate that, in the sense
20   that why they were where they were was because of the
21   Molina homicide, and that was the reason for the
22   lockdown.  So I don't find the placement issue really
23   helps the defendants much on the coercion and the
24   voluntariness issue, which is what this motion is
25   about -- these two motions are about.  I don't see
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4690

1    information on the placement side that really

2    undercuts what Mr. Acee and Mr. Roark, rather

3    straightforwardly testified about, about how they got

4    where they are.  Certainly, Mr. Acee was involved in

5    putting Mr. Cordova next to the cells of Mr. Herrera

6    and Mr. Perez.  But I don't think he had any

7    involvement in where those two defendants were

8    placed.  And I think Mr. Roark's testimony supports

9    that.

10         I guess y'all may have -- I may be the only

11   one in the room that really didn't know what Mr.

12   Cordova was going to look like.  Somebody else

13   probably had some knowledge.  And I am probably the

14   most ignorant there, so I was curious as to what he

15   would look like, how he would testify, and what that

16   testimony would present.  I did think that Mr.

17   Cordova was a very good witness, and found him to be

18   credible in all material respects.  I don't think he

19   promised Mr. Perez, Mr. Herrera anything.  I think by

20   pressure points, I do agree with Mr. Beck's

21   assessment that you don't just walk in to one of

22   these facilities and start asking people:  What was

23   your role in the killing of Molina.  You have to talk

24   in coded language.  And Mr. Cordova was trying to

25   figure out how he could get the testimony from Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4691

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4692

1  Herrera and Mr. Perez that he needed to do his job.

2  I don't think that I find him credible in that he did

3  not provide Suboxone.  And so I find that -- I will

4  credit in my findings of fact in all material

5  respects his testimony where it differs from Mr.

6  Herrera and Mr. Perez.

7          In contrast to Mr. Cordova, I found that

8  much of Mr. Perez' testimony was incoherent and hard

9  to follow, and difficult to come up with a structured

10  response to what Mr. Cordova's rather straightforward

11  story was.  Either he's lying here on the stand, or

12  he was lying then.  There may have been times he lied

13  both.  But in the end, I can't put together a

14  credible enough and coherent enough story to find his

15  testimony credible here in the courtroom.

16          I think Mr. Perez is intelligent.  I think

17  was intelligent at the time.  I've reviewed enough of

18  these transcripts to find him intelligent at the

19  time.  His testimony that he knew he could use Mr.

20  Cordova to spread the rumor or tale or story that he

21  was not a rat, I think, undercuts his argument now

22  that his statements then were involuntary.  I don't

23  find any considerable mental defect or incapacity.

24  He may have some health problems, may use some drugs.

25  But it doesn't seem that there is any evidence that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    the Government knew those things, or more

 2    importantly, knew those things and tried to take

 3    advantage of it.  His statements appear, both at the

 4    time that he gave them and his testimony here in the

 5    courtroom, are that his statements were voluntary and

 6    intelligent.  He knew details of the murder.  And I

 7    certainly don't find these beyond a reasonable doubt,

 8    that's a function for the jury.  This is just for

 9    purposes of the suppression motion.  But I don't find

10    credible that he only knew those things because they

11    were told him.  I will find that more likely than

12    not, he knew those details because he was involved in

13    the murder of Mr. Molina.  I don't think that there

14    is sufficient evidence that he was under drugs or was

15    incapable of making the statements voluntarily and

16    intelligently.

17              I find the same with Mr. Herrera because of

18    the persuasive testimony of Mr. Cordova.

19              So I will deny the motion to suppress

20    involuntary statements 1294 and motion to suppress

21    statement 1295.

22              I understand that the next thing we were

23    going to go to was a resumption of the Daubert

24    hearing as to the gun.  I believe this is Mr. Chavez'

25    motion on the gun -- Chavez' testimony.  I'm not sure

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4693

```
 1   I can read my notes here, but is that where we're
 2   going next, is the Daubert hearing?
 3            MR. ADAMS:  Yes, sir, I believe so.
 4   Mr. Garcia had filed a Daubert challenge to the gun
 5   that was seized from his home, and Mr. Chavez was
 6   noticed as the expert.
 7            THE COURT:  Okay.  And y'all will have to
 8   refresh me where we were on that.  I know we got --
 9            MR. ADAMS:  We have not started that, Your
10   Honor.
11            THE COURT:  We've not started that.  All
12   right.  So is the Government going to take the lead
13   on this motion?
14            MR. CASTELLANO:  Yes, Your Honor.  We're
15   calling Theodore Chavez.  Just to clarify, this is
16   not a firearm seized from Mr. Garcia's home.  It was
17   turned over as part of an undercover operation.
18            MR. ADAMS:  I accept that friendly
19   amendment.  That's correct.
20            THE COURT:  All right.  Mr. Castellano, you
21   have witnesses or evidence you wish to present on
22   this motion?
23            MR. CASTELLANO:  Yes, Your Honor.  The
24   United States calls Theodore Chavez.
25            THE COURT:  Mr. Chavez, if you'll come up
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4694

```
 1    and stand next to the witness box on my right, your
 2    left.  Before you're seated, Ms. Standridge, my
 3    courtroom deputy, will swear you in.
 4                    THEODORE CHAVEZ,
 5        after having been first duly sworn under oath,
 6        was questioned and testified as follows:
 7                    DIRECT EXAMINATION
 8              THE CLERK:  Please be seated, and the state
 9    your name for the record.
10              THE WITNESS:  First name is Theodore, and
11    the last name is Chavez.
12              THE COURT:  Mr. Chavez.  Mr. Castellano.
13              MR. CASTELLANO:  Thank you, Your Honor.
14    BY MR. CASTELLANO:
15        Q.   Good morning, Mr. Chavez.
16        A.   Good morning.
17        Q.   Where are you currently employed?
18        A.   I'm currently employed by the Federal
19    Bureau of Investigation Laboratory, located in
20    Quantico, Virginia.
21        Q.   What are your duties at the laboratory?
22        A.   My primary duties as physical scientist
23    forensic examiner, is to receive evidence relating to
24    firearms and tool marks, conduct examination on those
25    requested items, provide examination results, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4695

 1    issue a laboratory report, and then provide testimony

 2    to those results in a court of law.

 3        Q.   Can you tell us a little bit about your

 4    educational background?

 5        A.   I received a bachelor's in physics from St.

 6    Vincent College, located in Latrobe, Pennsylvania.

 7        Q.   And what other types of training and

 8    experience do you have?

 9        A.   Upon entering employment there at the FBI

10    Lab, I entered what approximately would be a

11    three-year training program, in order to become

12    qualified within the firearms and tool marks unit.

13    That just allowed for me to receive a training manual

14    that outlined the training progress throughout those

15    years, whether it be sign-offs by a qualified

16    examiner, or also sort of a mentorship, conducting

17    casework alongside those other qualified managers.

18        Q.   What is firearms identification?

19        A.   Firearms identification can be defined as

20    the comparison between bullets, cartridge cases,

21    other ammunition components, to determine if they

22    were produced by a specific firearm.

23        Q.   And what makes firearms identification

24    possible?

25        A.   Firearms identification is possible due to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4696

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 54697

1    the manufacturing of these items, whether it's a

2    barrel of a firearm, or a slide from a firearm.  It's

3    these manufacturing processes that leave individual

4    characteristics or microscopic marks that are used

5    for identification.

6         Q.   You told us a little bit about your

7    training earlier.  Who conducted that training?

8         A.   When I received the training manual, there

9    is a training program manager for the unit.  And I

10   was assigned to a training coordinator.  The training

11   coordinator who overlooked my training was Eric

12   Smith.

13        Q.   And as part of your duties, have you been

14   involved with the training and/or instructing of

15   others?

16        A.   Since qualification, yes.

17        Q.   What types of training have you provided?

18        A.   So the FBI has an Evidence Response Team,

19   or ERTs, throughout different field offices.  And in

20   order to become a member of the ERT, they will go to

21   what's described as a basic class.  And it's hosted

22   there in Virginia at the Operational Response Center.

23   And part of their one-week, if not two-week training,

24   they learn the different types of examinations that

25   my unit performs, as well as understanding the type

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    of evidence handling that is necessary to preserve
 2    those items that are submitted to the lab.
 3        Q.   Are you a member of any professional
 4    associations?
 5        A.   I am.
 6        Q.   Can you tell us about that?
 7        A.   I am a regular member of AFTE, the
 8    Association of Firearms and Tool Mark Examiners.  And
 9    that is just a professional organization; it has
10    various firearms and tool mark examiners within the
11    U.S., as well as international.
12        Q.   Any other professional associations?
13        A.   No.
14        Q.   Were you required to pass any standardized
15    tests to become qualified for your post?
16        A.   Yes.  So upon qualification, I would have
17    had to have completed a total of three oral boards
18    and three moot courts.  Those were all handled by
19    qualified examiners within the unit, as well as
20    outside evaluators.  Upon completing those tasks or
21    those outlines within the training manual, I was then
22    qualified as a firearms and tool mark examiner, able
23    to complete casework independently.
24        Q.   And was it those people who determined that
25    you were qualified to reach your conclusions?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                               1-800-669-9492
                                                    e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4698

```
 1          A.    That is correct.

 2          Q.    Is your work peer-reviewed?

 3          A.    Yes.   There are two types of reviews:   A

 4   technical, as well as an administrative review.

 5          Q.    And how does the peer review work?

 6          A.    A technical review will be conducted on any

 7   supporting documentation, to include a laboratory

 8   report that is issued, or prior to issuance.   The

 9   technical review is handled by another qualified

10   examiner within the same category of testing.   So

11   they will review all supporting documentation to

12   ensure that it supports outlined results.

13          And the second type of review is

14   administrative review.   That is handled by typically

15   a supervisor in my case, my unit chief.   And so she

16   just ensures that the contributor is receiving a

17   sound laboratory report, as well as all

18   administrative tasks are completed to have that

19   report issued.

20          Q.    And is this regularly done as part of your

21   responsibilities and the conclusions that you reach?

22          A.    That is correct.

23          Q.    Do you work in the accredited laboratory?

24          A.    Yes, I do.   The FBI lab is accredited by

25   ASCLD Lab, or the American Society of Crime
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4699

1    Laboratory Directors, Laboratory Accreditation Board.

2         Q.   How did they accredit your laboratory?

3         A.   Typically, a reaccreditation occurs every

4    five years.  So throughout the five-year window,

5    there are surveillance visits that occur.  I handle

6    the quality assurance program for my unit, so I have

7    working knowledge of all the internal audits that are

8    conducted yearly, as well as a review of the

9    documents, and actual participation in those

10   surveillance visits by outside assessors.

11        Q.   Do you have established protocols for

12   conducting examinations?

13        A.   Yes, we do.

14        Q.   Who established those protocols?

15        A.   A protocol, if it's an existing protocol,

16   will go through an annual review.  The annual review

17   is done just to ensure that the business practices

18   that are being handled within the unit are

19   functioning under this SOP.  It will go through a

20   technical review if it's a new document.  And the

21   document would then be reviewed by our technical

22   leader.  And upon review by the unit, it then will be

23   reviewed by FASU, the Forensic Analysis Support Unit.

24   And they will just ensure that it's in line with the

25   accreditation requirements that are observed by the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4700

 1   laboratory.

 2       Q.   As part of your responsibilities did you

 3   receive a Phoenix Arms pistol, serial number 4208834,

 4   at the laboratory?

 5       A.   That's correct.

 6       Q.   For what purpose did you receive this

 7   firearm?

 8       A.   In this case, the firearm was submitted for

 9   a function test.  Because it is also a pistol, I

10   searched a national database search.  So the report

11   that I issued would have contained a function test,

12   as well as national database searches.

13       Q.   Let's start with the database searches

14   first.  What is the purpose of those searches?

15       A.   So there are three different types of

16   database searches, all handled by the DOJ:  There is

17   NCIC, the National Crime Information Center; eTrace,

18   which is the electronic tracing system; and NIBIN,

19   which is the National Integrated Ballistic

20   Information Network.  NCIC is a stolen gun record

21   database that can be searched by anyone who has an

22   NCIC account; eTrace is information that is also

23   collected either by a purchaser, or upon distribution

24   by a manufacturer, basically just gives a historical

25   timeline of that firearm; NIBIN is a database that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4701

 1   allows for cartridge cases to be searched against

 2   each other.  So it's acquisition, as well as a

 3   correlation.

 4        Q.   So, in this case, can you tell us about the

 5   results of each of those database searches?

 6        A.   So the NCIC have no records, which

 7   indicated it was not stolen.  The eTrace did have an

 8   existing trace number.  So that trace number or the

 9   trace may have actually been conducted by the field

10   office.  And that's -- one of the policies we have

11   currently in place, as part of the field evidence

12   policy, is that anyone in the field offices who prior

13   to sending it to the lab will have conducted that

14   trace.  And the NIBIN result was also no associations

15   at the time.

16        Q.   After the NIBIN search, is that something

17   that tells you -- for example, you have a crime scene

18   with unknown cartridges; are those put in the system

19   for a possible match for future crimes, so you can

20   match them up?

21        A.   That's correct.  The NIBIN will contain

22   cartridge cases that have no associated known

23   firearm.

24        Q.   Okay.  Now, tell us about the function

25   test, please.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4702

1        A.    So I would receive the firearm in the unit

2    and be conducting sort of a general population of

3    make, model, caliber, different features of that

4    firearm, to include the serial number, the overall

5    length of the firearm, as well as preparing it for

6    function testing.  So at the laboratory we have a

7    water tank not much longer than the witness stand

8    here, that is filled with water.  And what we'll

9    actually do is take the firearm, and we'll test fire

10    it into a water tank.  In this case I tested it

11    twice.  So I first loaded a round into the chamber,

12    as well as it was noted that no magazine was

13    submitted with this firearm.  So I used the reference

14    firearms collection, which the FTU also maintains,

15    Firearms and Tool Marks Unit maintains, and that

16    contains over 7,000 different types of firearms.  So

17    I was able to use a magazine that had the same

18    functionality allowed for it to work with the pistol;

19    test fired into the tank two times, and collected

20    those known bullets, as well as known cartridge

21    cases.  The cartridge cases would then be entered

22    into NIBIN, and the bullets be used for additional

23    information collecting the GRCs, or the general

24    rifling characteristics of that barrel.

25        Q.    Each time you fired the weapon -- you

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                      Albuquerque, NM 87102
(505) 989-4949                                                                                    (505) 843-9494
FAX (505) 843-9492                                                                          FAX (505) 843-9492
                                                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                          e-mail: info@litsupport.com

DNM 4703

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64704

1  mentioned first by putting a round in the chamber,

2  and then using a magazine to feed ammunition through

3  the firearm.  On each occasion, did the firearm

4  function as designed?

5      A.   Yes, it did.

6      Q.   Do you recall what caliber this firearm

7  used?

8      A.   This was a .22 long rifle caliber.

9      Q.   For those who don't understand firearms or

10 ammunition, the fact that it's called a .22 long

11 rifle, does that mean it's only used for rifles or

12 can it also be used for pistols?

13     A.   There are manufacturers that have both

14 pistols and rifles calibered for a .22 long rifle.

15     Q.   In other words, can you fire a .22 long

16 rifle ammunition through this pistol?

17     A.   That's correct.

18          MR. CASTELLANO:  May I have a moment, Your

19 Honor?

20          THE COURT:  You may.

21          MR. CASTELLANO:  Thank you, Your Honor.  I

22 pass the witness.

23          THE COURT:  Thank you, Mr. Castellano.

24          Any defendant before Mr. Adams have any

25 cross-examination of Mr. Chavez?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4704

1           All right.  Mr. Adams.

2           Let me put on the record.  Ms. Fox-Young

3    asked that we indicate that Rochelle Marin from Mr.

4    Villa's office is also on the phone.  Is there anyone

5    else that's come on the phone since we started the

6    hearing that hasn't entered an appearance?  Make sure

7    your mute button is not on if you're about to speak.

8           All right.  Mr. Adams.

9           MR. JEWKES:  May I approach?

10          THE COURT:  You may.

11          MR. JEWKES:  Our client, Daniel Sanchez,

12   was taken out of the courtroom by the Marshal

13   Service.  He's very ill.  And there is a question as

14   to whether or not they should return him to the

15   courtroom.  Mr. -- the marshal whose name escapes me,

16   he goes by the name of Mick.

17          THE COURT:  It's Mick.

18          MR. JEWKES:  He was just telling me the

19   situation.  So we wanted to put on the record that

20   Mr. Sanchez is not in the courtroom due to illness.

21          THE COURT:  What kind of illness does he

22   have, Mick?

23          MR. MICKENDROW:  He is throwing up, Your

24   Honor.  My concern is just having him stay here all

25   day and being uncomfortable.  Unfortunately, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4705

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 63

```
 1    Marshal Service is unable to provide any medication

 2    whatsoever, due to our policies.  And at least, if

 3    he's returned to the facility, they might be able to

 4    provide him something in which he'd be a bit more

 5    comfortable.

 6               THE COURT:  Well, let's do this:  Let's

 7    take our morning break.  Let's see if we can give him

 8    some fluids or something like that, and get him

 9    sitting back in here.  I'd rather the marshals not

10    make that decision.  I'd rather -- hold on, hold on.

11    Everybody be quiet.  I'd rather the marshal not make

12    that decision whether he's in or out.  If he can't do

13    it, or something like that, that's a different

14    question.  But maybe we could reposition him or

15    something like that, if it's something we're

16    concerned about being contagious or something.  But

17    let's see if we can get some fluids in him, let him

18    use the restroom a little bit and then maybe we can

19    resume.

20               MR. MICKENDROW:  Understood, Your Honor.

21               THE COURT:  All right.  We'll be in recess

22    about 15 minutes.

23               (The Court stood in recess.)

24               THE COURT:  All right.  We'll go back on

25    the record.  I think everybody has got a lawyer, at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

4707

```
 1    least one.  Look around, make sure your co-defendant
 2    has a lawyer.
 3              All right.  Mr. Sanchez, are you doing
 4    okay?
 5              THE DEFENDANT:  I'm good, Your Honor.
 6    Thank you.
 7              THE COURT:  All right.  Raise your hand if
 8    you run into any problems.
 9              All right.  Mr. Adams, you wanted to
10    discuss marking some exhibits?
11              MR. ADAMS:  Yes, sir.  I have two.
12              THE COURT:  What I'd like to do, if this is
13    all right with you, since we're going into a new
14    hearing, let's go ahead and mark these as Christopher
15    Garcia Exhibits A and B.
16              MR. ADAMS:  Yes, sir.
17              MS. SIRIGNANO:  Your Honor, one second,
18    please, because we've got A and B for the DNA
19    hearing.  So --
20              THE COURT:  I know, but if we're starting a
21    new hearing, I want to have the exhibits running for
22    the hearings rather than just running forever.
23              MS. SIRIGNANO:  Okay.  Thank you, Your
24    Honor.
25              MR. CASTELLANO:  Judge, I don't have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4707

```
 1   objection to marking those as C and D, Your Honor, if

 2   they anticipate an A and B.  Whatever the Court wants

 3   to do.

 4             THE COURT:  I think this is going to be A

 5   and B, right, Mr. Adams?

 6             MR. ADAMS:  Yes, Your Honor.

 7             MR. CASTELLANO:  Your Honor, and Mr. Adams

 8   showed me these exhibits during the break.  And I

 9   have no objection to admission of either one.

10             THE COURT:  All right.  Anybody else got an

11   objection to these two exhibits?  Not hearing any,

12   Christopher Garcia's Exhibits A and B will be

13   admitted into evidence.

14             MR. ADAMS:  Thank you, Your Honor.

15             THE COURT:  Mr. Adams.

16                      EXAMINATION

17   BY MR. ADAMS:

18        Q.   Mr. Chavez, let me show you -- and your

19   screen should be on -- Christopher Garcia Exhibit A.

20   Is this the gun that you examined?

21        A.   That is correct.

22        Q.   And the serial number on that is 4208834?

23        A.   That is correct.

24        Q.   When did you receive the gun?

25        A.   I received the gun prior to 8/25/2016.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4708

1      Q.   And when did you return the gun?

2      A.   Within a day after 9/22/2016.  And if I may

3  indicate where I am -- the green arrow there shows

4  8/25.  So that would indicate when the examination

5  started.  So we could have received the firearm prior

6  to that.  Back down to 9/22, that's the date that

7  indicates when I completed my exams.  So the firearm

8  would have been returned after 9/22.

9      Q.   And so the record is clear, those dates are

10 found on Defendant's Exhibit A that's in front of you

11 on the screen now?

12     A.   That's correct.

13     Q.   And is this part of your worksheet that you

14 completed?

15     A.   Yes, this is page 1 of 4 of the examination

16 results that would support my laboratory report.

17     Q.   Let me show you Exhibit B.  This is a chain

18 of custody form.  Are you on the chain of custody

19 form?

20     A.   I do not recognize this chain of custody

21 form for one reason.  This could be a field chain of

22 custody, that being any transactions that are made

23 outside the laboratory, the FBI Laboratory, will have

24 their own chain of custody.

25     Q.   And has that been provided with your lab

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4709

```
 1   notes, do you know?

 2        A.   The case 1A should have been provided

 3   during discovery requests.

 4        Q.   So you don't know anything about this

 5   Exhibit B, and your name is not on it?

 6        A.   My name does not appear.  However, I do see

 7   indications of FBI Laboratory stamped on there, that

 8   shows the reasons analysis.  But that could have been

 9   Joseph -- what I believe is Joseph -- that name looks

10   familiar, as a case agent.

11        Q.   Sainato?

12        A.   Sainato -- possibly transferring it to the

13   lab, which means out of his custody.  But again, I'm

14   not familiar with it, and my name does not appear on

15   this chain of custody.

16        Q.   So your sole determination or primary

17   determination is that the was gun was operable when

18   it arrived to you in the laboratory?

19        A.   As received, correct.

20        Q.   Do you know what condition the gun would

21   have been in when it was seized and taken into

22   custody by the FBI?

23        A.   I don't.

24        Q.   Do you know whether the gun had been

25   manipulated at all by any case agent or other FBI
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4710

1    person before it got released to the FBI laboratory?

2         A.    The only policy that was currently in place

3    is that the firearm must be rendered safe, and that

4    is just to allow for it to be packaged accordingly,

5    and shipped under regulations by, I believe, Fed Ex.

6         Q.    Would it be against policy for an agent to

7    take a nonoperational gun, and to mess with it, fix

8    it, so that it would fire before sending it to the

9    lab for analysis?

10        A.    I'm unaware of any type of policy.

11        Q.    One way or another?

12        A.    No.   The only policy that currently is in

13   place, again, is to ensure that it is rendered safe.

14   If a firearm were to be submitted as inoperable,

15   there is an examination conducted by my unit that

16   would outline on that same worksheet what was not

17   operating.   And we would attempt to correct or at

18   least use some of the components to make it

19   functional.   But in this case, that did not exist.

20        Q.    Why would you do that?

21        A.    To collect known test fires.   So in order

22   to enter those into the database.

23        Q.    And again, for your database information,

24   the eTrace didn't produce any -- the eTrace and the

25   NCIC, and what was the third one?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4711

1        A.    ETrace had no record -- excuse me, NCIC had

2    no records; eTrace had a preexisting trace number,

3    meaning someone from the field had already requested

4    the information of that pistol.  NIBIN came back as

5    no associations.

6        Q.    All right.  When had that information been

7    requested on eTrace?  Was it related to this

8    investigation, or did it predate?

9        A.    May I see Government's Exhibit A again?

10       Q.    I have all four pages.

11       A.    If you could display it, possibly.  So what

12   the arrow is indicating is a trace number.  So for

13   me, that indicates for eTrace, that line there,

14   previously traced.  I have access to the trace

15   number, but I don't know when that occurred, only

16   that it was during the year 2015.

17       Q.    All right.  Can you find out when that

18   request was made?

19       A.    Yes, I can.

20       Q.    Can we ask you to provide that to the

21   prosecution so they can let us know?  Or I'm happy to

22   email you.

23       A.    I can provide that information.

24            MR. ADAMS:  All right.  Thank you.  I don't

25   have any further questions.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 4712

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4713

```
 1                 THE COURT:  Thank you, Mr. Adams.

 2                 I think I already asked this, but anybody

 3      else got any questions of Mr. Chavez on the defense

 4      side?

 5                 All right.  Mr. Castellano, if you have

 6      redirect of Mr. Chavez.

 7                 MR. CASTELLANO:  Thank you, Your Honor.

 8                      REDIRECT EXAMINATION

 9      BY MR. CASTELLANO:

10          Q.    Mr. Chavez, in terms of chain of custody,

11      did someone else at the laboratory have custody of

12      this firearm prior to your examination?

13          A.    Yes, they did.

14          Q.    What was that purpose?

15          A.    The purpose is just the type of examination

16      that is being requested.  There are some examinations

17      that would take precedence, like DNA or latents, that

18      would precede our handling of the firearm, to include

19      this is a multiunit submission, meaning that there is

20      a person doing both intake, as well as preparing it

21      for shipment.  So there is a request coordinator on

22      this submission.  And it serves multiunits, so DNA,

23      latents, and firearms.  So I would only be a part of

24      that chain of custody, full chain of custody.  The

25      RC, or anyone assisting the RC in packaging, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4713

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4714

 1    accepting the firearm at the laboratory, would be the

 2    main point of contact for being the first one on the

 3    chain, or the last one on the chain.

 4         Q.   Were you aware of whether DNA testing

 5    occurred before the time you handled the firearm?

 6         A.   Yes, it did occur.

 7              MR. CASTELLANO:  No further questions, Your

 8    Honor.

 9              THE COURT:  All right.  Thank you, Mr.

10    Castellano.

11              MR. ADAMS:  No follow-up.

12              THE COURT:  All right.  Mr. Chavez, you may

13    step down.  Thank you for your testimony.  May

14    Mr. Chavez be excused from the proceedings, Mr.

15    Castellano?

16              MR. CASTELLANO:  Yes, Your Honor.

17              THE COURT:  Mr. Adams?

18              MR. ADAMS:  Yes, sir.  And if we could get

19    that extra follow-up information sooner rather than

20    later, it would be very helpful.  Thank you.

21              THE COURT:  All right.  Any other defendant

22    have any objection to Mr. Chavez being excused?  All

23    right.  You're excused from our proceedings.  Thank

24    you for your testimony, Mr. Chavez.

25              All right.  Mr. Castellano, does the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4714

72
4715

```
 1    Government have further witnesses or evidence -- Ms.
 2    Armijo, on this motion?
 3              MS. ARMIJO:  Yes, we have Tiffany Smith.
 4              MS. SIRIGNANO:  Your Honor, can I clarify?
 5    Is Ms. Smith being called for the firearm or for DNA?
 6              THE COURT:  I think we're on the firearm
 7    motion right at the moment; correct?
 8              MS. ARMIJO:  Well, I assumed we were still
 9    just doing Daubert, in general.  She is doing DNA on
10    the firearm, but it is DNA.
11              THE COURT:  All right.
12              MS. ARMIJO:  So, I guess, I don't believe
13    we have anything more as far as testimony from
14    ballistics on the firearm.
15              THE COURT:  All right.  Is this still,
16    though, related to one motion, Ms. Sirignano, or is
17    it two separate motions?
18              MS. ARMIJO:  I believe it's one motion that
19    they filed challenging all of our Daubert.  But I
20    don't know how the defense would want to handle it.
21              MS. SIRIGNANO:  Your Honor, the notice that
22    the Government filed, Document 1242, included expert
23    witness testimony of Mr. Chavez and Ms. Smith.  So
24    our Daubert challenge was for both experts within
25    their amended notice of expert witness testimony.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4715

1           THE COURT:  Well, why don't, before we

2     bring in -- unless Ms. Smith is relevant to

3     Mr. Chavez, why don't we hold off on her and finish

4     up the Daubert hearing on Mr. Chavez.  Do y'all have

5     any further witnesses or evidence, Mr. Castellano, on

6     Chavez' Daubert hearing?

7           MR. CASTELLANO:  No, Your Honor.

8           THE COURT:  All right.  Mr. Adams, do you

9     have -- do the defendants have any witnesses or

10    evidence it wishes to present on the Daubert

11    challenge to Mr. Chavez?

12          MR. ADAMS:  No, sir.  And, Your Honor, our

13    concern had been that he would go farther than the

14    report.  If that is the scope of his testimony, we

15    have no objection to that.

16          THE COURT:  All right.  Is that the

17    position of all the defendants on Mr. Chavez?  All

18    right.  So Mr. Chavez will be admitted -- will be

19    allowed to offer opinion testimony within the scope

20    of his report and testimony today.

21          All right.  Now, let's call Ms. Smith.

22          MS. ARMIJO:  And, Your Honor, we're

23    starting fresh, correct?  Do you want to start fresh

24    for this?

25          THE COURT:  Let's start fresh on Smith's

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                              1-800-669-9492
                                              e-mail: info@litsupport.com

DNM 4716



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 74

```
 1    Daubert hearing.  Let's take these individually.
 2              Ms. Smith, if you'll come up and stand next
 3    to the witness box on my right, your left.  Before
 4    you're seated, my courtroom deputy, Ms. Standridge,
 5    will swear you in.
 6                         TIFFANY SMITH,
 7         after having been first duly sworn under oath,
 8         was questioned and testified as follows:
 9                    DIRECT EXAMINATION
10              THE CLERK:  Please be seated.  State your
11    name for the record.
12              THE WITNESS:  My name is Tiffany Smith.
13              THE COURT:  Ms. Smith.  Ms. Armijo.
14              MS. ARMIJO:  Thank you, Your Honor.
15    BY MS. ARMIJO:
16         Q.   What is your current occupation?
17         A.   I'm a forensic examiner in the DNA Casework
18    Unit of the FBI Laboratory.
19         Q.   And what are your responsibilities as a
20    forensic examiner with the FBI?
21         A.   As a forensic examiner, it is my
22    responsibility to determine which items of evidence
23    require DNA testing.  I will direct a team of
24    biologists to perform that testing in the laboratory.
25    I will review the data of that testing, perform any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4717

1    necessary comparisons between items of evidence and

2    known DNA samples taken directly from individuals.  I

3    will then report those comparisons in a report, and

4    then testify if needed.

5         Q.   When did you start working for the FBI?

6         A.   August of 2010.

7         Q.   And have you received any specialized

8    training in the area of forensic DNA analysis since

9    joining the FBI Laboratory?

10        A.   Yes.  Once I was hired by the FBI

11   Laboratory, I went through a year-and-a-half training

12   program, where I worked alongside qualified forensic

13   examiners, performing the same job duties as I

14   currently perform; however, it was under their direct

15   supervision.  I worked on mock items of evidence in

16   the laboratory.  I wrote reports that were then

17   reviewed.  I took a series of moot court exercises

18   and oral board examinations, and passed a competency

19   test at the end of my training.

20        Q.   Now, please describe your work experience

21   prior to joining the FBI.

22        A.   Prior to joining the FBI Laboratory, I was

23   a graduate student at West Virginia University, where

24   I worked in a forensic-based research laboratory for

25   three years; that was through the university.  I also

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4718

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4719

```
 1    taught courses relating to, not only DNA, but also
 2    forensic DNA.  And I also was an intern for a summer
 3    at the Connecticut State Forensic Laboratory, where I
 4    observed qualified examiners performing multiple job
 5    duties at that lab.
 6         Q.   And what is your educational background?
 7         A.   I have bachelor's of science degree in
 8    forensic and investigative sciences at West Virginia
 9    University.  And I have a master's in biology degree
10    also from West Virginia University.
11         Q.   How do you stay current in your field?
12         A.   I stay current in my field by reading
13    articles, attending training at the laboratory, and
14    then sometimes outside laboratory.  We receive talks
15    by our DNA Support Unit, which provides us training
16    as well.
17         Q.   And have you ever been qualified as an
18    expert in the field of DNA testing before?
19         A.   Yes, I have.
20         Q.   And can you tell us where and when,
21    approximately.
22         A.   I've testified approximately 31 or 32
23    times.  Both in New Mexico, in Texas, Oklahoma, North
24    Dakota, Florida, Maryland, Guam, U.S. Virgin Islands.
25    I'm sure there are many others.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4719

```
 1        Q.   And have you been qualified as an expert --
 2   you indicated in New Mexico, was that in federal
 3   court?
 4        A.   Yes, it was.
 5        Q.   And do you recall the names of the cases?
 6        A.   I believe it was U.S. versus Thomas
 7   Rodella.
 8             MS. ARMIJO:  All right.  Now, Your Honor,
 9   we would ask that Ms. Smith be qualified as an expert
10   in the field of DNA testing.
11             THE COURT:  Any objection to Ms. Smith
12   offering opinion testimony in that area?  Ms.
13   Sirignano?  Anyone else?
14             MS. SIRIGNANO:  No objections at this time,
15   Your Honor.
16             THE COURT:  All right.  Ms. Smith will be
17   allowed to offer opinion testimony in the area of DNA
18   testing.
19             MS. ARMIJO:  And, Your Honor, I also
20   have -- I think without objection -- I'm moving in
21   Exhibits 1, 2, and 3, which are Ms. Smith's CV and
22   two lab reports in reference to her testimony today.
23             THE COURT:  Any objection, Ms. Sirignano?
24             MS. SIRIGNANO:  No, Your Honor.
25             THE COURT:  Anyone else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4720

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4721

```
 1                All right.  Government's Exhibits 1, 2, and
 2     3 will be admitted for this Daubert hearing.
 3          Q.   Ms. Smith, what is DNA?
 4          A.   DNA stands for deoxyribonucleic acid.  And
 5     it is our hereditary material.  We receive half our
 6     DNA from our mother and half from our father.  And it
 7     controls not only what we look like, but also
 8     controls all the different chemical processes going
 9     on within the body.
10          Q.   And where is DNA found?
11          A.   DNA is found within our cells, and the
12     cells are the building blocks that make up our body.
13     We have skin cells, heart cells, muscle cells; males
14     have sperm cells, and there is DNA in these cells.
15          Q.   And does DNA vary from person to person?
16          A.   Yes, DNA is unique to a person, with the
17     exception of identical twins.  Over 99 percent of our
18     DNA is the same, and that's what makes us human, it
19     gives us two arms, a nose, a mouth.  However, there
20     is approximately 1 percent of our DNA that varies
21     between individuals, which makes us unique.
22          Q.   And what kind of differences do you examine
23     in DNA?
24          A.   For forensic purposes, I look at small
25     regions of the DNA that are repeated back to back.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4721

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 79722

 1    We call these STRs, or short tandem repeats.  The
 2    number of repeats a person has differs versus another
 3    individual.  So, for instance, it's similar to the
 4    way a train would work, where all trains have an
 5    engine and a caboose, but some trains are longer
 6    because they have more repeats, or more box cars.
 7    And that's the same with DNA testing that I perform.
 8    Some individuals may have seven repeats, others may
 9    have 10, making them different at locations.
10         Q.    And how is DNA typing performed at the FBI?
11         A.    There is a series of steps that must be
12    done.  The first is a collection, where we have to
13    collect these cells off of an item of evidence, or
14    from a known sample.  And this is usually by cutting
15    or swabbing an item.  We then go through an
16    extraction process where we're adding chemicals and
17    heat to the item releasing DNA from those cells.  We
18    then determine how much DNA we are able to obtain.
19    We then run that through an amplification or copying
20    process.  That process will only copy the locations
21    of the DNA that vary between individuals.  We will
22    then run it through an instrument, which will
23    generate a DNA profile.  I can then compare that DNA
24    profile from an item of evidence to a DNA profile
25    that was taken directly from a known person.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          Q.    And what are the possible conclusions of a
 2    DNA test?
 3          A.    There are two main types of conclusions.
 4    The first is an exclusion, and that is when the DNA
 5    from an item of evidence is different than the DNA
 6    from a known individual, and therefore, we say that
 7    person is excluded as a possible contributor to that
 8    DNA.
 9                The other major conclusion is a match.  And
10    that is when the DNA from an item of evidence is the
11    same as the DNA from a known individual.  Therefore,
12    we say that person could be a possible contributor to
13    that sample.
14          Q.    And how do you determine the significance
15    of a DNA match?
16          A.    If we have a DNA match, we have to generate
17    a statistic to show if it is a strong match or if the
18    profile is common in the general population.  What we
19    calculate at the FBI Lab is something called a
20    likelihood ratio.  It's where we compare alternating
21    hypotheses.  The first is:  What is the probability
22    of that DNA evidence, given it originated from a
23    certain person of interest.  We compare that to the
24    probability of the evidence, given that it originated
25    from a random, unrelated, unknown individual.  The

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4723

```
 1   larger the number we get, the more support that the
 2   DNA originated a certain person of interest.
 3        Q.    And is it possible to identify the source
 4   of the DNA?
 5        A.    Yes.  At the FBI laboratory, when we
 6   calculate that likelihood ratio, if the number we get
 7   is over 700 billion, then we attribute an individual
 8   as the source of the DNA.
 9        Q.    And what is a mixture?
10        A.    A mixture is when you have DNA from more
11   than one individual on an item.  So, for instance,
12   multiple people come in contact with an item, and
13   they all are leaving their DNA on that item.
14        Q.    How does a mixture affect the possible
15   conclusions from a DNA test?
16        A.    It doesn't.  The conclusions are the same.
17   You can still compare a person to a mixture, and you
18   can still have an exclusion, meaning a person does
19   not match any of the contributors within that
20   mixture.  Or you could also have a match in there,
21   where you would still calculate a likelihood ratio.
22        Q.    And how do you know that the results of --
23   that you get are reliable?
24        A.    The biologist and examiners that are
25   performing the training or doing the comparisons are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    both extensively trained.  The laboratory itself is

2    an accredited laboratory, which means that an outside

3    body come in to the laboratory and reviews the

4    standard operating procedures and policies, to ensure

5    that the results we are getting are reliable.  The

6    DNA unit is specifically also audited yearly, to

7    ensure that we're following quality assurance

8    standards for forensic DNA testing laboratories.  And

9    we also run controls of each step of the process.

10        Q.   And do you follow protocol that has been

11   set by the FBI?

12        A.   Yes, we do.

13        Q.   And is that protocol set by anybody else or

14   just the FBI?

15        A.   So the FBI has its own protocols and

16   procedures.  However, the basis of those procedures

17   has been validated.  It's also recommended by SWGDAM.

18   There are other laboratories that are using similar

19   protocols.

20        Q.   Let's go on to this specific case.  Did the

21   FBI Laboratory receive evidence pertaining to your

22   testimony today?

23        A.   Yes, we did.

24        Q.   And I'm going to first refer, to assist

25   you -- how many reports did you generate in reference

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83 of 726

1   to your testimony?

2        A.   Two in reference to this testimony.

3        Q.   Now, I'm going to show you first what's

4   been marked as Government's Exhibit 2.  Are you

5   familiar with this item?

6        A.   Yes, I am.  That is a copy of my report

7   that was dated January 3rd of 2017.

8        Q.   And can you tell us, in general, what you

9   first did in this case, as far as did you receive

10  items to examine?

11       A.   The FBI Laboratory received multiple

12  submissions in this case.  When I was assigned to

13  this case, I combined those submissions into one

14  laboratory report.  The items of evidence that came

15  up to the DNA Casework Unit were inventoried by our

16  case administrative group.  I, then, reviewed the

17  incoming paperwork, and I deemed what should be

18  tested, and directed my biologist to perform that

19  testing.

20       Q.   And does Government's Exhibit 2 list the

21  items that you received in this case, which I believe

22  go to exhibit or item number 54 on the second page;

23  is that correct?

24       A.   These are the items that I tested in this

25  case.  We may have received more.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4726

1          Q.   All right.  And what was the first step in

2     testing these items as far as your analysis?

3          A.   It depends on the items.  So, for instance,

4     with the Phoenix Arms pistol and the canvas holster,

5     I directed my biologist to perform DNA testing on

6     those items, which means they would take swabbings of

7     the items.  My biologist swabbed the textured

8     portions of the Phoenix pistol.  And separately they

9     also swabbed the outside fabric surface of the canvas

10    holster.  For the additional items, most of those

11    items started with blood testing.

12         Q.   Okay.  So, specifically, and what we're

13    here for today, are you referring to items number 3

14    and 4?

15         A.   Yes, I am.

16         Q.   And what was done with those items after

17    the initial swabbing and examination?

18         A.   They went through the routine process,

19    where we collected the DNA, extracted the DNA,

20    eventually amplified the DNA, and generated profiles.

21    I then interpreted those profiles, and wrote this

22    report.  At that time, I did not have knowns to

23    compare to these two items, so they were just

24    reported out generally as mixtures of DNA.

25         Q.   And specifically with items 3 and 4 -- and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4727

```
 1    I'm now looking at, I believe, page 3 of Exhibit 2.
 2    Does that contain -- what were your results from item
 3    number 3 and item number 4?
 4         A.   For item number 3, I did get a mixture of
 5    DNA, which again means that more than one person came
 6    in contact with that item.  And I also look at a sex
 7    determining region, to tell whether the DNA came from
 8    males or females.  And in this case, it came from
 9    both a mixture of male and female DNA.
10         Q.   And what about for the swabbing from the
11    outside surface of the holster?
12         A.   For the holster, again, it was a mixture of
13    DNA.  And so, therefore, again, that means that more
14    than one person came in contact with that item.
15    However, from the sex typing results here, I detected
16    male DNA.
17         Q.   Now, you can't tell when a person left the
18    DNA on there, can you?
19         A.   No, I cannot.
20         Q.   So after you did the testing on this, did
21    you then generate this report?
22         A.   Yes, I did.
23         Q.   And, in fact, you indicate on items number
24    3 and 4 that the mixture is suitable for comparison
25    purposes; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4728

```
 1          A.    That is correct.

 2          Q.    So what would you expect to get after

 3    listing that on the report?

 4          A.    After that report, I was hoping to get

 5    potential known reference samples, which are known

 6    samples taken directly from a person, in order to do

 7    comparisons to those items.

 8          Q.    And did you get that in this case?

 9          A.    I did, yes.

10          Q.    All right.  Now, I'm going to show Exhibit

11    3.  Are you familiar with this item?

12          A.    I am, yes.

13          Q.    Tell us what we're looking at?

14          A.    This is a buccal sample from Mr.

15    Christopher Garcia.  And a buccal sample is a cheek

16    swab that is taken directly from a person.  And we

17    treat this as a known reference sample, meaning we

18    know where the DNA came from on this item.

19          Q.    And what you do with that sample?  And I

20    believe it's item number 58; is that correct?

21          A.    That is correct.  The same process was done

22    on item 58 as the previous items.  We took a cutting

23    of the buccal sample.  The biologist then performed

24    the same extraction, quantification amplification

25    steps.  Eventually, a profile was generated.  I,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4729

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4730

1    then, reviewed that profile, and I was able to

2    compare that profile back to the Phoenix Arms pistol,

3    in addition to the holster.

4        Q.   And what were your conclusions based on

5    that?

6        A.   So for the Phoenix Arms pistol, I compared

7    the DNA profile from that pistol to Mr. Garcia.  When

8    I did that comparison, I was not able to visually

9    exclude him as a possible contributor.  Therefore,

10   when I interpreted this pistol, I interpreted the DNA

11   as originating from four individuals.  When I ran the

12   statistic for Mr. Garcia, it was determined that the

13   DNA typing results for the pistol were at least 28

14   times more likely to -- if they originated from

15   Mr. Garcia and three unrelated, unknown individuals

16   than if they originated from four unrelated, unknown

17   individuals.  So this provided moderate support that

18   Mr. Garcia is a contributor to the DNA from the

19   Phoenix Arms pistol.

20       Q.   Now, in reference to the holster, did you

21   get different results from the holster?

22       A.   From the holster, I also interpreted that

23   holster as originating from four individuals.  From

24   that holster, when I compared it to the DNA from the

25   holster to Mr. Garcia, he again matched that profile.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4730

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4731

 1   When I calculated my likelihood ratio, it was over

 2   our threshold of 700 billion, so therefore, I was

 3   able to satisfy that Mr. Garcia is the source of one

 4   of the contributors on that holster.

 5        Q.   Now, tell us a little bit about what you

 6   mean about it was greater than your -- what term did

 7   you use?

 8        A.   We have a threshold.  So when we calculate

 9   that likelihood ratio, as that number increases, the

10   more support that a certain person of interest is

11   included as a contributor.  So once that likelihood

12   ratio reaches 700 billion, we no longer report the

13   likelihood ratio, we just state that an individual is

14   the source of the DNA.

15        Q.   And do you know from your notes

16   approximately what the ratio was?

17        A.   I don't recall specifically.  But I do

18   believe it was in the quadrillions.

19        Q.   Quadrillions?

20        A.   Yes.

21        Q.   And as far as -- do you know approximately

22   how many people there are on Planet Earth?

23        A.   There is approximately 7, 7 and a half

24   billion people.

25        Q.   There is obviously a difference in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4732

```
 1    numbers between the holster and the firearm; is that

 2    correct?

 3         A.   That is correct, yes.

 4         Q.   Okay.  And what sort of things could impact

 5    that?

 6         A.   It depends on how much DNA is present.  It

 7    depends on if Mr. Garcia is, in fact, a true

 8    contributor.  If he is not, then the number would be

 9    expected, potentially, to be lower.  It also depends

10    on how many people handled a certain item, and in

11    what order.  So, for instance, if one person handled

12    the item first, and then multiple people handled it

13    later, that could potentially limit their ability.

14    So it's really hard to say specifically.  But there

15    are a variety of reasons.

16         Q.   Now, in general, with DNA, do you know how

17    long DNA has been used in the scientific world for

18    testing in forensics?

19         A.   It's been used since the '80s.  However,

20    specifically, the type of testing we currently are

21    using, the FBI has been doing it since 1999.

22         Q.   And is it generally accepted in the

23    scientific communities?

24         A.   Yes, it is.

25         Q.   And does the FBI maintain the standards for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4732

 1    that type of testing, I should say?

 2         A.   Yes, we do.

 3         Q.   And is that part of your accreditation?

 4         A.   Yes, it is.

 5              MS. ARMIJO:  May I have just a moment, Your

 6    Honor?

 7              THE COURT:  You may.

 8         Q.   Now, when you request a sample from a

 9    person to make your matches, do you just use -- do

10    you use the swab from an arrest, or what is it

11    exactly that you use?

12         A.   We are not allowed to use swabs from time

13    of arrest.  Those are specifically collected for

14    entry into a database searching purposes.  For direct

15    comparison to items of evidence, we do require a new

16    sample to be collected.

17              MS. ARMIJO:  All right.  Thank you.  I'll

18    pass the witness, Your Honor.

19              THE COURT:  Thank you, Ms. Armijo.

20              Ms. Sirignano, do you want to start?

21              MS. SIRIGNANO:  Thank you, Your Honor.

22              THE COURT:  Ms. Sirignano.

23              MS. SIRIGNANO:  I'm going to need a minute,

24    Your Honor.

25              THE COURT:  Certainly.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4733

```
 1              MS. SIRIGNANO:  Thank you, your Honor.

 2              With the Court's indulgence, I'm going to

 3     ask Ms. Torraco to vacate there, so we have a little

 4     more room.

 5              THE COURT:  Are you agreeable with that,

 6     Ms. Torraco?

 7              MS. TORRACO:  Yes, Your Honor.

 8              THE COURT:  Thank you, Ms. Torraco.

 9              MS. SIRIGNANO:  Your Honor, Ms. Gilbert is

10     here at the podium with me because we're going to use

11     Trial Director in this cross-examination.

12              THE COURT:  All right.  Ms. Gilbert, good

13     morning to you.

14              MS. SIRIGNANO:  Your Honor, may I approach?

15              THE COURT:  You may.

16                           EXAMINATION

17     BY MS. SIRIGNANO:

18         Q.   Good morning, Ms. Smith.

19         A.   Good morning.

20         Q.   I'm handing you what's been marked CG-A and

21     DNA on the bottom.  Do you recognize that?  It's

22     approximately 317 pages.

23         A.   Yes, I do.  It is a copy of my original

24     case file for the first submission.

25         Q.   And when you say "the first submission,"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that would be items 3 and 4 that you just previously

2    testified about?

3        A.   Correct.  They're the first submissions for

4    myself.  It was, I believe, the third or fourth

5    submission for the laboratory.  But yes, that's what

6    I'm referring to.

7        Q.   And that would be the alleged gun and the

8    holster in this case?

9        A.   That is correct.

10           MS. SIRIGNANO:  Your Honor, I'd like to

11   move for admission of CG-A DNA at this time?

12           THE COURT:  All right.  CG-A.  All right.

13   Any objection, Ms. Armijo?

14           MS. ARMIJO:  No, Your Honor.

15           THE COURT:  Any objection from the other

16   defendants?  All right.  Christopher Garcia's Exhibit

17   A will be admitted for this Daubert hearing.

18           MS. SIRIGNANO:  Thank you.

19       Q.   Ms. Smith, can you take a look at this

20   exhibit, please?  What is it?

21       A.   This is the case file from my second

22   report.

23       Q.   And so you recognize it as your case file?

24       A.   Yes, I do.

25       Q.   And when you say the "second report," that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4735

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 93 736

1    would be the report you did regarding Mr. Garcia's

2    buccal swab?

3         A.   That is correct.

4              MS. SIRIGNANO:   Your Honor, at this time,

5    I'd move admission of Mr. Garcia's CG-B DNA.

6              THE COURT:   Any objection, Ms. Armijo?

7              MS. ARMIJO:   No, Your Honor.

8              THE COURT:   From any other defendant?

9              All right.   Christopher Garcia's Exhibit B

10   will be admitted into evidence for this Daubert

11   hearing.

12             Ms. Sirignano.

13             MS. SIRIGNANO:   Thank you, Your Honor.

14        Q.   So Ms. Smith, I'm just going to talk a

15   little bit about your background and your previous

16   testimony about the two reports, Government's 1 and

17   2.  And you said that you have biologists that do the

18   work for you; correct?

19        A.   That is correct.  The FBI laboratory has a

20   team approach, where we have examiners that direct

21   the testing and they oversee all the testing.  The

22   decisions are made by the examiners.  The comparisons

23   and interpretations are made by the examiners.

24   However, we do have biologists that perform the

25   hands-on testing in the lab.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4736

```
 1         Q.   And so what's part of your review?

 2         A.   I review the biologists' notes, I review

 3    the profiles that were generated.  I review the

 4    incoming paperwork of the items prior to them being

 5    tested at the laboratory.  I review the entire case

 6    file.

 7         Q.   And that's what you have in front of you in

 8    Exhibits CG-A and CG-B DNA; correct?

 9         A.   That is correct.  These are copies of my

10    case file.

11         Q.   Which includes the biologists' reports as

12    well; correct?

13         A.   That is correct, yes.

14         Q.   And so in so much you review their work,

15    you adopt their work as well?

16         A.   I do.  I'm in constant contact with the

17    biologists.  So, as they're performing testing, if

18    they have any questions, they will come seek me out.

19    If they have no questions, then I will just review

20    their notes, make sure there are no issues, and then

21    write my reports based off those.

22         Q.   And you, yourself, do not do any instrument

23    testing, or you did not do any instrument testing for

24    these two reports, Government's Exhibits 1 and 2?

25         A.   That is correct.  The biologists would do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4737

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 95

1   that.

2       Q.   And so what would happen if you found an

3   error in one of the biologist's reports or notes?

4   What's the process?

5       A.   It depends on what the type of error is.

6   If the error is an administrative error, such as a

7   spelling discrepancy, I would just correct the

8   spelling discrepancy.  If it is something that I

9   cannot just correct, I will go seek out the

10  biologists, have a conversation with them, and make

11  any adjustments as needed.  If there is an error

12  affecting their work, then it would be brought up to

13  a technical leader.  And then the decision would be

14  made from that point on from our quality program.

15      Q.   So you would review a report first, and

16  then, if there was an error, then it would go to a

17  technical leader for review?

18      A.   That's the normal process.  It really just

19  depends on the type of error.  If it was an

20  instrument error, we may just proceed with a new

21  instrument.  It really just depends on the specific

22  situation.  In this case, there was no noted error,

23  so I don't have any of those issues in this case.

24      Q.   Can you talk a little bit about your error

25  rate with this particular program, STRmix?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4738

1      A.   There is no documented error rate for

2  STRmix, as we use it at the laboratory.  The STRmix,

3  if it has an error while running, we will re-run the

4  program.  But there is no calculated error rate.

5      Q.   And at times, when you re-run the sample,

6  do you get different findings than the first run,

7  when you read -- when -- a sample as an error?

8      A.   Yes, if there is an error, then it means

9  the software will not complete properly.  So when you

10  re-run the software, you will get the correct value.

11      Q.   And how many times in your history with the

12  FBI have you had to do that?

13      A.   I can only think of one to two, maybe,

14  instances.  And that was because the DNA types that

15  were seen were not separated fully because of how

16  close in size they were.  So STRmix was not able to

17  handle that specific instance.  So I ignored that

18  location.

19      Q.   You talked with Ms. Armijo on direct

20  examination that the DNA unit has manuals and

21  protocols and procedures; correct?

22      A.   That is correct, yes.

23      Q.   Do you have any of those with you here

24  today?

25      A.   I do not have them with me, no.  They were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

4740

 1    provided on a CD, on discovery.  But I don't

 2    typically bring those with me on testimony.

 3         Q.   So they were provided to the Government?

 4         A.   Yes.  So copies of my protocols that were

 5    relevant to the case as well as my case files are

 6    typically handed over on discovery, as part of our

 7    quality assurance program.

 8         Q.   When was that handed over?

 9         A.   I don't know specifically.  Once we get a

10    discovery request in, our normal process is to make

11    copies of the case files, also provide copies of our

12    protocols.  Those are handed over to our legal

13    department.  And from my understanding, our legal

14    department mailed them December 7, via an email I

15    received.  So I don't know specifically when they

16    were received or anything like that.

17         Q.   December 7th of 2016?

18         A.   Of 2017.

19         Q.   2017.  Was that last week?

20         A.   Based on the email, I have, yes.

21              MS. SIRIGNANO:  Your Honor, at this time,

22    I'd like to ask for the Government to turn over those

23    policies and procedures that were turned over by

24    Ms. Smith as part of the discovery process.

25              THE COURT:  Any response on that, Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4740

```
 1   Armijo?
 2              MS. ARMIJO:  Your Honor, I will check to
 3   see if they were disclosed yet.  I know that I was
 4   handed today a CD that was sent on December 14 to
 5   Special Agent Nancy Stemo.  But, in looking at it
 6   this morning, I didn't see policies and procedures,
 7   but I'll have to have somebody else go look at it.
 8   But it was sent to Nancy Stemo on the 14th.  So I'm
 9   trying to figure out -- it is true the legal people
10   said that they sent it to us on December 7th, which
11   means that we, at least New Mexico, would have
12   received it.  I'm trying to track that down to see if
13   that was disclosed or not.  I believe what I have in
14   my hand today is from a different examiner and
15   different report.  So I will be tracking that down,
16   and certainly have no objection to turning it over,
17   if it has not already been disclosed.
18              THE COURT:  All right.  Ms. Sirignano?
19              MS. SIRIGNANO:  Your Honor, it has not
20   already been disclosed.  And the Government did know
21   that we were having this hearing today.  I did file,
22   as the Court requested, over the weekend, a
23   declaration from our expert, Janine Arvizu, regarding
24   the need for the protocols and procedures in order to
25   properly do an audit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4741

```
 1            And I'm also getting a sworn declaration
 2   affidavit from Dr. Dan Krane, regarding -- he's a DNA
 3   expert in this case -- regarding the need to have
 4   those SOPs, policies and procedures, in order to
 5   discuss the extraction process, the quantitative
 6   results of the DNA, the amplification process, the
 7   instrument calibration, and then the comparison of
 8   the result to the known person.
 9            So, Your Honor, I would submit that I need
10   those documents in order to properly do a
11   cross-examination.
12            THE COURT:  Well, do the best you can.  And
13   then we'll see if the Government can find those and
14   get them in your hands pretty quickly.
15            MS. SIRIGNANO:  Thank you, Your Honor.
16       Q.   So is it normal procedure for you, as an
17   examiner, when you have produced a report, to provide
18   your reports and the SOPs, manuals, policies and
19   procedures, to the United States Attorney's Office?
20       A.   We do, once requested.  So I work --
21   typically, I have 30 or so cases assigned to me at
22   once.  And most of those don't ever go to trial.  So
23   when the attorney requests a discovery, that's when
24   we would hand over all of our materials.  We would
25   hand over copies of our case files, and then also
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    copies of our standard operating procedures.  So it's

 2    not every case.  It's only when requested.

 3        Q.   And that's routine; policies and procedures

 4    manuals go along with the case file when you have

 5    notice of litigation; correct?

 6        A.   That is true.  It depends on the case.

 7    Sometimes it's a little more complicated.  So for a

 8    case like this, where there are many submissions,

 9    sometimes the legal team in order to expedite the

10    process, will send out things piecemeal.  Usually,

11    they'll try to send it out in all one packet.  But

12    because this case is still ongoing at the laboratory,

13    there are still open examinations at the laboratory,

14    they may or may not have sent it in different

15    packets.  I'm not sure specifically to that.

16        Q.   Thank you.

17             So you testified earlier that DNA has been

18    around since 1999; correct?

19        A.   The DNA testing that we specifically

20    perform at the lab, the STR, short tandem repeats,

21    has been around since '99 at the FBI Laboratory.

22        Q.   Short tandem repeats?

23        A.   Correct.

24        Q.   Now, tell us a little bit about the -- you

25    used a STRmix computer program to perform the STR, or



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101

```
 1   short tandem repeat testing in this case; correct?

 2        A.   STRmix was not used for the testing.  It

 3   was used for the interpretation calculation of a

 4   likelihood ratio after the testing was completed.

 5   STR testing itself is the actual process by which the

 6   DNA is copied and the profile is generated.  But

 7   STRmix is a tool that we use to generate likelihood

 8   ratios and to do mixture deconvolution, or separation

 9   of contributors in a mixture.

10        Q.   So how is STRmix different than the

11   previous method that the FBI was using before the FBI

12   adopted STRmix?

13        A.   The previous method threw out a lot of

14   information.  It was called a combined probabilty of

15   inclusion.  It's still a valid method to use;

16   however, if you have low level samples, you cannot

17   include multiple locations in your statistic

18   calculation.  So you are actually -- as an examiner,

19   you're not able to use the information or all the

20   information that was present.

21             STRmix is a continuous model that models

22   for different processes within the DNA process.  It

23   models for drop-out.  So if you're missing

24   information, it actually has modeling for that.  It

25   also can model artifacts that can be seen.  So it's a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4744

1    better tool that utilizes the entire profile, versus

2    just parts of the profile.

3         Q.   So it's not a human analysis by any means;

4    correct?

5         A.   There is definitely human involvement.  So,

6    as an examiner, I first do a visual comparison to see

7    if I believe the individual can be visually excluded.

8    If a person is visually excluded as a contributor, I

9    do not run STRmix.  I actually do that step first.

10   If I cannot visually exclude an individual, I will

11   then run STRmix.  But I must review the output of

12   STRmix.  So the report that STRmix generates, I

13   review that report as well.

14        Q.   So did you do a visual comparison in this

15   case?

16        A.   I did, yes.

17        Q.   And what were your results?

18        A.   I cannot visually exclude Mr. Garcia to

19   either the holster or the pistol; therefore, I ran

20   STRmix for both items.

21        Q.   And is that reflected in your reports?

22        A.   That's just part of our procedure.  So it's

23   not specifically laid out in the report.  However, if

24   there was an exclusion, it would state that I

25   excluded in that report.  It would say an individual

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is excluded in the report.

2         Q.    And what did you visually compare?

3         A.    The DNA profile from Mr. Garcia to the DNA

4    profile from both holster, as well as the pistol.

5         Q.    So let's be a little bit more certain with

6    what we're talking about here.  So you called the DNA

7    profile from Mr. Garcia, item 58(1)a; correct?

8         A.    I'm not sure what you're referring to.  The

9    parentheses one at the end?

10        Q.    Yes.

11        A.    That is just the collection item.  So it's

12   actually just item 58.  But in the collection notes,

13   it will have the parentheses, because that's part of

14   the software we use to track the sample.  It

15   automatically adds that.  But in my report it would

16   just be item 58.

17        Q.    And then the firearm was item 3; correct?

18        A.    Correct.

19        Q.    And the holster you identified as item 4;

20   correct?

21        A.    That is correct.

22        Q.    So you compared the DNA profile of item 58

23   with item 3 and item 4; correct?

24        A.    That is correct, yes.

25        Q.    Okay.  And when you say the DNA profile,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4746

```
 1    what actually are you looking at?

 2         A.    I'm looking at alleles, or DNA types, that

 3    are present at each location.  So in STR testing --

 4    at the time the holster and the pistol was tested, we

 5    were looking at a kit that looks at 15 STR, or short

 6    tandem repeat, locations.  Each of these locations

 7    has DNA types present at them.  The totality of all

 8    15 types is what I'm referring to as a DNA profile.

 9             With Mr. Garcia, I was using a different

10    kit that actually looks at 24 DNA locations.  And I

11    compared those profiles to the previously tested

12    evidence items.

13         Q.    Okay.  So let's go into that a little bit.

14    What's an allele?

15         A.    An allele is a DNA type at a location.  So,

16    for instance, if you receive seven repeats from your

17    mom, then that would be called a seven allele.  If

18    you receive 10 from your dad, that would be a 10

19    allele.  Your DNA profile at that location would be a

20    7/10.  It's a combination of both alleles together

21    which makes up your DNA profile.

22         Q.    And the kit that you use to test the

23    firearm and the holster is called what?

24         A.    Identifiler.

25         Q.    And how many locations does it test?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4747

1        A.   It looks at 15 locations, in addition to a

2   sex determining region.

3        Q.   Then you used a different kit for the

4   buccal sample, correct, item 58?

5        A.   That is correct.  And that's because the

6   buccal sample came in approximately a year later.  So

7   at that time, we were no longer using Identifiler.

8   We were using a new kit called GlobalFiler, which

9   looks at 21 locations, and then three sex-determining

10  locations, for a total of 24.

11       Q.   And why did the FBI go to the GlobalFiler

12  kit?

13       A.   We went to the kit because it looks at more

14  locations, therefore, it has more discrimination

15  potential.  In addition, one of the main reasons is

16  CODIS, which is the DNA database, is going to be

17  switching to more locations in the future.  And so it

18  was recommended -- or mandated -- that all

19  laboratories that participate in CODIS, which is the

20  Combined DNA Index System, or that database, start

21  using more up-to-date kits that have more locations.

22       Q.   So I'd like to talk to you a little bit

23  about this STRmix program.

24            Can you pull up CG-B 25, please.

25            Ms. Smith, what's this?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4748

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 106 of 4749

```
 1        A.   This is the evidence check-in notes that my
 2   case administration group documented as the item was
 3   received into the DNA Casework Unit for the item 58
 4   buccal sample for Mr. Garcia.
 5        Q.   And in terms of relevant considerations for
 6   STRmix, the STRmix program only asks specific
 7   questions that you or the analyst or the examiner
 8   puts into the program; correct?
 9        A.   That is correct, yes.
10        Q.   And so with your hypotheses, you just
11   compare Mr. Garcia's item 58, the buccal sample, with
12   items 3 and 4; correct?
13        A.   That is correct.  I do it individually,
14   yes.
15        Q.   Can you pull up CG-A 17.
16             Ms. Smith, do you recognize this document?
17        A.   I do.  That is the incoming lab exam
18   request from the field, when the items -- the pistol
19   and the black holster were submitted to the
20   laboratory.  This is the documentation I received.
21        Q.   You received this from whom?
22        A.   This would come from the FBI agent
23   submitting the evidence to the lab, or any other
24   contributor, when they submit evidence to the lab,
25   they're required to fill out either a lab exam
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4749

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107

1    request or a letter.

2         Q.   And this is an electronic communication

3    from Agent Sainato; correct?

4         A.   Yes, that is correct.

5         Q.   In the Albuquerque Division?

6         A.   Yes, that is correct.

7         Q.   Part of that request is, it states at the

8    bottom of that the page that entity, Mario Montoya,

9    is known to have touched items; correct?

10        A.   It is listed as that, yes.

11        Q.   Entity Christopher Garcia is believed to

12   have touched items; correct?

13        A.   That is correct.  That is also listed.

14        Q.   At any point in time in your review of

15   items 3 and 4, did you consider Mario Montoya's DNA

16   as part of your testing and analysis?

17        A.   I did not receive a sample from Mr.

18   Montoya, no.

19        Q.   Why?

20        A.   One was not provided.

21        Q.   So you did not consider Mr. Montoya's DNA

22   in your findings then?

23        A.   Unless a sample is submitted from

24   individuals, I cannot consider them in my findings,

25   no.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4750

```
 1        Q.   But from this electronic communication, you

 2   know from the agent that entity Mario Montoya is

 3   known to have touched the item; correct?

 4        A.   That is correct.  And that's part of the

 5   misconception, is that DNA, we cannot use samples

 6   from databases for direct comparisons.  So these

 7   individuals are listed under the assumption that

 8   either us or latent fingerprints can pull their

 9   samples for direct comparison.  But, legally, DNA is

10   not allowed to do that.  And so the agent would have

11   had to submit known reference samples directly to us,

12   in order for me to do those comparisons.

13        Q.   And Mr. Mario Montoya is a government

14   cooperating witness; correct?

15        A.   I do not know specifically who he is, no.

16             MS. SIRIGNANO:  Your Honor, may I approach?

17             THE COURT:  You may.

18             MS. SIRIGNANO:  Can you pull up CG-E DNA?

19        Q.   Ms. Smith, do you recognize this document?

20        A.   I do not.  It's between Agent Sainato

21   and -- it looks like a different employee with the

22   laboratory.  Not myself.

23             MS. SIRIGNANO:  One moment, please, Your

24   Honor.

25        Q.   Ms. Smith, we've already determined that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4751

```
 1    Agent Sainato was the case agent in Albuquerque
 2    submitting evidence to the lab; correct?
 3         A.   That is correct, yes.
 4         Q.   And in this email -- Sherine Ali is a
 5    fingerprint examiner?
 6         A.   Yes, I believe so, yes.
 7         Q.   Do you know Ms. Ali?
 8         A.   I do not, no.
 9         Q.   So in looking at this email, Agent Sainato
10    advises Ms. Ali -- and I'm going to quote from it, in
11    the middle of the page -- "We're just hoping that
12    Mr. Garcia's DNA fingerprints will be on the gun
13    and/or holster for additional confirmation"; is that
14    correct?
15         A.   That's what it states in this email, yes.
16         Q.   And then on the top of the page it says,
17    "You were interested in DNA examinations, but because
18    of the nature of the evidence, DNA examinations would
19    not be performed for these items."  Correct?
20         A.   That is also in a separate email, yes.
21         Q.   So you've never seen this document before?
22         A.   No, we don't typically have all the emails
23    from the other units in between the agents and other
24    laboratory examiners.  Just like they wouldn't
25    necessarily have our emails.  So, no, I have not read
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    this email.
 2        Q.   You were told by the FBI Albuquerque that
 3    they were hoping to find Mr. Garcia's DNA on items 3
 4    and 4?
 5        A.   I was not told that specifically.  It was
 6    listed in a lab exam request, that they believe
 7    Mr. Garcia may have been in contact or handed this
 8    item over.  So they were expecting, potentially, his
 9    DNA to be on this item.  Yes, that was in the lab
10    exam request that was previously shown.
11        Q.   That was the last document that I pulled up
12    on the visualizer; correct?
13        A.   That is correct, yes.
14        Q.   So you have knowledge that Mr. Garcia,
15    perhaps, had touched these items; correct?
16        A.   Yes.  That was listed in the lab exam
17    request, that he may have handed those over, yes.
18        Q.   So how do you overcome any kind of bias
19    from knowing that he might may have touched these
20    items?
21        A.   I perform the -- so for -- in this case,
22    the comparison was performed over a year later.  I
23    could not visually exclude, because Mr. Garcia's DNA
24    types were consistent with those on the firearm.  So
25    I ran STRmix.  And STRmix doesn't have any bias

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   potentially incorporated within the software.  It

2   does a mixture deconvolution first, before it even

3   looks at the known.  And then it also will, at that

4   point, compare the known and calculate a likelihood

5   ratio based off that.  So there would be no bias

6   associated with this.

7        Q.   But without having Mr. Montoya's profile to

8   consider, you've got a huge gap in the statistical

9   analysis with STRmix; correct?

10       A.   This would be independent of any additional

11   contributors.  Because on both firearm and the

12   holster there is a mixture of four individuals on

13   each of them.  So I do expect other people to

14   potentially match both of these items.

15       Q.   But you can't rule out Mr. Montoya one way

16   or the other; correct?

17       A.   That is correct.  I cannot rule out anyone,

18   because I did not receive any additional known

19   reference samples.

20       Q.   And at no point in time did you go back to

21   the laboratory, after you saw that incoming

22   electronic communication, and say, Hey, can you

23   please get a DNA sample from Mr. Montoya so I can use

24   it in my comparison; correct?

25       A.   No, I did not.  And, again, this case,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4754

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112

1   because there were so many submissions going on at

2   once, I wasn't sure, originally, who needed to be

3   compared to what.  We had other buccal samples and

4   unrelated submissions.  And so, at that time, I did

5   not request any additional knowns.  The Garcia sample

6   came at a later date, directly to me.

7        Q.   So you've got a big gap in your mixture and

8   your analysis profile, without Mr. Montoya's DNA

9   profile; correct?

10       A.   I don't think that has anything to do with

11  Mr. Montoya's sample.  Again, there was a four-person

12  mixture on both the holster and on the firearm.  When

13  I compared Mr. Garcia, I could not visually exclude

14  him from either.

15            One of those items, the holster, there was

16  much stronger support for Mr. Garcia being a

17  contributor, because that likelihood ratio was

18  greater than 700 billion.

19            For the gun, the likelihood ratio that I

20  calculated was 28.  But that would be independent of

21  any other individuals.

22       Q.   But it's safe to assume that Mr. Montoya

23  could be one of those three or four unknown

24  individuals that was not properly analyzed; correct?

25       A.   He could be one of the contributors.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113

```
 1    would not say it was not properly analyzed.  However,

 2    he was not analyzed because I never received a sample

 3    from him.

 4             But, again, when we receive samples from

 5    the laboratory, we run every individual separately,

 6    or independently from the item.  So we wouldn't --

 7    having Mr. Montoya's sample would not have changed my

 8    comparison to Mr. Garcia.

 9        Q.   Okay.  Let's look at CG-B 62, please.

10             MS. SIRIGNANO:  Your Honor, we need a

11    moment here.  I apologize.

12             THE COURT:  That's all right.

13             MS. SIRIGNANO:  Thank you, Your Honor.

14             THE COURT:  Certainly.

15             MS. SIRIGNANO:  I love technology.

16        Q.   Ms. Smith, you recognize this document CG-B

17    062?

18        A.   I do.  This is the STRmix output report

19    that was generated in reference to the firearm.

20        Q.   And it's a number of pages in length;

21    correct?

22        A.   Correct.  It is listed as 20 pages.

23        Q.   That's down at the bottom of the document;

24    correct?

25        A.   That is correct, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4756

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 4757

```
1          Q.   And so looking at this document, and the
2    title, "Summary of input data," this shows that you
3    used the IDplus version 2.4; correct?
4          A.   That is correct.
5          Q.   You determined there were four contributors
6    in this sample?
7          A.   Yes, I did.
8          Q.   And the input files are items 3 1A;
9    correct?
10         A.   That is correct.
11         Q.   That would be the firearm?
12         A.   Correct.
13         Q.   And then the known contributors under the
14   hypothesis is item 58(1); correct?
15         A.   That is correct.
16         Q.   That is Mr. Garcia's buccal sample?
17         A.   Correct.
18         Q.   And so why is the next column "known
19   contributors under Hd" blank?
20         A.   The way the STRmix works is if you have no
21   additional individuals that you know for a fact will
22   be on that item, that would be left blank, and it's
23   just unknown contributors at that point.  So, for
24   instance, the known contributors under Hd for this
25   would be four unrelated unknown individuals.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4757

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4758

1     Q.   But you knew from the electronic

2  communication that Mario Montoya had touched this

3  firearm; correct?

4     A.   It was listed as a contributor, but I did

5  not have Mr. Montoya's sample when this analysis was

6  run.  And I still do not have that sample.  If I had

7  that sample, if we know that the firearm was touched

8  by him, I could include him as both a known

9  contributor under both Hp and Hd.  But, again, I do

10 not have the sample.

11    Q.   So you've got a big gap in your analysis

12 here, because the known contributor, Mario Montoya,

13 his DNA wasn't run; correct?

14    A.   I do not have a big gap here.  This is a

15 normal process for when we have only one buccal

16 sample.  This is how it normally would be.  So there

17 is not a big gap in this analysis.

18    Q.   But knowing that he did touch the firearm,

19 you could have run the sample, and it would have been

20 more accurate, had the sample been run; correct?

21 Instead of four unknown individuals?

22    A.   Without having his known sample -- just

23 because an individual comes in contact with a

24 firearm, it does not mean their DNA would be present.

25 So I can't say that Mr. Montoya would even be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4758

```
 1   conditioned on here, which is when we include someone
 2   under Hd.  Because without having his known, I don't
 3   know if his DNA was present on that item.  So I don't
 4   want to make an assumption that it was, because I
 5   don't have that sample.
 6        Q.   Can you pull up CG-B 065, please?
 7             MS. SIRIGNANO:  I apologize, Your Honor.
 8        Q.   Ms. Smith, this is Document 56.  Do you
 9   recognize it?
10        A.   Yes, I do recognize this.  This is, again,
11   a page of the STRmix output file.
12        Q.   And in the middle of the page it says
13   "parameters"; correct?
14        A.   That is correct.
15        Q.   These are the input values that the FBI
16   enters into the STRmix program?
17        A.   Those are the parameters that are entered
18   based off of our validation.  So those will remain
19   identical every time.
20        Q.   And that's the FBI's validation, right?
21        A.   That is correct.  When the FBI goes online
22   with any type of software or kit, we have to validate
23   that kit for use in our hands.  And it was the same
24   for STRmix.  So these are the parameters that are
25   locked into the software so that the user cannot
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 4760

```
 1   change them.
 2        Q.   And these parameters that are locked in
 3   were derived by the FBI; correct?
 4        A.   The FBI's DNA Support Unit, who did the
 5   validation, along with ESR, which is the individuals
 6   who developed STRmix.  Both the validation and these
 7   parameters were determined in combination of the two.
 8        Q.   What's the ESR?  I'm sorry, I missed that.
 9        A.   The ESR, it's Environmental Science and
10   Research Institute.  It is the organization that
11   developed STRmix.  They did their own developmental
12   validation first.  They, then, trained us on STRmix,
13   and they assisted us in our internal validation.
14        Q.   Is that an outside agency?
15        A.   That is, yes.
16        Q.   So it's proprietary software that the FBI
17   has purchased?
18        A.   That is correct.  It is software that is
19   available for purchase.  And there is multiple
20   laboratories using it currently.
21        Q.   And are part of co-developers of the
22   Environmental Science Research Unit, John Buckleton;
23   correct?
24        A.   Yes.
25        Q.   James Curran?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4760

```
 1        A.    Yes.

 2        Q.    And Jo-Anne Bright?

 3        A.    That is correct, yes.

 4        Q.    So they're the co-developer of STRmix.

 5   Anyone else?

 6        A.    I don't know specifically.  I believe there

 7   was a Mr. Duncan -- but I don't recall his exact

 8   involvement.  I'm sure there are multiple other

 9   individuals, though, involved, but those are the main

10   three.

11        Q.    So towards the bottom of that page, there

12   is a box called "stutter variance," and there is a

13   value next to that.  Can you explain that?

14        A.    This value specifically came from our

15   validation, using part of the software that actually

16   allows you to run single source samples through the

17   software, to generate how much variance is on average

18   that you're seeing.  So this is based off of, again,

19   that validation.  Specifically, how it was derived

20   would have come from the DNA Support Unit.

21        Q.    Okay.  But what's stutter?

22        A.    Stutter is an artifact of the amplification

23   process.  So when you are copying the DNA, there

24   are -- a very common occurrence is that the DNA

25   strand can slip during that copying.  That creates a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4761

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119

1    stutter peak, which is one base pair shorter than the

2    parent.  So, for instance, if a person has a seven

3    allele, you will see a very, very small peak at

4    potentially the six location, just due to natural

5    stutter.

6        Q.   So it's like a natural error, a natural

7    anomaly in the amplification process?

8        A.   I wouldn't call it specifically an error.

9    It's a known artifact.  So this is something that can

10   be reviewed by an examiner.  It's also part of our

11   validation, where we estimate what those stutter

12   percentages should be at each of the different

13   locations.  And so, like I said, it's part of the

14   process.

15       Q.   And can you explain what drop-in is?

16       A.   Drop-in is when alleles that may not be

17   present in the profile show up in the profile, just

18   due to natural contaminant.  We did not see any

19   drop-in in our validation, so it's set at zero.  We

20   did not see it in any of the samples we ran at the

21   parameters we set it at.  We do not see drop-in, so,

22   therefore, we do not include it, and therefore is set

23   as zero in our parameters here.

24       Q.   So drop-in cap, drop-in frequency, drop-in

25   parameters, which is part of this document, it's all

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120

1    been zeroed out; correct?

2         A.    That is correct, yes.

3         Q.    So the FBI DNA Support Unit, with their

4    validation, is saying that there is zero natural

5    contaminant in all your samples?

6         A.    Based off of the settings we run our

7    samples at.  For instance, when we're doing the

8    amplification process, our normal process, through

9    the thousands of samples we analyzed with known

10   profiles, we saw no instances of drop-in at the set

11   parameters.  We set our parameters based on the fact

12   that we did not want to see any drop-in.  So we set

13   all of our thresholds above any potential drop-in.

14   That can typically be seen with very low level

15   samples that are run through an increased sensitivity

16   testing, which we do not do at the FBI Laboratory.

17        Q.    So what you're saying is that there is no

18   natural contaminant at all with your samples, based

19   on your zero values entered?

20        A.    It's different.  So contamination can

21   happen.  So, if a person sneezes while they're

22   processing the evidence, their sample could show up

23   on an item.  It did not happen in this incidence, but

24   that can happen.  That's not what I'm referring to

25   here.  Drop-in is just when, if you know a person's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    DNA profile, you just see a very small DNA peak that

2    shouldn't -- that doesn't belong there, it's just

3    natural from the environment.  And we do not see any

4    of that instance in our validation, based off of the

5    way we process our samples.

6         Q.   Well, the peaks are really important in the

7    analysis; correct?

8         A.   That's correct.  That's why we did our

9    validation, so we would not see any of those

10   instances.

11        Q.   But they do show up naturally; correct?

12        A.   At very low level, with increased

13   sensitivity testing, which we do not do at the FBI.

14        Q.   Can you please pull up CG-B 62, please.

15             Okay.  Ms. Smith, let's try and do it the

16   old-fashioned way.  Okay.  This is Document 62.  So

17   towards the bottom of the page, there is a column

18   called "Run Information," or a heading called "Run

19   Information."  Can you explain what total iterations

20   acceptance rate means?

21        A.   Total iterations is how many -- so, as part

22   of the STRmix process, it goes through an MCMC, or

23   Monte Carlo Markov Chain process, where it will go

24   through different iterations of the profile.  So it

25   will estimate what those different genotypes are.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4764

1              With large -- with multiple people in the

2     mixture -- so, in this instance, four individuals, in

3     order to reach the 400,000 post burn-in acceptance,

4     which what that means is we allow the first 1,000

5     excepts to be thrown out because we know that that's

6     too early in the steps of the process, so the last

7     4,000 would be -- or excuse me, the last 400,000 --

8     would be the ones that are going to generate a more

9     accurate deconvolution of your mixture.

10             The total iterations is how many iterations

11    actually had to be generated in order to reach that

12    400,000 accepts.  It's a very complicated process.

13    But what that means is it had to run through 3.4

14    million iterations before it accepted the profile,

15    for a total of 500,000 times.

16        Q.   And this is all information that's been put

17    into the program based on the validation studies that

18    you've all done; correct?

19        A.   That is not put into the program.  The

20    400,000 is set into the program.  So the first

21    100,000 of the deconvolution is thrown out.  That's

22    part of the validation.  The last 400,000 is also

23    from the validation.  The total iterations is going

24    to be profile dependent.  When you have mixtures of

25    four individuals, that number is going to be higher.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123766

```
 1    When you have lower number of contributors, say, one
 2    or two, it's going to be much lower, because it's
 3    easier to deconvolute lower number of contributor
 4    mixtures.
 5         Q.   And we don't have that in this case.  We
 6    have -- what you said in your report is four
 7    individuals; correct?
 8         A.   That is correct.
 9         Q.   So, let me see if I could break this down
10    into --
11              THE COURT:  Let me ask this:  Ms.
12    Sirignano, would this be a good time for us to take
13    our lunch break?
14              MS. SIRIGNANO:  Yes, Your Honor.
15              THE COURT:  All right.  We'll be in recess
16    for about an hour.
17              (The Court stood in recess.)
18              THE COURT:  All right.  Everybody take
19    their seats.  Nobody needs to rise.  Just go ahead
20    and be seated.  Everybody take their seats, and make
21    sure everybody has got a counsel.
22              I should have identified Mr. Walz is here
23    rather than Mr. Winder.  Mr. Walz, good afternoon to
24    you.
25              MR. WALZ:  Thank you, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4766

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4767

```
 1                THE COURT:  Mr. Castle, you're here.

 2                MR. CASTLE:  Yes, Your Honor.

 3                THE COURT:  Good afternoon to you, Mr.

 4    Castle.

 5                MR. CASTLE:  Good afternoon.

 6                THE COURT:  Who is on the phone?

 7                THE CLERK:  I am, Judge.

 8                THE COURT:  Okay.  Anyone else on?  Take

 9    your mute button off.

10                MS. RODRIGUEZ:  Raquel Rodriguez.

11                THE COURT:  Anyone else?

12                All right.  Ms. Smith, I'll remind you that

13    you're still under oath.

14                Ms. Sirignano, if you wish to continue your

15    cross-examination of Ms. Smith, you may do so at this

16    time.

17                MS. SIRIGNANO:  Thank you, Your Honor.

18                THE COURT:  Ms. Sirignano.

19                MS. SIRIGNANO:  Your Honor, I'd just like

20    to put on the record that about five minutes ago the

21    Government gave to Mr. Adams, who gave to me, this

22    binder, this white binder of the DNA Casework Unit's

23    policies and procedures.  And so I'd like to ask that

24    I have the evening to review this, and then recall

25    Ms. Smith tomorrow, if, after my review, there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4767

 1   some cross-examination that I might need to ask her

 2   about.

 3            THE COURT:  How does the Government feel

 4   about that?

 5            MS. ARMIJO:  Maybe, if she finishes her

 6   examination today, and takes a break -- I just know

 7   that Ms. Smith has flight reservations to leave

 8   tonight at 9:00 p.m., and I don't know if she has a

 9   conflict tomorrow.  We'd indicated to her that she

10   would be on the stand today, and back to work

11   tomorrow.  So I'm not sure what she has going on.  I

12   can certainly talk to her about it at break.

13            THE COURT:  Well, let's see how we go.

14   Maybe you can take a break and see if there is

15   anything in there.  I guess my sense is that the

16   policies and procedures don't really impact the

17   Daubert issue.  I'm having a hard time seeing how the

18   policies and procedures within the FBI are going to

19   impact a Daubert issue here.  She's here to say what

20   she did.  And I'm not sure that whether they did or

21   didn't do what they might have in the policies or

22   providers is going to impact that.  But --

23            MS. SIRIGNANO:  And, Your Honor, I don't

24   agree with you one hundred percent that -- only for

25   the record, Your Honor -- I'm not trying to be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 126769

1    argumentative -- we've been asking for these

2    documents for quite some time now.  And Ms. Smith

3    testified that this is routine with turning over

4    discovery in her office.

5           And, quite frankly, my position is that,

6    with the statistical results and this STRmix computer

7    program, and the threshold levels, which I talked to

8    the Court a little bit about before, I didn't know

9    what they were.  And I still don't know exactly what

10   they all are, because they're contained in that

11   binder that I got just before we resumed.

12          So I understand she has to get home to

13   Virginia, and we're close to the holidays.  But I

14   just would like the opportunity to take a look at it

15   before I release her from testifying, Your Honor.

16          THE COURT:  Well, let's see if we can --

17   maybe we move to other things here in a little bit,

18   see if you can take a look at it during -- while

19   other people are doing other things.

20          MS. SIRIGNANO:  Thank you, Your Honor.

21          THE COURT:  Ms. Sirignano.

22   BY MS. SIRIGNANO:

23      Q.   Ms. Smith, I think before lunch we were

24   talking about the run information on page CG-B 62.

25   And you were explaining at the time about iterations;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4769

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127

 1   correct?

 2        A.   Correct, yes.

 3        Q.   Okay.   And so you had stated that there

 4   were 3.4 million iterations within this STRmix

 5   program when the sample was run; correct?

 6        A.   That's how many iterations were run while

 7   the sample was going through the STRmix process, yes.

 8        Q.   Okay.   And you had talked about MCMC, which

 9   you said was Monte Carlo Markov Chain; correct?

10        A.   Correct.

11        Q.   And in layman's terms, that's the algorithm

12   type that the program runs; yes?

13        A.   Yes, that is one of them.

14        Q.   And it checks the genotype when it runs

15   through the system?

16        A.   So you enter a DNA profile into the

17   software; it then deconvolutes the mixture, which

18   means it separates out the different contributors as

19   part of that MCMC process.   And then, lastly, it will

20   apply a likelihood ratio to that deconvoluted

21   mixture.

22        Q.   And you testified it used models to do

23   that; correct?

24        A.   Correct.   It uses statistical models, in

25   addition to biological models, which include stutter,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4770

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 124771

```
 1    degradation, things of those natures.
 2        Q.   And on page CG-B 065, it shows that there
 3    were 500,000 checks, or guesses, the program, before
 4    it accepts or rejects a hit, so to speak; correct?
 5        A.   500,000 is the amount of the accepts, not
 6    the rejects.
 7        Q.   Accepts.
 8             So the computer program -- if I've got this
 9    correct -- because I'm not a statistician -- it goes
10    through all of the data that came from all the
11    profiles, from the electropherograms, and it does all
12    these checks or guesses before it accepts an actual
13    type; correct?
14        A.   What it's doing is, you enter a profile
15    into the software; the first step is to break that
16    mixture, or that sample up into its different
17    components.  What it does is it looks at what DNA
18    types are present in the sample.  It then uses a
19    logarithm to guess what it thinks the profile should
20    look like based off of the DNA types that are there.
21    And compares that to the observed profile, what I
22    entered.  If it's similar to the observed profile, it
23    will accept that iteration.  If it's not similar at
24    all, that guess is not similar to what the actual
25    profile looks like, it will reject that profile, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4771

1    it will not include that as part of breakdown of the

2    mixture.

3             And so it does this over and over and over

4    again, until it's accepted the profile 500,000 times.

5         Q.   And it stops after 500,000 times; correct?

6         A.   Correct.  And after it stops, it will apply

7    weights to the different deconvolutions, or mixture

8    breakdown, that it observed.  And then, from there,

9    it will apply -- or calculate likelihood ratios, if

10   there are known individuals that are also included in

11   your input.

12        Q.   Okay.

13             So you talked about weight.  So let's go to

14   CG-B 66.  You previously testified there were four

15   contributors to this mixed sample; yes?

16        A.   Correct.

17        Q.   Okay.  So on 66 -- this is contributor 1's

18   profile; correct?

19        A.   That is correct.

20        Q.   Okay.  So in the middle column it says

21   weighting, that's the weighting from the algorithm

22   running and doing the checking?

23        A.   Correct.  That is the percentage of the

24   time it assigned that contributor, each of those

25   different genotypes that are listed there.  And the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4772

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130

1    genotype is just the different profile at that

2    location.

3         Q.   And so on the left-hand column it says

4    "locus"; correct?

5         A.   Correct.

6         Q.   And locus is one of those STR locations,

7    those short tandem repeat locations, for instance, D8

8    S 1179 is the name of one of those locations?  And

9    those locus appear on an electropherogram; correct?

10        A.   Correct.

11        Q.   What's an electropherogram?

12        A.   An electropherogram is a printout of the

13   DNA profile as it comes off the instrument.

14        Q.   Okay.  Can we pull up GC-B 59?  This is an

15   electropherogram; correct?

16        A.   Correct, this is the DNA profile seen on

17   the Phoenix Arms pistol at all of the locations on

18   the screen.  It's just some of the locations.  But

19   for this sample, the 15 locations plus the sex

20   determining region would have been typed.

21        Q.   And you've got nine loci on this

22   electropherogram; correct?  And those are the boxes

23   in orange?

24        A.   On this page, the page -- this profile goes

25   onto additional pages, but on this specific page

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4773

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131

```
 1    there are nine.
 2          Q.    Okay.  And can you pull up 60, please?
 3                And these are the remaining loci?
 4          A.    Yes, that is correct.
 5          Q.    And on page 61, is this your blank or your
 6    control?
 7          A.    No, it is not.  Let me back up just a
 8    little.  It is, in essence, a form of a control, but
 9    it is not what I refer to as a control.  A control is
10    when you analyze a sample through the entire process
11    that we know has no DNA in it.  This is actually an
12    internal lines size standard.  What that means is it
13    is actually is put into the sample, or with every
14    sample, and it helps to estimate what the alleles
15    are, based off their sizes.  So this is a known that
16    we put into every sample so that we can determine
17    what the DNA types are.
18          Q.    Okay.  Let's return to page 59, because
19    we're going to compare page 66 with page 59.
20                So if you could go through this a little
21    bit with me.  The loci in the top left-hand corner is
22    the D8 loci; correct?
23          A.    That is correct, yes.
24          Q.    And moving on to the right, D21, D7, and
25    then CSF; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4774

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132

```
 1          A.   Correct.

 2          Q.   And then going back to page 66, the locus

 3     that I just stated appears on the left-hand column,

 4     those first four, D8, D21, D7, and CSF; correct?

 5          A.   Correct.  They are listed on this page.

 6          Q.   Okay.  So they correspond; correct?

 7          A.   Correct, yes.

 8          Q.   And if you kept going down through page 66

 9     and the subsequent pages, it would go through each --

10     21 different loci; correct?

11          A.   For contributor 1, and then it would repeat

12     itself for all four contributors.

13          Q.   For all four contributors, okay.

14               So I would like to ask, for Contributor 1,

15     on page 66, on the very top it says, Contributor 1,

16     42 percent.  So Contributor 1, STRmix determined 42

17     percent of that sample came from Contributor 1;

18     correct?

19          A.   Approximately, yes.

20          Q.   And then, on page 068, you determined that

21     or STR determined that Contributor 2 was 30 percent

22     of the sample; correct?

23          A.   Yes.  Again, this is an estimation.  But

24     yes.

25          Q.   Yes.  And these are all estimations;
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4775

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133 4776

 1    correct?

 2         A.    Correct.

 3         Q.    And, in your report, you have determined

 4    that Mr. Garcia's DNA is most consistent with

 5    Contributor 2; correct?

 6         A.    That is not listed in my report.

 7         Q.    I'm sorry, in your worksheet -- did you

 8    call it a worksheet?  Let me pull up the document.

 9    Document 62.  Is that correct?

10              THE WITNESS:  Your Honor, may I refer to my

11    original page of this, just so I can see the

12    noncopied version?

13              THE COURT:  Any objection to that, Ms.

14    Sirignano?

15              MS. SIRIGNANO:  No, not at all, Your Honor.

16              THE COURT:  You may do so.

17         A.    Oh.  Yes, I'm sorry, I can determine it

18    here.  Yes.  So STRmix assigned Mr. Garcia to

19    Contributor 2, that is correct.

20         Q.    And you can see that under the summary of

21    contributors, if you go over to the number 2, and you

22    go down to that bottom box, the number 58b(1), that's

23    the item 58, which was the buccal sample from

24    Mr. Garcia; yes?

25         A.    Yes.  The way this works is it puts

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4776

 1   Mr. Garcia wherever it gave the highest likelihood

 2   ratio.  He could be any of those contributors,

 3   potentially.  It just will provide you with the one

 4   that gives the highest likelihood ratio.

 5        Q.   You have no idea if he could be 1, 2, 3, or

 6   4, is that what you're saying?

 7        A.   When you compare him to a profile, you can

 8   see that he cannot visually be excluded.  STRmix runs

 9   the software against Mr. Garcia and the mixture, and

10   it will give you the one that has the highest

11   likelihood ratio.  But that does not mean that it

12   absolutely has to be that contributor.  It could be

13   other contributors.

14        Q.   So STRmix is saying that the most probable

15   genotype is based on the computer guessing and

16   checking the genotype ratios from the different

17   contributors; correct?

18        A.   I wouldn't say it's just guessing.  It's

19   using mathematical modeling and statistical modeling,

20   as well as biological modeling, to generate an

21   expected profile based off of the data we're seeing.

22   And then that compares any contributor -- so

23   Mr. Garcia, in this case -- to all four

24   deconvolutions, all four contributors.  And it

25   provides the likelihood ratio for the one that gives

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4777

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

1    the highest likelihood ratio or the most support,

2    that is correct.

3        Q.   The highest likelihood ratio.

4        A.   And in that case, it was 28 for this case.

5        Q.   28 percent.

6        A.   Not 28 percent.  The likelihood ratio was

7    28.

8        Q.   Right, so I'm trying to get from where we

9    are now to 28, so if you could just work with me

10   here.  I'm trying to understand this whole system,

11   this whole process here.

12            Now, we're going to look at contributor 2,

13   which STRmix determined was approximately 30 percent

14   of the sample, the total sample, right?

15       A.   Yes, that's correct.

16       Q.   Okay.  And again, this has the locus, the

17   combinations, D8, D21, D7, CSF, like we discussed

18   earlier; correct?

19       A.   Correct, yes.

20       Q.   And so on page B81, that's Mr. Garcia's

21   profile, correct, from STRmix?

22       A.   That was the profile that I entered into

23   STRmix, yes.

24       Q.   So at the D8 locus, his allele combination

25   is -- excuse me, his genotype combination is 13, 15;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4778

136

1   correct?

2        A.   Correct.

3        Q.   Tell us what that means.

4        A.   It means that at the D8 location,

5   Mr. Garcia received a 13 from either his mother or

6   his father and a 15 from the other parent, making his

7   DNA type at that location a 13, 15, which means he

8   has 13 repeats, and 15 repeats of the STR locus.

9        Q.   And so each locus going down the left-hand

10  column here, that 21 locus from the kit that you were

11  running, it has -- corresponds with a genotype on the

12  right; correct?

13       A.   Yes, that is correct.

14       Q.   And those are the numbers that the program

15  uses to identify Mr. Garcia's DNA, the numbers in the

16  genotype; correct?

17       A.   This is the last step of the process, so I

18  will input Mr. Garcia's profile into STRmix after the

19  deconvolution is already done.  So it doesn't utilize

20  Mr. Garcia's profile until the entire mixture

21  deconvolution is done.  It will then compare him to

22  the four contributors to see if there is a match, in

23  essence.  And if there is, it will provide a

24  likelihood ratio.

25       Q.   Okay.  So let's do that.  Let's go back to

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 137

1  page 68 -- actually, I'm sorry, on the bottom of 68,

2  I believe there was a 69, and at the 13, 15 genotype,

3  which we just established that was Mr. Garcia's

4  genotype, the weighting was 12.544 percent; correct?

5       A.   Yes.  It would be on the next page, not the

6  page that's on the screen.

7       Q.   Okay.  And so I don't want to belabor the

8  issue, but if we compare page 81, and then the locus

9  on page 69 -- could you go back to the entire page

10  69 -- Mr. Garcia's profile would be found -- or

11  wouldn't be found in this contributor 2 profile;

12  correct?

13       A.   I'm not sure I understand the question.

14  Could you repeat it?

15       Q.   I'm sorry, that was a bad question.

16            So looking at page 81, each locus has a

17  corresponding genotype for Mr. Garcia; correct?

18       A.   That is correct, yes.

19       Q.   So, if we compare page 81, which is on the

20  right-hand side of the screen, with the contributor 2

21  profile coming from page 69, on the left-hand side of

22  the screen, we could do what the STRmix program does,

23  and find each genotype for Mr. Garcia, if it's

24  present in the contributor 2 profile; yes?

25       A.   Yes, that is correct.  However, I will

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

1   state that you don't -- depending on the profile, and

2   in this case it was a low-level mixture -- there are

3   some locations where you may not see Mr. Garcia's

4   types.  You may see a QQ, which means that STRmix

5   estimated that drop-out could have occurred at that

6   location.  So you will not necessarily see his

7   alleles at every single location.

8        Q.   And so you find that in the D3 locus, as

9   well as the D2S locus, and the TPOX locus; correct?

10       A.   No.  D3, his DNA is included in that

11  deconvolution.  CSF, I am not seeing his location, or

12  his DNA.  So that would be an instance where the QQ

13  under this contributor number would have been applied

14  to Mr. Garcia.

15       Q.   And, I'm sorry, you're right.  I misspoke.

16  D3 is there.  CSF is not there, as well as D2 on the

17  next page, and TPOX; correct?

18       A.   I want to go through each one specifically

19  to feel comfortable agreeing to that.  But it would

20  not surprise me based on the level of this profile.

21       Q.   And you said the level of this profile is

22  low; correct?

23       A.   That's correct.  And that's consistent with

24  the likelihood ratio that was calculated as well.

25       Q.   So just looking at the first locus, D8, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4781

```
 1    program is saying that 12.54 percent at the 13, 15
 2    genotype is Mr. Garcia's.  And so 74.76 is not
 3    Mr. Garcia's; correct?
 4         A.   Again, it's not in relation to Mr. Garcia.
 5    What the profile is doing is it's saying 12.54
 6    percent of the time it saw that contributor and its
 7    deconvolution have a 13, 15.  Mr. Garcia happens to
 8    have a 13, 15, so that weighting would be applied to
 9    his likelihood ratio.  But, yes, you're correct, the
10    other percentage of the time, 80-something percent of
11    the time it was not consistent with what Mr. Garcia
12    had, that is correct.
13         Q.   74.76 percent; yes?
14         A.   Possibly.  I'd have to get a calculator.
15         Q.   Very good.  I'll let you know my math is
16    good.
17         A.   I think it actually would be a little
18    higher.  Because if it's only 12.4, I think it would
19    be more in the 80s.
20         Q.   Okay.  I'll take your word for it.
21              So looking at all of these locus, D2,
22    Mr. Garcia's weighted was 9.8 percent; at D7, it was
23    26.03 percent; at CSF, you said that there was the
24    QQ, the drop-out; at D3, the weighting was 9.9947
25    percent.  This is Document 69.  At TH01 the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4782

```
1    percentage was 4.9476 percent.  And at D13, it was
2    4.48 percent.
3          I'm on page 70 now.  At the locus D16, it
4    was 13.70 percent.  At D2, there was drop-out.  At
5    D19, it was 8.24 percent.  And I won't go through the
6    last five locus.  But all very, very low percentages;
7    correct?
8          A.   That is correct, yes.
9          Q.   So that's consistent with the low
10   likelihood ratio; correct?
11         A.   Yes.  So, typically, when you have a
12   mixture like this where there is a lot of
13   possibilities for the contributors -- and I can tell
14   that just based on looking at the mixture -- it's a
15   low level, four-person mixture, there is a lot of
16   possibilities of who could have contributed to this
17   mixture.  And that's reflected on the likelihood
18   ratio that I got.  The likelihood ratio typically
19   will range from less than 1.  But when it is a
20   positive possible association, or more support that a
21   person is included, it will range from 2 up to over
22   700 billion.  So it is a large range.  And in this
23   case, the likelihood ratio was 28, which is on the
24   lower end of the spectrum, yes.
25         Q.   Very low end of the spectrum?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4783

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 144784

1          A.    Correct, I would agree.

2          Q.    When 700 billion is that high, correct, the

3     highest?

4          A.    That's correct.  And that's why we provide

5     the number.  But we also provide a level of support,

6     and we actually list that in our report, so that you

7     can see what the different groupings are that the FBI

8     Lab reports, to not confuse anybody.

9          Q.    Okay.  So let's talk about your report at

10    B003.  I'm just going to talk about item one right

11    now.  Is this your report?

12         A.    Yes, that is my second report, that is

13    correct.

14         Q.    I think the Government introduced this as

15    number 2.  And it's dated June 27, 2017?

16         A.    Yes, that's correct.

17         Q.    This was after you got Mr. Garcia's buccal

18    sample?

19         A.    Yes, that's correct.

20         Q.    And in your report you stated, "Male and

21    female DNA was obtained from item 3," which is the

22    gun; correct?

23         A.    Yes, that is correct.

24         Q.    And so how did you draw this conclusion?

25         A.    This conclusion was drawn by looking at the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4784

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 142785

```
 1    sex determining region.  It's called amelogenin.  If

 2    you are a female, you'll be an XX at that location.

 3    If you're a male, you will automatically be an XY.

 4    So, if you have only male DNA, you expect the X and Y

 5    peaks to be of the same or similar heights.  If you

 6    have a mixture of both male and female, you expect

 7    there to be slight discrepancies.  So the FBI's

 8    policy based off our validation, is that if the ratio

 9    is less than 60 percent between X and Y, we'll say

10    that it's a mixture of both male and female.

11         Q.    Less than 60 percent?

12         A.    Yes.

13         Q.    And that would be in your policies;

14    correct?

15         A.    That would be mentioned in the policies,

16    yes.

17         Q.    I didn't know that.

18              So let's go to B-060.  And this is another

19    electropherogram; correct?

20         A.    That is the same item, item 3.  That's the

21    one we previously looked at.

22         Q.    Well, we looked at the D8 locus initially

23    on page 59, and now we're on page 60, which starts

24    with the D19 locus; correct?

25         A.    Correct.  It is the same profile; it's just
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4785

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

 1    the second page of the profile.  That's correct.

 2        Q.   Thank you.  So at the bottom of the page,

 3    on the left-hand side, there is a green bar, and you

 4    stated that this was amelogenin locus?

 5        A.   Amelogenin, yes.

 6        Q.   Okay.  So this, you stated, discusses the

 7    proportions of the X and Y chromosomes; yes?

 8        A.   Correct.  In here, you can see that the X

 9    and Y are very similar, so the majority of this

10    profile mostly contains male DNA; however, based off

11    the ratio, it was less than 60 percent, so therefore,

12    I called it a mixture of both male and female.

13        Q.   Okay.  So let's do the work behind this

14    data here.  So the X box refers to what?

15        A.   The X box is the X allele or the X DNA

16    type, and that's found in both men and women.

17    Females have two copies of it.  They receive one from

18    mom, one from dad.  Males always will receive a Y

19    from their dad; so the X comes from the mother, so

20    they have one X one Y.  So those are just the DNA

21    types that are possible at the amelogenin locus.

22        Q.   So at 855, which is in the X box, RFU, or

23    relative fluorescent units, there was 106.26;

24    correct?

25        A.   That is not correct.  So 106.26 is the size

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4786

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14787

```
 1    of that allele.  855 is how much of it was present.

 2    So that's the RFU value.  So 106.26 and 855 are

 3    really unrelated with one another.  They're just both

 4    aspects of that X allele.

 5         Q.   Of the X allele.  Okay, thank you.

 6              And then, in the Y, there was 495 RFU

 7    present; correct?

 8         A.   That is correct.

 9         Q.   So we're talking about the DNA molecules in

10    this particular allele; correct?

11         A.   That does not reflect how many DNA, or how

12    much DNA necessarily was present.  It's not

13    correlated specifically to how many molecules are

14    there.  What it's doing is, the more DNA you have in

15    the system, the more fluorescence that DNA gives off

16    when it runs through the instrument.  And the reason

17    why it does that is that all the DNA is labeled with

18    fluorescent tags, so that when it passes the camera,

19    it will pick up on how much DNA is present.  So the

20    more DNA present, the higher those numbers are.  But

21    it does not correspond to exactly how many molecules

22    are present.

23         Q.   Thank you for clarifying that.

24              So based on this XY combination, and that

25    the Y at 495 RFUs is shorter than 60 percent, that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4787

1    an indication that both men and women contributed to

2    the sample?

3         A.   Yes.  It appears based off of the ratio

4    that there is mostly male DNA there; however, it does

5    appear that the X is slightly higher.  And if it is

6    less than 60 percent, then we would state in our

7    report that it's a mixture of both male and female,

8    have at some point come in contact with that item.

9         Q.   Do you know what the percentage is?

10         A.   I don't recall off the top of my head

11    without a calculator.  I believe it was in the 50s,

12    but I can't recall exactly.

13         Q.   Okay.  So let's go to CG-A 113.  And this

14    was part of the -- your notes for items 3 and 4;

15    correct?

16         A.   Yes, that's correct.

17         Q.   And we know that to be true based on the

18    left-hand side of the page, the column that says

19    exhibit number?

20         A.   That is correct, yes.

21         Q.   And the quantification test that you do

22    determines if there is enough DNA for the actual

23    process; yes?

24         A.   It allows us to see how much DNA is

25    estimated to be in that sample.  Because we do want

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 146

```
 1    to target a specific amount of DNA.  We want to

 2    target approximately one nanogram of DNA to get the

 3    best results.  And with low level samples like these,

 4    we were not able to target that full amount.

 5         Q.   So you did not have one nanogram of DNA in

 6    either one of these samples; correct?

 7         A.   That is correct.  We did not have a total

 8    of one nanogram when we did our processing.  We know

 9    that we can process lower than that.  It's just based

10    off our validation, we aim for one nanogram because

11    then we know we're going to see the most information

12    based off the validation.

13         Q.   So you did two tests here, the duo human

14    test and the duo male test; yes?

15         A.   It is one test, but it looks at both the

16    amount of human DNA and also male.  The reason why we

17    do this is because on some cases this will allow us

18    to determine if we should use a different STR typing

19    kit that looks at male DNA only.

20         Q.   And looking at Exhibit 3, the human DNA

21    that was detected, the quantities, and nanogram per

22    microliter was 0.0448; correct?

23         A.   Not percent.

24         Q.   Excuse me.  Go ahead.

25         A.   It's 0.0448 nanograms per microliter.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And then for a male, it was 0.0432

 2   nanograms per microliter; yes?

 3        A.   Yes.  But these, again, are estimations but

 4   yet it is.

 5        Q.   Yes.  So they're all approximations in your

 6   whole report or your bench notes and your summary

 7   sheet; correct?

 8        A.   It is an estimation based off of how the

 9   PCR process works, yes.

10        Q.   So, in terms of percentages, the PCR

11   process found approximately 4 percent female DNA and

12   96 percent male DNA; yes, based on the quantities of

13   nanograms per microliter?

14        A.   I would have to get a calculator to

15   determine that.  But, again, these are estimates, so

16   I wouldn't say that that's an exact representation.

17        Q.   Well, I'm just doing the math:  0.0448 to

18   turn it into a percentage.  And does that sound

19   unusual that only 4 percent would be female DNA?

20        A.   Not necessarily, no.  Like I said, looking

21   at the profile, the majority of it does appear to be

22   male, the X and the Y chromosome proportions were

23   very similar.  So, no, that wouldn't necessarily

24   surprise me.

25             I just don't want to agree on specific
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4790

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 148

1    numbers without a calculator present.

2         Q.   Fair enough.

3              So turning back to the electropherogram on

4    B60.  How do you reconcile this electropherogram with

5    the quantitative notes that we just looked at?

6         A.   It's very common with low-level samples

7    like this, because it is low amount of DNA.  The

8    process is not exact, it is an estimation.  So you

9    can have slight differences between what you're

10   seeing at amelogenin, and what you're seeing in your

11   quantification notes.  So I'm not surprised to see

12   that.

13        Q.   The differences?

14        A.   Yes.  So the quantification notes looked

15   more similar in the amount of human and male.  But

16   again, at low-level samples it is extremely important

17   to remember that it is an estimation.  Same thing

18   with the amplification here.  This is a four-person

19   low-level mixture.  So, again, you're going to see an

20   estimation of what is in that sample.

21        Q.   So how do you calculate the degree of

22   imbalance on this electropherogram in terms of women

23   or men at this locus?

24        A.   I can't without knowing exactly who is in

25   the sample.  It could be one female to three males,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  potentially.  It could be very little DNA.  It could
2  be individuals that have slight mutations at their
3  amelogenin types, make their Y chromosomes slightly
4  shorter.  So it could be four males.  There is
5  possibilities that I can't speak to specifically
6  without knowing exactly what the makeup of the sample
7  is.  And we never can tell that makeup.
8      Q.    Never know; correct?
9      A.    That's correct.  We don't know how this DNA
10  or when it got deposited on this item.
11      Q.    So you drew the conclusion that male and
12  female DNA was obtained from item 3, but you have no
13  idea.  It could have been four females; correct?
14      A.    No, I would not expect that, no.
15      Q.    But you just said that it could be more
16  than one woman; correct?
17      A.    It's possible.  What it looks like is it
18  looks like mostly male DNA, with some slight
19  contribution from a female.  I can't say for certain
20  what that makeup is, because I do not know whose DNA
21  is on this item.  So I cannot say for certain.
22      Q.    But the total of the XY contribution, it
23  could be more than 4 percent from the qualitative
24  results that you received during the actual process
25  of processing the DNA; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1        A.    Yes, that is correct.  And that's again

 2   because they are low-level samples.  We know that --

 3   the reason we target one nanogram from each

 4   individual is because you know you're going to see a

 5   complete picture of DNA.  With less than one

 6   nanogram, we know that we're not getting all of the

 7   information.  So you're going to see slight

 8   discrepancies between the quantification and the

 9   profile, because, again, these are estimates.

10        Q.    And that would be in your SOPs, right, that

11   you require -- or you prefer, at least, one nanogram

12   of DNA to run through the PCR process, yes?

13        A.    That would mostly be in our amplification

14   procedure, yes.

15        Q.    But you had significantly less with this

16   sample; correct?

17        A.    I would say we had quite a bit less, yes.

18        Q.    Okay.  Let's go to CG-B.  65, please.

19             Now, we already talked about the parameters

20   and how the FBI has set, and based on their

21   validation they've locked in a zero value for their

22   drop-in cap, drop-in frequency, and drop-in

23   parameters; yes?

24        A.    Yes, that is correct.

25        Q.    Now, if you do have drop-in or drop-out,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                                                         e-mail: info@litsupport.com

DNM 4793



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

```
 1   how do you know?

 2        A.   I would not expect to have drop-in because

 3   we did not see it in our validation.  And we ran

 4   thousands upon thousands of samples through our

 5   validation.

 6        Q.   But it naturally occurs; yes?

 7        A.   There is DNA in the environment, that is

 8   true.  However, through the amplification process,

 9   how you amplify your samples, how many cycles you

10   use, things like that, that is when you're going to

11   see drop-in.  Each lab is different.  They may have

12   more sensitive instruments than others.  So,

13   therefore, our validation was done to ensure we saw

14   no drop-in.  And we did not in our samples.  We made

15   sure to set our thresholds above that drop-in value.

16   And that would be through our validation.

17        Q.   And contamination would be part of that;

18   correct?

19        A.   The drop-in and contamination are two

20   separate incidents.  Contamination is when a

21   biologist may show up on an item, or if two items are

22   touching one another, then they could show up on an

23   item.  But in this case each item was processed

24   separately.  And, again, I did not see any instances

25   of contamination.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4794

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 4795

1    Q.   But it occurs -- maybe not in this sample,

2    but it occurs generally in all kinds of laboratories;

3    true?

4    A.   I would say it can happen.  It's not a

5    common occurrence.  There is quality measures in

6    place to prevent it.  And then, if contamination is

7    identified, the samples are reprocessed.

8    Q.   I just am having difficulty understanding,

9    with zero parameters, how you can really reconcile

10   drop-in or contamination.  And I understand that

11   you're saying that it was validated.  But it happens.

12   And so with a zero parameter, you've got no leeway

13   for any of these natural events to happen; yes?

14   A.   Correct.  What it does is it will -- STRmix

15   will not model drop-in.  And the reason it's not

16   modeling it, is because we did a very extensive

17   validation, which is also published in peer review

18   articles that discusses what we did in our

19   validation.  And it was determined that we saw no

20   drop-in at the parameters we were using.  So,

21   therefore, we do not expect to see it.  And even if

22   it did occur in this case, which there is no evidence

23   of, and I would not expect, it wouldn't have a real

24   effect, because of the fact that it is a four-person

25   low-level mixture.  To see one additional peak show

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 153796

1    up would not exclude anybody specifically.

2        Q.   Okay.  So I just want to talk a little bit

3    about this validation.  The peer review articles that

4    you referred to in your internal validations on

5    STRmix were done on Version 2.3; yes?

6        A.   Yes, it was done on the original version, a

7    paper was written on the original 2.3.  But, however,

8    every time we up to a new version, we do another

9    validation of that software.  But the peer review

10   article is not specifically to each version.

11       Q.   Correct.  So the version that y'all used,

12   or that you used on this sample was the new version

13   2.4.05; correct?

14       A.   Yes.  And it's just -- there is some

15   modifications to this newer version, allows us to

16   accommodate GlobalFiler, which is the newer kit.

17   However, again, a full validation was done.  But the

18   background information of how the validation was

19   accomplished is in the peer review paper.  They are

20   very similar.

21       Q.   But they are also different, because it's a

22   different version; yes?

23       A.   Slight differences.  It's kind of like when

24   you have Windows 8 goes to Windows 9.  There are

25   differences, but the main format is the same.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4796

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154 of 797

1      Q.   We're looking at B 062, up on the left-hand

2   corner, it says which version you used; correct?

3      A.   That is correct, yes.

4      Q.   Version 2.4.05.  So there is no peer review

5   articles or no published papers regarding this

6   version?

7      A.   We don't have a peer review publication for

8   this specific version.  However, the validation is on

9   STRmix, in general, and the use of STRmix.  The

10   things that have changed were revalidated, and those

11   are going to be reviewed by peers during audits and

12   accreditation.

13      Q.   What's been changed?

14      A.   For instance, the layout is changed

15   slightly.  So the calculations are similar, but the

16   layout of the report is more user friendly.  There

17   are slight modification this allows us now -- we

18   validate at 2.4.05, for using GlobalFiler, which is

19   an updated kit.

20           So we did a very extensive validation on

21   this version.  However, we could not publish it

22   because we have already put a publication out, and

23   most publications don't want same publication

24   multiple times.

25      Q.   And the validation summary, is that part of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4797

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

```
 1    the documents that I was given, the SOPs and the
 2    manuals and the protocols, or not?
 3         A.   No.
 4         Q.   Are these validation studies public?
 5         A.   The validation report is public.  The
 6    STRmix validation is on many, many, many CDs.  So it
 7    does exist, but we typically do not provide that on
 8    discovery.
 9         Q.   Is that something that we could get, when
10    you get back to your office and provide it?
11         A.   That would have to go through our legal
12    department.  We don't typically provide that, no.
13         Q.   Well, I'll ask your legal department then.
14         A.   I will say that the validation paper is
15    public, which you can access.
16         Q.   But it's of a different version; correct?
17         A.   Correct.  But the validation is the same
18    between the two.
19         Q.   But the versions are different; correct?
20         A.   That is correct, yes.
21         Q.   Okay.  So let's look at CG-A 140.  This is
22    a different electropherogram from what we've been
23    looking at; yes?
24         A.   Yes, this is a positive control.
25         Q.   Positive control.  And this is a single
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4798

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 156

```
 1    source profile; yes?

 2         A.   That is correct.

 3         Q.   And looking at the bottom right-hand corner

 4    of the D18 locus there is a peak there, an allele

 5    peak, and underneath it there is a box that says

 6    "Spike, 279.75," and then 54, that's RFUs; correct?

 7         A.   That's correct.

 8         Q.   That's the height of the peak, the 54 RFUs?

 9         A.   Yes, that's correct.

10         Q.   Okay.  So what's the FBI threshold for peak

11    height in all electropherograms?

12         A.   Fifty.

13         Q.   Fifty.  And --

14         A.   At this time.  Excuse me.  It has changed.

15         Q.   It has changed?

16         A.   With the GlobalFiler, we now have a

17    different threshold.  But with Identifiler, the

18    Identifiler threshold is 50.

19         Q.   So in this electropherogram, which was done

20    at the same time that items 3 and 4 were done, the

21    threshold was 50 RFUs?

22         A.   That is correct, yes.

23         Q.   And what is it for GlobalFiler now?

24         A.   The threshold is 150.  And then the

25    drop-out threshold is 725.  And that's because we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4799

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157

1    using different instruments that are more sensitive,

2    and they actually -- the numbers are much higher in

3    those instruments.

4         Q.   And that would be probably another change

5    in the version of the software that you're using

6    based on this GlobalFiler kit that you're using?

7         A.   The software itself is the same.  The kits

8    we're running is more about allele frequencies.  So

9    how common the different types are seen at the

10   different locations.  And there are some changes made

11   to the software to accommodate the different kits,

12   that is correct.

13        Q.   Because there would be more locations that

14   you're looking at from 15 to 21 loci; correct?

15        A.   Correct.  But that again, is not the STRmix

16   itself.  The validation has to be done on the kit

17   itself, so that we can enter those values into

18   STRmix.  So, for instance, you're going to see

19   slightly different stutter ratios between the

20   GlobalFiler and the Identifiler, just due to how the

21   kits behave.

22             For this case it's really only relevant

23   with Identifiler, because the known reference sample

24   is the only sample that was run with GlobalFiler.

25   And that was not deconvoluted using STRmix.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4800

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4801

1      Q.   Let's just go a little slower because

2   Ms. Bean's hands aren't keeping up with us.

3            So the different thresholds for the peak

4   heights, for the stutter ratios, for the drop-out

5   thresholds, those are all in the white binder that I

6   just received after lunch; correct?

7      A.   No, those would be based off our

8   validation.  Those binders are specifically our

9   protocols on how to interpret data, how to run the

10  date through collection, extraction.  And those are

11  not procedures.  Those are thresholds that we enter

12  into STRmix through validation.

13     Q.   And you just said that the validation

14  studies or reports are only public for the newer

15  version -- or the older version; correct?

16     A.   The older version which would have those

17  same ratios.  The old version that's published is

18  based off of Identifiler, which is relevant to this

19  case.  So although the version number changes, the

20  stutter ratios, the variances, all of that would be

21  the same as validation, which is published.

22     Q.   So I'm assuming, based on all this data,

23  that the FBI continues to change and upgrade their

24  kits and the software, and the DNA process using

25  STRmix; correct?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4801

1        A.   The STR process is the same.  We look at

2    different kits when necessary.  We want to maintain

3    the kit that we have.  So we have GlobalFiler now.

4    We're going to continue using GlobalFiler, and until

5    a new kit comes out that the FBI deems is worthy of

6    validating.

7            It really depends on the scenario.  We do

8    stay up to date.  With the STRmix software there are

9    new versions all the time.  It depends on what those

10   changes are, whether or not we will do a new

11   validation on the new software.  We just won't

12   implement those version changes if they're irrelevant

13   to our analysis.

14       Q.   And so how does the FBI reconcile a

15   previous version with a better version and the

16   results from a previous version?  It would seem

17   inconsistent to me, that work that was done

18   previously on an older version is not as accurate as

19   the newer version?

20       A.   I disagree with that completely.  The two

21   versions would be -- before we switch to a new

22   version, we'd actually do a side-by-side comparison

23   to ensure we're getting the same results using both

24   versions.  So you're not going to get a different

25   answer with the newer version.  The newer version

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 4802

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 164 4803

 1    just has more features.  It allows us to use

 2    GlobalFiler.  That's not because of the STRmix

 3    software.  That's because we validated GlobalFiler

 4    using the newer version.  The software always could

 5    handle it.  We just hadn't validated it yet.

 6         Q.   So what I'm hearing is that this is all

 7    done within the FBI, and all validated by the FBI.

 8    Has any outside entity or any peer review article

 9    been done or any study been done between the older

10    versions and the newer versions that would make it

11    generally accepted in the scientific community?

12         A.   STRmix, in general, has already been

13    accepted in Daubert challenges for -- at the state

14    level.  There are many, many papers out about STRmix.

15    And they may discuss the different versions.  I don't

16    know specifically of a paper that talks about the

17    comparison between the two.  I'm sure ESR, which is

18    the developer of it, has a paper out there.  They

19    have hundreds of papers out there on all their

20    different mathematical models for their testing.  So

21    I'm pretty sure there probably is.  But I just don't

22    know it off the top of my head.

23         Q.   Okay.  But you didn't really answer my

24    question.  Do you know if there is a paper or

25    something that's been peer reviewed, generally

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 161

```
 1    accepted in the scientific community, that has done a
 2    comparison, other than the FBI's validation, between
 3    these two versions of STRmix?
 4         A.   Again, STRmix itself is --
 5         Q.   I'm sorry.  I'd like to ask you to answer
 6    the question, please.
 7         A.   I don't know the specific paper that
 8    compares the two.  However, STRmix has been
 9    extensively peer reviewed.
10         Q.   The previous version, not the one that
11    we're talking about?
12         A.   Again, I disagree with that, because STRmix
13    itself has been developmentally validated, but would
14    use multiple version.  They run tests before they use
15    multiple versions.  They run tests before they
16    release the versions.  And before a lab can utilize
17    them, they have to go through a validation process.
18    So there may not be a paper that specifically
19    addresses the different versions.  But STRmix, in
20    general, has gone through this extensive peer review
21    publication.  The versions are minor changes between
22    the different ones.  Again, just the same as
23    Microsoft Office 8 will be slightly different than
24    Microsoft Office 9, but the backbone is still the
25    same.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4804

1    Q.   Let's talk about Microsoft 7 versus 10.

2    They're extremely different; correct?

3    A.   It's possible.  Again, I can't speak to the

4    specific changes that ESR made.  I can tell you that

5    our validation did those studies and showed them to

6    be providing the exact same results.  So, therefore,

7    I'm completely confident using different versions of

8    the software.

9    Q.   But you can't say with any certainty that

10   this new version, other than the FBI's own study, has

11   been generally accepted in the community; correct?

12   I'm not talking about the program, I'm talking about

13   the version.

14   A.   Well, ESR has been using it for forensic

15   casework since the beginning.  So I do know that

16   there are other labs that are doing this, yes.

17   Q.   ESR, meaning proprietary software

18   developer; yes?

19   A.   They are the developer, but they're also a

20   forensic laboratory that does caseworking analysis.

21   So they have been using it in Australia and also New

22   Zealand.  And again, there are 30 or so, at least,

23   different labs in the country using it.  So they

24   would also have to validate each software.  They may

25   not be published about the differences between those



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4805

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163 4806

1   two specifically; however, again, every lab that uses

2   the different softwares must validate them prior to

3   their use.  So it's not just the FBI.

4        Q.   Okay.  Thank you.

5             Let's go back to CG-A 140.  I'm sorry, I

6   went off on a little tangent there.

7             And we were talking about the D18 locus

8   there and the box with the 54 RFU peak, which you

9   said was above the 50 RFU threshold.  And there has

10  been a red line, diagonal red line, put through this

11  box; correct?

12       A.   That is correct, because it is not a DNA

13  peak.  That's why it was crossed out.

14       Q.   Well, what is it?

15       A.   It's a spike which is an artifact.  It's

16  pull-up from the camera.  The camera cannot visualize

17  that separation well.  So it's labeled as a spike by

18  the software, and it is excluded, and I reviewed it,

19  agreed, and then my technical reviewer also agreed.

20       Q.   And you put the line manually through this

21  spike; correct?

22       A.   I did.  However, the software labeled it as

23  a spike.

24       Q.   Well, you don't really know if that's a

25  real DNA molecule or not, or a real peak for a real



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4806

1    DNA molecule or not, do you?

2         A.   I do based off my training and experience.

3    I can visualize the differences.  They have a

4    different morphology, meaning spikes are generally

5    thinner.  They typically fall right below a peak in

6    another color, which in this case it did.  This is a

7    known artifact.

8         Q.   And contamination could be a spike, too;

9    correct?

10        A.   Contamination would not be a spike, no.  It

11   would be a peak that falls within a bin that is

12   labeled as an allele.  And this is not what this is.

13        Q.   And let's go to CG-A 201.  This is another

14   electropherogram; correct?

15        A.   Yes, that is correct.

16        Q.   And it came from item 22; yes?  At the top

17   on the left-hand corner?

18        A.   Yes.  And item 22 is a swab from a stain at

19   04 Aaron Court.  It's a different submission.

20        Q.   And just for example, by way of example,

21   looking down at the D19 locus on the bottom left-hand

22   corner of the electropherogram, the 17 allele has

23   also been stricken at 56 RFUs; correct?

24        A.   That is correct.  And on the next page of

25   my electropherogram there is a zoom-in of that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4807

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4808

1    location.  And it does not have the correct

2    morphology of a peak.  So, therefore, it was struck

3    through.

4         Q.   What do you mean by doesn't have the

5    correct morphology of a peak?

6         A.   As you can see, the peaks in this diagram

7    are thin, tall peaks.  The 17, if you zoomed in on

8    that, which I do have a zoom of, that was provided in

9    my case file, it's a flat, wide peak.  So it's

10   consistent again with bleed-through, which is another

11   artifact in the process.

12        Q.   What's bleed-through?

13        A.   Bleed-through, again, is when the camera

14   cannot distinguish the colors.  It's kind of similar

15   to when a child slightly colors outside lines.  It's

16   not really picking up just in that one color channel.

17        Q.   What else could that be other than

18   bleed-through?

19        A.   I don't think it's anything else besides

20   bleed-through, based off of the zoom-in off the peak,

21   which you cannot see in this electropherogram

22   printout.

23        Q.   Let's go to B 59, please.

24             Okay.  And we're back to item 3, this

25   electropherogram.  And at the D21 locus, you kept the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4808

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4809

1   59 RFU peak; correct?

2        A.    I'm sorry.  Can you repeat which locus, so

3   I can see specifically what you're referring to.

4        Q.    Oh, sure.  D21.

5        A.    Yes, I did.

6        Q.    Okay.  So how do you reconcile that this

7   was at 59 RFUs, and the two samples we saw before

8   were in that 50 to 60 range, and you kept this peak?

9        A.    Again, it's comparing apples to oranges.

10  The 32.2 here looks like a peak.  It has the correct

11  shape.  It has the correct morphology.  It's falling

12  into a bin and being called by the software.  The

13  other two peaks that you showed previously, although

14  they are above 50, they do not have the correct shape

15  or morphology, so therefore, they were crossed out.

16  That is part of my job as a forensic examiner to

17  interpret every allele that I'm seeing to determine

18  if whether it is a true peak or a potential artifact

19  prior to running it through any software.

20       Q.    And would your standards for interpretation

21  be in this binder of policies and procedures, or is

22  this something you learned elsewhere?

23       A.    The basic information will be in the

24  policies.  It will mostly just state what a spike is,

25  what bleed-through potentially is, what stutter is.

---

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4809

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167

4810

1    It will not go into detail.  That mostly was during

2    my training.

3         Q.   But you'd agree that a 50 to 60 RFU range

4    in a low sample, low-level sample, is difficult to

5    assess if there are DNA molecules or not; correct?

6         A.   Again, I don't agree that.  The validation

7    that was done on Identifiler showed that anything

8    above 50 would be considered a true peak, versus

9    background noise, unless it has the incorrect

10   morphology, which those are easily distinguished.  So

11   a spike is easy to tell that it is not a real DNA

12   type based off of the shape of the peak.  Also

13   bleed-through is the same way; it's easy to

14   distinguish, versus a real peak.

15        Q.   So you're calling it a spike morphology and

16   the artifact morphology -- the morphology for an

17   artifact or a spike is different than an actual

18   allele; correct?

19        A.   Correct, yes.

20        Q.   And so how do you determine if there is

21   drop-in or contamination in these peaks?

22        A.   Contamination if there is a profile that I

23   can compare to my staff -- we have a staff database

24   that I will compare certain profiles to.  I will be

25   able to see it in blanks.  We run negative controls

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4810

1    and blank samples through the process.  A blank has

2    no DNA in the sample.  So when I run that through the

3    process, if I see any DNA in that sample, or in the

4    negative control, I know that I have contamination.

5    And that did not occur in this case.

6         Q.   Okay.  Let's turn to number of contributors

7    to a mixture.  And you said that there were four in

8    your report at CG-B 003; yes?

9         A.   Yes.

10        Q.   And you said the interpretation of item 3

11   was performed assuming that the DNA originated from

12   four individuals; correct?

13        A.   Yes, that's correct.

14        Q.   And that's four and only four; yes?

15        A.   My interpretation was a four.  We never

16   know exactly how much people are on a sample.

17   However, through my training and experience, I

18   determined it was four individuals.

19        Q.   So four and only four?

20        A.   My interpretation was run at four.  I do

21   not know specifically.  There could be more -- or

22   there would not be less -- there could be more, but

23   however, based on what I saw, I interpreted that that

24   is four.

25        Q.   It could be three or more; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4811

1     A.   Again, I'd have to look at the profile.  I
2   saw no evidence of three.  I saw four individuals
3   during my interpretation.
4     Q.   And you used the maximum allele count to
5   come to that determination?
6     A.   One of those -- that's one method.  I also
7   used peak heights between different alleles.  So, for
8   instance, if the two peaks are present, and they came
9   from one person, they should be of similar heights.
10  If there is a big discrepancy between them, I know
11  that that has to be two people, so I would use that
12  information in addition to the maximum allele count,
13  which is just counting up the number of alleles I see
14  and dividing it by two.
15    Q.   Let's do that.  At CG-B 59, and at locus
16  D13 there are seven alleles present there; correct?
17    A.   Yes, that is correct.  So it has to be at
18  least four individuals.  And based off the peak
19  heights and the rest of the profile, I determined it
20  was four.
21    Q.   And did you use this locus D13, these peak
22  heights to make that determination?
23    A.   That was one of them, yes.
24    Q.   And which other ones did you use?
25    A.   I would use the whole profile.  I look at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4812

1    the entire profile.  I'll look at each location.  D13

2    had seven alleles, so I knew it had to be four.  If

3    there was more than four, I would say it's five

4    individuals.  However, in this case, that's not what

5    I saw.

6          Q.   But it could be three or more, yes?

7          A.   Based off of D13, I do not believe it could

8    be three or more.

9          Q.   Okay.  So what you said earlier was any

10   human can contribute up to two alleles; correct?

11         A.   Correct.

12         Q.   So if you have seven alleles divided by

13   two, it's 3.5; correct?

14         A.   Correct.  So that has to be four people,

15   because you can't have half an allele.

16         Q.   So, technically, your conclusion should be

17   at least four; correct?

18         A.   No.  So STRmix, you must determine the

19   number of contributors.  So when I look at the

20   profile as a whole, I will estimate the number of

21   contributors, which in this case I did four.  I then

22   run it through the software at four.  I will look to

23   see the output, if there are any issues with that

24   deconvolution.  In this case, I did not see any.

25   Therefore, I reported it as four, based off my

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 4813

```
 1    training and experience.
 2         Q.   Correct.  But just to be clear, STRmix, if
 3    you put in four, it's going to generate data for four
 4    individuals; yes?
 5         A.   It will, yes.  But if it doesn't agree with
 6    that, sometimes you will see red flags when you're
 7    reviewing the output.  You'll see issues with the
 8    deconvolution don't make sense.  And in that case, I
 9    didn't do that.
10         Q.   But the program doesn't come back and say,
11    Hey, this should be three, does it, or this should be
12    five, does it?
13         A.   No, it does not.  And that, again, is the
14    human intervention aspect.  The human intervention
15    is -- we've been doing number of contributors for a
16    very long time, and that's based off my training and
17    experience, I came to four.
18         Q.   And the data set could be completely wrong
19    if you chose four, and it should have been three or
20    five; correct?
21         A.   It wouldn't be completely wrong.  We did
22    our validation, and we actually tested that so
23    through our validation we actually increased the
24    number by one, and we also decreased the number by
25    one, to see what would happen if you are incorrect in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 172

1  your assumption.  And we saw the effect was

2  negligible.  The reason we do this is we do not know

3  how many contributors are ever present, because we

4  were not there to see what DNA was left on an item.

5  We can only use what we're seeing in the profile, and

6  do the number based off of our training and

7  experience.

8       Q.   Right.  So like you just said, you don't

9  know exactly how many numbers of contributors there

10  are on a profile, especially when there is a mixed

11  sample like this; correct?

12      A.   Correct.  We never know.  We make the best

13  estimate we can based off of what we're seeing.

14      Q.   And that's all it is, is a best estimate,

15  it's a guess; correct?

16      A.   It is an estimation.  That's why we include

17  those limitations in our reports.

18      Q.   And it's a subjective determination here;

19  that's why I was saying that your report should say

20  at least four, instead of four?

21      A.   The interpretation using STRmix, that

22  likelihood ratio was developed based on four.  That

23  is why it is listed as four in my report.  And it was

24  also technically reviewed by another qualified

25  examiner, who also agreed that it was four.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4815

1      Q.   Correct.  But you're putting the data into

2   STRmix, and STRmix is generating the profiles based

3   on the number of individuals you put into the system;

4   yes?

5      A.   It is generating profiles, yes.  But you,

6   as an examiner, have to assess that profile first.

7   The same thing with my technical reviewer would

8   assess that profile first, before looking at the

9   STRmix, and before running STRmix.  Therefore, my

10   technical reviewer and myself both agreed that it was

11   four prior to running STRmix.

12      Q.   And what publications have you done or the

13   FBI has done on the uncertainty in determining the

14   number of individuals in a mixture?

15      A.   There is never any certainty, unless you

16   make up the mixture yourself.  So there are no

17   publication based off of the certainty of the number.

18   Through our validation, we discuss what would happen

19   if you guessed the number wrong.  So if you put in

20   four, and it was really five, or you put in four, and

21   it was really three, the validation covers those

22   scenarios.

23      Q.   Right.  And so the data would be incorrect,

24   if you put the wrong number in; yes?

25      A.   The number of contributors would.  The

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4816

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 174817

```
 1    deconvolution showed that the -- in most instances,

 2    the deconvolution were similar.  The only issue we

 3    saw was that low-level contributors would tend to get

 4    split out to two, instead of one, which would be

 5    incorrect.  However, it also lets you false

 6    exclusions.

 7         Q.   And that's what we have here is a low-level

 8    contributor; true?

 9         A.   The whole profile is low level.

10         Q.   Right.  So this is my point:  Specifically,

11    is that the false, unknown individuals, false

12    contributors, with low-level samples like this, there

13    is significant uncertainty in this process; correct?

14         A.   Again, I don't agree with that.  I'm using

15    my education and training to estimate the number of

16    contributors, which I did here.  I then analyzed the

17    output from STRmix, and I saw no discrepancies.  And

18    then my technical reviewer both independently

19    interpreted the profile, and then also ran or --

20    reviewed my STRmix output, and again agreed with me.

21    So I do not believe there is issues.

22         Q.   Are you familiar with NIST?

23         A.   I am, yes.

24         Q.   The National Institute of Standards and

25    Technology?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4817

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 175

```
 1          A.   Yes, I am.
 2          Q.   Are you familiar with their 2015 study, the
 3   Coble paper, regarding the uncertainty in the number
 4   of contributors in the new CODIS process?
 5          A.   I have not read specifically that paper,
 6   but I've heard of that paper.
 7          Q.   What have you heard about it?
 8          A.   Just that they did a study using multiple
 9   laboratories.  But that's all I know about the paper.
10          Q.   Multiple laboratories with multiple
11   contributors for samples; correct?
12          A.   Yes.  Again, that's based off of an
13   individual's training and experience.  I can't speak
14   to specifically what they found in their study, and I
15   can't speak to what they did in their study, because
16   I have not read that paper.
17          Q.   Have you or the FBI done a study on the
18   number of contributors in the mixture?
19          A.   Part of our validation, we ran samples of
20   known number of contributors through the software.
21   And we also analyzed what the number looked like
22   after it was amplified.  So we did do studies on it
23   as part of our validation, but that would not
24   specifically be published.  That would -- parts of
25   that would be published in the internal validation
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4818

```
1   paper.  But we did additional studies as well.

2        Q.    For the old software program; correct?

3        A.    For the software program that specifically

4   speaks to Identifiler.  We also did it with the new

5   software as well.

6        Q.    But nothing public in terms of uncertainty

7   with number of contributors in the STR program within

8   the FBI; yes?

9        A.    Again, I disagree with that.  We don't have

10  a paper specifically labeled that.  However, the

11  validation paper is published, and it does talk about

12  what happens when you run STRmix with incorrect

13  number of contributors, which addresses your

14  question.

15       Q.    So you referred to this validation paper

16  quite a number of times here.  So was that the paper

17  you're saying that I need to get from your legal

18  department?

19       A.    No, that paper is readily available on the

20  internet.

21       Q.    But the one on the newer software, I'd need

22  to get from the legal department; correct?

23       A.    The validation studies, all the paperwork,

24  that is part of our -- that is in our laboratory.  We

25  don't typically hand over our validation on discovery
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4819

1    requests.  But our legal could potentially assist you

2    with that.  I just know we don't normally hand that

3    over.

4         Q.   Right.  But referred to a number of times

5    today; yes?

6         A.   Our validation is the key aspect of our

7    testing.  We will not bring anything online until

8    it's been validated, both developmentally by the

9    manufacturer, and then also internally.  So it is

10   extremely important, yes.

11        Q.   Has the FBI studied drop-out or possibility

12   of contamination with multiple individuals in a

13   mixture?

14        A.   We looked at drop-out as part of our

15   validation, again.  Contamination wouldn't be

16   specifically addressed in that study.  However, it

17   would refer to the fact that we did not see drop-in.

18             MS. SIRIGNANO:  One second, please.

19             THE COURT:  Certainly.

20        Q.   Okay.  Let's go to the likelihood ratio.

21   Finally, CG-B 003, that's your report.  And you had

22   two hypotheses here, and then you determined your

23   likelihood ratio; yes?

24        A.   That's correct, yes.

25        Q.   The first hypothesis you assumed that the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4820

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 178

 1   DNA originated from four individuals; yes?

 2        A.   That would have been both hypothesis would

 3   assume four.  Who those individuals are would be the

 4   differences.  But yes.

 5        Q.   Okay.  And the second hypothesis, I guess

 6   what I saw was that Mr. Garcia, and there were three

 7   unknowns, to equal four; yes?

 8        A.   Yes.  So one hypotheses was Mr. Garcia and

 9   three unrelated unknown individuals.  The other

10   hypothesis was four unrelated, unknown individuals,

11   which did not include Garcia.

12        Q.   Okay.  So -- and this report you did on

13   June 27, 2017; yes?

14        A.   That is correct, yes.

15        Q.   And so the likelihood ratio you determined

16   in your report was the DNA typing results.  And there

17   is a footnote there, little 2, for item 3, are at

18   least 28 times more likely if they originated from

19   Garcia and three unrelated, unknown individuals, than

20   if they originated from four unrelated unknown

21   individuals; correct?

22        A.   Yes, that's correct.

23        Q.   And the calculations in your footnote were

24   performed using African American, Caucasian,

25   Southeastern Hispanic, and Southwestern Hispanic

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4821

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179 822

```
 1    populations; correct?
 2         A.   Yes, that's correct.
 3         Q.   And the likelihood ratio -- can we go to
 4    the next page, please, CG-B 004, please.  That's on
 5    the next page; right?
 6         A.   Yes, that is the table that we provide to
 7    help explain where those likelihood ratios fall.
 8         Q.   So we've got 28 here; correct?
 9         A.   That is correct.
10         Q.   And that would fall within the likelihood
11    ratio of 10 to 99.  And the qualitative equivalent or
12    the verbal equivalent that the FBI assigned at this
13    time with this likelihood ratio was moderate support;
14    correct?
15         A.   Yes.  But that is, again, based off
16    published -- this table was published by the
17    Association of Forensic Science Providers.  We use
18    that table for this information.
19         Q.   Are you the only one that uses this table?
20         A.   Not from my understanding, no.  I believe
21    other laboratories use it.  We have changed it
22    slightly when we switched to GlobalFiler; however,
23    this is a peer-reviewed published table.  So I'm
24    assuming there are a lot of labs that use this.
25         Q.   Do you know where it was peer reviewed?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4822

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 4823

```
1          A.   I do not know off the top of my head, no.

2          Q.   Is it accurate?

3          A.   I'm not sure what you mean by that.

4          Q.   Is the table accurate?

5          A.   It is just a qualitative equivalent.  Each

6     person is going to have to depend or use that

7     information, and apply how much support they believe

8     is present in that sample.  However, it is used to

9     assist individuals reading my report kind of where

10    the numbers I'm providing fall.  So for -- in this

11    case, 28 is lower on the spectrum.  So it ranges from

12    2 to over 700 billion.  So this table is just meant

13    to show what that means.

14         Q.   So you didn't actually say it was accurate.

15    I appreciate your response.  But it's literally right

16    above weak support.  And then uninformative; correct?

17    It's not extremely strong support; yes?

18         A.   Yes, that's correct.

19         Q.   And so if it was extremely strong support,

20    then the ratio would be a million to less than 700

21    billion; yes?

22         A.   That's correct, yes.

23         Q.   Based on this standard or this chart in

24    your report; correct?

25         A.   Correct, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4823

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4824

```
 1         Q.   Are you familiar with the State of New York

 2    versus Hillary case?

 3         A.   I am, yes.

 4         Q.   And there was Frye hearing in that case?

 5         A.   Yes.

 6              MS. SIRIGNANO:  Okay.  Your Honor, I'd like

 7    to offer the transcript of the Hillary case.  It's

 8    found at either the People of the State of New York

 9    versus or Oral N. Hillary; State of New York, County

10    Court, County of St. Lawrence; that's in Canton, New

11    York.  And liked to mark this as CG-G, DNA.

12              MS. ARMIJO:  Your Honor, I've never seen

13    this before.

14              THE COURT:  Hold on just a second.  Let me

15    get the marking of the exhibit.  I thought this was

16    going to be C.  Do you have some in between?

17              MS. SIRIGNANO:  I might, Your Honor, yes.

18    I have -- I had marked E.

19              THE COURT:  You haven't offered any of

20    these?

21              MS. SIRIGNANO:  You're right, Your Honor.

22    I didn't introduce C or D.  I introduced E.  And I

23    might introduce F.  But that one is G.  Do you want

24    me to renumber them?

25              THE COURT:  Why don't we mark this as C,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4824

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 182

```
 1    because if you don't offer them, it will just make
 2    the record confusing.  Is that okay?
 3              MS. SIRIGNANO:  Yes, Your Honor.
 4              THE COURT:  All right.  Ms. Armijo?
 5              MS. ARMIJO:  I've never seen this before.
 6    Our witness has never seen it before.  She's not a
 7    witness in this.  And it appears -- I don't know who
 8    testified, but she did not testify.  So I would
 9    object on relevance grounds.  And unless this witness
10    is intimately familiar with this, or we can have a
11    proffer of why this is relevant, I'm going to object
12    to it.
13              THE COURT:  All right.  Well, I think I
14    have read that transcript before in another case, so
15    I'm familiar with it.  I think it has enough
16    relevance here.  So I'll admit -- anybody else have
17    any objection or thoughts on it?
18              All right.  So I'm going to admit Chris
19    Garcia's Exhibit C.
20              Ms. Sirignano.
21              MS. SIRIGNANO:  Thank you, Judge.
22    BY MS. SIRIGNANO:
23         Q.  You stated, Ms. Smith, that you were
24    familiar with this case?
25         A.  I am familiar slightly, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4826

```
 1              MS. SIRIGNANO:  May I approach?

 2              THE COURT:  You may.

 3         Q.   I've handed you page 75 of that transcript.

 4    Dr. John Simon Buckleton testified at this hearing;

 5    correct?

 6         A.   Yes, he did.

 7         Q.   And Dr. Buckleton is one of the co-founders

 8    or co-developers of the STRmix program, yes?

 9         A.   He is, yes.

10         Q.   And he testified at this hearing in New

11    York, yes, about the likelihood ratios in STRmix;

12    correct?

13         A.   That is correct, yes.

14         Q.   And looking at page 75 there, he talks

15    about likelihood ratios between one and 1,000 to be

16    inconclusive; correct?

17         A.   I don't see that.  I might not have -- half

18    the question is cut off.

19              MS. SIRIGNANO:  Oh, I'm sorry.  May I

20    approach, Your Honor?

21              THE COURT:  You may.

22         Q.   Here's page 74.

23         A.   Yes, that is what Dr. Buckleton does say in

24    this testimony.

25         Q.   And he is one of the producers of this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4826

```
 1   software; yes?

 2        A.   On the software, the likelihood ratio and

 3   the number and the meaning behind it is not

 4   specifically about the software.  It's about a

 5   likelihood ratio, and what the likelihood ratio

 6   means.  The software is just a tool to calculate the

 7   likelihood ratio.  But he does state that, yes.

 8        Q.   And so the reason why he said that the

 9   likelihood ratios range between one and 1,000 to be

10   inconclusive is because that's the range where the

11   greatest occurrence of false positives or false

12   inclusions occur; correct?  Based on your training

13   and experience, Ms. Smith.

14        A.   We know that the lower the number, when

15   more and more individuals, that can occur.  It was

16   seen very, very infrequently.  However, that is

17   reflective of the statistics.  So again, a statistic

18   of 28 is very low on the spectrum.

19        Q.   And that's when the too close to call

20   instances occur, and the data is uninformative

21   regarding the likelihood ratios because the greatest

22   occurrences of false positives; yes?

23        A.   I would not say it's unreliable.  It is

24   still an estimate.  Again, there is still more

25   support that Mr. Garcia is potentially a contributor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4827

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185 4828

```
 1    However, that likelihood ratios is what is important,

 2    and that is 28.  That is lower on the spectrum.  So

 3    it could match a lot of people.  So there could be a

 4    lot of people that could be included as potential

 5    mixture.

 6         Q.   So the 28 percent likelihood ratios could

 7    include what you just said, "a lot of people"; yes?

 8         A.   That is possible, yes.  And again, it's not

 9    a percent.  The likelihood ratio is not a percent.

10    The likelihood ratio is 28.

11         Q.   Likelihood ratio is 28.  And the word I

12    used was "uninformative."  And Dr. Buckleton said

13    that one to 1,000 would be inconclusive because it

14    would be hard to differentiate between a donor and a

15    non-donor, what you just said; yes?

16         A.   Yes.  That is part of -- that's his

17    opinion.  Again, the FBI Lab did not have an

18    inconclusive zone for Identifiler.  We just reported

19    the statistic.  We're just trying to give the

20    information, and how that is applied is up to the

21    individuals reading our report.

22         Q.   But you do now, right, based after this

23    Hillary testimony with this GlobalFiler kit, you all

24    now have changed your likelihood ratios where one to

25    100 is inconclusive; yes?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4828

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 4829

```
1        A.   We have done that with GlobalFiler.   But

2   that was not based off the Hillary testimony.   That

3   was actually based off of our validation and what we

4   saw in validation.

5        Q.   So your validation study completely changed

6   the likelihood ratios a month after you did your

7   report here; correct?

8        A.   It was using a different kit.   GlobalFiler

9   has a lot more locations.   So, in general, if a

10  person cannot be excluded visually, the likelihood

11  ratio numbers that you get are very high.   They can

12  be in the nonillions, for instance, or in the

13  decadillions.   They get extremely, extremely high.

14  So, therefore, when we did our validation, we looked

15  at an inconclusive zone and did determine that

16  anything within -- up to 100 on the support for the

17  proposition that a person was included, would be

18  consider inconclusive.   But that is based off the

19  GlobalFiler validation, not the Identifiler.

20           THE COURT:   Ms. Sirignano, would this be a

21  good time for us to take our first afternoon break?

22           MS. SIRIGNANO:   It would be, Your Honor.

23           THE COURT:   All right.   We'll be in recess

24  for about 15 minutes.

25           (The Court stood in recess.)
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4830

 1            THE COURT:  All right.  Let's everyone grab
 2    a seat.  Make sure everybody has got an attorney.
 3            All right.  Ms. Smith, I'll remind you that
 4    you're still under oath.  Ms. Sirignano, if you wish
 5    to continue your cross-examination of Ms. Smith, you
 6    may do so at this time.
 7            MS. SIRIGNANO:  I do, Your Honor.  Thank
 8    you.
 9            THE COURT:  Ms. Sirignano.
10    BY MS. SIRIGNANO:
11        Q.   Ms. Smith, before we broke, or before we
12    had a break, you were testifying about this
13    likelihood ratio chart on page 004, B 004, of your
14    report.  And then right before we took a break, we
15    were talking about the GlobalFiler kit, and that the
16    chart has changed; correct?
17        A.   It has changed since we went online with
18    GlobalFiler, that is correct, yes.
19        Q.   And the one to 100 range is now -- the
20    qualitative equivalent is inconclusive, correct, for
21    GlobalFiler?
22        A.   Yes, one to 99 is inconclusive, that's
23    correct.
24        Q.   And on your report -- can you back this
25    out.  You, in Footnote 1, stated that you did use the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4830

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4831

```
 1    GlobalFiler kit; correct?
 2          A.   That was only used on the reference sample.
 3    That was not used on the evidence sample.  The
 4    interpretation is based off the evidence, not the
 5    reference samples.  But I did use it in this case
 6    specifically for the sample for Mr. Garcia only.
 7          Q.   And so you had both kits used in this case;
 8    correct?
 9          A.   Yes, because the samples were submitted a
10    year apart, so we went online with GlobalFiler
11    January of this year, and so we started amplifying
12    DNA after that date with GlobalFiler.
13          Q.   So there is really no scientific basis,
14    based on the earlier chart and the new chart, that
15    would show that there is moderate support versus
16    inconclusive in the likelihood ratio of 28; correct?
17          A.   28 is a number that just provides
18    information.  That chart was based off a
19    peer-reviewed, published chart that was already
20    available that when we discussed it with other
21    laboratories at SWGDAM, they were also using that
22    chart.  Since we switched to GlobalFiler, we decided
23    to base it specifically on our most up-to-date
24    validation studies, so that is changed slightly by
25    including the inconclusive zone.  But also that has a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4831

```
 1    lot to do with the fact that GlobalFiler has a lot
 2    more loci in its kit.
 3         Q.   Right.  And the 28 that was found was
 4    inconclusive with this GlobalFiler, the new chart;
 5    correct?
 6         A.   No.  A likelihood ratio of 28 would be
 7    inconclusive, but that would have to be from a sample
 8    that was amplified with GlobalFiler, which this is
 9    not.  So it is completely separate.
10         Q.   But did you testify that the buccal swab
11    from Garcia was amplified with GlobalFiler; correct?
12         A.   The buccal sample was.  But the
13    deconvolution using STRmix was done using Identifiler
14    on the samples, not GlobalFiler.  The kit used for
15    the buccal sample was irrelevant for this.
16         Q.   I just don't think that there is any
17    scientific basis for these labels and --
18              MS. ARMIJO:  Objection.
19              THE COURT:  Sustained.
20              MS. SIRIGNANO:  Sorry, Your Honor.
21         Q.   The qualitative equivalent, moderate
22    support, is based on what scientific basis?
23         A.   In my report you can see that it is in
24    accordance with standards published by the
25    Association of Forensic Science Providers.  So that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4832

1    was based off of their peer-reviewed publication.  We

2    feel that providing information to what that

3    likelihood ratio is, is the best policy.  So when we

4    calculated the likelihood ratios using Identifiler,

5    at that time, we always provided a number in both

6    directions, even with exclusions.  When there was

7    more support for a possible exclusion, we still

8    provided those numbers as well.

9        Q.    But you didn't really answer my question.

10   I asked what scientific basis was used to come up

11   with these qualitative equivalents?

12       A.    I don't specifically recall what is in

13   their publication.  However, we know that a one is

14   uninformative.  That is how a likelihood ratio works.

15   We also know that when you have low numbers, you're

16   going to have less support.  And that is explained on

17   testimony.  How, you know, a number of 28 means it

18   could -- the DNA could have originated from

19   Mr. Garcia, but also could have originated from other

20   individuals.  And that is why this equivalent is

21   helpful.  We're just trying to be helpful to the

22   individuals reading our report.

23       Q.    And the helpfulness changed from moderate

24   support to inconclusive with the new GlobalFiler

25   amplification kit; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4833

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 191

1    A.   You can't compare the two, because one is

2    using Identifiler and one is using GlobalFiler.  They

3    are different kits because we have different number

4    of loci.  Identifiler is looking at 15 locations, so

5    the numbers are generally lower for Identifiler.

6    With GlobalFiler, you're looking at 21 locations that

7    likelihood ratios are calculated for, so they're

8    higher.  So you can't compare the two charts to one

9    another like that.

10          MS. SIRIGNANO:  May I have a minute?

11          THE COURT:  You may.

12    Q.   You've testified a few times that you used

13    both kits to come up with this report.  It would seem

14    intuitive that you could compare these two charts.

15    A.   I can see why you think that.  However, the

16    GlobalFiler amplification kit was utilized on the

17    known reference sample; however, the deconvolution,

18    the mixture deconvolution was used using the

19    Identifiler kit.  Because at the time the gun and

20    holster were processed, we were only using the

21    Identifiler kit.

22          A known reference sample, it does not

23    matter what kit you use.  We obtain knowns from other

24    laboratories that may have used a kit that we don't

25    even use at the FBI Laboratory, and we can still use

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4834

1   it, because STRmix is not taking into account what

2   kit was used, when it comes to the known reference

3   samples.  It only matters what kit was utilized for

4   the evidence items.

5            So, in this case, the only relevant kit to

6   the STRmix deconvolution is Identifiler, which

7   utilizes this equivalent chart.

8       Q.   Let's turn to item 4 on page CH-B 085.

9   Item 4 is the holster that you analyzed; correct?

10      A.   Yes, it is.

11      Q.   And do you recognize page 85 here?

12      A.   I do.

13      Q.   And that's your 22-page summary report or

14  summary sheet?

15      A.   That is correct.  This is my STRmix

16  deconvolution for item 4, which is the holster, and

17  its comparison to Mr. Garcia.

18      Q.   And let's turn to page B 087.  And the

19  header on this page is "Per locus likelihood ratios";

20  correct?

21      A.   That is correct.

22      Q.   And so this data, where did this come from?

23      A.   This is the likelihood ratios calculated

24  for Mr. Garcia, based off of the mixture

25  deconvolution that was used for the holster.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4835

```
 1        Q.    And were all categories used in this
 2   analysis, meaning Caucasian, SEH, SWH, EAH?
 3        A.    Whenever I calculate a likelihood ratio, I
 4   always calculate it for at least these four.  We
 5   always calculate for Caucasian, African American,
 6   Southeast and Southwest Hispanics.  The one that is
 7   reported is the lowest likelihood ratio.  We always
 8   report the lowest number.
 9        Q.    Which was the lowest number?
10        A.    In this case, the lowest number was for the
11   Southwest Hispanics.  Here, it was 8.3 to the 15.
12   However, that number was not written in the report,
13   because it was greater than 700 billion, which met
14   our source threshold.  So it will just say Mr. Garcia
15   was the source of one of the contributors to this
16   holster.
17        Q.    And the greater than 700 billion, that
18   source threshold, where did that number come from?
19        A.    The FBI has been using source thresholds
20   for many years.  Other laboratories are also using
21   it.  This threshold was deemed by the FBI Laboratory.
22        Q.    Have there been publications, other than
23   the validation studies on these source thresholds?
24        A.    There are publications based off of the
25   source attribution thresholds.  Different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4836

```
 1   laboratories do use different thresholds, though.
 2   Some laboratories may use the world population.  Some
 3   may use just the United States population.  At the
 4   FBI, we use the world population, then we increase
 5   that up to 700 billion, just to ensure that we
 6   wouldn't expect to see it again.
 7        Q.   So you use the world population, and you
 8   increase 700 billion?
 9        A.   So at the time when we came up with this
10   number, the world's population was 7 billion.  So we
11   increased that to 700 billion, just to be cautious.
12        Q.   And these numbers are determined by the
13   FBI; correct?
14        A.   That threshold that we use is determined by
15   the FBI.  Other labs also have source attribution,
16   and that would be based off their own policies.
17             MS. SIRIGNANO:  Your Honor, pass the
18   witness at this time.
19             THE COURT:  Thank you.  Ms. Sirignano.
20             Any other defendants have cross-examination
21   of Ms. Smith?  Mr. Lowry?
22                       EXAMINATION
23   BY MR. LOWRY:
24        Q.   Good afternoon, Ms. Smith.
25        A.   Good afternoon.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4837

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 195

1          Q.   I just wanted to follow-up briefly on the

2    validation issue.  Are you familiar with a gentleman

3    named Bruce Budowle?

4          A.   I am, yes.

5          Q.   Who is Bruce Budowle?

6          A.   Bruce Budowle is an individual who used to

7    work for the FBI Laboratory.  I believe now he's

8    still at the University of North Texas.

9          Q.   How long did he direct the FBI Analytical

10   Laboratory?

11         A.   I don't know specifically.  He has not been

12   with the lab since I've worked there.

13         Q.   Okay.  But it's fair to say he directed the

14   FBI's Analytical Laboratory for a number of years?

15         A.   He was not a director.  He worked as a

16   research individual that assisted in the bringing of

17   a lot of our softwares online, yes.

18         Q.   And it's software regarding the DNA

19   analysis?

20         A.   Policies and procedures, yes.

21         Q.   Are you familiar with Mr. Budowle's work

22   that's critical of using low copy number DNA samples?

23         A.   I am not specifically, because the FBI Lab

24   does not do low copy number.

25         Q.   Well, and the reason I'm asking is, I

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1    remember at the beginning of Ms. Sirignano's
 2    presentation, you were looking at the nanograms of
 3    DNA available in these two samples, sample 3 and
 4    sample 4.  Do you recall that?
 5         A.   Yes, the FBI Lab aims for one nanogram;
 6    however, we have processed samples with less than
 7    that.
 8         Q.   Right.  And the ideal sample would be a
 9    nanogram?
10         A.   According to our validation, yes.  But we
11    can go, again, much lower.
12         Q.   But the ideal sample for a DNA test would
13    be a nanogram; correct?
14         A.   Yes, that's what we strive for.
15         Q.   And I believe, looking at items 3 and item
16    4, they are roughly about half a nanogram?
17         A.   Roughly, yes.
18         Q.   And on top of that you're claiming that
19    that half a nanogram was four separate individuals?
20         A.   Roughly, yes.
21         Q.   And so if you just took the half a
22    nanogram, divided by four, there would be relatively
23    little DNA per individual in the sample; correct?
24         A.   Yes, if they were contributing similar
25    amounts.  But yes, you're right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4839

1        Q.   The assumption is they're contributing

2    equally?

3        A.   Correct.

4        Q.   But traditional DNA samples, if you assume

5    equal contribution, they would all be in the arena of

6    low copy number samples?

7        A.   They would have little template DNA, yes.

8    Low copy number testing is specifically using

9    enhanced techniques to see the DNA, which is known to

10   pick up drop-in, which is the false alleles.  That is

11   using, for instance, increased number of

12   amplification cycles.  At the FBI we're using 27 for

13   Identifiler.  So, for instance, maybe using 30.  That

14   is an enhanced technique for low copy number testing.

15       Q.   Right.  But I'm not asking about the

16   techniques to accommodate for low copy numbers.  I'm

17   saying just the raw data would be in the arena of low

18   copy numbers?

19       A.   It would be lower template, yes.

20       Q.   And let's be fair to the Court here.  By

21   "lower template" you mean there is less DNA per

22   individual in the sample?

23       A.   Yes, this is a low-level sample, that is

24   correct.

25       Q.   And by low-level sample, we mean a sample

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4840

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4841

1    that's probably under 250 picograms?

2         A.    Potentially.  I can't state specifically

3    how much DNA each person is contributing.

4         Q.    Right.  And again, with the assumption a

5    half a nanogram divided by four.

6         A.    Right.  But that would be less than 250,

7    right.

8         Q.    And 250 picograms, that's relatively the

9    industry standard for defining low copy number?

10        A.    That is possible, yes.  Like I said, we

11   don't do low copy numbers, so I don't know

12   specifically what those labs quantify it as.

13        Q.    That brings me to STRmix.  Because the

14   reason you use STRmix is so you can circumvent

15   historical problems with low copy numbers; isn't hat

16   right?

17        A.    I wouldn't say it's to circumvent it, no.

18   The low method we would see information that we just

19   could not utilize.  So STRmix allows us to use the

20   entire profile.  Our validation of STRmix looked at

21   lower than one nanogram templates of DNA.  So we

22   looked at degraded samples.  We looked at low copy

23   samples for that validation.

24        Q.    Let's talk about that validation quickly,

25   because I didn't really catch it either on direct or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4841

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 199 of 842

1    the cross-examination.  You validated the STRmix

2    using the equipment at your laboratory at Quantico;

3    correct?

4         A.   Correct, yes.

5         Q.   And for a validation to be done correctly,

6    you have to use the same equipment using the same

7    software?

8         A.   Yes.  So in order to do a validation, we

9    use -- however we're planning on using it for

10   casework is what you must validate.  So you have to

11   validate the appropriate equipment, the software, the

12   STR typing kits, everything, yes.

13        Q.   Because the validation in your lab, in

14   Quantico, for the Identifiler kit with, you know, a

15   specific -- oh, I forget what you call the actual

16   chromatography machine, but might be different from

17   your lab to a lab in New Mexico?

18        A.   Correct.  That's why it's important that

19   the validation be done in-house.  All labs must do an

20   internal validation first.  And there is actually a

21   program within STRmix called Model Maker that assists

22   you in doing that.

23        Q.   So for STRmix, you validated using the

24   nanogram as baseline?

25        A.   No.  So STRmix -- so GlobalFiler

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204843

1    amplification, when we brought online GlobalFiler,

2    independent of STRmix, that is where we deemed that

3    GlobalFiler behaves a certain way using one nanogram.

4    So that's what we would aim to, so we didn't miss any

5    information.  STRmix, though, during the validation

6    we looked at a variety of types of mixtures, a

7    variety of amounts of DNA.  So that we knew it

8    crossed all the potential types of samples we would

9    expect to see in casework.

10       Q.   So let's talk about the validation for

11   STRmix.  For a single source sample, how low did you

12   go with the DNA quantity in your validation studies?

13       A.   I don't recall specifically how low.  I

14   know that we went down to the picogram level.  I

15   don't remember specifically what that level was at

16   this point.

17       Q.   So do you recall that, for a single source

18   sample, that your validation studies got below 250

19   picograms?

20       A.   I know that there were definitely samples

21   at about 300 picograms.  But I don't recall exactly

22   how low it went.  So I don't recall that.

23       Q.   Now, let's talk about a two-source sample,

24   a known two-source sample.  Did you validate for

25   STRmix going down below 250 picograms per source?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4843

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1        A.   So as we increased the number of

 2   contributors in our validation, we decreased -- we

 3   definitely adjusted the ratios.  So for two people,

 4   we tested a 20 to one, a one to one, a one to 20, and

 5   that varied in the amount of DNA.  For a four-person

 6   mixtures we did the same thing.  We did like a 16 to

 7   one, to one to one, all the way down to a one to one

 8   to one to one mixture ratio.  And that covered where

 9   some of those people were very, very low levels, in

10   the hundreds of picograms.  And we actually saw in

11   certain instances those people dropped out, or could

12   not be seen in the profile.  So we did cover that

13   range in our validation.

14        Q.   Okay.  Well, I'm not sure you answered my

15   question.  I'm going to ask it again.  Because you

16   said you validated down into the hundreds of

17   picograms.  And my question is:  Did you validate the

18   two-source sample below the low copy number, the low

19   template number of 250 picograms?

20        A.   I believe we did.  I believe we went down

21   to 125 picograms.  But I would have to refresh my

22   memory.  I can't recall specifically, because so many

23   mixtures were run.

24        Q.   So you can't recall, is the answer today?

25        A.   Specifically for two person, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4844

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202 4845

```
 1        Q.    What about for a three-person sample?
 2        A.    Again, I don't recall the exact amount of
 3   DNA.  I do know that we degraded the samples, using
 4   UV light, and also using clean, fresh samples.  And
 5   we saw a variety of things.  But I don't recall
 6   exactly how low we went.  I believe it was 125
 7   picograms, though.
 8        Q.    But that would be in the validation
 9   studies?
10        A.    Yes, it would.
11        Q.    And those were the validation studies you
12   said you'd have to talk to your legal department
13   about disclosing to the defense team?
14        A.    We don't typically hand over validation
15   studies as part of discovery.  So, yes, if those were
16   requested, they would have to go through our legal
17   department, yes.
18        Q.    But for today's purposes, talking to this
19   Court, you can't say definitively whether you
20   validated the STRmix for two-source samples below 250
21   picograms?
22        A.    I do have the peer-reviewed publication of
23   our validation with me.  I can refer to that, if
24   you'd like, so I can refresh my memory exactly how
25   low we went.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 203 4846

```
 1        Q.    Sure.

 2              THE WITNESS:  Your Honor, do you mind if I

 3    refer to my notes?

 4              THE COURT:  Any problem with that, Mr.

 5    Lowry?

 6              MR. LOWRY:  Not at all.

 7              THE COURT:  All right.  You may do so.

 8        A.    Okay.  We did actually cover that range.

 9    So in our internal validation of STRmix for the

10    interpretation of single source and mixed DNA

11    profiles paper, which is published in the Forensic

12    Science International Genetics, it does list out a

13    summary of the mixtures that we tested.  Those

14    mixtures, depending on the number of contributors,

15    ranged from .006 nanograms up to one nanogram.

16        Q.    Okay.  So that's well above the 250

17    picogram level?

18        A.    That is much lower, yes.

19        Q.    The 250 picogram is much lower than the .6

20    nanogram?

21        A.    It's .006 nanograms.

22        Q.    Got it.  60 picograms?

23        A.    Yes, I believe that's correct.  I would

24    need a calculator.  I'm not great with math in my

25    head.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4846

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204847

1    Q.   Now, if we're talking about 60 picograms,

2    that's probably -- for everybody else in the

3    courtroom, that's probably one or two cells?

4    A.   It's very low cells, yes.  Typically, it

5    would just be a couple of cells, yes.

6    Q.   And how -- for that level of validation,

7    was that a single-source sample?

8    A.   So for a number of contributors, that .006

9    to .9 nanograms, that was for two contributors.  For

10   four contributors, it was .05 nanograms to 3.2

11   nanograms.  And that template range varied on the

12   contributor.

13   Q.   So pass that back to me one more time.  Was

14   that three contributors?

15   A.   Three contributors range from .021 to one

16   nanogram contributor template.

17   Q.   And so in this case, we're talking about

18   you assumed four contributors to the sample?

19   A.   Correct.  But, again, I want to reiterate

20   that the quantification is an estimate.  So, again,

21   we don't know exactly how much DNA starting material

22   we had.

23   Q.   Correct.  And that's one of the problems

24   with mixtures, is you never know how much a single

25   contributor provided in the mixture; isn't that true?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205 of 4848

1      A.   We never know how much anybody contributed

2  to a mixture.  We have to use our training,

3  education, and experience to determine the

4  interpretation of that.

5      Q.   Well, you really -- you think looking at an

6  electropherogram you can deduce how much of a sample

7  any one contributor made?

8      A.   No, you can't do that.  I agree with you.

9  You look at the entire profile, and see if you're

10  seeing a low-level mixture, a high-level mixture.  Do

11  I think drop-out may have occurred?  If I don't think

12  drop-out occurred, then I'm going to interpret the

13  profile differently.

14     Q.   So I just want to come back to the four

15  contributors to a sample.  Did the FBI validate for

16  STRmix below 250 picograms per contributor?

17     A.   The chart in this paper specifically states

18  that the FBI Laboratory, for a number of contributors

19  of four, it ranged from .05 nanograms to 3.2

20  nanograms.  So about exactly the amount of total DNA

21  that I saw here, about half a nanogram.

22     Q.   Right.  So that was for a half a nanogram

23  for any single contributor?

24     A.   For this one table, that's what it appears,

25  yes.  Again, I would have to read the entire paper

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    again to be sure.  But --
 2         Q.   My question is really simple here.  For
 3    samples, where we're assuming there are four
 4    contributors, did the FBI validate for any -- for a
 5    mixed sample with four contributors -- that you can
 6    give valid results for a single contributor in the
 7    mix that was less than 250 picograms?
 8         A.   I don't know specifically the number.
 9    However, I do know the FBI validated a range of low
10    level and high level template amounts.  That gives me
11    confidence in the way STRmix interpreted the sample.
12         Q.   But when you're talking about template
13    amounts, you're talking about the total template
14    amount?
15         A.   Right, but we're making the assumption that
16    we know it's 250.  And I know for a fact that this
17    profile is not a one to one to one to one mixture, so
18    that's not an appropriate assumption for this case.
19         Q.   So let's talk about this case.  What would
20    you estimate the ratios would be?
21         A.   Well, STRmix -- I don't recall the exact
22    ratios.  I would need to do that calculation.  We
23    don't do that specific calculation, but it estimated
24    approximately a 42 percent contributor, a 30 percent
25    contributor, a 20 percent contributor, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4849

1    approximately a 7 percent contributor.  So I don't
2    know specifically what those ratios are without doing
3    the math.  But it is not a one to one to one to one.
4         Q.   Out of those percentages, which one of
5    those percentages of the sample would you attribute
6    to the potential match for Mr. Garcia?
7         A.   I cannot state specifically which one he
8    is, if he is in there at all.  And the reason for
9    that is that is not how STRmix works.  However,
10   STRmix attributed him to the 30 percent contributor.
11   If that is, in fact, from Garcia, which we cannot
12   say.
13        Q.   And if you assume for the sake of argument,
14   it's a 30 percent contributor, and you started out
15   with a half a nanogram, he's roughly, what, 125, 150
16   picograms?
17        A.   Approximately.  But, again, quantification
18   is an estimate, so I can't correlate that directly to
19   that.
20        Q.   Okay.  But I want to come back to where I
21   started with.  Mr. Budowle's critique of DNA analysis
22   for a low template DNA is that the whole analysis
23   becomes unstable and unpredictable given the low
24   template amounts of DNA?
25        A.   I don't agree with that assessment.  I am

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4850

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208 of 851

1    not familiar with specifically what paper you're

2    referring to.  From my understanding, low copy number

3    testing, if he's referring to that, is very different

4    than low template amount.  Our validation covered a

5    variety of ranges.  And we see these types of

6    mixtures routinely on firearms and other items in

7    which the individual is most likely touching, versus

8    body fluid.  So I'm completely confident in my

9    results.  And the 28 is reflective of that low-level

10   sample.

11       Q.   Ms. Sirignano asked you about drop-in.  And

12   you said that in your validation studies, the FBI

13   didn't come across drop-in as part of the validation

14   studies; is that correct?

15       A.   That is correct.  With Identifiler, we saw

16   no instances of drop-in.  So when we set our

17   parameters for our amplification, we assumed a

18   drop-in rate of zero for STRmix because of that

19   validation.

20       Q.   And by the time you get to your

21   electropherogram, and you're looking at the peak

22   heights -- now refresh my recollection, is there

23   absolutely no analytical, no stochastic threshold?

24   Using STRmix, do you have a stochastic or analytical

25   threshold for when you're calling an allele for a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4851

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209852

1    peak height?

2         A.   So STRmix uses a threshold of 50.   So

3    anything below 50 is considered potential background

4    noise.   Anything above 50 is considered a true peak,

5    unless the analyst, including myself, looks at the

6    data and deems that to be an artifact; then it would

7    be removed.

8              We also have a threshold of 200 for

9    Identifiler.   Therefore, what that means is, if the

10   peak is below 200, we know we may not see its partner

11   peak.   So, for instance, if a person is 7, 10, we may

12   only see the 7.   And that is also part of our

13   validation.   STRmix does not use that second

14   threshold, because it is a continuous model and

15   models for drop-out.

16        Q.   So if I understand what you said, I'm

17   trying to understand that, you don't use the 50 RFU

18   for STRmix?

19        A.   STRmix does use the 50 RFU; that's the

20   analytical threshold.   It does use that.   Anything

21   above 50 is considered a peak, not background noise.

22        Q.   Unless the analyst attributes that peak to

23   stutter or some kind of known artifact?

24        A.   If the analyst attributes that to a known

25   artifact, such as bleed-through or pull-up, STRmix

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                                FAX (505) 843-9492
                                                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                        e-mail: info@litsupport.com

1    models stutter, so we do not delete out stutter

2    necessarily.

3         Q.    I think that you said STRmix had been

4    validated at the state level?

5         A.    Both federal and state.  We're a federal

6    laboratory, and we validated STRmix.  However, it's

7    also being used by other federal laboratories, in

8    addition to state laboratories.

9         Q.    What state court has validated, in a

10   Daubert challenge, STRmix for a four-contributor

11   sample?

12        A.    I don't specifically know the number of

13   contributors that have been challenged.  I do know

14   that Michigan is one that did approve the use of

15   STRmix.  And I know there are others.  I believe

16   there is seven or eight now.  But I don't know the

17   mixture ratios that they had.

18        Q.    What I'm talking about is a specific

19   scientific challenge to STRmix.  I mean, there would

20   be a difference between challenging STRmix for a

21   single contributor sample, as opposed to a

22   four-contributor sample, wouldn't it?

23        A.    It would be a different challenge.

24   However, if the laboratory validates them both, then

25   I would say that they're both scientifically valid.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4853

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 214854

1        Q.   And my final question would be:  For a

2   four-contributor sample, do you have the validation

3   studies that show any single contributor less than

4   250 picograms can get a reliable test result using

5   STRmix?

6        A.   I can't recall the specific numbers, no.

7   But I do know we have the four-person mixture

8   validation.  And I could find that information out.

9             MR. LOWRY:  No further questions.

10            THE COURT:  Thank you, Mr. Lowry.

11            Any other defendants have cross-examination

12   of Ms. Smith?

13            All right.  Ms. Armijo, you have redirect

14   of Ms. Smith?

15                 REDIRECT EXAMINATION

16   BY MS. ARMIJO:

17        Q.   Starting where we left off.  In the states

18   that you were talking about with Mr. Lowry, is that

19   the same scientific validation that you would

20   consider this case?

21        A.   Yes, it is.  They would have done their own

22   internal validation at the specific laboratories.

23   But it would be on the same software, and an internal

24   validation would have to be done, just like we did.

25        Q.   You were asked on cross-examination about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4854

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212-4855

1  how you protect against bias in this case.  And how

2  is it that STRmix protects against bias?

3       A.   STRmix does not have a means of having

4  bias, because it is just a software program.

5       Q.   Let's see.  Now, you were talking about the

6  STRmix validation version that you use.  Can you

7  explain a little bit about the extensive validation

8  that the FBI does with the version that you have

9  done?

10      A.   Whenever the FBI Laboratory receives a new

11  version from the ESR, or the software -- or the

12  company that generated STRmix, they do an in-depth

13  validation to show that it's behaving the same way as

14  the previous validation.  So they will potentially

15  run new samples.  They will run the same data through

16  both software versions to ensure they're getting the

17  same exact result.  And we do that every time we have

18  a new version.  So we will not bring on a new version

19  unless it meets those validation criteria.

20      Q.   Was that done in this case?

21      A.   Yes, it was.

22      Q.   Now, you were talking on cross-examination

23  about the validation where you get the low-level

24  split-out into two, I believe -- I'm sorry, I was

25  trying to write quickly.  You said that the only

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4855

```
 1    thing that would cause would be false exclusions; is
 2    that correct?  Do you know what I'm referring to?
 3         A.   Yes, I know what you're referring to.
 4    That's not necessarily true.  So, if you
 5    underestimate the number of contributors, so, for
 6    instance, if you call it a three-person mixture, and
 7    it is really a four-person mixture, then you could
 8    falsely exclude people, because you're not seeing --
 9    you're not attributing to the correct number of
10    individuals.  If you falsely increase the number of
11    contributors, meaning it is really a three-person
12    mixture, but you call it a four-person mixture, it
13    will potentially generate a very low-level extra
14    contributor, where you could falsely include.
15    However, in our validation studies, we saw that it
16    remained near uninformative.
17         Q.   And you indicated the validation paper that
18    was published is regularly available on the internet?
19         A.   Yes, that is correct.  Both the
20    developmental and the internal validation papers are
21    readily available.
22         Q.   Now, Ms. Sirignano admitted into
23    evidence -- actually, I don't believe I see it.  Do
24    you have -- maybe you have it -- the transcript from
25    that New York case.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14857

```
 1        A.   I only have two pages of that transcript up
 2   here.
 3             MS. ARMIJO:  Can we have the full copy of
 4   it, please?
 5        Q.   Are you familiar with this case?
 6        A.   I am vaguely familiar, yes.
 7        Q.   Okay.  And what were the issues in this
 8   case?
 9        A.   In this case, specifically, the state in
10   which this hearing was set, their laboratory was not
11   validated for using STRmix.  They did not -- they had
12   not done a validation study.  They were not using
13   STRmix on casework.  So they requested -- or someone
14   requested John Buckleton to use the data from the
15   laboratory and run it through STRmix.  The problem
16   with that is STRmix does require you to generate the
17   data on your own instruments, because the software's
18   parameters are based off of your own validation.  So
19   the parameters he used were not based off of the
20   laboratory's data.  They were just estimates.  And it
21   was found that it was not suitable.  And he could not
22   testify to it, because he did not run the samples
23   himself through the laboratory.
24        Q.   And in this case, did the FBI run samples
25   themselves?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4857

```
 1        A.   Yes.  All of this data came off of our own
 2   instruments that have been validated for using
 3   software.
 4        Q.   Is the FBI validated for using STRmix?
 5        A.   Yes, we are.
 6        Q.   So is that a distinction from the New York
 7   case?
 8        A.   Yes, it's a large distinction.
 9        Q.   And you were talking about comparing the
10   different charts with Ms. Sirignano.  Can you explain
11   the differences between the charts, when you're
12   talking about the numbers?
13        A.   Are you referring to the kits that were
14   used?  I'm not sure which charts.
15        Q.   She was talking about the charts for the
16   numbers, when you talked about the number 28, as
17   opposed to being a moderate support?
18        A.   Yes.  So the charts in this report that's
19   relevant for this case is based off of a published
20   chart that was available to us when we brought STRmix
21   online.  Likelihood ratios were newer to us as well.
22   So we referred to individuals who are familiar with
23   the qualitative equivalent.  So we went to a
24   peer-reviewed publication and used those -- that
25   chart for identifying when we went online with this.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4858

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 216 4859

```
 1              When we switched to GlobalFiler, because it
 2    uses so many more locations, we routinely saw numbers
 3    that were much, much higher.  So based off of our
 4    validation, we deemed to have an inconclusive zone up
 5    to 100.
 6         Q.   And is that why you indicate that, with the
 7    28, it already takes that into account?
 8         A.   It does.  I mean, the 28 is a low number on
 9    that chart, when you look at how large it can get.
10    So that is part of why we provide the numbers.  It's
11    just information.  It means that there was more
12    support that Mr. Garcia was a contributor, but it
13    does not necessarily mean that he is the only
14    possible contributor.
15         Q.   Now, in reference to the amount of samples
16    in this case, was it, in your opinion, enough of a
17    sample?
18         A.   Yes, it was.
19         Q.   And did the amount of the sample impact any
20    of the validation of your testing?
21         A.   No, it did not.
22         Q.   And he was using the term "low copy," and
23    you were using the term "low template."  What is the
24    distinction?
25         A.   For me, personally, low copy refers to a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4859

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4860

```
 1   technique in which you take low-level samples and try
 2   to increase the amount of sample you have by using
 3   techniques that are going to make your samples
 4   potentially contain drop-in and other artifacts.
 5   It's a way to increase the level of DNA you have,
 6   which we do not do at the FBI Laboratory.
 7        Q.   And in reference to the STRmix, where you
 8   said it was seven or eight other states in which
 9   there have been Daubert hearings and it's been
10   approved.  Is it the same scientific validation that
11   you use?
12        A.   Yes, it is.  And again, that was an
13   estimation.  I don't know the exact number.  It's
14   around six or seven.  But that is based off of
15   STRmix.  And the individual labs do their own
16   validation, but it is the same software, yes.
17             MS. ARMIJO:  I have nothing further.  Thank
18   you.
19             THE COURT:  Thank you, Ms. Armijo.
20             All right.  Ms. Smith, you may step down.
21   Thank you for your testimony.
22             THE WITNESS:  May I be excused, Your Honor?
23             THE COURT:  May she be excused?
24             MS. SIRIGNANO:  Your Honor, I'd like to
25   review the SOPs that were just given to me and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4860

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4861

1  re-call her in the morning just briefly, to see if I

2  could use any of that materials in my

3  cross-examination.

4           THE COURT:  How do you feel about that, Ms.

5  Armijo?

6           MS. ARMIJO:  Cross-examination of whom?

7           MS. SIRIGNANO:  Of the witness.

8           MS. ARMIJO:  Your Honor, I think that that

9  would be going more towards -- and I think the Court

10  gave a great deal of indulgence to Ms. Sirignano.

11  This was more than just a Daubert hearing.  This was

12  more of a cross-examination and preview and fishing

13  expedition.  So we would request that she be excused

14  at this point, unless there is something specific

15  that she can point to.

16           THE COURT:  I don't think --

17           MS. SIRIGNANO:  Your Honor, I can't look at

18  materials or rely on materials or cross-examination

19  using materials that I haven't had five minutes to

20  review.  And, unfortunately, this is a Daubert

21  hearing, and despite my colleague's continued

22  thoughts about us doing a discovery fishing

23  expedition, all these questions and the SOPs -- which

24  is why I asked for them months ago -- is within the

25  purview of Daubert and within cross-examination.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4861

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219 4862

```
 1    because the Government waited until the afternoon of
 2    the hearing to provide us with these documents,
 3    Mr. Garcia shouldn't be penalized to have the
 4    opportunity to review it and cross-examine the
 5    witness on them.  She referred to the SOPs on
 6    multiple instances here, and I haven't even had a
 7    chance to review them.
 8              THE COURT:  Well, I'd asked earlier -- you
 9    filed something, I guess, last night about -- I
10    needed something from your expert as to why the FBI's
11    DNA policies and procedures were essential to the
12    Daubert hearing.  And Ms. Arvizu, I guess, stated in
13    the document you filed last night, she says, in sort
14    of an ambiguous last sentence on page 2, lines 6
15    through 12, she said, "Without access to laboratory's
16    policies and procedures, an independent reviewer
17    would be unable to evaluate whether the subject
18    testing conformed to applicable requirements of" --
19    and here is where it's not clear, it says, "FBI
20    policies, laboratory procedures, and consensus
21    standards."  If FBI modifies those three clauses,
22    then again, that's what I've been saying all along,
23    I'm not sure that anybody is telling me that these
24    are necessary for their Daubert hearing.  So she's
25    not clear.  It's a very conclusory sentence.  I was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4862

```
 1    hoping for more.
 2              And so without more, Ms. Smith, you are
 3    excused.  I still don't have any foundation as to why
 4    this is necessary for a Daubert hearing.  Thank you
 5    for your testimony.
 6              THE WITNESS:  Thank you, Your Honor.
 7              THE COURT:  All right.  Does the Government
 8    have further witnesses or evidence it wishes to
 9    present on the Daubert hearing?
10              MS. ARMIJO:  No, Your Honor.  We have
11    nothing further.
12              THE COURT:  All right.  Do the
13    defendants -- Ms. Sirignano, do the defendants have
14    any witnesses or evidence it wishes to present on the
15    Daubert hearing?
16              MS. SIRIGNANO:  No witnesses at this time,
17    Your Honor.
18              THE COURT:  All right.  Do you wish to
19    argue in support of your motion?
20              MS. SIRIGNANO:  I do, Your Honor.
21              THE COURT:  All right.  Ms. Sirignano.
22              MS. SIRIGNANO:  Your Honor, we've heard
23    from the witness, the Government's witness, the
24    Government's expert today, about the process that
25    they use to run this DNA, and then the STRmix
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4863

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221864

1  program, both the earlier version and this new

2  version.

3         And what we did hear today was that this

4  software program has -- the new version has not been

5  peer reviewed.  There hasn't been anything publicly

6  published about this STRmix version; that they've got

7  all these internal validation tests and reports, but

8  nothing within the public realm, other than the

9  earlier version of the software that explains how

10  they validated this.

11        And I submit, Your Honor, that this DNA

12  testing on this low-level sample, as you heard from

13  the witness, is very unreliable.  It's prone to false

14  positives.  It's uninformative.  It's too close to

15  call.  And the developer of the STRmix software

16  testified in that earlier case, although it being

17  different, that this likelihood ratio of 28 would be

18  inconclusive.  And the reason for that is the

19  possibility of false inclusions.  The witness stated

20  specifically that she could not say that Mr. Garcia

21  was in this mix at all, or specifically, that he was

22  in the mix, or whether he was in the mix at all.

23        So based on the math and based on the

24  science, they assumed that he was a 30 percent

25  contributor to this number 2 individual.  And I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4864

```
 1   believe, based on Mr. Lowry's and my
 2   cross-examination of this witness, a low-level sample
 3   with a likelihood ratio of 28 is very sketchy, Your
 4   Honor.  It's uninformative.  And we would ask at this
 5   time, Your Honor, that because the witness testified
 6   that she can't deduce who contributed to the sample,
 7   especially in a low-level sample like this, that you
 8   use your gatekeeping function under Daubert and the
 9   other cases, and exclude this DNA evidence from
10   trial.
11           Thank you.
12           THE COURT:  All right.  Thank you, Ms.
13   Sirignano.
14           Anyone else wish to argue in support of the
15   Daubert challenge?
16           All right.  Ms. Armijo, if you wish to
17   respond?
18           MS. ARMIJO:  Yes, Your Honor.
19           Quite simply, that's more of an argument
20   for a jury as far as the levels of it, and how much
21   weight to give it.  And you don't hear a DNA analyst
22   ever say:  This is Chris Garcia's sample.  They
23   always talk about numbers; that's why it's one in 28,
24   one in 700 billion.  That's how you they determine
25   it.  They're not able to ever say that something has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223

```
 1    come specifically from a person.  So that's not
 2    surprising.
 3              In this case, the software was validated by
 4    the FBI.  The sample was sufficient.  It may not have
 5    been a great one.  But she even testified that they
 6    see these samples routinely on items such as
 7    firearms, as opposed to DNA fluids, like a rape kit
 8    or things like that, that this sample is sufficient.
 9    And it clearly -- the method used by the FBI is a
10    valid scientific method; that the Court should allow
11    her to testify as a result on the firearm and the
12    holster.
13              THE COURT:  All right.  Thank you,
14    Ms. Armijo.
15              Anyone else have any rebuttal?
16              All right.  Ms. Sirignano, anything final?
17    I'll give you the final word.
18              MS. SIRIGNANO:  No.  Thank you, Your Honor.
19              THE COURT:  Well, I think the defendants
20    that joined this motion were trying to establish a
21    large gap between what the FBI was doing and maybe
22    what they should be doing.  And I'm not sure that the
23    gap is that great.  It seems to me that the
24    Government has established that the FBI's procedures
25    are in line with what other laboratories and experts
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224867

```
 1    would do.

 2           I think, at most, the arguments have gone

 3    to a misapplication or incorrect testing or

 4    inadequate testing, rather than that the methodology

 5    here is somehow flawed or not peer reviewed, or not

 6    scientific.  And I think that's the purpose of the

 7    Daubert motion.  There may be a great deal over the

 8    last day that goes to cross-examination, to weaken

 9    the Government's case in reliance on the information.

10    But as far as the methodology that the FBI is using

11    generally, and in this case, I think it's

12    scientifically sound and satisfies the Daubert

13    standard.

14           So I will deny the motion to exclude

15    Ms. Smith, and allow her to testify as to what is in

16    her report, and as to what was disclosed in today's

17    testimony.

18           All right.  My understanding is that the

19    next issue that we go to will be the motion for

20    additional discovery regarding monetary payments to

21    inmate informant witnesses.  I know that there was --

22    no hearing was requested here, but I think to

23    actually get through some of these issues, and try to

24    resolve them, I'm going to need counsel to give me

25    input.  I think this might have been yours,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4867

```
 1    Ms. Harbour-Valdez?

 2              MS. HARBOUR-VALDEZ:  No, Your Honor.  It's

 3    Mr. Castle.

 4              THE COURT:  Mr. Castle.  I knew it was this

 5    corner over here.  Mr. Castle.

 6              MR. CASTLE:  Thank you, Your Honor.

 7              You know, I really don't have a lot more

 8    argument other than what I put in my motion.

 9              THE COURT:  I have read everything, but let

10    me make sure that I understand what you're asking.

11    So refresh my memory on this motion.

12              MR. CASTLE:  Well, what we've gotten so far

13    is a summary of payments.  We haven't gotten a lot of

14    information, like how it came about that someone got

15    $2,000 or 40,000, such as did they request it?  Did

16    they express a need?  We don't know how it was paid.

17    We don't know what kinds of agreements were made in

18    return for the money; that it was a quid pro quo of

19    sorts.  We don't have receipts that they've given.

20    We don't know whether -- I think the Court heard

21    earlier testimony in one of the last couple weeks

22    where Agent Acee talked about how some payments are

23    made for expenses and some are made for services

24    rendered, I think is what I indicated.  So we don't

25    know whether these amounts are one or the other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4868

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226

```
 1    obviously.  We don't want to be in a situation where

 2    we're cross-examining, and it turns out it is for

 3    gasoline to come to court.

 4            But all these things are relevant to the

 5    bias of the witness, the motivation of the witness in

 6    testimony.

 7            THE COURT:  I guess you're trying to fit

 8    all this into Giglio, right?

 9            MR. CASTLE:  Exactly.  And I think the

10    Government basically said -- originally what they

11    asked us is they wanted to check with the FBI to see

12    what they would be willing to share.  I'm not sure

13    that's really been standard.  I think the standard is

14    what they're required to share.  And I'm not sure

15    whether I need to argue a lot, if they're going to

16    agree to turn this over.

17            THE COURT:  Well, let's see what they say.

18    I guess I'm inclined to think this is probably

19    impeachment material that's Giglio.  You've just got

20    to get it and get it to them.  Ms. Armijo?

21            MS. ARMIJO:  Your Honor, I think we could

22    shortcut a lot of this.  We are agreeing to turn

23    over, on all of the CHSs that we have them on, FBI

24    files on, or payments to, the entire files, which

25    would include all this information.  So anything that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4869

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 227870

1  they request that's specific to the files, we will,

2  in fact, turn over.

3         It does require some FBI redaction.  And

4  then it will come to our office for personalized

5  information redaction.  But we are agreeing to give

6  over the files that should include everything that

7  they're requesting.  If, after they review the files,

8  there are specifics they can come to us and say:

9  What about this or what about that.  But I think that

10  that's the first step, and we should be able to

11  resolve these issues giving the complete file.

12         THE COURT:  With that representation of

13  what they're willing to do, which sounds like it's

14  what they've got to do under Giglio, is there

15  anything more you need on this motion, Mr. Castle?

16         MR. CASTLE:  The only thing I would add, is

17  that a lot of times promises are not in written form.

18  So, for example, the FBI manual that I referenced in

19  the motion itself encourages agents to provide

20  bonuses to cooperating witnesses after trial.  If

21  information like that has been communicated orally,

22  and not put in writing, I think their obligation

23  extends to that.

24         So I think it's a great start that they're

25  going to look at that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4870

1          THE COURT:  Let me ask you, Ms. Armijo,

2    would you agree that, if the FBI is making those sort

3    of promises, it would fall within the scope of the

4    request?

5          MS. ARMIJO:  Probably so, yes.  But I can't

6    think of any instances in which that is being done.

7    But if there is, and it will fall under that request,

8    then it will be noted.

9          THE COURT:  All right.  Could you also do

10   this:  That, after you talk to probably Mr. Acee, and

11   he can talk to his FBI, would you send a letter and

12   say:  With the materials we're producing, we know of

13   no other promises or benefits that are being bestowed

14   other than what's going to be revealed by the

15   documents produced?

16         MS. ARMIJO:  Yes, Your Honor.

17         THE COURT:  Does that get you on that, what

18   you need, Mr. Castle?

19         MR. CASTLE:  Almost.  Because I think

20   what's more --

21         THE COURT:  You're on a roll, you're going

22   to keep asking.

23         MR. CASTLE:  Exactly.  I've had a couple of

24   weeks of rest, and I'm charged up.

25         But I think what's relevant, in addition to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229

```
 1    what the FBI has promised, is what's been requested
 2    by these witnesses.  So these are individuals who are
 3    well schooled in the art of receiving what they want.
 4    And sometimes they want more than what the FBI gives.
 5    And I think their bias would be revealed additionally
 6    by anything they requested that Agent Acee in his
 7    decision decided not to provide.  I think there was
 8    some testimony that when requests come in, it has to
 9    be screened, and evaluated, and they may or may not
10    give it to the particular witness.  I think those
11    requests also have to be memorialized in some
12    fashion, and provided to the defense.
13            The only other comment I'd make is that
14    this was ordered to be produced back in November.
15    Here we are, at the end of December, along with all
16    the other Giglio material.  And so any speed with
17    which we could receive this material would be
18    appreciated.  And I think an order from the Court
19    would be in line with that.
20            THE COURT:  Let me take these in bites.
21    Ms. Armijo, is Mr. Acee going to be the only one
22    that's going to know or have the information that
23    people were requesting things that may or may not
24    have been given?  Are there going to be any other FBI
25    agents, personnel involved?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4872

```
 1            MS. ARMIJO:  May I have a moment?

 2            THE COURT:  Certainly.

 3            MS. ARMIJO:  I think, even if it wasn't

 4   him, it would be reported to him.

 5            THE COURT:  All right.  Could we do this?

 6   Could we have Mr. Acee sit down on each cooperating

 7   witness, and just think about it, and think about if

 8   anything was requested; if he has to talk to somebody

 9   else, and then could he do something for you that

10   indicates to the best of his memory, and any review

11   of documents he has to make, that these are the

12   requests that were made and not honored?

13            MS. ARMIJO:  Yes.

14            THE COURT:  All right.  And I know you've

15   got the timeline or deadline.  But now, does that

16   sort of handle substantively the request, Mr. Castle?

17            MR. CASTLE:  I believe it does, Your Honor.

18            THE COURT:  All right.  When could we have

19   these three categories:  One, documents, and then the

20   two representations that would be made largely by Mr.

21   Acee through the U.S. Attorney's Office?

22            MS. ARMIJO:  Well, the documents

23   themselves, I think would be easier, because it's

24   just a matter of copying them.  So maybe on -- I

25   guess, January 1st is a holiday -- maybe January 2.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231

```
 1                THE COURT:  Would that deadline be
 2      acceptable, Mr. Castle?
 3                MR. CASTLE:  Can I turn around and look at
 4      the folks that are going to trial first?
 5                THE COURT:  Can y'all live with that, end
 6      of business on January 2?
 7                MR. CASTLE:  Seeing no hands wagging.
 8                THE COURT:  All right.  So I'll set that
 9      for the deadline for all three of those categories:
10      Documents and the two representations.
11                Ms. Sirignano?
12                MS. SIRIGNANO:  Quick question.  Does that
13      mean it's going to go to Mr. Aoki on the 2nd or does
14      that mean it's going to come to us on the 2nd,
15      because there is some turnaround time we need to take
16      into consideration.
17                MS. ARMIJO:  When I say we give something,
18      we give it to Mr. Aoki.  We don't know what he does,
19      we're not privy to that information.  So when we
20      disclose something, it goes to Mr. Aoki.
21                THE COURT:  What sort of volume are you
22      looking at on this particular production?
23                MS. ARMIJO:  Each informant file, of the
24      official informants is probably, on average, about 25
25      pages or so.  So it's not a great deal.  It's not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4874

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 232

```
 1    like the four boxes that we're going to be disclosing
 2    from a request from the Perez camp.  So it should be
 3    much smaller than that.
 4              THE COURT:  Could we do on this one, given
 5    the squeeze we're beginning to get, because we'll be
 6    swinging within 30 days of the trial, with a January
 7    2 production, could you send one set of materials to
 8    Mr. Castle, and then the rest to Aoki?  And then, Mr.
 9    Castle, if you need to distribute it to some key
10    people, then you can submit the cost of that copying
11    on your CJA voucher.
12              MR. CASTLE:  I will take that on, Your
13    Honor.
14              THE COURT:  Could we do that on this single
15    issue, Ms. Armijo?
16              MS. ARMIJO:  Yes, as long as we're not
17    going to keep doing it, because it's a big burden for
18    our staff to keep producing it to different people.
19              THE COURT:  Well, I'll let y'all promise
20    each other, but I'm not going to be bound by any
21    promises.  So I may have to order something as we get
22    closer to trial.  So if you'll do it on this one,
23    let's take this one and do it on this one, and then I
24    may have to be ordering some different stuff as we
25    get closer.  But I think we have an agreement on this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4875

```
 1    one.
 2              So I'll so order.  Anything else on that
 3    order or that motion, Mr. Castle?
 4              MR. CASTLE:  No, Your Honor.
 5              THE COURT:  Anybody else?
 6              MS. ARMIJO:  Your Honor, just so we're
 7    clear.  These documents should be -- when we send it
 8    to Mr. Aoki, we always make it clear that they are
 9    sealed.  And so this, obviously, would be under the
10    protective order, and we will note that in the letter
11    to Mr. Castle.
12              THE COURT:  Everybody in agreement on that?
13              MR. CASTLE:  Yes, Your Honor.
14              THE COURT:  All right.  I've worked out
15    something with Ms. Armijo and Mr. Castle.  Anybody
16    have any objection to that?
17              Ms. Fox-Young, you're up first, so I'll
18    give you first.
19              MS. FOX-YOUNG:  No objection, Your Honor.
20              I just want to get into a little bit of
21    detail.  The Court heard from Billy Cordova and
22    Special Agent Acee last week about the kinds of
23    promises that Mr. Castle references that might not be
24    written down.  Special Agent Acee told the Court that
25    he -- the Government had promised that Mr. Cordova
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 234

 1   wouldn't be charged in the RICO, as a result of his

 2   cooperation.  I think that's precisely the sort of

 3   benefit that wouldn't be documented.  And I think Ms.

 4   Armijo just said they would submit something that

 5   says that there were no other benefits.  And so I

 6   just ask the Court if the Court might order, when

 7   Special Agent Acee goes through and looks at requests

 8   that were made and not honored, that he also document

 9   those types of benefits that have been afforded.

10           Thank you, Judge.

11           THE COURT:  All right.  Do you understand,

12   Mr. Acee, and I'm speaking through Ms. Armijo, that's

13   the kind of stuff you need to be thinking of?

14           MR. ACEE:  Yes, Your Honor.

15           THE COURT:  Is that agreeable, Ms. Armijo?

16           MS. ARMIJO:  Yes, Your Honor.

17           THE COURT:  All right.  Mr. Lowry.

18           MR. LOWRY:  Yes, Your Honor.  Just briefly.

19   Just to follow-up on what Ms. Fox-Young said.  There

20   were benefits -- and I just want to make sure we're

21   clear with the Government and Mr. Acee -- that we

22   know that Eric Duran worked in other jurisdictions.

23   And I believe in our Brady-Giglio motion we had

24   defined the benefits that any cooperating witness

25   would receive, could run from any manner of federal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4877

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 235

1    departments.  So we just want to make sure the

2    financial benefits from other jurisdictions of the

3    Department of Justice are included in the disclosure

4    as other types of benefits, like securing dismissals

5    of traffic tickets, criminal cases, that kind of

6    thin.  I mean, we're of the mind that Mr. Duran has

7    been the beneficiary of a number of interventions on

8    his behalf with regard to those types of things.  And

9    we haven't had any disclosure that I can lay my

10   fingers on.  So if this would be included as well, it

11   would be much appreciated.

12          THE COURT:  All right.  And you're

13   listening to this, Mr. Acee?

14          MR. ACEE:  Yes, sir.

15          THE COURT:  And, Ms. Armijo, are you

16   agreeable to directing Mr. Acee to include that sort

17   of category in the information he's going to provide?

18          MS. ARMIJO:  And just so that we're clear,

19   if there is documentation as to things, he's not

20   including it.  What we're looking for specifically is

21   things that are not documented?

22          THE COURT:  Yes.

23          MS. ARMIJO:  Yes, Your Honor.

24          THE COURT:  Everybody in agreement how

25   we're going to handle Mr. Castle's motion?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4878

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 236

```
 1              All right.  The next motion is a motion for
 2    advanced notice of witnesses to be called by the
 3    Government.  Again, this was one that Mr. Castle and
 4    Mr. Cooper didn't ask for a hearing on, but I thought
 5    it would make sense for us to talk about it, because
 6    it's hard for me to probably work out something with
 7    everybody, if I'm just sitting in my chambers doing
 8    an order.
 9              So here's my thoughts.  Let me give you my
10    thoughts, and then see if we can hammer out something
11    that works.  I probably am not inclined to tell the
12    Government how far in advance to disclose their
13    witnesses.  I realize that some of you have
14    indicated, persuasively, that that's going to require
15    you to probably have experts sitting around listening
16    to testimony longer than what would be the case if
17    the Government would give advance notice.  So I have
18    a couple of thoughts on this issue.  One, in a trial
19    like this -- and I did them as a lawyer, I've done
20    them as a judge -- it's hard for us to get through
21    this thing if we don't cooperate a little bit.  It's
22    one thing for me to order something.  It's another
23    thing, we just try to cooperate.  What I typically
24    see, and what I typically did when I was practicing,
25    as everybody at the end of the day, tell people who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4879

```
 1    their witnesses are going to be for the next day.
 2    And that is generally a gentlemen's and gentleladies'
 3    way of trying to make a trial bearable for everybody
 4    involved, so they have some anticipation of what is
 5    going to occur the next day.  It would be nice -- I'm
 6    speaking now to the Government's table -- it would be
 7    nice to see if we could have a little bit more
 8    advance knowledge on people where the experts are
 9    going to be involved.  And that's because I have an
10    interest, and the Government and us all as taxpayers
11    have an interest in not having experts sitting around
12    any more than is going to be necessary.
13            So I was going to propose this:  Without
14    ordering the Government to give advance warning, see
15    if they would be willing to give some advance
16    knowledge of -- notice of when they're going to call
17    somebody.  And then, with the expert witnesses, if
18    the defendants could send the Government a letter,
19    and say, All right, we're going to want our experts
20    here for these witnesses.  And if the Government
21    could try to tell the defendants to the best of their
22    knowledge when that limited universe -- if you put
23    every witness on there, this isn't going to work, but
24    if you tell the Government that these three or four,
25    however many witnesses, we're going to have experts
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4880

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4881

```
 1   here, can you tell us in advance, to the best of your
 2   knowledge, when, at least within some range, those
 3   experts, those witnesses are going to be there, it
 4   might help us not have experts here all the time,
 5   make sure the experts are here when they're supposed
 6   to be, and try to save taxpayers some dollars.
 7            So I think I know -- well, Mr. Castle, it's
 8   your motion.  What do you think about the proposal
 9   I'm putting on the table?  You may have some
10   fine-tuning to that.  But, you know, everybody that's
11   experienced a long trial like we're about to have,
12   knows at some point we've got to work together to get
13   through this thing.  And this was the way I was
14   thinking about handling your motion.
15            MR. CASTLE:  Well, the Government is right.
16   There are no rules requiring anything.  And so,
17   frankly, this is completely within the Court's
18   discretion, so we'll take whatever we can get.
19            I would analogize to exhibits.  I mean,
20   there is no rule that requires the parties to, in
21   advance of trial, try to give a good faith list of
22   our exhibits.  But the Court knows that that's --
23            THE COURT:  I'm probably going to lean on
24   people on exhibits.
25            MR. CASTLE:  Right, right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4882

```
 1              THE COURT:  Otherwise, it just gets
 2   unwieldy to get through one of these things.
 3              MR. CASTLE:  And it's along those lines
 4   that I made this request.  I mean, I think there is
 5   the issue of experts, which is one, but I think there
 6   is an issue of what crime base are you going to be
 7   dealing with for a while?  I mean, I have seen this
 8   group of prosecutors.  They're going to be organized.
 9   They're not going to be sprinkling in, you know, one
10   crime base witnesses with another crime base
11   witnesses.
12              THE COURT:  Well, in fact, if you look at
13   the motions, what I understand them to be
14   requesting -- and I'm favorable to this motion,
15   although I want to hear what the defendants say -- I
16   think what they're saying, they want to take these
17   things in categories, they want to put Mr. Acee on
18   the stand, knock out some testimony, and some other
19   witnesses.  And then they may want to bring Mr. Acee
20   back, let him do it again.  I'm inclined to allow
21   that, because I think it will help the defendants
22   compartmentalize the parts of this trial.  And I
23   really think they're allowed to do that anyway.  So,
24   if we have sort of an agreement on that aspect, it
25   may help the Government be more helpful on your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4882

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4883

```
 1   request.
 2              MR. CASTLE:  I wasn't responding to that
 3   motion, but it seems reasonable to me, because I
 4   think the only way to logically explain this to a
 5   jury -- and frankly, I'd love it if they were
 6   illogical with the jury -- but I don't think they're
 7   going to be that way.  I think they're going to
 8   produce evidence concerning certain counts that are
 9   related.  Then we'll do the next counts and proceed
10   in that fashion.  Obviously, there is going to be
11   some enterprise evidence that they're going to put on
12   generally.  So I would ask for that because, in our
13   trial, which is trial number 2, if they put on Counts
14   1 and 2 first, and then, for the next eight weeks
15   they're going to be focusing on evidence that doesn't
16   relate to Counts 1 and 2, I'm telling -- well, Mr.
17   Cooper and I are going to tell the rest of our staff
18   to go home, and not charge the federal government.
19              And so there is a practical need for it.
20   But I think it's a practical need that goes both
21   ways.  Because I think that what the defense would do
22   when we were told in advance what witnesses are going
23   to be called, my guess is they're going to ask:  How
24   long do you think cross-examination is going to take?
25   And if both sides play close to the vest with their
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4883

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

```
 1   cards, as far as the order in which witnesses are
 2   going to be called, it's going to be utter chaos.
 3   Nobody can plan anything.  They're not going to know
 4   if we're going on for three days with a particular
 5   witness or expert, and that will put their schedules
 6   off.
 7            And I do understand what the Court is
 8   saying:  Let's try to be collegial about this.  And I
 9   really hope we can be on that.  My goal, in filing
10   this motion, was to hopefully get the Court to make
11   some orders, so we all knew what that situation --
12   how we're going to operate here.
13            So I think the Court had indicated both,
14   you know, the experts, and hopefully the night
15   before -- but I would hope also what crime base we're
16   going to be dealing with as a general concern.
17            And frankly, Judge, the only reason not to
18   do this, not to tell the other side what witnesses
19   you're going to call is tactical gamesmanship, to try
20   to get an advantage on the other side.  I'm not sure
21   that's what we're after here, as far as fairness.
22            And the final thing I would note, is the
23   prosecution asked for any rules to be for both sides.
24   And I would agree to that.  I mean, I think we have
25   to tell them what witnesses -- we're going to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242

1    telling each other, we're going to be tripping over

2    each other, the different defense teams.  So I think

3    that's fair, if we could operate in that fashion.

4           THE COURT:  All right.  Thank you, Mr.

5    Castle.

6           Any other defendant want to speak to this

7    issue?

8           All right.  Ms. Armijo, what will you give

9    us?

10          MS. ARMIJO:  Your Honor, I think that that

11   is reasonable, as long as the defense -- we certainly

12   can do it the night before, because I know that in

13   long trials that's what we routinely do.  And we

14   certainly can help out with longer term things, as

15   long as we have who it is that they're interested in,

16   knowing that there might be some wiggle room.

17          I would add one caveat to that.  I would

18   ask that the information as to the witnesses the next

19   day, as it pertain to cooperators, not be relayed to

20   the defendants.

21          THE COURT:  Let me ask the defense lawyers:

22   Could you live with that; that if -- whether it's the

23   night before, or in advance, that the Government,

24   when they're going to put witnesses on, not be

25   conveyed to the defendants themselves?  Live with

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                       201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                    1-800-669-9492
                                            e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4885

```
 1    that, Mr. Castle?
 2              MR. CASTLE:  Yes, Your Honor.
 3              THE COURT:  All right.  Anybody that can't
 4    live with that?  So I think the more people can live
 5    with that, the more the Government is going to feel
 6    more comfortable, if it's attorneys' ears information
 7    only, or attorneys' eyes, they're going to be more
 8    comfortable about sharing strategy in advance.
 9              Mr. Maynard?
10              MR. MAYNARD:  Yes, Your Honor.  I'm just
11    not sure -- I mean, I can anticipate I may have a
12    need, on the spur of the moment, because a certain
13    witness is coming up the next day, and is one of the
14    informants or cooperators, and I may want to talk to
15    my client about it.
16              THE COURT:  Well, if you can't, then I'm
17    not going to probably order the defendants -- the
18    Government to disclose anything.  So if you're going
19    to take that position, you're probably not going to
20    get information the day before.
21              MR. MAYNARD:  Well, if it puts me in a
22    bind, I would rather have the information, even if I
23    can't share it with my client than to not have it at
24    all.
25              THE COURT:  Well, you've got to pick your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 244

```
 1    side here.
 2              MR. MAYNARD:  Obviously --
 3              THE COURT:  Tell the Government what you're
 4    going to do.
 5              MR. MAYNARD:  Well, I'll have to keep it
 6    from my client.
 7              THE COURT:  Okay.
 8              MR. MAYNARD:  I mean, I don't like it, but
 9    if that's going to be the rule, I have to accept it.
10              THE COURT:  All right.
11              Anything you want to add, Mr. Cooper?  Ms.
12    Sirignano?
13              MR. COOPER:  No, Your Honor.  Thank you.
14              THE COURT:  Anything, Ms. Sirignano?
15              MS. SIRIGNANO:  Your Honor, I'm happy with
16    this agreement, I'm not objecting to it.
17              I think part of our anxiety on the defense
18    is that the Government's witness list right now is
19    280-plus --
20              THE COURT:  We're going to talk about that.
21    I know it's an issue and a problem, and we'll -- I
22    can't guarantee a solution.  But we're going to work
23    on it.
24              MS. SIRIGNANO:  Thank you, Judge.
25              THE COURT:  All right.  So the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 245888

```
 1   has an assurance from the defense counsel that if you
 2   will disclose witnesses in advance, they will not
 3   disclose it to the defendants.
 4            So let me ask this:  Let me see if I can
 5   push the Government a little bit to try to help the
 6   defendants get ready for this.  And this is just an
 7   idea.  I -- and again, we might need to work on it.
 8   But would the Government be willing to give the
 9   defendants, at some point, a rough outline of how
10   you're going to try the case?  And I don't mean by
11   that, paragraph 1A, little 1, little 2, telling them
12   step by step.  But would you be willing to give them
13   a big outline of, you know, this week is going to be
14   enterprise, this week is going to be Counts X and X,
15   so they have some sense of where the witnesses are
16   likely to show up, so that Mr. Castle and Mr. Cooper
17   can do -- and the other lawyers can do -- kind of
18   send their staff home, and go on airplane mode for a
19   little bit?  Can something like that be provided?
20   And I'm not trying to pin down time.  I'm not trying
21   to talk about the detail of it.  Could we get
22   something like that?
23            MS. ARMIJO:  Yes, Your Honor.  I think we
24   could do that before the trial starts.  It's not
25   something that would be generated immediately.  But
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   we could certainly do that.  And again, with the

2   caveat that -- for instance, as a hypothetical, if we

3   can say we want to have evidence on the Javier Molina

4   murder during these days, well, then, they're going

5   to anticipate Mr. Cordova coming in on those dates.

6   And so we would again request that that specific

7   information not be shared for safety concerns,

8   because I think the marshals have their hands full

9   right now.  And so we would agree to do that in

10  general terms.

11          THE COURT:  All right.  If the Government

12  is willing to do that, put out a general outline of

13  when the boxes they're going to have -- and that's

14  the way I'm thinking of it, so I hope this is helpful

15  to somebody -- boxes of how they're going to do the

16  trial, without filling it all in, would again, the

17  defense lawyers again agree to not disclose that

18  general trial outline to clients?  Mr. Castle, could

19  you agree?

20          MR. CASTLE:  I agree, Your Honor.

21          THE COURT:  Is there anybody that would not

22  agree?

23          All right.  Let's see if we can push a

24  little further on the experts.  What do you think

25  about my idea of the defendants' -- and it's not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4889

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 247

```
 1   going to work if everybody says, okay, you know, I
 2   need to know on all 210 witnesses -- but if you can
 3   identify some key witnesses that your expert has got
 4   to be here for, could you send a letter to the
 5   Government, and perhaps, we get an agreement from the
 6   Government that the Government would try to identify
 7   those people as soon as possible as to where
 8   generally they're going to try to call those
 9   witnesses, so you could have your experts here?
10   Maybe everybody sort of discipline themselves --
11   we've got five defendants; maybe everybody limit
12   themselves to three witnesses or something that
13   they're going to tell the Government, could you tell
14   us where -- and that will be about 15 witnesses --
15   could you tell us generally where they're going to
16   be, and try to keep us informed as the trial goes
17   along?  What do you think about that idea, Mr.
18   Castle?  I think this is more -- maybe Ms. Sirignano
19   was the one that talked a lot about the experts.  It
20   may not have been so much your concern.  But what do
21   you think?
22             MR. CASTLE:  That seems to be a reasonable
23   accommodation.  The only other thing I would note is,
24   I'm not sure whether the Court is contemplating
25   allowing some experts to perhaps call in and listen
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4890

 1   to the testimony, if they can't make it here?  I

 2   don't know if we filed that, or there has been a

 3   motion on that, or whether it's been covered by the

 4   pretrial.

 5           THE COURT:  I'm agreeable to that.  We'll

 6   see what the Government says here in a minute.  But

 7   rather than having the defendants sit back there,

 8   have it on here, and they can listen to it.  I'd ask

 9   the experts to -- assuming nobody tells me that

10   that's broadcasting, so it violates the Chief

11   Justice's order against broadcasting -- if I can have

12   an agreement from the experts that they're not going

13   to be sitting there recording it, or putting it on

14   the internet, or something like that, and get me in

15   trouble.  But assuming nobody telling me that that's

16   a problem, I'm receptive to that.  And it doesn't

17   seem to me a great deal different than somebody

18   sitting back behind Ms. Sirignano for two or three

19   days, and somebody sitting here and doing that.

20           (A discussion was held off the record.)

21           THE COURT:  Ms. Sirignano, it sounds like

22   Mr. Castle is sort of in agreement with that.  What

23   do you think?

24           MS. SIRIGNANO:  In agreement, Your Honor.

25           My only request would be that we get that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 249

```
 1    letter from the Government -- I'm happy to write that
 2    letter over the next couple of days.  I've got three
 3    experts that travel nationwide and internationally,
 4    and so it's very important for our defense to make
 5    sure that they're available during the time that we
 6    need them here.  And so my request would only be that
 7    we work with each other to narrow that timeframe
 8    down, so we have continuity of the testimony.  And
 9    not for just us to call our witnesses, but for them
10    to be here when the Government witnesses are present.
11            And if the phone, if that's something that
12    you'd agreed to with the phone, that possibly could
13    work, so long as they're not testifying in another
14    proceeding, Your Honor.
15            THE COURT:  All right.  Let's do this:
16    I've got to give Ms. Bean a break.  Let me take a
17    short break, and take about a 15-minute break and
18    we'll come back in, and see if we can hammer this
19    out.
20            During the break, I'd like all the defense
21    lawyers to take a look at my opinion in Vigil, and
22    the Government to look at it, too.  I haven't had a
23    chance to study it, but I'd like to pick that up next
24    on the plea agreements.  I'd like to go to that
25    motion.  It's always nice if I do something
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4892

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 250 4893

1    consistent in this case with what I did in another

2    case.  But it's not essential.

3           So if that answered all your questions, I

4    remember working on that.  But I think we can

5    probably hammer out a compromise on what we're going

6    to do with plea agreements and addendums.  So we'll

7    be back in 15 minutes.

8           (The Court stood in recess.)

9           THE COURT:  All right.  We'll go back on

10   the record.  It looks like every defendant has an

11   attorney.  Make sure we look around, help your

12   co-defendants out.

13          All right.  Are you on the phone, Ms. Wild?

14   Ms. Wild, do you have your mute button on?  Ms. Wild

15   was expressing some concern to Ms. Standridge about

16   the experts being in the back.  And I was going to

17   tell her that I think what she's concerned about is

18   that the AO has a policy, as you know, when we do

19   and -- because of the size of these courtrooms --

20   when we do voir dire, we often use a microphone to

21   amplify, particularly the jurors' voices.  I think

22   the AO allows that.  But once the trial begins, I

23   think because of the frequency the microphones are

24   on, they don't allow those to be on.  I don't think

25   that applies to telephones.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4893

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 251

1          Is she is on now?  Ms. Wild, are you on the

2    phone?  Ms. Wild, are you on the phone?

3          THE CLERK:  Yes, sir.

4          THE COURT:  I was telling them that you had

5    some concerns about having the experts on the

6    telephone listening.  But I was wondering if what you

7    were thinking about was that my memory is that the AO

8    had a policy that when we use the microphones in voir

9    dire, that it was okay to use them then, but once the

10   trial started, i.e., the jurors raise their hand and

11   are sworn in, for double jeopardy purposes, that we

12   had to cut the microphones off because of the

13   frequency could be picked up outside of the

14   courtroom.  Is that what you were thinking of?

15         THE CLERK:  It may be.  I'm looking in my

16   file right now.  Hold on.  Yes, there is.  We did get

17   an AO policy about the wireless microphone security

18   concern.

19         THE COURT:  I'm not seeing anything -- any

20   problem with experts listening in -- not testifying,

21   but listening in to testimony.  Are you thinking of

22   something that I'm not thinking of?

23         THE CLERK:  Potentially.

24         MR. CASTLE:  Judge, I might be able to

25   short-circuit this.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4894

```
 1              THE CLERK:  Do you want to discuss it now?
 2              THE COURT:  Well, is it something you need
 3    to discuss with me?
 4              THE CLERK:  I think we better talk.
 5              THE COURT:  Hold on, Mr. Castle.  Let me
 6    see what Ms. Wild is thinking of.  Hold on.
 7              (A discussion was held off the record.)
 8              THE COURT:  Well, let me think about Ms.
 9    Sirignano's request -- or maybe it was Mr. Castle's
10    request -- of having a line open.  I guess, if I
11    could figure out a way, you know, how during these
12    hearings, people are bouncing on and off, and I don't
13    have time to get a clear record of who is on and who
14    is off -- if I just have an open phone, I don't have
15    a lot of control who can call in and participate.  So
16    if we can figure out some solution to that, maybe
17    it's doable.  But it might create some problems if I
18    just got an open phone line and people calling in and
19    out on our "meet me" conference line.
20              MR. CASTLE:  I think we have a solution,
21    Judge.
22              THE COURT:  Okay.
23              MR. CASTLE:  Some of the attorneys for the
24    defense have requested daily transcript.  And I think
25    that's up with the budgeting attorney.  And I was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4895

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253

```
1    just talking to --

2              THE COURT:  Has Carey approved that?

3              MR. CASTLE:  I think it's pending for her.

4    But our experts are not going to be looking to see

5    the demeanor of another expert, they are listening

6    for content.  You can get content from a transcript

7    so I think at this point in time, we're not making a

8    request for them to be able to call in.  I think, if

9    we get rejected the idea of daily transcript, then we

10   might reraise it.  But I think that might be a very

11   efficient way and less costly way to deal with the

12   expert who is not appearing.

13             THE COURT:  Well, I don't want to look a

14   stipulation or a gift horse in the mouth.  But if I

15   understood what Mr. Sirignano saying, she was talking

16   about having her expert here for some fact witnesses.

17   Am I wrong?

18             MS. SIRIGNANO:  Probably not, Your Honor.

19   It would be in -- to consider the Government's

20   experts.

21             THE COURT:  All right.  Maybe that solves

22   it.  I thought Ms. Waters had approved the dailies

23   for the trial.  But maybe I'm ahead of the game.

24   So --

25             MS. SIRIGNANO:  Mr. Villa had made that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4896

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254

```
 1   request, I believe.  And I think some of us wanted
 2   dailies, and some of us wanted real-time during the
 3   hearings.  And I believe Your Honor has the real-time
 4   as well during trial; is that correct?
 5              THE COURT:  I have real-time.
 6              MS. SIRIGNANO:  Yes.  So Mr. --
 7              THE COURT:  I have real-time all the time.
 8              MR. CASTLE:  Are you on airplane mode, Your
 9   Honor?
10              MS. SIRIGNANO:  I think there is discussion
11   about real-time and daily transcripts.
12              THE COURT:  My knowledge is that I have not
13   seen a request for real-time from anybody.  But I
14   thought I had approved, or Ms. Waters had approved
15   the request for daily.  So that's where I am on -- as
16   far as my memory is concerned.
17              MS. SIRIGNANO:  Your Honor, would it be
18   possible to get the real-time?
19              THE COURT:  Well, why don't y'all talk
20   to --
21              MS. SIRIGNANO:  Ms. Waters.
22              THE COURT:  -- Ms. Waters, and we'll go
23   from there.
24              MS. SIRIGNANO:  Will do, Your Honor.  Thank
25   you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4897

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255898

```
1          THE COURT:  All right.  Before I hear from
2    you, Mr. Castellano, is what I have sort of hammered
3    out with at least on the defense side, agreeable to
4    everybody?  I can put in this, as can you tell, I'm
5    not ordering the Government to do any of this.  But
6    it's going to be a gentlemen's and gentleladies'
7    agreement, and once we agree, I consider that a
8    stipulation.  I will enforce it.
9          Does everybody see the difference?  I do,
10   but nobody else does.  Just like any other
11   stipulation.  I mean, once it's there, I agree.  But
12   I'm not going to -- you know, we're a little bit at
13   the mercy of the Government here, because I'm
14   probably not going to order them to do much as far as
15   disclosure.  Does everybody agree with this?  Because
16   you're agreeing not to share some stuff with your
17   clients.  And I'll enforce that with my powers, if
18   everybody agrees.
19          MR. BLACKBURN:  Judge, what does the
20   real-time cost?
21          THE COURT:  Well, I don't know.
22          MR. BLACKBURN:  I mean, I thought that you
23   can get it, we just flip a switch and it comes over
24   here, too.
25          THE COURT:  No, she's shaking her head.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4898

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 256

```
 1              MR. BLACKBURN:  Besides the add-on cost for
 2    you, I mean, I thought it was --
 3              THE COURT:  It's a big deal to make it
 4    available for clients, for parties.  Certainly, in
 5    these big civil cases that I have, and stuff, where
 6    costs are not apparently a problem, they pay for it,
 7    and want it.  But it's not routine in any case
 8    because the costs are significant.
 9              MR. BLACKBURN:  I'll talk to Ms. Bean about
10    it.
11              THE COURT:  But it's different than what
12    I've got up here.
13              All right.  Anybody else on the defense
14    side?  Everybody can live with what we've hammered
15    out?
16              All right.  Let's see what Mr. Castellano
17    says.
18              MR. CASTELLANO:  Based on what's been
19    stated, Your Honor, it may not come to this.  My only
20    concern about having experts on the phone would be
21    that, if it does come to that, that we identify the
22    experts before the jury comes in, otherwise, the jury
23    is going to hear a bunch of names about experts and
24    who they may be tied to or what they may be an expert
25    in.  So I would just say, to the greatest extent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4899

```
 1   possible, that we identify those people before the
 2   jury comes so they don't hear extraneous information.
 3   Typically, when experts are in the courtroom they sit
 4   in the back and no one gets to hear from them unless
 5   they become witnesses.
 6            THE COURT:  What is the difference from
 7   your standpoint?  I agree with you, it sounds like
 8   we're going to try and avoid having experts on the
 9   telephone.  What is your concern, if they're sitting
10   there quietly, how is that different than being in
11   the back behind Mr. Maynard?
12            MR. CASTELLANO:  I see it as the same, but
13   typically, when they sit in the back, no one
14   identifies them or why they're in court.  They're
15   only to give information and aid the defense, they
16   may not be there to actually testify.  But the jury
17   hears some expert on some subject matter that person
18   never identified, speaking about someone outside in
19   the ozone.  That's just information the jury doesn't
20   need to know, unless and until that witness becomes
21   relevant to the proceedings.
22            THE COURT:  Let's do this:  Unless somebody
23   comes back and reraises the issue, we will not have
24   an open telephone line with experts calling in on
25   "meet me" conference line.  I won't deal with that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4900

 1   problem or work with that problem.  If the defendants

 2   want to reraise it, and think it's a solution, for

 3   example, you don't get approval on dailies, or

 4   something like that, then you can reapproach it.  But

 5   we'll take that issue off the table.

 6          Now, can the Government live with

 7   everything that I've sort of hammered out?  Does that

 8   give you the assurance to try to disclose some

 9   information, any fine-tuning you want to do to the

10   agreement?

11          MR. CASTELLANO:  I think that works fine,

12   Your Honor.

13          THE COURT:  And you understand my

14   distinction that I'm not going to order you to do it?

15   But once we agree to it here, I will enforce it with

16   whatever powers I have.

17          MR. CASTELLANO:  Yes, sir.  That's

18   understood.

19          THE COURT:  All right.  Mr. Castle, then,

20   is there anything else on your motion that you think

21   I can do, or should do, or any other issues?

22          MR. CASTLE:  No, Your Honor.

23          THE COURT:  All right.  So I will probably

24   not be granting that motion.  But we've worked out

25   something that will try to help us get through the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
                                                           e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4901

```
 1    trial.

 2            All right.  The next issue is Document

 3    1502, which is the motion in limine regarding plea

 4    agreements and addenda.  I've not had a chance to

 5    look at my Vigil opinion that was the subject of the

 6    briefing.  So, if anybody tells me I'm about to be

 7    inconsistent here, please do.  My memory was that I

 8    didn't make a flat ruling on anything on that.  But

 9    correct me if I'm wrong.  I guess my impression of

10    the plea agreements and addenda in this case is they

11    probably shouldn't come in, just whole hog, in the

12    sense that they'd just be admitted into evidence.  It

13    seems to me they probably contain some hearsay, some

14    out of court statements being offered for the truth

15    of the matter, particularly, the defendant or

16    cooperators' statements of what occurred.  That

17    probably needs to come in through the witness being

18    here and under oath and subject to cross-examination.

19            On the other hand, it is a contract, and

20    contracts do often come in for purposes of:  There is

21    a contract.  And it is not so important that the

22    terms be truthful.  It's the fact that the parties

23    reached a contract.  So I guess I'm wondering what we

24    can maybe agree to that should come in.  It seemed to

25    me in the reply that I read today, came in over the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4902

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 260 of 4903

 1    weekend, maybe offered us perhaps a starting point

 2    that the defendants were suggesting what they could

 3    live with is -- that I'm not sure I'm going to go the

 4    Old Chief way, in the sense that, because the

 5    defendants are willing to stipulate, that the

 6    Government doesn't get to put in, maybe a redacted

 7    plea agreement.  But I'll listen to that.

 8            But it does seem to me that probably what

 9    ought to come in is going to be -- is going to be the

10    charges to which the informant pled, the sentencing

11    concessions, that section of the plea agreement,

12    whatever the informant has to do to secure those

13    concessions, which may be that he has to cooperate,

14    he or she has to cooperate, and testify truthfully,

15    and those sort of things.  But that might be the

16    limit of what ought to come in.

17            Let me turn to you, Mr. Castle, Mr. Cooper,

18    since it's your motion.  I know you don't like the

19    idea of a redacted plea agreement coming in.  But it

20    seems to me that it's a contract, so some of the

21    terms probably are not hearsay.  They're more in the

22    terms of this is what occurred, and the exchange of

23    those problems.  Could you live with that redacted

24    plea agreement?

25            MR. CASTLE:  Well, I actually attached a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 261

```
 1    copy of a plea agreement redacted, anticipated where
 2    the Court might go, given its ruling in Vigil.
 3              THE COURT:  Tell me -- refresh my memory
 4    what I did in Vigil.
 5              MR. CASTLE:  Well, Vigil, the Court allowed
 6    the plea agreements in.  But they were different
 7    kinds of plea agreements.  So one of them had no
 8    recitation of the facts, another one had recitation
 9    of the facts in which they implicated that weren't on
10    trial.  So there wasn't the same issues, and the
11    Court didn't address confrontation at all.
12              Another argument that I thought of today,
13    flying to court, is that these witnesses are going to
14    be questioned what their agreement is.  And then what
15    the Government wants to do is put the actual written
16    agreement in to support what the agreement was.  And
17    when they do that, they're essentially -- it's a
18    prior consistent statement, but it really becomes
19    testimony by the informant in written form that the
20    jury takes back to the jury room.
21              THE COURT:  Well, if we keep out the
22    statement of the facts, their version of events, tell
23    me -- I certainly understand that -- what else in the
24    agreement are you concerned about?
25              MR. CASTLE:  Well, there is a portion of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     the agreement where the Government indicates that

2     they believe that the -- or they're asserting the

3     defendant has clearly demonstrated --

4              THE COURT:  Tell me what page you're on.

5              MR. CASTLE:  Of the plea agreement, or --

6              THE COURT:  Yes, the plea agreement.

7              MR. CASTLE:  It would be page 5, paragraph

8     10.  Unfortunately, that might be redacted on the

9     Court's copy, because I suggested a redaction.  But

10    what it says is, "The defendants clearly demonstrate

11    the recognition of affirmative acceptance of personal

12    responsibilities for the defendant's criminal

13    conduct."  That sentence, I believe, is an assertion

14    that both the United States and the defendant are

15    making, because --

16             THE COURT:  I'm looking at page 5.  But I'm

17    still not seeing it.  Point to me where it is on page

18    5.

19             MR. CASTLE:  It's paragraph 10.

20             THE COURT:  Okay.  Oh, okay.

21             MR. CASTLE:  It's that first sentence, that

22    I believe is an assertion that both defendants and

23    the United States are making.

24             THE COURT:  Do you want that sentence out?

25             MR. CASTLE:  Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4905

```
 1                THE COURT:  All right.  So you want that
 2    out.  You probably want 8 out, or at least the
 3    statement of the facts there out?
 4                MR. CASTLE:  Yes.
 5                THE COURT:  What else are you worried
 6    about?
 7                MR. CASTLE:  On page 3 of the plea
 8    agreement, there is an indication of -- may I have a
 9    moment?  I'm floating between two documents here.
10                THE COURT:  Are you thinking the sentencing
11    stuff ought to come out?
12                MR. CASTLE:  No, I think the sentencing
13    information is relevant.  But at the beginning of --
14    on page 3, paragraph 7D talks about the Court's role
15    in accepting or not accepting the plea agreement.
16    And I believe that that is going to be problematic,
17    because it almost indicates that in that situation --
18                THE COURT:  That's the 801(d)(2)(A)
19    problem?
20                MR. CASTLE:  Yes, exactly.  And it's also
21    vouching.  Because the agreement, obviously, was
22    already accepted.  So it indicates there that the
23    Court --
24                THE COURT:  Well, it's really not, because
25    they pled before a magistrate, they've accepted the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4906

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 264907

1    plea but not the plea agreement.

2           MR. CASTLE:  I understand.  But the jury is

3    not going to know that.  So the jury is not going to

4    be steeped in that.  What I am concerned about is

5    that they'll look at that, and they'll see the date

6    of the agreement.  And there has been no rejection by

7    the Court; that to be interpreted as the Court's

8    approval of the plea agreement, and instead of having

9    us do cross-examination, have to go through a number

10   of hoops to say the Court hasn't agreed to it, where

11   the jury is going to be looking at Your Honor, and

12   wondering whether Your Honor has or hasn't, and

13   expecting the Court to say I've either accepted it or

14   haven't accepted it.  Why do we need to put that in

15   here, when it can possibly be interpreted as -- even

16   if the parties don't invoke the imprimatur of the

17   Court, it has that appearance.

18          THE COURT:  All right.  What else?

19          MR. CASTLE:  The only other aspect is I

20   believe we were objecting to the counsel for the

21   attestation, or I'm not sure what the word would be,

22   but the agreement on page at the end of the plea

23   agreement, the attestation on page 9 of the attorney

24   for the particular defendant witness.

25          THE COURT:  Tell me what the problem with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4907

1   that is.

2           MR. CASTLE:  Well, it's his statement.

3   He's not testifying.  And it's obviously a

4   testimonial statement that was made, it's a solemn

5   declaration.

6           THE COURT:  So just take out the Gary

7   Mitchell here, his signature block, and paragraph to

8   which he attests?

9           MR. CASTLE:  Yes.

10           THE COURT:  What else?

11           MR. CASTLE:  That's it, Your Honor.  If the

12   Court doesn't buy my argument about the kind of being

13   super testimony, to just explain in a little more

14   detail.

15           THE COURT:  Isn't what's going to happen is

16   you guys are going to impeach these guys with the

17   fact they've got a plea agreement?  So probably

18   what's going to happen is the Government is going to

19   go first, and they're going to do most of the heavy

20   lifting for you, or because of you.  And so they're

21   going to go into detail on this.

22           It's not -- this is me talking, you're the

23   defense lawyer -- but it's not a lot of vouching,

24   because it's coming in at the same time that they're

25   talking about it.  It's not like they're going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   talk about it and then come back and support it with

2   the plea agreement.  It's all coming in at the same

3   time.  Here's the deal you got.  Do you see much harm

4   with that?

5           MR. CASTLE:  I don't see a lot.

6           THE COURT:  Let me ask -- I haven't talked

7   to the Government at all here -- but if they can live

8   with these -- excising these portions of the plea

9   agreement and the addendums, can everybody live with

10  this, this much will come in, as a contract?  Ms.

11  Duncan?

12          MS. DUNCAN:  Your Honor, I have one other

13  paragraph I'd like to suggest for redaction, and that

14  would be on page of 6, paragraph 12.  "The defendant

15  stipulates that he does not possess any exculpatory

16  information regarding any of his charged

17  co-defendants."  That's really a legal conclusion.

18  And I don't think that that should be put in front of

19  the jury.

20          THE COURT:  Okay.  Anybody else?  You could

21  live with these redactions that we've talked to Mr.

22  Castle and Ms. Duncan about?

23          MR. BENJAMIN:  Your Honor, it's not so much

24  a redaction, as it was a confusion that happens, when

25  the Government listed the plea agreements that they

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492
                                                          e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4909

```
 1   were going to use.  And I was just going to -- I
 2   guess we would object to any plea agreements as the
 3   nontestifying defendants that have pled that are not
 4   going to come in.  The one specifically I'm thinking
 5   of was Santos Gonzalez, because he was on a list --
 6   part of what happened when I was not here and Mr.
 7   Sindel was covering -- but I understand he was on a
 8   list of people they're intending on using.  And he
 9   relates to Mr. Gallegos.  It's just something I want
10   to raise with the Court.
11           THE COURT:  I'm sorry, I'm not tracking
12   here.  This would be a witness that is not
13   testifying, but they're bringing in his plea
14   agreement?
15           MR. BENJAMIN:  His name was involved in
16   that.  I don't know if that's been rectified or not.
17   But that's a concern, yes, Your Honor.
18           THE COURT:  Of course, you can certainly
19   impeach somebody that's not here, if in another way
20   they're testifying in the court.  Is he going to be
21   testifying in some way --
22           MR. BENJAMIN:  No.
23           THE COURT:  -- somehow that doesn't involve
24   him being in court?
25           MR. BENJAMIN:  No, Your Honor.  He's, my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4910

```
 1   understanding, out.

 2             THE COURT:  Remind me who he is?

 3             MR. BENJAMIN:  Santos Gonzalez, Ms. Erlinda

 4   Johnson's client.

 5             THE COURT:  All right.  Anybody else got

 6   any candidates for redactions?  Can you live with

 7   this, if the Government can live with it?

 8             All right.  Mr. Castellano?

 9             MR. CASTELLANO:  Your Honor, I just wanted

10   to address the plea agreement regarding Santos

11   Gonzalez.  He's not testifying.  And I admitted all

12   the plea agreements in this case for purposes of the

13   James hearing, so that's for a different

14   consideration before the Court, not for trial

15   testimony.  That included Conrad Villegas and Santos

16   Gonzalez, who are both not witnesses.  It's for a

17   different determination before the Court.

18             MR. BENJAMIN:  And, Your Honor, I

19   apologize.  I was just nervous.

20             THE COURT:  Well, but those portions of the

21   plea agreement, you would not be -- correct me if I'm

22   wrong -- you would not try to be bringing those in as

23   an out-of-court statement under the co-conspirator

24   exception, am I correct?

25             MR. CASTELLANO:  That's correct, for trial
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4911

1    purposes.  For purposes of the James hearing, we have

2    to establish the existence of a conspiracy.

3            THE COURT:  All right.

4            MR. CASTELLANO:  So it's to meet other

5    elements related to James.

6            THE COURT:  All right.  Okay.  So does that

7    give you some comfort, Mr. Benjamin?

8            MR. BENJAMIN:  It does, Your Honor.

9            THE COURT:  Let me hear -- let me get Ms.

10   Sirignano before I turn this over completely to the

11   Government.

12           MS. SIRIGNANO:  Your Honor, we're assuming

13   all these plea agreements have the same format;

14   correct?

15           THE COURT:  Well, yeah, for purposes of

16   trying to do this.  I know that there may be some

17   unique ones out there, but at least a box here,

18   seeing if we can hammer something out.

19           MS. SIRIGNANO:  Thank you, Judge.

20           THE COURT:  All right.  Mr. Beck, do you

21   think you could live with these redactions?  You get

22   the plea agreement in, but take out the portions that

23   the Court or defendants are most concerned about?

24           MR. BECK:  So I think there is two answers.

25   Yes, but with the caveat that if something becomes

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4912

 1   relevant during cross-examination.  So I'm thinking,

 2   you know, the factual basis --

 3          THE COURT:  I think you can still use those

 4   to impeach:  You know, haven't you told this Court

 5   such-and-such.  I think you can still impeach a

 6   witness with a prior statement.  So these things

 7   don't go away.

 8          MR. BECK:  Well -- and I think they could

 9   be admissible as prior consistent statements to rebut

10   the presumption that --

11          THE COURT:  They might.

12          MR. BECK:  -- that they said something

13   different.

14          So what I'm saying I think we can live with

15   those -- and I think we'll propose other redactions

16   with the sentencing provisions, and things like

17   that -- and I think that's fine as a starting off

18   basis.  But I just -- I want the Court and everyone

19   to be aware that we may ask the Court to address that

20   based on what comes out in cross-examination.

21          THE COURT:  Could everybody live with these

22   redactions, understanding that they may come in for

23   other purposes, if the Government lays some

24   foundation?  But at least, when they're putting on a

25   witness, and they introduce the plea agreement, it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4913

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 271

```
 1    will have these redactions, at least these
 2    redactions?
 3            MR. CASTLE:  Your Honor, we can live with
 4    that.  But I would ask that before the prosecution
 5    attempted to bring in redacted portions, that that be
 6    handled outside the presence of the jury, just
 7    because someone might open the door to a particular
 8    area of evidence, that's a theory of relevancy, it's
 9    not a theory of necessarily admissibility that deals
10    with confrontation.  So I can't imagine how -- even
11    if you could open the door to the Government's
12    statement that someone has provided substantial
13    assistance, it's still a confrontation issue that
14    needs to be dealt with.  And so, just satisfying the
15    400 series doesn't necessarily satisfy the 800 series
16    or the Constitution.  So I think what they're
17    proposing is that those are the right to reraise some
18    of these issues, but it would have to be outside
19    presence of the jury, in our opinion.
20            THE COURT:  Can you agree that if you're
21    going to get into prior inconsistent statement, or
22    somehow the witness has opened this up, you'll just
23    approach the bench before you --
24            MR. BECK:  We would certainly ask the Court
25    to allow us to do that before we intended to bring
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4914

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 272

1    that up in open court.

2              THE COURT:  Okay.  All right.  Mr. Adams?

3              MR. ADAMS:  Yes, sir.

4              Judge, I just have one matter to put on the

5    record about incorporating our midstream Miranda

6    motion from 4275.  Is this a good time to do that, or

7    should I hold until tomorrow?

8              THE COURT:  Refresh my memory what 4275 is.

9              MR. ADAMS:  We had about a day-long

10   suppression motion.  It was a three-hour statement by

11   Mr. Garcia upon his arrest.  He was not Mirandized

12   for the first 16 minutes.

13             THE COURT:  You're talking about, do you

14   want to move it into this case?

15             MR. ADAMS:  Yes, sir.

16             THE COURT:  I think you have a document

17   that does that, right?

18             MR. ADAMS:  We referenced it.  I have the

19   specific ECF numbers.  I mean, I'm happy to do it

20   tomorrow morning.

21             THE COURT:  I thought Ms. Sirignano had

22   filed a motion --

23             MR. ADAMS:  She filed a motion.  That

24   document wasn't specifically referenced.  We

25   referenced it orally last week.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

273

 1                THE COURT:  Let's do it tomorrow.

 2                MR. ADAMS:  Thank you.

 3                THE COURT:  Do we have an agreement then on

 4    the plea agreements coming in and how they're going

 5    to come in?  Anybody disagree with it?  All right.

 6    So that's what -- hold on just a second.

 7                THE CLERK:  Judge?

 8                THE COURT:  Yes.

 9                THE CLERK:  Doc 1486 outlines the motion

10    number, and the 4275 for this case, you've seen it,

11    it's a notice.

12                THE COURT:  Okay.  Let me leave that for

13    tomorrow.  Because I want to make a few comments

14    tonight.

15                So we're going to take up the bad acts

16    tomorrow.  Let me ramble just a little bit.  You'll

17    just have to accept this, think about it overnight.

18    I know everybody is working hard, but I'm a little

19    bit frustrated by the bad acts.  It's like we're both

20    trains or something passing in the night here, and

21    people, I think, are being too formalistic here.

22                When I got the Government to list out the

23    bad acts, remember what we were doing.  The

24    defendants were coming in and saying some of what

25    they're going to use to prove enterprise and

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                        1-800-669-9492
                                                              e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4916

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 274

1    racketeering activity, and that sort of thing, is

2    going to be -- or in furtherance of the enterprise --

3    is going to be bad acts.  We want to take a shot at

4    it, we just don't want to take their word for it.

5              So I told the Government to do their

6    traditional stuff, which is usually as a matter of

7    caution, they do a notice that says something to the

8    effect:  Here's our 404(b); we don't agree with all

9    this being 404(b), but here's all the bad things

10   we're going to introduce.

11             And I was hoping that we would be able to

12   figure out a way for the Court to make a decision on

13   this.  So I'm going to first fault the Government.

14   It seems to me you've got to tell me what you think

15   is 404(b) evidence.  Because, if you do, you've got a

16   certain amount of proof that you've got to do for a

17   404(b).  If you're saying that, okay, what we're

18   really doing is I want to use this information to

19   show enterprise and furtherance of the enterprise's

20   activity, then we go down a different path.  And then

21   I've got to make kind of a relevance, and say it's in

22   that box.  It's a res gestae type of argument.  So I

23   think, on the letters that you send, you've got to

24   tell them more.

25             Defendants:  I understand the Government

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4917

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275918

```
 1   has to prove 404(b) to get it in, and the burden is
 2   on them.  But you've got to help them.  I mean, you
 3   can't just say:  "The burden is on them."  You've got
 4   to start telling me what these events are.  I mean, I
 5   don't know about shoplifting and marijuana use, and
 6   things like that.  So you've got to help me here.  I
 7   think everybody is relying on a little bit of canned
 8   briefing, formalized briefing, and everybody is
 9   saying, Well, they've got the burden of proof.  But
10   you've got to educate me.  I can't make an informed
11   decision.
12          If you're not going to inform me, you're
13   not going to help me out here, I will go through and
14   I'll tell you what's in, what's out, based upon these
15   letters and upon the briefing.  But it ain't much.
16   And, probably, people are not going to like the meat
17   cleaver approach that I'm going to take.  So you've
18   got to educate me.
19          So think about it overnight, how you're
20   going to do that, and how you're going to do it
21   quickly.  Are we going to do that in the morning?
22   Are we going to sit here and go through Christopher
23   Garcia's letter, and y'all educate me one by one, and
24   I make baseball calls all morning, and all day long?
25   That's fine, that's one way of doing it.  If you've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4918

```
 1    got a different approach -- we've got to get it
 2    going.  Because I consider two things to be very
 3    crucial for me to do my job, the thing that keeps me
 4    awake, one is the 404(b) stuff, all this stuff coming
 5    up first thing in the morning, how are we going to do
 6    it so that we don't have a bunch of stuff coming into
 7    the trial that doesn't advance the enterprise or
 8    would not come under a 404(b) analysis.
 9            It seems to me that these defendants have
10    enough things that they probably are going to not
11    like coming into trial, that's going to come in like
12    a freight train anyway, without talking about, you
13    know, parking tickets and shoplifting, and that sort
14    of stuff.  And so we've got to get real here.  So
15    help me get real, in the morning, how we're going to
16    do this.
17            The second thing is the James stuff, you
18    know, the James hearing.  What statements are going
19    to come in as co-conspirator statements, and what
20    statements are going to come in and satisfy
21    Bruton/Smalls problems there?
22            Those are the two or three things that keep
23    me awake at night.  So help me do those.  I want to
24    do a good job.  I don't want, you know, to have stuff
25    floating around that shouldn't be floating around in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4919

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 277920

1    this trial.

2            And, you know, at the same time, I don't

3    want to tell the Government how to try their case.

4    So I'm trying to balance those things.

5            All right.   I appreciate your hard work --

6    no, got to go.   Talk to me tomorrow.

7            Have a good evening.   Appreciate it.   Be

8    safe.

9            (The Court stood in recess.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4920

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3   UNITED STATES OF AMERICA

 4   DISTRICT OF NEW MEXICO

 5

 6

 7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8   Official Court Reporter for the State of New Mexico,

 9   do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on December 27, 2017.

15

16

17

18        _____

19        Jennifer Bean, FAPR, RMR-RDR-CCR
          Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:  (505) 348-2283
22        Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4921

1           IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                    CR. NO. 15-4268 JB

6   ANGEL DELEON, et al.,

7        Defendants.

8                       VOLUME 2

9        Transcript of Combined Motions to Suppress
    Proceedings and Daubert Hearings before The Honorable
10  James O. Browning, United States District Judge, Las
    Cruces, Dona County, New Mexico, commencing on
11  December 19, 2017.

12

    For the Government:  Ms. Maria Armijo; Mr. Randy
13  Castellano; Mr. Matthew Beck

14  For the Defendants:  Mr. Brock Benjamin; Ms. Cori
    Harbour-Valdez; Mr. Patrick Burke; Mr. Robert Cooper;
15  Mr. Jeff Lahann; Mr. Orlando Mondragon; Mr. Billy
    Blackburn; Mr. Scott Davidson; Ms. Amy Jacks; Mr.
16  Richard Jewkes; Ms. Amy Sirignano; Mr. Christopher
    Adams; Mr. Marc Lowry; Ms. Theresa Duncan; Ms. Carey
17  Bhalla; Mr. William Maynard; Ms. Justine Fox-Young;
    Mr. Donovan Roberts; Ms. Lisa Torraco; Ms. Angela
18  Arellanes; Mr. Jerry Walz

19

    For the Defendants (Via telephone):  Mr. James Castle
20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Good morning
 2    everyone.  It looks like everybody has an attorney
 3    this morning.  Let's see, Ms. Duncan, your paralegal
 4    Erin Glasser is calling in.  Ms. Glasser, are you on
 5    the phone, yet?
 6              MS. GLASSER:  I am, sir.
 7              THE COURT:  All right.  Ms. Glasser, good
 8    morning to you.
 9              Any other changes in counsel, people that
10    are here?  Do I need to note any?
11              All right.  Mr. Adams, I talked to Ms. Wild
12    last night.  It appeared that what you were trying to
13    tell me is encompassed in a document that Ms.
14    Sirignano had filed.  Am I missing something?  Am I
15    not tracking what you're trying to tell me?  What I
16    understood you were trying to tell me -- and if I'm
17    wrong, tell me -- but is that you had some documents
18    from Christopher Garcia's drug case, or some motions
19    that you wanted to pull into this case, and I need to
20    hear them.  Those are the motions to suppress, that
21    we fully heard, and I need to give you an opinion on
22    those.  I think I orally gave you rulings on those,
23    but you wanted me to take a look at those again, give
24    you a more detailed findings of fact and conclusions
25    of law.  Is that what you were trying to tell me?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4923

```
 1              MR. ADAMS:  That is most of what I was
 2    trying to tell you.  I did want to point out one
 3    document or one issue in particular that you did not
 4    rule on.  And if I may, we did a suppression motion.
 5    We filed a motion to suppress a three-hour statement
 6    in the 15-4275 case.
 7              THE COURT:  That's the drug case?
 8              MR. ADAMS:  Yes, sir.  Our motion to
 9    suppress was 184, the Government's response was at
10    226, and our reply was at 246789.  We had a full-day
11    hearing on May 4, 2017, and the transcript is at ECF
12    264.  We also -- with Joseph Sainato, the Special
13    Agent testified -- we also incorporated testimony
14    from Sergeant Lerner about -- from April 13, 2017.
15    And that transcript is at ECF 254.  And in that one
16    he had talked about driving Chris Garcia; arresting
17    him, driving him over and Chris Garcia said, "Gorence
18    is my guy."  And he knew Gorence to be a lawyer.  In
19    the interrogation, the first 16 minutes took place
20    pre-Miranda.  And Joseph Sainato said he'd forgotten.
21    But he'd been trained to do Miranda, but he'd also
22    been trained it's okay to get him talking first, was
23    the testimony.
24              They came in and said, "Tell us about the
25    Marcantel hit, tell us about SNM, who ordered it, et
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4924

1   cetera, et cetera.  When we got to the argument part

2   of the case, you had pressed the Government on:

3   Well, what are you trying to use?  And they pointed,

4   Ms. Armijo pointed to comments on page 199 of the

5   transcript.  And you --

6          THE COURT:  That's after the gap?

7          MR. ADAMS:  That was about two-and-a-half

8   hours after the Miranda.  And your impression at the

9   time -- and you never did a written order on this --

10         THE COURT:  Right.

11         MR. ADAMS:  -- you said, you know, my view

12  just sitting here is I really need to dig into the

13  case law on this.  My gut is telling me that Chris

14  Garcia really seemed like he wanted to talk.  You

15  know, how does that factor into the equation?  And

16  the stuff about the drugs didn't come up at all until

17  so much after the Miranda.  It's not like when this

18  issue comes up in the other context, which I took to

19  mean, in 4268, and in the 16-1613 case.

20         So that was the issue.  And then we pled in

21  the drug case before an order was drafted.  So I

22  think even if your written order had been consistent

23  with what your gut was that day, that this issue for

24  this case would have been different, because the

25  pre-Miranda material was all about the SNM

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4925

1    enterprise, all about the leaders of the gang, and

2    all about who ordered the hit, and who had

3    involvement in the Gregg Marcantel conspiracy.

4            So, our view is, even if you'd ruled

5    against us before, which you never did, we think this

6    pre-Miranda stuff so taints the rest of the statement

7    that none of it should be admissible.

8            THE COURT:  Now, is that document one of

9    the ones on Ms. Sirignano's list?

10            MR. ADAMS:  Yeah.

11            THE COURT:  Okay.  So I know I owe you that

12    work.

13            My mind is -- and this will be my ruling,

14    unless this is one of the ones I take a look at

15    reconsidering, is the statement after the Miranda

16    warnings are admissible; the ones before are not

17    admissible.  And that's the way I'll cut it.  If

18    y'all -- if this one goes to the top of the list and

19    this is one you want me to spend some time with, then

20    I will.

21            MR. ADAMS:  I can certainly tell you

22    without consulting any of the other defense counsel,

23    this is at the top of our list.  We would love to get

24    a written opinion.  And if we have a disagreement, it

25    can be resolved somewhere else in one day, I suppose.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4926

```
 1    Thank you very much.
 2              THE COURT:  I think I got the opinion out
 3    yesterday on defendant Daniel Sanchez' motion to
 4    sever or reconsider.  So that came out yesterday if
 5    you didn't see it.
 6              Ms. Harbour-Valdez, I think I cut you off a
 7    little bit at the end of the day because I was trying
 8    to get everybody out of here.  What did you need to
 9    bring up?
10              MS. HARBOUR-VALDEZ:  Your Honor, we were
11    going to ask if the Group 2 motions in limine could
12    be put off until closer to our trial, to devote the
13    time that we have now to the Group 1.
14              THE COURT:  Have you talked to Ms. Wild
15    about that?
16              MS. HARBOUR-VALDEZ:  That's what I thought
17    we had talked to her about last week, that all the
18    individual Group 2 motions in limine were going to be
19    pushed aside.  The ones that were dealing with
20    everyone, like the motions in limine that were filed
21    on behalf all defendants, would be taken up while we
22    were together.
23              THE COURT:  Well, let's see if she's on the
24    phone.  Ms. Wild, are you there?
25              THE CLERK:  I am.  But I could not hear
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    anything that Ms. Harbour-Valdez just said.

2            THE COURT:  Well, let me summarize it for

3    you, because it's fairly important, given that the

4    motion I'm holding in my hand to take up next is Mr.

5    Troup's motion in limine on bad acts.  I was going to

6    use it as the way to start getting into this thing.

7    But what Ms. Harbour-Valdez is saying, can we take

8    off the motions in limine of the Group 2 defendants,

9    ones that are going to be tried in April, and just

10    focus on the ones for the Group 1, and then also the

11    ones that are general that go to both.  The list of

12    motions in limine that you gave me were not so

13    segregated, so I was wondering what your thoughts and

14    understanding was.

15            THE CLERK:  Well, first, the listing was

16    just the order in which I believe that they were

17    filed.  The reason that I prepped you for everything

18    was because of generalities, and to maybe try and use

19    the Court's resources most efficiently.  If there was

20    bleed-over or things that you could address generally

21    as to all defendants, this would be the time to do

22    it.  If you're comfortable waiting to take up the

23    specifics until we're closer to trial for Group 2, I

24    think that's fine.  But that was the purpose in

25    prepping you the way that I did.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1                THE COURT:  Okay.  Well, if then, nobody
 2    has any objection to that, then we'll go ahead and
 3    put the Group 2 motions in limine, your specific
 4    motions in limine aside.
 5                All right.  Two people have come on the
 6    phone.  Who has come on the phone that hasn't entered
 7    an appearance?  And make sure that your mute button
 8    is not on as you talk.
 9                THE CLERK:  Judge, I dropped off, and just
10    go back on the line.
11                THE COURT:  Okay.  All right.  So I am
12    moving then, unless somebody has something better to
13    move to, to Document 1505, which is a joint motion by
14    the defendants to prohibit cooperating and other
15    witnesses from testifying to fear of defendants, the
16    SNM, or retaliation, and about any witness protection
17    measures.
18                Let me give some thoughts on this, and then
19    I'll hear what anybody wants to say on this.  I'm
20    trying to think -- and the Government may be able to
21    think of some reason why they should, but I can't
22    think of any sort of independent reason that the
23    cooperating witnesses should take the stand and
24    testify about their fear of testifying against the
25    defendants.  It seems to me that that has a number of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4929

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3930

 1   issues and problems.

 2          First of all, if the defendants -- I mean,

 3   if the cooperating defendants are going to be

 4   testifying that they're afraid of the defendants, it

 5   seems to me that the jury may be sitting over there

 6   thinking, Well, maybe I should be afraid, too.  That

 7   seems to me it doesn't help the defendants, because

 8   if they are fearful of the defendants, they may feel

 9   like, well, they better just not convict anybody for

10   fear of what might happen to them.

11          On the other hand, it could also work the

12   opposite against the defendants; that they better

13   convict all these guys so that they're not out to

14   hurt cooperating or themselves.

15          So I think it's a two-edged sword.

16   Everybody in the room can sort of evaluate that for

17   their own.  But I'm trying to think of how there is

18   any probative value that is legitimate for them

19   testifying about just a general fear.

20          As far as SNM, it seems to me the

21   cooperating defendants can talk about SNM, if they

22   have personal knowledge of that.  So it seems to me I

23   shouldn't be excluding just their discussion of SNM.

24   We'll just have to take those one at a time.  They

25   have to be testifying from personal knowledge.  But I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4930

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4931

```
 1   would assume that many of the cooperating defendants

 2   do have some relevant information and testimony about

 3   SNM.  So I'd be inclined to deny that as a blanket.

 4           Also, it seems to me that they may know and

 5   have personal knowledge of retaliation in specific

 6   instances against witnesses and other people who

 7   cooperate and snitch and those sort of things.  And

 8   so it would seem to me that I can't blanket knock

 9   that evidence out of the case from cooperating

10   witnesses.  So I'd be inclined to deny that.

11           And then, as far as any witness protection

12   measures, it seems to me that probably falls within

13   the same comments I had about cooperating witnesses

14   testifying about fear.  On the other hand, it may be

15   that the defendants have some reason to bring that

16   up.  And if they do, and they open the door because

17   it's part of any plea agreement or agreement that

18   that witness has with the Government, then they can't

19   open the door and then shut it for the Government.

20   So it's got to come in, but I think it's probably

21   going to be for the defendants' choice, rather than

22   the Government's choice as to whether they talk about

23   witness protection measures.

24           So those are my thoughts coming in about

25   how to deal with this.  I think this was Mr. Villa's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4931

1    motion.  Ms. Fox-Young, are you going to argue it?

2            MS. FOX-YOUNG:  Sure, Your Honor.

3            THE COURT:  How close did I get to

4    something you can live with?

5            MS. FOX-YOUNG:  I think we can absolutely

6    live with the Court's proposed ruling.  And we just

7    ask that the Court take up any specific threats --

8    and I don't think the Court can anticipate everything

9    that will come up from either side -- but just take

10   them as they come at trial.

11           But I think the Court's ruling in terms of

12   a blanket ruling and a general fear is exactly what

13   we were looking for.

14           THE COURT:  Like Mr. Perez was testifying

15   in his testimony that he didn't want to get labeled a

16   snitch, and you know, thought that it was useful to

17   get information out there so people didn't do things

18   to him.  I think it's just hard to probably blanket

19   exclude retaliations, because it seems to be part and

20   parcel of the story that's going to be told.

21           MS. FOX-YOUNG:  I think the Court

22   understands what Mr. Villa was getting at in terms of

23   generalized fear.  And we'll just have to take them

24   issue by issue at trial.

25           Thank you, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4932

1           THE COURT:  Thank you, Ms. Fox-Young.

2           Anybody else?  Everybody on the defense

3    side can live with kind of the line I propose?  Let's

4    see what the Government says here in a moment.  Mr.

5    Castle, do you want to comment on that?

6           Ms. Rodriguez, are you on the phone now?

7           MS. RODRIGUEZ:  I am, Your Honor.

8           THE COURT:  All right.  Ms. Rodriguez, good

9    morning to you.

10           MR. RODRIGUEZ:  Good morning, sir.

11           MR. CASTLE:  Your Honor, the only comment I

12    have is that in the Government's response -- and I

13    think we're anticipating might happen at trial -- is

14    that one defendant might open the door to evidence of

15    fear.  The concern I have that I want to raise -- I'm

16    not sure I'm asking for a ruling right now, but I'm

17    just lodging this concept with the Court -- is that,

18    just because one defendant might open the door to

19    something, the other defendants aren't necessarily

20    agreeing to that door being opened and the prejudice

21    that flows from that act being shared by everyone.

22    So I think we have to be real careful that a

23    particular defendant opens the door to fear evidence,

24    that it's got to be fear of that particular

25    defendant.  Because, otherwise, all the defendants

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4933

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 13934

```
 1    will be painted with a brush that they didn't hold in
 2    their hand.  So that's the concern I raise to the
 3    Court, because I think there are different strategies
 4    that different lawyers want to take.  And one example
 5    that I would give is one we talked about a little bit
 6    yesterday, is monies that are given to a particular
 7    witness.  If there are expenses, one defense lawyer
 8    might avoid that, saying, Well, that's witness
 9    protection money.  That was expenses necessary to
10    protect that witness.  Another lawyer might decide,
11    Well, I'm going to go for it, and I'm going to go
12    ahead and put that evidence on.  That shouldn't
13    prejudice the defendant that holds their cards close
14    to their vest and makes sure that their client
15    doesn't open the door to prejudicial information.
16              That's the problem with co-defendant cases.
17    But that's the way the Government has chosen to
18    indict this case.  This isn't the way these
19    defendants chose to be tried.  In fact, I think every
20    one of them has moved for a severance.  So when we
21    get to that bridge that needs to be crossed, I just
22    raise that concept that we may need to tailor any
23    remedy that the Court orders to the circumstances at
24    hand.
25              THE COURT:  Well, I hear what you're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4934

 1    saying, and I am not -- I guess I'll indicate that I

 2    guess I'm not -- I probably will not be quick to find

 3    that the door has been opened, or it's been opened so

 4    wide that we run a truck through what we're working

 5    out here today.

 6           But, at the same time, I think it may be

 7    hard, once some defendant decides to put fear in the

 8    courtroom, we don't generally sort of talk

 9    specifically about defendants.  We don't specifically

10    talk about cooperating witnesses.  Sometimes it gets

11    generalized.  And so I think what you're saying, and

12    I think I agree, we may just have to play it by ear

13    at that point.  But I've got to be fair and sort of

14    think about what's going on.  I mean, if one

15    defendant is over there jumping up and down talking

16    about fear, you know, I may not be able to do much

17    about it.  It might be that I just have to sort of

18    say, Well, it's in the room, and we've got to deal

19    with it.

20           MR. CASTLE:  I think, at that point in

21    time, we'll all make our records and move from there.

22           THE COURT:  Fair enough.

23           Anyone else before I hear from the

24    Government?  Everybody fairly comfortable with where

25    I'm proposing to draw the line on this issue?  All

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                              Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                        1-800-669-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 4935

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 15936

1   right.

2             Mr. Castellano, are you going to be the

3   one?  Mr. Beck?  Can you live with what I'm banging

4   out on this motion?

5             MR. BECK:  I can.  And I think with regard

6   to Mr. Castle's comment, you know, if a defendant

7   chooses to cross-examine a witness about promises

8   made, and brings out that promise was made to

9   relocate the cooperating witness either before or

10  after trial or during trial, relocate the witness'

11  family, or anything like that, well, then, I mean, I

12  if think that opens the door to the Government

13  saying:  Why is this happening.  And I think, in that

14  case, if a defendant then wants to go and say, Well,

15  are you specifically afraid of my client, they're

16  able to do that on recross.  So I think that's just

17  the way it will play out.

18            I mean, the Government doesn't intend to

19  bring out any generalized witness fears on direct

20  examination.

21            THE COURT:  I think that what we're banging

22  out is -- puts an additional burden on you, as far as

23  your cooperating witness.  I think you need to talk

24  to them about -- because Mr. Cordova was -- he's a

25  little bit of a live wire here.  I mean, once he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    started talking, he was talking.  So I think you're
 2    going to have to talk to him a little bit about:
 3    Don't bring that up on your own.  If you get asked,
 4    and you have to answer, then just be truthful, and do
 5    what you got to do and say what you got to say.  But
 6    they probably shouldn't walk in here and drop, you
 7    know, right off the top the bomb that they're afraid
 8    to be here and they're scared of everybody in the
 9    room.  So talk to them about it before they take the
10    stand, so we don't inadvertently and unwantingly get
11    that issue dropped on us and we have to deal with it.
12            MR. BECK:  We'll do that with all of these
13    pretrial rulings, Your Honor.
14            THE COURT:  Anything else, Mr. Beck?
15            MR. BECK:  No, Your Honor.
16            THE COURT:  Anybody else on the defense
17    side?  Ms. Fox-Young?  Anybody else have anything on
18    that issue?  All right.  So we'll so proceed on
19    Document 1505.
20            Let's go to 1512.  My -- refresh my memory
21    on this.  I think it might have been labeled a little
22    bit different.  This, again, I think is from you and
23    Mr. Villa, Ms. Fox-Young, but is this different than
24    your bad acts?  Or is this a new motion, a new
25    version of what we dealt with earlier that -- well,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4937

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4938

 1   let me just hear what you're trying to do here rather

 2   than me trying to characterize it.  It seems like we

 3   might have sort of dealt with this in the past.

 4          MS. FOX-YOUNG:  Your Honor, I'm looking for

 5   1512, if you just give me a moment.

 6          THE COURT:  This is the opposed motion to

 7   exclude references to and evidence of unrelated

 8   enterprise acts.  That sounds to me a little bit like

 9   the 404(b), which I think you have a separate 404(b)

10   motion.

11          MS. FOX-YOUNG:  We do, Your Honor.  I think

12   a number of defendants joined this motion, 1512.  And

13   I think the Court maybe has already at least

14   partially ruled on this issue.  But this motion --

15   and we may take this up with each 404(b) motion

16   individually -- but we're moving the Court to exclude

17   specifically enterprise acts from the second trial,

18   and certainly from the other cases, unless there is,

19   you know, a relevance finding.

20          I think the Court has construed the

21   racketeering enterprise, the RICO broadly.  I don't

22   know if the Court wants to take another look at that

23   with respect to the individual bad acts.  But that's

24   what we're asking for here.  You know, for instance,

25   Mr. Castle and Mr. Cooper's client is in the trial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4939

```
 1    with allegations dating back to the year 2000.  We
 2    don't think that those acts, those allegations,
 3    should come in, you know, for the Government to prove
 4    up the existence of the enterprise, when they have
 5    nothing to do with Molina and the Marcantel counts.
 6              THE COURT:  So this just relates to the
 7    second trial?
 8              MS. FOX-YOUNG:  The second trial, 1613, and
 9    the other stand-alone cases as well.
10              THE COURT:  But it doesn't apply to the
11    first trial?
12              MS. FOX-YOUNG:  It applies -- what we're
13    asking is that none of these acts from the second
14    trial and the other indictments come in at the first
15    trial.
16              THE COURT:  Okay.  Well, my sense is I've
17    already ruled on that.  I mean, I hit it again in Mr.
18    Sanchez' motion to sever yesterday.  I plowed through
19    that.  So I think I've looked at that several times.
20    I may be wrong, but --
21              MS. FOX-YOUNG:  I think you have, Your
22    Honor.  I read that, and we don't need to rehash it.
23              THE COURT:  All right.  Anybody else got
24    anything on this?  Mr. Burke?
25              MR. BURKE:  Your Honor, this may be a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4939

 1    motion that we reraise before the Group 2 trial,

 2    because we'll have to see what sorts of --

 3              THE COURT:  On the second trial?

 4              MR. BURKE:  Yes, Your Honor.  All right.

 5    Thank you.

 6              THE COURT:  But you were also, Ms.

 7    Fox-Young, raising it at the first trial, keep the

 8    evidence out on those counts out of the first trial,

 9    right?

10              MS. FOX-YOUNG:  Yes, Judge.

11              THE COURT:  Anybody else want to say

12    anything on this?  I don't mind relooking at it.  But

13    I have looked at it several times, and keep coming to

14    the same conclusion.

15              Mr. Castellano?  Mr. Beck.  Anybody want to

16    say anything on this?  Mr. Castellano?  Do you think

17    I'm getting it right?

18              MR. CASTELLANO:  I think you are, Your

19    Honor.  We filed an omnibus response to the bad acts

20    motions, which is --

21              THE COURT:  Yeah, I haven't gotten all the

22    briefing -- I've read it all, but I haven't gotten it

23    all linked up by paper clip.

24              MR. CASTELLANO:  This Document 1581, I

25    don't think we have to go into it right now.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 4940

```
 1            THE COURT:  What's the number on in?

 2            MR. CASTELLANO:  It's 1581.  But what I'll

 3   do is just highlight one of the cases, which is the

 4   Diaz case from the Second Circuit.  It's 176 F.3d 52.

 5   And just to give the highlights, there is a

 6   discussion in here about admission of bad act

 7   evidence.  And it says, "The Government introduced

 8   evidence of prior uncharged crimes and other bad acts

 9   that were committed by defendant appellants and

10   Government witnesses.  And ultimately the district

11   court admitted this evidence, finding that it was

12   relevant because it tended to prove the existence,

13   organization, and nature of the RICO enterprise, and

14   a pattern of racketeering activity of each defendant

15   appellant."

16            THE COURT:  And you would agree with me on

17   this statement I'm about to make as a general

18   principle for what we're looking at at trial, if

19   you're going to use this to establish enterprise or

20   furtherance of the enterprise's activities, you can't

21   just have a stand-alone bad act; you've got to link

22   it up in some way, and have evidence that it is not

23   just some individual's bad act, but it is part of

24   their efforts on behalf of the enterprise.

25            MR. CASTELLANO:  I agree with that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4941

```
 1   statement, Your Honor.

 2           Also, on the same case, Diaz, there is a

 3   discussion of spillover effect.  And this was also a

 4   motion to sever that was denied.  And in that

 5   discussion, one of the defendants noted that he was

 6   implicated in only one of nine murders.  He was tried

 7   over three months before the same jury, who heard

 8   volumes of evidence.  Ultimately, the Court noted

 9   that "the evidence in dispute is relevant to the

10   charges against all RICO defendants because it tended

11   to prove (1) the existence and nature of the Latin

12   Kings and their RICO enterprise; and (2) a pattern of

13   racketeering activity on the part of each RICO

14   defendant by providing the requisite relationship and

15   continuity of illegal activities."  So here was a

16   situation where he was charged in only one of nine

17   murders, but as the Court also ruled recently in the

18   denial of the motion to sever, it comes in against

19   all defendants.

20           But you're right, we do have to link it up

21   to the enterprise.  It can't be just some stand-alone

22   act that's a bad act.

23           THE COURT:  And are you taking the same

24   position, and do you think you're correct on the

25   evidence that's coming in, you've been working on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4942

```
 1    James hearing with the co-conspirator statements?
 2              MR. CASTELLANO:  Yes, the same thing, Your
 3    Honor.
 4              THE COURT:  So you prove one conspiracy
 5    here, you've got another conspiracy over here, it
 6    comes in against both of them because both
 7    conspiracies are in furtherance of the enterprise and
 8    its activities?
 9              MR. CASTELLANO:  That's correct.
10              THE COURT:  And that's Smalls, right?  So I
11    don't have to deal with a bunch of Bruton problems in
12    there because of the way Smalls from the Tenth
13    Circuit deals with that.
14              MR. CASTELLANO:  That's correct.  So we'll
15    have a number of things going on.  I think we'll have
16    three categories.  We're going to have co-conspirator
17    statements under James.  Then we'll have statements
18    pursuant to Smalls, which will be statements against
19    interests which point a finger at other defendants.
20    And then, ultimately, there are Bruton statements out
21    there.  I think that number will be small in this
22    case.  I think, the only one I can think of right
23    now --
24              THE COURT:  When you say "this case," are
25    you talking about the first trial or just the case
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4943

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23

```
 1    overall?

 2             MR. CASTELLANO:  Overall.  I think the Jose

 3    Gomez assault is the one that has statements in there

 4    that may be redacted.  I can't think of any others

 5    other than that particular incident.

 6             But I think the Court has a right, and I

 7    pointed out another case from the Second Circuit

 8    which talks about that.  There is also another

 9    case -- and I can get it, Your Honor -- it's a Tenth

10    Circuit case, U.S. versus Harris; it's 695 F.3d 1125

11    from 2012.  And this is a discussion that we've had

12    numerous times in court.  And one of the issues in

13    the Harris case was that the overarching enterprise

14    was the Crips Gang, and there were three sets, or

15    subsets.  So there were the Deuce Trey Crips, the

16    Insane Crips, and the Tre Five Seven Crips.  But

17    ultimately, they were three groups who had come

18    together at various times.  And ultimately, the Court

19    held that the three Crips sets together constituted

20    an association-in-fact enterprise.  So I know there

21    has been discussion about the Old Timers and the

22    Dropouts, and the All Stars.  But ultimately, our

23    facts in this case are stronger than the facts in

24    Harris.  So, ultimately, this will come in against

25    the entire enterprise.  And that's the Harris case,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4944

```
 1    Tenth Circuit.
 2              THE COURT:  Anything else, Mr. Castellano?
 3              MR. CASTELLANO:  No, Your Honor.
 4              THE COURT:  Ms. Fox-Young, any further
 5    comments on it?
 6              MS. FOX-YOUNG:  Just one brief comment,
 7    Your Honor.  I think the cases, Diaz and Harris, and
 8    some of the other cases that the Government cites are
 9    not cases where there was a severance.  I think the
10    Court still does need to do 403 analysis.  It may be
11    a little bit hard to do in the abstract.  But with
12    respect to very old, very dated acts coming in in the
13    first trial, if the Government can't tie them up and
14    connect them, I think the analysis is different where
15    Your Honor has granted a severance.  And I understand
16    the basis for the severance was not necessarily that
17    the Court's concerned about prejudice.  But that
18    there may be instances where that 403 analysis yields
19    a different result.  And I just would ask the Court
20    to keep that in mind.
21              THE COURT:  I'm always worried about
22    prejudice.
23              MS. FOX-YOUNG:  Thank you, Judge.
24              THE COURT:  Never leaves my mind.
25              Thank you, Ms. Fox-Young.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4945

```
 1              Anybody else want to comment on this

 2   motion?  All right.  So that motion is pretty much

 3   denied.  I may take another look at some of these

 4   cases, but I think we've plowed that ground pretty

 5   hard.

 6              All right.  Let's go to the moniker, alias

 7   names.  Let me use Mr. Acee a little bit as an

 8   example here, and see if I can separate out maybe

 9   some of the problems.  If the case agent is on the

10   stand, and he's talking about alias names and

11   monikers, I guess I do that with some caution,

12   because it seems to me he may have gotten that

13   information solely from other people and not having

14   personal knowledge.

15              On the other hand, if a cooperating witness

16   is on the stand talking about monikers, talking about

17   aliases, those sort of things, and that's just what

18   he calls -- and he can say I called him "Pup" Baca.

19   He calls him that, it seems to me I shouldn't

20   probably be excluding that.  So I guess what I would

21   suggest is that -- I guess my proposal would be that

22   Mr. Acee and other people that may be, like him,

23   testifying as case agents, or something, not use

24   alias names, not use monikers, those may be somewhat

25   argumentative, and may not have personal knowledge of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4946

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4947

```
 1   them, other than what he's been told, there not be

 2   restriction on cooperating witnesses and people that

 3   have personal knowledge.  They can use whatever names

 4   they use.  As we saw from the testimony last week, I

 5   think it was Mr. Perez and Mr. Cordova both at times

 6   didn't know their real names.  They only knew them

 7   through monikers and aliases.  So it seems to me I

 8   shouldn't restrict it there.

 9             In closings, it would seem to me that the

10   Government is free to use whatever it wants to, in

11   arguments.  It should not use those in probably

12   opening statements.  But that's, I guess, where I was

13   inclined to draw the line here.

14             Hold on.  Let me see if there was something

15   else I wanted to say as an opening statement.  Well,

16   I think that's it as far as some opening remarks.

17             Ms. Harbour-Valdez, Mr. Burke, I think this

18   was your motion.  Do you think you could live with

19   where I'm drawing the line?

20             MS. HARBOUR-VALDEZ:  Yes, Your Honor, we

21   could live with that compromise.

22             THE COURT:  All right.  Anything else you

23   want to say on the motion?

24             MS. HARBOUR-VALDEZ:  Nothing else.  Thank

25   you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 27948

```
 1              THE COURT:  Any of the defendants want to
 2    comment on this, either for or against where I'm
 3    drawing the line?
 4              All right.  Ms. Armijo, what's the
 5    Government think about this?
 6              MS. ARMIJO:  Your Honor, in general, we
 7    would agree.  The only distinction I could think of
 8    is that if we have STIU officers come in here who
 9    have dealt, for instance, with Mr. Baca for years,
10    and if they call him "Pup" -- on a personal basis.
11              THE COURT:  If they're able to say, I call
12    Mr. Baca "Pup," and he responds to me, and he answers
13    to "Pup," I think that's personal knowledge.
14              MS. ARMIJO:  Okay.  Thank you.
15              THE COURT:  But I think you might have to
16    establish that, rather than -- you know, so the jury
17    doesn't get the sense that this person was just
18    trained or coached for this trial to call him "Pup"
19    for some strategic reason.  But I think if they say,
20    At the jail I call him "Pup," he responds to me.  I
21    think that's personal knowledge.
22              MS. ARMIJO:  Thank you.
23              THE COURT:  Can you live with that?
24              MS. ARMIJO:  Oh, what about business
25    records?  Mr. Beck brought up a good point.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4948

```
 1            THE COURT:  Well, I don't think -- if

 2    something is coming in in a document, and it has

 3    their names, I don't think we're going to be

 4    sanitizing business records.  So, for example, I

 5    guess -- I don't know, I'm not sure what business

 6    record we're maybe talking about; it wouldn't be --

 7    302s wouldn't be business records, but what business

 8    records are we talking about?  What are we trying to

 9    get in under business records?

10            MR. BECK:  I'm thinking about STIU files.

11    If there is -- you know, I mean, I can't give an

12    example, but if there is like a jail business record

13    that would list their moniker on the top, and that's

14    how the jail keeps the name of them, or if we talk

15    about, you know, previous pleadings and cases where

16    there may be an a/k/a or something like that.  I

17    mean, I can't think of a specific example.  But I can

18    think of documents that we may be entering, or the

19    defendants themselves may be entering as business

20    records, and the way in which they were made and

21    preserved at the time, may refer to these folks'

22    monikers.  And so I don't think that we would be, you

23    know, sort of redacting on the fly going through all

24    these documents to redact monikers.

25            THE COURT:  All right.  I don't think the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4949

1    motion is trying to sanitize documents.

2    Ms. Harbour-Valdez is shaking her head no.  Without

3    ruling on whether anything is coming in, I mean, I'm

4    not trying to say business records are coming in.

5    But assuming they do, I don't think anybody is

6    sanitizing.

7                 Anything else, Mr. Beck?  Ms. Armijo?

8                 MS. ARMIJO:  No, Your Honor.

9                 THE COURT:  All right.  Anybody else?  Just

10   a few sort of modifications there, everybody can live

11   with that?  Mr. Castle?

12                MR. CASTLE:  Yes, I'm looking for a

13   microphone.  Your Honor, I know the Court's not

14   making any ruling on hearsay objections.  But this

15   concept of business records exception has been

16   bandied about in numerous hearings concerning reports

17   of these investigative agencies.  That's dealt with

18   not as a business record but as a public record under

19   803(8).  And what 803(8) says is that, "Matters

20   observed while under a legal duty to report, but not

21   including in a criminal case a matter observed by law

22   enforcement personnel."  So the rules of evidence,

23   explicitly in criminal cases, indicated that law

24   enforcement reports are not admissible against a

25   criminal defendant.  And the reason for that, as we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4950

 1    can all imagine, is you can try the case with just

 2    the reports of the officers.  Just because they're

 3    kept by the police department, that doesn't immunize

 4    them from the rules of evidence.

 5            So it's been indicated time and time

 6    again -- let's talk about business records, but

 7    they're actually analyzing it under the wrong

 8    subsection of 803.  It has to be analyzed under

 9    803(8), which specifically says that those kinds of

10    reports by law enforcement personnel, if they are in

11    a criminal matter, are not allowed.  And specifically

12    803(8)(a)(iii) says it's admissible against the

13    Government in a criminal case, factual findings from

14    a legally authorized investigation.  It's not

15    admissible for the Government in a criminal case.

16            And so I just bring that up because it's

17    going to be argued over and over again, I know the

18    Court is probably thinking about these issues.  The

19    rules of evidence specifically prohibit the kinds of

20    arguments -- well, not the arguments, but the

21    admission of materials that are suggested by the

22    Government here.

23            THE COURT:  All right.  I guess, without

24    giving a complete agreement with Mr. Castle, I'm

25    cautious about business records, when it's the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4951

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4952

1    Government offering them, and tend to kick into those

2    other hearsay exceptions that deal with Government

3    records, public records, and those sort of things.

4    So I've written a fair amount on these evidentiary

5    issues, both business records -- a lot of times what

6    people call business records don't really come within

7    the business records exception.  And so I do think I

8    have to be cautious about that.

9            Mr. Beck?

10           MR. BECK:  I had in mind more of the

11   placement records.  I'm aware that law enforcement

12   reports are public records.  So I wasn't thinking of

13   those.  I mean, I understand the law in this area.  I

14   don't want to --

15           THE COURT:  All right.  I've written on

16   both of these, both I think it's 508 and 506.  So I

17   think I've got opinions out there.  You might want to

18   take a look at them.  And what we might do is, you

19   know, the defendants might pick one document, the

20   Government might pick one document, or a handful of

21   documents, give them to me pretrial.  Let me take

22   look at them.  If I can sort of give you some

23   categorical rulings or some rulings on particular

24   documents, whether they're in or out, it might give

25   you some guidance.  I'll be glad to take a handful

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4952

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4953

```
 1    from each side and see if I can give you some
 2    guidance.
 3            All right.  We will then put aside the
 4    moniker issue.  I think we have an understanding how
 5    we're going to deal with that.
 6            Let's go to 1514.  This is Ms. Fox-Young's
 7    motion in limine to exclude statement of cooperating
 8    Government witnesses.
 9            MS. FOX-YOUNG:  Your Honor, I know the
10    Court has thought about the order you want to hear
11    everything in.  It might make sense to take this up
12    after we do James, only because I don't know what
13    you'll have left.
14            THE COURT:  Okay.  All right.  I was
15    wondering if that was tied to the James hearing.  So
16    I'll put 1514 back in the mix.
17            All right.  Let's take then up 1515, which
18    is invocation of the rule.  I didn't get tied the
19    Government's response.  But from memory, I recall
20    that there was an objection to this.  So the
21    defendants are requesting that the Court order the
22    witnesses be excluded from the room for all future
23    evidentiary hearings and any trial in this matter.
24            What I would propose to do is, we take the
25    evidentiary hearings one by one.  It may not be that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 4953

```
 1    we need a blanket exclusion for all witnesses, but if
 2    everybody wants to do it now, we can.  But certainly
 3    at the trial, witnesses are excluded from the trial.
 4    They cannot speak to each other about their
 5    testimony.  They can't discuss their testimony with
 6    each other, although they can talk to attorneys about
 7    their testimony.  I think there is an agreement -- it
 8    looks like Mr. Acee is going to be the case agent, so
 9    he can remain in the courtroom.  Experts can remain
10    in the courtroom.
11              What else on the rule do the defendants
12    want or need?
13              MR. BENJAMIN:  I think that's it, Your
14    Honor.
15              THE COURT:  Covered it.  All right.  How
16    about Ms. Fox-Young?  It's your -- Mr. Perez' motion.
17    Anything else you can think of I need to rule on?
18              MS. FOX-YOUNG:  Nothing else at this time,
19    Your Honor.
20              THE COURT:  All right.  Do y'all -- let me
21    ask this:  Do we want to invoke the rule for all
22    further evidentiary hearings before trial?  So, in
23    other words, witnesses who are going to testify in
24    any evidentiary hearings or in trial will be required
25    and expected to remain outside the courtroom?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4954

```
 1              MS. FOX-YOUNG:  Yes, Judge.

 2              THE COURT:  Is the Government okay with

 3     that?

 4              MR. CASTELLANO:  That's fine, Your Honor.

 5              THE COURT:  Okay.  All right.  So from this

 6     day forth, if we have evidentiary hearings, all

 7     witnesses will remain outside of the courtroom.

 8              Anybody else?  Any other defendants want to

 9     comment on this?

10              Mr. Castellano?  Is how I'm drawing the

11     rule, is the Government comfortable with that?

12              MR. CASTELLANO:  Yes, Your Honor.

13              May I have one moment, please?

14              THE COURT:  Certainly.

15              MR. CASTELLANO:  Your Honor, we don't have

16     any objection to that.  I will note that on one

17     occasion with defense counsel's permission another

18     agent sat in so she could hear the testimony of one

19     of the experts.  That was related to the ELSUR

20     devices.  But we got permission from the defense

21     first.  So I think, if we have a request, we can put

22     that to the defense and take care of it that way.

23              And we filed a response to this motion, as

24     well to, I think, maybe Ms. Sirignano's, which was

25     the reading of transcripts during trial as well.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4955

```
 1   we had no objection to that.  We thought the case
 2   agent could do it, the experts could do it.  And if
 3   we had some reason why we thought someone else should
 4   do it, we would request that of the Court and counsel
 5   beforehand.  I don't remember the number of her
 6   motion, but we responded to a few motions.  Possibly
 7   1518, I think is the other motion.
 8            MS. SIRIGNANO:  It's 1518.
 9            MR. CASTELLANO:  So we can dispose of those
10   both at one time if the Court wanted to.
11            THE COURT:  Okay.  Everybody in agreement
12   on that?  So I understand on transcripts experts can
13   look at transcripts; that's what we talked about
14   yesterday.  But no fact witnesses will review
15   transcripts.  That will be part and parcel of the
16   rule.  All right.  Not hearing any objection, that
17   will be incorporated.
18            All right.  Anything else on those two
19   motions?  Do you have anything else, Ms. Sirignano?
20            MS. SIRIGNANO:  Yes, Your Honor.
21            THE COURT:  Let me ask Mr. Castellano, I'm
22   looking -- I know I read your response, Mr.
23   Castellano, but do you have the number on it?
24            MR. CASTELLANO:  I think it's 1571, Your
25   Honor.  You probably missed it because it was so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4956

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 36

```
 1    short.
 2              THE COURT:  Well, I'm just not seeing it.
 3    But that's not a problem.  Go ahead, Ms. Sirignano.
 4              MS. SIRIGNANO:  Thank you, Judge.
 5              I just wanted to clarify and make sure that
 6    your ruling is for both trial and pretrial testimony
 7    transcripts.  You might have said that, but I might
 8    have missed it.
 9              THE COURT:  Is that agreeable to the
10    Government, that the transcript rule will go into
11    effect now, so fact witnesses shouldn't be reading
12    evidentiary or trial transcripts, and they certainly
13    shouldn't in trial.  Experts can do that?
14              MR. CASTELLANO:  Yes, Your Honor.  Well,
15    I'm not even sure I'd call it an exception.  I think
16    the witnesses can read their own prior testimony.
17    But I don't think that's covered by the rule.  It's
18    their own testimony.  That would be the only caveat.
19              THE COURT:  All right.  Is that agreeable,
20    Ms. Sirignano?
21              MS. SIRIGNANO:  Yes.
22              THE COURT:  People can read their own
23    testimony, but they can't read testimony of other
24    fact witnesses or experts, and experts can read any
25    transcript.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4957

```
 1              MS. SIRIGNANO:  Thank you, Your Honor.
 2              THE COURT:  All right.  Anything else on
 3      the rule or transcripts?
 4              Let's go to 1516, which is the presumption
 5      of innocence.  Is Mick available?  Is he here today?
 6              THE MARSHAL:  Yes, sir, he is.
 7              THE COURT:  Would you mind asking him to
 8      come up?  He just might want to listen to the
 9      conversation we're going to have on this.  I think I
10      need to have marshals listening to this.  And then
11      they're going to have to participate in whatever we
12      work out.
13              THE MARSHAL:  Yes, sir.
14              THE COURT:  Why don't we hold up on this
15      516 till Mick gets up here.
16              All right.  Number 518 (sic) was the one
17      that Ms. Sirignano rolled in to the discussion of the
18      reading of the trial transcripts.
19              MS. SIRIGNANO:  Your Honor, that's 1518.
20              THE COURT:  Yeah.  And that's where the
21      Government's response was, wasn't it?  1571.
22              All right.  Shall we go to 1519?  This is
23      Daniel Sanchez' motion in limine to prohibit
24      Government from making statements or argument that
25      improperly suggests that propensity character
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    inferences can or should be made from extrinsic act

 2    evidence.

 3           I guess how I would draw the line is on

 4    either res gestae, or what I'm going to call

 5    enterprise or furtherance of the enterprise evidence,

 6    it seems to me that the Government should be

 7    prohibited from saying because they were involved in

 8    this murder, they were involved in the Molina murder,

 9    for example.

10           You are free to argue that because they

11    committed that murder in furtherance, that that shows

12    that there was an enterprise, and that they did that

13    in furtherance.  But you still can't argue

14    propensity.  If I determine on the 404(b) that

15    certain, what I'm going to call 404(b) evidence -- I

16    know that's a little bit of a misnaming of that

17    category, but I think we know what, as trial lawyers

18    and judges, what we're talking about -- if it comes

19    in as 404(b), then you do get to argue that it's

20    coming in to show intent or pattern, or whatever I'm

21    letting it in for.  But you can't argue that because

22    they did it in the past, they must have done it this

23    time.  And so probably true propensity evidence, the

24    Government can't make the argument and shouldn't make

25    the argument.  I'm trying to think of any situation
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4959

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 39

1   in which it would be proper for the Government to

2   make in this trial a true propensity argument that

3   because they did it in the past, they do it -- they

4   did it here.

5          I can't find my -- I'm looking for 1519.

6   All right.  What is -- I think this was a motion that

7   Ms. Jacks filed, Mr. Jewkes filed.  Can you live with

8   where I'm -- well, I guess I'm pretty much agreeing

9   with you here.  It seems to me that the Government

10  cannot argue and should not argue from any evidence

11  in this case, make a propensity argument.  That's

12  your point; am I correct?

13         MS. JACKS:  Yes.

14         THE COURT:  Oh, there is Ms. Jacks.  I

15  didn't see you there.  Sorry.

16         All right.  Any of the defendants have any

17  arguments?

18         Mr. Mickendrow, let me finish up this

19  motion.  I'll come back to the one that you might

20  want to listen in on the arguments we're about to

21  have.

22         Anybody else on the propensity argument?

23  Mr. Castellano, are you handling this one?  Do you

24  agree with me that probably the Government is not

25  permitted to draw propensity inference, ask the jury

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to draw one, make an argument from any evidence

 2    that's going to get into the trial?

 3            MR. CASTELLANO:  Yes, Your Honor, I think

 4    that only makes sense.  I don't think we can say just

 5    because it happened on day one, it also happened on

 6    day two, we have to tie those things together.  You

 7    touched on it a little bit in your severance

 8    memorandum yesterday, indicating that if an order was

 9    issued, there would be repercussions for not

10    following that order.  But that would be tying up the

11    evidence, as opposed to just saying one thing

12    happened, and then you must believe the other thing

13    happened.  So I agree with the Court.

14            THE COURT:  Okay.  And the defendants may

15    be entitled to a limiting instruction.  There is a

16    pattern jury instruction on the 404(b).  A little

17    trial I had just two weeks ago with Bob Gorence, he

18    wanted it; got a split decision.  He didn't get an

19    acquittal on Count 1 on the conspiracy, but he got it

20    on Count 2, on the distribution.

21            So I understand sometimes defendants like

22    that 404(b) instruction, sometimes they don't.  But I

23    think you're entitled to it.  If you decide you want

24    the 404(b) instruction, and you want it at the time

25    the evidence is coming in, kind of put that burden on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4961

1    the defendant to tell me that they want it, because

2    sometimes they just want to let it slide through and

3    they don't want to highlight it.  So I'm not going to

4    intrude into the trial.  The Tenth Circuit says I

5    should give it at both times, at the time the

6    evidence comes in and at the final instructions.  But

7    I try not to intrude.  So I'm going to have to get my

8    cues from the defendants whether you want me to give

9    it or not.  But I think you're entitled to it.

10          All right.  Anything from anybody else on

11   the propensity evidence that Ms. Sanchez filed?  All

12   right.  That will be the ruling.  The Government just

13   can't ask the jury to draw any inferences or make any

14   propensity arguments.

15          All right.  Mr. Mickendrow, what I'm about

16   to do is I'm about to hear a motion that the

17   defendants have filed requesting what they call the

18   maintenance of the appearance of innocence.  What

19   they're putting into this basket is going to be

20   things that are going to implicate the marshals, and

21   how they're going to try this case.  I'm going to be

22   a judge up here, and I'm going to do the best I can

23   to be a judge and be fair to the parties in this

24   case.  So I'm going to make some rulings, but they

25   are going to be tentative rules.  You're going to get

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4962

```
 1   to listen, and hear why, from a lawyers' standpoint
 2   and a judge standpoint, why we think this is what
 3   this trial ought to look like.  But I'm not going to
 4   cram it down your throat.  So don't panic.  You're
 5   part of the players in this trial, and I want to
 6   respect what y'all have done for us all over the last
 7   few months.  And I want to work with you and be
 8   cooperative going forward.  So I wanted you to hear
 9   this, but -- and I'm going to make some rulings, and
10   then probably we'll be then talking with you.
11   Ms. Wild will be talking with you.  If need be, we
12   may have to pull Marshal Candelaria into the picture
13   or something like that.  So don't panic.  I'm going
14   to do my judge thing.  I'm trying to be fair here,
15   and try to work out some things.  And if they don't
16   work for you, then we'll put them back on the table.
17   Does that sound okay to you?
18            MR. MICKENDROW:  Sounds good, Judge.
19            THE COURT:  All right.  But I thought it
20   made sense for you to hear this.
21            All right.  Let's talk about the shackles.
22   Here's what my thoughts are on the shackles.  It
23   seems to me -- let me do some counting here.  How
24   many people do we have?  We're probably going to --
25   tell me -- I would imagine we're going to switch
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    tables here for this trial.  So they will be coming

 2    out these doors.  Isn't the jury room over here?

 3    This is the jury room?

 4              THE CLERK:  Yes.

 5              THE COURT:  So probably we'll be switching

 6    tables.  So unlike in Albuquerque where -- well, no,

 7    that's what I do in Albuquerque.  The defendants sit

 8    over here, and the prosecution sits over here, we'll

 9    probably switch.  So the big table will be over here.

10    And if necessary, there may have to be a bigger

11    table.  We may have to do a little bit of putting the

12    tables together.  But how many men and women do we

13    have around this table here?  Can somebody count for

14    me?

15              MR. BENJAMIN:  Eleven, Your Honor.

16              THE COURT:  Eleven.  So we've got the five

17    defendants; give them a lawyer apiece, and y'all have

18    got more than two.  So I'm probably going to need a

19    bigger table.  So it's probably going to be over

20    here.  What I'm going to suggest is that the --

21    they're all men for the first trial, so all the men

22    are going to be -- remain shackled at the feet.  They

23    will not have anything on their hands.  And I'll use

24    bunting on both tables, so both the Government and

25    the defense table will have bunting on it.  So, men,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4964

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 44965

1    don't kick the bunting out of the way so they can see

2    your shackles.  Don't do that.  That's not going to

3    help anything.  So watch it.  I guess we'll have to

4    figure out how we're going to organize it so the

5    lawyers can be next to the defendants.  But I imagine

6    we can figure that out.  So that's what I'm thinking

7    about the shackles.

8            The transport -- if I understand the big

9    issue -- I was in the Albuquerque courthouse when

10   Judge Molzen arraigned many of the defendants here.

11   And it was quite a sight.  I mean, there was more

12   high-powered rifles and ski masks and things like

13   that than I'm normally used to, coming in in the

14   morning.  Given that we're going to be with five

15   defendants, I'm going to be asking that the marshals

16   bring in the transport people as inconspicuously as

17   possible, as they would bring in any other

18   defendants; they bring in the SNM defendants the same

19   way, try to get them into the building without any

20   sort of fanfare outside of the courtroom so that

21   neither prospective jurors nor the jurors that are

22   actually selected and are coming into the building

23   each day really notice the transport vehicles, and

24   they slide in and out of the building without any

25   sort of ski masks or any sort of -- maybe men outside

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   with large guns, things like that, when the jurors

 2   either are going to be here on the day that they're

 3   selected or throughout the trial, so the jurors don't

 4   see or get any sense from that.

 5           Seems like there was one other thing.  Can

 6   somebody remind me what the vests were that said SOG,

 7   what those --

 8           MR. BENJAMIN:  Yes, Your Honor.  That's --

 9   I think that's Special Operations Group, Your Honor,

10   and that would get me started on a whole pet peeve

11   from my time in the military for individuals that are

12   wearing that.

13           But the case in point would be sitting in

14   the jury pews right now.  And that's kind of been a

15   morphing attire.  There was individuals in here one

16   day with a whole bunch of zip ties, and everything

17   else.  And so the attire has morphed.

18           And that takes us into the third point,

19   which is, as I styled it, "Gentleperson attire."  I

20   would assume -- and has been the case in every

21   trial -- that the security shows up and is wearing

22   suits, and looks just like counsel.  But I raise that

23   simply because of the way that this has morphed.  One

24   of the things that happened, I think it was the first

25   day in Las Cruces, Your Honor.  There was ski masks

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4966

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4967

1    that kept coming on and off by the guards.  So I

2    think it's something I need to raise.

3              THE COURT:  Well, I guess what I'm thinking

4    of -- will be with the ski masks, if there are guards

5    who are afraid to be in this case and feel like they

6    need to wear ski masks, since we're reducing it down

7    to five defendants for the trial, could the marshals

8    work with the transport, the Corrections Department,

9    and maybe those men, women not be used, so I don't

10   have to have ski masks on or off at any time in the

11   courtroom?

12             As far as the men who have had heavy

13   attire, I guess I would -- you know, I don't have any

14   problem with it for the hearing that we had last

15   week.  But I'm wondering if we need those for the

16   trial.  So I will probably be talking to the marshals

17   about either, A, those people not be in the

18   courtroom.  If they tell me they absolutely have to

19   be in the courtroom, I'll probably want them back as

20   they are now, rather than anywhere up here at the

21   front.

22             All right.  Mr. Benjamin, those were going

23   to be my proposals of how we deal with -- and there

24   may be others, but what you're calling the

25   maintenance of the appearance of innocence.  So what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4967

1    I've outlined, does that sound doable?  Are there

2    other issues we need to address?

3             MR. BENJAMIN:  I think that sounds very

4    doable, Your Honor.  I just have two questions that I

5    would like to address the Court with.  I guess the

6    first is, I understand the Court is going to discuss

7    this with the marshals, but assuming that the

8    marshals suggest that there need to be individuals in

9    the back of the courtroom, or one of the security

10   precautions, I guess the only request, the only thing

11   that's coming to mind is, if there was a way to be

12   included in that discussion after we get to that

13   point, so that we can try and raise some issues and

14   resolve some issues before a final ruling is made?

15            THE COURT:  Well, I guess -- let Ms. Wild

16   sort of talk to the marshals.  I don't really want

17   to -- unless I have to -- to be probably in

18   face-to-face discussions.  If I need to, I will

19   probably do that.  Probably we don't need it to be an

20   adversarial process, and that the Government there

21   and you there.  Let's just see if I can get some

22   feedback here, and if there is issues, we'll be

23   discussing it with you.

24            MR. BENJAMIN:  Thank you, Your Honor.

25            THE COURT:  Does that sound okay?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 4968

```
 1              MR. BENJAMIN:  Yes, Your Honor.  I guess
 2    I'd like to be included.
 3              THE COURT:  Well, I just want the marshals
 4    to be able to speak very candidly to particularly
 5    Ms. Wild.  And you know, you start getting a lot of
 6    counsel around, they may not say everything in front
 7    of the defendants.  And I just don't want to put them
 8    in that position.  But I'll try to be very fair and
 9    make sure that nobody is surprised when we show up on
10    the first day of trial, or throughout the trial.
11    I'll try to keep that at a minimum.
12              MR. BENJAMIN:  The second issue I'd like to
13    address, Your Honor -- and I understand the Court's
14    ruling regarding the bunting and the shackles.  I'd
15    like the Court to consider whether there is an
16    alternative way of doing that, simply because of one
17    of my concerns is, I'm just looking at this table for
18    specifically trial Group 2, even if we expand this
19    table in some way, shape, or form, I don't think
20    we're all going to fit on that side, Your Honor.  I
21    think we're going to have to be on both sides.  Which
22    individuals on this side aren't going to be able to
23    probably realistically keep their feet under the
24    bunting.  So I'm curious if there is not some kind of
25    ankle device or something else that could be used in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4969

1    lieu of shackles?

2            THE COURT:  Well, I appreciate you bringing

3    that up.  Mr. Mickendrow is taking notes back there.

4    And we'll see.  It may be -- and I don't know this to

5    be the case, it may be that the marshals would feel

6    comfortable with certain men not having shackles on,

7    we can seat them on this side of the table, with

8    their attorneys, and other people on the other side

9    are going to need shackles, we can seat them on the

10   other.  It may not be across the board the same.  But

11   I appreciate you bringing alternatives up.

12           MR. BENJAMIN:  I appreciate that, Your

13   Honor.  And I guess that's it on that, I think.

14           THE COURT:  Anything else?  All right.

15   Thank you, Mr. Benjamin.

16           Anybody -- let me have Mr. Adams first,

17   then I'll have you, Mr. Jewkes.

18           Mr. Adams.

19           MR. ADAMS:  Thank you.  May I borrow your

20   microphone?

21           Judge, I would point out along the lines of

22   Mr. Benjamin's last points, I've got two things to

23   raise.  But with shackles it's not -- so, first of

24   all, I do think there needs to be an individual

25   assessment done by the marshals.  If there is a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4970

```
 1   reason, and that's one of the reasons we've been
 2   pushing to get out of the black boxes, so we can show
 3   that there is no reason to shackle anybody.  The goal
 4   has to be that the jurors don't know if the
 5   defendants are in custody or not.  That's what we're
 6   supposed to do.
 7          At least, in South Carolina, if there was
 8   that sound of a shackle, that's automatic mistrial.
 9   It would be reversible error to go forward, if there
10   is any suggestion at all to the jurors that somebody
11   was in custody.  I've done a lot of cases involving a
12   lot of murders, and they're always ways other than
13   shackles in state courts all over.  And if the state
14   courts can afford it, I'm sure the marshals can
15   afford it.  Whether those have been interlocking knee
16   devices, or in some instances, over our objections,
17   stun devices, or whatever, but ways that don't make
18   noise when people walk in and out of the courtroom.
19   Otherwise, we're going to be in a situation where at
20   every break the jurors have to get to their room,
21   white noise has to be turned on before anybody can
22   even get up to go to the bathroom.
23          So I think the shackles -- we're opposed to
24   Mr. Garcia being in shackles, because I think, as
25   much as you try to not let the jurors know, it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4971

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 51

4972

1    inevitable that they're going to hear the rustling of

2    chains.  At that moment, we'll be moving -- we'll be

3    peppering the record with our objections.  So I don't

4    think there is a showing that's been made as to why

5    Mr. Garcia would need to be chained.  I think we need

6    him to act in a natural way with his lawyers.  And

7    we're opposed to any shackling.

8            The other observation I'll make, and this

9    is for the marshals to consider.  They obviously have

10   an important job related to security, and I'm aware

11   of that.  I was leaving the courthouse last week, I

12   believe; it could have been two weeks ago, but I was

13   leaving 10 minutes after court, and I was driving

14   north of town back to the restaurant or hotel or

15   wherever I was going.  And I had to get over onto the

16   shoulder of the road to get out of the way of a

17   caravan, about five vehicles, like two or three vans,

18   and then escort cars with sirens rolling.  It could

19   have only been one thing, and that would be this

20   group of guys being returned to their facility.  So

21   we're going to have to be mindful that jurors have to

22   come and go without being alarmed.  And they have to

23   be able to go home, and there has to be a mechanism

24   where, if they see a whole bunch of cars with sirens

25   forcing them off the road on the way, which gives a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4972

```
 1    signal that these people are really dangerous, watch
 2    out, that they have to have the opportunity to come
 3    tell the Court, and we just have to deal with it.
 4    Obviously, if they need sirens to move people, they
 5    need sirens.  But maybe they need to wait, 30, 45
 6    minutes after court breaks, so people can get on back
 7    to wherever they're going and we don't -- jurors
 8    don't encounter the same caravan.  That's a pretty
 9    frightening experience that I had, as I whipped over
10    on the shoulder.
11            Those are my two points.
12            THE COURT:  Well, I've already talked to
13    Conrad Candelaria a little bit about leaving the
14    building.  And it's been different in Las Cruces than
15    it was up north.  And so he's thinking about that,
16    and he's aware of that issue.  And we'll see how he
17    decides to work it out.  And I'll put that on the
18    list of getting some response and get back to you.
19    But I was aware of that when I left the building as
20    well, and he's now aware of it.  So we'll see how
21    that sorts out.
22            MR. ADAMS:  Thank you.
23            THE COURT:  But help me out.  No drones or
24    anything.  Nobody do any drones or advertise or
25    anything like that, and create any issues for me.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4973

```
 1    defense lawyers got to work with me, too.  Don't do
 2    anything unusual during the trial that's going to set
 3    off any sort of alerts with the marshals that I have
 4    to deal with.  So, everybody, don't do those things,
 5    okay?
 6              MR. ADAMS:  Judge, honestly, we'd like to
 7    do just opposite.  We'd like to take the first step
 8    in getting these gentlemen out of the black boxes, so
 9    they can show the Court that being caged up like this
10    is not necessary.  And that's a very -- they'll still
11    be shackled and belly chained.  That's a very small
12    step to show that they really can comply, so they can
13    earn their right to be treated fairly in front of the
14    jury.
15              THE COURT:  It may be.  But listen to what
16    I'm saying:  Counsel, don't you do anything that's
17    going to create problems for the marshals.  Don't do
18    any advertising, or you know -- I'm not saying don't
19    do advertising -- but don't do anything like drones
20    or anything like that that's going to create
21    additional problems and work for the marshals.
22              MR. ADAMS:  Judge, if you are referring to
23    anything, I have no idea what you're --
24              THE COURT:  You may not.
25              MR. ADAMS:  I don't own a drone.  We have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    one drone that I lost in the neighbor's tree.  I

2    don't know what you're referencing to.

3         THE COURT:  You may not, but people in this

4    room do.  So help me out, work with me.  Don't do

5    unusual stuff.  Because when you do unusual stuff,

6    that makes the marshals nervous, that makes their job

7    harder, when people start doing unusual stuff.  So I

8    think, if the defense counsel sort of do normal stuff

9    for this case, it decreases the number of sort of

10   incidents, and makes the marshals nervous, and then

11   we have to deal with additional problems.

12        All right.  Anybody else?  Mr. Jewkes.

13        MR. JEWKES:  Your Honor, while we have

14   Mr. Mickendrow here, I'd like to bring up the issue

15   of courtroom attire for our client.  I anticipate

16   that every one of these five will be wearing suits or

17   dress slacks and sports coats.

18        THE COURT:  I would agree.  So I will be --

19   that will be one of the things that I'll be

20   requesting of the marshals, is that they assist in

21   helping them dress in street attire, however you want

22   them dressed.

23        Now, y'all are going to have to work with

24   me.  You're going to have to get clothes here

25   earlier, going to have to have them tried on well

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   before the trial.  So start thinking about that
 2   earlier rather than the day of the trial.
 3           MR. JEWKES:  Your Honor, the reason I
 4   wanted to bring this up in front of Mr. Mickendrow
 5   is -- well, two reasons.  First of all, leather
 6   footwear.  What's the marshal and the Court's
 7   decision on that?
 8           And secondly, once we bring the clothing
 9   the first day, does that mean we have to bring it
10   every day, or is there a place here where it can be
11   kept where these guys can be dressed back there?
12           THE COURT:  Okay.  That's a fair question.
13   I don't know the answer for it.  Mr. Mickendrow is
14   writing notes.  Let me -- you just listen for a
15   little bit, Mr. Mickendrow.  There is going to be
16   more people talking, and I'm not going to put you on
17   the spot today.  You may have to think about this.
18   I'll make some rulings today, but they're with the
19   understanding they're tentative.
20           Let's see, Ms. Fox-Young, I think you were
21   next.
22           MS. FOX-YOUNG:  Thank you, Your Honor.
23   Just along the lines of other security measures that
24   I think the jury should not be exposed to.  And I
25   think if the marshals can work around the jury's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4976

```
 1    timeline, the bomb sniffing dogs that are outside in
 2    the morning when we come in, and that are in the
 3    courtroom, I think, are something else that we've got
 4    to work around.
 5          THE COURT:  Okay.  Well, yeah, we'll see
 6    what they want to do and what they need do.  You
 7    know, this is a federal courthouse, after Oklahoma
 8    City, I don't know if anybody gets too worked up
 9    about dogs being around.  But we'll see what they
10    want to do.  I think people expect, when they to come
11    into a federal courthouse there to be certain
12    securities after Oklahoma City.  So certain things
13    may be a little bit less suspicious to jurors.
14          Anyone else?  Mr. Lowry.  Let me let Mr.
15    Lowry, then I'll come back to you, Ms. Sirignano.
16          MR. LOWRY:  Your Honor, I just wanted to
17    follow up and on a point Mr. Adams made, and I
18    understand the Court's concerns.  But I can speak for
19    our counsel table, we've always had what I consider
20    to be an excellent working relationship with the U.S.
21    Marshals, and I appreciate the security that they
22    bring to the courtroom.  But I think it would be
23    really helpful for all involved, if the Court could
24    give us, you know, a game plan.  And I agree with Mr.
25    Adams, it would be really nice if we could get out of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4977

1    black boxes before the trial, if nothing else, to

2    practice in the courtroom.  But if everybody is on

3    the same playbook of how you can earn the right to

4    get out of the black boxes between now and the

5    beginning of trial, it would just be helpful to get

6    everybody on their best behavior, Your Honor.

7            THE COURT:  Thank you, Mr. Lowry.

8            Ms. Arellanes?

9            MS. ARELLANES:  Judge, the only thing is,

10   that it may be premature, but there are a couple of

11   females, not in this trial.  So I'm not quite sure

12   how the Court wishes to configure, arrange the

13   females around the defense table.  Maybe we can

14   address that at a later point.

15           THE COURT:  Well, I guess at the second

16   trial, I'm thinking that there -- I'll be probably

17   putting -- leaning on the marshals to let me just

18   treat them like any other defendant.  They just go

19   around the table like everybody else.  Is that kind

20   of what you're wanting?

21           MS. ARELLANES:  I think, so Judge, yes.

22           THE COURT:  So that's going to be a much

23   more logistical issue in the second trial, because

24   we're almost doubling the number of defendants that's

25   going to be in the courtroom.  But we're going to



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4978

```
 1   have to do some reconfiguring of this courtroom to

 2   try nine people sitting at that table.

 3            MS. ARELLANES:  Okay.  Thank you, Judge.

 4            THE COURT:  At least one is out of custody,

 5   so I can put one person on one side of the table

 6   without having her in any sort of shackles or

 7   anything.

 8            Anybody else got anything on the wish list

 9   they want Mr. Mickendrow to hear, Ms. Wild to hear,

10   the Government to hear, the Court to hear?

11            MR. BENJAMIN:  Yes, Your Honor.  One final

12   issue.

13            THE COURT:  Mr. Benjamin.

14            MR. BENJAMIN:  And I think this probably

15   deals with Count 1, but specifically with Count 2,

16   Your Honor, part of when we sit places in trial, we

17   usually choose those places.  So I guess before

18   seating arrangements are done, if we could have some

19   input on that as well, where we're sitting.

20            THE COURT:  Well, you can say.  I'll tell

21   you that's not going to be my biggest concern.

22   You're probably going to get a seating chart.

23            MR. BENJAMIN:  I understand, Your Honor.

24            THE COURT:  If you want to express it to,

25   Ms. Wild, go right ahead.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4979

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4980

```
 1              MR. BENJAMIN:  The Court made a call for
 2    any requests.
 3              THE COURT:  There you go.  I did.  I'm not
 4    shutting you down.  I'm just trying to give you quick
 5    and dirty rulings.
 6              All right.  Anybody else?  And I don't mean
 7    to shut anybody down.  I tried cases.  And I used to
 8    think it was important -- I used to have Ms. Wild
 9    head over and stake out my table as soon as the
10    courthouse was open.  So I know how important it is.
11              All right.  Ms. Armijo, Mr. Castellano, do
12    y'all want to --
13              MS. ARMIJO:  Your Honor, one of the things
14    that we would ask -- and we'll work with the U.S.
15    Marshals on certainly -- is I know that, in looking
16    at the witness list, we're going to have double
17    digits of cooperators testifying.  Some are in
18    custody with the U.S. Marshals, some are in custody
19    with Corrections.  There is at least one person that
20    I know we'll have testify that is out of custody.
21    And so -- and this is just for the first trial alone.
22    So I think that there may be issues with -- and we'll
23    have to deal with this -- as far as how they're
24    coming into the courtroom.  Because they're not going
25    to be coming into the courtroom necessarily -- when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4980

```
 1    we had Mr. Cordova here last week, we took great
 2    precautions of how we brought him in, how he came
 3    into the courtroom and other things.  So I think that
 4    that's going to be another consideration.
 5            THE COURT:  Yeah, it's going to be a
 6    consideration, because I understand I'm going to be
 7    trying it in this room.  And that's the jury room.
 8    So you can't come in through the jury room like you
 9    brought -- I assume that's how he got here.  He was
10    all of a sudden standing right next to me, so I
11    assume that's how he got here.  So, yeah, I mean, I
12    guess for better or worse, your cooperating witnesses
13    are going to have to come in through that back door.
14            MS. ARMIJO:  So then the defense is going
15    to object to if -- you know, they're shackled or not.
16    I mean, is that going to be a concern of the defense?
17    So that's another issue to raise.
18            THE COURT:  Well, let me say this:  I
19    guess, unless the defendants tell me otherwise, it
20    wouldn't seem to me that it makes any difference to
21    you how the cooperating witnesses come into the
22    courtroom.  If they look all shackled and everything,
23    then it seems like that's the image you're probably
24    going to want to paint of those people; that they've
25    got a long list of bad acts, and they're unsavory
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4981

 1    characters, and they are not to be trusted.  But tell

 2    me if I'm wrong.

 3            MR. ADAMS:  You are correct.  I don't think

 4    they have a fair trial right.  We do.  So I think

 5    those are different.  And if they come all dressed

 6    up, we'll probably talk about how they changed

 7    outside for court, and got out of their shackles,

 8    with -- probably with Bryan Acee's assistance and

 9    escorted in.  That would be my anticipation here, six

10    weeks out from trial.

11            THE COURT:  All right.  So I guessed

12    something right.

13            Mr. Castellano.

14            MR. CASTELLANO:  Ultimately, when it's all

15    said and done, and the Court makes its decisions, I

16    think we will, and probably the defense, will ask the

17    Court to make defense-specific decisions that

18    minimize the risk of prejudice.  So ultimately, we'll

19    probably have to make a record on the Court's

20    decisions.  So we just want to be mindful of that,

21    avoiding the error on the record.

22            Related to shackles, I have seen the

23    marshal service put things on the shackles that

24    silence them sometimes so you don't hear them under

25    the table.  So that's another option.  It's either

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4982

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4983

 1    tape or cloth.

 2         Related to the clothing of the security

 3    personnel, I think, in some ways, it may be

 4    impractical for some of them to have a suit every

 5    day.  And it may not work with their other --

 6    otherwise, their attire, for purposes of

 7    transportation and whatnot.  But I think, as long as

 8    we talk about it and have it squared away ahead of

 9    time, we can get that addressed.

10         THE COURT:  Okay.  All right.  Let me hear

11    from the defendants.  Any other issues you want to

12    put on the table?  I guess -- I agree with what

13    Mr. Castellano said, assuming that I understood

14    fully, is we are going to work -- my goal will be to

15    reduce prejudice to the defendants as much as

16    possible in this trial, consistent with probably the

17    pushback that I get from the marshals.  And I use

18    that in a good way.  That's their job.  So my goal is

19    very much to try to reduce the prejudice.

20         The shackles, I think, are doable.  I can

21    tell you that if -- and I'll go back and listen in

22    the jury room, but for example, I've been working out

23    of the vestibule here.  I can't quite navigate this

24    building, so I've just been working out of the

25    vestibule.  I cannot hear anything in here.  As soon

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    as I open the door to stand over here to come in,
 2    it's noisy.  And so it is fairly noisy in here, and I
 3    cannot hear a word in the vestibule.  Assuming that's
 4    the same acoustics that you have in the jury room,
 5    then it would be normal procedure for me -- and we'll
 6    talk about this when we get to the pretrial
 7    procedure -- I'm going to put the burden and
 8    obligation on Government, on me, my staff, clerks,
 9    everybody.  We're going to be staring at that defense
10    table to make sure we have every defendant here
11    before the jury comes into the room.
12            So, you know, I'll have to ask the men
13    don't sit there and move your legs a lot.  Don't
14    create noise.  We're trying to make sure the jury
15    doesn't know about the shackles.  So you're going to
16    have to be careful with that.
17            Ms. Wild, are you on the phone?
18            THE CLERK:  Yes, sir, I am, but I've been
19    on and off dealing with another case of yours, so
20    I'll have to review the transcript to understand all
21    this discussion in totality.
22            THE COURT:  Okay.  What I was going to
23    propose is, I don't want to put Mr. Mickendrow on the
24    spot to just shoot from the hip with all this that
25    all of us have probably been thinking about for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4984

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64985

```
 1    months.  I was going to suggest a couple of things.
 2    One is that you get the transcript, and you review
 3    it.  If you want to get a copy of it, give it to Mr.
 4    Mickendrow, so that he can review it.  I think it
 5    would be also good if the marshal reviewed it.  So I
 6    think if you'd get those transcripts and review it.
 7    And then, if I could get you to maybe sit down or
 8    talk on the telephone with Mr. Mickendrow, and if
 9    necessary, Marshal Candelaria, bang out -- I mean,
10    you've done enough trials with me, you know where I'm
11    going to want to go, and where I want to end up; work
12    with the marshals to try to come up with the best
13    game plan we can, that's most consistent with
14    prejudice being minimized to the defendants, without
15    sacrificing the security that the marshals have to do
16    their job.  And then, let's come back, through me,
17    with a plan that we propose to the parties, and then
18    either we'll have to tell them that's what we're
19    going to do, and they'll have to make a record at
20    that point, or we'll just have to -- or we'll see if
21    there is some tinkering that we can do to improve the
22    plan.
23              Does that sound like a plan, Ms. Wild?
24              THE CLERK:  Yes, sir.
25              THE COURT:  All right.  Mr. Mickendrow,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   again, I don't want to put you on the spot, because I
 2   wanted to just invite you to come and listen, and
 3   understand the process that we're going through, and
 4   the important role you're going to be playing in this
 5   trial, and how we want to work with you, and don't
 6   want to just dictate things to you.  We want to work,
 7   and be a partner with you in this.
 8            If you do want to say some stuff, you're
 9   welcome to.  If you want to just demure, and work
10   with Ms. Wild and see what we come up with.
11            MR. MICKENDROW:  Judge, if you don't mind,
12   A Chief Barela is here, and he would like to say a
13   few words.
14            THE COURT:  All right.  Mr. Barela, you're
15   welcome to say --
16            CHIEF BARELA:  Jim Barela, Chief of the
17   U.S. Marshals.  I just want to assure everybody that
18   it's not our first rodeo.  We've all done this
19   before.  And, of course, with security being an
20   important part of it, that's our number one priority.
21   But I can guarantee -- we don't want to do anything
22   to cause any marshal responsibility for any mistrial
23   or anything.  So we've done this before.  And all of
24   your concerns I've heard today, I've seen them
25   throughout states, how they've all been handled.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4986

1    we'll get a good medium, like the Judge said, with

2    Mr. Mickendrow working with Ms. Wild, we'll get a

3    medium.  Somebody may not be always be happy, but our

4    priority is security, and then definitely not a

5    mistrial.  So all your defendants -- excuse me,

6    everybody, to include witnesses and everybody, is

7    treated equal.

8            And we work with the clerk's office, not

9    only Ms. Wild, but here, to set things up with the

10   tables different, so that juries will not have any

11   bias by seeing anybody in custody.  And we'll be in

12   suits -- deputies in suits.  We've handled all those

13   issues before.  And we'll work with Ms. Wild and come

14   up with a good solution I think you guys will be

15   happy with, okay?

16           THE COURT:  All right.  Thank you,

17   Mr. Barela.  Appreciate it.

18           Mr. Castellano, do you have anything

19   further on it?

20           MR. CASTELLANO:  Yes, Your Honor.  One

21   thing that comes to mind, I think the jury will hear

22   that some of these individuals are still in prison.

23   So I don't think anyone should be surprised by that.

24   I think, if people were arrested when they were not

25   incarcerated, I think it's fair for the defense to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4987

```
 1   ask:  Was this person arrested on the streets?  They
 2   weren't in jail at the time of arrest.  But I think,
 3   obviously, some of these things happened in prison,
 4   and some of the defendants are still in prison.  So I
 5   think there will be some testimony to that effect.
 6          THE COURT:  Okay.  Well, y'all know the
 7   evidence much better than I.  So I'll just have to
 8   rely both on the defendants and the Government to
 9   alert me.  Otherwise, I'll, you know, let the
10   evidence develop at trial.  If there is a problem
11   there, y'all need to alert me to it, to see if there
12   is something I need to be doing, or there is some
13   ruling I need to make.
14          All right.  So I'm going to put defendants'
15   motion, which is largely Mr. Gallegos' motion, and
16   Mr. Benjamin's on behalf of him, I'll put it aside,
17   and we'll -- I think we have some -- I can see where
18   the Court is going on some of these issues.  But we
19   need to work with the marshals before we make some
20   final rulings there.
21          All right.  Let's go ahead and take our
22   morning break.  When I come back, I want to go to --
23   I think it's Government's 1520.  It's the United
24   States' motion in limine to preclude questioning
25   Government witnesses regarding personal information.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4988

```
 1    So we'll take that motion up when we come back.

 2              MR. BENJAMIN:  Your Honor, if I may -- and

 3    I apologize I didn't get this, based on technical

 4    difficulties, I just filed a response on 1520.

 5              THE COURT:  When did you file it?

 6              MR. BENJAMIN:  I'd say two minutes ago.

 7              THE COURT:  Oh, okay.  All right.  Give me

 8    something to do on the break.

 9              All right.  So we'll take that one up as

10    soon as we come back.

11              (The Court stood in recess.)

12              THE COURT:  All right.  Let's go on the

13    record, and look around.  It looks like everybody is

14    here.  I want to spend a little time on the phone

15    with Ms. Wild talking about some of the things.  She

16    was a little bit in and out of our conversation

17    because of another case that I have up there that I'm

18    going to have to set -- doesn't impact this, but some

19    emergency hearings over the next few days, next week,

20    something like that.  So I need to work with her and

21    fill her in where she had not heard what we were

22    talking about.  I talked to her about maybe some

23    approaches, sort of my philosophy on some of this.

24    What I was looking to gain.  We'll try to get back

25    with you pretty quickly, and see if we've got a game
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4989

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 69

```
 1   plan that everybody is comfortable with.

 2           There was one motion that we skipped over

 3   that I want to come back to.  I think we've covered

 4   it.  But I want to make sure that there is nothing

 5   more that needs to be said on that.  And I think Ms.

 6   Sirignano, it's your motion, it's number 1517.  It's

 7   the opposed motion in limine to exclude co-defendants

 8   statements.  If I understand what this one is -- and

 9   correct me if I'm wrong -- you don't want things

10   admitted into trial under the co-conspirator

11   exception until there is a James hearing.  And we're

12   in the middle of that, so there is going to have to

13   be some rulings on that.  You raised some Bruton

14   issues.  We've talked a lot about those.  I made some

15   preliminary rulings in some of the motions to sever

16   about how I view Smalls, and that.  Is there anything

17   else in your motion that we need to deal with, that

18   you need guidance on?

19           MS. SIRIGNANO:  No, Judge.  It was just

20   filed to make the record regarding the matters that

21   you just stated.  And there are some Bruton issues.

22   And I believe the Government did say today that they

23   were looking into those three specific categories

24   that you just mentioned.  So I think we're fine

25   there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4990

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 70 of 991

```
 1                THE COURT:  All right.  Anybody else on the

 2     defendants' side have any issues on that that they

 3     want to raise?

 4                Mr. Castellano?  Mr. Beck, have anything on

 5     that.

 6                MR. CASTELLANO:  No, Your Honor.

 7                THE COURT:  All right.  So I'll put that

 8     aside.  I think we're in the middle of the James

 9     hearing, and I know we've got some Bruton issues down

10     the road.  But I've given some guidance on the

11     motions to sever as to how I'm going to deal with

12     some of those issues.

13                MS. SIRIGNANO:  Judge, yesterday you asked

14     me to talk to Ms. Waters about the real-time and

15     daily transcripts, and I did that by email.  And over

16     the break talked with Ms. Bean, and we've agreed to

17     three real-time terminals for the defense.  And then

18     daily transcripts only for issues as needed.  And

19     this was something that Ms. Waters agreed to.  So

20     we'll do the authorization and we'll get that moving,

21     Your Honor.

22                THE COURT:  All right.  If she's

23     comfortable with it, I'll approve it.

24                MS. SIRIGNANO:  The other little

25     administrative issue that I was reminded to request
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    of the Court was we'd like to have permission for our
 2    clients to bring their tablets during the trial, if
 3    that's satisfactory.
 4              THE COURT:  Why don't you do this:  I don't
 5    have any problem with that, but can you talk to the
 6    marshals, talk to Ms. Waters, see if there is any
 7    expenses that I need to be aware of.  But as far as
 8    me, if the marshals -- does the Government have any
 9    problem with that?  Do you have any issue with that?
10              MR. CASTELLANO:  No, Your Honor.
11              THE COURT:  All right.  So I don't have any
12    problem with it.  The Government doesn't have any
13    problem.  Ms. Waters, marshals don't have any
14    problem, then y'all can go ahead and do that.
15              MS. SIRIGNANO:  Thank you, Judge.
16              THE COURT:  Anything else?
17              MS. SIRIGNANO:  No, Your Honor.
18              THE COURT:  All right.  So let's go to the
19    United States' motion in limine to preclude
20    questioning Government witnesses regarding personal
21    information.  It seems to me -- here's the line I
22    would sort of draw, or propose for the parties
23    here -- when the Government puts their witnesses on,
24    I always allow each side a little bit of leeway to
25    put personal information on, so that they can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4992

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4993

```
 1    introduce to the jury, so the jury has some sense of
 2    who they're talking to.
 3            So I'll take my cues from the Government.
 4    If the Government wants to do a little, a lot, that's
 5    their business.  But you will be opening the door.
 6    So whatever you sort of do with them, then it seems
 7    to me you've got to be careful, or otherwise, it
 8    gives the defendants a little bit of leeway.  So I'll
 9    look for you to define the scope of the information
10    that you want the jury to know about the witness.
11    But, otherwise, I can't think of any reason that the
12    defendants would need to get into the personal
13    information of the Government's witnesses.  So I'd be
14    inclined to grant that motion.
15            Anybody -- well, it's your motion.  It's
16    the Government's motion.  I don't know if you filed
17    it, Mr. Beck?
18            MR. BECK:  Yes, Your Honor.
19            THE COURT:  Does that line make sense to
20    you?
21            MR. BECK:  Yes, Your Honor.
22            THE COURT:  All right.  How about the
23    defendant, Mr. Castellano?
24            MR. CASTELLANO:  One thing that we'll -- or
25    may come up for purposes of impeachment is, I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 4993

```
 1    the FBI, for at least one witness paid for a trade

 2    school for that witness, so that person could have a

 3    trade and work out on the streets.  What I'd like to

 4    do is indicate that the Government paid for him to go

 5    to trade school, without necessarily stating what

 6    that trade is.  In other words, it would make it

 7    harder for people to find him if they don't know what

 8    the trade is.  I'm not sure it's relevant to know

 9    what that is, other than they provided him a trade.

10            THE COURT:  So the FBI has paid one of the

11    cooperating witnesses money for a trade school?

12            MR. CASTELLANO:  Yes.  At least one.

13            THE COURT:  All right.  I see what you're

14    saying.  All right.  I have no problem with that, but

15    I'll listen to the defendants.  But can the

16    defendants live with this sort of the way I've

17    structured the personal information?  Mr. Benjamin?

18            MR. BENJAMIN:  Your Honor, as I said in my

19    response, I can't think of --

20            THE COURT:  Tell me what number your

21    response is.  I'm sorry.  I read it, but I don't have

22    it tied to the -- paper clipped to the motion.

23            MR. BENJAMIN:  1586, Your Honor.  It was

24    the one that was filed, I think probably 20 minutes

25    now --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            THE COURT:  Yeah, you warned me about that.

2    Yeah, I did get it.  All right.  Go ahead.

3            MR. BENJAMIN:  Your Honor, and the response

4    essentially ends with the fact that I don't know how,

5    and in trying cases normally, personal information

6    does not come up.  And the witness that Mr.

7    Castellano is talking about in that trade school

8    doesn't affect Mr. Gallegos.  So I would let the

9    defendant that's affected by that decide whether it's

10   relevant or not.  And I think they could probably

11   approach, would be the course.

12           But this motion, and in my response

13   specifically, and the reason I wanted to get it on

14   file, I think dovetails into what we were talking

15   about, the appearance of innocence.  The motion that

16   I filed in 1586 has about two pages that deals with

17   an appearance, that if one takes that at face value

18   regarding Special Agent Acee, one can interpret

19   things in a whole different way.

20           And so we have defendants that are sitting

21   here, that the Government in its -- in 1520 starts

22   making what I would refer to as scandalous

23   allegations that they're going to do things.  But we

24   haven't seen that done.  And the concern I have with

25   Document 1520 is it's a repeat action by the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 4995

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 75

```
 1   Government to attempt to scare the Court into
 2   security concerns that we just saw addressed in the
 3   appearance of innocence.  And that's why my 1586
 4   starts out with detailing essentially the assault on
 5   the house that occurred in Southern New Mexico.  And
 6   so I raise it --
 7           THE COURT:  Well, interestingly enough,
 8   this motion is usually filed by the defendants.
 9   Because they don't want the Government witness to get
10   on there, and they talk about the Government witness'
11   military history, and the fact they served in Iraq,
12   and they've been in government service for 20 years.
13   And it's a big windup to, you know, the fact that you
14   need to believe this Government witness, so in some
15   ways, it seems to me we're just saying the Government
16   witnesses, cut it out.  They're not going to sit
17   there and talk about their kids and family, like they
18   do in some trials.  And you're not going to get to
19   bring it up either.  So it's a little bit of a
20   cleaver cut, but it seems to me it cuts probably
21   pretty fairly for both sides.  Your thoughts?
22           MR. BENJAMIN:  That's -- I agree with the
23   Court.
24           THE COURT:  All right.  Well, we'll have to
25   obviously play it by ear.  There may be some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    testimony -- is everybody comfortable with the one
 2    witness, as far as we not -- we get into the trade
 3    school, that they paid for a trade school, but does
 4    anybody need to get into what kind of trade school?
 5    I don't know what the trade school is, so I'm not --
 6          MR. CASTLE:  Judge, I think we have to know
 7    what kind of trade school it is before we know what
 8    it is.  If it's something -- I don't know what it is.
 9          THE COURT:  Does the Government have
10    problems sharing that with the defense lawyers?
11          MR. BECK:  I think it's disclosed in the
12    materials that we disclosed for Giglio.  So I think
13    they can probably find it.  We don't really have a
14    problem disclosing it to them outside of that.
15          THE COURT:  Why don't you tell Mr. Castle
16    what it is; otherwise, I'm going to assume that the
17    trade school is not coming in.  If you want to
18    reraise it, Mr. Castle, after you find out what it
19    is, you can.  But we won't get into personal
20    information, the Government witnesses.
21          You rise, Ms. Duncan?
22          MS. DUNCAN:  Your Honor, on behalf of Mr.
23    Baca, we're comfortable with the line that the Court
24    has drawn.  We just ask that -- there may be
25    instances where, for example, the type of employment
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4997

1    of a particular witness is relevant for impeachment

2    or credibility.  And so we could clearly raise that

3    with the Court before delving into that

4    cross-examination.  But I'd reserve the right to

5    argue that certain personal information may be

6    relevant for a very particular purpose.

7            THE COURT:  Okay.  Well, when you say type

8    of employment, I assume that when the Government does

9    their introduction, they're going to identify the

10   person as to what his job -- his or her job title is,

11   where he or she works, probably what the job entails.

12   So I'm not including that in personal information.

13   So I would think that what that person does as far as

14   their job is fair game, both by the Government and by

15   the defendant.  Because that goes to personal

16   knowledge, how they know what they're testifying

17   about, and those sort of things.  Does that satisfy

18   your concern?  And personal information, I'm thinking

19   of kids, spouses, where you live, that type of stuff.

20           MS. DUNCAN:  Yes, Your Honor.  That answers

21   one of my bigger concerns.  But I still -- I could be

22   arguing something with the Court that ultimately is a

23   total nonissue.  But I think that there may be some

24   times when personal information is relevant for

25   cross-examination.  So I would just reserve the right

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    to raise it with the Court, which I would do before
 2    asking that question.
 3            THE COURT:  All right.  But, otherwise,
 4    we'll probably stick pretty closely to this.  And if
 5    my pretrial rulings are going to mean anything, I'm
 6    going to have to probably give them a presumption of
 7    applying throughout trial.
 8            All right.  So with that caveat about what
 9    I define personal information as, that will be the
10    ruling on that motion on the personal information
11    motion.
12            All right.  The next motion, Mr. Blackburn
13    and I have probably exhausted what I have to say on
14    this issue in a trial that he had.  What was that
15    fellow's name?  Courtney?
16            MR. BLACKBURN:  Yes, Your Honor.
17            THE COURT:  So while I am very sympathetic
18    to -- probably shows my Libertarian and Originalist
19    leanings to allowing jurors to know what the
20    sentencing parameters are, and also the consequences
21    of a conviction, the Tenth Circuit and the Supreme
22    Court have said that my thoughts are not very
23    important, and that they have pattern instructions
24    here.  And so I think I am forced by the controlling
25    law to grant the United States' motion in limine to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 4999

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79

```
 1    exclude any reference to punishment or sentencing,
 2    and tell the jury that they should put that out of
 3    their minds.  So I'm inclined to grant the motion.
 4              Anything the Government wants to say on
 5    that motion, Mr. Beck?
 6              MR. BECK:  No, Your Honor.
 7              THE COURT:  All right.  Defendants, Ms.
 8    Fox-Young?
 9              MS. FOX-YOUNG:  Your Honor, what is the
10    document number?
11              THE COURT:  This is 1521.
12              MS. FOX-YOUNG:  Okay.  I don't have it up,
13    but it's my recollection that the Government asked
14    the Court to preclude any questioning of the
15    cooperators as well.
16              THE COURT:  Well, I thought yesterday when
17    we did it, there was no request from anyone on either
18    side to take out or redact the portion of the plea
19    agreement that dealt with the sentencing.
20              MS. FOX-YOUNG:  That's right.  And so, Your
21    Honor, where the Government says the United States
22    requests the Court prohibit the defense from
23    eliciting testimony about potential punishment from
24    any of the Government witnesses, I think that's the
25    only place where we would take issue on behalf of Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5000

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5001

```
 1   Perez.  I mean, we take issue, but we understand the
 2   controlling law.  But on behalf of Mr. Perez, I
 3   think --
 4              THE COURT:  Well, I've read Mirabal -- it's
 5   been a while, it's not -- well, it's not fresh in my
 6   mind -- it looks like it's a very recent case.  Does
 7   Mirabal prohibit the defendants from eliciting
 8   testimony about potential punishment from Government
 9   witnesses?  Does it say that?
10              MS. FOX-YOUNG:  Your Honor, I'll have to
11   pull it up.  This isn't our motion, it's the
12   Government's motion.  I'll pull it up right now.
13              THE COURT:  All right.  Ms. Duncan?
14              MS. DUNCAN:  Your Honor, to answer the
15   Court's question, I did read Mirabal today, and no,
16   it does not.  That case was from Judge Johnson, and
17   he allowed the defense to impeach the witness with --
18   and I'll pull it up right now -- with his plea
19   agreement -- about the plea agreement and the
20   expectation of a lighter sentence because of his
21   cooperation.  What the judge didn't allow the defense
22   to do was get into the specifics of the guidelines.
23   And what the Tenth Circuit held -- they presumed that
24   was a confrontation clause violation by limiting
25   cross-examination, but said that, given the evidence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5001

 1 │ in the case, any error was harmless.

 2 │         THE COURT:  Okay.  Well, I'm not hearing

 3 │ from anybody that anybody wants to redact or exclude

 4 │ that portion.  It was in your motion, Mr. Beck, but

 5 │ are you comfortable with where I'm coming out, that

 6 │ defendants' sentencing punishment -- we'll tell the

 7 │ defendants that that is off limits for them, and the

 8 │ defendants -- nobody can discuss sentencing and

 9 │ punishment as far as defendants.  But it will be

10 │ still fair game for cooperating witnesses?

11 │         MR. BECK:  Yes, I think that's fair.

12 │         THE COURT:  All right.  Everybody

13 │ comfortable where we've drawn the line?  All right.

14 │ So the Government's motion is granted, with the

15 │ exception of sentencing and punishment for

16 │ cooperating witnesses will still be fair game.

17 │         And yesterday we talked about motion number

18 │ 1522, and I think everybody was in agreement that

19 │ that probably was a good idea.  So that Fed Ex

20 │ package reminds me that all CJA vouchers, unless that

21 │ package contains some or there are some on my desk

22 │ back in Albuquerque, I'm totally caught up.  I had a

23 │ few questions on some of these, some of you will be

24 │ getting a little bit more questions from me than in

25 │ the past.  But they're all off my desk, unless that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5002

```
 1    package contains some more, or there are some back in
 2    Albuquerque.  So I'm pretty caught up.
 3              So this is the United States' motion.  I
 4    think everybody was in agreement it should be
 5    granted, that the Government would be permitted to
 6    present witness testimony in installments.  What I
 7    understand that to be is that they're going to
 8    package and group their story together.  I think
 9    everybody agreed that that probably was a good idea
10    to try to manage the workload in this case.  And, in
11    fact, we're encouraging the Government to do that,
12    and to also then disclose as much of that in advance
13    as they can, so that defendants can know who they'll
14    be facing in the coming days.  And what that will
15    mean, so everybody is clear -- and at least what I
16    think it means is that, for example, Mr. Acee can
17    come up several times during the Government's case,
18    as he's done in the James hearing.  It will sort of
19    be packaged.  And there may be some other defendants
20    where they do the same thing.  We'll be permitting
21    that.  I think they can do it anyway.  But we'll
22    permit them to call and re-call and maybe re-call
23    several times some of the witnesses.
24              Did I package your motion correctly?  Is
25    this yours, Mr. Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5004

```
 1                    MR. BECK:  Yes, you did, Your Honor.
 2                    THE COURT:  Anything else you want to say
 3       or need to get the green light on this?
 4                    MR. BECK:  No, Your Honor.
 5                    THE COURT:  All right.  How about from the
 6       defendants?  Anybody disagree with how we're going to
 7       allow the Government to put on their trial, their
 8       case?  Mr. Adams?
 9                    MR. ADAMS:  Judge, I don't have a problem
10       with that.  And I think it makes a lot of sense.  I
11       did want to just make sure we're clear.  I'm hearing
12       you say you'll grant them the latitude to do that,
13       but in exchange, they need to really play fair with
14       us about when they call somebody, whether they're
15       going to re-call them later.  Because I anticipate we
16       will have lengthy crosses, some of which would be
17       relevant to different times they call the witness.
18       So we'll need to make some choices based on whether
19       they're intending to call somebody two, three, or
20       four times.  And that when they give us the overview
21       of the case, they'll let us know which people they
22       intend to call multiple times so we can plan
23       accordingly.
24                    THE COURT:  Could the Government do that?
25       If you know you're going to be calling witnesses
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5004

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5005

1   multiple times, you let the defendants know, so they

2   can figure out when to do their robust

3   cross-examination?  Is that basically what you're

4   saying, Mr. Adams?

5            MR. ADAMS:  I am.  I would hate to put

6   jurors to sleep through the same cross four times.

7            MR. BECK:  Yes.

8            THE COURT:  So we'll have that agreement.

9   We'll also have an agreement you won't put the jurors

10  to sleep.

11           MR. ADAMS:  I hope that goes without

12  saying.  If so, I might need to reserve the issue of

13  bringing a drone into the courtroom.

14           THE COURT:  No drones, no drones.

15           Mr. Castle?

16           MR. CASTLE:  Your Honor, I would just note

17  that such an order should go both ways, so that the

18  defense can also present in installments in a joint

19  trial like this.  I don't know if there is any

20  objection to that, but not seeing any nodding heads

21  from the prosecution table.  I may have need for

22  Count 1 and 2 to call Agent Acee also, and then for

23  Count 3, be another.  I'm sorry, I'm not loud enough

24  probably but --

25           MR. BECK:  That's fine.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5005

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 85006

```
 1                THE COURT:  All right.  So those agreements
 2    will then cut both ways as far as packaging.
 3                Mr. Walz, is Ms. Rodriguez okay?  Are you
 4    okay back there?
 5                MR. WALZ:  We're fine.
 6                THE COURT:  All right.  Talking about
 7    jurors asleep.  We don't want defendants sleeping.
 8                MR. WALZ:  She's okay.
 9                THE COURT:  All right.  Nothing else on
10    that motion, then, that's how the Government will put
11    on their case and the agreements we have there.
12                All right.  Let's talk about the United
13    States' motion in limine to allow transcripts
14    containing English translations of recorded Spanish
15    conversations as substantive evidence.  I've heard
16    some tapes.  I've heard some -- certainly read a lot
17    of transcripts.  The transcripts have been in
18    English.  So I guess I, A, don't know what the extent
19    of the problem is, how much of the conversations are
20    in Spanish, and how much of them are in English.  I
21    guess my sort of -- the first cut is -- and I'm not
22    sure I have an ultimate solution to offer.  But my
23    thoughts are that unless there is an agreement among
24    the parties what to do with the transcripts, the
25    transcripts should not come into evidence.  They
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5006

```
 1   should be used as demonstratives.  The real evidence
 2   should be the tapes themselves.  We'll be talking in
 3   the pretrial conference portion about the use of
 4   JERS, so we'll be putting these on electronically for
 5   the jury to listen to again.  If it's just a
 6   sprinkling of Spanish words that are used, this is
 7   just a proposal.  I mean, I'm working with you.  I'm
 8   wondering if we can come up with a little glossary,
 9   or something that gives the jury the definition of
10   those Spanish words that are sprinkled.  If, on the
11   other hand, you tell me it's whole transcripts that
12   are in Spanish, I'm not sure what else we can do
13   other than maybe admit those transcripts because of
14   the English requirement for federal court, that the
15   evidence has to go back.  So I guess my proposal
16   would be, if it's a smattering, transcripts don't go
17   back, discs do.  Discs will then go on the JERS
18   system, which we'll talk about, if you're not
19   familiar with the JERS system in federal court in the
20   District of New Mexico.  So they'll have the
21   recording back there ready to be played as soon as
22   they go back to deliberate.  The transcripts won't
23   go.  If a conversation or conversations are totally
24   in Spanish, the transcript should come in.  If there
25   is a disagreement among the transcripts, you can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 87

```
 1    either argue it with me and I'll work it out, or if

 2    it's so severe, we might have competing transcripts.

 3    But those would be my thoughts as to how to deal with

 4    the transcript in Spanish that are in the

 5    conversations.

 6              This is motion 1523.  Mr. Beck, is this

 7    your motion?  Mr. Castellano, is it yours?

 8              MR. CASTELLANO:  Yes, Your Honor.

 9              THE COURT:  All right.  Could you live with

10    what I've proposed?  Do I not understand the

11    situation?  What's your thoughts?

12              MR. CASTELLANO:  I think you understand the

13    situation.  I think that when we're talking about the

14    Spanish language transcripts, it's really a

15    smattering.  I think we're talking about words and

16    phrases, as opposed to entire conversations.

17              THE COURT:  If you had to guess, of the

18    number of Spanish words that we might -- if we were

19    putting a glossary together for the jury, what would

20    you say -- what number would you say would go on that

21    glossary or index?

22              MR. CASTELLANO:  My guess is that maybe 5

23    percent of the conversations would have words or

24    phrases.  I don't think it's a large --

25              THE COURT:  So it's only 5 percent of the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5009

 1    transcripts?

 2              MR. CASTELLANO:  I think so, Your Honor.

 3              THE COURT:  And then how many words off

 4    those transcripts do you think they'd be looking at?

 5              MR. CASTELLANO:  I'm not sure.  I don't

 6    think it's a large number.  But I think there would

 7    be some work to put together a glossary.  But I don't

 8    think it's a large number of words on any given

 9    transcript.

10              THE COURT:  All right.  It seems to me that

11    that's probably the approach.  Can you live with

12    that, Government?

13              MR. CASTELLANO:  I think so.  If we run

14    into problems putting together a glossary, one issue

15    may be whether there is an agreement on terms or not

16    with the defense.  So we may get pushback there, we

17    may not.

18              I think I heard the Court say that the

19    transcripts will not go back to the jury.  Would you

20    consider allowing the transcripts to go to the jury

21    to aid in listening, with an instruction which says

22    the transcripts are only to aid you in hearing the

23    transcripts.  If there is any discrepancy between the

24    two, the tape recording prevails, and it is the

25    evidence?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Well, I'll certainly consider
 2     it.  I'll see what the defendants say.  If the
 3     defendants oppose the transcripts being back there,
 4     then I probably will go for the defendants on that.
 5     But I'll certainly consider it.
 6                Anything else on your motion, Mr.
 7     Castellano?
 8                MR. CASTELLANO:  No, Your Honor.
 9                THE COURT:  All right.  Let's hear from the
10     defendants.  Ms. Sirignano?
11                MS. SIRIGNANO:  I think Mr. Cooper was
12     before me.
13                THE COURT:  I thought he was over there
14     sneezing.
15                MR. COOPER:  We would oppose the use of the
16     transcripts.  And I don't think that using a glossary
17     is a good idea either.  I think the jury has to hear
18     the evidence from the witness in that chair.  The
19     Government is going to say -- ask the witness a
20     question, and the witness is going to say, Well, he
21     needed to get his huesos.  What does huesos mean?
22     Huesos means bones.  The juror has to -- every one of
23     these jurors has to hear that testimony, go back into
24     the jury room and remember that huesos means bones.
25     And I think that's how we deal with the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                1-800-669-9492
                        BEAN & ASSOCIATES, Inc.          e-mail: info@litsupport.com
                        PROFESSIONAL COURT
                        REPORTING SERVICE
                                                                    DNM 5010

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 90

```
 1   English-Spanish issue.
 2           THE COURT:  All right.  So if I understand
 3   your proposal from the defendants -- we'll hear from
 4   everybody else in a minute -- transcripts go back.
 5   Are they part of evidence or not part of evidence?
 6           MR. COOPER:  No, I don't think transcripts
 7   go back.  I don't think transcripts should be used.
 8   If it's 5 percent of the transcripts, and only a few
 9   words or phrases, I think it's incumbent upon the
10   Government to ask the question:  What does huesos
11   mean?  What does orale mean?  What does whatever that
12   mean?  They translate into English, because it's
13   going to be a Spanish speaker that's going to be
14   testifying as to what huesos means or orale means or
15   whatever the Spanish term is.  And this jury hears
16   what that testimony is, and they have to rely on the
17   evidence that comes in through that witness.
18           THE COURT:  All right.  If I allow the use
19   of transcripts during the trial, what's then your
20   position about whether they go back or not?  Well,
21   first of all, let me ask a foundational question.
22   Should they be admitted into evidence or not
23   admitted?
24           MR. COOPER:  No.
25           THE COURT:  Okay.  What about going back to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5011

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 91

1    the jury room?  Because remember what's going to

2    happen in the jury room, they're going to be

3    listening -- if they decide to review the evidence in

4    this detail, they will be able to punch up and listen

5    to the recordings.  Do you want them looking at the

6    transcript at the same time or not?

7            MR. COOPER:  Judge, I think it ought to be

8    determined at the time, during the trial, on a case

9    by case basis, and we see how much of that testimony

10   is in English, how much is in Spanish, and then make

11   a determination at that point; not here today, not

12   having seen what that testimony is, and how much of

13   it is in Spanish.

14           THE COURT:  Okay.

15           MR. COOPER:  So I would say we ought to

16   wait for the trial.

17           THE COURT:  How close is Mr. Cooper's

18   position to the rest of the defendants?  Start with

19   you, Ms. Sirignano.

20           MS. SIRIGNANO:  Your Honor, I'd agree with

21   about 95 percent with Mr. Cooper.

22           MR. COOPER:  I object.

23           MS. SIRIGNANO:  My only concern, Judge, is

24   that these transcripts that have been provided by the

25   Government are incomplete, and they're unreliable.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5012

1    As we've seen during the James hearing, there is big

2    gaps of unintelligibles, UIs in parentheses,

3    throughout these transcripts.  So I personally would

4    not like these transcripts going back to the jury, as

5    they're nonevidentiary.  And we have to first start

6    out with whether or not we could actually use them

7    here during the trial first, before even getting to

8    the discussion that they should go back.  And I don't

9    think they should go back at all.

10           THE COURT:  All right.  Mr. Maynard?

11           MR. MAYNARD:  And I'm of the same position.

12   I think they may be demonstrative, they might help

13   the jury in listening to the tape.  But the case law,

14   basically, is they're not substantive evidence, and

15   they don't go back to the jury room.  And with

16   respect to the Spanish translation issue, I think

17   from the tapes that I've listened to and the

18   transcripts that I've read, most everything is in

19   English.  And there is a smattering of Spanish

20   phrases and words.

21           And the best approach would be, at the time

22   the jury is listening to the tape, with a witness on

23   the stand, who probably was participating in the

24   conversation, let that person express and translate

25   what the meaning is, especially because sometimes

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5013

```
 1    words can have different shades of meaning in a
 2    different context.
 3              THE COURT:  Okay.  All right.  Well, let
 4    me -- I'm hearing different things on the
 5    transcripts.  Are the defendants opposed to the use
 6    of transcripts in the courtroom?  Is that what you're
 7    saying, Ms. Sirignano?  I mean, I can probably go
 8    with the defendants that they, A, are not admitted
 9    into evidence, and B, they're not going to go back to
10    the jury room.  But I guess I'm leaning toward
11    allowing the transcripts to be available to the jury
12    during the trial.
13              MS. SIRIGNANO:  Judge, the transcripts that
14    we've been given by the Government have huge gaps in
15    the -- from the recordings, either because the
16    recordings --
17              THE COURT:  But isn't that -- I mean, I
18    guess my reaction to that, isn't that an honest
19    transcription, rather than having the court reporter
20    guessing what is said there -- which would be a
21    bigger concern to me -- they're just admitting they
22    can't figure out what it is, which will probably be
23    the reality?
24              MS. SIRIGNANO:  Well, we've got competing
25    transcripts on some, Your Honor.  And this is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    something that we're going to have to decide pretrial

2    on these transcripts.  As some of them -- some of the

3    versions aren't necessarily what our

4    transcriptionists have come up with.  So this is

5    probably something that we're going to need to take

6    up pretrial, with competing transcripts.  I'm not

7    saying all, but I think some of them aren't

8    completely accurate, which is why we had them

9    transcribed.

10           THE COURT:  But that's a separate issue

11   than whether the jury has no transcripts.  Are you in

12   agreement that some transcript ought be in their lap

13   in the trial while they're listening?

14           MS. SIRIGNANO:  If they're accurate, Judge.

15   That's the best that I can come up with.  And I'm not

16   saying that all of them are right now.  That's my

17   problem.

18           THE COURT:  Okay.

19           MR. MAYNARD:  There is another issue with

20   the transcripts and the recordings, Your Honor, in

21   that some of the conversations are fairly lengthy,

22   and the transcripts are long, and yet maybe only 10

23   percent of a 10-minute conversation is relevant.  So

24   we're going to have to address the issue of, Well, on

25   this conversation out of this exhibit or Bates number

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5015

1   transcript, what is the Government going to offer?

2   The entire conversation?  Or just what relevant

3   excerpts are going to be allowed to come in?  And, of

4   course, there is also going to be issues over not

5   just translating the Spanish phrases and words into

6   English, but there is going to be witnesses

7   attempting to interpret or -- the context of the

8   conversation.  And the best evidence of the

9   conversation is just the conversation itself, the

10  relevant portions.

11          THE COURT:  All right.  Thank you, Mr.

12  Maynard.

13          Mr. Cooper.

14          MR. COOPER:  A couple things, Judge.  When

15  the jurors are allowed to have transcripts, it lends

16  more importance to that particular testimony.  It

17  creates "super evidence" for that particular

18  testimony.  So I would object to the use of the

19  transcripts at all.  The other thing is when we have

20  transcripts, that translation is necessarily the

21  transcriptionist's idea as to what the individual

22  said in Spanish, and what he or she thinks it ought

23  to mean in English.  So I think there is a

24  confrontation sort of an issue there.

25          THE COURT:  Well, on the transcripts, is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    somebody interpreting -- are they putting a

 2    translation of Spanish next to the words?

 3              MR. MAYNARD:  There are a few transcripts

 4    where some words -- where the English is next to the

 5    Spanish word, and it's in parentheses.

 6              THE COURT:  Put in brackets or something.

 7              All right.  Any of the other defendants

 8    want to speak on this?  Ms. Fox-Young?

 9              MS. FOX-YOUNG:  Your Honor, it sounds like

10    the Court is going beyond the translation issue, and

11    is inclined to allow transcripts for all recordings;

12    is that right?

13              THE COURT:  Well, the motion is broad in

14    that it allows transcripts.  So before I can

15    determine whether it includes English translation,

16    I've got to, I guess, take the first issue, and that

17    is whether there is going to be transcripts at all.

18              MS. FOX-YOUNG:  Okay.

19              THE COURT:  Because if there is no

20    transcripts at all, I don't have to worry about

21    putting English translations next to it.

22              MS. FOX-YOUNG:  Okay.  Well, just to

23    reiterate, I think the Government has made clear --

24    this is perhaps something of a nonissue, if there is

25    not much of a translation problem, and not much

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5017

1   Spanish language to deal with, without rehashing

2   everything, for the record, we would oppose providing

3   the jury with transcripts during the course of

4   testimony.

5           If the Court is inclined to come up with a

6   default position, certainly would oppose entering

7   them into evidence and sending them back with the

8   jury.  And I do think that there is an accuracy

9   issue.  And I think, if the Government can make a

10  showing during trial that it's necessary, for some

11  reason, perhaps the Court could take it back up.  But

12  our position would be, with no showing and no basis

13  for the Court at this point, as to how that would be

14  helpful for the jury, we'd oppose it.

15          THE COURT:  All right.  Anybody else?  Any

16  other defendants want to speak on this issue?  Mr.

17  Maynard?

18          MR. MAYNARD:  Just, again on that point,

19  Your Honor, the best evidence -- if the tape, to the

20  extent that it's fairly clear and intelligible, the

21  jury can hear it.  They don't really need the

22  transcript to help them out.

23          THE COURT:  All right.  Thank you,

24  Mr. Maynard.

25          Anybody else on the defense side.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5018

```
 1            All right.  Mr. Castellano, I assume you
 2   still, after listening to the defendants, want
 3   transcripts in the jurors' lap during the playing of
 4   these tapes?
 5            MR. CASTELLANO:  Yes, Your Honor.  And the
 6   reason being that jurors, and people in general, take
 7   in information differently; some are auditory
 8   learners, some are visual learners.  And I think even
 9   this Court, when reading the jury instructions to the
10   jury, puts them on the visualizer so the jury can
11   read and follow along.  And that's for a reason.
12   That's because people take in information differently
13   and understand better when they can both see and
14   hear, so you're using more senses to understand the
15   evidence.  And so I think that the transcript
16   certainly is an aid to the jury.  And I agree that
17   the recording is the evidence.
18            Related to a point Mr. Maynard made, I
19   agree that sometimes excerpts are better because you
20   might have a 20-minute conversation.  And no one
21   wants to hear a 20-minutes of recording.  So there
22   might be a point where there are excerpts.  But that
23   also means the defense will have to figure out if
24   there is something that they want from that
25   conversation that we're not using because we're going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5019

Appellate Case: 20-2058 Document: 010110415675 Date Filed: 09/29/2020 Page: 5020
99

to use what's relevant to us, and they might want other points. I do agree that excerpts can be useful rather than listening for 20 minutes.

THE COURT: What do you do about Mr. Cooper's point -- and I think somebody else brought it up, too -- if your transcripts have the court reporter or the reporter interpreting the word, would you be better off taking that court reporter interpretation out, and just listing that statement from the witness? What's your thoughts about that?

MR. CASTELLANO: It could be done that way. Or if the witness disagrees with the interpretation, saying that's not what it means, that could be clarified. Some of the transcripts, from time to time, have people who are actually involved in the conversation who correct the transcripts after there is a first draft. So that may actually be fairly accurate. I can't speak to all the transcripts. But sometimes the players are allowed to listen to the transcript and make corrections to it before it's finalized.

THE COURT: What would be your preference as to the Spanish word being in brackets or not brackets? Would you prefer that they be there, and then there be explanations? Or if the witness adopts

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 5020

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100

```
 1    the translation, would you rather pull them out and

 2    just do it all by examination?

 3              MR. CASTELLANO:  I'd prefer to leave them

 4    in, otherwise we'll spend the rest of our time

 5    correcting transcripts and then redisclosing them to

 6    the defense for their take on the redaction.  And I

 7    think we'll just be doing that up until the trial

 8    starts.  So I think we go with what we have.  And if

 9    there are disagreements, then certainly they can be

10    highlighted through examination.

11              THE COURT:  Do you see -- it may have been

12    Mr. Cooper raised -- any sort of confrontation clause

13    issues there?

14              MR. CASTELLANO:  No, because the witness

15    will be on the stand subject to examination.  It

16    would be a confrontation problem if the person could

17    not be cross-examined.

18              THE COURT:  All right.  Anything else you

19    want to say on your motion?  Any other guidance that

20    you need other than these parameters?

21              MR. CASTELLANO:  No, Your Honor.

22              THE COURT:  All right.  Mr. Cooper.

23              MR. COOPER:  Confrontation problem is that

24    the translator, the transcriptionist is not here to

25    be cross-examined.  It's not somebody else.  So I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5021

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 101

```
 1    think that's a confrontation issue, Judge.

 2               THE COURT:  All right.  Anybody else want

 3    to have a say before I rule on this motion how we're

 4    going to do the transcripts?  From the defense side?

 5               All right.  Well, the transcripts will not

 6    come into evidence.  I will allow the jurors to use

 7    transcripts.  The transcripts can remain with the

 8    court reporter's translation, or if there is some

 9    other etymology as to how that got into the brackets,

10    or the parens, that can be explored either on direct

11    or cross.

12               I don't think there is a -- any sort of

13    confrontation problem here.  And if anybody wants to

14    explore this further, I'd be glad to take briefing on

15    it.  But it's not coming into evidence.  So the court

16    reporter's translation is not coming into evidence,

17    because the transcript is not coming into evidence.

18    It's going to be the audio, the disc that's going to

19    be coming into evidence.  So the jury will not take

20    the transcripts back to the jury room.  And they will

21    just be used as aids as they listen in here.  They

22    will have only the disc or recording in the jury

23    room.  So the only thing that's going to be coming

24    into evidence is going to be the transcription.

25               So the Government will produce, identify
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5022

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 102 of 2023

1   the transcripts that they're going to be using at

2   trial.  The defendants, then, have a right to

3   challenge that.  So Ms. Sirignano, if you don't agree

4   with the translation, talk first to the Government,

5   say:  Here is how we think it ought to be translated,

6   or here's the changes we think ought to be made.  If

7   they don't agree, then you'll need to submit it to

8   me, and I'll make a ruling.  Probably I'll need the

9   tape and the competing transcriptions.  See if you

10  can work those out.  If you can't work them out --

11          All right.  Any confusion?  Everybody

12  understand?  Everybody got a ruling on that?  Did I

13  rule on all the motions there -- all the motions?

14  All right.  That's how we will handle transcripts.

15  And I will use the standard jury instruction from the

16  Tenth Circuit on that information, because I think

17  we're doing what the Tenth Circuit normally predicts

18  and requires.

19          All right.  So let's go to 1524, which is,

20  again, the United States' motion to preclude

21  eliciting testimony about sensitive government

22  recording devices or programs.  I think we may have

23  banged out the compromise, or at least the -- how

24  we're going to deal with this.  I hope I can remember

25  everything that we did.  But I think that basically

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5023

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5024

 1   the defendants can ask questions about the recording

 2   devices except in two areas.  One, they cannot ask

 3   questions about the size of the device.  And they

 4   also can't ask questions about the portals, the

 5   recharging information, or other things you might

 6   stick into a portal, or how the portal is configured,

 7   or what it looks like.

 8          Are those the two areas that we agreed

 9   would be kept confidential, Mr. Beck?

10          MR. BECK:  I think that's right, Your

11   Honor.

12          THE COURT:  So are you comfortable, then,

13   that I grant your motion in part and deny it in part?

14   Everything else is fair game, but those two areas

15   would be off limits?

16          MR. BECK:  Well, I mean, I guess I'm

17   thinking about fighting it harder when it's already

18   out there in a publicly filed document.  I mean, I

19   think the basis of this motion is also the relevance

20   of asking about details about the recording device at

21   trial, as opposed to for a motion to suppress.

22          I mean, if we think about a motion to

23   suppress in the Fourth Amendment context, once the

24   Court has ruled on a pretrial admission of evidence,

25   and defendants move to suppress, that search, or a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5024

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104

```
 1    lot of the contentions about why that evidence should
 2    be suppressed are not included in the trial.
 3          And I think the same goes here.  I think
 4    the Court should be wary about allowing the
 5    defendants sort of free rein for a host of reasons;
 6    free rein to go into how they were trained to use the
 7    devices, how they secreted the devices in prison, the
 8    dimensions of the devices, how they turn them on or
 9    off.  I mean, certainly, as I've said -- and I've
10    remained with this position throughout -- that's fair
11    on cross-examination, to ask about whether you
12    intentionally turned on or off the devices.
13          What I'm concerned about is -- and I'm not
14    saying anyone would do this; I just think it may be a
15    good time to discuss it here, to talk about what
16    intentions are -- to go down a rabbit hole in which
17    they're going to just, you know, beat this thing to
18    death, and we're going to fall into what happened
19    when Special Agent Williamson was on the stand -- or
20    it may not have been Special Agent Williamson; it may
21    have been Mr. Cordova -- in which we had to kind of
22    wait after every question for whether the Government
23    was going to object or not.
24          And so I think the Court may be wise to be
25    a little bit more heavy-handed here.  And just as the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5025

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105026

 1   Court admonished us to talk to our cooperators about

 2   what's coming in and what's not.  I think that the

 3   Court may stand by this ruling, and that's fine.  But

 4   we may also think about how much and why we're going

 5   to get into these recording devices.  I mean,

 6   certainly, as we heard from Mr. Cordova, STIU

 7   provided them in the cells as a ruse, that's fair

 8   game; that, you know, they may be contraband, I think

 9   that's fair game.

10           And again, I think this all may be for

11   naught, because I don't think the defense is going to

12   want to waste a lot of time in trial trying to ferret

13   out this evidence.  I just think we all may be wise

14   to just be careful and think about what the purpose

15   of bringing in this evidence is at all.

16           THE COURT:  Well, I guess my problem is,

17   last week, if I understood what Mr. Jewkes and

18   Ms. Jacks were saying, is that probably the biggest

19   attack they're going to have at trial is going after

20   Mr. Cordova and other witnesses.  And it seems to me

21   they're going to probably -- I don't want to do the

22   defense for them, but they're going to attack every

23   possible angle they can about how Cordova recorded

24   those conversations, including -- you know, maybe it

25   was Mr. Herrera that said this, I can't remember

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5026

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106 5027

```
 1    now -- but was he turning it on or off?  Did he know
 2    how to function the machine?  I guess I need to know
 3    what parameters the Government wants imposed.
 4    Because, to a certain degree, I think I have to rule
 5    this way, I have to say:  This is off limits.  And
 6    then the rest of it I probably can't restrict the
 7    defendants.  I guess, at trial, if it gets
 8    cumulative, if it's gets irrelevant, immaterial, you
 9    know, then those objections are always available.
10    But at least going into the trial, I think I need to
11    probably have the Government state this is what they
12    want to be off limits.  I tell the defendant:  That's
13    off limits.  And then the rest of it is at least
14    within their ballgame.  It doesn't mean they have to
15    use it, but it's in their ballgame.
16            MR. BECK:  And I think -- I mean, I think
17    all of that is fair.  As I said, I don't think this
18    is going to be an issue, because I think that the
19    points you're bringing up here are fair game for
20    cross-examination, certainly.
21            I would say, in addition to this list, I
22    think the Government would have concern about going
23    into the specific amounts of times the devices were
24    taken in and out because of battery issues.  I don't
25    know that any of the cooperators would specifically
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5027

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 107

1    know that information or recall that information.

2    But I could see how that would be used for

3    counterintelligence purposes.  And that information,

4    I think, is law enforcement sensitive, in terms of

5    the amount of hours, possibly, that these devices

6    record.

7           On the other hand, you know, I could see

8    that information would be helpful.  So, I mean, I

9    wish I was more -- I wish I was being more helpful to

10   everyone in the room.  I can see that it's a hard

11   decision for everyone to make.  I think that these

12   two areas are a fine line for the Court to draw at

13   this point.  And I think we can probably operate on

14   this basis.  And if we need to address it, we can do

15   that at a later time.  I don't expect that we will.

16   But if we need to, we can bring that up at a later

17   time.

18           And I know the Court can say -- I know the

19   Court always has an open door.  I understand if the

20   Court wants to say this is a pretty firm ruling, you

21   better have some really good grounds to address this

22   later since we're moving quickly, which is why I am

23   saying I think these two points are fine to draw for

24   now.  I think we could be comfortable with these

25   lines.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  You were adding a third one on

2     about the battery.  Does that need to be in or out?

3     Can we just live with the two, or do we need to make

4     it a three-point exclusion?

5          MR. BECK:  I think we can live with the

6     two.  Because I think the battery is going to be

7     important for -- I mean, I think it will be important

8     on both sides.  Because, as we'll see here in a

9     couple of days, I mean, there is going to be lots of

10    debate about why there aren't just days and days of

11    recording, right?

12         So I think it's important for our case to

13    establish that, as it's probably important for their

14    case, to establish the opposite.  So I think, in this

15    case, it's probably fair game.

16         So I think I've now talked myself in a

17    circle.  And I think the Court's two areas are fine

18    for now.  We can work with that.  If we can't, then

19    I'll have to bring that up.

20         THE COURT:  Now, was the Government's

21    concern about the size or the shape?  I mean, for

22    example, it would seem to me that everybody needs --

23    the jury, including all of us here in this room --

24    need to convey in some ways the size of this.  It's

25    not like Mr. Cordova had a recording bank there, you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5029

```
 1   know, like a recording studio in his cell next door.
 2   But at the same time, we're not going to have one of
 3   these devices in the courtroom so somebody can
 4   actually show the size.  I mean, if Mr. Cordova
 5   wanted -- I have no idea if this is right or not --
 6   raise his fist and say it was the size of my fist or
 7   half the size of my fist, or it was about the size of
 8   my finger, would that be okay?  So the jury has some
 9   sense -- because we're talking about -- we're talking
10   about putting these in cells.  We're talking about
11   dropping them in beds.  We're talking about a lot of
12   stuff.  I think that some information about the size
13   is going to be important to both sides telling their
14   story here.
15            MR. BECK:  Yeah, I think that's okay.
16            THE COURT:  Is it the shape or the size
17   that's the problem?
18            MR. BECK:  I don't necessarily think it's
19   either one, as opposed to getting into details about
20   the specifics of either of those.  And what I mean by
21   that is, I think it's okay to say:  It's the size of
22   my fist, or it's the size of my finger, because I
23   think that will be important for both sides.  I think
24   if we talk about its -- you know, the specific
25   aesthetics; that it looks like X, I think that would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5030

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110

```
 1    be -- I think that would be a concern, and I think
 2    that's where probably the law enforcement privilege
 3    overcomes any need for that.  I think really 403, and
 4    the usefulness of that, versus other reasons for
 5    keeping it out, we'll probably keep that out.  So I
 6    think, generally, if we get into the size.  You know,
 7    for instance, it's the size of, you know, an MP3
 8    player; it's the size of an iPhone; it's the size of
 9    a car battery; it's the size of a watch battery,
10    something like that, I think all that stuff is fine.
11    I think, if we start talking about:  It looks like X,
12    I think that would be the concern.  And I don't think
13    that is probative.
14            THE COURT:  Let me -- since I'm probably
15    ignorant the most of what it looks like -- if the
16    person says:  It's round or it's square or it's
17    rectangle, it looks like a match box, those sort of
18    things, is that fair game to give some visual
19    description of what the recording device looks like?
20            MR. BECK:  I mean -- so I'd like to say
21    yes, and I think that the answer is yes.  But I also
22    am not privy to what these things look like.  And I
23    don't know whether our cooperators will have readily
24    available that information either.  I don't know the
25    conditions under which they use them.  So I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113032

```
1    that's fair.  I think that's fair to ask circular,

2    rectangular, any other shape they can think of.

3              I guess what I'm getting at is, you know,

4    if for instance someone was going to say:  It looks

5    like a leather shoe with a heel in it, and I take off

6    my shoe, and I hold it up to my ear and talk through

7    it, thinking of the Smart show that I watched with my

8    dad when I was little.  "Get Smart," thank you.

9    Right.  That would be Government sensitive

10   information that we don't want out there.  The

11   particular aesthetics of the device.  But the size,

12   the shape, those sorts of things I think are fair

13   game.  Does that sort of color in where I think the

14   Court should draw the line?

15             THE COURT:  I guess.  I hadn't thought

16   about if there is some packaging here.  But --

17             MR. BECK:  I think there may be -- and I

18   think that's what the law enforcement privilege gets

19   at, is I think that if, for instance, they -- I mean

20   I'm trying to think -- I don't know these things, so

21   these are just examples, but I'm thinking, you know,

22   if they could secrete it in clothing, well, that may

23   be fair game.  I mean, what I'm getting at is, if

24   there was this Get Shorty -- Get Short -- sorry,

25   that's the wrong -- Get Smart, thank you.  I'm now
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   showing my generation.  If there was a Get Smart
 2   shoe, that would be something the Government would
 3   have an interest in protecting, that may override
 4   their need to bring it out in cross-examination.  But
 5   in terms of the size, the shape of these devices, I
 6   don't think that's the problem as much as:  It's this
 7   color; it looks like this; you know --
 8             MR. MAYNARD:  Could I ask what it's
 9   disguised as?  I mean, is that what you're getting
10   at?
11             MR. BECK:  Right.  I think that would be
12   the concern:  What it's disguised as.  I mean, in
13   this case, I'm not sure that's a huge concern.  Thank
14   you for helping me out on that, yes.  But if it's
15   disguised as X, I think that's where the law
16   enforcement privilege comes in, to keep that out of
17   the case.
18             THE COURT:  All right.  Anything else you
19   want to say on your motion then, Mr. Beck?
20             MR. BECK:  No, Your Honor.
21             THE COURT:  All right.  So if I understand
22   what the Government is saying that they want to keep
23   out will be the portals:  Any sort of questioning
24   about what goes in the portals, and what the portals
25   look like.  The shape and size are fair game.  If --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5033

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113

```
 1   any questions about how it's disguised would be okay.

 2   Now, what I understand that would permit the

 3   defendants to do is, for example, Ms. Sirignano, I

 4   guess, had a picture of it.  She could show it to the

 5   witness and say:  Is that what it looked like?  And

 6   that would be a yes-no answer.  But that would be

 7   okay.  Am I understanding correctly, Mr. Beck?

 8             MR. BECK:  No, I don't think so.

 9             THE COURT:  No.

10             MR. BECK:  So the way the device was maybe

11   smuggled in or secreted is not okay.

12             THE COURT:  Well, what she had a picture of

13   was just the recording device.  I don't think she has

14   a picture of how it was secreted.

15             MR. BECK:  Right.

16             THE COURT:  But whatever this device was,

17   she thinks she has figured out what you've told them

18   a lot, so they have a picture from 2007 or 2008, or

19   something, if they showed that picture, would that be

20   a problem?

21             MR. BECK:  Yes, I think it would be.

22             THE COURT:  Because that falls under what?

23             MR. BECK:  That falls under the law

24   enforcement privilege -- the law enforcement

25   sensitive privilege.  I know what that device --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5034

1          THE COURT:  Why does that not come under

2     the shape, which you said, I thought, was okay,

3     rather than Mr. Maynard's question of it being:  How

4     is it disguised?

5          MR. BECK:  I think -- I think that's a

6     good -- so I think that picture is a good example.

7     That picture may be law enforcement sensitive, and so

8     we don't want to bring that into the courtroom.  I

9     mean, we can talk about -- you know, liken this to

10    classified information.  There may be classified

11    information out there in the public sphere, but we

12    can't talk about that; we can't bring it in, even if

13    it's out there.  So that picture may be law

14    enforcement sensitive.  And so I would ask the Court

15    to tread lightly on even going this far.  But if we

16    ask:  Is that the device used, especially the length,

17    said no; when we ask what are the differences, that's

18    what concerns the Government, is the specific

19    aesthetics of these devices.

20          Now, if we look at that device or that

21    picture, and we say:  Is it about that big, I still

22    think that's going too far.  I still think -- I think

23    what is okay is to say, just as Your Honor did, is it

24    about the size of a fist?  Is it -- you know, there

25    is no -- I don't see that there is probative value to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115036

1   getting into:  Does it look like this picture, and

2   what are the specific differences?  I don't see there

3   is probative value:  Does it look like this picture?

4   There is probative value to:  Does it have an on-off

5   switch?  Is it about as big as your fist?  Is it

6   about as big as your finger?  Is it about as big as a

7   car battery?  Can you rewind the device?  Those

8   questions are probative of issues in the case.

9            But whether it looks like the picture, and

10  what are the differences, are not probative.  And to

11  the extent they are, the law enforcement sensitive

12  privilege overrides the introduction of that evidence

13  in the trial.

14            THE COURT:  You had -- in your motion you

15  talked about sensitive government recording devices

16  or programs.  Is there something in addition to

17  programs that you're trying to sweep in other than

18  just the recording devices here?

19            MR. BECK:  The programs would be the ways

20  in which devices are secreted or installed or

21  something like that.  So the shoe that I was giving

22  the example of; obviously, the whole shoe -- I mean,

23  I don't know.

24            THE COURT:  But the word "programs" relates

25  still to this recording device?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5036

```
 1                MR. BECK:  Right.  So when we talk about --
 2                THE COURT:  There is not another program
 3      out there we're talking about?
 4                MR. BECK:  Right.  When we talk about means
 5      and methods of law enforcement being protected, the
 6      mean would be the device; the method would be how
 7      it's secreted.  So the programs likens to the method.
 8                So I understand that the defense would like
 9      to bring out that STIU brought them in in a ruse, or
10      through the trades or something like that.  And I
11      think that's fair game.  But, when we talk about how
12      the device was -- as I said, if it's like a shoe,
13      that would be the program, the way in which it may be
14      secreted or it may not.
15                THE COURT:  All right.  Anything else,
16      then, on your motion, Mr. Beck?
17                MR. BECK:  Not right now, Your Honor.
18                THE COURT:  Well, so I -- let me see if I
19      can state again more accurately what the Government's
20      position is:  There would be no questioning about the
21      portal or what goes into the portal, what devices are
22      used in the portal, or what it would look like.  And
23      then as far as this category of disguises, we could
24      talk generally about shape and size.  So you can
25      probe there, using somewhat general language.  The
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5037

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 117

 1   technique of taking Ms. Sirignano's picture and

 2   showing it both to the jury and to the defendant, or

 3   having the defendant take, on butcher block paper and

 4   draw it or something like that, that sort of

 5   specificity would not be allowed.

 6            So I think that's the Government's

 7   limitations that they're seeking here.

 8            Mr. Adams?

 9            MR. ADAMS:  Thank you, Your Honor.

10            THE COURT:  Did I capture that right, Mr.

11   Beck?  Was that a better try?

12            MR. BECK:  You did, Your Honor.

13            THE COURT:  All right.  Mr. Adams.

14            MR. ADAMS:  Judge, I'm not so familiar with

15   the law enforcement privilege and the argument that's

16   being made there.  This is not a terrorism case.

17   This is not one where we have other issues at play.

18   We're not operating in a SCIF.  We've found online --

19            THE COURT:  I think the Government's

20   position, though, is, and correct me if I'm wrong,

21   Mr. Beck is, from last week, is that this is not --

22   they're not trying to suggest this is a terrorism

23   case, but they use these recording devices

24   internationally.  And so they don't want it disclosed

25   in New Mexico, because they use this throughout the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5038

 1   world in terrorism cases.

 2           MR. ADAMS:  That's fine.  And we found

 3   online -- Ms. Sirignano has the EAGLE up on her

 4   computer.  Mr. Lowry has the HAWK up on his, through

 5   Google searches.  So it's fair game.  I mean, what

 6   they view as privileged -- they're making the choice

 7   to introduce this evidence.  We have Sixth Amendment

 8   rights to fully confront -- not partially confront --

 9   and they can classify it as a rabbit hole all they

10   want -- but to fully confront the witness and a right

11   to present a full defense.  If they're so concerned

12   about the sensitive nature of the devices, they don't

13   have to use that evidence.  They're making a choice

14   to put it in play in this courtroom.

15           I'm not going to agree -- I'll obviously

16   follow whatever ruling you have -- but I'm not going

17   to agree a centimeter of an inch to give up any

18   constitutional right and make any sort of agreement.

19           At issue for us, for Mr. Garcia, and for

20   many of these men, is absolutely, the Government's

21   ability and their agents' ability to manipulate the

22   collection of evidence that's presented in this

23   courtroom.  When they can turn on and off the

24   devices.  And the Government wants, I believe -- and

25   I think they want to hide behind this notion of:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119 5040

```
 1    Well, keep them away from talking about the battery

 2    life, keep them away from this, so the insinuation at

 3    the end of the case is we did the best we could do

 4    with what we had.

 5              THE COURT:  I think the battery life is

 6    back on.  I think, as Mr. Beck talked, it was

 7    important to both sides to talk about the battery

 8    life.  So I don't think that's off the table.  Am I

 9    correct on that, Mr. Beck, that you decided the

10    battery life stays on the table?

11              MR. BECK:  That's right, Your Honor.

12              MR. ADAMS:  Then my position is it's all on

13    the table; not just so we can give them a hard time,

14    that's not the point at all.  But for us to be able

15    to complete the fullest, broadest, most powerful

16    defense we can present as to their witnesses' ability

17    to manipulate the evidence, we can't agree to any

18    limitation on this.

19              Obviously, again, you can limit us, and

20    we'll follow that ruling.  But I don't think I'm in a

21    position to agree to any limitation on the

22    cross-examination related to these devices.

23              THE COURT:  All right.  Thank you, Mr.

24    Adams.

25              MR. ADAMS:  Thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5040

```
 1            THE COURT:  Anyone else want to speak on
 2    the Government's request for limitations here?
 3            All right.  Anything further, Mr. Beck, on
 4    that?
 5            MR. BECK:  Well, I mean -- I think,
 6    obviously, we're constrained to evidentiary rules,
 7    the rules of evidence here.  And, obviously, they
 8    take into consideration constitutional rights.  So,
 9    as I said, the information they're seeking isn't
10    relevant to an issue in this case -- and so it would
11    be not admissible under 402 -- I mean, I understand
12    Mr. Adams' argument that they want to fully explore
13    manipulation of the evidence.  And as I said, they
14    can.  They can ask whether they can rewind, go over
15    all those things that were explained in court the
16    other day.
17            The dimensions of the device don't have to
18    do with any manipulation of the data.  And the
19    aesthetics of the device don't have to do with any
20    manipulation of the data, which is why I think those
21    two areas are important, so --
22            THE COURT:  Well, I'm going to grant -- did
23    you have something, Ms. Sirignano?
24            MS. SIRIGNANO:  Just a quick footnote.
25            I think the idea that this thing is so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    secretive is just complete nonsense, Judge.  Even you

2    can pull up this stuff on the internet.  They gave

3    this to their cooperator.

4              THE COURT:  Why did you say it that way?

5              MS. SIRIGNANO:  It's that easy.  It's that

6    easy.  You know, the fact that this stuff --

7              THE COURT:  I feel slighted.

8              MS. SIRIGNANO:  I'm sorry, Judge.

9              THE COURT:  I have an iPhone.

10             MS. SIRIGNANO:  It wasn't meant that way.

11             THE COURT:  I'm in the 21st Century.

12             MS. SIRIGNANO:  You've got your iPhone, go

13   right ahead, type in the HAWK device.  It's right

14   there.  Not one picture says law enforcement

15   sensitive.  It's proprietary, sure.  But -- and the

16   fact that the FBI uses proprietary equipment is,

17   again, not a secret.  And so I fully intend to get an

18   exhibit with the HAWK and the EAGLE and the other one

19   that was used, and put it in evidence.  I just think

20   that, you know, we go into this argument that it's

21   law enforcement sensitive, national security

22   privilege, which really hasn't been proven in any

23   stretch of the imagination.  They gave it to these

24   informants.  They're given to informants all over the

25   country, every division of the FBI, thousands of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5042

1  people, informants, cooperators, know how these

2  devices are being used by the FBI, and the fact that

3  our clients can't delve into that is utterly

4  ridiculous.

5           If they want to not give up this device or

6  the way that this evidence was recorded, then they

7  can choose whether or not to use it, Your Honor.  I

8  mean, that's the give and take.  Either they let us

9  delve into it or they don't use it.  And that would

10  just be my little footnote.

11           Thank you, Your Honor.

12           THE COURT:  Thank you Ms. Sirignano.

13           Mr. Beck.

14           MR. BECK:  I'll respond to that by saying

15  the FBI and the Government considers this extremely

16  sensitive.  And that will be evidenced later today

17  when we talk about the request for the viewing of

18  this device that we discussed when these devices were

19  presented two weeks ago by Special Agent Williamson

20  and the conversations that I've had with the FBI

21  about that.  So the Government and the FBI considers

22  these very, very sensitive.  And that's why the law

23  enforcement sensitive privilege exists.

24           So the remedy isn't that the United States

25  can put in this evidence or not use the devices.  The

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5043

1    remedy is that the defendants have to overcome the

2    law enforcement sensitive privilege to show that they

3    are entitled to these devices.  And at that point,

4    the United States decides how it wants to proceed.

5    But I think the Court's ruling on this motion is

6    correct and is sound.  So I'll sit down.

7            THE COURT:  All right.  Thank you, Mr.

8    Beck.

9            Well, I am going to grant the motion in

10   part.  We don't have a lot that's off the table.

11   There is a lot about the device that is fair game and

12   can be disclosed.  But I do think in the particular

13   areas the Government has established their privilege.

14   And so I will honor it, and not see it's been

15   overcome.  If this is one of the ones -- this

16   scenario that you want me to spend more time with,

17   I'd be glad to move it to the top of the list.

18   Otherwise, for purposes of trial there will be no

19   testimony elicited about the portals or the devices

20   that go into the portals.  No pictures will be shown

21   to the witnesses:  Was this the device?  And we'll

22   not ask the witnesses to draw on butcher block paper

23   the exact size or shape.  Size or shape can be asked,

24   and answered generally.  As far as how they are

25   disguised, packaging, anything like that, that will

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5044

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124

1   be off limits as well, any sort of program the

2   Government has for disguising or secreting these will

3   be off limits.

4           Again, if defendants can't live with that,

5   or think that's cutting it too close, you want to

6   move this one up so I take a harder look at it, I'd

7   be glad to do that.  But that will be our ruling for

8   trial.

9           What I would like to do now is go into a --

10  I think Ms. Wild -- Ms. Wild, are you on the phone?

11  She was going to be gone at a meeting for about an

12  hour.  She may not be on the phone.  I'd like to go

13  into a true pretrial conference at this point,

14  because I think what that will do is it will begin to

15  kick us into some of the issues about exhibits,

16  exhibit lists, and things like that.  So I'd like to

17  pull our calendars out.  I'd like to get my list of

18  things that I go over in every trial.  Many of you in

19  the room have had trials with me, so you're going to

20  be familiar with how I do a pretrial conference.

21          And then what I'd like to do is go through

22  that in part.  I'm sort of beginning to pick up

23  Document 1525.  And then, after we go through that in

24  part, it will certainly not be in whole, but in part,

25  a true pretrial conference.  And I've thought about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5045

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25046

```
 1    it overnight about how to tackle these bad acts.  And

 2    what I was going to propose is that we pick up,

 3    instead of Mr. Troup's, we pick up Mr. Garcia's

 4    motion on bad acts.  And I'm not particular as to

 5    which one we do, but we pick that one up, and then we

 6    begin to plow through t.  We'll just take them one at

 7    a time, we argue them out, and I call balls and

 8    strikes, and see how it goes.  I mean, if it's going

 9    to take the rest of our week, then we may want to

10    start looking at some other motions or some other

11    issues.  If it moves along, at some point people may

12    say, We get it, Judge, we think we can work out the

13    rest.  I don't know, but it seems to me that that's

14    the best thing to have a judge just start making

15    balls and strikes on what's been -- after a while,

16    y'all can tell me whether that's useful or not, and

17    whether we just need to keep going, or we need -- I

18    have to pull back.

19              So I'm going to get out my folder.  I

20    brought it to the bench yesterday.  Mr. Hammond,

21    would you grab my calendar out of my briefcase.  I

22    brought it yesterday to the bench, but I didn't bring

23    it today.

24              Ms. Wild, are you there?  Ms. Wild?

25              All right.  Let's, first of all, talk about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5046

1    the length of the trial.  I think y'all talked to

2    Ms. Wild about this.  We've also talked about it in

3    hearings that we had.  But let's just make sure

4    everybody is on the same page.  What I had been

5    understanding that Ms. Wild has been using, and y'all

6    have been using with her, is that this trial would

7    start on January 29, and it would go six to eight

8    weeks, which would mean that it would be the last

9    week of January, 2, 3, 4, 5, 6.  So that people were

10   not anticipating the trial being over before the end

11   of business on March 9.  And that they thought it

12   could last as late as March 23.

13          Is that, A, still the expectations of the

14   parties, or is there any miscommunication or

15   misunderstanding on this?  And do I need to be using

16   any sort of different figure?  From the Government's

17   standpoint, is that still an accurate estimate of how

18   long the trial would last?  Is there anything more

19   accurate that we can use at the present time?

20          MS. ARMIJO:  I think we used that number,

21   and I think that's the number that we used

22   approximately in the juror questionnaire, four to six

23   weeks, and we stay with that.

24          THE COURT:  So on the jury questionnaire

25   says four to six?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5047

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127

1           MS. ARMIJO:  I thought the jury

2    questionnaire said four to six.  But I hear some

3    people saying differently.  If Ryan was here, he

4    would know, because he's the one that worked with us

5    on it.  But I think we could say six weeks.

6           THE COURT:  Let me ask Ms. Standridge if

7    she can get ahold of the -- it doesn't have to be an

8    actual questionnaire, but just what went out to the

9    jurors.

10          Has the rolling production started yet?

11          MS. HARBOUR-VALDEZ:  No, Your Honor.  Next

12   week or later this week, the 20th, I believe.  It's

13   December 20 is the first distribution.

14          THE COURT:  So that's tomorrow.  You might

15   see if Jury Services, since they're about to give

16   them to the parties, if they have one if they could

17   just look at that and tell us what it says there.

18          MS. FOX-YOUNG:  Your Honor, I'm looking

19   at -- I don't obviously know what went out, but the

20   final draft did say approximately six weeks as far as

21   I can tell.

22          THE COURT:  Approximately six weeks.

23          (A discussion was held off the record.)

24          THE COURT:  Well, does anybody have any

25   refinement?  If it says six weeks, is that what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5048

```
 1    everybody is anticipating, which would put it at the
 2    end of business on March 9?  Is that still, from the
 3    Government's standpoint, does that look like a good
 4    estimate of six weeks?
 5              MS. ARMIJO:  Yes.
 6              THE COURT:  Ms. Sirignano?
 7              MS. SIRIGNANO:  Judge, I just can't
 8    reconcile that in my head with the number of
 9    witnesses that the Government has put on their expert
10    list and our expert list.  And so we had been
11    anticipating eight weeks.  I just --
12              THE COURT:  Who just got on the phone?  Is
13    that Ms. Wild?
14              MR. CASTLE:  No, it's Mr. Castle and
15    Mr. Burke.
16              THE COURT:  All right.
17              MS. SIRIGNANO:  Those are just my thoughts.
18    I don't see how this could wrap up in six weeks,
19    quite honestly, with what we've got before us today.
20              THE COURT:  Well, we need to be honest with
21    the jurors.  If we sent out an estimate of six weeks,
22    if that's what's on that form, it's going to get done
23    in six weeks.  So your reconciliation should have
24    come earlier, because I signed off on what y'all
25    agreed on.  So if it says six weeks, then we're going
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129

 1   to be done by March 9, because that's what went out

 2   there.  Anybody else have any comments on the length?

 3           All right.  As far as I understand -- and

 4   people can correct me if I'm wrong -- we're doing

 5   this trial in Las Cruces.  We are doing it in this

 6   courtroom, unless Ms. Standridge tells me it's some

 7   other courtroom.  But I understand it to be here.  So

 8   we will talk about technology.  We'll talk about what

 9   the needs of the parties are.  But plan on it being

10   in this courtroom unless we're told otherwise, and

11   I'll keep you posted on that.

12           So the first question:  Do you wish to

13   have, at the end of the case, do you want to have

14   closings before or after instructions, Ms. Armijo?

15           MS. ARMIJO:  After.

16           THE COURT:  Closings after.

17           So the five defendants that are appearing

18   in the first case, is everybody comfortable with

19   closings being after instructions?  Anybody have any

20   problem with that?  Most people like to get the judge

21   out of the way so they can speak to the jury.

22           All right.  So not hearing any objections,

23   we will have closings after the Court instructs the

24   jury.

25           Let's begin to dip our toe into



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130 of 9051

```
 1    preliminary -- to jury instructions.  Let me ask the
 2    Government first, because y'all will probably -- I'll
 3    be putting a number of the burdens on jury
 4    instructions on the Government.  Are all the counts,
 5    or all the crimes that are charged in the first
 6    trial, are those ones for which the Tenth Circuit has
 7    pattern jury instructions, or does not have pattern
 8    instructions?
 9              MR. CASTELLANO:  They don't have all of the
10    instructions for VICAR.  There are some RICO
11    instructions.  I think they talk about enterprise.
12    But it's not a complete set in the Tenth Circuit.
13              THE COURT:  All right.  So I'm going to
14    start setting some deadlines here.  And I'll work
15    with you to make them doable.  But the first thing
16    I'd like to do is to start working on a preliminary
17    instruction so that the jury has a preliminary
18    instruction that contains the elements of the
19    offenses that the Government is seeking to prosecute.
20              So -- and I'm flexible on these deadlines.
21    But here's the first deadline I'd like to have is,
22    I'd like to put the burden on the Government to get
23    out not a full set of jury instructions, but --
24    unless they want to -- but get the elements of the
25    offense.  So this is something that not every judge
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5051

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131

```
 1    requires, but I require it, and it seems like every
 2    time I require it, nobody ever does it.  So I'd like
 3    in this trial that we do it.  So I must communicate
 4    exactly what I'm looking for here.  But I'm looking
 5    for a document that the Government will produce and
 6    file -- we'll talk about all that in a moment -- that
 7    says this:  These are the elements of the offense
 8    that we have to prove beyond a reasonable doubt.  And
 9    that's all it is.  It's not dressed up with all the
10    bells and whistles of defenses and definitions and
11    those sort of things.  It's just:  Here are the
12    elements of what is going to be proved.  And since
13    there might be some disagreement about what those
14    elements are, I'd like to start getting those issues
15    out earlier rather than later.
16            So, with that in mind, I would like to
17    have -- and if people want to back these up some,
18    that would be fine with the Court -- let me look at
19    my calendar and propose some deadlines.  Then we can
20    see how y'all react to these.
21            All right.  Here is my proposal.  And if
22    you want to do something different, I'm game.  But
23    I'm trying to think of what my needs are, and then
24    what -- how y'all work.  I would propose that the
25    Government file this document and call it "Elements
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5052

1    of the Offenses the Government has to Prove" for each

2    of the -- I guess, it's each of the counts.  If the

3    counts are duplicative, in other words, it's the

4    same -- well, why don't we do it for each count.  And

5    if there is different defendants, then identify it,

6    but it be comprehensive in the sense that I will be

7    giving an instruction.  Even if I'm repeating myself,

8    I'd rather do that, and then figure out how to reduce

9    the redundancy.  But you produce this document by the

10   end of business on Monday the 22nd.  Defendants look

11   at it on the 23rd.  Discuss it, see how much you

12   agree with, what you disagree with, if any.  By the

13   end of business on the 24th, then, the Government

14   file this document.  So on the 22nd you're sending it

15   to the defendants.  And then discussion occur on the

16   22nd and 23rd.  On the 24th, the Government then file

17   a document again called "Elements of the Offenses the

18   Government has to Prove Beyond A Reasonable Doubt" by

19   the end of business that day indicating where the

20   defendants agree with you and where they disagree

21   with you.  And then you file it and you're done.

22          The defendants then need to also file by

23   the end of business that day what you disagree with.

24   So you can tell me briefly what the disagreement is,

25   or you can tell me you need this word changed or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5053

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5054

1  something like that.  Make it real clear in both

2  submissions what you agree on, so we don't spend a

3  lot of time with those elements, and that I focus on

4  where the disagreements are.  And then that will give

5  me a couple of days to work with what you have and

6  try to generate for you before I -- before end of

7  business on the 26th.  So that will give me a couple

8  of days to try to generate a preliminary instruction

9  for you.

10       You do not need to prepare a preliminary

11  instruction.  All I need from the parties is to tell

12  me -- give me some input on the elements of the

13  offense.  And I will prepare the preliminary

14  instruction so you don't need to prepare that.

15       How about those deadlines, requirements for

16  the Government?  Does it work for you, Ms. Armijo?

17       MS. ARMIJO:  Yes, Your Honor.  I believe

18  our scheduling order has for both parties to submit

19  jury instructions on January 12 currently.  So that

20  will be after that deadline.  So it should be easy.

21       THE COURT:  All right.  Well, I forgot

22  about the scheduling order.  Do we already have the

23  jury instructions plugged in there then?

24       MS. ARMIJO:  January 12.

25       THE COURT:  For both sides.  All right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5054

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 134

```
 1   Let me skip that, then.  I'll just look at the jury
 2   instructions.  You don't need to do that at all.  So
 3   I'll pull that out and prepare a preliminary
 4   instruction and try to get it as soon as possible.
 5   So I guess what -- I guess, if I were the defendants,
 6   I'd take a hard look at what the preliminary
 7   instructions of the plaintiffs or the Government is.
 8   And then maybe be alerting to me, because I'll be
 9   then putting the preliminary instruction together.
10   So I'll just look at your instructions to get my cue
11   as to what the elements of the offense are.
12            Ms. Sirignano.
13            MS. SIRIGNANO:  Sorry, Judge.  I'm not
14   tracking.  So we don't have to worry about the
15   December 22nd deadline.
16            THE COURT:  Well, January 22nd.
17            MS. SIRIGNANO:  January 22nd.
18            THE COURT:  Yeah, don't worry about that.
19   If y'all are going to give me jury instructions as
20   early as the 12th, then I'll just work with those.
21            MS. SIRIGNANO:  Just jury instructions by
22   both parties submitted on January 12.
23            THE COURT:  Well, that's what Ms. Armijo
24   tells me the scheduling order is.  I don't have it in
25   front of me.  So if that's what it says, let's not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5055

```
 1    start untangling that.  Y'all worked hard on that,

 2    and I don't want to start untangling that.  I'd

 3    forgotten about that.

 4              MS. ARMIJO:  There are several things due

 5    January 12th.  That's one of them.  As to jury

 6    instructions, the 12th is the deadline for filing it,

 7    and January 19th is the objections to the jury

 8    instructions.  So the Court should have, well in

 9    advance of January 22nd, both parties' submitted and

10    objections to jury instructions.

11              THE COURT:  Okay.  All right.  So we'll

12    just deal with that.  So forget the elements of the

13    offense.  I'll just take that.

14              Notetaking.  I generally give an

15    instruction in the preliminary instruction.  Have I

16    gone over this at all?  Did we do this at all?  I

17    don't want to be wasting everybody's time.  So I

18    generally put in my preliminary instruction that the

19    jury can take notes.  There are cautionary

20    instructions about not getting lost in notetaking,

21    leave your notes in the jury room at night, you know,

22    the sort of standard things you tell them about

23    notetaking.  But I generally allow, bottom line is,

24    jurors to take notes with cautionary instructions.

25              Is that acceptable to the Government, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Armijo?

2              MS. ARMIJO:  Yes, Your Honor.

3              THE COURT:  Any defendant have any

4    objection to me allowing the jury to take notes with

5    the cautionary instruction?  Which you'll see, I'll

6    send you the preliminary instruction.  Anybody have

7    any problem with that?  Not hearing any, then I will

8    include that.

9              Same with questions by jurors.  I typically

10   do not, as you've probably gotten a feel, I don't

11   usually ask questions of witnesses.  I don't inject

12   myself into the trial.  So I don't allow jurors to

13   stand in the jury box and ask questions either.  But

14   if they wish to write out questions, we'll tell them

15   those are extraordinary moments.  They write it out.

16   It will be picked up by the courtroom deputy, handed

17   to me.  I look at it.  What I typically do is show it

18   to you.  If you want to work it in, then we'll work

19   it in.  And then I'll show it to you.  If you want me

20   to ask it, I'll ask it -- Ms. Wild is on the phone?

21   Okay.  So we'll do it that way, but at least allow

22   them to write out questions.

23             Two weeks ago, I had a jury, boy, they

24   asked a lot of questions.  But some were useful and

25   some weren't.  Anybody have any problem with that,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 5057

1    Ms. Armijo?

2              MS. ARMIJO:  No, Your Honor.

3              THE COURT:  Any of the defendants have any

4    problems with me including that paragraph in my

5    preliminary instructions?  All right.  So I will

6    include that in my preliminary instructions.

7              Let me ask -- I assume before we did all

8    our work, so y'all just have to remind me, we agreed

9    on how many alternates we were going to have for

10   trial, and I remember it being four.  So we're

11   picking a jury of 16?  Everybody is nodding their

12   head.  So I think we've already passed that bridge.

13             And the next question -- let's take it up

14   after lunch -- do we want to keep all four under

15   charge when we send the jury back to deliberate?  One

16   under charge?  Two?  Three?  Let them all go?  Let me

17   know what y'all think about that.  But why don't we

18   take our lunch break at this time.

19             All right.  See you in about an hour.

20             (The Court stood in recess.)

21             THE COURT:  All right.  Go back on the

22   record here, get started.  Looks like every client

23   has a counsel -- defendant has a counsel.  Look

24   around, make sure that's the case.

25             All right.  A couple of things.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5058

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5059

1   Mr. Hammond, my law clerk, looked at VICAR jury

2   instructions.  Interestingly enough, he said the

3   Second and the Fourth didn't have any, but the Fifth

4   does.  I have not used the VICAR jury instructions

5   from the Fifth.  But my experience with the Fifth has

6   been that they are a good set of jury instructions.

7   The Tenth used them in many ways as a model for

8   theirs.  And I use their -- on the civil side, I

9   think their civil jury instructions for 1983 actions

10  and stuff is pretty good.  So I point that out.  I

11  don't know if y'all had already started that.  But

12  the Fifth does have a set.  It's a 2.78, and it's

13  pages 382 through 387.  So maybe that will assist you

14  on jury instructions, if you haven't already done

15  them.

16          We did look during the break also at the

17  summons for jury service that went out, the special

18  jury questionnaire.  Questionnaire itself, which

19  y'all agreed on, says on page 18, question number 76,

20  it says, "The trial in this case is expected to last

21  approximately six weeks in Las Cruces, New Mexico.

22  Is there anything about the approximate length of

23  time that would not allow you to serve on this jury?"

24  The cover letter, I think originally had four to six

25  weeks.  And I think we changed that.  So the trial is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5059

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 139

```
 1   expected to last approximately six to eight weeks.
 2   So the cover letter says six to eight weeks.  The
 3   jury questionnaire itself says six weeks.  So I guess
 4   we got a little bit of time we're in play on.
 5           All right.  I think the question that I
 6   left on the table was what your thinking was on
 7   alternates?  Do you want to keep all four under
 8   charge?  None under charge?  Or some number in
 9   between one and four under charge?  Ms. Armijo?
10           MS. ARMIJO:  We would like to keep all four
11   under charge.
12           THE COURT:  How do the defendants feel
13   about that?  Anybody have any views on it?  Is that
14   fine?  Just keep all four under charge?  Keep them at
15   a secret, undisclosed location somewhere in the
16   building during deliberations?  All right.  We'll
17   plan on keeping them under charge.  So when the jury
18   goes back to deliberate, I'll give the alternates
19   some instructions, and we'll be prepared to place
20   them somewhere comfortably within the building.
21           Start time.  I'll certainly discuss this
22   with you, but I think just because of logistics, it's
23   hard to do much more than sort of a regular time
24   schedule.  I have in the past done some trials as a
25   lawyer out on the west coast and stuff, that I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5060

```
 1    thought worked a little bit.  But I'm not sure that
 2    we can really do it because of the logistics of this,
 3    where we'd start real early, and not have any lunch
 4    break.  Have a couple of short snack breaks, and
 5    maybe break a little bit early in the afternoon, so
 6    that you can prepare for witnesses the next day.  The
 7    problem with that schedule here, I'm not sure we can
 8    really do it because I'm going to talk to the
 9    marshals about seeing if we can start the trial at
10    8:30 in the morning, moving it up 30 minutes.  I
11    don't know if that's going to be possible given the
12    logistics of moving people in.  And that way, still
13    breaking at 5:30.  But if we're moving the trial
14    along, maybe we can get out of here a little bit
15    earlier, so the men can get -- in the first trial --
16    get the men back a little bit earlier in the day and
17    the marshals out of here.  But I'd sort of entertain
18    a little bit of an alternate schedule, but I'm not
19    sure it really is feasible here.  Otherwise, we'll
20    probably start as early as I can get the marshals to
21    get them in here.  Go to 5:00, 5:30, take a
22    traditional lunch break, so you get lunch.  And I may
23    break at 11:45.  I don't know if I can get some work
24    done down here on some other cases, up in
25    Albuquerque, I do a lot of reentry cases or something
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5061

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

```
 1    at 11:45, maybe some initial scheduling conferences
 2    in some civil cases.  Down here, most of my docket is
 3    up there, so I don't know.  Maybe I can do some
 4    things by phone, that way you get a little bit more
 5    time at lunch.  And then everybody try to be back.
 6              Any thoughts on that, Ms. Armijo?  I'm
 7    certainly willing to discuss and take back to Ms.
 8    Wild and the marshals.  Are you game for doing
 9    something different, or stick with the traditional
10    schedule?
11              MS. ARMIJO:  We would like to stick with
12    the traditional schedule.
13              THE COURT:  You like lunch?  Everybody has
14    grown fond of lunch.
15              All right.  Mr. Adams, traditional?
16              MR. ADAMS:  I'm also apparently very fond
17    of lunch and breakfast and dinner.  I like them all.
18              THE COURT:  I've been reading your
19    vouchers, figuring out where to eat around here.
20              MR. ADAMS:  I found all the spots.  I'm
21    going to do a book when I leave.  I do have one
22    request.  And I know I'm -- that a lot of people
23    drive down from afar, and I know you're coming down.
24    And I think all of us have an interest once the trial
25    starts, to get it over as quickly as we can, with a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5062

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 142

```
 1    round of acquittals for everybody in as short order
 2    as we can.
 3            I also am looking at flights.  And I have
 4    basically two options to get home.  And I have a son
 5    who is 8, who likes his mom a lot more than he likes
 6    me, but I'd like to keep connected with him.  And I
 7    don't know if it might be -- so there is no real way
 8    for me to do that on Saturday morning at the 6:00
 9    flight, and then get back here Sunday.  I was
10    wondering, if it's not too disruptive, I -- think you
11    like to go all five days, and I'm not trying to talk
12    you out of who you are as a person, but if maybe
13    every other Friday -- if you would consider possibly
14    breaking at noon every other Friday, that would be, I
15    think, certainly a huge help at my house in South
16    Carolina, and I suspect in many other houses around.
17            And I would also point out it doesn't fall
18    as the second week.  But there is a President's Day
19    weekend in there, where I think we're off on a
20    Monday.  I have to be -- I have a professional
21    obligation to be in New Orleans on Saturday morning
22    at 8:00 a.m.  So realistically the flight, I could
23    get an afternoon flight to El Paso, and get in around
24    midnight.  But if that might be a day that you would
25    consider breaking a little early before the long
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 143064

```
 1    weekend.  I just offer those up.  If you can work any
 2    accommodations, it would be appreciated by Helen
 3    Adams at 843 -- no.  But thank you.
 4              THE COURT:  Well, I guess, you know -- I
 5    guess what I'm thinking is that, you know, for
 6    particularly the people that are going to be flying,
 7    I personally don't care if you stay -- you know, on a
 8    Friday afternoon or something, if you want to get out
 9    of here, just get out of here.  You may feel like you
10    don't want to get out of here with the jury watching
11    you or something like that, and I understand that.  I
12    probably am going to push everybody.  I think I
13    indicated earlier that these things don't just get
14    any better with age.  This is not wine.  This is a
15    trial.  So I'll probably push myself and push
16    everybody hard.  I'm probably not going to go back on
17    Friday night.  That's just too hard.  I'm going to go
18    back tomorrow night because I've just got to be in
19    the office 8:30 on Thursday morning.  But I'm going
20    to try to pace myself, too.  So I'm not going to
21    break early.  I'm not going to go back up to
22    Albuquerque until Saturday morning.
23              So I hear what you're saying.  But the
24    thing that would probably work in your case, Ms.
25    Sirignano; if you want to get out of here, it's fine
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145065

1    with me, and that way, you'll have counsel here, and

2    you know, maybe work with the Government to make sure

3    nothing is coming up that afternoon that you need be

4    here for.  But do plan on being here.  We're going to

5    push ahead.  We're going to get it done.  And so put

6    everybody on time schedule, on the defendants' side,

7    everybody want a traditional schedule?  That means

8    everybody will break for lunch, all that.  We'll work

9    regular hours.  Mr. Jewkes, everybody on board?

10   Okay.  So we'll plan on a regular schedule.

11           MR. JEWKES:  That would be my choice.

12           THE COURT:  Okay.  We'll do a traditional

13   schedule.  And you know, Mr. Adams, you work on

14   Ms. Wild.

15           MR. ADAMS:  Judge, I'm really not

16   complaining.  I thought you would probably want to be

17   a 9:00 to 5:32 p.m. person every day.  I just thought

18   I would offer it, if there was a little bit of

19   flexibility.

20           THE COURT:  Well, talk to Ms. Wild.

21           MR. ADAMS:  We'll live with whatever you

22   tell us to do.  We'll be happy to be here.

23           THE COURT:  Okay.  I should have put on the

24   record that Mr. Burke, Mr. Castle, are not in the

25   courtroom.  Are they on the phone, Mr. Cooper?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5065

 1          MR. COOPER:  Your Honor, I don't know,

 2     given their flights, they might not be.

 3          THE COURT:  Well, they're not in the

 4     courtroom.  I'll make that record.  I don't hear them

 5     on the phone.

 6          All right.  So unless y'all tell me

 7     otherwise, we'll run a traditional schedule.  And

 8     Ms. Wild, are you there?  Ms. Wild?  All right.

 9     Well, I want to put on her list for her to discuss

10     with the marshals to see if we can get the defendants

11     in here at 8:30, see if we can try to get started at

12     8:30, and get a little bit longer day or at least

13     push the day up a little bit.

14          All right.  Let's talk about openings.  How

15     long does the Government expect its opening to last?

16          MS. ARMIJO:  An hour.

17          THE COURT:  All right.  How do the

18     defendants anticipate doing their opening?  I'm going

19     to ask some questions.  If for trial strategy you

20     don't want to answer a question, you're welcome to

21     tell me you don't want to answer.  But if you do know

22     that you're going to make your opening statement at

23     the beginning of trial, that would help me in

24     planning purposes, and also writing the preliminary

25     instruction.  And do you intend -- if you intend to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5066

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 146

```
 1   do it at the beginning, or do you intend to each
 2   defendant make an opening statement?  And how does
 3   that work.
 4            So let me ask the first question.  The five
 5   people going to trial on January 29, is there anybody
 6   here that's not wanting to make an opening statement
 7   at the beginning of the trial, or either that, or
 8   doesn't want to tell me, one or the other?  All
 9   right.  So I'm going to assume for writing my
10   preliminary instruction that all defendants will be
11   making an opening statement on the first day, or
12   whenever we have openings, and you'll be doing it at
13   the beginning of the trial.
14            So let me just ask, probably ought to break
15   these down now.  Mr. Baca, either you or Mr. Lowry or
16   Ms. Duncan, how long do you think your opening will
17   last?
18            MR. LOWRY:  Your Honor, we anticipate
19   roughly an hour as well.
20            THE COURT:  All right.  And Mr. Maynard,
21   Ms. Bhalla, how long did you think your opening will
22   last?
23            MR. MAYNARD:  Probably 20 or 30 minutes.
24            THE COURT:  Okay.  Mr. Adams, Ms.
25   Sirignano, how long do you think yours will last?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1              MR. ADAMS:  One hour.
2              THE COURT:  All right.  Ms. Fox-Young, how
3   long does Mr. Perez' last?
4              MS. FOX-YOUNG:  Without speaking for Mr.
5   Villa, I would estimate at least a half an hour, 30,
6   45 minutes.
7              THE COURT:  And Mr. Jewkes, Ms. Jacks, how
8   long do you think yours will last?
9              MR. JEWKES:  Your Honor, Ms. Jacks and I
10  have discussed this, and we don't want to sound like
11  cheapskates, but 20 minutes.
12             THE COURT:  Well, my dad was an old country
13  preacher.  He said he never saved anybody after 20
14  minutes.  So that's a good number.
15             MR. JEWKES:  I understand, Your Honor.
16             MS. FOX-YOUNG:  Your Honor, just backing up
17  a bit.  And if the Court doesn't want to go through
18  this now, that's fine.  But do you have an estimate
19  how long you think jury selection will take?
20             THE COURT:  I was thinking about what my
21  next question was going to be.  Whether I wanted to
22  go into voir dire or I wanted to go into closings.
23  Why don't I do this:  Since I've gotten openings,
24  let's talk about closings and then we'll talk about
25  voir dire.  Because I think I need to share
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 148069

```
 1   information with you for those people that haven't
 2   had a trial with me, so we can have an informed
 3   discussion here.
 4           So how long does the Government think its
 5   closing will last?
 6           MS. ARMIJO:  Including rebuttal,
 7   two-and-a-half hours.
 8           THE COURT:  And Mr. Lowry and Ms. Duncan,
 9   how long will Mr. Baca's closing last?
10           MS. DUNCAN:  Your Honor, I would guess an
11   hour to an hour and a half, max.
12           THE COURT:  All right.  And Mr. Adams.
13           MR. ADAMS:  56 minutes and 28 seconds, Your
14   Honor.
15           THE COURT:  I like answers like that.
16           All right.  Ms. Fox-Young.
17           MS. FOX-YOUNG:  45 minutes.
18           THE COURT:  Ms. Jacks?  Mr. Jewkes?
19           MS. JACKS:  I would say an hour and a half.
20           THE COURT:  Mr. Maynard?
21           MR. MAYNARD:  30, 45 minutes.
22           THE COURT:  All right.  Let me talk about
23   voir dire, depending upon how you say those French
24   words, we have enough Texans here that probably
25   you've heard the alternative pronunciation.  For
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& Associates, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5069

```
 1    those of you who have had trials with me, you
 2    probably know that I probably do the most extensive
 3    voir dire among my colleagues.  That does not mean
 4    that I'm extensive from where you're from.  But you
 5    probably scouted me out enough to know that I do an
 6    extensive voir dire.
 7            Let me talk about my philosophy as a judge.
 8    You have your philosophy as a lawyer.  I do think
 9    jury selection is important, so I'm not one of those
10    judges that does not think it's important.  I do
11    think voir dire is important.  I think it's a
12    critical stage of the trial, because I want everyone
13    in the room, all the parties, to feel that when they
14    start this trial, they've got a fair and impartial
15    jury there.  So I will work with you to get you a
16    fair and impartial jury.  Again, you have your
17    philosophy about how to select a jury, and that's for
18    you to decide.
19            I will tell you a little bit that when I
20    was practicing, I always thought the best thing the
21    judge could do for me was to make the jurors feel
22    comfortable talking in the courtroom.  Because we're
23    used to hanging around courtrooms, that's what we do
24    all the time for a living, and so we're used to
25    talking and we're used to being fairly comfortable in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5070

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150

```
 1    a courtroom.  And we forget how intimidating a
 2    courtroom can be for people that don't make a living
 3    hanging around courtrooms.  So the thing I try to do
 4    is to make it a comfortable place.  So you will see
 5    me doing some things that are maybe not terribly
 6    enlightening for what you have to do, which is to
 7    exercise peremptory challenges and make for cause,
 8    but what I will be doing is trying to make the jurors
 9    comfortable.  So that when you stand up as counsel,
10    you have probably heard the jurors speak at least
11    once, if not multiple times, had me questioning them
12    a little bit, so they're used to questioning.  So
13    that the first person that has to speak to a juror is
14    not you, which I think puts you at a disadvantage,
15    but that I've kind of done that for you.
16              So I will -- I'm going to give this some
17    thought.  Ms. Wild, are you on the phone now?  I
18    think what we agreed to is that we'd have 60 in the
19    courtroom, and bring in waves of 20, if we didn't get
20    our 16 out of the first 60.  Sixty is a big number.
21    That is a big number in the courtroom.  But, of
22    course, we're picking 16.
23              Ms.  Wild, are you there?
24              THE CLERK:  I am, Judge.
25              THE COURT:  All right.  So I'm talking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5071

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151 5072

```
 1   about the jury selection.  And I think we agreed that
 2   there would be 60 in the courtroom.  I will do the
 3   sort of typical things of -- I will prompt you
 4   through -- so I will prompt you through introduction
 5   of yourselves as the lawyers.  I will prompt you
 6   through your introduction of your clients.  I will
 7   prompt you through the identification of your
 8   witnesses.  So you will need to be ready for those
 9   questions.  So when they come, you know they're
10   coming, and you will then -- then you'll do it.  But
11   I will prompt you through.  Then I will ask some
12   general questions.  I intend to ask about law
13   enforcement.  Even though you have some information
14   on your jury questionnaire, I'll probably ask some
15   questions on law enforcement.  I will probably ask
16   some questions about jury service.
17            I will probably ask some questions, because
18   this case has drugs, I think we probably need to find
19   out a little bit about if anybody has strong
20   reactions to drugs, substance abuse, that sort of
21   thing.  Then I will probably look very closely at the
22   standard jury questionnaires that went out as well as
23   the special questionnaires, as well as the special
24   questionnaires, and see if I see some questions that
25   I can ask each one of the jurors or at least deep
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5072

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 152 of 273

```
 1    into the jury pool.  I may not go to number 60.  You
 2    know, it's always number 60 that's yappiest back
 3    there, you know.  And you know they're not going to
 4    chosen, but they're going to tell you about their
 5    mother-in-law and their dog and cat and everything
 6    else.  I'll probably begin to, you know, quit, but I
 7    don't know.  I don't know, it may be that I just feel
 8    like we have to exhaust this 60 and make sure we get
 9    it done.
10          Now, the thing that's a little more
11    challenging for me as a judge this time is because
12    your questionnaire is so extensive that, I don't
13    know, there might not be anything for me to ask, you
14    know.  So I say that because, be prepared, for those
15    of you who have tried cases with me, if I just really
16    don't have something to ask somebody because of the
17    extensive questionnaires here, and I'm not going to
18    waste everybody's time, theirs or mine or yours, by
19    asking them a bunch of makeup questions.  So it's
20    really not going to be helpful.  I'll try, though.  I
21    will try to think of something, maybe two or three
22    questions with each one of the jurors, so that
23    they're comfortable speaking in here.
24          If the jurors know something about the
25    case, I intend not to have them pollute the jury
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5073

```
 1   pool, so I'll bring them up to the bench.  So be
 2   ready to come up to the bench fairly frequently,
 3   because if anybody knows anything about the witnesses
 4   or the case, we'll do that up here at the bench.
 5   We'll fog the machine, and we'll do that portion of
 6   the voir dire up here at the bench.
 7          I'm trying to think.  Is there anything
 8   else I need to go over?  Can you think of anything
 9   else, Ms. Wild, that might be particular to me for
10   the lawyers that haven't had a trial in front of me?
11   Anything in particular about this case that you think
12   I ought to share with them that you would predict how
13   I'm going to do things.
14          THE CLERK:  Typically, you don't excuse
15   jurors for cause without a party moving.
16          THE COURT:  That's a good point.  When we
17   get to the for cause challenges, I'm not going to be
18   freewheeling.  I haven't done it with -- you know,
19   you get some of these judges that grab the
20   questionnaires and start knocking people out.  I
21   didn't do that.  I'm going to work with you so that I
22   don't skew the pool.  And I typically will not be
23   excusing people out of the venire without somebody
24   telling me they want them out.  Because you have
25   reasons, and you have probably profiles and people
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5074

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 155075

1    that you want on the jury.  You've probably got

2    profiles of people you want off the jury.  I'm not

3    going to try to get myself involved and do that.  So

4    if you want somebody off the jury, you've got to make

5    a for cause challenge for them.

6              Can you think of anything else, Ms. Wild?

7              THE CLERK:  Give me just a second, Judge.

8    I can't off the top of my head.  But I'm going to

9    look at my notes, and I may have something to send

10   back to you.

11             THE COURT:  Now, the reason I'm dumping a

12   lot of information on you is because I'm about to ask

13   you a question, and I want it to be as informed as

14   possible.  And that's how long you think the voir

15   dire will take for you to do your voir dire.  I'll

16   give you my philosophy that I think that it's

17   important that you conduct some voir dire.

18             But on the other hand, I've got to tell you

19   that because of the way other judges do voir dire,

20   lawyers don't get much voir dire anymore.  And so, as

21   a result, unfortunately, I'm not seeing good voir

22   dire, because people don't get to practice it

23   anymore.  So I tend to, within reason, allow you to

24   do some voir dire, but I also begin to probably put

25   some limits on it.  I'm not one of those judges that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5075

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

```
 1    just says, no, the judge is going to ask all the
 2    questions.  So I'll give you some voir dire.  But I
 3    probably am not going to just let it go on forever
 4    given particularly the logistics we're going to have
 5    to do in this trial.
 6              There was one other thing I remembered I
 7    wanted to tell you.  I can't think of anything else
 8    unless Ms. Wild does.  I'll hush.
 9              Let me now ask -- and this is for anybody
10    if you've had a trial with me or haven't had a trial
11    with me -- anybody want to ask me some questions
12    about how I do voir dire, how we're going to do voir
13    dire before I begin to ask y'all questions about how
14    long your voir dire is going to take?
15              THE CLERK:  Judge, did you explain to them
16    how you seat the jury?
17              THE COURT:  That's a good point.  So what
18    we will do for this trial -- and I didn't tell you
19    last time, Ms. Wild -- and you might need to explore
20    this -- for the first time the marshals approached me
21    about the fact that I had jurors sitting in the well.
22    That was a one-defendant case.  And they began to --
23    what I typically do is the 14 jurors in the box over
24    here, as you know, when you come into federal court,
25    we don't have the old wheel, so we don't pull numbers
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5076

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156

1    out anymore like in the old days, you'd put
2    everybody's name in there and you'd pull it out and
3    you give them a number.  But it's still done the same
4    way, but it's just done electronically.  So when the
5    jurors show up, we check them off, we take their
6    names and put them in the computer, and it randomly
7    draws the names.  So you go from the computerized
8    list that you're getting over the next three batches,
9    you're getting an alphabetical list.  It goes from
10   that to a randomly selected list.  So when the jurors
11   begin to come in, the 60 will go 1 through 14, and
12   then, if the marshals allow it -- I wasn't sure why
13   in that particular trial for the first time they
14   began to balk on this -- but assuming that they let
15   me do it the way I always do it, where Mr. Lowry, Ms.
16   Duncan and Mr. Baca are seated, that row, which looks
17   to me shorter than the row I have in Albuquerque,
18   normally that row is 15 through, what about 22,
19   Ms. Wild?
20             THE CLERK:  Correct.
21             THE COURT:  22, and then it goes back over
22   here where Mr. Herrera is.  And on the back -- I
23   guess we've got a front row there, don't we, which is
24   not the way it is in Albuquerque.  So if they'll let
25   me do it, I'll put -- where Mr. Herrera is sitting --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5077

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157 5078

```
 1    be 23 through -- is it 31?

 2              THE CLERK:  Through 30.  But that well is

 3    going to be pretty crowded, so I'm not sure that

 4    that's a good option to use those rows.  We can talk

 5    about it.

 6              THE COURT:  Well, the interesting thing is

 7    this is a lopsided room, in the sense that instead of

 8    it being balanced, the door in the middle, it's short

 9    on my left, and it's long on the right.  But anyway,

10    that's the way I line them up.  The reason for that

11    philosophy was, is those 14 jurors over here in this

12    box, if they're unstruck and unchallenged, they're

13    going to be your jury.  And so it always helped me

14    visually -- I'm sort of a visual guy -- to look at

15    that jury box and go, if I don't take care of those

16    jurors, they're going to be my jurors.

17              So what you will do is we'll give -- I

18    think we've already discussed this about peremptory

19    for cause challenges, of course you get to make those

20    as need be.  So when we do the for cause challenges,

21    I will ask for the for cause challenges by number and

22    name, no argument.  And we'll see if we agree on some

23    folks.  And then those that we don't agree on, then

24    we'll start arguing those.

25              And then we will confirm the unstruck --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5078

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158

```
 1   we'll confirm the people that are struck from the
 2   venire.  Then, after that, we will give peremptory
 3   challenges, the defendant get 10, the Government gets
 4   6.  We'll go with six rounds.  The Government leads
 5   off round one.  The defendant leads off on the
 6   alternate rounds, so for the first four rounds, is my
 7   memory, is that for the first four rounds, the
 8   defendants get two peremptory challenges each round.
 9   The Government gets one.  So in the six rounds the
10   Government only gets one peremptory challenge for the
11   first four rounds.  Defendants get two.  Then the
12   last two they only have peremptory challenge.  So
13   that's the 10, that's the six.
14            So that will pretty much -- then I'll seat
15   the first 12 unstruck, unchallenged jurors.  We'll go
16   ahead and select 16.  That will be the alternates.
17   Then I'll have to look at the rules.  There actually
18   is a rule or statute, when I got two alternates, I
19   give each side one peremptory challenge to be
20   exercised against the alternates.  I just can't
21   remember on four alternates whether you get two
22   peremptory challenges, or maybe even three.  Whatever
23   the statute permits, the rule permits, you'll get
24   that.  And then we will have those as our alternates.
25   So it will be the first unstruck, unchallenged.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

```
 1              Mr. Castellano?

 2              MR. CASTELLANO:  Your Honor, will this be

 3    an anonymous jury, so we address them only by number

 4    or will we be using names as well?

 5              THE COURT:  Well, you know, I'll do what

 6    everybody thinks, and I'll certainly get input from

 7    the jurors.  My thoughts are, is that once you go to

 8    numbers, you begin to put some distance between the

 9    Court and the jurors.  You begin to make it a little

10    more impersonal.  And I'm of two minds on this.  Once

11    you start using numbers, I don't know if the jury

12    gets more nervous or less nervous.  On one sense, I

13    think they would go, Oh, my goodness, this thing is

14    so dangerous that they're having to assign me

15    numbers, and I should be worried about my security.

16    Or, on the other hand, if everybody is just talking,

17    I'll tell everybody where I live, and things like

18    that, and try to make them feel as comfortable as I

19    am.  If we all signal we're not worried about our

20    security, or anything like that, I think it might put

21    them at ease.  If we put numbers in it, I don't know.

22    I'm of two minds on it.

23              What do you think, Mr. Castellano?

24              MR. CASTELLANO:  I think we could ask the

25    jurors.  I like an anonymous jury.  I know Judge
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5080

```
 1   Brack does it in pretty much every case, so this is
 2   par for the course in his courtroom.  My preference
 3   would be to have an anonymous jury and refer to them
 4   by number.  But as the Court said, you may also start
 5   just by asking the jurors how they feel about it.
 6           THE COURT:  And I've never done an
 7   anonymous jury.  I always felt like it took something
 8   out of the room when we start using numbers.  But I
 9   don't know, how do the defendants feel?  I mean, it
10   could cut two ways.  I mean, if we use numbers, they
11   may relax and feel like nobody knows them, and that
12   may give you a better jury.  Mr. Benjamin?
13           MR. BENJAMIN:  I like names, Judge.
14           THE COURT:  You like names.
15           MS. BHALLA:  Yes, Your Honor.  I mean, from
16   our perspective, we definitely want names.  It's very
17   dehumanizing.  It makes the whole process very
18   sterile.  I think that in my experience, when I've
19   been in state court trials when we've done that, it
20   really seemed to clam people up rather than when you
21   can use names, people just get more relaxed, they get
22   more open.  I would really object to that, Your
23   Honor.
24           THE COURT:  I will tell you this, 14 years
25   ago, when I was starting out with juries, jurors
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5081

1   never seemed to be concerned about their safety.

2   But, boy, they've gotten more so over the years.  I

3   don't know what it is.  But jurors seem to me more

4   antsy about, when I try a drug conspiracy case or

5   some violent crime or something up in Albuquerque,

6   used to, jurors just come in and do their job.  But

7   now they want you to walk them to the car and all

8   sorts of stuff.  Have you given that side of it a

9   thought, about if you think you'll get a fairer trial

10  if they feel like they're sitting there listening to

11  all this evidence, and the defendants know their

12  name, that's going to scare them off?

13          MS. BHALLA:  I think it goes the opposite

14  way, Your Honor.  I think if you refer to them as

15  numbers, I think that that makes them concerned about

16  why their names aren't being used.

17          THE COURT:  Remember, they don't know a

18  whole lot different.  And we -- if Judge Brack is

19  down here using numbers all the time, they don't know

20  the difference a lot.

21          MS. BHALLA:  You know, Your Honor, I don't

22  know that I agree with that.  I think that they would

23  definitely make that link in their minds, especially

24  with the security in the courtroom.  I think that

25  we've got to try and minimize that aspect of it.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I think using names is the best way to do that.  I
 2    just don't think -- I think that would be
 3    prejudicial, to be quite honest with the Court.
 4              MR. BENJAMIN:  Your Honor --
 5              THE COURT:  You know what, I need to hear
 6    from some others.  I'll come back to you,
 7    Mr. Benjamin.  You know, I think the AO is now
 8    encouraging everybody to use numbers.  So it's going
 9    to be hard to probably complain about it, either way
10    we go.
11              Mr. Cooper, you were I think up next, then
12    Mr. Lahann.
13              MR. COOPER:  Judge, there are a lot of
14    really good defense lawyers in this room.  And I love
15    picking juries.  I love talking to those jurors.  And
16    I know a lot of my colleagues here do, too.  And I
17    think we're going to make them feel comfortable when
18    we talk to them.  When I can stay, Hi, Ms. Martinez,
19    you know, the Judge talked to you about this and that
20    and the other thing.  And Mr. Smith, you said this
21    and that.  I think it's so much more personal if we
22    can address them by name.  And I would really object
23    to -- I think we pick a better jury if I can talk to
24    Mr. Martinez and Mrs. Smith.  So I think that picking
25    a jury using their names, and I think my colleagues
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5083

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163

```
 1    here are going to make everybody feel comfortable.

 2    That's my two cents.

 3              THE COURT:  Mr. Lahann?

 4              MR. LAHANN:  Ditto what everybody said so

 5    far.  But, Your Honor, my client has a right to a

 6    public trial.  He's being judged on something that

 7    will affect the rest of his life.  And I think he has

 8    a right to be treated with his name, and I think he

 9    has a right for all the other participants to be

10    treated with their full names.

11              THE COURT:  All right.  Mr. Benjamin?

12              MR. BENJAMIN:  Your Honor, I've tried two

13    cases in front of Judge Brack and used names both

14    times.  That's my experience.

15              THE COURT:  Okay.  Well, I haven't seen

16    Judge Brack try a case, so I'll have to rely on

17    y'all.

18              MR. COOPER:  So did I.

19              THE COURT:  And he used names?

20              MR. COOPER:  Yes, Your Honor.

21              THE COURT:  Let me give you a little bit

22    more information.  Over here on the row with

23    Mr. Baca, that seats 10, so that normally seats 10.

24    So if you're trying to get this in mind, that would

25    be 14, 15, through I guess 25, maybe it's 24.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5084

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165085

```
 1    then, when we go over here where Mr. Maynard and Mr.
 2    Herrera is, that normally seats 12.  So there is a
 3    little bit of difference there.  So if you're putting
 4    together jury charts or something, it would be 12
 5    over here and 10 over there.  And we'll start with
 6    14.
 7              Ms. Bhalla?
 8              MS. BHALLA:  After you get to this side of
 9    the courtroom on your right, to number, let's just
10    say 30 or 31, are you going to start 32 back this
11    way?
12              THE COURT:  No.  What I'll do is right
13    behind Mr. Acee, that will be Juror No. 15.  It will
14    go down to -- it will be 25.  And then where Mr.
15    Herrera is sitting, assuming that the -- maybe
16    Ms. Wild can add this to the list, but they'll let me
17    put them in the well, I'll probably seat Juror No. 26
18    where Mr. Herrera is, and then it will go down to --
19    I guess, that would be 38, and then we'll come over
20    here where Ms. Rodriguez is seated.  And that will be
21    39 and go down.  And the reason for that, it's a
22    little bit of a problem getting people in through the
23    pews.  But I think it's better for our chart, if it
24    runs that way.  So I'll probably deal with the
25    inconvenience of getting them in and crawling all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165

1    over each other, but I think it makes a better chart

2    for everybody when we're trying to remember names.

3           All right.  Any other questions about how I

4    pick juries, or how we're going to probably pick them

5    for this trial?

6           Ms. Wild, do you have anything to add

7    before I start asking the counsel questions?

8           THE CLERK:  Not at this time.

9           THE COURT:  All right.  So given what I've

10   done, tried to explain to you, and probably you've

11   scouted out, Ms. Armijo, Mr. Castellano, how long do

12   you think your voir dire will take?  You've had a

13   number of trials with me so, both of you together and

14   separately, so you've probably got pretty good

15   experience with me.

16          MS. ARMIJO:  I think it will be less.  But

17   just to be safe, 45 minutes.

18          THE COURT:  How about you, Mr. Lowry, Ms.

19   Duncan?

20          MR. LOWRY:  We'll take an hour, Your Honor.

21   If you think that's too long, we'll assess it.

22          THE COURT:  Try to shoot for 55 minutes, no

23   more.  Let's try to keep it under an hour.

24          How about you, Ms. Fox-Young?

25          MS. FOX-YOUNG:  I think, you know,

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 843-9492                             FAX (505) 843-9492
                                               1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 5086

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 166087

1    something on the order of 45 minutes, 30, 45 minutes.

2         THE COURT:  Just remember, if everybody

3    takes an hour here, we're not going to get it done

4    that first day.

5         MR. LOWRY:  It's hard to judge, Your Honor.

6    Get the jury to open up, it goes relatively quickly.

7         THE COURT:  I understand.  I understand.

8         Ms. Jacks?  Mr. Jewkes?

9         MR. JEWKES:  45 minutes.

10         THE COURT:  Mr. Maynard?  Ms. Bhalla?

11         MS. BHALLA:  Your Honor, I mean, I'm going

12    to try to get it done in 20 minutes.  I don't want to

13    constrain myself too much.  I don't think we'll be

14    going first.  So I think we, realistically, can do it

15    in 20, 25 minutes.

16         THE COURT:  All right.  Mr. Adams?  Ms.

17    Sirignano?

18         MR. ADAMS:  I really don't know, Your

19    Honor.  If the upper end mark is 55 minutes, we'll

20    sign up for 55 minutes.  I'm sure we'll be less than

21    that.

22         THE COURT:  Yeah, and I'm not telling you

23    that's the absolute cap.  I'll get in the flow and

24    see what happens, if you feel like something needs to

25    be done.  But just for planning purposes, let's try

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167 5088

 1   to keep it under an hour.  I mean, I'd still like to

 2   get the jury picked on the first day.  I mean, I've

 3   always been able to do that, and I think we should be

 4   able to do it.  But with this many defendants, this

 5   much voir dire, so if we can kind of put a little

 6   pressure on ourselves, particularly on the defense

 7   side, to try to really cooperate on the defense side,

 8   and try to keep the voir dire down, I think we've got

 9   a fighting chance of getting it picked.  If not,

10   we're going to have to bring 200 people back the next

11   day.

12            And remember, we've got a statewide venire

13   here.  These people are going to be coming from all

14   over the state.  So that's going to be a real burden,

15   if we have to put up a bunch of people overnight.

16   It's just going to be expensive, and keep them here.

17   And so if we can work to try to put a little downward

18   pressure on the venire, that would be great.

19            I mentioned this earlier.  Let's everybody

20   make sure that when we get the defendants -- when we

21   get to the trial, that we make certain that the

22   defendants are at the table before we bring the jury

23   in, or bring the venire in, or anything like that.

24   So let's just really watch.  I'll put that burden on

25   the Government, put it on myself, put it on my staff,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5089

```
 1   my law clerks, everybody.  Let's just make sure that
 2   we've got those defendants seated over at that table
 3   before we bring in the jury or the venire in.
 4           All right.  I think that I'm going to skip
 5   a few things.  Let's see, we've already got on our
 6   schedule the instructions.  One thing on the
 7   instructions -- I'm going to skip around a little bit
 8   and then I'm going to come back to witnesses here --
 9           MR. ADAMS:  Judge, may I ask one thing
10   about jurors before we move on?
11           THE COURT:  Yes.
12           MR. ADAMS:  We get the questionnaires in
13   advance.  Is there going to be a time where we are
14   whittling down people with the prosecution and
15   dealing with that before the voir dire, or how do you
16   anticipate that going?
17           THE COURT:  Ms. Wild, let me -- I can
18   either turn it over to you, or I can bumble through
19   it and see if you agree with me.  But I think that I
20   would like to see happen -- and maybe Ms. Wild is
21   thinking of something different.
22           THE CLERK:  We already have agreed on
23   dates.
24           THE COURT:  All right.  So you're aware of
25   that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5089

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 169

1          THE CLERK:  January 15 is when they're

2     supposed to submit their agreed and disputed for

3     cause challenges.  And your ruling on the disputed

4     challenges will be on January 22.

5          THE COURT:  Okay.  So did you remember

6     that, or does that answer your question?

7          MR. ADAMS:  How about if I answer yes, sir?

8          THE COURT:  Well, what I'm envisioning is

9     between now and the 15th, y'all working with the

10    Government and then giving me a list of everybody you

11    agree on.  And let me suggest this:  And I may have

12    said this earlier, but I'll go ahead and repeat it

13    now that we're getting very close to this.  You know,

14    I'm not telling you to not fight for jurors that you

15    want.  But I would suggest that, at least the rule

16    going in to negotiations should be some generosity to

17    both sides.  You know, if you've got a juror that you

18    know the Government is going to get kicked off for

19    cause, why fight for it?  Because I might give you a

20    chance to fight for it, but they're going to end up

21    with one of the 60 in here, and you're going to be

22    wasting a lot of questions, a lot of time.  So, at

23    least going in into negotiations, try to be a little

24    bit generous.  Put your feet in the shoes of the

25    lawyers on the other side, because I think it's in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5091

1   everybody's interests to knock off jurors that are

2   going to get knocked off eventually for cause.  And

3   if y'all want to question me a little bit about how I

4   do for cause and some things like that, I'd be glad

5   to tell you as much as I can, so you can make

6   informed decisions.

7          And then, the ones in which you can't agree

8   on, I guess I'm supposed to give you an answer on the

9   22nd.  So the ones that are in dispute, I probably

10  will not quibble with you, so if y'all agree to knock

11  off, you know 50, 60 people, I'm probably just going

12  to knock them off, and then just deal with the ones

13  in which y'all can't agree on.

14          MR. ADAMS:  That's fine.  And Judge, I'm

15  sorry, I just did not remember that being in the

16  scheduling order.  So thank you for clarifying that.

17          THE COURT:  All right.  And I'll just go

18  ahead and say, if y'all agree on somebody getting

19  knocked off, that's probably fine.  Let's talk about

20  some broad categories of people.  Let's talk about

21  the scheduling problem people.  I do these different

22  in every trial, so I have no consistency here.  I'll

23  admit it right off the bat.  Because I'm really

24  taking my cues from the lawyers.  If the lawyers want

25  to knock off people for scheduling problems, and they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5091

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

```
 1    both agree, I will go along with it.  If you don't
 2    want to knock people off for scheduling problems,
 3    I'll hang tough with you.  I'll be the bad guy and
 4    tell them they've got to serve on the jury.  I do
 5    that because sometimes people get particular profiles
 6    on jurors they want.  We're doing cases off the
 7    Indian Reservation, sometimes there are particular
 8    profiles we're looking at, trying to get certain
 9    jurors on there and stuff.  So I don't want to
10    interfere with your -- with what you're doing as far
11    as picking a fair and impartial jury.  But chances
12    are -- let's say -- and I'm not saying this is the
13    case -- let's say the Government wants to knock off
14    everybody that has a scheduling problem over eight
15    weeks, and the defendants won't knock off anybody
16    that's got scheduling problems.  You've got a
17    particular profile.  You're not going to go along
18    with that.  So the mother has got a two-year-old
19    child and day care problems and no working vehicle,
20    and the Government wants them -- and the Government
21    wants them knocked off and the defendants don't, I'll
22    probably hang tough with the defendants on that
23    thing.  But, you know, we may get that person on the
24    jury.  It's amazing how it's always that problem,
25    that Juror No. 7 up there is the one that begins to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172093

```
 1   be a problem.  And in an eight-week trial, you know,
 2   think about it, you may not want that problem every
 3   day coming in here, and having to figure out if
 4   they've got day care issues, or something like that.
 5            Anything else you want to ask me on my
 6   philosophy on peremptories, so that, as you begin to
 7   make negotiations on the 15th, and try work to
 8   through the for causes?
 9            Ms. Wild, you probably know me pretty well.
10   Anything else you want to tell me about what I do on
11   for causes?
12            THE CLERK:  Not at this time.
13            THE COURT:  Okay.  So anything else on
14   that, Mr. Adams?  Do you understand how that's going
15   to work?
16            MR. ADAMS:  Yes, sir.
17            THE COURT:  All right.  And I'll just make
18   the call.  Mr. Blackburn.
19            MR. BLACKBURN:  Your Honor, not on that
20   issue.  I can't recall, do you have us, the lawyers,
21   introduce the clients, or do you?
22            THE COURT:  I will prompt you through, but
23   I will have you introduce your client.  I always
24   think that's better.  Don't you?
25            MR. BLACKBURN:  Yes.  I was just wondering,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5093

```
 1    now that we're going to have the shackles and stuff,

 2    that may impact that.  That's why I asked.

 3              THE COURT:  All right.  Well, that's

 4    something we'll have to think about.  But I think

 5    it's better if you introduce your client and you

 6    introduce him the way you want.

 7              Mr. Castellano.

 8              MR. CASTELLANO:  Your Honor, just thinking

 9    ahead to the voir dire and the security issues.  The

10    defense is at this table.  There will be a moment in

11    time when jurors on this side will be able to see

12    both sides of the table.  So I just put that out

13    there now, so we'll be thinking about security and

14    how we want to set that up.

15              THE COURT:  Okay.  Yep, we're going to have

16    to think about that.  So I'll ask Ms. Wild to add

17    that to her list, we're going to have jurors sitting

18    where Ms. Duncan, Mr. Lawrence, and Mr. Baca are

19    seated.  So sitting behind there, they might be able

20    to see behind there.

21              All right.  If there is nothing else on

22    jury selection or voir dire, the venire, for cause

23    challenges -- on instructions, when you file your

24    instructions and you do need to file your

25    instructions, you need to file your objections.  You
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5094

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 175

```
 1    also need to send to my proposed text -- so y'all

 2    have gotten used to that when you send a proposed

 3    order -- file your jury instructions, so that's a

 4    matter of record on CM/ECF, for appeal purposes.  But

 5    also send your set in executable format to me at my

 6    proposed text.  Because I'll be working off your

 7    executable set of instructions to put my jury

 8    instructions together.

 9              You do not need to do the old thing of

10    sending one clean set and one with citations, and 16

11    copies to chambers, and all that sort of stuff.

12    Just -- all you need to do is file one set with your

13    citations.  And then you may want to file a separate

14    document of objections.  And whatever you file on

15    jury instructions needs to be sent to my proposed

16    text address.

17              All right.  Let's talk a little bit about

18    the case description.  Is there anything in the

19    scheduling order, Ms. Wild, about the case

20    description?

21              THE CLERK:  I don't believe so, Judge.

22              THE COURT:  All right.  So let me do this:

23    Unless anybody has an objection to this, let's do

24    this on the same -- Ms. Armijo, you had a scheduling

25    order out -- or Ms. Wild, do you have -- Ms. Wild, do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5096

1    you have the scheduling order out in front of you?

2              THE CLERK:  Yeah, let me get it up in front

3    of me.  Hold on a second.

4              THE COURT:  I think Ms. Armijo said the

5    12th was the day that you're filing jury

6    instructions?  Are there objections to that after

7    that, Ms. Armijo?

8              MS. ARMIJO:  Yes, Your Honor, January 19.

9    And also on the 12th, we have proposed voir dire,

10   disclosure of exhibits, and witness lists.  Of

11   course, the witness lists, the United States has done

12   one at least.

13             THE COURT:  Okay.

14             Let's talk about the case description.

15   Here's what I would propose is, if there is nothing

16   on the scheduling order about case description, why

17   don't the -- why don't we do this?  By January 8, by

18   the end of business on January 8, the Government

19   generate a case description.  I assume that this case

20   is of a nature that you don't want me just to be

21   reading the indictment.  If you want me to just read

22   the indictment, I can.  I haven't looked at the

23   indictment in a while.  So it might need to be marked

24   up some.  But it strikes me that this might be not

25   the time to just use the indictment as a case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176

```
 1   description.

 2          So unless somebody has something different

 3   to say on this, I'll ask the Government to generate a

 4   first draft of the case description; send it over to

 5   the defendants by the end of business on the 8th.

 6   The defendants look at it on the 8th and 9th, and get

 7   back with the Government by the end of business on

 8   the 10th.  See how much you can agree on by that

 9   point.  If you cannot agree on a full case

10   description, at least tell me what you can agree on

11   and what you don't agree on.  It's not as helpful to

12   me if the defendants just send me another case

13   description.  It's better if you try to work it out

14   so that you agree on as much as possible, and send me

15   a marked out, struck, highlighted, whatever, showing

16   me where the disagreements are.

17          And let's have that filed -- both sides

18   file their competing drafts or disagreements, so I

19   know what the disagreements are by the end of

20   business on the 11th.  And I'll try to generate

21   something and send it back to you, and see if you

22   have any objections.

23          Anybody have any problem with that

24   procedure?  Ms. Armijo?

25          MS. ARMIJO:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 177 5098

```
 1              THE COURT:  Any of the defendants?  Does
 2     that sound okay?  So we won't be using the
 3     indictment.  We'll be using a case description.
 4     Remember that all the case description is for --
 5     don't kill each other and yourselves over this.  The
 6     only thing it's used for is when the jury comes in
 7     the room, and I ask the question:  Do you know
 8     anything about this case, and I read to them the case
 9     description, it is meant to sort of trigger in their
10     mind, do they know anything about this case.
11              Now, remember in your questionnaires, you
12     have a lot of information on there, so they're going
13     to know a fair amount, I think, about this case a
14     little bit, generally, from what you've told them.
15     But I do think we need to do it again, because we
16     need to bring those people probably up to the bench,
17     and find out what they know, and whether what they
18     know keeps them from being a fair and impartial
19     juror.
20              MS. HARBOUR-VALDEZ:  Your Honor, for
21     clarification, this is just for trial 1 group;
22     correct?
23              THE COURT:  Yes.  Let's just do these for
24     the first trial.  And we'll -- are you envisioning
25     another pretrial conference for the second trial,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5098

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5099

```
 1    Ms. Wild?
 2              THE CLERK:  I am.
 3              THE COURT:  So we'll do that.  All right.
 4    Anything on case description?
 5              All right.  Let's do proposed voir dire.
 6    Ms. Armijo, did you say there was a date in the
 7    scheduling order for proposed voir dire?
 8              MS. ARMIJO:  Yes, January 12.
 9              THE COURT:  All right.  And is that all it
10    says about proposed voir dire?
11              MS. ARMIJO:  And there is also objections
12    to that on January 19.
13              THE COURT:  All right.  So between the 12th
14    and the 19th, try to talk to each other about voir
15    dire.  See if you can work it out.  And if you can't
16    work it out, then file your objections, and then I'll
17    try to rule on them.  I'm fairly liberal to each
18    side.  I mean, there are limits.  But y'all probably
19    noticed I struck out some things on your special
20    questionnaires.  I didn't think we needed to get into
21    their religion.  I didn't think we need to know what
22    political party they were.  So there were some limits
23    on that.  But by and large, I'm fairly generous on
24    voir dire.  Take a look at it, talk to each other,
25    see if you can work it out.  If you can't, file your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

1   objections by the 19th, and then I'll try to rule on

2   it.

3          One thing I was going to mention on voir

4   dire, if y'all think that there are certain questions

5   that need to be asked -- although I can't imagine how

6   much more of this we could ask them, after we did

7   that questionnaire -- but if you think of something

8   that ought to come out of my mouth, that I ought to

9   ask the question rather than y'all, see if you can

10  agree on it, submit it to me, and tell me you want me

11  to ask that as part of mine.

12         Otherwise, I'll expect you -- sometimes

13  people draft the proposed voir dire as things that

14  they are going to ask the Court to ask.  I'll expect

15  you to ask most of that, unless it's something that

16  I've already told you I'm going to ask about.  So if

17  you decide that, as you get closer, there are certain

18  questions that you think would be better coming out

19  of my mouth and you prefer not to ask, talk with each

20  other and then submit those.

21         All right.  We know the jury list.

22         Courtroom technology.  Y'all have used it

23  here over the last month, so you know how the

24  courtroom works.  If you need something else, talk to

25  Ms. Wild about it, and we'll work with you to provide

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5100

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 180 of 101

```
 1    that technology.  I would encourage you that if
 2    you're going to use technology, that you make a time
 3    with Ms. Wild and Ms. Standridge to come over and
 4    practice and make sure it interfaces.  We'll get our
 5    IT people in the courtroom, and they can work with
 6    you to make sure it works.  So do take advantage of
 7    that.  We'll work with you to make the courtroom
 8    available, our IT people available, to try to make
 9    sure it interfaces well.
10          We talked about jury instructions.  As Mr.
11    Castellano mentioned, I generally have my courtroom
12    deputy place on the Elmo a copy of the jury
13    instructions that I will read so that the jury can
14    read along with me as I read them the jury
15    instructions.  Anybody have an objection to them
16    visually seeing the jury instruction as I am reading
17    them?  From the Government?  Ms. Armijo?  Mr.
18    Castellano?
19          MS. ARMIJO:  No objection.
20          THE COURT:  Any from the defendants?  Not
21    hearing any, we'll put those on the Elmo.
22          The same -- let's see, with jury
23    instructions, I generally send back one set of jury
24    instructions to the jury so they each have a set of
25    jury instructions that I've read.  And then only one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5101

```
 1    verdict form goes back.  So there is one verdict
 2    form, but each one has a set of jury instructions.
 3    Is that okay, Ms. Armijo?
 4              MS. ARMIJO:  Yes, Your Honor.
 5              THE COURT:  Any of the defendants have a
 6    problem with that?
 7              All right.  Let's talk about exhibits.
 8    Many of you are -- we'll do the cutoff at Ms.
 9    Sirignano's age.  So everybody that's below her in
10    high tech are not going to have a problem with this.
11    Everyone my age begins to maybe stumble around on
12    JERS.  Now, JERS is spelled J-E-R-S.  I'm not saying
13    it like I'm from Hobbs and I'm talking about jurors.
14    I meant JERS.  Now, for those of you who are not
15    familiar with the system here in the District of New
16    Mexico -- maybe Mr. Adams is, because I think we
17    borrowed the technology from South Carolina.  I think
18    they invented it in the federal court there, but we
19    were right there on their heels.
20              So, in the old days, you'd take all the
21    exhibits after the trial and take them to the jury
22    room, and you'd bundle them up, and give them a gun
23    and heroin all at the same time, and hope they came
24    out in a few hours with an appropriate verdict.  We
25    don't do that anymore.  I don't know about real
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5102

1   evidence, maybe we still do it, I don't know.  But we

2   put all the exhibits on a disc, and it goes back.

3   And they have a video screen.  You can come over and

4   look at it.  We'll give you a tutorial, so everybody

5   is comfortable with it.  But it does make the

6   presentation of the evidence in the jury room better.

7   So let's plan on using it.  I know we get stuck in

8   our ways.  We need to drag ourself into 2018 and step

9   it up.  So the burden falls mostly on the Government

10  since they have most of the exhibits.  But JERS

11  stands for Jury Evidence Recording System.  So just

12  like when you're watching -- I know I never do this,

13  but you're watching the NFL Network, and you've got

14  all the screens up there, and you just pull up the

15  games with the remote control.  That's basically what

16  you're doing in the jury room.  They can pick up the

17  audio.  They pick up all the documentary evidence.

18          Real evidence, I guess, it will have to

19  still go back there.  But let's work to get that

20  done.  Sometimes what happens is, despite my

21  admonition, people begin to bail out, and try to get

22  out of it as the trial goes on.  I'm trying to pull

23  the U.S. Attorney's Office into the 21st Century.  So

24  I'm going to put pressure on them to get it done.

25  Defendants, you'll need to do it too, work with the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 183104

```
 1    Court.  If you want a tutorial, we'll give it to you.
 2    We'll take you back there and make you comfortable
 3    with it.  It's fine.
 4              If you think about it, one of the things it
 5    does, instead of Juror No. 11 over there looking
 6    through this binder, and this juror over here looking
 7    at this, they have to look at it together.  So I
 8    think it does have some benefit of pulling the jurors
 9    together, and they have to watch television together,
10    rather than just sitting in the corner and looking at
11    this exhibit and that exhibit, it pulls them
12    together.  So I think from Harvard MBA group
13    dynamics, it has some benefit of pulling jurors
14    together and making them begin to do some stuff
15    together at the beginning, and that's review
16    exhibits, and ultimately them voting on how they're
17    going to -- what verdict they're going to return.  So
18    let's work hard and we'll be glad to try to help you
19    do that.
20              You've gotten used to my numbering system.
21    So the Government gets the numbers.  Theirs is real
22    easy.  I think we've worked out a system unless Ms.
23    Wild tells me it's not a good system.  Let me ask
24    you, Ms. Wild, and then I'll ask the defendants:  Is
25    there any reason for purposes of the trial that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5104

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5105

```
 1    can think of that the defendants need to separate
 2    their exhibits by name?  In other words, we've
 3    been -- in this hearing we've been saying Carlos
 4    Herrera Exhibit A, Mr. Perez Exhibit A.  We've been
 5    breaking out by name.  Is there any reason that we
 6    can't just run Defendants A through Z, and then if
 7    they're done with those letters, they go back and go
 8    AA, AB, AC.  And then if they run out of that, it's
 9    BA, BB, BC?  Is there any reason to break it out by
10    defendants, or should we do it just by individual
11    defendants, so their name is on it, and then run
12    separate letters for each defendant, or should we
13    just run one set of defendants exhibits?
14              THE CLERK:  I think for clarity of the
15    record that, because in some instances I'm imagining
16    only one defendant could be moving something.  But it
17    would be useful to utilize the system we've been
18    using for this hearing, unless the defendants
19    collectively have a different view.  But that's my
20    gut reaction to that.
21              THE COURT:  Well, it's been working here in
22    the courtroom for the purposes of the evidentiary.
23    Anybody have any problem with just continuing that?
24    Ms. Jacks?
25              MS. JACKS:  I just have a suggestion how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5105

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185

```
 1    this has worked in other multidefendant cases, where
 2    each defendant starts with what, like say Sanchez
 3    would start with 1000.  Baca would start with 2000
 4    another defendant would start with 3000.  So they're
 5    numbered, but each defendant has like a sequence of
 6    numbers.  I prefer numbers over letters because it's
 7    easier for me to keep track.
 8            THE COURT:  Well, I'll probably do letters.
 9    I need to -- in certain things I probably just need
10    to stay steady rather than have a bunch of numbers
11    floating around.  So I'll probably stay with letters.
12    All right.  Anything else on that?
13            All right.  Ms. Wild, I'm beginning to run
14    out of general stuff.  I'm about to switch back to
15    exhibits and witnesses and discovery and evidentiary
16    issues and motions in limine and Daubert, and
17    anything like that.  Can you think of anything else
18    from a general standpoint we need to talk about to
19    finish the pretrial conference?
20            THE CLERK:  Did you cover the mechanics of
21    the submission of the jury instructions, and how that
22    needs to be done in terms of ensuring that
23    anything -- everything needs to be filed, needs to be
24    provided to us in an executable format at your
25    proposed text email address.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5106

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5107

```
 1              THE COURT:  I think we covered that.
 2              THE CLERK:  One instruction per page.
 3              THE COURT:  Didn't cover that.
 4              THE CLERK:  Don't need a clean set, just a
 5    dirty.
 6              THE COURT:  Covered that.
 7              THE CLERK:  Okay.  That's all I have.
 8              THE COURT:  All right.  Anything else we
 9    need to cover about the trial?  Many of you have had
10    trials with me, others haven't.  Anything you want to
11    ask me, this would probably be the time to do it as
12    to how I conduct a trial, or what I allow, what I
13    don't allow.  Don't feel shy about asking.  Anybody
14    want to know how I do things or what I allow?
15              All right.
16              MS. ARMIJO:  Your Honor --
17              THE COURT:  Ms. Armijo?
18              MS. ARMIJO:  When we approach the bench,
19    there is obviously going to be -- my math skills are
20    not very good -- 13 attorneys.  Are you going to have
21    any rules about if we're all going to go up there?
22    Are you going to allow just one attorney per team, so
23    to speak?  Just something to think about so that the
24    first time it happens, we're not all rushing up there
25    and creating chaos.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Yeah.  Well, I'm not going to
 2    restrict the attorneys that come up.  If y'all want
 3    to self-select, for example, who comes up, that's
 4    y'all's business.  But I probably won't restrict the
 5    attorneys from coming up.  If, during the trial,
 6    y'all want to have one, particularly during the voir
 7    dire, if you want to just have one coming up, and
 8    dealing with stuff.  But I probably am not going to
 9    limit you.  It will be harder.
10              Remember when you come up, if you're the
11    speaker, you need to speak into this.  Because
12    Ms. Bean is going to put on earphones, and I'm going
13    to fog the machine.  So you'll need to be the one
14    that's speaking here.  So if you're lawyer number 13
15    out there, you know, you may not get -- you're going
16    to have to come in here and speak.
17              You know, I will probably have to put
18    limitations on tag-teaming in examinations with this
19    many lawyers.  So no tag-teaming.  If you stand up
20    and object, I'm probably going to be expecting Mr.
21    Adams to do the examination, not Ms. Sirignano.  So
22    pick your champion on each witness and stick with it,
23    and don't switch.  You're not going to get to have
24    Mr. Adams cross-examine a while and then Ms.
25    Sirignano for a while.  We're not doing it that way.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5108

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 188 5109

```
 1    So pick your lawyer for each witness, and I'll
 2    probably not allow tag-teaming for each witness.
 3    You're welcome to switch around, have one lawyer on
 4    one witness and another lawyer on another witness,
 5    but not two lawyers on one witness.
 6              Anything else, Ms. Wild?
 7              THE CLERK:  And you explored if the defense
 8    would be giving their openings at the beginning of
 9    the case.
10              THE COURT:  For the time being, we're
11    planning on their doing their openings at the
12    beginnings, and we have the times on it.
13              THE CLERK:  Thank you.
14              THE COURT:  If the defense would send me a
15    letter telling me in what order they're going to do
16    it, that way, at least I can call on you.  If you
17    have preference as to how you want to -- if you want
18    to do the same order throughout trial, just let me
19    know; that way, I'll call on you and do it.  If you
20    want to just play it by ear during the trial, at
21    least for openings, I think you can probably plan
22    ahead.  So send me a letter so I've got it up here,
23    and I can call on you, and we look like we're
24    organized and know what we're doing.  I'll call on
25    you in that order.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5109

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189110

```
 1          If you want to do something throughout
 2   trial that I call on a particular order for a
 3   cross-examination in the Government's case, and how
 4   you're going to present your case in the defendants'
 5   case-in-chief.  So think about that, and just give me
 6   direction.  I don't have any particular views on
 7   that.  But y'all may.  And we'll try to look like we
 8   had a pretrial conference and got together and
 9   discussed those things.
10          Anything else, Ms. Wild?
11          THE CLERK:  Not at this time.
12          THE COURT:  All right.  Let's then go back
13   to -- unless anybody has anything on this, let's go
14   back to the motion list, which I think brings up sort
15   of getting to some of the core issues that we have
16   on -- give me just a second to get a little organized
17   here.
18          All right.  Ms. Armijo, Ms. Wild, if you'll
19   remind me of what the -- what it says on the
20   scheduling order about witnesses.  What does it say
21   on that?
22          MS. ARMIJO:  Well, Your Honor, it says
23   January 12, 2018, witness list.  But I believe that
24   when we were at one of our previous hearings, you had
25   ordered the Government to be overinclusive, and to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5110

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 191

```
 1   file a witness list, which we've done.

 2            THE COURT:  Okay.  Well, let me ask the

 3   Government this before I start imposing things:  On

 4   your January 12th list that you're going to file by

 5   January 12th, what is it that you're thinking of

 6   filing, you're wanting to file?  And let me see if I

 7   can work with that before I start telling the

 8   Government what to file.  What's your thinking about

 9   what you're going to file on the 12th?

10            MS. ARMIJO:  You mean as far as witness

11   list, or the --

12            THE COURT:  Yes.

13            MS. ARMIJO:  Well, we've already filed one.

14   We probably would file another one and try and make

15   it a little bit more tailored to witnesses that we

16   would be calling.  It still may be a little bit --

17   have people that we may not, but just in an abundance

18   of caution, so that we're not caught short, if we

19   have to call somebody, have some people on there.

20   But it would be shorter, I would imagine.

21            THE COURT:  Let me ask some general

22   questions, see if we can maybe hammer something out

23   that's useful to everybody, and still allows the

24   Government to do what it needs to do.  Thinking of

25   your case-in-chief, how much witnesses -- let me ask
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 191

```
 1   this question -- it goes back to how long this trial
 2   is going to last.  How long do you think it's going
 3   to take the Government to put on its case?  Of the
 4   six to eight weeks that we're talking about, how much
 5   of that time do you think is going to be the
 6   Government putting on its case?
 7           MS. ARMIJO:  If I could just have a moment,
 8   Your Honor.
 9           THE COURT:  You bet.
10           MS. ARMIJO:  Four weeks.
11           THE COURT:  Now, thinking about your
12   case-in-chief, how many witnesses -- not naming the
13   witnesses -- but how many witnesses do you think
14   you're going to be putting on in that four weeks?  Do
15   you think you're looking at 20, 30?  What do you
16   think that four weeks is going to look like?
17           MS. ARMIJO:  Approximately 30.
18           THE COURT:  Do you think that 30 is a
19   conservative number?  Or do you think that number --
20   by that I mean does that leave you a little bit of
21   cushion, or do you think that's a number that is one
22   that, if we worked with 30, it's going to get you
23   into trouble?
24           MS. ARMIJO:  As long as -- I think it's a
25   good number.  I think it gives us a little bit of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5112

 1    wiggle room.  And depending on cross-examination and

 2    defenses that we see, things like that -- I mean, we

 3    may have to add to it.  But that's probably a good

 4    number.

 5              THE COURT:  Okay.

 6              MS. ARMIJO:  Certainly, if as we start to

 7    really get into things, if it's more, we'd let the

 8    parties know.  But I think that's a fair estimate.

 9              THE COURT:  Okay.  Now, don't anybody panic

10    here, but here's what I'm going to propose, and then

11    we'll see if there is something here to try to work

12    with to address the defendants' needs and the

13    Government's needs.  What if I required, by January

14    12, a witness list that it was of this structure;

15    that on the -- there will be at the top of the

16    witness list, there will be a will call list.  It

17    will not exceed 35 names.  Those will be the people

18    that, in the Government's best estimation, good

19    faith, they think they will be calling and -- well,

20    just will be calling.  And then everybody else will

21    be at the bottom in a may call list.  And then

22    another category -- although I want to talk about

23    it -- is rebuttal witnesses at the bottom.  Now,

24    while everybody is beginning to absorb this sort of

25    idea, by rebuttal witnesses I take a fairly narrow

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5113

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5114

```
 1    view of rebuttal witnesses, in the sense that if --
 2    if the testimony can be anticipated, I don't think
 3    that they're really rebuttal witnesses.  So we know a
 4    lot about what the defendants are going to do and
 5    say.  We've watched some of it.  So if it's something
 6    that we think they're going to do, we've seen them
 7    do, or there is any possibility they can do, I think
 8    they probably need to be above the rebuttal line, not
 9    below the rebuttal line.  So the rebuttal line might
10    be a zero for you, because those are really the kind
11    of witnesses that you can't anticipate.  You just
12    didn't know the defendants were going to do anything
13    like that.  You can walk up here and tell me at the
14    bench, Judge, I didn't have any idea they were going
15    to go that direction.  So your rebuttal line may be
16    zero.  But if you gave them a will call that's 35 or
17    under, and then you had a may call that, at this
18    point, with five defendants, you could cut down as
19    much as you can, if you know people are not going to
20    be called, if you could knock them off the list, so
21    they're not assigning those to various people, I
22    would think that's probably how they're going to do
23    this.  They're going to sit down and probably divide
24    up the will calls among some lead lawyers.  And then
25    the will call, maybe more junior lawyers are going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5114

```
1    get some will calls.  But if you can try to reduce

2    the number of people on that list, and so that

3    reduces the amount of work they've got to do, could

4    you live with that, as far as the defendants' request

5    for an updated witness list?

6            MS. ARMIJO:  We could certainly try, Your

7    Honor, to meet that.  And if we're having issues,

8    then we'd let the parties know.  But we could

9    certainly try.

10           THE COURT:  Okay.  Ms. Sirignano, I think

11   you've been taking the lead on this.  Why don't I

12   hear from you.  If I were to order that as to the

13   witness list that you're going to see on the 12th,

14   does that get you pretty close to where you need to

15   be to get ready for this trial?

16           MS. SIRIGNANO:  Judge, I filed Document

17   1526, that was the opposed motion in limine.

18           THE COURT:  That's the one in front of me.

19           MS. SIRIGNANO:  Just for the record, Judge.

20           Quite honestly, Judge, you know, if I had

21   my druthers, I would request that we got this updated

22   witness list sooner than later, only because I think

23   all of us in good faith filed our witness lists,

24   which were realistic in nature.  And I know the

25   Government's position was that you asked them to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 195116

```
 1    overinclusive.  And that's something that's been

 2    repeated a couple of times here.  And I understand

 3    that.  But if you do the math, Judge, a six-week

 4    trial, that's 240 hours total time.  And they have

 5    listed 274 potential witnesses.  And so I just want

 6    everybody to realize that all the defense teams are

 7    spending incredible amounts of CJA funds trying to

 8    figure out who these 274 people are.  So it's

 9    unfortunate that we have to keep plowing through all

10    of the investigation, the defense investigation, the

11    costs, and then wait until January 12.

12              I do like your proposal of will call

13    witnesses, may call, and then rebuttal, I agree with

14    you could be zero, or maybe one or so.  But my

15    request would be to perhaps amend the scheduling

16    order so we can do what we need to do for trial, and

17    not waste our resources going through all of these

18    proposed names, and really focus on the ones that

19    we're going to be dealing with at trial.

20              Thank you, Judge.

21              THE COURT:  Thank you, Ms. Sirignano.

22              Any other defendants have any thoughts on

23    the proposal I'm putting out there to address this

24    updated witness list?  Mr. Adams?

25              MR. ADAMS:  Sorry to double-team.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5116

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 196

```
 1                THE COURT:  You're already tag-teaming.
 2                MR. ADAMS:  I think that only applied to
 3      trial is the way I heard that.  Judge, the only -- I
 4      love the idea of narrowing it down.  And obviously, I
 5      agree with Ms. Sirignano, if they have a pretty good
 6      handle on who their people are, I would hope they
 7      wouldn't wait till January 12 to provide it, and they
 8      could go ahead and do that in good faith, so we can
 9      push to be ready.  Earlier, we had talked about
10      allowing them to re-call people due to the
11      narratives, and they're wanting to have things be
12      more seamless.  If they could just asterisk those
13      people who they intend to call more than once, to the
14      best of their knowledge, that would certainly help us
15      be on the same page with them as we move forward.
16                THE COURT:  All right.  Any other
17      defendants that have any thoughts on this updated
18      witness list.  My proposal okay?
19                All right.  Let me ask you, Ms. Armijo, do
20      you have -- I forgot what the 12th is.  Let's see, is
21      that a Wednesday?
22                MS. ARMIJO:  I believe that's a Friday.
23                THE COURT:  How would you feel about
24      backing up a little bit the witness list, get it out
25      there a little earlier?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5117

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5118

```
 1            MS. ARMIJO:  I think it's difficult.
 2   Because next week, of course, is the holiday.  I know
 3   that there is a few of us at this table that have use
 4   or lose that we're already going to be missing out.
 5   The following week, we are talking about hearings,
 6   scheduling the week of January 8.  We don't know what
 7   that looks at.  It leaves very little time for us to
 8   do it.  And let's remember why we had that first
 9   list.  It was because we were getting into Brady,
10   Giglio, and the defense was hammering down:  We need
11   to know who they're calling.  We want this, that, and
12   the other.  So they've already had the luxury of one
13   list, which was purposely overinclusive.
14            This scheduling order was filed July 7 of
15   2017.  So it's not really fair for the defense to now
16   cry, and try and go back on it.  This scheduling
17   order applies to both parties.  We're willing to do
18   what the Court asked, instead of just narrowing it
19   down to 100 people, to do the dividing and everything
20   else.  But I don't think at this point, with all of
21   the discovery that we still have to get out and that
22   we're working on, for us to go back just for
23   convenience of the defense.  This was agreed upon,
24   and we would like to stick with January 12.
25            THE COURT:  Do you have any problem with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the asterisk -- putting the asterisk next to the

 2    witnesses that you think at this time you're going to

 3    be calling, and maybe several times in your trial?

 4              MS. ARMIJO:  No, we have no problem with

 5    that.

 6              THE COURT:  How many asterisks does Mr.

 7    Acee get?

 8              MS. ARMIJO:  He'll be a five asterisk

 9    person.

10              THE COURT:  All right.  Anything else you

11    want to say on this updated witness list, Ms. Armijo?

12              MS. ARMIJO:  No, Your Honor.

13              THE COURT:  All right.  Ms. Sirignano.

14              MS. SIRIGNANO:  Judge, I'm trying to

15    respond to that statement that we're trying to change

16    everything at the last minute after the scheduling

17    order has been in place.  Quite frankly, if we had

18    gotten useful witness lists the first time around, we

19    wouldn't be asking for something that's actually

20    workable.  What we don't have is workable.  Based on

21    information and belief, there is a deceased person on

22    the Government's witness list.

23              THE COURT:  It's New Mexico.

24              MS. SIRIGNANO:  Hey.  And I understand

25    they've got use or lose.  I was a Government employee
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5119

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 199120

```
 1   for 15 years.  My client is looking at a lot of time.
 2   And they charged this case.  I understand them being
 3   overinclusive.  But it's kind of abusive, 247
 4   potential witnesses.  I'm not asking for the name of
 5   every single person that they're going to call
 6   tomorrow.  We're all going to be here after the
 7   holidays.  And I think, you know, 35 -- will call 35
 8   names, they could probably skim that off of their 274
 9   person witness list, and send it out in an email
10   before the 12th, and if they want to finalize
11   something later.
12          But I just think that the amount of money
13   that's being wasted on finding people that aren't on
14   police reports, that have nothing to do with this
15   Molina or this alleged Marcantel thing, is just an
16   incredible exercise in futility for all of us.  And,
17   frankly, I'd like to get it sooner than later, so we
18   can focus on something else, Judge.  And it's not
19   that I'm trying to intentionally, you know, move the
20   scheduling order.  That's fine.  But I don't think
21   that we're asking for a lot; 35 names at the will
22   call, and this way we know who they're definitely
23   going to call, and we can move forward and address
24   something else.
25          Thank you, Judge.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5120

```
1              THE COURT:  All right.  Thank you, Ms.
2   Sirignano.
3              Anything else, Ms. Armijo, on the updated
4   witness list?
5              MS. ARMIJO:  Well, it's not something that
6   we can just easily put together.  It's something that
7   all the parties need to be together.  And even though
8   I said that we'd be taking off, I'm sure we're all
9   going to be working, but in different parts -- in
10  different states, in different cities.  So it's not
11  something that the trial team can do necessarily the
12  day after Christmas.  So we would simply request,
13  again, that we follow the scheduling order.
14             And again, I can't emphasize enough that we
15  were told to be overinclusive.  And we did go through
16  the Molina discovery, the Santistevan.  The counts
17  that are going to trial is where we got names from
18  that list.  So it's not like we were pulling from a
19  lot of other things.  And it's not worthless, because
20  as the Court knows, there is enterprise witnesses and
21  things like that.  So it's not something that is
22  easily done.
23             THE COURT:   All right.  Well, I'm going to
24  order that the updated witness list -- this is more
25  directed to the Government, but it applies to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5121

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 122

1    everybody -- will have, for the Government, a maximum

2    of 35 names as the will call.  And I encourage the

3    Government, if they don't think they have 35, don't

4    feel like you have to fill that up, so, if you don't

5    need it, if it's closer to 30, try to make it as

6    realistic as possible.  Because the more that the

7    defendants have to prepare for, the more difficult it

8    is for them.  And it is more costly.

9          On the may call, then those, again, I hope

10   that the Government will try to eliminate names at

11   this point.  I'll leave the January 12 deadline in it

12   to try to make sure that we don't rush this, and

13   we're looking at as realistic a list as possible.

14   And I'm hoping and anticipating that it will be much

15   less than 210 witnesses.  It will be something way

16   reduced on both will call and the may call side.  And

17   then there will be an asterisk next to the names of

18   the witnesses on the will call that the Government

19   anticipates may be called multiple times.  But I'll

20   leave the schedule in place.

21          All right.  Let me go back to you, Ms.

22   Sirignano.  You had another request, and a couple

23   more requests in this motion, assessment of all

24   Government witnesses.  What are you looking for

25   there?  Is there something else you're wanting here,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5122

 1    or are we -- I know it may not have worked out just

 2    the way you wanted it.  But have I handled everything

 3    that's in 1526, or is there something else that you

 4    need?

 5             MS. SIRIGNANO:  Judge, that was just

 6    included in there as argument because of the 274

 7    witnesses, including the dead guy that they were --

 8    that the witnesses were going to be admissible and

 9    they were going to be relevant to trial based the

10    rules of evidence.  I can -- we can wait to get the

11    updated witness list and make any argument after the

12    fact.  Because right now, it doesn't make sense to do

13    that.

14             THE COURT:  You also have a title in

15    discussion in the brief, or in the motion about voir

16    dire of all Government expert witnesses.  Is there

17    anything else on that line that you need or want

18    today, or have we covered it all with the Court's

19    ruling?

20             MS. SIRIGNANO:  I think we covered it all

21    already, Your Honor.  Thank you.

22             THE COURT:  All right.  So I will grant in

23    part and deny in part 1526 of the defendant's motion

24    on the updated list.

25             Let me drop down to Anthony Ray Baca's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5123

1    motion 1537.  Let me just see if we can clean that up

2    a little bit.  This is the one where he's asking that

3    the Government attorneys or witnesses not refer to

4    the alleged victims as victims.  Let me sort of give

5    my thoughts on this.  And I've done similar things in

6    the past, if not specifically.  And you may be able

7    to find an opinion I've written on this subject.

8    Generally, I consider the word "victim" to be

9    argumentative.  So I would prohibit that in the

10   opening statement or the Government using that word

11   in questions, and would ask the Government's lawyers

12   not to -- or to counsel and direct their witnesses

13   not to use that word.  I think it's better if you

14   just use names.  So if the alleged victims that we're

15   talking about are going to be people like Marcantel,

16   and people like that, that we just use names.  Tell

17   yourself to use names in the -- in your openings, use

18   names in your questioning, use names in your witness'

19   responses.

20        At closing, I do consider it proper for you

21   to characterize the evidence and call them victims.

22   And you can argue that they were victims, and use

23   that word.

24        Mr. Lowry, it's your motion.  Is where I'm

25   drawing the line acceptable to you or are there any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5124

```
 1    other -- Ms. Duncan?
 2              MS. DUNCAN:  Yes, Your Honor.  That is
 3    fair.
 4              THE COURT:  Any other defendants have
 5    anything they want to say on that before I hear from
 6    the Government?
 7              All right.  Can the Government live with
 8    that line, Ms. Armijo?
 9              MS. ARMIJO:  Yes, Your Honor.
10              THE COURT:  All right.  So that will take
11    care of 1537.
12              All right.  Then let's pull out motion
13    1530.  I believe that's Mr. Sanchez' motion in limine
14    on bad acts.  What I would propose to do on these is
15    start plowing through using the letter that Ms.
16    Armijo sent to Mr. Jewkes and Ms. Jacks.  Just take
17    these one at a time.  I guess I'll be looking, first
18    of all, from the Government to sort of tell me what
19    they intended to -- what they intend to use the
20    information for, if they are using the information
21    for establishing the enterprise, or that this was a
22    crime or bad act that was committed in furtherance of
23    the enterprise.  If they're not going to try to do
24    with that evidence, then if it's just a bad act or a
25    crime, and they're using it for some other purpose
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5125

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126

 1   that is permissible under 404(b), they identify what

 2   that purpose is.

 3            Then I'll look to the defendant,

 4   Mr. Jewkes, Ms. Jacks, to tell me what you think is

 5   wrong with the Government's arguments of why it

 6   should be admitted into evidence.  And then I guess

 7   I'll make rulings on these one at a time.

 8            Let me give Ms. Bean a break, and I'll hear

 9   from you right after the break.  Let's get -- let's

10   everybody take a break for about 15 minutes, and then

11   we'll come back and get started going through these

12   one at a time.

13            MR. BENJAMIN:  Could I confirm, we are here

14   tomorrow; correct?

15            THE COURT:  As far as I know.  If you want

16   to talk to Ms. Wild, go ahead.  But as far as I know,

17   I'm working through 5:30 tomorrow, and I'm driving

18   back tomorrow, and I have criminal stuff in

19   Albuquerque on Thursday morning.  That's a schedule I

20   am operating under.

21            All right.  We'll see you after the break.

22            MR. JEWKES:  After the break, I'll ask the

23   Court a question.

24            (The Court stood in recess.)

25            THE COURT:  All right.  Let's go back on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5126

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 206

```
 1    the record.  Everybody got an attorney?  Look around,
 2    make sure everybody has got an attorney.
 3           All right.  Mr. Jewkes, you had some
 4    comments you wanted to make on your motion.
 5           MR. CASTELLANO:  Your Honor, before
 6    Mr. Jewkes begins, I just have a scheduling question.
 7    Does the Court know when it's going to hear Document
 8    1325?  That is Mr. Baca's motion to suppress coerced
 9    statements anticipated testimony.  We've had, since
10    yesterday, Agent Brusuelas from the FBI come from
11    Albuquerque.
12           THE COURT:  I'm sorry.
13           MR. CASTELLANO:  That's okay.  I didn't let
14    the Court know earlier.
15           THE COURT:  Which motion is that?
16           MR. CASTELLANO:  It's Document 1325.
17           THE CLERK:  You don't have it, Judge,
18    because it's not something we didn't know for sure
19    would be taken up.  And it's something I just spoke
20    with Ms. Armijo about.
21           THE COURT:  Well, what do you think?  I
22    take it that you would like to get that witness on;
23    is that what you're raising it for, Mr. Castellano?
24           MR. CASTELLANO:  We would, Your Honor, so
25    she can get back to Albuquerque.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5127

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 207

 1          THE COURT:  Does that mess anything up from
 2   your standpoint, Ms. Wild?
 3          THE CLERK:  No, other than it's a little
 4   bit different than the agreement and the discussion I
 5   just had with Ms. Armijo in coordinating with counsel
 6   for the defense.  But if everyone is on board, I
 7   don't see it as a problem.
 8          THE COURT:  Does anybody from the defense
 9   side have a problem with getting the Government's
10   witness testimony taken and getting out of here?
11          MR. CASTELLANO:  Your Honor, if it's a
12   problem -- I understand the Court doesn't have it
13   scheduled for today.  We could probably put her on
14   tomorrow maybe first thing, and get her back.  I'm
15   not trying to mess with the schedule too much.
16          THE COURT:  So I don't have it written
17   down, this is Mr. Baca's motion to suppress?
18          MR. CASTELLANO:  It is, Your Honor.
19          THE COURT:  How about you, Ms. Duncan?  Do
20   you have any problem with taking this witness up now?
21          MS. DUNCAN:  Your Honor, we'd ask that we
22   take her up first thing in the morning and not now.
23   I'm not ready to do her this afternoon.  But I could
24   be ready first thing in the morning.
25          MR. CASTELLANO:  That's fine with us, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5128

 1   Honor.  I just wanted to make sure it was on the

 2   Court's schedule.

 3            THE COURT:  Okay.  It wasn't.  But sounds

 4   like, if nobody has any objection, we'll take the

 5   witness up first thing in the morning then.

 6            MR. CASTELLANO:  With your permission, may

 7   I release her for the day, Your Honor?

 8            THE COURT:  Any objection, Ms. Duncan?

 9            MS. DUNCAN:  No, Your Honor.

10            THE COURT:  Anybody else?  All right.

11   She's released for the day then.

12            MR. CASTELLANO:  I'll be right back.

13            THE COURT:  Mr. Jewkes, you had some

14   comments you wanted to make on your motion.

15            MR. JEWKES:  Yes, sir.  But I do have a

16   housekeeping matter to begin with.  In the morning I

17   have two sentencing hearings in front of Judge

18   Gonzales upstairs.  So if I can duck out of here

19   about 9:45, take care of business, I will be back,

20   and of course, Ms. Jacks will be here --

21            THE COURT:  All right.

22            MR. JEWKES:  -- to take care of Mr.

23   Sanchez.

24            THE COURT:  That's fine.

25            MR. JEWKES:  Your Honor, may it please the

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                       201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 5129

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209

```
 1    Court.  We filed Document 1530.  We complain about
 2    the Government's notice of their intended use of
 3    alleged bad acts, which is 404(b) evidence.  And,
 4    Your Honor, Appendix A, which was provided to us,
 5    lists 27 acts.  And by the way, that's attached to
 6    the motions.  That began in 1992, with Mr. Sanchez'
 7    conviction in Valencia County for murder, and then
 8    goes on to culminate in the March 7, 2014 incident
 9    involving Javier Molina, the subject of Counts 6 and
10    7 of the case before the Court.  We're talking about
11    a span of 22 years.
12            Your Honor, as we pointed out in the
13    motion, the guiding rule here, of course, is rule
14    404(b) of the Federal Rules of Evidence.  It has to
15    do with prohibited use.  Evidence of a crime or a
16    wrong or other act that's not admissible to prove the
17    person's character, in order to show that on a
18    particular occasion the person acted in accordance
19    with that character.
20            Your Honor, the Court brought this up, oh,
21    I don't know, a couple hours ago, that basically the
22    problem is, the Government, in order to meet their
23    burden, must establish a link between the bad act,
24    and link it to the enterprise.  And to do that, what
25    they're going to have to show is that it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5130

210

```
 1    relevant -- the bad act, that is -- to establish any

 2    one of those elements that we find in 404(b), which

 3    can be intent and knowledge, motive, preparation,

 4    plan, or absence of mistake.  And at the same time,

 5    has to show a logical connection between the alleged

 6    bad act and the trial before the Court.

 7            One last thing, Your Honor.  The Government

 8    bears the burden of proving just how the proffered

 9    act is relevant to an issue in the case before the

10    Court.  And, as I said, they noticed us with 27 acts.

11    The first act being November 22, 1992, Daniel Sanchez

12    committed murder in the first degree.  We would argue

13    to the Court, Your Honor, that they have not

14    established -- they've not notified us as to what is

15    the nexus between this and the alleged enterprise.

16    In other words, how is it relevant to this case?

17            Should we take things one by one, to let

18    the Government respond, Your Honor, or how do you

19    want to do it?

20            THE COURT:  Yeah, I think that probably

21    what I'd like to do is have the Government lead off,

22    since they are the proponent of the evidence, and

23    see -- let me ask them some questions about it.  And

24    then I'll hear from you, and you can tell me more

25    that I don't know about what the bad act is.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5131

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 211

```
 1    then if you have some questions of the Government
 2    that you'd like to ask through me, I'll be interested
 3    in those.
 4              MR. JEWKES:  Very well, Your Honor.
 5              THE COURT:  Thank you, Mr. Jewkes.
 6              All right.  So I guess the two questions I
 7    will probably be asking -- I mentioned these a little
 8    bit earlier -- on each one of these, Mr. Castellano,
 9    and you can tell me anything about them you want --
10    some of these I can probably figure out what they
11    are; others I may not.  So I'm not trying to restrict
12    you in any way.  But the two questions I'll probably
13    be looking at is this what you think of as 404(b)
14    evidence?  And we're answering that in probably two
15    ways.  Tell me, is this what I would call enterprise
16    res gestae, furtherance of the enterprise, or is it a
17    true bad act or crime that you're using to show one
18    of the 404(b) purposes?  So on each one of these I
19    have those two questions.  And then, if it is 404(b)
20    evidence, what is the proper purpose that the
21    Government thinks it's invoking with this evidence.
22              MR. CASTELLANO:  And I looked over each of
23    these last night.  And I may be able to answer some
24    of the Court's questions, and I may not be able to
25    answer others.  Each of these allegations is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5132

1    supported by documentation.  And so, over the night

2    last night, I wasn't able to pull the documents which

3    substantiated each of these allegations.  My short

4    answer is I think none of this is 404(b).

5                THE COURT:  So your position is you're

6    either going to tie it to enterprise, furtherance of

7    the enterprise.  I can't think anything else what it

8    would be.  Maybe res gestae.  But it's going to be

9    enterprise, furtherance of the enterprise, or it's

10   not coming in for any exception under 404(b); is that

11   fair?

12               MR. CASTELLANO:  It is fair, Your Honor.

13   And I didn't get a chance to do this with each of the

14   letters, but I did with Mr. Sanchez' over the break,

15   if you look in the right hand column, I have OA 11,

16   12, and 13, and numbers going down the page.  Those

17   are overt acts.  Each of those acts is actually

18   charged in the RICO indictment, which is 16-CR-1613.

19               THE COURT:  So on these is particular acts,

20   these are actually alleged in the indictment, if I go

21   to those counts?

22               MR. CASTELLANO:  That's correct.  In

23   16-1613, which is the RICO indictment.  With the

24   exception of the 1992 charge --

25               THE COURT:  Are you able to make this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5133

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213

213

```
 1    portion just bigger on your screen?  Thank you.

 2              MR. CASTELLANO:  So, with the exception of

 3    the 1992 charge, every one of these is an

 4    allegation -- it's an Overt Act in the RICO,

 5    conspiracy charged in a separate case.

 6              THE COURT:  If you were to turn the page,

 7    would it be the same way?

 8              MR. CASTELLANO:  Yes, sir.  I can display

 9    that for the Court.  Like I said, I was only able to

10    do this one over the break.

11              THE COURT:  What are the letters in front?

12              MR. CASTELLANO:  The OA stands for overt

13    acts.

14              THE COURT:  Oh.  Did you have those on the

15    front page?

16              MR. CASTELLANO:  I did, Your Honor.

17              THE COURT:  Okay.  I thought those were

18    just numbers.  Okay.

19              Would you push it up a little bit?  All

20    right.  If you want to go to the next page.

21              MR. CASTELLANO:  On this page I struck one,

22    which was the one that mentions the date of the

23    February 24, 2012.

24              THE COURT:  So you will not be seeking to

25    introduce that bad act?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5134

```
1              MR. CASTELLANO:  No, Your Honor.  If I
2    remember correctly, I think when we superseded, we
3    may have removed that act, now that I went back and
4    double checked.
5              THE COURT:  All right.  Let me ask you
6    this:  You can tell me anything you want on these,
7    but when you were charging the overt acts in the
8    indictment, what was your philosophy, thinking, why
9    did you use those to charge in the indictment?
10             MR. CASTELLANO:  In the RICO indictment,
11   the purpose was to establish for purposes of a
12   racketeering conspiracy, that each of these
13   individuals in that indictment conspired, or -- there
14   is a conspiracy with one or more other people to
15   violate the RICO Act.  So these would all be an
16   indication of a conspiracy to commit racketeering
17   acts in furtherance of the enterprise.
18             THE COURT:  So I take it from that answer
19   that during the entire timeframe that's used, I guess
20   the earliest one that's an Overt Act is going to be
21   1994.  During that entire time Mr. Sanchez was,
22   according to the Government, a member of the SNM
23   Gang?
24             MR. CASTELLANO:  I believe that's correct,
25   Your Honor.  The one issue I have with not having
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5135

```
 1    supporting documentation is I won't be able to recall
 2    when each of these individuals entered the SNM Gang.
 3    So, for example, in 1992, I don't believe that Mr.
 4    Sanchez was a member of the SNM.  But the reason
 5    that's included is that for purposes of recruiting
 6    for the SNM, things like pedigree, and the
 7    willingness to put in work for the gang is something
 8    that the gang looks for when they're recruiting
 9    members.  So if someone comes into prison with a
10    murder, that's somebody who they may be interested
11    in, knowing that someone is willing to take a life.
12            So we are actually moving the admission of
13    that as well.
14            THE COURT:  I guess I understood that, if
15    somebody did something to advance their position
16    within the enterprise, or to become a member of the
17    enterprise, that would probably fall within the
18    furtherance or evidence of the enterprise.  But if he
19    just committed a murder, and that's all we have, we
20    don't have any evidence that he was doing it for
21    purposes of advancing the enterprise or becoming a
22    member of the SNM Gang, what would be your pitch for
23    why that should come in?
24            MR. CASTELLANO:  For the reason I stated.
25    I believe that some of the cooperators know Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Sanchez to have a murder conviction.  That's

 2    something they talk about amongst themselves.  It's

 3    something that establishes that someone is willing to

 4    prove themselves for the gang.  But I do agree with

 5    the Court's question, or I think the Court is asking

 6    the right question.

 7         THE COURT:  Seems like that's part of his

 8    resume.  He's got a resume; doesn't matter how he got

 9    it, but if he didn't put that thing on his resume to

10    try to get into the gang, or advance the gang, it

11    seems to me it's not going to fall within the

12    enterprise evidence.

13         MR. CASTELLANO:  I agree with that

14    statement, Your Honor.  I use the term "pedigree."  I

15    think resume is another word for that.

16         And I will state I don't believe we could

17    establish that, in 1992, Mr. Sanchez committed that

18    murder for the purpose of entering the enterprise.

19    So I don't think it would fit the elements in that

20    way.

21         THE COURT:  Do you feel like on the

22    others -- and you must have taken this to the Grand

23    Jury; the Grand Jury found probable cause on these

24    overt acts.  Did the Grand Jury hear testimony about

25    tying Mr. Sanchez or tying these bad acts and crimes

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5137

1    to the enterprise for each one of the overt acts?

2            MR. CASTELLANO:  I don't remember the

3    specific Grand Jury testimony.  But, yes, that would

4    have been the purpose, was that we would have tried

5    to establish for the Grand Jury these things were

6    done for the purpose of establishing a racketeering

7    conspiracy.

8            THE COURT:  And is that your intent at

9    trial is to take each one of these overt acts?  And

10   do you have the evidence to tie these acts to the

11   enterprise, and that they were done in furtherance of

12   the enterprise?

13           MR. CASTELLANO:  Yes, Your Honor.  Now, the

14   first question is admissibility.  And that's the

15   first question you want to ask.  The second is

16   whether we truly want to introduce each of these at

17   trial.  I can tell the Court, like I said, each of

18   these is based on documentation.  So once we decide

19   which ones we want to introduce at trial, we would

20   make sure we had a witness.  And if we didn't, then,

21   obviously, it wouldn't come in.

22           But this is for the purpose of the Court

23   noting that they're admissible for trial purposes.

24           THE COURT:  All right.  Tell me what I also

25   ought to be asking you to try to determine whether

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5138

```
 1   you are meeting your requirements to get this in for

 2   enterprise or furtherance of enterprise activity.

 3           MR. CASTELLANO:  I may be able to answer

 4   that with the Harris case I mentioned earlier.  I'll

 5   show the Court two portions from that decision.  The

 6   first is that an association-in-fact enterprise, here

 7   at the top of the page, need not have a hierarchical

 8   structure or chain of command.  Decisions may be made

 9   on an ad hoc basis, and by any other number of

10   methods, by majority vote consensus and show of

11   strength, et cetera.  Members of the group may not

12   that have fixed roles.  Different members may perform

13   different roles at different times.  The group need

14   not have a name, regular meetings, dues, established

15   rules and regulations, disciplinary procedures, or

16   induction, or initiation ceremonies, nor is the

17   statute limited to groups whose crimes are

18   sophisticated, diverse, complex, or unique.  For

19   example, a group that does nothing but engage in

20   extortion through old-fashioned, unsophisticated, and

21   brutal means, may fall squarely within the statute's

22   reach.

23           So one of the things we need to prove --

24   well, I should say three things -- is that the

25   enterprise has a purpose.  And in Harris, one of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   purposes of the Crips Gang was drug distribution.

2   Then we have to establish relationships among the

3   members, and then longevity.  And I know people talk

4   about the acts covering a number of years.  Well,

5   longevity covers that element.  And in that case the

6   record showed a pattern of activity that the

7   Government alleged continued over a period of years.

8   So we do have to establish for an association-in-fact

9   enterprise sufficient longevity for the group to meet

10  its purposes.  And so when we allege at least acts,

11  it is showing longevity of the gang, long enough for

12  them to basically be a gang.

13          THE COURT:  All right.  Anything else on

14  these bad acts, Mr. Castellano?

15          MR. CASTELLANO:  Not for Mr. Sanchez, Your

16  Honor.

17          THE COURT:  Well, let me say this, and I'll

18  start hearing from you, Mr. Jewkes, and other

19  defendants.  I'd be inclined not to include, based

20  upon what I'm hearing, the first one about Mr.

21  Sanchez committed murder in the first degree in 1992.

22  I'm not seeing enough link there just between items

23  on a resume or pedigree and the enterprise.  There

24  may be some other reason it comes in, but -- such as

25  he takes the stand, and a conviction or something.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5140

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5141

```
1    I'd have to rethink that.  But at least for purposes
2    of either the Government is not trying to use 404(b),
3    so that's out.  So if it's coming in for enterprise,
4    it looks like it wouldn't.
5           The rest of them, based upon the
6    Government's representations, they're not coming in
7    under 404(b).  But they'd be coming in for enterprise
8    and for furtherance of the enterprise's activities.
9           So those would be my calls.  Your thoughts?
10          MR. JEWKES:  Your Honor, that's half the
11   battle.  With regard to -- first of all, Your Honor,
12   they allege, if I counted correctly, eight or nine
13   assaults inside prison, either involving correctional
14   officers or other inmates.  But we have received no
15   showing that this was in furtherance of the
16   enterprise; in other words, that it was tied to the
17   enterprise.  Because I think the Court's going to
18   hear ample evidence that inside prison, these guys
19   don't always get along.  It doesn't have anything to
20   do with gang affiliation.
21          THE COURT:  You mean, the defendants here,
22   is that what you mean by "guys"?
23          MR. JEWKES:  Yes.  Personal beefs.
24          So we would argue that we're going to have
25   to have a showing at some point in time with regard
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5141

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221

1    to the remaining 25 overt acts as to how it's going

2    to be tied to the organization.

3         THE COURT:  Well, stop right there.  And

4    let me ask Mr. Castellano a couple of questions here.

5    I don't want to turn this into more difficult than it

6    has to be.  I mean, this is -- since it's not a

7    404(b) and that's out the window, we're just talking

8    about regular evidence in a trial.  But can you think

9    of a way, Mr. Castellano, that before you talk about

10   one of these bad acts, or crimes, is there a way for

11   you to put on your evidence so that I can see what's

12   about to come, so I can hear the evidence of

13   enterprise and furtherance of the enterprise before

14   you actually get the bad act in, so that Mr. Jewkes

15   and I can be listening to it?  And then -- you know,

16   if it looks like he laid the foundation, we're just

17   going to keep moving.  But if we don't have the

18   evidence, I'm taking you at your word that you have

19   it.  I assume you do.  But before you blurt out these

20   things in trial, or a witness does, I'd like to hear

21   the evidence in furtherance before I hear it.

22        Can you think of a way to do that?  Because

23   once the bell is rung, it's hard to unring it.

24        MR. CASTELLANO:  I'm trying to figure out

25   how best to answer that question.  Because the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    indictment alleges, among other things, that the gang
 2    rules the prison system by force and by fear and
 3    intimidation.  And so I'm not sure that every act
 4    would be considered in furtherance of membership in
 5    the gang.  It could be.  For example, one of the
 6    intent requirements under VICAR is that you do
 7    something in furtherance of the gang, and that also
 8    means -- the cases law tells us you do it because
 9    it's expected of you by virtue of your membership in
10    the gang.  So if you're disrespected, then that would
11    result in responding to somebody who disrespects you,
12    which would include guards or other inmates.  So --
13              THE COURT:  Let me try this -- let me try
14    this and see -- I don't want make this more
15    complicated than it has to be.  But I also am trying
16    to figure out the way that the Court and the
17    defendants have a meaningful ability to object, if
18    they don't feel like the nexus is there, because this
19    is the kind of evidence that once it's out, you just
20    can't put it back in.  Sometimes nexus falls apart
21    and you can't fix it.
22              Would you be able to do this:  You said at
23    some point -- you're probably not going to put in all
24    these acts; at some point you're going to know
25    whether you are going to put in the acts.  You said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5143

1    you hadn't had a chance to look at the documents, and

2    that's probably what's going to drive it.  Would you

3    be willing that, at the point you're ready to

4    determine which overt acts you're going to prove up

5    at trial, and you're going to be looking at the

6    documents as you go through, would you be willing to

7    send a letter to Mr. Jewkes, and say:  Here's the

8    documents I'm going to be relying on, and these are

9    the overt acts I'm going to prove.  And then, at that

10   point, Mr. Jewkes can be looking at them, and you

11   know, he can make a call.  It's like, Yeah, this is

12   coming in, the judge is going to let it in, or there

13   is not enough here for them to prove the nexus, so

14   I'm going to fight him on that one and object at

15   trial.  And if need be, you know, somebody could send

16   me a letter and send me the documents you're relying

17   on, too, and tell me how you're going to do it.

18          The reason I'm thinking that might be a

19   minimal burden, is that's something you're going to

20   do eventually yourself anyway.  And the only thing

21   I'm adding to it is when you do it, tell Mr. Jewkes

22   so that he can figure out whether to object.  And if

23   you do, then Mr. Jewkes, since I'm putting one burden

24   on the Government here, I put the burden on you to

25   send me a letter and send me the documents and tell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5144

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225

1    me that you don't think that ought to come.  And I'll

2    try to be alert during the trial to the objection.

3              Do you think y'all could live with that?

4              MR. CASTELLANO:  I'm willing to give that a

5    try, Your Honor.  And if I can generate a shorter

6    list beforehand, indicating that I intend not to use

7    something, I'll try to let Mr. Jewkes know that.  And

8    then I'll try to focus on the other ones that we're

9    either thinking about, or moving towards admission.

10   But if I can shorten that list, then we'll try to do

11   that.

12             THE COURT:  Okay.  I don't think I can

13   think of a better solution as to how to deal with

14   this.  I think, generally, if the Government thinks

15   that -- I mean, if they went to the trouble of

16   putting it as an Overt Act, that's a pretty

17   substantial step.  So I assume they have some

18   evidence to back that up.  Remember, it only has to

19   be relevant.  So the standard is pretty low here.  I

20   mean, if it has any tendency to make the statement

21   true; in other words, that it establishes the

22   enterprise, or is in furtherance of the enterprise,

23   it's not a call I make by a preponderance of the

24   evidence.  It's simply, is it relevant?  And if

25   they've got enough there to allow a reasonable juror



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5145

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225

```
 1    to infer from that evidence, then it's probably not
 2    my -- I don't have a gatekeeping function here.
 3              What do you think, Mr. Jewkes?
 4              MR. JEWKES:  Yes, sir.  I think we can live
 5    with that.  What type of deadline did you have in
 6    mind?
 7              THE COURT:  Well, I'd be inclined not to
 8    impose a deadline here.  Because this is a little bit
 9    unusual, and just try to protect the defendants from
10    having it blurted out at trial.  I think we're going
11    to have to make some calls as we go.
12              I don't know.  How do you feel,
13    Mr. Castellano?  Is this something that you're going
14    to do sooner rather than later?
15              MR. CASTELLANO:  It's something I'd rather
16    do later.  Because, obviously, we'll be doing this
17    potentially for five defendants, depending upon how
18    the Court rules, in addition to everything else we'll
19    be doing as we march towards trial.  I'll certainly
20    try not to spring this on them last second, so
21    they're scrambling.
22              THE COURT:  If you were to propose a
23    deadline, what would it be?
24              MR. CASTELLANO:  Let me check the calendar,
25    Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5146

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5147

```
 1              THE COURT:  January 2, 8, 15, 22, 29 are
 2      our Mondays.
 3              MR. CASTELLANO:  How about the 22nd, a week
 4      before trial?
 5              THE COURT:  Okay.  And then, Mr. Jewkes,
 6      you're experienced, you can look at it and see if
 7      there are some there that you really want to fight.
 8      And if there are, I'll put the burden on you to send
 9      me a letter or something, and then I'll look at it.
10      I'll just have to make balls and strikes on it and
11      say whether it's relevant or not.  Because I think
12      that's the standard at this point, is whether it has
13      any tendency to make what the Government is trying to
14      prove more likely than not.
15              MR. JEWKES:  Very well, Your Honor.
16              THE COURT:  Anything else on your motion?
17              MR. JEWKES:  No, sir.
18              THE COURT:  All right.  Anything else you
19      want to say?  I kind of chopped it up, Mr.
20      Castellano.
21              MR. CASTELLANO:  No, Your Honor.
22              THE COURT:  All right.  Anybody else want
23      to comment on this:  I've probably got some more of
24      these coming up, so if anybody wants to comment on
25      what we're doing because, once you do one of these,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5147

```
 1   you fall into a pattern.

 2           Ms. Duncan?

 3           MS. DUNCAN:  Your Honor, I'll address the

 4   individual issues as to Mr. Baca in a moment.  But

 5   the January 22 deadline, that just feels to me way

 6   too close to trial.  I know from my letter, I've got

 7   four whole pages of proposed bad acts against Mr.

 8   Baca.  And I'm going to be prepping for actual trial

 9   instead of having to brief all this in that week,

10   that already very busy week.

11           THE COURT:  Don't feel like you have to

12   brief it.  I mean, really, just give me the basic

13   documents, and tell me this is one of the ones you're

14   objecting on.  Because, you know, the way I'm

15   envisioning this, I'm going to make calls, like I

16   would if they were just doing in this trial, you

17   know.  So you make them the best you can.  And

18   remember, the standard is extremely low.  And it is

19   not a Daubert hearing, it's not a James hearing.

20   This is a relevancy hearing.  And so they don't have

21   to have much.

22           MS. DUNCAN:  And I appreciate that.  I

23   just -- I guess for my client, the 404(b) notice the

24   Government gave us, the first one, is alleged to have

25   happened in August of 1982.  And the last one is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5148

1   alleged to have happened in November 30 of 2015.  And

2   you know, we're not objecting.  We acknowledge that

3   some of these alleged bad acts are part of the

4   enterprise evidence.  But there is others -- for

5   example, the 1982 stuff that's just totally

6   irrelevant.

7            THE COURT:  Let's see what Mr. Castellano

8   says in a moment about Baca.  If he takes the same

9   position that none of it is 404(b) evidence, he's not

10  going to use 404(b), we can put that aside, and that

11  may give you some comfort.

12           MS. DUNCAN:  It may give me some I think.

13  And I agree I could just argue on the points.  But

14  the evidence they're proposing to use, whether it's

15  404(b), or alleged enterprise evidence, is highly

16  prejudicial against my client.

17           THE COURT:  Let's see what he says.  He may

18  get up and say he's not going to try to bring any of

19  it under 404(b).  Remember, this device got done to

20  make sure that the defendants got to object to 404(b)

21  evidence.  It's working.  That's all I'm saying.

22  It's working.  It's not fun.  But it's working.  So.

23           MS. DUNCAN:  Thank you, Your Honor.

24           THE COURT:  Hold on.  I'm not cutting you

25  off.  But I'm thinking anybody wants to say anything

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5149

229

```
 1    sort of about what they just saw with the Government
 2    and Mr. Sanchez?
 3            Were you up, Ms. Sirignano?
 4            MS. SIRIGNANO:  If we're going to do this
 5    for each defendant --
 6            THE COURT:  I am.  But if you've got
 7    something on what you just saw, go ahead and tell me.
 8            MS. SIRIGNANO:  Well, my objection would be
 9    evidentiary in nature, and tying it into the
10    enterprise.  I talked with the Government before our
11    break, and was told that it's going to be all
12    enterprise evidence instead of 404(b) evidence.  But
13    I don't know how all this is going to come in, either
14    through co-conspirator statements, or with prior
15    convictions.  They're not related to the alleged SNM
16    enterprise.  And while I do agree that some may be
17    alleged to -- or some of them may be enterprise
18    evidence, I can't concede that all 40 of them, four
19    pages' worth, starting from 1995, going all the way
20    through --
21            THE COURT:  All right.  Let's hold those
22    thoughts, because I think those are specific to
23    Mr. Garcia.  So let's hold those.
24            MS. SIRIGNANO:  Thank you, Judge.
25            THE COURT:  Anything else then?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 230

230

```
 1          All right.  So that's how we'll deal with
 2   Mr. Sanchez' motion in limine on the bad acts.
 3          So the next one I had up was for
 4   Christopher Chavez.  So I'll think we'll put it
 5   aside.  Are you in agreement on that?
 6          MR. MONDRAGON:  Yes, Your Honor.
 7          THE COURT:  We'll put it aside.
 8          I'm putting Mr. Patterson's aside.  So
 9   we'll take it up the second trial.
10          All right.  Ms. Duncan, why don't we take
11   up your motion.  Did you have a chance to talk to Mr.
12   Castellano about your motion, what positions he's
13   going to take?  Or do you want to let him talk a
14   little bit to see if we can -- I'm not seeing Mr.
15   Baca's motion.  I know I read it.
16          MS. DUNCAN:  Your Honor, I haven't had an
17   opportunity to speak with Mr. Castellano.  So I'm
18   hoping he can put his position on the record.
19          THE COURT:  Okay.  Let me see if I can find
20   it first, here.
21          All right.  Mr. Castellano, on Document
22   1538, any preliminary remarks that you want to make?
23   I guess the first question is, is there anything on
24   your letter here, this attachment, that is going to
25   be 404(b) evidence?  Or are you going to do like you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5151

1    did with Mr. Sanchez, and say, No, I'll not try to

2    get it in as 404(b).  We're just going to try to get

3    it in as enterprise or in furtherance of the

4    enterprise?

5            MR. CASTELLANO:  Yes, Your Honor, I think

6    we are probably looking at enterprise evidence once

7    again.  And I'm looking through the notes --

8            THE COURT:  Can I and Ms. Duncan take

9    404(b) then off the table?  None of this, the

10   Government will try to get in as 404(b) evidence?

11           MR. CASTELLANO:  I think that's correct.

12   If I come across something that I think is otherwise,

13   Your Honor, I'll indicate that.

14           THE COURT:  Okay.  All right.  So do you

15   have -- did you do something similar for Mr. Baca

16   that you did for Mr. Sanchez on overt acts?

17           MR. CASTELLANO:  Agent Acee is working on

18   that right now, Your Honor.  But I can do some

19   talking, I think, in the interim.  Because, if you

20   recall from the James hearing, and I'll just put this

21   up here to refresh the Court's recollection, we went

22   through a number of statements from this kind of

23   summary chart, a report by the FBI.  The one I'm

24   showing on the screen is DeLeon 3304.  In one of

25   these, I believe that Mr. Baca talks about having

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    killed another inmate over a drug dispute.  I'm just
 2    looking for that as I'm talking.
 3            THE COURT:  Somebody is on the phone
 4    dialing, and we can hear everything.  So those people
 5    on the phone, be real careful about dialing.  We're
 6    hearing the dialing in the courtroom and hearing
 7    other things.
 8            MR. CASTELLANO:  I can't find it right now,
 9    Your Honor.  If I come across it, I'll highlight it
10    for the Court.  It is related to the acts here.
11            Your Honor, I'm putting on the screen a
12    letter sent by the Government to the defense
13    regarding the prior acts.  And I'll go over the easy
14    part first, which is the items that are contained as
15    overt acts in the letter.
16            THE COURT:  All right.  Have you done this
17    for every page, or is Mr. Acee still doing that?
18            MR. CASTELLANO:  He has them all done, with
19    the exception of, I think, just the last couple.  I
20    just grabbed it from him, since I knew we were moving
21    forward.
22            THE COURT:  Why don't you put the second
23    page up and let me get the overt acts down.
24            MR. CASTELLANO:  I'm showing the Court the
25    second page, and I'll move it whenever the Court is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    ready.

2              THE COURT:  All right.  Do you want to go

3    to the next page, page 3?

4              All right.  Do you want go to page 4?

5    Okay.

6              MR. CASTELLANO:  What I'll do is I'll

7    reference the indictment, and see if I can find those

8    final acts.  It looks like the November 29 date is

9    Overt Act 246 in the RICO indictment.  And those are

10   related to Gregg Marcantel, so that's actually

11   charged conduct in this case.

12             THE COURT:  So that's res gestae, or it's

13   charged conduct?

14             MR. CASTELLANO:  It is, Your Honor.  That's

15   Overt Acts 246 and 247 from the RICO indictment.  So

16   those are the acts we have to prove as charged.

17             THE COURT:  Does that apply also to the one

18   for November 30?

19             MR. CASTELLANO:  Yes, I think that might be

20   Overt Act 247.  I'll double-check.  Yes, November 30

21   is Overt Act 247.

22             THE COURT:  All right.  Now, if I were to

23   ask you the same questions about how you're going to

24   prove these that I asked you in regard to Mr.

25   Sanchez, would your answers be any different?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5154

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 234

1          MR. CASTELLANO:  No, it would be the same,

2     Your Honor.  What I don't recall here, going back to

3     the items that are not covered by overt acts, is when

4     Mr. Baca became a member of the SNM.  So I'd have to

5     go back and check the 1982 to 1988 acts.  As I stated

6     earlier, we'll have testimony from some cooperators

7     who will say that they were known by reputation when

8     they reached prison, because they were willing to

9     beat people down, and they were known for that type

10    of activity, so that was used as a recruiting tool.

11         What I can't tell the Court right now is

12    anything about the first five items on that page,

13    without looking at the supporting documents.

14         THE COURT:  All right.  And would you be

15    agreeable, on the same schedule and timeline, provide

16    the same information as to Ms. Duncan, Mr. Lowry,

17    that you're going to provide to Mr. Sanchez, when you

18    get ready for trial and start determining what overt

19    acts you're going to produce?

20         MR. CASTELLANO:  Yes, Your Honor.  I'm

21    trying to think of -- well, some of these will be

22    pretty clear.  So I can give them a heads-up

23    beforehand on some of these.  Like I said, some of

24    this is actually charged conduct, then I'll let them

25    know that ahead of time.  They should know that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5155

```
 1    that's actually part of the crimes charged.
 2              THE COURT:  And really I'm doing this as
 3    much for myself as them, just so that when I make a
 4    ruling, that the bad act is coming in to show
 5    enterprise, the furtherance of it, that I feel like
 6    I'm making an informed decision.  So that's kind of
 7    what I'm trying to do is make sure that I'm getting
 8    an informed objection, and then making an informed
 9    ruling.
10              All right.  Anything else, as the proponent
11    of the evidence, you want to say to the Court, Mr.
12    Castellano?
13              MR. CASTELLANO:  No, Your Honor.
14              THE COURT:  All right.  Ms. Duncan, I guess
15    what I would be inclined to do, based upon the record
16    and the representations of the Government, is not
17    allow the first five at the present time, because I
18    don't see sufficient evidence for those coming in.
19    Those seem to me to be resumes or pedigrees that he
20    may have established certain characteristics that
21    would be attractive to the SNM Gang.  But they were
22    not yet -- they're not evidence of an enterprise, and
23    they're not yet evidence that he was doing them in
24    furtherance of the enterprise.  The others, based
25    upon the representations of the Government, and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5156

1    fact that they're pled as overt acts, gives me some

2    comfort that the Government has some evidence that's

3    relevant, and probably would allow the Government to

4    introduce that evidence.

5            MS. DUNCAN:  Your Honor, I certainly agree

6    with you about the first five.  So all of those

7    offenses, convictions that Mr. Baca has occurred

8    before the Government even alleges he was a member of

9    SNM.  Obviously, we contest the Government's

10   representations about his membership in the SNM.

11   Well, we contest really everything in here.  But

12   those five clearly are well before the enterprise.

13           For the things after, you know, I have

14   looked at some of the evidence.  Some of this are

15   Department of Corrections reports summarizing

16   statements by -- multiple levels of hearsay, so I

17   think the Government is going to have a major proof

18   problem at trial.  There are others that summarize

19   conversations Mr. Baca had with informants.  And the

20   Government is attributing to Mr. Baca statements that

21   the informants made.  There are other acts in here

22   that aren't acts by Mr. Baca at all.  For example,

23   I'm assuming Mr. Garcia is going to want speak to

24   this motion, because there are at least three overt

25   acts that are really about Mr. Garcia and not Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5157

```
 1   Baca.
 2             The other thing that's confusing to me
 3   about the Government's notice is really starting
 4   about on page 2, to the end.  These are all
 5   predicated on conversations that Mr. Baca had with
 6   Eric Duran.  And they're pleading the bad acts, or
 7   how they want to plead the conspiracy, or the
 8   enterprise as things that Mr. Baca said.  So it's not
 9   really the act itself.  It's, rather, we're going to
10   bring in evidence that Mr. Baca said that.
11             So it's a little bit --
12             THE COURT:  Give me an example.
13             MS. DUNCAN:  So if you look on page 3, for
14   example, it's "On or about October 24, 2015, Anthony
15   Ray Baca stated that he was brought into the gang
16   after he assaulted another inmate on orders from SNM
17   member, Diaz, Sr."
18             THE COURT:  Which paragraph is that?
19             MS. DUNCAN:  I'm sorry, Your Honor.  It's
20   the very first one.
21             THE COURT:  First one.  Well, I guess, you
22   know -- okay, well, if that's the evidence, if he's
23   taking orders from the SNM -- an SNM member of the
24   gang, then I think that is some evidence that he was
25   doing it for the SNM Gang.  People don't usually take
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5158

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

1    orders from somebody unless they're wanting something

2    in return.  So I think it would be some evidence.

3          MS. DUNCAN:  Sure, Your Honor.  And I agree

4    that with some of these allegations, the Government

5    can prove them up, they would come in as enterprise

6    evidence.  And once we know for sure what the

7    Government intends to introduce, we will be filing

8    something to show that the evidence doesn't prove

9    what they say it does.

10          I am given comfort by the Court's ruling

11   that it's going to exclude the first five in the

12   Government's notice, because it's a different

13   character.

14          THE COURT:  If Mr. Castellano goes back and

15   he thinks he can prove them up, he'll let you know.

16   But right at the moment, they're not 404(b), so --

17   and I'm not hearing anything that says to me that

18   they're enterprise, or furtherance of the enterprise.

19   If he finds something, he can come back and tell you

20   and me, but --

21          MS. DUNCAN:  And I think with the remaining

22   overt acts -- I mean, again, I appreciate Mr.

23   Castellano's representation that he'll let us know

24   sooner than January 22, if they're intending to

25   introduce evidence of one, so that we can prepare.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5159

```
 1    But I would still ask the Court to move that deadline

 2    up a little bit, because it will affect how we

 3    present our defense at trial.  So the more time that

 4    we have to respond and educate the Court, I think the

 5    more reliable the ruling will be.  But it's the best

 6    way to protect Mr. Baca's constitutional rights,

 7    because a lot of this evidence is very prejudicial

 8    and somewhat tangential.

 9              THE COURT:  Well, and that's the reason I'm

10    trying to get some information.  I'm not inclined to

11    move it up, because I think anything we're getting,

12    you and I, is a gift.  It helps me make a more

13    informed decision, and it helps you to formulate an

14    objection.  But this is the kind of stuff that, in

15    many trials, you'd just be making like that (snaps

16    fingers.)  So I think we better take the gift we got.

17              Anything else, Ms. Duncan?

18              MS. DUNCAN:  I have nothing else, Your

19    Honor.

20              THE COURT:  All right.  Anybody else want

21    to say anything on Mr. Baca's motion in limine to

22    exclude evidence of bad acts turning into enterprise

23    and furtherance of enterprise?  Did you have

24    something, Mr. Benjamin?

25              MR. BENJAMIN:  No, Your Honor.  I was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 161

1    trying to figure out --

2           THE COURT:  Anybody else?  Any other

3    defendants?

4           Mr. Castellano?

5           MR. CASTELLANO:  Your Honor, I was just

6    trying to match up so the Court has an idea what

7    we're talking about, beginning with the October 24,

8    2015 statement, attributed to Mr. Baca -- I can't

9    read the Bates stamp number, probably 3300 -- this is

10   where it says, "'Pup' explains where he got brought

11   in at the Main, after he piped a guy from Colorado."

12   So this is talking about, I believe, the statement

13   referenced in October 24.  So it should be recording

14   rather than just words of Eric Duran.  So that should

15   be included.

16          THE COURT:  Which paragraph are you looking

17   at, Mr. Castellano?

18          MR. CASTELLANO:  Ms. Duncan referred to the

19   top of page 3.

20          THE COURT:  Yes.

21          MR. CASTELLANO:  October 24, 2015.

22          THE COURT:  Okay.  All right.

23          MR. CASTELLANO:  Talks about how he was

24   brought in.

25          THE COURT:  Okay.  This is the assault.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5161

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241 of 162

```
 1    And what, then -- what's the evidence show?
 2              MR. CASTELLANO:  The summary is that Mr.
 3    Baca explained where he got brought in at the Main
 4    after he quote/unquote "piped a guy from Colorado."
 5    So that would be the assault he admits to having
 6    committed, so he could be brought into the SNM Gang.
 7              THE COURT:  And what are we looking at
 8    here?  What is this evidence?
 9              MR. CASTELLANO:  These are the summaries we
10    used one or two weeks ago, when we were introducing
11    the James statements.
12              THE COURT:  There is some document behind
13    this or some evidence behind this?
14              MR. CASTELLANO:  Yes.  These are summaries
15    of recordings, and most of these should have
16    transcripts.  That's just one of the examples.
17              THE COURT:  So this one here is Mr. Baca
18    talking to himself?
19              MR. CASTELLANO:  That's correct.
20              THE COURT:  Anything else, Ms. Duncan?
21              MS. DUNCAN:  No, Your Honor.  I mean, we'll
22    obviously argue about evidentiary basis for this at a
23    later time.
24              THE COURT:  You don't have to.
25              MS. DUNCAN:  I'm going to, though, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5162

1   Honor.

2          THE COURT:  All right.  So let's move to --
3   I want to stay with Mr. Baca for a while.  He's got a
4   series of motions here.  And while we're on him, I
5   want to make sure I understand the difference between
6   what we're doing here and what we're doing in these
7   other motions.  So let's pick up 1539, which is Mr.
8   Baca's motion in limine to prohibit Government
9   attorneys from using Rule 405, 608, and 609 character
10  evidence without judicial approval.

11         Talk to me about this one.  Is this yours,
12  Mr. Lowry?

13         MR. LOWRY:  It is, Your Honor.  Actually,
14  what we were really seeking here -- I think we filed
15  separate 404(b) motion notices, and I think we heard
16  there will be none.  But if you do intend to use any
17  404(b) evidence in the case --

18         THE COURT:  I think that the 404(b) issue
19  is now over for this, at least for Mr. Sanchez and
20  Mr. Baca.  There is not going to be any 404(b)
21  evidence.  If it's going to come in, it's going to
22  have to come in for the relevancy to the enterprise
23  and the furtherance of the enterprise's activities.
24  But it doesn't sound like the Government is going to
25  try to do 404(b) with your client or Mr. Sanchez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5163

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 243

1          MR. LOWRY:  That's correct, Your Honor.  I
2     think that's correct.
3          THE COURT:  Okay.  So then what does this
4     motion do that we haven't done?
5          MR. LOWRY:  The only thing it would do is
6     if the defense called character witnesses.
7          THE COURT:  Help me think what that would
8     look like.  Somebody coming in saying what?
9          MR. LOWRY:  It could be --
10         THE COURT:  Until Mr. Baca, if and when he
11    takes the stand, is he putting his character in
12    evidence in a way that would allow the Government --
13         MR. LOWRY:  Not Mr. Baca.  We could call
14    character witnesses to impeach the  Government's --
15         THE COURT:  You could.  But until your
16    case, character is not going to be in evidence --
17         MR. LOWRY:  Correct.
18         THE COURT:  -- or at play.  So what are you
19    fearful of in the case-in-chief?
20         MR. LOWRY:  Just actually the use of
21    hypotheticals, like if we put on a witness, for
22    instance, for truthfulness, for instance; the
23    Government might be used -- the case facts and a
24    hypotheticals to challenge their basis of belief that
25    this person was truthful, if you knew this person was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 244

```
1    involved in a hypothetical homicide or stabbing or
2    this, that, or the other thing.  And really, it's
3    just to prevent that type of hypothetical fact
4    pattern from being so close to the facts of this
5    case.  It just brings in -- it's just too close to
6    the quick, if you will, Your Honor.  If they could
7    challenge a witness' foundation for their testimony
8    without referring to the facts of this case.
9            And there is Tenth Circuit case -- and
10   frankly, circuit case law across the country,
11   typically comes up in death penalty cases and other
12   things where you're presenting evidence, you know, to
13   offset your client's -- you know, it could be
14   propensity for violence; it could be the propensity
15   to be dishonest.  It could be anything.  And the
16   Government would come up and say, Well, would your
17   opinion change, if you knew X, Y, and Z?  And X, Y,
18   and Z happens to be the material facts relevant to
19   the case that the jury is hearing.
20           And, really, that was with regard to 608.
21   Just to prevent those types of hypothetical
22   questions.  With that having been said, Your Honor, I
23   think we're in agreement.
24           THE COURT:  Let me see if I can break this
25   down.  The reputation stuff, I'm not sure I see
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245166

1    anything on the list.  Maybe I'm wrong.  Maybe Mr.

2    Castellano wants to argue at this point.  But I'm not

3    seeing anything on that that would necessarily go to

4    reputation for truthfulness or for character for

5    truthfulness.  So if you brought in a witness going

6    to testify for truthfulness, and the only reason you

7    do that is Mr. Baca is on the stand, right, has been

8    on the stand, or will be taking the stand?

9             MR. LOWRY:  Right.

10            THE COURT:  So that -- and maybe Mr.

11   Castellano could look through that list and see if

12   there is anything he would want to say:  And did you

13   know that he did such-and-such, and that would go to

14   truthfulness.

15            MR. LOWRY:  Correct.

16            THE COURT:  Assuming he doesn't identify

17   anybody there, I guess I'm not quite seeing the

18   issue.

19            Now, let's switch over to the character.

20   If you decide to put Mr. Baca's character in

21   evidence, then it would seem to me -- and correct me

22   if I'm wrong -- let's say it's his reputation, or

23   somebody's opinion for his peaceful character --

24            MR. LOWRY:  Right.

25            THE COURT:  -- it would seem to me, then,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 5166

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 246167

1  the Government would be able to ask that witness

2  about all the violent bad acts that they've listed on

3  their notice.  Do you disagree with that analysis?

4           MR. LOWRY:  Well, I do, Your Honor.  And

5  that's what -- I'm looking at the United States v. --

6  I'm going to botch that name -- Polsinelli -- 649

7  F.2d 793.  It's a Tenth Circuit opinion from 1981.

8  And we've quoted it in our brief.  And actually, the

9  Tenth Circuit reversed a conviction based on the use

10  of those types of hypotheticals.

11           THE COURT:  Well, isn't what happened in

12  that case -- and tell me this -- is if he -- if you

13  put on a witness that says, you know, I've never

14  known the defendant -- I guess his name was

15  Polsinelli -- to have any involvement in drugs.  And

16  the Government lawyer then asks that witness, Well,

17  you know, if you knew that he distributed drugs in

18  this case, this distribution of drugs, would that

19  change your opinion any?  Or did you know about him

20  distributing drugs here?  That would be -- that would

21  not be a proper question.  But if he had prior

22  convictions, or if there were prior times that there

23  was evidence that he had distributed drugs or used

24  drugs, or something like that, that would be fair

25  game, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5167

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5168

```
 1              MR. LOWRY:  Well, that's an interesting
 2   question, given the way the case is indicted, because
 3   with the racketeering and the VICAR counts, and the
 4   proof of the enterprise, I mean, I think that all of
 5   those acts are part of this case.  So it really
 6   becomes hard to separate the past from the present,
 7   if you will, under the hypothetical you just gave.
 8   You could say, We're going to look back to your past
 9   and use that to raise the hypothetical.  But it's all
10   sort of in the same basket, if you will.
11              THE COURT:  Well, I guess I would think
12   this would be my call, and maybe I need to be
13   educated on Polsinelli, and you can educate me a
14   little bit more.  It would be improper, I think, for
15   Mr. Castellano to ask one of your witnesses:  Well,
16   but if you knew Mr. Baca tried to knock off the
17   Corrections Secretary, that would not be a proper
18   question of your character witness.
19              On the other hand, if he were to ask the
20   character witness an overt act, even though it's
21   going to have to be -- it is going to be proved up
22   here, if he were to ask a character witness for --
23   let's just take Overt Act No. 6, "That on June 22,
24   Mr. Baca and another SNM Gang member murdered another
25   inmate," it seems to me that would be proper.  Why
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5169

1    don't you think about that.  If you don't have a real

2    clear answer, maybe think about that, and send me a

3    letter on it.

4              MR. LOWRY:  I will.

5              THE COURT:  I'd be inclined to think that

6    the Marcantel would be off limits, but other overt

7    acts would be okay.

8              MR. LOWRY:  If the Court would indulge me,

9    I'll go back and take a look at it.

10             THE COURT:  Yeah, think about it.

11             MR. LOWRY:  I understand where you're

12   drawing the distinction.

13             THE COURT:  Otherwise, it would seem to me

14   that you're basically going to denude the United

15   States of any cross-examination of one of your

16   character witnesses.  I don't know how they would

17   examine him.  Do you?

18             MR. LOWRY:  Well, I think if they're going

19   to ask a hypothetical, they could ask it without any

20   reference to any specific allegation, as you pointed

21   out, without going into the precise specificity, if

22   you will.

23             THE COURT:  Well, they don't have to ask

24   hypothetical questions.  This is not an expert.  They

25   can actually say:  Did you know that -- you offered

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5169

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 249170

```
 1    an opinion here of your -- of Mr. Baca being

 2    peaceful, but did you know that, on June 22, 1989, he

 3    and another gang member murdered somebody?  Did you

 4    know that in forming your opinion -- or well, your

 5    opinion?

 6            MR. LOWRY:  And I think if there was the

 7    equivalent of a judicial finding or a court finding

 8    or a plea agreement, I wouldn't disagree with you.

 9    But I think a lot of these overt acts, they're based

10    on a subjective analysis that didn't lend itself to

11    that kind of finality, in terms of a determination of

12    whether that specific instance of conduct could be

13    attributed to Mr. Baca or not.

14            So that would be a problem for me in the

15    analysis, in looking to give the Government carte

16    blanche to go --

17            THE COURT:  Think about it and look at it.

18    Because it would seem to me that the Government

19    doesn't have to prove, for a character witness, the

20    cross-examination, they don't have to prove anything

21    beyond a reasonable doubt or even by a probable

22    cause.  They simply have to have a good faith basis

23    for the question.

24            MR. LOWRY:  Right.  And maybe we could be

25    very close to agreement, but just not there.  Because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5170

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

250

1    what I'm thinking in my mind is you could back off a

2    little bit, and not be date specific, time specific.

3    If he was involved with this type of event, an

4    assault, if you will, would that change your mind.

5    Not was he involved.

6              THE COURT:  That's the whole fun of a

7    character witness is throwing out those 10 bad acts.

8    Take all the fun out of the cross-examination.

9              MR. LOWRY:  That would be our position,

10   Your Honor.  I'll go back and look at it.

11             THE COURT:  Take a look at it.  I'll be

12   ready.  Because it's not going to come up until your

13   case anyway.  Give that some thought.  That's where

14   I'd be inclined to draw the line, that they can't --

15   for example, ask about --

16             MR. LOWRY:  Marcantel, Molina, or Rubio.

17             THE COURT:  Yeah, probably so.  But the

18   other overt acts, they might be able to do.

19             MR. LOWRY:  Okay.

20             THE COURT:  What else on your motion do you

21   have?  What else --

22             MR. LOWRY:  That's it, Your Honor.  I think

23   we're in agreement.

24             THE COURT:  So we'll talk about

25   cross-examination of character witnesses, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5171

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 251

```
 1              MR. LOWRY:  Correct.
 2              THE COURT:  Can you think of anything on
 3     reputation for truthfulness, any limitations upon it,
 4     other than it has to be going to truthfulness?
 5              MR. LOWRY:  No, I don't, Your Honor.
 6              THE COURT:  All right.
 7              MR. LOWRY:  On 609, I think the Government
 8     filed a motion.  But I think we're in agreement on
 9     this one.  They didn't oppose with regard to 609.
10     But I think that will be a separate motion that the
11     Government has.
12              THE COURT:  Let's see, my memory on the
13     Government's response on the 609, that convictions
14     outside of 10 years, you're not going to use.  But
15     you do intend to use convictions within 10 years;
16     correct?  Is that what you responded, Mr. Castellano?
17              MR. CASTELLANO:  I don't recall.  That
18     sounds about right, Your Honor.  And I guess the
19     question we'll have to think about is what starts the
20     clock for the 10 years.  Some of these -- some of the
21     folks are still in prison on some of those charges,
22     even though they may be older.  So I think we'll be
23     well within that time period.
24              THE COURT:  Okay.  All right.  Well, you
25     probably know Mr. Baca's criminal history.  And so,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5172

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 252

```
 1    if there is some that you want to quibble with, you
 2    might try to bring those to my attention earlier
 3    rather than later, if he's going to take the stand.
 4              MR. LOWRY:  Thank you, Your Honor.
 5              THE COURT:  Obviously, if he doesn't take
 6    the stand, we don't have to worry about it.
 7              MR. LOWRY:  I don't think it's an issue.
 8    Thank you, Your Honor.
 9              THE COURT:  Mr. Castellano, anything else
10    on this motion?  I mean, I've been trying to argue
11    your point.  But I mean, do you read the rule on
12    cross-examination of a character witness the way I
13    do?
14              MR. CASTELLANO:  Your Honor, I think you've
15    been doing a great job.  I don't have anything to add
16    to your arguments.
17              THE COURT:  Am I reading this Polsinelli
18    case correctly, or -- it sounds to me like it was a
19    much simpler case, because it looked like a drug
20    distribution case rather than a case that had overt
21    acts pled.
22              MR. CASTELLANO:  I think you get down to
23    the:  Are you aware, or did you know types of
24    questions for those character witnesses, if they come
25    up.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5173

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253174

 1          THE COURT:  Well, I'll tell both of you,
 2   y'all might just do a little Westlaw search, and see
 3   if anybody has had cross-examination of character
 4   witnesses in an a overt act case, and where the court
 5   has cut it off and where they allow it.
 6          I find particularly persuasive, when I'm
 7   ruling on evidence questions, is Saltzburg.  So if
 8   you glance at Saltzburg -- and since he was both a
 9   prosecutor and a criminal defense lawyer, he's got a
10   good real world feel for evidentiary issues.  And
11   since he is a friend, and my former evidence
12   professor, I find him extremely persuasive.  He will
13   sit on my bench up here as we go through trial.  So
14   you might take a look and see if he tells us anything
15   on that issue.
16          Anything else on that, Mr. Lowry, on that
17   motion?
18          MR. LOWRY:  No, Your Honor.
19          THE COURT:  Did anybody else have any
20   comment on this issue, these evidentiary issues?
21   Because they may spill over into your cases as well.
22          All right.  So I'm going to put that aside.
23          I think Mr. Baca had one more, Your Honor.
24          MR. LOWRY:  He did, Your Honor.  It's 1540.
25   It's the motion in limine to prohibit the Government

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5174

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254

1    from questioning Jerry Armenta about Mr. Baca's

2    involvement in Counts 6 and 7, which is the Molina

3    murder.

4            THE COURT:  All right.  Tell me -- refresh

5    my memory as to what Mr. Armenta would say and how he

6    would know what he's saying?

7            MR. LOWRY:  Well, that's an interesting

8    issue, Your Honor.

9            Mr. Armenta was videotaped in, I think it's

10   mid October of 2015, in the State case.  And during

11   that videotaped interview, he walks the State

12   investigators through the Molina event.  And at no

13   time did he mention Mr. Baca at all, until he had

14   gone through it.  And then he was asked a pointed

15   question by the folks that were talking to him, if

16   Mr. Baca had anything to do with this at all.

17           And his answer was interesting.  But more

18   to the point, he said, "I didn't know anything about

19   that rumor" -- he describes it as a rumor that was

20   going in the pod -- until after the event altogether.

21   And so it couldn't be in furtherance of any kind of

22   conspiracy because he had no prior knowledge

23   whatsoever.  He talks about what he had heard from

24   other people in the pod later, after the fact.

25           And so we'd ask just that that portion of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255

1  the video, if the Government is going to use it, and

2  then Mr. Armenta's testimony to the extent the

3  Government is going to rely on it, not go into

4  anything he learned after the fact, from the rumor

5  mill, that was taking place down in Southern at the

6  time.

7         We've heard ample testimony -- there is all

8  kinds of reasons why people might want to deflect

9  responsibility for that event away from themselves

10  and onto my client.  But, in any event, it's not in

11  furtherance of any kind of conspiracy.  It's an

12  after-the-fact comment, one that wasn't based on any

13  kind of firsthand knowledge whatsoever.

14         THE COURT:  Okay.  Thank you, Mr. Lowry.

15         Any other defendant want to talk about this

16  motion by Mr. Baca?

17         Mr. Castellano, are you going to handle

18  this one?

19         MR. CASTELLANO:  Yes, Your Honor.  I

20  think -- I haven't looked at Mr. Armenta's more

21  recent statements lately.  And I think we'll have to

22  delve into the basis of his knowledge.  If it's just

23  rumors from uninvolved people, that's one thing.  But

24  if it's a rumor from somebody who is involved with

25  the conspiracy, then that would be a statement that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5176

```
 1    falls under the Smalls case, because it would be a
 2    statement against interest, where somebody tells Mr.
 3    Armenta how he got involved in the case, or how Mr.
 4    Baca was involved with the case.
 5            So I think it's something we actually have
 6    to drill down a little bit more into to get to the
 7    bottom of.
 8            THE COURT:  Do you agree with what Mr.
 9    Lowry said about -- did he describe accurately what's
10    on the video?
11            MR. CASTELLANO:  I haven't seen the video
12    in a while, Your Honor.  I forget.  What he said
13    sounds familiar.  I just don't recall the specifics.
14            THE COURT:  I guess my reaction -- and tell
15    me if it's wrong -- is that, if that is a description
16    of the video, that's not going to be enough to
17    probably come in.  And that part of the video might
18    not be, and should not be admissible.  But if you get
19    Mr. Armenta on the stand, and then we just have to
20    listen to what his firsthand knowledge is, you'd have
21    to lay some foundation about Mr. Baca's involvement
22    before Mr. Armenta testified.
23            Your thoughts?
24            MR. CASTELLANO:  I agree, that's the
25    correct approach, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5177

```
 1              THE COURT:  All right.  Anything else you
 2    want to say on this motion then?
 3              MR. CASTELLANO:  No, sir.
 4              THE COURT:  All right.  Anybody else want
 5    to comment on Mr. Armenta's tape or the taped
 6    interview in the state trial, or what he might say on
 7    the stand?
 8              All right.  Does it sound like that's a
 9    pretty good dividing line, Mr. Lowry?
10              MR. LOWRY:  Well, Your Honor, you know, I
11    know that the United States is very fond of the
12    Smalls opinion.  But I think they represented that
13    right; the opinion is based not on a co-conspirator
14    hearsay analysis.  The Smalls case really is a
15    statement against penal interests.  And in that case,
16    the two defendants were talking about their direct
17    involvement in a homicide.  And even -- I think as
18    Glendell Cook (phonetic) was talking about the
19    defendants' participation, as they participated
20    together, in real-time, with the strangulation of
21    another inmate.  And I think that's just a far cry --
22              THE COURT:  I guess what it would do is --
23    let's say I'm analyzing the tape, right; put the tape
24    aside --
25              MR. LOWRY:  Right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258

```
 1              THE COURT:  If we get Mr. Armenta on the
 2    stand, and he can testify about where he heard the
 3    statement that Mr. Baca was involved.  So that we
 4    have somebody that's part of the conspiracy, and then
 5    he was able to testify.  We come in a co-conspirator,
 6    and what Smalls does is it solves the Bruton problem
 7    for that statement, right?
 8              MR. LOWRY:  Yes.
 9              THE COURT:  That's all it solves.  It
10    doesn't help us at all with the admissibility under
11    the hearsay rules.  It only satisfies the
12    confrontation issue or the due process issue?
13              MR. LOWRY:  I don't disagree with that,
14    Your Honor.  But here's where I have a real problem
15    with this hypothetical issue of what Mr. Armenta
16    might say when he's in the witness box.  We already
17    know what he's going to say, because he said it in a
18    videotaped interview.
19              THE COURT:  It's your description of that,
20    I think, that Mr. Castellano and I agree that would
21    not come in.  If he can't do any better than that on
22    the stand, then that wouldn't come in.
23              MR. LOWRY:  Correct.  I would just say, if
24    he said anything contrary to what he said in the
25    videotape about something he mysteriously heard a day
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5179

```
 1   beforehand, while he's in the witness box --

 2            THE COURT:  What do I do about that,

 3   though?  That's not an evidentiary problem.  It's

 4   just you -- just got to impeach him, right?  And

 5   that's tricky.

 6            MR. LOWRY:  Well, I have to impeach him.

 7   My colleagues have a duty of correcting any --

 8            THE COURT:  Was the statement under oath?

 9            MR. LOWRY:  -- false testimony.

10            No, it wasn't, Your Honor.  But I don't

11   think -- he's given a number of statements.  He's

12   never indicated that he had prior knowledge.  I would

13   be highly suspicious, to the point of incredulous, if

14   he testified to that effect at this point.

15            THE COURT:  Well, you wouldn't be too

16   surprised, or you wouldn't try keep it out.

17            MR. LOWRY:  I want to vitiate the problem.

18            THE COURT:  You're prewarning me you're

19   going to be surprised, right?

20            MR. LOWRY:  Exactly.  I'd be floored.  You

21   might see me pass out.

22            THE COURT:  I remember those days.  Wasn't

23   it New York you always had to feign surprise to get

24   in rebuttal evidence?

25            All right.  So based upon the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261181

1  representations of the video, I'll keep it out.  If

2  Mr. Armenta doesn't have anything more than what he's

3  saying in the video, then keep it out, too.  If Mr.

4  Castellano looks at the video, and it's more, then I

5  may have to revisit the issue.  But that will give

6  you some guidance in getting ready for trial.

7          And then, if Mr. Armenta, all of a sudden,

8  remembers a lot more evidence of Mr. Baca's

9  involvement in the murder, then we'll have to deal

10  with that at the time.  If we're at that point, if we

11  can figure out a way to -- tip me off here at the

12  bench, so that I can see what's coming, before we

13  just have it blurted out, it would be good.  So

14  everybody try to be alert to see if you can keep me

15  posted as the trial evidence develops on that point.

16          All right.  I think we're ready to go to

17  Carlos Herrera's motion in limine on bad acts.  Let

18  me pull this up.  This is 1540 -- I can't read.  All

19  right.  I've got 1549.

20          All right.  Ms. Bhalla, you've got some

21  preliminary remarks you want to make, or do you want

22  to hear from the Government first, or do you want to

23  do both?

24          MS. BHALLA:  You know, Your Honor, I think

25  I am anxious to hear from Mr. Castellano about this.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5181

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 182

```
 1              But I will just say, looking at the first
 2    page alone, some of these acts were committed when
 3    Mr. Herrera was in the juvenile detention facility,
 4    and he was 13 years old.  You know, I took the
 5    Court's admonition about the meat cleaver pretty
 6    seriously yesterday.  And so I went back and really
 7    tried to narrow this down.  I certainly can see if
 8    you or the Government may be able to put forth some
 9    evidence, and attempt to lay the appropriate
10    foundation.  But I think that some of these are well
11    outside anything having to do with any sort of
12    enterprise evidence.  So --
13              THE COURT:  Did you go through and do what
14    Mr. Castellano has been doing about matching up some
15    of these with overt acts?
16              MS. BHALLA:  I tried to do that.  I had a
17    tough time finding them.  I mean, there were a couple
18    that I could see, maybe.  That's why I'm curious to
19    hear from Mr. Castellano on that.  I mean, I
20    identified maybe four or five out of the 36.  So I'd
21    like to see what the Government has to say about
22    that, Your Honor, to try and see if I can narrow this
23    a little bit.
24              THE COURT:  All right.  Anything else from
25    a preliminary statement you want to make?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5182

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 262 5183

```
 1              MS. BHALLA:  No, Your Honor.

 2              THE COURT:  Thank you, Ms. Bhalla.

 3              All right.  Mr. Castellano.  Have you done

 4     the same thing with your letter, or Ms. Armijo's

 5     letter to Mr. Herrera's counsel -- I mean,

 6     Mr. Herrera's counsel on this letter?

 7              MR. CASTELLANO:  I did, Your Honor.

 8     Admittedly, I had a tougher time with Mr. Herrera's,

 9     because he's not charged with overt acts in the RICO

10     indictment.

11              THE COURT:  At all?

12              MR. CASTELLANO:  I believe that's correct.

13     Let me double-check.

14              THE COURT:  Let me start first with the

15     question that I've been asking you about the 404(b).

16     Is the Government trying to get any of this evidence

17     in, filtered through 404(b)?

18              MR. CASTELLANO:  I'm having a tougher time

19     with Mr. Herrera's, because I'm going to have to go

20     back and look at the supporting documentation.

21              But let me start with the things I think we

22     can strike now.  It's not many.

23              THE COURT:  Okay.  And by "strike" you mean

24     these are things that the Government will not attempt

25     to prove or introduce against Mr. Herrera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5183

263

 1                    MR. CASTELLANO:  That's correct.

 2                    The first is the January 12, 1994 incident.

 3                    THE COURT:  Auto theft.

 4                    MR. CASTELLANO:  If Ms. Bhalla represents

 5     that the 1991 incidents were when Mr. Herrera was a

 6     juvenile, I'll agree to strike those now.

 7                    THE COURT:  Are those both juvenile, Ms.

 8     Bhalla?

 9                    MS. BHALLA:  Your Honor, the whole entire

10     first page is juvenile.  The 1991 incidents, he was

11     13 years old.  The '94 incidents, he was 15 years

12     old.  And then, when you switch to January -- let's

13     see, no, March 14, he was 16.  His birthday is in

14     February.  And then he was 16 for the rest of the

15     page.  I mean, if you look at the first line, it's

16     pretty clear he was a juvenile, because it notes that

17     he was in the detention home.  So --

18                    MR. CASTELLANO:  Looking at the 1994, at

19     the bottom of the page, it indicates that Mr. Herrera

20     was in the Department of Corrections.  So I'm

21     assuming --

22                    THE COURT:  How would he have been in the

23     Corrections -- in the custody of the Corrections

24     Department as a juvenile?

25                    MS. BHALLA:  I'm a little confused about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5184

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 264 185

1    that.  And I did try and find that out.  There was

2    some issue in the Juvenile Detention Center with him

3    at that time.  But I'm pretty confident that he was

4    16 at the time.  So I'm not sure if it's a mistake

5    with the Government's letter.  But I did talk to my

6    client about that.  And I'm pretty sure he was 16,

7    Your Honor.

8                MR. CASTELLANO:  He could have been

9    adjudicated as an adult.  So that is possible.

10               Like I said, this one -- with these, I was

11   not able to look at the substantiating documentation

12   last night.  I reviewed all the letters, but not the

13   documents underlying them.

14               THE COURT:  Well, do you know if he was

15   adjudicated as an adult for that?

16               MS. BHALLA:  I think that he's a little

17   unclear about that, Your Honor.  And unfortunately, I

18   don't have access to those records.  So I wasn't able

19   to look that up.

20               THE COURT:  Well, I don't know enough about

21   the SNM Gang, but do they allow juveniles or

22   associates into the gang?

23               MS. BHALLA:  Not that I'm aware of, or not

24   that's been alleged against my client, Your Honor.

25               THE COURT:  What's the Government's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5185

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5186

1    position on that?  Do you think they allow juveniles,

2    or they let them be associates in some way, so they

3    would help further the criminal activities?

4           MR. CASTELLANO:  I'm not aware of a

5    prohibition on juveniles coming into the SNM Gang, as

6    long as they can put in the work.  I believe

7    Frederico Munoz may have been a juvenile when he

8    joined the gang.  I believe Eugene Martinez was also

9    very young when he joined the gang.

10          THE COURT:  I guess my thoughts are:  A bad

11   act is a bad act.  It doesn't really matter whether

12   it's a juvenile or not.  Mr. Castellano may be

13   willing to take off some of these because he doesn't

14   have any evidence that they were in furtherance of

15   the gang.  But I'm not sure that just him being a

16   juvenile is going to take it off.

17          MS. BHALLA:  I can understand that, Your

18   Honor.  I do think, though, that two things to keep

19   in mind, when we're looking at this, is the

20   Government is going to have to prove in some capacity

21   that's related to the enterprise, number one; and

22   number two, even if that initial burden may be met,

23   there is still a 403 balancing test that we're going

24   to have to look at.  And we can deal with that later,

25   if Mr. Castellano wants to continue agreeing which

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5186

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 266 5187

1    ones we won't be arguing about, that would be great.

2            THE COURT:  Well, he's only taken off this

3    January 12th one so far.  After hearing the exchange,

4    any others you want to take off, Mr. Castellano?

5            MR. CASTELLANO:  Yes, Your Honor.  I've

6    stricken the first two, 1991, as well.

7            THE COURT:  September 24, 1991 is off?

8            MR. CASTELLANO:  Yes.

9            THE COURT:  And also November 6 is off,

10   January 12 is off.  Any others?

11           MR. CASTELLANO:  Not on that page.

12           THE COURT:  Not on that page.  Okay.

13           What was the age of Mr. Herrera in January

14   of 1994?  Is he going to be 15?

15           MS. BHALLA:  15.

16           THE COURT:  All right.  Going to page 2.

17           MR. CASTELLANO:  Toward the bottom of the

18   page, there is an entry on November 3, 1999.

19           MS. BHALLA:  Hold on.  I'm sorry.

20           THE COURT:  See, it's struck out there.

21   And September 8 as well.

22           MS. BHALLA:  I'm sorry.  Let me -- are we

23   on the second page?

24           THE COURT:  We are, 2 of 4.

25           MS. BHALLA:  Oh, okay, I see it.  Thank

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5187

1    you.

2              THE COURT:  Okay.

3              MR. CASTELLANO:  That's November 3, 1999,

4    and September 8 of 2000.

5              THE COURT:  Correct.

6              MS. BHALLA:  Now, I don't know if the Court

7    wants to -- I did go back to try to look at some of

8    these records.

9              THE COURT:  These are just gifts.  I mean,

10   he's just not going to put these two in.  So he's

11   just listing right now the ones he's just dropping.

12             MS. BHALLA:  I understand, Your Honor.

13   Thank you.

14             I just meant there were a couple on the

15   list that aren't crossed off that I do have some

16   information on.

17             THE COURT:  Let's hold off.  Let's get Mr.

18   Castellano's -- sort of the universe here, and then

19   we'll see what we're going to do with them.  Go

20   ahead, Mr. Castellano.

21             MR. CASTELLANO:  The next is on the

22   following page, October 6, 2011.

23             THE COURT:  Okay.  The pornography?

24             MR. CASTELLANO:  Yes.

25             THE COURT:  So that one is out.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5188

1          So it's actually three pages.  Okay,

2     anything else, Mr. Castellano?

3          MR. CASTELLANO:  That's it for right now,

4     Your Honor.

5          THE COURT:  All right.  And I think I

6     already asked this question, but bear with me since

7     I'm asking it a lot.  But with Mr. Herrera, you're

8     not attempting to introduce any of this evidence or

9     any other evidence under 404(b); this is all coming

10    in, in the Government's view, for enterprise and for

11    advancing the enterprise's activities?

12         MR. CASTELLANO:  I think so.  I have to

13    look at these more closely with an eye towards the

14    404(b).

15         THE COURT:  All right.  For the present

16    time, though, we'll take 404(b) off the table.  None

17    of this will be coming in for 404(b).  If Mr.

18    Castellano gets back and looks at it, he'll send a

19    letter telling us it's back on.  But right at the

20    moment, as to Mr. Herrera, we'll take 404(b) off the

21    table.  So all the evidence at the present time will

22    have to be filtered through 401 for the purpose of

23    proving enterprise or proving that it was in

24    furtherance of the enterprise's activities.

25         MR. CASTELLANO:  And I agree with that



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   approach, Your Honor.  If there is a change, we'll

2   notice that in our letter to defense counsel.

3         THE COURT:  All right.  Do you have on

4   here -- because I guess Ms. Bhalla was saying that

5   she didn't -- did you see any of these that were

6   overt acts, or you just said you had a hard time --

7         MS. BHALLA:  No, Your Honor.  I mean, Mr.

8   Herrera is not named in any of the overt acts, as

9   some of the other defendants.  So I -- you know, I'm

10   trying to have to look at this in sort of a more

11   loose fashion, in terms of whether or not this would

12   fit into some sort of enterprise theory.

13         You know, I think that maybe there are four

14   or five that could potentially be applicable,

15   depending on what evidence the Government submits.

16   But some of these, I think, are fairly obviously not

17   related to enterprise.  And I say that because I was

18   able to go back and look through some of these

19   records, to read about the individual incidents.  And

20   I have a little more information, perhaps, than the

21   Government does at this point, about some of those

22   individual incidents.  And I'm willing to talk about

23   those.  But we can also see how this pans out.  Maybe

24   the Government wants more time to look at this.  I'm

25   open to how the Court wants to handle it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5190

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 270 of 191

```
 1              THE COURT:  Well, let me make a suggestion:
 2    Would you be willing, if Mr. Castellano would drop
 3    everything but your five, and maybe at least for
 4    ruling and getting ready for trial, you'd identify
 5    which five you think they may have a shot at; he
 6    drops the other, and then he can focus then on those
 7    five, and see if he even wants to bring those in?
 8              MS. BHALLA:  I think that's fair, Your
 9    Honor.  I mean, I'm not going to certainly concede
10    that they're admissible.
11              THE COURT:  Right.
12              MS. BHALLA:  But yes.
13              THE COURT:  Okay.  Well, that might make
14    Mr. Castellano's work easier.  And it's probably
15    going to be overnight.  Why don't you identify the
16    four or five that you think are probably on the
17    table, and then he can maybe see if he's ready to
18    concede, maybe first thing in the morning, or
19    tomorrow, on the rest, that for the present time he's
20    not going to try to put them in?
21              MS. BHALLA:  Okay, Your Honor.
22              THE COURT:  Which ones are they?
23              MS. BHALLA:  If you go to page 2:  "1998,
24    Mr. Herrera voted to bring Gene Martinez into the SNM
25    Gang.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5191

```
 1              THE COURT:  Okay.
 2              MS. BHALLA:  Possibly the February 23, 1999
 3    incident.  I haven't found any records related
 4    directly to that.  But just -- you know, I'd be
 5    curious to see what they had.
 6              THE COURT:  Okay.
 7              MS. BHALLA:  I may have overstated how many
 8    I found to be relevant, or possibly relevant.
 9              You know, there is a lot of stuff about
10    drug use in here.  You know, the Government may think
11    that that is indicative of enterprise.  But I would
12    argue that any sort of minor possession isn't
13    necessarily related to the enterprise.  And there are
14    several on here.  And I think perhaps those, the
15    Government may want to -- I don't know, we may argue
16    about those.  But that's really it, in terms of what
17    I found, Your Honor.
18              THE COURT:  Well, let's do this:  Why
19    don't -- Mr. Castellano, why don't you look maybe a
20    little closer at Mr. Herrera's, and see how much you
21    think we could -- just for purposes of preparing for
22    trial -- how much we can take off the table.  And
23    then if you need to leave some on to look at more
24    closely, or if you and Mr. Acee can look at them
25    overnight, and maybe tell us which ones you're going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5192

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 272

1  to take off, prepare to take off, what you want to

2  leave in play, and maybe we can at least narrow it.

3  And then we can go, then, with the structure that

4  we've used for January 22, as we get a little closer

5  and see what's left.

6           Does that make sense?

7           MR. CASTELLANO:  It does, Your Honor.  I

8  don't know if I'll be able to find all the

9  substantiating documents tonight.  I'll discuss it

10  with Agent Acee.  I can tell the Court, most of

11  the --

12           THE COURT:  Maybe you could at least tell

13  us which ones you want to play with.

14           MR. CASTELLANO:  I'll give the Court a

15  preview.

16           THE COURT:  Some of these you look at, and

17  you don't want to pursue, maybe we can just take them

18  off the table?

19           MR. CASTELLANO:  Just about everything

20  related to drugs, we will probably --

21           THE COURT:  You want to leave in play?

22           MR. CASTELLANO:  Yes, because --

23           THE COURT:  That's what SNM does, is drugs?

24           MR. CASTELLANO:  In particular, related to

25  Mr. Herrera; his father and brother were SNM Gang

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5193

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273

```
 1    members, and his mother was known to sell drugs both
 2    through the 18th Street Gang and to the SNM.  So
 3    that's where he has an additional connection to
 4    drugs.
 5              THE COURT:  Our breaks sort of worked out a
 6    little odd today.  I need to give Ms. Bean a break,
 7    and it doesn't make any sense to come back.  So let's
 8    bring it to an end.
 9              Let me make a few comments before we take a
10    break.  I'm not able to do sort of a standard
11    pretrial conference, because we're doing this over a
12    month in advance.  So we're going to have to do
13    portions of our pretrial conference on a rolling
14    basis.  So get out our pieces of paper here and write
15    this down.  I'm not asking for any more motions.  I'm
16    not asking for any more letters.  You can raise these
17    as we go.  If you want to send me a letter or
18    something, that's fine.
19              But keep in mind, I would like to help you
20    in advance of trial on a few select categories that I
21    would normally handle at a pretrial conference.
22    First, exhibits.  And I'd be willing to talk about
23    those exhibits in a formal way.  But it may be a
24    little early to do that.  So exhibits; I'd like to
25    address any issues I can, either in hearings this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5194

```
 1   week, or in the future about exhibits, so keep that
 2   in mind.
 3          Same way with witnesses.  That's one reason
 4   I switched to the bad acts at this point because I
 5   think that's going to implicate both exhibits and
 6   witnesses, so any issues and disputes on that.  I
 7   want to try to help you resolve any issues on that as
 8   much as possible before trial.  I know we can't
 9   script out the trial.  But we can try, and that will
10   make it easier on everybody to try the case.
11          Keep in mind discovery issues.  Even if I'm
12   not going to allow discovery, I'd like to deal with
13   those in advance.  Just any evidentiary issue.
14          I think the deadline for motions in limine
15   have come and gone.  So I'm not inviting or asking
16   any more motions in limine.  But at the same time, I
17   think it helps us all if I can rule on evidentiary
18   issues before trial.  And the same thing with Daubert
19   issues.  So anything that falls into those
20   categories, while I'm down here -- you know, if I can
21   help you with those in any way, those are the kind of
22   things I would normally deal with at a pretrial
23   conference, we knock it out; we're close to trial.
24   Here, we're five weeks from trial.  So some of these
25   issues, we've got to plow through other motions to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5195

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275196

1    get to it.  But keep those in mind, if necessary, and

2    send me a letter, whatever you've got to do.  But if

3    we can also just raise them.  I want to try to deal

4    with as many of those before trial as we can, because

5    I think, A, it will help you prepare for trial; B, it

6    will help me to make a more informed decision.

7            All right.  I appreciate everybody's hard

8    work.  Y'all have a good evening.  See you tomorrow.

9            (The Court stood in recess.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on December 26, 2017.

15

16

17

18         _____
           Jennifer Bean, FAPR, RMR-RDR-CCR
19         Certified Realtime Reporter
           United States Court Reporter
20         NM CCR #94
           333 Lomas, Northwest
21         Albuquerque, New Mexico 87102
           Phone:  (505) 348-2283
22         Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4       Plaintiff,

5       VS.                          CR. NO. 15-4268 JB

6   ANGEL DELEON, et al.,

7       Defendants.

8                       VOLUME 3

9       Transcript of Motions to Suppress Proceedings
    and James Hearing before The Honorable James O.
10  Browning, United States District Judge, Las Cruces,
    Dona County, New Mexico, commencing on December 20,
11  2017.

12

    For the Government:  Ms. Maria Armijo; Mr. Randy
13  Castellano; Mr. Matthew Beck

14  For the Defendants:  Mr. Brock Benjamin; Ms. Cori
    Harbour-Valdez; Mr. Robert Cooper; Mr. Jeff Lahann;
15  Mr. Orlando Mondragon; Mr. Billy Blackburn; Mr. Scott
    Davidson; Ms. Amy Jacks; Mr. Richard Jewkes; Ms. Amy
16  Sirignano; Mr. Christopher Adams; Mr. Marc Lowry; Ms.
    Theresa Duncan; Ms. Carey Bhalla; Mr. William
17  Maynard; Ms. Justine Fox-Young; Ms. Lisa Torraco; Ms.
    Angela Arellanes; Mr. Jerry Walz

18

19  For the Defendants (Via telephone):  Mr. James Castle

20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Let's settle down.

 2   Let's go on the record.  It looks like everybody has

 3   got an attorney this morning.  Mr. Maynard, I

 4   understand you're leaving after lunch, and Ms. Bhalla

 5   will be here the rest of the day; is that correct?

 6              MR. MAYNARD:  Yes, Your Honor.

 7              THE COURT:  All right.  And we've got

 8   Mr. Mondragon for Mr. Gallegos.  Mr. Lahann, I

 9   understand you're going to be working with Judge

10   Brack to get a sentencing done, so when we take a

11   break you're going to run up there and so we'll work

12   with you to try to get that done.

13              MR. LAHANN:  Thank you, Your Honor.

14              THE COURT:  Anything else that we need to

15   put on the record?  Mr. Jewkes?

16              MR. JEWKES:  Your Honor, I need to duck out

17   about 20, 30 minutes to go upstairs to Judge

18   Gonzales, and I'll be back.

19              THE COURT:  Ms. Jacks is going to be here

20   all day.

21              MS. JACKS:  Until 4:00.

22              MR. ADAMS:  Your Honor, I have a flight

23   that I couldn't change.  I'll be leaving early.  I'll

24   be on the phone on the way down.  Thank you.

25              THE COURT:  Thank you, Mr. Adams.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5199

```
 1            Anyone else?  All right.  I have been told
 2    by Ms. Standridge that the Government wants to take
 3    up Document 1586 first, before we put on the FBI
 4    agent in connection with Eric Duran, that Eric Duran
 5    suppression motion.  So, Mr. Castellano, if you wish
 6    to speak on 1586.
 7            MR. CASTELLANO:  Yes, sir.  Thank you, Your
 8    Honor.
 9            THE COURT:  Mr. Castellano.
10            MR. CASTELLANO:  The reason I wanted to
11    address this this morning is I'm going to ask the
12    Court to strike this pleading from the record, or at
13    least portions of the pleading.  Ironically, this was
14    filed in response to the Government's motion in
15    limine to keep people from asking personal questions
16    about witnesses, so as not to harass or intimidate
17    them.  But the pleading itself starts out by doing
18    that.
19            It's clear -- the pleading lists a few
20    cases in which Agent Acee was named as a defendant in
21    a number of -- a couple of civil cases.  It's
22    completely nonresponsive to the motion filed by the
23    U.S. Attorney's Office.  And it really serves no
24    purpose other than to intimidate, harass, or
25    embarrass the Government's case agent.  There is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 5200

1    really no other explanation.

2         THE COURT:  Does it put him or any of his

3    work or the United States' work in any danger,

4    jeopardy, anything like that?  Or is it just

5    annoying?

6         MR. CASTELLANO:  One, it's annoying, but

7    the other part is that, of course, we're on the eve

8    of trial.  We now have a pleading on the docket which

9    throws mud on the Government's case agent.  So if the

10   press picks it up, obviously it has the tendency to

11   generate press, and hurt the jury pool and influence

12   the jury pool, when we're a month out from trial.  So

13   if the press picks it up, what they see is a story

14   about the case agent, and defense throwing mud at

15   him.  So the concern there is that it's going to

16   unduly sway the jury, and sway them against the

17   United States, when they see a news report involving

18   the Government's case agent.

19        So it has two purposes.  Like I said, it's

20   there to embarrass, harass, or annoy, and it also

21   serves to taint the jury pool, if it's picked up.  So

22   I would ask the Court to strike the pleading from the

23   record, or at least strike those portions related to

24   Agent Acee.  As I stated, there is nothing about

25   those statements that is responsive to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5201

```
 1   Government's motion, and it doesn't address that in
 2   any way.  And that takes up half the pleading.
 3            THE COURT:  All right.  Thank you, Mr.
 4   Castellano.
 5            MR. CASTELLANO:  Thank you, Your Honor.
 6            THE COURT:  All right.  Mr. Benjamin?
 7            MR. BENJAMIN:  Your Honor, I think that
 8   pleading is extremely responsive.  It does the
 9   opposite of what the Government put in their motion
10   in limine for the personal information.
11            And this entire process over the last two
12   years has been them attempting to paint their picture
13   of the story.  This paints exactly what I think the
14   issues need to be.  This is not a one-sided issue
15   where they get to say what they want, how they want,
16   and then say that we can't go into personal
17   information of other people.  As I stated at the end
18   of the motion, Your Honor, and as we discussed
19   yesterday when discussing this motion, there is, I
20   don't think, anything that comes up that's relevant.
21   Nothing in that motion is personal.  Those are all
22   facts that were taken from plaintiffs' petitions
23   against Special Agent Acee in his official
24   capacities.  And so those were public documents, as a
25   matter of public record.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5202

```
 1              And the body of the Government's motion in
 2    limine starts out by saying that they want to make
 3    sure that, because of the threats that have been
 4    taken, because of the actions that have been taken by
 5    defendants, they want to protect personal
 6    information.  My response to that was exactly that
 7    they need to look at their own table, if they want to
 8    look for threats and actions that have been taken,
 9    and other people disagree with.  So I think it's
10    extremely responsive, Your Honor.
11              THE COURT:  Well, I guess I have some
12    questions whether it's responsive.  It just seems to
13    me that there was -- this was tied to the motion not
14    to bring out at trial personal information about the
15    Government's witnesses; correct?  I mean, the title
16    is not even, I think, in compliance with our rules.
17    But the title has to respond to the pleading.  I
18    mean, this is just a Defendants' Suggestion that the
19    Government is More Violent Than Defendants.  That's
20    pretty raunchy, don't you think?
21              MR. BENJAMIN:  I guess "raunchy" wasn't the
22    term that came to mind, Your Honor.  I apologize to
23    the Court.
24              THE COURT:  What is the point of this in
25    response to the Government's motion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5203

```
 1              MR. BENJAMIN:  Your Honor, the body of --
 2              THE COURT:  Tell me, though, how it would
 3    inform the Court that it should deny the Government's
 4    motion for you to put this material in here?
 5              MR. BENJAMIN:  Because I think of what it
 6    specifically contains in the body of the motion, Your
 7    Honor.
 8              THE COURT:  Well, let me ask my first
 9    question.
10              MR. BENJAMIN:  Yes, Your Honor.
11              THE COURT:  This responds to the
12    Government's motion that the defendants not get into
13    personal information at trial.  Is that what this is
14    a response to?
15              MR. BENJAMIN:  That is exactly a response
16    to that, Your Honor, yes.
17              THE COURT:  Tell me how this Canadian case,
18    how that impacts what I'm supposed to glean from that
19    in regard to that motion.
20              MR. BENJAMIN:  I apologize, when the Court
21    says "Canadian case" -- if I can pull it up, Your
22    Honor.  The Government started on that --
23              THE COURT:  You keep talking about Mr. Acee
24    being a -- something with the Canadian police?
25              MR. BENJAMIN:  He was in Vancouver,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5204

 1   Washington, Your Honor.

 2           THE COURT:  Okay.  Tell me how that

 3   responds to the motion.

 4           MR. BENJAMIN:  Your Honor, there was

 5   allegations in that case that Special Agent Acee

 6   authored an affidavit and went --

 7           THE COURT:  Tell me how that responds to

 8   the Government's request that the defendants not get

 9   into personal information while the witnesses are on

10   the stand at trial.

11           MR. BENJAMIN:  In the original motion,

12   Document 1520, they quoted actions that they said the

13   defendants took -- and I'm trying to pull that up,

14   Your Honor -- and cited, essentially, as I believe

15   just allegations.  And so I was responding directly

16   to those allegations that were put in the body of the

17   motion, 1520.

18           THE COURT:  How does this respond?

19           MR. BENJAMIN:  Your Honor, may I have a

20   second to pull it up?

21           THE COURT:  I'm at a loss.  Tell me how

22   that responds to what we're going to do at trial.

23           MR. BENJAMIN:  If I may have a second, Your

24   Honor.  The issue that was in the motion was whether

25   or not personal information should be brought out by

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5205

 1   the defendants at trial.  That was the point of the

 2   motion, as I understood it.

 3          The Government in its body of the motion,

 4   in the background portion, talks about the SNM

 5   investigation has uncovered a large number of

 6   potential threats to witnesses.  I think this is the

 7   Government trying to inflate those threats in -- much

 8   as Mr. Castellano said, and much as they have done in

 9   their actions in the past --

10          THE COURT:  Why didn't you make that

11   argument, rather than talking about what you talk

12   about here?

13          MR. BENJAMIN:  Your Honor, the thought in

14   my mind when I was drafting that, for lack of a

15   better term, pictures are worth 1,000 words, and

16   that's what I was trying to do.

17          THE COURT:  I guess I'm missing the picture

18   and the words.  Where does it say in the brief what

19   you just said to me, that you pointed out, that they

20   were inflating certain statements in their brief?

21          MR. BENJAMIN:  I can't point to that, Your

22   Honor.  I was trying to do that by -- the word's

23   escaping me, but I was trying to draw that out by the

24   way that I responded with that brief.  Because that

25   has been -- from where I am sitting, representing Mr.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5207

1    Gallegos, they have been doing exactly what I did in

2    my response in my objection, Your Honor.  And that is

3    trying to elicit this big picture.  And so I was

4    responding with a picture of my own.  And I believe

5    that responded directly.  And in the end of the

6    motion, I believe is where, as I stated that the

7    response, I think, was odd, because I don't know how

8    to -- I don't plan on getting into their personal

9    information.  And I don't believe getting into the

10   information that I elicited regarding Special Agent

11   Acee gets into any personal information.  That's

12   public information.

13            THE COURT:  So why get into it in this

14   response?

15            MR. BENJAMIN:  Your Honor, for the very

16   reason, as I said, their motion brought out the SNM

17   investigation has uncovered large potential threats.

18   I believe that's how the plaintiffs in those

19   petitions felt.  And that's what I was trying to

20   elicit, and obviously doing a poor job.  But that's

21   what I was trying to elicit, was the idea that the

22   Government has put forth this idea that there is a

23   whole bunch of bad actors out there.  And I don't

24   think that they're allowed to freely slander or make

25   allegations.  Yes, they have.  They brought everybody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5207

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5208

```
 1    into court, but --

 2            THE COURT:  Was that your point that,

 3    because you thought the Government had slandered your

 4    defendants, you were going to slander back the

 5    Government's witness?

 6            MR. BENJAMIN:  Your Honor, I don't

 7    believe --

 8            THE COURT:  Is that what you did?  It was

 9    just a quid pro quo?

10            MR. BENJAMIN:  Your Honor, no, what I did

11    is I drew out specific allegations out of specific

12    pleadings that I have uncovered out of discovery that

13    I believe are items that I believe illustrate --

14            THE COURT:  It doesn't sound like it was

15    responsive to the motion.  It just sounded like since

16    they slandered, you're going to slander.  Is that

17    your point?

18            MR. BENJAMIN:  No, Your Honor.  My point --

19    and I apologize if I'm not covering it very well.

20            THE COURT:  No, you're not covering it very

21    well, Mr. Benjamin.

22            MR. BENJAMIN:  But there is a portion of

23    their motion that says because of that fact,

24    everybody is going to know they're going to hit my

25    family, I'm never going to tell them -- they're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5208

```
 1    talking about specific actions.  So that's where I
 2    went with specific actions, Your Honor.
 3             THE COURT:  Specific actions of Mr. Acee?
 4             MR. BENJAMIN:  Yes, Your Honor.
 5             THE COURT:  And why?
 6             MR. BENJAMIN:  Because of what was
 7    contained in the body of 1520 that I just read, Your
 8    Honor.
 9             THE COURT:  They slander your client;
10    you're going to slander theirs?
11             MR. BENJAMIN:  Your Honor, when the Court
12    says it that way, I can understand the Court's
13    concern.
14             THE COURT:  That was your word.
15             MR. BENJAMIN:  It was my word, Your Honor.
16    But my word was -- I guess what I wanted to do, and I
17    don't believe I've done a very effective job, but I
18    think I've done an accurate job, is bring this issue
19    to the Court's attention.
20             THE COURT:  What is the issue?  What are we
21    going to do with this, now that you've filed this
22    public document and brought it to the Court's
23    attention, what are we going to do with it?
24             MR. BENJAMIN:  Your Honor, yesterday we
25    resolved this by saying that we weren't going to get
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5209

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 13210

```
 1   into the personal information.  And as I stated, I
 2   don't believe there is any personal information that
 3   I put in that motion -- in my response.
 4            THE COURT:  Yeah, that's the reason I'm
 5   trying to figure out why you put it in the brief
 6   then.
 7            MR. BENJAMIN:  Because, Your Honor, it
 8   deals with specific facts, much like the Government
 9   in 1520 put in what they believe are specific facts
10   or threats.
11            THE COURT:  All right.  Anything else, Mr.
12   Benjamin?
13            MR. BENJAMIN:  I think there is a lot I'd
14   like to add, Your Honor, but I don't believe I'm
15   doing it effectively.  So, no, at this point in time,
16   I don't think so.
17            THE COURT:  Well, I'll listen, if you want
18   to speak.
19            MR. BENJAMIN:  Your Honor, I guess my
20   position is, when I drafted that on the weekend --
21   actually, when I drafted it, I believe, on Thursday,
22   then we got an extension on Friday, Your Honor, in
23   drafting that, I believed that that was a fair and
24   accurate response to the Government's Document 1520.
25   And, essentially, on page 2, where they get into the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5210

```
 1   actual types of threats and different issues.  And I
 2   believe they've been able to make those allegations.
 3            And, Your Honor, I guess what I would like
 4   to relay to this Court is that I didn't believe that
 5   was a one-sided issue.  That is an issue that I think
 6   needs to go both ways.  And that's why I am -- I have
 7   responded that I don't believe personal information
 8   is necessary or required, because of both sides.  And
 9   so, Your Honor, I think this pleading is an accurate
10   portrayal of my response to 1520.
11            THE COURT:  The Government has made a
12   motion to strike the document.  How do you feel about
13   that?
14            MR. BENJAMIN:  Your Honor, that I guess --
15   I think that is -- the only word that comes to mind
16   is unfair and inaccurate, Your Honor.  The
17   Government -- and I specifically have not mentioned
18   anything to the press.  The only individuals that
19   have brought any, or released any issues to the press
20   in this matter have been the Government.  I
21   understand --
22            THE COURT:  How about that article that
23   appeared on the front page of the Journal last week?
24   Was that generated by the defense?
25            MR. BENJAMIN:  I don't know what article
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5211

```
 1    you're talking to, Your Honor.
 2            THE COURT:  The front page of the
 3    Albuquerque Journal.
 4            MR. BENJAMIN:  I apologize --
 5            THE COURT:  Certainly, reading that
 6    article, it looked like the defense probably had
 7    their hand on that.
 8            MR. BENJAMIN:  I will have to go Google
 9    that, Your Honor.  I'm from the southern half -- I'm
10    from El Paso, as the Court, I believe, knows -- from
11    the southern half of the state.  I don't read the
12    Journal.
13            THE COURT:  You might get on the internet
14    and look at that, and give me your impression as to
15    whether that was something that the Government put
16    out or defense lawyers put out.
17            MR. BENJAMIN:  And, Your Honor, and I
18    apologize, what I was continuing saying is that the
19    Government, I understand, at this point in time, has
20    agreed, based upon some emails I've seen that nobody
21    is putting out any press releases.  I can speak for
22    myself, Your Honor.  I know I haven't.  But I will
23    take a look at the article from last week in the
24    Journal.
25            But I do not believe that there is any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 16

```
 1    grounds to strike the motion.  As the Court can tell
 2    from the brief, I guess I was maybe not in the best
 3    drafting mode when I did that.  But I think it's a
 4    very accurate and correct response to Document 1520,
 5    Your Honor.
 6            THE COURT:  All right.  Anything else, Mr.
 7    Benjamin?
 8            MR. BENJAMIN:  No, Your Honor.
 9            THE COURT:  Thank you, Mr. Benjamin.
10            Ms. Harbour-Valdez, why don't you come up
11    to the podium.  Tell me why the response to the
12    motion in limine that the Government filed included
13    this information.
14            MS. HARBOUR-VALDEZ:  Which information?
15            THE COURT:  Did you read the brief before
16    it was filed?
17            MS. HARBOUR-VALDEZ:  Mr. Benjamin's?
18            THE COURT:  That has your signature on it.
19            MS. HARBOUR-VALDEZ:  Was it filed on behalf
20    of everyone?
21            THE COURT:  Yes, your signature is on page
22    4.
23            MR. BENJAMIN:  Yes.
24            MS. HARBOUR-VALDEZ:  Okay.  My
25    understanding, Your Honor, is that Mr. Benjamin was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5213

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5214

 1    trying to --

 2              THE COURT:  My question was:  Did you read

 3    it before your signature went on this document?

 4              MS. HARBOUR-VALDEZ:  I did not read it,

 5    Your Honor, no.  What we had agreed among the

 6    defense, is that when a response was being filed to

 7    the motions in limine that we had all joined, that

 8    was the informal agreement among the defense.

 9              THE COURT:  So did you know this document

10    was going to respond in the way that it did?

11              MS. HARBOUR-VALDEZ:  I did not read it,

12    Your Honor.  So, no.

13              THE COURT:  All right.  Anything you want

14    to say on the motion to strike by the Government?

15              MS. HARBOUR-VALDEZ:  No, Your Honor.

16              THE COURT:  Do you oppose it?

17              MS. HARBOUR-VALDEZ:  I take no position.  I

18    think it's an extreme request.  I understand, though,

19    why they're doing it.  I also understand why Mr.

20    Benjamin has drafted this the way that he did.  I

21    think he was trying to portray a different picture of

22    what goes on in this case, Your Honor.

23              THE COURT:  All right.  Anything else,

24    Ms. Harbour-Valdez?

25              MS. HARBOUR-VALDEZ:  Nothing else, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5214

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5215

```
 1   Honor.
 2              THE COURT:  All right.  Mr. Cooper, why
 3   don't you come up to the podium.  Did you look at
 4   this motion -- it has your signature on it.  Did you
 5   look at this response before it was filed?
 6              MR. COOPER:  No, Your Honor, I did not.
 7              THE COURT:  Do you have any thoughts about
 8   the response?
 9              MR. COOPER:  Your Honor, like
10   Ms. Harbour-Valdez said, the group has agreed that
11   not everybody should respond to every motion.  And we
12   all agreed that the responses should be filed on
13   behalf of all defendants.  But I did not read it,
14   Your Honor.  And I don't have any thoughts.  And I
15   still have not read it.
16              THE COURT:  All right.  And do you have any
17   position on whether the brief should be stricken?
18              MR. COOPER:  Your Honor, having not read
19   it, I don't have a position on that.
20              THE COURT:  All right.
21              MR. COOPER:  Thank you.
22              THE COURT:  Thank you, Mr. Cooper.
23              MR. COOPER:  Your Honor, while I'm here I'd
24   like to inform the Court that Mr. Castle is on the
25   phone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5215

```
1              THE COURT:  Oh, okay.
2              MR. COOPER:  I don't think that he -- I
3   don't think the Court knew that.  But anyway, he's
4   on.
5              THE COURT:  All right.  I'll do that.
6   Thank you, Mr. Cooper.  Let me get the people who are
7   on the phone.  Mr. Castle, are you there?  Are you
8   present, Mr. Castle?  Got your mute button on?
9              MR. CASTLE:  Yes, Your Honor.
10             THE COURT:  How about you, Mr. Castle, do
11  you have -- did you read this response before it was
12  filed?  Mr. Castle?
13             MR. CASTLE:  Your Honor, I'm having
14  difficulty.  I don't know if the Court can hear me at
15  all.
16             THE COURT:  We can hear you now.  Did you
17  have an opportunity to read Mr. Benjamin's response,
18  or actually, it was the Defendants' Suggestion That
19  the Government is More Violent Than The Defendants.
20  That document, did you have a chance to read it
21  before it was filed?
22             MR. CASTLE:  No, Your Honor.  My
23  understanding is it was filed during court yesterday,
24  and I did not have an opportunity to review it.
25             THE COURT:  Will your responses to my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5216

```
 1    questions be the same as for as the ones that I asked

 2    Mr. Cooper?

 3              MR. CASTLE:  Yes, Your Honor.

 4              THE COURT:  All right.  Mr. Lahann, do you

 5    want to come up to the podium here?

 6              MR. LAHANN:  And, I'm sorry, Your Honor, I

 7    haven't had a chance to say it; it's Lahann.

 8              THE COURT:  Lahann.

 9              MR. LAHANN:  Yes, Judge.

10              THE COURT:  I'll try to say that.  Now I'm

11    in a bad habit, so I'll try to get better at it.

12              Mr. Lahann, did you have a chance to read

13    this document before it was filed?

14              MR. LAHANN:  I did not.

15              THE COURT:  Do you have any thoughts about

16    it?

17              MR. LAHANN:  I have no thoughts, because I

18    did not read the brief before it was filed.

19              THE COURT:  And your position on the motion

20    to strike by the Government?

21              MR. LAHANN:  I take no position on that.

22              THE COURT:  All right.  Thank you, Mr.

23    Lahann.

24              MR. LAHANN:  Your Honor, may I address the

25    Albuquerque Journal article?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5217

```
 1              THE COURT:  You may.
 2              MR. LAHANN:  To my knowledge -- and I
 3    certainly wouldn't expect that anybody on the team
 4    would have somehow gone to the press with the
 5    information that was presented in that article.  I
 6    was aware of the article two days ago, when it was
 7    being passed from some of our clients, from one to
 8    another.  They were shocked in the way that they were
 9    portrayed in that article.  My client was very upset.
10    And so I pulled it up on the internet yesterday.  And
11    it bothered me, because I felt like -- and I told my
12    client it felt like this was not a seasoned court
13    reporter writing about what goes on in court.  It had
14    the point of view of somebody who seems to get all
15    their information about the criminal justice system
16    from what they see in the movies.  Just the way the
17    defendants were described.  It just -- it seemed
18    hyperbolic, Your Honor.
19              I can't see that any one of us would have
20    done that.  And maybe it's just confirmation bias in
21    the way that we read that article.  But it just would
22    seem greatly out of character for the people that
23    I've been working with.
24              THE COURT:  All right.  And did I ask you
25    your position on this motion, Mr. Lahann?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5218

```
 1              MR. LAHANN:  You did.  And I take no

 2   position.

 3              THE COURT:  All right.  Thank you, Mr.

 4   Lahann.

 5              Mr. Mondragon.

 6              MR. MONDRAGON:  Yes.

 7              THE COURT:  Did you have an opportunity to

 8   review this Defendants' Suggestion That The

 9   Government is More Violent Than The Defendants before

10   it was filed?

11              MR. MONDRAGON:  No, Your Honor.  I'm in the

12   same boat as Ms. Harbour-Valdez and Mr. Lahann.

13              THE COURT:  Do you have any thoughts about

14   the contents of it?

15              MR. MONDRAGON:  No, Your Honor.  I take no

16   position on the motion.

17              THE COURT:  And the Government's motion to

18   strike, do you have a position on it?

19              MR. MONDRAGON:  No, Your Honor.

20              THE COURT:  All right.  Thank you,

21   Mr. Mondragon.

22              MR. MONDRAGON:  Thank you, Your Honor.

23              THE COURT:  Is there anybody else on the

24   phone besides Mr. Castle?

25              MS. GLASSER:  Yes, Your Honor, Erin
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5219

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23

```
 1   Glasser.

 2              THE COURT:  All right.  Ms. Glasser.

 3              Mr. Blackburn, come up to the podium.  Mr.

 4   Blackburn, did you have an opportunity to review this

 5   Defendants' Suggestion That the Government is More

 6   Violent Than Defendants before it was filed?

 7              MR. BLACKBURN:  No, Your Honor.

 8              THE COURT:  Do you have any thoughts about

 9   its contents?

10              MR. BLACKBURN:  No, Your Honor.  I knew it

11   was filed -- I knew it was being filed while we were

12   sitting here in the courtroom, because Mr. Benjamin

13   asked me if there was something wrong with the

14   internet, and if I had any ideas how to file -- to do

15   the e-filing.  So I knew it was filed.  I did not

16   read it before it was filed.  As I think everyone has

17   indicated before me, when all of these motions came

18   in, people were given assignments as to who would do

19   these motions.  And we have a sort of a trust issue

20   with everybody in this case, that they're going to

21   respond appropriately, and do what is necessary to

22   respond to that.  Because, otherwise, there is no way

23   that all of us can respond to every one of these

24   motions.

25              Mr. Benjamin agreed to take that particular
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5220

```
 1    motion, that response.  He filed it.  I've agreed
 2    to -- for my name to go on those particular
 3    responses.  Did I read it?  No.  Did I know what it
 4    said?  No.  Have I read it?  No.  I take no position
 5    as to what the Court should do under the
 6    circumstances with that particular motion.
 7              THE COURT:  All right.  Thank you, Mr.
 8    Blackburn.
 9              MR. BLACKBURN:  I have -- can I respond to
10    the Albuquerque Journal article?
11              THE COURT:  You may.
12              MR. BLACKBURN:  The reporter who -- I did
13    not know who the reporter was, because I saw her
14    walking in the hallway for a couple of days --
15    actually, I thought she was the paralegal for the
16    Government -- came up and asked me how it was that a
17    lawyer like me -- no, how it was that my client, who
18    has been in custody, could afford a lawyer like me on
19    this case.  And I said that the case was a death
20    penalty case in the beginning.  I was appointed to
21    that, and I stayed on the case.  That was basically
22    the extent of that.  She asked another question about
23    motions.  And I said, if she wanted to see what the
24    motion was, that she could go online like everybody
25    else and review the -- because I think it was when
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                                      Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 5221

```
1    Mr. Perez was on the stand.  And she had asked me
2    what the motion was about.  I said, You can just go
3    online and look at that, because I -- actually, this
4    was a conversation that took place maybe 15 or 20
5    seconds before we walked into court.  Obviously, we
6    wanted to get back in to be on time.
7            I was a little shocked when my wife opened
8    up the newspaper on Friday morning, or whenever it
9    was, Friday morning, and said, Oh, my gosh, did you
10   see this article?  And she was making more fun of the
11   fact that, out of the all the lawyers in this room,
12   who are great lawyers in this whole state, New Mexico
13   and Colorado and South Carolina, that she picked
14   myself and Ms. Sirignano, for some reason as -- to
15   talk about our reputation.  That made for quite a bit
16   of ribbing at some of the Christmas parties that we
17   went to this weekend, that I would be in that
18   particular article.  So I know that even though my
19   name was mentioned in there, my conversation with her
20   may have lasted 30 seconds at the most.  I did not
21   know who she was.  And actually, I think I gave her
22   card to Ms. Harbour-Valdez, because she knew who she
23   was because she covers this area down here.  But that
24   was the extent of that conversation.  I really
25   haven't read much of that article, other than to see
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5222

```
 1   the one little paragraph in there that mentioned my

 2   name and Ms. Sirignano's name.  So I wanted to report

 3   that to the Court, that because my name was mentioned

 4   in there, that doesn't mean that I was the one who

 5   fed her any information.  That's not true.

 6              THE COURT:  All right.  Thank you

 7   Mr. Blackburn.

 8              MR. BLACKBURN:  Thank you.

 9              THE COURT:  Ms. Jacks?

10              MS. JACKS:  Good morning, Your Honor.

11              THE COURT:  Good morning, Ms. Jacks.  Did

12   you have a chance to look at this Defendants'

13   Suggestion That the Government -- get the exact title

14   here -- Defendants' Suggestion That the Government is

15   More Violent Than Defendants -- did you have a chance

16   to review that document before it was filed?

17              MS. JACKS:  No.

18              THE COURT:  Have any thoughts about it this

19   morning?

20              MS. JACKS:  I don't.

21              THE COURT:  Do you have a position on the

22   Government's motion to strike it?

23              MS. JACKS:  I'll submit.

24              THE COURT:  All right.  Thank you, Ms.

25   Jacks.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5223

1        Mr. Jewkes, if you'll come up to the podium

2   here.  Did you have a chance, Mr. Jewkes, to review

3   this before it was filed?

4        MR. JEWKES:  The motion, no, Your Honor.

5        THE COURT:  I guess it's what Mr. Benjamin

6   has called the response that the Defendants'

7   Suggestion That the Government is More Violent Than

8   Defendants.

9        MR. JEWKES:  I have not reviewed it, Your

10  Honor.

11       THE COURT:  Do you have any thoughts about

12  it this morning?

13       MR. JEWKES:  No, Your Honor.

14       THE COURT:  Any position on whether it

15  should it be stricken or not?

16       MR. JEWKES:  Not having read the response,

17  Your Honor, I take no position.

18       THE COURT:  All right.  Thank you,

19  Mr. Jewkes.

20       Mr. Lowry.  Good morning, Mr. Lowry.

21       MR. LOWRY:  Good morning.

22       THE COURT:  Did you have a chance to review

23  this document before it was filed?

24       MR. LOWRY:  No, I didn't, Your Honor.

25       THE COURT:  Do you have any thoughts about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5224

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 28225

```
 1    it this morning?

 2              MR. LOWRY:  I do, Your Honor.  And I

 3    haven't read the document at all, frankly.  But I

 4    understand the tenor of the conversation this

 5    morning.  But I think it would be appropriate, maybe

 6    at this time for the Court to issue a gag order on

 7    all parties to not talk to the press.  I mean, this

 8    should be litigated in this courtroom, and not in the

 9    media, frankly, is my thought on it.

10              My practice, ever since I had my bar card,

11    has been not to litigate my cases in the media.  And

12    I think it's inappropriate to try to reach, you know,

13    a potential jury pool from either side.  And I think

14    there has been a lot of press in this case.  And I

15    would like to see it, you know, mollified to the

16    degree the parties have control over that.  So that

17    would be my request, Your Honor.

18              THE COURT:  All right.  Do you have a

19    position on the Government's motion that this

20    response should be stricken?

21              MR. LOWRY:  No, I don't, Your Honor.

22              THE COURT:  Thank you, Mr. Lowry.

23              Ms. Duncan, did you have a chance to review

24    this document, this Defendants' Suggestion That the

25    Government is More Violent Than the Defendants before
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5225

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29226

```
 1    it was filed?

 2              MS. DUNCAN:  Your Honor, I did not review

 3    it before it was filed.

 4              THE COURT:  Do you have any thoughts about

 5    it this morning?

 6              MS. DUNCAN:  I've reviewed it now sitting

 7    here in court.  I understand the Court's concerns,

 8    but I also understand Mr. Benjamin's point.

 9              THE COURT:  Well, tell me -- because other

10    than what the title says, but I guess I'm trying to

11    figure out how that is maybe an appropriate response

12    to the Government's motion in limine about personal

13    information of the Government's witnesses.

14              MS. DUNCAN:  I think I understand Mr.

15    Benjamin's point about the Government and many

16    pleadings, including the one about personal

17    information, puts out in the public arena information

18    about our clients that's intended to scare the public

19    and the Court.  And so I see that he was trying to

20    respond to that, because it is unfair.  I understand

21    and share the Court's concern about putting so much

22    information about Mr. Acee in the front of it, but I

23    do --

24              THE COURT:  I mean, is it your sense it was

25    filed in frustration?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5226

```
 1                MS. DUNCAN:  I think that's probably fair.
 2     And also I think to say that these issues need to
 3     sort of be litigated on the law and the facts of this
 4     case, and not on portraying the defendants as these
 5     horribly violent people, for whom special rules
 6     should apply.
 7                So it may not have been drafted as artfully
 8     as Mr. Benjamin would have wanted it to, but I think
 9     that the point is a valid one.
10                THE COURT:  All right.  And your thoughts
11     on the position as to the Government's request that
12     this Defendants' Suggestion That the Government is
13     More Violent Than the Defendants, that -- their
14     motion to strike?
15                MS. DUNCAN:  I mean, I'm a little bit torn
16     between taking no position and opposing.  And I think
17     where I'm torn is I hear Mr. Castellano's point about
18     the media picking up on this motion, and I don't
19     think any of us want that to happen.  But, you know,
20     there has been a lot of negative press about our
21     clients taken from the Government's presentation.  So
22     standing up here right now, Your Honor, I'd have to
23     say I take no position.
24                THE COURT:  All right.  Thank you, Ms.
25     Duncan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5227

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 31228

```
 1              Ms. Sirignano.  Ms. Sirignano, did you have
 2    an opportunity to review this Defendants' Suggestion
 3    That the Government is More Violent Than Defendants
 4    before it was filed?
 5              MS. SIRIGNANO:  I reviewed it about 10
 6    minutes ago, Your Honor, during --
 7              THE COURT:  But not before it was filed?
 8              MS. SIRIGNANO:  No, Your Honor.
 9              THE COURT:  Do you have any thoughts on the
10    Government's request or what we've been talking about
11    this morning?
12              MS. SIRIGNANO:  Your Honor, my only thought
13    is that Mr. Benjamin did what all the defense agreed
14    to, which was to circulate the pleading beforehand to
15    everybody.  And it was.  And no one responded to him
16    during that circulation.  So I take some
17    responsibility for not even looking at the
18    circulation and giving him some feedback on that, as
19    I was preparing, myself, for these hearings.  But we
20    do have a significant amount of trust with each
21    other.  And that was the agreement that we came to.
22              I take no position on the Government's
23    position.  I take no position on that motion, since I
24    just read it, Your Honor.
25              And I'd like to comment on the media.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 5228

```
 1   Similar to Mr. Blackburn, during the break, the
 2   afternoon break -- this Journal reporter was here for
 3   a couple of days.  I didn't know who she was.  I've
 4   never met her before.  Apparently, she was a reporter
 5   on the border, Ms. Harbour-Valdez told me, for
 6   another news outlet.  She approached me, gave me her
 7   business card; you know, asked if I had any comments
 8   about the informant and Mr. Perez on the stand.
 9              And I said I couldn't comment.  Because in
10   Mr. Garcia's drug case, if you recall, we had a
11   gentlemen's agreement, so to speak, with the
12   Government and Mr. Garcia's defense, after I filed
13   the media motion, that we wouldn't talk to the press.
14   And I told her that straight out.  And I said, "I'm
15   sorry I can't talk to you, but, you know, all the
16   pleadings are in the record, and you're welcome to
17   pull up the pleadings."
18              So similar to Mr. Blackburn, I saw the
19   article.  And I was shocked because there were a
20   number of incorrect names.  And Mr. Castellano's name
21   was wrong.  And like Mr. Blackburn, we both got
22   ribbed really good for being two of the best defense
23   attorneys in the state, which I wouldn't agree with,
24   with my colleagues that are here, and from out of the
25   town.  So I was shocked when that article came out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5229

```
 1    I did not disclose one bit of information to that

 2    reporter other than telling her that all the

 3    pleadings were online, Your Honor.

 4              THE COURT:  When you say "media motion,"

 5    what are you referring to?

 6              MS. SIRIGNANO:  If you recall the

 7    15-CR-4275 drug case.  I had filed a motion to bar

 8    extrajudicial statements in that case.  And during

 9    our hearings in the drug case, the parties agreed,

10    and a "gentlepersons' agreement" -- those were your

11    words -- that we would not talk to the media about

12    this case.  And I have not done that, Your Honor.  I

13    have not broken my word with that.  I hope you

14    understand that.

15              THE COURT:  All right.  And do you have a

16    position on the Government's motion to strike?

17              MS. SIRIGNANO:  I have no position, Your

18    Honor.

19              THE COURT:  All right.  Thank you, Ms.

20    Sirignano.

21              Mr. Adams.  And did you have an opportunity

22    to review the Defendants' Suggestion That the

23    Government is More Violent Than Defendants before it

24    was filed?

25              MR. ADAMS:  I had the opportunity.  I did
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5230

```
 1    not read it.  I went back, when this conversation
 2    started this morning -- apparently, it was sent
 3    around on Friday.  I had a lengthy sentencing on
 4    Friday.  I didn't read it.  I should have, and I did
 5    not.
 6              THE COURT:  Do you have any thoughts about
 7    what we've been discussing this morning?
 8              MR. ADAMS:  I do have thoughts on it.  We
 9    have a working agreement among the defense lawyers.
10    And I want to support the defense lawyers in that
11    relationship.  And so the last thing I'd want to do
12    is throw Mr. Benjamin under the bus, when he sent it
13    around and asked us for input, and we didn't give it
14    to him.
15              I would say, if you're inclined to strike
16    it, or think it's an inappropriate filing, I
17    understand where you're coming from.  I think I would
18    ask if it's a friendly alternative, would be to allow
19    us to withdraw it, and either make amendments that we
20    all are participating in, or file it under seal, or
21    do something else, so that the thrust of what his
22    verbal statements to you on why he believed it was
23    relevant, that matter could still be pursued as he
24    sees fit.
25              THE COURT:  All right.  Thank you, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5231

1    Adams.

2            MR. ADAMS:  Thank you.

3            THE COURT:  Mr. Maynard, did you have a

4    chance to review this before it was filed?

5            MR. MAYNARD:  I believe I had an

6    opportunity, Your Honor, but I didn't get around to

7    it.

8            THE COURT:  All right.  And any thoughts

9    about what we've been discussing this morning?

10           MR. MAYNARD:  Not any additional thoughts.

11   I understand -- I think it was done in part out of

12   the frustration.  The pleadings of the Government

13   have been implying that the defendants are dangerous

14   on an ongoing basis.  And I think counsel for the

15   defense has been feeling that's been exaggerated and

16   unfair.  And, of course, now the Government is

17   feeling offended.

18           And so, in any case, I have nothing really

19   additional to add.

20           THE COURT:  Do you take a position on their

21   request that it be struck, or --

22           MR. MAYNARD:  Well, basically, I kind of

23   agree with Mr. Adams' position, that perhaps in lieu

24   of that, an opportunity to withdraw and amend.

25           THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5232

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36

```
 1    Maynard.
 2              Ms. Bhalla?  Did you have a chance to
 3    review the Defendants' Suggestion That the Government
 4    is More Violent Than Defendants before it was filed?
 5              MS. BHALLA:  No, Your Honor, I did not.
 6              THE COURT:  And do you have any thoughts
 7    about what we've been discussing this morning?
 8              MS. BHALLA:  I do, Your Honor.  I think
 9    that I'm of a similar mind of Ms. Duncan.  I
10    understand why it was done.  And I understand the
11    sympathy.  My brother is a creative writer.  I think
12    he would have liked it.  I don't know that that --
13    you know, I understand the sentiment and I understand
14    why he did it, and I certainly want to support him in
15    that.
16              I do think, though -- I mean, I'm sort of
17    anticipating the Court's next question -- that
18    perhaps filing it under seal may be appropriate, or
19    some other remedy.
20              THE COURT:  You oppose the motion to
21    strike?
22              MS. BHALLA:  I don't know that I oppose it,
23    but I think there are other ways to deal with it,
24    Your Honor.
25              THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5233

```
 1              MS. BHALLA:  And if I may --

 2              THE COURT:  You may.

 3              MS. BHALLA:  Your Honor, I wanted to put a

 4    little something on the record about the media.  We

 5    had talked as a group about dealing with that in a

 6    motion in limine.  And I contacted Mr. Beck about

 7    their position on that, so that we didn't have to

 8    file unnecessary motions.  And I think we all sort of

 9    came to a gentlemen's agreement on that issue.

10              And I was a little late in sharing that

11    agreement with everyone.  I think I sent it out -- I

12    think seeing the article, I was like, Oh, my gosh, I

13    need to send that out so everybody knows.  I

14    certainly don't think that anyone has violated that

15    agreement, based on the conversations we had today.

16    But I did want to put that on the record that I had

17    that conversation with the Government.  And I think

18    we are all willing to do that and willing to continue

19    doing that, Your Honor.

20              THE COURT:  Thank you, Ms. Bhalla.

21              Ms. Fox-Young.  And did you read the

22    Defendants' Suggestion That the Government is More

23    Violent Than Defendants before it was filed?

24              MS. FOX-YOUNG:  Good morning, Your Honor.

25    I did not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5234

```
 1            THE COURT:  Do you have any thoughts about
 2   what they've been discussing this morning?
 3            MS. FOX-YOUNG:  Your Honor, I know the
 4   Court's going to ask me if I oppose a motion to
 5   strike this pleading.  I think I do.  And I think a
 6   better remedy would be to seal it.  And I wouldn't
 7   oppose sealing it.  I think there is a lot of
 8   inflammatory, personal, sensitive information in this
 9   case.  And the parties -- one way that we've been
10   able to deal with that is to agree to seal pleadings,
11   or for the Court to intervene and seal pleadings.
12            THE COURT:  All right.  Thank you, Ms.
13   Fox-Young.
14            MS. FOX-YOUNG:  Just one further comment on
15   the issue of the press.  The Court is well aware that
16   this is a public courtroom, and we'll have a public
17   trial.  I don't think that the parties can do
18   anything to control access to the courtroom by the
19   press.  And I don't know what the Court has in mind.
20   But, you know, this is something that we're going to
21   have to deal with.  And I hope that the Court doesn't
22   think that the mere appearance of an article or any
23   press coverage of this case is an indication that the
24   defense has done something to inspire it.  You know,
25   I think we're going to deal with this in the coming
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5235

1    weeks, and we'll probably see reporters in here.  So

2    that's just a consequence of having a public trial.

3              THE COURT:  All right.  Thank you, Ms.

4    Fox-Young.

5              MS. FOX-YOUNG:  Thank you, Judge.

6              THE COURT:  Mr. Roberts?  I guess it will

7    be Ms. Torraco.  But she didn't sign it, so I'll move

8    on.

9              Ms. Arellanes, did you review the

10   Defendants' Suggestion That the Government is More

11   Violent Than Defendants before it was filed?

12             MS. ARELLANES:  Not before it was filed,

13   Your Honor.  I had read it last night.

14             THE COURT:  Do you have any thoughts about

15   what we've been talking about this morning?

16             MS. ARELLANES:  Judge, I thought the motion

17   was a little bit over the top but I would suggest --

18             THE COURT:  The motion or the defendants'

19   suggestion?

20             MS. ARELLANES:  The motion.

21             THE COURT:  The Government's motion.

22             MS. ARELLANES:  I beg your pardon?

23             THE COURT:  The Government's motion in

24   limine?

25             MS. ARELLANES:  No, the defendants' motion,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5236

```
 1    I'm sorry, was a little bit over the top.  What I
 2    would suggest to the Court -- I would echo Mr. Adams'
 3    suggestion, and that is to amend, and maybe perhaps
 4    more artfully address the issue.
 5                THE COURT:  All right, and -- okay.  Thank
 6    you, Ms. Arellanes.
 7                MS. ARELLANES:  Thank you, Your Honor.
 8                THE COURT:  Mr. Castellano, I'll give you
 9    the final word on your motion.
10                MR. CASTELLANO:  Related to my motion, a
11    number of people have referred to page 2 of our
12    motion which refers to Anthony Baca discussing the
13    murder of the cooperators' family, as well as finding
14    public officials' addresses.  That was actually
15    already public record from the James hearing.  Those
16    are statements already brought out.  That was not
17    additional information we filed in the pleading.  So
18    I need to make that point.
19                Related to the article, I read it briefly.
20    I saw there was a lot of inaccuracies in there.  We
21    had nothing to do with it.  And when I read it, I
22    didn't suspect that any of the defense team had
23    anything to do with it.  I thought it was a reporter
24    who just really didn't get it right at all, because
25    of all the inaccuracies in there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5237

```
 1              But related to the motion, I would just ask
 2     that it be stricken.  If they want to file a separate
 3     response, that's fine.  But I just -- I would prefer
 4     very much that it not be on the docket, and not be
 5     accessible, especially by the press, given the
 6     contents of the document.
 7              THE COURT:  There has been a number of
 8     suggestions by some of the lawyers on behalf of some
 9     of the clients that it be sealed rather than
10     stricken.  Would that satisfy the Government?
11              MR. CASTELLANO:  Yes, if the Court is not
12     going to strike the pleading, that would be a viable
13     alternative, because then, once again, it would be
14     off the public record and away from the press.  I do
15     have my first preference, but that would be an
16     acceptable second choice.
17              Thank you, Your Honor.
18              THE COURT:  All right.  Thank you, Mr.
19     Castellano.
20              Mr. Benjamin.
21              MR. BENJAMIN:  Your Honor -- and I've
22     heard -- as I stood here in front of the Court
23     earlier and told the Court that I didn't think I
24     wasn't conveying things very well -- I've heard many
25     people articulate things much more eloquently than I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5238

1    can.  And I guess I need to tell the Court that,

2    obviously, I think the Court appears bothered by the

3    title of the motion -- or the response.  I can

4    understand that, Your Honor.  But I do think a very

5    valid suggestion is because I don't have any desire

6    in this -- my goal in this response was not to have

7    this attract press or attract attention that way.  So

8    I guess I would move to seal -- essentially, I think

9    you have to seal the motion and the response -- but I

10   would move to seal that.  I think that, if I'm

11   understanding the Government's position correctly,

12   that would seal or would -- excuse me, I'm

13   tongue-tied -- that would end their concern about it

14   being public record.

15          My issue is not that it become public

16   record so much as my issue was raising what I believe

17   have been the characterizations.  And so, you know,

18   to the extent that the Court may have changed its

19   opinion of me based upon that writing, I apologize to

20   the Court and the Government, Your Honor.  And I also

21   take full responsibility, Your Honor, for the

22   drafting of that, and also attaching everybody else.

23          Thank you, Your Honor.

24          THE COURT:  Thank you, Mr. Benjamin.

25          MR. BENJAMIN:  Yes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5239

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43

```
 1                THE COURT:  Anything further, Mr.
 2    Castellano?
 3                MR. CASTELLANO:  No, Your Honor.
 4                THE COURT:  Who just got on the phone?
 5    There was somebody that came on the phone.  Who just
 6    got on?
 7                THE CLERK:  It's K'Aun, Judge.
 8                THE COURT:  All right.  Good morning to
 9    you, Ms. Wild.
10                THE CLERK:  Good morning.
11                THE COURT:  Let me ask across the board:
12    Do any of the defendants oppose sealing this
13    document?  Not hearing anybody, I'll assume that no
14    defendants, including all the defendants and lawyers
15    that actually joined this motion, do not oppose
16    sealing it.
17                How do you feel, Mr. Castellano, about Mr.
18    Benjamin's request that the Government's motion also
19    be sealed on this; that the pleadings on both sides
20    of this be sealed?
21                MR. CASTELLANO:  I think it's fine, Your
22    Honor.  It's already a resolved issue in this case.
23    There is no objection to that.
24                THE COURT:  All right.  So that I am as
25    evenhanded as I can be here, I will seal both -- what
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  I thing is 1520 -- is that your motion, Mr.
 2  Castellano?
 3          MR. CASTELLANO:  It is, Your Honor.
 4          THE COURT:  So 1520 and 1586 will be
 5  sealed.  And the reason I do that is because I think,
 6  as we get a little closer to trial, maybe we don't
 7  need some of this information being reported in the
 8  press.  I think it will make it harder for everybody
 9  to try it.  It is part of the record.  And we'll
10  leave it there.  But we won't necessarily have it
11  floating around, making it more difficult to try the
12  case.
13          Let's just be careful.  I mean, this is
14  going to be a difficult month for everybody.  They're
15  going to get frustrated.  There is going to be
16  feelings that, you know, because somebody does this,
17  I've got to do this in response.  I think, by and
18  large, y'all have been pretty good about avoiding
19  that, and trying to avoid it.  It's very difficult in
20  a case like this for there to be moral equivalency on
21  both sides.  We all know in our system the Government
22  gets to charge people with crimes.  And we know
23  that's a very serious thing.  They have a lot of
24  responsibilities when they do that.  As a result, we
25  put a lot of bennies and benefits on the defendants'

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5241

```
 1   side to try to make sure that the charges are
 2   resolved as fairly and impartially as we possibly
 3   can.  I think everybody in the room is aware that
 4   we've got to pick a jury here in about 39 days.  And
 5   I don't think it's in any of us' benefit to make that
 6   job more difficult for anybody.  I don't think
 7   anybody gains anything.  The Court doesn't get
 8   anything out of it by making it more difficult.  And
 9   the Government doesn't gain anything.  They're
10   wanting to get this thing to trial.  So they don't
11   gain anything and, I don't think the defendants gain
12   anything by getting stuff in the press.  As the
13   article that's there, I mean, you know, talking about
14   some of the testimony from last week, I don't think
15   that helps the defendants.
16          So, you know, we've got a little issue here
17   we've dealt with, and we'll move on.  But just give
18   some thought about everything you write and
19   everything you say, be it in the courtroom, outside
20   of the courtroom, that we've all got to work together
21   to get this thing to a resolution, and we can do
22   things that make it more difficult, or we can do some
23   things and check our frustrations and make sure that
24   what we're responding to is really responsive to the
25   briefing, rather than not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5242

```
 1            When I read the response, I was surprised
 2   by it.  I kept thinking that maybe there was
 3   something that I was missing, because I couldn't
 4   figure out how it responded.  Then, when we discussed
 5   the motion in limine in here, we came to a resolution
 6   so quickly.  And when I reread the response, I still
 7   had a hard time figuring out how it responded to the
 8   motion.  And so just be careful in the sense that --
 9   try to help the Court do its job.  If I read
10   things -- and I do try to work very hard to read
11   everything and make sure I'm prepared -- that it's
12   helpful to the Court.  It's really helping the Court
13   make a decision rather than it just being information
14   that:  If they're going to slander me, I'm going to
15   slander them.
16            It's hard in these sort of cases for there
17   to be moral equivalency.  It's just the nature of the
18   proceedings.  So I think we have to sort of check
19   those impulses and be very careful.  So I'll deny the
20   Government's motion to strike, but pursuant to the
21   stipulation of the parties, the motion and the
22   response will be placed under seal.
23            There was some suggestion of a gag order.
24   I guess I am always reluctant to place gag orders in
25   place.  There is a First Amendment in this country.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5243

 1   And there is a lot about this case already in the

 2   press.  So unless somebody wants to really go down

 3   that path, I would suggest we not.  But if that's

 4   where y'all want to go, then I'll certainly entertain

 5   a formal motion on that and not prejudge it.  There

 6   does seem to be some discussion among the parties

 7   that at this point going forward, there will be no

 8   discussions with the press.  And, perhaps, it would

 9   be useful to see if there is a gentlemen's and

10   gentleladies' agreement among the counsel that

11   they're not going to talk to the press.  And if there

12   is, that might be useful to put on the agreement.  As

13   I've indicated, I will enforce stipulations among the

14   parties.

15           Mr. Castellano, what's the Government's

16   thoughts on that?

17           MR. CASTELLANO:  We would agree to that,

18   Your Honor.

19           THE COURT:  The defendants, some brought it

20   up, some suggested it; is there any defendant,

21   defendant's lawyers, defendant's counsel that are not

22   here, or they're here, that you know of, that would

23   not agree to such a stipulation?

24           All right.  I'm going to take that that

25   there is now an agreement in this case, 39 days out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5244

```
 1    from the trial, that there will be no discussion
 2    among the lawyers or parties with the press.  So that
 3    will be an agreement among the parties, and I'll
 4    certainly enforce that.  If we're challenged by that
 5    on the press, then we'll deal with it at that time.
 6    But I think at the present time it's agreement among
 7    the parties.
 8              MR. CASTLE:  Your Honor, this is Jim
 9    Castle.  I'm wondering if I could make a couple of
10    comments.
11              THE COURT:  Certainly, Mr. Castle.
12              MR. CASTLE:  Yes.  First of all, now that
13    I've had an opportunity to review the motion by Mr.
14    Benjamin, my only comment is that my name is on that
15    motion, and so I'm as responsible for it as -- even
16    more responsible for Mr. Benjamin, because it was
17    myself and a couple of others who suggested we divvy
18    up motions.  So if there is any fault to be laid, I
19    want the Court to know that I accept that
20    responsibility.
21              But the second matter I'd like to bring up
22    is we're about to go into motions in limine
23    concerning our clients' alleged bad acts.  And in
24    that -- in those pleadings, the prosecution has set
25    forth a litany of bad acts, ranging from the minor to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5245

 1   grand.  And I don't believe those are sealed.  And in
 2   the interests of having a fair trial for the
 3   defendants, as well as the Government, I believe
 4   those responses, if they're not suppressed from
 5   public view, should be at this time.
 6          THE COURT:  Well, I'm getting concerned
 7   here.  These are public proceedings.  And I have
 8   resisted everything being filed under seal.  I'm just
 9   going to leave the two documents we talked about
10   unsealed; just hope that the press is not interested
11   in the one that was filed.  But I'm not going to sit
12   here and start sealing stuff that -- keeping from the
13   press the information.  So if y'all want to talk
14   about it afterwards -- but I think to start just
15   sealing stuff willy-nilly, where we are in this case,
16   I'm reluctant to do it.
17          So I'm going to deny the request to seal
18   documents that have been filed publicly.  I'm going
19   to deny the request to strike.  I'm going to deny the
20   request to file under seal.  And we're just going to
21   move on with the case.
22          All right.  Did you have anything, Mr.
23   Blackburn?
24          MR. BLACKBURN:  Just briefly, Your Honor.
25   I've spoken to Mr. Castellano, and I think it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    important that all of the defendants and the lawyers

 2    meet to discuss this; not that we have any issue with

 3    the semi gag order.  But, you know, it puts us in a

 4    bad position, as you well know, when somebody from

 5    the press comes up and says:  What about this?  Are

 6    you taking -- when is this motion going to be heard?

 7    So I think that we sort of agree that there shouldn't

 8    be any comment on any substantive matter.  But we

 9    would like to formulate that with the Government, and

10    also maybe formulate how we would deal with these

11    issues that we're talking about this morning, if we

12    can agree as to something as to those motions,

13    whether they be sealed or otherwise.

14            So we agree -- I mean everybody in this

15    room has done enough of these trials to know not to

16    comment on any substantive matters.  But at the same

17    time, we want to formulate that and make clear that

18    everybody on the defense side knows that, and come to

19    an agreement with the Government.  Does the Court

20    understand what I'm trying to get at?

21            THE COURT:  Do you agree with that, Mr.

22    Castellano?  You'll work on an agreement before we

23    put one together this morning?

24            MR. CASTELLANO:  Yes, Your Honor.

25            THE COURT:  Anybody have any disagreement
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE



DNM 5247

```
 1   with that?  Mr. Cooper?

 2            MR. COOPER:  No, Your Honor.

 3            THE COURT:  Mr. Adams.

 4            MR. ADAMS:  No, sir, Your Honor.

 5            THE COURT:  All right.  Are we ready to

 6   take up the FBI agent for his testimony or her

 7   testimony?

 8            MR. BECK:  Your Honor, the United States

 9   asks the Court to consider reconsidering the motion

10   to strike.  I think the Court is right to point out

11   that that does not respond to a motion.  What I glean

12   from that is that they don't oppose our motion in

13   limine to not get into personal information about

14   witnesses.  And I think a proper response would be

15   that:  They don't oppose that.

16            THE COURT:  I'll think about it.  But at

17   this point, I'm not granting the Government's

18   request.

19            All right.  Do you have your witness on the

20   motion to suppress Eric Duran's recordings?

21            MR. BECK:  Yes, Your Honor.

22            MR. CASTELLANO:  The witness will be

23   Special Agent Brusuelas with the FBI.

24            THE COURT:  Ms. Brusuelas, if you'll come

25   up and stand next to the witness box on my right,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5248

```
 1   your left.  Before you're seated --
 2              MS. HARBOUR-VALDEZ:  Your Honor, is this
 3   1325 or 1328?
 4              MS. DUNCAN:  1325, which is our motion to
 5   suppress Eric Duran's testimony and statements.
 6              THE COURT:  All right.  If you'll raise
 7   your right hand.  Before you're seated, my courtroom
 8   deputy, Ms. Standridge, will swear you in.
 9                    KATHERINE BRUSUELAS,
10         after having been first duly sworn under oath,
11         was questioned and testified as follows:
12                    DIRECT EXAMINATION
13              THE CLERK:  Please be seated.  State and
14   spell your name for the record.
15              THE WITNESS:  My name is Katherine
16   Brusuelas, K-A-T-H-E-R-I-N-E.  Brusuelas is
17   B-R-U-S-U-E-L-A-S.
18              THE COURT:  Ms. Brusuelas, Mr. Castellano.
19              MR. CASTELLANO:  Thank you, Your Honor.
20              THE COURT:  Let me ask, on this particular
21   motion there was some debate in the motion itself as
22   to who had the burden of proof.  I didn't quite
23   understand Mr. Baca's response.  Are you in
24   agreement, Ms. Duncan, that on this motion the
25   defendant has the burden of proving that a third
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    party's statements and actions were involuntary?

2           MS. DUNCAN:  Yes, Your Honor.  I think that

3    there are two different issues.  There is -- one is

4    are Eric Duran's statements and his testimony

5    involuntary?  On that, I do believe that the Tenth

6    Circuit law is that the defense bears that burden.

7           The second question is whether Mr. Duran's

8    decision to record -- consensually record statements

9    is voluntary.  And my understanding of Tenth Circuit

10   law is that the burden is on the Government to make

11   that showing.

12          THE COURT:  Do you agree with that, Mr.

13   Castellano?

14          MR. CASTELLANO:  I think so, is my best

15   answer.  I'm looking at the Dowell case.  It's 430 F.

16   3d 1100, 2005, Tenth Circuit.

17          THE COURT:  If the question is what -- if

18   you're saying that the Government has the burden of

19   proof of showing that Mr. Duran's actions in

20   recording Mr. Baca, that the Government has to prove

21   those were voluntary, what burden are you assuming on

22   behalf of Mr. Baca?

23          MS. DUNCAN:  So my understanding is that

24   because Mr. Duran's statements to law enforcement --

25   so, for example, Agent Brusuelas participated in an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5250

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 54

 1   interview with Mr. Duran in February of 2015.  So our

 2   argument is that those statements were coerced, and

 3   that his statements after that, continuing to his

 4   trial testimony, are coerced.  And it's my

 5   understanding because Mr. Duran is not a defendant,

 6   that we bear the burden of showing that those

 7   statements and testimony are coerced.

 8          THE COURT:  So you're assuming the burden

 9   on his statements, but on his actions in recording,

10   you think that remains with the Government?

11          MS. DUNCAN:  That's correct.  I think

12   that's what the cases hold.

13          THE COURT:  And you're uncertain of that?

14          MR. CASTELLANO:  I'm not sure I agree with

15   that, Your Honor.  I'm look at the Dowell case.  And

16   I do agree, if we're introducing the defendant's

17   statement, we have to establish voluntariness.

18          THE COURT:  I think they're agreeing that

19   on the statements of Mr. Duran they bear the burden.

20   The only burden that they're saying remains or is

21   shifted or with the Government is the one on whether

22   Mr. Duran's actions in recording Mr. Baca were

23   voluntary.

24          MR. CASTELLANO:  I think we're going to

25   establish that they were voluntary.  But I'm still

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5251

1    not convinced that that's the burden.  In the Dowell

2    case, the defendant failed to meet the burden of

3    presenting sufficient evidence to create a serious

4    factual dispute, suggesting that Sherman's confession

5    to police was involuntary.  And when a defendant

6    makes a motion to exclude coerced testimony of a

7    third party on due process grounds, the burden of

8    proving improper coercion is upon the defendants.  So

9    actually two things happen.  One is what happened at

10   the time, and the other is actually what happens at

11   trial.  Is the person's testimony at trial coerced or

12   not?  And, of course, we won't get there until trial.

13   But --

14           THE COURT:  But you have no problem

15   proceeding first with your evidence?

16           MR. CASTELLANO:  No, no problem at all,

17   Your Honor.  We had Agent Brusuelas here, so we

18   figured we'd put her on.  So we are prepared to go

19   first.

20           THE COURT:  All right.  Mr. Castellano.

21           MR. CASTELLANO:  And, Your Honor, in terms

22   of marking exhibits, are we going to ahead and

23   start --

24           THE COURT:  We're starting with a new

25   motion.  Unless anything is being pulled over into

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5252

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 56

```
 1   this one, let's keep it separate.  So why don't you
 2   start with Government's Exhibit 1 unless there is
 3   something, some other hearing that I need to look at
 4   for this motion.
 5            MR. CASTELLANO:  We're fine.  We'll start
 6   with Government's Exhibit 1 this morning.
 7                          EXAMINATION
 8   BY MR. CASTELLANO:
 9        Q.   Good morning.
10        A.   Good morning.
11        Q.   How are you employed?
12        A.   I am currently a Special Agent with the
13   Federal Bureau of Investigations.
14        Q.   How long have you been a Special Agent?
15        A.   A little over 21 years.
16        Q.   And let me take you back to February 25 of
17   2015.  What were your responsibilities during that
18   timeframe?
19        A.   I was assigned to work gangs and drugs.
20   And I was also assigned to work a new prison
21   initiative that the FBI was starting up.
22        Q.   What were your responsibilities related to
23   that initiative?
24        A.   I would go to the different Department of
25   Corrections facilities in Albuquerque and speak with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1  them.  I would go up to the Santa Fe -- the PNM
 2  facility once to twice a week.
 3       Q.   For what purpose?
 4       A.   I would work with the STIU investigators up
 5  there.  And I would investigate any drugs and things
 6  that were being brought into the prison by corrupt
 7  guards or inmates that were willing to cooperate, or
 8  just things that were happening in the prison.
 9       Q.   I want to ask you if on February 25 --
10  excuse me, February 19, 2015, you met with someone
11  named Eric Duran?
12       A.   Yes.
13       Q.   How is it that you came to meet him?
14       A.   Captain Sapien had come to me, at least a
15  week or so prior to that date, and informed me that
16  there was an individual in the facility that wanted
17  to come forward and cooperate on unsolved homicides
18  and different drugs and things, large volume of drug
19  dealing throughout the Albuquerque area.
20       Q.   You mentioned the call happened
21  approximately a week prior to your meeting.  What
22  explains the gap, or what took you that amount of
23  time to meet Mr. Duran?
24       A.   The logistics.  We had to find a facility
25  where we could do the interview and get him

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5254

```
 1   transported to that facility.  And I was also having

 2   other detectives sit in on the interview who might be

 3   familiar with the different homicides.

 4        Q.   Do you know if the interview was recorded?

 5        A.   Yes, it was.

 6        Q.   And was a transcript made from that

 7   recording?

 8        A.   Yes.

 9             MR. CASTELLANO:  May I approach the

10   witness, Your Honor?

11             THE COURT:  You may.

12        Q.   Agent Brusuelas, I'm handing you what's

13   been marked for identification as Government's

14   Exhibit 1.

15        A.   Okay.

16        Q.   Do you recognize that exhibit?

17        A.   Yes.

18        Q.   Is that a transcript of at least part of

19   that conversation?

20        A.   Yes.

21             MR. CASTELLANO:  Your Honor, I'd move the

22   admission of Government's Exhibit 1.

23             THE COURT:  Any objection, Ms. Duncan?

24             MS. DUNCAN:  Your Honor, I have no

25   objection.  I would note for the record that this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5255

```
 1    transcript is incomplete.  But we will be adding --
 2    it doesn't capture about 35 minutes of the interview.
 3    So we'll be submitting a more full transcript later
 4    in these proceedings.
 5            THE COURT:  All right.  Thank you,
 6    Ms. Duncan.
 7            Anybody else have any objection to
 8    Government's Exhibit 1?
 9            MS. JACKS:  No.  Just for the record, could
10    we have the Bates stamp number?
11            MR. CASTELLANO:  Yes, it's 31520 of DeLeon.
12            THE COURT:  Any other objection, comments?
13    Government's Exhibit 1, not hearing any objection,
14    will be admitted into evidence.
15    BY MR. CASTELLANO:
16        Q.   Agent Brusuelas, I would introduce the
17    exhibit, but for purposes of your testimony I'm going
18    to talk about a highlighted version of that exhibit
19    for ease of your testimony.  But as part of your
20    meeting with Mr. Duran, how was it that you were
21    introduced to him?
22        A.   Captain Sapien introduced us as an
23    individual who had information that wanted to come
24    forward and provide that information to the FBI.
25        Q.   I'm showing you the first page of that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5256

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 60

 1    document.  It's page 31520.  Do you recall discussion

 2    about Mr. Duran's motivation for being there at the

 3    meeting?

 4         A.   Yes.

 5         Q.   Was there any indication to you by him that

 6    he was in any type of trouble?

 7         A.   No.

 8         Q.   And, basically, what was his motivation for

 9    being there?

10         A.   His motivation -- when he was asked early

11    on in the interview, he informed that he felt it was

12    part of his rehabilitation; that he needed to come

13    forward and cooperate.  There were a lot of bad

14    people out there that were getting away with murder.

15    And he wanted to help and do his part.  He felt like

16    he had taken so much from the community, and now he

17    wanted to give back.  And he also had a trust for the

18    STIU investigators, both Investigator Cupit and

19    Captain Sapien.

20         Q.   I'm showing you page 31521.  There is

21    mention of someone named Anthony Baca?

22         A.   Yes.

23         Q.   Did you know that name when you met with

24    Mr. Duran?

25         A.   Yes, I did.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5258

```
 1          Q.   How did you know that name?

 2          A.   From prior investigations.

 3          Q.   And what was your recollection of what you

 4   knew about Mr. Baca at that point in time?

 5          A.   He was one of the leaders of the prison

 6   gang, SNM.

 7          Q.   And did Mr. Duran discuss other members or

 8   leaders of the gang?

 9          A.   Yes, he did.

10          Q.   And you mentioned a discussion of murders.

11   I'm showing you page 31526, and there is the name

12   Javier Molina on that page.  Do you recall that

13   discussion?

14          A.   Yes.

15          Q.   Now, before this time, did you know

16   anything about the Javier Molina murder?

17          A.   I did not.

18          Q.   So who was the information coming from at

19   that point in time?

20          A.   Mr. Duran.

21          Q.   And do you see where he says that Mr. Baca

22   called it?

23          A.   Yes.

24          Q.   For what reason?

25          A.   For Molina's cooperation with law
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5258

```
 1    enforcement prior.
 2         Q.   I'm showing you page 31527.  Do you see
 3    there an indication of how the paperwork traveled in
 4    this case?
 5         A.   Yes.
 6         Q.   How did that happen?
 7         A.   The paperwork came from Santa Fe from an
 8    individual named David Calbert, and it went down to
 9    this facility in Las Cruces.
10         Q.   Turning to page 53128 of that exhibit.
11    I've also highlighted a portion here.  Was Mr. Duran
12    able to lay out more of the murder and some of the
13    other participants in that murder?
14         A.   Yes, he was.
15         Q.   And looks like it may be misspelled, but
16    there is a person identified as Archie?
17         A.   Yes.
18         Q.   And do you see the name "Dan Dan" there?
19         A.   Yes.
20         Q.   At that point in time did you know who "Dan
21    Dan" was?
22         A.   I did not.
23         Q.   What about the person named Mario?
24         A.   I did not.
25         Q.   And how about Jerry Armenta?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 63

```
 1          A.   I did not.

 2          Q.   So from what you recalled, did you mention

 3     these names first or did Mr. Duran?

 4          A.   Mr. Duran.

 5          Q.   Do you recall him -- this is page 31532 --

 6     do you recall him discussing the murder of someone

 7     named Freddie Sanchez or "Fred Dog"?

 8          A.   Yes.

 9          Q.   And was Mr. Duran able to tell you who he

10     believed called that murder?

11          A.   Yes.

12          Q.   Who was that person?

13          A.   Arturo Garcia.

14          Q.   And the same question regarding this

15     murder.  Did you know anything about this one

16     beforehand?

17          A.   I did not.

18          Q.   Did Mr. Duran further explain to you who

19     else was involved with this murder?

20          A.   Yes, he did.

21          Q.   Do you see the name Benjamin Clark there?

22          A.   Yes.

23          Q.   What was his explanation of what happened

24     with Mr. Clark's involvement?

25          A.   Mr. Clark, I believe, was the one that was
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5260

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5261

64

```
1    supposed to enforce that it occurred.

2         Q.   And on page 31536 of this exhibit, there is

3    a question about who actually killed Freddie.  Do you

4    see what Mr. Duran's response was?

5         A.   Yes.

6         Q.   Who was that?

7         A.   "Wino."

8         Q.   And did you know who "Wino" was at that

9    point?

10        A.   I did not.

11        Q.   And do you see any other name tied to the

12   name "Wino"?

13        A.   Yes.

14        Q.   Who was that person?

15        A.   That would be Alonso.

16        Q.   And what about discussion of another person

17   involved with the Freddie Sanchez murders?

18        A.   Yes, he gave the name Edward Troup.

19        Q.   And, ultimately, did someone ask him how he

20   actually knew this information?

21        A.   Yes.

22        Q.   What was Mr. Duran's response to how he

23   knew this?

24        A.   He was present when Arturo gave the hit.

25        Q.   Do you remember discussion of a person
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5261

```
 1    named Sammy Chavez?

 2         A.   Yes.

 3         Q.   Did you know anything about that person

 4    before your discussions with Mr. Duran?

 5         A.   I did not.

 6         Q.   And do you see the name there of who he

 7    believed called that hit as well?

 8         A.   Yes.

 9         Q.   Who was that person?

10         A.   That was also Arturo.

11         Q.   Do you remember discussions of

12    Mr. Santistevan or Mr. Marcantel?

13         A.   Yes.

14         Q.   At that point in time, did you know who

15    either of those people were?

16         A.   I did.

17         Q.   Who was your understanding of who

18    Mr. Santistevan was?

19         A.   Mr. Santistevan was -- he worked for the

20    Department of Corrections.  He was actually one of

21    the supervisors that was head of the STIU.

22         Q.   What about Mr. Marcantel?

23         A.   Yes, Mr. Marcantel was the main guy over

24    there.

25         Q.   And what did Mr. Cordova (sic) explain to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5262

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 66

 1   you about the way "Pup," or Mr. Baca, the way he felt

 2   about those people?

 3        A.   He said he hated them, hated both of them.

 4             THE REPORTER:  Did you mean to say Mr.

 5   Cordova?

 6             MR. CASTELLANO:  Mr. Duran, excuse me.

 7        Q.   And so at that point was it your

 8   understanding that there was some sort of threat to

 9   either Mr. Marcantel or Mr. Santistevan?

10        A.   Yes.

11        Q.   At that point in time, did Mr. Duran tell

12   you approximately how much time he had left in

13   prison?

14        A.   He had approximately two years.

15        Q.   Did Mr. Duran discuss narcotics

16   trafficking?

17        A.   Yes, he did.

18        Q.   And how would he describe himself as a

19   narcotics trafficker?

20        A.   Mr. Duran had received a settlement, a

21   large amount of money, and he was able to purchase

22   large quantities of narcotics.  So he said he had a

23   very good reputation for being a money man and being

24   a businessman, and he had lots of contacts that sold

25   large quantities of narcotics.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Did he show an interest in cooperating

2    either against the SNM Gang or against other drug

3    dealers?

4      A.   Yes, he did.  He wanted to cooperate both

5    while he was in prison, and then once he was

6    released, when he was out on the streets.

7      Q.   Let me show you another indication on page

8    31554 about Mr. Duran's discussions about whether he

9    was in trouble, or thought was in trouble?

10      A.   Yes, several times throughout the

11    interview, he had mentioned that a lot of people do

12    come forward when they're in trouble.  But he was not

13    in trouble, so he was coming forward because he

14    wanted to.  He wanted to have a long-term working

15    relationship with us.

16      Q.   And on page 31555, there is a discussion

17    about Mr. Duran having written a note?

18      A.   Yes.

19      Q.   What did you know about that note?

20      A.   My understanding is there were a couple

21    notes written.  One was to Captain Sapien informing

22    him that he wanted to cooperate with the FBI.  And

23    then he began to draft another note to the FBI about

24    cooperation he wanted to help with.  But when they

25    did a search of the different cells, that note was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5264

1    recovered and taken with all his property.

2         Q.   Did you ever see any of those notes?

3         A.   I did not.

4         Q.   Were you ever contacted because he had

5    written one of those notes?

6         A.   Yes.

7         Q.   Is that the contact that got you to the

8    prison in the first place?

9         A.   Yes.

10        Q.   And about how long before this meeting were

11   you notified that Mr. Duran wanted to meet with you?

12        A.   It was several weeks before we actually

13   met.

14        Q.   On page 31557 of that exhibit, do you see

15   there is discussion of a cellphone here?

16        A.   Yes.

17        Q.   Was it your understanding that a cellphone

18   had been confiscated from Mr. Duran?

19        A.   Yes.

20        Q.   And at this point did it appear that

21   Captain Sapien had any information about whether or

22   not Mr. Duran had been sanctioned for that?

23        A.   No, he was not aware of it.

24        Q.   On page 31558, I've highlighted a portion

25   here.  What was Mr. Duran explaining to you about the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    various roles of the various players in the Molina
 2    murder?
 3         A.   He was describing which individuals, what
 4    his participation was, who had the shanks, and who
 5    did what.
 6         Q.   And do you see any discussion about cameras
 7    here at the bottom of that paragraph?
 8         A.   Yes.
 9         Q.   What was the discussion about the cameras?
10         A.   The cameras were supposed to be covered
11    during the time that the murder took place.
12         Q.   And were they?
13         A.   No, they were not.
14         Q.   On page 31566, there is a discussion about
15    Mr. Duran's property, including his television.  What
16    can you tell us about that part of conversation?
17         A.   Mr. Duran was hoping that by his
18    cooperation he might be able to get commissary again,
19    and maybe get back some of his property.  This
20    discussion here was -- he didn't -- he wasn't asking
21    for TVs or any other kind of electronics or anything.
22    And he wanted a lot of that stuff withheld so it
23    would look like he was still in some type of trouble.
24         Q.   Now, when you met with Mr. Duran, was there
25    any discussion of an incident he had with a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5266

 1    corrections officer the day before?

 2         A.   No, there was not.

 3         Q.   Was there an indication that he might be

 4    sanctioned for whatever happened the day before?

 5         A.   No.

 6         Q.   Did you know what happened the day before?

 7         A.   No.

 8         Q.   Did anyone there discuss what happened the

 9    day before?

10         A.   No.

11              MS. SIRIGNANO:   Objection, leading.

12              THE COURT:   Overruled.

13         Q.   Did anybody threaten Mr. Duran?

14         A.   Not that I was aware of, not during the

15    interview.

16         Q.   Did anyone say:   If you don't cooperate,

17    there will be consequences?

18              MS. SIRIGNANO:   Objection, leading.

19         A.   No.

20              THE COURT:   Overruled.

21         A.   Several times through the interview he

22    discussed what he provided to the FBI and how he

23    wanted to provide information.   And he wanted it to

24    be a long-term relationship.   Once he got out of the

25    incarceration, he would help on the streets.   He had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    lots of contacts.  He realized it would put himself
 2    in danger, and he was okay with that.  He just wanted
 3    to help out since he had done so many bad things
 4    prior.
 5         Q.   And were you aware at that meeting of any
 6    of the corrections officers indicating that Mr. Duran
 7    was in any type of trouble?
 8         A.   They did not indicate at all during that
 9    interview.
10         Q.   After this meeting, did you agree to open
11    up Mr. Duran as a cooperator or a confidential human
12    source?
13         A.   Yes.
14         Q.   And about how long after this meeting did
15    that happen?
16         A.   It was about a month after.
17         Q.   And what did you do as part of that
18    meeting; in other, words was he admonished in any
19    way?
20         A.   Yes, he was.  He was informed that all the
21    information he would be providing would be voluntary.
22    He needed to be truthful in all information he
23    provided.  He had to follow any rules that we had for
24    him.  And we would try to protect his identity.  We
25    also let him know that he wouldn't be an employee of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5268

```
 1    the federal government.  He could not enter into any
 2    contracts.  And he could not do anything on behalf of
 3    the Government without prior authorization.  He was
 4    informed that he wasn't having any promises made as
 5    to immunity.  And that any payments he received -- he
 6    wouldn't be promised any payments, but if he received
 7    any, he'd have to pay taxes.
 8         Q.   And are those general admonishments you
 9    give to people who agree to cooperate with the FBI?
10         A.   Yes.
11         Q.   And during -- after that happened, did
12    Mr. Duran make any recordings in the prison system?
13         A.   Yes, he did.
14         Q.   And did Mr. Duran remain a source under
15    you, or was he ever transferred to anyone?
16         A.   After a couple of months, he was
17    transferred to another agent.
18         Q.   Who was that agent?
19         A.   That would be Agent Bryan Acee.
20              MR. CASTELLANO:  May I have a moment, Your
21    Honor?
22              THE COURT:  You may.
23              MR. CASTELLANO:  I pass the witness, Your
24    Honor.
25              THE COURT:  Ms. Duncan, why don't I start
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5269

```
 1   with you.  Do you have cross-examination of Ms.

 2   Brusuelas?

 3              MS. DUNCAN:  Thank you, Your Honor.

 4              THE COURT:  Ms. Duncan.

 5              MS. DUNCAN:  May I just have a moment to

 6   get organized?

 7              THE COURT:  Certainly.

 8                      EXAMINATION

 9   BY MS. DUNCAN:

10        Q.   Good morning.

11        A.   Good morning.

12        Q.   You've testified that Captain Sapien

13   contacted you about a week before you met with

14   Mr. Duran; is that correct?

15        A.   That's correct.

16        Q.   And how did he contact you?

17        A.   I was up at the facility once to twice a

18   week to see what was going on, and see what kind of

19   activities are happening that we could take on the

20   federal level.  So while I was up there at the PNM

21   facility.

22        Q.   And did you produce a report or any written

23   document to document that conversation?

24        A.   With Captain Sapien?

25        Q.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    No.
 2        Q.    What do you recall specifically about that
 3   particular conversation?
 4        A.    I don't recall exact details of it.
 5   Because there was many individuals that we talked
 6   about every time that I went up there.  But there was
 7   an individual, Mr. Duncan (sic), who was willing to
 8   cooperate.  And, as I previously testified, he had
 9   information on several unsolved murders, and drug
10   dealing large quantities of drugs in the Albuquerque
11   area.
12        Q.    When you say "Mr. Duncan," you mean
13   Mr. Duran; correct?
14        A.    I'm sorry.  Yes.
15        Q.    And then you said that it took some time to
16   put together the team to talk to Mr. Duran; is that
17   correct?
18        A.    That's correct.
19        Q.    How was that decision made who would
20   participate in the interview?
21        A.    That was my decision as to what other task
22   force officers or law enforcement personnel I wanted
23   to meet with.
24        Q.    And how did you prepare to interview
25   Mr. Duran?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5271

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 75 272

1          A.   I did not do any preparing to interview

2     him.  We just went up to talk with him, to see what

3     information he actually had.  We get a lot of people

4     who claim that they have information and want to

5     talk.  And most of the time it's stuff that's not

6     validated.  It's just they're trying to get something

7     from us, rather than actually cooperate and give

8     information.

9          Q.   And you mentioned a letter Mr. Duran wrote

10    to Captain Sapien?

11         A.   Yes.

12         Q.   Did Captain Sapien ever show you that

13    letter?

14         A.   No.

15         Q.   Or provide with you a copy?

16         A.   No.

17         Q.   You testified that Eric Duran agreed to

18    cooperate because he wanted to give back to the

19    community; correct?

20         A.   That is one of the reasons he stated.

21         Q.   And that he said he was not in trouble?

22         A.   That's correct.

23         Q.   And that's not true, though; correct?

24         A.   As far as I know, he was not in any trouble

25    from any activities other than why he was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   incarcerated.
 2        Q.   Are you aware that on February 12 of 2015,
 3   Mr. Duran was found in the possession of a shank at
 4   the prison?
 5        A.   I was not at the time, no.
 6        Q.   And are you aware that on February 18,
 7   2015, Eric Duran threatened to kill a correctional
 8   officer?
 9        A.   I was not aware of that.
10        Q.   And that, in threatening to kill the
11   correctional officer, he disclosed to the officers
12   and others the officer's home address?
13        A.   I was not aware of that.
14        Q.   And are you aware that he told law
15   enforcement that his then girlfriend had provided the
16   information to him about the officer?
17        A.   No, I was not aware of that.
18        Q.   Now, during the conversation with
19   Mr. Duran, though, he mentions the shank; correct?
20        A.   Several shanks were mentioned during that
21   interview.
22        Q.   And did you understand that one of those
23   shanks was his?
24        A.   I don't believe we discussed a shank being
25   his from any recent incident.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 73274

1        Q.   Let's see.  I'd like to turn your attention

2   to page 53156 of the transcript.  If you look here on

3   this page, y'all are discussing the shanks that were

4   seized during a shakedown.  I'll point you here to

5   Eugene.  Who is he?

6        A.   He was one of the task force officers.

7        Q.   So Eugene says, "What happened last week?

8   Y'all did a big shakedown;" correct?

9        A.   That's correct.

10       Q.   Then Chris Cupit responds, "Yeah, we did a

11   big shakedown"; correct?

12       A.   Correct.

13       Q.   Then Sergio is Sergio Sapien; correct?

14       A.   Correct.

15       Q.   And Sergio is talking about some photos of

16   those shanks; correct?  He says, "Yeah, I got some

17   photos here.  One of them is yours."

18       A.   That's correct.  I'm not sure if he's

19   talking about the shanks on that part of interview or

20   not.

21       Q.   Do you recall seeing some photographs of

22   shanks during this interview?

23       A.   I did not see photographs during that

24   interview, no.  After the interview, I did see

25   photographs.  But I don't recall exactly what I saw

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 5274

```
 1    them on.
 2          Q.    And in response to Mr. Sapien saying,
 3    "Yeah, I've got some photos here, one of them is
 4    yours," Eric Duran responds, "Yeah, some they used to
 5    scratch trays," and he starts laughing; correct?
 6          A.    That's correct.
 7          Q.    And Mr. Sapien responds, "So this was found
 8    in his house.  It's an eyeglass, a little attention
 9    getter"; correct?
10          A.    That's correct.
11          Q.    And then Mr. Duran responds, "That ain't
12    mine.  As you see mine is there"; correct?
13          A.    That's correct.
14          Q.    So during this conversation Mr. Sapien and
15    Mr. Duran are talking about a shank that Mr. Duran
16    possessed, or was found in his house?
17          A.    Yes.
18          Q.    And are you aware that at the time --
19          THE COURT:  Let me ask you, Ms. Duncan,
20    would this be a good time for us to take our morning
21    break?
22          MS. DUNCAN:  It would, Your Honor.
23          THE COURT:  All right.  Thank you, Ms.
24    Duncan.  All right.  We'll be in recess for about 15
25    minutes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79276

```
 1                 (The Court stood in recess.)
 2                 THE COURT:  All right.  Let's go on the
 3      record.  Make sure everybody has got an attorney.
 4      Looks to me like everybody has one.
 5                 All right.  Ms. Brusuelas, I'll remind you
 6      that you're still under oath.  Ms. Duncan, if you
 7      wish to continue your cross-examination of Ms.
 8      Brusuelas, you may do so at this time.
 9                 MS. DUNCAN:  Thank you, Your Honor.
10                 THE COURT:  Ms. Duncan.
11      BY MS. DUNCAN:
12           Q.   So before the break you were talking about
13      Eric Duran's possession of a shank.  And I'd like to
14      point out one other portion of this transcript.  And
15      I'm looking at Bates No. 31560.  Here in the middle
16      of the page, I've highlighted a statement from Eric
17      Duran where he says, "If you have dudes like me that
18      are doing two years, that dumb ass shank that you
19      found in my cell, that's not going to happen.  I'm
20      trying to go home"; correct?
21           A.   Correct.
22           Q.   And, in fact, if an inmate is found in
23      possession of a shank, he would get into trouble;
24      correct?
25           A.   I don't work for the Department of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5276

1    Corrections, but I would assume, yes.

2         Q.   In fact, it's a crime for someone who is

3    incarcerated to have a weapon like a shank?

4         A.   Yes.

5         Q.   And if someone were to threaten the life of

6    a correctional officer, that would also get them into

7    trouble; correct?

8         A.   That's correct.

9         Q.   It may also be a crime; correct?

10        A.   Correct.

11        Q.   Now, we talked a little bit about the

12   letter that Eric Duran wrote to Mr. Sapien.   At some

13   point, did the STIU provide you with a list of SNM

14   members during that meeting?

15        A.   I don't recall that.

16        Q.   So I will turn you to page 31528.   And this

17   is where you're discussing with Mr. Duran alleged

18   members of the SNM.   And so in the middle of the page

19   Sergio -- and again, that's Sergio Sapien -- says,

20   "Here's what I got.   I did this last week.   It has

21   names, numbers, and all that good stuff in there."

22             And Katy" -- that would be you; correct?

23        A.   Correct.

24        Q.   You respond, "Okay, is that an updated one

25   you said?"   Do you recall receiving that list of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5277

1    names and numbers?

2          A.    I do recall getting a list from him.    I

3    don't know if I received it during that interview.

4    But as I said, I was working on a prison initiative

5    that we were keeping track of the different gang

6    members, and seeing which ones were causing problems

7    in the prison.

8          Q.    So if you received a list like that, what

9    would you have done with it?

10          A.    I would have kept it probably in my working

11   file, or possibly put it into the case.

12          Q.    Okay.  Do you recall if you did that in

13   this instance?

14          A.    I don't recall.

15          Q.    During the conversation with Mr. Sapien --

16   again, let's see if I can -- now, looking at Bates

17   31529.  And on this page at the very top you'll see

18   Eugene asks, "Is that in your packet, sir?"

19                And Mr. Sapien responds, "Yes, sir";

20   correct?

21          A.    Yes.

22          Q.    What was that packet?

23          A.    Again, that was the list that he

24   provided -- he gave a copy to Eugene, and I believe

25   Eric also received a copy -- of the different inmates

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    that were possibly in the gang.

 2        Q.   Were there any other documents in that

 3    packet, to your recollection?

 4        A.   Not that I recall.

 5        Q.   And is that packet something that you would

 6    have put into the case file?

 7        A.   Again, that's Eugene's packet that he's

 8    referring to there.  So I would assume it probably

 9    would be a similar list that I received.

10        Q.   In preparing to testify today, did you

11    listen to the recording of the February 2015

12    interview with Eric Duran?

13        A.   I did not.  I just reviewed the transcript.

14        Q.   During the interview with him, you did

15    discuss Sergeant Artiaga; correct?

16        A.   I believe so.

17        Q.   What do you recall about that conversation?

18        A.   I would have to refer to the transcript.  I

19    can't recall at this time.

20        Q.   Well, unfortunately -- I can show you this

21    transcript, but would you accept a representation

22    from me that the portion of the discussion about Mr.

23    Artiaga is not in this transcript?  Would you like to

24    see the transcript?

25        A.   If you're going to need to question me on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5280

1    something, I'd have to see it to refresh my memory.

2         Q.   I'm about to question you about the

3    conversation regarding Sergeant Artiaga, but it's not

4    included in this transcript.

5         A.   I just reviewed the transcript.  I did not

6    listen to the audio.

7         Q.   When you reviewed the transcript, do you

8    remember seeing anything about Sergeant Artiaga?

9         A.   No.

10        Q.   You testified on direct that Mr. Duran was

11   the first one to raise -- to assert that Anthony Ray

12   Baca called the Molina hit; correct?

13        A.   From my knowledge, yes.

14        Q.   And I'm looking on page 31526.  In fact, it

15   was Eugene who first identifies Mr. Baca as the

16   person who called it; correct?

17        A.   I'm assuming, from looking at that page

18   that you're putting up.

19        Q.   I'm asking you about the recording itself.

20   Who made this recording?

21        A.   I believe that was Chris Cupit.

22        Q.   And what do you recall about the

23   conversation prior to the recording starting?

24        A.   The conversation prior was just kind of

25   smalltalk, you know, talking about him.  I believe we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5280

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5281

```
 1    had brought him a breakfast burrito, or something
 2    like that.  So it was nonrelevant to any of the
 3    ongoing investigations.
 4         Q.   Did you take any notes of the conversation
 5    that happened before the recording started?
 6         A.   I may have, if it was anything relevant.
 7    But I don't think -- they started the recording as
 8    soon as we started the actual interview.
 9         Q.   And do you have notes from your meeting
10    with Mr. Duran?
11         A.   I do not have them with me.  They are in
12    our Albuquerque office.
13         Q.   And would you be willing to review those
14    notes to see if any of them pertain to conversation
15    before the recording?
16         A.   Yes, I'd have to see what time the
17    recording was started.  And I'd have to listen to the
18    recording to see.
19         Q.   And you wrote some reports in this case;
20    correct?
21         A.   Correct.
22         Q.   And so let me ask you this:  So, when you
23    wrote those reports, did you rely on your notes or
24    did you just rely on your recollection of the
25    meeting?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5281

```
 1          A.    On the notes also.
 2          Q.    And have you compared your notes to the
 3    report to see if there is anything in the notes that
 4    are not in the report?
 5          A.    Not since I've written the report.  But I
 6    usually do compare it before I submit the report.
 7          Q.    Can you conduct that review as well when
 8    you return to your office?
 9          A.    Yes.
10          Q.    And if you have this packet that was
11    provided to you by STIU, would you be willing to
12    produce that in this case?
13          A.    Yes.
14          Q.    Would you also be willing to produce your
15    notes?
16          A.    Yes.
17          Q.    You testified on direct quite a bit about
18    the information that Eric Duran provided about the
19    Molina homicide.  You are aware that Mr. Duran was
20    not in Southern New Mexico Correctional Facility at
21    the time of the homicide; correct?
22          A.    That's correct.
23          Q.    He was in PNM North?
24          A.    Yes.
25          Q.    And the information that he provided you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 5283

```
 1   was information he'd obtained from Jerry Armenta;
 2   correct?
 3        A.   I believe so.
 4        Q.   And during the interview with you, he was
 5   negotiating -- not negotiating, but speaking to the
 6   Government about a plea deal for Mr. Armenta;
 7   correct?
 8        A.   He was not speaking for a plea deal for
 9   Armenta.  But he was -- he did feel bad because he
10   felt like he had been kind of set up.  He was 30 days
11   left before he was released, and he indicated that he
12   was forced to participate in the murder.  And he felt
13   bad for him.
14        Q.   And he suggested to you that 10 years was a
15   good sentence for Mr. Armenta based on the Molina
16   homicide?
17        A.   Well, he did say that -- you know, he did
18   the crime, he would have to do the time, you know, he
19   did participate in it.  But he also felt like he had
20   no choice; that he was forced.
21        Q.   Are you aware that at a disciplinary
22   hearing following Mr. Duran's threatening an
23   officer's life that he called Jerry Armenta as a
24   witness?
25        A.   I'm not aware of the hearings conducted by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5283

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5284

1    DOC.

2         Q.   Are you aware that Mr. Duran would call

3    Jerry Armenta as a witness to defend him against any

4    kind of allegations?

5         A.   I was not aware of that.

6         Q.   And Mr. Duran also offered to bring Mr.

7    Armenta in to talk to the FBI; correct?

8         A.   Well, he personally could not bring him in.

9    But he had talked to him and tried to get him to

10   cooperate.

11        Q.   You testified on direct that "Pup" had made

12   a threat -- or sorry, Anthony Ray Baca, had made a

13   threat, or that Eric Duran explained that Anthony Ray

14   Baca had made a threat against both Gregg Marcantel

15   and Dwayne Santistevan; correct?

16        A.   Yes.

17        Q.   I'd like to show you page 31541 of the

18   transcript.  And this is the portion of the

19   transcript where they're talking about Dwayne

20   Santistevan and Gregg Marcantel; correct?

21        A.   That's correct.

22        Q.   And Eugene says, "So 'Pup' was the one

23   calling the shots?"

24             And Eric Duran said, "He probably hates him

25   more than Marcantel"; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1        A.    Correct.

 2        Q.    And by "him" he means Dwayne Santistevan?

 3        A.    That's correct.

 4        Q.    And you asked, "And Marcantel or the hit

 5   was only on Santistevan?"

 6             And Mr. Duran replied, "No, no, it was only

 7   on Santistevan.  But I'm saying he hates Santistevan

 8   more than he hate Marcantel"; correct?

 9        A.    Yes.

10        Q.    So he's reporting only that there was a

11   potential threat against Mr. Santistevan?

12        A.    That's correct.

13        Q.    Do you know if anyone other than STIU

14   recorded that interview?

15        A.    No, nobody else did.

16        Q.    We talked before about Mr. Eric Duran

17   telling you that he was cooperating to give back to

18   the community, not because he was in trouble.  But

19   later on in this conversation Mr. Duran also

20   indicated that he wanted some benefits for

21   cooperating; correct?

22        A.    Yes.

23        Q.    For example, he was looking for lump sum

24   credit to get out of prison early?

25        A.    That was not brought up at that time, no.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5285

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 89286

```
 1          Q.   And when you testified about Mr. Duran
 2     wanting to seem like he was still in trouble so to
 3     keep away some of his privileges, you're aware he was
 4     in prehearing isolation because of a disciplinary
 5     infraction at that time; correct?
 6          A.   I believe all of SNM was in lockdown at
 7     that time, not just him.
 8          Q.   Did you understand -- well, I guess you'd
 9     testified before you weren't aware that he was found
10     with a shank?
11          A.   That's correct.
12          Q.   And put into prehearing detention for that?
13          A.   That's correct.
14          Q.   So his privileges had been taken away, he
15     was actually negotiating for things to be given back?
16          A.   He was hoping by his cooperation he would
17     be able to have some of his personal items returned.
18          Q.   After you met with Mr. Duran on the 19th of
19     February, when did you next speak to him?
20          A.   It would have been in March, somewhere
21     around the 25th, I believe, or something like that.
22          Q.   And was that the meeting you discussed
23     earlier where you gave him the admonishments and the
24     recording device?
25          A.   That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5286

 1          Q.   Did you record that interview with

 2   Mr. Duran?

 3          A.   I did not.

 4          Q.   Did you take any notes of that interview?

 5          A.   I believe a report was written up, yes.

 6          Q.   And would you be willing to check your file

 7   for any notes that you might have made from March of

 8   2015?

 9          A.   Yes.

10          Q.   And to produce them?

11          A.   Yes.

12          Q.   Thank you.

13               After you met with Mr. Duran, in March of

14   2015 -- so other than admonishments that you gave him

15   and giving him the recording device, did you discuss

16   anything else?

17          A.   There was other interviews with him.  I

18   would have to look at my notes and my papers to see

19   exactly what was discussed on what days.  But we did

20   discuss other criminal activity on other interviews.

21          Q.   How many interviews, total, did you

22   participate in with Mr. Duran?

23          A.   It was very few, because I was only his

24   handler for a couple of months.  So two to three.

25          Q.   And would you have generated a report

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    following each interview?
 2         A.   Yes.
 3         Q.   Who was present during your meetings with
 4    Mr. Duran?
 5         A.   Again, to be exact, who was at every
 6    meeting, I'd have to look at my reports.  But we
 7    would have always had STIU officers present, because
 8    they would have transported him to wherever we were
 9    meeting.  It would have been Captain Sapien, it would
10    have been Investigator Cupit, possibly Escare Loyola
11    (phonetic) that worked with them.  And then I also
12    had several task force officers that were involved in
13    it.
14         Q.   So at some point during the interview, Mr.
15    Sapien indicates he'd interviewed Duran the week
16    before your interview with him; correct?
17         A.   Yes, at some point before.
18         Q.   Were you ever given a report or a recording
19    of that interview?
20         A.   No.
21         Q.   You testified that you handed over
22    Mr. Duran to another handler, Bryan Acee?
23         A.   That's correct.
24         Q.   When did that happen?
25         A.   That was early August.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5288

1      Q.   How many times -- you gave the recording

2   device to Mr. Duran in March of 2015?

3      A.   Correct.

4      Q.   Are there any other instances where you

5   provided him with a recording device?

6      A.   Well, the recording device was switched out

7   occasionally.  But during the time that I had him, I

8   think we attempted to give two different recording

9   devices.

10      Q.   And would you meet with him when you would

11   switch out recording devices?

12      A.   Captain Sapien would do that, so it wasn't

13   as obvious with me going in and out of the prisons.

14          MS. DUNCAN:  Your Honor, if I could just

15   have a moment?

16          THE COURT:  You may.

17          MS. DUNCAN:  I just have one final

18   question.

19      Q.   When we were talking about your notes, has

20   anyone from the U.S. Attorney's Office ever asked to

21   review your notes?

22      A.   They just referenced my notes yesterday

23   while I was up here.

24      Q.   That was the first time?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5289

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 93

```
 1              MS. DUNCAN:  Thank you.  No further
 2    questions, Your Honor.
 3              THE COURT:  Thank you, Ms. Duncan.
 4              Do any of the other defendants have any
 5    cross-examination of Ms. Brusuelas?  All right. Ms.
 6    Sirignano?
 7              MS. SIRIGNANO:  Yes, Your Honor.
 8              THE COURT:  All right.  Ms. Sirignano.
 9              MS. SIRIGNANO:  Thank you, Your Honor.
10                     EXAMINATION
11    BY MS. SIRIGNANO:
12         Q.   Good morning, Agent.
13         A.   Good morning.
14         Q.   You talked about the documents that you had
15    Mr. Duran sign when you opened him during direct
16    examination; correct?
17         A.   About the admonishments?
18         Q.   Yes.
19         A.   Yes.
20         Q.   What kind of admonishments were they?
21         A.   Do you need me to repeat them, the ones I
22    gave, the summary of them?
23         Q.   Please.
24         A.   Okay.  We would have informed him that all
25    the information he's giving is voluntary.  He must be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5290

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 94

```
 1    truthful.  That he needs to follow any direction that
 2    we give him.  We would try to protect his identity.
 3    We also give a section of admonishments where we tell
 4    him he's not an employee of the U.S. Government.  He
 5    cannot sign any contracts on behalf of the U.S.
 6    Government.  He cannot do any work for the U.S.
 7    Government without preapproval from us.  We inform
 8    him that we are not making any promises about lack of
 9    prosecution, or if we're going to make any payments
10    to him.  But if we do make payments to him, he'll
11    have to pay taxes, that's his responsibility.
12         Q.   And was there a form or a checklist that
13    you used to make these admonishments?
14         A.   Yes, there is a form.
15         Q.   And that form goes in his informant file;
16    correct?
17         A.   Yes.
18         Q.   And he has an informant file?
19         A.   Yes, he does.
20         Q.   Have you produced the informant file to the
21    Government?
22         A.   I have not.
23         Q.   Can you bring it to us so we can use that
24    in your cross-examination today?
25              MR. CASTELLANO:  Your Honor, my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5291

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 95292

1  understanding is that that file is already on the way

2  to the defense for production, so that is being

3  produced, and I think that includes the

4  admonishments.  So I just want to shortcut that.

5          THE COURT:  All right.

6          MS. SIRIGNANO:  Your Honor, we need this

7  informant file to cross-examine this witness

8  properly.  She opened up Mr. Duran, and we need to

9  make sure that everything was done properly according

10  to FBI procedure.

11          THE COURT:  Well, it doesn't look like

12  we're going to get them today.  So you'll have to --

13          MS. SIRIGNANO:  Can I request that this

14  witness be re-called once we get these documents?

15          THE COURT:  Well, I don't know.  I don't

16  think they're going to probably have much impact on

17  my decision.  So if you want to re-call her, you can.

18  But I haven't heard much to suggest that Mr. Duran

19  did anything involuntary here.

20          MR. CASTELLANO:  And I would object for

21  that reason, Your Honor, that there is no indication

22  the admonishments would affect the coercion which is

23  at play here.

24          MS. SIRIGNANO:  May I continue, Your Honor?

25          THE COURT:  You may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5293

```
 1              MS. SIRIGNANO:   Thank you.
 2         Q.   So you were the one that opened up
 3    Mr. Duran; correct?
 4         A.   Yes, ma'am.
 5         Q.   Okay.  And during that process, you run a
 6    criminal history check; correct?
 7         A.   That's correct.
 8         Q.   Did you find a warrant from another
 9    jurisdiction during that check?
10         A.   I would have to review his opening
11    documents.
12         Q.   Was that a yes or a no?
13         A.   I do not recall at this time.
14         Q.   If you did find a warrant when you opened
15    him up, what's the normal FBI procedure for dealing
16    with that warrant?
17         A.   We make sure they take care of the
18    warrants.  At the time I opened him up, he was
19    already incarcerated, though.
20         Q.   What was he incarcerated for?  Murder?
21         A.   I think he was still doing time on a
22    murder, yes.
23         Q.   First degree murder?
24         A.   I don't recall exactly.  I'd have to look
25    at the file.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5293

```
 1        Q.   When was the last time you spoke to
 2   Mr. Duran?
 3        A.   Sometime in 2015.
 4        Q.   Was this after you handed him off to Mr.
 5   Acee?
 6        A.   No, I did not speak to him after that.
 7        Q.   Did you assist in his apprehension since he
 8   recently fled from contact with the FBI and the
 9   jurisdiction?
10        A.   I did not.
11        Q.   Do you know where he was arrested?
12             THE REPORTER:  Where or when?
13             MR. CASTELLANO:  Objection, Your Honor.
14        Q.   Do you know where he was arrested?
15             THE COURT:  Sustained.
16        A.   I was not involved in that investigation.
17             MS. SIRIGNANO:  May I have a moment, Your
18   Honor?
19             THE COURT:  You may.
20             MS. SIRIGNANO:  Pass the witness, Your
21   Honor.
22             THE COURT:  Thank you, Ms. Sirignano.
23             Any other defendant have questions?
24             MS. JACKS:  I have a few questions.
25             THE COURT:  Ms. Jacks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5294

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 98

```
 1                    EXAMINATION
 2   BY MS. JACKS:
 3        Q.   Good morning, Agent Brusuelas.  How are
 4   you?
 5        A.   Good morning.
 6        Q.   I want to just talk generally about what
 7   your state of mind was when you first interviewed
 8   Eric Duran.  Did you know what kind of prior
 9   convictions he'd sustained?
10        A.   Yes, I did.  Before I interview anybody, I
11   do run a criminal history on him.
12        Q.   Do you remember any of that now?
13        A.   I would have to review the file.  I know he
14   had an extensive criminal history.  He's been in and
15   out of jail the majority of his life.  He was
16   convicted of murder, and has several drug charges,
17   but I could not be exact right now.
18        Q.   Was it your state of mind, when you first
19   went in to interview him, that he was potentially a
20   very manipulative individual?
21             MR. CASTELLANO:  Objection, Your Honor.  To
22   relevance.  I don't know what it has to do with
23   coercion.
24             THE COURT:  Well, I can see a little bit of
25   the argument.  Overruled.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 99

1      A.    Every time I interview somebody who is

2   incarcerated, or who is willing to cooperate, I

3   always take what they say -- I verify information and

4   stuff, because a lot of times they are trying to get

5   something for their cooperation.

6      Q.    And I think what you said when Mr.

7   Castellano was asking you questions was that one of

8   the things that Mr. Duran emphasized to you in this

9   first meeting with you was that he was actually just

10   doing all this out of the goodness of his heart, and

11   didn't want anything?

12      A.    Yes, fairly much.  So he said that he was

13   trying to give back to the community.  It was time

14   that he came forward as part of his rehabilitation,

15   yes.

16      Q.    And during the course of the conversation

17   with him, it's actually a topic he went back to on

18   several occasions, in an effort to almost reassure

19   you that that was his motivation?

20      A.    That's correct.

21      Q.    During the conversation, did you start to

22   hear things that maybe caused you to question his

23   stated motive for coming forward?

24      A.    No.

25      Q.    So after the first meeting with Mr. Duran,

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                            e-mail: info@litsupport.com

```
 1   it was your state of mind, or your belief that it
 2   really was true that he was just coming forward out
 3   of his genuine effort to want to change, and not for
 4   any sort of benefits?
 5        A.   Well, I don't think that's 100 percent of
 6   the reason he came forward, no.  I mean, he did
 7   mention that he was hoping to get commissary back.
 8   So, no, I don't think it was 100 percent of his
 9   intention.
10        Q.   So after your first interview with
11   Mr. Duran, you had some reason to believe that
12   perhaps he was trying to manipulate you?
13        A.   I don't believe he was trying to manipulate
14   me.
15        Q.   Did you make -- let me just go back.  If
16   Mr. Duran's motive in coming forward wasn't just out
17   of his genuine desire to change his life, did he lie
18   to you during that interview?
19        A.   Not that I'm aware of.
20             THE COURT:  Well, and let's ask it in those
21   terms.  I think I'm going to be the one that has to
22   determine whether people are lying or not.  So let's
23   make sure, as we get ready for trial, that we don't
24   ask questions like that.  I, or the fact finder will
25   make those determinations.  Let's not be asking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101 of 298

 1  witnesses those.

 2       Q.   Well, let me see if I can ask it in a

 3  different way that maybe is not objectionable.

 4            One of the things that you said you

 5  explained to Mr. Duran is that, if he was going to

 6  work with you, he had to be truthful, right?

 7       A.   Correct.

 8       Q.   And was that qualified in any sort of way?

 9  Like he only had to be 98 percent truthful?  He could

10  lie about 2 percent of the things, and still work

11  with you?

12       A.   We did not qualify that, no.

13       Q.   So it's an unqualified truthfulness that's

14  part of the terms of his cooperation?

15       A.   Correct.

16       Q.   And what, if any, efforts did you make,

17  after speaking with him on two or three occasions, to

18  verify that he was, in fact, 100 percent truthful

19  with you?

20       A.   I don't know if he was, in fact, 100

21  percent truthful.  You know, we verified some of the

22  information he gave us, and it was truthful.

23       Q.   As you sit here today as a witness, do you

24  have reason, or can you tell us anything that he was

25  untruthful about that could have potentially violated

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5298

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102299

1    his agreement to be a cooperating witness?

2         A.    No, I cannot.

3         Q.    You talked about Mr. Duran making some

4    statements about this homicide of an inmate named

5    Javier Molina.  Do you recall that testimony?

6         A.    Yes.

7         Q.    And Mr. Duran didn't have any personal

8    knowledge of the murder of Javier Molina, did he?

9         A.    He was not present at the time, no.

10        Q.    So everything he was telling you was stuff

11   he heard from somebody else?

12        A.    That's correct.

13        Q.    And Ms. Duncan asked you some questions

14   about a list that may have been provided to you

15   regarding SNM Gang members.  Do you recall those

16   questions?

17        A.    Yes.

18        Q.    And you also, if I'm correct, you recall

19   getting such a list?

20        A.    I believe I did.  I, several times, have

21   gotten lists from DOC about different things.  So I

22   believe I did get a copy of that.

23        Q.    And it sounds like from your testimony, you

24   may have gotten lists like that on a number of

25   occasions?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5299

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 103

```
 1        A.   Yes, on different things.

 2        Q.   And those lists, would they be in

 3   Mr. Duran's informant file, or do you know where they

 4   are today?

 5        A.   As I testified to a little bit ago, I'm not

 6   sure.  They might be in my notes in his file.

 7        Q.   Do you know if Daniel Sanchez was on any of

 8   those lists?

 9        A.   I don't recall the list, so I could not

10   say.

11        Q.   As part of your training in becoming an FBI

12   agent, you're trained on your duty to preserve

13   evidence that might benefit a criminal defendant,

14   aren't you?

15        A.   That's correct.

16        Q.   You have a duty to preserve potentially

17   exculpatory evidence?

18        A.   That's correct.

19        Q.   And, if Mr. Sanchez' name was not on a list

20   of SNM members that was provided to you in 2015, that

21   could be potentially exculpatory to him, wouldn't you

22   agree?

23        A.   It wasn't an all-inclusive list.

24        Q.   Wouldn't you agree that it's potentially

25   exculpatory?  If somebody's name is not on a list of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5300

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104 5301

```
 1   SNM Gang members, that might be something that would
 2   be beneficial to them in a subsequent prosecution?
 3        A.   Potentially.
 4        Q.   And so what do you with that potentially
 5   exculpatory evidence?
 6        A.   At the time I received the list, as I
 7   explained earlier, I had been assigned to work a new
 8   initiative in the prisons.  And every bit of
 9   information that I received from them was not
10   information that went towards an ongoing case.  So
11   some of it was just information for background, for
12   my information.  I didn't save every bit of
13   information on every individual that I received
14   during that period.
15        Q.   So is there an exception to your duty to
16   preserve exculpatory information that says that if a
17   person isn't charged, or isn't the subject of a
18   pending indictment, that you don't need to preserve
19   it?
20        A.   If it's not information that's relevant to
21   an ongoing case, I did not save it.
22             MS. JACKS:  I have nothing further.
23             THE COURT:  Thank you, Ms. Jacks.
24             Any other defendants have cross-examination
25   of Ms. Brusuelas?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5301

```
1              All right.  Mr. Castellano, do you have
2    redirect of Ms. Brusuelas?
3              MR. CASTELLANO:  No redirect, Your Honor.
4              THE COURT:  All right.  You may step down,
5    Ms. Brusuelas.  Is there any reason that Ms.
6    Brusuelas cannot be excused from the proceedings?
7    Mr. Castellano?
8              MR. CASTELLANO:  No, Your Honor.
9              THE COURT:  From the defendants?
10             MS. SIRIGNANO:  Your Honor, I'd just like
11   to renew my objection to not having the file.  And
12   once we receive it, I will advise the Court if we
13   need to re-call her.
14             THE COURT:  All right.  Well, you'll need
15   to step outside at least for the remainder of this
16   hearing.  And we'll discuss whether you'll be
17   re-called.  But at least you can't stay within the
18   confines of the courtroom.  Thank you for your
19   testimony.
20             MR. CASTELLANO:  Can I get some
21   clarification on that?  Is Ms. Sirignano going to
22   review -- I think she's going to review the notes on
23   a different date, so we could dismiss Agent Brusuelas
24   today.
25             THE COURT:  Well, she's free to go back to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5302

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106

1    Albuquerque, correct, because you're not going to be

2    able to see the notes today, correct, Ms. Sirignano?

3              MS. SIRIGNANO:  That's correct, Your Honor.

4              THE COURT:  But she's reserving the right

5    to re-call.  I'm not ruling on it, and Ms. Sirignano,

6    I don't think is committed yet to calling her back.

7    So we'll see how it develops.

8              MR. CASTELLANO:  Understood, Your Honor.  I

9    just want to make sure that she can leave for today.

10             THE COURT:  She can leave for today, but

11   she can't stay in the courtroom because she may be

12   subject to re-call down the road.  All right.  Thank

13   you for your testimony.

14             All right.  Does the Government have its

15   next witness or evidence on the motion to suppress?

16   Mr. Castellano?  Mr. Beck?

17             MR. CASTELLANO:  May I have a moment, Your

18   Honor?

19             THE COURT:  You may.

20             MR. BECK:  Your Honor, I guess we were

21   under the understanding that we would go back to the

22   motion -- to the other motions we were discussing

23   yesterday after this.

24             THE COURT:  Okay.

25             MR. BECK:  I think we were asking to take

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5303

1    her out of order, just since she was here, to get her

2    back to Albuquerque.

3            MS. DUNCAN:  That was my understanding as

4    well, Your Honor.

5            THE COURT:  All right.  So then I think we

6    were discussing Carlos Herrera's motion in limine.

7    And I think y'all were going to maybe look at some

8    stuff overnight, maybe talk to each other, and maybe

9    y'all could tell me where you are.  Otherwise, I'll

10   start making some rulings here.

11           Mr. Castellano.

12           MR. CASTELLANO:  Unfortunately, I don't

13   know that we got very far.  We got into the evening,

14   and then everybody left.  Ms. Bhalla and I discussed

15   this for a little bit, but I don't know that we got

16   much further.  And because of the lateness of the

17   conclusion of the proceedings, I haven't had a chance

18   to look at the substantiating documents underlying

19   each of them.

20           But what I told Ms. Bhalla was, generally

21   speaking, if Mr. Herrera is in prison, and it

22   involves drugs, I would likely move its admission.

23   Because as I ended the day yesterday, stating that

24   Mr. Herrera was -- his brother and father were SNM

25   Gang members, and his mother would sell drugs both to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5304

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108305

```
 1   18th Street and the SNM Gang members.  So that would
 2   be relevant to us.
 3            THE COURT:  Let me attempt to see if I can
 4   maybe make some progress on this, and see what people
 5   think.  We've already struck the first three on page
 6   1.  I'm not seeing that any of those others relate to
 7   drugs or that they are an overt act.
 8            And on the second page, the event on
 9   January 26, 1997, keep it on the table.  The next one
10   on September 14, leave it on the table.  We've
11   already -- I'm not saying everybody is agreed, but at
12   least we discussed leaving the next two on the table.
13   Keeping the May 24 on the table.  We struck the next
14   two, November 3 and September 8, 2000.
15            MS. BHALLA:  I'm sorry.  I lost you after
16   May 24, 1999, I'm sorry.
17            THE COURT:  Keep May 24, 1999 on the table.
18   And then we struck November 3, 1999 and September 8,
19   2000.  Leave on the table January 5, 2001, the
20   portion at least about -- I'll just say the portion
21   about heroin I'll take off the table.  And this is
22   just me for the present time of putting something
23   together.  So we'll take -- we'll put a period after
24   heroin.
25            On page 3, leave on the table January 12.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5305

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 109

```
1              MS. BHALLA:  Of '02?

2              THE COURT:  2002.  I'm sorry.

3              MS. BHALLA:  No, that's okay.  Thank you.

4              THE COURT:  Leave on the table December 23,

5    2019 (sic).

6              MS. BHALLA:  Do you mean 2010?

7              THE COURT:  2010, correct.

8              Leave on the table February 1, 2011.  We've

9    already struck October 6, 2011.  Leave on the table

10   October 18, 2011.

11             (Mr. Adams left the courtroom.)

12             THE COURT:  Here's what I would propose to

13   do, since we don't have any of these as overt acts

14   pled in the indictment, so that the chances are less

15   that any of these are going to be relevant to the

16   enterprise, or to furthering the enterprise.  The

17   ones I have identified as still on the table, then

18   those are ones that for the present time the

19   Government will need to inform, on January 22,

20   whether they -- whatever information they have that

21   they're going to use to establish relevancy.  All the

22   others will be off the table.  If the Government

23   wants to put them back on, it needs to put them back

24   on by that date.  There will be no 404(b), so it will

25   have to be tied to the relevancy.  And then some of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5306

```
 1    these we permanently struck.  And we confirmed that

 2    on the record yesterday.

 3            Could you live with that procedure, Mr.

 4    Castellano?

 5            MR. CASTELLANO:  Yes, Your Honor.  And I'll

 6    double-check with Ms. Bhalla on the list of the

 7    things that are still on the table.  But for now, the

 8    answer is yes.

 9            THE COURT:  All right.  Do you want me to

10    go back through what's on the table so it's clear?

11            MR. CASTELLANO:  Would you please.  I would

12    appreciate that.

13            THE COURT:  All right.  So what's

14    permanently off the table is the first three on page

15    1.  And what is not permanently off the table, but

16    it's off the table for the present time is -- well,

17    the September 24, 1991, November 16, 1991, and

18    January 12, 1994 are permanently off the table.  The

19    rest is off the table, but the Government can put it

20    on by January 22.

21            On page 2, the first four are in the same

22    category.  They're off the table unless the

23    Government puts them back on.  January 26, 1997 is

24    still on the table.  July 27, 1997 is off the table,

25    but it can be put back on by January 22.  September
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 111 5308

1    14, 1997 is on the table.  The next one is on the

2    table, the 1998, voting for Martinez.  The February

3    23 is on the table.  The May 24, 1999 is on the

4    table.  Off the table, but could be put back on is

5    the July 31.  Permanently off the table is the

6    November 3, 1999, September 8, 2000.  The first

7    clause down to heroin is on the table.  January 16,

8    2001 and the January 31, 2001, at the bottom of page

9    2, are off the table unless the Government puts them

10   back by January 22.  January 12, 2002 is on the

11   table.

12            The next seven lines, which will go through

13   October 9, 2010, are off the table unless the

14   Government, by January 22, puts them back on the

15   table with the information that we've indicated.  The

16   December 23, 2010 is on the table.  The February 1,

17   2011 is on the table.  The October 6, 2011 is

18   permanently off the table.  October 18, 2011 is on

19   the table.  The next one, on March 2017, is off the

20   table unless the Government, by January 22, puts it

21   back on the table, and indicates what it's going to

22   use to tie it to the enterprise, proving the

23   enterprise, or the furtherance of the enterprise.

24            Is that clear, Mr. Castellano?

25            MR. CASTELLANO:  It is, Your Honor.  Thank

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5308

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112-2309

```
 1    you.

 2              THE COURT:  Ms. Bhalla, is that clear?

 3              MS. BHALLA:  Yes, Your Honor.  If the Court

 4    would -- just a question for the Court.  Are the ones

 5    that are sort of off the table now, but could be back

 6    on the table, is that sort of an indication that the

 7    Court expects a little bit from the Government in

 8    terms of putting it back on the table again?

 9              THE COURT:  Well, I mean, we're dealing

10    with a lot of subjects without any documents.  You've

11    looked at some.  And so that's the reason I've been

12    pushing the Government here, because you did your

13    homework.  They may just decide it's not worth

14    looking at the documents.  If they are, they're gone.

15    So we're getting some rulings here.  If they decide

16    to put them back on, they're going to have to do the

17    same thing with the ones on the table and that's give

18    you information so that you can make an informed

19    judgment as to whether they're relevant to

20    establishing enterprise, or that they were in

21    furtherance of the enterprises activities.

22              MS. BHALLA:  Okay.  Thank you, Your Honor.

23              THE COURT:  All right.  Everybody live with

24    that?  All right.  That's what we'll do on Mr.

25    Herrera's bad acts for the present time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5309

```
 1              All right.  Then we will now take up
 2   Document 1555, which is Christopher Garcia's motion
 3   on bad acts.  Do you want to make any preliminary
 4   statements, Ms. Sirignano, Mr. Adams, on your motion?
 5              MS. SIRIGNANO:  Good morning, Your Honor.
 6   Mr. Adams had to depart.  He's on the phone, though,
 7   or should be momentarily.
 8              THE COURT:  All right.
 9              MS. SIRIGNANO:  Your Honor, at this point
10   in time, these are alleged bad acts.  There is 40 of
11   them here.  And a few of them are res gestae acts, I
12   believe.  But we do not concede that any of these
13   should be used at trial.  They're highly prejudicial.
14   And a majority of these are from their snitch, Mario
15   Montoya, that perhaps might have gone before the
16   Grand Jury.  I don't know, specifically from him or
17   by a summary agent, which would make them hearsay
18   statements.  But every single one of these 40 are
19   overt Acts in the 16-CR-1613 case, but for number 2,
20   I believe.  So at this point in time I don't have any
21   evidence, other than the indictment in 1613,
22   specifically, that ties this in to the SNM
23   enterprise.  And as I said as I started, there are
24   alleged, and some of them are prior convictions, but
25   our position is that none of them have anything to do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5310

1   with the SNM Gang.

2           Thank you, Judge.

3           THE COURT:  Thank you, Ms. Sirignano.

4           So if I understand from Ms. Sirignano's

5   comments, everything except the May 16 -- and I

6   believe that's supposed to be 1995 -- incident there,

7   the second one, are pled as overt acts in the

8   indictment?

9           MR. CASTELLANO:  Yes, Your Honor.

10          THE COURT:  All right.  Do you want to put

11  your chart up, if you prepared one, and I'll write

12  that down.

13          MR. CASTELLANO:  And I'll check the second

14  page as the Court is looking at the notes.

15          THE COURT:  All right.  Do you want to turn

16  the page, Mr. Castellano?

17          MR. CASTELLANO:  Yes, Your Honor.

18          THE COURT:  On that 2015, where he received

19  $100, where he wired 100 to Mr. Archuleta, is that OA

20  193?

21          MR. CASTELLANO:  Yes, it looks like 193.

22          MS. SIRIGNANO:  I'm sorry, Your Honor.  I

23  didn't hear you.

24          THE COURT:  I was asking whether the wiring

25  in 2015, to Mr. Archuleta, is that OA 193.  And he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5311

```
 1    confirmed it was?

 2              MR. CASTELLANO:  It is, Your Honor.  It's

 3    Overt Act 193.

 4              THE COURT:  All right.  If I could see page

 5    3 of your letter, Ms. Armijo's letter.

 6              And you've got written at the top, "15-4275

 7    pled guilty."

 8              MR. CASTELLANO:  Yes, Your Honor.  What

 9    I've done is, in 15-4275, Mr. Garcia pled guilty to,

10    I believe, four counts involving trafficking of

11    narcotics.  And I can put that up next.

12              THE COURT:  That was our drug case that was

13    settled?

14              MR. CASTELLANO:  Yes, it was.

15              MS. SIRIGNANO:  And, for the record, Your

16    Honor, the factual basis in that drug case, we did

17    not plead to drug trafficking on behalf of the SNM.

18    So I would object strenuously to any of that coming

19    in as a bad act in this case.

20              THE COURT:  Well, I'm sure you have

21    evidence that will supplement what Mr. Garcia pled

22    to, Mr. Castellano?

23              MR. CASTELLANO:  That's correct, Your

24    Honor.

25              THE COURT:  All right.  If I can look at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5312

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116

```
 1    your overt acts on page 4.

 2            All right.  I assume that -- well, I don't

 3    want to assume anything, but I'd asked, on others,

 4    you will not attempt to get any of these that have

 5    been marked as overt acts, you'll not attempt to get

 6    any of those in through 404(b), by pointing to some

 7    legitimate purpose?  You'll simply take the position

 8    that these are relevant to proving enterprise and

 9    proving that they're in furtherance of the

10    enterprise's activities?

11            MR. CASTELLANO:  That's correct, Your

12    Honor.

13            THE COURT:  Let's talk a second about the

14    May 16, 1995.  Are you going to attempt to bring that

15    in to trial?

16            MR. CASTELLANO:  It depends on what we have

17    for the substantiating documentation.  If it's a

18    conviction, and we can tie that to SNM, then the

19    answer would be yes.

20            MS. SIRIGNANO:  Your Honor, this is what

21    we're doing here today.  I need to know one way or

22    the other.

23            THE COURT:  Let me take them in order.

24    I'll talk to Mr. Castellano, and then I'll let you

25    have rebuttal.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MS. SIRIGNANO:  Thank you, Judge.

2              THE COURT:  All right.  Anything else you

3    want to say on the motion, Mr. Castellano?

4              MR. CASTELLANO:  Not at this time, Your

5    Honor.

6              THE COURT:  If I were to require what I

7    have required of the other defendants that are going

8    to trial on their bad acts, they're really not bad

9    acts anymore; they're just evidence that the

10   Government intends to put on as far as whether it's

11   relevant to, or to try to establish enterprise or a

12   furtherance.

13             Would you be in agreement as to Mr. Garcia,

14   that you'll look at this list, including the May 16,

15   1995 incident, and by January 22, provide the

16   evidence you're going to rely upon to establish and

17   prove that these are related to the establishment of

18   the enterprise and in furtherance of the enterprise

19   activity?

20             MR. CASTELLANO:  Yes, Your Honor.  And just

21   looking at this quickly, at least the third page of

22   the document I have here is actually relevant.  It's

23   evidence that we have to prove at the upcoming trial.

24   So they include the Gregg Marcantel conspiracy.  So

25   when it talks about going on a mission, using coded
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5314

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118

```
 1    language regarding firearms, giving Mandel Lon Parker
 2    a hotshot after the murder, all that is part of the
 3    evidence in this case.  So we'll be using all of
 4    that.  So we actually have to prove that.
 5              MS. SIRIGNANO:  Your Honor --
 6              THE COURT:  Hold on a second.  Let me
 7    finish up talking to Mr. Castellano, and then I'll
 8    allow you to have rebuttal.
 9              MS. SIRIGNANO:  I apologize.
10              THE COURT:  On that second one that we were
11    talking about, on the May 16, 1995, I think I asked
12    about the overt acts.  But you'll not try to get that
13    into evidence under 404(b)?  You'll also try to tie
14    that to proof of the enterprise and the enterprise's
15    ongoing activity?
16              MR. CASTELLANO:  That's a good question,
17    Your Honor.  That is actually one I could see being
18    used as 404(b).  Because if the allegation is that
19    Mr. Garcia is not trafficking cocaine, or lacks
20    knowledge, then I think that actually could be used
21    as 404(b), to show lack of mistake, knowledge, and
22    intent, among other 404(b) factors.  So I think that
23    one actually could be under 404(b).
24              THE COURT:  So what would be the legitimate
25    purpose of the 404(b) evidence in this trial?  What
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5315

1   would you be trying to establish in this case that

2   would be helpful to the jury?

3          MR. CASTELLANO:  Basically, what I just

4   said.  So if we put on other evidence that Mr. Garcia

5   had been trafficking in drugs, and then put on a

6   defense indicating that it wasn't him, or it was a

7   mistake, things of that nature, then I think we could

8   put that on to show lack of mistake, knowledge, and

9   intent indicating -- well, those 404(b) purposes.

10          In other words, if somebody was at a Border

11  Patrol checkpoint and they were denying knowledge of

12  the drugs in the vehicle, then we could put on

13  potentially a prior conviction.

14          THE COURT:  Okay.

15          MR. CASTELLANO:  Indicating that they did

16  have knowledge of the drugs in the vehicle.  It would

17  be something to that effect.

18          THE COURT:  You don't have to reveal any

19  sort of trial strategy, if you don't want to, but do

20  you intend to try to deny that Mr. Garcia used,

21  trafficked drugs, did that with other people?

22          MS. SIRIGNANO:  Your Honor, Mr. Garcia is

23  not charged with drug trafficking in this case.  He's

24  charged with being a felon in possession of a

25  firearm, a violation of 18 United States Code 924(c),

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and the VICAR attempt to murder against Mr.

 2    Marcantel.  So if the Government wants to file a

 3    404(b) motion to explain why it intends to bring in

 4    my client's prior convictions from 1995 --

 5              THE COURT:  Well, I guess that's what

 6    they've done with their letter.  And almost all this

 7    is not 404(b).  But we may have one with this 1995,

 8    that they're concerned that there may be -- that

 9    Mr. Garcia may attempt to establish that any

10    connection he had with drugs was an accident or

11    misidentification, or something like that.  So they

12    want this 404(b) evidence in the wings, in case he

13    doesn't.

14              If you don't want to tell me your strategy,

15    what I'd be inclined to do is we've identified this.

16    I'll just have to rule at the time, get a temperature

17    as to what your defense is through either your

18    cross-examination in the Government's case-in-chief,

19    or as you begin to put it on, they may be allowed to

20    put it on in rebuttal.

21              MS. SIRIGNANO:  I understand what you're

22    saying, Judge.  The Government's motion didn't

23    identify these as 404(b) specifically, and the

24    Government has yet to say other than mistake or

25    denial of -- it wasn't me, why they would be offering
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5317

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 121318

```
 1   it.

 2            My point is, Judge, is that they are highly

 3   prejudicial.  They have nothing to do with the SNM,

 4   and they occurred prior to when the Government

 5   alleges that Mr. Garcia joined the SNM, which was

 6   1999.  So without revealing any trial strategy, I

 7   understand what they're trying to do.  I just think,

 8   after a 403 balancing test, this conviction was

 9   looked at by the Court in the drug case pursuant to a

10   609 motion.  And the Court had ruled in that case

11   that the fact of the conviction, and not the actual

12   substance of the conviction, could be used if

13   Mr. Garcia took the stand.

14            So my position is, unless the Government

15   can show specifically under 404(b) why it wants to

16   enter this in as evidence, it's highly prejudicial

17   and should be excluded under a 403 balancing, Judge.

18            THE COURT:  Mr. Castellano, do you have

19   anything further on your letter or this motion?

20            MR. CASTELLANO:  Yes, Your Honor.  In

21   response to Ms. Sirignano's point, in the drug case,

22   if you recall, the Government said it would not

23   present any racketeering evidence whatsoever in that

24   case.  It was up to the defense whether they wanted

25   to open the door.  So we were talking about a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5318

1    different subject matter at that time.

2         The other thing about drug trafficking is

3    that the drug trafficking does affect interstate

4    commerce.  So it's not only racketeering activity,

5    but it's also something that affects commerce.  So

6    I'll get the Court thinking about this now.

7         Title 21, Section 801 -- I've highlighted

8    it.  We're going to ask the Court at some point for

9    an instruction indicating that drug trafficking does

10   affect interstate or foreign commerce.  That's a

11   finding by Congress.  And I'll make it a little bit

12   bigger for the Court to see.  So what Congress has

13   said that even -- sometimes, even when drug

14   trafficking is intrastate, it still has an effect on

15   interstate commerce.  I've asked for that at least

16   once before, and was granted that, at least in the

17   Aryan Brotherhood trials.  So I'll just put that on

18   the plate now, and the Court and parties can think

19   about that.  But that is an instruction we will

20   request, and that meets at least two elements of the

21   offense in this case.

22         THE COURT:  All right.  Anything else on

23   this motion, Mr. Castellano?

24         MR. CASTELLANO:  No, Your Honor.

25         THE COURT:  All right.  Anything further,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Ms. Sirignano, on this motion?

2              MS. SIRIGNANO:  Yes, Your Honor.  I'm still

3    unclear from the Government how they're going to try

4    and offer that first alleged bad act, whether or not

5    it's 404(b).  And now Mr. Castellano is switching.

6              THE COURT:  Do you mean the May 16, the

7    second bad act?

8              MS. SIRIGNANO:  Well, I think he's

9    referring to -- May 16, yes, Your Honor, I'm sorry.

10   That's number 2.  Either it's 404(b) or it's

11   enterprise --

12             THE COURT:  No, he's saying he agrees that

13   he probably can't use that for enterprise.  He's just

14   saying is if, particular to Mr. Garcia, if he comes

15   in at trial and suggests he's never used drugs, never

16   been in drug trafficking, then he'll use that to

17   establish that that is not the case.  As he likened

18   it, it's like the tractor-trailer cases we have out

19   here.  And that seems to me that that is a proper

20   purpose under 404(b).  But it's kind of tied to what

21   the defense is.

22             MS. SIRIGNANO:  Correct, Your Honor.

23             And I also understand from Mr. Castellano

24   that he's going to try and use these prior drug

25   convictions to satisfy his element under VICAR for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   interstate commerce.

2           THE COURT:  That's true, the other ones he

3   is.

4           MS. SIRIGNANO:  Okay, Judge.

5           THE COURT:  Have I captured your position?

6           MR. CASTELLANO:  You have, Your Honor.

7   Regarding the May 16, 1995 conviction, I'm not sure I

8   can tie that in to the enterprise.  If I can, I will.

9   And I'll submit supporting documentation to Ms.

10  Sirignano.  But at this point, I think that is

11  404(b).

12          THE COURT:  Okay.

13          MS. SIRIGNANO:  We'll await the

14  documentation, Judge.

15          Judge, looking at that front page, please,

16  and it is number 5, counting down, "On or about

17  February 19, 2004, Christopher Garcia was shot by

18  rival gang member SD at the defendant's residence."

19  I don't understand how this could be a bad act.  My

20  client was shot in the abdomen, and he still suffers

21  complications from that.  This wasn't his action.

22  Someone shot him.

23          THE COURT:  Well, you don't want it in the

24  trial, right?

25          MS. SIRIGNANO:  It doesn't need to be in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25322

1    the trial, Judge.

2            THE COURT:  You don't want it in, right?

3            MS. SIRIGNANO:  I do not.

4            THE COURT:  So it's probably bad.  It's a

5    bad act of somebody.

6            MS. SIRIGNANO:  Well, how could him being

7    shot --

8            THE COURT:  But I mean, I guess I've got to

9    be liberal to you.  If you don't want it in, then --

10           MS. SIRIGNANO:  The only reason why I don't

11   want it in is because I don't believe it's his

12   actions.

13           THE COURT:  No, I think you want it out for

14   other reasons.  You don't want the fact that

15   Mr. Garcia is in one gang, and he's being shot by

16   another gang?  You don't want that in the trial.

17           MS. SIRIGNANO:  My first argument, Judge,

18   would be that I don't understand how him being shot

19   is an alleged bad act on his part.

20           THE COURT:  Well, then, I guess if you

21   don't think it's 404(b), then it can come in without

22   filtering it through this motion, then.

23           MS. SIRIGNANO:  I'm sorry, Judge.  I didn't

24   understand you.

25           THE COURT:  Well, if you're saying it's not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5322

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5323

1    404(b) evidence, because it doesn't pertain to him,

2    if you're making that argument, then I don't guess we

3    need to argue it here, because it will come in for

4    just general rules, 401.

5            MS. SIRIGNANO:  I'm arguing that -- well,

6    it will come in as 401, yes, Judge.  I'm arguing here

7    we're look at a summary of alleged bad acts that the

8    United States --

9            THE COURT:  Well, I think we've noted that

10   the Government has been -- everybody has criticized

11   the overinclusiveness of this.  I mean, if you don't

12   think it's 404(b), then that's fine, we'll just

13   analyze it as 401 evidence.

14           MS. SIRIGNANO:  Thank you, Judge.

15           THE COURT:  Anything else?

16           MS. SIRIGNANO:  No, Your Honor.

17           THE COURT:  All right.  So then, as to all

18   the ones except the May 16, 1995, we'll just use the

19   same mechanism that we've had.  I think the

20   Government has established, at least to the Court's

21   satisfaction, based largely on their representations,

22   that they have evidence that, for the present time,

23   I'm not going to exclude any of that on the basis of

24   relevance.  None of that will come in under 404(b).

25   It will only come in if it's relevant to establishing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5323

```
 1    enterprise, or that the actions here were in

 2    furtherance of the enterprise.

 3            So the Government has agreed to -- so that

 4    the defendants can make an informed decision -- has

 5    agreed that it will, by January 22, indicate, A,

 6    which ones they're going to advance.  They may cut

 7    some of them out.  And then, secondly, what evidence

 8    they have in support.  So the defendants will then be

 9    able to make a more informed relevancy objection.

10            Again, I'd hoped everybody would really

11    eyeball this, particularly on the defendants' side,

12    when they decide whether they're going to raise an

13    objection.  Remember, it's a relevancy objection.

14    We're at a 401 on those.  So chances are, if the

15    Government's evidence can -- has any tendency to

16    prove the enterprise, or that the actions were taken

17    in furtherance, it's going to come in.  I'm not

18    making a determination whether it's by a

19    preponderance of the evidence or beyond a reasonable

20    doubt.  It's simply a 401 standard.  So be mindful of

21    that.

22            And then, as to the May 16, 1995 conduct,

23    for the present time, that is not going to be

24    relevant to establishing enterprise or the

25    furtherance of it.  So the Government will have to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5324

```
 1    notice the Court and the defendants back up on that
 2    if they're attempting to establish it's relevant.  It
 3    will just be 404(b).  It will only come in to the
 4    case if the defendant suggests, Mr. Garcia suggests,
 5    either through cross-examination, that that's his
 6    defense, or in his case-in-chief that he's raising
 7    the defense that he never was around any drugs, never
 8    used any drugs, didn't traffic in any drugs, didn't
 9    conspire with anybody else to do it.  If he stays
10    away from those defenses, either through
11    cross-examination or through his case-in-chief, then
12    that May 16 incident will not come in.
13            All right.  Anything else on that motion,
14    the bad acts or 401 enterprise furtherance that we
15    need to discuss, Mr. Castellano?
16            MR. CASTELLANO:  No, Your Honor.
17            THE COURT:  Ms. Sirignano.
18            MS. SIRIGNANO:  No, Your Honor.  Thank you.
19            THE COURT:  So that's how I'll rule on that
20    motion.
21            All right.  My papers are messed up here,
22    because we kind of went back and forth and did some
23    different things, and I never had them all clipped
24    together, responses and things.  But looking over
25    what Ms. Wild prepared as the clerk's minutes, which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5325

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29326

```
 1   was going to be prepopulated clerk's minutes, to help
 2   Ms. Standridge follow what we were doing today.
 3           It looks to me like we have completed the
 4   work that I brought down just for this week.  I know
 5   we have a number of outstanding motions that we need
 6   to continue.  Does anybody know or see anything on
 7   the packet that we -- oh, did I not do Mr. Perez'?
 8   Did I skip over it somehow?
 9           MR. CASTELLANO:  You did, Your Honor.
10           MS. FOX-YOUNG:  Yes, Your Honor, it was
11   filed a little bit later.  So I think it's Document
12   1558.
13           THE COURT:  Okay.  So it just didn't make
14   the list.
15           MS. FOX-YOUNG:  I think it made the list,
16   but somehow --
17           THE COURT:  Ms. Wild's list, because I
18   stopped with 1555.  So all right.  Well, let's take
19   it up then.
20           MR. CASTELLANO:  May we approach on that
21   one, Your Honor?
22           THE COURT:  Approach the bench.
23           (The following proceedings were held at the
24   bench.)
25           MR. CASTELLANO:  For each of these, I've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5326

1    normally been putting the document on the visualizer.

2    On Mr. Perez, I'll just tell the Court which ones I

3    want to include, but there is a crime on here I'm

4    going to keep out from the rest of the group.

5         MS. FOX-YOUNG:  Is there even anything on

6    this first page you want to do?  They're all so old.

7         MR. CASTELLANO:  I'm talking about the last

8    three on the page.

9         MS. FOX-YOUNG:  Want to do the Ferris

10   Bueller dummy?

11        MR. CASTELLANO:  Possibly.  I'll see.  I'm

12   just bringing that to the Court's attention.  I don't

13   want to draw attention to the first part.

14        MS. FOX-YOUNG:  Do you want to just put

15   something over this first eight, or whatever it is?

16        MR. CASTELLANO:  I'll tell the Court that

17   the bottom three on the first page are at play.

18        THE COURT:  So you're just going to give

19   me -- on his letter you're just going to give me the

20   information orally.

21        MR. CASTELLANO:  Yes.

22        THE COURT:  I'm not sure you attached it to

23   your motion, unless it was the letter.

24        MS. FOX-YOUNG:  It's attached in the

25   filing.  And I'm sorry, I don't have a printed copy

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5327

1   of it.  It's an exhibit to 1558.

2              THE COURT:  1058.

3              MS. FOX-YOUNG:  It's an exhibit to this

4   Document 1558.  I don't have it printed out.

5              THE COURT:  Ms. Standridge, can you print

6   out -- there is an attachment to this 1558.  Can you

7   print it?  So you're just going to give me or rely on

8   the information you would normally put on the screen,

9   is that what you're telling me?

10             MR. CASTELLANO:  What I'll do, I'll just

11  ask the Court to -- I'll let the Court know that the

12  last three entries on that page are in play, and that

13  the conduct or the allegation for the 1987 to 1993,

14  we think are not in play.

15             THE COURT:  Okay.  All right.  Okay.  And

16  do you have either for the -- what -- for the rest of

17  the document you have tying them to overt acts?

18             MR. CASTELLANO:  Mr. Perez was not charged

19  in the RICO indictment, so I do not have overt acts

20  for this.

21             THE COURT:  All right.

22             MR. CASTELLANO:  We can clarify that also

23  in the larger group.

24             THE COURT:  All right.  Anything else?

25             MR. CASTELLANO:  No, sir.  I just wanted to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5328

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132329

```
 1   let the Court know that.

 2              THE COURT:  Okay.

 3              (The following proceedings were held in

 4   open court.)

 5              THE COURT:  All right.  I haven't been all

 6   the way through the motion, but I now have the

 7   motion, and I now have the attachment to the motion,

 8   which is Ms. Armijo's letter of November 30.  All

 9   right.  So you're going to do orally what we've been

10   doing a little bit on the screen.  So you're going to

11   tell me which ones are out, Mr. Castellano?

12              MS. FOX-YOUNG:  Your Honor, could I just

13   make a few remarks before we get into it on our

14   motion?

15              THE COURT:  I should have allowed you to do

16   so.  Yes, you may.

17              MS. FOX-YOUNG:  Your Honor, the Government

18   alleges, I think, approximately 30 acts or provided

19   notice of approximately 30 acts.  I'd just tell the

20   Court we contest that any of these are relevant to

21   the establishment of the enterprise, or -- and also

22   were not conducted in furtherance of the activities

23   of the enterprise.  I think we have, in the interests

24   of efficiency, knocked out the first few, which

25   should make our work a little bit easier.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5329

```
 1              But I'll tell the Court, even on the
 2    Government's evidence and allegations, the Government
 3    doesn't even allege that Mr. Perez was a member of
 4    the SNM, was a validated member until 2009.  And so
 5    the only acts that occur after that in this listing
 6    are the final eight.  Of those -- and we contest the
 7    relevancy of the others as well -- and I won't get
 8    into 404(b), unless the Government intends to notice
 9    them that way.  But in addition to the fact that
10    these -- you know, alleged crimes are crimes
11    committed on the streets, sort of minor disciplinary
12    issues, I'm looking at the last eight.  In custody
13    are unrelated to the enterprise in any way.  We also
14    have an issue where I think three of them may not be
15    Mr. Perez.  And not having seen the underlying
16    documents, I can't be certain, and maybe Mr.
17    Castellano has more on that.  But just looking at an
18    NM Court search, and trying to chase them down with
19    what we do have, I think the May 6, 2010, the August
20    31, 2010, and the February 10, 2012 incidents may not
21    be this Rudy Perez.  But perhaps the Government has
22    the supporting documents which we have not received.
23              Thank you, Your Honor.
24              THE COURT:  All right.  Thank you, Ms.
25    Fox-Young.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5330

```
 1              All right.  Mr. Castellano, Ms. Fox-Young
 2    indicated y'all had talked and some of these are off
 3    the table.
 4              MR. CASTELLANO:  Yes, Your Honor.
 5              THE COURT:  Do you want to give me which
 6    ones the Government will not be pursuing at trial?
 7              MR. CASTELLANO:  So on the first page of
 8    the document we think at play at this point are the
 9    bottom three allegations on page 1.  So December 2,
10    1994, would be the first one on that page.
11              THE COURT:  Okay.
12              MR. CASTELLANO:  And then I haven't
13    finished discussing this with Ms. Fox-Young, but on
14    the second page I have marked through a few, which I
15    think we can agree on.
16              THE COURT:  Okay.
17              MR. CASTELLANO:  If I have any reason to
18    believe otherwise, I'll provide the documentation.
19    But at this point I don't think that we will.
20              THE COURT:  Okay.  Do you want to give
21    those to me?
22              MR. CASTELLANO:  Yes, on page 2, there is
23    March 21, 2002, fraud.  I have this one up on the
24    screen.
25              THE COURT:  Oh, okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5331

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

```
 1              MR. CASTELLANO:  Then June 27, 2002.

 2              THE COURT:  Okay.

 3              MR. CASTELLANO:  August 28, 2008.

 4              THE COURT:  Okay.

 5              MR. CASTELLANO:  And July 29, 2010.

 6              THE COURT:  All right.

 7              MR. CASTELLANO:  And in terms of the

 8   documents that Ms. Fox-Young referenced, I don't have

 9   anything at this point.  He was another one I wasn't

10   able to check the underlying documents beforehand.  I

11   will say that things like --

12              THE COURT:  Now, what I understand is Mr.

13   Perez is not charged in the RICO counts, so we're not

14   talking about any of these being alleged or pled as

15   overt acts?

16              MR. CASTELLANO:  That's correct, none of

17   these are alleged in overt acts in the RICO

18   indictment.

19              THE COURT:  So are you intending to use any

20   of these as in any way to establish the enterprise or

21   that they were done in furtherance of the enterprise?

22              MR. CASTELLANO:  Yes.

23              THE COURT:  Do you want to identify which

24   ones you're going to so use?

25              MR. CASTELLANO:  I'll go with the ones that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5332

```
 1    I think are easier, since I don't have the documents.

 2    On the first page, the assault on two inmates in

 3    April of 1996.

 4               THE COURT:  Okay.

 5               MR. CASTELLANO:  On September 23, 1996 -- I

 6    have to look at the documents on that one.  It's

 7    related to a dummy made out of clothes on his bunk.

 8    I don't recall what that was about.

 9               THE COURT:  Okay.

10               MR. CASTELLANO:  May 7, 2003, he possessed

11    a stinger, a homemade weapon.  So that would be the

12    expectation that members, and many times inmates,

13    sometimes are required to have homemade weapons or

14    shanks for protection and to assault others.

15               And then the other ones related to crimes

16    of violence would be assaultive behavior related to

17    the SNM.  But once again, those I'm going to have to

18    find the underlying documents.

19               THE COURT:  Is that the next one, December

20    31?

21               MR. CASTELLANO:  Yes.  And the following

22    one on February 14.

23               THE COURT:  Okay.

24               MR. CASTELLANO:  That's the same with all

25    of those.  There is a possession of a controlled
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5333

1    substance and breaking and entering in 2007.  I'm

2    going to have to look at those more closely.  In

3    2008, there is bribery of a witness.  That one could

4    be in play based on allegations in the indictment of

5    bribery or intimidation of witnesses.  But for each

6    of these, frankly, I will have to go back and look

7    more closely at the documents.

8            THE COURT:  All right.  Let me ask the

9    question this way:  If you cannot establish any of

10   these as related to the enterprise -- I'm putting

11   little e's next to these ones that you've

12   identified -- if the evidence doesn't pan out for

13   enterprise, will you agree not to try to get them in

14   through 404(b), to establish some other legitimate

15   purpose?

16           MR. CASTELLANO:  I think the answer is

17   probably.  Especially, if we have things like

18   assaults or batteries on the street, then I think

19   there is a pretty good chance we will not move the

20   admission, even under 404(b).

21           THE COURT:  All right.  Here's what I

22   propose:  I propose to -- let me give the numbers

23   here, April 11, 1996, September 23, 1996, May 7,

24   2003, December 31, 2005, February 14, 2006, July 2,

25   2007, and January 18, 2008.  For those, those are on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5334

```
 1    the table.  The Government will give you proof that
 2    those will be used, how they'll use those, or how
 3    they'll prove those.  So that you can determine
 4    whether they're relevant to enterprise or furtherance
 5    of the enterprise; understanding Mr. Perez wasn't
 6    charged with that, but it's still evidence that can
 7    be used to establish those things.  And that will
 8    allow you to make a more informed objection to
 9    whether those actually prove it.
10         The rest will not come in through 404(b).
11    If Mr. Castellano wants to put something back on, he
12    needs to do that pretty promptly so that we can
13    discuss it.  But for the present time, they're off
14    the table for 404(b).  On some of the others, if he
15    wants to look and put them in what I'm calling the
16    enterprise, he needs to do that by January 22, and
17    then provide you the information that he's agreed to
18    provide the others.
19         Is that acceptable to the Government, Mr.
20    Castellano?
21         MR. CASTELLANO:  It is, Your Honor.  I'd
22    like to add two more to that list.
23         THE COURT:  Okay.
24         MR. CASTELLANO:  One is a May 6 to, 2010
25    possession of a controlled substance.  And the caveat
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is, if that was in prison; there is no indication

2    from the notes that it is.  And then on June 6, 2010,

3    inciting other inmates, if that is SNM related.  So

4    we would have to tie that in.

5           THE COURT:  Okay.  Otherwise, what I said

6    is acceptable to the Government?

7           MR. CASTELLANO:  It is.  Can you give me

8    the ones prior to May 7, 2003?  That's where I was

9    caught up, but I missed the ones before that.

10          THE COURT:  I had the April 11, 1996 event,

11   and the September 23, 1996 event, is what I'm putting

12   them in the e box, where they're going to be relevant

13   to enterprise or furthering the enterprise activity,

14   or they're not going to come in at all.

15          MR. CASTELLANO:  We agree, Your Honor.

16   That's acceptable.

17          THE COURT:  Can you agree to that

18   mechanism?  Because, basically, you're not going to

19   see any 404(b) evidence at trial.  You're only going

20   to see this coming in, if at all, to support their

21   proof on enterprise and furtherance of the

22   enterprise's activities.

23          MS. FOX-YOUNG:  Yes, Judge.  I think the

24   mechanism is fine.  And we'll just renew any

25   objections at such time as they provide the proof on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5336

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 140

```
 1    those.

 2              Thank you, Judge.

 3              THE COURT:  Let me ask you, Mr. Castellano:

 4    Do you think, since Mr. Perez is not charged in the

 5    racketeering side, that his 403 arguments have more

 6    force than the folks who are charged with

 7    racketeering activities, because this evidence is

 8    being used -- it's prejudicial to the defendants, but

 9    it's being used to establish the enterprise, which is

10    relevant solely to other defendants; that the 403

11    argument might have more force coming from Mr. Perez

12    than it would be from the others who are charged with

13    overt acts?

14              MR. CASTELLANO:  I don't think I could

15    agree to that, Your Honor.  I think, because when it

16    comes to a VICAR count, which Mr. Perez is charged

17    with, we only have to prove that the enterprise

18    engaged in racketeering activity.  So any member of

19    the enterprise who does these things, it would be

20    attributable to the enterprise and to the other

21    defendants.

22              THE COURT:  Yeah, I think I agree with

23    that.

24              All right.  If we've taken care of, then,

25    his bad acts, I'll put that aside.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5337

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

```
1              What -- do y'all have an understanding from

2    Ms. Wild what we're moving to now that we've

3    completed the things I brought down for these three

4    days?  Mr. Castellano?  Ms. Armijo?  Did y'all have

5    some understanding if we were going to complete the

6    James hearing or the suppression hearings we were

7    going to try to clean up?  What did y'all understand

8    we were going to do if we got through this stack?

9              MS. ARMIJO:  I think we were going to

10   finish the James hearing.

11             THE COURT:  James hearing.  Defendants have

12   any disagreement?

13             MS. HARBOUR-VALDEZ:  That was our

14   understanding.

15             THE COURT:  So shall we take that up after

16   lunch then?  All right.  So we'll see y'all after

17   lunch.  Have a good lunch.

18             (The Court stood in recess.)

19             THE COURT:  All right.  Let's go on the

20   record here.  I think we've got an attorney for each

21   defendant.  Look around the room, make sure everyone

22   has an attorney.

23             All right.  Mr. Castellano, you indicated

24   that y'all had worked with Ms. Wild to move then to

25   the James hearing.  Can you remind me where we are in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5338

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 142 of 339

1    that proceeding?

2            MR. CASTELLANO:  When we last left off, I

3    believe some people were cross-examining Agent Acee

4    regarding statements.  And I don't know if anyone has

5    any cross remaining.

6            THE COURT:  All right.  Why don't I ask you

7    to return to the witness stand, Mr. Acee, and I'll

8    remind you that you're still under oath.

9            Did anyone who was questioning at the time

10   need to finish theirs?  I know Mr. Lowry was up.  But

11   was there anybody that was in the midst of

12   questioning Mr. Acee when we took a break?

13           MR. LOWRY:  That was myself.

14           THE COURT:  You were up?  Okay.  So you

15   want to continue, Mr. Lowry?

16           MR. LOWRY:  I do, Your Honor.

17           And I just have one housekeeping matter I

18   want to address before we get going, if that's okay.

19           THE COURT:  You may.

20           MR. LOWRY:  Your Honor, at the beginning of

21   this week's hearings, I took over from Ms. Sirignano,

22   it's Document 1454 -- no, pardon me, there are too

23   many documents in this case, Your Honor -- but it was

24   Document 1329.  And it was the motion for an order to

25   show cause.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5339

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

```
 1              I've worked with my colleagues on the other
 2    side of this, and we've ironed out understandings on
 3    all the issues.  But after -- I want to -- frankly, I
 4    want to pick up on a riff that the Court had this
 5    morning about, you know, just the frustration level
 6    in the courtroom.  And it just reminded me of that
 7    with the FBI agent that testified today, you know.
 8    The reason I'm bringing this up is because, back in
 9    May, at the hearings there were numerous motions to
10    compel a lot of it dealing with Brady and Giglio
11    material.  And at the time, you had asked the
12    Government to look at rough notes and things like
13    that from FBI agents, and to lay eyes on those
14    documents, to see if there is any Brady or
15    Giglio-type material there.  And it's just
16    disconcerting to the defendants and to counsel, when
17    we hear from an agent, like we did just now on the
18    stand, that, you know, they just got a request for
19    their rough notes yesterday.  So we have no reason to
20    believe that that kind of Brady review has been done.
21    And it just speaks to the merits of this motion for
22    an order to show cause.
23              Now, I'm not a big fan of orders to show
24    cause.  But I think it bears repeating, we heard this
25    last week as well.  We saw a number of witnesses come
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5341

1   in and they're employees with the Department of

2   Corrections, and not necessarily low-level employees,

3   Deputy Director Roark is a high-ranking employee with

4   the Department of Corrections.  And they all had

5   material that is relevant and disclosable in this

6   case, some of which is Brady material.

7          And I just want to implore the Court to

8   work with the defense teams, and you know, get our

9   colleagues in the U.S. Attorney's Office to perform

10  the type of Brady review that this Court requested

11  back in May of this year.  So --

12         THE COURT:  Well, is the motion, though,

13  that, the show cause, is there anything else to be

14  done on that?  Did you reach an agreement with --

15         MR. LOWRY:  We reached an agreement on

16  everything, and we're actually working on that.  But,

17  if you look at the motion itself -- and the United

18  States responded at Doc No. 1401, and the defendants

19  replied at Document 1454.

20         But the part -- the reason I'm bringing

21  this up now is one of the things that was left

22  outstanding -- and I did talk with my colleagues, and

23  I told them I was going to bring this to the Court's

24  attention, and that was before the testimony today --

25  but on page 4, there is a bullet point that -- one of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5341

1    the requests is to review or disclose Brady, Giglio,

2    and Rule 16 notes of CHS law enforcement handlers

3    within 14 days.  And there is a cite to the May

4    transcripts in here.

5           And, again, it bears repeating, especially

6    in light of the testimony that we just heard, that

7    the request hadn't even been made for Eric Duran's

8    handler.  And, obviously, Eric Duran is going to be a

9    key witness for the Government.  And, frankly, if

10   it's an oversight, it's an oversight that's, in my

11   view, inexplicable.

12          THE COURT:  All right.  What's your

13   request, though?

14          MR. LOWRY:  Well, I think at this point,

15   you know, everybody was familiar with the Court's

16   ruling after the May hearing -- and I believe that's

17   Doc 907, when the Court in a very lengthy opinion

18   walked through the remedies, and all of this, you

19   know, the requests.  And the Court laid out in very

20   detailed fashion what the appropriate response is,

21   and asked the parties to work, as this Court always

22   does, in a collegial and professional fashion.

23          And when I filed our request for Brady and

24   Giglio materials, you know, months ago, I

25   acknowledged the Court's position.  And my last

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5342

```
 1    sentence in that motion was, you know, we're waiting

 2    patiently.  But patience wears thin.

 3            And I think as we approach -- and I'm not

 4    going to be good with the days, but I think you said

 5    it this morning we're, what, maybe 31 days from

 6    trial.

 7            THE COURT:  I think we're 39 days from

 8    trial.

 9            MR. LOWRY:  This is the type of material

10    that we need to be working with and working on, to

11    develop the defenses in this case.  So, at this time,

12    I think we need to ratchet up the remedy a little

13    bit.  And I know that the Court said maybe it's a

14    limitation on the scope of testimony of a witness, or

15    maybe it's a striking of a witness.  But if we can't

16    get the raw material that this Court ordered to be

17    produced in May of this year, and we're this close to

18    trial, I think that the Court has to consider other

19    appropriate remedies that the circuits have

20    authorized the Court to consider.

21            THE COURT:  Well, but what are you asking

22    me to do?  On one hand, you're telling me that you've

23    worked with the Government to resolve all outstanding

24    disputes.  But I'm just hearing kind of a complaint.

25            MR. LOWRY:  Well, it's not a complaint.  We
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   just heard from the FBI agent that she has rough

2   notes.

3           THE COURT:  What do you want me to do?

4           MR. LOWRY:  I want you to order them to be

5   produced.

6           THE COURT:  I think they've agreed to

7   produce it.  They're shaking her heads yes, it's

8   going to be produced.

9           MR. CASTELLANO:  If I remember correctly,

10  this morning I couldn't remember but I think Ms.

11  Armijo reminded me that the CI file for Eric Duran

12  was disclosed on Monday.  So the defense can confirm

13  that or not.

14          THE COURT:  That's en route to Mr. Aoki?

15          MR. CASTELLANO:  I believe it was sent to

16  him on Monday, if I'm not mistaken.

17          MR. LOWRY:  In fairness to my colleagues

18  here, they worked with us and got us materials that

19  were relevant to the ELSUR motion, Your Honor.

20          But I guess I've been asking for these

21  rough notes for some time.  And we hear today that

22  they do exist.  And they weren't even brought to the

23  courtroom.  And this is in light of multiple

24  requests.

25          So I guess, Your Honor, if the Court is not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5344

```
 1    inclined for any other relief, can we expedite that,
 2    so we can get them in the next couple of days?  There
 3    is scans.  There is fax.  I mean, there is ways to
 4    make that happen.
 5              I would just ask to admonish the United
 6    States that they know who the key witnesses are in
 7    this case.  They know who the right folks at the
 8    Department of Corrections are.  We heard about the
 9    STIU unit.  And this gives me some concern.  They've
10    disclosed what the testimony was, I believe, from
11    Adam Vigil, that there is a hard STIU file.  And
12    that's what we got.  But he also testified at length
13    about a soft STIU file.  And nobody has seen the,
14    quote, "soft STIU files."
15              And the sense I've had from all the
16    hearings we've had is there is materials scattered
17    hither and yon.  And we're not seeing the light of
18    day of any of it.
19              And as we approach trial, I get more
20    concerned about substantial reservoirs of, as
21    Ms. Jacks pointed out, exculpatory material, in the
22    sense that they debrief with these folks; some people
23    say:  These folks are involved, but not those.
24    Others have a different set of people that are
25    involved.  The absence of involvement is exculpatory.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5345

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 149346

1   And I think all of these materials need to be sifted

2   and reviewed and disclosed.

3          And I wish I had a more confident feeling

4   that that was being done in a methodical, timely, and

5   efficient manner.  And it is a complaint, Your Honor.

6   But I think it's a complaint worth taking notice of,

7   given the testimony we've seen over the course of the

8   last two weeks.

9          It's not just a complaint.  It's a

10  complaint with merit.

11         THE COURT:  Well, I guess I don't agree

12  with Ms. Jacks, that just because a name doesn't

13  appear, that's exculpatory.  I think that reads Brady

14  way too broadly.  So I'll not adopt that.

15         Now, you're getting the file.  There is no

16  guarantee it contains either Rule 16, exculpatory, or

17  Brady material.  So the Government is just providing

18  it to you.  I won't order any special deadlines on

19  it.

20         So right at the moment, with the resolution

21  of the motion to show cause, I don't see a problem.

22         So let's continue our examination of Mr.

23  Acee at this time.  Mr. Lowry.

24              JAMES HEARING RESUMES

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5346

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150

```
 1                        BRYAN ACEE,

 2          after having been previously sworn under oath,

 3          was questioned and testified as follows:

 4                        EXAMINATION

 5   BY MR. LOWRY:

 6          Q.   Agent Acee, good afternoon.

 7          A.   Good afternoon.

 8          Q.   Agent Acee, you were the handler for Eric

 9   Duran?

10          A.   Yes, sir.

11          Q.   And was testimony we heard this morning

12   correct that you took over those responsibilities in

13   early August of 2015?

14          A.   Yes, sir.

15          Q.   And as part of your working with Mr. Duran,

16   you spoke to him about how to record statements?

17          A.   That's fair to say.  I mean, he'd already

18   had a device and was in the facility by the time I

19   met him.

20          Q.   And one of the things you reminded Mr.

21   Duran of is that he was essentially working for the

22   Government?

23          A.   Yes.

24          Q.   And you implored him, when he was making

25   recordings, that he had to get two people to speak
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5347

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 151

```
 1    directly to each other, because his status as a
 2    Government agent, individuals could not conspire with
 3    him?
 4         A.   Yes, at times.  Because he'd set up drug
 5    deals on the street, yeah.
 6         Q.   But that's a point you wanted to emphasize
 7    with him, that because he's a Government agent, you
 8    cannot conspire with a Government agent?
 9         A.   Correct.
10         Q.   Did you have a similar conversation with
11    Mario Montoya?
12         A.   Yes.
13         Q.   And when did you open a file for Mario
14    Montoya to become a Government agent?
15              MR. CASTELLANO:  Objection, relevance.
16              MR. LOWRY:  The relevance, Your Honor, is
17    for the James hearing, the three prongs:  We have to
18    show, one, that there is a conspiracy.  And I think
19    what the agent just testified is it's impossible to
20    conspire with the Government agent.  So the timing of
21    this would be critical for the defense to understand
22    what statements made to Mr. Montoya were during that
23    period of time.
24              MR. CASTELLANO:  Well, we agree that the
25    Government cooperator cannot be a member of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5348

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152 5349

```
 1   conspiracy.  But we're not focusing on the actual

 2   statements themselves to make that determination.

 3            THE COURT:  Well, I'll overrule the

 4   objection.  He can state when he opened the file.

 5       A.   It's tough for me to say exactly when.  But

 6   it was fairly early on in my opening of the SNM case.

 7       Q.   Do you think it was before August of 2015?

 8       A.   No.

 9       Q.   Can you just give us a month?

10       A.   I can't.  I can get back to you with an

11   exact date.

12       Q.   Okay.  I appreciate that.  I'll take you at

13   your word on that.

14       A.   Before the day is over, I can have an

15   answer.

16       Q.   Thank you.

17            Is it fair to say that in the recorded

18   calls from Duran to the people outside of the

19   facility that there was some effort on the part of

20   the folks inside the facility to keep Chris Garcia in

21   the dark about why they needed weapons?

22       A.   I think that there was initially -- that's

23   true initially of Mr. Baca, from my interpretation of

24   the conversation.

25       Q.   And again, but not just your
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 153

```
 1    interpretation, but the recordings actually reflect

 2    that they didn't want Mr. Garcia to have any idea

 3    what they were doing?

 4        A.   Yes, that's what I'm trying to say.

 5        Q.   Okay.  Did you have to instruct Mr. Montoya

 6    to inform Mr. Garcia what the purpose of the weapons

 7    was for?

 8        A.   I think I did.

 9             MR. LOWRY:  No further questions, Your

10    Honor.

11             THE COURT:  Thank you, Mr. Lowry.

12             Any other defendant have questions of Mr.

13    Acee on this portion of the James hearing?

14             All right.  Mr. Castellano, do you have

15    redirect of Mr. Acee?

16             MR. CASTELLANO:  No, Your Honor.

17             THE COURT:  All right.  Mr. Acee, you may

18    step down.  Thank you for your testimony.

19             All right.  Mr. Castellano, on this portion

20    of the James hearing, do you have further witnesses

21    or evidence?

22             MR. CASTELLANO:  No, Your Honor.

23             THE COURT:  All right.  How about the

24    defendants?  Do they have witnesses or evidence they

25    wish to present?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5350

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154 5351

```
 1              All right.  Mr. Castellano, do you want to
 2      argue this motion?
 3              MR. CASTELLANO:  Your Honor, there has been
 4      a question and ongoing discussion between the parties
 5      about how best to proceed at this point.  So the
 6      Government has introduced the statements, a large
 7      number of statements.  And so I think everyone is
 8      looking for a little guidance on whether we just
 9      argue about categories of statements, or whether the
10      Court is interested in going over each of the
11      statements to discuss why they're co-conspirator
12      statements, and things of that nature?  And I'm happy
13      to do it either way.
14              Also, do you have the plea agreements that
15      were introduced at the beginning of the James
16      hearing?  It was about 15.
17              THE COURT:  I have not taken any exhibits
18      over the last two weeks back to Albuquerque.  So
19      they're probably somewhere here.  Let me see what I
20      got here.  Because we haven't been finishing, I'm
21      reluctant to take anything back.  I have what has
22      been marked as Exhibits 1 through 15, which I think
23      were the plea agreements, am I correct?
24              MR. CASTELLANO:  Yes.
25              THE COURT:  So attached, so Exhibits 1
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5351

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

1    through 15 to the James hearing, I do have.  Do you

2    need to look at them?

3              MR. CASTELLANO:  Yes, please.

4              THE COURT:  All right.  Do you need 16A?

5    This is just all the exhibits.  Let me just hand

6    those back.  Those are the exhibits to the James

7    hearing.

8              MR. CASTELLANO:  One of the purposes of the

9    exhibits was to establish the elements of the

10   co-conspirator statement.  So as the Court knows, we

11   have established the existence of the conspiracy,

12   membership of the conspiracy, and that the statements

13   were made in furtherance of the conspiracy.

14             So I'm looking at Government's Exhibit 1.

15   It's a plea agreement by Mario Rodriguez.  And so

16   there is evidence of the existence of the conspiracy.

17   He pled guilty to the charge.  And then, on page 6 of

18   11 of his plea agreement, there is discussion of not

19   only the conspiracies in which he was involved, but

20   who was involved.  And so I'll just use this as one

21   example.  But for each of these there is evidence of

22   the existence of a conspiracy, just through the plea

23   agreements themselves, which were sworn statements

24   given to a Court.

25             So for purposes of the Molina murder, there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5352

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156

```
 1   is the existence of the conspiracy contained within
 2   this document.  And it names Carlos Herrera, Timothy
 3   Martinez, Jerry Montoya, Daniel Sanchez.  And I may
 4   be missing some names, I'm glossing over it.  But
 5   clearly there is a conspiracy.  And we have members
 6   of that conspiracy listed in this document alone.
 7   And so I would argue the same for each of these.
 8   Jerry Montoya would be related to the Molina murder.
 9   Same with Timothy Martinez and Jerry Armenta.
10            Also, look at the plea agreements for
11   Robert Martinez.  That's Exhibit Number 10.  In that
12   exhibit he states at the bottom of page 5, he
13   conspired with Roy Martinez, Anthony Baca, and others
14   to murder GM and DS, which we know is Gregg Marcantel
15   and Dwayne Santistevan, and lays out a little bit of
16   the conspiracy.  So that's the existence of the
17   conspiracy to murder Santistevan and Marcantel.  And
18   an admission in there that he did conspire with
19   others to commit that murder.
20            Roy Paul Martinez has a plea agreement,
21   which is Government's Exhibit 11.  And in there he
22   admits that he conspired with Robert Martinez and
23   Anthony Baca to murder Gregg Marcantel and Dwayne
24   Santistevan.
25            So a number of these conspiracies -- I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   not sure if it's all of the -- but many, if not all,

 2   are covered.  So I tender those to the Court for

 3   purposes of the James hearing to establish the

 4   existence of those conspiracies.  And it also names

 5   members of those conspiracies.

 6          So I think at that point, for the most

 7   part, we can move on to the in furtherance

 8   discussion.  So if can I talk about the statements as

 9   a whole, as we briefed this, this is a page from one

10   of our responses, Document 1243.  And in the in

11   furtherance discussion on page 5, we indicate that

12   "Statements made to induce enlistment, or further

13   participation in the group's activities, to prompt

14   further action on the part of conspirators, to

15   reassure members of the conspiracy's continued

16   existence, to allay the co-conspirators' fears or

17   keep co-conspirators abreast of an ongoing

18   conspiracy's activities are examples of statements

19   which are in furtherance of a conspiracy.

20          "Similarly, statements which identify other

21   members of the conspiracy, and statements regarding

22   the roles of other co-conspirators are statements

23   which are made in furtherance of the conspiracy."

24          In the last questioning, Mr. Lowry touched

25   on this a little bit.  It doesn't necessarily matter

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5354

```
1    who you're speaking to, as long as there is a
2    conspiracy.  So what matters is not to whom the
3    statements are made, but the declarant's intent in
4    making the statement.
5            Also, the statement itself doesn't have to
6    further the conspiracy to be admissible.  It's enough
7    that the statements be intended to promote the
8    conspiratorial objectives.
9            So in one of the statements we discussed,
10   as we were introducing the statements, was a
11   statement by Mr. Baca to one of the cooperators.  And
12   he indicated that Chris Garcia would finance the
13   operation, meaning the conspiracy to murder Gregg
14   Marcantel.  So that would be one example of where one
15   member of the conspiracy identifies another member of
16   the conspiracy.  And it doesn't necessarily matter
17   when Chris Garcia joined that conspiracy.  He's
18   ultimately responsible for what was contained in the
19   conspiracy when he joins.
20           So that's my overview of these statements.
21   And there is a Tenth Circuit case from this year,
22   Alcorta, 853 F.3d, 1123.  And there is a modification
23   or an addition to statements that are in furtherance
24   of -- I'll find it here for the Court.  On, I believe
25   it's page 1137, of that opinion is a reiteration of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5355

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 159

```
 1   what I told the Court already about what can be used
 2   or what signifies a statement in furtherance of the
 3   conspiracy.  But then they had a little bit more on
 4   page 1139 of that case.  And it says, "When a
 5   conspiracy is ongoing, statements that relate to
 6   avoiding detection by law enforcement personnel can
 7   be in furtherance of the conspiracy.  Concealment of
 8   the crime done in furtherance of the main criminal
 9   objectives of the conspiracy falls within the
10   co-conspirator exception."  So that is something else
11   the Court can consider when looking at these
12   conspiracies.
13           Now, we're at the point, Your Honor, where
14   we could start getting into the statements.  That's
15   just kind of an overview.  However the Court wants to
16   do it, I'm happy to proceed that way.
17           THE COURT:  Let me propose this:  It
18   certainly seems to me there has been sufficient
19   evidence for the Court to find by a preponderance of
20   the evidence, which I think is the requirement on a
21   James hearing, that I find that the Government
22   established by a preponderance of the evidence that a
23   conspiracy exists; that the members, the defendants,
24   and the declarants were members of the conspiracy,
25   and that the statements that I have heard, that I've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5356

```
 1    listened to carefully, that I've looked at were made

 2    in furtherance.

 3            I think the Government has put on a fairly

 4    comprehensive demonstration for these statements.

 5    And these are the statements -- remember, that

 6    they're going to introduce pursuant to the

 7    co-conspirator statements.  And if they did not bring

 8    it into the James hearing, then we're not going to

 9    try to see it through the -- we're not going to see

10    the Government trying to get it in through a

11    co-conspirator statement.

12            So it's a fairly contained list of

13    statements that the Government has brought forward.

14    As I've listened to those, as I've read them, I have

15    not seen anything that would not come in under the

16    co-conspirator statement.

17            I guess what I would do -- I mean,

18    ultimately, it's the Government's burden, but I think

19    they've met their burden.  Unless the defendants

20    bring statements to me and say, you know, just as you

21    would in the course of trial, you'd make an

22    objection, and that's the way you note that they

23    haven't done it.

24            So it would seem to me that, probably, the

25    Government ought to sit down, and that I ought to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5357

```
 1    quiet, and see if anybody disagrees with the

 2    conclusion that I've reached.  It's a tentative

 3    conclusion, subject to your arguments.

 4              But I'm not sitting here seeing in the box

 5    that we've taken in James over several days, and now

 6    over several weeks -- so if the defendants want to

 7    challenge some and have me relook at them, and think

 8    of them in general, and have the Government argue in

 9    specific, I'm game.

10              But, otherwise, the box we have put the

11    Government in in these particular statements, I'm not

12    seeing why they shouldn't come in under

13    co-conspirator.  They seem to meet all three prongs.

14              Mr. Castellano, unless you have something

15    else you want to do, we might see if the defendants

16    want to pick up some individual statements.

17              MR. CASTELLANO:  I agree with that

18    approach, Your Honor.  I just want to add one

19    statement that came out of Billy Cordova's testimony.

20    He was talking to Daniel Sanchez through the door.

21    Daniel Sanchez told Billy Cordova, "I already hit him

22    up," meaning he had already taken the -- taken or

23    agreed to take the shanks from Mr. Perez' walker.  I

24    think that would clearly fall within James.

25              THE COURT:  I think so, too.  I mean, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5358

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 162 5359

 1    think, if you're going to have a statement where

 2    somebody is confirming that has occurred, that's what

 3    a business does.  It confirms these actions are

 4    taken.  So I would think that would fall within the

 5    co-conspirator statement as well.

 6              MR. CASTELLANO:  I don't have anything

 7    further, Your Honor.

 8              THE COURT:  All right.  Why don't you be

 9    ready to argue each one of these that the defendants

10    want to raise.

11              Anybody want to raise any particular

12    statement that they think is not going to fit in?

13              Mr. Lowry?

14              MR. LOWRY:  Thank you, Your Honor.

15              THE COURT:  Mr. Lowry.

16              MR. LOWRY:  Your Honor, I appreciate the

17    Court's attention over the last couple of weeks on

18    this hearing and these matters.

19              Your Honor, understanding the way this case

20    has been charged -- and I guess I'm going to beg the

21    Court's indulgence on what the Court means -- the

22    Court just ruled that you're inclined to conclude

23    that a conspiracy exists.  And this is something I've

24    been struggling with.

25              THE COURT:  Well, there is two conspiracies

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5359

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163

```
1    that the Government is proposing.  One on the Molina
2    murder, and then the other on the threats on
3    Marcantel.  And so those are the two conspiracies.
4    So we've taken those separately.
5             It seems to me that being precise, I think
6    that those two conspiracies exist.  And that,
7    therefore, in the box that we did of each one, it
8    seemed to me, listening carefully, I didn't see
9    that -- it seemed to me that they had established by
10   a preponderance of the evidence conspiracies on both
11   those boxes.  So a little bit more precise.  That's
12   what I meant.
13            MR. LOWRY:  Thank you, Your Honor.  Because
14   I just want to make sure if I understood the Court's
15   perspective.  I guess, for lack of a better term,
16   there have been two separate conspiracies that may
17   have overlapped at certain places with the players.
18            THE COURT:  They may have.  Although, the
19   way the Government has presented it, I think, has
20   been that they are separate conspiracies.  They all
21   go to trying to advance the cause of the enterprise.
22   But I think the way they've tried it, they mounted
23   the burden of them being separate conspiracies,
24   unless Mr. Castellano tells me something different or
25   I missed something.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5360

```
 1                   MR. LOWRY:  I just want to make sure we're
 2    all on the same page, Your Honor.
 3                   So I do have a bit -- and I want to take
 4    this as a broad category -- and think we just heard
 5    argument from the Government trying to address this
 6    with the citations to the "in furtherance" prong of
 7    the analysis.  And the Court said that, in its view,
 8    everything that the Court heard would come in under
 9    James.
10                   But I want to draw the Court's attention to
11    the recorded conversations with Mr. Perez that took
12    place years after the homicide.
13                   THE COURT:  Do you have either this you can
14    put on the Elmo, or do you have Mr. Acee's -- the
15    outline that he was reading from so, that we can
16    really zero in on the statement?  If you don't, we'll
17    manage without it.  But it helps me to see it if you
18    have it.
19                   MR. LOWRY:  Absolutely, Your Honor.  I have
20    citations to the transcript.
21                   MR. CASTELLANO:  I think Mr. Perez' was
22    Exhibit 16.  I believe that was a single transcript.
23    And Mr. Lowry is welcome to borrow mine.  I have
24    tabs.
25                   MR. LOWRY:  I have it here, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5361

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165362

```
 1    Here it is on the Elmo.
 2              THE COURT:  Do you want to identify this
 3    for the record?
 4              MR. LOWRY:  Sure.  For the record purposes,
 5    Your Honor, this is Government's Exhibit 16.  And
 6    this is at DeLeon Bates No. 20529.  And as you can
 7    see from the date of the recording, this is in
 8    February of 2016, so the Molina event was March --
 9              THE COURT:  So this is Mr. Cordova
10    recording Mr. Perez?
11              MR. LOWRY:  That's correct, Your Honor.
12              And if you move throughout the document
13    that I believe Mr. Castellano had highlighted, there
14    are statements in here, and they're attributing some
15    of these statements to Mr. Baca.
16              THE COURT:  All right.  Why don't you pick
17    which one, and let's analyze it in some detail.
18              MR. LOWRY:  Okay.
19              THE COURT:  You would agree with me that
20    this transcript itself -- this is the statement of
21    Mr. Perez -- it doesn't need a co-conspirator
22    statement.  It can come in.  And then, of course,
23    you've got the Smalls issue to deal with --
24              MR. LOWRY:  The Bruton issue.
25              THE COURT:  -- it's coming in.  So the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5362

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 166363

1    transcript is coming in.  So now we're just dealing

2    with whether what Mr. Perez said -- which may be an

3    out-of-court statement of Mr. Baca being offered for

4    the truth, it contains something that needs its own

5    separate exception.  That's what we're about to

6    discuss, right?  Do you agree with that analysis?

7              MR. LOWRY:  Well, no.  I'm looking at this

8    as still under the co-conspirator statement analysis.

9              THE COURT:  Well, I don't think that Mr.

10   Perez necessarily -- you can talk to me, if you think

11   differently, Mr. Castellano -- but the statements

12   that are being recorded here, are you taking the

13   position that the Perez/Cordova statements would be

14   in furtherance of the conspiracy?

15             MR. CASTELLANO:  Are Mr. Cordova's

16   statements?

17             THE COURT:  Well, I think that what Mr.

18   Lowry -- I didn't think I needed to analyze, under

19   the co-conspirator exception, the recording of

20   Cordova with Mr. Perez.  That was coming in because

21   it was an admission of Mr. Perez to Mr. Cordova.  So

22   it's just not hearsay.  So the only thing that needed

23   a co-conspirator statement was Mr. Perez' statements

24   in this recording that are statements of, for

25   example, Mr. Baca, that were made in the past,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167

 1   perhaps giving directions to people about killing Mr.

 2   Molina.  And that's where they were analyzing the

 3   co-conspirator exception.

 4          Do you agree with my analysis?

 5          MR. CASTELLANO:  I do agree with that.  I

 6   think some of these statements may fall within

 7   Smalls.

 8          One discussion we were having outside

 9   before the hearing was, at the bottom of page 20531

10   there is an example of Rudy Perez, a couple of years

11   after the murder, recounting the conversation during

12   the time of the conspiracy.  So what he describes is

13   people coming in to him, and they tell him, "Look,

14   Big Dog, something has to be taken care of.  But we

15   need squina.  You don't have to do nothing, you don't

16   have to do nada."  And this is the discussion where

17   they're saying:  You don't need to do anything else

18   other than provide your walker for the shanks.

19          THE COURT:  All right.  Let me break it

20   down.  Mr. Cordova doesn't need a hearsay exception,

21   because under the rules, it's not hearsay.

22          MR. CASTELLANO:  Correct.

23          THE COURT:  Okay.  Now, his statement about

24   what other people told him, that's where we need the

25   co-conspirator exception.  And that seems to me, what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 168 of 365

```
 1    you are looking at, or highlighting right there,
 2    would be in furtherance of the conspiracy.
 3            Do you agree with my analysis?
 4            MR. CASTELLANO:  Yes, I do agree, even
 5    though it happened a couple years after he's
 6    recounting a conversation at the time of the
 7    conspiracy, I think of it as a James statement.
 8            THE COURT:  I agree.  I guess that's where
 9    Mr. Lowry and I disagree.  But I just want to make
10    sure that you and I were on the same -- that the
11    first analysis of -- I don't need a co-conspirator
12    exception for the tape of Mr. Perez to come in.  I
13    need co-conspirator when Mr. Perez is, in that tape,
14    talking about conversations that may have been said
15    to him.
16            MR. CASTELLANO:  I agree.
17            THE COURT:  All right.  And you disagree
18    with that analysis, Mr. Lowry?
19            MR. LOWRY:  Well, Your Honor, for this
20    particular statement, I mean, this doesn't even
21    involve Mr. Baca.  The squina, you know.  So in a
22    sense, I'm only concerned with the statements that
23    could be attributed through the lens of the
24    co-conspirator hearsay exception to my client.
25            THE COURT:  Okay.  I mean, if that doesn't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5365

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 169

1   bother you, we can take another example.  But I think

2   that probably that one would come under the

3   co-conspirator statement, because even though it's

4   being made in a more recent time, it's recording

5   conversations that were made earlier in furtherance

6   of the conspiracy.

7           MR. LOWRY:  Your Honor, this may be

8   helpful.  Can I get my trial transcript, because I

9   have --

10          THE COURT:  You may.

11          MR. LOWRY:  Your Honor, I think I would let

12  one of my colleagues go through there, but I want to

13  break them out statement by statement, if I could.

14          THE COURT:  All right.

15          MR. LOWRY:  But I guess I hear what the

16  Court is saying, but what I understood Mr. Perez to

17  say in the recordings is he's attributing things to

18  Mr. Baca about what he wanted to have happen.  And

19  those were well after the fact.

20          THE COURT:  Give me an example, even if

21  it's not exact.

22          MR. LOWRY:  He refers to them as "The

23  viejo."  Right.  This is at Bates DeLeon number

24  20558.

25          THE COURT:  Do you want to put it on the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 170

```
 1    Elmo?

 2             MR. LOWRY:  Absolutely, Your Honor.  And

 3    you can see it right here, where this is Mr. Perez,

 4    and he's saying, quote, "The old man was pissed bro,

 5    he was like, he was upset with them the other fools

 6    over there, why didn't they handle it a year sooner

 7    when they took the paperwork over there?  Well you

 8    send paperwork up there."

 9             Well, it would seem to me -- assuming "Old

10    man" refers to Mr. Baca, which I think it does -- his

11    complaints to Mr. Perez, another member of the

12    conspiracy, as has been proved by the Government, and

13    Molina would be in furtherance.  I mean, that's what

14    people do when they're in a conspiracy.  They

15    complain to members of the group.  And the reason you

16    complain is to try to make the group better, or

17    advance your purposes.  So it seems to me that that

18    would be classic co-conspirator exception material.

19             MR. LOWRY:  Well, I'm having a hard time --

20    if this complaint can be attributed to Mr. Baca, it's

21    a complaint about after the fact, after the objective

22    of the alleged conspiracy has been completed.

23             THE COURT:  Well, but, I mean, if you're

24    now going to start talking about some of the

25    paperwork I looked at, Mr. Baca was ordering further
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5367

1    hits on people because they didn't do a good job on

2    the Molina murder, then it seems to me that this may

3    be in furtherance of the conspiracy because it's

4    covering up the murder.

5            MR. LOWRY:  Well, Your Honor, analytically,

6    I have a bit of an issue with that, because now we're

7    shifting conspiracies and we're not talking about the

8    conspiracy to --

9            THE COURT:  No, I think the conspiracy to

10   cover up the act of the conspiracy is just as much a

11   part of the conspiracy.  And that's what that case

12   that we just looked at says.

13           So if Mr. Baca is going to continue actions

14   of directing people to be hurt or assaulted or

15   killed, because they did it wrong, or something like

16   that, I think that's all part of the same conspiracy.

17   He's unhappy as a leader with how it was carried out.

18           MR. LOWRY:  If you assume -- well, this

19   goes back into the disagreement I think I had with

20   the Court during the presentation of the witnesses,

21   if you assume the credibility of the statements.  It

22   sounds to me like the Court --

23           THE COURT:  I have to make by a

24   preponderance -- but you're right, it does go back.

25           MR. LOWRY:  So I think that's something,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172369

1    Your Honor, we just have to argue about during the

2    evidence at trial, if that's the Court's ruling, if

3    this continues to be in furtherance of the

4    conspiracy.  I mean, my real objection was just

5    that --

6              THE COURT:  Let's do this:  It's probably

7    not going to benefit us to have a big James hearing

8    and then us do this, and then argue again through

9    trial.  I'm making the best call I can.

10             Do this:  If you disagree with the scope,

11   give me some cases.  I told you I tip my hand.  I

12   like Saltzburg.  So dig into him, and see if you can

13   convince me that I'm reading the co-conspirator

14   exception too broadly.

15             But when I look at the Tenth Circuit cases,

16   and Mr. Castellano is putting those up, so he's

17   showing the same ones I'm looking at, if I'm reading

18   it too broadly, I'll be glad to take another look at

19   it.

20             MR. LOWRY:  That would be --

21             THE COURT:  I'm trying to give you some

22   rulings, keep things moving, and it seems to me these

23   are falling fairly squarely within that.  I don't

24   mean to cut you off in any way.  I mean, if you've

25   got more to present.  I'm trying to give people

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173370

```
 1   guidance.
 2            MR. LOWRY:  No, Your Honor.  That would be
 3   my preference is to methodically go through this and
 4   reduce it to paper.  I think it would be beneficial
 5   for everyone involved.
 6            THE COURT:  Well, I'm not inviting more
 7   paper.  But if you have a case that you think I'm not
 8   reading this right -- you're putting up examples, and
 9   I think that's good, because it forces me to apply
10   these general principles I read from the Tenth
11   Circuit to what we've got to do in this case, and I
12   don't want there to be an analytical gap here -- but
13   if you're finding that the case law is not what I
14   think it is, I particularly welcome that.
15            MR. LOWRY:  I'll bring it to the Court's
16   attention.
17            THE COURT:  All right.  Thank you, Mr.
18   Lowry.
19            Ms. Bhalla, did you want to bring some to
20   the Court's attention and get some rulings on them in
21   specific?
22            MS. BHALLA:  You know, Your Honor, just
23   briefly.  I'm not going to try and go through each of
24   the statements.  But I think that I, in my mind,
25   found the case that I find to be relevant to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5370

 1   inquiry about -- in terms of when the statements are

 2   made.  And it's a Ninth Circuit Court of Appeals

 3   case.  It's United States v. Smith, 893 F.2d 1573.

 4   And I was sort of looking at a little bit of that

 5   over the lunch break, and a little bit during the

 6   hearing.

 7              THE COURT:  I'm certainly not suggesting

 8   that when a statement is made is not relevant.  For

 9   example, we'll take Mr. Perez' statements to Mr.

10   Cordova.  They're not coming in to the hearsay

11   exception.  Why?  Because it's all over.  Right?  Mr.

12   Cordova -- Mr. Perez has got his own reason for

13   talking to Mr. Cordova.  And so that seems to me to

14   probably not be in furtherance of the conspiracy.

15   And I think the Government is not trying to put it in

16   there.

17              But it seems to me, if Mr. Perez is talking

18   about what was said to him at the time or during the

19   time of the conspiracy, then the timing issue is less

20   relevant.  Other things may be relevant, like what

21   was said.  That's the reason we're keying in on

22   what's said.  But it seems to me that, just because

23   Mr. Perez made his statement, you know, in 2015 --

24   the murders occurred in 2012 -- that doesn't mean

25   it's not within the hearsay exception.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5371

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 175 372

```
 1              Did the Ninth Circuit say something
 2   different?  I'm glad to be educated on it.
 3              MS. BHALLA:  I'll just read this brief
 4   blurb, if that's all right, Your Honor.  And I may be
 5   off base.
 6              THE COURT:  Give it to me.
 7              MS. BHALLA:  This isn't my best area.
 8              THE COURT:  No, give it to me.
 9              MS. BHALLA:  "In order for a statement to
10   be admissible, a statement by a co-conspirator must
11   be made in course and in furtherance of the
12   conspiracy."  I think we all understand that.
13              Three separate inquiries must be made by
14   the court.  "First, the Court must find independent
15   proof of the existence of the conspiracy."  I think
16   we've talked about that.
17              Second, "The Court must find the proposed
18   statement was made in furtherance of the objectives
19   of the conspiracy."  I think we're good on that.
20              And this is where I'm getting -- where I
21   think it's important.  "Third, the Court must find
22   that the proffered statement was made during the
23   course of the conspiracy.  In addition, a necessary
24   corollary to the above three conditions is the
25   requirement that there must be" -- I may be going on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5372

 1    too far here -- "there must be independent proof of

 2    the defendant's and declarant's status as members of

 3    the same ongoing conspiracy."

 4            To me, that limits when the statement was

 5    made, Your Honor.  And I may be reading that wrong,

 6    but that's how I'm reading it.

 7            THE COURT:  Well -- and I don't mean to get

 8    you involved in Mr. Perez.  But let's just take the

 9    statement, the hypothetical that we had when Mr.

10    Perez is on the phone with Mr. Cordova, and he's

11    talking, but he's talking about statements that were

12    made -- let's make our example easy -- were made

13    contemporaneous with the Molina murder.  Would you

14    agree with me, just simply the fact that Mr. Perez is

15    making the statement a few years later is irrelevant,

16    if he's relating statements that were made at the

17    time that the murder occurred?

18            MS. BHALLA:  I don't know that I do agree

19    with that.  But I'm not the best to necessarily argue

20    that.

21            THE COURT:  Okay.  See, I don't hear

22    anything that the Ninth Circuit is saying that I

23    would not apply.  The Tenth Circuit may put it a

24    little differently, and may put it in a different

25    order.  But I think the Tenth is saying about the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5373

```
 1    same thing.
 2              And so I'm not disagreeing with the legal
 3    principles.  I'm just trying to apply those now to
 4    the fact-specific case that we have here.
 5              MS. BHALLA:  Okay.  I understand, Your
 6    Honor.  And if I find something else --
 7              THE COURT:  Think about it.
 8              MS. BHALLA:  I will.  Thank you.
 9              THE COURT:  I think I'm right.  But I don't
10    mind being educated on it.
11              MS. BHALLA:  Thank you, Your Honor.
12              THE COURT:  Okay.  Do you want to respond
13    on that?
14              MR. CASTELLANO:  I just want to make a
15    quick point.  Going back to the example that Mr.
16    Lowry had about Mr. Baca not being happy that the
17    murder hadn't happened sooner.  I think, even if it
18    were to fall out of a James statement, I think we
19    would then be falling into Smalls' statements as a
20    statement against interests.  So, for example, Mr.
21    Baca would be saying "I'm not happy that the murder
22    wasn't taken care of a year earlier."  That's still a
23    statement against interests.
24              THE COURT:  Well, let me ask you this:
25    Would you be unwilling to defend on appeal, if I were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5374

 1   to find that comes within a co-conspirator, does that

 2   make you nervous for me to ground it in that area?

 3            MR. CASTELLANO:  I would say it makes me a

 4   little bit nervous for this reason:  When Mr. Perez

 5   talks about his conversation with Mr. Baca, we're not

 6   quite sure of the timeframe.  So is it a conversation

 7   he had with him after the conspiracy concluded?  Is

 8   it something else -- you know, I'm not sure when,

 9   necessarily, that happened.  All we know is they had

10   a conversation; Mr. Baca relayed to him he wasn't

11   happy it wasn't done a year earlier.

12            THE COURT:  And the Smalls problem

13   satisfies the Bruton problem as to the other

14   defendants?

15            MR. CASTELLANO:  That's correct.  Because

16   they are statements that are nontestimonial.  When

17   they were made, no one -- well, Mr. Perez didn't

18   think these would show up in court, so they're

19   nontestimonial statements.

20            THE COURT:  So you're saying it makes you a

21   little nervous to rely on the co-conspirator, but it

22   doesn't make any difference, because it's going to

23   come under another exception?

24            MR. CASTELLANO:  That's correct.  I think

25   it could be a co-conspirator statement.  The timing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5375

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

```
 1    is less clear.  But I think under Smalls, it's still

 2    going to come in.

 3              THE COURT:  Let me read it again as to --

 4    it's down at the bottom.  Where are you looking?

 5              MR. CASTELLANO:  They were asking why it

 6    wasn't taken care of.  This is in the middle of page

 7    20558, DeLeon.  And ultimately, the CHS says, "What

 8    did 'Pup' say, because the (unintelligible) wasn't

 9    done earlier?"

10              Mr. Perez says.  "He didn't like it."

11              So, at some point, Mr. Baca has conveyed to

12    Mr. Perez -- or he's aware of Mr. Baca not being

13    happy with the fact that this murder didn't happen a

14    year earlier, as intended.  So it's still talking

15    about the conspiracy.  It's talking about the

16    conspiracy, having gone back a year, and nobody

17    following through on the order.

18              THE COURT:  Okay.  You think on that one

19    the age is a little fuzzy?

20              MR. CASTELLANO:  It seems to me a little

21    bit.  I think maybe the Court can make alternative

22    findings.  It appears to be a James statement.  But

23    if it's not, then it's covered by Smalls.

24              THE COURT:  Okay.

25              MS. JACKS:  Can I make a couple comments?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5376

```
 1              THE COURT:  Well, Mr. Lowry was already up.
 2   So I'll come back to you, Ms. Jacks.
 3              Go ahead, Mr. Lowry.
 4              MR. LOWRY:  Thank you, Your Honor.
 5              And I appreciate the comments by Mr.
 6   Castellano.
 7              But here's where I'm running on the shoals
 8   of this analysis a little bit.  And this is where --
 9   why I started off my comments with the Court about:
10   Let's define the conspiracy we're talking about.  And
11   I appreciate the Court's comments on that.
12              But my concern is that, if you assume --
13   and for the sake of this hearing and for the sake of
14   this argument let's assume that Mr. Baca is in a
15   leadership position, and let's assume that even these
16   statements could be attributed to him; that he's not
17   happy about how this happened.
18              And if you make those two assumptions, his
19   statements to Mr. Perez are about, We need to do
20   something about that.  And that is a separate
21   conspiracy.  And I understand what the Court said
22   earlier.  Well, in the Court's mind, that could be a
23   conspiracy to cover up the Molina homicide.
24              But we can't just assume, by fiat, that a
25   potential conspiracy to cover up the involvement of a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5377

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 181378

1    previous murder made you a conspirator in that

2    murder.  Because -- I think the Government said

3    this -- that there are certain rules that this

4    enterprise had that you needed to abide by.  And that

5    conspiracy, the second conspiracy, could be

6    conspiracy to enforce the rules of the enterprise.

7    And it might not have had anything to do with being a

8    participant in the original conspiracy.

9            So I guess --

10           THE COURT:  I well, I guess I'm struggling

11   a little bit with that.  I mean, there is no evidence

12   that the men involved in this conspiracy wanted it to

13   be uncovered.  In fact, it seems to me that part of

14   the conspiracy was covering cameras, throwing away

15   shanks, people having different tasks, paperwork

16   coming in, it's concealed.  So there was a conspiracy

17   to conceal this murder.

18           MR. LOWRY:  And I'm not going to --

19           THE COURT:  I think you have to agree with

20   me that most of the time that outlasts the murder

21   itself.

22           MR. LOWRY:  Well, I think there was --

23   certainly, you can look on the video and see people

24   discarding evidence into trash cans and things found

25   in the plumbing drains and that, so I'm going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5378

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 182379

1   agree with you.  But I don't know that the conspiracy

2   went so far, because I think the evidence is that

3   nobody did cover the cameras.  So if other people --

4          THE COURT:  Well, it may not have been

5   successful.  But that doesn't mean that there is

6   still not a conspiracy for purposes of the hearsay

7   rule, right?

8          Isn't your better argument the one that

9   Mr. Castellano is handing you by saying that he's not

10  sure that I ought to rely on it here because of what

11  Ms. Bhalla is saying, is the dates on this particular

12  statement may not be staked out enough for taking Ms.

13  Bhalla's law, and maybe the ambiguity in this

14  particular statement that we can't fit it in, or

15  shouldn't fit it in under the co-conspirator, so then

16  you have a Smalls issue?

17         MR. LOWRY:  And I agree with that, Your

18  Honor.  And that's the argument.

19         THE COURT:  So maybe on this one, I

20  shouldn't rely on co-conspirator.  But I should say,

21  right at the present time, it comes in under the

22  Smalls, to solve any sort of Bruton problem, and it's

23  a statement against interests by Mr. Baca?

24         MR. LOWRY:  And I think -- maybe I'm not

25  being as efficient with my language as I should be --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5379

```
 1    but this is my point:  If it's a statement against
 2    penal interests, it would be a statement against
 3    penal interests regarding a different conspiracy.
 4    And I think maybe --
 5             THE COURT:  We just don't have to get into
 6    conspiracy.  It's just murder.
 7             MR. LOWRY:  Well, it would be murder of
 8    different people.  It would be murder of people that
 9    didn't cover up the camera.
10             THE COURT:  But it doesn't matter, it's a
11    statement against interest, right?  So I don't have
12    to figure out what murder it is.  It's just people
13    don't go around making those statements.  It's
14    against their penal interests.
15             MR. LOWRY:  I think that has to be tied to
16    what interests we're talking about.  But I'll go
17    back --
18             THE COURT:  But if we've abandoned the
19    conspiracy, co-conspirators exception, then it's just
20    penal interests, I don't think it has to be quite as
21    tied.
22             MR. LOWRY:  And, frankly, Your Honor, I'll
23    have to go back and look at that.  Because I wasn't
24    prepared to argue the Bruton and Smalls issue today.
25    But I will.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5380

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185

```
 1              But I think that that penal interest would
 2     have to be -- and I understand we're going to have a
 3     different point of view on this, of how closely that
 4     penal interest has to be tied to the act of
 5     conspiracy under indictment.  And I think that's
 6     where, analytically, we're on different pages.  And
 7     I'll come back to you on that.
 8              THE COURT:  If Mr. Baca just said something
 9     just general:  I could kill people because they
10     didn't handle this thing right, seems to me that that
11     is probably against penal interests.
12              MR. LOWRY:  Yeah.  But here's where, as a
13     matter of the credibility of this argument I'm really
14     struggling with, because, A, our argument is he
15     wasn't involved with the Molina homicide at all.  And
16     there is even recordings with Mr. Duran where he's
17     complaining that, you know, everybody under the sun
18     is trying to wipe their ass with Mr. Baca.  And I
19     think what we're seeing in the Molina homicide is
20     evidence of that.
21              But where I'm going with this is that there
22     are all these assumptions he wanted Mr. Molina dead.
23     And he lived with Mr. Molina from August of -- well,
24     January of 2013 into August of 2013, in the same pod,
25     in Southern, in the blue unit, where Mr. Molina
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

DNM 5381

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 185

```
 1    ultimately died.  So I really have been struggling
 2    with the credibility of these allegations, when, if
 3    Mr. Baca really wanted Mr. Molina dead, he could have
 4    done it himself when he was there.
 5              THE COURT:  If they get over the penal
 6    interests, I don't have to make any findings by a
 7    preponderance of the evidence.  I simply have to find
 8    that it's a 401 analysis, right?
 9              MR. LOWRY:  It would be -- well --
10              THE COURT:  Does the evidence have a
11    tendency to prove what it's being offered for?
12              MR. LOWRY:  It would be a statement against
13    penal interests from Mr. Baca to Mr. Perez.  And then
14    we'd have to do the hearsay analysis from Mr. Perez
15    to Mr. Cordova.
16              THE COURT:  But that's clear, right?
17              MR. LOWRY:  Yeah.
18              THE COURT:  It's not hearsay.
19              MR. LOWRY:  It would be an admission as to
20    Mr. Perez.
21              THE COURT:  Correct.  And so, then, we have
22    to analyze the statements within Mr. Perez'
23    statements?
24              MR. LOWRY:  Exactly.
25              THE COURT:  Well, think about it.  I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5382

```
 1   it's coming in.  But you're welcome to --
 2             MR. LOWRY:  I'm going to give it my best
 3   shot to keep it out.
 4             THE COURT:  All right.  Okay.
 5             MR. CASTELLANO:  And, Your Honor, no one
 6   has briefed this yet, but if necessary, we could
 7   provide a case.  There is still some case law that
 8   says you can do things after the conspiracy that
 9   still show the conspiracy existed.  So, in other
10   words, Mr. Baca is discussing the conspiracy after
11   the fact, which once, again, goes to establish that
12   the conspiracy was there.  So --
13             THE COURT:  I'd like to see that case.
14             MR. CASTELLANO:  I'll pull something for
15   the Court.
16             THE COURT:  Because a lot of evidence may
17   be more clearly classified as establishing the
18   existence of the conspiracy than it is going to be in
19   furtherance of the conspiracy.  Those are not subsets
20   of each other.  Those may be different things.  A
21   statement could be either way, it could be used
22   either way, and fall into both.  But they always
23   could be completely separate.
24             Ms. Jacks, you were up next.
25             MS. JACKS:  I just have a couple of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5383

 1    observations.  I guess, first of all, with respect to

 2    the discussion about Perez relating that Baca was

 3    angry or something about Baca.  What I thought the

 4    examination brought out of Agent Acee was that we

 5    weren't -- he wasn't clear, and there wasn't -- it

 6    wasn't clear -- that those were statements that were

 7    in Perez' personal knowledge, that Baca actually said

 8    that to him, or that that's something he heard, or

 9    was repeating through basically a game of prison

10    telephone.

11             So I feel like that's a hurdle that hasn't

12    been jumped at this point.  There is no -- I don't

13    think the Government has met its burden showing that

14    that, when Perez said that to Cordova, he was

15    reporting what Baca had said to him.

16             THE COURT:  Why don't you put the statement

17    up there, and let's look at it, so we can drill down

18    on this.

19             MS. JACKS:  I was reading off the actual

20    transcript of the hearing.

21             THE COURT:  Oh, the hearing.

22             MS. JACKS:  The hearing transcript is what

23    I've been referencing.

24             THE COURT:  Why don't you borrow from Mr.

25    Lowry or Mr. Castellano the actual Perez transcript,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5384

 1   and we can look at it, and see if we've got -- if

 2   your argument has some force here.

 3          MR. CASTELLANO:  34A, I have 20558.

 4          MS. JACKS:  So I think the part, Your

 5   Honor, that we were just talking about, where it

 6   starts with Rudy, the part with the pink next to it,

 7   "The old man was pissed bro."

 8          THE COURT:  Now, why do you -- when you

 9   read that statement -- there may be some others, I

10   agree with you we may need to look at -- but why when

11   you read that do you not think that that's Mr. Perez,

12   with his personal knowledge, stating Mr. Baca was

13   very upset with the way this murder was handled?

14          MS. JACKS:  Well, I guess for two reasons.

15   One is at the time of the homicide, Baca and Perez

16   were not housed at the same institution.  And I don't

17   think there was evidence put in by the Government,

18   when they were in a position where they could have

19   had this discussion.

20          And then the other reason I think that is

21   because during the examination, Agent Acee was

22   specifically asked, both by myself and by Mr. Villa,

23   that specific question, whether he knew whether any

24   of these statements that Mr. Perez was saying were

25   things he knew firsthand, or things he was just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5385

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189386

```
 1    repeating.  And he didn't.  His answer was no, that

 2    he didn't.

 3              THE COURT:  Let's assume that that's the

 4    case, that we don't know.  Does that necessarily mean

 5    the evidence is kept out?

 6              MS. JACKS:  I guess what it means to me is

 7    that there is a layer of hearsay, or potentially a

 8    layer of hearsay, that's not accounted for by some

 9    sort of exception.  And if he is hearing it from

10    somebody else, I think the issue is:  Who is that,

11    and is that person a member of the conspiracy, or is

12    he repeating something that somebody else told him?

13              THE COURT:  Well, I think we had an

14    agreement earlier, the Government is not trying to

15    fit this into the co-conspirator statement.

16              MS. JACKS:  I have two comments about that.

17    And maybe my brain just isn't functioning.  But it

18    seems like, if that's an admission against Mr.

19    Perez --

20              THE COURT:  No.  It's an admission against

21    Mr. Baca, against his penal interests.

22              MS. JACKS:  Oh, I guess I'm going two

23    levels.  The justification for letting --

24              THE COURT:  It comes in because it's an

25    admission against interests.  It's a statement of a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5386

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5387

```
 1   party defendant.  So it's not hearsay.  It needs no

 2   exception.

 3            MS. JACKS:  And I understand the Court's

 4   analysis as to Mr. Perez.  But what about to the

 5   other defendants who didn't say that?

 6            THE COURT:  Then it's a Smalls issue.

 7            MS. JACKS:  Which you're talking about,

 8   then, whether it's a declaration against penal

 9   interests; correct?

10            THE COURT:  As to Mr. Baca.

11            MS. JACKS:  Well, I would think, isn't it

12   also a Smalls issue about whether Mr. Perez'

13   statement is a declaration against penal interests,

14   so that it comes in against the other defendants?

15            THE COURT:  I don't need to analyze it.

16   It's nonhearsay, so it doesn't need an exception.

17            MS. JACKS:  Well, that's where I'm just

18   sort of missing it.  But I guess what the Court is

19   saying --

20            THE COURT:  Well, under the definition of

21   hearsay, the statement of a party opponent is not

22   hearsay.

23            MS. JACKS:  No, I agree with that.  But

24   it's hearsay as to Mr. Sanchez, and he's not the

25   person that made the statement.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5387

```
 1                    THE COURT:  I would agree that it would
 2       then implicate a Bruton issue, which then I think the
 3       Smalls case deals with.
 4                    I think we had this conversation last
 5       summer, or during the summer.  And you're welcome to
 6       correct me.  But I mean, I think this is where we all
 7       stared at the Tenth Circuit and said it resolved that
 8       problem.
 9                    MS. JACKS:  I remember that discussion.
10                    So I guess the other thing I want to just
11       point out, this isn't the only statement that's
12       potentially Perez just spewing things that he's heard
13       from other people and not things he has personal
14       knowledge of.  And I think there is a bunch of
15       statements in what's been offered by the
16       Government --
17                    THE COURT:  Why don't we take them one at a
18       time, and that's what we're here for is to look at
19       these one at a time, and analyze whether they're
20       coming in or not.
21                    MS. JACKS:  Well, let me pull up the
22       transcript, because that's how I've been looking at
23       these.
24                    So the first one that I note is at Exhibit
25       16, Bates stamp 20540.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Help me out on the
 2    front page, Ms. Jacks.  What is this document?
 3              MS. JACKS:  This is the Government's
 4    Exhibit 16.  And the Bates stamp at the bottom of the
 5    page -- well, let me just be really specific.  I'm
 6    looking at the transcript of December 8, Volume 2, at
 7    page 210.  And in the record it's referenced as
 8    Government's Exhibit 16, Bates stamped 20540 -- oh,
 9    no, I'm sorry, its reference is Bates stamp 20540.
10    I'm looking at Mr. Castellano's exhibit here.  And I
11    think that that had been subsequently marked Exhibit
12    31A.
13              Let's just put this statement up.  And I
14    think, specifically, again, it's the one -- it's the
15    statement where the pink sticky note is here talking
16    about "Crocodile" and "BB" having to answer for never
17    doing the first paperwork that was sent down there.
18    There is no evidence that the Government has
19    presented that Mr. Perez had the ability to talk
20    specifically with "Crocodile" or "BB."
21              And I think again, the answer of Agent Acee
22    on the stand was that he didn't know what Mr. Perez
23    was talking about, whether that was from his personal
24    knowledge, or something he just heard through the
25    prison telephone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5389

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5390

```
 1              THE COURT:  All right.  Mr. Castellano,
 2    would you try to get this statement in through the
 3    co-conspirator statement, or is it going to be back
 4    to a statement against interests in a Smalls issue,
 5    so we're not talking about a co-conspirator statement
 6    here, we're talking about a Smalls issue?
 7              MR. CASTELLANO:  Yes, I think --
 8              THE COURT:  Would you want to defend me
 9    letting this in on the co-conspirator statement
10    exception?
11              MR. CASTELLANO:  I would defend it with the
12    secondary argument about --
13              THE COURT:  You prefer the secondary
14    argument?
15              MR. CASTELLANO:  Yes.  I think the
16    secondary argument would be my stronger argument.  I
17    will say -- and the Court may remember from
18    cross-examination of Mr. Perez last week -- I don't
19    have the transcript in front of me -- there is a
20    statement where Mr. Perez said "Pup," Mr. Baca, told
21    me.  So there is evidence about direct conversations
22    between Mr. Perez and Mr. Baca.  There is evidence
23    here.  Because it's kind of behind the laptop, I
24    don't want to mess with it.
25              MS. JACKS:  Here, I'll move it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5390

1          MR. CASTELLANO:  We know there is evidence

2     from the transcripts themselves.

3          THE COURT:  Okay.  I wouldn't mind having

4     my memory refreshed on what he said.  It might help

5     us with these arguments, if you have that available.

6     I'll come back to you.

7          MS. JACKS:  I can provide an example.  I

8     don't disagree that there may be some statements

9     where the Government did present testimony that Mr.

10    Perez heard it directly from Baca.  But there are

11    certainly a lot of statements that they're offering

12    that don't contain that sort of evidence.

13          Let me -- I'll give you one in specific

14    that regards Mr. Sanchez.  I'm at the same exhibit,

15    page 20550.  In this case, there is a conversation

16    that starts about what "Dan Dan" and Mr. Perez are

17    talking about.  And Mr. Cordova said, "That's what

18    'Dan Dan' asked you.  When did he ask you that?"

19          THE COURT:  Can you point it out to me,

20    Ms. Jacks?

21          MS. JACKS:  Right here.  I would agree that

22    that's evidence of a conversation between Mr. Sanchez

23    and Mr. Perez.  So I guess what type of evidence I'm

24    asking for -- and I think we have a right to demand

25    from the Government -- is of this quality; not just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   some -- something that could be passed along through

2   prison gossip.

3            THE COURT:  Well, I don't know.  I can be

4   educated on this.  But it seems to me that, if the

5   Government has established that they had personal

6   communications, and then somebody testifies that this

7   is what -- let's just be specific -- if the

8   Government has established that Mr. Perez and Mr.

9   Baca had conversations, and then they also have

10  testimony that Mr. Baca or Mr. Perez says Mr. Baca

11  said this or did this, do I need more?  That's a lot

12  of evidence.

13           MS. JACKS:  I think each conversation, I

14  think has to be looked at independently.

15           THE COURT:  But that would not be normal to

16  have a conversation, in which each person, each time

17  they say it, for them to give a date and time as to

18  when it occurred.  I mean, I say, "My wife said

19  this."  Now, I may have earlier in the conversation

20  said, "My wife said this yesterday on the telephone."

21  But I don't go back with each statement and reference

22  the exact conversation.

23           MS. JACKS:  And I understand that.  I guess

24  what I'm saying is, I think in this transcript, or in

25  this conversation, there do appear to be a lot of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5393

```
 1    things where Mr. Perez is simply repeating what he's

 2    heard through the grapevine.  And there is no -- we

 3    know for a fact Mr. Baca and Mr. Perez were not in

 4    the same custodial environment at or around the time

 5    of the Molina homicide.  So there really isn't a way

 6    for them to be talking to each other directly.

 7              THE COURT:  And I think that Mr. Castellano

 8    is trying to keep all of us out of the error by, on

 9    some of these, conceding he's not very comfortable

10    with me trying to fit it in to the co-conspirator

11    statement.  But then you're going to be looking at a

12    Smalls issue, and it's going to be coming in there.

13    So I'm wondering if, on some of these, it may be

14    somewhat irrelevant.  I don't want to say

15    "irrelevant."  That's not the word.  What I mean, it

16    may only tell us which -- either it's an exception or

17    it's not going to be hearsay at all.

18              MS. JACKS:  I think that --

19              THE COURT:  So it may be coming in, you

20    know what I mean?

21              MS. JACKS:  And it's very hard to talk

22    about this without zeroing in on a particular

23    statement.  But I just wanted to make my point that I

24    think some of this is hearsay being repeated, and

25    there is not evidence that it came directly from a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 197

```
 1    co-conspirator --
 2              THE COURT:  Well, I think Mr. Castellano
 3    will concede that, right?  That's what I got from
 4    your prior comments, you'll concede that probably
 5    some of these statements, you'd prefer I not rely on
 6    the co-conspirator statement to get them in, because
 7    it would be tougher for you to defend that on any
 8    appeal?
 9              MR. CASTELLANO:  Right.  I think the Smalls
10    argument would be my stronger argument on appeal.
11              THE COURT:  On some of these statements?
12              MR. CASTELLANO:  Correct.  And then, I
13    mean, we haven't gone there -- are other reasons this
14    could be relevant.  It could be discussion about the
15    enterprise and identify the members of the
16    enterprise.  And there are many other evidentiary
17    reasons why this could come into evidence.  There are
18    plenty.
19              MS. JACKS:  I just have a couple of general
20    categories that I just want to bring up, because I
21    felt they were offered as co-conspirator statements,
22    and I wanted to draw the Court's attention to them.
23    I think there were two statements that were offered,
24    or discussed, that were statements of Mr. Molina.
25    Obviously, he's not a member of the conspiracy.  I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

 1   not quite sure what, if any, theory of admissibility

 2   the Government is advancing for those.

 3        THE COURT:  Can you point those out to me?

 4        MS. JACKS:  So I think the first one was

 5   discussed on November 28, at page 46 in the

 6   transcript.

 7        THE COURT:  This would be Mr. Perez

 8   stating --

 9        MS. JACKS:  This is testimony by, I think,

10   Agent Acee regarding -- or Agent Stemo -- regarding

11   statements of Mario Rodriguez.  Let me just pull it

12   up, if there is an exhibit.  I think this was Agent

13   Stemo.  And I don't believe this was the -- was

14   addressed in a particular Government's exhibit.  As I

15   recall, Agent Stemo had Mr. Rodriguez' 302 up there

16   with her when she was testifying.  And that was

17   actually a document that, prior to that moment, had

18   not been provided to the defense.  She was basically

19   just testifying to statements contained in that

20   document.

21        So I'm at page 46 of the transcript of the

22   hearing on November 28, 2017.  And starting at line

23   4, she said, "Rodriguez" --

24        THE COURT:  Now, you're looking at your

25   computer?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 199396

1           MS. JACKS:  I am.  I'm looking at the

2   transcript, which I have electronically.

3           THE COURT:  Let me ask you this:  Do you

4   have the 302 that we could put up?

5           MR. CASTELLANO:  I might, Your Honor.  I

6   think the statement she's referring to is when Mr.

7   Molina is downstairs, he says something like, Yeah,

8   you got me, Carnal.  Mr. Rodriguez says, "You're no

9   carnal," words to that effect.  But I can look for

10  the statement itself.

11          MS. JACKS:  Actually, it's slightly

12  different.  I think that's the other one.  It's not

13  long.  If I could just state it, maybe that would

14  refresh the Court's recollection.

15          THE COURT:  You may.

16          MS. JACKS:  Is that okay?  So Agent Stemo

17  testified this, starting at line 4 through line 9 --

18  this is her answer to a question:  "Rodriguez

19  overheard Montoya tell Molina to stay back, and

20  Molina did not."

21          THE COURT:  Read that sentence again.

22          MS. JACKS:  "Rodriguez overheard Montoya

23  tell Molina to stay back, and Molina did not."  This

24  is the lead-up.

25          Then the next question was, "And when Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200

```
 1    Molina made a statement" --
 2              THE COURT:  You would agree there is no
 3    problem with the first sentence; it's what you're
 4    about to read me that's the problem?
 5              MS. JACKS:  My issue is Molina's statement.
 6              THE COURT:  All right.
 7              MS. JACKS:  Question:  "And when Mr. Molina
 8    made a statement that he was done, saying, 'Come on,
 9    I'm done now,' what was Rodriguez' response to that?"
10              And the answer was he told Molina that he
11    was no carnal.
12              So I'm not clear if the Government is
13    trying to offer Molina's statement, "Come on, I'm
14    done now."  But I think that's not a statement of a
15    co-conspirator.
16              THE COURT:  Maybe I'm being dense.  But
17    what is he trying to communicate, Molina?
18              MS. JACKS:  Well, I would have to
19    speculate.
20              THE COURT:  Speculate for me.
21              MS. JACKS:  I think the speculation is:
22    You guys have stabbed me enough, leave me alone.
23              MR. CASTELLANO:  I would agree with that
24    assessment.  And I agree, it's also not a
25    co-conspirator statement we could offer for a
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5397

```
 1   nonhearsay reason to provide context of what was
 2   going on, especially because, in response to that
 3   statement, Mr. Rodriguez makes an admission.  I agree
 4   it is not co-conspirator statement.
 5          THE COURT:  Well, I guess what I'd be
 6   inclined to do on that is to tell -- boy, I guess I
 7   would think that would fall into a present sense
 8   something, being stabbed, and a statement that you
 9   make there falls under one of those exceptions.  So I
10   think it could probably come in there.  Well, if it's
11   an exception, it's an exception.  I think it's
12   probably going to fall within that exception.
13          MS. JACKS:  And the other one I can't
14   locate immediately, but I'd have to take a look and
15   see if that would probably be the same analysis.
16          THE COURT:  Okay.  I guess if there are
17   statements by Molina at the time he's being stabbed,
18   they're probably coming in under one of those
19   exceptions.  We can think about it a little harder.
20   And I can review the rules for each one of them.  But
21   I would think they would probably fit into something.
22          MS. JACKS:  The other category or type of
23   statements that I think were offered, that I'd just
24   like to take a minute to talk about, are statements
25   that, to me, sort of are not about the murder of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5398

```
1    Molina, or the conspiracy to murder Santistevan or
2    Marcantel, but statements or puffery about prison
3    politics.  And the one that's probably an example --
4    and I'm not saying this is the only one -- is it was
5    offered November 29.  And I think it was through the
6    testimony of Agent Acee regarding conversations
7    between -- recorded conversations between Mr. Baca
8    and Mr. Duran.  And I'm at transcript, on page 259.
9    It's the top of page 259 on the transcript.  And I
10   don't think there is an exhibit that corresponds
11   directly to it.  But --
12            THE COURT:  Did you have 259 up, or was
13   that --
14            MS. JACKS:  I'm reading off the transcript
15   of the hearing of November 29, at page 259, starting
16   at the top.  And it's a statement of Baca that -- I
17   think Duran has initiated him into a discussion about
18   the Mexican Mafia.  And Mr. Baca says, "Hell, yeah,
19   they are." "Pup" complains -- this is Agent Acee's
20   characterization -- "Pup" complains to the CHS that
21   "Dan Dan" is too quick to want to fall under the Eme,
22   which is the Mexican Mafia.  "Pup" views the SNM
23   equal to the Eme or Mexican Mafia.
24            THE COURT:  Hold on just a second.  Let me
25   reread that sentence on the real-time.  Do you want
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    to read it again?  Read it real slowly, so maybe we

2    can get a real good transcription here.

3              MS. JACKS:  So this is Agent Acee, and he's

4    saying, as an answer to the question, "Pup" responds,

5    quote, "Hell, yeah, they are."  And then Acee gives

6    his interpretation of what that conversation was.

7    This is what I'm understanding the testimony to be,

8    "Pup" complains to the CHS that "Dan Dan" is too

9    quick to want to fall under the Eme.  "Pup" views the

10   SNM and equal to the Eme.

11             THE COURT:  Okay.  Is this still Mr. Perez'

12   statements?

13             MS. JACKS:  No, this is testimony of Agent

14   Acee about statements of Mr. Baca that were recorded,

15   or conversations of Mr. Baca and Eric Duran.  And so

16   one of the things Eric Duran engages Mr. Baca in

17   conversation about is the Mexican Mafia, and the

18   standing of the SNM with the Mexican Mafia.  And --

19             THE COURT:  I'll let Mr. Castellano do his

20   own argument, but I would think that the way that

21   would be handled would be that -- I think we might

22   agree that that would not come under the

23   co-conspirator exception.  But it is a statement by a

24   party opponent, and therefore, it's nonhearsay, the

25   statement itself, and it's relevant to the enterprise

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5400

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204

```
 1    or the furtherance of the enterprise's activities.

 2              Let me stop there.  Did you analyze it

 3    differently?  Remind me who is stating that Mr. Baca

 4    said this?

 5              MR. CASTELLANO:  Yes, I'll put it on the

 6    visualizer, Your Honor.  It's on DeLeon 3307.

 7              THE COURT:  Who is the declarant, the first

 8    declarant?  Not Mr. Baca, but who is saying Mr. Baca

 9    said this?

10              MR. CASTELLANO:  So here, this is the

11    actual statement.  It's 1168.010, in terms of the

12    recording.  So Duran tells Mr. Baca that if Mario --

13              THE COURT:  This is Duran recording Baca?

14              MR. CASTELLANO:  Yes.  So if Mario gets

15    caught -- as we recall, Mario was supposed to be

16    involved with the murder conspiracy -- and if he gets

17    caught, the news will get out that the SNM hit the

18    Secretary, then the Eme will look at the SNM

19    different.  And as Ms. Jacks said, "Pup" responds,

20    "Hell, yeah, they are."

21              So it is related to the enterprise.  It

22    relates to how they relate to other gangs --

23              THE COURT:  So the analysis I gave would be

24    the one that you would advocate?

25              MR. CASTELLANO:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  What do you see as the flaw in
 2   that analysis, Ms. Jacks, if any?
 3              MS. JACKS:  Well, I guess where I would go
 4   next, if that's the Court's analysis, is to say at
 5   some point I think this is just getting over the top
 6   in terms of the inflammatory nature of the comments,
 7   and with very little probative value proving whatever
 8   minor things the Government has to prove with respect
 9   to the enterprise.  So, at some point, I would say
10   that it should just be cut off.
11              THE COURT:  Okay.  So it's a 403 analysis.
12              MS. JACKS:  Correct.
13              THE COURT:  All right.  Anybody else want
14   to take on some particular statements as being either
15   not co-conspirator -- were you getting your jacket on
16   to get up, Ms. Sirignano?
17              MS. SIRIGNANO:  I am, Your Honor.
18              THE COURT:  All right.  So I'll get Ms.
19   Sirignano first, and then I'll come back to you, Ms.
20   Fox-Young.
21              MS. SIRIGNANO:  Your Honor -- and I really
22   don't have a particular statement that I can
23   challenge right now.  I just wanted to bring to the
24   Court's attention the argument that Ms. Jacks was
25   making.  And this is the Alcorta case, at 853 F.3d
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5402

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206 403

```
 1   1123.  And this page is 1137 --

 2            THE COURT:  Remind me of the argument

 3   you're tying this case to that Ms. Jacks made.

 4            MS. SIRIGNANO:  Well, right there,

 5   mid-page, talking about things that are heard as

 6   gossip, things that are heard on the yard, things

 7   that can't necessarily be attributed to one person.

 8   And right where the Section 8, 9, 10 boxes are

 9   starts, "Before admitting statements into evidence

10   under the co-conspirator exception to the hearsay

11   rule, the district court must determine by a

12   preponderance of the evidence that, 1, a conspiracy

13   existed, 2, the declarant and the defendant were both

14   members of the conspiracy, and 3, the statements were

15   made in the course of, and in furtherance of the

16   conspiracy."  And they cite this Morgan case from the

17   Tenth Circuit in 2014.  This is the same argument

18   that Ms. Bhalla was making earlier.

19            So starting here at this sentence, of

20   central importance here is the in furtherance

21   requirement of the Federal Rules of Evidence, which,

22   quote, "embodies the drafter's desire to strike a

23   balance between the great need for conspirators'

24   statements in combatting undesirable criminal

25   activity, which is inherently secretive and difficult
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of prove, and the need to protect the accused against

2    idle chatter of criminal partners, as well as

3    inadvertently misreported and deliberately fabricated

4    evidence," end quote.  And they cite this United

5    States v. Perez case.  It's a Tenth Circuit 1993

6    case.  And Mr. Castellano used this to show the Court

7    a wide array of statements can fit into this

8    requirement.

9           And then, at the bottom of the page,

10   starting at boxes 11, 12, and 13, it says, "The trial

11   court must state on the record its findings on the

12   elements of the co-conspirator exception," citing

13   Rascon, a Tenth Circuit case from 1993.

14          So, Judge, my argument is two-fold here.

15   One, I understand you're trying to ascertain if these

16   statements are co-conspirator statements or not,

17   which Ms. Jacks determined that some of them may not

18   be.

19          And secondly, the Court -- Tenth Circuit

20   requires that if it's coming in as a co-conspirator

21   statement, the Court must state on the record its

22   findings regarding each and every statement.  So that

23   just concerns me a little bit, because I --

24          THE COURT:  Well, I think you're adding a

25   little bit.  I don't think it requires me to make

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5404

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

```
 1   1000 findings.  I mean, if I find generally that this
 2   Perez transcript comes within the co-conspirator
 3   exception, with the exception of maybe a few
 4   statements, I think that's satisfying my task.  It
 5   doesn't say that I have to make it as to each and
 6   every statement.  It does say I have to make, on the
 7   record, findings on the elements of the co-conspiracy
 8   exception.  I think I can -- for example, once I find
 9   a conspiracy existed, once I find the declarant and
10   the defendant were both members of the conspiracy, I
11   think I have to be maybe a little bit more precise on
12   the statements were made in furtherance.  But I can
13   take them as groups, wouldn't you agree?
14             MS. SIRIGNANO:  I'm not so sure, Judge.
15   That's why I bring it to the Court's attention.
16             THE COURT:  Well, if the defendants are not
17   going to take the time to point out specific
18   statements, I think it's a little hypocritical for
19   them to go to the Tenth Circuit and say I've got to
20   make a statement on each one that nobody even
21   challenged.  So I guess I would push back on that.
22   That seems to me elevating a lot of form over
23   substance.
24             All right.  Let's take our break for the
25   afternoon, then I'll pick up when you get back, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   Sirignano.

 2              (The Court stood in recess.)

 3              THE COURT:  We'll go back on the record.

 4   Make sure that everybody has a lawyer.  All right.

 5              Ms. Sirignano, let's make sure that you and

 6   I aren't speaking past each other.  Let's slow down

 7   here.  And I think you and I can agree on this.  And

 8   this is maybe what you were saying and this is maybe

 9   what I was saying, and I think maybe we're not as far

10   apart.  I agree with you, I have an obligation on

11   every statement to say -- make those findings.  I

12   think I have made those statements and findings as to

13   everything that I am calling in the James box for the

14   two conspiracies.  So I did that at the beginning.

15   And then I invited the defendants to challenge, if

16   they saw some statements that -- I mean, there is a

17   lot of statements here, and so I'm trying to keep

18   them all straight in my head, and filter them through

19   the co-conspirator analysis.  But I've made findings

20   as to everything that the Government has presented in

21   their James presentation.  So I think I've made those

22   three.

23              What I was disagreeing with you, and I

24   don't think you're asking me to do this, is I take

25   every sentence and state it separately.  I can take
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   boxes of materials and make those.  If you think I
 2   need to make it, then we'll have to disagree.  But it
 3   seems to me that then if y'all disagree with me, the
 4   defendants agree on some statements, we need to do
 5   like Mr. Lowry was doing, Ms. Jacks was doing, to a
 6   certain degree, Ms. Bhalla, tell me, Hey, you've got
 7   this one wrong.  You've got to look at this
 8   statement.  And then I've got to either agree with
 9   you, which I think Mr. Castellano and I have agreed
10   with the defendants on some, and then we have to
11   filter it or get it in, if it's going to come in at
12   all through some other exceptions.  Would you agree
13   with that analysis?
14           MS. SIRIGNANO:  One hundred percent.
15           THE COURT:  All right.  We're in agreement
16   then.
17           MS. SIRIGNANO:  Thank you, Judge.  I just
18   wanted to make the record on that because this
19   Alcorta case is very helpful.
20           THE COURT:  What is the case you had up
21   there?
22           MS. SIRIGNANO:  It's United States v.
23   Alcorta, A-L-C-O-R-T-A, 853 F.3d 1123.  And I was
24   quoting from page 1137.  And the court's discussion
25   bleeds onto page 1138, and the very beginning of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5407

```
 1   1139.

 2            THE COURT:  And is that a Tenth Circuit

 3   case?

 4            MS. SIRIGNANO:  Yes, 2017.  And it's Judge

 5   Hartz.

 6            THE COURT:  Is that the same case you had

 7   up, Mr. Castellano?

 8            MR. CASTELLANO:  Yes, I lent it to

 9   Ms. Sirignano.

10            MS. SIRIGNANO:  It's Judge Hartz' opinion,

11   Your Honor.

12            THE COURT:  Okay.

13            MS. SIRIGNANO:  So just to sum up, Judge,

14   my concern is that this case says that the Court went

15   through at the first James hearing, and the district

16   court judge in this case ruled that the Government

17   had showed by a preponderance of the evidence that

18   the conspiracy existed, and that it included the

19   defendants.  And the court did question the parties

20   about how the specific conversations fit within the

21   co-conspirator exception.  And if it didn't fit

22   within the co-conspirator exception, the Government

23   provided various rationale for the challenged

24   statements.  And I understand we're doing that here.

25   But I do believe it's the Government's burden.  If
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5408

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212409

```
 1    the statements aren't coming in, based on the --
 2            THE COURT:  I don't disagree with you.  The
 3    burden remains regardless of the exception.  They're
 4    the proponent of the evidence so they have the burden
 5    of proving its admissibility.  The only thing I'm
 6    trying to set up a mechanism for is I know y'all have
 7    been struggling with it.  Ms. Wild has been telling
 8    y'all -- I'm just saying:  Help me out.  I'm making
 9    my findings.  I'm doing what I think the Tenth
10    Circuit requires me to do, and the Ninth Circuit
11    requires me to do.  But after I make that, I'm still
12    giving y'all an opportunity to come back just like
13    Ms. Jacks was doing and Mr. Lowry was doing, Judge, I
14    think you've got it wrong on this one.  And I'll
15    reconsider that and say, Yeah, you're right, it's not
16    in furtherance or yeah, the dates aren't precise.
17    And this is a lot of material for a judge to absorb.
18    And I'm quite willing to say, Hey, I don't think
19    you're right on this one; you know, I understand on
20    others, but this one you got it wrong.
21            And so that's -- but I agree with you the
22    burden always stays with the Government.  But I've
23    got to have some help from the defendants, because
24    y'all are going to run the risk of waiving for an
25    appeal if you don't help me out to some degree
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   saying:  That one you got wrong.  So I think we all
 2   are in the same box here.  We've got to preserve our
 3   objections; I've got to do my job, and the Government
 4   has the burden of proof.  So --
 5              MS. SIRIGNANO:  Thank you, Judge.  That's
 6   all I've got right now.
 7              THE COURT:  Do you have anything
 8   specifically you want guidance or you want me to
 9   reconsider or think about?
10              MS. SIRIGNANO:  I'll just take the Mr.
11   Lowry and Ms. Jacks option.  And if I -- Mr. Adams
12   and I believe that there is something that came in
13   wrong, we'll advise the Court in a letter.
14              THE COURT:  All right.  Take a look at it.
15   We've got boxes here of two conspiracies.  If they
16   don't fit in there, you can say, Well, I don't think
17   it fits in, and then the Government is going to
18   probably have to show me how else it's going to --
19   how it's going to fit in.
20              MS. SIRIGNANO:  Thank you, Judge.
21              THE COURT:  Thank you, Ms. Sirignano.
22              Mr. Castellano, I'll ask you, since some of
23   these that we've been talking about this afternoon
24   you're relying on Smalls.  On every one of the ones
25   that we had this afternoon in Smalls, are you -- let
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5410

```
 1    me get the language to the rule so I can cite it to
 2    you -- and then some of the defendants may have -- I
 3    guess what I was going to ask you is:  Where we have
 4    this afternoon defaulted not to the co-conspirator
 5    statement, but we have defaulted to the statement
 6    against interests.  The first requirement of that is
 7    "a reasonable person in the declarant's position
 8    would have made the statement only if the person
 9    believed it to be true because, when made, it was so
10    contrary to the declarant's proprietary or pecuniary
11    interest or had so great a tendency to invalidate the
12    declarant's claim," that reasonable person in the
13    declarant's position, we're relying a lot on -- well,
14    I think I'm answering my own question.  Because we
15    don't have to determine Perez' interests.  What I was
16    thinking of is his is coming in because it's not
17    hearsay; it's a party opponent.  So it's Baca's
18    interests that we're having to evaluate.  And those
19    statements were against, those would not have been
20    made -- okay, I was thinking for a second, given the
21    testimony I heard, not in the James hearing, but in
22    the suppression motion, where he said he was lying.
23    But I don't think that's going to be relevant to
24    Baca's penal interests.  So I think the Smalls
25    exception still works.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5411

1          You're probably going to tell me I'm right.

2          MR. CASTELLANO:  I'm going to tell you

3     you're right, Your Honor.  And that's what happened

4     in Smalls.  We had a jailhouse informant, who said

5     that another person told me those things, and that

6     informant wasn't in harm's in terms of criminal

7     liability.

8          The only reason I came up --

9          THE COURT:  The informant is sort of

10    irrelevant here, because we've got the tapes.  So the

11    informant sort of falls out of the hearsay analysis,

12    and we're just analyzing Perez.  Perez comes under

13    party opponent.  And Baca comes in under the

14    exception statement against penal interests.

15         MR. CASTELLANO:  Yes.  And I think we've

16    covered the subjects.  But I want to make sure we're

17    talking about multiple conspiracies.  I think four

18    actually.  One is the conspiracy to murder Javier

19    Molina.  The next is the conspiracy to assault Julian

20    Romero.  That's one we don't discuss very much, but

21    Mr. Baca is the only remaining defendant in that

22    count.  There is a conspiracy there.  And then a

23    conspiracy to murder Dwayne Santistevan.  And a

24    conspiracy to murder Gregg Marcantel.  I've generally

25    spoken about Santistevan and Marcantel together, but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5412

```
1    they are two conspiracies.
2            THE COURT:  Two conspiracies.  Let's talk a
3    bit about that second one, because that one I've sort
4    of phased over a little.
5            MR. CASTELLANO:  So we've talked about that
6    in passing, even when Mr. Roark was on the stand.  So
7    when the SNM was locked down following the Molina
8    murder, eventually they decided to lift the lockdown.
9    And within hours, another person was assaulted, and
10   that was Julian Romero.  And that resulted in the SNM
11   being locked down once again.  And that is covered in
12   one of the plea agreements I referenced earlier.  But
13   I'll give it back to the Court.
14           THE COURT:  So I have this clearly in my
15   head, who are you saying -- what are you naming this
16   conspiracy?
17           MR. CASTELLANO:  The Julian Romero assault.
18           THE COURT:  And who are you including in
19   this conspiracy?
20           MR. CASTELLANO:  This was a conspiracy
21   with, I believe, Gerald Archuleta, Conrad Villegas,
22   and Mr. Baca, among others.
23           THE COURT:  So then what statement of those
24   co-conspirators are you trying to get in through the
25   co-conspirator exception?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5413

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 217

1          MR. CASTELLANO:  Let me see if I can find

2     that.  First, is -- one was Lupe Urquizo, and I'll

3     give that to the Court in a second here.  But in

4     terms of the conspiracy, Gerald Archuleta's plea

5     agreement indicates that -- on page 5 of his

6     agreement -- this is Government's Exhibit 14 -- "This

7     attack and hit had been approved by leaders of the

8     SNM Gang, including Anthony Ray Baca.  As leader of

9     the SNM Gang in 2015, Baca was aware of the

10    outstanding green light and sanctioned it."  There is

11    some evidence of the conspiracy there --

12          THE COURT:  Who made that statement?

13          MR. CASTELLANO:  That is Gerald Archuleta.

14    I'll put the plea agreement --

15          THE COURT:  And he is one of the

16    conspirators in the Romero assault?

17          MR. CASTELLANO:  Yes, he was.  So in terms

18    of background, one of the things that causes some

19    divides in the gang were that -- maybe as far as

20    2003 -- Gerald Archuleta was in prison, if I recall

21    correctly.  He allowed Julian Romero to stay at his

22    house.  And he ended up sleeping with Gerald

23    Archuleta's wife, or girlfriend.  So, from that time

24    forward, there was an ongoing conspiracy to murder

25    Mr. Romero.  And in 2003, he was actually shot as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5415

1    part of that conspiracy.  And the conspiracy remained

2    outstanding up until the time he was assaulted.  And

3    that's referenced on pages 4 and 5 of Gerald

4    Archuleta's plea agreement.

5           And let me get the statement real quick, at

6    least some of them.  I believe one we introduced at

7    the hearing, at least as related to Lupe Urquizo, is

8    that "Anthony Ray Baca told Mr. Urquizo to let the

9    shot callers at Southern know that Baca wanted Javier

10   Molina hit."

11          The next statement was that, "Baca told

12   Urquizo to make sure the guys running Southern took

13   care of Molina."

14          The next statement is that, "Baca told

15   Urquizo if you guys down there don't handle it, then

16   just stab him," referring to Molina -- I'm sorry,

17   that's Molina -- I apologize, those are related to

18   Mr. Molina.  The two statements we have from Mr.

19   Urquizo are that "Mr. Urquizo and Jonathan Gomez told

20   Conrad Villegas to hit Julian Romero."  And the next

21   one was that, "Anthony Baca sent down word to

22   Southern that Romero should be beat but not stabbed

23   or killed."  And ultimately that's what happened.

24   Those are at least two of the statements I can find

25   right offhand that we introduced related to the

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

DNM 5415

```
 1    Julian Romero beating or assault.
 2              THE COURT:  All right.  Did you want to say
 3    something, Mr. Lowry?
 4              MR. LOWRY:  Just a point of clarification,
 5    Your Honor.  And this is going to go back.  So I take
 6    on the representations now they're not two
 7    conspiracies, but four conspiracies that we're
 8    talking about.  But this point with the Julian Romero
 9    statements, if I recall Agent Acee's testimony
10    correctly, Mr. Urquizo claims that he was told by
11    Jonathan Gomez about Mr. Baca's statements.
12              THE COURT:  Well, let me ask this:  That
13    statement of Mr. Urquizo was offered only to prove
14    for purposes of the James hearing that a conspiracy
15    existed, and who was a member of it.  It's not a
16    statement that you're trying to fit in as a
17    co-conspirator statement for purposes of the
18    exception?  Am I understanding the Government's
19    position correctly, Mr. Castellano?
20              MR. CASTELLANO:  The first statement.  Yes,
21    it wouldn't come in, well, directly.
22              THE COURT:  The first statement --
23              MR. CASTELLANO:  Yes, the first statement
24    is an admission by Mr. Urquizo that he and Jonathan
25    Gomez told Conrad Villegas to hit Julian Romero.  In
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5416

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 220

```
 1    fact --

 2              THE COURT:  That is not -- you're not

 3    trying to fit that in a co-conspirator statement?

 4    Because Urquizo is not a co-conspirator in this one,

 5    right?

 6              MR. CASTELLANO:  He would be an uncharged

 7    co-conspirator.  He's not charged with that.  But he

 8    admits that he and Jonathan Gomez told Conrad

 9    Villegas to hit Julian Romero.  But that would come

10    in through Urquizo on the stand.

11              THE COURT:  Okay.  So there is no hearsay

12    problem, because he's here, and he made that

13    statement then to -- well, he made that statement to

14    who?

15              MR. CASTELLANO:  To Conrad Villegas, who

16    ultimately assaulted Julian Romero.

17              THE COURT:  Who is part of the conspiracy?

18              MR. CASTELLANO:  Yes.

19              THE COURT:  And he's saying that Mr. Baca

20    said that to him?

21              MR. CASTELLANO:  Well, a separate statement

22    is attributed, and that's that Mr. Baca is the one

23    who sent word down to Southern that Romero should be

24    beat, but not stabbed or killed.  So Mr. Baca is

25    modifying that order.  The original order for Mr. --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5417

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221

```
 1    "Styx," Gerald Archuleta, was that he should be

 2    killed, referring to Julian Romero.  Mr. Baca

 3    modifies that by saying, "He should be beat up, but

 4    not stabbed or killed."

 5            THE COURT:  Well, help me analyze it.  The

 6    statement that Mr. Urquizo is going to make on the

 7    stand, I don't need the co-conspirator exception.

 8    The co-conspirator exception that you need is where?

 9            MR. CASTELLANO:  Actually, I think you're

10    right, Your Honor.  I'm not sure we need it for that

11    purpose as a co-conspirator statement.

12            THE COURT:  Okay.  So if I don't need

13    Urquizo, if that statement doesn't need to fit into

14    an exception, then do you see any problems with now

15    the co-conspirator statements that the Government is

16    trying to get in in the Romero box?

17            MR. LOWRY:  Well, going with the Court,

18    what's the theory of admissibility?  I'm not quite

19    sure --

20            THE COURT:  Well, if Urquizo is on the

21    stand, you don't need any exception.  There is no

22    hearsay there, because it's going to be an in-court

23    statement being offered for the truth of the matter.

24            MR. LOWRY:  And my understanding was --

25            THE COURT:  But he's going to be testifying
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5418

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 222419

```
 1    about what Baca said.

 2              MR. LOWRY:  And that's my point, Your

 3    Honor.  That's not what my understanding from the

 4    testimony was.  My understanding from Agent Acee's

 5    testimony is that Mr. Urquizo will testify about what

 6    Jonathan Gomez told him that Anthony Baca told

 7    Mr. Gomez.  And I think --

 8              THE COURT:  Well, is Gomez part of the

 9    Romero conspiracy?

10              MR. CASTELLANO:  Jonathan Gomez is, I would

11    say part of the conspiracy, but he is not charged.

12    And my notes could be wrong here.  We could go back

13    to the transcript about what Agent Acee said.

14              MR. LOWRY:  And the reason this stands out

15    to me -- well, Mr. Castellano is looking at the

16    transcript, Your Honor -- is when I was asking Agent

17    Acee on the stand:  Okay, Urquizo attributes this to

18    Mr. Gomez.  You interviewed Mr. Gomez.  What did

19    Mr. Gomez say?  And this is where Agent Acee said,

20    "Well, he danced around it.  He never answered."  And

21    I had to press Mr. Acee.  And under cross, Mr.

22    Acee -- I think the transcript will reflect that he

23    said Mr. Gomez never affirmed that representation

24    made by Mr. Urquizo.  So I'm having a break in the

25    chain of the hearsay statements, or however we want
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223

```
 1    to characterize them.

 2              THE COURT:  Do you have the transcript that

 3    we can pull it up and take a look at it?

 4              MR. CASTELLANO:  I don't have it available,

 5    Your Honor.

 6              THE COURT:  Do you have that, Mr. Lowry, or

 7    Ms. Duncan?

 8              MR. LOWRY:  I do, Your Honor.  Your Honor,

 9    I'm looking at Volume 1 of the transcript from

10    November 27, 2017.

11              THE COURT:  Are you able to put that on the

12    screen for me?

13              MR. LOWRY:  I will, Your Honor.  It's on

14    page 153, if I have this correctly.  This is 153, I

15    have it highlighted here.  So that's what I'm saying

16    here, "Word had come down" -- this is Agent Acee's

17    testimony -- "Word had come down via Jonathan Gomez

18    that they were to hit Julian Romero."

19              THE COURT:  And your problem -- go ahead

20    and say it for me -- make your argument -- your

21    problem with that statement coming in the

22    co-conspirator is what?

23              MR. LOWRY:  Well, other than this is the

24    first I'm hearing -- well --

25              THE COURT:  That Jonathan Gomez was part of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5420

```
 1    the conspiracy?

 2              MR. LOWRY:  A member of the conspiracy.

 3              THE COURT:  Well, assume that they can --

 4    well, let's -- let's ask Mr. Castellano this:  What

 5    proof do I have at this point that Mr. Jonathan Gomez

 6    would be a conspirator here, indicted or unindicted?

 7              MR. CASTELLANO:  Let me check with Agent

 8    Acee real quick, see if he recalls, Your Honor.  And

 9    I'll see if I have another report.

10              THE COURT:  All right.

11              MR. LOWRY:  And I don't want to get stuck

12    on the shoals of credibility again.  But you can see

13    where I'm having an issue with this, if Mr. Gomez is

14    not saying that this statement was made.  Again, it

15    comes back to sort of an ongoing --

16              THE COURT:  Well, they have the burden of

17    proving that Mr. Gomez was a conspirator.  So I think

18    they're shouldering that burden, and wondering if

19    they have put in evidence that makes this --

20              MR. CASTELLANO:  I'm going to try to write

21    this down, Your Honor, as exact as I can get it.

22              MR. LOWRY:  And, Your Honor, just for the

23    sake of the exercise, I think one of the things

24    you've seen all the parties struggling with this

25    afternoon -- and I understand the way the hearing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5421

 1   unfolded, but nobody has a complete set of the

 2   exhibits.  And if we could get, at the end of the

 3   day, a complete set of the Governments exhibits so we

 4   can be pinpoint accurate if we have any questions.

 5        THE COURT:  You want the Government's

 6   exhibits?

 7        MR. LOWRY:  That are up here, just a copy,

 8   a set.  I mean, they referred to them in the record,

 9   and that's why we're looking at the transcripts

10   instead of having an actual set.  And just the number

11   of defendants -- I think the parties didn't make full

12   sets of exhibits for everyone.  And if we could just

13   make a copy of what the Court has on record, that

14   would be most helpful for this exercise, Your Honor.

15        THE COURT:  How do you want to do that,

16   Mr. Castellano?  It doesn't have to be today, but I'd

17   like to get a set back with me in Albuquerque.  Do

18   you want to let Mr. Lowry have a set of the exhibits?

19   He can make copies of them, and then get them back to

20   Ms. Standridge, and then she can get them up to me in

21   Albuquerque.  Is that okay?

22        MR. CASTELLANO:  The only set of exhibits I

23   have are here.  And some of the testimony came from

24   the officers refreshing their recollection from

25   reports.  Those did not become exhibits.  If you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5422

```
 1   recall, a few times we lent those to the defense to
 2   review during breaks.  So those weren't exhibits.
 3   The exhibits here are the plea agreements.
 4            I want to say, the summary I've been using
 5   was introduced at one point.  I'll see if it's up
 6   here.
 7            THE COURT:  Let me see if I have -- I think
 8   what Ms. Wild is saying is identify for the Court
 9   what copies you want.  I think, at this point, I
10   probably better hang onto them.  So tell Ms.
11   Standridge what copies you want.  We'll make copies
12   and we'll hand them back to you.
13            MR. LOWRY:  I'll do that, Your Honor.
14   Thank you.
15            THE COURT:  Let me just look up here and
16   make sure that I don't have more exhibits.  Ms.
17   Standridge, do you have the exhibit numbers?  You're
18   not interested in any of the defendants' exhibits?
19   Because I have a stack of those.
20            MR. LOWRY:  No, Your Honor, I'm not.  And
21   if I help narrow this for everyone concerned, what
22   I'm really looking for are the Government's exhibits
23   that were in the form of transcripts or the
24   recordings summaries that were used with Agent
25   Acee's.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5423

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227424

```
 1                  THE COURT:  Does that stack have anything
 2    you're looking for?
 3                  MR. LOWRY:  Yes, Your Honor, it does.  And
 4    I think this may be the majority of it.  But I'll go
 5    back to the record and look.
 6                  THE COURT:  All right.  Just identify
 7    before you leave today with Ms. Standridge what
 8    copies you want.  I'll keep the exhibit set, and then
 9    she'll make you a set of copies and get them to you.
10                  MR. LOWRY:  Thank you, Your Honor.
11                  THE COURT:  All right.  Mr. Castellano, if
12    you have something you want to say further on the
13    Romero, then I want to go back to some of these
14    Smalls issues that -- I want to cover some of the
15    ones that we've identified here, that the defendants
16    have raised that they may have problems with
17    co-conspirator.  Then we were looking at Smalls.  So
18    I want to come back to that issue.  But why don't we
19    finish up with Romero before we do.
20                  MR. CASTELLANO:  In Romero, looking at
21    Exhibit 14, which is Gerald Archuleta's plea
22    agreement, just to go back to establishing the
23    conspiracy, and that Mr. Baca was a member of the
24    conspiracy, that's on the top paragraph of page 5,
25    indicating that, "The hit had been approved by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5424

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228

 1    leaders of the SNM Gang, including Anthony Ray Baca."

 2              THE COURT:  And this document that I'm

 3    looking at is whose plea agreement?

 4              MR. CASTELLANO:  This is Gerald Archuleta.

 5    It's Government's Exhibit 14.  So Archuleta was a

 6    member of that conspiracy, and he agreed that he

 7    conspired with Mr. Baca and others.

 8              And related to the --

 9              THE COURT:  Can you put that back up there?

10              MR. CASTELLANO:  Yes.

11              THE COURT:  What other -- does he identify

12    the others?

13              MR. CASTELLANO:  On page 4, there is a 2003

14    Shooting of Julian Romero.  I believe that was

15    Federico Munoz who did that, and maybe another person

16    was with him.  That went back to 2003.

17              And then, in 2005, it just indicates that

18    another member or associate of the SNM acted on the

19    hit, and that would refer to Conrad Villegas, was the

20    person who ultimately acted and assaulted Mr. Romero.

21              THE COURT:  Okay.

22              MR. CASTELLANO:  Then related to the

23    statements --

24              THE COURT:  So you're offering this to

25    prove who was in the conspiracy?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5425

```
 1          MR. CASTELLANO:  Correct.  So we have to

 2   prove the existence of the conspiracy.  In this case,

 3   the remaining defendant in that conspiracy is Mr.

 4   Baca, so to establish his membership in the

 5   conspiracy.

 6          Then going back to the statement by Mr.

 7   Urquizo.  There is an indication that he and Jonathan

 8   Gomez told Conrad Villegas to assault Julian Romero.

 9   So that would be one statement, those two instructing

10   Conrad Villegas to assault Julian Romero.  Then Gomez

11   indicated to Urquizo that Mr. Baca sanctioned the

12   hit, but he only wanted him smashed; he did not want

13   him stabbed or killed, referring to Julian Romero.

14   So the other statement would be Mr. Urquizo telling

15   the jury that Mr. Gomez told him that Mr. Baca only

16   wanted the victim smashed or beat up, but not stabbed

17   or killed.

18          THE COURT:  You say there is an indication

19   that he, Mr. Urquizo, and Gomez told Conrad Villegas

20   to assault Romero.  So that would be one statement.

21   Do we need -- if Urquizo is part of the conspiracy,

22   what evidence do I have at this point that Urquizo is

23   part of the conspiracy?

24          MR. CASTELLANO:  Urquizo's admission.  He

25   admits that he and Jonathan Gomez instructed Conrad
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5426

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 230

230

```
 1    Villegas to assault Mr. Romero.
 2              THE COURT:  And that's Mr. Urquizo's own
 3    statement?
 4              MR. CASTELLANO:  Yes.
 5              THE COURT:  So what do we need Jonathan
 6    Gomez at all for?  It seems to me that it may be
 7    difficult for the Government to get Jonathan Gomez.
 8    I don't think there is maybe enough here for me to
 9    find that Gomez is a member of this conspiracy.  And
10    then, if that's the case, it seems to me it's
11    irrelevant what Gomez said to Villegas.  And it may
12    be difficult to fit that into the co-conspirator's
13    statement.  Your thoughts on that?
14              MR. CASTELLANO:  Mr. Urquizo and Mr. Gomez
15    both told Conrad Villegas to commit the assault.
16              THE COURT:  But it sounds to me like I've
17    got Urquizo coming in and saying that he told
18    Villegas to assault.  What do I gain by getting Gomez
19    in the picture?
20              MR. CASTELLANO:  Because Gomez is the one
21    who tells Urquizo that Mr. Baca only wanted the
22    victim assaulted, not stabbed or killed.  So what
23    Mr. Gomez is doing is providing instructions to Mr.
24    Urquizo that Mr. Baca sent down when that assault was
25    going to occur.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5427

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231428

```
 1              THE COURT:  Okay.  So let me make sure I
 2   understand.  I'm using Urquizo's statement to prove
 3   both that Gomez is a member of the conspiracy to
 4   assault Romero, and that -- well, that Gomez was part
 5   of it, and then there was a conspiracy, and I'm using
 6   the same statement to show that it was in furtherance
 7   of the conspiracy?
 8              MR. CASTELLANO:  Correct.
 9              THE COURT:  Okay.
10              MR. CASTELLANO:  In other words, Mr. Gomez
11   would be identifying other members of this
12   conspiracy, to include Mr. Baca.  And identifying
13   other members of the conspiracy is in furtherance of.
14              THE COURT:  Mr. Urquizo would be doing
15   that, is that what you said?
16              MR. CASTELLANO:  Well, yes, Mr. Urquizo.
17              THE COURT:  You said "Mr. Gomez," but I'm
18   not having Mr. Gomez speak.  Where is he speaking
19   other than to he told Villegas?
20              MR. CASTELLANO:  Correct.  He does two
21   things.  Mr. Gomez, along with Mr. Urquizo, first
22   instructs Mr. Villegas to commit the assault.  And
23   then Mr. Urquizo tells us that he got word through
24   Mr. Gomez that Mr. Baca wanted this only to be an
25   assault.  So Mr. Urquizo is relaying a statement by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5428

1    Mr. Gomez, identifying himself as a conspirator and

2    Mr. Baca as another conspirator.

3              THE COURT:  Okay.  What do you see as the

4    flaw, if any, on that, Mr. Lowry?  It looks like

5    they've got enough for me to find by a preponderance

6    all three of the elements on the Romero, and get the

7    Baca statements in.

8              MR. LOWRY:  Well, Your Honor -- I would

9    agree with Your Honor, if we assume Jonathan Gomez is

10   a member of the conspiracy.

11             THE COURT:  Well, do you agree with me --

12   and I think this is a principle that I can use --

13   that's the reason I was asking Mr. Castellano.

14   Because it seems to me the critical statement is that

15   Urquizo -- let me see if I can find it -- so Urquizo

16   said that he and Gomez told Villegas.  So I can get

17   Urquizo's statement in.  Like I said, just drop out

18   Gomez for a second, drop him out.  So it's just

19   Urquizo telling Villegas to go assault Romero.  And

20   then Urquizo can then -- and that statement would be

21   in furtherance of the conspiracy.  It would show

22   there is a conspiracy, because he's saying Baca said

23   it.  And it would indicate that he and Mr. Baca were

24   members of the conspiracy.  And then, if I had a

25   Mr. Gomez -- then Urquizo is establishing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5429

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3430

```
 1    Mr. Gomez -- there is already a conspiracy -- now
 2    that he's a member of the conspiracy and that he is
 3    acting in furtherance of the conspiracy.  So it seems
 4    to me I can use the statement for multiple purposes,
 5    and therefore, establish that Mr. Gomez is, by a
 6    preponderance of the evidence, is both a member --
 7    that the conspiracy exists; he's a member of the
 8    conspiracy, and that the statements Mr. Gomez made
 9    were in furtherance of the conspiracy.  So, yes, it's
10    not an assumption.  I have to make a finding on that
11    that I can use a statement.  I can use the -- I can
12    use as evidence the statement itself that's being
13    used to find the three elements of the co-conspirator
14    exception.
15              MR. LOWRY:  That's a lot of work for just
16    the statement itself.  And I'm not --
17              THE COURT:  But it's only a single
18    statement coming in, too.  So it's not carrying the
19    weight of a lot of things like in the other
20    conspiracies, where a lot of statements were coming
21    in.  It's one coming in here.
22              MR. LOWRY:  Well -- and I guess what I
23    would suggest, you know, the standard would ask the
24    Court to look for evidence of corroboration with
25    that.  And that's why I asked Mr. Acee.  And what I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5430

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 234

```
 1    have on the Elmo is the direct --
 2              THE COURT:  Well, isn't the corroboration
 3    going to come in -- I'm sorry, who is coming on the
 4    stand?  It's Romero -- not Romero.  It's --
 5              MR. LOWRY:  Urquizo.
 6              THE COURT:  Is it Urquizo or Gomez?
 7              MR. CASTELLANO:  It's Urquizo, Your Honor.
 8              THE COURT:  So Urquizo is going to come in
 9    on the stand.  The fact he's here going to state
10    these things under oath, isn't that going to be some
11    additional indication of trustworthiness?
12              MR. LOWRY:  Your Honor, if you look at the
13    pattern instructions on the credibility of
14    informants, I think what the instructions will tell
15    the jury, ultimately, is we're to treat their
16    credibility with a high degree of suspicion.  And I
17    would encourage the Court to do so as well,
18    especially in this analysis.
19              Because what Agent Acee had said, when I
20    asked him on this page, and this is page 206 of the
21    transcript, from November 27, 2017, is that he did
22    try to corroborate this statement, and he was
23    unsuccessful in doing so.
24              THE COURT:  Where do you get the standard
25    that -- and I'm not sure exactly what you said, but I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5431

1    think you said that:  What I am told to do is to

2    treat something with a high degree of suspicion?

3    What was your word?

4              MR. LOWRY:  The pattern instructions, I'm

5    thinking of the ones I've read from the Ninth

6    Circuit.  But to say to the jury in the ultimate set

7    of instructions that we'd like to have the Court

8    read -- and obviously, we'll debate that at a later

9    point -- is that one should consider informants,

10   snitches, however you want to describe it, with a

11   certain degree of suspicion.  Those are my words.

12             THE COURT:  And you think I should use the

13   same standard?

14             MR. LOWRY:  I'm sure the law doesn't

15   obligate you to use that standard.  But if we're

16   talking about corroboration of his statements, and

17   we're just resting sort of -- you know, pulling his

18   statements up by themselves on their own merit, as I

19   told the Court earlier, I'm a bit of a skeptic when

20   it comes to the Government's evidence, and I'm not

21   going to yield on this particular statement.

22             So when I try to assess whether the

23   Government had corroborated Mr. Urquizo's statements,

24   we get:  He didn't do that.  And this goes a little

25   bit further than that.  If we look from page 206 to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5432

```
 1    207, Agent Acee described Mr. Gomez' briefing to him.

 2    And that he says, essentially -- I'll paraphrase

 3    this, and the Court is welcome to read it -- but:  We

 4    don't listen to Mr. Baca, you know.  And that's what

 5    we see here on line 21 of page 207.  "We don't always

 6    follow the orders."

 7            THE COURT:  And help me out.  From that,

 8    your argument would be what?

 9            MR. LOWRY:  Well, that you can't -- we're

10    relying completely on Mr. Urquizo's statements that

11    Mr. Baca was involved; had sanctioned this rough-up

12    of Mr. Romero.  And what I'm suggesting to the Court

13    is Mr. Urquizo had a lot of motivation to credit

14    someone else with this, especially Mr. Baca, because

15    the Government is, you know, offering considerable

16    benefits to individuals that are willing to implicate

17    Mr. Baca in all manner of criminal conduct.  And Mr.

18    Urquizo is no exception to that.

19            So here we have Mr. Urquizo, with some

20    degree of motivation, to corral Mr. Baca into a

21    conspiracy that Mr. Archuleta will say -- I would

22    imagine he'll say that he initiated.  I think it's

23    important for the Court to understand that, in Mr.

24    Archuleta's plea agreement, which we just examined

25    with the Government, he's talking about things that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5433

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 237

```
 1   happened in 2003, 2004, 2005, all of which
 2   incorporated a period of time where Mr. Baca isn't
 3   even in New Mexico.  He's been in Nevada serving time
 4   since 1997; doesn't return to New Mexico until 2008.
 5          So the idea that Mr. Baca was part of some
 6   tabla or some organization that got together and
 7   conspired to authorize Mr. Romero to be killed is,
 8   again, I guess, from what I understand the Court's
 9   leanings, you might consider that a credibility
10   issue.  But I think when we're looking for evidence
11   of corroboration about the merit of Mr. Urquizo's
12   statements, I think that's other evidence that the
13   Court could consider, and should consider.
14          THE COURT:  Okay.  If I do that, though,
15   should I also consider evidence that I have from a
16   number of sources that Mr. Baca was the leader and
17   did give orders?  I mean, not rely just upon this one
18   statement that -- but also everything else I've
19   heard, that Mr. Baca does -- is the leader, was the
20   leader, and did give orders, and many of those orders
21   were carried out.
22          MR. LOWRY:  I think the Court could use
23   everything that the Court has heard in the last weeks
24   of motions hearings.  I wouldn't argue against that.
25   But this is why --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5434

1          THE COURT:  Tell me, though, on this

2    particular point, whether he -- whether Mr. Baca was

3    in control, wasn't in control, people followed his

4    orders, didn't follow.  Tell me what element of the

5    hearsay exception this goes to.

6          MR. LOWRY:  Well, what I'm suggesting to

7    the Court is that United States is trying to say that

8    Mr. Urquizo is part of a conspiracy that includes Mr.

9    Baca.  And Mr. Urquizo is telling Agent Acee:  I'm

10   not part of Mr. Baca's branch, for the sake of

11   argument here.  Mr. Urquizo is saying, Look, we don't

12   follow Mr. Baca, we don't follow his directives.  So

13   if one doesn't follow one's directives, I find it a

14   bit difficult to say:  I conspired with you, if we

15   don't agree on anything.

16          THE COURT:  But isn't here, there was an

17   assault carried out?

18          MR. LOWRY:  Apparently so.  It's on video,

19   Your Honor.

20          THE COURT:  So --

21          MR. LOWRY:  The question would be why was

22   that assault carried out?  And I think the Government

23   just stated it quite clearly.  The assault is carried

24   out because Mr. Romero slept with Mr. Archuleta

25   (sic), who is a Government witness.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5435

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 239

```
 1              THE COURT:  So you're arguing that the
 2    Government has not proven that there is a conspiracy
 3    that includes Mr. Baca?
 4              MR. LOWRY:  Correct.  And I would submit
 5    that the Government has tendered evidence from the
 6    cooperating witnesses that Mr. Baca is allegedly
 7    involved.  And again, that's why I'm asking the Court
 8    to consider as part of analysis where the witnesses
 9    may have had some motivation to implicate others,
10    when that may not, in fact, have been true.
11              I mean, the fact of the matter is -- what
12    I'm hearing the Court suggest is Mr. Baca was the
13    leader; Mr. Baca ordered this; Mr. Baca ordered that.
14    And if Mr. Baca -- what we've suggested to the Court
15    since this case began -- if Mr. Baca was so clearly
16    the leader of the SNM, you know, he's put in Level 6
17    repeatedly by individuals.  And we suspect, and the
18    Government hasn't confirmed this yet because we're
19    still working on identifying confidential human
20    sources within STIU, that those individuals placed
21    Mr. Baca in Level 6 because the organization
22    allegedly abandoned him as the leader.
23              THE COURT:  All right.  So that's the
24    element you're attacking there?
25              MR. LOWRY:  Yes, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Case 2:15-cr-04268-JB   Document 1610   Filed 01/05/18   Page 240 of 272
Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240

240

 1              THE COURT:  All right.  Anything else on

 2    this one, Mr. Lowry?

 3              MR. LOWRY:  No, Your Honor.

 4              THE COURT:  Thank you, Mr. Lowry.  Do you

 5    want to respond on this one, Mr. Castellano?

 6              MR. CASTELLANO:  Yes, Your Honor.

 7              If the Court is looking to other evidence,

 8    I'm going back to Rudy Perez' -- one of his

 9    statements, which is DeLeon, 20540.  This is one of

10    the statements where Mr. Perez claims to have heard

11    directly from Mr. Baca.  "I heard 'Pup' say they have

12    to answer for that no matter how close I am to them.

13    They have to be account."  And this has to do with

14    them not following through with the hit.

15              So there are times when people don't obey

16    orders.  But at some point Mr. Baca has told Mr.

17    Perez that there will be repercussions for those

18    people.  But certainly those people can disobey, but

19    it doesn't mean there will not be consequences.  So

20    there is indication that people obey orders, and

21    sometimes they don't, and there will be

22    repercussions.

23              The other thing in terms of corroboration,

24    is that the assault itself is corroboration, because

25    Mr. Romero was, in fact, assaulted, but not stabbed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5437

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

```
 1    or killed.  And in the transcript that Mr. Lowry
 2    showed the Court, there is no indication that
 3    Mr. Gomez, Jonathan Gomez -- he didn't say that it
 4    didn't happen.  He said he danced around it.  And so
 5    he didn't quite -- the answer to that question was
 6    not no.  He just didn't really want to answer that
 7    question.  So the evidence we have is that Mr. Baca
 8    did approve it; that the approval came through
 9    Mr. Gomez, and ultimately through him and Mr. Urquizo
10    for the assault to occur.
11              I don't have anything further on that
12    unless the Court has questions.
13              THE COURT:  All right.  I don't believe I
14    do.
15              I think specifically as to Romero, I'm
16    going to find that there is, by a preponderance of
17    the evidence, evidence that a conspiracy existed.  I
18    don't think that there is much dispute on that.  The
19    question is whether or not Mr. Baca was a part of it,
20    being a declarant.
21              And I think finding by a preponderance of
22    the evidence there is evidence that -- quite a bit
23    that we've heard and I've read -- that he is the
24    leader, or at least at one time was acknowledged as
25    the leader of the SNM Gang; that his orders were sent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5438

1    down and carried out.  There may be times when he

2    didn't, when they weren't carried out.  But I don't

3    think that that's the element of the hearsay

4    exception.  And I do think this was in furtherance of

5    the conspiracy, how it would be taken care of,

6    limitations on it.  I think those were part.  So I do

7    think these statements in the Romero box, the

8    conspiracy, do satisfy the hearsay exception.  And so

9    I will admit them.

10          Let me now say for all four conspiracies --

11   because I do want to take what Ms. Sirignano said

12   seriously -- for all four conspiracies I am finding

13   that the statements that have been identified in the

14   four conspiracies by the Government do come within

15   the hearsay exception.  I do think that they -- the

16   Government has established the four conspiracies.  I

17   think they have satisfied the members of it and the

18   declarants are members of that conspiracy, and that

19   the statements were made in furtherance of the

20   conspiracy.

21          We have, this afternoon, identified a few

22   statements that either lacked dates and specificity,

23   that I will not rely on the hearsay exception for

24   co-conspirators.  And for those that we identified

25   this afternoon, I will be relying upon either present

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5439

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 243

1    sense for Mr. Molina's stabbing, or statements

2    against interests, or the person is testifying, the

3    first declarant is testifying.  But I will not be for

4    those that we identified and found alternatives for.

5    Those will be coming in, but they'll be coming a

6    different way.

7            With one caveat -- and I now want to ask

8    the Government to help me because this was some stuff

9    we covered this summer, and I want to make sure that

10   I have a firm basis for what I've just said as far as

11   the statement against interests.  Let me -- Mr.

12   Castellano, take again the Mr. Perez and Mr. Cordova

13   statements.  I'm not concerned about a Bruton

14   problem, I'm not concerned about particularly a

15   Smalls or testimonial or Crawford issue, so I'm

16   putting those aside.  But I'll come back and

17   reference them.  But that's not my concern.  But take

18   Mr. Perez, for example, his statements to Cordova.

19   I've said that the statements that are being made in

20   Mr. Perez' statements are -- come within the

21   co-conspirator exception with some statements we

22   identified this afternoon that we'll not be relying

23   on.  But all the others I will rely on.  But I want

24   to go back to Mr. Perez' statements.  You and I, in

25   our discussions earlier -- and no defendant disputed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5440

```
 1    this -- we were relying upon the fact that Mr. Perez
 2    was a party opponent.  I think Smalls deals with the
 3    Crawford-Bruton problem, so there is no
 4    constitutional problems.  But I'm looking for the
 5    hearsay exception that gets the statements of Mr.
 6    Perez on the tape to be used against other people.
 7    And here's what I'm concerned about:  "An opposing
 8    party's statement, the statement is offered against
 9    an opposing party and was made by that party," it
10    looks like the statement is only excluded from the
11    hearsay definition.  So the definition part, when
12    it's used against the party that made the
13    statement -- so presumably, the United States will
14    want to use the Perez recording against Mr. Perez,
15    which I think is quite all right.  But what do I do,
16    then, to find either it being a nonhearsay statement,
17    or a non -- or a hearsay exception to cover it being
18    used against other people?  And again, I'm putting
19    aside the Bruton problem.  Because I do think Smalls
20    solves it.  And I'll give you my solution there.
21           If, in fact, the Tenth Circuit didn't have
22    a Bruton problem or Crawford problem or a testimonial
23    problem with an 803 exception for a nonavailable
24    witness, then it would seem to me that they would
25    have even less of a problem with something that is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5441

```
 1    classified as nonhearsay.  But it is only nonhearsay

 2    against Mr. Perez.  It seems to me that something has

 3    to be done to make it nonhearsay against others, or

 4    is this a situation where we have to give a limiting

 5    instruction?  Again, it's not a Bruton problem or

 6    Crawford problem or testimonial problem to say that

 7    the jury cannot consider the statements of Mr. Perez

 8    against any other party.

 9              And if that's the case, it's not really my

10    problem.  But it begins to be an evidentiary problem

11    for you, if I'm telling them that Mr. Perez'

12    statements, which is the first cut, can't be used

13    against anybody else, so they can only listen to it

14    in connection with Mr. Perez.

15              Thoughts on that?  Have I analyzed the

16    hearsay problem correctly?

17              MR. CASTELLANO:  I think possibly,

18    depending on where we end up with this, Your Honor --

19    I'm trying to look for examples here in the

20    transcript -- so, in other words, if Mr. Perez says

21    someone else told me something in this statement, we

22    want to figure out how that could be used against

23    that person or the other defendants?

24              THE COURT:  No, I guess I'm thinking that

25    what -- and help me here -- but when the tape is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5442

 1   played about -- that Mr. Perez said to Mr. Cordova,

 2   do I need to turn to the jury and say, "You cannot

 3   consider this evidence against any other defendant,

 4   because it's nonhearsay as to Mr. Perez," but I am

 5   not thinking of a nonhearsay exception for Mr. Perez'

 6   statement to be used against anyone else.  And,

 7   again, it's not a Bruton problem.  They could be

 8   tried together, everybody could be tried together,

 9   which was where this first bubbled up, was in the

10   severance motions.  But at least in instructing the

11   jury, how does the jury use anything that Mr. Perez

12   says against Mr. Baca?

13            MR. CASTELLANO:  To be sure I'm

14   understanding you -- and I'll probably ask the

15   questions of my colleagues here in a second -- but

16   just to make sure I'm understanding the Court.  In

17   other words, if it doesn't fall under Smalls, or it

18   doesn't fall under a co-conspirator statement, we

19   just have other statements throughout the transcript,

20   then how can we use those against the other

21   defendants in the courtroom; is that correct, if

22   they're not otherwise categorized by some other rule?

23            THE COURT:  Well, let me put it in my

24   words.  I'm not trying to avoid your question.  But

25   let me put it in my words.  Here's what 801 says --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5443

```
 1   it says:  "Definitions."  So statements that are not
 2   hearsay, "An opposing party's statement, the
 3   statement is offered against an opposing party, and,
 4   A, was made by the party."
 5        So you and I in our analysis, we were
 6   putting Perez aside.  We're saying, Okay, it's coming
 7   in.  It is coming in.  But it's coming in against Mr.
 8   Perez.  How does his out-of-court statements being
 9   offered for the truth of the matter come in against
10   any other defendant?  Again, it's not a Bruton
11   problem, Crawford problem, testimonial.  I think
12   Smalls takes care of that, which is the issue that we
13   were discussing at the severance.  I think the
14   defendants had raised there were Bruton problems, and
15   I dealt with those.  But then, how does Perez'
16   statements, how are they used against Mr. Baca or any
17   of the other four defendants?
18        MS. FOX-YOUNG:  Your Honor --
19        THE COURT:  Let them think a little bit.  I
20   can probably guess what y'all are thinking.  But let
21   me let them think just a second.
22        MS. FOX-YOUNG:  I thought the Court might
23   want me to comment on the Bruton issue.  Because I
24   don't think it is resolved.  And I thought maybe
25   while they were talking, we could talk about it.  But
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5444

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 248 5445

```
 1    I'll wait, Your Honor.
 2              THE COURT:  Let's do.
 3              MR. CASTELLANO:  The best shortest answer I
 4    can give to the Court right now, in terms of whether
 5    it comes in for the truth, would be -- still be under
 6    a statement against interests because the statements
 7    that Mr. Perez makes, even if he's repeating other
 8    people's statements, or adopting those statements, is
 9    still against his interests, because he's still
10    discussing the enterprise.
11              THE COURT:  Okay.  And this is where we
12    come back to what I was saying -- this is the
13    question I've tried to ask earlier, and then
14    abandoned it, and now I'm coming back to it.  Because
15    you remember I started asking you:  Do I need to fit
16    Mr. Perez' statement in to the statement against
17    interests?  And I said, No, I don't because he's the
18    party opponent.  So it fits there.
19              But I think I now need to come back to
20    that.  If you're relying upon a statement against
21    interests -- this is what I was talking about -- do I
22    need to take into consideration his testimony?  I
23    know it was offered in the suppression portion of the
24    hearings that we've had.  But here's what 804(3)(a)
25    says, "A reasonable person in the declarant's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5445

1  position would have made" -- it's "a statement that a

2  reasonable person in the declarant's position would

3  have made only if the person believed it to be true."

4          He has testified that everything he was

5  saying was a lie, or pretty much; not all of it, but

6  some of it.  So -- and I guess the thing I'm pausing

7  on, it does seem to me that, even though I have said

8  I do not think his testimony was coherent or

9  credible, nonetheless, a reasonable person in Mr.

10  Perez' position could think that spreading lies about

11  himself was a good idea to protect himself from being

12  labeled as a snitch, and then suffering the fate of

13  something like Mr. Molina.

14          So I'm wondering is it going to fit that

15  exception, because either the Government's theory and

16  the defendant's theory, would they both be what a

17  reasonable person in Mr. Molina's shoes could have

18  done?  And if so, then, it's only if the person

19  believed it to be true.

20          MR. CASTELLANO:  Well, if we set aside Mr.

21  Perez' testimony for a second, if we look at the

22  statements themselves, there is actually not an

23  indication here that he's lying.  In some places he's

24  defending his honor, and he's saying, basically,

25  Don't worry about it.  I talked to "Pup."  "Pup" said

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5446

```
 1   I'm okay.  Other people who questioned him about it,
 2   he said he put him in check.
 3             So I'm looking first at page 20536 of
 4   DeLeon.  And then, in 20535, there is a discussion
 5   here in the middle of the page.  He told somebody, "I
 6   heard you're saying this and that, so I fucking
 7   checked the trigger."  So I'm not sure there is an
 8   indication, from reading the transcript itself, that
 9   Mr. Perez was lying about any of this.  What he was
10   saying was --
11             THE COURT:  I'm not saying the transcript
12   of his testimony in the suppression hearing.
13             MR. CASTELLANO:  I mean, we have to do
14   something about this statement.  I mean, if the Court
15   doesn't credit his testimony, the Court doesn't have
16   to credit the part where he says, I lied to Mr.
17   Cordova about all these things.  And so I think
18   that's --
19             THE COURT:  I agree with you that I don't
20   have to credit it.  But I do have to make an
21   objective determination as to whether a reasonable
22   person in the declarant's position would have made
23   the statements that he made to Mr. Cordova only if
24   the person believed it to be true.
25             MR. CASTELLANO:  Right.  So looking at the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5447

```
 1    transcript, a reasonable person would not have
 2    admitted to criminal liability unless it were true.
 3    So, in the transcript, Mr. Perez admits that he gave
 4    pieces of his walker to be served as shanks.  He also
 5    names the other people who were co-conspirators in
 6    this case.  And he's saying that to another person he
 7    believes is an active SNM member.  So it wouldn't
 8    make sense for him to lie about other people who are
 9    involved in the murder with him.  A reasonable
10    person, under those circumstances, would not have
11    said that, would not have implicated other people in
12    the murder, if that weren't true.  And that is all
13    against his interests.
14            THE COURT:  Well, look at it.  And help me
15    with the statement against interests.  If that's
16    going to be the hearsay exception, if you're in
17    agreement with me -- if you're in agreement with me,
18    remember in Smalls, we only had one level of hearsay.
19    It was a jailhouse recording.  So you're just -- you
20    know, you got Baca talking to Cordova, rather than
21    Perez talking to Cordova and talking about what Mr.
22    Baca said.
23            So you do have a little -- not a little,
24    it's an exception -- that's what's creating the whole
25    issue here.  Smalls had only one level of hearsay, a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5448

 1   jailhouse recording of a declarant confession to a

 2   confidential informant.  So it's like Baca talking to

 3   Cordova.  And at least some of Mr. Perez' statements

 4   have two levels of hearsay.  And I guess the one

 5   we're focusing on here:  Mr. Baca told me X, Y, and

 6   Z.  And of course, Rule 805 is going to require me to

 7   find an exception or an exclusion for each hearsay

 8   level.  We've been focusing on the second level, the

 9   level within the recording.  But I'm thinking that

10   that works as against Mr. Perez.  But it may not work

11   against anyone else, which is not so much a problem

12   for me, but it's a problem for you.

13            MR. CASTELLANO:  On page 20541, there is an

14   indication that Mr. Perez admits to membership in the

15   SNM.  He says:  Because once that happens, once

16   you're validated, you get done dirty all the way

17   around the board.  In other words, things get pretty

18   rough for you once you're validated.  You get locked

19   down and things of that nature.

20            THE COURT:  Let's do this:  I need to give

21   Ms. Bean another break.  Take a look at -- if you're

22   going to rely on -- to get Mr. Perez' statements on

23   the tape against the other four defendants, see if

24   you can find anything, and we'll start looking at it,

25   too, as to what this statement in 804(3)(a) means:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5449

```
 1    "A reasonable person in the declarant's position

 2    would have made a statement that a reasonable person

 3    in the declarant's position would have made only if

 4    the person believed it to be true."  That's what I'm

 5    pausing on.  So if that's going to be the exception

 6    you relied on -- and I'm not surprised; that was the

 7    one that I was studying, and that was the portion

 8    that I wondered if the Government had a way of

 9    establishing that.  So let's take a break for about

10    15 minutes, and then we'll come back in and resume

11    this argument.

12            I haven't forgotten your question, Ms.

13    Fox-Young, or your statement.

14            (The Court stood in recess.)

15            THE COURT:  All right.  We'll go back on

16    the record.  I think every defendant has an attorney.

17    If you'll look around and make sure that your

18    co-defendant, each person has an attorney.

19            Let me do one thing ministerial before I

20    begin.  I have sent Fed Ex packages back to

21    Albuquerque -- not today, but yesterday.  They did

22    receive them.  So again, just the status of vouchers

23    for the CJA lawyers, they had everything today that I

24    was able to get sent on Sunday, and then sent

25    yesterday.  Then I got the package yesterday.  They
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5450

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254

```
 1    received packages regularly.  I think one day Fed Ex
 2    had some delivery problems in the area.  But they
 3    have them all as of today.  I did receive a Fed Ex
 4    package today, and I'll be taking it back tonight.
 5    And I have got some vouchers done.  There was some
 6    vouchers in there.  So if you're wondering where
 7    things stand, I did receive a packet today.  It does
 8    have some CJA vouchers.  I have signed many of them.
 9    I'll be taking them back.  I don't know whether I'll
10    get the others done tonight or not.  But that's where
11    we are.  I did understand that Mr. Burke and Mr.
12    Castle didn't submit vouchers for today's hearing, so
13    you might talk to them about it.  It seems to me that
14    that's probably something that can be remedied.  They
15    can either just ask for it --
16             MR. COOPER:  Or eat it.
17             THE COURT:  I'm not suggesting eat it.  But
18    wondering since like for today I signed Mr. Lowry's
19    stuff for this week, the vouchers.  I don't know if
20    it has to be precise, if something comes up.  You can
21    get those to us.
22             MR. COOPER:  Thank you, Judge, for working
23    on our vouchers.
24             THE COURT:  So tell Mr. Burke and Mr.
25    Castle to talk to Ms. Waters.  I think that that can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5451

1    be -- you know, if all of a sudden, you have an extra

2    day in Las Cruces, even if they didn't expect it, for

3    whatever reason, then talk to them about it.  I think

4    it can be worked out so they can stay.  I don't have

5    the answer off the top of my head.  But tell them

6    that.

7              MS. HARBOUR-VALDEZ:  We will, Your Honor.

8    Thank you.

9              THE COURT:  All right.  Mr. Castellano, we

10   were talking about 804(3)(a), and that was the

11   hearsay exception; you were using Mr. Perez'

12   statements to Mr. Cordova to find a hearsay

13   exception.  Any further thoughts you have on that?

14             MR. CASTELLANO:  I think I had three

15   thoughts over the break.  And I don't think I had any

16   other thoughts after that.  But so these are the

17   three thoughts.  One is we talked about fear and

18   things of that nature.  Mr. Perez testified he was

19   not intimidated in any way by Mr. Cordova.  So I

20   think some of the fear factors that might come in

21   here in the statements, in terms of why he might be

22   worried, why he might lie.  One, in the transcripts

23   themselves, he indicates no fear of anyone.  And also

24   indicates that Mr. Baca told him that he was fine.

25   Then, in court, he told the Court he was not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5452

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 256

```
 1   intimidated in any way.  So I think in terms of
 2   having any type of motive to lie based on fear, it's
 3   completely gone.
 4           The second is that --
 5           THE COURT:  I know he didn't have any fear
 6   about Mr. Cordova.  But I thought what he testified
 7   on the stand was he spread lies because he didn't
 8   want to suffer the same fate as Mr. Molina himself.
 9           MR. CASTELLANO:  What he said was he wanted
10   to find a way to use Mr. Cordova as a conduit to,
11   once again, tell other people that there wasn't a
12   problem.
13           THE COURT:  Correct.  But he used lies, in
14   in his words, to do that.  And I guess that's my
15   question, is that is a reasonable person in Mr.
16   Perez' position, could he have done that?
17           MR. CASTELLANO:  Well, Your Honor, I only
18   had three thoughts on the break.  That's a fourth
19   thought.  And so Mr. Beck is actually going to handle
20   the reasonable person argument.
21           THE COURT:  Okay.
22           MR. CASTELLANO:  And I think you'll have an
23   answer for the Court here in a little bit.
24           THE COURT:  Okay.
25           MR. CASTELLANO:  Usually, when I walk up
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5453

```
 1   here, I have a stack of papers, and refer to this as
 2   one statement.  But what we really need to think
 3   about, this is multiple statements over multiple
 4   days.  So Exhibit 16 is one.  And then we have 31A,
 5   32A, 33A, all the way through 37A.  Now, admittedly,
 6   37A is not even one page of transcript.
 7            But in terms of Mr. Perez' statement, it's
 8   actually statements over days.  And so, if we're
 9   talking about him making these statements, he has had
10   time between recordings to think about these things.
11   But he's been fairly consistent throughout the
12   statements.  So I think that also says something
13   about these statements.  And 804, the statement
14   against interests, the second paragraph also talks
15   about sufficient corroboration in the statements.
16   And that's found, once again, throughout the
17   statements themselves.  So we're not just talking
18   about one statement.  We're talking about multiple
19   statements against interests.
20            And the last thought I had was that -- I
21   pointed out before the break, and Mr. Perez admitted
22   to being a member of the enterprise.  So that itself
23   is against his own interests, because the enterprise
24   indeed is in racketeering activity.  It would be hard
25   pressed to find a member of the enterprise who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5454

```
 1    couldn't be convicted of a racketeering conspiracy,

 2    or having an agreement that somebody would commit

 3    racketeering acts.

 4            So, if you look at the statement

 5    separately, that tells you something.  If you look at

 6    each one or all of them in a whole, it all talks

 7    about the enterprise, membership in the enterprise,

 8    and he's talking about family business.  And those

 9    things are all generally going to be against his

10    penal interests to be discussing.  So I think all of

11    those would, therefore, weigh in favor of admitting

12    them as statements against interests.

13            And if you have any more questions, I think

14    Mr. Beck -- go ahead.

15            THE COURT:  Yeah.  I'm not hung -- I agree

16    with you on the -- once he admits to the SNM, that

17    he's a member of the SNM Gang, I think that probably

18    is enough to be against his interests.  But the part

19    I'm hung up on is not that what he was saying was so

20    contrary to the declarant's interest, but that first

21    portion, because I have to give content to it, that

22    "a reasonable person in the declarant's position

23    would have made only if the person believed it to be

24    true."  And so I guess I'm wondering, does that

25    require me to make a finding that he believed what he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    was saying to be true, or does it simply require that
 2    a reasonable person in the declarant's position would
 3    have made it only if the person believed it to be
 4    true, which suggests to me that it's an objective
 5    standard, not a subjective one, that I bring to the
 6    analysis.
 7              And then, it seems to me -- I'm not trying
 8    to make the argument for him -- but the argument
 9    would be that a reasonable person in Mr. Perez'
10    position would have made these statements only if he
11    believed it was true.  A reasonable person in his
12    position could have made those statements thinking
13    they were false, that he was purposely spreading a
14    lie.
15              So I guess that maybe I'm sort of beginning
16    to answer my own question, or at least phrase it
17    better.  Can a person tell a lie that is a perfectly
18    reasonable lie, and if it's a perfectly reasonable
19    lie, can an opponent use that, use the 804(3)(a)
20    exception?  Maybe that's the legal issue to decide.
21              MR. BECK:  I think that's probably where he
22    was going to pass the baton to me, Your Honor.
23              THE COURT:  Anything else, Mr. Castellano?
24              MR. CASTELLANO:  No, Your Honor.  I'll just
25    emphasize that these are multiple statements over
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5456

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 260 of 457

1   multiple days.  So if he repeated those things over

2   multiple days, I think that tells us something as

3   well.

4          THE COURT:  If it's a subjective standard.

5   If it's only an objective one, then I don't know.

6          MR. CASTELLANO:  I think we're in better

7   shape if it's an objective standard, which I think it

8   will be.  And if it's subjective -- the only time his

9   interest changed is when he came into court and then

10  told the Court that he lied.  But he was in a

11  different position when he was testifying than he was

12  when he made the statements.

13         THE COURT:  All right.  Thank you, Mr.

14  Castellano.

15         Mr. Beck.

16         MR. BECK:  I think what Mr. Castellano just

17  said is correct.  If the Court looks to the Supreme

18  Court's decision in Williamson -- United States

19  against Williamson -- well, Williamson against the

20  United States, 512 U.S. 594, a 1994 Supreme Court

21  decision, a good explanation is provided in United

22  States against McVeigh, a district court opinion from

23  1996, which is found at 940 F.Supp.; starts on page

24  1541.  It's an objective inquiry into what a

25  reasonable person in the declarant's position would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   have been, with the qualification provided there.
 2              And that's the language in the rule that
 3   says "because, when made, it was so contrary to the
 4   declarant's proprietary or pecuniary interests, or
 5   had so great a tendency to invalidate declarants'
 6   claim against someone else, or to expose the
 7   declarant to civil or criminal liability."  So the
 8   inquiry here is whether it's against the declarant's
 9   interests at the time the declarant made the
10   statement in the legal posture of the case.
11              And so, if you're looking at what would be
12   like a civil PI claim, that would be -- it would
13   invalidate the declarant's claim against someone.
14   Here, when we're talking about a defendant on trial
15   and giving a statement in prison, it would be against
16   the declarant's interests in that trial, on trial for
17   prison.
18              And if you look at the case law, it really
19   comes out of testimonial statements implicating
20   co-defendants.  And you look very closely at the
21   statements to decide whether these testimonial
22   statements given usually post-Miranda in a briefing
23   room, are not against their interests because they
24   implicate other persons.
25              So here, in the context of an in-prison
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5458

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 262 of 262459

```
 1    conversation between two prisoners, the context of

 2    this conversation in which Mr. Perez is implicating

 3    himself, both as a member of the SNM, and as a

 4    willing participant in the Molina murder, and

 5    explaining how others willingly participated in the

 6    Molina murder, in which he was a co-conspirator,

 7    those statements come in as against his interests

 8    because they implicate him with criminal liability in

 9    a criminal proceeding.

10            THE COURT:  Well, like I said to Mr.

11    Castellano, I'm not so concerned about whether the

12    statements he's making are contrary to his penal

13    interests.  So I'm not needing that.  What I am

14    concerned about is whether Mr. Perez -- I mean, just

15    listen to it.  I mean, I can understand why a person

16    in prison would spread lies that are not in his penal

17    interests, why he would spread lies to keep from

18    being -- suffering the fate of Mr. Molina.

19            MR. BECK:  Sure.

20            THE COURT:  So if that's the case, if

21    you're looking at evidence that way --

22            MR. BECK:  What I'm trying to say is that's

23    not the way we're looking at evidence under 803.  If

24    it was, I think it would still be okay because of

25    testimony that's been given about what happens when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5459

```
1    you tell false things about what you did in the SNM.
2             But, regardless, it's not.  That's not the
3    inquiry.  The inquiry is whether a reasonable person
4    in prison, involved in the Molina homicide, would
5    make these statements inculpating him in that Molina
6    homicide.  And so that's the inquiry.
7             What his subjective intent was, or what
8    someone in his position, where he may be in trouble
9    from other people in the same -- that's not the
10   inquiry.  So the inquiry here is whether a defendant
11   in prison, involved in a murder conspiracy, making
12   statements to other people in the prison would make
13   these inculpatory statements.
14            THE COURT:  All right.  Well, give it some
15   thought.  I'm not quite convinced tonight that there
16   is a path by which this evidence should come in
17   against the other four.  It's a new problem.  It's
18   something that arose as we tried to figure out the
19   levels of hearsay under 805.  I can't just analyze
20   one level.  I have to look at all levels.  So give it
21   some thought.  And if you've got something you want
22   to put in writing to help me with it, you can.
23            I think we've dealt with the statements
24   within Mr. Perez' statements.  But I think we need to
25   pull back and look at Perez' statements themselves
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5460

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 264

```
 1    being used against others.
 2            MR. BECK:  I think those two cases -- and I
 3    think reading the language closely in 804(3), and
 4    looking at the qualifiers that start with that
 5    "because" language, I think will help shed light on
 6    the inquiry, and why these statements are admissible.
 7            THE COURT:  Okay.  I'm leaving here with a
 8    question mark.  So y'all are going to have to help me
 9    out.  And it's not so much an evidentiary problem,
10    because it's going to come into the case.  But I do
11    think that, right at the moment, I'm wondering why
12    I'm not turning to the jury and say, Ignore this
13    evidence against Mr. Baca in the other four.
14            All right.  Let me -- before I hear from
15    you, Ms. Fox-Young, let me make some prefatory
16    comments.  I think, before you came into the case --
17    when did you come in the case?
18            MS. FOX-YOUNG:  I think in the late -- the
19    early winter, about a year ago.
20            THE COURT:  I recall -- and someone will
21    have to refresh my memory -- maybe what I'm about to
22    say is of no use to me or anybody else.  But I recall
23    up in Albuquerque, in the Rio Grande courtroom, that
24    we had an extensive conversation -- I think it was
25    with Mr. Castle.  I think it was Mr. Castle that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5461

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 265

 1   really took on the Smalls problem.  And he had to

 2   admit that he didn't like it; none of the defendants

 3   liked it, but it said what it said.

 4          And so we did agree, just as we've sort of

 5   done here, that there may be some residual Bruton

 6   problems.  At the time that I made the severance

 7   decision -- that was where it was coming up, because

 8   the defendants were making the argument that the

 9   severance issues, that I should sever the case more

10   severely or more -- into more parts than I did

11   because of the Bruton problem.  But at the time, the

12   defendants were only able to identify a certain

13   handful of statements.

14          So if you go back and read my large

15   severance opinion, what I attempted to do -- and I

16   hope I did, is that every statement that the

17   defendant -- I remember pushing myself every

18   statement that the defendant said was a Bruton

19   problem, I tried to do a Bruton analysis.  And my

20   memory is that for most of the statements I said it's

21   not a problem, but I did identify like one, I think,

22   that still survived as a Bruton problem, and Smalls

23   didn't say that.  So I guess, in my mind, even though

24   it was not really a Bruton motion, it was a severance

25   motion, I pushed myself hard.  And the parties I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    think did with what discovery they had at the time,
 2    did feel like probably it was right; that -- I
 3    remember Mr. Castle -- maybe it was Mr. Adams, I
 4    don't know -- it was one of the counsel from out of
 5    state that spent a lot of time -- we talked about it
 6    and came up with the parameters here.
 7             So I say that before I hear what you have
 8    to say.  But I'm still thinking that the Bruton
 9    problems may be not the issue here, but just the
10    hearsay problems.
11             MS. FOX-YOUNG:  Your Honor, I've read that
12    opinion, and I'm not going to take it up right now
13    and make a record on Bruton.
14             But I think Ms. Jacks wanted to respond
15    directly to the discussion that the Court has just
16    had with the Government with respect to Mr. Perez'
17    statements with Mr. Cordova.
18             I have some other issues I'd like to raise
19    both on the James statements, and then there is
20    another pleading that the Court took up.  But not
21    today.  I don't think we're going to --
22             THE COURT:  I guess I'd like to hear what
23    you wanted to say, just so I can be thinking about
24    it.  Go ahead and say what you want to say on the
25    Bruton issue, or what -- I think you said the Smalls
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5463

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267

267

 1   issue; maybe you said Bruton issue, but you didn't

 2   think Smalls solved it.  Go ahead and tell me what's

 3   on your mind so I can be thinking about it.

 4            MS. FOX-YOUNG:  Well, your Honor, I've gone

 5   back and looked at your opinion.  And I think, when

 6   we take up Document 1514, which was our motion in

 7   limine on some specific statements of cooperating

 8   witnesses that the Court raised it.  And I said I

 9   think we want to take this up at the end of the James

10   hearing.  I would like to distinguish Smalls.  But I

11   understand we have an issue with statements not being

12   found to be testimonial.  And I don't need to make a

13   record on that now.  I think the Court has labored on

14   this issue, and given us a lot of guidance.  I know

15   what the Tenth Circuit law is.

16            But I don't want to detract from, I think,

17   the argument which may be brief, for the record, that

18   Ms. Jacks wanted to make.

19            THE COURT:  Well, I'm not interested in

20   argument.  I'm trying to think of issues that I need

21   to be thinking over the next few days.  So tell me

22   what the Bruton and Smalls issues are, so I can be

23   thinking of them.  This is for my benefit, not for

24   your benefit now.

25            MS. FOX-YOUNG:  Your Honor, briefed in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5464

```
1    Document 1514 are some objections that Mr. Perez has
2    to statements made -- and I can pull them up from the
3    transcript.  But they're identified in that document.
4    There are statements made by -- that we believe
5    Timothy Martinez will testify to, that Defendant
6    Daniel Sanchez made, that Sanchez had obtained shanks
7    from Mr. Perez, and that Sanchez referred to him as
8    "Fat Ass," and said, "What else is 'Fat Ass' going to
9    do?"
10           There are also statements from Defendant
11   Jerry Montoya, who we expect to testify that Mario
12   Rodriguez provided him a shank to use to kill Molina.
13   And the testimony at the James hearing was that he,
14   in some way, volunteered that the shank came from
15   Mr. Perez --
16           THE COURT:  Why don't you just, instead of
17   giving me a whole bunch of statements, take one
18   statement and tell me what the Bruton problem is, or
19   the Smalls problem you're concerned about.
20           MS. FOX-YOUNG:  Well, I think those
21   statements should not come in as co-conspirator
22   statements, so I'd want to first address that.  And
23   the reason is I don't think that -- where the --
24   first of all, I think there is a timing problem that
25   the Government has.  The Government did not prove up,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 269466

```
 1    in the course of the James hearing, when those

 2    statements were made so far as I can tell.  And so,

 3    if defendants are making statements about where

 4    shanks came from -- and that's well after the fact,

 5    we think it is -- that's simply not in furtherance.

 6              So, back to the Court's earlier inquiry and

 7    request that the defense identify any statements that

 8    we take issue with coming in as co-conspirator

 9    statements, that would be my first argument.  So,

10    specifically, in Document 1514, we lay out two.  And

11    perhaps the Court could look at those.  The

12    transcript is from November 27.  And I think it's

13    page 164, where the Government says that Timothy

14    Martinez will testify that at some unknown time

15    Co-defendant Sanchez told him that Sanchez had

16    obtained shanks from Mr. Perez.  I see no

17    reference -- I don't think the Government tied up the

18    timing on that.  And I don't think it can be in

19    furtherance, if it's not clearly --

20              THE COURT:  Okay.  We'll come back and do

21    that.  But tell me what -- you stood up over here and

22    you said, "I don't think that solves the Bruton

23    problem."  I wanted to hear what you wanted to say at

24    that point.

25              MS. FOX-YOUNG:  I have nothing else to say
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    with respect to any Bruton problem on Mr. Perez'
 2    statements.  I've looked back at the Court's ruling.
 3    I understand how the Court thinks we get around that
 4    with Smalls.  And I think the Court's analysis on the
 5    hearsay question is on point.  So I don't have
 6    anything else to say on that.  But with respect to
 7    these statements, I think we do get into a Smalls
 8    issue, if the Court finds that they are
 9    co-conspirator statements, because we have a question
10    as to whether they are against interests.  And it's
11    the same analysis the Court's going through --
12            THE COURT:  Well, it's not going to help
13    you out any, because if it's Mr. Perez' statements,
14    the example we've used, then, it can be used against
15    him just as a party opponent.
16            MS. FOX-YOUNG:  Exactly.  I'm talking about
17    Mr. Sanchez' statements.  We have a series of other
18    statements where I think the Court needs to do a
19    Smalls analysis.  But I don't want to interrupt where
20    the Court is with respect to Mr. Perez' statements.
21    I understand that it's not our fight as to whether
22    they come in against the other defendants.
23            And I think Ms. Jacks had something else to
24    say about that.
25            THE COURT:  Sixty seconds, Ms. Jacks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5467

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 271

```
 1              MS. JACKS:  I do want to address this, just
 2    because, when the Court previously considered the
 3    arguments -- and I think they were really eloquently
 4    made by Mr. Chambers this summer about the Smalls
 5    issue.  There was not any sort of evidence about what
 6    type of statements, for example, Mr. Cordova -- what
 7    the Government was going to offer through Billy
 8    Cordova.
 9              I just took another look at Smalls, and I
10    just want to make the distinction between the facts
11    of that case and this case.
12              THE COURT:  I know.  I've looked at them.
13    Let's do this:  If y'all have something you want to
14    say, I told the Government they could comment on
15    this.  The defendants are welcome to do it, too.
16    Let's shut down for the evening.  I will see y'all on
17    January 8.  And I appreciate everybody's hard work in
18    the month of December, this week.
19              MS. SIRIGNANO:  Judge --
20              THE COURT:  And everybody be safe and have
21    a good holiday.  All right.  Y'all have a good break.
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on December 28, 2017.

15

16

17

18         _____
           Jennifer Bean, FAPR, RMR-RDR-CCR
19         Certified Realtime Reporter
           United States Court Reporter
20         NM CCR #94
           333 Lomas, Northwest
21         Albuquerque, New Mexico 87102
           Phone:   (505) 348-2283
22         Fax:     (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF NEW MEXICO

 3    UNITED STATES OF AMERICA,

 4         Plaintiff,

 5         VS.                        CR. NO. 15-4268 JB

 6    ANGEL DELEON, et al.,

 7         Defendants.

 8                          VOLUME 1

 9         Transcript of Motion to Suppress Proceedings and
      James Hearing before The Honorable James O. Browning,
10    United States District Judge, Las Cruces, Dona
      County, New Mexico, commencing on January 8, 2018.
11

12    For the Government:  Ms. Maria Armijo; Mr. Randy
      Castellano; Mr. Matthew Beck
13
      For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14    Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper; Mr.
      James Castle; Mr. Jeff Lahann; Mr. Orlando Mondragon;
15    Mr. John Granberg; Mr. Scott Davidson; Ms. Amy Jacks;
      Mr. Richard Jewkes; Ms. Amy Sirignano; Mr. Marc
16    Lowry; Ms. Theresa Duncan; Ms. Carey Bhalla; Mr.
      William Maynard; Mr. Donovan Roberts; Ms. Lisa
17    Torraco; Ms. Angela Arellanes; Mr. Jerry Walz

18
      For the Defendants (Via telephone):  Ms. Justine
19    Fox-Young; Ms. Margaret Strickland

20
      For the Witness Eric Duran:  Mr. Ken Del Valle
21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2471

```
 1              THE COURT:  All right.  Good morning
 2   everyone.  I appreciate everyone making themselves
 3   available to me this morning.  I appreciate y'all's
 4   patience this morning.  I'm running a little behind
 5   trying to get some other fires put out.
 6              I'm going to go ahead and call court and
 7   get entries of appearances since we haven't been
 8   together in a while.  So United States of America
 9   versus Angel DeLeon, Criminal Matter No. 15-4268 JB.
10              If counsel will enter their appearances for
11   the Government.
12              MS. ARMIJO:  Good morning, Your Honor.
13   Maria Armijo, Randy Castellano, and Matthew Beck on
14   behalf of the United States.
15              THE COURT:  Ms. Armijo, Mr. Castellano, Mr.
16   Beck, good morning to you.
17              And for Defendant Joe Lawrence Gallegos.
18              MR. BENJAMIN:  Good morning, Your Honor.
19   Brock Benjamin.
20              THE COURT:  Mr. Benjamin, good morning to
21   you.
22              And for Defendant Edward Troup?
23              MS. HARBOUR-VALDEZ:  Good morning, Your
24   Honor.  Cori Harbour-Valdez and Pat Burke for Edward
25   Troup.  And our paralegal, Raquel Rodriguez, is on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5471

 1    the phone.

 2            THE COURT:  All right.  Mr. Gallegos, I

 3    meant to say hello to you this morning as well.

 4            And Ms. Harbour-Valdez, Mr. Burke, Mr.

 5    Troup, good morning for you.

 6            THE DEFENDANT:  Good morning, Your Honor.

 7            THE COURT:  And then for Defendant Billy

 8    Garcia.

 9            MR. CASTLE:  Jim Castle and Bob Cooper on

10    behalf of Billy Garcia, who is present.

11            THE COURT:  All right.  Mr. Cooper, Mr.

12    Castle, Mr. Garcia, good morning to you.

13            THE DEFENDANT:  Good morning, Your Honor.

14            THE COURT:  And for Defendant Allen

15    Patterson.

16            MR. LAHANN:  Good morning, Your Honor.

17    Jeff Lahann on behalf of Mr. Patterson.

18            THE COURT:  Mr. Lahann, good morning to

19    you.  Mr. Patterson, good morning to you.

20            THE DEFENDANT:  Good morning, Your Honor.

21            THE COURT:  And for Mr. Christopher Chavez.

22            MR. MONDRAGON:  Good morning, Your Honor.

23    Orlando Mondragon and John Granberg on behalf of

24    Mr. Chavez.

25            THE COURT:  Mr. Mondragon, Mr. Granberg,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5472

```
 1    Mr. Chavez, good morning to you.

 2            And for Arturo Arnulfo Garcia.

 3            MR. DAVIDSON:  Good morning, Your Honor.

 4    Scott Davidson on behalf of Mr. Garcia.  Mr.

 5    Blackburn may be joining us later this week, but not

 6    for the next couple of days.

 7            THE COURT:  Mr. Davidson, Mr. Garcia, good

 8    morning to you.

 9            And for Daniel Sanchez.

10            MR. JEWKES:  Good morning, Your Honor.

11    Richard Jewkes, Amy Jacks, and Daniel Sanchez, who is

12    present before the Court.

13            THE COURT:  All right.  Mr. Jewkes,

14    Ms. Jacks, Mr. Sanchez, good morning to you.

15            And for Anthony Ray Baca?

16            MR. LOWRY:  Good morning, Your Honor.  Marc

17    Lowry and Theresa Duncan on behalf of Anthony Ray

18    Baca, who is present in the courtroom.

19            THE COURT:  Mr. Lowry, good morning to you.

20    Ms. Duncan, good morning to you.  Mr. Baca, good

21    morning to you.

22            THE DEFENDANT:  Good morning, Your Honor.

23            THE COURT:  And for Defendant Christopher

24    Garcia.

25            MS. SIRIGNANO:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5473

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5474

 1    Amy Sirignano and Cynthia Gilbert on behalf of

 2    Christopher Garcia.  Mr. Adams is in D.C. today.

 3    He'll be joining us tomorrow.

 4              THE COURT:  All right.  Ms. Sirignano,

 5    Ms. Gilbert, and Mr. Garcia, good morning to you.

 6              I hope it's warmer in D.C. than when I left

 7    there on Friday.  It was cold.

 8              For Carlos Herrera.

 9              MR. MAYNARD:  Good morning, Your Honor.

10    Bill Maynard and Carey Bhalla for Mr. Herrera.

11              THE COURT:  All right.  Mr. Maynard, Ms.

12    Bhalla, and Mr. Herrera, good morning to you.

13              And for Defendant Rudy Perez.

14              MR. VILLA:  Good morning, Your Honor.  Ryan

15    Villa on behalf of Mr. Perez, who is present.  Ms.

16    Fox-Young is joining us on the phone.

17              THE COURT:  All right.  Mr. Villa, Mr.

18    Perez, good morning to you.  And Ms. Fox-Young, are

19    you present?

20              MS. FOX-YOUNG:  Yes.  Good morning, Your

21    Honor.

22              THE COURT:  Good morning to you, Ms.

23    Fox-Young.

24              And for Defendant Andrew Gallegos.

25              MR. ROBERTS:  Good morning, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5474

1    Donovan Roberts and Lisa Torraco on behalf of Mr.

2    Andrew Gallegos.

3              THE COURT:  All right.  Mr. Roberts, Ms.

4    Torraco, good morning to you.  Mr. Gallegos, good

5    morning to you.

6              And for Defendant Shauna Gutierrez.

7              MS. ARELLANES:  Good morning, Your Honor.

8    Angelina Arellanes for Ms. Gutierrez, who appears in

9    person.

10             THE COURT:  All right.  Ms. Arellanes, Ms.

11   Gutierrez, good morning to you.

12             THE DEFENDANT:  Good morning.

13             THE COURT:  And for Defendant Brandy

14   Rodriguez.

15             MR. WALZ:  Good morning, Your Honor.  Jerry

16   Walz for Brandy Rodriguez, and she's present, Your

17   Honor.

18             THE COURT:  All right.  Mr. Walz, good

19   morning to you.  Ms. Rodriguez, good morning to you.

20             THE DEFENDANT:  Good morning.

21             THE COURT:  All right.  The first issue

22   that I think we need to address is going to be the

23   sealed third motion to withdraw as counsel and

24   motion -- well, let me just deal with it up here at

25   the bench.  Why don't I have Mr. Mondragon, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5475

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5476

1   Granberg, and Mr. Chavez come up here.  And it will

2   be a little bit of issue there for the -- and I

3   assume the Government has seen this -- don't have any

4   objections to this?

5            MS. ARMIJO:  No, Your Honor.  We are aware

6   of the circumstances.

7            THE COURT:  All right.

8   SEALED BENCH PROCEEDINGS WERE HELD - NOT TRANSCRIBED

9            (The following proceedings were held in

10  open court.)

11           THE COURT:  All right.  We're back in open

12  court.  Ms. Wild, on this next motion, is there any

13  problem in discussing it in open court?

14           THE CLERK:  No, sir.

15           THE COURT:  So, Ms. Sirignano, I think this

16  is your motion, and I'm not fully versed in it.  But

17  my understanding is that because of what the marshal

18  has told you, nobody has custody of the witness

19  you're subpoenaing.  So I think what Ms. Wild told me

20  when I left Albuquerque yesterday is that what she

21  anticipated was this motion being withdrawn today.

22  Am I accurate in where we are?

23           MS. SIRIGNANO:  Judge, I'm not entirely

24  sure.  I did get a call from Ms. Wild this morning.

25  I understand that Mr. Montoya is still in custody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5476

```
 1   because he has a federal detainer.  But he's out on
 2   some kind of bond from the State of Colorado, but
 3   pending Rule 5 proceedings, I think, up in Colorado
 4   to come into federal custody.  So I'm not entirely
 5   sure, Judge.
 6            THE COURT:  Well, do you want to hold off,
 7   then, on your motion till things clear up, to see
 8   whether this is the motion you need granted or you
 9   need another motion?  If he's not in state custody,
10   which is the way that I thought this was all drafted
11   up, was that it would writ him out of state custody
12   in here.  Am I wrong?
13            MS. SIRIGNANO:  No, Judge, you're not
14   wrong.  I just don't know where he is, honestly.
15   I've talked to Michael Keefe, his federal defender.
16   And I tried to get some information from the
17   Government.  I filed that as a placeholder to make
18   sure that he came this week.  So if I have to
19   withdraw that, I'm happy to do that.  I just need
20   some assurances from either the Marshal Service or
21   the Government that we'll have access to him either
22   this week or prior to trial, so we have him able to
23   testify before the 29th, Judge.
24            THE COURT:  All right.  Well, any thoughts
25   on what you can say about Mario Montoya?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5477

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9478

1          MS. ARMIJO:  Yes, Your Honor.  The last

2     email I had from Ms. Sirignano indicated that she was

3     perfectly aware of his whereabouts.  In fact, she

4     indicated that -- a slam to the Government, she was

5     aware of the circumstances of his arrest, or of his

6     custody status in an email to Mr. Keefe.  My

7     understanding is he is in state custody with a

8     federal detainer.

9          He had bonded out -- he tried to bond out

10    of his state charges, to make his way down here.  But

11    I think the parties were forgetting that he had to

12    deal with the Rule 5 issue.  So on Friday night, we

13    were looking into the Rule 5 issue.

14          THE COURT:  Educate me a little bit.

15          MS. ARMIJO:  He had to be initialed on his

16    federal warrant for pretrial release violation.  So

17    he's in state custody.  And he was bonding out.  He

18    wanted to bond out to come down here, because he

19    knows he's needed down here.  And so that was why he

20    was bonding out, to try and get here.  But he needs

21    to go before a Colorado judge.

22          Royce, who has moved with the U.S.

23    Marshal's Office up there, was going to assist us in

24    getting us to court quickly.  But the problem is, as

25    of late Friday, the bondsman had not finished the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   paperwork so he could be taken physically into
 2   federal custody, because he was still technically in
 3   state custody.  My understanding is that possibly
 4   over the weekend or this morning -- I don't have an
 5   update -- that bondsman is going to go through with
 6   the paperwork.  And I believe Royce is worked as
 7   quickly as he can to get him into federal custody,
 8   take him to a judge up here.
 9              Mr. Keefe, his attorney, knows the
10   situation.  We're hoping that he can convey over
11   there in Colorado to waive his identity hearing, at
12   which point the U.S. Marshal's Office and the FBI
13   will work quickly to get him here.
14              That being said, he can be here possibly
15   tomorrow, or Wednesday.  We just need more
16   information on what's happening up there.  And we
17   will try to work with that.  So he's kind of in
18   limbo.  He's not -- he's bonded out or trying to bond
19   out of state custody at this very moment.  I don't
20   know what the situation is.  And the federal detainer
21   will immediately go into effect.
22              THE COURT:  Well, is that enough of an
23   assurance to you?  It seems to me that maybe, rather
24   than me gumming up the works up in Colorado by
25   issuing an emergency writ right now, which then could
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5479

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 11

1   delay, or follow up him getting transferred to

2   federal custody, shall we just hold off a little bit

3   on this motion until we get some visibility of what's

4   going on up there?

5            MS. SIRIGNANO:  Absolutely, Judge.  The

6   only reason I filed that was a placeholder to get him

7   down here.  So if he's going to be in federal

8   custody.  And I know Royce Namoca.  I can give him a

9   call, too, and get a status from him.

10           THE COURT:  Why don't I just hold this?

11           MS. SIRIGNANO:  Yes, Your Honor.

12           THE COURT:  If things clear up, let me

13   know.  And I may ask you to withdraw this motion so

14   it clears our docket up.

15           MS. SIRIGNANO:  Sure, Judge.

16           THE COURT:  But we'll just keep it in place

17   at the present time.  Does that work for you?

18           MS. SIRIGNANO:  Yes, Judge.  Thank you.

19           THE COURT:  Thank you.  Ms. Wild, I know

20   this is going to be an impossible question to ask

21   you, but do you know where I put my materials on this

22   Eric Duran colloquy?  Do you know?

23           THE CLERK:  It should have been under tab

24   number 3.  Are they not there?

25           THE COURT:  Well, it's showing up just as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5480

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 12481

```
 1    an empty -- well, hold on.
 2              THE CLERK:  I can send it along pretty
 3    quickly if you need me to.
 4              THE COURT:  My memory was -- and correct me
 5    if I'm wrong -- you and I talked about a big stack of
 6    material.  I'm showing about an inch thick, maybe it
 7    was a little less.  And I'm just seeing a few pages
 8    here.  Did we decide that I wouldn't bring those
 9    here?
10              THE CLERK:  That's correct.  You should
11    have an outline and two waivers.
12              THE COURT:  And Ms. Armijo, I was handed
13    something this morning.  Did y'all file a response to
14    this motion this morning?  Is that the one that I got
15    the motion on?
16              MS. ARMIJO:  No.  I believe you're talking
17    about the conflict.  I believe Mr. Lowry filed
18    something late last night.
19              THE COURT:  Okay.  So that's not --
20              THE CLERK:  The motion, Judge, that was
21    originally filed is -- or the notice that the
22    Government submitted is not in that stack.  But it's
23    at Document 1534.
24              THE COURT:  Say that again.
25              THE CLERK:  The Government's notice of this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5481

1   potential conflict is not in that stack of materials

2   you have.  But it can be located at Document 1534.

3   You've read it, and looked at it previously in early

4   December.

5           THE COURT:  Okay.  So that wasn't something

6   that was filed today.

7           THE CLERK:  That's Document -- I believe --

8   1613, that was filed last night.  That's the

9   defendant's response to that Government's notice.

10          THE COURT:  All right.  Since we have Mr.

11  Del Valle here and Mr. Duran here, why don't we go

12  ahead and take up that issue.  I'm not sure that I

13  have the materials in front of me about the conflict,

14  so I may have to be rereminded, reeducated as to what

15  the issue is.  So somebody want to start?  All I have

16  is materials to try to do a colloquy.  But I don't

17  have any materials to remind me what the conflict is.

18          MR. CASTELLANO:  Judge, just to get things

19  started off then, the conflict, or potential conflict

20  involved the fact that Mr. Duran had previously sued

21  the Department of Corrections.

22          THE COURT:  So this was the civil matter?

23          MR. CASTELLANO:  Yes, sir.  So the Court --

24  I think there was transcripts and other documents

25  presented at the last meeting.  That issue is related

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5482

1    to the suit, and Mr. Lowry's firm previously

2    representing Mr. Duran.

3           THE COURT:  All right.  So it sounds like

4    where we were was I was going to have a colloquy with

5    Mr. Duran, and make sure he was comfortable with Mr.

6    Lowry and his firm continuing to represent Mr. Baca

7    in this case; is that correct?

8           MR. CASTELLANO:  That's correct, Your

9    Honor.  And I guess one of the questions will be the

10   extent and the length of the representation.  It may

11   have been longer than we initially thought.  But

12   that's correct, we're at that point, I believe.

13          THE COURT:  Well, why don't I get started

14   on this colloquy.  And then, Mr. Castellano, if you

15   want to weigh in and make sure that you're

16   comfortable with what we're doing.

17          Mr. Del Valle, how are you today?

18          MR. DEL VALLE:  Doing well.

19          THE COURT:  Good.  And, Mr. Duran, good

20   morning to you.

21          THE DEFENDANT:  Good morning, Your Honor.

22          THE COURT:  All right.  So, Mr. Duran, do

23   you have a sense as to why you're here today and what

24   we're about to do?

25          THE DEFENDANT:  Yes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5483

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 15484

```
 1                  THE COURT:  So I if understand the
 2      situation, is that Mr. Lowry's firm -- not Mr. Lowry,
 3      but someone else in his firm -- represented you in a
 4      civil action involving the Department of Corrections.
 5      Is that your memory of the case?  You may know more
 6      about it than I do.  I have read some material on it,
 7      but it's been a while.  But do you remember that?
 8                  THE DEFENDANT:  Correct.
 9                  THE COURT:  And so you understand that what
10      we're doing here is, you have new counsel, you have
11      Mr. Del Valle, which the Court has appointed to
12      represent you in this matter.  So we're trying to
13      make certain you're comfortable with Mr. Lowry, who
14      is with the Rothstein Firm, going ahead and
15      representing Mr. Baca in this case.  So you
16      understand what we're doing here this morning?
17                  THE DEFENDANT:  Yes, Your Honor.
18                  THE COURT:  All right.  Let me explain a
19      few things to you, to make sure that we understand
20      exactly what I'm going to be asking you some
21      questions about.  Do you understand that you have a
22      right to a conflict-free counsel?  Do you understand
23      you have that right?
24                  THE DEFENDANT:  Yes, Your Honor.
25                  THE COURT:  And do you understand what that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5484

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 16485

```
 1    means, that you have a right to a counsel that is

 2    solely devoted to your interests, and nobody else's;

 3    they're not going to be worried about themselves,

 4    they're not going to be worried about anybody else,

 5    but just you?  Do you understand you have that right?

 6              THE DEFENDANT:  Yes, Your Honor.

 7              THE COURT:  And do you understand the facts

 8    surrounding Mr. Lowry's firm's previous

 9    representation of you, and that it was, as far as I

10    can tell, an unrelated civil case?  Do you understand

11    all the circumstances there?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  Do you have any questions that

14    you want to ask me about that case, or that you want

15    to ask -- anything you want to ask Mr. Del Valle or

16    Mr. Lowry about that prior case?  Or do you feel like

17    you know what the Rothstein Firm was representing you

18    on?

19              THE DEFENDANT:  I just feel like them

20    representing me would be a conflict of interest, as

21    far as me being a witness in this case.

22              THE COURT:  Okay.  So am I hearing you that

23    you're not planning to waive your conflict here?

24              THE DEFENDANT:  Correct.

25              THE COURT:  Okay.  And is that your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5485

1    understanding as well, Mr. Del Valle, that he's not

2    going to be waiving his representation?

3              MR. DEL VALLE:  Yes, Your Honor.  I spoke

4    to my client, Mr. Duran, and he doesn't feel

5    comfortable being cross-examined by somebody -- or

6    another attorney who previously represented him.

7              THE COURT:  Okay.  All right.

8              Mr. Lowry, I guess I had understood it was

9    going to be different; that Mr. Duran was going to

10   waive.  Is my memory off, or was this what we were

11   anticipating when we were talking earlier?

12             MR. LOWRY:  Your Honor, I hate to say that

13   your memory is off, but indeed it is; that we never

14   anticipated that Mr. Duran was going to waive his

15   conflict.

16             Our argument on December 7 to Your Honor is

17   that there is no conflict.  There is not even the

18   potential, or even the possibility of a conflict.  As

19   we discussed on the 7th, once we realized that

20   Mr. Duran was going to be a witness in this case, we

21   immediately assigned all duties to Mr. Duran to Ms.

22   Duncan, who is co-counsel, who is conflict-free in

23   this situation.

24             So Mr. Duran's concern that he would be

25   cross-examined by any member of the Rothstein Firm

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5486

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 18 5487

1    would be incorrect.  That will not happen.  So I

2    mean, we can walk through -- and I apologize about

3    the filing last night, Your Honor, but it just echoes

4    the argument we made on the 7th, that, as you just

5    pointed out, these are completely unrelated cases,

6    and there is really no overlap.

7            And if you look at the Rules of

8    Professional Conduct, Rule 16-109(a), in particular,

9    I mean, has to be a same or substantially similar

10   matter.  And they're neither in this case.

11           The United States' motion that brought this

12   to the Court's attention pointed out -- I thought in

13   writing this response a bit of an incongruity in the

14   record, if you will.  The response seems to intimate

15   in Footnote 7 -- I mean, the United States' motion,

16   Document No. 1534, in Footnote 7, seems to indicate

17   that Mr. Duran is going to testify in this case about

18   being an SNM member and SNM Gang-related activities.

19   And the problem is, Your Honor, there is no

20   indication that he was ever an SNM member until, at

21   best, 2005.  And that's by his own admission in the

22   February 19, 2015 interview we heard about at the

23   very last hearing we had in this case in December.

24           So there is really no overlap.  There is

25   no -- even if you considered that Mr. Donatelli, who

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5487

```
 1    is in a different office, in a different city, had

 2    attorney-client confidential information regarding

 3    Mr. Duran, that would be an entirely unrelated

 4    matter.  It would be of no utility or no usefulness

 5    in this case.

 6             Again, as you know from the last meeting, I

 7    haven't talked to Mr. Donatelli about this.  You

 8    directed Ms. Duncan to talk to Mr. Donatelli about

 9    this.  I have the letter that was attached to the

10    pleading last night, Your Honor.  If you want, I can

11    provide you with a copy.

12             THE COURT:  Well, is that what -- I've been

13    handed now the response to the United States' motion.

14    Is it attached to that document?

15             MR. LOWRY:  Yes, Your Honor.  I believe it

16    would be Exhibit E.

17             THE COURT:  Well, let me ask Ms. Wild a

18    question.  If Mr. Duran was not going to waive his --

19    any conflict here, what was the thinking about

20    setting this hearing up to go through any sort of

21    colloquy with Mr. Duran?

22             THE CLERK:  Do you have your cellphone on

23    the bench?

24             THE COURT:  I do.

25             THE CLERK:  Let me call you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5488

```
 1                (A discussion was held off the record.)
 2                THE COURT:  All right.  Well, let me do
 3      this:  I want to read -- it seems to me that we've
 4      now determined that Mr. Duran is not going to waive
 5      any conflict here.  So, I apologize, there may not
 6      have been any reason to bring Mr. Duran here to the
 7      courtroom for that purpose.  And so -- but at least
 8      we have it clear that he's not going to waive.
 9                At some point, I'm going to need to do a
10      colloquy with Mr. Baca.  But I think that before I do
11      a colloquy, I want to read the response of Mr. Lowry,
12      the Rothstein Firm, and educate myself a little bit
13      more so that my colloquy with Mr. Baca is a little
14      bit more informed.
15                So I'm going to put that aside.  We'll just
16      plow ahead.  And I won't make any decisions on that
17      at the present time.  So unless somebody has
18      something else to propose here, I'm inclined to let
19      Mr. Del Valle and Mr. Duran leave the courtroom.
20                Mr. Castellano?
21                MR. CASTELLANO:  Your Honor, I don't have
22      any objection to that approach.  Mr. Lowry had said
23      that, according to Mr. Duran's statements in his
24      prior interview, that he may not have been an SNM
25      Gang member at that time.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 21490

```
 1            But I believe the representation continued
 2     for a number of years.  So the representation may
 3     have pushed into the time when he says he was an SNM
 4     member.  And so what we don't know, and what maybe
 5     the Court can delve into with Mr. Duran, is the
 6     nature of any conversations, any privileged
 7     conversations he had with counsel; for example,
 8     anything that would have tied to gang activities,
 9     such as drug trafficking or any administrative
10     trouble he may have gotten into during that time when
11     he was represented.  Because that may be reflected in
12     his STIU file.  So I agree with the Court's approach.
13     I just think there may be other things we'll have to
14     flesh out as part of the colloquy.
15            THE COURT:  Well, since I'm letting
16     Mr. Duran go, it seems to me that if those are the
17     sort of questions that before he leaves that we ought
18     to do today?
19            MR. CASTELLANO:  It wouldn't hurt to at
20     least talk about the length of the representation,
21     and without asking him about what the conversations
22     were, whether certain topics, for example, were
23     discussed during that time.
24            THE COURT:  Well, why don't you turn around
25     and why don't you ask Mr. Duran those questions.  Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5490

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22

5491

```
 1   Del Valle, you're obviously counsel, you can make
 2   objections if you want.  And let me see what Ms.
 3   Duncan wants to say before --
 4          MS. DUNCAN:  Your Honor, I'm sorry, before
 5   the Government talks to him, may I ask that he be
 6   placed under oath.  It's a serious topic so I think
 7   he should be under oath.
 8          THE COURT:  All right.  So I'll place you
 9   under oath.  But again, if Mr. Del Valle wants to
10   talk to you or make an instruction to you, then you
11   know, let Mr. Del Valle talk to you before you answer
12   a question.  But I'm going to place you under oath.
13   If you'll raise your right hand to the best of your
14   ability, Mr. Duran, Ms. Standridge will swear you in
15   at this time.
16                ERIC PRESTON DURAN,
17       after having been first duly sworn under oath,
18       was questioned and testified as follows:
19                DIRECT EXAMINATION
20          THE CLERK:  Please state your name for the
21   record.
22          THE WITNESS:  Eric Preston Duran.
23          THE COURT:  All right.  Mr. Castellano.
24   Mr. Duran.
25          Why don't we do this:  Mr. Duran, why don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5491

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23492

```
 1    you come up to the witness box and be seated.  Mr.

 2    Del Valle, why don't you come up.  We have a seat up

 3    here.  I didn't mean to take your seat away from you.

 4    We can get another one here.  Does that work for you?

 5          All right.  Mr. Castellano.

 6    BY MR. CASTELLANO:

 7          Q.   Good morning, Mr. Duran.

 8          A.   Good morning, sir.

 9          Q.   Can you please tell the Court approximately

10    when the Donatelli law firm began representing you in

11    the civil matter?

12          A.   1997.

13          Q.   And do you remember approximately how long

14    that representation lasted; in other words, when did

15    they stop representing you on that case?

16          A.   2005.

17          Q.   Now, after 2005, did you have any other

18    communications with the law firm, or did they

19    otherwise represent you?

20          A.   I did -- like, short brief conversations

21    with them and contact.

22          Q.   And approximately how much longer then did

23    you have contact with the firm?  In other words,

24    approximately what year?

25          A.   Till about 2007.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5492

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 24493

```
 1          Q.   And during that time, without telling us
 2    what the communications were, what the conversations
 3    were, do you know if you had conversations with the
 4    law firm about anything that touched on what the SNM
 5    does in terms of gang activity?
 6          A.   As far as when they represented me?
 7          Q.   Yes.
 8          A.   Yeah, several things.
 9          Q.   So, in other words, in terms of any
10    conversations you had with the law firm, could some
11    of those conversations come up in court in terms of
12    things you discussed with them?
13          A.   They could.
14          Q.   And the same question involving any
15    disciplinary matters.  Did you have any discussions
16    with the law firm about any disciplinary matters you
17    were facing or faced during that representation?
18          A.   I did.
19          Q.   I don't know if you know the answer to this
20    question, but would you know if those matters would
21    be represented in your STIU or other corrections
22    files?
23          A.   I'm not aware.
24          Q.   Okay.  I'm going to try get into some
25    topics.  Once again, without asking you about what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5493

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25494

```
 1    the conversations were, but in terms of topics, can
 2    you tell the Court if you discussed anything related
 3    to drug activity?
 4         A.   Drug activity, yes, we did.
 5         Q.   With the law firm?
 6         A.   With the law firm.
 7         Q.   Can you tell the Court whether you had any
 8    discussions with the law firm involving any acts of
 9    violence?
10         A.   I did.
11         Q.   And to the best of your recollection, when
12    did your conversations with the law firm cease
13    entirely?
14         A.   Around 2007.
15         Q.   You've had a chance to see Mr. Lowry today.
16    Do you remember him at all?
17         A.   I do.
18         Q.   How do you remember him?
19         A.   I've seen him before in court dates, or
20    Donatelli's office.
21         Q.   Can you tell the Court whether or not you
22    had any of these privileged conversations with Mr.
23    Lowry?
24         A.   No, I haven't.
25         Q.   So you recognize him from the firm, you've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5494

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5495

```
 1    seen him, but your conversations did not involve

 2    Mr. Lowry; is that correct?

 3         A.   Right.

 4         Q.   And other than Mr. Donatelli, did you have

 5    conversations such as these with any other lawyers in

 6    the firm?

 7         A.   I believe I spoke to everybody that was in

 8    that firm at this time that they represented me.

 9         Q.   Do you remember any other names?

10         A.   I don't recall.

11         Q.   Do you remember approximately how many of

12    the attorneys from the firm you spoke with about this

13    representation?

14         A.   Approximately 10.

15         Q.   And do you remember which office they were?

16    For example, were they in the Santa Fe office, or the

17    Albuquerque office, or another office?

18         A.   Both.

19              MR. CASTELLANO:  May I have a moment, Your

20    Honor?

21              THE COURT:  You may.

22              MR. CASTELLANO:  Thank you, Your Honor.  I

23    pass the witness.

24              THE COURT:  Thank you, Mr. Castellano.

25              Ms. Duncan, do you want to ask any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5495

```
 1   questions of Mr. Duran?
 2             MS. DUNCAN:  I do, Your Honor.
 3             THE COURT:  Ms. Duncan.
 4                        EXAMINATION
 5   BY MS. DUNCAN:
 6        Q.   You testified that the Donatelli firm
 7   stopped representing you in 2005; correct?
 8        A.   Correct.
 9        Q.   Your lawsuit, civil lawsuit you filed
10   against Wackenhut, was dismissed in 2002; correct?
11        A.   It wasn't dismissed.
12        Q.   I'm going to mark -- I think I might be on
13   Exhibit A.  Anthony Baca --
14             THE COURT:  Let's just treat this as a
15   separate matter.  I don't think we had any testimony
16   on it before, unless my memory is off.
17             MS. DUNCAN:  Thank you, Your Honor.
18             THE COURT:  All right.  That's Defendant's
19   Exhibit A?
20             MS. DUNCAN:  Your Honor, may I approach?
21             THE COURT:  You may.
22        Q.   I'm showing you what has been marked as
23   Anthony Baca A.  Can you take a look at that document
24   and tell me if you've seen that before?
25             MS. DUNCAN:  Your Honor, while the witness
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5496

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 28497

```
 1    is reviewing the document, I understand the
 2    Government has no objection, and we would introduce
 3    it for purposes of this hearing.
 4              THE COURT:  All right.  Has it been
 5    sufficiently identified so that everybody knows what
 6    it is?
 7              All right.  No objection from the
 8    Government?
 9              MR. CASTELLANO:  That's correct.
10              THE COURT:  Any objection from anybody
11    else?  All right.  Anthony Baca's Exhibit A will be
12    admitted into evidence.
13    BY MS. DUNCAN:
14         Q.   Do you recognize that document?
15         A.   No, I don't.
16         Q.   Do you recognize the caption of that
17    document?
18         A.   I do.
19         Q.   Is that the lawsuit that you filed against
20    Wackenhut?
21         A.   Yeah.
22              MS. DUNCAN:  May I approach the witness
23    again?
24              THE COURT:  You may.
25         Q.   I've got it now here on the Elmo.  And this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    document is entitled, "Order of dismissal with

2    prejudice; correct?

3         A.    Correct.

4         Q.    And, again, I think you've agreed that this

5    is filed in the case of Eric Duran versus Wackenhut

6    Corrections Corp, et al.; correct?

7         A.    Correct.

8         Q.    And this is the lawsuit that the Donatelli

9    firm represented you in?

10        A.    Right.

11        Q.    There was no other lawsuit filed after this

12   one by the Donatelli firm?

13        A.    No.

14        Q.    And if you look at the bottom of that

15   paragraph it says -- it reads, "All causes of action

16   therein" -- I'll start here:  "Eric Duran and the

17   attorneys for certain of the defendants here are

18   praying for entry of an order dismissing the

19   complaint for damages for deprivation of civil rights

20   and for supplemental state law claims filed herein by

21   said plaintiff, and all causes of action therein with

22   prejudice as to all defendants named in the

23   aforementioned complaint on the grounds" -- and I'm

24   skipping over -- "on the grounds that the matters in

25   controversy have been fully settled and compromised,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5498

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 30 of 499

30

1    and the Court, having read the pleadings and being

2    sufficiently advised in the premises, finds that the

3    Court has jurisdiction over the parties and the

4    subject matter herein, and that said motion to

5    dismiss is well taken and should be granted."

6            Did I read that correctly?

7        A.   Correct.

8        Q.   The last paragraph, "It is therefore

9    ordered, adjudged, and decreed that the complaint for

10   damages for deprivation of civil rights and for

11   supplemental state law claims filed herein by said

12   plaintiff, and all causes of action therein be, and

13   the same hereby are, dismissed with prejudice as to

14   all defendants named in the aforesaid complaint for

15   damages for deprivation of civil rights and for

16   supplemental state law claims."

17           Did I read that correctly?

18       A.   Yes, ma'am.

19       Q.   So you testified that you had contact with

20   the firm until 2007; correct?

21       A.   Correct.

22       Q.   And you indicated that you spoke to

23   approximately ten lawyers in the firm?

24       A.   At the time, during testimony, yes.

25       Q.   When you say, "at the time, during

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5499

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5500

 1    testimony," what do you mean?

 2         A.   When I testified against the correctional

 3    officers that assaulted me.

 4         Q.   You did that in a criminal case; correct?

 5         A.   During trial, yes.

 6         Q.   Yes.  And when you talk about meeting with

 7    lawyers, you were meeting with members of the U.S.

 8    Attorney's Office; correct?

 9         A.   No, the lawyers from Donatelli's firm.

10         Q.   You never met with a lawyer from the U.S.

11    Attorney's Office to the prepare to testify in the

12    criminal case?

13         A.   In the criminal case, I did, yes.

14         Q.   But when you're talking about testifying,

15    you're talking about the criminal case; correct?

16         A.   Yeah.

17         Q.   You never testified in the civil case?

18         A.   I testified -- no.

19         Q.   So when you met to prepare for your

20    testimony in the criminal case, it was also with

21    members of the U.S. Attorney's Office; correct?

22         A.   And Donatelli's firm, yes.

23         Q.   How often did you meet with the U.S.

24    Attorney's Office to prepare?

25         A.   Once or twice.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 32

```
 1        Q.   And Mr. Donatelli was always there?

 2        A.   Correct.

 3        Q.   Where did you meet?

 4        A.   In a private room at the courthouse.

 5        Q.   Did you ever meet at Donatelli's office?

 6        A.   Yes.

 7        Q.   When did you meet at Mr. Donatelli's

 8   office?

 9        A.   I don't recall dates.

10        Q.   Approximately when did you meet with Mr.

11   Donatelli in his office?

12        A.   During the beginning of this whole civil

13   suit.

14        Q.   And was that the office in Santa Fe?

15        A.   Santa Fe and Albuquerque.

16        Q.   Approximately how many times did you meet

17   with Mr. Donatelli at his office?

18        A.   Just maybe once or twice.

19        Q.   And you said that was at the beginning of

20   the lawsuit?

21        A.   Correct.

22        Q.   Who was present with Mr. Donatelli?

23        A.   People that represented his firm.

24        Q.   Do you remember any of their names?

25        A.   I don't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5501

5502

```
 1        Q.   You said that you had conversations with
 2   Mr. Donatelli regarding disciplinary matters;
 3   correct?
 4        A.   Correct.
 5        Q.   When did you have those conversations?
 6        A.   At the beginning of the civil matters.
 7        Q.   So that would have been in 2001; is that
 8   correct?
 9        A.   1998.
10        Q.   Did you discuss those matters with Mr.
11   Donatelli other than at the beginning of the
12   litigation in 1998?
13        A.   Throughout his whole representation.
14        Q.   So are you saying every time you talked to
15   Mr. Donatelli you brought up your disciplinary
16   matters?
17        A.   If it involved the case, yes.
18        Q.   And in what way would your disciplinary
19   matters involve your case?
20        A.   As far as retaliation by the correctional
21   officers.
22        Q.   So disciplinary matters for which those
23   particular correctional officers would have
24   retaliated against you; correct?
25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5502

```
 1          Q.   You testified that you talked to the law

 2     firm about your drug activity; correct?

 3          A.   Correct.

 4          Q.   When did you have those conversations?

 5          A.   2002.

 6          Q.   And in what context did you have those

 7     conversations?

 8          A.   Just as far as what I was doing.

 9          Q.   Why did you have those conversations?

10          A.   Because it related to the case I was

11     involved in.

12          Q.   So it related to the criminal case where

13     you were going to testify, or the civil case?

14          A.   The separate case.

15          Q.   And with whom did you discuss your drug

16     activity?

17          A.   With Donatelli.

18          Q.   And did you discuss your drug activity

19     outside of prison or inside prison?

20          A.   Outside of prison.

21          Q.   Did you discuss at all your drug activity

22     inside prison?

23          A.   Yes.

24          Q.   And this was, again, you said in 2002?

25          A.   No; 2002 was one time.  The other time was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5503

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35504

1    in 1998, approximately.

2         Q.    And you said that you talked to the law

3    firm about acts of violence; is that correct?

4         A.    Correct.

5         Q.    When did you have those conversations?

6         A.    1998.

7         Q.    And with whom?

8         A.    Donatelli and other people that represented

9    his firm.

10        Q.    You said that the representation ceased in

11   2007; correct -- or I'm sorry, your communications

12   ceased in 2007?

13        A.    Correct.

14        Q.    Why did it cease?

15        A.    Because throughout the time, from 2003,

16   when we stopped the case, he still managed my money.

17        Q.    Did he provide any services for you other

18   than managing your money after 2003?

19        A.    No.

20        Q.    You said that the representation itself

21   ended in 2005.  Does that mean that's when he stopped

22   managing your money, in 2005?

23        A.    Right.

24        Q.    So from -- okay, moving on.

25             You said that you remembered Mr. Lowry from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5504

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36505

 1   court dates.

 2       A.   Right.

 3       Q.   What court dates?

 4       A.   The court dates when I testified against

 5   the correctional officers, the trial.

 6       Q.   And that was in the criminal case, the

 7   federal criminal case?

 8       A.   Against the correctional officers, yes.

 9       Q.   And where was Mr. Lowry in the courtroom?

10       A.   Everybody that was with Donatelli.

11       Q.   So he was sitting with Mr. Donatelli?

12       A.   Yes.

13       Q.   Other than seeing Mr. Lowry in the

14   courtroom, do you remember seeing him any other time?

15       A.   No.

16       Q.   Did you have any conversations with Mr.

17   Lowry?

18       A.   No.

19       Q.   You said that you spoke with lawyers from

20   both Santa Fe and Albuquerque office; correct?

21       A.   Correct.

22       Q.   How did you know which offices the lawyers

23   came from?

24       A.   Because they told me.

25       Q.   How many lawyers did you speak to who were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5505

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5506

```
 1    from the Santa Fe office?

 2         A.   I don't recall.

 3         Q.   How many lawyers did you speak to from the

 4    Albuquerque office?

 5         A.   I don't recall.

 6         Q.   How many conversations have you had with

 7    this group of prosecutors about Mr. Donatelli?

 8         A.   One, maybe.

 9         Q.   And when was that conversation?

10         A.   Just the other day.

11         Q.   When you say, "just the other day," within

12    the last week?

13         A.   Yes.

14         Q.   So before last week you've never spoken to

15    anyone from this office about Mr. Donatelli?

16         A.   No.

17         Q.   How about with Mr. Acee?

18         A.   I don't recall.

19         Q.   You don't recall speaking to him about Mr.

20    Donatelli?

21         A.   About Mr. Donatelli representing me in a

22    case?

23         Q.   Yes.

24         A.   Yes.

25         Q.   When did you have that conversation?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I don't recall.

 2        Q.   Was it within the last year?

 3        A.   Yeah, probably 2014, maybe.

 4             MS. JACKS:  Excuse me, Your Honor.  We're

 5    having trouble hearing in the back of the courtroom.

 6             THE COURT:  Why don't you move the mic.

 7        Q.   So you think, in approximately 2014, you

 8    spoke to Bryan Acee about Mr. Donatelli having

 9    represented you in the civil case?

10        A.   Right.

11        Q.   What do you recall about that conversation?

12        A.   Just telling him as far as this

13    correctional officer incident and the lawsuit.

14        Q.   At any point, did you discuss with Mr. Acee

15    what conversations or the topics of conversations you

16    had with Mr. Donatelli?

17        A.   No.

18        Q.   At any point, did you have a conversation

19    with any of these prosecutors about the topics of

20    your conversation with Mr. Donatelli?

21        A.   No.

22        Q.   Even when you met with them last week?

23        A.   When I met with them?

24        Q.   When you met with the prosecutors last

25    week, did you talk to them about the subject matter
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 5507

 1   of your conversations with Mr. Donatelli?

 2       A.   Yeah, I brought up my concerns, yes.

 3       Q.   And you raised those concerns for the first

 4   time last week?

 5       A.   Correct.

 6       Q.   When you raised those concerns with them,

 7   what did you tell them?

 8       A.   That Mr. Baca's attorney represented the

 9   same firm that represented me in a lawsuit, who would

10   have access to the things that I told him.

11       Q.   And why did you raise those concerns?  I

12   mean, what prompted you to bring this issue up?

13       A.   I just feel like it would be a conflict of

14   interest to have a defendant being represented by

15   someone that represented me.

16       Q.   So did you raise the question of whether

17   there was a conflict of interest or did someone else

18   raise it to you?

19       A.   I did.

20       Q.   So just -- how did you learn that Mr. Baca

21   was represented by someone from Mr. Donatelli's

22   office?

23       A.   Because I learned that you guys were trying

24   to subpoena me to show up to places, to get me to be

25   here.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5508

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 40509

```
1         Q.   And so when you heard that we were
2    subpoenaing you is the first time that you learned
3    that Mr. Donatelli's office -- a lawyer from Mr.
4    Donatelli's office was Mr. Baca's attorney?
5         A.   No.  I knew he was being represented from
6    the day he went to court.
7         Q.   Right.  That's not my question.  My
8    question is:  When did you learn that an attorney
9    from Mr. Donatelli's firm represented Mr. Baca?
10        A.   The day he went to court.
11        Q.   Which day that he went to court?
12        A.   When he first got initially charged.
13        Q.   In December of 2015?
14        A.   Right.
15        Q.   And so did you raise your concerns then?
16        A.   No.  I hadn't been talked to.
17        Q.   So -- okay.  So in -- you said in 2014, you
18   talked to Bryan Acee about your lawsuit; correct?
19        A.   And there was nobody that was represented
20   by any law firms at that point.
21        Q.   And when is the next time that you talked
22   to Mr. Acee or any member of the government about the
23   Rothstein firm or Mr. Donatelli's representation of
24   you?
25        A.   Last week.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5509

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5510

1          Q.   So before last week, you had never spoken

2     with Maria Armijo about your conversations with Mr.

3     Donatelli?

4          A.   I haven't spoke with Maria Armijo since

5     2014, before anybody was represented.

6          Q.   The only lawsuit which -- for which Mr.

7     Donatelli represented you was a civil lawsuit against

8     Wackenhut and others; correct?

9          A.   Correct.

10         MS. DUNCAN:   May I have a moment, Your

11    Honor?

12         THE COURT:   You may.

13    BY MS. DUNCAN:

14         Q.   You testified that you met with lawyers

15    from the Donatelli firm in Albuquerque; correct?

16         A.   Correct.

17         Q.   Where is that office?

18         A.   I'm not sure right now.

19         Q.   Can you describe what the office looks

20    like?

21         A.   No.

22         Q.   Can you describe whether you met with them

23    on the first floor?  On an upper floor?

24         A.   It was in a building.  I don't know.  I'm

25    not sure.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 5510

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 42

5511

```
 1        Q.   How about the Santa Fe office?
 2        A.   The Santa Fe office was just a single-floor
 3   building.
 4        Q.   And how often did you meet in the Santa Fe
 5   office?
 6        A.   Once.
 7        Q.   Were you in custody at the time that you
 8   met in the Santa Fe office?
 9        A.   Yes.
10        Q.   And were you in custody at the time you met
11   in the Albuquerque office?
12        A.   The Albuquerque office was the office that
13   we conducted --
14             MS. SIRIGNANO:   Sorry, Your Honor, I can't
15   hear the witness.
16        A.   The Albuquerque office was the initial
17   place that we conducted the lawsuit, to settle out of
18   court.
19        Q.   So you met in the Albuquerque office to
20   discuss settling your case?
21        A.   No.   We settled out of court in the
22   Albuquerque office.
23             MS. DUNCAN:   Okay.   I have no further
24   questions, Your Honor.
25             THE COURT:   Thank you, Ms. Duncan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5511

```
 1              Mr. Lowry, I know that you'd indicated you
 2    didn't want to cross-examine Mr. Duran.  Is that
 3    still the situation?
 4              MR. LOWRY:  Well, Your Honor, that puts me
 5    in a bit of a pickle.
 6              THE COURT:  Yeah.
 7              MR. LOWRY:  I would like to ask --
 8              THE COURT:  I'm going to let you decide
 9    whether you want to be in the pickle jar or out of
10    the pickle jar.
11              MR. LOWRY:  I know pickle juice is the big
12    refresher these days.  I think it's the high school
13    football team --
14              THE COURT:  Ms. Wild started me on this.
15    For a long time I would eat the pickles and give her
16    the pickle jar.  But now I've been eating the pickle
17    juice myself.  I don't know if I recommend it.
18              All right.  Mr. Lowry.
19              MR. LOWRY:  Just a few brief questions.
20                      EXAMINATION
21    BY MR. LOWRY:
22        Q.  Mr. Duran, you said that -- I just want to
23    clarify -- you said that I was in court with Mr.
24    Donatelli during your criminal case?
25        A.  Yeah, I believe so.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5512

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5513

1      Q.   And you said that you had met me, or

2    recognized me, from one of the offices?

3      A.   Correct.

4      Q.   Which office?

5      A.   The Albuquerque office.

6      Q.   In what year was that?

7      A.   I'm not sure.  I don't recall.

8      Q.   Okay.  I think you just spoke to Ms.

9    Duncan, and you said -- how many times had you been

10   to the Albuquerque office?

11     A.   Once.

12     Q.   And if I recall correctly, that was when

13   you settled your civil case?

14     A.   Right.

15     Q.   So that would have been before the notice

16   of settlement was issued or filed with the court?

17     A.   I'm not sure.

18     Q.   Well, you wouldn't have dismissed your case

19   before you settled it, would you have?

20     A.   No.  I believe the case got dismissed after

21   I settled it.

22     Q.   So my question is:  You would have been in

23   the Albuquerque office before the date of the

24   dismissal of your case?

25     A.   Correct.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  No further questions, Your
 2    Honor.
 3              THE COURT:  All right.  Thank you, Mr.
 4    Lowry.
 5              Any other defense counsel, other
 6    defendants, have any question of Mr. Duran?
 7              Mr. Del Valle, do you have any questions
 8    that you wish to ask Mr. Duran?
 9              MR. DEL VALLE:  No, Your Honor.
10              THE COURT:  All right.  Mr. Castellano, do
11    you have --
12              MR. CASTELLANO:  Yes, sir.  Thank you.
13              THE COURT:  -- redirect?
14                      REDIRECT EXAMINATION
15    BY MR. CASTELLANO:
16         Q.   Mr. Duran, you indicated that you had
17    discussions with Agent Acee and with Ms. Armijo in
18    2014.  Do you remember when you first met each of
19    them, what year it was?
20         A.   Yes.
21         Q.   When do you think that was?
22         A.   2014.
23         Q.   Why do you think it was 2014?
24         A.   Because I met them in February of 2014 --
25    or I met Mr. Acee in 2014.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5514

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 46 5515

```
 1        Q.   Do you remember giving a statement to FBI
 2    agents in February of 2015, including a woman named
 3    Katie Brusuelas?
 4        A.   That was 2015.  I'm sorry, it was 2015.  I
 5    met Mr. Acee in May, and I met Katie in February, and
 6    I met Ms. Armijo in August.
 7        Q.   August of 2015?
 8        A.   Correct.
 9        Q.   Now, you mentioned actually three things:
10    You mentioned a civil suit, testifying against the
11    corrections officers, and then the Donatelli firm
12    managing your money.  Can you tell the Court whether
13    all three of those things related to the same
14    incident?
15        A.   They did.
16        Q.   So, in other words, did corrections
17    officers assault you?
18        A.   Correct.
19        Q.   Did you file a civil suit in response to
20    that assault?
21        A.   Correct.
22        Q.   And after that, did the Department of
23    Justice then prosecute those correction officers for
24    the same incident?
25        A.   Correct.
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5515

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5516

```
 1          Q.   And then, prior to your testimony in the
 2   criminal case, did the Donatelli firm help you
 3   prepare for your testimony in any way?
 4          A.   Yes.
 5          Q.   Okay.  How did they help you prepare for
 6   your testimony?
 7          A.   They just helped me prepare for it.
 8          Q.   In other words, did they tell you certain
 9   things that the other defense attorneys in the
10   criminal case might ask you?
11          A.   Yeah, correct.
12          Q.   Including any prior bad acts you may have
13   been engaged in?
14               MS. DUNCAN:  Your Honor, I object to
15   leading.
16               THE COURT:  Overruled.
17          A.   Correct.
18          Q.   So, in other words, if you had done
19   other -- other things for which the defense attorneys
20   in the criminal case could impeach you, did the
21   Donatelli firm help you prepare for that kind of
22   testimony?
23          A.   Correct.
24          Q.   And then, when you talked about the
25   Donatelli firm helping you manage your money, was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 48 5517

1   that from the civil suit in which you settled?

2        A.   Yes.

3             MR. CASTELLANO:  I have no further

4   questions, Your Honor.

5             THE COURT:  All right.  Thank you, Mr.

6   Castellano.

7             All right.  Mr. Duran, you may step down.

8   Thank you for your testimony.

9             Well, even though I'm not going to take a

10  colloquy of Mr. Baca at the present time because I

11  want to read material that's come in -- I've been

12  looking at it and refreshing my memory about the

13  Government's filings while we've been hearing

14  testimony -- I do think it would be a good idea to go

15  ahead and argue the motion again, because it looks

16  like I'm going to have to make a rather prompt ruling

17  on this, given the motions that we're going to have

18  to hear this week.

19            So, Mr. Castellano, why don't I let you go

20  first, since I think it was the Government that

21  raised the potential conflict here.

22            MR. CASTELLANO:  Your Honor, I think we

23  fleshed out some more facts today that we didn't know

24  last time, because --

25            THE COURT:  Tell me what I'm hearing for



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5517

1    the first time.  I certainly have heard some things

2    that I think I'm hearing for the first time.  But

3    what's your list?

4            MR. CASTELLANO:  What we didn't know was

5    the extent of the representation or the length of

6    time of the representation, or that the

7    representation not only covered the civil case, but

8    the criminal case, and the management of Mr. Duran's

9    funds.

10           And so, as Mr. Duran testified, what the

11   Donatelli firm helped him do, in addition to meeting

12   with the Department of Justice officials, prior to

13   his testimony in the criminal case, was they helped

14   him prepare for testimony, including what to expect

15   when he might be attacked for any prior bad acts he

16   may have done in the Corrections Department, or

17   otherwise.  And so any of that conduct, if it

18   involved criminal activity, those are things which

19   the Donatelli firm knows about Mr. Duran, and in

20   fact, helped him to prepare when he was going to be

21   questioned about those things.

22           So I think the representation is more

23   extensive than we knew last time we were here,

24   because we didn't have the benefit of Mr. Duran's

25   testimony, which he recalls extending into 2007.  So

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5518

```
 1   that would have taken him well within the timeframe
 2   that we're talking about here.
 3           And so, when we talk about things such as
 4   acts of violence or drug trafficking, those are
 5   things which are racketeering acts, which are things
 6   we allege that the criminal enterprise does.  And so
 7   they do relate to the charges in this case because
 8   they touch on some of the elements.
 9           I think that's what I would add to the
10   analysis, Your Honor.
11           THE COURT:  All right.  Thank you, Mr.
12   Castellano.
13           Ms. Duncan, do you want to go first?  Do
14   you want Mr. Lowry to go first?  How do you want to
15   proceed?
16           MR. LOWRY:  Your Honor, I would like to go
17   first.  And then I'd like Ms. Duncan to follow-up if
18   I may.
19           THE COURT:  All right.  Mr. Lowry.
20           MR. LOWRY:  Your Honor, I agree with Mr.
21   Castellano in the sense that -- and, as I said to the
22   Court in December, you know, I haven't spoke to Mr.
23   Donatelli about the representation of Mr. Duran.  So
24   all of this today was news to me.
25           In December -- and I continue to adhere to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5519

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 51

 1  this position -- the standard is really an objective

 2  standard.  And the Court should look at the scope of

 3  the representation in the civil case and make an

 4  assessment whether the kinds of topics that Mr. Duran

 5  claims to have spoken to Mr. Donatelli about would be

 6  necessary in the context of that case.  And if they

 7  weren't, then you can make a finding that there is --

 8  there was no confidential information that would have

 9  been shared.

10        I understand Mr. Duran has testified today

11  that he did talk about prior bad acts.  But, again,

12  this brings me back to the point is -- this case is

13  about the SNM, and his prior bad acts before 2002

14  would have been unrelated to the SNM.

15        So I just heard, you know, all about this

16  timeframe extending -- I heard various dates, from

17  2005 to 2007.  So all of that is news to me.  And I

18  would appreciate it, perhaps, if the Court would, you

19  know, task Ms. Duncan with going back and seeing if

20  any of that is remotely real.

21        I mean, I work in the office.  I would say

22  this -- and the reason I wanted to step into the

23  pickle and ask Mr. Duran the few questions I did, is

24  just to assess his credibility.  And, to me, it's

25  rather striking that he's willing to say that he met

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5520

1    me in the office at the Rothstein law firm during his

2    settlement conference, which took place sometime

3    before the September 18, 2002 settlement.  At the

4    time, I was a law clerk for Chief Justice James A.

5    Parker, so I would have been in the federal

6    courthouse at the time.  So that's highly unlikely.

7    It just stretches one's imagination past the breaking

8    point, to hear him say some of the things he said.

9              So, if the Court would be so inclined -- I

10   know that the firm has a policy of sending case

11   closing letters when the case wraps up.  And maybe

12   that is one of the things that would help us

13   determine whether the scope of representation lasted

14   as long as Mr. Duran claims that it did.

15             But it gives me no great pleasure to say

16   that I think a lot of what was said was fanciful.

17   But, at the end of the day, all of his prior bad

18   acts, any of his conduct, would have been unrelated

19   to the SNM, by his own admission to the FBI on

20   February 19, 2015.

21             So at the last hearing you'd asked me to

22   look at cases about the appropriate type of remedy.

23   And I'd encourage you to look at the last section of

24   the brief we filed yesterday.  The best I could find

25   was the New Hampshire courts allow exactly what we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5521

```
 1    proposed in this case, and that is to have substitute
 2    counsel handle that witness.  The New Hampshire
 3    courts even go a step further, to allow a lawyer in
 4    the office -- in that case, the public defender's
 5    office, who has represented government witnesses.  It
 6    doesn't disqualify the public defender and other
 7    attorneys, as long as they're, you know, Chinese
 8    walled off from the original case file, and the
 9    original attorneys are allowed to represent new
10    clients who have to cross-examine former clients of
11    the firm.  And that is the case when the two cases
12    are not, as the Court has already indicated,
13    substantially similar.  These cases aren't similar at
14    all.
15            And I would urge the Court to consider a
16    remedy that's short of disqualification along the
17    lines that we put in place immediately upon realizing
18    Mr. Duran's involvement in the case, Your Honor.
19            Thank you.
20            THE COURT:  All right.  Thank you, Mr.
21    Lowry.
22            Ms. Duncan?
23            MS. DUNCAN:  Your Honor, I'd like to start
24    out by discussing the letter that I sent to you that
25    was attached to our response.  I've had a couple of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5522

```
 1    conversations with Mr. Donatelli about this matter.

 2    And as I lay out in my letter, he denies ever having

 3    a conversation with Duran about gang life or drug use

 4    or priors.

 5            He said that the liability for the civil

 6    case was really won for him by the U.S. Attorney's

 7    Office, when they convicted the correctional officers

 8    who beat Mr. Duran.

 9            So, for him, the focus was money.  You

10    know, what was the damage to Mr. Duran, and what was

11    that worth?

12            I have talked to him.  Ms. Armijo informed

13    Mr. Lowry that Mr. Duran was going to make these

14    claims about having these conversations.  I spoke to

15    Mr. Donatelli after learning of that.  He, again,

16    repeated that he did not have -- he has no

17    recollection of having any such conversations, and he

18    can't imagine why he would in the limited context of

19    the case.

20            You know, even listening to Mr. Duran

21    testify right now -- I mean, he's talking about

22    conversations that he had in 1998, and as late as

23    2002, with Mr. Donatelli and the U.S. Attorney's

24    Office, preparing to testify for that criminal case.

25            The Government has conceded, and all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5523

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 55

```
 1    documentary evidence in this case suggests that
 2    Mr. Duran did not begin his alleged affiliation with
 3    the SNM until 2005.
 4            So if he's talking about gang life, he's
 5    not talking about the SNM.  If he's talking about
 6    drug stuff, he's not talking about drug stuff related
 7    to this case here.
 8            In terms of his acts of violence, they are
 9    well documented in court records, and also in his
10    disciplinary file.
11            So there is no confidential information
12    that could be used in this lawsuit from 2002.  And
13    just using that objective standard, there is nothing
14    that we would use.  And even if there were, as Mr.
15    Lowry has pointed out, having me do the
16    cross-examination -- I am not a member of the
17    Rothstein law firm.  I've never represented
18    Mr. Duran.  I'm relying on the extensive records,
19    both criminal records, disciplinary records, going
20    back as far as 1998, against Mr. Duran, to do the
21    cross-examination.
22            So there really just isn't a conflict here.
23    And the fact that Mr. Donatelli represented Mr. Duran
24    back in 1998 to 2001, does not put the Rothstein firm
25    off limits in any case in which Mr. Duran might be a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5524

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56

 1  witness.  They're not substantially related.

 2          And what the Government is doing here is

 3  asking this Court to knock Mr. Lowry off, to

 4  disqualify him as Mr. Baca's counsel three weeks

 5  before trial.  Mr. Baca has a Sixth Amendment right

 6  to the effective assistance of counsel.  And the

 7  Government is seeking to invade that right, to deny

 8  him of that right based on speculation, and not

 9  credible testimony by Mr. Duran.

10          I mean, it's clear that Mr. Duran is doing

11  what he thinks he needs to do to win the Government's

12  favor, having absconded and now gotten himself in

13  trouble with them.

14          So we have on the one hand, you know, one

15  of the most respected members of the defense

16  community here in New Mexico, Mr. Donatelli --

17          THE COURT:  Let me do this:  I don't want

18  to rush us on this.  I don't want to rush you or me

19  on this.  But I do need to let Ms. Bean have a break.

20  And it will give me a little bit of time to continue

21  to read your document that you filed last night.

22          So let's take a break now.  We'll be in

23  recess for about 15 minutes, then we'll hear it.

24          (The Court stood in recess.)

25          THE COURT:  All right.  Let's go back on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 5525

 1    the record.  Looks like to me all defendants have a

 2    counsel.  Check around, look around, make sure your

 3    co-defendants have a counsel.

 4            All right.  Ms. Duncan, if you wish to

 5    continue your response to the Government's motion.

 6            MS. DUNCAN:  Thank you, Your Honor.

 7            Your Honor, just before I finish my

 8    argument as an evidentiary matter, Mr. Lowry

 9    mentioned during his argument that he didn't join the

10    Rothstein Firm until 2003.  And that at the time

11    Mr. Duran is claiming to have seen him in the firm

12    and sitting with Mr. Donatelli in the courtroom, he

13    was clerking with Chief Judge Parker.  I don't know

14    if we could add that to the record as a proffer, or

15    have Mr. Lowry testify.  If the Court has a

16    preference, if the Government has a preference --

17            THE COURT:  Do you have any problem with me

18    just taking notice of that statement, Mr. Castellano?

19            MR. CASTELLANO:  Your Honor, Mr. Lowry is

20    an officer of the court.  I think the Court can take

21    that.

22            THE COURT:  All right.  Unless there is

23    some objection to that, the Court will add that to

24    the record.

25            MS. DUNCAN:  The other fact that I think is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5526

1    relevant to this argument that Mr. Lowry can provide

2    to the Court is that he's never met Mr. Duran, either

3    in 2002, 2003, or otherwise.  I don't know if you can

4    do the same thing, as an officer of the court for

5    Mr. Lowry?

6              THE COURT:  Can I accept that and add to

7    the record that that's Mr. Lowry's representation to

8    the Court?

9              MR. CASTELLANO:  That's fine, Your Honor.

10             THE COURT:  All right.  Any objection?

11   That will be added to the record as well.

12             MS. DUNCAN:  Thank you, Your Honor.

13             And I'll be brief.  As you see in my

14   letter -- and Mr. Donatelli -- if the Court wanted to

15   speak with him -- said that he would be available

16   this week either by phone, or if the Court wanted him

17   to, he would be willing to come and talk to the

18   Court.  But given his consistency in his statements

19   to me, and his reputation as an officer of the court,

20   and also as one of the most ethical lawyers in New

21   Mexico, I can tell you that in every conversation

22   I've had with him since we first learned of the

23   Donatelli firm's representation of Duran in 2016,

24   that he has been clear that there was no conflict.

25             You know -- and as I was saying before the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5527

```
 1    break, you contrast that with Mr. Duran, who has made
 2    several demonstrably false statements on the stand,
 3    and is in trouble with the Government right now,
 4    having absconded, he claims that it was just out of
 5    his own concern for the conflict he raised it last
 6    week to discuss it with the prosecutors.  And we know
 7    that's not true, given that the prosecutors filed a
 8    motion to determine this conflict.  And the Court,
 9    itself, appointed counsel for Mr. Duran last month.
10    And the only reason we didn't hear this last month is
11    because Mr. Duran absconded.
12           So the bottom line is, Your Honor,
13    everything -- there is nothing new.  We've known
14    since this issue first came up that the Donatelli
15    firm represented Mr. Duran in his lawsuit against
16    Wackenhut; that that lawsuit overlapped the criminal
17    case; that Mr. Donatelli was relying on the criminal
18    case to establish liability for the civil case; and
19    that both of those cases were over in 2002, before
20    Mr. Lowry joined the Rothstein firm, and before
21    Mr. Duran began allegedly associating with the SNM in
22    2005.
23           So using that objective standard, even a
24    subjective standard, there is no information that was
25    disclosed that would cause a conflict in this case,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5528

60

```
 1   given the disconnect between that lawsuit and the
 2   present litigation.
 3           And, as I said earlier, Mr. Baca -- he has
 4   a Sixth Amendment right to counsel.  We're three
 5   weeks away from trial.  The Government's effort to
 6   kick Mr. Lowry off the case at this point is
 7   unconscionable.
 8           And when the Court does its colloquy with
 9   Mr. Baca, Mr. Baca will waive any conflict.  He very
10   much wants Mr. Lowry to be his counsel at trial with
11   me.  And any concerns that the Court may have about
12   the conflict are remedied by our solution of I will
13   cross-examine Mr. Duran, as I have done today.
14           Thank you.
15           THE COURT:  All right.  Thank you, Ms.
16   Duncan.
17           I think I've read enough during the break,
18   the response that Mr. Baca filed last night, so I'm
19   going to go ahead and do a colloquy here at this
20   point, so that, if anybody needs to do anything
21   further as far as arguments, they'll be able to do
22   so.
23           So, Mr. Baca, I'm going to ask you to
24   stand, and I'm going to ask you some questions.  I'm
25   sure your counsel has talked to you a little bit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5529

```
1    about today and what may take place.  So you're
2    prepared for this.  Is this correct?
3              THE DEFENDANT:  That's correct.
4              THE COURT:  All right.  Mr. Baca, do you
5    understand that you have a right to a conflict-free
6    counsel, and that is a counsel that doesn't owe any
7    obligations, loyalties, duties to anyone else other
8    than to you in this case?
9              THE DEFENDANT:  I understand that.
10             THE COURT:  And do you understand the facts
11   surrounding the Rothstein's firm, Mr. Donatelli's
12   representation, previous representations of Mr. Eric
13   Duran, that it was in -- and this is your counsel's
14   position that it's unrelated -- I've yet to make that
15   determination, but they made a statement that it's
16   unrelated.  And you listened to us on December 7 and
17   today about the circumstances of that.  Do you think
18   you understand that prior case and the Rothstein's --
19   Mr. Donatelli's representation of Mr. Duran?
20             THE DEFENDANT:  I do, Your Honor.
21             THE COURT:  And do you understand that Mr.
22   Lowry, as a part of that Rothstein Firm, may have
23   duties of loyalty stemming from the Rothstein firm's
24   previous representation of Mr. Duran?  Do you know
25   they may have some ongoing duties of loyalty to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5530

```
 1    Mr. Duran?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  And do you understand that Mr.

 4    Donatelli's and the Rothstein's duties to Mr. Duran

 5    may impact upon Mr. Lowry's representation of you;

 6    that there may be something that comes up that Mr.

 7    Donatelli is not presently remembering; he may have

 8    gotten some pertinent information that he learned

 9    during the course of his representation, the

10    Rothstein Firm's representation of Mr. Duran; do you

11    understand that something could come up that may

12    impact the Rothstein's firm representation of you?

13              THE DEFENDANT:  I do, Your Honor.

14              THE COURT:  And do you understand that

15    there is a risk that Mr. Lowry and his firm may have

16    to choose between their duty of loyalty to you and

17    duty of the loyalty to Mr. Duran, and, you know,

18    there may be an impact upon Mr. Lowry's zealous

19    advocacy for you?

20              THE DEFENDANT:  I understand.

21              THE COURT:  If -- and this is already, I

22    guess, happened -- I'm not as informed or

23    knowledgeable about what Mr. Duran is going to say,

24    as maybe you have -- but if he's going to cooperate

25    and testify -- you may know what he's going to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5531

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5532

1   saying better than I do -- Mr. Lowry and Ms. Duncan

2   are going to be forced to cross-examine Mr. Duran.

3   And Mr. Lowry's duty of loyalty, through his firm, to

4   Mr. Duran may affect their performance in some way

5   that I can't fully anticipate at the moment.  But it

6   could.  Do you understand that possibility?

7              THE DEFENDANT:  I do understand.

8              THE COURT:  Additionally, the Rothstein's

9   firm, and Mr. Lowry's duties to Mr. Duran through Mr.

10   Donatelli and his firm may affect trial strategies,

11   including arguments, including relative culpability

12   between the defendants here.  Do you understand that

13   there could be an impact there?

14              THE DEFENDANT:  I do, Your Honor.

15              THE COURT:  I'm going to have you look at a

16   waiver.  Did you look at a written waiver,

17   Ms. Duncan, Mr. Lowry?

18              MS. DUNCAN:  Your Honor, we have not seen

19   the waiver.

20              THE COURT:  I'm going to have Ms.

21   Standridge hand you one that I used in another case.

22   And I'll ask you to work one up, and to show it to

23   the Court and show it to Mr. Baca and Mr. Lowry as

24   well.

25              So, Mr. Baca, when you review the final



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    product of this, I'll be asking you some further

2    questions about whether you reviewed it and you're

3    ready to sign it after you've been fully advised,

4    particularly in this matter by Ms. Duncan.  So do you

5    understand what is going to take place from here on

6    out?

7                THE DEFENDANT:  I do, Your Honor.

8                THE COURT:  Knowing that a conflict may

9    arise in the future and the risk associated with such

10   a conflict, do you still wish to waive that conflict

11   and continue to have Mr. Lowry and the Rothstein Firm

12   as your attorney in this case?

13               THE DEFENDANT:  I do wish to waive.

14               THE COURT:  All right.  So we'll prepare

15   that written document.  We'll all take a look at it.

16   And Ms. Duncan will go over it with you.

17               All right.  Anything else you want to say

18   on this issue, Mr. Baca, to the Court?

19               THE DEFENDANT:  No, I'm fine.

20               THE COURT:  All right.  Thank you, Mr.

21   Baca.

22               THE DEFENDANT:  Thank you.

23               THE COURT:  Is there anyone else that

24   wishes to comment on the Government's motion?

25               All right.  Mr. Del Valle, do you have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5533

```
 1    anything you wish to say on behalf of Mr. Duran?

 2              MR. DEL VALLE:  No, Your Honor.

 3              THE COURT:  All right.  Mr. Castellano, do

 4    you have anything further you wish to say on this

 5    motion?

 6              MR. CASTELLANO:  No, Your Honor.

 7              THE COURT:  All right.  Well, I'm still

 8    where I was in December when I first had the issue,

 9    that I'm not convinced that there is the same

10    conflict or dispute that caused me to have problems

11    with Mr. Davis' representation.  So I'm inclined to

12    think that, A, there is not a violation or any

13    conflict that causes a conflict here because it's not

14    the same subject matter.

15              Secondly, I think the Tenth Circuit in

16    Winkle has indicated that if Ms. Duncan handles the

17    cross-examination of Mr. Duran, that may solve any

18    sort of problems.

19              So probably what I'll do is I'll expedite

20    some looking at this.  I should have said at the

21    beginning, to let y'all know what I'm working on,

22    given that issue that kind arose at the end of the

23    hearing on the last day we were together in December,

24    there wasn't really a clear vehicle to put that issue

25    in.  I decided that of all the things that I need to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5534

1   work on, that probably is the murkiest.  And so I

2   wanted to go in and get some clarity for myself on

3   these evidentiary issues going into trial.

4           I chose as the vehicle the James motion.

5   So, while I don't think there was a lot of dispute

6   about the James, it seemed to have arisen in the

7   James motion, either Mr. Perez' or Mr. Baca's or Mr.

8   Sanchez' or Mr. Herrera's.  Those seemed to be the

9   places it was coming up with the testimony we were

10  getting from the cooperating witnesses.  So I've

11  chosen to work on that.  I'm going to put that aside.

12  I'm going to try to reach an answer here.  So you're

13  probably not going to get any full opinion, but maybe

14  you'll get an oral ruling from me before we get out

15  of here this week.  But I'm inclined to not

16  disqualify the firm or Mr. Lowry.  So that's where I

17  am at the present time on that motion.

18          All right.  I think the next thing we need

19  to do is to take up the conflict and waiver issues as

20  to Mr. Garcia.  And, of course, that's a little bit

21  different situation.

22          I understand that this is unopposed by the

23  Government, and by everybody else.  So I just want to

24  get a colloquy with Mr. Garcia that he doesn't have

25  any problem with Ms. Sirignano representing him in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    this matter despite some involvement at the U.S.

2    Attorney's Office on some issues.  Anybody want to

3    say anything on this first before we deal with this?

4    Ms. Sirignano?

5              MS. SIRIGNANO:  No, Your Honor.  It's all

6    contained in the pleading.

7              THE COURT:  All right.  How about you, Mr.

8    Castellano?  Ms. Armijo?  Anything you want to say?

9              MS. ARMIJO:  No, Your Honor.

10             THE COURT:  Anybody else have any issue on

11   this?

12             All right.  Mr. Garcia, if you'll stand,

13   I'm going to ask you a few questions.  Again, they're

14   very similar to what I've just asked Mr. Baca.  But

15   you've been listening today, and of course over the

16   course of these hearings.  You understand that you're

17   entitled, and that you have a right to a

18   conflict-free counsel?

19             THE DEFENDANT:  Yes.

20             THE COURT:  All right.  And I won't go into

21   as much detail as I have in others, but you

22   understand you have the right to an attorney that

23   represents only you and your interests, and is not

24   conflicted in any way with loyalty to anybody else?

25             THE DEFENDANT:  Yes, Your Honor, I do.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5536

```
 1              THE COURT:  And do you understand the facts
 2    surrounding Ms. Sirignano's previous representation
 3    of the United States, by being an Assistant United
 4    States Attorney, and her involvement in anything
 5    related to SNM?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  All right.  Ms. Sirignano,
 8    anything you want to add to this?  I'm sure you've
 9    explained to Mr. Garcia your involvement.  But
10    anything you want to put on the record so that it's
11    clear that he understands what your involvement was?
12              MS. SIRIGNANO:  Your Honor, yes.  I -- Mr.
13    Adams advised him of what my involvement was, and I
14    did as well, in getting that pen register back in, I
15    think it was 2005.  And he understands what limited
16    involvement I had, and that I wasn't working in that
17    investigation in any way other than getting the
18    magistrate judge's signature on that trap and trace
19    order.  And while we don't believe there is a
20    conflict, he's agreed to waive any conflicts, after
21    me and Mr. Adams spoke with Mr. Garcia.
22              THE COURT:  All right.  Mr. Garcia, do you
23    understand that Ms. Sirignano, because she
24    represented the Government at one time, may have some
25    duties of loyalty stemming from her previous
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5537

```
 1    representation of the United States?  There may be
 2    things that she worked on there that she can never
 3    reveal to anybody.  Do you understand that?
 4               THE DEFENDANT:  Yes.
 5               THE COURT:  And do you understand that Ms.
 6    Sirignano's duties to the United States may -- I
 7    can't say how they would -- but they may impact --
 8    something might come up about her representation of
 9    you; should she all of a sudden recall some pertinent
10    information that she learned during the time that she
11    represented the United States, and was sitting over
12    at that table.  Do you understand that could happen?
13               THE DEFENDANT:  Yes, I do.
14               THE COURT:  Do you understand that there is
15    a risk that Ms. Sirignano will have to choose at that
16    point, or some other point, between her duty of
17    loyalty to you and her duty to the United States, and
18    her duty to zealously advocate for you?  Do you
19    understand that that risk can pop up at some point?
20               THE DEFENDANT:  Yes.
21               THE COURT:  And if Ms. Sirignano chooses --
22    you know, something could come up with somebody that
23    cooperates, somebody that's testifying, she may be
24    required to cross-examine some people that she can't
25    predict at the present time, and her duty of loyalty
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5538

```
 1    to you, and then to the United States, may affect her
 2    performance.  Do you understand you run a risk there?
 3                THE DEFENDANT:  Yes.
 4                THE COURT:  Additionally, Ms. Sirignano's
 5    duties to the United States at some point may affect
 6    trial strategies, including arguments regarding
 7    relative culpability with all the people that's in
 8    the room.  There is maybe something that pops up
 9    that, all of a sudden is a problem, given that she
10    was an assistant United States Attorney at one time.
11    Do you understand that?
12                THE DEFENDANT:  Yes.
13                THE COURT:  I'm going to ask you to execute
14    a similar waiver.  So I'll ask you to get a copy of
15    that, Ms. Sirignano, and you and Mr. Adams -- and I'd
16    like particularly Mr. Adams to be the one that
17    advises Mr. Garcia, and goes over it with him.  And
18    then if y'all present it to the Court, and at that
19    time I'll probably ask you some additional questions,
20    Mr. Garcia, to make sure that you reviewed it.  But
21    do you understand how we're going to proceed here?
22                THE DEFENDANT:  Yes, I do.
23                THE COURT:  All right.  Knowing that a
24    conflict may arise in the future and the risks
25    associated with such a conflict, Mr. Garcia, do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5539

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 71

1    still wish to waive any conflict Ms. Sirignano has

2    and continue with Ms. Sirignano as your attorney?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  All right.  And I understand

5    the Government doesn't oppose Ms. Sirignano

6    continuing to be an attorney on this case?

7              MS. ARMIJO:  No, Your Honor.

8              THE COURT:  All right.  Thank you, Mr.

9    Garcia.

10             Ms. Sirignano.

11             MS. SIRIGNANO:  Thank you, Your Honor.

12             THE COURT:  One other question I want to

13   ask Mr. Castellano.  As I work on Mr. Lowry's issues,

14   does the United States think that Mr. Lowry should be

15   conflicted out of the case, or where are you on the

16   issue, now that we've explored it with now

17   evidentiary testimony and a record and those sort of

18   things?

19             MR. CASTELLANO:  Your Honor, I don't know

20   if I can say that we think he should be conflicted

21   off the case.  What we wanted to do was make a

22   record, make sure we had a clean record before

23   proceeding to trial in this matter.

24             THE COURT:  All right.  Fair enough.  Thank

25   you, Mr. Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5541

```
 1              All right.  The next issue then -- and I'll
 2    accept the waiver after we complete the paperwork on
 3    it; make sure that Mr. Garcia has had a chance to
 4    think about it.  The same way with you, Mr. Baca.
 5    I'm inclined to accept your waiver as well.  But
 6    we'll nail that down after you've had a chance to
 7    look at the paperwork.
 8              On the -- Mr. Jewkes and Mr. Blackburn, on
 9    that issue, do we want to wait until Mr. Blackburn is
10    here, or do you want to proceed?
11              MR. DAVIDSON:  I think that would be
12    better, Your Honor.
13              THE COURT:  Do you want to wait?  Do you
14    agree with that, Mr. Jewkes?
15              MR. JEWKES:  Yes, sir, I do.
16              THE COURT:  All right.  So we'll wait until
17    Mr. Blackburn is here and then we can maybe make a
18    more robust record on that.  I still want you to be
19    the one that's primarily advising the defendant on
20    this.  But at the same time, it might make sense to
21    have Mr. Blackburn here.
22              MR. JEWKES:  We believe that will be
23    Wednesday.
24              THE COURT:  Is that when Mr. Blackburn is
25    going to be here?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 73542

```
 1              MR. DAVIDSON:  Your Honor, I don't think
 2   he's going to be here today, tomorrow, or Wednesday.
 3   But if we go on to Thursday, he will be here.
 4              THE COURT:  Okay.  Well, let's see how it
 5   goes.  We probably won't get out of here without
 6   doing it.  So, if we look like we're going to wrap up
 7   things on Wednesday, I may go ahead and just do it.
 8              On the other hand, if it's something that
 9   we're going to be here on Thursday, maybe we can wait
10   till Thursday to do it.  Does that create any
11   problems for you, Mr. Jewkes?
12              MR. JEWKES:  No, problems, Your Honor.
13              THE COURT:  All right.  So we'll hold off
14   on that.
15              Ms. Wild, remind me, I didn't at the
16   beginning of the hearing say anything about who else
17   is on the phone.  I know that Ms. Fox-Young is on the
18   phone, Ms. Wild is on the phone.  Anyone else on the
19   phone?
20              MS. STRICKLAND:  This is Margaret
21   Strickland.  I'm on the phone.
22              THE COURT:  Okay.  Ms. Strickland, good
23   morning to you.
24              MS. HARBOUR-VALDEZ:  And our paralegal,
25   Raquel Rodriguez, is on the phone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5542

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 74

 1              MS. RODRIGUEZ:  Yes, Your Honor.  This is
 2    Raquel Rodriguez.  I'm on the line.
 3              THE COURT:  All right.  Good morning to
 4    you.
 5              All right.  I understand that the next
 6    issue we take up is Mr. Baca's motion to suppress
 7    coerced statements, and anticipated testimony of
 8    cooperating witnesses.  So this is an evidentiary
 9    hearing.  Do you want to make some preliminary
10    remarks, Mr. Lowry?  Ms. Duncan?
11              MS. DUNCAN:  I'll be very brief, Your
12    Honor.  One thing we discussed with the Government
13    this morning is we have two motions, 1325 and 1328.
14    One is the motion to suppress statements.  The other
15    is a motion to suppress for selective recordings.
16              THE COURT:  Do you want to take these up
17    together?
18              MS. DUNCAN:  I think so for the purposes of
19    witnesses, rather than calling people back.  So I'll
20    be arguing the motion to suppress coerced statements,
21    and Mr. Lowry will be arguing the motion to suppress
22    the selective recordings.
23              THE COURT:  All right.  Is that agreeable
24    to the Government?  Can we just take these two
25    motions up together?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5543

1          MS. ARMIJO:  Yes, Your Honor.

2          THE COURT:  All right.  Anything you want

3   to say, then, in support of both motions?

4          MS. DUNCAN:  Your Honor, so I will argue on

5   the motion for the coerced statements.  And we

6   anticipate having testimony from Mr. Duran; also

7   Sergio Sapien, who is part of the STIU; Chris Cupit,

8   also STIU; and Edward Urtiaga, also STIU.

9          So the basis of our motion is, at the time

10  that Eric Duran decided to provide information to the

11  Government, he had incurred two disciplinary

12  infractions.  The first was possession of a shank,

13  which is a Grade A violation in the Department of

14  Corrections, and can result not only in criminal

15  charges, and in the State of New Mexico possession of

16  a shank by a prisoner is a second degree felony that

17  carries a presumptive sentence of nine years.  But it

18  also, as a Grade A violation, could result in the

19  loss of all of his good time and all of his

20  privileges.

21          A week later, he picks up a second level A

22  violation.  This time because he threatened to kill a

23  correctional officer, Edward Urtiaga, threatening to

24  go to his home, telling Officer Urtiaga that he knew

25  where he lived, knew what car he drove, and that he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5544

```
 1    was going to harm him.  Again, this was a serious
 2    violation that could result in a loss of all good
 3    time and privileges and also criminal prosecution.
 4              MR. BECK:  Your Honor, I don't want to
 5    interrupt, but Mr. Duran is in the room, and he will
 6    be a witness --
 7              MS. DUNCAN:  That's a good point.
 8              MR. BECK:  The rule to exclude is in force,
 9    so I --
10              MS. DUNCAN:  Thank you, Mr. Beck.  I
11    probably would reserve argument, Your Honor, until
12    Mr. Duran is no longer in the room.
13              THE COURT:  All right.  Thank you, Ms.
14    Duncan.
15              Anything the Government wants to say in
16    advance, or do you want to just go ahead and go to
17    testimony?
18              MR. CASTELLANO:  I think we can go to the
19    testimony, Your Honor.
20              If you'll remember, Agent Brusuelas, who
21    already testified, testified that she was contacted
22    before these incidents occurred.  So I'll just remind
23    the Court of that.  But I think we can continue with
24    the testimony.
25              THE COURT:  All right.  Before I do,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5545

1    Mr. Jewkes, I'm going to have Ms. Standridge hand to

2    you, so that maybe we're a little bit ahead of the

3    game, a form of waiver I brought down from

4    Albuquerque that you can review with Mr. Sanchez.  I

5    understood you were going to waive any conflict?

6            MR. JEWKES:  That is correct, Your Honor.

7            THE COURT:  So that's the form -- you might

8    take a look at it.  I'm not wedded to it, but I think

9    something like that, that you review with Mr. Sanchez

10   and he sign, and I can discuss it when we do a

11   colloquy with him later in the week.  All right.

12           All right.  Ms. Armijo, Mr. Beck, if y'all

13   want to call your first witness.

14           MS. ARMIJO:  We would call Eric Duran.

15           THE COURT:  All right.  Mr. Duran, if

16   you'll come up and take the stand.  Because we are

17   doing a different proceeding here, I'm going to have

18   Ms. Standridge swear you in.

19               ERIC PRESTON DURAN,

20        after having been first duly sworn under oath,

21        was questioned and testified as follows:

22               DIRECT EXAMINATION

23           THE CLERK:  Please be seated, and state

24   your name for the record.

25           THE WITNESS:  Eric Duran.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5547

```
 1              THE COURT:  Mr. Duran.  Ms. Armijo.

 2              MS. ARMIJO:  Thank you, Your Honor.

 3    BY MS. ARMIJO:

 4         Q.   Mr. Duran, just for the record, how do you

 5    spell your name?

 6         A.   E-R-I-C.  D-U-R-A-N.

 7         Q.   And Mr. Duran, I'm going to go back a

 8    little bit in time for you.  Are you aware -- let me

 9    ask a couple background questions.  Are you aware of

10    what the SNM is?

11         A.   Correct.

12         Q.   And what is it?

13         A.   Prison gang.

14         Q.   Are you a member of that prison gang?

15         A.   Yes -- was.

16         Q.   When did you become a member?

17         A.   2005.

18         Q.   Now, I'm going to jump forward, and to

19    approximately 2014, 2015 -- well, let's start 2014.

20    Were you still a member at that time?

21         A.   Yes.

22         Q.   At some point in time, did you decide to no

23    longer be an active SNM Gang member?

24         A.   Yes.

25         Q.   Can you tell us about when that you made
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5547

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79

1  that decision?

2  　　　A.　Prior to getting a report.

3  　　　Q.　Okay.

4  　　　A.　February -- we'll say February 2015.

5  　　　Q.　Okay.  So was it prior to February of 2015?

6  　　　A.　Correct.

7  　　　Q.　And what happened in February 2015 that

8  we're using that as a basis for time decisions?

9  　　　A.　Nothing really happened.  I just got tired

10 of all the different chaos within the gang, and was

11 just deciding on who I was going to go to with the

12 information I had.

13 　　　Q.　Okay.  I guess my question -- it was

14 probably a bad question -- was, you say prior to

15 February of 2015.  Did something happen in February

16 of 2015, that you're using that start label that,

17 before this, I decided I was not going to be an SNM

18 Gang member?

19 　　　A.　Did something happen?

20 　　　Q.　Yes.  What happened in 2015, February?

21 What happened with you and SNM, if anything?

22 　　　A.　Nothing really happened, no, nothing.

23 　　　Q.　Did you have some disciplinary issues that

24 occurred in February of 2015?

25 　　　A.　Disciplinary issues arose, but it wasn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5548

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 80549

```
 1   the reason of my cooperation.
 2        Q.   Okay.  So, in February 2015, did you have
 3   some disciplinary issues?
 4        A.   I got a disciplinary report -- well,
 5   actually, I didn't get the disciplinary report before
 6   I came forward, no.
 7        Q.   Okay.  But were there some things that
 8   occurred in February of 2015, that later on you
 9   became aware you were facing disciplinary charges?
10        A.   A shank, yeah.
11        Q.   Okay.  Now, do you remember meeting with
12   the FBI at some point in February of 2015?
13        A.   Right, I did.
14        Q.   Do you remember that agent's name or if it
15   was a man or a woman?
16        A.   It was a woman.
17        Q.   Do you even remember her name?
18        A.   Katie.
19        Q.   Was that the first time that you had spoken
20   to an FBI agent about potential cooperation?
21        A.   Yes.
22        Q.   Prior to that, did you ever speak to
23   anybody about leaving the gang or cooperating?
24        A.   To STIU.
25        Q.   Okay.  What is STIU?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5549

 1          A.    Security Threat Intelligence Unit.

 2          Q.    And where, at this time period, are you

 3     being housed within the Corrections Department?

 4          A.    PNM 3A pod.

 5          Q.    Is that the North PNM or the South PNM?

 6          A.    North.

 7          Q.    And who did you initially speak to about

 8     potential cooperation?

 9          A.    I initially spoke to Adam Vigil, and asked

10     him to speak to Sapien.  And that was it.  Just

11     Sapien, and Cupit came with him.

12          Q.    Okay.  You mentioned a couple of names.

13     Who is Adam Vigil?

14          A.    Adam Vigil is the gang coordinator, the

15     STIU coordinator, at the North.

16          Q.    And did you have -- if you recall, what

17     were the circumstances of your contact with

18     Mr. Vigil?  I mean, how was it that you came to talk

19     to him?

20          A.    During the interviews -- at this point, I

21     had no knowledge that they had even found a shank in

22     my cell.  And I had already requested to talk to

23     Sapien.

24          Q.    Okay.  And I understand that.  But I'm just

25     trying to get to what the circumstances were with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 82

```
 1   Mr. Vigil that you had a conversation.  Do they
 2   routinely come and talk to SNM members and interview
 3   you?
 4        A.   Yeah.  When they do shakedowns, it's their
 5   routine that they usually interview us before they
 6   put us back in our cell.
 7        Q.   Okay.  So at some point you had a
 8   conversation with Mr. Vigil?
 9        A.   Correct.
10        Q.   And who was it that you requested to speak
11   to?
12        A.   Sapien.
13        Q.   Who is Sapien?
14        A.   He's a Captain of STIU at the North
15   facility.
16        Q.   And why is it that you chose Sapien, as
17   opposed to Mr. Vigil?
18        A.   I just felt like the information that I was
19   going to give him was -- he was trustworthy.  And I
20   didn't really trust nobody else.
21        Q.   Okay.  Is it fair to say that you trusted
22   Captain Sapien, and that's the person that you wanted
23   to deal with?
24        A.   Correct.
25        Q.   Okay.  And at some point, did you talk to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5551

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83552

```
 1    Captain Sapien?

 2         A.    Probably like an hour later, after

 3    requesting him.

 4         Q.    Okay.  And you indicated that -- you said

 5    Cupit was there?

 6         A.    Cupit came with him, yes.

 7         Q.    And who is Cupit?

 8         A.    Cupit is the Sergeant of the STIU.

 9         Q.    And what did you inform them?

10         A.    I informed them that I had information and

11    I wanted to talk to the FBI.

12         Q.    And why did you make that decision?

13         A.    Because I felt like the information I had

14    was beyond their control.

15         Q.    Okay.  I guess -- what was the basis for

16    you to decide to cooperate?

17         A.    I had been, you know, over in transition,

18    deciding about how I was going to go about

19    cooperating, and do it in a way that would keep me

20    safe, and at the same time, work with someone that I

21    could trust within the facility.

22         Q.    Now, you mentioned that you were thinking

23    about ways to keep you safe.  Was that a concern of

24    yours?

25         A.    It was.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5552

```
 1          Q.   And why is that?
 2          A.   Because the SNM is known to, you know,
 3     murder people for paperwork, or telling.
 4          Q.   What is paperwork?
 5          A.   Paperwork is information that's given by an
 6     individual that's against somebody else.
 7          Q.   Cooperation?
 8          A.   Cooperation.
 9          Q.   So now, when you made that decision, and
10     you spoke to Captain Sapien, was that before the
11     shakedown in February of 2015, that a shank was
12     found?
13          A.   That was actually the moment I decided
14     would be the best time.  Since everybody was being
15     interviewed, you know, everybody was talking to the
16     STIU, so there wouldn't be no -- like no one would
17     really raise a flag, if I was to do what I did.
18          Q.   Okay.  Had you made the decision before
19     then, to talk to them?
20          A.   I did.  I had already wrote letters to
21     Sapien before shakedowns had even occurred.
22          Q.   Okay.  Let's talk a little bit about that.
23     You wrote a letter to Sapien?
24          A.   Right.
25          Q.   Okay.  And why did you write him a letter?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5553

1     A.   Two individuals were planning on attacking

2  another individual within the gang.  And I just

3  didn't want to be involved in it no more.

4     Q.   Okay.  And so did you write him a letter

5  about that?

6     A.   I did.  But I hadn't sent it at that time,

7  because we got shooken down, like the day -- the next

8  day.

9     Q.   So after you indicated that you wanted to

10 cooperate, was it after that that you spoke to FBI

11 Agent Katie Brusuelas?

12    A.   When I spoke to Sapien, then a week later

13 maybe they took me to see the FBI.

14    Q.   So -- and when you spoke to the FBI, were

15 you still the same mindset, that you wanted to

16 cooperate?

17    A.   I was, fully.

18    Q.   Did anybody make any threats against you to

19 get you to cooperate with the government?  And when I

20 say "government," I just mean in general, either FBI

21 or Corrections, just any type of law enforcement?

22 Did anybody make any threats against you?

23    A.   No.

24    Q.   Were you coerced in any way?

25    A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5554

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5555

1        Q.   Were you feeling any sort of duress, like

2   feeling that you had to do this for any reason, and

3   you felt pressure to do it, other than your own wish

4   to do it?

5        A.   No.

6        Q.   Now, at some point, as part of your

7   cooperation, did you agree -- and I guess I should

8   make this clear -- at this time, were you an inmate

9   within the New Mexico Corrections Department?

10       A.   Correct.

11       Q.   And up from 2014, through all of 2015, were

12  you an inmate?

13       A.   Correct.

14       Q.   At some point, for part of your

15  cooperation, did you agree to make recordings of

16  other SNM Gang members?

17       A.   Correct.

18       Q.   And what was the purpose of the recordings?

19  Do you recall?

20       A.   To review information of plans they had to

21  assassinate the Secretary of Corrections and Dwayne

22  Santistevan, the head coordinator of STIU.

23       Q.   And how were you aware of that conspiracy?

24       A.   I received plans in 2013 by Mr. Baca to do

25  so.

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5556

```
 1          Q.   Okay, to do what?
 2          A.   To assassinate the Secretary of
 3    Corrections.
 4          Q.   Now, at some point in time, were you placed
 5    next to -- I'm going to be specific.  At some point
 6    in 2015, were you placed next to Mr. Baca?
 7          A.   Yes.
 8          Q.   And did you use a recording device that was
 9    provided to you to record conversations?
10          A.   I used a recording device and a cellphone.
11          Q.   Okay.  I was going to talk about the
12    cellphone next.  So you were given a recording device
13    to use?
14          A.   Correct.
15          Q.   And I don't want you to give specifics of
16    what it looked like, but can you at least tell us
17    whether or not it was a recording device that turned
18    off and on?
19          A.   It was a recording device that turned off
20    and on, and worked.
21          Q.   And who had control of that?
22          A.   I did.
23          Q.   Now, how was it powered?  In other words,
24    was it electrical, you plugged it into a wall?  Or
25    was it battery operated?  How is it that it worked?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5556

1    A.    It was battery operated.

2    Q.    Okay.  And were you given any instructions

3  with the recording device, as far as keeping it

4  charged up, so to speak, for usage?

5    A.    That was really no way to keep it charged

6  up, just not keeping it on all the time.

7    Q.    Were there any steps that you took in order

8  to preserve battery life?

9    A.    I just -- I mean, I played it when it

10  needed to be played.

11    Q.    Okay.  So it wasn't turned on all the time?

12    A.    It wasn't on when they were telling me

13  their life story, about how they met up with some

14  girl at a club.

15    Q.    Okay.  And so, when you say "they," did you

16  use it on more than one person, on other people other

17  than Mr. Baca?

18    A.    Yes.

19    Q.    And when you were using it, where were you?

20    A.    Under the bunk, under the bed.

21    Q.    In your cell?

22    A.    Correct.

23    Q.    And when you mentioned that you -- and I'm

24  going to be specific about Mr. Baca, because this is

25  his motion.  When you were using it with Mr. Baca,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5557

```
 1   where was he?
 2        A.   On the other side of the wall.
 3        Q.   And could you talk to each other?
 4        A.   Correct.
 5        Q.   And were all of your conversations with Mr.
 6   Baca recorded?
 7        A.   The majority of my conversations with Mr.
 8   Baca were recorded, because he spoke relevant
 9   information.
10        Q.   Okay.  What decision, if any, for you to
11   turn on or to not turn on a recording device with Mr.
12   Baca was it that you made?
13        A.   When he strayed from conversation of
14   relevant information.
15        Q.   Can you give us an example of that?
16        A.   He could be talking about the hit, and then
17   he can go into talking about his mom.
18        Q.   And, at any point in time -- you said that
19   the majority of the conversations with Mr. Baca was
20   recorded; is that correct?
21        A.   Correct.
22        Q.   Can you think of any conversation with Mr.
23   Baca that was not recorded, that was not, as you
24   would put it about his family and things like that?
25        A.   I don't recall.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   Now, you mentioned that you also had a

 2    cellphone.

 3          A.   Correct.

 4          Q.   And who provided you with that cellphone?

 5          A.   The FBI.

 6          Q.   And were you aware that that cellphone had

 7    any sort of -- well, what was your understanding of

 8    the cellphone as far as recordings?

 9          A.   The cellphone was recording every time I

10    dialed a phone number.

11          Q.   Okay.  And what about text messages?

12          A.   Same thing.

13          Q.   And were you given any instructions, as far

14    as letting other people use that?

15          A.   It was just for my use.

16          Q.   And where would you use it?

17          A.   Where would I -- oh, I would use it in my

18    cell.

19          Q.   And did you have conversations with people

20    obviously not in Corrections?

21          A.   Correct.

22          Q.   At any point in time, did you also have

23    conversations with people, and include Mr. Baca in on

24    those conversations?

25          A.   Correct.  And during those conversations,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 91

1    even though I knew the cellphone was recording, I

2    also used the device that was given to me to record

3    the conversations.

4        Q.   All right.  So in the sense, there may be

5    times when Mr. Baca was being double recorded?

6        A.   He was being double recorded on every

7    device I had.

8        Q.   Now, did you at some point -- for the

9    device recordings, did the batteries have to be

10   changed out?

11       A.   Yeah.

12       Q.   Now, was that something that you could just

13   go, Hey, correctional officer, I need to get

14   batteries for my recording device?

15       A.   No.

16       Q.   Okay.  What sort of -- was that something

17   you were in control of, or did people come to you?

18       A.   Most of the time I would call them, and

19   they would just come switch out devices.

20       Q.   And when you say you would call them, who

21   would you call?

22       A.   I would call STIU Sapien.

23       Q.   Okay.  And the same Captain Sapien that you

24   were talking about earlier?

25       A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 92

```
 1        Q.   Is it fair to say that very few people in

 2   Corrections knew that you had a recording device?

 3        A.   Yeah, very few.

 4             MS. ARMIJO:  If I may just have a moment?

 5             THE COURT:  You may.

 6        Q.   Finally, do you know if you received any

 7   instructions from anybody, either FBI or STIU, as far

 8   as what to record or, you know, whether or not you

 9   should save battery life?  What were the instructions

10   that were given to you?

11        A.   I was given a device one time, and I had

12   left it on and continued to record, and it died.  So

13   I was ending up not able to pick up a lot of the

14   information that I was supposed to be picking up

15   because the battery died.  And that's when I was told

16   by the FBI to try to conserve battery life, to obtain

17   the proper information.

18             MS. ARMIJO:  All right.  Thank you.  I pass

19   the witness.

20             THE COURT:  Thank you, Ms. Armijo.

21             Mr. Lowry, Ms. Duncan, do you want to

22   cross-examine Mr. Duran?

23                      EXAMINATION

24   BY MS. DUNCAN:

25        Q.   You testified on direct that you were a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   member of the SNM beginning in 2005; correct?

 2        A.   Correct.

 3        Q.   You previously denied being a member of the

 4   SNM; correct?

 5        A.   I denied being a member of SNM?

 6        Q.   Yes.

 7        A.   I don't recall that.

 8        Q.   Do you recall having an interview with the

 9   FBI on February 19th of 2015?

10        A.   I do.

11        Q.   And do you remember them asking you whether

12   or not you were a member of the SNM?

13        A.   No.

14        Q.   If I were to show you a partial transcript

15   of that interview, would that refresh your

16   recollection?

17        A.   It may.

18             MS. DUNCAN:  Your Honor, may I approach?

19   This is Government's Exhibit 1.

20             THE COURT:  You may.

21        Q.   If you could look at the first page,

22   it's -- I'm looking at page 1 of that transcript.

23             THE COURT:  Let me ask while he's reviewing

24   it, the Government didn't have any exhibits for this.

25   So when you say "Government's Exhibit 1" --
```



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 5562

 1            MS. ARMIJO:  Your Honor, I believe we had

 2   FBI Agent Katie Brusuelas testify previously in this

 3   hearing, and it was admitted during that hearing.

 4            THE COURT:  Well, that was for a different

 5   motion; correct?

 6            MS. ARMIJO:  No.  Same motion, Your Honor.

 7   We started that because she was here in town, so we

 8   started that when we last met before Christmas.

 9            THE COURT:  All right.

10            MS. ARMIJO:  She testified then.  And I

11   believe we had started it at Government's Exhibit 1

12   at that hearing.

13            THE COURT:  All right.

14   BY MS. DUNCAN:

15       Q.   Have you had an opportunity to review that

16   transcript?

17       A.   Yeah.

18       Q.   Does that refresh your recollection about

19   that conversation?

20       A.   No, it doesn't.

21       Q.   If, in 2015, you told the FBI that you were

22   not a member of the SNM, that would have been a lie;

23   correct?

24            THE COURT:  Well, I'll make the

25   determination whether it's a lie or not.  You can ask

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5563

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 95

5564

 1    if that's not his recollection or those sort of

 2    things.

 3         Q.   So you're now testifying that you were

 4    member of the SNM in 2015; correct?

 5         A.   Excuse me?

 6         Q.   That you were a member of the SNM in 2015?

 7         A.   Correct.

 8         Q.   So, if you told someone that you were not a

 9    member of the SNM in 2015, that would not be true?

10         A.   If I would have, yes.

11         Q.   And in February of 2015, you were being

12    interviewed by FBI agents; correct?

13         A.   Correct.

14         Q.   Federal law enforcement officers; correct?

15         A.   Correct.

16         Q.   Now, you testified about the disciplinary

17    issues that arose in 2015; correct?

18         A.   Correct.

19         Q.   And you told -- when the FBI asked you why

20    you were cooperating, you told them you were

21    cooperating to give back to the community; correct?

22         A.   Correct.

23         Q.   And you told them that you were not in

24    trouble at the time; correct?

25         A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   That most people who cooperate are in
 2   trouble, but that wasn't you, you were doing it out
 3   of the goodness of your heart; correct?
 4        A.   Correct.
 5        Q.   But that was not true; correct?
 6        A.   No.
 7        Q.   February 19th of 2015, you had picked up
 8   two disciplinary write-ups; correct?
 9        A.   At that time I didn't have knowledge that I
10   had reports.
11        Q.   You knew on February 19th of 2015 that they
12   had found a shank in your cell; correct?
13        A.   Correct.
14        Q.   And you knew that it was a violation of the
15   Department of Corrections' regulations for you to
16   have a shank in your cell; correct?
17        A.   Correct.
18        Q.   And that it was a Level A violation;
19   correct?
20        A.   Correct.
21        Q.   And it was also a criminal offense;
22   correct?
23        A.   Correct.
24        Q.   Because you had previously been convicted
25   of possessing a shank?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5565

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5566

```
 1          A.   Correct.
 2          Q.   And you understood that being caught with a
 3     shank meant that you could lose your good time?
 4          A.   Correct.
 5          Q.   You could lose your privileges?
 6          A.   Correct.
 7          Q.   And be put in restrictive housing?
 8          A.   Where I already was, correct.
 9          Q.   The day before you had your interview with
10     the FBI, you had been accused of threatening a
11     correctional officer?
12          A.   Correct.
13          Q.   Edward Urtiaga?
14          A.   Correct.
15          Q.   And you were aware that threatening a
16     correctional officer is a disciplinary violation?
17          A.   Correct.
18          Q.   A Level A violation at that?
19          A.   Correct.
20          Q.   So you could lose all your good time for
21     that?
22          A.   Correct.
23          Q.   You could be put in restrictive housing;
24     correct?
25          A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5566

```
 1          Q.   And lose all your privileges?

 2          A.   Correct.

 3          Q.   And, in fact, you were ultimately

 4   disciplined for that; correct?

 5          A.   For what?

 6          Q.   For threatening Officer Urtiaga?

 7          A.   Correct.

 8          Q.   When you spoke to Adam Vigil, you said that

 9   you did that following the interviews that were done

10   after the shakedown; correct?

11          A.   Correct.

12          Q.   Then you spoke with Mr. Sapien within an

13   hour following that?

14          A.   Correct.

15          Q.   At that time, had you written the letter to

16   Mr. Sapien?

17          A.   I did.

18          Q.   And did you provide him a copy of that

19   letter?

20          A.   No.  I'd didn't have to because I spoke to

21   him.

22          Q.   So what did you do with the letter?

23          A.   Threw it away.

24          Q.   When did you throw it away?

25          A.   When I went back to my cell after I spoke
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5567

```
 1   to Sapien.

 2         Q.   Did you also write a letter to the FBI?

 3         A.   No.

 4         Q.   So there was only one letter?

 5         A.   Correct.

 6         Q.   A letter that you gave to Sapien.

 7              Did you talk to anyone else about your

 8   decision to cooperate with the Government?

 9         A.   No.

10         Q.   Did you discuss it with Jerry Armenta?

11         A.   No.

12         Q.   Did you discuss it with Grace Duran?

13         A.   Eventually.

14         Q.   When you say "eventually," when is that?

15         A.   Maybe like months and months after I was

16   already cooperating.

17         Q.   So tell us about the conversation you had

18   with Sergio Sapien?

19         A.   I just revealed to him the plans that Mr.

20   Baca had to assassinate Mr. Marcantel and

21   Santistevan, and everything that had to do with the

22   murder that happened in Las Cruces.

23         Q.   Now, when you were asked about whether or

24   not Mr. Baca had planned to kill Gregg Marcantel, in

25   February of 2015, you denied that that was the plan;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5568

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100

```
 1    correct?

 2         A.   I what?

 3         Q.   You denied that Mr. Baca had planned to

 4    kill Gregg Marcantel; correct?

 5         A.   No.

 6         Q.   Let me show you -- I'm going back to

 7    Government's Exhibit 1.

 8              MS. DUNCAN:  Your Honor, I have a different

 9    transcript of the same interview that we had done by

10    Bean & Associates.  I've given a copy to the

11    Government.  At this time, I'd like to introduce this

12    as an exhibit.

13              THE COURT:  Is this a duplicate of 1?

14              MS. DUNCAN:  It's not, Your Honor.  So 1 is

15    a partial transcript of this interview, and we had

16    the entire interview transcribed.

17              THE COURT:  Any objection, Ms. Armijo?

18              MS. ARMIJO:  We're not objecting to it.

19              THE COURT:  All right.  Anybody else?

20              All right.  Then Mr. Baca's -- Anthony

21    Baca's exhibit -- is that going to be B?

22              MS. DUNCAN:  Exhibit B, Your Honor.

23              THE COURT:  -- Exhibit B will be admitted

24    into evidence.

25    BY MS. DUNCAN:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5569

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101

```
 1          Q.   If I were to show you a transcript of the
 2    conversation that you had with the FBI on February
 3    19, 2015, might it refresh your recollection of what
 4    you said about the hit on Gregg Marcantel?
 5          A.   Show it to me, yeah.
 6               MS. DUNCAN:  May I approach, Your Honor?
 7               THE COURT:  You may.
 8          Q.   I'm showing you page 45 of Anthony Baca
 9    Exhibit B.  Let us know when you're done reading it.
10    Did that refresh your recollection of what you said
11    about the alleged hit?
12          A.   Yes.  Just misunderstood what I was saying.
13    What I meant was Mr. Baca had more hate towards
14    Santistevan than Marcantel; not that he didn't intend
15    to hit Marcantel.
16          Q.   Let's put it on the monitor so everyone can
17    see.
18               THE COURT:  This is Exhibit B?
19               MS. DUNCAN:  This is Exhibit B, Your Honor,
20    page 45.
21          Q.   So the Unidentified Female says, "And
22    Marcantel, or the hit was only on Santistevan?
23               And you answered, "No, it was just on
24    Santistevan.  But I'm saying he hates Santistevan
25    more than he hates Marcantel."  Correct?  I'm looking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102

```
 1   here.
 2            THE COURT:  Doesn't sound good.  Is that
 3   the noise to --
 4            MR. LOWRY:  A cellphone.
 5            THE COURT:  Oh, that's just a cellphone.
 6            MS. BHALLA:  I think it's his wife's
 7   number, Your Honor.
 8            THE COURT:  No comment.
 9   BY MS. DUNCAN:
10       Q.   Did I read that correctly, Mr. Duran?
11       A.   I can see it correctly, yeah.  It's not
12   what I said, though -- that's not what I meant.
13       Q.   So it's what you said; it's just not what
14   you meant?
15       A.   No.
16       Q.   So you're denying that you said that?
17       A.   The way they put it, it might have been
18   said like that.  But what I meant was the hit was on
19   both of them, but he had more hate towards
20   Santistevan than Marcantel.
21       Q.   So when someone asks you -- I'm not going
22   to argue.  I take that back.
23            In September or early -- yes, September of
24   2014, you filed a lawsuit against Gregg Marcantel;
25   correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5571

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

```
 1          A.    Correct.
 2          Q.    And you filed the lawsuit complaining of
 3     the conditions of your confinement?
 4          A.    Correct.
 5          Q.    That you were under lockdown?
 6          A.    Correct.
 7          Q.    And you were being denied visits with your
 8     family?
 9          A.    Correct.
10          Q.    Phone calls with your family?
11          A.    Correct.
12          Q.    And commissary?
13          A.    Correct.
14          Q.    You also alleged that you were in solitary
15     confinement?
16          A.    Correct.
17          Q.    And that that was having a detrimental
18     effect on your health?
19          A.    Correct.
20          Q.    Is that true?  At the time, were you
21     suffering detrimental effects of solitary
22     confinement?
23          A.    Correct.
24          Q.    Tell us about that.  What does that mean?
25          A.    I believe that was an SNM act.  I wasn't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5572

```
 1    the only participant in that suit.

 2         Q.   So the SNM put you into solitary

 3    confinement?

 4         A.   The SNM filed together.

 5         Q.   You were the only plaintiff, though.

 6         A.   I was the only plaintiff?

 7         Q.   Correct.

 8         A.   Is that -- yeah, if that's what it says,

 9    then I was.

10         Q.   And the conditions of confinement at the

11    time were so intolerable that you filed this

12    complaint; is that right?

13         A.   Correct.

14         Q.   And you were in lockdown; it was a

15    disciplinary status for you and other SNM members

16    following -- or alleged SNM members -- following the

17    Molina murder; correct?

18         A.   Correct.

19         Q.   So being on disciplinary status meant that

20    the conditions of your confinement worsened?

21         A.   I wasn't on disciplinary status.

22         Q.   Well, so pending the investigation, you

23    were on lockdown; correct?

24         A.   Correct.

25         Q.   And if you were on prehearing, like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5573

```
 1    detention for a disciplinary infraction, you'd also

 2    be on lockdown?

 3         A.   Correct.

 4         Q.   And if you were found to have committed a

 5    major violation, then those conditions might continue

 6    for you?

 7         A.   And I wasn't on none of that.

 8         Q.   You were on prehearing detention --

 9         A.   I was just on lockdown.

10         Q.   In 2015, February of 2015, you were on

11    prehearing detention for the shank; correct?

12         A.   Correct.

13         Q.   And that was -- at the time of the

14    altercation between you and Mr. Urtiaga, you were on

15    prehearing detention; correct?

16         A.   Correct.

17         Q.   And you had lost some of your privileges?

18         A.   Correct.

19         Q.   You had lost your personal property;

20    correct?

21         A.   Correct.

22         Q.   You didn't -- you had limited visits;

23    correct?

24         A.   Correct.

25         Q.   And limited phone calls?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5574

```
 1          A.   Correct.

 2          Q.   And, in fact, you were trying to collect

 3     pin numbers of other inmates so that you could call

 4     your family?

 5          A.   I don't recall.

 6          Q.   With respect to the recordings, you said

 7     that the recording devices were battery operated;

 8     correct?

 9          A.   Correct.

10          Q.   What kind of batteries did they use?

11          A.   Triple A.

12          Q.   Were you allowed to have triple As while

13     you were in prison?

14          A.   Not while we were on PHD, no.

15          Q.   Once you were out of PHD, could you have

16     triple A batteries?

17          A.   Correct.

18          Q.   They weren't contraband?

19          A.   Correct.

20          Q.   Did you ever ask for replacement batteries

21     for the recording device?

22          A.   No.

23          Q.   So I know you originally were recording

24     under the instruction of Ms. Brusuelas in early 2015,

25     right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107

```
 1          A.    Correct.
 2          Q.    And then Mr. Acee took over in August of
 3     2015?
 4          A.    Correct.
 5          Q.    What conversations did you have with Mr.
 6     Acee about what to record?
 7          A.    None.
 8          Q.    So he left what you should record
 9     completely to your discretion?
10          A.    Acee's information, yeah.
11          Q.    Did he tell you what information he wanted?
12          A.    Yeah, he told me get the information of the
13     hit.
14          Q.    Of which hit?
15          A.    On Marcantel.
16          Q.    So that was the only thing that you were
17     supposed to get information about?
18          A.    All the information.
19          Q.    What is all information?
20          A.    On the SNM.
21          Q.    And how did you get Mr. Baca talking on the
22     recordings?
23          A.    I didn't get him to talk anyway.  He
24     talked, he talked.
25          Q.    Did you talk with Mr. Acee about how you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5576

```
 1    would get Mr. Baca to talk?

 2        A.   No.

 3        Q.   What about Joseph Sainato?

 4        A.   No.

 5        Q.   And who is Joseph Sainato?

 6        A.   I don't know.  What's his nickname?

 7        Q.   I don't know.  Joseph Sainato, my

 8    understanding, is an FBI agent.  You've never met Mr.

 9    Sainato?

10        A.   Oh, Joe?  Yeah.

11        Q.   Did you have any conversations with Joe

12    about the recordings?

13        A.   Yeah, I had conversations with Joe about

14    the recordings, about the clarity of it.

15        Q.   And what about the topics that you were to

16    cover with Mr. Baca?

17        A.   No.

18        Q.   Did Mr. Sainato or Mr. Acee give you

19    instructions on how to use the device?

20        A.   I believe Sapien gave me instructions how

21    to use it.

22        Q.   And what instructions did Sapien give you?

23        A.   On and off.

24        Q.   Did they talk to you about how you would

25    know if the battery ran out?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5577

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 109578

```
 1          A.   No.
 2          Q.   How were the devices picked up from you and
 3     given back to you?  So let's say this is the first
 4     time you got a device, who brought it to you?
 5          A.   They would go in my cell and shake it down
 6     and put one in there, or bring me laundry.  Just a
 7     variety of ways.
 8          Q.   Who would do that?
 9          A.   STIU.
10          Q.   Who within STIU?
11          A.   Cupit and Sapien, or other people that
12     worked there.
13          Q.   How many times did they bring you a
14     recorder?
15          A.   Probably like every three days.
16          Q.   For what period of time?
17          A.   Depending on how much whoever talked.  If
18     it was a lot of information, and I felt like I
19     recorded a lot of information, I felt like the
20     battery was going to die, I got a new one.
21          Q.   I guess what I'm asking you is how many
22     times did they come and change out the recording
23     device?
24          A.   Several.
25          Q.   So less than 10?  More than 10?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   More than 10.

 2          Q.   Less than 20?  More than 20?

 3          A.   More than 20.

 4          Q.   Less than 30?  More than 30?

 5          A.   A lot.

 6          Q.   Less than --

 7          A.   I don't recall.  I did this for months.  So

 8     we could say more than 20.

 9          Q.   So more than 20 --

10          A.   Could be 29.

11          Q.   And you said over a period of months.  Can

12     you remember what period you were making these

13     recordings?

14          A.   From February of 2015, all the way till

15     December of 2015; December 3 to be exact.

16          Q.   You said that the majority of the

17     conversations you had with Mr. Baca were recorded;

18     correct?

19          A.   Correct.

20          Q.   Did you record every conversation you had

21     with Mr. Baca about Dwayne Santistevan?

22          A.   Yes.  I mean, some of it I missed because I

23     didn't have the recorder.

24          Q.   So there were periods of time when you did

25     not have a recording device?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5579

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113580

```
 1          A.   Yes.
 2          Q.   Which periods of time would that be?
 3          A.   That would be a grace point for your
 4     defendant -- excuse me -- but --
 5               MS. SIRIGNANO:   I'm sorry, I can't hear
 6     what you're saying.
 7          Q.   What period of time?  I'm asking you for a
 8     month?
 9          A.   No, maybe like a day.
10          Q.   So do you have any recollection of a
11     conversation you had with Anthony Baca about Dwayne
12     Santistevan that you did not record?
13          A.   The majority of it I recorded.
14          Q.   That's not my question.  I'm asking you do
15     you have a recollection today, as you sit there, of a
16     conversation you had with Anthony Baca about Dwayne
17     Santistevan that is not recorded?
18          A.   Correct.
19          Q.   You have no memory; that correct?
20          A.   I have a memory what he had said that I
21     didn't get to record.
22          Q.   So what do you remember?
23          A.   I remember he said that he sent a kite from
24     Arizona to "Baby G" in Las Cruces, and told him to
25     hit Marcantel or Santistevan if they ever went into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5580

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 112 5581

```
 1    the pod.

 2         Q.   When did you have that conversation with

 3    him?

 4         A.   When he first got to the facility.

 5         Q.   And why didn't you record it?

 6         A.   Because I didn't have a device.

 7         Q.   How soon after that conversation did you

 8    get the device?

 9         A.   Maybe the next day.  I had the cellphone

10    but I couldn't record it.

11         Q.   You couldn't use the cellphone to record

12    the conversation?

13         A.   Only if I called somebody.

14         Q.   Is that the only conversation that you

15    recall having with Mr. Baca about Santistevan that

16    wasn't recorded?

17         A.   Correct.

18         Q.   What about conversations you had with Mr.

19    Baca about Gregg Marcantel?

20         A.   What about them?

21         Q.   Were there any conversations you had with

22    him that you didn't record?

23         A.   No.  The majority of them I recorded.

24         Q.   Well, there is a difference between a

25    majority and no --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5581

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113

```
 1        A.   Almost all.
 2        Q.   Do you recall any conversation that you had
 3   with him about Dwayne or Mr. Marcantel that wasn't
 4   recorded?
 5        A.   No.
 6        Q.   How about the same kind of question with
 7   respect to Javier Molina?  Were all the conversations
 8   you had with Anthony Baca regarding Molina recorded?
 9        A.   Some of them were, due to me not having a
10   device.
11        Q.   So do you have a recollection of any
12   specific conversations about Molina that were not
13   recorded?
14        A.   I had conversations about how Mr. Baca was
15   upset that "Lazy" and -- "Lazy" didn't get Molina
16   hit.
17        Q.   And did you not record that conversation?
18        A.   I did not record that.  I did not record
19   that Mr. Baca was upset that "Dan Dan" and "Cyclone"
20   didn't get hit.  And those were both orders that he
21   gave to "Lazy."
22        Q.   And why did you not record those
23   conversations?
24        A.   I didn't have a device.
25        Q.   When did those conversations take place?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5582

```
 1          A.    In between device switch-outs.
 2          Q.    So how much time would lapse between you
 3    giving the device to STIU and them bringing the
 4    device back?
 5          A.    Sometimes they wouldn't bring it back,
 6    because they had devices in other places.  So I had
 7    to wait sometimes.
 8          Q.    So how --
 9          A.    I would give them a device.  They would
10    download the information and bring back the device.
11          Q.    So they would -- you would give them the
12    device, and then there would be a lapse of time, and
13    they would bring you another device?
14          A.    Yes.  Not a far lapse, but still a lapse of
15    time.
16          Q.    What's the biggest lapse of time between
17    you giving them --
18          A.    A day.
19          Q.    A day.  Is that typical or is that long?
20          A.    It was long to me.
21          Q.    So when they did the other switch-out, was
22    it faster than a day?
23          A.    Most of the time it was just a hand-off.
24          Q.    So a hand-off meaning you would give them
25    the old device and they would give you the new
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    device?

2         A.    Correct.

3         Q.    Which was more common to do, a hand-off or

4    for you to give them a device and them to bring

5    another device later?

6         A.    Well, I gave them the device; they would

7    give it to Joe, and he would give them a device to

8    give back to me.  So sometimes it was an hour.

9         Q.    And where were you when you had this

10   conversation with Mr. Baca that you did not record?

11        A.    In my cell.

12        Q.    Do you recall any other conversations that

13   you did not record regarding Molina?

14        A.    No.  Are you talking about at this time, or

15   period?  Like all around?  Because I had several

16   conversations with him before I even talked to the

17   FBI.  So what --

18        Q.    I'm asking you, during the period of time

19   that you were recording Mr. Baca.

20        A.    No.

21        Q.    When did you first meet Mr. Baca?

22        A.    I first met Mr. Baca in -- here in

23   Southern.

24        Q.    In what year?

25        A.    2013.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116585

```
 1        Q.   And how long were you -- were you in the
 2   same pod?
 3        A.   He was in blue pod.  I was in green pod.
 4   We were in separate pods.
 5        Q.   How long were you both in Southern
 6   together?
 7        A.   Six months.
 8        Q.   And you had not met Mr. Baca before 2013;
 9   is that correct?
10        A.   Correct.
11        Q.   When you were recording Mr. Baca in 2015,
12   you would go days without recording a conversation.
13   Do you recollect that?
14        A.   No.
15        Q.   So do you think you were recording him
16   every day?
17        A.   I wouldn't -- no, not every day.
18        Q.   So why would days go by that you didn't
19   record him?
20        A.   Because we weren't talking, we weren't
21   really talking.
22        Q.   When you were in PNM North in 2015 with Mr.
23   Baca, did you ever go to rec together?
24        A.   No.
25        Q.   While you were recording Mr. Baca, were you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 117586

1    also communicating with Bryan Acee?

2         A.    Correct.

3         Q.    You were communicating with him on the

4    cellphone that you had in your cell; correct?

5         A.    Maybe, when I couldn't call him from the

6    phone, because I was on phone restriction and I

7    needed to call him, yeah.

8         Q.    And then you'd also call him on the prison

9    phone?

10        A.    Correct.

11        Q.    Was there -- did you use any other phone to

12   call Bryan Acee?

13        A.    No.

14        Q.    How many times do you think you called him

15   on the cellphone?

16        A.    Once, maybe twice.

17        Q.    And how many times did you call him on the

18   prison phone?

19        A.    Maybe about 10.

20        Q.    And over what period did you call him 10

21   times?

22        A.    Over a period of eight months.

23        Q.    So starting when?  When is the first time

24   that you would have called?

25        A.    I don't recall.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5586

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 118587

 1        Q.    Do you recall the last time you would have

 2   called Bryan Acee using the prison phone?

 3        A.    Maybe like August -- or, no, maybe

 4   September, 2016.

 5        Q.    And when you called Mr. Acee using the

 6   prison phone, did you make those calls in your cell

 7   or somewhere else?

 8        A.    In my cell.

 9        Q.    With respect to the cellphone, did you ever

10   delete anything off of the cellphone?

11        A.    Not that I recall.

12        Q.    Did you ever delete any pictures?

13        A.    I might have.

14        Q.    When did you do that?

15        A.    I don't recall.

16        Q.    Why did you do it?

17        A.    Just did it.  I don't know.

18        Q.    Did Mr. Acee ever talk to you about not

19   deleting pictures or texts off the cellphone?

20        A.    No.

21        Q.    Did he ever talk to you about the

22   importance of preserving evidence?

23        A.    I didn't know that was evidence, no.

24        Q.    How often did you delete photos or

25   something else off the cellphone?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119 5588

```
 1          A.    Not often.

 2          Q.    So more than five?  Less than five?

 3          A.    Oh, less than five.  Less than two.

 4          Q.    At any point did you wipe the phone?

 5          A.    No.

 6          Q.    So when you deleted things, would you

 7    delete one entry or a lot of entries?

 8          A.    Maybe a picture.

 9          Q.    Did you ever delete text messages?

10          A.    No.

11          Q.    Did you ever delete the phone logs showing

12    who you had called or who called you?

13          A.    No.

14          Q.    Do you remember which pictures you deleted?

15          A.    Just pictures I took of myself that I

16    didn't like.

17          Q.    Did you delete pictures that people had

18    sent to you?

19          A.    No.

20          Q.    So those would still be on the phone?

21          A.    They should.  I don't think no one sent me

22    pictures, though.

23          Q.    Did anyone named Felicia send you pictures?

24          A.    Possible.  I don't recall.

25          Q.    When you spoke to the FBI about the Molina
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 120

```
 1    homicide, you had discussed that homicide with Jerry
 2    Armenta; correct?
 3         A.   Wait, what?  Oh, when I spoke to them, I
 4    had talked to Jerry Armenta about it?
 5         Q.   That's correct.  You spoke to the FBI after
 6    talking to Jerry Armenta; correct?
 7         A.   Yeah, and everybody else.
 8         Q.   Jerry Armenta was next to you?
 9         A.   I already knew about it before I spoke to
10    him.
11         Q.   But I asking, Jerry Armenta was next to
12    you, right?
13         A.   Yes.
14         Q.   And you discussed the Molina homicide with
15    him?
16         A.   Correct.
17         Q.   You weren't in Southern at the time that
18    Molina was murdered, were you?
19         A.   No, I was just around when the paperwork
20    was getting passed around.
21         Q.   Where were you around when paperwork was
22    getting passed out?
23         A.   I was in 1B with "Spider," when the
24    paperwork got passed to Southern.
25         Q.   So did you see the paperwork?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5589

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 121

```
 1        A.   I did.

 2        Q.   Did you see the paperwork get delivered to

 3   "Spider"?

 4        A.   No.

 5        Q.   Did you see "Spider" deliver the paperwork

 6   to anyone else?

 7        A.   No.

 8        Q.   Have you ever gone by the name of Johnny

 9   Joe Lucero?

10        A.   Yes.

11        Q.   Were you arrested in Texas under the name

12   of Johnny Joe Lucero?

13        A.   Yes.

14        Q.   And charged with armed robbery; is that

15   correct?

16        A.   Yes.

17        Q.   And late last year, you were supposed to

18   meet with your FBI handler and parole officer, and

19   you failed to appear; correct?

20        A.   Correct.

21        Q.   And then -- that was in late November of

22   last year?

23        A.   Yes.

24        Q.   And then you were arrested on December 15

25   of last year?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5590

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 122591

1         A.   Correct.

2         Q.   How were you arrested?

3              MR. DEL VALLE:  Objection, Your Honor.

4    That case is still pending.  And I'm going to ask

5    counsel not to inquire about that case because it is

6    still pending.

7              THE COURT:  How does, really, him -- how he

8    was arrested in that case, how does that really help

9    me with the voluntariness issue here?

10             MS. DUNCAN:  I think -- well, a couple

11   things, Your Honor.  I think one, the fact that the

12   arrest goes to his credibility as a witness.  It also

13   goes to the ongoing coercion that we're arguing is in

14   play with respect to his statements.  So I'm not

15   asking him about what he did.  I'm asking about the

16   circumstances of him being arrested.

17             THE COURT:  Well, I think the "how" I will

18   sustain.

19        Q.   Now, you are currently facing a parole

20   violation in your most recent criminal case here in

21   New Mexico; correct?

22        A.   Correct.

23        Q.   You're also facing possible charges for

24   possession of heroin, and being a felon in possession

25   of a firearm; correct?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 123

```
 1          A.    Correct.

 2          Q.    And you're facing possible child abuse

 3   charges in Portland, Oregon; correct?

 4          A.    Not to my knowledge.

 5          Q.    You're being investigated for an allegation

 6   that you hit your stepdaughter, Ivy; correct?

 7                MR. DEL VALLE:    Again, I'm going to make

 8   the same objection, Your Honor.

 9                THE COURT:    Yeah, if he's -- if these are

10   other charges that he's facing, I'm reluctant to have

11   him be compelled to testify about some other possible

12   criminal activity.    So I'll sustain.

13                MR. DEL VALLE:    Thank you.

14          Q.    You're aware that -- so the shank that --

15   you were found in possession of a shank in 2015;

16   correct?

17          A.    Correct.

18          Q.    And you could still be charged in New

19   Mexico State Court with possession of that shank;

20   correct?

21          A.    Correct.

22                MS. DUNCAN:    If I could have a moment, Your

23   Honor?

24                THE COURT:    You may.

25          Q.    Were you ever housed with other cooperating
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5592

1   witnesses in this case?

2        A.   Correct.

3        Q.   And when you were housed with them, did

4   they have tablets with discovery on them?

5             MS. ARMIJO:   Your Honor, I'm going to

6   object.   That's beyond the scope of the hearing.

7   It's just a fishing expedition now.   The tablets were

8   not until well after these recordings.

9             THE COURT:   How does this relate to the

10  motion?

11            MS. DUNCAN:   Sure.   Your Honor, Mr. Duran

12  has volunteered that he's talked to everybody and

13  their cousin about the allegations in this case, and

14  I -- to sort of buffer his credibility.   And it's our

15  position that a lot of the information he got would

16  have come from those tablets.   So it really goes to

17  credibility for purposes of this hearing.

18            THE COURT:   Well, I'm going to sustain it.

19  I'm not seeing how that's going to help me make the

20  determination on these two motions.   So sustained.

21       Q.   When you had the recording device and you

22  were next to Mr. Baca at PNM North, did you ever

23  record any conversations between Roy Martinez and

24  Anthony Ray Baca?

25       A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5593

```
 1              MS. DUNCAN:  I have no further questions,
 2    Your Honor.
 3              THE COURT:  Thank you, Ms. Duncan.
 4              Anyone else have questions of Mr. Duran on
 5    this motion?
 6              Mr. Maynard.
 7                        EXAMINATION
 8    BY MR. MAYNARD:
 9         Q.   Mr. Duran, just a couple of questions.  You
10    testified that, of course, there were time periods
11    when you had conversations with Mr. Baca that were
12    not recorded?
13         A.   Correct.
14         Q.   And, of course, you can't remember all the
15    ones that were recorded, much less the ones that were
16    not recorded?
17         A.   Correct.
18         Q.   And if I understood your testimony, you
19    said that there was a conversation you had with Mr.
20    Baca, and he was upset with "Lazy," or he had some --
21    mentioned something about "Lazy"?
22         A.   Correct.
23         Q.   For not moving on Mr. Molina, or something
24    of that nature?
25         A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5594

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126

```
 1        Q.   And that was not recorded?

 2        A.   Correct.

 3        Q.   And you didn't have that recorded and

 4   erased by any chance?

 5        A.   I didn't have a device to record it.

 6        Q.   All right.  When was that conversation,

 7   more or less?

 8        A.   When he first came back, and -- yeah, when

 9   he first came back, and then some when he was in

10   Southern with me.

11        Q.   And what year was this?

12        A.   2015 and 2013.

13        Q.   This was more than a year?

14        A.   Right.

15        Q.   After Mr. Molina had died?

16        A.   2015?

17        Q.   No, the conversation was more than a year

18   later.

19        A.   The conversation I didn't record happened

20   in 2015.

21        Q.   Right.

22             MR. MAYNARD:  Thank you.

23             THE COURT:  Thank you, Mr. Maynard.

24             Anyone else?  Mr. Villa?

25             MR. VILLA:  I'll let Ms. Sirignano go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5595

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5596

```
 1    first.
 2              THE COURT:  All right.  Ms. Sirignano.
 3                        EXAMINATION
 4    BY MS. SIRIGNANO:
 5         Q.   Good morning, Mr. Duran.
 6         A.   Good morning.
 7         Q.   You said that you would speak to your
 8    handler, Bryan Acee, on the jail phone; correct?
 9         A.   Correct.
10         Q.   What's a house phone?
11         A.   A jail -- a house phone that's in the pod.
12         Q.   It's the jail phone in the pod?
13         A.   Correct.
14         Q.   Is it recorded?
15         A.   Yes.
16         Q.   Did you ever speak to Mr. Acee on an
17    unrecorded line?
18         A.   Very rarely.
19         Q.   So how many times?
20         A.   Maybe once.
21         Q.   And what was the content of that
22    conversation?
23         A.   I don't recall.
24         Q.   Do you know when it was?
25         A.   When it was?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5596

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 128

```
 1         Q.   Yes.
 2         A.   No.  Maybe at the beginning, when I first
 3    started working with him.
 4         Q.   And you don't remember what you talked to
 5    him about on an unrecorded line?
 6         A.   No, it wasn't really of importance.
 7         Q.   Okay.  And did you ever speak to any other
 8    law enforcement on an unrecorded line?
 9         A.   No.
10         Q.   Did you ever speak to Mr. Acee over text
11    messages?
12         A.   Maybe once or twice.
13         Q.   And how would you communicate with the FBI
14    generally?
15         A.   They would just come get me.
16         Q.   Where would they come get you?
17         A.   From my cell, and take me to the office.
18         Q.   Which office?
19         A.   In Albuquerque.
20         Q.   And how many times did you travel from PNM
21    to the FBI?
22         A.   Maybe like five times.
23         Q.   About five times.  And can you say when
24    those trips happened?
25         A.   I went once in May, twice in August, and in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5597

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129598

```
 1    November, I think.

 2         Q.   2015?

 3         A.   Yeah, once.

 4         Q.   Okay.  That's four times.

 5         A.   About four or five times.

 6         Q.   Can you remember another time?

 7         A.   I can't recall another time.

 8         Q.   And what were these trips about?

 9         A.   To obtain the cellphone, debrief -- brief

10    them on what was going on.

11         Q.   What do you mean by "what was going on"?

12         A.   I mean, most of these were just my

13    first-time interviews with them.  I met one time with

14    Bryan.  And the same week I went and met with Bryan

15    and Ms. Armijo.  And then the next time I went was

16    just tell them what was going on.

17         Q.   Was the Government and Mr. Acee listening

18    to your recordings at the same time you were making

19    them, contemporaneously?

20         A.   Not really, no.

21         Q.   No?  How do you know that?

22         A.   Because.  I don't know, didn't seem like

23    it.

24         Q.   When were they listening to your

25    recordings?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130

```
 1          A.   I don't think they listened to it.  I think
 2     they had a separate person listening to it and
 3     operating the recordings, which was Joe.
 4          Q.   The FBI Agent Joe?
 5          A.   Correct.
 6          Q.   Sainato?
 7          A.   Correct.
 8          Q.   He was the one listening?
 9          A.   He was the one, yes.
10          Q.   How do you know that?
11          A.   Because he would talk to me about clarity.
12          Q.   And what would he say to you about clarity?
13          A.   Just "try to get better," you know "better
14     clarity within the recordings.  Try to get closer."
15          Q.   Because he was having trouble listening --
16     hearing them?
17          A.   He could still hear them, but he didn't
18     hear them as clear as he wanted to.
19          Q.   Do you know if your initial meeting with
20     Sapien from STIU was recorded?
21          A.   I don't.
22          Q.   Would the FBI tell you what was going on
23     with their case when you met them?
24          A.   No.
25          Q.   So it was mostly you telling them what was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5599

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131

```
 1   going on within the facility?

 2        A.   Correct.

 3        Q.   Did you ever record Mr. Garcia -- or did

 4   you ever not record Mr. Garcia in any of your

 5   conversations with him?

 6        A.   He always got recorded.

 7        Q.   So you said that December -- in December

 8   2015, you stopped recording; correct?

 9        A.   Correct.

10        Q.   What day was that?

11        A.   December 3.

12        Q.   And how did you stop recording?

13        A.   Because they came and got the cellphone and

14   the device from me.

15        Q.   Who did?

16        A.   STIU.

17        Q.   Who?

18        A.   Sapien and Cupit.

19        Q.   And did they tell you anything why they

20   were picking up the device?

21        A.   Yeah, because they just rounded everybody

22   up.

23        Q.   And after they picked up the cellphone and

24   the device, how did you get in touch with your

25   handler?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5600

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 132

```
 1         A.    I didn't.

 2         Q.    You didn't?

 3         A.    No.

 4         Q.    After the roundup, when was the next time

 5    you spoke to your handler?

 6               MS. ARMIJO:  Your Honor, I'm going to

 7    object as beyond the scope.  We're now beyond where

 8    he gave up -- when everybody was rounded up.  We're

 9    beyond the scope of his testimony and the

10    voluntariness of this statement.

11               THE COURT:  How does it relate to that, Ms.

12    Sirignano?

13               MS. SIRIGNANO:  Well, I'm just trying to

14    figure out how often he spoke to Mr. Acee after the

15    roundup.

16               THE COURT:  Well, I know what you're trying

17    to get, but it doesn't seem to me it's relevant to

18    the two motions.  So I'll sustain.

19         Q.    And you testified previously that Mr. Acee

20    didn't tell you not to delete anything off the

21    cellphone?

22         A.    Yeah, he didn't.  Yeah, he didn't say to or

23    not to.

24               MS. SIRIGNANO:  Okay.  Thank you.  Pass the

25    witness.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5601

```
 1              THE COURT:  Thank you, Ms. Sirignano.

 2              Anyone else?  Mr. Villa?

 3              MR. VILLA:  Thank you, Your Honor.

 4                          EXAMINATION

 5   BY MR. VILLA:

 6         Q.   Good afternoon, Mr. Duran.

 7         A.   Good afternoon.

 8         Q.   So December -- was it December 2, 2015 that

 9   STIU, Sapien, and Cupit came and took the recording

10   device?

11         A.   It was the day when they came and rounded

12   them up.  I believe it was December 3.

13         Q.   Of 2015?

14         A.   Right.

15         Q.   Where were you?  Which pod were you in?

16         A.   I was in the pod right next to Mr. Baca in

17   Q pod, I believe.

18         Q.   Q pod at Level 6?

19         A.   Q pod 3A, yes.

20         Q.   Before Q pod, were you in X pod?

21         A.   Correct.

22         Q.   In 2015?

23         A.   Correct.

24         Q.   When did he get moved from X to Q?

25         A.   I don't recall.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5602

```
 1          Q.   When you were in X pod, was Rudy Perez
 2    there as well?
 3          A.   No.
 4          Q.   So the time you were in X pod, it's your
 5    testimony that Mr. Perez was not in X pod at the same
 6    time?
 7          A.   Oh, yeah, he was there.
 8          Q.   In 2015?
 9          A.   Yeah, he was in X pod.
10          Q.   In the fall?
11          A.   Correct.
12          Q.   Did you speak to Mr. Perez during the time
13    you were both housed together?
14          A.   Yeah, briefly.
15          Q.   Did you ever attempt to record him?
16          A.   No.
17          Q.   Did you speak to Mr. Perez about the Javier
18    Molina murder?
19          A.   No.
20          Q.   While you were in X pod, did you speak to
21    other people about the Javier Molina murder?
22          A.   Yeah.
23          Q.   Who did you speak to?
24          A.   I spoke to Mario Rodriguez.
25          Q.   Mario Rodriguez who also goes by "Blue"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5603

```
 1        A.    Correct.

 2        Q.    Was Timothy Martinez also there?

 3        A.    Yes, I spoke to him, too.

 4        Q.    Spoke to him about the murder?

 5        A.    Yes.

 6        Q.    What about Roy Martinez, "Big Shadow"?

 7        A.    No.

 8        Q.    Was Mr. Martinez, either Roy or Rob, there

 9   in X pod?

10        A.    They were both there, but never really

11   spoke too much about the Molina murder.

12        Q.    Was there a conversation about the Molina

13   murder concerning that -- this idea that there was a

14   hit out on Molina prior to the time he had actually

15   been killed?

16              MS. ARMIJO:  Your Honor, I'm going to

17   object to a fishing expedition.  Again, this doesn't

18   get to selective recording as to Mr. Baca or the

19   duress of him initially cooperating.  It's now a

20   fishing expedition.

21              THE COURT:  Well, it seems like it's more

22   discovery.

23              MR. VILLA:  Well, I think it does get to

24   the selective recording, Your Honor, in that he

25   didn't record -- I guess I have to ask him whether he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5604

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136 5605

1    recorded it or not.

2            THE COURT:  Why don't you see if you can

3    lay some foundation, and then we'll see if we will

4    let you ask this question.

5            MR. VILLA:  Well, I think I just need to

6    establish whether he had a conversation about it.  I

7    think his answer was yes.

8        A.   And it was recorded.

9        Q.   I'm sorry?

10       A.   It was recorded.

11       Q.   It was recorded?

12       A.   Every time I spoke to him, it was recorded.

13       Q.   And I'm talking about the idea that there

14   was a hit out on Molina a couple years before he

15   actually was killed.

16       A.   Not a couple years.  I don't know about a

17   couple years.

18       Q.   Well, a long period of time.  Maybe a year,

19   a long period of time.

20       A.   Whatever involved Molina was recorded.

21       Q.   Anytime you talked about Molina?

22       A.   Correct.

23       Q.   And does that include this -- was there --

24   this previous hit on Molina, did it have to do with

25   Jesse Sedillo and Benjamin Clark?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137606

```
 1          A.   It did on some points, yes.
 2          Q.   The two of them were supposed to be part of
 3     carrying it out?
 4          A.    No, I believe that Mr. Sedillo -- or Jesse
 5     Sedillo and -- no, another Jesse was the one that was
 6     supposed to provide the paperwork.  That's what
 7     everybody was thinking.
 8          Q.   Is that the Jesse that goes by "Croc"?
 9          A.   No.
10          Q.   Who is "Croc"?
11          A.   Just an SNM member.
12          Q.   Is that Jesse Sedillo?
13          A.   Correct.
14          Q.   But Jesse Sedillo was not involved in any
15     way, as far as you know, with this previous hit on
16     Javier Molina?
17              MS. ARMIJO:  Objection.  Fishing
18     expedition.
19              THE COURT:  Well, I'm going to allow this.
20     I see some connection here.  Overruled.
21          A.   Mr. Baca was upset at the fact that "Croc"
22     had received the paperwork to assassinate Mr. Molina
23     and didn't show it to anybody.
24          Q.   Okay.  And was this paperwork that got to
25     "Croc" some period of time prior to the actual hit on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5606

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138607

```
 1   Mr. Molina?

 2        A.   Correct.

 3        Q.   And maybe it was two years, maybe it was a

 4   year, but it was a decent period of time?

 5        A.   Correct.

 6        Q.   And you recorded that conversation with Mr.

 7   Baca?

 8        A.   No, not Mr. Baca.

 9        Q.   But you just testified that Mr. Baca was

10   upset about it, right?

11        A.   Yeah.  I didn't say I recorded him saying

12   it.  No.  You asked me if I recorded the conversation

13   about the Molina murder, and who I talked to about

14   it.  I talked to Mario Rodriguez and I talked to

15   Timothy Martinez about the murder.  Both of those

16   individuals are the ones I recorded.

17        Q.   And were they the individuals that told you

18   Mr. Baca was upset?

19        A.   Correct.

20        Q.   And you recorded that conversation?

21        A.   I already knew he was upset, and I recorded

22   the conversation.  But they knew he was upset.

23        Q.   But you did not speak to Mr. Baca about

24   whether he was upset?

25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5607

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 139608

```
 1        Q.   When did you do that?

 2        A.   In 2013.

 3        Q.   So that was before you had a recording

 4   device?

 5        A.   Correct.

 6        Q.   Was Benjamin Clark also supposed to assist

 7   "Croc" in distributing this paperwork to carry out

 8   the hit on Mr. Molina?

 9        A.   I don't know.

10        Q.   Did you record anybody discussing that?

11        A.   No.

12        Q.   At no point in time?

13        A.   Nothing that involved Benjamin Clark.

14        Q.   Did you ever have a conversation before you

15   had the recording device about something involved

16   Benjamin Clark and Javier Molina?

17        A.   No.

18        Q.   When you spoke to Mr. Perez briefly in the

19   X pod, in the fall of 2015, what did you speak to him

20   about?

21        A.   Random activities within the SNM.  Nothing

22   about the murder.

23        Q.   Was this during the same time that you had

24   recorded Timothy Martinez and Mario Rodriguez?

25        A.   Mario Rodriguez was his neighbor.  So no, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    didn't really pay attention to him.

 2         Q.    But, I mean, is this the same time frame

 3    that you recorded Mario Rodriguez?

 4         A.    Right.

 5         Q.    Talking about what "Croc" was supposed to

 6    do with the paperwork on Javier Molina?

 7         A.    Right.

 8              MR. VILLA:    That's all the questions I

 9    have.

10              THE COURT:    All right.    Thank you, Mr.

11    Villa.

12              Anyone else from the defendants that wants

13    to cross-examine Mr. Duran on these two motions?

14              All right.    Mr. Del Valle, do you have

15    anything you need to clarify?

16              MR. DEL VALLE:    No, Your Honor.

17              THE COURT:    All right.    Did you have

18    something else, Mr. Lowry?

19              MR. LOWRY:    No, Your Honor.

20              THE COURT:    Hold on just a second.    Did you

21    have something else, Ms. Duncan?

22              MS. DUNCAN:    No, Your Honor.

23              THE COURT:    Mr. Lahann, were you just

24    letting Mr. Villa in?

25              All right.    Ms. Armijo.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

DNM 5609

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143610

```
 1                      REDIRECT EXAMINATION
 2   BY MS. ARMIJO:
 3        Q.   Mr. Duran, at the time that you initially
 4   spoke to Special Agent Brusuelas, were you already in
 5   restrictive housing?
 6        A.   I was.
 7        Q.   And why was that?
 8        A.   That's where they had us for the Molina
 9   murder.
10        Q.   When you say "us," who are you referring
11   to?
12        A.   SNM.
13        Q.   All right.  And was -- after you had
14   decided to cooperate, did you immediately change your
15   behavior in front of other SNM members?
16        A.   No.
17        Q.   And why not?
18        A.   Because it would put me in danger of
19   getting killed.
20        Q.   Now, you talked about -- a little bit with
21   Ms. Duncan about suing because of the SNM conditions.
22   Was that -- what year was that?
23        A.   That was when the Molina murder had first
24   taken place, which was maybe a month after that.  So
25   maybe like March.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5610

```
 1        Q.   And you spoke a little bit about "Lazy."
 2   And just for the record, who is "Lazy"?
 3        A.   Carlos Herrera.
 4        Q.   And you said -- I believe you were talking
 5   about "Lazy" didn't get Molina hit.  What did you
 6   mean by that?
 7        A.   He didn't get him hit.  He was supposed to
 8   get him hit.  He had orders from Baca to get him hit.
 9   And he didn't get him hit.
10        Q.   And when you say "hit," what do you mean?
11        A.   Hit, you know, like killed.
12        Q.   Okay.
13        A.   Assassinated.
14        Q.   Okay.  So we're not talking just going and
15   getting him hit as far as a punch.  Are we talking
16   about murder?
17        A.   Murder.
18        Q.   Or killed?
19             Okay.  And then -- and when did you learn
20   that information, initially?
21        A.   2013.
22        Q.   And who did you learn it from?
23        A.   Mr. Baca.
24        Q.   Now, you mentioned "Dan Dan" and "Cyclone."
25   What were you referring to about them?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5611

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 3612

```
 1          A.    Mr. Baca had felt that Daniel Sanchez and

 2    Benjamin Clark had dropped kites on him and prevented

 3    him from hitting the Level 4, when they were at the

 4    South.  And he was upset about that and wanted him

 5    hit.

 6          Q.    Okay.  So you're talking -- just so that

 7    we're clear, Mr. Baca wanted Daniel Sanchez and

 8    Benjamin Clark hit as well?

 9          A.    Correct.

10          Q.    And when did you learn that?

11          A.    In 2013.

12          Q.    And when you say drop a kite, what do you

13    mean?

14          A.    Drop a kite, like to STIU, or --

15          Q.    You used --

16          A.    Just write a letter to inform officers.

17          Q.    Okay.  So drop a kite is a way of

18    communicating to other people?

19          A.    Drop a kite is a way of telling.

20          Q.    Okay.  Now, the phone that you had, that

21    you were given by FBI, were you aware that all of

22    your text messages and your calls were being recorded

23    by a court order?

24          A.    Strict, yes.

25          Q.    And you talked a little bit about photos.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5612

```
 1    Did you take any photos on them -- on that phone?

 2         A.   I did.

 3         Q.   Okay.  And tell us the circumstances of

 4    those photos, and how many, if you recall.

 5         A.   They were just selfies.  I just treated the

 6    phone as if it was a real cellphone, for Mr. Baca to

 7    believe it was a real cellphone.

 8         Q.   Okay.  And did you send any of those

 9    selfies out to anybody?

10         A.   I sent those selfies to Mr. Baca's cousins,

11    and someone that Mr. Baca had befriended, a girl that

12    he hooked me up with.

13         Q.   Okay.  Who was Mr. Baca's cousin?

14         A.   I forgot her name.

15         Q.   Okay.

16         A.   I don't recall it.

17         Q.   I'm sorry?

18         A.   I don't recall her name.

19         Q.   How did you know to get ahold of her?

20         A.   Through him.

21         Q.   Okay.  And so what was your point in

22    sending her a selfie, with Mr. Baca giving you her

23    number?  What was the point of that?

24         A.   Just to make the phone look real,

25    basically.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145

```
 1          Q.   Okay.  And Ms. Duncan asked you --
 2               THE COURT:  How much longer do you think
 3    you're going to go?
 4               MS. ARMIJO:  Your Honor, I just have a
 5    couple more questions.
 6               THE COURT:  All right.  Go ahead.
 7          Q.   Ms. Duncan mentioned Johnny Joe Lucero, and
 8    an arrest that you had.  How old were you at that
 9    time?
10          A.   I was 17 years old.
11          Q.   And when the phone was picked up, the day
12    of the roundup -- you referred to that -- when you
13    say roundup, was that when SNM Gang members were
14    initially arrested in this case?
15          A.   Correct.
16          Q.   At the time of the roundup, was there a
17    shakedown of all SNM members at PNM?
18          A.   Correct.
19          Q.   Was the cellphone taken as part of that?
20          A.   The cellphone was taken immediately after
21    Baca was removed from his cell.
22          Q.   At that time did any other -- were you
23    aware if any other of the people that were arrested
24    knew you were cooperating at that time?
25          A.   Nobody knew, to my knowledge.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5614

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 146 5615

```
 1          Q.   Okay.  When you talked about -- and lastly,
 2    you talked about recordings that you had with Mario
 3    Rodriguez and Timothy Martinez.  And you said that
 4    you used the recorder.  Are you aware of whether or
 5    not some of the recordings, maybe the batteries died
 6    and it didn't get captured?
 7          A.   That was one of the incidents that the
 8    battery died.
 9               MS. ARMIJO:  All right.  I have nothing
10    further.
11               THE COURT:  All right.  Thank you, Ms.
12    Armijo.
13               All right.  Mr. Duran, you may step down.
14    Thank you for your testimony.
15               All right.  Let's go ahead and take our
16    lunch break.  We'll be back in about an hour.  It may
17    take a little bit longer getting everybody out.  But
18    let's shoot for an hour.  Have a good lunch.
19               (The Court stood in recess.)
20               THE COURT:  All right.  I think everyone
21    has got an attorney.  Help your co-defendants out,
22    make sure everybody has got an attorney.
23               All right.  Let me go ahead and make an
24    oral ruling on the motion to disqualify Mr. Lowry.
25    Lawyers appearing before the Court in a criminal case
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5615

```
 1    are subject to the New Mexico Rules of Professional

 2    Conduct.  And there are two ways that a

 3    representation can violate a lawyer's ethical duties

 4    to a former client under those rules.  First, under

 5    Rule 16-109(a), a lawyer cannot represent a client in

 6    a matter in which the lawyer represented a former

 7    client, or in a substantially related matter, if the

 8    current client's interests are materially adverse to

 9    the former's client interests.  Whether two

10    representations are in the same matter depends on

11    whether the lawyer can be justly regarded as changing

12    sides.  One matter is substantially related to

13    another if it involves the same dispute, or if there

14    is a substantial risk that confidential factual

15    information, as would normally have been obtained in

16    the prior representation, would materially advance

17    the client's position in the subsequent matter.

18             Section 132 of the Restatement Third of the

19    Law Governing Lawyers puts it, I think, a little

20    bit -- from a syntax sort of way, a little bit better

21    than maybe the New Mexico rules do.  But the current

22    matter is substantially related to the earlier matter

23    if, one, the current matter involves the work the

24    lawyer performed for the former client.  I think that

25    was the problem with Mr. Davis' representation.  Or,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5616

 1    two, there is substantial risk that representation of

 2    the present client will involve the use of

 3    information acquired in the course of representing

 4    the former client, unless that information has become

 5    generally known.  And that's the Restatement Third,

 6    Section 132.

 7            Mr. Duran's civil case is not the same

 8    matter as Mr. Baca's prosecution.  The civil case,

 9    likewise, does not involve the dispute, as Mr. Baca's

10    prosecution.  While it is theoretically possible that

11    confidential information gained by Mr. Donatelli

12    while representing Mr. Duran would be helpful to Mr.

13    Baca's defense, that possibility does not amount to a

14    substantial risk that Mr. Baca's defense will involve

15    such information because Mr. Duran's civil case did

16    not involve the SNM, or otherwise implicate

17    Mr. Duran's expected testimony.  Accordingly, the

18    Court concludes that Mr. Lowry's representation of

19    Mr. Baca does not offend Rule 16-109(a).

20            Second, under Rule 16-109(c), a lawyer

21    cannot use or reveal a former client's confidential

22    information.  The Court credits Mr. Lowry's assertion

23    that he is aware of no confidential information

24    regarding Mr. Duran.  Moreover, the risk that Mr.

25    Lowry would use or reveal such information, even if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5617

1   he had it, is minimal, because he will not

2   cross-examine Mr. Duran.

3           The Court is confident that Mr. Lowry, as

4   an officer of the Court, will inform the Court if his

5   recollection regarding Mr. Duran's confidential

6   information is refreshed before or during trial.

7   Accordingly, the Court concludes that Mr. Lowry's

8   representation of Mr. Baca does not offend Rule

9   16-109(c).

10           I want to get the further waiver of

11   Mr. Baca.  But assuming that comes through, then Mr.

12   Baca will have waived any conflict of interest

13   stemming from Mr. Donatelli's representation of

14   Mr. Duran, so Mr. Lowry's continued representation of

15   Mr. Baca does not offend Mr. Baca's rights under the

16   Sixth Amendment.

17           Mr. Duran is not charged in this case.  I'm

18   going to think through a little bit about whether he

19   still has some Sixth Amendment rights in this case.

20   So I'll continue to give that some thought as to

21   whether he has a right under the Constitution to

22   anything in this case.

23           But, in any case, the Court has appointed

24   Mr. Del Valle to represent Mr. Duran, so Mr. Duran

25   has, in fact, been afforded conflict-of-interest-free

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5618

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150

1    counsel.  So, accordingly, the Court concludes that,

2    even though Mr. Duran refused to waive any conflict,

3    Mr. Lowry's representation of Mr. Baca does not

4    offend the Sixth Amendment.

5         All right.  We also had some issues, as far

6    as Mr. Duran, that we wanted to take up.  I am not

7    sure I'm familiar with them.  So you may have told

8    Ms. Wild, and it may have gone into my ear, and I

9    didn't register it.  But this sounds new to me.

10        MS. ARMIJO:  Your Honor I, believe it's a

11   little new.  And I have been informing defense

12   counsel for Mr. Baca about the issue, because I

13   believe it was their motion.  The Court -- we had

14   previously -- it was a motion for Mr. Duran's medical

15   and mental health records.  And the Court did, in

16   fact, order them.  That was prior to Mr. Duran having

17   counsel and weighing in on the issue.  And I'll let

18   Mr. Del Valle speak to it.  But I believe that

19   Mr. Duran -- and we actually have them -- "we" being

20   the U.S. Attorney's Office.  They were sent to us by

21   Corrections after the Court had issued the order.

22   But I believe that Mr. Duran is objecting to the

23   release of those items.  And I'll let Mr. Del Valle

24   speak to that.  So -- and I do know that mental

25   health records require extra care when being ordered

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5619

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151 5620

```
 1    to be released.  And so I'll let Mr. Del Valle
 2    address those issues.
 3                 THE COURT:  All right.  Mr. Del Valle.
 4                 MR. DEL VALLE:  Thank you, Your Honor.
 5                 Mr. Duran objects to the release of any
 6    medical records whatsoever as a violation of his
 7    privacy rights under HIPAA.
 8                 Additionally, let me kind of loop back on
 9    the conflict issue.  Although I'm not sure, I would
10    assume that during the representation of Mr. Duran by
11    Mr. Lowry's firm, the issues of mental health and
12    medical records were part of the lawsuit, as they
13    typically are in terms of mental damages, pain and
14    suffering, and so forth.  If they have any special
15    knowledge of those things, that would enhance the
16    concept of a conflict.
17                 That's all I have to say on that matter.
18    But it's another consideration for the Court that we
19    really don't know how far those medical records go
20    back at this time, whether they were, in fact,
21    generated by that firm.
22                 And so, again, I repeat that he does object
23    to the release of his medical records.  Thank you.
24                 THE COURT:  All right.  Thank you, Mr. Del
25    Valle.  Did -- Ms. Duncan, Mr. Lowry, are y'all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 152

 1    ones that subpoenaed the medical records?

 2           MS. DUNCAN:  Your Honor, we didn't subpoena

 3    them.  We had an agreement with the Government that

 4    they would produce them, if the Court would sign the

 5    order for their production.  So the Court signed the

 6    order.  Ms. Armijo represented the records made it

 7    from DOC to the U.S. Attorney's Office, and then the

 8    U.S. Attorney's Office did not disclose them to us.

 9           THE COURT:  Say that again.  What did you

10    say?

11           MS. DUNCAN:  We stipulated, when we were

12    arguing discovery, we had asked for them, and the

13    parties came to an agreement that if the Court would

14    issue an order for their production, then DOC would

15    give them to the U.S. Attorney's Office, and the U.S.

16    Attorney's Office would give them to us.

17           So, yes, we were the ones who asked for

18    them, but it was just pursuant to a order that's been

19    entered.

20           THE COURT:  What are you looking for in his

21    medical records?  What is it that you're wanting to

22    see, and how are they relevant to, I guess it would

23    be these two motions; correct?

24           MS. DUNCAN:  No, Your Honor, actually this

25    is a separate issue.  We had asked for the medical

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5621

1    and mental health records for trial, for impeachment

2    purposes, so as they bear on his credibility as a

3    witness and they bear on his ability to recollect.

4    The Court saw today that he has trouble recollecting

5    events.  And the medical and mental health records

6    would bear on that issue.

7           THE COURT:  Well, anybody else want to

8    weigh in on this issue?  Did you have anything else?

9           MS. DUNCAN:  No, Your Honor.

10          THE COURT:  Anything else you want to weigh

11   in on this issue?

12          Anything else you have, Ms. Armijo?

13          MS. ARMIJO:  No.  I don't know -- if it's

14   just for impeachment purposes, I guess an alternative

15   would be for the Court to do an in camera review of

16   them.  But I believe it is substantial amount of

17   reviewing.  As you may recall, there was testimony

18   with Mr. Roark, I believe, for that motion to

19   suppress, that indicated that, when these inmates are

20   being held in Level 6, that they go and they

21   routinely have a mental health evaluation to

22   determine how they are.  So --

23          THE COURT:  For whose benefit is that,

24   though?  Is that for the prison, or is that for the

25   prisoner?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MS. ARMIJO:  I think that's for the

2     prisoner's benefit.

3           THE COURT:  So does the prison see those

4     records, though, and use them in evaluating whether

5     somebody is deteriorating or not?

6           MS. ARMIJO:  The prison doesn't see them

7     themselves.  I believe that -- and that was part of

8     the issue, is that the NMCD does not have custody of

9     them.  It's a completely different company that does

10    the medical work.  Obviously, if there is issues as

11    to an inmate, then I think the protocol would be to

12    notify Corrections that there is issues with an

13    inmate, and then it would be dealt with.  But I know

14    that that is routine with all of the inmates.  I'm

15    sure all of these people probably have mental health

16    records, because they've all been held in Level 6

17    capacity.  So -- and I don't know what else is there,

18    obviously, because I have not personally sat down and

19    reviewed them.  But that is an alternative.

20          THE COURT:  Have I already signed the

21    order?

22          MS. ARMIJO:  You did sign the order, Your

23    Honor.  But that was before Mr. Duran weighed in on

24    the issue and had counsel to advise him.

25          THE COURT:  Well --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5623

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

```
 1              MR. CASTLE:  Your Honor, I'm sorry.  I
 2    didn't jump up quick enough.  I'm wondering if I
 3    could help the Court a little bit.
 4              THE COURT:  All right.
 5              MR. CASTLE:  Your Honor, on behalf of Mr.
 6    Garcia, we have requested such records regarding
 7    Eugene Martinez, who had been a defendant in the
 8    case.  And the Court authorized a process by which
 9    his counsel reviewed the records, and then made
10    suggested redactions.  And we're in the process of
11    that.
12              But the law on this issue was set forth
13    a motion we filed, which is Document 1163, which is
14    our Giglio motion.  And what we cited was the case of
15    United States v. Robinson, a Tenth Circuit case, 583
16    F.3d 1265, in which they stated that evidence that a
17    confidential informant has suffered from a mental
18    illness was relevant because it would provide some
19    significant help to the jury in its efforts to
20    evaluate the informant's ability to perceive or to
21    recall events or to testify accurately.
22              In addition to that case, they talked about
23    evidence of illegal drug use also being relevant in
24    that context.  And I don't know if this is Your
25    Honor's case, but -- I imagine you'd remember it --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156

```
 1    the last name is United States v. Ganadonegro.

 2              THE COURT:  Ganadonegro.

 3              MR. CASTLE:  If that's this Court's case.

 4    It also found that a 2012 U.S. -- well, I have a

 5    Lexis cite, which is a New Mexico District of New

 6    Mexico case in 2012.

 7              In addition, while there is other circuits

 8    that we set forth what their position was, but it

 9    seems like the circuits, from the Fifth to the

10    Eleventh to the Second, all indicate these kind of

11    records are Giglio materials that should be

12    disclosed.

13              THE COURT:  All right.  Thank you, Mr.

14    Castle.

15              Well, let's do this:  I'm going to leave my

16    order in place.  If you want to go through, Mr. Del

17    Valle, and look at the records and either, A -- I'm

18    not inclined to probably allow you to object so that

19    it blocks the production of just medical records.

20    But if you want to make an argument that certain

21    materials are subject to the

22    psychotherapist-psychiatrist privilege, then I'll let

23    you raise those issues.  I've written on those as to

24    what the federal law allows, as far as a privilege

25    and what elements have to be met.  So you might look
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5625

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157

```
 1    at what I have said in the past.

 2              Typically, what I do with police records or

 3    police reports up in Albuquerque -- and that's the

 4    reason I was asking who looks at these things -- if

 5    they're made primarily for the Corrections Department

 6    to evaluate and decide how long somebody is going to

 7    stay in solitary, I'm probably not going to sustain

 8    the privilege.

 9              On the other hand, if Mr. Duran has a

10    psychiatrist, and he's talking to that person, or a

11    psychologist or a psychotherapist, and only he and

12    the doctor are seeing those reports, and they're not

13    something for the benefit of the use of the prison,

14    then I'll probably sustain it, and keep those records

15    from being produced.  But we're going to have to look

16    at them a little closer.

17              So I'll let you look at them before they're

18    produced.  But at least at the present time, we'll

19    keep the production order in place.

20              MR. DEL VALLE:  If I may, Your Honor?

21              THE COURT:  You may.

22              MR. DEL VALLE:  I understand that there is

23    approximately 6,000 pages.

24              MS. ARMIJO:  No, I think there is a

25    banker's box that has the medical -- and I know that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the mental health records were about 600.  There is a
2    banker's box.  Does that include both?  Okay, there
3    is a banker's box full of both.  So I don't know how
4    many pages that is, but --
5            MR. DEL VALLE:  Just to let the Court know,
6    it will be a while --
7            THE COURT:  Okay.
8            MR. DEL VALLE:  -- based on the volume.
9            Additionally, while I'm up here, I would
10   like to announce to all counsel that I have
11   undertaken the representation of Grace Duran; that is
12   Mr. Duran's wife.  And if anybody wants to contact
13   her, I am now her attorney.
14           THE COURT:  Okay.
15           MR. DEL VALLE:  Thank you.
16           THE COURT:  Thank you, Mr. Del Valle.
17           All right.  So I'll leave the production
18   order in place, and give Mr. Del Valle a chance to go
19   through and see if he wants to make a pitch for me
20   keeping some of the documents out.  Otherwise, we'll
21   go ahead and keep the production order in place.
22           Ms. Duncan?
23           MS. DUNCAN:  Your Honor, I understand that
24   these records are voluminous.  But we're only three
25   weeks out from trial.  And Mr. Duran is a big witness
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5627

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

1    for the Government against my client.  So I'd ask the

2    Court to set a deadline within the next week,

3    week-and-a-half, for that review to get completed, so

4    that we have time to process those records to

5    effectively cross-examine Mr. Duran.

6              THE COURT:  Could I set a production of 11

7    days from today for the production of the documents?

8    Does that give you enough time to get through them,

9    Mr. Del Valle?

10             MR. DEL VALLE:  I'll have to make time.

11             THE COURT:  All right.  So 11 days from

12   today the documents will be produced.  And by that

13   point, Mr. Del Valle will get through them as much as

14   possible.  And otherwise, they will be produced.  The

15   ones that he objects to, they can be pulled.  You can

16   get the others, pull those, and we'll argue about

17   them at the appropriate time.

18             All right.  Ms. Armijo, anything further on

19   that issue?

20             MS. ARMIJO:  No, Your Honor.

21             THE COURT:  Is the Government ready to go

22   to its next witness or evidence?

23             MS. ARMIJO:  Yes, Your Honor.

24             May Mr. Duran be excused?

25             THE COURT:  Any objection to Mr. Duran

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5628

```
 1   being excused?

 2           MS. JACKS:  Your Honor, may I just be heard

 3   briefly?

 4           THE COURT:  You may.

 5           MS. JACKS:  Because I was unaware that the

 6   same attorney that was representing Eric Duran was

 7   claiming to represent Grace Duran.  And that seems to

 8   me to be like a conflict situation, given at least

 9   what I know about their relationship and the crimes

10   that Mr. Duran has committed against Mrs. -- or Grace

11   Duran and her child.

12           THE COURT:  Well, how is -- I need to be

13   educated on this.  How is Ms. Duran relevant to this

14   case?

15           MS. JACKS:  I think with respect to bias,

16   motive, and rewards offered to Eric Duran, and prior

17   inconsistent statements, or statements on the phone.

18   I'm happy to address it at another time.  I just

19   didn't want to let it go by without alerting for the

20   Court that I don't think that's something that, at

21   least most people in this room, would think would be

22   acceptable, for the same lawyer to represent them

23   both.

24           THE COURT:  Okay.  Any thoughts on that,

25   Mr. Del Valle?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5629

```
 1              MR. DEL VALLE:  Just to advise counsel, I
 2    have spoken to Ms. Duran, and I have told her that
 3    she can speak to anybody she wants to, and she can
 4    not speak to anybody that she doesn't want to speak
 5    to, that it is totally up to her, and leave it up to
 6    her discretion.
 7              She's been subpoenaed to be here on the
 8    28th.  And unless anybody will withdraw the subpoena,
 9    she will obey the subpoena.
10              THE COURT:  So she's been subpoenaed for
11    the trial in this case?
12              MR. DEL VALLE:  She's been subpoenaed for
13    the 28th.  She just sent me a text copy of it.
14              The whole point is that I want to alert all
15    counsel that if they want to speak to her, I have to
16    be present.  That's all.
17              THE COURT:  All right.  Let me start with
18    you, Ms. Jacks.  What do you want me to do about this
19    issue?
20              MS. JACKS:  I think for the -- to use the
21    Court's time wisely, I think what we ought to do is
22    table it for the moment.  Maybe we can provide the
23    Court with some sort of briefing.
24              But I'm even more concerned now, because
25    now we have somebody concurrently representing two
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5630

```
 1    people with diverse interests in this proceeding.  So
 2    at this point, I think the question becomes should
 3    this attorney be removed from both representations.
 4    So I think we need to look into it.
 5              THE COURT:  All right.  So table it for the
 6    present time.
 7              All right.  Anybody?  Mr. Del Valle?
 8              MR. DEL VALLE:  Just to let counsel know
 9    that I'm not shaking in my boots.
10              Thank you.
11              MS. JACKS:  Neither am I.
12              THE COURT:  All right.  So unless somebody
13    thinks otherwise, we'll table it.
14              Mr. Villa.
15              MR. VILLA:  Your Honor, I was going to
16    bring up a separate issue.
17              THE COURT:  You don't want to table it?
18              MR. VILLA:  I want to bring up a separate
19    issue.  Maybe before the Government calls the next
20    witness.  It has to do with the phone calls that the
21    Government has produced.  They produced, I think the
22    first round we're talking, phone calls of our client,
23    phone calls of cooperating witnesses, et cetera,
24    about mid December.  There was some issues with those
25    we had to get fixed.  And we're all busy going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5631

```
 1    through those.  And I can file a motion if the Court
 2    wishes.
 3           But what I wanted to ask the Court is, if
 4    it would have the Government -- give the Government a
 5    deadline to tell us which calls of our clients they
 6    intend to introduce at trial, or else not be
 7    permitted to use any calls of our clients at trial,
 8    short of some impeachment issue or something like
 9    that.
10           THE COURT:  What's your thoughts on that,
11    Ms. Armijo?
12           MS. ARMIJO:  Well, Your Honor, I think that
13    that's -- we certainly don't know what's going to
14    become relevant at trial.  For instance, Mr. Perez
15    could come up and testify to one thing, and we may
16    need a certain call for his.  A lot of calls that
17    were produced were produced at the defense request
18    for jail calls.  So we just made a blanket production
19    of jail calls.  Certainly, they know the recordings
20    that we're going to use.
21           I can't think off the top of my head of
22    individual calls that we may be using.  If we know
23    that we're going to use a call, certainly -- and then
24    I would request, then, the reverse.  Maybe we can ask
25    the defense, if they're going to be using calls that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5632

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 164

```
 1    we've provided, then they can let us know.  Maybe we
 2    can enter into a joint agreement.  But certainly not
 3    just for the Government to notify people of certain
 4    calls at this point.
 5              THE COURT:  Your thoughts on some
 6    reciprocal agreement on that?
 7              MR. VILLA:  Well, a couple things, Judge.
 8    I mean, certainly, as we're going through them -- and
 9    we have lots of staff doing that -- if we identify
10    something that we think is admissible evidence, we
11    can turn that over to the Government.  You know, I'm
12    not talking about impeachment material.  I think
13    that's fair game, if Mr. Perez decides to testify and
14    says something different than is in the call.  I'm
15    asking about substantive evidence that the Government
16    intends to use of phones calls of our clients.  Not
17    cooperators; keep those out.  Just our clients'
18    statements that the Government is going to try to use
19    as admissions in the Government's case-in-chief.
20              THE COURT:  Could we have this agreement,
21    Ms. Armijo, that for the present time, the Government
22    will not introduce any jailhouse calls using the
23    definition that Mr. Villa just gave, unless it
24    identifies those for the defendant, so we're not
25    going to just have them in its case-in-chief?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5633

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 65634

```
 1            MR. BECK:  Your Honor, I guess I don't know
 2    under what authority we would be agreeing to that.  I
 3    mean, I understand we have an exhibit list that we
 4    have to get out, and that may be fluid.  But I just
 5    don't want to pigeon hole us.  I mean, as much as
 6    they're saying they have a bunch of staff listening
 7    to the calls, we have less staff and --
 8            THE COURT:  When is your exhibit list due?
 9            MS. ARMIJO:  Friday.
10            MR. BECK:  Yeah, I think Friday.
11            THE COURT:  Well, could we just make it
12    that if it's not on the exhibit list, jailhouse calls
13    on an exhibit list, it's not going to be in your
14    case-in-chief?
15            MR. BECK:  I think that's -- I mean, I
16    guess that's probably how we're going to operate with
17    all the evidence.  So --
18            THE COURT:  Live with that?
19            MR. VILLA:  I can live with that.
20            THE COURT:  Okay.  Let's just do that.  If
21    we don't see it on the exhibit list, it won't be
22    entered.  If something pops up, then we'll deal with
23    it like we do any other evidence that pops up; people
24    try to get it in, and I'll have to make a judgment
25    call at that point.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Yeah, I think that's fine.
 2              THE COURT:  And this excludes anything you
 3    want to do on impeachment.  So when the defendants
 4    put on their case-in-chief it's fair game, depending
 5    upon what they say.  But it's just your
 6    case-in-chief.  Work, Mr. Villa?
 7              MR. VILLA:  Yes, Your Honor.
 8              THE COURT:  Anybody have any problem with
 9    that?  Ms. Sirignano?
10              MS. SIRIGNANO:  Your Honor, I do.  I'm
11    sorry to be a stick-in-the-mud again.
12              These calls were produced in December,
13    16,000 hours of phone calls.  I filed a notice over
14    the break regarding the calls.  I attached an email
15    from Mr. Aoki regarding the contents of these phone
16    calls.  And, quite frankly, if we had everybody in
17    this room listening to phone calls between now and
18    the 29th, we probably wouldn't get through all of
19    them.  What bothers me, Judge -- and I'm just putting
20    this on the record here -- is that Mr. Lowry, when
21    his client was arraigned back on December 4th or
22    5th -- or 3rd of 2015 -- he had asked the
23    Government -- and I was present during the hearing in
24    front of Judge Gonzales where the Government agreed
25    to a rolling production of all of these phone calls.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5635

1    And they stated on the record before Judge Gonzales

2    that they were getting these phone calls and would

3    produce them in a rolling fashion.  So --

4              THE COURT:  Wasn't that done for a while?

5              MS. SIRIGNANO:  Not really, Your Honor, not

6    the jail calls of the cooperating defendants and of

7    some of the clients here.  There were calls that were

8    produced, yes, of -- evidentiary in nature.  But

9    we're talking 16,000 hours of phone calls, which we

10   requested in the very beginning of this case, that

11   was dumped on us in December of this year.  So my

12   position would be that they be excluded one hundred

13   percent, and that they're not allowed in for

14   impeachment or rebuttal.

15             Because, quite frankly, I don't know if

16   they've actually even made a search for Brady or

17   Giglio in any of these phone calls.  And we're trying

18   to go through as best as possible to find material

19   that would be good for us.  But it's an impossible

20   task.  We got 10,000 pages of discovery in PDF form

21   within that week.  And now, we're going to have, on

22   the 15th, our Jencks deadline.

23             So all I'm saying is that my position would

24   be that they don't come in at all, Your Honor.

25             THE COURT:  Well, let me do this:  It may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5636

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 168

```
 1    never be a problem, so I'm not going to exclude them
 2    at the present time.  If it comes up that all of a
 3    sudden they're a gold mine -- it sounds like they're
 4    marginal and nobody right at the moment knows if
 5    there is anything in there that, A, is admissible, or
 6    useful to them.  So I'm not inclined to start
 7    excluding that much material, if we even don't know
 8    if anybody's going to have anything in there they're
 9    going to use.  At the present time, the Government is
10    saying they don't think there is anything they're
11    going to use.
12            And you can renew it at the time that we
13    identify somebody is about to use this stuff.  But
14    I'm inclined to leave it with -- if it's not on the
15    exhibit list on Friday, then it's not going to be in
16    the Government's case-in-chief.
17            Mr. Lowry?
18            MR. LOWRY:  Yes, Your Honor.
19            Your Honor, with regard to the jailhouse
20    calls, I just wanted to alert the Court -- I mean,
21    I'm cognizant of the comments the Court has just now
22    made.  But, unfortunately, we just started getting to
23    the tip of the iceberg of these jailhouse phone
24    calls.  There are useful things.  I mean --
25            THE COURT:  To you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5637

1          MR. LOWRY:  To Mr. Villa, frankly.  We just

2     came across -- we took a stab at looking at Billy

3     Cordova's calls, for instance.  And there is a number

4     of calls that would give them the perfect motion on

5     terms of coercion that we're arguing today, where Mr.

6     Cordova is telling his wife exactly the pressure that

7     was put on him, the threats that were made to his

8     family, that they would be prosecuted if he didn't

9     cooperate.  And so he's explaining to his wife

10    exactly why he cooperated.  And we're in the middle

11    of providing Mr. Villa those materials right now, so

12    he can prepare a motion to suppress.

13          Now, I realize the timing of this, you

14    know, lacks a little bit to be desired.  But we just

15    got the phone calls.  And this information is just

16    becoming available.  And frankly, I think the impact

17    of that kind of testimony, again, it's like finding a

18    needle in a haystack.  So I'll leave it to Mr. Villa

19    how he wants to approach that.

20          But to think that the phone calls are just

21    a lark would be mistaken.

22          THE COURT:  Okay.  Well, I don't think Ms.

23    Sirignano was saying that y'all couldn't use the

24    phone calls, right?  You were saying, just keep the

25    Government from using them, correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MS. SIRIGNANO:  Yes, if they're useful for

 2   the defense, we should be able to use them, because

 3   we've been asking for them.

 4          And Judge, you know, I do have a little bit

 5   of difficulty with the decision like there is nothing

 6   very useful in there.  We don't know one way or the

 7   other.  And we've got a staff of people listening to

 8   them just to ascertain what is there.

 9          Frankly, it's a timing issue, Judge.  And

10   that's why I filed the notice, to alert the Court

11   that we've got all of this that's still out there.

12   And I'm sure this Jencks production is going to be

13   fairly substantial as well.

14          THE COURT:  Well, maybe I'll limit my

15   remarks there doesn't appear to be anything useful to

16   the Government in it.  Sounds like y'all are

17   beginning to find some stuff that may be useful for

18   defendants.  And I'll modify my statement there.  But

19   I wasn't aware that anybody had found anything yet.

20   I'll modify it there.

21          MS. SIRIGNANO:  Thank you, Judge.

22          THE COURT:  All right.  Ms. Duncan.

23          MS. DUNCAN:  Sorry, Your Honor.  I wanted

24   to clarify something on the record about Grace Duran.

25   Grace, Ms. Duran, was served with two subpoenas

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5639

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

```
 1   today; one is for trial, and one was actually for
 2   purposes of this hearing.  I think that she was
 3   served at 11:00 this morning, is my understanding, so
 4   we don't expect her to be here today.  But we may
 5   intend to call her later this week.  So I know Mr.
 6   Del Valle had talked about the trial subpoena.  But I
 7   just want it on record that she's under subpoena for
 8   this week as well.
 9           THE COURT:  All right.  Anything else?
10           All right.  Ms. Armijo, does the Government
11   have its next witness or evidence on Mr. Baca's two
12   motions?
13           MS. ARMIJO:  Yes.  Sergio Sapien.
14           MR. DEL VALLE:  Your Honor, if I may, may
15   we excused?
16           THE COURT:  Any objection to Mr. Del Valle
17   and Mr. Duran being excused?  All right.  You're
18   excused.  Thank you.  Appreciate it.
19           MR. DEL VALLE:  Are we back tomorrow?
20           THE COURT:  When do you expect -- anybody
21   else need Mr. Del Valle in his capacity representing
22   Mr. Duran?  All right.  You're excused.
23           MR. DEL VALLE:  Thank you, Your Honor.
24           THE COURT:  You don't need to be here
25   tomorrow.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5640

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172

1            All right.  Mr. Sapien, if you'll come up

2    and stand next to the witness box on my right, your

3    left.  Before you're seated, my courtroom deputy, Ms.

4    Standridge, will swear you in.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5641

```
 1                        SERGIO SAPIEN,
 2         after having been first duly sworn under oath,
 3         was questioned and testified as follows:
 4                      DIRECT EXAMINATION
 5              THE CLERK:  Please be seated and state and
 6    spell your name for the record.
 7              THE WITNESS:  Sergio Sapien.  S-E-R-G-I-O,
 8    S-A-P-I-E- N.
 9              THE COURT:  Mr. Sapien.  Ms. Armijo.
10              MS. ARMIJO:  Thank you, Your Honor.
11              For the record, I'm going to move for the
12    admission of Government's Exhibit 2, which is the
13    interview that you have now two transcripts of.  But
14    it's the audio portion.
15              THE COURT:  Any objection to Government's
16    Exhibit 2?  Not hearing any, Government's Exhibit 2
17    will be admitted into evidence.
18    BY MS. ARMIJO:
19         Q.   Mr. Sapien, where are you employed?
20         A.   New Mexico Corrections Department, Security
21    Threat Intelligence Unit.
22         Q.   All right.  And what is your position
23    there?
24         A.   Captain.
25         Q.   And how long have you worked for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5642

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 175643

```
 1   Corrections?

 2        A.   Almost 18 years.

 3        Q.   And how long have you been the Captain of

 4   STIU?

 5        A.   Almost -- I want to say July, August of

 6   2014.

 7        Q.   Now, are you familiar with Eric Duran?

 8        A.   Yes, ma'am.

 9        Q.   And how are you familiar with Eric Duran?

10        A.   Just with my knowing him while he's been

11   incarcerated with the Department.

12        Q.   And are you aware of --

13             THE COURT:  Any other witnesses in this

14   hearing that are in the courtroom?  Anybody want the

15   rule invoked for purposes of this motion?  Anybody

16   else?  Well, if nobody is concerned, plow ahead.

17             Ms. Armijo.

18             MS. ARMIJO:  Thank you.

19        Q.   And is he a member of a prison gang?

20        A.   Yes, ma'am.

21        Q.   Which prison gang?

22        A.   SNM, Syndicato de Nuevo Mexico.

23        Q.   At some point were you made aware of

24   whether or not he wanted to cooperate with law

25   enforcement?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5643

```
 1          A.   Yes, ma'am.

 2          Q.   Can you tell us about that?

 3          A.   Yes, ma'am.  At one time I was advised by

 4   my boss that this inmate wanted to talk to me.  So we

 5   went back and pulled him out.  And at that time he

 6   advised me that he wanted to cooperate fully.

 7          Q.   Okay.  When you say "he," who are you

 8   referring to?

 9          A.   I'm sorry, Eric Duran.

10          Q.   And who was your boss that informed you of

11   that?

12          A.   Adam Vigil.

13          Q.   And was there anything -- had Adam Vigil

14   had contact with Mr. Duran?

15          A.   Yes, ma'am.

16          Q.   And is that unusual that he would have had

17   contact with Mr. Duran?

18          A.   That's not unusual.

19          Q.   And so, based upon what Mr. Vigil told you,

20   what did you do?

21          A.   We went back to the unit and had Eric Duran

22   pulled from his cell out into an office, and

23   interviewed him.

24          Q.   And who is "we"?

25          A.   Myself and Chris Cupit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5644

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176645

```
 1        Q.   And who is Chris Cupit?

 2        A.   He's one of my investigators, STIU.

 3        Q.   Now, do you recall approximately when this

 4   was?

 5        A.   I want to say late November, early

 6   December, somewhere around that time, 2014.

 7        Q.   All right.  And when you spoke to him, did

 8   he indicate anything to you about writing a letter to

 9   you?

10        A.   Not that I can recall.  Writing a letter to

11   me?  In reference to?  I'm sorry, like --

12        Q.   To, like, his cooperation or wanting to

13   cooperate?

14        A.   I cannot recall that, ma'am.

15        Q.   Now, what did he say to you as far as

16   cooperation?

17        A.   On the basis of -- he was tired of dealing

18   with the gang and being in the gang.  And that they

19   were about to do something big; that they wanted to

20   hurt or kill or assault Mr. Marcantel and

21   Mr. Santistevan.

22        Q.   And who was Mr. Marcantel?

23        A.   At the time he was Secretary of

24   Corrections.

25        Q.   And Mr. Santistevan?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5645

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 175646

```
 1            A.   He was the head of STIU.

 2            Q.   And so what did you do with that

 3    information?

 4            A.   I went back and advised my boss, Mr. Vigil.

 5    And in turn, he started contacting -- you know, of

 6    course, it went up the chain on our side.  And then

 7    he contacted the FBI.

 8            Q.   Did you change anything as far as

 9    Mr. Duran, as far as move him or anything else, or

10    did you leave him in place so nobody would know there

11    was anything suspicious about your meeting with him?

12            A.   We left him in place.

13            Q.   And, at some point in time, were you made

14    aware that -- did he -- during his conversation with

15    you, did you use any threats against him to get him

16    to cooperate?

17            A.   No, ma'am.

18            Q.   Any coercion?

19            A.   No, ma'am.

20            Q.   Did it appear that he was doing so

21    voluntarily?

22            A.   Yes, ma'am.

23            Q.   And at some point, are you aware of him

24    actually meeting with the FBI?

25            A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178

```
 1        Q.   And do you recall when that was,
 2   approximately?
 3        A.   I want to say February 19, I believe, 2015.
 4        Q.   Okay.  So was that after your initial
 5   meeting with him for his cooperation?
 6        A.   Yes, ma'am.
 7        Q.   And had anything -- when he was talking
 8   with the FBI, were you part of that meeting as well?
 9        A.   Yes, ma'am.
10        Q.   And at that time, was there anything, in
11   your view, as far as did you use any threats against
12   him?
13        A.   No, ma'am.
14        Q.   Any coercion against him to have him talk
15   to the FBI?
16        A.   Sure didn't.
17        Q.   Did it appear to you that he was talking to
18   the FBI on his own volition and free will?
19        A.   Yes, ma'am.
20             MS. ARMIJO:  If I may just have a moment?
21             THE COURT:  You may.
22             MS. ARMIJO:  That's all I have, Your Honor.
23   Thank you.
24             THE COURT:  Thank you, Ms. Armijo.
25             Ms. Duncan, Mr. Lowry, do you have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5647

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179648

```
 1   cross-examination of Mr. Sapien?
 2           MS. DUNCAN:  If I may just have a moment,
 3   Your Honor?
 4           THE COURT:  Certainly.
 5                   EXAMINATION
 6   BY MS. DUNCAN:
 7       Q.   Good afternoon.
 8       A.   Good afternoon.
 9       Q.   When you met with Mr. Duran, did you
10   document that meeting?
11       A.   The initial one?
12       Q.   Yes.
13       A.   I do not recall if I did or didn't, ma'am.
14       Q.   Is it your practice to document meetings
15   with informants?
16       A.   Yes, ma'am.
17       Q.   How would you have documented, if you did?
18       A.   Just simply noted the date and time.  At
19   the time, I probably wouldn't have given him a CI
20   number just yet.  I'm sure of the CI numbers, just
21   for the fact that you have to corroborate the
22   information and all that stuff prior to giving them.
23   So I would have documented, yes, ma'am, just with his
24   name.
25       Q.   And I think you said Mr. Cupit was with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5648

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 180 of 9649

```
 1    you?
 2         A.   Yes, ma'am.
 3         Q.   And would Mr. Cupit have documented it?
 4         A.   I would have probably been the one to
 5    document that.
 6         Q.   And how do you document those kinds of
 7    meetings?
 8         A.   We'll just go out and pull up a standard
 9    STIU memo form, and just document date and time,
10    names, stuff like that.
11         Q.   Do you summarize what you discussed with
12    the person in those reports?
13         A.   Yes, ma'am.
14         Q.   And you were talking about a CI number.
15    Can you tell the Court, what is a CI number?
16         A.   That is a number that we give a
17    confidential informant.
18         Q.   And at what point do you give a
19    confidential informant --
20         A.   At the point that they met four of the
21    eight criteria, as per the policy.
22         Q.   What does that mean?
23         A.   There is eight criteria for documenting a
24    confidential informant.  In order to validate their
25    information, they have to meet four of the eight.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5649

```
 1    Simple stuff.
 2        Q.    And did you give Mr. Duran a CI number?
 3        A.    Eventually, yes, ma'am.
 4        Q.    You say "eventually," do you know about how
 5    long it took for you to give him a CI number?
 6        A.    Once we gathered the information from him
 7    and corroborated some of it, I would give him a CI
 8    number.
 9        Q.    And how would you document that process?
10        A.    How would I document it?  Date, facility,
11    my initials.  I'd give him also a number.
12        Q.    And would the report, where you say:  Here
13    are the criteria I think that the CI has met, and
14    here's why?
15        A.    Usually, yes, ma'am.
16        Q.    And where would you keep those kinds of
17    documents?
18        A.    I would type it all up.  And if it was
19    something that needed to be submitted, I'd submit it
20    right away.  Unless we're looking at some kind of
21    investigation.
22        Q.    So how soon after your first meeting with
23    Mr. Duran did you meet with him again?
24        A.    You know what, I don't recall.  I'm sorry.
25        Q.    Would you record -- did you record that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5650

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 182

```
 1    first meeting?

 2         A.   No, ma'am.

 3         Q.   Do you recall how soon after that meeting

 4    that you would have met with Mr. Duran and the FBI?

 5         A.   It was approximately, maybe two months

 6    later, a month-and-a-half, two months.  We're talking

 7    late November, December, up into the beginning of

 8    February.

 9         Q.   When you say you met with him in late

10    November, early December -- is that what you said?

11         A.   Yes, ma'am.

12         Q.   So how do you recall when you met with him?

13         A.   As I stated previously, I don't remember

14    where I was.  I was away from the facility at the

15    time.  And, you know, my boss -- they'd been doing

16    some shakedowns and interviews of that area, at which

17    time, he advised Mr. Vigil that he needed to talk to

18    me, and only me.  So once I got back from where it

19    was -- I don't recall -- we had him pulled again.

20         Q.   Do you recall there being a shakedown in

21    February of 2015?

22         A.   Yes, ma'am.

23         Q.   And during that shakedown that Mr. Duran

24    was found in possession of a shank?

25         A.   That is on -- I believe he got a misconduct
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5651

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83652

```
 1    for that, yes, ma'am.
 2          Q.   I'm sorry?
 3          A.   A misconduct report was submitted for that,
 4    yes.
 5          Q.   And is it possible that Mr. Duran asked to
 6    speak to you at the time of that shakedown, in
 7    February of 2015?
 8          A.   He was kind of always talking -- asking to
 9    talk to me.  So more than likely.
10          Q.   And you participated in the FBI's interview
11    with Mr. Duran in February of 2015; correct?
12          A.   Yes, ma'am.
13          Q.   And do you recall, during that meeting,
14    discussing a letter that Mr. Duran had written to
15    you?
16          A.   I believe he made reference to a letter
17    that he had in his property that he had written.  We
18    didn't retrieve that.
19          Q.   So did you ever receive a letter from
20    Mr. Duran?
21          A.   Yes, ma'am.
22          Q.   You did.  Tell me about that letter.
23          A.   I received a bunch of letters from him.
24          Q.   And where do you keep those letters?
25          A.   They were signed in.  I have them all, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5652

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5653

```
 1   they were submitted with everything else we had.
 2        Q.   And when you say "they were submitted with
 3   everything else" you had to --
 4        A.   All our SNM documentation that we had, that
 5   we were to submit.
 6        Q.   And who did you submit it to?
 7        A.   I believe to Ms. Armijo.
 8        Q.   Do you have any SNM-related documents in
 9   your possession that you did not submit to Ms.
10   Armijo?
11        A.   No, ma'am.
12        Q.   When you talked to Mr. Duran in that
13   initial meeting, what did he tell you he wanted to
14   do?
15        A.   He advised that he was finished with the
16   gang life, and he wanted to provide information on
17   possible hits that they were looking at on a couple
18   higher up within the Department.  And he just wanted
19   to be done.
20        Q.   And at any point was Mr. Duran going to
21   enter the RPP Program?
22        A.   No, ma'am.
23        Q.   Did you ever discuss that with him?
24        A.   We did.  We discussed it with everybody.  I
25   mean, anytime we do any interviews of any gang member
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

DNM 5653

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185

```
 1    we always offer RPP, whether they want it or not.
 2        Q.   And can you tell the Court, what is that
 3    program?
 4        A.   Restoration into the Population Program.
 5    It's essentially just for individuals that were part
 6    of a gang and wanting to leave the gang life.
 7        Q.   Were you involved in the providing Mr.
 8    Duran with a recording device?
 9        A.   Yes, ma'am.
10        Q.   Tell us about your involvement in that
11    process.
12        A.   I would receive the devices from the FBI,
13    and I would take them in the facility and give them
14    to Mr. Duran.
15        Q.   How would you do that?
16        A.   Different ways.  I'd either -- you know,
17    initially, I had to show him, Hey, this is what this
18    is, and how you turn it on and turn it off, and
19    either during chow -- I'd help serve chow.  I'd wait
20    till they were at recreation, nobody was in there,
21    and then deliver the device and pick up the other
22    one.
23        Q.   So when you would deliver the new device
24    and pick up the old one, would you do that at the
25    same time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5654

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5655

```
 1        A.   Yes, ma'am.
 2        Q.   And did you always do that at the same
 3   time?
 4        A.   Yes.
 5        Q.   How many times do you think you picked up
 6   and delivered a recording device from Mr. Duran?
 7        A.   It was a few.  I can't remember the exact
 8   number.
 9        Q.   Do you remember the time period for which
10   you were doing that?
11        A.   I want to say February, March of 2015,
12   maybe all the way up until December 2015.
13        Q.   And were you also involved in providing him
14   with a cellphone?
15        A.   Yes, ma'am.
16        Q.   Tell us about that.
17        A.   It was a preapproved deal, that they wanted
18   to introduce the cellphone for, you know, purposes of
19   investigation.  It was approved on our level.  And
20   that's way above my pay grade, central office
21   personnel.  Once everything was approved, I took it
22   in to him.
23        Q.   And were you involved in taking the
24   cellphone from Mr. Duran?
25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5655

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5656

```
 1        Q.   Can you tell us about that?

 2        A.   I believe -- I don't remember if it was the

 3   exact date of the actual takedown, if it was the

 4   actual cellphone or a device.  But when we went in

 5   there that day, he actually just handed it to us

 6   through the food port.  We opened the food port and

 7   he actually handed it to Mr. Cupit that day.

 8        Q.   He handed both the cellphone and the

 9   recording device?

10        A.   I don't remember exactly which one it was.

11   It might have been just one.  I believe it was a

12   cellphone.

13        Q.   And after you all got the cellphone from

14   Mr. Duran, what did you do with it?

15        A.   We took it straight with us to the takedown

16   area, which is the Gold Office in Albuquerque, and

17   handed it over.

18        Q.   Did you --

19        A.   It might have been the recording device.

20   I'm sorry.  It was one or the other.

21        Q.   Okay.  But were you involved, do you recall

22   being involved in taking the cellphone from

23   Mr. Duran?

24        A.   Yes, ma'am.

25        Q.   And when you took the cellphone from him,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5656

```
 1    did you examine it?

 2         A.   No, ma'am.

 3         Q.   Did you turn it on?

 4         A.   I turned it off, if it wasn't already off.

 5    Usually, it was always off.

 6         Q.   And did you delete anything from that

 7    cellphone?

 8         A.   No, ma'am.

 9         Q.   No pictures or texts?

10         A.   No, ma'am.

11         Q.   Did you ever, at any point, delete anything

12    off of that cellphone?

13         A.   No, ma'am.

14         Q.   So, from the time that you gave Mr. Duran

15    the cellphone initially, and then you retrieved it

16    from him sometime in December of 2015, did you touch

17    it anytime in between?

18         A.   Did I touch it?

19         Q.   Yes.

20         A.   No, ma'am.

21         Q.   And when you would retrieve the recording

22    devices from Mr. Duran, the ELSUR devices, what would

23    you do with them?

24         A.   I would take them to the FBI and give them

25    to them.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5658

1        Q.   Was there a particular person who you took

2    them to?

3        A.   Mr. Acee.

4        Q.   You mentioned that when you first gave

5    Mr. Duran the recording device, you gave him

6    instructions on how to use it.  Do you recall exactly

7    what you told Mr. Duran?

8        A.   The recording device, I believe it's just

9    basic on and off.  It's a little box.

10       Q.   Did you talk to him about the battery life

11   of the device?

12       A.   Just kind of -- I really don't know how to

13   work them, you know.  There is batteries on them.

14   You turn them on, turn them off.  Typically, after

15   there was -- I guess there was time where the

16   batteries kind of failed.  We'd get new batteries.

17   And I wouldn't even put them in the device.  I would

18   tape them to the side and then deliver them to Mr.

19   Duran.

20            MS. ARMIJO:  Your Honor, and if I can -- I

21   don't believe this witness knows that.  And I would

22   ask that he not describe the device in court, and

23   just talk only about the battery life and the on and

24   off switch, and not describe any recording device

25   specifically.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5658

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5659

1           THE COURT:  Let Ms. Duncan specifically ask

2      you questions about these devices.  I've entered some

3      orders that limit what can be disclosed on it.

4           THE WITNESS:  Okay.

5           THE COURT:  So you're welcome to answer her

6      questions.  Ms. Armijo can object, but just be

7      careful here about the description, particularly

8      about the port.  And so keep away from that, but

9      otherwise, you can go ahead and answer Ms. Duncan's

10     questions.

11          Q.   I'm not going to ask you what it looks

12     like.  I just want to understand how it operated and

13     how you got it to Mr. Duran.  So you said you taped

14     some batteries to the side.  The side of what?

15          A.   The side of the device.

16          Q.   So it was your understanding that the

17     device had batteries, but then you would give Mr.

18     Duran a spare set?

19          A.   If there was.  If not, he'd have an extra

20     one.

21          Q.   When you spoke with Mr. Duran about

22     cooperating with the STIU, did you also talk to him

23     about benefits he would receive?

24          A.   No, ma'am.

25          Q.   For example, did Mr. Duran ask you about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5659

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 191

1   getting lump sum credit on his sentence for

2   cooperating?

3        A.   Not initially, ma'am.

4        Q.   Did he talk to you about getting some of

5   his commissary back, his privileges back, in exchange

6   for cooperating?

7        A.   I don't recall.  I'm sorry.

8        Q.   And you said that he didn't talk to you

9   about the lump sum initially.  At what point did he

10  talk to you about that?

11       A.   He it brought it up.  I don't remember the

12  exact date, but he brought it up.

13       Q.   Did he talk to you about good time that he

14  had forfeited for earlier disciplinary issues?

15       A.   Yes, ma'am.

16       Q.   And did he ask you about giving him back

17  his good time?

18       A.   Yes, ma'am.

19       Q.   You were involved in the investigation of

20  Mr. Duran for possessing a contraband cellphone in

21  the past; correct?

22       A.   Yes, ma'am, I do recall that.

23       Q.   And can you tell us about that incident?

24       A.   I don't remember the exact date.  I know

25  that he was caught with one while housed at the North

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5660

```
 1    facility.
 2         Q.   Do you know how he got that cellphone into
 3    the North?
 4         A.   I don't, ma'am.
 5         Q.   And I think you said you can't recall how
 6    often you exchanged out the device; is that correct?
 7         A.   Yes.
 8         Q.   Did anyone other than you handle the
 9    recording devices?
10         A.   Other than Cupit, I have no idea, no,
11    ma'am, not that I recall.
12         Q.   Who was in charge of coordinating the
13    changing out of the recording devices?
14         A.   Usually, I would just do it myself.
15         Q.   And how would you know that it was time to
16    change out the device?
17         A.   Mr. Duran would contact me, or we'd --
18    whenever I got a new one, I'd switch them out.
19         Q.   And how would he contact you?
20         A.   He would call me.
21         Q.   Using what phone?
22         A.   The state phone, the inmate cellphone.  I'm
23    sorry, inmate Securus phone.  I apologize.
24         Q.   Okay.  So is that the phone that all
25    inmates use to call their families?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5661

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5662

```
 1          A.   Yes, ma'am.

 2          Q.   Is that also known as "the house phone"?

 3          A.   Never heard that.

 4          Q.   Did Mr. Duran call you using any phone

 5     other than the state-issued phone?

 6          A.   Not that I can recall.

 7          Q.   Did you ever facilitate phone calls between

 8     Mr. Duran and Mr. Acee?

 9          A.   Yes.

10          Q.   And tell us about that.  How did you

11     facilitate those phone calls?

12          A.   He'd call me, and I would do like a group

13     call, I guess you would call it.

14          Q.   So Mr. Duran would call you on the prison

15     phone, and you'd call Mr. Acee and you'd conference

16     it in?

17          A.   Correct.

18          Q.   So the calls that Mr. Duran would make to

19     you on the prison phone, were those recorded?

20          A.   No, ma'am.

21          Q.   And why not?

22          A.   It's a deal we have with Securus.

23          Q.   How does Securus know which phones should

24     be recorded, and which aren't?

25          A.   With my phone number, my state-issued
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5662

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5663

1    cellphone number.

2         Q.   Is it just the calls to your state-issued

3    phone number that aren't recorded or other calls not

4    recorded?

5         A.   Just to mine, I believe.

6         Q.   So as an attorney, if I had a client who

7    was in PNM North, could I give Securus my phone

8    number and they wouldn't record it?

9         A.   No, ma'am.

10        Q.   Other than these conference calls that

11   you've discussed, did you ever -- is there any other

12   way that you would facilitate communication between

13   Mr. Acee and Mr. Duran?

14        A.   None that I can recall.

15        Q.   Now, the STIU monitors inmate phone calls;

16   correct?

17        A.   Yes, ma'am.

18        Q.   Not the ones, obviously, you're making with

19   Mr. Duran, but the ones he has with his family?

20        A.   Yes.

21        Q.   And it's part of the regular duties of STIU

22   to monitor phone calls of suspected SNM; correct?

23        A.   We monitor phone calls of all inmates.

24        Q.   And did you monitor Mr. Duran's phone calls

25   while he was working as an informant for STIU?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yes, ma'am.
 2          Q.   And how about after the takedown in
 3   December of 2015?
 4          A.   I believe so.
 5          Q.   And were any reports written of monitoring
 6   his phone calls?
 7          A.   No, ma'am.
 8               MS. DUNCAN:  If I could just have a moment,
 9   Your Honor?
10               THE COURT:  You may.
11          Q.   Did you meet with Mr. Duran before going
12   with him to meet with the FBI?
13          A.   I'm sorry.  Can you --
14          Q.   Yeah, it was a bad question.  I apologize.
15               So were you involved in arranging the
16   meeting with the FBI?
17          A.   Yes, ma'am.
18          Q.   Did you meet with Mr. Duran to prepare him
19   for that meeting?
20          A.   I'm sure I advised him.
21          Q.   And what did you advise him?
22          A.   That he would be going, at his request, to
23   speak with the FBI.
24          Q.   And did you talk to him about what would be
25   discussed during the FBI meeting?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5664

 1        A.   No, ma'am.

 2        Q.   And when you met with the FBI, did you

 3   prepare any documents for them?

 4        A.   I don't recall taking anything with me, not

 5   that time.

 6        Q.   So the time that you met with Mr. Duran and

 7   the FBI, you didn't?

 8        A.   Initially, no, ma'am.

 9        Q.   But then later in the investigation, you

10   did provide documents; is that correct?

11        A.   Yes.

12        Q.   Were you present during any other

13   interviews between Mr. Duran and the FBI?

14        A.   Yes, ma'am.

15        Q.   And when were those interviews?

16        A.   I don't recall.  I'm sorry.  It's been a

17   little bit, and there are so many.

18        Q.   Sure.  So do you know -- for example, have

19   you been involved in any interviews with Mr. Duran

20   since the takedown in December 2015?

21             MS. ARMIJO:  Objection, relevance.

22             THE COURT:  What's the relevance to the two

23   motions?

24             MS. DUNCAN:  I think the relevance would

25   be, Your Honor, that -- our argument is that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5665

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5666

```
 1   Mr. Duran's ongoing participating in this case is
 2   coerced.  So knowing the scope of his participation
 3   is relevant to understanding that coercion.
 4               THE COURT:  Let me see what his answer is,
 5   then I'll determine whether I'm going to allow any
 6   more testimony.
 7        A.   Will you repeat the question?
 8        Q.   Of course.  Were you involved in any
 9   meetings between Mr. Duran and the FBI after the
10   takedown in December of 2015?
11        A.   Yes, ma'am.
12        Q.   And when was that?
13        A.   I don't recall.  There were a few -- we had
14   him housed in state custody.  So --
15        Q.   So would you participate in the meetings
16   between Mr. Duran and the FBI -- every meeting while
17   he was in state custody?
18        A.   I wouldn't say every meeting, but I'm
19   usually around, yes, ma'am.
20        Q.   Was anyone else from STIU participating in
21   those meetings?
22        A.   Yes, ma'am.
23        Q.   Who?
24        A.   It depends on the day, and days off, and
25   who is around.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5666

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5667

```
 1        Q.   So did everyone in the STIU know that
 2   Mr. Duran was an informant?
 3        A.   Within my crew, yes, ma'am.
 4        Q.   And who is part of your crew?
 5        A.   I'm sorry -- in my crew -- my unit.  I
 6   apologize.  Chris Cupit; Ramil Loya at the time;
 7   sergeant Ron Martin; Adam Vigil.
 8             MS. DUNCAN:  Your Honor, if I could just
 9   have a moment?
10             THE COURT:  You may.
11             MS. DUNCAN:  I have no further questions.
12             THE COURT:  Thank you, Ms. Duncan.
13             Any other defendants have
14   cross-examination?  Ms. Sirignano.
15             MS. SIRIGNANO:  Quick question.
16                      EXAMINATION
17   BY MS. SIRIGNANO:
18        Q.   Good afternoon.
19        A.   Good afternoon.
20        Q.   You said that you participated in meetings
21   with the FBI and Mr. Duran; correct?
22        A.   Yes, ma'am.
23        Q.   Can you give me a ballpark number of how
24   many meetings you think you attended?
25        A.   Are we talking meetings, or just --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5667

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 99668

 1          Q.   Well, why don't you break it up and just
 2     give me an idea of --
 3          A.   Are you talking about, like, actual
 4     meetings?
 5          Q.   Yes.
 6          A.   Or are we talking about just regular
 7     interaction?
 8          Q.   With the FBI and Mr. Duran?
 9          A.   You mean individually, by himself?
10          Q.   Yes, let's start with that.
11          A.   I couldn't recall all of them, ma'am.  I'm
12     sure there was plenty.
13          Q.   "Plenty" meaning more than 20?
14          A.   I have no idea.  I couldn't answer that.
15          Q.   So between -- you can't give me just a
16     ballpark.  I mean, I'm not looking for -- to nail you
17     in on something.  But was it once a month?  Was it
18     more than once a month?
19          A.   Well, I mean, there is -- actual meetings
20     where he was pulled out?
21          Q.   Yes.
22          A.   By himself?
23          Q.   Yes.
24          A.   After 2015?
25          Q.   Yes.  No, no, while he had the cellphone

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5668

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200669

```
 1   and the recording device.  Let's start with those
 2   first.
 3        A.   I don't have anything in front of me.  I
 4   mean, there was bunch of times that we talked to him,
 5   yes, ma'am.  But I couldn't recall every single time.
 6        Q.   So could you just give me a ballpark what a
 7   "bunch" means to you?
 8        A.   I'm sorry, I couldn't.  We were in pretty
 9   much constant contact, so --
10        Q.   With the FBI?
11        A.   Yes, ma'am.
12        Q.   So, actually transporting him down to the
13   FBI building, can you give me an idea of how many
14   times that might have happened?
15        A.   I know it happened initially the first
16   time.  I'm drawing a blank on the rest of them, I'm
17   sorry.  I don't have anything in front of me to refer
18   to, so --
19        Q.   Did it increase or decrease after the
20   arrests in December of 2015?
21        A.   I would say decreased.
22        Q.   And who would attend those meetings
23   generally?
24        A.   The FBI and us.
25        Q.   Who with the FBI?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5669

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1          A.   Mr. Acee.

 2          Q.   Anyone else?

 3          A.   Like I said, I can't recall.  We've done so

 4     many.  And I don't have it in front of me, I can't

 5     reference it, and I don't want to guess.

 6          Q.   And when you said "and us," meaning the

 7     STIU Unit?

 8          A.   Yes.

 9          Q.   And who would go with you, generally?

10          A.   Usually, they need -- well, any of my guys

11     that are available, between scheduled days off, and

12     vacations, and stuff like that.  It's who I have

13     around.

14          Q.   And prior to 2015, was Mr. Duran working

15     with anyone else other than the FBI in law

16     enforcement?

17          A.   Just I'm aware of 2014, is when I initially

18     talked to him.

19          Q.   And that was it?

20          A.   That I'm aware of yes, ma'am.

21          MS. SIRIGNANO:  Thank you.  Pass the

22     witness.

23          THE COURT:  Any other defendant have

24     questions of Mr. Sapien?  Mr. Villa?

25          MR. VILLA:  Thank you, Judge.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5670

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202671

```
 1                      EXAMINATION
 2   BY MR. VILLA:
 3        Q.   Good afternoon, Mr. Sapien.
 4             Were you aware of who Mr. Duran was
 5   recording at the time you were providing these
 6   recording devices?
 7        A.   Yes, sir.
 8        Q.   Who do you know that he recorded?
 9        A.   I know he recorded Mr. Baca, Anthony Ray
10   Baca.  I believe -- I'm sorry, I'm having one of
11   those days.  Mario Rodriguez was in on some of those
12   recordings.
13        Q.   What was the first name?
14        A.   Mario.
15        Q.   Who also goes by "Blue"?
16        A.   Yes, sir.
17        Q.   What about Timothy Martinez?
18        A.   I don't recall, sir.  I don't recall.  I
19   was trying to think about --
20        Q.   Billy Cordova?
21        A.   No, sir.
22        Q.   Rudy Perez?
23        A.   Not that I recall.
24        Q.   Did you listen to these recordings?
25        A.   Yes, sir -- not all of them.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5671

```
 1          Q.   But you listened to recordings, for

 2    instance, of Mario Rodriguez?

 3          A.   Yes, sir.

 4          Q.   And I apologize, I think you said you

 5    weren't sure about Timothy Martinez?

 6          A.   Yes, sir.

 7               MR. VILLA:  May I have just a moment, Your

 8    Honor?

 9               THE COURT:  You may.

10               MR. VILLA:  That's all the questions I

11    have.

12               THE COURT:  Thank you, Mr. Villa.

13               Any other defendants have questions of Mr.

14    Sapien?

15               All right.  Ms. Armijo, do you have

16    redirect of Mr. Sapien?

17                    REDIRECT EXAMINATION

18    BY MS. ARMIJO:

19          Q.   You spoke a little bit about how Mr. Duran

20    initiated good time and lump sum credit or lump sum

21    amount and some good time credit?

22          A.   Yes.

23          Q.   And when was that?  Do you recall?

24          A.   I want to say early 2015 sometime, March,

25    April.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5672

```
 1        Q.    Sometime after the initial meeting?

 2        A.    Yes, ma'am.

 3        Q.    And did you make him any promises as to

 4   that?

 5        A.    No, ma'am.  I did advise him I'm not the

 6   classification worker.  And that type of math, and

 7   dealing with that, I have no dealing with.

 8        Q.    All right.  So was his cooperation in any

 9   way conditioned upon any promises that you made to

10   him?

11        A.    No, ma'am.

12        Q.    And who was primarily in charge of the

13   recordings?  Was it your agency or was it FBI?

14        A.    FBI.

15              MS. ARMIJO:  I have nothing further.  Thank

16   you.

17              THE COURT:  Thank you, Ms. Armijo.

18              All right.  Mr. Sapien, you may step down.

19   Is there any reason that Mr. Sapien cannot be excused

20   from the proceedings?  Ms. Armijo?

21              MS. ARMIJO:  No, Your Honor.

22              THE COURT:  How about any of the other

23   defendants?  Can he be excused?  Not hearing any

24   objections, Mr. Sapien, you're excused from the

25   proceedings.  Thank you for your testimony.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5673

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205

 1              MS. ARMIJO:  Your Honor, he is one of our

 2    expert witnesses, and since he's excused from -- we

 3    didn't have him in earlier because of the hearing,

 4    and he was going to be testifying.  Is there any

 5    objection to him sitting in now?

 6              THE COURT:  I don't guess I see any

 7    problem.  Anybody else have any problem?  All right.

 8    Not hearing any --

 9              MR. CASTLE:  Judge, I do.  I think the last

10    time we heard from one of their proposed expert

11    witnesses, it turned out that it was also a

12    percipient witness.  Too many things.  So I don't

13    think that we should, when they're these hybrid kinds

14    of witnesses, I don't think we should use the expert

15    witness exception to the rule.

16              THE COURT:  I tend to agree.  If they're

17    going to be both a fact witness and an expert

18    witness, if they're sitting in, I'm inclined to agree

19    with it.  So you're excused from this proceeding.

20    But you can't sit in on the testimony because you are

21    a fact witness in this case.

22              THE WITNESS:  Yes, sir.

23              THE COURT:  All right.  Ms. Armijo, does

24    the Government have its next witness or evidence on

25    these two motions?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5674

```
 1              MS. ARMIJO:  May I have a moment?

 2              THE COURT:  Certainly.

 3              MS. ARMIJO:  That's all we have, Your

 4    Honor.

 5              THE COURT:  Thank you, Ms. Armijo.

 6              Ms. Duncan?  Mr. Lowry?  Does Mr. Baca have

 7    any witnesses or evidence he wishes to present?

 8              MR. LOWRY:  Yes, Your Honor.  We have

 9    Edward Urtiaga out in the hall.

10              THE COURT:  All right.

11              MS. ARMIJO:  Your Honor, before that

12    witness is brought in, can we approach on this issue?

13              MR. LOWRY:  Sure.

14              (The following proceedings were held at the

15    bench.)

16              THE COURT:  What this is witness' name?

17    Edward what?

18              MR. LOWRY:  Edward Urtiaga, U-R-T-I-A-G-A.

19              MS. ARMIJO:  And, Your Honor, my

20    understanding is that they were going to call him

21    tomorrow.  I was surprised they're calling him today.

22    Mr. Urtiaga has Giglio we would be probably using to

23    show a bias.  He's on administrative leave.  My

24    understanding is New Mexico State Police is

25    investigating him for an incident that occurred.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  What is, or what was his
2    position?
3              THE CLERK:  Judge, if --
4              MS. ARMIJO:  At the time, or now?  We know
5    he had been removed from STIU, and he was a
6    correctional officer.
7              THE COURT:  Okay.
8              MS. ARMIJO:  So I think that they would --
9    possibly to show bias.  We would have a right to
10   question him about it.  But we would be advised that
11   he has a Fifth Amendment right as to that.  But I
12   haven't had a chance to call the New Mexico State
13   Police on it.  But if I had known that, I would have
14   called him over lunch.  I have to call State Police
15   to ask him about the status of the investigation.
16             THE COURT:  I'm sorry I'm being so slow on
17   this, but you're calling an STIU officer to the stand
18   that's going to testify generally about what?
19             MR. LOWRY:  He was going to testify about
20   the February 18 threats made to his life.
21             THE COURT:  Oh, that's right.
22             MR. LOWRY:  And I don't disagree with what
23   Ms. Armijo said.
24             THE COURT:  So you're trying to establish
25   that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5676

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

```
 1            MR. LOWRY:  That precipitated the meeting.
 2   And I realize where we are in the process.
 3            THE COURT:  So what are you concerned about
 4   him testifying?  What do you need?
 5            MS. ARMIJO:  Well, I would be concerned
 6   that -- I don't know.  I haven't spoken to him.  I
 7   don't know what he's going to say as far as anything
 8   else, or the extent of it.
 9            THE COURT:  The extent of what?
10            MS. ARMIJO:  The extent of his testimony.
11   I do know that there were other inmates present other
12   than Mr. Duran.  And I know that Mr. Duran has read
13   the reports and disagrees with what was written on
14   the reports.  I mean, I don't think there is any
15   dispute that Mr. Duran was disciplined for it.  And I
16   think the Court will consider those records.  But I
17   just think it can get very messy with this witness.
18   And the fact that -- and my concerns are an open
19   investigation on him.  It's for excessive force on an
20   inmate.
21            MR. CASTELLANO:  So the issue, Your Honor,
22   is that he may be impeached related to that
23   investigation and any bias he has against the
24   Corrections Department now in his testimony before
25   the Court.  So there is potential impeachment against
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    him.  But at the same time, we're going to run

 2    against his Fifth Amendment privilege by doing so.

 3    So that's where it gets a little tricky, is they're

 4    going to impeach him potentially on his bias, then

 5    that includes when he's on leave now and facing

 6    criminal investigation.

 7            THE COURT:  Does he have an attorney on

 8    those issues?

 9            MS. ARMIJO:  We haven't discussed it with

10    him.

11            MS. DUNCAN:  Your Honor, we didn't mean to

12    surprise you.  We just ran faster.  So we would agree

13    to put him first thing tomorrow, and go on to Agent

14    Acee.

15            MS. ARMIJO:  We're still going to have the

16    issue tomorrow.  The only thing that's different -- I

17    can make a call to the New Mexico State Police, and

18    they'll tell me:  We completed our investigation, we

19    haven't completed it.  At least I can give the status

20    update.  But I think the issue will remain.

21            THE COURT:  Do you think if you called the

22    State Police, and let's say you called the State

23    Police and they're done, they're not going to do

24    anything with him, you think your problems or

25    concerns are cleared up?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5678

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 210

```
 1              MS. ARMIJO:  Maybe his Fifth Amendment

 2    right may be cleared up to some extent.  But I think

 3    there is a good chance he's going to be fired by

 4    Corrections regardless.

 5              THE COURT:  Be fired?

 6              MS. ARMIJO:  Yes.

 7              MR. LOWRY:  For testifying?

 8              MS. ARMIJO:  No, not for testifying.

 9              MR. LOWRY:  We want to make that clear on

10    the record.

11              MS. ARMIJO:  No, for his actions that he's

12    under investigation for.  My understanding is that it

13    was not a simple --

14              THE COURT:  Well, I guess, you know,

15    somebody can correct me if I'm wrong, you know, that

16    may have some consequences for him from a civil

17    standpoint, personal standpoint.  But it's not

18    criminal.  So it sort of seems like it's not a

19    problem from a constitutional standpoint.  And so I

20    don't have to worry about him having counsel.  I

21    don't have to worry about him being prosecuted.  He

22    may lose his job on it, but that happens almost every

23    case, somebody is going to suffer some personal

24    consequences.  So I'm inclined to skip that one and

25    see if we can find out whether he's got some criminal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5679

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 211680

1    liability we need to be worried about.

2            MS. ARMIJO:  That's fine.  If they call

3    Special Agent Acee, I can step out and do that.

4            THE COURT:  All right.  Is that agreeable

5    to y'all?

6            MR. LOWRY:  That's fine.  We had called him

7    because we were concerned about running out of

8    witnesses, and that's exactly what happened.  So we

9    can call Bryan Acee.

10           THE COURT:  Okay.  You can step out and

11   make your call.  Let's go ahead and do Acee.  And

12   we're going to take a break here in a little bit

13   anyway.

14           MS. ARMIJO:  Okay.

15           (The following proceedings were held in

16   open court.)

17           THE COURT:  All right.  Mr. Acee, you're

18   being called, so if you'll come up and stand next to

19   the witness box.  Before you're seated, Ms.

20   Standridge will swear you in.

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                        BRYAN ACEE,

 2          after having been first duly sworn under oath,

 3          was questioned and testified as follows:

 4                        DIRECT EXAMINATION

 5              THE CLERK:  Please be seated and state your

 6     name for the record.

 7              THE WITNESS:  Bryan Acee.

 8              THE COURT:  Mr. Acee, Mr. Lowry.

 9     BY MR. LOWRY:

10        Q.   Agent Acee, when did you first come to meet

11     Eric Duran?

12        A.   August 2015.

13        Q.   And what precipitated your meeting with

14     Mr. Duran?

15        A.   I'd been assigned to the investigation of

16     the SNM.  Agent Brusuelas and Captain Sapien, that

17     you just heard from, notified me that they had an

18     informant within the S up at the North.

19        Q.   And did you ask to speak with him, or how

20     did the meeting come about?

21        A.   Yes, at some point I did, yes.

22        Q.   Prior to that, who was Mr. Duran's handler?

23        A.   Katherine Brusuelas.

24        Q.   And was there a point in time when you took

25     over those duties?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5681

213682

1      A.   Yes, sir.  I think it would have been in

2    about August.

3      Q.   As a matter of policy, how does that take

4    place within the FBI?

5      A.   It's a simple switch, in terms of his Delta

6    file, or his informant file.  We send an email, and

7    the office changes the handling agent.

8      Q.   Do you review that file before you take

9    over handling that agent -- or that CI?

10      A.   I can.

11      Q.   I guess my question is, at that point in

12    time, when you took over handling Mr. Duran, was he

13    already in the process of recording folks in the

14    prison?

15      A.   He was.  There was some trouble with that.

16    But I believe they'd tried.

17      Q.   What do you mean there was trouble with it?

18      A.   When I met Duran, he claimed he had made

19    several recordings.  And when I checked that, there

20    weren't any.  So then I talked to Agent Brusuelas,

21    and she was under the impression as well that he did.

22    And it turns out that the device they were using,

23    which I'm familiar with, was smaller, and didn't

24    work.  I think the batteries were dead.

25      Q.   The entire time he had the device, or --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 214683

```
 1        A.   No.  Because there was one recording on

 2   there of Timothy Martinez, so that indicates to me --

 3   because I wasn't handling Duran when he did that one.

 4   So I think there was enough power on the device to

 5   get that conversation, however long it lasted.  Duran

 6   claimed that he also had a really long conversation

 7   with Mario Rodriguez.  And that doesn't exist.

 8        Q.   And the first call was with Tim Martinez, I

 9   believe you said?

10        A.   Yes.  Not a call, but a recording.

11        Q.   A recording, an ELSUR recording?

12        A.   Yes.

13        Q.   Was that turned over in discovery?

14        A.   Yes.  As I understand it, a number of the

15   cooperators have told me -- they kind of tell me

16   where on the tablet it is.  But I'm not sure exactly.

17        Q.   Was that the same type of recording

18   device -- without going into specifics -- that was

19   used later, when you took over the duties of handling

20   Mr. Duran, or did you change makes, models?

21        A.   It was not the same device.  It was very

22   different.

23        Q.   Now, did you talk to him about how to

24   handle the new device that you gave him?

25        A.   Yes.  Without going into great detail, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5683

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 215

1    original device was more complex.  And I had tried it

2    in the prisons on another case as well.  I didn't

3    like it.  We were getting the device back and the

4    recordings weren't on there.  So we dumbed it down to

5    this simple device we talked about a bunch in here,

6    with an on and off switch.  So I think I had some

7    conversation with him about that.

8         Q.   Now, is there a standard set of protocols

9    that you would go through to -- I'll use the word

10   train, but instruct, you know, school a confidential

11   informant on how to use the device?

12        A.   No.  Particularly not a simple one like

13   that.

14        Q.   Would there be any protocols within the FBI

15   about, you know, making sure you get complete

16   recordings of conversations?

17        A.   To answer your question, no.  Is there a

18   protocol within the FBI?  No.

19        Q.   Would that be something you would be

20   concerned about, as an FBI agent handling a

21   confidential informant, to make sure you capture a

22   conversation from the beginning of it until the end

23   of it?

24        A.   Yes and no.

25        Q.   Why yes?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5684

1    A.   Well, if the informant tells me a

2    conversation happened, and it's not on there, then

3    they're going to have to do it over.  They don't get

4    credit for it, or we don't use it in terms of asking

5    for prosecution.

6    Q.   Why no?

7    A.   Well, we're in the most secure facility in

8    the state in terms of a prison.  And we had

9    significant challenges getting recording devices in

10   there, and significant failures attempting to do so

11   early on.  So we also had failures with the devices

12   themselves in terms of the battery life.  So I say no

13   because a new battery life was an issue.  And I made

14   that known to the sources.  So, in that case, if two

15   neighbors are talking endlessly for hours, they're

16   going to have to turn it off.

17   Q.   Why not just wire the cells, you know,

18   independently so you didn't have to worry about

19   battery life or anything like that?

20   A.   We thought of that.  We considered that.

21   We considered using car battery type things.  The

22   problem was we couldn't get techs into the

23   institution.  All of the inmates are very watchful,

24   particularly the SNM.  I've been in their pod a

25   number of times.  And they know we're coming as soon

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5686

1   as we hit the gates.

2       Q.   Was there a way to wire the cells so you

3   didn't have to come and go, so it could just be

4   independent?

5       A.   I'm not a tech agent.  But I did ask that.

6   That was my preference.  And I think we went as far

7   as doing some site survey, the tech agents.  And they

8   could not come up with a plan and not compromise

9   security, so no.

10      Q.   So if I understand your answer -- and

11  correct me if I'm wrong -- this was the best

12  available solution you had to make recordings in this

13  particular unique environment?

14      A.   Yes, sir.

15      Q.   How often -- when you talked about battery

16  life, in your experience, how often did you have to

17  change out the batteries for any particular device?

18      A.   That's a tough one.  Because when we get it

19  back -- as you may recall from some of the other

20  hearings, I don't handle the device other than to

21  turn it in.  So I don't know if an informant has used

22  it for a couple of weeks, and then I turn it in, I

23  don't know how much battery life is left.  So it's

24  hard for me to say.  But I would rely primarily on

25  the informants to tell me, Hey, I've got a lot of




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5687

```
 1    conversation.  And that was my indicator that we need
 2    to probably switch the device.
 3         Q.   Now, Captain Sapien just spoke -- would you
 4    nudge Sapien to switch out the device, or how would
 5    he know to go in?
 6         A.   Actually, from my recollection, a number of
 7    times he told me, because he had more communication
 8    with the informants in the Level 6 than I did.  He
 9    had more awareness.
10         Q.   Because he's there on a daily basis?
11         A.   Correct.
12         Q.   So is there any way for the individual
13    handling the device to know how much battery life is
14    left in it?
15         A.   No.  They're going to be estimating.  But
16    they don't know.  There is no readout or anything
17    like that.
18              MR. LOWRY:  May I have a moment, Your
19    Honor?
20              THE COURT:  You may.
21         Q.   Is the only way an individual using the
22    device would know the battery is dead if the light
23    wouldn't come on when you tried to activate it?
24         A.   That makes sense on that particular type of
25    device.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219 5688

1      Q.   How often did you review -- when you clawed

2    back a device, how eager were you to review the

3    audios that were on it?

4      A.   I wasn't.  I had newer agents doing that.

5      Q.   I take it those newer agents would give you

6    feedback about what was there?

7      A.   Yes, they wrote a summary.  I think you had

8    me -- or perhaps, it may have been Mr. Castellano --

9    but I read through the bullet point summaries.  They

10   would write those.

11     Q.   Okay.  And were you part of, I think, of

12   Joe Sainato's conversations with Mr. Duran about the

13   quality of the recordings?

14     A.   No.  That agent would report that he was

15   having a problem, and indicate that he was going to

16   communicate that to Duran.  That's the extent I would

17   have been involved.

18     Q.   Did anybody ever express any concern to you

19   that the way the recordings were being made -- and by

20   that -- let me withdraw that question, Your Honor.

21          Is it fair to say that sometimes you just

22   have snippets of conversations?

23     A.   Yes.

24     Q.   And is it fair to say, more often than not,

25   the recordings that we see on the ELSUR devices

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                              1-800-669-9492
                                                  e-mail: info@litsupport.com



DNM 5688

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 220689

```
 1    really were just partial conversations?
 2         A.   Well, they're not complete.  Some of them
 3    are -- you know, they last several minutes.  But
 4    where they start and where they end might be cut off.
 5              MR. LOWRY:  Where did we leave off on
 6    exhibit numbers?
 7              THE COURT:  I think on this hearing it's
 8    Exhibit C, am I correct, Ms. Standridge, on this
 9    hearing?
10              THE CLERK:  I'm looking for it.
11              THE COURT:  Use Exhibit C.
12              THE CLERK:  I think so.  D as in dog.
13              THE COURT:  So it will be Exhibit D, Mr.
14    Lowry.
15              MR. LOWRY:  Thank you, Your Honor.  If I
16    may.
17         Q.   So I'm just putting on the Elmo what I've
18    marked as Defendant's Exhibit D.
19              THE COURT:  Do you have any objection to
20    this, Ms. Armijo?
21              MR. CASTELLANO:  No objection, Your Honor.
22              THE COURT:  Anybody else?  You're moving
23    its admission?
24              MR. LOWRY:  Yes, I am, Your Honor.
25              THE COURT:  Defendant's Exhibits D will be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5689

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221690

1    admitted into evidence.  Mr. Baca's Exhibit D.

2              MR. LOWRY:  If I could focus this.

3         Q.   Do you see that?  And Special Agent Acee,

4    this is what you're talking about some of the calls,

5    some of the snippets would be anywhere from

6    two-and-a-half minutes on this particular exhibit,

7    which is in three parts, of the 16-and-a-half

8    minutes, roughly?

9         A.   Yes.

10        Q.   And so nothing -- the length of the

11   recording would be completely dictated by this

12   objective point of view of Mr. Duran?

13        A.   Well, it would be completely subjective to

14   the on and off switch.

15        Q.   Well, the on and off switch didn't have any

16   ability to cut itself on or off, did it?

17        A.   I don't think so.

18        Q.   Okay.  And so the person operating the

19   device would be Mr. Duran?

20        A.   Yes, sir.

21        Q.   And something in his mind had to trigger

22   him to cut the switch on?

23        A.   Correct.

24        Q.   And something triggered it to cut off.

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.    And that would just be his independent

2    opinion about whether the conversation was worthy of

3    recording?

4    A.    He was in total control of the device.

5    Q.    And, again, I want to cycle back just to

6    make sure we're clear on the record.  But there was

7    never any advice, instruction, encouragement, hey,

8    when you get up in the morning and you say, "Good

9    morning, Mr. Baca" -- cut it on then, see what you

10   get, and then cut it off?

11   A.    No, I didn't give him any advice like that.

12   Q.    So what advice did you give him in terms of

13   what you wanted to see on the recordings?

14   A.    Well, in our first interaction in August,

15   after I met him, he told me that he had made several

16   recordings, which I couldn't find.  So my advice to

17   him was to make sure the device was on, to not leave

18   the device on.  And to capture conversations related

19   to the Molina murder and the conspiracy to kill the

20   corrections officials.

21   Q.    Did it ever concern you that Mr. Duran

22   might, you know, lead somebody into a conversation

23   just to record them?

24   A.    Well, yes.  I mean, I have that concern

25   with all informants.  But I have to let the recording

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5691

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223692

```
1    speak for itself.

2         Q.   And I guess that's my point.  Can the

3    recording really speak for itself, if it's not

4    completed?

5         A.   I think it can.  If there is enough there,

6    if we can corroborate that with other information

7    that we're getting from other sources or other

8    recordings.  So, you know, a partial recording on

9    itself, if an informant just brought it to me and

10   said, Mr. Lowry committed this crime, here is ten

11   seconds, that's garbage.  But to have those other

12   sources I mentioned, that helps put it together for

13   us.

14        Q.   Did it ever cause you concern -- okay, you

15   have -- Mr. Duran has the ELSUR device and at the

16   same time he's issued a cellphone by the FBI;

17   correct?

18        A.   Yes.

19        Q.   And you were in relative -- well, let's put

20   it this way:  You could communicate with Mr. Duran

21   via text messaging if and when you wanted to?

22        A.   I could.

23        Q.   In the text messages that were disclosed in

24   this case, at various times in early -- well, after

25   Mr. Baca arrived back to Level 6 -- I believe it was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   October 22, 2015?

 2        A.   That sounds about right.

 3        Q.   And at this point in time, Mr. Duran called

 4   it his mission to record Mr. Baca regarding the

 5   Marcantel --

 6        A.   I think I remember seeing that.

 7        Q.   Was that your understanding of his mission?

 8        A.   It was part of it.

 9        Q.   But when you first met him in August, he

10   had told you Mr. Baca is eager to make this Marcantel

11   hit happen?

12        A.   I don't know.  Because, I mean, it took us

13   some time to get Mr. Baca back.  And I didn't

14   communicate that to Duran until right before he was

15   there.  Like, I wouldn't be communicating our

16   investigative plans to any of the informants until

17   they needed to know.

18        Q.   So do you recall drafting an FBI report

19   after you first met Mr. Duran on the 5th of August,

20   2015?

21        A.   I don't know if I did that one.  But I'm

22   sure there is a report.

23             MR. LOWRY:  May I approach, Your Honor?

24             THE COURT:  You may.

25             Why don't we do this:  This is probably a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5693

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225694

```
 1   good time for us to take our afternoon break.  So why
 2   don't we be in recess for about 15 minutes.
 3              MR. LOWRY:  That's fine, Your Honor.
 4              (The Court stood in recess.)
 5              THE COURT:  Let's go back on the record.
 6   It looks like every defendant has an attorney.  But
 7   make sure that your co-defendant has an attorney.
 8              All right.  Mr. Acee, I'll remind you that
 9   you're still under oath.
10              Mr. Lowry, if you wish to continue your
11   cross-examination of Mr. Acee, you may do so at this
12   time.
13              MR. LOWRY:  Thank you, Your Honor.  I was
14   going to approach the witness to refresh his
15   recollection.
16              THE COURT:  You may.
17              MR. LOWRY:  Thank you.
18        Q.   Now, what I've handed you, just to refresh
19   your recollection, is that your initial report
20   documenting the initial meeting you had with
21   Mr. Duran?
22        A.   Yes, sir.
23        Q.   Okay.  And there is a highlighted portion.
24   I think it's on the third page of that.  But at the
25   top of that highlighted portion, you drafted your
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226

 1   report, and according to your report, Mr. Duran

 2   reported to you that Mr. Baca was eager to hit the

 3   Secretary of Corrections, Gregg Marcantel?

 4        A.   Yes, sir.

 5        Q.   So my question to you is:  Did it surprise

 6   you at all, when Mr. Duran began to record Mr. Baca,

 7   and there was no initial interest in putting a hit on

 8   Secretary Marcantel?

 9        A.   No, I wasn't surprised.

10        Q.   Were you surprised when Mr. Duran tried to

11   ask -- not tried, but Mr. Duran point-blank asked Mr.

12   Baca if he wanted to hit Secretary Marcantel, and Mr.

13   Baca said no?

14        A.   I think you're referring to transcripts

15   that we went over.

16        Q.   That's correct, and it's part of the

17   motion.  But --

18        A.   I'm sorry?  The question was, was I

19   surprised?

20        Q.   Correct.

21        A.   No.

22        Q.   Why not?

23        A.   Well, from what I recall from that

24   transcript, they were speaking over each other, too.

25   And Baca's response, if I remember correctly, was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5695

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25696

```
 1    just simply, "No," with no elaboration after that.
 2    So I don't know if that "no" was in relation to him
 3    asking the question about hitting Marcantel, or if it
 4    was an earlier question.
 5         Q.   Okay.  But these initial recordings -- and
 6    if we look at them again on Defendant's Exhibit D --
 7    I mean, all the recordings -- and I have all the
 8    transcripts here -- but could you point to a single
 9    transcript in the month of October where Mr. Duran
10    recorded Mr. Baca, where Mr. Baca said:  I want to
11    hit Secretary Marcantel?
12         A.   I don't know if those are in the October
13    transcripts.
14         Q.   Okay.  So the answer to my question is no,
15    none of these recordings in October?
16         A.   Well, I don't want to be uncooperative with
17    you.  But my answer is I don't know what's in the
18    October transcripts without looking at them.  And
19    this isn't a representation of the transcripts.
20         Q.   Fair enough.  And I was going to try to
21    avoid doing this.  But would you like to see a set of
22    the transcripts for the month of October?
23         A.   If you'd like me to review them, I will.
24         Q.   Do you have an independent recollection of
25    whether there was any kind of representation made by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228697

1   Mr. Baca during the month of October, that he wanted

2   to see the Secretary Marcantel murdered?

3       A.   My recollection is those conversations

4   picked up later in the investigation throughout the

5   last couple of weeks of November.

6       Q.   So I want to come back to the question that

7   I was really driving at.  If Mr. Duran told you that

8   Mr. Baca was so eager to have Mr. Marcantel killed,

9   why weren't you concerned that you have, what, nine

10  days and hours worth of recordings here with nothing

11  on it?

12      A.   Sure.  Well, Mr. Duran's reporting to us

13  that Baca was eager to hit Santistevan was actually a

14  conversation from 2013, I believe, is what Duran was

15  relating, that happened down here in Las Cruces at

16  the Southern New Mexico Correctional Facility.

17          Duran eased his way into that conversation

18  over a six- to eight-week period.  He didn't open up

19  with that.  I don't know if I'm answering your

20  question.

21          But we're combining the statement made in

22  2013 with no recorder.  Then now we've introduced a

23  recorder, and we've asked him to get Baca to talk

24  about that again.

25      Q.   How do you know that statement in 2013 was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5697

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229698

1   actually made?

2      A.   Well, I can't be certain of it.  But I've

3   heard it from three people that were in the hole, or

4   in the Ed Seg area together.

5      Q.   Because when we started this conversation

6   this afternoon, I believe what you said was, if it

7   wasn't on the recording, it sort of didn't really

8   happen, you missed your opportunity?

9      A.   I prefer a recording.  If three different

10   sources are telling me something happened, that may

11   not be enough to prosecute them.  I don't make those

12   decisions.  But I prefer a recording.

13      Q.   Do you think Mr. Duran was a skilled

14   manipulator?

15      A.   Probably.

16      Q.   Do you think he manipulated the people

17   around him?

18      A.   Depending who they were.

19      Q.   Did he manipulate women?

20      A.   Probably.

21      Q.   From your review of the recordings, does he

22   manipulate women in his life?

23      A.   I think he's pretty skilled at that.

24      Q.   And he manipulates people to get money?

25      A.   He manipulates people to give him money?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5698

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 230 of 699

1      Q.    Well, he manipulates women to give him

2   money.

3      A.    He may have.   I can't think of any

4   circumstances where I saw that.

5      Q.    Have you listened to any of the regular

6   jail recordings?

7      A.    I've listened to a lot of jail recordings.

8      Q.    Did you have any of your staff listen to

9   the jail recordings with Carolyn Bueno?

10      A.    I don't -- I'm not familiar with that

11   conversation.

12      Q.    But you would agree that he is a very

13   skilled manipulator?

14      A.    No.   I mean, does Mr. Duran -- did

15   Mr. Duran manipulate me?   I don't think so.   I think

16   it depended who it was.

17      Q.    Well, I didn't say that.   But with regard

18   to the inmate population.

19      A.    I think Mr. Duran has the gift of gab, and

20   some people fall for it, and some people don't.

21      Q.    So I'm going to hand you what I'm going to

22   mark as Defendant's Exhibit E.   You remember the

23   bullet points you were talking about in the FBI

24   report you did, the FD 1023?

25      A.    Yes, sir.   I think Mr. Sainato did this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5699

```
 1   one.  But I do remember it.
 2        Q.   And if we look at this call here, it's the
 3   10th call, this initial number, the 0730, that's the
 4   actual ELSUR device that's being employed; correct?
 5        A.   Yes, sir.
 6        Q.   And the .010, that would be the 10th
 7   recording on this particular recording set; correct?
 8        A.   Yes, sir.
 9        Q.   So jumping from that back to Defendant's
10   Exhibit D, that would be this call right here, 10,
11   the 3 minute and 26 second call?
12        A.   Yes.
13        Q.   Now if, we look at --
14             THE COURT:  Did you want to move this
15   admission?
16             MR. LOWRY:  Not for -- well, not for this,
17   Your Honor.  I was just trying to direct Mr. Acee's
18   attention to this, so we could really come back to
19   Defendant's Exhibit D to talk about this call.
20        Q.   So what we know about this particular call,
21   call 10, is it would have begun --
22             THE COURT:  I guess I'm a little concerned
23   with him testifying, for the clarity of the record,
24   about Exhibit E, and then I not being able to find
25   Exhibit E when I get ready for it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5700

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 232701

```
 1                MR. LOWRY:  Well, I'm just trying to set up

 2      the length of this call, Your Honor, so we can

 3      understand the transcript a little better.  But --

 4                THE COURT:  Well, either don't use E, or

 5      let's try to move it and let me make a decision on

 6      it.

 7                MR. LOWRY:  Sure.

 8                THE COURT:  Any objection?  Do you want to

 9      move it?

10                MR. LOWRY:  I'll move it.

11                THE COURT:  Any objection?

12                MR. CASTELLANO:  No objection.

13                THE COURT:  Anybody else?

14                All right.  So Exhibit E will be admitted

15      into evidence.  I just got to keep these --

16      otherwise, I'm not going to be able to reconstruct

17      the record when look at it.

18           Q.   So Exhibit E would be call 10 on Exhibit D;

19      correct?  If I'm representing to you that Exhibit E

20      is the 10th call.

21           A.   Yes, sir.

22           Q.   And this transcript would have taken place

23      on the 23th of October, 2015, from 2100 hours?

24           A.   9:46 p.m., I believe.

25           Q.   9:46 to --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5701

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 233

```
 1        A.   9:50.
 2        Q.   -- 9:50?  So -- I mean, this recording was
 3   made just six minutes after the prior recording; is
 4   that correct, 10?
 5        A.   Yes.
 6        Q.   And then, if you look -- and then the next
 7   recording would have been two hours later, roughly?
 8        A.   Yes.
 9        Q.   Number 11?
10        A.   I agree.
11        Q.   So it appears from the time stamps they're
12   talking, and he just turned the recorder on and off
13   when he feels like it?
14        A.   Yes.
15             MR. LOWRY:  May I approach, Your Honor?
16             THE COURT:  You may.
17        Q.   I'm going to hand you what I've marked as
18   Defendant's Exhibit E.  And for everybody else, this
19   is DeLeon Bates No. 6043.
20             And looking at that transcript, is it
21   fairly obvious that this takes place in the middle of
22   a conversation?
23        A.   I think that it did.  I guess it could
24   start out with "Pup"'s initial statement.  But
25   probably started in the middle of the conversation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 234 703

1    Q.    And if you look at the last page, at DeLeon

2    6046, literally the recording stops in the middle of

3    a sentence?

4    A.    Correct.

5    Q.    And this was a transcript prepared by your

6    office?

7    A.    Yes, sir, it was.

8    Q.    So would you agree with me that this is

9    nothing more than a portion, a snippet, of what

10   appears to be a longer conversation that evening?

11   A.    It's a portion of a conversation that we

12   don't have the start or end of.

13   Q.    And we have no way of knowing, as we sit

14   here in the courtroom today, the other components of

15   that conversation, other than the potential testimony

16   from Mr. Duran or Mr. Baca?

17   A.    I believe that.

18   Q.    But, in keeping with your policy of

19   preferring a recording, why wouldn't you have

20   assisted Mr. Duran with some advice, Hey, can you

21   capture everything?

22   A.    Well, he'd be following my advice if that

23   other -- that missing information wasn't pertinent to

24   the crimes we were looking at.

25   Q.    Right.  But if -- hypothetically, if

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 5703

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 235

1    Mr. Duran is trying to manipulate somebody into

2    saying something that benefits him, it doesn't

3    necessarily benefit you, does it?

4         A.   I don't know.  I'm not sure.

5         Q.   Well, I mean, let me boil it down to its

6    essence.  If the plot to kill Mr. Marcantel really

7    sprung from Mr. Duran, and he had to convince

8    somebody that it's a good idea, that's not helpful to

9    your case, is it?

10        A.   No.  But it just depends.

11        Q.   Well, if Mr. Duran is working for you --

12        A.   Yes.

13        Q.   -- and you had informed him via text that

14   he's a government agent --

15        A.   Yes.

16        Q.   -- and you informed him via text that he

17   can't participate in the conspiracy; correct?

18        A.   Okay.  These are the normal type of

19   conversations we have.

20        Q.   Right.  I mean, these are things you

21   actually texted Mr. Duran?

22        A.   I'll take your representation.

23        Q.   It wouldn't help you to have a government

24   agent precipitate a crime of that nature, a murder of

25   the Secretary of Corrections of New Mexico?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                            1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5704

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 236705

```
 1          A.    I'm just struggling with this one, because
 2    we do reverse operations, where -- and I've worked as
 3    an undercover agent in the past -- where we are
 4    participating in that crime.  To an extent, you know,
 5    we're soliciting it or we're trying to get people to
 6    join us.  So that's why I'm hesitating.  Maybe I'm
 7    not understanding what you're asking.
 8          Q.    Okay.  But, well, if it was Mr. Duran's
 9    idea, that's not a good thing, is it?
10          A.    If it's Duran's idea to kill the Secretary?
11    No.  And there is no other conversation about it?
12    No.
13          Q.    There is no real way -- you didn't have,
14    from what I'm understanding through your testimony,
15    there was no police mechanism with Mr. Duran to say:
16    We want the whole enchilada, not just a part of it?
17          A.    In terms of conversation?
18          Q.    Um-hum.
19          A.    No.  And we didn't want the whole enchilada
20    if it didn't pertain to those two conspiracies, or
21    the SNM.  We didn't want a lot of personal business,
22    because we're losing valuable recordings.
23          Q.    But, in fairness, you wanted inculpatory
24    information?
25          A.    No.  I'd take exculpatory, if it was on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5705

```
 1   topic of the SNM and the hit on Marcantel, I'd take
 2   that, too, to be fair, certainly.
 3        Q.    But if you're Mr. Duran, and you realize
 4   your paycheck is dependent on the inculpatory
 5   information, where is the incentive for Mr. Duran to
 6   get the exculpatory information?
 7        A.    I don't agree with saying there was a
 8   paycheck.  Because I didn't discuss that with him.
 9   And I didn't tell him he was getting a paycheck,
10   or --
11        Q.    Your very first recorded conversation with
12   Mr. Duran, on September 10, 2015, discussed Mr. Duran
13   getting commissary money; correct?
14        A.    It may have, I guess, if we're going to
15   count buying chips at the store a paycheck.  I
16   thought you meant something more substantial.  I'm
17   sorry.
18        Q.    Well, in fairness, he did get something
19   more substantial, didn't he?
20        A.    He did in the end, yes.
21        Q.    Did he in the middle?
22        A.    No.
23        Q.    He didn't get a substantial sum of money at
24   the beginning of 2016?
25        A.    He had at the conclusion of my handling
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5706

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 238707

```
 1    him, before I relocated him, yes.  If you're saying

 2    at the middle of his time as a FBI informant, that's

 3    fair.

 4         Q.   Let's just say before he was released from

 5    the Department of Corrections.

 6         A.   Yes.  For one reason only.  Into the

 7    federal fiscal year, I had to spend that money or it

 8    was going back.

 9         Q.   And that's why you ended up having to go to

10    the Department of Corrections and depositing $25,000

11    on his commissary account?

12         A.   Yes, I had to do that by September 1st, I

13    believe.

14         Q.   And that was literally a calendaring issue

15    with the federal budget?

16         A.   Unfortunately.

17         Q.   But he was still incarcerated with the

18    Department of Corrections at that time?

19         A.   Yes, sir.

20         Q.   But it was clear to you, from the inception

21    of your relationship with him, that Mr. Duran was in

22    it for the money?

23         A.   I don't agree.  At the time I was working

24    over a dozen of these guys, targeting this group

25    right here.  And I wasn't talking to him about money
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5707

```
 1    or paying him money.

 2         Q.   Okay.  Well, Mr. Duran wanted his chips?

 3         A.   Oh, the commissary.  Yeah, let me back up.

 4    Sure.  If we're going to talk about commissary

 5    checks, that was important to all the cooperators,

 6    and I did provide that.

 7         Q.   But for Mr. Duran, it wasn't just

 8    commissary money for him, you actually had to go

 9    visit Grace Duran at her house and deliver money to

10    her?

11         A.   Not at her house.  But, yes.

12         Q.   But to her?

13         A.   Correct.

14         Q.   For her kids?

15         A.   I don't -- if that's where he wanted his

16    money to go.  I don't ask questions beyond that.

17         Q.   Do you recall a conversation that you had

18    with Mr. Duran on November 20, 2015?

19         A.   You'd have to remind me.

20              MR. LOWRY:  May I approach, Your Honor?

21              THE COURT:  You may.

22         Q.   And this is Defendant's Exhibit F.

23              MS. JACKS:  Is there a Bates?

24              MR. LOWRY:  There is.

25         Q.   If you want to take a moment to review
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5708

1    that.  Could I direct your attention to the bottom of

2    page 9.  Is it fair to say this conversation you had

3    with Mr. Duran, you're sort of trying to loop "Styx,"

4    who is Gerald Archuleta, you're trying to loop him

5    into this scheme to murder Secretary Marcantel?

6         A.   I think I'm trying to get "Styx," Gerald

7    Archuleta, and Anthony Baca talking on that phone.

8         Q.   And as part of that conversation,

9    Mr. Duran, at the bottom of page 9, basically offers

10   to -- and I'll in my words -- manipulate each one of

11   the players to get them on the phone together, to

12   benefit your desire to have them talk to each other?

13        A.   Well, I don't agree with you about the

14   manipulation part.  He's just simply saying, Yeah, I

15   can tell "Pup" that "Styx" wants to talk, and I can

16   tell "Styx" that he wants to talk.

17        Q.   Well, we can disagree with the word

18   "manipulation."  But if Duran was to tell "Styx" that

19   "Pup" wanted to talk to him, that would be a lie,

20   wouldn't it?

21        A.   It would be a lie -- well, maybe he does

22   want to.  But he'd be driving that, yes.

23        Q.   And likewise, you had no idea whether

24   "Styx" wanted to talk to Mr. Baca?

25        A.   No, I had a feeling that he would, though.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5709

```
 1        Q.   Okay.  And you don't disagree with me that
 2   probably neither Mr. Archuleta, nor Mr. Baca, wanted
 3   to talk to each other?
 4        A.   I think that they would have talked to each
 5   other.
 6        Q.   You think they would have?
 7        A.   I think they would have.
 8        Q.   But that's not what Mr. Duran told you?
 9        A.   On the bottom of 9?
10        Q.   Well, I mean, he says that Mr. Baca didn't
11   want to talk to Mr. Archuleta at all because he
12   thought Mr. Archuleta had a big mouth?
13        A.   I didn't see that, sir.  Where are you on
14   page 9?  I'm sorry.
15        Q.   I'm not on page 9.  I think if you back
16   up -- look at the bottom of page 6.
17        A.   I don't see it there, sir.
18        Q.   Well, you say -- pardon me, that's when
19   you -- you're the "Unidentified FBI agent" in this
20   conversation, are you not?
21        A.   I think so.
22        Q.   And when you say "he talks a lot," you're
23   talking about Mr. Archuleta?
24        A.   Yes.
25        Q.   So if you look at the top at page 2, about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5710

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242

1    two-thirds of the way down, lines 15 through 20,

2    Mr. Duran tells you that, "Nah, he wouldn't ask

3    'Styx'" -- meaning that Mr. Baca wouldn't talk to Mr.

4    Archuleta?

5        A.    I do see those lines.

6        Q.    Okay.  And you agree with me that in Eric

7    Duran's estimation, if you look at the top of page

8    2 -- or pardon me, the top of page 3 -- Eric Duran

9    says, "No, he likes him.  It's just that he has a big

10   mouth"?

11       A.    That is what Mr. Duran says.

12       Q.    By that he's meaning that Mr. Baca wouldn't

13   talk to Mr. Archuleta because Mr. Archuleta talks too

14   much?

15       A.    He wouldn't talk to him about the Marcantel

16   hit, or whatever hit they're talking about, because

17   he has a big mouth.

18       Q.    Right.  And that's what you wanted,

19   Mr. Duran to facilitate that conversation?

20       A.    Yes.

21       Q.    And Mr. Duran was willing to lie to each

22   one of the individuals to get them on the phone

23   together?

24       A.    Yes.

25       Q.    But that still never happened, did it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   I don't -- we do have a few three-way calls
 2     with "Styx" and guys on the inside at the Level 6.
 3     But I don't know that Mr. Baca was part of that.
 4          Q.   But my question here is -- I mean, you
 5     didn't say or do anything to kind of nudge Mr. Duran,
 6     and say, you know, maybe that's not a good idea to
 7     lie to Mr. Archuleta to get Mr. Baca on the phone, or
 8     mislead Mr. Baca to get Mr. Archuleta on the phone?
 9          A.   No, I didn't do that.
10          Q.   You were here to hear Mr. Sapien testify?
11          A.   Yes.
12          Q.   Would you agree with Mr. Sapien that the
13     ELSUR device was switched out with Mr. Duran
14     simultaneously?
15          A.   If he said that, I believe it.
16          Q.   Okay.  So according to Mr. Sapien's
17     testimony, Mr. Duran would have always had an ELSUR
18     recording device with him?
19          A.   He should have.  That was the plan.
20          Q.   Did you ever ask Mr. Duran, after the
21     initial spate of recordings in October, after Mr.
22     Baca arrived back at the facility why, you know, the
23     frequency of the recordings started to taper off?
24          A.   No.
25          Q.   Okay.  Did it concern you that days would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5712

```
 1    go by without a recording being made?

 2         A.   No.

 3         Q.   Why not?

 4         A.   Because they'd already covered it.  And to

 5    talk about it too much, I think would have been

 6    foolish on Eric Duran's part.

 7         Q.   What do you mean "they already covered it"?

 8         A.   Well, as the -- as you said, as the

 9    recordings started to taper off, they'd already

10    discussed and put in motion the hit on both guys.

11    And the belief was that Mario Montoya was on the

12    street, going to hit Marcantel any moment.  I think

13    too much talk sometimes is like a nervous talk, and,

14    you know, these guys are -- these are some

15    experienced guys.  So to do that would be foolish.

16         Q.   Well, where did you get the sense that Mr.

17    Baca understood that somebody on the street was going

18    to hit Marcantel?

19         A.   Through his conversations over the recorded

20    telephone with Mario Montoya, primarily.

21         Q.   But those recordings don't happen till much

22    later, until November?

23         A.   I didn't know you were putting a time limit

24    on that question.  I'm sorry.

25         Q.   Well, no, I'm just talking about October
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5713

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245714

1   here.

2        A.   In October, I wouldn't have known the full

3   extent of that.

4        Q.   In October -- if we look at what's called

5   number 19, call number 19 would be the call where Mr.

6   Baca tells Mr. Duran that he's not interested in

7   hitting Mr. Marcantel?

8        A.   By saying "No"?

9        Q.   Correct, by saying "No."

10        A.   I don't think that excludes him, sir, that

11   simple "no" didn't negate that.  We fleshed out so

12   much more information subsequently.

13        Q.   Subsequently?

14        A.   Yes, sir.

15        Q.   After he said that?

16        A.   If that "no" was even in the right place in

17   that transcript, yes.

18        Q.   All right.  I'm going to switch over from

19   talking about the ELSUR recordings to talking about

20   the cellphone, if I can real quickly.  Was it -- did

21   you ever instruct Mr. Duran not to delete material

22   off his cellphone?

23        A.   I may not have.  I may not have.

24        Q.   Did you think Mr. Duran thought he was free

25   to delete whatever was on his cellphone?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5714

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 246

1       A.   I don't know.  Because I told him that

2    everything on the phone we could see.  And I gave him

3    some admonishments about what to stay off of,

4    specifically, on the phone.  So I gave him the belief

5    that, you know, we were seeing everything as it was

6    happening.  And I think he believed that, because

7    sometimes in his conversations he'd say, "Well, did

8    you just hear that?"  And we didn't always, but we

9    represented that we were able to do that with him.

10       Q.   Now, in fairness, were you able to look at

11    the text messages in real-time on the cellphone?

12       A.   I think near real-time, we could.  There is

13    a -- you know, I work on the second floor of the

14    building with the rest of the gang squad.  And the

15    wire room is downstairs.  So it's a matter of walking

16    down there or sitting in front of it.  So it's

17    possible.

18       Q.   So you would capture the actual language,

19    the words of the text, as they came across the phone

20    in real-time?

21       A.   There may have been a delay.  Just given my

22    understanding of how the Bureau's wire interception

23    program works, there could be a little bit of a

24    delay.

25       Q.   So do you have -- are you familiar with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5715

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5716

1    what we've referred to over the course of the

2    hearings as that master text file, the 800-some-odd

3    pages of all the texts that were gathered from

4    Mr. Duran's phone?

5         A.   Was that in Ms. Sirignano's motion?

6         Q.   I believe it was.

7         A.   I have looked that over, yes.

8         Q.   In your estimation, was that the Department

9    of Justice's representation of all the texts that

10   were disseminated or acquired using Duran's

11   cellphone?

12        A.   I think her attachment was from her expert.

13        Q.   No, but I'm talking about the disclosure

14   from the Department of Justice.

15        A.   Are you asking me if they match?

16        Q.   No.  I'm asking you if that was the

17   Department's representation of all the texts that

18   were sent and received from Mr. Duran's cellphone?

19        A.   I believe so.  That was contained on the

20   disc from our wire intercept unit, and that's what I

21   turned over.

22        Q.   Okay.  And that was disclosed to all the

23   defense attorneys in the room as part of the

24   discovery in this case?

25        A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5716

1      Q.   Did you ever have an opportunity to compare

2   that file to the Verizon data that was also disclosed

3   in this case?

4      A.   Which files am I comparing?

5      Q.   Well, the master text doesn't have a Bates

6   number, but if we look at DeLeon Bates No. 2385, that

7   I'll mark as 2385 through 2466, but it's a document

8   that looks like this, what I've marked as Defendant's

9   Exhibit G?

10          THE COURT:  Do you move its admission?

11          MR. LOWRY:  I do move its admission, Your

12   Honor.

13          THE COURT:  Any objection, Mr. Castellano?

14          MR. CASTELLANO:  Can I get another look at

15   it?  I can't see it on the screen.  I don't believe I

16   have an objection.  No objection, Your Honor.

17          THE COURT:  And you didn't move F.  Do you

18   want to move F?

19          MR. LOWRY:  I would move F as well, Your

20   Honor.

21          THE COURT:  Any objections to F?

22          MR. CASTELLANO:  No, Your Honor.

23          THE COURT:  Any objection to F or G from

24   defendants?  Defendant Baca's Exhibits F and G will

25   be admitted into evidence.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5717

```
 1        Q.   I'll try to zoom in on this a little bit.
 2   But you recognize data like this as something you
 3   would have come across in the course of your
 4   investigation?
 5        A.   Yes, sir.
 6        Q.   And this -- if I understand this document
 7   correctly, this would be what you're talking about is
 8   the intercepts from the Verizon unit as it came in
 9   off the cellphone?
10        A.   I would call these like the call detail
11   records.
12        Q.   And would these would be from the carrier?
13        A.   Yes, sir.
14        Q.   I guess my question is:  If you compare
15   this document, Defendant's Exhibit G, to the master
16   text list that was disclosed by the Department of
17   Justice, none of Gerald Archuleta's texts, the ones
18   you can see that took place on Defendant's Exhibit
19   G -- let me just for an example, bear with me -- are
20   on the master text file.  Do you have any idea why we
21   don't have copies of those texts?
22        A.   Were the texts completed, or was it just an
23   attempt?  Because the call detail record might show
24   an attempt.  But if the text was not sent, or the
25   phone was off, it wouldn't contain any text.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5718

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 250 5719

1      Q.   Well, my view of this seems to lend the

2   reading that they were completed.

3      A.   Well, I think on -- the call detail records

4   are a little tricky, because it will indicate the

5   attempts, but sometimes there is no text because it

6   didn't go through.

7      Q.   So if we look at DeLeon 2420, at the top of

8   the page, you see incoming and outgoing texts between

9   Mr. Duran and Mr. Archuleta.  So it looks like there

10   is a back and the forth, if you will.

11      A.   I disagree, sir.  And the reason I disagree

12   is I'm looking at the times, and I think that's an

13   attempt to send, an attempt to send.  And I think

14   Archuleta, or the target phone, is off, and it's not

15   going through, based on the duration there.

16      Q.   So you just think it's a coincidence on the

17   same day, within 10 minutes of each other, that Duran

18   is trying to text Archuleta, and then Archuleta is

19   trying to text Duran?

20      A.   It may be.  I'm not sure.  It might have to

21   do with the signal in there.  There are a lot of

22   possibilities.  So it's a tough answer.

23      Q.   And then, if we look at DeLeon at 2417, as

24   part of Defendant's Exhibit G, the same thing.  These

25   would be a series of texts on October 24, 2015, both

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5719

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 251

1    incoming and outgoing in a relatively short period of

2    time.  It looks like a back and forth.

3         A.    I would agree with you, Mr. Lowry.  I can

4    represent to you that what was collected by the

5    FBI -- not handled by me, other than I obtained it

6    and turned it over.

7         Q.    And I'm not suggesting otherwise.  I wasn't

8    aware, until you just spoke on the stand, that the

9    FBI had the capability of pulling down the text

10   language in real-time.

11        A.    Well, I said near real-time, I believe.

12   You know, spending a lot of time in wire rooms, that

13   the calls might be delayed because there is a switch

14   through the phone company.

15        Q.    Right.

16        A.    Same thing with the text; routed to an FBI

17   server, then into our office.  So I think there is

18   probably a delay.  It's probably not very much.

19        Q.    But if I understand your testimony

20   correctly -- and this might clarify things for me --

21   is that, if Mr. Duran deleted a series of texts from

22   his phone, the FBI would still have them?

23        A.    I believe that's correct.

24        Q.    Okay.  Would the same hold true for images?

25        A.    No, not necessarily.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5720

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 252

1      Q.   Why not?

2      A.   Well, it just depends.  First, I think it

3  depends on what the court order says.  And in this

4  case, I'd have to look at it.  I think it depends on

5  the capabilities of the phone company and limitations

6  there.  I think in this case, Verizon can do that.

7  And then whether or not our technically trained

8  agents set up the wire intercept to collect that.

9  For instance, as you know, email or internet traffic

10  could be captured.  But, in this case, what the

11  wiretap was set up to capture was the text messages

12  and the phone calls.

13      Q.   Right.  But if somebody was clever and

14  tried to evade detection, and they knew that, they

15  could just take a picture of a note, and then send

16  the note over the cellphone.  And then what you're

17  telling me is you wouldn't be able to see that?

18      A.    In this case, we would not have been able

19  to see that, I don't believe.

20      Q.   How were you going to capture that material

21  that Eric Duran -- I mean, let's cut to the chase --

22  a cellphone is contraband inside the jail; correct?

23      A.   Normally, it is.

24      Q.   Normally.  Did you give Mr. Duran license

25  to download pornography or have pornography sent to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5721

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253

```
 1    him over his cellphone as a benefit for his

 2    cooperation?

 3         A.   No.  And I specifically told him I better

 4    not find any of that on his phone.

 5         Q.   But you're telling me you had no way to

 6    determine that.

 7         A.   But he didn't know that.  You're right, I

 8    couldn't go to his phone and look through.  And when

 9    I went and conferred with our tech agents on what

10    exactly we were capturing, that's when I learned we

11    weren't capturing photos, and we weren't capturing

12    email, because my court order didn't ask for that.

13         Q.   So when Mr. Duran struck up his

14    relationship with Felicia Cordova, the stripper who

15    was sending him photographs, you didn't say, Wa sha,

16    what are you doing, bro?

17         A.   I didn't see those photographs.

18         Q.   Apparently not.  But you did see the text?

19         A.   Well, the text would have been captured.

20    I'm not claiming I saw the text either.  But the text

21    would have been captured.

22         Q.   Right.  And you and your staff were

23    reviewing the texts sort of real-time?

24         A.   We had the ability to review them

25    real-time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5722

```
1         Q.   Okay.   Were you interested in reviewing
2    them real-time?
3         A.   I was interested in having some of the
4    agents verify what Duran was representing.
5         Q.   And if he's representing to you he's not
6    getting pornography, but he's getting pornography, is
7    that a concern of yours?
8         A.   If he tells me he's not doing something,
9    and he's doing it, yeah, that's always a concern.
10        Q.   And that's always a concern with Mr. Duran,
11   isn't it; him saying he's not going to do something
12   that he does?
13        A.   It's a concern with all informants,
14   particularly within the SNM.
15        Q.   Particularly with Mr. Duran?
16        A.   I'd lump him into that category.
17        Q.   Let's talk about the admonishments you gave
18   him with specificity.   What admonishments did you
19   give Mr. Duran?
20        A.   I have them.   I can refer to them.
21        Q.   Please do.
22        A.   So the initial admonishments would have
23   been done by Agent Brusuelas.   Do you want me to skip
24   those and just go to the ones I've done?
25        Q.   Yes.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5723

1      A.   So the first time he's admonished by myself

2  or one of the agents that working on the case with me

3  was 2016.   The specific date was March 24.   The

4  admonishments were the standard four that I've

5  testified about before, that are applicable to all

6  sources.   And that is:   The CHS's assistance and the

7  information provided to the FBI are entirely

8  voluntary.

9           Number 2, the CHS must provide truthful

10  information to the FBI.

11           Number 3, the CHS must abide by the

12  instructions of the FBI, and must not take or seek to

13  take any independent actions on behalf of the US

14  Government.

15           Number 4, the US Government will strive to

16  protect CHS's identity, but cannot guarantee it will

17  not be divulged.

18           And then there are some additional

19  admonishments that I thought were applicable to

20  Mr. Duran.   And I can read through those.   There are

21  four additional ones.

22      Q.   Sure.   Would you read through them quickly.

23      A.   "The FBI, on its own, cannot promise or

24  agree to any immunity from prosecution or other

25  consideration by an FPO" -- which is a Federal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Prosecuting Office -- "a state or local prosecutor,

2    or a court in exchange for the CHS's cooperation

3    because the decision to confer any such benefit lies

4    with the exclusive discretion of the prosecutor or

5    court.  However, the FBI will consider, but not

6    necessarily act upon, advising the appropriate

7    prosecutor of the nature and extent of the CHS's

8    assistance to the FBI."

9         The second additional admonishment was,

10   "The CHS is not authorized to engage in any criminal

11   activity and has no immunity from prosecution for any

12   unauthorized criminal activity."

13        And then in parentheses it says, "This

14   instruction is not necessary for CHSs who have such

15   authorization."

16        Number 3, "The CHS is not an employee of

17   the US Government, and may not represent himself or

18   herself as such."

19        And the 4th, and last one is, "The CHS may

20   not enter into any contract or incur any obligation

21   on behalf of the US Government except as specifically

22   instructed or approved by the FBI."

23        So those were the 2016 admonishments.

24   Q.   So you didn't give -- if I understand your

25   testimony correctly, you didn't give Mr. Duran any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5725

 1    admonishments when you took over handling him in

 2    August of 2015?

 3         A.   No.  His admonishments -- well, let me --

 4    yes and no.  By policy, his admonishments were still

 5    good, because Agent Brusuelas had done it.  So that

 6    fulfilled the FBI's.  Now, me personally, as an

 7    agent, giving someone extra admonishments or

 8    instructions outside of policy, I regularly do that.

 9         Q.   Did you regularly do that with Mr. Duran?

10         A.   Over the lifetime of Mr. Duran working as

11    an informant, yes.

12         Q.   Okay.  Between August of 2015 and the

13    takedown of the SNM, December 3, did you give him

14    those admonishments when he was making recordings of

15    people?

16         A.   I don't think I did give him any other --

17    nothing is jumping out at me.

18         Q.   Did you have any concerns about Mr. Duran

19    using his phone to engage in gambling via Fantasy

20    Football?

21         A.   Yes.

22         Q.   What did you tell him?

23         A.   I think I got a notice from Verizon that

24    his data was used up like in a record amount of time,

25    and I figured he was looking at something online.  So

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5726

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258

```
 1    then I went to the techs, found out -- I thought I
 2    had access to all that, and I didn't.  I just had
 3    text and phone call.  So then I did admonish him
 4    about what he was looking at.  And he said it was
 5    Fantasy Football.  And I told him to stop doing that.
 6         Q.   Did he stop doing it?
 7         A.   I believe he did, because his data went way
 8    down.
 9         Q.   Have you ever reviewed the forensic
10    analysis of Mr. Duran's phone?
11         A.   Was that attached to Ms. Sirignano's
12    motion?
13         Q.   I don't know.  This was -- well, Nancy
14    Stemo did that in March 20 of 2017.
15         A.   She told me about it.  I don't know that I
16    reviewed it.
17         Q.   Okay.  Would it surprise you to learn that
18    they were only four texts on this phone when she
19    looked at it forensically?
20         A.   No.  You're going to be kind of hard
21    pressed to get something that surprises me.  But I
22    believe you.
23         Q.   Would it concern you?  Let me rephrase the
24    question.
25         A.   Yeah, it may be a minor concern, but then
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5727

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 259728

1    again, no, because the wire captured the text

2    messages.

3         Q.   If you look at the Stemo Cellebrite report,

4    and compare it to the text messages that were

5    disclosed to the defense teams, why weren't three of

6    the four text messages in the Cellebrite report in

7    the master text file?

8         A.   I don't know that they weren't.  I mean, if

9    they were -- if the text messages were between the

10   time we had the wire intercept up, they should have

11   been captured.

12        Q.   Well, there are only four text messages in

13   the report, and they are all on the day of the

14   takedown, December 3, 2015.

15        A.   Mr. Lowry, I'm not sure.  I mean, it could

16   have something to do with I bought a pretty small,

17   pretty cheap phone from Walmart.  I don't know if it

18   has to do with that.  But Agent Stemo is very

19   competent, but that was probably her first time

20   dumping a phone.  I'm not really sure.

21             MR. LOWRY:  May I have a moment, Your

22   Honor?

23             THE COURT:  You may.

24             MR. LOWRY:  No further questions, Your

25   Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 260729

1          THE COURT:  All right.  Thank you, Mr.

2   Lowry.

3          Ms. Sirignano.

4          MR. LOWRY:  May I approach and get the

5   exhibit?

6          THE COURT:  You may.

7          Ms. Sirignano, did you want to

8   cross-examine Mr. Acee?

9          MS. SIRIGNANO:  Yes, please, Your Honor.

10         THE COURT:  Ms. Sirignano.

11         MS. SIRIGNANO:  Are we on G, Your Honor?

12         THE COURT:  Those are Baca's Defendant's

13   Exhibits, so go ahead and start your running with

14   Christopher Garcia's Exhibit A, B, or whatever you

15   want.

16         MS. SIRIGNANO:  Thank you, Judge.

17         THE COURT:  I don't think you have any

18   exhibits yet on this one, right?

19         MS. SIRIGNANO:  No, Your Honor.

20         May I have a moment, Your Honor?

21         THE COURT:  You may.

22                    EXAMINATION

23   BY MS. SIRIGNANO:

24      Q.   Agent Acee, good afternoon.

25      A.   Good afternoon.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261 of 730

1      Q.   I'm going to start with the extraction

2   report, the Cellebrite report.  Did you see the

3   extraction report that Agent Stemo did?

4      A.   I think I did.

5      Q.   Was that recently?

6      A.   No.

7      Q.   Let me show you what's been marked as Chris

8   Garcia Exhibit A.  Does that look like the report

9   that you reviewed?

10      A.   Yes.

11      Q.   And that's Ms. Stemo's name right there.

12   So that would mean that she ran this report?

13      A.   Yes.

14      Q.   That's your Albuquerque case file number?

15      A.   Yes.

16      Q.   And the date that she ran this report is

17   here, March 20, 2017; correct?

18      A.   Yes.

19      Q.   And the phone that she analyzed is the

20   Samsung CDMA, and the device name.  Is that the

21   device that was given to Mr. Duran?

22      A.   Yes.

23      Q.   And on page 2, here, this is the phone

24   number; correct?  505-218-1861.

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 262

```
 1        Q.   That was Mr. Duran's phone?

 2        A.   Yes.

 3             MS. SIRIGNANO:  Your Honor, I'd like to

 4   move for admission of Exhibit A, please.

 5             THE COURT:  Any objection, Mr. Castellano?

 6             MR. CASTELLANO:  No objection.

 7             THE COURT:  Anybody else?  All right.  Not

 8   hearing any, Christopher Garcia's Defendant's Exhibit

 9   A will be admitted into evidence.

10        Q.   So looking at this report, this is page 2,

11   and it contains a total of five pages?

12        A.   Looks that way, yes.

13        Q.   Thank you.  And so the report says "SMS

14   messages, four," on the phone?

15        A.   Yes.

16        Q.   Total, on this page.  And then on the

17   second page -- actually, this is page 3 -- sorry, I'm

18   having a hard time with this Elmo here -- there is

19   images, SMS messages, incoming.  And then data files

20   towards the middle and the bottom of the page.  On

21   page 4, more data files.  And then on page 5, we've

22   got texts, seven texts here, and then videos, five,

23   down at the bottom here; correct?

24        A.   Yes.

25        Q.   And that it's.  That's the whole Cellebrite
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5731

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 263

```
 1   report.  Going back to page 2, the SMS messages, it

 2   says "four."  And the first one is dated March 20,

 3   2017; correct?

 4        A.   Yes.

 5        Q.   And it's in the draft folder.  And that was

 6   the day that Agent Stemo did the analysis of this

 7   phone; correct?

 8        A.   Yes.

 9        Q.   Do you know if she typed the message

10   "Krazo" on this phone, or a draft text on this phone?

11        A.   I don't.  I think he had an automatic

12   signature though that said "Krazo."

13        Q.   This is a draft text message.

14        A.   I agree.

15        Q.   So you don't know if Agent Stemo put that

16   there, or -- was she the only one that did the

17   analysis on this phone?

18        A.   Another agent may have gone with her.  I'm

19   not sure.

20        Q.   Did she sign out this phone?

21        A.   No.

22        Q.   Where was the phone?

23        A.   At the office.

24        Q.   Was it in evidence?

25        A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 264

1       Q.   Why not?

2       A.   I didn't consider the phone evidence.

3       Q.   The phone itself was not evidence?

4       A.   Was not.

5       Q.   Why?

6       A.   I didn't consider the phone evidence.

7       Q.   Yes.  But I'm asking you why?

8       A.   Well, over my career, anytime I've served

9   as an undercover agent, and we've done a consensual

10  wiretap, the evidence that we turn over is the

11  intercept logs, the calls, and the text messages.

12  I've never logged my own phone into evidence.

13      Q.   But we're talking about a snitch phone

14  here.  We're not talking about an undercover phone;

15  correct?

16      A.   It's still an undercover phone.  It's just

17  the operator is different.

18      Q.   Correct.  A sworn law enforcement officer

19  versus a convicted murderer; correct?

20      A.   Yes.

21      Q.   So how can the FBI explain, with the

22  original phone, after 800-some-odd pages of text

23  messages, that this phone only has four SMS text

24  messages on it?

25      A.   This FBI agent can't explain that.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5733

```
 1           Q.   Can Ms. Stemo explain that?

 2           A.   I doubt it.

 3           Q.   Why?

 4           A.   I don't want to put words in her mouth.

 5      But she's a relatively new agent.  And I think this

 6      was the first download of a phone she'd ever done.

 7           Q.   Did she wipe the phone?

 8           A.   I don't believe so.

 9           Q.   Did she unintentionally wipe the phone?

10           A.   I don't think so.

11           Q.   So how did the phone get wiped?

12           A.   Well, we'd have to agree the phone got

13      wiped.

14           Q.   Was the phone wiped?

15           A.   I don't know.

16           Q.   Well, where did all the 800 pages of text

17      messages go on that phone?

18           A.   Well, I don't know that they're not there.

19      Because I think your expert analyzed it, and they

20      were there.

21           Q.   No, they weren't.  Let me refer you to

22      Exhibit B.  This is a Cellebrite report, "Crowe

23      Horwath, LLP."  Do you recognize that?

24           A.   Yes.

25           Q.   Who is that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5734

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 266

```
 1          A.   Tim Bryan, your expert.

 2          Q.   And he reviewed the phone on December 18,

 3     2017.  And that's the same phone; correct?

 4          A.   Yes.

 5          Q.   Looking at the second page, the same phone

 6     number there, 505-218-1861; correct?

 7          A.   Yes.

 8          Q.   And then there is four text messages there;

 9     correct?

10          MS. SIRIGNANO:  Your Honor, I'd move for

11     admission of Chris Garcia B, please.

12          THE COURT:  Any objection, Mr. Castellano?

13          MR. CASTELLANO:  No objection.

14          THE COURT:  Anybody else have any

15     objection?  All right.  Christopher Garcia

16     Defendant's Exhibit B will be admitted into evidence.

17          Q.   So these four text messages look identical;

18     yes?

19          A.   They do.

20          Q.   Okay.  What happened with the 800-plus text

21     messages on this phone, Agent, do you know?

22          A.   I don't.  And I'm sorry, I think I misread

23     your motion.  Sorry to say that that was in there.  I

24     think you must have attached what the Government

25     turned over.  I'm sorry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5735

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267

1       Q.   The text messages?

2       A.   Yes.

3       Q.   Where did that master text list come from?

4       A.   It came from the FBI.  Do you want the

5   specific unit, or --

6       Q.   I'd just like to know how it was compiled.

7       A.   Sure.  So that's not my area of expertise,

8   but I can explain my understanding of it.  I obtained

9   a court order; provided that to our technically

10  trained agent unit.  They served the order on

11  Verizon, and then they coordinated with our

12  collection unit, if you will, which is not located

13  here in Albuquerque; it's out of the state.

14          Once the texts or phone calls or whatever

15  the data is that we're collecting is collected, it's

16  then routed to the field office from that central

17  collection unit.  So that's what we were looking at.

18          I get a -- once the wire comes down, that

19  unit sends me a disc that contains all that

20  information.  As I was -- actually, they send that to

21  the ELSUR technician, and I get a copy.  So that's

22  what we turned over.  And I believe that's what was

23  printed and turned over.  And I mistakenly thought it

24  was your expert's when I read your motion.

25      Q.   Okay.  So it's coming directly from the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268

```
 1    FBI's collection unit that works directly with
 2    Verizon; yes?
 3         A.   Yes.
 4         Q.   When I was there, we had reel-to-reels,
 5    so --
 6         A.   That was quite a while ago.
 7         Q.   It was.
 8              So these calls, or these texts are all
 9    dated December 3, 2015.  Your court order expired
10    when?
11         A.   Can I look at my notes?
12         Q.   Yes.
13         A.   December 15, 2016.
14         Q.   So Verizon was still collecting the calls
15    presumably, and text messages for the FBI?
16         A.   I don't know that they did.  I might have
17    sent a cease and desist request or a stop request.
18    After the takedown, I might have gotten busy and it
19    might have taken a while.  It could have run its
20    course.  But I usually try to stop it, as not to
21    waste the time.
22         Q.   Are you sure you did that, or are you
23    uncertain?
24         A.   That's my normal practice.  But I may have
25    failed to do that.  It could have run the full course
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5737

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 269

```
 1    of the order.
 2        Q.   So would it surprise you to learn that
 3    these text messages, dated 12/3, are not on the FBI
 4    collection unit's master text file?
 5        A.   If they were sent, yeah, it would surprise
 6    me, yeah.
 7        Q.   I didn't print out 800 pages.  So I'll have
 8    to let you research that.
 9        A.   I believe you.
10        Q.   And would there be any reason or
11    explanation why there would be this report from the
12    actual phone, which is the original evidence, and the
13    master text file?
14        A.   I'm sorry, I didn't follow that.
15        Q.   Is there a reason why the numbers would
16    occur, or the text messages would occur on the actual
17    evidence, the cellphone itself, versus the FBI
18    collection unit's master text file?
19        A.   So I'm not an expert in this.  But the only
20    thing I can think of is that those messages didn't
21    transmit over Verizon's network, or else they should
22    have been captured.  Perhaps a better question for
23    the technical agents of Verizon, though.
24        Q.   And, therefore, it would be prudent to
25    maintain the original phone in case something like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5738

```
 1   that occurred; correct?

 2       A.   If I wanted to be able to show that, I

 3   would need the phone to do that.

 4       Q.   So you said the phone was not placed in

 5   evidence.  Who had access to this phone?

 6       A.   Me.

 7       Q.   Where was it?

 8       A.   My desk drawer, where I keep burner phones.

 9       Q.   Did you turn it on before you gave it to

10   Ms. Stemo on March 20?

11       A.   No, I would have turned it off.  I've got

12   probably 50 phones in that drawer.

13       Q.   But you didn't turn it on to check it

14   before you gave it to her?

15       A.   No.  She would have -- I presume, she would

16   have had to charge it, too.

17       Q.   When you put the phone in there, did it

18   have data on it?

19       A.   I don't know what was on it.  I didn't view

20   the phone or manipulate the phone.  I wrote some

21   notes on it and threw it in the drawer, to be honest

22   with you, to recycle and utilize again in another

23   case somewhere else.

24       Q.   And who did you get that phone from?

25       A.   I bought it at Walmart.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5739

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 271

1     Q.   No.  I'm sorry, bad question.  Did Mr.

2  Sapien give you the phone during the takedown?

3     A.   I'm not sure he did.  He may have.  We met

4  later that day at the Gold building here, is where we

5  were processing and interviewing.  So somebody from

6  the Penitentiary brought it down to me.

7     Q.   And gave it to you directly?

8     A.   That's what I recall, yes.  There were a

9  number of informants with phones, and I collected, I

10  think, all of them.

11     Q.   How many meetings did you have with

12  Mr. Duran?

13     A.   During the early stages, during the

14  investigation?

15     Q.   From when you signed -- or when Agent

16  Brusuelas signed him up -- to, let's just say, to the

17  takedown?

18     A.   My first one was in August of 2015.  I

19  think I only met him maybe two other times.  My

20  contact with him in person was limited.

21     Q.   How would you contact him normally?

22     A.   My preferred method was to go through STIU,

23  so I wasn't talking on the phone with him.  But at

24  times, I would have to talk to him on the phone.  At

25  times we talked on the wire phone.  And at times I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 272

 1    had to text him, or he text me on the wire phone.

 2         Q.   You didn't like talking on the wire phone;

 3    correct?

 4         A.   Correct.

 5         Q.   You said so much to him?

 6         A.   I probably said it on every wire phone that

 7    anyone has ever called me on.

 8         Q.   And you said you went through STIU to talk

 9    to him.  Was that phone -- those calls were recorded,

10    or no?

11         A.   Sometimes that was in person, because they

12    would go in there and shake those guys down.  So I

13    deferred to them on how they got a message to him.  I

14    also wasn't as familiar with Securus and how the

15    phones worked in the prison.  So I would just relay

16    to the Captain what information needed to get to

17    whatever informant.  And they would handle it.

18         Q.   So you would talk to Captain Sapien, and

19    then he would relay the message to Mr. Duran or any

20    particular informant?

21         A.   Yes.  In his absence, maybe one of the

22    other guys.  But he was my main point of contact.

23         Q.   Do you have any idea how many unrecorded

24    phone calls you might have had directly with

25    Mr. Duran?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5741

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273

```
 1        A.    You probably want a number next?

 2        Q.    I do.

 3        A.    At least a dozen.  I wouldn't be surprised

 4   if it was two dozen.  Especially after the arrests.

 5   The phone calls increased after the takedowns.

 6        Q.    Did you write a 302 report or any kind of

 7   memorandum regarding these phone calls with

 8   Mr. Duran?

 9        A.    Only if there was something that I wanted

10   to capture that I thought was evidentiary, I would

11   have done a 302.  Otherwise, I wouldn't have.

12        Q.    And on, say, the two dozen phone calls that

13   you had, can you approximate how many reports you

14   wrote?

15        A.    It wouldn't be very many.  My -- I wasn't

16   seeking evidence from him in those phone

17   conversations.

18        Q.    What were you seeking?

19        A.    From my recollection, there were -- I had

20   to prepare him for the arrival of Mr. Baca.  I had

21   to -- well, at times I had to manage him, just give

22   him some guidance.

23        Q.    What kind of guidance?

24        A.    The first -- the instance I'm thinking of

25   is when another informant arrived there, and I think
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 5742

1   made a mistake in some of the representations he made

2   in the pod.  That got to Duran.  Duran suspected, and

3   correctly so, that that person was an informant.  He

4   got pretty mad.  So guidance in terms of just

5   managing him and telling him to stay focused, that

6   sort of stuff, which I wouldn't write a 302 on.

7        Then lastly, the phone calls increased as

8   he was closer to being granted parole or getting his

9   release from the Department of Corrections.  He

10  involved me in some of those conversations.

11       Q.   He was upset that he wasn't released

12  sooner; correct?

13       A.   I'm sure he was.

14       Q.   Let's talk a little bit about the money.

15  You paid him approximately $45,000; correct?

16            MR. CASTELLANO:  Objection, relevance.

17            THE COURT:  Well, we've had some of this

18  testimony so I need a complete picture.  Overruled.

19       A.   I think the total sum is somewhere around

20  there.  We have to break down those costs.  But it's

21  fair to say that he benefited from about that much

22  money.  And that would include expenses to move and

23  stuff like that, for his family to move.

24       Q.   Commissary?

25       A.   Commissary would be a much smaller portion

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5743

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275

```
 1    of that.  I think the greater was that 25,000 that we
 2    talked about earlier, I think with Mr. Lowry.  And
 3    then I remember another larger check to allow his --
 4    or to enable his family to move.
 5         Q.   And what amount was given to Grace Duran on
 6    his behalf?
 7         A.   I think I met with her twice at his
 8    request, to give her the money instead of putting it
 9    on his books.  I don't know the exact amounts, but
10    I've turned over all my receipts that were generated
11    with those payments.
12         Q.   Do you know if they've been disclosed to
13    the defense or not?
14         A.   I'm sorry?
15         Q.   Do you know if they've been disclosed to
16    the defense or not?
17         A.   I never know that.  My role is just to turn
18    them over to the U.S. Attorney's Office.
19         Q.   So you gave Grace Duran twice -- this is
20    the younger Grace Duran, Grace Duran No. 2?
21         A.   I haven't met No. 1.
22         Q.   And do you remember how much money it was
23    that you left with her on each occasion?
24         A.   No.
25         Q.   Can you give me a ballpark?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5744

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275

```
 1          A.    Do you want me to look through receipts?

 2          Q.    Sure.

 3          A.    On July 25, 2016, Agent Sainato and I paid

 4     her $6,000.

 5          Q.    And the second payment?

 6          A.    I can't tell.  There may not have been a

 7     second one.  I just know that I've met her in person

 8     twice.  The other time may have just been a meeting.

 9          Q.    Did she sign for the money?

10          A.    Yes.

11          Q.    May I see that receipt, Agent?

12                MS. SIRIGNANO:  May I approach?

13                THE COURT:  You may.

14          Q.    Agent Acee, is this Ms. Duran's signature?

15          A.    Yes.

16          Q.    And how do we know that?

17          A.    Well, what I looked for first was the one

18     that was different than all the other signatures.

19     And then I remembered that because that was the money

20     to move, that amount.

21          Q.    To move from New Mexico to --

22          A.    Wherever she was moving.

23          Q.    -- out of state?

24          A.    Yeah.  It didn't matter to us.

25          Q.    And she signed it "Ironman"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5745

```
 1        A.    Yes.

 2        Q.    And who is Ironman?

 3        A.    That's the payment name or code name for

 4   Eric Duran.

 5        Q.    And did he choose that name?

 6        A.    He did.  I think he did.  I didn't choose

 7   it.

 8              MS. SIRIGNANO:  Your Honor, I'd like to

 9   move this in as Chris Garcia C.

10              THE COURT:  Any objection, Mr. Castellano?

11              MR. CASTELLANO:  Yes, Your Honor.  First of

12   all, it's a copy.  And second, we're continuing to

13   get away from the two motions at this point.  We're

14   getting farther and farther away from either one,

15   including selected recordings.  So it's irrelevant to

16   either of the motions.

17              THE COURT:  Well, part of this -- I see it

18   as part of the motion on voluntariness.  So I'm going

19   to admit it.

20              And so anybody else have any objection to

21   it?  All right.  Christopher Garcia Defendant's

22   Exhibit C will be admitted into evidence.

23              MR. CASTELLANO:  Your Honor, I'd ask that

24   we make a photocopy of this exhibit and then mark it.

25              THE COURT:  All right.  Is that acceptable,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5746

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 278

```
 1    Ms. Sirignano?

 2              MS. SIRIGNANO:  Absolutely.  I don't have

 3    any problem with that.  Just logistically should I

 4    leave it with the Clerk?

 5              THE COURT:  Maybe Ms. Standridge can make a

 6    copy of it and give you back -- or give Mr. Acee back

 7    his original.

 8              MS. SIRIGNANO:  Thank you.

 9    BY MS. SIRIGNANO:

10         Q.  So the second meeting was when, with

11    Ms. Duran?

12         A.  I think it was before I gave her that

13    money.  Because I wanted to talk to her about -- I'd

14    heard from Duran on what his plans were, but I just

15    kind of wanted to verify with her that she was on

16    board with that.  So I think it was before July, that

17    July date.

18         Q.  Did you write a report regarding this,

19    these two meetings?

20         A.  No.

21         Q.  I'd just like to go back to the master text

22    file.

23              MS. SIRIGNANO:  Your Honor, may I approach?

24              THE COURT:  You may.

25         Q.  Do you recognize this document?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5747

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

```
 1          A.    Yes.

 2          Q.    Is this the master text file?

 3          A.    I think -- I believe that's what it's

 4   called.

 5          Q.    And you referred to my filing.  This was

 6   Exhibit C of Document 1612; correct?

 7          A.    Yes.

 8          Q.    And this exhibit is 838 pages; correct?

 9          A.    Yes.

10          MS. SIRIGNANO:  Your Honor, I'd like to

11   move for admission of the entire 838 pages, which I

12   don't have here in court with me right now, but it is

13   an exhibit in a reply I filed over the weekend.  With

14   the Court's permission, I can get a hard copy here

15   after the hearing.

16          THE COURT:  And tell me -- I have copied

17   this morning -- Ms. Standridge copied the reply.

18   What are most of those?

19          MS. SIRIGNANO:  Your Honor, this is the

20   master text file that I reviewed with Mr. Acee.

21          THE COURT:  So that's what it is?

22          MS. SIRIGNANO:  It's all the text messages

23   from Eric Duran's phone.  And there is a discrepancy

24   between the actual phone, the original evidence, and

25   the text messages that are in this master text file
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    from Verizon.
 2              THE COURT:  Any objection to that coming
 3    in?
 4              MR. CASTELLANO:  Your Honor, I just wonder
 5    what the relevance is as it relates to selective
 6    recording or coercion, and where the discrepancy is
 7    between the two, before they move its admission.
 8              THE COURT:  Well, I think I see the
 9    relevance to both of the motions, so I'm going to
10    admit it.  It seems that it's already been in the
11    court record here, and we've had discussions about it
12    during the day.
13              So is there any objection from anybody
14    else?
15              Did you have anything, Mr. Lowry?
16              MR. LOWRY:  No, Your Honor.  I can explain
17    the relevance, but I think it's a moot point given
18    the Court's ruling.
19              THE COURT:  All right.  So Christopher
20    Garcia Defendant's Exhibit D will be admitted into
21    evidence.
22              MS. SIRIGNANO:  Thank you, Your Honor.  And
23    this is just page 1, and I've marked it D as a
24    placeholder.  And I will provide the Court with the
25    remaining pages in the morning.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5749

1          MR. LOWRY:  Your Honor, can I have a brief

2    housekeeping matter?

3          THE COURT:  You may.

4          MR. LOWRY:  I think the Court would find it

5    more beneficial to have that electronically versus on

6    a CD or a thumb drive, OCR'd so you can search it

7    more quickly.

8          THE COURT:  I don't have any problem if

9    nobody objects.  Mr. Castellano is shaking his head

10   no.

11         Anybody else?  All right.  So if you want

12   to provide it in that form, that will be fine as

13   well, Ms. Sirignano.

14         MS. SIRIGNANO:  Thank you, Your Honor.

15   Q.   You mentioned the wire room at the FBI, and

16   a delay in receiving text messages or calls; correct?

17   A.   I think there is a delay.

18   Q.   Did you have a monitor in your wire room

19   regarding this phone?

20   A.   No -- like a full-time monitor?

21   Q.   Yes.

22   A.   No.

23   Q.   Was there a part-time monitor?

24   A.   An agent was assigned to review it on, I

25   guess, a part-time basis, among other tasks.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 282

```
 1          Q.   Who was that?

 2          A.   It was Agent Sainato.  And then I think it

 3     later changed to Agent Neale.

 4          Q.   This phone was being used every day by

 5     Mr. Duran; correct?

 6          A.   I don't know if it was used every day.

 7          Q.   Most days?

 8          A.   I think so.

 9          Q.   Was Agent Sainato or Agent Neale monitoring

10     this phone at least every other day?

11          A.   It just depended.  I placed the priority on

12     the operation we were doing on the street.  So if I

13     needed them for operations on the street, then they

14     would have to get back to reviewing this.  So it kind

15     of depended what the week looked like.  But this was

16     on their "to do list."

17          Q.   Do you know if weeks went by without the

18     texts or the phone calls being monitored?

19          A.   I think they were pretty good about getting

20     in there.  And I think they got in there at least

21     weekly.

22          Q.   Did they write reports regarding their

23     review of the texts or the phone calls?

24          A.   Yes.  In fact, Mr. Lowry presented one

25     earlier today with the bullet points.  That one was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   by Agent Sainato.

2        Q.   So at some point in time, the FBI became

3   aware that Mr. Duran's girlfriend, Felicia, was

4   sending sexy photos and videos of herself to him;

5   correct?

6        A.   I think today is the first time I heard

7   that name.  I have talked to Duran about that, yes,

8   but if you'd give me a timeframe, I might be able to

9   answer a little bit better.

10        Q.   Well, was it another girl that was sending

11   these videos?

12        A.   I wasn't aware of any videos being sent.  I

13   understand there was an exchange of photos.  And I

14   think in a couple of cases Mr. Baca introduced Duran

15   to some women.  I'm not sure how that introduction

16   took place.  But there was some photo exchanges

17   there.

18             And at the time I was using Mr. Duran to

19   also broker deals on the street between undercover

20   FBI agents and people selling drugs in places in New

21   Mexico.  He may have sent selfies to at least one of

22   those people, to kind of show how he's doing, what he

23   looks like now.  I'm only aware of that, though,

24   through what I've heard in court, and prior to that,

25   what Duran told me.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 284753

```
1          Q.   What Duran told you about receiving sexy
2     photos from women?
3          A.   No, he didn't tell me that.  He -- at some
4     point in time, he told me that he had sent some
5     photos, and was texting with someone related to Chris
6     Garcia and someone related to Anthony Baca.  My
7     interest was more in who are those people, and are
8     those people we're doing buys from, or are you just
9     talking to women?  If he was just talking to women,
10    and it didn't involve us buying drugs or guns, or
11    something like that from them, I wasn't as concerned
12    who they were.
13         Q.   And that's because they weren't targets?
14         A.   Those people -- I think one of them might
15    have gotten a target letter, but we didn't arrest
16    them.
17              MS. SIRIGNANO:  May I have a moment, Your
18    Honor?
19              THE COURT:  You may.
20              MS. SIRIGNANO:  Pass the witness, please.
21              THE COURT:  Thank you, Ms. Sirignano.
22              Mr. Villa, do you have cross-examination of
23    Mr. Acee?
24              MR. VILLA:  Thank you, Your Honor.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5753

```
1                        EXAMINATION
2    BY MR. VILLA:
3          Q.   Good afternoon, Agent Acee.
4          A.   Good afternoon.
5          Q.   Okay.  So I want to go back just to make
6    sure I've got this understood on the recordings that
7    Mr. Duran made of Timothy Martinez.
8               You believe that he did make a recording
9    that -- I think you testified with Mr. Lowry you saw
10   on a tablet?
11         A.   No, I have not looked through anyone's
12   tablet.  But different defendants will tell me what's
13   on the tablet.  That one stuck out to me because it's
14   among some of the recordings that really shouldn't be
15   on there.  They're from a different gang, from a
16   different case.  And I believe there is one recording
17   of Timothy Martinez in there with a guy that the
18   defendants will know as Pete, or Pite.
19         Q.   That was made by Eric Duran?
20         A.   Yes.
21         Q.   But you're saying that's for a different
22   case?
23         A.   No, sir.  What I'm saying is -- I'm sorry
24   if I'm not explaining it well -- but the device that
25   Duran used was a device that I used on a different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   gang case.  And what happened was, Agent Brusuelas

2   must have checked that device out before it was

3   downloaded, or STIU took it from my case targeting a

4   gang, the Sureno/Mexican Mafia Gang, and gave that

5   device to Duran, who then used it on a number of

6   people in the SNM case.  It's simply a device just

7   crossing cases in the same facility.

8       Q.   Okay.  But in any case, the recording of

9   Timothy Martinez is pertinent to this case?

10      A.   Yes.

11      Q.   And the recording was a discussion of the

12  Molina murder?

13      A.   It's been a while since I've listened to

14  it.  But there were some aspects of that in there,

15  yes.

16      Q.   And I know you're not responsible for

17  disclosures, but you do believe that that recording

18  was properly captured on your end and provided to the

19  U.S. Attorney's Office?

20      A.   I do, simply by the fact, I mean, the

21  defendants would have no other way to tell me --

22  recite to me what was in those recordings.  They're

23  claiming they're in the tablet.

24      Q.   So defendants in this case told you they

25  saw them in the tablet?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5755

```
 1          A.   They listened to them, yes.

 2          Q.   That being cooperating defendants?

 3          A.   Yes.

 4          Q.   Who told you that?

 5          A.   Most recently, Mario Rodriguez; Timothy has

 6     told me that, Timothy Martinez; Roy Martinez; Rob

 7     Martinez.

 8          Q.   So they told you, but they didn't actually

 9     play it for you on the tablet?

10          A.   No.  I stay away from the tablets.  If they

11     have them, I don't look at them, I don't listen to

12     them.

13          Q.   Now, you testified earlier about an

14     informant that was in the pod that Duran had actually

15     suspected of being an informant; is that right?

16          A.   Yes.

17          Q.   When was this timeframe?

18          A.   I think Mr. Lowry has it in some of his

19     documents that he's shown me.  But it would have been

20     before Mr. Baca came back, so I think it would have

21     been early October 2015, late September of 2015.

22          Q.   Is this when Mr. Duran was in Q pod?

23          A.   I'm not sure.  I'll be honest with you, at

24     that time, my knowledge of the pods and the system at

25     PNM is not what it is today.  So I'm not sure.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   All right.  Who was this informant?

 2        A.   Tomas Clark.

 3        Q.   Did Eric Duran record Tomas Clark?

 4        A.   No, I don't think so.  I think they were on

 5   different levels in the facility.

 6        Q.   Did he record Billy Cordova?

 7        A.   No, I don't believe so.

 8        Q.   Now, a little earlier you testified about

 9   Grace Duran, and I'm talking about No. 2, that she

10   and Mr. Duran were married; true?

11        A.   Yes.

12        Q.   Isn't it true that they were divorced May

13   9, 2014?

14        A.   I'm not aware of that.

15        Q.   I mean, if there was a court record

16   reflecting that, would you have any reason to dispute

17   it?

18        A.   No, sir.

19        Q.   Do you have any reason to believe that

20   since that divorce, there was any sort of formal

21   remarriage, if that's the right word?

22        A.   I don't know.  I thought they were married.

23        Q.   And that's based on what he's told you?

24        A.   As well as her.

25        Q.   Both of them?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5757

```
 1        A.   Yes.

 2        Q.   But you're not familiar with legal

 3   documents and that sort of thing?

 4        A.   I haven't reviewed any of those, no.

 5             MR. VILLA:  May I have a moment?

 6             THE COURT:  You may.

 7             MR. VILLA:  That's all the questions, Your

 8   Honor.

 9             THE COURT:  Thank you, Mr. Villa.

10             Any other defendant have cross-examination

11   of Mr. Acee on these two motions?

12             All right.  Mr. Castellano, do you have

13   redirect of Mr. Acee?

14             MR. CASTELLANO:  Yes, Your Honor.

15                    REDIRECT EXAMINATION

16   BY MR. CASTELLANO:

17        Q.   Agent Acee, I'm showing you Chris Garcia's

18   Exhibit A, and you may or may not know the answer to

19   this question, but do you see up here where it says

20   "Contents," and it says "texts, 7"?

21        A.   Yes.

22        Q.   But there are four texts below?

23        A.   Yes.

24        Q.   Do you know what that means, or why it

25   has -- shows seven texts in one area and four texts
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5759

```
 1    in another?

 2         A.    No.

 3         Q.    There is an indication on what's labeled as

 4    page 3 of 5 of the same exhibit.  Do you know or

 5    recognize the number -- because it indicates the

 6    texts that are shown there are all incoming texts?

 7         A.    Correct.

 8         Q.    Do you know -- do you recognize either of

 9    these two phone numbers?

10         A.    Not off of the top of my head, no.

11         Q.    Chris Garcia D, which is a summary of the

12    text messages, how did these come into existence?

13         A.    These are generated as a result of the

14    court order we got to intercept Duran's contraband

15    phone, prison phone.

16         Q.    Is it your opinion that certain things may

17    not have been captured because they were limited by

18    the court order in this case?

19         A.    Yes.

20         Q.    What types of things do you think were not

21    captured as a result of the limitations by the court

22    order?

23         A.    Internet traffic, email.  I know now that

24    the photographs weren't captured that would have been

25    sent over text.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 291

1     Q.   Tell us about this phone that you gave to

2 Mr. Duran, that you bought at Walmart.  What type of

3 phone was it?

4     A.   It was a Verizon flip-phone.  And I think

5 it cost 19.99.  It was a small phone.  It was what I

6 believed would -- and was similar to the phones that

7 are utilized in the prison.

8     Q.   Now, were you aware of the phone's

9 capacity?

10     A.   No.

11     Q.   And by that, do you know if this was one of

12 those phones that only holds so many text messages

13 before new ones bump off the old ones?

14     A.   I don't know that.

15     Q.   And do you know what happens to the phone

16 once it loses power and loses its charge, for

17 example?

18     A.   No.

19     Q.   So when you gave the phone to Agent Stemo,

20 were you aware of whether or not it had to be charged

21 before she could do the Cellebrite report?

22     A.   I think it did.  Because I gave her a

23 charger.  In my experience, all the phones that we

24 have in our drawer, that we use for purposes like

25 this are dead.  They all need to be charged.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5760

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 292761

1    Q.   Are you aware of any other limitations on

2    the phone or the cellular service, in terms of how

3    long text messages were maintained on the phone?

4    A.   No.

5    Q.   Now, you talked about some of the

6    recordings.  And so you mentioned that you like to

7    get the corroboration, if you can; is that correct?

8    A.   Yes, sir.

9    Q.   So, for example, if you have a recording

10   that starts in the middle of a sentence and ends in

11   the middle of a sentence, where some pieces might be

12   missing, would you like to have other things that

13   fill in the blanks, possibly?

14   A.   Yes, sir.

15   Q.   So I'm going to show you just a summary

16   from call 10.  There is already in evidence the

17   transcript.  But there is a discussion here of the

18   CHS talking to Mr. Baca about a willa, or a message,

19   talking about how much Mr. Baca hated Santistevan.

20   A.   Yes.

21   Q.   Now, this is in October of --

22   THE COURT:  Let me ask you this:  Do you

23   want to take this up and finish it tomorrow so you're

24   not rushed trying to finish it up today?

25   MR. CASTELLANO:  I do have more, so we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    could finish it tomorrow.

 2              THE COURT:  Why don't we do that.

 3              One thing I wanted to say before we leave,

 4    I told you I was working on these James motions.

 5    Probably the place that I think that I -- where I'm

 6    coming out is I'm inclined to think that, as I

 7    indicated, that I think some of these statements by

 8    the defendants can only be used against them, are not

 9    exceptions -- they're not hearsay under the rules,

10    and that's what I indicated on the last day before

11    the holidays, that that was where I was coming out.

12    I think under Bruton, I probably cannot give

13    instructions that clarify the -- just a limiting

14    instruction, and that satisfied the Bruton problem.

15    But I think Smalls indicates that that is not a

16    Bruton problem.  So I think I don't have a

17    constitutional issue.  So I'm inclined to think that

18    just on a hearsay issue, I can give the jury a

19    limiting instruction, and expect them to follow it.

20              So y'all might, in your studies, be

21    focusing on that.  But I'm inclined to think that I

22    can give a limiting instruction and tell them this

23    evidence can only be used against this defendant.

24    That would not probably be permissible under Bruton.

25    But since there is no Bruton problems, it is going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 294

1    be satisfactory for the federal rules of evidence.

2    So that's where I'm coming out.

3              So -- nope, nope -- I told you where I'm

4    looking.  I still haven't gotten anything from

5    anybody after three weeks, so we're not going to

6    delay it today.  But that's where I am.  All right.

7    See y'all tomorrow.  Have a good evening.

8              (The Court stood in recess.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              C-E-R-T-I-F-I-C-A-T-E

 2

 3   UNITED STATES OF AMERICA

 4   DISTRICT OF NEW MEXICO

 5

 6

 7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8   Official Court Reporter for the State of New Mexico,

 9   do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on January 15, 2018.

15

16

17

18        _____
          Jennifer Bean, FAPR, RMR-RDR-CCR
19        Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:  (505) 348-2283
22        Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1680
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7        Defendants.

8                    VOLUME 2

9        Transcript of Motion to Suppress and James
     Hearing Proceedings before The Honorable James O.
10   Browning, United States District Judge, Las Cruces,
     Dona County, New Mexico, commencing on January 9,
11   2018.

12
     For the Government:  Ms. Maria Armijo; Mr. Randy
13   Castellano; Mr. Matthew Beck

14   For the Defendants:  Mr. Brock Benjamin; Ms. Cori
     Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper; Mr.
15   James Castle; Mr. Jeff Lahann; Mr. John Granberg; Mr.
     Scott Davidson; Ms. Amy Jacks; Mr. Richard Jewkes;
16   Ms. Amy Sirignano; Mr. Christopher Adams; Mr. Marc
     Lowry; Ms. Theresa Duncan; Ms. Carey Bhalla; Mr.
17   William Maynard; Mr. Donovan Roberts; Ms. Lisa
     Torraco; Ms. Angela Arellanes; Mr. Jerry Walz

18

19   For the Defendants (Via telephone):  Ms. Justine
     Fox-Young; Ms. Margaret Strickland

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Good morning

2    everyone.  I appreciate everyone being back and ready

3    to go and on time.  Looks like everybody has got an

4    attorney.  Look around, make sure that everybody is

5    represented before we get started.

6          All right.  I want to start this morning by

7    talking a little bit more about the issue that we

8    closed on December 20 with, that I closed the day

9    yesterday.  You can tell it's on my mind, so I want

10   to talk about it a little bit more, and tell you what

11   I'm going to do, and then invite you to focus in

12   very -- like a laser at some point on the issues that

13   are concerning me.  At this point, I think my needs

14   are beginning to show, and take over.  And so anybody

15   that wants to say anything on what I'm thinking

16   about, I'm going to be as open as I can with you

17   about it.

18          As I indicated last night, after giving

19   some thought about it over the holidays, I am

20   inclined to conclude that under Bruton, a

21   nontestimonial confession implicating several

22   defendants cannot be admitted against one of them,

23   without being admitted against all of them, unless

24   there is a limiting instruction.

25          There are a number of courts of appeals

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5766

 1    that have indicated that Bruton is a confrontation

 2    clause case.  And I'll just give you one cite of what

 3    I think is the strongest pronouncement of that.

 4    That's the Third Circuit in United States versus

 5    Berrios, 676 F.3d 118.  And I quote, "Bruton is no

 6    more than a by-product of the Confrontation Clause."

 7    So you can't get any firmer with that.  But there

 8    is -- there are people that push back on that, and I

 9    would point you to the Federal Rules of Evidence 105

10    Advisory Committee Note, which says this, it says,

11    "In Bruton versus United States -- gives the cite --

12    "the Court ruled that a limiting instruction did not

13    effectively protect the accused against the

14    prejudicial effect of admitting in evidence the

15    confession of a co-defendant which implicated him."

16         So there you can see that probably the

17    advisors to 105 are taking a little bit different

18    view of what Bruton said.  And I do think a lot

19    depends on how you read Bruton.

20         Let me pick up where the advisory committee

21    notes are.  The way I read that group of scholars,

22    commenters, is that the Supreme Court in Bruton did

23    not decide that the Confrontation Clause prohibited

24    the introduction of a nontestifying defendant's

25    confession against a co-defendant; because there was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5767

```
 1    no doubt when Bruton was decided, that using a
 2    confession in that way was impermissible.  When you
 3    look at note 3 on page 128 of Bruton, it says, "We
 4    emphasize that the hearsay statement inculpating
 5    petitioner was clearly inadmissible against him under
 6    traditional rules of evidence."  And it cites to
 7    Tong's case, which is a 1662 English Reporter that
 8    permitted that when a, quote, "conspirator be
 9    examined before a privy councellor or justice of
10    peace, and upon his examination without torture
11    confessed the treason."  So the use of that
12    confession against that conspirator at trial, even
13    though "the confession there spoken of, is not meant
14    a confession before the judges at his trial, but a
15    confession upon his examination," with the proviso
16    that the confession "is only evidence against the
17    party himself who made the confession, but cannot be
18    made use of as evidence against any others whom on
19    his examination he confessed to be in the treason."
20            Crawford at page 45 cites, and quotes that
21    portion that I just read from Tong's.
22            So the disputed issue in Bruton -- and
23    again, I'm giving what I think is the scholarly
24    advisory committee approach to this issue -- was
25    rather whether courts can admit a confession against
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   one defendant without admitting it against an

 2   implicated co-defendant by instructing the jury that

 3   the, quote -- Bruton again -- "confession inculpating

 4   the second defendant had to be disregarded in

 5   determining his guilt or innocence."  Once again, not

 6   talking about the Confrontation Clause, but just

 7   talking about the problem in general.

 8             And in fact, the Supreme Court -- and I'm

 9   going to quote again from Bruton, "granted certiorari

10   to reconsider Delli Paoli versus United States," a

11   1957 case, which does not even mention the

12   Confrontation Clause, and instead addressed only the

13   efficacy of limiting instructions.  So that's the

14   reason I think a powerful argument could be made that

15   Bruton is a limiting instruction case.  And if you

16   look at Delli Paoli, at page 259, what it said was,

17   "The issue here is whether, under all the

18   circumstances, the court's instructions to the jury

19   provided petitioner with sufficient protection so

20   that the admission of Whitley's confession strictly

21   limited to use against Whitley, constituted

22   reversible error."  Bruton comes back and says this

23   at page 126, "The basic premise of Delli Paoli was

24   that it is" -- and it's going to quote now Delli

25   Paoli, "reasonably possible for the jury to follow,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    sufficiently clear instructions to disregard the

 2    confessor's extrajudicial statement that his

 3    co-defendant participated with him in committing the

 4    crime."  That's a quote from Delli Paoli, at 239.

 5            And then in United States v. Clark -- and

 6    this is the case that I think we need to really focus

 7    on from the Tenth Circuit -- 717 F.3d 790, at page

 8    814, it stated that, "Bruton provides the foundation

 9    for affirmative remedial measures -- most notably

10    severance -- upon a proper showing that a

11    co-defendant's statement offered into evidence would

12    inculpate the defendant," and that "these measures

13    are meant to avoid the extrinsic (i.e. collateral)

14    damage to a defendant from the jury's undue

15    consideration of a co-defendant's facially

16    inculpatory statement -- a factor that the jury would

17    be highly unlikely to disregard, and one that cannot

18    be remedied by a curative instruction."  Bruton

19    resolves that disputed issue by holding that -- I'm

20    quoting from Richardson versus Marsh -- which was a

21    pre Crawford Supreme Court opinion that "the almost

22    invariable assumption" -- and notice that language --

23    "the almost invariable assumption of the law that

24    jurors follow their instructions does not apply when

25    a defendant's confession that implicates

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    co-defendants is admitted in a joint trial."  Now, on

2    the face of it, that would seem to suggest that

3    limiting instructions cannot be done in this case.

4    But again it's pre Crawford.  But the thing that I

5    think you have to draw from it is it says that, the

6    almost invariable assumption of the law is that

7    limiting instructions can work.  So Bruton carved

8    out, even pre Crawford, a very limited exception when

9    limiting instructions cannot work.

10         Now, if I were to stop right there, I

11   think -- and I didn't have anything else -- I think I

12   would probably write an opinion that says Bruton is a

13   limiting instruction opinion; it's not a

14   Confrontation Clause opinion.  Because you heard the

15   same language I'm looking at.  And I can't solve the

16   problem here with limiting instructions.  And I think

17   you could write a scholarly opinion, an academic

18   opinion that would have some force.

19         But now, listen to what else you can glean

20   out of the Bruton and Marsh, and then we're going to

21   turn back to the Tenth Circuit cases.  Here's what

22   Marsh says, "That exception" -- so this exception

23   that Bruton created -- "implicates the Confrontation

24   Clause only because, absent Bruton versus United

25   States, courts could sidestep Confrontation Clause

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5771

1    issues in joint trials by instructing juries to use

2    confessions only against the defendants who make

3    them, and not against implicated co-defendants."

4            So this is what Marsh says, and I'm quoting

5    at 206:  "Ordinarily, a witness whose testimony is

6    introduced at a joint trial is not considered to be a

7    witness against a defendant if the jury is instructed

8    to consider that testimony only against a

9    co-defendant."  Again, "ordinarily."  So the Bruton

10   rule, whatever it is, is a narrow exception from the

11   invariable, and now ordinary rule, that limiting

12   instructions can work.

13           Here's what Bruton again says, "If it were

14   true that the jury disregarded the reference to the

15   co-defendant, no question would arise under the

16   Confrontation Clause, because by hypothesis the case

17   is treated as if the confessor made no statement

18   inculpating the nonconfessor."

19           Bruton, however, recognizes and again I

20   quote that, "The practical and human limitations of

21   the jury system," render that route around the

22   Confrontation Clause impassible, when, quote, "the

23   powerfully incriminating extrajudicial statements of

24   a co-defendant, who stands accused side by side with

25   the defendant, are deliberately spread before the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5772

 1    jury in a joint trial."  That's Bruton at 135-36.

 2           And then, in Cruz versus New York, 1987,

 3    Scalia says this on page 190, reading Bruton versus

 4    United States to hold that the principle that -- and

 5    I'm quoting, "a witness whose testimony is introduced

 6    in a joint trial with the limiting instruction that

 7    it be used only to assess the guilt of one of the

 8    defendants will not be considered to be a witness

 9    against the other defendants."  Does not, "validate,

10    under" -- and this is in his quote -- "the

11    Confrontation Clause, introduction of a nontestifying

12    co-defendant's confession implicating the defendant,

13    with instructions that the jury should disregard the

14    confession insofar as its consideration of the

15    defendant's guilt is concerned."

16           When you read that, you can understand why

17    almost all the courts of appeals have said Bruton is

18    a Confrontation Clause case.  That roundabout

19    analysis means at least in pre Crawford versus

20    Washington cases that "the rule" -- and I'm going to

21    quote Scalia in Green versus Fisher, 2011 -- that

22    "the rule announced in Bruton versus United States

23    forbids the prosecution to introduce a nontestifying

24    co-defendant's confession implicating another

25    defendant in the crime."  That's what he describes as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5773

```
 1    pre Crawford.

 2            After Crawford, however, the confrontation

 3    clause does not police the use of nontestimonial

 4    statements.  And we've talked about -- and I think we

 5    all agree on that.  So I think, unless somebody wants

 6    to take that one on, I think we take that as a given.

 7            Accordingly, it no longer matters, for

 8    Confrontation Clause purposes, whether limiting

 9    instructions restrain how juries use nontestimonial

10    confessions in joint trials, because the

11    Confrontation Clause does not apply to those

12    confessions in the first place.  The Confrontation

13    Clause thus permits the admission of nontestimonial

14    confessions in multidefendant trials notwithstanding

15    Bruton.  In other words -- and I'm quoting now

16    Smalls -- in other words, "the Bruton rule, like the

17    Confrontation Clause upon which it is premised, does

18    not apply to nontestimonial hearsay statements."

19            And then going back to Clark that's in note

20    2 of Smalls, on page 768 -- then going back to Clark,

21    this is the language that I think finally suggests

22    where I have to go in this case.  On page 816, it

23    concludes that nontestimonial statements, quote,

24    "fall outside the protective ambit of the

25    Confrontation Clause."  Again, I think we all agree
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5774

1   with that.  And then here's the four words that I

2   think determine, "and by extension Bruton."

3          So even if I were to read Bruton as a

4   limiting instruction opinion, which I probably

5   intellectually agree with, I don't think the Tenth

6   Circuit language of those four words allow it.

7          I think what the scholars, the advisors say

8   is that Bruton is not absolutely silent regarding

9   nontestimonial statements.  When you look at Crawford

10  it discusses Roman law, "Marian bail and committal

11  statutes," the 1603 trial of Sir Walter Raleigh for

12  treason."  I think have to read that as obviating

13  Bruton with respect to Confrontation Clause

14  challenges to nontestimonial statements.  But I think

15  you could also read that like Richardson, which again

16  is pre Crawford.  It neither calls that case's

17  rationale into question, which is what Richardson

18  says, declaring that, quote, "We continue to apply

19  Bruton where we have found its rationale validly

20  applies," nor as Bruton says alters, "the practical

21  and human limitations of the jury system."

22         But Crawford upset the Supreme Court's

23  Confrontation clause jurisprudence.  And so I think

24  the key question is whether Bruton is a Confrontation

25  Clause case.  I think there is more to Bruton than it

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5775

```
 1   just being a Confrontation Clause case.  But I don't
 2   think that most of the courts of appeals have said it
 3   that way.  And I'm concerned with the language I just
 4   emphasized from Clark, and to some degree, Smalls.  I
 5   think it may foreclose me writing an opinion or
 6   saying here in court that Bruton is not a
 7   Confrontation Clause case given what the Tenth
 8   Circuit has said.
 9              So I am not inclined to think that Bruton's
10   holding that admitting a confession against one
11   defendant requires admitting a confession against all
12   the defendants that it implicates remains good law in
13   the Tenth Circuit, even vis-a-vis nontestimonial
14   confessions.
15              I ran out of time this morning.  I looked
16   at it a little last night.  There is a Fifth Circuit
17   case that may go the way of the scholars and say that
18   some of the rationale for Bruton survives Crawford.
19   I think there is also an Eastern District of Virginia
20   case that is kind of of the way.  Those two cases
21   were in positions that are very similar to ours.  But
22   even though I find some of that persuasive, I'm not
23   sure -- I think it may be foreclosed here in this
24   circuit.
25              So what I am going to probably do this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5776

```
 1    morning, if I can get it done, is I'm probably going
 2    to issue an order to the U.S. Attorney's Office to
 3    their appellate division.  I will explain to them
 4    that if I go this way, I want an assurance from the
 5    appellate lawyers that they're going to defend what I
 6    do on appeal, and that they're not going to confess
 7    error if I write as I just explained.
 8              If they have some problems about it, we
 9    need to know about it sooner rather than later.
10              I looked at the Government's 1594, which
11    was filed after our hearing on Wednesday, December
12    20 -- y'all filed -- the Government filed that the
13    next day.  The Government is going back -- unless I
14    missed something and it didn't address these
15    issues -- it instead addressed the issue I'm taking
16    for granted is that certain statements that Mr. Perez
17    is making on the tape can come under some hearsay
18    exception.  So the Government is still fighting or
19    resisting the notion that those cannot be used
20    against other people.
21              As can you see, I've kind of moved beyond
22    that.  I'm not saying I'm through analyzing it.  But
23    I don't think the statements against penal interests
24    or the co-conspirator statement are going to be able
25    to cover -- I think the way the Government put it in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5777

1    its brief -- was anything that's said within the

2    prison walls comes within the co-conspirator

3    exception.  I don't think I can go that far.  So I

4    think it's going to have to meet those elements.

5           And so it seems to me that, at the present

6    time, I'm inclined to allow those statements to be

7    heard by the jury, and use the invariable and

8    ordinary rule that limiting instructions have

9    efficacy.  And we'll give those in this case.  But I

10   will make it clear to them, and everybody will have

11   to conform their arguments accordingly, that that

12   evidence cannot be used against the other four

13   defendants in the trial.

14          If the Government, in thinking that

15   through, has problems with that, then we know the

16   kind of the solutions and remedies the defendants

17   have been advancing.  And so the Government may want

18   to relook and reconsider those as well.

19          So you'll probably receive those orders.

20   It's not to preclude the defendants from in any way

21   commenting on those -- where I'm going.  But I do

22   think need assurance that if I'm going to rule in

23   favor of the Government on a very important issue, I

24   think, as to how the evidence is going to play out,

25   then I need the assurance from the Government that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 15779

```
 1   their appellate division is going to defend that
 2   decision and not confess error in an area where some
 3   people have thought about it and come out different
 4   ways.
 5         You can tell I put a lot of thought into
 6   this.  I don't want off-the-cuff comments on this
 7   issue.  I will -- before we leave here this week,
 8   I'll be quiet and let everybody think about it.  But
 9   I'd prefer to have people think about just what I
10   said, and then respond maybe in writing, because I
11   think that, without people giving it some serious
12   thought, and getting at least to the same place I am,
13   that it's not going to be as helpful, and it's going
14   to be more frustrating.  So I won't leave here
15   without letting you say what you have to say before
16   you see me on the 29th.  But let's just give that
17   some thought and leave it there for this morning.
18         All right.  Who is on the telephone this
19   morning?
20         MS. FOX-YOUNG:  Good morning, Your Honor.
21   This is Justin Fox-Young.
22         MS. STRICKLAND:  Good morning, Your Honor.
23   This is Margaret Strickland.
24         THE COURT:  Ms. Strickland, good morning.
25   Anybody else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5779

```
 1              THE CLERK:  This is K'Aun Wild.
 2              THE COURT:  All right.  Ms. Wild.  So I've
 3   got three people on the phone.  If somebody has got
 4   their mute button on and trying to talk, we're not
 5   hearing you.
 6              All right.  Ms. Duncan, Mr. Lowry, are you
 7   ready to pick up where we were on the motion?  Mr.
 8   Castellano?
 9              MR. CASTELLANO:  I had Agent Acee on the
10   stand for cross-examination, Your Honor.
11              THE COURT:  All right.  Mr. Acee, if you'll
12   return to the witness box, and I'll remind you that
13   you're still under oath.
14              Mr. Adams, good morning to you.  Glad to
15   see you.
16              MR. ADAMS:  Thank you, Your Honor.  I am
17   grieving today over the collapse of the Mighty
18   Bulldogs.  But other than that, I'm pleased to be
19   here.
20              THE COURT:  I told Mr. Cooper that I
21   thought Georgia had the better team, but Alabama had
22   better athletes, at least in the placekicking.  I was
23   exactly right, they had a better team.  But boy,
24   that's -- I tell you what, you can go to the locker
25   and pull out a freshman like that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. ADAMS:  Never played.  How do you game
 2    plan for a guy who has never played?  Which is a
 3    little bit I'm concerned the Government might do with
 4    their witness list.  But we'll get to that.
 5              THE COURT:  Yeah.  But I stayed up and saw
 6    Kirby Smart saying he had planned on them bringing
 7    that quarterback out.  So, Mr. Adams may not have
 8    planned it, but Mr. Smart planned it.
 9              MR. ADAMS:  I would say the evidence would
10    suggest Kirby Smart should have planned a little bit
11    more for the kid from Hawaii, who played an
12    incredible game.
13              THE COURT:  All right.  Mr. Castellano.
14              MR. CASTELLANO:  I was going to say there
15    is no planning for that kid.  He was good.
16              THE COURT:  Somebody that's on the
17    telephone is typing, and they don't have their mute
18    button on.  Can you put your mute button on, because
19    the typing is coming across the phone.  Thank you.
20              Mr. Castellano.
21                          EXAMINATION
22    BY MR. CASTELLANO:
23        Q.   Agent Acee, I'm going to take you back to
24    Chris Garcia's Exhibits A and B, which are these
25    extraction reports.  Do you remember those from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5781

```
 1   yesterday?

 2        A.   Yes.

 3        Q.   Turning to the second page of each of those

 4   reports -- showing you first Exhibit A, which is

 5   Agent Stemo's report --

 6        A.   Yes.

 7        Q.   -- if you know, do you know why Agent

 8   Stemo's report indicates seven text messages up

 9   above, even though there are fewer below, and why the

10   defense expert has five text messages in their

11   subsequent analysis, and then the same text messages

12   below?  Do you know why?

13        A.   I do not.

14        Q.   Turning your attention to Baca F from

15   yesterday.  It's the telephone conversation

16   purportedly from November 20 of 2015, purportedly

17   between you and Mr. Duran.  Do you remember that?

18        A.   I do.

19        Q.   Now, you mentioned earlier, when we had

20   these conversations on the recording device, or the

21   telephone, they sometimes start at what appears to be

22   mid-sentence.  Do you remember that conversation?

23        A.   Yes.

24        Q.   And you said in response that you would

25   like to have other corroboration to help support
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  those recordings, if you can?

2       A.   Yes.

3       Q.   Okay.  So in a conversation with Mr. Duran,

4  you have a discussion here on page 3 of the

5  transcript, which refers to a statement, "He's just

6  trying to really basically put it on Mario's

7  shoulders, and say, you know, don't say nothing to

8  nobody."  Do you know what that corroborated in terms

9  of the statements and what was going on in the

10 investigation?

11      A.   Yes.  The "Mario" he's referring to is

12 Mario Montoya.  And what Duran is saying in response

13 to my suggesting getting "Styx" in or including

14 "Styx" or others in the conversation, Duran is tell

15 me that Mr. Baca just wants Mario to handle it, and

16 not to involve other people, so that it can stay

17 small scale or quiet.

18      Q.   And what was Mario Montoya supposed to be

19 handling at that point in the investigation?

20      A.   Montoya was supposed to be conducting

21 surveillance to find out where Marcantel and

22 Santistevan lived, and then killing them.

23      Q.   And did you later have corroboration of the

24 investigation about that in terms of any steps that

25 Mario Montoya took to further that alleged crime, or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20784

 1   attempted crime?

 2        A.   Yes.  Montoya reported a fictitious

 3   location where Marcantel lived.  And Montoya went to

 4   Chris Garcia's house and picked up a firearm that was

 5   to be used in the murder.

 6        Q.   On page 4 of that same exhibit, there is

 7   discussion about having Eric Duran discussing that he

 8   would put "Pup" or Mr. Baca on the telephone, so he

 9   could say things in his own words.  Was that an

10   attempt there to put words in Mr. Baca's mouth or to

11   have Mr. Baca speak about a subject?

12        A.   The latter.

13        Q.   On page 6 of that same exhibit, you gave a

14   statement where you say -- you talk about "Styx" or

15   Mr. Archuleta getting involved in criminal activity

16   in New Mexico.  And you say, "I don't actually see

17   him doing anything," which would, I guess, arguably

18   be an exculpatory statement as to Mr. Archuleta, if

19   you believe he might not engage in certain criminal

20   activity; is that fair to say?

21        A.   Yes, sir.

22             MS. SIRIGNANO:  Objection, Your Honor.

23   Counsel is leading the witness.

24             MR. CASTELLANO:  It's cross-examination.

25             THE COURT:  I think he's probably your



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5784

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 21785

```
 1    witness.  Don't lead.  But I think that question is
 2    fine.  Overruled as to that question.
 3         Q.   Okay.  So the question was:  Is there some
 4    tendency there on your part to say something which
 5    tends to be exculpatory as to Mr. Archuleta?
 6         A.   Yes, sir.
 7         Q.   And in terms of exculpatory statements, can
 8    you tell the Court whether Mr. Duran, on things that
 9    were not recorded, whether he indicated to you that
10    anyone had given him any exculpatory statements, or
11    that he had taken exculpatory statements from
12    anybody?
13         A.   No, Duran didn't report anything like that
14    to me.
15         Q.   And if he had, would you have reported that
16    or documented it somewhere?
17         A.   Yes.
18         Q.   On page 7 of that same exhibit, there is
19    discussion where you say you "believed that the dude
20    that got hit down in Cruces was his call."  Do you
21    see that?
22         A.   Yes.
23         Q.   What's this discussion referring to?
24         A.   The hit on Julian Romero.
25         Q.   And did you have corroboration through the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5785

1    investigation that Mr. Baca and what's on the

2    document as "Styx," Mr. Archuleta, as being involved

3    in that hit?

4         A.   Yes, we did.

5         Q.   And, in fact, have people pled guilty to,

6    and admitted to having been involved with that

7    assault?

8         A.   Yes, I believe three have pled.

9         Q.   Page 10 of that exhibit there is a

10   discussion at the bottom that says, "Chris was

11   supposed to, and I don't know, he was supposed to put

12   him somewhere, and then he didn't want to put him,"

13   the next page says, "I don't know what he did.  He

14   didn't answer last night, so we just -- 'Pup' just

15   told Mario to go to his house and get him."

16             Did you have any corroboration for what

17   Mr. Duran told you there?

18        A.   Yes, that discussion is about firearms.

19   And Mario Montoya did go to Chris Garcia's house and

20   obtain a firearm.

21        Q.   And were some of these topics also captured

22   on the wire on either the phone or the recording

23   devices?

24        A.   Yes, sir.

25        Q.   So even whether they were mid-sentence or

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                           Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 5786

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23

```
 1   not, did you have corroboration in other parts of the

 2   investigation?

 3        A.   Yes, I did.

 4        Q.   Now, turning to Defendant's Exhibit E,

 5   DeLeon Bates 6043.  It's a transcript from October of

 6   2015, that was discussed yesterday.  Do you recall

 7   that?

 8        A.   Yes.

 9        Q.   Okay.  Turning your attention to the second

10   page of that transcript, which is 6044 Bates stamp.

11   There is a discussion by the CHS that Marcantel would

12   be "a bigger target, and it would give us more

13   recognition.  He's all I know 'Pup' would be fuck

14   happy if we got this accomplished."  Is this a

15   discussion with Mr. Baca?

16        A.   Yes.

17        Q.   And does Mr. Baca indicate that he does not

18   want this to happen?

19        A.   No, he does not.

20        Q.   And there is a discussion on the next page,

21   which is 6045.  Once again, there is a discussion

22   with Mr. Baca, and there is a discussion about

23   sending willas.  What are willas?

24        A.   Messages, kites, letters.

25        Q.   And can you tell from this discussion that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    these are the willas or letters that are tied to the

 2    Marcantel and Santistevan hits?

 3         A.   I believe they are.

 4         Q.   And so, even though this conversation maybe

 5    starts mid-sentence, did you have corroboration of

 6    the fact that letters were sent?

 7         A.   Yes.

 8         Q.   And were those some of the letters that you

 9    discussed during the James hearing about people,

10    including Mr. Baca, conspiring to murder Mr.

11    Marcantel and Mr. Santistevan, as well as Mr. Vigil?

12              MS. SIRIGNANO:   Objection, Your Honor.

13    He's still leading the witness.

14              THE COURT:   Overruled.

15         A.   Yes, we recovered, I believe eight of the

16    nine original letters that were sent out to SNM

17    members on the street, to hit those individuals, or

18    to kill those individuals.

19         Q.   So was this another way for you to

20    corroborate things that were recorded by Mr. Duran or

21    others?

22         A.   Yes, sir.

23         Q.   Once again, what threats, if any, did you

24    make to Mr. Duran to get him to cooperate in this

25    case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5788

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25789

```
 1        A.    Never -- I never threatened Mr. Duran to
 2   cooperate.
 3        Q.    Now, was there an indication that Mr. Duran
 4   may have been motivated by certain things to
 5   cooperate, aside from threats?
 6        A.    Yes.
 7        Q.    So, for example, restoration of good time?
 8        A.    Yes.
 9        Q.    And down the road, potentially even money?
10        A.    Yes.
11        Q.    All right.  On the same page, did any of
12   those possible motivations -- were they threats in
13   any way?
14        A.    No.
15             MR. CASTELLANO:  May I have a moment, Your
16   Honor?
17             THE COURT:  You may.
18             MR. CASTELLANO:  Thank you, Your Honor.  I
19   pass the witness.
20             THE COURT:  Thank you, Mr. Castellano.
21             Mr. Lowry, do you have any redirect of Mr.
22   Acee?
23                      EXAMINATION
24   BY MR. LOWRY:
25        Q.    Good morning, Special Agent Acee.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5789

```
 1          A.   Good morning.
 2          Q.   If I understood your testimony just now,
 3     you said that Mr. Duran never reported any
 4     exculpatory information to you?
 5          A.   No, not that I can think of.
 6          Q.   It's fair to say he didn't report a lot of
 7     information to you about his personal behavior?
 8          A.   Fair to say.
 9          Q.   He didn't report to you that he was getting
10     pornographic images over his cellphone?
11          A.   Not at the time.
12          Q.   Did he report that to you later?
13          A.   Yes.
14          Q.   So did he report to you that -- when you
15     asked him to quit gambling via Fantasy Football, did
16     he report to you that he had quit gambling?
17          A.   Yes.
18          Q.   Did he, in fact, quit gambling?
19          A.   At least on the phone, yes.
20          Q.   And it's fair to say you gave him plenty of
21     admonishments about what not to do, but he ignored
22     those admonishments?
23          A.   I think he followed my admonishments.  At
24     times he would try to explain why it was necessary to
25     do something.  And in some cases, I understood and I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5790

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25791

```
 1   concurred.
 2        Q.   But it's fair to say that you never gave
 3   him permission to engage in prostitution?
 4        A.   No, I wouldn't give him permission to do
 5   that.
 6        Q.   And you didn't give him permission to sell
 7   heroin?
 8        A.   Of course not.
 9        Q.   And you didn't give him permission to
10   possess a firearm?
11        A.   I did not.
12        Q.   You didn't give him permission to abuse
13   children?
14        A.   I wouldn't do that.
15        Q.   You're aware that he's done all these
16   things?
17        A.   I disagree.
18        Q.   What do you disagree with?
19        A.   I don't think he's done all those things.
20   I suspect he possessed a firearm, and I'm pursuing
21   charges in that matter.  But the child abuse thing
22   was unfounded by the authorities up there.  I didn't
23   have any involvement in that, but I talked to the
24   people that did.
25             I think there is probable cause to believe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5791

1    he possessed heroin.  Unfortunately, that's a

2    misdemeanor on that occasion, and probably below the

3    threshold that I can charge.

4           And the prostitution one, I don't believe

5    that there was any probable cause to believe that

6    occurred.  I did read those reports as well.

7           Q.   And with regard to the report on the

8    prostitution charge, if I understood that report

9    correctly, when the police approached his vehicle to

10   question him about that, he possessed a syringe full

11   of a substance that he sprayed out on the floor?

12          A.   That's what I read as well.

13          Q.   Did anybody ever test that to see if that

14   was heroin?

15          A.   I don't believe so.  I think it was

16   dissipated into the carpet or upholstery.

17          Q.   Would you have approved of him to possess

18   paraphernalia like that, like a syringe?

19          A.   No.  And his possession of any kind of

20   illegal substance would have had to have been during

21   an FBI operation with agents there.  And that wasn't

22   the case.

23          Q.   But it's fair to say that he didn't report

24   any of that activity, or even being engaged by police

25   in those activities to you, whether he was guilty of

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492

PROFESSIONAL COURT                           e-mail: info@litsupport.com
REPORTING SERVICE
                                                                      DNM 5792

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29793

```
 1    them or not?
 2         A.    I talked to him about what you referred to
 3    as the child abuse incident.  He did report that to
 4    me.
 5              He reported the incident with the
 6    prostitute and syringe of heroin to the agents of the
 7    Seattle division.
 8              The other two incidents he didn't report.
 9              MR. LOWRY:  No further questions, Your
10    Honor.
11              THE COURT:  Thank you, Mr. Lowry.
12              All right.  Mr. Acee, you may step down.
13    Thank you for your testimony.
14              Mr. Lowry, Ms. Duncan, does Mr. Baca have
15    further witnesses or evidence he wishes to present on
16    these two motions?
17              MR. LOWRY:  Your Honor, may I have a quick
18    moment?
19              THE COURT:  You may.
20              MR. LOWRY:  Your Honor, we'll call Edward
21    Urtiaga.
22              MS. SIRIGNANO:  Judge, may I raise a quick
23    housekeeping matter?
24              THE COURT:  Sure.
25              MS. SIRIGNANO:  Mr. Montoya is back in the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5793

 1   State of New Mexico, and I believe he's had his

 2   initial appearance on his supervised release

 3   violation.  So I'll withdraw the emergency writ

 4   motion this afternoon.

 5          THE COURT:  All right.  Any objection?

 6   Then all you need to do is file a notice, not another

 7   motion.  Just file a notice.  And without objection,

 8   it will be withdrawn.

 9          Mr. Urtiaga, if you'll come up and stand

10   next to the witness box on my right, your left.

11   Before you're seated, my courtroom deputy, Ms.

12   Standridge, will swear you in.

13                  EDWARD URTIAGA,

14       after having been first duly sworn under oath,

15       was questioned and testified as follows:

16                  DIRECT EXAMINATION

17          THE CLERK:  Please be seated.  State your

18   name and spell it for the record.

19          THE WITNESS:  My name is Edward Urtiaga.

20   My last name is Urtiaga, U-R-T-I-A-G-A.

21          THE COURT:  Mr. Urtiaga.  Mr. Lowry.

22   BY MR. LOWRY:

23       Q.   Good morning, Mr. Urtiaga.

24       A.   Good morning.

25       Q.   Mr. Urtiaga, where have you been employed?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5794

1        A.    At the New Mexico Corrections Department.

2        Q.    How long have you been employed there?

3        A.    Approximately 12 years.

4        Q.    In the course of your employment, where did

5   you work within the Department of Corrections?

6        A.    I worked with the Corrections Department in

7   Los Lunas, New Mexico, for three years, and the

8   remainder in Santa Fe, New Mexico.

9        Q.    And you worked with -- which unit of the

10  prison system did you work in?

11       A.    Most recently, the North facility.

12       Q.    In February of 2015, where did you work at

13  the Department of Corrections?

14       A.    The North facility, sir.

15       Q.    When you worked at the North facility in

16  February of 2015, did you have the occasion to meet

17  an inmate named Eric Duran?

18       A.    I know who he is, yes.

19       Q.    Okay.  How long had he been under your

20  supervision as a correctional officer?

21       A.    I can't give you an approximate number,

22  sir.  I had him as an inmate in my unit.  But I don't

23  know how long.

24       Q.    Do you recall what unit that was?

25       A.    3B, housing in 3B at the North facility.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                         1-800-669-9492
                                              e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5795

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 32796

```
 1          Q.   Do you recall who was housed next to him or
 2     around him at that time?
 3          A.   At the time, there was other SNMers, mostly
 4     SNM, and I think it was X pod.
 5          Q.   Do you recall an event that happened on
 6     February 18, 2015, with Mr. Duran?
 7          A.   The one on the paper that you showed me,
 8     yeah.
 9          Q.   Okay.  And fair to say that I shared with
10     you your report yesterday, when you were here at the
11     courthouse?
12          A.   Yes, sir.
13          Q.   Do you recall that incident without seeing
14     the report?
15          A.   Vaguely.
16               MR. LOWRY:  May I approach, Your Honor?
17               THE COURT:  You may.  As far as exhibits on
18     Baca, you're at G.  So it will be H.
19          Q.   Mr. Urtiaga, does that refresh your
20     recollection about your encounter with Mr. Duran on
21     the 18th of February, 2015?
22          A.   Yes, sir.
23          Q.   Can you describe to the Court what happened
24     that day?
25          A.   We had found contraband on a lot of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 33

```
 1    inmates in that pod, that got moved in that pod.
 2              MS. ARMIJO:  Your Honor, excuse me.  I'm
 3    going to object if he's going to read it.  If that
 4    item has refreshed his recollection, I would ask that
 5    he --
 6              THE COURT:  Have you had plenty of time to
 7    look at the document?
 8              THE WITNESS:  Yeah.
 9              THE COURT:  Why don't you turn it over and
10    just testify from your memory now.
11         A.   We had found pieces of metal missing from
12    another unit.  And we moved these inmates to a pod.
13    We placed them on PHD, meaning they couldn't have
14    personal property or things like that.  And when they
15    got moved, their property that they weren't allowed
16    wasn't taken.  So I had to go in there and make sure
17    it got taken.
18         Q.   Did Mr. Duran appreciate you taking his
19    property?
20         A.   None of the inmates did.
21         Q.   How did Mr. Duran react to you when you
22    removed his property from his cell?
23         A.   He was upset.
24         Q.   Did he say anything to you to express his
25    level of upsetness?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5797

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34798

```
 1          A.   I mean, I can recall what's off the paper.
 2     I can't recall just by memory exactly what he told
 3     me.  I remember they threatened to kill me in the
 4     pod.  And I recall him telling me that his girlfriend
 5     knew what kind of car I drove, where I lived at.  He
 6     told me my address.  And I mean, it was all the
 7     SNMers in there also yelling.  So I mean, I took it
 8     pretty seriously.  That's about it.
 9          Q.   What kind of tone of voice did he use when
10     he was talking to you?
11          A.   He was yelling.
12          Q.   If you wanted to step away from the
13     microphone, could you just give the courtroom a sense
14     of how high his voice was?
15          A.   I don't know, just yelling.  Hey, like just
16     yelling at me.  I mean, it's kind of hard, but behind
17     a door, I could hear him from behind a door.  He was
18     yelling at me.
19          Q.   Behind a closed door?
20          A.   Yes.
21          Q.   And you captured all of that in the report
22     that you wrote in Anthony Baca Exhibit H?
23          A.   Yes.
24          Q.   Did that cause you to file a disciplinary
25     report against Mr. Duran?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5798

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35799

```
 1          A.   Yes, him and other inmates in that pod.
 2               MR. LOWRY:  Your Honor, at this time, I'd
 3    like to move for admission of Anthony Baca Exhibit H.
 4               THE COURT:  Any objection, Ms. Armijo?
 5               MS. ARMIJO:  No, Your Honor.
 6               THE COURT:  All right.  Defendant's Exhibit
 7    H will be admitted.  This was Baca Exhibit H will be
 8    admitted into evidence.
 9          Q.   And you said you did write a disciplinary
10    report against Mr. Duran?
11          A.   Yes, sir.
12               MR. LOWRY:  May I approach, Your Honor?
13               THE COURT:  You may.
14          Q.   Mr. Urtiaga, I've handed you what I've
15    marked as Defendant's Exhibit AB-I.  Do you recognize
16    that?
17          A.   Yes.
18          Q.   Is this the disciplinary report you wrote
19    up for Mr. Duran?
20          A.   Yes, sir.
21          Q.   And it fairly and accurately reflects the
22    report that you drafted?
23          A.   Yes, sir.
24               MR. LOWRY:  Your Honor, at this time, I'd
25    move for admission of Anthony Baca Exhibit I.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5799

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5800

```
 1                  THE COURT:  Any objection, Ms. Armijo?
 2                  MS. ARMIJO:  No, Your Honor.
 3                  THE COURT:  Anybody else have any
 4       objection?  Not hearing any, Baca Defendant's Exhibit
 5       I will be admitted into evidence.
 6            Q.   Mr. Urtiaga, did you take the threats
 7       against you seriously?
 8            A.   Yes, sir.
 9            Q.   What, if anything, happened to your
10       disciplinary writeup that you know about?
11            A.   I don't know.  As a corrections officer,
12       we're not part of the disciplinary process.
13            Q.   So you don't know what came of your report?
14            A.   No, sir.
15            Q.   Did you feel threatened by Mr. Duran?
16            A.   Yeah, it was --
17                  MS. ARMIJO:  Objection; asked and answered.
18                  THE COURT:  Overruled.
19            Q.   You're free to answer.
20            A.   Yes, I did; yes, that day, yes.
21                  MR. LOWRY:  May I have a moment, Your
22       Honor?
23                  THE COURT:  You may.
24            Q.   Mr. Urtiaga, did you feel as though knowing
25       your address and the kind of car you drove increased
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5800

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35801

```
 1   the threat to your safety?

 2        A.   Yes.

 3        Q.   Do you have any sense of how Mr. Duran came

 4   to know that information?

 5        A.   As I recall, he told me his girlfriend -- I

 6   was in a motorcycle accident in 2009.  And I used an

 7   attorney, Ron Bell, in Albuquerque -- and for him to

 8   say his girlfriend worked at Ron Bell, and knew my

 9   address, it scared me, for him to find that

10   information out.  It scared me.

11        Q.   And you testified earlier about Mr. Duran

12   being moved to prehearing detention because of metal

13   items that were found?

14        A.   Yes.  There was metal missing in their

15   cells.  And they had found homemade weapons, or

16   shanks we call them, in their cells.

17        Q.   Had Mr. Duran been moved to that location

18   because a shank was found in his cell?

19        A.   I don't recall him specifically, sir.

20        Q.   But the inmates, in general, had been moved

21   there because of that?

22        A.   Yes.

23        Q.   Are you aware of anything being done at the

24   correctional facility with regard to his girlfriend,

25   or Mr. Duran, in terms of the threats he made to you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5801

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5802   5802

```
 1        A.   I don't know.  I mean, I was -- I wrote my
 2   report, and that was it.  I didn't ever -- I never
 3   was aware of anything that came from that.
 4             MR. LOWRY:  No further questions, Your
 5   Honor.  I'll pass the witness.
 6             THE COURT:  Thank you, Mr. Lowry.
 7             How about any other defendants?  Do they
 8   have cross-examination of Mr. Urtiaga?
 9             All right.  Ms. Armijo, if you have
10   cross-examination of Mr. Urtiaga you may do so at
11   this time.
12             MS. ARMIJO:  Thank you, Your Honor.
13                      EXAMINATION
14   BY MS. ARMIJO:
15        Q.   Good morning, Lieutenant Urtiaga.
16        A.   Good morning, ma'am.
17        Q.   During that time that you were with
18   Corrections, how long were you with STIU?
19        A.   Approximately two years, I believe.
20        Q.   And when was that?
21        A.   I can't recall, ma'am.  Honestly, I can't
22   recall.  I want to say late 2009, maybe to 2011
23   almost.  I can't recall, ma'am, the dates.
24        Q.   You can't recall the dates when you were
25   part of STIU?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5802

```
 1        A.   No.  There is a series of events -- I was
 2   in a motorcycle accident, and I was on admin for a
 3   year.  I just can't recall the dates.  I'd have to
 4   get them for you.
 5        Q.   You mentioned you were in a motorcycle
 6   accident in 2009?
 7        A.   Yeah.
 8        Q.   Were you on STIU before or after that?
 9        A.   It was after that.  Maybe 2010.
10        Q.   Okay.
11        A.   2010.
12        Q.   And for how long?
13        A.   I think approximately, it was approximately
14   two years.
15        Q.   And what were the circumstances of you
16   leaving STIU?
17        A.   The circumstances of me leaving.  I just
18   resigned, I stepped out of STIU.  It wasn't worth the
19   pay, what we were doing.
20        Q.   Okay.  So you're saying that you
21   voluntarily left STIU; is that right?
22        A.   Yes.
23        Q.   Okay.  And you just said it wasn't worth
24   what you do; is that correct?
25        A.   It wasn't worth the pay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5803

```
 1        Q.   Okay.  STIU deals with prison gangs;
 2   correct?
 3        A.   Yes, ma'am.
 4        Q.   It's a very dangerous position?
 5        A.   Yes, it is.
 6        Q.   And would you agree that SNM is dangerous
 7   group?
 8        A.   Yes.
 9        Q.   And did you know, in 2015 -- I noticed in
10   your testimony -- I know that Mr. Lowry kept on
11   saying "Eric Duran" -- but you referred to they, they
12   a great deal.  When you were referring to "they," who
13   are you referring to?
14        A.   SNM members, ma'am.
15        Q.   And the incident that is reflected on
16   exhibits, do you have the exhibits -- Mr. Lowry, do
17   you have the exhibits?  Are they up there?  Okay,
18   sorry.
19             And I'm going to show you AB-H first.
20   Okay.  And this is your memo regarding this incident;
21   correct?
22        A.   Yes, ma'am.
23        Q.   Okay.  And it doesn't just refer to Eric
24   Duran; correct?
25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 41

```
 1        Q.    You also refer to Robert Martinez and Roy
 2   Martinez; correct?
 3        A.    Yes, ma'am.
 4        Q.    And of those people, do you know who was
 5   higher up in the organization?
 6              MR. LOWRY:  Objection, Your Honor.  This is
 7   beyond the scope of direct.
 8              THE COURT:  Well, I see some connection.
 9   Overruled.
10        Q.    Do you know who was higher up in this
11   organization?
12        A.    Just looking at it, from my experience, it
13   was probably Robert Martinez.
14        Q.    Okay.  Known as "Baby Rob"; correct?
15        A.    Yes, ma'am.
16        Q.    And he was known, especially back in 2015,
17   as a leader of SNM; correct?
18        A.    Yes, ma'am.
19        Q.    Then Roy Martinez, "Shadow," were you
20   familiar with him?
21        A.    Yes, ma'am.
22        Q.    And he was higher up than Mr. Duran;
23   correct?
24        A.    Yes, ma'am.
25        Q.    So you have -- this incident involved a pod
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5805

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 42806

1    where you had Robert Martinez, a leader of SNM;

2    correct?

3         A.   Yes, ma'am.

4         Q.   Roy Martinez, who also held a leadership

5    role; correct?

6         A.   Yes, ma'am.

7         Q.   And Eric Duran, who you would agree, he was

8    not a leader at that time; correct?

9         A.   Yes, ma'am.

10        Q.   All right.  So are you aware of how SNM

11   members act when their property is being, for lack of

12   a better term, is messed with?

13        A.   Can you repeat that?  Am I aware?

14        Q.   Let me rephrase that question.  Were you

15   surprised at this incident, or was this par for the

16   course, for SNM members to act against a correctional

17   officer after having their property interfered with?

18        A.   This day, ma'am, they were mad at me.  They

19   were specifically upset with me, because I do my job.

20   I went and made sure that I took their property that

21   they were on PHD.

22        Q.   Correct.

23        A.   Yes.

24        Q.   And I guess that's my point.

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5806

```
 1        Q.   They were mad at you because you did your
 2   job; correct?
 3        A.   Yes.
 4        Q.   And you were a correctional officer doing
 5   your job.  And as part of that, they were upset with
 6   you?
 7        A.   Yes, ma'am.
 8        Q.   But this isn't the first time this sort of
 9   thing has happened; correct?
10        A.   No, it's not.
11        Q.   Okay.  When you were -- even as not being
12   in STIU, when you have contact with SNM Gang members;
13   correct?
14        A.   Yes, I did.
15        Q.   Okay.  And this wasn't surprising to you,
16   was it?
17        A.   No, it was the normal thing from them.
18        Q.   A normal thing from them; correct?
19        A.   Yes, ma'am.
20        Q.   And if one of them -- let's say Mr. Duran
21   was cooperating, or wanted to cooperate with law
22   enforcement, he wouldn't want "Baby Rob" or "Shadow"
23   to know, would he?
24        A.   No, I'm sure he wouldn't.
25        Q.   And he wouldn't want to act any differently
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5807

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43808

```
 1    to a correctional officer, if what was expected of

 2    him -- especially as being the lowest on the totem

 3    pole -- is to basically kind of punk you, for lack of

 4    better words; correct?

 5         A.   Correct, ma'am.

 6         Q.   Okay.  Now -- and you are aware that SNM

 7    members assault correctional officers; correct?

 8         A.   Yes, ma'am.

 9         Q.   And the yelling that you were referring to,

10    I believe Mr. Lowry was asking about Eric Duran --

11    "Baby Rob" was yelling at you, Mr. Robert Martinez?

12         A.   There was a lot of inmates in there yelling

13    at me.

14         Q.   Okay.  So, in addition to the three that

15    you wrote up, were there other SNM members around?

16         A.   Yes, there was, yes.

17         Q.   Okay.  And so, if Eric Duran did not want

18    any of those other gang members to know he was

19    cooperating, he, too, would have had to -- he

20    couldn't have just been compliant with you; correct?

21         A.   You're right.

22         Q.   You would agree with that?

23         A.   Yes, I agree with you, ma'am.

24         Q.   Now, going to AB-I.  This is the

25    disciplinary report.  Looks like the day of the
```

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                    (505) 843-9494
FAX (505) 843-9492                          FAX (505) 843-9492
                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 5808

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 45809

1    incident is 2/18; correct, 2015?

2        A.   Yes, ma'am.

3        Q.   You wrote it on 2/19/2015; correct?

4        A.   Yes, ma'am.

5        Q.   Looks like it went to the disciplinary

6    board on 2/20/2015; correct?

7        A.   Yes, ma'am.

8        Q.   And you were unaware when you wrote this on

9    2/19, that Eric Duran was, in fact, at the FBI office

10   meeting with FBI, cooperating; correct?

11       A.   I had no idea.

12       Q.   So he would not have received this, given

13   that disciplinary -- it was received by disciplinary

14   on 2/20/2015; correct?

15       A.   Yes, correct.

16       Q.   Okay.  Now -- and even after that date, you

17   were not aware, in 2015, that Eric Duran was working

18   with law enforcement, were you?

19       A.   That's not -- I mean, I knew myself, but,

20   no.  I mean, I don't know how to answer that.  I

21   knew.  I know a lot of these SNM members, so I kind

22   of knew that he was.

23       Q.   Okay.  When did you know that?

24       A.   What's that?

25       Q.   When did you know that?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5809

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5810

 1       A.   Just based off of the way they move

 2  inmates, and where they put them.  I mean, I was in

 3  the gang unit for two years.  I knew kind of what was

 4  going on.

 5       Q.   My question was not how, although I

 6  appreciate the answer.

 7       A.   I'm sorry.

 8       Q.   When did you know that?

 9       A.   I don't recall exactly what day.

10       Q.   Okay.  Well, let's go to February of 2015.

11  As I mentioned to you, on the 19th of February is

12  when he had his first meeting with FBI.  Did you

13  know, when you wrote this disciplinary report, that

14  he was potentially going to cooperate?

15       A.   Oh, no, no.

16       Q.   Okay.  So as far as the timeframe, it was

17  after this; correct?

18       A.   Yeah, it was after that.

19       Q.   Do you know approximately how long after

20  this?

21       A.   Whenever -- I can't tell you dates, but I

22  know when he came back, when -- I know no sanctions

23  were imposed against him, no major sanctions.  So

24  something happened where they dropped the report.

25       Q.   I thought you testified that you didn't

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

DNM 5810

```
 1   know what happened?
 2        A.   No.  Later on, when you -- later on, when
 3   they impose the sanctions on the inmates, they'll be
 4   on disciplinary for a long -- an extended period.  It
 5   would be longer.
 6        Q.   Okay.
 7        A.   So we know, as correctional officers, that,
 8   yeah, you know what, this guy is serving his
 9   sanctions, or whatnot.  And that's -- I mean, that's
10   my answer, ma'am.
11        Q.   So you did know or you didn't know -- I
12   just want to clarify -- do you know whether or not
13   from this report, this disciplinary report, AB-I,
14   whether or not Mr. Duran was actually sanctioned or
15   not?
16        A.   Off of this report, I don't know based off
17   this report.
18        Q.   Okay.  So what is that you're talking about
19   that you think he wasn't sanctioned for?
20        A.   Later on -- I don't know how to explain it
21   to you.  Later on -- usually something like this,
22   this inmate would have been on disciplinary for a
23   long time.  He would have been without anything for a
24   long time.  And you know.  And then based off of
25   where they move these guys, you know if the inmate --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5811

```
 1    you know if he's an informant, pretty much.
 2          Q.   Okay.  So you did keep up and try and find
 3    out whether or not he was disciplined?
 4          A.   It's just something you do as a
 5    correctional officer.  Not him specifically also.
 6    It's all these guys.
 7          Q.   Okay.  Because that's important?
 8          A.   They're dangerous.  They're dangerous, so
 9    you've got to keep up with everything that's going on
10    with these guys.
11          Q.   Yes, okay.
12          So now, if -- the last thing I want to ask
13    you about is, you're currently on administrative
14    leave; correct?
15          A.   Yes.
16          Q.   And I don't want to ask you --
17          THE COURT:  Hold on just a second.
18          MR. LOWRY:  Object, Your Honor.  What
19    relevance does this have on the scope of the inquiry?
20          THE COURT:  Well, I see the relevance.  We
21    need -- the Government is attacking some things here
22    so I'll allow it.  Overruled.
23          Q.   You're currently on administrative leave;
24    correct?
25          A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5812

```
 1         Q.   And I don't want to ask you about -- or you
 2    to say details about it.  But you are aware that
 3    there is allegations against you that New Mexico
 4    State Police is investigating; correct?
 5         A.   Yes.  It's standard procedure, ma'am.
 6         Q.   Okay.  And you don't know what the outcome
 7    of that will be?
 8         A.   I know that nothing is going to happen.
 9         Q.   Oh, how do you know that?
10         A.   Because, like, I did what I had to do by
11    policy, ma'am.
12         Q.   Have you spoken to the officer that's
13    investigating you?
14         A.   No.  I know what happened that day, ma'am.
15         Q.   Okay.  Would you be surprised if that case
16    isn't closed, and it's going to be submitted to the
17    DA's office?
18         A.   The State is going to do what they're going
19    to do.  But I know what happened.
20         Q.   Okay.  The allegations are against you that
21    you used excessive force; correct?  And I'm just
22    talking -- I don't want you talking about it.
23         A.   I haven't been brought with any allegations
24    or anything like that.
25         Q.   Why are you on administrative leave, then?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5813

1    What technicality is it that's on administrative

2    leave?

3         A.   They haven't told me anything.  The

4    Department hasn't told me anything.  I just got

5    placed on administrative leave pending misconduct,

6    pending possible misconduct.

7         Q.   What is that misconduct?  Surely, they have

8    to tell what you that misconduct is.

9         A.   No, they didn't tell me what any kind of

10   misconduct was.  I was placed on administrative

11   leave.  That it's.

12             MS. ARMIJO:  All right.  If I may just have

13   a moment.

14             THE COURT:  You may.

15             MS. ARMIJO:  That's all I have.  Thank you.

16             THE COURT:  Thank you, Ms. Armijo.

17             Mr. Lowry, you have redirect of Mr.

18   Urtiaga?

19                  REDIRECT EXAMINATION

20   BY MR. LOWRY:

21        Q.   Mr. Urtiaga, you said that that was not the

22   first time that inmates had gotten upset with you for

23   doing your job?

24        A.   Yes, sir.

25        Q.   Was that the first time anybody had yelled

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5814

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5815

```
 1    at you with knowledge of your home address?

 2         A.    That was the first time, yes, sir.

 3         Q.    Was that the first time anybody yelled at

 4    you with knowledge of the car that you drove and the

 5    license plate of the car that you drove?

 6         A.    Yes.

 7         Q.    Did that make this particular incident

 8    unique in your mind?

 9         A.    Yes, it did, sir.

10         Q.    If you assume, as the United States did,

11    that Mr. Duran was cooperating at that time with law

12    enforcement, could he have yelled and hollered at you

13    without sharing that kind of personal identification

14    information?

15         A.    I don't know why he would have done that,

16    if he was already an informant.

17         Q.    So would that have been inappropriate, in

18    your eyes, for a government agent or cooperating

19    agent for the Government, to share that kind of

20    information with other people that you thought may

21    have been hostile or dangerous to your safety and

22    welfare?

23         A.    Yes.

24               MR. LOWRY:  No further questions, Your

25    Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 52

```
 1                THE COURT:  Thank you, Mr. Lowry.
 2                All right.  Mr. Urtiaga, you may step down.
 3      Any reason Mr. Urtiaga may not be excused from the
 4      proceedings?
 5                MR. LOWRY:  Not from the defense, Your
 6      Honor.
 7                MS. ARMIJO:  No, Your Honor.
 8                THE COURT:  Any other defendant have any
 9      objection?  All right.  Mr. Urtiaga, you're excused
10      from the proceedings.  Thank you for your testimony.
11                Mr. Lowry, does Mr. Baca have further
12      witnesses or evidence he wishes to present in support
13      of these two motions?
14                MS. DUNCAN:  Your Honor, we're going to
15      call Chris Cupit.
16                THE COURT:  Mr. Cupit, if you'll come up
17      and stand next to the witness box on my right, your
18      left.  My courtroom deputy, Ms. Standridge, will
19      swear you in.
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5816

```
 1                    CHRISTOPHER CUPIT,
 2        after having been first duly sworn under oath,
 3        was questioned and testified as follows:
 4                    DIRECT EXAMINATION
 5             THE CLERK:  Please be seated.  State your
 6   name and spell it for the record.
 7             THE WITNESS:  My name is Christopher Cupit,
 8   C-U-P-I-T.
 9             MS. DUNCAN:  Good morning, Mr. Cupit.
10             THE COURT:  Ms. Duncan.
11             MS. DUNCAN:  Thank you, Your Honor.
12   BY MS. DUNCAN:
13        Q.   Mr. Cupit, where are you employed?
14        A.   New Mexico Department of Corrections.
15        Q.   How long have you been employed there?
16        A.   Approximately -- going on my 12th year.
17        Q.   And were you employed there in 2015?
18        A.   Yes, ma'am.
19        Q.   What was your title or your job at that
20   point?
21        A.   Security Threat Intelligence Unit, STIU.
22        Q.   Did you have a particular position within
23   the STIU?
24        A.   Just an investigator, gang investigator.
25        Q.   How long had you worked for the STIU in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5817

```
 1   2015?

 2        A.   I started in January of 2012, so

 3   approximately three years.

 4        Q.   And did you know an individual named Eric

 5   Duran?

 6        A.   Yes, ma'am.

 7        Q.   How did you know him?

 8        A.   He's an inmate that we had housed there in

 9   PNM.

10        Q.   Do you recall a conversation with Mr. Duran

11   in February of 2015?

12        A.   Yes.

13        Q.   And how did that conversation come about?

14        A.   It started actually in 2014, approximately

15   a couple months before that.  STIU Coordinator Adam

16   Vigil asked myself and Captain Sergio Sapien to go

17   ahead and interview Eric Duran.

18        Q.   And did you know why Mr. Vigil asked you to

19   interview Eric Duran?

20        A.   He didn't tell us the exact reason why.  He

21   just said to go talk to him, that he would only talk

22   to us.

23             MS. SIRIGNANO:  Excuse me, Your Honor.  Can

24   we ask the witness to move the microphone?

25        A.   Sorry.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5818

1       Q.   Do you remember when, in 2014, you spoke to
2   Mr. Duran?
3       A.   I don't know the exact date, but I know it
4   was right around November, December, timeframe,
5   within that month.
6       Q.   Did you write any kind of document to
7   memorialize that meeting?
8       A.   No, ma'am.
9       Q.   Did you take any notes of the meeting?
10      A.   No.
11      Q.   And was it recorded in any way?
12      A.   No.
13      Q.   So what did you discuss with Mr. Duran in
14  November of 2014?
15      A.   From what I recall, he comes in and we're
16  talking at the North facility, and he's just saying,
17  Hey, I'd like to talk to you guys away from here,
18  away from the Penitentiary.  It was very brief.  If I
19  could put a timeframe on it, maybe ten, 15 minutes at
20  the most.  I don't remember exactly what was said,
21  other than he just wanted to talk to me.
22      Q.   And I think you said he wanted to talk to
23  you away from the facility?
24      A.   Yes, ma'am.
25      Q.   What did you do following that meeting

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 5819

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 56820

1    about Mr. Duran and his request?

2        A.    I just -- we just went back to our office.

3    That's Sergio Sapien's job to notify our chain of

4    command; he's the Captain of the unit.

5        Q.    Okay.  And did you know generally what

6    Mr. Duran wanted to talk to you about away from the

7    facility?

8        A.    I knew it had to do with the SNM and SNM

9    business.  But I don't recall any specifics, like if

10   he said anything.

11       Q.    So after that point, did you discuss with

12   Mr. Duran any of the specifics?  Did you have any

13   meetings inside the facility with Mr. Duran regarding

14   the information he wanted to provide?

15       A.    After that?

16       Q.    Yes.

17       A.    No, ma'am.

18       Q.    So when was the next time you spoke to

19   Mr. Duran about the information?

20       A.    It was in February, when we actually

21   transported him out to have a conversation.

22       Q.    And what was your role, if any, in

23   transporting Mr. Duran outside the facility?

24       A.    I was one of the officers that assisted in

25   the transfer to the outside.  I know, during the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5820

1    meeting, that I may have asked a few questions -- I

2    don't remember exactly what questions I asked.  But

3    that was my main role was to help transfer him.

4        Q.  Did you collect any documents or prepare

5    any documents in preparation for that meeting?

6        A.  No.

7        Q.  At any point, did Mr. Duran discuss with

8    you a letter he had written to you or to Sergio

9    Sapien?

10       A.  I know I remember him mentioning a letter.

11   However, I don't remember him actually giving it to

12   us.  Especially that day.  He definitely didn't give

13   us anything that day.  But I don't remember seeing

14   anything.

15       Q.  When you say "that day," do you mean

16   February 19, 2015?

17       A.  Yes, ma'am.

18       Q.  Did he bring anything when he spoke to you

19   in November or December of 2014?

20       A.  No.

21       Q.  At any point, either November or December

22   2014, or February 2015, did you discuss with

23   Mr. Duran benefits that he sought from cooperating

24   with STIU or the FBI?

25       A.  No.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 5821

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 58822

```
 1          Q.   After Mr. Duran -- you met with the FBI,
 2    with Mr. Duran, were you involved in any way with
 3    Mr. Duran's work with the FBI?  I know that was a
 4    super roundabout question.  I'll ask it again.
 5               To your knowledge, did Mr. Duran begin
 6    working with the FBI after the February 19 meeting?
 7          A.   Yeah.
 8          Q.   And were you involved in any way in
 9    facilitating that work?
10          A.   I assisted with transporting him whenever
11    they needed to speak with him, yeah.
12          Q.   Do you recall how many times you would have
13    transported Mr. Duran to meet with the FBI?
14          A.   I don't have an exact number, so I wouldn't
15    know.
16          Q.   Would you say more than five?  Less than
17    five?
18          A.   I don't know.
19          Q.   When you transported Mr. Duran to the
20    meetings with the FBI, would you stay in the room
21    while they spoke with him?
22          A.   Yes.
23          Q.   Do you know if those meetings were
24    recorded?
25          A.   I don't believe so.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5822

```
 1          Q.   Were you ever asked to either bring
 2    documents that already existed or prepare documents
 3    for those meetings?
 4          A.   No.
 5          Q.   Are you aware that the FBI provided
 6    Mr. Duran with recording devices?
 7          A.   Yes.
 8          Q.   Were you involved at all with bringing
 9    those recording devices to Mr. Duran or taking them
10    out of the cell to give to the FBI?
11          A.   I was involved one time picking the
12    recording device up.  And I know the exact time when
13    I did that.
14          Q.   Will you tell us about that, please?
15          A.   So it was the last day, December 3, the day
16    of the operation, when we picked all these guys up.
17    I walked into Housing Unit 3.  They were housed in
18    Housing Unit 3 Alpha, Q pod.  I walked straight to
19    Eric Duran's cell while these guys were being taken
20    out, opened up his food port, and he handed me the
21    recording device.
22          Q.   So at the time did he hand you a recording
23    device or did he hand you a cellphone?
24          A.   It was the cellphone.
25          Q.   And when you took the cellphone, did you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    power it up?

 2         A.   No.

 3         Q.   Did you operate it in any way?

 4         A.   No.

 5         Q.   And did you delete anything off of it?

 6         A.   No.

 7         Q.   And you said that's the only time you ever

 8    retrieved or brought a recording device to Mr. Duran;

 9    is that correct?

10         A.   That I can recall, yeah.

11         Q.   Did you ever arrange for Mr. Duran to call

12    FBI Agent Bryan Acee?

13         A.   No, ma'am.

14         Q.   So other than transporting Mr. Duran to

15    meetings with the FBI, and retrieving the cellphone

16    in December of 2015, did you play any other role with

17    Mr. Duran, in terms of his cooperation with the FBI?

18         A.   No.

19         Q.   And since December '15, have you ever --

20    has the U.S. Attorney's Office ever asked you to

21    gather any documents regarding your participation

22    with Eric Duran and his cooperation with the FBI?

23         A.   Not that I can recall, no.

24         Q.   As a member of -- the STIU monitors inmate

25    phone calls; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5824

```
 1          A.   Yes, ma'am.

 2          Q.   And does that include the calls made by

 3    Eric Duran?

 4          A.   Yes, ma'am.

 5          Q.   Do you know if the STIU continued to

 6    monitor his phone calls while he was cooperating with

 7    the FBI?

 8          A.   I do not know.

 9               MS. DUNCAN:  If I could have a moment, Your

10    Honor?

11               THE COURT:  You may.

12               MS. DUNCAN:  No further questions, Your

13    Honor.

14               THE COURT:  Thank you, Ms. Duncan.

15               Any other defendants have questions of Mr.

16    Cupit?

17               All right.  Mr. Castellano, are you going

18    to do the cross-examination of Mr. Cupit?

19                         EXAMINATION

20    BY MR. CASTELLANO:

21          Q.   Mr. Cupit, what's your current rank with

22    the Corrections Department?

23          A.   STIU investigator.

24          Q.   All right.  You mentioned meeting with

25    Mr. Duran in, you think possibly the November or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5825

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62826

```
 1    December timeframe of 2014?

 2         A.   Yes, sir.

 3         Q.   Did you meet with him at your request or at

 4    his request?

 5         A.   At his request.

 6         Q.   And was it your understanding, after

 7    meeting with him for that short period, that he

 8    wanted to cooperate with authorities?

 9         A.   Correct.

10         Q.   He met with you in 2014.  Were you aware of

11    whether he was in trouble in any way, either

12    administratively with the jail, or criminal

13    liability?

14         A.   No, sir.

15         Q.   And then, from that time in 2014, until

16    2015, during that timeframe, were arrangements being

17    made for Mr. Duran to eventually meet with the FBI?

18         A.   Yes, sir.

19         Q.   And was that something you had to do

20    through the chain of command at the facility?

21         A.   Yes, sir.

22         Q.   Now, there was talk of a letter.  Do you

23    remember what the letter discussed?  If it was about

24    cooperation, or if it was about something else?

25         A.   From what I can remember, I think Eric told
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5826

 1    us that he had a letter, and was going to give it to

 2    us.  However, I never saw that letter.

 3         Q.   And do you know if it was about SNM Gang

 4    business, or if it was about anything else, from what

 5    he said to you?

 6         A.   He said it was going to be about SNM Gang

 7    business, yeah.

 8         Q.   To the best of your recollection, he did

 9    not turn that over to you?

10         A.   No.

11         Q.   Now, you were part of the transport on

12    February 19th of 2015, when he met with the FBI?

13         A.   Yes, sir.

14         Q.   At that time, were you aware of whether or

15    not Mr. Duran was in trouble at the facility?

16         A.   No, sir.

17         Q.   If you had no information that he was in

18    trouble, then you would not have been able to have

19    scared him or coerced him into cooperating; is that

20    correct?

21         A.   Correct.

22         Q.   And, in fact, did you coerce him or force

23    him to cooperate in any way?

24         A.   No, sir.

25         Q.   Okay.  He's alleged to have been involved

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64828

1   in an incident with Agent Urtiaga on February 18th,

2   the day before you took him to meet with FBI.

3          Did you know Officer Urtiaga?

4     A.   I do know Officer Urtiaga.

5     Q.   And had he been involved with STIU at any

6   point, that you know of?

7     A.   Yes.

8     Q.   Do you know why he left STIU?

9     A.   I'm not one hundred percent specific on why

10  he left STIU.

11         MS. DUNCAN:  Your Honor, I'm going to

12  object that this witness may be speculating now.

13         THE COURT:  Well, ask him if he knows.  If

14  he knows, I'll let him testify.

15    Q.   What do you know about how he left STIU?

16    A.   I just know that he had some issues within

17  STIU, and they removed him from there.

18         MR. CASTELLANO:  Pass the witness, Your

19  Honor.

20         THE COURT:  Thank you, Mr. Castellano.

21         Ms. Duncan, do you have redirect of Mr.

22  Cupit?

23         MS. DUNCAN:  Very brief.

24         THE COURT:  Ms. Duncan.

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5828

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 65829

```
 1                    REDIRECT EXAMINATION
 2   BY MR. DUNCAN:
 3        Q.   I'm sorry, you may have testified to this,
 4   and I just missed it.  But were you present when Eric
 5   Duran and other inmates threatened Sergeant Urtiaga?
 6        A.   No.
 7        Q.   Were you aware when you transported
 8   Mr. Duran on February 19 or the day before, he had
 9   threatened Mr. Urtiaga?
10        A.   No.
11        Q.   Were you aware that the week before you
12   transported Mr. Duran to the February 19 meeting,
13   he'd been found with a shank in his cell?
14        A.   No.
15             MS. DUNCAN:  Thank you.  I have no further
16   questions.
17             THE COURT:  Thank you, Ms. Duncan.
18             All right.  Mr. Cupit, you may step down.
19   Is there any reason Mr. Cupit may not be excused from
20   the proceedings?
21             MS. DUNCAN:  No, Your Honor.
22             MR. CASTELLANO:  No, Your Honor.
23             THE COURT:  Without hearing any objection,
24   you're excused from the proceedings.  Thank you for
25   your testimony.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5829

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 65830

```
 1              Mr. Lowry, Ms. Duncan, does Mr. Baca have
 2    any further witnesses or evidence he wishes to
 3    present on his two motions?
 4              MS. DUNCAN:  He does not, Your Honor.
 5              THE COURT:  All right.  Mr. Castellano, Ms.
 6    Armijo, does the Government have any motion -- any
 7    further evidence they wish to present?
 8              MS. ARMIJO:  No, Your Honor.
 9              THE COURT:  All right.  Ms. Duncan, Mr.
10    Lowry, do you wish to argue your motions together or
11    separate them out?  How would you like to proceed?
12              MS. DUNCAN:  I would suggest we argue them
13    separately, Your Honor.
14              THE COURT:  All right.  Which one do you
15    want to take up first?
16              MS. DUNCAN:  Why don't we take them in
17    order.  So I'll start with 1325, which is the coerced
18    statements.
19              THE COURT:  All right.  Let me ask you a
20    thing that -- just a very simplistic way of looking
21    at this.  I had a chance to watch Mr. Duran.  He took
22    the stand.  He doesn't look like he's the kind of guy
23    that's easily coerced, made involuntary; intelligent,
24    seemed to be a rational person; not a weak person
25    that can be overridden.  Is that not a legitimate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5830

1  consideration, watching his demeanor, watching his

2  statements, how he testified, that he looks like he's

3  not going to be a person that's run over?

4         MS. DUNCAN:  I do think that the Court

5  should take into consideration his demeanor.  But I

6  think it's a very different setting today than it was

7  back in late 2014, and early 2015.

8         THE COURT:  What do you think -- if I can

9  take that into consideration, I agree, I can look at

10 him and make some statements or some thoughts about

11 what he is as an individual.  What do you think is so

12 different about his circumstances back then, that

13 when I add that to it, I come to the conclusion that

14 his participation in this recording, these

15 recordings, was involuntary?

16        MS. DUNCAN:  I think there is a couple of

17 things, Your Honor.  In 2014 --

18        THE COURT:  I guess the thing is, why

19 should I conclude that he's just not a man that's

20 making a bargain for his own benefit?

21        MS. DUNCAN:  Your Honor, I think because,

22 in 2014, 2015, when he made this deal with the

23 Government, he was on lockdown.  And as he testified,

24 he filed a lawsuit against then Secretary Marcantel,

25 because he had been in solitary confinement for so

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5831

1   long, which was having a negative input on his mental

2   and physical health.  He'd lost his privileges.  He

3   was unable to call his family.  He was unable to

4   visit with his family.  He had nothing to distract

5   him at that time.  And that was tortuous enough that

6   he sought the courts to intervene and to end it.

7           THE COURT:  Why don't I see that as just a

8   man that's beginning to deal with reality?  Some

9   people push reality on down the road, and they never

10  come to grips with it.  He came to grips with it.

11          MS. DUNCAN:  Well, I think the reality of

12  his current situation was, that it was coercive.  I

13  mean, he's in intolerable conditions at the time, and

14  seeking relief for it.  So for him, whatever his

15  mental state or physical condition was, it was bad

16  enough that he was seeking the court's intervention.

17  And then, as the restrictions start to ease up, he

18  ends up getting these additional disciplinary

19  infractions.  So the shank -- he had previously been

20  convicted of possession of a shank, had been

21  sentenced to a year in prison with probation -- no,

22  I'm sorry, Your Honor, I misspoke.  At that point he

23  had not been convicted.  Those charges were pending,

24  but he was facing a charge that carried a punishment

25  of nine years.  He had these disciplinary write-ups,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5832

1   which would have lost him good time, meaning that he

2   would have been in prison under these tortuous

3   conditions longer.  As you heard from Sergeant

4   Urtiaga, those kinds of infractions are ones in which

5   you expect to see someone in disciplinary for a long

6   period of time.

7            So I agree with you that Eric Duran saw

8   this as a way to make money, saw it as a way to get

9   benefits for himself.  But I think at the very

10  beginning, he was in a situation that he would have

11  done anything to get out of.  And that was the

12  motivation for cooperating.

13           And that kind of pressure continues to this

14  day.  You know, he now finds himself in a position

15  where he's facing criminal charges in Portland, he's

16  facing a probation/parole revocation here, which

17  could put him in prison for longer than nine years.

18           THE COURT:  But how is that any different

19  than any person who is looking at maybe taking a plea

20  agreement?  I mean, they're all under pressure at the

21  time to make a hard decision.  Some of them are

22  sitting in custody, some of them in solitary.  I

23  mean, you know, a lot of times -- and we come in to

24  court, and they stand at the podium and we say it's

25  voluntary.  We just make sure that they know what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5833

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 70

```
 1    they're getting into.  How is that different than,

 2    you know, he put himself in a bad spot; worked out a

 3    pretty good deal in some ways.  I don't know.

 4            MS. DUNCAN:  Sure.  I guess because of the

 5    addition of the coercive conditions of confinement

 6    that existed in 2014.

 7            THE COURT:  But a lot of times I have

 8    people standing at the podium taking a plea, and

 9    they're in solitary for some reason.

10            MS. DUNCAN:  Sure.  I mean, I understand

11    what the Court is saying, and this Court and other

12    courts have found not to be coercive.  I would not

13    argue differently.  I think there is lot of authority

14    out there.  And it came up during Mr. Perez' motion.

15            THE COURT:  I guess I'd say, putting aside

16    the word "coercive," it's just pressure.  You know, I

17    mean, it's pressure that we're all under.  And if we

18    sometimes have to make decisions when we're under

19    that pressure.  But that doesn't mean it's

20    involuntary.  We just, to relieve the pressure, we

21    sometimes take a different route.

22            MS. DUNCAN:  Well, I think the pressure can

23    turn into coercion.

24            THE COURT:  And what do you think, then,

25    that, if I'm not convinced just being in solitary or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5834

```
 1     in confinement or those others, what do you think

 2     that maybe takes his situation and makes it so unique

 3     that the evidence should be suppressed here?

 4              MS. DUNCAN:  Your Honor, I've got to argue

 5     it's the conditions of confinement, plus --

 6              THE COURT:  The conditions of confinement?

 7              MS. DUNCAN:  That's right.  And that this

 8     was -- he was about to lose everything, and remain

 9     under conditions which he found so tortuous.

10              THE COURT:  When you say "lose everything,"

11     what are you putting into the basket?

12              MS. DUNCAN:  I'm putting in he's going to

13     lose his good time, which would have increased his

14     current sentence.

15              THE COURT:  Because of yelling at the

16     officer.

17              MS. DUNCAN:  And because he possessed a

18     dangerous weapon.  He was facing -- he still had a

19     pending case for a prior possession of a dangerous

20     weapon.  So he's facing the prospect of another nine

21     years being added onto his sentence.

22              And so I think, for him personally, at the

23     time, that was unbearable.  So he filed that lawsuit

24     against --

25              THE COURT:  A basket of circumstances?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5835

```
 1          MS. DUNCAN:  That's right.  So I think it's
 2   for the Court to decide -- I agree with you that
 3   pressure is not enough, because most people who enter
 4   into pleas are under pressure.  But pressure moves
 5   beyond to coercion, when the factors that are
 6   bearing -- the pressure itself becomes so extreme
 7   that someone is no longer exercising free will; they
 8   basically would do anything to get out of that
 9   decision and to get out from under that pressure.
10   And, you know, I think that that was true of
11   Mr. Duran in 2014, 2015.
12          THE COURT:  Well, we've got a lot of guys
13   in the room.  They're under pressure, too.  But
14   they're not cooperating.  How do you distinguish them
15   from Duran?
16          MS. DUNCAN:  I think it's partly a
17   difference in internal fortitude.  I mean, personal
18   strength.  Some people are weaker than other people.
19          THE COURT:  That's the reason, when I look
20   at Mr. Duran, he doesn't look like some people that I
21   have to worry about -- maybe sometimes you've got a
22   couple FBI agents in a room, maybe a language issue,
23   or something like that.  It's not one of those
24   situations.
25          MS. DUNCAN:  I agree that it's not as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73

1   obvious as that, Your Honor.  But Mr. Duran testified

2   to things that are demonstrably false that he thought

3   would help the Government.  So I think he was

4   succumbing to pressure even in this courtroom.

5          His testimony about Mr. Lowry:  Meeting

6   with Mr. Lowry, seeing Mr. Lowry in the courtroom, at

7   a time when Mr. Lowry was clearly not with the

8   Rothstein Law Firm.  His testimony about trying to

9   explain why he would have this testimony that would

10  be helpful to the Government that wasn't recorded,

11  because there were days where he didn't have the

12  recording device.  And we have two Government

13  witnesses who have testified that the recording

14  devices were taken out and replaced on the same day.

15         So, even if externally, he may have looked

16  calm and able to withstand pressure, I mean, he was

17  perjuring himself to benefit the Government.  And I

18  think that's to get himself out of trouble.  So I

19  don't think that Mr. Duran is a particularly strong

20  person.  I think he is someone who is very

21  susceptible to pressure, both internal and external,

22  and that renders his cooperation and the statements

23  in this case involuntary.

24         THE COURT:  All right.

25         MS. DUNCAN:  Thank you, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5837

```
 1              THE COURT:  Thank you.
 2              Anyone else want to argue in support, from
 3    the defendants' side, on this motion on the
 4    voluntariness of activities of Mr. Duran?  Any other
 5    defendants?
 6              All right.  Mr. Castellano, if you wish to
 7    argue in opposition.
 8              MR. CASTELLANO:  Yes, Your Honor.
 9              THE COURT:  Mr. Castellano.
10              MR. CASTELLANO:  I'd like to start off
11    where Ms. Duncan left off, and that's that she said
12    that Mr. Duran is susceptible to pressure.  But on
13    cross-examination, they tried to press Agent Acee
14    into saying Mr. Duran is somebody who influences
15    other people.  I think those two are mutually
16    exclusive in this situation.  And I don't think that
17    Mr. Duran is susceptible.
18              I think the fact that he filed the lawsuit
19    doesn't tell us too much.  It tells us that he did
20    what inmates do, and they file lawsuits when they
21    don't like the conditions of confinement.  And his
22    recollection was he was not the only person to file
23    such a lawsuit.
24              Now, the argument has changed here from
25    what was briefed, because in the defense's brief,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5838

 1   what they alleged was that the Court should suppress

 2   the evidence based on coerced -- evidence that was

 3   coerced by unlawful Government conduct.  And we don't

 4   have any evidence of that whatsoever.  The shift has

 5   now focused to pressure that Mr. Duran was under, or

 6   that he placed on himself.  But there is no evidence

 7   whatsoever of coerced conduct.  And what's important

 8   to remember is that when the defense briefed this,

 9   they were not aware that Mr. Duran had reached out to

10   Government officials prior to February of 2015.

11           So their argument initially was based on

12   the fact that Mr. Duran had got in trouble on the

13   18th, and the next day was before the FBI.  So their

14   picture was that he was only before the FBI because

15   he was in trouble the previous day.

16           We now know that, from a number of

17   witnesses -- I think at least three -- that

18   Mr. Duran, when he was not in trouble at all, reached

19   out to the FBI in order to cooperate.  And that

20   reached back to either November or December of 2014.

21           So I think it's a vastly different picture

22   than what the defense briefed or argued or what was

23   presented in court.

24           The other thing about Mr. Duran's

25   circumstances versus anyone's, is that, if the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5839

```
 1    were to grant this motion, the Court can grant a

 2    motion to exclude the witnesses who are going to

 3    cooperate against these defendants in trial in

 4    January.  We have four defendants.

 5              THE COURT:  Let's do this, Mr. Castellano:

 6    I need to give Ms. Bean a break, and I don't want to

 7    cut anything off short.  So why don't -- we'll be in

 8    recess for about 15 minutes.

 9              (The Court stood in recess.)

10              THE COURT:  It looks to me like everybody

11    has at least one of their attorneys present.  Look

12    around the room and make sure that your co-defendants

13    have counsel.

14              All right.  Mr. Castellano, if you wish to

15    continue your argument on the motion to suppress on

16    voluntariness grounds.

17              MR. CASTELLANO:  Thank you, Your Honor.

18              One of my final points was, I think the

19    Court got it right, when asking about pressure in

20    this case, that the standard isn't whether or not

21    people are under pressure, because, as the Court

22    said, everyone in this case is under pressure.  And

23    if the Court were to grant this motion, we wouldn't

24    have any cooperators testifying in this trial at the

25    end of the month.  We've got four cooperators in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5840

```
 1    Molina murder who pled to life sentences.  And so, if
 2    we use pressure as a standard, none of those people
 3    would be allowed to testify under the arguments that
 4    the defense puts forth.
 5             And like I said, the initial argument was
 6    coerced unlawful government conduct.  And that's just
 7    simply not the case here.  There is no evidence of
 8    that whatsoever.  And so I think under those
 9    circumstances, it is not pressure that counts.  It
10    would be coercion that counted.  And there is no
11    evidence that we have that.  So I would ask the Court
12    deny the motion.
13             THE COURT:  All right.  Thank you, Mr.
14    Castellano.
15             Ms. Duncan, I'll give you the last word on
16    this motion.
17             MS. DUNCAN:  Thank you, Your Honor.
18             THE COURT:  Ms. Duncan.
19             MS. DUNCAN:  I just would like to respond
20    to a couple of points.  First, with respect to the
21    testimony that Eric Duran influences people, that
22    testimony was that he exploits vulnerable, lonely
23    women to get money for himself.  So I don't know that
24    that shows a strength of character, with the ability
25    to withstand coercion.  I just think it shows he's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5841

1    manipulative, which we would agree.

2         We did originally brief this issue as --

3    you know, because the threat to kill Urtiaga happens

4    the day before he cooperated, looked on the paper

5    that that was the motivation for his cooperation.

6         Now, we've just learned that the pressure

7    and the coercion go back farther than February of

8    2015.  But the Urtiaga incident continues to exert

9    coercion on Mr. Duran, because Mr. Duran is now

10   facing charges, potential charges, related to that

11   incident.  But also his girlfriend, Karen Bueno, who

12   gives him that information that she had learned while

13   working for an attorney, is potentially to be

14   prosecuted for that case.

15        And of course, we all now know that nothing

16   happened because of that, and nothing happened

17   because Eric Duran cooperated with the Government.

18        So I think, in this case, I understand that

19   simply pleading guilty or cooperating to get out of

20   charges isn't enough to prove unlawful coercion.  But

21   there is just more here.  Because there is more with

22   the conditions of confinement, and also the potential

23   threat to incarcerating a girlfriend, Karen Bueno.

24        So under these unique circumstances, there

25   was unlawful coercion of Mr. Duran, and his earlier

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   statements and his testimony at trial should be

2   suppressed.

3           THE COURT:  All right.  Thank you, Ms.

4   Duncan.

5           MS. DUNCAN:  Thank you.

6           MR. CASTELLANO:  If I could just make one

7   correction, Your Honor:  There is no evidence that

8   Eric Duran's girlfriend was not prosecuted as a

9   result of cooperation.  Is simply no witness who said

10  that.

11          THE COURT:  All right.  Thank you, Mr.

12  Castellano.

13          Anything else you want to say, Ms. Duncan?

14          MS. DUNCAN:  No, Your Honor.

15          THE COURT:  Well, in these voluntariness

16  situations, you do have to look at each of the facts

17  of the case.  Each situation is unique.  But they do

18  tend to fall on a spectrum, and after years of

19  dealing with these types of motions, I think, try to

20  get some feel as to where they are on that spectrum.

21          As I mentioned with my questions to Ms.

22  Duncan, I did have an opportunity to not just see

23  paper about Mr. Duran, but I finally got to see him

24  on the stand and witness him, and look at his

25  testimony.  I think we all would agree that he is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5844

```
 1   manipulative.  But in some ways, I think that shows
 2   intelligence.  And it's not something just to be
 3   disregarded.  He seemed to be a shrewd and
 4   calculating and reasoning person, and someone who
 5   makes independent decisions as to what is in his best
 6   interests.  And I think that's probably the best way
 7   to look at it.
 8            The Urtiaga incident, I think, could be
 9   seen as -- not as Defendant Mr. Baca is arguing, but
10   another indication of his intelligence, is that he
11   may have been using it to cover, since there is
12   evidence that he was approaching the Government even
13   before that incident occurred.  So by yelling in the
14   prison, he may have been taking attention off
15   himself, and just part of his ruse to protect himself
16   if he was about to begin some serious cooperation
17   with the Government.
18            I think, in these situations, as you look
19   at this spectrum, you look for something more than
20   just the pressure that all defendants are in, and
21   many men who are in prison are under.  And I'm not
22   seeing that additional more that translate the normal
23   pressures that people are under in our prison system,
24   and in our judicial system, that translates that
25   pressure from just pressure to coercion.  I agree
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5844

1    that the pressure is not the standard, because almost

2    everybody is under pressure of some sort.  And

3    defendants and prisoners are under pressure of a

4    particular kind, but it's not the kind that we're

5    unused to seeing in a federal court.

6          I don't see any evidence of unlawful

7    Government conduct, so there is nothing that raises

8    to me a particular red flag here.  So I don't think

9    that, after observing Mr. Duran, that he is unduly

10   susceptible to pressure in some way.  The law doesn't

11   just tell us that person doesn't have to be under

12   pressure.  It indicates that the Court has to make a

13   determination whether his statements were voluntary.

14         The evidence, which I credit, that

15   Mr. Duran reached out to Government officials before

16   yelling at Mr. Urtiaga, I think, again, places that

17   Urtiaga incident in a particular -- could go either

18   way -- it could be part of his ruse, or just another

19   additional pressure point.  But it doesn't, I think,

20   convert it into coercion.

21         Duran's conduct could just as easily have

22   been something to confuse everybody in the prison,

23   including his fellow SNM members.  I don't think that

24   he is any different than many of the people who plea

25   and cut a deal that's in their benefit.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5845

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 82846

```
 1              So I don't think the evidence supports a
 2    finding of coercion that makes these statements --
 3    his actions involuntary.
 4              So I will deny Mr. Baca's motion to
 5    suppress that evidence, and allow that evidence to
 6    come into court, unless there is some other basis for
 7    including the evidence.  But I don't think this
 8    provides a basis to exclude it.
 9              Mr. Lowry, if you wish to argue your
10    selective recording motion.
11              MR. LOWRY:  Thank you, Your Honor.
12              THE COURT:  Mr. Lowry.
13              MR. LOWRY:  Your Honor, I really want to
14    take off -- or start my argument here with a comment
15    that the Court just made, and I think I got this
16    right.  You said:  We all agree that he, meaning Eric
17    Duran, is manipulative.  And that's the whole thrust
18    of the selective recording motion, is that he was
19    able to manipulate the recordings at will.  And,
20    essentially, as the testimony came in, basically
21    unsupervised.  I mean, he wasn't given any kind of
22    detailed instruction on how to use this, or what to
23    do, or how to record; just get us evidence to prove
24    this SNM case; you know, murders, we want to hear
25    about the murders.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 83847

```
 1              And there was no incentive for him to make
 2     complete recordings.  There was no incentive for him
 3     to capture exculpatory information.  And you heard
 4     Mr. Acee this morning testify that he couldn't recall
 5     an instance of exculpatory information being shared.
 6              But would I beg to differ with that.  I
 7     mean, if you look at the HAWK data -- and we went
 8     through this -- and the transcripts attached to the
 9     motion -- but when asked by Mr. Duran point-blank if
10     he wanted to hit Secretary Marcantel on the 24th of
11     October, Mr. Baca says, "No."  And this is the
12     hallmark of the problem we have with the selectivity
13     of these recordings.  As time goes on, apparently,
14     the emphasis of that changed.  And we don't have any
15     indication of how or why.  All we know is Eric Duran
16     was sent on a mission; he was sent on a mission by
17     the Department of Justice, and he knew what his
18     mission was.  And if you look at the text messages
19     there in Chris Garcia Exhibit D, you can see the
20     whole story about his, you know, willingness to
21     provide inculpatory evidence to the United States.
22              So, really, that's the driving factor in
23     the selectivity of these recordings.  We agree -- and
24     I think the parties agree that, for the most part,
25     that what you're seeing on the ELSUR device
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5847

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 84848

1    recordings are just partial conversations.  They're

2    not like, necessarily, cellphone recordings, where

3    you get entirety of the call, the beginning, middle,

4    and the end.

5           And that's problematic.  Because in none of

6    the recordings we have of Mr. Baca, until deep into

7    November, do we see the emphasis change with regard

8    to Mr. Marcantel.  And it's the absence of that

9    evidence that hurts the defense.  Obviously,

10   something happened.  And we don't have that

11   documented.  And Eric Duran was in a position to make

12   that happen, and didn't.  And he had no incentive to.

13   And this comes back to what we all agreed on, that

14   he's manipulative, and he wanted to satisfy his

15   master.  And his master at the moment was the FBI,

16   because they held the keys to his kingdom.  They put

17   the food commissary on the books.  They gave Grace

18   Duran money.  And, you know, there was testimony

19   about the lump sum award after the takedown, and it

20   was a $6,000 award, where she signs the receipt using

21   the moniker "Ironman."

22          So there was no incentive for him to

23   provide the FBI with exculpatory information.  And

24   that really lies at the heart of this.  Ultimately,

25   it's a due process violation.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5848


1           THE COURT:  You would agree with me that

2    there is nothing in the case laws that you cited --

3    and I think you had mostly cases from the Second

4    Circuit and the Seventh Circuit --

5           MR. LOWRY:  That's correct.

6           THE COURT:  Again, going back to what Ms.

7    Duncan and I -- it's a bit of a spectrum.  You would

8    agree with me that you would not have a basis to

9    exclude Mr. Duran's recordings because they are

10   incomplete?  For example, if -- since these are --

11   this is not like somebody going to a party and they

12   record everything as soon as they get out of the van,

13   go into the house, come out of the house, everything

14   is recorded, with people sitting in the van; it's not

15   one of those things.  It's more:  This is going to

16   take place over days and weeks, and maybe months.

17           It's unrealistic, and the law doesn't

18   require that, once the Government is recording, it

19   has to record everything.  You would agree with that?

20           MR. LOWRY:  And as an overarching

21   proposition, I don't disagree with that.

22           THE COURT:  All right.  So we're on a

23   spectrum.  There is going to be some things that are

24   left off and some things that are on the recordings.

25   That's just -- probably, Mr. Duran is not going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 86

1    talk to Mr. Baca about -- he's probably going to talk

2    to him about the ballgame, he's going to talk to him

3    about whatever they're kind of interested in as

4    buddies and things like that, they talk about.  And

5    he's going to switch it on when they start talking

6    about the things that Mr. Acee is interested in.

7            MR. LOWRY:  Or switch it on after he's, you

8    know, incited him to make inflammatory statements, if

9    you will.

10           THE COURT:  Well, but let's say that's the

11   situation.  And let's come back to my point.  But

12   let's take your point.  What's wrong with that?

13           MR. LOWRY:  Well, what's wrong with that is

14   you get into the realm of where -- let's say

15   Mr. Duran is sitting there:  I need a recording, Mr.

16   Baca hasn't said that he wants to hit Secretary

17   Marcantel.  I need to convince him that that's a good

18   idea.

19           What's wrong with that is there could be

20   hours, and in fact, there could be days -- and we've

21   seen gaps of days in these recordings where he could

22   have systematically planted the idea in Mr. Baca's

23   head that:  Wow, this could be a really good idea,

24   for whatever reason.  That's what's wrong with that.

25           So the genesis of the idea doesn't generate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5850

 1    with Mr. Baca at all.  It originates with a paid

 2    government agent.  And that's a problem, Your Honor.

 3    I mean, you could get into the idea of whether there

 4    was predisposition -- and certainly, if we take the

 5    indictment -- well, not the indictment -- but if you

 6    look at the history that the United States alleges,

 7    you can look at violence within the institution

 8    against other inmates and take that as a given.

 9          But there was no predisposition to reach

10    out and harm employees, officers of the Department of

11    Corrections.  I mean, that was a fairly novel event.

12    And I think, frankly, that's the novel event that

13    brings us all into the courtroom.  I don't think we'd

14    be here, but for that, is my personal opinion.  But

15    that doesn't matter.

16          But the point being is that if Mr. Duran is

17    the genesis of this idea, and Mr. Duran is a

18    manipulator -- and Mr. Duran has sold this idea; he's

19    already sold it to Mr. Acee in this August 5, 2015

20    meeting, where he says Mr. Baca is eager to make this

21    happen.  And when payday comes, and he has him on a

22    recorder that says:  What about hitting Secretary

23    Marcantel?  And he goes, "No."  Then, oh, wait a

24    second, my ship didn't dock, I've got to do something

25    to make it dock.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5851

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 88852

1          THE COURT:  But I've got no evidence of

2    that.

3          MR. LOWRY:  That's the whole point.

4          THE COURT:  But, I mean, isn't that a

5    difficulty?  To exclude evidence, that extraordinary

6    remedy of excluding evidence, when I've got no

7    evidence of this scenario in this case.  It's just a

8    possibility or a theory or a hope or something like

9    that.

10          MR. LOWRY:  No.  I think, if you look at

11    the cases -- and unfortunately, there are very few

12    cases.

13          THE COURT:  Let's talk about those cases.

14    And this what is struck me -- and you can tell me if

15    I'm reading them too narrowly -- those cases seem to

16    have some really junky, messy barnacles in them, in

17    the sense that the Government was manipulating tapes

18    and things like that.  It seemed to me that they were

19    fairly egregious circumstances.  Is that too

20    uncharitable to that small basket of cases that we

21    have?

22          MR. LOWRY:  I think -- on some of them I

23    think that's true.  Not all of them resulted in

24    suppression.  I'm not going to argue that.  But my

25    point, I think, if you look at the essential holdings

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5852

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 89853

 1   of those cases, what the courts have said is, Look,

 2   when the recordings are internally consistent

 3   throughout the time they made them, then we don't see

 4   a problem with the reliability and authenticity of

 5   these recordings.  They had the same message from the

 6   beginning to the end.

 7          And so the fact that any one particular

 8   player was selective about what they chose to record,

 9   if you look at the entire constellation of

10   recordings, from the beginning to end, they all bore

11   the same message.

12          And that's really the essence of our

13   motion, is, if you look at the constellation of the

14   recordings of Mr. Baca, from beginning or end, it

15   starts with:  I don't care about Mr. Marcantel.  And,

16   frankly, for the sake of this argument before this

17   tribunal at this moment, they end with recordings

18   that are not favorable to my client, that are very

19   centered on Mr. Marcantel.

20          So the problem here is they're not

21   internally consistent from beginning to end.  There

22   is a mixed message.  And that's the problem with the

23   selectivity of when Mr. Duran chooses to turn the on

24   button on, and when he chooses to turn it off.

25          THE COURT:  But doesn't he run a real risk

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 90 5854

1    that once he's got Mr. Baca talking about killing

2    anybody, if he doesn't have that thing on, he runs a

3    real risk of losing valuable testimony.  And once he

4    records, he can't do anything about it.  He can't

5    erase it or eliminate it or anything like that.  So

6    what is the incentive -- just putting your feet into

7    Mr. Duran -- I know you don't want to put your feet

8    in his shoes.  But what's his incentive for not

9    clicking that button as soon as Mr. Baca starts

10   talking about killing people?  Why wouldn't he want

11   to click it on just in case Baca says something that

12   helps Mr. Acee?

13           MR. LOWRY:  I agree with Your Honor.  He

14   has every incentive to hit the on button when that

15   moment comes.  But maybe I'm not making myself clear.

16           In defending Mr. Baca, I'm more concerned

17   about when he doesn't click the button on because

18   he's having to convince Mr. Baca that this is a good

19   idea.  And there is no incentive for him to cut it on

20   there.  He's got to wait -- pardon me.

21           THE COURT:  What if he said:  Hey "Pup,"

22   have you thought about killing Marcantel?

23           MR. LOWRY:  He did.  He did it on October

24   24, at approximately, you know, 9:05.

25           THE COURT:  So don't you have everything

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5854

```
 1   you need, though, then, for making the argument to
 2   the jury?  You're going to turn to the jury and say:
 3   This wasn't my client's idea, this was Eric Duran.
 4   He talked him into it.
 5              MR. LOWRY:  Oh, sure.  I can make that
 6   argument to the jury, Your Honor.  But what I would
 7   like to do on behalf of my client is to eliminate
 8   these recordings from beginning to end, because they
 9   don't fairly detail the entire story.  They detail a
10   very lopsided, one-sided version of the case.
11              THE COURT:  But what is -- if you can, if
12   you already have a tape that makes that point, what
13   is it that you lack?  What do you think that's not
14   out there?  Ten of those conversations?
15              MR. LOWRY:  Oh, who knows?  I mean, we have
16   entire days gone by.  I mean, that's why --
17              THE COURT:  Why isn't the explanation of
18   both Mr. Duran and others that you don't want to sit
19   there and dwell on it, or Mr. Baca will get
20   suspicious?  I mean, that seems plausible to me that
21   you don't want to sit around and just talk about
22   this.  Mr. Baca will go: "What's this dude doing?
23   Why does he want to talk about this all the time?
24   He's got to be wired."
25              MR. LOWRY:  Well, in the context of prison
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5855

```
 1   life, I can imagine that, you know, that there is a

 2   lot of blowing off steam, and a lot of locker room

 3   talk, if you will, of just:  This is terrible, what's

 4   going on?  And there is all kinds of banter that's

 5   hypothetical, that's imaginary, you know, Jeez, what

 6   if this happened.

 7          But the point being is, if Mr. Duran is on

 8   his mission, in his own words, and days are going by

 9   with no recordings, and my suspicion is that he's

10   using that time wisely to bring Mr. Baca around to

11   his point of view.  He has a mission.  He has -- I

12   agree with Your Honor.  Is it an argument we can make

13   to the jury?  Sure.

14          But the purpose of this suppression motion

15   is it's fundamentally unfair for the Government to

16   use evidence that's so lopsided, when they could have

17   instructed him.  And, frankly, the testimony was that

18   was impractical.

19          But they could have wired up the entire

20   cell, and had every second of every day recorded.  So

21   we could have parsed out all of the puffing from the

22   realistic criminal activity.

23          THE COURT:  Could.  But is there anything

24   in the Constitution that requires them to wire the

25   cells?  They can do what they did here, and wire one
```

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                    (505) 843-9494
FAX (505) 843-9492                          FAX (505) 843-9492
                                                  1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 5856

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 93

```
 1    person and put them in a cell next to --
 2             MR. LOWRY:  Sure.  And certainly, the
 3    Government has a prerogative to choose their
 4    technique.  And that's not really the crux of my
 5    argument.
 6             My argument is that, by failing to educate
 7    Mr. Duran, and get him to do a balanced recording
 8    set, instead of just inculpatory, then the Court has
 9    to step in and decide, in the words of the Seventh
10    Circuit, is the proceeding so fundamentally fair that
11    the selective recordings passed the sniff of the
12    court.
13             And what we're suggesting here is, if you
14    look at those cases, and again, if the recordings
15    aren't internally consistent from the beginning of
16    the recording set, until the end -- and here, they're
17    not -- you have problems.
18             THE COURT:  The primary internal
19    inconsistency is that Mr. Baca was not focusing on
20    Marcantel at the beginning?
21             MR. LOWRY:  No.  I think the recordings --
22    in fact, if you listen to the recordings and look at
23    the transcripts -- the recordings are pretty
24    detailed, the focus is Adam Vigil and Dwayne
25    Santistevan.  It had nothing to do with Marcantel.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5857

```
 1            THE COURT:  Right, but when you keep saying
 2     internally inconsistent, is that --
 3            MR. LOWRY:  That's exactly, your Honor.
 4     That's really it.  You know, it's Vigil/Santistevan,
 5     Vigil/Santistevan, Vigil/Santistevan.  And here you
 6     have Mr. Duran going:  What about Marcantel:  What
 7     about Marcantel?  What about Marcantel?  And all of
 8     these Marcantel comments are precipitated and
 9     injected into the conversation by Mr. Duran, who we
10     all agree is a master manipulator.
11            So, I mean, that it's, Your Honor.  I mean,
12     it's a tough standard, I'm not going to deny it.  But
13     I think, when the calls are internally inconsistent,
14     and you know that the person operating the device is
15     on a mission, is on a mission to satisfy a singular
16     interest, which unfortunately, is not the fundamental
17     fairness of a courtroom proceeding.  But he's making
18     sure he gets his paycheck, his commissary money, his
19     $25,000 bonus, his lump sum award to get out of
20     prison, so he can go menace the west coast of the
21     United States.
22            I mean, the idea that he wanted to give
23     back to society, is a perverse one, when you look at
24     how he chose to give back.  I just don't think his
25     motivations are pure.  And they rarely are when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5858

 1   you're talking about this kind of individual.  That's

 2   a given.  But he played the system.  And he played it

 3   to his benefit, and just because he enjoyed the

 4   accouterments, the devices and the toys that the

 5   United States shared with him, doesn't mean that the

 6   way he used them were fair.

 7        I think -- you know, we're talking about

 8   the recordings -- I think the real way to look at

 9   this, Your Honor, and the problem we see is -- I

10   mean, there are two tiers to this, if you will:  One

11   are the recordings themselves, with the ELSUR

12   devices; have less of an argument with that, with the

13   cellphone recordings, because the cellphone

14   recordings were captured by Verizon.  All of those

15   recordings were made from beginning to end.  I mean,

16   when you hit the dial button, he didn't have the

17   prerogative to stop the conversation in the middle.

18        But the problem is, when you get to things

19   like the text messages -- and you heard the testimony

20   is, we didn't even care about the photographs.  And

21   we know -- and Mr. Acee said it this morning that

22   there is pornography being sent to his phone.  And,

23   again, there are two photographs that we got off of

24   his phone.  There are a handful of selfies that he

25   sent to Chris Garcia's -- I would say wife -- but I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5859

1    don't know that they were married -- but his

2    significant other.  But none of this:  The

3    pornography, the messages that he sent out via

4    photographs, none of that is captured, none of that

5    was on the phone when we picked it up.

6              And, likewise, the texts.  I mean, one of

7    the reasons I think the master text file is pretty

8    critical is this is the extraction report.  And this

9    is actually -- Your Honor, this is Government's

10   extraction report done by Nancy Stemo, and this is

11   the Chris Garcia Exhibit A.  And if you look at the

12   last text -- these are all of the texts that the

13   Government pulled off of that phone -- but if you

14   look at the master text file that was submitted as

15   Chris Garcia D, there are thousands of text messages.

16             And the real interesting part about this

17   is, when you start to parse it out is, of these

18   texts -- and I think this is some kind of error that

19   happened when they did the Cellebrite download, but

20   these next two texts that are on December 3, 2015,

21   "Call me ok; text me back."  I mean, these are

22   messages that were sent to Mr. Duran by two females.

23   But neither one of these texts appear on the

24   disclosures that the Government initially gave us, on

25   March 25, 2016, which causes me a great deal of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5860

1    concern, because what it's saying is the Verizon

2    records, or whatever methodology the United States

3    used to capture those text messages, was less than

4    efficient.  Because here we have this one part of one

5    day, and only one of the three texts are here.

6            And just for the Court's edification, if

7    you look at the time stamps here, the very last text,

8    "Call me ok," this is actually on the master text

9    file.  And that's at 9:06:26 a.m.  But the earlier

10   texts, the ones that preceded that final text, the

11   "Text me back, they took my home boy."  I mean, this

12   is not really relevant.  And it's not in the record.

13   But these messages came from Chris Garcia's

14   significant other.  But they're not in the master

15   text file.  And you've got to scratch your head and

16   go, Why?

17           And it gets worse.  If you look at Anthony

18   Baca's Exhibit G, Your Honor -- and I went through

19   and highlighted one for the Court -- but this is the

20   Verizon record as they captured it.  And I don't want

21   to flip through all the pages.

22           But if you go through Exhibit G, you'll see

23   that Verizon documented approximately 17 text

24   messages between Mr. Duran and another government

25   informant in this case, Gerald Archuleta.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5861

 1              But when you look at the master text

 2    file -- this is why I wanted it OCR'd for the

 3    Court -- you can look at his cellphone number -- I

 4    can read it for the record -- was 931-743-7592.  None

 5    of them are on the master text file, not a single

 6    one.

 7              And this comes back to the point I'm trying

 8    to make, is Eric Duran wasn't sufficiently

 9    supervised.  Eric Duran wasn't sufficiently educated.

10    Eric Duran wasn't sufficiently instructed on how to

11    use these devices.  I mean, here he picks a single

12    individual, and makes sure that he -- you know,

13    eliminates all this documentary evidence that would

14    benefit the parties.  I mean, either party.

15              But I mean, the fact of the matter that he

16    is working as a government agent and destroying

17    evidence that he knows is going to be used in the

18    criminal case is problematic.

19              And the view of the defense, Your Honor,

20    and the view of Mr. Baca is that his decision not to

21    turn on that recording device, when he is encouraging

22    Mr. Baca to commit crimes, is the functional

23    equivalent of deleting Gerald Archuleta's text

24    messages off of his phone so nobody can see what was

25    said.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 99

```
 1              And while Mr. Acee testified -- and I have
 2    no reason, really, to doubt his sincerity, when he
 3    says he thinks it's designed to capture all that
 4    information, if you compare the Verizon text master
 5    sheet of what was done with that phone to the actual
 6    text messages that were received and delivered to the
 7    defense team by the Government, what we're going to
 8    see is none of the Gerald Archuleta texts are there.
 9              And it's just indicative of the systematic
10    problem with providing a manipulator, like Eric
11    Duran, with electronic devices, and not educating
12    him.
13              So, Your Honor, if you have any other
14    questions, I'm happy to answer them.  But I really
15    think that's it in a nutshell.
16              THE COURT:  All right.  Let me -- I may
17    have other questions, but let me hear from others.
18    Thank you, Mr. Lowry.
19              Anybody else want to argue in support of
20    Mr. Baca's motion?
21              All right.  Mr. Castellano, are you going
22    to argue in opposition?
23              MR. CASTELLANO:  Yes.  Thank you, Your
24    Honor.
25              THE COURT:  All right.  Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5863

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100864

1          MR. CASTELLANO:  I'd like to start with a

2     point the Court made earlier.  And that's that

3     context matters, in terms of how and when these

4     recordings are made.  And, as the Court knows, now

5     from multiple hearings, these are recordings made at

6     a Level 6 facility in the situation where batteries

7     were at issue, and a situation where the operation

8     had to be kept secret.  Even Corrections officers

9     didn't know.  It was a very small group of people who

10    knew what was going on that there was recording

11    taking place in the facility.

12         So I think that the context in which these

13    recordings are made is something that we have to

14    focus on.

15         And Mr. Lowry actually asked Agent Acee:

16    Why didn't you just wire the whole cell?  And he

17    explained why you couldn't wire the cell, including

18    the fact that tech agents even said it was going to

19    come to the point where it's impactful, when you have

20    people in the facility working in the cells, you

21    pretty much give up the ghost, in terms of what's

22    going on at the facility.  So they used the best

23    means that they had available at the time.  And they

24    used multiple means, including recording devices and

25    the cellphone.  So I think that's important when we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5864

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101

1    talk about what's required or what's permitted.

2           The other thing, I think Mr. Lowry's

3    argument would carry a lot more weight if we didn't

4    have other corroboration in this case.  That's why we

5    went through some of these exhibits.  And I mean, the

6    defense knows that Mr. Baca, at one point, said not

7    to kill Mr. Marcantel, because we gave that to him,

8    because that came from the recording.  That's how

9    they know that information exists.

10          If the Court will remember from the

11   summaries when we did the James hearing, there is a

12   point when Mr. Baca tells Mario Montoya to hit Mr.

13   Santistevan or Adam Vigil.  He's still talking about

14   killing corrections officials.  At that point, it's

15   not just Mr. Marcantel.

16          And in the next call, Mr. Baca decides it's

17   better to hit Santistevan and Vigil because they're

18   the ones telling lies to Marcantel.

19          So he does prioritize who he wants hit when

20   he makes these comments on the recordings.  So it's

21   not like he's saying:  Don't do it at all.  He's

22   saying:  I want these guys hit -- and this, once

23   again, would carry more weight if we didn't know what

24   we know also from the James hearing -- and that's

25   that, in March of 2015, months before these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    recordings take place, letters went out indicating

 2    that Marcantel was to be hit, based on orders given

 3    by Mr. Baca.

 4            So once again, Agent Acee indicated the

 5    importance of corroboration, whenever you can get it.

 6    So, if you have a statement that starts and ends in

 7    mid-sentence, it's nice to get other information to

 8    plug in the gaps that you have for this very reason.

 9            And so we know, going back to March of

10    2015, that Mr. Baca wanted to kill Mr. Marcantel and

11    others.  So it's not surprising that initially he

12    prioritizes, and then later on moves on to

13    Mr. Marcantel.

14            THE COURT:  Well, what are you going to

15    tell the jury about this -- what's your story going

16    to be about Mr. Baca?  Are you going to say that he

17    wasn't sharing all the information with Mr. Duran

18    about his thoughts about Marcantel; that he was

19    playing a game with Duran; that he always intended to

20    kill Marcantel?  Is the story going to be that he

21    threw Marcantel in at some point into the hit list?

22    What's going to be the Government's version of

23    events?

24            MR. CASTELLANO:  I think it's going to be

25    right here, Your Honor.  And that's that he decides
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5866

1    it's better to hit Santistevan and Vigil, because

2    they're the ones telling lies to Marcantel.  So what

3    he's done is he's prioritized who he wants murdered.

4              THE COURT:  So is he backtracking?  You had

5    earlier materials, that Duran didn't have the benefit

6    of, indicating that he was calling a hit on

7    Marcantel, and then he pulled it back.  Is that what

8    happened?

9              MR. CASTELLANO:  Well, I think my theory is

10   that he is prioritizing.

11             THE COURT:  What's that mean?

12             MR. CASTELLANO:  Well, he wants a number of

13   people killed.  Who I would like to see killed first,

14   or the most.  And the evidence, even from Mr. Duran,

15   was that Mr. Baca hated Santistevan.  And so clearly,

16   he was somebody he wanted killed.

17             And the other evidence that's been

18   presented at other hearings is that Adam Vigil was

19   also added to the list, because at one point he was

20   supposed to be an expert witness in the state case of

21   the Molina murder.  So there were reasons to hit

22   them.

23             The other thing from even the defense

24   exhibits, in terms of just corroboration alone is

25   Exhibit E.  And there is a conversation with Mr. Baca

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5867

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104

```
 1    and Mr. Duran about the fact that Marcantel would be
 2    a bigger target, and it would give them more
 3    recognition.  He doesn't say:  I don't know what
 4    you're talking about, or what do you mean, something
 5    you would expect would be a natural response, if he
 6    didn't already have this information.
 7           Then, on the next page of that exhibit,
 8    there is discussion of the willas or the letters that
 9    went out.  And that goes back to the March letters,
10    referring to the hits on Mr. Marcantel and
11    Mr. Santistevan.
12           So, for example, Mr. Baca doesn't say,
13    Wait, what are you talking about?  I've never heard
14    of those things.
15           So we have to put these things into
16    context.  And we do have that from the other
17    recordings in this case.  It's not as if Mr. Baca
18    denies any knowledge whatsoever of any letters going
19    out at any point.
20           And so that just goes to corroboration, and
21    the fact that there is reliability in the recordings.
22    And as the Court noted --
23           THE COURT:  But those words are coming out
24    of Mr. Duran's mouth.
25           MR. CASTELLANO:  That's correct.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5868

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105

1    dispute that.  Those are coming from Mr. Duran's

2    mouth.  And once again, Mr. Baca does not have a

3    response indicating he doesn't know what he's talking

4    about in either the first statement, among others,

5    and the second one, when there is a discussion about

6    the willas or the letters going out.

7              So I agree, Mr. Duran is putting out the

8    subject matter to Mr. Baca.  But Mr. Baca is

9    responding in kind.  That's something that gives us

10   some confidence in the fact that, even if you start

11   and finish the conversation mid-sentence, we've

12   captured reliable evidence in this case.

13             And the same thing happens in the -- this

14   is Baca's F -- so this is a phone conversation

15   between Mr. Duran and Agent Acee.  So this is --

16   basically, what's captured here is a candid

17   conversation between the two.  So even something that

18   isn't intended to be recorded on the devices is

19   discussion about Mr. Baca wanting few people to know

20   about the murder conspiracy.  Mario Montoya is one

21   who is eventually going to pick up the gun from

22   Mr. Garcia.

23             So, like I said, even in candid

24   conversations between the agent and the informant, we

25   have information that's corroborated.  So it's not as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    if Mr. Duran is just saying things to please Agent

2    Acee, and they can't be corroborated anywhere else.

3    They, in fact, are by other means.

4           So I think there is, therefore, some

5    reliability, and reasons to believe that he truly

6    tried to capture what was being said.  Because, as I

7    stated earlier, if we took one statement in a vacuum,

8    it would be exculpatory as to Mr. Baca on only one

9    statement regarding Mr. Marcantel.  But that's

10   captured.

11          So the Court asked the question earlier:

12   Wasn't Mr. Duran running the risk, then, that he

13   turns this thing on and off at the same time; it

14   would take a great deal of skill to exclude all

15   exculpatory information and capture only inculpatory

16   information.  That would be a tall order, including

17   the fact that there is a cellphone backing up a lot

18   of these recordings.  That's a tall order.  So I

19   don't think there is anything here that would offend

20   our notions of due process, in light of what we know.

21         Now, the recordings themselves, or the data

22   from the recordings -- actually, no one can explain

23   to the Court what happened there.  Mr. Lowry

24   indicated that a conversation later in time showed up

25   on -- it was either two or three -- that one showed



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107871

1   up on the summary.  But, if you look at them, they

2   are only one second apart:  9:06:25 versus 9:06:26 on

3   the same date.  So there is just no explanation why

4   one would show up on the summary and the other

5   wouldn't.  That doesn't have anything to do with Eric

6   Duran.  That's some sort of technical glitch.  And

7   the bottom line is that the defense has the

8   information; it's been turned over in the summaries

9   that they received of the text messages.

10       The other thing that couldn't be explained

11  in court, because nobody had that information is why

12  neither chart, the defense's or the prosecution's

13  indicated seven text messages above, and maybe four

14  test messages.  So there is just a problem with the

15  technology here that no one can explain, and that's

16  one of the problems we're facing.

17       The other issue here regarding Baca's

18  Exhibit G, the same thing, we don't know why certain

19  information may or may not have shown up in one

20  summary versus the other summary.  The defense's

21  explanation is that Eric Duran deleted certain

22  information.  But he had no reason to know that if he

23  deleted these things, it wouldn't be captured.  Agent

24  Acee told him:  Everything you do is going to be

25  captured here.  So I don't think that's an issue with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Eric Duran.  I think it's another issue with the

2    technology, which is probably a more likely

3    explanation than Eric Duran deleting a certain subset

4    of a mass -- I think over 830 pages of text messages

5    that the Court has now as an exhibit.  I think these

6    are technological issues.  I don't think they're

7    issues related to Eric Duran.  And there is nothing

8    indicating that it was Mr. Duran.

9            I think a couple of these entries show

10   "N/A," on them when I was looking at them yesterday.

11   I'll see if I can find one example for the Court.  I

12   can't find one, but if you look closely at the

13   exhibit there are entries here that just say "N/A."

14   And once again, we don't know why that appears on the

15   summaries.  So I think, once again, these are

16   technical and not issues related to Eric Duran.

17   Because he would have to know how to delete these

18   text messages in a way that they weren't picked up on

19   the wire.  And we just don't know why could happen.

20           But I think based on the evidence here,

21   there is clearly not a due process violation.  In

22   addition to that, the defense argument is lessened by

23   the fact that we don't have corroboration.  So we

24   don't have issues where we have to speculate and

25   wonder what happened in-between the conversations or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5872

1    the context of the conversations, because we have

2    that context from other means, numerous other means.

3            I don't have anything else unless the Court

4    has questions, Your Honor.

5            THE COURT:  Seemed like there was one thing

6    I was going to ask you but I can't remember what it

7    was.  It was something that Mr. -- I think of it,

8    I'll ask you.  Thank you, Mr. Castellano.

9            Mr. Lowry, I'll give you the last word on

10   this motion.

11           MR. LOWRY:  Thank you, Your Honor.

12           THE COURT:  Mr. Lowry.

13           MR. LOWRY:  Your Honor, I don't have a

14   problem with Mr. Castellano referring to the

15   materials in the James hearing.  But I would ask the

16   Court's indulgence if I could augment with -- Mr.

17   Castellano pointed out to one of the bullet points,

18   which was recording 0730.020.  And the bullet

19   point -- I think, if you look at the actual

20   transcript, you really get the gestalt of my concern.

21   And that is -- the Court pointed this out -- you're

22   looking at these transcripts where it's Mr. Duran

23   talking about Marcantel, Marcantel.  And the United

24   States wants to take this affirmative -- well, there

25   is just these one-word comments, yeah, yeah.  They're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110874

```
 1    like normal conversational ticks that people have so
 2    the person you're talking to knows that you're still
 3    there and listening.  It's not necessarily an
 4    affirmative agreement with what you're saying.
 5            But my point is, if you look at recording
 6    number 20, once again, you see Mr. Duran trying to
 7    implant the idea that killing Secretary Marcantel is
 8    just a wildly fantastic idea.  And what you see in
 9    the context of that conversation -- it's even
10    captured in the bullet point, but it's in more detail
11    in the transcript -- is Mr. Baca is explaining why
12    Marcantel is not worthy of any consideration for
13    violence, because he's been purposefully fed
14    misinformation by subordinates that work for him.
15    And the point being is that you actually see Mr. Baca
16    making the case why Mr. Marcantel should not be a
17    target.  And he makes it in real-time, and it's
18    recorded, and he explains to Mr. Duran why the facts
19    of the prison life and prison administration don't
20    warrant that kind of retaliatory action towards the
21    Secretary of Corrections.
22            So I'd like to augment, if my colleague
23    will agree, and give you a copy of that transcript,
24    because I think it's really indicative of the problem
25    we're facing -- and the fact that I think the Court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5874

1    started to recognize that these -- the Marcantel, the

2    Marcantel, the Marcantel, is coming from the

3    informant in this case.

4            Now, the Government points back to letters

5    that were written by yet two other Government

6    informants -- not at the time -- but "Baby Rob,"

7    Robert Martinez, and "Shadow," Roy Martinez.  And the

8    thing is that they wrote those letters after the

9    Molina murder.  The Government is going to argue

10   that, Oh, all of those spring from a conversation in

11   2013.  I realize that.  But I don't think they're

12   corroborative.  Because if you actually go back and

13   look at the conversations that Mr. Duran recorded

14   with those two gentlemen, they acknowledge that Mr.

15   Baca had no idea what they were doing.  And that

16   they're writing these for a dual purpose.  They just

17   want to get sent out of state.  They're tired of

18   being housed in the Department of Corrections of New

19   Mexico, much like Mr. Duran was tired of being housed

20   in the Department of Corrections in the State of New

21   Mexico, because of the onerous -- and Duran describes

22   them in his civil suit as "horrendous conditions."

23   And they just wanted to be shipped out of state.  For

24   them, it's a different motivation altogether.  It's

25   just like, Oh, wow, let's float these kites out,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5875

```
 1    they'll get intercepted, and we'll be shipped out of

 2    state.  And Mr. Baca had no idea that they were doing

 3    this.

 4            So I can understand why the Government is

 5    trying to say, Oh, that's fantastic evidence of

 6    corroboration.  But if we really wanted to drill down

 7    on that, I would argue to the contrary that it's not.

 8    And I think that the best evidence of that is call

 9    number 20, which was referenced in the James hearing.

10            So I'd like to supplement the exhibits with

11    that, if it's okay with the United States.

12            THE COURT:  Any objection, Mr. Castellano?

13            MR. CASTELLANO:  I have a few points on

14    that.  One that is Agent Acee said that oftentimes in

15    reversals people do suggest to others that they

16    commit crimes.  And they do, in fact, commit those

17    crimes.  That is not violation of any sort.

18            And the other thing is that I don't object

19    because Mr. Lowry is actually asking the Court to

20    consider Eric Duran's recordings as reliable for

21    purposes of them as argument.  So I think that cuts

22    against him.

23            And I certainly have no objection to the

24    Court looking at that evidence.

25            THE COURT:  How do you want to make sure,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   so that the record of this is clean?  Do you want to

 2   provide excerpts that you want me to consider, and

 3   we'll mark those as exhibits?

 4          MR. LOWRY:  Yes, Your Honor.  And I have a

 5   copy of that today.  I can share that with the

 6   Government and make sure that it suits their -- that

 7   it's authentic in their eyes.  And I can label it and

 8   get it in the record, Your Honor.

 9          THE COURT:  Okay.

10          MR. LOWRY:  But Mr. Castellano's point

11   about relying on the Duran recordings, Your Honor, I

12   think, you know, if you look at the rules of evidence

13   for authenticity of recordings -- yeah, I'm not --

14   you know, the United States, you're well aware of the

15   litigation we went through to get the recording

16   devices, and we all heard Mr. Williamson testify

17   about how the ELSUR devices work.

18          On behalf of Mr. Baca, I'm satisfied that

19   the recordings, as they were made, the ones that we

20   have, they haven't been altered with.  I don't think

21   there is any rational argument that they've been

22   doctored or tampered with.  So I will agree with the

23   United States that the argument here isn't that what

24   we have that is recorded, those recordings haven't

25   been manipulated or doctored.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              But I think the Court understands my

 2    position is a much broader one.  It's how those

 3    recordings were made and what's missing in the larger

 4    holistic picture of what was available to be

 5    recorded, and what was chosen to be recorded.

 6              But I would say -- and you heard the

 7    Government argue that the mistakes that we're seeing

 8    in these technical glitches were out of Mr. Duran's

 9    control.  But that does go into the authenticity

10    requirements under the rules of evidence.  And one of

11    the factors the Court should consider is, you know,

12    had the evidence been properly preserved.  Mr.

13    Castellano suggested that, Oh, well, look, they

14    really can't stand to complain, if you look at Chris

15    Garcia Exhibit A, they have these three texts now, so

16    they really can't complain about them not being on

17    the master text file, because we have them in Exhibit

18    A.

19              But that really misses the larger point of

20    Chris Garcia Exhibit A.  This is the tip of the

21    iceberg.  And, unfortunately, because Mr. Duran's

22    phone has been, you know -- I mean it looks, it

23    appears as though it's been wiped, and because we

24    only have these bits of recordings.  Sure, we have

25    these, but I think what it does is says there is a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5878

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115879

1    larger problem, and it renders the entire master text

2    list, which was tendered to the Court as Garcia

3    Exhibit D, suspect; that we really have no way to

4    know that that's a complete and accurate set of text

5    messages.  And that's the reason I bring up the

6    Gerald Archuleta texts.

7          And I hear what Mr. Castellano is saying.

8    And again, I don't know what "N/A" means on the

9    Verizon text file, which is Anthony Baca G, but what

10   I would suspect to see on the master text file is

11   that, even if Mr. Duran attempted to send a text --

12   and we know that he must have, because they're on the

13   Verizon document, that they're not on the master text

14   file.

15         So that's showing that there is really a

16   major problem with the technology, and that we have

17   every reason to believe that, under the standard for

18   the rules of evidence, that these things haven't been

19   properly preserved for everyone to see.

20         So, Your Honor, unless the Court has

21   questions, I really don't have anything else that I

22   could add to the argument right now.

23         THE COURT:  All right.  Thank you, Mr.

24   Lowry.

25         Well, I believe that, again, you have to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116 5880

 1   look at the total circumstances of the undercover
 2   operation to make a determination of whether notions
 3   of due process are violated by the introduction of
 4   these recordings.
 5          At the same time, I have to be careful, as
 6   a federal judge, not to tell the Government how to
 7   conduct its investigations better.  We learn from
 8   excessive force cases that better operations doesn't
 9   mean that they violate the Fourth Amendment.  And I
10   think that's probably equally true here in the due
11   process realm of the Fifth Amendment as well; that
12   just because the Government could have done other
13   things and maybe done their job better, that that
14   necessarily means that it violates the Constitution.
15          As Mr. Lowry admitted, the notions of due
16   process that I have to work with here are quite high.
17   And I tend to think that most of the criticisms of
18   what the Government has done and how they've gone
19   about their task fall into the realm, not of a
20   violation of the notions of due process that we bring
21   to bear in this type of motion, but are mostly
22   cross-examination materials.
23          We're not dealing with a case in which
24   there is any destruction of evidence that I see.  No
25   evidence that there has been only a capturing of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5880

```
 1    exculpatory information -- of inculpatory information
 2    on exculpatory issues -- evidence.  There may be some
 3    technology issues, and the defendants are welcome to
 4    explore that.  But I don't think those rise to the
 5    level of suppressing the evidence from the case.
 6              It seems to me that the evidence -- and I
 7    make this finding by a preponderance of the
 8    evidence -- that Mr. Duran was trying to capture
 9    everything that Mr. Baca was saying on these topics
10    that are relevant to this case.  He wasn't trying to
11    capture everything that Mr. Baca was saying, but he
12    was trying to capture these, and wasn't trying to
13    sort through them.  I don't see any evidence to the
14    contrary.
15              I think, to require the Government to start
16    wiring inside the cells, I do think that my
17    experience with the SNM members is that they're
18    smart, and they would have detected what was going on
19    quickly.  And so the fact that there are multiple
20    ways to get these recordings doesn't make this way
21    unconstitutional.
22              I do think that we have to look at the
23    context of the recordings.  I agree, and I think
24    everybody agrees that context matters greatly here.
25    And given the level in which the recordings were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5881

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118

1    made, Level 6, the people involved, and what we know

2    about the members involved, I think those indicate

3    that battery life, hiding these, shakedowns; these

4    were all important to the recording.  So it's not

5    something that can be done just like it can be

6    outside of a prison context.

7          I've carefully examined, over the days in

8    which we've conducted this hearing, that the

9    Government's conduct in managing the undercover

10   operation, this taping and recording of information

11   and investigation, I don't find it to be outrageous.

12   I don't believe it runs afoul of the constitutional

13   guarantees of due process.

14          Credibility determinations regarding

15   informants belong to the jury and not to the Court.

16   And the Court is reluctant to take those away in the

17   guise of suppressing the information.

18          In assessing the supposed outrageousness of

19   the Government conduct, again, I don't find evidence

20   that there was selective recording here.  I think

21   it's more of a theory.  There is no evidence that

22   tapes were altered or doctored.  No evidence of any

23   sort of monkey business.  These seem to be authentic,

24   and the product -- they've largely been produced in

25   the same form that they were recorded.  It seems

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5882

```
 1   relevant.  I don't see any bad faith.  And I think if
 2   the defendants want to suggest exculpatory evidence
 3   was not included, they're welcome to do that.  But I
 4   don't think the fact that maybe the tapes don't
 5   include those is a basis for excluding the evidence.
 6          So after carefully considering the
 7   circumstances here, which I think is very
 8   fact-intensive inquiry, as well as the relatively few
 9   cases that have looked at this issue and excluded
10   some recordings, I don't find this case to be on the
11   spectrum at the end of the spectrum that permits or
12   allows exclusion.  So I will deny the motion to
13   suppress on the basis of selective recording.
14          All right.  Let me get my materials
15   organized and we'll take up the next motion.  I got
16   my materials a little bit scattered around.
17   Ms. Wild, are you on the phone?  I can't find my
18   little docket sheet.  I think she shared it with
19   y'all.  Do y'all know what the next number that we're
20   taking up is?
21          THE CLERK:  Can you hear me?
22          THE COURT:  I couldn't hear for you a
23   second.
24          THE CLERK:  The next thing that's up is
25   1525.  It's the Government's notice of the 609.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5883

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120 5884

1                    THE COURT:  Okay.  Is that number 5 in

2      mine?

3                    THE CLERK:  It's number 8 in the tabbed

4      stack.

5                    THE COURT:  All right.  Does the Government

6      wish to argue on this?  Ms. Armijo?

7                    MS. ARMIJO:  Certainly, Your Honor.

8                    We just filed a 609 notice in which we

9      requested, if the defendants were to testify, they

10     would be impeached with anything that falls under

11     609.

12                   I have gone through the pretrial reports,

13     and also I have pen packs, which have all been

14     disclosed, obviously, as to each these defendants.  I

15     guess the issue will be, if they want them sanitized.

16     And I have not heard from anyone if, in fact, they

17     do.

18                   The other issue would be some of these

19     priors may be bad acts which would come in even if

20     they didn't want them sanitized.  So I guess I'm

21     willing to hear from the defense.  But I can also

22     meet independently with the attorneys from each of

23     them, maybe over lunch, to see if we agree on which

24     ones fall within that, and if we're going to use them

25     for 609, and if, in fact, they want them sanitized or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5884

```
 1  not.  So that's where we are with it.

 2          And I only did that as to the five that are

 3  going to trial.  I have that information readily

 4  available for all 14, but I did focus, since we're

 5  just focusing in on the five for trial.

 6          THE COURT:  Let me ask the defendants:  Do

 7  y'all want to meet with Ms. Armijo during the lunch

 8  hour, and see if there are any issues I need to rule

 9  on, or see if y'all can reach some agreement as to

10  what will come in and what will not come in, if your

11  defendant testifies?

12          I take it this has nothing to do with your

13  case-in-chief.  This is strictly impeachment

14  information.

15          MS. ARMIJO:  This is strictly for 609 --

16  like I see Ms. Sirignano standing up -- I do believe,

17  like Mr. Garcia has different issues, because he is

18  charged with being a felon in possession.  So we can

19  certainly discuss with her.

20          THE COURT:  Can we just Old Chief that one?

21          MS. ARMIJO:  Yes.  I have had one --

22          THE COURT:  I'm sorry, I talked over you.

23          MS. ARMIJO:  I have had one trial where

24  they did not want to Old Chief it, and they wanted it

25  out.  So I guess I would leave it to the defense.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5885

```
1           THE COURT:  So you've got a choice on

2    yours, since you've got the felon in possession, we

3    can Old Chief it, so we can have a stipulation and it

4    doesn't come in.  If Mr. Garcia takes the stand, then

5    go to 609, you can meet with the Government and try

6    to work that out.  If you can't work it out, we'll

7    pick it up after lunch.  What do you think?

8           MS. SIRIGNANO:  Judge, in response to your

9    question:  First point is, that's what we did in

10   15-CR-4275, is the Government provided a proper 609

11   notice, with Mr. Garcia's prior convictions, that

12   they planned on using.  And then we did make an

13   agreement that we would just agree to the facts of

14   the conviction instead of what it was.  I'm sure we

15   could do that today.

16          But just for my record, Judge, this

17   Document 1525 is not properly noticed up.  There is

18   no lists of prior convictions, and -- for the five

19   defendants that are going to trial.  And so my first

20   objection would be that it's insufficient.  And if

21   the Government would like to remedy their 609 notice

22   by filing it sealed, with all of the convictions that

23   they intend to use, of the defendants going to trial,

24   that would be the proper way to go forward here

25   first.  And then we could talk to them about --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5886

1    during lunch -- what convictions they have, if that's

2    what the Court would like us to do.

3          I just want to make sure we have a clean

4    record going forward, Your Honor.  Thank you.

5          MR. VILLA:  Your Honor, if I may.

6          THE COURT:  Let me look here.

7          MR. VILLA:  Sure.

8          THE COURT:  Ms. Sirignano, as far as

9    this -- what are you saying the Government needs to

10   do to comply with 609?  I mean --

11         MS. SIRIGNANO:  Your Honor, as long as I've

12   been doing this, and as far as I know, with 609, the

13   Government, if they intend to notice -- or if they

14   intend to use criminal convictions, I believe they

15   should have a sealed notice of what it is they plan

16   on bringing in as evidence.

17         THE COURT:  Where does that requirement

18   come from?

19         MS. SIRIGNANO:  I'll look at 609.  If I'm

20   wrong, Judge, I'll let you know.  But --

21         THE COURT:  I don't see it.  I know that

22   oftentimes we're dealing with a discrete defendant

23   and maybe a discrete number of convictions.  Maybe

24   it's in here.

25         MS. SIRIGNANO:  Your Honor, may I have a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5887

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124888

```
 1    moment please to confer with colleagues?
 2             THE COURT:  Maybe it's in 609(b) -- I guess
 3    that's for convictions more than 10 years.  Are some
 4    of the convictions you're going to use, Ms. Armijo,
 5    more than 10?
 6             MS. ARMIJO:  Yes, they are.  But they would
 7    still fall under the first part, because, for
 8    instance, I believe some of these defendants have
 9    convictions that are over 10 years old, but they are
10    serving life sentences, and they're still serving
11    their sentence, or it brings it into the 10-year time
12    period.
13             THE COURT:  So I guess what Ms. Sirignano
14    is invoking then is 609(b)(2), that the proponent
15    gives an adverse party reasonable written notice of
16    the intent to use evidence after 10 years.  So it
17    probably is not -- there is probably no notice
18    requirement for the convictions within 10 years.  But
19    there is one for beyond 10 years.
20             MS. ARMIJO:  I think that, when you look at
21    the 10 years, it still would require -- if it's
22    beyond 10 years that they serve custody.  I think it
23    still falls within the first one.  But we'd be more
24    than happy, now that we know for the five that are
25    going to trial, to file a supplemental notice that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5888

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 125889

```
 1    lists them out.  And I can certainly meet with them.
 2    We can even get that done possibly today.  But I was
 3    just trying to see if we could meet -- if they wanted
 4    to see what it was.  But if that solves that issue,
 5    certainly we'll do it.
 6              And I want to put on the record this is
 7    just for impeachment purposes.  Many of these
 8    incidents would still be coming in as bad acts or
 9    racketeering activity.  That's separate.  So I'm just
10    now dealing with the 609 issue itself.
11              THE COURT:  Well, let's be careful with our
12    record.  Because I went very carefully with Mr.
13    Castellano -- we went through all, we made a list of
14    all the bad acts, so that the defendants had an
15    opportunity to go through those.  And then, for
16    almost every one, on the ones that are going to trial
17    on January 29, my recollection -- I don't want to
18    mess up our record, but we went very carefully
19    through that the Government was not going to try to
20    get any of those acts in as 404(b) evidence.
21              MS. ARMIJO:  Correct.  And so -- but I was
22    just trying to say that what we're dealing with now
23    is just 609.  But --
24              THE COURT:  609 is only being admitted for
25    impeachment purposes if they take the stand for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5889

1   truthfulness.  In fact, it can't be used as 404(b)

2   for -- well, it can't be used as 404(b) evidence.

3            MS. ARMIJO:  Correct.

4            THE COURT:  In fact, I think they're

5   entitled to a limiting instruction that it could only

6   be used to determine their credibility.

7            MS. ARMIJO:  Correct, Your Honor.  And I

8   just want to make clear that there may be some of

9   these that the defense may want sanitized, that we --

10  and I know, specifically, like for instance, for

11  Mr. Garcia, there are some that Mr. Castellano went

12  over saying that we would be using.

13           But that's why -- what I will file -- and

14  if they want to see specifically what we're looking

15  at, they can certainly reach out to me and I can show

16  them -- but I will file an amended notice with the

17  individual ones.

18           THE COURT:  All right.  So the Government

19  is going to file a notice that will have -- a written

20  notice that will provide all the convictions that

21  they are going to use that are after 10 years.  And

22  that 10 years runs from the release from confinement.

23  But then that doesn't preclude the parties from

24  sitting down and seeing if I can address any issues

25  that might be coming in about those.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5891

1           Is that everybody's understanding and

2   agreement?

3           MR. VILLA:  Your Honor, if I could have a

4   minute?

5           THE COURT:  Okay.  Take your time.

6           MS. ARMIJO:  Your Honor, I believe that the

7   defense is requesting that maybe I not file that, if

8   they withdraw their objection to what I filed before.

9   Because the defense did not file for our witnesses, a

10  609, and I believe that it's an issue that Mr. Villa

11  is proposing.

12          MR. VILLA:  So, Your Honor, I was going to

13  file -- I was tasked with filing a joint one for the

14  Trial 1 defendants, just on the older than 10 years.

15  And rather than both sides burying ourselves in

16  paperwork --

17          THE COURT:  Let me make sure I understood

18  what -- you were going to file one that excluded any

19  convictions beyond 10 years?

20          MR. VILLA:  No, no.  For the cooperating

21  witnesses who are testifying, that was putting the

22  Government on notice that we would use some that were

23  older than 10 years.

24          THE COURT:  All right.

25          MR. VILLA:  So like I say, I'm trying to

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 5891

 1   strike a deal, I guess, with the Government that they

 2   don't have to file one if we don't have to file one.

 3   And if there are issues with specific exhibits or

 4   redactions, things like that, we can try to work

 5   those out ahead of time.  But rather than bury

 6   ourselves in paperwork for the cooperating witnesses

 7   and the five defendants --

 8           THE COURT:  Are you comfortable with this,

 9   Ms. Sirignano?  Mr. Villa is suggesting that since

10   the defendants were about to file a motion saying

11   they're going to use convictions that are more than

12   10 years old against all the cooperators, rather than

13   y'all having to list out all the convictions, and the

14   Government having to list out all their convictions,

15   everybody just agree -- everybody has got notice --

16   nobody will have to file any notice, and then

17   everybody will sit down and try to sanitize it.  And

18   if you can't agree on it, then you'll bring it to me?

19           MS. SIRIGNANO:  That works for me, Your

20   Honor.

21           THE COURT:  All right.  Does that work for

22   you, Ms. Armijo?

23           MS. ARMIJO:  Yes, that's fine.

24           THE COURT:  All right.  So it works for the

25   Government.  Is there anybody that doesn't work for?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5892

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5893

1  So you're giving up your notice requirements on both

2  sides for a 609(b)(2) notice of an adverse party.  Is

3  there anybody that's not comfortable with that?

4  Everybody agrees with that.  So that requirement is

5  then waived.  I'll let y'all work on that for a while

6  and see if you can sanitize the 609.  And if you

7  can't, then I'm available to give a ruling on that.

8          All right.  If I understand -- oh, there is

9  my little chart.  If I understand the next issue that

10 we're taking up is number 9, which is the opposed

11 motion in limine to exclude co-defendant statements,

12 which is resuming the James-related hearings.  So I

13 need to be educated on where we are on the James

14 hearings, and what else needs to be done on that

15 issue.

16          Mr. Castellano, do you want try that?

17          MR. CASTELLANO:  I can try.  I think the

18 Court is going to educate us on its ruling.  I'm not

19 sure where that puts us right now with James and the

20 motion.  What number is the motion, Your Honor?

21          THE COURT:  Well, I thought that the way we

22 left the James hearing is that I was satisfied that

23 the Government had established all the elements of

24 the James hearing for the materials that I saw.  I

25 invited the defendants, if they felt like there was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5893

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 130 5894

1    something I needed in particular to look at, to do

2    so.  We took a few of those.  I made some

3    particularized rulings on some evidentiary matters.

4    But I am putting an opinion together to indicate that

5    I think that the Government has met all the

6    standards, the materials that are in the boxes of

7    James materials that we went through.  I'm satisfied

8    with it.  But I also advised the defendants, if they

9    felt I overlooked something on some particular

10   statements, I would reconsider those.  And we took a

11   few of those, I cut back a few of those on the

12   record.  But I think, unless somebody has anything

13   they want me to take a special look at, I tried to

14   stare at these statements as much as I could.  And it

15   seemed to me that they were coming in.  So I'm

16   available, if the defendants, particularly the five

17   that are going to trial, if you've got something

18   special you want me to say that shouldn't be coming

19   in because of -- it's not in furtherance or something

20   that you want me to take a special look at, we'll

21   take a look at it, and I'll give you a ruling on it.

22   I think we did two or three of those.  But I haven't

23   heard any more.

24              So anything else on the James hearings, Mr.

25   Benjamin?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5894

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131895

1          MR. BENJAMIN:  Your Honor -- and I just

2    approached the Government, and I was understanding

3    they were going to provide us --

4          THE COURT:  Say that again.

5          MR. BENJAMIN:  This just deals mainly with

6    Group 2's James hearings, Your Honor.  I understand

7    there was an agreement.

8          THE COURT:  There was.

9          MR. BENJAMIN:  So the Court is not

10   inquiring into that?

11         THE COURT:  I wasn't.  Y'all have a special

12   deal, in the sense that you're going to get a written

13   document, if I understand it correctly, that sets out

14   the statements.  So what we did orally here in court,

15   with witnesses, subject to cross-examination, you're

16   not going to get that first.  You're going to first

17   get the written statements.  And I think, after that,

18   it's fluid.  We may have a James hearing, and maybe

19   everybody is comfortable with it.  But you're going

20   to get something that the first group didn't get, but

21   the first group immediately got a witness.  Is that

22   your understanding?

23         MR. BENJAMIN:  I understand.  That is, Your

24   Honor.  The Court was getting a little broader.

25         THE COURT:  That's true.  I think we better



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132

```
 1    focus right on the moment to take care of the five
 2    that are going to trial on the 29th.
 3            So why don't we do this.  Let's go ahead
 4    and take our lunch break.
 5            Did you want to say something, Ms. Jacks?
 6            MS. JACKS:  I did, Your Honor.  I just
 7    wanted to make sure I alerted the Court, we've been
 8    work jointly on a filing which we were all reviewing
 9    and finalizing yesterday.  I filed it yesterday
10    evening.  And it does, in writing, spell out our
11    arguments as to very specific issues that the James
12    hearing brought up.  And I think it's Document 1616.
13            THE COURT:  Yeah, I was given it today.  I
14    haven't had a chance to look at it.
15            MS. JACKS:  It might make sense for us to
16    talk to you about that.  And I think it answers -- or
17    at least has our view on some of the questions you
18    raised this morning, but after you've had a chance to
19    review it.
20            THE COURT:  Yeah.  Let me see what I did
21    with it.  I brought it to the bench, but -- what's
22    the number again, Ms. Jacks?
23            MS. JACKS:  I think it's 1616.  That's
24    correct.
25            THE COURT:  Well, I'll find it.  And --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5896

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

```
 1    here it is.  I think I put it in the back.  No -- did
 2    you say 1616?  All right.  So I do have it.  It was
 3    given to me this morning.  It was kind of
 4    mid-morning, so I haven't had a chance to look at it.
 5    But you think this is the time to take this up as we
 6    bring the James materials to a conclusion?
 7              MS. JACKS:  I'm happy to, and ready to.
 8              THE COURT:  Do you think this is the best
 9    time?  I was putting it at the back, but if this is
10    part of the James hearing, I'm glad to take this up
11    now.
12              MS. JACKS:  I'll do it in whatever order
13    the Court wants.  I'm not sure if there is additional
14    statements the Government wants to offer.  I think,
15    at least our filing probably covers the issues with
16    any statements.
17              THE COURT:  All right.  Well, let me take a
18    look at this during the lunch hour.  And we'll come
19    back and then we'll decide whether we're going to put
20    this at the bottom of the hearing or we're going to
21    take it up now in conjunction with the James hearing.
22              All right.  We'll see you in about an hour.
23              (The lunch recess was held.)
24              THE COURT:  All right.  It looks like
25    everybody has counsel.  Look around, make sure I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5897

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

```
 1   not overlooking somebody.  It looks like everybody

 2   has got counsel.

 3           All right.  Let me do a few things for the

 4   record.  First of all, in the hearing we just

 5   completed on the two motions that Mr. Baca filed, in

 6   sort of getting things organized, it doesn't appear

 7   there was an Anthony Baca Exhibit C, so we just

 8   skipped one.  So I'm going to put a blank page in the

 9   exhibit numbers that it was skipped in error.  But

10   for the record, there is no Exhibit AB, Anthony Baca,

11   C.  But that is --

12           MR. LOWRY:  That was my understanding.

13           THE COURT:  Does that comport with yours as

14   well?

15           MR. LOWRY:  Yes, Judge.

16           THE COURT:  A little bit for planning

17   purposes, I understand Mario Montoya is not going to

18   be here till tomorrow, so everybody will be here

19   through tomorrow.  And I'm going to delay probably

20   until the end of the hearing going over all the

21   mechanics that I have worked out with the marshals.

22           Is Mick going to be here tomorrow?

23           THE MARSHAL:  No.

24           THE COURT:  Then I'll just put those on the

25   record and we'll see if there is any differences
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5898

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

```
 1   between what I'm stating and Ms. Wild and I
 2   understand, and what the marshals understand.  So
 3   we'll go through that before we leave here tomorrow.
 4   But I'm going to push that to the end.  If we run out
 5   of time today, for some reason, we will advance it.
 6   But, otherwise we'll plan on that being the thing we
 7   do when we leave here.
 8            I did have a chance to look at the Document
 9   1616.  I read it a little faster than I like to read
10   it, to make sure I got it read.  But I have the gist
11   as to what many of the things are.  So I have a sense
12   of some of the issues.
13            And I have been working with -- I believe
14   it's Government's motion 1594.  So I'm working
15   through those issues which the Government filed on
16   December 21.  I think I may cover some of those in
17   what I'm about to say.
18            So let me give you my thoughts on sort of a
19   basket of issues and, then we'll figure out where
20   we're going to go then with the James hearing, or
21   whether we want to move on to Defendants' 1616, or
22   how we want to proceed.
23            I know the defendants are raising the issue
24   that some of these statements are testimonial.  And I
25   understand you need to do that.  That's probably
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136900

```
 1    going to be an appellate issue if there is
 2    convictions here.  But for purposes of the trial,
 3    I'll take a harder look at what's in the recent
 4    filing, and you'll be able to say whatever you want
 5    to say for the record here before you leave.
 6            But I'm still inclined to find that the
 7    out-of-court statements that are at issue here are
 8    nontestimonial, so that their admissions do not
 9    offend the Confrontation Clause.  The Confrontation
10    Clause does not require the exclusion of out-of-court
11    statement if that statement was nontestimonial --
12    using the most current Supreme Court definition,
13    which the defendants are using in their 1616 --
14    "i.e., the question is whether, in light of all the
15    circumstances, viewed objectively, the primary
16    purpose of the conversation was to create an
17    out-of-court substitute for trial testimony."  And
18    much of that comes from Michigan versus Bryant.
19            Then, a little later in Clark, the Supreme
20    Court said, "The primary purpose test is a necessary,
21    but not always sufficient, condition for the
22    exclusion of out-of-court statements under the
23    confrontation clause."  Although, the Supreme Court
24    "refers to interrogations" and the primary purpose of
25    an interrogation, "it is in the final analysis" --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   and I'm quoting Washington v. Davis here -- "it is in

2   the final analysis the declarant's statements, not

3   the interrogator's questions, that the confrontation

4   clause requires us to evaluate."  822 Note 1.

5   "Accordingly, statements made unwittingly to a

6   government informant and statements from one prisoner

7   to another are nontestimonial."  I think that's the

8   holding of Smalls, page 777.  And under this rubric,

9   most of the statements that the United States

10  identified are testimonial so the Confrontation

11  Clause permits their admission even if the declarants

12  are not subject to cross-examination."

13          Now, Perez' statements to Sergeant

14  Palomares and Deputy Warden Mulheron as part of the

15  Molina murder investigation were testimonial,

16  however, so the United States cannot use those

17  statements for their truth unless Mr. Perez

18  testifies.

19          Rule 801(d)(2)(E) -- let's talk about the

20  co-conspirator exception.  It applies to the

21  out-of-court statements at issue that were made

22  before the object of the relevant conspiracy was

23  accomplished or became impossible.  Rule 801(d)(2)(E)

24  means that a statement, quote, "offered against an

25  opposing party and was made by the party's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5901

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5902

1   co-conspirator during and in furtherance of the

2   conspiracy" is not by definition hearsay.  So it's

3   not an exclusion.  It's a definitional consideration

4   in determining whether it's even hearsay.  "The

5   statement must be considered, but does not by itself

6   establish the existence of the conspiracy or

7   participation in it."  That, again, comes out of the

8   rules.

9           And then, whether a particular defendant

10  was a member of the conspiracy and whether a

11  particular statement was made during and in

12  furtherance of that conspiracy is a question of fact

13  to be determined by a judge by a preponderance of the

14  evidence.  That's Bourjaily and then also 104(a)

15  where "the Court must decide any preliminary question

16  about whether evidence is admissible."  To qualify

17  under Rule 801(d)(2)(E), a statement needs to be made

18  by a co-conspirator, but it need not be made to a

19  co-conspirator.  That's the holding of Williamson

20  from the Tenth Circuit.

21          Likewise, a statement needs to be made,

22  from the perspective of the declarant, in furtherance

23  of the conspiracy, but it does not need to, in fact,

24  further the conspiracy.  Again, that's what

25  Williamson said.  Thus, a statement made by a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5902

 1   co-conspirator to a confidential human source can

 2   qualify as a statement in furtherance of a conspiracy

 3   even though a confidential human source -- as a

 4   government agent -- cannot qualify as a conspirator

 5   under federal law, and even though a statement to a

 6   confidential human source likely hinders conspiracy.

 7   A co-conspirator statement under Rule 801(d)(2)(E)

 8   must be made while the conspiracy persists.

 9   According to the Supreme Court, a co-conspirator's

10   statement, made after the central aim of the

11   conspiracy's accomplishment or failure is not made

12   during and in furtherance of the conspiracy.  And

13   that goes all the way back to Krulewitch.  "This

14   hearsay declaration, attributed to a co-conspirator,

15   was not made pursuant to and in furtherance of

16   objectives of the conspiracy charged in the

17   indictment, because if made, it was after those

18   objectives had either failed or had been achieved."

19          Then the Tenth Circuit has said in Alcorta,

20   "To be sure, to qualify for the co-conspirator

21   exception a statement must have been made during the

22   conspiracy.  Statements made after the objectives of

23   the conspiracy have either failed or been achieved or

24   not made during the conspiracy must be excluded."

25   That rule makes sense because "there can be no

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5903

1    furtherance of a conspiracy that has ended."

2    Moreover, once the "central criminal purposes of a

3    conspiracy have been attained, a subsidiary

4    conspiracy to conceal may not be implied from

5    circumstantial evidence showing merely that the

6    conspiracy was kept a secret and that the

7    conspirators took care to cover up their crime in

8    order to escape detection and punishment."  The

9    Supreme Court has emphasized the "vital distinction

10   between acts of concealment done in furtherance of

11   the main criminal objective of the conspiracy, and

12   acts of concealment done after these central

13   objectives have been attained, for the purpose of

14   covering up after the crime."  That's Grunewald,

15   that's Harlan's case in 1957.

16           In the former case, "acts of concealment

17   are in furtherance of the objectives of the

18   conspiracy itself," whereas, "in the latter case the

19   acts of covering up can by themselves indicate

20   nothing more than that the conspirators do not wish

21   to be apprehended -- a concomitant, certainly, of

22   every crime since Cain attempted to conceal the

23   murder of Abel.

24           The United States has identified two

25   distinct conspiracies for 801(d)(2)(E) purposes.  The

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5904

```
 1    first corresponds to Counts 6 and 7 of the

 2    indictment, the Molina murder.  The central aim of

 3    that conspiracy was accomplished with Molina's death

 4    on March 7, 2014.  And I take that right out of the

 5    indictment.

 6              The second corresponds to Counts 9 and 10

 7    i.e., the conspiracy to murder Marcantel and

 8    Santistevan.  The United States has neither

 9    identified nor proved a third conspiracy to conceal

10    the first two.  That multiple SNM members attempted

11    to conceal SNM crimes does not permit the Court to

12    infer that those SNM members formed an agreement,

13    tacit or otherwise, to conceal those crimes.  Alcorta

14    says, "stating that a conspiracy requires an

15    agreement with another person to violate the law."

16    Accordingly, statements that were made after those

17    conspiracies were complete, such as Mr. Perez'

18    recorded statements, do not qualify as co-conspirator

19    statements under Rule 801(d)(2)(E).

20              Contrary to the United States' suggestion

21    that the indictment alleges VICAR violations, some of

22    which are based on conspiracy offenses, does not

23    alter the scope of the conspiracies.  On page 8, they

24    argue that Mr. Perez' statements were in furtherance

25    of the conspiracy, even though they occurred years
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5905

1    after the Molina murder, "because the conspiracy is a

2    VICAR conspiracy to murder, which includes as an

3    element that it was done in furtherance of or to gain

4    some type of benefit from the SNM Gang," so Mr.

5    Perez' statements claiming credit in the Molina

6    murder, "thus, further his standing in the SNM and

7    the VICAR conspiracy to murder."  That conspiring to

8    commit murder, quote, "for the purpose of gaining

9    entrance to or maintaining or increasing position in

10   an enterprise engaged in racketeering activity"

11   violates VICAR is immaterial for Rule 802(d)(2)(E)

12   purposes.  And I think that follows from Section 1959

13   of the code.  The inquiry under Rule 801(d)(2)(E) is

14   whether a statement was made during, in furtherance

15   of a conspiracy, but a VICAR violation is not,

16   itself, a conspiracy even though it may have a

17   conspiracy as its underlying offense.

18            So I hope those will stand as rulings of

19   the Court unless further arguments persuade the Court

20   otherwise.  But I'm inclined to go with those.

21            Given those, where are we on the James

22   hearings?  What further guidance do the parties need

23   on any particular James or any other particular

24   evidence?

25            MR. CASTELLANO:  Your Honor, I noticed the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5906

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43907

1  two things.  I think it may be Count 8, there is

2  another conspiracy regarding Julian Romero.  I think

3  the Court's ruling --

4           THE COURT:  It was, yeah, you're right.

5           MR. CASTELLANO:  I think the Court's

6  rulings will cover that.  I don't think the Court

7  needs to make additional findings.

8           THE COURT:  Well, I made them on the record

9  when we did it.

10          MR. CASTELLANO:  Correct.

11          THE COURT:  I didn't remember it today,

12  yeah.

13          MR. CASTELLANO:  The other question I had

14  was just regarding Mr. Perez' statements.  He had

15  some statements that related back to the time of the

16  event.  It was basically like a flashback.  So the

17  only question I had was whether or not the statements

18  he recalls as having happened at the time of the

19  Molina murder, or leading up to it, whether those --

20          THE COURT:  The way I would analyze that is

21  at the time he made those statements, yes, they're a

22  flashback.  He's talking about the statements.  You

23  can get those statements in through some other

24  source, and that he made them at the time, or that

25  they were made at the time, but that he's not making

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5907

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143908

1    those statements to Mr. Cordova at the time that

2    he -- at the time he made them to Mr. Cordova he's

3    not making them in furtherance of the conspiracy.

4            So I think, bottom line, most of what he's

5    going to be saying -- that's the reason I started

6    where I did this morning -- was I think, you know,

7    they can come in against him, because he's a party

8    opponent.  But I'm going to have to tell the jury for

9    the next however many times, however long it's going

10   to take for us to play the Cordova material, that in

11   the recitation of what Mr. Perez told Mr. Cordova,

12   that they cannot consider those statements in

13   determining the guilt of the other four defendants.

14           Anything else from the Government?

15           MR. CASTELLANO:  No, sir.  Thank you.

16           THE COURT:  All right.  From the

17   defendants?

18           Ms. Jacks, do you want to take over and

19   start putting up particular pieces of evidence that

20   we can get rulings on, so that -- clarity -- do you

21   want to push that down the road?  What would you

22   like?

23           MS. JACKS:  What I'd like to do is talk

24   about what you wanted to talk about this morning.

25           THE COURT:  Okay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5908

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145909

```
 1              MS. JACKS:  Which was whether Bruton still
 2    has any sort of basis, I guess, really whether a
 3    limiting instruction is sufficient in the situation
 4    where the statements are nontestimonial.  And I'm
 5    accepting for the sake of this argument the Court's
 6    indication that you are going to apply the Smalls
 7    test, and rule that the statements at issue here are
 8    nontestimonial.
 9              We've tried in our brief to argue why that
10    test has evolved and is somewhat different, and that
11    the Smalls test only looks at one aspect of
12    determining whether a statement is testimonial, and
13    that that definition has broadened since then.  Let's
14    just assume that the Court is finding that the
15    statements are nontestimonial, and want to go to
16    Bruton.
17              Because I went back over the holidays and
18    reread Bruton and the related cases.  And it had been
19    a long time since I looked at them.  And I guess the
20    best way that I would like to, at least give the
21    Court my interpretation is, it seems to me, Bruton
22    really stands on two constitutional legs, one being
23    the Sixth Amendment Confrontation Clause, and the
24    other being the Due Process Clause.  You have either
25    the Fifth or Fourteenth Amendment.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5909

```
 1              And the reason I feel like that's true, is
 2    that Bruton relied heavily, the opinion relied
 3    heavily on Jackson v Denno.  And that was the case
 4    that really started all of this.  And that was
 5    founded on the Fourteenth Amendment right to due
 6    process.  And as I'm sure the Court remembers,
 7    Jackson v. Denno is the case where, in New York
 8    State, the judge basically had to let any sort of
 9    confession go to the jury.  And the jury was told:
10    You decide if it's voluntary or involuntary.  And if
11    it's involuntary, just ignore it.  And this Jackson
12    v. Denno, the Supreme Court said, Look, jurors can't
13    do that.  How can we expect somebody to ignore an
14    involuntary confession, and there is no guarantee
15    that the defendant is not being convicted on evidence
16    that's inadmissible.
17              And I think Bruton really -- in Bruton, you
18    look at the Supreme Court's opinion, and they really
19    relied on an opinion by Justice Traynor in the
20    California Supreme Court that took that language from
21    Jackson v. Denno, and said:  You can't have evidence
22    against a defendant that is a confession that
23    implicates him from a nontestifying co-defendant.
24              So I really think Bruton has a due process
25    leg and a confrontation leg.  And so, if you take
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that confrontation leg and say that's cut off by
 2    Crawford, and by the fact that now we have sort of a
 3    new Sixth Amendment analysis, I don't think that
 4    means that Bruton means nothing anymore.  And I
 5    would -- well, and I think what the issue becomes is
 6    whether the evidence, even if it's nontestimonial, is
 7    of the type like the Court --
 8              THE COURT:  Well, you would agree that it's
 9    not overruled.  I mean, we both agree that Bruton is
10    not overruled because it still applies to testimonial
11    statements.  So that makes it alive and well.
12              MS. JACKS:  Yes.
13              THE COURT:  It's just more narrow than
14    maybe anybody supposed before Crawford?
15              MS. JACKS:  And I guess I would also say
16    that, I think there is still a very valid argument
17    that it's alive and well, insofar as that part of its
18    rationale behind the holding was based on due process
19    rights.  And I don't see that Jackson v. Denno has
20    been overruled.  So I think it's still good law, that
21    yes, there are situations where evidence that's
22    admissible against one defendant could be so
23    overwhelmingly prejudicial to another defendant that
24    it's not admissible against, that you can't just give
25    a limiting instruction to cure the problem.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5911

1           So that would be -- so I would urge the

2    Court to look at the cases and the Fifth and

3    Fourteenth Amendment due process analysis in trying

4    to decide whether some of these statements that are

5    coming in against one defendant, as an admission are

6    overwhelmingly prejudicial to other defendants.

7           THE COURT:  What did you think -- because,

8    in some ways, you probably sense you're speaking a

9    little bit to the choir here in my remarks this

10   morning.  But the thing that -- I still think that it

11   would -- if I were to go your direction and the

12   Government would appeal, I guess I'm concerned as to

13   what the Government would say about the Tenth

14   Circuit's opinion in Clark, those four words that I

15   am focusing a great deal on that -- concluding that

16   nontestimonial statements, quote, "fall outside the

17   protective ambit of the Confrontation Clause."  I

18   think we agree on that.  And then those four words

19   "and by extension Bruton."

20          MS. JACKS:  Well, my answer to that would

21   be Jackson v. Denno.  My answer to that would be --

22          THE COURT:  But you've got to understand --

23   I mean, you know, what do I do as a district judge?

24   I mean, you and I can have an academic discussion as

25   to whether Clark is overreading or limiting Bruton

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5912

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 149

```
 1   too much.  But don't we have to take it as what we

 2   have to try this case under?

 3            MS. JACKS:  Well, I think it certainly

 4   didn't overrule existing Supreme Court precedent.

 5   And so I don't see -- and it doesn't seem like it

 6   considered that exact argument as to whether there

 7   was a leg of Bruton that was grounded in due process.

 8   So I think there is a way to find your decision --

 9   ground your decision on law that is, in fact,

10   consistent with the Tenth Circuit's opinion in Clark.

11            THE COURT:  Okay.

12            MS. JACKS:  I mean, I think what happens is

13   a lot of times courts, appellate courts, are

14   considering issues, and make statements, when they're

15   not really considering all the options of -- they're

16   considering the issue before it and not other

17   renditions of the same or similar issue.  And I

18   think, until Crawford was decided, I don't think

19   people were acknowledging or discussing the two

20   foundations of Bruton.

21            THE COURT:  I'll have to stare at this

22   Fifth Circuit case that I mentioned this morning a

23   little bit more tonight.  Other than the Fifth,

24   possibly, and maybe not even the Fifth, every court

25   of appeals, to my knowledge, has held just what the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5913

 1    Tenth has, that Bruton is just not a consideration

 2    once you get -- once you find that it's

 3    nontestimonial.

 4              MS. JACKS:  And I would say this is an

 5    issue, I think, that's in litigation around the

 6    country in the courts of appeals right now.  I mean,

 7    I spent time reading about this, and thinking about

 8    this over the holiday.  Come to find out, on Thursday

 9    evening, before I left to come out to New Mexico,

10    that this is an issue that going to be debated in a

11    death penalty appeal tomorrow in the Ninth Circuit.

12    So I think it's an issue that is coming up and is the

13    subject of litigation now, because Crawford changed

14    the landscape of the Sixth Amendment analysis.

15              The other thing, in thinking about this --

16    and I mean, this issue is complex.  Most of the cases

17    that you read deal with state court prosecutions that

18    are relatively simple, two or three defendants.  Not

19    these types of charges we have here, which are

20    federal offenses, that have a lot of different

21    elements beside just the crime of violence.

22              And one of the things that -- and I think

23    we tried to brief this -- that came up, is there is

24    kind of a tension in this case between Counts 6 and 7

25    and Counts 9 and 10, in the sense that there is two

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5914

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

```
1    conspiracies.  So just to try to lay out what I see
2    as the real difficult problem to deal with is all the
3    co-conspirator statements or the alleged
4    co-conspirator statements that the Court may say are
5    in furtherance of the Counts 9 and 10 conspiracy to
6    murder Santistevan and Marcantel, off of those
7    statements, all of that proof is hearsay as to every
8    other -- besides Mr. Baca, hearsay as to every other
9    Molina defendant.  And yet, the Government is relying
10   on that, or at least I've heard them say they're
11   relying on that to prove an element of the VICAR
12   offense that the SNM was engaged in racketeering
13   activity.
14            So they want it to apply, because that's an
15   element of the offense.  But yet, they're using their
16   inadmissible evidence to attempt to prove the
17   racketeering.
18            THE COURT:  You and I will have to work
19   hard to tell the jury what doesn't apply.  Then the
20   Government has got to sit here and make a decision as
21   to whether they still want to try all this stuff
22   together, or they feel like they're getting trimmed
23   back so much of their evidence, that they don't want
24   to try these together.  But right at the present
25   time, you and I are just going to have to work real
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152

```
 1   hard to make sure we tell the jury:  You can consider
 2   it for this, but not for that.
 3           MS. JACKS:  Again, I hear the Court's
 4   solution.  I think, given the complexity of the
 5   problem, and the fact that the whole problem repeats
 6   itself, at least as to Christopher Garcia, when
 7   you're talking about all the evidence of the Molina
 8   conspiracy being used to prove an element of his
 9   VICAR offenses, that the SNM was engaged in
10   racketeering activity.
11           So as I think we said in our pleading, it's
12   a tangled web of limiting instructions that I think
13   you and I and the rest of the lawyers in this case
14   are going to have a problem even writing them.
15           I can only imagine how the jurors are going
16   to feel when they're being asked to apply them.
17           THE COURT:  Well, here's the problem,
18   though.  We are focused, properly so, on a discrete
19   body of evidence.  It's very important to both sides
20   of the case, and we're going to focus on it and get
21   it right.  But my sense is, when I think about this
22   trial, when I think about it and what it's going to
23   look like, after the Government sort of gave us an
24   outline of how they're going to try this case, I
25   would think that there is going to be the great bulk,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5916

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 153

1    the great majority of this case is going to be

2    evidence that they're going to put on the enterprise,

3    in furtherance of the activity, that's not going to

4    implicate these hearsay exceptions.

5            Now, they're going to try to get a lot of

6    stuff through these exceptions.  And that's where

7    we're trimming them back.  But I still think that the

8    great bulk of their case is going to be people

9    sitting in that box right there testifying day after

10   day about an enterprise and about the crimes

11   committed in furtherance of it, so that when we

12   finally get to these limiting instructions and this

13   particular evidence, they may get their wings clipped

14   as to what they can get through in some of the more

15   sexy stuff.  But the great bulk of it is going to be

16   applicable to all five defendants.

17           Do you sit and think about this case

18   differently than what I just envisioned?

19           MS. JACKS:  I do.  I guess I want to go

20   back to your initial assumption, take us back for a

21   second.  Because I recall that when we moved for

22   severance of the Molina counts from the other counts,

23   the Government's point was, Oh, no, we need to have a

24   joint trial because we need to be able to prove the

25   racketeering activity.  And the racketeering activity

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5917

1    in Counts 9 and 10 is admissible against all

2    defendants.  And I guess, vice verse, the

3    racketeering activity of 6 and 7 is admissible

4    against all defendants.

5            THE COURT:  I think that's true.

6            MS. JACKS:  Now, I think we're at a point

7    where a huge, if not all of the Government's evidence

8    as to Counts 9 and 10 is inadmissible hearsay as to

9    the defendants that are only charged with the Molina

10   homicide.

11           THE COURT:  You may have a better sense of

12   that, and you may be right.  I have a hard time

13   figuring out what else they have.  But my sense is

14   that they have an arsenal, that we're focusing on

15   this, and rightly so, they have a lot more that we're

16   going to put out there that is not dependent upon a

17   co-conspirator statement, or is some other hearsay

18   exception.

19           MS. JACKS:  My impression is that, with

20   respect to perhaps the Molina homicide, that might be

21   the case, because there is very few -- there are not

22   as many co-conspirator statements, and there is other

23   evidence.

24           But I think, with respect to Counts 9 and

25   10, almost all of the Government's proof, at least

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5918

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155919

1    from my perspective -- I don't know what other people

2    think -- but from my perspective is going to be the

3    letters from Roy Paul Martinez and Robert Martinez,

4    and the conversations with Mr. -- the conversations

5    of various defendants with Eric Duran and Mario

6    Montoya.

7              It's a conspiracy to murder.  I mean, the

8    crime never actually happened.  So they don't have,

9    you know, the things I don't think other than that.

10             So my point, I guess, is simply that the

11   whole justification for a joint trial has been this

12   cross-admissibility of evidence related to all the

13   charges.  And now we're at a juncture where that

14   doesn't really seem like that's the case.

15             THE COURT:  What is wrong with Duran --

16   maybe I just haven't thought that through -- what's

17   the problem with him being in the co-conspirator

18   exception?

19             MS. JACKS:  No, my point about Duran,

20   assuming for the sake of argument, that Duran -- the

21   statements of Baca and Garcia and others to Duran are

22   statements of co-conspirators within the course of

23   the Santistevan and Marcantel conspiracy conspiracies

24   to commit murder.  Okay.  I mean, that's fine.

25             But I represent Mr. Sanchez.  He's not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5919

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156 5920

 1   implicated in that at all.  He's not a co-conspirator

 2   to those conspiracies.  So that evidence is

 3   completely inadmissible.  I mean, there is not a

 4   shred -- if it's not admissible to prove a

 5   racketeering activity, and he's not a co-conspirator,

 6   it's absolutely irrelevant to his prosecution.  And

 7   so if it's very damaging, prejudicial evidence.  And

 8   it's -- the basis for the joint trial has been the

 9   idea that the evidence of Counts 9 and 10 is going to

10   be used towards the Counts 6 and 7 defendants anyway.

11   So it just seems like we're going in circles.

12            THE COURT:  It's going to be hard.

13            MS. JACKS:  I guess, before -- I think

14   maybe I touched on everything that the Court was

15   discussing this morning.

16            I do just want to make a comment about

17   Smalls and about the current testimonial versus

18   nontestimonial distinction.  Because the language

19   that's quoted all the time from Smalls is this

20   unwitting statement to a fellow inmate.

21            And I think that what we have here, or

22   what's developed over the course of these past few

23   days of hearings, is that Mr. Perez' statements to

24   Billy Cordova -- first of all, that comment really

25   focuses only on the declarant's state of mind.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5920

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157 5921

```
 1    the current test under Michigan v. Bryant, is you

 2    have to look at all the circumstances.  The most

 3    important factor is whether the statements were given

 4    to police, or an agent of law enforcement in response

 5    to an emergency.

 6            But then, the Supreme Court also said:  You

 7    have to look at the actions and statements of both

 8    the declarant and the person that the declarant's

 9    making the statements to.  And that Smalls test

10    really focuses only on:  What did the guy who was

11    making statements think?  He didn't know he was

12    talking to a government agent, so, therefore, it's

13    nontestimonial.

14            And I think what Smalls is lacking, or

15    where the analysis has progressed since Smalls, is to

16    looking at the intent and the actions of both the

17    declarant and the person that the statements are made

18    to.

19            THE COURT:  I guess that's where I'm just

20    not seeing that it's advanced to that.  They're still

21    focusing on the declarant there.  The statements that

22    are being made.  I read that with care, and I'll give

23    it some thought.  But I guess I'm not seeing that

24    Bryant and Clark move us to undermine Smalls.

25            MS. JACKS:  That's maybe a different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5921

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158

```
 1    conclusion, I think, than the one I'm making.  But I
 2    do think that Bryant -- Smalls was decided before
 3    Davis.
 4              THE COURT:  Yes.
 5              MS. JACKS:  And then -- and -- or no, wait,
 6    let me say that again -- just after Davis.
 7              THE COURT:  Yeah, and before Bryant and
 8    Clark.
 9              MS. JACKS:  Right.  And Smalls was looking
10    at the previous Tenth Circuit test, and realized
11    that, well, there is some tension between this and
12    Davis, but we're not going to just drop the test.
13              And I think what the Supreme Court has
14    acknowledged is that Michigan versus Bryant has moved
15    the test even further away from what it was when the
16    Smalls court made its decision, and to the point
17    where I think the Smalls court's decision does not
18    consider important factors in the testimonial versus
19    nontestimonial analysis.
20              And I guess the other thing I just want to
21    point out is there is no question that Billy Cordova
22    went in there to the prison and made comments to Mr.
23    Perez, as a government agent, in an effort to gather
24    evidence for a criminal prosecution.  There is no
25    doubt.  And he was given a way to preserve that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5922

1    evidence.  And he was told what his mission was:  Get

2    statements about murder.

3         And he very, very glibly stated from the

4    witness stand that over a period of days, at least to

5    another individual, he turned the recorder off and

6    on, and warmed the guy up -- let me go back.  He said

7    that he worked a different suspect over a period of

8    days, and never turned the recorder on because the

9    guy never said anything.

10        With respect to Mr. Perez, I think he said

11   he used the same sort of tactics, but flipped the

12   recorder on and off when he got the feeling something

13   incriminating might be said.

14        So it's not a situation where you can say

15   that it was -- let me go back.  I don't think

16   statements made to what is custodial interrogation,

17   engaging someone in conversation that's reasonably

18   likely to illicit an incriminating response, I don't

19   think you can classify those remarks as an unwitting

20   statement to a fellow inmate.  I mean, that is

21   classic psychological interrogation that Mr. Cordova

22   described.  That's what he used on Rudy Perez.  And

23   Rudy Perez' statements, whatever they were, were not

24   unwitting, they were the product of that custodial

25   interrogation, along with, I think, other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5923

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5924

1   circumstances, such as the fact that he was in

2   isolation, he was unable to go to recreation, and he

3   was on heavy doses of narcotic painkillers.

4           So I think this is a unique situation.  I

5   haven't been able to find something exactly on point.

6   But I think that is a big difference between what

7   happened to Mr. Perez, and somebody sitting down at

8   the county jail bragging about a murder they did.

9           I don't have anything else.

10          THE COURT:  Okay.  All right.  Thank you.

11          Mr. Castle, you've been wanting to speak on

12  this issue.

13          Is this deja vu?  We had this conversation

14  about a year ago, didn't we?

15          MR. CASTLE:  We did.  And I'll begin my

16  comments with --

17          THE COURT:  Is it getting any better?  Like

18  wine?  Is time on your side?

19          MR. CASTLE:  I don't think so.

20          But I can say about a year ago this

21  conversation really came up in the context of whether

22  Bruton had survived.

23          THE COURT:  Well, it was the severance

24  motions, and we were -- at that time, without the

25  robust discovery we had today, we were trying to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   figure out if there were Bruton issues here that

 2   really would dictate severance along the lines that

 3   the defendants wanted.

 4          MR. CASTLE:  Interestingly enough, I went

 5   back and reviewed not only the oral litigation but

 6   the written motions.  And the Number 1 motion was

 7   Javier Alonzo's reply, which is Document 1036.  And

 8   what wasn't addressed in those pleadings was Michigan

 9   versus Bryant, or Clark versus Ohio, or the primary

10   focus test analysis as set forth in those cases.

11          THE COURT:  Well, my memory -- and you can

12   correct me if I'm wrong -- but again, that's the

13   reason I say it's deja vu, you and I were sitting

14   there going -- because, you know, I was coming out of

15   a lot of experience with Bruton, where we took the

16   paste and the scissors and we cut out those things.

17   So I was being educated on Smalls.  And we all had to

18   admit the world had moved beyond Bruton.  And we took

19   what we could.

20          If you'll go back and look at the first

21   severance opinion that I did, before I did Mr.

22   Sanchez' motion to reconsider, we took all the Bruton

23   problems we could think up at that time, and did the

24   best we could with them.  And if you go back and look

25   at that opinion, I said that certain evidence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5925

 1   couldn't come in.  So I said, okay, if the Government

 2   doesn't want to sever it any further than this,

 3   certain things are Bruton problems and got to stay

 4   out, even under Smalls.  But other things, most of

 5   it, was going to be satisfied by Smalls, because it

 6   was probably nontestimonial.

 7        MR. CASTLE:  I think that how Michigan

 8   versus Bryant, and Ohio versus Clark changed, or

 9   maybe implicitly overruled Smalls, is in this

10   fashion:  As the Court will recall, Smalls is almost

11   the identical same situation that we received with

12   Mr. Cordova and Mr. Duran.  I mean, it was an

13   informant working for the Government, sent in to the

14   prison, for the very purpose of obtaining evidence

15   that could be used at trial.

16        And I think, even this Court earlier today,

17   I think, put it best when we were talking about Eric

18   Duran -- and I wrote this down, I hope I got it

19   right -- but the Court said:  Didn't Duran risk

20   losing valuable testimony by not turning the recorder

21   on.

22        And I think that really kind of captures

23   it.  And the purpose of it was to obtain material to

24   be presented at trial.  No different than in front of

25   a magistrate.  It's just that they don't look like

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5926

1    magistrates, but they're performing the same exact

2    role.

3         In Michigan versus Bryant, the Supreme

4    Court said a statement qualifies as testimonial, "if

5    the primary purpose of the conversation was to create

6    an out-of-court substitute for trial testimony."

7    That's exactly what happened here.  When the

8    Government -- and it happens a lot now, because this

9    is a tactic that's been used more and more

10   frequently, especially in cases in which defendants

11   are in custody, prior to being charged, is that they

12   send in informants to talk to the defendants.  And

13   what is the purpose of that?  What's the primary

14   purpose?  It wasn't to have an idle conversation with

15   the guy nextdoor.  The primary purpose of the

16   conversation was -- and I use the quotes -- to create

17   an out-of-court substitute for trial testimony.

18        Ohio versus Clark also talks about that

19   same primary purpose focus.  The problem with Smalls

20   is Smalls focused only on what was the purpose of the

21   declarant in speaking to the informant.  It didn't

22   look at the purpose of the informant engaging in the

23   conversation.  And so what the Supreme Court -- Ohio

24   versus Clark very candidly states the analysis keeps

25   evolving, and it says it evolved after Davis versus

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                           e-mail: info@litsupport.com

DNM 5927

```
 1    Washington.  It evolved, and it said:  What we have
 2    to do is look at the conversation itself.  And when
 3    we look at the conversation itself, was the
 4    purpose -- did that conversation happen because it
 5    was designed to produce evidence in court?
 6              And there is no doubt -- at least -- we're
 7    not dealing with Trial 2 issues right now, but I'm
 8    putting that in the context of Trial 1 -- not because
 9    I'm arguing their case for them, but because I think
10    these issues are going to reoccur in some context in
11    Trial 2.  So, with that aside, I think that we have
12    to look at the primary purpose of it.  And the
13    primary purpose of these conversations was to produce
14    evidence to be used in court.
15              One of the other problems with Smalls is it
16    indicates that the Davis court found that, even when
17    interrogation existed, it is in the final analysis
18    the declarant's statements, not the interrogator's
19    questions, that the Confrontation Clause requires us
20    to evaluate.
21              THE COURT:  That seems like that works
22    against you.
23              MR. CASTLE:  It is, and it was a footnote
24    in Davis.
25              But then, Michigan versus Bryant, and also
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5928

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 165929

```
 1   Clark said, no, no, we have to look at the motivation

 2   of the questioner.

 3          So the reason I point this out is not to

 4   argue against my position, but to argue to the Court

 5   that something very different happened after Smalls

 6   was decided.  It was no longer the situation where,

 7   in the final analysis, only the declarant's

 8   statements, and not the interrogator's questions

 9   matter.

10          It changed.  The Supreme Court said, No,

11   we're going to look at the purpose, the overall

12   purpose, and why this statement was produced.  And

13   then, if it was for the purposes of testimony, or

14   evidence at trial, then it's Confrontation Clause

15   analysis.

16          I think, after the Court looks at

17   confrontation, then I agree with Ms. Jacks, then the

18   Court has to look at due process.  In Michigan versus

19   Bryant, the Supreme Court actually alluded to this

20   and said, "the Sixth Amendment standards are not the

21   only bar to admissibility.  And they quoted -- I

22   believe, they quoted Montana versus Egelhoff, a U.S.

23   Supreme Court case in 1996, that indicated erroneous

24   evidentiary rulings can, in combination, rise to the

25   level of a due process violation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 166

 1              Once again, to quote Perry versus New
 2    Hampshire, the Supreme Court said that "the Due
 3    Process Clause precludes evidence that is so
 4    extremely unfair that its admission violates
 5    fundamental conceptions of justice."  Our argument is
 6    that this situation does create that.
 7              Historically, the United States Supreme
 8    Court has constantly said that informants'
 9    statements, jailhouse informants' statements are
10    inherently unreliable.
11              And now we're going to take that, and we're
12    going to put a limiting instruction, to try to maybe
13    alleviate some of that.  But even the U.S. Supreme
14    Court has said constantly there is problems even with
15    limiting instructions, that there is kind of an
16    inherent weakness of those.  So we're piling on
17    inherently unreliable evidence, and we're trying to
18    cure it with imperfect limiting instructions.  And I
19    don't mean the form that it's written.  I'm talking
20    about the effect that it has on the jury.
21              Now, piled on top of that is we have a
22    VICAR prosecution here, where they're going to have
23    to prove the enterprise, the criminal enterprise.
24    And this evidence, this very same evidence that the
25    Court is going to limit, saying, you can't use it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5930

1   against this defendant or that defendant, but only

2   against that defendant, how are we going to expect

3   the jury to say, But I'm not going to use any of that

4   for the enterprise element?  That is kind of a unique

5   animal.  It's a unique animal created by the manner

6   in which the prosecution has indicted in case.

7          The next level after due process is, of

8   course, the statement against interests exception.

9   And Smalls, even if we accept Smalls, starts talking

10  about redaction, and it talks about removing parts

11  that inculpate someone else.  And I don't know if the

12  Court in its comments was thinking that we're not

13  going to do that anymore.  Okay.  Then I'll move on.

14          THE COURT:  We're not going to do it

15  anymore.

16          Now, if the Government wanted to come in

17  and say:  Look, we'll accept the burdens of Bruton,

18  and instead of limiting instructions, we'll sit and

19  cut this thing down to something that is only, for

20  example, against Mr. Perez; it doesn't implicate any

21  of the other four defendants.  And so we go back to a

22  Bruton thing.  That's one way of, perhaps, addressing

23  the issue.  I haven't thought that through.  But I

24  guess the bottom line was I was concluding the

25  statements were nontestimonial, and I was talking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 5931

```
 1   with Ms. Jacks.  When I look at Clark, Bruton is off.
 2   So that cutting and pasting we did with Bruton, we're
 3   not going to do in this trial.
 4           MR. CASTLE:  Well, but the cutting and
 5   pasting was also authorized in Williamson versus
 6   United States so I think it's continued to have its
 7   vitality.
 8           I think that can alleviate some of the
 9   concerns the defense have, but not all.  Because even
10   if it's just evidence that says Rudy Perez, a member
11   of the SNM, committed this violation, it can be used
12   by the jury for the purpose of establishing the
13   enterprise.
14           THE COURT:  I think you're right.  That's
15   the reason I'll just leave it where it is.  I'm not
16   going to go that way.
17           MR. CASTLE:  The final consideration I
18   bring to the Court is, when we're talking about
19   limiting instructions, I would point the Court to
20   Tennessee versus Street, which is 471 U.S. 409.  And
21   that was the case that said that if statements aren't
22   offered for the truth of the matter asserted, then
23   they're nontestimonial.  But there is another
24   discussion in Tennessee versus Street, which talks
25   about the limiting instructions and the vitality of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5932

```
 1   them.  And what it stated was, before you go to the
 2   point of issuing a limiting instruction to tell the
 3   jury:  Don't use this damaging evidence against a
 4   defendant, that there has to be a finding of
 5   necessity.  And in Tennessee versus Street, it said
 6   "there were no alternatives that would have both
 7   ensured the integrity of the trial's truth seeking
 8   function and eliminated the risk of the jury's
 9   improper use of evidence."  And I think Tennessee
10   versus Street is also grounds for redaction.  Because
11   redaction then makes it -- you in a situation where
12   you don't have to limit, perhaps, the use of the
13   evidence, as much as you would have to if you don't
14   redact.
15           And the final aspect of my argument -- and
16   I have to say what Group 2 is intending to do is,
17   when we get the list of the statements, we're going
18   to see which ones, if any, we have a real heartburn
19   about.  I mean, there are obviously going to be
20   statements that are clearly co-conspirator statements
21   that even I can't try to argue out of.
22           But there might be a residual, and I think
23   there will be.  We'll try to address those in a
24   written pleading.
25           So I'm cutting some of my comments short.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5933

 1    But my final comment is what Justice Toms talked

 2    about, and he's talked about it now in his dissent in

 3    Bryant, in Davis, and what he's talking about -- and

 4    no one has rejected this concept -- is the

 5    Confrontation Clause reaches and prohibits

 6    prosecutorial use of technically informal statements

 7    when used by the prosecution to evade the formalized

 8    process.  If that has vitality, that's exactly what

 9    happened here.  Instead of bringing in Mr. -- sorry,

10    I always call him "Pup," so I apologize I'm

11    stumbling.

12              THE COURT:  Baca.

13              MR. CASTLE:  Mr. Baca.  Of bringing Mr.

14    Baca into the police station and interviewing him,

15    they sent a police agent in, in the form of an

16    informant to interview him in the jail.  And it's

17    happening more and more.  It's a pattern.  And what

18    it is, is the prosecutorial's use of these informal

19    processes to avoid the actual rights of a defendant

20    in a criminal case.

21              And so, that's my last bit of discussion,

22    Your Honor.  If the Court has any questions.

23              THE COURT:  Well, we may come back to this,

24    but not at the present time.  Thank you, Mr. Castle.

25              Ms. Sirignano, you want to weigh in?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5934

```
 1              MS. SIRIGNANO:  Your Honor, it was more of
 2    a clarification than an argument.
 3              Was the Court's opinion that Mr. Duran, his
 4    statements would come in under the co-conspirator
 5    exception to the hearsay rule?
 6              THE COURT:  Well, the difference I was
 7    making between Mr. Perez' statements to Mr. Cordova
 8    is that I don't see how most of those, if any of
 9    those, statements are going to be in furtherance of a
10    conspiracy; whereas, Mr. Duran's statements were
11    contemporaneous with the conspiracy.  So it seems to
12    me that Mr. Baca was making those statements in
13    furtherance of the conspiracy.  So I'll need to think
14    specifically as to whether Mr. Duran's statements
15    come in against anybody but Mr. Baca.  But they
16    certainly come in to Mr. Baca.
17              MS. SIRIGNANO:  So you're saying -- I'm
18    sorry, Your Honor -- that Mr. Baca's statement to --
19              THE COURT:  I think so.  I think those come
20    in, because they find an exception to the hearsay
21    rule.
22              MS. SIRIGNANO:  And I would agree with
23    that.  But what about Mr. Duran's statement?  Because
24    he was a government agent, and he wasn't charged in
25    this case.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  He was not.  But, as I said in

2    my statement, you can still make statements, because

3    it's the declarant that's making the statements.  Mr.

4    Baca was making those statements at the time a

5    conspiracy existed in furtherance of the conspiracy.

6          MS. SIRIGNANO:  Correct, Your Honor.  But

7    can we focus on Mr. Duran's statements?  Because, in

8    accordance with what Mr. Castle as arguing, you have

9    to look --

10          THE COURT:  Turn that mic a little bit so I

11    can hear you better.

12          MS. SIRIGNANO:  You have to look at both.

13          THE COURT:  Well, Mr. Duran is going to be

14    here.

15          MS. SIRIGNANO:  Presumably, yes, he will be

16    here.  But I guess what I'm trying to figure out

17    here, is that there were a number of people recorded:

18    My client, Mr. Duran, Mr. Baca.  And so those

19    recordings, the jury is going to have to ascertain --

20    and the Government is going to have to provide a

21    basis of admissibility, and a hearsay exception, as

22    to how those recordings and those statements are

23    going to be used against each defendant.

24          THE COURT:  Well, I think what Ms. Jacks'

25    point was, they probably cannot be used against

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5936

```
 1    people who are not indicted in those counts as to
 2    Marcantel and that conspiracy, the Marcantel
 3    conspiracy.  And I think I agree with her.  So that a
 4    jury will have to be told that they cannot use those
 5    statements to establish enterprise, or anything else
 6    that the Government may be trying to use those for;
 7    they'll not be used.  But, as far as people in the
 8    conspiracy, I think it is different than the Perez
 9    statement or the Cordova statement, because it is in
10    furtherance.  I think it finds a hearsay exception.
11    So it will be used against those defendants in the
12    Marcantel conspiracy.  Is that clear?
13              MS. SIRIGNANO:  I agree with that, Your
14    Honor, yes.
15              THE COURT:  All right.
16              MS. SIRIGNANO:  Thank you.
17              THE COURT:  All right.  Anything else, Ms.
18    Sirignano?
19              MS. SIRIGNANO:  No, Your Honor.  Thank you.
20              THE COURT:  Let me have Mr. Lowry talk,
21    then I'll come back to you, Ms. Jacks.  I won't cut
22    you off.
23              Mr. Lowry.
24              MR. LOWRY:  I just had a point to make sure
25    I'm following this conversation correctly, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5937

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173938

```
 1   Honor.  And I think I might be speaking -- I don't
 2   want to ever try to speak for Ms. Jacks -- but
 3   following the logic you just went through with Ms.
 4   Sirignano -- and Mr. Castle raised this -- it seems
 5   to me the concern is, when Ms. Jacks argued the
 6   severance motion, the Court was very clear, Well,
 7   wait a second, the Marcantel homicide comes in as
 8   evidence of the enterprise.
 9             THE COURT:  Well, it still does.  But
10   certain evidence cannot be used against certain
11   defendants.
12             MR. LOWRY:  But then how can you use that
13   evidence of enterprise against somebody like Mr.
14   Sanchez, without using the co-conspirator statements
15   that you're not supposed to use against Mr. Sanchez?
16             THE COURT:  We'll just have to tell them
17   that.
18             MR. LOWRY:  Pardon?
19             THE COURT:  We'll just have to tell them
20   that.
21             It's hard.
22             I thought you were next, Mr. Villa.  Come
23   on up.  We'll get -- we'll let Ms. Jacks play cleanup
24   here.
25             Come on up, Mr. Villa.  Did you get new
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 175939

```
 1   glasses?
 2           MR. VILLA:  I lost a contact, so I'm
 3   wearing glasses.
 4           THE COURT:  I looked over there and didn't
 5   know who that was.
 6           MR. VILLA:  Your Honor, a couple things.  I
 7   guess it strikes me as a bit of unfairness to Mr.
 8   Perez, when the jury is going to hear his statements
 9   to Mr. Cordova.  And the bulk of those statements are
10   really talking about what else everybody else is
11   doing, right?  So he's not talking about how he took
12   pieces from his walker and he made shanks.
13           The whole line of questioning was, you
14   know, who asked him to do that?  Who came and took
15   it?  Who called the shot?  Who is running the pod?
16   So that most of Mr. Perez' statements are, of course,
17   inculpatory to him, but they're inculpatory to the
18   co-defendants, which then, we get to the limiting
19   instruction, which tells the jury -- I don't know how
20   many times, because there is a lot of statements that
21   they're going to have to hear -- just use this
22   against Mr. Perez, use this against Mr. Perez for
23   this specific count or this specific crime.  And it
24   almost is overemphasizing Mr. Perez' guilt when
25   you're telling the jury enough times in the limiting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5939

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 176

```
 1    instruction, "just use this against Mr. Perez."  I'm
 2    not quite sure how to deal with that yet.  But it
 3    seems like it's going to be a problem when we get to
 4    that part.
 5          The other issue I want to raise, that I
 6    think is related to the James stuff, is there were a
 7    couple of statements that I identified in a brief --
 8    it's 1514 -- that we argued were not in furtherance
 9    of the conspiracy.  And so I don't think there is any
10    question they occurred.
11          THE COURT:  Mr. Perez' statements to
12    Cordova?
13          MR. VILLA:  No, not Mr. Perez' statements.
14    So there are two statements we're talking about.
15          Number one is the statement we anticipate
16    Timothy Martinez to be testifying about.  He's a
17    cooperating co-defendant.
18          THE COURT:  Would I have that statement in
19    front of me?  Did I bring that briefing with me?  Let
20    me ask Ms. Wild.  Are you on the phone, Ms. Wild?
21    Ms. Wild?
22          MR. VILLA:  I could dig it up and we can
23    deal with it.
24          THE COURT:  Do I have 1514 with me?
25          THE CLERK:  I believe so.  You should.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5940

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73941

```
 1                THE COURT:  Where would it be?
 2                THE CLERK:  Give me just a second.  It
 3     would be under tab -- it should have been with the
 4     materials under Tab 8.
 5                THE COURT:  Tab 8 was the 609.
 6                THE CLERK:  Hold on.  Actually, you know
 7     what, you don't have it with you, even though the
 8     response was just filed.  I don't know that you do
 9     have it with you.  That was heard back in December.
10     You don't have it with you right now.
11                MR. VILLA:  Your Honor, Ms. Jacks has the
12     cite to the place where it came up in the transcript,
13     which we can give to you.  And I'll sort of just give
14     you the backdrop.
15                THE COURT:  Why don't you give me the
16     backdrop, then put it on the screen, and let's try to
17     get a ruling on it then.
18                MR. VILLA:  Absolutely.  So just the
19     backdrop is that there is some conversation between
20     Mr. Martinez and Daniel Sanchez about the source of
21     the shanks.  And, apparently, according to Timothy
22     Martinez, Mr. Sanchez says it came from Fat Ass' or
23     Fatso's walker.  What else is he going to do?  And
24     that's a reference to Mr. Perez.  So this, we
25     anticipate Timothy Martinez to be testifying about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5941

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178

1    the statement that Daniel Sanchez made.  So it fits

2    under -- I mean, it's not a testimonial statement.

3    But, of course, there isn't going to be an

4    opportunity for Mr. Sanchez to testify about it.

5           But the argument that we made in this

6    particular brief was primarily about whether it's a

7    statement against penal interests.

8           But the argument with respect to James is

9    that it's not in furtherance of the conspiracy.  It

10   doesn't matter, you know, when the shank is being

11   given to Timothy Martinez, it doesn't matter where it

12   came from, how it was made, who provided it to

13   further the conspiracy.

14          And the same issue arises in the other

15   statement we raise in this particular brief, and

16   that's --

17          THE COURT:  Was the statement made after

18   the Molina murder?

19          MR. VILLA:  No, it was before.  So it's

20   strictly a furtherance argument.

21          THE COURT:  And Sanchez made it to

22   Martinez?

23          MR. VILLA:  That's right.

24          THE COURT:  Do you have the statement that

25   you can put on the screen, so we can look at these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5942

```
 1   statements?

 2              MS. JACKS:  I only have the transcript on

 3   my computer.

 4              THE COURT:  What page of your brief is it?

 5              MR. VILLA:  It's on page 1 of the brief, at

 6   the very bottom.  And we're getting the transcript

 7   here set up for you.

 8              So this was brought up during the November

 9   27 to 29 period of time, when we had the James

10   hearing.  So I think, if we get the Elmo up, Your

11   Honor, this might work.  There is a bit of a glare.

12              I believe this is Mr. Acee testifying.

13              MS. JACKS:  For the record, it's November

14   27, 2017, transcript at page 164.

15              THE COURT:  Why would that not come in as a

16   co-conspirator statement that's being made before the

17   Molina murder?

18              MR. VILLA:  Your Honor, because it's not in

19   furtherance of the conspiracy.  And we cite to some

20   of that case law, both in the original James motion

21   that we -- Ms. Fox-Young filed -- as well as this

22   pleading that I referred to.

23              So the Tenth Circuit has talked about

24   statements that are not in furtherance of a

25   conspiracy when they're mere narrative statements
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5943

1   relating to past events, even those that are

2   connected with the operation of the conspiracy, where

3   the statement serves no immediate or future

4   conspiratorial purpose.  And that's from United

5   States v. Wolf, 839 F.2d 1387, Tenth Circuit case.

6          And there is sort of a string cite there as

7   well to a Ninth Circuit case, United States v.

8   Foster, 711 F.2d 871.  It stands for the same

9   proposition -- and there is a number of other cases

10  in there which I can talk about, if you'd like, Your

11  Honor -- but, you know, the Fourth Circuit, Eighth

12  Circuit, Fifth Circuit, talking about statements that

13  we think are just like this, that really don't

14  further the conspiracy.

15          THE COURT:  Well, it doesn't -- I mean, I

16  thought that's what I said Williamson said.  It

17  doesn't need to, in fact, further a conspiracy.

18          MR. VILLA:  No, I don't think it has to.

19  But it does have to meet that third prong, if you

20  will, of being in furtherance of the conspiracy to be

21  a co-conspirator statement.  So I think there is a

22  line that has to be drawn between --

23          THE COURT:  So this is the statement that

24  Mr. Sanchez (sic) said that Sanchez had obtained the

25  shanks from "Fat Ass," the nickname Sanchez used for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 181   5945

```
1   Rudy Perez?  That's the statement?
2            MR. VILLA:  That's right.  That Timothy
3   Martinez would be testifying to the declarant being
4   Daniel Sanchez.
5            THE COURT:  All right.  Unless you've got
6   something else, let me hear from the Government as to
7   how you are trying to get that in.
8            MR. VILLA:  There is one more that's really
9   close.
10           THE COURT:  I know there is one more, but I
11   want to take them one at a time.
12           MR. VILLA:  Okay.  I'm just saying,
13   substantively, it's the same issue.
14           THE COURT:  Well, let me take them one at
15   time.
16           All right.  Mr. Castellano.
17           MR. CASTELLANO:  I've got up on the
18   visualizer a summary from one of our responses, which
19   is Document 1243, at page 5.
20           So in terms of the "in furtherance"
21   discussion, "statements made to induce enlistment or
22   further participation in the group's activities or to
23   prompt further action on the part of the
24   conspirators, to reassure members of the continued
25   existence of the conspiracy, to allay fears," and one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5945

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 182 5946

 1   of them is also "to identify other members of the

 2   conspiracy."

 3          So, in that case, as to Daniel Sanchez,

 4   when Mr. Martinez takes the stand, that's a statement

 5   by a party opponent as it relates to Daniel Sanchez.

 6   But it's also a statement in furtherance of the

 7   conspiracy, because it identifies another member of

 8   the conspiracy was Mr. Perez.  So that clearly

 9   qualifies in the "in furtherance" discussion prong of

10   801(d)(2)(E).  So it could satisfy any of those

11   elements and satisfy the "in furtherance" prong.

12          THE COURT:  Where did Mr. Villa go?

13          MR. VILLA:  I'm here, Your Honor.

14          THE COURT:  That was my first reaction when

15   you first put it up.  I think the timing of it, the

16   statement of it, it's going to fit into what Roberts

17   is talking about there.

18          MR. VILLA:  One thing, I guess I maybe was

19   a little too quick to say that the timing had been

20   established during the course of the James hearing,

21   exactly when it was that Mr. Sanchez said this to

22   Timothy Martinez.  But I think the argument doesn't

23   change, from Mr. Perez' perspective, that this really

24   wasn't necessary to further the conspiracy.  And just

25   so the record is clean, it's the same issue with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5946

 1   respect to Mario Rodriguez' statement to Jerry

 2   Montoya.

 3          Now, Mario Rodriguez is going to be

 4   testifying.  But Jerry Montoya, who is also a

 5   cooperating co-defendant, is going to say that when

 6   Mario Rodriguez provided him a shank, that Mario

 7   Rodriguez told him it came from Rudy Perez' walker.

 8          And, again, our position is that that

 9   didn't further the conspiracy in any way, shape, or

10   form.  Jerry Montoya's job was to stab Javier Molina,

11   and it didn't matter the source of the shank.

12          THE COURT:  Would your argument be the

13   same, Mr. Castellano?

14          MR. CASTELLANO:  It is, Your Honor.  And in

15   terms of Alcorta, the more recent case that's come

16   up, there is also a potential for a cover-up of the

17   conspiracy.  So, in other words, a lot of people

18   pointed Corrections to the wheelchair program, when

19   the shank actually came from in the pod.  And so that

20   would be just one more reason.  But the reasons I've

21   already stated in addition to that part, helping to

22   cover up the conspiracy.

23          THE COURT:  Well, I'll take a little closer

24   look.  But I'm inclined to agree with the Government

25   on that, that both of those can be used against Mr.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Perez.  Certainly can be used against Mr. Sanchez.
 2    But I think it could also be used under the
 3    co-conspirator exception.  Because of the timing of
 4    it.  If you find the timing is different, I might
 5    think of it more in the sense of what Mr. Perez was
 6    saying to Mr. Cordova.
 7            But, right at the moment, it sure looks
 8    like it's going to fit into that fairly broad Roberts
 9    definition of what is furtherance of the conspiracy.
10            MR. VILLA:  We may have to reserve this for
11    when Mr. Martinez actually testifies, because I don't
12    think it was ever clear, from Agent Acee's testimony,
13    exactly when that statement was made to Timothy
14    Martinez.
15            THE COURT:  Just trying to give you as much
16    guidance as I can.
17            MR. VILLA:  I appreciate it, Your Honor.
18            THE COURT:  Thank you, Mr. Villa.
19            Ms. Jacks, do you want to go --
20            MS. JACKS:  I just have something quick.
21            THE COURT:  Okay.
22            MS. JACKS:  I went back and I looked at the
23    Clark decision, because I hadn't read it today.  And
24    I do think that, in Clark, the claim that the
25    defendant made was only based on the Sixth Amendment
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5948

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185949

```
 1    right to confrontation.  So they didn't even raise
 2    the issue about whether Bruton also recognized and
 3    acknowledged that there was a Fifth Amendment Due
 4    Process right.  So I do think that's a different
 5    argument; that we're making a different argument
 6    here.  And I think, if the Court goes back and looks
 7    at Jackson v. Denno and the cases that have relied
 8    upon it, there is clearly a due process right not to
 9    be convicted with inadmissible evidence.
10         THE COURT:  Are you talking about Clark v.
11    Ohio, the Supreme Court case, or the Tenth Circuit?
12         MS. JACKS:  No, I was talking about the
13    Tenth Circuit; it's the Pump and Dump --
14         THE COURT:  Right.
15         THE REPORTER:  The what?  The who?
16         MS. JACKS:  I'm sorry, the Pump and Dump;
17    it's like a pump and dump stock fraud case.
18         THE COURT:  All right.  Thank you,
19    Ms. Jacks.
20         All right.  I am trying to give as much
21    guidance as I can on the James issues, as much
22    guidance as I can on specific issues.  And the offer
23    still stands to the defendants.  I know it's the
24    Government's burden of proof to establish as the
25    proponent of the evidence to get this in.  But I do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5949

```
 1    want to -- you know, if there is some specific things
 2    I may be generalizing on, bring up any specific
 3    evidence, and we'll make rulings on it.
 4              Mr. Adams?
 5              MR. ADAMS:  Yes, sir.
 6              THE COURT:  How was the weather in
 7    Washington when you left?
 8              MR. ADAMS:  It was windchill factor of 11
 9    degrees.  It was miserable.  I'm very happy to be
10    here.
11              THE COURT:  I left on Friday, and it was
12    not warm.
13              MR. ADAMS:  I hope you didn't have to be
14    outside much.
15              THE COURT:  I had to walk around.
16              MR. ADAMS:  I did walk by the new Trump
17    Hotel.  I moved very quickly going by that one,
18    personally.
19              I think I understand where you're coming
20    from on the broad outlines of the motion.  We have
21    put together -- our team has put together a list of
22    all the various statements that have been referenced.
23    What I would like to do is to not have this
24    necessarily settled and submitted today.  But to take
25    what you said and to be able to sit down with Randy.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5950

```
 1   And the ones that I think there might be disagreement

 2   on, to see if we can iron them out.  And then, maybe

 3   tomorrow, bring back ones that we might need further

 4   guidance on.  If that -- I think that would conserve

 5   time, and narrow my need just to hear myself talk.

 6            THE COURT:  All right.  Does that satisfy

 7   you, Mr. Castellano?

 8            MR. CASTELLANO:  That's fine, Your Honor.

 9            THE COURT:  And is this list something that

10   everybody has put together?

11            MR. ADAMS:  We have -- it's not -- it's a

12   working document -- it's not really not suitable for

13   filing.  But we've shared it with everyone.  All the

14   defense lawyers.  We haven't shared it with the

15   Government.

16            THE COURT:  Is everybody comfortable moving

17   on?  My offer stands.  It sounds like it will be

18   picked up tomorrow.  After talking with the

19   Government, we'll maybe pick this issue up again.

20            And, like I said, I know I'm running slow

21   today; I haven't got draft order over to the

22   Government.

23            But I think the Government is getting a

24   picture of what this trial is going to look like.

25   And I think you've got to go to your appellate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5951

```
 1   lawyers, and say, Okay, this is the way he's running
 2   the show over there.  Are we going to defend him, or
 3   not?
 4           So I'll try to get that order out, so you
 5   can get your appellate people going.  But you might
 6   warn them it's coming so they can start looking at
 7   it.
 8           All right.  Let's go to the next issue
 9   then.  We'll move beyond James here.  And we will
10   move to Mr. Baca's motion in limine to prohibit the
11   Government's attorneys from using Rule 405, 608, 609
12   character evidence without judicial approval.  I
13   think we started this hearing in December, that last
14   week we were here.  So this is a resuming of that
15   hearing.  And I'll have to be educated exactly where
16   we are.
17           Mr. Lowry.
18           MR. LOWRY:  Your Honor, I just checked with
19   my colleagues.  I think we finished that.  Especially
20   in light of the 609 conversation today, we're done.
21           THE COURT:  So you feel like I gave
22   sufficient rulings on it; so you've got the guidance
23   you need?
24           MR. LOWRY:  Yes, Your Honor.
25           THE COURT:  Everybody think the same way?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5952

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189953

```
 1    Anybody else need anything else?
 2              All right.  So then we're going to move
 3    to -- I think this is Ms. Sirignano's motion:  Mr.
 4    Garcia's motion, which is the Government's motion --
 5    I think that raises the Mario Montoya issue, right?
 6              MS. ARMIJO:  Yes, Your Honor.
 7              THE COURT:  Anybody else need anything?
 8              All right.  So then we're going to move to,
 9    I think this is Ms. Sirignano's motion, Mr. Garcia's
10    motion, which I think that raises the Mario Montoya
11    issue, right?
12              Can we make any progress on this without
13    Mr. Montoya here today?
14              MS. SIRIGNANO:  Are you referring to 1330,
15    Your Honor?
16              THE COURT:  1529.  I'm sorry, I should have
17    said.  Isn't this yours, or is this Mr. Baca's?  Is
18    this the unintelligible, irrelevant audio recordings?
19              MS. SIRIGNANO:  This is ours, yes, Your
20    Honor; 1529.
21              THE COURT:  This is what you were going to
22    use Mario Montoya for, right?
23              MS. SIRIGNANO:  Yes, Your Honor.  And Mr.
24    Adams is going to handle it.  But I think that we do
25    need Mr. Montoya here prior to arguing.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5953

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 190 of 954

```
 1              THE COURT:  Is that going to be your only
 2   evidence on this?
 3              MS. SIRIGNANO:  I'm sorry, Judge, I didn't
 4   hear you.
 5              THE COURT:  Is that going to be your only
 6   evidence on this?
 7              MS. SIRIGNANO:  I believe Mr. Montoya is
 8   going to be the majority of the evidence, yes.
 9              THE COURT:  Okay.  Do you have anything
10   else, then?
11              MR. ADAMS:  No, sir.  And I don't think
12   that will be extensive.  I think that will be a small
13   part of --
14              THE COURT:  So you think we need to move
15   this down, then, the list?
16              MR. ADAMS:  We can move it whenever.  As a
17   lawyer, whatever please the Court, my understanding
18   is his lawyer couldn't be here till tomorrow morning.
19   So we'll be ready to roll then, and it should not --
20              THE COURT:  Is he here?
21              MR. ADAMS:  He is apparently in New Mexico,
22   and in Las Cruces, so we should be able to --
23              MS. ARMIJO:  When you say "he," who?
24              THE COURT:  Mario Montoya.
25              MS. ARMIJO:  Mr. Montoya is in New Mexico,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and will be available here in Las Cruces tomorrow.

2              THE COURT:  Okay.  Mr. Keefe is his lawyer,

3    right?

4              MS. ARMIJO:  Mr. Keefe is his lawyer.

5    There was a lot of back and forth well into the

6    evening yesterday, and last night about where he was

7    going to be initialed, and everything else.  And so

8    we had just planned on having him here on Wednesday

9    for testimony.  But we did manage to get him

10   initialed.  And Mr. Keefe is coming.  I don't know if

11   he's coming up this afternoon or tomorrow.  But Mr.

12   Montoya is not in the building.

13             THE COURT:  Is he in town?

14             MS. ARMIJO:  I don't want to say where he's

15   located.  Because this morning he received threats

16   from some of these defendants.  So I really would not

17   like to say where he's at.

18             THE COURT:  Come on guys, behave, behave.

19             All right.  So we're going to move this to

20   the bottom?

21             MS. SIRIGNANO:  There is two motions, Your

22   Honor, yes.

23             THE COURT:  So there is two more, one is

24   the sealed opposed motion to dismiss and request

25   for -- that's number 12 -- and that is also your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5955

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 192

 1   motion?  Are we ready to take it up?

 2              MS. SIRIGNANO:  Yes, Your Honor.

 3              THE COURT:  This is 1330, this is Ms.

 4   Sirignano's sealed motion to dismiss and request for

 5   an evidentiary hearing.  I think several people

 6   joined Mr. Garcia's motion.

 7              MS. SIRIGNANO:  Your Honor, there is two.

 8   We filed, the one we just spoke of, which is 1529,

 9   the motion to suppress --

10              THE COURT:  Right.

11              MS. SIRIGNANO:  -- and the other one, is

12   1330, where the Government's response is 1400.  And

13   then I filed 1612 over the weekend out of time, but

14   with Mr. Beck's permission.  It was the

15   destruction --

16              THE COURT:  That's the reply, right?

17              MS. SIRIGNANO:  Correct, the reply.  Yes,

18   Your Honor.

19              Your Honor, I do need to have Mr.

20   Montoya --

21              THE COURT:  For both those motions?

22              MS. SIRIGNANO:  Yes, I do, Your Honor.

23              THE COURT:  All right.  Then let's go to

24   the motion for pretrial rulings on pretrial

25   evidentiary objections to exhibits.  This is, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   believe, Mr. Davidson, your motion.
 2              MR. DAVIDSON:  Yes, Your Honor.  This was
 3   my motion.  I'm referring to it in the past tense
 4   because I think it's obviated by the pretrial
 5   conference.  We wanted to establish a procedure
 6   whereby the Government would provide a list of
 7   exhibits, and there would be a schedule for lodging
 8   objections, and back and forth.  But I think the
 9   pretrial conference --
10              THE COURT:  Setting those deadlines.
11              MR. DAVIDSON:  Yeah.  So this goes away.
12   And I talked to the Government about that.
13              THE COURT:  Can I get you, then, to
14   withdraw this?
15              MR. DAVIDSON:  Sure.  I'll file a notice of
16   withdrawal.
17              THE COURT:  Any objection?  The Government,
18   no?  All right.  So just file a notice.  You don't
19   need to file another motion.  But just file a notice
20   withdrawing that.
21              MR. DAVIDSON:  Will do.
22              THE COURT:  Ms. Wild, are you there?
23   Ms. Wild?
24              THE CLERK:  Yes.
25              THE COURT:  Thoughts?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5957

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 194 of 5958

```
 1                THE CLERK:  Can you hear me?
 2                THE COURT:  Yes, I can hear you.  Thoughts?
 3                THE CLERK:  This is it.  This is all that
 4    I'm aware of.
 5                THE COURT:  Well, let me do this.  Let me
 6    ask you, Ms. Wild, would this be a good time to begin
 7    to go over the security issues, some of the nuts and
 8    bolts of trying this case, if we're going to just
 9    take up two motions in the morning?
10                THE CLERK:  It would be.  But if I could
11    have a few minutes of your time before you start
12    through that, I think it may be more productive and
13    less disjointed.
14                THE COURT:  Okay.  Let me, then, use this
15    time -- and it looks like Mr. Castellano may be doing
16    this as well -- before we take a break, why don't I
17    see if there are any other issues that we need to
18    take up other than nuts and bolts, security issues,
19    and things like that, that I made some rulings on.
20    Mick was here and he listened to them, and then we
21    had some going back and forth.  So I'm ready to
22    pronounce some things about how we're going to try
23    this case.
24                I'd love to say there is not going to be
25    any pushback, but I'm not that optimistic.  But maybe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5958

 1   we can come to an agreement how we're going to try

 2   this case.  But before we take a break so I can talk

 3   to Ms. Wild about the finishing touches on that, and

 4   taking up two motions in the morning, I want to see

 5   if there are any other issues we need to discuss

 6   before we go to trial.

 7        Let me start with the Government.  Mr.

 8   Castellano?

 9        MR. CASTELLANO:  Yes, Your Honor.  We are

10   waiting for the Court's order regarding the tablets

11   so that the Corrections Department can -- well,

12   they've already seized the tablets, so they can do

13   the analysis on the tablets so we can turn that over

14   to the defense counsel.

15        THE COURT:  Is it an order that's on my

16   desk to be signed?  What is that?

17        MR. CASTELLANO:  I don't know the status of

18   the order.  I just know we're waiting for an order

19   which allows the Corrections Department or someone

20   else to do a forensic analysis of the tablets.

21        THE COURT:  Did y'all prepare an order for

22   me to sign?

23        MR. CASTELLANO:  No one has prepared an

24   order.  The only thing I remember the Court saying

25   was that the Court would issue an order.  But there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was no instructions for anyone to necessarily forward
 2   one to the Court.  So it is outstanding.
 3            THE COURT:  Can I get you to prepare an
 4   order and submit it to me?
 5            MR. CASTELLANO:  Yes.  We'll put together
 6   something, yes.
 7            THE COURT:  I don't recall that.  That
 8   doesn't mean it didn't happen, but I don't recall it.
 9   So why don't y'all prepare an order and get it to me.
10            All right.  How about other things?
11   Mr. Jewkes?
12            MR. JEWKES:  Your Honor, would today be an
13   opportune time to do the conflict issue regarding
14   Daniel Sanchez, as far as Billy Blackburn
15   representing Mr. Garcia?
16            THE COURT:  Is Mr. Blackburn going to be
17   here tomorrow?
18            MR. DAVIDSON:  No, Your Honor.  But I
19   talked with Mr. Blackburn, and I talked with
20   Mr. Garcia.  I think we can go ahead with that.
21            THE COURT:  All right.  Let me see if I can
22   find that motion so I refresh my memory about that.
23            Ms. Wild, was there anything under my Tab
24   5, or was that just a placeholder?
25            THE CLERK:  It was a placeholder.  All of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5960

 1    that information was, I believe, collapsed together

 2    under 3.  It's just going to be that single sheet.

 3         THE COURT:  All right.  Mr. Davidson, why

 4    don't you remind me of what it was Mr. Blackburn

 5    represented Mr. Sanchez on previously, the nature of

 6    that?

 7         MR. DAVIDSON:  Yes, Your Honor.  There was

 8    a state habeas corpus involving Mr. Sanchez and his

 9    brother, Ronald Sanchez.  There was very little

10    contact between Mr. Blackburn and Daniel Sanchez.

11    Mr. Blackburn's involvement was the habeas.  He

12    wasn't involved in the trial.  That was handled by

13    two state public defenders.

14         Then, Gary Mitchell did an appeal.  And

15    after that the two defendants hired Mr. Blackburn.

16    His primary contact was Mr. Sanchez' brother's wife.

17    And my understanding, there was only several

18    conversations with Mr. Daniel Sanchez.  And they

19    basically involved when was there going to be an

20    evidentiary hearing on the habeas petition?

21         And then, there was a substitution of

22    counsel.  And the Sanchez brothers had hired John

23    Damato, and then he continued with the habeas

24    representation.

25         So Mr. Blackburn had prepared and filed a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5961

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 198962

```
 1   habeas petition, filed that.  There may have been
 2   some briefing.  But he didn't conduct the evidentiary
 3   hearing, had very limited involvement with Mr.
 4   Sanchez.  And I understand it wasn't about anything
 5   about the underlying facts of the case.  There
 6   weren't any sort of client confidences in that sense
 7   disclosed to Mr. Blackburn by Mr. Sanchez.
 8              THE COURT:  Okay.  Is that your
 9   understanding as well, Mr. Jewkes?
10              MR. JEWKES:  That's correct, Your Honor.
11              THE COURT:  All right.  Mr. Sanchez, why --
12   do you want say something else?
13              All right.  Mr. Sanchez, if I can get you
14   to maybe stand up so I can just see you and eyeball
15   you here as we talk.
16              Did you want to say something, Mr. Jewkes,
17   before we start?
18              MR. JEWKES:  I was going to get the
19   microphone.
20              MS. ARMIJO:  Your Honor, if I may just add,
21   I believe Mr. Gary Mitchell also represented him on
22   the same matter before Mr. Blackburn.  And so I
23   believe the waiver should be also as to, not only Mr.
24   Blackburn, but also as to Mr. Mitchell.
25              And Mr. Mitchell represents Jerry Armenta,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5962

```
 1    who is going to be testifying.
 2            THE COURT:  Okay.  Is he prepared to waive
 3    it as to both of them?  Mr. Mitchell as well?
 4            MR. JEWKES:  We haven't discussed that as
 5    far as the potential conflict with Mr. Mitchell, Your
 6    Honor.
 7            THE COURT:  Why don't I just take it a step
 8    at a time.  Let's get it as to Mr. Blackburn.  Then
 9    we'll tackle the one down the road when you're ready
10    to go, or if it needs to be done.
11            Mr. Sanchez, do you understand that your
12    former attorney, Mr. Blackburn -- you know who Mr.
13    Blackburn is?  He sits over here with Mr. Garcia?
14    You understand who he is and where he is?  You've
15    been working with him?
16            THE DEFENDANT:  Yeah.
17            THE COURT:  You know who he is.
18            And you understand that he's currently
19    representing Mr. Arturo Garcia over here in the
20    corner of this table?
21            THE DEFENDANT:  Yeah, I do.
22            THE COURT:  And do you understand that Mr.
23    Blackburn still owes duties of loyalty to you,
24    including not to reveal information told to him in
25    confidence?  Do you understand he has all that?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5963

```
 1              THE DEFENDANT:  Yeah, I do.
 2              THE COURT:  And do you understand that
 3    Mr. Blackburn, in order to zealously represent on
 4    behalf of Mr. Arturo Garcia, he may have to make
 5    arguments that we don't know for certain how it could
 6    happen, but it could happen that he has to make
 7    arguments in representing Mr. Garcia that are
 8    detrimental to your defense?  Do you understand that?
 9              THE DEFENDANT:  Yeah, I do.
10              THE COURT:  And has your attorney reviewed
11    with you this situation?
12              THE DEFENDANT:  Yes, he has, Your Honor.
13              THE COURT:  And do you understand that, if
14    you choose to testify, or, you know, if you were to,
15    down the road, plea or something, and cooperate with
16    the Government, it could turn out that Mr. Blackburn
17    may have to cross-examine you in an adversarial
18    manner?  Do you know that could possibly happen?
19              THE DEFENDANT:  Yeah, I do.
20              THE COURT:  All right.  And Mr. Jewkes, if
21    you would get the form that I circulated on Monday.
22    Do you have it in front of you?  Do you have one
23    that --
24              MR. JEWKES:  I do, Your Honor.  And I have
25    it signed.  May I approach the courtroom deputy?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5964

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5965

```
 1              THE COURT:  You may.
 2              And let me ask you, before you bring it up,
 3    Mr. Jewkes.  Is that your signature on that waiver,
 4    that written waiver?
 5              THE DEFENDANT:  Yes, it is, Your Honor.
 6              THE COURT:  And you reviewed it with
 7    Mr. Jewkes?
 8              THE DEFENDANT:  Yes, I have.
 9              THE COURT:  And you waive any sort of
10    conflict here?
11              THE DEFENDANT:  Yes, I do.
12              THE COURT:  All right.  I'm going to ask
13    you a broad question, so think about it very
14    carefully here.  Knowing that a potential conflict
15    may later materialize between Mr. Blackburn's duties
16    to Mr. Garcia and the risks associated with his
17    continued representation of Mr. Garcia, do you wish
18    to waive that conflict?
19              THE DEFENDANT:  Yes, I do, Your Honor.
20              THE COURT:  Do you understand what that
21    means?  You're been apprised of all the risks and
22    problems with it?
23              THE DEFENDANT:  Yes.
24              THE COURT:  You still want to do it?
25              THE DEFENDANT:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5965

```
 1                THE COURT:  All right.  Anything else on
 2    that, Mr. Jewkes?
 3                MR. JEWKES:  No, Your Honor.
 4                THE COURT:  Anything else, Ms. Armijo?
 5                MS. ARMIJO:  No, Your Honor, not as to that
 6    conflict.
 7                THE COURT:  How about you, Mr. Davidson?
 8                MR. DAVIDSON:  Nothing else, Your Honor.
 9                THE COURT:  All right.  Mr. Jewkes, you can
10    approach, and we'll mark that as Exhibit A to this
11    colloquy.
12                And Mr. Garcia, do you understand that you
13    have a right to a conflict-free attorney?  We've been
14    talking about that over the last couple of days, and
15    you've been here.  Do you understand what that means?
16                THE DEFENDANT:  Yes.
17                THE COURT:  You have the right to have an
18    attorney that just represents you and just represents
19    your interests.  Do you understand that?
20                THE DEFENDANT:  Yes.
21                THE COURT:  And do you understand all the
22    facts we've been talking about, the representations
23    of Mr. Blackburn, of Mr. Sanchez?  Do you understand
24    all those circumstances?
25                THE DEFENDANT:  Yes, I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5966

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 203

```
 1                  THE COURT:  Those have been explained to
 2    you by Mr. Davidson and Mr. Blackburn?
 3                  THE DEFENDANT:  Yeah.
 4                  THE COURT:  So you understand what Mr.
 5    Blackburn's previous representation of Mr. Sanchez
 6    involved?  And as I understand it -- correct me if
 7    I'm wrong -- anybody -- that this was an unrelated
 8    criminal case; correct?
 9                  THE DEFENDANT:  That's what I understand.
10                  THE COURT:  Is that your understanding,
11    Mr. Davidson?
12                  MR. DAVIDSON:  Yes, Your Honor.
13                  THE COURT:  Yours as well, Mr. Jewkes?
14                  MR. JEWKES:  Yes, Your Honor.
15                  THE COURT:  Do you understand that Mr.
16    Blackburn may have duties of loyalty stemming from
17    his previous relationship with Mr. Sanchez; that he
18    may still have some duties to keep some things
19    confidential?  Do you understand that?
20                  THE DEFENDANT:  Yes.
21                  THE COURT:  Do you understand that Mr.
22    Blackburn's duties to Mr. Sanchez may impact his
23    representation of you, should he, all of a sudden,
24    recall some pertinent information that he learned
25    during the course of his relation of Mr. Sanchez.  He
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5967

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204968

 1   may not by thinking of anything now, but he may

 2   remember it when we're in the middle of the trial, or

 3   something, that he got some information from Mr.

 4   Sanchez?  Do you understand that could happen?

 5            THE DEFENDANT:  Yes.

 6            THE COURT:  Do you understand there is a

 7   risk that Mr. Blackburn will have to choose at some

 8   point between his duty of loyalty to Mr. Sanchez and

 9   his duty to zealously advocate for you?  Do you

10   understand that could happen down the road?

11            THE DEFENDANT:  Yes.

12            THE COURT:  And if Mr. Blackburn chooses,

13   at some point -- or excuse me, Mr. Sanchez chooses at

14   some point to cooperate or to testify, or something,

15   Mr. Blackburn may be forced to examine Mr. Sanchez.

16   And his duty of loyalty to him may affect his

17   performance.  Do you understand that?

18            THE DEFENDANT:  Yes, I do, Judge.

19            THE COURT:  And additionally, Mr.

20   Blackburn's duties to Mr. Sanchez may affect trial

21   strategies, including arguments regarding relative

22   culpability among the defendants here.  Do you

23   understand that could happen?

24            THE DEFENDANT:  Yes.

25            THE COURT:  And, Mr. Davidson, did you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5968

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205969

```
1    prepare a waiver for Mr. Garcia to sign?
2              MR. DAVIDSON:  We don't have that right
3    now, Your Honor.
4              THE COURT:  All right.  Will you get the
5    form that was circulating at the back of the
6    courtroom on Monday, that will go to the one that was
7    not previously represented, and get that marked up,
8    and present it to me?
9              MR. DAVIDSON:  I will, Your Honor.
10             THE COURT:  When we do, we'll complete the
11   colloquy.  Has Mr. Davidson or Mr. Blackburn --
12   particularly Mr. Davidson gone over this potential
13   conflict with you, Mr. Garcia?
14             THE DEFENDANT:  Yes, he has.
15             THE COURT:  Knowing that the conflict may
16   arise in the future and the risk of such a conflict,
17   Mr. Garcia, do you still wish to waive that conflict
18   and continue with Mr. Blackburn as your attorney?
19             THE DEFENDANT:  Yes, Your Honor.
20             THE COURT:  All right.  Anything else on
21   that issue, Ms. Armijo?
22             MS. ARMIJO:  No, Your Honor.
23             THE COURT:  Mr. Jewkes?
24             MR. JEWKES:  No, Your Honor.
25             THE COURT:  Mr. Davidson?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5969

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5970

1           MR. DAVIDSON:  No, Your Honor.

2           THE COURT:  All right.  If you'll complete

3    that the form and get it filed, and we'll complete

4    the colloquy.

5           All right.  What else are we going to need

6    to discuss?  We're going to take our break here

7    pretty quickly.  But is there anything else we need

8    to put on the agenda, Ms. Jacks?

9           I'll get Ms. Jacks, then I'll come back to

10   you, Ms. Duncan.

11          MS. JACKS:  I just have a quick thing.

12          THE COURT:  All right.

13          MS. JACKS:  I think back on November 27, we

14   had the discussion about the Government's supposed

15   gang experts.  We did get to examine one.  I think

16   there was a discussion on November 27, that if they

17   were going to offer them for some other purpose, Mr.

18   Beck had said they were going to supply some

19   additional notice, which we haven't received.  I'm

20   not quite sure where we stand on that issue.

21          THE COURT:  All right.  Mr. Beck?

22          MR. BECK:  I think where we stood was that

23   if we were going to offer them for some other

24   purpose, we'd provide them notice.  And then we went

25   forward, not providing them for another purpose.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5970

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 207 of 971

1           THE COURT:  All right.  So that's where it

2    stands?  Is that satisfactory, Ms. Jacks?

3           MS. JACKS:  I'm still not sure if they're

4    going to be called, and if so, for what.  Because we

5    haven't finished the Rodriguez hearing; there was an

6    objection -- we didn't know the basis of their

7    opinions, or what their opinions, for that matter,

8    were.

9           THE COURT:  Well, I gave a ruling what they

10   could testify and what they couldn't testify on.  Is

11   there any uncertainty as to --

12          MS. JACKS:  There is, because on November

13   27, you gave an indicated ruling, and the Government

14   said they didn't want to abide by that.  And then we

15   jumped into the Rodriguez/Daubert hearing on November

16   28, which they called one witness, Ron Martin.  And

17   since then, we have never taken it back up.

18          THE COURT:  Okay.  Are you willing to just

19   stand by the decision I gave on how we're going to

20   use experts, on gang experts?

21          MR. BECK:  I think that we gave it a run to

22   try to change the Court's mind.  And I think since

23   then, the Court has just dug in deeper.  So --

24          THE COURT:  All right.  So is that clear

25   enough then, Ms. Jacks?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5971

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

1          MS. JACKS:  It's actually not.  Because I

2    think, on November 27, when the Court gave its

3    ruling, what we said is, Hey, even if the Government

4    is going to offer them for a different purpose, such

5    as just general gang experts, we're still entitled to

6    Rule 16 notice that spells out what their opinions

7    are and the bases for that opinion.

8          And Mr. Beck, at that point -- this was

9    prior to lunch -- this is at page 84 of the

10   transcript from November 27 -- said, "I think we can

11   draft a similar Rule 16 disclosure to what we have in

12   there, where they give the generic type of opinions

13   this Court will allow at the hearing."

14         And I think we're still entitled to that,

15   and object if they're going to proceed without doing

16   that.

17         THE COURT:  Any thoughts on that, Mr. Beck?

18         MR. BECK:  Yeah.  That was put in the

19   context I was just speaking about.  That was earlier,

20   before we decided to go ahead with the Rodriguez

21   hearing, and put them on, and put Agent Martin on and

22   allow his testimony.

23         THE COURT:  Well, you've gotten basically a

24   deposition of him.  What more do you need?

25         MS. JACKS:  What we got, I think, was an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5972

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209

```
1    indication that everything -- what we need is the
2    opinions the Government is planning to offer at
3    trial, the expert that those opinions are coming
4    from, and the bases of those opinions.
5              THE COURT:  Didn't you get that with the
6    deposition that you got here?
7              MS. JACKS:  Well, with Mr. Martin what we
8    got was he was being offered as an SNM expert.  And
9    everything he knew or said was based on hearsay.  We
10   don't have anything.  So what we got was -- I don't
11   think there is anything that Martin presented that
12   was admissible expert testimony.  And I think his
13   testimony seriously called into his qualifications of
14   being a, quote, "expert."  I think we have two other
15   proffered experts that we've heard nothing of, other
16   than that they appear to have submitted a very
17   similar resume to that that Mr. Martin submitted.
18             THE COURT:  All right.  Well, let's take a
19   break.  I need to give Ms. Bean a break, and we'll
20   come back in and finish this up.  Y'all might talk
21   just a little bit and see if we can figure out maybe
22   how to get the needs of the defendants.  But I'm
23   inclined to think that if they testified here, the
24   defendants has got a pretty good indication of what
25   their opinions are going to be and what their
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5973

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 210

```
 1    qualifications are, and the basis for them.
 2              I may still have to have a little bit more
 3    information about some of their statements to allow
 4    them to testify, if they just got their statements
 5    from things being told to them.  But if some of it
 6    comes from experience, I think there can be gang
 7    experts, and they can have some general experience.
 8    So I'm not going to probably require a whole lot
 9    more, given that they testified here.
10              But let's take our break.  And we'll come
11    back in and discuss it after the break.
12              (The Court stood in recess.)
13              THE COURT:  All right.  We'll go back on
14    the record, assuming everybody has an attorney here.
15              Let me do something I intended to do
16    earlier, and I focused on the co-conspirator
17    exception.
18              Let me give you a little guidance as we go
19    into trial on the -- it looks to me -- I think the
20    estimate, Ms. Sirignano, that you gave to Ms. Wild
21    was that you thought that the two motions that we are
22    putting at the bottom, for Mr. Montoya, are going to
23    be -- take about a half day; no more than a half day.
24    I think was what was said; is that correct?
25              MS. SIRIGNANO:  I think that's right, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5974

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213

1    Honor.

2              THE COURT:  Okay.  So I think I'm going

3    to -- if this is any help to anybody else, I'm going

4    to go ahead and cancel my hotel reservations for

5    tomorrow night and the rest of the week.  I don't

6    know what everybody else has got, but if that's of

7    any help to y'all; looks like we're going to be out

8    of here -- if it's going to be a half day, I may get

9    on back up to Albuquerque.

10             All right.  Ms. Jacks, Mr. Beck, during the

11   break, did y'all have a chance to see if you need any

12   more on the Government's gang experts?

13             MR. CASTLE:  Your Honor, I talked to Mr.

14   Beck.

15             THE COURT:  Okay.

16             MR. CASTLE:  And I think -- I can't

17   represent all the defendants, there might be some

18   disagreement -- but I think he was going to put on

19   the record what he thought the limitations were that

20   the Court imposed on the Government, and hopefully,

21   that will resolve it, but I'm not sure --

22             THE COURT:  Okay.

23             MR. CASTLE:  -- it works for everyone.

24             THE COURT:  You want to try that, Mr. Beck?

25             MR. BECK:  I can try, Your Honor.  I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 5975

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5976

```
 1    Your Honor's ruling was that the expert -- the gang
 2    experts will be able to testify to their experience
 3    and opinions about prison gangs generally, about the
 4    way that they operate, about the structure that they
 5    have, the ways in which they can communicate inside
 6    and outside prisons, the way in which they operate,
 7    bringing in or secreting drugs in the prisons, the
 8    ways in which they retaliate against persons who
 9    cooperate with law enforcement, and those general
10    brief areas.
11            Gang experts will not be allowed to testify
12    about the SNM particularly.  I think that's probably
13    the contours of the Court's ruling.  So I think
14    that's how we intend to proceed with our experts, and
15    how the Court outlined the way in which the Court
16    would allow us to proceed.
17            THE COURT:  Okay.  That's my memory of what
18    I said on that.
19            And what more do you need, Ms. Jacks, on --
20    to do your job?
21            MS. JACKS:  Well, I think it would be
22    useful to know the names of the experts, and the
23    bases, or what helps them form those opinions.
24            THE COURT:  What's your thoughts on that,
25    Mr. Beck?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213

213

1          MR. BECK:  Well, I think that's covered in

2    our original notice.  It's the same experts that were

3    originally noticed, qualifications have remained the

4    same, and the bases of their opinions is still their

5    experience outlined in their CVs.

6          THE COURT:  Refresh my memory as to who

7    testified.

8          MR. BECK:  Ron Martin testified.

9          THE COURT:  He was the only one?

10          MR. BECK:  He was only one.

11          THE COURT:  How many experts do you have?

12          MR. BECK:  We noticed three experts.  I

13    think we intend to call only one per trial.

14          THE COURT:  Do you know which one you're

15    calling for Ms. Jacks' trial?

16          MR. BECK:  I don't think we do yet.  I

17    don't think we've decided on that.

18          THE COURT:  Let's do this:  I think that

19    the defendants has got a pretty robust picture of Mr.

20    Adams(sic), so I think that that's sufficient, what

21    you provided.  For the other two, I think you now

22    need to go back in, with what we're going to do in a

23    limited way, and provide more information about them.

24    So if you call Mr. Adams, they've got to Daubert him.

25    But on the other two, I think you need to provide

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 5977

```
 1    more information on the basis of their testimony and
 2    also what they're going to testify about.  If it's
 3    those topics, just list them out, say that's the
 4    limit of it then, give the basis of it, how they got
 5    that information.
 6              They do have CVs on these other two?
 7              MR. BECK:  They do.
 8              THE COURT:  Okay.  Anything else on that,
 9    Ms. Jacks?
10              MS. JACKS:  Judge, I think the name of the
11    expert was Ron Martin; correct?
12              THE COURT:  Ron Martin, okay.
13              Anything else on that, Ms. Jacks?
14              MS. JACKS:  No.
15              THE COURT:  Does that get you what you
16    need?
17              MS. SIRIGNANO:  Your Honor, I just would
18    like a deadline for this disclosure.
19              THE COURT:  When can you have that?  When
20    is your deadline, Mr. Beck, for just witnesses?
21              MR. BECK:  Friday.
22              THE COURT:  Could you just pick one by that
23    date for the first group and give it to them?
24              MR. BECK:  I mean, we can -- they'll have
25    the name of the expert who may testify that we can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5978

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 215

1    get a notice out by then, because we've got a lot on

2    our plate by then.

3            THE COURT:  Do you want to propose a

4    deadline for getting them information on the experts?

5            MR. BECK:  Sure.  We can say Friday, the

6    19th.

7            THE COURT:  Would that work for the

8    defendants?

9            MS. SIRIGNANO:  I'm sorry?  What day?

10           THE COURT:  19th.

11           MS. SIRIGNANO:  Your Honor, I'd like to

12   have it by this Friday.  Because if it's not

13   Mr. Martin, who we literally spent an entire day and

14   a half on, we'll probably have a request for a

15   Daubert hearing.  The Government chose to put all

16   three experts on its amended notice in a cumulative

17   nature, and noticed them all up, saying the exact

18   same thing.  And as we saw at Mr. Martin's hearing,

19   their resumes are nearly identical.

20           So I'd like to know specifically, whatever

21   expert they decide they're going to use, I'd like to

22   know who it is right away, and this way we can

23   proceed with a hearing.

24           THE COURT:  Well, let's do it by the end of

25   business on the 16th.  That will give us a little bit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    of breathing room, give us nine days to see what
 2    we've got to do. I would think that there is not
 3    going to be a whole lot of difference between these
 4    experts, given how much I've cut them back.  I would
 5    think they'd be pretty much like y'all's experts.  So
 6    they're going to be pretty fungible.  But it's not
 7    going to be really a Daubert hearing, because I've
 8    already made a determination that these opinions --
 9         MS. SIRIGNANO:  My concern, Your Honor, is
10    whether or not they're truly percipient or fact
11    witnesses, or really if they truly are experts, as we
12    learned from Mr. Martin.  I don't believe he would
13    fall in that expert category at all.
14         THE COURT:  I'm not sure that's a Daubert
15    opinion.  That's not the purpose of Daubert.  That
16    may go to, you know, whether he can be a conduit for
17    hearsay.  But that may be something we have to sort
18    out at trial.  But I'm not sure the opinions he's
19    offering -- I think it sounds to me like it would be
20    the same opinions that your experts would offer.  So
21    it sounds to me like they're not going to differ a
22    whole lot.
23         MS. SIRIGNANO:  Well, that I don't know.
24    And I think Ms. Bhalla wanted to get some
25    clarification on whether or not the defense is going
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5980

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5981

1   to offer a gang expert based on the hearing with her

2   expert, or the defense expert.  So I'll leave that to

3   her, Judge.  Thank you.

4          THE COURT:  That you're not going to offer

5   a gang expert, is that what you said?

6          MS. BHALLA:  No, Your Honor.  I think the

7   clarification I was seeking from the Court was that,

8   I think the restrictions that the Court has laid out

9   for the Government are fairly clear.  And I would

10  just assume that the same restrictions apply to our

11  expert, Mr. McReynolds.  And I just wanted to seek

12  clarification on that issue.

13         THE COURT:  Yeah, I don't think that

14  probably I'm going to allow your expert to come in

15  and start testifying about the SNM Gang.  Is that --

16         MS. BHALLA:  Right.  And we don't

17  anticipate doing that anyway, Your Honor.  I just

18  wanted to make sure.  We've already amended our

19  expert notice as well.

20         THE COURT:  Okay.  Did you have something

21  else, Mr. Beck?

22         MR. BECK:  Yeah, I was just going to say

23  that I think we've already litigated the conduit for

24  hearsay, and I think that was the basis of the Court

25  restricting the experts in such a limited fashion,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5981

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5982

```
 1    that once we get into generalities about prison gangs
 2    generally and the way that they operate generally, it
 3    takes out that possibility that they could just be
 4    conduits for hearsay.
 5             I'm inclined to agree.  But there could be
 6    some specific thing.  I'm not precluding the
 7    defendants from raising an objection to a particular
 8    question or area.  But I tend to agree that we're
 9    going to start with the assumption that these guys
10    got so much experience in the field and their jobs
11    that they're not just a conduit for something that
12    one person told them or something.
13             MR. BECK:  Right.
14             THE COURT:  All right.  Anything else on
15    experts?
16             How about any other issues, since we're
17    going to have these two motions tomorrow?  Anything
18    else, Ms. Duncan?
19             MS. DUNCAN:  Your Honor, I had three quick
20    issues.  The first is I have a waiver signed by Mr.
21    Baca related to the conflict issue, if I could
22    approach.
23             THE COURT:  All right.  Mr. Baca, Ms.
24    Duncan is holding that.  Did you review that document
25    with your attorneys?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219 5983

```
 1                THE DEFENDANT:  Yes, I did review it.

 2                THE COURT:  Did you specifically review it

 3     with Ms. Duncan?

 4                THE DEFENDANT:  Yes.

 5                THE COURT:  And that's your signature on

 6     it?  You signed it?

 7                THE DEFENDANT:  Yes.

 8                THE COURT:  You reviewed it with her?

 9                THE DEFENDANT:  Yes.

10                THE COURT:  All right.  Let's mark it as

11     Exhibit A to that colloquy.  So it will be Anthony

12     Baca's Exhibit A.

13                I assume there is no objection to that, Ms.

14     Armijo?

15                MS. ARMIJO:  No, Your Honor.

16                THE COURT:  Anybody else?  All right.  It

17     will be admitted into evidence.

18                MS. DUNCAN:  My second issue is sort of a

19     housekeeping kind of thing.  We wanted to orally move

20     for an order permitting paralegals, investigators for

21     the defense, to bring their cellphones into the

22     courthouse to help the defense lawyers to coordinate

23     with witnesses and other issues during the trial.

24     It's my understanding that the Government doesn't

25     object to that motion.  So what I'd like to propose
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5983

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 220984

```
 1   to the Court is that the defense teams work together

 2   to come up with an order listing the specific people

 3   to whom it would pertain.  And we'll share that with

 4   the Government before submitting it to the Court.

 5            THE COURT:  Do you see any problem on that

 6   issue, Ms. Wild?  Ms. Wild, is your speaker on -- or

 7   mute button on?

 8            THE CLERK:  I think that it may have to be

 9   approved by the Chief Judge.  But I'm not sure,

10   Judge.

11            THE COURT:  Okay.  Mick, do you see any

12   problem with it?

13            MR. MICKENDROW:  No, Your Honor.

14            THE COURT:  Okay.  Well, subject to

15   approval by the Chief, then it's fine with me.

16            MS. DUNCAN:  Thank you, Your Honor.

17            Then one other issue I wanted to put on the

18   record.  We received some discovery related to Eric

19   Duran and cooperating witness, Mario Montoya, today

20   from the Government.  There are reports about recent

21   charges and offenses allegedly committed by those two

22   witnesses.  The discovery is redacted.  For example,

23   the name of the law enforcement agency investigating

24   those crimes, locations of the crimes, the locations

25   where these witnesses were arrested have been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
1    redacted.  I've spoken with the Government, and I
2    think we've reached agreement that the Government
3    will produce copies of that discovery with that kind
4    of information unredacted by the end of this week.
5    But they will maintain redaction of personal
6    identifying information such as Social Security
7    numbers and dates of birth, which we do not object
8    to.  So I just wanted to have that on the record.
9              THE COURT:  All right.  Is that your
10   understanding, Ms. Armijo?
11             MS. ARMIJO:  As well as any location
12   information as to them as well, plus their
13   residences.
14             MS. DUNCAN:  Yeah, we're fine with the
15   residences.  Just the places where the offenses were
16   allegedly committed or they were arrested.
17             MS. ARMIJO:  That's fine.
18             THE COURT:  Anybody else have any problem
19   with that?  All right.  So ordered.
20             MS. DUNCAN:  Thank you, Your Honor.
21             THE COURT:  Any other issues, Ms.
22   Sirignano?
23             MS. SIRIGNANO:  Yes, Your Honor.  We filed
24   a notice, Document 1468; it was the motions that were
25   filed in Mr. Garcia's drug case.  So we were just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5985

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 222986

1    wanting to remind the Court that -- I know you ruled

2    on the motion to suppress the first 18 minutes of his

3    post-arrest statement.  But I was wondering, or

4    inquiring, whether the Court was going to rule on

5    those other motions?

6            THE COURT:  Well, I may not get formal

7    opinions out.  But I thought at the time I denied

8    both of them.  I thought I gave fairly clear rulings

9    on those.  The only one that I had thought a little

10   bit more about was the Miranda one.  I'll try and get

11   to them, give you something more formal.  But the

12   others, I thought I had been clear that they were

13   denied.  But when Mr. Adams reminded me for purposes

14   of going to trial, this is what we would do.

15   Anything more on that?

16           MS. SIRIGNANO:  No, Judge.  I just needed

17   that clarification.

18           The other thing was I filed a motion for

19   free process with an order, and I just would like --

20           THE COURT:  When did you file that?

21           MS. SIRIGNANO:  I filed it within the last

22   10 days, maybe a week or so.

23           THE COURT:  Ms. Wild, do I have that?  Is

24   that something I brought with me that I haven't

25   entered yet?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          THE CLERK:  You do.

 2          THE COURT:  Do you happen to know, either

 3   Ms. Wild or Ms. Sirignano, what number it is?

 4          THE CLERK:  I believe it's Document 1599.

 5          THE COURT:  Does that look like your number

 6   as well, Ms. Sirignano?

 7          MS. SIRIGNANO:  Your Honor, we're pulling

 8   it up here.  I'm sorry.

 9          THE COURT:  Ms. Wild, do you want me to

10   bring this back to Albuquerque, or do you want me to

11   hand it to Ms. Standridge?

12          THE CLERK:  Please bring it back up.

13          THE COURT:  So I have signed it.  I'm going

14   to put my electronic signature on it.  I've signed

15   it.  All right.  So I've signed it.

16          MS. SIRIGNANO:  Thank you.

17          THE COURT:  Mr. Benjamin?

18          MR. BENJAMIN:  Your Honor, there was the

19   same motion filed on behalf all the trial defendants

20   by myself in Document 1566, if the Court could

21   consider that.

22          THE COURT:  What's the number on it?

23          MR. BENJAMIN:  1566.

24          THE CLERK:  You have it.

25          THE COURT:  All right.  I have signed it,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5987

```
 1   and Ms. Wild can affix my electronic signature to it.

 2              All right.  What else?  Any other issues we

 3   need to take up, other than the two motions that Ms.

 4   Sirignano has for tomorrow morning?

 5              Let me ask you this:  Are there going to be

 6   other motions filed?  Is there something we can talk

 7   through this afternoon rather than having to have

 8   more motions?

 9              While maybe y'all are thinking about that,

10   see if I can help you with that, let me say something

11   on these out-of-court statements.  I don't think

12   there is any confusion here, but it is an assumption

13   we've been making.  And we've been going fairly fast

14   here through some of this stuff.

15              I think I gave you the reasons at the

16   hearing on the 20th as to why the out-of-court

17   statements that we were discussing, particularly with

18   Mr. Perez', are not admissible hearsay as statements

19   against penal interests.  But the out-of-court

20   statements are admissible under 801(d)(2)(A) to the

21   extent that they are offered against the defendant

22   who made the statement.

23              So let me elaborate a little bit on that,

24   because that's the whole basis of these limiting

25   instructions.  Rule 801(d) renders a statement
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 5988

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225

```
 1   offered against a party was, quote, "made by the
 2   party in an individual or representative capacity"
 3   not hearsay even if is offered for its truth.  A
 4   defendant's statement that qualifies under Rule
 5   801(d)(2)(A) cannot be used against co-defendants,
 6   however.  Complications arise when a statement,
 7   admissible against only one defendant, contains a
 8   statement that is admissible against only one
 9   co-defendant, Perez' recorded statements that
10   attribute statements to Baca.  The second statement
11   is not hearsay as against the co-defendant who made
12   it pursuant to Rule 801(d)(2)(A), but the statement
13   is only relevant, and therefore admissible, if the
14   co-defendant actually made that statement, according
15   to 104(b).  And "when the relevance of evidence
16   depends on whether a fact exists, proof must be
17   introduced sufficient to support a finding that the
18   fact does exist."  No such evidence exists, in this
19   situation, because the first statement cannot be used
20   against the second statement's declarant.  Therefore,
21   the second statement would be inadmissible against
22   its declarant under Rule 402, which states that
23   irrelevant evidence is inadmissible, even though that
24   statement would not be hearsay if used for its truth
25   against its declarant.  For example, Mr. Perez'
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5989

1    statements are not hearsay when offered against Perez

2    and Baca's statements -- contained within Perez'

3    statements -- are not hearsay when offered against

4    Baca.  Because Mr. Perez' statements cannot be used

5    against Baca, however, there is no evidence that is

6    admissible against Mr. Baca that are "sufficient to

7    support a finding" that Mr. Baca actually made such a

8    statement under 104(b).  So just kind of backing up a

9    little bit what we've been talking about.

10            Any other motions that are going to be

11   raised?  Anything else I can help you with before

12   trial?

13            MS. ARMIJO:  Your Honor, I had a question

14   about the jury questionnaire.  I've been speaking

15   with Ms. Duncan and Mr. Villa about it.  And just

16   for -- as an example, if there are 50 percent of the

17   jurors that are excused for cause, which may leave

18   about 300, are you expecting all 300 -- I mean, I

19   know they all won't come -- but will all the

20   remaining ones be summoned in?  Or from that group

21   will there be a certain number that we summoned in?

22   Does that make sense?

23            THE COURT:  Ms. Wild, correct me if what

24   I'm saying is incorrect.  But let's say y'all excuse

25   everybody but 300, so there is 300 in the pool; they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5990

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227

```
 1   will go into a draw.  It's not the draw for the day

 2   of the trial.  This is just a draw for summoning them

 3   there.  And we'll draw 200.  And then we'll summon

 4   those 200 to the courtroom, so -- you know, I don't

 5   know if we'll get all 200 here, but our expectations,

 6   there would be 200.  Then I'll leave about 140 down

 7   in the jury assembly room, and then we'll bring 60

 8   into the courtroom, and that's where we'll get

 9   started.  Is that clear?

10           MS. ARMIJO:  Yes.  And with that thought --

11           THE COURT:  Let me, first of all, check and

12   make sure that what I just said is correct.  Did I

13   have that correct, Ms. Wild?

14           THE CLERK:  Yes.  We will reduce to what we

15   think the target -- what the number needs to be to

16   target 200.  So it may not be just 100 get lopped

17   off.  It will be whatever number we think is

18   necessary to get 200 to the courthouse on the 29th.

19           THE COURT:  Okay.  Do you see what they're

20   saying?  Mr. Sorrell is in the back of the courtroom.

21   They're experienced at knowing, in Las Cruces, you

22   know, how many people -- let's just say I was in

23   Albuquerque, and I told Jury Services, "I want 46

24   people in their seats."  They may call 53, 54.  So it

25   may be higher than 200, it may be 220, or something
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5991

 1   like that.  But it's their professional estimate as

 2   to how many people will be -- it may take 220 to get

 3   200 in Las Cruces, or in here.

 4            THE CLERK:  And the parties will be

 5   notified with a listing of the folks that are coming

 6   out.

 7            THE COURT:  So you will be told which ones

 8   didn't make the list, so that you can start ignoring

 9   them for trial preparation.

10            MS. ARMIJO:  Okay.  Thank you, Your Honor.

11   That was my next question, is I believe the parties

12   wanted to know who would be --

13            THE COURT:  Sure.  Well, I do too.  I have

14   every interest.  Because I've got banker's boxes

15   sitting in my office.  Does that make sense,

16   everybody?  Mr. Villa?

17            MR. VILLA:  It does, Your Honor.  So if the

18   200 are coming, when are we going to get the first

19   60 --

20            THE COURT:  You're not going to get the

21   first 60, you're going to get 200.

22            MR. VILLA:  In order?

23            THE COURT:  You're not going to know until

24   the day of the trial which 60 are going to be here,

25   because I don't know which 200 are going to show up.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5992

```
 1            MR. VILLA:  Could we do 200 in order, then
 2   we just cross off the no-shows, so we know the order
 3   in advance?
 4            THE COURT:  When you get here and are
 5   speaking -- and Ms. Wild, correct me if I'm wrong --
 6   you're going to be told -- I guess this is what's
 7   going to happen -- you'll be told which ones to take
 8   out of your list, or out of your drawer.  And you can
 9   toss those aside.  And so let's say it's 220, 225,
10   you'll need to work with those, because if 225 or 200
11   of them show up on that day, then we put them into
12   the true wheel that morning, the computer wheel.  And
13   then that's when the alphabetical becomes numerical.
14   So Juror No. 1 will be sitting right where Mr. Burke
15   is sitting, and we'll go through there, 1 through 200
16   or 198, or whatever it is.  Does that make sense?
17            MR. VILLA:  It does.
18            THE COURT:  Am I correct, Ms. Wild?  Is
19   what I said correct?
20            THE CLERK:  Yes, sir.
21            THE COURT:  All right.  Mr. Sorrell.
22            MR. SORRELL:  Can I be heard on that, Your
23   Honor?
24            THE COURT:  Why don't we talk afterwards,
25   okay?  Why don't you talk to Ms. Wild on that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5993

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 230

```
 1              Mr. Castellano?
 2              MR. CASTELLANO:  I was seeking
 3    clarification on the Court's ruling on Mr. Perez'
 4    statements.  We had previously argued that they were
 5    statements against interests, and therefore it was
 6    Smalls admissible against the other people named in
 7    the statements.  Has the Court deviated from that?
 8              THE COURT:  No.  But remember, I didn't
 9    think that was true the day I made that ruling.  I
10    didn't think that the -- given his testimony, I can't
11    say that he meets the prong of -- let me find my
12    rules, and I'll read it -- but I wasn't convinced the
13    day that we had it that I had an answer as to how
14    he -- give me the number on that again.  That's
15    unavailable, so which one is that?
16              MR. CASTELLANO:  The rule number?
17              THE COURT:  Just a rule number.
18              MR. CASTELLANO:  It may be 804(3), but let
19    me double-check that.
20              THE COURT:  You're correct.
21              And here's the one that I don't think that
22    it met.  Given his testimony, I have a hard time
23    saying that a reasonable person in the declarant's
24    position would have made -- that's a statement that a
25    reasonable person in the declarant's position would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5994

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231

 1   have made only if the person believed it to be true.

 2   That's what I'm having trouble on.  I mean, it seems

 3   to me that what Mr. Perez was doing is just as likely

 4   to have been a ruse, as it was not a ruse.  And I

 5   can't -- so it's an objective standard.  So it's not

 6   particularly him; it's just whether an objective

 7   person in his position would have made that.

 8           MR. BECK:  And, Your Honor, the Government

 9   would ask you to go and look back more closely at the

10   testimony from Mr. Perez and from Mr. Cordova.  The

11   testimony that came out -- I know Mr. Perez said that

12   he was lying.  The Court found a lot of that

13   testimony not credible.  I think the Court can find

14   by a preponderance of the evidence that those

15   statements are sufficiently trustworthy because of

16   the context in which they were said.

17           THE COURT:  But remember, I'm not -- I

18   agree with you, I made a finding that his was not

19   trustworthy for the motions to exclude the testimony.

20   But when we get to the 804(b)(3)(A), it's an

21   objective standard.  So his testimony is enlightening

22   only in the sense that it informs whether a

23   reasonable person in the declarant's position would

24   have made only if the person believed it to be true.

25   And I think somebody in his position could have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5995

1   objectively and reasonably decided to lie to create a

2   rumor around the prison that -- what he did to

3   protect himself.

4         MR. BECK:  That's why I'm saying I'd ask

5   the Court to go back and look more closely at the

6   context.  Because those statements were given after

7   the first indictment came down.  And they were given

8   by Mr. Perez to someone who he contends -- and the

9   evidence at all these have shown -- was not higher up

10  in the organization.

11        And so in the context of those two facts,

12  number one, he would only make statements that he

13  participated willingly in the murder, if in fact, he

14  did, because he's not trying to convince Mr. Cordova

15  that -- he's not trying to gain credibility with

16  someone lower than him.

17        THE COURT:  But he might be using Mr.

18  Cordova to spread a rumor around the prison.

19        MR. BECK:  But the only reason in which

20  someone would do that, is if it were true, because

21  he's trying to -- I think, objectively, may be trying

22  to rebut that he is a government cooperator.  And

23  that's why he is saying that, "I participated

24  willingly, but only this person knows that, because I

25  haven't told anyone that I did that willingly."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5996

1          Because, as you've heard, everyone in the

2     SNM knows how that murder went down, knows what

3     happened.  And only those who are cooperating and

4     participated, were not indicted.  And so a reasonable

5     person would only admit to participating in the

6     murder after the indictment to someone lower in the

7     organization, if he actually did those things.  And

8     he is trying to say why, although he did those

9     things, he was not indicted and he is not

10    cooperating.

11         So those explanations objectively would

12    make it so that those statements are against his

13    penal interests.  And the timing there is key.  After

14    the indictment and to whom he's making the

15    statements.

16         I agree with you that, if we look generally

17    throughout the context of prison gangs, throughout

18    the context of prison, statements may be made to try

19    to spread rumors about who did what.  But the

20    specific time period in which these statements were

21    done, after the indictment, to someone lower in the

22    organization, and after only those not indicted were

23    cooperating, participated, those facts objectively

24    make those statements trustworthy against his penal

25    interests.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5997

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 233998

1          So that's why I'm saying I think the Court

2    may want to look more closely at the context of the

3    statements, when they were made after the indictment.

4    So --

5          THE COURT:  All right.  I'll take another

6    hard look at it.  But for planning purposes, plan on

7    them not being used against anybody but Mr. Perez.

8    But I'll take a hard look at it.  I did read your

9    brief.  But I need to write that section up of the

10   opinion, so I'll take these comments into mind when I

11   do that.

12         Anything else?  Any other issues?  Any

13   other motions going to be filed?  We don't expect any

14   more motions to be filed?  Is this it?  We're done?

15   Got them all done?

16         MR. CASTLE:  I'll file one.

17         THE COURT:  No, that was not an invitation

18   or a request.

19         Ms. Sirignano.

20         MS. SIRIGNANO:  Sorry to be the

21   stick-in-the-mud again.  I'm waiting to get documents

22   back from my experts on the DNA, specifically in

23   regards to the policies and procedures.  And I may

24   file a motion to suppress the DNA, Your Honor.

25         THE COURT:  All right.  Anything else?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 5998

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 235

1          MR. CASTLE:  Judge, I have a trial brief

2     that's pending with the Government to get their

3     position on.  I don't think it's going to take any

4     time to review -- well, it might take -- well, it's

5     12 pages, but it's a simple issue that I made really

6     long.  So it wouldn't take any time.  As a matter of

7     fact, I think the Court could probably rule on the

8     pleadings.

9          THE COURT:  When you say it's a trial

10    brief, what is it?

11         MR. CASTLE:  During some of the hearings, I

12    had noticed that some of the Government agents were

13    commenting on the honesty and reliability of certain

14    informants.  So this Court made a preliminary ruling

15    during those hearings that it didn't think that

16    was -- that kind of evidence was admissible, and told

17    us all to kind of be on notice at trial not to try

18    that.  But it's along those lines of saying that we

19    shouldn't allow that.  And it's particular in these

20    kind of cases, because agents often call someone a

21    reliable informant, or we verified their information,

22    things like that.

23         So that's with the Government.  If they can

24    look at it tonight, maybe they're going to be in

25    agreement with it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 236000

```
 1              THE COURT:  Well, I'll give you my
 2   thoughts.  Sometimes in the course of a trial, for
 3   example, Mr. Acee has to get on the stand and say,
 4   you know, "I didn't act on this because I didn't
 5   believe him."  That's history.  Other times -- but I
 6   do agree with you, Mr. Acee and other agents can't
 7   get on the stand say, Yes, Mr. Duran is a reliable
 8   agent.  I agree he can't say that.  But if, in the
 9   course of his work, he decided certain things were
10   reliable, certain things were true and not true, I
11   would think that's part of history of the case.  And
12   I've kind to have to let him tell his story as to why
13   he did certain things and not do certain things.
14              Is that pretty consistent with what you
15   think would be the right call?
16              MR. CASTLE:  I guess, it depends how it
17   comes out.
18              THE COURT:  Well, I think it does, too.  I
19   think it's kind of the context.  I'd encourage the
20   agents not to call people reliable and things,
21   because that, I think, is for the jury to determine.
22   But if they're telling a story -- I mean, this is
23   what happens -- you've got the agent on the stand,
24   the defendant is saying:  Why didn't you do this?
25   Why didn't you do this?  Well, I didn't think he was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6000

1    reliable, or I did.  So it often comes out not so

2    much in direct, it comes out in cross.

3              MR. CASTLE:  I think we certainly could

4    open the door to things.  The trial brief doesn't

5    talk about or address the situation in which the

6    defense opens the door to an area.  It was --

7    frankly, I pulled out an example, which was Agent

8    Acee's being asked:  Did you find Mr. Duran to be

9    honest with you?  And it was that kind of

10   information.  Certainly, the defense can open the

11   door and make it relevant.

12             THE COURT:  I guess I would probably cringe

13   on that sort of question and answer.  But if it was

14   more spaced -- at the time that you made this -- you

15   know, you made -- I think it's going to be tied to

16   something specific.

17             MR. BECK:  I think it's pretty clear you

18   can't bolster your witness' credibility.  So I think

19   we're in agreement with where Your Honor is on that.

20             I think that probably came up because they

21   were impugning Duran's credibility in one of their

22   motions to suppress.  So for that, it's relevant

23   whether Agent Acee finds him credible.  So where it's

24   relevant, it's not bolstering.  But I don't see how

25   it would be relevant at trial unless the defendants

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   open the door.
 2              THE COURT:  Okay.
 3              MR. CASTLE:  Makes sense.
 4              THE COURT:  Do you think you can live with
 5   that?
 6              MR. CASTLE:  Yes.
 7              THE COURT:  Some of you, I know, in the
 8   heat of the moment you ask questions, and you know
 9   better.  Let's be careful with the jury.  Let's don't
10   put any witness in -- you've seen me try to coach you
11   through this to get you ready for trial.  But if
12   you've got the witness on the stand, you know, don't
13   ask him if another witness was lying.  I'm going to
14   have to police that.  And you don't want me to call
15   you down or tell you not to do that.  So just watch
16   that.  You don't want to ask a witness to comment on
17   somebody else lying.  So just watch that sort of
18   language, so that you don't have to get me
19   intervening.  And I do have to intervene on those.
20   There is some case law that says I can't just sit
21   here and watch it take place.  I have to do my job,
22   and I will do it to protect the record.
23              Anything else?  Things that may come up
24   that I can maybe help you with today.
25              All right.  Well, let's -- then we've got
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6002

1    some marshals at the back.  And let's see -- what I'm

2    going to do is I'm going to put on the record some

3    things that Ms. Wild has worked out with the

4    marshals.  Most of these reflect the rulings that I

5    gave.  I'm not going to put the marshals on the spot.

6    This is mostly informative for the parties here, and

7    I'll let the parties sort of tell me if they can't

8    live with this.  But these will be the rulings unless

9    I misstate them in some way, and Ms. Wild and the

10   marshals get back to us and tell us I'm not stating

11   this.  That was the reason I asked the marshals to

12   come in.  And Mick and Joe Castro are in the

13   courtroom, so they can get with Ms. Wild later on and

14   say:  We can't do that or we can do that.

15          We are going to start proceedings at 8:30.

16   The marshals think they can get the defendants --

17   since we're going to be dealing with a reduced

18   number -- they think they can get them here.  So

19   we'll be starting at 8:30.  And plan on going to

20   5:30, like we've been doing.  So we'll need to shift

21   that up a half hour, because they think they can have

22   them ready to go.

23          Let's talk about the prior restraint

24   devices and security within the courtroom.  The

25   marshals have assured me, through Ms. Wild, that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240

```
 1    there won't be anybody with ski masks in the
 2    courtroom, or in the vicinity.  So you shouldn't be
 3    seeing anybody with ski masks.  There won't be any
 4    heavy attire, vests, or anything in the courtroom.
 5              We'll talk about where other people may be.
 6    But for the present time, assume that when they come
 7    to the courthouse in connection with this case -- I
 8    can't tell you what they may be doing with other
 9    judges in other courtrooms, but there won't be any
10    heavy attire vest.
11              The prisoners will be restrained with leg
12    shackles, which will be duct taped to ensure no sound
13    is made even if the prisoner moves legs.  So that
14    shouldn't be a problem.  There won't be any
15    additional restraints used.  So, as far as hands,
16    they will be out, and they'll be able to write and
17    take notes.
18              The deputies will be placed throughout the
19    courtroom, but will be in suits and ties.  So what
20    you get used to seeing in trials here in New Mexico
21    is the way you'll see it in this trial as well.  And
22    there will be -- CSOs will be on the right side of
23    the courtroom, with access to the Judge's door.  So
24    they will be on your right and my left.
25              Let's see, I think that covers prisoner
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6004

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

```
 1   restraint devices and security within the courtroom.

 2           Let's talk about the prisoner courtroom

 3   attire.  Prisoners -- I shouldn't say prisoners --

 4   the defendants, but they've been in custody, so I'm

 5   trying to shift them from their facilities to the

 6   courtroom.  So the defendants will be allowed any

 7   courtroom attire, including footwear, so -- within

 8   reason.  You know, don't too funky, but we're not

 9   going to get too specific either.  So what you want

10   to bring, leather-type shoes, just don't make the

11   marshals nervous.  But we're not going to be too

12   restrictive on that.

13           Clothes must be brought at least one full

14   business day prior to the start of the trial.  So I

15   would encourage you to try to have those to the

16   marshals by the end of business on Thursday, January

17   25.  So I encourage you to have them there so --

18   they've just got to have a full business day.

19           The attire is going to be searched by the

20   Marshal Service before the defendants are presented

21   with the items.  So, know that.  And the suits will

22   be housed by the marshals unless the attorneys want

23   them back for cleaning.

24           Now, let's talk about the cooperators, and

25   some of those issues, because they change a little
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242

```
 1    bit.  I want everybody to be advised of this.  I
 2    think we talked through some of these issues earlier.
 3    I can do this a couple of different ways.  I can take
 4    a recess and remove the jury before an in-custody
 5    defendant or an in-custody witness is being brought
 6    in.  I would suggest that certainly we take a break
 7    before an in-custody defendant is testifying, and
 8    certainly before they're brought into the courtroom,
 9    that the jury not see it.  But unless somebody tells
10    me otherwise, I'm not inclined to start taking
11    recesses every time we take a break with an
12    in-custody witness.
13            Now, I need to hear what the defendants
14    think about that, because it's mostly your optics
15    that I'm concerned about.  I'll certainly listen to
16    the Government's as well.  But if you want to see
17    them walk in, they can't walk and use the jury room
18    anymore.  I guess they could come in through the side
19    doors, or they can come in through the back doors.
20    But you may want them to do it.  So, at the present
21    time, unless sometimes tells me otherwise -- I'm not
22    going to take a recess and remove the jury every time
23    we bring an in-custody defendant into the courtroom.
24    I think it will slow things down, and it's not
25    necessary for the optics.  This will allow the -- you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   know, as far as the defendants are concerned, we'll

2   not parade that witness before the jury, they'll just

3   come in -- the defendant will be next to me.

4   Otherwise, they'll just be brought in like any other

5   witness, and they may be in custody or chains or

6   things like that.

7          In-custody witnesses will be brought in any

8   clothes which were provided to him.  But if nobody

9   provides him, he may just come in with what he's

10  wearing either at the prison or the detention

11  facility.  If no clothes, in-custody defendants will

12  be brought in in prisoner uniforms.

13         In-custody witnesses will remain fully

14  shackled.  In-custody defendants will remain in leg

15  restraints, as identified under what I just talked to

16  you about the prisoner restraining devices.  But I'm

17  calling that defendant restraint devices.

18         The Court will take another break after the

19  defendant is done testifying, allowing the individual

20  to be removed from the witness stand without being

21  paraded in front of a jury, so that they get the

22  sense that he's in shackles.

23         Now, here's a wrinkle that we need to

24  recognize.  The Marshal Service are not and cannot be

25  responsible for state custody inmates.  State custody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6007

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 244

```
 1   inmates may be transported by and guarded by a
 2   uniformed officer.  So the reality is that -- and I
 3   don't think this is a problem, but everybody will
 4   have to make their own judgment -- when we have a
 5   state custody inmate, there is going to be a state
 6   custody person here.  I don't think that hurts the
 7   defendants in any way, because they're not here
 8   because of the new defendants.  They're here because
 9   of that person.  So unless somebody tells me
10   otherwise, I'm not going to worry about that, because
11   I don't think that hurts the defendants.  It suggests
12   that they're the ones that -- so you're not going to
13   have, on a daily basis, people with heavy attire.
14   But you may have -- you will have uniformed officers
15   on the day that state custody inmates are testifying.
16          Now, let's talk about courthouse security.
17   The defendants will be brought to the courthouse
18   before the courthouse opening.  So I think that's
19   going to be before most of your jurors are going to
20   get here.  Some jurors are here early, but they'll be
21   brought in early.
22          Security on the perimeter of the courthouse
23   will be determined by the Marshal Services, by their
24   personnel.  What I understand is the bomb sniffing
25   dogs are used early in the morning.  That's one of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the first things they do is they sweep the

2    courthouse.  Again, I gave my thoughts that, after

3    9/11, after Oklahoma City, you can go to any stadium,

4    and they've got dogs.  I don't think that's a big

5    deal.  They're going to do -- what I understand,

6    they're going to sweep once, sweep in the morning,

7    and then they're going to be out of here.  So I think

8    that's okay.

9            The marshals have very graciously agreed

10   not to use lights and sirens when they leave the

11   courthouse, and if they go down Lohman.  So if

12   they're going down Lohman, they're not going to use

13   it.  What they do after, or if they go other

14   routes -- but at least around the courthouse, so I

15   think that those are going to be -- I think that's

16   going to be fine.  That's what we asked them to do.

17   And so around the courthouse and Lohman.

18           I have a few other issues I want to talk to

19   you about on the trial, but I think that's all that

20   relates to the security.

21           Ms. Wild, what did I miss, or what did I

22   misstate?

23           THE CLERK:  I don't believe you misstated

24   anything, other than -- it's not a misstatement, but

25   to also let folks know that the courtroom

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6009

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 246

```
 1    configuration is in the works.  We don't quite have
 2    that solidified yet.  But we will let them know when
 3    we do.
 4              THE COURT:  We're still working on that.
 5    We talked about bunting, we talked about the
 6    shackles.  We're figuring it out.  I think we're
 7    going to be just fine as far as a courtroom that,
 8    even for voir dire, that we're not going to have to
 9    worry about the jury seeing anything that they
10    shouldn't see.  But it's going to take a little bit
11    more work.  But we're getting there.
12              Anything else, Ms. Wild, on that topic?
13              THE CLERK:  No, sir.
14              THE COURT:  Anybody have any issues,
15    comments, concerns, questions?  Mr. Lowry?
16              MR. LOWRY:  Your Honor, if I may.  During
17    the arraignment at the beginning of this case, as we
18    know, the courthouse security was at its -- what I
19    would consider to be its max.  Are we going to have
20    anything like, you know, armed security with AR 15s
21    on the roof or patrolling the perimeter?  I would
22    hope not.
23              THE COURT:  My understanding is no.
24              MR. LOWRY:  Okay.  Thank you, Your Honor.
25    And the Court made a comment with Mr. Mario Montoya
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6010

1   earlier -- and I think all of us take courtroom

2   security very seriously, as we should.  But, you

3   know, throughout the history of this case, we've seen

4   this crop up again and again, that cooperating

5   witnesses with the Government use those kind of

6   comments as an opportunity to disadvantage the

7   remaining defendants in this case.

8          THE COURT:  Like what?  Give me --

9          MR. LOWRY:  Well, like there was a comment

10  made earlier that Mario Montoya said threats were

11  made against his life.  I have no idea one way or

12  another.  But what I do know, throughout history of

13  this case, there is an incident with Mr. Herrera,

14  that there was a claim that he made a death threat

15  against his own mother, and that caused a ripple for

16  a number of days.

17         And that there were other similar type of

18  comments, like with the tablets, for instance, even

19  though the cooperators were the ones abusing the

20  tablet privileges, it spilled over into everybody

21  else losing access and privileges to their tablets.

22         So what I'm suggesting to the Court is not

23  that anybody truly lets their guard down, and don't

24  take courtroom security seriously, but that we have

25  an objective, open mind about comments like that that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6011

1    could creep up.  I just don't want that to prejudice

2    the defendants in the courtroom.  I guess I'm just

3    trying to avoid a cheap shot, if you will, to be

4    simple about it.

5          You know, we've worked with our client.  As

6    far as I know, our client hasn't had any issues with

7    transportation or in-house court security.  We have a

8    good working relationship with the marshals.

9          I understand there was an issue with Dona

10   Ana County Detention about the razor being found in

11   his cell.  But it had nothing to do with any security

12   issue beyond his immediate cell, Your Honor.

13         So that's my concern, is that, you know, we

14   don't rush to judgment when you hear something like

15   that.

16         THE COURT:  Is there any action item there

17   for me?

18         MR. LOWRY:  No.  Again, in terms of -- I'm

19   just thinking future-oriented.  If something like

20   that crops up during the course of this trial, I

21   would hope that the Court can work with counsel in a

22   more subtle fashion, so we can address that, so it

23   doesn't have a spillover effect and change the

24   dynamic of the courtroom.  It's something I'd be

25   serious about.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6012

```
 1              THE COURT:  Well, I think everybody knows
 2    me well enough, that once we bring that jury and
 3    start this trial, I'm going to have of paramount
 4    concern the optics and the appearance of justice in
 5    this courtroom.  So some of the things that I have
 6    had to move rather rapidly, with such a high number
 7    of people, I think will probably -- you know, we're
 8    going to have to think about:  We now have a jury,
 9    that changes everything.
10              MR. LOWRY:  I agree, Your Honor.  And we
11    want to work collaboratively with our colleagues
12    across the aisle, and the Court, to make sure that
13    those optics don't adversely affect the jury's
14    judgment in this case.
15              THE COURT:  I agree.
16              MR. LOWRY:  The only final issue, we're
17    talking about bunting on the table, and I realize
18    that the Court hasn't finalized those decisions.
19              THE COURT:  There will be bunting on the
20    table.
21              MR. LOWRY:  We would ask, just again, for
22    the optics of this, that anything that's done -- and
23    I'm assuming that this is going to be the defendants
24    over here -- that we have a similar bunting placed on
25    the prosecution.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6013

```
 1                THE COURT:  It will be on both tables.
 2                MR. LOWRY:  Thank you, Your Honor.  That's
 3      it.
 4                THE COURT:  Do you want the bunting that
 5      they do on opening day of baseball, or you want
 6      something more subtle?
 7                MR. LOWRY:  Black would be fine.
 8                THE COURT:  I always thought that was the
 9      one thing that baseball had over football is opening
10      day.  I always miss bunting.
11                Anyone else?  Comments, questions,
12      concerns?
13                MS. ARELLANES:  Judge, what about family
14      members that want to observe the trial?
15                THE COURT:  Yeah, we haven't got that
16      totally worked out.  I do have -- I'm going to tell
17      the White House I'm getting old -- but I do have
18      problems when we see the people sitting way at the
19      back.  So I have -- and the marshals have been very
20      gracious on this -- they're going to let me use the
21      inside of the well.  So I am going to use the front
22      row in the well.  Now, that's going to create a
23      little bit of coziness here.  But at the same time,
24      it's going to help me be able to see and talk to
25      people, which means that, to answer your question,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6014

```
 1    they're going to be plenty of seats at the back.  We
 2    are still discussing having an overflow like we did
 3    when we first started these hearings up in
 4    Albuquerque.
 5             For First Amendment purposes, we'll work
 6    with Ms. Standridge, if there is press, we'll try to
 7    identify those, and make sure that they're in this
 8    room.
 9             Family members, it depends on the numbers.
10    We may have to put them in an overflow, and then pipe
11    in the proceedings.  I don't think it's going to be a
12    problem during the trial.  But it could be a little
13    tight in here during voir dire.  That's my biggest
14    concern.  But I do think just looking at the chart
15    here, if I use the inside of the well -- which I
16    think will help me with my eyesight and also my
17    hearing, so I can make sure I hear the jurors,
18    because they don't talk as loud as the rest of us do.
19             It would put Juror No. 60 on the second
20    row, so the second bench on left would be totally
21    full.  That would be 47 through 53.  And then on the
22    second bench on the right would be 54 through 60,
23    probably right about where Mr. Maynard is on the
24    second row.  So the row right behind Ms. Sirignano,
25    where that group is sitting, that's going to be full;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6015

1  that's going to be 46 through 37.  Then the next row

2  behind it is going to have people that are 54 through

3  60.

4          Ms. Wild, have you noticed that this

5  seating chart is reversed?  It's different than how

6  we do our seating charts.

7          THE CLERK:  In the way that they're

8  numbered and how they're seating?

9          THE COURT:  Yeah.

10          THE CLERK:  I must have gone to sleep at

11  the switch, which is possible.  But I thought -- oh,

12  you know what, you're right.  I had prepared a

13  stand-alone that would track our numbering.  So I'll

14  just take that and I'll renumber it and prepare one

15  that tracks how you seat them, with the lowest number

16  juror sitting closest to the aisle.

17          THE COURT:  One of the issues we haven't

18  quite figured out is, you know, we've got six

19  alternates.  So we haven't quite figured out how

20  that's going to work, but -- when we actually get to

21  the trial, but at least for the voir dire purposes

22  we'll have 14 over here in the jury box.  Then what I

23  typically do, is right to behind where Mr. Acee is

24  sitting, would 15, so that will be 15 through 20.

25  But we'll put 15 right where Mr. Acee is on that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6016

```
 1    corner.  It will run that way.

 2            I don't know who asked that question.  Who

 3    asked that question?  Did I respond?

 4            Anybody else?  Mr. Villa?

 5            MR. VILLA:  Your Honor, after voir dire,

 6    are we able to use that bench on this side of the

 7    well for investigators and paralegals and things like

 8    that?

 9            THE COURT:  I don't have any problem with

10    that.  Do you see any problem with that, Ms. Wild?

11            THE CLERK:  I didn't hear the question.

12    I'm sorry.

13            THE COURT:  What Mr. Villa said is once

14    we're done with voir dire, where Mr. Baca is sitting

15    on that row with Mr. Lowry, can they use that row for

16    paralegals and investigators.

17            THE CLERK:  I don't think that will be an

18    issue.  But until we get other things nailed down, I

19    think we need to leave that a little bit fluid.

20            THE COURT:  Okay.  We'll try to make that

21    happen.  We'll see if it works.

22            Mr. Jewkes?

23            MR. JEWKES:  Your Honor, may we get a

24    little guidance as far as when the Court anticipates

25    having the new budgets completed?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6017

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254 of 260

```
 1                THE COURT:  Let me see if I --
 2                THE CLERK:  I have Mr. Jewkes' and Jacks',
 3      and then the others you have, Judge.
 4                THE COURT:  I've got them in my briefcase.
 5      Maybe I can get to them tonight and I can take them
 6      back with me.  I wanted to send a Fed Ex package, but
 7      you can tell by what I've been talking about during
 8      the day what I've been working on.  So she's got a
 9      few there.  But I think I have yours.  I'll try to
10      look at it tonight, sign it, and take it back to
11      Albuquerque tomorrow.
12                MR. JEWKES:  Very well, Your Honor.  Thank
13      you.
14                THE COURT:  Sorry, I'm a little bit slow on
15      that.  But we've just had a lot of issues, as y'all
16      know.
17                Any other -- any issues on security, what I
18      just read?  Any other comments, questions, concerns?
19                All right.  A couple of things that -- just
20      loose ends here.  This is for the first trial.
21      Unless the defendants tell me otherwise, this will be
22      the order I will call upon you for your -- we'll
23      start with the voir dire.  When I start introducing
24      the lawyers and the parties, and then this will also
25      be what I use, since we'll be going into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6018

```
 1    case-in-chief, and then we'll be going into opening
 2    arguments -- I'll use the order of Mr. Sanchez will
 3    go first, so Mr. Jewkes, Ms. Jacks; Mr. Baca will go
 4    second, Mr. Lowry, Ms. Duncan; Mr. Garcia will be
 5    third, so that will be Ms. Sirignano, Mr. Adams; Mr.
 6    Herrera will be fourth, Ms. Bhalla and Mr. Maynard;
 7    then Mr. Perez will be last, so Ms. Fox-Young and Mr.
 8    Villa.  If y'all want a different order and can agree
 9    on a different order, I'd be glad to do what you'd
10    like.
11          Ms. Duncan.
12          MS. DUNCAN:  Your Honor, the defendants
13    have been talking about the order.  I think we've
14    come up with an agreement as to voir dire and for the
15    openings.
16          With respect to cross-examinations during
17    the trial, we're trying to avoid duplications, having
18    one lawyer take the lead, and then other lawyers
19    would follow up with some follow-up questions.  I
20    don't have my notes in front of me of what we've
21    agreed to, but we can get that to the Court.  But we
22    do think the order for voir dire will be slightly
23    different than the order for the opening statements.
24          THE COURT:  All right.  Just let me know,
25    because I'll put it up here somewhere and try to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 256

```
 1    remember to follow it.
 2            All right.  I think that concludes my list
 3    of things I needed to discuss with you as far as
 4    mechanics.
 5            Can you think of anything else, Ms. Wild,
 6    we need to bring up, discuss, as far as mechanics?
 7                THE CLERK:  Not at this time.
 8                THE COURT:  Anybody else have any issues on
 9    mechanics?
10                MS. JACKS:  I do briefly, Your Honor.  With
11    respect to clothing for our client, is there a -- I
12    guess limit on what we can bring, or what is --
13                THE COURT:  I think the Marshal Service is
14    fairly liberal.  But let me give a few things:  Don't
15    bring -- don't bring French cuffs, things like that.
16    Let's don't probably bring stick pins, ties, and
17    things.  But I think if you bring attire, they're
18    going to be okay and liberal with it, as far as like
19    a suit, tie, white shirt, that sort of thing.
20                MS. JACKS:  I guess what I meant was like
21    the number of changes of clothes, like pairs of
22    pants, jackets?
23                THE COURT:  I don't think they have any
24    limits.
25                MS. JACKS:  Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6020

```
 1              THE COURT:  Anything else?
 2              And you can't have belts.  They can't have
 3    belts.  So you've got to exclude belts.
 4              Ms. Sirignano.
 5              MS. SIRIGNANO:  Judge, I was inquiring
 6    whether we can have a room.  The attorney room
 7    downstairs is very small.  And I know someone raised
 8    it with Ms. Wild that we could have a room here in
 9    the courthouse, perhaps, to keep our materials and
10    other things in while we're in trial.  Do you think
11    that's a possibility?
12              THE COURT:  Ms. Wild, have you considered
13    that request and have any response?
14              THE CLERK:  I don't have a response for
15    that today.
16              THE COURT:  We'll look at it, Ms.
17    Sirignano.  We'll see, and probably get back to you
18    on that.
19              MS. SIRIGNANO:  Thank you.  But the room
20    downstairs is very small, and sometimes there is
21    paper, sometimes there is not.  And we're just hoping
22    maybe we could have a workroom, if we needed to use a
23    workroom during the trial.
24              THE COURT:  Okay.
25              MS. SIRIGNANO:  Thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6021

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258

```
 1              THE COURT:  I can't promise you anything on
 2     it.  Because I don't know this building very well
 3     myself.  I get myself in here and then I try not to
 4     get lost because I don't know the building extremely
 5     well.
 6              Any other things we need to discuss as far
 7     as mechanics?
 8              MR. LOWRY:  Your Honor, it's a trivial
 9     question, but you said no belts.  What about
10     suspenders or anything like that?  Are they off too,
11     or just --
12              THE COURT:  Do you know about suspenders,
13     Ms. Wild?
14              THE CLERK:  I don't know specifically.  We
15     can look into it.  I guess I kind of doubt it.
16              THE COURT:  Don't count on it, but we'll
17     find out.
18              Anything else on mechanics?  Security?
19              MR. MICKENDROW:  Your Honor, I just wanted
20     to clarify.  The Marshal Service would be fine with a
21     belt.  The defendants just would not be allowed to
22     wear them inside the cellblock, obviously.  But as,
23     they're coming out, we'll allow the defendants to put
24     the belts on, if that will help alleviate that issue.
25              THE COURT:  Okay.  Anything else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6022

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 259 of 260

 1            MR. ADAMS:  I think that would be very
 2    helpful.
 3            THE COURT:  Any other issues?  Mechanics?
 4    Anything else anybody wants to discuss today?  If
 5    not, I'm inclined to shut her down for the day.  And
 6    we'll get back at 9:00, take up those two motions
 7    that Mr. Garcia has.  Anything else?  All right.
 8    Y'all have a good evening.
 9            (The Court stood in recess.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                  C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on January 17, 2018.

15

16

17

18    _____
      Jennifer Bean, FAPR, RMR-RDR-CCR
19    Certified Realtime Reporter
      United States Court Reporter
20    NM CCR #94
      333 Lomas, Northwest
21    Albuquerque, New Mexico 87102
      Phone:  (505) 348-2283
22    Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8                      VOLUME 3

9         Transcript of Motions to Suppress Proceedings
     before The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County, New Mexico,
     commencing on January 10, 2018.

11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
13
     For the Defendants: Mr. Brock Benjamin; Ms. Cori
14   Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper; Mr.
     James Castle; Mr. Jeff Lahann; Mr. John Granberg; Mr.
15   Scott Davidson; Ms. Amy Jacks; Mr. Richard Jewkes;
     Ms. Amy Sirignano; Mr. Christopher Adams; Mr. Marc
16   Lowry; Ms. Theresa Duncan; Ms. Carey Bhalla; Mr.
     William Maynard; Mr. Donovan Roberts; Ms. Lisa
17   Torraco; Ms. Angela Arellanes; Mr. Jerry Walz

18   For the Witness Montoya:  Mr. Michael Keefe

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6025

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2026

```
1              THE COURT:  All right.  We'll go on the
2    record.  I understand we still don't have a witness
3    here, so we're going to have to decide what we're
4    going to do.  Whether we're going to --
5              MR. CASTLE:  And a defendant, Your Honor.
6              THE COURT:  So we're going to have to
7    decide what we're going to do.
8              Mr. Keefe, how are you this morning?
9              MR. KEEFE:  Good morning, Judge.
10             THE COURT:  We don't have a witness yet.
11             MR. KEEFE:  That's my understanding, Your
12   Honor.
13             THE COURT:  Okay.  Well, we didn't -- I
14   don't know what we can profitably do.  We just pushed
15   everything back.
16             But let me make a couple of statements,
17   then we'll see if there are some other things we can
18   do here before we start those two motions.
19             Ms. Standridge talked to Matt Dykman, Clerk
20   of the Court, about the defendants' request for a
21   room.  There is probably nothing in this building.
22   But -- no promises, but Mr. Dykman is looking at
23   something maybe in the Runnels Building nextdoor.
24   Before we spend a lot of time trying to find
25   something over there, would that work?  I mean, would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6026

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3027

```
1    that be better than your current room?  Would it be

2    better than nothing?  What's your thoughts?

3             MS. HARBOUR-VALDEZ:  For Trial 2, we would

4    like that.  I don't know about 1.

5             THE COURT:  How about 1?  Is it worth the

6    effort?  Ms. Jacks?

7             MR. JACKS:  Yes.

8             THE COURT:  Yes.  Okay.  So again, no

9    promises, but Ms. Standridge will communicate that to

10   Mr. Dykman, and we'll see if -- there is a couple of

11   possibilities over there, but no promises.

12            The second thing is, before we get started,

13   I have a typographical question for all of you.  But,

14   as we begin to put things in front of the jury, I

15   think it has maybe some importance, as I start

16   putting jury instructions in front of them.  And I'm

17   not sure whether the Government or the defense should

18   address it.  So anybody jump in to answer, but how

19   should I spell Syndicato, when referring to SNM?  The

20   indictment and media have been spelling it with a Y.

21   Whereas, the Spanish Language Dictionary spells the

22   word with an I, S-I-N-D-I-C-A-T-O.  Your thoughts as

23   to what my preliminary instructions -- and as we talk

24   to the jury and begin to put written product in front

25   of them, what it should say?  Ms. Armijo?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6027

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6028

```
 1            MS. ARMIJO:  Your Honor, I believe both are
 2    used, both spellings are used by members.  We have
 3    members that have tattoos with both the Y and the I.
 4    I guess, if the Court is not inclined to use both, I
 5    guess we would request it be consistent with the
 6    indictment.  But both are used by the members.
 7            THE COURT:  Are the defendants comfortable
 8    with using a Y, if I put it in a preliminary
 9    instruction?  I don't know what I'm putting in a
10    preliminary instructions.  But anybody have any
11    problem with that?  All right.  I had switched over
12    in my writing to an I, after one of the defense
13    lawyers sent me something.  But I think I'll go back
14    to Y, unless anybody says otherwise.
15            Well, I understand, through Ms. Standridge,
16    that the Government is suggesting that we try to do
17    some argument on the motion before the witness gets
18    here.
19            Ms. Sirignano, Mr. Adams, it's y'all's
20    motion.  What's your thoughts?
21            MR. ADAMS:  Judge, I don't know what I have
22    to add other than what's in the notion.  We have a
23    cellphone that was given -- I need to get better at
24    this since Oprah may not be in her job much longer.
25            I think we laid out in our arguments in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5029

1    1529, there are factual questions.  We have two

2    issues.  One related to the destruction of the

3    cellphone, which had been given to Mario Montoya.

4    And he -- there is a recorded conversation where he's

5    instructed by an alleged member of the SNM to destroy

6    the phone.  The phone was destroyed, and ultimately

7    disposed of by Special Agent Acee.  And so we have

8    questions about that, which are laid out.

9              And then there is a body wire.  And we

10   don't know whether the body wire was a full

11   recordation or whether it was partially recorded and

12   what the instructions were for Mr. Montoya.  So I'm

13   certainly capable of filibustering until the witness

14   arrives.  But I think our position is fairly clear,

15   and I think the witness will -- if he's able to

16   resolve any of the issues, he will resolve them when

17   he's under oath.  If he's unable to resolve any

18   issues, then I think we'll have an argument about why

19   evidence, that could be very important for the

20   defense, was not preserved or not recorded.

21             So that's basically our motion.

22             THE COURT:  Is the only witness you're

23   going to call Mr. Montoya?

24             MR. ADAMS:  That's the only witness we

25   intend to call.  They may -- I anticipate they may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6029

1   want to call Special Agent Acee, if there is anything

2   to rebut.

3          THE COURT:  Okay.  All right.  Thank you,

4   Mr. Adams.

5          Mr. Beck, are you going to be handling

6   this?

7          MR. BECK:  Yes.

8          THE COURT:  Mr. Beck.

9          MR. ADAMS:  And, Judge, I guess I will say

10  we don't necessarily have agreement on who has the

11  burden of proof in this.  We captioned 1529 as a

12  motion to suppress.  I'm a defense lawyer, so

13  therefore, I would prefer to cross.  But if we need

14  to do direct, I can probably learn how to do that.

15         THE COURT:  All right.  Mr. Beck.

16         MR. BECK:  I'll start with that last point.

17  I think we're all familiar with the Trombetta and

18  Youngblood standards in which the burden is on the

19  defense to prove that the Government destroyed

20  exculpatory or potentially exculpatory evidence.

21         I think the one portion in which Mr. Garcia

22  may believe that his 1529 motion is a motion to

23  suppress, is pages 7 to 8, in which Mr. Garcia argues

24  that the United States has not authenticated the

25  audio recordings.  That's not a basis for a motion to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6030

1    suppress.  That would be a basis to exclude the

2    evidence at trial.

3            So that's not a motion to suppress.

4    Really, what this is, is a due process motion for

5    destruction of evidence.

6            I think throughout -- and so I think the

7    reason that argument may be helpful here is to put

8    these motions in context.  I think 1330 and 1529 go

9    hand in hand.  1330 was at a time in which there was

10   confusion which cellphone was destroyed.  I think the

11   defense believed it was Eric Duran's cellphone.  It

12   was, indeed, the cellphone that Mario Montoya had.

13   So these two motions all go to the same thing, which

14   was the fact that that cellphone no longer exists.

15           The evidence -- I think that's also an

16   important distinction to recognize, because Eric

17   Duran's cellphone was a cellphone in prison.  So it

18   was the only cellphone he had.  So over the last two

19   days we've heard evidence that there may have been

20   photographs on that phone.  Eric Duran, I think, said

21   he took selfies in there, because that's what you

22   would do with a cellphone in prison.

23           You'll hear today in the testimony that

24   there is a difference when Mario Montoya is not in

25   prison, and he's provided a government flip phone.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    He had his own personal cellphones, on which he would

2    take selfies, photographs, or whatever they may be.

3    And so, to the extent that there is the potential for

4    exculpatory evidence on a cellphone, it is much less

5    when Mario Montoya only used this government-provided

6    cellphone to capture recordings of the defendants in

7    this case.  It is very unlike Duran's cellphone,

8    which would have been used in prison.

9            Also, it's a flip phone.  You'll hear it's

10   a Verizon flip phone, purchased from Walmart for $19.

11   So there are no apps on the phone, like Facebook and

12   Twitter.  There is no GPS data.  There is no location

13   tracking on this phone.  I think there may be web

14   browsing, but web browsing on a flip phone is not

15   practical.

16           So the potential for exculpatory

17   information in this limited flip phone that Mr.

18   Montoya used only to record conversations is much

19   less than it may have been in 1330, where it was

20   Duran's cellphone in the prison.

21           I think you'll also hear that Mr. Montoya

22   will say that it was accidental that he ran over the

23   phone.  And I think it's important to note that

24   that's not the destruction of the evidence that

25   matters here.  It surprises me to hear that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9033

1   Mr. Garcia intends only to call Mario Montoya.

2   Because Mario Montoya broke apart the phone.  But it

3   was Special Agent Acee who destroyed the evidence,

4   who destroyed the physical phone.  His affidavit,

5   which was attached, and his testimony, I expect, will

6   be that it was leaking battery acid, and because of

7   that, he destroyed it as a hazard.

8         So they will not be able to meet their

9   standard under Trombetta or Youngblood.  I mean,

10  there is no evidence -- there will be no evidence, I

11  expect, that it was apparently exculpatory.  There

12  will be no evidence of bad faith because, when the

13  phone was taken to Special Agent Acee in multiple

14  pieces, he threw it out because the battery acid was

15  leaking.  At best, that will be negligence.  As we

16  found through the course of these pretrial hearings,

17  negligence just doesn't get there.  It has to be bad

18  faith destruction.

19        Another factor that plays in is there was a

20  consensual and court-ordered wiretap on this phone.

21  So that all of the text messages and phone calls in

22  their entirety, without exception, were preserved by

23  the FBI pursuant to their normal Title III

24  requirements, and those were all produced to the

25  defendants.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6033

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10034

1          So a lot of the points that the defendants

2    were unclear about, whether there was selective

3    recording, or whether the recordings were only

4    partial, or Mr. Montoya deleted some, impossible.  It

5    was a Title III wiretap.  All those calls, all those

6    text messages have been produced to the defendants.

7          I think that probably gets at it.  The last

8    thing is the body wire evidence.  This was simply a

9    listening device in which -- which operated much like

10   a walkie-talkie.  The agents would turn it on when

11   they were with Mario Montoya.  He would carry it on

12   his person.  At that point, they listened in on

13   everything from the time they turned it on to the

14   time they turned it off.

15          In addition to that, there is a third

16   reception device for this audio body recording, which

17   is the FBI downloads the entire content of this

18   conversation in real-time.  So in addition to the

19   agents listening, this conversation is recorded, I

20   believe, in Quantico.  And then what happens is,

21   after they're done, the ELSUR technician in

22   Albuquerque, from her ELSUR computer, then goes into

23   this mainframe in Quantico, downloads it, and puts it

24   onto a disc.  And that's how we obtained it to

25   produce to the defendants.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 18035

1        So there is no way in which what is

2   captured on those recordings produced is not

3   everything that transpired in that time.  There is no

4   way that anyone could have gone in there and edited

5   those conversations.  And you'll hear from the agents

6   at trial, when they testify about hearing those

7   conversations, that that's not what happened.

8        So with that being said, I think correctly

9   it is the defendants' burden to produce this

10  evidence.  But if they don't intend to call Special

11  Agent Acee, I foresee that we will call him in

12  rebuttal just to cover all of our bases.  And given

13  the way that the Court has conducted these pretrial

14  hearings, it makes as much sense for me to call him

15  now and proceed with direct as it would later.

16        THE COURT:  All right.  Do you want to call

17  Special Agent Acee?

18        MR. BECK:  Yeah, the United States would

19  call Special Agent Acee.

20        THE COURT:  All right.  Mr. Acee, since

21  we're going into another hearing in another set of

22  motions, I'll have Ms. Standridge swear you in.

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6035

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 12 6036

```
 1                        BRYAN ACEE,

 2          after having been first duly sworn under oath,

 3          was questioned and testified as follows:

 4                     DIRECT EXAMINATION

 5             THE CLERK:  Please be seated.  State and

 6    spell your name for the record.

 7             THE WITNESS:  Bryan Acee, A-C-E-E.

 8             THE COURT:  Mr. Acee.  Mr. Beck.

 9    BY MR. BECK:

10        Q.  Special Agent Acee, I'm going to go through

11    your background a little bit quicker here.  How are

12    you employed?

13        A.  I'm a Special Agent with the FBI, assigned

14    to the Albuquerque Field Office.

15        Q.  And were you the Special Agent who is the

16    lead case agent into the investigation of the SNM

17    that led to this case?

18        A.  Yes, sir.

19        Q.  In connection with that, did you use

20    consensual cellphone wiretaps of certain cooperators?

21        A.  Yes.

22        Q.  Did you have a consensual cellphone wiretap

23    for Mario Montoya?

24        A.  I did.

25        Q.  What was the cellphone that you used to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6036

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 13

```
 1    tap -- what cellphone did you tap in connection with

 2    that?

 3         A.   It was a phone I purchased at Walmart.  It

 4    was a Samsung.  I think, in my notes back there at

 5    the table, I may have the model number.  But it was a

 6    flip phone I purchased.  And service was through

 7    Verizon.

 8         Q.   Where did you purchase that cellphone?

 9    Where did the FBI purchase that cellphone?

10         A.   I purchased it at a Walmart store.

11         Q.   Did you provide that cellphone to Mr.

12    Montoya?

13         A.   I did.

14         Q.   What did you tell Mr. Montoya when you gave

15    him that cellphone?

16         A.   That phone was to be used with his

17    communications with other SNM members; that we'd be

18    recording everything that took place on that phone;

19    and that he was to use it only in communicating with

20    those members.

21         Q.   Did he follow those directions?

22         A.   He did.

23         Q.   And how do you know that?

24         A.   Well, we recovered recordings, and text

25    messages.  And I know that he followed that, because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6037

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6038

1   we had other listening devices utilized.  And his

2   communications with me were as per my instructions,

3   with a separate phone, with what I'll call one of his

4   personal phones.

5       Q.   So he communicated with you with a personal

6   phone other than the flip phone you gave him?

7       A.   Yes.  If I recall correctly, he had two

8   personal phones; then he had the FBI phone that was

9   utilized just for communications in furtherance of

10   our investigation.

11      Q.   For his cellphone, did you have a

12   court-ordered wiretap to intercept calls and text

13   messages on that phone?

14      A.   On his cellphone that I provided him, we

15   had the court order.

16      Q.   And how did you obtain that court order?

17      A.   Through my work with your office.

18      Q.   Did you go to a magistrate judge and apply

19   for that wiretap?

20      A.   I did.  I believe actually Ms. Armijo may

21   have obtained it for me.  We did eight of them with a

22   number of extensions.  But I worked with Ms. Armijo

23   to secure those.

24      Q.   Did you have Mario Montoya's consent to tap

25   that phone?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6038

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 15039

1      A.    I did.  I used our standard FBI forms to

2   obtain consent.

3      Q.    When Mr. Montoya used that phone, did you

4   indeed capture all of the conversations and text

5   messages on that phone?

6      A.    Yes.

7      Q.    How do you know that?

8      A.    They were provided to me through our

9   Electronic Surveillance Unit in a complete package.

10      Q.    What's the Electronic Surveillance Unit?

11      A.    The FBI has a unit that's dedicated to wire

12   interceptions.  There is a standard protocol that,

13   once we obtain a court order, we provide our

14   technical agents with that court order, and all of

15   our internal approvals.  It's provided to our

16   Electronic Surveillance Unit.  And then they serve it

17   on the phone company.  They, in turn, collect the

18   data from the phone company pursuant to the court

19   order.  And then they pipe that information to the

20   field office, so that we can review it in a wire

21   room.

22      Q.    And that procedure happened with the phone

23   that was destroyed in this case?

24      A.    Yes, sir.

25      Q.    Mr. Montoya's phone?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                   e-mail: info@litsupport.com

DNM 6039

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6040

```
 1        A.   Correct.

 2        Q.   So the record that we received from the

 3   wiretap and we provided to the defendants, was that a

 4   complete and unbridged record of all the phone calls

 5   conducted on Montoya's phone?

 6        A.   Yes.

 7        Q.   How did you determine which phone calls or

 8   text messages would be recorded and preserved?

 9        A.   All of them were.

10        Q.   And what data could have been intercepted

11   pursuant to that wiretap and wasn't intercepted?

12        A.   All telephone calls and text messages.

13        Q.   So was there any data or telephone calls,

14   text messages, that could have been intercepted that

15   weren't?

16        A.   No.

17        Q.   At some point, did you learn that Mr.

18   Montoya had broken his phone?

19        A.   Yes.

20        Q.   What happened?

21        A.   Well, I just prior to the takedown on

22   December 3, I caused Mr. Montoya to be relocated out

23   of state for his safety.  I did collect the phone

24   before the takedown, because I anticipated there

25   could be some last minute phone calls, and I wanted
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6040

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 17

```
 1    him to be able to answer the phone.  So I made
 2    arrangements to collect the phone from him, I think
 3    about a week after the takedown.  He was back in New
 4    Mexico for a short period of time.  So I asked him to
 5    bring the phone.  He said there was a problem; that
 6    he damaged it.  I said, "Just bring it."  And when we
 7    met, he gave me the phone.  And it was in bad shape.
 8         Q.   What do you mean "in bad shape"?
 9         A.   It was cracked, the glass screen was
10    cracked.  The back cover was missing.  The battery
11    was -- it had a -- not a crack, but like a -- it was
12    damaged as well.  There was fluid in that area that
13    was kind of looked like syrup, to describe it.  And
14    it was missing quite a few pieces.  He apologized.
15    If I remember correctly, he said when he was loading
16    an RV that he had purchased to move out of state in,
17    he ran it over.  I think it was like in his
18    daughter's backpack, or in a backpack with some of
19    his daughter's other electronic devices that he'd
20    also run over, and was pretty upset about.
21         Q.   Did you believe Mr. Montoya when he told
22    you he ran over it?
23         A.   I did.
24         Q.   What did you do with the phone?
25         A.   I disposed of it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6041

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 18 of 133

```
 1        Q.   Why did you do that?

 2        A.   For a couple reasons.  At the time, I

 3   didn't consider the phone itself evidence.  If it had

 4   been in good shape, I would have recycled it and used

 5   it in another case after it had been wiped.  That

 6   would save the Bureau some money, save me or the

 7   Bureau $19 buying another one, I guess.  I have a box

 8   of phones that I'll save and recycle.  So, like I

 9   said, I didn't consider it evidence at the time.  And

10   because of the condition that it was in, I didn't

11   want to leave it in my desk drawer or throw it in

12   with the other phones.  So I simply discarded it.

13        Q.   Why didn't you want to leave it in your

14   drawer and put it with the other phones?

15        A.   It wasn't in a working condition.  So there

16   wasn't any reason, in my mind at the time, to keep

17   it.  I had no use for it, and it was not able to

18   work.

19        Q.   Did you think that there was exculpatory

20   evidence on the phone?

21        A.   I didn't.  If I had any inclination that

22   there was, I would have kept it.

23        Q.   What would have given you that inclination?

24        A.   I'm not sure what would have given me -- I

25   guess --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6042

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10043

```
 1        Q.   Let me ask that a different way.  Did Mario
 2   Montoya tell you he took photographs using that flip
 3   phone?
 4        A.   No.
 5        Q.   Did Mario Montoya tell you he searched the
 6   internet on that cellphone?
 7        A.   No.
 8        Q.   Did Mario Montoya tell you that he made
 9   videos on that phone?
10        A.   No.
11        Q.   What did you think Mario Montoya used that
12   phone for?
13        A.   He just used that phone when we had
14   operations.  There were a couple of times where he
15   would get nervous, and he'd be going to a meet
16   location to meet with us before a deal, and he'd
17   forget to bring the phone, because it wasn't his.  He
18   only used it on our operations, so he'd be on his way
19   and then he'd tell me, "Hey, I'm going to be late.
20   I've got to go back to the house and get the phone."
21   My impression was he only used it, and my impression
22   is correct because we didn't have any recordings from
23   anyone else, only targets of the investigation.
24        Q.   I want to talk now about a body recording
25   device that Mario Montoya used in this case.  Did he
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6043

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20044

```
 1    use a body recorder?

 2         A.    He did.

 3         Q.    What did he use it for?

 4         A.    Anytime he met with a target of the

 5    investigation in person, we equipped him with a body

 6    recorder so that that meeting or transaction could be

 7    recorded.

 8         Q.    How often did he use the body recorder?

 9         A.    Every time he met with a target of the

10    investigation and we were conducting surveillance of

11    that meeting.

12         Q.    Now, for example, when you used this body

13    recorder, what was the procedure that you would go

14    through with Mr. Montoya?

15         A.    I maintained custody of the body recorder.

16    I would meet with Mr. Montoya before the deal,

17    because we searched him and his vehicle.  I would

18    then give him the body recorder.  We'd cover any

19    last-minute instruction or questions.  We'd go over

20    our standard briefing stuff, safety considerations,

21    stuff like that.

22              When it came time for Mr. Montoya to

23    actually meet with the target, I would activate the

24    recording.  I would listen live.  This particular

25    advice allowed me to do that, as well as the other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6044

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 21 6045

1    agents on scene.  And then I would deactivate the

2    recorder when the deal was over and I would recover

3    it from him because we needed to do a post-buy or a

4    post-meeting search, and that's when I would recover

5    the device.

6        Q.   While these operations were going on, did

7    the body recorder record everything that happened

8    between the time that you turned it on and the time

9    that you turned it off?

10       A.   Yes, sir.  To be very specific, I started

11   it before Montoya would arrive.  And that's why

12   you'll hear on a lot of the recordings there is music

13   playing in the car.  Then I would deactivate it once

14   he was away from the location.  I'd wait a few

15   seconds, until he was driving away before I turned it

16   off.

17       Q.   Did you listen to the recordings in

18   real-time as they were going on?

19       A.   I did.

20       Q.   Were the recordings stored somewhere else

21   in real-time as you were listening?

22       A.   Yes, sir, they were.

23       Q.   How does that work?

24       A.   So that the device allows us to listen in

25   live.  And at the same time, whatever is being picked

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6045

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22046

1    up on that wire is being recorded through -- at our

2    Electronic Surveillance Unit.  So after the deal,

3    I'll tell our electronic surveillance technician that

4    I need a download of that, and then she will provide

5    that to me on a CD.

6         Q.   Have you listened to the recordings that

7    were on that CD that we provided to the defense?

8         A.   Yes, sir.

9         Q.   And are they the same recordings -- are

10   they the same conversation that you heard

11   contemporaneously with when you recorded them?

12        A.   They are.

13             MR. BECK:  May I have a moment, Your Honor?

14             THE COURT:  You may.

15             MR. BECK:  Pass the witness, Your Honor.

16             THE COURT:  Thank you, Mr. Beck.

17             Mr. Adams, do you have cross-examination?

18   Ms. Sirignano, cross-examination of Mr. Acee?

19                      EXAMINATION

20   BY MS. SIRIGNANO:

21        Q.   Good morning, Agent Acee.

22        A.   Good morning.

23        Q.   Agent Acee, you provided an affidavit for

24   the Government's response to our motion to suppress;

25   correct?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23

```
 1          A.    Yes.

 2          Q.    And that affidavit is consistent with what

 3    you testified to today; correct?

 4          A.    Yes.

 5          Q.    What was the phone number that Mario

 6    Montoya had that the FBI gave him?

 7          A.    I have it on my notes, if I could retrieve

 8    those.

 9          Q.    That's fine.

10          A.    Could I do that quickly?

11          Q.    Sure.

12          A.    The telephone number was 505-219-7757.

13          Q.    And you got the phone at Walmart?

14          A.    I did.

15          Q.    How much was it?

16          A.    It was 19.99 before taxes.

17          Q.    Did you sign up Mr. Montoya as an informant

18    in this case?

19          A.    I did.

20          Q.    When was that?

21          A.    I couldn't tell you off the top of my head.

22          Q.    Was it in the fall of 2015?

23          A.    I believe so.

24          Q.    Okay.  And how did you come about signing

25    him up as an informant?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6047

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 24048

1    A.   I arrested him.

2    Q.   For what?

3    A.   Possession with intent to distribute

4    heroin, and being a felon in possession of a firearm.

5    Q.   Are those charges pending today?

6    A.   Yes.

7    Q.   What other benefits did you give Mr. -- let

8    me rephrase.

9         What did you tell Mr. Montoya when you

10   signed him up as an informant regarding those cases?

11   A.   Well, he was a pretty smart guy.  He wanted

12   to talk, but he wanted to consult with an attorney

13   before he did.  So I helped facilitate that.

14   Q.   And who is his attorney?

15   A.   Michael Keefe.

16   Q.   From the federal defender's office?

17   A.   Yes, ma'am.

18   Q.   So he met with Mr. Keefe before signing up

19   with you?

20   A.   Yes.

21   Q.   When was that?

22   A.   I think it took us -- if we say the fall of

23   2015 -- I think it took roughly a couple of weeks to

24   kind of line everything up.  He was provided with a

25   Kastigar letter, and we also had to coordinate with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6048

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25

```
 1    the State.  So it took a little longer than normal.
 2    But within, I think, a few weeks, we had a sit-down
 3    meeting -- I believe it was at the he Federal Public
 4    Defender's Office.
 5         Q.   What did you have to coordinate with the
 6    State?
 7         A.   I was looking at Mr. Montoya or his
 8    involvement in the Shane Dix homicide, which was a
 9    cold case and unsolved.  And because the
10    Government -- I don't want to mischaracterize the
11    Government, but I don't believe we initially had
12    jurisdiction there, and it required the District
13    Attorney's Office be involved.
14         Q.   To investigate the Shane Dix homicide?
15         A.   Yes.  Well, I just think it was proper for
16    the DA's office and the Sheriff's Office to be there.
17    They were also at that initial meeting.  And I wasn't
18    driving that train.  That was the attorneys with the
19    U.S. Attorney's Office and the District Attorney's
20    Office.
21         Q.   He confessed to that homicide; correct?
22         A.   No.  He explained his participation in it.
23    But per his statement, he didn't pull the trigger.
24    He was involved in that homicide, though.
25         Q.   So did you sign him up like a regular
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6049

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 26050

```
 1    informant, with all the FBI policies and the

 2    paperwork?

 3         A.   Yes, ma'am.

 4         Q.   What was his name in the FBI?

 5         A.   "Pyro."

 6         Q.   "Pyro."  Did you pay Mr. Montoya?

 7         A.   He received benefits in the form of, like,

 8    fuel, relocation.  And I paid for a trade school for

 9    him.  I don't believe I ever paid him where I handed

10    him cash and he signed a receipt for that.  My

11    payments were definitely benefits, but I don't

12    believe I ever gave him money because he was working

13    off charges.

14         Q.   And you said the charges are still pending?

15         A.   Yes.

16         Q.   And he picked up new charges recently;

17    correct?

18         A.   He did.

19         Q.   You said he had two personal phone numbers,

20    in addition -- or two personal phones in addition to

21    the FBI phone.  Do you know those two numbers?

22         A.   I don't.  Mr. Montoya had a lot of phones,

23    and he changed his numbers frequently, like a lot of

24    guys like him do.

25         Q.   What does that mean?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6050

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6051

```
 1          A.   That means a lot of the SNM informants and

 2    other informants that are involved in drug

 3    trafficking, they frequently change their numbers.

 4          Q.   So would you call him on the FBI phone or

 5    would you call him on his personal phone?

 6          A.   Personal.

 7          Q.   What was that number?

 8          A.   I couldn't tell you.

 9          Q.   Why would you call him on the personal

10    phone?

11          A.   That's how I communicated with him.

12          Q.   Why?

13          A.   Well, I needed to communicate with him as

14    an informant.

15          Q.   But his personal phone wasn't being

16    recorded; correct?

17          A.   It was not.

18          Q.   Why did you choose to use that phone

19    instead of the recorded phone?

20          A.   Well, I'm not the subject of the

21    investigation, so I'm not interested in recording

22    myself.

23          Q.   Have you turned over the calls on his

24    personal phones to the U.S. Attorney's Office?

25          A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6051

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 28

```
 1          Q.   Why not?
 2          A.   I don't believe they contain any evidence.
 3          Q.   They were involved in the investigation;
 4   correct?
 5          A.   They were.
 6          Q.   And you didn't turn it over?
 7          A.   I have not turned over the personal phone
 8   records of any of the informants.
 9          Q.   So you're saying that you used other
10   informants' personal phones to conduct an FBI
11   investigation?
12          A.   No, I don't use their phones to conduct the
13   investigation.  I use their phones to call them to
14   talk to them.
15          Q.   Which, presumably, would involve an
16   investigation, right, a federal investigation?
17          A.   I think everything I do involves a federal
18   investigation.  But the fact that I'm talking to an
19   informant to relay instructions to him, or safety
20   concerns, or tell them to meet me somewhere is not
21   pertinent to my investigation.  I'm just
22   communicating with them.
23          Q.   Which informants have you called on their
24   personal cellphones?
25               MR. BECK:  Objection, Your Honor,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6052

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29

```
 1    relevance.

 2              THE COURT:  Overruled.

 3         A.   Every one of them.  I'd have no other way

 4    to get ahold of them.

 5         Q.   Even if you gave them an FBI phone?

 6         A.   Yes.  I mean, I think Eric Duran is the

 7    only exception to my having to communicate with

 8    somebody over the wire phone.  Because Duran was in

 9    the Level 6, and sometimes it was difficult to get

10    ahold of him.  Informants on the street, though, I

11    would just call them on their phone.

12         Q.   Their personal phones?

13         A.   Yes.

14         Q.   Do you have a list of all of your

15    informants' personal phone numbers anywhere?

16         A.   No.

17         Q.   Why not?

18         A.   Well, there is no requirement for me to do

19    so.  That would be, I guess, the first answer.  And

20    I've not been asked to.

21         Q.   Does your phone contain an address book?

22         A.   Yes.

23         Q.   Are your confidential informants' phone

24    numbers contained in that address book?

25         A.   Some are.  To a man, not one of them has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6053

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 30054

1   kept the same number throughout the case, though.  I

2   can't think of a single informant who has kept the

3   same number.  Even their wives and girlfriends change

4   their numbers.

5       Q.   Right.  So would you call Grace Duran on

6   her personal cellphone?

7       A.   I have, or she's called me, and --

8   Ms. Duran, we talk about two of them, the younger

9   one; I've only talked to the older one once.  She

10   changes her phone like clockwork.

11      Q.   Going back to Mr. Montoya, would his two

12   personal cellphone numbers be in your cellphone

13   address book?

14      A.   No.  I may have a couple numbers for him.

15   But, as you're aware, I had some difficulty getting

16   ahold of him, which resulted in my requesting an

17   arrest warrant for him for pretrial violations.  So

18   the two numbers that I -- the last two numbers I have

19   for him, I may still have.  But he was unresponsive

20   to those, and presumably changed his number again.

21   Mario, Mr. Montoya, would text me or call me from

22   different numbers all the time.

23      Q.   And would that information be on your

24   cellphone?

25      A.   I believe I may have one or two old numbers





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    for him.  I don't still have the phone number that I

2    was communicating with him on in the spring of 2015.

3         Q.   Can you preserve that phone, those phone

4    texts for me, Agent Acee?

5         A.   Yes.

6         Q.   Thank you.

7              So you talked about the Electronic

8    Surveillance Unit providing you with a complete

9    package of phone calls and text messages; correct?

10        A.   Correct.

11        Q.   And, as we saw the other day, how do you

12   know if it is a complete package?

13        A.   I have no reason to doubt them.

14        Q.   Even after yesterday, or the day before,

15   when we went through Mr. Duran's master text file and

16   the Cellebrite reports, which are not identical?

17        A.   Yes, I still don't have reason to doubt

18   them.  If anything, I need to go back, and I need to

19   expand on my knowledge of why that occurred.  Because

20   that's not my area of expertise.

21             But I've been involved in a number of

22   wiretap investigations with the Bureau, or the DEA,

23   and I've never observed any discrepancies in the

24   recordings.

25        Q.   DDA?  What's that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6055

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32 6056

```
 1        A.   The DEA.

 2        Q.   DEA.  Thank you.

 3             But, as you saw a couple days ago, there

 4   are discrepancies in at least one cellphone in this

 5   case; correct?

 6        A.   I don't know that there is discrepancies.

 7   I think there is -- my lack of knowledge on that, I

 8   think it's probably easily explainable.  I just need

 9   to talk to the folks who can educate me on that.

10        Q.   So the other day I showed you the text file

11   from the Cellebrite report that your training Agent,

12   Stemo did, the text messages from the Cellebrite

13   report that Mr. Bryan did, and the 800-page master

14   text file.  And there is text messages on the

15   Cellebrite report that aren't on the master text

16   file; correct?

17        A.   I need to take a closer look at them.  I'm

18   not sure.  You know, you also pointed out and

19   Mr. Lowry pointed out that on the Cellebrite reports,

20   it looks like there is only four or seven text

21   messages.  And we know that that's not true either.

22   I just don't know that that cellphone has the

23   capacity -- these are pretty cheap cellphones -- to

24   have saved 800 calls or text messages.  I don't know

25   that that phone is capable of doing it.  So I need to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6056

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 33

1  speak with folks from Verizon, as well as our

2  Electronic Surveillance Unit, to be able to answer

3  those questions better.

4      Q.   Did you have digital evidence training when

5  you were at the FBI Academy?

6      A.   I did.

7      Q.   Tell me about that.

8      A.   That's part of our seven-month curriculum

9  while we're there.  I had similar training as a

10  police officer.

11      Q.   And in your training, both as a police

12  officer and with the FBI, they tell you to maintain

13  original evidence; correct?

14      A.   Yes.

15      Q.   So a cellphone is original evidence;

16  correct?

17      A.   I think it depends on the circumstances.

18      Q.   The FBI, through the Scientific Working

19  Group on Digital Evidence, they work together, and

20  they set out standards to -- for all peace officers

21  and law enforcement officers on digital evidence;

22  correct?

23      A.   I'm not familiar with that organization.

24  What I can represent is that I have obtained training

25  on evidence collection that is from that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6057

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 34058

 1   organization.

 2       Q.   What kind of training?

 3       A.   As you mentioned, police academies.

 4   Following that, I went through a field training

 5   program with a senior officer, and the same sort of

 6   protocols at the FBI.

 7       Q.   And then, in all those trainings -- since

 8   I've been to them, too -- they tell you to preserve

 9   the original evidence; correct?

10       A.   I agree with you.

11       Q.   So why didn't you preserve these cellphones

12   in evidence?

13       A.   At the time, I didn't consider the phones

14   evidence.  If the circumstances were different, and

15   Mario Montoya were the target, then I would.  As you

16   know, I collected, or caused agents to collect

17   Mr. Garcia's phones.

18            At the time, though, being that he was a

19   government agent, and that the conversations were

20   being recorded by the FBI, I didn't consider the

21   phone itself evidence.

22       Q.   Contrary to all the training you've had?

23       A.   I don't think that's contrary, no.  If I

24   thought there were evidence on the phone itself --

25   again, if that -- I'll just leave it at that.  If I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6059

1    thought there was evidence on the phone itself, then

2    I would have collected it and booked it into

3    evidence.  I'll be very honest with you, ma'am.  The

4    reason we have some of the phones is because I simply

5    put them in my desk to preserve, to reutilize in an

6    investigation in the future.  I didn't consider the

7    phones evidence at that time.

8        Q.   When did Mr. Montoya allegedly back over or

9    run over his phone, his FBI phone?

10       A.   I'd characterize it as sometime between the

11   takedown and my requesting to meet with him one to

12   two weeks later.

13       Q.   Can you give me a month and year?

14       A.   I think it would be December of 2015.

15       Q.   Did he tell you right away?

16       A.   No, I don't think it came up until I asked

17   for the phone.  I don't know that he thought he was

18   going to turn the phone back in.  We didn't discuss

19   that.

20       Q.   Why not?

21       A.   Well, he just kept the phone, presumably,

22   on a shelf, or in his house, until I told him we had

23   something going on, or when he was engaged in talking

24   with Duran or Mr. Garcia or another SNM member.

25   That's the only time he utilized that phone.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36060

1       Q.   You didn't contemporaneously monitor the

2   activity on that phone?

3       A.   No.   The activity was captured via the wire

4   intercept, but I didn't have live monitors on it, no.

5       Q.   You don't know, then, what was on that

6   phone when it was backed over?

7       A.   I know what was on the phone between when

8   the investigation was going on and when I had the

9   court order.

10       Q.   How long was the court order?

11       A.   It started on October 26, 2015, and it

12   terminated on November 25, 2015.

13       Q.   So between November 25 and after the

14   takedown on December 3, you have no way of knowing

15   what was on that phone?

16       A.   I don't.   But I also terminated the phone.

17   Like I pay the bills on the phones.

18       Q.   When was it terminated?

19       A.   I couldn't tell you off the top of my head,

20   but the billing cycle usually ends at the end of the

21   month.   So it would have been terminated at the end

22   of November.

23       Q.   You have no idea what was on that phone

24   from when your wire went down on the 25th of

25   November, to when it was terminated?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6061

```
 1          A.    I don't believe anything was on the phone.
 2          Q.    Well, yes, but we don't have the phone;
 3   correct?
 4          A.    We do not.
 5          Q.    Because you decided to throw it out;
 6   correct?
 7          A.    I did dispose of it.
 8          Q.    Did you take a photograph of it before you
 9   disposed of it?
10          A.    No.
11          Q.    It was original evidence, right?
12          A.    You and I are disagreeing on that.
13          Q.    Well, we are indeed.  But based on your
14   training at the FBI and the police academy, a
15   cellphone is original evidence; correct?
16          A.    Again, it depends on the circumstances.
17          Q.    And in this circumstance, it was the
18   original evidence; correct?
19          A.    I believe the wiretap is the original
20   evidence.
21          Q.    So you said Mr. Montoya likely -- he often
22   forgot to bring the phone to use during operations;
23   correct?
24          A.    Not often, once or twice.
25          Q.    Was he using his personal phone during
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6061

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6062

1  those operations?

2       A.   No.

3       Q.   How do you know?

4       A.   Because he communicated -- well, one, I

5  know that on Duran, Duran didn't know he was an

6  informant.  So we caused Duran to get Mario's number.

7  We also did the same thing with Mr. Garcia.  We,

8  through the informant, informed Mr. Garcia what

9  Montoya's number was.  I instructed Montoya to only

10  use that phone in communicating with those guys.  And

11  that's what our observations were, and he confirmed.

12       Q.   You didn't hear the phone call between Mr.

13  Montoya and Mr. Baca about destroying the phone

14  contemporaneously with the conversation, did you?

15       A.   No.

16       Q.   When did you learn of that conversation?

17       A.   After the fact.  In reviewing phone calls

18  for preparation for grand jury.

19       Q.   Months after the fact?

20       A.   Yes.

21       Q.   You didn't take the phone to the tech agent

22  to see if there was any evidence on the phone to

23  recover, did you?

24       A.   No.  Do you mean like the RCFL?  The tech

25  agents wouldn't mess with the phone.  They would just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6062

```
 1   help us with the technical aspects of the job.  Any
 2   kind of review would have been done by us, the
 3   agents, at the RCFL.
 4        Q.   What's the RCFL?
 5        A.   The Regional Computer Forensics Laboratory
 6   in Albuquerque.
 7        Q.   You didn't do that?
 8        A.   No.
 9        Q.   At any time was Mr. Montoya using drugs
10   when he was working with you?
11        A.   No.
12        Q.   How do you know?
13        A.   Because he was tested regularly.
14        Q.   By whom?
15        A.   By a couple different entities.  U.S.
16   Probation, us, as well as the trade he was involved
17   in would test him.
18        Q.   What trade?
19             MR. BECK:  Objection, Your Honor,
20   relevance.
21             THE COURT:  What's the relevance of that?
22             MS. SIRIGNANO:  I just wanted to know who
23   else was testing him.
24             THE COURT:  Well, sustained.  We've got the
25   FBI testing.  I think that's what's important.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 40 6064

 1        Q.    After that phone call between Montoya and
 2   Mr. Baca, did you speak to Mr. Montoya about the
 3   destruction of his cellphone?
 4        A.    Not in relation to the conversation with
 5   Baca.
 6              But, yes, I talked to him about how the
 7   phone got -- like why he's handing me a broken phone
 8   that's leaking battery acid.
 9        Q.    At the time, in December of 2015, or after
10   you heard the conversation between him and Baca?
11        A.    I didn't question him about his
12   conversation with Baca.  I think he was just going
13   along with a lot of the things Baca said.  I
14   questioned Mario as to why he was handing me a broken
15   phone.
16        Q.    What did you ask him?
17        A.    What the -- you know -- bleep is this?
18   What did you do to my phone?
19              And he said, you know, sorry.  And he
20   related how he was packing and backed over it with
21   his RV.  He was in a hurry to leave with his family.
22   And also I think he ran over some of his daughter's
23   stuff.  He was pretty upset about it.  I didn't make
24   any more of a deal about it than that, and just tried
25   to calm him down and get him on the road.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. SIRIGNANO:  May I have a moment, Your
 2    Honor?
 3              THE COURT:  You may.
 4        Q.   One last question.
 5              Did you give Mr. Montoya any instructions
 6    or guidelines regarding the use of his personal
 7    cellphones for contacting other SNM members?
 8        A.   Yes.
 9        Q.   What were those?
10        A.   "Don't use it.  Just use the wire phone."
11              MS. SIRIGNANO:  Thank you.  Pass the
12    witness.
13              THE COURT:  Thank you, Ms. Sirignano.
14              How about any of the other defendants?  Do
15    they have questions of Mr. Acee on Mr. Garcia's two
16    motions?
17              All right.  Mr. Beck, do you have redirect
18    of Mr. Acee?
19              MR. BECK:  Yes, Your Honor.
20              THE COURT:  Mr. Beck.
21                   REDIRECT EXAMINATION
22    BY MR. BECK:
23        Q.   Special Agent Acee, I think you testified
24    on cross-examination that you engaged in phone calls
25    with cooperators on their personal cellphones?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6065

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 42

```
 1          A.   Yes.
 2          Q.   Did you talk in substance about any of the
 3     defendants in this room?
 4          A.   No.
 5          Q.   Did you talk with them about any
 6     exculpatory information in those phone calls with the
 7     cooperators?
 8          A.   No.
 9          Q.   What were those phone calls with the
10     cooperators about?
11          A.   Mostly:  Be here on this day at this time,
12     and this is where we're meeting.
13          Q.   Did you also check in with them if you were
14     supervising them?
15          A.   Yes.  They had to check in with me daily.
16     So those communications would start in the morning.
17          Q.   And the same questions with those
18     communications.  Did you talk to them in those
19     communications substantively about the defendants in
20     this room?
21          A.   No.  Those conversations were solely me
22     fulfilling my duties as performing their pretrial
23     supervision.
24          Q.   You talked with Ms. Sirignano about Duran's
25     cellphone.  Do you remember that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6067

```
 1          A.    Yes.

 2          Q.    Was that cellphone also -- was there also a

 3   wiretap on that cellphone?

 4          A.    There was.

 5          Q.    Were the phone calls and text messages on

 6   that cellphone recorded and preserved pursuant to

 7   that wiretap?

 8          A.    Yes, sir.

 9               MR. BECK:  Nothing further, Your Honor.

10               THE COURT:  Thank you, Mr. Beck.

11               All right.  Mr. Acee, you may step down.

12   Thank you for your testimony.

13               Mr. Beck, is the Government going to have

14   any further witnesses or evidence?

15               MR. BECK:  That's all we have, Your Honor.

16               THE COURT:  Mr. Keefe, do you know if Mr.

17   Montoya is here yet?

18               MR. KEEFE:  Your Honor, I haven't been

19   notified by the marshals whether he's arrived.  I

20   think they said it would be about an hour when we

21   were downstairs.

22               THE COURT:  Okay.

23               MR. ADAMS:  Judge, may I step out very

24   briefly, two minutes?

25               THE COURT:  Yes.  Well, if there is nothing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    else we can do on this motion, let me ask --
 2    Mr. Keefe, did you have something?
 3              MR. KEEFE:  Your Honor, I just would ask,
 4    if we could have a few minutes to speak with Mr.
 5    Montoya when he does arrive.  We'd just ask for a few
 6    minutes to speak with Mr. Montoya when he does
 7    arrive.
 8              THE COURT:  Okay.
 9              MR. ADAMS:  Judge, obviously we have -- the
10    rule has been invoked for all evidentiary hearings.
11    It's certainly appropriate for a lawyer to meet.  We
12    just don't want the prep to involve anything that was
13    related to Special Agent Acee.
14              THE COURT:  You would agree with me,
15    Mr. Keefe, that even though you've been in the room,
16    and everybody agrees you should be in the room,
17    you'll not be a conduit for passing on to Mr. Montoya
18    what occurred here today?
19              MR. KEEFE:  Yes.
20              THE COURT:  Thank you, Mr. Keefe.
21              All right.  If there is nothing more we can
22    do on those two motions of Mr. Garcia, is there
23    anything else people were thinking about overnight;
24    had a couple of things that I relayed to you this
25    morning.  Is there anything else that people thought
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6068

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 45069

1  about that you need rulings on, evidentiary rulings,

2  wanted to talk about these issues?  Mr. Villa?

3           MR. VILLA:  Your Honor, I just had a

4  thought, and you probably have thought about this.  I

5  know you said yesterday that you hadn't finished

6  considering the courtroom setup.  But if the five

7  defendants in trial are to be shackled, I'm just

8  wondering where they're going to sit so that the jury

9  doesn't see that.  If they're sitting in a circle, I

10  think the shackles will get revealed.  I'm just

11  curious --

12           THE COURT:  I'm fairly confident -- I don't

13  want to talk about how they're going to be set up

14  right at the moment, but I'm fairly confident that

15  we're going to have them positioned in a way so that

16  no jurors are going to be able to -- the voir dire --

17  after that, it gets kind of simple -- but during voir

18  dire that anybody will see shackles.  You can talk to

19  Ms. Wild about it, if you want to go into detail, but

20  I don't want to get into great detail here on the

21  record on it.

22           MR. VILLA:  I understand that, Your Honor.

23  You know when it might be set up?  So, for instance,

24  if we're here the week prior, we just want to get a

25  look at it maybe before Monday?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6069

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 46070

```
 1              THE COURT:  Ms. Wild, are you on the phone?
 2   Ms. Wild, are you on the phone?  Talk to Ms. Wild
 3   about that.  I think she'll be able to provide that
 4   information to you.
 5              THE CLERK:  I am.
 6              THE COURT:  Hold on just a second.  I'm
 7   talking to Ms. Standridge.  One second here.
 8              (A discussion was held off the record.)
 9              THE COURT:  All right.  Have you been
10   listening, Ms. Wild?
11              THE CLERK:  No, Judge, I haven't been able
12   to hear anything.
13              THE COURT:  Okay.  The question on the
14   table is from Mr. Villa, and he's asking about -- he
15   had two things.  He had some questions about the
16   actual setup here in the courtroom.  And I said that
17   we were confident, that we had looked at enough
18   arrangements that the jurors would not be able --
19   during voir dire and I think it will be a lot easier
20   after voir dire -- we're confident we can make
21   arrangements so that the jurors and the venire cannot
22   see any of the shackles that the defendants are going
23   to have on their feet, and that's correct; correct?
24              THE CLERK:  Correct.
25              THE COURT:  And Mr. Villa also wanted to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   know what that arrangement was going to look like.

2   And I said we had not quite decided, but we were

3   confident that it was going to work out.  But that we

4   didn't want to put anything right on the record right

5   at the moment.  And that he and others could talk

6   directly to you about that.  Do you want to deviate

7   from that answer in any way?

8          THE CLERK:  Not at this time.

9          THE COURT:  All right.  Then there -- and

10  this is what Ms. Standridge is telling me, so if you

11  have a different view or want something different,

12  let me know.  Next week this room is going to be out

13  of service because they're going to be upgrading some

14  of the technology here.  I don't know if it's the

15  microphones or things, but it's going to be out of

16  service.  And they're going to be putting in some

17  upgrades.  So starting the 22nd, that's when the

18  reconfiguring of this courtroom is going to take

19  place.  It will take place on the 22nd, 23rd, and

20  probably most of the 24th.  You probably can come in

21  here on the 24th and look at it, and get a pretty

22  good sense of what we're going to be using.  You

23  certainly will be able to see it on the 25th and

24  26th.  Because we're going to be, you know, doing

25  some test runs to make sure we don't have any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6072

```
 1    glitches on the 29th.  So is that responsive?
 2              MR. VILLA:  Yes, Your Honor.  I think that
 3    works, because we've got to get the clothes to the
 4    marshals at that time.  So it's good timing.
 5              THE COURT:  Anything you want to add to
 6    that, Ms. Wild?
 7              THE CLERK:  I can't hear what was said.
 8              THE COURT:  You couldn't hear what I said?
 9              MR. VILLA:  I heard what you said -- oh,
10    what you said?  What I'd like to be able to do is get
11    out a diagram to them so they have an idea that
12    doesn't require necessarily viewing the courtroom in
13    person.  And I hope to have that out by early next
14    week.
15              THE COURT:  Okay.  And all Mr. Villa said
16    in response to what I said, if you heard what I said,
17    he said that would work for them because they're
18    going to have to get clothes to the marshals for the
19    defendants about that same time anyway.
20              THE CLERK:  Okay.
21              THE COURT:  All right.  Anything else?  Any
22    other questions?
23              MR. VILLA:  Thank you, Ms. Wild.
24              THE COURT:  Comments?
25              MR. ADAMS:  Judge, I have one issue --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6072

```
 1                THE COURT:  Mr. Adams.

 2                MR. ADAMS:  -- since we're just jumping in

 3       and adding stuff.

 4                What I had heard from Special Agent Acee is

 5       that he was in communication with the cooperators on

 6       their personal cellphones through text messages and

 7       through oral calls that, to my hearing -- and I'm a

 8       little jaded -- but it seemed, by design, to not

 9       leave a paper trail.  We have asked -- and I've

10       discussed this with my brothers and sister at counsel

11       table -- I've asked if any of this has been provided

12       to us by way of Rule 16 or Brady or anything else.

13       We think the motivations and instructions or the prep

14       that was given to various cooperators before

15       individual conversations, or how they were coached up

16       to elicit discriminating statements, would be very,

17       very, very critically important for the trial.

18                They told me they would look into this

19       more; that they don't believe any of that has been

20       preserved; and that they don't believe any has been

21       turned over.  But they'll look into that.  I

22       anticipate this will be an issue that we'll be going

23       into at great length at the trial.  So I just want to

24       put it on your radar, that if nothing is preserved,

25       then they can't turn it over.  But we're not pleased
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6073

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50

```
 1    with it.  If items were preserved, then I think

 2    they're going to work double-time to get it to us.

 3    And we'll follow up with whatever will be appropriate

 4    if they do find something.

 5              THE COURT:  All right.  And you've been

 6    talking to Mr. Beck about that?

 7              MR. ADAMS:  Mr. Beck and Mr. Castellano and

 8    Ms. Armijo.

 9              THE COURT:  Is that y'all's understanding

10    as well, you'll look into it?

11              MR. BECK:  Yeah, that's accurate, Your

12    Honor.

13              THE COURT:  Okay.  Anybody else?  Any other

14    evidentiary issues?  Mechanics?  Anything else we

15    need to discuss, want to discuss?  Mr. Lowry?

16              MR. LOWRY:  Well, Your Honor, just a few.

17              Your Honor, over the last -- well, Monday,

18    we heard from Mr. Del Valle -- and he's not here --

19    but we anticipate calling Grace Duran as a witness in

20    this case.  And his dual representation in the same

21    matter of Grace Duran and Eric Duran is going to

22    cause some problems.  So we anticipate filing a

23    motion to conflict him out of Grace Duran's

24    representation.  So I just want to give you a

25    heads-up we're working on that now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  Ms. Wild, maybe you know

2   something about this.  Did Mr. Del Valle, did he

3   start representing Grace Duran after we appointed him

4   to be the CJA lawyer, and he picked it up as

5   additional representation?  It's not part of our CJA

6   appointment, is it?

7           THE CLERK:  It is not.

8           THE COURT:  So this is just something he

9   picked this up on his own?

10          THE CLERK:  I would have to presume.

11          THE COURT:  Okay.

12          MR. LOWRY:  Having just gone through all

13  the conflict rules, I'm pretty familiar with them.  I

14  would think that the dual representation in the same

15  matter, where they have potentially -- well, not

16  potentially, in my view, but divergent interests --

17  would be inappropriate, Your Honor.  So I just want

18  to bring that to the Court's attention.

19          There is one other matter -- it's a little

20  premature, but since the Court is inquiring, I just

21  want to get it out there -- you know, in state court,

22  where I practice a bit, there is procedural mechanism

23  for the defense to file for witness immunity.  And I

24  was discussing this with some of my colleagues last

25  night.  This is something we're considering doing in

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.                        e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6075

```
 1    preparation for the trial.  We've communicated -- and
 2    I don't want to get into the identities yet -- with a
 3    few people who have relevant and material
 4    information, yet we're running into the obvious
 5    problems where witnesses really don't want to get
 6    subpoenaed or come in, because they're afraid that
 7    they're going to be invited into the next RICO
 8    prosecution, if they were to testify for the defense,
 9    Your Honor.  So I'll work with my colleagues on that.
10    But I just didn't know if the Court had any thoughts
11    or inclinations we should be addressing when
12    researching and drafting these kinds of motions?
13          THE COURT:  Well, I certainly don't mind
14    being educated on it.  But if the Government is not
15    prepared to grant immunity to somebody, I don't think
16    there is anything I can do, or the defendants can do
17    to give immunity.  Do you?
18          MR. LOWRY:  Well, I know in New Mexico
19    courts they found it to be a due process violation to
20    basically tie the hands of the defense from material
21    witnesses in the case.  But that would be the nature
22    of the argument.  But, obviously, I'm just here to
23    plant a flag, so to speak, so the Court knows what
24    I'm thinking, where we're heading.  But I look
25    forward to educating you on that, and we are going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6076

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 53

```
 1   work mightily to do that.

 2            THE COURT:  My impression is that is very

 3   different in state court than it is in federal court.

 4   It basically rests in the discretion of the

 5   Government to grant or deny immunity.

 6            MR. LOWRY:  That's my -- as I stand before

 7   you right at this moment, Your Honor, that's my

 8   essential understanding as well.

 9            THE COURT:  They can play some pretty hard

10   ball.

11            MR. LOWRY:  And they are.  And we expect

12   them to play some pretty hard ball.  But, if you look

13   at the Berger Standard, they're fair to strike hard

14   blows, but not foul ones.  And we can argue about

15   whether that's foul a blow or not.  But, if nothing

16   else, we'll be reducing that to paper and litigating

17   and reserving it for an appellate issue.  I mean, it

18   may be time for the federal courts to mimic state law

19   on this issue.

20            THE COURT:  Okay.  Don't get optimistic

21   about that.

22            MR. LOWRY:  Your Honor, I'm a criminal

23   defense lawyer because I'm an optimist.

24            THE COURT:  You are an optimist, or not an

25   optimist?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6077

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 54078

```
 1              MR. LOWRY:  I am.
 2              THE COURT:  All right.  Ms. Armijo?
 3              MS. ARMIJO:  Your Honor, we did think of
 4   something last night that -- and I have not brought
 5   it up, but I'll bring it up now -- when we were
 6   talking about 609, I believe the agreement was that
 7   the defense was not going to have to provide the
 8   United States with written notice of what they
 9   believe -- impeachable material on our witnesses, and
10   vice versa.
11              We've had a couple of cooperators testify
12   that have pending charges, and I -- we did not agree,
13   of course, to them extending past 609 to things like
14   impending charges.  So I guess I am putting it out
15   there that we would oppose, and would ask for a
16   pretrial ruling on anything that our cooperators --
17   that are pending charges that are not part of their
18   cooperation; for instance, Mr. Duran's felon in
19   possession case.  Before he testifies, I think it
20   needs to be ironed out what, if anything, can be
21   talked about that.  Or Mr. Montoya, I'm sure the
22   defense will try get into it today, but I know the
23   United States would be objecting, and his attorneys
24   as well, as to his pending Colorado case.
25              So before it's just brought out in front of
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6078

1    the jury, I think that with each witness we probably

2    need to decide that issue.  And certainly, I wouldn't

3    expect anyone in opening statements to be saying.

4    "You will hear from Mr. Duran who was arrested," et

5    cetera, et cetera, et cetera.  Because that is --

6    although they will be arguing that is impeachment --

7    it's not 609, we have not had any notice of that, and

8    it should be something that the Court rules on ahead

9    of time.

10          THE COURT:  Well, if it's not 609, then,

11   what is it that kicks us into --

12          MR. ADAMS:  I think it's straight motive

13   and bias, and completely fair game, and fair game for

14   opening statements.  It's not the Government's

15   intention with the witness.  It's the witness' mental

16   state that's subject to attack, and broad attack, and

17   vicious attack, if we have the goods to do it.  And

18   new pending charges are certainly fair game for that.

19          THE COURT:  Well, I guess my analysis would

20   be slightly different than Mr. Adams.  But it would

21   be that, given the package of benefits that these

22   cooperating people are getting, some of which is

23   ongoing, and maybe the resolution of ongoing criminal

24   charges, isn't it fair game for the defendants to get

25   into pending charges against the cooperating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    defendants, to explore whether they are going to

2    receive some benefit from the Government for their

3    cooperation?

4              MR. BECK:  I think --

5              THE COURT:  That's not a 609 issue.  I

6    don't see pending charges -- correct me if I'm

7    wrong -- but I don't see pending charges being a 609

8    issue.  It is the basket of credibility, I guess, is

9    what I would --

10             MR. BECK:  I think that's right, Your

11   Honor.  I think that is proper fodder for

12   cross-examination and impeachment evidence.

13             I think the United States' concerns for

14   someone like Duran or Mr. Montoya who are facing

15   criminal --

16             THE COURT:  Are you worried about their

17   Fifth Amendment issues?

18             MR. BECK:  Exactly.  That's our concern, is

19   that -- you know, I don't think it's relevant to get

20   into exactly the nuts and bolts of what happened, and

21   it treads upon their Fifth Amendment rights.  They

22   can say there are pending charges, they're

23   unresolved; they can get into whether they expect

24   that they'll gain some benefit in those cases from

25   testifying for us in this case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6080

1    But I think Rule 403 would limit them from

2    going into cross-examination that would elicit

3    incriminating information.

4         MR. CASTLE:  Your Honor, if I could address

5    this briefly?

6         THE COURT:  Let me get Ms. Duncan, then

7    I'll come back to you, Mr. Castle.

8         I mean, it would seem to me that that would

9    probably be the appropriate line.  We don't want to

10   get these guys in more criminal trouble and violate

11   their rights.

12        Let's see, with Mr. Duran we're going to

13   have Mr. Del Valle there.  He can sit over here and

14   help draw that line.

15        We've got Mr. Keefe for Mr. Montoya.  I'm

16   going to have to refresh my memory about Mr. Cordova.

17   Is he pretty clean?

18        MR. VILLA:  Mr. Samore.

19        THE COURT:  That's right.  Mr. Samore was

20   here.  Okay.  So they're going to have attorneys.

21        Let me ask this:  I mean, if we've got an

22   attorney here -- Mr. Beck, Ms. Armijo, if we've got

23   an attorney here, and we go too far, don't we have

24   the protections in place so that their Fifth

25   Amendment rights are not going to be abused by this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6081

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 58

```
 1    process?
 2              MR. BECK:  I think that is the safeguard in
 3    place, yeah.
 4              THE COURT:  So then what is the concern,
 5    then about, either in opening statements or in
 6    cross-examination of the defendants here, going full
 7    bore against the cooperating witnesses?  It seems to
 8    me that it's going to all be subject to maybe a
 9    relevancy objection, 403 or something like that.  If
10    people go too far, you know, I just may cut it off
11    after they make their point that the person is
12    getting benefits, have received benefits, and may get
13    benefits in the future, even for future criminal
14    activity.  After they've sort of made their point, I
15    may start saying:  We've seen enough.  But don't we
16    have in place the mechanism so that they can go ahead
17    and bring these things out in openings if they need
18    to?
19              MR. BECK:  I think we do.  I think we just
20    got jealous of all the defense attorneys piling stuff
21    on that you should be aware of at trial, and wanted
22    to pick one for ourselves.  I think you're right,
23    Your Honor.
24              THE COURT:  All right.
25              MS. ARMIJO:  Your Honor, I think the issue
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6082

 1    is if the witness is not allowed to say the details

 2    of what they copped to, the defense attorneys know

 3    that, then in opening statements they can't get into

 4    the fact -- for instance, the child abuse charge that

 5    is not a charge -- that was not -- that was

 6    unfounded -- they can't be able to get up here and

 7    start talking about -- or the felon in possession

 8    details.  We would ask in opening statements, until

 9    it is determined by the Court, that they can't get

10    everything out, knowing full well that there will be

11    objections as to that, and the Court may limit them

12    based on a Fifth Amendment right.  That's the concern

13    about opening statements.

14         Closings are obviously going to be

15    different, because the evidence will be in.  But if

16    there is something that they know that will be

17    sustained by this Court -- and I agree that the fact

18    that there are pending charges -- but there are other

19    things that this Court may prevent them from getting

20    into.  And that is what we are concerned about in

21    opening statements.

22         THE COURT:  Well, give me -- let's try to

23    be concrete here.  What is it that you're concerned

24    with your three big cooperators here?  What are you

25    thinking of that they're going to do?  And maybe I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 60 6084

```
 1    can just rule.
 2           MS. ARMIJO:  Well, Billy Cordova is not
 3    facing any charges.
 4           THE COURT:  He's pretty clean.
 5           MS. ARMIJO:  He doesn't have anything.  So
 6    there are no concerns with Billy Cordova.
 7           Mario Montoya has his pending cases -- and
 8    I would have to consult with Mr. Keefe to get into
 9    exactly what they would want to -- allow to get into.
10    But he does have, I believe it's a car theft charge
11    and a misdemeanor that's pending in Colorado.
12           Eric Duran has more -- his are not even
13    charged at this point.  And so there is the felon in
14    possession of possible heroin, that would be a
15    misdemeanor over there.  And then they've made
16    allegations about -- there is a report on child
17    abuse, but it was unfounded by the state, as far as
18    we know.  I see Ms. Duncan, who may share more light
19    on that right now.
20           But these are the sort of things that
21    before opening statement, if there is a Fifth
22    Amendment right to, and it's going to be blocked out,
23    the details of it, then they shouldn't be able to go
24    into it in opening statements.
25           THE COURT:  Well, this is what I propose to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6084

```
 1    do -- and I'll hear from Mr. Castle and Ms. Duncan --
 2    but here's what I propose to do:  The Government
 3    identify exactly what you don't want the defendants
 4    to go into on opening and in cross without coming up
 5    to the bench.  And then I can make a call.  Right at
 6    the moment, I'm not seeing or hearing anything that I
 7    can really tell the defendants they can't go there.
 8    I might need to be refreshed on the child abuse
 9    charges.  Were they dismissed?  Did they turn out
10    they didn't exist?  But right at the moment, without
11    more information, I'm not going to make any ruling
12    that they're precluded from going into anything.  But
13    I'll reconsider it, if the Government focuses on a
14    specific charge or something like that.
15            All right.  Ms. Duncan?
16            MS. DUNCAN:  Your Honor, I think the
17    approach that you're proposing is the right one, and
18    for us to know exactly what it is that the Government
19    doesn't want us to get into.
20            But I think that these charges are relevant
21    for the package of benefits they're getting from the
22    Government.  And with respect to Mr. Duran, you heard
23    him testify that he was cooperating with the
24    Government out of the goodness of his heart and to
25    give back to the community.  And the way he's giving
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6085

 1   back to the community is by slapping a 10-year-old

 2   girl, possessing heroin and a firearm, and I think

 3   also some forgeries, and an attempted breaking and

 4   entering.  So this is all classic cross-examination

 5   fodder bearing on Mr. Duran's credibility.  And I

 6   think under the Sixth Amendment, we are entitled to

 7   introduce that.

 8          But, again, I think it would be helpful to

 9   know exactly what the Government is objecting to, and

10   then we can respond to that to provide the Court with

11   the basis for including that evidence.

12          THE COURT:  All right.  Well, let's try to

13   get more specific before I start precluding.  Right

14   at the moment, though, the ruling is everything is

15   fair game for the defendants on charges.

16          I would ask the defendants to help me out.

17   Y'all are defense lawyers, too.  Help me out to

18   protect these guys' rights.  You know, they're facing

19   criminal charges.  I don't want them coming in and

20   incriminating themselves.

21          Mr. Castle.

22          MR. CASTLE:  Judge, I'm raising a couple of

23   thoughts while we're here.  And we'll respond in

24   writing once we see a motion in limine from the

25   Government, which I note is past due by significant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 63

```
 1   weeks.
 2           THE COURT:  They can just raise it orally
 3   before we get out of here today.  If they talk with
 4   Mr. Keefe or something, and come up.  Maybe we can
 5   resolve these before we even leave here today.
 6           MR. CASTLE:  Judge, there are two Supreme
 7   Court cases I think are relevant.  One is Davis
 8   versus Alaska.  I don't have the cite.  But it was
 9   back in 1974.  That was a case in which the
10   witness -- the defense sought to cross-examine a
11   witness on the fact that he had a pending probation
12   revocation, and that the witness might be wanting to
13   cooperate with the Government in order to curry favor
14   in his probation revocation.  Obviously, you have
15   Fifth Amendment rights in a probation revocation
16   matter as well.  And the United States Supreme Court
17   said it was error for the court to restrict
18   cross-examination into the pending probation
19   revocation.
20           THE COURT:  And why were those relevant in
21   that case?
22           MR. CASTLE:  Motive and bias.
23           The second concept is, aside from motive
24   and bias, the defense is entitled to question and
25   impugn the nature of the investigation and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6087

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64088

1    handling by the Government of the case.  And the fact

2    that they're letting people out, letting them prey

3    upon the public, will certainly impugn the nature of

4    this investigation.  And that was recognized as a

5    legitimate defense method in the case of Kyles versus

6    Whitley, and the Supreme Court indicated that it was

7    a legitimate defense tactic to do that.

8            Now, these witnesses aren't going to be

9    actually unprotected.  Let's assume for a moment they

10   have a Fifth Amendment right.  The fact is they're

11   being compelled to come in and testify; they're

12   required to do so through the use of subpoena power.

13   And because of that, I would bring a third case to

14   the Court's attention, Garrity versus New Jersey, 87

15   Supreme Court 616.  And in that case, the Supreme

16   Court found that compelled testimony, in essence,

17   acts almost as an immunity for the witness because

18   it's an involuntary statement.  And the only thing

19   that's not protected there is that they're not

20   protected from charges of perjury, if they lied on

21   the stand about that pending matter.

22           And the Supreme Court has said numerous

23   times that you do not have a Fifth Amendment right to

24   perjure yourself.  So when they take the stand, and

25   they get up there and they're examined and they claim

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6088

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 65

 1    the Fifth, that's an empty claim, because they're not

 2    actually exposed to any criminal exposure other than

 3    the fact that they perjure themselves on the stand.

 4    So I think this is all -- I'm sorry, the word hooey

 5    is in my mind right now.

 6              But I think if they brief it and they look

 7    into this, and they actually file a motion in limine,

 8    they're going to come to the conclusion that their

 9    arguments will fail.

10              And so I just bring those matters to the

11    Court and the Government's attention, because I think

12    it might lead them to withdraw their thoughts in that

13    regard.

14              THE COURT:  All right.  Thank you, Mr.

15    Castle.

16              Mr. Castellano.

17              MR. CASTELLANO:  Your Honor, I hear what

18    the defense is saying.  And I understand the basis

19    for the impeachment.  I think the distinction will be

20    the fact of a charge or the fact of a probation

21    violation, those are fair game, as well as any

22    expectation the person thinks they may receive as a

23    result of being charged and cooperating.

24              I think what the defense will not be

25    allowed to do is elicit a line of questions which are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    all designed to get the witness to invoke the Fifth
 2    in front of the jury.  I think that would be
 3    improper.  So if they get the police report and start
 4    going through every fact to ask the person whether or
 5    not it's true, or whether or not that's the
 6    allegation, and the person continuously invokes the
 7    Fifth, I think that's where the problem lies.  And so
 8    we understand the fact of a charge.  But, like I
 9    said, a line of questions designed to make them say
10    nothing more than, "I invoke the Fifth," is going to
11    be the problem.  So we'll look into that further.
12            THE COURT:  All right.  I will look into
13    Mr. Castle's case.  I guess I'm not excited about --
14    I guess I don't see what the relevance of it, even if
15    you can do it, I don't think it's very relevant to
16    get into the facts of those cases.  I think you can
17    get into the charges, and if the Government is taking
18    care of matters and stuff like that.  But I probably
19    am going to start shutting down, because I'm just not
20    sure how that's relevant to the issues in this case.
21            All right?  Anything else we need to
22    discuss?  Want to discuss?
23            MS. HARBOUR-VALDEZ:  Your Honor, I just
24    want to put on the record that Mr. Burke left to take
25    a flight back to Denver.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6090

```
 1              THE COURT:  All right.  Okay.  Anything
 2    else you want to discuss?  Comments?  Suggestions?
 3    Need evidentiary rulings, rulings on?
 4              All right.  Did you have anything, Mr.
 5    Adams?  Are you just standing there?
 6              MR. ADAMS:  I was just standing.
 7              THE COURT:  All right.  Why don't we go
 8    ahead and take our break, and see if we can get Mr.
 9    Montoya on after we take our break.
10              (The Court stood in recess.)
11              THE COURT:  All right.  We'll go back on
12    the record.  Looks like we've got everybody in the
13    courtroom, everybody has got an attorney.
14              I did have a chance to look at Garrity,
15    because it just didn't have the right feel to me.
16    And I don't agree -- I don't have the same reading of
17    it as Mr. Castle does.  In that case, Justice Douglas
18    was dealing with a statute from New Jersey that
19    warned each -- I think they were police officers --
20    that, one, anything that he said might be used
21    against him in any state criminal proceeding; two,
22    that he had the privilege to refuse to answer, if the
23    disclosure would tend to incriminate him; but
24    three -- and I think this is the source of the
25    compulsion, not the subpoena -- that if he refused to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6091

1  answer, he would be subject to removal from office.

2  And the Justice Douglas says, "The choice given

3  petitioners was either to forfeit their jobs or

4  incriminate themselves.  The option to lose their

5  means of livelihood or to pay the penalty of

6  self-incrimination is the antithesis of free choice

7  to speak out or remain silent.  That practice, like

8  interrogation practices, we reviewed in Miranda, is

9  likely to exert such pressure upon an individual as

10  to disable him from making a free and rational

11  choice.  We think the statements were infected by the

12  coercion inherent in this scheme of questioning, and

13  cannot be sustained as voluntary under our prior

14  decision."

15          So I don't think the fact that they're

16  under subpoena means that they've been granted some

17  sort of quasi-immunity or something in trial.  So I'm

18  still going to be vigorous in protecting the

19  cooperators' Fifth Amendment rights.  And Washington

20  v. Davis -- that case was one in which the judge

21  prohibited any -- going into any of the issues about

22  probation or supervised release.  I think we're well

23  beyond that.  But even that case seemed to recognize

24  that the court could impose some limits on how much

25  questioning could be done of the -- I think there, it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6092

```
1    was an eyewitness rather than a cooperating witness.
2    So there may be -- you know, recognized there were
3    limits that the court could impose as well.  So
4    unless somebody tells me otherwise, I'm going to be
5    vigorous in protecting the cooperators' Fifth
6    Amendment rights as well.
7              All right.  I understand we have Mr.
8    Montoya.  So, are you going to call him, Mr. Adams?
9    Mr. Armijo?
10             MS. ARMIJO:  He was meeting with his
11   attorneys.  And I don't know if he's still downstairs
12   or not.  But he is in the building and they can bring
13   him up.
14             THE COURT:  All right.
15             MR. VILLA:  Your Honor, with respect to
16   Garrity, we're not just talking about a witness who
17   is being subpoenaed to testify because they're a
18   percipient witness or something like that.  These
19   folks have cooperation agreements with the United
20   States.  Many of them have 5K agreements, or other
21   implicit agreements, like we heard about with Mr.
22   Cordova, where he wasn't going to get indicted on
23   RICO if for his cooperation.  And they risk losing
24   these agreements if they don't testify.  So it's not
25   because they're being subpoenaed here to court.  It's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6093

1   because they fear, like the officers in Garrity

2   feared losing their, not job, but losing their

3   agreement with the United States.  And perhaps we can

4   do some more research on it and look into that.  But

5   it's something to think about when we get to this

6   issue at trial.

7          THE COURT:  Well, I guess I just am not

8   seeing the issue.  I mean, Garrity is a case about

9   voluntariness of statements.  I don't think there is

10  going to be any question, when they come into court,

11  they're going to be -- their statements are going to

12  be voluntary.  I mean, yes, somebody may put them

13  under subpoena, the Government may produce them.  I

14  don't know exactly how they're going to get here, but

15  we're not going to be questioning the voluntariness

16  of the statements.  Y'all may, on cross-examination,

17  but they're not going to be constitutionally

18  questioned, in the sense that we're going to toss

19  their statements out, or not allow their statements

20  to be used against them.

21          I think, down the road, if they say

22  something incriminating in this court, I think they

23  could be prosecuted, and that statement could be used

24  against them.  Don't you?

25          MR. VILLA:  Well, I guess that's what I'm

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6094

1    thinking about with respect to Garrity.  I know in

2    the present day context to say a police officer is

3    under investigation, they have them read the Garrity

4    warning before they make a statement about it.  If it

5    happens to be an investigation that could lead to

6    criminal charges, I think -- though I don't know --

7    that there could be -- they could prevent that

8    statement from being used against them in court,

9    because they gave it under the threat of losing their

10   job if they didn't give the statement to internal

11   affairs or that sort of thing.  In this context,

12   that's what I'm thinking about; they have this threat

13   of losing their 5K deal, or whatever their

14   cooperation agreement is with the Government.

15           THE COURT:  I have just never seen Garrity

16   extended that far.

17           MR. VILLA:  I'm not sure I have either.

18           THE COURT:  So y'all are going to have some

19   work to do to convince me that these men lose their

20   Fifth Amendment rights by coming in here and

21   testifying; that they cannot incriminate themselves

22   and have statements that they make under oath in this

23   court not be used against them.

24           I'll certainly listen.

25           MR. VILLA:  Well, we'll do some research.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6095

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 72

```
1              THE COURT:  I don't think it's going to be
2      a problem.  Because by the time y'all start -- if you
3      really are going to take a police report and go
4      through it, and say:  Did you do this, do that, I
5      probably am not going to allow it, because I don't
6      see any relevance to that.
7              MR. VILLA:  Well, I understand the Court
8      limiting us in that fashion.  But, you know, some of
9      the things that took place yesterday when Mr. Del
10     Valle objected on Fifth Amendment grounds for
11     Mr. Duran, I think, you know, he might want to object
12     sooner than the Court is willing to make us stop
13     asking questions.  And --
14             THE COURT:  Could be.
15             MR. VILLA:  But we'll look into that, Your
16     Honor.
17             THE COURT:  Okay.  I think y'all are going
18     to get to make your point.  I think the point's going
19     to be pretty obvious to the jury that these guys are
20     getting benefits.  And I'm not interested in trying
21     to keep you from making that point.  It's just, you
22     know, maybe it doesn't have to be made with all the
23     details of those crimes in a way that gets him to
24     have to make incriminating statements.  That's
25     probably where I'm going to draw the line.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1               MR. ADAMS:  Judge, may I chime in on this?

 2               THE COURT:  Sure.

 3               MR. ADAMS:  My observation is a little bit

 4     different than Mr. Villa's.  I don't think the

 5     witness has to testify at all.  And they could choose

 6     to invoke the Fifth and not testify at all.  If they

 7     want to testify for the Government, and they subject

 8     themselves to the adversarial system at that point, I

 9     think you're completely correct, that if a report is

10     brought out, and it's gone through line by line, and

11     the purpose of the report is that a police officer

12     thinks you did this, maybe it's not admissible.  But

13     if the point of that is -- and this is part of what

14     you were facing, and this is part of the package, and

15     this is part of your motivation for testifying, and

16     this is why you're doing this, it's completely

17     relevant.  Just like, if I had a federal sentencing

18     with somebody, and we got new charges somewhere else

19     that weren't subject to conviction, I would be going

20     over all those records very closely with my client,

21     saying like, We've got to deal with this at your

22     sentencing.  It's relevant, it's relevant to how the

23     court is going to view you.  For that same reason, I

24     think it's relevant for the jurors to get the

25     complete picture, and not some artificially narrowed

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

DNM 6097

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 74098

```
 1   picture, as it relates to the witness' mindset and
 2   their bias.
 3          THE COURT:  Well, I think charges and
 4   stuff, you can probably go into.  But you can't get a
 5   situation where he's going to maybe make
 6   incriminating statements against him.
 7          All right.  Mr. Montoya, if you'll stand up
 8   again, and raise your right hand to the best of your
 9   ability there, Ms. Standridge, my courtroom deputy,
10   will swear you in.
11                    MARIO MONTOYA,
12      after having been first duly sworn under oath,
13      was questioned and testified as follows:
14                  DIRECT EXAMINATION
15          THE CLERK:  Please be seated.  State and
16   spell your name for the record?
17          THE WITNESS:  Mario Monday.  M-A-R-I-O,
18   M-O-N-T-O-Y-A.
19          THE COURT:  Mr. Montoya.  Mr. Adams.
20          MR. ADAMS:  Thank you, Your Honor.
21   BY MR. ADAMS:
22      Q.  Mr. Montoya, were you given a phone by
23   Special Agent Acee?
24      A.  Yes, sir.
25      Q.  When was that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6098

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 75099

1      A.   I think it was between October and November

2  of 2015, '14.

3      Q.   Why did he give you a phone, to your

4  knowledge?

5      A.   Because these guys right here were supposed

6  to call me from prison and ask me to kill Gregg

7  Marcantel, head of the gang unit, and a couple of

8  other guys involved in the case, also "Chuco," Mandel

9  Parker, and it was supposed to be recorded.

10     Q.   Why do you believe -- who told you they

11 were supposed to call you from prison about Gregg

12 Marcantel?

13     A.   The agents.

14     Q.   So, in October of 2015, you had not heard

15 anything at all about being called or put in any sort

16 of action against Gregg Marcantel?

17     A.   I was aware before I left prison that

18 people were talking about stuff like that.

19     Q.   All right.  When did you leave prison?

20     A.   I don't remember the exact date.  It's been

21 a while.  I had a lot going on in my life at that

22 time.

23     Q.   Was it 2015?

24     A.   No.

25     Q.   2014?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6099

```
 1          A.    2014, or before --

 2          Q.    All right.

 3          A.    -- I believe.

 4          Q.    And there was talk about doing something

 5   crazy back at that time, when you were still in

 6   prison?

 7          A.    Yeah.

 8          Q.    Was Gregg Marcantel's name mentioned as

 9   part of that?

10          A.    Most of the time, yeah.

11          Q.    All right.  Who said it?

12          A.    Who didn't?

13          Q.    All right.  Well, my question is:  Who said

14   it?

15          A.    That's a long list.

16          Q.    Give me the list.  We'll start at the top.

17          A.    "Shadow," "Pup," "Fernie," "Krazo."

18          Q.    "Crazo" being Eric Duran?

19          A.    I think it was the other "Krazo," actually.

20   I don't know his name.

21          Q.    All right.  Where were you when "Shadow"

22   made these statements?

23          A.    Oh, it was the last time I was in prison

24   before that.

25          Q.    Any idea where you were serving your time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6100

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 76 of 101

```
 1        A.    Southern New Mexico Correctional Facility.

 2        Q.    Any idea the year?

 3        A.    No.

 4        Q.    What did "Shadow" say related to Gregg

 5   Marcantel?

 6        A.    I don't remember the exact words, man.

 7   Everybody talked about it.

 8              THE COURT:  Hold on.

 9              MR. BECK:  Objection, Your Honor, to

10   relevance.

11              THE COURT:  What's the relevance of going

12   this far back?  Aren't we focusing on the phone

13   recordings?

14              MR. ADAMS:  We are.  But I started asking

15   him about when he first heard about this, and he

16   indicated it was from the Government agents, and then

17   he followed up by saying, Well, I've heard about it

18   from all sorts of sources, which is news me.  So I'm

19   trying to pin him down.

20              THE COURT:  Let's go to the phone and the

21   recordings.

22              MR. ADAMS:  Yes, sir.

23        Q.    So, in October of 2015, what agent

24   contacted you about having phone calls related to

25   Gregg Marcantel?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6101

```
 1          A.   I believe it was Bryan Acee.

 2          Q.   And where were you when you had that

 3    conversation?

 4          A.   We had a few conversations.  I don't

 5    remember exactly where that conversation took place.

 6          Q.   Where did you have conversations with him?

 7          A.   Sheriff's Department, Bernalillo County

 8    Sheriff's Department.  Different places that we met.

 9    I don't remember where he gave me the phone, but I

10    believe that's when the conversation took place.

11          Q.   And that was after you'd been arrested?

12          A.   Yeah.

13          Q.   All right.  What had you been arrested for?

14          A.   Possession of heroin.

15          Q.   What else?

16          A.   I believe that was all.

17          Q.   No weapons charge at that time?

18          A.   No weapons charge, I don't believe.

19          Q.   And you were arrested, and then you were

20    approached by Special Agent Acee?

21          A.   Pretty much.

22          Q.   And this was in October of 2015?

23          A.   I don't remember the date.

24          Q.   Were you released on bond?

25          A.   No.  I was released on OR.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6102

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79 of 103

```
 1        Q.   You were released on OR.  And was that in
 2   October of 2015?
 3        A.   I just told you, I don't remember the date,
 4   sir.
 5        Q.   How long were you in custody before you
 6   were released on OR?
 7        A.   I don't really remember.
 8        Q.   Do you not remember -- were you using drugs
 9   at that time?
10        A.   Yeah.
11        Q.   What drugs?
12        A.   Heroin.
13        Q.   And was that your drug of choice?
14        A.   Yeah.
15        Q.   And when you got out, what was your
16   understanding of what you were supposed to be doing
17   with Special Agent Acee?
18        A.   Cooperating.
19        Q.   Against the SNM?
20        A.   Yes, sir.
21        Q.   And did you have telephones?
22        A.   Yes, I had a telephone.
23        Q.   One telephone?
24        A.   Yeah.
25        Q.   You had one personal telephone in October
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6103

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 80 of 104

```
 1    of 2015?
 2         A.   I probably had about four or five.  I break
 3    a lot of phones.
 4         Q.   Why did you have so many phones?
 5         A.   Because I was using and selling drugs.
 6         Q.   What -- do you know what phone numbers you
 7    were using in October of 2015?
 8         A.   I don't remember.
 9         Q.   November of 2015?
10         A.   I don't remember the phone numbers.  I
11    don't remember my last phone number.  I've had a lot
12    of phones.
13         Q.   How did the idea come up, as best you
14    remember, that the FBI would give you a telephone?
15         A.   The best I remember, they had information
16    that somebody was going to call me and ask me to do
17    this.
18         Q.   Okay.  That's what they told you, and they
19    said:  Here, here's the phone we want you to use?
20         A.   I think, so, yeah.  I think that's how it
21    happened.
22         Q.   What were the instructions that you
23    received from Special Agent Acee, or anyone else from
24    the FBI, on how to use that phone?
25         A.   To not use it for anything else but the
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492
                                                                                  1-800-669-9492
                                                                         e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   case.
 2        Q.   All right.  And what did that mean to you?
 3        A.   That meant:  Don't be using it for personal
 4   phone calls or stuff like that.
 5        Q.   All right.  And did you know that they were
 6   going for a wire to record your phone calls?
 7        A.   I was under the understanding that the
 8   phone would be constantly monitored.
 9        Q.   And for 30 days?
10        A.   I seem to remember him saying he had to
11   renew it after 30 days, if it went past 30 days.  I'm
12   not sure that it did.  I didn't really pay attention.
13   I used it for what it was supposed to be used for.
14   That's all.
15        Q.   Okay.  Do you remember when you first used
16   it?
17        A.   No.
18        Q.   All right.  If I had told you that the
19   dates for the surveillance was October 26, 2015 to
20   November 25, 2015, does that sound right?
21        A.   Possibly.
22        Q.   Were you using your other phones during
23   that time also?
24        A.   I use my phone for my personal phone calls,
25   my home phone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6106

```
 1        Q.   I'm not trying to be a smart aleck with
 2   this question.  You had said before you'd used your
 3   phones for drug stuff.  Why were you using your phone
 4   after you'd been released on OR?  Why were you using
 5   your personal --
 6        A.   My personal stuff.  After I was released on
 7   OR.  I wasn't selling drugs anymore.
 8        Q.   Using?  Were you using?
 9        A.   I was on the methadone at that point.
10        Q.   You were doing methadone.  And what did
11   that do to you?
12        A.   It kept me from using heroin.
13        Q.   It's a heroin substitute, a pharmaceutical
14   substitute heroin?
15        A.   Yeah.
16        Q.   To wean you off of heroin so you can avoid
17   potentially life-threatening withdrawals, right?
18        A.   Basically.
19        Q.   All right.  And you were using that.  Who
20   helped you get that methadone?
21        A.   The methadone clinic.
22        Q.   All right.  Who sent you there?
23        A.   I did.
24        Q.   So what were you using your personal phones
25   for from October 26?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83

```
 1        A.   For personal reasons, sir.  Calling my
 2   wife, my kids.
 3        Q.   Calling them from where?  You weren't with
 4   them?
 5        A.   Not 24 hours a day.  Are you with your wife
 6   and kids 24 hours a day, sir?
 7        Q.   If you don't mind.  I'll ask the questions.
 8        A.   Oh.
 9        Q.   So what else were you using your phone for?
10   Did you have any --
11        A.   Personal reasons, sir.
12        Q.   Did you have any personal reason to talk to
13   any SNM member or affiliate?
14        A.   A lot of people called my phone still.
15        Q.   People had your numbers?
16        A.   People had my number.
17        Q.   And those would be people who were SNM
18   members?
19        A.   Everybody that I know.
20        Q.   Chris Garcia had your number?
21        A.   Probably.
22        Q.   Well, you had called him a lot.  You were
23   close to Chris Garcia, weren't you?
24        A.   Yes, I was.
25        Q.   Very close to him; yes?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6107

1       A.   Yeah.

2       Q.   He supplied you with drugs?

3       A.   I believe you're his lawyer, right?

4       Q.   And you bought drugs from him?

5       A.   Yes.

6       Q.   You've been to his house?

7       A.   Yes.

8       Q.   All right.  And during that period of time,

9   from October 26, 2015, to November 25, 2015, you had

10  conversations with the people you knew before you had

11  been arrested, like Chris Garcia?

12      A.   I probably did.  I don't recall

13  conversations.  It was a long time ago, like I said.

14  And I was focused on getting out of there.  I was

15  tired of people wanting to kill each other and stuff.

16      Q.   But you were out there, you'd been out on

17  the street for a while.

18      A.   Out of Albuquerque, sir, out of the

19  situation.

20      Q.   So what did you do when SNM members called

21  you on your personal cellphone, during this period of

22  time where the Government had supplied you with their

23  own cellphone?

24      A.   If they were part of this case -- I don't

25  think that I talked to them anymore on personal

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.                                    1-800-669-9492
PROFESSIONAL COURT                                   e-mail: info@litsupport.com
REPORTING SERVICE

DNM 6108

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 85109

```
 1   cellphones.  I might have.  I really don't remember,
 2   to tell you the truth, if I did or I didn't.  But if
 3   they were part of this case, most of the calls were
 4   directed to the cellphone that was provided to me by
 5   Bryan Acee.
 6        Q.   My question is about the calls that weren't
 7   on the wiretapped phones.
 8        A.   My answer was I don't remember.
 9        Q.   What had Bryan Acee told you to do, if you
10   received a call from Chris Garcia or any other SNM
11   member on the non FBI-given cellphone?
12        A.   I don't really remember what the
13   instructions in that case were.  My instructions were
14   to use that phone only for this case, and not to use
15   it for personal reasons.
16        Q.   So, to the best of your knowledge, if you
17   were -- received a call or called an SNM member from
18   your personal cellphones, there was no instruction
19   against that?  You were just to use the Government's
20   cellphone only for SNM calls?
21        A.   Yes.
22        Q.   All right.  How did you communicate with
23   Special Agent Acee during this period of time that
24   there was a wiretap on your phone?
25        A.   I don't really remember which phone I used.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6109

1    I think I answered that question.  But, specifically,

2    I don't remember if I called him off my personal

3    cellphone or that phone.  I just don't remember.

4        Q.   Did you text him?

5        A.   Mr. Acee?

6        Q.   Yes.

7        A.   A few times probably, yeah.

8        Q.   From the cellphone he gave you, or from

9    your personal cellphone?

10       A.   I just told you.  I don't remember.  There

11   was really no instructions on talking to Mr. Acee.

12   It was -- that phone was supposed to be used for

13   these purposes, and these purposes only.  I just told

14   you that about four times.

15       Q.   I'm talking about your cellphone, sir.

16       A.   And I don't believe I was given

17   instructions on what to do with my own personal

18   cellphone, is what I keep telling you -- I keep

19   trying to tell you.  Maybe I'm not articulate enough,

20   but --

21       Q.   When you received contact from SNM members

22   on your new cellphone that had been provided by the

23   FBI, what did you do when you got those calls?

24       A.   I listened, and agreed.

25       Q.   What did you do related to Mr. Acee when

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 87 of 111

1   you got off the phone?  Let's say you got a call from

2   Eric Duran --

3       A.   I talked -- I didn't talk to him every day

4   like that.  I was under the assumption that he was --

5   the phone was wiretapped and they were listening in

6   on it.

7       Q.   When the topic of Gregg Marcantel came up,

8   did you then get off the phone from the SNM-related

9   call and then call Mr. Acee to talk about it?

10      A.   I don't remember any circumstance where I

11  did.

12      Q.   Do you remember any direction that Special

13  Agent Acee gave you about what to do in these calls?

14      A.   Just told me what was going to happen.  I'm

15  going to say it again.  They told me:  Use this phone

16  for this purpose only, do not make personal phone

17  calls on this phone.  The phone is wiretapped,

18  everything is going to be recorded on it.  And

19  everything that's on that phone, you guys have it, so

20  I don't know why you keep asking me.  It's a long

21  time ago.  I had a lot of stuff going on in my life,

22  and I was trying to get out of Albuquerque.

23      Q.   So you don't remember any conversations

24  with Special Agent Acee, either on that phone or on

25  the other phones, about what to do in your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6111

```
 1   interactions with SNM members.

 2            MR. CASTELLANO:  Objection, asked and

 3   answered.

 4            THE COURT:  Overruled.

 5       A.   Can you repeat it one more time?  Say it

 6   again.

 7       Q.   You don't remember any specific

 8   conversation or direction from Special Agent Acee

 9   about what to do in response to SNM calls to you

10   related to Gregg Marcantel?

11       A.   Let them talk, go along with it, I believe

12   is what the instructions were.  And I don't know if

13   they came specifically from Bryan Acee.  But that was

14   what I was under the impression of what I was

15   supposed to do in that situation.  I think they

16   pretty much already knew what was going on from the

17   other phone that they had in the prison.

18       Q.   From Eric Duran's phone?

19       A.   I guess.

20       Q.   That was your understanding at the time?

21       A.   That's what I thought.  That's my personal

22   thought.

23       Q.   Did you know Eric Duran was a government

24   cooperator during that time?

25       A.   I don't believe so, at first.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6112

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 89113

1          Q.    In the time you were wiretapped, in October

2     and November of 2015?

3          A.    I don't believe so.

4          Q.    So when Eric Duran was calling you on your

5     cellphone that the Government had given you, you

6     didn't know that he was undercover for the

7     Government?

8          A.    No.

9          Q.    All right.  Why did you agree to cooperate?

10         A.    At one time or another everybody in this

11    courtroom right here, that's in a jail jumpsuit, has

12    asked me to kill one of the other ones.  And they

13    smile in each other's face, or kill somebody else.

14    Or -- and the minute I leave the room, I'm a snitch.

15    So I just said, You know what, I'm tired of this.

16    And so I was living my life.  Even though I was on

17    drugs, I was living my life out there in the streets.

18    And these guys brought this case on themselves, and

19    me, and everybody else in it.

20         Q.    And so that's why you decided to cooperate?

21         A.    Yeah, pretty much.

22         Q.    What did you hope to get out of

23    cooperation?

24         A.    I hoped to get away from this -- what I

25    just told you.  I'm tired of living like that.  Even

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6113

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 90114

```
 1   if it's in jail, I'm tired of living like that.
 2        Q.   I'd like to talk to you a little bit about
 3   what happened to the phone.  On December 3, 2015, a
 4   lot of these gentlemen were arrested and a lot of
 5   other SNM members were arrested, both in prison and
 6   outside of prison.  Do you remember that date?
 7        A.   I remember people were getting arrested,
 8   and I was going to be leaving town in a hurry.
 9        Q.   And they had talked to you about getting
10   out of town so nothing could come back on you, right?
11   Special Agent Acee had had that conversation with
12   you?
13        A.   I don't think he -- it was understood
14   before that I'd be leaving town, and this started to
15   be known.
16        Q.   And your phone that he had given you was
17   still working at the time of the takedown, wasn't it?
18        A.   I don't remember if it was working or not.
19   Once everything was pretty much over with, I had the
20   phone in a backpack with a couple other things,
21   laptop and tablets and just basic electronics that
22   belonged to me.
23        Q.   Did Special Agent Acee talk to you about
24   staying -- keeping the phone close by, in case you
25   got some calls after the arrests started going down?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 91

```
 1          A.   I don't remember that conversation.
 2          Q.   Did you have the phone with you in early
 3   December of 2015?
 4          A.   I had the phone with me almost to the day I
 5   left town.
 6          Q.   And when was that day?
 7          A.   Late December.  I didn't have it until the
 8   day I left, until maybe a week or two before, maybe.
 9          Q.   So sometime in mid December is when you got
10   rid of the phone?
11          A.   Sometime between the time everybody was
12   arrested and the time I left town, I turned in the
13   phone.
14          Q.   So when everybody was arrested, you still
15   had the phone?
16          A.   I believe so.
17          Q.   And it was still in working order?
18          A.   I believe so.
19          Q.   And were your instructions at that time to
20   continue using the phone?
21          A.   My instructions were not to use that phone
22   for anything else except for this case.
23          Q.   Thank you for that.
24               So was your instruction to continue using
25   the phone for this case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6115

```
 1        A.   No.

 2        Q.   -- until --

 3        A.   After everybody was arrested, I believed

 4   the case was over at that point, the talking on the

 5   phone stuff anyway.

 6        Q.   All right.  But on December 3, were you

 7   being asked to keep the phone on, so if you got any

 8   calls from any of the SNM members --

 9        A.   I don't remember.  I don't remember.

10        Q.   Was the phone still working --

11        A.   I don't know.

12        Q.   -- on December the 3rd?

13        A.   I don't know.

14        Q.   Well, the wiretap was over November the

15   25th?

16        A.   I don't know when.

17        Q.   Do you recall if you used the phone after

18   November 25?

19        A.   I don't remember.

20        Q.   Why were you carrying it around, if you

21   weren't using it?

22        A.   I wasn't carrying it around.  It was in a

23   backpack with other electronics that -- I think I

24   just told you that.

25        Q.   You said you were carrying around the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6116

1    backpack.

2         A.   No.  I was packing my stuff actually to

3    leave town.  And it was in the backpack with other

4    electronic items that I had.

5         Q.   You were leaving town with Special Agent

6    Acee's telephone?

7         A.   No.  I was packing my stuff to leave town.

8    I was leaving, so I had everything that I was

9    responsible for, including that cellphone, in the

10   backpack with other electronic items that belonged to

11   me, my wife, my son, and my daughter.

12        Q.   Did you have a phone call at some point

13   with Mr. Baca, on --

14        A.   Numerous.

15        Q.   -- on the FBI cellphone?

16        A.   Numerous conversations.  I think there was

17   a few.

18        Q.   Was there a conversation about destroying

19   the cellphone?

20        A.   I'm not really sure if we had that

21   conversation or not.  I vaguely remember it.

22        Q.   Well, if you vaguely remember it, what are

23   your vague recollections?

24        A.   I remember that I really didn't have to

25   keep track of this stuff, because most of this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6117

1   recordings was wiretapped.  So I pretty paid much

2   attention to as little of it as I could, to tell you

3   the truth.  Yes, okay, okay, I'm going to do that

4   right now.

5        Q.   Do you remember saying that, okay, okay,

6   okay, I'm going to go get rid of this cellphone?

7        A.   I remember specifically the conversation

8   where he wanted me to -- after I killed Gregg

9   Marcantel or Santistevan, to kill "Chuco."  And I'm

10  pretty sure, yeah, that he did ask me to destroy the

11  cellphone and get rid of the gun and kill "Chuco."

12  Yeah, I'm pretty sure.

13       Q.   And did you agree to do that?

14       A.   Yeah.

15       Q.   To get rid of the cellphone?

16       A.   I agreed to do everything he asked me to

17  do.

18       Q.   And what happened to the cellphone?

19       A.   I turned it back in to Bryan Acee.

20       Q.   How was it working then?

21       A.   I had ran over the whole backpack.

22       Q.   How did that happen?

23       A.   I was packing an RV, getting ready to leave

24  town.  And it was left in the back, in-between the

25  trailer and the RV.  And when I pulled out, ran over

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6118

```
 1   something, and it was the backpack.
 2        Q.   So you had a backpack with all your
 3   family's electronics in it behind the wheel of the
 4   RV?
 5        A.   Actually on a trailer, and I was putting
 6   stuff on top of the RV, inside the cars and stuff,
 7   and I missed it.
 8        Q.   And you ran over the bag?
 9        A.   I ran over the whole bag.
10        Q.   And what happened to the cellphone?
11        A.   It was damaged.
12        Q.   Did you try to turn it on after that to see
13   if it would still work?
14        A.   I didn't.
15        Q.   Was it still powered up?
16        A.   I don't even know if it was powered up.  I
17   don't think it was.
18        Q.   What day was that?
19        A.   I don't remember.
20        Q.   Did you contact Special Agent Acee to
21   report that you'd run over his cellphone?
22        A.   I don't think I specifically contacted him.
23   I didn't even think they wanted that phone back.  I
24   thought that --
25        Q.   You thought it was a gift?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6119

 1          A.   No, I thought it was off, and I thought it
 2     was done, and I thought they had the wiretaps, didn't
 3     think that phone was very important.  Actually, I was
 4     more concerned with my daughter's laptop and her
 5     stuff.
 6          Q.   So when did you turn that phone back over
 7     to Special Agent Acee?
 8          A.   I seen him before I left town, I think
 9     maybe on the day I went to court.  I don't know what
10     day it was.  Maybe it was that day.  And I think it
11     might have been, and --
12          Q.   The same day you ran over it?
13          A.   No, the day I went to court.
14          Q.   How many days after running over the phone
15     was that?
16          A.   I don't remember.
17          Q.   Was it two days?
18          A.   I don't remember.
19          Q.   A week?
20          A.   I don't remember.
21          Q.   Two weeks?
22          A.   It could have been a year.  I don't
23     remember.
24          Q.   And is it your testimony that it was an
25     accident to run over a bag of electronics?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6120

1        A.    Yeah.   Yeah.

2        Q.    I'd like to ask you about the body

3    recorder.   Were you asked to wear a wire on November

4    29, 2015, and go to Chris Garcia's house?

5        A.    Yeah.

6        Q.    How did that conversation --

7        A.    I don't remember the date, but I remember I

8    was asked to wear a recording device and go to Chris'

9    house.

10       Q.    Who asked you?

11       A.    Agents.

12       Q.    Which agents?

13       A.    I believe it was Bryan Acee.   Most of my

14   conversations were with Bryan Acee.

15       Q.    Were those in-person conversations or on

16   the telephone?

17       A.    In person.

18       Q.    Did you have his cellphone number?

19       A.    Bryan Acee's?

20       Q.    Yes.

21       A.    Yes.

22       Q.    Did you call him up on the cellphone from

23   time to time?

24       A.    No.

25       Q.    Did you text him on the cellphone from time

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to time?
 2        A.   I would wait for him to contact me.
 3   Usually, like I said, I was really busy.  I was
 4   trying to get out of town.  I didn't want to be
 5   involved in none of this stuff, sir.  I was dragged
 6   into it.
 7        Q.   So how -- where were you when the
 8   conversation happened about you wearing a wire?
 9        A.   I believe it might have been in the parking
10   lot to a church near Chris' house, I believe, maybe.
11        Q.   How did you know to go there to meet Bryan
12   Acee?
13        A.   Either came to my house or I talked to him,
14   he called me.  I don't remember.
15        Q.   Did he come by your house -- during that
16   time period, October, November, December of 2015,
17   would he drop by your house from time to time?
18        A.   I don't really remember, like specifically
19   him coming to my house.  I remember this case was
20   going.  I remember -- yeah, I had phone contact with
21   him.  I don't remember which phone it was on.  I've
22   already told you that.  It was either in person or on
23   the phone he asked me to meet him at the church on
24   that day.  I don't remember which.
25        Q.   Which church?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6122

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 99 of 123

```
 1          A.   I don't know the name of the church.  It's
 2     on Central, near 98th Street.
 3          Q.   Where did you meet him at the church?
 4          A.   In the parking lot.
 5          Q.   Did you get there first or did he get there
 6     first?
 7          A.   I believe I did.
 8          Q.   Okay.  And how long did you wait on him to
 9     show up?
10          A.   Not long.
11          Q.   Did you know when you went over there that
12     you were going to be asked to wear a wire?
13          A.   I don't remember, but -- I probably would
14     assume I did.  But I don't remember.
15          Q.   So what happened when he showed up, when
16     Bryan Acee showed up to the parking lot of the
17     church?  What did he say to you?
18          A.   It kind of refreshed my memory a little
19     bit.  I believe I was there -- I believe I did know I
20     was going to wear a wire.  I believe the phone
21     conversation had been with Baca asking me to go get a
22     weapon from Chris.  And I believe that's why I was
23     there, to get the wire, to get to Chris' to pick up a
24     weapon.
25          Q.   Did you report to Special Agent Acee or any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 6123

1    other of your handlers that you had been asked to go

2    get a weapon from Garcia?

3         A.   No.  I believe it was on the wiretaps.  I

4    believe they knew.

5         Q.   So you had that conversation allegedly with

6    Mr. Baca, and then you just waited to hear from the

7    special agents?

8         A.   We were in contact about that, yeah, pretty

9    much.

10        Q.   All right.  So then, when you got there,

11   what was the conversation about the wire?  So now you

12   think you remember that you knew you were going to be

13   asked to wear a wire.  What did the agent say when he

14   pulled up next to you in the parking lot?

15        A.   Asked me if I was ready.  Told me I'll be

16   all right.  And just go and do what I had to do.

17        Q.   What do you mean "be all right"?  What did

18   that mean to you?

19        A.   I worry about my safety, my family's safety

20   a lot.  Because, like I said, every one of them has

21   asked me to kill the other one at one time or

22   another.

23        Q.   So how -- what does being all right mean?

24   What did you think that meant?  That they were going

25   to be there watching the whole time?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yeah.

 2          Q.   And did you talk to them about that, like:

 3   Are you guys going to be close by, in case anybody

 4   finds a wire on me?

 5          A.   I didn't specifically.  I don't think I

 6   did.

 7          Q.   And so what was the plan when they were

 8   putting this wire on you?

 9          A.   The plan was I was going to go and pick up

10   a weapon from Chris.

11          Q.   Were you talked to about what conversations

12   to try to get Mr. Garcia to say onto the wire?

13          A.   No, I was never told to get anybody to say

14   anything.  I was told to --

15          Q.   What were you told to do?

16          A.   To go and let them talk.

17          Q.   Where was the wire?  How did it get put on

18   you?

19          A.   I believe it was a small box.  I don't

20   think it got put on me, or anything like that.

21          Q.   Did it get taped to your body?

22          A.   I don't remember.  I could tell you what it

23   looked like, a small box, rectangular shape.

24               MR. BECK:  Objection, Your Honor.

25               THE COURT:  Do you need any more
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6125

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 102 of 126

 1   information than that?

 2             MR. ADAMS:  I do, Judge, because of his

 3   ability to control what's recorded.

 4             THE COURT:  Well, ask him about his ability

 5   to control.  But let's don't get into a description

 6   of the device.

 7        Q.   Let me try this one and see if it helps.

 8   Was there a microphone separate from the box?

 9        A.   I don't think so.  I think it was all one

10   unit.

11        Q.   What part of your body was this placed on?

12             MR. BECK:  Objection, Your Honor.

13             MR. ADAMS:  Judge, I had a case that was

14   similar, many years ago, and they put a wire between

15   the thighs of the sister-in-law of my client.  And

16   there were inaudible parts of the tape.  And our

17   theory was that she knew how to manipulate the wire

18   by ruffling her legs together during the part of the

19   case that she didn't like.  We had experts to testify

20   to that, and that was a quick acquittal.  I think

21   it's important to understand where the wire was and

22   how he may have the ability to manipulate what was

23   recorded.

24             THE COURT:  What do you feel comfortable

25   asking, Mr. Beck?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6126

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

```
 1                    MR. BECK:  I feel comfortable if he wants

 2        to ask whether he can --

 3                    THE COURT:  Why don't you do this:  Why

 4        don't you ask these questions right here, and we'll

 5        see if -- just stand right there, Mr. Adams.  He can

 6        ask them from there.  Just stand there and we'll see

 7        if we can get it out.

 8                    MR. BECK:  Mr. Montoya, could you somehow

 9        manipulate with your body the quality of what was

10        recorded on that recording device?

11                    THE WITNESS:  I don't know.  It never

12        crossed my mind.  I thought it recorded the whole

13        time.  And I'm naturally paranoid.  Even if I turn my

14        cellphone off, I think it can record what I'm saying.

15                    MR. ADAMS:  It can.

16                    THE WITNESS:  I'm not that paranoid then.

17                    MR. BECK:  Did you -- were you able to turn

18        on and off this recording device?

19                    THE WITNESS:  I don't know.

20                    MR. BECK:  Were you able to start and stop

21        the recording device?

22                    THE WITNESS:  I don't know.

23                    THE COURT:  What else do you need?

24                    MR. ADAMS:  Well, Judge, I will point out

25        there are large portions of the tape that are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6127

1    inaudible.  So I'd like to follow up on this.  I

2    mean, I get that the Government likes what they

3    elicited.  But I think we still have our questions

4    about what he thought and what he did.

5            THE COURT:  Well, I think you've gotten

6    enough of a description of the device.  Let's move

7    on.

8    BY MR. ADAMS:

9        Q.   What was your understanding about how the

10   device recorded?

11       A.   It's a recording device that records.

12       Q.   Okay.  Did you ask Special Agent Acee

13   anything about how it worked?

14       A.   I really didn't care how it worked.  I

15   really didn't care about any of this stuff.

16       Q.   You didn't care if it got an accurate

17   recording or an inaccurate recording?

18       A.   I don't know how you can get an inaccurate

19   recording.  People say what they say.  It's not like

20   I can say yes, and the recorder said it said no.  I

21   didn't really care.  I carried the recorder there to

22   talk to Chris about a weapon, and I carried it back.

23       Q.   And then what happened after that

24   conversation?

25       A.   Well --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105

```
 1        Q.   Well, let me ask this first.  When you went
 2   to meet Chris Garcia, where was he?
 3        A.   I believe he was at his house.
 4        Q.   Inside -- did you go inside the house?
 5        A.   I don't remember.  I talked to him inside
 6   his house sometimes, sometimes in the garage, and
 7   sometimes in the driveway, sometimes in my car,
 8   sometimes in his car.
 9        Q.   I'm talking about the day you left his
10   house with a gun that you gave to Special Agent Acee.
11   Let's focus on that day, November 29, 2015.  Do you
12   know where you were at Chris Garcia's house?
13        A.   I think I might have went into his house.
14        Q.   Do you know?  Are you clear on that?
15        A.   No, I'm not clear on it.
16        Q.   Where was the gun?
17        A.   I don't know where it was.  I think --
18             MR. CASTELLANO:  Objection, relevance, Your
19   Honor.  This has nothing to do with the recordings at
20   all.  It's basically defense counsel trying to
21   collect evidence for purposes of trial.
22             MR. ADAMS:  This is defense counsel
23   actually trying to fill in the blanks on inaudible
24   parts of the recording, Your Honor.
25             THE COURT:  Well, I doubt you're going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6129

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106

1    be able to do that with this witness.  So let's --

2    sustained.  Who is defending this?

3              MR. BECK:  Sorry.  I objected to the first

4    one on accident.  It's Mr. Castellano.  I apologize

5    for that.  And then I --

6              THE COURT:  Pick one.

7              MR. BECK:  -- I apologize to Mr. Adams.

8              THE COURT:  You can't double tag team here.

9              MR. ADAMS:  Judge, I tell you I have no

10   problem with that.  But I'm going to tag in Ms.

11   Sirignano any second, and we'll just get it on right

12   here.

13             THE COURT:  Well, not in my courtroom.

14             MS. SIRIGNANO:  Come on, Judge.

15   BY MR. ADAMS:

16        Q.   Okay.  What did you do with the recording

17   after you left Garcia's house?

18        A.   I believe I gave the device and the weapon

19   back to the agents.  And I don't remember which

20   agents I gave it to, to tell you the truth.  There

21   was a heavyset black gentleman that I hadn't seen too

22   often.  As a matter of fact, now that you refresh my

23   memory a little bit, he was supposed to be watching

24   me the entire time.  I think he was following.

25        Q.   Did you ever see him?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6130

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 107 of 131

1       A.   I didn't really pay attention.  Like I told

2   you, I just did what I was supposed to do, and took

3   it back.  I wasn't looking over my shoulder or acting

4   suspicious or nothing.

5       Q.   Where did you give -- did you give the gun

6   back to Special Agent Acee or to this gentleman who

7   was following you?

8       A.   I don't remember which one I gave it to.

9       Q.   Did you go back to the church, or did you

10  go somewhere else?

11      A.   I kind of want to say the church, but I'm

12  not exactly sure.

13      Q.   Were you on methadone all during this time?

14      A.   Yes, I was.

15      Q.   How did that impact your memory or your

16  ability to take stuff in?  Would you get high on

17  methadone?

18      A.   I've been high most of my life, or on some

19  type of medication.  I would say it affects people's

20  functioning.  But like I said, it's recorded, so --

21      Q.   Did you ever sit down with Special Agent

22  Acee, or anyone else, and go over the recording?

23      A.   No.

24      Q.   Did you ever talk to them about the parts

25  of the recording that were inaudible; fill in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 108 of 132

```
 1  blanks about what wasn't recorded?
 2       A.   I never had any conversations about the
 3  recordings with anybody.  Once it was done, I pretty
 4  much put it out of my head.  I told you, I think, I
 5  don't even want to participate in this stuff.  I got
 6  drug into it pretty much by your clients.
 7       Q.   Was the recording device, to your
 8  knowledge, on the entire time, or was this something
 9  you could turn on and off?
10       A.   I assume it was on the entire time.  Like I
11  said, I think my cellphone can record when it's off;
12  you said that you also agreed.  Remember?
13       Q.   Yes.  Did you ever -- backing up to your
14  cellphone calls on the cellphone Bryan Acee gave you,
15  did you ever go over those calls?
16       A.   I never went over any of the conversations
17  with anybody.  It was what it was.  It speaks for
18  itself.  I don't know what's on the recordings.  But
19  if those conversations are on the recordings, they
20  speak for themselves.  I didn't think I had to
21  remember any of that stuff.
22       Q.   When you ran over the cellphone, were there
23  any witnesses to that?
24       A.   No.  Actually, I was planning on leaving
25  town, and I had the RV parked somewhere else.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6132

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 109 of 133

```
 1    didn't want nobody to see the RV with my car and a
 2    trailer and bags packed.  So, pretty much, I would go
 3    and I would pack and get stuff ready.
 4         Q.   All right.  But that day you actually
 5    cranked the engine and moved the vehicle?
 6         A.   I cranked it and moved it on a couple of
 7    different occasions.  But it wasn't parked at my
 8    house.
 9         Q.   Did your wife see you run over the bag?
10         A.   No.
11         Q.   Your daughter?
12         A.   No.
13         Q.   How did it come about that you handed that
14    broken phone or runover phone or cracked screen phone
15    back to Bryan Acee?
16         A.   I was leaving town.  I went to court.  The
17    last time I spoke to him -- I'm not positive, but I
18    think it was at the courthouse in Albuquerque.
19         Q.   And he asked for the phone, or you
20    volunteered to give it?
21         A.   He asked for it.
22         Q.   And what did you say?
23         A.   I said, "The screen is broken."
24         Q.   And that was it?  Just a cracked screen.
25         A.   I don't even know how damaged the phone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6133

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110 of 134

```
 1    was.  Like I said, I never tried to turn it on.  That
 2    was not my phone.  I didn't really care about that
 3    phone.
 4         Q.   To your knowledge, was the back of the
 5    phone still attached?
 6         A.   I don't remember.
 7         Q.   You remember a cracked screen?
 8         A.   I remember the phone was broken.  I
 9    remember all the electronics in that bag were broken.
10    The things I was paying attention to was my
11    daughter's laptop, her tablet, and my wife's Nook.
12         Q.   Why were you still carrying around a bag of
13    broken electronic equipment?
14         A.   It didn't belong to me.
15         Q.   Well, the laptop did, the Nook did, and
16    other items in the backpack did.
17         A.   I didn't carry them around.  Like I said,
18    it was in preparation for leaving.  It was in the
19    bag.  He asked me for it.  It was still in the bag.
20    I gave it to him.
21         Q.   All right.  So what did he say when he saw
22    it?  What did he tell you when you gave him back
23    broken equipment, that he had paid for, from the FBI?
24         A.   I don't really remember.
25         Q.   You have no recall of his reaction to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6134

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110

1  receiving back a broken item?

2      A.   I don't think it was very much of a

3  reaction, because now, if I remember, I didn't think

4  he was too upset about it.  I don't know.

5      Q.   Have you been in communication with Special

6  Agent Acee lately?

7      A.   No.

8      Q.   Have you been in communication with him

9  since you were recently arrested?

10     A.   I don't really remember, no.  No.

11     Q.   You're just allowing your lawyers to

12  interact with the Government on your behalf?

13     A.   I spoke to him here yesterday.

14     Q.   Did they take a DNA swab from you?

15     A.   No.

16          MR. ADAMS:  Judge, since we're only allowed

17  to have one lawyer, let me go confer quickly with Ms.

18  Sirignano.

19          THE COURT:  Well, I'm not that hung up on

20  it, if nobody else is.  But we might establish some

21  rules of engagement before we get to trial so that

22  people don't complain about each other.

23          MR. ADAMS:  Thank you.  We don't have

24  anything further.

25          THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6135

```
 1   Adams.

 2          Does anybody else on the defense side have

 3   any questions of Mr. Montoya?  Mr. Lowry?

 4          MR. LOWRY:  Yes, Your Honor.

 5                        EXAMINATION

 6   BY MR. LOWRY:

 7      Q.   Good morning, Mr. Montoya.

 8      A.   Good morning.

 9      Q.   Mr. Montoya, if I understood you correctly

10   on your testimony just now, you said the recording

11   speaks for itself; is that right?

12      A.   Yeah.

13      Q.   Okay.  And if I understood your testimony

14   correctly, you've never reviewed this recording?

15      A.   Never heard it.  I'm just assuming it

16   recorded everything that was said.

17      Q.   Do you have any reason to doubt that if I

18   told you there were gaps in this recording where you

19   can't hear the conversation?

20      A.   I don't have any reason to believe or doubt

21   it.  Like I said, I really don't care.  I took it,

22   and I brought it back.

23      Q.   Well, I'm a little -- and this is not on

24   you, this is on me -- but when you say the recording

25   speaks for itself, but there is nothing on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6136

1    recording, so the recording is not speaking for

2    itself.

3         A.   It has nothing say, I guess.

4         Q.   Well, is there any reason why the recording

5    wouldn't pick up the conversation or the ambient

6    background sounds?

7         A.   I don't know, man.

8         Q.   You don't know.

9         A.   It was a long time ago.  I don't really

10   remember what was going on with that recording.  I

11   don't remember any instructions on it.  I don't

12   remember any of that.  I just remember I took it and

13   I brought it back.

14        Q.   Okay.  And I realize it was a long time

15   ago.  But can you recall anything you might have even

16   inadvertently done to inhibit or stop the recording

17   from picking up sounds?

18        A.   I really don't remember.  Like I told you,

19   like I told him, I don't remember.  I followed the

20   instructions I was given at the time.  That's all I

21   can say.

22        Q.   Okay.  I don't want you talking about where

23   the recording device was on your body, or anything

24   like that.  But is there any body movement you could

25   have done that would have stopped or covered up that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6137

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 114

1   recording to keep it from capturing the sounds?

2       A.   I wasn't really paying attention to it,

3   man.  I wasn't trying to be -- can you say that

4   again -- or anything like that -- I just kind of

5   remember where it was, you know what I mean?

6       Q.   Sure.  You said you didn't really want to

7   be there.

8       A.   No.

9       Q.   Why were you there, then?

10      A.   Because my name was mentioned somewhere

11  along the way on another wiretap, where a bunch of

12  morons were in their cells trying to act like -- I

13  don't know what -- and trying to get people to do

14  things for them on the streets.  And I ended up

15  pulled into this case.

16      Q.   Do you feel like you've -- what I'm hearing

17  you say is your participation wasn't voluntary.

18  Would you agree with me?

19      A.   My participation was voluntary after I was

20  already drug into the case.  But, no, I didn't want

21  nothing do with most of these guys.  I would talk to

22  them, keep it cordial.  I don't think very highly of

23  most of them -- some of them, I believe they're

24  decent guys if they weren't involved in this.  But

25  most of them just sit in their cells and fantasize,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6138

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6139

1    and think of ways to mess anybody up that they can,

2    trying to make themselves feel better, get what they

3    can out of them.  So that's my personal opinion.

4              MR. LOWRY:  I have no further questions,

5    Your Honor.  Thank you.

6              THE COURT:  Thank you, Mr. Lowry.

7              Any other defendant has cross-examination

8    of Mr. Montoya?

9              All right.  Mr. Castellano.

10                      EXAMINATION

11   BY MR. CASTELLANO:

12        Q.   So, Mr. Montoya, was it difficult for you

13   to cooperate in this case?

14        A.   Yes, it was.

15        Q.   And do you find it difficult to testify on

16   the stand?

17        A.   Yes, I do.

18        Q.   If you had your choices, would it be

19   something you would rather not do?

20        A.   Yes, it would.

21        Q.   And do you understand the situation you're

22   in now, in terms of your agreements with the

23   Government, and are you willing to continue with that

24   agreement?

25        A.   Yes.  I gave my word.  That's one thing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6139

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6140

```
 1    I --
 2         Q.   But if you had your choice in life, you
 3    would rather not be doing it; isn't that fair to say?
 4         A.   I would rather not be here.  I would rather
 5    be going on with my life.
 6         Q.   So let me just ask you a few questions
 7    here.  Okay.  So you were told to use the cellphone
 8    only -- the wired cellphone, only for SNM business;
 9    is that correct?
10         A.   Yes, sir.
11         Q.   Now, you mentioned you had at least one
12    other phone that you used for personal business.  Do
13    you remember that?
14         A.   Yeah.
15         Q.   Okay.  So when we talk about personal
16    business, is it talking to friends, talking to your
17    wife, things that people do with phones regularly?
18         A.   I was talking to my wife and my kids
19    mostly.
20         Q.   Now, at that time, did other SNM members
21    have your personal cellphone?
22         A.   I don't really recall, to tell the truth.
23    I remember that I was told to use that phone just for
24    that case.  I can't say for sure, one hundred
25    percent, whether I used that phone to talk to anybody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6140

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6141

```
 1    else, or if they had my number still.  I changed my
 2    numbers a lot.  I'm really clumsy with cellphones.  I
 3    break them all the time.  They're on my lap, I get
 4    out of the car, they fall out.  The screen breaks.  I
 5    change phones a lot.  And before that, like I said,
 6    was selling drugs, so I would change phones out of
 7    paranoia.  I don't remember if I used the other phone
 8    for anything else, my personal phone was mostly
 9    after.  After I was arrested, my personal phone was
10    mostly for my kids and my wife, and that was it.
11         Q.   And then, if somebody called you on your
12    phone, and it had to do with SNM business, would you
13    try to call them to get them to use the phone that
14    was being monitored, if you remember?
15         A.   I would assume, yeah.  I don't really
16    remember.  But everything to do with the case, or
17    anybody -- I would assume anybody from SNM, their
18    calls would probably go to that phone.  I'd probably
19    tell them I'll call you back, or something like that,
20    or tell them, "I changed my number."
21         Q.   And if it was anything to do with criminal
22    activity, would you try to talk to them on the phone
23    that was being monitored?
24         A.   Yeah.
25         Q.   You mentioned you weren't quite sure when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6141

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6142

1    you quit using the phone.  So let me ask you this, in

2    terms of -- since it was December, and the holidays

3    were during that month, do you remember if you

4    finished using the phone maybe before or after

5    Christmas?

6        A.   It was way before Christmas.  I believe I

7    left on Christmas Eve -- or not way before Christmas.

8    It was probably right before Christmas sometime.

9        Q.   So around the Christmas holidays?

10       A.   Before Christmas.

11       Q.   Now, when you were done with the

12   recordings, and people were being arrested, did you

13   have any other reason to use the monitored phone?

14       A.   No.  I didn't want contact with anybody

15   else.  So at that point I was avoiding contact with

16   people.  I don't even think I was using my own phone

17   that much other than just making plans to get out of

18   town.

19       Q.   Is that because you were getting out of

20   town to avoid anybody -- the fact that people might

21   know that you were cooperating at that point?

22       A.   Yeah.

23       Q.   And at that point, then, did you want to

24   have anything to do with this case or the

25   investigation?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6142

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 119 of 143

```
 1        A.   As little as possible.  I fulfilled my

 2   obligation and move on with my life.

 3        Q.   As far as you can recall, after getting the

 4   gun from Chris Garcia, were you aware of any other

 5   reasons why you might need to use that phone?

 6        A.   No.  I think that was pretty much the end

 7   of it.

 8        Q.   You mentioned that the agents told you that

 9   you would be all right.  Were there discussions about

10   safety?

11        A.   Yeah.

12        Q.   And did they give you any assurances that

13   they would be watching you and keeping you safe?

14        A.   Yeah.  I believe the other agent, the one I

15   mentioned earlier -- I didn't know who he was -- I

16   believe -- I'm pretty sure that was the reason why he

17   was there.  I'm pretty sure somebody said that.  I'm

18   pretty sure that he was going to be watching me

19   pretty much most of the time that he could.

20        Q.   Was it your understanding, then, that

21   somebody would be watching you, as best as you knew,

22   throughout that operation when you picked up the gun?

23        A.   I assume that.  And I want to say I was

24   told that.  But, like I say, it was a long time ago.

25   And I was, like, doing what I was pretty much told:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6143

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120 144

```
 1   Take it, bring it back.  And I'm pretty sure the guy
 2   was -- yeah, that's what his purpose was, he told me
 3   that.
 4        Q.   And what were your concerns about safety on
 5   that particular day?
 6        A.   Man, I'm going to go get a gun from
 7   somebody to kill the Secretary of Corrections.  I was
 8   pretty worried about my safety.
 9        Q.   You mentioned earlier that Mr. Baca told
10   you to do at least three things:  One was get the
11   phone; kill "Chuco" -- no, destroy the phone; kill
12   "Chuco."  And there was one other thing.  Oh, get rid
13   of the gun; is that correct?
14        A.   Yeah.  And the more we talk about it, I
15   remember a little bit more, yeah.  Yeah, I definitely
16   remember the conversation a little bit better.  Get
17   rid of the gun, get rid of the phone, and take care
18   of that guy.
19        Q.   Even though you told him you were going to
20   do those things, did you really intend to kill
21   "Chuco," get rid of the gun, and get rid of the
22   phone?
23        A.   No, I didn't.  As a matter of fact, "Chuco"
24   is one of the people that I mentioned earlier that
25   probably got drug into this, just like I did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6144

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 121

```
 1                   MR. CASTELLANO:  May I have a moment, Your
 2      Honor?
 3                   THE COURT:  You may.
 4                   MR. CASTELLANO:  Thank you, Your Honor.  I
 5      pass the witness.
 6                   THE COURT:  Thank you, Mr. Castellano.
 7                   Mr. Keefe, do you need anything?  Clear up
 8      anything.
 9                   MR. KEEFE:  No, Your Honor.
10                   THE COURT:  All right.  Mr. Adams.
11                   MR. ADAMS:  Thank you.  I have some brief
12      follow-up to Mr. Castellano's questions.
13                       REDIRECT EXAMINATION
14      BY MR. ADAMS:
15           Q.   You had told the prosecutor that you just
16      wanted to get out of state, to be going on with your
17      life.  What do you mean by going on with your life?
18           A.   Getting out of the situation with these
19      guys.  I'm telling you, I don't know how many
20      times -- it's like living in a snake pit.  I'm tired
21      of it.
22           Q.   So you wanted to get away from the snake
23      pit?
24           A.   Yes.
25           Q.   Get away from criminal behavior?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6145

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 122 146

```
 1          A.   To the best of my ability, yes.

 2          Q.   Get away from drugs?

 3          A.   Yes.

 4          Q.   What do you mean to the best of your

 5     ability?

 6          A.   I'm a drug addict.  I've been a drug addict

 7     of my life.

 8          Q.   Have you spoken to Mr. Castellano today

 9     before the witness stand?

10          A.   Briefly.

11          Q.   He was in the room with you when you were

12     with your attorneys?

13          A.   Yes.

14          Q.   And is it your memory today, as you're

15     here, that you believe you left the state, in 2015,

16     on Christmas Eve?

17          A.   Thereabouts.

18          Q.   And is that the day or the time you gave --

19     the day you left, was that the day you gave Mr. Acee

20     back his phone?

21          A.   No.  I believe I gave it back to him the

22     day I went to court.

23          Q.   Do you happen to know what day that was?

24          A.   Really?

25          Q.   Fair enough.  Do you happen to know if that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6146

```
 1    was immediately before you left the state?
 2         A.   It wasn't immediately before I left the
 3    state.  I don't think it was immediately before I
 4    left the state.  I think it was -- I had about maybe,
 5    I don't know how long, a week or so, to finish
 6    getting ready after everything was wrapped up.
 7              Like I said, it was a while back.  A lot of
 8    stuff was going on.  I'm trying to figure out where
 9    I'm going.  What I'm doing.  Stuff happened pretty
10    fast.  And I don't know what else to tell you, man.
11    I don't really remember the day.
12              MR. ADAMS:  Thank you.
13              THE COURT:  Thank you, Mr. Adams.
14              Did you have something, Mr. Lowry?
15              MR. LOWRY:  Just very briefly, Your Honor.
16                        EXAMINATION
17    BY MR. LOWRY:
18         Q.   Mr. Montoya, were all of your recordings,
19    were all of your conversations with Mr. Baca on the
20    FBI phone that was being recorded?
21         A.   From the time I got that phone to the time
22    I turned it back in, all the conversations I had
23    regarding this case were on that phone.
24         Q.   Including every conversation you had with
25    Mr. Baca?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124

```
 1          A.    Yeah, from the time I got the phone.

 2          Q.    So -- and just to clarify, so you had never

 3    used your personal phones, no matter --

 4          A.    From the time I got the phone, to the time

 5    I gave the phone back, all the conversations

 6    regarding this case, that I'm aware of, came on that

 7    phone, they're on that phone.

 8          Q.    On the FBI phone?

 9          A.    On the FBI phone.

10          MR. LOWRY:  No further questions, Your

11    Honor.

12          THE COURT:  Thank you, Mr. Lowry.

13          All right.  Mr. Montoya, you may step down.

14          THE WITNESS:  Thank you.

15          THE COURT:  Does anybody need Mr. Montoya

16    further for this hearing?  Can he be excused?

17          MR. CASTELLANO:  Yes, Your Honor.

18          THE COURT:  Excused, Mr. Adams?

19          Anybody else?  All right.  Is there any

20    objection?  Mr. Montoya, you're excused from the

21    proceedings.  Thank you for your testimony.

22          THE WITNESS:  Thank you, Your Honor.

23          THE COURT:  All right.  Mr. Adams, do you

24    have further witnesses or evidence you wish to

25    present?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6148

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 125149

```
 1                   MR. ADAMS:  No, sir, that's it.
 2                   THE COURT:  All right.  Do you want to
 3      argue your two motions then?
 4                   Does the Government have any further
 5      witnesses or evidence on these motions, Mr. Beck?
 6                   MR. BECK:  No, Your Honor.
 7                   THE COURT:  Mr. Adams, do you want to argue
 8      them?
 9                   MR. ADAMS:  Judge, I want to stand,
10      basically, on our motion, and -- but I do think a
11      credibility determination from you about whether it's
12      credible that the phone was accidentally broken or
13      not is important.  I am, I guess, a little
14      suspicious, naturally, when I'm trying to protect a
15      client from charges, and I own that.
16                   But it seems amazingly suspicious and
17      convenient to me that there was a phone call where an
18      SNM person told him to break the phone, and he
19      agreed -- although he didn't immediately remember
20      that, he later remembered that -- but he didn't mean
21      it, and yet the phone was broken before he turned it
22      in, where a bag of electronics is placed behind a
23      trailer wheel, with no witnesses around, and is run
24      over.  That seems uncredible to me, but -- so I think
25      that credibility determination -- you may find him
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6149

1    believable, and I may -- we may have a difference of

2    opinion on that.  But that strikes me as not worthy

3    of belief in this courtroom, that it happened the way

4    Mr. Montoya suggested it happened.  I think, if you

5    find him to not be credible on that, then you have a

6    government agent intentionally destroying evidence

7    that could be used by the defense.

8              And we stand by our pleading.  Thank you.

9              THE COURT:  All right.  Is that for both

10   motions, Mr. Adams, or do you want to take them

11   separately?

12             MR. ADAMS:  I think they both basically

13   have been rolled into 1529, once 1330 was filed, then

14   we got more information back.  So I think everything

15   has been incorporated into 1529.

16             THE COURT:  All right.  Thank you,

17   Mr. Adams.

18             Anybody else want to say anything in

19   support of Mr. Garcia's motions?

20             All right.  Mr. Beck, are you going to do

21   the legal argument on it?

22             MR. BECK:  I think, given Mr. Montoya's

23   testimony, I think we can -- I think his statement

24   appears objectively credible.  He said that he was

25   really concerned with his wife's laptop, her

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6150

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20 151

```
 1    tablet -- or his daughter's tablet, and his wife's
 2    Nook.  He also said that he thought it fell off the
 3    trailer.  He didn't place it on the ground.  He
 4    didn't do any of those things.  It seems to me
 5    credible that, in a rush to leave town, a backpack
 6    with electronics could fall off his RV or his
 7    trailer.  So those things appear credible.
 8              It's also corroborated by Agent Acee's
 9    testimony.  It's exactly what Mr. Montoya said to him
10    when Mr. Montoya didn't have any reason to lie or to
11    make up a story or to destroy the phone.
12              Mr. Montoya's testimony also is the same as
13    Agent Acee's, that he had multiple personal
14    cellphones, and he used that cellphone only to
15    converse with SNM members.
16              There is -- so where there is a burden to
17    show that the phone was apparently exculpatory under
18    Trombetta, there is no evidence of that presented
19    today where, under Youngblood, it must be possibly
20    exculpatory.  I'm not sure that that's there.
21              But, regardless, there was not evidence
22    today of any bad faith destruction.  At best, it may
23    have been negligence for Agent Acee to throw the
24    phone away.  And it may have been negligent of Mr.
25    Montoya to run over the phone, along with the other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6151

1    electronics.  But even if that were true, that

2    doesn't meet the Trombetta or Youngblood standard.

3         I guess I'll answer any questions the Court

4    has.  But I think that's probably sufficient for the

5    argument.

6         THE COURT:  All right.  Thank you, Mr.

7    Beck.

8         Mr. Adams, I'll give you the last word.

9         MR. ADAMS:  Thank you.  I do appreciate

10   that because I had a couple of little things that --

11   this is an impulse I sometimes should resist, saying

12   them out loud, but I can't resist this one:  In the

13   rush to leave town, this gentleman accidentally ran

14   over a bag of electronics.  He was very hard to pin

15   down on dates, and I think that was probably honest;

16   he has no idea what the dates were.

17        But sometime between December 3, 2015, when

18   everything -- when the arrests were made, and his

19   court appearance, when he turned over the broken

20   equipment to Special Agent Acee -- which wasn't

21   photographed and later thrown away -- the rush to

22   leave town seemed to be over a couple of weeks where

23   he was packing.  In his haste to leave town -- he

24   didn't leave again, after his court date, for several

25   days, maybe a couple of weeks.  So I don't think it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6152

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129

1    really was a rush to leave town.  It might have a

2    rush to break the phone, but it wasn't a rush to

3    leave town.

4            And the Government's position is

5    interesting.  They're saying he's credible.  But he

6    doesn't remember anything except that he doesn't like

7    the SNM guys, and that they're to blame for

8    everything wrong with him.  So he says, essentially,

9    the Government's position is:  He's a credible

10   junkie.  And I just don't think anything about his

11   testimony suggested there was any credibility at all

12   to anything he asserted.  He couldn't give dates,

13   timelines.  He hadn't reviewed the tapes to see if

14   they were accurate.  It doesn't suggest credibility.

15           Now, we may be a little weak on

16   demonstrating the significance of our prejudice.  I'm

17   happy to stand on the pleadings on that, because I

18   think we have some vulnerability on those points.

19   But the points about his haste being believable, I

20   just don't think it is.  And that him being

21   believable is a whole -- I just think there are a

22   lot, a lot of -- I think you have to really bend over

23   backwards to find that he was credible about the

24   destruction of the phone.

25           And I'll say, if he were honest about it,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6153

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130154

```
 1    he probably would have called Acee from his other
 2    array of cellphones immediately after the destruction
 3    saying, Oh, oh, sorry about that.  And he didn't do
 4    that.  He was carrying around a bag of broken phones
 5    for an unspecified period of time.  I mean, it's just
 6    bizarre and not worthy of belief, respectfully.
 7            Thank you for indulging my last points.
 8            THE COURT:  After that, I'm reluctant to
 9    find him credible.  But I am.  I do think it needs a
10    credibility determination, and I do think he was
11    credible.  I had an opportunity to observe his
12    demeanor.  And it happened -- I do think it happened
13    the way that Mr. Montoya described it.  It is an
14    objectively credible story that he gives.  And the
15    fact that he destroyed some other electronics at the
16    same time; that he destroyed his wife's and
17    daughter's at the same time, I think does add some
18    credibility to it.  There is not something specific
19    as to this phone, dropping it down a toilet, or just
20    this phone got destroyed.
21            Also, the stories between the testimony of
22    Mr. Acee and Mr. Montoya were consistent.  There
23    seems to be a consistency over time.  Also, in
24    details.  I do think that we're not dealing with a
25    great risk of any sort of evidence, much less
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6154

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 131 155

```
 1    exculpatory evidence, because it was only this phone
 2    that was used to call SNM members.  So I think we
 3    'have a high degree of assurance that all the
 4    evidence from it has been obtained.
 5            I don't see any evidence of bad faith on
 6    behalf of Mr. Montoya or Mr. Acee that would meet the
 7    Trombetta or Youngblood standards.  I think that in
 8    both situations, at most, you saw negligence by Mr.
 9    Acee in throwing away a phone, and by Mr. Montoya in
10    running over the phone.
11            So I'm going to deny both motions and not
12    suppress any of the evidence, or dismiss any portion
13    of the case against Mr. Garcia, or any other
14    defendants.
15            Well, by my account, that concludes our
16    motion work.  Is there anything else before we take
17    our leave and head back to -- get ready for the
18    trial?  Anything else I can do for you?  Anything
19    else you'd like to discuss with me?  Any more
20    guidance?  Evidentiary rulings?
21            Ms. Armijo?  Mr. Castellano?
22            MS. ARMIJO:  No, Your Honor.  I don't
23    believe so.  Thank you.
24            THE COURT:  How about from the defendants?
25            All right.  Well, everybody be safe.  We'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6155

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132 of 156

1   see you at 8:30 -- the five defendants, we'll see you

2   and your counsel, the Government, 8:30 on Monday,

3   January 29.

4           Contact Ms. Wild if we need to be of any

5   further assistance.  I'm going to keep cranking out

6   these opinions.  If there is something special you

7   want, let us know.

8           Otherwise, I appreciate your hard work

9   pretrial.  Look forward to trying the case with you

10  on Monday the 29th.  Be safe.

11          (The Court was adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6156

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on January 18, 2018.

15

16

17

18                    _____
                      Jennifer Bean, FAPR, RMR-RDR-CCR
19                    Certified Realtime Reporter
                      United States Court Reporter
20                    NM CCR #94
                      333 Lomas, Northwest
21                    Albuquerque, New Mexico 87102
                      Phone:   (505) 348-2283
22                    Fax:     (505) 843-9492

23

24

25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6157

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6158

```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF NEW MEXICO

 3    UNITED STATES OF AMERICA,

 4          Plaintiff,

 5          VS.                      CR. NO. 15-4268 JB

 6    ANGEL DELEON, et al.,

 7          Defendants.

 8

 9          Transcript of Motion to Suppress and James
      Hearing Proceedings before The Honorable James O.
10    Browning, United States District Judge, Las Cruces,
      Dona County, New Mexico, commencing on January 26,
11    2018.

12

13    For the Government:  Ms. Maria Armijo; Mr. Randy
      Castellano; Mr. Matthew Beck
14
      For the Defendants: Mr. Brock Benjamin; Ms. Cori
15    Harbour-Valdez; Mr. Robert Cooper; Mr. Jeff Lahann;
      Mr. John Granberg; Mr. Billy Blackburn; Mr. Ryan
16    Villa; Ms. Amy Jacks; Mr. Richard Jewkes; Mr. Marc
      Lowry; Ms. Theresa Duncan; Ms. Carey Bhalla; Mr.
17    William Maynard; Mr. Donovan Roberts; Ms. Lisa
      Torraco; Ms. Angela Arellanes; Mr. Jerry Walz
18
19    For the Defendants (Via telephone):  Ms. Justine
      Fox-Young; Mr. Pat Burke; Mr. James Castle; Mr.
20    Richard Sindel

21    Also present:  Mr. Gary Mitchell

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  All right.  Good morning
 2   everyone.  I appreciate everyone making themselves
 3   available to me this morning.
 4            The Court will call the United States of
 5   America versus Angel DeLeon, et al., Criminal Matter
 6   No. 15-CR-4268-JB.
 7            If counsel will enter their appearances for
 8   the Government.
 9            MS. ARMIJO:  Good morning, Your Honor.
10   Maria Armijo, Randy Castellano, and Matthew Beck on
11   behalf of the United States.
12            THE COURT:  All right.  Ms. Armijo, Mr.
13   Castellano, and Mr. Beck, good morning to you.
14            And for Defendant Joe Lawrence Gallegos.
15            MR. BENJAMIN:  Good morning, Your Honor.
16   Brock Benjamin, on behalf of Mr. Gallegos.  And I
17   believe Mr. Sindel is on the phone.
18            MR. SINDEL:  Good morning, Your Honor.
19   This is Richard Sindel.
20            THE COURT:  All right.  Mr. Benjamin, Mr.
21   Sindel, Mr. Gallegos, good morning to you.
22            For Defendant Edward Troup.
23            MS. HARBOUR-VALDEZ:  Good morning, Your
24   Honor.  Cori Harbour-Valdez.  And Pat Burke is
25   joining us by phone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6159

 1             MR. BURKE:  Good morning, Your Honor.  Pat

 2    Burke, also appearing for Edward Troup.

 3             THE COURT:  All right.  Ms. Harbour-Valdez,

 4    Mr. Burke, Mr. Troup, good morning to you.

 5             THE DEFENDANT:  Good morning, sir.

 6             THE COURT:  For Defendant Billy Garcia.

 7             MR. COOPER:  Good morning, Your Honor.  Bob

 8    Cooper on behalf of Mr. Garcia, who is present this

 9    morning.  And I believe Mr. Castle was going to join

10    us on the telephone.

11             THE COURT:  All right.  Mr. Cooper, Mr.

12    Garcia, good morning to you.

13             Mr. Castle, are you there?

14             MR. CASTL:  Yes, I am, Your Honor.  Jim

15    Castle on behalf of Mr. Garcia, by phone.

16             THE COURT:  All right.  Good morning to

17    you.

18             And for Defendant Allen Patterson.

19             MR. LAHANN:  Good morning, Your Honor.

20    Jeff Lahann on behalf of Mr. Patterson.

21             THE COURT:  All right.  Mr. Lahann,

22    Mr. Patterson, good morning to you.

23             And, let's see, for Defendant Christopher

24    Chavez.

25             MR. GRANBERG:  Good morning, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6160

```
 1    John Granberg for Mr. Christopher Chavez.

 2              THE COURT:  All right.  Mr. Granberg,

 3    Mr. Chavez, good morning to you.

 4              THE DEFENDANT:  Good morning.

 5              THE COURT:  And for Defendant Arturo

 6    Arnulfo Garcia.

 7              MR. BLACKBURN:  Billy Blackburn on behalf

 8    of Mr. Garcia.  He's present, Your Honor.

 9              THE COURT:  All right.  Mr. Blackburn, good

10    morning to you.  Mr. Garcia, good morning to you.

11              THE DEFENDANT:  Good morning.

12              THE COURT:  And for Daniel Sanchez.

13              MS. JACKS:  Good morning, Your Honor.  Amy

14    Jacks and Richard Jewkes for Mr. Sanchez.

15              THE COURT:  All right.  Ms. Jacks, Mr.

16    Jewkes, Mr. Sanchez, good morning to you.

17              And for Defendant Anthony Ray Baca.

18              MS. DUNCAN:  Good morning, Your Honor.

19    Theresa Duncan and Marc Lowry on behalf of Mr. Baca.

20              THE COURT:  All right.  Ms. Duncan,

21    Mr. Lowry, Mr. Baca, good morning to you.

22              THE DEFENDANT:  Good morning.

23              THE COURT:  And, let's see, Mr. Garcia is

24    not here.

25              So for Defendant Carlos Herrera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6161

```
 1              MS. BHALLA:  Good morning, Your Honor.
 2   Carey Bhalla and Bill Maynard for Mr. Herrera.
 3              THE COURT:  All right.  Ms. Bhalla,
 4   Mr. Maynard, Mr. Herrera, good morning to you.
 5              THE DEFENDANT:  Good morning.
 6              THE COURT:  For Defendant Rudy Perez.
 7              MR. VILLA:  Good morning, Your Honor.  Ryan
 8   Villa on behalf of Mr. Perez.  And on the phone is
 9   Ms. Fox-Young.
10              THE COURT:  All right.  Mr. Villa, Mr.
11   Perez, good morning to you.
12              Ms. Fox-Young, are you there?
13              MS. FOX-YOUNG:  Good morning, Your Honor.
14   This is Justine Fox-Young for Mr. Perez.
15              THE COURT:  All right.  Good morning to
16   you, Ms. Fox-Young.
17              And for Defendant Andrew Gallegos.
18              MR. ROBERTS:  Good morning, Your Honor.
19   Donovan Roberts for Andrew Gallegos, with Lisa
20   Torraco, with counsel all present and accounted for.
21              THE COURT:  All right.  Mr. Roberts, Ms.
22   Torraco, good morning to you.  Mr. Gallegos, good
23   morning to you.
24              THE DEFENDANT:  Good morning.
25              THE COURT:  And for Defendant Shauna
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Gutierrez.
 2            MS. ARELLANES:  Angela Arellanes for Ms.
 3   Gutierrez, who is present.
 4            THE COURT:  All right.  Ms. Arellanes, Ms.
 5   Gutierrez, good morning to you.
 6            THE DEFENDANT:  Good morning.
 7            THE COURT:  And for Defendant Brandy
 8   Rodriguez.
 9            MR. WALZ:  Good morning, Your Honor.  Jerry
10   Walz for Ms. Rodriguez.  And she's present.
11            THE COURT:  All right.  Mr. Walz, Ms.
12   Rodriguez, good morning to you.
13            Anybody else on the phone that hasn't
14   entered an appearance?  Anyone in the courtroom that
15   we haven't gotten to?
16            All right.  It looks like the first motion,
17   to me, is the motion regarding shackling.  So shall
18   we take that up, Mr. Villa?  I think you took the
19   lead on it.  I know that you filed something, I
20   think, this morning, and I haven't had a chance --
21            THE CLERK:  Yesterday.
22            THE COURT:  Yesterday.  But I think it may
23   have caught us when we were traveling.  So I haven't
24   had a chance to look at it.  But I will take a look
25   at it and pull it up while you're arguing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6163

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6164

```
 1              MS. ARMIJO:  Your Honor, may we take up a
 2   brief issue before we get to this matter?
 3              THE COURT:  All right.  What do you have?
 4              MS. ARMIJO:  There was a motion to continue
 5   that was filed last night.  I don't want to get into
 6   the merits of it or anything else.  I'm just moving
 7   the Court to seal it.  There are attachments that
 8   reveal confidential informants that were pursuant to
 9   a protective order.  I think it's a violation of the
10   protective order to file that for the public.  It
11   outs all of our informants.  And the letters
12   themselves are part of a protective order, not even
13   allowed to go onto the tablets.  So by filing it
14   publicly, it allows the defendants and the public
15   access to something that we clearly put in a
16   protective order and is covered by a protective
17   order.  So I would ask for immediate sealing of that
18   motion.
19              MS. JACKS:  And I join.  I'm the one that
20   filed it.  I made a mistake.  Ms. Sirignano had done
21   the motion.  And when Mr. Garcia pled, it did not get
22   filed.  I filed it last night, and did not read the
23   attachment.  And I would ask to seal it as well.
24              THE COURT:  All right.  Anybody object to
25   sealing the motion to continue?  Not hearing any, it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6164

```
 1   will be removed.

 2            I'm going to pass out to you a chart.  This

 3   is not a complete chart.  It is a partial one.  In

 4   about two hours you're going to have a more complete

 5   chart.  But this is going in the opinion that I've

 6   been working on about the James statements and the

 7   James hearing that we had, co-conspirator statements.

 8   So it's not complete and it's not finished, and it

 9   will be much longer here in a couple of hours, as we

10   pull some stuff together.

11            I'd ask the United States to send that to

12   Mr. Braun; get that over to him so that he can take a

13   look at it, and maybe we'll be a little bit better

14   prepared when we get to those issues a little bit

15   later.

16            All right.  Mr. Villa?

17            MR. VILLA:  Thank you, Judge.

18            What was filed yesterday is Document 1700.

19   It's a response.  Essentially, it's a response to

20   Document 1678, which is basically the email from the

21   United States Marshal Service.  And it has some

22   additional case law in there that I think is

23   important for the Court to take a look at before it

24   makes its decision.  It's United States v.

25   Sanchez-Gomez, 859 F.3d 649, from the Ninth Circuit,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    just in May of last year, as well as the Tenth

 2    Circuit case I found from 1988, United States v.

 3    Apodaca, 843 F.2d 421.  Both of those cases

 4    essentially talk about the limits, I guess, that the

 5    Court has in delegating its decisionmaking to the

 6    United States Marshal Service with respect to the

 7    issues of shackling.

 8            The email -- or excuse me, the response

 9    also responds to the email, pointing out essentially

10    that, with respect to the remaining Trial 1

11    defendants, that being Mr. Baca, Mr. Perez, Mr.

12    Sanchez, and Mr. Herrera, the email that's provided

13    does not give any individualized information as to

14    any one of those defendants that would suggest that

15    there is any reason they need to be shackled, such as

16    a risk that they might present individually.

17            And I think that, you know, while I

18    appreciate the work of the United States Marshals,

19    and appreciate the concerns that they have, and the

20    information that they provided in the email, it

21    simply is not sufficiently individualized for this

22    Court to make a decision that shackling is necessary.

23            THE COURT:  Looking at the 302s that have

24    been recently provided to the Court in this batch of

25    briefing, which they talk about the hit list, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6166

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 10167

```
 1   which Carlos Herrera is one of the people that's at
 2   the very top of the list, it seems to me that's
 3   pretty -- I don't know, that seems to me very
 4   troubling that we're going to have four men together,
 5   where two of the leaders may be having a hit on one
 6   of the other defendants in the courtroom.
 7            MR. VILLA:  Well, a few things, Your Honor:
 8   That information had come out some time ago.  I think
 9   Mr. Davis may have -- I don't remember if he actually
10   brought it to the attention of the Court, but -- go
11   ahead, Ms. Bhalla.
12            MS. BHALLA:  Thank you.
13            THE COURT:  Well, no, I'd like --
14            MR. VILLA:  Well, maybe not.
15            THE COURT:  I'll run my own courtroom, Mr.
16   Villa.
17            MR. VILLA:  I apologize, Judge.  Let me
18   just say this, this information came out a long time
19   ago.  There was information dating back over a year
20   about hits.  Frankly, when you read the 302s, just
21   about everybody in the room potentially has a green
22   light on them.
23            THE COURT:  Well, doesn't that in itself
24   provide the individualized analysis that you're
25   wanting?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6167

```
 1              MR. VILLA:  I don't think it does, Your

 2     Honor, for a couple of reasons:  One, is the

 3     information is coming from cooperating witnesses, who

 4     I think have inherent problems with their

 5     reliability.

 6              THE COURT:  But I mean, you're even saying

 7     that everybody in the room has a green light on them.

 8              MR. VILLA:  Based on cooperator

 9     information.  And so, to me, the fact that everybody

10     is saying that --

11              THE COURT:  What about the fact we've had

12     people bringing shanks into the courtroom while we've

13     been trying to have hearings?

14              MR. VILLA:  So that's addressed in the

15     response as well, Your Honor.  That is now a

16     cooperating witness, the one individual I know that

17     allegedly brought shanks into the courtroom.

18              THE COURT:  Well, but what level of

19     individual attention?  Do I have to find a shank on

20     Mr. Perez before I can put shackles on him?  I mean,

21     what is the level of individualized analysis that I

22     need to make here?

23              MR. VILLA:  Well, I certainly think --

24              THE COURT:  Do I have to wait till it

25     occurs?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6168

```
 1              MR. VILLA:  You don't have to do that, no.
 2              THE COURT:  Then tell me, given what we've
 3    had here, what more I need to find shackles
 4    appropriate?
 5              MR. VILLA:  Well, Your Honor, I think it's
 6    not that someone who is now testifying against Mr.
 7    Perez brought shanks to the court.  I don't think
 8    that's enough.  If there was some information that
 9    perhaps Mr. Perez was going to bring shanks or some
10    other material to the court, that he's not supposed
11    to, then I think we need the opportunity to test that
12    information.  But we don't even have that.  We don't
13    have anybody saying Mr. Perez is going to bring a
14    dangerous weapon to court, or something else, or Mr.
15    Perez is planning on executing a hit on any one of
16    the other three co-defendants.
17              We just have a lot of this generalized
18    information from a lot of different sources that
19    doesn't come out until they cooperate, until they
20    have some exchange with the FBI or the United States
21    Attorney's Office about the benefits they're going to
22    get for providing information.  And we don't know how
23    it transpired.  You know, it's simply not trustworthy
24    enough that some of these folks that -- you mentioned
25    Mr. Herrera -- having a green light on them, or as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6169

```
 1   mentioned in the United States Marshal's email, some

 2   testimony that came out that maybe Mr. Sanchez and

 3   Mr. Baca had a problem with each other.

 4            You know, if this information is true --

 5   which we doubt its reliability because of the source,

 6   and because it didn't come out until they decided to

 7   cooperate and got some benefit for that -- it's

 8   belied by what you've seen in the last two-and-a-half

 9   years of this case.  You know, if this occurred, it

10   occurred in some of the information before the

11   indictment -- some of it occurred during, according

12   to the cooperators -- but at no time throughout this

13   case have you seen anything happen in this courtroom.

14   You haven't got any information, at least that the

15   defense is aware of, that there was some plans or

16   movements occurring in the transport, on the way up

17   in the elevator or during the breaks.

18            THE COURT:  Some of these 302s suggested

19   that they would kill people in transport if they did

20   not sit at the back of the bus.

21            MR. VILLA:  Well, I think one of those may

22   have come from Mr. Rodriguez, who is one of the

23   individuals who brought shanks to court, who is now

24   testifying against all four of the Trial 1

25   defendants.  So I think we have to be skeptical of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6170

```
 1   his testimony or his statements in the 302, and what

 2   he's saying, and how that came about, and the fact

 3   that he's not just genuinely concerned about

 4   something happening in this courtroom or something

 5   happening to his quote/unquote friends.  He's only

 6   providing this information after he's decided to

 7   cooperate and receive the benefits that he's going to

 8   receive from that.

 9           And there isn't any other information to

10   corroborate what he has said, other than, again, this

11   generalized statements from other cooperators.  If

12   the United States Marshal said, you know, I went up

13   to Mr. Perez and said, you know, Do you think someone

14   is at risk of getting attacked in the transport van,

15   and he said something, or didn't say something, or

16   had a strange reaction, or something was found in the

17   cells or another source, like a transport officer had

18   some observations that were concerning, some other

19   evidence besides just words of the cooperators, to

20   lead this Court to believe that any of that is true,

21   I think is what is required.

22           And with respect to Mr. Perez, there isn't

23   any of that information in any of these 302s.  I

24   recognize what you're saying about Mr. Herrera, and

25   what the marshals said about Mr. Sanchez and Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6171

1    Baca.  But, again, there is no corroboration for any

2    of this material.  And I think, short of that, there

3    isn't any other evidence that I've seen or this Court

4    has seen that would warrant shackling.

5          So if we're just dealing with the Court's

6    concerns from some of these 302s, then I think I've

7    responded to that.  There isn't any other information

8    that the defense is aware of.  And so if there is,

9    I'd ask that we put it on the table this morning.

10   But there isn't any other information that would lead

11   to a conclusion that shackling is necessary.

12         THE COURT:  All right.  I may let you argue

13   further.  Why don't -- since we have Deputy US

14   Marshal Mickendrow in the room -- and I think he was

15   the one who put the report together -- why don't I

16   let him come to the podium and speak.  And then y'all

17   may have questions y'all want to ask him.

18         Deputy, good morning.

19         DEPUTY MICKENDROW:  Good morning, Your

20   Honor.

21         THE COURT:  Do you want to go ahead and

22   make a record as to why y'all feel that shackles are

23   necessary in this case?  And if you can break it out

24   by defendant, that would be helpful, I think, to

25   everyone.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6172

1          DEPUTY MICKENDROW:  Yes, Your Honor.  So I

2     think the first thing that's important to know would

3     be that the Marshal Service -- one of the Marshal

4     Service's duties is the -- to ensure the protection

5     integrity of the Court and all parties within the

6     courtroom.  That includes the defendants.  So when

7     we're considering security measures, we take the

8     defendants, the risk to the defendants, into

9     consideration in that decision.

10          What I would say is that I don't believe

11     the Marshal Service makes the decision, or in this

12     case, has made the decision, that the shackles are

13     required.  That's a decision of the Court.  However,

14     we do strongly urge the Court to follow the

15     recommendations of the Marshal Service.

16          And there are several reasons why.  We

17     have, in this case now, four defendants going to

18     trial that have very lengthy criminal histories.  We

19     pointed that out as one of the notable points.

20     They're in an organization that is known to be a

21     violent organization.  And that's not something that

22     we can just disregard.

23          The Marshal Service -- Mr. Villa is right,

24     the Marshal Service doesn't have to prove beyond all

25     doubt that Mr. Sanchez and Mr. Baca are looking at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6173

```
 1    trying to take each other out.  All we have to look
 2    at is, is there a probability that that's going to
 3    happen.  And there is a great probability.  That's
 4    the way these organizations run.  Everybody wants to
 5    be the Number 1 man.  And so it's understandable that
 6    there would be contention within that organization.
 7            Again, we don't need to prove that Mr.
 8    Herrera has a green light on his head.  But the facts
 9    that have been presented to us are enough to give us
10    cause -- or to give us pause, and to say that we need
11    to take extra security measures in order for the
12    protection of everyone within the courtroom.
13            I would also point out that -- I believe I
14    stated this in either the email, or it was a part of
15    the attachments, that we could find no case in which
16    any case was overturned due to security restraints
17    used by the Marshal Service in any trial.  I had --
18    and this isn't me speaking regarding this; this is my
19    Office of General Counsel providing this information.
20    I would not propose to be a legal matter expert in
21    any of this.  But what I would say is, when I was
22    writing up the information to provide to the Court, I
23    did refer to who I believed to be the legal matter
24    experts on this issue, and that was my Office of
25    General Counsel.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6174

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 18175

1          It's with all of that in mind that we take

2     into consideration what is the least restrictive

3     measure that we should ask for when we made our

4     presentation to the Court.

5          In addition, we took into consideration

6     many of the concerns that defense counsel raised.

7     And I believe one of the concerns was they didn't

8     want to have 100 deputies in and out of the courtroom

9     during the trial.  And if we don't use leg

10    restraints, we would have to go to a more restrictive

11    process, which would include more deputies.  And

12    that's just from a safety perspective.  We have our

13    own policies and procedures that we are required to

14    follow.  And if the leg restraints are not imposed,

15    then we have to look at alternatives.  And the

16    alternatives, I believe, are more contrary to what

17    defense counsel would want.

18          So with that, I would just turn it back

19    over to the Court, and if you have any more specific

20    questions for me.

21          THE COURT:  Let's see if any of the counsel

22    do.

23          Mr. Villa, do you have any questions that

24    you want to ask Deputy Mickendrow?

25          MR. VILLA:  I'm looking for a microphone.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6175

1    I guess I'm close enough.

2            Do you have any specific information that

3    Mr. Perez presents a threat or has a threat upon him,

4    such that someone needs be shackled during this

5    trial, or else he's going to get hurt or he's going

6    to hurt somebody?

7            DEPUTY MICKENDROW:  Yes.

8            MR. VILLA:  Can you tell me what that is?

9            DEPUTY MICKENDROW:  He's a member of the

10   SNM Gang.  He provided a device that he was given to

11   be allowed to be used in the processing and making of

12   weapons.  I don't, like you, have to look at proving

13   that Mr. Perez did this.  I look at what is being

14   stated and who has stated it and the reliability of

15   their statements.  And based on the fact that I'm

16   receiving that information from other law enforcement

17   officers who have never had their credibility

18   questioned, I'm going to err on the side of caution

19   with that and believe what's going on.

20           In addition, I look at Mr. Perez' criminal

21   history, which is quite lengthy.  And those facts

22   alone, even if he was the only defendant in the

23   courtroom would cause -- would give me pause, and

24   would cause me to request additional security

25   measures to be implemented.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6176

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20

```
 1              MR. VILLA:  Let's talk about his criminal
 2    history.  Does he have a specific instance in his
 3    criminal history that leads you to believe he's a
 4    risk inside the courtroom?
 5              DEPUTY MICKENDROW:  When I look at criminal
 6    history, I don't look at any one specific instance.
 7    I look at a whole picture.  In this case, when I look
 8    at all the defendants' criminal histories, I'm
 9    looking at that whole picture.
10              As far as one specific instance, I would
11    have to review his criminal history to be able to
12    answer that question.  But, again, in my opinion, I
13    don't look at a specific instance per his criminal
14    history.  I look at a whole picture.
15              MR. VILLA:  Well, let's set your opinion
16    aside for just a second.  And I just want to talk
17    about -- and if you don't have it on the tip of your
18    mind, that's fine, but something specific that Mr.
19    Perez has been convicted of, or accused of in his
20    criminal history that, for instance, was an incident
21    that happened in court, or attacking of a witness,
22    attacking of a co-defendant, a law enforcement
23    officer during court proceedings, threatening a
24    judge, anything along those lines that you can think
25    of in Mr. Perez' history?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6177

```
 1            DEPUTY MICKENDROW:  I can't think of
 2   anything off the tip of my tongue.  I'd have to
 3   review his criminal history specifically.  But what I
 4   would point out is the individual -- I cited a case
 5   out of Salt Lake City, Utah.  That individual had no
 6   incidences in his past in which he acted out in court
 7   either.  However, you had a situation there, where
 8   the recommendation of the U.S. Marshals was not
 9   taken.
10            And we operate on a scale where we take
11   information that we are trying to gather from
12   multiple sources.  And so my response would be I
13   don't have any one specific piece of information for
14   you.  But taking the holistic picture, I believe, is
15   necessary.
16            And you asked to set my opinion aside.  And
17   I respect that.  But in all of this, all we are
18   providing is our opinion.  We provided our opinion to
19   the Court.  The Court ultimately makes the decision.
20            MR. VILLA:  Don't get me wrong, I respect
21   your opinion.  I'm just trying to look at objective
22   facts.
23            And so, with that in mind, let me ask about
24   the conduct of Mr. Perez.  Since he's been indicted
25   in this case, have there been any instances the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   United States Marshal is aware of where Mr. Perez

 2   presented a threat, himself, during courtroom

 3   proceedings?  And I'm not talking about the fact that

 4   he's a member of -- alleged member of a gang, or that

 5   he's alleged to have provided a piece of material

 6   that is involved in this Molina homicide.  I'm

 7   talking about while he's been in court, has he made

 8   threats towards somebody?  Has he lunged at someone?

 9   Have you seen anything like that that leads you to

10   believe he was about to commit an act of violence in

11   court?

12              DEPUTY MICKENDROW:  Yes.

13              MR. VILLA:  For Mr. Perez, specifically?

14              DEPUTY MICKENDROW:  For Mr. Perez

15   specifically.

16              MR. VILLA:  And when was that?

17              DEPUTY MICKENDROW:  That was the incident

18   with Mr. Garcia, where one of my deputies approached

19   Mr. Garcia and told him to, in essence, stop trying

20   to intimidate others.  And Mr. Garcia was placed --

21   hands on were placed on Mr. Garcia.  He was removed

22   from the courtroom.  At that time, multiple

23   defendants got up and started yelling.  And Mr. Perez

24   was one of those defendants.  I had to threaten the

25   court -- sorry, I had to threaten the defendants at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6179

1    that time that I would take them all out of the court

2    if they didn't settle down.  And it wasn't until

3    after that that he settled down.  So, yes, there has

4    been incidences in the courtroom where his behavior

5    would give me pause.

6              MR. VILLA:  So, in that particular

7    instance, he stood up and yelled in reaction to

8    Mr. Garcia being removed from the courtroom?

9              DEPUTY MICKENDROW:  He yelled in reaction

10   to what was occurring with Mr. Garcia; not him being

11   removed from the courtroom.

12             MR. VILLA:  Did he say something that he

13   yelled, that you recall?

14             DEPUTY MICKENDROW:  Not that I can recall.

15   I couldn't recall a specific.  I know that he was one

16   of the individuals that did react.

17             MR. VILLA:  And when he reacted, you told

18   him to sit down or you're going to remove him from

19   court?

20             DEPUTY MICKENDROW:  There was multiple

21   times where I had to tell the defendants to sit down.

22   It was not once.

23             MR. VILLA:  Mr. Perez specifically?

24             DEPUTY MICKENDROW:  Multiple defendants.

25             MR. VILLA:  How many times did you have to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6180

```
 1   tell Mr. Perez to sit down or you would remove him?

 2            DEPUTY MICKENDROW:  In that instance,

 3   you're asking me to refer to one defendant, when I

 4   had multiple defendants causing a disturbance within

 5   the courtroom.  And in that case, I wouldn't refer to

 6   one defendant.  I would refer to all of them.  And so

 7   there was multiple occasions where I had to tell all

 8   of them to sit down, or that I would start removing

 9   them from the courtroom.  And, in fact, I believe

10   there was another defendant that we removed.  It was

11   Mr. Sanchez.

12            MR. VILLA:  Mr. Perez did not have to be

13   removed?

14            DEPUTY MICKENDROW:  He did not.

15   Ultimately, they finally started to comply, and they

16   did sit down.

17            MR. VILLA:  Okay.  Other incidents in the

18   courtroom besides that one?

19            DEPUTY MICKENDROW:  Besides that one, I

20   can't think of any other instances.

21            MR. VILLA:  All right.  And when you were

22   responding to my question earlier about the

23   allegations, you said Mr. Perez provided a piece to

24   make a weapon, you're talking about the allegations

25   in this case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6181

```
 1                    DEPUTY MICKENDROW:  Yes, I am.
 2                    MR. VILLA:  You're not talking about a
 3      different incident?
 4                    DEPUTY MICKENDROW:  No.
 5                    MR. VILLA:  I think that's all the
 6      questions I have.
 7                    THE COURT:  All right.  Thank you,
 8      Mr. Villa.
 9                    Ms. Bhalla, Mr. Maynard, do you have
10      anything you want to ask Deputy Mickendrow?
11                    MR. MAYNARD:  I don't have any questions,
12      Your Honor.  I would just like --
13                    THE COURT:  Okay.  Let me see if anybody
14      has any questions, then I'll let you comment.
15      Anybody else have any questions of Deputy Mickendrow.
16                    How about the Government?  Do you have any
17      questions?
18                    MR. CASTELLANO:  I do have some questions
19      about a shakedown that took place.
20                    THE COURT:  Let me ask y'all while y'all
21      are both there:  My understanding is that, of the
22      five defendants -- I know there is only four today --
23      but of the five defendants who are going to trial,
24      three of them had either escape charges or escape
25      convictions.  Can you tell me which three?  And are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    they two of the remaining four, or are they three of
 2    the four?
 3              MR. CASTELLANO:  What I have is a quick
 4    reference, Your Honor, is the notice of bad acts we
 5    gave to each of the defendants.  And I think the
 6    Court could take judicial notice of those letters.
 7    They were made part of the docket when defendants
 8    filed motions to exclude any of the bad acts.  So
 9    those are already something the Court can take
10    judicial notice of.
11              Let's see, in 1992, Mr. Sanchez committed
12    murder in the first degree.  In 1994, he incited a
13    riot at the inmate recreation yard.  He assaulted an
14    inmate in 1994, and a correctional officer in 1994,
15    as well as '95, in '95 and '96.
16              In '97, there was an assault of a
17    correctional officer and threatened another inmate.
18    In '97, he threatened another correctional officer.
19    He threatened --
20              THE COURT:  These are all convictions?
21              MR. CASTELLANO:  This is jail misconduct.
22              THE COURT:  Jail misconduct.
23              MR. CASTELLANO:  These are acts committed
24    within the Corrections Department.
25              In 1999, in the Corrections Department, he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6183

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 27

1  threatened a correctional officer.  In '99, he

2  attempted to flood his cell and incite a disturbance

3  among the other inmates.  In '99, he assaulted

4  another correctional officer -- twice in 1999.

5          In 2003, he possessed a homemade weapon and

6  attempted to conceal it.

7          He received drugs in the facility that were

8  sent in by Christopher Garcia.  Then, in 2005, he

9  attempted to murder a rival gang member, and stabbed

10  him several times.  And also a correctional officer

11  was caught up in that conduct, and was also, I

12  believe, stabbed.

13          In 2010, he was appointed to the tabla,

14  making him a leader and a shot caller.  In 2010, he

15  assaulted a correctional officer in the Corrections

16  Department.

17          In 2012, he threatened a correctional

18  officer.

19          In 2013, while in custody, he conspired

20  with another gang member to kill Anthony Ray Baca for

21  poor leadership decisions.

22          Mr. Baca has also, at least one time,

23  conspired to murder Mr. Sanchez.

24          And then, of course, in 2014, the charged

25  conduct is that he called for the hit on Mr. Molina.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6184

1          Regarding Mr. Baca -- I'm going to give

2     necessary facts for the purpose of making

3     individualized finding as to each of these

4     defendants, because I think this is required.

5          So, in 1982, Mr. Baca committed voluntary

6     manslaughter.  In 1982, he committed battery on a

7     peace officer.

8          In '87, he conspired to receive stolen

9     property.

10          I'll try to focus on the more aggravating

11     or violent actions.  In 1988, he committed armed

12     burglary, aggravated burglary, and aggravated

13     battery.

14          In 1989, while in the custody of the

15     Corrections Department, he murdered another gang

16     member.  He talks about that in the recordings in

17     this trial, which will be introduced.

18          In 2009, Mr. Baca sent in a covert message

19     through Jonathan Gomez, also known as "Baby G,"

20     instructing him to assault another inmate.

21          He's possessed heroin in the facility.

22          And then, of course, in 2014, we now have

23     the charged conduct, with the murder of Javier

24     Molina.

25          There is a statement here where he wanted a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    person identified as KS, in 2015, from Las Cruces, to

2    hit a suspected informant, and who owed the SNM Gang

3    member, Carlos Herrera, $800 for drugs.

4            In 2015, Mr. Baca said that SNM Gang

5    member, Carlos Herrera, and JR, a/k/a "BB," had made

6    mistakes, and both members would be hit.  That's

7    discussed in this case as well.  The Court has heard

8    about that.

9            So that would be the third member in this

10   courtroom who has something -- as Mr. Villa has

11   indicated, has had a green light on him.

12           October 24, 2015, Mr. Baca said that SNM

13   member, RB, was an informant, and he had ordered SNM

14   members to hit him.

15           In 2015, he talked about being brought into

16   the SNM Gang after he assaulted another inmate from

17   orders of another SNM Gang member.

18           And then the rest is largely the charged

19   conduct in this case.

20           The other issue with Mr. Baca was, we have

21   one cooperator who said during, I believe, the

22   Michael Astorga trial, which was an SNM member who

23   murdered a police officer, that Mr. Baca had that

24   cooperator -- he's now a cooperator -- follow jurors

25   during that trial.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6186

```
 1              Looking at Mr. Herrera's history:  In 1994,
 2   he's alleged to have contacted a victim or witness
 3   through a third party and threatened the witness'
 4   life.  In 1994, he was arrested for aggravated
 5   battery and resisting or alluding officers.  In 1994,
 6   he was arrested for aggravated assault on a police
 7   officer, and aggravated battery on a police officer.
 8   In 1994, while in custody in the Corrections
 9   Department, he threatened to assault a staff member.
10   In '94, he refused to obey a lawful order.
11              In 1996, in the Corrections Department, he
12   refused to obey a lawful order.
13              In '97, he possessed heroin.  And also in
14   '97 he used abusive words and gestures towards a
15   staff member.
16              In 1999, in the Corrections Department, he
17   engaged in and coerced other to engage in activity
18   that were a threat to the security of the
19   institution.
20              In 2001, he killed the person identified in
21   the overt acts as MV.  The police reports on that
22   incident indicate that a person was over at Mr.
23   Herrera's house, used drugs inside of the house.  Mr.
24   Herrera thought it was disrespectful, and
25   disrespecting his mother in her house.  As a result
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6187

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 31 188

```
1    of him getting angry at that person, he ended up
2    shooting that person in the chest and killing that
3    person.  In 2001, in the Bernalillo County Detention
4    Center, he assaulted several correctional officers.
5            In 2005, in the Corrections Department, he
6    battered a staff member.  In 2005, on another
7    occasion, he assaulted a staff member.  And on
8    another occasion, in 2005, he assaulted a staff
9    member.
10           In 2006, he possessed shanks and assaulted
11   a staff member.  On that occasion he -- the officer
12   opened up a food port.  Mr. Herrera reached through
13   the food port and slashed the corrections officer's
14   leg.
15           In 2007, in the Corrections Department he
16   disobeyed a lawful order.  In 2007, he's alleged to
17   have threatened to burn down his ex-girlfriend's
18   house over the telephone.
19           In 2010, he threatened a staff member.
20           In 2011, he attempted to introduce
21   narcotics into a prison facility by soliciting and
22   utilizing a staff member.  And his mother was
23   involved in that incident.
24           In 2017, he threatened to blow up a federal
25   building.  I think that was a result of law
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6188

1    enforcement hitting his mother's house with a search

2    warrant.  He was very unhappy about that.

3            Mr. Perez' history goes back to a 1987

4    assault.

5            He was later convicted of burglary, and was

6    found to be a habitual offender.  There is assault on

7    a family member in 1993.

8            In 1996, he assaulted inmates TF and DM.

9            In 2003, while in the custody of

10   Corrections Department, he possessed a stinger, which

11   is a homemade weapon.

12           In 2005, he was arrested for committing

13   assault and resisting, as well as aggravated battery

14   in 2006.  That's a similar incident.

15           In 2010, he attempted to incite other

16   inmates to become disruptive by throwing food and

17   trash on the floor.

18           In 2011, he committed aggravated battery

19   with a deadly weapon.

20           And battery in 2012.

21           In 2014, while in custody, verbally

22   threatened a correctional officer, which I think is

23   another reason why he was locked down.

24           The reports on Mario Rodriguez, who was one

25   of the people who brought a shank to court -- and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 33

1    that was corroborated -- he's one of the people who

2    told law enforcement that Carlos Herrera had a green

3    light.

4              THE COURT:  It was corroborated because the

5    next day he had the shank on him; correct?

6              MR. CASTELLANO:  He produced the shanks,

7    Your Honor.  So there was no doubt he brought shanks

8    with him to court.

9              And he also tells us that Mr. Sanchez asked

10   Mr. Rodriguez for one of his shanks.  But I think

11   that's about the time he was thinking about coming

12   over, and did not give that shank to Mr. Sanchez.

13   He's also the one who told us that Mr. Herrera had a

14   green light on him; that the other members were not

15   happy with him about certain things that he said on

16   the recordings, and thought he was being

17   disrespectful to some of the other members.

18             So Mr. Rodriguez isn't necessarily pointing

19   the finger at just the other people.  He was involved

20   with that.  And he agreed that Mr. Herrera had to go.

21   So it's not as if this is a situation where Mr.

22   Rodriguez is merely pointing the finger at others.

23   He's actually implicating himself.

24             The other issue, according to Mr.

25   Rodriguez' report, is that there was talk about Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6190

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 34191

```
 1    Herrera being good again in the feds if he committed
 2    a serious act of violence, or something else that
 3    would make him good.
 4              And one thing we know about the history of
 5    the SNM is that Michael Astorga was not good with the
 6    SNM.  He killed a law enforcement officer.  And there
 7    is a dispute to this day.  Some people think that
 8    made him good and some people didn't.  So someone who
 9    may be in harm's way with the SNM could commit a
10    serious act of violence, and at least in some
11    member's eyes that can make them good again.
12              So I think there is plenty here, Your
13    Honor.  The Court has to make the individualized
14    decision, and the totality of the circumstances.  And
15    the Court has to make the decision in a way that
16    minimizes any prejudice to the defendants.  And I
17    think shackling, with their hands free, will do the
18    job, especially when there are things in place to
19    keep the shackles from making noise.
20              THE COURT:  But of the four remaining men
21    going to trial on Monday, am I understanding none of
22    them have an escape conviction or an escape charge?
23              MR. CASTELLANO:  I did not see that in
24    these ones.  I was reading over them pretty quickly,
25    Your Honor, looking at them real quickly again.  But
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6191

1   I did not see that.  I know that in some of the

2   others there are allegations of attempted escapes.

3           THE COURT:  All right.  Did you have a

4   question of Mr. Mickendrow?

5           MR. CASTELLANO:  I did, Your Honor.  One

6   involved a shakedown of some of the cells of some of

7   our defendants.  And various things were found in the

8   cells, including what are known as things to go

9   fishing.  It's a line with something else that they

10  can throw under the door and exchange messages.  But

11  there were also small pieces of metal in there.

12          And the reason that's important is that Mr.

13  Rodriguez in the 302 -- actually one of the

14  attachments to one of the filings in this case --

15  indicated that sometimes the inmates will take apart

16  batteries, and things of that nature.  And there is a

17  small piece of metal in there that's like the shape

18  and size of a nail.  And those things can be

19  flattened out and sometimes be used to pick the

20  handcuffs.  And that was actually corroborated

21  separately by a shakedown at the cells.  And that's

22  the question I have for Deputy Mickendrow, is whether

23  or not they found something similar to what was

24  described by Mr. Rodriguez.

25          DEPUTY MICKENDROW:  The answer would be yes

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to that question.

2            And if the Court would permit, I also want

3    to bring up a few facts that I had forgot to mention

4    earlier.  The first would be that, when Mario

5    Rodriguez initially came to court that day, he was

6    not a cooperating witness.  And so from the

7    perspective of the Marshal Service, just because he

8    decided to reveal he had shanks on him because he was

9    cooperating, that's an irrelevant fact for us.  The

10   fact is he came to court with no idea whether he was

11   going to cooperate or not.  He came to court assuming

12   that he was going to continue in his case.  So that's

13   a very important distinction for us.

14           Also, after that, when we did do a

15   shakedown of the cells because of the production of

16   those shanks, each of the defendants -- and I would

17   have to check -- with exception to Mr. Perez, I

18   believe, was found to have items within their cell,

19   and deadly items.  There was -- I believe three of

20   the defendants, Mr. Herrera, Mr. Sanchez, and Mr.

21   Baca, were all found to have razor blade shavers in

22   their cells.  And this is something that could be

23   used as a deadly weapon.

24           And, in addition, yes, we found items that

25   could be used to circumvent our security measures.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6193

1           In addition, I also wanted to cover a few

2    of the -- go back and cover a few more incidences

3    regarding Mr. Perez that Mr. Villa had asked about.

4    I was just made aware of two additional incidences,

5    which also jogged my memory about a third.  And

6    although these are not in-court incidences, these are

7    related to court.

8           In the one incidence, Mr. Perez was told to

9    head downstairs by a CO and a deputy.  And he told

10   them, pretty much, he didn't want to because he

11   wanted to go down with the Otero group.  And he was

12   told he would go down individually by himself, at

13   which point he started using profanity against the

14   deputy and the CO that was giving him instructions.

15          Another incident -- and this is while he

16   was at the jail -- he went in for a medical

17   procedure, and he convinced the CO that was

18   overseeing him during that medical procedure to

19   remove his leg irons.  Ultimately, that CO was

20   dismissed, because that's a direct violation of what

21   is supposed to happen during medical procedures.  If

22   there is no reason for the removal of leg irons,

23   they're not supposed to get removed.

24          And then finally, there has been several

25   incidences, since the Marshal Service worked very

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6194

1    diligently to get Mr. Perez transferred to Dona Ana

2    County Detention Center, that I've had to speak with

3    Mr. Perez regarding, not assaulting, verbally

4    assaulting, the Dona Ana County Detention Center

5    staff, because of what he perceives he should be

6    provided while he's there.  I have reminded him that,

7    if he has issues, he should go through us.  And that

8    he should also be respectful of the staff.

9            So with all of those additional factors at

10   play, it just again corroborates.  My stance would

11   be, as a law enforcement officer, we don't need to

12   wait for somebody to hit us to realize that something

13   is going to happen.  When we see it coming at us, we

14   can make an educated decision as to what to do.

15           And in this case, we're urging the Court,

16   based on all of the factors that we've laid out here,

17   that it would be prudent to have the defendants in

18   this case restrained with at least leg irons.

19           THE COURT:  All right.  Do you have any

20   other questions of Deputy Mickendrow?

21           MR. CASTELLANO:  No, I don't.  But I have

22   an additional disclosure that I learned this week

23   will go out in additional Giglio disclosures.  What I

24   can tell the Court is from an interview with Billy

25   Cordova a few days ago, he also admitted that he came

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6195

```
 1   to court with a shank because he was concerned for
 2   his safety.  So he brought it out of self-defense.
 3   He came to court and sat on the witness stand with a
 4   shank in his rectum.  So he's the third person in
 5   this case, and the fourth person overall that we know
 6   from the larger investigation, who has actually
 7   brought a shank to court.
 8           THE COURT:  All right.  There has been some
 9   additional information from the Government and from
10   Deputy Mickendrow.  Anyone have any questions of
11   Deputy Mickendrow before he sits down?
12           Mr. Lahann.
13           MR. LAHANN:  Your Honor, my client has an
14   urgent need to use the restroom.  He's been waiting
15   about 10 minutes since he asked the marshals.
16           THE COURT:  All right.  Why don't one of
17   the deputies go ahead and take him there.
18           All right.  Any other questions of Deputy
19   Mickendrow?  All right.  Thank you, Deputy.  I
20   appreciate it.
21           All right.  Why don't -- let's see, Ms.
22   Bhalla, Mr. Maynard, I think you were up, you wanted
23   to speak on this issue.
24           MR. MAYNARD:  Just briefly, Your Honor.
25           THE COURT:  Mr. Maynard.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6196

```
 1              MR. MAYNARD:  You know, the Court has heard
 2    about information coming from cooperating witnesses.
 3    There has been -- in getting to the point of
 4    individualized considerations, I don't think there is
 5    any credible indication that Mr. Herrera, at least,
 6    poses any threat of any disruption in the courtroom.
 7    I haven't heard anything this morning about that.  I
 8    think the only basis would be pure speculation based
 9    on whatever criminal record there is.  And the
10    Marshal Service is basing it on the accusation about
11    what happened in March of 2014.  And there is really
12    not much or anything since then.
13              No shank has been found on Mr. Herrera.  No
14    one has pointed fingers at Mr. Herrera.  And, in
15    fact, if there were a green light, and -- that's
16    speculation, there is no real evidence, credible of
17    that -- there is nothing to indicate anything would
18    happen in the courtroom.
19              Your Honor, we're simply asking, and Mr.
20    Herrera is asking that the shackles -- they can
21    certainly be applied in the bus during
22    transportation, in the cell blocks outside the
23    courtroom.  We're just asking that they be removed
24    for proceedings in the courtroom.  And in spite of
25    everything that we've heard this morning, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6197

1    including everything that we've heard this morning,

2    there is no indication that something is going to

3    happen in the courtroom itself, nothing indicating

4    that Mr. Herrera is going to do anything in the

5    courtroom himself.  And so we would ask at least that

6    Mr. Herrera not have to wear any shackles.  Because

7    what's happening is they're being treated as a group.

8              THE COURT:  All right.  Thank you, Mr.

9    Maynard.

10             Anyone else want to speak on this motion?

11             All right.  Mr. Castellano, do you have

12   anything further from the Government's standpoint?

13             MR. CASTELLANO:  I was just reminded

14   that -- it's actually on one of the recordings that

15   Mr. Herrera threatened to blow up the FBI building.

16   So you can't say it's uncorroborated.  It is on one

17   of the recordings.

18             I think there is plenty -- I think the

19   Court is ready to make a decision on this.  We've

20   given the Court plenty of information about each of

21   these defendants.  And their histories are something

22   the Court can take into account, histories of

23   violence.

24             THE COURT:  All right.  Thank you, Mr.

25   Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Mr. Villa, it's your motion.  Do you want

2     to -- anything further you want to say on it?

3          MR. VILLA:  Judge, a brief housekeeping

4     matter before I forget.  Ms. Harbour-Valdez, I

5     believe, filed an unopposed motion to seal the 1678

6     document, which is the email.

7          THE COURT:  I've signed that this morning.

8          MR. VILLA:  Thank you, Your Honor.

9          Just by way of argument, I think I sort of

10    echo what Mr. Maynard said.  You haven't heard any

11    information that Mr. Perez presents a threat inside

12    the courtroom.

13         Now, let's talk about the incident that Mr.

14    Mickendrow told you about, in which something

15    happened with Mr. Garcia; he was taken out, and some

16    of the defendants stood up and objected, voiced their

17    problems.  But, as you heard from Mr. Mickendrow, he

18    gave Mr. Perez orders, or perhaps somebody under his

19    charge gave Mr. Perez orders, and Mr. Perez sat down.

20    He didn't have to be removed from the courtroom.  And

21    this didn't happen during court proceedings.  It

22    happened -- I think Mr. Mickendrow said during a

23    break, or something like that.

24         I think that's the information that you

25    have to -- that's what you have to look at.  There



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6200

1   are certain places where folks go and they behave

2   differently.  So the way Mr. Perez or any of these

3   defendants may have behaved in prison or in jail or

4   with a CO during a medical visit is not necessarily

5   the way you can judge whether they present an

6   individualized risk here in court.

7           And the fact that, you know, a

8   cooperating -- a now cooperating witness, whether he

9   intended to cooperate at the time -- brought a shank,

10  doesn't tell you anything about what Mr. Perez may or

11  may not do.

12          Certainly, I would, if I were

13  Mr. Rodriguez' lawyer, and asking you not to shackle

14  Mr. Rodriguez I'd be in a much different position,

15  because he brought shanks to court.  But there wasn't

16  any information that that was part of some

17  conspiracy; that Mr. Perez provided those, allegedly,

18  the pieces to make the shanks that Mr. Rodriguez

19  brought, or anything else.

20          And I think that it's clear that we're not

21  dealing with any risk of flight, escape, attempt to

22  get out of the courtroom.

23          So, really, all we're dealing with is

24  courtroom-specific violence.  And I don't think the

25  test can be:  You've got a criminal history that has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6200

1  some violence and you're accused of a violent crime.

2  I don't think that the United States Supreme Court,

3  when it wrote Deck, thought it would be sufficient,

4  when it spoke to individualized risk of courtroom

5  attack, of courtroom escape, courtroom violence.

6          I agree with Mr. Maynard, the United States

7  Marshals can use any manner of shackling and

8  handcuffing outside of this courtroom that they deem

9  appropriate, and we really probably don't have any

10  say in that at all.  But while we're in the

11  courtroom, in front of the jury, that's what we're

12  talking about.  So that's the judgment that I'd ask

13  you to make is whether there is a specific risk in

14  that setting.  And I don't think there has been

15  enough information presented to suggest there is.

16          THE COURT:  All right.  Thank you, Mr.

17  Villa.

18          Any other defendants?

19          Well, I am concerned that -- the fact we're

20  in a courtroom doesn't give me complete confidence.

21  In fact, looking at the evidence on the Marcantel

22  conspiracy, it seems to me the SNM group does look to

23  make spectacular statements, and do them for fame and

24  notoriety, and nothing, I think, could probably be

25  more so than to do something here in a federal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6201

```
 1   courtroom.  And the evidence, I think, by a
 2   preponderance of the evidence, establishes that each
 3   of the four men that are going on trial are part of
 4   this gang, and that this gang is known for doing some
 5   things that they do for notoriety.  I think each them
 6   have a history of violence.
 7          The proceedings have gone smooth, and the
 8   men have been respectful to the Court throughout the
 9   proceedings.  But I am worried still that, in the
10   heat of trial -- I'm worried about cooperating
11   witnesses; I'm worried about each other, sitting next
12   to each other in the trial.  I am concerned about
13   each one of them's safety.
14          And so I think that the Government and the
15   Marshal Service have shown that each one of them
16   should be shackled for the trial.  I think that the
17   jury will not be aware of it.  I think we've gone at
18   great lengths to position the tables and the bunting,
19   put duct tape on, to prevent the jury from seeing or
20   knowing about it.  And we'll have it on the
21   Government's table as well, so there will not be any
22   suspicion about the bunting itself.
23          I'll continue to think about this issue.
24   But at the present time, I'm inclined to think we
25   ought to keep the shackles on for the trial.  So I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6202

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6203

 1   deny the motion.  But I will deny the motion and

 2   continue to give it some thought.

 3          All right.  The next issue we are going to

 4   take up is the defendants' motion to strike

 5   surplusage from the second superseding indictment,

 6   Document 1657.  I guess I was thinking that it might

 7   not be necessary to strike the material that's being

 8   sought.  But I wonder if it's necessary that all that

 9   be put into the final set of jury instructions.  We

10   may be getting way ahead of ourselves by talking

11   about final instructions.  Although I know that

12   people want to talk a little bit about those at the

13   end of the day.

14          But I was thinking that all that really

15   might be necessary to put in the jury instructions

16   for the trial would be the counts that remain for

17   trial.  What would be the Government's thoughts about

18   that?  Not strike it from the indictment, but as far

19   as when we get to the jury instructions, we just put

20   the counts that are being tried in the jury

21   instruction?

22          MS. ARMIJO:  Your Honor, that's fine.  I

23   believe that's what you did in another case, a trial

24   that we had, with a lot of surplus language.  And

25   most of that will come out through evidence anyway.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6203

```
 1    So we don't want it stricken from the indictment.

 2    But certainly, I know that the Court has previously

 3    done that in other cases.  And we can deal with that

 4    issue as it comes time for jury instructions.  But we

 5    were under the belief that the Court was going to

 6    curtail it to the counts anyway on the jury

 7    instructions.

 8              THE COURT:  Okay.  Thank you, Ms. Armijo.

 9              I know this was Mr. Adams' and Ms.

10    Sirignano's motion for the most part.  But I think

11    everybody else joined in it.  Does anybody not think

12    that's a good way to deal with it?

13              Mr. Maynard?

14              MR. MAYNARD:  Your Honor, I'll use this

15    microphone.

16              The most important part is, with respect to

17    jury instructions, we believe all those paragraphs

18    relating to evidentiary allegations, which are not

19    really elements, so to speak, they don't need to go

20    to the jury.  I don't think -- I mean, the

21    indictments are written by prosecutors.  They're

22    drafted by prosecutors who counsel the Grand Jury and

23    so forth.  And I think it's just too much

24    editorializing.  And one way to deal with it, at a

25    minimum, is just to take those paragraphs that are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6204

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 48

1    mentioned in the motion to strike out of any jury

2    instructions.

3            THE COURT:  I think that's what I'm

4    inclined to do, and I think that's what Ms. Armijo is

5    agreeing to.  So when you see my first draft, you'll

6    probably see the counts, but not the prefatory

7    language before the counts.

8            MR. MAYNARD:  That's all.

9            THE COURT:  Anyone else?

10           All right.  So I'm inclined to deny the

11   motion to strike, but I'll grant the motion to keep

12   it out of the jury instructions, and then we'll begin

13   to work on that.

14           All right.  Let's go to the joint motion to

15   renew motion to sever defendants charged with

16   offenses in Counts 6 and 7.

17           I'm not sure, do we have the updated chart,

18   Mr. Hammond?  Still working on it?  So you have to

19   work with what I've got there, and that is not

20   complete.  And when we get this other, it's going to

21   be much longer.

22           I don't have any second thoughts this

23   morning about the law, as I have interpreted it so

24   far.  And I've been working hard on the opinion from

25   which this chart is taken; not quite done with it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6205

```
 1    Partly because I keep getting filings.  And so it's
 2    hard to get on top of it, because I keep getting
 3    filings.  And I learn things from the filings.  Y'all
 4    are much more familiar with the evidence than I am.
 5            The Government's response, Mr. Braun's
 6    response -- is Richard Williams back over at your
 7    office?
 8            MR. CASTELLANO:  Yes, Your Honor.
 9            THE COURT:  He came back from the district
10    attorney's office?
11            MR. CASTELLANO:  No, he never left.
12            THE COURT:  Oh, okay.  I guess I'm
13    confusing him.  Who went over to the -- retired and
14    went over to the --
15            MR. CASTELLANO:  Mark D'Antonio did when he
16    retired from our office.  David Williams?
17            THE COURT:  David Williams, okay.  All
18    right.  I'm sorry, it's David Williams.
19            I didn't think it was a resounding response
20    from the Government.  And my concern is, one of the
21    reasons I wanted Mr. Braun to see the chart, and for
22    y'all to see the chart, is that I'm having to prepare
23    a chart for the trial, to turn to the jury and tell
24    them how to deal with this evidence, the number of
25    limiting instructions.  And so if I'm having to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    prepare a chart -- and that's just with the evidence
 2    I know -- I'm beginning to have some concerns -- not
 3    beginning to; I've had concerns since, really, Billy
 4    Cordova got on the stand on December 19.  And the
 5    next day, you remember, I really began to question
 6    how we were going to do this.
 7            Every time I see the motion, though, to
 8    sever 6 and 7, it never seems to work.  It doesn't
 9    seem to address the big problems.  It seems to me to
10    not deal with the big problems.  The two big problems
11    I think we have are going to be when Cordova and
12    Duran take the stand, and then all the tape
13    recordings.  That's when the limiting instructions
14    are at their highest, and when the evidence that
15    we're asking the jury not to consider most implicates
16    the other defendants.
17            For example, the reason I don't think that
18    the defendants have persuaded me that we should
19    separate out the Marcantel and the Baca counts is
20    because most of that evidence is -- it's not -- it
21    doesn't terribly implicate the other individuals.
22            And so, when I think about the case, the
23    case has a story, Counts 6 through 12:  You have the
24    Molina hit, and then you go down, security goes down,
25    and then it comes up with another murder; goes down;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6207

1   comes up with another murder.  It tells a story.

2          But we have these two areas of evidence

3   that are going to come that we're going to have to

4   tell the jury to disregard.  And I'm concerned that

5   we're going to have a volume of limiting

6   instructions.  And also they come with evidence that

7   is incriminating of other people besides Mr. Perez

8   with Cordova, and with Mr. Herrera as far as Duran.

9   Those seem to me to be the most critical spots.

10  Severing 6 and 7 from the other counts doesn't seem

11  to solve that problem.

12          When you think about it, it seems to me

13  that it would be better to sever defendants than to

14  sever counts.  Mr. Baca and Mr. Sanchez can be tried

15  fairly well together, and Mr. Herrera and Mr. Perez

16  tried together.  Their evidence doesn't really

17  implicate each other.

18          So I haven't thought the Government has

19  really come to grips with the number of limiting

20  instructions that are going to be given, and whether

21  that would really withstand scrutiny, and would be

22  something that would, if there were convictions,

23  would be seen as good judging and good trial work by

24  us all when it got to the Tenth.

25          On the other hand, the defendants, I don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   think, have really put forth a real proposal that

 2   shows -- we're going to be sitting here in this room

 3   listening to a lot of evidence on enterprise if we

 4   sever 6 and 7.  And I don't think we get a lot by --

 5   the Marcantel stuff out.  I understand why the

 6   defendants want it, it's because it's the more

 7   sensational evidence in the trial, but it's not

 8   particularly incriminating, as you look for under

 9   Bruton and the others.

10          But I do think that they have made a point

11   about the ability of the jury to really grapple with

12   the number of very proper and required limiting

13   instructions.

14          So this is what I'm thinking of doing on

15   Monday, is I'm thinking about impaneling two juries.

16   I think, if we had two juries; one for -- one I'll

17   call the Baca-Sanchez jury, and one the Herrera-Perez

18   jury, I think we could excuse them at the appropriate

19   times so that they don't hear the evidence.  There

20   will be some evidence with Mr. Baca, where I'll have

21   to give a limiting instruction, but you're entitled

22   to limiting instructions.  But the evidence is not

23   incriminating Mr. Sanchez.  And then, if a separate

24   jury hears the Perez and the Herrera evidence, that's

25   not particularly incriminating of both.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              As far as opening statements, the
 2    Government would have to just avoid getting into that
 3    evidence that we're keeping out of both juries, or we
 4    might just have to have two openings.  But it seems
 5    to me that, given the amount of limiting
 6    instructions, I don't have a better solution.
 7              As far as the new motion that was filed two
 8    or three days ago about Mr. Herrera, you know, that's
 9    new evidence.  I haven't seen that.  So I can't
10    really make the sort of detailed findings I can about
11    Mr. Cordova and his testimony about what Mr. Perez
12    said.  But it may be that it's -- you know, it's just
13    hard for me to make much comment on that without
14    having seen the evidence.
15              But, in any case, I'm not inclined to sever
16    out 6 and 7; that doesn't seem to me -- it never has
17    seemed to me to be quite the solution.  But I do
18    think that the defendants have pointed to enough
19    problems that maybe the way to do it is to pick two
20    juries, and have, at critical points, the juries
21    excused so that the number of limiting instructions
22    is greatly reduced.  Or when they are given, they're
23    given because they're allowed.  But the evidence that
24    we're asking the jury to ignore is not probative of
25    the other defendant in that case.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6210

1        I know you've been standing, Mr.

2   Castellano.  But why don't I let -- I think this was

3   Mr. Villa's motion this time.  So let me let him

4   start the motion.  Mr. Villa?

5        MR. VILLA:  Thank you, Judge.

6        I respect what the Court is saying with

7   respect to the issue of severing 6 and 7.  I don't

8   want to let that one go, so I'll just say briefly for

9   the record -- it's been said a lot already, I think,

10  but I think it does solve one problem, and that's

11  some of the things we've been talking about with

12  respect to the need for shackles, and sort of lumping

13  everybody together, is that there is this -- evidence

14  is going to be put on, of course, by the Government

15  that Counts 6 and 7 is an SNM ordered hit.  The

16  Marcantel-Santistevan piece was an SNM ordered hit,

17  and all of it was in furtherance of the SNM and their

18  racketeering.

19       So the 6 and 7 defendants' concern is that

20  the jury hearing this, and hearing the sensationalism

21  of it, and the recordings discussing it, by the same

22  person allegedly, Anthony Ray Baca, who orders the

23  Molina hit, that you have this spillover effect, and

24  that the jury lumps it all together.  Because I think

25  it's always been the contention of the 6 and 7

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6211

 1    defendants, and certainly Mr. Perez, that the

 2    Government's case is much stronger on the

 3    Santistevan-Marcantel side than it is on the Counts 6

 4    and 7 cases.  And pairing two -- these two cases

 5    together because of the spillover effect, because

 6    they're all allegedly SNM related activities, and the

 7    defendants are all allegedly SNM members, presents

 8    that issue of prejudice.

 9              Now, I just want to understand -- I get

10    what the Court is proposing with respect to -- or why

11    the Court is proposing it with respect to Mr. Perez,

12    Herrera, and Baca-Sanchez.  I guess I just want to

13    explore exactly what the Court is contemplating.  Are

14    you talking about -- one potential avenue when you

15    have two juries, is Jury No. 1 comes in and they just

16    hear the evidence as to Baca-Sanchez, or however we

17    do it, and then Jury No. 2 comes and hears the

18    evidence that's Perez-Herrera?  Or are they both here

19    at the same time given instruction?

20              THE COURT:  No, I would think that we'd

21    want -- I mean, they'd be here for evidence that we

22    know is going to be duplicated in a severed trial.

23              MR. VILLA:  Yeah.

24              THE COURT:  But the evidence that we're

25    concerned about with limiting instructions, if we can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6212

```
1    take the jury out for those, I would see that we
2    would excuse them for that testimony.
3              MR. VILLA:  I see.  And then maybe --
4              THE COURT:  So they'd be here together
5    probably a lot of the time, and then they would be
6    excused -- for example, Baca-Sanchez would be excused
7    while we're hearing Cordova talk about his recordings
8    of Perez.  And then I don't think that the
9    Duran-Cordova stuff hurts the two of you very much,
10   but it's Baca that really gets hit by the Cordova
11   stuff.  And then there is going to be stuff that the
12   jury should not hear.  I'd be giving a limiting
13   instruction of things that Baca said.
14             MR. VILLA:  Well, I'd say Cordova certainly
15   hurts us, Your Honor.  But I understand what you're
16   saying.
17             THE COURT:  Yeah, I understand.
18             MR. VILLA:  And I think, if that's the
19   solution -- and I'm just processing this now -- it
20   seems to me -- and I'm interested to hear what my
21   colleagues say -- that we might want to consider
22   separate opening statements, separate closing
23   arguments, because of how we may characterize some of
24   the evidence that comes into play.
25             THE COURT:  Well, I would think that -- at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6213

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 57214

1    the closings, I would definitely think that you would

2    need to have separate closings.

3            MR. VILLA:  All right.

4            THE COURT:  Now, I think on openings, it

5    would kind of depend on how detailed the Government

6    wanted to get.  I mean, if it wanted to talk about

7    Billy Cordova is going to say these statements in its

8    opening statement about Mr. Perez, and I'm going to

9    have limiting instructions that that can't be used

10   against anybody else, I'm not sure that that -- that

11   we should have joint opening statements.  I think

12   there, we'd probably have to have separate opening

13   statements.

14           MR. VILLA:  That's my concern, too, Your

15   Honor.  Because I think what we present in our

16   opening statement, if we choose to put on an opening

17   statement in the beginning, would, I think, change

18   drastically depending upon what the Court intended.

19           THE COURT:  So I think it's probably the

20   Government's call as to how general they're going to

21   get, if they're going to get specific as to the

22   evidence that I'm going to say only can be used

23   against certain people; give a limiting instruction.

24   Then we may have to have separate opening statements.

25           MR. VILLA:  And that's all I have on -- the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6214

```
 1   motion focused on --
 2           THE COURT:  You filed a motion to sever 6
 3   and 7.  After listening to me sort of comment that it
 4   doesn't seem to solve the evidentiary problems; it
 5   may -- if you're looking at the case as a defense
 6   lawyer, it addresses the -- shall I call it the 403
 7   problem?  But would you agree with me it doesn't
 8   really solve the evidentiary problems?  It may help
 9   you a little bit on the 403 issue.
10           MR. VILLA:  I would agree that it doesn't
11   solve the internal or intra-6 and 7 problems.  I
12   agree with that.  I think -- I'm not sure Mr. Perez
13   is the one that would be requesting a severance of a
14   defendant necessarily, given the problems.  You know,
15   for instance, the statements that Mr. Cordova may
16   testify to that Mr. Perez makes, I can't keep those
17   out.  You know, after the Court's suppression ruling,
18   I don't have an evidentiary issue.  But Mr. Sanchez
19   does.  And so it might be Mr. Sanchez that needs to
20   speak to that problem.  It's not really, I think, Mr.
21   Perez' burden here.
22           THE COURT:  Okay.  Thank you, Mr. Villa.
23           Anyone else want to speak from the
24   defendants' standpoint on the motion to sever?
25           Mr. Maynard?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6215

1           MR. MAYNARD:  Your Honor, I have never

2     tried a case like that, with two juries.  And it's

3     going to involve -- I doubt if many lawyers here

4     have.  I just don't know.  It's going to involve

5     recompartmentalizing our directs and our

6     cross-examinations, and all of that.  And the juries

7     are going to be coming in and out, in and out.  I'm

8     not sure how much -- it may -- ironically, it may

9     make the trial longer even -- and in fact it probably

10    will.

11          But I would urge the Court to consider --

12    in fact, if the two cases, the 6 and 7 are severed

13    from 8 to 12, those two trials put together, each of

14    them is going to be shorter, and they may be no

15    longer than a joint trial with two juries, if the

16    Court is concerned with saving time.

17          THE COURT:  Well, but that was what I was

18    talking with Mr. Villa.  It doesn't seem to me that

19    the problems that I am most concerned about, the

20    evidentiary problems, are solved by severing 6 and 7

21    from the other counts.  It just -- the trial has a

22    story.  And you've got a murder, and then it goes

23    down; you've got a murder, it goes down; the security

24    goes down.  I mean, it tells a story.  I think we're

25    going to hear it multiple times in the trial.  So it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    doesn't seem to me that 6 and 7 is the way to --
2    every time I look at it, I never see how that saves
3    us anything.
4            MR. MAYNARD:  Well, I don't think it saves
5    a lot.  I understand that.
6            THE COURT:  I mean, it always seems to me
7    the problem is not the counts.  It's the individual
8    defendants that I have to protect their rights.  And
9    it seems to me we focused on severing counts -- and I
10   remember with Sanchez' renewed motion.  I mean, in
11   the first motion and in the second motion -- except
12   for a little bit stuff about a year-and-a-half ago,
13   where we did identify some Bruton problems with a
14   small amount of the Government's evidence -- until
15   late December, we hadn't focused on the fact -- and
16   in both those opinions I could confidently say nobody
17   has identified any evidence that's not going to come
18   in against other defendants.
19           And then, when we got Mr. Cordova on the
20   stand, I think -- and y'all did a lot of discovery --
21   it looks a lot different, in the sense that I don't
22   think we can say that statement is true any longer.
23   There is evidence coming into this trial that cannot
24   be used against all defendants.  And I think when
25   December 19 rolled around, we began to see that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6217

```
 1    That's been the bigger problem than splitting it
 2    along count lines.
 3            Your thoughts on that?
 4            MR. MAYNARD:  Well, I understand.  And yet,
 5    I'm not sure that having two juries -- it's going to
 6    be kind of like -- I think it's going to make the
 7    trial longer.
 8            THE COURT:  I do, too.
 9            MR. MAYNARD:  And it's going to make it
10    more complicated.  And I think we're going to have to
11    be very careful not to make, in closing argument,
12    reference to evidence that was only admitted
13    against --
14            THE COURT:  Well, that's the reason I was
15    saying to Mr. Villa.  I just think we're going to
16    have to have separate closings.  So we'll bring one
17    jury in, the Sanchez-Baca jury; we'll have closings.
18    Then we'll turn around with the Perez-Herrera jury,
19    we'll bring them in.
20            MR. MAYNARD:  I'll use a white pad for when
21    one jury is in the room and a yellow pad when the
22    other one is in the room.
23            THE COURT:  Yeah.
24            MR. MAYNARD:  Or when the witness --
25    anyway --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6218

```
 1              THE COURT:  I don't disagree on either
 2     point.  I think you're right.
 3              MR. MAYNARD:  I would just -- you know, I
 4     think in the interests of fair trials and efficiency,
 5     I think having two trials, and just severing them
 6     completely would be no longer and no more expensive.
 7              THE COURT:  Well, you're saying -- I mean,
 8     the motion on the table is to separate 6 and 7.
 9              MR. MAYNARD:  Yes.
10              THE COURT:  And I guess I just have not
11     figured out how that solves any problems.  What is
12     your severance proposal?
13              MR. MAYNARD:  Just to separate 6 and 7.
14              THE COURT:  Still 6 and 7?
15              MR. MAYNARD:  Yes.
16              THE COURT:  See, I just think -- I'm going
17     to still, in a 6 and 7 trial, I'm still going to give
18     all these limiting instructions.  I don't think it
19     solves the problems.
20              All right.  I think Ms. Jacks was getting
21     up.  So let me let Ms. Jacks speak.
22              MS. JACKS:  I just have a couple of
23     comments.
24              What the severance of 6 and 7 does is
25     protects the Counts 6 and 7 defendants from all of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the evidence of Counts 8 through 12 that's completely

2    inadmissible against them.

3           THE COURT:  But it's not terribly -- it's

4    not incriminating.  That's the thing.  You just don't

5    want it -- it's a 403 problem, like I was telling Mr.

6    Villa.  You don't want those in the case.  But

7    they're not incriminating.

8           MS. JACKS:  Well, I think it's

9    incriminating as to the SNM, and to the extent the

10   jury believes they're associated with that gang, I

11   think it's incriminating.

12          As the Court's noted, it's inflammatory.

13   It's the conspiracy to murder public officials.  And

14   so I don't think it's just a 403.  I think it's a

15   Fifth Amendment due process issue.  And I go back to

16   Jackson versus Denno.  I think that the Counts 6 and

17   7 defendants have a right to be tried, and to have

18   their guilt or innocence of Counts 6 and 7 determined

19   by a jury that's not polluted with weeks of

20   inadmissible evidence about plots to kill public

21   officials.  And that is what the Counts 6 and 7

22   severance does.

23          And I guess -- I'll just point out to the

24   Court, I think in a joint -- if we were to have a

25   joint trial of Counts 6 through 12, the issues within

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6220

1    the Counts 6 and 7 trial regarding the statements of

2    Mr. Perez to Billy Cordova, or the statements of Mr.

3    Herrera to Gerald Archuleta, those problems could be

4    solved by just keeping those statements out.

5            THE COURT:  Well, they could.  But that's

6    the Government's case.  I think that's heavy-handed

7    for me to do that.

8            What else, Ms. Jacks?

9            MS. JACKS:  I've tried trials with two

10   juries.  And, logistically, I think it's difficult.

11   And I guess what I'm just thinking about in my head

12   is, where is everybody going to sit?  We barely have

13   a courtroom where the defendants have a place to sit,

14   where they can work.  So I'm wondering about that.

15           I'm wondering, I -- mean, I think there are

16   going to be issues going forward about when one jury

17   is going to be excused, and how that's going to

18   happen.  I mean, I think we can work through it.  But

19   it is a complicated situation.

20           And then I guess the other thing I'm

21   thinking about is do we have enough jurors coming on

22   Monday to select two juries?

23           THE COURT:  Well, if we fail on Monday,

24   then we fail on Monday.  I guess I'd rather try, see

25   if we can get two picked.  If we don't, then I might

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6221

1    have to go to some other plan B.  I'd like to plan

2    for success rather than plan for failure.

3           I guess, as far as seating, I don't have

4    anything better than back here where Mr. Walz is.  I

5    was talking to Ms. Wild a little bit about this.

6    Those benches are not as comfortable as the ones up

7    here, as y'all have probably all noted.  And you

8    know, we might rotate them a little bit when they're

9    all in here together.  Ms. Wild didn't like that idea

10   much.  But there would be some seating arrangements

11   that we'd have to work out.

12           MS. JACKS:  The other thing that concerns

13   me as, Mr. Sanchez' counsel, is just the sort of

14   unspoken optics of the situation.  Because I do

15   think, if we have two juries going at the same time,

16   and one is the Sanchez-Baca jury; then I think it

17   basically tells the jury that Sanchez is a leader.

18   And it gives the jury, I think, some information

19   that's very difficult for them to disregard, and very

20   difficult for us, as Mr. Sanchez' lawyers, to address

21   without highlighting the problem.

22           And then I also think that --

23           THE COURT:  Doesn't Mr. Sanchez want to be

24   a leader?

25           MS. JACKS:  Your Honor, there are a lot of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6222

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 66

1  things that have been said in this Court that are

2  just simply untrue.  But I'm trying to save some of

3  that for the trial.

4           THE COURT:  Sure.

5           MS. JACKS:  And just because some

6  cooperator, looking to get a deal on his murder case

7  says something, doesn't mean that I believe it.

8           THE COURT:  All right.  Well, I look

9  forward to it.  I look forward to the trial.

10          I hear what you're saying.  You don't want

11  to be grouped with Mr. Baca.

12          MS. JACKS:  Well, and I guess the other

13  thing, to me, if I were representing Mr. Perez or Mr.

14  Herrera, I'd be fighting with the Court to say, Look,

15  openings and closings have to be completely separate.

16  If I was representing Mr. Perez or Mr. Herrera, I'd

17  say:  I don't want my jury to hear anything about the

18  Marcantel-Santistevan stuff.  There is no reason for

19  them to hear it.

20          And so, if that happens, then Mr. Sanchez

21  is really getting the short end of the stick, because

22  he's not charged with the Marcantel and Santistevan

23  conspiracies, but his jury is going to hear that.

24  And I just don't think that's fair.

25          THE COURT:  Well, I'm not thinking the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Marcantel stuff is going to stay out of either trial.

 2   I mean, that, to me, is the 403 stuff.  And I've not

 3   been convinced that's the biggest problem.

 4          MS. JACKS:  I hear you.

 5          THE COURT:  I think the real problem is

 6   Duran and all his testimony, and the tapes that are

 7   associated with that, and Mr. Cordova and all the

 8   tapes associated with him.  I think those are the

 9   ones that really are incriminating other people

10   besides Mr. Perez and Mr. Herrera.

11          MS. JACKS:  I hear you.  But the Marcantel

12   in the severed-two-jury situation, the evidence of

13   the Marcantel-Santistevan conspiracies is

14   inadmissible against Herrera and Perez.

15          THE COURT:  It is, but it's not terribly

16   probative of any incriminating activities.

17          MS. JACKS:  I would disagree.  But I'll

18   leave that for them to argue.  But I think it would

19   be unfair to Mr. Sanchez for his jury to hear that,

20   when he's not charged with it, especially if other

21   defendants, who are charged in the same counts as Mr.

22   Sanchez, are not going to have their jury polluted by

23   that information.

24          THE COURT:  All right.  I understand the

25   point.  I'll give it some thought.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6224

```
 1              Do you want to speak again, Mr. Maynard?

 2              MR. MAYNARD:  Just briefly, Judge, to

 3    suggest a plan B, I guess.  You know, thinking about

 4    this -- and I'm still trying to get all of the facts

 5    in this case, or at least enough of the facts in the

 6    case for my working memory.  I've only been here for

 7    about two months, not even.  But I think perhaps the

 8    most efficient break should be a break of defendants.

 9    So you could try 6 and 7, just Perez and Herrera, and

10    the other counts, the other defendants could be

11    severed.  It might be even more efficient.  And it

12    might be even less evidentiary problems.  So I would

13    suggest that to the Court as another option.

14              THE COURT:  Well, there is no doubt, you

15    know, you sever, sever, sever, it reduces problems.

16    But it also starts creating a lot of inefficiencies

17    in the case, as well to just hear the same evidence

18    over and over.

19              But I hear your point.  But it does sound

20    like you're now looking at severance from defendants'

21    standpoint, rather than counts standpoint.

22              MR. MAYNARD:  I think so.  I think that

23    resolves more of those issues.  And it's no more

24    inefficient -- I think having two juries is going to

25    invite potential error, because of some unintentional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   mistakes by counsel for either party.
 2            THE COURT:  Well, there is always potential
 3   error.  I guess I'm trying to avoid the error that's
 4   kind of setting with us right at the moment, of a lot
 5   of limiting instructions.  I think it does -- it
 6   could greatly reduce that.  It's not going to
 7   eliminate it, but it's going to greatly reduce it.
 8            All right.  Mr. Lowry.
 9            MR. LOWRY:  Your Honor, I don't want to
10   belabor the point.  But I, too, would echo the
11   sentiments of my colleagues, and look for either
12   separate trials.  And I still would adhere to the
13   division -- I know that this is not the Court's
14   preference -- between 6 and 7, and 8 and 10.
15            Your Honor, looking at the jury
16   instructions we proposed, I think Your Honor made the
17   comment that the Marcantel information is not
18   necessarily incriminating on Mr. Sanchez.  You know,
19   I agree with Ms. Jacks.  I would even take it a step
20   further.  I think, frankly, the jury is going to
21   easily interpret that as 404(b) propensity evidence,
22   in terms of the Marcantel-Santistevan allegations.
23   And the reason is, the Government's -- my
24   understanding is that the Government will use Counts
25   8 and 10 as enterprise evidence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And if you look at the jury instructions
 2    that were proposed, you can see how, through that
 3    instruction, they're going to have to demonstrate the
 4    pattern of racketeering activity.  And my guess is
 5    that they're going to want to pick that particular
 6    allegation to use that in their pattern of
 7    racketeering activity, because it is sensational,
 8    because it is attention grabbing, and because it is,
 9    frankly, inflammatory.
10              And I think that that is absolutely the
11    reason the Court should look at the severance along
12    those lines, if not anything else under the 403
13    analysis that you just mentioned.
14              THE COURT:  Let do this:  I don't want to
15    rush your comments, but I do need to let Ms. Bean
16    rest her fingers.  Why don't we go ahead and have our
17    recess for about 15 minutes, then we'll come back in.
18              (The Court stood in recess.)
19              THE COURT:  All right.  Mr. Lowry, I think
20    you were --
21              MR. LOWRY:  Your Honor, I think where we
22    left off is the type of severance proposed by the
23    Court really doesn't resolve the 403 problem, because
24    the Marcantel-Santistevan material will still be
25    inadmissible as to Defendant Sanchez, and we're still
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 71

 1   going to have a parade of limiting instructions.

 2            THE COURT:  It's a limiting instruction,

 3   but it's not terribly probative against them.  That's

 4   the problem.  I'll give the limiting instruction

 5   because it will be requested, and he's entitled to

 6   it.  But it's not incriminating of him.

 7            MR. LOWRY:  But this dovetails back into

 8   the issue that I wanted to raise -- and Ms. Jacks

 9   wisely pointed out to the Court -- the optics of this

10   are going to be terrible.  You're going to have Mr.

11   Sanchez and Mr. Baca separated from Mr. Perez and Mr.

12   Herrera.  They get their own jury.  And their jury is

13   going to be left with the tacit impression that, Oh,

14   my God, here are these alleged leaders of the SNM,

15   and even the Court is treating them drastically

16   different than the rank and file alleged members of

17   the SNM, and we have to be on guard to the heightened

18   sensitivity to that.  And there is no limiting

19   instruction.  There is no way to divorce the optics

20   from the 403 issue.  And, in fact, the optics

21   reinforces the 403 problem, and reinforces the

22   magnitude of the problem, that they're going to

23   consider the inadmissible evidence as to Mr. Sanchez

24   that the Court has instructed them not consider.  And

25   this is why Ms. Jacks cited the case law, that you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6228

```
1    once throw the skunk into the jury box, you just
2    can't pull it back out.
3            THE COURT:  That's the reason I'm trying to
4    prevent the skunk from going into the jury box.
5            MR. LOWRY:  And I applaud the Court's
6    efforts, Your Honor.  I don't want the Court to think
7    otherwise.  But I think the safest and most
8    reasonable means to avoid appellate error would be to
9    have two separate trials.
10           THE COURT:  Of what?  I mean, the proposal
11   from Mr. Villa on the table is 6 and 7.  And I've
12   just stared at that, and it just never seems to solve
13   the problems I'm most concerned about.
14           MR. LOWRY:  You know, this is -- well, in
15   my mind --
16           THE COURT:  So what's your severance
17   proposal?
18           MR. LOWRY:  I think you could still sever 6
19   and 7.  And to the extent the Government wants to use
20   the Marcantel-Santistevan allegations as evidence of
21   the enterprise, I think maybe the parties ought to
22   talk about Old Chief'ing that evidence somehow, to
23   sanitize it, so that you don't have this limiting
24   instruction issue, and we don't have the host of
25   problems that we've been talking about.  That would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 6229

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73230

1    be one thought, as I sit here this morning, Your

2    Honor.  But I see the logistics of two jury panels

3    handling two separate defendants is going to heighten

4    the problems with, you know, Jeez, the Court has

5    treated Mr. Sanchez and Mr. Baca differently.  And

6    the implicit assumption is they're being treated

7    differently because they've been determined to be the

8    alleged leaders of the SNM.

9          Your Honor, the Tenth Circuit has looked at

10   this issue -- I was just going to cite these cases

11   for the Court -- in United States versus McVeigh, the

12   Tim McVeigh case.  You know, Judge Matsch looked at

13   this and considered the possibility of separate

14   juries at a single trial.  And gave up on that as

15   impractical for a whole host of reasons.  And that is

16   at 169 Federal Rules Decision 362, at pin cite 371,

17   District of Colorado in 1996.  And, of course, that's

18   the trial where Mr. McVeigh was going to be tried

19   with Terry Nichols.  The Court declined to do that in

20   a single trial with separate juries.

21         Also, the Tenth Circuit has looked at this

22   in Wilson v. Simmons, at 536 F.3d 1064.  That's a

23   Tenth Circuit opinion from 2008.  And the Court has

24   considered that, and found it to be relatively

25   impractical.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6230

1          THE COURT:  Well, but it noted in Wilson --
2     now, Wilson was a habeas case that was coming out of
3     the state system.  But it did, I think, say that
4     every court that had considered it had found it to be
5     constitutional.  I mean, anything can be used in an
6     unconstitutional way, but -- I am looking for the
7     sentence that said what it said.  I don't see the
8     quote I was looking at from that case.  But you've
9     got a number of Tenth Circuit cases that approve it.
10    They certainly point out difficulties with it, but
11    they --
12          MR. LOWRY:  I don't know, Your Honor.  But
13    I think you --
14          THE COURT:  Here it is, "Indeed every
15    federal appellate court that has considered a dual
16    jury system has upheld the procedure."
17          MR. LOWRY:  And I'm not saying that it's
18    unconstitutional, Your Honor.  What I am saying is
19    there is going to be an ongoing, daily, from witness
20    to witness argument between the parties of how we
21    impanel a specific jury for that specific witness.
22    Like Mr. Duran, for instance.  I'm sure he'll have
23    one chapter of common evidence that's relevant to
24    both juries.  And then we're going to have to decide
25    between the parties which jury gets the break, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 75

75

```
 1    which jury hears which evidence first.  And I just
 2    think it's going to invite a host of tactical issues
 3    that the parties are going to have to litigate on a
 4    daily basis.
 5            This is going to continue the length of the
 6    trial.  And I know the Court has been sensitive about
 7    the length of this trial already.  And I think we've
 8    run well past the eight-week period, which is going
 9    to be an issue now not for one jury, not for 18
10    jurors, but perhaps 36.
11            And I think it's going to heighten the
12    level of tension in the courtroom between the parties
13    and the Court, of how we handle the trial.  And
14    everybody wants to have this done in a fair and level
15    headed manner that doesn't prejudice the rights of
16    anybody else in the courtroom.  And I just foresee
17    ongoing daily problems with just the mechanics of
18    making this work in a way that everybody can agree
19    with.
20            THE COURT:  All right.  Thank you, Mr.
21    Lowry.
22            Anyone else from the defense side want to
23    speak?
24            Ms. Jacks?
25            MS. JACKS:  I actually do have a couple of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    comments.  One is the Court said that the evidence of

2    the Marcantel-Santistevan stuff is not terribly

3    probative as to Mr. Sanchez.

4              THE COURT:  I meant incriminating.

5              MS. JACKS:  Right.  Incriminating.  And I

6    would agree with you if this was just a murder case.

7    But this is a VICAR case.  And some of the elements

8    of the Violent Crime in Racketeering is that the SNM

9    was a racketeering organization that engaged in

10   racketeering activity.  So the evidence of the

11   Marcantel-Santistevan murder conspiracies goes

12   directly to elements of the crime.  So it is terribly

13   incriminating as to Mr. Sanchez.

14             And in a joint trial with Mr. Baca, what's

15   going to happen -- a joint trial of Sanchez and

16   Baca -- the Court is going to be telling the jury:

17   You can consider this evidence for all purposes as to

18   Mr. Baca, but you can't consider it for any purpose

19   as to Mr. Sanchez.

20             And that puts a juror in a really untenable

21   position of taking evidence of the racketeering

22   organization and the racketeering activity, and using

23   it against one defendant and completely just ignoring

24   its existence as to the other.  Jurors aren't

25   computers.  They're people.  And I think that's a



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6233

 1    really hard thing to tell a jury not to consider.

 2           THE COURT:  Well, I certainly agree with

 3    the procedure.  I guess I'm thinking that's less of a

 4    problem than the problems we have.

 5           MS. JACKS:  We're kind of at a Sophie's

 6    Choice.  Neither choice that we have, at least

 7    neither choice that's being presented to Mr. Sanchez,

 8    is something that he would want.

 9           And then I just want to point out something

10    else.  And this is in discussions that I had in the

11    hall during the recess.  But I just want to give you

12    an example of an issue that's going to come up with

13    two juries.  And there may be a way to solve it.  But

14    there is a tension here.

15           And let's just consider for a minute the

16    anticipated testimony of Mario Rodriguez.  Mario

17    Rodriguez is a government cooperator, and I believe

18    that on his direct examination Mr. Rodriguez is going

19    to testify that he took Mr. Perez' -- a piece of Mr.

20    Perez' walker after Mr. Sanchez threatened Mr. Perez.

21    And the cross-examination of Mr. Rodriguez, from Mr.

22    Sanchez' perspective, is going to be one thing.  But

23    I think, from the perspective of Mr. Perez, it's

24    possible that his counsel is going to actually adopt

25    that, and claim that Mr. Rodriguez is actually

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    telling the truth about that.  So in terms of --
2    maybe the direct could be presented to both juries.
3    But the cross-examination is going to bring out, I
4    think, a tension or a conflicting -- potentially
5    conflicting defenses, where Mr. Sanchez is going to
6    take the position that Mario Rodriguez is an
7    unmitigated liar.  And Mr. Perez is going to take the
8    position that Mario Rodriguez is telling the truth,
9    and Sanchez threatened Perez.
10         And I think issues like that, at least in
11   my experience with two juries, issues like that come
12   up every day with every witness.
13         The other just couple of comments I have is
14   the trials that I've had with two juries have been in
15   large downtown Los Angeles court building, where
16   there is plenty of room to keep them apart, separate
17   jury rooms, separate bailiffs to take charge of them
18   and make sure they don't intermingle.  I'm not
19   sure -- even in spite of that -- I've been involved
20   in a case where one jury was hung -- this is on a
21   capital case, multiple murders -- one jury is hung 10
22   to 2 for not guilty -- this is during deliberations;
23   the other is hung 11 to 1 for guilty.  And hold-out
24   on that jury held out because she was friends with
25   jurors on the not guilty jury.  And the case ended up

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                        1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                              e-mail: info@litsupport.com

DNM 6235

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79

```
 1    being mistried.  I think in another instance a case
 2    ended up being mistried because of the inadvertent
 3    presentation of evidence to one jury that shouldn't
 4    have been presented.  So on a daily basis, it just
 5    increases the amount of unforeseen issues that can
 6    pop up.
 7              So, I mean -- I would just argue that if
 8    the Court is inclined to sever, I think that it would
 9    be better just to have one jury, one trial, and do
10    the second trial sequentially.
11              THE COURT:  Well, but what -- the proposal
12    that's on the table from the defendants is severing 6
13    and 7 -- is that still where you are? -- which
14    doesn't really solve a lot of the problems that
15    you're addressing.
16              MS. JACKS:  Where I am, if you're asking me
17    how I would want the trial to be:  I'd want 6 and 7
18    severed and Perez --
19              THE COURT:  I'm sorry, I didn't hear that.
20              MS. JACKS:  I would want Counts 6 and 7
21    severed.  And that would be for the due process issue
22    of the Santistevan-Marcantel evidence that's
23    inadmissible against the 6 and 7 defendants coming in
24    before their jury.  So to prevent that due process
25    violation, and to prevent -- well, due process and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6236

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 80 6237

```
 1   403.  So sever 6 and 7.  And any statements that

 2   Perez or Herrera made to informants that are not

 3   admissible against Mr. Sanchez don't come in at a

 4   joint trial.

 5           THE COURT:  You don't ask much, do you?

 6   Thanks, Ms. Jacks.

 7           All right.  Any other defendant wish to

 8   speak on the severance issue?

 9           All right.  Mr. Castellano.

10           MR. CASTELLANO:  For starters, I have to

11   disagree with the two-jury system.  I think, if we do

12   that, rather than having limiting instructions, we're

13   going to have curative instructions throughout the

14   trial.  I agree with some of the other comments by

15   defense counsel that these are all capable attorneys

16   in this room, but there are going to be mistakes made

17   about which evidence should go to which jury.  We're

18   going to be tripping over the evidence, and trying to

19   get it all straight.  That's going to be more

20   complicated than anything else.

21           So, in addition to any other instructions

22   we have, we're going to be constantly trying to fix

23   evidence that went before the jury that wasn't

24   supposed to go before the jury.

25           The problem also, from the Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6237

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 81238

1    perspective, is there will be disagreements about

2    what is racketeering evidence, for example.  So if

3    the Court excuses one jury and says there are certain

4    things that shouldn't go before that jury, but we

5    disagree, what's happened is that jury is now not

6    hearing evidence which they think should be heard,

7    which is really a suppression of the evidence.  So,

8    by having the jury leave the room and not hear

9    evidence, which it should, the Court will be, in

10   essence, suppressing evidence during trial.  And, of

11   course, for us, that creates issues for appeals.

12           THE COURT:  Hold on just a second.

13   Somebody on the telephone doesn't have their mute

14   button on.  We're getting a lot of feedback from one

15   of the call-in people.

16           Mr. Castellano.

17           MR. CASTELLANO:  So if the evidence

18   continues not to come in, which we think is being

19   suppressed, because we think the right jury is

20   leaving the room to hear the evidence, then we have

21   to deal with issues of suppression and interlocutory

22   appeals during trial.

23           So when it gets to a point of disagreeing

24   with the Court, to the extent that evidence isn't

25   coming in before a certain jury, then we have our own

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 82

```
 1    problems that evidence not coming in, which we think
 2    should come in.
 3              So I think two juries is going to overly
 4    complicate things.  I think the movement will
 5    complicate things.
 6              And I guess the other thing we really need
 7    to figure out is, if we have one jury, we really have
 8    to figure out which -- what evidence are we worried
 9    about?
10              THE COURT:  Well, could you live without
11    Cordova and Duran in this case, and those phone
12    calls?
13              MR. CASTELLANO:  No.  No, because the other
14    thing the Court has to understand --
15              THE COURT:  It seems those are the two
16    biggest packages that are going to really generate
17    the most limiting instructions.  They're the ones
18    that I think the defendants are most concerned about
19    incriminating people that they can't be admitted
20    against.
21              MR. CASTELLANO:  They should be concerned
22    about those witnesses.
23              THE COURT:  But they can't be used against
24    them.
25              MR. CASTELLANO:  Well, that's not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   necessarily true.  Because what the Court is focusing
 2   on is what the Court knows about now.  But these
 3   witnesses can talk about --
 4            THE COURT:  I think that's a good point.
 5   I've got a long list of limiting instructions.  And
 6   it doesn't -- and that's just what I've seen.  That's
 7   just what was generated from the James hearing --
 8            MR. CASTELLANO:  Right.
 9            THE COURT:  -- and some other testified
10   that came up.
11            MR. CASTELLANO:  Right.  Witnesses like
12   that can talk generally about drug trafficking on
13   behalf of the enterprise.  That meets the element as
14   to all defendants:  Robberies, murders.  The jury is
15   going to hear about other murders in this case other
16   than what's charged, and that's permissible, and
17   that's actually required if we want to get a
18   conviction in this case, because we have to put on
19   racketeering activity on behalf of the enterprise.
20   So the jury is going to hear about other murders,
21   other assaults, other drug activity.
22            THE COURT:  But they can't hear it from Mr.
23   Perez' statements coming through Cordova.  That's the
24   problem.
25            MR. CASTELLANO:  Right.  I mean, what we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6240

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6241

1   focusing on are Mr. Perez' statements.  And the jury

2   is going to hear that he's admitted to at least two

3   other people that the shanks came from his walker.

4   So that is not the only source of the evidence where

5   he made admissions to him giving up his walker.

6   That's coming in through other witnesses as well, at

7   last two.

8          So I think we have to -- rather than just

9   taking this as a whole, we have to cut it in pieces

10   and see what is it that we're worried about.  So

11   we're worried about Mr. Perez' statements, it looks

12   like.  After that we have --

13          THE COURT:  And Herrera's through Duran.

14   Those are the two that, when you look at that chart,

15   and the chart that I'm still working on, you're going

16   to get the biggest number of limiting instructions.

17          MR. CASTELLANO:  So in a single trial, it

18   seems to me that's where the instructions come from,

19   is two witnesses.  Mr. Perez has eight statements.

20          THE COURT:  Two witnesses and the

21   audiotapes that are associated with it.

22          MR. CASTELLANO:  Right.  The Court knows

23   Mr. Perez has eight audio recordings.  So that's what

24   the limiting instructions come in there, and then

25   with Mr. Herrera, same thing, we have to sort through

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6242

```
 1    which statements to bring in there.  But I think
 2    that's about it.
 3              THE COURT:  That's pretty big.
 4              MR. CASTELLANO:  It's pretty big.  Like I
 5    said, eight statements from Mr. Perez.  And the other
 6    question becomes what is the limiting instruction to
 7    the jury?  Is it:  Ladies and gentlemen of the jury,
 8    this information, statements by Mr. Perez, are to be
 9    admitted only against Mr. Perez in your determination
10    of your finding of guilt, and no other defendant?  Is
11    there anything else that they should be instructed
12    on?
13              THE COURT:  I think that would be the
14    instruction.  But I think listening to those tapes,
15    that's -- that does incriminate Mr. Baca -- I'm
16    talking about the Perez ones --
17              MR. CASTELLANO:  Right.
18              THE COURT:  -- and others.  And it seems to
19    me that we're asking a lot of the jury to not
20    consider that evidence.
21              MR. CASTELLANO:  With each instruction we
22    can ask the jury:  I've instructed you that this
23    evidence only comes in against Mr. Perez.  Does
24    anyone have a problem following that instruction?
25    And it's basically a polling of the jury each time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          And the other question is:  Does the Court
 2   instruct before and after each statement is
 3   introduced?  And by that I mean each recording.  Or
 4   is the Court thinking about interrupting each of the
 5   recordings to instruct along the way?
 6          THE COURT:  Well, I probably will do it as
 7   often as the defendants want it to be asked.  But if
 8   you look at the chart, at the places where I'm going
 9   to probably have to be giving the instruction or
10   saying they can't consider it, I anticipate it's
11   going to be a lot.
12          MR. CASTELLANO:  Right.  And if they
13   request an instruction, they should get an
14   instruction.  And I think, then, they have their
15   pulse on the trial.  And when they think it's
16   necessary, and the Court can give those instructions
17   as they deem necessary.  And that protects them and
18   it protects the trial.
19          Now, I've cited to the Court before U.S.
20   versus Diaz.  It's a Second Circuit case, 176 F.3d
21   52.  And it says -- I understand this is a Second
22   Circuit case, but it says, "Refusal to sever a joint
23   trial with federal defendants is virtually
24   unreviewable.  A district court's denial of a
25   severance motion will be reversed only if a defendant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6243

 1    can show prejudice so severe that his conviction

 2    constituted a miscarriage of justice and that the

 3    denial of his motion constituted an abuse of

 4    discretion."  This is the case I've discussed with

 5    the Court before.  And the argument for severance was

 6    spillover.

 7             So in that case, the complaining defendant

 8    was implicated in one of nine murders.  He was tried

 9    over a three-month period before the same jury, which

10    heard volumes of evidence that his co-defendants,

11    among other things, committed eight unrelated murders

12    and other acts of violence, sold narcotics, and

13    maintained and shared weapons for use in their

14    criminal activities.  They say, "First, the evidence

15    in dispute is relevant to the charges against all

16    RICO defendants because it tended to prove the

17    existence and nature of the Latin Kings and their

18    RICO enterprise, and a pattern of racketeering

19    activity on the part of each RICO defendant, by

20    providing the requisite relationship and continuity

21    of illegal activities."  It then cites to a case

22    called Brady, at 26 F.3d, at 287, holding that "there

23    was no prejudice from admission of evidence regarding

24    murders as background evidence."

25             So this is not the first time that any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6244

 1    court has been in the situation.  In this case, they

 2    complained about being involved in one out of nine

 3    murders.  And I think if a court of appeals can hold

 4    a case together like that, when you're one out of

 5    nine murders -- he sat there the whole time while

 6    other murder evidence was introduced against other

 7    defendants, and it was upheld on appeal -- so I think

 8    this has been contemplated before, and I think it can

 9    be done.

10           As the Court has said, it's going to take

11    work with limiting instructions.  But as often as

12    defense requests them, the jury can be instructed

13    accordingly.

14           But I think one jury is certainly better

15    than two.  I think two just invites more error to the

16    record.

17           Related to the Court's question about the

18    rulings on appeal, the statements were -- obviously,

19    unless there is a change in the statement of law, our

20    position stands for purposes of appeal.

21           The other issue the defense raised was, if

22    the anticipated evidence at trial is different --

23    we're talking about recordings here, so I don't think

24    we have a concern about the evidence being different

25    at trial.  The recordings are what they are.  And so

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6245

```
 1   that evidence will come in as it is.  So I think that
 2   is obviously less of a concern in terms of any change
 3   in position by the Government.
 4           I don't have anything else unless the Court
 5   has questions.
 6           THE COURT:  If -- getting back to the
 7   motion on the table -- you're opposed to that
 8   motion -- if I were to sever, how would the
 9   Government propose I sever?
10           MR. CASTELLANO:  Certainly not the proposal
11   of Counts 6 and 7.  I agree with the Court, that
12   doesn't solve any problems.  We're faced with the
13   same exact issues regarding jury instructions.
14   Obviously, we would oppose it.  But the better option
15   is severing defendants, as opposed to severing --
16           THE COURT:  How would you do it?  The way
17   I'm thinking of Sanchez and Baca, and then Perez and
18   Herrera?
19           MR. CASTELLANO:  If I was forced into a
20   decision, that would be the decision; would be Mr.
21   Perez and Mr. Herrera in their trial, and the other
22   two in the other trial.
23           THE COURT:  And who would you try first?
24           MR. CASTELLANO:  I'm not sure.  I haven't
25   thought that far ahead.  I know one who wants to go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6246

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 90 6247

```
 1    first, but I'm thinking separately from that.  I'm
 2    not sure.  I'd have to think about that in terms of
 3    witness availability, and who we have lined up, and
 4    who we wouldn't be calling if the Court were to do
 5    that.
 6              THE COURT:  All right.  Thank you, Mr.
 7    Castellano.
 8              Mr. Villa, anything else you want to say on
 9    your motion?
10              MR. VILLA:  Your Honor, nothing more with
11    respect to why I think 6 and 7 ought to be separate.
12    I'll stick to that.
13              But if the Court were going to consider as
14    a remedy to the concerns it has with the intra-counts
15    6 and 7 issues, or statements and things like that, I
16    would echo what some others have said, that rather
17    than a two-jury setup, that we have two separate
18    trials.
19              I think that I understand the Court would
20    get some efficiency from the duplicative evidence
21    that could be put on.  But I think that I would agree
22    that would it take just as long, and be just as
23    difficult.  And there is much less chance of
24    prejudice if we do it that way.  But, again, I think
25    that the Court ought to -- I know you've looked at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6247

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 91

1    it -- but consider why we're asking that 6 and 7

2    ought to be severed in the way we are.

3              That's all I have.

4              THE COURT:  All right.  Thank you,

5    Mr. Villa.

6              Let me ask you one other thing, Mr.

7    Castellano:  If I do feel that I need to have two

8    juries, rather than trying to deal with the

9    evidentiary problems particularly Duran and Cordova

10   present, would you prefer to have joint juries or two

11   separate trials?

12             MR. CASTELLANO:  I mean, if I can kind of

13   think this through.  If we have two separate trials,

14   we have to figure out where to fit the next trial.

15   We already have trials lined up for April and July.

16   Mr. Baca and Mr. Sanchez are also in the July trial.

17   So we have to figure out whether we put them back to

18   back, or try them first, get them out of the way, and

19   come back and revisit them in July.  Mr. Herrera and

20   Mr. Perez, I don't believe they're in any other

21   trial.  So the question is who we keep waiting.

22   Because at this point there is no other time.

23             I know the July trial, the RICO case, those

24   defendants have previously said -- I don't know if

25   their position has changed -- but they're not moving.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9249

```
 1    That's a fixed date for them, and they will not agree
 2    to any other continuances.  I don't know what the
 3    April trial people will say.  But now we're going to
 4    have to fit in a fourth trial somewhere.
 5              THE COURT:  It sounds like you would prefer
 6    to have -- given the choices the Court's putting to
 7    you, that you'd rather have two juries than two
 8    separate trials?
 9              MR. CASTELLANO:  I think that's right, as
10    I'm thinking through it.  Because, otherwise, there
11    is nowhere else to fit these cases.  And we might as
12    well get it over with.  I think it will be difficult.
13    But I think between those choices and thinking it
14    through now, two juries maybe is better.  I certainly
15    don't like it.  But given the choices, I would pick
16    that choice over a separate trials, especially given
17    the other trials lined up.
18              THE COURT:  Thank you, Mr. Castellano.
19              I've jumped to Mr. Castellano to ask him
20    those questions.
21              Anybody else have any comments, arguments?
22              Well, I'm going to deny the motion to
23    sever.  I just have looked at it repeatedly, and it
24    doesn't seem to solve any problems to me, and it
25    doesn't seem to me to create the problems that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 93

```
 1    defendants propose.  I've thought about that a long
 2    time, written two opinions on it, relooked at it.
 3    And it just doesn't seem to raise the problems that I
 4    think has more recently arisen with the evidence and
 5    the discovery that we've had over the last month.  So
 6    I'm going to deny the motion to sever.
 7            At the present time, I'm planning on
 8    picking two juries on Monday.  And I don't minimize
 9    the difficulties.  But we've known we're going to
10    have some difficulties with limiting instructions
11    once we began, on December 19, to start listening to
12    informants and tapes and things like that.
13            And so, I think, given the choices, I would
14    rather work hard to have two juries hearing this
15    evidence than to have juries listening to some of
16    this evidence and trying to deal with the amount of
17    limiting instructions that I know I'm going to have
18    to give.  So I think we'll give it a try.
19            All right.  Then the next motion is the
20    motion to compel Brady and the Giglio materials
21    pertaining to cooperating defendants.  Let me pull
22    that up here.  I believe that Mr. Villa, Ms.
23    Fox-Young, that's your motion.  I think it's joined
24    by Mr. Troup and Mr. Arturo Garcia.
25            What -- y'all probably have had some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6250

1    discussion, since this was filed a few days ago.

2    Where are we on it?  What needs to be -- what hasn't

3    been worked out and what needs to be addressed?

4             MR. VILLA:  Your Honor, just taking it in

5    order, I believe, with respect to Number 1 and 2,

6    it's sort of the same thing; that I believe these

7    defendants, the cooperating co-defendants listed in 1

8    and 2, are housed in the same area.  And there is

9    some sort of shakedown, and a cellphone was

10   confiscated, as well as drugs.  And I may be wrong

11   about whether they're housed in the same area.  But

12   we've asked for the cellphone information as well as

13   the results of the drug testing.  I think -- I'm not

14   a hundred percent sure if that information is

15   available or not.  I think the United States said

16   they would provide it when it's available.  It has

17   not been provided.  So they'll have to speak to that.

18            THE COURT:  Let me -- let's take these one

19   at a time.  Is there anybody -- any other defendant

20   that needs or wants to speak on this before we hear

21   from the Government?  Ms. Bhalla?

22            MS. BHALLA:  Thank you, Your Honor.

23            And you may want to address this issue

24   later.  But we did file a sealed supplemental to this

25   motion based on some evidence that we reviewed in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6251

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 95

1   new discovery.  And I don't know if the Court -- it

2   may benefit me to bring that up so that the

3   Government can address that in one fell swoop.  Or we

4   can wait, Your Honor.

5          THE COURT:  I have read everything other

6   than what came in yesterday.  When did you file that?

7          MS. BHALLA:  It was filed on -- I think it

8   was filed on Wednesday, Your Honor; Tuesday or

9   Wednesday.  When did I leave?  Yeah, it should have

10  been filed on Wednesday, Your Honor.  I think it's

11  1688.

12         THE COURT:  I had it right behind the

13  motion.  So we'll just take those motions then

14  together, okay.

15         MS. BHALLA:  Did Your Honor want to hear

16  from me now?

17         THE COURT:  Do you have anything from the

18  Government on the cellphone?

19         MS. BHALLA:  No, Your Honor.

20         THE COURT:  Why don't we hold up and hear

21  the Government on that.  But I'll take your motion up

22  at the same time.

23         Do you want to speak before the Government

24  does, Mr. Lowry?

25         MR. LOWRY:  Your Honor, just in terms of

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                        1-800-669-9492
                                                  e-mail: info@litsupport.com



DNM 6252

1    one additional bit of the Brady information.  In

2    terms of the Jencks Act disclosures, there is a 302

3    with Lupe Urquizo that talks about a telephone call

4    that he had with Gerald Archuleta, that hasn't been

5    disclosed.  And I would consider that Brady because

6    he's responding to Mr. Archuleta for calling the hit.

7         THE COURT:  Does that 302 indicate that

8    it's the contents of a cellphone?

9         MR. LOWRY:  No, it's not the contents.

10        THE COURT:  Let's take the cellphone first.

11   Anybody else on the cellphone issue?

12        All right.  Mr. Beck, are you going to

13   handle this?

14        MR. BECK:  Yes, Your Honor.  Items 1 and 2

15   are not in the United States' possession.  Those are

16   in a local drug task force possession.  They're

17   investigating the crimes.  We will have -- I mean, I

18   anticipate, with some new Giglio disclosures based on

19   discussions we've had in the last weeks, Jerry

20   Montoya and Eugene Martinez and Roy Martinez will

21   give their portions of what occurred with those.  But

22   we don't have possession of those items.

23        THE COURT:  Are they a joint task force

24   with the federal government?

25        MR. BECK:  They're not, no.  It's local.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  They're just local drug task
 2    force?
 3                MR. BECK:  Local, like local drug
 4    trafficking agencies.  So it's a state government,
 5    not part of the federal government.  We've asked
 6    for -- and I anticipate that we will receive
 7    information as it becomes available.  And when we do,
 8    we will turn that information over to the defense.
 9    But it's not part of the federal government.  We
10    don't have it in our possession.  We can't get that.
11                THE COURT:  Would you have any opposition
12    if we were to issue a subpoena for those phones, see
13    if we can move it along?
14                MR. BECK:  No.
15                THE COURT:  Would that help you out, Mr.
16    Villa, on those two, both that and the drug test, I
17    guess?  That's what you mean by number 2, right?
18                MR. BECK:  That's right, Your Honor.
19                THE COURT:  What if we issued subpoenas
20    out, and maybe that would move them along, to give to
21    the Government, so they could turn them over to you
22    whatever they got.
23                MR. VILLA:  I think that would be a good
24    solution, Your Honor.  If the Government would
25    identify the right agency or individuals to send that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 98

1   subpoena to.  And I do think that those paragraphs

2   one and two, the drug tests and the cellphone, are

3   all part of one investigation.  But Mr. Beck may

4   correct me on that.

5          THE COURT:  Can you supply enough

6   information to help Mr. Villa put a subpoena

7   together?

8          MR. BECK:  I think so, yeah.  I can't do it

9   right now.  I don't have it in front of me.  But I

10  think we can by the end of the day.

11         THE COURT:  Okay.  Does that work for

12  everyone on one and two?  Not hearing any objection,

13  then we'll put a subpoena together.  And if that

14  doesn't do it, we'll come back to it.

15         MR. VILLA:  So, Your Honor, I don't know

16  how this ends up playing out.  I don't believe Mr.

17  Gallegos is on the Government's -- or Mr. Eugene

18  Martinez is on the Government's will call list for

19  Trial 1.  But Mr. Montoya is.  And I think Mr.

20  Martinez, Roy Martinez, might be a may call -- no,

21  he's a will call, excuse me.  So, if the subpoena

22  gets issued, and the agency says, Great, we'll have

23  it to you Friday, but the Government wants to put on

24  these two witnesses Thursday, or something, I mean, I

25  guess I would ask for some sort of relief in that, or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6255

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 99256

1    notice about what's going to happen in terms of who

2    the Government is going to call.

3            THE COURT:  I'm not sure the question I

4    should ask you.  But do you have a response?

5            MR. BECK:  Yeah.  I think -- I mean, I

6    think we go forward.  It's not -- I know at least the

7    phone is not Jerry Montoya's phone.  It's Richard

8    Gallegos' phone.  The drugs -- I don't know whose

9    they are.  I think -- as I said, I think there will

10   be new Giglio disclosures about drug use by some of

11   our will call list in the past couple weeks and

12   months.  Other than that, I don't see a remedy here.

13   I mean, they can inquire and ask them about what that

14   is.  But I mean, I don't see that there is a basis

15   for a remedy.

16           THE COURT:  So the two people that you're

17   calling, that you're calling are --

18           MR. BECK:  Jerry Montoya in Number 1, and

19   Roy Martinez in the Number 2.

20           THE COURT:  Roy Martinez in the second.

21           MR. BECK:  Right.

22           THE COURT:  Do you know if they're coming

23   up in the next week, witness-wise?

24           MR. BECK:  Roy certainly is not.  I don't

25   anticipate Jerry Montoya would be either.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100

1            THE COURT:  All right.  Well, that will

2    give you a few days to get it going.  Let's see if we

3    can get the subpoenas out and avoid a problem.

4            What else do you have on your motion?

5            MR. VILLA:  So I'll move to number 3, Your

6    Honor.  This is a legible copy of Mario Rodriguez'

7    notes.  It can came -- in production to us it's

8    Exhibit 2 to the motion, and it's sort of attached,

9    or part of a 302.  And the notes are not legible.  As

10   soon as we got them, we inquired of the discovery

11   coordinating folks if they had a better copy.  They

12   said they didn't.  They said they would follow up

13   with the United States.  We haven't heard back.

14           I think it's important because it may or

15   may not be other information that we're looking for.

16   There is a recording that was recently disclosed, in

17   which Mr. Rodriguez is with Mr. Acee and some others,

18   and he's talking about corrections that he's made to

19   Mr. Acee's 302.  And I don't know if that's what this

20   document is, or if it's a different document.

21           And so, again, with Mr. Rodriguez'

22   testimony imminent, we'd like a legible copy of his

23   notes.  And to the extent there is something else

24   that Mr. Rodriguez is referring to on this recording,

25   of making corrections to Mr. Acee's 302, we would



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6257

```
 1    want the draft 302 that Mr. Rodriguez made
 2    corrections on, and any other notes that there are.
 3              THE COURT:  Is this a curable problem, Mr.
 4    Beck?
 5              MR. BECK:  Is it a what, Your Honor?  I'm
 6    sorry.
 7              THE COURT:  Curable.
 8              MR. BECK:  Yes.  We have the notes.  They
 9    should be going out today or tomorrow.
10              THE COURT:  Are they legible?
11              MR. BECK:  I mean, I don't know how much
12    better they are than what we've got.  But I think
13    they will be a better copy.
14              THE COURT:  Do you have the original?
15              MR. BECK:  We do.  I think we do.
16              THE COURT:  Do you have it with you today?
17              MR. BECK:  No.  I think we have the
18    original.
19              MR. CASTELLANO:  I think I saw a copy of
20    the notes.  I think what they tried to do was
21    photocopy them with a different contrast or a darker
22    one.  So I think the copy picked it up, and it's
23    going out in the disclosure today.  I know that they
24    were trying to make copies on the copy machine to
25    bring out the writing from the notes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102

1            THE COURT:  And when it goes out today, is

2    it going directly to defense counsel or is it going

3    to --

4            MR. CASTELLANO:  It will go to Mr. Aoki,

5    the discovery coordinator.

6            THE COURT:  Okay.  Would it be possible if

7    somebody in your office could give one copy to Mr.

8    Villa, and Mr. Villa could be responsible for getting

9    it to anybody else that wanted it?

10           MR. CASTELLANO:  I think so.  I think

11   they're numbered.  We could disclose it under the

12   normal disclosure rules, and then disclose it as well

13   to Mr. Aoki.

14           THE COURT:  Would that work?

15           MR. VILLA:  That would, Your Honor.  And

16   I'd also ask if you would ask, order the Government,

17   if we're still unable to read the copy we get, if I

18   could inspect the original.

19           THE COURT:  Do you have any problem with

20   that, Mr. Beck?

21           MR. BECK:  That's fine.  I mean, my

22   understanding they're with FBI in Albuquerque.  So it

23   can't be done immediately.  But we would figure out

24   how to get that done.

25           MR. VILLA:  We can give them six hours.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                        1-800-669-9492
                                                                e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103260

```
 1            We'll see if the copy we get is workable,
 2   Your Honor.  But I appreciate it.
 3            Number 4, there is two exhibits we've
 4   attached to the motion, Exhibits 3 and 4.  They are
 5   confidential informants.  They're listed by number so
 6   we don't know the identities of those informants.
 7            The Government, when it produced its
 8   Jencks, produced a letter identifying the majority of
 9   individuals who weren't identifiable on whatever the
10   report was, or if they were redacted.  But these two
11   specific informants I don't believe were disclosed.
12   So we're asking for their identities pursuant to
13   previous orders and agreements of the parties on
14   these issues.
15            THE COURT:  Do you have any problem giving
16   these names?
17            MR. BECK:  I think we gave those to Mr.
18   Lowry and Ms. Duncan, so I think they have those
19   names.
20            MR. LOWRY:  Your Honor, I've been working
21   with Ms. Armijo.  And regretfully, she's not in the
22   courtroom.  We gave her a list, and it's on our
23   witness list.  I don't know if they're called CIs on
24   this particular document.  But my recollection, Your
25   Honor, is there is about six or seven names on that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6260

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104 6261

1    list.  And so far we've only gotten two.  And I'm

2    happy to share those with my colleagues.

3         But I've been in discussions with Ms.

4    Armijo over the last week to try to collect those

5    other names.  And I wanted to augment the motion to

6    compel with those names.  Despite our best efforts

7    and repeated requests, we still don't have the list.

8    And they're of particular import to Mr. Baca's

9    defense.

10        THE COURT:  Well, am I understanding

11   correctly, you don't have any objection to producing

12   the names, right?

13        MR. BECK:  That's right.  I mean, there are

14   certain CIs throughout New Mexico Corrections

15   Department documents that -- we've said over and over

16   again we don't have -- Corrections doesn't have those

17   names anymore, we don't have those names anymore.  So

18   those won't be produced because they don't exist.

19   We've tried to track those down.  But to the extent

20   that we have them, it sounds like we're going to

21   produce them.  And I don't have a problem

22   double-checking, making sure that happens.

23        THE COURT:  On the ones that you do have

24   the ability to produce and you are willing to

25   produce, can you propose a deadline by which to do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6261

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105262

1   it?

2           MR. BECK:  We can do that Monday, by the

3   end --

4           THE COURT:  Would that work for you?

5           MR. VILLA:  Yes, Your Honor.

6           THE COURT:  Okay.  All right.

7           MR. LOWRY:  Do we know how many that have

8   fallen between the cracks here?

9           THE COURT:  Do you know at the present

10  time?

11          MR. BECK:  I don't.  I mean, I'm guessing,

12  if you give us names and they don't come back, we'll

13  tell you.

14          MR. LOWRY:  If I could give them names that

15  would be a problem solved.

16          MR. BECK:  If you give us numbers.

17          THE COURT:  You mean the exhibit numbers?

18          MR. BECK:  No.  What he's saying is giving

19  us a list of, like, CI 136.  And if we have who CI

20  136 is, we give him a name back.  If we don't give

21  him a name back, we don't have that information.

22  We're not withholding CIs' names we have.

23          THE COURT:  Does that work for you?

24          MR. LOWRY:  Yes, Your Honor.  And I've

25  given them that list.  But I'll do that again.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106

```
 1              THE COURT:  All right.  Does that take care
 2    of number 4 then, Mr. Villa?
 3              MR. VILLA:  It does, Your Honor.  Number 5
 4    is field notes.  And Exhibit 5 explicitly identifies
 5    field notes taken by Special Agent Neale regarding an
 6    interview of David Calbert, who is going to testify.
 7    It says that they're digitally attached to the -- I
 8    think it's 1A file -- I think we put IA in the
 9    motion.  But those notes have not been produced.  And
10    it appears from the 302 that they still exist and are
11    attached digitally to a file.
12              THE COURT:  Both of these are going to be
13    witnesses, Mr. Beck?  Duran and Calbert?
14              MR. BECK:  David Calbert will be a witness.
15    Eric Duran will be a witness, yes.  But I don't
16    believe their notes would be -- I mean, I don't
17    believe Special Agent Neale's notes of those would be
18    Giglio, as long as the notes -- or I mean, they
19    wouldn't be David Calbert's Jencks unless they are
20    substantially verbatim.  And as long as their notes
21    are reduced to writing in the 302s, then the notes --
22    I mean, there is no requirement that they're
23    produced.
24              THE COURT:  Well, you know what I've
25    written on FBI agent notes.
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6263

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107

```
 1                MR. BECK:  If they are substantially
 2    verbatim, then they're to be produced.  I believe
 3    that's Your Honor's ruling.
 4                THE COURT:  Well, how else do people take
 5    notes?  They try to be as verbatim --
 6                MR. BECK:  I can tell you that the
 7    agents -- and oftentimes agents do, and in this case
 8    agents do take shorthand notes, and then, when we
 9    reduce their notes to writing, the actual 302 is more
10    lengthy than the notes would be.
11                THE COURT:  Well, if you want me to make a
12    call on them, you can.  You can give them to me in
13    camera.  But, generally, I'm going to require those
14    notes to be produced.  So either produce them or send
15    them to me in camera for review.
16                MR. BECK:  Okay.
17                THE COURT:  Anything else on that?
18                MR. VILLA:  Is the same deadline okay, Your
19    Honor, end of business Monday?
20                THE COURT:  Does that work for you, Mr.
21    Beck?
22                MR. BECK:  That will work, Your Honor.
23                MR. VILLA:  The last thing on the motion is
24    paragraph 6.  I think the Court just recently issued
25    an order related to this inspection of the tablets of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108265

1    the cooperating defendants.  But May 11, when the

2    Court ruled on this tablet issue and returning it to

3    the defendants, it also ordered the Government to

4    review for Brady and Giglio the cooperating

5    defendants' tablets, because there was an issue of

6    perhaps whether they tampered with them, access to

7    the internet, communicated with individuals outside

8    of the detention center where they were.  And we have

9    not received anything from the Government one way or

10   another about that.

11           THE COURT:  Mr. Beck, did you conduct those

12   reviews?

13           MR. BECK:  No.  The Court issued the

14   written order yesterday.  We've forwarded that to the

15   FBI.  The FBI would not inspect the tablets without

16   the actual court order.  So now not that they have

17   it, they will inspect the tablets.  I don't know how

18   quickly that will be done.  It's towards the top of

19   their things to do list.  But it may not be at the

20   very top because they have other pressing matters

21   that they're inspecting at this time.  So I don't

22   know when that will be done.  But I know that, as of

23   last night, the FBI is moving forward with that

24   because they now have the order.

25           MR. VILLA:  Your Honor, we can have our

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6265

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 109266

 1   expert do it immediately.  We don't need to get in

 2   the way of pressing business of the FBI.

 3        The Court signed the order for inspection

 4   recently.  But on May 11th of 2017, it ordered the

 5   Government to conduct the Brady-Giglio review.  So I

 6   think that's a good solution.  Let the defense do it.

 7        THE COURT:  What's your thoughts on that,

 8   Mr. Beck?

 9        MR. BECK:  I don't see a problem with that,

10   as long as the marshals are okay with it.  The Court

11   has ordered the inspection.  So it sounds fine to me.

12   Obviously, they have reciprocal discovery

13   obligations, but I don't have any problem with that.

14        THE COURT:  Do the marshals have any

15   problem with that?

16        DEPUTY MICKENDROW:  I apologize, Your

17   Honor.  There was a disturbance in the hallway that I

18   was dealing with.  What was the request?

19        THE COURT:  Well, they're just going to

20   turn over some cellphones.  I've ordered that those

21   be produced, rather than the Government having to do

22   a Brady and Giglio review and the FBI dealing with

23   it, I just wonder if we can go ahead and have it

24   produced to the defendants, and let the defendants do

25   that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6266

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110267

```
 1              MR. VILLA:  Tablets, Your Honor.  You said
 2    cellphones.
 3              THE COURT:  I did.  And it's tablets.
 4              DEPUTY MICKENDROW:  And these tablets are
 5    in the Marshal Service's possession right now?
 6              THE COURT:  Well, they're in the prisons.
 7              DEPUTY MICKENDROW:  We can accommodate it,
 8    and be able to get those.
 9              MR. CASTELLANO:  Those tablets were in the
10    Marshal Service's custody.  They were turned over to
11    FBI.  So they would then go from the FBI to the
12    defense expert.
13              MR. BECK:  Half of them.  Some of them are
14    still with marshals in Albuquerque.  But we will all
15    work together to coordinate to get them to the
16    defense so that they can do that.
17              THE COURT:  Okay.
18              DEPUTY MICKENDROW:  I would just put on the
19    record that I know there is one tablet that we're
20    searching for.  I guess it's been missing since May
21    of 2017.  I have inherited the problem.  I'm looking
22    for it right now, and I'm not sure where it is.  I
23    just want to make it clear we're not trying to keep
24    that tablet at all.  We are searching for that
25    tablet.
```

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6267

1          THE COURT:  Okay.  All right.  Does that

2     deal with it then, Mr. Villa?

3          MR. VILLA:  I think that deals with it.

4     But a couple of things is -- it's Mr. Lowry's expert,

5     just so Mr. Beck knows who to deal with; deal with

6     Mr. Lowry rather than going through me.

7          And then, I guess, if there is a missing

8     tablet from a cooperating defendant who is going to

9     testify, there may be some more information that the

10    Government needs to turn over to us.

11         THE COURT:  Mr. Lowry.

12         MR. LOWRY:  Your Honor, I'm just curious of

13    which tablet, which witness the missing tablet is

14    associated with.  And I just want to make sure that

15    this request includes the correspondence that was

16    sent to the jail alerting them about the problem to

17    begin with.

18         THE COURT:  Mr. Mickendrow, do you know

19    which tablet it is?

20         DEPUTY MICKENDROW:  If Your Honor would

21    give me a few minutes, I could get the name of the

22    defendant that we're looking for his tablet on.

23         THE COURT:  Okay.  And do you have any

24    problem producing correspondence you've had with the

25    jail, with the detention facilities to try to locate

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6268

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112269

```
 1   this?
 2              DEPUTY MICKENDROW:  I would have to clear
 3   that through my agency.  But me personally, no.  I've
 4   made several attempts to locate it.  So I have no
 5   issue with that.  But as long as --
 6              THE COURT:  Let's do this:  I'll
 7   conditionally order that you produce the
 8   correspondence as well as -- that goes along with
 9   this, as well as the tablets themselves, getting the
10   ones that are in your custody over.  If you talk to
11   your superiors, and they have problems with it, then
12   we can revisit it.  But for the present time let's
13   plan on that being part of the production.
14              DEPUTY MICKENDROW:  Yes, sir.
15              THE COURT:  Anything else on that, Mr.
16   Lowry?  Mr. Villa?
17              MR. VILLA:  Nothing on that issue.
18              THE COURT:  Anything else on your motion?
19              MR. VILLA:  I don't have anything else on
20   the motion.  I have a similar discovery request, if
21   the Court would be so inclined.
22              THE COURT:  Okay.
23              MR. VILLA:  I was informed by Ms. Armijo,
24   maybe just a couple days ago -- and you heard Mr.
25   Castellano tell you a little bit earlier that the two
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6269

```
 1   individuals were saying similar things, that Mr.

 2   Perez admitted to providing pieces from his walker.

 3   And I know that one of them is Timothy Martinez, who

 4   was apparently reinterviewed, or interviewed again a

 5   couple days ago, and made a statement, and I believe

 6   a 302 is being prepared on that.  But he's going to

 7   be testifying very soon, I suspect, and we don't have

 8   that.

 9           THE COURT:  Who is the witness on this?

10           MR. VILLA:  Timothy Martinez.

11           THE COURT:  Timothy Martinez.  Okay.

12           MR. VILLA:  So, to the extent, you would

13   order the Government to produce that 302 immediately,

14   we would ask you to do that.

15           THE COURT:  Your thoughts, Mr. Beck?  Ms.

16   Armijo?

17           MR. BECK:  I think we have forthcoming a

18   number of both Giglio and James productions.  So some

19   more James statements and more Giglio that we just

20   discovered in preparing for trial with our witnesses.

21   Those 302s are in the works.  I expect that they will

22   be disclosed Monday to the defendants.  So they'll

23   have all that.

24           THE COURT:  Does that work for you, Mr.

25   Villa?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6270

```
 1                MR. VILLA:  We'll take Monday, yes, Your
 2    Honor.
 3                THE COURT:  Anything else?
 4                MR. VILLA:  That's all I have.
 5                THE COURT:  Ms. Bhalla, you have issues you
 6    want to raise on your motion?
 7                MS. BHALLA:  Thank you, Your Honor.
 8                You know, we've talked a little bit about
 9    the phone calls that were disclosed and the number of
10    phone calls.  And we've all been scrambling to listen
11    to these phone calls as quickly as possible.
12                One of the things that we discovered when
13    listening to the phone calls, and Lupe Urquizo -- I
14    mean, just honestly within the last week, Your Honor,
15    Lupe Urquizo made a phone call to his brother.  And
16    in that phone call, and in more than one phone call
17    he disclosed that Gerald Archuleta, also known as
18    "Styx," had a wire -- I assume it was one of those
19    recording devices -- and made recordings of him.  And
20    the Government showed him copies of the transcripts
21    of those recordings.  And that was what was used to
22    gain his cooperation.
23                I did reach out to the Government to ask if
24    we could have those.  The Government responded that
25    they had no recordings or transcripts of that -- of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    those conversations.  So --
 2              THE COURT:  They're saying there was no
 3    recordings?
 4              MS. BHALLA:  They're saying, I think -- and
 5    I may ask the Government to give a better answer --
 6    is that I don't know if they meant that no such
 7    recordings were ever made, or that no such recordings
 8    exist; that they don't have possession of those.  I'm
 9    not totally clear.
10              THE COURT:  All right.  Mr. Beck?
11              MR. BECK:  I hope I'm not overstepping my
12    grounds in revealing intimate trial strategies, but
13    cooperators and other SNM members lie on phone calls.
14    So Lupe lied to his brother on a phone call to
15    justify why he was cooperating.  You'll probably see
16    that again this afternoon in another motion.  But he
17    lied to his brother.
18              THE COURT:  But you don't know of any
19    transcripts?
20              MR. BECK:  Yeah, as far as we know -- and I
21    think this is pretty darn certain -- I don't deal in
22    certainties -- but Archuleta never recorded Lupe
23    Urquizo.
24              MS. BHALLA:  If that's the case, Your
25    Honor, this sort of dovetails into Marc Lowry's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6272

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116273

1    motion, which is Document 1701.  And I'm going to say

2    something briefly about that.

3          If it's their position that there were no

4    recordings, then we want to know whether or not the

5    Government indicated to Lupe Urquizo that such

6    recordings existed.  Those are, you know, specific

7    threats or promises that would certainly get into

8    Giglio material.

9          Now, the Government may say that no such

10   threats or promises were made.  If that's their

11   position, that's fine.  But I think that we are going

12   to ask for clarification on that, and maybe we deal

13   with that in -- and I did make a request for that in

14   number 4 in our supplemental, Your Honor.  And maybe

15   we can deal with that when we get to it.

16         If you want me to go ahead and move on to

17   number 2, or do you want me to go straight to that

18   issue?

19         THE COURT:  Well, since you brought it up,

20   we can go ahead and do number 4.  You're putting

21   together a list of all the benefits that the

22   cooperators are getting; correct, Mr. Beck?

23         MR. BECK:  Yes, Your Honor.  I think we've

24   disclosed that.

25         THE COURT:  So that covers the promises

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6273

1    side.  Do you have any evidence or knowledge that

2    there were threats to Mr. Urquizo?

3            MR. BECK:  Well, I think that -- I mean,

4    I'm just thinking -- it sounds like they have

5    evidence that there was.  And they may use that in

6    cross-examination of a couple of folks.  I don't know

7    what else they want from the United States.

8            THE COURT:  Well, I guess, here's the thing

9    is, if there were threats, and then the Government

10    didn't act on those threats, I guess I would put that

11   on the side of a benefit.  Would you agree with my

12   analysis, that if you're -- I'm not saying it was Mr.

13   Acee -- but Mr. Acee is sitting there and he is

14   making threats, and then he doesn't do those things,

15   that would seem to be a benefit to the cooperating

16   witness that ought to go on your list.

17           MR. BECK:  I mean, I think if the United

18   States was targeting someone, and then part of a

19   cooperator's agreement was that that target would go

20   away, I think that's been included.

21           I mean, threats -- as Your Honor will hear

22   this afternoon, and I think Your Honor has heard

23   before, associates of the SNM include some of the

24   defendants' wives and girlfriends and mothers who

25   sent in drugs into the prison.  And you'll hear this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6274

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6275

 1    in each one of the trials.  So that would be

 2    racketeering by SNM.  I think it will come out that

 3    the United States targeted folks who they didn't

 4    prosecute.  I can't -- I mean, I can't think --

 5            THE COURT:  I guess what my solution for

 6    this is that you ask about threats, and if there were

 7    threats, they go on the -- on your list for each

 8    cooperating witness that that's a promise, that's a

 9    benefit.  Because if it didn't take place, then I

10    think that is a benefit.

11            MR. BECK:  Okay.

12            THE COURT:  Does that deal with number 4

13    then?

14            MS. BHALLA:  It does, Your Honor.

15            And I would like to point out to the Court

16    that this did happen with more than one cooperating

17    witness.  We can certainly meet with the Government

18    and indicate how many we think that that occurred

19    with, that haven't been disclosed yet.  And I think,

20    Your Honor, that this is going to be a continuing

21    issue, as we continue listening to the phone calls.

22    We're doing the best we can to process them, but

23    there is just a lot of them.

24            The other issue, Your Honor, on number 2 is

25    in one of the Lupe Urquizo phone calls he mentions

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6275

1  that Special Agent Acee wanted him to have a

2  conversation with Mario Rodriguez, and that he was

3  going to set up a phone call for -- or set up a way

4  for Mr. Urquizo to be able to speak with Mario

5  Rodriguez on the phone.  We would like documentation,

6  recordings, whatever the Government has on that

7  particular issue.

8          THE COURT:  Do any recordings or

9  transcripts of those conversations exist, Mr. Beck?

10          MR. BECK:  I apologize.  I missed it.

11          THE COURT:  This is between Mario Rodriguez

12  and Mr. Urquizo.  I guess Mr. Acee was setting up --

13  there is some indication in the record that Mr. Acee

14  set up a phone call between them.  I guess the

15  question is, are there any recordings or transcripts

16  of the conversation between Mr. Rodriguez and Mr.

17  Urquizo?

18          MR. BECK:  Again, this is just SNM members

19  lying about what they're doing on the phones.  So

20  that didn't happen.

21          THE COURT:  Well, you mean -- so where did

22  you get this information?  Did it come out of a 302?

23          MS. BHALLA:  No, Your Honor.  Lupe Urquizo

24  made a phone call to a family member.

25          THE COURT:  Oh, okay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6276

```
 1            MS. BHALLA:  And explained to -- and this
 2    goes into some of what we want in terms of benefits,
 3    it sort of goes into the same category of what we
 4    were dealing with before, Your Honor.  But it was a
 5    phone call from September 11th of 2017.  And Mr.
 6    Urquizo stated that he -- the more cooperators he
 7    brought in, the more time he got off his sentence.
 8    So the more people that he could get to cooperate for
 9    the Government, the less time he would have to serve.
10    And in that spirit, he was going to try to gain Mario
11    Rodriguez' cooperation.
12            THE COURT:  But it doesn't sound like the
13    Government has any record of any call between Mario
14    Rodriguez and Mr. Urquizo.  Is that your position,
15    Mr. Beck, is you just don't even know about this
16    call?
17            MR. BECK:  That's accurate, Your Honor.
18            THE COURT:  All right.
19            MS. BHALLA:  And if that's the case, Your
20    Honor, I think if there is no recording of the
21    conversation, I think what we would like is -- if
22    Agent Acee did, in fact, have that conversation with
23    Lupe Urquizo, and did, in fact, provide a phone to
24    Lupe Urquizo, or facilitated a phone call --
25            THE COURT:   I think Mr. Beck is saying
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6277

```
 1    they don't know anything about it.

 2              MS. BHALLA:  Nothing?

 3              THE COURT:  Is that right, Mr. Beck?

 4              MR. BECK:  That's right, Your Honor.

 5              MS. BHALLA:  Okay.  That's fine, Your

 6    Honor.  Thank you.

 7              THE COURT:  And I guess, just to tie it

 8    down, you don't have any transcript or recording of

 9    this call, because you don't know that the call ever

10    took place?

11              MR. BECK:  That's right, Your Honor.

12              MS. BHALLA:  Thank you, Your Honor.

13              And the answer to number 3 may be the same.

14    When we reviewed these Lupe Urquizo calls, we started

15    wondering if the cooperators were recording each

16    other.  If there are any recordings between

17    cooperators, we would like those disclosed.

18              MR. BECK:  The only one we have everyone

19    already knows about; that's when Mario Montoya and

20    Eric Duran were cooperating during the investigation.

21    Neither knew that either was cooperating so both

22    thought that they were recording each other covertly.

23    That's the only recorded conversation between

24    cooperators.

25              MS. BHALLA:  Okay.  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6278

```
 1                    The only other thing I'd ask the Court is
 2       we have some sort of deadline imposed for the Giglio
 3       material regarding promises.
 4                    THE COURT:  Are you done with that work, or
 5       is that ongoing?
 6                    MR. BECK:  That's done.  It was disclosed.
 7                    THE COURT:  Do you want to do it this way:
 8       Do you want to give Mr. Beck a list of those that you
 9       think there were threats?
10                    MS. BHALLA:  Yes, we can do that, Your
11       Honor.
12                    THE COURT:  Do that.  And how long would it
13       take you after you get that list, Mr. Beck?
14                    MR. BECK:  There is a lot of the principal
15       agents and task force officers -- I mean, Special
16       Agent Acee, obviously, has much of the information.
17       But a lot of the other agents are out-of-pocket
18       today, so we may not be able to get that today.
19                    THE COURT:  Can we put end of business on
20       Monday?
21                    MR. BECK:  We can.
22                    THE COURT:  Does that work for you, Ms.
23       Bhalla?
24                    MS. BHALLA:  Yes, Your Honor.
25                    And I will do my best to compile a list of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6279

```
 1   who we think the promises were made to based on our
 2   review of the phone calls.  But I would also ask that
 3   if the Government discovers any threats or promises,
 4   or can speak with Agent Acee about that, if anything
 5   that hasn't been disclosed, they disclose it, so that
 6   we're not dealing with this in the middle of trial,
 7   Your Honor, as we continue listening to phone calls.
 8            THE COURT:  Do you assume --
 9            MR. BECK:  I understand that's what the
10   Court already ordered.
11            THE COURT:  All right.  So they have a
12   continuing duty to update and supplement if they come
13   across new evidence.
14            MS. BHALLA:  Thank you, Your Honor.
15            THE COURT:  Anything else on your motion,
16   Ms. Bhalla?
17            MS. BHALLA:  No, Your Honor.
18            I would just say that I think that Mr.
19   Lowry's motion also addresses some of these issues.
20   And I don't -- the arguments sort of complement each
21   other, Your Honor.
22            THE COURT:  Okay.  Does anybody else have
23   anything on those two motions, Mr. Villa's and Ms.
24   Bhalla's, anything else on those?  Were you getting
25   up to talk, Mr. Villa?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6280

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 26281

```
 1              MR. VILLA:  I was being summoned by Mr.
 2    Mickendrow.
 3              THE COURT:  Were you getting up to talk?
 4              MS. DUNCAN:  I am, Your Honor.  It's not in
 5    the motion, but it's related to discovery.
 6              THE COURT:  Okay.
 7              MS. DUNCAN:  On January 8, the Court
 8    ordered the Government to review and produce Eric
 9    Duran's medical records to the defense in 11 days.
10    And we haven't got than yet.  So I'm wondering what
11    the status of those records are.
12              MS. ARMIJO:  I believe the Court ordered
13    Mr. Del Valle to review them in 11 days, and then
14    provide information to the Court if he needed some
15    information from the Court.  We have not heard back
16    from Mr. Del Valle, but I will check up.  It wasn't
17    for the Government to review, because --
18              MS. DUNCAN:  That's right.  It was a
19    two-step; he was going to review them, tell the
20    Government what they were, and then we were going to
21    move forward.  So I would say, if Mr. Del Valle
22    failed to object to anything in those 11 days, I'd
23    ask the Court to order the Government to turn over
24    those records in toto today.
25              THE COURT:  Well, why don't we do this:
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Why don't you put an order together ordering Mr. Del

2    Valle -- let's see if we can get him here this

3    afternoon, and let's see what the deal is.  So I'll

4    talk to Ms. Wild here in a little bit, and see if we

5    can get him to come over.  And maybe that would be

6    the best way to deal with it.  We'll see if he's

7    available.

8           MS. DUNCAN:  Okay.  Thank you, Your Honor.

9           THE COURT:  Maybe y'all have a phone number

10   or something, and you can call him, tell him the

11   Court wants him over here sometime to talk about

12   those medical records, that would be great.

13          All right.  Shall we start with the bad

14   acts?  We want to take Mr. Sanchez' -- Mr. Villa?

15          MR. VILLA:  I'm not trying to interrupt Mr.

16   Sanchez, but Mr. Mickendrow has some information for

17   the Court regarding the missing tablet that probably

18   is better for him to just convey that to you.  It

19   concerns the identity of whose tablet is missing and

20   what he's done to locate it and that sort of thing.

21          THE COURT:  All right.  Deputy Mickendrow,

22   do you want to go ahead and put that on the record?

23          DEPUTY MICKENDROW:  Yes, Your Honor.  I was

24   contacted by AUSA -- too many names running through

25   my head -- I was contacted by AUSA Armijo regarding

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6282

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126

1   Robert Martinez' tablet, and where the current

2   location of that tablet is.  I wasn't aware that it

3   had been lost.  I found out after that email that the

4   tablet had went missing sometime back in May of 2017,

5   when Robert Martinez was at Sandoval County.

6   Apparently, it had been sent to the Russ Aoki, and

7   Jennifer Oh for some updates.

8          According to the information that we've

9   tracked down, Mr. Aoki says that he sent it back to

10  Sandoval.  I've also spoken with Mr. Martinez'

11  attorney, CJ, and he states that his staff also

12  looked into it.  And Sandoval was stating that it was

13  sent to PNM.  I've reached out to PNM, and the

14  Marshal Service up in Albuquerque, to inquire if they

15  can search the offices and the areas, to see if they

16  can locate that tablet.  So we're make endeavors to

17  locate that tablet.

18          THE COURT:  Okay.  Anybody got any

19  questions or additional comments of Deputy

20  Mickendrow?  All right.  Thank you, Deputy.

21          DEPUTY MICKENDROW:  Just one final note,

22  Your Honor.  I did put up through the chain of

23  command the request for my emails regarding locating

24  the tablet.  And I just want to be clear that's what

25  the Court was requesting from me is my correspondence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6283

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127 of 284

```
 1    with reaching out to the different facilities in
 2    attempts to locate that tablet?
 3              THE COURT:  Correct.
 4              DEPUTY MICKENDROW:  Okay.  And I don't have
 5    a response as of yet, but --
 6              THE COURT:  Okay.  All right.  Thank you,
 7    Deputy.
 8              Let me ask the Government, with Del
 9    Valle -- is Eric Duran floating around here?
10              MS. ARMIJO:  Well, I don't want to say
11    where his whereabouts are.  But we could try to make
12    attempts to get him here.  I just texted Mr. Del
13    Valle.  I haven't heard back from him yet.
14              THE COURT:  All right.  I don't want you to
15    disclose if you don't want to, and it's not
16    necessary.  But if he can try to get Mr. Duran here,
17    so maybe we can cut through these medical records.
18    If not, I'll take Mr. Del Valle.  But it would be
19    better if his client were here.
20              All right.  Ms. Jacks, were you -- just
21    standing there?
22              MR. VILLA:  Just making sure, in case I
23    need to come back.  I think that's all I have.
24              THE COURT:  All right.  Ms. Jacks, do you
25    want to begin to tackle the Rule 404(b)?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6284

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 128285

```
 1              If I recall where we were is that the
 2    Government produced a long list of bad acts that they
 3    were going to assert.  Many of those we ruled could
 4    be used as either res gestae or part of the proof of
 5    enterprise's activity.  And then we required the
 6    Government -- y'all can correct me if I'm wrong -- to
 7    come back and see if there was anything that was --
 8    they wanted to try to get under 404(b).  And if
 9    they -- and the documents that we had earlier, we
10    decided that, even though they were labeled as bad
11    acts, to put defendants on notice, they were not
12    going to try to use any of that evidence under
13    404(b).
14              And so then, if they wanted to, they had to
15    come back and specifically highlight bad acts that
16    they wanted to get in that they -- that were not
17    evidence that they were going to use to establish
18    enterprise or racketeering activity or those things.
19    And these are the list.  These are the ones that now
20    they're using these under 404(b).
21              Have I now set the stage for these motions,
22    Ms. Jacks?
23              MS. JACKS:  I guess you have.  I'm just
24    confused because they're being called 404(b), but
25    they're also not 404(b).  I don't know.  I mean, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129

```
 1   don't know how they're coming in.  If they're coming
 2   in as part of the crime, then I wouldn't think they'd
 3   be 404(b).  If they're coming in as 404(b), I think
 4   the Government's notice is inadequate, because it
 5   doesn't state the purpose, or link it up in any way
 6   so the Court could make a ruling whether it is or is
 7   not 404(b).
 8            THE COURT:  Are these yours,
 9   Mr. Castellano?
10            MR. CASTELLANO:  They are, Your Honor.  And
11   this is not 404(b).  So the last time we did this, we
12   had a longer list of items.
13            THE COURT:  Right.
14            MR. CASTELLANO:  I told the Court this was
15   not 404(b) evidence.  I think only Christopher Garcia
16   had a prior drug act that would be 404(b).  So what
17   we did is we went through the acts.  The Court said
18   which ones were fair game.  And then by the 22nd of
19   January, we were supposed to tell the defense which
20   ones we were using.  The list before the Court is the
21   list that we're using from that longer list.  And
22   they're not 404(b).  They're intrinsic to the crime
23   charged.
24            THE COURT:  These are?
25            MR. CASTELLANO:  Yes -- well, they're part
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6286

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 130

1    of racketeering activity.

2          The fourth one is related to the Javier

3    Molina murder, and the others are all related to SNM

4    activity, the structure of the organization and

5    racketeering acts.

6          THE COURT:  So, once again, these are not

7    being used -- these are not 404(b) as to Mr. Sanchez.

8    These are bad acts that you think that are res gestae

9    or part of the proof of racketeering activity?

10          MR. CASTELLANO:  That's correct.

11          THE COURT:  Okay.

12          MR. CASTELLANO:  That's going to be the

13    same for each of the shorter lists we submitted to

14    each of the defendants.

15          THE COURT:  All right.  Let's take them one

16    at a time and link them up for me.  Do you want to go

17    first on providing crack cocaine?  Do you want to go

18    first, Ms. Jacks?  Or do you want to hear Mr.

19    Castellano give the justification first as the

20    proponent of the evidence?

21          MS. JACKS:  I think, based on what Mr.

22    Castellano just said, I understand number one.

23          THE COURT:  All right.

24          MS. JACKS:  But it has been brought to my

25    attention that based on plea negotiations with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Garcia that took place over the past few days,

2    the Government may have some potentially Brady

3    information regarding this alleged act.

4         MR. CASTELLANO:  I'm unaware of any Brady

5    activity related to that act, Your Honor.

6         MS. JACKS:  My understanding, there were

7    several versions of plea agreements that were

8    negotiated with Mr. Garcia, in which this act was

9    actually -- I guess, originally contained in the plea

10   agreement, and later stricken because Mr. Garcia

11   apparently provided some information that he was

12   unaware that this situation did actually not occur.

13   He did not provide drugs to Mr. Sanchez in 2005.

14        MR. CASTELLANO:  Mr. Garcia is not the

15   source of that information, Your Honor.

16        MS. JACKS:  But information that would

17   impeach whatever the source of this information is

18   would be Brady information.

19        MR. CASTELLANO:  The statement says

20   Mr. Garcia provided crack cocaine to another person,

21   who, in turn took the drugs into the facility.  So if

22   Mr. Garcia doesn't know what that person did it --

23   we're not focusing on Mr. Garcia.  We're focusing on

24   the person who brought them into the facility, and

25   gave the drugs to Mr. Clark and Mr. Sanchez.  So that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6288

```
 1    is not just focused on Mr. Garcia.

 2            THE COURT:  I guess I'm having a hard time

 3    seeing how that would be Brady material.

 4            MS. JACKS:  Maybe I'll file a motion on it.

 5    We can go forward.  I mean, I think if during plea

 6    negotiation Mr. Garcia gives information that

 7    undermines the credibility of this assertion in this

 8    first paragraph, that that is favorable evidence to

 9    Mr. Sanchez that should be immediately disclosed to

10    him by the Government.

11            MR. CASTELLANO:  Your Honor, I don't have

12    that information.  If Ms. Jacks can tell us what that

13    information is, that Mr. Garcia claims related to

14    this, we might be --

15            THE COURT:  So you don't have any knowledge

16    that during plea negotiations anything was taken out

17    of the plea agreement?

18            MR. CASTELLANO:  I can tell the Court that

19    a number of versions went back and forth.  And I

20    don't specifically recall what Mr. Garcia said about

21    it.  So I'm asking Ms. Jacks to refresh my

22    recollection about what exactly that was.

23            MS. JACKS:  Well, my understanding is in

24    one version of the plea agreement that was sent to

25    Mr. Garcia, this paragraph was contained.  And in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6289

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

```
 1   final plea agreement it was not.  So I'm assuming
 2   there are marked-up versions and there were
 3   discussions regarding this specific situation.
 4            MR. CASTELLANO:  We can check for drafts if
 5   they're out there.
 6            THE COURT:  If that's the case, do you have
 7   any problem producing those?
 8            MR. CASTELLANO:  No.  Mr. Garcia wanted a
 9   few things removed from the factual basis for his own
10   reasons.  So that's --
11            THE COURT:  But you'll look at these to see
12   if this specific allegation was removed?
13            MR. CASTELLANO:  Yes.  If Mr. Garcia had
14   something to say through his attorney about that act,
15   we can do it.  But I seriously doubt Mr. Garcia will
16   know -- he won't claim what the other person said
17   that other person did when he brought it into the
18   facility.  But we'll look.
19            THE COURT:  Okay.
20            MS. JACKS:  I would make the same request
21   as to all plea negotiations with any individual who
22   has pled.  If there are draft plea agreements that
23   were edited, I think those are fair game for
24   discovery to the defense for potential
25   cross-examination, investigation, impeachment.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6290

1          THE COURT:  Well, I do think those would
2     probably fall under Brady, if in fact, things were
3     taken out.
4          MR. CASTELLANO:  They may not be Brady at
5     all.
6          THE COURT:  They may not.
7          MR. CASTELLANO:  We may negotiate over
8     certain facts, and certain things people don't want
9     to admit in the plea agreement going out to the
10    public.  So there are any number of reasons in plea
11    negotiations why things might be added or taken away
12    from documents.
13         THE COURT:  There may be.  But if the
14    defendant was insisting they take out -- I do think
15    they could fall under Brady.  So you may need to
16    either just produce the drafts or look at them to see
17    if they could be Brady material.
18         All right.  So on the first one, you're not
19    contesting the intrinsic nature of that?
20         MS. JACKS:  Well, I understand the theory
21    of admissibility.  It's not 404(b).  They're arguing
22    it's part of racketeering activity.  So I do contest
23    the truth of it.  But in terms of the concept, I get
24    it.  And I understand as to paragraph 2.  Paragraph 3
25    I don't understand how that is any sort of evidence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6291

1    of racketeering activity or res gestae on the

2    offense.

3         THE COURT:  All right.  Do you want to hear

4    from Mr. Castellano, then, first on that?

5         MS. JACKS:  Sure.

6         THE COURT:  All right.  Mr. Castellano?

7         MR. CASTELLANO:  Your Honor, you've heard a

8    long list of bad acts this morning related to the

9    shackling of the defendants.  And so the defense --

10   or the SNM is constantly exerting its power in the

11   corrections system.  And assaulting correctional

12   officers is one of those things.  Especially if they

13   feel disrespected.  They're not going to take the

14   disrespect, they're going to respond in kind.

15        THE COURT:  How are you going to argue, if

16   this evidence comes in, that it goes to either

17   enterprise or to racketeering activity, this

18   particular incident?  How do we know this one was in

19   furtherance of the enterprise, or was just a beef he

20   had that day with a correctional officer?

21        MR. CASTELLANO:  It's in the opening

22   statements to each of the indictments that the SNM

23   exerts its power and authority.  And if they don't do

24   so, they lose respect.  And so that's their place in

25   the prison system.  So it's a system ruled by threats

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492
                                                            e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6292

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136293

1    and exertion of power and violence.  And that is

2    contained in the indictment.

3            THE COURT:  Well, if we don't have

4    something more that tells us whether this is related

5    to SNM activity, I'm going to exclude that bad act.

6            MR. CASTELLANO:  Well, Your Honor, I don't

7    have that report with me.  I'll take a look at it.

8    But the problem is we continue to litigate these

9    things.  The Court has already ruled this was fair

10   game.  The defense objects, and they file another

11   motion that says I strenuously object.  And then

12   we're talking about it again.  The Court has already

13   ruled.  I've already shortened that list.  This goes

14   to the defendants, and now we're taking a second bite

15   at the apple.

16           I can go back and pull reports, and if I

17   have evidence to show that it's SNM-related, I'll

18   move its admission at trial and ask the Court before

19   I do so.

20           THE COURT:  All right.  Approach before you

21   do.  And if there is something that you can bring out

22   that ties it to the SNM, then I'll reconsider.  But

23   right at the moment, let's plan on keeping it out.

24           All right.  Do you want to go to number 4?

25           MS. JACKS:  No, I'm done.  Thank you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6293

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137

1            THE COURT:  The rest of them you understand

2     the theory?

3            MS. JACKS:  I do.

4            THE COURT:  All right.  So I'm going to

5     deny the motion except that one issue, the one issue

6     of the assault, I'll keep out.

7            All right.  Let's go to Mr. Perez' motion.

8     I think we now understand with precision what we're

9     doing here now.

10           Mr. Villa?

11           MR. VILLA:  Thank you, Judge.  So with

12    respect to the first two, I don't have any idea how

13    these are related to the SNM or the SNM enterprise.

14    The information we have from the United States is

15    that Mr. Perez was allegedly validated in the SNM

16    sometime in 2009.

17           The first two acts are crimes, assault, and

18    resisting arrest, which I believe was a misdemeanor;

19    the second was an aggravated battery -- I think that

20    one was misdemeanor, too.  They both occurred in Eddy

21    County on the streets.  I've looked at the Bates

22    numbers that the Government refers to, and they

23    appear to be -- one incident, Mr. Perez is at a bar,

24    and he's got a warrant, and a police officer comes to

25    arrest him and he resists arrest, and has to be

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                       1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6294

```
 1   tased.  It doesn't say anything at all about any SNM
 2   activity whatsoever.
 3           So with respect to the first two, I'd ask
 4   you to exclude those, because I don't think they have
 5   any bearing on the enterprise.  And I don't think
 6   there is any evidence that Mr. Perez submitted those
 7   in furtherance of the SNM enterprise.
 8           Number 3 is sort of --
 9           THE COURT:  Let me get Mr. Castellano's
10   response on the first two.  Mr. Castellano?
11           MR. CASTELLANO:  I'd like to do the same
12   thing here, Your Honor, approach first at trial, if
13   I'm going to move the admission.
14           The officer who tased Mr. Perez grew up
15   with him, so he may -- I haven't been able to dig
16   down further into what the officer recalls about Mr.
17   Perez, and what he knew about him as an SNM member.
18   But the person who tased him actually knows him very
19   well, grew up with him.  So I will inquire further
20   and seek to approach first, if I try to introduce
21   either number 1 or number 2.  I think they stem from
22   the same incident.
23           THE COURT:  Because those are pretty early,
24   as far as Mr. Perez is concerned, are they not?
25           MR. CASTELLANO:  I didn't hear Mr. Villa.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6295

1  Did he say before Mr. Perez was validated, or did he

2  say before he became a member?

3          MR. VILLA:  Well, the information I have is

4  that he was validated by the STIU in 2009.  When he

5  became a member, I don't know what evidence the

6  Government intends to put on.

7          But, again, this is something that happened

8  at a bar in Carlsbad, you know, with an officer

9  arresting somebody who has a warrant, and that person

10  resisting arrest.  Maybe the officer did know him,

11  but I don't know what that has to do with the

12  racketeering.

13          THE COURT:  Well, I guess on the present

14  record, Mr. Castellano is willing to approach the

15  bench.  And if he doesn't have any more evidence than

16  that, I'd be inclined to exclude it.  Does that work

17  for you?

18          MR. CASTELLANO:  It does, Your Honor.  And

19  I will note there is a distinction between when

20  Corrections validates somebody and when somebody

21  becomes a member.  Those are two different things.

22          THE COURT:  That's true.  That's true.  And

23  we recognize that as well.

24          MR. COOPER:  Excuse me, Your Honor.  People

25  on the phone cannot hear Mr. Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6296

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 140

```
 1              THE COURT:  Do you want to grab that mic,
 2   Mr. Castellano.
 3              MR. VILLA:  And I recognize there is a
 4   difference.  But I certainly think, if the Government
 5   is going to approach, they should have some evidence
 6   to put on that Mr. Perez was even potentially a
 7   member of the gang at that point in time, while he's
 8   on the streets of Carlsbad.
 9              And number 3, I guess I'd ask for the same
10   ruling, Your Honor.  What's been provided, referenced
11   in the Bates number there, is an incident report from
12   the Corrections Department about Mr. Perez throwing
13   some food out of his sally port -- or excuse me, the
14   food port on door, and telling some other inmates to
15   do that.  There is nothing associated with that
16   discovery that the Government identifies that
17   suggests this was an SNM-related activity, or done in
18   furtherance of the SNM, as opposed to something is
19   that happens in prison maybe every week.
20              THE COURT:  Thoughts on that, Mr.
21   Castellano?
22              MR. CASTELLANO:  Yes, Your Honor.  There
23   will be testimony by other cooperators that they have
24   done things like this in the past, once they get
25   upset -- let's say the SNM gets locked down or they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    get disciplined in some way, there is often a

2    reaction by SNM members to -- basically, to mess with

3    the corrections officers, and fight back if they

4    disapprove of anything.

5            So the Court will also hear that members

6    often use the rules against the corrections officers,

7    and often do what they can to manipulate the system.

8    And this is one of the things they do.

9            THE COURT:  Focusing on the words "incite

10   other inmates," were there other inmates -- were

11   there other SNM members that were in Mr. Perez'

12   facility or pod, or would that have included other

13   SNM members?

14           MR. CASTELLANO:  I don't have that

15   information.  I gave the Bates stamp number to Mr.

16   Villa.  So the information has been provided to him.

17   If it's in 2010, I'm assuming it's an SNM pod.  But

18   I'd have to go back and look at that report.  But

19   that was provided to Mr. Villa.

20           THE COURT:  I guess I would think, if the

21   other inmates included SNM members, that would be

22   enough to allow the Government to bring that one in.

23   If it doesn't -- and there is no -- if it's just

24   other inmates, then I lean toward not including it.

25           MR. VILLA:  I think that's right, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Honor.

 2             But I think we have to be a little more

 3    detailed.  I think Mr. Castellano just said that

 4    cooperating witnesses will say sometimes, you know,

 5    We were SNM members and sometimes we did that.  And

 6    if someone is going to testify to this specific

 7    incident was that or could have been that, or there

 8    is some evidence to suggest that's it, that's fine.

 9    But I think we have to be careful the cooperating

10    witness saying:  We do this stuff sometimes, and then

11    the Government puts this evidence on without any

12    information that this specific incident was because

13    of that.  Then I think the Court needs to exclude the

14    evidence.

15             THE COURT:  Well, I think, if Mr. Perez --

16    if Mr. Castellano establishes that Mr. Perez and the

17    other inmates that are being talked about include SNM

18    members, I think that would be enough for me to allow

19    this to come in.

20             MR. VILLA:  I think if there is testimony

21    of someone with personal knowledge that that's what

22    was going on at this period of time, I guess I would

23    just like to hear the foundation that the Government

24    lays.

25             THE COURT:  How is this evidence going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

```
 1    be presented, Mr. Castellano?  Is it --

 2              MR. CASTELLANO:  I'm not sure.  I'd have to

 3    go back and look at that document, Your Honor.

 4              THE COURT:  It may be a corrections officer

 5    or something?

 6              MR. CASTELLANO:  Yes.  If this is a report

 7    from the New Mexico Corrections Department, it should

 8    be a corrections report.  And like I said, Mr. Villa

 9    has the Bates stamp number.  I pointed him directly

10    to the report.

11              THE COURT:  But the actual evidence at

12    trial will be a corrections officer?

13              MR. CASTELLANO:  Corrections officer and/or

14    an SNM Gang member.

15              THE COURT:  All right.  We'll just have to

16    maybe ask him what the source of his information is.

17    But if there is SNM people that are properly included

18    under "other inmates," I'd be inclined to allow it.

19    Otherwise, probably keep it out.

20              MR. VILLA:  All right.

21              THE COURT:  All right.  Anything else on

22    your motion then?

23              MR. VILLA:  That's all.

24              THE COURT:  Thank you, Mr. Villa.

25              All right.  Why don't we take our lunch
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6300

1    break.  Be back in about an hour, and see if we can

2    get a good afternoon done.

3              (The Court stood in recess.)

4              THE COURT:  All right.  Let's go on the

5    record.  Every client has got a lawyer.  Look around

6    the room, make sure that everybody has got an

7    attorney.

8              All right.  I understand there is a

9    conflict, potential conflict issue with Mr. Mitchell

10   having represented Mr. Sanchez.  So who should go

11   first?  Do you want to go first, Mr. Jewkes?

12   Ms. Jacks?

13             Let's wait till Mr. Armenta gets here.

14             (A discussion was held off the record.)

15             THE COURT:  All right.  Mr. Jewkes,

16   Ms. Jacks, do you want to explain the issue for me?

17             MR. JEWKES:  Yes, Your Honor.  The

18   Government raised the issue that, years ago, Gary

19   Mitchell, who now represents Jerry Armenta, a

20   cooperating witness for the Government, represented

21   Mr. Sanchez for a period of a few years handling

22   Daniel and Ronald Sanchez' appeal to the state court

23   in New Mexico, appellate court.  And that's why the

24   Government brought this to the attention of the Court

25   regarding whether or not there is a conflict of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6301

```
 1   Mr. Mitchell representing Jerry Armenta.
 2            THE COURT:  All right.  And I understand
 3   that Mr. Sanchez will not waive any conflict?
 4            MR. JEWKES:  He says he does not want to
 5   waive the conflict -- potential conflict.
 6            THE COURT:  Have you evaluated in any way
 7   the conflict and determined whether one exists or
 8   not?
 9            MR. JEWKES:  Yes, Your Honor.  Quite
10   frankly, I don't see a major conflict there.
11   Although Mr. Sanchez and Mr. Mitchell did have
12   privileged communications, confidential
13   communications, where they discussed, I understand,
14   facets of Mr. Sanchez' life.
15            THE COURT:  All right.  Anything further,
16   Mr. Jewkes?
17            MR. JEWKES:  No, sir.
18            THE COURT:  All right.  Thank you,
19   Mr. Jewkes.
20            Ms. Armijo, I probably should have started
21   with you.  I had forgotten that y'all were raising
22   this issue.
23            MS. ARMIJO:  Your Honor, we did issue -- we
24   did make defense counsel aware of it years ago,
25   because we believed that, if anybody feels that they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6302

```
 1   have a conflict, then they should be the ones to
 2   raise the issue in a timely manner.  And that wasn't
 3   done.  Our belief was that -- what was told was it
 4   was a nonissue, so to speak.
 5             Mr. Sanchez, amazingly, waived the issue as
 6   to the same case that Billy Blackburn represented him
 7   on.  And he waived that issue as to Billy Blackburn.
 8   But now, as to Mr. Mitchell, he doesn't want to waive
 9   the issue.
10             I don't believe -- the incident I don't
11   believe, but I'll let Mr. Mitchell speak to that --
12   is SNM related.  I believe he represented him on
13   appellate issues.  It's nothing that we're going to
14   be bringing in.  So it's our contention that it's not
15   the same subject matter, so that there is no
16   overlapping for the Court to decide, much like the
17   Court made the decision with the Marc Lowry conflict,
18   we think that this issue is a potential issue to
19   bring to the Court's attention to make a ruling on
20   for any 2255 issues.  But we don't feel that it is
21   the same subject matter which would warrant a waiver
22   from Mr. Sanchez.  But I will let Mr. Mitchell speak
23   on that.
24             THE COURT:  All right.  Thank you, Ms.
25   Armijo.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6303

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 147 6304

```
 1              Mr. Mitchell.

 2              MR. MITCHELL:  Good afternoon, Your Honor.

 3              THE COURT:  Mr. Mitchell.

 4              MR. MITCHELL:  Thank you.

 5              Twenty-three years ago, after Mr. Daniel

 6   Sanchez and his brother, Ronald Sanchez, were

 7   convicted in a jury trial of first degree murder and

 8   attempted first degree murder, I was asked to handle

 9   the appeal, which is a direct appeal to the New

10   Mexico Supreme Court.  I was not the trial attorney.

11   And in 1994, I was requested to begin that action,

12   and did by obtaining the record, the pleadings filed

13   in the district court case, which was out of -- Judge

14   Pope was the district judge.  It was out of Valencia

15   County.  And venue had been changed to Cibola County,

16   in Grants, where the trial was held.

17              So, in reviewing the pleadings and

18   obtaining the record, we perfected a notice of

19   appeal.  For whatever reason, I think I was the one

20   who ended up filing it.  And then, in those days, the

21   rule hadn't changed, so I did the docketing statement

22   as well from the record of the trial.

23              The issues raised centered around the

24   district attorney's victim advocate's sister sitting

25   on the jury was one major issue.  Another issue was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6304

1    the demand for an expert witness by the defense.

2    Even though they didn't have one, they wished to have

3    one and obtain a continuance.  And a third issue was

4    prosecutorial misconduct during closing argument.

5    And, of course, a fourth one raised was ineffective

6    assistance of counsel.

7            So I took that issue to the Supreme Court,

8    filed the brief in chief, and filed the reply brief

9    to the State's answer brief.  And in July of 1995,

10   the New Mexico Supreme Court issued a decision.  The

11   Court can find that at 901 P.2d 1995 -- or I mean,

12   178 -- or 1995 NMSC 53.

13           The opinion of the Supreme Court sets forth

14   the facts in rather good detail.  It did not involve

15   a gang shooting.  It involved a fight at a local bar,

16   and an uncle of Daniel and Ronald's, perhaps being in

17   that fight, and the repercussions of what took place

18   with a family named Lovato after that evening.

19           Their defense rested upon an alibi defense.

20   And according to the record in this case, they called

21   a number of witnesses, particularly familial

22   witnesses, that gave them an alibi.  And it went to

23   the jury.  The defense attorneys representing at

24   trial filed a motion for a new trial which set forth

25   the major issues, that we ended up litigating before

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6305

1    the Supreme Court.

2              So after 1995, because of the decision,

3    which gave a pretty subtle hint that perhaps at some

4    point in time some more evidence would be obtained,

5    and a writ of habeas corpus filed, another attorney

6    took that over -- I believe, Mr. Blackburn -- and

7    that's an issue that you've decided, and that's been

8    before you already.  As I recall, Mr. Blackburn took

9    that over and handled that writ.

10             I lost contact with everybody after 1995,

11   when another attorney took over the petition for writ

12   of habeas corpus.  So my last contact in this case,

13   frankly, I believe was in 1995.

14             I attempted to go back and search my files

15   to see what contact I had, if any, directly where I

16   sat down and went over the facts with anybody.  But

17   to be perfectly honest, what I have left in my files

18   are the appellate pleadings that I did, and the

19   decision of the Supreme Court, things of that

20   particular nature, which are on record before the

21   Supreme Court.  That's what I can indicate to the

22   Court.

23             As to any conversations directly with

24   either client, I don't have a record one way or the

25   other.  In 1995, it was the year that we switched

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6306

 1    everything over to -- in my office -- to computerized

 2    systems, and started to go paperless after that,

 3    except for the hard copies of the files that were

 4    used for court, which we destroy after we've scanned

 5    those files in.  This file was not scanned into that

 6    computer system.  So that's the big break.  So I have

 7    no information one way or the other of any calls, or

 8    any conversation or notes regarding conversations,

 9    nor do I, frankly, recall those conversations.

10            But the opinion of the Supreme Court tracks

11    what I said in the docketing statement, as it relates

12    to the facts, and it discusses each issue that I

13    raised on appeal for both Daniel and Ronald Sanchez.

14            THE COURT:  So it was a bar fight and that

15    was the conviction?

16            MR. MITCHELL:  It was.  It involved -- I

17    can tell you by looking at the -- I don't want to get

18    the uncle's name incorrect.  It involved an uncle

19    that had been at a bar in Los Lunas.  Yes, his name

20    is immaterial at this time, but it did not involve --

21    these were all young men at the time -- and it did

22    not involve gang affiliation.  It involved, according

23    to the State's representation, an incident with the

24    Lovatos at a bar called Red Carpet, where they got

25    into a fight.  And then, according to the State, they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6307

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151 of 308

```
 1    claimed that Ronald and Daniel then came over in a
 2    car -- there was a dispute about the car -- but came
 3    over in a car to the Lovatos' house, and a gunfight
 4    ensued.
 5              THE COURT:  Did it ever come up -- was
 6    there any discussion -- was there anything to
 7    indicate it was SNM related?
 8              MR. MITCHELL:  No, sir.  There is nothing
 9    in any document that I have with any indication on
10    that, and there is nothing in the record, and there
11    is nothing in the Supreme Court decision either.
12              THE COURT:  And you don't recall any
13    conversations with Mr. Sanchez that's not in the
14    court pleadings or filings?
15              MR. MITCHELL:  The facts that I've given, I
16    do not.  That doesn't mean -- I'm not saying they
17    didn't have it, because I normally talk to my
18    clients.  But, frankly, I just don't recall anything.
19    This was a -- what I would call a family type
20    dispute, and, of course, Ronald and Daniel claimed
21    that they were not there.  But the State's witnesses
22    said otherwise.
23              THE COURT:  All right.
24              MR. MITCHELL:  I guess I should add that I
25    have advised my client, Jerry Armenta, of this issue,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   and he and I talked about it some time ago, and more
 2   recently.  He didn't see a conflict.  The Government
 3   knew about this.  Mr. Blackburn and I knew about it.
 4          The first time I'd seen Daniel again after
 5   1995, I believe, was here in Las Cruces in the first
 6   time we all gathered together in the courtroom.  And
 7   he greeted me by just nodding his head and waving,
 8   and I did the same, and that was the extent of it.
 9          THE COURT:  But you recalled representing
10   him as soon as you saw his name or saw him in the
11   courtroom?
12          MR. MITCHELL:  No.  What happened is, in
13   the state case -- which most of the attorneys are
14   familiar with, the way this started out -- I was
15   representing Mr. Armenta, court-appointed through the
16   New Mexico Public Defender Department in a murder
17   case out of Southern New Mexico Penitentiary.
18          And during that time period, part of that
19   file included an interview of Mr. Daniel Sanchez by
20   authorities.  And in that interview there was nothing
21   to indicate that he saw or heard anything, even
22   though he was in the pod and in a particular
23   position.  We had not -- because of the way we were
24   working on that case, we had not conducted an
25   interview of him.  So at the time, I didn't think too
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 153 6310

1  much about it, although we keep an extensive client

2  list -- because I do so much work in the criminal

3  world -- keep an extensive client list.  But we had

4  nine Daniel Sanchezes listed.  So at that time, I

5  didn't give much thought to it, until the federal

6  case came about, and then, in conversations with the

7  counsel, I realized I better go back and check and

8  see if this was the same Daniel Sanchez that I

9  represented, and indeed it was.

10         THE COURT:  But when you made that

11  realization, you underwent an analysis and determined

12  that you didn't --

13         MR. MITCHELL:  There was no conflict.  I

14  did.  I went back and pulled everything I could get

15  my hands on that we had; reread the Supreme Court

16  decision; reread my docketing statement, which is

17  generally what everything stems from; reread the

18  motion for a new trial that had been filed.

19         And in those days, I don't believe there

20  was a transcript of that trial.  It meant I had to

21  listen to tapes, which is the way we were doing it in

22  state court at the time.  And if there was a

23  transcript, I don't have that transcript of that

24  trial anymore.  So I suspect it was tapes,

25  audiotapes, which is the way I would have done it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6310

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154 6311

1          But that's what I was hired for was to

2    perfect the appeal, which I did.

3          THE COURT:  All right.  Stand right there,

4    Mr. Mitchell.  And Mr. Sanchez, you need to listen to

5    your counsel here.  They may not want you to speak,

6    and if they don't, I think they are the ones that

7    should make that call, but I do give you an

8    opportunity to say anything that you want to say to

9    the Court.

10          MS. JACKS:  Your Honor, I would like to say

11    something to the Court.

12          THE COURT:  You may.

13          MS. JACKS:  I'd like to ask Mr. Mitchell a

14    few questions.

15          I'll say right from the start, we don't

16    contest the issue about the homicide, it had nothing

17    to do with any sort of gang activity, and that was

18    never our position.  So do you want me to ask him

19    from here?

20          THE COURT:  Yeah, direct them to the Court.

21    And, Mr. Mitchell, if you'll answer the questions.

22          MR. MITCHELL:  I certainly shall.

23          MS. JACKS:  Mr. Mitchell, during the time

24    that you represented Mr. Sanchez, was he housed in

25    New Mexico State Prison?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.                                  1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

DNM 6311

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

1          MR. MITCHELL:  I do not know for sure.

2          MS. JACKS:  Well, he was convicted of

3    murder in the State of New Mexico, right?

4          MR. MITCHELL:  That's correct.

5          MS. JACKS:  Where else would he be housed

6    but the state prison?

7          MR. MITCHELL:  Well, let me point out that

8    I've done a lot of that work over the years, and

9    there was a time period when we were transferring

10   people out of the penitentiary, and making trades

11   with other states.  And I would assume, but I do not

12   know enough specific facts to remember, but I would

13   assume he was housed in the New Mexico State

14   Penitentiary.

15         MS. JACKS:  Or some other prison.

16         MR. MITCHELL:  Yes.  He was in custody.

17         MS. JACKS:  He was in custody.

18         MR. MITCHELL:  Oh, yes.

19         MS. JACKS:  And did you meet and confer

20   with him on multiple occasions while he was in

21   custody to discuss his case?

22         MR. MITCHELL:  I do not think so.  If we

23   talked, it was one time in person.  But this was an

24   appeal that depended upon the record.  As I recall,

25   certain family members contacted me.  And that's the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6312

```
 1   way I became involved.  And in those days, we tried

 2   to make arrangements to visit with one another,

 3   either in person or via the telephone.  It was a

 4   little bit more lax in those days, so we could get

 5   more things done than we can today.

 6           MS. JACKS:  Did you continue to represent

 7   Mr. Sanchez, after the appeal, on the petition for

 8   habeas corpus?

 9           MR. MITCHELL:  I have nothing in my files

10   to indicate I continued to represent him.  And I

11   honestly believe that they contacted Mr. Billy

12   Blackburn, and he did the writ or he worked on that

13   aspect.

14           MS. JACKS:  Mr. Mitchell, do you recall

15   that, in fact, you did agree to file a habeas

16   petition for Mr. Sanchez and missed the filing

17   deadline?

18           MR. MITCHELL:  There was no filing deadline

19   on a writ of habeas corpus in the State of New

20   Mexico.  And there hasn't been ever, not at least

21   during modern times, a deadline.

22           But talking about a writ of habeas corpus

23   would not have been unusual for me after we got the

24   decision from the Supreme Court, because I would have

25   recommended that they pursue that, and that they file
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6313

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157

1   a petition for writ of habeas corpus because of

2   language contained in the Supreme Court decision.

3          MS. JACKS:  Did you interview witnesses to

4   the homicide that had not been interviewed by trial

5   counsel?

6          MR. MITCHELL:  I cannot speak to that one

7   way or the other, because I do not have those

8   records, and I do not have a personal recollection of

9   interviewing witnesses.  Most of the time, I would

10  assign an investigator to do that, so that I don't

11  end up with a conflict with these witnesses.  And if

12  I had an investigator at the time, that would have

13  been one of two people.  And I haven't contacted them

14  to see if they remember doing -- well, one is

15  deceased, and the other still works as an

16  investigator.  But I haven't contacted him to see if

17  he did any work on the case.

18         MS. JACKS:  Specifically, Mr. Mitchell, did

19  a third suspect come to your office and confess to

20  committing the homicide that Mr. Sanchez and his

21  brother were convicted of?

22         MR. MITCHELL:  I do not recall that, no.  I

23  do not recall that.  I mean, if -- frankly, I would

24  have to rely upon the person that filed the writ,

25  because if that had occurred, I would have given them

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6314

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158

```
1    that information, had I had it.  I just don't have

2    enough in the background to tell you one way or the

3    other.

4              MS. JACKS:  During the time that you

5    represented Mr. Sanchez, and Mr. Sanchez was in

6    prison, did Mr. Sanchez ever confer with you about

7    any sort of incident in the prison where he was

8    charged with a new case?

9              MR. MITCHELL:  I do not have a recollection

10   of that.  And my files at my office do not reflect

11   that I represented him again except in this case.

12             MS. JACKS:  Did Mr. Sanchez, in fact,

13   confer with you and attempt to retain you on a case

14   filed in Los Lunas, New Mexico, sometime during the

15   period of your representation of him -- oh, sorry,

16   Las Cruces -- sometime during the period of your

17   representation?

18             MR. MITCHELL:  A civil rights action?  Was

19   it a criminal case or a civil rights action?

20             MS. JACKS:  A criminal case.

21             MR. MITCHELL:  He may have or he may not

22   have.  I simply do not have anything in my files to

23   indicate that.  That doesn't mean he didn't talk to

24   me about it.  It means I just don't have any record

25   of it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6315

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

1           MS. JACKS:  I don't have anything further

2    right now.

3           THE COURT:  Anything further, Ms. Jacks?

4           MS. JACKS:  No, not right now.

5           THE COURT:  Does Mr. Sanchez want to say

6    anything?

7           MS. JACKS:  If I may just have a moment.

8           THE COURT:  Certainly.

9           MS. JACKS:  I have one more question for

10   Mr. Mitchell, I'm sorry.

11          Mr. Mitchell, with respect to the habeas, I

12   asked you about a State filing deadline.  Did you

13   miss a federal filing deadline from the ADPA Act on

14   Mr. Sanchez' habeas that expired in 1996, one year

15   after his appeal was over?

16          MR. MITCHELL:  I have nothing in the files

17   to indicate one way or the other.

18          MS. JACKS:  And when you stopped

19   representing Mr. Sanchez, did the representation then

20   go directly to Mr. Blackburn?

21          MR. MITCHELL:  I know Mr. Blackburn took

22   over representation at some point in time, and I

23   thought he worked on the habeas.  But that's just

24   from memory.

25          MS. JACKS:  And he took the case over from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 160

 1  you?

 2          MR. MITCHELL:  That's what my memory

 3  reflects.  I do not have a file to verify that one

 4  way or the other.

 5          MS. JACKS:  Thank you.

 6          THE COURT:  Anything else, Ms. Jacks?

 7          MS. JACKS:  What I would represent to the

 8  Court, based on my conversations with Mr. Blackburn,

 9  is that Mr. Blackburn took the case over sometime in

10  2002, and filed the federal habeas in 2002, and he

11  took that representation over from Mr. Mitchell.  So

12  it's our information that Mr. Mitchell continued to

13  represent Mr. Sanchez until that time period.

14          The other thing is that one of the claims

15  in the habeas was, in fact, ineffective assistance of

16  Mr. Mitchell, based on the fact that the habeas

17  petition was not filed within one year of the appeal

18  being finalized, and therefore, missing the

19  federal -- the new federal deadline under the ADPA.

20          The other thing, is I think during that

21  time period, Mr. Sanchez' recollection is that he did

22  confer with Mr. Mitchell during the entire time

23  period of that representation that lasted well past

24  1995.

25          And the Court -- all the Court has to do is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6317

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 161

```
 1    look at the indictment in 1613 case, charging the

 2    racketeering conspiracy.  There are numerous acts

 3    that are alleged in that indictment regarding prison

 4    misconduct.  And, specifically, one of them was

 5    actually filed as a case here in Las Cruces.

 6           THE COURT:  Well, is there anything in your

 7    mind, though, that indicates that this matter, and

 8    those matters, even if you extended them beyond what

 9    Mr. Mitchell's memory is, are the same matters or

10    substantially related?

11           MS. JACKS:  Well, it's my understanding

12    that Mr. Sanchez conferred with Mr. Mitchell

13    regarding certain prison misconduct that is, in fact,

14    at issue in this -- in the related case, 1613, which

15    is alleged, at least by the Government, to be SNM

16    racketeering activity.

17           So I think that's the problem we have.  I

18    mean, every time Mr. Sanchez has done anything wrong

19    in prison, the Government claims that that's

20    racketeering activity in furtherance of the SNM

21    enterprise.  And based on the information that

22    Mr. Jewkes and I have, Mr. Sanchez conferred with Mr.

23    Mitchell in attorney-client conversations about

24    certain of that misconduct that is, in fact, alleged

25    in the indictment.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6318

```
 1              THE COURT:  Well, that's a little bit
 2    different, though, the question of substantially
 3    related.  I mean, it doesn't seem that the matters in
 4    which Mr. Mitchell did testify -- or did represent
 5    Mr. Sanchez are the same or substantially related.
 6              MS. JACKS:  Well, if you are talking about
 7    the appeal of the murder case, I would agree with
 8    you.  But I also think that, when somebody is
 9    represented by an attorney, and then confers with
10    that attorney confidentially about representation on
11    some new matter, that that is protected by
12    attorney-client privilege, and that is substantially
13    related, based on what my information is and what the
14    indictment is.
15              THE COURT:  Well, I think that's a
16    different test.  I mean, whether it's -- there is the
17    component of confidential information.  But I'm
18    not -- but that's not the same as the substantially
19    related test.
20              MS. JACKS:  And I agree.  And I think
21    that's for the Court to determine.  All I can do is
22    provide the Court with information about the nature
23    of the reason that the conflict -- or what Mr.
24    Sanchez is not going to waive, or what we believe to
25    be a conflict.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6319

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163

 1            And to respond to Ms. Armijo's point, Mr.

 2    Sanchez did not have confidential communications with

 3    Mr. Blackburn.  And that was why -- and Mr. Blackburn

 4    is not representing a cooperator.  And that's why Mr.

 5    Sanchez felt comfortable in waiving that conflict.

 6    But it is a different light with Mr. Mitchell.

 7            THE COURT:  All right.  Does Mr. Sanchez

 8    want to say anything?

 9            MS. JACKS:  No.

10            THE COURT:  All right.  Ms. Armijo.

11            MS. ARMIJO:  Your Honor, I guess they're

12    not contesting that the matter that he represented

13    him on, from 1992, is not SNM.  And there is clearly

14    a difference of opinion as to the conversations.

15            But the important thing here, which is

16    different from the Mike Davis situation, is that that

17    team -- and Mr. Davis was going to be -- and

18    initially he said he personally wanted to

19    cross-examine his former client.  In this situation

20    Mr. Mitchell is not going to be cross-examining Mr.

21    Sanchez at all.  His client has pled.  And so there

22    is no issued as to him using any information he

23    obtained to cross-examine his former client, because

24    it's just not going to exist.

25            But we believe that it's not substantially

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 6320

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 164

```
 1   related, and also given the fact that his client pled

 2   and is not going to be cross-examining him, that it

 3   is -- that the Court should not excuse Mr. Mitchell.

 4   And additionally -- I guess that's all I have, Your

 5   Honor.

 6             THE COURT:  All right.  Thank you, Ms.

 7   Armijo.

 8             Ms. Jacks.

 9             MS. JACKS:  I just have one thing to add

10   that I forgot to bring to the Court's attention.  I

11   think there has been some insinuation that somehow

12   Mr. Sanchez has sat on this, or didn't bring it to

13   the attention of the prosecution.  It's my

14   recollection -- and I just conferred with

15   Mr. Jewkes -- that prior to my appointment on this

16   case, in February of 2016, Mr. Jewkes had brought the

17   issue to Ms. Armijo, I believe very shortly after the

18   arraignment in December of 2015.

19             THE COURT:  All right.

20             MS. JACKS:  So it wasn't brought to the

21   Court.  But the prosecution team was made aware of

22   situation.

23             THE COURT:  All right.  Anyone else on this

24   issue?

25             Well, I'm going to glance at the rules on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6321

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165

1  confidential information.  But it doesn't seem to me

2  that they are the same matters -- that Mr. Mitchell

3  did not represent Mr. Sanchez on the same matter or

4  matters that he's representing Mr. Armenta.  And they

5  don't seem to be substantially related.

6          I'll have to look at the confidential

7  information prong of that.  But it seems to me that

8  we're not in any danger of Mr. Mitchell using any

9  confidential information in an unfair way, or any way

10  that would prejudice Mr. Sanchez, because he simply

11  doesn't, at the present time, have any of that

12  information.  He's not going to be cross-examining

13  him.  So it's hard to imagine a situation where Mr.

14  Sanchez would be prejudiced.

15          So at the present time, I'm going to deny

16  any request to disqualify Mr. Mitchell.  I'll take a

17  little bit of look at the rules on the confidential

18  information side, but I think that my analysis will

19  be sufficient to satisfy that prong.

20          I do want to engage in a colloquy with Mr.

21  Armenta to make sure that he doesn't have concerns.

22  So, Mr. Armenta, I'm going to ask you some questions

23  here to make sure that you're comfortable with Mr.

24  Mitchell continuing to represent you.  Do you

25  understand that you have a right to a conflict-free

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6322

```
 1    counsel?  By that I mean that you have a right to a
 2    counsel that represents only you, doesn't have any
 3    divided loyalty, or anything that would keep him from
 4    being a fully zealous advocate for you?
 5              THE DEFENDANT:  Yes, I do.  I understand.
 6              THE COURT:  And do you understand, you've
 7    listened here in the courtroom to the facts
 8    surrounding Mr. Mitchell's previous representation of
 9    Mr. Sanchez, which I've determined was in an
10    unrelated criminal case.  Do you understand all those
11    facts?
12              MR. ARMENTA:  Yes, sir.
13              THE COURT:  Is there anything you need to
14    talk or find out or ask about to make an informed
15    decision about what that prior case was?
16              MR. ARMENTA:  No, I do not.  I don't see
17    any conflict or anything that would get in the way
18    there.
19              THE COURT:  All right.  But you understand
20    Mr. Mitchell's prior representation of Mr. Sanchez?
21              MR. ARMENTA:  Yes.
22              THE COURT:  And do you understand that Mr.
23    Mitchell may have duties of loyalty stemming from his
24    previous representation of Mr. Sanchez?  I mean, he
25    was a former client, so he has some duties of loyalty
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6323

```
 1   to him?
 2            MR. ARMENTA:  Yes, I do.  I understand.
 3            THE COURT:  And do you understand that Mr.
 4   Mitchell's duties to Mr. Sanchez may impact -- I
 5   don't see how they would at the present time, but we
 6   don't know how things develop -- may impact his
 7   representation of you, should he recall some
 8   pertinent information that he learned during the
 9   course of his representation of Mr. Sanchez; do you
10   understand that something like that could happen?
11            MR. ARMENTA:  Yes, sir.
12            THE COURT:  And do you understand there is
13   a risk that Mr. Mitchell will have to choose at that
14   time between his loyalty to Mr. Sanchez and his duty
15   to zealously advocate for you?  He may have to make a
16   decision if something pops up in his head or some
17   information comes to the attention of the Court.
18            MR. ARMENTA:  I understand.
19            THE COURT:  And if Mr. -- I'm trying to
20   think of any scenario here.  There is not going to be
21   a point where I can see that Mr. Mitchell may be
22   forced to cross-examine Mr. Sanchez.  But if, for
23   some unforeseen reason that scenario occurred, do you
24   understand his duty of loyalty to Mr. Sanchez might
25   affect his performance on your behalf?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6324

```
 1            MR. ARMENTA:  Yes, sir, I do.

 2            THE COURT:  Additionally, Mr. Mitchell's

 3   duty to Mr. Sanchez may affect some strategies,

 4   arguments regarding relative culpability, or

 5   something like that.  I'm just trying to think

 6   through with you how it could come about.  Do you

 7   understand that something like that could come about?

 8            MR. ARMENTA:  Yes, sir.

 9            THE COURT:  Mr. Mitchell, I had floating

10   around a waiver, a written waiver.  Do you have that

11   waiver?  Has anybody given you a copy of it?

12            MR. MITCHELL:  I do not have that waiver.

13   I can obtain one or procure one myself.

14            THE COURT:  Several have the waiver that I

15   used here, and they're on file.  Maybe Ms. Standridge

16   can dig one up before you leave, and you can go over

17   it and have Mr. Armenta sign it.

18            MR. MITCHELL:  Yes, sir.

19            THE COURT:  Mr. Armenta, knowing that a

20   conflict may arise in the future, and the risk

21   associated with such a conflict, do you still wish to

22   waive that conflict and continue with Mr. Mitchell as

23   your attorney?

24            MR. ARMENTA:  Yes, I do.

25            THE COURT:  So the form that I'll ask you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6325

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 169 of 326

 1   to look at is going to basically say that.  And, if

 2   you agree that's the case, if you'll sign that

 3   document, and Mr. Mitchell will then file it with the

 4   Court.  Okay?

 5            MR. ARMENTA:  Okay.

 6            THE COURT:  All right.  Anything else on

 7   that matter?  All right.  Thank you, Mr. Mitchell.

 8            MR. MITCHELL:  Thank you, Your Honor.

 9            THE COURT:  All right.  I think we were

10   about to take up the motion in limine to exclude

11   purported 404(b) evidence that Mr. Herrera had filed.

12   And I believe that is two incidents.  I don't have

13   the letter, but it's in the body of the motion.

14            Mr. Maynard, are you going to argue these?

15            MR. MAYNARD:  Yes, Your Honor.

16            THE COURT:  All right.

17            MR. MAYNARD:  And I think that the issues

18   are similar to another motion that was heard just a

19   while ago --

20            THE COURT:  Okay.

21            MR. MAYNARD:  -- this morning.

22            First of all, the letter, the notice that

23   we got from the Government the other day referred to

24   bad acts.  It didn't say specifically 404(b).  But

25   since it just said generically bad acts in the motion

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6326

 1   that I drafted, and that was filed, I referred to

 2   404(b).

 3        THE COURT:  It looks like they're saying

 4   they're not coming under 404(b).  They're going to

 5   use this evidence to prove racketeering activity and

 6   enterprise.

 7        MR. MAYNARD:  From what I was hearing this

 8   morning, and in thinking about it, I'm thinking

 9   that's the theory.  I'm not sure.  And that can be

10   clarified this morning.  But it involves an act --

11   alleged possession of a shank, and assault on a

12   corrections officer in 2006 -- which is about eight

13   years before the charged offense -- and attempting to

14   introduce drugs into the prison facility in 2011.

15        And attached to the notice that we received

16   from the Government pursuant to our earlier request

17   for notes -- and of course, this was discussed in

18   December at another juncture, when there was a long

19   list.  The Government responded with a shorter list.

20   And it was accompanied by documentation from the

21   Department of Corrections.  And from my review of the

22   documentation, I don't see any connection or mention

23   of the words or initials Syndicato de Nuevo Mexico,

24   or SNM.  And I just don't see how this could be

25   shown -- I don't see any showing of foundation that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6327

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171328

```
 1    it's an enterprise act.  So it's that issue again.
 2              THE COURT:  Mr. Castellano, do you want to
 3    address those two?
 4              MR. CASTELLANO:  Yes, Your Honor.  Let me
 5    find the specifics here.  That particular act, if I
 6    recall correctly, the corrections officer opens up
 7    the -- I think the food port, and Mr. Herrera strikes
 8    out at the corrections officer, and ends up cutting
 9    the officer on the leg, which would be consistent
10    with our theory about violence in the SNM and
11    corrections officers.
12              But also on the paperwork there is an
13    indication that the advocate for Mr. Herrera on that
14    incident was Robert Martinez, who is an SNM Gang
15    member.  So usually in the Corrections Department,
16    when there is disciplinary action, the inmates can
17    have an advocate for them.  There is another inmate
18    who, in essence, serves as an attorney to represent
19    them.  And in that case, he picked another gang
20    member who was Robert Martinez, also known as "Baby
21    Rob."  So there is another tie there regarding the
22    SNM.
23              In addition, I think, if I recall
24    correctly, Mr. Martinez and Mr. Herrera, on another
25    occasion, agreed to assault corrections officers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6328

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172

```
 1    They spoke together, and each one said, I'll assault
 2    one, you assault the other one.  And that's an
 3    occasion different from the one on June 30th of 2006.
 4    So they knew each other.  They associated together.
 5    And on another occasion agreed to assault corrections
 6    officers.
 7            THE COURT:  Well, I guess I would be
 8    inclined to let you bring out the -- the
 9    representation by an SNM Gang member was number 1, or
10    was that number 2?
11            MR. CASTELLANO:  That was the first one.
12    So the June 30, 2006 allegation regarding possession
13    of shanks, I believe Mr. Herrera had shanks under his
14    desk, and hidden in his shoes.
15            And the other issue was shanks in the SNM,
16    is that they were routinely required or expected to
17    carry shanks in order to basically do battle; either
18    defend themselves or attack other inmates.  So it is
19    not unexpected that SNM Gang members would have
20    shanks.
21            And then, in that same incident, he elected
22    to have Mr. Martinez serve as his advocate.  I can
23    tell from the paperwork it looks like Mr. Herrera may
24    have waived the hearing.  So I don't believe that Mr.
25    Martinez actually ever did show up as an advocate,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6329

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173

173

```
1   because I think the disciplinary hearings were

2   waived.

3           But then there is -- on another occasion

4   those two were together and each agreed to assaults,

5   assault a corrections officer.

6           MR. MAYNARD:  If I may --

7           THE COURT:  Yeah, it sounds like that might

8   be enough for this to come in, if they're going to

9   get that evidence in that all SNM members are

10  required to carry a shank.

11          MR. MAYNARD:  Well, now, there is a big

12  leap in terms of some implications or inferences to

13  be made from that allegation.  And I don't see a

14  showing in this particular case that the possession

15  of the shank was an SNM activity on his part.

16          What I am hearing is that the bad act, or

17  rather the enterprise act, was choosing another gang

18  member to be representing him.  That is another

19  stretch entirely, and brings in, by reference, a bad

20  act that is probably not an SNM activity.  I mean, I

21  haven't yet heard this theory.  And it may come out

22  in testimony, I guess, if the Court allows it.  But

23  is it an SNM activity or an enterprise activity to

24  have another member of the SNM or a member of the SNM

25  to represent you in a disciplinary proceeding?  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6330

1    think not.

2          THE COURT:  Well, it may just show

3    membership, how they work together, those things.  I

4    think it might be marginal evidence of that.

5          MR. MAYNARD:  But it is going to make it

6    difficult to put in the enterprise act of having an

7    SNM member represent you, without making reference to

8    the alleged bad act, bad enterprise act.

9          THE COURT:  I well, I guess I'm inclined to

10   think that if the Government is going to put on

11   evidence that everybody is required to carry a shank,

12   and there is evidence that Mr. Herrera carried a

13   shank, that that's enough for that evidence to come

14   in, that incident.

15         MR. MAYNARD:  Now, I know this is territory

16   for cross, arguably, but does that mean if he doesn't

17   have a shank, he's not a member?  I mean, that's a

18   very broad claim on the part of the Government.

19         THE COURT:  All right.  Do you want to talk

20   about the second incident any?

21         MR. MAYNARD:  That involves allegations of

22   introducing drugs into the facility.  Again, I don't

23   have any information from the specifics that were

24   disclosed, that is the Department of Corrections'

25   documentation that accompanied that disciplinary



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6331

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 175 6332

 1   proceeding, that it was gang related.

 2            And, again, this is getting very slippery

 3   here, where the Government is going to allege,

 4   without a clear foundation, I believe, that every

 5   time a bad act is committed, there is a clear green

 6   light to make the inference that it's a gang

 7   activity.  But I'm in the dark about the connection.

 8            THE COURT:  Well, I think they're going to

 9   prove that's a major activity of the SNM members is

10   their drug activity.  So I'm going to allow those two

11   occurrences, the Government to prove those up.

12            MR. MAYNARD:  Your Honor, I would just ask

13   that the Court insist on a foundation before the

14   evidence of the acts themselves start to occur.

15            THE COURT:  All right.  Lay some foundation

16   for them.  But I'm inclined to allow them, if you

17   represented accurately what you're going to do with

18   them.

19            MR. CASTELLANO:  We will, Your Honor.

20            And as a preview for the Court, Carlos

21   Herrera was known be someone who could bring drugs

22   into the facilities.  And one of the people who

23   helped him bring drugs in was his mother.  She was

24   known to many gang members to be somebody who would

25   help supply the gang with drugs.  And on this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6332

```
1    occasion, his mother was implicated at the facility.
2    So she was also there at the time.  So it's
3    consistent with what other people will say about Mr.
4    Herrera bringing drugs in for the organization, and
5    his mother also being involved.
6             In addition, in the bad acts I mentioned
7    earlier regarding Mr. Baca, he, himself, comments
8    that another member owed Mr. Herrera $800 for drugs.
9    And in that conversation he's identified as "Lazy,"
10   his a/k/a in this case.  So Mr. Baca himself also
11   acknowledges that Mr. Herrera is somebody to whom
12   others owe money for drug dealings.  That would be
13   corroborated through a foundation, and as well as
14   through other evidence in the case.
15            THE COURT:  All right.  Well, I'm inclined
16   to deny the motion to exclude the incidences as to
17   Mr. Herrera.
18            MR. MAYNARD:  Your Honor, would the Court
19   at least ask that the Government approach the bench
20   before actually going into this chapter?
21            THE COURT:  Do you have any problem with
22   that, Mr. Castellano?
23            MR. CASTELLANO:  No, I don't think so.  But
24   the issue may be the order of presentation of
25   witnesses.  I need to see where this witness is.  It
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6333

```
 1    may actually be backwards.  But we can approach
 2    first.  But it may be that the other witnesses later
 3    confirm that Mr. Herrera is responsible for drug
 4    dealing on behalf of the enterprise.  But we can
 5    certainly try to approach first.
 6            THE COURT:  All right.  I'm inclined to let
 7    them in.  So the Government can approach, but I've
 8    seen and heard enough evidence here to think that
 9    that evidence should come in.
10            All right.  It's not next on the list, but
11    I think that the next -- the last 404(b) is Mr.
12    Baca's.  Do you want to go ahead and tackle that one,
13    Ms. Duncan?
14            MS. DUNCAN:  Thank you, Your Honor.
15            THE COURT:  Some of these look much more
16    tied to SNM activities, and there are some here that
17    you're not contesting and others that you are.
18            MS. DUNCAN:  So, yes, Your Honor, so we
19    deny all of them.  But for purposes of today, we're
20    objecting to just a handful.
21            THE COURT:  Okay.
22            MS. DUNCAN:  The very first one we object
23    to this, as relates to a murder for which Mr. Baca
24    was convicted in 1989.  The Government's letter
25    suggests that it was Mr. Baca, another SNM Gang
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6334

```
 1   member, who murdered another inmate.  That's not what

 2   the evidence shows at all, Your Honor.  It shows that

 3   Mr. Baca and another person were accused of killing

 4   an inmate.  That other person was acquitted of the

 5   crime.  There is no evidence that it was at all gang

 6   related.  It appears to have been a disrespect issue,

 7   and may have even been in self-defense, according to

 8   some of the Government's own witnesses.  So this is

 9   horribly prejudicial because it's a prior murder

10   conviction.  And it has no connection to any of the

11   charges here.  So this is really pure 404(b)

12   evidence, not substantive evidence, and it should be

13   excluded.

14            THE COURT:  Mr. Castellano, are you going

15   to be able to tie both Mr. Baca and the other

16   defendant to the SNM Gang on this?

17            MR. CASTELLANO:  I'm less sure about the

18   other inmate.  I think we can tie Mr. Baca into it.

19   He actually has a conversation with Eric Duran on the

20   recordings where he admits to the murder, and lays it

21   out.  So it's actually an admission by him, where

22   he's telling another SNM Gang member about the prior

23   murder.

24            And going back to something I didn't cover

25   with Mr. Herrera, because we moved past it.  But "an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

```
 1    association-in-fact enterprise requires a purpose,
 2    relationships among those associated with the
 3    enterprise, and longevity sufficient to permit the
 4    associates to pursue the enterprise's purpose."  So
 5    it's important to note people tell certain people in
 6    the SNM, who are other members, about things they've
 7    said and done before.  So that goes to the
 8    relationship among those associated with the
 9    enterprise.  And the age of the conduct also helps to
10    establish the longevity of the enterprise sufficient
11    for them to pursue their purposes.
12          So there are at least two parts of an
13    association-in-fact enterprise that are covered by
14    this type of conduct.
15          THE COURT:  Well, going back to the Baca
16    1989 murder, what evidence are you going to have that
17    ties this to the gang and its activities?
18          MR. CASTELLANO:  I have to go back and look
19    more closely at it.  But one of them includes
20    disrespect by itself.  Respect is a big deal in
21    prison.  It's a big deal with the SNM.  And it's not
22    uncommon for people to disrespect others and suffer
23    the consequences for it.  And even if it was merely
24    about disrespect, this is one gang member telling
25    another gang member that someone disrespected him,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   and he killed him over it.  So that would certainly

 2   be covered there.

 3           And, once again, in terms of membership

 4   among those in the enterprise, this is a conversation

 5   between two SNM Gang members about prior acts of

 6   violence.

 7           THE COURT:  Well, if there was no other

 8   proof by the Government other than the conversation

 9   that Mr. Baca had, so it's not tied to a specific

10   incident, dates or times, other than what Mr. Baca

11   said, do you have any problem with that?

12           MS. DUNCAN:  Absolutely, Your Honor.  I

13   think bringing in irrelevant evidence of a murder

14   that Mr. Baca was found guilty of, is horribly

15   prejudicial.  And it has no relevance to anything in

16   this case.  I've read through that conversation.  He

17   does talk about it.  He's been convicted of it.  And

18   it has nothing to do with the SNM.  It has nothing to

19   do with the allegations here.  So, yeah, absolutely,

20   it should not be admitted.  It's just pure 404(b) to

21   show that he's a violent person.

22           THE COURT:  Well, do you need to refresh

23   your file to see if there is any more here to tie it

24   to the SNM?  Because I'm just not hearing it at the

25   present time.  If it was two SNM Gang members, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6337

1    might be inclined to allow it.  But it seems that he

2    may be backing off of saying it was another SNM Gang

3    member that did it with him.

4         Let's keep it out at the present time.  If

5    you come back with stronger evidence showing the tie,

6    I'll take another look at it.  But right now, I don't

7    have a lot to link it up with SNM.

8         MR. CASTELLANO:  We'll approach first, Your

9    Honor.  We will revisit that issue.  Mr. Beck

10   believes maybe some of the witnesses he spoke to know

11   that to be an SNM hit.  But we will approach first.

12   I understand the nature of this.  But, of course, a

13   murder is racketeering activity.  So if we can tie it

14   to the SNM, we'll bring that up with the Court.

15        THE COURT:  I think if you've got witnesses

16   that say it's an SNM hit, I'll probably allow it.

17        MS. DUNCAN:  Your Honor, so far, that

18   evidence has not been disclosed to us.  I would just

19   note that Mr. Lowry and I have the transcripts from

20   Mr. Baca's trial, and there is no mention of gang

21   activity.  There is no mention of the SNM.  We talked

22   to Mr. Baca's trial counsel.  She said there was no

23   evidence or mention of the SNM.  That wasn't the

24   prosecution's theory.  The prosecution's theory was

25   it was just a prison murder over disrespect and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6338

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6339

1    drugs.

2            THE COURT:  Do you know about this other

3    fellow, this other inmate?  Was he an SNM Gang

4    member?

5            MS. DUNCAN:  I do not believe that he was,

6    Your Honor.  I don't know if he became one later.

7    But I think at the time he was not.  And as I

8    mentioned before, he was acquitted of this particular

9    crime.

10           THE COURT:  Well, we'll keep it out at the

11   present time.  But I indicated what kind of evidence

12   I'm looking for to get it in.

13           MS. DUNCAN:  Your Honor, we also challenge

14   admission of the second paragraph.  This is an

15   allegation that, in 2009, Mr. Baca possessed heroin.

16   The reports that were disclosed to support this are

17   reports of law enforcement who say that they found

18   Mr. Baca in his cell incoherent, and appeared to be

19   under the influence of heroin.  This evidence has no

20   relevance to a fact in dispute in this case.  Again,

21   it's just intended to portray Mr. Baca as a bad

22   person, as someone who uses drugs.  This has nothing

23   to do with the SNM or the charges.  So we'd ask you

24   exclude it.

25           THE COURT:  Is there evidence that's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6339

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 183

```
 1    clearly coming that is going to show Mr. Baca's drug

 2    use?

 3             MS. DUNCAN:  There is another allegation

 4    here in the Government's 404(b) letter about his drug

 5    use.  I think it's actually the very next paragraph.

 6    So, on December 15, 2009, that he possessed heroin,

 7    and on December 28, 2009 that he possessed heroin,

 8    and attempted to destroy it.  So his use of heroin or

 9    being under the influence of heroin -- so five years

10    before any of the acts alleged in this case just has

11    no relevance, and those acts are not alleged to be

12    drug-related, so this is just pure bad acts.

13             THE COURT:  Well, I guess I get a little

14    concerned about a sanitized view of Mr. Baca that

15    doesn't tell the jury in one form or another of his

16    drug use.

17             MS. DUNCAN:  My point about his drug use --

18    if he was testifying, and he was using drugs at the

19    time when he was testifying, I could see that as

20    being relevant.  But the fact that he used heroin

21    five years before any of the charged conduct in this

22    case, it's not relevant.  And all it does is

23    prejudice the jury against Mr. Baca.

24             THE COURT:  Well, so much of the SNM Gang

25    activity is drug related.  To not have any evidence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6341

 1  that he used or possessed drugs concerns me some.

 2          MS. DUNCAN:  But I think this evidence

 3  isn't that he was dealing drugs for the SNM.  This is

 4  just evidence that Mr. Baca was found under the

 5  influence of heroin.  So I understand the point that

 6  Your Honor is making, but it's not relevant to a fact

 7  at issue in the case.

 8          THE COURT:  Mr. Castellano.

 9          MR. CASTELLANO:  I'm looking at the defense

10  filing.  If you'll give me one second, Your Honor.

11          THE COURT:  Sure.

12          MR. CASTELLANO:  I believe the defense

13  itself is going to make his drug use relevant.  I'll

14  return to this in a second.  But in their filing

15  where they wanted us this morning to disclose certain

16  CIs in Document 1673-3, I think one of their defenses

17  is that people were trying to kill Mr. Baca, and

18  therefore maybe he was or wasn't a leader.  But in

19  that document it says that people complained about

20  him, because they thought all he was concerned about

21  was getting high.  And so in terms of his leader and

22  other people's views of him as a leader, his drug

23  issue was certainly an issue, and had to do with the

24  power struggles from time to time when people

25  criticized him.  So that would be an issue that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6341

```
 1    think the defense themselves are going to raise.
 2              Going back to the December 28, 2009
 3    possession of heroin.  On that occasion, what
 4    happened was Mr. Baca, I think, was in his cell.  The
 5    corrections officers were going to confiscate
 6    materials.  And I believe it was three other SNM Gang
 7    members were starting to run interference for Mr.
 8    Baca.  And it was obstructing.  He told them to stand
 9    down because it wasn't worth it and they all
10    complied.  So this is an issue where he's about to
11    get busted by COs, other SNM members run interference
12    for him, and then they follow his orders to stand
13    down.
14              THE COURT:  This incident, this drug --
15              MR. CASTELLANO:  Yes.  December 2009, I
16    believe, is the incident.
17              And the other issue with drugs in prison is
18    that the SNM largely controlled the drug trade in
19    prison.  So if you had substances or a large amount
20    of substances, it often reflected that you had access
21    to drugs.  And many times for those who brought drugs
22    in, they were expected to give a cut of those drugs
23    to higher ups in the organization.
24              THE COURT:  Well, it seems to me that one
25    probably ought to come in.  I may not allow them to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6342

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 186

1   bring in the other one, unless it's as robust with

2   SNM connections as that one.  But it seems that one

3   probably ought to be allowed to come in.

4           MS. DUNCAN:  Your Honor, I just would like

5   to clarify.  I think the Government is putting too

6   much weight on that second incident.  The reports

7   indicate that Mr. Baca was getting busted, and other

8   inmates came in, and Mr. Baca was telling other

9   inmates, "Back off, don't touch the officer; leave

10  the officer alone."  So I don't know how that's

11  evidence of gang membership or leadership, that he's

12  telling people to stop -- you know, to not harm or

13  interfere with the correctional officer.  So I don't

14  think the evidence can support the weight that the

15  Government is putting on it.  But, you know, it is

16  very prejudicial to Mr. Baca given that marginal

17  probative value.

18          THE COURT:  All right.  I'm inclined to

19  allow that one.

20          What's your next one?  Which one, Mr.

21  Castellano, is the one that you just described where

22  he told them to back off?  Was it the 28th or was it

23  the 15th?

24          MR. CASTELLANO:  That's the December 28,

25  2009 incident, and the December 15, 2009.  I believe

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Billy Cordova was one of the other people who was
 2   there and suspected of using drugs.  So that was,
 3   once again, another SNM Gang member.
 4           THE COURT:  If you don't have the
 5   robustness on number 2, let's take 2 out, and let's
 6   do 3.  That will make your point.  All right.
 7           MS. DUNCAN:  The next one we challenge,
 8   Your Honor, is number 5.  This is the allegation.
 9   This is taken from a recording between Mr. Baca and
10   Eric Duran regarding -- some people wanted to hit an
11   inmate named KS for a variety of reasons.  They were
12   talking about other inmates protecting KS, and sort
13   of offering -- Mr. Duran and Mr. Baca offering
14   opinions about it.  The Government characterizes it
15   as Anthony Ray Baca said he wanted KS hit because he
16   was a suspected informant.  I think that, again, is
17   put too strongly.  This evidence is really
18   prejudicial, and it's not incredibly probative.
19   Because it's two people talking about something that
20   didn't happen, offering opinions about the merits of
21   it.  So we would ask the Court to exclude it.
22           THE COURT:  Mr. Castellano?
23           MR. CASTELLANO:  It is probative.  There is
24   talk of informants and hits and drug debts.  Those
25   are all SNM activity.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6344

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 188

```
 1              It also identifies Mr. Herrera, as I stated
 2    earlier, as somebody who is owed a drug debt for as
 3    much as possibly $800, which is no small amount in
 4    prison.  And so all of that would be clearly
 5    relevant.  It would also refer to racketeering
 6    activity, because any murders or attempts to murder
 7    or conspiracies to murder would be racketeering
 8    activity, in addition to drug trafficking.
 9              THE COURT:  Well, I guess I'm inclined to
10    agree that has enough of connection to the
11    Government's story of the SNM Gang to allow that.  So
12    I'll overrule objection to it.
13              MS. DUNCAN:  The next is paragraph 6.  This
14    is again, from a recording of Mr. Baca with Eric
15    Duran.  And in that recording Mr. Baca is talking
16    about an incident where Benjamin Clark, who is one of
17    the Government's witnesses, wanted to get at another
18    inmate whose name is "Scooby."  And so Benjamin Clark
19    was supposed to send Suboxone into the next pod, and
20    he expected "Scooby" to get it.  So he was going to
21    pass it under the door, and "Scooby" was supposed to
22    pick it up.  Instead of "Scooby," it was this guy
23    name "Psycho."  "Psycho" takes the Suboxone, hands it
24    off to someone other than Mr. Baca.  It turns out
25    that there wasn't enough Suboxone in the envelope for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6345

1   everyone.  So, ultimately, this person, "Psycho,"

2   gets hit.  I think he got cut, or his throat was cut

3   by someone else.  So Mr. Baca is simply relaying this

4   story to Mr. Duran.  It's not Mr. Baca ordering this.

5   This wasn't Mr. Baca's drugs.  I mean, he's just

6   telling Duran something that happened in prison.  But

7   it's a prejudicial story.  It doesn't have any

8   relevance to things that Mr. Baca did, other than

9   witness this and tell the story.  So we'd ask the

10  Court to exclude it.  This is really a prior bad act

11  for Benjamin Clark, not for Anthony Ray Baca.

12          THE COURT:  Well, then how does it hurt

13  you?

14          MS. DUNCAN:  I think it's a violent story.

15  I mean, it's Mr. Baca relaying this violent story.

16  It has no probative value, but it's linking him to

17  violence in an unfair way.

18          THE COURT:  Mr. Castellano.

19          MR. CASTELLANO:  Mr. Baca is laying out the

20  rules of the game.  Here we have an issue where one

21  gang member, Mr. Clark, is giving drugs to Mr. Baca,

22  which is Suboxone.  That alone is relevant.  And then

23  when the drugs are short, there is a dispute, and one

24  member hits another member.  So this is violence

25  within the gang.  It shows a dispute over drugs.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   it also reflects a violation of the rules.  And
 2   because somebody had been shorted, there were
 3   consequences for that action.  So that is a
 4   reflection of the SNM Gang.
 5          THE COURT:  Well, I tend to agree.  It
 6   looks to me like it's connected to enterprise
 7   activities and to racketeering activities.
 8          MS. DUNCAN:  I think by people other than
 9   Mr. Baca, Your Honor.
10          And I would also note that at the very
11   beginning of this Mr. Baca tells Mr. Duran that he
12   thought this was all for nothing; that this was a
13   great injustice that was perpetrated on "Psycho"
14   because of the lies or the manipulations of Benjamin
15   Clark.  So, in essence, it's not what Mr. Baca did,
16   it's what other people did.  It is really
17   prejudicial.  It will consume some time for us to put
18   this into proper context for the jury so that they
19   don't unfairly hold it against Mr. Baca.  So whatever
20   probative value it might have is substantially and
21   unfairly outweighed by that prejudice.
22          THE COURT:  I'm going to overrule the
23   objection to number 6.
24          MS. DUNCAN:  The next objection, Your
25   Honor, we have is to paragraph 7.  It's, again, an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6347

```
 1    Eric Duran recording.  And the allegation is that Mr.
 2    Baca said that SNM member Carlos Herrera and JR, "BB"
 3    had made mistakes and both members would be hit.  As
 4    a preliminary matter, it's not Mr. Baca who made the
 5    comments about SNM member, Carlos Herrera.  That
 6    would be Eric Duran.  It was Eric Duran talking about
 7    Mr. Herrera making mistakes and needing to be
 8    disciplined.  So for that reason, I mean, we would
 9    exclude it because it's about Eric Duran and not
10    Anthony Ray Baca.
11           And with respect to "BB," the recording
12    isn't that -- it's not -- the recording is not Mr.
13    Baca saying I'm ordering that these people be hit.
14    Again, he's talking about something that had
15    happened, that he had heard was going to happen to
16    "BB".  So it's dragging Mr. Baca into other people's
17    actions and seeking to hold those actions against him
18    unfairly.  And we'd ask the Court to exclude it.
19           THE COURT:  Mr. Castellano.
20           MR. CASTELLANO:  Once again, there is a
21    discussion of SNM, the SNM Gang, the relationship
22    among its members, and consequences for violation of
23    any rules.  And the fact that it's a discussion
24    between members, once again, goes to the
25    association-in-fact enterprise and relationships
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6348

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 192349

 1   among those associated with the enterprise.  It's

 2   actually a requirement that we have to prove.

 3          And, actually, I know Mr. Herrera wants

 4   that type of testimony to come in, because then it

 5   makes it look like he s not involved in the Molina

 6   murder, because any mistakes he made according to

 7   their defense, that Mr. Herrera was not involved in

 8   the Molina murder.

 9          But other than that, this is once again

10   discussion of SNM Gang rules, and if people make

11   mistakes, they get hit.

12          MS. DUNCAN:  Your Honor, Mr. Castellano

13   keeps saying this is a conversation between two gang

14   members.  That's just not true.  It's a conversation

15   between Mr. Baca and a government informant who is

16   soliciting information from Mr. Baca, trying to get

17   Mr. Baca pumped up, and -- right, so I think there is

18   that part.  This is not two guys just talking.  This

19   is an informant intentionally trying to elicit

20   incriminating information from Mr. Baca and asking

21   him questions intended to pump him up to make him

22   seem more like a leader.

23          And with respect to Carlos Herrera -- and

24   I'm not going to speak for his team, but I think that

25   also goes to the severance that we were discussing

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                    1-800-669-9492
                                                        e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6349

```
 1    this morning.

 2             But, ultimately, this is a really

 3    prejudicial portion of the conversations.  It's

 4    relevance is minimal, and we'd ask the Court to

 5    exclude it.

 6             THE COURT:  Well, I think it's relevant and

 7    I do think it's probative, and I don't think it's

 8    unfairly prejudicial.  So I'll overrule objection to

 9    number 7.

10             MS. DUNCAN:  Our next objection would be to

11    paragraph 11.  It's, again, a conversation between

12    Mr. Baca and Eric Duran.  They're talking about a hit

13    on an alleged SNM member, RB.  This inaccurately

14    summarizes the conversation between Mr. Duran and Mr.

15    Baca.  In fact, what they discuss is that this hit

16    was ordered by Angel.  So it's not relevant to any --

17    to Mr. Baca's conduct this case, and for that reason

18    we'd ask the Court to exclude it.  It's just dragging

19    in a conversation about general -- about other

20    people's conduct in a way to paint Mr. Baca in a

21    negative light.

22             THE COURT:  All right.  Mr. Castellano.

23             MR. CASTELLANO:  This is the same argument,

24    Your Honor, regarding violation of SNM rules and

25    consequences for violations.  And we had discussions
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6350

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6351

```
 1    of informants being hit.  I mean, it's alleged in the
 2    indictment that the SNM engages in violations of 18
 3    USC Section 1512 and 1513, as well as 1503.  1512 and
 4    1513 relate to interfering or influencing witnesses,
 5    or retaliating against witnesses.  And 1503 deals
 6    with the obstruction of justice.  So any time the
 7    gang is doing anything against an informant, it's
 8    consistent with what we allege in the indictment and
 9    what we have to prove as part of the racketeering
10    activity.  So, once again, it's a violation of gang
11    rules and consequences.
12         MS. DUNCAN:  Your Honor, I would just
13    respond.  If it is a violation of gang rules and
14    consequences, it's by someone else.  I mean, it's
15    conduct alleged by Angel, Leonard Lujan, and
16    "Football Fred," not by Mr. Baca.
17         THE COURT:  Well, the allegation is that,
18    Mr. Castellano, is that Mr. Baca ordered this;
19    correct?  That's what you're going to prove is that
20    he told RB that this was -- that RB was an informant,
21    and ordered an SNM Gang members to hit him?
22         MR. CASTELLANO:  That's the allegation we
23    have as an overt act in the RICO indictment.  It's
24    Overt Act 226, I believe.
25         THE COURT:  I'm inclined to allow that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6351

```
 1              MS. DUNCAN:  And, Your Honor, I would just
 2     ask that the Government re-review -- I believe that
 3     this is from the transcript at 0730, or the recording
 4     is 0730.015.  The transcript is page -- it's DeLeon
 5     6064.  It's clear from this transcript that they're
 6     talking about Angel calling this alleged hit, and
 7     ordering Mr. Lujan and "Football Fred" to do the hit.
 8     So I would ask the Court, I'd ask the Government that
 9     before this be played, that we revisit this issue.
10     Because I would certainly don't want this to come in
11     if it's not Mr. Baca, which it's not.
12              THE COURT:  Well, you'll review it before
13     trial?
14              MR. CASTELLANO:  We'll review it, Your
15     Honor.
16              THE COURT:  And if it is Mr. Baca, then you
17     can admit it.  But if it's not Mr. Baca, then alert
18     the Court, and we'll revisit it.
19              All right.  Ms. Duncan.
20              MS. DUNCAN:  Let's see, Your Honor, there
21     were a couple more that we had objections to, I think
22     based on the Court's earlier rulings.  I'll just
23     point them out.  The first is paragraph 16, which is
24     an allegation about a conversation between Mr. Baca
25     and his girlfriend.  I think -- well, partly the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 196

```
 1    summary by the Government is inaccurate between

 2    what's being discussed.  But the allegation is he's

 3    discussing a hit on someone, and something about

 4    narcotics.  We would argue that -- we'd ask that this

 5    be excluded based on its incredible prejudicial value

 6    and it's low relevance to the allegations in this

 7    case.

 8              And the same would be true of paragraph 20,

 9    which is an allegation that Mr. Baca ordered another

10    SNM Gang member to threaten the family of a

11    cooperating witness in a murder investigation.  It's

12    an extremely prejudicial evidence, and its probative

13    value is substantially outweighed by the danger of

14    that unfair prejudice.

15              THE COURT:  Anything you want to say for

16    the record on those, Mr. Castellano?

17              MR. CASTELLANO:  No, I don't think there is

18    much to say about those, Your Honor.  Especially the

19    one regarding the -- well, basically hitting or

20    threatening a cooperator in this case, who was Mr.

21    Armenta, according to the recordings.  So I think

22    that speaks for itself.

23              THE COURT:  I'll overrule the objections to

24    16 and 20.  Others, Ms. Duncan?

25              MS. DUNCAN:  That's all we have, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   Honor.
 2          THE COURT:  All right.  Thank you, Ms.
 3   Duncan.  So I think I granted in part and denied in
 4   part, but largely denied the objections to those.
 5          All right.  Let's go to the objections to
 6   the Government's proposed voir dire.  Let me see if I
 7   can find the Government's voir dire.  Let me look at
 8   my notes here.  I guess, as to the allegations here,
 9   I'm going to ask you at the beginning about the case.
10   I think y'all agreed on a statement of the case that
11   I'm going to read.  I'm going to ask them if they
12   know anything about this case.  I guess the
13   Government is wanting to go a little further on that,
14   and see if, after they give more information about
15   the indictment, whether anybody knows anything about
16   the case.  I guess, if the Government wants to use
17   its time for that purpose, I guess I don't see an
18   objection to that.  It's kind of their business
19   whether they want to spend it on trying to plumb a
20   little deeper and see whether anybody knows anything
21   about the case.  I think we're going to probably
22   spend a good chunk of time here at the bench going
23   over with some of the jurors that have had some
24   exposure to this case.  So I guess I'm not inclined
25   to sustain the objections to paragraph 1 through 13.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6354

 1   I know you've got a separate one as to 12, but I'm

 2   inclined to overrule the objection.

 3            MR. VILLA:  Your Honor, I think if the

 4   Government wants to recite the charges to some

 5   degree, we might be able to live with that.  But the

 6   way that it's drafted is, you know, reading the --

 7   each count, the co-defendants charged in each count,

 8   the monikers of each defendant and co-defendant.  I

 9   mean, it's almost essentially a complete recital of

10   the second superseding indictment.

11            And I don't think it's proposed, but I

12   certainly would suggest that the Government not be

13   permitted to dive into some of the things that were

14   the subject of a motion to strike surplusage.

15   They're not proposing to do that in their voir dire.

16            But, for instance, if you look at paragraph

17   7, it essentially reads the entire Count 6 as it

18   would read in the indictment.  And I suppose the

19   Government is entitled to read the nature of the

20   charge, or reiterate the nature of the charge.  But

21   including all the defendants and the co-defendants

22   and their monikers, I think the Government should be

23   limited to just the defendants.  If it wants to ask

24   about co-defendants who might testify, I think they

25   can do that, when it comes to naming witnesses.  But

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6355

```
1    I think just rereading each count in the indictment
2    is unnecessary to get to where the Government wants
3    to go.
4              THE COURT:  All right.  Who is handling for
5    the Government?  Mr. Beck.
6              MR. BECK:  That's me, Your Honor.
7              THE COURT:  Mr. Beck.
8              MR. BECK:  I think that's fine.  We don't
9    intend to get into any of the surplusage in the
10   indictment.  We might read some of the charges and
11   some of the defendants' monikers.  There are only
12   four defendants.  We'll read some of the other
13   defendants just to make sure that -- I mean,
14   depending on what Your Honor does, just to make sure
15   that no one knows any of the other co-defendants.
16             THE COURT:  Here's what I'll do, is I'll
17   let you introduce your clients at the beginning of
18   the voir dire.  And then, at some point, we're --
19   pretty shortly thereafter, each side should be
20   prepared to mention any witnesses that they're going
21   to be calling or may be calling, so we can find out
22   if any of the jurors know any of the potential
23   witnesses.  So that's what I'll do I guess on that
24   score.  Doing that, then, what do you need out of
25   these 12 paragraphs?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6356

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 357

```
1              MR. BECK:  As I said, I think really what
2     we need is to talk about, you know, the other
3     defendants, make sure they don't know, and just
4     orient the jury to the charges.
5              THE COURT:  When you say "the other
6     defendants," who are you talking about?
7              MR. BECK:  The defendants in the Trial 2.
8     I expect we will have weeded out anyone who knows the
9     SNM by this point.  But, if not, I think we may want
10    to do that, just to make sure that at some point one
11    of the jurors doesn't stand up and say, Oh, I know
12    that person.  I think that's a good thing to do.  And
13    I can tell you that a lot of these defendants don't
14    even know -- a lot of defendants and SNM members
15    don't even know the other defendants and SNM members'
16    names, as opposed to just their monikers.
17             So I know the defense takes the position
18    that those may be inflammatory, or what have you, but
19    that's just how those folks are known in the
20    communities in which they run.  So --
21             THE COURT:  Well, I guess I'm still not
22    seeing how to really keep it out.  It may be that, if
23    they want to use their time to explore:  Does anybody
24    know anything about this case, that's helpful to us
25    all.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6357

 1             MR. VILLA:  I think it is to a degree.  I

 2    mean, with respect to the defendants who are on

 3    trial, I don't think their monikers need to be read.

 4    If the Government is concerned that someone in the

 5    venire knows them, they're going to be able to see

 6    them, and so I think they can ask does anybody know

 7    any of these four defendants?

 8             With the people who aren't in the room,

 9    Trial 2 folks, or cooperating witnesses, that sort of

10    thing, if the Government wants to use monikers, I

11    mean I guess to some extent it's okay.  But the

12    concern that I think we have is the way it's

13    presented.  So in Counts 6 and 7, these nine

14    defendants are charged.  Well, all but one is not on

15    trial is a cooperator.  And so I don't know if it

16    needs to be presented in the way the Government wants

17    to, rather than when they list their witnesses,

18    asking the venire if they know any of these

19    witnesses.

20             Now, the one defendant who was charged in 6

21    and 7, who isn't cooperating, is not on trial,

22    Mauricio Varela, if the Government wants to ask if

23    anybody on the venire knows him, I think that's okay.

24             But the general idea of basically telling

25    the jury all the counts, all the co-defendants, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6358

```
 1    the monikers and the defendants and their monikers

 2    twice is a little bit over the top.

 3             THE COURT:  Well, I guess what you're

 4    saying is at least when they're listing out their

 5    witnesses at trial, you don't have any problem with

 6    them identifying -- well, you're saying it's okay for

 7    them to mention monikers for everybody but the four

 8    defendants.

 9             MR. VILLA:  I think, yes, if the concern is

10    do they know the person.  Because the defendants are

11    in the room that solves the defendants' problems.  If

12    it's those not in the room, and they think maybe

13    somebody knows them by a moniker, unless somebody

14    else has a different idea, I guess the Government can

15    ask that question, in the context of this witness or

16    this person that may be involved in the case.

17             THE COURT:  Could you live with not

18    mentioning the monikers of the four defendants?

19             MR. BECK:  Honestly, I think that's a bad

20    way to go.  If they're going to have problems with

21    these defendants having monikers, we don't want them

22    on the jury.  I mean, everyone who takes the stand as

23    a cooperator is going to call these defendants by

24    their monikers.  That's going to be evidence that's

25    going to come out in trial.  If that creates a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6359

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 203 6360

```
 1   problem for anyone or someone at some point says, Oh,
 2   my gosh "Lazy," I know "Lazy."  I didn't know him as
 3   Carlos Herrera, I didn't notice him there.  But I've
 4   heard my friends talk about him.  That causes
 5   problems for everyone.  I think it's a good idea to
 6   mention them by their monikers, and that one way we
 7   know who may have a problem with people having
 8   monikers or who might not.
 9               THE COURT:  Well, I tend to agree.  If they
10   want to spend their time trying to make sure nobody
11   knows the people involved in this case, I think
12   that's going to be to the benefit to all of us to
13   explore that.
14               MR. VILLA:  I understand the Court's
15   ruling.  Perhaps with --
16               THE COURT:  Why don't we do this:  I think
17   it's time for our afternoon break.  So we'll be in
18   recess for about 15 minutes.  Then we'll come back
19   and pick up your specific objection to number 12.
20               MR. VILLA:  Yes, Your Honor.
21               (The Court stood in recess.)
22               THE COURT:  All right.  Do we have
23   everybody?  Every defendant has a counsel?
24               MR. COOPER:  Now we do.
25               THE COURT:  Anybody else missing a counsel?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6360

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6361

```
 1              All right.  Mr. Villa, if you wish to --
 2              MR. COOPER:  We're missing Brock.
 3              THE COURT:  All right.  We'll go back on
 4   the record.  It looks like every defendant has an
 5   attorney.  I'm going to mark the chart so the record
 6   is clear.  The partial table of statements that I
 7   passed out this morning will be marked as Exhibit A
 8   to the clerk's minutes for today.  And then I'm going
 9   to have Ms. Standridge pass out to all of you the
10   more expanded one that we've been working on during
11   the day, so you'll have it.  We'll mark that as
12   Exhibit B.
13              Now, objection to paragraph 12 is relating
14   to Mr. Garcia.  Do you still want to do anything with
15   12?  Is that one you want to use, Mr. Beck?
16              MR. BECK:  No.
17              THE COURT:  So we'll sustain that objection
18   and not hear it.
19              Objection to number 15.  These sort of
20   objections -- here's my proposed solution to them, is
21   if the Government could just simply say:  During the
22   trial, you will hear evidence concerning alleged
23   conspiracies to murder Javier Molina and to assault
24   Julian Romero, the Government -- both members whom
25   Government believes were part of the SNM prison gang.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6361

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6362

1     So you just add that "the United States contends or

2     believes to be part of SNM prison gang."  Could you

3     live with that, Mr. Beck?

4            MR. BECK:  Yes, Your Honor.

5            THE COURT:  And I think that would maybe --

6     instead of saying "alleged," it gives them a little

7     bit to say that's what they believe.  But it also

8     takes care of them just making flat statements to the

9     jury.

10           Is that all right with you, Mr. Villa?

11           MR. VILLA:  I think that's fine, Your

12    Honor.

13           THE COURT:  All right.  Is number 16 the

14    same way?

15           MR. VILLA:  I believe it is.

16           THE COURT:  Same thing, Mr. Beck?

17           MR. BECK:  Yes, Your Honor.

18           THE COURT:  17 the same way?

19           MR. VILLA:  No, 17 is a little different.

20    I think the first sentence of 17 should be stricken.

21    And the Government is certainly free to ask:  Do any

22    of you belong to an organization that seeks to

23    promote the rights of prisoners?  But the first

24    sentence --

25           THE COURT:  If they added in front of it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206363

```
 1    that it's their belief, they're going to have

 2    evidence of it, and they made that, and then ask

 3    about it, would that be all right with you?

 4              MR. VILLA:  Well, I still think the terms

 5    "powerful and violent prison gang operating in

 6    federal prisons throughout United States," I'm not

 7    sure that's even relevant to our case.  If they have

 8    to say that at any point that the Syndicato de Nuevo

 9    Mexico is a prison gang, we certainly think it should

10    be couched in the terms that the Court has just

11    stated.  But the terms "powerful and violent" and

12    operating inside and outside the prisons throughout

13    the United States, I'm not sure that's necessary

14    during voir dire.

15              THE COURT:  Your thoughts, Mr. Beck?

16              MR. BECK:  Your Honor, I mean, I think

17    there will be proof to that effect in the case.  I

18    anticipate there will be.  And I anticipate a number

19    will say that Syndicato operates in federal prisons

20    throughout the United States.  So I think Your

21    Honor's proposal is right, if we're going to say that

22    we say the Government believes that.

23              THE COURT:  Well, I think that will be my

24    solution.  They need to qualify it that it's their

25    position.  They need to own it, rather than stating
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6363

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 207

```
 1   it as a fact.  But if they do, I think it's fine.
 2            All right.  Let's go to 28.  Let me get 28
 3   in front of me.  You're planning to go through the
 4   38, correct, that's your witness list for trial?
 5            MR. BECK:  I think -- it's not --
 6            THE COURT:  I'm sorry.  It was more than
 7   that, wasn't it?
 8            MR. BECK:  I think it's around 40.  I mean,
 9   I think we've got 38, and then maybe a couple that
10   are like in between will call and may call, probably
11   call.  So I think we intend to go through at least
12   that list of about 40 people that we will --
13            THE COURT:  It's the second list, not the
14   first list.
15            MR. BECK:  That's right, Your Honor.
16            THE COURT:  Anything else on that?
17            MR. VILLA:  No, Your Honor.
18            THE COURT:  I guess on 29, what if we
19   rewrote it a little bit?  You may hear testimony in
20   this case by expert witnesses.  I think that's fine.
21            Let's take out the "let me advise you,"
22   because it makes it sound like you're kind of
23   instructing the jury.  Let's just say, "The use of
24   expert testimony" --
25            MR. BECK:  That's fine.  I wouldn't say it
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6364

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208 6365

```
 1    like that anyway, the United States wouldn't say it

 2    like that anyway.  So that's fine, Your Honor.

 3              THE COURT:  How about the next sentence be

 4    "the use of expert testimony may be proper in the

 5    context of this case," and then I think the rest of

 6    that was unobjected to.  Could you live with that,

 7    Mr. Beck?

 8              MR. BECK:  Yes, Your Honor.

 9              THE COURT:  Does that work for you, Mr.

10    Villa?

11              MR. VILLA:  Yes, Your Honor.

12              THE COURT:  And 32, I guess what the

13    defendant's main objection is they want you to add a

14    little bit more to it.  Would you have any problem

15    with it, because it --

16              MR. BECK:  Well, I think we'll probably

17    talk about this in connection with the jury

18    instructions.  I'm not sure that the cooperators'

19    agreement provides a benefit from the Government's

20    witness.  I think in many cases it may.

21              THE COURT:  Well, could we do that, that we

22    say "may" there?  So the last part would read

23    "because he's testifying pursuant to a Government

24    cooperator's agreement, that may provide a benefit

25    from the Government to the witness"?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6365

```
 1            MR. BECK:  I mean, I think that's fine.
 2    There is some folks who are testifying without an
 3    agreement, and that wouldn't -- so I may say
 4    someone -- you know, I mean I don't anticipate
 5    reading this sentence.  So I'm not sure that it will
 6    come out exactly the way they want it.
 7            THE COURT:  I think it's okay for you to
 8    say "he has pled guilty to an offense, or because he
 9    is testifying pursuant to an agreement that" -- how
10    about just "that may provide a benefit from the
11    Government to the witness"?
12            MR. BECK:  Well, I'm worried that -- I'm
13    worried about agreeing to that, because I'm not sure
14    it adds anything.  And I don't want to run afoul of
15    the Court's order.  So what I'm saying is I don't
16    think it will be lost on the jury if someone is
17    testifying pursuant to an agreement, what that means.
18    I think they have all the right in the world, and I
19    anticipate they will clarify for the jury what they
20    believe an agreement does.  So I think it's proper
21    for them to do that in their voir dire, and for them
22    to do that in their arguments.
23            But I anticipate that the United States
24    would say, "You may hear from witnesses who are
25    testifying pursuant to a plea agreement, or you know,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6366

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 210367

```
 1    testifying under an agreement with the Government.
 2    Will that affect your" -- and so my concern is that
 3    in the course of voir dire, where whomever is doing
 4    it doesn't read from a script, that I would run afoul
 5    of the Court's order on that.
 6              THE COURT:  Well, I think you're not going
 7    to run afoul of the Court's order.  To me, I'll just
 8    give you my opinion.  I'm not telling you I'm going
 9    to keep it.  When you say "agreement," that may work
10    for us, but for jurors who don't have the lingo down,
11    I would think you'd get more of a response if you
12    added what it is.  But I'm not going to tell you to
13    do it.
14              MR. BECK:  Okay.
15              THE COURT:  And I'm not going to script out
16    exactly what you say, because I don't want you to
17    feel like you've got to read it.  Because that's not
18    effective voir dire.  And I don't want you to think
19    you're going to get in trouble, because you're not.
20    But I will say that I think adding "agreement that
21    may provide a benefit from the Government to the
22    witness" may get you a little bit more specificity,
23    and a little better.
24              MR. BECK:  I will heed that advice and
25    commit it to memory, but if it doesn't come out --
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                         1-800-669-9492
 
                                              e-mail: info@litsupport.com
                                                              DNM 6367

```
 1              THE COURT:  That's fine.
 2              I guess on number 42, I didn't have a
 3    problem with it.  This is something the Government --
 4    if I read their jury instructions, certainly assumes
 5    the burden of beyond a reasonable doubt.  But they
 6    talk to them a little bit about other things they may
 7    say.  So I didn't have a big problem with it.  Did
 8    you like the formulation, Mr. Beck, that the
 9    plaintiffs -- the defendants proposed, beyond all
10    possible doubt, or do you still like your beyond a
11    shadow of a doubt?
12              MR. BECK:  I don't have a problem -- that's
13    not the jury instruction as I understand it.  So I
14    don't anticipate that I will give them a definition
15    other than what they will be hearing from the Court.
16    So I think what Mr. Villa proposes there is closest
17    to what the jury instruction language will be.  That
18    is an area where I will be a little bit more delicate
19    what I'm saying to the jury.
20              THE COURT:  Okay.  So you're not planning
21    to use a "shadow of a doubt"?
22              MR. BECK:  No, Your Honor.
23              THE COURT:  That was your objection.
24              MR. VILLA:  Yes, Your Honor.
25              THE COURT:  Let's look then, you've got a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE


DNM 6368

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212369

1    cluster here 46, 47, 48, 49, 50, and 51.  These are

2    all the CSI ones, aren't they?

3            MR. VILLA:  For the most part.

4            THE COURT:  "Notwithstanding what you see

5    on" -- do you agree that -- I never heard "beyond a

6    CSI doubt," but that's interesting.

7            The only one that sort of troubles me, Mr.

8    Beck, is 51.  "If traditional evidence of guilt in

9    this case is strong enough," I guess I don't think

10   that's the standard, "strong enough."  "Be strong

11   enough to prove the defendant guilty beyond a

12   reasonable doubt," I think if you added that, that

13   would be all right with me.  The rest of them, I

14   think are pretty typical in modern cases that they

15   explore this CSI effect with juries.

16           So I guess I'm not inclined to sustain any

17   other objection.

18           What do you think, Mr. Villa?

19           MR. VILLA:  Well, Your Honor -- and I

20   certainly think they can explore the jury's views on

21   the "CSI effect," as we call it.  I think some

22   questions I did have a problem with, "Do you agree

23   that the Government can prove its case without

24   presenting any physical evidence?"  I'm not sure

25   that's an accurate statement.  It depends on the type

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213

 1    of crime and the evidence.  For instance, if all you

 2    have is uncorroborated confession, you don't have any

 3    other evidence, you know, that sort of covers that

 4    area.  And I think it's primarily the language and

 5    not the subject matter that the Government uses that

 6    I think is objectionable.

 7              Let's see.  You know, I agree with the

 8    Court on, I think it was 51, stick to the language of

 9    the Government's burden.  But, you know, for

10    instance -- let's see.

11              THE COURT:  I guess I'm a little troubled

12    by the word "traditional" in that sentence.  I don't

13    know what really traditional evidence is.  I think

14    I'd knock that out, too.

15              MR. BECK:  Your Honor, this stuff is all

16    getting into the weeds and a bit more semantic than I

17    think is necessary.  I understand -- I mean, I'm not

18    going to give the Court -- I'm not going to give the

19    venire jury instructions that are inconsistent with

20    the Court's jury instructions.  So I don't have a

21    problem taking out "traditional," and I don't have a

22    problem saying our burden is beyond a reasonable

23    doubt.

24              THE COURT:  I think the rest of those are

25    probably okay.  I think they get to explore this CSI

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6370

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6371

 1    effect.  It's a pretty important issue.  I think in

 2    Albuquerque they show CSI 119 times a week now.

 3              MR. VILLA:  It's one of my wife's favorite

 4    shows.

 5              THE COURT:  Okay.  I wasn't going to say

 6    anything.

 7              MR. VILLA:  I can't watch it with her.

 8              THE COURT:  That's if you're on cable.

 9    You've got be on cable.  But isn't that remarkable?

10              All right.  Let's go to 52 and 53.  You did

11    just put there, Mr. Beck, discussion of aiding and

12    abetting, and then I think you may have done the same

13    with conspiracy.  Yeah.  What do you want to do

14    there?

15              MR. BECK:  I anticipate a hypothetical with

16    the jury, walking them through a hypothetical

17    conspiracy.  They commit a crime, and asking them if

18    they understand that those folks who maybe weren't at

19    the crime scene would be implicated in the

20    conspiracy, or aid and abet the person who robbed the

21    bank.

22              THE COURT:  Well, as long as he uses the

23    language of the Tenth Circuit's pattern instructions

24    on aiding and abetting and conspiracy, do you see any

25    problem with that, Mr. Villa?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6371

```
 1                  MR. VILLA:  No, Your Honor.  If that's the

 2      intention of what was meant in these paragraphs,

 3      that's fine.

 4                  THE COURT:  Can you kind of track those

 5      when you ask that question --

 6                  MR. BECK:  Yes.

 7                  THE COURT:  -- use the Tenth Circuit

 8      language?

 9                  MR. BECK:  I think I've said I'll do that.

10      Yeah.

11                  THE COURT:  Anything else on the

12      Government's voir dire, Mr. Villa?

13                  MR. VILLA:  No, Your Honor.

14                  THE COURT:  Go ahead.

15                  MR. VILLA:  No, go ahead.

16                  THE COURT:  Anybody else have any problems

17      they want to raise with the Government's voir dire?

18                  And I didn't see any objections to the

19      defendants' voir dire; is that correct, Mr. Beck?

20                  MR. BECK:  That's right, Your Honor.

21                  THE COURT:  Anything else, Mr. Villa?

22                  MR. VILLA:  I had a couple of matters I

23      just wanted to either flag for the Court or raise

24      now.  One is the Government filed a supplemental

25      expert notice, 1656.  And the defendants filed a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6372

```
 1   joint response, 1671.  I know it's not noticed up for
 2   today, but it is something that we'd ask the Court to
 3   take a look at, so we can address it before the
 4   Government calls any of its experts.
 5              THE COURT:  Okay.  What we've got left
 6   is -- we could plunge into exhibit lists, we could
 7   plunge into witness lists.  We could plunge into jury
 8   instructions.  I do want to get any feedback on my
 9   proposed preliminary jury instruction before we
10   leave.  And then we've got the motions that were
11   filed yesterday, the motion to strike cooperating
12   witnesses, motion to continue the trial, and then --
13   I don't know if we've covered Mr. Sanchez'
14   supplemental memorandum sufficiently.
15              Does anybody have a problem, given what we
16   have, of going to Mr. Villa's motion, or does
17   somebody feel like we need to go to what's next, and
18   that's exhibit list?
19              MR. VILLA:  And I didn't necessarily need
20   to raise it now.  I think the Court ought to read it.
21   It was filed by Mr. Castle.  The Trial 1 defendants
22   are certainly prepared to address it.  But I just
23   wanted to put that on the Court's radar for -- if not
24   later this afternoon or early next week --
25              THE COURT:  What number is your motion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6373

```
 1              MR. VILLA:  You're talking about the
 2    response on the expert notice?
 3              THE COURT:  Well, the one that you're
 4    talking about Mr. Castle filed.
 5              MR. VILLA:  1671.
 6              THE COURT:  Okay.  I'm not sure I have that
 7    and am familiar with it.  1671.
 8              MR. VILLA:  Yes, Your Honor.  It's not on
 9    the agenda.  I just wanted it to be on the Court's
10    radar.  I do have a copy if you'd like.
11              THE COURT:  Okay.  Let's maybe -- let's go
12    to the Government's objections to the exhibit list
13    first, and we might take something else up.
14              MR. VILLA:  One other issue I wanted to
15    flag before I surrender the podium, Your Honor, is we
16    understand another cooperating witness pled guilty,
17    Lupe Urquizo, and the Court has previously ordered
18    that sealed proceedings like that -- we think it may
19    be sealed, because it just happened, we haven't been
20    able to see it.  Sealed proceedings, such as the plea
21    hearing, the plea agreement, and those sorts of
22    things, the Court has already ordered those to be
23    produced in response to motions that were filed in
24    the spring.  So we're asking that the Court give us
25    the same order for Mr. Urquizo.  He is a will call in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6374

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6375

```
 1    this trial.
 2              THE COURT:  Do you intend to produce those
 3    materials, Ms. Armijo?
 4              MS. ARMIJO:  I'm sorry, I was listening to
 5    Ms. Duncan.
 6              THE COURT:  I guess --
 7              MR. BECK:  We do.
 8              THE COURT:  Is that good enough?
 9              MR. VILLA:  That does it.  I don't think I
10    have any exhibit list.
11              THE COURT:  All right.  Ms. Duncan, if you
12    want to --
13              MS. DUNCAN:  Your Honor, I'm sorry that I
14    was distracting Ms. Armijo from what was happening in
15    the Court, but I was hoping to save some time this
16    afternoon.  Your Honor, we filed objections to the
17    exhibit list, somewhat to identify general categories
18    of objections that we have.  I haven't had a chance
19    to confer with the Government.  I know some of these
20    exhibits they're not intending to introduce, they're
21    just going to be with their witnesses.  I think if we
22    can sit down with some of the general categories, for
23    example, autopsy pictures that we objected to, that
24    we may be able to eliminate some of those objections
25    without the Court's -- I don't mean to burden the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                  1-800-669-9492
                                                        e-mail: info@litsupport.com



DNM 6375

```
 1    Court.  So I was discussing with the Government
 2    perhaps over the weekend, we can confer, and then
 3    figure out what we can work out, what we can't.  And
 4    then bring up the outstanding issues to the Court as
 5    they arise.  That's just -- I think that's a better
 6    use of our time.
 7              THE COURT:  Okay.  Is that agreeable to the
 8    Government?
 9              MS. ARMIJO:  Yes, Your Honor.  I think that
10    there is a lot of things on there, as she said, we're
11    not planning on having go back to the jury
12    necessarily, but that for the record, we would be
13    referring to, and so we obviously put it on our
14    exhibit list.
15              THE COURT:  Well, you know we're going to
16    use this JERS system.  So if it's admitted, they can
17    press the button and pull it up.
18              MS. ARMIJO:  And we already provided that
19    disk today.
20              THE COURT:  You're thinking about pulling
21    some of these exhibits out, not introducing them at
22    all?
23              MS. ARMIJO:  Correct.  I think there is a
24    lot there that may not necessarily be admitted.  But
25    that instead of, if a witness is on the stand and it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

220

```
 1    is used to refresh their recollection, or add it to
 2    the exhibit list, we already have it on there.
 3              THE COURT:  Okay.  Does anybody have any
 4    problem with letting Ms. Duncan talk to Ms. Armijo
 5    and see if they can work these out?  Ms. Jacks?
 6              MS. JACKS:  I don't have a problem with it.
 7    I guess I'm just thinking, given the Court's two
 8    juries, and essentially two trials going on at the
 9    same time, are we going to -- I think we have to keep
10    track of which exhibits go to which jury, so I don't
11    know how the JERS system works, but do we need to
12    redo the exhibit list so there is an exhibit list for
13    the Baca-Sanchez trial and then an exhibit list for
14    the Herrera-Perez trial?
15              THE COURT:  I would think the answer is
16    yes.
17              MS. JACKS:  So I guess I would also think
18    then the Government has to produce two separate
19    exhibit lists, one for the Baca-Sanchez trial, and
20    one for the Perez-Herrera trial.
21              THE COURT:  Yeah.
22              MS. JACKS:  So it probably makes sense to
23    put this off till next week.
24              THE COURT:  All right.  Seems like we have
25    an agreement to put it off, so I'll -- I will do that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6377

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221378

 1    then.  So we'll put the exhibit issue back in.

 2              MS. ARMIJO:  Your Honor, I'm not sure that

 3    we have to have two lists, because the juries are

 4    going to be very limited on what one jury will hear

 5    and what one jury won't.  So I think that it would

 6    be -- and I don't know, maybe that is one thing for

 7    Ms. Wild to consider, if it's more confusing to have

 8    two different -- an exhibit with two different

 9    exhibit numbers, or just as to the items that apply

10    to one jury, we can specially mark those or note

11    those other.  But I think two exhibit lists may be

12    more cumbersome, given the limited amount of evidence

13    that's going to be separated between the juries.  So

14    I think that may be something Ms. Wild wants to weigh

15    in.  But I'm not sure.  I'll leave it to the Court.

16              THE COURT:  Well, we can talk to her about

17    it.  The thing, I guess, I would ask is the

18    defendants may have a preference on this, as to how

19    we designate that.  I mean, do you care, Ms. Jacks?

20    I mean, if we were to have -- I think what Ms. Armijo

21    is saying is we have a common witness list, and then

22    for those exhibits that are exclusive for one jury,

23    we designate those a different way.  Do you have a

24    preference?

25              MS. JACKS:  I just think at that point then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

DNM 6378

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 222379

```
 1    what we're going to end up is having three witness

 2    lists.  We're going to have the witness list, the

 3    overall witness list, and then we're going to have

 4    the special Sanchez-Baca exhibits and the special

 5    Herrera-Perez exhibits.  I'm just thinking this

 6    through.  It just seems --

 7              THE COURT:  Do you have a problem with that

 8    or --

 9              MS. JACKS:  I just think that's sort of

10    more confusing than just having an exhibit list for

11    the Sanchez-Baca trial and an exhibit list for the

12    Perez-Herrera trial.  Then there is only two.

13              THE COURT:  Well, let me think about it.

14              MS. JACKS:  I don't know how the JERS

15    system operates, so I don't know --

16              THE COURT:  Well, there will be in

17    different jury rooms, so they will be on different

18    systems.  So I don't think we'll have a problem with

19    the JERS.  Let me give it some thought, and I'll come

20    back to you with a proposal on that.

21              All right.  Mr. Villa, I think you're

22    taking the lead on the objections to the witness

23    list.

24              MR. VILLA:  Your Honor, I think this would

25    be quick.  The objection was primarily to preserve
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6379

```
 1    the issue that we were just discussing with exhibits,
 2    that some of these witnesses are only admissible to
 3    Counts 8 through 12, and some of them are only 6 and
 4    7, so we were essentially just objecting to the
 5    witnesses that were providing testimony in 8 through
 6    12, that isn't admissible to us.  The Court has ruled
 7    on the severance issue, and we'll have to probably
 8    deal with the witness issue the same way we deal with
 9    the exhibit issue, if we get two juries.  So it's
10    sort of a preservation placeholder.
11              THE COURT:  All right.  Do you need
12    anything from me this afternoon on that?
13              MR. VILLA:  I don't think so, Your Honor.
14              THE COURT:  Anybody else need anything?
15    How about --
16              MS. JACKS:  I think we need some guidance
17    from the Court as to whether it's going to allow the
18    testimony regarding Counts 8 through 12, which is
19    inadmissible against the Counts 6 and 7 defendants.
20              THE COURT:  Here's what I'm thinking are
21    the big categories:  The Marcantel will come in.
22    I'll give limiting instructions on that.  So I'll not
23    exclude either jury from that.  The categories that
24    Baca and Sanchez will not -- your jury will not be
25    sitting through will be the Herrera, Duncan (sic),
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6380

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6381

1   and Perez, Cordova.  Those are the big categories.

2           MS. JACKS:  Right.  I just end up saying

3   the same thing over and over.

4           THE COURT:  I know.

5           MS. JACKS:  But my only observation about

6   that is  least for the trial of Herrera and Perez, if

7   they have a separate jury, there is no reason for

8   that jury to be present when the Marcantel-

9   Santistevan testimony is presented, you know what I

10  mean?  There is no reason for them to be hearing it,

11  and then be told to disregard it.

12          THE COURT:  Well, I think the Government

13  does have problem with that.

14          MR. BECK:  Yeah, I think those are all

15  racketeering activities, and so they're all relevant

16  and admissible in the trial.  What's not admissible

17  against some defendants is hearsay.  So that's

18  inadmissible evidence.

19          MS. JACKS:  Right.

20          MR. BECK:  The counts are admissible.  What

21  I understand the Court's ruling to be is that, when

22  we play -- at least right now -- when we play the

23  recordings with the transcripts of certain statements

24  that will come in only against one or the other,

25  that's when we'll exclude the juries.  They will hear

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the admissible testimony of that evidence.  So I

2    think that's what Ms. Armijo was referring to

3    earlier, that there would be a limited portion of the

4    trials, when we will have only one jury or the other.

5             MS. JACKS:  I guess what I was referring to

6    was co-conspirator statements, because it seems like

7    the primary evidence of the Marcantel-Santistevan

8    conspiracy is co-conspirator statements that would be

9    inadmissible hearsay as to --

10            THE COURT:  If I can limit it that

11   precisely, I would be inclined to do that.  If I can

12   get away with a limiting instruction, I will.  Is

13   that -- are we saying the same thing, Mr. Beck?

14            MR. BECK:  I think so.  I mean, I think

15   that will be --

16            THE COURT:  There will be times in your

17   presentation of the Marcantel case where the evidence

18   is not -- I mean, let me see if I can put it in my

19   words, and then we'll see if everybody is agreeing.

20   You are allowed, the Government is allowed to prove

21   the Marcantel conspiracy, and use that as evidence of

22   enterprise and racketeering activity.  But there may

23   be portions of that proof that we would be saying, if

24   we were having the trial all together, that this

25   could not be considered, and that particular evidence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6382

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226

```
 1    we may excuse the jury so I don't have to give a

 2    limiting instruction.

 3               MR. BECK:  Yes.

 4               THE COURT:  That's your understanding?

 5               MR. BECK:  Yes.

 6               MS. JACKS:  I think we're on the same page.

 7               And I guess the other thing I would like

 8    some ruling on is, I would argue that the opening

 9    statements should be presented to the jury -- I guess

10    I think they should be separate.  So, in other words,

11    I don't think the Sanchez-Baca jury should be hearing

12    the Perez-Herrera opening statements.  And I think

13    there is potentially some tension, particularly as to

14    whether either Mr. Perez or Mr. Herrera are going to

15    pursue some idea of duress caused by Mr. Sanchez.

16    And so I think, if we're going to go forward with

17    this on Monday or Tuesday, it would be nice to know

18    that now.

19               THE COURT:  Your thoughts?

20               MS. ARMIJO:  Your Honor, I'm doing opening,

21    and I have already tailored my opening to not deal

22    with the evidence that's excluded from the one jury.

23    So our preference is that we do one -- at least the

24    United States will do one opening statement.

25               If the defense wants to do different
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227

```
1   openings, then that's their -- I guess they could do
2   it.  But the United States is presenting one opening
3   statement that will not include testimony that the
4   one jury cannot hear.
5           THE COURT:  Do you see any problem with
6   that, Ms. Jacks?  If the Government wants to tailor
7   theirs to make it more general and not get into the
8   evidence that they make theirs --
9           MS. JACKS:  It's hard to just rule -- I
10  mean to give an opinion just based on that
11  representation.  But I think the concern is -- I
12  mean, what Ms. Armijo is saying is that there is
13  evidence one jury is not going to hear.  But really
14  there is evidence that -- the Baca-Sanchez jury is
15  not going to hear certain stuff, and the
16  Herrera-Perez jury is not going to hear different
17  things, right?  So I don't know that it's just one
18  jury that's only going to hear certain evidence the
19  other is not.
20          MR. BECK:  I think I can interpret that and
21  clear it up.  Sorry, I don't mean to step on your
22  toes.
23          MS. JACKS:  That's all right.
24          MR. BECK:  I think Ms. Armijo was
25  misspeaking a little bit.  My understanding of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6384

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228

```
 1   Court's ruling is that there may be statements also
 2   in Mr. Herrera's recordings and Mr. Perez' recordings
 3   during which the Baca and Sanchez jury will be
 4   excused.  Just like there may be portions of Eric
 5   Duran's recordings and Mr. Baca's recordings --
 6   Mr. Duran recording Mr. Baca, during which Mr.
 7   Herrera and Mr. Perez' jury would be excluded.  So I
 8   think there may be -- based on this, and obviously,
 9   we'll take -- this being the Court's chart, Exhibit B
10   to the clerk's minutes -- once we take a closer look
11   at that, I think we'll have more guidance of when one
12   jury or the other may be excluded.  But I think there
13   may be times --
14           THE COURT:  Let's assume that will be the
15   case.  I haven't quite thought it out.  But it sounds
16   like everybody is in agreement that is the case.
17   Y'all are more familiar with the evidence.  I took a
18   shot at it from what I heard in the James hearings
19   and co-conspirators, and again played with the
20   evidence.
21           So assuming that's the case, do you have
22   any problem with letting Ms. Armijo do her opening,
23   and then if y'all want to have tailored ones, and
24   only have it to your specific juries, do that?
25           MS. JACKS:  I mean, it would depend upon
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6385

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229386

```
 1    what's in her opening.  So I mean, I don't know --

 2              THE COURT:  I don't need to know today.

 3    You can decide that at the time.

 4              MS. JACKS:  Okay.

 5              THE COURT:  But we'll let the Government do

 6    theirs, and we'll take their representations that

 7    they're going to keep it general, and not get into

 8    specific as to evidence that's going to be excluded,

 9    or might be excluded from the other jurors.  And then

10    y'all can decide how y'all want to do your opening.

11              MS. JACKS:  Okay, great.

12              THE COURT:  Mr. Villa?

13              MR. VILLA:  I just want to say I agree with

14    Ms. Jacks.  I think the defense openings, at least

15    have to be separate, and if we want to get into

16    specific detail, I mean, that's my preference.  We

17    sort of talked about it this morning, and I thought

18    about it more.

19              THE COURT:  Well, you know more what you're

20    going to be arguing.  To some degree, I don't know

21    what you're going to be arguing.

22              MR. VILLA:  Yes.  We don't argue in

23    opening, Judge.

24              THE COURT:  That's right.

25              MR. VILLA:  But, yes, I think we would ask
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    for separate.

 2              THE COURT:  That's fine.  It doesn't seem

 3    Ms. Armijo cares what y'all do on that.

 4              Let me see what Ms. Bhalla -- and then I'll

 5    come back to Mr. Castellano.

 6              MS. BHALLA:  Your Honor, it was just about

 7    the witness lists.  I can -- if we want to keep

 8    talking about opening statements, I can wait.  I just

 9    didn't want to climb in and out.

10              THE COURT:  Hold on.  Let me finish up on

11    the openings, since Mr. Villa who filed this

12    primarily is using it to preserve his position.  Let

13    me get Mr. Lowry.  Are you on openings, Mr. Lowry?

14              MR. LOWRY:  No, Your Honor.  I wanted to

15    talk about the motion to strike.

16              THE COURT:  Mr. Castellano, did you have

17    anything else on the openings?

18              MR. CASTELLANO:  Kind of, Your Honor.  And

19    this is -- it kind of overlaps with the two juries.

20    Is the Court going to instruct the juries that we

21    have two of them, because there are certain things

22    that one jury can hear that the other can't, based on

23    the Court's pretrial rulings, and that there are

24    things they can hear together?  Is that the idea?

25              THE COURT:  I haven't -- let me ask you
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6387

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231388

1   this:  I may have to go back.  I got Mr. Garcia out

2   yesterday afternoon.  Is the preliminary instruction

3   that I have, is that sufficient to begin the case?

4   And then I'll start looking at the final

5   instructions.

6           MR. BECK:  Do you want to hear from the

7   United States on that, Your Honor?

8           THE COURT:  Yes.

9           MR. BECK:  It is.

10          THE COURT:  Okay.  Did the defendants have

11   any problem with the preliminary?  Okay.

12          MR. LOWRY:  No, Your Honor.

13          THE COURT:  Let's plan, then -- on that

14   instruction, let me do that together.  Okay?

15          Mr. Maynard.

16          MR. MAYNARD:  Your Honor, on the

17   preliminary instructions, in general, I have no issue

18   with them.  But at a juncture just before the Court

19   starts talking about the elements, I really think it

20   would be appropriate, in fact I think it's necessary,

21   to explain to the juries that there is going to be,

22   in a way one trial, two juries, but four individuals

23   are independently on trial.  And that the Court is

24   going to -- the jury is going to be instructed to

25   assess the evidence independently as to each

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   defendant in each count, just a couple of sentences,

 2   before the Court transitions into the elements.

 3              THE COURT:  Does the Government have any

 4   problem with that?

 5              MR. BECK:  No, Your Honor.

 6              THE COURT:  All right.  Anybody else?

 7              Mr. Maynard, why don't you draft it up and

 8   send it around, and then tell me where you wanted to

 9   insert it.  If there is an agreement on that, get an

10   agreement, and we'll stick it in there.

11              All right.  So other than what Mr. Maynard

12   is going to draft up, I'll use the preliminary

13   instruction, and I will instruct the jury all at the

14   same time, swear them in at the same time, and then

15   we'll go to Ms. Armijo, who will argue -- or who will

16   make her opening statement, and then we'll see where

17   we are with the defendants at that point.

18              MS. JACKS:  I think the other instruction

19   that probably should be given is for the juries not

20   to interact with each other.  Because at least, in my

21   experience, that's the biggest problem with multiple

22   juries.

23              THE COURT:  Do you want to put that in

24   there, Mr. Maynard?  Do you want to draft out

25   something and put it in your paragraph?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6389

```
 1              MR. MAYNARD:  They're not to talk to each
 2    other.
 3              MS. JACKS:  Or interact, or discuss the
 4    case.
 5              THE COURT:  Well, y'all haven't had --
 6    well, some of you have had trials with me.  But I
 7    talk to the jury till all of you are sick --
 8    everybody about not talking to each other.  And I'll
 9    start during voir dire.  So I don't mind them putting
10    it in there.  And if fact, if you look at my jury
11    instruction, that last paragraph, I do say that.  I
12    don't say it as to two juries.  But you can put that
13    in, Mr. Maynard, and if everybody agrees, we'll put
14    it in there.  But we'll all get sick of it.  I'll get
15    sick of saying it, and they'll get tired of hearing
16    it, and y'all will be bored as well.  So we'll work
17    hard to make sure they don't do that.  Maybe won't
18    have the problem, since it's a statewide venire, of
19    what Ms. Jacks had, of people knowing each other on
20    the jury.  And I'll try to ask that.  I will try to
21    ask that in my voir dire.  I'll try to ask if anybody
22    in the jury knows each other.  If we end up bringing
23    in multiple groups, then obviously, I'll need to do
24    that multiple times.  But we'll do that.
25              All right.  Anything else on sort of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6390

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6391

1    mechanics of the opening preliminary instruction?  If

2    not I'm going to go to --

3              MS. ARMIJO:  I just wondered, are they all

4    going to be in the same room?  Is there enough room

5    in the jury room?

6              THE COURT:  We'll get two jury rooms.

7              MS. ARMIJO:  Okay.  If they're in the same

8    room, that's awfully hard not to.

9              THE COURT:  When they go to one jury room,

10   they'll go to one, and another one to another.  Isn't

11   that right, Ms. Wild?

12             THE CLERK:  Correct.

13             MS. JACKS:  Your Honor, when I've done two

14   jury trials, two trials with two juries, what I've

15   seen is generally the juries are like designated like

16   with a color or some easily identifiable designation

17   like the red jury and the blue jury, whatever it is.

18   So that they know that they go to a different place,

19   and with a different group, and they actually have

20   different color juror identification badges.  So just

21   a thought.

22             THE COURT:  Okay.  We typically in New

23   Mexico don't put badges on our jurors.  But we can

24   certainly think about that.

25             MS. JACKS:  I think the issue is so that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6391

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 235

```
 1  they know -- I guess the issue is, not only do we
 2  need to know who the jurors are, but they need to
 3  know who the other jury is, so that they don't
 4  accidentally start engaging with them.
 5           THE COURT:  We'll give that some thought
 6  and make sure that they don't.
 7           Do you have something on this issue?
 8           MS. DUNCAN:  I do, Your Honor, a related
 9  issue.  I know earlier we had talked about the order
10  in which the defense would go for voir dire and
11  openings.  And you had asked for that information.
12  We had come up with a preliminary plan, and then with
13  the plea of Christopher Garcia yesterday and the two
14  juries, I think it may change.  I'd like to confer
15  with my colleagues about the openings before we give
16  that order.  But I was wondering if the Court would
17  like to know -- we've come up with an order for voir
18  dire, if that would be helpful to the Court.
19           THE COURT:  Yeah.  You handed this to me.
20  All right.  What are you proposing as your order?
21           MS. DUNCAN:  Ms. Jacks is asking are we
22  doing the voir dire all groups at once?  How are you
23  anticipating.
24           THE COURT:  I think so, don't you?
25           MS. JACKS:  This is just how I was thinking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6392

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 236

```
 1    about it.  I would think it would be sequentially,
 2    that Jury A would be selected and voir dired by the
 3    lawyers for that jury.  And then Jury B would be
 4    selected after that.  Right?  Like, why would lawyers
 5    who aren't involved in the Sanchez-Baca trial be voir
 6    diring, or doing anything with the Sanchez-Baca
 7    jurors?
 8              THE COURT:  Is that all right with
 9    everybody?
10              MS. DUNCAN:  Yes.
11              THE COURT:  It's not going to affect the
12    Government at all, but --
13              MS. ARMIJO:  Yeah, but I'm wondering with
14    numbers, because I think our numbers are precious so
15    to speak.  And let's say the first group has -- and
16    I'm just throwing out number 70, and we all know we
17    only need 40 after excusals.  Then let's say we have
18    leftover jurors.  What's going to happen to the
19    leftover jurors?  Shouldn't those leftover jurors
20    that we don't use for the first panel go into the
21    second panel for consideration?  So that's where I
22    think it gets messy.  We can't just simply divide the
23    numbers up.  So that's something to consider,
24    given -- and if we have 400 jurors -- and we don't --
25    I think we keep getting lower and lower numbers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6394

237

```
 1   That's my concern.

 2          THE COURT:  We're going to have to conserve

 3   jurors.

 4          Let Ms. Wild -- she's thought about this --

 5   let her tell you what we're proposing on the jurors,

 6   how we're going to use them.

 7          THE CLERK:  So instead of bringing up

 8   groups of 20, necessarily, when we get through the

 9   first 60, we'll have a feel, do we need 20 more?

10   Maybe we don't need that many.  So we'll bring up

11   incrementally smaller groups to try to preserve our

12   resources.  And I think that that's the way we handle

13   it in terms of making the best use of folks' time and

14   seating the jurors.

15          THE COURT:  But I guess the question

16   they're asking is --

17          (A discussion was held off the record.)

18          THE COURT:  Is everybody in agreement and

19   I'll ask you as well.  Is everybody in agreement that

20   we should just pick the first jury, and that would

21   mean that two of the defense teams don't ask any

22   questions in that.  And like Ms. Wild says, we may

23   have to be a little bit flexible.  When we're picking

24   that first jury, we may not want to bring 20 in, if

25   we only need one person.  We might just bring five in
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6395

1    so we leave more for that second group.  Everybody

2    live with that?

3              MS. JACKS:  I think so.

4              MS. DUNCAN:  I think that makes sense.

5              THE COURT:  If, in fact, we have some

6    leftover jurors from the first one, what -- I'm

7    thinking out loud, so everybody can tell me if this

8    is a bad idea -- go ahead and send them back to the

9    jury room, and if we don't need them, we never see

10   them again, they don't see us, and we pick our new

11   jury, the second jury out of a fresh batch.

12             MS. JACKS:  I think that's right.

13             MS. DUNCAN:  I would agree.  I think that

14   makes sense.

15             THE COURT:  But we'll leave them down there

16   in case we need 10, 15 that we didn't use from the

17   first one.  We might bring them back up, and we might

18   need one or two or something.

19             MS. JACKS:  I'm just thinking out loud.

20   But the one other thing I was thinking is, to the

21   extent that the Court's voir dire is the same for

22   Trial A and Trial B, or Jury A and Jury B, maybe

23   there is some sort of way to -- for the Court to do

24   its voir dire of the whole panel.

25             THE COURT:  I just think it would take us

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6395

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 239

```
 1   forever.
 2              THE CLERK:  There is no room.
 3              THE COURT:  There is no room.  And there is
 4   just no room.  We don't even have -- I think we'll
 5   have to just pick two juries.  And I'll have to do it
 6   twice.  And everybody -- the Government will have to
 7   do it twice, and the new defendants will have to -- I
 8   just don't think we have enough room here.
 9              MS. DUNCAN:  We're whispering about
10   figuring out who is going first in terms of planning
11   for the two.
12              THE COURT:  I'll tell you, if I were
13   defendants -- well, it would apply to the Government,
14   too -- I think you're going to want to do it all
15   over, because you're going to want to look over at
16   this jury box, the 18 that are going to be in the
17   jury box, because, you know, if nobody strikes down,
18   they're your jury.  I think, visually, if I were a
19   trial lawyer here, I wouldn't want to be trying to
20   figure out -- well, you're just saying for the
21   general stuff, aren't you?
22              MS. DUNCAN:  Yes.
23              THE COURT:  Well, I probably will let the
24   Government select who they want the first jury to be.
25   Because if I don't get two juries on Monday, then I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6396

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240

```
 1    probably have to go to plan B.
 2              So who do you want to be the first jury
 3    selection to be, Mr. Castellano?
 4              MR. CASTELLANO:  Mr. Baca, Mr. Sanchez,
 5    Your Honor.
 6              THE COURT:  All right.  So Baca-Sanchez
 7    will be Jury A.  And then we'll go with Perez-Herrera
 8    will be Jury B.
 9              MR. CASTELLANO:  Your Honor, maybe we can,
10    in the meantime, think about what size groups we'd
11    want to come in.  We may actually end up doing voir
12    dire more than twice.  So, for example, as the Court
13    said, we might need one juror and only call in five.
14    There is a chance we could extend this into multiple
15    voir dires.
16              The other kind of strange thing -- maybe
17    it's not a real issue -- is the group dynamics.  If
18    we pull in a group of 5, there is a weird dynamic as
19    opposed to a group of 40.  I'm just putting it out
20    there to think about in the meantime.  I know we're
21    not there yet, but it's coming up.
22              THE COURT:  I'll work with you.  I
23    understand what you're saying.  I'll work with you,
24    we'll kind of see if we're -- you know, let's see how
25    many show up.  I hope we get a good return rate and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6397

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

```
 1   everything.

 2           All right.  If there is nothing else on

 3   mechanics right at the moment -- I know there will be

 4   more things on mechanics -- but if there is nothing

 5   else, why don't we go to -- I think, Ms. Bhalla, you

 6   wanted to talk about what -- the motion that's up,

 7   the actual exhibit witness list.

 8           MS. BHALLA:  If that's okay, Your Honor.

 9           THE COURT:  Certainly.

10           MS. BHALLA:  Your Honor, I don't think it's

11   a major issue.  I just -- when I started thinking

12   about whether or not we separate out the witness

13   lists, some of the witnesses that the Government may

14   be calling that provide testimony to Mr. Sanchez and

15   Mr. Baca, we may want to question in our

16   case-in-chief.  But because of the joint witness

17   list, we didn't necessarily identify them because the

18   other parties had identified them.  I just ask that

19   maybe the way we could deal with that is if we decide

20   at that time that we want to be able to re-call them,

21   we alert the Court, just depending on what comes up.

22   And hopefully, that won't be too big of an issue.  I

23   don't think it will happen with that many witnesses.

24   But I see that happening.

25           And I know that some people sent Agent Acee
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6398

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242

242

```
 1    a Touhy letter.  We didn't necessarily do that,

 2    because we weren't going to have to do that in order

 3    to question about those issues.  Do you see what I'm

 4    saying, Your Honor?  I want to make sure we can maybe

 5    have a little bit of flexibility in how we handle

 6    that.

 7              THE COURT:  Any objection from the

 8    Government on that?

 9              MS. ARMIJO:  Depends on who the witness is.

10    If it's an FBI agent, or somebody like that that's

11    subject to Touhy, they will have to file Touhy

12    letters.  So we're not going to waive on the Touhy

13    letters or the witness' right to Touhy.  If it's

14    somebody -- and some of these witnesses are close by,

15    some of them are in custody.  So I think -- I mean,

16    we'll try and be as flexible as we can.  But we still

17    are going to require Touhy letters, if that's an

18    issue.

19              THE COURT:  Okay.

20              MS. BHALLA:  And if that's the case, maybe

21    to expedite things, would the Government have any

22    objection to us sending those to the Government to

23    try to speed up the process a little bit?

24              MS. ARMIJO:  We're not accepting service,

25    but certainly if it's a Touhy letter, we'll send it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to the appropriate authorities.

 2              MS. BHALLA:  Okay.

 3              THE COURT:  Anything else on that, Ms.

 4    Bhalla?

 5              MS. BHALLA:  No.  And I just, just that we

 6    have the ability to re-call some of the cooperators

 7    if something comes up in the Baca-Sanchez matter that

 8    would be relevant to the Perez-Herrera matter.

 9              THE COURT:  Do you have any problem with

10    that?

11              MS. ARMIJO:  It's going to depend on the

12    issue and why they call them.  They can't have -- so

13    it may, depending on why they're re-calling them and

14    what the issue is.

15              MS. BHALLA:  I mean, I think it would be

16    directly related to -- some of the witnesses, Your

17    Honor, have information on all four defendants that

18    are going to trial.  And --

19              THE COURT:  Maybe I'm being very simplistic

20    here, but you're going to know who the witnesses are

21    in the Baca/Sanchez trial.

22              MS. BHALLA:  I hope so.

23              THE COURT:  So can't you, at that point,

24    just say:  Can I get some testimony here?

25              MS. BHALLA:  That's what I was asking, if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6400

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 244

```
 1    we can handle that it way --
 2              THE COURT:  Is that a problem if while
 3    they're here they ask, or is there something special
 4    about these witness lists that create some problem
 5    for the Government?
 6              MR. BECK:  You mean asking them questions
 7    on cross-examination that may be out of the scope of
 8    our direct may be subject to re-call?  Is that what
 9    we're asking?
10              THE COURT:  No, I think they're asking in
11    your case-in-chief, right, you want to be able to
12    re-call people that other defendants have called?  Am
13    I misunderstanding.
14              MS. BHALLA:  No.  For example, Your Honor,
15    let's say one of the cooperating witnesses, you
16    know -- and some of the cooperating witnesses they
17    may provide statements that are exculpatory for Mr.
18    Herrera, but the Government doesn't call them in the
19    Herrera-Perez line of questioning.  They call them in
20    the Sanchez-Baca line of questioning.  And we want to
21    get out that information.  Does the Court want us to
22    re-call them in our case-in-chief.
23              THE COURT:  Well, I've got to observe the
24    American Rule.
25              MS. BHALLA:  Right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6401

1            THE COURT:  If they're not using anything

2    against you with that witness --

3            MS. BHALLA:  Then we need to re-call them.

4    And we didn't have that issue before this morning.

5    So I'm just trying to figure out the most --

6            THE COURT:  Tell me why not.  If they're

7    not using any of the witnesses against you, you

8    wouldn't be able to get that information out anyway,

9    would you?

10           MS. BHALLA:  Well, I think that the way

11   that we thought our witness list -- all of those

12   parties are on the witness list.  But it was a joint

13   witness list.  So that's my question.  Do we need to

14   delineate out the witness lists now because there are

15   two juries.  Do you see what I'm saying?

16           THE COURT:  Now, you're talking about your

17   case-in-chief?

18           MS. BHALLA:  Yes, Your Honor.

19           THE COURT:  Okay.  Well, do they need to do

20   that?  If they did a joint defense witness list, now

21   they don't need to break it out, do they?

22           MS. ARMIJO:  Well, I think if they're going

23   to be putting them separate, and not in front of

24   another group, we would like to know that.

25           I mean, I think -- and maybe I'm mistaken,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6402

1    but I think there is going to be very little evidence

2    that is not going to both juries as far as witnesses.

3    It's not going to be, you know, over 10 witnesses.  I

4    think it's going to be -- unless I'm missing

5    something, it's going to be very limited about what

6    one jury will hear and what doesn't hear.  And the

7    defense already knows that.

8            If the defense is going to be putting forth

9    the same thing, and only wants some witnesses to one

10   jury or not, I think we have a right to know that.

11   And I think they do have to file their own witness

12   list that just pertains to them.  I think we would

13   request that.

14           MR. CASTELLANO:  And related to that, I

15   guess, Your Honor, is -- so the witness is going to

16   be on the stand --

17           THE COURT:  Isn't this easily solved by you

18   just filing a witness list?  I mean, if you want to

19   list all the witnesses that are on there, if the

20   Government wants to know what your witness list is

21   going to be, there is going to be some overlap.

22           MS. BHALLA:  I think that's fine, Your

23   Honor.  We can certainly try to do that.  I'm just

24   trying to figure out how we need to handle this the

25   most efficiently.  So I can certainly talk to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6403

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 247

1   Government about that, Your Honor, and see what we

2   can do.  Get something filed separate.

3          MR. MAYNARD:  Your Honor, if I may, some

4   of -- we anticipated Mr. Herrera's case was going to

5   be elicited on cross of the Government's own

6   witnesses.  But now we're not sure which witnesses,

7   and we're not sure about the scope of direct in our

8   aspect of the case, as the Government presents that

9   testimony.

10          MR. CASTELLANO:  I think --

11          THE COURT:  That problem is always there.

12  You never know.  They may just say I'm going to

13  ignore Herrera on this witness.  And if you do, then

14  you've got to fight the American Rule to see if you

15  get to cross-examine to save time.  I mean, it's --

16  you always got that problem, right?  Unless we have

17  an agreement that if somebody is called by the

18  Government, we're going to get their

19  cross-examination done.  If the Government agrees to

20  that, then we can move that along.

21          MR. MAYNARD:  I'm just wondering if we're

22  going to have to scramble, and ask for some writs and

23  some subpoenas in a hurry.  It may not be likely, but

24  it --

25          THE COURT:  Well, let me ask the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6404

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 248

1    Government -- I think I know the answer from what you

2    just said -- but do you want to -- if you have a

3    witness here, allow the defendant to get their

4    cross-examination done of that witness, and not stand

5    on the American Rule, and get witnesses in and out,

6    so they're not subject to re-call, or do you want to

7    insist on the American Rule in your case-in-chief?

8             MR. CASTELLANO:  I think it's going to

9    depend.  But I think, for the most part, we're going

10   to present our case, and so we're going to present

11   all of our evidence.  So our presentation doesn't

12   change.  It's which jury gets to hear which evidence,

13   which I think is largely evidence which is the

14   hearsay the Court doesn't want each jury to hear.

15   But we're going to go through all of our evidence and

16   put on all our witnesses.  So they should have the

17   opportunity to cross-examine all the witnesses that

18   they want.

19            THE COURT:  Let's say you put on a witness,

20   and it doesn't implicate Herrera at all.  Are you

21   going to stand on the American Rule and say, if Ms.

22   Bhalla wants to cross-examine him about something

23   that really is not within the scope of your cross,

24   you want to insist that she call her in her case?  Or

25   do you want to get the witness up and out?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  The answer is maybe, it
 2    depends.  Because, for example --
 3              MS. BHALLA:  This is why I brought it up.
 4              MR. CASTELLANO:  Because the objection is
 5    that it's beyond the scope of direct.  And so if
 6    somebody is going to go that far afield of our
 7    presentation of our case, and takes us off on a
 8    tangent in front of a jury who needs to hear this
 9    evidence we're presenting, that changes the
10    complexion of the case and the presentation.
11              THE COURT:  Let's do this:  I think we need
12    to break the witness list out.  You send a letter to
13    the Government saying:  Here's my witnesses.  And
14    then, if the Government looks at that and tell them:
15    You need to subpoena these people or you don't need
16    to subpoena them.  And then tell them that you may
17    dig in your heels on some and not on others.  And
18    it's your call.  I mean, if you want them to -- but I
19    think they need to know which ones to get subpoenas
20    out for.  Does that make sense?
21              MR. CASTELLANO:  It makes sense, Your
22    Honor.  Then the issue, for purposes of
23    cross-examination, is what they elicit -- I guess may
24    not matter if it's going to the right jury.  Let's
25    say we have two juries sitting here, the Court may
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6406

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 250

```
 1    have to give a limiting instruction even for
 2    cross-examination to say this information is only
 3    pertinent to this jury, and not for this jury because
 4    you're going to pull out hearsay or some other --
 5             THE COURT:  Or we let that jury go for the
 6    cross.
 7             MR. CASTELLANO:  Possible.  So that means
 8    we're going to have to have at least some preview --
 9    not the entire cross laid out, but some preview about
10    the subject matter of the cross-examination to decide
11    whether or not it's for one jury or both juries.
12             THE COURT:  Well, can we live on the
13    witness list, so they can know who to subpoena?  Each
14    defense team will send a letter to the Government
15    saying:  Here is our witnesses, and then you'll
16    respond by saying -- you can do it either way, you
17    don't need subpoenas with these people or you do need
18    them?  And if you say no subpoenas for those people,
19    the rule will be that we won't enforce the American
20    Rule for those witnesses, and they get their
21    cross-examination done and get the witnesses out of
22    here.  And if you say they do need a subpoena, that
23    will mean, if you want to at the time, you can insist
24    on the American Rule, and they'll have to re-call
25    them in their case-in-chief?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6407

```
 1              MR. CASTELLANO:  It's all kind of abstract
 2    right now.  I think it's worth a try to do that.  I
 3    think they know who our witnesses are for the most
 4    part.  But if we think we're not calling someone on
 5    our witness list, and they want that person, then
 6    that's when they need to issue subpoenas.  And for
 7    law enforcement witnesses, they also need Touhy
 8    letters and subpoenas.
 9              THE COURT:  Okay.  Well, can you live with
10    that?
11              MS. BHALLA:  I think so, Your Honor.  And I
12    don't think it's going to be that many witnesses.  I
13    really don't.  And I don't think that it's going to
14    necessarily be that far outside.  I don't really
15    think -- honestly, when I think about it, I don't
16    know that it's necessarily going to be outside the
17    scope of the direct.  But --
18              THE COURT:  I think that's what Mr.
19    Castellano was saying.  It may not be that big of a
20    problem.
21              MS. BHALLA:  Right.
22              THE COURT:  Because I have a fairly large
23    strike zone anyway on the American Rule.  So as long
24    as it's got something tied to it, I'll probably allow
25    it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6408

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 252

```
 1                 MS. BHALLA:  Okay.  Thank you, Your Honor.
 2                 THE COURT:  Anyone else on witnesses, which
 3      is the motion that's on the table?  Ms. Armijo?
 4                 MS. ARMIJO:  I do.  One of our -- well, two
 5      of our witnesses are victims in this case.  And I'm
 6      wondering what the Court's position is on the
 7      victim's -- crime victim's rights, the act of 2004,
 8      which allows them to attend court proceedings?  Is
 9      the Court going to require them -- and the witnesses
10      that we're talking about victims is Gregg Marcantel
11      and Dwayne Santistevan -- is the Court going to
12      require them to stay out until they testify?  Or is
13      the Victim's Rights Act of 2004 enough for the Court
14      to allow them to, for instance, hear opening
15      statements, or if they want to watch part of the
16      trial, be in part of the trial?
17                 THE COURT:  Any thoughts on that, Mr.
18      Lowry?
19                 MR. LOWRY:  Yes, I do, Your Honor.  I've
20      looked at this issue before, and I've briefed it.
21      And the Court has the authority under the rules of
22      evidence to dictate the order of witnesses at the
23      trial.  If either of the victims want to attend the
24      trial, rather than break the rule of attendance, the
25      Court can say if they want to attend the trial, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6409

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253

```
 1   need to call them first, so their testimony gets out
 2   of the way.  And so, if Mr. Santistevan or Mr.
 3   Marcantel want to sit through the trial and watch the
 4   trial, then the Government would have to call them
 5   first.  It's just that plain and simple.
 6           THE COURT:  I mean, are they -- are they
 7   planning to be here the whole time?
 8           MS. ARMIJO:  One of them, I know will not
 9   be.  Mr. Santistevan, I don't believe he will be
10   here.  But I know --
11           THE COURT:  Could you live with this:  That
12   when they show up, they don't sit in the jury room --
13   in the courtroom until they're called?  And then
14   after y'all work them in, then we'll excuse them and
15   they can remain?
16           MS. ARMIJO:  Well, if that's the Court's
17   ruling.  I mean, we came up with an order of
18   witnesses, and that's not our preference.  But if
19   that's the Court's ruling, then we will do that.
20           THE COURT:  Well, I'm shooting from the
21   hip.  I've had some similar stuff, but not this exact
22   question.  Let's make it the ruling for the time
23   being, if somebody wants to submit something to me to
24   tell me that I'm doing it wrong, I'll be glad to take
25   a look at it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 6410

```
 1                 MS. ARMIJO:  What about opening statements?
 2                 THE COURT:  Opening statements, all fact
 3     witnesses need to remain outside of the courtroom,
 4     both sides.
 5                 All right.  Let's see anything else on
 6     witnesses?  All right.  So I'm going to put this
 7     witness material back in.
 8                 All right.  The next issue I have up -- and
 9     if somebody is watching the clock, and wants to do
10     something else, I think we better break at 5:15.  So
11     we've got about 30 minutes.  Does anybody want to do
12     anything before we go to objections to jury
13     instructions?
14                 MR. LOWRY:  Yes, Your Honor.
15                 MR. VILLA:  Your Honor --
16                 THE COURT:  Was that you, Mr. Maynard, or
17     Mr. Villa?
18                 MR. VILLA:  I think Mr. Lowry said yes,
19     Your Honor.  But I think what I have might be
20     slightly less substantive than what he has.  But can
21     I confer with Mr. Lowry?
22                 THE COURT:  Sure.  Mr. Beck?
23                 MR. BECK:  Your Honor, while you're doing
24     that, the Court asked for an update on the promises
25     and benefits information.  The United States -- all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255

```
 1    the law enforcement officers who were sitting in on
 2    the debriefs and discussions with cooperators were
 3    contacted, and they have all reported that they did
 4    not threaten or induce any cooperation by threatening
 5    other family members.  So what we talked about
 6    earlier today, there won't be any update from that.
 7    I'm just putting that on the record so we don't have
 8    to disclose that later.
 9              THE COURT:  All right.  Mr. Villa?
10              MR. VILLA:  Mr. Lowry has got it.
11              THE COURT:  All right.  Mr. Lowry.
12              MR. LOWRY:  After conferring with Mr.
13    Villa --
14              THE COURT:  Hold on just a second.
15              Okay.  So you're going to ask me to take up
16    1701?
17              MR. LOWRY:  Yes, Your Honor.
18              THE COURT:  All right.  Just so there is no
19    confusion, we're still going to have 18 jurors on the
20    second trial.  Everybody gets three peremptory
21    challenges, each side, to the alternates.  Same
22    number.  So nothing changed on the jury.  So I think
23    those are the mechanics.
24              All right.  Mr. Lowry, if you want to
25    discuss 1701.  You may have to educate me a little
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    more on this one, because it's been in my stack

2    today, but I haven't been able to get to it other

3    than look at the title.

4            MR. LOWRY:   I appreciate that, Your Honor.

5    And I can do that very briefly.

6            Your Honor -- and the reason this was just

7    filed yesterday is we discussed at the last hearing,

8    and as the Court knows well, there was this huge

9    volume of telephone calls that was released to the

10   defense teams in December, late -- well mid November,

11   December.  And we've been culling through the 16,000

12   hours' worth of telephone calls.

13           And in the process of doing that, we

14   mentioned one -- at the very last hearing, I think,

15   on December 10th, about Mr. Cordova.  And we've

16   identified three separate government witnesses who

17   have made phone calls out to their family members,

18   either their wives, mothers, talking about how it

19   came to be that they cooperated with the United

20   States Government.

21           And the substance of those are set out in

22   the motion on page 3 for Mr. Clark.  But Mr. Clark

23   talks about -- he's talking to his mother, and he's

24   telling his mother, essentially, that if he didn't

25   cooperate, that they were going to charge her, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6413

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 257

```
 1    his -- I don't know if it's his wife or his
 2    girlfriend, but let me just say his significant
 3    other.  And the recording goes through that.  And
 4    he's explaining to her why he did what he did.  And
 5    at the end of the conversation he says, "I ain't
 6    gonna let you guys fall for my bullshit," meaning
 7    that he wasn't going to let them get prosecuted for
 8    involving them in the three-way calls, and things
 9    like that, that would have put them at risk of
10    prosecution for aiding and abetting, or part of a
11    conspiracy to distribute drugs, or what have you.  So
12    Mr. Clark is telling his mother, Look, I had to do
13    what I did because of the pressure that was put on me
14    by federal agents.  Otherwise, you and my wife would
15    be prosecuted.
16         Now, the same thing goes to the next
17    defendant, if you look at Billy Cordova.  And on
18    September 4, 2016, Billy Cordova calls his
19    significant other, Crystal.  And Mr. Cordova tells
20    her during the course of a conversation, "And then
21    the fucking feds come in and they say, 'Look, we're
22    going to fucking tax your wife, we're going to tax
23    your fucking mom.  This is what we have on you.'
24    Boom, they slap a file on me.  And I'm like, What,
25    and I'm like, they're coming after everybody."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And then he asks his wife, "What would my

2     daughter do right now, babe," implying that what

3     would his daughter do if he didn't have her mother or

4     her grandmother to take care of her.  In that

5     context, Mr. Cordova is telling her, Look, you should

6     appreciate the sacrifice I made for you.

7          Then we move on to Lupe Urquizo.  And on

8     March 12, 2017, Lupe Urquizo was in a call with his

9     brother, Daniel.  And they're talking about the same

10    thing.  This is March -- I believe if you look at the

11    FBI 302s, the first contact we can see in the

12    discovery is on February 24th of 2017, with Mr.

13    Urquizo.  In this conversation he's talking to his

14    brother about being visited by federal agents.  And

15    he tells his brother point-blank -- they're talking

16    about different apparently criminal activity that

17    they had been involved in.  And he says, "They came

18    to see me about two months ago, and they're asking me

19    about you.  No, I told him.  Sheesh, why are you

20    asking about Daniel," his brother.

21          And then his brother asks him after some

22    back and forth, "But did you tell them not to fuck

23    with me, or what?"

24          And then Lupe Urquizo tells his brother,

25    "Fuck, yeah, I told them."



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 259 6416

```
 1              And then this is the block quote.  "Then
 2      they told me, they were asking me, 'How much time
 3      does Daniel still have?'  And I told them I believe
 4      he still had some years left and all that, you see.
 5      I told them, 'Well, you know, if I do all that, I
 6      want to make sure my bro is all good, too, and all
 7      that, you see.'
 8              "And they said to me, 'Yeah, as long as
 9      you're truthful and all that, we'll fucking take --
10      we'll take care of everything.'"  Meaning that he
11      didn't have to worry about his brother being
12      prosecuted if Mr. Urquizo would cooperate.
13              Now, we've identified a few other calls,
14      but involving the three witnesses corroborating the
15      same theory, the same pattern, where they're saying,
16      Look, we chose to cooperate so our family members
17      wouldn't be prosecuted.  And really, the essence of
18      this motion is, and the reason I filed it as a motion
19      to strike, Your Honor, is you've heard us -- I
20      believe at the last set of hearings, I raised an
21      issue on behalf of Ms. Sirignano on a motion to
22      compel the Brady and discovery.  I had filed a motion
23      to compel Brady and discovery.  And Your Honor said,
24      Well, it sounds like you're complaining, Mr. Lowry.
25      And I believe at the time I said, Yeah, I am
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 260

 1   complaining.  And I was.

 2          But we got the Jencks Act disclosures on

 3   the 12th of January.  And may I use the Elmo?  And,

 4   unfortunately, the Jencks Act disclosures were

 5   essentially Brady and Giglio disclosures.  Because

 6   the vast majority, in my view, as a defense attorney,

 7   were impeachment evidence that the defense could use.

 8          And just, for instance, I'm looking at --

 9   and Your Honor knows, we've been asking for the field

10   notes, the rough notes, from the FBI for -- since the

11   very first hearing we had in front of the Court.  And

12   I'm looking at a document that's a DeLeon Bates No.

13   42976, and it's the field notes of an FBI agent, and

14   they're dated December 17, 2015.

15          THE COURT:  Ms. Standridge, I need some

16   screen, either put that one on, or --

17          MR. LOWRY:  And the reason I bring this up,

18   Your Honor, about the Brady information is because

19   Your Honor had a very detailed and specific colloquy

20   with the parties in 2016 about your view of Brady.

21   And you told the United States, Look, I think if

22   you're doing a Brady review, you can't use a computer

23   algorithm.  You need to get a real human, and not the

24   case agent, not an FBI official.  You need to have an

25   attorney from the United States Attorney's Office lay

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 6417

```
 1   eyes on this evidence, and examine it and screen it
 2   as if you were a defense attorney.
 3        And why I bring up this particular set of
 4   field notes, while we're trying to get the Elmo up,
 5   is that on DeLeon Bates No. 42981, it's discussing
 6   the agent who is interviewing Roy Paul Martinez, asks
 7   him about the Marcantel hit.  And the very first note
 8   under the heading Marcantel hit says, "'Crazo'
 9   approached 'Shadow' saying Santi need hit," meaning
10   that "Crazo," Eric Duran, approached Roy Paul
11   Martinez, and explained to Mr. Roy Paul Martinez that
12   Dwayne Santistevan needed to be murdered.
13        Now, we've been before for you some time
14   saying that Mr. Duran was the moving force behind the
15   Marcantel-Santistevan allegations.  And here you have
16   a document that was created in December 2015, the
17   Government concealed until January 12, 2018.  Now,
18   why they sat on it for that long, I don't know.  The
19   Government -- Your Honor, instructed them in October
20   and November 2016 how to do a Brady review.  And here
21   we are on the eve of trial.  And the reason I bring
22   this up and styled this as a motion to strike, Your
23   Honor, is because this has been a systematic and
24   uniform effort to undermine the ability of the
25   defense to present a meaningful and effective case.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6418

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 262

1          And there is no reason -- because the

2     Court, in I believe in Document 907 -- I can't

3     remember the filing date right offhand, Your Honor,

4     but I think it was in April of 2017 -- said that the

5     Brady and Giglio disclosures had to be done

6     immediately.  And in October you gave them a 14-day

7     window to do the review.

8          So I'm a little disappointed -- more than

9     disappointed -- that here we are on the eve of trial,

10    and what we predicted happened, happened.  We got all

11    the Brady and Giglio materials that were supposed to

12    have been disclosed throughout the case at the last

13    minute.  And here we are scrambling to follow up.

14          Just another example that was disclosed in

15    the Brady-Giglio material, Lupe Urquizo tells -- and

16    so this -- it's still booting up.

17          May I approach, Your Honor?

18          THE COURT:  You may.

19          MS. ARMIJO:  Can we get the Bates stamp

20    numbers?

21          MR. LOWRY:  Your Honor has it.

22          THE COURT:  It's 42981.

23          MR. LOWRY:  I've highlighted the relevant

24    portion there, Your Honor.

25          If you go in and look through the, quote,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6419

```
 1    Jencks disclosures that were provided on --
 2              THE COURT:  Let me give all the numbers to
 3    Ms. Armijo.  42981, 42982, 42976, 42977, 42978,
 4    42979, and 42980.
 5              MR. LOWRY:  And Your Honor, I'd like to
 6    tender that as Anthony Baca's Exhibit A for the
 7    purpose of this hearing.
 8              THE COURT:  All right.  Any objection, Ms.
 9    Armijo?
10              MS. ARMIJO:  No objection.
11              THE COURT:  Anyone else?  All right.  Then
12    Anthony Baca Exhibit A to this hearing will be
13    admitted into evidence.
14              MR. LOWRY:  So, Your Honor, I mean, I think
15    it's fairly obvious from looking at that, that that
16    was a defense friendly impeachment.  And in fact,
17    more than impeachment, that is exculpatory; that it's
18    Eric Duran wanting Dwayne Santistevan hit.  And at
19    that time he's operating as an agent of the United
20    States Government.  And so there is really no excuse
21    for not having that, not disclosing that earlier.
22    And there is really no excuse to call that Jencks Act
23    material.
24              Now, if we go through -- and I don't have
25    all day, because we're at the end of the day -- but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6420

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 264

```
 1    there are plenty of examples like this in the
 2    allegedly Jencks Act material.  And another example
 3    is Lupe Urquizo in a 302 says that after Julian
 4    Romero was assaulted, he makes a call.  He doesn't
 5    call Mr. Baca.  He doesn't try to write a letter to
 6    Mr. Baca.  He calls Gerald Archuleta, and explains to
 7    Gerald Archuleta, Hey, we finally did the Julian
 8    Romero takedown.  And according to the FBI 302, Lupe
 9    Urquizo gets disillusioned because Gerald Archuleta
10    is exceedingly disappointed, and, in fact, upset with
11    him because he wanted Julian Romero murdered, not
12    just beaten up.
13              And again, what you see is evidence that
14    the hit is the responsibility of Gerald Archuleta,
15    another cooperating witness for the United States,
16    and not Mr. Baca.  So given the scope of the problem,
17    and given the depth of the problem -- and by the way,
18    that call that Mr. Urquizo references has never been
19    disclosed.  We've looked for it in the disclosures.
20    But we don't have a copy of it at all.
21              So here we are on the eve of trial, and
22    exactly what I predicted was going to happen, we have
23    to do a massive investigatory effort to look at this
24    material, and follow up on it.
25              And I know Your Honor doesn't want to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com



DNM 6421

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 265

1    postpone this trial.  So if you don't want to

2    postpone the trial, so we can have an effective

3    defense, then the only remedy left is to strike these

4    witnesses.  And I think it's a fair and adequate

5    remedy.  And I think it's well within this Court's

6    authority to do.

7         And I think, if you look even just recently

8    in the news, the Cliven Bundy matter, the judge in

9    that case had to dismiss that criminal prosecution

10   because of the Brady violations in that case.  And I

11   know this is a drastic remedy, but given the

12   circumstances here, we're on the eve of trial, and

13   we're trying to still sort out thousands of hours of

14   telephone calls that have exculpatory information.

15        My concern here, Your Honor, is we're, you

16   know, heading into trial -- and I think we'll

17   probably get through a trial -- but I think at the

18   end of the trial, we're going to find that there has

19   been significant Brady violations in this case, and

20   we'll all be looking at a do-over down the line.  And

21   nobody needs that.  I mean, I don't mind trying the

22   case once.  But I don't want to try it twice.

23        Your Honor, the United States, if I

24   understand their position correctly, is that, Okay,

25   you have these calls, but this is all hogwash, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 266

1   these calls are all lies.  And I think that's the

2   position of the United States.

3          But I'm not quite so sure that's the case.

4   And the reason I say that is one of the Lupe Urquizo

5   calls -- and I have it queued up if you want to

6   listen to it -- but Mr. Urquizo is talking about all

7   the benefits he's going to get in exchange for his

8   cooperation.  And he says, Look, they're going to

9   charge me.  But once these trials are over, I'm only

10  going to have to serve a few years, like one to

11  three.  And they're going to let me out.  And they're

12  going to get me a house, and they're going to do

13  this, and get me a job, and do all these grand

14  things.  And in the context of one of these calls

15  he's talking about his girlfriend getting traffic

16  tickets.  And he says very clearly, Don't worry,

17  don't worry about that because the people I'm working

18  with, they're going to take care of that for us.

19  They've told me that they'll fix these tickets for

20  us.  And again, I need an investigator to go find out

21  whether this individual actually had tickets and

22  whether they were dropped.

23         But what I can tell you is that we know

24  that that happened.  And here's how we know that:

25  Just after his release from incarceration, Eric Duran

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    was driving north of Santa Fe, and he got pulled over

2    and he got traffic tickets.  And they're minor,

3    they're really petty:  No driver's license, expired

4    registration of a motor vehicle.  Frankly, Your

5    Honor, I've been there, I've done that, you know.

6    And what's interesting about this, Your Honor -- I'd

7    lining to tender this as Anthony Baca Exhibit B --

8    the interesting thing about this -- may it be

9    admitted, Your Honor?

10            THE COURT:  Any objection, Ms. Armijo?

11            MR. BECK:  No, Your Honor.  No objection.

12            THE COURT:  Anthony Baca Defendant's

13   Exhibit B will be admitted into evidence.

14            MR. LOWRY:  But what is really interesting

15   about this is how these really petty traffic tickets

16   disappeared.  They disappear on a nolle prosequi

17   signed by a prosecutor out of the County of Rio

18   Arriba.  Now, I've practiced criminal defense for

19   almost 20 years.  And I have never, ever seen a

20   prosecutor file a nolle, a notice of dismissal, on a

21   minor traffic ticket.  Ever.

22            And so this makes me think that this

23   chatter we're hearing on these phone calls, this

24   isn't idle chatter, these aren't lies.  This really

25   happened.  And the kicker, Your Honor, is this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6424

```
 1    dismissal of a traffic ticket isn't on the notice of

 2    benefits we got on January 17th of 2018, from the

 3    United States Government.  And Your Honor, this is a

 4    confidential document, so I'm not going to put it up

 5    on the Elmo.  But I would like to tender it, under

 6    seal, as Anthony Baca's Exhibit D -- after Anthony

 7    Baca's Exhibit C.  May I move for the admission?

 8              THE COURT:  Are you skipping C?

 9              MR. LOWRY:  Pardon me.  I think I

10    skipped -- well, A is the handwritten notes; B is the

11    actual ticket, and the notice is C.  So D would be --

12              THE COURT:  Any objection to C, Mr. Beck?

13              MR. BECK:  No, Your Honor.

14              THE COURT:  All right.  Defendant's Anthony

15    Baca Exhibit C will be admitted into evidence.  And

16    now you're doing D?

17              MR. LOWRY:  Yes, Your Honor.

18              THE COURT:  Any objection?

19              MR. BECK:  Is this the sealed --

20              MR. LOWRY:  D would be the sealed.

21              MR. BECK:  No objection to D sealed.

22              THE COURT:  Not hearing any objection,

23    Anthony Baca's Exhibit D will be admitted into

24    evidence.

25              MR. LOWRY:  So Your Honor, I mean, it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6425

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 269

```
 1    very convenient for the United States to say, Judge,
 2    don't worry about this.  This is all lies.  But I'm
 3    not so sure that that's the case.  And I'm not so
 4    sure we can sit down and come to that conclusion
 5    without actually listening or calling in Mr. Urquizo,
 6    Mr. Cordova, and Mr. Clark to really tell us about
 7    what transpired.  Because you can say they're all
 8    lying.  But they had a unique quality to the pattern
 9    of being confronted with evidence, with being
10    confronted with how their family members were going
11    to be prosecuted, and given a period of time to think
12    about what their next move was going to be.  And then
13    they called their family members and say, Here's what
14    happened, and here's how I got pinched.
15            And Your Honor, I just don't think it's a
16    trivial matter.  And I'm mindful of one of the
17    Court's admonitions -- I think it was in the
18    beginning of November, when we started the hearings,
19    it's like, Look, we're going to have a trial on
20    January 29.  And if we don't have your motions heard,
21    I'm going to deem them denied.  And I don't think
22    this is the kind of motion we can just deem denied
23    because of the timeliness.  Because the timeliness is
24    not the fault of the defendants.
25            Your Honor, we have been complaining about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6426

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 270 of 427

```
 1    this for some time.  You have instructed the United
 2    States how to review Brady and Giglio information.
 3    And, Your Honor, they know how to review Brady and
 4    Giglio information.  And this is Brady and Giglio
 5    information.  And there is absolutely no compelling
 6    reason why this was disclosed on January 12th of
 7    2018, and not sometime during the year of 2016 or
 8    2017.
 9              So, Your Honor, in light of the egregious
10    violations of this Court's orders, I would move to
11    strike Benjamin Clark, Billy Cordova, and Lupe
12    Urquizo as witnesses in this case.
13              Or in the alternative, we can have an
14    evidentiary hearing to see what the actual
15    individuals say about the pressure that was put on
16    them, and not take the representations of counsel.
17              THE COURT:  All right.  Thank you, Mr.
18    Lowry.
19              Any other defendant want to say anything on
20    this?  Mr. Villa?
21              MR. VILLA:  Judge, I want to just speak to
22    the disclosure of Jencks and echo what Mr. Lowry
23    said.  We've joined his motion.  Mr. Castle filed
24    this motion, this Document 1693, related to Trial 2.
25    It's a motion for immediate production of all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6427

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 271

1    remaining materials in the Government's possession

2    regarding Trial 2 witnesses.  And he filed it

3    because, as we reviewed the Jencks material, we

4    thought:  This isn't Jencks, this is Giglio.  This is

5    Brady.  This is stuff that should have been disclosed

6    when the Court ordered it disclosed, back in May.

7    And by way of example, attached to Mr. Castle's

8    motion is Document 1693-1 which I'd ask the Court to

9    consider as evidence to this motion.  This is a 302

10   from July 12, 2016 of Billy Cordova.  It's disclosed

11   January 12th with the Jencks material.

12          If you look -- Mr. Castle highlighted it --

13   it discusses the murder of an unknown Los Carnales

14   Gang member.  And what this goes on is Mr. Cordova's

15   role in murdering this individual in the streets of

16   Albuquerque, and dumping his body.  And as you heard

17   from Agent Acee and Mr. Cordova, one of the benefits

18   that Mr. Cordova received was he didn't get

19   prosecuted in the RICO case.  Agent Acee specifically

20   testified -- and the Court can take notice of that

21   for its decision here -- that he told Agent Neale to

22   stop writing overt acts on Mr. Cordova because Mr.

23   Cordova was going to cooperate.  And that was one of

24   the benefits Mr. Cordova received.

25          Well, this is information that Agent Acee

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6428

```
 1   and his team learned that Mr. Cordova did on behalf
 2   of the SNM.  It goes into detail about how they're
 3   told to kill this Los Carnales Gang member because
 4   he's Los Carnales, and they're SNM, and that's what
 5   they do allegedly.  And Mr. Cordova is proceeding to
 6   describe how he did it, and how he dumped the body in
 7   San Jose, in Albuquerque.  And this wasn't disclosed
 8   until January 12.
 9            This is isn't Jencks, Judge.  This is
10   Brady.  This is Giglio.  And the Government knew
11   about it not just recently, but according to this
12   document, in July of 2016.  So I think on the
13   discovery violation alone, you could strike Billy
14   Cordova's testimony as the appropriate remedy now
15   that we're on the eve of trial, before you ever have
16   to get into the coercion part.  This document -- and
17   Mr. Castle refers to another one in here, which the
18   Court can look at -- are just one example of many,
19   when you review this Jencks material.  It isn't
20   Jencks.  It's Giglio.  It's Brady.  And it should
21   have been produced as soon as these reports were
22   available.
23            THE COURT:  All right.  Thank you, Mr.
24   Villa.
25            Any other defendant have anything to say on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6429

```
 1    this motion?

 2           All right.  Mr. Beck?

 3           So you dropped the bow tie for trial, and

 4    going with a bolo tie?

 5           MR. BECK:  Yeah, just today.

 6           THE COURT:  That surprises me, Mr. Beck.

 7    There is a leap, you know; just go with a straight

 8    tie.

 9           MR. BECK:  From the bow tie to the bolo

10    tie.  I figured I'd try it out today.

11           THE COURT:  What do you think at the end of

12    the day?

13           MR. BECK:  You know, it's feeling pretty

14    comfortable.  This was my great uncle's, this was

15    his.

16           THE COURT:  Some juries don't like bolo

17    ties.

18           MR. BECK:  I guess I'll add that to my voir

19    dire.

20           THE COURT:  They don't like bow ties

21    either.  And they don't like beards.

22           MR. BECK:  I have heard that before.  I

23    have heard that.

24           Your Honor, I will start with Exhibit C

25    from the motion to strike.  This is the call in which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6430

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 274

```
 1   a person talks to his brother, Daniel, about what

 2   they were going to do to him.  Mr. Urquizo does not

 3   have a brother named Daniel.  And it says that the

 4   party calling is Marty, and not Mr. Urquizo.

 5            THE COURT:  I'll tell you what, given the

 6   time we're here, do you plan on filing a written

 7   response to this?

 8            MR. BECK:  Sure.  We can.

 9            THE COURT:  All right.  Well, you've heard

10   the arguments today, and you've seen the brief.  Why

11   don't you file a response and take a look at it?

12            All right.  We need to bring it to an end.

13   There is an issue that Ms. Wild was out of the room

14   on as far as exhibits.  So I might suggest that Ms.

15   Jacks, maybe you and Mr. Beck can come up and talk a

16   little bit about the -- Ms. Wild wants to talk to

17   each trial team.  So if y'all come up after it's over

18   and talk to her.  And Ms. Wild, the topic that we

19   need to discuss is going to be how we number

20   exhibits.  Do we want one set of exhibits?  Do we

21   want one for each jury?  I think the Government

22   thinks there should just be one.  The defendants are

23   leaning toward separate ones.  But if you'll add that

24   to the list.

25            All right.  I appreciate everybody's hard
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6431

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275

1   work.  We'll see you at 8:30 on Monday morning, and

2   look forward to working with you.

3            (The Court was adjourned.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6432

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3   UNITED STATES OF AMERICA

 4   DISTRICT OF NEW MEXICO

 5

 6

 7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8   Official Court Reporter for the State of New Mexico,

 9   do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on February 2, 2018.

15

16

17

18        _____
          Jennifer Bean, FAPR, RMR-RDR-CCR
19        Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:  (505) 348-2283
22        Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF NEW MEXICO

 3    UNITED STATES OF AMERICA,

 4          Plaintiff,

 5          VS.                        CR. NO. 15-4268 JB

 6    ANGEL DELEON, et al.,

 7          Defendants.

 8

 9          Transcript of Motion Proceedings before
      The Honorable James O. Browning, United States
10    District Judge, Las Cruces, Dona County,
      New Mexico, commencing on March 12, 2018.
11

12    For the Government:  Ms. Maria Armijo; Mr. Randy
      Castellano; Mr. Matthew Beck
13

14

15    For the Trial 1 Defendants: Mr. Brock Benjamin, Ms.
      Cori Harbour-Valdez; Mr. Patrick Burke; Mr. Jim
16    Castle; Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
      Shattuck; Mr. John Granberg; Mr. Eduardo Solis; Mr.
17    Billy Blackburn; Mr. Donovan Roberts; Ms. Lisa
      Torraco; Angela Arellanes
18
      For the Trial 1 Defendants:  Ms. Theresa Duncan; Ms.
19    Amy Jacks; Mr. Richard Jewkes; Ms. Carey Bhalla; Mr.
      William Maynard; Ms. Justine Fox-Young; Mr. Ryan
20    Villa

21    (Trial 1 attorneys left after verdict was returned.)

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2435

```
 1                THE COURT:  All right.  Good morning,
 2    everyone.   I appreciate everybody being here and on
 3    time and ready to go.
 4                The Court will call United States of
 5    America versus Angel DeLeon, Criminal 15-4268 JB.
 6    I'll call roll here a little bit according to the way
 7    I've organized things to start working on the hearing
 8    for the second trial.  And so I'll call the
 9    defendants that are awaiting the verdict in the Trial
10    1 at the end of this.
11                But let's start with Joe Lawrence Gallegos,
12    Defendant Joe Lawrence Gallegos.
13                MR. BENJAMIN:  Good morning, Your Honor.
14    Brock Benjamin on behalf of Mr. Gallegos, who is
15    ready.
16                THE COURT:  All right.  Mr. Benjamin, good
17    morning to you.  Is Mr. Sindel with you today?
18                MR. BENJAMIN:  He is not, Your Honor.
19                THE COURT:  All right.  So it's just you
20    today.  All right.  Mr. Benjamin, good morning to
21    you.
22                And for Defendant Edward Troup.
23                MS. HARBOUR-VALDEZ:  Good morning, Your
24    Honor.  Cori Harbour-Valdez and Pat Burke on behalf
25    of Edward Troup.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6435

 1            THE COURT:  All right.  Ms. Harbour-Valdez,

 2    good morning to you.  Mr. Burke, good morning to you.

 3    And Mr. Troup, good morning to you.

 4            THE DEFENDANT:  Good morning, Your Honor.

 5            THE COURT:  Mr. Gallegos, good morning to

 6    you.  I didn't say good morning to you.

 7            THE DEFENDANT:  Good morning.

 8            THE COURT:  I was looking for Mr. Sindel

 9    and didn't say hello to you.

10            All right.  And for Defendant Billy Garcia.

11            MR. COOPER:  Good morning, Your Honor.  Bob

12    Cooper and Jim Castle on behalf of Mr. Garcia.  And

13    he is present today.

14            THE COURT:  All right.  Mr. Cooper, Mr.

15    Castle, Mr. Garcia, good morning to you.

16            THE DEFENDANT:  Good morning, Your Honor.

17            THE COURT:  For Defendant Allen Patterson.

18            MR. SHATTUCK:  Good morning, Your Honor.

19    Joe Shattuck for Mr. Patterson, who is present as

20    well.  And Mr. Lahann will be here shortly.

21            THE COURT:  All right.  Mr. Shattuck, good

22    morning to you.  Mr. Patterson, good morning to you.

23            THE DEFENDANT:  Good morning, Your Honor.

24            THE COURT:  And for Defendant Christopher

25    Chavez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6436

```
 1                 MR. GRANBERG:  Good morning, Your Honor.
 2    John Granberg and Eduardo Solis for Mr. Chavez.
 3                 THE COURT:  All right.  Mr. Granberg, Mr.
 4    Solis, good morning to you.
 5                 MR. SOLIS:  I've only been on the case for
 6    two days.  I'm here to assist Mr. Granberg with
 7    whatever he instructs me to do.
 8                 THE COURT:  All right.  Glad to have you
 9    here.
10          And for defendant Arturo Arnulfo Garcia.
11                 MR. BLACKBURN:  Billy Blackburn on behalf
12    of Mr. Garcia, who is present, and we're ready, Your
13    Honor.
14                 THE COURT:  All right.
15                 MR. BLACKBURN:  Mr. Davidson will not be
16    joining us this week.
17                 THE COURT:  Mr. Blackburn, good morning to
18    you.  Mr. Garcia, good morning to you.
19                 THE DEFENDANT:  Good morning.
20                 THE COURT:  And for Defendant Andrew
21    Gallegos.
22                 MR. ROBERTS:  Good morning, Your Honor.
23    Donovan Roberts and Lisa Torraco for Andrew Gallegos.
24    We're all present and ready to proceed.
25                 THE COURT:  All right.  Mr. Roberts, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5438

```
 1    Torraco, Mr. Gallegos, good morning to you.

 2              And for Defendant Shauna Gutierrez.

 3              MS. ARELLANES:  Angela Arellanes with Ms.

 4    Gutierrez, who appears in person.

 5              THE COURT:  All right.  Ms. Arellanes, good

 6    morning to you.  Ms. Gutierrez, good morning to you.

 7              THE DEFENDANT:  Good morning.

 8              THE COURT:  And then for Defendant Daniel

 9    Sanchez.

10              MS. JACKS:  Good morning, Your Honor.  Amy

11    Jacks and Richard Jewkes for Mr. Sanchez.

12              THE COURT:  All right.  Ms. Jacks,

13    Mr. Jewkes, Mr. Sanchez, good morning to you.

14              And for Mr. Baca.

15              MS. DUNCAN:  Good morning, Your Honor.

16    Theresa Duncan appearing on behalf of Mr. Baca.  And

17    Mr. Lowry won't be with us this week.

18              THE COURT:  All right.  Ms. Duncan, Mr.

19    Baca, good morning to you.

20              THE DEFENDANT:  Good morning, Your Honor.

21              THE COURT:  And for Mr. Herrera.

22              MR. MAYNARD:  Good morning, Your Honor.

23    Bill Maynard for Mr. Herrera.

24              THE COURT:  All right.  Mr. Maynard, good

25    morning to you.  Mr. Herrera, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6438

```
 1              And for Mr. Perez.
 2              MS. FOX-YOUNG:  Good morning, Your Honor.
 3   Justine Fox-Young for Mr. Perez.  And Ryan Villa is
 4   on his way.  I think we'll see him about 10:00 this
 5   morning.
 6              THE COURT:  All right.  Ms. Fox-Young, good
 7   morning to you.  Mr. Perez, good morning to you.
 8              All right.  So I have been told that this
 9   is also a pretrial conference, so what I propose to
10   do is to start with some of the details of the
11   pretrial conference, and then we will fit the motions
12   in.  Ms. Wild has kept me posted with how y'all want
13   to have them argued.  I had an earlier list last
14   week.  I have a revised list.  Assuming the revised
15   list is how you want to argue it, then we'll proceed
16   that way.
17              Let me introduce you to Carol Bevel.  Many
18   of you who may know her.  She's been Judge Christina
19   Armijo's courtroom deputy for a long time.  And, of
20   course, with the Chief taking -- Judge Armijo taking
21   senior status, she's taking nothing but civil cases.
22   She's not taking any criminal cases.  So Ms. Bevel's
23   courtroom duties go way down, so she's been moved
24   over to me.  So those of you who have met Michelle
25   Behning, she's been moved to the magistrate judge's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6439

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7440

```
 1    division.  And I'm lucky to have such an experienced

 2    CRD starting work for me today.  So today is her

 3    first day.

 4             And as I understand things, JoAnn

 5    Standridge is going to work with me until we receive

 6    a verdict, or some resolution of the first trial, and

 7    then she'll be leaving me.  So Ms. Bevel and I will

 8    be working with you on the second trial.  So both of

 9    them will be here for at least a while.

10             All right.  What I'm going to tell the jury

11    on April 9 is that this is a six- to eight-week

12    trial.  We're in the seventh week of the Trial 1.  So

13    I think everybody estimated fairly well.  So I'm

14    going to tell them six to eight weeks on the second

15    one, to see if there is any problems with their

16    schedules.  As you know, that is what we also told

17    them both in the cover letter and in the

18    questionnaire itself.  So unless somebody sees some

19    reason to do something different on April 9, I would

20    propose that I use that six to eight weeks.

21             Does that sound good from the Government's

22    standpoint?

23             MS. ARMIJO:  Yes, Your Honor.

24             THE COURT:  Any of the second trial

25    defendants think anything else needs to be used, as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    we talk to the jury?  All right.  Not hearing any,
 2    then I will plan on telling them six to eight weeks
 3    for that trial.
 4              Courtroom:  I'm still a little undecided as
 5    to where we're going to have this trial.  Of course
 6    on the questionnaire we have indicated it's here.
 7    And I think presumption-wise, the case was indicted
 8    down here, I did the first trial down here.  We are
 9    looking at some rather large numbers.  And so I'm
10    trying to make it work.  There was some discussion of
11    putting it into the Sierra Blanca room.  And I'm not
12    as familiar with the courthouse here as some of y'all
13    may be, but I think that's the room right next door.
14    It's a little larger, but it's only six feet larger.
15    So it doesn't give me a lot more room.  It doesn't
16    give me the room that I have up in say, the Rio
17    Grande.  I think we've all been in the Rio Grande up
18    in Albuquerque.
19              I can't probably do the nice tables.  I
20    hope the defendants would agree that this was a nice
21    layout for them during the trial.  We worked very
22    hard to make it one that worked as far as optics from
23    the jury standpoint, from the voir dire standpoint,
24    and also for the comfort of the defendants and their
25    counsel and the paralegals.  I probably can't do that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6441

```
 1   with these sort of numbers that we're looking at.  So
 2   I'm still undecided about location.
 3          Ms. Jacks has sort of educated us a little
 4   bit on her experience around the country.  And we may
 5   pick up one of her tips as far as building two
 6   tables.  And so, what I understand Ms. Wild is
 7   thinking about doing is putting a table -- just one
 8   long table here for the counsel, and then behind that
 9   a table for the defendants, and so you'll turn
10   around.  But I don't have anything better, and
11   Ms. Jacks says it seems to work.  So that's kind of
12   what I'm looking at doing.  And that's probably going
13   to be whether it's in this room or Rio Grande or
14   Sierra Blanca.  I don't see any other way to do any
15   sort of seating.  So probably that means paralegals
16   and other people that may sit with you may not be
17   able to sit with you.  We can probably figure out
18   places that they can go.  But right at the moment,
19   the courtroom is still open, the location is still
20   open, and the seating arrangement is probably going
21   to move toward two long tables that I will have to
22   build for this trial.
23          So I don't have a lot more to say on that.
24   I will still be working with Ms. Wild, and I'll keep
25   you posted.  But I'm concerned about the numbers that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10443

1   we're looking at, that Las Cruces may just not be

2   able to accommodate a trial -- I guess there is eight

3   of you for the second trial.  So we'll just have to

4   keep an eye on that.

5          As in the first trial, I had closings

6   before the instructions.  But y'all may want to do

7   something different.  Does the Government want

8   closings before instructions or after instructions?

9          MS. ARMIJO:  After.

10          THE COURT:  You want closings after.  Most

11   lawyers want that.  Do I hear anybody wanting

12   something different?  Most people want to get the

13   judge out of the way so they can talk to the jury.

14          I haven't talked to Ms. Wild.  I don't know

15   if any of this has been filed or anything like this,

16   but it seems to me that we've worked through a lot of

17   details on the elements of the offense.  And so

18   normally what I would do is request that everybody

19   provide for me so I can put in the preliminary

20   instruction the elements of the offense.  What I

21   would propose is other than the name changing, go

22   ahead and use for the preliminary instruction what I

23   used in the first trial, which for those of you who

24   were not present for some of the portions, the jury

25   later asked us for a list of names and counts so that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6443

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 11

```
 1    they could begin to match it.  Because it was a
 2    little hard for them to keep that straight.  So we
 3    ended up early in the trial giving them a copy of the
 4    preliminary instruction.  And that's not something
 5    I've normally done, but we might give it some
 6    thought.  So I'm not sure I need elements of the
 7    offense.  If I can have Ms. Bevel hand out to you a
 8    copy of the preliminary instruction we gave in the
 9    first trial and give it to the eight lawyers.  And
10    then I can also just see if anybody has any problem.
11    But other than changing the names, I would propose to
12    use those elements to give the jury.  And then just
13    think about it.  What would you think about giving
14    them the preliminary instruction right then, after
15    they -- after I read it, they see it on the Elmo, we
16    just hand them an instruction so that they can begin
17    to keep track a little bit of the defendants and the
18    counts.  What would the Government think about that
19    sort of proposal?
20              MS. ARMIJO:  Your Honor, that's a good idea
21    given the confusion in the first trial.  And this has
22    more defendants, four murders, and some different
23    incidents.  And as you know, we had a lot fewer in
24    the first one.
25              THE COURT:  Okay.  What would the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6444

 1   defendants think about that?  Would that work for

 2   y'all?  Mr. Cooper?

 3              MR. COOPER:  Your Honor, I haven't looked

 4   at that preliminary instruction in a while.

 5              THE COURT:  Okay.  We'll get you a copy and

 6   we'll pass it out.  And then you can take a look at

 7   it.  It's based upon the Tenth Circuit pattern

 8   instruction, and then -- it doesn't go into all the

 9   sort of -- I know this is VICAR -- I'll call them

10   racketeering acts -- it doesn't go into the elements

11   that have to be proved for murder and those things.

12   It just simply has the jury focus on the VICAR

13   elements.  And then it lists for them the counts, but

14   it doesn't define the counts.  What do you think

15   about that?

16              MR. COOPER:  I'd like to just sit tight on

17   it.

18              THE COURT:  Sure.

19              MR. COOPER:  Look at it, and talk with

20   co-counsel before we make the decision.

21              THE COURT:  All right.  Why don't we do

22   this:  I'll go ahead and preliminarily sort of rule

23   that what I'm going to do is give something that's

24   pretty close to what was in the first trial.  And

25   then let's plan on passing it out to the jury.  And I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6445

1    won't make a final ruling on that till y'all get a

2    copy.  So Mr. Hammond, if Ms. Bevel would sort of

3    figure out who gets copies and get those passed out

4    to the defendants I think.

5           All right.  Generally in the preliminary

6    instruction I put the jurors can take notes.  I give

7    them cautionary instructions about notetaking and not

8    get too hung up on notetaking.  Is that acceptable

9    this time around as well?

10          (Mr. Lahann entered the courtroom.)

11          MS. ARMIJO:  Yes, Your Honor.

12          THE COURT:  How about from the defendants?

13   I'll say that it sure looked to me like they were

14   taking notes.  It looked like that was something that

15   they did throughout the trial.  And I think several

16   times it came up that we noted that on the record

17   that they were taking notes.  Anybody have any

18   objection to that?  All right.  Not hearing anything,

19   I'll put into the preliminary instruction they can do

20   notetaking.  And I'll caution them about not getting

21   hung up on notetaking, and leave their notes in the

22   jury room overnight.

23          I also put in a paragraph about questions

24   by jurors.  I asked them to write out questions, give

25   it to the courtroom deputy while the witness is still

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6446

1    on the stand and show them to you.  I don't typically

2    ask questions of witnesses, and I don't recall if I

3    did in this trial at all, but I don't typically do

4    that.  I'll show it to you.  If we can work it in,

5    fine; if we can't, we won't.  But anybody have any

6    problem with that being put in there?  We did get a

7    few questions from the jurors.  Some of them were

8    interesting, but I'm not sure that we did a whole lot

9    with them.  Sometimes they were just -- all right.

10   So not hearing anything --

11             MR. CASTLE:  Your Honor, with regards to

12   jury questions, is the Court going to allow us to do

13   follow-up questions?

14             THE COURT:  I'm not talking about voir dire

15   yet.

16             MR. CASTLE:  No, no, I'm talking about if

17   the juror asks a particular question, opens up a new

18   area.

19             THE COURT:  Well, I'll show it to you.  If

20   you want to go into the area, that's fine.  If for

21   some reason you want me to go into it, I'll do it.

22   But I'll show it to you before I do anything, and let

23   you kind of decide how you want to go into it.

24   Typically, what happens is the lawyers take care of

25   it.  They either say:  We can't go into that area, we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6447

 1    don't want you to go into it, Judge, or we'll take

 2    care of it, we'll ask the questions.  So that's

 3    typically my experience.  Probably yours, too, right?

 4            MR. CASTLE:  Yes.

 5            THE COURT:  All right.  So we'll put that

 6    in there.  We used six alternates for the trial.  So

 7    we had 18.  You can see how the jury box is set up

 8    for 18.  We did lose two jurors.  I think we lost a

 9    real juror -- if I'm not mistaken, we lost one real

10    juror to the flu about the second or third week, it

11    might have been the fourth week, I can't remember.

12    And then we lost an alternate literally first day of

13    last week, Monday.  So we juggled some alternates,

14    but we now have four alternates still under charge,

15    so that's where we are.

16            Anybody want to deviate from that?  Do you

17    want to keep the six alternates?

18            MS. ARMIJO:  Yes, Your Honor.  Especially,

19    I think, because we'll be getting into summertime and

20    things like that, it might be wise.

21            THE COURT:  Maybe we'll get past flu

22    season.

23            MS. ARMIJO:  They will.

24            THE COURT:  Maybe.

25            MS. ARMIJO:  Although I've had flu in April

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6448

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 16449

```
 1   so --
 2              THE COURT:  My grandkids were fighting it
 3   again this weekend.  They just get the flu.
 4              How about the defendants?  Are y'all
 5   comfortable with 18?  Anybody want a different
 6   number?  And how about -- do you want to discharge
 7   them at the end?  Do you want to keep some under
 8   charge?  Keep all of them under charge?  What's the
 9   Government's preference?
10              MS. ARMIJO:  I think we keep them under
11   charge and just wait to see how many -- if we haven't
12   lost any or not.  We may not need to leave all six,
13   but certainly we can revisit that.
14              THE COURT:  Okay.  So at the beginning you
15   want to keep all under charge?
16              MS. ARMIJO:  Yes.
17              THE COURT:  How about the defendants?  Are
18   y'all comfortable with that?  All right.  So at the
19   present time, when I excuse the jurors and keep the
20   alternates here, I'll keep them under charge, as I
21   have under the first trial.
22              Let's talk about how we're going to run the
23   trial.  We ran a fairly traditional schedule this
24   last time.  We ended up work pretty much 8:30 to
25   5:30, which is pretty long days, but it allowed us to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6449

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6450

```
 1    keep our word to the jury.  And I'd be a little
 2    reluctant to do something else.  It's going to be a
 3    little bit more logistics for the marshals to have
 4    people in here at 8:30, but Ms. Wild has talked to
 5    them and they've assured us that they'll be able to
 6    do that.  So, you know, we could try to do something
 7    different.  We could try to front-end load something.
 8    I think it's hard to get everybody in here before
 9    8:30.  So I'm not sure that we can do much more than
10    run the sort of traditional schedule that we ran
11    here.  I guess there is a possibility we could
12    front-end load the day, take a couple of breaks, no
13    lunch break, and break a little earlier in the day,
14    so you can prepare for the next day.  But I don't
15    know.  What's your thoughts?  Do you want to keep it
16    the same schedule we basically ran the last trial?
17            MS. ARMIJO:  I believe so, Your Honor.  I
18    know that we didn't have like a set lunchtime
19    depending on the days.  And I think the jury was
20    flexible with that.  But I think they definitely
21    wanted their lunch.  And the only other thing is I
22    will defer to the U.S. Marshal's Office.  I don't
23    know that we could get all the defendants here by
24    8:00.
25            THE COURT:  Yeah, that probably is true.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6450

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 18451

```
 1    It might be tough.  And it's tough to get people
 2    through doors.  So I'm not inclined to start earlier
 3    than 8:30, even if we were to try to front-end the
 4    day.
 5              How about the defendants?  Looks like the
 6    Government is saying just stay on a traditional
 7    schedule and have a lunch break.  Is that what
 8    everybody wants, rather than trying to do anything
 9    different on this case?  Everybody is kind of nodding
10    their head.  All right.  So we'll run a traditional
11    day.
12              If, by chance, we move this thing to
13    Albuquerque, I may sort of do a little bit different
14    on the lunch breaks.  In this last trial, because we
15    were starting at 8:30 -- and we were very good, the
16    counsel, the parties, the jurors were all very good
17    about being here on time.  I can't think of a day
18    that we had anyone sort of late.  We go from 8:30 to
19    about 10:00.  Sometimes we'd get started a little
20    early in here.  The counsel were great, they get on
21    in here and we started about 8:15, and that would run
22    to 9:45, and then we take a 15-minute break, and that
23    would put us at 11:30, which is a little early to
24    take lunch.  So oftentimes, we take a 15-minute
25    break, go another hour and a half, which put us about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    1:15.  The jurors seemed to like that.  They seem to
 2    like the fact that didn't have such a long afternoon.
 3    They kind of worked hard in the mornings, and then
 4    they kind of got off the afternoon.  We might do
 5    that.  I think if we're down here, we probably will
 6    still work around those sort of lunch hours.  If
 7    we're up there, I may actually take a little bit more
 8    of a set lunch, like let y'all go at 11:45, let you
 9    have an hour and 15 minutes, and I may stay on the
10    bench and work from 11:45 to noon, try to get maybe
11    some initial scheduling conferences or some
12    time-served sentences or something like that done.
13    But for the present time we'll kind of run the
14    schedule that we ran down here.
15            Openings.  All right.  Let's sort of chart
16    those out.  What does the Government expect the
17    length of its opening to be?
18            MS. ARMIJO:  No more than one hour.
19            THE COURT:  All right.  Let's then go to
20    you, Mr. Benjamin.  How long do you think your
21    opening will last?
22            MR. BENJAMIN:  Your Honor, we've been going
23    through it, but I don't think I'll be any longer than
24    an hour.
25            THE COURT:  Okay.  Ms. Harbour-Valdez, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6452

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 453

```
 1    Burke?

 2             MR. BURKE:  Less than an hour, no doubt.

 3             THE COURT:  Okay.  Do you have some

 4    estimate that I could put down?

 5             MR. BURKE:  Half hour.

 6             THE COURT:  Okay.  How about Mr. Cooper?

 7    Mr. Castle?

 8             MR. CASTLE:  Your Honor, before I tell you

 9    how much time, I want to explain a little bit about

10    how we're thinking of doing the openings.

11             THE COURT:  Okay.

12             MR. CASTLE:  It was our hope that

13    Mr. Garcia could go first in the openings, and do an

14    overview of Counts 1 and 2, then subsequent counsel

15    can borrow from and not have to repeat.  So we

16    anticipate that our opening might be longer than

17    others, but I still think it will be within an hour.

18    But I would ask the Court to consider a little

19    indulgence because we're going to try to cover areas

20    that other defendants are essentially going to be

21    able to use.

22             THE COURT:  Okay.  And that reminds me.

23    Your order is fine, y'all can just give me the order

24    of however you want to do it.  And if you want to

25    give it to me so that I can call and look like we've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6453

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 21454

```
 1   coordinated this, that would be great.  If we can't,
 2   I'll just do the best I can, recognize who is
 3   standing up and try to be ready.  I will assume,
 4   given the comments here, that -- and you don't have
 5   to tell me this, if you don't want to, but the
 6   defendants, it sounds like the defendants are wanting
 7   to make an opening at the beginning of the case,
 8   rather than reserve it for the end of the case.
 9   Okay, it looks like everybody is going there.
10            Did you have something, Mr. Burke?
11            MR. BURKE:  Yes, Your Honor, would you bump
12   me up to 45 minutes just in case.  I understand
13   you're going to hold me to that, so I don't want to
14   be stopped at 31 minutes.
15            THE COURT:  All right.  And so for the next
16   defendants, if you'll tell me, it looks like
17   everybody that's spoken so far wants to do theirs at
18   the beginning.  If you know, and you don't mind
19   saying, it just helps me sort of plan and write the
20   preliminary instructions.
21            But Mr. Shattuck, Mr. Lahann, good to see
22   you this morning.
23            MR. LAHANN:  Good morning, Your Honor.
24            MR. SHATTUCK:  Yes, we'd like to go at the
25   beginning as well, and 45 minutes at the most.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                  THE COURT:  All right.  Thank you, Mr.
 2    Shattuck.
 3                  And Mr. Granberg, Mr. Solis, what are you
 4    thinking?
 5                  MR. GRANBERG:  Your Honor, we'd like to go
 6    at the beginning, and ask for 30, 35 minutes.
 7                  THE COURT:  All right.  How about you, Mr.
 8    Blackburn, what do you have for Mr. Garcia?
 9                  MR. BLACKBURN:  Your Honor, we would prefer
10    to go at the beginning and request 45 minutes.
11                  THE COURT:  Thank you, Mr. Blackburn.
12                  Mr. Roberts, Ms. Torraco, what do you got
13    for Mr. Gallegos?
14                  MR. ROBERTS:  I suspect 30 to 45 minutes,
15    Judge, and at the beginning.
16                  THE COURT:  All right.  And Ms. Arellanes,
17    I'm so used to looking for you right here.
18                  MS. ARELLANES:  30 to 45 minutes, Your
19    Honor.
20                  THE COURT:  Thank you, Ms. Arellanes.
21                  MS. ARMIJO:  Your Honor?
22                  THE COURT:  Yes.
23                  MS. ARMIJO:  I know that in the last trial
24    we were unaware that one of the parties was going to
25    have a PowerPoint.  And we would just request -- and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6455

1   certainly we would do the same thing if there is

2   going to be any exhibits that are going to be used at

3   trial, like pictures from the scene, maybe we could

4   see them ahead of time just so that we can agree so

5   it doesn't create a break.  Because I'm certain that

6   we would probably agree to preadmission of the

7   exhibits, if that's going to be used.  But we would

8   just like a warning so we don't have to take the

9   time.

10          THE COURT:  Can everybody agree to some

11  sort of amount of time?  You'll show your PowerPoint,

12  you'll show -- any exhibits you're going to show

13  during the trial, you'll show it to the other side at

14  some specified time before?

15          MR. CASTLE:  Your Honor, they're just

16  requesting the exhibits we might use?

17          THE COURT:  I think they also want

18  PowerPoints, if you'll just run them past so they can

19  make objections to it.

20          MR. CASTLE:  Well, I disagree, unless

21  they're going to show me their opening statement in

22  advance, write it out, and let me go through it and

23  parse through it and make objections to their opening

24  statement.  A PowerPoint opening is essentially just

25  a visual opening statement, just like any other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6456

1    opening statement.  I don't think there is any

2    problem with exhibits, and notifying the other side

3    of the exhibits that might be used.  But those that

4    might use a PowerPoint, frankly, it's a work in

5    progress that happens all the way until it's

6    presented, essentially.  So I have a problem with

7    that generally, because I think we're going to

8    micromanage openings with objections, et cetera.

9         I know, when it came up in the first trial,

10   they raised an objection and went to the bench, the

11   Court overruled the objection and proceeded.  But

12   like I say, exhibits are fine, but I don't know of

13   any precedent to basically preview your opening with

14   opposing counsel.

15        THE COURT:  Okay.  Well, I have to agree

16   that I probably can't force this.  We can reach a

17   stipulation that -- I think that would be fine.  Do

18   be cautious.  Try to not put stuff in your

19   PowerPoints or in your openings that are going to

20   draw objections, and I've got to pull it off the

21   screen and stuff.  So try to use some good judgment

22   about that.

23        I remember I had a trial out in San

24   Francisco, and my partner had all these -- y'all

25   remember the days of juror notebooks, you remember?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I know that sounds like stone age now.  But he put a
 2    bunch of exhibits in there that the other side didn't
 3    agree to, and that just delayed everything, you know.
 4    He sent me in -- it was a civil trial.  He sent me
 5    in, he said, read some depositions while I straighten
 6    this notebook out.  So I went in there and bought him
 7    an hour, hour and a half, which is a horrible way for
 8    a plaintiff to start a trial, and then came out.  And
 9    he said:  "Do it some more."
10          I go, "I don't have any more."  So try to
11    avoid that.  Let's try to get off to a good start and
12    make sure it's pretty sanitized.
13          So I guess we have an agreement on
14    exhibits.  If you're going to use exhibits, you'll
15    show those to each other before the trial starts.
16    But as far as PowerPoints, I tend to agree, they're
17    probably a work in progress.  So all I can do is kind
18    of give you an admonition to try to think about
19    putting yourself in the shoes of the other side, and
20    not trying to do something that's going to draw an
21    objection and delay the trial, and delay your opening
22    as well.
23          Everybody -- I know the Government wanted
24    more -- but everybody agree with that from the
25    defendants' standpoint?  All right.  So we'll go with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 26

```
 1    that.
 2              Let's talk about voir dire.  Voir dire.  I
 3    guess some of you saw voir dire and saw how I did the
 4    voir dire in the first trial.  That was the first
 5    trial that I didn't get a jury picked the first day;
 6    did get it picked in two.  And I think we got a very
 7    good jury.  They're a wonderful group to work with.
 8    We'll see what they do, see if they finish strong.
 9    But they seem like a wonderful group.  So I think the
10    hard work that we all put into the first voir dire --
11    so you got to see how I conducted the voir dire.  And
12    I think I front loaded a lot of the questions that
13    the lawyers would be concerned about, I took it on my
14    time to ask questions and things like that.  So I
15    guess the question that I have on the voir dire is,
16    if you have questions about how I do voir dire?  And
17    some of you had multiple trials with me, or seen me
18    do it, or something.  So if you need to ask
19    questions, if you haven't, feel free to ask them.
20    But the question I'm trying to get is how long it's
21    going to take you to do your voir dire, and given the
22    way I do voir dire?
23              So let me, first of all, ask if anybody has
24    any questions about how I do voir dire that you
25    haven't learned from your co-counsel, or you haven't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 27

1   observed or seen me do?  Do you have a pretty good

2   feel as to what I'm going to do and take on my time,

3   and stuff?  Anybody got any questions?  All right.

4   So the question is going to be how long is your voir

5   dire going to last.  So Ms. Armijo, what do you

6   think?

7            MS. ARMIJO:  No more than one hour.

8            THE COURT:  No more than one hour.

9            How about you, Mr. Benjamin?

10           MR. BENJAMIN:  Mr. Sindel will be doing it,

11   Your Honor.  But in speaking with him, I believe an

12   hour, because we're going to try to coordinate.

13           THE COURT:  I'll probably put pressure on

14   everybody to try to keep it under an hour.  It was

15   hard enough to kind of just do it.  I'm not giving

16   everybody a flat cutoff that I won't consider more

17   than an hour.  But let's plan, for planning purposes,

18   keeping it under an hour, shoot for 55 minutes or

19   something like that.

20           See what we've got here.  This is a note

21   dated here at Las Cruces on 3/12/18.  The time is

22   9:30.  It looks like it's still signed by the

23   Foreperson, Juror No. 34, Mr. Laroche.  It says,

24   "Your Honor, could we please have some creamer for

25   the coffee.  Thank you."  Do I hear any objection

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6460

```
 1   from the four defendants in the first trial?
 2            MS. JACKS:  No.
 3            THE COURT:  Not hearing any objection.  How
 4   about from the Government?  So I will -- I'm going to
 5   put "yes," here, and then we'll track down some
 6   creamer.  Ms. Standridge, we got a note from the
 7   jury.  They want some creamer for the coffee.  Could
 8   you make that happen?
 9            THE CLERK:  Yes, sir.
10            THE COURT:  What exhibit number is this
11   going to be?  I'm going to mark this note AQ to Ms.
12   Standridge's clerk's minutes.  She'll make a copy,
13   take the note to the jury, and get the creamer to the
14   jurors.
15            All right.  So then, let's go to
16   Ms. Harbour-Valdez and Mr. Burke.  What do you think
17   your voir dire -- how long do you think yours will
18   last?
19            MS. HARBOUR-VALDEZ:  We'd like an hour,
20   Your Honor.
21            THE COURT:  Okay.  Shoot for 55 minutes,
22   sort of make a plan on that.
23            MS. HARBOUR-VALDEZ:  Yes, Your Honor.
24            THE COURT:  I'm not giving you a hard
25   deadline.  But let's try to keep it at 55; then we'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6461

```
 1    just play it by ear, depending upon how the questions

 2    are coming in.

 3            Mr. Cooper?  Mr. Castle?  What are you

 4    looking at?

 5            MR. CASTLE:  Your Honor, if I ask for two

 6    hours will you give me an hour and a half?

 7            THE COURT:  Well, shoot for 55.  I'm going

 8    to be consistent.  I'm not going to say flat no.

 9    We've got to get a feel for it.  I mean, every voir

10    dire is a little different.  And I'll be flexible.

11            MR. COOPER:  That's right.  Sometimes

12    jurors start talking and they talk more than other

13    jurors.  And I know when to sit down time.

14            THE COURT:  All right.  I know you do.

15            All right.  Mr. Shattuck, Mr. Lahann, what

16    are y'all thinking?

17            MR. LAHANN:  Your Honor, we expect an hour,

18    but probably much less.

19            THE COURT:  All right.  In your planning

20    shoot for 55.

21            MR. LAHANN:  Yes, Your Honor.

22            THE COURT:  Mr. Granberg, Mr. Solis.

23            MR. GRANBERG:  Your Honor, we'll shoot for

24    the hour as well.

25            THE COURT:  Draft up for 55, because I may
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-9949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have to sort of enforce it at some point.

 2              MR. GRANBERG:  Your Honor, one additional

 3    matter.  If you would excuse Mr. Chavez, he needs to

 4    use the restroom.  He needs to cross over and --

 5              THE COURT:  All right.  Let's go ahead

 6    while I'm getting this.  I'm not going to be dealing

 7    directly with him, so maybe he can get in and out

 8    pretty quick, and we can keep going here.

 9              Let's see.  Mr. Blackburn, what do you have

10    for Mr. Garcia?

11              MR. BLACKBURN:  Judge, do you think I can

12    do anything under two hours?

13              THE COURT:  You can't?

14              MR. BLACKBURN:  Not with you.  You've seen

15    that before.

16              THE COURT:  All right.  So you're at the 55

17    minute mark?

18              MR. BLACKBURN:  Yes, Your Honor, how about

19    57 and a half?

20              THE COURT:  All right.  Mr. Roberts, Ms.

21    Torraco, what do you think?

22              MR. ROBERTS:  Judge, 42 minutes.

23              THE COURT:  All right.  You're like my son.

24    When he was a little boy, he came in and asked me to

25    wake him up "at approximately 5:46."  He didn't know
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6463

```
 1    exactly what the word approximately meant yet.
 2              All right.  Ms. Arellanes, what are you
 3    looking at?
 4              MS. ARELLANES:  About 40 minutes.
 5              THE COURT:  All right.  So I'll -- after I
 6    get all those totals, I'll look at it, and begin to
 7    see what we have as far as what we're looking at.
 8    But it looks like we're going to be probably crawling
 9    into that second day, given the math y'all are
10    putting there.
11              MS. ARMIJO:  Your Honor, may I ask one
12    other question with reference to voir dire?
13              THE COURT:  Yeah.
14              MS. ARMIJO:  As you know now, down here in
15    Las Cruces, the clerk's office and the judges here
16    use numbers as opposed to names.  Regardless of where
17    the trial is, we would make that request.  Because as
18    you saw what happened the second day, we had to
19    excuse a few jurors who were uncomfortable with their
20    personal information and their name being used.
21              THE COURT:  What I have done for the second
22    trial to avoid any sort of issue there is Mr. Sorrell
23    has sent out a note to his staff saying they are not
24    to tell the jurors anything about how I'm going to
25    conduct this trial or how this trial will be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6464

1    conducted other than what is public information;

2    i.e., what is in the cover letter, what is in their

3    standard information, and what is in the sort of

4    standard information.  They're not to tell the jurors

5    that I'm going to use numbers.  They're not going to

6    say I'm going to use numbers for security purposes.

7    They're not going to do anything that gets off script

8    so that we don't have it.

9            I have seen the memo, discussed it with

10   Ms. Wild.  We feel like it was an adequately strongly

11   worded, sternly worded memo that should solve the

12   problem.  I think they're aware of the issues that

13   they created for us in voir dire, and that they're

14   not going to do that again.

15           But let me hear from the defendants.  Do

16   the defendants prefer that I use numbers or you

17   prefer I use names?

18           MR. COOPER:  Names always.

19           THE COURT:  Well, I think I'm going to use

20   names.  If there are people that are fearful of being

21   on this jury, we need to know about it, and we need

22   to deal with it.  I think this is just a part of this

23   process.  We got some questions embedded into the

24   questionnaire that actually is going to probably kick

25   up some responses that, you know, we're going to have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6465

1   to deal with on the 9th, just as we had to deal with

2   answers in the questionnaire.  I understand that the

3   first round of jury questionnaires went out to

4   counsel on Friday.  Affirmative nods there, so y'all

5   got the first --

6            MS. ARMIJO:  The United States did not get

7   them.

8            THE COURT:  You didn't get them?

9            MS. ARMIJO:  We got nothing.  All three of

10  us.

11           THE COURT:  Well, hold on.

12           MS. ARMIJO:  Did the defense get them?

13           MS. HARBOUR-VALDEZ:  We got a link on

14  CM/ECF.

15           MS. ARMIJO:  No, the United States was left

16  out.

17           THE COURT:  All right.  Let me tell

18  Ms. Wild.  All right.  So I sent a note to Ms. Wild.

19  Maybe I'll get you an answer here pretty quick.

20           Let's see where I was on -- oh, I was going

21  to tell you that I may, and most likely will, and

22  probably have already made the decision -- I hope I

23  remember this exactly right -- I'm going to do

24  bringing in jurors a little bit differently for the

25  trial than I did the first trial.  Just because,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6466

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 34

1    heretofore, I'd always been able to pick a jury out

2    on the first day.  So this was the first trial that I

3    had had where I had not been able to pick a jury the

4    first day.  Sometimes it was long days, we went to

5    6:00, 6:30, but I'd always gotten it done.  Given

6    what you've just told me about voir dire, given that

7    we've got more defendants, I don't think I'm going to

8    be able to speed it up.  So what I'm probably going

9    to do is bring in the first wave on Monday, and I'm

10   not going to bring in the second and third wave.  So

11   I think what I'm going to do is bring in the first

12   wave.  We will still bring in 60 into the courtroom.

13   I'll probably have a handful, 10 or so people, 10, 15

14   people in the jury assembly room that will be part of

15   wave one.  We'll bring 60 in.  So I'll try to get 60

16   people in the seats.  And then we'll start it there.

17   And if we -- I think we were able to get our jury out

18   of that 60 in this last trial.  So I think we've got

19   a good shot at doing that again.  I think any more

20   than that just makes it very hard to do voir dire

21   because, as you know, it's always Juror No. 59 back

22   there that raises their hand on every question.  So

23   if you start getting 70 in here, it just makes it

24   longer.  So I think I'd rather work with that 60,

25   like we did the first trial and then see if we can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6467

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 35468

1   get it.  If we can't, then we'll bring in some

2   number, we'll agree to some number in advance, or at

3   the time, to try to complete the jury selection.  And

4   then I'll bring the second wave in the next day.  So

5   if we don't get it done the first day, we're sort of

6   guaranteeing that we'll go into the second wave.  I

7   don't know about the third wave.  I don't know if Ms.

8   Wild has decided to bring in the third wave on

9   Wednesday or bring them in sometime the next day, or

10  on Tuesday.  But I am going to make that adjustment

11  to try to just help us with having so many people

12  waiting that first day.  We'll have a large number of

13  people waiting probably the second day, but I don't

14  know if we can avoid it.

15        All right.  I think that covers those

16  aspects.  Like I said, we're going to have to figure

17  out the logistics of the courtroom.  And we'll work

18  with you on that.  I think we were all very good --

19  we didn't have any mishaps in the first trial, but I

20  would ask everybody, the Government, my staff, me,

21  certainly defense lawyers, help me out.  We don't

22  need to have a mistake with an increased number of

23  defendants.  Make sure we've got everybody seated at

24  the table before we bring that jury in.  We don't

25  want the jury to ever see a defendant shuffling in or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6468

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36469

1   out of the courtroom.  I just don't want to try to

2   raise that issue.  So try to help everybody out by

3   looking around, make sure that everybody is here.

4   But we did it the first trial, but we're going to

5   have probably a little higher numbers here, so we'll

6   have to work together.

7            MR. ROBERTS:  Judge, may I just make an

8   observation.  Sitting here in the jury box, I can see

9   through the paneling there.  So, I mean, if there is

10  a concern with ankle bracelets and so forth, I can

11  see right through the cloth.  So the Court may want

12  to consider changing what's there, using a

13  different --

14           THE COURT:  We'll look.  I mean, we went to

15  great lengths, and nobody could see anything.  So

16  I'll relook.  But we had a lot of people sitting

17  where you were for the first trial.  I think all the

18  defense lawyers came in.  We had the defendants come

19  in.  We had them stand, we had them walk, and nobody

20  could see anything.  So we'll do a real careful

21  check.  It may be a little worn down after seven

22  weeks but we started off real strong.  So we'll take

23  a look at that.

24           MR. ROBERTS:  I understand, Judge.  I think

25  partly the lighting, because the lighting reflects




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   back.  And this cloth over here is different

2   material.  You can't see through this one, but you

3   can see through that one.

4              THE COURT:  All right.  We'll take a look

5   at that, and we'll do a lot of checks before we start

6   the second trial.  And probably it's going to be

7   different tables and everything.

8              All right.  So probably at this point let

9   me say this on exhibits:  Again, the Government gets

10  numbers, so it's kind of easy for them, 1 through

11  whatever.  The defendants get the letters, and again

12  it's A through Z, and then after that, it's AA and AB

13  and AC.  If it's more than that it's BA, BB, BC.

14              I was a little uncomfortable, I've got to

15  tell you, about the defendants' numbering system.

16  But Ms. Wild kept telling me to settle down, so I let

17  it go.  But that was -- seemed crazy to me.  But I

18  think we made a good record.  All our exhibits

19  matched up.  So I'm not going to get too worked up

20  about that.

21              I know we probably need to get started on

22  these motions to decide some of the exhibits, but is

23  there any issues about exhibits that I can help you

24  with that's independent of the motions?  And if there

25  is a motion there that we need to deal with exhibits,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6470

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 38

```
 1    then I'll just stop and start going to the motions.
 2            But how about from the Government's
 3    standpoint?  Are there any issues with exhibits that
 4    I can help you with this morning?
 5            MS. ARMIJO:  No, Your Honor.
 6            THE COURT:  Okay.  How about from the
 7    defendants' standpoint?  Is there any issues with
 8    exhibits?
 9            MR. CASTLE:  Your Honor, we don't have any
10    issues with the exhibits, but I'm wondering if I
11    could raise two matters concerning the pretrial
12    conference.
13            THE COURT:  Okay.
14            MR. CASTLE:  Your Honor, we had filed a
15    motion for additional peremptory challenges.  And at
16    the time the Court denied it without prejudice to
17    reconsider that at the eve of trial.  I believe, but
18    I don't know for certain, that the Court had granted
19    some extra peremptories to Trial 1.
20            THE COURT:  No, I didn't.
21            MR. CASTLE:  Oh, you didn't.  Okay.
22            THE COURT:  I did not.  What we did is
23    there were additional peremptory challenges, whatever
24    it is under the rule.  And I'd have to refresh my
25    memory as to alternates, because we had six
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6471

1    alternates.  And I forget, was it three?  That's my

2    memory as to what the statute or the rule requires.

3    Do you remember?  You looked it up.  I think it's

4    three.  So when we get the jury confirmed, I'll then

5    give you the first six tentative alternates, and then

6    I'll give each side three challenges.  If that's what

7    I did the first trial, I'll do it the second trial.

8    So you get three challenges as to the alternates.

9    But with this number of people and the number of

10   defendants, I didn't feel like I could give really --

11   I just didn't feel like I'd ever get a jury picked if

12   I started giving additional peremptory challenges.

13   And it was difficult enough the first time with four

14   defendants.  And I don't think I'll be giving extra

15   peremptory challenges to the defendants the second

16   trial.

17           MR. CASTLE:  I understand.  I'll just make

18   a brief record.  I think that the fact that we have

19   double the number of defendants is actually a factor

20   that should militate towards additional peremptory

21   challenges.  Because if you start taking the number

22   that we have per defendant, and if you divide it by

23   the number of defendants, if that's the way the

24   defense has to do it, essentially, we're getting one

25   or two per defendant.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              There are four different crime bases -- or

 2    five, is it -- I can't even keep track of the number

 3    on the second trial.  But it's five different crime

 4    bases; whereas, there weren't that many in Trial 1.

 5    So I know that the law is it's completely in your

 6    discretion.  It's frankly almost unchallengeable on

 7    appeal.  I understand that.  But I would encourage

 8    the Court to at least consider it, given the

 9    complexities that Trial 2 presents.

10              THE COURT:  Well, the reason I'm saying

11    without prejudice is, if the numbers were to reduce

12    dramatically, then I'd certainly take another look at

13    it.  But at the present time, I just think it's going

14    to be impossible for us to give additional

15    peremptories and pick a jury.  So it will be denied

16    without prejudice to you renewing it if we look at

17    some different number of defendants as we get closer

18    to the trial.

19              MR. CASTLE:  The second issue is the

20    seating arrangement the Court discussed, I'm not sure

21    I understand it completely, but it sounded like the

22    defendants would not be sitting with counsel.

23              THE COURT:  Well, you'd be sitting with

24    counsel, but the counsel would be in front of the

25    defendants.  So the defendants would be behind the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    counsel.  The counsel would be in a table immediately
2    in front, and then defendant immediately behind, so
3    you'd have your defendant right behind you.
4              MR. CASTLE:  Your Honor, I would prefer to
5    be with my client so that we could have contact
6    without having to turn our back to the witness and to
7    the jury.  A lot of times we have to have
8    communications with our client while evidence is
9    being presented.  And that process prevents counsel
10   from paying attention both to what's happening in the
11   courtroom and their client.  And so that's one issue.
12             The second is, I understand the first jury
13   had some difficulty at least figuring out who
14   everybody is.  When we put all the defendants in a
15   line-up, essentially a row together, they're lumped
16   together as a unit.  I think the visual actually
17   favors the prosecution's theory in the case, frankly.
18             And so I think the idea of the separate
19   tables for Trial 1 was very good because it
20   essentially told the jury:  These are separate
21   defendants, and you need be analyzing in a distinct
22   way.  This is not just one big group.
23             And so I think I speak -- we didn't confer,
24   but I think I speak on behalf of all the defendants
25   that we would prefer an arrangement where we would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6474

1    have separate tables.  And if that means going to

2    Albuquerque for a larger courtroom, I think the

3    rights of the defendants in getting a fair trial

4    trump the particular location of the trial itself.

5    It still is in the district.  And as the Court knows,

6    this is one district; we don't have southern and

7    northern district of New Mexico.  So we would prefer

8    that.  I know the Court is working hard to try to

9    figure out what's fair for everyone.

10           But I do think, I don't know what

11   Ms. Jacks' experience is, but my experience is we

12   want to be able to have confidential communications

13   with our client.  We want to be considered

14   independently of the guilt of the other defendants.

15           And frankly, our theory of the case is our

16   client didn't have anything to do with the crimes in

17   Counts 1 or 2, independent of whether the other

18   defendants did.  And so I don't want the jury to

19   think we're all in this as a big defense team, where

20   all the defendants are in it together.

21           So those are my thoughts for the Court to

22   consider when it's considering the courtroom

23   arrangements.

24           THE COURT:  Well, I'll take those into

25   account.  And I don't think I can do what I've done

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6475

1    here, unless the numbers drop dramatically.  I don't

2    think you're going to get individual tables.  I think

3    we're going to have to look at two tables.  If there

4    is other things we can do with the two tables, like

5    put some defendants together on one row, and with

6    their counsel, or something like that -- I'll talk to

7    Ms. Wild about that, if that helps with the optics.

8    So we'll have a dialogue about this.

9              I do think that right at the moment with

10   these numbers, whether I have the trial in

11   Albuquerque or here, it's going to be two tables.  So

12   start working with that concept.  If there is

13   something I can do to help with the optics, I'm all

14   for it.  I want you to get the same benefit that the

15   first group got of having, you know, the optics of

16   being separate, forcing the jury to consider each

17   separately.  So I'll work with you as much as I can

18   on that.  But start thinking of two tables.  Because

19   just logistically we can't get eight defendants'

20   tables in here.  And I can't do it in the Rio Grande

21   up there.  So I'm going to build two tables.  So

22   think about that, the present numbers, how can I get

23   you there.

24              MR. CASTLE:  Severance is one way.

25              THE COURT:  I figured I might hear that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    today.
 2            All right.  Mr. Burke?
 3            MR. BURKE:  Yes, Your Honor.  I'm sensing
 4    that you've already thought about the motions for
 5    severance.  And it doesn't sound like that's too
 6    optimistic for the defendants.  That would be one
 7    way.
 8            THE COURT:  Yeah.
 9            MR. BURKE:  And I do want to endorse
10    Mr. Castle's comments about the idea of separation.
11    It's very critical to having the jury independently
12    evaluate each defendant.
13            But that's not why I'm up here.  I did have
14    a logistical question of a pretrial nature.  In your
15    order granting the joint motion to amend the fourth
16    scheduling order, which is Document 1626, you set
17    deadlines for jury instructions, proposed voir dire,
18    and exhibit lists.  And I am guessing that the date
19    for objections to the exhibits would be a week after
20    that, judging from what the practice was in the prior
21    orders.  Is that correct, Your Honor?
22            THE COURT:  Does that work for the
23    Government?
24            MS. ARMIJO:  Yes, Your Honor.
25            THE COURT:  All right.  Does that work for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 45478

```
 1   all the defendants?
 2            MR. BURKE:  So that's a firm date for
 3   objections.  All right, thank you, Your Honor.
 4            THE COURT:  Ms. Harbour-Valdez
 5            MS. HARBOUR-VALDEZ:  Your Honor, we'd also
 6   request that, like you did in the first trial, that
 7   you order the Government to provide a may call and a
 8   will call witness list two weeks prior to the start
 9   of the trial, which would be March 26.
10            THE COURT:  Is the Government agreeable to
11   that?
12            MS. ARMIJO:  I think that we have narrowed
13   it down to will call.  The first list is pretty much
14   a significant long list.  But we have it narrowed
15   down, and so I think that everyone we put on there
16   has a pretty good chance of being called.  If there
17   is people that we're going to add in that are just
18   potentials, we will do it.  But right now the list
19   that we're working on will be a list that is pretty
20   significant.
21            THE COURT:  So your will call list that you
22   have now and that you probably will have on May (sic)
23   26 is probably the list, and then you may have a
24   shorter may call list that --
25            MS. ARMIJO:  Yes.  If after we meet -- as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6478

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 46

1   you know, we've been busy -- if after we're able to

2   meet and decide on additional people to put in there,

3   then we would put in the list that we filed potential

4   witnesses.

5          THE COURT:  Okay.  Does that sound like

6   what you need?

7          MS. HARBOUR-VALDEZ:  Just for

8   clarification, so this is your will call?  The 16

9   pages?

10          MS. ARMIJO:  No.

11          MS. HARBOUR-VALDEZ:  So when are we going

12   to get that one?

13          MS. ARMIJO:  Well, I believe we haven't

14   gone through the deadlines yet.

15          THE COURT:  Well, she's asking for May

16   26 --

17          MS. HARBOUR-VALDEZ:  March.

18          THE COURT:  I mean, March 26 to give a --

19          MS. ARMIJO:  We could, but we would ask for

20   a reciprocal date before -- I don't have the order in

21   front of me, but I believe previously we had dates

22   that both parties gave witness lists.  So as long as

23   the defense wants to give their witness list on March

24   26, that's fine.

25          THE COURT:  Do y'all want to do a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    reciprocal exchange of witness lists?
 2            MS. HARBOUR-VALDEZ:  I think we need to see
 3    the Government's prior to us providing ours.
 4            THE COURT:  Let's do this:  Let's just -- I
 5    mean, I think it's most important to give -- to get
 6    the Government's into your hands.  So I will set
 7    March 26 as the date.  Sounds like the Government is
 8    pretty far along in figuring out who their will call
 9    people may be, and they will have a short list of may
10    call.  So I think you're going to get what you want.
11            Why don't the defendants do the same thing.
12    And I understand you may have to revise it after you
13    see the Government's list.  So you'll have a chance
14    to do it.  But at least at the present time you'll
15    have a reciprocal exchange, with the understanding
16    that after the Government shows you their list, you
17    may have to revise your list.
18            MS. HARBOUR-VALDEZ:  And Your Honor, Mr.
19    Cooper pointed out that the prior deadline would have
20    been March 23 for the will call list.  The Jencks
21    deadline was March 26.
22            THE COURT:  All right.  So the Government
23    is shaking their head yes.
24            MS. ARMIJO:  That's fine, Your Honor.  We
25    can do the 23rd.  And then if the defense wants file
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6480

```
 1    their witness list on the 26th, have the weekend,
 2    that's fine, too.  We'll provide ours the 23rd.
 3              THE COURT:  All right.  So let's do that.
 4              All right.  Mr. Blackburn.
 5              MR. BLACKBURN:  Your Honor, I know that you
 6    were -- I agree with Mr. Castle and Mr. Burke's
 7    comments about the optics.  The Court keeps talking
 8    about two tables.  Have you -- do you have something
 9    in mind?  Have you started?  Is there -- are we
10    talking two tables like this?  You keep talking about
11    building something, so I'm just  --
12              THE COURT:  I think it's going to be taking
13    a table like this and building it.  I don't know
14    about the width, but it's going to have to be built
15    to fit two tables in either place, so instead of sort
16    of running them like this, it will run lengthwise.
17    And it will just be two tables lined up rather than
18    separate tables for counsel and paralegals and
19    parties.
20              MR. BLACKBURN:  There was some discussion
21    about construction.  I didn't know if the Court was
22    saying you've already started doing that, or if it's
23    something we could look at in the meantime.
24              THE COURT:  I don't know the answer to
25    that.  I don't know where Ms. Wild is on that work.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6481

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 49482

```
 1    So whoever is sort of -- maybe Ms. Harbour-Valdez is
 2    the liaison.  Maybe you can check with Ms. Wild as to
 3    where you are on the tables.  But I don't know at the
 4    present time.
 5              MS. HARBOUR-VALDEZ:  Your Honor, I'll be
 6    happy to do that.
 7              One more item.  In the first trial you
 8    signed an order allowing the defense staff to bring
 9    their cellphones in.  I submitted a similar order to
10    Ms. Standridge and Ms. Wild this morning.  I believe
11    Ms. Bevel has it now.
12              THE CLERK:  I have that.
13              MS. HARBOUR-VALDEZ:  We would request, Your
14    Honor, that you sign that this week.  Some of the
15    defense witnesses that have been subpoenaed have our
16    staff members' cellphone numbers on them as the
17    contact, since we would not able to step out and
18    answer those.  So we would ask you sign that.
19              THE COURT:  Is there any objection from the
20    Government on that order?
21              MS. ARMIJO:  No, Your Honor.
22              THE COURT:  Any other objections from the
23    defendants?  All right.  So when that order is
24    presented to me, I'll sign it and get it entered.
25              MS. HARBOUR-VALDEZ:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6482

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50

```
 1              THE COURT:  All right.  Any other issues on
 2   exhibits?  And can anybody think of any motions that
 3   raise any exhibit issue?
 4              If not, I'm going to move to witnesses.
 5   And this may trigger up some of the motions, so maybe
 6   I'll need to stop and deal with motions.  But is
 7   there any issues or disputes with witnesses that I
 8   need to deal with or can deal with today?
 9              MS. ARMIJO:  No, Your Honor.
10              THE COURT:  The Government is shaking their
11   head no.  How about from the defendants?  Any issues
12   other than -- is there anything in the motions that I
13   need to address?
14              MR. CASTLE:  There was a motion filed by a
15   witness' attorney.
16              THE COURT:  Yeah.
17              MR. CASTLE:  The witness being Leroy Lucero
18   by Mr. Fallick.  And Mr. Fallick says he can be here,
19   I believe, at 1:00 --
20              MR. COOPER:  Yes.
21              MR. CASTLE:  -- to address that issue.
22              THE COURT:  Well, if that's the only issue
23   on witnesses --
24              MR. COOPER:  There is another one, Your
25   Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6483

```
 1                THE COURT:  Let me see what Mr. Cooper has,
 2     then Mr. Castle.  I'll come back to you, Ms. Armijo.
 3                MR. COOPER:  Your Honor, I just saw that
 4     Phil Sapien has filed a motion to quash the writ with
 5     regard to Fred Quintana.
 6                THE COURT:  Is that another one of the
 7     people you've subpoenaed on the motion to dismiss?
 8                MR. COOPER:  That's correct.  He just filed
 9     a motion just five minutes ago, maybe.
10                THE COURT:  Okay.  Well, I don't have a
11     copy of that, and I haven't read it.  But I'll take a
12     look at it, we'll get it.
13                MR. COOPER:  Neither have I.
14                THE COURT:  I guess at some point I want to
15     talk to you about the motions to dismiss.  And maybe
16     that's the time to talk about these witnesses.
17                Mr. Burke, did you have anything?
18                MR. BURKE:  No, my comment was --
19                THE COURT:  The same one?  All right.  So
20     if there is no other issues and disputes other than
21     those connected with the witnesses as to the motions
22     to dismiss, why don't I --
23                MR. COOPER:  Your Honor, excuse me.  May we
24     have one second to confer?
25                THE COURT:  Certainly.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6484

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 52 6485

```
 1              MR. BENJAMIN:  Your Honor, while they're
 2   conferring on that, can I raise a purely
 3   administrative --
 4              THE COURT:  You may.
 5              MR. BENJAMIN:  I think Trial 1 was able to
 6   get the courtroom opened up at 7:30 in the morning so
 7   that counsel could come in and out, and kind of prep
 8   for the day, Your Honor.  I would just ask that that
 9   continue.
10              THE COURT:  Yeah.  Let me ask Ms.
11   Standridge:  Do you see any problem with that from
12   the logistics standpoint?
13              THE CLERK:  We have to get it cleared by
14   the U.S. Marshal.
15              THE COURT:  All right.  I'll work to get
16   that done.  I don't anticipate any problems with the
17   marshals.  I'll get back with you, or Ms. Bevel will
18   get back with you on it.  But the rules were that I
19   can't let in jurors before 8:00.  But they can start
20   letting them in.  But so that y'all don't have to
21   stand in line, we'll let y'all in early, if you want
22   to be here early.  You don't have to be here early.
23   But let you in.  And my understanding was there was a
24   key given to one of the paralegals, that had a key to
25   then this room that was designated, and if y'all want
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 53

```
 1   to just tell us who.  So unless you hear otherwise,
 2   plan on that being also the case in the second trial.
 3   If I run into problems with the marshals, we'll let
 4   you know and we'll work those out.
 5            MR. BENJAMIN:  One second issue, Your
 6   Honor.  The Court has mentioned Albuquerque multiple
 7   times this morning, and that makes me a little
 8   nervous, simply because at this point in time, Your
 9   Honor, we've made funding requests and are getting
10   close to deposit deadlines on the properties.
11            THE COURT:  Right.  I understand.  I
12   actually thought about having this hearing in
13   Albuquerque because of the numbers we were looking
14   at.  But because I had already funded you guys to be
15   here, I already had subpoenas out for this week, I
16   decided not to try to do anything with this week.
17            So Ms. Wild told me I was probably okay if
18   I wanted to do something down the road, but I didn't
19   try to mess around with this week because I knew that
20   exact problem.  And I know that I'm going to have to
21   probably make some decisions sooner rather than
22   later, if I don't want to avoid the same problems
23   April 9.
24            MR. BENJAMIN:  The 15th would make me less
25   nervous than the 16th for funding, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  What would make you --
 2                MR. BENJAMIN:  It's just I have a week for
 3   residence that we've put, and essentially the way we
 4   structured the agreement, Your Honor.
 5                THE COURT:  Well, I'll try to work with
 6   Ms. Wild as soon as I have some time, and try to make
 7   some final decisions on that.
 8                MR. BENJAMIN:  Thank you, Your Honor.
 9                THE COURT:  All right.  Did you have
10   something else, Mr. Cooper?
11                MR. COOPER:  I do, Your Honor.  Thank you.
12                Judge, we have subpoenaed Jim Moore and
13   Cheryl Lackey, two former Department of Corrections
14   employees who are presently living in Oklahoma.  They
15   are now married; they have a four-year-old child that
16   has some fairly significant issues.  And anyway,
17   they've requested to appear telephonically with
18   regard to the subpoena that we've issued.
19                And also Reeve Swainston we have
20   subpoenaed, and he would like to appear
21   telephonically.  And we told them, all three of them,
22   that we would discuss with the Court whether or not
23   that is something that they could do.  And we would
24   like to get back with them today, if the Court will
25   allow their appearances to be had telephonically.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6487

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 55488

```
 1              THE COURT:  Well, are all the defendants in
 2    agreement on that, that would be okay with them?  All
 3    right.  So not hearing any objections, I don't have a
 4    problem, if the defendants don't.  I guess, if it
 5    were the other -- Government trying to bring people
 6    here and you not have people to confront, I might
 7    have a little concern.  But if the defendants have
 8    subpoenaed these people and want them here, and
 9    they're comfortable having them by telephone, I don't
10    have a problem.
11              How about the Government?  Are y'all
12    comfortable with that as well?
13              MS. ARMIJO:  Yes, Your Honor.
14              THE COURT:  All right.  So it would make me
15    a little nervous if it was the other way because of
16    confrontation issues.  I'm not sure they cover it,
17    but it would just make me pause.  But I think if
18    defendants are calling them and comfortable with
19    that, I think I'm okay with it.
20              MR. COOPER:  Okay.  Thank you, Judge.
21              One final matter:  I think we will
22    designate Cindy Gilbert to be the llavera, the
23    keyholder.
24              THE COURT:  Were you at the first trial?
25              MS. GILBERT:  Yes, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I didn't quite know what
 2    paralegal had the keys.
 3              MR. COOPER:  She's going to have the keys.
 4              THE COURT:  She's got the keys.  We heard a
 5    lot about having the keys in the first trial.  So it
 6    has different meanings, doesn't it?
 7              MR. COOPER:  She's our leader.
 8              THE COURT:  Okay.  All right.  Any other
 9    issues or disputes on witnesses or exhibits?
10              All right.  I think, then, the next issue I
11    was going to go into is discovery.  And I know we
12    have motions on discovery, so I think I'm going to
13    stop, now, the pretrial conference.  We, obviously,
14    will have to come back to it and finish it up.  But I
15    think it would be wise for us now to go to the
16    motions themselves.
17              So, if I understand -- let me look at the
18    new list that was given to me.  What Ms. Wild
19    prepared as Tab 32 for me was Document 1903, which is
20    the notice of James statements for Trial 2.  And she
21    says "Corrected," and that means that I think 1901,
22    is my memory, was the first document that was filed.
23    And there was some changes to it.  I'm not sure what
24    happened.  But anyway, it was designated as filed in
25    error, so the document that was filed on 3/8/18,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Document 1803, Notice of James statements for Trial 2

2    Corrected, I think is the operative document.

3            So what I understand -- let's just review

4    for a second -- in the first trial we had the

5    Government provide a witness that -- Mr. Acee, I

6    think, primarily, but I think it was also some other

7    FBI agents that testified, and so they were subject

8    to cross-examination; so that we could get through

9    that and get to the preparation of the first trial,

10   the Government agreed to the defendants' request to

11   provide a list of James statements for Trial 2.  So

12   they were treated differently.

13           Now, my understanding was that that was to

14   facilitate what we were doing today, so the

15   defendants would have in hand all the James

16   statements.  And then what we would be focusing on

17   today would be maybe statements that defendants

18   wanted me to look at more closely, that they felt did

19   not fall within the co-conspirator exception to the

20   hearsay rule.

21           So, if the James hearing is proceeding

22   differently than what I understand it to be, if we're

23   going to do the same thing we did the first trial,

24   y'all can let me know.

25           Mr. Castellano, you were going to rise and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6490

```
 1   speak.  So do you want to tell me how close I am to
 2   understanding what we're doing on the James hearing
 3   for this trial?
 4              MR. CASTELLANO:  The first order of
 5   business, Your Honor, is that there were two filings
 6   regarding the James statements.  And they should
 7   be -- the tables themselves should be identical.
 8   What happened was, when I filed the first table, the
 9   clerk's office called because there is a difference
10   between landscape or portrait formatting for the
11   first page.  And so what happened was the second
12   filing is basically the same as the first, but the
13   cover page is just in a different format.  So I don't
14   think anybody should have to look at the two tables
15   for different statements.
16              THE COURT:  We can use 1903 as the
17   governing document?
18              MR. CASTELLANO:  Yes, sir.  So that's just
19   a bit of housekeeping.  The only difference was the
20   way the cover page was filed, that was changed.  The
21   other part is -- my understanding is that the table
22   is now, in essence, supposed substitute for the
23   testimony, so that we have the James statements in an
24   easier to read and easier to understand format than
25   what we did the first time by merely putting on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6491

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 59

```
 1   testimony.  If our agents were to testify, I think
 2   they would testify consistently with the statements
 3   in the table.  So we could do that, but I think
 4   really that's what the table does, it substitutes for
 5   the testimony of those statements.
 6           THE COURT:  I guess two questions, then:
 7   What was your expectation of the defendants in
 8   response to your notice of James statements?  And
 9   then what -- are they going to have somebody such as
10   Mr. Acee available to cross-examine?  You might not
11   put on any direct evidence, but are you going to
12   present any agents or witnesses for them to
13   cross-examine?
14           MR. CASTELLANO:  I think that's up to the
15   defendants, Your Honor.  But, yes, I think if there
16   was a request for cross-examination, then it would
17   come through the agents who would testify in a
18   summary fashion to summarize the statements which we
19   have here in court, and in the table.
20           THE COURT:  So you don't have anything else
21   to present; you're ready to hear from the defendants
22   as to either their agreement as to your table or
23   areas where they disagree or their desire for
24   cross-examination?
25           MR. CASTELLANO:  That's correct, with one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6492

1    exception, Your Honor.  I have Government's Exhibits

2    11 through 18.  And I'm following a similar format as

3    the last time we did the James statements.  These

4    exhibits are each of the plea agreements of various

5    people who have pled guilty in this case.  And so in

6    terms of establishing the existence of the

7    conspiracy, and tying various defendants to the

8    conspiracy, what I've done is submitted -- or I'm

9    proposing to submit, at this point, Government's

10   Exhibit 11 through 18.  And I'll give the Court the

11   names of each of the exhibits:

12           Government's Exhibit 11 is the plea

13   agreement for Leonard Lujan.

14           Exhibit 12 is the plea agreement for

15   Benjamin Clark.

16           Exhibit 13 is the plea agreement for Ruben

17   Hernandez.

18           Exhibit 14 is the plea agreement for Javier

19   Alonso.

20           Exhibit 15 is the plea agreement for Eugene

21   Martinez.

22           Exhibit 16 is the plea agreement for Paul

23   Rivera.

24           Exhibit 17 is the plea agreement for Brandy

25   Rodriguez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6493

1           And Exhibit 18 is the plea agreement for

2     Santos Gonzalez.

3           And I would move their admission at this

4     time for purposes of the James hearing.

5           THE COURT:  All right.  As I did in the

6     first -- the hearings before the first trial, many of

7     which dealt with issues for the second trial, I would

8     be inclined to just have exhibits for each hearing,

9     so that when I go back with some orders or opinions

10    as much as I can on this case, I'll just use those.

11          So you're not admitting these in any way

12    for trial or for any other hearing in this case; it

13    will just be for the James hearing.  Any objections

14    to the Government's introduction of Exhibits 11

15    through 18?

16          MR. CASTLE:  Yes, Your Honor.

17          THE COURT:  Mr. Castle.

18          MR. CASTLE:  Yes, if I could look at them

19    first.

20          THE COURT:  You may.

21          MR. CASTLE:  Judge, these are documents

22    drafted, I believe, by the Government.  They all

23    appear to be the same typeset, same language, et

24    cetera.  So these are documents that the Government

25    wrote up in a fashion.  So I don't believe that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6494

1    satisfies the requirements under 801 to show the

2    establishment of the conspiracy.  I mean, it has to

3    be something more than the Government's statements

4    that there is a conspiracy; there has to be some

5    evidence and foundation of that.

6              THE COURT:  Well, correct me if I'm wrong,

7    I'm not sure I've looked at these, but these are plea

8    agreements that were signed, under oath, by the

9    defendants that have been identified; correct?

10             MR. CASTLE:  They are.

11             THE COURT:  And, Mr. Castellano, is each

12   one of these people going to testify at trial to the

13   facts that are set forth in the plea agreement?

14             MR. CASTELLANO:  Yes, I believe, with the

15   exception of two -- Brandy Rodriguez and Santos

16   Gonzalez are not -- but for purposes of preliminary

17   questions before the Court to find whether or not a

18   conspiracy exists, I believe the Court can look at

19   these for purposes of making the initial

20   determination under James.

21             THE COURT:  All right.  You don't have any

22   reason to think that those two individuals would

23   testify in this hearing, or any other hearing or

24   trial, differently than what they have in their --

25   what they have in their plea agreement?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              MR. CASTELLANO:  That's correct, Your

 2    Honor.  It would be supported not only by the reports

 3    in this case, but each of these defendants had to

 4    give a factual basis to the Court to even plea, so

 5    typically, in addition to the factual basis written

 6    into the plea agreements, the Court, for each of

 7    these individuals asked in their own words why they

 8    were guilty of these offenses under oath.

 9              THE COURT:  But as far as evidence here for

10    the determination of the conspiracy, these are signed

11    under oath by the seven individuals that have been

12    identified?

13              MR. CASTELLANO:  Yes, sir.

14              THE COURT:  All right.  Mr. Castle?

15              MR. CASTLE:  They are signed under oath.

16    But what they don't say is:  This is a full and

17    complete statement of the facts as they know it

18    concerning the conspiracies.  And so they're partial

19    statements drafted by the Government for signature by

20    the defendants, so they're not complete.  But those

21    are our objections.

22              Specifically, the two people that are not

23    going to testify at trial, I don't think the Court

24    should take that into account, because all we're

25    doing, preliminarily here, is what you would have to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6496

```
 1    do during trial.  So I don't believe that they should
 2    be admitted, although they're not relevant to my
 3    client at all.  But I would make that general
 4    objection also.
 5            THE COURT:  All right.  Anybody else have
 6    any objections to Government's Exhibits 11 through
 7    18?  Mr. Benjamin?
 8            MR. BENJAMIN:  Mr. Gallegos would join the
 9    objections to the exhibits specifically regarding
10    Santos Gonzalez and Brandy Rodriguez, Your Honor.
11            THE COURT:  All right.  Mr. Burke, same
12    thing?
13            MR. BURKE:  Yes.  Mr. Troup joins, and
14    particularly objects to the idea that these documents
15    drafted by the Government could be the evidence
16    that's required to show that conspiracy existed for
17    the purposes of the James hearing.
18            THE COURT:  And remember, I'm not
19    determining whether they're sufficient or not.  The
20    only question is whether I should admit this
21    evidence.
22            Ms. Arellanes?
23            MS. ARELLANES:  Yes, Your Honor.  With
24    regard to Paul Rivera, I have gone over that plea
25    agreement, and there are some errors in the factual
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6497

1    basis.  So the factual basis that was provided to Mr.

2    Rivera -- he just simply signed it -- really, is

3    based on what I've read in the discovery -- is

4    clearly in error.  So you have to take his statement,

5    factual basis, with a little bit of a grain of salt.

6              THE COURT:  All right.  Thank you, Ms.

7    Arellanes.

8              Anybody else?

9              MR. SOLIS:  Mr. Chavez, Your Honor, would

10   join in that objection, but in particular Exhibit 11

11   and Exhibit 15, as it pertains to Mr. Chavez.

12             THE COURT:  All right.  Anybody else?

13             All right.  So I'm going to admit

14   Government's Exhibits 11 through 18.  I'm not making

15   a determination whether the Government has

16   established a conspiracy or conspiracies as to any of

17   the counts.  I'm simply determining that I think I

18   can -- that's competent evidence I can consider for a

19   James hearing, so I'll admit it into evidence.

20             All right.  How do the defendants want to

21   proceed?  I have reviewed -- I only did 1903; I never

22   went back and looked at 1901, after I was told that

23   1903 was the operative document.  So how do y'all

24   want to proceed on the James hearing?  Do you have

25   specific statements that you've identified that you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6498

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 6499

```
 1   want to have the Court focus on in making a
 2   determination?  Do you want to have any
 3   cross-examination of a government witness as to any
 4   of the statements?  How do you wish to proceed?
 5            Mr. Benjamin?
 6            MR. BENJAMIN:  Not seeing anybody else jump
 7   up, Your Honor, there was a document filed at
 8   about -- well, after midnight last night -- it was
 9   Document 1981, which was Mr. Gallegos' response to
10   the James hearing --
11            THE COURT:  Okay.  I'm not sure that I was
12   alerted to that, and I don't believe I have a copy of
13   it.  So we'll -- they handed it to me now, so -- all
14   right.
15            MR. BENJAMIN:  And I understand that one of
16   the dangers in filing something that late, Your
17   Honor, was I'd be in this position, but having had
18   the Government just proffer 11 through 18, one of the
19   requests that Mr. Gallegos has is that the James
20   hearing serve its purpose of -- for lack of a better
21   term, locking the Government into what it intends to
22   prove for a conspiracy.
23            (Ms. Bhalla entered the courtroom.)
24            THE COURT:  Let's do this, let me ask
25   this -- I think this is what we did for the first
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6499

```
 1    trial:  If I understand what we're doing here with

 2    this, Mr. Castellano, is that these statements that

 3    are in your table are the only statements that you

 4    are trying to get in through the co-conspirator

 5    exception to the hearsay rule.  You will not use any

 6    other statements, you will not use that exception for

 7    any other statements; and if you at any other time

 8    attempt to bring in another statement, you will

 9    immediately alert the defendants to the fact that you

10    have identified another statement that you want to

11    use the co-conspirator exception for; and if they

12    don't hear from you, or I don't hear otherwise from

13    you, you are locked in with this table, and that will

14    be the universe of statements that you will attempt

15    to get in through the co-conspirator exception.

16             You may have other exceptions and other

17    ways of getting other statements in, but these will

18    be the statements that you'll be locked into as far

19    as the co-conspirator exception; am I correct?

20             MR. CASTELLANO:  That is correct, Your

21    Honor.

22             And I've noticed in the pleading itself,

23    statements from Trial 1.  And if we do come across

24    other statements in preparation for trial, we will

25    also notice up those statements in a similar fashion
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 68

```
 1    as to what we prepared in the table.
 2              THE COURT:  All right.  When you say Trial
 3    1, you're not saying just all the statements in Trial
 4    1, are you?
 5              MR. CASTELLANO:  Yes.  I don't intend -- we
 6    don't intend to introduce all co-conspirator
 7    statements from Trial 1, but I think those are fair
 8    game if they come up in the context of this trial.
 9              THE COURT:  Well, I think we need to get
10    those identified.  So I'm going to -- I think, you
11    know, the way I do a James hearing is I want to push
12    as much up pretrial as I possibly can.  So let's
13    agree on a deadline by which you'll think about the
14    first trial.  And if you want to get in other
15    statements from the first trial, you'll send a
16    letter, or file some document that identifies other
17    statements from the first trial that you want to get
18    in with the co-conspirator.
19              Do you want to propose a date?
20              MR. CASTELLANO:  May I have a moment, Your
21    Honor?
22              THE COURT:  You may.
23              THE COURT:  Am I doing what you're wanting
24    me to do, Mr. Benjamin?
25              MR. BENJAMIN:  Yes, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6501

```
 1              MR. CASTELLANO:  We're shooting for Monday
 2    the 26th, Your Honor.  That way we can also look at
 3    the transcripts from Trial 1.  I'm not sure when
 4    those will be finalized.  But that will give us time
 5    to pull those from the transcript, if necessary.
 6    That would be March 26.
 7              THE COURT:  Could you live with that, Mr.
 8    Benjamin?
 9              MR. BENJAMIN:  For additional production
10    of --
11              THE COURT:  What they're going to do is
12    they're going to get -- I guess, maybe Ms. Bean can
13    tell us, but they're going to get the final
14    transcript; they're going to scrutinize it, and see
15    if there is anything in the first trial that they
16    want to add to the list.  And they'll notify you by
17    March 26, if there is additional statements that they
18    want to use the co-conspirator exception to the
19    hearsay rule, to use that as the basis for getting
20    the statement in.
21              MR. BENJAMIN:  My gut reaction is:
22    respectfully no, Your Honor, because we had a James
23    hearing in December for those statements, and we know
24    what those statements are, or how the Government
25    intends to use those statements in this case.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6502

1    then I think that dovetails into my concern with the

2    statements that came out in 1901 and 1903, and we're

3    working off 1903, Your Honor.

4            There is multiple items in the table -- and

5    the Government was overexclusive -- and I appreciate

6    that in this table -- but I guess it concerns me that

7    we've been waiting essentially since November for the

8    James hearing on Trial 2, and there is other

9    statements out there.  And that's the way that my --

10   and I realize the Court hasn't had the opportunity to

11   read my pleading.

12           But that's the way that my pleading begins,

13   Your Honor, that in May 10th of 2017, Ms. Armijo

14   promised that there was a cooperator who was going to

15   identify the reason that Joe Gallegos was here in

16   Counts 4 and 5.  And that didn't materialize.  And

17   that hasn't materialized.  And it's the shifting --

18   we promise to prove federal jurisdiction for the

19   murder -- and Your Honor, I don't know if the Court

20   remembers this, but we had a discussion with Ms.

21   Armijo and the Court regarding whether or not there

22   was any jurisdiction to lock Mr. Joe Gallegos into

23   Counts 4 and 5, and quite frankly, Count 13 -- which

24   is 4 and 5, is the murder of Adrian Burns, and Count

25   13 is the assault that's alleged on Jose Gomez, or

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6503

```
 1    Tiny.
 2              And at this point in time, those three
 3    counts have no federal jurisdiction.  They are
 4    straight -- for lack of a better term -- violent
 5    crimes alleged by the Government that are only
 6    punishable in the State of New Mexico.  There is
 7    nothing that ties those three counts to the
 8    indictment, to the VICAR actions.
 9              And so my concern is that we keep getting
10    this shifting target that I've been looking for for
11    two years now, Your Honor.
12              THE COURT:  I understand those, and I'm not
13    trying to run away from any of those issues.  But
14    hang in with me for a second on the James hearing and
15    the co-conspirator -- you've got their table?
16              MR. BENJAMIN:  Yes, Your Honor.
17              THE COURT:  We'll figure out how to
18    proceed, from the defendants' standpoint on that in a
19    moment, but can you live with the fact that they will
20    give you, by March 26, any additional statements out
21    of the first trial?  I know we already had a hearing,
22    and so it may be that everybody is kind of aware of
23    what they're going to do -- but can you live with a
24    March 26 date for them to get -- I guess, a final
25    transcript -- go through it, and add any sort of
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

**BEAN**
**& ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    statements out of the first trial onto this list?

2    Could you live with that deadline?

3            MR. BENJAMIN:  When the Court phrases it

4    that way, Your Honor, I think, selfishly, for Mr. Joe

5    Gallegos, I can, be cause none of those statements

6    will affect Mr. Gallegos.

7            I see Mr. Burke out of the corner of my

8    eye --

9            MR. BURKE:  We cannot live with that.  That

10   is absurd in my view, Your Honor.  They've known

11   about these statements, basically for years.  We

12   don't need a transcript for them to identify them.

13   And when I read this sentence, "The United States

14   also reserves the right to introduce co-conspirator

15   statements introduced in Trial 1," I was thinking:

16   What right?  There is no right.  Reserving what right

17   was my question?

18           And really, if they're going to try to do

19   this, then the deadline should be Wednesday of this

20   week.  So that they just tell us what the James

21   statements are that they're now going to try to slip

22   in with this sentence of:  Reserving the right to

23   introduce statements introduced in Trial 1.  And I

24   was here for a bunch of the trial, so I have a feel

25   for it.  But most of my colleagues were not.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6505

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 73

 1   we've been trying to keep up, and we've trying to

 2   keep everybody up to speed.  But it's very difficult.

 3   And it was a massive -- I'm telling you.  So those

 4   are my comments.

 5            THE COURT:  Well, I am concerned, Mr.

 6   Castellano, about this.  I do think today is the

 7   James hearing, so I do need to put pressure on the

 8   Government to identify its statements.

 9            Could you live with a date, end of business

10   Wednesday, and if you need to supplement, then I'll

11   probably put an additional burden on the Government

12   to start justifying why it couldn't identify, but at

13   least give the defendants something by the end of

14   business on Wednesday as to statements out of the

15   first trial that you intend to use, the

16   co-conspirator.

17            MR. CASTELLANO:  Your Honor, Mr. Benjamin

18   just agreed that he was here for the hearings in

19   December, and he's aware of the co-conspirator

20   statements.  So it's not as if counsel wasn't here

21   for that hearing.  They were here for that hearing so

22   they did hear the statements back in, I believe,

23   December.

24            He's acknowledged that.  But I understand

25   the Court's ruling.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  I'm going to put a deadline:

2   End of business on Wednesday for the Government to

3   either file a letter, send a letter, or file a

4   pleading identifying additional statements out of the

5   trial, and really any other statements you're going

6   to give.

7          And after that deadline, if you're going to

8   try to get it in, if you find some other statements

9   you're going to have to start justifying why it

10  wasn't produced earlier.

11         The reality is that this is a trial, and I

12  try to put deadlines on the Government, but there may

13  be statements that come up that we have to deal with,

14  and of course, the Tenth Circuit recognizes that you

15  can do that in a trial -- and trying to front-end

16  load this as much as possible for the Court and the

17  Defendants' benefit, but you are going to have to

18  start rolling a little bit and being flexible to --

19  but I will require the Government to start justifying

20  why it wasn't identified before.

21         MR. BENJAMIN:  Your Honor, I understand

22  that.  And my concern is that Mr. Gallegos -- and I

23  think Mr. Andrew Gallegos' counsel wants to address

24  this -- we're not concerned about a statement and

25  whether he said that we got in the car or we got in

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                    1-800-669-9492
                                                         e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6507

1    the car with four kilos or got in the car with

2    something else like we normally deal with.  I'm

3    talking about individuals, whole individuals, and/or

4    statements, that are tied to the jurisdiction for

5    three counts.

6            THE COURT:  I understand that.  I'm trying

7    to work through the James issue.  I'm not running

8    away from the jurisdictional issue.  But I guess I

9    need to deal with this James issue first.  And then

10   I'll let you argue fully before, you know, we get

11   done about these jurisdictional issues.  But they may

12   involve non James statements, they may involve

13   something else.  So I'll put that aside just for a

14   second and try to work through this James issue.

15           MR. BENJAMIN:  And, Your Honor, I

16   understand, and appreciate that.  And once again, I

17   realize the Court has that -- but that's how my James

18   response opens up, is tying the James hearing to the

19   investigating individuals.

20           THE COURT:  Okay.  Ms. Torraco.

21           MS. TORRACO:  Thank you, Your Honor.  And

22   I'll be very brief, but I want to --

23           THE COURT:  Let's do this:  I've got to

24   give Ms. Bean a break.  We've been going an hour, and

25   so I don't cut you short, why don't we be in recess

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 76509

1    for about 15 minutes, and we'll come back in and

2    resume the James hearing.

3              (The Court stood in recess.)

4              (The Court took the verdict from Trial 1

5    and a lunch break.)

6              THE COURT:  All right.  We'll go back on

7    the record.  I left my robe somewhere in the

8    building.  I won't be Bob Schwartz.  We all like Bob.

9    I think I left it up in the visiting judges'

10   chambers.

11             MR. BURKE:  Are you open for business, Your

12   Honor?

13             THE COURT:  Yes.

14             MR. BURKE:  I had a chance to look at the

15   plea agreements over the break.  And just the

16   addendum need to be added to them, because the

17   document and any addenda become the complete

18   statement.  So these will have to get the addenda.

19             THE COURT:  Any objection to providing the

20   addendum, Mr. Castellano?

21             MR. CASTELLANO:  No, Your Honor.  The

22   addendum doesn't have any statements to it.  We're

23   happy to add that if necessary.

24             THE COURT:  If there is no objection, we'll

25   add those.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6509

 1              MR. BURKE:  Thank you, Your Honor.

 2              THE COURT:  Is there any objection?  All

 3    right.  I know that the defendants didn't want them

 4    in, but if they're coming in, then we'll add the

 5    addendum to it.

 6              All right.  Well, let's continue to take up

 7    the -- I've been reading during the lunch hour, and

 8    this morning, so while the jury was meeting with the

 9    attorneys I was continuing to read on some of the

10    latest motions.  But let's go back to the James

11    hearing.  Where do the defendants want to go on this?

12    I mean, I guess I could do this.

13              Oh, Ms. Torraco, why don't you go ahead.

14    You were up.

15              MS. TORRACO:  That's okay.  I like hearing

16    what you have to say first.

17              THE COURT:  Well, I was going to say, as a

18    general rule, what I did in the first trial is I

19    said -- and I've read everything -- is let me go

20    ahead and say I think that the Government has

21    established a conspiracy.  I probably need to be

22    enlightened a little bit, and see if there is any

23    argument on who the members of the conspiracy are, so

24    that I have each conspiracy down, I have who the

25    Government contends is in each conspiracy.  And then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    it looks to me like they've made at least a prima

2    facie case that the statements that are being offered

3    were in the conspiracy, or done in furtherance of the

4    conspiracy, and during the conspiracy.  But then

5    allow the defendants to come in and tell me that, no,

6    that the one is not.  And then I can focus on it a

7    little bit more.  Would be the approach that I would

8    propose.

9         But your thoughts, Ms. Torraco?

10        MS. TORRACO:  Thank you very much, Your

11   Honor.  And before the break I think there were two

12   issues.  And I know you ruled on one of them, and

13   that was that the Government had represented that it

14   now wants to bring in statements that were offered

15   for Trial 1, and they kind of left that caveat to

16   also enter those statements in Trial 2.

17        And I would like to note Andrew Gallegos'

18   objection to that.  And I believe Mr. Beck had said,

19   Well, you guys heard them all, everyone was here, so,

20   you know, you were on notice.  And I would just like

21   to remind the Court that that was the first day that

22   I was on this case, is when we did that James

23   hearing.  And at that time, the way that I recall it,

24   it was very clearly represented that it was a Trial 1

25   James hearing.  And regarding Andrew Gallegos, there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79

 1   were times that we felt like we had something to

 2   question, but refrained from cross-examination

 3   because it was very clearly a Trial 1 issue.  So I

 4   want to just make that note for the record.

 5          THE COURT:  Well, I think you're entitled

 6   to a body up here in the witness box to

 7   cross-examine.  So if you want it, the Government, I

 8   think, is basically saying they agree.  So they'll

 9   put somebody up here if you want to cross-examine on

10   the table.

11          MS. TORRACO:  Okay.  Terrific.  Because I

12   know that we do.

13          THE COURT:  So if you want to do that now,

14   we can do that now.  If the way I proposed to go

15   about is a good way to approach it, then for your

16   planning purposes, I can plan to have these

17   statements coming in.  I can plan on there being a

18   conspiracy.  We can agree on who the members are.  I

19   can just make a finding, is probably the best way to

20   do it.  But you can tell me where the real issues

21   are.  I think -- and then you can have a witness to

22   question to -- I assume what the questions are going

23   to be directed to are:  What is your evidence that

24   this is during and in furtherance of the conspiracy?

25          MS. TORRACO:  Yes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6512

```
 1              THE COURT:  Or there may be other issues.
 2              MS. TORRACO:  And I think to some extent,
 3    at least from Andrew Gallegos' perspective, we are
 4    not as clear -- I think the Court made a statement
 5    that you're clear that the Government has made a
 6    prima facie case.  We are not as clear as to the
 7    separate conspiracies, and we ask that the Government
 8    make that showing, as long as, and in addition to
 9    which of the defendants are members of which
10    conspiracy.
11              THE COURT:  Yeah.  What I mean by -- it
12    seems to me that, if you take what's in the plea
13    agreement, probably there is enough there to find a
14    conspiracy.  And I would group them around the
15    different murders.  So I would assume those are the
16    conspiracies the Government is going to prove is the
17    murder to kill Mr. Burns, the murder to kill Mr.
18    Castillo, you know, that those would be the
19    conspiracies.  And then we need to be clear, that
20    means I have to find who is a member of that
21    conspiracy.  And then we begin to focus then on the
22    statements to make sure that the declarant was a
23    member of that conspiracy, and that the statement was
24    made during and in furtherance of the conspiracy.
25              MS. TORRACO:  Thank you, Your Honor.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6513

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 84

```
 1    the last thing is I just want to plant the seed, as

 2    the Court goes through the evidence.  I am very

 3    concerned, as is co-counsel and Mr. Andrew Gallegos,

 4    as to why he has been indicted on a 2012 racketeering

 5    charge.  And the Court is going to hear a lot of

 6    evidence, or a lot of statements, depending on the

 7    stage of the proceedings about 2001 murders.  And I

 8    am very concerned that Andrew Gallegos is going to be

 9    tarnished by all of these past bad acts of the

10    co-defendants.  And I just want to plant that seed

11    before we move on.  Thank you.

12              THE COURT:  Okay.  Thank you, Ms. Torraco.

13              All right.  So how do the defendants want

14    to proceed?  If we're sort of in agreement on the

15    ground rules, tell me how the defendants would like

16    to proceed on this James hearing.  Mr. Castle?

17              MR. CASTLE:  Judge, just initially, I know

18    that when the Court had done James hearings in the

19    Trial 1, it also spilled into not just co-conspirator

20    statements, but issues concerning statements against

21    interests, and admissions by a party opponent.  I

22    take it the Court only wants to deal with the James

23    right now.

24              THE COURT:  Yeah.  What I would propose to

25    do, if this would work for everybody, let's focus on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6514

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 82

```
 1    the James statements, let's figure out what evidence
 2    is going to come in as a co-conspirator.  It's not
 3    really an exception.  But it's nonhearsay.  So
 4    fitting it in to Section E, and let's figure that
 5    out.  And then, if the Government still wants that
 6    statement in, and y'all want me to rule, I will, but
 7    you'll have to identify it.  I assume -- I have not
 8    finished reading Mr. Beck's brief that he filed
 9    either yesterday or tonight or this morning involving
10    the statement against penal interests.  But I had
11    ruled against the Government the first trial as to
12    Mr. Perez' statements.  And so I didn't allow some of
13    that to come in that way.  And it didn't -- about the
14    only effect I think it had was it didn't come in
15    against the other defendants.  Because if it had been
16    nonhearsay there, it would have come in against
17    everybody, and I didn't allow that.  I only allowed
18    the statements to come in against Mr. Perez.  But
19    they're making another run at it to, I think, try to
20    get statements by some of the defendants to be
21    against all the defendants.
22              So what I would propose is let's focus on
23    the statements they've identified so far, statements
24    they're going to identify this week.  And then, if
25    there are other statements, let's take them up one at
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6515

1    a time, and I'll try to give you rulings on them.

2              MR. CASTLE:  That makes sense, Your Honor.

3              The only thing I would request so we can

4    all proceed orderly, is that if they do have specific

5    statements against interests or admissions by party

6    opponent, that they want to introduce against a

7    defendant that isn't the declarant, that we have a

8    list of those so that we can work orderly through it

9    later this week.  And I don't know if they could do

10   it by Wednesday, or if they can even identify the

11   pages that the stuff is on, so they don't have to do

12   anything formal.  We'd asked for that informally from

13   them, but I'm not sure they've had the opportunity to

14   look at that.

15             THE COURT:  Well, what do y'all think about

16   that, to make as many pretrial rulings as I can on

17   this, do you want to provide such a list?

18             MR. BECK:  No, Your Honor.  I think we

19   responded to this initially Halloween of last year,

20   as I'm looking at my chart, with Document 1389, that

21   we were not going to provide such a document.  We

22   didn't do that in Trial 1, and it worked just fine.

23   I think the defendants know what's out there, and so

24   does the Government.  And so, if we have problems, we

25   bring them up and there can be a ruling on it.  If

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6516

 1   not, then we just go through trial.  I think probably

 2   a motion in limine that you're reading through right

 3   now will give us good headway as to what's going to

 4   happen there.

 5            THE COURT:  I think that I really don't

 6   have a good basis other than -- I can probably order

 7   anything, but I don't have a good basis other than

 8   just brute judicial force to force the Government to

 9   disclose those statements.  But I do think that we're

10   probably going to have a pretty good list.  If I

11   don't allow something in the co-conspirator

12   exception, I would bet you the Government is still

13   going to try to squeeze it into something.  So we can

14   make a little list there and come back to it.

15            If y'all have identified any statements you

16   can bring it up and say:  Would you rule on this one,

17   and I'll rule on them.  But I probably -- you got a

18   lot because I did force them to do the James

19   statements, and I'm continuing to force them to get

20   those statements out.  So you've got a pretty good

21   list.

22            MR. CASTLE:  Your Honor, on behalf of Billy

23   Garcia, we attempted to do that.  It's a targeted

24   motion which lists the statements.  The only thing I

25   would just communicate, this trial is going to be a

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492
BEAN & ASSOCIATES, Inc.                              e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE
                                                                          DNM 6517

```
 1    lot different than Trial 1.  There are a lot of these
 2    kind of statements out there.  And if the Government
 3    wants to just proceed on the fly, then we're going to
 4    be stopping proceedings to voir dire a witness, to
 5    find out is this really a statement against interests
 6    or is this bragging.  And it's really unfair to the
 7    defense to have to do that in front of the jury,
 8    because they'll wonder why you're asking all these
 9    questions, open-ended question.
10           And so I'm not asking for anything right
11    now.  But perhaps the Government might think about
12    that.  And it would make the trial go a lot smoother
13    if we had rulings and we all knew these specific
14    statements.  And I would just, you know, a remark
15    that the record on these statements are going to have
16    to be pretty significant because we're going to have
17    to talk about the confrontation arguments that we
18    brought up and reiterate those.  We have to bring up
19    any of the hearsay objections, et cetera.  So that's
20    what I was trying to do.  We do have discovery, so we
21    do know what statements.  Unless they are holding
22    anything back at this point, we pretty much know it.
23    And I thought while we're here -- but I understand
24    the Court's ruling.  I'm just saying --
25           THE COURT:  Do this for me:  I'll try to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 86

```
 1    make as many rulings -- I would prefer, just like
 2    you, I'd prefer to have a moment to think about it.
 3    I'd like to do it as much as I can in advance.  So if
 4    you see a statement, write it down, send me a letter,
 5    I'll rule on it.  If the Government says, Well, you
 6    didn't have enough information and stuff, then, you
 7    know, we might have to do some stuff out of the
 8    presence of the jury or something like that.  But
 9    I'll give you every ruling I can.  And you'll just
10    alert me to the statement, and try to keep it moving.
11              MR. CASTLE:  That makes sense, Your Honor.
12    Yeah, as far as the procedure on the James motions
13    what the defense suggests is the Government first
14    address the Court, tell the Court what the various
15    conspiracies are, who the participants are.  And some
16    of those participants are not going to be defendants
17    here.  I noticed in their proffer, it might be people
18    that aren't defendants.  So they would have to
19    identify not only defendants, but other participants
20    in the conspiracy that they're going to rely upon to
21    get statements in, and then tell us a bit of what the
22    time period is of this conspiracy, and whether
23    they're going to try to bring in evidence in the
24    course of, furtherance portion of it.
25              Once they define that, then we're going to
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6519

1    have a lot better understanding and ability to refine

2    our questions to Agent Acee, which is who we would

3    put on to ask about this initially.

4           Just so the Court knows, we have been

5    informed over the weekend that the Government was

6    going to put on Agent Acee, instead of putting us in

7    this position of calling him.  But I think it's just

8    another way to skin the cat, I guess.

9           THE COURT:  All right.  Well, let me talk

10   to Mr. Castellano a little bit and see.  It would

11   seem to me, Mr. Castellano, it's a reasonable

12   request, both from the Court and from the defendants

13   for you to -- let's take these, tell me how many

14   conspiracies that you're going to try to establish in

15   the case, who you allege the members to be.  Yeah, I

16   guess that's it.  And that might help educate the

17   Court as well.  I'm trying to get the counts,

18   defendants, and victims -- alleged victims -- down in

19   my head as well, so -- does that sound reasonable?

20          MR. CASTELLANO:  Sure, Your Honor.  Let's

21   give it a shot.

22          Let me start with the indictment, because

23   as we go through any reports or anything else, there

24   will be additional members of the conspiracy.  For

25   example, someone may have passed the paperwork.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6520

```
 1   Starting with the indictment, just in terms of
 2   branding some of these conspiracies, so Count 1
 3   involves the Castillo murder, and it's currently
 4   charged as Angel DeLeon, Joe Gallegos, Edward Troup,
 5   Leonard Lujan, and Billy Garcia.  And I'll go back
 6   and fill in the other blanks.  But in terms of laying
 7   out the framework, I'll give the Judge the initial
 8   names.
 9            So Count 2.
10            THE COURT:  Let me get -- it was Joe
11   Gallegos.
12            MR. CASTELLANO:  I'm happy to repeat any
13   names or go slower.
14            THE COURT:  But it's Joe Gallegos; correct?
15            MR. CASTELLANO:  That's correct.  It's Joe
16   Gallegos.
17            THE COURT:  Then Edward Troup.
18            MR. CASTELLANO:  Yes.
19            THE COURT:  And then, let's see, Leonard
20   Lujan.
21            MR. CASTELLANO:  Yes.
22            THE COURT:  So Mr. Lujan is the only one
23   that's not a defendant, and of course, Angel DeLeon
24   is a fugitive.
25            MR. CASTELLANO:  That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6521

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 89

```
 1            THE COURT:  And you don't have any other
 2   conspirators, either parties or nonparties, that will
 3   be part of Count 1?
 4            MR. CASTELLANO:  I'm sure that we will,
 5   I'll come back to those.  I'm going to just get the
 6   framework, then I'll go through some of the reports,
 7   which will indicate additional people who, for
 8   example, may have passed paperwork.
 9            But nonetheless, the defendant in that
10   conspiracy as charged or that murder as charged is
11   Billy Garcia.
12            THE COURT:  Right.  Okay, then for Count 2?
13            MR. CASTELLANO:  Count 2 is the Garza
14   murder.
15            THE COURT:  So basically what you're doing
16   me is giving me indictment information here?
17            MR. CASTELLANO:  I am for starters.
18            THE COURT:  This is Mr. Garza; remind me
19   what Mr. Garza's first name is.
20            MR. CASTELLANO:  Rolando, R-O-L-A-N-D-O.
21            THE COURT:  And Mr. Castillo's first name?
22            MR. CASTELLANO:  Frank.
23            THE COURT:  All right.
24            MR. CASTELLANO:  Frank Castillo was also
25   known as Pancho, in case that comes up on any of your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6522

```
 1  reports.
 2          THE COURT:  Okay.  Mr. Garcia, did he have
 3  a name?
 4          MR. CASTELLANO:  Garza was Looney.
 5          THE COURT:  Okay.
 6          MR. CASTELLANO:  For starters, we have
 7  Leonard Lujan.
 8          THE COURT:  I'm not looking at the
 9  indictment.  Does he appear as somebody's name is not
10  darkened, bold?  It's just a co-conspirator?  Is that
11  the way he's listed?
12          MR. CASTELLANO:  Yes, Leonard Lujan was
13  initially charged in Counts 1 and 2.  And he's now
14  pled guilty and the Court has his plea agreement.
15          THE COURT:  Okay.
16          MR. CASTELLANO:  Billy Garcia.
17          THE COURT:  Okay.
18          MR. CASTELLANO:  Eugene Martinez, who has
19  also pled guilty.
20          Allen Patterson.
21          THE COURT:  All right.
22          MR. CASTELLANO:  And Christopher Chavez.
23          THE COURT:  Okay.
24          MR. CASTELLANO:  Count 3 is Freddie
25  Sanchez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6523

```
 1                THE COURT:  Okay.

 2                MR. CASTELLANO:  Javier Alonso is the first

 3    person there, and he's pled guilty.

 4                THE COURT:  Okay.

 5                MR. CASTELLANO:  Next is Edward Troup.

 6                THE COURT:  All right.

 7                MR. CASTELLANO:  Arturo Garcia.

 8                THE COURT:  Okay.

 9                MR. CASTELLANO:  Benjamin Clark, who has

10    pled guilty.

11                THE COURT:  Okay.

12                MR. CASTELLANO:  And Ruben Hernandez, who

13    has also pled guilty.

14                THE COURT:  All right.

15                MR. CASTELLANO:  The next in Counts 4 and 5

16    is the conspiracy and the murder of Adrian Burns.

17                THE COURT:  So these are going to be the

18    same?

19                MR. CASTELLANO:  Yes.  And those counts

20    involve Joe and Andrew Gallegos.

21                THE COURT:  All right.

22                MR. CASTELLANO:  That takes us to -- Count

23    13 does not have a conspiracy charge, so we can skip

24    that one for now.  That's the assault with a

25    dangerous weapon of Jose Gomez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6524

```
 1              But Count 14 is a conspiracy --

 2              THE COURT:  Let me write that down so I

 3    kind of begin to memorize these counts.

 4              MR. CASTELLANO:  So Count 13.

 5              THE COURT:  Is assault of Jose Gomez?

 6              MR. CASTELLANO:  Yes, assault with a

 7    dangerous weapon upon Jose Gomez.

 8              THE COURT:  All right.  So there is no

 9    conspiracy connected with it?

10              MR. CASTELLANO:  Correct.

11              THE COURT:  All right.  Then 14.

12              MR. CASTELLANO:  14 is conspiracy to murder

13    Jose Gomez.  And in that count is Joe Gallegos;

14    Santos Gonzalez, who has pled guilty; Paul Rivera,

15    who has pled guilty; Shauna Gutierrez; and Brandy

16    Rodriguez, who has pled guilty.

17              THE COURT:  Okay.

18              MR. CASTELLANO:  And in Count 15 is the

19    attempted murder of Jose Gomez, which also includes

20    allegation of assault with a dangerous weapon

21    resulting in serious bodily injury.

22              THE COURT:  Has that got the same cast of

23    characters as far as the alleged conspiracy?

24              MR. CASTELLANO:  That's correct.

25              THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6525

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 93

```
 1              MR. CASTELLANO:  And the same applies to
 2    Count 16, which is -- for shorthand, I'll just call
 3    it "witness tampering."
 4              THE COURT:  And this is related to Jose
 5    Gomez, the assault on him?
 6              MR. CASTELLANO:  Yes, sir, that's correct.
 7              THE COURT:  So it's the same conspiracy
 8    there?
 9              MR. CASTELLANO:  Yes.  Counts 14, 15, and
10    16 can be grouped together.
11              THE COURT:  Okay.  Tell me for my
12    edification what's the difference between 13 and 14
13    and through 16?  What's the difference?
14              MR. CASTELLANO:  Count 13 is an assault on
15    a different occasion.
16              THE COURT:  Okay.
17              MR. CASTELLANO:  That was on March 17th of
18    2015.
19              THE COURT:  Okay.
20              MR. CASTELLANO:  Then Counts 14, 15, and 16
21    are in February of 2016.
22              THE COURT:  Okay.  Those are the ones that
23    involve the machete?
24              MR. CASTELLANO:  Yes.
25              THE COURT:  All right.  So now, going back,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6526

```
 1    are there additional people -- as far as the Freddie

 2    Castillo, are there additional co-conspirators that

 3    you may use to get statements in other than the

 4    people that are identified in the indictment?

 5              MR. CASTELLANO:  Yes, Your Honor.  There

 6    should be additional people.  And some of those are

 7    outlined in the table.

 8              So let me start with the table.  I'm

 9    looking at statement number 11.

10              THE COURT:  So you've got a declarant,

11    Angel Munoz?

12              MR. CASTELLANO:  Yes.

13              THE COURT:  And Angel Munoz, are you

14    alleging that he is a co-conspirator?

15              MR. CASTELLANO:  Yes.  Leroy Lucero

16    confirmed the message, and that's regarding the

17    Castillo and Garza murders.

18              THE COURT:  Now, I wrote down that what was

19    in the indictment was Leonard Lujan.  Is it Leonard

20    or Leroy?

21              MR. CASTELLANO:  There are two people.

22    There is Leonard Lujan and then there is Leroy

23    Lucero, who is not listed.

24              THE COURT:  Sorry, yeah.  So is Leroy

25    Lucero a co-conspirator on this count?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6527

1           MR. CASTELLANO:  I don't recall if he's a

2    co-conspirator.  He is the one who confirms the

3    message, though, with Angel Munoz.

4           THE COURT:  Why don't for the present

5    time --

6           MR. CASTELLANO:  We should list him.

7           THE COURT:  Should list him or should not?

8           MR. CASTELLANO:  Let's list him for now.

9           THE COURT:  Okay.

10          MR. CASTELLANO:  Statement number 13 on the

11   table, Leonard Lujan met with Joe Gallegos, Angel

12   DeLeon, and someone identified as Criminal.

13          THE COURT:  Is that Mr. Folse, Kevin Folse?

14          MR. CASTELLANO:  I think he is known by

15   that, but this is probably a different person.  Let

16   me see if I can find the name.  He's identified by

17   the name or moniker of Criminal.

18          THE COURT:  You don't think that's Folse?

19          MR. CASTELLANO:  I don't think so.  Let me

20   double-check.  That person is Michael Jaramillo, Your

21   Honor.  Frederico Munoz should be identified as a

22   co-conspirator in the Garza and Castillo murders.

23   That's statement number 16 on the table.

24          THE COURT:  Okay.

25          MR. CASTELLANO:  Two more possible people

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6528

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 96

```
 1   are the Rascon brothers, Brian and Raymond.  And this
 2   is for the Freddie Sanchez murder.
 3           THE COURT:  Okay.  So you don't have any
 4   more co-conspirators for Count 1, other than stopping
 5   with Frederico Munoz?
 6           MR. CASTELLANO:  I may have some more as I
 7   move through the table, Your Honor.  I tried to group
 8   these as best as possible, but I know there are some
 9   stragglers.
10           THE COURT:  Okay.  But the one you're
11   adding to Freddie Sanchez, Count 3, is Brian Rascon,
12   is that what you said?
13           MR. CASTELLANO:  Yes, Brian and Raymond
14   Rascon.
15           THE COURT:  And is Brian spelled B-R-I-A-N?
16           MR. CASTELLANO:  Yes.
17           THE COURT:  Then who is the other Rascon
18   brother?
19           MR. CASTELLANO:  Raymond.  I think for that
20   count we can also add possibly Benjamin Clark and
21   Javier Alonso.  Benjamin Clark -- sorry, I've already
22   given you that name.  But then you have Javier
23   Alonso.
24           THE COURT:  Ben Clark is in the indictment;
25   correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6529

1          MR. CASTELLANO:  That's correct.  Also

2     related to the Freddie Sanchez murder, in statement

3     number 21 on the table, it's an unidentified person,

4     so I put "first name unknown, last name unknown."

5     That person sent word from green pod to the blue pod

6     that if the murder wasn't carried out, other people

7     in blue pod would be killed.  So that's an unknown

8     person who passed word from one pod to the next.

9          Okay.  Going back to the Castillo and Garza

10    murders, there are two other possible names.  One is

11    Willie Amador, spelled --

12          THE COURT:  Let me ask you this:  All the

13    names that you gave me:  Munoz, Leroy Lucero,

14    Jaramillo, and Munoz, were those intended to be both

15    part of the conspiracy for Freddie Castillo and

16    Rolando Garza?

17          MR. CASTELLANO:  I know that Munoz'

18    statements are.  And generally they were grouped

19    together.  I'll have to double-check that.

20          THE COURT:  Should I be listing Leroy

21    Lucero as somebody the Government thinks was part of

22    the Garcia (sic) conspiracy?

23          MR. CASTELLANO:  Castillo and Garza,

24    G-A-R-Z-A.

25          THE COURT:  Yeah, I'm sorry, I can't read

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   my writing.  Garza.  So I need to move Leroy Lucero

 2   over to Garza as well?

 3            MR. CASTELLANO:  Yes.

 4            THE COURT:  And Michael Jaramillo?

 5            MR. CASTELLANO:  Yes.

 6            THE COURT:  Hold on just a second.

 7            (A discussion was held off the record.)

 8            THE COURT:  And how about Frederico Munoz?

 9            MR. CASTELLANO:  For both.

10            THE COURT:  He's for both.  All right.  So

11   you were about to add, I think, somebody to, I guess,

12   the bottom of both Mr. Castillo and Mr. Garza's

13   conspiracies?

14            MR. CASTELLANO:  Yes.

15            THE COURT:  Who are those people?

16            MR. CASTELLANO:  The first one is Willie,

17   W-I-L-L-I-E.

18            THE COURT:  Willie, okay.

19            MR. CASTELLANO:  Yes, Willie Amador,

20   spelled A-M-A-D-O-R.  And Jesse, spelled J-E-S-S-E.

21            THE COURT:  Hold on just a second.  Let me

22   get it in both columns here.  Then the next one is

23   Jesse --

24            MR. CASTELLANO:  Jesse Ibarra, spelled

25   I-B-A-R-R-A.  And that's for Castillo and Garza.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.
 2              MR. CASTELLANO:  These are all spelled out
 3     on the table, Your Honor.
 4              Next is we have a more specific statement
 5     as to the Garza murder by Willie Amador.  That's in
 6     statement number 32.  In that one Willie Amador tells
 7     Eugene Martinez to serve as a lookout during the
 8     Garza murder.
 9              Now, there is, turning to the Freddie
10     Sanchez murder, there is a person named Kyle Dwyer,
11     K-Y-L-E, D-W-Y-E-R.  He's one of the people who is
12     alleged to have passed paperwork regarding the
13     Sanchez murder.  I noticed that one up because
14     passing the paperwork is an act; however, I image
15     there are some words relating to that act.  I'm at
16     those words right now.  I have to double-check with
17     the witness who gives us that information.  But I'll
18     give the Court that in order to add him to the
19     conspiracy at least.
20              Okay.  Turning to the Burns homicide.  That
21     is a person known as Charlene, C-H-A-R-L-E-N-E; last
22     name, Baldizan, B-A-L-D-I-Z-A-N.
23              Someone -- I'm not sure he would be
24     considered a conspirator, but I will give the Court
25     another name as maybe potentially guilty of maybe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   helping to cover up the conspiracy.  That person is
 2   Jason; the next name is Van, V-A-N, and the next name
 3   is Veghel, V-E-G-H-E-L.
 4           THE COURT:  Are you saying B as in boy, or
 5   V as in --
 6           MR. CASTELLANO:  V as in Victor.  Both
 7   names have V as in Victor in them.
 8           You have the names already, but statement
 9   number 63 on the table, there are two people
10   identified as Cheeky and Coquito.  I believe those
11   are the Rascon brothers.
12           MR. COOPER:  Sorry, I didn't hear that last
13   part.
14           MR. CASTELLANO:  In statement number 63
15   Cheeky and Coquito are identified in that statement,
16   but those are the nicknames for the Rascon brothers.
17           MR. COOPER:  Which is which?
18           MR. CASTELLANO:  I don't remember.  Let me
19   check.
20           THE COURT:  So the two Rascon brothers,
21   Brian and Raymond should be listed both under Freddie
22   Sanchez and Adrian Burns?
23           MR. CASTELLANO:  No, in statement 63, those
24   are the Freddie Sanchez murder.
25           THE COURT:  Oh.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6533

```
 1            MR. CASTELLANO:  When the Court sees those
 2   names on the table, for example, on statement number
 3   63, those two names refer to the Rascon brothers and
 4   the Freddie Sanchez murder.
 5            THE COURT:  Okay.  So don't move them over
 6   to Mr. Burns?
 7            MR. CASTELLANO:  That's correct.
 8            THE COURT:  Just Freddie Sanchez?
 9            MR. CASTELLANO:  That's correct, Your
10   Honor.
11            THE COURT:  Okay.  Did you give everybody
12   the monikers for those two, and I just didn't hear
13   it?  Who is Brian?  Is he Cheeky, or --
14            MR. CASTELLANO:  I always get them
15   confused, Your Honor.  Let me check with the agent
16   and see if I can get the names lined up.  Okay, Your
17   Honor, Cheeky is Raymond Rascon, and Coquito is Brian
18   Rascon.
19            THE COURT:  Okay.  And these are Freddie
20   Sanchez?
21            MR. CASTELLANO:  That's correct.  Related
22   to the -- in statement number 67, that's related to
23   the Garza murder.  Potential names, not
24   necessarily -- one is Jimmie Gordon.  I'm not quite
25   sure I'd quite call him a conspirator, but let's list
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6534

1    him for now.

2              And the other one is Geraldine Martinez.

3              THE COURT:  We're going back to Count 2,

4    the Garza murder?

5              MR. CASTELLANO:  Yes.

6              THE COURT:  So we're adding two names here,

7    we're adding Jimmie Gordon, and we're adding

8    Geraldine Martinez?

9              MR. CASTELLANO:  Correct.

10             Another one, statement number 68 is not

11   tied directly to any of the charged homicides.  The

12   Court actually heard this testimony in Trial 1.  It's

13   that Billy Garcia had put a hit out on Gerald

14   Archuleta through Baby Zack.  So it would count as

15   enterprise evidence.  It wouldn't count towards any

16   of the charged -- well, it is related to the Castillo

17   and Garza murders.  I should say the Castillo murder.

18             THE COURT:  All right.  So who is the

19   co-conspirator that you're relating to statement 68?

20             MR. CASTELLANO:  Statement 68 is a

21   conversation where Baby Zack informs Gerald Archuleta

22   he's there to kill him at Billy Garcia's request.

23             THE COURT:  So is Baby Zack a

24   co-conspirator --

25             MR. CASTELLANO:  Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6535

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

```
 1                    THE COURT:  -- in the Castillo murder?

 2                    MR. CASTELLANO:  No.

 3                    THE COURT:  He's -- Baby Zack is a

 4      conspirator in what?

 5                    MR. CASTELLANO:  In a separate conspiracy

 6      to murder Gerald Archuleta.  It's a noncharged

 7      conspiracy, but I went ahead and put it on the table

 8      anyway.  It's a co-conspirator statement, but it's

 9      not a statement charged in this indictment.

10                    THE COURT:  Okay.  So there is a new

11      conspiracy, and we'll call it the Archuleta?

12                    MR. CASTELLANO:  Yes, that's correct, also

13      known as Styx.

14                    THE COURT:  And his first name is Gerald,

15      Gerald Archuleta?

16                    MR. CASTELLANO:  Yes, Your Honor.

17                    THE COURT:  And this is uncharged.  And

18      Baby Zack, remind me what his name is.

19                    MR. CASTELLANO:  I forget his first name.

20      He's Billy Garcia's nephew.  And the Court heard

21      testimony at trial that part of this was a

22      confrontation at the methadone clinic.

23                    THE COURT:  Is his name -- last name also

24      Garcia?

25                    MR. CASTELLANO:  I don't remember.  I will
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104 6537

```
 1    get that name to the Court.

 2              THE COURT:  All right.

 3              MR. CASTELLANO:  But it was related to the

 4    Castillo murder, as it related to a disagreement over

 5    Castillo getting murdered.

 6              Now, related to the Sanchez murder, the

 7    Freddie Sanchez murder --

 8              THE COURT:  Okay.

 9              MR. CASTELLANO:  -- another person

10    identified there is Jesse Trujillo.  That person is

11    identified in statement 73 and 74 of the table.

12              Your Honor, let me check on one other name

13    right here.

14              THE COURT:  You may.

15              MR. CASTELLANO:  Thank you, Your Honor.  I

16    was checking on another name.

17              Those are additional names I have on the

18    table.  And all those statements will be on or about

19    the date alleged in the indictment.

20              THE COURT:  All right.  It looks to me

21    like, then, you're alleging there were six

22    conspiracies.  If you want to quibble about the

23    number, go ahead, educate me.  But it sounds like

24    you're alleging six conspiracies.  I'll call that

25    Castillo, Garza, Sanchez, and then I'll put the 2, 4
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6537

```
 1    and 5s together, and that's Burns.  And I'll put,

 2    then, the Gomez three counts as one, and then you've

 3    got the uncharged Gerald Archuleta.  Is that a

 4    fair -- six conspiracies?

 5              MR. CASTELLANO:  I think that's right, Your

 6    Honor.

 7              THE COURT:  Can you think of any other

 8    names that you will be advancing as co-conspirators

 9    for any of these six conspiracies?

10              MR. CASTELLANO:  I know that Joe Martinez

11    is one of them.

12              THE COURT:  And where will he go?

13              MR. CASTELLANO:  I think he may be part of

14    Freddie Sanchez.  He's part of the Freddie Sanchez

15    murder, as someone who also passed or potentially

16    passed paperwork.

17              THE COURT:  So his name is Joe Martinez?

18              MR. CASTELLANO:  Yes.  You heard about him

19    in Trial 1, also known as Cheech.

20              THE COURT:  Okay.  Any other

21    co-conspirators that can you think of?

22              MR. CASTELLANO:  Not right offhand, Your

23    Honor.  Once defense counsel gets up here, if I find

24    other names, I will tender those to the Court.  But

25    that's what I have for right now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6538

```
 1              THE COURT:  All right.  It seems to me then
 2    we've laid the groundwork.  These are the
 3    Government's allegations.  It would seem to me that
 4    now is the time for Mr. Acee to take the stand, and
 5    then the defendants cross-examine him, A, about
 6    whether -- what evidence he has that these names have
 7    now been identified and the conspiracies that have
 8    been identified; what the evidence is that the
 9    Government is going to use to produce to prove that.
10    And then, if y'all want to tackle some of these
11    statements, go into those statements to see if you're
12    comfortable that they were during and in furtherance,
13    or do you want to get some information so you can
14    challenge it?  Is that --
15              MR. CASTELLANO:  Yes, Your Honor.  We're
16    actually tendering Agent Stemo for purposes of the
17    James hearing testimony.  She'll be the witness.
18              THE COURT:  All right.  Does that sound the
19    way we should proceed, Mr. Castle?
20              MR. CASTLE:  So they're going to put --
21              THE COURT:  They're going to give Ms. Stemo
22    to you.
23              MR. CASTLE:  That's fine.
24              THE COURT:  Then you can cross-examine her
25    about the conspiracies, whether these people are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   members, what the evidence is.  And then, if you want

 2   to take on some of these statements, then you can

 3   question her about that.

 4            MR. CASTLE:  That's fine, as long as we can

 5   call a witness, if we need to.

 6            THE COURT:  You're welcome to do that.  All

 7   right.  Ms. Stemo, I think you're up.  If you'll come

 8   up -- you know where the witness box is.  And, Ms.

 9   Bevel, will swear you in before you're seated.

10                      NANCY STEMO,

11       after having been first duly sworn under oath,

12       was questioned and testified as follows:

13                   DIRECT EXAMINATION

14            THE CLERK:  Please state your name and

15   spell your last name for the record.

16            THE WITNESS:  Nancy Stemo, S-T-E-M-O.

17            THE COURT:  Ms. Stemo.

18            Which one of the defendants are going to

19   lead off?  Mr. Benjamin?  Mr. Castle?  Who wants to

20   go first?

21            All right.  Mr. Benjamin.

22            MR. BENJAMIN:  May I proceed, Your Honor?

23            THE COURT:  You may.

24            MR. BENJAMIN:  Thank you.

25   BY MR. BENJAMIN:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6540

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108

```
 1          Q.   Agent Stemo, I think I'm going to -- and
 2     this is just kind of for orientation, I'm going to
 3     leave Counts 1 or 2 to some of the other counsel.  So
 4     I'm going to jump right to what the Court referred to
 5     as the Adrian Burns conspiracy, okay?  And that's
 6     Counts 4 and 5 for the record; correct?
 7          A.   Correct.
 8          Q.   And that was a conspiracy to murder Adrian
 9     Burns; correct?
10          A.   Correct.
11          Q.   And there were statements that were
12     produced by Charlene Baldizan, and did you take that
13     statement from her?
14          A.   I did not.
15          Q.   Are you aware of what that statement is, I
16     guess, or alleged to purport?
17          A.   I have read it before.
18          Q.   Okay.  And the first one of those
19     statements is in Document 1903, essentially, the
20     attachment, the table, is what we referred to as
21     statement 43.  That's says, "Charlene Baldizan agreed
22     to get rid of the van because the Gallegos brothers
23     knew the police were looking for it"; correct?
24          A.   Yes.
25          Q.   Who said that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6541

```
 1        A.   Without looking at the report, I can't tell
 2    you that.
 3        Q.   Okay.  But it's attributed -- we -- do you
 4    have the report with you?
 5        A.   I do not.
 6        Q.   Okay.
 7             MR. BENJAMIN:  Do you have a copy of the
 8    report?  Your Honor, may we take a break so she can
 9    refer to the report?  The statement, and if the Court
10    will refer to 43, is "Gallegos brothers."
11             THE COURT:  Yeah, do you need somebody to
12    make a copy or something so she can look at it?
13             MR. BENJAMIN:  Yes, Your Honor.
14             THE COURT:  If you'll give it --
15             MR. BENJAMIN:  I don't have -- my report is
16    digital, Your Honor.  It's in the hard drive.
17             THE COURT:  Anybody got a hard copy of the
18    report so I can copy it and give it to Ms. Stemo?
19             MR. CASTELLANO:  I don't mind if he
20    refreshes her recollection from his computer, Your
21    Honor.  I think he said he had it digitally.
22             MR. BENJAMIN:  Your Honor, this is a new
23    one for me.  And a James hearing is something where
24    she's the witness that's been proffered with
25    knowledge of this.  The report doesn't state which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6542

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110543

```
 1   brother.
 2              THE COURT:  Well, the Government has got
 3   the burden of proof here.  If they don't establish
 4   that these people have -- are co-conspirators, then
 5   they're going to lose.  What do you need?  Do you
 6   need to get a copy to her?  Does anybody have a hard
 7   copy?  If not, do you need to go down and print one?
 8              MR. CASTELLANO:  Let me see if I have it.
 9              MR. BENJAMIN:  Your Honor, there would be
10   multiple reports I'm going to print.  I can think of
11   probably about six or seven in there.
12              THE COURT:  Okay.  It's your call.  If you
13   want to take a break and go down and print them and
14   then give them to Ms. Stemo, we can.  Or looks like
15   Mr. Castellano has got one.  We can make copies.
16              MR. CASTELLANO:  May I approach the
17   witness, Your Honor?
18              THE COURT:  You may.
19              MR. BENJAMIN:  Your Honor --
20              THE WITNESS:  I've read the portion
21   regarding Ms. Baldizan.
22   BY MR. BENJAMIN:
23      Q.   Okay.  And that was one of the New York --
24   not New York -- New Mexico State Police supplements
25   that you referred to; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6543

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6544

```
 1        A.   Yes.

 2        Q.   And who authored that report?

 3        A.   I believe that was Mr. Alvino Vigil.

 4        Q.   And the statement, "Charlene Baldizan

 5   agreed to get rid of the van," and the rest of it was

 6   made by which individual?

 7        A.   It does not clarify as to which Gallegos

 8   brother told her that.

 9        Q.   Okay.  And so she was never asked that?

10        A.   I wasn't there, so I don't know.

11        Q.   Okay.  She has an hour and a half recorded

12   interview; correct?

13        A.   She does.

14        Q.   And that's not contained on that interview?

15        A.   No, it's not.  Agent Vigil refers to

16   another agent's report.

17        Q.   Right.  But we don't know -- this statement

18   is attributable to an individual; correct?

19        A.   Correct.

20        Q.   And so it's not that they made the

21   statement and parroted each other; it's one of the

22   two individuals?

23        A.   I don't know.

24        Q.   Right.  And the -- do you know when the

25   statement was made?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6544

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112 6545

```
 1        A.   Tuesday, November 20, 2012.

 2        Q.   And it was made one time or multiple times?

 3        A.   I believe they spoke to her twice.

 4        Q.   But was it made one time or both times?

 5        A.   I don't know.

 6        Q.   And Charlene Baldizan, the Court referred

 7   us to the conspiracy to murder Adrian Burns; correct?

 8        A.   Yes.

 9        Q.   She was not part of that conspiracy, was

10   she?

11        A.   I don't think so.

12        Q.   Okay.  And her statement, she doesn't

13   actually ever say that she knew the police were

14   looking for the van, does she?

15        A.   I don't think so.

16        Q.   Okay.  She refers generally to the idea

17   that she understood they were looking for the

18   Gallegos brothers?

19        A.   Yes.

20        Q.   And that's from news testimony -- not

21   testimony, from the news?

22        A.   Yes.

23        Q.   Okay.  So to sum up, Charlene Baldizan

24   agreed to get rid of the van because the Gallegos

25   brothers knew the police were looking for it is not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6545

```
 1    an accurate rendition of a statement that Charlene
 2    Baldizan made?
 3         A.   I don't know.  I'd have to watch the video
 4    again.
 5         Q.   Have you listened to the audio?
 6         A.   I think I have.
 7         Q.   And that's not contained on it, is it?
 8         A.   No, not in this report.
 9         Q.   No, no.  That statement is not contained on
10    the audio interview of Charlene?
11         A.   I'd have to listen to it again.
12         Q.   Do you know?
13         A.   Not off the top of my head.
14         Q.   Did you know you were going to testify
15    today to these statements?
16         A.   I did not.
17         Q.   That's the only statement that's being
18    attributable to Charlene Baldizan; correct?
19         A.   That's in front of me, yes.
20         Q.   Are you aware of any other statements that
21    Charlene Baldizan made in relation to the Adrian
22    Burns murder?
23         A.   I am.
24         Q.   Okay.  Have you been offered -- do you know
25    if you're planning on using any other statements that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6546

```
 1    were made by Charlene Baldizan?

 2         A.   I don't know that.

 3         Q.   Did you have any input in creating the

 4    table that we've referred to?

 5         A.   I did not.

 6         Q.   And the entirety of Charlene Baldizan's

 7    interview never mentions a gang; correct?

 8         A.   I don't think she mentions anything.

 9         Q.   And she specifically doesn't mention the

10    SNM or the Syndicato de Nuevo Mexico?

11         A.   I don't think she does.

12         Q.   And you're familiar with the Adrian Burns

13    investigation; correct?

14         A.   Yes.

15         Q.   There is no mention of the SNM in the

16    entire 36 supplements for -- actually, let me take

17    that back.  In the first 35 supplements is there is

18    any mention of the Adrian Burns murder?

19         A.   I'd have to check and get back to you.

20         Q.   Okay.  I think I misspoke.  I said murder,

21    I meant SNM Gang.

22         A.   I'd have to check and get back to you.

23         Q.   Okay.  Would you agree with me that it's

24    not mentioned, the SNM Gang is not mentioned up until

25    2015?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6547

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6548

```
 1            A.    I'd have to check and get back to you.

 2            Q.    But Charlene Baldizan does not make any

 3    statement to induce enlistment or further

 4    participation in a group activity; correct?

 5            A.    I don't think she does.

 6            Q.    Or to prompt further action on the part of

 7    the conspirators?

 8            A.    I believe she mentions helping them get a

 9    motel room.

10            Q.    Helping -- she shows up at a motel room;

11    correct?

12            A.    She does.

13            Q.    But she specifically says that Loretta

14    Apodaca rented the room?

15            A.    That could be true, yes.

16            Q.    She gets very animated when she finds out

17    that she's the only one being charged, doesn't she?

18            A.    I don't think that's true.  I believe

19    Loretta Apodaca was also charged.

20            Q.    Okay.  But she gets -- she's upset that

21    Angela Gallegos is not charged; correct?

22            A.    I believe she was also charged and the

23    charges were dismissed.

24            Q.    The audio -- I'll skip that.

25                  Are you familiar what the term "accessory
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6548

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116549

 1   after the fact" would mean?

 2        A.   Yes.

 3        Q.   That is the best way to describe Charlene

 4   Baldizan primarily; correct?

 5        A.   I suppose so.

 6        Q.   Because she comes into this on the 20th of

 7   November.

 8        A.   I believe she comes in earlier than that,

 9   because this is the date they were arrested.  I don't

10   know what she did or did not do prior to their

11   arrest.

12        Q.   She doesn't come in on the day of the

13   murder or any other time other than when she says she

14   got called to go to the hotel in Albuquerque;

15   correct?

16        A.   Not that I know of.

17        Q.   Jason Van Veghel is the other individual

18   that we were told was a co-conspirator in the Adrian

19   Burns case; correct?

20        A.   Yes.

21        Q.   And he, essentially, has made several

22   statements regarding the murder; correct?

23        A.   Yes.

24        Q.   Okay.  The first one, statement 44 says,

25   Joe and Andrew Gallegos asked Jason Van Veghel to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6549

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6550

```
 1    clean up the living room and pull the carpet up and
 2    gave him two to three hits of heroin for it.  Joe
 3    Gallegos also asked Van Veghel to clean the blood off
 4    the air compressor; correct?
 5         A.   To that effect, yes.
 6         Q.   Okay.  What do you understand his statement
 7    to be, if it's not to that effect?
 8         A.   I believe Joe Gallegos actually woke up
 9    Mr. Van Veghel, and gave him two to three BBs of
10    heroin, and asked him to clean up the living room and
11    clean up the carpet.
12         Q.   Okay.  And did Jason describe that carpet?
13         A.   Not that I can recall.
14         Q.   Okay.  He doesn't describe that carpet to
15    the FBI?
16         A.   He might have.  It's not something that I
17    remember off the top of my head.
18         Q.   Okay.  And at that point in time, when that
19    statement -- do you know who took that statement?
20         A.   Not off the top of my head.
21         Q.   Do you know when that statement was first
22    made?
23         A.   Not off the top of my head.
24         Q.   Would it help you if you were to refer to
25    your notes?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6550

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6551

1      A.    I don't have any notes.

2      Q.    Would it help you if you were to refer to

3    the offense report?

4      A.    Yes.

5      Q.    Okay.

6          MR. BENJAMIN:  Your Honor, I'd ask that the

7    agent be given an opportunity to refer to an offense

8    report.

9          THE COURT:  She can.  I don't have any

10   problem with her seeing it, but -- I'm sorry, what is

11   the defense (sic) report?

12         MR. CASTELLANO:  Well, if the question is

13   when was that statement made, I believe Mr. Van

14   Veghel was awoken the day following the murder, so

15   that would be November 13.  If that's Agent Stemo's

16   testimony.

17         THE COURT:  All right.  What are we

18   referring to when you say "defense report," what is

19   that?

20         MR. BENJAMIN:  Offense report, not defense

21   report.

22         THE COURT:  All right.  And do you have

23   copies of that?

24         MR. BENJAMIN:  They've been produced, yes,

25   Your Honor.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6551

```
 1              THE COURT:  I don't have a problem with her
 2    reviewing it.  This is a James hearing, so I don't
 3    think there is any problem with her referring to
 4    whatever she needs to get you the information you
 5    need.
 6              MR. BENJAMIN:  The two issues I have first,
 7    Your Honor, is that I understood that the agent that
 8    was going to be proffered for the James hearing was
 9    going to be prepared to testify about the statements
10    that were --
11              THE COURT:  Yeah.  I'm not impressed with
12    the preparation.  So it may be the Government is not
13    going to meet their burden of proof.  This is not
14    what we did in the first hearing.  So I'm not being
15    overwhelmed by the Government's proof so far.  But if
16    this is what they want to offer, it may work to your
17    benefit in the end.
18              MR. BENJAMIN:  May I have a second, Your
19    Honor?
20              THE COURT:  You may.
21              MR. BECK:  Your Honor, I can respond to
22    that while they're taking a minute.  It was our
23    understanding, based on my conversations with defense
24    counsel, Ms. Harbour-Valdez, with Mr. Castle, that
25    what we would do was argue today.  It was our
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6552

1   understanding that the table was going to be in lieu

2   of agent testimony.  It was also our understanding

3   that if they were going to require the Government to

4   put on affirmative evidence in a James hearing, other

5   than the table, that would be done tomorrow, or this

6   afternoon, at the latest.  But it was our

7   understanding that we were going to have notice if

8   they were going to require us to put on evidence.

9           THE COURT:  Why don't you do this:  I'll go

10  off the record in a second.  I won't move.  Why don't

11  y'all talk.  If y'all had some agreements, I don't

12  want to upset those.  But why don't y'all talk just a

13  second, you and Mr. Beck talk, and if you had an

14  agreement, fine; if you didn't have an agreement you

15  can tell me you don't have an agreement and I'll

16  rule.  But I don't want to upset any carts here.  So

17  why don't y'all talk a second, then let me know if

18  there is a disagreement.

19          MR. BECK:  Sure.

20          (A discussion was held off the record.)

21          THE COURT:  Let's go back on the record.

22          MR. CASTLE:  Judge, in November, when the

23  first James hearings happened, the defense and the

24  prosecution agreed that we'd try to do something a

25  little more orderly for Trial 2.  The prosecution was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6553

1    going to list the potential James statements well in

2    advance of the hearings.  I think that they said they

3    were going to do it by February 20.  We asked for

4    earlier.  It didn't come in till March 7.

5         The defense teams have been scrambling to

6    go through those, and almost all of us, I think, have

7    filed motions indicating which ones we object to, the

8    grounds for that.

9         We were told over the weekend that one of

10   the prosecutors couldn't be here after Wednesday,

11   that had to be involved in this James litigation.

12   Because we had planned on having it later in the

13   week.  I was asked if that could be pushed up forward

14   so that we could accommodate that person and the

15   prosecution team.  We said we would.  We were all

16   prepared, because we were told they were going to put

17   on their agent this morning, or today -- it could

18   have been this afternoon -- we didn't specify a

19   specific time.  And in our motion -- the order that

20   we jointly submitted to the Court, we indicated that

21   the James presentation would be today.

22        So the Government doesn't agree with that.

23   They think that we agreed to some other process.  But

24   we've been scrambling to make up for their lack of

25   diligence throughout this proceeding.  I understand

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    they had another trial, but they decided to prosecute

 2    this case with this many defendants.  And they

 3    decided during that first trial that they would

 4    abandon their obligations for Trial 2.  And now they

 5    come here today not prepared to proceed, and I think

 6    we just need to proceed at this point on these

 7    matters.  And so that's our position.

 8              I talked to them to try to work out a

 9    resolution so we wouldn't have two different

10    proposals to the Court on behalf of all the other

11    defendants.  But I can tell the Court we were all

12    surprised when the Government said they weren't

13    calling a witness today because we expected that to

14    happen on the specific statements that we were

15    objecting to, and we all outlined those objections in

16    the last week or so.

17              So that's the record we'll make.  I like to

18    make agreements with people, but I would never have

19    agreed that they wouldn't have to put on any

20    evidence, Judge.  I think the Court has seen my style

21    throughout these proceedings.  I don't think my style

22    is:  Don't put on any evidence, just bring the

23    evidence in wholesale.

24              THE COURT:  All right.  Any other -- before

25    I hear from you, Mr. Beck, any other defendant want
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to speak on the agreement, so can I figure out how to

2    proceed?

3              All right.  Mr. Beck.

4              MR. BECK:  So this is the proposed

5    scheduling order that I think was sent to Ms. Wild

6    Friday afternoon, and then again Friday evening.  I

7    think Ms. Koch supplemented that at some point.  So

8    we have the initial nonevidentiary arguments on

9    Monday morning.

10             THE COURT:  So what I'm looking at is an

11   email from Laura Koch who, I guess, is Mr. Castle's

12   paralegal.  Is that Koch or Coke?

13             MS. KOCH:  Koch.

14             THE COURT:  And it's dated at 1:13 p.m.

15   Are we looking at the same thing, Mr. Beck?

16             MR. BECK:  I'm looking at the attachment to

17   that email.

18             THE COURT:  But that's what we're all

19   looking at?

20             MR. BECK:  That's right, Your Honor.

21             So the first thing:  Nonevidentiary

22   arguments is the notice for James hearing.  So that's

23   nonevidentiary.  Then, again, we have a lot of

24   arguments that come through the day, none of which

25   we've gotten to.  And then on page 2 -- and I'll zoom

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6556

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6557

```
 1    in on this language, where it says, "Any presentation
 2    of Government James evidence here."  And so --
 3              THE COURT:  "Any presentation of Government
 4    James evidence here," and that would follow --
 5              MR. BECK:  That would follow, I think, the
 6    arguments and the motions to sever.
 7              THE COURT:  To sever.
 8              MR. BECK:  So I believe that the agreement
 9    was -- and certainly my subjective part of the
10    agreement was -- if the defendants were going to
11    require us to put on, quote, "any presentation of
12    Government James evidence" --
13              THE COURT:  That's where it was going to
14    go?
15              MR. BECK:  That's where it was going to go.
16              THE COURT:  And they had the ability to put
17    on their presentation later in the week?
18              MR. BECK:  Right.
19              THE COURT:  Is that because of getting
20    witnesses here?
21              MR. BECK:  Right, Your Honor, yes.
22              So, to the extent that they were going to
23    ask us to put on evidence, I anticipated that they
24    would ask us.  And I think to be fair, I think Mr.
25    Castellano is ready to do that with Special Agent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6557

1    Stemo, to go through direct examination and provide

2    her with these reports so that she can testify to the

3    same information on the table.

4            There was no table provided in the first

5    trial.  And that way, we just presented all the

6    information through Special Agent Acee.

7            And in this trial we agreed to put a table

8    together in lieu of having examinations, having

9    affirmative evidence from Special Agent Acee, or

10   Special Agent Stemo.  But again, if we're going back

11   on that, we can, that's fine; Special Agent Stemo can

12   testify to the information that we've provided in the

13   table.

14           So I just don't want there to be any

15   confusion what at least the United States'

16   expectation of this agreement, filed by Mr. Castle in

17   the scheduling order, was.

18           THE COURT:  Well, tell me how you

19   envisioned the James hearing taking place.  I guess

20   I'm trying to figure out how we can have a James

21   hearing legal arguments before we have the

22   evidentiary portion of it.  I guess I'm not seeing

23   how you have arguments before you have the evidence.

24   So what were you envisioning?

25           MR. BECK:  I think, sort of, we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6558

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126559

```
1    short-circuited it a little bit before we started the
2    James hearing by asking whether the Court was going
3    to make us produce a list of 804(b)(3) statements
4    against interests, admissions by party opponents,
5    things like that.  I think that was going to be the
6    argument with the motion in limine, was whether those
7    things come in.  I think what we envisioned here, if
8    necessary, was that we would argue those things out.
9    If the Court was inclined to make us produce that
10   list, we would do that, so that later on they could
11   present their witnesses whom they wanted to call to
12   rebut the James statements, the admissions against
13   party opponent, the admissions against penal
14   interests.  And that's why we put their witnesses
15   down the road because of subpoenas and things like
16   that.
17              I think -- I guess --
18              THE COURT:  Did I do something that
19   short-circuited what y'all were trying to do?
20              MR. BECK:  No, not necessarily.  I mean, I
21   think we're getting there.  I think where things got
22   caught up is that Your Honor was asking to just go
23   straight forward with the James hearing, which is
24   fine.  I think the parties just had a little
25   misunderstanding of how that was going to play out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6559

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 127

```
 1    I think that -- I think that from our perspective,
 2    what Mr. Benjamin was doing was according to the
 3    agreement, and proper, was that he was looking at
 4    statement, for instance 43, and saying:  There is
 5    nothing in the reports that indicates which Gallegos
 6    brother she's referring to, and it's not even clear
 7    that this witness was part of the conspiracy.  And so
 8    he is attacking what we put forth on the table as
 9    proper evidence.  And it's perfectly proper for him
10    to do so.  I just think that maybe we weren't -- all
11    counsel weren't ready with the reports that the
12    witnesses would have needed to look at to refresh
13    their recollection.  So I think that it's just the
14    case of not having the documentary evidence.
15            And I think the intention from everyone on
16    both sides was admirable and right, that we put this
17    list out so that they could attack the statements
18    they didn't believe came in.  And I think we're
19    proceeding about that in a fine way.  I just think
20    that we weren't quite ready to -- at least for us to
21    provide the reports to Special Agent Acee -- excuse
22    me, Special Agent Stemo.  Sorry.
23            And so, if that's the way we're going to
24    proceed, I think that that's a fine way to do it.  I
25    think that it's an expedient way to do it.  I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6561

1   it's a proper way to do it.  But I just don't want

2   the impression here from the Court to be that the

3   United States didn't put on some affirmative evidence

4   for a James hearing purpose, and that the United

5   States is in some way unprepared or underwhelming the

6   Court.  I don't want that impression.

7           THE COURT:  Well, I guess here's the

8   impression I have:  It seems to me that the

9   Government has given a fair amount of information as

10  to statements, conspiracies, and as members of these

11  conspiracies.  And they put in evidence to establish

12  the conspiracies.  I'm a little shaky on whether it's

13  been established that all these people are members of

14  the conspiracy.  And some of the statements, when I

15  read them, I'm struggling to see how they were during

16  or in furtherance of the conspiracy.

17          But I do think the Government has put a

18  fair amount in.  It's done differently than the first

19  trial and done differently than some of the James

20  hearings I've had.  What I guess I'm concerned about

21  is I'm not hearing the sort of familiarity with the

22  evidence that I heard with Mr. Acee from Ms. Stemo.

23  And I'm wondering if we're going to get a sort of

24  robust record here that I think you need to get this

25  stuff in, and I need to make a decision, and the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6561

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129 6562

```
 1   defendants feel like they're getting information.  So
 2   I think that's -- I'm speaking for myself, that seems
 3   to be the sticking point, that we're not getting the
 4   sort of familiarity of the record from Ms. Stemo that
 5   we got from Mr. Acee in the first trial.
 6            MR. BECK:  Right.  And that's why I was
 7   going back and showing what brought us here.
 8            But what I'm also saying to the Court is, I
 9   don't think that's necessary a reflection on all the
10   James statements.
11            THE COURT:  Let me ask this:  If the
12   defendants get what they want from her, whatever she
13   can give them, and they call, then, Mr. Acee, any
14   problem with that?
15            MR. BECK:  I don't think so.  I don't know
16   that he'll have more familiarity with it.  I think
17   that the way it's proceeding here is, as I said, an
18   expedient way to deal with this process.  Because
19   they have the statements in front of them.  Mr.
20   Benjamin has now picked out one or two that he thinks
21   don't meet the exception, and he's attacking those.
22   And so when Special Agent Stemo says, "I'm not
23   familiar with whether she was a member of the
24   conspiracy, when she joined.  I'm not familiar with
25   whether SNM is mentioned in those," that's something
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6562

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6563

1   for us to clean up on redirect.  And if we don't, it

2   seems like it's not admissible as a co-conspirator

3   statement.

4          So I understand the Court's concern because

5   it's different than how we did it in the first one,

6   but I don't think it's necessarily a bad thing.  I

7   think that we're getting to the heart of where the

8   contentions on these are.  So, as I said, I think

9   it's more of, just a question of having the documents

10  ready to go, and we can do that now that we've got an

11  idea of where they're attacking these.

12         But I just don't want the Court to think

13  it's a reflection on the United States not preparing

14  its case or anything like that.  I think the

15  procedure that we worked out in the beginning is

16  actually working here.  And so I think, based on what

17  I just saw from Mr. Benjamin, he's looked at the

18  statements, he's prepared some that he thinks he can

19  attack and exclude as co-conspirator statements.  And

20  I think we're getting to the heart of that.  So I do

21  think that this process is working.

22         THE COURT:  Okay.  All right.  Thank you,

23  Mr. Beck.

24         Mr. Castle.

25         MR. CASTLE:  Yes, Your Honor, the burden to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    show the applicability of an exception to the hearsay
 2    rule is on the proponent of the evidence.  The
 3    Government came here today -- and by the way, that
 4    indication of presentation of evidence, that's on the
 5    Monday schedule, so it was scheduled for today, even
 6    though it was on page 2, it was still Monday.  But
 7    they came here and they said, We're going to do that,
 8    Your Honor.
 9              THE COURT:  But it seems to me that the
10    agreement that was reached, if I just look at it,
11    they don't have an obligation to put on, I guess,
12    their interpretation of -- which may be even more
13    narrow than what the language is.  They don't have to
14    present a live witness until after we argue the
15    motions to sever.  They don't have any problem with
16    you having Ms. Stemo up here, but they don't have any
17    obligations to put up any witnesses until later.  So
18    they've done more than what it seems they've agreed
19    to do on the paper.
20              MR. CASTLE:  I'm a bit confused, because I
21    think motions to sever are something completely
22    different.  I think the Court said at the beginning
23    of the hearing --
24              THE COURT:  When you look at this chart, it
25    says at the top, "Any presentation of Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6564

```
 1    James evidence here," which would be after the
 2    motions to sever.  And then it says, "With defense
 3    James presentations later in the week."
 4                MR. CASTLE:  The defense presentations.
 5    And so what I think has happened here is they did do
 6    their presentation.  They presented the Court with, I
 7    think, eight exhibits that they wanted the Court to
 8    rely on.  Then they made a statement on the record
 9    about the different conspiracies.  And at that
10    point --
11                THE COURT:  Well, they also gave us a
12    table.
13                MR. CASTLE:  They gave us a table, right.
14                THE COURT:  I mean, that's pretty huge,
15    isn't it?
16                MR. CASTLE:  It's helpful.  I think it is.
17    I'm not sure it satisfies all the elements.
18                THE COURT:  That was originally what the
19    defendants wanted.  They wanted that table.  And so,
20    unlike the Trial 1 defendants who wanted Acee on the
21    stand, and got him promptly, y'all got the statement.
22                MR. CASTLE:  Well, I think if the Court
23    goes back in time, what happened was the Government
24    wasn't ready for those James hearings either.  So the
25    defendants in Trial 1 didn't want to delay
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6565

 1    admission -- didn't want to have rulings much later

 2    in the proceedings, in January, or whenever they

 3    might be, so they elected to go ahead and go forward

 4    with it.

 5          What I'm just saying, if this is what the

 6    Government is going to rest on, then we can proceed

 7    in that fashion.  And we may not have any questions

 8    for Agent Stemo.  I find it ironic they said:  We're

 9    ready to present this evidence through Agent Stemo,

10    but yet she testified a few minutes ago she wasn't

11    prepared to testify in this matter today.  So if

12    they're going to rest on that, I think the defense

13    can then decide whether they want to put on any

14    evidence.

15          THE COURT:  Let me do this:  I'll give

16    y'all the choice, and we're coming up on the break,

17    so y'all can spend a little bit of time discussing

18    it.  It seems to me that, given the agreement as I

19    see it, you can continue to take Ms. Stemo and do

20    what you want with her.  And it sounds like, if you

21    want to call witnesses, you can.

22          If you want to not do that at this time,

23    then we can go to the other motions that we set for

24    Monday.  And then I guess, after we get through with

25    the motion to sever, whenever that's going to occur,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6566

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134 6567

1    then the Government does have an obligation to put on

2    whatever it wants, and that probably is where it's

3    frozen.  I'm a little reluctant to freeze it at the

4    present time given that in bold on page 2.  But I'll

5    freeze it after we get through with the motions to

6    sever.  And then y'all can call witnesses then or

7    call them later.  And whenever y'all are done, I'll

8    give the Government a chance for any rebuttal, and

9    then we'll have arguments.

10          So it seems to me it's y'all's call.  If

11   y'all want to still talk to Ms. Stemo, that's fine.

12   It doesn't sound like the Government may call anybody

13   but her, and they may not even call her, they may

14   just rest on what they've done.

15          MR. BENJAMIN:  And, Your Honor, at this

16   point in time, based upon the way that this has been

17   moving forward this morning -- or sorry, this

18   afternoon, I guess -- I believe -- I don't know if I

19   can speak for all the defendants, but we would rather

20   move on to the rest of what's on the docket for --

21   and then could we have a minute to talk?

22          THE COURT:  Yeah.  And I assume if they

23   decide to move on, y'all don't have any objection

24   from the Government, Mr. Castellano?

25          MR. CASTELLANO:  That's correct, Your

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                      1-800-669-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 6567

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135 6568

```
 1    Honor.
 2              THE COURT:  Mr. Beck?  All right.
 3              MR. BENJAMIN:  Did the Court suggest it was
 4    going to take a break, we could talk during the
 5    break, and then --
 6              THE COURT:  If y'all want to let me know,
 7    and then if y'all know what you're going to do.  Talk
 8     a second here, then if we need to take a break,
 9    we'll take a break.
10              (A discussion was held off the record.)
11              MR. BENJAMIN:  Thank you, Your Honor.  The
12    defendants as a group would prefer to move on to any
13    motions and then let the Government, on their
14    schedule, resume and put on their testimony.
15              THE COURT:  All right.  So we will do that.
16    So when we come back in, we will take up -- I'm a
17    little confused by this motion, so it will be what
18    Ms. Wild had tabbed as 27.  But it is Mr. Garcia's
19    motion to prevent admission of statements of
20    nontestifying co-defendants implicating Mr. Garcia,
21    and for an order for the Government to specify such
22    statements prior to trial.
23              I guess I'm trying to figure out how we're
24    getting in statements of nontestifying co-defendants.
25    Maybe that was through -- it would seem to me if all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6568

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6569

```
 1    the statements are identified in the James statement,

 2    if they're trying to get them as co-conspirator

 3    statements, then they're going to have to already be

 4    identified in the James statement.

 5           So I'm not sure what else I'm being asked

 6    to order.  And then I guess I can't blanket deny

 7    their admission.  So I'll need to be educated on this

 8    motion.  But it seems to me that once they have

 9    identified with the James statement all the

10    statements, they've done half of what's requested,

11    then I'm not inclined to require them to produce

12    anything other than James statements.

13           But let's take it up after the break.  So

14    we'll be in recess for about 15 minutes.

15           (The Court stood in recess.)

16           THE COURT:  All right.  So I guess we have

17    the motion from Mr. Garcia.  Let me -- before you

18    speak, Mr. Castle, let me make just a couple more

19    comments, and I may have a question of the

20    Government.  While I'm not inclined to require the

21    Government to create some new document specifying

22    statements before trial other than what we already

23    have with the table on the James statements, can I

24    have this representation from the Government that you

25    do not intend to elicit any other statements other
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6569

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6570

1    than what is in the discovery or in this chart?

2           I mean, it would seem to me that I might

3    run into some Bruton problems.  I might run into just

4    problems, evidentiary problems, or something, if I

5    don't have the universe nailed down.

6           MR. BECK:  So I think you have the

7    universe, with a small exception to that.  And that

8    is, as the Court's well aware in the first trial, as

9    we start preparing for these trials, and meeting with

10   our anticipated cooperating witnesses --

11          THE COURT:  They tell you more stuff.

12          MR. BECK:  -- they oftentimes --

13          THE COURT:  Could we have this agreement,

14   then, that if it's not on your table, your James

15   table, and if it has not been produced in discovery,

16   we will not hear it in trial unless you send a letter

17   to the attorneys for the defendants.  And then we can

18   argue at that point whether it's timely, should be in

19   or out as far as that.  But I think everybody has to

20   recognize that, as we get closer to trial, testifying

21   witnesses are going to say more things, and that's

22   just the reality of it.  But you will send a letter

23   promptly listing those statements that are not in the

24   current discovery.

25          MR. BECK:  Yeah.  I think what we'll do --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6570

1   I would assume most are familiar with this, but some
2   aren't.  What happens when we run into new statements
3   when we're talking to cooperating witnesses, what
4   we've done is put them in a letter, and provide that
5   letter to all defense counsel as soon as possible,
6   and file a notice attaching that letter on the
7   docket, so that the Court also has notice of that.
8   And that way we can bring it to -- anyone who wants
9   to can bring it to the Court's attention as soon as
10   possible if the parties can't work it out.  But we
11   will endeavor to provide notice to defense counsel as
12   soon as we are on notice of those new statements, if
13   there are any.
14           THE COURT:  Okay.  All right.  Thank you,
15   Mr. Beck.
16           Mr. Castle, it would seem to me that I
17   probably will not require any other creation, because
18   it seems to me that gives safeguards as to giving me
19   some time to think about any particular statement,
20   but it also gives you some protection.  And then I
21   guess the -- and I'm not trying to cut you off.  You
22   can argue whatever you want -- but then on the motion
23   to prevent the admission of statements of
24   nontestifying, it would seem to me that then the
25   burden shifts to the defendants:  Tell me what you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6571

```
 1    want me to consider, either list for me or tell me
 2    orally:  Here's a statement that the Government is
 3    trying to get in, and we don't think it should come
 4    if, and here's the reason.  What do you think about
 5    that procedure?
 6              MR. CASTLE:  I think that that's what the
 7    Court had anticipated a long time ago.  I think when
 8    Mr. Chambers was arguing about just generally Bruton
 9    issues, the Court had indicated that when we got
10    closer to trial, that it would look at statements
11    individually.  If the defendants, you know, had more
12    targeted litigation, I think that was the term,
13    that's why we put it in our motion.
14              So I think that even though I'd like the
15    list, I know the Court has already ruled on that, I'm
16    not going to reargue it, but I think the defendants
17    are on notice now to file motions to suppress, or
18    whatever you want to call it, concerning specific
19    statements.  And I think some of them are on the
20    agenda for this week.  So I'm not going to reargue
21    the issue.
22              THE COURT:  Okay.  All right.  So I'm
23    willing and eager to handle and decide as many
24    statements as I can pretrial.  Just bring them to my
25    attention, and I'll try to work with you on getting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6572

```
1    those out.

2            MR. BURKE:  Your Honor, I did want to say

3    something about these pretrial interviews with the

4    government witness.  And although the Court just said

5    that's the reality, that they'll remember something

6    new, and Mr. Beck said:  We don't know what else

7    they're going to say, I personally have never seen so

8    many additional things being remembered during the

9    last-ditch pretrial meetings.  And I -- so it's not a

10   reality to me that something new will come up a week

11   before trial because, you know, they're now

12   interviewing the informants again.

13           I suppose, if they get the 213-question

14   questionnaire, which is really a script for how they

15   might get additional points for cooperation, then

16   they might think of something else to say.  And I'm

17   wondering if the defense could be present during the

18   pretrial interviews with the informants, so we're

19   right there at the time that new remembrances occur.

20           THE COURT:  Well, I don't think there is

21   probably anything that really allows me or requires

22   me to do that.  And I'm sure the Government is going

23   to object.  I should ask, I guess, first.

24           MR. BURKE:  But they're here to do justice.

25           MR. BECK:  Yes, Your Honor, the United
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6573

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143574

```
 1    States objects.  And it's not that they're

 2    remembering new things.  It's that they haven't been

 3    asked about it before.

 4           THE COURT:  Well, I'm afraid I really don't

 5    have anything other than just shear judicial brute

 6    force to order it, and I've declined to do that.

 7           MR. BURKE:  Yes, sir.

 8           THE COURT:  Thank you, Mr. Burke.

 9           All right.  Okay.  Anything else anybody

10    wants to say then on the motion 1307?  I've laid out

11    a procedure how we're going to proceed, and I'm eager

12    to help you deal with that.  But I think we're going

13    to have to be real specific, so -- all right, not

14    hearing anything, does the Government want to say

15    anything on that motion?  Comfortable with the

16    procedure I'm laying out?

17           MR. BECK:  Yes, Your Honor.  I'm assuming

18    we're going to save the discussion of the motion in

19    limine you were reading this morning for later.  I

20    thought that that might come up in this.  But we can

21    do that later.

22           THE COURT:  I've been reading it off and

23    on.  But I went to some other stuff.  I started

24    reading the defendant's, Mr. Gallegos', response to

25    your motion on the proposed Jencks statements.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6574

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 142

```
 1   refresh my memory as to what I was reading this

 2   morning.

 3          MR. BECK:  That's the admissions against

 4   penal interests.  But as I said, it was a motion in

 5   limine that was filed over the weekend.  The

 6   defendants haven't responded.  So I think if it

 7   didn't come into play yet, it's probably better set

 8   at the end of the hearing so that if people do want

 9   to respond in a written fashion, they can.

10          THE COURT:  And I'd like to read it a

11   little better.

12          MR. BECK:  I would like for you to do so

13   also.

14          THE COURT:  I was trying to read it while a

15   lot of stuff was going on this morning, and I'm not

16   sure I was doing it justice.

17          All right.  So I think the next motion that

18   is up is what I understand the United States' notice

19   of request to proceed with the hearings on the

20   motions to dismiss.  And I think this is largely, if

21   I understand it, a request to basically grant a

22   protective order as to two U.S. attorneys.

23          This might be a good place for me to just

24   give you my thoughts on the motions to dismiss, and

25   then we can begin to break it down.  Because, if I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6575

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

1    understand from Ms. Wild, the -- let me put these

2    down so I don't get my papers out of order -- my

3    understanding from Ms. Wild is that the motions to

4    dismiss are going to take about four days, so they're

5    a big item, big ticket item for everybody.

6            I am not ruling, but I did read everything.

7    I read every attachment related to the motion to

8    dismiss.  And so unless it's some material that came

9    in just recently that's been handed to me -- and a

10   fair amount has kind of roared in here at the very

11   end, so there is a stack here to read -- I feel like

12   I have read everything on the motions to dismiss.

13           Let me give you my impression of this case,

14   because I'm not precluding any evidence, and I'm not

15   ruling, but I do think it's fair to give everybody my

16   thinking after reading all this.  I do think the

17   defendants have an uphill battle in trying to get me

18   to dismiss the counts here for preindictment delay.

19   The standards are very high, as the parties point

20   out.  Here's my perception of what took place, and so

21   if you want to use your time in the hearings to

22   disavow.

23           And this goes back to my very earliest

24   involvement in the case, when Judge Gonzales decided

25   to come off the case.  At that time, I was -- as I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6576

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 144-6577

```
 1    was coming into the case about the only thing I had
 2    to read were motions to disqualify him.  And attached
 3    to that was all the motions in the U.S. Attorney's
 4    Office of their investigation over the years, during
 5    the time that Judge Gonzalez was at the U.S.
 6    Attorney's Office.  So my earliest impressions of
 7    this case were formed, and to a certain degree I
 8    think the defendants, if they're going to succeed on
 9    their motions to dismiss, are going to have to
10    overcome my earliest impressions of reading in this
11    case.
12            My impressions from reading those earlier
13    302s, reports that the attorneys were doing, the
14    things that the Assistant U.S. Attorneys, that Mr.
15    Gonzales was seeing -- Judge Gonzales now -- was that
16    the United States didn't want to have anything to do
17    with the SNM Gang.  They went out of their way to try
18    to tell the State of New Mexico:  No; it was their
19    problem.  And that the State of New Mexico, I think,
20    felt like that they couldn't handle the gang, and
21    they couldn't handle, from either resource standpoint
22    or whatever, they couldn't handle the SNM Gang.  They
23    kept coming back to the United States to try to get
24    them to take this case.  And it seems to me that
25    there is a fairly consistent thread through the file
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6577

1    of the Government that they didn't want to do this.

2    They did not want this case.  They didn't want SNM.

3    They didn't want to put the resources to it.  They

4    thought it was a State of New Mexico problem, until

5    Mr. Baca and others ordered the hit on

6    Mr. Santistevan and Mr. Marcantel.

7            And at that point, there was a recognition

8    by the United States that the State of New Mexico

9    could not control the situation.  It didn't have the

10   resources.  It was -- I'll use my words:  Out of

11   control.  And they stepped in and they brought this

12   racketeering case.

13           And the decisions that they made in

14   bringing the racketeering case, we can call them

15   tactical, we can call them strategic, but it is the

16   way you put together a racketeering case.  They

17   didn't have any interest in bringing murder cases.

18   They wanted to -- but once they bit, once they

19   decided that they needed to come in and help with the

20   state, then they began to put together a racketeering

21   case.

22           I certainly have ruled for discovery

23   purposes that since Marcantel and Santistevan were

24   part of this case, that the State of New Mexico

25   clearly wanted the feds to bring this case, that for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6578

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 146

```
 1   discovery purposes, they were one and the same from
 2   the time I got the case.  They were melded together,
 3   and that they needed to be treated that way for
 4   discovery purposes.  And nothing has changed on that
 5   score.  Although, now that the verdicts came in this
 6   morning, there may be a lessening of their desires on
 7   that.  But I probably will not reconsider anything
 8   that I've done.  I think for purposes of production,
 9   we made our rulings, and we'll stick with them on
10   their part.
11          But I think it's unfair to go back into
12   pre-2015 -- I don't know where exactly the cutoff
13   is -- and treat the Corrections Department and the
14   Department of Justice as one and the same.  And so,
15   to me, to tell the Government that they have engaged
16   in preindictment delay is not something that I'm
17   inclined to do.  And the State just didn't prosecute
18   it.  So there is not a delay on their part, they just
19   didn't prosecute it.  And we can all look at the
20   names of the people that made those decisions not to
21   prosecute at that time.
22          So that's what I'm inclined to do.  I
23   understand that the defendants want to make a record,
24   and that they are entitled to that.  But I do think
25   it's an uphill battle to try to convince me to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6579



Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6580

1   dismiss these counts, and not allow them to proceed

2   to trial.  So we'll be making a record, but I think

3   that the Government may -- the defendants may want to

4   take into account what I have said.

5            Now, having said that, the motion then to

6   quash the subpoenas against the two Assistant U.S.

7   Attorneys, it seems to me that the Government has got

8   to prove what I just said.  They may sit there and

9   go:  That's not our case at all.  We disagree with

10  the judge.  That's not the way we read it.

11           But if they agree with what I think the

12  history is, then you're going to have to come forward

13  with something, I think, to indicate that.  I'm

14  reading what the Assistant U.S. Attorneys and the

15  Attorney General and the FBI were thinking at the

16  time.  And so, absent some problem, such as a Touhy

17  request, or something like that, which I didn't see

18  in the notice here, and it seems to me that we ought

19  to -- I should not quash these subpoenas.  I can't

20  make a determination at the present time as to what

21  an Assistant U.S. Attorney would have that the FBI or

22  other witnesses would not have.  It may be that it's

23  clear to everybody, but it's not clear to me that

24  these Assistant U.S. Attorneys may be the only source

25  of some of this information.

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                           Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492
                                                      1-800-669-9492
                                            e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 148 6581

1          I realize that there may be work product

2     objections.  There may be -- I'm not sure what's

3     really attorney-client, but I do think that this is

4     probably ancient history in connection with this

5     case, so it may be that there is not as much that can

6     be protected or should be protected in explaining why

7     the Government didn't bring these cases until

8     recently.

9          There also seems to me to be some waiver.

10    I have held in cases -- and you can review some of my

11    discovery opinions that on privilege, attorney-client

12    privilege, a party has to be very careful that they

13    do not try to selectively waive any work product.

14    But I've said on attorney-client privilege, it's very

15    difficult to selectively waive that privilege without

16    waiving it all.

17          But on work product, if you think about it,

18    we selectively waive work product all the time.  And

19    we're always doing it.  We get something, if it's

20    useful to us we use it.  If it's not useful to us, or

21    we don't want to use it, we don't use it, or we may

22    hold it.  That's what attorneys do.

23          But it seems to me the stuff that's in

24    302s, the stuff that I have seen in connection with

25    the disqualification of Judge Gonzales, some of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  stuff that's here, it seems to me that that work
 2  product has been largely waived as to that.  I'm not
 3  saying that it's waived as to everything, because I
 4  think the Government can selectively waive -- any
 5  party can selectively waive.  And we'll just have to
 6  take it one at a time.
 7          But on the specific request that we have in
 8  front of me, I guess I was not inclined to not admit
 9  the testimony, and somewhat encourage the Government
10  to explain better why we're here.  I think that my
11  explanation is the one that I'm inclined to agree
12  with.  But I do -- I'm going to have to have evidence
13  to support it, and a record to support it, if I'm
14  going to ultimately deny these motions.  So those are
15  comments I make for everybody on the motions to
16  dismiss.
17          Is this your, basically, motion, Mr. Beck,
18  that you want to argue?
19          MR. BECK:  Your Honor, it's not a motion to
20  quash the subpoena.  It's a notice for reasons that I
21  agree with Your Honor, that there may be situations,
22  and this may be one, where it is proper to have
23  previous AUSAs, not assigned to the case, in front of
24  the Court, testify.
25          And I agree that there can be -- I mean,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6582

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150 6583

```
 1    I'm familiar with the attorney-client privilege and
 2    the Work Product Doctrine from my practice in civil
 3    law.  And I will grant the Court that that area is
 4    much more developed on that side of the legal arena
 5    than it is in the criminal arena.
 6          But I do think the intent of this notice
 7    was to alert the Court to a couple issues.  The first
 8    is that I think that there will be overlapping
 9    evidence from the FBI agents that the defendants
10    subpoenaed and intend to call.  They intend to call
11    it's my understanding Special Agent Acee, Special
12    Agent Trent Pedersen, and then Special Agent Sonya
13    Chavez.  Right, that's the right name?  Thank you.
14          THE COURT:  Well for my edification, of
15    course I know Mr. Acee, but Chavez and Pedersen, were
16    they agents that had investigated things earlier on?
17    Is that it?
18          MR. BECK:  Yes.
19          THE COURT:  What is their sort of
20    timeframe?
21          MR. BECK:  I can't say that exactly,
22    because I don't know.  Special Agent Pedersen was, I
23    believe, April of 2001, until September 11th of 2001.
24    And so he was at a meeting where they discussed some
25    of the SNM's activities in 2001, including the Garza
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6583

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

```
 1    and Castillo murders, which are Counts 1 and 2 in

 2    this case.

 3              THE COURT:  Okay.  Is what you're

 4    suggesting is that let's get those people, get their

 5    evidence out, and then --

 6              MR. BECK:  Exactly.

 7              THE COURT:  -- maybe the questioning of the

 8    Assistant U.S. Attorneys would be more targeted?

 9              MR. BECK:  Right.  I think that's the

10    issue.

11              THE COURT:  Is it fair to say that those --

12    the attorneys made the decision on whether to

13    prosecute here or not, not the FBI?

14              MR. BECK:  Well, I mean certainly, right.

15    An FBI agent --

16              THE COURT:  Somebody made the call that was

17    an attorney?

18              MR. BECK:  Yeah.  And I don't know that

19    there even was a call made.  It just --

20              THE COURT:  Didn't happen?

21              MR. BECK:  There was no prosecution.  And,

22    obviously, it's not the FBI making those calls 90

23    percent of the time.  So I think, given the case law,

24    I think the Court can rely on what it hears from the

25    special agents.  And to be frank with the Court, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152 of 585

```
 1   don't know exactly what that testimony will be.
 2            THE COURT:  What did you think about my
 3   reading -- and I don't think we've discussed it in
 4   the two years we've had the case -- what is your
 5   impression of my reading of the file, particularly
 6   the portions that dealt with the motion to disqualify
 7   Judge Gonzales?  Are you in agreement, or are you
 8   saying, no, that's not the theory we want to defend?
 9            MR. BECK:  I think it's spot on.  Yeah.  I
10   think that, very honestly, the federal government,
11   the FBI --
12            THE COURT:  If there hadn't have been a
13   Marcantel, we wouldn't be in court?
14            MR. BECK:  I think that's probably right.
15   I think that's what this case bears out.
16            And so Your Honor's take on this is exactly
17   right.  I want to see how the evidence plays out.
18   And if it comes to Thursday and Friday --
19            THE COURT:  Fight it out then.
20            MR. BECK:  Right.  And I do want to alert
21   the Court, as I'm sure the Court is well aware, but
22   just to keep this in mind as we go through, that to
23   meet their burden for preindictment delays, it's two
24   prongs.  The first is that there is actual prejudice
25   resulting from preindictment delay.  And that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    actual, not just speculative, and it's material

2    prejudice.  The second is that the delay was

3    purposefully designed to gain a tactical advantage.

4           So the United States' position is that once

5    we hear from the special agents, once we hear from

6    the other witnesses, we will see that there was not

7    actual prejudice, and we will definitely see that

8    there is not a hint of actual purposeful design in

9    any preindictment delay, to the extent that there was

10   preindictment delay.

11          So I think, given the precedent and given

12   the clear guidance on disfavor and AUSA's testimony

13   in court, I think that the Court should look at that

14   point and decide whether it's prudent to have the

15   AUSA's testimony.  Because even if they came in,

16   would it matter?  And I think it will be a "no" at

17   that point.

18          THE COURT:  Here's the problem -- and y'all

19   have probably known me long enough on this.  I'll

20   probably decide both prongs.  And so I've probably

21   got to create a record for both.  And the reality is

22   I'll probably tell you what I -- you know, probably

23   at the end of the day, I'm going to do what I'm

24   saying I'm doing today.  I'm not granting these

25   motions, at least for the present time.  And I may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154587

1    have to spend my judicial energies on things that are

2    necessary to get ready for trial, and maybe come back

3    to these at the appropriate time, either -- if I get

4    caught up on my work getting ready for trial, or

5    during trial, or maybe even after trial.  But I think

6    that while we're here, I probably am going to have to

7    build a record.  And so that may include -- I'm just

8    giving you a heads-up, I probably am going to let

9    them put them on the stand and protect your work

10   product for this trial.  I'm not going to let them

11   get into work product for this trial, but let them

12   talk to the people about who made the decisions at

13   the time, so that there is a solid record for me to

14   use when I get around to writing the opinion and

15   order.

16            MR. BECK:  I think that's the Court's

17   discretion.  I think I anticipated that's how the

18   Court was going to come down on this.  I just wanted

19   to alert the Court to this issue, that's why I wanted

20   to set the notice for today.  That's why the notice

21   asked to set the hearing for tomorrow, although we

22   have worked that out amongst each other by having the

23   argument today, and just alerting the Court to these

24   issues.  And I'll probably bring it up at the

25   appropriate time.  But I think we'll probably operate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155588

1    under the understanding that you're probably going to

2    require these gentlemen to take the stand.

3                THE COURT:  Okay.  And maybe it was in your

4    notice, who are the Assistant U.S. Attorneys?

5                MR. BECK:  It's Assistant U.S. Attorney

6    James Braun from Albuquerque, and it's former

7    Assistant U.S. Attorney Reeve Swainston.

8                THE COURT:  How is Reeve doing?  He's been

9    in very poor health, isn't he?

10               MR. BECK:  Yeah, he has.  And I think we

11   took this up this morning, although now it feels like

12   ages ago.  I think it sounds like the Court's given

13   leave for Mr. Swainston to appear telephonically to

14   the extent that he will be required to appear.

15               THE COURT:  Okay.  All right.  Anything

16   else on your request, Mr. Beck?

17               MR. BECK:  No, Your Honor.

18               THE COURT:  All right.  How about from the

19   defendant on this request?

20               MR. CASTLE:  Well, it doesn't sound like

21   they're requesting anything at this time.

22               THE COURT:  I guess, if I understand -- and

23   maybe y'all had some discussions -- they're asking:

24   Can they push these witnesses to a little later in

25   the hearing, maybe the last, so that we can protect

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6588

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156 6589

1    them a little bit as attorneys, rather than having

2    them first, and maybe we can see what we get out of

3    the other people?

4            MR. CASTLE:  That was our plan all along,

5    was to call them at the end, because that's kind of

6    the final assessment.

7            If I could share a couple of thoughts with

8    the Court?

9            THE COURT:  Sure.

10           MR. CASTLE:  And I appreciate the Court

11   giving us an outline of its thinking right now.

12           The issue is not just preindictment delay.

13   In fact, the case law on preindictment delay sets up

14   the hardest standard for -- of the standards the

15   Court is going to have to apply.  The easiest

16   standard is Roviaro.  In Roviaro, they said if you

17   had an informant that could provide exculpatory

18   information, the Government doesn't provide the

19   identity, the case gets dismiss.  There is no

20   requirement of purposeful or bad faith at all in

21   Roviaro.  And Trombetta and Youngblood are also in

22   play.  But I think in some ways they end up tracking

23   some of the requirements in the preindictment delay.

24   So I bring that up to the Court --

25           THE COURT:  Is your argument on this, on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6589

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157 6590

 1    Roviaro, is it that even if the Government doesn't

 2    know the identity of the witness, that standard still

 3    applies?

 4            MR. CASTLE:  Well, I don't have to go there

 5    because the FBI, the Government -- not necessarily

 6    the U.S. Attorney's Office -- the FBI -- the evidence

 7    is going to show the FBI was involved in this

 8    investigation within two weeks of the murders in

 9    2001.  They were interviewing witnesses, they had an

10    open file.  They contemplated going to the -- well,

11    they did go to the U.S. Attorney's Office and asked

12    for Grand Jury indictments on a couple of occasions.

13    They took possession of the file from the New Mexico

14    State Police.

15            THE COURT:  But if we are at this point, it

16    seems like Roviaro is going to say that if the

17    Government has the name of the witness, the identity,

18    and is not disclosing it, that's when you get into a

19    dismissal situation.  Are you saying it also applies

20    in this situation, where they might have known at

21    some point that that same standard is going to apply?

22            MR. CASTLE:  I believe it does.

23            THE COURT:  Do you have any case law that's

24    similar to our situation, where the Government is

25    saying that they don't know who these informants are,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6590

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158 6591

1   and we apply that standard?

2          MR. CASTLE:  Well, I don't think they're

3   saying they don't know.  They no longer remember.  So

4   there is a difference.  But Roviaro itself didn't

5   require it.  It says, "Where the disclosure of an

6   informant's identity or the contents of his

7   communication is relevant and helpful to the defense

8   of an accused, or is essential to a fair

9   determination of a cause, the privilege must give

10  way.  In these situations the trial court may require

11  disclosure.  And if the Government withholds the

12  information dismiss the action."

13         THE COURT:  Well, it sounds to me, though,

14  if I were to order the Government to produce it,

15  they're not going to resist that order.  They'll say,

16  Yeah, but they're going to say, We don't have

17  anything to disclose.  And then they're in a

18  situation where they're not withholding any

19  information.

20         MR. CASTLE:  Well, what our position is,

21  Your Honor, is the focus of Roviaro is due process.

22  And the focus is on whether a defendant is going to

23  have a fair trial.  The fairness of the trial in this

24  case is going to be impacted whether they negligently

25  lost it, forgot about it, or decided to delay

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6591

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

1   indictment for 15 or 17 years, and therefore, no

2   longer can produce it.  The problem rests with them.

3   What the problem that we have here, you know,

4   assuming we have some evidence that shows that there

5   is something lost that had value, but assuming that,

6   that loss sits at that side of the room, not the

7   defense side.

8           And so what would due process require?

9           THE COURT:  So you're not trying to tag the

10  United States with the problems of the State; you're

11  trying to tag them with the problems of the FBI's

12  involvement early on?

13          MR. CASTLE:  No, I think --

14          THE COURT:  You're also trying to get at

15  the United States?

16          MR. CASTLE:  Yes, because they were part of

17  the joint --

18          THE COURT:  The State of New Mexico?

19          MR. CASTLE:  Yes, they were on a joint task

20  force with the State of New Mexico investigating

21  these murders.  So they worked together as joint task

22  force.  They had meetings.  U.S. Attorneys would

23  appear at the meetings.

24          THE COURT:  Look at the record at the end

25  of the day, or four days, whenever it is, at the end

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6592

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6593

1    of the day is nobody can establish that the FBI ever

2    knew the names of these informants; that it was only

3    the State of New Mexico that knew them.  What then?

4            MR. CASTLE:  Then I think you have a

5    Trombetta situation.  It's recklessness.  And if we

6    can show that it was actually exculpatory, then the

7    standard isn't willful or bad faith, it's --

8            THE COURT:  What if you've got an FBI

9    sitting in on these task forces, and the FBI agent is

10   sitting there, and he's going, "I hate that I'm

11   sitting here because we're not going to bring this

12   case, we don't want this case," so they kind of

13   halfway out of the case because they don't want it?

14           MR. CASTLE:  I don't think that's what the

15   evidence is going to show, Judge.

16           THE COURT:  Okay.  What do you think it's

17   going to show?  Do you think the FBI was really

18   interested in looking at this case?

19           MR. CASTLE:  Yes.  And I think they went to

20   the U.S. Attorney's Office on numerous occasions to

21   get it indicted, and was considered for indictment.

22   I'm not sure that it wasn't subject of Grand Jury

23   proceedings in both 2008 and 2013, because it's

24   referenced.

25           THE COURT:  Federal?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6593

```
 1              MR. CASTLE:  Yes.  There is reference to
 2    that in the discovery in some places.
 3              So I think, as we unfold, what we're going
 4    to find out is that in 2001, Agent Pedersen was the
 5    agent that was assigned to this particular
 6    investigation.  They had an investigation that was
 7    kept open all the way until 2009, where at different
 8    times it got transferred to a different agent, like
 9    Sonya Chavez, et cetera.
10              The other thing that I want to kind of give
11    the Court some thought about is this:  In this
12    Court's attempt to create a fair trial for the
13    defendants, even if dismissal is not granted, there
14    might be other remedies the Court can fashion to make
15    sure that the case is done fairly.
16              For example, if the Court were to find an
17    informant gave a completely exculpatory statement for
18    one of the defendants, and the loss of that evidence
19    was on the Government's side with perhaps even pure
20    negligence, the Court, as a remedy, could say that
21    the defense doesn't have to present that witness.
22    You could present the statement.  I'm not saying
23    that's a satisfactory result.  We're asking for
24    dismissal.  But at some point in time, this Court
25    might be faced with the position where it might relax
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6594

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 162 of 595

1   certain rules of evidence to allow the admission of

2   that kind of evidence before the jury for the truth

3   of the matter asserted.  I think we can get it in not

4   for the truth of the matter asserted to show that

5   they didn't pursue a lead or something of that

6   nature.  But there are other remedies the Court can

7   do short of dismissal.  And like I say, I'm not

8   asking for those right now, but I think that is

9   something the Court needs to think about as it

10  listens to the evidence that we're going to be

11  presenting.

12          The other thing that is of interest is the

13  law on delayed indictment seems to -- at least for

14  one factor, fall on the side of whether something is

15  tactical or investigative.  If it's investigative

16  delay, then that's sanctioned.  If it's tactical,

17  that's not.  But then the case law doesn't really

18  tell us how to define what's investigative versus

19  tactical.

20          We believe -- I believe what the Court just

21  outlined about, Look, we don't want this case, we

22  don't want to put our resources on it, we've now

23  decided that we're going to do it in 2015 to send a

24  message to the SNM members, that's tactical to me.

25  That's not investigative.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            And so, now the Court --
 2            THE COURT:  Here's where I'm thinking the
 3   line is, and you're welcome to disagree with it.
 4   There is no investigative delay, because they just
 5   weren't investigating anymore.  It kept popping up
 6   occasionally, but they kept beating it down.  But
 7   when they got to -- when they finally decided they're
 8   going to bring something, then there were tactical
 9   decisions.  But I'm having a hard time seeing the
10   tactical decisions until the Marcantel -- until they
11   decided after Marcantel that they would bite on it
12   and take this case.  It seems up to that point it is
13   investigative delay.  They just don't want it, they
14   just don't want it.  At the minute that it's
15   Marcantel, that's when the tactical decisions begin.
16            MR. CASTLE:  Well, actually, all the
17   statements that are in the James table here, these in
18   regards to Counts 1 and 2, all of them are in the
19   possession of the United States Government as of
20   2008, every one of them.  And only one of them wasn't
21   in their possession after 2001.  So I don't think it
22   was an investigative delay at all, even during that
23   time period.  It was just a decision.  It was a
24   tactical decision that the United States Government
25   said:  We don't want to mess with this.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6597

```
 1              THE COURT:  Isn't a tactical decision just
 2    saying:  Let's delay this thing 12 years, 13 years,
 3    however many years, so that we put the defendants at
 4    a disadvantage, not we're just continually telling
 5    the State of New Mexico:  Go away, we don't want to
 6    bring these cases?
 7              MR. CASTLE:  No, where I think the line
 8    actually is, is that investigative delay is necessary
 9    delay, because it's necessary to build a case.  We
10    have to keep working on it until we get enough
11    evidence to indict.  Whereas, tactical is we're going
12    to wait until we want to do it, and the conditions
13    are sufficient for us to do it.  And it makes sense
14    that sanctions would not be imposed in a situation
15    where the delay was necessary.  Even if it caused
16    damage to a defendant, if it was necessary, then the
17    Constitution authorizes it.  But if it wasn't
18    necessary, then the burden essentially shifts.
19              The Government then in some fashion has to
20    make up for the loss of evidence that they caused
21    because they made a noninvestigatory decision to put
22    this off.
23              And so I would just note that throughout
24    these times, the evidence will show the Department of
25    Corrections was cooperating with the joint task force
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6597

```
 1   and these particular FBI agents.  So apparently it's
 2   a joint decision not to.  Both New Mexico and the
 3   federal government decided not to indict on these
 4   older charges.  And I'm only addressing 2001 and '02.
 5   I think the 2007 folks are going to say the same
 6   thing.
 7          But I just want the Court to give that some
 8   thought, especially on lesser sanctions, or lesser
 9   remedies.  You know, those might be things that the
10   Court can deal with in its power, as the rules of
11   evidence can be relaxed at times by the Court,
12   depending on the circumstances, at least the Court
13   can consider that.
14          THE COURT:  Can you give me an example?
15   I'm not sure I've had this situation before.  Can you
16   give me an example where I would relax the rules in
17   your favor?  What would be an example?
18          MR. CASTLE:  Your Honor, there is a network
19   of rules that kind of talk about this.  For example,
20   804, where there is an unavailable witness, if the
21   opposing party was responsible for the
22   unavailability, the Court then finds it's unavailable
23   and certain materials come in.  807, the residual
24   hearsay exception.  The Court could say, you know,
25   these statements are corroborated enough that we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 166

```
 1    should present them to the jury and the jury could
 2    decide their ultimate credibility.  So there is kind
 3    of a network of those kinds of rules that all go to
 4    the concept of fairness.  Or another concept is 106.
 5    Rule 106 says -- it's often called the Rule of
 6    Completeness, but it's actually broader than that.
 7    It says that when a party introduces a statement, the
 8    Court can require any other statement that ought to
 9    be in fairness considered.  Okay.  Once again, it's a
10    concept of allowing evidence in that otherwise
11    wouldn't come in as a basic tenet of fairness.
12              And so I think the rules of evidence, when
13    you look at them all together, they're not designed
14    to allow a party to profit because they lost
15    evidence.  They're designed to promote the
16    introduction of evidence.
17              And so I filed an 807 notice for the
18    Court's consideration.  But I think those network of
19    rules are ways to do it.  Another concept is the
20    evidentiary concept of opening the door.  If the
21    Government is going to get in evidence that says:
22    We're going to look at who conspired to commit this
23    murder, and have they opened the door to us bringing
24    in statements that -- from individuals who are no
25    longer present?  I'd like to say that we could bring
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6599

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 167 6600

```
 1   them in as co-conspirator exceptions, but I did do
 2   some research on that, Your Honor, and it's only for
 3   the Government.  However, when they open the door to
 4   a particular conspiracy, my argument would be that we
 5   don't then look at 801.  We look to the concepts of
 6   401, 403, and the other rules I've cited.
 7           So these are some considerations that I'd
 8   like the Court to think about.  It sounds like I
 9   might lose, and I'm just guessing I was going to lose
10   the motion to dismiss at some point anyway, because I
11   haven't won too many over my career.  But there are
12   sanctions, I think, are lesser than that, and these
13   are just some thoughts.
14           THE COURT:  All right.  I appreciate it.
15   Thank you, Mr. Castle.
16           MR. CASTLE:  Oh, Judge, one other thing.
17   Mr. Tierney was the third U.S. Attorney that was
18   listed, and I think they may have just overlooked
19   that.
20           THE COURT:  There was three subpoenas?
21           MR. BECK:  Our office does not have a
22   subpoena for Mr. Tierney.
23           THE COURT:  Okay.  All right.  We'll look
24   into that.  All right.  Let me let Mr. Benjamin, he
25   stood up.  Mr. Benjamin.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6600

1           MR. BENJAMIN:  And, Your Honor, this is one

2    of the reasons why we had joined that was, and the

3    Court had asked for a specific instance of how this

4    might have come into play, and want to dovetail into

5    Mr. Castle's argument.  One of the problems with the

6    way that this case has been -- and our position, as

7    Mr. Castle articulated, investigated is that, in

8    2001, Mr. Gallegos was working in the kitchen.  There

9    would have been logs normally for those type of

10   things, documents leaving the pod, going into the

11   kitchen, so forth, so forth.

12          What has been preserved has been positive

13   statements for the Government.  What has not been

14   preserved is documents is that we would rely on in

15   this case, for instance, to go -- logs going to and

16   from the kitchen, and those kind of things.  And

17   those would be useful against Leroy Torrez and

18   Leonard Lujan.

19          And so the preservation has been done on

20   the investigative side with the statements, but it

21   has not been done on the other side with the

22   exculpatory documents, or possibly exculpatory

23   documents.

24          And so that's in response to the Court's

25   request for a specific item.

SANTA FE OFFICE                                                            MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6601

```
 1              THE COURT:  All right.  I appreciate that.
 2    Thank you, Mr. Benjamin.
 3              Anybody else want to speak on this?
 4              All right.  Mr. Beck.
 5              MR. BECK:  I don't want to take a lot of
 6    time here, because I think this is going to be
 7    rehashed later on.  I will just point out a couple of
 8    things.  I think the Court's reading of Roviaro is
 9    correct.  I would be surprised to find out that there
10    are sort of an interplay between the rules for some
11    other sort of relief.  And I would caution how
12    much -- how useful --
13              THE COURT:  Well, isn't there a Supreme
14    Court case, though, that talks about -- I don't know
15    the name off the top of my head, but I thought I had
16    seen the Supreme Court talking about there may be
17    some situations where you can have, and should have
18    relaxed evidentiary rules?  I don't know if it's this
19    situation or not, but I have seen that.
20              MR. BECK:  Right.  I mean, I think that
21    does sound familiar in the hundreds of cases I've
22    read preparing for this.  But, again, I would caution
23    how much weight to give that to this case.  And this
24    is why I said at the beginning, I don't think we're
25    going to get to the AUSAs' testimony, because I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6602

```
 1   think there will be any evidence of actual prejudice.
 2           And, for instance, one of the sources
 3   attached to the motion is this -- attached to
 4   Mr. Garcia's motion is this FBI -- well, it would be
 5   a 302.  This is actually the sentinel working copy.
 6   But it's DeLeon Bates 605.  And so if you're talking
 7   about 804, the Government, you know, procuring the
 8   unavailability of the witness, or something like
 9   that, and that we should allow this piece of evidence
10   in under 804, or even 106, the problem with doing
11   that under 106 is that where we say here -- where
12   this source, whomever it may be -- says in that
13   second paragraph, "Manzanares is in debt to the SNM
14   because of the killing.  Manzanares required the hit
15   through Cheech.  Cheech and Angel Munoz are close
16   friends."
17           In the very next sentence it says, "Source
18   stated that Billy Garcia gave the order to hit
19   Castillo.  Manzanares and Garcia will be killed for
20   their involvement in the killing of Castillo."
21           So it's not exculpatory as to Mr. Garcia.
22   It says right there -- so if the intention of
23   bringing this into evidence for the truth of the
24   matter asserted in there is that it pointed to
25   Manzanares.  Well, the way the Government rebuts that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

```
 1    is that there is not only one person who says ordered
 2    the hit here, it also says Billy Garcia ordered the
 3    hit.  And so --
 4              MR. CASTLE:  Your Honor, I could make a
 5    quick -- we weren't going to offer that.
 6              MR. BECK:  I figured you probably weren't
 7    going to offer that.  But what I'm pointing out here
 8    is that these statements are not clearly exculpatory,
 9    as the defense would like to believe.  So there is
10    that danger.  And the cases talk about the prejudice
11    to both sides, balancing the prejudice.  And this
12    statement, losing this source is certainly more
13    prejudicial to the United States, equally
14    prejudicial.  I would argue more.
15              Mr. Castle referred to the James statements
16    as being in the Government's possession since 2001
17    and 2008.  That may be true, but the evidence was not
18    in the Government's possession at that time.  And
19    that's what the Court will see is that these
20    statements were out there, but the United States
21    couldn't just offer the police reports into
22    custody -- into evidence at a trial, because that
23    would be rank hearsay.
24              What the United States didn't have until
25    2015, and later in some cases, is the evidence, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   means through which we could put somebody up on the
 2   stand who would testify to these James statements.
 3   That's what the Government now has.  So where Mr.
 4   Castle was talking about we don't have preindictment
 5   delay to dismiss a case where the delay was necessary
 6   to the case.  Well, that's this case.  The delay was
 7   necessary because we didn't have the evidence until
 8   we had all these new sources who were coming through
 9   to testify as witnesses.
10            So that motion to dismiss precedent that
11   says it must be necessary to the investigation weighs
12   in favor of allowing us to present this case, and not
13   dismissing it.  Because the United States -- and to
14   that extent the State of New Mexico -- only got this
15   evidence that has certainly been on written paper in
16   2001, but the United States only got this evidence --
17   this evidence only existed in 2015 or later, once we
18   had the sources who would come testify.
19            And I'll leave it that, because, as I said,
20   I think we're going to be hearing a lot of this the
21   next couple of days.
22            THE COURT:  All right.  Thank you, Mr.
23   Beck.
24            Mr. Burke, do you have anything to add?
25            MR. BURKE:  Yes.  What Mr. Beck just said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6605

```
 1    is just not true.  All of the evidence for the 2001
 2    homicides existed prior to this investigation, Mr.
 3    Acee's, the March 2015 investigation, except for a
 4    statement or two from the new snitches.  So the key
 5    statements on the 2001 homicide long existed.  You
 6    just heard about Ruben Hernandez.  That's always been
 7    there.  Lujan from 2007.  So I just want to say
 8    that's not true.  I think you hit the nail on the
 9    head.  It just didn't get indicted until later.  And
10    it was all practical considerations.  It was not
11    because of, you know, what Mr. Beck is saying now.
12    And I don't know if we can ever get to the burdens
13    that we have --
14              THE COURT:  What he's saying is he didn't
15    have all the evidence.
16              MR. BURKE:  Yeah, they had the evidence.
17    It's just that they didn't do it.  And I think you
18    hit nail on the head.
19              THE COURT:  They didn't want to do it.
20              MR. BURKE:  Yeah, they didn't want to do
21    it, the money, working together.
22              THE COURT:  Well, the Government has
23    probably got to be consistent.  If they didn't have
24    the evidence, that's one thing.  But if they didn't
25    want to bring the investigation, which has been my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6606

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 174607

```
 1    sort of take on it, they didn't want to bring the
 2    prosecution; seems to me those are two different
 3    stories.
 4            MR. BURKE:  That's all -- I don't know if
 5    we can ever get there to have a motion that should be
 6    granted.  But that's really the situation.  The 2001
 7    homicides were just there.  And then this prosecution
 8    said:  Let's just throw them into this thing after
 9    the Marcantel allegations.
10            THE COURT:  Well, I don't want to get too
11    far down the pike on motions to dismiss.  But I guess
12    one of the things that is of interest to me was the
13    fact the State of New Mexico didn't prosecute these
14    things either.
15            MR. BURKE:  No.  I mean, you obviously did
16    look at the attachments.
17            THE COURT:  So you're looking at a
18    situation where just nobody is bringing these things.
19            MR. BURKE:  Correct.
20            THE COURT:  Which way does that cut?  It
21    would seem to me that cuts against the defendants,
22    because it's like nobody wants this case.
23            MR. BURKE:  And the reason we did that was
24    to bring up Mr. Castle's point about it was a
25    tactical decision.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                  THE COURT:  Okay.
 2                  MR. BURKE:  That's why we brought that up.
 3                  THE COURT:  Tactical rather than
 4   investigative?
 5                  MR. BURKE:  Exactly.  Thank you, Your
 6   Honor.
 7                  THE COURT:  Thank you, Mr. Burke.
 8                  All right.  Anything else, Mr. Beck?
 9                  MR. BECK:  Not at this time.
10                  THE COURT:  All right.  So we will -- I'm
11   not precluding the defendants from calling the AUSAs,
12   and I most likely will allow it.  But I'll probably
13   liberally protect the Government's work product in
14   this case.  And we will not hear from those attorneys
15   until the end of the evidence on the motions to
16   dismiss.  They'll be the final witnesses on that.
17                  All right.  Let's then go to what Ms. Wild
18   has tabbed 1, which is a motion to sever by Andrew
19   Gallegos, which has been joined in by Joe Gallegos,
20   Edward Troup, Shauna Gutierrez.
21                  As we were talking a little bit earlier
22   today, I'm not inclined to sever.  I've stared at
23   this chart for now a couple of years as to how to try
24   these things.  I'm not excited about trying eight
25   defendants.  I feel like I worked pretty hard to try
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    four, and trying eight doesn't excite me.  But I'm

2    having a hard time, even after we went through all

3    the conspiracies this morning, to figure out a better

4    way to proceed.  There is a lot of overlapping

5    defendants among these five indicted conspiracies,

6    and it's hard for me to come up with another way to

7    go.  So I guess I'm inclined to deny it.

8            I guess if the Government got up after

9    they've been through a trial, two-month trial with

10   four defendants, if they said they feel like it ought

11   to be severed, I'd probably take a hard look at that.

12   But we have lined these things up on a runway.  And

13   it's kind of difficult to figure out how to try

14   folks, given the way we've lined them up.  So I'm not

15   inclined to grant this motion.  But, Ms. Torraco, if

16   you wish to argue in support of it.

17           MS. TORRACO:  Thank you, Your Honor.  I

18   appreciate the fact that you're going to take a

19   second look at it and allow me to argue it.

20           THE COURT:  And I did read everything, so I

21   have read all your briefing on this issue.

22           MS. TORRACO:  Well, since Mr. Roberts

23   drafted and filed this back in October, and since

24   that time, now we have more discovery and more

25   information, which makes it, to us, more compelling

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6609

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176610

1   that the severance should be granted.

2          THE COURT:  We also got fewer defendants.

3          MS. TORRACO:  That's true.

4          THE COURT:  So it's a little better

5   situation than when it was filed.

6          MS. TORRACO:  If I may, Your Honor, the

7   case that -- there is a couple of cases that were

8   cited by Mr. Roberts in the brief.  The one that I

9   particularly like, because it's very close to on

10  point to the issues here, is the Gallo case, United

11  States v. Gallo.  That's the case of the Gambino

12  Crime Family in New York, and they were indicted on

13  racketeering charges.  And so a lot of those issues

14  of severance are outlined in that particular case.

15  And in that particular case, they talk about -- and

16  I've been referring to this kind of as a nice diagram

17  as I've been going through the case -- they talk

18  about this wheel, where they in the Gambino case have

19  identified kind of the head guy, and the head guy

20  being the center of and the focus of the entire case.

21  And then there are all these different conspiracies,

22  if I may, that are the spokes of this wheel.  So

23  there is, you know, these different conspiracies.

24  And of course, the racketeering is what ties it all

25  together, and that's the hub.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178

```
 1              The problem is that in this particular case

 2    against our client Andrew Gallegos, in a lot of ways

 3    Joe Gallegos is at the hub of Trial 2.  And Joe

 4    Gallegos is involved in several different

 5    conspiracies.

 6              So couple that with the statements that we

 7    received in the Document 1903.  So Joe Gallegos makes

 8    a lot of statements, or is purported to have made

 9    several statements that refer to or there are

10    statements made about Joe Gallegos that refer to the

11    SNM conspiracy and the racketeering charge.  The

12    problem is because there is one spoke, one very small

13    conspiracy between -- that's alleged between our

14    client, Andrew Gallegos, and Joe Gallegos, all of

15    those statements are going to be used against Andrew

16    Gallegos, even though they have nothing to do with

17    Counts 4 and 5, which are the Andrew Gallegos counts.

18              So, for example, there are statements, such

19    as number 13, has nothing to do with the Adrian Burns

20    murder.  And that's Counts 4 and 5.  But in that

21    statement it's alleged that Joe Gallegos ordered a

22    hit.  So that statement comes in against Joe

23    Gallegos -- may or may not come in -- but that

24    statement comes in against Joe Gallegos.  Well, guess

25    what?  They have established through a hearsay
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6611

```
 1   statement by a co-conspirator that has nothing to do
 2   with my client, that now my client is working with
 3   someone who has ordered a hit on another case.  In a
 4   trial, a sole trial against Andrew Gallegos, that
 5   information would never be admitted.
 6           And we can go through several more of the
 7   statements where, for example, on the Jose Gomez
 8   issue, and those assaults and that conspiracy, again,
 9   Joe Gallegos put a hit out on him.  That testimony
10   should not be admissible against Andrew Gallegos.
11   And I'm asking the Court to take a good look at the
12   fact that I don't think that Andrew Gallegos is going
13   to get a fair trial so long as he is tried with these
14   other cases.
15           Because it's not just the center and the
16   spokes.  What's happening is it's becoming a huge
17   weave, kind of a web, where statements that have
18   nothing do with the counts that are alleged on the
19   Adrian Burns murder, nothing to do with Andrew
20   Gallegos are going to be attributed to him because
21   he's associated as a co-conspirator with Joe
22   Gallegos.  Did that make sense?
23           THE COURT:  Oh, yeah, yeah.
24           MS. TORRACO:  And so that's the concern of
25   the defense.  The problem is, now in the Gambino
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6612

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 180 6613

```
1    racketeering case, the court ultimately had to sever
2    what they kind of considered the smaller players,
3    because what happens is:  When you throw out this
4    wide net, you pick up many of the small players.  The
5    Gallo case, which is the Gambino murders, outlined
6    several factors which I want to add to the brief that
7    was already done.  And one of them is the
8    disportionality of the evidence.  When there is only
9    a small portion of the evidence that goes to one of
10   the accused, it is not appropriate for them to be
11   tried in the larger picture.  And it's not just the
12   spillover effect or the inevitable prejudice, but we
13   can take, again, a look at some of these very
14   specific statements.  Not only is there a statement
15   that's going to come in -- let's just assume that
16   they're trying to get in -- that Joe Gallegos put a
17   hit on Gomez.  There is also statements that Joe
18   Gallegos is the jefe, that he ordered another hit,
19   that people are protecting him, that this message is
20   from Joe.  And the problem is the more and more that
21   that we get into statements, not necessarily by
22   Andrew Gallegos' alleged co-conspirator, but by the
23   other co-defendants in the case, not even relating to
24   the case, not even relating to the counts of Adrian
25   Burns.  They are still going to reflect negatively
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6613

1   on, and tie Andrew Gallegos closely to Joe Gallegos

2   and inferring guilt on the Adrian Burns trial.

3          And I don't know how this Court can always

4   enter limiting instructions without at some point

5   it's clear that Joe Gallegos is the boss.  And Andrew

6   Gallegos does hang out with his brother.  And at some

7   point, Your Honor, there is no fair trial left for

8   Mr. Andrew Gallegos.

9          THE COURT:  Well, let me give you my

10  impressions, just having finished the other, is that

11  pretrial we focused tremendously on these statements.

12  And we just stare at them and they just obsess us.

13  But the thing that I kept being worried about and the

14  reason I didn't sever more last year than this is

15  because I was fearful that the great bulk of the

16  evidence that was coming in was going to be going to

17  establishing enterprise, racketeering activity, and

18  those things, which go against all the defendants.

19  Having now sat through seven weeks of that testimony,

20  it seems to me to have played though the way.  But

21  the statements, they're important, I'm not

22  minimizing.  But they were not a great bulk of the

23  trial.  The great bulk of the trial was all this

24  enterprise activity, all this racketeering activity

25  and those sort of things, so that there is an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6614

1   overwhelming amount of information that's going to

2   come in as to Mr. Andrew Gallegos and all the

3   defendants to establish racketeering activity and

4   enterprise.

5           MS. TORRACO:   So this case is different

6   than the first trial, Your Honor.   And if I may, I

7   know the Court is familiar with the facts, but if I

8   can just back up a little bit.   This is a case where

9   our client is charged with a murder.   And what

10  happens is the fire department sees way out in the

11  bosque that there is smoke coming up, and there is

12  flames, and the fire department rushes out and sees

13  that, in addition to a car burning, there is also a

14  body burning.

15          Okay.   The evidence against our client, Mr.

16  Andrew Gallegos, there are allegations that there was

17  blood all over him, which the evidence shows that

18  there was not blood all over him.   There is

19  allegations that there was accelerant.   Our clients,

20  Mr. Andrew Gallegos and Joe Gallegos, were seen at a

21  gas station buying gas sometime earlier.   There is

22  absolutely no accelerant found on our client.   There

23  is no accelerant found on the decedent.   There was no

24  blood found on our client.   There was no blood found

25  at the house.   The blood that was found was not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6615

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 183

```
 1    consistent with Adrian Burns.  There is no motive in
 2    this case for our client to have killed Adrian Burns.
 3    The fact of the matter is there is plenty of evidence
 4    that Adrian Burns, in fact, was a drug dealer; that
 5    they had gotten drugs from Adrian Burns.  And there
 6    is no reason why anyone would want to kill their drug
 7    dealer.
 8            There is no footprints.  There is no tire
 9    prints at the scene.  Some of the blood that was
10    found is not consistent with human blood and it's
11    more consistent with the Matanza that the family had
12    just a few days prior.
13            So the evidence against Andrew Gallegos is
14    not strong.  However, there is a very large Bruton
15    issue that also supports severance, because according
16    to this chart in 1903, there are several statements
17    that are going to be attributed to Joe Gallegos
18    regarding Andrew Gallegos.  For example, statement
19    number 44.  It says that Joe Gallegos says that he
20    and Andrew asked Jason to clean up their carpet.
21            The statement that Mr. Benjamin just asked
22    in the earlier hearing, statement number 43, the
23    declarant is alleged to have been the Gallegos
24    brothers.  There is reason to believe that that
25    statement was actually made by Joe, that he knew the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6616

```
 1    police were looking for them.  There are more Joe
 2    Gallegos statements that -- we can't cross-examine
 3    Joe Gallegos as to his statements, but they're going
 4    to come in against Andrew Gallegos.  And if I can
 5    have just a minute, I'll pull some of those
 6    statements.
 7              THE COURT:  You may.
 8              MS. TORRACO:  So right now we have 43 and
 9    44 regarding Joe Gallegos.  There is statement number
10    41, which it's not clear who it's attributable to.
11    We believe that it's going to be attributed to Joe
12    Gallegos, statement number 41, that he and Andrew
13    just pulled a job.  They had to go clean up.  I mean,
14    there is a clear Bruton issue with that particular
15    statement.
16              Statement number 42, we also believe that
17    will be attributed to Joe Gallegos.  And again,
18    that's Joe Gallegos saying he and his brother.  It
19    says they were covered in blood.  The evidence in the
20    case is actually contrary.  There was a little bit of
21    blood found, but like I said, it was consistent with
22    animal blood, not human blood.  Advised that they
23    were cleaning the house.  Gallegos later went by.
24    Looks like the statement is that they were cleaning
25    the house.  That goes -- and that would be a Joe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6617

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6618

```
 1    Gallegos statement against he and Andrew.

 2             And then we have 43 and 44.  And statement

 3    number 46 which is attributable to Joe Gallegos.  Joe

 4    Gallegos found out the police were coming to search

 5    the house, and he gave several guns and other stolen

 6    goods to Jason to store elsewhere.  And the reason

 7    that's also against Andrew Gallegos is because they

 8    were living together.  Joe Gallegos and Andrew

 9    Gallegos at the time, it's represented that they were

10    roommates.  So we have a Bruton problem.

11             We also have admissions by Joe Gallegos in

12    other conspiracies, or not admissions, I'm sorry,

13    statements made about Joe Gallegos in other

14    conspiracies, which there is no evidence that Andrew

15    Gallegos is a member of the SNM.  But the more that

16    the Government hammers that Joe Gallegos was a member

17    of SNM; that Joe Gallegos is involved in all of these

18    alleged acts; that Joe Gallegos is guilty; that Joe

19    Gallegos admitted this.  What's happening is Andrew

20    Gallegos is going to get pulled into it just guilt by

21    association.

22             The threshold is really:  Can Andrew get a

23    fair trial?  And I don't know if he can, Your Honor,

24    with all of these statements.

25             Statement number 54, Brandy Rodriguez makes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6618

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6619

```
 1    a statement and it says, You better not testify

 2    against my jefe."  Is the jefe Joe Gallegos?  And so

 3    does that also infer that that's Andrew Gallegos'

 4    jefe?

 5           Does the Court -- I know you understand.  I

 6    don't mean it like that, but are you following my

 7    Bruton concerns?

 8           THE COURT:  I am.

 9           MS. TORRACO:  Should I keep talking?  I'm

10    just not used to you being quiet, I'm sorry.

11           THE COURT:  Well, I guess maybe I should

12    have done this earlier, but I need to probably find

13    out how the Government is going to propose to deal

14    with some of these Bruton issues.  Some we dealt

15    with -- my words, not probably the defendants'

16    words -- but the Government was fairly generous in

17    Brutonizing a lot of statements that for which I had

18    found there was no Bruton violation, to try to reduce

19    the number of limiting instructions.  So that even

20    though a number of limiting instructions were given,

21    they were given for evidence that didn't have

22    anything to do with the other defendants.  I mean, I

23    was giving limiting instructions that the evidence

24    didn't have anything to do with the other defendants.

25    It only had to do with the one defendant who was a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6619

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6620

```
1    declarant.  If we're going to have that sort of trial
2    where we not only do Bruton, which I'm required to
3    do, but we also go further and Brutonize statements
4    that are not admissible against other people -- so
5    there is not a constitutional problem, but there is
6    an admissibility problem -- and clean that up.  It
7    seems to me that you're going to have less to worry
8    about.
9              MS. TORRACO:  So can we hold this severance
10   in abeyance, address the issue of the admissibility
11   of some of these statements.  Because if some of
12   these statements are still coming in, then I think
13   our motion for severance is still ripe.  Because if
14   there are statements made by -- allegedly made by Joe
15   Gallegos incriminating his brother, Andrew Gallegos,
16   we have an admissibility problem.  If those
17   statements are going to come in, I don't see how a
18   limiting instruction can help that.
19             THE COURT:  Well, I can't limiting
20   instruction a Bruton problem.
21             MS. TORRACO:  Right.
22             THE COURT:  So I'm not attempting to do
23   that.  But if the Government sanitizes the statements
24   the way they did in the first trial, then there may
25   be a limiting instruction.  But it's hard to imagine
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6620

1  how anybody would use the evidence against other

2  defendants anyway.

3        MS. TORRACO:  Right.  I would suppose we

4  need to wait and see how they're going to sanitize

5  these statements.  The problem is, is that there is

6  really only two people really in this conspiracy, and

7  that is Andrew and Joe, on the Adrian Burns murder.

8  So I don't know how --

9        THE COURT:  I don't think that they're

10  going to probably want to sanitize those.  And I'm

11  not sure how you sanitize those, if those are going

12  to come in as co-conspirator statements, which is the

13  James hearing, they're just coming in.  But I don't

14  think a severance helps you there.

15        MS. TORRACO:  Are you talking about not the

16  Bruton statements, not the statements that Joe says,

17  my brother and I, we just did a job, we'll take

18  that --

19        THE COURT:  That's going to probably come

20  in.  I imagine what the Government is going to say is

21  that's going to come in under the co-conspirator

22  statement.

23        MS. TORRACO:  But there is still a

24  confrontation problem.

25        THE COURT:  Well, correct me if I'm wrong,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189 of 232

1    I think the Supreme Court has said:  If you satisfy

2    the co-conspirator exception, you satisfy the

3    Constitution.

4            MS. TORRACO:  And the right to confront and

5    cross-examine?

6            THE COURT:  Correct.

7            MS. TORRACO:  So the bigger threshold is,

8    is there a due process violation?  Does the client

9    get a fair trial?

10           THE COURT:  Well, I think the Supreme

11   Court, though, has said that if you satisfy -- that's

12   one reason that we're going to work real hard on this

13   James hearing, because it's very important.  But if

14   it comes in under co-conspirator, it satisfies, if I

15   remember the language of the Supreme Court, the

16   constitutional problems.  It doesn't say just

17   confrontation or Sixth Amendment or due process.  I

18   think it says constitutional problem.

19           MS. TORRACO:  So there was another case

20   that was cited in our brief, U.S. versus Lujan, which

21   came out of New Mexico.  And in that particular case

22   there was one defendant who was charged with two

23   murders, and two defendants who were charged with

24   only one of those.  And the Court found that they

25   cannot be tried together because the prejudicial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6622

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 190 6623

```
 1    effect of hearing of the other murders of their
 2    co-conspirator was far too prejudicial for the people
 3    who were only accused of being involved in one
 4    murder.
 5              THE COURT:  But that was not a VICAR case.
 6              MS. TORRACO:  No, it wasn't.
 7              THE COURT:  So that's the problem that you
 8    have here, is that certain evidence as a rather
 9    generous amount of information can come in as
10    relevant to the enterprise and to the racketeering
11    activity to establish it as to all the defendants.
12              And that's the problem that I see with
13    severance; continuing to slice and dice this further
14    is that we just sat through a huge amount of evidence
15    on the racketeering and enterprise side, and that
16    will have to be repeated in any trial that we do.  I
17    mean, the Government can try their cases differently,
18    depending upon the defendants in the case.  And I
19    expect that this case will look a little different.
20    But at least pretrial I'm not sure I can really tell
21    the Government how to prove racketeering, or how to
22    prove the enterprise, that they get to kind of be
23    cleared of that.
24              MS. TORRACO:  So I understand the Court's
25    concern.  And in the Gambino racketeering case --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6623

```
 1    well, actually, let me back up.  Most of the murders
 2    in Trial 2 took place in 2001.  That's all these
 3    motions to dismiss.  My client is charged and accused
 4    of participating in a murder that took place in 2012.
 5    So he's being tied in to past bad acts of all of the
 6    other co-defendants going back all the way to 2001.
 7    There is no evidence that he was an SNM Gang member
 8    back in 2001.  But 11 years later, there is another
 9    murder, and they're associating that as an SNM
10    murder.  I'm still at a loss for how they're going to
11    do that, but they're still tying that together.
12            THE COURT:  But isn't the Government going
13    to stand up and say:  Your Honor, one of the things
14    that we have to establish as far as enterprise is
15    continuity and continuing racketeering activities.
16    And it's a little difficult to tell them that they
17    are tasked with proving those beyond a reasonable
18    doubt:  Continuity, structure, racketeering activity,
19    and then say, Well, we get to pick the timeframe in
20    which they produce or select the evidence.
21            MS. TORRACO:  But Andrew Gallegos shouldn't
22    be punished for that.  They have a burden.  Andrew
23    Gallegos wasn't involved at all in 2001.  That's not
24    his fault that they have to prove something that may
25    not be provable as to Andrew Gallegos.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6624

```
 1                THE COURT:  I don't think that they have to
 2    say the racketeering activity -- that the enterprise
 3    didn't exist until Andrew Gallegos joined the SNM
 4    Gang.  I think they can establish that the enterprise
 5    existed before he did, and continues to exist up to
 6    the time of the indictment.  And so his joining the
 7    SNM, I don't think, really limits the Government's
 8    proof as to racketeering activity or enterprise.
 9                MS. TORRACO:  I hear what you're saying,
10    but the prejudice there is actually --
11                THE COURT:  If we were to try Andrew
12    Gallegos alone --
13                MS. TORRACO:  That's my hope.  I would like
14    that.
15                THE COURT:  -- they could still bring in
16    all that evidence.
17                MS. TORRACO:  They wouldn't be able to
18    bring in all those statements.  And here's --
19                THE COURT:  That's a different issue.
20                MS. TORRACO:  Right.
21                THE COURT:  But as far as going back in
22    time and proving racketeering activity and
23    enterprise, they could bring it all in.
24                MS. TORRACO:  Well, they can't bring it all
25    in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6625

```
 1            But this is my concern with him being tried
 2    with Joe Gallegos, and all the other defendants for
 3    that matter.  If Joe was doing things in 2001, with
 4    whatever co-defendant, and then Joe was doing
 5    something in 2001 with another co-defendant, and if
 6    Joe was doing something in 2001 with another
 7    co-defendant, now, everyone is going -- now the jury
 8    is going to be misled to think that because Joe was
 9    accused of all these other things, therefore, he must
10    have done this in 2012.
11            And if Andrew was with him -- see Andrew
12    was with him this time.  What's happening is, with
13    Joe Gallegos, it appears to me that there is a theory
14    that Joe Gallegos always has an accomplice.  There is
15    one alleged murder that Joe was involved in and he
16    has a buddy.  There is another alleged murder that
17    Joe Gallegos was involved in and he has another
18    buddy.  And there is another murder that Joe Gallegos
19    was accused in, and he has another buddy.
20            So the Government brings that out, and so
21    now, when they're accusing him of a murder of Adrian
22    Burns, and they're going to lump Andrew Gallegos, and
23    say, well, Andrew must have been with him, because
24    Andrew was seen with him at the gas station.  Andrew
25    lives with him and was there that night.  Andrew was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6626

```
 1    found with him later on in a hotel.  He was with

 2    Andrew.

 3            So, therefore, because Joe went out with

 4    Troup and because Joe went out with the other

 5    defendant, and on and on and on, therefore when Joe

 6    was found with Andrew, Andrew must be guilty, because

 7    Andrew was with Joe Gallegos, and Joe Gallegos has a

 8    pattern of always taking a buddy.  And that's

 9    supported by Document 1903, where there are many

10    statements made by Joe Gallegos to say that he was

11    the leader, and the other guy was the buddy.

12            Now he's found with Andrew Gallegos.  Joe

13    is a suspect in this murder.  Andrew must have been

14    involved.  I guess I'm stuck on the bigger principle

15    of:  Is my client really getting the due process that

16    he deserves, or is he going to be thrown together

17    with a guilt by association?

18            I know the Court has already heard all of

19    this.  I appreciate you listening to me, because I

20    know that -- you already told me that you pretty much

21    had your mind made up.  If the Court will hold this

22    in abeyance and not issue an order.  Let's go through

23    the James hearing -- there are several Bruton

24    statements -- and then reevaluate it again at the end

25    when the Court makes a ruling on the statements, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6627

```
 1    would be appreciated by Andrew Gallegos' counsel.

 2                THE COURT:  All right.

 3                MS. TORRACO:  Thank you.

 4                THE COURT:  Any other defendants -- I know

 5    several defendants joined Andrew Gallegos' motion.

 6    Does the hub of, the center of the spoke want to

 7    speak on this motion?

 8                MR. BENJAMIN:  The hub does not.

 9                THE COURT:  The hub is going to remain

10    silent.

11                How about the Government?  Ms. Armijo?  I

12    guess the first question was, the one I was

13    discussing with Ms. Torraco is, are we going to try

14    this case the same way we did the first one, with the

15    same sort of limiting instructions, Brutonizing

16    statements that don't necessarily fall under Bruton,

17    but we're going to use the same sort of rules for

18    that -- for this trial that we used in the first

19    case?

20                MS. ARMIJO:  I think that those are several

21    questions.  Are we going to try this case the same

22    way?  Yes, we'll have cooperators who will get on the

23    stand and who will say -- who will establish the

24    enterprise, the racketeering activities, and talk

25    about the SNM.  So to that extent, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6628

```
1              As far as Brutonizing, all the statements
2    that she listed, defense counsel listed, do not fall
3    under Bruton, because they were made to individuals,
4    and the Court has it correctly that they are
5    co-conspirator statements.
6              THE COURT:  What about statements that I
7    determine under the rules of evidence only can be
8    admitted against that person?  One of the things that
9    gave me comfort in the first trial was the
10   Government's offer that in those situations, while
11   they're not required to be Bruton, that they would go
12   ahead and Brutonize those statements.
13             MS. ARMIJO:  Well, that was a different
14   situation because, as you recall, we had a lot of
15   recordings.  And some of the recordings were very
16   damning against co-defendants, you know.  And so I
17   think we took that approach, given the nature of the
18   recordings.  In this case, a lot of the statements
19   that she was talking about were statements made
20   during the course of the murder, not during
21   recordings that were two years later, that were done.
22   And they were made -- they were nontestimonial; they
23   were made to people who were involved as far as
24   witnesses, or that they were spoken to afterwards
25   near the time of the murder.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6629

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6630

```
 1           So I guess to the extent that we're going

 2   to be dealing with the individual statements, we do

 3   need to deal with that later.  But I don't think, as

 4   to the statements that were mentioned, we at this

 5   point plan to sanitize them.

 6           THE COURT:  And I wouldn't expect you to

 7   sanitize, for example, co-conspirator statements.

 8   I'm not talking about that.

 9           MS. ARMIJO:  Right.

10           THE COURT:  I am talking about, if we have

11   statements -- for example, statements that are party

12   admission that would implicate more than one person,

13   more than one defendant, that those statements, that

14   we Brutonized those in the first case, and we would

15   Brutonized them here.  And we would say to the jury

16   that they could only use parties' statements against

17   the party that made them.

18           MS. ARMIJO:  I think we would have to see

19   what it is.  Like, again, the statements that she was

20   referring to, I believe we all feel they're

21   co-conspirator statements.  If there are other ones

22   that are identified, that we would -- certainly we

23   would relook at that.

24           THE COURT:  You don't or do think?

25           MS. ARMIJO:  I do think the ones that she
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6630

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6631

```
 1   identified are co-conspirator.  If there are others
 2   out there, and Mr. Castellano is handling the
 3   statements, or anything else that we come across,
 4   certainly, we would look if it falls under Bruton,
 5   and we would look it over.
 6           THE COURT:  I'm talking about a situation
 7   where it doesn't fall under Bruton.  I've got to do
 8   my job under Bruton.
 9           MS. ARMIJO:  I guess I'm just trying to
10   think of what statements it is.  We certainly would
11   be open to it.
12           THE COURT:  Well, but here's the problem.
13   I've got to make a decision on the severance now.  So
14   here is the reality:  And this is what -- let's go
15   back a little bit in history.  When I denied Mr.
16   Sanchez' motion, sitting back there where Mr. Burke
17   is, when we were doing these hearings earlier, his
18   renewed motion to sever, I was able to put
19   confidently into the opinion for the second time that
20   I had not been presented any evidence that was going
21   to be used by one defendant against -- one
22   defendant's statements that were going to be used
23   against another defendant.
24           Then, right before the Christmas holidays,
25   those last two days, we began to identify some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6631

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 199632

1    statements, as we did the James hearings.  We began

2    to identify statements that were going to be coming

3    in as parties' admission, but they can only be

4    admitted against that defendant.  And there was no

5    other hearsay exception that I could see.  That was

6    when I began to be concerned that, while I could

7    constitutionally give legal limiting instructions, I

8    was uncomfortable with the ability of the jury to

9    absorb the ones that I was going to have to make

10   there.  And so that was the reason I began to think

11   about two juries and more severance, or something

12   like that.

13           It seems to me now is the time for us to

14   think about:  Is this trial going to look exactly

15   like -- on these issues -- as it did in the first

16   trial, where I was comfortable with not granting

17   further severance and not doing multiple juries, or

18   is the Government presenting a different scenario?

19   Because then it's different than what I was looking

20   at in December when I could confidently say:  So far

21   nobody has identified any evidence that's going to be

22   used.

23           So I'm not sure just taking a look at it

24   down the road is going to do it for me.  I'm going to

25   have to have some commitment from the Government.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200

```
 1    And if I don't get it, then I think we need to take a
 2    harder look at these severance motions.
 3              MS. ARMIJO:  Well, I think there is a
 4    couple of things.  And one is I believe that the
 5    whole issue with the statements and everything else,
 6    I mean we -- I haven't seen a statement that was
 7    identified, at least as to this severance, that would
 8    come in; that would be different than the
 9    co-conspirator.  And so it's kind of hard --
10              THE COURT:  It seems to me that the
11    Government is giving up even less evidence in this
12    trial than it was willing to give up in the first
13    trial.
14              MS. ARMIJO:  Not necessarily.  I just can't
15    think of it.  Because this trial is a little bit
16    different, because we had recordings in there that
17    were quite damning.  So we were able to do it.  In
18    this case, we do not have the recordings, so I think
19    it's different.  And I think Mr. Beck has filed his
20    motion in limine to get the Court to look at the
21    statements a little bit differently, which it still
22    has to do.  So that's one thing that we would ask the
23    Court to do.
24              And I think that -- I mean, I'm sure that
25    we would probably, if confronted with that, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6633

 1   certainly would look at it.  But the Court did an

 2   excellent job as far as limiting instructions, too.

 3        And as you heard the Government talk about

 4   how they certainly got the point of the limiting

 5   instructions as they applied.  I think the Court can

 6   certainly give limiting instructions as well.  And I

 7   expect the Court to do so.

 8        THE COURT:  But I think that the limiting

 9   instructions were very clean to the jury, in the

10   sense that they quickly picked up that if one of the

11   defendants said something, they were going to be

12   either told or they knew:  Don't use it against

13   anybody else.  And I'm not getting that assurance

14   from the Government that it's going to play ball as

15   it did in the first trial, and so then I think I have

16   to sit down and look harder at the severance motions

17   because I now can't say what I said in December, and

18   in the earlier motion where I actually severed these

19   cases, that no evidence is going to be used against

20   one defendant that can't be used against another.

21        MS. ARMIJO:  And I guess, then, I just

22   think it's apples and oranges.  I think that the

23   recordings were different than statements we have

24   now.  And the reason why I just don't want to say

25   fully, say, Yes, we will do all that, is because it's

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                FAX (505) 843-9492
                                                      1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 6634

1    different.  The statements that were identified do

2    not fall under -- do not fall under Bruton, fall

3    under the co-conspirator, and I don't believe --

4    quite honestly, we don't have the recordings -- I

5    don't think that there is anything out there for the

6    Court to have to deal with that issue or for the

7    United States to deal with that issue.

8            THE COURT:  It seems like it's very little

9    for you to give up, then.

10           MS. ARMIJO:  May I just have a moment, Your

11   Honor?  Mr. Beck is dealing with the statements.

12           MR. BECK:  Your Honor, I think, ultimately,

13   it comes down to how you're going to rule on the

14   motion in limine.

15           THE COURT:  See, I guess I don't.  I mean,

16   if you've got an ability to get the evidence in

17   another way, it's just like state of mind.  I mean, I

18   allowed state of mind in the first trial.  But we

19   still did not allow statements that were coming in

20   under 801(a), we weren't allowing those to come in,

21   if that was it.

22           MR. BECK:  Right.  And so I think that's

23   true.  I mean, I think -- I think the Court came to

24   that conclusion because of the damning nature of the

25   recordings.  As Ms. Armijo said, we don't have those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6635

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6636

```
 1    in this case.  So I think the Court should take a
 2    different view; it's apples and oranges.  If the
 3    Court doesn't, and the Court would be inclined to
 4    grant severance if we don't Brutonize the evidence,
 5    then we do that.  I mean, if it's an admission by a
 6    party opponent --
 7            THE COURT:  The problem is -- I can't
 8    say -- I don't know all the evidence.  I can't say
 9    right at the time what I was able to stay twice in
10    opinions on motions to sever earlier, that I was
11    unaware of any evidence that could not be used
12    against everybody.
13            And, as I went through the James hearings,
14    and we began to really look at some of the evidence,
15    I couldn't say that anymore.  And so that was the
16    reason I began to say, Hey, I'm concerned.  I don't
17    know if the jury can absorb all these limiting
18    instructions.  I think it may get too confusing.  And
19    began to think that I had to do something else.
20            MR. BECK:  Right.  And so what I'm saying
21    is that I think, if the Court is inclined to relook
22    at severance -- again, there is no recordings that we
23    would Brutonize, it would just be statements by a
24    witness up on the stand.  So, if the Court doesn't --
25    I mean, if the Court finds that there are statements
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6636

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204

1    against penal interests that come in in this case,

2    those statements against penal interests would come

3    in against every defendant regardless whether it's

4    just Mr. Andrew Gallegos in trial, or if all of these

5    eight defendants in trial.  So those are just like

6    the co-conspirator exception statements.

7            Now, it's different as the party opponent

8    statements.  So when we don't have recordings, there

9    is nothing to Brutonize.  If somebody is going to get

10   on that stand and say --

11           THE COURT:  Why not just give it up?

12           MR. BECK:  That's what I'm saying.  I'm

13   saying we are giving it up.  I'm saying I disagree

14   with the Court.  But if push comes to shove, we're

15   giving that up and it's fine.  If someone can't sit

16   on that stand and say, you know, Mr. Joe Gallegos

17   told me "I did it with the candlestick in the library

18   and, oh, by the way, Mr. Andrew Gallegos gave me that

19   candlestick yesterday," I mean, if that statement is

20   only coming in against Mr. Joe Gallegos, then it's

21   not relevant, you know.  And certainly, you know --

22   don't hold me to this, but it seems to me, that if I

23   were sitting in the chair up there, in the robe, I

24   would say substantial prejudice, the danger of unfair

25   prejudice substantially outweighs the probative value

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6637

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205638

```
 1    of that statement for him.
 2              So I think, when push comes to shove, we're
 3    willing to give on those statements by party
 4    opponents, because we'd rather just leave that out
 5    than sever the trials.
 6              THE COURT:  Well, the co-conspirator
 7    statements can certainly be used against the
 8    co-conspirators.
 9              MR. BECK:  Right.
10              THE COURT:  But they can't be used against
11    anyone else in the -- that's not part of that
12    conspiracy.  So even though they may be part of the
13    SNM Gang, or they may be part of the enterprise, or
14    they just may be somebody in another conspiracy,
15    they're entitled to a limiting instruction on
16    co-conspirator evidence, but they can't be used
17    against anyone in the other conspiracies.
18              MR. BECK:  Right.
19              THE COURT:  Now, the thing we had in the
20    first trial that made that simpler is the Javier
21    Molina conspiracy was the big co-conspirator
22    statements, and so the bulk of those came in against
23    everybody.
24              MR. BECK:  Right.
25              THE COURT:  Whereas, the conspiracies that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6638

1    Mr. Baca had on the other three counts, and two that

2    went to the jury, were fairly limited.  And I think

3    we did give limiting instructions as to those

4    co-conspirator statements as to the other three

5    defendants.  I think the other three defendants were

6    fairly vigilant in asking for limiting instructions

7    on that.

8          Here, on the other hand, we're going to

9    have six conspiracies; five conspiracies that are

10   indicted.  Is it really possible to give limiting

11   instructions that are going to be able to be followed

12   given that some of these statements can't be used,

13   these conspiracies can't be used against other

14   people?

15          MR. BECK:  Sure.  I think it's just like

16   the Marcantel and Santistevan case.

17          THE COURT:  Those ended up -- I know

18   everybody thought that was going to be the dog

19   wagging the tail.  But it turned out to be the tail,

20   as far as evidentiary issues were concerned.

21          MR. BECK:  Right.  And I think it's the

22   same thing in this case.  I mean, when we have these

23   co-conspirators giving the statements about Burns, I

24   think a limiting instruction is appropriate to give

25   against everyone else.  And it's not going to make --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6639

1          THE COURT:  It just seems to me it's going

2   to multiply the number of limiting instructions that

3   are going to have to be given, much more than what we

4   had in Trial 1.

5          MR. BECK:  I don't think so.  I don't think

6   there is as many statements coming in in this case,

7   because we don't have those recordings.  Given the

8   number of conspiracies and separate conspiracies, it

9   may be close to that number.  But I don't think it

10  will be more, because with the recordings we had, you

11  know, instructions before and after each different

12  clip that was played.  And as the Court heard, I

13  mean, the jury got those instructions.  They'll get

14  them here.

15          When you hear evidence about, you know, the

16  Burns case, for example, and it only involves two

17  people out of eight, there is not really anything to

18  Brutonize or any prejudice, because it doesn't

19  involve the other six people in the room.

20          THE COURT:  All right.  Let's do this:

21  Let's take a recess for about 15 minutes.  Let me let

22  Ms. Bean rest her fingers, and I'll come back in and

23  hear you, Ms. Armijo.

24          One of the things I need to know by the end

25  of the day -- I'm going to have to shift from Trial 1

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6640

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6641

 1  to Trial 2, so -- I owe a bunch of work in Trial 1,

 2  but I've got to start focusing on you guys.  Would

 3  y'all sort of think -- the Government get together,

 4  the defendants get together.  If there is things that

 5  we've argued in the past that you want opinions on,

 6  rulings on, or something like that, or if there is

 7  something here you want an opinion, an order, more

 8  thought-out analysis sooner rather than later, tell

 9  me, so I know kind of what to work on.  I'd like to

10  start shifting to your case, rather than the other.

11  I got plenty of time to work on their case.  So let

12  me help y'all get ready for trial.

13          So think about that and as soon as we're --

14  maybe by the end of the day try to give that, so I

15  can walk out of here knowing exactly what you want to

16  work on.  All right.  15 minutes, we'll be back.

17          (The Court stood in recess.)

18          THE COURT:  All right.  Let's go on the

19  record.  Everybody look around, make sure every

20  defendant has an attorney.  Looks to me like they do.

21          All right.  So Ms. Armijo, Mr. Beck, do

22  y'all have anything further on the motion to sever

23  you want to say?

24          MS. ARMIJO:  Your Honor, not as to the

25  statements.  I will just address some of the other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6641

```
 1    issues.
 2             This case does involve four murders, but
 3    only two occurred in 2001; the other occurred in
 4    2007; and then, of course, the Burns in 2012.  Even
 5    the trial that we just had, which is the Javier
 6    Molina case that happened in 2014, we had testimony
 7    about the 2001 murders, and we had testimony about
 8    the 2007 murders.  So the Court is correct, in that
 9    we would be showing a continuum of racketeering
10    activity throughout it.
11             This case is different from the Larry Lujan
12    case, not only that it's not racketeering, but it's
13    not a death penalty case either.  Larry Lujan was
14    facing the death penalty.  And that was one of the
15    Court's primary concerns in that case as to the
16    co-defendant.
17             We do have, in this case, plenty as to
18    Andrew Gallegos.  As the Court knows --
19             THE COURT:  Let me ask, on Mr. Andrew
20    Gallegos, are y'all going to try to establish that he
21    is an SNM Gang member?
22             MS. ARMIJO:  That's exactly where I was
23    going.  As you know, with Daniel Sanchez, he was only
24    suspected, not validated.  And I believe that Andrew
25    Gallegos is only suspected in the State system.  But
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6642

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6643

210

```
1    we do have a witness that would say that Andrew was a
2    validated SNM Gang member when he went to federal
3    prison.
4              He was prosecuted federally, which is
5    important in a wiretap case that involved his
6    brother, Frank Gallegos, who the Court may recall
7    testimony; Frank Gallegos is an SNM member in the
8    federal system.  And so he was -- and one of his bad
9    acts, when we get to bad acts, is actually with his
10   brother as well.  So we will be saying that he is a
11   member.
12             I'm sorry, Your Honor, I was distracted
13   with noise behind me.  We will have testimony that he
14   was --
15             THE COURT:  So your theory is he's an SNM
16   Gang member?
17             MS. ARMIJO:  That is our theory.  And he is
18   suspected.  But, as you know, we only have to prove
19   associate.  But we will be saying he is an SNM Gang
20   member.  And we certainly have plenty of evidence
21   that he was a street gang member, which is a feeder
22   gang to the SNM.  So we have plenty of gang evidence
23   as to Mr. Andrew Gallegos.  And I believe that's it,
24   Your Honor.
25             THE COURT:  Okay.  Thank you, Ms. Armijo.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6643

1           Before I hear from Ms. Torraco or

2    Mr. Roberts, again, anybody else want to say anything

3    on this motion?  Mr. Castle?

4           MR. CASTLE:  Yes, Your Honor.  Regarding

5    this concept of Brutonizing, there is really three

6    kinds of statements, categories of statements, that I

7    think the Government is going to be seeking to admit.

8    One is co-conspirators, and we're going to be dealing

9    with that through the James.

10          The second is admissions by a party

11   opponent.  And I think the Court, in its previous

12   order, read that as what that party is admitting

13   about itself, not necessarily other people.

14          But there is the third category that is the

15   subject of the Government's motion in limine, which

16   is the statements against interests.  If they're not

17   going to agree to categorically Brutonize those

18   statements, there is numerous statements where people

19   say -- 10 years after the murders -- say that one of

20   these defendants admitted to involvement, and he

21   implicated somebody else.  And so if that's the case,

22   then, we're going to need to litigate it -- I mean,

23   statement by statement.  I know it's kind of almost

24   ironic -- it might shock the Court a little bit.  But

25   I think we had kind of a cowabunga moment, when I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6644

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212

212

1    looked at Mr. Beck's motion about that, and he said:

2    You have to deal with it one by one.  I think that is

3    what the alternative is going to be.  If we have to

4    do -- we have to go through it one by one, and we

5    have --

6              THE COURT:  Well, like I said, it's been

7    hard for me to focus today on a motion that just came

8    rolling in.  But what I think Mr. Beck is saying --

9    and everybody can tell me if it's not -- with Mr.

10   Perez I made some decisions that, because of him

11   being on this stand, we all witnessed it, which he

12   was saying:  I just said those things to try to

13   protect myself, that's not what I meant.  I did the

14   opposite, it was hard for me for say that was

15   irrational and provides context so that it satisfied

16   all the prongs of the statement against interest, and

17   so said that it couldn't be used against him.

18              What I understand Mr. Beck to be saying

19   here is, Judge, you gave it an individualized look

20   with Mr. Perez; you've got do the same thing here.

21   You can't just throw them all out.  And I think

22   that's fair.  I mean, I don't really know what the

23   statements are the Government is going to try to use.

24   But it seems to me that it worked for Mr. Perez for

25   me to make that call.  And I think it was a good

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6645

1    call.  It may work to your advantage, it may work for

2    the Government's.  I don't know.  I don't know the

3    statements well enough.  Is he saying more than that?

4              MR. CASTLE:  I was hoping he was going to

5    say more than that, Your Honor.  I mean, I think when

6    it comes to a statement against interests, it has to

7    be against that person's interests.

8              THE COURT:  Well, let's see if that's the

9    case.  Show me --

10             MR. CASTLE:  It's 804(3)(a), it says, "A

11   reasonable person in the declarant's position would

12   have made the statement."

13             THE COURT:  But I don't think -- and you're

14   welcome to educate me on this -- I don't think that's

15   going to be limited as to the declarant.

16             MR. CASTLE:  It says it is not only

17   contrary to the declarant's proprietary or

18   pecuniary --

19             THE COURT:  Well, but once it's established

20   that it's not -- once it's established that it was

21   against the declarant's position, there is nothing

22   that limits its use against every one of the

23   defendants.

24             MR. CASTLE:  I think where the Court is

25   going is the Smalls case.  But at the end of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6646

```
 1   Smalls case, they remanded it back to see if
 2   redaction was necessary, because portions of these
 3   statements weren't against that particular person's
 4   interests.
 5           But what we're going to have to do -- I'll
 6   let the Court know, because I anticipated that this
 7   is what the Government wanted to do -- we've
 8   subpoenaed these declarants in, and that's what we
 9   had to do with Mr. Perez' statements, and put them
10   through the crucible of examination, to determine all
11   the circumstances surrounding it.
12           You know, I think that, ultimately, if the
13   Court were to allow it, then we're still dealing with
14   the same issue the Court had, which is you're still
15   going to have to do limiting instructions.  I thought
16   that the Court's order said that it would allow it
17   in.
18           THE COURT:  We never had any evidence in
19   the first trial come in under 803 -- 804(b)(3), that
20   I can remember.
21           MR. CASTLE:  There was one statement
22   that -- at least it was in the Court's opinion, the
23   Court's opinion that it issued I think about a
24   week-and-a-half ago.  One of them was listed as
25   804(b)(3).  I don't know the circumstances, but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6647

1   that's what the Court ordered it was admissible

2   under.  It may have been only admissible against that

3   individual, so it might not have been a litigated

4   statement in any kind of degree.

5            THE COURT:  Probably if I said -- I don't

6   remember the statement -- if I said it was 804(b)(3),

7   it came in against everybody.

8            MR. CASTLE:  I think that would be

9   problematic, because of the fact that we don't get

10  to, once again, to cross-examine, et cetera.  I think

11  it has to be limited.  I think that was what the

12  Court was indicating previously that it would issue a

13  limiting instruction to say --

14           THE COURT:  Was it on one of the charts

15  that I said 804(b)(3)?

16           MR. CASTLE:  Yes, it was the chart.

17           THE COURT:  Did I say I'd give a limiting

18  instruction or not on that chart?

19           MR. CASTLE:  I don't believe the Court

20  indicated -- well, I can't remember, Your Honor, to

21  be honest with you.  It was the section where the

22  Court said that the parties hadn't litigated these

23  issues, but I'm making findings on these particular

24  statements.  So I guess they didn't litigate it.

25           THE COURT:  I'll just go back and look at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6648

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6649

1  them.  Sometimes the parties can correct me -- or

2  here it's going to be the Government -- I have

3  decided a lot more issues that ended up evidence

4  coming in.  So I can't even tell you now whether that

5  one came in.  It may have been -- or it may have been

6  the defendants accepting my ruling.  I don't know

7  which.  We'll just have to go back and look.

8         But I guess the answer to your question,

9  right at the moment, I'm going to have to be

10  convinced that if it comes in on an 804(b)(3), that

11  it doesn't come in against all the defendants.

12         MR. CASTLE:  Well, I think in this Court's

13  previous decisions -- and I'm trying to remember

14  which one -- it discussed the statement against

15  interest exception, and indicated that it wasn't just

16  all or nothing, you know, the statement -- the whole

17  statement doesn't come in necessarily.  It's that

18  portion which is against the declarant's interest.

19         THE COURT:  I think that would be true.

20         MR. CASTLE:  So using the example of Andrew

21  and Joe, I think that Mr. Beck gave, which was, you

22  know, Joe is saying, yeah, I committed this murder,

23  and then, oh, by the way, Andrew helped me, I don't

24  know how that part about, "Oh, Andrew helped me," is

25  against his interests.  In fact, it might be trying

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6649

```
 1    to share the blame with somebody else.  And there is

 2    case law that talks about that.  Or shifting the

 3    blame, or who knows what the basis of it is.

 4            So if the Court is considering it, then

 5    we're going to have to bring in -- luckily, we've

 6    writted these folks, and subpoenaed them.  But we're

 7    going to have to litigate those under that

 8    circumstance.

 9            If the Government is going to make a

10    decision, I would hope that we could find out in the

11    next day if they're going to --

12            THE COURT:  Well, it sounds like they're

13    not.  I think you and I have to assume that the

14    agreement that they made in the first trial they did

15    for the tactical reasons of getting the two juries

16    off the table, and they didn't think they were giving

17    up anything, because it ended up -- I mean, this is

18    the thing that gives me some confidence in what we

19    did in the first trial -- not some, but a lot -- is

20    that we guessed correctly that a lot of the limiting

21    instructions were for evidence that it was very

22    difficult to figure out how it could be used against

23    anybody else.

24            And I guess that's -- this is more a

25    question or a comment more for Ms. Torraco.  I guess
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6650

```
 1   I'm getting -- kind of convincing myself a little bit
 2   that that's the situation here, that we're not going
 3   to see a lot of evidence.
 4            For example, take the conspiracy that we
 5   have with Mr. Burns, which is the one that she's most
 6   concerned about.  I'm having a hard time figuring
 7   out -- she's entitled to a limiting instruction that
 8   you can't use the conspiracies against Mr. Castillo
 9   and Mr. Garza, or Mr. Gomez, you can't use those
10   against her client.  She's entitled to that.  But how
11   would they use them anyway?  I mean, they are so far
12   in time, and distant, I don't know how they would use
13   it.
14            MR. CASTLE:  And I understand.  I think --
15   I'm thinking more --
16            THE COURT:  So she's entitled to a limiting
17   instruction, but the evidence -- the evidence is
18   not -- it would be hard for anybody to use it anyway.
19            MR. CASTLE:  I'm thinking more in the
20   context of our counts, where in one count they say
21   there is 10 co-conspirators; another there is 11.
22   And in the context of not co-conspirator statements,
23   but statements against interests, you know, any one
24   of these people make some kind of a statement
25   implicating themselves, and then they decide to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    implicate someone else.  I think there is going to be
 2    a problem.  And we're going to have to do a limiting
 3    instruction.  I'm not sure why we'd do a limiting
 4    instruction when we could excise that out or redact
 5    it, and --
 6              THE COURT:  Well, I can't force the
 7    Government.  I do have -- I can take it into
 8    consideration in a motion to sever, but if they don't
 9    want to give it up, I can't really force them to give
10    up good evidence.
11              MR. CASTLE:  I actually think the Court
12    can.  Under Smalls, the last part of Smalls says they
13    have to be remanded to see whether there was
14    redaction necessary.
15              THE COURT:  But the Court has to make a
16    good determination, which I will, as to whether it
17    comes in under 804(b)(3).
18              MR. CASTLE:  I understand.
19              THE COURT:  If I make that decision, I'm
20    not sure I run into problems with Smalls; do you?
21    Because it doesn't look to me like the district court
22    did that going into the trial.  It didn't do it.
23    That's the reason it had to get sent back.  I agree
24    with you that it's got be a statement against
25    interests.  Not one sentence in a 302, and the whole
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6652

```
 1   302 -- I know 302s aren't coming in, but it doesn't
 2   open it up to everything the declarant said.  So I
 3   agree with you, I've got to scrutinize.  And I think
 4   I demonstrated that I was willing to do that in the
 5   first trial.  Because I did it on those recordings
 6   and everything else.
 7           One thing, looking at these charts, I don't
 8   see an 804(b)(3) statement in the chart.  There is an
 9   803(3) statement.  Now, I've been including state of
10   mind, we had that come up a handful of times.  But
11   I'm not seeing an 804(b)(3).  If you have one, just
12   tell me where it is, and I'll take a second look at
13   it.  But again, I just don't think anything came in
14   under 804(b)(3).  I do think some things came in
15   under 803(3), both orally -- I remember that -- and
16   then it also came up -- I think it was in the chart
17   once.  Same issue.  It's not a different issue, but
18   different exception.
19           Anything else, Mr. Castle?
20           MR. CASTLE:  Well, I think you're right.
21   It was an 804(b)(2).  I apologize.  That was a
22   statement.
23           THE COURT:  Yes, I did do an 804 -- I did
24   let a statement in under 804(b)(2).
25           MR. CASTLE:  Well, Your Honor, I think it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6654

```
 1    still an open question whether the statement against
 2    interests needs to be excised under the due process
 3    concerns.  And we've briefed that probably as much as
 4    it can be briefed.  And I think that's where the
 5    Court's concern was finally in Trial 1, when it
 6    thought about doing separate trials.
 7            THE COURT:  Well, I tell you it was just
 8    the reality that I thought I was going to have to
 9    give too many limiting instructions on testimony that
10    was going to come in under 801(d)(2)(A), the party
11    admissions, because of the number of tapes that we
12    were going to have.  And I guess, taking the
13    Government at its word, they're just not going to
14    have that many statements.
15            I think one of the reasons they're
16    reluctant to give up, and do it like the first trial,
17    is because they can't think of any statements they're
18    giving up, but they don't want to give them up.
19    Under the first trial, they knew what they were
20    giving up.  And they were willing to give it up,
21    because they knew they were going to get a limiting
22    instruction, they knew it couldn't be used against
23    anybody, so why not just Brutonize the very few
24    statements that were in there that mentioned somebody
25    else's name or something?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6654

```
 1              MR. CASTLE:  Your Honor, what

 2   essentially -- how the Government is interpreting the

 3   statements against interest exception is that it

 4   broadens the co-conspirator exception.  You no

 5   longer -- if a co-conspirator makes an admission

 6   outside the context of the conspiracy, now you get it

 7   in under this other rule.

 8              THE COURT:  Like you say, you've read it

 9   closer than I.  If they're doing that, I have no

10   opinion on that.  I'm a blank slate.

11              MR. CASTLE:  I think that rules, the

12   authors of the rules of evidence, when they came up

13   with the co-conspirator exception, limited it to

14   statements within the context of the conspiracy, was

15   explicitly saying statements that co-conspirators

16   made outside the context of the conspiracy should not

17   come in.  Otherwise, they wouldn't have that

18   limitation under 801.

19              And so, I think logically, when we look at

20   that, and look at the constraints of 804(b)(3), where

21   it says it has to be against the declarant's

22   interests, I think the answer might lie in combining

23   those two rules.

24              THE COURT:  Your argument has force.  I'll

25   have to take a look at it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223656

```
 1              MR. CASTLE:  Okay.
 2              THE COURT:  All right.  Anybody else want
 3    to comment on this before I hear Ms. Torraco?
 4              Ms. Torraco.
 5              MS. TORRACO:  Thank you, Your Honor.
 6              I'm just going to ask that the Court review
 7    the Gambino case, it's actually called Gallo, the
 8    Gallo case, before you make a final decision.
 9    Because I think that that case is rich with facts
10    that are really on point to this case.
11              I do want to bring to the attention of the
12    Court that the State did have jurisdiction over this
13    murder case, regarding Counts 4 and 5, and they did
14    choose to prosecute the case, and that was no billed,
15    as against Andrew and Joe Gallegos.  The --
16              THE COURT:  Was that the one that was no
17    billed, or was that the magistrate judge that
18    determined that -- it wasn't a Grand Jury, I thought
19    there was a magistrate judge or a district judge that
20    held a hearing and determined there was no probable
21    cause.
22              MS. TORRACO:  Right, that's correct.  For a
23    bindover.  And I apologize, but I use the term no
24    bill consistently with he chose not to bind it over.
25    But it was a magistrate judge that heard the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 224657

 1   evidence.  And then after that the DA's office closed

 2   the case.  The DA's office had the choice to then

 3   take it to the Grand Jury if they thought the

 4   magistrate was wrong, and made the improper decision.

 5          But I do appreciate the Government making a

 6   commitment to give us the statements.  The last thing

 7   I think any of us want is a mistrial or reversal on

 8   appeal, which, while this Court is trying to be very

 9   efficient in trying all of the defendants together,

10   the last thing that we want is a mistrial -- or I'm

11   sorry, a reversal on appeal, because there should

12   have been severance.

13          So I'm still asking for severance.  I'm

14   still asking for you to wait until we have litigated

15   some, if not all of the statements.  But I appreciate

16   the Government making a commitment.  And I'm asking

17   the Court to hold them to that.  We don't know all of

18   the statements that are going to come in.  And the

19   last thing that we want is a statement coming in that

20   can't come in, and that this Court can't give a

21   limiting instruction after it is already brought into

22   evidence.  And so part of this motion to sever comes

23   with it.  What's the evidence?

24          I also want to point out that the

25   Government said there is plenty of evidence against

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6657

1    my client, Mr. Andrew Gallegos, that he's a member of

2    SNM.  If that is the case, that supports the argument

3    for severance, because what I think I heard was the

4    Court was concerned that we're going to spend just as

5    much time on one defendant as we would if we try four

6    defendants or five defendants or eight defendants.

7              However, if --

8              THE COURT:  But like Ms. Armijo said, we

9    heard about your murders in the first case.

10             MS. TORRACO:  Say that again.  I'm sorry.

11             THE COURT:  We heard about your murders in

12    the first case.  So we're probably going to hear

13    about those other murders in this case.  I mean,

14    that's the problem with severance.  I and the

15    Government and the juries are going to hear the same

16    evidence in both cases.

17             MS. TORRACO:  Why is that a problem?

18             THE COURT:  Well, why sever then?  What

19    efficiencies do we get out of severing if everybody

20    is going to hear the same evidence twice?

21             MS. TORRACO:  Because the murders in this

22    case that are being litigated, and those are the

23    questions before the Court, are hearing all of

24    evidence as to Mr. Andrew Gallegos is a violation of

25    his due process rights.  I know it's been litigated

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   and the severances and the legal arguments have
 2   already been done, but this defendant is in a very
 3   different position than all of the other defendants.
 4   And the Court earlier, with Ms. Armijo, said
 5   something about, Well, I can give a limiting
 6   instruction as to these other murders, that they
 7   can't take those into consideration.  But what's
 8   going to happen is --
 9            THE COURT:  They can't use co-conspirator
10   statements in those other conspiracies.  I'd have to
11   think -- I probably will not give a limiting
12   instruction on other murders.  But it would be
13   co-conspirator statements cannot be used against
14   other defendants outside of the conspiracy.
15            MS. TORRACO:  Yes, Your Honor.  And I'm --
16            THE COURT:  But at the same time, I guess
17   the reason I think that's a minimal, or I can
18   minimize any problem is I don't know how anybody
19   views the evidence of a 2001 murder against somebody
20   being charged with a 2007 murder.
21            MS. TORRACO:  Because there is a common
22   co-defendant, and that's Joe Gallegos.  That's how
23   they're going to use it against Andrew Gallegos,
24   because there is a common co-defendant.  And that's
25   why I'm saying, if the Government is conceding that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6659

```
 1    they already have sufficient evidence that he's an
 2    SNM member, then there is no harm in trying him
 3    separately.  There is harm in trying him with Joe
 4    Gallegos, because Joe Gallegos is the common
 5    denominator amongst three of the four cases.
 6    Especially, when some of those statements are Bruton
 7    statements.  And I would direct the Court to
 8    statement number 46, which the declarant is Joe
 9    Gallegos.
10           And my bigger concern is that when we
11    started the day, the Government conceded that, well,
12    there is other statements, and we're also going to
13    use the statements from Trial 1.  And there is other
14    statements, and, you know, we're just now
15    interviewing people, and they might remember more
16    things.
17           And so the magnitude of the Bruton
18    statements we don't know right now.  And I don't know
19    how many bench conferences -- I was one of the few
20    people that didn't get to watch any of the last
21    trial -- but the number of bench conferences and the
22    confusion to the jury and the potential for mistrial
23    is great.
24           THE COURT:  All right.  Anything else, Ms.
25    Torraco?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6660

```
 1              MS. TORRACO:  No.  And I appreciate your
 2    listening to me.  Thank you, Your Honor.
 3              THE COURT:  All right.  Well, I'm going to
 4    orally deny the motion.  I won't pick this up and
 5    write an opinion on it or put an order in place.  If
 6    you want to pick it up and renew it, you can.  But I
 7    think I've plowed this ground a fair amount of times.
 8    And probably every time I come back to it, it seems
 9    to me it's the right thing to do.
10              So I'm going to deny the motion orally.
11    And because I've got some other things I'm going to
12    need to do, I won't pick it up and try to write an
13    opinion or order on it.  But we won't plan on
14    severing it at the present time.
15              The next motion we have up -- we're almost
16    at 5:30, and I need to let everybody go -- will be
17    Mr. Garcia's joint motion to sever defendants based
18    on practical grounds.  And so, unless somebody wants
19    to try to squeeze it in today, I suggest we take it
20    up tomorrow.
21              Does anybody have anything they'd like for
22    me to start moving to?  Either things that we argued
23    in the fall, getting ready for this trial, anything
24    that Christopher Garcia had that you're joining here?
25    Is there things that we're going to be arguing this
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6661

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229

```
 1    week, the 33 motions that we're arguing this week,
 2    that you'd like me to start focusing on?  What do you
 3    need sooner, and what do you need the most from me so
 4    I make sure I serve you the best?
 5              Mr. Castle?
 6              MR. CASTLE:  Your Honor, first of all,
 7    1743, we would rest on the record.  We have no other
 8    record.
 9              THE COURT:  Which is that?
10              MR. CASTLE:  That's the motion to sever on
11    practicality grounds.
12              THE COURT:  All right.  You don't have
13    anything further on that?  All right.
14              MR. CASTLE:  I think the defense would
15    prefer that we start up with the James motions
16    tomorrow, and that the Government make their
17    presentation.  And then the defense can decide to
18    cross or not to cross based on that.
19              THE COURT:  Looking forward to the trial is
20    what you need the most is what I did for the
21    defendants in the first case, is that chart, kind of
22    on the James?  Is that what's going to help you the
23    most?
24              MR. CASTLE:  Yes.  I think the
25    time-intensive matters that are left on this document
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    is going to be James, motion to dismiss, and the
 2    individual statements that people are going to raise
 3    for Your Honor's consideration.
 4              I think, based upon the majority of the
 5    motion to dismiss was Mr. Garcia's motion.  Mr. Troup
 6    joined.  I think, if we do that last, we get -- well,
 7    based on some of the Court's indications on the
 8    motion to dismiss, that seems like it might be better
 9    as the last motion that we focus on.  Get rid of the
10    vast majority of everything else.
11              THE COURT:  Okay.  So it sounds like the
12    thing I can work on the most that's going to help you
13    is start creating charts, and an opinion on the James
14    statements?
15              MR. CASTLE:  Yes.
16              THE COURT:  Does the Government have any
17    disagreement with that?
18              MS. ARMIJO:  No.
19              THE COURT:  Are all the other defendants
20    sort of in that boat, too?  That would be the most
21    helpful to you, if I kick out a James opinion?
22              MR. BENJAMIN:  James.  And then we're going
23    to work on the bill of particulars, Your Honor.  That
24    would be my order, yes.
25              THE COURT:  All right.  Let me ask the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231 6664

```
 1   marshals.  Is it 9:00 in the morning or is it 8:30?

 2            A MARSHAL:  We were able to have them up

 3   here by 8:30 this morning, Your Honor.  I believe we

 4   could do that again.  If you would just allow us a

 5   little leeway.

 6            THE COURT:  Sure.  Let's shoot for 8:30.

 7   Does that work?  So we'll see y'all at 8:30.  And

 8   we'll do the best we can to get everybody in here.  I

 9   appreciate the marshals' hard work.  I appreciate

10   y'all's hard work.

11            Y'all have a good evening.  See you at 8:30

12   in the morning.

13            (The Court stood in recess.)

14

15

16

17

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6664

1                       C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on March 20, 2018.

15

16

17

18        _____
          Jennifer Bean, FAPR, RMR-RDR-CCR
19        Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:  (505) 348-2283
22        Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
 
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

DNM 6665

1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                      Plaintiff,

5         vs.                NO:  CR-15-4268 JB

6    ANGEL DELEON, et al.,

7                      Defendants.

8

9         Transcript of Motions Hearing before The

10   Honorable James O. Browning, United States District

11   Judge, Las Cruces, Dona Ana County, New Mexico,

12   commencing on March 13, 2018.

13
     For the Plaintiff:  Ms. Maria Armijo, Mr. Randy
14   Castellano, Mr. Matthew Beck

15

16   For the Trial 2 Defendants:  Mr. Brock Benjamin;
     Ms.  Cori Harbour-Valdez; Mr. Patrick Burke; Mr. Jim
17   Castle; Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
     Shattuck; Mr. John Granberg; Mr. Edwardo Solis;
18   Mr. Billy Blackburn; Mr. Donovan Roberts; Ms. Lisa
     Torraco; Ms. Angela Arellanes.

19

20

21

22

23

24

25



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                          1-800-669-9492
                                                  e-mail: info@litsupport.com
                                                              DNM 6666

```
 1            THE COURT:  All right.  Let's go on the
 2    record.  I think everybody has got an attorney now.
 3    I appreciate you being here on time and ready to go.
 4    I appreciate your assistance.
 5            All right.  Mr. Castle indicated on his
 6    motion to sever that he was going to rest on the
 7    papers, but other people joined that, so I want to
 8    make sure all the defendants have had their day on
 9    the motion to sever.
10            And Mr. Granberg, you spoke to Ms. Bevel
11    this morning, and so if you want to speak on the
12    motion, you're free to do so.
13            MR. GRANBERG:  Thank you, Your Honor.
14            THE COURT:  Mr. Granberg.
15            MR. GRANBERG:  Your Honor, on behalf of
16    Christopher Chavez, we join Mr. Castle's motion for
17    severance, docket number 1743.  And we would just
18    reargue similar grounds that were argued yesterday by
19    Ms. Torraco.
20            We'd argue that prejudice would attach to
21    Mr. Chavez by being tried with seven other
22    co-defendants.  We would argue that the amount of
23    limiting instructions that counsel would have to make
24    during the course of the trial would be numerous,
25    considering the number of co-defendants being tried
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6667

1   with him; and furthermore, we'd argue that a

2   severance -- ideally, we would prefer Mr. Chavez be

3   tried by himself.  But practically speaking, we would

4   argue that a severance on Counts 1 and 2 from the

5   rest of the group would comprise two trial groups of

6   five and five.  So I know that the Court is

7   considering --

8           THE COURT:  That would require me to try

9   some people twice.

10          MR. GRANBERG:  Yes, Your Honor, it would

11  require just Gallegos and Edward Troup to be tried

12  twice, but I'm sure they don't mind.  But I

13  understand the Court is considering a move to

14  Albuquerque.  So if this severance for Mr. Chavez

15  plays any part in the decision-making process for

16  that move, we'd ask the Court to hold it in abeyance

17  until the Court makes a decision on Albuquerque or

18  Las Cruces.

19          THE COURT:  All right.  Thank you, Mr.

20  Granberg.

21          Any other defendants, whether you join it

22  or not, anybody else want to speak on this issue?

23          MR. BURKE:  Your Honor, we had joined, and

24  we agree with Mr. Castle.

25          THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6668

```
 1    Burke.
 2             All right.  Does the Government want to
 3    speak on this issue?  Mr. Beck.
 4             MR. BECK:  Your Honor, I'm fine to join Mr.
 5    Castle in submitting on our response.
 6             THE COURT:  All right.  Well, I certainly
 7    won't preclude anybody from renewing a motion to
 8    sever.  I think the attorneys for the defendants made
 9    motions to sever just about every day of the trial.
10    So you're welcome to renew it.
11             But at the present time, I'm fairly
12    comfortable with the breakdown that we've made.  I'm
13    concerned about the numbers that we have here and the
14    logistics of the trial and where it's going to be,
15    and how you put everybody together, some of the
16    things we talked about yesterday.
17             At least as to how we're going to try the
18    defendants together, I still am comfortable.  So I'll
19    deny the motion without prejudice to renewing it,
20    unless the circumstances change to a considerable
21    degree.  All right.
22             The next motion I guess that we have up is
23    the -- I guess the topic that we have is the one that
24    we started yesterday with the severance, the James
25    motion.  So tell me how y'all would like to proceed.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6669

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5670

```
 1              Let me start with you, Mr. Castellano, if
 2   you want to tell me how the Government plans to
 3   proceed.
 4              MR. CASTELLANO:  Yes, Your Honor.  It
 5   sounds like in spite of the table, defense counsel
 6   wants a James hearing, so we're going to put Agent
 7   Stemo on the stand and go through these one statement
 8   at time.  So if the Court has the table in front of
 9   the Court, we'll put her on the stand and take the
10   statements.
11              THE COURT:  All right.  Is that how the
12   defendants want to proceed?  Is that the way y'all
13   were hoping it would proceed?
14              MR. BENJAMIN:  That was my understanding
15   how the agreement was reached in November, Your
16   Honor.
17              THE COURT:  That's what you want to occur
18   now?
19              MR. BENJAMIN:  Yes, Your Honor.
20              THE COURT:  Everybody else in agreement?
21              All right.  Ms. Stemo, if you'll return to
22   the witness stand.  And I'll remind you that you're
23   still under oath.
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6670

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6671

```
 1                      NANCY STEMO,

 2          after having been previously duly sworn under

 3          oath, was questioned, and continued testifying

 4          as follows:

 5                      EXAMINATION

 6    BY MR. CASTELLANO:

 7          Q.   Good morning, Agent Stemo.

 8          A.   Good morning.

 9          Q.   Do you have the table in front of you

10    that's prepared with the James statements?

11          A.   I do.

12                THE COURT:  Can I ask the defendants, on

13    the document, I now have had a chance to read the

14    document that was filed yesterday, but this is Joe

15    Gallegos' response to the United States' notice of

16    proposed James statements.  Does this constitute a

17    document that reflects all the defendants' thinking,

18    or is this just your thinking?  Or what is the import

19    of this?  How far does it --

20                MR. BENJAMIN:  That's mine, Your Honor.

21    And I can't speak for everybody, but counting the

22    documents that were filed on Sunday, I believe most

23    teams filed one.  I know, for instance -- I know

24    Mr. Chavez filed one.  I know Andrew Gallegos filed

25    one.  I know Billy Garcia filed one, Your Honor, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I've got a hand from Edward Troup.  I don't remember
 2    seeing one, but I know that they filed one, as well,
 3    is what I'm being told, Your Honor.  So I believe
 4    just about everybody filed one.
 5            THE COURT:  Well, I hope I have
 6    everybody's.  I'll do an inventory here.  I've got
 7    everybody's.  Okay.  So I've got yours, Mr. Benjamin.
 8            MR. SHATTUCK:  Your Honor, on behalf of Mr.
 9    Patterson, we did not file one, but we joined in all
10    the others.
11            THE COURT:  All right.  I've got
12    Mr. Roberts' and Ms. Torraco's which has been joined
13    by Mr. Benjamin.  And all these were filed yesterday?
14    Because I'm looking at -- we had a lot of James
15    briefing back in October.  We're not talking about
16    anything like that; we're talking about responses
17    specifically to the Government's newest document;
18    right?
19            MS. HARBOUR-VALDEZ:  Your Honor, I believe
20    everyone's was filed on Sunday except for Edward
21    Troup.  Ours was filed yesterday.  It's document
22    1920.
23            MR. CASTLE:  Actually, Your Honor, ours was
24    filed on March 9.  We filed two.  One was 1908, which
25    was a generalized brief filed on behalf all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6672

1   defendants, remaining defendants; and then

2   Mr. Garcia's specific objections are in 1909.  So

3   that was filed on March 9, Friday.

4            MS. ARELLANES:  Angelina Arellanes, on

5   behalf of Shauna Gutierrez.  I filed mine on Sunday.

6   It's 1914 document number.

7            THE COURT:  Okay.  Well, I'm not sure that

8   I have everybody's.  So let me get a pad here and

9   write down the numbers, and then I'm going to have

10  Ms. Bevel or my law clerk print out the documents.  I

11  got Mr. Andrew Gallegos, then I got Mr. Joe Gallegos.

12  But the other people, other than those two, give me

13  the numbers.

14           MS. HARBOUR-VALDEZ:  Troup is 1920, Your

15  Honor.

16           MS. ARELLANES:  Shauna Gutierrez was filed

17  as 1914.

18           MR. GRANBERG:  Your Honor, Christopher

19  Chavez is 1916.

20           MR. CASTLE:  Mr. Garcia's is 1909 and 1910.

21  Mr. Billy Garcia.  I said 1908 earlier, Judge.  That

22  was wrong.

23           THE COURT:  So you filed two of them?

24           MR. CASTLE:  Right.  One is a general one

25  that's on behalf of all defendants.  We were just the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6673

1  filer.  That's 1910.  And then the specific one is

2  1909.

3           THE COURT:  Okay.  Anybody else got the two

4  Gallegoses?  All right.  So Mr. Hammond, Ms. Bevel,

5  if you'll print out 1920, 1914, 1916, 1909, and 1910.

6  Doesn't look like I have those.

7           THE CLERK:  Okay.

8           THE COURT:  All right.  Mr. Castellano.

9  The reason I was doing this, I was looking at Mr.

10 Benjamin's, and he didn't seem to object to the first

11 12.  He picked up with 13, and I didn't realize other

12 people had filed.

13           MR. CASTELLANO:  Right.  And given the

14 various objections, I plan on going through each of

15 the statements.  If defense counsel says they don't

16 have an issue with it, we'll move to the next one.

17 But we'll take them one at a time beginning with

18 Number 1.

19           THE COURT:  Okay.

20                  DIRECT EXAMINATION

21 BY MR. CASTELLANO:

22    Q.   Agent Stemo, looking at Statement Number 1

23 on the table, is that an accurate statement, that

24 Billy Garcia tasked Leonard Lujan with finding people

25 to murder Mr. Garza and Mr. Castillo?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6674

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10675

```
 1          A.   Yes, it is.

 2               MR. CASTLE:  Objection, Your Honor.  There

 3     is no foundation that this witness would know whether

 4     that's true or not.

 5               THE COURT:  Let's see what she knows.

 6     They've got to put a witness on here that explains --

 7     and if she can't do it, she'll let us know.  But I've

 8     got to let them make their presentation the way

 9     they're doing it.

10     BY MR. CASTELLANO:

11          Q.   Leonard Lujan is listed as the source of

12     that information.  Are you aware of Mr. Lujan making

13     that statement?

14          A.   Yes, I am.

15          Q.   Indicating that Mr. Garcia is the one who

16     ordered the murders?

17          A.   Yes.

18          Q.   And was there an indication by Mr. Lujan

19     that these murders were supposed to happen

20     simultaneously?

21          A.   Yes.

22          Q.   And in terms of the background,

23     approximately how long before the murders happened on

24     March 26, 2001, did Billy Garcia find himself in the

25     same facility with Mr. Lujan to have this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    conversation?

 2         A.   He was there approximately one to two weeks

 3    before the murders happened.

 4         Q.   And so according to Leonard Lujan, was this

 5    a personal interaction between the two?

 6         A.   Yes.

 7         Q.   Looking at Statement Number 2, was there

 8    also an indication by Mr. Lujan that Mr. Garcia told

 9    him that Mr. Castillo and Mr. Garza were to be taken

10    out by strangulation?

11         A.   Yes.

12         Q.   Looking at Statement Number 3, was there an

13    indication by Mr. Lujan that the murders were an

14    order by Billy Garcia?

15         A.   Yes.

16         Q.   Was there also an indication that anyone

17    who didn't follow that order would be killed?

18         A.   Yes, I believe Mr. Garcia instructed Mr.

19    Lujan to select backup hit teams in case the two

20    original hit teams didn't carry out their orders.

21         Q.   So in other words, in order to fulfill the

22    order that people would be killed for not following

23    through, there were supposed to be backup teams to

24    make sure that it happened?

25         A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6676

```
 1        Q.    Looking at Statement Number 4, there was an
 2    indication by Leonard Lujan that Billy Garcia was
 3    planning to kill everyone in the unit who had a green
 4    light, starting with Mr. Castillo and Mr. Garza?
 5        A.    Yes.
 6        Q.    Were these all statements given to Mr.
 7    Lujan by Mr. Garcia after he arrived at the facility?
 8        A.    Correct.
 9        Q.    Turning to Statement Number 5, there is an
10    indication on the table that the murders needed to be
11    done because the SNM Gang was losing status with
12    other gangs?
13        A.    Yes.
14        Q.    And along those lines with that statement,
15    was there an indication by Mr. Garcia that the SNM
16    needed to clean its own house?
17        A.    Yes, there was.
18        Q.    Is that the reason why the SNM was killing
19    its own gang members?
20        A.    Yes.
21        Q.    Statement Number 6, there is an indication
22    on the table, the sources being Mr. Lujan and
23    Mr. Eugene Martinez, that Leonard Lujan told them,
24    "I'm telling you right now where it's coming from and
25    everything," referring to Billy Garcia?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6677

1          A.   Yes.

2          Q.   There was an indication both by Mr. Lujan

3    and Mr. Martinez that he passed that order on to

4    Eugene Martinez?

5          A.   There was.

6          Q.   In Statement Number 7, there is a statement

7    attributed to Leonard Lujan that Billy Garcia ordered

8    the murder due to Castillo cooperating with law

9    enforcement?

10         A.   Yes.

11         Q.   And on each of these statements, are these

12   statements leading up to the murder on March 26 of

13   2001?

14         A.   Yes.

15         Q.   Is there also an indication that Billy

16   Garcia ordered the Garza murder because he'd been a

17   former Los Carnales member?

18         A.   Yes.

19         Q.   And in the context of this case, have you

20   heard the term "jumping fences"?

21         A.   I have.

22         Q.   Would this be consistent with that phrase?

23         A.   Yes.

24         Q.   In Statement Number 9, there is a statement

25   attributed to Billy Garcia to Leonard Lujan

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6678

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6679

1    indicating, quote, "What the fuck is going on?  I

2    sent word a long time ago to clean house."

3            Was there an indication by Mr. Lujan that

4    Mr. Garcia told him that?

5        A.   Yes.

6        Q.   What was the purpose of Mr. Garcia telling

7    Mr. Lujan that in the context of what Mr. Lujan said?

8            MR. CASTLE:  Objection, speculation.

9            THE COURT:  Well, I'll let y'all

10   cross-examine.  But let's see what the Government --

11   what their theory is.

12       A.   Mr. Garcia had sent word to Mr. Lujan via,

13   I believe it was, Ernest Guerrero that Mr. Lujan was

14   supposed to take the keys at Southern.  That did not

15   get back to Mr. Lujan.  Additionally, it was said

16   that the SNM was supposed to clean the house with the

17   previous message that also did not get to Mr. Lujan;

18   therefore, he didn't take any action.

19   BY MR. CASTELLANO:

20       Q.   And then once Mr. Garcia arrived at the

21   facility, did he then make sure that Mr. Lujan took

22   action?

23       A.   Yes.

24       Q.   Turning to statement 10, the source is

25   attributed to Mr. Leroy Lucero indicating that he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6679

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 15680

1   received word from Billy Garcia that several hits

2   were supposed to happen.  Garcia told him, meaning

3   Mr. Lucero, he didn't need help because Lucero was

4   getting out?

5          MR. BURKE:  Your Honor, I have -- it's

6   really not an objection, but it's a clarification.  I

7   think Leroy Lucero's lawyer filed a motion to quash,

8   and I think in that motion he said that he's not

9   testifying unless he gets immunity or something like

10  that.  And so I'm wondering if -- since I think the

11  purpose of all this is to clarify what we're really

12  going to have at trial, whether that testimonial

13  issue should be discussed now, whether Leroy Lucero

14  will be --

15         THE COURT:  Well, I don't think it should

16  be discussed now.  I think the Government ought to

17  put out statements, tell us as fully as it wants to

18  what evidence it has to support.  Then I think y'all

19  cross-examine.  But I don't think we're into Bruton

20  issues yet or that.

21         MR. BURKE:  All right.

22         THE COURT:  I think we're trying to figure

23  out what statements are going to come in through the

24  co-conspirator portion that makes these statements

25  nonhearsay.  If the Government is going to try to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6680

```
 1    squeeze it in through that, they're going to have to

 2    prove it.  This is their proof.

 3              MR. BURKE:  Thank you, Your Honor.

 4              MR. CASTELLANO:  I agree with the Court,

 5    Your Honor.  At this point the only question is

 6    whether or not these statements are admissible.

 7    Whether they come in at trial is a different story.

 8              THE COURT:  Well, even admissible under one

 9    section of 801.

10              MR. CASTELLANO:  Correct.

11              THE COURT:  It's even more limited than

12    just whether they're admissible.  They may be

13    inadmissible for some other reason.

14              MR. CASTELLANO:  Agreed, Your Honor.

15    BY MR. CASTELLANO:

16         Q.   Okay.  So related to this statement, was

17    there an indication that Leroy Lucero received word

18    from Billy Garcia that several hits were supposed to

19    happen, but that Mr. Lucero didn't need to help

20    because he was getting out?

21         A.   Correct.

22         Q.   Was there an indication by Mr. Lucero that

23    he confirmed this information with Angel Munoz?

24         A.   Yes.  They actually spoke over the phone.

25              MR. CASTELLANO:  Your Honor, I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6681

```
 1    remember if I added Angel Munoz to the co-conspirator

 2    yesterday.  If not, I would add his name to this

 3    list.

 4              MR. BLACKBURN:  You did.

 5              MR. CASTELLANO:  Okay.

 6    BY MR. CASTELLANO:

 7         Q.   Turning to statement 11 --

 8              THE COURT:  This is on Castillo?

 9              MR. CASTELLANO:  Yes.  These are the

10    Castillo and Garza murders.

11              THE COURT:  You had him as the first

12    nonindicted co-conspirator.

13              MR. CASTELLANO:  As Angel Munoz?

14              THE COURT:  Yes.

15              MR. CASTELLANO:  Okay.  Thank you.

16    BY MR. CASTELLANO:

17         Q.   Statement 11, there is an indication here

18    in the table that Leroy Lucero confirmed the message

19    that several hits were supposed to happen with Angel

20    Munoz.  Munoz said, "Something has to happen, carnal.

21    Billy is on his way."

22         A.   Yes.

23         Q.   And did you get that information from Leroy

24    Lucero?

25         A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6682

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6683

```
 1        Q.   And did he indicate that Angel Munoz
 2   confirmed this information with him?
 3        A.   He did.
 4        Q.   Do you recall how this information was
 5   confirmed?
 6        A.   It was over the telephone.
 7        Q.   What kind of call was it, as best as you
 8   recall?
 9        A.   I believe it was a three-way call.
10        Q.   Statement 12 refers to a statement where
11   Leonard Lujan met with Eugene Martinez and tasked him
12   with the murder of Garza by strangulation, and told
13   Martinez to pick people to help?
14        A.   Yes.
15        Q.   Did you have that information, the source,
16   as both Leonard Lujan and Eugene Martinez?
17        A.   Yes, I do.
18        Q.   Was there an indication that Martinez was
19   picked as one of the people because he was in the
20   same pod as Mr. Garza?
21        A.   Yes.
22        Q.   Statement 13 indicates that Leonard Lujan
23   met with Joe Gallegos, Angel DeLeon, and Criminal,
24   also known as Michael Jaramillo, and ordered Castillo
25   murdered by strangulation?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6683

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 19684

```
 1          A.   Yes.

 2          Q.   Was there an indication that Leonard Lujan

 3     said that he, in fact, did these things?

 4          A.   Yes.

 5               MR. BENJAMIN:  Your Honor, and for the

 6     Court's purposes, we filed written objections.  I

 7     don't have any new objections based upon the

 8     testimony that's been proffered for that statement.

 9     If the Court would consider that a running objection?

10               THE COURT:  It's going to consider what?

11               MR. BENJAMIN:  I'm just trying -- for the

12     Court's purposes, Your Honor, that Statement 13 is

13     the first statement that I filed a written objection

14     to.  So at this point in time I would not object, but

15     I would ask that the Court consider my objections.

16               THE COURT:  Y'all don't have to renew your

17     objections.  You're going to get to cross-examine

18     her, and then we're going to have argument.  So if

19     there's problems, you're going to get full

20     opportunity to tell me what's wrong with these

21     statements coming in to the co-conspirator.  I've got

22     to come up with a better word than "exception," but

23     co-conspirator prong.

24               MR. BENJAMIN:  Thank you, Your Honor.

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6684

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 20685

```
 1   BY MR. CASTELLANO:
 2        Q.   And Statement Number 13.  Was there an
 3   indication that Joe Gallegos, Angel DeLeon, and
 4   Michael Jaramillo were in the same pod as Mr.
 5   Castillo?
 6        A.   He actually picked them because he was
 7   standing in front of the pod and they were together
 8   and Mr. Lujan knew all three had green lights on
 9   them.
10        Q.   Statement Number 14 indicates that Billy
11   Garcia wanted knowledge of the plan kept to very few
12   individuals?
13        A.   Yes.
14        Q.   What do you remember about that statement?
15        A.   He didn't want a lot of people to know,
16   probably because the more people that know, the more
17   likely that law enforcement will find out.
18             MR. CASTLE:  Your Honor, can we have a
19   clarification?  Is "probably" part of a statement
20   that Lujan made or the agent made?
21             THE COURT:  Well, I'll let you go into that
22   on cross.  I don't think it's probably proper to
23   object at this point.  Let's let them put on their
24   case, and you can go into it on cross.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6685

```
 1   BY MR. CASTELLANO:
 2        Q.   Statement Number 15.  There is an
 3   indication that Billy Garcia congratulated Leonard
 4   Lujan by telling him Amor.  So did that happen on or
 5   about March 26, 2001?
 6        A.   It did.
 7        Q.   Is that a statement attributable by Billy
 8   Garcia made to Leonard Lujan?
 9        A.   Yes.
10        Q.   Statement Number 16.  There is an
11   indication that Frederico Munoz was part of a
12   committee that sanctioned a hit on Garza and
13   Castillo; Munoz wanted Garza killed for being Los
14   Carnales?
15        A.   Yes.
16        Q.   And has Frederico Munoz admitted this
17   information?
18        A.   Yes, he has.
19        Q.   And was there an indication that Frederico
20   Munoz also later confirmed what had happened after
21   the hits took place?
22        A.   Yes.
23        Q.   And was Mr. Munoz at a different
24   facility -- was he at PNM whenever he was on this
25   committee that ordered the hits?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6686

```
 1        A.   He was.

 2        Q.   Statement Number 17 refers to the Freddie

 3   Sanchez murder.  There is an indication here that

 4   Arturo Garcia placed a hit on Freddie Sanchez because

 5   he was suspected of cooperating with law enforcement?

 6        A.   Yes.

 7        Q.   And Eric Duran is listed as the source?

 8        A.   Yes.

 9        Q.   How does -- according to Eric Duran, how

10   did he know this information?

11        A.   Eric Duran was with Arturo Garcia when the

12   hit was put out.

13        Q.   Statement Number 18 indicates that Ben

14   Clark passed around paperwork on Sanchez's

15   cooperation with police, stating, "Everyone who needs

16   to see it has seen it.  Get rid of it."

17             So is there an indication that Ben Clark

18   said this?

19        A.   Yes.

20        Q.   And was the information provided by Ruben

21   Hernandez?

22        A.   It was.

23        Q.   And did this happen on or before June 17,

24   2007, the date of the murder?

25        A.   It did.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6687

1       Q.   Statement 19 refers to Arturo Garcia

2   writing to Frankie Gonzalez that Brian and Raymond

3   Rascon were to take care of the next murder for SNM?

4       A.   Yes.

5       Q.   And Mr. Alonso is listed as the source?

6       A.   Yes.

7       Q.   What was the indication that Mr. Alonso was

8   aware of this information?

9       A.   I believe Mr. Alonso saw the letter.

10       Q.   And what is your understanding of where

11   Mr. Garcia was when the letter was sent?

12       A.   PNM North unit.

13       Q.   Statement 20 refers to Ben Clark putting

14   Javier Alonso in charge of making sure that Freddie

15   Sanchez was killed and told the Rascon brothers to

16   complete the hit.  So is that a statement

17   attributable to Ben Clark?

18       A.   Yes.

19       Q.   And did Javier Alonso -- was he aware of

20   that statement?

21       A.   He was.

22       Q.   Statement 21 refers to word being sent from

23   the green pod that if Sanchez was not killed, others

24   in the blue pod would be killed?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6688

```
 1        Q.   So was there an indication that a message
 2   was sent from one pod to the other indicating that
 3   this hit should occur or others would be harmed?
 4        A.   Yes.
 5        Q.   And did Javier Alonso remember the person
 6   who actually sent the message under the door?
 7        A.   No, he couldn't remember that.
 8        Q.   Did he recall whether Ernest Guerrero was
 9   one of the people who sent the message to that
10   person?
11        A.   Yes.
12             MR. CASTELLANO:  Your Honor, I don't know
13   if I gave the Court Ernest Guerrero yesterday as part
14   of the Freddie Sanchez conspiracy.
15             THE COURT:  That name doesn't ring a bell
16   to me.
17             MR. CASTELLANO:  If not, I would add Ernest
18   Guerrero to that list.
19             THE COURT:  This would be the Freddie
20   Sanchez?
21             MR. CASTELLANO:  Yes, sir.
22             THE COURT:  And how do you spell -- Ernest
23   I can probably handle.  But what is the last name?
24             MR. CASTELLANO:  G-U-E-R-R-E-R-O.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6689

BY MR. CASTELLANO:

Q.   Agent Stemo, Statement 22 indicates that
Edward Troup was told to go help with the Sanchez
murder.  Who is the person who ordered that?

A.   Javier Alonso.

Q.   And did Javier Alonso admit that he told
Troup to go help with the murder?

A.   He did.

Q.   Statement 23 indicates that while Edward
Troup and Javier Alonso were finishing killing Mr.
Sanchez, that the Rascon brothers, Brian and Raymond,
came and asked if they could help.  So what was the
background of the Rascon brothers showing up at the
scene of the murder?

A.   The Rascon brothers were tasked to do the
hit originally.  But when Javier Alonso approached
them, Raymond Rascon said they didn't want to do it
because they were short to the door, meaning they
were going to get out of prison shortly.  Therefore,
Javier Alonso instructed Edward Troup and they both
went into Freddie Sanchez' cell and took care of
business.  When they were doing that, the Rascon
brothers came to offer their aid as a way to save
face with the gang.

Q.   And is Javier Alonso the source of that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6690

1    information?

2        A.   It is.

3        Q.   So on Statement 24, when the Rascon

4    brothers show up at the door, does Javier Alonso then

5    tell them to keep lookout after they asked if they

6    could help?

7        A.   Yeah.  I think he tells them to keep aguas,

8    which means keep lookout.

9        Q.   You said "keep aguas"?

10       A.   Yes.

11       Q.   In Statement 25, there is an indication by

12   Javier Alonso that Edward Troup had kissed him on the

13   cheek and told him he was proud of him.  Was this in

14   relation to the murder of Freddie Sanchez?

15       A.   Yes, I believe the kiss happened

16   afterwards.

17       Q.   And did this happen on or about June 17,

18   2007?

19       A.   Yes.

20       Q.   Following the murder, in Statement Number

21   26 was an indication that Edward Troup began telling

22   Ruben Hernandez that he was next?

23       A.   Yes.

24       Q.   And what was the indication about Ruben

25   Hernandez at or around the time -- at or around the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6691

1   time of the murder?

2        A.   I believe Mr. Hernandez did not cover the

3   cameras properly.

4        Q.   At that point, according to statements by

5   Javier Alonso and others, was Ruben Hernandez seen as

6   possibly scared and weak?

7        A.   Yes, he was actually on crutches at the

8   time.

9        Q.   Related to the statement, is there another

10  statement related to Edward Troup stating, in part,

11  that Ruben Hernandez failed to cover the camera

12  because he was scared?

13       A.   Yes.

14       Q.   Statement 27.  There is an indication that

15  Arturo Garcia sent word about Sanchez to Ben Clark?

16       A.   Yes.

17       Q.   And are Ben Clark and Eric Duran sources of

18  that information?

19       A.   They are.

20       Q.   And consistent with a statement earlier by

21  Mr. Duran, was there an indication that Mr. Duran was

22  with Arturo Garcia when the order went out?

23       A.   Yes.

24       Q.   In Statement 28 it says Ben Clark and

25  Arturo Garcia sent several letters about Sanchez to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6692

```
 1   each other.  Did Ben Clark indicate that he had
 2   exchanged letters with Arturo Garcia about Sanchez?
 3        A.   He had.
 4        Q.   Did he indicate how the messages were sent
 5   back and forth?
 6        A.   They were going through Mr. Arturo Garcia's
 7   wife.
 8        Q.   Statement 29 indicates that Mr. Alonso and
 9   Edward Troup were expected to oversee the murder, and
10   Troup told the Rascon brothers to hit Freddie
11   Sanchez?
12        A.   Yes.
13        Q.   Had Ben Clark and Javier Alonso both
14   indicated that this was the case?
15        A.   They both have.
16        Q.   Statement Number 30 indicates that Leonard
17   Lujan told Willie Amador and Jesse Ibarra to handle
18   that, and told Eugene Martinez that "I'm running this
19   prison now."  In this statement, is Eugene the source
20   of the information?
21        A.   Yes.
22        Q.   Did he indicate that Leonard Lujan told him
23   this?
24        A.   He did.
25        Q.   And at this time when that statement was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6693

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 29694

```
 1    made, was Eugene Martinez in the same pod as
 2    Mr. Garza?
 3         A.   He was.
 4         Q.   Statement Number 31 indicates that
 5    Christopher Chavez heard about the hit on Garza and
 6    volunteered to participate in the operation.  Did
 7    Mr. Eugene Martinez indicate that this was the case?
 8         A.   Yes.
 9         Q.   Did he also indicate why Mr. Chavez might
10    have a motive to join in on this murder?
11         A.   I believe there were two reasons.  One was
12    that Mr. Garza would withhold heroin papers from
13    Mr. Chavez.
14              And the second was back when Mr. Garza and
15    Mr. Chavez were housed at the old Albuquerque jail,
16    Mr. Garza actually stole Mr. Chavez's shoes while he
17    was asleep.  When Mr. Chavez woke up, he tried to get
18    his shoes back, and Mr. Garza basically told him,
19    "You're not getting your shoes back.  You need to
20    PC."
21         Q.   He said "PC"?
22         A.   Yes.
23         Q.   Statement 32 indicates that Willie Amador
24    told Eugene Martinez to be lookout during the Garza
25    murder, and stated "If something happens, you already
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6694

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 30695

```
 1   know."  And so in that situation, did Eugene Martinez

 2   indicate that Willie Amador told him to look out?

 3       A.   He did.

 4       Q.   And what did the further statement, "If

 5   something happens, you already know" mean to Eugene

 6   Martinez?

 7       A.   If something happens in that cell, they

 8   need assistance, Mr. Martinez had to help.

 9       Q.   And when you say "assistance," is that

10   related to the Garza murder?

11       A.   It is.

12       Q.   Statement Number 33 indicates that, "While

13   strangling Garza, someone in the room yelled 'close

14   the door.'"  Did Mr. Martinez indicate that he heard

15   that statement coming from the cell?

16       A.   He did.

17       Q.   Did he indicate that Allen Patterson and

18   Christopher Chavez were two people in that cell?

19       A.   They were.

20       Q.   Statement Number 34 indicates Leonard Lujan

21   approached Eugene Martinez and told him to talk to

22   Willie Amador about the murders?

23       A.   Yes.

24       Q.   And is this similar to I think what we had

25   in statement 30?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yes.

 2          Q.   In Statement 35 there is an indication that

 3   Eugene Martinez asked Billy Garcia, and Billy Garcia

 4   confirmed the order and said, "It's coming from me

 5   and make sure it happens."

 6               Is this an indication that Eugene Martinez

 7   had a direct conversation with Billy Garcia?

 8          A.   It is.

 9          Q.   Once again, was Eugene Martinez tasked with

10   overseeing and participating in the murder of

11   Mr. Garza?

12          A.   Yes.

13          Q.   Okay.  Statement 36 indicates that Joe

14   Gallegos later informed Leroy Lucero that "Lawrence

15   Torres saw and was concerned that Torres might

16   snitch."  Is this related to the Castillo murder?

17          A.   It is.

18          Q.   In terms of timing, did this one actually

19   happen on March 26, 2001, or was that later?

20          A.   It was later, about four or five years

21   later.

22          Q.   And so was there an indication by Joe

23   Gallegos that Lawrence Torres might snitch, having

24   seen something related to the murder?

25          A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6696

```
 1              MR. BENJAMIN:  Your Honor, I don't know --
 2    if I may, I don't know if it would be more
 3    appropriate on cross, but I didn't understand what
 4    "four or five years later" referred to.
 5              MR. CASTELLANO:  I'll clarify, Your Honor.
 6    I think statement 36 will actually be an admission
 7    and not a co-conspirator statement, looking at this
 8    more closely.  So the indication is that Joe Gallegos
 9    later informed Leroy Lucero, four or five years
10    following the murder, that he was concerned about
11    Lawrence Torres.  So I would agree this one is
12    probably not a co-conspirator statement, but
13    something more akin to an admission.
14              THE COURT:  Okay.  All right.
15    BY MR. CASTELLANO:
16         Q.   Statement Number 37 indicates that Edward
17    Troup told Lawrence Torres, "This has nothing to do
18    with you.  Don't come up here."  Can you put that
19    statement into context, Agent Stemo?
20         A.   On the morning of the murder, March 26,
21    2001, Lawrence Torres woke up.  As he walked out to
22    heat up water for his coffee, he saw Angel DeLeon and
23    Edward Troup, and it looked like to him that they
24    were disassembling a laundry bag.  He put his water
25    into the microwave, went back to his cell.  He heard
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6697

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 33698

1    a struggle, so he looked out to see what was

2    happening, and he saw Mr. Edward Troup sitting at a

3    table.  Mr. Torres tried go upstairs to see what was

4    happening, and that's when Mr. Troup made that

5    statement.

6         Q.   And this is a statement made by Edward

7    Troup to Lawrence Torres?

8         A.   Yes.

9         Q.   In statement 38, it indicates that Angel

10   DeLeon had a scratch on his finger and told a female

11   corrections officer that he cut himself.  Did Mr.

12   Torres hear Angel DeLeon say that?

13        A.   He did.

14        Q.   And what was the indication or the concern

15   about Angel DeLeon having a scratch on his finger?

16        A.   He wanted people to know that he had cut

17   himself so that they didn't tie that injury to the

18   murder of Mr. Castillo.

19        Q.   So was there an indication that Angel

20   DeLeon had participated in that murder?

21        A.   There was.

22        Q.   In Statement 39, there is an indication

23   that Kyle Dwyer traveled to the Southern New Mexico

24   Correctional Facility with paperwork on Sanchez.  Did

25   Mr. Clark indicate that Kyle Dwyer had brought

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6698

```
 1  paperwork to the facility?

 2      A.   He did.

 3      Q.   What was the purpose of bringing the

 4  paperwork?

 5      A.   It's confirmation that someone has

 6  cooperated with law enforcement.

 7      Q.   And at this point, are you aware of

 8  anything that Kyle Dwyer said in relation to

 9  delivering the paperwork?

10      A.   No.

11      Q.   Statement Number 40 indicates that the

12  paperwork came from the Crazy Town Roswell Gang.  Is

13  this the paperwork we just discussed in Statement

14  Number 39?

15      A.   Yes.

16      Q.   What was the purpose of the Crazy Town

17  Roswell Gang turning this paperwork over to the SNM?

18      A.   Mr. Sanchez was actually from Roswell.

19  These individuals would have been familiar with Mr.

20  Sanchez.

21      Q.   And was there any indication that Mr.

22  Sanchez had allegedly cooperated with law enforcement

23  in Roswell?

24      A.   Yes.

25      Q.   And was there also an indication that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6699

```
 1   Crazy Town Roswell Gang turned this over to the SNM
 2   so they could clean their own house?
 3        A.   Yes.
 4        Q.   In Statement 41 is an indication that Joe
 5   and Andrew Gallegos "just," quote, unquote, "pulled a
 6   job and had to go clean up," and that they were
 7   giving heroin and money to friends to help them out.
 8   And Joe Gallegos said, quote, unquote, "I just came
 9   up."  So the first part of that, there are probably a
10   couple of statements in there.  But there is an
11   indication that when the Gallegos brothers indicated
12   they'd just pulled a job, did they use the term
13   "movida"?
14        A.   Yes.
15        Q.   And when Leroy Vallejos or Michael Sutton
16   were there hearing those statements, what was the
17   understanding of Joe Gallegos' comment, "I just came
18   up"?
19        A.   That they had just acquired money and
20   drugs.
21        Q.   And did this happen on or about November
22   12, 2012, the time of the Adrian Burns murder?
23        A.   Yes.
24        Q.   In Statement Number 42 it indicates that
25   Joe and Andrew Gallegos were covered in blood and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    advised they were, quote, unquote "cleaning the
 2    house."  Did that also happen on or about November
 3    12, 2012?
 4         A.   Yes.
 5         Q.   The second part of Statement 42 indicates
 6    that "Joe Gallegos later went by Leroy Vallejos'
 7    house and tried to give Vallejos his and Andrew
 8    Gallegos' truck."
 9              What's the approximate timing of when Joe
10    Gallegos tried to give his truck to Mr. Vallejos?
11         A.   I believe it was two to three days later.
12         Q.   And by "later," you mean after the murder?
13         A.   Yes.
14         Q.   So is it your understanding that by trying
15    to get rid of the truck, that may have been involved
16    with the homicide or tied to it?
17         A.   Yes.
18         Q.   Exhibit 43 is one we touched on yesterday
19    regarding Charlene Baldizan agreeing to get rid of
20    the van that the Gallegos brothers knew the police
21    were looking for.  And did that happen approximately
22    November 20 of 2012?
23         A.   It did.
24         Q.   And according for Charlene Baldizan, did
25    she indicate that the brothers knew that the police
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 37

6702

```
 1   were looking for it?

 2        A.   Yes.

 3        Q.   And did she indicate which brother, or did

 4   she say "the brothers"?

 5        A.   I think she said "the brothers."

 6        Q.   And at some point was Charlene Baldizan

 7   arrested for harboring a fugitive?

 8        A.   Yes.

 9        Q.   As best as you remember, if you recall, was

10   Charlene Baldizan involved in any way in helping the

11   Gallegos brothers to get the hotel?

12        A.   She was there.

13        Q.   And when they were at the hotel, did that

14   mean they had left where they lived and were they

15   later found at a hotel away from their home?

16        A.   Yes.

17        Q.   Was there an indication that law

18   enforcement was looking for them at that time?

19        A.   There was.

20        Q.   In statement 44 it indicates that --

21             MR. CASTELLANO:  Your Honor, in Statement

22   44 I'm going to remove the words "and Andrew," so it

23   should just say, "Joe Gallegos asked Jason Van Veghel

24   to clean up the living room."

25             THE COURT:  Okay.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6702

```
 1    BY MR. CASTELLANO:
 2        Q.    So referring to Joe Gallegos and cleaning
 3    up the living room, did Jason Van Veghel indicate
 4    that Joe Gallegos asked him to do that and gave him
 5    some heroin for doing it?
 6        A.    Yes.
 7        Q.    And was there also an indication that Joe
 8    Gallegos asked Van Veghel to clean blood off of an
 9    air compressor?
10        A.    Yes.
11        Q.    And approximately when did this happen?
12        A.    The next morning.
13        Q.    And when you say "the next morning," is
14    that the morning following the Burns murder?
15        A.    Yes.
16        Q.    Statement 45 indicates that the next day at
17    Joe Gallegos' request Andrew Gallegos threw a set of
18    keys and a wristwatch into a field.  Did Jason Van
19    Veghel tell law enforcement this information?
20        A.    He did.
21        Q.    And how does he know this information?
22        A.    He was in the truck with him.
23        Q.    Okay.  So were they driving down the road
24    in a truck?
25        A.    They were.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6703

1    Q.   That's the point where Joe Gallegos asked

2  Andrew Gallegos to throw those things out of the

3  vehicle?

4    A.   Yes.

5    Q.   And how close in time did this happen to

6  the murder?

7    A.   It was one or two days after the murder.

8    Q.   In Statement 46 it indicates that "Joe

9  Gallegos found out police were coming to search the

10  house and he gave several guns and other stolen goods

11  to Jason Van Veghel to store elsewhere."  How close

12  in time did this allegedly happen to the Burns

13  murder?

14    A.   One or two days after.

15    Q.   And did Jason Van Veghel indicate that

16  this, in fact, happened?

17    A.   Yes.

18    Q.   In referring to firearms, was there an

19  indication that Adrian Burns, in addition to being

20  burned, was also shot?

21    A.   Yes.

22        THE COURT:  What is your theory on the

23  shooting?  I notice at some places it was a shotgun,

24  other places a .22.

25        MR. CASTELLANO:  I have to check the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6704

 1    records.  I think it's probably something more akin

 2    to a .22.

 3              THE COURT:  Okay.

 4    BY MR. CASTELLANO:

 5        Q.   Statement Number 47 indicates that Santos

 6    Gonzalez told Jose Gomez, "You remember me?"

 7              "Do you remember," that first part, is that

 8    an indication that Jose Gomez said Santos Gonzalez

 9    said those words to him at the time that he and

10    others assaulted Jose Gomez?

11        A.   Yes.

12        Q.   And was that on or about February 27, 2016,

13    the actual day of the assault?

14        A.   It was.

15        Q.   Now, the second part of Statement 47

16    indicates they then told Gomez that Joe Gallegos put

17    a hit out on him and they were there to kill him?

18        A.   Yes.

19        Q.   So when Jose Gomez said "they," who was he

20    referring to?

21        A.   Santos Gonzalez, Brandy Rodriguez, and Paul

22    Rivera.  I believe he also mentioned another female,

23    but he couldn't remember her name.

24        Q.   Statement Number 48 indicates that Shauna

25    Gutierrez said, quote, unquote, "They didn't finish

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6705

 1   him after Gomez ran away."  Who is the source of this

 2   information?

 3        A.   Brandy Rodriguez.

 4        Q.   Was this information that Shauna Gutierrez

 5   had following the assault on Jose Gomez?

 6        A.   Yes.

 7             MR. CASTELLANO:  And Your Honor, Statement

 8   48, I can tell the Court, Brandy Rodriguez is not

 9   cooperating with the Government at this time, but I

10   am submitting this statement for the Court's

11   consideration in case that changes.  So this is just

12   for admissibility purposes right now.

13             THE COURT:  Would you agree it's probably

14   not a co-conspirator statement?

15             MR. CASTELLANO:  I agree that statement is

16   probably not coming in, unless Brandy is the source

17   of that information or someone else heard that

18   statement.

19             THE COURT:  In other words, unless she's

20   here and on the stand?

21             MR. CASTELLANO:  I agree.  I'm trying to

22   give the Court as much information beforehand as

23   possible.

24             THE COURT:  Okay.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6706

```
 1   BY MR. CASTELLANO:

 2        Q.    Statement 49 indicates that Santos Gonzalez

 3   and Paul Rivera knocked at Charlene Parker-Johnson's

 4   door and then told her that she should leave the

 5   house.  Was Charlene Parker-Johnson the person who

 6   said that Santos Gonzalez and Paul Rivera said these

 7   things to her?

 8        A.    Yes.

 9        Q.    And was this on the date of the actual

10   assault of Jose Gomez?

11        A.    It was.

12        Q.    Statement 50 indicates that Santos Gonzalez

13   and Paul Rivera yelled, "He's running," and, "He's

14   running away," when Jose Gomez started to run.  Did

15   Charlene Parker-Johnson also hear these words by

16   Santos Gonzalez and Paul Rivera?

17        A.    Yes.

18        Q.    What was the context of Jose Gomez running

19   away?  Was this after he'd been knocked unconscious

20   with a machete and another object?

21        A.    Yes.  After the assault, the assailants

22   actually exited the house.  They thought he was dead.

23   And Mr. Gomez came to and was able to get away.

24        Q.    And is that the context in which these

25   statements were made, "He's getting away," or "He's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6707

```
 1    running"?

 2         A.   Yes.

 3         Q.   Statement 51 indicates that Joe Gallegos

 4    placed a hit on Gomez because Joe Gallegos feared

 5    Gomez would testify against him on a state murder

 6    charge.  Is Paul Rivera the source of that

 7    information?

 8         A.   He is.

 9         Q.   And are Shauna Gutierrez and Brandy

10    Rodriguez the ones who told Paul Rivera this?

11         A.   Yes.

12         Q.   Now, I'm looking at Count 13 of the

13    indictment, which is assault with a dangerous weapon

14    upon Jose Gomez occurring on or about March 17, 2015.

15    Was this the incident in which Jose Gomez was

16    supposed to be a witness against Joe Gallegos where

17    he cut his hand?

18         A.   I don't think that was in 2017.

19         Q.   March 17, 2015?  Beforehand?

20         A.   Yes.

21         Q.   At one point was that charged in state

22    court?

23         A.   I believe so.

24         Q.   And was Jose Gomez supposed to be a witness

25    against Joe Gallegos in that case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6708

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 46709

```
 1            A.   Yes.

 2            Q.   Statement 52 indicates, "Upon learning

 3    where Gomez was staying, Shauna Gutierrez and Brandy

 4    Rodriguez agreed they needed to go after Gomez."

 5                 Did Paul Rivera and Brandy Rodriguez both

 6    indicate that this was the case?

 7            A.   Yes.

 8            Q.   Statement 53 indicates that Paul Rivera

 9    agreed to help with the hit on Gomez.  And so was

10    that by his own admission?

11            A.   It was.

12            Q.   Statement 54 is attributed to Brandy

13    Rodriguez saying, "You better not testify against my

14    jefe, or I'll kill you."  Did Paul Rivera hear that

15    statement during the assault?

16            A.   He did.

17            Q.   And did Brandy Rodriguez say that?

18            A.   Yes.

19            Q.   Was there any indication that Brandy

20    Rodriguez referred to or considered Joe Gallegos her

21    boss?

22            A.   Yes.

23            Q.   How do you know that?

24            A.   I believe I've seen letters where she

25    addresses him as such, or jefito.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6709

```
 1         Q.   And Statement 55 indicates that Santos
 2   Gonzalez also stated he was going to kill Gomez.  Did
 3   Paul Rivera hear that during -- at or about the time
 4   of the Jose Gomez assault?
 5         A.   Yes.
 6         Q.   Statement 56 indicates that Brandy
 7   Rodriguez, Paul Rivera, and Santos Gonzalez told
 8   Shauna Gutierrez they had completed their mission,
 9   and did that refer to the assault on Jose Gomez?
10         A.   It did.
11         Q.   And was that immediately following the
12   assault?
13         A.   Yes.
14         Q.   Was there also an indication that Shauna
15   Gutierrez laughed and said she was happy to hear
16   Gomez was likely dead?
17         A.   Yes.
18         Q.   And is Paul Rivera the source of that
19   information?
20         A.   Yes.
21         Q.   Statement 57 indicates that Shauna
22   Gutierrez told Santos Gonzalez to move the truck they
23   had used to another location and leave it for a few
24   days.  Did Paul Rivera hear Shauna Gutierrez say
25   those words?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6710

```
 1          A.   He did.
 2          Q.   And was that the truck that was allegedly
 3     involved with them driving over to assault Jose
 4     Gomez?
 5          A.   It was.
 6          Q.   So by moving the truck, would that help
 7     them avoid detection by law enforcement?
 8          A.   Yes.
 9          Q.   Okay.  Statement 58 I'm going to break down
10     into two parts, starting with the second part.  Was
11     there an indication that Shauna Gutierrez told Paul
12     Rivera, Santos Gonzalez, and Brandy Rodriguez to go
13     get him, referring to Jose Gomez?
14          A.   Yes.
15          Q.   So is that a statement before the assault?
16          A.   It is.
17          Q.   And then after the assault, was there an
18     indication that Shauna Gutierrez said, "How come you
19     guys didn't do the job more fully?"
20          A.   There was.
21          Q.   Was that, once again, when they reported
22     back to Shauna Gutierrez following the Jose Gomez
23     assault?
24          A.   Yes.
25          Q.   Statement 59 has the words "Don't testify"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6711

1    in quotes.  Was that an indication that Paul Rivera
2    told Jose Gomez not to testify?
3         A.   Yes, during the assault.
4         Q.   Is that by Paul Rivera's own admission?
5         A.   Yes.
6         Q.   Statement 60 indicates that Brandy
7    Rodriguez and Shauna Gutierrez had people in place
8    for an attack on Gomez.  The date on there is
9    indicated as March 29, 2017.  Do you know why that
10   date is listed?
11        A.   That's the date Mario Chavez spoke with
12   FBI.
13        Q.   What was Mario Chavez' relationship with
14   Brandy Rodriguez, Shauna Gutierrez, and Joe Gallegos?
15        A.   He stated that he was an intermediary
16   between the three.  He would pass letters between Joe
17   Gallegos, who was in county jail at the time, and
18   Brandy Rodriguez and Shauna Gutierrez.
19        Q.   And from Mario Chavez' statement at this
20   point, do you know if he learned about this
21   information before or after the Jose Gomez assault?
22        A.   I don't know.
23        Q.   Statement 61 indicates Joe Gallegos ordered
24   the hit on Gomez, and Shauna Gutierrez planned the
25   hit.  Is that also attributed to Mario Chavez?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6712

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 48

```
 1        A.   It is.

 2        Q.   And in the table I had the declarant as

 3   Shauna Gutierrez.  Should that actually be Brandy

 4   Rodriguez, the declarant of that information?

 5        A.   Yes.

 6        MR. CASTELLANO:  Your Honor, on Statement

 7   Number 61, the declarant should be Brandy Rodriguez

 8   and not Shauna Gutierrez.

 9        THE COURT:  All right.

10   BY MR. CASTELLANO:

11        Q.   And when Mario Chavez told you that Joe

12   Gallegos ordered the hit on Gomez and that Shauna

13   Gutierrez planned the hit, do you know if he learned

14   that information before or after the Gomez assault?

15        A.   I don't know.

16        Q.   On Statement Number 62 --

17        MR. BENJAMIN:  Your Honor.

18        THE COURT:  Yes.

19        MR. BENJAMIN:  May I ask the Government to

20   clarify they're not limiting that statement the same

21   way that they did the last one if Brandy Rodriguez

22   doesn't testify?

23        MR. CASTELLANO:  Well, all these statements

24   are dependent on the source of the information

25   testifying, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6713

```
 1                 THE COURT:  Okay.

 2                 MR. CASTELLANO:  What we're asking for is

 3      initial rules on admissibility.

 4                 One thing I will say about Statement Number

 5      61 is, if Mario Chavez learned of this information

 6      before or at or about the time of the assault, it

 7      would be a co-conspirator statement.  If it was made

 8      following, it's an admission by Brandy Rodriguez; it

 9      would then be considered a statement against

10      interests or an admission by Brandy Rodriguez.  And

11      at this point we do not know the timing where Mario

12      Chavez learned that information in either Statement

13      60 or Statement 61.

14                 THE COURT:  Now, Rodriguez -- his name is

15      Randy?

16                 MR. CASTELLANO:  Brandy Rodriguez.  And

17      Brandy Rodriguez was one of the people who

18      participated in the assault against Jose Gomez.

19                 THE COURT:  Okay.

20                 MR. CASTELLANO:  But the same applies, I

21      would say, with Statements 60 and 61.  If we have

22      further information that that happened, the

23      information there was learned before the assault,

24      they would be co-conspirator statements.  And if they

25      were learned after the assault, they would either be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6714

```
 1    admissions and/or statements against interests.
 2    BY MR. CASTELLANO:
 3         Q.   Turning to Statement Number 62, Agent
 4    Stemo, there is an indication that paperwork on
 5    Sanchez, meaning Freddie Sanchez, was delivered from
 6    Arturo Garcia to Ben Clark approving the murder.  And
 7    we have three sources of information.  So was there
 8    an indication that Samuel Gonzales, John Montano, and
 9    Javier Rubio provided information to this effect?
10         A.   Yes.
11         Q.   Was there also indication from the reports
12    that Joe Martinez, also known as Cheech, helped to
13    deliver the paperwork?
14         A.   There was.
15         Q.   Okay.  Statement Number 63 lists Cheeky and
16    Coquito being tasked with the murder of Sanchez, but
17    did not want to carry it out.  So once again, for
18    clarification, is Cheeky Raymond Rascon?
19         A.   Yes.
20         Q.   And is Coquito Brian Rascon?
21         A.   Yes.
22         Q.   And is that information that they told to
23    Samuel Gonzalez?
24         A.   Yes.
25         Q.   Statement 64 indicates that Javier Alonso
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6715

 1   asked how to get rid of the marks on his hands from

 2   strangling Freddie Sanchez.  Did Samuel Gonzales hear

 3   Javier Alonso make that remark?

 4        A.   He did.

 5        Q.   Statement 65 refers to two things.  The

 6   first is a statement by Ben Clark that John Montano

 7   heard on or about the time of the Freddie Sanchez

 8   murder, and the quote is, "That'd be messed up if the

 9   paperwork on the guy I just got showed up."

10        So was that an indication of a reference to

11   Freddie Sanchez?

12        A.   Yes.

13        Q.   And the second part of that Statement 65

14   indicates that Ben Clark also sent Arturo Garcia a

15   list of names of people in the pod.  Was that also

16   referred to as a roll call?

17        A.   Yes.

18        Q.   What was your understanding, if you know,

19   of the purpose of the names that Arturo Garcia

20   requested from Benjamin Clark?

21        A.   So that he would know who was present at

22   the pod and who would be next, or who hasn't put in

23   work.

24        Q.   And Statement 66 indicates that Edward

25   Troup and Javier Alonso attempted to hide in John

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6716

 1   Montano's cell after lockdown following the Sanchez

 2   murder.

 3            MR. BURKE:  Your Honor, objection.  It's

 4   not a statement.

 5            MR. CASTELLANO:  I would agree with that,

 6   Your Honor.  And what we don't know at this point is

 7   what Edward Troup and Javier Alonso may have said to

 8   John Montano, or what the interaction was.  So I give

 9   that to the Court for the Court's information, and if

10   we provide more information on that, we'll supplement

11   the record, Your Honor.

12            THE COURT:  So it's kind of a placeholder

13   that you think there were some statements made there?

14            MR. CASTELLANO:  Yes, sir.  At this point I

15   agree it is an act, but nothing else.  But we will

16   supplement with words if we find them.

17   BY MR. CASTELLANO:

18       Q.   Statement Number 67 indicates that Jimmie

19   Gordon was asked to get information on Garza from

20   Geraldine Martinez.  And is this Garza in terms of

21   the Rolando Garza murder?

22       A.   It is.

23       Q.   And who was Geraldine Martinez?

24       A.   She was a librarian.

25       Q.   Was she a librarian at the prison facility?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6717

```
 1        A.   She was.
 2        Q.   Was Jimmie Gordon aware of any information
 3   about Garza and a potential hit on him?
 4        A.   He was.  He mentioned being in, like, a
 5   committee where they were discussing who was green
 6   lit.
 7        Q.   And then at some point right before the
 8   Garza murder, was it then that Geraldine Martinez
 9   asked him to get information about Garza?
10        A.   Yes.
11        Q.   Okay.  Statement Number 68 indicates Billy
12   Garcia put a hit on Archuleta, referring to Gerald
13   Archuleta, which is communicated to him through Baby
14   Zack over a disagreement about Castillo's murder.
15   And is this actually information we learned from
16   testimony and statements by Gerald Archuleta?
17        A.   I know about the statements.  I wasn't here
18   for the testimony.
19        Q.   What about the statements?  Was it an
20   indication that Baby Zack approached Gerald Archuleta
21   to kill him at Billy Garcia's request?
22        A.   Yes.
23             MR. CASTELLANO:  And, Your Honor, for -- I
24   didn't have a name yesterday.  I believe Baby Zack is
25   identified as Reynaldo Garcia.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6718

```
 1                THE COURT:  Let's see where I had him on my
 2    chart.
 3                MR. CASTELLANO:  He would be a separate
 4    conspiracy that was identified yesterday.
 5                THE COURT:  Oh, okay.  For Archuleta.
 6                MR. CASTELLANO:  Yes.
 7                THE COURT:  All right.  The name again?
 8                MR. CASTELLANO:  Reynaldo, R-E-Y-N-A-L-D-O.
 9    Last name, Garcia.
10    BY MR. CASTELLANO:
11        Q.   Okay.  Ms. Stemo, turning to Statement
12    Number 69, there is an indication that Brandy
13    Rodriguez kicked Jose Gomez and said, "This is a
14    message from Joe."  Did Paul Rivera hear that during
15    the assault on Jose Gomez?
16        A.   He did.
17        Q.   And was Brandy Rodriguez one of the people
18    who was there to assault Jose Gomez?
19        A.   Yes.
20        Q.   Okay.  Statement Number 70 indicates that
21    Shauna Gutierrez stated she is, quote, unquote, "ride
22    or die with Joe Gallegos," after admitting she and
23    Joe Gallegos put a hit on Brandy Rodriguez based on
24    the belief that she was cooperating.
25                Now, in terms of the timing of this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6719

1  statement, what do we know about its timing?

2      A.   It was around the time that Paul Rivera had

3  chosen to cooperate.  He and Shauna Gutierrez were in

4  a transport van together and headed to court, and

5  that's when she made these statements to him.

6      Q.   So is this a statement made following the

7  assault on Jose Gomez?

8      A.   Yes.

9          MR. CASTELLANO:  Your Honor, I would not

10  identify this as a co-conspirator statement related

11  to the assault on Jose Gomez, but as a separate

12  conspiracy to harm Brandy Rodriguez.  And this is

13  based on the belief that she was cooperating with law

14  enforcement.  That's Statement Number 70.

15          THE COURT:  So this is --

16          MS. ARELLANES:  Judge, I think that's

17  basically irrelevant to the counts for which Shauna

18  has been indicted.

19          THE COURT:  Well, let me see if I

20  understand what the Government is suggesting.  So

21  this is -- I think we had seven conspiracies.  You

22  got an eighth one now?

23          MR. CASTELLANO:  Yes.

24          THE COURT:  And tell me what you're going

25  to call this one.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6720

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56

1           MR. CASTELLANO:  I would say conspiracy to

2    hit Brandy Rodriguez.  At this point in time there

3    was a belief, right before Paul Rivera was

4    cooperating -- he wasn't yet -- that Brandy Rodriguez

5    was cooperating with law enforcement, and Shauna

6    Gutierrez made a statement to him that she and Joe

7    Gallegos had put a hit out on Brandy.

8           THE COURT:  Okay.  And your conspirators in

9    this eighth conspiracy?

10          MR. CASTELLANO:  The two would be Shauna

11   Gutierrez and Joe Gallegos.  Among other things, in

12   terms of a co-conspirator statement, it could be to

13   avoid detection by law enforcement.  So in other

14   words, if they believed that Brandy Rodriguez would

15   provide damaging information against them, putting a

16   hit on her would help avoid that situation.

17   BY MR. CASTELLANO:

18      Q.   Agent Stemo, looking at Statement Number

19   71, it indicates Christopher Chavez asked the

20   question:  "Is this right?" in reference to the Garza

21   murders, and Leroy Lucero responded, "You got to do

22   what you got to do."

23          Did Leroy Lucero indicate this is a

24   conversation he had with Christopher Chavez?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6721

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 57 6722

1      Q.   Did this conversation take place before the

2   Garza and Castillo murders?

3      A.   It did.

4      Q.   And what was the context, according to

5   Leroy Lucero, in which Christopher Chavez asked this

6   question?

7      A.   Mr. Lucero said that Mr. Chavez came up to

8   him and was unsure about the murder.  That's why he

9   asked.  Mr. Lucero told him, "You got to do what you

10  got to do."

11          And then Mr. Chavez kind of stuck around

12  Mr. Lucero until he was released.  Mr. Lucero thought

13  that Mr. Chavez was staying by him because Mr. Lucero

14  and Mr. Garza were close, and he didn't want Mr.

15  Lucero to forewarn Mr. Garza.

16     Q.   So when Leroy Lucero indicated that

17  Christopher Chavez wasn't sure about the murder, was

18  he clarifying whether or not there was, in fact, a

19  green light on Mr. Garza?

20     A.   Yes.

21     Q.   Statement 72 indicates that Javier Alonso

22  asked if the marks on his hands were noticeable.  Was

23  that a statement he made to John Montano?

24     A.   Yes.

25     Q.   And was this following the Freddie Sanchez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6722

1    murder?

2         A.    It was.

3         Q.    And was there concern that Javier Alonso

4    had marks on his hands from the strangulation?

5         A.    Yes.

6         Q.    Statement 73 indicates that Edward Troup

7    and/or Jesse Trujillo ordered the surveillance

8    cameras covered.  This is -- the source being Ruben

9    Hernandez?

10        A.    Yes.

11        Q.    Did Ruben Hernandez, in separate

12   statements, mention both Jesse Trujillo and Edward

13   Troup?

14        A.    He did.

15        Q.    And what was the purpose of covering the

16   surveillance cameras?

17        A.    So that the correctional officers couldn't

18   watch what was happening.

19        Q.    Was Ruben Hernandez one of the people who

20   was supposed to cover the cameras?

21        A.    Yes.

22        Q.    And was Jesse Trujillo one of the other

23   people?

24        A.    Yes.

25        Q.    Statement 74 has the quote, "Now hurry,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6723

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 59724

1    Bolo, now you know what time it is," in reference to

2    covering the cameras.  Is that a statement that Jesse

3    Trujillo made to Ruben Hernandez?

4         A.   Yes.

5         Q.   And once again, was that a reference to

6    covering the cameras to avoid detection by law

7    enforcement for the Freddie Sanchez murder?

8         A.   Yes.

9         Q.   Statement 75 indicates a quote by Jesse

10   Trujillo that said, "Just stay there and don't let no

11   one in.  Use your crutch to block the door if you

12   have to."  Was that a statement by Jesse Trujillo to

13   Ruben Hernandez?

14        A.   Yes.

15        Q.   And what was the purpose of making that

16   statement?

17        A.   Mr. Hernandez was not in great physical

18   shape since he was on crutches, and his attempts to

19   block the camera weren't working out very well.  So

20   Mr. Trujillo instructed him to do something else

21   since he was also helping cover cameras.

22        Q.   Statement 76 has a quote, "Ya estuvo,"

23   meaning "all done; take them off," in reference to

24   the camera covers.  Did Jesse Trujillo tell that to

25   Ruben Hernandez once the murder happened and they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6724

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 60

```
 1   were now uncovering the cameras?

 2       A.   Yes.

 3       Q.   And by murder, I mean the Freddie Sanchez

 4   murder.

 5       A.   Yes.

 6       Q.   Statement 77 indicates that "Kyle asked

 7   Ruben Hernandez to take something to Samuel Gonzales

 8   and to tell Samuel Gonzales, 'that was all he had.'"

 9   Do you remember the context of the passing of this

10   paperwork?

11       A.   Mr. Gonzales asked Ruben to go get

12   something from Mr. Dwyer.  Mr. Dwyer had a piece of

13   paper on the ground, and that's when he made the

14   statement that was all he had.  Mr. Hernandez grabbed

15   what was there and took it to Mr. Gonzales.

16       Q.   And so in Statement Number 77 where we have

17   the name Kyle, does that refer to Kyle Dwyer?

18       A.   I believe so.

19       Q.   And is Statement 78 tied to Statement 77

20   where "Samuel Gonzalez asked if Sanchez was dead, and

21   then again asked, 'For real, is he dead?'"

22       A.   Yes.

23       Q.   And is that a statement or a question that

24   Samuel Gonzalez posed to Ruben Hernandez?

25       A.   It was.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1          Q.   Is that when Ruben Hernandez gave the

2    paperwork to Samuel Gonzalez?

3          A.   I think it was right after.

4          Q.   Statement 79 has the name Chicky.  Is that

5    also supposed to be Cheeky, referring to Raymond

6    Rascon?

7          A.   Yes.

8          Q.   And so in this situation was Raymond Rascon

9    cutting off his sleeves and asking Ruben Hernandez to

10   hang up his wet sleeves?

11         A.   Yes.

12         Q.   And was this following the Freddie Sanchez

13   murder?

14         A.   It was.

15         Q.   Was there an indication or concern that

16   Raymond Rascon was cutting off his sleeves because

17   there might be something incriminating on the

18   material?

19         A.   Yes.

20         Q.   And the same thing with Statement Number 80

21   where it says Edward Troup told Chicky or Cheeky to

22   cut his sleeves in small pieces or give the sleeves

23   to someone next door?

24         A.   Yes.

25         Q.   Was that a statement that Edward Troup made

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                 1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

DNM 6726

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62

```
 1   to Ruben Hernandez?

 2        A.   I think he overheard it.

 3        Q.   And when he overheard it, was that for the

 4   purpose of disposing evidence?

 5        A.   Yes.

 6        Q.   Statement Number 81 has a quote which says,

 7   "First thing in the morning we need you to move the

 8   body in the fetal position and wipe down the toilet."

 9             On this one, for clarification, is this a

10   statement by Brian Rascon to Ruben Hernandez?

11        A.   Yes.

12             MR. CASTELLANO:  Your Honor, Statement

13   Number 81, the declarant should be -- I'm sorry, I

14   think it is at different times --

15        Q.   Was there an occasion that both Brian

16   Rascon and Edward Troup said these things to Ruben

17   Hernandez?

18        A.   Yes.

19        Q.   In Statement 82 there is a quote that says,

20   "That's what we are all asking of you," which is a

21   statement told to Ruben Hernandez when he didn't want

22   to clean the cell.  When we refer to cleaning the

23   cell, is that the cell where Freddie Sanchez was?

24        A.   Yes.

25        Q.   And did Brian Rascon make that statement to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6727

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 63

```
 1    Ruben Hernandez?
 2         A.   He did.
 3         Q.   Statement 83 also has another quote that
 4    says, "Now, that's an order.  You already know what
 5    time it is."  So is that a statement to Ruben
 6    Hernandez when he continued not to want to clean the
 7    cell?
 8         A.   Yes.
 9         Q.   And did Brian Rascon make that statement to
10    Ruben Hernandez?
11         A.   He did.
12         Q.   Was the purpose of cleaning the cell to
13    hide any possible evidence of foul play?
14         A.   Yes.
15         Q.   Once again, is that the cell referring to
16    Freddie Sanchez's cell?
17         A.   It is.
18         Q.   Statement 84 indicates that, "Ruben
19    Hernandez asked if he was next for refusing to clean
20    the cell and Brian Rascon told him, 'No, the door is
21    closed.  What can you do?'"
22              What did Ruben Hernandez communicate was
23    his concern when he was talking to Brian Rascon?
24         A.   He thought that if he didn't follow through
25    with the orders of cleaning the cell, that he would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6729

1    be next to be hit.

2        Q.   Statement 85 is a statement attributable to

3    Edward Troup.  It says, quote, unquote, "You're next,

4    motherfucker," said to Ruben Hernandez as they passed

5    each other.  Is this a statement that Edward Troup

6    said to Ruben Hernandez following the Freddie Sanchez

7    murder?

8        A.   Yes.

9        Q.   And this is similar to I think Statement

10   Number 26, where there was concern that Ruben was

11   scared and viewed as weak, and had possibly failed to

12   cover the cameras?

13       A.   Yes.

14       Q.   Statement Number 86 is attributed to Jesse

15   Trujillo.  And it says, "We better be ready for hell,

16   because we're fixing to go through hell."  Was that

17   statement in relation to the Freddie Sanchez murder?

18       A.   Yes.

19       Q.   And was that an indication that people

20   should be prepared because they're going to get law

21   enforcement scrutiny following the murder?

22       A.   Yes.

23       Q.   Statement 87 indicates that Edward Troup

24   stated that it was every man for themselves, and if

25   you can get a plea bargain for 15 or less, to do it,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6729

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 65

```
 1   but no ratting.  That's a no-no.  In Statement 87, we

 2   have on the table Brian Rascon is the declarant.  Is

 3   that actually a statement by Edward Troup?

 4        A.   Yes.

 5        Q.   Was there also indication by Edward Troup

 6   that he was going to get life?

 7        A.   Yes.

 8        Q.   Statement 88 says -- has a quote, "Go wipe

 9   down the toilet.  Don't worry about moving the body,"

10   a statement by Brian Rascon to Ruben Hernandez?

11        A.   Yes.

12        Q.   Was that a statement made to Ruben

13   Hernandez the day following the Freddie Sanchez

14   murder?

15        A.   Yes.

16             MR. CASTELLANO:  May I have a moment, Your

17   Honor?

18             THE COURT:  You may.

19             MR. CASTELLANO:  Thank you.  I pass the

20   witness.

21             THE COURT:  All right.  Thank you, Mr.

22   Castellano.

23             Who wants to go first on cross-examination?

24   Do you want to pick up, Mr. Benjamin?  Mr. Castle?

25             MR. BENJAMIN:  Your Honor, I can.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6730

```
 1    necessarily -- I didn't know what the Court's
 2    preference was as far as how it had its conspiracies
 3    numbered.  I've got the most statements, but --
 4            THE COURT:  I'll track however y'all want
 5    to go.  So y'all just decide how y'all want to go.
 6            MR. BENJAMIN:  Seeing nobody else jumping
 7    up, Your Honor --
 8            THE COURT:  All right.
 9                    CROSS-EXAMINATION
10    BY MR. BENJAMIN:
11       Q.   Agent, let me direct you -- I'm going to
12    try to do these in order as much as I can.  The first
13    question I have is regarding Statement 13.  This is a
14    statement that was made by Leonard Lujan, and is
15    attributed -- okay.  You do have the chart.  I think
16    it's on page 8.
17            And what is the statement that is Statement
18    13?  Because that statement -- in the table, that's
19    simply an action, I think.
20       A.   Just a moment.  Mr. Alonso says he talked
21    to -- initially he says Joe Castillo, but then he
22    later clarifies.  He talked "to Joe Castillo from
23    Belen, uh Criminal.  I don't know his real name but
24    his name's Kriminal and then uh, Angel, a little dark
25    complected guy. Those three, I talked to all three of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6731

1   them in front of (unintelligible) at the time, K, uh,

2   yeah in front of the K units right there in the walk

3   area and uh I told 'em exactly what, what, what, what

4   we wanted to do and me and Castillo had the, the

5   discussion.  Me and Castillo had the discussion.  Me

6   and Castillo" -- he's referring to Joe Gallegos --

7   "had the discussion that he wanted him to, uh, he had

8   told me, well, does he want us to give him a hotshot

9   or what, and I told him no, no, no, he wants you guys

10  to take him out and strangle him.  He wants you guys

11  to strangle him out."

12       Q.   So in regards to Statement 13, that is a

13  statement that was given in 2008 by Leonard Lujan,

14  correct?

15       A.   2007.

16       Q.   I apologize.  And that was a statement that

17  was given immediately -- it's about an hour and a

18  half statement, and it was given right before a court

19  setting; correct?

20       A.   I'm not sure what setting they were in

21  front of.

22       Q.   Okay.  You can hear on the audio, "We've

23  got to go, the Court is ready"?

24       A.   Sure.  I haven't listened to it.

25       Q.   Okay.  How do you believe that this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6732

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 68733

1    statement was made?  You're reading a transcript of

2    that interview?

3         A.   Yes, but I've also been in meetings with

4    Leonard Lujan where he reiterates the information

5    he's given in the past.

6         Q.   And he never in that statement refers to

7    Joe Gallegos as anything other than Joe Castillo;

8    correct?

9         A.   Incorrect.

10        Q.   When does he refer to him as Joe Gallegos?

11        A.   In a couple seconds.  Someone asked him if

12   he means Joe Gallegos, and he says yes.

13        Q.   Correct.  Leonard Lujan never refers to Joe

14   as Joe Gallegos; somebody else -- when he says

15   Castillo, the agent in the room says "Gallegos."  And

16   he says, yes, and agrees with that?

17        A.   That's correct.  However, in other

18   statements he does say Joe Gallegos.

19        Q.   Prior to this statement in 2007 does he say

20   Joe Gallegos?

21        A.   Not that I know of.

22        Q.   And so Leonard Lujan identifies Joe, pause,

23   pause, Joe, pause, Castellano I think, and somebody

24   else, an agent in the room, says "Gallegos"; correct?

25        A.   In this instance, yes.



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6733

1        Q.   Okay.  And at no point in time prior to

2   that does he ever identify Joe Gallegos?

3        A.   Not that I'm aware of.

4        Q.   And then subsequent to that he identifies

5   him as Joe Gallegos because that's what the agent

6   told him; correct?

7        A.   No, he's also shown a photo array or a

8   photo line-up.  I'm not sure what the photo setup

9   was, but he's shown a photo and he clarifies that

10  that's him he talked to.

11       Q.   After being prompted by the agent?

12       A.   Yeah, I guess so.

13       Q.   And that was a 2007 statement, not a 2001

14  statement as reflected in the table; correct?

15       A.   Correct.

16       Q.   Next would be Statement 36.  And Agent, I

17  don't know if yours has the file numbers, but I was

18  just going to identify them by the page numbers

19  they're on.  I think you probably have a prefiled

20  version.  If you don't, it would be page 19 from

21  Document 1903, Attachment 1, Your Honor.

22            MR. BENJAMIN:  And Your Honor, before I

23  forget, I'm looking at my notes; I would like to

24  clarify that the Court had asked whether document

25  1918 was Mr. Gallegos' objections or whether it was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    group objections.  I, at least on Mr. Gallegos'

2    behalf -- I think this is correct for all the

3    defendants -- am going to join the other defendants'

4    objections.  I am simply dealing with the statements

5    that I believe are directly implicating Mr. Gallegos.

6    But I think that the other statements, whether or not

7    a conspiracy is formed or whether or not they're

8    accurate and correct, we would join those other

9    defendants for the record.

10              THE COURT:  Okay.

11              MR. BENJAMIN:  Thank you, Your Honor.

12   BY MR. BENJAMIN:

13        Q.   Okay, Agent, are you at Statement 36?

14        A.   Yes.

15        Q.   And when and where was this statement made?

16        A.   In New Mexico, January 2018.

17        Q.   New Mexico, January 2018?

18        A.   Yes.

19        Q.   And I apologize.  I probably should phrase

20   that a little bit better.  When did Mr. Joe Gallegos

21   inform Leroy Lucero that he was concerned that

22   Lawrence Torres saw and was concerned he was a

23   snitch?

24        A.   We don't have the exact timeframe.  Mr.

25   Lucero estimates four to five years after 2001.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6735

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 736

```
 1         Q.   Okay.  And where was Lucero -- and I'll
 2    refer to him as Joe because there are two Gallegoses.
 3    Where were Lucero and Joe at when the statement was
 4    made?
 5         A.   I believe they were at the PNM North unit.
 6         Q.   And four to five years is the best date you
 7    have?
 8         A.   Yes.
 9         Q.   Do you know what pod they were in?
10         A.   I don't.
11         Q.   Okay.  For corroboration purposes, did you
12    ever confirm that Leroy and Joe were in the same pod?
13         A.   I think we ordered his location history.  I
14    haven't had a chance to look at it.
15         Q.   So we don't know if they were in the same
16    pod?
17         A.   Right.
18         Q.   And Leroy's contention is that this
19    statement was made at PNM North four or five years
20    after the fact?
21         A.   Yes.
22         Q.   And did he say why he thought Torres would
23    snitch?
24         A.   Why Mr. Gallegos thought that?
25         Q.   Did Joe tell Leroy why he thought Torres
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6736

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 72

```
 1   would snitch?

 2        A.   Yes.

 3        Q.   Why?

 4        A.   He said Mr. Torres heard something and came

 5   out of his cell, looked up, and saw what was going

 6   on.

 7        Q.   Okay.  But why did he think he would

 8   snitch?

 9        A.   I don't know.

10        Q.   Okay.  Because this was four to five years

11   after the fact; correct?

12        A.   Yes.

13        Q.   And there had been at least two

14   investigations by the State of New Mexico in between

15   2001 and 2005?

16        A.   For which murder?

17        Q.   And I apologize if that was vague.  The

18   State of New Mexico -- there were attempts to have

19   the murder investigated by the State of New Mexico,

20   by Susana Martinez' district attorney's office;

21   correct?

22        A.   I don't know that.

23        Q.   Okay.  Are you aware whether or not the

24   2001 murder was attempted to be investigated before

25   2005?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6737

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6738

```
 1        A.    Yes.
 2        Q.    Okay.  And so there is no evidence to
 3   suggest that Torres attempted to snitch before 2005;
 4   correct?
 5        A.    No.
 6        Q.    Okay.
 7             MR. CASTELLANO:  Objection to relevance,
 8   Your Honor.  We're focusing on the statement and so
 9   those are words attributable to Joe Gallegos.  Those
10   are his words.
11             MR. BENJAMIN:  And Your Honor, I think I'm
12   allowed to fully explore why that statement would
13   have been made and there's essentially additional
14   facts I think I can bring out.
15             THE COURT:  Yeah, I'm not familiar enough
16   with these statements to make a fine-tuned
17   distinction, so I'll overrule and give you some
18   leeway.
19             MR. BENJAMIN:  Thank you, Your Honor.
20             THE COURT:  Let you explain this to me.
21             Let's do this:  I hate to interrupt this
22   particular statement, but I need to give Ms. Bean a
23   break.  So let me take about a 15-minute break and
24   we'll come back in.
25             MR. BENJAMIN:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6738

```
1              THE COURT:  All right.  We'll be in recess
2     for about 15 minutes.
3              (The Court stood in recess.)
4              THE COURT:  All right.  Let's go back on
5     the record.  Look around the room.  I think everybody
6     has got an attorney.
7              All right.  Ms. Stemo, I'll remind you
8     you're still under oath.
9              Mr. Benjamin, if you wish to continue your
10    cross-examination of Ms. Stemo, you may do so at this
11    time.
12             MR. BENJAMIN:  Thank you, Your Honor.
13    BY MR. BENJAMIN:
14        Q.   Agent Stemo, we were on Statement Number
15    36, I believe.  And this was the statement made by
16    Mr. Lucero regarding Joe being concerned that
17    Lawrence Torres would snitch; correct?
18        A.   Yes.
19        Q.   And my last question, if I'm not mistaken,
20    was -- excuse me -- if I'm not mistaken was whether
21    or not you knew of any investigations that had gone
22    on between 2001 and 2005 or '06; correct?
23        A.   Yes.
24        Q.   Because 2005 or 2006 would be four to five
25    years later after the murder?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6739

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6740

```
 1          A.   Yes.
 2          Q.   And are you aware of any investigations
 3   that had gone on?
 4          A.   Yes.
 5          Q.   Okay.  And there were individuals
 6   interviewed?
 7          A.   Yes.
 8          Q.   And do you know if Lawrence Torres had been
 9   interviewed on any of those times?
10          A.   He had.
11          Q.   And he had not said anything about Joe
12   Gallegos; correct?
13          A.   He had.
14          Q.   Okay.  And so why would Joe Gallegos be
15   informed that Lawrence would snitch if he had already
16   said something about Joe Gallegos?
17          A.   I don't know.
18          Q.   Okay.  That doesn't make sense, does it?
19          A.   I don't know.
20          Q.   Okay.  So when was Joe Gallegos at PNM?
21          A.   I don't know.
22          Q.   Okay.  Are you aware Joe Gallegos was on
23   the streets in 2006?
24          A.   No.
25          Q.   Are you aware Joe Gallegos was discharged
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6740

```
 1    in 2005 from the State of New Mexico?

 2         A.   No.

 3         Q.   That would make that timeline unreasonable;

 4    correct?

 5         A.   It all depends.

 6         Q.   On what?

 7         A.   His memory.  He could have said four to

 8    five years when we pressed him.  It could have been

 9    earlier.

10         Q.   And he could have not remembered the

11    statement accurately; correct?

12         A.   That's possible.

13         Q.   And there is nothing else to corroborate

14    that the statement existed?

15         A.   Yes.

16         Q.   And Statement Number 41 is next.  Are you

17    there, ma'am?

18         A.   I am.

19         Q.   This statement was made at a gas station

20    after the alleged -- after essentially about 11:00

21    p.m. that night; correct?

22         A.   Yes.

23         Q.   And Michael Sutton and Leroy Vallejos,

24    though, were not together at the gas station

25    according to the statements; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6741

```
 1          A.    I believe they were.

 2          Q.    Let me rephrase that.  They arrived in the

 3   same vehicle; correct?

 4          A.    I believe so.

 5          Q.    And then they separated?

 6          A.    I don't know that.

 7          Q.    Okay.  And who was this statement made to?

 8          A.    To Mr. Vallejos.

 9          Q.    But not in front of Mr. Sutton; correct?

10          A.    I think he was in earshot.

11          Q.    You think or you know?

12          A.    I don't know.

13          Q.    Because the statements imply that they were

14   not together; correct?

15          A.    I disagree with that.

16          Q.    Okay.  Because Michael Sutton's first

17   statement doesn't even name Leroy Vallejos.  He says

18   he was there with a friend.

19          A.    Correct.

20          Q.    And it's not until later on in the

21   investigation that they determine who the friend is?

22          A.    Yes.

23          Q.    Okay.  Because Michael talks about walking

24   one place, and Leroy being -- his friend Leroy being

25   in another place; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I don't remember that.

 2        Q.   Do you have any reason to disagree with

 3   that?  Actually, withdrawn.

 4             Let me ask you this.  Do you have any

 5   reason to believe or do you have any notes from the

 6   agents that said that this statement was made in

 7   front of both individuals?

 8        A.   No, I don't have anything indicating that.

 9        Q.   And the reports don't indicate that, as

10   well; correct?

11        A.   I'd have to reread them to be sure.

12        Q.   Okay.  You had the opportunity to review

13   the reports last night; correct?

14        A.   Yes.

15        Q.   Did you?

16        A.   Yes.

17        Q.   And do the reports say that the statement

18   was made to Leroy Vallejos and Michael Sutton, or do

19   the reports say they were made to Leroy Vallejos?

20        A.   I believe they say the statements were made

21   to Leroy Vallejos.

22        Q.   Okay.  So Michael Sutton doesn't have any

23   personal knowledge of this statement?

24        A.   I can't say that he does.

25        Q.   Okay.  And they mentioned cleaning up in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6743

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 79

```
 1   this statement; correct?
 2        A.   They do.
 3        Q.   What is your understanding of what they
 4   were attempting to clean up?
 5        A.   The homicide.
 6        Q.   Do you have any specific understanding of
 7   what they were going to clean up?
 8        A.   I can speculate.
 9        Q.   That's what we're doing as to whether or
10   not -- what this statement is about; right?
11        A.   Yes.
12        Q.   Okay.  Because we don't -- "clean up" by
13   itself is not an incriminating statement; right?
14        A.   No.
15        Q.   Okay.  You're speculating and you're
16   determining that the cleaning up was in regards to
17   something; right?
18        A.   Yes.
19        Q.   What were you speculating that it was in
20   regards to?
21        A.   The crime scene.
22        Q.   Okay.  Do you have any evidence to suggest
23   that they went back to Bernardo -- and I'm referring
24   to the crime scene as Bernardo because that's the
25   exit; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   That's where the body is found.  I believe
 2   the crime scene was at 4 Aaron Court.
 3        Q.   Okay.  So they had to go clean up 4 Aaron
 4   Court; correct?
 5        A.   Yes.
 6        Q.   And there was blood found at 4 Aaron Court;
 7   correct?
 8        A.   There was.
 9        Q.   Okay.  Was there any Adrian Burns' blood
10   found at 4 Aaron Court?
11        A.   When State Police went in 2012, I don't
12   think they were looking for blood.  So when --
13        Q.   Okay.  Excuse me.  Go ahead.
14        A.   So when the FBI returned I believe in 2016
15   they looked for blood then, and there was no blood
16   linking back to Adrian Burns.
17        Q.   And they took I believe it's 40 samples out
18   of that house; correct?
19        A.   I don't know the exact number, but it was a
20   lot.
21        Q.   The one that sticks in my head is there's
22   at least the number 35, so there is more than that;
23   correct?
24        A.   I don't know.
25        Q.   Okay.  And all of those samples had blood
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6745

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 81 746

```
 1   on them; correct?
 2       A.   Suspected blood.
 3       Q.   Okay.  Some of it was animal blood?
 4       A.   I don't know that for sure.
 5       Q.   Some of it was human blood?
 6       A.   I don't know that for sure.
 7       Q.   Okay.  None of it was Adrian Burns' blood?
 8       A.   Correct.
 9       Q.   So that suggests that "clean up" doesn't
10   refer to Adrian Burns' blood; correct?
11       A.   Not necessarily.
12       Q.   What does "clean up" refer to?
13       A.   4 Aaron Court in 2012, not 2016.
14       Q.   They had this statement in 2012; correct?
15       A.   Yes.
16       Q.   And their interpretation of that statement
17   didn't lead them to believe that there was blood at 4
18   Aaron Court; right?
19       A.   I believe so.
20       Q.   So that's your interpretation that has led
21   to no blood on 35-plus samples at 4 Aaron Court?
22       A.   Correct.
23       Q.   New Mexico State Police in 2012 also looked
24   at some other things that they believed "clean up"
25   might have referred to; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 82747

```
 1        A.   What do you mean?

 2        Q.   They tested essentially the truck blood

 3   samples found in the truck in 2013, early '13;

 4   correct?

 5        A.   Yes.

 6        Q.   And there was no Adrian Burns' blood found

 7   on those; correct?

 8        A.   Correct.

 9        Q.   Let me move to Statement 42.  Statement 42

10   is essentially two statements, correct?

11        A.   Yes.

12        Q.   And those two statements are -- the first

13   one would be Joe and Andrew Gallegos were covered in

14   blood and advised they were cleaning the house.  That

15   statement was made to who?

16        A.   I believe that was Daniel Orndorff.

17        Q.   Correct.  And not only Daniel Orndorff;

18   correct?

19        A.   Yes.

20        Q.   And he was advised why they were covered in

21   blood; correct?

22        A.   I don't know that the Gallegos brothers

23   told him.  He was aware they had a matanza in the

24   previous days.

25        Q.   And their clothes actually were seized that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6747

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 83 6748

```
 1    were covered in blood; right?
 2         A.   I don't remember that.
 3         Q.   At the hotel on November 20, blue sweat
 4    pants?
 5         A.   There was some clothes with suspected blood
 6    on it.  I'm not sure that that's what they were
 7    wearing.
 8         Q.   Didn't that blood come back as animal
 9    blood?
10         A.   I don't remember that.
11         Q.   Joe Gallegos -- and this is once again
12    Statement 42, the second half.  "Joe Gallegos later
13    went by Leroy Vallejos' house and tried to give
14    Vallejos his and Andrew Gallegos' truck."  What truck
15    was this?
16         A.   Just a moment.  It doesn't specify.
17         Q.   Do we know what truck this was?
18         A.   I don't.
19         Q.   Okay.  So the only thing we know is what
20    Leroy states; right?
21         A.   Yes.
22         Q.   And there was essentially three trucks that
23    were recovered at Joe Gallegos' house?
24         A.   That sounds right.
25         Q.   Okay.  Were there any trucks of Joe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6748

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6749

```
 1    Gallegos' that were recovered at Leroy Vallejos'
 2    house?
 3          A.   I don't think so.
 4          Q.   Do Joe and Andrew have a truck that is
 5    registered together?
 6          A.   I don't think they do.
 7          Q.   Okay.  There is nothing to corroborate
 8    Leroy Vallejos' statement; correct?
 9          A.   I don't think so.
10          Q.   Okay.  Let me direct you to Statement 43.
11    Did you review this statement last night?
12          A.   I did.
13          Q.   And do you have an opinion as to which of
14    the brothers made this statement?
15          A.   An opinion?
16          Q.   Does Charlene -- is this statement
17    attributable to one person?
18          A.   No.
19          Q.   Okay.  Did both brothers make the
20    statement?
21          A.   I don't know.
22          Q.   Okay.  So who is the declarant of the
23    statement that they were going to get rid of the van
24    because the brothers were looking for it?
25          A.   I can't say.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6749

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 85750

1     Q.   Let me direct you to 43, Agent.  When was
2   this statement made?
3     A.   November, 20, 2012.
4     Q.   When did Jason Van Veghel make this
5   statement?
6     A.   You said 43?
7     Q.   And I apologize.  Let me, I guess, be a
8   little more pointed with my question.  The statement
9   is alleged to have been made from Joe, when he asked
10  Jason Van Veghel to clean up the living room and pull
11  up the carpet in 2003 (sic).  When did Jason Van
12  Veghel first make that statement?
13    A.   To law enforcement?
14    Q.   Yes.
15    A.   2015.
16    Q.   And he had been interviewed prior to that;
17  correct?
18    A.   Briefly.
19    Q.   He had been interviewed by Agent Madrid for
20  a long time; correct?
21    A.   I believe that's the interview I'm talking
22  about, 2015.
23    Q.   He was interviewed, though, prior to that
24  statement to Agent Madrid; correct?
25    A.   I believe so.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6750

1      Q.   And he never mentioned pulling up carpet?

2      A.   No.

3      Q.   Who else was at the house that day?

4      A.   Which day?

5      Q.   Actually -- thank you.  There was another

6  individual that was at the house when the house was

7  raided; correct?

8      A.   Which time?

9      Q.   Thank you once again.  November 15, 2012,

10  the New Mexico State Police went to 4 Aaron Court?

11      A.   Yes.

12      Q.   They located an individual there by the

13  name of Ms. Cartwright, Karen Cartwright?

14      A.   Yes.

15      Q.   And she is involved or was involved with

16  Jason Van Veghel; correct?

17      A.   Correct.

18      Q.   She was interviewed extensively at that

19  time; correct?

20      A.   I believe so.

21      Q.   She never mentions that there is an issue

22  with the carpet?

23      A.   She did not.

24      Q.   Okay.  And she had had substantial contact

25  with Jason from the 12th to the 15th, when she was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6751

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6752

```
 1    interviewed?
 2         A.   I believe so.
 3         Q.   They were both living at 4 Aaron Court?
 4         A.   Yes.
 5         Q.   And that was never brought up as
 6    something -- and Ms. Cartwright probably is described
 7    as being very, very free with information when she's
 8    interviewed; correct?
 9         A.   I don't know who would make that
10    description.  I've never spoken with her, so I can't
11    agree to that.
12         Q.   Correct.  You've never spoken to her to
13    interview her; correct?
14         A.   Correct.
15         Q.   Have you spoken and interviewed Jason Van
16    Veghel?
17         A.   I have not.
18         Q.   Ms. Cartwright talks a lot, and about a lot
19    of things on that audio.  And you're smiling, so I
20    think that's an agreement; correct?
21         A.   I don't think I listened to all of it.
22         Q.   Okay.  There's essentially two audios that
23    are over two hours in length?
24         A.   Okay.
25         Q.   But when she's talking, she talks a lot;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6752

```
 1    correct?

 2         A.   Yes.

 3         Q.   And she provides a lot of information?

 4         A.   Yes.

 5         Q.   A lot of opinions?

 6         A.   Yes.

 7         Q.   Okay.  And a lot of other extraneous

 8    information?

 9         A.   Yes.

10         Q.   And she didn't ever provide you information

11    regarding a carpet?

12         A.   I don't think she did.

13         Q.   And Statement 45 was provided to law

14    enforcement at the same time; correct?

15         A.   No, I don't think so.

16         Q.   When was Statement 45 first provided to law

17    enforcement.

18         A.   Just a moment.  April 8, 2016.

19         Q.   Okay.  So that statement wasn't provided at

20    the same time that Jason Van Veghel provided the

21    information about the carpet?

22         A.   Correct.

23         Q.   That was essentially a later piece of

24    information?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And that wasn't ever discussed or

2  interviewed or anything else in the prior

3  investigation by New Mexico State Police?

4      A.   I don't think so.

5      Q.   Okay.  And 150 or so -- and correct me if

6  I've got the number wrong, but it was a huge amount

7  of people went out in the field and looked where

8  Jason Van Veghel said the keys and watch were thrown?

9      A.   I don't know how many people went out

10  there.

11      Q.   Have you reviewed that ROI?

12      A.   What's an ROI?

13      Q.   Special Agent Acee makes a report for that

14  search; correct?

15      A.   Yes.

16      Q.   And describes the number of people?

17      A.   I don't remember seeing that report

18  recently.

19      Q.   And describes a lot of quote, unquote, "not

20  just agents, but like volunteers and other people

21  that go out there and look in that field"?

22      A.   Yes.

23      Q.   And they don't find any watch and keys?

24      A.   Correct.

25      Q.   So there is no information to corroborate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6754

```
 1    that Jason Van Veghel ever saw this watch and keys

 2    thrown?

 3         A.   Correct.

 4         Q.   And Jason Van Veghel is not what we would

 5    refer to as probably a reliable source; right?

 6         A.   What do you mean?

 7         Q.   He's got convictions for his -- felony

 8    convictions for theft?

 9         A.   Yes.

10         Q.   He's got a lot of impeachable material.

11         A.   He does.

12         Q.   Okay.  And he's not charged as an

13    individual in this case; correct?

14         A.   Correct.

15         Q.   And he was not charged as an individual in

16    the underlying murder -- state murder investigation?

17         A.   Correct.

18         Q.   Statement 46.  This statement was -- this

19    statement is alleged to have been made on or about

20    November 13; correct?

21         A.   Yes.

22         Q.   Where was Jason Van Veghel living in 2012?

23         A.   4 Aaron Court.

24         Q.   Where was he living on the 14th?

25         A.   4 Aaron Court.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 91 4756

```
 1          Q.    When did the police raid 4 Aaron Court?

 2          A.    I don't remember the date exactly.

 3          Q.    November 15, 2012, sound about right?

 4          A.    Yes.

 5          Q.    He was still living there; he had just gone

 6    out when the police showed up?

 7          A.    Yes.

 8          Q.    Because Karen Cartwright was still there

 9    when the police shopped up?

10          A.    Yes.

11          Q.    And he was living at 4 Aaron Court with

12    Karen Cartwright?

13          A.    Yes.

14          Q.    So Jason Van Veghel -- the statement is Joe

15    Gallegos found out the police were coming to search

16    the house.  And let me stop there.  How did Joe

17    Gallegos find out that the police were coming to

18    search the house?

19          A.    I believe I read a statement from Daniel

20    Orndorff that he heard the police were going over, so

21    he went to the Gallegos residence and forewarned

22    them.

23          Q.    Okay.  And that's not correct, though;

24    correct?  The police didn't go on the 13th?

25          A.    No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6756

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 92

```
 1        Q.   The police didn't go on the 14th?

 2        A.   No.

 3        Q.   Okay.  So what guns and stolen goods were

 4   given to Jason Van Veghel?

 5        A.   I don't know.

 6        Q.   What did Jason Van Veghel do with the

 7   unknown stolen goods and guns?

 8        A.   He put them in a trailer that he would

 9   sometimes reside at.

10        Q.   Okay.  Where is that?

11        A.   I don't think he gave us that information.

12        Q.   Did you ask?

13        A.   I wasn't there.  I don't know whether or

14   not they asked.

15        Q.   And there have been a lot of guns in the

16   State Police investigation attributed to Joe

17   Gallegos; correct?  Let me rephrase that.  Joe

18   Gallegos -- and the Court asked this question:  How

19   was the murder -- was it a shotgun or a .22?  The one

20   opinion is that he was shot with a .22 long rifle,

21   rival, .22 caliber long rifle, rifle; correct?

22        A.   Yes.

23        Q.   And the State Police recovered two

24   different rifles that they tried to attribute to Joe

25   Gallegos; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6757

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 93

```
 1          A.   I believe so.
 2          Q.   Okay.  And they were both ruled out, not
 3     just unknown, but they were both determined not to
 4     have fired the projectiles that killed Adrian Burns?
 5          A.   Yes.
 6          Q.   One was a Stevens, and one was a
 7     prior-to-1946 -- some type of weapon?
 8          A.   I don't remember the make and models.
 9          Q.   But there's two?
10          A.   Yes.
11          Q.   And so we don't have any proof to suggest
12     that these guns existed?
13          A.   The guns that were found?
14          Q.   Any guns that attributable to Joe Gallegos;
15     correct?
16          A.   Correct.
17          Q.   Because the investigation has been wrong
18     two times?
19          A.   Yes.
20          Q.   Statement 47, Agent.  And this is Santos
21     Gonzalez told Gomez, "You remember me?"  And Santos
22     Gonzalez knew Jose Gomez; correct?
23          A.   I believe so.
24          Q.   Okay.  They knew each other from Los Lunas?
25          A.   I don't know where they knew each other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6758

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 94759

 1    from.

 2         Q.    Okay.  You've been to Los Lunas or Los

 3    Chavez where Charlene Parker's house is; correct?

 4         A.    No.

 5         Q.    Okay.  Are you aware of how far that house

 6    is -- and Jose Gomez is at 4 Rosemary Court; correct?

 7         A.    I don't know that.

 8         Q.    And Joe Gallegos' house is at 4 Aaron Court

 9    we've heard; right?

10         A.    Yes.

11         Q.    And you can walk from those three houses

12    within five minutes?

13         A.    Yes.

14         Q.    Okay.  They are exceedingly close?

15         A.    They are.

16         Q.    And so Santos Gonzalez -- did he know Jose

17    Gomez?

18         A.    I believe you just said he did.

19         Q.    I'm, I guess, asking.

20         A.    I don't know.  I've never spoken to either.

21         Q.    When was this statement made?  To law

22    enforcement.  Let me clarify.

23         A.    February 27, 2016.

24         Q.    And that was made to -- that's the first

25    half of that statement only, though; correct?  Santos

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6759

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 95760

```
 1    Gonzalez told Gomez, "You remember me?"

 2         A.   Yes.

 3         Q.   That statement does not contain, "They then

 4    told Gomez that Joe Gallegos put a hit out and they

 5    were there to kill him"?

 6         A.   It does.

 7         Q.   Okay.  And who was that made to?

 8         A.   To Jose Gomez.

 9         Q.   Who was the law enforcement official that

10    that was made to?

11         A.   Deputy Otto King.

12         Q.   And he was the primary investigator;

13    correct?

14         A.   I believe so.

15         Q.   Statement 48.  Shauna Gutierrez did not go

16    to Charlene Parker-Johnson's house with the other

17    individuals, did she?

18         A.   She did not.

19         Q.   So the statement, "They didn't finish him

20    when Gomez ran away" couldn't have happened, did it?

21         A.   What do you mean?

22         Q.   Where was the statement made?  At Charlene

23    Parker Johnson's house?

24         A.   No.

25         Q.   Shauna Gutierrez didn't know that Gomez ran
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6760

```
 1   away, did she?
 2        A.   I believe she was informed by either Santos
 3   Gonzalez, Brandy Rodriguez, or Paul Rivera.
 4        Q.   But she's not -- I mean, then she's telling
 5   Brandy?
 6        A.   Yes.
 7        Q.   But Brandy knows that firsthand.
 8        A.   She does.
 9        Q.   So describe what you understand Statement
10   48 is?
11        A.   Paul Rivera, Brandy Rodriguez, and Santos
12   Gonzalez finished assaulting Jose Gomez.  They
13   returned to where Shauna Gutierrez is, and they relay
14   the events that occurred.  In her response Shauna
15   Gutierrez says this:  "They didn't finish him."
16        Q.   And that's a question?
17        A.   No.
18        Q.   And that's a statement made on -- I guess
19   I'm not understanding how that's a statement that she
20   can make.
21        A.   What do you mean?
22        Q.   How can she make a statement to three
23   people who were there that she wasn't there?  I
24   mean -- I'm sorry.  I'm lost.  How can she make that
25   statement?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          A.    In response to what she was told.

2          Q.    Which would be a question, wouldn't it?

3          A.    Not necessarily.

4          Q.    For clarification, three people go, three

5    people come back and they tell Shauna Gutierrez, and

6    Shauna Gutierrez makes this statement based upon the

7    information they delivered to her.

8          A.    Yes.

9          Q.    And Brandy Rodriguez is the only person who

10   heard it?

11         A.    As far as I know.

12         Q.    Statement 49, Agent.  The statement, I

13   understand, that's coming out of 49 should be that

14   Charlene Parker-Johnson should leave the house.  But

15   what does that statement consist of?  Because this

16   sounds like a summary, not a statement.

17         A.    Charlene tells the FBI the following:  The

18   men knocked on the door and asked for Gomez, who was

19   sleeping in the bedroom.  The men told Charlene she

20   should leave the house.  The men pushed past her and

21   went into Gomez' room.  Charlene heard shouting and

22   then the sounds of a fight.  Charlene said, "It was

23   the worst sound I've ever heard.  They almost killed

24   him.  It was terrible."

25         Q.    What is the statement, though?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6762

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 98

```
 1        A.   That is the statement she gave to us.

 2        Q.   Correct.  That's a statement she gave to

 3   you.  But we're not -- we can't admit -- you can't

 4   admit the statement that she gave to you.  You have

 5   to admit her words.  What were her words?

 6        A.   The words I have is, "It was the worst

 7   sound I've ever heard.  They almost killed him.  It

 8   was terrible."

 9        Q.   Right.  But that's not Statement 49.

10        A.   Correct.

11        Q.   Okay.  What are the words that they -- and

12   my next question is going to be who.  But what are

13   the words that they told Charlene Parker-Johnson?

14        A.   They just told her she should leave the

15   house.  She doesn't specify who said it.

16        Q.   It wasn't asked -- no, no, no, and you're

17   moving on to question two.  Question one is:  What

18   was she told?  Not the substance of what she

19   understood.  She understood she should leave the

20   house; right?

21        A.   Yes.

22        Q.   What was she told?

23        A.   I don't know.

24        Q.   And who told her that?

25        A.   I don't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   Statement 50 is, and it's in quotes, "So I
 2    understand that he's running, he's getting away,"
 3    were words that were expressed; correct?
 4          A.   Yes.
 5          Q.   Okay.  But who said those?
 6          A.   Both Santos Gonzalez and Paul Rivera.
 7          Q.   Each said "He's running," and each said,
 8    "He's getting away"?
 9          A.   Yes.
10          Q.   Okay.  And that's from Charlene
11    Parker-Johnson?
12          A.   Yes.
13          Q.   Did Charlene Parker-Johnson also repeat
14    what -- strike that.
15               Statement 50 -- I'm sorry, 51.  That was
16    50.  Statement 51 is once again a summary.  What was
17    the statement that is summarized in 51?
18          A.   Just a moment.  There is no statement that
19    we took down.
20          Q.   And you were asked on direct, I think, and
21    actually it was said on direct that this wasn't
22    related to Count 13, the assault in 2015; right?
23          A.   Yes.
24          Q.   And because there is no statement, we don't
25    know what murder charge they were referring to or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this summary refers to; right?

 2         A.   Correct.

 3         Q.   And Otto King's report summarizes that Jose

 4    Gomez provided a very specific reason as to why he

 5    was being attacked; correct?

 6         A.   Yes.

 7         Q.   And he tells a deputy that, and he tells

 8    his mother, both, that he was being robbed and

 9    attacked for money; right?

10         A.   I don't remember seeing that.

11         Q.   Okay.  In his report to his mother it says,

12    "They came for my money"?

13         A.   I can see if I have it here.

14         Q.   Okay.

15         A.   Give me a second.  He does say they asked

16    him for money.

17         Q.   And he's very specific about that they were

18    there for his money?

19         A.   Well, he also says they were there to hit

20    him because he was going to testify against Joe

21    Gallegos.

22         Q.   He says that?

23         A.   Yes.

24         Q.   And what was he going to testify against

25    Joe Gallegos for?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   Joe Gallegos had actually assaulted Jose
2   Gomez the year prior.  He had stabbed him.  And Jose
3   Gomez had agreed to cooperate against Joe Gallegos
4   for that.
5        Q.   You said on direct that this statement was
6   not in regards to Count 13, which is that alleged
7   assault?
8        A.   What is Count 13?
9        Q.   Count 13 is the alleged assault on Jose
10   Gomez with a deadly weapon in March of 2015.
11        A.   I must have been mistaken.
12        Q.   That was Randy Castellano's question to you
13   and you agreed.
14        A.   So Count 13 is the 2015 assault?
15        Q.   The 2015 assault.
16        A.   Then I must have been mistaken.
17        Q.   And so we're clear, you're saying that if
18   Jose Gomez said -- and his statement is they were
19   there -- and it's in quotes -- "my money"; correct?
20        A.   Yes.
21        Q.   But then you also believe that he was being
22   retaliated on for the assault in 2015?
23        A.   Yes.
24        Q.   And Jose Gomez and Joe Gallegos have a long
25   history; right?  They live within probably -- is it

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6766

1    fair to say you could almost throw a football from

2    one house to the other house?

3         A.   Yes.

4         Q.   And Jose Gomez has asked Joe Gallegos to

5    kidnap him, is the statement that's in the discovery

6    at one point in time; right?

7         A.   I'm not familiar with that statement.

8         Q.   But they have a back-and-forth

9    relationship; right?

10        A.   What do you mean by that?

11        Q.   They know each other, they live in a small

12   town, and they have personal interaction?

13        A.   Yes.

14        Q.   Okay.  And there is an audio from February

15   of 2016 that says, "Leave Jose Gomez alone"?

16        A.   Which audio?

17        Q.   There is a audio call, jail recording that

18   says, "Leave Jose Gomez alone," right?

19        A.   Not that I'm aware of.

20        Q.   Statement 52.  "Upon learning where Gomez

21   was staying, Shauna Gutierrez, Brandy Rodriguez

22   agreed they needed to go after Gomez."  That again is

23   a summary.  What was the statement?

24        A.   The only statement I have is Paul Rivera

25   says Shauna said that she had just learned where

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Gomez was staying.

2       Q.   So are you -- for 52, the only statement

3   that you believe was made is Brandy saying, "I know

4   where Jose Gomez was staying"?

5       A.   It says that?

6       Q.   That's what I'm asking.  I'm trying to find

7   out -- 52 says, "Declarant Shauna Gutierrez and

8   Brandy Rodriguez; source Paul Rivera and Brandy

9   Rodriguez."  So I'm trying to figure out what 52 is.

10      A.   So Paul Rivera says Shauna said that she

11  had just learned where Gomez was staying.  Shauna and

12  Rodriguez agreed they need to go after him.  Shauna

13  asked Paul Rivera to assist and he agreed.  That's

14  Paul Rivera's.

15      Q.   Right.  And so that doesn't -- Brandy

16  doesn't say that?

17      A.   Give me a second.  I'll find it.

18      Q.   Okay.

19      A.   "Brandy Rodriguez on February 27, 2016,

20  says she was at Shauna's residence, and Shauna showed

21  up and told her Tiny was at Charlene's residence, and

22  they needed to go get him.  Rodriguez said she, Oso,

23  and Santos got into Shauna's truck.  She said she

24  drove to Charlene's residence.  Oso and Santos went

25  inside, and she went in the back and spoke with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Charlene."
 2         Q.   Okay.  Once again, that's a summary.  The
 3    only thing we have is one specific statement;
 4    correct?
 5         A.   I don't consider that a summary.  Rodriguez
 6    said "she said."
 7         Q.   But she said -- essentially it describes
 8    what she's doing, not what she said.  She got, "We
 9    got -- we decided to go over to the house"; right?
10         A.   No.  She said Shauna told her she knew
11    where Tiny was, and they needed to go get him.
12         Q.   And that statement comes from Shauna, not
13    from Brandy?
14         A.   Brandy says she heard Shauna say that.
15         Q.   Okay.  And so who is the declarant of that
16    statement?
17         A.   That would be Shauna.
18         Q.   Not Brandy?
19         A.   Correct.
20         Q.   Okay.  And so there is only one statement,
21    and that was the statement by Shauna?
22         A.   Correct.
23         Q.   Okay.  And that statement was made to an
24    individual who is now cooperating; right?
25         A.   Brandy?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6769

```
 1        Q.   No, Paul.

 2        A.   That statement was made to both Brandy and

 3   Paul.

 4        Q.   Statement 53.  Did Paul Rivera make or tell

 5   you that he made a statement?

 6        A.   Yes.

 7        Q.   And what was that?

 8        A.   Shauna asked Paul to assist, and he agreed.

 9        Q.   Okay.  But nobody has ever said "I agreed";

10   right?

11        A.   I don't know.  Some people would.

12        Q.   What did he say?

13        A.   I don't know what his exact agreement was.

14        Q.   Okay.  Statement 54.  Who is Ms. Rodriguez

15   referring to in this statement?

16        A.   For jefe?

17        Q.   Yes.

18        A.   Gallegos.

19        Q.   Why does she call Joe Gallegos her jefe?

20        A.   They're both in the same street gang.  I

21   think she considers him to be the leader of the gang.

22        Q.   Or she considers him her adopted father, is

23   what she has said in the past, too; correct?

24        A.   That's also possible.

25        Q.   That one is in print.  The leader of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6770

```
 1    street gang is a theory?

 2         A.    It is.

 3         Q.    Statement 55.  What did Santos Gonzalez

 4    say?  What was his statement?

 5         A.    I don't have his exact statements.

 6         Q.    Okay.  In other words, we don't know what

 7    he said?

 8         A.    Correct.

 9         Q.    Okay.  Statement 56 has a summary that told

10    Shauna Gutierrez that they had completed their

11    mission.  Who said that, and who said -- what did

12    they say?

13         A.    Paul Rivera didn't clarify who said it.

14         Q.    Did he say he said it?

15         A.    No, he just said "they."

16         Q.    So we don't have a declarant?

17         A.    Well, we have one; we just don't know who.

18         Q.    And our job is to attribute that statement,

19    a statement to an individual person; correct?

20         A.    It is.

21         Q.    Okay.  And we don't know either of those

22    two parts.

23         A.    Not at this time.

24         Q.    How many times have you interviewed Paul

25    Rivera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6771

1    A.   Once or twice.

2    Q.   At least two; right?

3    A.   I think so.

4    Q.   Shauna is attributed with saying she was

5    "happy to hear," and that's in quotes and then "Gomez

6    was likely dead" is not.  A declarant is not listed

7    for Shauna.  So who said that they were happy to hear

8    Gomez was likely dead?

9    A.   Shauna Gutierrez said that.

10   Q.   Okay.  But per the table she's not listed,

11   right, as a declarant?

12   A.   You're correct.

13   Q.   Okay.  She said, "Happy to hear," and

14   that's it, or we don't know what she said?

15   A.   I don't know what she said after that.

16   Q.   Okay.  Statement 57.  What did Shauna

17   Gutierrez tell Santos Gonzalez?

18   A.   She instructed him to take the green truck

19   and park it at the trailer mentioned above; it

20   belonged to a Mexican national; and leave it there

21   for several days.

22   Q.   And that sounds like an understanding or an

23   instruction.  But what did she say?

24   A.   I don't know.

25   Q.   Okay.  Was Paul Rivera present when that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6772

```
 1   instruction was given?

 2        A.   He was.

 3        Q.   And -- but during two interviews he was not

 4   asked what she said?

 5        A.   No.

 6        Q.   Statement 58.  This statement was given

 7   when -- and more importantly, because I think the

 8   answer is February 27, is what the chart says --

 9   where was this given?

10        A.   When was it given to law enforcement?

11        Q.   No.  When did Shauna say, "How come you

12   guys didn't do the job more fully?"

13        A.   It was said by Shauna to Brandy Rodriguez

14   on the day of the assault.

15        Q.   Right, but where?

16        A.   Mr. Joe Gallegos' house.

17        Q.   Which is the 4 Aaron Court?

18        A.   Yes.

19        Q.   And she said -- who is saying that she

20   said, "How come you guys didn't do the job more

21   fully?"  Because that's in quotes.  Both people are

22   saying that?  Brandy and Paul?

23        A.   Brandy Rodriguez says that.

24        Q.   And those are the words that she said

25   Shauna used?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          A.   Yes.

 2          Q.   So she's the only one that says that; not

 3     Paul?

 4          A.   I'm checking.

 5          Q.   Okay.  I'm sorry.

 6          A.   I couldn't find where Paul Rivera says

 7     that.

 8          Q.   So that statement is attributable to Brandy

 9     Rodriguez only?

10          A.   Yes.

11          Q.   Statement 60.  Brandy Rodriguez and Shauna

12     Gutierrez had people in place for an attack on Gomez.

13     And Mr. Castellano said that they were unclear about

14     when that statement was made; correct?

15          A.   Yes.

16          Q.   When does Mario say that statement was

17     made?

18          A.   I didn't ask him.

19          Q.   Okay.  That's important; right?

20          A.   It is.

21          Q.   Okay.  Because Brandy defined the two

22     groups -- or the two types of evidence that would

23     change if it was before or after the day of the

24     assaults; right?

25          A.   Yes.

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6774

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 110

```
 1          Q.   How does he know that?
 2          A.   From what he told me, he was a go-between
 3   for Joe Gallegos, Shauna Gutierrez, and Brandy
 4   Rodriguez when Joe Gallegos was in county jail.
 5          Q.   Okay.  When was that?
 6          A.   I didn't ask him.
 7          Q.   When was Joe Gallegos in county jail?
 8          A.   I don't know.
 9          Q.   And how does -- did you ask him how he
10   knows these people?
11          A.   He's from that area.  He used to sell drugs
12   in that area, as well.
13          Q.   That's what he said?
14          A.   Yes.
15          Q.   Did you ask him how he knows Shauna,
16   Brandy, or Joe?
17          A.   I didn't ask him that specifically, where
18   they met.  He did tell me that one of the Gallegos
19   brothers actually brought him into the SNM.
20          Q.   Well, but that's a very unspecific
21   reference, because there's five of them; right?
22          A.   I said "Gallegos brothers" because I don't
23   remember if it was Joe or Andrew.
24          Q.   Well, there is Frankie, Ben, Anthony, Joe?
25          A.   Right.  Mario Chavez -- I think he said Joe
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

DNM 6775

```
 1    initially.  Then in the second interview he said
 2    Andrew.
 3         Q.   Okay.  Which was it?
 4         A.   Andrew.
 5         Q.   Brought him into the gang?
 6         A.   Yes.
 7         Q.   Not Joe?
 8         A.   Correct.
 9         Q.   Okay.  And when and where did Andrew bring
10    him into the gang?
11         A.   I don't think I have that 302.  Sometime in
12    approximately 2013.
13         Q.   Okay.  And was he in custody or out of
14    custody when that happened?
15         A.   He was out of custody.
16         Q.   And we're referring to Mario Chavez?
17         A.   Yes.
18         Q.   And where was Andrew Gallegos at that time?
19         A.   He was also out of custody.
20         Q.   Now, when and where did he pass letters?
21         A.   I didn't ask him specifically.
22         Q.   Did you check the jail to find out if Mario
23    had visited Joe Gallegos?
24         A.   I didn't.
25         Q.   Okay.  Besides taking Mario at his word,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112

```
 1    what information did you do to corroborate this?

 2         A.   It was unrelated to the Gallegoses.  He

 3    told me someone had shown him a note about being in

 4    charge.  And I was able to track that down.

 5         Q.   "Track that down," what does that mean?

 6         A.   Location history wise, he said someone

 7    specific either passed him a note or talked to him

 8    saying he was in charge of a specific facility.  We

 9    were able to determine that he had given us the wrong

10    name, because gang members use similar monikers, so

11    we were able to corroborate his information once

12    we -- once we had the location history for the

13    specific gang monikers, we were able to ask Mario to

14    clarify, and he was able to.

15         Q.   And that's related to a gang instance, but

16    that's not related to Joe or any information he

17    provided about Joe?

18         A.   Correct.  You asked me if I corroborated

19    anything.  I did.

20         Q.   Oh, and I apologize.  I should have said

21    "regarding Joe."

22         A.   No, I didn't.

23         Q.   Okay.  Because he states that he was taking

24    information and passing information to -- from Shauna

25    to Joe in 2014; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6777

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113778

```
 1          A.   I don't think he gave me a date.

 2          Q.   Okay.  Can you look?

 3          A.    No, he didn't.  He just told me when he met

 4    Shauna, which was approximately 2014.

 5          Q.   And that statement, you're not saying,

 6    sounds like, that's when Joe and Shauna were dating?

 7          A.   I'm not sure.  Oh, you're correct.  Yes.

 8          Q.   He says Joe and Shauna were dating in 2014?

 9          A.   Yes.

10          Q.   Do you know when Joe and Shauna were

11    dating?

12          A.   I don't know.

13          Q.   Did you attempt to find that out?

14          A.    I think the answer varies.  I've heard they

15    were dating for a couple months starting in 2015.

16    But I've never confirmed that.

17          Q.   Okay.  So we have no -- we have information

18    that Mario Chavez gave you the name of a moniker, and

19    you believe that that moniker was referring to

20    somebody else and that reference was accurate, but we

21    don't know that?

22          A.   No, I do know that.  I confirmed that with

23    him.

24          Q.   With him?

25          A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6778

```
 1         Q.   So you went back to confirm something with
 2    him?
 3         A.   I did, yes.
 4         Q.   But you didn't confirm any of this
 5    information regarding Joe?
 6         A.   No, I didn't.
 7         Q.   And you didn't confirm the information as
 8    to whether this happened before or after the assault?
 9         A.   Correct.
10         Q.   Okay.  So we have -- we know you understand
11    how to corroborate information.  This was a choice
12    not to corroborate the information.
13         A.   Yes, I have limited time.
14         Q.   I'm sorry?
15         A.   I have limited time.  I can't run
16    everything down.
17         Q.   And I understand that completely.  That's
18    my problem, too.  But this statement is going to be
19    used against Mr. Gallegos; correct?
20         A.   I don't know that.
21         Q.   Well, what's the purpose of the statement?
22    It's to be used against --
23         A.   I don't make those decisions.
24         Q.   Okay.  But --
25              MR. CASTELLANO:  I'd object about the line
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115

```
 1    of questioning about corroboration.  That would be a
 2    proper subject for cross-examination at trial.  And
 3    the Court would give an instruction that the jury can
 4    find someone guilty on the uncorroborated testimony
 5    of a cooperator.  So the corroboration or not really
 6    isn't an issue here.
 7              THE COURT:  Well, I'm going to let Mr.
 8    Benjamin explore.  I'm trying to learn these
 9    statements and the context of them.  So I need to
10    know what we've got here.  Overruled.
11    BY MR. BENJAMIN:
12        Q.   Mario Chavez -- did he just -- you were
13    talking to him about some other information I think
14    initially; correct?
15        A.   No, I don't think so.
16        Q.   The purpose of your visit with Mario Chavez
17    was to find out what he knew about Joe Gallegos and
18    the attack on Tiny, Jose Gomez?
19        A.   No, I think we approached him because he
20    had recently arrived in prison.
21        Q.   Okay.
22        A.   And he was claiming to be an SNM Gang
23    member.
24        Q.   Okay.  And it was just an exploratory
25    interview?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6780

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116781

```
 1              A.    It was.

 2              Q.    Okay.  And your ROI starts out, though,

 3      with the information regarding Joe Gallegos; right?

 4              A.    An ROI --

 5              Q.    Sorry, your report of investigation, your

 6      302.

 7              A.    Yes.

 8              Q.    And that then became important information;

 9      right?

10              A.    It did.

11              Q.    And that was received in your first

12      interview with him?

13              A.    Yes.

14              Q.    And so the other -- the note that he --

15      you'd said he received a note from somebody that was

16      in charge of a facility?

17              A.    Yes.

18              Q.    And that was the name that you ran down?

19              A.    Yes.

20              Q.    And who was that?

21              A.    Jeremiah Martinez.  He referred to him as

22      Cyclone.

23              Q.    And you ran that information down to

24      confirm that?

25              A.    Yes.
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6781

1      Q.   Because that was something that you deemed

2  was important; right?

3      A.   Yes.

4      Q.   And so did you deem this information not

5  important or --

6      A.   No.

7      Q.   Okay.  We could have confirmed whether

8  Mario Chavez ever visited Joe Gallegos in jail?

9      A.   We could.

10     Q.   And we could confirm if he had sent him

11 letters when they were in jail; right?

12     A.   I don't know that we could do that.  Some

13 of the jails don't keep track of what goes in and

14 comes out.

15     Q.   But we don't know what jail this is; right?

16     A.   I think it was the Valencia County Jail.

17     Q.   And have you done that with them to find

18 out if they would have been able to tell you if the

19 letter had gone in and out?

20     A.   No.

21     Q.   And how did Mario -- I think I've asked

22 when he learned this information.  How did he learn

23 this information?

24     A.   To my knowledge, he was hanging out with

25 Brandy and Shauna as a way to pass those messages.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6782

```
 1          Q.   Brandy is dating -- excuse me, Brandy is
 2    Joe's essentially adopted or related family member,
 3    or a close tie to Joe; correct?
 4          A.   Yes.
 5          Q.   Shauna, at some point in time, was dating
 6    Joe Gallegos; correct?
 7          A.   Yes.
 8          Q.   Did you ever ask why they needed a third?
 9          A.   I think I did.
10          Q.   What was that answer?
11          A.   I don't have in it front of me so I may not
12    be entirely accurate.
13          Q.   Okay.
14          A.   I think they said they wanted to avoid any
15    scrutiny from others.  He had passed letters from
16    other SNM members.  And that's a common tactic that
17    they use.
18          Q.   Well, but nobody was concerned with the
19    SNM; right?
20          A.   I don't know that that's true.
21          Q.   Okay.  Did Valencia County list Joe
22    Gallegos as an SNM member that needed to be -- and
23    they have a segregation list at most jails; right?
24          A.   I'm sure they do.
25          Q.   Okay.  Was there anything to indicate that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6783

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 119

```
 1    Mario Chavez was needed because Brandy or Shauna were

 2    not allowed to visit Joe at Valencia County?

 3         A.    I never looked, so I couldn't tell you.

 4         Q.    I apologize, I skipped Statement 59 by

 5    accident.  Let me ask you just to refer to the one

 6    right above that.  Statement 59 was made at Charlene

 7    Parker-Johnson's house?

 8         A.    Yes.

 9         Q.    That's in the report?

10         A.    Yes.

11         Q.    And forgive me.  When I say that's in the

12    report and you're referring to something, we're

13    talking about the report by deputy -- I think it's

14    deputy, but Otto King, the investigator, correct?

15    The Valencia --

16         A.    No, I'm talking about the FBI report.

17         Q.    Okay.  Where did they get that information?

18         A.    "They" meaning?

19         Q.    The FBI report.

20         A.    We spoke with Paul Rivera.

21         Q.    Okay.  Is "don't testify" a statement that

22    was made on the day of February 27, 2016?

23         A.    Yes.

24         Q.    Is that in Otto King's report?

25         A.    I don't think so.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6784

1     Q.   What do we have to tell us if that

2     statement was made on February 27?

3     A.   Paul Rivera's statement.

4     Q.   That was given when?

5     A.   September 16, 2016.

6     Q.   When he decided to start cooperating?

7     A.   Yes.

8     Q.   Okay.  Now earlier I asked you, in

9     Statement 47, whether there was any information in

10    the report.  And I think I made a mistake, because

11    we're talking about different reports.  In Otto

12    King's report, does it say that Joe Gallegos put a

13    hit out on him?

14    A.   Otto King's report?

15    Q.   Yes.

16    A.   Yes, it does.

17    Q.   So we're talking about two different

18    reports; right?

19    A.   Yes.

20    Q.   Okay.  One of which was created at the

21    scene, and one of which was created essentially six

22    to eight months later or so; depending on the math,

23    from March to September, I guess that's six months?

24    A.   One wasn't at the scene.  It was at the

25    hospital.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 21786

1     Q.   Okay.  "The day of," is that better?

2     A.   Yes.

3     Q.   Okay.  I think that would take us to

4   Statement 61.  Joe Gallegos ordered the hit on Gomez,

5   and Shauna Gutierrez planned the hit.  And this is

6   Brandy Rodriguez that we were told was the declarant,

7   not Shauna Gutierrez; correct?

8     A.   Correct.

9     Q.   How did Joe order the hit?

10     A.   I don't know.

11     Q.   Did Mario tell you how?

12     A.   He did not.

13     Q.   Okay.  And what was the statement that Joe

14   used to order the hit?

15     A.   I don't know.

16     Q.   Okay.  And what was the statement of how

17   Shauna Gutierrez planned the hit?

18     A.   I don't know.

19     Q.   The next statement, if I could ask you,

20   Agent, is 69.

21     A.   Okay.

22     Q.   Statement 69 is -- this is a message from

23   Joe; correct?

24     A.   Yes.

25     Q.   And because that's in quotes, that's what

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                               e-mail: info@litsupport.com

DNM 6786

1    we're understanding was the actual statement?

2         A.    Yes.

3         Q.    Brandy Rodriguez never told you she said

4    that?

5         A.    I don't think she did.

6         Q.    Okay.  Statement 70.  This statement was

7    made after Paul Rivera had started cooperating with

8    the Government; correct?

9         A.    Yes.

10        Q.    Okay.  And during your conversations with

11   cooperators generally, I assume you tell them that

12   what they tell you can provide a benefit to them?

13        A.    I don't tell them that every time.

14        Q.    Okay.  Have you ever told them that?

15        A.    Are we talking about Paul Rivera

16   specifically?

17        Q.    I said generally, but let's talk about Paul

18   Rivera specifically.  Did you talk to Paul Rivera?

19        A.    I don't think I ever told him that anything

20   he told me would benefit him.

21        Q.    Okay.  Why was he speaking with the

22   Government, Paul Rivera?

23        A.    I think on this specific instance I went up

24   to PNM to just visit with the cooperators.  I hadn't

25   met them, and I was new to the case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123

```
 1        Q.   Okay.

 2        A.   So it was more like an introduction.  And

 3   since I had been at a previous debrief with Mr.

 4   Rivera, he pulled me aside to give me this

 5   information.

 6        Q.   This information?

 7        A.   Yes.

 8        Q.   Okay.  And so this information wasn't

 9   provided to you in a debrief.  This information was

10   provided to you, just specifically to you at an

11   impromptu meeting?

12        A.   Yes.

13        Q.   And his words to you were Shauna said what?

14        A.   "She's ride or die with Gallegos."

15        Q.   Okay.  And that is what he said, and the

16   interpretation then comes from that; correct?

17        A.   Yes.

18        Q.   Because that has no mention -- that is a

19   statement of loyalty, not a threat, right?

20        A.   Correct.

21        Q.   All right.  And statement of loyalty is

22   about the relationship between Shauna and Joe?

23        A.   Yes.

24        Q.   And so there was no information in that

25   statement provided that they had put -- that Joe had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com



DNM 6788

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 24789

```
 1   put a hit on Brandy Rodriguez?

 2        A.   He didn't give me her exact words, but he

 3   relayed the content of the conversation.

 4        Q.   Okay.

 5        A.   And that included placing a hit on Brandy

 6   Rodriguez.

 7        Q.   And how was that hit placed?

 8        A.   I don't know.

 9        Q.   When was that hit placed?

10        A.   I don't know.

11        Q.   Do you have any information to believe that

12   hit on somebody that there is a lot of information

13   that refers to Joe as his daughter, was ever placed?

14        A.   I don't.

15        Q.   The answer is no; correct?

16        A.   I don't know.

17        Q.   But there is no information?

18        A.   I can't say yes or no to that without going

19   out and looking for that.

20        Q.   Have you gone out and looked for that?

21        A.   No, we told Ms. Rodriguez that we thought

22   there might be a hit on her.

23        Q.   Okay.  And have you witnessed Ms. Rodriguez

24   when she was in the courtroom?

25        A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25790

1    Q.   Waving at Joe?

2    A.   Yes.

3    Q.   Joe waving at her?

4    A.   Yes.

5    Q.   And this was over the course of essentially

6  probably almost a year; right?

7    A.   Yes.

8    Q.   Okay.  Did anybody ever act like they

9  believed there was a hit on each other?

10   A.   No.  However, based on experience and

11 reports, the SNM play friendly with people they know

12 they're going to kill.

13   Q.   We're talking about somebody -- we're not

14 talking about SNM.  We're talking about somebody who

15 has lived in that person's house since they were 8;

16 correct?

17   A.   Yes.

18   Q.   And that is Brandy Rodriguez living in Joe

19 Gallegos' house; correct?

20   A.   Correct.

21   Q.   Okay.  So there is no information and there

22 is actually information suggesting otherwise?

23   A.   Yes.

24        MR. BENJAMIN:  I think I'm done, Your

25 Honor.  If I could just have a couple of seconds to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6790

```
 1   go back through.

 2              THE COURT:  You may.

 3              MS. ARELLANES:  Your Honor, I think Ms.

 4   Gutierrez requires a break.

 5              THE COURT:  All right.  Well, let's talk

 6   about how we want to take a break.  Do we want to

 7   take a 15-minute break and then come back and take a

 8   late lunch; go for a while and take a late lunch?

 9   We're taking kind of an early odd break.  Or do you

10   want to take your lunch break now and come back at

11   12:35, something like that?  What do you want to do?

12   How many of you want to take a late lunch?  How many

13   want to take a lunch break now.  All right.  Well,

14   that wins it, then.

15              All right.  See you back -- not much voter

16   participation.  It's good old America; right?

17              All right.  We'll see you back about 12:35,

18   12:40 something like that.

19              (The Court stood in recess).

20              THE COURT:  All right.  Let's go on the

21   record.  It looks to me like every defendant has at

22   least one attorney.  So I think we're ready to go.

23              Mr. Benjamin, did you decide you were done?

24              MR. BENJAMIN:  Yes, Your Honor, I'm done.

25              THE COURT:  So Mr. Burke, are you going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6791

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6792

```
 1    be next?

 2              MR. BURKE:  Yes, Your Honor.  Thank you.

 3              THE COURT:  All right.  Mr. Burke.

 4                      CROSS-EXAMINATION

 5    BY MR. BURKE:

 6         Q.   Agent Stemo, how long have you been an FBI

 7    agent?

 8         A.   A little under two years.

 9         Q.   A little under two years.  And is this case

10    here what you've been spending most of your time on?

11         A.   Yes.

12         Q.   All right.  And did you have any prior law

13    enforcement experience prior to joining the FBI?

14         A.   No.

15         Q.   When you joined this investigation, what

16    did you do to prepare for being a good investigator

17    on the case?  What sorts of reports and interviews

18    did you do to get yourself up to speed?

19         A.   I read the entire case file.  I initially

20    sat in a lot of interviews and read those write-ups.

21         Q.   When you read the entire case file, you

22    recognized that there had been prior FBI cases that

23    had morphed into, if that's the right phrase, the

24    current case?

25         A.   I did not initially.  This is, it was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6792

1    dubbed Operation Atonement.  There were other case

2    files that I didn't know of initially, and I can't

3    say I've read all of those.

4        Q.   And you were present when Judge Browning

5    described his view of the case, that it was inspired

6    in many ways by the threats on Mr. Marcantel?

7        A.   Yes.

8            MR. CASTELLANO:  Objection, relevance, Your

9    Honor.  This isn't regarding any James statements.

10           THE COURT:  Well, let me see where he's

11   going.  I'll give him a little leeway.  Overruled.

12           MR. BURKE:  Thank you.

13   BY MR. BURKE:

14       Q.   So that was the instigating reason for the

15   investigation?

16       A.   Yes.

17       Q.   And then what you did, what the task force

18   did, was, they started looking, in addition to that,

19   at some homicides.  For example, the first one would

20   have been the Javier Molina homicide, which was in

21   2014.  Is that a fair assessment of how the

22   investigation went?

23       A.   I don't know.  I wasn't there for it, so I

24   don't know what they looked at first.

25       Q.   When you joined the investigation, what was



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6793

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 129

```
 1   the focus then?

 2        A.   When I got there, we were actually doing

 3   more search and arrest warrants.  I think we arrested

 4   two or three people that were not charged in this

 5   indictment.

 6        Q.   So were you working on this case shortly

 7   before the first indictment?

 8        A.   No.

 9        Q.   You came onto the team after the first

10   indictment?

11        A.   Yes.

12        Q.   All right.  Thank you.  The primary case

13   agent -- is that Mr. Acee?

14        A.   Yes.

15        Q.   And who were some of the other FBI agents

16   who have worked on this case?

17        A.   Joe Sainato and Thomas Neale.

18        Q.   Thank you very much.  Turning to the

19   outline, did you help prepare the outline?

20        A.   I did not.

21        Q.   Do you know if any FBI agents helped

22   prepare the outline?

23        A.   I don't know.

24        Q.   Not that you know of?

25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6794

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130

```
 1        Q.    And then did you take a look at some files

 2   last night in order to be prepared to testify here

 3   today?

 4        A.    Yes.

 5        Q.    And you have a binder before you which is

 6   what?  What is that binder?

 7        A.    It contains different 302s, State Police

 8   reports, and I think Valencia County reports

 9   regarding statements made by different individuals.

10        Q.    And were you attempting to gather in that

11   binder the reports that would be reflected in the

12   James outline, what I'm calling the James outline?

13        A.    I didn't gather anything.  It was provided

14   to me.

15        Q.    No, were you looking for reports that would

16   assist you in testifying today?

17        A.    Yes.

18        Q.    And you knew you would be testifying about

19   this outline?

20        A.    Yes.

21        Q.    All right.  Thank you.  I'd like to go

22   through a few of them.  It will take me just a bit.

23             Number 11.  Leroy Lucero's statement.  Do

24   you see that there?

25        A.    I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6795

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

```
 1        Q.   And is his nickname Smurf?  Is that one of

 2   his nicknames?

 3        A.   It is.

 4        Q.   And he was at one time a federal prisoner,

 5   he was in the Bureau of Prisons?

 6        A.   He was.

 7        Q.   And did you go back and look at his

 8   interview when he was at a BOP facility in

 9   Pennsylvania?

10        A.   Last night, or previously?

11        Q.   At any time.

12        A.   I have.

13        Q.   And I believe he was at Lewisburg; is that

14   correct?

15        A.   Yes.

16        Q.   And was that the first time that Smurf

17   talked to federal agents?

18        A.   I don't believe so.

19        Q.   Do you know when the first time would have

20   been?

21        A.   No.

22        Q.   And Mr. Lucero is claiming that Angel Munoz

23   made statements to him; is that correct?

24        A.   Yes.

25        Q.   And he's deceased, isn't he?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6796

```
 1        A.   Yes.

 2        Q.   All right.  And then have you talked to him

 3   yourself, Leroy Lucero?

 4        A.   Yes.

 5        Q.   How often?

 6        A.   I've spoken to him about five times.

 7        Q.   All right.  And is he here in New Mexico?

 8        A.   Yes.

 9        Q.   In custody?

10        A.   No, he's not.

11        Q.   Is he on supervised release now?

12        A.   I think he still might be.

13        Q.   All right.  And when was the last time you

14   talked to him?

15        A.   About a week or so ago.

16        Q.   Thank you very much.  Let me ask you to

17   turn to Statement 13.  That's a Lujan statement.

18        A.   Okay.

19        Q.   He made statements to you or your

20   colleagues that he met with Mr. Gallegos, Angel

21   DeLeon, and Kriminal; and that's Michael Jaramillo;

22   is that correct?

23        A.   Yes.

24        Q.   And where did that meeting take place?

25        A.   The first time he made the statement?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Yes.  It was a bad question.  Where did

2   Lujan say he met with those three people?

3      A.   I believe he said it was in front of the

4   unit they resided in, P pod.

5      Q.   And he was clear about that and who the

6   three people were?

7      A.   Initially he misidentified Joe Gallegos as

8   Joe Castillo.

9      Q.   All right.  And then as far as Angel DeLeon

10  and Kriminal, Michael Jaramillo, he was clear about

11  that?

12     A.   Yes.  He did not identify Kriminal as

13  Michael Jaramillo.

14     Q.   He just had the nickname?

15     A.   Yes.

16     Q.   And you subsequently tied that down to be

17  Michael Jaramillo?

18     A.   Yes.

19     Q.   And he made that same statement a couple of

20  other times?

21     A.   He did.

22     Q.   And those were the three people who Lujan

23  says were tasked with killing Pancho Castillo?

24     A.   Yes.

25     Q.   Let me ask you to turn to Statement 16.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6798

1    That's a Frederico Munoz statement.  Is he a

2    co-conspirator, then?

3         A.   Yes, I believe he is.

4         Q.   And has he been charged in this case?

5         A.   He was charged under the RICO indictment.

6         Q.   And including this particular murder?

7         A.   I'm not sure.  I'd have to look at the

8    overt acts for him.

9         Q.   All right.  Well, was there a separate

10   count designated for this as to Mr. Munoz?

11        A.   I don't think there was.

12        Q.   All right.  Thank you.  Let me ask you to

13   turn to Statement 19.  Javier Alonso is talking about

14   Arturo Garcia and says that Arturo Garcia wrote to

15   Frankie Gonzalez that Brian and Raymond Rascon were

16   to take care of the next murder for SNM.  Do you see

17   that there?

18        A.   I do.

19        Q.   Now, did Javier Alonso say that he saw the

20   letter; is that what he said?

21        A.   Yes.

22        Q.   And this was a letter supposedly written by

23   Arturo Garcia to Frankie Gonzalez?

24        A.   Yes.

25        Q.   And do you have that letter?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135800

1        A.   No.

2        Q.   So Frankie Gonzalez is a co-conspirator?

3        A.   Yes.

4        Q.   And has he been charged?

5        A.   He has not.

6        Q.   All right.  Turning to 20, this is another

7   Javier Alonso statement.  And when did he talk to you

8   or your colleagues?

9        A.   I believe the first meeting was in August

10   of 2017.

11        Q.   So this was after he decided to be an

12   informant and enter into a plea agreement; is that

13   correct?

14        A.   I think the first meeting was before he

15   pled guilty.

16        Q.   Okay.  Sort of a proffer?

17        A.   Yes.

18        Q.   And then he had subsequent meetings?

19        A.   I think we met with him after he pled.

20        Q.   All right.  And so all of the information

21   in this statement, including 20, comes after he had

22   made his plea agreement or made a decision to reach a

23   plea agreement?

24        A.   I believe so.

25        Q.   All right.  And he was very clear that Ben

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36801

```
 1    Clark put him in charge of the killing?
 2         A.   Yes.
 3         Q.   All right.  Thank you.  Let me ask you to
 4    turn to 21.  This is the statement that Javier Alonso
 5    says that he was talking to somebody at the door
 6    between the blue pod and the green pod; is that
 7    correct?
 8         A.   Yes.
 9         Q.   And he remembered, I believe, that Ernest
10    Earn Dog Viero had started some communication about
11    getting the job done or something like that?
12         A.   Yes.
13         Q.   But he does not know -- Javier Alonso does
14    not know who it was that actually told him to, in
15    effect, get moving?
16         A.   Correct.  He could not remember that
17    individual's name.
18         Q.   All right.  Is Ernest Guerrero a
19    co-conspirator?
20         A.   Yes.
21         Q.   Has he been charged?
22         A.   He has not.
23         Q.   Turning to 22, so what Alonso said in
24    conjunction with his plea agreement is he told Edward
25    Troup to help?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137   6802

```
 1          A.   He did.

 2          Q.   Were his statements, Javier Alonso's

 3     statements, recorded?

 4          A.   No.

 5          Q.   Turning to 23, Javier Alonso is talking

 6     about the killing of Fred Sanchez, and he remembers

 7     that both Rascons came to the cell?

 8          A.   He does.

 9          Q.   Now, are -- so they're co-conspirators,

10     Brian and Raymond?

11          A.   Yes.

12          Q.   And have they been charged?

13          A.   No.

14          Q.   Why not?

15          A.   I don't know.

16          Q.   Okay.  That was before your involvement in

17     the case?

18          A.   Yes.

19          Q.   Have you met with them?

20          A.   No, I haven't.

21          Q.   Have any of your colleagues met with them?

22          A.   I don't believe so.

23          Q.   All right.  Thank you.

24               Turning to 24.  So in addition -- I take it

25     from this that in addition to coming into the cell,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6802

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6803

1     the Rascon brothers were also assigned the job of

2     being lookouts.

3          A.    Yes.

4          Q.    Let's turn to 25.   Javier Alonso recalls

5     that Edward Troup kissed him on the cheek and said he

6     was proud of him?

7          A.    Yes.

8          Q.    Where did that take place?   Was that still

9     in the cell?

10         A.    I could check, if you'd like.

11         Q.    Absolutely.

12         A.    It's unclear where it happened.

13         Q.    Pardon?

14         A.    It's unclear where it happened.

15         Q.    He provided you no details regarding the

16    location as to that event or that statement?

17         A.    Correct.

18         Q.    Let me ask you to turn to 29.   Ben Clark.

19    Now, in contrast to the Statement Number 13, where

20    Javier Alonso recalled that Ben Clark made the

21    assignment to him, here is a statement where the

22    assignment allegedly is to Alonso and Troup.   Do you

23    see that there?

24         A.    I do.

25         Q.    When did Clark make that statement?



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 139 6804

```
 1          A.   Just a moment.

 2               MR. CASTELLANO:  Just a point of

 3      clarification.  Does he mean that statement to law

 4      enforcement or that statement to those individuals?

 5               MR. BURKE:  The statement to law

 6      enforcement.  Thank you.

 7          A.   He made that specific statement on April

 8      12, 2016.

 9      BY MR. BURKE:

10          Q.   April 12, 2016?

11          A.   Yes.

12          Q.   That's when Ben Clark said that he assigned

13      the job to Alonso and Troup?

14          A.   Yes, that's when he told law enforcement

15      that.

16          Q.   Were you working on the task force and were

17      you present when Benjamin Clark entered his plea in

18      the United States District Court for the District of

19      New Mexico?

20          A.   I don't think so.

21          Q.   It's actually an exhibit.  And were you

22      aware that when that happened, he gave no specific --

23      basically no specifics about the Freddie Sanchez

24      killing?

25          A.   No, I wasn't present for that, nor have I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6804

 1    seen the plea agreement.

 2         Q.   Okay.  Well, it's a matter of record.  He

 3    said all he did was pass the paperwork and everybody

 4    knew what they had.  He didn't make any assignments.

 5    Does that surprise you?

 6         A.   No.

 7         Q.   And why doesn't it surprise you?  Because

 8    informants change their statements with some

 9    frequency?

10         A.   Partly that.  Partly also because when they

11    plead guilty, the judge has them explain what they

12    did and sometimes they offer more detail than what's

13    on the paperwork.

14         Q.   Okay.  And if I were to represent to you

15    that I've read the entry of plea, the Rule 11

16    advisement, and there's no additional details, would

17    that surprise you?

18         A.   No.

19         Q.   Because informants do sort of add and

20    embellish later on after they enter their plea?

21         A.   I don't agree with embellishment.  It could

22    be that, but sometimes they remember more once you've

23    asked them questions and they have time to think

24    about it.

25         Q.   All right.  So when he's asked some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

1    questions, such as:  Do you remember giving an

2    assignment to anyone, questions like that, then they

3    may remember more details?

4         A.   No, not necessarily.

5         Q.   All right.  Let me ask you to turn to 36.

6    And Mr. Benjamin did ask you about this.  This is,

7    again, Smurf remembering things.  So Smurf remembered

8    that four or five years after March 26, 2001, Joe

9    Gallegos talked to him about the 2001 homicides?

10        A.   He remembered having that conversation and

11   he believed that conversation happened four to five

12   years after.

13        Q.   Thank you.  I'd now like you to turn to 37.

14   Lawrence Torres.  His statement is that Edward Troup

15   was seated at a table on the second floor; is that

16   correct?

17        A.   That's part of his statement.

18        Q.   And Edward Troup says, "Don't come up.

19   This has nothing to do with you.  Don't come up

20   here."  Is that correct?

21        A.   Yes.

22        Q.   And so Edward Troup was really advising him

23   to steer clear of whatever might have been going on.

24   Is that -- according to Mr. Torres, is that the way

25   that happened?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 142 of 307

```
 1          A.   I don't know what Mr. Torres understood
 2     that to mean to him.
 3          Q.   Fair enough.  Looking at 38, Lawrence
 4     Torres remarks that Angel DeLeon had a scratch; is
 5     that correct?
 6          A.   Yes.
 7          Q.   And Angel DeLeon has not been brought into
 8     this case; he is still at large?
 9          A.   Correct.
10          Q.   And turning to 39, Ben Clark is talking
11     about Kyle Dwyer.  Do you see that there?
12          A.   I do.
13          Q.   He is deceased, is he not?
14          A.   Yes.
15          Q.   Mr. Dwyer.  Then turning to 40, I believe
16     you said this on earlier examination, the Crazy Town
17     Roswell Gang provided the paperwork; is that right?
18          A.   Yes.
19          Q.   Now, that is sort of a feeder gang?  Is
20     that --
21          A.   There are SNM members who come from that
22     gang.
23          Q.   And was the Crazy Town Roswell Gang -- were
24     they offended that one of their own turned into a
25     snitch, Mr. Castillo?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 43808

```
 1         A.   I don't know.
 2         Q.   What was the role of the Crazy Town Roswell
 3    Gang besides -- why did they provide the paper to the
 4    prison and the SNM?
 5         A.   I believe it's common practice for gang
 6    members who acquire paperwork on other gang members
 7    to provide that to the gang so they can clean their
 8    own house.
 9         Q.   And was Javier Alonso -- was he from
10    Roswell?
11         A.   I don't think he was.
12         Q.   You don't think he was.  Okay.  Thank you.
13    Let me ask you to look at 62.  Paperwork on Sanchez
14    was delivered from Arturo Garcia to Ben Clark
15    approving the murder, and that is a statement
16    attributed to these four people:  Samuel Gonzalez,
17    John Montano, Javier Rubio, and Joe Cheech Martinez;
18    is that correct?
19         A.   No.
20         Q.   Please tell me what was wrong with that.
21         A.   I don't believe Joe Martinez made that
22    statement.
23         Q.   Okay.  Samuel Gonzalez, John Montano, and
24    Javier Rubio did?
25         A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6809

```
 1          Q.   And at the time, Samuel Gonzalez and John
 2    Montano were in the same pod; correct?
 3          A.   Yes.
 4          Q.   Are they co-conspirators?
 5          A.   They're not.
 6          Q.   And they've not been charged?
 7          A.   I take that back.  They are
 8    co-conspirators, but they have not been charged.
 9          Q.   All right.  Did you get the impression that
10    this was an SNM pod, referring to the Freddie Sanchez
11    homicide?
12          A.   Yes.
13          Q.   And did you get the impression that
14    everybody except Castillo knew that Castillo was
15    going to be hit?
16          A.   Frank Castillo?
17          Q.   I'm sorry, Fred Sanchez.  Thank you.
18          A.   Can you repeat the question?
19          Q.   Yes.  On the 2007 homicide, Freddie
20    Sanchez, did you get the impression that everybody in
21    the pod knew about the hit except for the victim?
22          A.   I think Freddie Sanchez knew he was green
23    lit.
24          Q.   So basically everybody in the pod knew that
25    it was going to be a hit?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145

```
 1          A.   I don't know that everybody knew.  But it
 2   was common knowledge.
 3          Q.   And it was even common knowledge with the
 4   staff, the COs all knew that he was going to be hit?
 5          A.   I believe the STIU unit had an awareness of
 6   it.  I don't know about all the COs.
 7          Q.   And in fact, STIU -- they were very
 8   surprised that Sanchez was allowed to stay there.
 9   And they were very upset when they came in after the
10   weekend and found that he was still there but he was
11   dead?
12          A.   Yes, I think they put in a request to have
13   him moved.
14          Q.   And that request was ignored?
15          A.   I believe so.
16          Q.   I see.  Now, turning to 63, that's Samuel
17   Gonzales again.  He apparently knew that Cheeky,
18   that's Raymond, and Coquito, that's Brian, they were
19   supposed to hit Sanchez?
20          A.   Yes.
21          Q.   And when did he say that?
22          A.   One moment.  He told that to law
23   enforcement on February 22, 2017.
24          Q.   That's the first time that he spoke to law
25   enforcement?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6810

```
 1        A.    I'm not sure.  He was in the RPP Program,
 2   so he spoke with STIU before.
 3        Q.    Okay.  So because he went into the RPP
 4   Program, part of that is that he must sort of give
 5   statements about what his involvement in gangs had
 6   been prior to going into RPP?
 7        A.    Or his knowledge of anything that's
 8   occurred.
 9        Q.    All right.  So he may have spoken to -- and
10   have you seen the reports that may have been
11   generated as a result of his acknowledgment or his
12   familiarity with gang activity?
13        A.    I don't think I have.
14        Q.    All right.  But as far as your group, that
15   would have been February of 2017?
16        A.    Yes.
17        Q.    And were you in on that interview?
18        A.    I was not.
19        Q.    And have you ever met him?
20        A.    I have not.
21        Q.    And do you know the last time that he was
22   spoken to?
23        A.    I believe he testified in the last trial.
24   Does that count?
25        Q.    Okay.  Let's turn to 65.  John Montano
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6811

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6812

```
 1    mentions, "They'd be messed up if the paperwork on

 2    the guy I just got showed up.  Ben Clark also sent

 3    Arturo Garcia a list of names of people in the pod."

 4          I think on an earlier examination you

 5    referred to that as a roll call.  Have you seen that

 6    roll call?

 7    A.    No.

 8    Q.    You have not seen that letter?

 9    A.    No.

10    Q.    That was not seized by STIU?

11    A.    Not that I know of.

12    Q.    Do you know when Ben Clark was in that pod?

13    A.    June 27?  No.  June 28, 2007.

14    Q.    Okay.  And was he -- as far as you know,

15    was he -- I'm not going to do that.  Did you know

16    that he was moved before the homicide?

17    A.    I did.

18    Q.    All right.  Do you know how long before the

19    homicide he was moved?

20    A.    It was a day or two before.

21    Q.    Was he moved before Sanchez showed up at

22    the blue pod?

23    A.    I don't think so.

24    Q.    So you believe that he was there when

25    Sanchez showed up?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          A.   I believe so.
 2          Q.   Let me ask you to turn to 66.  Montano
 3     has -- well, were you present during any of the
 4     Montano debriefings?
 5          A.   I was.
 6          Q.   And he has told you that Edward Troup and
 7     Javier Alonso attempted to hide in his cell?
 8          A.   Yes.
 9          Q.   And is this where you're going to interview
10     him some more and see if he remembers anything more?
11          A.   No.  I believe it was on my first encounter
12     with him.
13          Q.   He said that?
14          A.   I can check.  Give me a second.
15          Q.   Please do.
16          A.   What was the question again?
17          Q.   The question was:  When you heard during
18     the debriefing of John Montano that they were hiding
19     or attempting to hide in his cell, did you ask him
20     about anything else he might have remembered or any
21     statements that he might have heard during that
22     rather odd activity?
23          A.   No, we didn't get into specifics on that
24     encounter.
25          Q.   And was that the first time that he was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6813

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 149    6814

 1  interviewed, as far as you know?

 2        A.   By the FBI?

 3        Q.   Yes.

 4        A.   Yes.

 5        Q.   And have you seen any STIU interviews or

 6  any other interviews by state law enforcement of Mr.

 7  Montano?

 8        A.   Not that I can recall.

 9        Q.   All right.  Thank you.  I'd like you to

10  turn to 73.  Ruben Hernandez.  And this is -- in the

11  document the declarant is an and/or, Edward Troup

12  and/or Jesse Trujillo.  When was Ruben Hernandez

13  first interviewed or when was the first time that

14  Ruben Hernandez gave a statement to either the FBI or

15  state authorities?

16        A.   I think the first time he actually wrote a

17  letter to the prison administration.  The date that I

18  have on the memo, because his letter is undated, is

19  July 11, 2007.

20        Q.   July 11, 2007, he wrote a letter to state

21  authorities regarding what he remembered about the

22  Freddie Sanchez homicide; is that correct?

23        A.   Yes.

24        Q.   And you've read the letter?

25        A.   I've read a transcript.  It's a little hard




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6814

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150

1    to understand.

2         Q.   I understand.  Would you take a look at it

3    now, and see if you agree with me that when he wrote

4    out that statement, it says that he ordered Jesse

5    Trujillo to cover the cameras?

6         A.   "He" being Ruben?

7         Q.   Yes.

8         A.   Just a moment.

9         Q.   Thank you.

10        A.   I don't see that it says Jesse ordered

11   Ruben to cover the cameras.

12        Q.   And actually, Edward Troup is not mentioned

13   in that part of the statement about covering the

14   cameras.  Isn't that true?

15        A.   Correct.

16        Q.   All right.  And then turning to 75, Ruben

17   Hernandez again is communicating with Jesse Trujillo,

18   and Jesse Trujillo says, "Just stand there," and

19   apparently Ruben was using a crutch at the time?

20        A.   Yes.

21        Q.   All right.  Did Ruben Hernandez say that he

22   put the wet toweling on the cameras?

23        A.   He tries to.

24        Q.   And then Trujillo ended up doing it?

25        A.   Ruben couldn't do it quite as well as they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   would have liked him to.
 2        Q.   So they were covering for each other, sort
 3   of?
 4        A.   I would say Jesse Trujillo was covering for
 5   Ruben.
 6        Q.   All right.  When you read the letter that
 7   Ruben Hernandez wrote shortly after the homicide to
 8   the STIU, I think, did you see the part where the
 9   upper tier was supposed to put cups on the cameras?
10        A.   Yes.
11        Q.   And something happened and they weren't
12   able to put the cups on the cameras?
13        A.   Yes.  I believe a CO found them.
14        Q.   A CO found them, and that was the upper
15   tier, so the whole upper tier was involved in the
16   homicide?
17        A.   I'm not sure.
18        Q.   But the one -- when you've read about this,
19   the way they've expressed it is:  The upper tier was
20   supposed to cover the cameras; right?
21        A.   I don't remember that.  I just remember
22   Ruben and Jesse Trujillo being involved with the
23   cameras.
24        Q.   Do you remember the cups part?
25        A.   I remember.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6816

```
 1        Q.   They were supposed to, but they may not
 2   have done it, the upper tier?
 3        A.   Yes.
 4        Q.   So they were co-conspirators, too?
 5        A.   Yes.
 6        Q.   And they weren't charged?
 7        A.   Correct.
 8        Q.   All right.  Please turn to 77.  Ruben
 9   Hernandez, Kyle -- once again, that's a person who is
10   deceased; right?
11        A.   Yes.
12        Q.   But Kyle supposedly asked Ruben to take
13   something to Samuel Gonzales, and the paperwork was
14   skimpy or something?  What was that about?
15        A.   It was a piece of paper that was folded up.
16        Q.   Do you know how that fits into this?
17        A.   No.
18        Q.   But that's not the paperwork that allowed
19   the green light, then?
20        A.   Not that I know of.
21        Q.   All right.  And -- but supposedly Ruben,
22   you know, went upstairs, Kyle asked Ruben, so, yeah,
23   Ruben went up to Gumby's cell?
24        A.   He did.
25        Q.   And then turning to 79, this is Chicky, so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6817

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 153 6818

```
 1   that's Raymond Rascon?  He's cutting the sleeves off
 2   it, and I believe you explained this, that's because
 3   there was a concern that Chicky would have had
 4   evidence such as DNA on his clothing?
 5        A.   I believe so.
 6        Q.   Turning to 81, it's Ruben talking to Brian
 7   or Edward again, so we have the either/or.  "First
 8   thing in the morning we need you to move the body."
 9   And actually, I believe it was Ruben and Brian Rascon
10   talking to each other, wasn't it?  If you want to
11   look, that would be fine.
12        A.   I believe he makes two statements that are
13   very similar, but he interchanges the names.
14        Q.   All right.  And we could look at his
15   written letter to see that?
16        A.   Yes.
17        Q.   Then he speaks only to Brian Rascon, and
18   said, "That's all we're asking," he told Ruben, when
19   he didn't want to clean the cell.  "Just clean the
20   cell."  And Ruben balked; is that right?
21        A.   Right.
22        Q.   And then in 84, again, Brian is telling
23   him, "Follow the order, Ruben," in effect?
24        A.   Yes.
25             MR. BURKE:  That's all I have, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6818

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 154 6819

```
 1    Excuse me.  Let me check with my co-counsel.

 2              THE COURT:  Certainly.

 3              MR. BURKE:  That's all I have.

 4              THE COURT:  Mr. Castle, do you want to go

 5    next?

 6              MR. CASTLE:  Thank you, Your Honor.

 7                        CROSS-EXAMINATION

 8    BY MR. CASTLE:

 9         Q.   Agent Stemo, you indicated earlier that

10    you've been an agent for two years; is that right?

11         A.   A little under.

12         Q.   A little under.  And did you go to the

13    Academy for that, or sometime --

14         A.   During that timeframe, yes.

15         Q.   During that timeframe.  And do you have a

16    particular specialty within the FBI?

17         A.   No.

18         Q.   I want to go through the statements like

19    the other attorneys did.  Okay?  But only certain

20    ones.  First, if we could start with Statement Number

21    1.  That's a statement where the person making the

22    statement is Leonard Lujan; is that right?

23         A.   Correct.

24         Q.   How many times have you personally talked

25    with Leonard Lujan?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6819

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

```
 1          A.   About four.
 2          Q.   Were those in interview formats, or debrief
 3     formats, or can you tell us a little bit about those?
 4          A.   I believe I was at two of his interviews;
 5     and then other times we met for administrative
 6     matters.
 7          Q.   So in what calendar years would those
 8     interviews have been?
 9          A.   2017.  It could have been 2016, as well.
10          Q.   During those interviews, were notes taken
11     or were they recorded?
12          A.   Notes.
13          Q.   Did you take the notes or someone else?
14          A.   It must have been someone else.  I wasn't
15     the lead on those.
16          Q.   Okay.  I want to show you one report.  I
17     show you a report that begins at page 42995 Bates
18     stamp.  Is that the report of one of the meetings
19     that you had with Mr. Lujan?
20          A.   Yes.
21          Q.   There should be some handwritten notes
22     somewhere concerning this meeting?
23          A.   Yes.
24          Q.   Was there a particular reason the interview
25     wasn't recorded?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6820

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6821

```
 1        A.   It's not our practice to record interviews
 2   with people that are cooperating, and we're not
 3   required to do so by policy.
 4        Q.   Well, what's the purpose behind that
 5   practice?
 6        A.   I don't know.  I'm not a policy writer.
 7        Q.   So you don't have any personal preference
 8   one way or the other?
 9        A.   No, not really.
10        Q.   So you could have recorded your interview
11   with Mr. Lujan?
12        A.   I could have.
13        Q.   It's not policy not to record; is that
14   right?
15        A.   It is policy that we obtain approvals
16   before that.
17        Q.   And did you ever attempt to get any
18   approvals?
19        A.   No.
20        Q.   Or are you aware of any attempts to get
21   approvals?
22        A.   No.
23        Q.   So this interview is January 5, 2017.  You
24   talked about another one.  Was it before or after the
25   January 5 interview?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6821

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157

```
 1          A.   I'm not sure.  I could have been mistaken
 2     and only been at one.
 3          Q.   Well, tell us what you remember about the
 4     two or one interviews.
 5          A.   I remember that interview.  It was, I
 6     think, in Bernalillo.
 7          Q.   And what about the second one you were
 8     thinking about recalling a little bit earlier?
 9          A.   I think I was meeting with Leonard, and he
10     might have told me that he needed to speak with his
11     attorney regarding medical issues.  It wasn't
12     anything substantive to the case.
13          Q.   Well, would that have been medical issues
14     concerning his mental health?
15          A.   I think he wanted, like, reading glasses
16     and a cane.
17          Q.   That's a second date you're talking about
18     that happening?
19          A.   I think so.
20          Q.   I'm going to approach you again with a
21     report.  Perhaps I need reading glasses.  I will
22     search my computer instead of using my eyesight.  I
23     should have showed you my computer.  Do you have that
24     report with you?
25          A.   I think I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6822

```
 1          Q.   Okay.  Wasn't it in that one report, in

 2    that interview, that Mr. Lujan spoke of his medical

 3    needs, and that would be at page 42606?

 4          A.   He talked about that.

 5          Q.   So there's two different times you're

 6    talking to him; right?

 7          A.   Yes.

 8          Q.   And in one he -- you make this report and

 9    he talks about his glasses; right?

10          A.   Um-hum.

11          Q.   Now, I want to talk about the second time

12    you talked to him.

13          A.   Yes.

14          Q.   What was the subject of that interview?

15          A.   I think I was actually giving him money on

16    his commissary, and he told me about the medical

17    needs, again.  It's not unusual for people to bring

18    up medical needs to us.

19          Q.   Okay.  So you were giving him money and he

20    was telling you about other things that he needed;

21    right?

22          A.   He was telling me to tell his attorney to

23    relay that to the marshals.

24          Q.   And did you do a report about the provision

25    of money to Mr. Lujan on that date?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6823

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159824

1     A.   No, but there are records of the request.

2     Q.   And then you indicated there were a total

3     of five.  What were the other three occasions that

4     you had contact with Mr. Lujan?

5     A.   I estimated about five.

6     Q.   Yes.

7     A.   It would be for the same reason.

8     Q.   So are these times where he'd call you or

9     you would go out to see him?

10    A.   On one occasion I called him.  I think he

11    was at Luna County at the time.  The other times I

12    would go to the facility.

13    Q.   Going back to Statement Number 1, did Mr.

14    Lujan indicate to you where this -- or is this from

15    an interview that you conducted of Mr. Lujan,

16    Statement Number 1?

17    A.   No, this was led by Bryan Acee.

18    Q.   So in your review of Mr. Acee's report, did

19    Mr. Lujan indicate where this conversation occurred?

20    A.   The one in Statement 1?

21    Q.   Yes.

22    A.   All he says is, it occurred at Southern New

23    Mexico Correctional Facility.

24    Q.   In the investigation, are you aware of

25    anyone who could corroborate that meeting?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 6824

```
 1         A.    With Mr. Garcia?

 2         Q.    Between Mr. Garcia and Mr. Lujan.

 3         A.    No.

 4         Q.    So there were no corrections officers that

 5    saw the two of them discussing matters?

 6         A.    I haven't seen any reports of that.

 7         Q.    No other inmates that saw that happening?

 8         A.    Not that I'm aware of.

 9         Q.    And isn't that the same meeting that both

10    Statement Number 1, Statement Number 2, Statement

11    Number 3, and Statement Number 4 happened?  Was it

12    all at the same meeting between Mr. Garcia and Mr.

13    Lujan?

14         A.    I believe there were two meetings where

15    they discussed the pending hits.

16         Q.    And I take it with regard to both of those

17    meetings, there's no other witnesses who saw or

18    recounted those meetings?

19         A.    I believe Mr. Lujan made a statement that

20    one of the COs told him he had them on camera in the

21    rec yard.  But I've never seen a report that

22    corroborates what Mr. Lujan was told.

23         Q.    In fact, he said, I believe, that the

24    warden of the facility warden, Tafoya, said he had

25    videotape of that meeting and confronted Mr. Lujan
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about that; is that right?
 2         A.   I think that's what I'm referring to.
 3         Q.   And did you ever find any reports about --
 4    from Warden Tafoya or anyone saying that they had
 5    videotape of the meeting between Billy Garcia and Mr.
 6    Lujan?
 7         A.   No, I haven't.
 8         Q.   With regards to those meetings, essentially
 9    what Mr. Lujan was saying is that Mr. Garcia made the
10    order to kill these two individuals; is that right?
11         A.   Yes.
12         Q.   Now I want to flip over a little bit to
13    Leroy Lucero.  Do I have this right, that Mr. Lucero
14    is telling you the order came from a man by the name
15    of Angel Munoz?
16         A.   From my understanding is, Mr. Garcia
17    approached Mr. Lucero --
18         Q.   Hold on.  I'm just asking that question.
19    Did he say the hit came from Angel Munoz?
20         A.   No, he confirmed the hit with Angel Munoz.
21         Q.   So the phone call with Angel Munoz happened
22    after Mr. Garcia entered into the unit?
23         A.   I don't know when the phone call happened.
24         Q.   But doesn't Mr. Lucero state the first time
25    he heard about the hit was when he made a phone call
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6826

```
 1   and confirmed the hit with Angel Munoz?

 2        A.   I don't know that he says that.

 3        Q.   Well, does he indicate that the green light

 4   was put on any of these individuals prior to ever

 5   meeting with Mr. Garcia?

 6        A.   He didn't indicate that.

 7        Q.   Who is Alfred Lino Giron?

 8        A.   He's an SNM member, and he's an SNM leader.

 9        Q.   Was he the leader at Southern for a time

10   period prior to these murders?

11        A.   He was.

12        Q.   When he left the facility, who did he leave

13   in charge of the facility?

14        A.   I'm not sure.

15        Q.   Do you recall that he left Leroy Lucero in

16   charge of the facility?

17        A.   I don't know that.

18        Q.   In your view of the reports, had Mr. Giron

19   put a red light, meaning a stop, on the murder of

20   these two individuals?

21        A.   He put a stop on all green lights.

22        Q.   And after he left, do you know who took

23   charge of the facility.

24        A.   I don't.

25        Q.   You don't recall Leroy Lucero ever saying
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163828

```
 1   that he took charge of the facility?
 2        A.   I don't.
 3        Q.   How many interviews did you do with Mr.
 4   Lucero that you were present at?
 5        A.   One.
 6        Q.   I think you talked earlier about a
 7   three-way call that was placed.  Do you recall that?
 8        A.   Yes.
 9        Q.   And who was the -- tell us about that.
10   Tell us what happened.
11        A.   Mr. Lucero could not remember which inmate
12   approached him, telling him he needed to make a
13   three-way call.  He had an inmate call Angel Munoz,
14   as far as I know, and that's how that happened.
15        Q.   So was it Mr. Lucero wanting to get a call
16   to Angel Munoz and using a third party?
17        A.   Yes.
18        Q.   And did he indicate why he used a third
19   party, instead of using his own phone privileges?
20        A.   He did not.  But I believe it was because
21   Angel Munoz was in custody at the time, as well.
22        Q.   Do you recall that Angel Munoz was actually
23   on the streets at the time?
24        A.   He could have been.
25        Q.   Well, you can't call from one facility to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6828

1    another prison?

2         A.   Right.

3         Q.   So does it make sense that it would have

4    been someone on the streets that they would have been

5    calling?

6         A.   It's possible.

7         Q.   Well, is there a possibility that Leroy

8    Lucero could have been placing a three-way call to an

9    inmate at the other prison in the New Mexico

10   Corrections Department?

11        A.   It's not unheard of, where one inmate calls

12   a third party and then another inmate calls that same

13   third party or someone with them; they put the phones

14   on speaker and talk to each other that way.

15        Q.   So I take it you didn't try to figure out

16   during your interview of Mr. Lucero the details of

17   that phone call?

18        A.   No, we didn't ask enough questions about

19   that.

20        Q.   So if I get this right, Mr. Lujan says that

21   the order came from Billy Garcia, and Mr. Lucero says

22   the order came from Angel Munoz.  Do I have that

23   right?

24        A.   No, Mr. Lucero confirms the hit with Angel

25   Munoz.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And did Mr. Lujan indicate that the hit had

2    to be confirmed with Angel Munoz?

3    A.   I don't think Mr. Lujan talks about Mr.

4    Munoz at all.

5    Q.   Does he talk about Leroy Lucero at all?

6    A.   No, I don't think he does.

7    Q.   And does Leroy Lucero mention Mr. Lujan at

8    all?

9    A.   I think he does.  He did not believe that

10   Mr. Lujan was in a position to make decisions.

11   Q.   So according to Mr. Lujan's story, the

12   conspiracy that was occurring didn't include Leroy

13   Lucero?

14   A.   That's correct.

15   Q.   And Leroy Lucero's story is that the

16   conspiracy he was part of didn't include Leonard

17   Lujan?

18   A.   Correct.  But Mr. Lucero also says that

19   Mr. Billy Garcia told him he didn't need him for

20   anything.

21   Q.   I understand.  That wasn't the question,

22   though, was it, Agent?

23   A.   No, it wasn't.

24   Q.   Let's go to Statement 6.  In that, someone

25   indicated that Leonard Lujan talked to Eugene

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6830

 1    Martinez and told him, "I'm telling you right now
 2    where it's coming from and everything," referring to
 3    Billy Garcia; is that right?
 4         A.   Yes.
 5         Q.   Now, when Leonard Lujan was interviewed,
 6    did he ever say that he told Mr. Martinez where the
 7    hit was coming from in any of his interviews?
 8         A.   I can check.
 9         Q.   And if so, tell us which ones.
10         A.   He does say that.
11         Q.   He does say that in which interview?
12         A.   The September 12, 2007, interview.
13         Q.   And what does he specifically say?
14         A.   "So the next day I went to, hmm, to school,
15    to edu, the education building, and that's when I
16    spoke with Eugene Martinez.  I took him around the,
17    the, the hallway to the other side where it's pretty
18    isolated, not too many people go back there.  And I
19    told him what Wild Bill wanted to done, what Billy
20    Garcia wanted done.  And I told him how, how he
21    wanted it done, and basically what time he wanted it
22    done, in the morning, you know."
23         Q.   So you took from that that he said that
24    Billy Garcia made these specific orders, not just
25    that this is what the order was?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    Yes.

 2          Q.    Were there any witnesses that corroborated

 3    that meeting at the Southern Correctional Facility?

 4          A.    Aside from Eugene Martinez?

 5          Q.    Yes.

 6          A.    No.

 7          Q.    I guess what they're saying is:  They went

 8    to a remote area of the yard and had this

 9    conversation, or behind one of the buildings; is that

10    right?

11          A.    Yes.

12          Q.    Were there any corrections officers who

13    said, "Hey, we saw this unusual meeting behind a

14    building; these two inmates alone were having a

15    meeting behind a building"?  Did any of them say

16    that?

17          A.    None that I'm aware of.

18          Q.    Was Leonard Lujan a suspect from the early

19    days of the investigation into the murders of Garza

20    and Castillo?

21          A.    I don't know, since I wasn't there for the

22    early parts of the investigation.

23          Q.    Oh, I know, but you've reviewed the

24    reports; right?

25          A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6832

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 168

1    Q.   And do you recall Mr. Lujan's name was
2    mentioned by various informants as to having been
3    involved?
4    A.   It depends on which investigation you're
5    talking about.  Are you talking about the New Mexico
6    State investigation?
7    Q.   Yes.
8    A.   No, it was not.
9    Q.   It was not.  And was Eugene Martinez?
10   A.   He was.
11   Q.   And yet no Corrections officer reported
12   having seen Eugene Martinez do something unusual and
13   having this meeting behind a building?
14   A.   Not that I'm aware of.
15   Q.   Let's go to Statement Number 11, if we
16   could.  Earlier you indicated that Leroy Lucero had
17   confirmed with Angel Munoz the hit that Billy had
18   told him about; is that right?
19   A.   Yes.
20   Q.   And in this statement, Statement Number 11,
21   you say that Munoz -- I'm sorry, what's stated here
22   is that Leroy Lucero said that Munoz over the phone
23   said, "Something has to happen, carnal.  Billy is on
24   his way."
25   A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6833

1    Q.   So would this have happened before

2    Mr. Garcia was at Southern?

3        A.   I don't know.

4        Q.   What do you take from that statement?

5        A.   I can infer that Mr. Garcia had not been at

6    Southern when the phone call happened.

7        Q.   When did the conspiracy to kill these two

8    inmates start generally?

9        A.   I'm not sure as to the date and time.

10       Q.   Would it have been before Mr. Garcia ever

11   arrived at Southern New Mexico Correctional Facility?

12       A.   Yes.

13       Q.   So in this statement Leroy Lucero stated

14   that Angel Munoz said that several hits were supposed

15   to happen; is that right?

16       A.   Yes.

17       Q.   How many hits?

18       A.   I don't know.

19       Q.   I take it this is from your interview with

20   Mr. Lucero in 2017?

21       A.   Just a moment.  I'm not sure if that's what

22   he said in January 2018.

23       Q.   Oh, it's January 2018.  I'm sorry.  You're

24   not sure what he said then?

25       A.   No, I don't have the transcript.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6834

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 170

1         Q.    There is a transcript of that?

2         A.    I believe there is.

3         Q.    And so that would be an instance where it

4    was actually recorded?

5         A.    Yes.

6         Q.    So why did you record Mr. Lucero's

7    statement in 2018, but you're not recording Lujan's

8    statements when he made them?

9         A.    I think we did it because we didn't want to

10   get anything wrong.

11        Q.    Fair enough.  And that wasn't a concern

12   when you were meeting with Mr. Lujan?

13        A.    No, it wasn't.

14        Q.    Statement 14, Billy Garcia wanted knowledge

15   of the plan kept to very few individuals.  Does Mr.

16   Lujan say that was during the first meeting or the

17   second meeting?

18        A.    I can check.

19        Q.    Actually, I'll move on.  It's probably not

20   relevant to these proceedings.

21              There was some indication that before

22   Mr. Garcia ever made it to the prison, that a person

23   by the name of Ernest Guerrero was supposed to bring

24   the message down of the murders?

25        A.    Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6835

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

```
 1        Q.   So was this everyone at the facility, or
 2   certain members of the SNM knew that these murders
 3   were supposed to happen, but they were waiting for
 4   word from someone to give blessing to these murders?
 5        A.   I don't know.
 6        Q.   Okay.  Well, what's your understanding?
 7        A.   I believe there were green lights that
 8   people were aware of.  I don't know conclusively that
 9   Frank Castillo, Rolando Garza were on that list.
10        Q.   Did Ernest Guerrero ever go to Southern the
11   months before the murders here?
12        A.   I don't know.  I've never verified that.
13        Q.   Have you or your colleagues interviewed Mr.
14   Guerrero?
15        A.   I don't think we have.
16        Q.   So would Mr. Guerrero be a co-conspirator,
17   as well?
18        A.   Yes.
19        Q.   And who gave him the orders to bring down
20   to Southern?
21        A.   I don't know.
22        Q.   Who told you that Mr. Guerrero was supposed
23   to have done that?
24        A.   Mr. Lujan.
25        Q.   How did he know about that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172 6837

```
 1          A.    Mr. Billy Garcia told him.

 2          Q.    So it was after the fact?

 3          A.    After which fact?

 4          Q.    After Mr. Guerrero was supposed to come

 5    down and didn't come down, Mr. Garcia said something

 6    to the effect of he should have come down and told

 7    us?

 8          A.    Yes.

 9          Q.    So Mr. Guerrero -- according to at least

10    Leonard Lujan, Billy Garcia didn't know that Mr.

11    Guerrero hadn't made it to Southern?

12          A.    I don't know that he did or did not make

13    it.  What Mr. Lujan was told was that a message was

14    given to Mr. Guerrero, and he did not relay that

15    message to Mr. Lujan.

16          Q.    Was there paperwork that was involved that

17    had to be shown to anyone for these murders to

18    happen?

19          A.    Not that I'm aware of.

20          Q.    Do you recall a witness by the name of

21    Jimmie Gordon?

22          A.    Yes.

23          Q.    And him talking about paperwork on the

24    murders being provided to Leroy Lucero?

25          A.    I don't remember that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6837

```
 1          Q.   You're not familiar with his statements?
 2          A.   I remember generally he was asking for
 3    information from the librarian.
 4          Q.   I think earlier today we heard that Jimmie
 5    Gordon was a co-conspirator.  Do you recall that?
 6          A.   Yes.
 7          Q.   What was his role?
 8          A.   He was in, like, a meeting with several SNM
 9    members and they were discussing green lights.
10          Q.   And who was at that meeting?
11          A.   I don't know, off the top of my head.
12          Q.   Leroy Lucero was one, though?
13          A.   I don't know.
14          Q.   But Mr. Garcia was not; do you recall that?
15          A.   I don't know.
16          Q.   So do you know the identities of any of the
17    people that were involved in this meeting?
18          A.   No, not off the top of my head.
19          Q.   Whoever they were, would they all be
20    co-conspirators?
21          A.   I would assume so.
22          Q.   So were they all participating in the
23    agreement to kill these two individuals?
24          A.   I believe so.
25          Q.   Including Mr. Gordon?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6838

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6839

1      A.   I don't think -- he's not an SNM member.

2  He was there because they were using him.

3      Q.   So is it fair to call him a co-conspirator,

4  then?  Is that the correct designation?  Or a

5  witness?

6      A.   Personally, I'd call him a witness.

7      Q.   So he wasn't part of the agreement to kill?

8      A.   No.

9      Q.   Let's go to Statement Number 16.  Freddie

10 Munoz said he was part of a committee that sanctioned

11 the hit.  Do you know, did he indicate who was part

12 of the committee?

13     A.   I think he has, but I don't remember who

14 was there.

15     Q.   So I take it all the members of the

16 committee would be co-conspirators, as well?

17     A.   Yes.

18     Q.   Did he tell you how many people?

19     A.   No.

20     Q.   Did he tell you where this took place?

21     A.   At PNM.

22     Q.   Did he tell you where at PNM?

23     A.   Not that I remember.

24     Q.   Was Billy Garcia present during that

25 meeting, according to Freddie Munoz?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6839

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 175

```
 1          A.   I don't know.

 2          Q.   So was this a statement that he relayed to

 3   Mr. Garcia?

 4          A.   I don't know.

 5          Q.   Was Mr. Guerrero at that meeting?

 6          A.   I don't know.

 7          Q.   Are you familiar with an individual by the

 8   name of Jake Armijo?

 9          A.   Yes.

10          Q.   And in the investigation was there

11   information developed that Jake Armijo brought down

12   the hit order on these two individuals who were

13   murdered on March 26?

14          A.   I think Mr. Lucero and Mr. Armijo had

15   confirmation, as well.

16          Q.   So was Jake Armijo a co-conspirator on

17   these murders?

18          A.   He could be.

19          Q.   Did he ever admit to you that he brought

20   down information, or to your colleagues -- let me

21   start that over.  Too many pronouns and mixed

22   metaphors there, whatever.

23               Did Jake Armijo ever indicate to you or any

24   of your colleagues that he participated in any

25   fashion in the murder of these two individuals?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6840

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176

```
 1        A.   No.
 2        Q.   I think you may have been asked this, but
 3   I'm not sure.  Was Frederico Munoz ever charged with
 4   his participation in the murders of Garza and
 5   Castillo?
 6        A.   I'm not sure.  It could be an overt act for
 7   his RICO indictment.
 8        Q.   And the members of the committee, whoever
 9   they may be -- were they indicted?
10        A.   I'm not sure.
11        Q.   Have any of them been interviewed?
12        A.   I'm not sure.
13        Q.   Are you aware of any corroboration by
14   anybody, whether it be a corrections officer, STIU
15   officers, or other inmates that could corroborate
16   this statement here in Number 16?
17        A.   None that I'm aware of.
18        Q.   Let's go to Statement Number 30.  This is a
19   statement that Eugene Martinez -- says Eugene
20   Martinez, I guess, overhears Leonard Lujan talking to
21   Willie Amador and Jesse Ibarra; is that correct?
22        A.   I believe so.
23        Q.   So where did that discussion happen?
24        A.   Just a moment.  I think Statement Number 30
25   is incorrect.  What it actually says is, Lujan told
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6841

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176

1    Martinez to tell SNM members Willie Amador and Jesse

2    Ibarra to handle that.

3        Q.   I'm sorry, so it's Eugene Martinez who is

4    talking to Willie Amador and Jesse Ibarra?

5        A.   No, it's Eugene Martinez talking to Leonard

6    Lujan.

7        Q.   And he's relaying that he recruited Amador

8    and Ibarra to do the murders?

9        A.   Essentially.  He doesn't say it that way.

10       Q.   Well, you said -- I'm trying to paraphrase.

11   Is that a fair characterization?

12       A.   Yes.

13       Q.   And so has anybody corroborated that Willie

14   Amador and Jesse Ibarra were part of this conspiracy?

15       A.   No.

16       Q.   Does Leonard Lujan say that happened in any

17   of his interviews?

18       A.   I don't think he mentions Willie Amador or

19   Jesse Ibarra.

20       Q.   So, again, we have an instance where Eugene

21   Martinez is talking about a conspiracy involving

22   Jesse Ibarra and Eugene Martinez, and Mr. Lujan is

23   talking about a conspiracy, and they're not included?

24       A.   Correct.

25       Q.   Would this have been the day of, the day

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6842

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178

```
 1    before the murders, or a week before?
 2         A.    The day before.
 3         Q.    So would this discussion have been behind
 4    the building?
 5         A.    Martinez was walking back to his spot from
 6    the visitation room, and they met behind the chapel.
 7         Q.    So is this a separate meeting than we
 8    talked about earlier?
 9         A.    I don't know.
10         Q.    31 is a statement by Eugene Martinez
11    saying, "Christopher Chavez heard about the hit on
12    Garza and volunteered to participate."  Where did
13    that conversation take place?
14         A.    Just a moment.  In the pod they resided in.
15    They didn't say where exactly.
16         Q.    Did he say when?
17         A.    March 25, 2001.
18         Q.    And I take it Chavez did not tell Martinez
19    how he had heard about the hit?
20         A.    No.
21         Q.    Going to Number 32, so this is a statement
22    by Eugene Martinez saying that Willie Amador asked
23    Eugene to be the lookout during the Garza murder,
24    "and if something happens, you already know"; is that
25    right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6843

```
 1          A.   Yes.

 2          Q.   Was Eugene Martinez a lookout in the murder

 3     or a participant in the murder?

 4          A.   He was both.

 5          Q.   To your knowledge, did Mr. Amador

 6     participate in the murders?

 7          A.   No.

 8          Q.   And has Mr. Amador ever been interviewed?

 9          A.   No.

10          Q.   Is he alive?

11          A.   I take that back.

12          Q.   I'm sorry?

13          A.   I think he was interviewed by Corrections

14     staff or New Mexico State Police.

15          Q.   Fair enough.  Right in the beginning of the

16     case; right?

17          A.   Yes.  He was not interviewed by the FBI.

18     And he's deceased.

19          Q.   And do you know when he died?

20          A.   I don't remember the year off the top of my

21     head.

22          Q.   Would it have been after the FBI started

23     investigating these 2001 murders?

24          A.   Which time?

25          Q.   Yeah.  Well, fair enough point.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6844

 1                   Number 33.  This is a statement by Eugene
 2    Martinez saying, "While strangling Garza, someone in
 3    the room yelled 'Close the door'"?
 4         A.   Yes.
 5         Q.   So is Mr. Martinez -- where is Mr. Martinez
 6    at the time that's happening?  Is he in the cell?  Is
 7    he not?
 8         A.   He was not in the cell.
 9         Q.   Was he at the doorway watching?
10         A.   He was at the entrance to the pod door.
11         Q.   Okay.  And so he says he doesn't know who
12    yelled it?
13         A.   Correct.
14         Q.   So at that point he doesn't know who the
15    participants are in the strangulation at all?
16         A.   No, he knew.  He saw people enter the cell.
17         Q.   Okay.  And then what does he say after
18    that?  Did he participate in the murder other than
19    being at the pod door?
20         A.   He goes in and offers assistance.
21         Q.   And did he do more than offer the
22    assistance?
23         A.   No, he helped.
24         Q.   What did he say he did?
25         A.   He entered the room and jumped onto Garza's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6845

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 184846

```
 1    legs.
 2         Q.   And what were his words when he offered to
 3    help?
 4         A.   I don't think he said anything.
 5         Q.   So he just participated, he jumped in?
 6         A.   Yes.
 7         Q.   Number 34 is a statement by Eugene where he
 8    says that he was approached by Leonard Lujan and that
 9    Leonard Lujan told him to go talk to Willie Amador
10    about the murders; is that right?
11         A.   Yes.
12         Q.   Is that also a statement -- well, did Mr.
13    Lujan say that happened?
14         A.   No.
15         Q.   Have you had an occasion to interview him
16    since Mr. Martinez made this statement?
17         A.   I think we could have found the time.
18         Q.   No, have you?
19         A.   Have we?  No.
20         Q.   Let's go to 36.  Have you participated in
21    an interview of Lawrence Torres?
22         A.   Somewhat.
23         Q.   If you could explain.
24         A.   I met with him before.  We've talked about
25    it briefly.  But I wouldn't say I interviewed him
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6846

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 182847

```
 1   about it.
 2        Q.   Have you talked to him about the murders?
 3        A.   Yes.
 4        Q.   Did you talk to him about his mental
 5   health?
 6        A.   No.
 7        Q.   Did he discuss his mental health?
 8        A.   No.
 9        Q.   Or his desire to testify?
10        A.   He said he would testify.
11        Q.   And while you were talking to him, did you
12   notice anything about his mental health?
13        A.   I think he has, like, a kidney disease or
14   something similar to that, that's affecting his
15   physical abilities.
16        Q.   Did he indicate that he participated in any
17   fashion in the murders?
18        A.   No.
19        Q.   Did he witness the murders?
20        A.   He thinks he did, one of them.
21        Q.   When you say he thinks he did, is he not
22   sure?
23        A.   No, that's not it.  He saw Angel DeLeon and
24   Edward Troup disassembling the laundry bag.  He heard
25   a commotion and looked out.  He saw Joe Gallegos and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6847

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 183848

1    Angel DeLeon enter Fred Castillo's cell.  He saw them

2    enter the cell.  He heard the struggle.

3         Q.   So he doesn't think -- he actually is a

4    percipient witness?

5         A.   Yes.

6         Q.   And I think on this statement, it's how

7    long after the murders?

8         A.   About two years.

9         Q.   And does he say where that happened?

10        A.   Where what happened?

11        Q.   Where that discussion happened, the one

12   that's recounted in 36.

13        A.   That's actually Leroy Lucero.

14        Q.   Okay.  Did Mr. Lucero recount where he had

15   this discussion with Mr. Gallegos?

16        A.   Yes, at PNM.

17        Q.   And I take it because you don't have source

18   here as Lawrence Torres, that Lawrence Torres has not

19   confirmed that happened?

20        A.   Are we looking at the same statement?

21        Q.   It says, "Lawrence Torres saw and was

22   concerned Torres might snitch."  Well, I'll go on,

23   actually.

24             Number 38, if we could go to that.

25   Lawrence Torres.  This is a statement by Lawrence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6848

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6849

```
 1    Torres; right?

 2         A.   Yes.

 3         Q.   Okay.  I got one up right.  So Lawrence

 4    Torres made the statement when?

 5         A.   2003.

 6         Q.   He indicated that Angel DeLeon had a

 7    scratch on his finger; is that right?

 8         A.   Yes.

 9         Q.   Were there examinations done of all the

10    inmates after the murders?

11         A.   I believe so.

12         Q.   And was there -- have you seen any

13    photographs of these scratches on Mr. DeLeon's

14    finger?

15         A.   No.

16         Q.   Was there any female CO that said that she

17    had this --

18         A.   Not that I'm aware of --

19         Q.   -- discussion?

20         A.   -- no.

21         Q.   If you go to Statement Number 67.  We're

22    getting towards the end.

23         A.   Okay.

24         Q.   Maybe if I just read it to you.  The source

25    is Jimmie Gordon, the declarant is Jimmie Gordon, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6849

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6850

```
 1   he said he asked to get information on Garza from
 2   Geraldine Martinez?
 3        A.   Yes.
 4        Q.   Had Geraldine Martinez been interviewed by
 5   you and your colleagues?
 6        A.   I don't think so.
 7        Q.   Was this printed information that they
 8   wanted?
 9        A.   I believe so.
10        Q.   And do you know when Jimmie Gordon was
11   asked to get that information on Garza in relation to
12   the murders?
13        A.   No, I don't.
14        Q.   And did he indicate who asked him to get
15   the information on Garza?
16        A.   No.
17        Q.   Do you recall him saying Leroy Lucero asked
18   him?
19        A.   No, I don't.
20        Q.   Let's go to 68.  This is where Gerald
21   Archuleta says that he was going to have a shoot-out
22   apparently with Baby Zack, and Baby Zack wanted to
23   kill him; is that right?
24        A.   Yes.
25        Q.   And in the context of that, apparently,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6850

```
 1    according to Gerald Archuleta, Baby Zack says:  "I'm

 2    here to kill you because Billy Garcia told me to kill

 3    you," something to that effect.  Or tell us what he

 4    said.

 5         A.   It's pretty lengthy.

 6         Q.   Okay.  Maybe summarize for us.  All I want

 7    really is what Baby Zack's words are, because that's

 8    what we're talking about, is his statements, Baby

 9    Zack's statements.

10         A.   Gerald did not tell us what Baby Zack

11    exactly told him.

12         Q.   Okay.  Did he summarize what Baby Zack told

13    him?

14         A.   No, not really.  All he said is, Well,

15    there's an issue between Billy Garcia and Gerald

16    Archuleta after the double murders involving Julian

17    Romero.  They had a meeting where they couldn't

18    resolve the issue, and he says this:  "The two men

19    did not resolve the dispute, and Billy Garcia would

20    rather send his nephew to try and kill Archuleta."

21         Q.   Did he say how he knew that?

22         A.   I don't think he did.

23         Q.   So we don't know the source of that

24    information?

25         A.   We might have it.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Not from Mr. Archuleta?

 2        A.   Right.

 3        Q.   And I take it he's not saying that Baby

 4   Zack walked up with a gun and said, "Hey, I'm here to

 5   shoot you because there is that disagreement between

 6   Julian Romero and Gerald Archuleta, and my cousin

 7   sent me to murder you"?  It wasn't anything like

 8   that; right?

 9        A.   I don't think so.

10        Q.   Did he say Billy Garcia told him -- did he

11   go up and say to Gerald Archuleta:  I had a

12   conversation directly with Billy Garcia where he told

13   me to give these orders, or anything like that?

14        A.   I don't think that's how that works.

15        Q.   Okay.  There was shooting and Gerald

16   Archuleta made some assumptions about why it

17   happened, based upon the relationship of Baby Zack

18   and Billy Garcia?

19        A.   I think that's fair to say.

20        Q.   Did that shooting have any relationship to

21   the 2001 murders?

22        A.   It's my understanding part of the reason

23   the issue started was because Gerald Archuleta

24   disagreed with those green lights and those hits

25   being carried out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6853

```
 1        Q.   Because those were buddies of his of some

 2   sort?

 3        A.   I think Frank Castillo and Rolando Garza

 4   were regarded as good brothers.

 5        Q.   Did Gerald Archuleta ever indicate he

 6   talked to Billy Garcia about this personally?

 7        A.   I think he has.

 8        Q.   Well, do you recall that Mr. Garcia went to

 9   talk to Gerald Archuleta and told him not to try to

10   kill Julian Romero and to stop doing that kind of

11   conduct?

12        A.   Yeah, I think that's the conversation I'm

13   talking about.

14        Q.   They didn't have a sit-down conversation

15   about Baby Zack and what Baby Zack did --

16        A.   No.

17        Q.   -- or didn't do?  I guess he never shot

18   Gerald Archuleta; right?

19        A.   No.  I think Gerald Archuleta shot Baby

20   Zack.

21        Q.   You'd indicated at one point that Billy

22   Garcia had made a statement to Leonard Lujan that he

23   didn't want knowledge of the murders to be spread

24   around to other people essentially; is that right?

25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6853

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189854

```
 1        Q.   And then you indicated that you said that
 2   was probably because Billy Garcia wanted no one to
 3   know.  Is that your interpretation, or is that
 4   something that Mr. Lujan said?
 5        A.   I think that's my interpretation.
 6        Q.   Can you go back to Statement 36?  This is
 7   where Joe Gallegos or Leroy Lucero says Joe Gallegos
 8   told him that Lawrence Torres saw him, and was
 9   concerned Torres might snitch.  Do you see that?
10        A.   Yes.
11        Q.   During that conversation between Leroy
12   Lucero and Joe Gallegos, did he mention Billy Garcia
13   at all?
14        A.   No.
15        Q.   And in regards to this entire chart of
16   statements, are we to assume that if Billy Garcia is
17   not mentioned in one of the blocks that -- during
18   that conversation that is being relayed in those
19   little blocks of information, that Billy Garcia's
20   name was not mentioned by the witness, by the
21   declarant or the source?
22        A.   Not necessarily.  Since I wasn't part of
23   making the chart, I can't 100 percent say yes or no
24   to that.
25        Q.   Well, can you recall any statements by any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6854

```
 1    of the sources or the declarants in this chart where
 2    they mention Billy Garcia that's not set forth in the
 3    chart?
 4          A.    I think I can.
 5          Q.    Okay.
 6          A.    Let's see.  The report that mentions
 7    Frederico Munoz being part of the committee that
 8    sanctioned Castillo and Garza.  I think in that same
 9    report he speaks with Billy Garcia, who confirms he
10    was part of it.
11          Q.    That's a later interview; right?  That's
12    something he said happened a few years after the 2001
13    murders?
14          A.    Yes.
15          Q.    That wouldn't be a co-conspirator
16    statement?
17          A.    Well, he was part of the conspiracy in that
18    he ordered the green lights.
19          Q.    Fair enough.  So when Freddie Munoz is
20    relaying this, is he saying he and Billy Garcia are
21    having a discussion about how the hit went down, et
22    cetera?  What were the circumstances?  What I'm
23    trying to get at is whether it was a course or
24    furtherance of the conspiracy, was it part of the
25    conspiracy, that discussion between Mr. Munoz and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6855

1   Mr. Garcia?

2        A.   I would say they were just discussing the

3   conspiracy.

4        Q.   So it wouldn't have been, "Hey, we need to

5   keep these witnesses quiet, or we need to do this,

6   that, or the other, to try to get away with the

7   murder"?

8        A.   Well, we don't know the full extent of the

9   conversation.

10       Q.   Well, we're here today to talk about it.

11   What's written in the report about the conversation

12   that allegedly happened between Frederico Munoz and

13   Billy Garcia after the 2001 murders?

14       A.   Munoz had a personal conversation with

15   Billy Garcia after the hits on Garza and Castillo,

16   whereby Garcia admitted to the killings.

17       Q.   Have you talked to Mr. Munoz?

18       A.   Yes.

19       Q.   On how many occasions?

20       A.   A few, less than five.

21       Q.   Okay.  And were those formal interviews?

22       A.   Yes.

23       Q.   How many?

24       A.   I couldn't give you an accurate number off

25   the top of my head.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.    I mean, is it more than two?

2    A.    Maybe two; it could be three.

3    Q.    And in those interviews, did he expand at

4    all on the statement you just discussed concerning

5    Mr. Garcia and he?

6    A.    Not the ones that I've been at.

7    Q.    He's not a particularly shy guy about

8    talking about things, is he?

9    A.    No.

10    Q.    He's pretty loquacious?

11    A.    Yes.

12    Q.    And he didn't give you any more details

13    about this alleged discussion with Billy Garcia?

14    A.    No, I don't think the interviews I was at

15    we were talking about Trial 2 defendants.

16    Q.    Was he ever given one of those

17    questionnaires where you write --

18    A.    Yes.

19    Q.    I just want to make sure for the record we

20    understand what I'm talking about.  It's probably,

21    whatever, 100 questions; is that right?

22    A.    I think it's like 200.

23    Q.    Okay, 200.  And there's facts of the case

24    put into the body of the questionnaire?

25    A.    The questions about facts of the case?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Yes.  Right.  It's not just an open-ended
 2   question like:  What do you know about this murder?
 3   It has more detail than that; is that right?
 4        A.   It does.
 5        Q.   And actually just as a kind of background
 6   question, how many different witnesses were those
 7   questionnaires provided to, just estimate?
 8        A.   More than 10, less than 25.
 9        Q.   And in Mr. Munoz' questionnaire, did he
10   provide any more details concerning this alleged
11   discussion with Mr. Billy Garcia, like where it
12   happened, where the discussion happened?
13        A.   I'm not sure.  I don't think I've read it
14   lately.
15        Q.   Do you know -- I mean, you're the witness
16   here for that particular statement, so --
17        A.   No, I don't.
18        Q.   You don't know where it happened?
19        A.   No.
20        Q.   You don't know whether there were any
21   witnesses to it?
22        A.   No.
23             MR. CASTLE:  No other questions.
24             THE COURT:  All right.  Thank you, Mr.
25   Castle.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6858

1          Any other cross-examination of Ms. Stemo?

2     Do you want to go, Ms. Torraco?

3          MR. SHATTUCK:  We don't have any questions.

4          THE COURT:  You don't have any?  I'll tell

5     you what.  Why don't y'all talk about who wants to go

6     next?  Why don't we take our afternoon break and be

7     in recess till 2:30, and you can decide who is going

8     to question Ms. Stemo.

9          (The Court stood in recess.)

10         THE COURT:  All right.  Let's go back on

11    the record.  I think every defendant has got an

12    attorney.

13         Mr. Granberg, were you going to go next?

14         MR. GRANBERG:  Yes, Your Honor.

15         THE COURT:  All right.  Mr. Granberg.

16         Agent Stemo, I'll remind you you're still

17    under oath.

18         THE WITNESS:  Yes, Your Honor.  I'm ready.

19                   CROSS-EXAMINATION

20    BY MR. GRANBERG:

21    Q.    During Mr. Castellano's direct, you had

22    mentioned that the motives for Mr. Chavez

23    volunteering were effective shoes and withholding

24    heroin.  Did I hear you correctly?

25    A.    Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6859

1    Q.   What are you basing that statement from?

2    A.   So the withholding of heroin is something

3  Eugene Martinez told us.  One second, I'll give you a

4  Bates number.  So the Bates number for the shoes

5  incident is 32048.

6    Q.   So there is a separate statement for the

7  withholding of heroin?

8    A.   I believe so.

9    Q.   Do you know the Bates number for that?

10    A.   I'll find it.

11    Q.   Okay.

12    A.   42802.

13    Q.    Now, are you aware of any other statements

14  made regarding Mr. Chavez' motives for the murder?

15    A.   Aside from those two?

16    Q.   Aside from those two, or in addition to

17  those two?

18    A.   No, I don't think so.

19    Q.   Now, Statement 31 says Chavez heard about

20  the hit on Garza and volunteered to participate in

21  the operation.  Did Chavez make a statement saying

22  that he wanted to join in?  Or how is Statement 31 a

23  hearsay statement?

24    A.    In both instances, Mr. Martinez just said

25  that Chavez volunteered upon hearing about the hit.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   And I'll backtrack.  Bates No. 42082, is
 2     that also Eugene Martinez?
 3          A.   Yes.  And actually, Eugene Martinez says
 4     Mr. Chavez overheard Mr. Martinez and Willie Amador
 5     talk on the top tier.  And that's when he volunteered
 6     to conduct the hit.
 7          Q.   Okay.  So would you agree with me that
 8     those are personal reasons as opposed to, say,
 9     carrying it out for the SNM?
10          A.   I think it could be both.
11          Q.   Okay.
12          A.   You're not supposed to be disrespected as
13     an SNM member.
14          Q.   Okay.  Can you explain that?  Can you
15     elaborate on that a little bit?
16          A.   I don't think disrespect is looked upon in
17     the SNM as something that you can do.  So even if
18     someone else from the gang disrespects you, you're
19     supposed to do something about it.
20          Q.   Okay.  Who is being disrespected in this
21     instance?
22          A.   Well, Mr. Chavez was disrespected when
23     Mr. Garza took his shoes.
24          Q.   Oh, I see.  I see.  I was thinking
25     something different.  Let's jump to Statement Number
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6861

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 197

```
 1   33.   In Statement Number 33 there is a statement,
 2   "Close the door," but the declarant could be either
 3   Allen Patterson or Christopher Chavez.  Was it both
 4   of them, or was it just one of them?
 5        A.   I don't know.
 6        Q.   Okay.  Were there any other sort of
 7   debriefs or investigative statements that you've
 8   uncovered that would sort of shed light on who it
 9   would have been, Mr. Patterson, Mr. Chavez?
10        A.   No.
11        Q.   And I take your attention to Bates number
12   19128.
13        A.   I don't have that with me.
14        Q.   I was trying to put up on the screen Bates
15   No. 19128.  Now, Agent Stemo, are you familiar with
16   this statement at all?  Agent Stemo, why don't I just
17   bring my laptop up to you?
18             MR. GRANBERG:  May I approach, Your Honor?
19             THE COURT:  You may.
20        A.   I think I have seen that before.
21   BY MR. GRANBERG:
22        Q.   Are you familiar with the context this
23   statement was given in?
24        A.   No.
25        Q.   To your knowledge, do you know who Source 7
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6862

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6863

```
 1    is?
 2         A.   Not I'm aware of.
 3         Q.   Okay.  But in this document it states that
 4    it was actually Patterson that said, "Close the
 5    door"; correct?
 6         A.   Yes.
 7         Q.   So as far as you know, you have no idea who
 8    Source 7 is?
 9         A.   I don't.
10         Q.   You don't.  All right.
11              So when you answered my question a few
12    minutes ago regarding who the actual declarant might
13    have been, were you aware of this statement?
14         A.   It was familiar to me, yes.
15         Q.   So now that you've had a chance to kind of
16    refresh your memory --
17         A.   Um-hum.
18         Q.   -- does that change your answer at all?
19         A.   No, I don't think it does.  We were
20    discussing what Eugene Martinez heard.  I don't know
21    that Source 7 is Eugene Martinez.
22         Q.   Is Source 7 a name or a designation that's
23    ever been assigned to Eugene Martinez?
24         A.   I don't know that.
25         Q.   Okay.  So did Chavez indicate to Eugene
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6863

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6864

1    that he felt disrespected with regards to the shoes;

2    do you know?

3        A.   I don't think Eugene told us that.

4        Q.   How about in reference to the heroin?

5        A.   I don't think Eugene told us that either.

6        Q.   So if Eugene didn't tell you that, what's

7    your basis for your answer that the reason why he's

8    doing that is for being disrespected?

9        A.   I think it's an inference.  There's a

10   reason why Eugene Martinez brought those issues up

11   after he said -- after or before he said that

12   Mr. Chavez volunteered to conduct the hit.

13       Q.   Okay.  So getting back to Statement Number

14   33, so Eugene cannot 100 percent attribute who said

15   it; correct?  "Close the door"?

16       A.   Correct.

17       Q.   Let's jump to Statement Number 71.  I

18   believe that's another Chavez statement.  Now, in

19   this particular instance the source is Leroy Lucero;

20   correct?

21       A.   Yes.

22       Q.   Is Leroy Lucero a co-conspirator, in your

23   opinion?

24       A.   Yes.

25       Q.   He is.  Are you familiar with the term

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6864

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200865

```
 1    "overt acts"?

 2         A.   Yes.

 3         Q.   In regard to conspiracies?

 4         A.   Yes.

 5         Q.   From your knowledge, what was Mr. Lucero's

 6    overt act in the murder of Mr. Garza?

 7         A.   He confirmed the hit with Mr. Munoz.

 8         Q.   Did he order the hit?

 9         A.   I'm not aware that he did.

10         Q.   Okay.  So when you say "confirm, " what are

11    you -- can you elaborate on that particular point,

12    confirm?

13         A.   He spoke with Mr. Munoz and received

14    information that both Mr. Frank Castillo and Mr.

15    Rolando Garza were, in fact, green lit.

16         Q.   But it was also your testimony that it was

17    Mr. Garcia that ordered the hit; correct?

18         A.   Yes.

19         Q.   So how is it that both Mr. Garcia and Mr.

20    Munoz and Mr. Lucero had the same roles or

21    responsibilities here?

22         A.   Mr. Lucero did not order the hit.  I think

23    it's possible for more than one shot-caller to order

24    a hit.  Mr. Munoz -- and this is speculation; I don't

25    know what transpired between Mr. Munoz or Mr. Garcia.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1    But Mr. Munoz could relay to Mr. Garcia who is a
 2    shot-caller and was at Southern to carry out the hit.
 3         Q.   So you're saying Mr. Lucero's role as
 4    purely a relay person is enough for --
 5         A.   I don't think he was a relay person.
 6         Q.   You just said he was possibly --
 7         A.   I think he confirmed the hit.  And doing so
 8    allowed for the hits to happen.
 9         Q.   So you're saying that he confirmed the hit
10    with Mr. Munoz, that the order came down from
11    Mr. Garcia?
12         A.   No.
13         Q.   Well, then, what is it you're saying?
14         A.   I'm saying Mr. Lucero confirmed the hit
15    with Mr. Munoz.  I don't know if Mr. Munoz also
16    issued an order for the hits.  Because I don't know
17    what Mr. Munoz and Mr. Billy Garcia talked about.
18    What I'm saying is that it's possible for more than
19    one leader to order a hit.
20         Q.   And did Mr. Lucero recently arrive at the
21    pod to relay this information?
22         A.   No, Mr. Lucero was at Southern, and was due
23    to get released.
24         Q.   Okay.  Now, there have been numerous other
25    statements.  Are you familiar with the term
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6866

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202 of 307

 1    "committee"?

 2         A.   Yes.

 3         Q.   And are you familiar with who are the

 4    individuals selected to be on that committee in

 5    reference to the SNM?

 6         A.   Well, it varies.

 7         Q.   Okay.  Is there any reference to Mr. Chavez

 8    being either on the committee or selected to be on

 9    the committee, as far as you know?

10         A.   No.

11         Q.   What about Mr. Lucero?

12         A.   I don't think I've seen anything that says

13    he was on the committee.

14         Q.   And the persons that are on the committee

15    would have the sort of knowledge which could confirm

16    a hit or not; correct?

17         A.   Yes.

18              MR. GRANBERG:  Your Honor, I'll pass the

19    witness.

20              THE COURT:  Thank you, Mr. Granberg.

21              Anyone else?  Mr. Blackburn?

22                   CROSS-EXAMINATION

23    BY MR. BLACKBURN:

24         Q.   Ms. Stemo, I'm sorry, how long have you

25    been with the FBI?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 203868

1        A.    A little under two years.

2        Q.    And I know Mr. Castle asked you some

3   questions earlier about your specialties.  Do you

4   have any specialties in the FBI?

5        A.    No.

6        Q.    Have you listed yourself as a profiler at

7   any time?

8        A.    No.

9        Q.    Have you ever placed any of that

10  information on a search warrant or anything

11  concerning your ability to profile individuals or to

12  be able to concentrate on basically what their

13  lifestyles may have been?

14       A.    No.

15       Q.    All right.  So you're just a special agent,

16  a field person out doing investigations; is that what

17  it is?

18       A.    Yes.

19       Q.    Are there any specialties that you can get

20  when you're in the FBI?

21       A.    I believe so.

22       Q.    And what type would those be?

23       A.    They could be like a special weapons and

24  tactics operator; you can be part of the evidence

25  response team.  There's various trainings you could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6868

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204869

1    get to become an expert.

2         Q.    Okay.   So I want to talk to you about Count

3    3, which is the Freddie Sanchez hit.   When did that

4    occur?

5         A.    2007.

6         Q.    All right.   Do you remember what month in

7    2007?

8         A.    June.

9         Q.    And where did that occur at?

10        A.    The Southern New Mexico Correctional

11   Facility.

12        Q.    And what is your understanding of the

13   circumstances surrounding the initial conversation or

14   planning concerning that particular hit?

15        A.    I believe there were rumors and paperwork

16   showing that Mr. Freddie Sanchez had cooperated with

17   law enforcement and that Mr. Benjamin Clark at one

18   point possessed that paperwork, and that had gotten

19   back to Arturo Garcia, who, in turn, relayed to Mr.

20   Benjamin Clark and Frank Gonzalez that the Rascon

21   brothers were to take care of the next thing that

22   happened.   I don't think Mr. Garcia said what that

23   was specifically.   But he said they were next.

24        Q.    And at the time of the hit on Mr. Sanchez

25   in Southern New Mexico, where was Arturo Garcia at?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6869

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205 6870

```
 1          A.   He was at PNM.

 2          Q.   How long had he been at PNM that you're

 3     aware of?

 4          A.   I don't know.

 5          Q.   And where was Ben Clark?

 6          A.   He was at Southern New Mexico.

 7          Q.   And how long had Ben Clark been at Southern

 8     New Mexico; do you recall?

 9          A.   I don't recall.

10          Q.   Did you interview Ben Clark or sit in on

11     any of the interviews with him?

12          A.   I don't think I did.

13          Q.   Okay.  As it relates to what you said, the

14     rumors about Freddie Sanchez, who was it that

15     informed you about those rumors, that there was some

16     type of law enforcement cooperation as it relates to

17     Mr. Sanchez?

18          A.   I think I read that Mr. Ruben Hernandez was

19     aware.  I believe John Montano was aware.  Javier

20     Rubio had heard about the paperwork.  Ben Clark.

21          Q.   And going back, do each of those -- okay,

22     is it your understanding that they had been aware of

23     the paperwork prior to the hit that occurred in June

24     of 2007?

25          A.   I don't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6870

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206 6871

1    Q.   Did Mr. Clark tell you that people

2    delivered the paperwork to Southern New Mexico in,

3    like, April of that year?

4    A.   I'm not sure if he said April.  Let me

5    check.

6    Q.   Actually March or April.

7    A.   Just a moment.

8    Q.   Do you have 41974 in front of you, Bates

9    No.?

10   A.   I do.

11   Q.   Okay.

12   A.   Thank you.  You're correct, it says March

13   or April, 2007.

14   Q.   So what you learned from this is that

15   individuals in SNM had been aware of some type of

16   paperwork that existed as to Freddie Sanchez; is that

17   correct?

18   A.   Yes, I believe so.

19   Q.   And I think that you covered some of this

20   with Mr. Burke earlier, but I just want to ask you

21   about this.  When did Freddie Sanchez arrive at

22   Southern New Mexico?

23   A.   I think it was June 15, 2007.

24   Q.   And when he arrived, he told the

25   classification officers and other individuals there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6871

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 207

```
 1    at Southern New Mexico that he knew that there was a
 2    hit out on him, didn't he?
 3         A.   He did.
 4         Q.   And he asked that he not be placed in a
 5    certain pod if there was an SNM pod, and he not be
 6    placed in that particular pod, did he not?
 7         A.   I believe so.
 8         Q.   And the classification person that was in
 9    charge of that made a recommendation that he not be
10    placed in that pod, did he not?
11         A.   I believe so.
12         Q.   And when the classification officer came
13    back to work a few days later, he was somewhat
14    shocked that Mr. Sanchez had not been moved?
15         A.   I believe so.
16         Q.   But he himself, Freddie Sanchez, knew there
17    was a hit on him; right?
18         A.   Yes.
19         Q.   And what is your understanding from the
20    people that you interviewed about individuals that
21    have a hit on them as to how that hit is supposed to
22    take place?  I mean, is that an open season if
23    somebody has a green light on them?
24         A.   I think it depends who you talk to.  Some
25    will say that you need confirmation from others.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6872

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

```
 1    Some will say that you need the actual paperwork.
 2         Q.   So depending on what day it is and who
 3    you're talking to depends upon what the answer may be
 4    to a certain extent?
 5         A.   Yes.  The rules can be very fluid.
 6         Q.   Let me have you look at Statement Number
 7    17, if you don't mind.  Do you have that one?
 8         A.   I do.
 9         Q.   Okay.  The declarant on this is Arturo
10    Garcia and the source is Eric Duran.  And what is
11    your understanding about Statement Number 17 and how
12    that took place and the circumstances surrounding
13    that?
14         A.   Eric Duran was housed with Arturo Garcia
15    and stated that --
16         Q.   In Santa Fe; right?
17         A.   Yes.
18         Q.   At the North facility?
19         A.   I don't know for sure.
20         Q.   Go ahead.  I'm sorry.  I didn't mean to cut
21    you off.
22         A.   He stated that Arturo Garcia gave the hit
23    to Benjamin Clark, and that Eric Duran was with
24    Mr. Garcia when the hit was put out.
25         Q.   So what does Mr. Duran tell you about that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6873

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209

209

```
 1    Is he actually listening to him or -- let me back up.

 2    Where is Mr. Clark at the time?

 3         A.   He's at Southern.

 4         Q.   So we're talking all the way across the

 5    state; right?

 6         A.   Yes.

 7         Q.   So how was it that Eric Duran was aware

 8    that Arturo was sending this to Ben Clark?  What does

 9    he tell you about that?

10         A.   He doesn't say how the hit was put out.

11         Q.   He just tells you that he's -- he says that

12    Arturo Garcia put the hit on Sanchez because he was

13    suspected to be cooperating with law enforcement; is

14    that correct?

15         A.   Yes.

16         Q.   And do you know, did Mr. Duran tell you

17    when he became aware of the statement?

18         A.   I don't think he specifically says when it

19    occurred.

20         Q.   And when did he tell you about this

21    particular statement?

22         A.   This occurred on February 19, 2015.

23         Q.   February 19, when?

24         A.   2015.

25         Q.   All right.  Have you seen a location
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6874

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6875

6875

1    history for Mr. Duran?

2         A.   I have not.

3         Q.   Have you seen a location history for

4    Mr. Garcia, Arturo Garcia?  I keep having to mention

5    that because of Billy Garcia.

6         A.   I don't think I have.

7         Q.   Let me ask you about Statement Number 18.

8    The source of this is Ruben Hernandez; correct?

9         A.   Yes.

10        Q.   And where was Ruben Hernandez at the time

11   of this hit on Freddie Sanchez?

12        A.   He was also at Southern.

13        Q.   And his comment is that Ben Clark passed

14   around paperwork on Sanchez' cooperation with the

15   police, stating that everyone needed to see it?

16        A.   Yes.

17        Q.   Did he say when he was aware of -- did

18   Hernandez tell you when he was aware of the

19   paperwork?

20        A.   I don't think he did.

21        Q.   How was it -- what is your understanding as

22   to where this paperwork came from?

23        A.   From the Crazy Town Roswell Gang.

24        Q.   And who obtained that paperwork?

25        A.   I don't know.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6875

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 211

```
1         Q.    Do you know how it was obtained?

2         A.    No.

3         Q.    Have you ever seen any copies of that?

4         A.    I have not.

5         Q.    Are you aware of any of that paperwork

6    that's in the possession of the FBI or anything in

7    this case?

8         A.    Not to my knowledge.

9         Q.    And what did Ruben Hernandez state as to

10   stating everyone needs to see it and get rid of it?

11        A.    What do you mean by that?

12        Q.    I'm asking you.  Statement Number 18 says

13   that everyone who needs to see it has seen it; get

14   rid of it.  I'm just looking at Number 18.  What did

15   Ruben Hernandez tell you about that?

16        A.    Just a moment.  Doesn't really elaborate

17   after that.  He just says there were meetings after

18   Ben Clark said that.

19        Q.    But it came from Ben Clark?

20        A.    Yes.

21        Q.    But there was a meeting afterwards,

22   basically?

23              Let me have you go over to Statement Number

24   19.  The source on this was Javier Alonso.  Now, at

25   the time of the hit on Mr. Sanchez, in June of 2007,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6876

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213

```
 1   where was Mr. Alonso?

 2        A.   He was also at Southern.

 3        Q.   Have you interviewed him?

 4        A.   I was present for it.

 5        Q.   And the statement is that Arturo Garcia

 6   wrote to Frankie Gonzalez that Brian and Raymond

 7   Rascon were to take care of the next murder for SNM?

 8        A.   I don't think he said "murder."  I think he

 9   said "the next thing."

10        Q.   Okay.  That's what you were saying earlier,

11   okay.  Now, did Mr. Alonso tell you that he actually

12   saw the paperwork?

13        A.   I think he did.

14        Q.   Okay.  And has anybody ever been able to

15   describe to you what this paperwork actually says?

16        A.   No, I don't know that we asked.

17        Q.   Well, was the -- what was the paperwork?

18   Was it police reports, or was it something from

19   somebody saying:  "This guy needs to be hit because

20   he was with the Crazy Towns, and he needed to be

21   taken out"?  Or what is your understanding of, quote,

22   the paperwork?

23        A.   I don't know what it is.

24        Q.   No one ever explained that to you, or you

25   didn't hear that in any of the interviews?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6877

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213

```
 1        A.   No.
 2        Q.   How many pages it was, what did it look
 3   like?  Was it on blue paper or pink paper or white
 4   paper, or anything like that?
 5        A.   No, I don't think so.
 6        Q.   Did anybody ever tell you what or who did
 7   anything with the paperwork afterwards?
 8        A.   I believe that part, he gave it to Kyle
 9   Dwyer and told him to get rid of it.
10        Q.   Let me have you look at Statement Number
11   21, if you don't mind.  Do you have it?
12        A.   Yes.
13        Q.   So we don't know who the declarant is in
14   this particular matter; right?
15        A.   Correct.
16        Q.   And where was -- when Javier Alonso hears
17   this statement, where was he at at the time that this
18   statement was made to him?  Was he in the green pod
19   or was he in the blue pod?
20        A.   I'm not sure of the coloring schemes.  He
21   was in the pod that Fred Sanchez was in.
22        Q.   And did the word come from the other pod?
23   I mean, this word is coming from another pod?
24        A.   Yes.
25        Q.   And he has no clue who was making these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6878

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6879

```
 1    statements and at what point in time?
 2         A.   Well, he says it happens before the murder.
 3    He doesn't remember who it was that gave the message.
 4         Q.   Did he ever tell you who this may have come
 5    from?
 6         A.   No.
 7         Q.   Let me go to Statement Number 27.   The
 8    source is Ben Clark and Eric Duran.   Are these two
 9    separate statements that individuals are making?
10    They were never together, were they?
11         A.   I don't think they were together.
12         Q.   We know that Eric Duran, at the time of the
13    hit, was in Santa Fe with Mr. Garcia; and Ben Clark
14    had already been down in Las Cruces; is that correct?
15    At Southern New Mexico; is that correct?
16         A.   Yes.
17         Q.   How was it that each of these individuals
18    said that Arturo Garcia sent word about Sanchez to
19    Ben Clark?   How did they communicate?
20         A.   You mean Ben Clark and Mr. Garcia?
21         Q.   Yes.
22         A.   Mr. Clark says that he and Arturo Garcia
23    would communicate via letters that they would send to
24    Mr. Garcia's wife.
25         Q.   And how was that to occur?   How did he say
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6879

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6880

215880

 1   that was to occur, that he would send them directly
 2   to Mr. Garcia's wife?
 3        A.   I believe so.
 4        Q.   So do you have any of those letters at all?
 5        A.   We don't.
 6        Q.   You have no letters going from Mr. Clark to
 7   Mr. Garcia, nor from Mr. Garcia to Mr. Clark, either
 8   which way; right?
 9        A.   I think it's possible.  I don't remember
10   off the top of my head.  We do have some letters from
11   one inmate to another inmate.  But I don't know if
12   it's the letters communicating that Freddie Sanchez
13   hit.
14        Q.   And so you took care of Statement Number
15   28, when you're talking about -- is this how you're
16   saying that these letters were exchanged, and the
17   intermediary was supposedly Mr. Garcia's wife?
18        A.   Yes.
19        Q.   Do you know where she was living at the
20   time?
21        A.   I don't.
22        Q.   Let me go to Statement Number 39.  Got it?
23        A.   Yes.
24        Q.   So the declarant in this matter is Kyle
25   Dwyer; right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6880

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6881

```
 1         A.   Yes.

 2         Q.   Was he an SNM member?

 3         A.   I think he is.

 4         Q.   And how do you know that?

 5         A.   I believe he's been validated by the New

 6    Mexico Corrections Department.

 7         Q.   At the time, where was -- on the date in

 8    question, in June 17, 2007, where was Mr. Dwyer?

 9         A.   I believe he was in the pod.

10         Q.   In Santa Fe?  I mean, in Las Cruces?

11         A.   Yes.

12         Q.   How long had he been there?

13         A.   I'm not sure.

14         Q.   Have you ever looked at his transfer papers

15    or anything?

16         A.   I have not.

17         Q.   And Mr. Dwyer is deceased; right?

18         A.   Yes.

19         Q.   And when did he die?

20         A.   I'm not sure.

21         Q.   Do you know what he died of?

22         A.   I think he overdosed.

23         Q.   Was that an overdose inside the facility or

24    outside the facility?

25         A.   It was actually in a hotel or a motel in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6881

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6882

```
 1    Las Vegas.
 2         Q.    And the statement is:  Kyle Dwyer came to
 3    Southern New Mexico with the paperwork on Sanchez.
 4    Are we talking about all the same paperwork, one,
 5    two, or do we have any idea?
 6         A.    What do you mean?
 7         Q.    I don't know.  You're the one talking
 8    about -- you guys are talking about paperwork.  Was
 9    there just -- what was the paperwork that we're
10    talking about here?
11         A.    I'm not sure.
12         Q.    Was Ben Clark sure?
13         A.    I'm not sure that we asked him.
14         Q.    Let's go to Statement Number 40.  As to the
15    paperwork that you didn't ask Mr. Clark about and we
16    don't know anything about much, that paperwork came
17    from Crazy Town Roswell Gang; is that correct?
18         A.    Yes, that's what he said.
19         Q.    And that's what Clark told you?
20         A.    Yes.
21         Q.    Did Clark say how he was aware that that
22    paperwork came from Crazy Town Roswell Gang?
23         A.    He did not.
24         Q.    I think you told Mr. Burke earlier this
25    morning that this had something to do with Crazy Town
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6882

```
 1   Roswell Gang wanting SNM to clean up their mess,
 2   meaning the Roswell messes.  Would you explain that?
 3        A.   I don't think that's what I said.
 4        Q.   So I'll give you the opportunity to refresh
 5   my memory.
 6        A.   I think it's common practice for gangs
 7   to -- if they find out someone has cooperated and
 8   they can get the paperwork on someone, even if it's
 9   in a different gang, they'll provide that paperwork
10   to that individual's gang, so that they can clean
11   their own house.
12        Q.   And that's what Ben Clark is telling you
13   that happened in this particular case?  Or that's
14   just your impression or assumption of what they were
15   doing?
16        A.   I think that's my impression.
17        Q.   All right.  Did any of the people you ever
18   interviewed indicate how the paperwork came from the
19   Crazy Town Roswell Gang, how they got possession of
20   it to give it to somebody to give it to somebody to
21   somehow pass it in the paperwork?
22        A.   No, I don't think anyone has.
23        Q.   Now, there was some mention at some point
24   in time about Cheech having been involved in this
25   paperwork being passed.  Do you remember that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6883

```
 1        A.   I do.

 2        Q.   And who did you learn that from?

 3        A.   Just a moment.

 4        Q.   Sure.  Did this come from Leroy Lucero?

 5        A.   I'm not sure.  I don't think that's right,

 6   though.

 7        Q.   I didn't mean to interrupt your search.  I

 8   was trying to help you.  I'm looking at this in

 9   connection with Statement 62 if that's going to help

10   you.

11        A.   That would help.  That was stated by Samuel

12   Gonzales.

13        Q.   Samuel Gonzales is the one that said

14   that -- looking at 62, you have three people:  Samuel

15   Gonzales, John Montano, and Javier Rubio.  Can you

16   tell me what each of those basically stated as

17   relates to the paperwork delivered from Arturo Garcia

18   to Ben Clark?

19        A.   Yes.  Gonzales stated that "Cheech, Joe

20   Martinez, delivered the paperwork on Sanchez from

21   Arturo Garcia to Benjamin Clark, who approved the

22   murder."

23        Q.   With no Kyle Dwyer in there; right?

24        A.   Correct.

25        Q.   And again, all of these individuals --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6885

```
 1    Samuel Gonzalez, John Montano and Javier Rubio -- are
 2    at Southern New Mexico; correct?
 3         A.   Yes.  John Montano doesn't say where the
 4    paperwork comes from.  He just says that Clark told
 5    John "That'd be messed up if the paperwork on the guy
 6    just got showed up."
 7         Q.   And then Mr. Rubio?
 8         A.   Mr. Rubio says, "Joe Martinez a/k/a Cheech,
 9    took the paperwork down and showed it to him.  Edward
10    Troup and Javier Alonso were involved in the murder."
11    There is one more.
12         Q.   So what does Joe Martinez say about this?
13         A.   I believe he denied it.
14         Q.   He denied even knowing anything about the
15    paperwork; right?
16         A.   I believe so.
17         Q.   And how many times did you talk to him?
18         A.   I think twice.
19         Q.   And was that all, then -- both of those
20    conversations or interviews it was as it related to
21    investigation of this case, it had nothing to do with
22    just casual seeing them at places and things like
23    that?
24         A.   Yes.
25         Q.   I say that because you say you went one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6885

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221886

```
 1   time to see somebody else and they pulled you aside
 2   and started talking to you.
 3        A.   Yes.
 4        Q.   These are formal, sit-down interviews, to a
 5   certain extent planned, I would say.
 6        A.   Yes.
 7        Q.   And the last one I want to talk to you
 8   about -- and you talked about this a little bit with
 9   Mr. Burke -- is Statement Number 77.
10        A.   Okay.
11        Q.   Again, we know that Mr. Dwyer is not
12   around.  He's deceased; correct?
13        A.   Yes.
14        Q.   And this was Mr. Dwyer asking Ruben
15   Hernandez, who is, again, in Southern New Mexico, to
16   take something to Samuel Gonzales, and tell Samuel
17   Gonzales that was all he had; correct?
18        A.   Yes.
19        Q.   And it was just a piece of paper folded up;
20   right?
21        A.   Yes.
22        Q.   Has anybody ever said what that paper said?
23        A.   No.
24        Q.   So we don't know if that was, "Hey, I'll
25   meet you at chow tonight, and let's talk about who's
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6886

1    going to win the national championship for the NCAAs

2    in 2007"; right?

3        A.   Right.

4            MR. BLACKBURN:  I have nothing further,

5    Your Honor.

6            THE COURT:  Thank you, Mr. Blackburn.

7            Ms. Torraco, do you have cross-examination

8    of Ms. Stemo?

9            MS. TORRACO:  Yes, Your Honor.

10           MR. COOPER:  Your Honor, if I may, before

11   she starts, I'd like to invoke the rule for this

12   motion hearing and all subsequent motion hearings, if

13   I may.

14           THE COURT:  Well, who is going to be your

15   representative for the next trial?

16           MS. ARMIJO:  It will be Bryan Acee, but

17   he's not even here today.  But he would be allowed

18   in.

19           THE COURT:  Is there a witness -- I mean,

20   we can invoke the rule, but is there a witness here

21   that you're concerned about?

22           MR. COOPER:  No, but I'm afraid we may see

23   some witnesses, and I would hate for Agent Stemo or

24   somebody else to go in and start talking to these

25   witnesses about the testimony that's coming out of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6887

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223888

```
 1    this courtroom.

 2              THE COURT:  All right.  The rule has been

 3    invoked.  Witnesses may not discuss their testimony

 4    with each other.  They may discuss it with attorneys.

 5    They will be required to remain outside of the

 6    courtroom until they are called to testify within the

 7    courtroom.

 8              MR. COOPER:  Thank you, Your Honor.

 9              THE COURT:  Mr. Cooper.

10                   CROSS-EXAMINATION

11    BY MS. TORRACO:

12         Q.   Good afternoon.  I think I'm the last

13    lawyer, so there is light at the end of the tunnel

14    for you.

15              I want to start with the statements that

16    surround the 2001 incident.  Do any of those

17    statements apply to Andrew Gallegos?

18         A.   No.

19         Q.   And is Andrew Gallegos in any way

20    implicated regarding any of the 2001 statements?

21         A.   No.

22         Q.   Was he present for any of those statements?

23         A.   I don't think so.

24         Q.   And was Andrew Gallegos an SNM member in

25    2001?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6889

```
 1          A.   I don't know.
 2          Q.   Do you believe he was an SNM member at any
 3    time?
 4          A.   Yes.
 5          Q.   And when was that?
 6          A.   Sometime around 2005, 2006.
 7          Q.   So are you saying that, therefore, he was
 8    not an SNM member in 2001?
 9          A.   I'm not saying that.
10          Q.   Okay.  And why do you say that he was an
11    SNM member in 2005 and 2006?
12          A.   I say that's an approximation.  I believe
13    we have witnesses that will say Mr. Gallegos joined
14    the SNM in the federal prisons.
15          Q.   Okay.  And when was Andrew Gallegos in the
16    federal system?
17          A.   I believe he was indicted in 2005.  I'm not
18    sure when exactly he was sent off.
19          Q.   Okay.  So your investigation concludes that
20    he became an SNM member after 2005; is that what I
21    heard you say?
22          A.   I wouldn't make that generalization.  I
23    believe --
24          Q.   Based on your investigation?
25          A.   That's just my belief.  I don't know much
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6889

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6890

225

```
 1    about Mr. Gallegos before 2005.
 2         Q.   Okay.  And regarding the 2007 statements,
 3    do any of those apply to Andrew Gallegos?
 4         A.   They do not.
 5         Q.   And do you know if he was around for any of
 6    those conversations?
 7         A.   I don't think he was.
 8         Q.   Okay.  And is he in any way involved in
 9    either the creating or the hearing of those
10    statements?
11         A.   No.
12         Q.   Okay.  So I'd like to start with Statement
13    Number 41.  And I know that Mr. Benjamin asked you
14    extensively about this, so forgive me if I ask
15    something again.  It's only because I was confused.
16    Was it ever established who the declarant was on
17    Statement Number 41?
18         A.   I believe it was Joe Gallegos.
19         Q.   So you believe it was or it is Joe
20    Gallegos?
21         A.   I can check?
22         Q.   Okay.  Great.
23         A.   I'm mistaken.  In one report it says Joe
24    makes the statements.  In another report it says
25    Smiley, which is Andrew Gallegos' moniker.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6891

```
 1          Q.    Can you give me the number of the report
 2     that says that Joe Gallegos made that statement?
 3          A.    3445.
 4          Q.    And what day is that report dated?
 5          A.    November 21, 2012.
 6          Q.    And whose report is it?
 7          A.    James Mowduk.
 8          Q.    And what department is he with?
 9          A.    New Mexico State Police.
10          Q.    And regarding 3445, who attributes that
11     statement?  What's the source?
12          A.    The person who tells us that is Michael
13     Sutton.
14          Q.    And in what context does Michael Sutton
15     make that statement?
16          A.    He stated that Leroy Vallejos was given a
17     rolled-up wad of money from Joe, and that Leroy
18     Vallejos stated that "They told me we just pulled off
19     a movida and we gotta go clean up."
20          Q.    So I'm going to repeat that, and tell me if
21     I'm correct.  Michael Sutton says that he was told by
22     Leroy Vallejos --
23          A.    Correct.
24          Q.    -- that Joe Gallegos said he just pulled a
25     movida?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6891

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6892

```
1          A.   Yes.  I also have the report where Leroy

2     Vallejos say that.

3          Q.   Okay, great.  Can we stick to the first one

4     and then we'll move on in just a second?  What is

5     your understanding of the word "movida"?

6          A.   It's a move.

7          Q.   Okay, a move.

8          A.   Yes, or a job.

9          Q.   And the exact quote that Michael Sutton

10    attributes to Leroy Vallejos is what?

11         A.   "We just pulled off a movida, and we got to

12    go clean up."

13         Q.   And according to this particular report,

14    Joe says that and he says "we," correct?

15         A.   Correct.

16         Q.   And there is no reference to Andrew

17    Gallegos; is that correct?

18         A.   Not in that specific statement.

19         Q.   Okay.  And I understand that there is

20    another one, but let's just stay with that one for a

21    couple of minutes.  So on the chart we've received

22    under Statement Number 41, where it says Joe and

23    Andrew, according to Michael Sutton, that would be an

24    incorrect sentence.  It should just say "Joe,"

25    correct?  "Joe says we just pulled off a movida"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    No.

 2        Q.    Why?

 3        A.    This is a statement that Leroy Vallejos

 4   told to Michael Sutton relaying what Joe said.

 5        Q.    Right.  But I thought you told me the

 6   statement is that Joe told Leroy, "We just pulled off

 7   a movida"?

 8        A.    Correct.

 9        Q.    So that's the statement, "We pulled off a

10   movida"?

11        A.    Yes.

12        Q.    In what context was that statement made?

13        A.    Meaning Joe and Andrew.

14        Q.    How do you know that it incriminated

15   Andrew?

16        A.    In the same statement -- let me find it.

17   Leroy Vallejos and Michael Sutton encountered Joe and

18   Andrew Gallegos.  There was no other individuals with

19   them.

20        Q.    Okay.  And where did they encounter them?

21        A.    At the Allsup's.

22        Q.    And what day was that?

23        A.    I believe it was November 12, 2012.

24        Q.    So they said, "We just pulled off a job, or

25   a movida," and then later Joe says "and we have to go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6893

```
 1    clean up"?

 2         A.   Yes.

 3         Q.   Okay.  What else was the context of that

 4    statement?

 5         A.   Joe had given Mr. Vallejos money and drugs.

 6         Q.   Okay.  And how does Michael Sutton know

 7    that?

 8         A.   He was there.

 9         Q.   Michael Sutton was present at the

10    statement?

11         A.   Yes.

12         Q.   I thought you just said that Leroy told

13    Michael Sutton about the statement?

14         A.   Yes.

15         Q.   Okay.  And he was also present?

16         A.   Yes, I believe he was there.

17         Q.   Okay.  So now I'm really confused.  Did

18    Michael Sutton hear the statement, or was he told the

19    statement from Leroy?

20         A.   Well, he makes more than one statement.

21         Q.   Michael Sutton does?

22         A.   He does.

23         Q.   Okay.  So let's start with the first one

24    where he says that Leroy told him that he had pulled

25    a movida.  When is that statement made?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6894

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6895

```
 1          A.   November 21.
 2          Q.   Then you say he gave another statement?
 3          A.   Yes.  I don't think I have that with me.
 4          Q.   And what does Michael Sutton say about the
 5     second statement?
 6          A.   Would you like me to read all of it for
 7     you?
 8          Q.   How long is it?
 9          A.   It's about a paragraph.
10          Q.   Let me ask you a few questions about it
11     first.  When did Michael Sutton give the second
12     statement?
13          A.   November 21.
14          Q.   Did you just say that?
15          A.   Yes.
16          Q.   Sorry about that.  And was the second
17     statement tape-recorded?
18          A.   I believe it was.
19          Q.   And was the first statement tape-recorded?
20          A.   I don't have it in front of me, but I think
21     it was.
22          Q.   Okay.  So you think there's tape recordings
23     for both of those statements?
24          A.   Yes.
25          Q.   Now, let's go on to Leroy Vallejos.  What
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6895

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231 6896

1   did Leroy say?

2          A.   He said they ran into Joe and Smiley at the

3   Allsup's getting gas and beer.  Leroy said he bummed

4   a cigarette from Joe, and Joe gave him one, and then

5   he said, 'Here, take the whole pack.'  He said Joe

6   asked him if he was doing okay.  And he said he was,

7   but didn't have any money.  Joe said, 'Here,' and

8   gave him 18 dollars.  Leroy said Joe told him, 'I

9   just came up.'  We asked Leroy what he thought that

10  meant, and he said he remembered thinking that they

11  must have just robbed someone."

12          Do you want me to continue?

13      Q.   Well, earlier, I thought you told me and

14  told the Court that Leroy Vallejos attributed the

15  statement to Andrew.  So that's what I'm interested

16  in talking about.

17      A.   All right.  You meant that statement.  So

18  this is another statement that Leroy relayed to

19  Michael Sutton.  Smiley said they had just finished a

20  movida, which is Spanish for a move or a job.

21      Q.   And what report are you referencing for

22  that statement?

23      A.   Do you need the Bates number?

24      Q.   Yes, please.

25      A.   That's on 3868.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6896

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 232

```
 1          Q.    And whose report is that?

 2          A.    Nathan Lucero.

 3          Q.    And is he also with the State Police?

 4          A.    He is.

 5          Q.    Is there a third statement about who made

 6     the movida comment, or is that the only two

 7     references?

 8          A.    There is the one I just read previously.

 9          Q.    Yes.  So there's those two?

10          A.    There is -- the two I just read off were

11     Michael Sutton.  And then there is one from Leroy

12     Vallejos on 3892.

13          Q.    Okay.  So the one that you just read to me

14     and to the Court that's 3868, was that your testimony

15     that Michael Sutton had relayed that to the state

16     police officer because that said Andrew?

17          A.    Yes.

18          Q.    Okay.  So Michael Sutton at one time says

19     it was Joe, and another time says it was Andrew that

20     made that statement?

21          A.    Correct.

22          Q.    Is that correct?

23          A.    Correct.

24          Q.    Okay.  So now let's move on to what Leroy

25     says and that you said was 3892.  What does Leroy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6897

1  relay to the police?

2      A.   This is on December 5, 2012.  "Leroy said

3  Joe asked him if he was doing okay, and he said he

4  was, but didn't have any money.  Joe said, 'Here,'

5  and gave him 18 dollars.  Leroy said Joe told him 'I

6  just came up.'"

7      Q.   Was there any reference in that statement

8  about the movida?

9      A.   I don't think so.

10      Q.   Okay.  And was that statement also

11  tape-recorded?

12      A.   Yes.

13          MS. TORRACO:  May I have just a moment,

14  Your Honor?

15          THE COURT:  You may.

16  BY MS. TORRACO:

17      Q.   Okay.  And how do you know movida means

18  move?

19      A.   I know Spanish.

20      Q.   Okay.  Does movida mean murder?

21      A.   No.

22      Q.   Did either Leroy or Michael Sutton ever

23  clarify what movida meant?

24      A.   I'm not sure that they did.  In his later

25  statement, Leroy says something kind of leading to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6898

1    that.

2         Q.   And I'm open for what that is.

3         A.   I'm looking for it.

4         Q.   Okay.

5         A.   On 3/9 Leroy said he knew that that Babylon

6    had got to see them -- meaning the brothers -- before

7    he went missing.  And he told Michael that his

8    sister's boyfriend was probably a done deal.  He said

9    he felt they had just killed and robbed someone.

10        Q.   And who says this?

11        A.   Leroy Vallejos.

12        Q.   And he said that he felt --

13        A.   Yes.

14        Q.   Let's move on to Statement Number 42.

15   Again, I'm not clear with who the declarant was.  I

16   know Mr. Benjamin asked you extensive questions.  So

17   I'd like to divide -- and I believe this is what you

18   did with Mr. Benjamin.  You divided that statement.

19   And the first part of Statement Number 42 says, "Joe

20   and Andrew Gallegos were covered in blood and advised

21   they were cleaning the house."  And that was -- I

22   believe you attributed that to Daniel Orndorff; is

23   that correct?

24        A.   I believe so.

25        Q.   Do you want to confirm that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6899

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6900

```
 1          A.   It is.

 2          Q.   And you also have Michael Sutton and Leroy

 3   Vallejos listed as sources for Statement Number 42.

 4   Are either of those men also a source for that first

 5   part of the statement?

 6          A.   Let me check.  Michael Sutton said the

 7   Gallegos brothers said they needed to go and clean

 8   up.  I don't think Leroy was involved in that

 9   statement.

10          Q.   Okay.  And the statement from Michael

11   Sutton was -- when he says that they needed to go

12   clean up, was that tape-recorded?

13          A.   Yes.

14          Q.   And is that also a statement that was given

15   to the New Mexico State Police in 2012?

16          A.   Yes.

17          Q.   Okay.  And what Bates number are you

18   referencing?

19          A.   For Michael Sutton?

20          Q.   Yes, please.

21          A.   I lost it.  Let me find it.

22          Q.   That's okay.

23          A.   It's 3868.

24          Q.   Okay.  Thank you.  And here it says, "Joe

25   and Andrew were covered in blood."  Is that an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6900

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6901

1   observation or a statement or something else?

2       A.   It's Mr. Orndorff described the Gallegos

3   brothers as being covered in blood.  It could be both

4   a statement and an observation.

5       Q.   And that statement by Daniel Orndorff that

6   they were covered in blood -- was that recorded?

7       A.   Yes.

8       Q.   And what is the context of that statement?

9       A.   He describes the Gallegos brothers being

10  covered in blood, and they reasoned -- "they" being

11  the Gallegos brothers -- that they had been at a

12  matanza the previous day.

13      Q.   Did you ever confirm whether or not they

14  did have a matanza the previous day?

15      A.   No, but I believe other sources have

16  confirmed that or corroborated that.

17      Q.   And did Daniel Orndorff make the statement

18  at the Allsup's that he saw this at the Allsup's or

19  is this someplace else?

20      A.   I believe Daniel only saw them at the 4

21  Aaron Court trailer.

22      Q.   Okay.  So that's where he saw them covered

23  in blood?

24      A.   I believe so.

25      Q.   And what date was that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6901

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 6902

1          A.    That he saw them or that he made the

2     statement?

3          Q.    Both.

4          A.    The day Mr. Orndorff saw them covered in

5     blood was the day of the homicide.

6          Q.    So is Mr. Orndorff a co-conspirator?

7          A.    No.

8          Q.    And what about Mr. Sutton?  Was he a

9     co-conspirator?

10          A.    I'd consider him more of a witness.

11          Q.    Same thing with Mr. Orndorff?  He's a

12     witness?

13          A.    Yes.

14          Q.    And what about Leroy Vallejos?

15          A.    He could be considered a co-conspirator.

16          Q.    How so?

17          A.    He was given drugs and money that could

18     have been evidence.

19          Q.    Okay.  And are you able to trace the fact

20     that the drugs and money did indeed come from

21     something relating to the Adrian Burns murder?

22          A.    Not concretely.  I believe both Mr. Sutton

23     and Daniel Orndorff described the packaging that was

24     similar to how Mr. Burns packaged his heroin.

25          Q.    And they're saying that the heroin that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6902

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 6903

```
1    they were given that day was consistent with the

2    Adrian Burns packaging?

3         A.   Yes.

4         Q.   And regarding the statement that they were

5    cleaning the house, I don't know if you -- you've got

6    a copy of the document; correct?

7         A.   Yes.

8         Q.   And that's in quotations.  Did you put that

9    in quotations?

10        A.   No, I didn't write this.

11        Q.   Okay.  And were they discussing actually

12   cleaning the home they live in?

13        A.   Can I read the statement to you?

14        Q.   Sure.

15        A.   "Daniel stated that he entered 4 Aaron

16   Court sometime around 9:30 p.m. and observed Joe and

17   Andrew Gallegos trashing the house.  Daniel stated

18   that Joe and Andrew were obviously tweaking on

19   methamphetamine, and they advised that they were

20   cleaning the house."

21        Q.   And I want to go back to the beginning part

22   of that statement, because I'm not sure, did you say

23   that they were "trashing the house"?

24        A.   That's what Mr. Orndorff believed they were

25   doing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6903

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 239

```
1        Q.   What does that mean?

2        A.   You'd have to ask him.  I don't know what

3   he meant.

4        Q.   Okay.  Could it mean that they were making

5   a mess in their house?

6        A.   It could.

7        Q.   Okay.  And this cleaning the house

8   statement -- could that mean that they were literally

9   cleaning their home?

10       A.   Possible.

11       Q.   Now, the second part of this statement,

12  "Joe Gallegos later went by Leroy Vallejos' house and

13  tried to give Vallejos and Andrew Gallegos the

14  truck."  Who said that?

15       A.   Leroy did, Mr. Vallejos.

16       Q.   So what is the statement that is attributed

17  to one of the Gallegoses?

18       A.   "Leroy said that the next day, on Tuesday,

19  Joe came by his house and wanted to give him their

20  truck."

21       Q.   So is there a statement there?

22       A.   That is a statement.  Just because it's in

23  quotations doesn't mean it's not a statement.

24       Q.   Okay.  Let's move on to Statement Number

25  43.  Is Charlene Baldizan considered to be a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240905

```
 1    co-conspirator?

 2         A.   Yes.

 3         Q.   Why is that?

 4         A.   She assisted the Gallegos brothers in

 5    hiding from law enforcement.

 6         Q.   And is that where the harboring a fugitive

 7    charge came from?

 8         A.   I believe so.

 9         Q.   And are you aware of the disposition of

10    that particular charge?

11         A.   I think it was dismissed.

12         Q.   Okay.  Do you know why she stated that she

13    thought that the Gallegos brothers thought the police

14    were looking for the van?

15         A.   She said the suspect knew it was registered

16    to them and they did not want it at the motel where

17    they were staying.

18         Q.   And did she attribute that to either one of

19    the Gallegos brothers?

20         A.   She did not.

21         Q.   And when did she make the statement?

22         A.   November 20.

23         Q.   And that was against the State Police?

24         A.   Yes.

25         Q.   Okay.  And that statement was recorded?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6906

```
 1        A.   I believe it was, but I'm not entirely
 2   sure.
 3        Q.   And do you know why the charges were
 4   dismissed?
 5        A.   No.
 6        Q.   Do you know if she was given an immunity
 7   agreement?
 8        A.   I don't know.
 9        Q.   Okay.  Statement Number 44.  And I believe
10   when you were testifying as Mr. Benjamin was asking
11   you questions, you said that it was only Joe Gallegos
12   asked Jason to clean up the living room; is that
13   correct?
14        A.   I'd have to double-check.
15        Q.   Okay.
16        A.   Yes, it was.
17        Q.   There is also something about Joe Gallegos
18   asked Van Veghel to clean blood off the air
19   compressor?
20        A.   Yes.
21        Q.   What's the significance of the air
22   compressor?
23        A.   Aside from there being blood on there?  I
24   don't know that there is any more.
25        Q.   There is no other significance, other than
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6906

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242907

```
 1    there was blood?

 2         A.   Yes, evidence.

 3         Q.   And who tested the blood on the air

 4    compressor?

 5         A.   No one did.  Mr. Van Veghel wiped it off.

 6         Q.   But isn't it true, if he just wiped it off,

 7    that there would still be blood that would be

 8    viewable, like through a black light or something?

 9         A.   I don't believe the New Mexico State Police

10    were looking for blood in 2012 or 2013.

11         Q.   Okay.  So was there any blood tested from

12    the air compressor?

13         A.   Not that I'm aware of.

14         Q.   Okay.  Move on to Statement Number 45.  And

15    who was the source of Statement Number 45?

16         A.   Jason Van Veghel.

17         Q.   And he gave the statement in 2016; is that

18    correct?

19         A.   Yes.

20         Q.   Which field was Andrew Gallegos alleged to

21    have thrown these keys and the wristwatch?

22         A.   It's a field off of Ladera Road.

23         Q.   How do you know?

24         A.   That's what Mr. Van Veghel says.

25         Q.   And his statement -- was that recorded?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6907

```
 1        A.   I don't think it was.

 2        Q.   Was that a statement taken by the FBI?

 3        A.   Yes.

 4        Q.   And what is the FBI policy for recording

 5   statements?

 6        A.   We're only mandated to record interviews of

 7   recently arrested people right after Miranda or

 8   before Miranda but if a person is being Mirandized.

 9        Q.   Okay.  And Jason Van Veghel was not

10   Mirandized?

11        A.   No, I don't think he was.

12        Q.   Is that because he was not considered to be

13   a co-conspirator?

14        A.   I don't know.

15        Q.   Was Jason Van Veghel considered to be a

16   co-conspirator?

17        A.   I think he is.

18        Q.   And the wristwatch.  What significance is

19   that?

20        A.   I think there is an assumption that it may

21   have belonged to the victim.

22        Q.   And how do you know that?

23        A.   I think it's an assumption.

24        Q.   Okay.  So you don't know that?

25        A.   No.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And did anyone report a missing watch?

 2        A.    No.

 3        Q.    And did the wife or the girlfriend or the

 4   mother or anyone else in Mr. Burns' life report that

 5   there was a watch missing?

 6        A.    Not to my knowledge.

 7        Q.    And what about the keys?  What were the

 8   keys to?

 9        A.    I think that's another assumption that it

10   belonged to the vehicle that was burned.

11        Q.    Okay.  And was that ever confirmed?

12        A.    No, we never found the keys.

13        Q.    And did you ever find the watch?

14        A.    No, we didn't.

15        Q.    What efforts did the FBI make to -- or the

16   New Mexico State Police or any other agency make to

17   find the keys or wristwatch in that field?

18        A.    They attempted to conduct a search of

19   fields on Ladera Road.

20        Q.    And when was that?

21        A.    I believe it was 2016.

22        Q.    Okay.  So the fact that a wristwatch and

23   the set of keys may have been thrown by Andrew

24   Gallegos -- I guess I want you to somehow tell me how

25   that's relevant.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6909

1         A.   Well, it's based on the assumption that the

2    keys belonged to the burned vehicle and the watch

3    belonged to the victim.

4         Q.   Okay, thank you.  Statement Number 46.  I'm

5    not clear on what the stolen goods were.

6         A.   I'm not either.

7         Q.   Okay.  So we don't know?

8         A.   No.

9         Q.   Okay.  And the guns.  What is the

10   significance of the guns?

11        A.   A gun was used to murder Mr. Burns.

12        Q.   And was it one of these guns that --

13        A.   We don't know.  They weren't recovered.

14        Q.   Okay.  So there's other reasons why Mr.

15   Gallegos might want to get rid of a gun and some

16   stolen goods; isn't that true?

17        A.   Yes.

18        Q.   And this statement by Jason Van Veghel --

19   was that also in 2016?

20        A.   Yes.

21        Q.   And that was also the statement that was

22   not recorded?

23        A.   Correct.

24        Q.   You started to tell me about the policy.

25   Is that policy written anywhere?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6910

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 246911

```
 1          A.    I believe so.

 2          Q.    Is that something that we have access to?

 3          A.    I don't know.

 4          Q.    And do you mind sharing that policy with

 5    us?

 6          A.    I'd have to speak with our chief division

 7    counsel.

 8          Q.    And does Jason Van Veghel acknowledge that

 9    he did take a gun and other stolen goods?

10          A.    That's what he told us.

11          Q.    And does he tell you where he stored those

12    goods?

13          A.    No, he doesn't.

14          Q.    And did he ever turn those goods over to

15    you?

16          A.    No, he didn't.

17          Q.    Did the FBI ask for those guns?

18          A.    I don't know.  I wasn't there.

19          Q.    Okay.  Who took that statement?

20          A.    Agent Acee.

21          Q.    And what document are you referencing to

22    give me this information and to give it to the Court?

23          A.    43658 and 59.

24          Q.    I'm sorry?

25          A.    And 59.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6911

1      Q.   And there is no documentation as to whether

2  or not Jason Van Veghel ever produced those stolen

3  goods and the weapons?

4      A.   No, not to my knowledge.

5      Q.   Not to your knowledge, he didn't produce

6  it?  Not to your knowledge, it wasn't requested?

7      A.   Both.

8      Q.   Okay.  Thank you.

9           Now, regarding the statements that have

10  been tendered that referenced on or about February 27

11  of 2016, do those in any way relate to Andrew

12  Gallegos?

13      A.   They do not.

14      Q.   None of them are attributed to him;

15  correct?

16      A.   Correct.

17      Q.   And none of them reference him; correct?

18      A.   Correct.

19      Q.   And he's not involved in any way with

20  anything that went on on or about February 27 of

21  2016; isn't that true?

22      A.   Correct.

23      Q.   Now, there is a Statement 51.  I'm a little

24  confused by that statement, if you can help me out.

25  It might have been changed.  I don't know.  So you're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 248

1    going to have to help me.  "Joe Gallegos feared Gomez

2    would testify against him on a state murder charge."

3             Do you have any reason to believe that

4    references the Adrian Burns murder?

5        A.   No.

6        Q.   Are you positive that does not reference

7    the Adrian Burns murder?

8        A.   Yes.

9        Q.   And then Statement Number 54.  This is

10   another 2016 statement.  What was the context of

11   Brandy Rodriguez' statement when she said, "You

12   better not testify against my jefe"?

13       A.   I believe she was talking about Joe

14   Gallegos and she was telling this to Jose Gomez.

15       Q.   And Paul Rivera was the one that gave this

16   statement to the FBI?

17       A.   He did.

18       Q.   And is that statement recorded?

19       A.   No.

20       Q.   And so when Paul Rivera gave you that

21   statement, what were the surrounding circumstances

22   that he explained to you?  Specifically I want to

23   know if anyone else called Joe Gallegos "jefe."

24       A.   I don't think anyone else did.

25       Q.   Do you need to verify that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I can look, but I'm pretty sure that no one
 2   else called him "jefe."
 3        Q.   And specifically did Andrew Gallegos ever
 4   call him "jefe"?
 5        A.   Not to my knowledge.
 6        Q.   So based on your investigation, is it fair
 7   to say that Andrew Gallegos did not call him "jefe"?
 8        A.   That's a fair assumption.
 9        Q.   I'm sorry?
10        A.   That's a fair assumption.
11        Q.   Well, I don't want to assume.  I want to
12   know what you've learned in your investigation.
13        A.   I don't remember seeing anything where
14   Andrew refers to his brother as jefe.
15        Q.   And does anyone else?  Because before you
16   keep saying that's an assumption, I assume so.  Does
17   anyone else call Joe Gallegos jefe except for Brandy?
18        A.   Not that I'm aware of.
19        Q.   Okay.  And I want to confirm on Statement
20   Number 69.  There is a statement there that Paul
21   Rivera attributes to Brandy Rodriguez saying, "This
22   is a message from Joe."  That is a direct quote?
23        A.   The actual sentence says Rodriguez entered
24   the bedroom and kicked Gomez once and said something
25   to the effect of "This is a message from Joe."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6914

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 250 6915

```
 1          Q.   Okay.
 2               MS. TORRACO:  May I have a moment, Your
 3     Honor.
 4               THE COURT:  You may.
 5               MS. TORRACO:  That's all the question I
 6     have.  Thank you.
 7               THE COURT:  Thank you, Ms. Torraco.
 8               MS. TORRACO:  Thank you, Your Honor.
 9               THE COURT:  All right.  Ms. Arellanes.
10               MS. ARELLANES:  Thank you, Your Honor.
11                    CROSS-EXAMINATION
12     BY MS. ARELLANES:
13          Q.   I'd like to follow up on some of the
14     questions that Mr. Benjamin asked you this morning.
15          A.   Okay.
16          Q.   Now, with regard to Statement Number 47,
17     I'll direct your attention to that statement?
18          A.   Okay.
19          Q.   The declarant there is -- I'm sorry, the
20     source there is Jose Gomez; is that correct?
21          A.   Yes.
22          Q.   And in fact, Jose Gomez gave a couple of
23     statements during the course of this investigation;
24     is that correct?
25          A.   I believe so.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6915

```
 1          Q.   And the first statement was on 2/27/16,
 2   when he was talked to at the hospital by Otto King?
 3          A.   Yes.
 4          Q.   And then the second statement he gave was
 5   on 3/9/16, when he was interviewed by Mr. Acee, Agent
 6   Acee?
 7          A.   I believe so.
 8          Q.   And in the statement at the hospital Jose
 9   Gomez said that Oso told Gomez, "You remember me?"
10          A.   No, he said Gonzalez said that.
11          Q.   Okay.  Now if I show you a transcript of
12   the statement where he said that Oso said, "You
13   remember me, fool," would that -- where do you get
14   that information that Santos told Gomez, "You
15   remember me?"  Where is it written down?
16          A.   In Detective King's report.
17          Q.   Now, have you seen the transcript of Jose
18   Gomez's interview at the hospital?
19          A.   No.
20          Q.   Okay.  And if I show you a statement of
21   that showing what he said, he said it was Oso that
22   told him that rather than Santos --
23          A.   That would help.
24               MS. ARELLANES:  May I approach the witness,
25   Your Honor?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6916

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 252 of 307

```
 1              THE COURT:  You may.
 2    BY MS. ARELLANES:
 3         Q.   I'll direct your attention to this part.
 4              MR. CASTELLANO:  Your Honor, is there a
 5    Bates stamp associated with that?
 6              MS. ARELLANES:  There is no Bates stamp.
 7    It was an interview taken at the hospital.  I don't
 8    think there is a transcript of that in the discovery.
 9         A.   This doesn't look like a transcript.
10    BY MS. ARELLANES:
11         Q.   Okay.  Have you listened to the interview?
12         A.   I have not.
13         Q.   Okay.  So you actually have not listened to
14    the interview itself?
15         A.   No.
16         Q.   Okay.  So you can't say for certain, other
17    than the report by Otto King, that Santos was the
18    source of that information to Jose Gomez; is that
19    correct?
20         A.   Correct.
21         Q.   So once you interview -- once you listen to
22    the audio of that particular interview, you probably
23    would have a little bit more information about that;
24    is that correct?
25         A.   Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253

```
 1        Q.   And the next statement is that they told
 2   Gomez that Joe Gallegos put a hit out and they were
 3   there to kill him.  When was that statement made by
 4   Jose Gomez?
 5        A.   On the same day of the assault.
 6        Q.   Okay.  And to whom?
 7        A.   To Mr. King.
 8        Q.   And did you listen to the audio interview
 9   of Agent Acee of Jose Gomez?
10        A.   I don't know that there is audio.
11        Q.   Okay.  Yeah, there is.  You haven't
12   listened to it?
13        A.   No, I haven't.
14        Q.   Now, with regard to Statement Number 48,
15   the source of that statement is Brandy Rodriguez; is
16   that correct?
17        A.   Yes.
18        Q.   And that particular statement -- have you
19   reviewed the 302 of Brandy's statement on 32816?
20        A.   That's not 302.  That's a Valencia County
21   report.
22        Q.   So I think there is a 302.  I believe if I
23   show you the 302, would you agree that there is a
24   302 --
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6918

```
 1        Q.   -- on Brandy.  Okay.
 2             THE COURT:  Ms. Arellanes, do you want to
 3   let her look at this during the break?
 4             MS. ARELLANES:  Sure, Your Honor.
 5             THE COURT:  Let's be in recess about 15
 6   minutes.
 7             (The Court stood in recess.)
 8             THE COURT:  Let's go back on the record.
 9             All right, Ms. Stemo.  I'll remind you that
10   you're still under oath.
11             Ms. Arellanes, if you wish to continue your
12   cross-examination of Ms. Stemo, you may do so at this
13   time.
14             MS. ARELLANES:  Thank you, Your Honor.
15             THE COURT:  Ms. Arellanes.
16   BY MS. ARELLANES:
17        Q.   Okay.  Now, going back to Statement Number
18   47, Jose Gomez gave an audio statement that you did
19   not hear; is that correct?
20        A.   Yes.
21        Q.   And in that audio statement he mentioned
22   that Joe Lawrence was seeing an ex-girlfriend by the
23   name of Mary Crumpton; is that correct?
24        A.   I don't know.  Like I said, I didn't listen
25   to the audio.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6919

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255920

1       Q.   Now, with regard to Statement Number 48,

2   the declarant there is -- the source there is Brandy

3   Rodriguez and she stated that Shauna Gutierrez didn't

4   finish him when Gomez ran away?

5       A.   Yes.

6       Q.   Now, that particular statement is not

7   written on the 302 of 328 that I showed you earlier;

8   is that correct?

9       A.   Correct.

10      Q.   And in fact, that statement is not on the

11  302; that Brandy Rodriguez gave several statements to

12  Acee; is that correct?

13      A.   I'm not sure if she spoke to Agent Acee.

14  But she did give several statements to FBI agents.

15      Q.   Okay.  The first statement was on 3/28/16,

16  the 302 that I showed you.

17      A.   Yes.

18      Q.   Then there was another statement on

19  7/12/16.  There was another 302 written about that?

20      A.   July 6, 2016.

21      Q.   I'm sorry, July 12 of 2016.

22      A.   That's the date of entry.  The interview

23  was actually on the 6th.

24      Q.   I've got a copy.  Do you wish to look at

25  it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6920

```
 1        A.   Sure.

 2        Q.   I'll give you a chance so you don't have to

 3   hunt for it.

 4             MR. CASTELLANO:  Could we have a Bates

 5   stamp for that 302, please?

 6             MS. ARELLANES:  43423.

 7        A.   I have that report.  It is an interview on

 8   July 6.

 9   BY MS. ARELLANES:

10        Q.   July 6.  The date of entry was on July 12.

11   I'm sorry.  Yeah.  And that particular statement is

12   not in that 302?

13        A.   Correct.

14        Q.   And in fact, Brandy said that she was

15   pretty drunk on the day of the event?

16        A.   Yes.

17        Q.   And she was highly intoxicated at 9:00 in

18   the morning?

19        A.   I believe so.

20        Q.   And she had a spotty memory of the events?

21        A.   Yes.

22        Q.   Now, jumping over to Statement Number 51.

23   The source of that statement is Paul Rivera.  And the

24   statement says that Shauna Gutierrez and Brandy

25   Rodriguez told him that Joe Gallegos had put a hit --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6921

```
 1   the declarant was Shauna Gutierrez and Brandy

 2   Rodriguez, and Joe Gutierrez had placed a hit on

 3   Gomez, because Gallegos feared Gomez would testify

 4   against him on a state murder charge; is that

 5   correct?

 6        A.   I think you mixed up some names.  Paul

 7   Rivera doesn't say who told him.  He just says he was

 8   with Shauna and Brandy, and he learned of the green

 9   light on Mr. Gomez.

10        Q.   Oh, okay.  And so again I direct your

11   attention to the 302 of Paul Rivera dated 10/26/16.

12        A.   Okay.

13        Q.   And I direct your attention to the last

14   paragraph of the first page, and that would be Bates

15   No. 43417.

16        A.   Okay.

17        Q.   And it says, "Although Rivera did not know

18   why Rodriguez wanted to confront Rodriguez, he went

19   with her and Gonzalez in Gutierrez's truck."  Did he

20   say that?

21        A.   Yes.

22        Q.   And in fact, Paul Rivera gave an audio

23   statement when he was interviewed back in May of

24   2016; is that correct?

25        A.   I'm not sure.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6923

```
 1          Q.   Okay.  If I show you a transcript, will
 2   that reassure you that there was an audio statement?
 3          A.   It would.
 4               MS. ARELLANES:  May I approach the witness,
 5   Your Honor?
 6               THE COURT:  You may.
 7          A.   Yes.
 8   BY MS. ARELLANES:
 9          Q.   Then have you listened to this audio
10   statement?
11          A.   I have not.
12          Q.   I'm sorry?
13          A.   I have not.
14          Q.   Okay.  And I think you testified earlier to
15   Ms. Torraco that you -- there was not an audio
16   statement of Paul Rivera, didn't you?
17          A.   His later statements.
18          Q.   His later statements, okay.  And in the
19   audio statement, Rivera tells Acee supposedly they're
20   saying that he had a beef with Joe before Joe stuck
21   him through his hand; you don't recall that?
22          A.   Well, Mr. Acee was at that interview.
23          Q.   Yeah.  All right.  So I'll direct your
24   attention to the middle of the page right here.
25          A.   Do you want me to read it?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 6923

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 259 6924

```
 1          Q.   Well, read this part right here.

 2          A.   Okay.  "Mr. Rivera:  But that was over.  I

 3    don't know.  But they're saying that he knows about a

 4    murder Joe did, I guess, out here, that he's

 5    testifying against him.  That's what Brandy says."

 6          Q.   Okay.  So that's what Brandy says; is that

 7    correct?

 8          A.   According to Paul Rivera.

 9          Q.   Well, he's the source of your -- he's going

10    to be a witness for the Government in this case?

11          A.   Yes.

12          Q.   But he didn't say anything about Shauna,

13    did he?

14          A.   In this transcript?

15          Q.   Right.

16          A.   I don't know.  I'd need to read the entire

17    transcript.

18          Q.   In that particular portion, that particular

19    paragraph?

20          A.   No, he doesn't.

21          Q.   And again, with regard to Statement Number

22    52, the source, there again, is Paul Rivera.  Okay.

23    And it's not clear.  I guess there are two sources

24    there, Paul Rivera and Brandy Rodriguez.

25          A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6924

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 260 6925

1        Q.   It says, "Upon learning where Gomez is

2   staying, Shauna and Brandy agreed they needed to go

3   after Gomez"?

4        A.   Yes, that's what that says.

5        Q.   And again I direct your attention to the

6   302 of 10/26/16 of Paul Rivera.  I think I lost it.

7   Oh, here it is.  Do you have that Bates No. 43417?

8        A.   I have it.

9        Q.   And on the fourth paragraph down it says,

10  "Gutierrez learned that Gomez was at a nearby

11  trailer.  Rodriguez said, 'Let's go,' to Gomez and

12  Rivera"; is that correct?

13       A.   Yes.

14       Q.   So there is nothing in that particular

15  paragraph that says that Shauna Gutierrez and Brandy

16  Rodriguez agreed?

17       A.   No, not in that paragraph.

18       Q.   Now, with regard to -- I'll jump over to

19  Statement Number 56, and that's Paul Rivera.  So that

20  would be Bates No. 43413.

21       A.   Okay.

22       Q.   And so the source there again is -- I think

23  Mr. Benjamin talked about this this morning -- the

24  declarant is Brandy Rodriguez, Paul Rivera, or Santos

25  Gonzalez?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6925

```
 1          A.   Yes.

 2          Q.   They told Shauna Gutierrez that they had

 3   completed their mission, and Shauna Gutierrez laughed

 4   and said she was "happy to hear" Gomez is likely

 5   dead.  Now, on this particular 302, is there anything

 6   in there saying this statement?

 7          A.   There is.

 8          Q.   There is?

 9          A.   Yes, on the next page.

10          Q.   I'm sorry?

11          A.   On the next page.

12          Q.   What Bates number?

13          A.   43414.

14          Q.   Okay.

15          A.   The third paragraph at the end, it says,

16   "Shauna laughed and said that Gallegos would be happy

17   to hear the news."

18          Q.   And this is the interview of 5/8/16?

19          A.   Yes.

20          Q.   Now, with regard to Statement Number 58,

21   okay, the source there is Brandy Rodriguez, and the

22   statement is:  "How come you guys didn't do the job

23   more fully after she previously told Rivera,

24   Gonzalez, and Rodriguez to go get him."

25               Now, the source of that statement is Brandy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6926

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 262

```
1    Rodriguez; is that correct?

2         A.    Just a moment.  Let me find it.

3         Q.    Okay.

4         A.    Yes, that is Brandy.

5         Q.    Brandy did not say that on 3/28/16 when she

6    was arrested; is that correct?

7         A.    I don't believe so.

8         Q.    And she also gave a statement on 7/12/16,

9    or that was the date of the 302.  She didn't say that

10   at that time, did she?

11        A.    I don't think she did.

12        Q.    And when did Paul Rivera state this

13   particular statement?

14        A.    Brandy Rodriguez made that statement.

15        Q.    Okay.  But there is an entry saying that

16   Paul Rivera is also a source.

17        A.    I think that references the "go get him"

18   part.

19        Q.    I'm sorry?

20        A.    I think that references the "go get him"

21   part.

22        Q.    Okay.

23        A.    That's on 43423.

24        Q.    Now, with regard to Mario Chavez, the

25   statement says Brandy Rodriguez and Shauna Gutierrez
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6927

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 263928

1    had people in place for an attack on Gomez.  Where

2    did Mario Chavez get that information?

3         A.   Brandy Rodriguez told him that.

4         Q.   And how does he know Brandy Rodriguez?

5         A.   I don't know.

6         Q.   And that particular information was

7    obtained on 4/19/17; is that correct?

8         A.   No.

9         Q.   That information was obtained on 3/29/17?

10        A.   Yes.

11        Q.   Approximately over a year after the alleged

12   assault?

13        A.   Yes.  I take that back.  I think Mario

14   Chavez dated Brandy Rodriguez briefly.

15        Q.   Okay.  And one of the statements is that he

16   says that he was the go-between, between when Joe

17   Lawrence was in jail in the county jail in Valencia

18   County?

19        A.   Yes.

20        Q.   And he was the go-between between him and

21   who?

22        A.   Shauna Gutierrez and Brandy Rodriguez.

23        Q.   So he would give notes to Brandy and

24   Shauna?

25        A.   I believe so.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6928

```
 1        Q.   Okay.  Now, Joe Lawrence is actually dating

 2   Mary Crumpton at that time; is that correct?  Or do

 3   you know?

 4        A.   I don't know.

 5        Q.   And I suppose if you had listened to Jose

 6   Gomez' interview, you would hear that?

 7        A.   If it's on there.

 8        Q.   I'm sorry?

 9        A.   If it's on there, yes.

10        Q.   And what benefit did Mr. Mario Chavez get

11   in talking to you guys?

12        A.   I don't think he received anything aside

13   from a Kastigar letter.

14        Q.   Okay.  Then how did he get wind about

15   Mr. Mario Chavez?

16        A.   I believe one of the STIU officers at

17   Central notified me that a new SNM member had

18   arrived.

19        Q.   Okay.  And how is that relevant to the

20   assault to Jose Gomez, though?

21        A.   It wasn't at the time.  I just went down

22   and talked to Mr. Chavez.

23        Q.   But how did you know to talk to him?

24        A.   It was just a tip that I received from an

25   STIU officer.  There was nothing indicating that he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6929

```
 1   would have any information.
 2        Q.   All right.  And did he say when Brandy told
 3   him when Shauna told her they would get people
 4   together to assault JG, Jose Gomez?
 5        A.   No.
 6        Q.   Now, with regard to -- go to Statement
 7   Number 69 and 70.  Let's go to Statement Number 70.
 8   The source there is Paul Rivera; the declarant there
 9   is Shauna Gutierrez?
10        A.   Yes.
11        Q.   And Shauna Gutierrez stated she is ride or
12   die with Joe Gallegos after admitting that she and
13   Joe Gallegos put a hit on Brandy Rodriguez based on
14   her belief that Rodriguez was a cooperator?  Now,
15   this was obtained on a bus ride from Torrance County
16   to court in November of 2016, one of the court
17   hearings?
18        A.   I believe so.
19        Q.   And now, was that statement recorded in any
20   way?
21        A.   Which statement?
22        Q.   That she's ride or die with Joe Gallegos?
23        A.   No, it wasn't.
24        Q.   Paul Rivera was not wired at that time?
25        A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6930

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6931

```
 1        Q.   And in fact, Joe Lawrence was housed in
 2   Otero County at that time; is that correct?
 3        A.   I believe so.
 4        Q.   And Shauna Gutierrez was housed in Torrance
 5   County at that time?
 6        A.   I believe so.
 7        Q.   Now, did you intercept any letters between
 8   Shauna or Joe indicating that there was a conspiracy
 9   to murder Brandy Rodriguez?
10        A.   I did not, no.
11        Q.   Are there any letters at all that you know
12   of?
13        A.   No.
14        Q.   Okay.  Are there any phone calls between
15   anybody showing that there is a conspiracy to murder
16   Brandy Rodriguez between Shauna and Joe Lawrence?
17        A.   None that I'm aware of.
18        Q.   So the only thing you really have is a
19   statement by Paul Rivera?
20        A.   Yes.
21        Q.   No corroboration at all?
22        A.   No.
23        Q.   By any source?
24        A.   No.
25        Q.   By anybody?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6931

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267

```
 1        A.   No.
 2        Q.   Now, in the bus ride there were other
 3   people in the bus at the same time; is that correct?
 4        A.   I assume so.
 5        Q.   Normally men and women are not placed
 6   together in the bus ride from the jail?
 7        A.   I don't know that.
 8        Q.   They usually keep the females separated
 9   from the men?
10        A.   I don't know what the transport policies
11   are.
12        Q.   Who placed Paul Rivera next to Shauna
13   Gutierrez?
14        A.   I don't know.
15        Q.   Was that a calculated move?
16        A.   No.
17        Q.   But you don't know that?
18        A.   No.
19        Q.   Obviously Paul Rivera sat next to Shauna
20   Gutierrez to engage in a conversation with her; is
21   that correct?
22        A.   I don't know that he said that they sat
23   next to each other.  He just said they had a
24   conversation on a van.
25        Q.   Okay.  All right.  And no one else heard
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6932

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268   6933

```
 1    that conversation?

 2         A.   Not I'm aware of.

 3         Q.   None of the guards?

 4         A.   Not that I'm aware of.

 5         Q.   Or any of the other inmates?

 6         A.   No.

 7         Q.   So it's just a bald statement by Paul

 8    Rivera?

 9         A.   Yes.

10              MS. ARELLANES:   I have no further

11    questions.

12              THE COURT:   Thank you, Ms. Arellanes.

13              Before I ask Mr. Castellano if he has any

14    redirect, does any other defendant want to ask

15    anything further?

16              All right.   Mr. Castellano.

17                    REDIRECT EXAMINATION

18    BY MR. CASTELLANO:

19         Q.   Agent Stemo, turning to the Burns murder,

20    you were asked, related to Statement 41, about any

21    evidence collected from the house and anything Jason

22    Van Veghel did.   Were you aware of whether or not he

23    was asked to remove a carpet from Joe Gallegos and

24    Andrew Gallegos' house?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6933

1       Q.   And in addition, was he asked to wipe down

2    a compressor to remove the blood from it?

3       A.   Yes.

4       Q.   And in your experience, would that have

5    made it more difficult to collect evidence from that

6    home?

7       A.   It would have.

8       Q.   You also were asked about your experience.

9    What were you doing before the FBI?

10      A.   I was in the military.

11      Q.   Which branch?

12      A.   The United States Army.

13      Q.   For how long?

14      A.   Six years.

15      Q.   What was your rank?

16      A.   I was a staff sergeant.

17      Q.   And what was your MOS?

18      A.   I was an intelligence analyst.

19      Q.   Okay.  Now, you were asked about this once

20   again at the gas station related to the Burns

21   homicide.  There is an indication that they were --

22   the Gallegoses were giving out money and drugs.  Do

23   you recall that?

24      A.   Yes.

25      Q.   And was it -- related to the drugs, was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6934

1    there something distinctive about the way that Adrian

2    Burns would package his drugs?

3         A.   There was.

4         Q.   And did the witnesses who received those

5    drugs recognize those as the drugs that Adrian Burns

6    would normally have and package?

7         A.   Yes.

8         Q.   The statements we have related to the Jose

9    Gomez assault, when the table refers to things that

10   they said generally, is that an indication that the

11   group was conveying information to someone like

12   Shauna Gutierrez?

13        A.   Yes.

14        Q.   For example, let me turn your attention to

15   Statement Number 56.  So when it says, "They told

16   Shauna they had completed their mission," was that an

17   indication, then, by Paul Rivera that the group had

18   conveyed that information to Ms. Gutierrez?

19        A.   Yes.

20        Q.   You were asked about a statement, not

21   necessarily a co-conspirator statement but an

22   admission, that Billy Garcia admitted to the Castillo

23   and Garza murders.  Do you recall that?

24        A.   I do.

25        Q.   Do you know if there was any specific

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6935

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6936

```
 1    follow-up so far as to that statement?

 2         A.   I think there was.

 3         Q.   And you were asked about the incident

 4    between Baby Zack and Gerald Archuleta.  So were you

 5    present at Trial 1 when that testimony was given?

 6         A.   I was not.

 7         Q.   You were also asked about -- by Ms.

 8    Arellanes about a possible, prior conflict between

 9    Joe Gallegos and Jose Gomez.  Do you remember that?

10         A.   Yes.

11         Q.   And if there is a prior conflict, would

12    that then provide a reason or a motive for Joe

13    Gallegos to then stab or assault Jose Gomez?

14              MR. BENJAMIN:  Objection, speculation, Your

15    Honor.

16              THE COURT:  Well, it may be, but I want to

17    hear what the Government's theory is for getting

18    these things in, so I'll overrule it.

19         A.   Yes.

20              MR. CASTELLANO:  May I have a moment, Your

21    Honor?

22              THE COURT:  You may.

23              MR. CASTELLANO:  Thank you, Your Honor.  I

24    pass the witness.

25              THE COURT:  Thank you, Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6936

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 272

```
 1              Did you have something further, Mr.
 2   Benjamin?
 3              MR. BENJAMIN:  Yes, Your Honor.
 4              THE COURT:  All right.  Mr. Benjamin.
 5                   RECROSS-EXAMINATION
 6   BY MR. BENJAMIN:
 7        Q.   I'm going to do this kind of the way Mr.
 8   Castellano did.  I'm going to refer to these
 9   statements generally.  If there is one that you want
10   me to go back and refer to, I can go back and refer
11   to it.  But you were asked about the packaging, if
12   there was a unique way that the drugs were packaged;
13   correct?
14        A.   Yes.
15        Q.   And that was something that was known to
16   the New Mexico State investigators, State Police?
17        A.   Yes.
18        Q.   They were the ones that took Michael
19   Sutton's statement?
20        A.   Yes.
21        Q.   On the day of -- essentially the 13th is
22   when they took his initial statement?
23        A.   Yes.
24        Q.   Okay.  And they looked for that packaging
25   at the house three days after.  Well, they searched
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6937

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273

```
 1    the house three days after; correct?
 2         A.   They did search.
 3         Q.   And there was no packaging marked in the
 4    way that Daniel Orndorff referred to Babylon
 5    packaging his drugs; correct?
 6         A.   Not that I'm aware of.
 7         Q.   You're smiling.  That kind of is something
 8    they would have looked for, probably; right?
 9         A.   I would think so.
10         Q.   And they certainly would have noted it if
11    they'd found it?
12         A.   Yes.
13         Q.   And there was an -- Mr. Castellano asked
14    you about wiping things down?
15         A.   Yes.
16         Q.   We don't know what they could have found,
17    is probably the best way to put it, had they tested
18    any of the materials for -- that had been wiped down;
19    correct?
20         A.   In 2012?
21         Q.   In 2012 or in 2016, both times that DNA was
22    looked for.
23         A.   Yes.
24         Q.   Okay.  And if you look at the 2003 Chevy
25    Silverado, that's the white truck that was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 76939

```
 1    essentially seized that I think the New Mexico State
 2    Police believes was used in the murder; correct?
 3         A.   Yes.
 4         Q.   That truck is anything but clean; is that
 5    fair?
 6         A.   Yes.
 7         Q.   There is no way to describe that truck as
 8    having been wiped down.  And will you go so far as to
 9    agree, anywhere on that truck?
10         A.   I don't know that.
11         Q.   Okay.  But they found blood in that truck?
12         A.   I think suspected blood.
13         Q.   And they cut it out and they found out it
14    wasn't; right?
15         A.   I believe so.
16         Q.   Okay.  And so the house and the 2003 truck
17    would indicate that this was not an overly
18    sophisticated or wiped-down set of, I wouldn't say
19    crime scene, but that's the Government's term.  But
20    neither one of these was wiped down or handled very
21    sophisticatedly; is that correct?
22         A.   By whom?
23         Q.   By the Gallegos brothers, or Joe
24    specifically.
25         A.   I would disagree.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6939

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6940

```
 1        Q.   Okay.  What part of the 2003 Chevy
 2   Silverado leads you to believe that it was handled
 3   sophisticatedly?
 4        A.   I would disagree to the 4 Aaron Court
 5   portion of your statement.
 6        Q.   Okay.  Why?
 7        A.   Because we have witness testimony -- not
 8   testimony, but a witness statement that he helped
 9   clean up, specifically he moved the carpet, he
10   cleaned the air compressor, he got rid of wood.
11        Q.   And this is an individual who -- everything
12   he's told you cannot be corroborated; correct?
13        A.   To some extent.
14        Q.   I mean, we know about the watch and keys
15   that he told you about.  There is no other mention of
16   those watch and keys in the reports.
17        A.   Correct.
18        Q.   He's told you about the carpet.  That
19   wasn't mentioned by Karen Cartwright?
20        A.   Correct.
21        Q.   And then so, as a general -- or a specific
22   statement, Jason Van Veghel, who is a known drug
23   user, convicted felon, hasn't had any of his
24   information corroborated?
25        A.   That's not true.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6940

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 276941

```
1        Q.   What has been corroborated?
2        A.   His timeline leading up to when he says the
3   watch and the keys were thrown out of the truck.
4   That matches up with what Karen Cartwright told us.
5        Q.   What did she tell you?
6        A.   Their timelines match.  He says that they
7   picked her up, I think, two days after the homicide.
8   And she confirms the date that they picked her up was
9   two days after the homicide.
10       Q.   Well, she bought it out the 13th; right?
11       A.   I don't know that.  I could be wrong on two
12  days.  It could have been one day.
13       Q.   Well, but -- and we're discussing --
14  Ms. Cartwright never mentions -- Karen Cartwright
15  never mentions that the keys or watch were --
16       A.   Mr. Van Veghel doesn't put Karen Cartwright
17  in that truck when that happens.
18       Q.   Right.  But at no point in time does he
19  tell her that, "Oh, by the way, I threw keys and a
20  watch out of the car."  This is a 2016 statement
21  about keys and the watch thrown out of the car on the
22  date that they picked up Karen Cartwright.
23       A.   Yes.
24       Q.   And his statement, in and of itself, is not
25  consistent.  He says one or two days later, I think,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   is when stuff happens?

2       A.   Yes.

3            MR. BENJAMIN:   Pass the witness, Your

4   Honor.   Thank you.

5            THE COURT:   Thank you, Mr. Benjamin.

6            Mr. Castle, do you have further recross?

7            I'm sorry.   Mr. Burke.   I'm sorry.

8            MR. BURKE:   Thank you, Judge.

9                  RECROSS-EXAMINATION

10  BY MR. BURKE:

11      Q.   Just one, Agent Stemo.   I think Mr.

12  Castellano asked you if there had been any follow-up

13  about the statement by Billy Garcia admitting

14  involvement in the homicides.   Did I hear that

15  correctly?

16      A.   Yes.

17      Q.   And you said there was follow-up?

18      A.   Yes.

19      Q.   What was that?

20      A.   I believe Agent Acee spoke with

21  Mr. Frederico Munoz and wrote a report about it.   I

22  don't have that in front of me, so I don't remember.

23      Q.   Okay.   That's the follow-up?

24      A.   Yes.

25           MR. BURKE:   All right.   Thank you.   That's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    all I have.
 2                THE COURT:  Thank you, Mr. Burke.
 3                All right.  Mr. Castellano, do you have any
 4    further redirect?
 5                MR. CASTELLANO:  No, Your Honor.
 6                THE COURT:  All right.  Ms. Stemo, you may
 7    step down.  Thank you for your testimony.
 8                THE WITNESS:  Thank you, Your Honor.
 9                THE COURT:  Does the Government have
10    further witnesses or evidence it wishes to present in
11    support of its James statements?
12                MR. CASTELLANO:  No, Your Honor.
13                THE COURT:  All right.  How about the
14    defendants?  I'd heard some suggestion there might be
15    some witnesses on the James statements.  Mr. Castle?
16                MR. CASTLE:  No, we have no witnesses on
17    the James statement, but I can speak on behalf of all
18    the defendants, we have witnesses on the other --
19                THE COURT:  The motions.
20                MR. CASTLE:  -- and other statements.
21                THE COURT:  All right.  Well, let me tell
22    you what I'm doing, and then you tell me what you
23    want to do.  I am working on a chart.  I'm trying to
24    figure out a little bit the best way to present or
25    decide these issues.  I kind of began to think that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

```
 1    the way to maybe do it is to put on this table that
 2    the Government has -- put the statement there at the
 3    top, just cut and paste the statement.  Underneath it
 4    put defendant and objections.
 5              I created another chart here that has the
 6    objecting documents.  That's the documents that I got
 7    from everybody either today or tomorrow.  I'm losing
 8    track of time.  And then beginning to put some
 9    rulings over here.  But I'm inclined to think I'm
10    going to put the Government's chart first and then
11    notice under their chart they have defendant
12    objections, then put the objections documents
13    underneath it, so I know who is objecting to it, and
14    then underneath that put some ruling on that.
15              Now, if you want to go ahead and argue
16    these one by one right now, that's fine.  If you want
17    to let me take what I've got, what I've heard, give
18    you a chart, like I think I did that in the first
19    trial.  I think I did that to get it started.  If
20    you'd like me to do that, and if we come back to
21    this, you can come back and say, "Hey, Judge, I think
22    you got it all wrong, and here's why," or, "That's
23    close enough; we can live with it," or something like
24    that.
25              I'm not trying to cut anybody off and I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6944

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 280

1    not trying to do your job.  I'm just simply trying to

2    get it.  You're standing, Mr. Castellano.  Do you

3    have a thought?

4              MR. CASTELLANO:  I do, Your Honor.  I would

5    prefer the approach you just mentioned.  But what I

6    really wanted to say also is if it makes it easier

7    for the Court, I can send this table to the Court.

8              THE COURT:  I asked Mr. Hammond, my law

9    clerk, that, and he's much better with computers than

10   I am.  So that was not necessary.  So I think we're

11   okay.  I think we can cut and paste.  I had the same

12   thought, but that would have been my suggestion and

13   probably a few years ago my clerks would have

14   accepted it.  But I guess they're beyond me now.

15   Does that sound okay?

16             MR. CASTLE:  Yes, I think it does, Your

17   Honor, as long as after we see it, we can raise any

18   specific objection.

19             THE COURT:  Then you come back and pick out

20   some of these and take me on.

21             MR. CASTLE:  Makes sense.

22             THE COURT:  Okay.  I hate to stumble ahead

23   without argument, but maybe that's the best way to do

24   it, but it's not precluding argument.

25             MR. CASTELLANO:  The only thing I would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6945

1   add, Your Honor, is that I'm not sure I briefed the

2   Alcorta case at the time we filed this.  It is a case

3   I brought to the Court's attention before, and that's

4   853 F3d 1123.  It the Tenth Circuit 2017.  And this

5   is the one that talks about avoiding detection by law

6   enforcement as a means of furthering the conspiracy.

7   So I would just add that.

8          THE COURT:  Is it furthering the

9   conspiracy, the eight conspiracies you identified, or

10  does it have to be a separate conspiracy as it does

11  for some of the concealment?  You have to have a

12  separate conspiracy for the concealment of the

13  evidence and those things?

14         MR. CASTELLANO:  According to the case, if

15  the conspiracy is ongoing, or the conspiracy hasn't

16  been completed in its entirety, then it can also be

17  in furtherance of the conspiracy.

18         THE COURT:  Well, I would agree with that.

19  I mean, I think if it's ongoing, and it's during.

20  What concerns me is if it's concluded and then -- one

21  downside to doing it this way is that I'm going to go

22  ahead, since I'm thinking on these statements, and

23  probably begin to give you some rulings on the

24  evidence other than maybe the co-conspirators

25  statement.  I didn't preclude anybody from arguing,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    saying, "I don't think you got it right," or, "I

 2    think you're missing something."

 3           But probably my ruling section, I'm going

 4    to start going ahead.  And this is where Mr. Beck I

 5    think was anticipating maybe pulling his motion up,

 6    that I may begin to start making a stab at whether I

 7    think some of this might come in some other ways.

 8    And y'all have done that today.  I've been listening,

 9    and the Government has pulled back some statements

10    saying they don't think it's co-conspirator.

11           So don't panic, but I may go ahead and

12    start putting my thoughts down and telling you what I

13    think it is, and then I'll give you a shot, Mr. Beck,

14    to argue your motion.  But I'm going to start going

15    ahead while I'm concentrating on these statements and

16    start giving you rulings on them and then come back

17    to them.  All right?

18           If everybody is comfortable with that,

19    we'll try to get that out as soon as possible.  And

20    if we begin to crawl through the week and y'all are

21    getting nervous and I'm not getting it to you, I can

22    give you a partial chart, something like that, and

23    give you a chance to argue.  So before we get out of

24    here, you tell me what you need and what you want,

25    and I'll try to accommodate as much as possible.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 6947

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 283948

```
1              All right.  If I understand where we're
2   going next, we're going to the bill of particulars.
3   So I don't know how y'all want to argue these but
4   I'll just take them in order.
5              I think the first bill of particular is
6   1320.  It's Gutierrez's motion for bill of
7   particulars.
8              Ms. Arellanes, do you want to take the lead
9   on this or take your motion up?
10             Let me give you some thoughts I have on
11  many of these motions for bill of particulars like
12  yours.  I think it was filed the middle of October.
13  And it seems like there's a lot of water under the
14  bridge at this point, and now we're even further --
15  more water under the bridge with the James hearing.
16  Tell me what you really need to try to defend Ms.
17  Gutierrez in this case.  What is it that you don't
18  think you know that you need to defend her in this
19  trial?
20             MS. ARELLANES:  Well, Judge, I've gone
21  through all the discovery pretty well.  And again,
22  you know, one of the allegations is that she's an
23  associate or a prospect of the Syndicato.  And other
24  than the romantic relationship, although we've tread
25  over this before --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  You think that's it.

 2                MS. ARELLANES:  Yeah, that's it.

 3                THE COURT:  What if Mr. Castellano or

 4     whoever is going to argue this gets up and says

 5     that's all he's got?  Does that kind of do it for

 6     you?

 7                MS. ARELLANES:  That does it, I guess,

 8     yeah.

 9                And with regard to the second part, one of

10     the elements is that there has to be some

11     consideration of pecuniary value received by Ms.

12     Gutierrez for her efforts.  And so again, there is no

13     indication what type of pecuniary value.

14                THE COURT:  There is another part there,

15     too, about gaining status and membership and

16     enhancement within the organization.  If she -- and I

17     haven't thought this through.  I'm certainly not

18     making any ruling.  It's not mine to make, anyway.

19     But if she's an associate of SNM, it would seem that

20     if she's planning the hit, and she's telling them the

21     location and those sort of things, that that would

22     enhance her status within the organization.  Would

23     that not satisfy that prong?  And even if it doesn't

24     satisfy the prong, isn't that some evidence of it?

25                MS. ARELLANES:  They have to show, first of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6949

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 285 of 6950

```
 1   all, that she's a member of the organization.
 2              THE COURT:  Or an associate.
 3              MS. ARELLANES:  Or an associate.  Yes,
 4   and --
 5              THE COURT:  What do you understand that
 6   word to mean?
 7              MS. ARELLANES:  An associate means, or an
 8   associate-in-fact, and there has to be some sort of
 9   longevity in the organization, more than two months
10   or four months.
11              THE COURT:  And where do you get that
12   language?
13              MS. ARELLANES:  And I think I've argued it
14   once before.  I don't have it with me at the moment.
15              THE COURT:  Is this the motion to dismiss?
16              MS. ARELLANES:  It is, Your Honor, it is.
17   And so for purposes of entering, maintaining, or
18   gaining position within the organization, there is no
19   indication that she was intending on entering,
20   gaining, or maintaining a position in the
21   organization.  So again, she's not a member.  I think
22   the Government has conceded that.  They may say that
23   she's an associate, but then again, they need to
24   prove that she's an associate.  And if she's an
25   associate, what type of benefit would she receive for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 286951

```
 1    the predicate violent crime?

 2            So that's pretty much what I'm asking for,

 3    Judge.

 4            THE COURT:  Thank you, Ms. Arellanes.

 5            MS. ARELLANES:  Thank you.

 6            THE COURT:  Anybody else want to comment on

 7    Ms. Gutierrez's motion for bill of particulars?

 8    Anybody got any on the defense side?

 9            All right.  Mr. Castellano, are you going

10    to argue this?

11            MR. CASTELLANO:  Yes, Your Honor.

12            THE COURT:  We're doing a little bit of

13    deja vu with the motion to dismiss, which I actually

14    got an opinion out on this one.  Do you have anything

15    more that she's an associate other than this romantic

16    relationship with Mr. Gallegos?

17            MR. CASTELLANO:  Well, of course, the time

18    they were romantic, and then anytime, even through

19    today, where they are still associated and still on

20    good terms with each other.  So yes, we would

21    describe her as an associate, not as a member.  That

22    would be through the evidence, and of course, the

23    Court has now heard through the James hearing, some

24    of the things that were associated with attacking

25    Jose Gomez for Joe Gallegos.  And so we have that --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 6951

 1   the evidence before the Court even through the James

 2   hearing.

 3              THE COURT:  But you don't have any evidence

 4   that she's an associate other than what's been

 5   disclosed in discovery or here in open court?

 6              MR. CASTELLANO:  That's correct, through

 7   discovery.

 8              THE COURT:  So this is it?

 9              MR. CASTELLANO:  Through discovery, through

10   phone calls, things of that nature, yes.

11              THE COURT:  Which prong are you going to

12   try to prove her -- is it the advancement within the

13   organization or enhancement in the organization, or

14   is there some pecuniary benefit that she received?

15              MR. CASTELLANO:  We're not aware of any

16   pecuniary benefit, so it would be the other prong.

17              THE COURT:  It's not pecuniary benefit.

18              MR. CASTELLANO:  Correct.

19              THE COURT:  It's the enhancement?

20              MR. CASTELLANO:  That's correct.

21              THE COURT:  Can an associate enhance their

22   position in an organization that they're not a member

23   of?

24              MR. CASTELLANO:  I think they can do things

25   because it's expected of them by virtue of their

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6952

 1    relationship to the enterprise, and an associate can

 2    also aid and abet another member of the enterprise.

 3            So, for example, if Jose Gomez is in harm's

 4    way criminally, as he was with Jose Gomez as a

 5    witness against him, then Shauna Gutierrez could help

 6    to either intimidate witnesses or get rid of

 7    witnesses to help Joe Gallegos.  So --

 8            THE COURT:  Again, on this prong, this

 9    enhancement of status or position prong, you have no

10    other evidence, other than what's already been

11    produced or said here in open court --

12            MR. CASTELLANO:  Correct.

13            THE COURT:  -- or in the briefing?  You

14    don't have any other evidence other than you've

15    already --

16            MR. CASTELLANO:  Yes, that's correct, Your

17    Honor.  I would say through the discovery and through

18    what we have in court.

19            THE COURT:  Anything else on these two

20    aspects that Ms. Arellanes is now focusing on at this

21    hearing?  Anything else you can tell her that you're

22    going to do to get a conviction of her client on

23    those two prongs?

24            MR. CASTELLANO:  No.  Just through witness

25    testimony and any investigation that happens between

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6953

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 289954

```
 1    now and trial, which would, of course, include
 2    potentially phone calls and things of that nature,
 3    but not much more than that.
 4              THE COURT:  All right.  Anything else, Mr.
 5    Castellano?
 6              MR. CASTELLANO:  No, Your Honor.
 7              THE COURT:  Anybody else?  Any other
 8    defendant on this motion?
 9              All right.  Ms. Arellanes, do you have any
10    rebuttal on it?
11              MS. ARELLANES:  No, Your Honor.
12              THE COURT:  All right.  I'm going to deny
13    the motion for bill of particulars.  I think that
14    it's a little bit historical now, because it was
15    filed in October and we've had a lot more discovery
16    and narrowing of the issues.  But I do think that at
17    this point probably -- not probably.  I think Ms.
18    Gutierrez has a good sense of what the Government is
19    going to do to her at trial and what evidence is
20    going to be and on those particular prongs, so I'm
21    going to deny the motion for a bill of particulars.
22              All right.  So we go for defendant Joe
23    Gallegos' motion for a bill of particulars.  What is
24    it at this point, Mr. Benjamin, that you really need
25    from the Government to fully defend Mr. Benjamin
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   (sic) at trial.

 2            MR. BENJAMIN:  Hopefully, Mr. Benjamin

 3   won't need defending at trial, Your Honor.  But

 4   should I stick my foot in my mouth again, I might.

 5   Billy is being helpful, Your Honor.

 6            The Court said Defendant Gallegos' motion

 7   for bill of particulars.  I've got three on file.

 8   The first one is Document 1143, Your Honor.  That

 9   should be for Counts 4 and 5.  And then I don't know

10   the document number, but there is one for Count 13,

11   and then one for Counts 14 through 16.

12            THE COURT:  All right.

13            MR. BENJAMIN:  And if I may, Your Honor,

14   the first one that I'd like to deal with is Counts 4

15   and 5.  And I quoted in the James response what my

16   concern is with counts --

17            THE COURT:  Go ahead and elaborate, because

18   I'm going to have to spend some time probably this

19   evening digesting more the defendants' responses,

20   because as you know, I didn't gather all of them up

21   until today, or yesterday.  I can't remember.

22            MR. BENJAMIN:  I gave the Court plenty of

23   time, when I filed it at midnight, and then so -- no,

24   Your Honor, I fully understand.

25            THE COURT:  It's not your fault.  I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6956

```
 1   trying to absorb all this.

 2              MR. BENJAMIN:  This case has been a huge

 3   learning curve, Your Honor.

 4              Count 4 and 5, as I discussed with the

 5   Court on May 10th, is a murder charged in the State

 6   of New Mexico.  There is nothing that has been

 7   produced.  There has been nothing -- and actually

 8   that's not entirely accurate, Your Honor.  There was

 9   one document produced in discovery early on that was

10   labeled 1580, and this document said that Joe

11   Gallegos was overheard talking on the wire about an

12   order from Gerald Archuleta, Styx.

13              THE COURT:  When you say 1580, that's the

14   Bates number?

15              MR. BENJAMIN:  Yes, Your Honor.  I

16   apologize.

17              THE COURT:  That's fine.  We're getting

18   where the document numbers are exceeding the Bates

19   numbers, which is a little unusual for a case.

20              MR. BENJAMIN:  Very much so, Your Honor.

21   And that document, this order to kill somebody that

22   was overheard on a wire, was later retracted in

23   February of 2017 by Special Agent Acee, saying that

24   that was a mistake.

25              THE COURT:  Now, refresh my memory about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6956

```
 1   that.  Because was that in court --
 2             MR. BENJAMIN:  That was a 302 that the
 3   Government --
 4             THE COURT:  So a 302.
 5             MR. BENJAMIN:  Yes, Your Honor, the Court
 6   produced and we had because we had filed a motion
 7   requesting grand jury transcripts to see what
 8   information had been presented to the grand jury to
 9   secure the indictment on Counts 4 and 5.
10             THE COURT:  So Mr. Acee says that was an
11   error?
12             MR. BENJAMIN:  Yes, Your Honor.  And taking
13   the Government at face value, that presents a larger
14   problem for me to understand this now than it did in
15   May of 2017, because in May of 2017 I assumed that
16   that would be clarified or there would be something
17   else that came forward.
18             THE COURT:  All right.  Go back and tell me
19   exactly what the Government was saying before they
20   retracted.
21             MR. BENJAMIN:  There's two things that they
22   were saying.  The first was that Joe Lawrence
23   Gallegos was heard talking about being ordered by
24   Gerald Archuleta, Styx, on the wire to kill Adrian
25   Burns, and that would have been an order from an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    individual in the SNM to kill somebody for the
 2    benefit of the SNM.  That statement that I'm
 3    paraphrasing was retracted.
 4           The other mention is what I've cited in
 5    document 1981, which is a --
 6           THE COURT:  This is another 302.
 7           MR. BENJAMIN:  Document 1981 is Joe
 8    Gallegos' James response that was filed since, the
 9    first thing this week, Your Honor.
10           THE COURT:  Okay.
11           MR. BENJAMIN:  And essentially the second
12    page of that document I believe is where the quote
13    is, is a quote from Ms. Armijo at the motion to
14    produce the James -- motion to produce grand jury
15    transcripts.  And her statement, what she related to
16    the Court, is that there would be a cooperator that
17    comes forward that would testify about how Joe
18    Gallegos was disrespected and that he was then killed
19    for that purpose.  That would track the indictment.
20    The concern now is --
21           THE COURT:  And that he was disrespected by
22    Burns.
23           MR. BENJAMIN:  Yes, Your Honor.
24           THE COURT:  And that was the link between
25    this murder and the enterprise.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6958

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6959

```
 1              MR. BENJAMIN:  Yes, Your Honor.  And there
 2   is a New Mexico State report supplement 36 that is
 3   done by a New Mexico State police officer Agent
 4   Madrid that documents that this is what she was told
 5   and overheard in a meeting with the FBI.  And that
 6   meeting occurred in February of 2015, Your Honor.
 7              THE COURT:  Who was in the meeting that was
 8   giving them information?
 9              MR. BENJAMIN:  She's kind of vague.  She
10   lists a couple of people.  She lists herself and
11   Agent Smith and a couple other agents.
12              THE COURT:  Was there a confidential
13   informant that was sitting there giving them
14   information?
15              MR. BENJAMIN:  I have read it multiple
16   times, Your Honor.  My impression is yes.  I can't
17   tell the Court that my impression is correct.
18              THE COURT:  And it was a State Police?
19              MR. BENJAMIN:  Yes, Your Honor.
20              THE COURT:  Is it one of the State Police
21   reports that I read attached to the motion to
22   dismiss?
23              MR. BENJAMIN:  No, Your Honor, I don't
24   believe I've attached that to the motion to dismiss.
25   So this statement -- what is in this New Mexico State
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6959

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 295960

 1    Police report is what Ms. Armijo, I believe, read and

 2    provided us in rebuttal on the grand jury motion.

 3    And that is where we were arguing the idea that I put

 4    forth that a murder in New Mexico is a murder.  And

 5    as long as it's not done for a specified VICAR

 6    reason, it's not one that needs to be or can be heard

 7    in this court.  And I can tell the Court now, after

 8    having heard the James hearing testimony, seen the

 9    James proffer, that there has been no evidence and is

10    no evidence that I'm aware of that links any reason

11    for Joe Gallegos to have killed Adrian Burns and for

12    argument's sake, Your Honor, for a --

13             THE COURT:  SNM.

14             MR. BENJAMIN:  -- SNM or otherwise VICAR

15    reason.  So I'm taken back to the statement was made

16    in February.  The ROI -- excuse me, the report that

17    created this original retracted statement was created

18    later that year in 2015, in August.  There is another

19    meeting between the State Police and the FBI

20    approximately one week after that, middle of August

21    of 2015, and it sounds like they're proceeding on

22    what is a VICAR-based reason.  Adrian Burns was

23    killed because he was disrespected.  Agent Madrid

24    then takes that information, absent the cooperator,

25    because she is clear in her report that she's not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6960

1   going to name, identify, or deal with the information

2   that is in the FBI's files, and takes that

3   information to two district attorneys in the state of

4   New Mexico who both essentially decline to prosecute

5   a state-based murder.

6          THE COURT:  I know it was taken here in

7   Dona Ana County.  Where else did she take it?

8          MR. BENJAMIN:  Socorro and Valencia.  It

9   was not here in Dona Ana, Your Honor.  Essentially,

10  the jurisdiction was based on the murder scene, and

11  essentially, the belief that he was killed at 4 Aaron

12  Court, and he crossed those two lines between where

13  they believed he was killed in Valencia County.

14         THE COURT:  Which is the one that Dona Ana

15  County declined?

16         MR. BENJAMIN:  The 2001 murder, Your Honor.

17         THE COURT:  Okay.

18         MR. BENJAMIN:  The 2001, Castillo and Garza

19  murder.  So the reason I preface that is because we

20  now have to go back to the idea that this prosecution

21  has to be premised on a cooperator, a cooperator

22  providing the information that Adrian Burns was

23  disrespected and, as the Court a couple minutes

24  before asked Ms. Arellanes, is there a financial gain

25  or is it an advancement in the SNM?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6961

297

```
1            And I don't think there is any evidence
2     that I've seen at all that suggests that there is a
3     monetary gain here.  The state case, and the Court
4     has heard this briefly --
5            THE COURT:  I think we may have even taken
6     that out of the jury instructions in the first trial.
7     We just went to the jury on the advancement or
8     maintaining the status, I think is my memory.
9            MR. BENJAMIN:  Okay.  And Your Honor, I
10    think that's the only thing that would be argued
11    here.  But we have had the cooperator statement
12    hearing.  We have the chart.  I do not have any
13    evidence to believe that there is anything linking my
14    client, Joe Gallegos -- and I think the Andrew
15    Gallegos team has adopted this and joined this -- but
16    there is nothing linking Mr. Gallegos to a VICAR
17    reason.
18            THE COURT:  Well, let's say Mr. Castellano
19    says he doesn't have anything else.  He's grabbing
20    notebooks over there, so he's probably going to try
21    to say something else.  Let's say he doesn't say
22    anything.  What do I do?  I mean, a bill of
23    particulars is not going to help you on that score.
24    It's more in the nature of a motion to dismiss, which
25    we know from Ms. Arellanes is difficult in the Tenth
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6962

1    Circuit.  So what do we do with that, assuming your

2    box is accurate and the Government has got nothing

3    else to put in it?

4           MR. BENJAMIN:  The remedy I'm seeking

5    today, Your Honor -- and the Court dealt with this in

6    May when it said that we will readdress this if there

7    is no evidence that appears -- my remedy today is, I

8    am seeking the identification of essentially -- and

9    the facts that support it as a bill of particulars --

10   Joe Lawrence Gallegos was disrespected by So-and-so

11   by telling him that, you know, he had shorted him on

12   his last transaction to the SNM, and that is the type

13   of information.

14          THE COURT:  Is that what you think -- I

15   mean, I read all the stuff more with your motion to

16   dismiss, all of the 302s, and I was wondering, where

17   is the SNM connection as I read those.  That's the

18   theory of the Government, that Burns shorted them

19   some drugs, and those drugs were going to the SNM

20   Gang.  Is that what their theory is?

21          MR. BENJAMIN:  Your Honor, that's my

22   problem.  I can stand here and tell the Court I have

23   no idea what their theory is.  I know they believe,

24   based upon the state investigation, that Mr. Gallegos

25   killed Adrian Burns.  I don't believe they have a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    justification or a reason.  I can't tell the Court
 2    what that is.  I can't -- and unusual for someone in
 3    my position, I can't even speculate as to what that
 4    is, because there is production in this case through
 5    the State of dirty officers.  There's the production
 6    that's essentially information that's been produced
 7    regarding --
 8            THE COURT:  Well, refresh my memory on
 9    that.  I read something about that.  Refresh my
10    memory as to what the dirty officers were.
11            MR. BENJAMIN:  The Los Lunas --
12            THE COURT:  Oh, that they had invaded his
13    house.
14            MR. BENJAMIN:  No, Your Honor, this is
15    totally different.  There's two different allegations
16    I'm aware of.  And they go off I think a very side
17    track.  But there is a Detective Torres that worked
18    with the Los Lunas Police Department in the drug task
19    force, and there is allegation regarding Adrian
20    Burns' money, and also the --
21            THE COURT:  The $80,000, $200,000.
22            MR. BENJAMIN:  There is $28,000 that was
23    known to have been seized and returned.  And then
24    there's vast other amounts that have been
25    articulated.  But there are witnesses in Agent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6964

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 300 of 965

```
 1   Madrid's report --
 2           THE COURT:  There was some indication in
 3   the materials I read that some of that was, like, hid
 4   at his house, and then others that he had a bank
 5   account?
 6           MR. BENJAMIN:  And I think, Your Honor,
 7   having done investigations and reviewing things, I
 8   think most of those probably boil down to urban
 9   myths.
10           THE COURT:  They were interesting.
11           MR. BENJAMIN:  I think that they are, very
12   much so.  But I think it's kind of like:  My neighbor
13   is exceedingly wealthy.  Why?  Because I believe he's
14   wealthy.  We have children, and our children have
15   interesting visions of why something happens.  And
16   that's what I interpret most of these myths or
17   beliefs about Adrian Burns.
18           But there's all different kinds of things.
19   And I think that this goes back to the State firmly
20   believes that it doesn't have enough to prosecute.
21   And I can't even guess, based upon all the
22   information that's been provided, as to what -- there
23   is no reason, if I take the facts at face value, that
24   Joe Gallegos would have wanted to kill his supplier.
25   Because he was the one that -- I mean, I think we can
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6965

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 301

1    kind of imagine things, but there is nothing that has

2    been produced, proffered, or in the James statements

3    for the co-conspirator, which is where the statement

4    would have had to have come from, that comes close.

5           And so I'm asking, I guess, first off, Your

6    Honor, in the motion for a bill of particulars, for

7    specific information to support the VICAR element of

8    this offense.  When that doesn't appear, Your

9    Honor -- and at this point in time I can say it

10   doesn't appear because I don't believe it will

11   appear.  The Court is correct.  I then have to come

12   back to this Court with a motion to dismiss and seek

13   that.

14           THE COURT:  Well, I know this isn't

15   probably the appropriate time, but since I've been

16   thinking about it, if you had no more evidence, am I

17   going to be able to help you out any more than I can

18   help out Ms. Arellanes and Ms. Gutierrez in the sense

19   that if the Government doesn't consent to a motion to

20   dismiss or -- they're not going to consent to a

21   motion to dismiss -- consent to me considering the

22   facts on a motion to dismiss, aren't we stuck with

23   going to trial, them having laid out their evidence,

24   and either the jury find that they failed to prove

25   this; or after I hear all the evidence, set aside any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6966

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 302 of 307

 1   verdict because there is not sufficient evidence?
 2   Aren't you and I stuck with a trial if they don't
 3   say, "Yeah, it's in evidence, decide it now"?
 4           MR. BENJAMIN:  Your Honor, I have a theory
 5   under United States v. Abney, and that was a case
 6   where the Court found interlocutory appeal was well
 7   founded.  It was for a Speedy Trial basis, and also
 8   essentially it references other cases.  I think that
 9   if the Government says, "We have no other evidence
10   other than Joe Gallegos was a member of the SNM and
11   we believe, the Government believes, we get to get up
12   to there and say he was involved in the 2001 murder,
13   he was involved in this, and we bring in all the
14   other enterprise evidence and get to say that you get
15   to consider this murder for VICAR purposes, I don't
16   believe that they get to put forth an offense as a
17   VICAR purpose without a good-faith belief that it is
18   tied to a VICAR reason.  So I think that what the
19   Court is allowed to do is take at face value what the
20   Government responds to with the motion for the bill
21   of particulars.  And then their abdication and, I
22   believe, change in position from May of 2010, that
23   there will be nobody, I believe that allows this
24   Court to essentially dismiss; or, in the alternative,
25   I think the Court can always sever Counts 4 and 5,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6967

 1   because if it is not -- the Government doesn't get to

 2   try a case that it has no jurisdiction to try.  And I

 3   don't think that under due process that that ever is

 4   an idea.

 5          So that's where I'm truly at a loss, Your

 6   Honor, because they can't just kind of hold Joe next

 7   to the SNM and say that it should have rubbed off on

 8   his other acts.  That's just like -- the only example

 9   that can come to mind is as an Assistant District

10   Attorney, I practiced law for the State of Texas, and

11   I wasn't allowed to have a private practice.  But I

12   was going to be able to sue an individual personally

13   for things that arose, but that was me doing things

14   in the practice of law outside of what I was supposed

15   to be doing for the Government.  But that's the same

16   thing here.  Just because you're associated with the

17   SNM doesn't mean that everything you touch or did for

18   the SNM --

19          THE COURT:  I understand that.  We kept the

20   Government -- I think we worked hard to keep them

21   honest.  The evidence wasn't going to come into this

22   case about every criminal activity of the defendants

23   in the first trial, and we'll do the same here.  So I

24   understand that point, that it can't just be a crime.

25   I mean, I read all your State Police reports.  I



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6969

```
 1    don't know what they call them.  I call them 302s.  I
 2    read all them in the motion to dismiss, and I have
 3    the same question.  Where is the connection with the
 4    SNM?  So I understand the point.
 5              MR. BENJAMIN:  And the Court asks a very
 6    pointed question.  I don't know.  I can guess what
 7    they're going to say in Counts 14 through 16,
 8    something like that.  That's easy, Your Honor.
 9    That's a fact question.  Respectfully, I don't have
10    the answer to the fact question here.  I can't even
11    guess.
12              THE COURT:  All right.
13              MS. TORRACO:  Your Honor --
14              THE COURT:  Does anybody else want to speak
15    on this?  Ms. Torraco?
16              MS. TORRACO:  Thank you, Your Honor.  I
17    just wanted to address --
18              THE COURT:  You're interested in this
19    issue?
20              MS. TORRACO:  Yes, Your Honor.  I am
21    interested in this issue.  My client is mostly very
22    interested in this issue.  I just wanted to address
23    your proposed remedy because --
24              THE COURT:  I haven't proposed one here
25    yet.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6969

```
 1              MS. TORRACO:  I'm sorry, and I don't want
 2    to correct the Court, but there was a question to Mr.
 3    Benjamin about how do you propose that this play out.
 4              THE COURT:  Well, assuming the box remains
 5    empty, I'm trying to think how you remedy the problem
 6    short of a trial, which is probably y'all's
 7    interests.
 8              MS. TORRACO:  I would propose we do a
 9    hearing based on jurisdiction alone.
10              THE COURT:  Where does that get me?  You
11    can read the opinion I wrote for Ms. Arellanes and
12    Ms. Gutierrez, when I read those Tenth Circuit cases.
13    Unless the Government is willing to play ball and
14    say, "Yes, Judge, yes, Court, here's the facts,
15    that's all we got, we're all interested from an
16    academic standpoint in what the answer is, go ahead
17    and decide," which they do, they do that from time to
18    time -- not all the time, but from time to time --
19    but if they don't do that, we've got to go have a
20    trial and then sort it out afterwards.
21              MS. TORRACO:  I hear what you're saying.
22    But I think that the Court has to establish that it
23    has jurisdiction before it.
24              THE COURT:  But let's take a civil case, so
25    we get a little divorced from it.  Even in a civil
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   case, in a 12(b)(1) motion, if the merits and the
 2   jurisdiction are all tied together, I've got to do
 3   the normal things.  I can't decide it on a 12(b)(1).
 4   I've got to do it under 26, summary judgment, or even
 5   a trial before I can determine.
 6            It's Aristotelian.  You know, you don't
 7   know if you have a happy life until you're dead or
 8   not.  It is a little bit one of those things that
 9   sometimes you do not know the answer until you have
10   the trial.
11            Let's to do this:  I don't want to cut you
12   short --
13            MS. TORRACO:  It's fine.
14            THE COURT:  We better pick this up
15   tomorrow.  I appreciate y'all's hard work.  See you
16   at 8:30 in the morning.
17            MS. TORRACO:  Thank you, Your Honor.
18            THE COURT:  Thank you.
19
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

, Inc.

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6971

```
1   UNITED STATES OF AMERICA

2   STATE OF NEW MEXICO

3

4                   C-E-R-T-I-F-I-C-A-T-E

5       I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6   Official Court Reporter for the State of New Mexico,

7   do hereby certify that the foregoing pages constitute

8   a true transcript of proceedings had before the said

9   Court, held in the District of New Mexico, in the

10  matter therein stated.

11      In testimony whereof, I have hereunto set my

12  hand on this 20th day of March, 2018.

13

14      _____

15      Jennifer Bean, FAPR, RMR-RDR-CCR
        Certified Realtime Reporter
16      United States Court Reporter
        NM Certified Court Reporter #94
17      333 Lomas, Northwest
        Albuquerque, New Mexico 87102
18      Phone:        (505) 348-2283
        Fax: (505) 843-9492
19      License expires:  12/31/18

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6972

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF NEW MEXICO

 3   UNITED STATES OF AMERICA,

 4        Plaintiff,

 5        VS.                        CR. NO. 15-4268 JB

 6   ANGEL DELEON, et al.,

 7        Defendants.

 8

 9        Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on March 14, 2018.
11

12   For the Government:  Ms. Maria Armijo; Mr. Matthew
     Beck
13
     For the Trial 2 Defendants: Mr. Brock Benjamin, Ms.
14   Cori Harbour-Valdez; Mr. Patrick Burke; Mr. Jim
     Castle; Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
15   Shattuck; Mr. John Granberg; Mr. Eduardo Solis; Mr.
     Billy Blackburn; Mr. Donovan Roberts; Ms. Lisa
16   Torraco; Angela Arellanes

17
     For the Defendant Lucero (via phone):  Mr. Greg
18   Fallick

19
     For the Defendant Quintana (via phone):  Mr. Phil
20   Sapien

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  All right.  Good morning
 2    everyone.  I appreciate everybody being back and
 3    ready to go on time.  I think we've got an attorney
 4    for each defendant.  And some of the attorneys are
 5    going to be here a little bit later, so I think we've
 6    got everybody we need to get started.
 7            Let me first go back to Ms. Gutierrez and
 8    Ms. Arellanes' bill of particulars, and then I'll
 9    pull forward to -- I gave some thought, and I'm
10    putting this -- I'm writing it right now -- probably
11    go in a footnote somewhere -- I don't know if it's in
12    the bill of particulars' footnote, or if it's going
13    to go in the chart, the James opinion, but I'll put
14    it -- since I'm thinking about it, I'm going to
15    include it.
16            I thought a lot about what an "associate"
17    means in this context in this case, and whether a
18    romantic relationship with somebody that is connected
19    with the SNM Gang would be sufficient to be an
20    associate.  If that is all the evidence that we have,
21    which I don't have any reason to think it's
22    otherwise, that that is the relationship, would that
23    be enough for aiding and abetting or some other,
24    perhaps, more rigorous standard?  And I think it
25    would.  And here are the reasons that I think a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6974

1    romantic relationship with somebody, where you're
2    trying to assist that person, you know that that
3    person is an SNM Gang member, and you know that
4    they're carrying out some activity is going to be
5    sufficient to incur liability.  If you -- you know we
6    get a little enmeshed in our case because we begin to
7    think of associations in fact.  If we think about
8    legal corporations, for example, partnerships and
9    others, and the relationship that accounting firms
10   and lawyers have with those, those are not members of
11   the enterprise, and nobody is suggesting that they
12   are.  But they are, in some cases, associates, in the
13   sense that they are assisting, aiding and abetting
14   the enterprise's criminal activities, racketeering
15   activities.
16          One analogy that we thought of was, for
17   example, hate crimes.  You certainly don't have to be
18   a racist to aid and abet a hate crime.  And so -- I
19   think that I haven't found a case that's on point,
20   but I do think that I'm going to write a footnote
21   which basically says that I think an associate in
22   this situation, as having a romantic relationship
23   with a member of the gang, knows that he's a gang
24   member and knows that he is engaged in gang
25   activities.  If they meet the standards for aiding

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6975

```
 1    and abetting, which I think the evidence suggests at
 2    the present time they would, then that person could
 3    be aiding and abetting a VICAR criminal activity and
 4    be held liable.
 5            And so I'll write that footnote.  I say
 6    that because I think that once I sort of get this
 7    thing written down, I'll be unlikely to grant any
 8    directed verdict if the evidence comes in the way
 9    that it seems to be shaping up, and then -- or
10    setting aside the verdict, once the verdict comes in
11    if it's unfavorable to Ms. Gutierrez.  So I'll be
12    putting that footnote together.  Where it will go or
13    whether it will be part of the opinion on the bill of
14    particulars, I don't know.  I may get it written
15    ahead of when I get to that bill of particulars
16    opinion.  So I may sort of tuck it in somewhere else,
17    since I gave some time yesterday evening and this
18    morning to thinking about that issue.
19            All right.  I think we were at Mr.
20    Gallegos' motion for a bill of particulars, and I
21    think different people were arguing it.  Ms. Torraco,
22    were you up at the time?
23            MS. TORRACO:  Yes, I was, Your Honor, but I
24    have nothing further.
25            THE COURT:  You have nothing further.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6976

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5977

1        All right.  Does anyone else have anything
2    they wish to add to the bill of particulars for Mr.
3    Gallegos from the defendants' side?  I know others
4    joined in.
5        All right.  Ms. Armijo -- oh, Mr. Burke.
6        MR. BURKE:  This will be the first time
7    that I mention severance again.
8        THE COURT:  Okay.
9        MR. BURKE:  And then you probably will hear
10   me say that a number of times.  It seems to me there
11   is a remedy.  Instead of waiting to see if it plays
12   out that there is proper jurisdiction under VICAR for
13   the Adrian Burns homicide, that that count could be
14   severed.  It really has a devastating spillover
15   effect, because it was a bit gruesome, shall we say.
16   And so I think the remedy, rather than waiting to
17   see.  And if Mr. Benjamin is correct regarding what
18   he believes the evidence will be -- because I've not
19   seen him be so adamant about the fact that there
20   won't be the jurisdictional element met -- that if we
21   have this trial and it's not met, and yet the jury
22   hears all of this evidence about the Adrian Burns
23   homicide, it will create a spillover effect and
24   prejudice my client.
25        So I think the remedy, rather than letting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6977

 1   it play out and see how it goes would be to sever now

 2   rather than --

 3          THE COURT:  You know, we heard that same

 4   argument about the Marcantel murder in the first

 5   case:  Oh, don't tie us with that because that's just

 6   so sensational.  And, boy, it really didn't play out

 7   that way.  The dog was Javier Molina; it was not the

 8   tail.  That trial was about Javier Molina.  And kind

 9   of the Marcantel and Santistevan was really the tail.

10   And it was not as much of a factor in the trial.

11   Your thoughts on that?  Because I think it's very

12   hard to sometimes assess what's going to be really

13   gruesome and things in a trial.  I mean, literally a

14   man sat in that trial for about 20 straight days and

15   every day somebody would come in and talk about three

16   murders.  So one more tossed in begins to get --

17   what's more prejudicial than anything else?

18          MR. BURKE:  I do have a thought about that

19   and I'll express it for the record.  I believe that,

20   you know, the argument on Marcantel was that it was

21   Billy Cordova's idea.  And then the recordings played

22   out that Pup Baca seemed to have adopted the

23   Marcantel idea.

24          And I actually think it was good lawyering

25   by the prosecutors to emphasize the Molina homicide

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6978

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7979

 1    and drill down on that.  So the evidence ended up

 2    being heavily weighted toward Molina.  And I think

 3    that the prosecutors can say that that was a

 4    successful strategy, because they got convictions on

 5    Dan Dan Sanchez and Lazy Herrera.  And I could see

 6    that same thing happening here, where we'll be

 7    talking a lot about the Adrian Burns homicide because

 8    it's so gruesome.  And it would be again good

 9    strategy by the prosecutors to do that, in my

10    opinion.

11            So I hear what you're saying.  I watched

12    part of that trial.

13            THE COURT:  I know you did.

14            MR. BURKE:  And you're certainly correct in

15    your analysis of the weight of the evidence and how

16    the trial was conducted.  So --

17            THE COURT:  Okay.  All right.  Thank you,

18    Mr. Burke.

19            Anyone else?  Mr. Blackburn?

20            MR. BLACKBURN:  Your Honor, on behalf of

21    Mr. Garcia, I just assume that on most of these, one

22    of the lawyers, unless otherwise designated, speaks

23    for the remainder of those that have already filed

24    and joined in the other severance motions so that we

25    don't have to repeatedly do this, other than I know

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6979

1   we will.  And so I join Mr. Burke on behalf of his

2   argument.

3          Ours is a little bit different, as it

4   relates to only Count 3.  I know that they have

5   Counts 1 and 2, and then we have Count 3, which is

6   the 2007 murder.  And I understand the Court's

7   statements from the first trial, but we don't know --

8   obviously, I think everybody going in thought that

9   that may play out different.

10          THE COURT:  Yeah, you're right.  I take --

11   Mr. Burke's point is well taken.  We don't know what

12   the strategy is.  But you will recall, y'all will all

13   hear how they didn't want to be tied to that

14   Marcantel.  And it turned out that wasn't the big

15   show.  I mean --

16          MR. BLACKBURN:  But the reality is, they

17   all got convicted.

18          THE COURT:  You don't know what the show is

19   going to be in the next trial.

20          MR. BLACKBURN:  Yeah, but the reality is

21   they all got convicted of those counts.  And the dog

22   in that case, the big person in the case --

23          THE COURT:  You mean they all got convicted

24   on the Javier Molina?

25          MR. BLACKBURN:  Well, on the Marcantel

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6980

```
 1   issue.

 2              THE COURT:  It was just Baca in that.

 3              MR. BLACKBURN:  Well, just Baca.  But I

 4   mean, but the emphasis, as you said, became more on

 5   the Javier Molina case.

 6              This is a little bit different, in that the

 7   way I see it -- and I don't know that all of Adrian

 8   Burns' case is, because it's not something that I

 9   focused on, but it just appears from looking at all

10   of the James statements and all that, there is a big

11   concentration on Andrew, Joe, and Shauna.  So that

12   may play out a little bit different than we think.

13   So for those reasons -- and we don't know what's

14   going to happen -- I join, again, as it relates to

15   Mr. Garcia for just the Count 3, because there is no

16   spillover from Count 3 from anybody other than just

17   him and Mr. Troup basically.

18              Thank you, Judge.

19              THE COURT:  Thank you, Mr. Blackburn.

20              Anybody else on the Joe Gallegos motion for

21   bill of particulars before I hear from the

22   Government?

23              All right.  Ms. Armijo.

24              MS. ARMIJO:  Thank you, Your Honor.

25              THE COURT:  I guess we're all waiting with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   bated breath to see what the evidence is going to be
 2   for tying this murder with -- alleged murder -- with
 3   SNM.
 4               MS. ARMIJO:  Yes, Your Honor.  And I think
 5   that there is a lot of things to consider.  And as
 6   the Court is aware, sitting in the first trial, and
 7   Mr. Benjamin came and watched the trial, as did many
 8   of these defense attorneys, we had several
 9   cooperators testify that:  Once you are an SNM
10   member, you're an SNM member above all else, above
11   your religion, and you're an SNM member in the prison
12   and on the streets.  And I think that's very
13   important.  You know, we heard about that, especially
14   from Frederico Munoz, Billy Cordova, Jacob Armijo.
15   They talked about incidents of violence that they did
16   on the street in the name of the SNM.
17               And one of the important things that you
18   will see in this trial, as well as there was evidence
19   in the last trial, is that you cannot be
20   disrespected.  You just simply cannot be
21   disrespected, because it's a bad reflection on you,
22   it's a bad reflection on the gang, and it's just not
23   allowed.  And we know that you can't be specifically
24   disrespected when it comes from drugs.  We know that
25   from the testimony that we heard in the last trial,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    in reference -- and I'm just using this as a way of

2    explanation to the Burns murder -- the Vasquez (sic)

3    murder, that Anthony Baca was convicted on; that all

4    stems from an SNM member being disrespected related

5    to drugs.

6            We heard Mario Rodriguez testify as to the

7    incident where he -- I think he put soap, or a soda

8    can in a sock and whomped somebody.  That incident

9    was related to drugs, and you cannot be disrespected.

10           So, when it comes to the Adrian Burns

11   murder, what we have is we have two SNM Gang

12   members -- and we will have witnesses testify that

13   they are SNM Gang members -- that are out on the

14   street, that are heavily involved in drug activity --

15           THE COURT:  You'll have some who will also

16   say Andrew Gallegos is a gang member.

17           MS. ARMIJO:  We will.  We will have someone

18   say.  In fact, we will have Willie Romero -- this

19   report was disclosed in June of 2017, June 16, 2017,

20   to the defense -- who will say that Andrew Romero

21   (sic) is an SNM Gang member.  And we have others as

22   well.  But I'm specifically going to focus in on his

23   statement, because he was interviewed initially by

24   New Mexico State Police in reference to the Adrian

25   Burns murder.  And he is -- and he, himself, is an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6983

```
1    SNM Gang member.  And he will testify about the
2    relationship between Adrian Burns and the Gallegos
3    brothers.  Adrian Burns was a drug dealer.  And he
4    did -- and in fact, we have a witness who will
5    testify that the victim's girlfriend -- the deceased
6    victim's girlfriend -- who will testify that, in
7    fact, Adrian Burns was the supplier of drugs to the
8    Gallegos brothers, but he basically was cutting them
9    off because he was owed money to (sic) them.  We
10   certainly have plenty of evidence.
11            THE COURT:  He was owed money by the
12   Gallegos brothers?
13            MS. ARMIJO:  Yes.  And, so to speak, as I
14   said before, disrespecting him because he was saying
15   that they owed him money, so to speak.  So we have an
16   issue with a drug supplier who is not speaking
17   favorably about at least one of the Gallegoses.  And
18   the Saturday before they were killed -- and I
19   think -- Adrian was killed, I'm sorry -- Adrian, I
20   believe, was killed on a Monday.  But I believe on a
21   Saturday night before he specifically tells a person
22   that -- let me look at my notes here -- the victim
23   told the person, who is known as Sleepy -- I believe
24   his real name is Dan -- to tell Joe that if he does
25   not have my money he owes me, just have him call me.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6984

```
 1   You don't need to be scoring drugs for Joe Gallegos.
 2              Now, we have, by Joe Gallegos' and Andrew
 3   Gallegos' own admission, when they were arrested --
 4   excuse me, Your Honor -- when they were arrested,
 5   putting the victim coming over to their house that
 6   evening and giving him drugs.  So we have admissions.
 7   We have the victim's girlfriend saying that Adrian
 8   was going over to the Gallegos house to give them
 9   drugs.  So we know that this is all drug related.  We
10   know that, and we have plenty of evidence of that
11   from other people.
12              But I think what the Court is most
13   interested in is the tie to the SNM.  And again, I
14   think it's the bigger picture of, you have somebody
15   who is disrespecting -- who is being disrespected by
16   a drug dealer, and that that just can't happen.
17              And, again, we had a lot of testimony about
18   that in the first trial.  I anticipate we will have
19   even more testimony on it, since this is going to be
20   a center issue in this trial as to this murder.  And
21   that is how we are going to tie it in.
22              And in looking at my list here, I can see
23   that at least five witnesses from the previous trial
24   testified about that.
25              And I can go into more detail about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   defendants' statements, but obviously, I'm sure both

 2   Andrew Gallegos' and Joe Gallegos' attorneys know

 3   their client's statement, know that this is going to

 4   centralize about drugs, and we will be able to tie it

 5   in.

 6          THE COURT:  When we went through the

 7   conspiracies on 4 and 5 with Mr. Castellano, on

 8   yesterday or Monday, I don't remember exactly which

 9   day it was, this was probably -- well, I guess, maybe

10   the -- Jose Gomez might be a thinner conspiracy, but

11   we had Joe and Andrew Gallegos as the named the

12   conspirators in the indictment, and Charlene Baldizan

13   and then Jason Van Veghel.  What are those two

14   people -- are they going to be those two additional

15   co-conspirators?  Are they going to be witnesses in

16   the trial?

17          MS. ARMIJO:  We are hopeful that they are

18   witnesses.  I know for certain Jason will be a

19   witness because he's still in contact.

20          THE COURT:  Tell me Jason's role in this

21   conspiracy.

22          MS. ARMIJO:  So Jason's role in this

23   conspiracy is not so much the murder, but after the

24   fact.  Jason was asleep at the house that the murder

25   took place.  And when he woke up, he knew that there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

1   was a ruckus going on, so to speak.

2        THE COURT:  This would have been at the

3   Gallegos house?

4        MS. ARMIJO:  Yes.  He knew there was a

5   ruckus occurring.  And then, later on, he was ordered

6   by Joe Gallegos to clean up the house, to remove part

7   of the carpet, and I believe clean up the gas tank, I

8   believe is what it was.  And so his actions are

9   actually more after the murder, and what he was

10  ordered to do as far as assist in cleaning up after

11  the murder and getting rid of evidence.

12       THE COURT:  What is the Government's theory

13  going to be as to how he was killed?  Was he killed

14  in the home?  Was he shot in the home?

15       MS. ARMIJO:  I believe he was beaten up in

16  the home, is our theory, is that he was beaten up,

17  and then he was taken out to the scene and --

18       THE COURT:  Shot and burned.

19       MS. ARMIJO:  -- and shot and burned there,

20  yes.

21       THE COURT:  Okay.  Is Van Veghel, is he a

22  gang member?  Are you alleging that he's an SNM Gang

23  member?

24       MS. ARMIJO:  I don't believe he's a gang

25  member.  If anything, he would be an associate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6987

```
 1   because he was associating with them, but I don't
 2   believe he is a documented SNM Gang member.
 3            THE COURT:  You're just saying he's part of
 4   this conspiracy?
 5            MS. ARMIJO:  Right.  I do believe he is.
 6            THE COURT:  Did he, in fact, help clean up
 7   the apartment (sic)?
 8            MS. ARMIJO:  Yes, he did.  He did.
 9            THE COURT:  And then the other person that
10   was mentioned was this Charlene Baldizan.  What was
11   her role in the conspiracy?
12            MS. ARMIJO:  If I may.
13            THE COURT:  You may.
14            MS. ARMIJO:  I don't want to give the Court
15   too much information about Charlene, because I don't
16   want to misstate exactly what she did.  But, again,
17   it would be something not -- the real conspiracy to
18   murder here is going to be between Joe and Andrew
19   Gallegos; that's going to be the real conspiracy.
20   And anybody else is just going to be side people, not
21   really involved in the murder, per se.  We're not
22   trying to say that this is a big one like all the
23   other ones, or like the Molina one that had nine, ten
24   people involved in it.  It's not.  It's limited to
25   two SNM Gang members, who are -- also started out as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6989

```
 1    street gang members, who are very well known, and
 2    leaders, not only for SNM, once they get out of the
 3    prison and join SNM, but also for being out on the
 4    streets for their gang.  They are very well
 5    connected.
 6              THE COURT:  All right.  So when we have the
 7    jury here, and the evidence is coming in, there is
 8    not going to be sort of -- I'm likening this to the
 9    Marcantel and Santistevan counts -- there is not
10    going to be a Baca, or somebody that's higher up in
11    the SNM Gang, and we're not going to see any orders
12    of hits or any sort of paperwork or anything like
13    that?  What you're going to be relying on is
14    basically that, because these two men, in your
15    account, are SNM members, because they were
16    disrespected by a drug dealer, this had to be an SNM
17    hit because they were being disrespected?  Is that
18    pretty much the case?
19              MS. ARMIJO:  That's pretty much the case.
20    And Mr. Beck reminded me who Charlene was.  I'm
21    sorry, Your Honor.  She was with them at the hotel.
22    She's in reference to -- again, another after the
23    fact person.
24              THE COURT:  Where they were arrested?
25              MS. ARMIJO:  Yes.  So that's another after
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6989

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6990

 1    the fact person.

 2              But that's exactly right, Your Honor.  And

 3    as I said, I don't think that this is unusual,

 4    because we had testimony about these sort of

 5    incidents on the street before:  You can't be

 6    disrespected because we'll take things into our own

 7    hands.  And I think Jake Armijo testified about an

 8    incident at a party.  And so we know that it

 9    continuously happens, both on the street and out, and

10    it will show again the continuation of the gang

11    activity by the Gallegoses.

12              THE COURT:  I don't have a sense that

13    Mr. Andrew Gallegos is a high ranking SNM Gang

14    member, and you're not going to try to show that;

15    correct?

16              MS. ARMIJO:  I don't think he's a high

17    ranking SNM member, but I do think --

18              THE COURT:  You're going to have to work to

19    prove that he's a gang member, right?

20              MS. ARMIJO:  I don't think we're going to

21    work too hard because we have several people that

22    will say he was.

23              THE COURT:  But he's a soldier, as they

24    said in the first one; that would be more where you

25    would place him?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10991

```
 1              MS. ARMIJO:  I will, with the exception
 2    of -- I will say that we do have a cooperating source
 3    that has told us that he has ordered several murders
 4    that this source committed at the direction of Andrew
 5    Gallegos.
 6              THE COURT:  Now, what is your -- what
 7    picture are you going to try to paint to the jury of
 8    Joe Gallegos?  Given that he kind of pops up in many
 9    of the alleged crimes we're going to be trying?
10    What's your picture of him and his place in the
11    organization?
12              MS. ARMIJO:  He would be more of -- he's
13    definitely higher than Andrew.  He's more leaning
14    towards a leader, more of an active role.  And I
15    certainly think that -- in this case I think you'll
16    see more with the Gallegos of the relationship
17    between feeder gangs and the SNM.  Their street gang
18    is one of the feeder gangs for SNM.  And they are
19    certainly -- and Joe Gallegos is certainly a big
20    leader of his street gang, and so that gives him a
21    lot of pull and power when it comes to his position
22    with the SNM.
23              THE COURT:  So he continued to be a member
24    of his street gang and be a member of SNM?
25              MS. ARMIJO:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6991

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 20992

```
 1              THE COURT:  Okay.  Now, I saw for the first
 2    time in some of the materials I read for this trial
 3    the word "captain" and "lieutenant."  I had not seen
 4    those in connection with the SNM.  We had pod
 5    leaders, and we had Mr. Baca, which, you know, they
 6    called the ultimate leader, and things like that.
 7    What are captains and lieutenants in the SNM
 8    organization?
 9              MS. ARMIJO:  Well, I think we did have some
10    testimony as far as Mr. Baca's -- you may recall the
11    "rayos" testimony.  And we had at least one or two
12    documents.  I know that Mario Rodriguez drew it out.
13    And remember there were lieutenants and captains.
14    And I'd have to look at that document specifically to
15    see which one is -- I'm assuming that the captain is
16    over the lieutenant.  But I think the lieutenant was
17    possibly in custody, a supervisor, and the captains
18    may have been out on the street.  So we did see some
19    of that testimony, because that was Mr. Baca's plan
20    that he wanted to set in motion.  And there was a lot
21    of talk about that.
22              And so I do think that -- this case, there
23    will be, because of the nature of the charges, the
24    Adrian Burns and the Jose Gomez, we're going to see
25    more of a mix between both prison activity and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6992

1    on-the-street activity.  And that's why we anticipate

2    calling many more cooperators.  Not just ones that

3    have been institutionalized, but a lot of them who

4    have been out on the streets as well to talk about

5    that.

6         Like I said, we saw some picture of it with

7    Billy Cordova; Frederico was out for a while, and

8    with Jacob Armijo.  But I think we'll see more of

9    that sort of picture in this trial, the relationship

10   between the streets --

11        THE COURT:  The difference we have here is

12   that the activity that was taking place was largely

13   inside the prison context; whereas, this Burns murder

14   is almost entirely outside of the prison context?

15        MS. ARMIJO:  It is outside the prison

16   context.  But it is still, as I explained, our

17   argument will be -- and then it continues, especially

18   as it pertains to Mr. Joe Gallegos -- it continues

19   even past that into 2015 and '16, and continues.  And

20   so I do agree, Your Honor, that murder is not one --

21   it's going to be different, but it's not going to be

22   so different from the testimony that we heard about

23   their activities out on the street.

24        THE COURT:  You referred to the Velasquez

25   murder.  And I took some time in the first trial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6993

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22994

1    before I made a ruling in favor of -- to allow

2    evidence of the Velasquez murder in.  And I'll have

3    to rethink all the evidence that was there, and why I

4    allowed that.

5            But I do recall -- and I expect Mr.

6    Benjamin to get up here in a minute and say the

7    same -- that we're probably going to hear some

8    testimony that any prison gang, or any gang, is not

9    going to want to be disrespected, and that you can't

10   cheat or dishonor any gang or prison gang without

11   suffering some consequences.  And so, again -- and in

12   fact, we had testimony you just couldn't do that in

13   the prison context at all without -- so what is it

14   that's going to take it from that sort of rule of

15   honor in the prison context or in the gang context,

16   particularly in a case where you're going to say that

17   Joe Gallegos was still a member of another gang?  How

18   are you going to prove beyond a reasonable doubt that

19   this is a SNM Gang-related activity?

20           MS. ARMIJO:  Well, I think because,

21   although he was still a member of the other gang, I

22   think that -- again, going back to the testimony, is

23   that when you become an SNM member, that goes above

24   God and family; that's going to be your primary

25   thing.  But I think a lot of the street gang members

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6994

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 23

```
 1    in the area of Socorro still looked up to him as an
 2    East Side Gang member.  That is what I was talking
 3    about as far as him still having influence on it.
 4    And, obviously, it's part of his gang heritage, so to
 5    speak.  But I think that the testimony would be that
 6    SNM comes above everything else and above all else.
 7    And that would be what we were targeting.  And I
 8    think the difference between just a regular -- you
 9    can't be disrespected in prison, how this is
10    different is:  With SNM, you can't be disrespected on
11    the street.  This is outside the prison.  And I think
12    that's where this comes in, and it's different from
13    maybe other prison gangs or other prison settings.
14    Because I think there was even some testimony, well,
15    just in general, you can't be disrespected sometimes
16    in prison.  But this is different.  This is a
17    reflection upon who he is and his standing.  "He"
18    being Joe Gallegos.  And who he is in the community,
19    the gang community on the street, and known in the
20    community for SNM.  And so I think it rises above
21    that.  I think that SNM, in and of itself, with its
22    wanting to be in control of in the prisons and
23    reaching out on the streets, and that's why this is
24    different, and this can be tied in, because of their
25    power and of what they expect of you once you become
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 6995

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 26

1 | a member, to put it before all else.

2 |       THE COURT:  With Mr. Baca, he seemed to be

3 | so high up in the organization, I liken him a little

4 | bit to sometime -- I once had a case with the mayor,

5 | for example, of Albuquerque.  How does a mayor act on

6 | his own and not as a mayor?  They are so high up,

7 | they just -- anything they do is going to be seen as

8 | the mayor, the president, or something like that.  So

9 | Mr. Baca was a little bit like that.  Do we really

10 | have that sort of picture, though, of Joe Gallegos?

11 | Is he so integral to the SNM that he could not have a

12 | private dispute or private disrespect on the side

13 | that he needed to take care of, that is not the same

14 | as Mr. Baca, who probably thinks every day, anything

15 | I do is going to somehow reflect upon the SNM Gang?

16 |       MS. ARMIJO:  I think the testimony will be,

17 | and has been, and will continue to be, that it

18 | doesn't matter if you're a soldier or not.  I mean, I

19 | think we heard from the likes of soldiers in this

20 | last trial that said everything reflects upon them,

21 | no matter what, and no matter where you are.  It

22 | doesn't matter if you're a little soldier, or you

23 | know, even for that matter, if you're a prospect

24 | trying to get in.  But certainly, once you are in,

25 | and you're a soldier, or if you're the Anthony Baca

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6996

1    or the Angel Munoz.  It doesn't matter who you are in
2    the gang, because you are going to be looked upon as
3    an SNM Gang member in everything that you do.  And I
4    think we heard that testimony, and we'll hear it even
5    more in this case.  It doesn't matter who you are,
6    your position, you are one and the same when you're
7    an SNM Gang member.
8            THE COURT:  A couple of questions that
9    relate particularly to the bill of particulars:  Do
10   you have any other evidence that you are going to
11   introduce on this prong of your proof that Mr.
12   Benjamin focused on, that you have not mentioned in
13   either the James hearing here today, or has been
14   disclosed in discovery?  Is there anything else that
15   the Government has that it's going to introduce or
16   advance in the trial, other than this falls into
17   those three categories?
18           MS. ARMIJO:  There isn't anything that
19   we're hiding back or purposely holding back, saying
20   we're going to wait to disclose this.  I think that
21   everything has been disclosed, like I mentioned.  I
22   mentioned specifically a lot of people by name.  And
23   I know that people -- I mean, witnesses have -- lists
24   have gone out.  I checked to make certain that, like
25   for instance, the Willie Romero thing was disclosed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 6997

```
 1    last year, almost a year ago; I guess nine months

 2    ago.  So I believe that everything has been

 3    disclosed.

 4             Certainly, as we prepare, as we did in the

 5    last trial, as the Court is aware, when we sat down

 6    with witnesses, when there was anything new, we were

 7    quick to even write a letter to the defense attorneys

 8    to notify them, even before the 302s came out,

 9    because we wanted the information -- any new

10    information to get out as soon as possible.  I

11    anticipate that that could happen in this case.  But

12    we would certainly bring it to anybody's -- the

13    defense attorneys' attention right away, and we would

14    deal with it in court, like we did before, which even

15    caused us a couple of times to re-call witnesses, as

16    you may recall.

17             THE COURT:  But right at the moment,

18    everything that you intend to introduce on this

19    prong, which I understand you're going to try to

20    establish that the purpose of this murder was for the

21    maintaining or the enhancing of the status of Joe

22    Gallegos and Andrew Gallegos in the SNM organization;

23    correct?

24             MS. ARMIJO:  Correct, Your Honor.

25             THE COURT:  And that's the only prong:  No
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6998

```
 1   pecuniary prong?  It's just the enhancement?
 2            MS. ARMIJO:  No, it is just the
 3   enhancement.  There is no pecuniary.
 4            THE COURT:  They have all the evidence now
 5   that they're going to see at trial on that prong.
 6            MS. ARMIJO:  They do have the evidence.  I
 7   mean, I think that they may not have the testimony
 8   from the prior trial yet.  We received some
 9   transcripts that they have ordered.  But certainly,
10   when that comes in, anything that they missed,
11   certainly in relationship to what I've previously
12   been discussing, will be there as well.
13            THE COURT:  All right.  Anything else that
14   you want to say in response to this request for bill
15   of particulars?
16            MS. ARMIJO:  No, Your Honor.
17            THE COURT:  Stand right there, if you don't
18   mind.
19            Let me ask Mr. Benjamin:  Mr. Benjamin,
20   direct your questions to the Court, but if you could
21   ask Ms. Armijo other questions about her evidence and
22   her case and her theory on the bill of particulars,
23   what would you ask?
24            MR. BENJAMIN:  Your Honor, Ms. Armijo
25   represented to the Court on May 10th, 2017, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 6999

```
 1    there was going to be specific testimony that Adrian

 2    Burns (sic) was disrespected.  I do not have that

 3    information.

 4              MS. ARMIJO:  Adrian Burns was disrespected?

 5              MR. BENJAMIN:  I'm sorry, Joe Gallegos was

 6    disrespected by Adrian Burns.

 7              I will cover what she just related about

 8    Willie Romero, and I'm intending to introduce the

 9    report of investigation by Agent Acee that discusses

10    Willie Romero.  But I don't -- I am eight, nine

11    months later, and I still do not have the information

12    that she's --

13              THE COURT:  All right.  Well, let me ask

14    Ms. Armijo:  Do you have any specific evidence that

15    Joe Gallegos was disrespected by Adrian Burns?  Is

16    that going to be an inference that they're going to

17    draw from the drug transactions, or is there any

18    specific evidence that that occurred?

19              MS. ARMIJO:  Well, your Honor, I believe

20    that, in addition to being an inference -- I think it

21    can be an heavy inference -- I think that they need

22    to look at the statements of Amber Sutton, who I

23    talked about previously, who indicated that she was

24    aware that the Gallegos' owed, and so --

25              THE COURT:  This is the girlfriend of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7000

```
 1   Adrian Burns?

 2              MS. ARMIJO:  Yes.

 3              THE COURT:  What's her name again?

 4              MS. ARMIJO:  Amber Sutton.  And then Dan --

 5   it begins with an O --

 6              MR. BENJAMIN:  Orndorff.

 7              MS. ARMIJO:  There you go, Orndorff.

 8              THE COURT:  And who is this?

 9              MS. ARMIJO:  I always want to say Olaf.

10         He is another person that Adrian Burns sold

11   drugs to, who was familiar with the Gallegos brothers

12   as well.

13              THE COURT:  So other than two people saying

14   that Adrian Burns was saying that Gallegos brothers

15   owed him money, there is no -- there is nothing else

16   in Adrian Burns -- in him -- also saying he's going

17   to cut them off, those two things are the only things

18   you have Mr. Burns saying or doing that you're going

19   to be able to argue is disrespectful of Joe and

20   Andrew Gallegos?

21              MS. ARMIJO:  I think the three primary

22   witnesses for that are Amber Sutton, Dan Orndorff,

23   and Willie Romero, would be the primary witnesses for

24   that.

25              THE COURT:  But that is the evidence, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7001

 1   the Gallegoses were not paying for their drugs, and

 2   so there was a debt, and he was going to cut them

 3   off; that is the disrespect?

 4          MS. ARMIJO:  That is.  And you also have to

 5   remember -- there is one other aspect --

 6          THE COURT:  Nothing else?  They didn't say

 7   something about their mother or something like that?

 8   Those are the two things that you're going to ask the

 9   jury to draw the indifference of the disrespect?

10          MS. ARMIJO:  Yes, but there is also one

11   other thing, Your Honor.  As you recall, the SNM also

12   extorts people on the streets.  And there is evidence

13   that after -- that the jury will hear testimony,

14   again, that the Gallegoses, after -- we believe

15   Adrian Burns was already killed -- were at an

16   Allsup's, and they were in a very good mood, and they

17   were passing out money and drugs, that specifically

18   one witness will say is the type of drugs, the

19   packaging as -- and, you know, Mr. Benjamin referred

20   to it -- it's specific packaging of drugs that Adrian

21   Burns sold.  And they were there passing out drugs,

22   so to speak, and money to people.

23          And so there is also another inference that

24   they extorted and killed Adrian Burns, which is also

25   SNM activity.  So there is also that as well.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7002

```
 1    there is evidence --

 2              THE COURT:  That's separate from the

 3    disrespect theory?

 4              MS. ARMIJO:  That's separate from the

 5    disrespect.  But it's with the disrespect.  It's also

 6    part of extorting, which is SNM.

 7              THE COURT:  Help me out with the extortion.

 8    I mean, if they've already killed him, how is them

 9    taking his goods, his money or his drugs, and giving

10    it to other people going to be extortion?

11              MS. ARMIJO:  Well, it could be extortion,

12    that they took the goods before they killed him, and

13    they killed him as a witness to their extortion.

14    They didn't want him to go around telling people that

15    they extorted him.

16              THE COURT:  Okay.

17              MS. ARMIJO:  So there is that aspect of it

18    as well.  And I think there is plenty in the

19    discovery as to that.

20              THE COURT:  But you don't have any

21    statements from Mr. Burns that you're going to

22    introduce, other than the two about cutting him off,

23    cutting off drugs to the Gallegoses, and that they

24    owed a debt?  Those are the only two statements that

25    you'll be --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. ARMIJO:  In connection -- as to Adrian

2     Burns, no.  But as -- hopefully, we'll hear later

3     today, the Gallegoses both gave statements -- there

4     is a motion to suppress as to Joe Gallegos with his

5     statement -- they both gave statements that tie their

6     relationship with Adrian Burns to drugs.

7          We also have testimony about an incident

8     after the murder with Joe Gallegos and Willie Romero,

9     because Willie Romero, the SNM Gang member, was close

10     friends with Adrian Burns.  And so Willie Romero

11     wanted to kill Joe Gallegos over the murder of his

12     friend, and so there was an incident between the two

13     of them after the murder, where they kind of squared

14     off with each other.

15          THE COURT:  All right.  Mr. Benjamin, do

16     you have other questions -- again directed to the

17     Court -- but what else would you ask Ms. Armijo about

18     her evidence on this prong?

19          MR. BENJAMIN:  The Court asked this -- I

20     think I'll start with the easy one, Your Honor.  The

21     Court asked this question a second ago:  There are no

22     other co-conspirator statements or statements by the

23     Gallegos brothers that have not been produced?

24          THE COURT:  Is that correct, Ms. Armijo?

25          MS. ARMIJO:  I believe everything has been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7004

```
 1    disclosed.  I don't -- the only other thing I can
 2    think of, which we'll get later in discovery, if
 3    there is anything that is missed like in a note, but
 4    I think we're agreeing to turn over agents' notes --
 5    if there is anything in there that I'm unaware of,
 6    but certainly we've agreed to turn over agent notes,
 7    and everything else, and Jencks.
 8              There isn't anything off the top of my head
 9    that I'm holding back, Your Honor.  I'm trying to
10    give the Court and defense a picture of what the
11    evidence is.  And I would not be surprised, as we
12    start talking, once we're out of court, and we're
13    able to prepare the witnesses for the next trial,
14    things coming up, and certainly we will make the
15    parties aware of any additional statements.
16              THE COURT:  Mr. Benjamin?
17              MR. BENJAMIN:  Yes, Your Honor.  And I
18    would -- I'll move to admit this in a bit, but this
19    is a supplemental report by New Mexico State Police
20    Agent Janice Madrid; it's Bates stamped 23734.  And
21    this is what I referred to in the James hearing, and
22    what I believe Ms. Armijo was quoting last year, Your
23    Honor.  So I would ask who the one member -- and I'm
24    quoting -- "the one member who is known to the FBI
25    and law enforcement officials that provided a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7005

 1    statement indicating Joe Gallegos told them they

 2    killed Adrian Burns over the drug trade, money, and

 3    because Mr. Burns disrespected them."  And I don't

 4    know who that person is.  That person has not been

 5    produced, or statements from.  And I don't know who

 6    that is, Your Honor.

 7              THE COURT:  And who is that person?

 8              MS. ARMIJO:  And, Your Honor, I would have

 9    to look at that to see what it is.  I don't have

10    that.

11              THE COURT:  Why don't you go back there and

12    look at it and see if you're able to identify that

13    person.

14              MR. BENJAMIN:  It's Janice Madrid's report.

15    Here's the one --

16              MS. ARMIJO:  If I am correct, Your Honor,

17    and I would want -- and we can certainly -- I can

18    certainly -- if we're going to be here for a few

19    days -- check into this, because I don't want to

20    speak for Agent Madrid.  As I'm looking at this right

21    now, I think we spoke to a few people that day, if

22    I'm recalling the right meeting.  And I will

23    certainly look at this and I will provide that

24    information to defense counsel, to Mr. Benjamin,

25    after speaking to her.  I think that day we spoke to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7007

```
 1   Eric Duran and maybe Tomas Clark.  I know that there
 2   was a meeting in August of 2015, if it's the meeting
 3   that I was present at, where we debriefed those two
 4   people.  And so that's the only thing I can think of
 5   as far as that.
 6            But what I was relying on for this
 7   particular motion was what people directly related to
 8   the Gallegoses have said; not second or third hand.
 9   And so --
10            THE COURT:  You're not going to be relying
11   on that, but you don't have any problem providing the
12   name after you check out --
13            MS. ARMIJO:  Correct, Your Honor.  And like
14   I said, I think that I have no problem providing the
15   name.  And if, in fact, there was a direct statement
16   that I was unaware of in reference to this, obviously
17   we would use it.  But as I stand here right now, what
18   we're relying on is what I've previously told the
19   Court, in addition to anything else that has been
20   disclosed.  But I have no problem revealing who this
21   person is and reaching out to Agent Madrid.  I have
22   her phone number, and I can reach out to her, Your
23   Honor.
24            THE COURT:  She's with State Police?
25            MS. ARMIJO:  She's a state police officer.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7007

1   So -- and this is a State Police report.

2            THE COURT:  That's a State Police report.

3            MS. ARMIJO:  It is.  But I believe she was

4   at a debrief that day.  And like I said, if it is the

5   right one -- and I don't want to commit to it because

6   I don't have anything in front of me -- I just

7   remember being at a meeting in August of 2015, around

8   that time period, up in Albuquerque, where we

9   debriefed a couple of people.

10           THE COURT:  Eric Duran -- who else did you

11   say?

12           MS. ARMIJO:  Tomas Clark was the other

13   person.  And I don't know if we had -- I can't recall

14   off the top of my head if there was anybody else.  I

15   remember those two in particular.

16           I have no problem reaching out to the

17   agent, and specifically providing her with this, and

18   providing that information, Your Honor.

19           THE COURT:  All right.  Mr. Benjamin, what

20   else would you ask?

21           MR. BENJAMIN:  I have a tendency to put my

22   foot in my mouth, Your Honor, and I've done that in

23   front of this Court.  My concern is that I have asked

24   why that name is not known?  That report was

25   referenced, and I cited the transcript from Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Armijo, in May of 2010.  I believe that this person
2   was either -- I think this person was Roy Paul
3   Martinez, and this was part of the statement that was
4   withdrawn, and essentially, "clarified," using
5   Special Agent Acee's words.  Because Agent Madrid is
6   referring to -- she's making a report for the New
7   Mexico State Police.  But she's referring to a
8   meeting and an investigation and a source that was
9   provided by Special Agent Acee.  And I would ask if
10   she could review those notes from that source, the
11   notes from that meeting, and the -- what I believe is
12   Brady material from that person who is not going to
13   be used.  Because I think something has popped up
14   that has shown that that person is not credible,
15   which is why they've fallen off the witness list.
16   And I would ask --
17          THE COURT:  Well, whose notes would it be?
18   Would it be Tapia's notes, if they exist?
19          MR. BENJAMIN:  I believe -- Agent Madrid
20   makes me believe it would be Special Agent Acee or an
21   FBI individual that interviewed them.
22          THE COURT:  Well, you're going to get --
23   Ms. Armijo has just said, if Mr. Acee was in the
24   meeting -- is he indicated as being in the meeting?
25          MR. BENJAMIN:  Agent Madrid makes me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7009

```
 1   believe that he was there.

 2           THE COURT:  Well, you're going to get the

 3   notes.  There may not be a 302, and there may not be

 4   notes.  But you're going to get them, if they exist.

 5           MR. BENJAMIN:  Respectfully, Your Honor,

 6   though, this was information that was raised by Team

 7   Gallegos in May of 2017.  And I'm going to get those

 8   notes in an insufficient amount of time to put to use

 9   any Brady material.

10           MS. ARMIJO:  I can tell the Court it's not

11   Roy Martinez, because Roy Martinez, in August of

12   2015, was a target of ours.  We did not speak to Roy

13   -- "we" being the prosecution, law enforcement, did

14   not speak to Roy Martinez until he was indicted in

15   this case, arrested December 3.  And I think we spoke

16   to him mid December of 2015.  So I can tell the

17   Court --

18           THE COURT:  He's off the table.

19           MS. ARMIJO:  -- he's off the table.  It was

20   not him.  I can tell the Court that.

21           MR. BENJAMIN:  I don't believe it's Special

22   Agent Acee, but there is a report that Roy Martinez

23   talked to the FBI on August 5th, 2015.  That is the

24   report that is retracted.  That is the report that

25   is -- I'm sorry, not retracted -- "clarified" by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7010

39

```
 1    Special Agent Acee.
 2              And that is -- Your Honor, I would ask how
 3    I get out of the circle that I'm in that I keep
 4    coming back to a clarified, retracted report, as the
 5    only source of the disrespect and the information
 6    that flowed from it.  I don't know how to get out of
 7    that circle.
 8              THE COURT:  I guess what I'm hearing, how
 9    you get out of the circle is that the Government is
10    not going to pursue those two avenues at trial.
11              MR. BENJAMIN:  And the defense attorney in
12    me wants to ask why?
13              THE COURT:  Well, I guess that's not really
14    part of a bill of particulars.
15              MR. BENJAMIN:  Your Honor --
16              THE COURT:  There may be another way to ask
17    it, and it may come up in a different way.  But it
18    seems to me that, if the Government has given you all
19    these things, and they're willing to give you some
20    more things this morning, that you may get a chance
21    with Mr. Acee, or somebody, to ask them why they
22    withdraw those theories.  But that would not be
23    probably part of a bill of particulars.
24              MR. BENJAMIN:  I stand corrected.  And the
25    Court is correct on that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7011

```
 1              THE COURT:  So what else would you ask, if
 2    you would like to ask, through me, questions of Ms.
 3    Armijo about what evidence they're going to -- or
 4    theories they're going to use against your -- against
 5    Mr. Gallegos?
 6              MR. BENJAMIN:  And am I correct in
 7    understanding that a heroin user, who the testimony
 8    that -- I don't have the testimony saying that he was
 9    going to be cut off; I have the testimony saying they
10    believe he was cut off, because -- I will move to
11    admit this as well, Your Honor, but Romero, Willie
12    Romero, believes the Gallegos brothers were killed or
13    killed Burns over dope.  That's Willie Romero
14    providing his gut belief.  There is nothing that
15    Willie Romero is purported to have provided that says
16    he believes that was SNM related.
17              And I think -- am I missing anything
18    beside -- the question the Court asked, and the
19    question I should answer is:  If the indictment was
20    going to be changed by a bill of particulars that Joe
21    Lawrence Gallegos disrespected an individual, or was
22    disrespected by Adrian Burns over a suspected
23    personal drug debt?  And I think what I'm missing is
24    I'm supposed to take that personal drug debt, if it
25    existed, and turn that into a gang drug debt.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7012

1          THE COURT:  Let me do this:  Let me see if

2    I can put the question in my own words, and see if it

3    works for you.  Read me again what you're saying Mr.

4    Romero says that you think may leave some gap here.

5          MR. BENJAMIN:  There's multiple things,

6    Your Honor, I will simply limit myself to two.

7    "After Burns was killed" -- and both come from Romero

8    -- "Romero heard that Joe Lawrence Gallegos wanted to

9    kill Romero."  And then "Romero believes the Gallegos

10   brothers killed Burns over dope."  And those --

11         THE COURT:  Well, let me see how I do for

12   you.  Earlier you said that -- and this is what I

13   heard -- that you had evidence that there was a drug

14   debt.  So rather than it just being "over dope," if

15   you had evidence that it was a drug debt, that the

16   Gallegoses were not paying all their bills; and, B,

17   Mr. Burns was going to cut off the Gallegos, where

18   does the evidence for those two prongs come from?

19   Start with the drug debt:  Who is going to prove

20   that, or what's the evidence going to be?

21         MS. ARMIJO:  I think the drug debt was the

22   statement that I testified -- that I stated earlier

23   that was in reference to Amber Sutton, where two days

24   before he was killed, Adrian Burns told Sleepy that

25   he did not have to be buying -- "Tell Joe if he does

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    not have my money he owes me, just have him call me.

2    Don't you score for him."  So that's the drug debt.

3              THE COURT:  Okay.  Anything other than the

4    girlfriend?  Or is that the main point of the --

5              MS. ARMIJO:  I mean, I think that's the

6    main point.

7              THE COURT:  She's the primary or the only

8    evidence of debt?

9              MS. ARMIJO:  Well, the girlfriend, and also

10   Sleepy, Dan Orndorff.

11             THE COURT:  So that's your evidence on the

12   debt.

13             What is your evidence of cutting off the

14   Gallegos brothers?

15             MS. ARMIJO:  Well, I think it would go with

16   the fact that I think that we know that on the night

17   of the incident he was -- he went over there.  I

18   don't know, necessarily, that we will have specific

19   statement that he was cutting off.  I would have to

20   talk to Ms. Sutton about that.  But I think that the

21   inference can certainly be made --

22             THE COURT:  So right at the moment we can

23   drop off the "cut off the Gallegos brothers."  We're

24   focusing on there was a drug debt?

25             MS. ARMIJO:  There was a drug debt.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    don't know that I want to say we want to cut it off,
 2    but --
 3              THE COURT:  Right now you don't have any
 4    evidence?
 5              MS. ARMIJO:  Right now, I'm not telling the
 6    Court of one specific person that will say that.  As
 7    we prepare, certainly, and I speak to these people in
 8    more detail, certainly, we can.  But --
 9              THE COURT:  All right.  Was that helpful?
10    I mean, it's not that they do have two witnesses that
11    are going to say there is a drug debt.  So instead of
12    it just being over a dope deal or dope business,
13    that's the two evidence.  What else are you looking
14    for?
15              MR. BENJAMIN:  Something that takes this
16    out of the realm of cutting off a heroin individual
17    who is relying on me personally.
18              THE COURT:  Now, do you have -- is there
19    anything in the evidence that suggests that that's
20    what's going on?  That may be what your client is
21    telling you, and it may be also what your theory is
22    going to be.  But since that's not the Government's
23    evidence of the case --
24              MR. BENJAMIN:  Under the Government's
25    evidence, Your Honor, Amber Sutton -- who I believe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7015

1    Judge Naranjo referred to as "uncredible," brought

2    this up as a fact issue at trial.

3              THE COURT:  What was the Judge's name

4    again?

5              MR. BENJAMIN:  Judge Jim Naranjo.  And I

6    bring that up later in my motion to dismiss for

7    delay, Your Honor.

8              But aside from her testifying, taking that

9    she's going to say, face value, and be credible

10   saying that Adrian was upset and went over to Joe's

11   house to cut him off and limit him, I don't know how

12   that argument that precipitates itself under the

13   Government's case, where he's beaten at the house and

14   taken out into the bosque and killed, takes anything

15   other than a straight state court murder, where I

16   walk into your house, and I say:  If you don't pay

17   me, I'm going to cut off the drugs and take away this

18   pile of heroin that I've got for you, if you can come

19   up with money, or from that to an SNM-type dispute.

20             We've seen thousands of cases where --

21             THE COURT:  Let's focus for a second on the

22   evidence, the bill of particulars here.

23             MR. BENJAMIN:  Yes, Your Honor.

24             THE COURT:  Any other questions you want me

25   to ask Ms. Armijo about the evidence or the theories

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   they're going to use against you?
 2            MR. BENJAMIN:  How does the evidence of
 3   being cut off translate into an organizational
 4   matter?
 5            THE COURT:  Well, right now, right now, she
 6   says she doesn't have any evidence of cut-off.  She's
 7   only going to use the prong that there was a drug
 8   debt.
 9            MS. ARMIJO:  Your Honor, I'm sorry, I just
10   want to make clear, Willie Romero -- going back to
11   Willie Romero -- he will state that Andrew wanted
12   free drugs from Burns.  Burns had given Andrew Romero
13   (sic) free drugs in the past, and Romero had told him
14   -- "him" being Adrian Burns -- to stop giving them
15   free drugs.
16            THE COURT:  Okay.
17            MS. ARMIJO:  That's in reference to Andrew,
18   though.  I just wanted to make clear.
19            THE COURT:  That's to Andrew?
20            MS. ARMIJO:  That's to Andrew.  I just
21   wanted to make sure that you were aware of that.
22            THE COURT:  Okay.
23            MR. BENJAMIN:  Maria, any objection to
24   moving the admittance just for this hearing?
25            MS. ARMIJO:  Yeah.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7017

 1                MR. BENJAMIN:  "This" being Willie Romero's

 2     statement from March 2, 2017.

 3                THE COURT:  All right.

 4                MR. BENJAMIN:  I'm at 8, Your Honor.

 5                THE COURT:  And it will be for the bill of

 6     particulars for Joe Gallegos.  It will be Exhibit A.

 7     Anybody else have any objection?  Not hearing any,

 8     Defendant's Joe Gallegos Exhibit A will be admitted

 9     into evidence.

10                MR. BENJAMIN:  And I'm just tendering it to

11     the prosecution.

12                And, Your Honor, I apologize, I used the

13     word "cut off."  But the drug debt, how is a personal

14     drug debt of a drug user, that he is personally

15     using -- because that's the theory that the --

16                THE COURT:  I think I have asked that.  I

17     think that's more in the nature of the argument,

18     which I'll let you do in a minute, but let's focus --

19     do you have any more questions that you want to ask

20     Ms. Armijo, through me, about either the Government's

21     evidence or theories?

22                MR. BENJAMIN:  May I consult with the

23     wiser --

24                THE COURT:  You can consult with whoever

25     you want.

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                      1-800-669-9492
                                                         e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  I'm working through the
 2    statement in my mind, Your Honor, but I don't know
 3    how the statement that Amber Sutton testifies that
 4    Adrian Burns was owed money by Joe Gallegos, and told
 5    me he was -- you know, there was a drug debt comes
 6    in.
 7              THE COURT:  Well, that's a different issue.
 8    I'm trying to get you the bill of particulars here;
 9    trying to give you all the evidence, and all the
10    theories that the Government is going to throw at
11    you.  But that seems to me -- you don't want me to
12    start ruling on admissibility; you want all you can
13    get at this point.
14              MR. BENJAMIN:  And setting admissibility
15    aside, is there something else along that line on the
16    drug debt?
17              THE COURT:  Well, I think she said no.  Ms.
18    Armijo has given you everything on that.  She's
19    identified the two witnesses she's going to use for
20    that.
21              MR. BENJAMIN:  And I appreciate that, Your
22    Honor.  And I think I'm coming up satisfied.
23              THE COURT:  All right.  Ms. Torraco, did
24    you want to -- did any other defendant want to ask
25    through the Court any questions of Ms. Armijo that go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7019

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 48

```
 1   to the theories that are going to be used, or the

 2   evidence that's going to be used, kind of focusing on

 3   the Joe Gallegos 4 and 5?  Mr. Castle?

 4           MR. CASTLE:  Yes.  Is the Government going

 5   to be arguing at trial that the horrific nature of

 6   that murder speaks of the evil of the SNM and the

 7   rest of these defendants?

 8           THE COURT:  Let me put it this way:  And I

 9   don't know if they'll argue it quite that way.  But I

10   guess they are certainly going to argue that

11   certainly the jury is not going to be permitted to

12   use, as co-conspirator statements as to the Burns

13   murder 4 and 5, they can't use those statements

14   against any other defendant that's not involved in

15   that conspiracy or 4 and 5.  But I think they can

16   certainly use the Adrian Burns murder as an example

17   of racketeering activity that the enterprise engages

18   in.  Is that fair?  You'd argue that?

19           MS. ARMIJO:  We would.

20           THE COURT:  You're not going to sit here

21   and -- I don't know, maybe you're going to say

22   exactly what Mr. Castle said.

23           MS. ARMIJO:  I don't know that I would say

24   exactly what he said.  But certainly it is

25   racketeering activity, especially when it goes to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   heart of what they do:  The drugs, the respect, the

2   possible extortion.

3          THE COURT:  Violence.

4          MS. ARMIJO:  Violence and we heard about

5   the violence over and over and over, and will

6   continue to do so.  It is a racketeering activity,

7   and that's why it was charged.

8          THE COURT:  Anything else?  Mr. Castle?

9   Anybody else.

10         MR. CASTLE:  I have argument, but no.

11         THE COURT:  All right.  Ms. Arellanes.

12         MS. ARELLANES:  Judge, with regard to

13  Shauna Gutierrez, we would join the motion to sever

14  Counts 4 and 5, the Burns matter, from the indictment

15  that Mr. -- someone proposed for a couple of reasons.

16  One, is that it's not really an SNM matter; two, the

17  spillover effect on the other members that are tried.

18         THE COURT:  All right.  Anything else to

19  ask the Court, anybody wants to ask, through me, of

20  Ms. Armijo about theories or evidence?

21         All right.  Thank you.  Anything else you

22  want to say, Ms. Armijo?

23         MS. ARMIJO:  No, Your Honor.  Thank you.

24         THE COURT:  Thank you.  Mr. Benjamin.

25         MR. BENJAMIN:  Do you want argument, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50

 1   Honor?

 2           THE COURT:  Yeah, I guess I'd be inclined

 3   to deny the motion for the bill of particulars.  It

 4   seems to me that we have just bottomed out in a more

 5   robust way than we can by just ordering a document.

 6   I mean, I think we have thought about everything we

 7   can ask.  I think we know what we have.

 8           MR. BENJAMIN:  I think what I would ask

 9   Your Honor, is that Counts 4 and 5 be changed to read

10   that Joe Gallegos -- and to the extent that Andrew

11   Gallegos wants to request this remedy, that the

12   indictment read -- the bill of particulars, my

13   understanding, is to require the Government to plead

14   or to replead with specificity, and that they be

15   required to replead and say that Joe Gallegos killed

16   Adrian Burns over a drug debt to the SNM, or was --

17   and that, in that type of manner.

18           Because, as it stands, I can't get my hands

19   around the SNM part of this argument.  Because we are

20   constantly being told -- and will be told for

21   multiple weeks -- and the Court notes this better

22   than I do, because it sat through it -- but the

23   phrase keeps coming up with, "with the SNM, you can't

24   be disrespected; with the SNM, it's above God and

25   family; with the SNM, you can't be a rat or a



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    snitch."  And then we're going to be told that the

2    SNM rules just all fall apart when they find God or

3    they decide that they want a better deal.  And they

4    keep coming up with -- it's this slogan that has come

5    up throughout this trial.  And my problem is the

6    slogan is not something I can wrap my hands around in

7    the indictment, that they can then hold the

8    Government to for its burden of proof on Counts 4 and

9    5.

10          And I have been unsuccessfully trying,

11   since last year, to confine the Government to -- as

12   the Court put it yesterday -- a small box.  And that

13   box, as the Court noted yesterday, whether it was

14   going to be empty or not, has only been filled with

15   the idea that Joe Gallegos killed Adrian Burns over a

16   personal amount of heroin.  Nobody is going to

17   testify that this was a distributable amount of

18   heroin, or anything else.

19          In fact, there is a lot of testimony -- and

20   it will come from Amber Sutton, that Adrian never

21   carried large amounts of drugs on him because he was

22   paranoid.  He never carried large amounts of cash on

23   him because he was paranoid.

24          And so there will be a lot of testimony to

25   that effect, and it will simply be over a personal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7023

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 52 2024

```
 1    beef that then has to be translated into -- and I
 2    keep coming back to it -- and I think I'm probably
 3    the only one in this room that likes this argument --
 4    the jurisdiction of what the murder was about.
 5              But I think that the Government should be
 6    required to be bound by the Court's box.  And in this
 7    case, Ms. Armijo has told the Court that that box is
 8    going to be generated by a drug debt.
 9              And I would ask that the remedy for the
10    bill of particulars is that they be required to
11    plead, and plead with specificity, the drug debt
12    issue.
13              THE COURT:  All right.  Thank you,
14    Mr. Benjamin.
15              Anybody else want to speak on this issue?
16    Mr. Castle?
17              MR. CASTLE:  Yes, Your Honor.  I know this
18    is just a motion for bill of particulars, and we
19    don't really have a dog in that hunt, but I think the
20    Court probably anticipates that there is probably a
21    greater issue that might be coming before this Court
22    by the remaining defendants.  And I want to give the
23    Court a little bit of a preview of that.
24              It's going to be my intention to ask this
25    Court to bifurcate the trial:  Have one single trial,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

 1    and try the Counts 4 and 5 afterwards.  Therefore,

 2    allowing the Government the ability to use all their

 3    enterprise evidence for all charges, but also

 4    protecting the other defendants from what I consider

 5    to be an extremely horrific stain that will impact

 6    the fairness of the trial.

 7           History has shown us that a single drop of

 8    poison, or one single bullet can change the course of

 9    a nation.  Trial work -- Your Honor has done trial

10    work -- a single horrific picture or event can

11    change, regardless of the strength of the

12    instructions this Court will give can change whether

13    the rest of these defendants get a fair trial.

14           I've seen the photo.  I think the Court

15    has, in black and white only.

16           THE COURT:  I have.  I couldn't make too

17    much out of it.  Maybe a different picture would

18    be -- but it was kind of -- I don't know, it was just

19    an ugly looking thing.  It just wasn't --

20           MR. CASTLE:  Well, we have it in color.

21    And I'm sure it will be described by the eloquent

22    voices of lawyers in a way that will send chills down

23    the spines of the ordinary citizens that will sit on

24    this jury.

25           So they seek to bring that evidence in,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   through the very thin reed of federal jurisdiction.
 2   And in this case -- we sit here, and we say, Well,
 3   the jury can maybe -- if they find that the Gallegos
 4   brothers, or one of them, participated in that
 5   horrible murder, but don't find the federal
 6   jurisdiction, they'll look beyond that, and acquit
 7   them based upon this legal concept of federal
 8   jurisdiction.
 9           You know, that takes a very impassioned --
10   lack of passion to do that as a juror.  And if they
11   did that -- let's say they did that, that's the
12   remedy -- well, we'll let them figure it out, and if
13   there is no federal jurisdiction, they're going to
14   acquit these men of Counts 4 and 5.
15           But what remains in the courtroom --
16   remains in the courtroom -- is the horror.  And I
17   don't think any of us, even the Government, can say
18   that written words, or even spoken words of
19   instruction, can overcome that horror.
20           Here is the photo.
21           THE COURT:  Don't you bring it up.  Give it
22   to Ms. Bevel right here.
23           MR. CASTLE:  This is just one of the
24   photos.
25           THE COURT:  Give to it Ms. Bevel.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7026

1           MR. CASTLE:  And I'm sure the Court can

2    limine out certain photographs.

3           But if I were a prosecutor, I could look at

4    the jury and talk about the mangled, twisted, burned

5    body of Adrian Burns.  And it's going to scare

6    everyone.

7           So what's the solution?  The solution is

8    bifurcate.  And the only prejudice to the Government

9    would be that they don't get to use that cloud and

10   stench in the courtroom against the remaining

11   defendants, and against Mr. Joe Gallegos, in the

12   count against him in Count 1.

13          I think this Court, when I've read its

14   rulings, if Counts 4 and 5 were not charged counts,

15   but they were uncharged misconduct, this Court might

16   have said:  No, this isn't fair, I'm going to move

17   that it's 403 evidence.

18          They have piles of enterprise evidence,

19   Your Honor.  They have piles of it.  You wonder,

20   you've heard all the different crimes that have been

21   described, not just of the informants, but also of

22   these defendants, uncharged crimes.  Why did they

23   pick this one?

24          We all know why they picked this one.  It's

25   out in the streets.  It's in the community where the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492
                                                               e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7027

```
 1    jurors live.  And it is so horrifying that it has a

 2    chance to win the day.

 3            And so I'm going to ask -- I'm not asking

 4    right now, but I'm putting this before the Court for

 5    its consideration, because we don't have a lot of

 6    time left, and it didn't occur to me to ask for

 7    bifurcation, frankly, until I heard how weak that

 8    thin reed is, that the Government seeks to bring

 9    these charges before the federal court.

10            THE COURT:  All right.  Thank you, Mr.

11    Castle.

12            Anyone else want to speak on the bill of

13    particulars?

14            MR. SOLIS:  Your Honor, I do.

15            THE COURT:  Mr. Solis.

16            MR. SOLIS:  I do have one thing to add.  At

17    some point I have to participate in this trial; maybe

18    that is good time here.

19            THE COURT:  Go right ahead.

20            MR. SOLIS:  So I've been listening, and

21    getting up to speed on the context and background on

22    the case, to supplement what I've done the last few

23    weeks.  And I'm going to support Mr. Castle's

24    petition to the Court for bifurcation.

25            And I'll offer this:  So, Mr. Chavez here,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7028

1    is in this indictment, stemming from an offense back

2    17 years ago, 2001.  And unlike other defendants, I

3    think there are not subsequent events in the

4    penitentiary, either in '06 or '07.  Just that one in

5    2001.

6            And in my read of the discovery in the

7    last, you know, three weeks, and then just in the

8    last few days, getting up to speed on what's been

9    said, and listening, and reading the pleadings, and

10   all that, it appears to me that -- and I can see this

11   coming, in kind of like the fly on the wall and just

12   observing and getting up to speed, as I mentioned --

13   but it appears to me that Mr. Chavez' role is very

14   peripheral to some of these other players of the SNM.

15           And if, indeed, they establish that

16   Mr. Chavez is an SNM member, even then, if they do

17   establish that, it seems to me a very peripheral

18   role, and certainly not a leader role, by any

19   stretch.  And I'm not even sure if it's a soldier

20   role.

21           And I think we have a reasonable shot at

22   acquittal here on Count 2.

23           However, with the spillover that Ms.

24   Arellanes discussed, and Mr. Castle, it's a real

25   concern here because of the gruesome nature of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7029

1    testimony and the evidence that will be elicited by

2    the Government.

3         I liken this -- I've been involved in some

4    similar cases, similar prosecution in the Western

5    District in Texas on the Barrio Azteca case, a

6    capital murder with the Barrio Aztecas, where they

7    indicted Engaging in Organized Criminal Activity --

8    EOCA, they call it in Texas.  And that type of

9    evidence comes in, and it's very, very prejudicial.

10   And those cases, where maybe there is one or two

11   defendants, like in one case, or in the other case --

12   the former case I discussed it was 17 defendants.

13        So in this case, with Mr. Chavez in

14   particular, where I mentioned, again, 17 years ago;

15   his role is very limited; the subsequent

16   participation is nonexistent, and peripherally he's

17   involved.

18        So that kind of horrific, gruesome evidence

19   that able prosecutors would develop in front of the

20   jury is tantamount to basically convicting

21   Mr. Chavez, based on evidence that really doesn't

22   relate to him.

23        Mr. Benjamin is addressing, ably so, the

24   particulars that he needs to defend the subsequent

25   counts in this indictment.  We're only concerned with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7030

```
 1    one.  And, in fact, the witnesses involved in this

 2    particular count for Mr. Chavez are not that many.

 3    So the reasonable shot -- I mentioned that an

 4    acquittal is diminished, if we continue with that

 5    sort of evidence, with Counts 5, or the other

 6    subsequent counts.

 7              So I'm going to support -- and this is as

 8    good a time as any to jump in this trial and finally

 9    participate, and support Mr. Castle's motion for

10    bifurcation, Your Honor.  Thank you.

11              THE COURT:  Thank you, Mr. Solis.

12              Anyone else?

13              MR. LAHANN:  Your Honor, on behalf of Mr.

14    Patterson -- and I think the Court knows I've been

15    pretty quiet throughout most of these motions

16    hearings, because I'm in the same position as

17    Mr. Chavez.

18              There is hardly any evidence against Mr.

19    Patterson.  He was paroled, I believe, in 2003.  He

20    committed one crime since he's been paroled, and that

21    was a DWI that he had here in Las Cruces.

22              There is no physical evidence that ties Mr.

23    Patterson in to any of this.  And he wasn't

24    prosecuted, to begin with, 17 years ago, because

25    there wasn't any evidence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              The only evidence that has developed is

 2     over the 17 years, there has been some snitches here

 3     and there that have been found.

 4              But we're in the same position, Judge.

 5     There is scant evidence.  We have a shot at acquittal

 6     here.  And to be tied in with -- as Mr. Castle so

 7     eloquently put it -- just a horrific, disgusting

 8     crime that's going to become the sensational part of

 9     this trial, we would like a chance -- if not a

10     severance, then we would ask for -- we would support

11     a bifurcation.

12              Thank you.

13              THE COURT:  Thank you, Mr. Lahann.

14              Anyone else?

15              Well, the issue I think here is narrow.  I

16     think everybody's mind is turning about where we go

17     from here, and things like that, and I understand

18     that, and I appreciate that.  But the motion that is

19     presented is fairly narrow:  It's a bill of

20     particulars.  I think that, in my view, that over the

21     last few hours we have -- and yesterday afternoon --

22     have gotten more information to Mr. Benjamin and Mr.

23     Joe Gallegos, and others, about the Counts 4 and 5

24     than I would even if I ordered a bill of particulars.

25     Because those seem to never satisfy.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7032

```
 1              But with this vibrant, dynamic questioning
 2      process, we've gotten everything out on the table,
 3      that -- theory-wise and evidence-wise.  So I think
 4      that we've gone beyond a bill of particulars.  Even
 5      when it's typed up by Ms. Bean, it will be even in
 6      written form.  So I'm going to deny the motion for
 7      bill of particulars at this time.  I know it was
 8      filed back in early 2017, and so we've gotten far
 9      down the pike.  We've gotten assurances from the
10      Government that everything, evidentiary-wise we've
11      either spoken in here in the James hearing, it's been
12      produced.  They're willing to give more information,
13      and will try to get that information as soon as
14      possible.
15              By doing this and denying a motion for bill
16      of particulars, here's what I'm not ruling on:  I'm
17      not ruling on the sufficiency of that theory or
18      the -- if all that evidence came in, that that would
19      be sufficient either for, as Mr. Benjamin puts,
20      jurisdictional purposes, or as I put, an element of
21      the crime that it has to be racketeering activity
22      that's connected with the SNM.  It has to be
23      advancing or maintaining the position.
24              I am not ruling on any severance motions.
25      I'm not ruling on the admissibility of any evidence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7033

```
 1    I'm not ruling on any what I'm characterizing as sort
 2    of 403 arguments.  All those are for another day.  I
 3    just think that the purpose of what we've done has
 4    sufficed for a bill of particulars, and there is no
 5    reason at this stage to order the Government to put
 6    down in writing what they've stated here in open
 7    court, and what they're willing to give.  So I will
 8    deny Document 1143, and not require anything further
 9    from the Government at this time.
10          All right.  Shall we shift, then, to
11    Mr. Joe Gallegos' motion for a bill of particulars as
12    to Counts 13 through 16.  Mr. Benjamin?
13          MR. BENJAMIN:  If I may have just a second,
14    Your Honor, to switch to that?
15          THE COURT:  You may.
16          MR. BENJAMIN:  If I may, Your Honor.
17          THE COURT:  You may.
18          MR. BENJAMIN:  Bill of particulars for
19    Counts 13 through 16 essentially should -- I'd like
20    to deal with it in two parts, and I'd like to deal
21    with it in the two, essentially, conspiracies is the
22    way the Court addressed them.  The first one is the
23    conspiracy for Count 13.  And I have a slightly
24    different and more conventional argument on this one,
25    Your Honor.  The --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7034

63035

1           THE COURT:  And you know that Mr.
2    Castellano says that he's not alleging any conspiracy
3    on Count 13?

4           MR. BENJAMIN:  And that's --

5           THE COURT:  That's not good news for you,
6    huh?

7           MR. BENJAMIN:  It's excellent news, Your
8    Honor.  And I guess I'd like to take them at their
9    representation.  But I think the bill of particulars
10   is probably the best way to continue forward -- is
11   probably the best way to do that, so that I can have
12   my hands firmly around this idea.

13          The specific idea, though, that I need to
14   address with the Court in Counts 13 through 16 is,
15   like many "ag" assaults that we deal with in the
16   state courts, Count 13 is something that sounds
17   horrific until you listen to the 911 call of the
18   police officer who says, Yeah, I've got him, Jose
19   Tiny Gomez, standing right here in front of me.  He's
20   got a slight laceration on his hand.  And because it
21   was dispatched as a "shots fired" call against an
22   individual.

23          And so the request -- as I said, if I could
24   bifurcate this in Count 13 -- is to, one, specify the
25   serious bodily injury that occurred, and I don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7035

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64036

```
 1    think it did.  And then, two, to specify the deadly
 2    weapon that was used.  Was that a handgun, a knife,
 3    or some other implement?  And I believe I'm entitled
 4    to those two legal definitional type evidentiary
 5    issues.  And then, taking the Government at the face
 6    of the issue, I think, I also, once again, don't have
 7    anything that shows why this is a VICAR action and
 8    not a personal beef between people who live a
 9    football's throw away, as Agent Stemo stated
10    yesterday.
11            Moving to Counts 14 through 16.  This is
12    the count that, once again, Mr. Castellano yesterday
13    provided a statement that further confused myself.
14    Counts 14 through 16 is a retaliation claim against a
15    witness.  And the Court has heard this many times,
16    that there may or may not be SNM activity.  And I
17    think Mr. Gallegos is ready to concede at this point
18    in time that that's not what we're here for.  But was
19    Count 14 through 16 -- and I think this should be
20    pled an assault on Jose Gomez, based upon the March
21    15, 2015 assault, or was it -- as the statement that
22    was later clarified yesterday -- an assault on Jose
23    Gomez because he was going to testify in a state
24    murder charge?
25            I, one, don't know what state murder charge
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7036

```
 1   he was going to testify in, and there is no -- and we
 2   received, courtesy of the Government, all of the bad
 3   acts that they intend to use against Mr. Gallegos.  I
 4   would assume that, if Mr. Gomez was going to testify
 5   against Mr. Gallegos, that would be based upon a
 6   state murder that was on his bad acts list.  There is
 7   no murder on his bad acts list.  And so I think I
 8   have to come back to the idea that they were alleged
 9   to have assaulted Jose Gomez based upon the earlier
10   March '15, March 2015, assault.
11          The last issue I have -- and this goes to a
12   request, if the Court could conduct this bill of
13   particulars much like it did the last one -- I don't
14   know how, having listened to all the phone calls,
15   this information to assault Jose Gomez was put in
16   play.  We've heard and will be told about Mario
17   Chavez, Mario Goofy Chavez, who is going to tell us
18   that there was a plan either before or after -- and
19   we don't know whether it was before or after -- that
20   was put in place, to have people in place to assault
21   Jose Gomez.  But we still don't know how that
22   happened considering all of Mr. Gallegos'
23   communications, written and oral over the telephone,
24   were monitored.
25          And I've been referred to his telephone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7037

1    calls.  And there are reports of investigation that

2    refer to his telephone calls.  But there is nothing

3    on his telephone calls that can even be considered,

4    as is noticed in his list of bad acts, conducting SNM

5    business.

6            And so those are my simple, I guess

7    requests for the bill of particulars, Your Honor.

8            THE COURT:  All right.  Thank you, Mr.

9    Benjamin.

10           Anybody else want to add anything or

11   discuss anything related to the bill of particulars

12   for 13 through 16?

13           All right.  Ms. Armijo, are you going to

14   take the lead on this one?

15           MS. ARMIJO:  Yes, Your Honor.

16           THE COURT:  Maybe -- let's break it down.

17   And I may do a little back and forth here so that I

18   can begin to absorb a little bit more detail of these

19   alleged crimes.  Let's go to the serious bodily

20   injury that occurred.  In this case -- I know there

21   was some proof problems in the first case with Julian

22   Romero.  What do you have here?  What do you have as

23   evidence that a serious bodily injury occurred?

24           MS. ARMIJO:  Your Honor, I'm trying to find

25   my indictment.  I have down on my notes that I have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7038

 1   it as assault with a dangerous weapon.  And I can
 2   check that at break to see.
 3          THE COURT:  You mean what the indictment
 4   was?
 5          MS. ARMIJO:  Yes, as to 13.
 6          THE COURT:  I don't have it in front of me,
 7   but I think 13 is assault of Jose Gomez; then 14 is
 8   the conspiracy to murder Jose Gomez; 14, 15, and 16,
 9   I guess, all relate to the other incident.  So give
10   me the dates of these incidents, so I get those in my
11   mind.  What's the 13 -- the assault of Jose Gomez,
12   what's the date of it?
13          MS. ARMIJO:  So Count 13 is in 2015,
14   specifically.  There is no serious bodily injury
15   allegation with that.
16          THE COURT:  So it's just a pure assault?
17          MS. ARMIJO:  It is, with a dangerous
18   weapon.  And so that answers Mr. Benjamin's question
19   right there as to serious bodily injury.  We don't
20   have to prove it.
21          THE COURT:  So you will not be attempting
22   to prove and don't have any evidence of a serious
23   bodily injury that occurred in relation to the
24   assault in 13?
25          MS. ARMIJO:  Correct.  And it is March 17

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7040

1   of 2015.

2               THE COURT:  Okay.  And then what was the

3   weapon that was used in connection with the 13

4   assault, the 2015 assault.

5               MS. ARMIJO:  I believe it was a knife.

6               THE COURT:  And what evidence do you have

7   of it being a knife?

8               MS. ARMIJO:  The victim's statement that he

9   was stabbed in the hand by the knife causing injury

10  to Mr. Gomez.

11              THE COURT:  And so I guess that raises a

12  question:  Jose Gomez will be here, like Julian was,

13  and testify?

14              MS. ARMIJO:  Jose Gomez will be here.  It

15  was also witnessed by Brandon Chavez, who was driving

16  Mr. Gallegos, when they saw Mr. Gomez on the streets.

17              And the background to this incident is that

18  Jose Gomez is a documented SNM Gang member, and that

19  he was active in drug trafficking activities on

20  behalf of the SNM during that time.  And in 2015, he

21  resided at the residence of Joe Gallegos.  And Mr.

22  Gallegos was incarcerated in jail at the time, and

23  allowed Mr. Gomez to stay at the residence.  And in

24  exchange for that, Jose Gomez was selling heroin from

25  the property, and he was to be putting $50 per month

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7040

 1   on Joe Gallegos' jail accounts.  So he was being

 2   allowed to live at Joe Gallegos' house, sell heroin

 3   there, and basically pay Joe Gallegos $50 a month.

 4   And he was also supposed to be supplying Joe

 5   Gallegos' girlfriend with the heroin so that she

 6   could use it or sell it.  Jose Gomez stopped paying

 7   Joe Gallegos and supplying the girlfriend with

 8   heroin, and then he moved off the property.  And,

 9   obviously, when Mr. Gallegos was released from

10   custody, he was not happy with that situation.

11           So on March 17th of 2015, Mr. Gallegos came

12   across Jose Gomez.  I believe he was driving in a car

13   when he saw him on the streets, and --

14           THE COURT:  What was Mr. Gallegos not happy

15   with?

16           MS. ARMIJO:  He was not happy with the fact

17   that Jose Gomez had stopped paying him rent, so to

18   speak, stopped paying the $50 for living in his

19   house, stop paying him the, quote -- whether you want

20   to say it's rent, or the tax for being allowed to

21   sell drugs from his residence, and supplying heroin

22   to his girlfriend.  He was not happy with Jose Gomez,

23   basically, not living up to the agreement that they

24   had while Mr. Gallegos was in custody.

25           And so when he got out of custody, there

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                        1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

DNM 7041

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 70 7042

 1   was an incident which he stabbed him in the hand --

 2   he was chasing him with a large knife, and eventually

 3   he did cut his hands.

 4          THE COURT:  All right.  There is a lot for

 5   me to ask on that.  But I need to give Ms. Bean a

 6   break.  Would this be an okay time for us to take

 7   about a 15-minute break?

 8          MS. ARMIJO:  Certainly, Your Honor.

 9          THE COURT:  All right.  So we'll be in

10   recess about 15 minutes.

11          (The Court stood in recess.)

12          THE COURT:  Look around the room.  I think

13   we've got lawyers for each defendant.

14          All right.  Ms. Armijo.

15          MS. ARMIJO:  Your Honor, I spoke to Mr.

16   Benjamin at the break.  Because we are still on

17   Monday afternoon in our schedule, and we're Wednesday

18   morning, I suggested to him, and he agreed to do

19   this, that for the bill of particulars, since what it

20   is, instead of going through the process of him

21   asking the Court to ask me questions, to see if we

22   can resolve this issue during a break or at lunch.

23   And I told him I'd be more than happy to sit down

24   with him and talk to him about the evidence.  And he

25   agreed to do that.  Then any unresolved issues,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7042

```
 1    anything else that he had questions that we can't
 2    agree to, that we would bring to the Court maybe
 3    later on.
 4            Because I know that for the motion to
 5    suppress, that I think was scheduled yesterday, we
 6    have two witnesses here to testify.  I know there is
 7    motions regarding several inmates and other things.
 8            So I think the time is better spent with
 9    Mr. Benjamin and I trying to work this out and me
10    answer questions.  He may still come back and say he
11    doesn't think we have the evidence, and we'll argue
12    that's probably for a Rule 29.  But certainly, we're
13    not hiding anything from him, and we just thought it
14    would be a better resource of time.
15            THE COURT:  Is that agreeable to you, Mr.
16    Benjamin?
17            MR. BENJAMIN:  Yes, Your Honor.
18            THE COURT:  All right.  So we're going to
19    move from Tabs 4 and 5, which are the bill of
20    particulars.  Are we going now to 6, Joe Gallegos'
21    renewed motion to dismiss Counts 4 and 5, which also
22    has another motion for particulars or are we skipping
23    that one as well?
24            MR. BENJAMIN:  Ms. Armijo and I are
25    throwing hand signs, Your Honor.  But I think we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   skipping that and moving to the next one.
 2              THE COURT:  Okay.  So we're going to Billy
 3   Garcia's discovery motions?
 4              MR. COOPER:  Your Honor, just to give you a
 5   little heads-up.
 6              THE COURT:  Okay.
 7              MR. COOPER:  Greg Fallick had filed a
 8   motion to quash a subpoena.
 9              THE COURT:  Right.
10              MR. COOPER:  And he's threatening to not
11   allow his client to come down here, and disregard the
12   subpoena.  He would like to have a telephonic
13   conversation at 1:00 this afternoon, if possible, or
14   he will be available by phone.  We've subpoenaed his
15   client, Leroy Lucero.  We expect him to be here.  We
16   intend to call him.  But I think we need to deal with
17   the motion to quash.
18              THE COURT:  All right.  Is it all right for
19   everybody to deal with it by phone?  Is that all
20   right?
21              MR. COOPER:  We're fine with it, Judge.
22              THE COURT:  The defendants, everybody in
23   agreement, it can be done by phone?
24              MS. ARMIJO:  Yes, Your Honor.  And I
25   believe we have a similar issue with Mr. Quintana.
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                   (505) 843-9494
FAX (505) 843-9492                                                       FAX (505) 843-9492
                                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                    e-mail: info@litsupport.com
DNM 7044

```
 1    Phil Sapien filed a motion to quash as well.  I know
 2    this morning he was in a depo.  I don't know what his
 3    schedule is this afternoon.  But I know that unless
 4    he can be here -- if the Court is not going to quash
 5    the subpoena, if his client is going to testify, Mr.
 6    Sapien needs to be here.  And so I think we need to
 7    deal with the motions to quash.  And if they're not
 8    going to be quashed, deal with getting these
 9    attorneys and witnesses down here because we're now
10    kind of -- Wednesday.
11            THE COURT:  So I'm taking them one step at
12    a time.  Looks like we'll have a hard break about
13    noon or quarter till noon, and then we'll come back
14    at 1:00.  Why don't we do this, why don't we plan on
15    doing this:  Why don't we take a break at quarter
16    till 12:00.  So it will be 11:45.  We'll take our
17    lunch break at 11:45; come back at 12:45, then
18    whatever we're doing, we'll stop at 1:00 and do the
19    phone call.  Does that work?
20            MR. COOPER:  That works, Your Honor.
21            THE COURT:  Tell me a little bit about Mr.
22    Sapien.  Do we need to set up something for him this
23    afternoon as well?
24            MR. COOPER:  Judge, my last communication
25    with Mr. Sapien was that he's going to be out of town
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7045

1    tomorrow and Friday, and then sometime next week or

2    the following week.  He told me that he was available

3    all day today.  I then sent him an email telling him,

4    well, let's make it in the afternoon.  I then learned

5    that he was in a deposition this morning.  I never

6    got a response from him, telling him that we would

7    attempt to put his client on this afternoon.  So

8    we're still expecting to do that.  I have not heard

9    from him in response to that email.

10          So -- and his client is presently

11   downstairs, the marshals have writted him out.

12   They've also writted out Frederico Munoz and Leonard

13   Lujan.  And we expect those two also this afternoon,

14   I think, maybe Friday, or tomorrow, Ben Clark?  So

15   Ben Clark will be here tomorrow, and somebody else

16   that we can't recall right at the present, Your

17   Honor -- oh, Baby Rob.  Actually, I think Robert

18   Martinez may be here today.  Anyway, we have a number

19   of individuals in custody.

20          THE COURT:  So we know we've got a lawyer

21   for Leonard Lujan at 1:00, and then everything

22   else --

23          MR. COOPER:  No, for Leroy Lucero.

24          THE COURT:  Leroy Lucero.

25          MR. COOPER:  Leroy Lucero.  And then we'll

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

75

```
 1    deal with that.  So which motion -- kind of skipping
 2    ahead -- are we going to go to now?
 3          MS. ARMIJO:  Your Honor, may I just ask a
 4    question?  It appears that all these people are
 5    represented.  I know that the issue with -- Mr.
 6    Sapien will say one of his biggest issues is that
 7    they never went through him to subpoena, and they
 8    never made arrangements for him to come.  I am just
 9    assuming, since we did not know who they were
10    calling -- these were all ex parte -- that they are
11    all working through counsel of all these people, so
12    that we don't have a witness come on -- they
13    certainly have the right to have their attorneys
14    here.  So I would just ask defense counsel to be
15    working with all these defense attorneys to make
16    these things work smoothly.
17          MR. CASTLE:  Judge.  I can real quickly
18    address it.  Last Wednesday the Government filed
19    their notice of statements.  We had to quickly file a
20    responsive motion that Friday.  This deals with that,
21    1909.  We contacted the lawyers the day we filed the
22    motion.  Some of them had not been as cooperative as
23    others.  And that's why we're here.  I mean, I would
24    have loved to have had notice a long time ago time,
25    too.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7047

```
 1            THE COURT:  I think what you're telling me
 2    is I'm just going to take them one at a time.
 3            MR. CASTLE:  Yes.
 4            THE COURT:  So I'll just have to work
 5    through the problems.  And there is no guarantee
 6    anybody is going to testify, and no guarantee that
 7    they won't at the present time.
 8            All right.  So you and Mr. Benjamin seem to
 9    have some motion that y'all wanted to go to next?
10    What are y'all thinking of?  We're skipping over the
11    discovery motions and moving to something else.
12            MR. BENJAMIN:  I just understood we had an
13    agreement that I was going to meet with her, and move
14    my motions to clean up space, for lack of a better
15    term, Your Honor.
16            THE COURT:  All right.  So as far as what I
17    think are Mr. Gallegos' motions, it will be 4, 5, and
18    6 will be put -- these are tabs, so I'll give you the
19    numbers:  1143, 1319, and 1808; correct?  Is that
20    what we're putting aside for the present time?
21            MR. BECK:  Correct.
22            MR. BENJAMIN:  Yes, Your Honor.
23            THE COURT:  So then the next motion that's
24    up is Billy Garcia's discovery motion.  Are we ready
25    to take that one up?  Is that what people anticipated
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7048

```
 1    coming up next?

 2              MR. BECK:  Yes.

 3              MS. HARBOUR-VALDEZ:  Yes, Your Honor.

 4              THE COURT:  Then are you ready to argue

 5    that, Mr. Cooper?  Mr. Castle?  I read it, but I'm

 6    going to have to refresh my memory.  I know it dealt

 7    with two witnesses, if I'm not mistaken, but --

 8              MR. CASTLE:  Is that motion number 1744?

 9              THE COURT:  It's motion number 1693.

10              MR. CASTLE:  Yes, Your Honor; it's not two

11    witnesses.  It's Trial 2 witnesses.

12              THE COURT:  Oh.

13              MR. CASTLE:  It was probably poorly

14    worded -- well, not probably -- obviously, it was

15    poorly worded.

16              Your Honor, basically our position is that

17    we don't believe the Government has turned over all

18    Giglio-Brady materials.  Their obligation to turn

19    over Jencks isn't until, I believe, two weeks prior

20    to trial.  But the Court, when it was dealing with

21    the intersection between Brady, Giglio, and Jencks

22    said that Brady-Giglio trumps, so that had to be done

23    immediately.

24              What we noticed in the Trial 1 process was

25    there were materials that were provided to the Trial
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7049

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 73050

1 team that were what would be properly considered to

2 be Giglio-Brady materials.  There were inconsistent

3 statements, there was presentence investigation

4 reports, things of that nature.  And those were all

5 dumped at the last minute.  But within that pile we

6 found materials which were Brady and Giglio that

7 dealt with Trial 2; that they had been in possession

8 of for sometimes years that they were producing.

9          And so we want to try to avoid some of

10 those processes.  This is a general concept.  And

11 that is, to have them certify right now that they've

12 turned everything over in their possession that's

13 Giglio-Brady, so if we find out later that they

14 haven't, then we can request sanctions from this

15 Court.

16          But we have -- if I could just have a

17 moment.  I didn't know what had been agreed on

18 between the two parties, so --

19          THE COURT:  That's all right.  Take your

20 time.

21          MR. CASTLE:  One example is that, in the

22 materials we received in January, because the

23 Government was going to be calling witness, Frederico

24 Munoz, to the stand, and he testified in Trial 1,

25 they produced materials.  And included in that was a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   2002 interview, so approximately a year after the
 2   murders in this case, Mr. Munoz was in a cooperating
 3   relationship with the State investigating
 4   authorities, and also federal agents.  And from that
 5   time on, he worked off and on as a dual agent, in the
 6   sense that he pretended to be still a member of the
 7   SNM, and participated in SNM activities, including
 8   murders, but also at the same time he was providing
 9   information to law enforcement.  So he was acting in
10   that capacity.  And somehow the Government didn't
11   think that was necessary to turn over until they
12   turned over Jencks statements.
13           I can tell the Court what we've been in the
14   process of doing since then -- it's a laborious
15   process -- we've had to subpoena the Albuquerque -- I
16   think it's either Albuquerque Police Department or
17   Bernalillo County Sheriff's -- I can't remember -- to
18   try to get his informant records.
19           This is all relevant, not just to trial,
20   but it's to determine whether he was acting as an
21   informant at the time that he allegedly obtained a
22   confession from our client in the prison, which could
23   be -- you know, depending on the timing of it, it
24   could be an issue where we need to raise a motion
25   concerning suppression of that statement.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7051

1           All these things are causing problems.  And

2    subpoenaing those materials from the authorities in

3    Albuquerque is proving to be a difficult process,

4    because they're refusing to honor subpoenas, and

5    instead, are talking to the prosecutors and the U.S.

6    Attorneys here, to see if they can get out of them or

7    if they can produce them to them.

8           So the problems in delay are already

9    occurring.  And so, you know, in our prayer or

10   request for relief -- which I'm going to hopefully

11   scroll to as I'm talking -- is that we've asked for

12   the Court to order the Government to produce all

13   remaining materials on or before February 5th, which

14   obviously is long past.  And we've said that because

15   the Government has shown a pattern where they do not

16   recognize the difference between Giglio, Brady, Rule

17   16, or Jencks, that frankly, the Jencks requirement

18   be moved up to -- and at this point, unfortunately,

19   February 5th has come and gone -- and I understand

20   why, because the Court was busy.

21           But I suggest that they turn it over within

22   a week, so if there are problems, we can get them

23   done before trial.  I saw, at least what happened in

24   Trial 1, there were constant motions for discovery

25   violations and things of that nature.  As a court, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN**
**&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7052

 1   know this Court probably doesn't like to deal with

 2   those, and is often put in a hard position where, you

 3   know, mistrial is the only other option, and that's

 4   something to be avoided.

 5          We can avoid some of this if we move the

 6   Jencks material disclosures up.  And frankly, there

 7   is no reason not to.  They've given the names of the

 8   witnesses.  They've given us some reports.

 9   Obviously, if there is any materials -- debriefings

10   that happened prior to witness testimony, obviously

11   they can't produce that, and they would have good

12   cause for a later disclosure, because it didn't exist

13   at the time.  But we're requesting that, at this

14   point, the Court remedy the situation and order

15   everything to be produced now.

16          And just as a caveat, Trial 1 had four

17   defendants and limited crime bases that had to deal

18   with the last-minute dump.  We have, obviously, eight

19   teams, and also more crime bases.  Frankly, I think

20   it's in everyone's interests.  I know this Court is

21   trying to shoehorn us all into a courtroom.  If we

22   get these discovery dumps now, and some of our

23   clients might realize they want to take a

24   disposition, because now they realize the full scope

25   of the Government's evidence, it might assist in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    resolution of some of these charges, and make living

2    conditions in the courtroom a lot better for

3    everyone.

4              But, frankly, at this point, this Court has

5    a body of knowledge that it didn't have before when

6    it said two weeks' notice.  I think the Court's

7    ruling was:  Look, I have to trust the Government to

8    do their job the way that they're supposed to, along

9    the lines that have been given.  And now we have

10   evidence that it hasn't happened.

11             Later in these hearings the Court is going

12   to hear a motion concerning handwritten notes.  We've

13   done an analysis of the 302s that have been done in

14   the case, and I believe there is over 800 302s, of

15   which 90 percent -- 40 of those 302s we have notes on

16   right now, 40 out of the 800.  And then there is some

17   other interviews that are not titled 302s.

18             So that's the kind -- I'm giving the Court

19   that image, because we're now going to understand

20   what's going to happen.  And we might as well get

21   this process of disclosure going right now, so that

22   if there are issues, we can resolve them prior to

23   trial.

24             If I could just have a moment, Your Honor?

25             Nothing further, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7054

1           THE COURT:  Any other defendant want to

2    speak on this motion that Mr. Garcia filed relating

3    to disclosure, discovery?

4           All right.  Mr. Beck, are you handling this

5    one?

6           MR. BECK:  Yes, Your Honor.

7           THE COURT:  Let me make a few comments

8    related to some of the things that Mr. Castle said,

9    and then let you then respond.

10          Working through the three -- what I'll call

11   the sanction motions -- that were filed last week of

12   the trial, I ceased working on those on Monday when

13   the verdict came down.  So I don't have this ready to

14   hand you and the parties in the first trial.  But one

15   of the things that I worked through was a ruling that

16   I had made very early in the trial.  And that -- I

17   believe, back in May, if my memory is correct, that

18   if the Government took the position that this was a

19   statement, and this was Jencks material, they then

20   had to look at it with Brady and Giglio eyes, and

21   Rule 16 eyes, and they had to make immediate

22   production; that they couldn't delay it to Jencks.

23          I made that ruling without a whole lot of

24   research at that time.  But then, in looking at it, I

25   realized that there is a bit of a split among the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                    1-800-669-9492
                                                               e-mail: info@litsupport.com

DNM 7055

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 84

1    courts on that issue.  So I sat down and reanalyzed,

2    rethought whether I got it right in ordering

3    immediate production of the Brady and Giglio or

4    Jencks, and not complying with congressional language

5    in Jencks.

6             And I reconvinced myself that I was right,

7    and we are writing it up in a single opinion right at

8    the moment on the three sanction motions.  So I don't

9    have it out -- I don't have it to give to you, but I

10   have rethought that and reanalyzed it, taking into

11   account the split among the courts, and reconvinced

12   myself that I got it right.

13            So I'll apply that rule in this case as

14   well; that if you have any Brady, Giglio, Rule 16

15   stuff, you've just got to go ahead and fork it over,

16   even if it would also be Jencks material, statements

17   of witnesses.  So that's one thing I need to say.

18            Second, I would think that we are better

19   off going into the second trial, just because we had

20   to work so hard, and double and triple our efforts to

21   get everything produced in the first trial.  So I

22   would think, for example, witnesses that are going to

23   appear in this trial, we're bruised and bloodied

24   getting the discovery done on those people, because

25   of what we had to do in the first trial.  So I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7056

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 85 of 317

```
 1   in some ways we'll be better off.
 2            Third, I guess I never envisioned what
 3   occurred with Mr. --
 4            MR. BECK:  Rodriguez?
 5            THE COURT:  Well, no, I was trying to think
 6   of the agent, but -- maybe the witness was the agent,
 7   but the two agents were -- one of them was at the
 8   meeting with their laptop taking four-and-a-half
 9   pages of notes, and then the 302 was a single four
10   paragraphs -- I never envisioned that situation.  I
11   always envision a situation where I never could quite
12   figure out how people take notes other than take
13   verbatim notes.  I mean, you -- and maybe there is a
14   million ways to take notes, but I know the way I take
15   notes is I tend -- I'm a lousy notetaker now because
16   I've got Ms. Bean -- but when I used to take notes, I
17   used to write exactly what I heard, which I would
18   think is verbatim.  And then my memory was such that
19   when I sit down at the end of the day and created my
20   outlines or my report or my memo, simply looking at
21   the verbatim words was enough to help me then write
22   the report.  Now, I don't know if that's the way
23   everybody does it or not.  But I guess I would think
24   that few people -- there may be people that do it,
25   and they're just better notetakers, are actually
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7057

1    characterizing what the witness is saying at the very

2    moment they're taking notes, and so they're sort of

3    writing a report.  And that's the reason I've always

4    been skeptical that I'm going to ever see a set of

5    notes from an FBI agent that is not verbatim.

6           But in any case, what we had with the two

7    agents was just another example of why I think it's

8    important to produce these notes.  And I've never

9    precluded the Government from coming in and saying,

10   Judge, we're going to hand you a set of notes, and we

11   dare you to say that's verbatim.  Take a look at it.

12   It's not verbatim.  And I may see a set of notes and

13   say:  You don't have to produce those till Jencks.

14           I'm still not inclined to move up your

15   Jencks date.  But I do think that the Government is

16   going to have to maybe adjust its lenses as it goes

17   back through these before it delays producing the

18   Jencks, to make sure they don't contain Giglio, don't

19   contain Brady or Rule 16 information.

20           And as far as these notes, while that's the

21   reason they're being produced, they're Jencks

22   material, I still think they're going to have to look

23   at those a little more closely, and see if those need

24   to be produced earlier because they may contain Brady

25   or Jencks.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7058

```
 1              So those are some thoughts I have.  You
 2   wanted to respond to what Mr. Castle said or respond
 3   to what I say?
 4              MR. BECK:  I'll do both.  The United States
 5   has produced everything it has aside from agents'
 6   notes.  So we don't oppose that request.  And I think
 7   we probably did it somewhere close in time to
 8   February 5th, if not on that date or before.
 9              With regard for the Court's classification
10   of notes as Jencks, I don't disagree.  I think the
11   situation that happened with the two agents was
12   unique.  I didn't know that happened --
13              THE COURT:  I think it surprised you,
14   right?
15              MR. BECK:  Yeah, to say the least.  Yes.
16              THE COURT:  I guess I'm wondering more and
17   more -- now we're now entering a new world, you live
18   long enough, you see enough things.  I mean, used to,
19   you never saw recordings by the FBI.  Now we're
20   beginning to see a spattering of recordings.  But I
21   guess we're also now beginning to see agents,
22   younger, sitting there with a laptop taking notes.
23   And so we're entering a new world order on that score
24   as well.  We're getting some pretty good detailed
25   information out of these 302s -- or these interviews,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7059

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 88060

```
 1    before we even get to the 302s.
 2              MR. BECK:  I agree.  Your Honor.  And I
 3    think what courts have done is there has been two
 4    approaches.  One has been, I think, the approach that
 5    Your Honor is taking, and it seems now clear that
 6    Your Honor is taking this approach, which is to say
 7    that verbatim notes taken by agents are Jencks, and
 8    they must be produced.
 9              I think there is a second approach which
10    courts have taken that say verbatim notes taken by
11    agents must be produced unless the 302 includes
12    everything in those notes, and the 302 is a more --
13              THE COURT:  And that's kind of what Judge
14    Brack does, right?
15              MR. BECK:  Right.  So in my review of
16    agents' notes, which has been a lot --
17              THE COURT:  The Tenth Circuit has never
18    added that, right?
19              MR. BECK:  No.
20              THE COURT:  Judge Brack added that, but the
21    Tenth Circuit just said "verbatim notes," right?
22              MR. BECK:  I think it depends on what you
23    mean by "add."  I agree with you that's what the
24    Tenth Circuit said.  I would say that adding
25    production of agents' notes on top of 302s, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN
&ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7060

```
 1   include everything and more would be adding

 2   something.

 3          But I see Your Honor's point in that there

 4   is a sort of qualification there that Judge Brack has

 5   added, which is, if what is in the notes is

 6   incorporated in the 302.

 7          THE COURT:  And he's not alone.

 8          MR. BECK:  He's not alone.  No, that's what

 9   I'm saying.  I have researched this issue.  And there

10   are courts that's go both ways.  And I think Your

11   Honor has made it clear in this case that you're

12   staking out the position --

13          THE COURT:  And I do that because the

14   statute, Jencks Act says "statement."  It doesn't

15   matter if it's a handwritten statement, which is what

16   we were dealing with in the old days, agents sort of

17   with their pads.  And now we're doing it with laptops

18   or with a tape recording.  It seems to me that it can

19   come in three forms.  But I think you and I would

20   agree that if you had a 302, but you also had a tape

21   recording, you've probably got to turn over the tape

22   recording and the transcript, right?

23          MR. BECK:  Sure.

24          THE COURT:  If you have one, that would be

25   a statement under Jencks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7061

1          MR. BECK:  Sure.  Yes, I mean, I think that

2    situation is very different, right?  Because,

3    obviously, a tape recording, or I guess now a digital

4    recording -- I'm not even sure tape recordings exist

5    anymore -- would be much more verbatim of a statement

6    than even the 302 would be.

7          But I understand Your Honor's approach.  I

8    think it's a fair reading of the statute.  I think

9    it's a fair approach to take.  And it's probably a

10    prudent one, in my review of the agents' notes,

11    because what's the harm -- aside from everyone having

12    to read twice as much -- what's the harm in more

13    disclosure rather than less?

14          So I understand the Court's position there,

15    and I think it's a faithful reading of the statute.

16    Courts have come down different ways; Your Honor

17    comes down one way.

18          So we have produced -- getting back to the

19    motion -- we have produced the 302s, the 1023s, the

20    PSRs -- I think the PSRs have been redacted, and the

21    I'll just point this out for the everyone:  We read

22    through them, and we read through and made some

23    redactions based on personal information.  I think

24    everyone is familiar enough with PSRs that if they

25    think we've unfairly redacted something, I'm happy to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7062

1   field those requests, and look back at it and get

2   back to defense counsel with any of those requests.

3         The thing that has not been produced yet is

4   the agents' notes.  We were holding those back as

5   Jencks.  The Jencks deadline is after the person has

6   testified.  We've moved that up to two weeks

7   beforehand.  We've not discussed turning over those

8   agents notes earlier in time.  I don't know that we'd

9   be opposed to that.  But they're not readily at our

10  disposal, because there is teams back in Albuquerque

11  working on scanning the agents' notes in, to ready

12  them for production.  They certainly will be produced

13  by the Jencks deadline, because that's the deadline,

14  that's what we're producing.

15        THE COURT:  What's the date on that?

16        MR. BECK:  I think it's March 26, a week

17  from Monday.

18        THE COURT:  That's a Monday?

19        MR. BECK:  Right.  So that would be two

20  weeks before --

21        THE COURT:  A week from this Monday.

22        MR. BECK:  Right.  And so I know we have

23  some produced.  As they said they've gotten some.  So

24  we'll certainly talk about producing those earlier

25  if -- we'll talk about that.  I can't say that --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7063

1          THE COURT:  It seems like you have a couple

2     of choices, you know:  You got to start reviewing

3     these things to see if they're Brady or Giglio, or

4     you've just got to kick them out.

5          MR. BECK:  I agree with you.  And I think

6     that's the discussion we'll all have.

7          So for purposes of this motion, I've

8     confirmed with our -- with the people who are much

9     better at knowing what's in there than me.  We've not

10    held back any 302s, 1023s, or PSRs as Jencks

11    material.  Those have all been produced.  So as far

12    as we're concerned --

13         THE COURT:  As far as, in your category of

14    Jencks right now, the only thing you have is agent

15    notes.

16         MR. BECK:  That's right.

17         THE COURT:  And you may produce those even

18    earlier?

19         MR. BECK:  That's right.  In the universe

20    of documents and materials that we have, the only

21    thing that we are holding back at this point is the

22    agents' notes.  So Rule 16, Brady, Giglio, Jencks,

23    that whole universe, the only thing we have right now

24    are agents' notes.

25         THE COURT:  Okay.  So if I understand, what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7064

```
 1   is being withheld is the agent notes for the present

 2   time, additional agent notes, and redacted PSRs, the

 3   redactions in the PSRs?

 4              MR. BECK:  Right.  On top of that -- it's

 5   not being held back, but it's in the process of being

 6   redacted and disclosed, is the Mario Rodriguez box of

 7   personal property that we came through in that first

 8   trial.

 9              THE COURT:  That's the thousand pages that

10   were found in the box under the agent's desk?

11              MR. BECK:  Right.  So those are being

12   redacted right now and marked for production.

13              There were jail calls that were requested

14   from Corrections.

15              THE COURT:  Those are ongoing?

16              MR. BECK:  Those are -- I mean, those are

17   ongoing, but we received some from the past, in

18   response to Mr. Castle's subpoena, that are being

19   produced, it's my expectation this afternoon, to Mr.

20   Aoki.

21              There is a file from the Bureau of Prisons

22   that was produced to our office.  I don't know really

23   why, but that is somewhere in the mail.  I'm

24   guessing, with how long it's been, it's on horseback

25   coming to Las Cruces, New Mexico.  But we've not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7065

1    received that yet.

2            THE COURT:  It's coming down here?  Not Mr.

3    Aoki, it's coming here?

4            MR. BECK:  It's coming down here.  And as

5    soon as we get it, we're going to turn around and

6    produce it.  Because I've spoken with the BOP

7    attorney who provided it to us.

8            THE COURT:  Fed Ex runs between Albuquerque

9    and Las Cruces.

10           MR. BECK:  With the speed this is going,

11   they may actually run; they may not take a car.  They

12   may do that cross-country.  But as soon as we get

13   that, it will be turned over.

14           THE COURT:  All right.  What am I missing?

15   It sounds like there is nothing to grant here.  Do

16   you see something different?

17           MR. CASTLE:  Yes.  Your Honor, with regard

18   to the presentence investigate reports, only two have

19   been produced in discovery.

20           THE COURT:  He's admitting that; he says

21   they're redacting it now.

22           MR. CASTLE:  I know.  We filed the motion

23   in January, I filed it.  And they said they were

24   going to produce them by February 12.  They haven't

25   produced them.  They obviously contain Brady and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7066

1    Giglio.  They don't give an excuse as to why they

2    haven't turned them over.

3              THE COURT:  Let me ask this:  When do you

4    think the PSRs, the redacted PSRs, are going to be

5    produced to the defendants?

6              MR. BECK:  So I think -- I'll have to look

7    back at it.  My memory serves me that there are

8    three.  And so I'm surprised they don't have three.

9              MR. CASTLE:  I was corrected.  Roy Paul

10   Martinez.

11             THE COURT:  You think that you're only

12   needing to produce three for this trial?

13             MR. BECK:  Yes.  So if they have three, the

14   have -- no, I'm not saying for this -- I'm saying

15   yes, yes, in production of those, those are the three

16   PSRs --

17             THE COURT:  You've only got three PSRs for

18   this trial?

19             MR. BECK:  Right.

20             THE COURT:  Do you have those three PSRs?

21             MR. CASTLE:  We don't.  And what's

22   interesting, Gerald Archuleta, who testified in the

23   first trial, he's due to testify in Trial 2, his PSR,

24   I assume, was given over to Trial 1 lawyers, and

25   already went through the redaction process.  The same

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7067

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 96068

1    thing with Frederico Munoz.  These are just ones I'm

2    coming off the top of my head that I think testified.

3    I think -- so I don't know why those haven't been

4    produced, Judge.  I did review those.  Now, what they

5    originally requested this Court was authority to

6    redact personal identifying information.  But there

7    are entire paragraphs that are missing, they're

8    blacked out -- sometimes two-thirds of a page is

9    blacked out, which is a narrative about the person's

10   life or history and background.  We're not going to

11   have time to litigate that.

12          THE COURT:  Let me ask Mr. Beck:  My memory

13   is the same, although it's not strong, that we were

14   just going to redact Social Security numbers, and

15   maybe some addresses.  Are y'all redacting more?

16          MR. BECK:  Yes.  We have redacted -- I

17   think we've redacted height and weight as personal

18   information.  I guess I don't have a problem removing

19   that.  I'd have to look back at them.  We also

20   redacted -- in the beginning of these PSRs, as I

21   said, I thought people would be familiar -- in the

22   beginning of the PSRs, they list all of the

23   co-defendants for all of the charges in all of the

24   related matters.  And so, in discussions with defense

25   counsel in the first trial, we redacted those because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7068

```
 1    if they were going to want to put them in front of

 2    the jury, or ask things like that, I think they

 3    thought it was prejudicial to have everyone's

 4    information on those.

 5              So, as I said, if --

 6              THE COURT:  Do you disagree with Mr. Castle

 7    that there are like pages and three-quarters of a

 8    page redacted?

 9              MR. BECK:  No.

10              THE COURT:  So how are we coming up with

11    that, if we're doing weight and height and Social

12    Security numbers?

13              MR. BECK:  Again, I'd have to look back.

14    It may be personal information related to something

15    from Probation.  I'd have to look back at it.  But --

16              THE COURT:  It's not your intent to keep

17    what I'll call personal information; in other words,

18    marriages, children, you're not trying to just redact

19    that?

20              MR. BECK:  No, that information is all --

21              THE COURT:  You had an agreement with the

22    first group as far as that cover page, all the other

23    defendants?

24              MR. BECK:  Right.

25              THE COURT:  And then you had -- then you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7069

```
 1    took out Social Security numbers and maybe addresses,
 2    telephone numbers, that sort of thing?
 3            MR. BECK:  Sure.  And I mean, it looks
 4    likes they have it, so they can put it in front of
 5    you and argue about it, if you want, or they can talk
 6    to me, and I can --
 7            THE COURT:  Well, if we have an agreement
 8    of what we're going to redact and not redact, my
 9    memory is that what Mr. Beck is saying -- we were
10    going to take out Social Security numbers, and I
11    think addresses, maybe telephone numbers, that sort
12    of thing.  I don't remember weight and height.  But I
13    think if you want the other defendants' at the bottom
14    for the second trial, you're willing to give it,
15    right?
16            MR. BECK:  Sure.
17            THE COURT:  That was more of a request from
18    the first ones, because they were putting it up on
19    the screen, and they just wanted it out, right?  Is
20    that the situation?
21            MR. BECK:  Right.
22            THE COURT:  So if you want it, you got it.
23            MR. CASTLE:  That's what they promised
24    before, Judge.  I can show the Court real simply an
25    example.  I mean, I know that for some of us height
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and weight might take an entire paragraph, but
 2   what -- if I could, could we turn this on real
 3   quickly.
 4            MS. ARMIJO:  Who is that?
 5            MR. CASTLE:  It's Jake Armijo.  This is a
 6   section called offense, for which he pled.  And they
 7   will put down offenses and information about it.  And
 8   when we go down, all sorts of material --
 9            THE COURT:  I know what's on that page and
10   you know what's on that page, it's all the other
11   defendants.  But he's willing to give it to you if
12   you want it.  Other defendants didn't want it.  So
13   he'll give you that, right, Mr. Beck?
14            MR. BECK:  That's right, Your Honor.
15            THE COURT:  Okay.
16            MR. CASTLE:  I'm trying to avoid -- my
17   notes, obviously are showing what my work product is,
18   but I'm trying to show more information.  Perhaps I
19   have another one.  Do you have that hard copy?
20   Perhaps, without going through all of this, Judge, if
21   they promised what -- if they deliver what they
22   promise here on the record, then I don't think we're
23   going to have a problem.
24            THE COURT:  Okay.
25            MR. CASTLE:  But their practice was to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7071

1    eliminate much more than just --

2            THE COURT:  And I think that was an

3    agreement they reached in the first trial.  But if

4    you don't want it, Mr. Beck says, fine with him,

5    he'll give it to you.

6            MR. CASTLE:  For example, here is the

7    benefits they're getting, what their sentencing

8    considerations are for Mr. Clark, and we have it all

9    blacked out.

10           THE COURT:  Yeah, I think when you go to

11   those pages, and I don't have them memorized, and I

12   haven't reviewed any PSR except what's been played

13   here in the courtroom, I think that the PSR writer

14   just plugs those in from every defendant in the deal.

15   So that's the other defendants' stuff.  So you'll get

16   it.

17           MR. CASTLE:  Okay.  That's fine.

18           THE COURT:  So let's be really clear:

19   Social Security numbers are out; everybody agree?

20           MR. CASTLE:  Yes.

21           THE COURT:  What else?  Do you want height

22   and weight?

23           MR. CASTLE:  I actually think height and

24   weight could be relevant, if they're committing a

25   violent crime.





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7072

```
 1                 THE COURT:  Can you give them a height and
 2    weight?
 3                 MR. BECK:  Sure.
 4                 THE COURT:  So height and weight, you'll
 5    get them.
 6                 What else do you want to keep out?
 7                 MR. BECK:  I think there are personal
 8    addresses, Social Security numbers --
 9                 THE COURT:  Personal addresses.  Is that
10    okay, keep them out?
11                 MR. CASTLE:  Yes, anything that's
12    considered personal identifying information.
13                 THE COURT:  Personal addresses, you can
14    redact those.
15                 MR. BECK:  Dates of birth.
16                 THE COURT:  Dates of birth, everybody okay?
17    Everybody is saying yes, so you can redact date of
18    birth.
19                 MR. BECK:  I think we also redacted in
20    there -- there is an area in there for U.S.
21    citizenship.  I don't really care one way or the
22    other.
23                 THE COURT:  Do you want U.S. citizenship or
24    not?
25                 MR. CASTLE:  They're all citizens, Judge.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7073

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7074

```
 1              THE COURT:  You can redact or not redact,
 2    it doesn't look like it's important.
 3              MR. BECK:  I wish I had one in front of me.
 4    It may be beneficial if I see anything else that I
 5    think pops --
 6              THE COURT:  For the present moment those
 7    will be the redactions you can make.  If you want to
 8    bring up any other redactions, fine.  Otherwise,
 9    those will be the only redactions you can make.
10              MR. BECK:  And I think -- so I think Mr.
11    Castle is referring to Frederico Munoz and Gerald
12    Archuleta and those folks.  The three we have PSRs
13    for are Benjamin Clark, Roy Martinez, and Jake
14    Armijo.
15              THE COURT:  Those are the ones you have yet
16    to produce?
17              MR. BECK:  No.  Those are the three PSRs
18    that exist.  That's the universe of PSRs.  The other
19    folks don't have PSRs.
20              THE COURT:  So Archuleta doesn't have a
21    PSR, Munoz doesn't have a PSR?
22              MR. BECK:  Right.
23              THE COURT:  So there are only three.
24              MR. CASTLE:  They pled over a year ago.
25    I'm not sure the practice in this jurisdiction, but I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7074

1    guess that's what they're saying.

2            THE COURT:  Well, I can tell you the

3    practice, but -- I don't know in the situation, but

4    the practice is, as soon as there is a plea, within

5    90 days they typically start producing a PSR.  There

6    may be some reason that one was not produced.  Either

7    they told Probation not to produce one, or something

8    like that.  But, typically, the process starts fairly

9    promptly, and it's done within the 90 days.

10           MR. CASTLE:  I've been told by

11   Ms. Harbour-Valdez that both Javier Alonso and Ruben

12   Hernandez, she knows have been interviewed by

13   Probation, and that process has already occurred.  So

14   I would just ask them to redouble their efforts in

15   determining whether those presentence reports exist.

16           THE COURT:  Are you making a list of these,

17   Mr. Beck?

18           MR. BECK:  I'm listening.  I'll --

19           THE COURT:  Are you going to contact

20   somebody and see if there is a PSR that's been

21   prepared on these folks?

22           MR. BECK:  Yes.

23           MS. ARMIJO:  And, Your Honor, I'm going to

24   check.  There is only a handful of people at

25   Probation that are dealing with these.  So I will

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7075

```
 1   reach out to that person, just to make sure that we
 2   have the ones that we believe that we do.  But there
 3   have not been a lot produced.
 4          THE COURT:  Who do you have as working on
 5   this in the probation office?  I'm having -- I'll
 6   give you the list of people I know, and you can then
 7   tell me if I'm wrong or there is more.  Amy Denise
 8   Cord being one --
 9          MS. ARMIJO:  That's going to be the one
10   that I was going to email, Your Honor.
11          THE COURT:  Diana Diaz; some of these are
12   down here and I'm not as familiar with them.  Brenda
13   Richardson, Arianna Trujillo, Daniel Maez, Denise
14   Boregas, and Rosa Ramos, Sarah Lermer?  No, none of
15   these people?
16          MS. ARMIJO:  Your Honor, I believe it's
17   primarily Amy Cord.  I think David Mills may be
18   involved, and I know somebody in Albuquerque -- I
19   think they kind of split the baby between the
20   indictments.
21          THE COURT:  Okay.  Do you feel, if you get
22   hold of Ms. Cord, you're going to know the
23   universe --
24          MS. ARMIJO:  Yes, Your Honor.  I'm fairly
25   confident about that, because they are -- they have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7076

```
 1    them work closely together.
 2              THE COURT:  Okay.
 3              MR. CASTLE:  Mr. Lucero, as I've learned
 4    from -- Leroy Lucero -- as I've learned from his
 5    lawyer over several emails --
 6              THE COURT:  Mr. Fallick.
 7              MR. CASTLE:  Yes.  He obviously was
 8    sentenced.  He's serving a sentence right now.  And
 9    so I can't understand why he wouldn't have one.
10              THE COURT:  Who sentenced him?
11              MR. CASTLE:  It might have been Your Honor.
12    That's my memory.
13              THE COURT:  I don't remember that.
14              MR. COOPER:  Your Honor, if I may, we have
15    a pending motion with regard to that.  And he was
16    sentenced I believe in 2006(sic).  We've requested
17    transcripts of that sentencing hearing, and then also
18    there is a recent supervised release sentencing
19    hearing.  We've requested that transcript.  But we
20    don't have the presentence report for that.
21              THE COURT:  So this was not a crime
22    committed in the context of these SNM prosecutions,
23    this was for something else?
24              MR. COOPER:  Well --
25              MR. CASTLE:  No, Your Honor.  But we did
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 107078

1   ask the Government to look into that.  We do

2   believe -- it hasn't been disclosed to us at all, but

3   we do believe he had favorable treatment on his

4   supervised release revocation in return for

5   cooperating with the Government here.

6            THE COURT:  When do you think that

7   supervised release occurred?  Because the reason I'm

8   asking is I don't think I've seen Mr. Fallick in two

9   years.  That doesn't mean I haven't seen him.  But I

10  can't recall seeing him since these SNM cases

11  started.

12           MR. CASTLE:  I don't have a memory, Your

13  Honor.  It would have been in the last year.

14           MR. COOPER:  I believe it was about a year

15  ago, Judge.

16           THE COURT:  About a year ago.

17           Mr. Beck, first of all, have you looked --

18  there must be a PSR for the 2006.  Have you gone back

19  and looked and seen --

20           MR. BECK:  I haven't seen that one.  That

21  file would be in archives, given that it was 12 years

22  ago.  So we'll go back and order the file.

23           THE COURT:  If you need any order or

24  something to get that produced to you, then --

25           MR. BECK:  We'll check it out on our end

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7078

```
 1    and let the Court know.
 2              THE COURT:  Do you know anything about the
 3    supervised release?
 4              MR. BECK:  I don't, no.  That's news to us.
 5              THE COURT:  Do you know, Ms. Armijo?
 6              MS. ARMIJO:  No, Your Honor.  I was going
 7    to look it up on the system.  It wasn't handled by
 8    us, that I recall.
 9              THE COURT:  So the SNM team didn't handle
10    the supervised release?
11              MS. ARMIJO:  No, your Honor.
12              MS. HARBOUR-VALDEZ:  I've got the docket
13    here, Your Honor.  The AUSA on the case was Eva
14    Fontanez and Luis Valencia.  The case was assigned to
15    Your Honor 2016, February of 2016.
16              THE COURT:  See, that was before I got
17    these cases.
18              MS. HARBOUR-VALDEZ:  And you appointed
19    Mr. Fallick --
20              THE COURT:  Didn't I get these cases about
21    April?  And that doesn't mean somebody didn't say
22    something about the cases that were in front of us
23    on --
24              (A discussion was held off the record.)
25              THE COURT:  All right.  This is the one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 7079

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108

```
 1    that I think is the subject of the motion that Mr.

 2    Cooper has.  It's sealed in the sense that we sealed

 3    the courtroom.  Probably it was requested by the

 4    defendant.  And I think the Government said, Well, we

 5    don't agree to sealing the courtroom.  So it was --

 6    nobody came in, so the transcript is sealed.  So I

 7    need to get -- I guess I need to unseal it.  So Mr.

 8    Cooper has filed a motion.  And I guess you haven't

 9    gotten the consent of Mr. Fallick, right?

10              MR. COOPER:  We have not done so, Your

11    Honor.  And we've shared with the Government as well.

12              THE COURT:  So Mr. Fallick has agreed to

13    unseal that?

14              MR. COOPER:  No.

15              THE COURT:  Oh, he's opposing it.  So that

16    will probably be one of the things we argue at 1:00.

17              MR. COOPER:  We could, sure.

18              MR. CASTLE:  Your Honor, my understanding

19    is that Mr. Castellano was counsel in the Leroy

20    Lucero case for the Government, at least at one

21    point.  So I think that --

22              THE COURT:  Back in 2006, or with the

23    supervised release?

24              MR. CASTLE:  No, on the supervised release.

25              Judge, could I move just quickly to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7080

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 109

```
 1    witness statements, the handwritten notes?
 2              THE COURT:  Okay.  Let me sort of wrap this
 3    up.  So are you satisfied with where we are with the
 4    PSRs, other than the fact that Mr. Beck is going to
 5    now check with Ms. Cord, or Ms. Armijo is, and check
 6    with Ms. Cord, and see if there is anybody else that
 7    has got a PSR other than that we've identified here?
 8    And also Mr. Beck is going to check with the 2006 of
 9    Leroy Lucero, and see if there is a PSR from there
10    that needs be produced so we can discuss the
11    redactions.  Anything else on PSRs?
12              MR. CASTLE:  No, Your Honor.  I can't speak
13    for all the defendants --
14              THE COURT:  Mr. Burke is standing there.
15    Mr. Burke, do you want to wrap up the PSR?
16              MR. BURKE:  I couldn't hear part of it.
17    Which are the three of the witnesses in Trial 2 that
18    we are going to get?  I thought the three were going
19    to be provided:  Jake Armijo, Ben Clark, and Roy Paul
20    Martinez.  Thank you.
21              Well, my understanding of how this process
22    works, is that drafts of the PSRs will be started
23    almost immediately, because the Probation Department
24    needs to get going.  So with respect to any witness
25    who has pled, we would want whatever draft exists as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7081

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110082

```
 1    of now, even if they are not finished.  If that's the

 2    reason that we're not getting them, there will be a

 3    draft, and it will contain Brady and Giglio material,

 4    and we want the draft as it exists.  Otherwise, I

 5    don't believe these witnesses should be permitted to

 6    testify.

 7              THE COURT:  Well, I guess you need to ask

 8    Ms. Cord that question:  Where are they?  I tend to

 9    think that if they've taken some statements, they may

10    need to produce that information.  But I don't know,

11    I just don't know if interviews have taken place.

12              MR. BURKE:  And I don't really know either.

13    But I think that they move along fairly quickly.  It

14    may not be finalized yet, but there will be

15    something.

16              MR. BECK:  I don't know.  Those would be

17    filed in the Court's possession, and not in the

18    United States' possession.

19              THE COURT:  I guess I'm probably not going

20    to get a PSR, though, until they're finished.

21              MR. BECK:  That's my understanding.  So I

22    mean, the United States can't turn over what we don't

23    have.

24              THE COURT:  Right.

25              MR. BECK:  That's pretty obvious.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1              MR. BURKE:  The Probation Department is an
 2     arm of the Court, and we would ask for a court order
 3     directing the Probation Department to provide us with
 4     whatever drafts have been made, because, Mr. Beck is
 5     correct, if there is going to be a 5K, it won't be
 6     all wrapped up until later.  But there is a process
 7     underway, and we are entitled to whatever drafts
 8     exist.  And if the Government wants to take the
 9     position that they don't have it yet -- sounds right
10     to me -- somebody has it, and I believe it would be
11     an arm of the Court, so that we would be entitled to
12     that.
13              THE COURT:  Well, why don't you do this:
14     Why don't you provide Mr. Beck and Ms. Armijo, after
15     you talk to the people in Probation, figure out where
16     they are on all the people that are going to testify,
17     and then send a letter.  And then Mr. Burke, if you
18     get the letter, you don't have a PSR, and you feel
19     like there is drafts, prepare an order, run it past
20     the Government.  And then if they approve of the
21     order, then I'll enter the order and order Probation
22     to give --
23              MR. BURKE:  Thank you very much, Your
24     Honor.
25              THE COURT:  All right.  Everybody confident
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112

```
 1    on the PSRs, what we're doing on PSRs?

 2              All right.  Mr. Castle, do you want to go

 3    to the next topic?

 4              MR. CASTLE:  Yeah.  And just before I do, I

 5    just want you to know that in the Leroy Lucero

 6    matter, Ms. Armijo actually entered her appearance

 7    and appeared in that case, on Mr. Lucero's case, on

 8    February 28, 2017, according to the docket report.

 9              Your Honor, on the handwritten notes what I

10    understand the Government to say is they're going to

11    review them and turn them over as Jencks material.

12    What I haven't heard them say is that they've

13    reviewed those notes to see if they contain Brady or

14    Giglio.

15              THE COURT:  I think they're saying they

16    haven't.  Right, Mr. Beck, you haven't done that yet,

17    right?

18              MR. BECK:  That's not correct.  I did

19    review with Special Agent Acee notes back in May of

20    whatever that was, 2017.  I did a Brady-Giglio

21    review.

22              THE COURT:  All notes, or just his notes?

23              MR. BECK:  His notes at that time.  I'm

24    sure there are a lot more.  But we are reviewing, and

25    as I said we're going to talk about disclosing before
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the Jencks deadline.
 2            MR. CASTLE:  So what they haven't done is
 3   looked for Brady and Giglio, which they've been
 4   instructed to do for more than a year.  I'll give the
 5   Court the exact numbers.  There are 838 302s, 191
 6   1023s.  Some of those might be duplicates in the
 7   sense that it was a 302 and a 1023, but roughly over
 8   1,000.  And they've turned over 48 sets of notes.
 9            THE COURT:  Well, let me say this:  The
10   Government does need to produce immediately Giglio,
11   Brady, and Rule 16, even if it's in the agents'
12   notes.  So that's the reason you may just really have
13   to just produce them rather than holding them back
14   for the Jencks material, because that's a standing
15   order as far as Brady, Giglio, and Rule 16
16   information.
17            MR. CASTLE:  I looked at this, too, and I
18   think --
19            MR. BECK:  I should be clear.  I've
20   reviewed notes.  I have not reviewed -- nor do I know
21   whether they exist, or where to find them, but I will
22   look -- I'm guessing with the number of 302s and
23   1023s, they're referring to files other than the
24   Atonement file, which is the file for this case.  So
25   those would be notes of various special agents
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 114

```
 1   whom -- some of whom we'll hear from today, or this
 2   week.  But we have not reviewed those.  I don't know
 3   where those are.  But we'll see if we can track them
 4   down, if they still exist.
 5           MR. CASTLE:  Just to let the Court know on
 6   the notes issue, we sent a letter to the Government,
 7   I think it was six months after the case started,
 8   asking them to produce handwritten notes, and to
 9   review those, and to preserve them.  And if they were
10   going to disagree with that, to let us know, so we
11   could file an appropriate motion.
12           They never responded, never objected to
13   that process.  What they've represented to the Court
14   in their response on the handwritten notes motion --
15   which is a different motion -- is we will produce
16   notes that were produced after this Court's order on
17   notes.  Very carefully worded.  It wasn't:  We're
18   going to produce all notes.  They're saying now they
19   will produce all notes, then we'll accept that.  But
20   it's not just after the Court's order.  I think this
21   Court has written on this many times in other
22   decisions.  They're aware of that.  They've known
23   that since they started this case -- or should
24   have -- that the obligation to preserve notes
25   occurred.  And what we've requested is not just the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   existence of notes, but if notes were destroyed,
 2   after they were on notice to preserve them, they need
 3   to advise us, so that we could file appropriate
 4   motions.  So there is another aspect of the notes
 5   motion.  And luckily, if we resolve this now, when we
 6   come up to the actual notes motion, we'll skip it.
 7   But we are -- I don't know how they're going to
 8   review 1,302 notes in 12 days for Giglio and Brady.
 9             THE COURT:  Well, I have a feeling they're
10   just going to produce them all to you as soon as --
11             MR. CASTLE:  I'm hoping.
12             THE COURT:  You're probably going to get
13   what you want.  Do you want to respond, Mr. Beck, on
14   this one issue about the notes were destroyed?  Are
15   you going to provide that information, or can you
16   assure the defendants that after you received their
17   letter or my order, that no notes were destroyed?
18             MR. BECK:  The FBI notes were not
19   destroyed.  There may be notes of non FBI persons
20   that were destroyed before the Court's order.  After
21   the Court's order, there were no notes that were
22   destroyed.  So after everyone was put on notice,
23   there were no notes destroyed from anyone.  Before
24   that date, there were no notes destroyed, no FBI
25   notes destroyed.  That's all that I know.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7087

 1  know if there were any non FBI persons' notes who

 2  were destroyed, who would have been at the interviews

 3  or debriefs before -- whenever that was, May 2017.

 4          THE COURT:  Anything else I can do on that

 5  issue, Mr. Castle?

 6          MR. CASTLE:  No, Your Honor.

 7          THE COURT:  Okay.  All right.  Mr.

 8  Blackburn.

 9          MR. BLACKBURN:  Could I just have a second?

10          THE COURT:  Sure.  Take your time.

11          MR. BURKE:  Your Honor, may I take up some

12  issues?

13          THE COURT:  Yeah.  Hold on, let me sort of

14  bring closure to this one issue, and then see if --

15  then I'll take up other issues.  But let me bring a

16  little closure here so we can move on.

17          MR. BLACKBURN:  Judge, just a couple of

18  follow-ups on what Mr. Castle and Mr. Beck are

19  talking about.  As I understand, during the course of

20  the trial, there was a box of documents that were

21  found.  And during the course of the trial, those

22  notes and everything were provided to the lawyers

23  here.

24          Now, I understand, from talking with Mr.

25  Beck, what they're doing is they're going back and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   redacting those so that those can go on the

2   computer -- or on the tablets, so that our clients

3   can view those.  I think what he's saying is that

4   they're going back and redacting some of the personal

5   redactions, some of the personal information on

6   those.  So I just want to let the Court know that

7   that's what Mr. Beck and I talked about just now.

8   Because we've never seen -- the clients have never

9   seen the documents.  And in order put them on the

10  tablets -- because we'd like to get those to these

11  guys.  I mean, they weren't in trial the whole time,

12  and all they know is what we told them.

13          The second thing is, obviously, during the

14  course of the trial, all the witnesses testified.

15  Some of these witnesses are going to testify again as

16  it relates to the second trial, some of the

17  cooperators, again.  And these defendants have not

18  had the opportunity to hear or see or anything about

19  that testimony.  And again, we have to get that

20  downloaded onto the tablets in order to get that.  So

21  it has to go from somebody to Mr. Aoki and then do

22  the tablets.  And it's taking a while.

23          And the fact that we're getting close to

24  trial, we would like to see if we could expedite that

25  process as soon as possible, because otherwise, these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7089

 1   guys are -- for us to be able to meet with our

 2   clients, to go over everything that the cooperator

 3   said at the first trial, or other witnesses in

 4   general.  So those are the things that we would --

 5            THE COURT:  Do you have a suggestion or a

 6   request?

 7            MR. BLACKBURN:  Well, I don't know -- I

 8   mean, there was daily transcripts, I guess, that were

 9   given to the people in the first trial and to the

10   Government.  I mean, I would think that those could

11   just be shipped up to Aoki immediately somehow -- I

12   don't know how -- so we can get those on the tablets.

13   Because the Court knows there is a couple days

14   turnaround, obviously.

15            THE COURT:  Let me see if Ms. Bean knows --

16   and we'll have to help her out here.  I've been

17   paying a lot of CJA vouchers, but I know that Lincoln

18   Sorrell has been pushing back on certain payments of

19   certain items.  And I'm not sure who is winning on

20   this.  And Ms. Waters is also -- Ms. Bean, can you --

21   why don't you, first of all, without typing, state

22   what the current situation is with transcripts.  And

23   then we'll pause and let you type that up.  Does that

24   work for everybody?

25            All right.  So Ms. Bean is just going to



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                              1-800-669-9492
                                                   e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7090

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 119 091

```
 1    tell you what the situation with CJA vouchers are.
 2    And then we'll let her type her own words.  Okay,
 3    she'll fill it in.  Let me ask Ms. Bean this
 4    question:  What is it that Mr. Sorrell is resisting
 5    paying?
 6              THE REPORTER:  Okay.  I haven't been paid
 7    on any of it.  And what happened was -- you might
 8    recall this, you asked --
 9              MR. BLACKBURN:  Yes.
10              THE REPORTER:  -- for three stations for
11    five defendants --
12              MR. BLACKBURN:  Don't blame this on me.
13              THE REPORTER:  No, no, no.  I have you on
14    the record saying it.  And I was asked how much it
15    was going to cost, and I went by statute.  You got
16    Cari to approve it.  And then, when there was
17    another -- oh, when we had to separate the tables,
18    then Amy Sirignano asked for four stations.  And
19    that, my understanding, was approved.  I never saw it
20    in writing.
21              But now they are saying that there is a
22    dispute about what I can charge for it.  There is a
23    statutory rate that says I can charge 3.05 for the
24    first station and then 2.10 for each additional one
25    up to four, and then if it's more, then it's one
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7091

1    dollar something.  They are now saying I can only

2    charge the 1.50 per station instead of the original

3    at 3.05 and others at 2.10.

4             THE COURT:  Okay.  Let me ask this, though:

5    Is the first trial being completely reduced to a

6    final transcript?

7             THE REPORTER:  That's a completely

8    different thing that's going on right now.

9             THE COURT:  And is there any dispute

10   between Ms. Waters and Mr. Sorrell -- and I don't

11   think I'm the problem -- are either one of them

12   disagreeing that the transcript of the first trial

13   should be reduced?  Is that being paid?

14            THE REPORTER:  I don't know, because I

15   can't submit a CJA to be paid until the entire

16   transcript is completed. They probably will dispute

17   it, based on my experience.

18            MS. HARBOUR-VALDEZ:  Your Honor, the Auth

19   was approved for her to prepare those transcripts.

20   My office submitted that.  And the authorization was

21   approved.

22            THE COURT:  And did Ms. Waters approve it?

23            MS. HARBOUR-VALDEZ:  Yes.

24            THE COURT:  Y'all talked to her and she

25   approved that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. HARBOUR-VALDEZ:  My paralegal tells me

 2    that those Auths don't go to Ms. Waters first,

 3    because they're considered "expert services," I

 4    guess.  So we were instructed by Ms. Waters that

 5    those are submitted directly --

 6              THE COURT:  Why don't do you this:  Why

 7    don't you call Ms. Waters and Mr. Sorrell as soon as

 8    you can.  See if there is any problem with that.

 9    Assuming there is not a problem, then -- in my mind,

10    I have seen stuff, as I've approved, that Mr. Sorrell

11    is not approving, and is recommending that I reject

12    certain vouchers.  And it seemed to me it had to do

13    with the fact that, in his view, because in the first

14    trial they were getting real-time and rough drafts,

15    that they were not entitled to a final transcript.

16              So what I don't want to get in a situation

17    is where Ms. Bean is sitting here preparing a massive

18    amount of transcripts and nobody is going to pay for

19    them.

20              So I think we probably need to, during the

21    lunch hour, find out whether Ms. Waters and

22    Mr. Sorrell are on board to preparing all these

23    transcripts.  Or otherwise, we're going to run into a

24    train wreck, with her staff preparing a bunch of

25    finals and nobody paying for it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7093

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 122

```
 1              MS. HARBOUR-VALDEZ:  Correct.  My paralegal
 2   has just stepped out to go talk to Mr. Sorrell, and
 3   we'll get this sorted.
 4              One suggestion I have, Your Honor, is that
 5   as the transcripts are provided to the defense team,
 6   I'm happy to email those to Mr. Aoki.  What he will
 7   then do is turn around and send me a flash drive.
 8   And I spent my lunch break yesterday uploading new
 9   discovery to the tablets.  I'm happy to do that
10   again.
11              But, obviously, we want Ms. Bean to get
12   paid for her services.  So I think that's the first
13   order of business.
14              THE COURT:  Okay.  All right.  Somebody
15   check with Ms. Waters.
16              MS. HARBOUR-VALDEZ:  Yes.
17              THE COURT:  Because if there is a dispute
18   between Ms. Waters and Mr. Sorrell, then I will need
19   to probably resolve that.
20              All right.  So let's assume for the present
21   time that you're going to get final transcripts of
22   the trial -- going back to you, Mr. Blackburn -- what
23   is it that you need on this issue?  Is this issue now
24   resolved assuming that we don't have a dispute about
25   payment?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 7094

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123

```
1              MR. BLACKBURN:  No, Your Honor, it is
2    because --
3              THE COURT:  You're okay, then --
4              MR. BLACKBURN:  I thought we needed
5    permission from the Court or somebody to be able to
6    get these to Aoki right away, without --
7              THE COURT:  I guess the Government doesn't
8    care, right?  You don't care how it gets to Mr. Aoki?
9              MS. ARMIJO:  No.
10             MR. BLACKBURN:  That's what's going to be
11   on the tablets.
12             THE COURT:  Anybody else care?  All right.
13   So we'll handle it that way.
14             MR. BLACKBURN:  And I know that
15   Ms. Harbour-Valdez said that she would do the flash
16   drives here; otherwise, we've got to send them back
17   and forth, and we lose them.  And once Mr. Aoki does
18   that, it's a lot of time on her behalf.  But it's
19   only going to be for the ones that are in the
20   courtroom, obviously, for this trial.  So I don't
21   know what's going to happen with trial, with the
22   other people, so --
23             THE COURT:  Okay.
24             MR. BLACKBURN:  Thank you, Your Honor.
25             THE COURT:  So we've got that resolved.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4096

```
 1              Anything else?

 2              MS. HARBOUR-VALDEZ:  We'll report back

 3    after she speaks with Mr. Sorrell.

 4              THE COURT:  Okay.

 5              MR. BLACKBURN:  Thank you, Judge.

 6              THE COURT:  I'm looking for Mr. Burke.  Mr.

 7    Burke, the next issue?

 8              MR. BURKE:  Your Honor, the reason I asked

 9    to speak now is 1061 is on the list of motions to be

10    heard.  That's a motion that was filed on -- a year

11    April 6, '17; it's Document 1061.  The Government's

12    response is 1115, and our reply was 1148.  And so

13    that flows a little bit more to take it up now, and I

14    have just a few comments about.

15              Something that I have tried to do is on the

16    Elmo now, Ben Clark's 302.  There was a recording and

17    a verbatim transcript, and I asked my paralegal to

18    touch base with the prosecutors' paralegal, Roxanne

19    Castillo, to get that transcript and tape recording.

20    I found that that's a pretty good way of doing

21    things, is to have the paralegals coordinate directly

22    with each other.

23              And that request got blown off.  But we

24    really do need to get the transcript and the tape

25    recording of Ben Clark's interview.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7097

 1          THE COURT:  So what you're asking is for

 2    Ms. Feldman is to be able to talk to the paralegal

 3    for the Government?

 4          MR. BURKE:  Essentially.  Because, I mean,

 5    they were in trial; no one can accuse these

 6    prosecutors of not working hard, and I thought that

 7    was a way to get these specific items.  Because we

 8    really do need the transcript and the tape recording.

 9    But I wasn't able to get it through this method.

10          THE COURT:  Would y'all prefer not to have

11    paralegal-to-paralegal communication?

12          MR. BECK:  I think -- I think that's fine.

13    I found this email searching through.  And I did

14    follow up on it somehow.  Although I think my

15    follow-up wasn't followed up on.  So I'll follow up

16    on that not following up with my following up on.

17          MR. BURKE:  May I inquire if the follow-up

18    was directing Ms. Castillo to send us the tape

19    recording?

20          MR. BECK:  It was not.  But what I'm saying

21    is, I think this is probably a fine way to go about

22    it.  I appreciate being cc'd on it.  So --

23          THE COURT:  So you don't have any problem

24    with paralegal-to-paralegal communications?

25          MR. BECK:  No, not at this time.  If my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7097

 1   paralegal -- if our paralegal starts yelling at me,

 2   then I might bring something up.

 3           THE COURT:  Okay.  Does that help you, Mr.

 4   Burke?

 5           MR. BURKE:  It does.  I just think there

 6   are a few loose ends, and we really need to get them,

 7   and this might be the fastest way to do it.

 8           THE COURT:  Okay.

 9           MR. BURKE:  Then another one was -- I guess

10   that's three weeks ago -- I think this is Leroy

11   Lucero -- and I think he was interviewed at USP

12   Lewisburg, and he was shown a photograph.  I'm

13   guessing it's one of those a gang photographs inside

14   prison.  And I really do need to get that.  And I

15   tried this method to get that photograph, I'd like to

16   get it.

17           THE COURT:  Any thoughts on that, Mr. Beck?

18           MR. BECK:  No.  I would be surprised if we

19   have that -- from 2011, it looks like.  But I will

20   certainly make an inquiry.

21           MR. BURKE:  See, Your Honor, here at the

22   top of this page of the FBI report it says, "The CHS

23   was shown a photograph."  So somebody has it.  It was

24   shown to Smurf Lucero, and it should be available.

25   So I'd like to get it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 127099

1          MR. BECK:  I don't have any thoughts other

2     than I'll follow up.

3          THE COURT:  I mean, if it exists, you don't

4     have any problem producing it or the transcript;

5     correct?

6          MR. BECK:  No.

7          MR. BURKE:  Here's one from -- this is

8     directly to Ms. Armijo.  This was three months ago,

9     and it is directly from the motion for discovery in

10    1061.  It's about DNA follow-up that -- well, they

11    did agree to do it.  But it hasn't been done.  And

12    now we're shortly before trial.

13          And the electronic -- you'll see 1, 2, 3,

14    and 4 -- the electronic data, the STR, and then

15    regarding the Sanchez homicide, the protocols.  So

16    that's three months old.  That was part of the motion

17    which is a year old.  And so I would really like to

18    get those documents, too, since we are on the eve of

19    trial.

20          And included in that is -- there is a

21    summary of the information provided, number 3, to

22    Carey Davis, that's a lab tech, from Assistant United

23    States Attorney Jack Burkhead.  There was an exchange

24    of emails back in 2013.  They were looking at the DNA

25    again.  And I'd like to get those supporting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    documents.  I think I'm entitled to those.

2              THE COURT:  Any thoughts on that, Mr. Beck?

3              MR. BECK:  I mean, I think we've requested

4    the DNA stuff multiple times.  I think we've had it

5    trickle in, and we've trickled it out as quickly as

6    it's trickled in.  So I guess I'll follow up on that

7    and well, and see where we're at.

8              THE COURT:  What do you need me to do, Mr.

9    Burke?

10             MR. BURKE:  I'd like to do this with Ms.

11   Armijo and Mr. Beck, if at all possible.  So I'll

12   resend these emails to them, and hopefully, we can

13   work that out ourselves.  And if not, I'll come back

14   and renew the motion to compel in fairly short order.

15             THE COURT:  All right.

16             MR. BURKE:  And then I will say that in our

17   motion we asked for the bench notes of DNA testing as

18   well.  And I'm almost certain -- I don't trust my

19   memory enough to say I'm certain -- but I believe Ms.

20   Armijo said she would get us those if they still

21   exist.  Does that sound right?

22             MS. ARMIJO:  We have made numerous requests

23   for DNA.  There has been various DNA done.  I can't,

24   off the top of my head, speak as to which one this

25   is, and if we've gotten it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7100

1           But, if he resends it to us, hopefully,

2    while we're in court this week, I'll have answers

3    what we've requested, what we've gotten, and what

4    we've disclosed, Your Honor.  We have no problem

5    disclosing it.  We're not holding back.  And we have

6    made requests for numerous DNA bench notes throughout

7    the case.

8           THE COURT:  So just hold off ordering

9    anything at this point?  You'll work with Mr. Beck

10   and Ms. Armijo, and renew your request at the

11   appropriate time?

12          MR. BURKE:  Correct.  And I hope to move

13   fast enough that while we're here this week we can

14   report back to the Court, and if I have to, renew the

15   motion to compel.

16          THE COURT:  All right.  Thank you, Mr.

17   Burke.

18          MR. BURKE:  Thank you, Your Honor.

19          THE COURT:  I think it's still your motion,

20   Mr. Castle, if I'm not mistaken.  Anything else you

21   have that you need to --

22          MR. CASTLE:  No, Your Honor.  But just to

23   let the Court know, I think the Court's rulings and

24   the parties' discussions has also resolved the next

25   motion on the list, which is 1694.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7101

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130 102

```
 1              THE COURT:  Let me find out if anybody has
 2   anything else on Mr. Castle's first motion.  Anything
 3   else?  Does the Government need to say anything else
 4   on that first motion, Mr. Beck?
 5              MR. BECK:  No, Your Honor.
 6              THE COURT:  All right.  If everybody is
 7   ready, then, to go to the next one, which is -- is
 8   that 1694, Mr. Castle?
 9              MR. CASTLE:  Yes, it was just for
10   presentence reports.  So I think we took care of
11   that.
12              THE COURT:  Okay.  All right.  So anybody
13   else have anything on presentence reports, on 1694?
14   Mr. Beck, anything?
15              MR. BECK:  No, Your Honor.
16              THE COURT:  Not hearing anything on that,
17   we move then to 1744, which I have as Tab 9.  And
18   this is Mr. Garcia's motion for immediate discovery.
19              All right.  What do you have on this?
20              MR. CASTLE:  Some of the paragraphs have
21   been resolved, either by production or independent
22   investigation.  So I'll just go through them and tell
23   the Court what I'm no longer requesting, with regards
24   to those paragraphs, and then focus the Court on the
25   ones that we are.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.

 2              MR. CASTLE:  So Paragraph 1, defense

 3     obtained those on their own, so we no longer have a

 4     request there.

 5              Paragraph 2, we're satisfied at this point

 6     that no further orders are required.

 7              Paragraph 3 we are maintaining their

 8     quest -- and this is something that we brought to the

 9     Court's attention previously in motions to compel, we

10     have requested it in writing with the prosecution.

11     And what has happened is that Mr. Lujan has indicated

12     during the first interview that we have in our

13     possession that he participated in two other

14     interviews with the authorities; one being right

15     after the murders, in 2001, where -- I think the

16     Court has heard about it -- he talked about being

17     interviewed, about video, on camera, et cetera.

18     We've asked for either production or an indication

19     that it no longer exists.  Because if we're left in a

20     quandary, where we don't know whether it exists or

21     not, we can't either pursue a motion to dismiss --

22     because we don't really have proof it doesn't

23     exist -- and we don't have an actual interview.

24              And given the Government's position that

25     they don't have to turn over Jencks materials, we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  asking for that to be ordered.
 2          There is a second interview that happened
 3  in 2008.  So the one interview that we have in 2008
 4  starts off with -- the beginning of it is -- well,
 5  you know, we've -- essentially, we've talked to you
 6  before, and as we discussed before, and things of
 7  that nature.
 8          So there is a prior interview.  And we've
 9  asked the Government to either produce that or
10  indicate that it no longer exists, for the same
11  reasons I just stated.  They have declined to do so.
12          Does the Court want to deal with that one
13  paragraph?
14          THE COURT:  Yeah, let's deal with them one
15  at a time, and let's break it down by interview.
16          On this first one, Mr. Beck, are you
17  handling that?  Do you know now whether there is
18  anything that records, reflects --
19          MR. BECK:  I can speak to both of those.
20  And as I said, the whole universe of materials that
21  we're withholding are agents' notes.  So for both of
22  those, if they don't have them, they don't exist.
23  And I think they don't have them.
24          THE COURT:  So they don't have them --
25          MR. CASTLE:  That satisfies us, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1                THE COURT:  -- and to your understanding
 2      they don't exist?
 3                MR. BECK:  Right.
 4                THE COURT:  Both interviews?
 5                MR. BECK:  Both interviews.
 6                THE COURT:  Okay.
 7                MR. CASTLE:  Going to paragraph 4.  There
 8      is a report from a corrections officer by the name of
 9      Carl -- my best guess is Torbjins -- and there is a
10      page missing.  We asked them -- I mean, I know this
11      is minuscule, Judge, but -- you know, I don't want to
12      have to involve the Court in this, but we asked them
13      for the missing page, and their response is:  We
14      don't have to respond to you whether it exists or not
15      exists.  So we're here before the Court to resolve
16      this.
17                THE COURT:  All right.  Mr. Beck, do you
18      know about this missing page?
19                MR. BECK:  Yeah, I think the full response
20      was that we've complied with our Rule 16, Brady, and
21      Giglio disclosures.  So, if -- again, here it doesn't
22      exist --
23                THE COURT:  You're not withholding this on
24      Jencks?
25                MR. BECK:  No.



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                              1-800-669-9492
                                                    e-mail: info@litsupport.com

```
1              THE COURT:  You just don't have it?

2              MR. BECK:  Right.

3              THE COURT:  Have you been unable to locate

4    that page?

5              MR. BECK:  Right.

6              MR. CASTLE:  That satisfies us, Your Honor.

7              Paragraph 5:  It's a fairly important

8    transcript of a person who gave exculpatory

9    information; namely, that it wasn't Mr. Billy Garcia

10   who ordered the hits, but it was a man by the name of

11   Leroy Lucero.

12             There are pages missing from that

13   transcript.  We've asked for those missing pages.

14   And we've been -- the response is, once again:  We've

15   complied with Rule 16.  But that doesn't tell us

16   whether the pages exist, or whether they're being

17   withheld, or whether they've even looked for those

18   pages.

19             And I think the obligation under Brady and

20   Giglio is, knowing that eight pages are missing from

21   an exculpatory transcript, they have a duty to go and

22   look for that with all due diligence.

23             And so the response is unsatisfactory at

24   this point in time, but perhaps it will be when they

25   respond.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Mr. Beck, do you want to
2    respond to number 5?
3              MR. BECK:  Sure.  If they don't have it, we
4    don't have it.  We're not holding it back.
5              THE COURT:  Have you looked for this one
6    specifically?
7              MR. BECK:  Yes, I've looked for all these
8    requests.
9              THE COURT:  And you can't find them in any
10   shape, form, or fashion?
11             MR. BECK:  Everything -- yes, everything
12   that was in here I've looked for.  And if they don't
13   have it, we don't have it.
14             MR. CASTLE:  Your Honor, does that
15   include -- I don't want to ask opposing counsel a
16   question, but does that include the audiotape?
17   Because this is a transcript of an audio-taped
18   interview that obviously existed at some point in
19   time.  And I don't know the extent to which they've
20   looked for that audiotape, and talked to the officers
21   who were conducting that interview, to see if it
22   exists somewhere.
23             THE COURT:  Have you looked for the
24   audiotape, Mr. Beck?
25             MR. BECK:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  And you don't have -- you've
 2     been told that it doesn't exist, or they can't find
 3     it?
 4                MR. BECK:  Right.
 5                THE COURT:  Anything else, Mr. Castle, on
 6     that?
 7                MR. CASTLE:  No.
 8                That goes to paragraph 6.  In discovery, it
 9     was indicated that an informant that talked to the
10     authorities had indicated that a different person
11     confessed to being involved in the murders of Garza
12     and Castillo.
13                And I think I'm joined by all the Count 1
14     and 2 defendants in indicating that's an exculpatory
15     piece of information, that someone else confessed.
16     That has not been disclosed.
17                And I'm not sure -- if I could give it one
18     moment.  I apologize.  They provided this recently to
19     us, Your Honor, so I don't think I have to go any
20     further.
21                THE COURT:  Okay.
22                MR. CASTLE:  So we withdraw paragraph 6.
23                THE COURT:  All right.
24                MR. CASTLE:  Paragraph 7 has -- we're not
25     requesting any orders on paragraph 7.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7108

```
 1                THE COURT:  Okay.
 2                MR. CASTLE:  Paragraph 8 is the same kind
 3    of concept of something missing.  We're asking if it
 4    exists, it be produced, or if it no longer can be
 5    located, for them to indicate that.
 6                THE COURT:  Do you want to respond to
 7    number 8, Mr. Beck?
 8                MR. BECK:  Sure, Your Honor.  We're not
 9    holding it back.  We don't have it.  They don't have
10    it.
11                THE COURT:  Is that sufficient, Mr. Castle,
12    on number 8?
13                MR. CASTLE:  Nothing further, Your Honor.
14                THE COURT:  All right.
15                MR. CASTLE:  Paragraph 9, Your Honor,
16    requests placement records.  In a response, the
17    Government did produce placement records for those
18    individuals, except for Ray Molina.
19                But my guess is that, now that they
20    understand that that's missing, that they'll work on
21    that, to get that over to us.
22                THE COURT:  All right.  We're down to Ray
23    Molina on number 9?  Everything else has been
24    produced?
25                MR. CASTLE:  Yes, everything else has been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7109

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

```
 1   produced.

 2          THE COURT:  And you're going to look for

 3   Ray Molina?

 4          MR. BECK:  Yes.

 5          THE COURT:  All right.  So that one is

 6   outstanding, but the Government is committed to

 7   looking for it.  Does that satisfy you on 9?

 8          MR. CASTLE:  Yes, Your Honor.

 9          Number 11, this goes along with Mr. Burke's

10   request.  We have identified to the prosecution a

11   specific set of laboratory notes that are missing.  I

12   could tell the Court, just to give the Court a little

13   bit of an idea:  In the 2001 murders, they collected

14   DNA evidence.  Only one set of tests had any

15   significance, and that is, for Count 1 -- I'm sorry,

16   for Count 2, they found a cord that they obtained

17   some DNA from.  And they said that part of it matched

18   Angel DeLeon; none of the defendants here.

19          That testing was done in 2001, when DNA

20   testing wasn't as advanced as it is now.

21          When the FBI redid it, I think in 2015,

22   they were not able to reproduce those results at all.

23   The sample had been degraded enough that you couldn't

24   do any testing.  So we can't do any testing either,

25   because it's degraded so much.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7110

1          So the question is whether 2001 testing has

2     any validity.

3          We gave a detailed report to the Government

4     that indicated it wasn't that valid.  In fact, it

5     seemed to be invalid.  But our expert needed to look

6     at the bench notes to see exactly what thresholds

7     were used, and things of that nature, to determine

8     whether -- based upon current scientific knowledge,

9     whether that testing is even at all valid.

10         And that is extremely important information

11    because -- you know, and I haven't filed a challenge

12    to it, because I've been waiting for this.  And we've

13    attached as part of this motion our numerous requests

14    for this information.  And I know the Government

15    keeps saying:  We're going to try to get it.  I think

16    at this point in time we need a court order requiring

17    the New Mexico State Police to produce the bench

18    notes on this particular test to the Government.  And

19    then I'm happy to draft an order to that effect, and

20    identify the specific case number.

21         I could tell the Court, if the bench notes

22    aren't produced, we're going to have to file a motion

23    to exclude the DNA testing.  I'm not even sure if the

24    Government is going to proceed with that DNA testing,

25    given that the FBI couldn't even find -- reproduce

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7111

1    the same results.  My guess is the FBI probably has

2    already given them a similar evaluation that our

3    expert has, since he advises the federal government

4    on these matters, but -- so we're requesting -- I

5    mean, the time has come.  We've got to have a date.

6             THE COURT:  All right.  Well, let's take

7    that up.  I'll hear from the Government whether they

8    oppose.  Let's go ahead and take our lunch break.

9    See you back in an hour.  We'll try to finish this

10   motion and take up Mr. Fallick.  See you in about an

11   hour.

12             (The lunch recess was held.)

13             THE COURT:  All right.  Go on the record.

14   It looks like, in this case, every attorney has a

15   client, and every defendant has a lawyer.  Missing

16   anybody?

17             All right.  It's right at 1:00.  I don't

18   know, do we have Mr. Fallick on the phone?  Let's see

19   if we can go to Meet Me Conference line -- is that

20   the way we're going to do it -- and see if he's on.

21   So we'll call in ourselves and see if Mr. Fallick is

22   there.

23             Does anyone know the number of his motion?

24   I've got it in my stack here of read materials.

25             MR. COOPER:  1900.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Just even 1900?
 2            MR. COOPER:  On the money, Judge.
 3            THE COURT:  Was that given any tab number
 4   by Ms. Wild?
 5            MS. HARBOUR-VALDEZ:  I don't think it was.
 6            THE COURT:  No?
 7            Mr. Fallick, are you there?
 8            MR. FALLICK:  Yes, sir.
 9            THE COURT:  All right.  This is Jim
10   Browning.  And I'm looking for your motion.  I don't
11   think we've given it a tab number.
12            THE CLERK:  It's 31, Your Honor, and it's
13   Document 1900.
14            THE COURT:  If you'll hold just a second.
15   I'm not sure I've seen a Tab 31, I have it as 1358.
16            THE CLERK:  I'll print it for you right
17   now, Judge.
18            THE COURT:  31 was 1898.
19            MR. CASTLE:  We could loan our copy.
20            THE COURT:  I don't need more files.  What
21   I have behind Tab 31 is not what's being told as
22   1900.  So I don't know if I was given those orally by
23   Ms. Wild.  I really don't want another copy.  I want
24   to find the one that I read.  And it's not behind Tab
25   31.  Is this motion in contention with the motion to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7113

```
 1    suppress, 1142, by Joe Gallegos?
 2              MR. FALLICK:  Your Honor, it's in
 3    connection with --
 4              THE COURT:  Hold on, Mr. Fallick.  Let me
 5    ask the attorneys here.  Is this in connection with
 6    somebody's motion here?  Is it the motion to suppress
 7    that Mr. Joe Gallegos filed?
 8              MR. CASTLE:  No, Your Honor.
 9              THE COURT:  Okay.  Well, that may be the
10    problem.  Maybe I was told it was in connection with
11    the motion to suppress.
12              MR. CASTLE:  If I can, Your Honor, I can
13    give the Court --
14              THE COURT:  Well, let me do this:  I've got
15    the motion.  I guess I linked it up with the motion
16    to suppress.
17              All right.  I have read your motion, Mr.
18    Fallick, and I also have this morning run a copy of
19    the revocation hearing that was held before me on
20    March 14, 2017.  I had begun to review it -- I was
21    about halfway through it, then I understand that
22    there was then a sentencing hearing that I don't
23    think you were the attorney on, but it was back in
24    May of 2016.  I have not reviewed it.  So that is
25    what I have reviewed.  And so if you wish to then
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7114

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143 of 115

 1    argue your motion, Mr. Fallick.

 2            MR. FALLICK:  Yes, sir.  The motion is to

 3    suppress the subpoena that was served on Mr. Lucero.

 4    And the question is, is it unreasonable, and is it

 5    oppressive for him to appear?  And we believe that it

 6    satisfies both of those.  Number one, he will not

 7    testify substantively about anything without

 8    immunity -- we have no reason to believe that he's

 9    going to be granted immunity at this time -- based on

10    his right against self-incrimination.  So there is no

11    point in him appearing.

12            THE COURT:  Let me ask, Mr. Fallick --

13            MR. FALLICK:  In a case that we cited from

14    the Tenth Circuit case --

15            THE COURT:  Mr. Fallick, Mr. Fallick, Mr.

16    Fallick?

17            MR. FALLICK:  Yes.

18            THE COURT:  Let me ask you some questions

19    about Mr. Leroy Lucero.  His name has come up, but I

20    don't know a great deal about him.  Let me ask you

21    some questions about him.  Has he ever been charged

22    federally in any of these SNM cases, the DeLeon or

23    Baca, or any other case?

24            MR. FALLICK:  No, sir, Your Honor, he's

25    not.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7115

```
 1              THE COURT:  He's not been filed -- there
 2   has not been some secret indictment out there or
 3   misdemeanor charge in some separate file that he's
 4   been charged with?
 5              MR. FALLICK:  He only has the charge that
 6   he's on post-conviction release that's before Your
 7   Honor, that I was appointed to represent him in.  And
 8   that's the only current charge that I'm aware of.
 9              THE COURT:  Okay.  And remind me of what
10   that charge was.
11              MR. FALLICK:  You know, frankly, Your
12   Honor, I did not represent him in the underlying
13   proceeding.  I represented him only at the last
14   violation proceeding.  And I'm not familiar with the
15   underlying proceeding.
16              THE COURT:  All right.  Is that the one
17   that Mr. Winterbottom represented him when he was
18   sentenced, I guess by me, on May 26, 2016?
19              MR. FALLICK:  Yes, sir.
20              THE COURT:  All right.  So in this case, he
21   has not been charged with anything, so I guess the
22   other questions will probably answer themselves.  But
23   he has not pled guilty to any crime that is going to
24   require him to be sentenced in the future?
25              MR. FALLICK:  That's correct, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7116

1           THE COURT:  And so he hasn't entered into

2    any sort of plea agreement that he's agreed to

3    cooperate with the Government or anything in

4    connection with the SNM cases?

5           MR. FALLICK:  He has not, Your Honor.

6           THE COURT:  All right.  Okay.  Then what

7    you're basically saying is, if he shows up, he's

8    going to take the Fifth for all questions?  Some

9    questions?  What would he take the Fifth on?

10          MR. FALLICK:  Anything beyond his name that

11   has anything to do with the substantive charges in

12   this case, Your Honor, that would be relevant to any

13   of the charges against the defendants.  And that's

14   only one of the grounds for him -- for being quashed,

15   but to me it's a sufficient ground.

16          THE COURT:  Well, let me ask you this:  It

17   seems to me -- and I don't know a great deal about

18   Mr. Lucero, although after I began to read the

19   transcript, I did remember our hearing.  I think it

20   occurred before the SNM cases were assigned to me.

21          But it seems to me that it's going to be

22   difficult for me to intelligently determine what he

23   probably can take the Fifth on, and what he can't

24   take the Fifth on without some questioning, and him

25   being here to sort through that.  I could certainly

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7117

1   imagine that there are things that he -- given my

2   experience over the last two months with many

3   witnesses -- that there may be some things that he

4   can't testify to, and will need to invoke the Fifth.

5   But I would also think there may be some things that

6   he can testify to where he can't take the Fifth.  And

7   so my experience over the last two months, and maybe

8   even further back, has been that I can't do blanket

9   Fifth Amendment privilege invocations, without having

10  the witness here, having the lawyer, and all of us

11  picking and choosing.  Your thoughts on that?

12          MR. FALLICK:  Well, I can understand that,

13  Your Honor, and I would say that anything that would

14  be of any significance, of any importance to the

15  defense and the charges that they're facing, would be

16  something -- certainly, there may be something that's

17  of peripheral interest, that is not really going to

18  be significant, that he might be able to answer.  But

19  nothing that's going to be of any help to the

20  defendants.  That's number one.

21          Number two, they've subpoenaed him, they

22  told me, in connection with one motion, although I

23  was told about another one last night.  But when we

24  filed the motion we were aware of one, which is the

25  motion to prevent the admission of statements of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7118

1    nontestifying co-defendants implicating Defendant

2    Billy Garcia, and that's docketed as 1307.  Number

3    one, it doesn't seek any relief.  It really is an

4    informational thing that says that it needs to wait

5    for ruling until trial anyway.  So number one, there

6    is really nothing he could say that's going to

7    advance that motion.

8              Number two, Your Honor recently entered an

9    order that, for all practical purposes, disposed of

10   that motion.  It granted it in part and denied it in

11   part.  And that was Your Honor's memorandum opinion

12   that's docketed at 1882.  So again, for that reason,

13   I don't believe that there is any real point to him

14   being there.

15             They raised another motion last night.  But

16   attached to my motion is an exhibit of our exchanges

17   of emails before we filed this motion.  Nothing was

18   identified other than 1307, and I still don't know if

19   the other one is, because it apparently has something

20   to do with a sealed motion.  And that's in terms of

21   the unreasonableness, because there is no point to

22   him attending.

23             In terms of the burdens of him attending,

24   he is under supervised release.  He's being

25   supervised by Mr. Martinez.  He's subject to a GPS

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7119

```
 1   device.  He's in northern New Mexico, in Las Vegas,
 2   New Mexico.  And number one, it's a 700-mile round
 3   trip.  He does not have transportation.  If he were
 4   to use his significant other's car, she wouldn't be
 5   able to go to work.  He could use it, but with a day
 6   of court and the travel time, it's essentially a
 7   20-hour day.  I've been told by Mr. Martinez that,
 8   absent an order from Your Honor, that he can't spend
 9   the night.  So he has to do a 20-hour day, you know,
10   one day of driving to go back and forth to go to this
11   is hearing.  So there is also safety concerns
12   involved, Your Honor, involved with that, so --
13            THE COURT:  Mr. Fallick.  Mr. Fallick.  Let
14   me ask you this:  I saw that in your pleadings that
15   you were saying that he couldn't spend the night
16   because of something I did, or I needed to do some
17   order.
18            MR. FALLICK:  That's what Mr. Martinez
19   tells me; that he would not be -- that Mr. Lucero
20   would not be permitted to spend the night in Las
21   Cruces.  Without an order from Your Honor, the
22   Probation Office wouldn't permit him to do that; that
23   they had not yet authorized him to travel for a day
24   trip.  But they would do that without an order from
25   Your Honor, but they wouldn't authorize an overnight
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7120

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 149

```
 1   trip without an order from Your Honor.
 2           And then there become issues of the
 3   batteries for the GPS.  Apparently, he has batteries
 4   for the GPS and that would not allow him to be
 5   monitored.
 6           THE COURT:  Mr. Martinez -- Mr. Fallick,
 7   Mr. Martinez is his probation officer?
 8           MR. FALLICK:  That's correct, Your Honor.
 9           THE COURT:  All right.  Go ahead.
10           MR. FALLICK:  So those are the primary
11   reasons.  The other point, as I understand it, Your
12   Honor, is that in order for this subpoena to have
13   been enforced for an indigent defendant, there had to
14   be a ruling by Your Honor under 17(b), not only that
15   the defendants were indigent, but also of the
16   necessity of the witness' presence for an adequate
17   defense.  And again, given what we understand is
18   happening this week, his presence this week is not
19   necessary.  And I'm not aware of an order that Your
20   Honor said that it was necessary.  Therefore, the
21   statement in the subpoena that he would be
22   reimbursed, I'm not understanding that that's
23   accurate.  Based on the information I have, I did
24   request from the defendants an order showing that
25   Your Honor had said that Mr. Lucero's presence was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7121

1  required.  And I have not received such an order.

2          THE COURT:  Well, if I understand 17(b),

3  it's that basically if the defendants secure a

4  subpoena -- which my recollection is I signed off on

5  ex parte application here for the subpoena to be

6  issued for Mr. Lucero -- the defendants here are

7  unable to pay the witness fees; that if I order the

8  subpoena to issue, the cost and fees are going to be

9  paid in the same manner as they are paid for

10  government subpoenas, which I can't say I cut the

11  checks or know actually how that's done, but I think,

12  basically, the fees and costs for a witness are paid

13  by the federal government in some way.

14          Now, how that is done, if it's done out of

15  the Marshal Service, or something like that, I've not

16  had that issue.  But I think that's the way it gets

17  done.  But any thoughts on that?

18          MR. FALLICK:  I didn't recognize that Your

19  Honor had entered an order.  I knew that there was a

20  general indigency order.  I didn't know there was an

21  order issuing the subpoenas under 17(b).  And if

22  there is, I withdraw that argument.

23          THE COURT:  I can't tell you -- I don't

24  have that order in front of me.  Maybe one of the

25  defendants that applied for his appearance at this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7122

1   hearing can either produce a copy or tell us what was

2   in there.

3          All right.  Mr. Fallick, do you have any

4   other arguments in support of your motion to quash?

5          MR. FALLICK:  My only other point, Your

6   Honor, is that Mr. Lucero's supervision is expected

7   to expire this month.  Again, to the extent that

8   there is any reason for Mr. Lucero to be a witness at

9   any point, I don't believe there is a reason for him

10  to be a witness this week for anything that is

11  pending before the Court.

12         And after this month -- and I understand

13  the trial is next month -- and I can tell you that

14  we've been told by the Government they don't

15  anticipate calling him as a witness.  I know that can

16  change.  But that's what we've been advised.  But if

17  he is a witness next month, the supervised release

18  issues, the GPS issues, those issues will no longer

19  be relevant, and it would only be all the other

20  factors to talk about for a motion to quash in the

21  future.

22         So another reason we ask that Your Honor

23  grant that now is because things become simplified if

24  he is expected to appear at a later time.

25         THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Fallick.

2              MR. FALLICK:  Thank you, Your Honor.

3              THE COURT:  All right.  Let me go first to

4    the defendants that subpoenaed Mr. Lucero.  That's

5    you, Mr. Castle?

6              MR. CASTLE:  Yes.  By way of history, we

7    filed motion number 1307, which asked for the

8    Government to indicate what statements they were

9    going to offer against the defendants.  They declined

10   to do that.  They announced that they were going to

11   file a James proffer, which would delineate

12   statements by individuals.  We didn't get that when

13   they promised it.  So we anticipated that they would

14   do it sometime before these hearings.

15             We anticipated that Mr. Lucero would be on

16   that James proffer, so we subpoenaed him.  Our motion

17   that deals with the James proffer objections is

18   number 1908, which was filed on March 9.  Their James

19   proffer was on March 7.  We were correct, it turns

20   out that Mr. Lucero was listed by the Government as a

21   source and witness that they would put on evidence

22   through at trial.

23             THE COURT:  Is it one statement or is it

24   more than one statement?

25             MR. CASTLE:  It's more than one statement

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7124



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    indicating that our client is guilty.

2            But in addition, Mr. Lucero --

3            THE COURT:  Let me get that chart back in

4    front of me, and you can tell me on the table which

5    statements the Government put him on.

6            MR. CASTLE:  Yes, Your Honor, as soon as

7    the Court --

8            THE COURT:  Just bear with me just a

9    second, I need to find that table again.

10            All right.  I have it in front of me now.

11    Mr. Castle, if you'll direct me to the statements

12    where Mr. Lucero is listed.

13            MR. CASTLE:  The first one would be 10.

14            THE COURT:  And, Mr. Fallick, do you have

15    this table, or are you aware of it?

16            MR. FALLICK:  I have no information about

17    that, Your Honor.  The only thing I have is an email

18    saying that the Government didn't anticipate calling

19    him as a witness.  So this is news to me.  And, of

20    course, I would ask that the parties provide me with

21    anything that would be relevant to give me to

22    consider asserting the Fifth on anything that the

23    Government is planning to call him on.  And I can

24    alert the Court that he will not testify to anything

25    substantive without that immunity.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7125

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 154

```
 1              THE COURT:  All right.  Give me a second to
 2     just read this so I can refresh my memory on this
 3     statement.  All right.  I have read that statement.
 4              Mr. Castle, what else do you have?
 5              MR. CASTLE:  Number 11.
 6              THE COURT:  Number 11.  All right.  I've
 7     read that one.
 8              MR. CASTLE:  Next one is number 36.
 9              THE COURT:  All right.  I read that one.
10              MR. CASTLE:  Number 71.
11              THE COURT:  All right.  I have read that
12     one.
13              MR. CASTLE:  That's the four that are in
14     that particular document.
15              Then I stand corrected, we filed a motion,
16     1909, which was a motion concerning specific
17     objections, I think target objections.
18              At paragraph 15 -- I couldn't give this to
19     Mr. Fallick because it involved identifying
20     informants, other informants other than Mr. Lucero,
21     so we couldn't give it to him.  It was under seal.
22              But in that motion, at paragraph 15, it
23     indicates that Mr. Lucero has made a statement --
24     most recent was on January 17 of this year, when Mr.
25     Fallick was representing him, Mr. Lucero sat down
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7126

```
 1    with the agents of the FBI.  I don't know if Mr.
 2    Fallick was present during that or not, or just gave
 3    his permission for it, or what the circumstances are.
 4    But during that interview, he made a very lengthy
 5    interview, that was taped and we have a transcript of
 6    it.
 7            And in that he indicates that Christopher
 8    Chavez confessed to him his involvement in the 2001
 9    murders, and Joe Gallegos did as well, and that they
10    implicated Billy Garcia in their confessions.  And so
11    that's the subject of our inquiry about, you know,
12    the various issues:  Reliability; whether it meets
13    one of the exceptions, et cetera.  So like I say,
14    that was on January 17, during the time that Mr.
15    Fallick was representing Mr. Lucero.
16            And the Government represented, when we
17    were going through the James hearings, that their
18    entire James proffer was predicated on the fact that
19    they were going to call the witnesses that were
20    listed as the source in the column of the James
21    matter.
22            THE COURT:  They listed Leroy Lucero as a
23    co-conspirator in both the Castillo and Garza
24    murders; correct?
25            MR. CASTLE:  Yes.  The prosecution listed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156

1    them as both a witness and a co-conspirator.

2          THE COURT:  I don't remember, but -- I

3    certainly remember the co-conspirator, but they also

4    said they would be calling him as a witness?

5          MR. CASTLE:  Yes.  They said that the

6    people that are called as sources were the people

7    that were going to be the sponsoring witness that was

8    going to bring in the co-conspirator statement of the

9    person who is listed as the declarant.

10          THE COURT:  All right.

11          MR. CASTLE:  The issue about costs:  On

12    March 9, we sent to Mr. Fallick the information on

13    how the witnesses would get reimbursed for the cost

14    for the U.S. Marshal, so he's aware of that.

15          I have another kind of an interesting

16    thing:  From our records, Mr. Lucero was granted

17    supervised release on March 13, 2017, and that was a

18    12-month sentence, which would have expired

19    yesterday, according to our calculations, unless

20    there was some kind of an agreement to extend

21    probation that's not on the record, which sometimes

22    happens.  So I'm not sure whether Mr. Lucero is still

23    on probation or not, or whether it's about to expire.

24          I'm not sure what else I can address for

25    the Court at this point in time.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7128

1          THE COURT:  Okay.  Hold on, Mr. Fallick.

2     Let me see if anybody else wants to speak from the

3     defendants' standpoint.

4          Mr. Burke, do you want to say something?

5          MR. BURKE:  It's sort of like what

6     Mr. Castle was staying:  There are four different

7     statements.  The Government represented that he was

8     going to be a witness.  My guess is that when they

9     drafted it, they thought he would be a witness.

10    They've evaluated their position, and now they're

11    representing to Mr. Fallick that he's not going to be

12    a witness.  And I think we can take them at their

13    word, and he's not going to be a witness.  And

14    they're not going to immunize him.  And it seems to

15    me that's an important factor in evaluating all of

16    this.  And I think we can rely on that, and maybe

17    that --

18         THE COURT:  I'm not sure that, given what

19    we did yesterday, that that's going to be their

20    position today.  But let me -- before I hear from

21    you, Mr. Beck, let me see if anybody else on the

22    defense side has anything they want to say on this.

23         Mr. Benjamin?

24         MR. BENJAMIN:  Yes, Your Honor.  And this

25    is just me:  There was a reference to four

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158

```
 1    statements.  There was two other statements by Mr.
 2    Lucero:  Statement 36 --
 3              THE COURT:  In the table?
 4              MR. BENJAMIN:  Yes, Your Honor.
 5              THE COURT:  Hold on.  Let me pull it back
 6    up.  I may have -- here it is.  Yeah, I think Mr.
 7    Castle mentioned 36.  I have it marked here.
 8              MR. BENJAMIN:  We were having an argument,
 9    Your Honor, as to whether that had happened, or we
10    were --
11              THE COURT:  It had.  The reason I -- it
12    sticks in my mind is, not only did I tab it, but that
13    is one of the ones that Mr. Castellano mentioned
14    yesterday he was not going to try to fit it into the
15    co-conspirator statement exception or provision, and
16    that he was going to have to rely on some other way
17    of getting it in other than a co-conspirator
18    statement.
19              MR. BENJAMIN:  And lastly, Your Honor,
20    number 71.
21              THE COURT:  And I think -- yeah, Mr. Castle
22    mentioned 71.  So I think there is only four on the
23    table, unless there is some disagreement, plus the
24    one that Mr. Castle has identified from some other
25    source that's not on the table.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7130

```
 1                 MR. BENJAMIN:  Correct.  And just so
 2      they're all in one place, Your Honor, I think the
 3      Court has these, but 10, 11, 36, and 71 from Document
 4      1903's table.
 5                 THE COURT:  10, 11, 36, and 71.
 6                 MR. BENJAMIN:  Thank you, Your Honor.
 7                 THE COURT:  Thank you, Mr. Benjamin.
 8                 Mr. Solis.
 9                 MR. SOLIS:  This might fall under the
10      beating a dead horse category.
11                 THE COURT:  Well, some dead horses need to
12      be beaten.
13                 MR. SOLIS:  That's right.  So when I heard
14      that Mr. Lucero was not immunized, and the lawyer had
15      been advised that the Government did not need him, or
16      was not going to use him as a witness, it seemed to
17      me that that was pretty much the end of that aspect
18      as far as him, instead of being a source for a
19      declarant's statement insofar as James statements are
20      concerned, especially with regard to statement 71, I
21      think, as it pertains to our defendant.  So I just
22      want to echo Mr. Burke's position on that.  And that
23      is it, Your Honor.
24                 THE COURT:  All right.  Thank you, Mr.
25      Solis.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7131

1        Any other defendant wants to speak on this

2    motion to quash the subpoena?

3        All right.  Mr. Beck.  We look forward to

4    your words.  Are you going to call him or not call

5    him?

6        MR. BECK:  We plan to call him.

7        THE COURT:  What happened with Mr. Fallick?

8    How did he get the impression the Government wasn't

9    going to call him?

10       MR. BECK:  I don't think he said he has

11   that impression.  I think he has a representation

12   that the Government didn't plan to call him.

13       THE COURT:  But it didn't come from you?

14       MR. BECK:  Well, it didn't -- I mean, it

15   came from one of us.  It didn't come from me.  And it

16   wasn't recent.  That was --

17       THE COURT:  A long time ago?

18       MR. BECK:  Right.

19       THE COURT:  But currently, for the trial on

20   April 9, the Government intends to call him?

21       MR. BECK:  Right.

22       THE COURT:  And it's for the purposes of

23   the four statements that Mr. Castellano talked about

24   earlier in the week?

25       MR. BECK:  Among other purposes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7132

```
 1                THE COURT:  Among others, okay.  All right.
 2                MR. BECK:  And I think -- I mean, I knew
 3    this was going to come up at some point in time, but
 4    I think we should -- this may be as good as any -- I
 5    think we should ask why any of these witnesses are
 6    being brought into the courtroom to testify at all.
 7    I don't see that there is a need for an evidentiary
 8    hearing.  To the extent that these statements are
 9    co-conspirator statements, they're admissible.  To
10    the extent that they can show they're not, they're
11    not admissible under the co-conspirator statement.
12    To the extent that they fit under another exception,
13    you can look at the statements and the corroborating
14    circumstances, or whatever other requirements they
15    are, to admit these statements.  I have not seen a
16    valid basis for bringing in these witnesses to
17    testify at all.
18                The only basis I can see is that perhaps
19    they're going to try to show that these witnesses are
20    not credible, which isn't a consideration for the
21    Court to make.  That's a consideration for the jury
22    to make.  So even if the Court were to find -- which
23    I don't expect -- even if the Court found that these
24    witnesses aren't credible, their stories aren't
25    credible, that's something for the jury to see on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
& ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7133

 1   cross-examination, not for the Court to make.

 2          So as a baseline matter, the Court should

 3   quash all of these subpoenas and not require any of

 4   these defendants to come in and testify.  Because I

 5   don't see that there is a basis or a grounds for that

 6   under the rules.

 7          You know, if the Court looks at -- well,

 8   any number of opinions, but I could point to Michigan

 9   against Bryant, the right of confrontation under the

10   Sixth Amendment is the right to cross-examine the

11   witness, to show that the witness' testimony

12   shouldn't be credited by the jury.  And that's the

13   protection provided, and that's the way that this

14   happens.

15          So once you have the table of

16   co-conspirator statements, or you have statements

17   that are statements by party opponents or statements

18   against interests, then the method attacking those

19   are to attack the witness' credibility on the stand,

20   which is a question for the jury.  Not a pretrial

21   process where, basically, it would be a fishing

22   expedition to then use later on to attack their

23   credibility.

24          So I don't see where in this procedure

25   these witnesses, whether it be Mr. Lucero or any of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the other witnesses downstairs that have been

2   subpoenaed, I don't see any basis for their testimony

3   at all.

4           So the United States, I guess, would join

5   Mr. Fallick.  But more importantly, would just oppose

6   the motion to exclude co-conspirator statements or

7   exclude statements, which I think is Doc 1307, just

8   on the basis -- that there is no basis for live

9   testimony to decide that motion.  It's the

10  circumstances of the statement itself, and how it

11  fits or doesn't fit within hearsay exceptions.

12          THE COURT:  Mr. Fallick referenced my

13  opinion in 1882 as dispositive of the issues here.

14  Do you recall what that opinion was?  And did it

15  dispose of the issues here?

16          MR. BECK:  No -- yes and no.  Sorry.  You

17  asked me two questions.  First, it's 1882; I can't

18  say for a hundred percent because I don't have it in

19  front of me, but my expectation is that that was your

20  memorandum opinion and order that you issued on March

21  7 of this year.  That addressed several of the

22  statements.

23          THE COURT:  That was the 133-page opinion

24  that addressed a number of issues that just kept

25  coming up?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Yeah.  I think in the pool in
 2   the car I said I bet it was 120 pages.  So I still
 3   won that pool.
 4              THE COURT:  It's that opinion?
 5              MR. BECK:  Yes.
 6              THE COURT:  Okay.  And maybe I can ask Mr.
 7   Fallick what he thinks in that opinion resolves these
 8   issues.  But --
 9              MR. BECK:  My guess is it's probably the
10   issue that the United States put in front of the
11   Court in the motion in limine that has been raised a
12   number of times, and that would be the statements
13   against penal interests; that those statements are
14   admitted when there is sufficient corroborating
15   circumstances.
16              THE COURT:  Okay.
17              MR. BECK:  And that those statements for
18   Mr. Perez were not admissible.
19              THE COURT:  Okay.  All right.  Thank you,
20   Mr. Beck.
21              Let me go back to Mr. Castle.  And I may
22   come back to you, Mr. Beck, before I let Mr. Fallick
23   have the last word.  Mr. Fallick referenced that you
24   had told him, or somebody from the defense side had
25   told him that he was being called in connection with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7136

165

```
 1   1307.  What is 1307?
 2            MR. CASTLE:  1307 was a motion -- for lack
 3   of a better term -- was a placeholder motion.  It was
 4   filed after Your Honor said in some of the litigation
 5   regarding the Rudy Perez motions, that when things
 6   get closer to trial, things will be more focused, and
 7   we'll be doing a more targeted litigation
 8   admissibility of statements.  So we filed 1307
 9   saying, in advance of the time when we get to those
10   statements, we'd like to know which statements
11   they're going to use.
12            THE COURT:  Oh, okay.  So this was your
13   James motion:  Saying give us the statements you're
14   going to use or more than that.
15            MR. CASTLE:  Right.  And not just for
16   James.  But if they're going to offer them for
17   statements against interests or admissions by a party
18   opponent, that I'd like to get that.
19            And when the Court issued its order on
20   March 7, it granted that motion in part and denied it
21   in part, I believe.  I didn't know which part was
22   granted and which was denied.  But it really made it
23   moot, because by that time, we'd gotten the James
24   proffer from the Government on the same exact day, I
25   think, the Court issued its order.  And in came the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7137

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 166

```
 1    James proffer.  We within two days filed our
 2    objections to the James proffer, and in addition,
 3    targeted statements against interests or admissions
 4    by a party opponent, where it appeared that another
 5    co-defendant was implicating our client.
 6             We did that, in part because of what the
 7    process was in the Rudy Perez matter.  They started
 8    off with calling it a James statement, a
 9    co-conspirator statement.  But then it morphed into:
10    This is an admission by him.  And the Court's
11    analysis in 1307 was:  You have to look at and
12    actually examine whether this person would have said
13    this against his penal interests, when it really
14    wasn't against his penal interests.  It might have in
15    favor of his interests at that point because he
16    wanted to save his life.
17             And so what the Court did in Mr. Perez'
18    case is it took testimony that took quite a while
19    from different people before it can admit that
20    statement.  I looked at that and said:  That's going
21    to be impossible in the context of our case.  I mean,
22    am I going to put Mr. Garcia on the stand, like Mr.
23    Perez was put on the stand, to talk about things in
24    the middle of the trial?  We take a break?
25             So I find guidance in Federal Rule 103 that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7138

```
 1   indicates, to the extent practicable, the Court must
 2   conduct a jury trial so that inadmissible evidence is
 3   is not suggested to the jury by any means.
 4           So what we have found, and specifically
 5   with Mr. Lucero, Mr. Lucero comes out in January of
 6   2018, and says:  These two other individuals,
 7   Mr. Chavez, Mr. Gallegos, made confessions to me at
 8   some time after the murders happened, and he
 9   implicated Mr. Garcia.  And I believe I have the
10   right to explore whether that's actually a statement
11   against interests, whether it's against their
12   interests, or whether they're trying to blame
13   Mr. Garcia, saying:  I had to do it.  You know, there
14   is a number of circumstances that could make it not a
15   statement against interests.  To the extent that it's
16   considered admission by a party opponent, my
17   client -- and I think the Court went through that
18   analysis in its March 7 order, where it said, Well,
19   it's not really an admission on behalf of a different
20   party.
21           And so that's why we brought those
22   witnesses in.  I have to tell the Court that a lot of
23   times -- it's not the case with Mr. Lucero, but a lot
24   of the witnesses, we get a one-sentence document that
25   says the person has admitted to involvement in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7139

1   2001 murders and said Billy Garcia ordered it.

2   That's it.  So there is no way to look.

3          I mean, if the Government wants to confine

4   the decision on this to that one sentence, that's

5   what we can do and avoid the witnesses and say:

6   Here, look at this sentence.  Your Honor, can you

7   make a determination on this one sentence?  I'd be

8   happy to, because I don't think any of them would

9   come in.

10          But I don't think that's their plan.  I

11   think their plan is to just have this unfold in front

12   of the jury.  And when it unfolds in front of the

13   jury, it ends up being in front of the jury before

14   the Court makes its order.  I imagine the kind of

15   proceeding it would be, where you know, they ask

16   questions, they voir dire the witness, and come back

17   and forth, back and forth.  Then we ask for a break

18   and say, "Your Honor, I want to put on additional

19   evidence that might show that this is not a statement

20   against interests."

21          THE COURT:  Well, okay.  I understand the

22   statement against interests.  But are you also

23   calling them -- or Lucero -- in connection with the

24   James hearing, to get more -- flesh out those three

25   statements that are on the table?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7140

```
 1              MR. CASTLE:  No, no.  The only reason I was
 2    pointing that out, was to show the Court that there
 3    is a reason to believe the person was going to
 4    testify when we had proof of it.  We rested in the
 5    James hearing.  I think all parties rested on their
 6    presentations in the James hearing.  So that's not
 7    the purpose of it.
 8              THE COURT:  So the purpose is only that one
 9    statement that they're going to have to find some
10    other basis -- number 36 -- they're going to have to
11    find some basis for getting that in other than a
12    co-conspirator statement?
13              MR. CASTLE:  Number 36, and then the entire
14    January 17, 2018 interview, in which Mr. Lucero said
15    that Mr. Chavez and Mr. Gallegos made these
16    confessions, with implications for Mr. Garcia.
17              THE COURT:  So those are post-conspiracy
18    statements?
19              MR. CASTLE:  Yes, exactly.
20              THE COURT:  So they're going to have to
21    find some other basis to get it in.
22              MR. CASTLE:  Right.
23              THE COURT:  You think the one they're going
24    to try to use is against interests?
25              MR. CASTLE:  Right.  I think that's the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7141

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 170   7142

```
 1    reason behind the motion in limine that was filed
 2    recently, which was also in those few days between
 3    Your Honor's order and these hearings.
 4              THE COURT:  All right.  And you connected
 5    with Mr. Fallick some other motion, after 1307 became
 6    moot, or I ruled on it.  What was the other motion
 7    you referenced with him?
 8              MR. CASTLE:  1909.  I sometimes call it
 9    1908, but it was 1909.  And I couldn't give him a
10    copy of it because it is a sealed pleading.
11              THE COURT:  And what is 1909?
12              MR. CASTLE:  1909 is a motion that deals
13    with our objections to both James and to other
14    statements, such as statements against interests.
15              THE COURT:  Okay.
16              MR. CASTLE:  It's the one that's identified
17    as response to United States' notice of proposed --
18    well, no, that's not the name of it.  But I think the
19    word "targeted" is in the motion.
20              MR. BECK:  It's called "Defendant Billy
21    Garcia's Targeted Response to United States' Notice
22    of Proposed James Statements for Trial 2."
23              MR. CASTLE:  That sounds right.
24              THE COURT:  All right.  Anything else, Mr.
25    Castle?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  No, Your Honor.
 2              THE COURT:  All right.  Any other
 3    defendants before I hear from Mr. Beck?
 4              All right.  Mr. Beck, do you have anything
 5    further on Mr. Fallick's motion on behalf of Mr.
 6    Lucero?
 7              MR. BECK:  I do.  Just a response to that.
 8    I think that Mr. Castle's argument that we should
 9    have a hearing where we parade, basically, the same
10    evidence that will be martialled in at trial is just
11    without a basis in law or precedent whatsoever.  I
12    mean, the Court has enough to do without having the
13    exact same evidence we'll have at trial beforehand.
14              The Court is aware of these issues now,
15    with the motion in limine and with these James
16    hearings.  If, at trial, we get to the point -- and I
17    think the United States was rather good about this in
18    the first trial, when we had a statement that we
19    wanted to get in, we approached.  We made sure the
20    Court was aware and the other parties were aware of
21    what the statement was, the circumstances that made
22    it admissible.  And if the United States hadn't put
23    on those preliminary matters to make it admissible,
24    either the Court excluded it or the United States
25    just didn't seek to admit that evidence, because the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    United States conceded that evidence wasn't there.
 2    And that's the proper basis in which to present this,
 3    is during trial, if Mr. Lucero -- whoever else
 4    testifies -- if by the time the United States gets to
 5    the statement that it intends to elicit, if the
 6    corroborating circumstances aren't there, or whatever
 7    basis there is to admit it, if the conspiracy has not
 8    been proven yet, either in the James motion or at
 9    trial, then it's inadmissible, and the United States
10    realizes that, and the Court overruled that.  And
11    that's just the way these trials take place.
12            To waste everyone's time to go through this
13    in the next couple of days, is just that, it's a
14    waste.
15            Mr. Perez' situation was different.  That
16    was not on a motion to exclude statements.
17            THE COURT:  It was a motion to suppress.
18            MR. BECK:  It was a motion to suppress,
19    exactly.
20            And so, certainly, if with the motion to
21    exclude the statements -- placeholder motion,
22    Document 1307 -- I mean, if they believe that there
23    are certain circumstances that disqualify the
24    statement under corroborating circumstances, they can
25    point those out to the Court either through documents
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7144

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173

```
 1    or however they want.

 2              But, again, to bring these witnesses up is

 3    just a test of their credibility.  It doesn't go to

 4    the admissibility of the evidence.  It goes to the

 5    weight of the evidence.  The corroborating

 6    circumstances -- again, let's take Mr. Perez'

 7    situation for a minute -- what they could have done

 8    to contest those statements -- again, if we're just

 9    talking about statements against interests, it's not

10    the subjective belief of the declarant at all.  It's

11    the objective circumstances.  And I think that what

12    they could have done is come forth with some of the

13    documents that showed that Rudy Perez was scared, or

14    some of the documents that showed that there were

15    rumors floating around the jailhouse, and submitted

16    those documents for the Court's consideration whether

17    those corroborating circumstances made the Perez

18    admissions inadmissible under Rule 804(b)(2).

19              To the extent that we're talking about

20    statement 36, that may be admissible under -- as a

21    statement against penal interests.  It may also be a

22    state of mind under 803(3), I believe it is.  Don't

23    quote me on that.  I'm not good with numbers.

24              THE COURT:  Well, I've looked at that, and

25    I think I leaned toward agreeing with you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7145

 1            MR. BECK:  Right.  And so that's what I'm

 2    saying, is that those statements are admissible or

 3    inadmissible based on the context of the statements

 4    or other evidence that we'll put on during trial,

 5    beforehand.  And if we don't make that showing at

 6    trial, they're just inadmissible.

 7            So there is no reason here to proceed any

 8    differently, aside from a James hearing, than we

 9    would in any other trial to get into statements that

10    are admissible under the rules of evidence, based on

11    the context in which they're made.

12            THE COURT:  All right.  Thank you, Mr.

13    Beck.

14            Mr. Burke, do you want to --

15            MR. BURKE:  I just want to say this:

16    Judge, you can do whatever you want to do to make a

17    determination whether these statements are going to

18    be admissible using the three prongs:  Did the

19    conspiracy exist?  Was the declarant a member of the

20    conspiracy --

21            THE COURT:  Well, if I understand what Mr.

22    Castle is saying, he doesn't need Mr. Lucero.  And

23    the evidence is closed, so it's not a James hearing.

24    It is something like what Mr. Castle and Mr. Beck are

25    saying, is it's a 104 hearing to determine the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7146

```
 1    admissibility of evidence.

 2              MR. BURKE:  And it may be.

 3              THE COURT:  But I guess what Mr. Castle is

 4    saying, No, he doesn't need Lucero for the James

 5    hearing because the evidence is closed on that.

 6              MR. BURKE:  The only point I'm making is

 7    that however you want to call it, however anyone --

 8    you have the right to say:  I want to see these

 9    witnesses so that I can make a pretrial determination

10    whether that statement is coming in rather than

11    having the scrapping, you know, while we adjourn, and

12    so forth.  And they say you can't make a credibility

13    assessment before the jury, you know, before the

14    witness takes the stand in a jury trial, I really

15    think is wrong-headed.  You can do whatever you want

16    to do.  And that's why, when you said:  I like the

17    idea of a chart; okay, let's do that.  I like the

18    idea of having an FBI agent take the stand and lay it

19    out, so that you could see how the statement is

20    coming in, and the general place in the trial it's

21    going to be.  That's the only thing I'm saying.  If

22    you don't think we need to do that, that's fine.  But

23    you can do this, if you want to see these witnesses.

24    I mean, you can't possibly not have the jurisdiction

25    to do that.  The Government is wrong about that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7147

 1            THE COURT:  All right.  Thank you, Mr.

 2    Burke.

 3            Do you want to say something, Mr. Castle?

 4            MR. CASTLE:  Yeah, I don't like to do

 5    multiple rounds, Your Honor, but it occurred to me I

 6    forgot to mention something, and that is that at

 7    least for two of the witness we're planning on

 8    calling, there is evidence that they were acting as a

 9    Government agent when they were extracting --

10    according to them -- admissions from --

11            THE COURT:  This is Phil Sapien's client?

12            MR. CASTLE:  I don't know who -- no, not

13    Mr. Sapien's client.  But Frederico Munoz and Leroy

14    Lucero both said -- many years ago they turned over,

15    started working for the Government --

16            THE COURT:  We're doing Leroy Lucero right

17    now.

18            MR. CASTLE:  Right, right.  But I think

19    they broadened their objection to all witnesses that

20    we were going to call.  So there is different issues.

21            I don't know when Mr. Lucero did.  The

22    earliest report we have is he started to work with

23    the FBI in 2011.  I think he placed approximately

24    eight phone calls from the federal prison at

25    Lewisburg, in Terra Haute prison, where he would call

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7148

```
 1    up and say:  I've got more info for you.  I've got
 2    more information.  I want to provide more
 3    information.  We've got no indication of why he did
 4    that, or anything of that nature.  But it certainly
 5    looks like he was, on his own, providing information.
 6          We don't have any information about when
 7    these alleged confessions happened, whether they
 8    happened in pretrial detention, when these
 9    defendants, Mr. Chavez, Mr. Gallegos may have been
10    held there, being presented by counsel.  I think Mr.
11    Fallick is here in the capacity of saying, Look, I'm
12    representing my client.  Even if it's not on the
13    current matter, I have to protect him on some other
14    matter.
15          So there are issues that deal with the
16    admissibility.  I would note that in 104(c)(2) it
17    says that, "Hearings concerning the admissibility of
18    a confession" -- which is what these are -- "have to
19    be conducted outside the presence of the jury."  So I
20    don't know if that meant a confession to law
21    enforcement or if it meant a confession in general.
22    I haven't had the time to review 104.
23          But it seems to -- under 104, it also says:
24    If an issue involves a defendant, it has to be a
25    witness to that particular preliminary determination,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178150

1    and also has to be done outside the jury, and it also

2    requires it to be done, if justice so requires.

3            We have these witnesses here.  We have Mr.

4    Lucero here.  I just don't -- frankly, just don't

5    understand how in January 2018, he's in cooperation

6    with the Government, and everything is going fine,

7    and they're doing full interviews, taped interviews.

8    And then when the defense subpoenas them, "Oh, I'm

9    not going to talk."  I mean, that seems like the

10   ultimate in gamesmanship to me.  And so I'm not

11   saying it's gamesmanship by Mr. Fallick by any means.

12   I'm suggesting that there is a game being played

13   where witnesses are being told they're not going to

14   have to testify, so they take the Fifth and then

15   they're going to have to testify.

16           So I would encourage the Court to have

17   these hearings, and not to have a broad-based

18   discovery hearing, but narrow in on the issue at

19   hand, to determine whether these statements are

20   admissible.

21           I can't figure out in my mind why there is

22   a difference -- why we have pretrial hearings on the

23   admissibility of co-conspirator statements, but we

24   don't have on a statement against interest that

25   implicates another defendant, where he can't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    cross-examine the declarant and he can't -- well, he
 2    can't cross-examine the declarant at all.
 3            And so the final thing I have to say is,
 4    Your Honor, it's going to completely change the
 5    complexion of the case.  Do I need to attack the
 6    credibility of Christopher Chavez, Joseph Gallegos,
 7    the co-defendants in the room?  Or do I not?  Do I
 8    even have to attack the credibility of various
 9    people, because it may turn out they're never going
10    to be allowed to say Billy Garcia's name in the
11    courtroom.  Now, do I do an opening statement saying:
12    The only two witnesses against him are Leonard Lujan
13    and Leroy Lucero, which it would be if these
14    statements weren't admissible?  Or do I have to say
15    there are seven witnesses that I have to deal with?
16    I don't even know how to do it.
17            And so what the Government's request really
18    is is a request to do trial by ambush.  And so I
19    can't imagine that the Rudy Perez issues had to get
20    litigated on the fly in the middle of the trial.  I
21    think the Court has struggled, and so has everyone
22    here struggled, with Confrontation Clause issues, and
23    the applicability of very complex rules of evidence
24    issues.  And I know this Court likes to at least give
25    everyone a full opportunity to argue those.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7151

1   know how that's going to happen in the midst of the

2   trial.

3           So it's like the inconvenience of some of

4   the witnesses will result in this Court being able to

5   make a reasoned decision and the parties to be able

6   to proceed accordingly.

7           THE COURT:  All right.  Thank you, Mr.

8   Castle.

9           Mr. Beck.

10          MR. BECK:  I'll respond to a couple of

11   things.

12          THE COURT:  Let me ask you a couple of

13   questions, because when we had a few of these

14   witnesses like Mr. Lucero come in here -- they got

15   subpoenaed by the defendants to testify -- I remember

16   the Government would sort of cozy up to the attorney

17   or to the defendant and say, Hey, you're an SNM Gang

18   member, you know, you can get charged.  And while I'm

19   not certain that just being an SNM Gang member is

20   enough to get you charged, it was probably enough for

21   me to sustain their Fifth Amendment privilege not to

22   testify, which is, I think, what the Government

23   wanted.

24          What are you going to do with Mr. Lucero?

25   How are you going to get him to testify to his

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7152

```
 1    statements, and yet him not come in here and take the

 2    Fifth?  How is that going to work?  Are y'all going

 3    to give him some immunity or something?

 4              MR. BECK:  Yes, we're going to debrief him

 5    pursuant to a Kastigar letter.

 6              THE COURT:  So a Kastigar letter.

 7              MR. BECK:  Right.

 8              MR. FALLICK:  And I can tell you, Judge,

 9    that's not going to happen, because we're not going

10    to agree to anything other than just statutory

11    immunity.

12              THE COURT:  Well, let me let Mr. Beck

13    finish, then I'll come to you, Mr. Fallick.

14              Mr. Beck.

15              MR. BECK:  Yes, that's the United States'

16    intention.  That's what I foresee happening.

17              THE COURT:  Okay.  So the way you're going

18    to get him to testify is to give him some immunity so

19    he gets on the stand?

20              MR. BECK:  Right.  That's our intention.

21              In response to Mr. Burke's -- that the

22    United States is just flat out wrong, I'll point you

23    to Footnote 2 of page 6 of our motion in limine that

24    we filed, Document 1912, where it says, "The district

25    court must find only the sufficient corroborating
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7153

```
 1    circumstances exist, and then permit the jury to make
 2    the ultimate determination concerning the truth of
 3    the statements."  And that's United States against
 4    Lazado, 776 F.3d 1119, at 1132, which is a 2015 Tenth
 5    Circuit decision.
 6              And I am familiar, very familiar, with Rule
 7    104 admissions by a defendant pretrial.  That's why
 8    we have motions to suppress and suppression hearings,
 9    where the Court makes finding of fact and conclusions
10    of law beforehand.  That way, we determine whether an
11    admission to law enforcement by a defendant is
12    admissible.  And they cannot, then, contest that, at
13    least the constitutional grounds at trial.  So that's
14    what Rule 104 says.
15              THE COURT:  Thank you, Mr. Beck.
16              All right.  Mr. Fallick, if you wish to
17    have the final word here.
18              MR. FALLICK:  Yes, Your Honor.  A few
19    things.
20              I was not aware of Mr. Lucero's interview
21    in January of 2018 until after it occurred.  My
22    client did not contact me or let me know that was
23    happening, and so it happened without my presence.
24              Since I've been contacted by my client,
25    I've been -- let me back up.  I've only been in touch
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7154

```
 1    with him periodically to make sure that he was

 2    complying with his conditions of release, and trying

 3    to get him through the end of his conditions of

 4    release.  I heard from him when he was contacted in

 5    connection with a defense attempt to interview him.

 6    That was the first that I knew about any of this.

 7           And all of the information factually that's

 8    been represented by the various parties, and

 9    specifically Mr. Castle, I'm not aware of any of

10    that.  And if going to be representing Mr. Lucero in

11    connection with a future trial, that I understand

12    he's now going to be called as a witness for, I'm

13    going to need to be educated.  And I would ask that

14    the parties provide me with whatever it is they think

15    I need in order to do that.

16           I can tell you that I have an email on

17    February 15, from the Government -- February 15 of

18    this year -- telling me, quote, "At this point, we

19    don't plan on calling Mr. Lucero in this trial.

20    Should the situation change, and we call him, then we

21    can discuss safety concerns," unquote.  That was in

22    connection with my contact to the Government saying,

23    "My client is being contacted and I would like to

24    have a discussion about safety."

25           THE COURT:  Who sent you that email, Mr.
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Fallick?

 2             MR. FALLICK:  That's from Maria Armijo.

 3             MR. BECK:  And that --

 4             THE COURT:  Let me let Mr. Fallick finish,

 5   then I'll come back to you, Mr. Beck.

 6             MR. FALLICK:  Now, the motion attaches

 7   Exhibit B, an exchange of emails, where I was asking:

 8   Why are you contacting my client?  Why are you

 9   subpoenaing, because I want to file a motion to

10   quash.  And I have a response, a February 28 email

11   from defense counsel saying, quote, "We are calling

12   him in relation to our motion to prevent the

13   admission of statements of nontestifying

14   co-defendants and co-conspirators, which was filed as

15   Document No. 1307," unquote.  There was no other

16   statement to me about any other reason for calling

17   him.  Not just not providing with a sealed motion,

18   but not giving me any information whatsoever.  So we

19   relied on that, and I believe any other basis to call

20   him this week has been waived by the defendants as a

21   result of that.

22             Your Honor's opinion, at page 123, says

23   that that motion is granted in part and denied in

24   part.  I understood that to be completely resolved;

25   that is not any part kept under advisement, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7156

1    therefore, that's another reason why Mr. Lucero's

2    presence is not required this week, in my opinion.

3         I have in my calendar as March 20 as end of

4    Mr. Lucero's supervised release.  I have to admit

5    that I didn't calculate it myself.  I was provided

6    that by the probation office.  And I relied on it.

7    And I'm assuming that it's correct.

8         And, finally, Your Honor, because I was not

9    aware of any of this, I had not informed the

10   Government not to contact my client; that I was

11   representing him.  But I did after I heard from him,

12   and I sent an email then to the Government saying

13   that:  In the future, no one should contact him.

14   They should only go through me.  That includes the

15   Government, its agents, the defendants.  I notified

16   the probation office when they were hearing from the

17   defendants' counsel that all inquiries had to go

18   through me.  And my intention is to advise my client

19   not to speak with anyone again about anything except

20   subject to statutory immunity.

21        THE COURT:  All right.  Mr. Beck, do you

22   have something else you wanted to say?

23        MR. BECK:  Yeah.  I was just going to say

24   that the context of that email was while we were

25   in -- February 14 or 15 -- that's while we were in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7157

```
 1    the first trial.  That's what we were saying, is we
 2    didn't have any intention of calling him in the first
 3    trial, which is why we said "this trial."
 4              THE COURT:  All right.  Do you have
 5    anything else you want to say, Mr. Fallick?
 6              MR. FALLICK:  Only that -- I'd have to go
 7    back and look at my emails.  My understanding was I
 8    was asking more broadly, and I was asking about the
 9    context we were receiving in connection with the
10    April trial.  So that was certainly what I was
11    inquiring about.  Yes, it does say, "this trial."  I
12    had not understood it to be limited to something
13    other than what I was asking about.  And there may
14    have been some miscommunication there.
15              THE COURT:  All right.  Well, I think that,
16    taking the defendants' word that we're going to keep
17    this very targeted and limited; it's not going to be
18    used for discovery; we're going to hone in on these
19    statements to see if they are admissible, I'm going
20    to permit the defendants to call Mr. Lucero for that
21    limited purpose.  We'll not reopen the James, so it
22    won't be used for the James statements.  But it will
23    be used for any statements that the Government may
24    have to rely on, other than exceptions or sections of
25    Rule 800, to get the evidence in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7158

1          So with that limited understanding, I'm

2    going to deny the motion to quash.  I can't determine

3    at this time whether he's going to invoke his

4    privilege and block any testimony.  It may be that he

5    does.  It may be that he can, and it may be that he

6    can't.  But like many of the other witnesses I had in

7    the first trial, there was testimony that was secured

8    even when there were situations where the Fifth was

9    invoked.  And it may be that the Government is going

10   to resolve some of those problems at some point --

11   maybe not this week, but at this point -- so that he

12   will be able to testify.

13          As far as his conditions of supervised

14   release, I will ask you, Mr. Fallick, to get hold of

15   Mr. Martinez and have him draw up the appropriate

16   order for me to sign modifying his conditions so that

17   he can come down here and stay, including overnight

18   stay.  And I'll just instruct you that if you have

19   any problems with his costs and fees being paid,

20   first check with the marshals, or maybe some of these

21   defense counsel can tell you how witnesses are

22   getting paid.  That's probably an aspect I'm not as

23   familiar with as I should be.  But it's just because

24   I don't think it's been brought to my attention

25   before and I've had to deal with it or resolve it.

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7159


```
 1    So if you have a problem and you can't get some

 2    resolution of it, let me know.  I don't anticipate a

 3    problem.  So we will try to get those fees paid by

 4    the United States Government.  I use that broadly,

 5    not necessarily the U.S. Attorney's Office, but the

 6    United States Government.  As far as I know, that's

 7    what's being contemplated here in the subpoena that I

 8    ordered.  So the motion will be denied, and you'll

 9    need to work, then, with the attorneys to get Mr.

10    Lucero up here.

11            MR. FALLICK:  Thank you, Your Honor.  May I

12    explore just a few logistics with you?

13            THE COURT:  You may.

14            MR. FALLICK:  First, Your Honor, would you

15    direct in your order that the marshal's office, to

16    the extent reasonable, advance costs for Mr. Lucero.

17    That would make it more reasonably possible for him

18    to comply.  And also, depending upon how much time

19    you think he's needed, Your Honor, if it would be

20    possible to not require him to attend until after the

21    noon recess on Friday.  That would allow him to

22    travel in the morning on Friday, and hopefully still

23    be able to travel back that night, if it's not too

24    long a day.  Or if not, at least be able to travel

25    back first thing in the morning on Saturday.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7160

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189 7161

```
 1            THE COURT:  I'm seeing some nodding of
 2    heads on the second one, so let me see if we can
 3    accommodate that request.  I guess, he's basically
 4    saying:  Can he be required to be here in the
 5    afternoon, 1:00, to testify, so that he can make it a
 6    one-day trip?  Is that agreeable to the defendants?
 7            MR. CASTLE:  It is to me.
 8            THE COURT:  Anybody else on the defense
 9    side?
10            How about you, Mr. Beck?
11            MR. BECK:  Your Honor, it's my
12    understanding there has been United States Attorneys
13    subpoenaed for Friday afternoon, and they are
14    planning to arrange their travel down here for Friday
15    afternoon for the motions to dismiss, which are
16    before this.  So the United States is not inclined to
17    agree to that.
18            THE COURT:  Do y'all think that the two
19    attorneys will take the entire afternoon?  I'm
20    getting no's from the defense side.
21            Do you think otherwise, Mr. Beck?  Do you
22    think they'll take all afternoon?
23            MR. BECK:  I don't think so.
24            THE COURT:  Okay.  So you think we can
25    squeeze three witnesses in, we'll just take them out
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7161

1    of order?  Does that work, Mr. Beck?

2              MR. BECK:  To the extent the Court's

3    inclined to have his testimony, that's fine with the

4    United States.

5              THE COURT:  All right.  So we'll have an

6    agreement, Mr. Fallick, that you can have Mr. Lucero

7    here 1:00 on Friday afternoon.  We'll squeeze him in

8    at some point.  I'm not committing as to when that

9    afternoon.  But we're going to stop at 5:30.  So if

10   he wants to go back that night, he'll be free to do

11   so.

12             Let me ask the Deputy Marshal, I don't know

13   about the advancement of costs.  Is that something

14   that's possible or doable?  I'm not even sure how it

15   works.

16             MR. MICKENDROW:  Your Honor, I just spoke

17   with Rebecca Flores, who is the individual

18   responsible for paying witnesses, and she stated

19   advancement of payment to witnesses is not a

20   possibility, per the guidelines.

21             THE COURT:  I can't do that pursuant to the

22   guidelines.  So he will get paid after he's here.

23             Hold on, just a second, Mr. Fallick, Mr.

24   Cooper is speaking.  All right.  What is her name

25   again?  What is her name?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7162

```
 1              MR. MICKENDROW:  Your Honor, it's Rebecca
 2    Flores.
 3              THE COURT:  She works in your office?
 4              MR. MICKENDROW:  Yes, sir.  And he can
 5    contact her.  I guess there was a situation where she
 6    authorized advance bus fare.
 7              THE COURT:  Okay.
 8              MR. MICKENDROW:  I'm not sure what all the
 9    guidelines are related to that, but she would be able
10    to answer any questions.
11              THE COURT:  Okay.  So her name, if you
12    didn't hear it, is Rebecca Flores.  She works for the
13    U.S. Marshal Service.  If you want to call and
14    contact her, there may be some exceptions in the
15    guidelines, and apparently, Mr. Cooper indicated that
16    it had occurred before, where they had gotten
17    advanced funds.  It doesn't sound like something I
18    can necessarily order.  But I don't know.  You can
19    look at the guidelines and talk to Rebecca Flores,
20    and make your appeal to her.  All right, Mr. Fallick?
21              MR. FALLICK:  Thank you, Your Honor.
22              And the final thing I would ask Your Honor,
23    if -- whether it's in the form of an order or just a
24    direction to the parties -- again, I'm completely
25    uninformed about all of these issues that are going
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7163

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 192

```
 1    to be addressed on Friday.  And it is going to be

 2    difficult, if Your Honor wants to do a question by

 3    question invocation of the Fifth, for me to

 4    intelligently advise the client without more

 5    information.  So if Your Honor would direct the

 6    Government and Mr. Castle to provide me with whatever

 7    documents they think are relevant to educate me on

 8    the issues that are going to be addressed on Friday

 9    afternoon, I would appreciate it.  I think that would

10    be a more efficient and effective presentation on

11    Friday.

12            THE COURT:  What's the defendants' thought?

13    Do you want to put a little package together for Mr.

14    Fallick saying these are what you're going to cover?

15            MR. CASTLE:  I don't usually like to

16    preview.  But if the Court gives us authority to

17    allow us to provide the 302s that we've received in

18    discovery, we'll do so.

19            THE COURT:  Any objection to that, Mr.

20    Beck?

21            MR. BECK:  No, Your Honor.

22            THE COURT:  All right.  So the defendants

23    are going to put a package together of the 302s that

24    they received.  And they'll send them to you, Mr.

25    Fallick.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7164

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7165

```
 1              MR. FALLICK:  Thank you, Your Honor.  I'm
 2   assuming that -- based on the chart that y'all were
 3   talking about, I'm assuming that's going to include
 4   numbers 10, 11, 36, 71, and whatever occurred in
 5   January of 2018?
 6              THE COURT:  Yeah.  I don't know if that's
 7   been filed under seal.  So let me give you the
 8   document number that you can look at for that.
 9   That's Document 1903.
10              MS. HARBOUR-VALDEZ:  It's sealed.
11              THE COURT:  It is sealed.  Okay.
12              MR. CASTLE:  It's sealed, Your Honor.  But
13   I think the statements that are reflected in those
14   four are more fully fleshed out in the 302s.  They're
15   all contained in the 302s.
16              THE COURT:  All right.  So Mr. Castle is
17   saying that when you get the 302s, it's going to have
18   even a more fuller description of the statements that
19   are being covered.  So those four statements will be
20   in those 302s.
21              MR. CASTLE:  But if the Court authorizes
22   us, we will extract those four exact blocks and
23   provide them a separate document.
24              THE COURT:  Any objection to that, Mr.
25   Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7165

```
1                MR. BECK:  No, Your Honor.
2                THE COURT:  All right.  So Mr. Castle is
3    going to extract those blocks for you and we'll send
4    those with the 302s.
5                MR. BECK:  And Mr. Fallick, it's our
6    understanding that you already have the 302 and the
7    note from the January interview.
8                MR. FALLICK:  I do not.  Well, I shouldn't
9    say that.  I received something without attachments
10   that -- I'd asked for the complete document.  I
11   haven't received the complete document.  So I may
12   have received part of that.  But if you would provide
13   it to me anyway, and then I'll make sure that I have
14   everything.
15               THE COURT:  All right.  Mr. Castle.
16               MR. CASTLE:  Your Honor, there was another
17   motion for a copy of sealed transcripts of Mr.
18   Lucero's release hearings.  And we filed that.  And I
19   believe Mr. Fallick had a copy.  We'd ask -- and I
20   think he objected to it -- but we're asking for a
21   copy of those transcripts to be unsealed.
22               THE COURT:  This is 1907?
23               MR. CASTLE:  It is.
24               THE COURT:  Mr. Fallick, I think you have a
25   copy of this motion; is that correct?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. FALLICK:  I don't believe so, Your

2    Honor.  I got an email asking me if I would consent

3    to the relief that was requested.  And I declined.

4    But I don't believe I've seen a copy of the motion.

5           THE COURT:  Okay.  It's just a two-page

6    motion.  And when you take off signature blocks, it's

7    only a page-and-a-half.  But basically they're asking

8    for a copy of your May 26, 2016 -- that was the

9    Winterbottom sentencing, I believe, and then the

10   March 13, 2017, where the violation of supervised

11   release was given -- where we had that hearing.  Do

12   you still, given the Court's rulings, object to

13   those -- releasing those transcripts to the counsel

14   here?

15          MR. FALLICK:  I mean, obviously, Your Honor

16   is going to do what you think is best.  I'm going to

17   continue to object because I haven't seen the one

18   transcript with Mr. Winterbottom, and I don't have

19   great recollection of the March 2017.  If it was

20   sealed, I'm sure it was done for a reason.  So I

21   think it's better if I object.

22          THE COURT:  Okay.  Well, I think I'm going

23   to go ahead and enter the order on the -- I'll go

24   ahead and just grant the motion for a copy.

25          Mr. Beck, do you have a position on the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7167

```
 1    sealed transcripts issue?
 2              MR. BECK:  No, Your Honor.
 3              THE COURT:  Okay.  Do you concur in
 4    granting it, or do you have any position, or just no
 5    position?
 6              MR. BECK:  No position.
 7              THE COURT:  All right.  I'll go ahead and
 8    grant it.  Do you have copies of these, Mr. Fallick?
 9              MR. FALLICK:  No, Your Honor.  That was
10    going to be my next request, that I get whatever the
11    defense gets.
12              THE COURT:  Do you want to include those in
13    the packet, Mr. Castle, or should I send these to --
14    should I go ahead and send these to Mr. Fallick, and
15    give him a little bit of a head start, to see if he
16    has any problem with them?
17              MR. CASTLE:  We have plenty of reading,
18    Judge, so I don't mind if Mr. Fallick gets them
19    first.  I think he's going to want the statements
20    we're sending to him a lot sooner than those
21    transcripts would be ready.
22              THE COURT:  Well, I've got copies right
23    here for me to read.  They're ready to go.
24              THE REPORTER:  One of them is not finaled
25    yet.  It can be.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Is the one from 2016?

 2              THE REPORTER:  That's final.

 3              THE COURT:  I'll tell you what, why don't

 4   y'all do this:  Can y'all provide me an envelope, and

 5   I'll make a copy and stick that in the envelope, and

 6   send it to Mr. Fallick?  So give me an addressed

 7   envelope to Mr. Fallick with the copy -- and would

 8   you be able to run over to my office in Albuquerque

 9   tomorrow, Mr. Fallick?

10              Is that Fed Ex package still back there?

11              THE CLERK:  It's not, but I have it

12   electronically so I can send it to Albuquerque, and

13   he can pick it up.

14              THE COURT:  Would you be able to run over

15   to the office and pick it up tomorrow?

16              MR. FALLICK:  Yes, sir.  I'll contact your

17   office and find out what time it will be available.

18              THE COURT:  All right.  So we will send

19   right now electronically the transcript to my

20   chambers, and we'll -- Ms. Bevel, my courtroom

21   deputy, will give instructions for it to be printed

22   out there.  So if you'll run over fairly early

23   tomorrow and get it, and pick it up.  If you see

24   anything in that 2016 sentencing that gives you

25   trouble, call me back.  Dick Winterbottom did it, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7169

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 3170

```
 1    my memory is it was just a fairly clean sentencing.

 2    But that's been a couple of years.

 3             You know what we did at the supervised

 4    release hearing, so I think you have a pretty good

 5    sense to that.  So we'll -- can we send him a draft

 6    of that?  Would you have any problem with him seeing

 7    a draft of that?

 8             THE REPORTER:   Can I final it tonight?

 9             THE COURT:  All right.  So Ms. Bean is

10    going -- are you going to file it tonight?

11             THE REPORTER:  Maybe first thing in the

12    morning.

13             THE COURT:  Okay.  So we will file it

14    tomorrow probably pretty early, and so you can also

15    get a copy of that, and just refresh your memory as

16    to what occurred.  If I don't hear anything from you

17    promptly as to some problem that you can't anticipate

18    today, the ones you can anticipate today -- I have

19    refreshed my memory by reading about half of the

20    supervised release.  And I know why you requested the

21    transcript to be sealed.  But given where we are now,

22    I'm not seeing that that transcript creates any more

23    problems for you than what I've already created for

24    you.

25             MR. FALLICK:  Understood, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7170

```
 1                THE COURT:  So if I don't hear from you,
 2    I'm going to go ahead and turn these transcripts over
 3    probably sometime tomorrow to the defendants.  So let
 4    Ms. Bevel --
 5                MR. FALLICK:  My understanding is that
 6    you've overruled my general objection to it, so I'm
 7    looking for something like addresses and other -- you
 8    know, identification of others, as the only sort of
 9    things that you're going to entertain in the future?
10                THE COURT:  Yeah.  If there is something
11    that I don't remember from the Winterbottom
12    sentencing, or if I didn't pick up some sensitivity
13    to something that was said at the hearing, but I
14    think we're okay.  But I'll just give you a little
15    bit of a head start in case there is something I
16    missed.
17                MR. FALLICK:  Thanks, Your Honor.
18                THE COURT:  All right.  Mr. Cooper?
19                MR. COOPER:  Your Honor, the parties in
20    this particular case will receive it?  See, we're not
21    parties to the '06 case number.  So we'll receive it
22    as an attachment somehow to this file, or what do we
23    do?
24                THE COURT:  I guess what I'm doing is I'm
25    granting your motion.  So tomorrow, if we don't hear
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7171

```
 1    sometime from Mr. Fallick, remind me, and I'll get

 2    you a transcript copy.

 3              MR. COOPER:  Thank you.

 4              THE COURT:  Mr. Beck.

 5              MR. BECK:  We'd ask for a copy as well,

 6    Your Honor.

 7              THE COURT:  So I'll get those to you.  So

 8    if I don't hear from you back pretty quick, Mr.

 9    Fallick -- give you a little running start --

10    otherwise, I'll turn these transcripts over tomorrow.

11              MR. FALLICK:  Thank you, Your Honor.

12              THE COURT:  All right.  Just work with Ms.

13    Bevel if you need -- what number should he call if

14    he's trying to get hold of you, the chambers number?

15              THE CLERK:  Yes, Your Honor.

16              THE COURT:  Okay.  Call 348-2289.  Ms.

17    Bevel will be checking those numbers during the day.

18    And if we don't hear from you, then we'll go ahead

19    and produce them.

20              MR. FALLICK:  Thank you, Your Honor.

21    Contact someone else in chambers about the other

22    documents I'm picking up?  Ms. Bevel is in Las Cruces

23    with you?

24              THE COURT:  Yeah, she's with me, so K'Aun

25    Wild, 348-2019.  So it's being sent to her.  She'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    be on the second floor, but you can just call her and

 2    she'll tell you where to pick it up.

 3            MR. FALLICK:  And Mr. Castle, am I

 4    expecting a package from you electronically, or some

 5    other way?

 6            MR. CASTLE:  We're in the process of doing

 7    it electronically.

 8            MR. FALLICK:  Thank you.

 9            THE COURT:  All right.  Anything else, Mr.

10    Fallick?

11            MR. FALLICK:  No, Your Honor.

12            THE COURT:  All right.  Thank you,

13    Mr. Fallick.  You have a good day.

14            MR. FALLICK:  You too, Your Honor.  Thank

15    you for hearing me by telephone.

16            THE COURT:  All right.  Bye-bye.

17            So let's return for a few minutes before we

18    take our break to finish out maybe your motion, Mr.

19    Castle, on 1744.  I think we were at number 11.  I

20    think the Government was about to respond.

21            And I think Ms. Armijo, you were going to

22    talk about these DNA desk notes or that issue; you're

23    going to produce them.

24            MS. ARMIJO:  Yes.  We have made numerous

25    requests to numerous analysts.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202

```
 1                THE COURT:  Do you have any problem with me
 2    going ahead and giving an order to the State Police
 3    to turn over whatever they have?
 4                MS. ARMIJO:  No.
 5                THE COURT:  All right.
 6                MS. ARMIJO:  It's not State Police, it's
 7    Department of Public Safety.
 8                THE COURT:  All right.  Mr. Castle, anybody
 9    else have any objection to that?  Mr. Castle, why
10    don't you prepare an order, and run it past Ms.
11    Armijo, and make sure the Government is on board, and
12    your co-counsel.  But assuming that nobody has any
13    objection, I'll sign it and enter it.
14                Anything else you need on 11?
15                MR. CASTLE:  No, Your Honor.
16                THE COURT:  Whatever else you need here?
17                MR. CASTLE:  Your Honor, number 12.  There
18    has been some testimony during the hearings, and
19    specifically on December 15, there was testimony from
20    Billy Cordova regarding unsuccessful attempts to
21    obtain statements from other indictees, or
22    defendants.  What had occurred to me when I heard
23    that testimony is that the Government had used
24    consensual recording devices to record various
25    defendants, to try to get inculpatory statements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7174

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 203

```
 1            For Trial 2, we don't have that.  And so I

 2    feared that they attempted it; they had interviewed,

 3    or had people talk to our clients, record their

 4    statements.  And that our clients didn't admit to

 5    being involved in any of the homicides.  So I asked

 6    the Government if interviews -- or recordings existed

 7    of attempts to get our clients to confess, if such

 8    existed, would they advise us, because I'd like to

 9    argue that their failure to confess is exculpatory.

10            And they have declined to notify us.  I

11    think it's a simple idea.  But no, we've not tried --

12    that's never been attempted, or we don't have

13    anything on record or in the recording of any of your

14    clients.

15            I think actually that they'd be required to

16    turn that over under Rule 16 anyway.  So but I think

17    the response essentially is not satisfactory.

18            THE COURT:  All right.  Mr. Beck?  Ms.

19    Armijo?

20            MS. ARMIJO:  We don't have any, Your Honor.

21            THE COURT:  As far as you know, Mr. Cordova

22    didn't make any unsuccessful attempts to obtain

23    inculpatory statements from any defendant?

24            MS. ARMIJO:  No, and -- I mean, Mr. Garcia

25    was out on the street.  And Billy Cordova, when he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204 7176

1    made these recordings, was in custody.  So it would

2    be difficult for him to do so.  I mean, I could go

3    through these defendants, but I don't think he was

4    anywhere near any of these defendants.  Many of these

5    defendants were on the street.  So no, Mr. Cordova

6    was not trying to get statements from them.  We don't

7    have any.

8              MR. CASTLE:  Judge, I only used Mr. Cordova

9    as an example.  If they had other people that they

10   were doing it with -- I don't care who they are -- if

11   it's an undercover officer, or anyone trying to get

12   our clients to make inculpatory statements, and they

13   didn't do it, or the person denied, for example,

14   involvement in the murder, or whatever, I'm

15   requesting that be turned over.

16             MR. BECK:  I think I understood his

17   request.  We don't have it.

18             MR. CASTLE:  Okay.  And then when they say

19   they don't have it, does that mean the Government

20   doesn't have it, or the U.S. Attorney's Office

21   doesn't have it?  I'd like to make sure that they've

22   made attempts to find out if such exist.

23             MR. BECK:  No one has it.

24             THE COURT:  There is no --

25             MR. BECK:  No attempts, no attempts.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7176

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205

```
 1                THE COURT:  Against these defendants by
 2      anybody?
 3                MR. BECK:  That's right.
 4                MR. CASTLE:  Good.  That's sufficient, Your
 5      Honor.
 6                Number 13:  This deals with Mr. Lujan's
 7      mental health records.  But Mr. Lujan's lawyer is not
 8      here.  So if I could, I'd like to table 13.
 9                THE COURT:  All right.
10                MR. CASTLE:  Mr. Lujan is scheduled to come
11      here.  We've been in contact with his lawyer.  So
12      perhaps we could deal with it at that time.
13                THE COURT:  Okay.
14                MR. CASTLE:  Number 14:  We had requested
15      Mr. Lujan's jail calls.  And I have to tell the Court
16      what happened is we subpoenaed -- well, we first
17      sought them from the various facilities that Mr.
18      Lujan was held in.  We were told that because he was
19      being held during -- as a marshal's hold, that the
20      calls had been provided to the Government.
21                We finally received them late last year.
22      We noticed that there was a year-and-a-half gap in
23      his phone calls, that we had not been provided calls.
24      And Mr. Lujan is not a person who doesn't call very
25      often, unlike my sons when they go away to college,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7177

1   he does make a lot of phone calls.  And so that was

2   brought to our attention.  And we brought it to the

3   Government's attention.  In their response to this

4   motion they didn't respond to paragraph 14.  I don't

5   believe they did.  So I don't know if they are

6   endeavoring to obtain those materials or object to

7   it.

8          THE COURT:  Any response, Mr. Beck?

9          MR. BECK:  Yes.  We did respond that we

10  don't oppose turning over jail calls that are in ours

11  or the Corrections Department possession.  And those

12  that have not been turned over that were in the

13  Department of Corrections possession will be turned

14  over today to Mr. Aoki.

15         THE COURT:  All right.

16         MR. CASTLE:  Except Mr. Lujan wasn't held

17  in Department of Corrections facility for much of the

18  time.  He was held in various county facilities.  So

19  that's, I think, what the gap is.

20         MR. BECK:  And so we don't have those.

21         MR. CASTLE:  Okay.  Just to reiterate,

22  Judge, we've been told by those facilities that they

23  won't give them to us even under a subpoena because

24  they've given them -- or the marshals -- they're in

25  the marshal's custody, and those are considered

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
&ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7178

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 207

1    Jencks statements by the Government.  So we can't get

2    them ourselves independently.  I think, because they

3    are in the U.S. Marshal's custody, that it's

4    incumbent upon the Government to obtain them.

5            MR. BECK:  I think the U.S. Marshals have

6    kept a distance from the Government for the purpose

7    of this case.  They're not in our custody, control,

8    and possession.  We don't have the jail calls when

9    they're not in the Corrections Department.

10           THE COURT:  What if I did this, and see if

11   the Government would oppose this:  What if I just

12   gave you an order, Mr. Castle, that required whatever

13   facilities are being held to turn over the calls with

14   Mr. Lujan, and then you could use that with your

15   subpoena; you'd have a court order with it?

16           MR. CASTLE:  That would work well.  Would

17   the Court like us to draft it?

18           THE COURT:  Would you have any objection to

19   that, Mr. Beck?

20           MR. BECK:  No, Your Honor.

21           THE COURT:  All right.  So draft it, run it

22   past Mr. Beck.  Any defendants have any other

23   problems?  Would that be okay with everybody?  All

24   right.  So we'll proceed that way.

25           MR. CASTLE:  And I off the record talked to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

```
 1   the Government.  I'll provide a copy to them and also

 2   to all parties.

 3             THE COURT:  A copy of what you receive?

 4             MR. CASTLE:  Yes.

 5             THE COURT:  All right.  Let's do this, I

 6   know we didn't get quite done, but why don't we take

 7   about a 15-minute break, let Ms. Bean rest her

 8   fingers, and we'll come back in and finish this up.

 9             MR. CASTLE:  That motion is over with.

10   Everything else is resolved.

11             THE COURT:  All right.  We'll confirm

12   whether anybody else has anything on it.

13             MR. COOPER:  May we schedule the Phillip

14   Sapien motion to quash with regard to Fred Quintana

15   as a telephonic conference for when we come back?

16             THE COURT:  Any objection to that, Mr.

17   Beck?

18             MS. ARMIJO:  No, Your Honor.

19             THE COURT:  All right.  Anybody else have

20   any problem with that?  All right.  We'll take it up

21   in about 15 minutes then.

22             MR. COOPER:  Thank you, Judge.

23             (The Court stood in recess.)

24             THE COURT:  All right.  I think every

25   defendant has an attorney, so I think we're ready to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7180

```
 1   go.  So we'll go back on the record.
 2           All right.  Mr. Sapien, I should tell you
 3   that the marshals have brought in Mr. Quintana, and
 4   he's sitting next to me on the witness stand.  He
 5   has -- other than talked to Ms. Bean a little bit
 6   about what his name, and who he is, nothing has been
 7   done with them.  But he is sitting next to me, so the
 8   marshals have brought him in at this time.
 9           So we're here on your sealed motion to
10   quash ex parte writ of habeas corpus for the custody
11   of Mr. Quintana, and request for emergency telephonic
12   hearing.  So I will tell you, Mr. Sapien, that I
13   started reading your motion and I got interrupted.
14   So I don't know when I got interrupted.  So I didn't
15   quite get finished at the very back of the motion,
16   when you were talking about the materiality and
17   relevance of his testimony.  So I will try to listen
18   and read the back two or three pages.  But for some
19   reason I got busy on something else, and didn't get
20   to finish your motion.  So when you argue, you may
21   want to take that specifically in mind.  But Mr.
22   Sapien, if you wish to speak in support of your
23   motion.
24           MR. SAPIEN:  Thank you, Your Honor.  I
25   appreciate that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7181

```
 1            Let me preface that back at the end of that
 2    motion, I do note to the Court that, frankly, I was
 3    only available until 2:30 this afternoon.  But I'm on
 4    the road right now to pick up my son due to a child
 5    care issue.  But I will stay on the line as long as I
 6    can so we can get this done.
 7            But, essentially, Your Honor, I believe
 8    that the motion -- or I'm sorry, the writ should be
 9    quashed due to the fact that there was some clear
10    violations of federal rules, as well as my client's
11    due process rights, and any constitutional
12    implications that may occur from him being forced to
13    comply with this writ.
14            In terms of addressing all the threats from
15    the back forward, if you will, in terms of the
16    relevance, Your Honor, I have no idea what testimony,
17    if any, may be relevant.  Because I was never
18    provided any advance notice of the motions that were
19    filed by Mr. Garcia's counsel.  The writ was filed ex
20    parte, which as I note in my motion I believe was a
21    violation in the sense that it was not served on me,
22    as required by Rule 49 of the Federal Rules.
23            And I believe also, more importantly, that
24    it will be unreasonable and oppressive to have him
25    testify, or attempt to testify, without his counsel
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7182

```
 1    present for these hearings.  We have not had any
 2    chance to confer whatsoever about this motion, or
 3    about how he was transported, as my motion states,
 4    akin to a piece of livestock, for these hearings.
 5    This is the first time he's hearing my voice since he
 6    was transported down to Las Cruces.  It is just
 7    completely unreasonable and oppressive to continue to
 8    have him attempt to testify without me present.
 9    That's the thing I want to emphasize the most, Your
10    Honor.
11            Now, as I stated before we got on the
12    record, you essentially have a plethora of who's who
13    of New Mexico criminal defense attorneys in this
14    case.  And many of those lawyers I've known as long
15    as I've been an attorney, a mere 26 years.  Some of
16    them -- or many of them I consider friends; some of
17    them I consider mentors.  And so the fact that this
18    type of a situation occurred, when I've represented
19    this gentleman for over two-and-a-half years, is very
20    disappointing and perplexing to me, that there would
21    not have been some communication made to me so that I
22    could have expressed my position on the motions and
23    the writ, but more importantly, had an opportunity to
24    confer with my client.
25            And so, without even having conferred with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212

1    Mr. Quintana, my advice -- I'm going to state it on

2    the record -- is that he would take the Fifth

3    Amendment because his attorney is not present for

4    these hearings.  And again, I cannot be confident --

5    his Fifth Amendment privilege will be violated if

6    this continues, because I cannot provide competent

7    counsel, one, not being present; two, not having had

8    an opportunity to even discuss or review these

9    motions with him, as I stated in my sealed motion.

10          One of the motions was filed in October.

11   And I'm not sure how that is relevant to Mr.

12   Quintana.  I haven't had any communications with any

13   counsel.  And the other motion talks about statements

14   of nontestifying co-defendants, which is not Mr.

15   Quintana.  And none of the statements referenced in

16   that motion -- I think it's 1307 -- I'm driving so I

17   can't look at the number -- but his statements -- or

18   none of his statements are even referenced in that

19   motion.  So we are at a complete disadvantage to be

20   able to try and proceed forward.

21          Given what I said earlier about my friends

22   and colleagues, sir, perhaps things are done

23   differently in other jurisdictions, but one thing I

24   firmly hope, believe, and pray that still applies in

25   the District of New Mexico is that the Federal Rules

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    should apply.  And that these Rules 49 and 17 were

2    both violated and will be violated if he's forced to

3    comply with this writ.  And more importantly, that

4    his due process rights and his constitutional rights,

5    specifically his Fifth Amendment and his Sixth

6    Amendment rights are still applicable there in that

7    courthouse; that they're not checked at the

8    Colorado-New Mexico border; they're not checked at

9    the steps of the courthouse in Las Cruces; and

10   they're certainly not checked in Judge Browning's

11   courtroom -- in the courtroom he's occupying in Las

12   Cruces.

13           And with that, Your Honor, I would implore

14   this Court to quash that writ, and either reset this,

15   so that I have an opportunity to be noted and appear,

16   and have time to confer with my client.  Because one

17   last thing I will point out:  These motion hearings

18   were scheduled in February, and I never received any

19   notice.

20           And that's all I have at this time, Your

21   Honor.

22           THE COURT:  All right.  Let me ask you a

23   few questions, Mr. Sapien.  I may, should be, more

24   familiar with your client than I am.  But talk to me

25   a little bit about Mr. Quintana.  I know he's an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7185

1    inmate; I can see that from what he's wearing and

2    what you said in the motion, but -- let me see how to

3    ask the question -- has he ever been charged, either

4    in an indictment, or with a misdemeanor or anything

5    in connection with what I will call these SNM cases

6    that are before me?

7            MR. SAPIEN:  Yes, Your Honor.  He was

8    charged, again, over two years ago, I believe.  Well,

9    I don't specifically remember the date, because I

10   came into the case after he had had another counsel,

11   but he has been charged, they are felony charges, the

12   charges are still pending.  And so that's, obviously,

13   a concern for me, because as I stated in the motion,

14   he hasn't been granted any kind of immunity.  I have

15   no idea what the relevance or possible testimony

16   might be related to these motions that were filed.

17   And I have specific concerns as to how it could

18   implicate his own -- resolution of his own case.  But

19   yes, he has pending felony charges, Your Honor,

20   related to these indictments.

21           THE COURT:  Is it a single defendant

22   indictment or information?

23           MR. SAPIEN:  No, Your Honor.  He was

24   originally charged with another defendant and --

25   whose name escapes me at this time, but it was more



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7186

1    than one defendant.

2              THE COURT:  And is that case assigned to

3    me?

4              MR. SAPIEN:  I believe it is, Your Honor.

5    And I would also remind the Court that another

6    attorney in one of these other related indictments

7    had attempted to subpoena Mr. Quintana for a hearing

8    that we had, and I believe some of the defendants in

9    this case that you're hearing now were overlapped in

10   that other case, and were aware at that time that he

11   had counsel, that I was representing him.  And we had

12   a hearing on that subpoena, and that subpoena had

13   been quashed.

14             THE COURT:  All right.  And in the case

15   that Mr. Quintana is charged, are the allegations of

16   a VICAR nature?

17             MR. SAPIEN:  Your Honor, I need a little

18   more explanation.  I don't believe they are.

19             THE COURT:  What is he charged with?

20             MR. SAPIEN:  It was related to a murder

21   case, Your Honor.

22             THE COURT:  Is it one of the murders that's

23   involved in this trial that I'm about to have?

24             MR. SAPIEN:  I don't know, Your Honor.  I

25   think that counsel for the Government may have to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7187

```
 1    answer that.

 2              THE COURT:  The trial -- the murders or

 3    assaults that we're dealing with here are Fred

 4    Castillo, Rolando Garza, Freddie Sanchez, Adrian

 5    Burns, and then Jose Gomez.  Any of those in your

 6    case?

 7              MR. SAPIEN:  No, Your Honor.

 8              THE COURT:  All right.  So I take it that

 9    while he's an inmate somewhere, that he is not in any

10    federal custody; is that correct?

11              MR. SAPIEN:  That is correct, Your Honor.

12              THE COURT:  And he has not pled to any

13    federal charges?

14              MR. SAPIEN:  No, he has pled.

15              THE COURT:  To federal charges?

16              MR. SAPIEN:  Yes, Your Honor.

17              THE COURT:  And he has a plea agreement

18    with the Government?

19              MR. SAPIEN:  Yes, Your Honor.

20              THE COURT:  Does his plea agreement include

21    a request to cooperate?

22              MR. SAPIEN:  It does, Your Honor.

23              THE COURT:  Okay.  So it looks to me like,

24    looking at your case 16-3414, did he do a straight-up

25    plea to the indictment?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7188

```
 1              MR. SAPIEN:  Your Honor, you know, again,
 2    being in a vehicle, I don't have the file right in
 3    front of me.  And so I can't recall if we filed an
 4    information with a separate charge or if he pled
 5    straight up.
 6              THE COURT:  Okay.  If he has pled to
 7    federal charges and cooperating, then what ability
 8    does he have -- and I'm not saying we're going to do
 9    anything without you present, but what ability does
10    he have to take the Fifth in this matter?
11              MR. SAPIEN:  Well, again, Your Honor,
12    without having conferred -- and I guess having some
13    guidance or some consultation either with counsel for
14    the defendant or counsel with the Government as to
15    how his testimony might be relevant in this
16    particular case, it's difficult for me to answer
17    that.
18              At this point, I believe that he should
19    assert the Fifth mainly because I haven't had a
20    chance to confer and consult with him, and I am not
21    present for those hearings.
22              THE COURT:  So if you were present and had
23    the opportunity, it may very well be that you would
24    allow him to testify given that he has also a
25    cooperation agreement with the Government, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7189

1   probably an assurance that he's not going to receive

2   any further federal charges?

3         MR. SAPIEN:  Certainly, yes, Your Honor.

4   That is part of the point that I was making in terms

5   of not having any kind of advance notice.

6         THE COURT:  So it may be that we're largely

7   talking about a logistical problem, getting you and

8   Mr. Quintana together, and then getting you down here

9   so that you can be with him while he's testifying?

10        MR. SAPIEN:  Yes, and being able to have, I

11  guess, enough notice of a hearing, Your Honor, that I

12  can confer with him, obviously, as long as needed

13  prior to the hearing.

14        THE COURT:  I guess the question is when

15  could you get down here for meeting with Mr. Quintana

16  and possibly being here for his testimony?

17        MR. SAPIEN:  Well, Your Honor, as I

18  indicated in the motion, I'm leaving out of town on

19  an airline flight tomorrow morning very early.  I

20  won't be back in the office till Tuesday of next

21  week.  I would have to consult my calendar if it

22  would be possible for me to get down to Las Cruces

23  sometime, I guess, the middle of week.  I am -- I did

24  note in my motion that I'm also out of town starting

25  on the 23rd of March; I think it's a Friday.  That

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7190

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 219 7191

 1    might be a little flexible, but I'm certainly out of

 2    town from the 24th through the -- that week, until

 3    the following Monday, the 1st of April, or 2nd of

 4    April.

 5              THE COURT:  You're telling us that you're

 6    not going to be able to get down here this week.

 7              MR. SAPIEN:  That is correct, Your Honor.

 8    And again, Judge, as I note in my motion, since I

 9    wasn't a party to this case, and until I filed my

10    motion -- and I had to become listed as an interested

11    party before I could file the motion -- I didn't file

12    a notice of nonavailability, as I do typically in my

13    cases.  And I would have done so, but I wasn't a

14    party, so I wasn't given any notices, and I didn't

15    get notice from anyone about the motions and the

16    hearings.  And I filed my notice of nonavailability

17    on Monday in conjunction with the motion -- sealed

18    motion I filed on this hearing.

19              THE COURT:  Now, as far as the Rule 17 and

20    Rule 49 -- and you're a seasoned federal litigator

21    with me and many other judges in this court -- I

22    have -- I can't say for certain, but it's been my

23    impression that most of those motions from the

24    defense side are usually ex parte.  And they are not

25    served on the recipients of the subpoena.  And Rule

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7191

```
 1   49 indicates that a party must be served -- that a
 2   party must serve on every other party.  But that
 3   would not suggest to me that a motion, such of that
 4   nature, would need to be served on the recipients of
 5   the subpoena.  So it would seem to me that the
 6   subpoena -- and in this case, I know it's a writ of
 7   habeas corpus -- but there is not a problem with the
 8   service; that while it's a little different, there
 9   being a writ, that the rules only require the party
10   to be served, and begin that.
11           MR. SAPIEN:  Well, Your Honor, I would
12   respectfully disagree.  And again, I had to do some
13   very quick research, having found out about this on
14   Friday, working on it on the weekend, but my
15   understanding is the writs are treated essentially
16   the same by the courts as a subpoena.  And Rule 49
17   requires that the service should be made -- when they
18   are trying to serve a represented individual, that
19   that service should be made on the attorney.
20           THE COURT:  Well, that may be.  But I
21   thought you were making the point that the motion
22   needed to be served.  You're saying the writ itself
23   should have been served on you.
24           MR. SAPIEN:  Well, yes, the writ should
25   have been served -- and I understand that -- I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   think the writ got filed till much closer as an ex

 2   parte document.  But I guess my thinking would be

 3   that, at a minimum, professional courtesy would be

 4   you serve the attorney with the writ, as required by

 5   Rule 49; you would then basically at least give the

 6   attorney the heads-up that these are the motions that

 7   we would expect your client to testify about.

 8            And you know, whether that's required or

 9   not, I couldn't answer in terms of the motion, Your

10   Honor.

11            THE COURT:  All right.  Anything else, Mr.

12   Sapien, in support of your motion?

13            MR. SAPIEN:  Not at this time, Judge.  I

14   appreciate you giving me the opportunity.

15            THE COURT:  Thank you, Mr. Sapien.

16            Mr. Cooper, are you going to take the lead

17   on this motion?

18            MR. COOPER:  I am, Judge.

19            THE COURT:  Mr. Cooper.

20            MR. COOPER:  And without getting personal,

21   I think that we've done everything that, under the

22   rules, we were obligated to do.  We served the writ

23   on his client.  We have no objection to setting this

24   thing tomorrow morning, or Friday; letting his lawyer

25   come in and visit with his client.  And we'll talk
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7193

1    about what it is that we need to do.  So we don't

2    have an objection.  We're not trying to do anything

3    here to get to Mr. Quintana without Mr. Sapien.  Mr.

4    Sapien is not a party to this particular case.

5           He -- from what I know -- and his case is

6    sealed, I can't look at his case.  So I don't know

7    the extent of that representation with regard to

8    Sapien and Mr. Quintana.

9           But, Judge, we think that this writ was

10   properly served.  We think that Mr. Quintana is here

11   before the Court.  I wouldn't want one of my clients

12   to be made to testify without me being there.  So we

13   certainly understand that.  But I don't believe that

14   there is anything in this particular motion to quash

15   that would allow a court to quash this writ.  I don't

16   mind extending it.  We're not set for anything next

17   week.  But if we don't get moving, we may be here

18   sometime soon.  And I suspect we're not going to

19   finish with all the motions this week.  So I would

20   have no objection with allowing Mr. Sapien the time

21   to come down to Las Cruces, or go to wherever his

22   client is being detained, visit with his client.  And

23   we will meet on another day to talk about his client.

24          The pleadings -- or certainly the pleading

25   that we're referring to, 1909, is a sealed document.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7194

7195

```
 1    It's a document that we can't -- that I'm sure Mr.
 2    Sapien doesn't have access to.  But we would be happy
 3    to share that if the Government doesn't have any
 4    objection.
 5              THE COURT:  Any objection?
 6              MS. ARMIJO:  No, Your Honor.
 7              THE COURT:  All right.  Anybody else have
 8    any objection?
 9              All right.  Mr. Cooper, can I put the
10    burden on you to get a copy of 1909 to Mr. Sapien?
11              MR. COOPER:  I would be happy to email a
12    copy to Mr. Sapien.  I have his address.  And I can
13    get it to him and he can review it.
14              THE COURT:  All right.
15              MR. COOPER:  Your Honor, actually, I think
16    we ought to just give him the part that deals with
17    his client.
18              THE COURT:  All right.  If you'll redact
19    it, and just get the portion to him that deals with
20    his client.
21              MR. COOPER:  Thank you, Judge.
22              THE COURT:  1909, just so I know, is the --
23              MR. COOPER:  That's the targeted response
24    to the Government's James motion.
25              THE COURT:  All right.  Are there
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   particular statements in the chart?

 2            MR. COOPER:  Yes, Your Honor.  Well,

 3   they're not in the chart, but they're in this

 4   targeted motion.

 5            THE COURT:  So it's like Mr. Castle's more

 6   recent interviews that there is something that's come

 7   up rather recently that are additional statements?

 8            MR. COOPER:  Yes, Your Honor.  This was a

 9   motion that was filed on March the 9th, after we had

10   probably already put into process the writ.

11            THE COURT:  Okay.  All right.  So we'll get

12   some information to you, Mr. Sapien, so you're more

13   knowledgeable.

14            MR. SAPIEN:  Thank you, Your Honor.

15            THE COURT:  Give me a nature of what you're

16   calling Mr. Quintana for, what --

17            MR. COOPER:  It's very, very limited, Your

18   Honor.

19            THE COURT:  Very limited.

20            MR. COOPER:  And before I forget, may we

21   also be authorized to give him the discovery that

22   goes with this particular statement?

23            MS. ARMIJO:  Yes.

24            THE COURT:  All right.  So you'll get the

25   discovery the Government produced that goes with this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7196

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225 197

 1   statement.  So it's a single statement?

 2           MR. COOPER:  That's correct, Judge.

 3           Judge, Mr. Quintana is a government

 4   witness.  He indicates that at some point in time,

 5   Mr. Troup and Mr. Chavez admitted to him their

 6   involvement in the 2001 murders.  And there are two

 7   different documents in discovery.  In one of them,

 8   the original document, there is no mention of Billy

 9   Garcia.  But in a subsequent document, in consecutive

10   Bates numbers, it says that Billy Garcia ordered the

11   hit.

12           And we just want to explore whether or not

13   Mr. Quintana made that statement, and whether or not

14   we are going to be able to challenge that statement.

15   I don't know that he made the statement actually.

16   But we need to make that determination.  And that's

17   one of the targeted statements in our motion.

18           THE COURT:  So to avoid this just being a

19   discovery hearing, what is the purpose of hearing

20   from Mr. Quintana?  How is he going to help you with

21   anything?

22           MR. COOPER:  We need to determine whether

23   he made that statement; whether -- we don't know if

24   he made the statement or it just came into the 302

25   that was subsequently prepared.  And we need to limit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   it.  And it's probably a situation where we're going

 2   to ask him three questions.  I think we can get to it

 3   at that point.

 4            THE COURT:  But is it just discovery, or

 5   how does it relate to any sort of pretrial work that

 6   we're doing?

 7            MR. COOPER:  No, Judge.  Like all of the

 8   other statements in that motion, it's to determine

 9   the nature of that, whether it's a statement against

10   interests, or how -- what the nature of that

11   statement is, or the -- what kind of statement that

12   is.

13            THE COURT:  All right.  Anything else, Mr.

14   Cooper?

15            MR. COOPER:  That's it, Judge.

16            THE COURT:  All right.  Anyone else on the

17   defense side have anything to say on Mr. Quintana's

18   motion to quash?

19            All right.  Mr. Beck, are you handling

20   this?  Ms. Armijo?

21            MS. ARMIJO:  Your Honor, this is much like

22   the other motion that you just heard.  We think it's

23   an improper fishing expedition.  And Mr. Quintana

24   should not have to give them the benefit of the

25   circumstances of if he made the statement.  So, to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7198

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227199

```
 1    that extent, we don't feel that they should be

 2    allowed to have a free shot, a free deposition,

 3    without any support of it under the law, case law or

 4    rules.  And so, to that extent, we would oppose him

 5    having to come and testify to this.

 6              THE COURT:  Since these statements don't

 7    appear on the co-conspirator, are you trying to get

 8    these in on the basis of a statement against

 9    interests?

10              MR. BECK:  Yes, statements against penal

11    interests.

12              THE COURT:  Is that about the only basis

13    that you got right at the moment to offer?

14              MR. BECK:  I mean, that would be one basis.

15    Obviously, to the extent that Mr. Troup and

16    Mr. Chavez go to trial, it would be a statement by a

17    party opponent as to them.  But we believe it's a

18    statement against penal interests as well.

19              THE COURT:  As to everybody?

20              MR. BECK:  Right.

21              THE COURT:  All right.  Thank you, Mr.

22    Beck, Ms. Armijo.

23              I'll give you the last word, Mr. Sapien.

24              MR. SAPIEN:  Well, Your Honor, I had

25    included in my motion that without having had an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7199

1    opportunity to review those pleadings -- and I

2    appreciate that I'll be given a copy of the one

3    sealed motion Mr. Cooper referred to -- but I am not

4    sure if it's a fishing expedition.  I do note that.

5    But again, I was trying to cover all bases in my

6    motion.  And I would certainly like an opportunity to

7    confer with Mr. Quintana.

8         I also, Judge, would need to confer with

9    the calendar to determine -- I know Mr. Cooper

10   mentioned something about tomorrow and Friday.  But

11   that may have just been a misstatement, given that I

12   have previously advised him, and obviously the Court

13   I'm not available Thursday or Friday of this week,

14   and would have to look at the schedule for next week,

15   Your Honor.

16         THE COURT:  All right.  Well, as far as I

17   can tell from the reading of the rules, the motion

18   was properly filed, properly granted, and properly

19   served.  A copy could have been served on counsel,

20   but I'm not certain that anything requires it.  And

21   whatever occurred, it ended up giving notice to Mr.

22   Quintana's counsel.

23         So I do think that there is some relevance.

24   I am allowing some very limited and very targeted

25   elicitation of evidence regarding some statements

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7200

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229 201

1   that are made so that I can properly determine under

2   Rule 104 of the federal rules of evidence whether the

3   testimony should come in.

4           So based upon the defendant's

5   representation, this is not a discovery hearing; this

6   is going to be a 104 hearing, in which we solicit

7   some information, very limited information to

8   determine and rule pretrial whether certain evidence

9   is coming in, I'm going to deny the motion to quash.

10          I'll just encourage you to get with Mr.

11  Quintana as soon as possible, and stay in touch with

12  Mr. Cooper.  And Mr. Cooper, I'll ask you to stay in

13  touch with Mr. Sapien.  It looks like we have a

14  pretty full week.  So we'll just have to see how the

15  week goes.  If I had to guess on the chart where we

16  are, we're going to be hard pressed to get what we

17  have on here.  So either we're going to have to take

18  these issues up at trial, or we're going to have to

19  schedule some other time while we're down here.  But

20  I just encourage you to get with Mr. Quintana as soon

21  as possible so you can talk to him about his

22  testimony in this trial.  And just stay in touch with

23  Mr. Cooper, and we'll proceed from there.

24          MR. SAPIEN:  Your Honor, I know the Court

25  has denied my motion.  One of the requests was to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7201

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7202

```
 1   have him transported back to his facility.  Will that

 2   occur, or would I need to make arrangements to go

 3   where he's currently being housed?

 4            THE COURT:  I guess I'm not optimistic

 5   we're going to squeeze in his testimony this week.

 6   So any objection to the marshals transporting him

 7   back to where he is, so that Mr. Sapien can meet with

 8   him wherever he's been detained long-term?

 9            MR. COOPER:  I'm sorry, Your Honor.  I was

10   not paying attention.

11            THE COURT:  Is there any problem with --

12   since I'm not optimistic we're going to squeeze him

13   in this week, and Mr. Sapien can meet with him

14   wherever he's been meeting with him, is there any

15   objection to going ahead and having the marshals

16   transport him back to wherever he's been, and

17   Mr. Sapien can reach him, and Mr. Sapien and Mr.

18   Cooper, if you'll just stay in touch, and when we can

19   work him in, we'll work him in.

20            MR. COOPER:  I have no objection, Your

21   Honor.  I think he should be transported back to

22   his --

23            THE COURT:  Anyone else?  Any defendant

24   have any objection?  Any objection from the

25   Government?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7202

```
 1                MS. ARMIJO:  No, Your Honor.

 2                THE COURT:  All right.  So that request

 3     will be granted, Mr. Sapien.  And the marshals can

 4     transport him back to where he's been detained

 5     long-term.

 6                MR. SAPIEN:  Thank you, Your Honor.  If I

 7     could just put on the record, Your Honor, and again,

 8     my intent wasn't to disparage or be personal with any

 9     of my colleagues down there.  Certainly, I have a

10     different reading of the rules than the Court has

11     ruled.  But that was really the basis of where I was

12     making my argument, Your Honor.

13                THE COURT:  All right.  Anything further,

14     Mr. Sapien?

15                MR. SAPIEN:  Nothing at this time, Your

16     Honor.  Thank you.

17                THE COURT:  All right.  I appreciate your

18     participation.  And we'll send Mr. Quintana out of

19     the courtroom, and we won't conduct any hearing of

20     him without you being available.

21                MR. SAPIEN:  Thank you, Your Honor.  I

22     appreciate that.

23                THE COURT:  All right.  We were still at

24     1744.  And I think, Mr. Castle, you said you were

25     done.  You didn't need anything else from the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7203

```
 1    Government on 1744; is that correct?

 2              MR. CASTLE:  Yes, Your Honor.

 3              THE COURT:  Did anyone else have anything

 4    they want to say or seek related to 1744 from the

 5    Government?  Not hearing anything, Mr. Beck, Ms.

 6    Armijo, anything further on 1744?

 7              MS. ARMIJO:  No, Your Honor.  Thank you.

 8              THE COURT:  All right.  So I think we've

 9    disposed of the issues that were still ripe on that.

10              I am going, I think, to the motion for

11    discovery of the arrest and conviction reports of and

12    witness' criminal history.

13              You know, somebody told me I could do

14    anything I wanted to earlier today, and I wish that

15    were the rule.  But it's not.  But I don't see any

16    real basis -- this seems to me to be invading work

17    product.  I don't know -- it doesn't sound like the

18    Government has done any of this.  I don't know if

19    they planned to do any of this.  They may want to

20    make a representation they're not planning to do it.

21    But, in any case, whether they're going to do it, or

22    not going to do it, I'm not sure I really have any

23    basis to require them to disclose a witness' criminal

24    history, so I'd be inclined to deny the motion.

25              Mr. Benjamin.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            MR. BENJAMIN:  Ms. Armijo and I have been

 2    emailing.  And my request to her was simply for her

 3    to say they weren't going to do that.  And I think

 4    that's what they say in the response, Your Honor.

 5    I've been told pretty much that same line from

 6    different courts at different times, and some courts

 7    have done it.  So I understand the Court's position.

 8            But as I said, I think the Government has

 9    represented that they're not going to do that.  So I

10    think it's a moot point anyway, Your Honor.

11            Thank you.

12            THE COURT:  Any other defendants want to

13    speak on this issue?

14            All right.  Mr. Beck, Ms. Armijo, are y'all

15    not going to do this?

16            MS. ARMIJO:  We aren't going to do it.  But

17    even if we did, we think that it would be work

18    product.  But we won't do it.  We think it's

19    improper.

20            THE COURT:  And you're not going to do it

21    for this trial?

22            MS. ARMIJO:  No, we didn't do it in the

23    last one and we're not doing it in this one.

24            THE COURT:  All right.  Anything else on

25    that, Mr. Benjamin?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7205

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 234 206

```
 1                MR. BENJAMIN:  I was a lot more comfortable
 2     with their written stipulation rather than hedging on
 3     the work product argument.  But I don't think I have
 4     anything, Your Honor.
 5                THE COURT:  Well, they're saying that they
 6     agree with my work product analysis, but they're not
 7     going to do it.  Right, Ms. Armijo?
 8                MS. ARMIJO:  You are correct, Your Honor.
 9                MR. BENJAMIN:  Thank you, Your Honor.
10                THE COURT:  Anybody else on that?  All
11     right.  So that motion will be denied.
12                All right.  The next motion I think we have
13     is the motion for immediate production of notes, of
14     interviews of witnesses by investigating officers.  I
15     think Mr. Castle may have said earlier that we
16     probably had covered this, or somebody did.  Is there
17     anything else to this motion we need to discuss,
18     Mr. Castle?
19                MR. CASTLE:  No, Your Honor.  This is a
20     horse that doesn't need beating anymore.
21                THE COURT:  Okay.
22                MR. CASTLE:  I just wondered, though.
23     There are two inmates that were writted, and we had
24     to space them out for the marshal's purposes.  There
25     is two here today.  We'd like to get them up and out
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7206

 1   of here, if it's okay.  Could we divert from the

 2   plan?

 3            THE COURT:  Any objection to that, Ms.

 4   Armijo?  Mr. Beck?

 5            MS. ARMIJO:  Well, are their attorneys

 6   here?  Do they have attorneys?  I think their

 7   attorneys need to be notified.

 8            MR. CASTLE:  Frederico Munoz, I don't know

 9   if he has an attorney.

10            MS. ARMIJO:  He has an attorney.  And if

11   they don't know that -- he has an attorney, and his

12   attorney has not been notified, and should be.

13            THE COURT:  Do you know the name of his

14   attorney?

15            MS. ARMIJO:  I do.  It's Luis Lopez in El

16   Paso.

17            THE COURT:  In El Paso?  Do they know that

18   he's here?  Does he know that he's here?

19            MR. CASTLE:  You know, Judge, I can't

20   imagine that he'd need an attorney.  He's saying our

21   clients confessed to murders.  He's saying he didn't

22   participate in those murders.  All I'm asking is the

23   circumstances, whether it was a statement against

24   interests.

25            He's come up with a plea agreement with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Government where he has to cooperate.  It's required.

2   And so, you know, I understand they're saying the

3   attorney aspect of things, but --

4           THE COURT:  Why don't y'all give him a

5   call.  Who is the other one?  Who is the second

6   witness?

7           MR. CASTLE:  Robert Martinez.

8           MS. ARMIJO:  And that's T.J. McElhinney,

9   who would want to -- I'm sure that they would want to

10  at least talk to their attorneys, Your Honor.  And

11  these motions are ex parte.  So it's not like we can

12  get involved.  But certainly, they should know from

13  the prior trial that these people had -- especially

14  since this were charged -- that they have attorneys.

15  Both of these persons were charged in either 4268 or

16  4269.  And they have attorneys.

17          THE COURT:  And where is Mr. McElhinney?

18          MS. ARMIJO:  He's in town.

19          THE COURT:  He's a Las Cruces lawyer.

20          MS. ARMIJO:  Yes.

21          THE COURT:  Well, why don't y'all call

22  them, and see if they want to get over here, or tell

23  them your situation, see if they want to get over

24  here.  And if we can squeeze them in this afternoon,

25  I don't have any problem.  I would feel more

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7208

1   comfortable with attorneys being present, because it

2   probably was something that either I or Ms. Wild or

3   somebody got them attorneys for some specific reason.

4           MR. CASTLE:  Judge, just so the Court

5   knows, you know, we've had to do this on the fly,

6   because we kept waiting for the statements from the

7   Government.  Ms. Harbour-Valdez has already left to

8   go call them.

9           THE COURT:  All right.  Let's see if we can

10  squeeze them in a little bit later.  All right.

11          Am I understanding, though, on this motion

12  for immediate production of notes, there is nothing

13  else to discuss, Mr. Castle?

14          MR. CASTLE:  Yes, Your Honor.

15          THE COURT:  And does anybody else on the

16  defense side have anything to say on this motion?

17  Everybody is shaking their head no.

18          Anything else, Mr. Beck, Ms. Armijo, on

19  this motion?

20          MS. ARMIJO:  No, Your Honor.  Thank you.

21          THE COURT:  All right.  So I don't know if

22  that's a grant or deny.  I'll have to go back and

23  look at the notes, but I'll work it in with the --

24  whatever we did earlier, at least we disposed of the

25  motion.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7209

```
 1              All right.  The next motion I have up is
 2   Tab 12, which I believe is Mr. Troup and Billy
 3   Garcia's motion to compel.
 4              MR. BURKE:  And, Your Honor, this is the
 5   one that I jumped in because it was relevant.
 6              THE COURT:  Okay.
 7              MR. BURKE:  In effect, we've handled that,
 8   and we've already begun exchanging emails about the
 9   issues that were involved in that.
10              THE COURT:  Yeah, I knew it was an old
11   motion, because Ms. Wild had me read it to update me,
12   so that I wouldn't have forgotten what I had read
13   earlier.
14              MR. BURKE:  I think we're going to be good
15   on that one.
16              THE COURT:  All right.  Anybody else have
17   anything on what is Document 1061?  It's a pretty old
18   motion.
19              Anything else from the Government?
20              MS. ARMIJO:  No, Your Honor.
21              THE COURT:  All right.  The next motion
22   that I have, I think this is where we began to get
23   out of order, and we're going to motion 28.  And I'm
24   not sure I got -- I have to assemble those documents.
25   But this is notice of the gang expert, and then I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7210

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 239 7211

```
 1   guess Mr. Garcia's motion to exclude this testimony.
 2   I'm going to have to find this stuff.  But is this
 3   expert issue still alive?  Are y'all planning to call
 4   the experts that we had earlier?  Can the same rules
 5   that we agreed to pretrial apply?  Or is it mooted
 6   out?  What's your thoughts, Mr. Beck?
 7             MR. BECK:  They're still listed as
 8   witnesses that we'll call.  But I think it's -- I
 9   think that it's very likely we'll proceed as we did
10   in the first trial and not call them.
11             THE COURT:  Not call them.
12             MR. BECK:  But I'm not saying that we won't
13   call them.
14             THE COURT:  Okay.  We went through -- I
15   don't think I issued an opinion on this one.  But I
16   think that I laid out pretty well what the
17   Government's experts could say and not say orally.
18   Is there any more guidance on that issue that needs
19   be given, other than what I gave in the first trial?
20   And then it sounds like they're probably not going to
21   call the witnesses.  But the Government is not going
22   to give a guarantee right at this point.
23             Mr. Castle.
24             MR. CASTLE:  No, I think the Court's orders
25   were clear.  The only thing that we would add to it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7211

1    is that the Court, as part of its orders, has

2    required further information to be provided.  And in

3    paragraph 5, we've indicated that that hasn't been

4    done sufficiently.  But it sounds like the Government

5    is not likely to be calling these witnesses.  If they

6    are, we'd ask for the disclosure as set out in this

7    motion.

8              THE COURT:  Did I issue a written opinion

9    or order on this?

10             MR. CASTLE:  I do not -- well, there is a

11   reference to a memorandum in my motion.  So I'm going

12   to look here.

13             THE COURT:  I just do not see your motion.

14   I don't see a Tab 28.

15             MR. CASTLE:  It appears that all the

16   Court's rulings were on the record in the November

17   hearings in 2017.

18             THE COURT:  But I did order that, if they

19   were going to call these, there was going to have to

20   be some more information?

21             MR. CASTLE:  I believe -- probably not as

22   clear as that.  I think there was discussion back and

23   forth.  And because we were kind of -- the Trial 2

24   people were on the sidelines, I think, in the final

25   analysis.  I'm not clear enough to know what Trial 1

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7212

 1   attorneys agreed with the Government.

 2           THE COURT:  Well, I think this actually

 3   occurred when we were all together, because we did

 4   the hearings on the experts all together.  So

 5   whatever I did pretrial there, applied to both

 6   trials.

 7           MR. CASTLE:  Right.  And I understand.  I

 8   think at that point there was an understanding that

 9   the Government would not be calling them, with the

10   exception as to factual information or generic gang

11   kind of testimony, not specific to the SNM Gang.

12           THE COURT:  That was generally the order

13   that I gave.

14           MR. CASTLE:  Right.  And so if that's still

15   the case, I don't think we really have a fight here.

16           THE COURT:  Okay.

17           MR. CASTLE:  So I'm trying as best I can to

18   preserve our objections, because they're also

19   preserving their right to call the experts.  And we

20   kind of want to make sure it's all on the record that

21   we've objected to these kind of experts.  I don't

22   think really the Court needs to do anything right

23   now, until or unless the Government decides to call

24   these experts.  And then, if they did make that

25   decision, then perhaps we can -- we raised this issue



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7213

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242

 1    before the Court.  I'd like to turn around to my

 2    colleagues and see if I'm --

 3              THE COURT:  Let me do this:  Because I

 4    think that my ruling earlier was meant to apply to

 5    all trials.  So whatever I ruled earlier, and orally,

 6    I know I haven't put it into a motion and order, it

 7    doesn't sound like I have, that will apply to this

 8    case.  And so we'll just make it the ruling on this.

 9              If you want to turn around, go ahead.

10              MR. BURKE:  May I speak on this?

11              THE COURT:  You may.

12              MR. BURKE:  Not that I have anything

13    definitive to say.  I was seated over there, and it

14    was called the Daubert Gutierrez hearing is what I

15    remember.  And I thought you said that the experts,

16    Mr. Cupit and Mr. Sapien, could not testify to the

17    breadth of what the notice was that had been filed by

18    the Government.

19              THE COURT:  That's true.  They cannot be

20    SNM experts.  They can be gang experts, and they can

21    testify about generally what gangs do.  They can say

22    gangs get tattoos; gangs, generally, if you

23    disrespect them, they're going to do something to

24    you.  And they may have initiation proceedings, gangs

25    generally.  But what I wasn't going to allow somebody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 243

 1   to do is be a conduit for hearsay, and say, Well,

 2   I've talked to three or four SNM Gang members, and

 3   here's what SNM Gang members do.

 4          MR. BURKE:  That's the way I remember it as

 5   well.  And then I remember Ms. Jacks getting up and

 6   saying:  This really doesn't meet Rule 16

 7   requirements.  Where did they get that knowledge to

 8   be able to say -- and I thought at that point you

 9   said:  If you're going to go into those areas, we may

10   need to revisit.  But --

11          THE COURT:  Well, I think what I said --

12   and the record should reflect this -- I said that an

13   expert never escapes having to tell where it gets its

14   information.  And if it's -- you know, if it's

15   probably interviewed thousands of people, and been in

16   prisons and things like that, I think that's an

17   expert.  But if they've just interviewed one or two

18   people, they're still being just a conduit for

19   information.  We all get information from all sorts

20   of sources, one of them being oral, and one of them

21   being out-of-court statements that somebody is going

22   to turn around and offer for the truth.

23          But I guess we all sort of live with

24   medical experts, sitting in lectures at medical

25   school, and we say that's okay.  I guess a gang

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7215

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 247

1  expert had brought enough experience, I'll let them

2  do that.

3         MR. BURKE:  And that is generally what I

4  remember:  They can talk about the tattoos or the

5  idea of respect.  But when it gets beyond that, we

6  might be approaching the bench.

7         THE COURT:  Yeah.

8         MR. BURKE:  All right.

9         THE COURT:  If they're being -- if they're

10 SNM experts, I get very nervous.  If they're gang

11 experts -- and one of the fellows here -- I don't

12 remember which one it was -- he looked pretty

13 knowledgeable.  I think he was a former gangster, if

14 I recall.  And yeah, he probably knows about gangs,

15 and he can testify about what gangs do.  I think the

16 Government will agree that -- they don't have to say

17 so, but I mean I think the reason they didn't call

18 him in the first trial is because they got all that

19 information out through corrections officers, FBI

20 agents, and gang members.  There wasn't a whole lot a

21 gang expert could rely upon.

22         MR. BURKE:  Very well, Your Honor.

23         THE COURT:  My experience is that juries

24 don't listen to experts much anyway.  We all, as

25 lawyers, worry about them a great deal.  But they



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7216

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245

```
 1    always -- kind of not that impressed with them.
 2              MR. BURKE:  Thank you, Your Honor.
 3              THE COURT:  All right.  Anything else from
 4    the defense?  The Government comfortable with that?
 5    Whatever I ruled earlier will govern experts.
 6              MR. BECK:  Was our expectation.
 7              THE COURT:  All right.  So now, let's go
 8    back to -- I think after 28 -- and I don't know where
 9    28 went.  I think always -- I think, when I got the
10    file, it never did have a 28.  What I did with the
11    briefing -- which I read, I don't know where it is.
12    But I don't think I ever had a Tab 28.  It just
13    skipped.
14              So going to 13:  We go to the motion for
15    imposition of January 31, 2018 deadline for the
16    Government to produce summary of statements it
17    intends to offer against Trial 2 defendants.
18              MR. CASTLE:  That's moot, Your Honor.
19              THE COURT:  Okay.
20              MR. CASTLE:  The January 31 part was moot
21    by inaction, and action happened on March 7.  So --
22              THE COURT:  All right.  So anything else
23    from any other defendant?
24              The Government have anything on that
25    motion?  Ms. Armijo?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 246

```
 1              MS. ARMIJO:  No, Your Honor.

 2              THE COURT:  All right.  So let's go then to

 3    Tab 14, which is Document No. 1142.  And this is

 4    Mr. Joe Gallegos' motion to suppress.  So Mr.

 5    Benjamin, are you ready to argue this motion?

 6              MR. BENJAMIN:  Your Honor, may I do this:

 7    I had this transcribed, and Ms. Armijo pointed out --

 8    because I think this is better done with transcripts

 9    than with the actual audio of the interview, may I

10    ask to have this moved back a little bit, Your Honor.

11    I need to provide the complete transcript to Ms.

12    Armijo for her review, and then we can move forward.

13              THE COURT:  All right.  Any objection from

14    the defendants on that?

15              Ms. Armijo?

16              MS. ARMIJO:  Well, the problem is it's also

17    a motion to suppress a search warrant.  I have two

18    witnesses that I brought down --

19              THE COURT:  Okay.

20              MS. ARMIJO:  -- in the event the Court

21    wanted to hear testimony.  I know it's -- as to the

22    search warrant, it's our position that it's Mr.

23    Benjamin's burden, initially as to that.  As to the

24    statements I do have a witness available, so --

25              THE COURT:  Any objection to going ahead
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7218

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219

1    and getting those witnesses out, so that they can get

2    out of here?

3              MR. BENJAMIN:  On the house?  No, Your

4    Honor.

5              THE COURT:  Okay.

6              MS. ARMIJO:  Okay, so --

7              MR. BENJAMIN:  Search warrant.

8              MS. ARMIJO:  So the search warrant -- well,

9    I believe that's their burden, because our position

10   is it's their burden since we do have a search

11   warrant.

12             MR. BENJAMIN:  And that's what I'm saying,

13   I believe, Your Honor, essentially, at this point, I

14   would abandon the search warrant part of that.

15             THE COURT:  You will abandon it?

16             MR. BENJAMIN:  Yes, Your Honor.

17             THE COURT:  All right.  So do you need

18   those witnesses?

19             MS. ARMIJO:  Well, if they're abandoning

20   the search warrant, no.  I can let that witness go.

21             There is another witness that we would

22   have -- I guess if he sends me the transcript, maybe

23   we can work out what we would present the Court with.

24   But I do have a witness available, but --

25             THE COURT:  Do you want to get him out of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7219

1    the way?

2             MS. ARMIJO:  No.  I mean, I think we can

3    take a break, or during a break let me see the

4    transcript.  We can see if it's accurate, and maybe

5    we can work out a presentation, so we just don't have

6    to put a witness on for no reason.

7             THE COURT:  All right.  Is everybody

8    agreeable to that?  So we'll move on.

9             MR. BENJAMIN:  Yes, Your Honor.

10            THE COURT:  All right.  So we'll put the

11   motion to suppress aside.

12            Let's then move to the motion in limine

13   regarding bad acts.  This is the one that's filed by

14   Billy Garcia.  Let me sort of rehearse the rules that

15   I think we're operating under, and see if everyone

16   agrees.

17            MR. COOPER:  May we have just a moment?

18            THE COURT:  Certainly.

19            MR. COOPER:  I'm not sure which of us are

20   arguing this.

21            THE COURT:  All right.  This is Document

22   1308.

23            MR. BENJAMIN:  Yes, sir.

24            MS. ARMIJO:  Your Honor, I think the

25   parties have agreed that they would hear your rules.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7220

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 249221

```
 1    I was telling them that since -- I know last time we
 2    went through -- Mr. Castellano went through, and in
 3    order to try and assist that, after we hear what Your
 4    Honor has to say, I have information that -- I can
 5    meet with them individually -- as to how each of our
 6    purported bad acts are SNM.  And anything that we
 7    still have disagreements about, that we then bring to
 8    the Court, as opposed to spending hours like we did
 9    before.
10              THE COURT:  Okay.
11              MS. ARMIJO:  And I believe they are
12    amenable to that.  Because I do have -- I sent
13    letters to help me and assist me, you know, charts
14    for myself, and that would assist.  But I believe the
15    parties also wanted to hear what the Court was going
16    to say as well.
17              THE COURT:  All right.  Well, let me go
18    ahead, then, if this is the time to do it.  Let's
19    just rehearse history of why we call these "bad
20    acts."
21              Remember, originally, the Government took
22    the position that anything they were going to -- and
23    I hope I'm remembering everything correctly -- they
24    were saying that they were going to take the position
25    that anything they introduced in this trial was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    either intrinsic evidence, was res gestae, or

 2    something else.  It was connected with trying to

 3    prove that the racketeering activities were connected

 4    with the enterprise.

 5            The defendants said, Well, wait a minute,

 6    we might not agree that that's res gestae; that

 7    that's not intrinsic evidence; it's not connected

 8    with it.  It might just be some bad act that's

 9    floating out there, and the Government is trying to

10    get it in.

11            So what we did is, I told the Government:

12    Do your traditional thing, which is what they usually

13    do, is they give a 404(b) notice, say, Here's all the

14    bad acts that we're going to introduce.  We don't

15    necessarily agree that they're 404(b).  But in case

16    they are, we've given the notice required by the

17    rules.

18            So they did that, and then they continued

19    to say, is my memory, that we don't intend to

20    introduce anything other than what is intrinsic or

21    res gestae, or we're offering it to prove some

22    connection with the racketeering enterprise.

23            So the letters went out with the 404(b)

24    notice, with the understanding the Government did not

25    intend to rely on 404(b) for anything in the letters

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7222

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 257223

 1    or anything else at trial.  I think their attitude is

 2    they've got enough bad acts with these defendants;

 3    they don't need any more.  So they're going to go

 4    with what they've got that's connected with intrinsic

 5    evidence.

 6         So when we did the hearings pretrial for

 7    those four defendants -- those five defendants -- Mr.

 8    Castellano stood and said:  This one is out; we can't

 9    do this one; this one is 404(b); this one we're going

10    to try to prove.  And then he would then give the

11    evidence that he had.  And then the defendants --

12    some of them -- just fell by the wayside, they were

13    clearly intrinsic, they were clearly res gestae, they

14    were purposeful.  Some of the defendants came back

15    and said:  We're challenging this one, and I had to

16    make some decisions whether they were in or out.  Is

17    that everybody's memory?  Close enough for Government

18    work?

19         Okay.  So I understand what you're now

20    doing is you're going to provide this background in

21    another setting -- not here in open court -- and see

22    if you can get some information to the defendants.

23    And then the defendants may come back to me and ask

24    me to then rule on some, if y'all don't reach an

25    agreement as to them coming in?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              Is that where we are, Ms. Armijo?

 2              MS. ARMIJO:  Yes, Your Honor.  That is

 3    where we are.

 4              THE COURT:  Is that where the defendants

 5    are?

 6              MR. CASTLE:  Your Honor, we'd indicated to

 7    Ms. Armijo we had agreed, but we didn't get to

 8    inquire of everyone else.

 9              THE COURT:  All right.  Anybody have a

10    problem with the Government getting with you outside

11    of the presence of the courtroom and off the record,

12    and seeing if y'all can agree, and then you come back

13    to me with this?

14              MR. BLACKBURN:  Can we just have a second,

15    because I wasn't in on the last part of this.

16              THE COURT:  Go ahead and discuss it.

17              MR. SOLIS:  Your Honor, just for

18    clarification.  I wasn't present in court whenever

19    this was discussed previously, I guess, with all

20    parties.  And I've had information that Ms. Armijo

21    may supplement the list provided already to Mr.

22    Granberg, and Mr. Mondragon, who was counsel

23    previously.  So the procedure will be that there will

24    be a hearing in the event that we have a quarrel with

25    the remaining unagreed to 404(b) type evidence?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7224

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253

```
 1              THE COURT:  Well, what the hearing will be
 2    is, if you're not satisfied with the evidence -- I
 3    mean, some of these, I think, will just fall by the
 4    wayside.  I'll give you an example:  The DWIs and
 5    stuff like that, some of that fell by the wayside.
 6    The drug use tended to come in because of the SNM
 7    enterprise doing lots of drugs.  So some of that came
 8    in, some of it didn't, depending on whether it was
 9    just personal use, or whether it was drug trafficking
10    or something.  So there was some fine tuning down the
11    road.
12              Using the guidance we did before the trial,
13    some of these just fell out.  The Government said
14    it's not going to bring them.  And then some of them,
15    they said:  We want these in, and here's our evidence
16    as to why it's SNM related, res gestae, why it's tied
17    to the gang.  And then if y'all agree, then probably
18    I'm going to let it in.  If it didn't come back, it
19    came in.  You want to fight, then we'll set up some
20    hearing, maybe later this week, and resolve some of
21    those.  Make sense to you?
22              MR. SOLIS:  Yes, sir.  Thank you.
23              THE COURT:  So we call these bad acts, and
24    we call them 404(b).  But it has, at this point,
25    nothing really to do except for the fact that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7225

 1    defendants may want to characterize it as 404(b), and

 2    the Government does not.  But the Government --

 3              MR. SOLIS:  I understand.  I just didn't

 4    understand what procedure we follow to have a

 5    hearing.

 6              THE COURT:  This is what I came up to try

 7    to get as much information to the defendants as

 8    possible, so we didn't have any surprises at trial.

 9              MR. SOLIS:  Thank you.

10              MS. HARBOUR-VALDEZ:  Judge, just for

11    clarification, I spoke with Ms. Armijo.  She is not

12    intending to amend or shorten the list that we were

13    previously provided.  What she intends to do is sit

14    down and tell us why she thinks all of these things

15    will come in.  If that's the process, we'd like to

16    just go forward with the hearing and let you decide.

17              THE COURT:  Okay.  Well, all right.

18              MS. HARBOUR-VALDEZ:  That's for Mr. Troup

19    only.  I haven't discussed it with anyone else.

20              MR. SOLIS:  That's the reason I approached,

21    Your Honor, because I was informed that they were

22    going to amend this list, as recently as a few days

23    ago.

24              THE COURT:  Well, in the first trial, they

25    didn't amend any list.  So I guess I'm not sure that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7226

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255 7227

1   any list needs to be amended.  But if they are going

2   to try to get all this information or all these,

3   quote, "bad acts" in, they may have sanitized it

4   already and taken out some of the stuff that they

5   did.  And then I guess the question is:  Do you want

6   all this information done on the record, or off the

7   record?  But they may have already gone through and

8   taken out, for example, DWIs.

9          MR. SOLIS:  What I meant, in my situation,

10   was amend as in to add to the list.

11          MS. ARMIJO:  And, Your Honor, as to Mr.

12   Chavez, that is correct, because he was recently

13   found with a shank.  He was recently charged with

14   bringing in Suboxone.

15          THE COURT:  You've got some more?

16          MS. ARMIJO:  So we may have possible

17   different things that may not have been included on

18   his list.  So I think that was specific, because I

19   think his letter went out --

20          MR. SOLIS:  Way back in May of last year.

21          MS. ARMIJO:  In May of last year.  And we

22   have witnesses that would testify that he gave

23   people -- we had testimony, an SNM tattoo since

24   they've been incarcerated -- so to that extent, I

25   think in regard to Mr. Chavez, his letter was going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7227

```
 1   to be revised.  And that's --
 2              THE COURT:  Okay.  So you're going to get a
 3   revised letter.
 4              MR. SOLIS:  Right.
 5              THE COURT:  Let me go through these, then,
 6   one at a time.  Mr. Cooper, Mr. Castle, do you want
 7   to take up the Government's offer of getting their
 8   evidence off the record, and seeing if you want to
 9   fight some of these or all of these?
10              MR. CASTLE:  We'll go ahead and take your
11   offer, as long as we resolve it this week.  Is that
12   what we're going to do?
13              MS. ARMIJO:  Yes.
14              THE COURT:  Okay.  So we'll put it aside
15   and let y'all talk a little bit.  Then you'll bring
16   back the ones you want to fight over?  Is that the
17   deal?
18              MR. CASTLE:  Yes.
19              THE COURT:  Is that all right with you,
20   then, Ms. Armijo?
21              MS. ARMIJO:  Yes, Your Honor.
22              THE COURT:  All right.  Ms. Harbour-Valdez,
23   if I understand your remarks, you want to proceed and
24   go on the record?
25              MS. HARBOUR-VALDEZ:  Yes, Your Honor.  Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7228

```
 1   Burke is going to handle that argument.
 2              THE COURT:  Okay.
 3              MR. BURKE:  Your Honor, we did receive a
 4   bad acts letter, understanding what it really means,
 5   in terms of intrinsic evidence for racketeering
 6   enterprise on or about May 22, 2017, I believe.  And
 7   it lists many bad acts.  And we do want to contest
 8   all of those.
 9              THE COURT:  Okay.
10              MR. BURKE:  You may come down -- well,
11   anyway --
12              THE COURT:  Let's take the first one.  On
13   or about March 7, 1994, while in the custody of NMCD,
14   Mr. Troup assaulted MR.  Can you tell me a little bit
15   about who "MR" is?
16              MR. BURKE:  I can.  I did get some
17   discovery on that.  His name is Michael Ramos.  And
18   this was a personal beef.  And at that time -- and I
19   should have told my client I was going to say this --
20   but at that time, Edward Troup is 22 or 23 years old;
21   he's still a heroin addict -- because at that time
22   you could get all the heroin you wanted in prison --
23   and personal disputes would arise out of that.  It
24   wasn't gang-related.  It wasn't part of the SNM
25   enterprise.  It was a personal beef at the Northern
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258

```
 1   New Mexico Correctional Facility.
 2              THE COURT:  You're willing to share with
 3   me, A, are you going to be contesting that Mr. Troup
 4   was or is an SNM Gang member?
 5              MR. BURKE:  I don't believe he was at that
 6   time.  Eventually, he became one.  I mean, for the
 7   purposes of this hearing, I will agree with that.
 8              THE COURT:  Okay.  And for purposes of this
 9   hearing, can you give me about a time that he --
10              MR. BURKE:  I think it was later in the
11   '90s.
12              THE COURT:  Later in the '90s?
13              MR. BURKE:  Yes, sir.
14              THE COURT:  '98?
15              MR. BURKE:  '98 or so.  And by the way,
16   that's my best memory, and I could be corrected.
17              THE COURT:  So you're saying he was not an
18   SNM Gang member at the time of this one.
19              Anything else you can tell me about this
20   incident?
21              MR. BURKE:  That was it.
22              THE COURT:  Anything else you want me to
23   know?
24              MR. BURKE:  I've got a couple of pages of a
25   report.  And that's it, that's all I've got on that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7230

```
 1              THE COURT:  All right.  Ms. Armijo, are you
 2    going to do these?
 3              MS. ARMIJO:  Yes, Your Honor.
 4              THE COURT:  What do you have to connect
 5    this one to SNM activity?
 6              MS. ARMIJO:  Well, Your Honor, I think it
 7    kind of goes to the heart of a lot of SNM activity.
 8    As we know, a lot of things can be both personal and
 9    SNM-related.  It's not just separated, per se.  This
10    was an assault on an inmate while he was in custody,
11    and he was in possession of a shank.  It was in New
12    Mexico -- there is a New Mexico Corrections
13    disciplinary report.  And so our argument would be
14    that this is typical of what the SNM activities are.
15    And even if he was not validated at the time -- I'll
16    go back and see when he was validated -- certainly,
17    it would be something that is consistent with SNM
18    activity.
19              THE COURT:  Well, let me know when you're
20    going to argue he was validated.  When do you intend
21    to prove or establish that he became an SNM Gang
22    member?
23              MS. ARMIJO:  And, Your Honor, I will get
24    that information.  I'm checking on that information.
25              THE COURT:  Okay.  Are you going to be able
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to provide it while we go through these?  Because I
 2    think it may --
 3              MS. ARMIJO:  Yes.  I was trying to get a
 4    copy of his -- I apologize, I thought we were going
 5    to be several hours with the motion to suppress.
 6              THE COURT:  Well, take your time.
 7              MS. ARMIJO:  So I will -- I'll have Mr.
 8    Beck request his STIU file.
 9              MR. BURKE:  And I'm happy to defer this,
10    too, Your Honor.
11              THE COURT:  Okay.  Well, let's -- is the
12    next four going to sort of depend on that validation
13    date, Mr. Burke?
14              MR. BURKE:  No, I think the next two will.
15    And then I have a separate argument on what would
16    be -- if they were numbered -- 4, 5, 6, and 7.  And
17    I'd just as soon make that; because that would be an
18    argument I would make irrespective of validation.
19              THE COURT:  All right.  Let's go with 4.
20              MR. BURKE:  Early on, Edward would
21    occasionally get out of prison.  So, in '97, Edward
22    is 26; he gets out, and does the typical petty crimes
23    that a heroin addict does.  You'll see there,
24    larceny, parole violation, transferred --
25              MS. ARMIJO:  We're not going to use that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7232

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261

```
 1    one.

 2              MR. BURKE:  That clump of four?

 3              MS. ARMIJO:  We're not going to do the

 4    larceny.

 5              MR. BURKE:  Okay.  And then what about the

 6    2000 or 2001, when he was out, the parole violations,

 7    and the stolen motor vehicle and the burglary?

 8              MS. ARMIJO:  We are not going to use those

 9    either.

10              THE COURT:  So we're not going to -- the

11    Government is not going to attempt to introduce 4 or

12    5?  By "4 or 5," I mean the March 14, 1997 incident,

13    and the June 28, 2000 incident?

14              MR. BURKE:  I think two more after that.

15              MS. ARMIJO:  Yes, Your Honor, that's

16    correct.

17              THE COURT:  So I was correct, it's 4 and 5

18    on the list?

19              MS. ARMIJO:  Wait, it's 4, 6, and 7, I

20    believe.

21              THE COURT:  Okay.  So 5 is still in play?

22              MS. ARMIJO:  If I may just have a moment?

23              THE COURT:  You may.

24              MS. ARMIJO:  Five as well.

25              THE COURT:  Five is out.  And 6 is out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7233

```
 1    And did you say 7 is out?

 2              MS. ARMIJO:  Correct, Your Honor.

 3              THE COURT:  All right.  Let me confirm

 4    these with dates, so that we're real certain here.

 5    So the one that begins, "On or about March 14, 1997,"

 6    the one that begins, "On or about June 28, 2000," the

 7    one that says, "On or about November 22, 2001," and

 8    the one that says, "On or about December 26, 2001,"

 9    all four of those the Government will not seek to

10    establish?

11              MS. ARMIJO:  Correct, Your Honor.

12              THE COURT:  Okay.  Then let's go to the one

13    "On or about June 16, 2004."

14              MR. BURKE:  Your Honor, once again, that is

15    a personal beef.  And I would add a 403 argument on

16    that.  I've been doing these kinds of cases long

17    enough to know that that's a fairly typical event.

18    But it is disgusting, nonetheless.  And on a 403

19    basis, in addition to the personal beef basis, I

20    would move that the Court not allow the Government to

21    introduce that particular bad act.

22              THE COURT:  Do you know who DS is?

23              MR. BURKE:  David Saenz, S-A-E-N-Z.  NMCD

24    number -- you don't need that.

25              THE COURT:  Who is David Saenz?  Is he an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7234

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 263 7235

```
 1   SNM Gang member?
 2              MR. BURKE:  Not that I know of, Your Honor.
 3   It doesn't say that he is in the report.
 4              THE COURT:  Do you know -- and these
 5   questions are all subject to you wanting to tell me,
 6   but I'll just ask my questions -- do you know why Mr.
 7   Troup did this?
 8              MR. BURKE:  I'm sorry for interrupting,
 9   Your Honor.  He denies doing this.
10              THE COURT:  He denies doing it?
11              MR. BURKE:  Yes.
12              THE COURT:  If he did do it, do you know
13   why he did it?  We'll do O.J. Simpson.
14              MR. BURKE:  Yeah, I don't have that
15   information.  I understood there was some words being
16   exchanged.  But I don't have any information to back
17   that up.
18              THE COURT:  Nothing else to give me.
19              All right.  Ms. Armijo?
20              MS. ARMIJO:  Your Honor, we will check to
21   see who Mr. Saenz is.  That is one of the ones that I
22   did not have -- if Mr. Saenz is a gang member.  So we
23   will leave that out.  And if we find out that more
24   that would make it, we will revisit before
25   introducing it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 264 236

```
 1              THE COURT:  All right.  So it's out for the

 2     present time.  If the Government wants to come back

 3     and pursue it, they will need to give you notice and

 4     we'll need to see what evidence they have.

 5              All right.  We go then to "On or about

 6     October 22, 2009, threat to correctional officers."

 7     What do you know or want to tell me about that one,

 8     Mr. Burke?

 9              MR. BURKE:  He did start yelling at a CO,

10     and said that he -- he says, "I hang for my own.  You

11     open this door.  And send that CO in here and I'll

12     kick his ass."

13              And once again, I have been doing these

14     kinds of cases for a while.  And the whole thing with

15     COs is not necessarily gang-related.  It very rarely

16     is gang-related.  It's all about respect.  And if the

17     CO respects the inmate -- and you can kind of watch

18     the interaction here -- when the marshals -- they

19     treat our clients with respect, and the clients, you

20     know, reciprocate almost all of the time.  It's a

21     respect thing, not a gang thing.

22              THE COURT:  All right.  What do you have to

23     connect this with gang activity, Ms. Armijo?

24              MS. ARMIJO:  Your Honor, I believe that

25     this is part of Mr. Troup communicating status and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7236

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 265

```
 1    his ability to put in work with other SNM Gang
 2    members.  I believe that one of the statements that
 3    he made was, "I got some of the fucking crew, too,
 4    that are down for us."  The "us," we would say would
 5    be SNM, as opposed to just --
 6              THE COURT:  What does "crew" mean?  What
 7    does that mean?
 8              MS. ARMIJO:  I'm assuming that, in the
 9    context of the statement -- well, it could mean
10    several things.  But I'd have to look at the entire
11    report.  I just have, myself, a summary.  But it
12    could mean they have correctional officers as well
13    that are down for them.  It says, "crew," if I could
14    just have a moment.
15              THE COURT:  I guess maybe I'm a little
16    dense.  "Down for them" means what?
17              MS. ARMIJO:  I'm sorry.  He's talking on
18    the phone with another SNM Gang member.  And he's
19    talking about having some of the crew that are down
20    for them as well.  The crew could either be SNM Gang
21    members or correctional officers.  But he's actually
22    talking --
23              THE COURT:  So he's not yelling this at the
24    corrections officers?
25              MS. ARMIJO:  No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7237

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 266 7238

```
 1                    THE COURT:  He's threatening them.  And
 2      this is an intercepted phone call?
 3                    MS. ARMIJO:  Yes.
 4                    THE COURT:  And he uses the word "us"?
 5                    MS. ARMIJO:  Yes.
 6                    THE COURT:  And read me what he says about
 7      "crew," what does he say?  What's the words again?
 8                    MS. ARMIJO:  "I got some of the fucking
 9      crew, too, that are down for us."  And it's a call
10      between --
11                    THE COURT:  What do you interpret that
12      phrase to mean?  "Crew down with us," what does that
13      mean?
14                    MS. ARMIJO:  I'm interpreting it to mean
15      correctional officers that are down for them.
16                    THE COURT:  That he's got them in some
17      compromising position so that they do what he wants
18      them to do?  Is that it?  Bring drugs or something
19      in?
20                    MS. ARMIJO:  That's the way I take it.  And
21      it is a call between him and another well-known SNM
22      Gang member.
23                    THE COURT:  So the "us" he's using when
24      he's -- a phone call between two gang members?
25                    MS. ARMIJO:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7238

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 267

```
 1              MR. BURKE:  Your Honor, I think we have
 2    different reports.  I'll tell you about my report
 3    that's dated -- that's about October 22, '09 --
 4    that's the one we're talking about, right?
 5              THE COURT:  Yeah.
 6              MR. BURKE:  Okay.  "At approximately 6:18
 7    p.m. I, Brandon Grandling (phonetic), was conducting
 8    a unit check in housing unit 1-A.  At this time I
 9    entered C pod.  As I was conducting my unit check, I
10    heard what sounded like something sliding across the
11    floor on the top tier.  I went upstairs.  And I found
12    a cassette tape on the floor, and observed Edward
13    Troup attempting to obtain the cassette tape by
14    throwing a piece of cardboard, attached to a piece of
15    string, under the door."  So he was fishing and
16    trying to get a tape.  And the interception of the
17    tape, a music tape, ended up in this exchange of
18    comments.  And that's just not gang-related.  That's
19    personal:  I want my music, and you're not letting me
20    have it.
21              THE COURT:  Let me see if I could do this:
22    Can I say that Mr. Burke's October 22 incident is
23    out?
24              MR. BURKE:  Okay.
25              THE COURT:  And the Government's October 22
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7239

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268240

1    incident is in?

2              MS. ARMIJO:  Yes, Your Honor, that's fine.

3              THE COURT:  Would that work?

4              MR. BURKE:  That's fine.  But I would like

5    to get the discovery on their October 22 --

6              THE COURT:  What do you have?  Do you have

7    a number on that?  Has it been produced, or has that

8    been produced yet?

9              MS. ARMIJO:  I have that it's an audio

10   disk.

11             THE COURT:  Okay.

12             MS. ARMIJO:  But I'll look into it.

13             THE COURT:  And it has been produced?

14             MS. ARMIJO:  All of our audio disks have

15   been produced.

16             MR. BURKE:  Excuse me --

17             THE COURT:  Do you want to give the number

18   on it?

19             MS. ARMIJO:  I do not have the number.

20             MR. BURKE:  I'd like to get -- all the

21   audio disks have not been -- we talked about one of

22   Ben Clark's interview, which was not produced.  I

23   know they think they produced them all, but we have

24   not gotten --

25             THE COURT:  But you don't have any problem



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7240

1  producing this one?

2          MS. ARMIJO:  If it exists, I have no

3  problem producing it.  It looks like this was a Lance

4  Roundy 302.

5          THE COURT:  So there is a 302 on it?

6          MS. ARMIJO:  I'm assuming so, based upon

7  the fact that it said that Lance Roundy received the

8  two calls between them.

9          MR. BURKE:  I know about that.  That's not

10  '09.  That's the last one on there, May 24, Edward

11  Troup contacted James Garcia.  That's the Roundy

12  tape -- I mean, Roundy went over to NMCD and got an

13  audiotape.

14          THE COURT:  Could that be possible, Ms.

15  Armijo, that what we're calling the Government's

16  October 22, is really the May 24th one?

17          MS. ARMIJO:  It could be.  I have it down

18  in the chart that I had for summary, as the October

19  22.  But could it be that one, but -- so I'll check.

20          THE COURT:  Why don't we do this:  Why

21  don't, for the present time, I'll just take out

22  October 22.  And unless you have further argument, I

23  will leave in, for the Government's use at trial, the

24  May 24, 2011, assuming it's the incident that was

25  just described by Ms. Armijo.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7241

```
 1                 Does that work for you, Mr. Burke?

 2                 MR. BURKE:  Yes, Your Honor, it does.

 3                 THE COURT:  Does that work for the

 4     Government?

 5                 MS. ARMIJO:  Yes, Your Honor.

 6                 THE COURT:  Okay.  Then we have the March

 7     25, 2010 incident?

 8                 MR. BURKE:  I think -- you know, I look at

 9     this as verbal abuse.  And I don't look at it as

10     gang-related:  CO Andrew Romero was running showers,

11     and Edward got in a verbal yelling match with him.

12     And it's interesting, because Edward is almost always

13     so self-restrained, that he would be yelling at a CO.

14     But I didn't look at it as gang-related.  And that's

15     March 25, 2010.

16                 THE COURT:  Do you have anything to connect

17     this with SNM activities, Ms. Armijo?

18                 MS. ARMIJO:  Well, I believe that even the

19     defense will say at this point in time he was an SNM

20     Gang member.  And, of course, the SNM used fear to

21     intimidate corrections officers.  And the note that I

22     have is that he threatened to kill Andrew Romero.

23                 MR. BURKE:  That is consistent with the

24     report I have.  And that "all COs are pussies."

25                 THE COURT:  But he yelled at the time that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7242

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 271

```
 1    he was going to kill Andrew Gallegos?
 2              MS. ARMIJO:  Andrew Romero.
 3              THE COURT:  Andrew Romero.
 4              MR. BURKE:  That's accurate, Your Honor.
 5              THE COURT:  And Andrew Romero is --
 6              MR. BURKE:  CO.
 7              THE COURT:  Well, I'm going to keep it out.
 8    I'm just not -- I think we're going to have to have a
 9    little tighter connection to the SNM activities.  So
10    I will keep that out.
11              I guess if I fall into a pattern and begin
12    to question myself, I may come back to it, but --
13              MR. BURKE:  Understood, Your Honor.
14              THE COURT:  -- right at the moment I'll
15    keep it out.
16              All right.  So we've got the January 28
17    date?
18              MR. BURKE:  2010.  It's a verbal assault
19    again.  And I didn't get a report on that.  I don't
20    believe it's being withheld.  I think Mark Myers went
21    back and tried to get reports on these things.  And
22    he got several reports, but I didn't get a report on
23    January 28, 2010.
24              THE COURT:  So you don't think one exists?
25              MR. BURKE:  Well, I think Mark Myers tried
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 7243

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 244

```
 1    to get the reports.  And I think they've been giving
 2    me whatever reports Mark Myers got.
 3              THE COURT:  So this one may come in, just
 4    somebody's testimony?
 5              MR. BURKE:  It may.  Or we can hold this
 6    one in abeyance.  And if there is a report, I can
 7    reraise it for the record at some further time.
 8              THE COURT:  All right.  Do you have
 9    anything more on this one, Ms. Armijo, to connect it
10    with the SNM?
11              MS. ARMIJO:  You mean the January 28?
12              THE COURT:  The January 28.
13              MS. ARMIJO:  No.  Just the same argument,
14    certainly as before.  And I think during this time
15    period, we would have testimony that not just in
16    general -- you know, war against correctional
17    officers, but particularly around this time -- as I
18    recall, this is close in time to the Sosoya and Silva
19    incident -- and I know that several cooperators we've
20    spoken to, basically saying it was kind of an all-out
21    war at that time with correctional officers,
22    especially heightened.
23              MR. BURKE:  My counter-argument:  Edward
24    was not involved in Sosoya.  He was not involved in
25    Silva.  And when there is actually a report saying
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7244

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273

```
 1   that he had a year's good conduct, shortly before he
 2   was released in 2012, so he was not a -- by any
 3   means -- on the rampage, or participating in violent
 4   activities at that time.
 5           THE COURT:  Well, why don't I do this:
 6   I'll let the Government come back.  If they've got
 7   more specific activities, if there was a period of
 8   time in which there was an all-out war against
 9   correctional officers, and this falls within that
10   period of time and we've got people who will say it,
11   I'd be inclined to let it in.
12           But I'm going to need a little bit more
13   evidence to establish that this falls within that
14   timeframe.  Otherwise, I can't really say that it's
15   SNM-related without more information.  So I'll keep
16   it out at the present time.
17           All right.  Anything else?
18           MR. BURKE:  The last one, May 24, 2011.
19   What I can tell the Court is that Lance Roundy did go
20   to NMCD, and did get tapes -- or we have at least the
21   transcripts -- I don't think we do have the tapes of
22   the calls -- but we do have transcripts of calls
23   purported to be between Edward Troup and James
24   Garcia.  It would take too long; we'd have to get all
25   the transcripts out to do a full-blown argument on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7245

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 274

```
 1   that.  So what I think -- co-counsel and I may have
 2   to do is to write separately on that one so that we
 3   can lay out our argument a little better.
 4            THE COURT:  Well, if it is what Ms.
 5   Armijo -- and I know she's consulted with Mr. Acee
 6   for her interpretation of that call -- if it is that
 7   one, I'm inclined to leave it in.
 8            MR. BURKE:  Understood.  I may -- we may
 9   have some foundation --
10            THE COURT:  You may want to make another
11   run at it.
12            MR. BURKE:  Exactly.  I may want to take
13   another run at it.
14            And I think that brings us back to the
15   first three.  And I would be interested myself in
16   what the STIU records say is the date of validation
17   of SNM membership for Mr. Troup.  Because I believe
18   that there will be a disparate --
19            THE COURT:  Why don't we do this:  Let's
20   take this up after the break, and maybe y'all can
21   discuss it, or give Ms. Armijo a little bit more time
22   to look at it.  So why don't we take a 15-minute
23   break, and we'll come in and go another hour.
24            MR. BURKE:  All right.
25            THE COURT:  So we'll be in recess for 15
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7246

```
 1    minutes.
 2              (The Court stood in recess.)
 3              THE COURT:  All right.  We'll go back on
 4    the record.  Mr. Burke, if you and Ms. Armijo have
 5    had a chance to see --
 6              MR. BURKE:  We did.  And we think we cannot
 7    complete the rest of this hearing today.  Ms. Armijo
 8    is looking at a couple of other incidents that she
 9    may add to her list of bad acts, and she also is
10    going to look for the specific date of membership.
11    So we may have to ask the Court for a very -- and we
12    do move fairly quickly through these -- but we may
13    have to ask the Court for a short hearing on the
14    remainder of the bad acts for Mr. Troup.
15              THE COURT:  Okay.
16              MR. BURKE:  Have I stated that correctly?
17              MS. ARMIJO:  Yes.  Your Honor, that is
18    correct.
19              THE COURT:  All right.  So we'll put this
20    one aside and take up another motion?
21              MR. BURKE:  Yes, thank you, Your Honor.
22              THE COURT:  So before I forget, if Deputy
23    Mickendrow is there -- or I can hand this to one of
24    the deputies to give it to him -- it says, "On 17 D
25    the server" -- it says a lot of things on 17 D -- but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  it says, "the server must deliver a copy of a

2  subpoena to the witness and must tender to the

3  witness one day's witness attendance fee, and the

4  legal mileage allowance -- so I think you've got to

5  do a check at the same time.  That's kind of the way

6  it's done in civil cases.  So I think it has to be

7  done in criminal cases.  So I'll put that right

8  there.  If y'all would give that to Deputy

9  Mickendrow.  I don't think it's an advance, it's just

10  the way you've got to do it.  You've got to hand them

11  a check at the time.

12          All right.  So the next motion -- let me

13  put this down here -- the next motion I think we have

14  up is Tab 17, which is Arturo Arnulfo Garcia's motion

15  in limine regarding bad acts.  Do you want to take up

16  the Government's offer to meet with them?

17          MR. BLACKBURN:  Yes, Your Honor.

18          THE COURT:  All right.  So we'll put that

19  aside.

20          All right.  I'm going now to Ms. Wild's Tab

21  18, which is Mr. Chavez' motion in limine regarding

22  alleged bad acts.  Do you want to take them up now,

23  or do you want to take up the Government's offer to

24  meet with you and go over them, Mr. Granberg?

25          MR. GRANBERG:  We'll take up the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7248

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 277

```
 1    Government's offer, Your Honor.
 2              THE COURT:  All right.  So we will put that
 3    one aside.
 4              So then we go to No. 20, Tab 20, Ms. Wild's
 5    Tab 20, which is then, Joe Gallegos' motion in limine
 6    regarding alleged bad acts.  So --
 7              MR. BENJAMIN:  I'm going to add that to my
 8    list of things to talk to Ms. Armijo about, Your
 9    Honor.
10              THE COURT:  All right.  Let me see, I may
11    have these -- I skipped 19, which I think is Mr.
12    Patterson's motion in limine regarding bad acts.
13              MR. LAHANN:  I'd just as soon get it over
14    with today, Judge.
15              THE COURT:  Do you want to get it over
16    with?
17              MR. LAHANN:  Yes.
18              THE COURT:  It's not a root canal.  Some
19    things get better with age.
20              Let's see what you've got.  Let me get to
21    the letter.  It wasn't attached.  So somebody is
22    going to have to hand it to me, and I make a copy.  I
23    don't think I've got --
24              MR. HANISEE:  I don't have a hard copy.
25              THE COURT:  You didn't attach a letter to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7249

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 278

```
 1    your motion.  So I'll need a copy.
 2              MR. LAHANN:  I didn't have a letter from
 3    the Government.  I filed a motion.  I have the letter
 4    now.
 5              THE COURT:  You do have the letter now?
 6              MR. LAHANN:  I do, yes.
 7              THE COURT:  Do you need us to make a copy?
 8              MR. LAHANN:  No, I have the electronic
 9    copy.
10              THE COURT:  So I can use this one, Mr.
11    Beck?
12              MR. BECK:  Yes, Your Honor.
13              THE COURT:  All right.  So let's take up
14    the one on December 28.  If you want to speak to
15    that, Mr. Lahann.
16              MR. LAHANN:  Yes, Your Honor.
17              Mr. Patterson had a bladder infection,
18    which ultimately resulted in him being rushed to the
19    hospital and having emergency surgery to save his
20    life.  He had been complaining about the pain and
21    discomfort and the fever for approximately a week
22    before "medical" would even see him and try to get
23    him a catheter.
24              During that time, he became very feverous.
25    He doesn't deny that he was pretty upset, and may
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

```
 1    have mouthed off to a corrections officer.  But it
 2    had nothing to do with any gang-related activity,
 3    Judge.
 4              THE COURT:  All right.  Mr. Beck, Ms.
 5    Armijo, on the December 28, 2000 incident?
 6              MS. ARMIJO:  Your Honor, I believe we would
 7    have a cooperator -- I know that previously Lupe
 8    Urquizo said that during this time period especially
 9    as well, that they were fighting a great deal with
10    correctional officers.  I believe that would be a
11    great defense to this.  But given what he's saying,
12    and the verbal gestures, he was actually found guilty
13    of the verbal abuse or gestures, and disobeying a
14    lawful order, we would submit that it's SNM activity.
15              THE COURT:  Let me ask you this, Mr.
16    Lahann:  You can tell me these if you want to, and if
17    you don't, you don't have to, but are you going to be
18    contesting that Mr. Patterson was an SNM Gang member?
19              MR. LAHANN:  Absolutely.  He's never been
20    validated.
21              THE COURT:  Okay.  And what's your proof on
22    that going to be, Ms. Armijo?
23              MS. ARMIJO:  Testimony, Your Honor.
24              And, as you know that Daniel Sanchez has
25    never been validated either -- several people have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 281 of 252

 1   not been validated.  Especially, you need to put in

 2   context when the murder that he's charged with

 3   occurred, which is in 2001.

 4            As you may recall, 1998, 1999, STIU unit is

 5   just starting; the whole validation process is just

 6   starting.  And so that was all brand-new.  So it's

 7   not a surprise that several people going back to that

 8   time period are not technically validated.

 9            But we would have testimony that he was an

10   SNM Gang member.

11            THE COURT:  So you will have testimony from

12   one or more sources saying his name, that he's a gang

13   member?

14            MS. ARMIJO:  Yes, Your Honor.

15            THE COURT:  On this timeframe, in which

16   there was -- I think you described it as a war with

17   corrections officers -- tell me a little bit more

18   about that.  What was going on that caused this war,

19   and what did the war entail?

20            MR. BECK:  I can't remember exactly what

21   was said.  My recollection from the first trial is

22   that SNM was being, I think, disrespected by the COs,

23   and they were being put in -- I want to say ICU, but

24   it's like ISU -- Intensive Supervision Unit, or

25   something to that effect.  So they were housing all

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7252

1    the SNM together under restrictive conditions.  It

2    may have been the first time.  So there was sort of

3    an outstanding order to battle with, hit, assault COs

4    anytime anyone could during that time.  And that this

5    was the 1999 to 2000 time period.  And I think it

6    occurred again later in the 2010 time period.  So

7    this would have been under that first time period.

8              I know Lupe Urquizo testified about it in

9    the first trial.  I don't know if he will testify.  I

10   mean, he would testify to that again.  But I don't

11   know.

12             THE COURT:  This is very late in 2000.  Did

13   it last the entire year of 2000, or did it drop off

14   sometime in 2000?

15             MR. BECK:  You know -- I don't know.  I

16   don't know we got that precise.  So I think -- I

17   mean, I think it's fair to say that if that testimony

18   doesn't come in, and we don't have that, then we keep

19   it out.  But if that is the testimony, then I think

20   it supports that this would be an enterprise

21   activity.

22             THE COURT:  And how you intend to sequence

23   your evidence is -- is Mr. Urquizo going to testify

24   again in this trial?

25             MR. BECK:  I don't know.  He's on the list



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of cooperators with whom we're going to meet once

2    we're out of court.  So I can't say that right now.

3    Next week my approach may be different.

4          But if it's -- let me put it this way:  If

5    that's his testimony, and we don't have that from

6    other people, and we think it's a basis to get this

7    bad act in, then he may.

8          THE COURT:  I guess what I'd be inclined to

9    do is to say this is conditional.  I'll let it in if

10   they can cover that time period.  But if they don't

11   before -- I need to hear it before -- I don't need to

12   have a promise -- I need to hear it in court -- that

13   throughout the entire period of 2000, including

14   December 28, it will need to get that specific --

15   because that's getting pretty late in the year -- if

16   they say they're at war, I will probably leave that

17   in, because he was found guilty, so it's a pretty

18   good indication that something occurred there.  And

19   so I'd let it in.  But if they don't establish it,

20   I'll keep it out.

21         MR. LAHANN:  Yes, Your Honor.

22         THE COURT:  What do you know about the May

23   7, 2001 incident?

24         MS. ARMIJO:  Your Honor, we will not seek

25   to get that one in.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                  THE COURT:  All right.  So that one is out,
 2       okay.
 3                  And what do you know, Mr. Lahann, about the
 4       October 4, 2001 incident?
 5                  MR. LAHANN:  Your Honor, my client was
 6       never found guilty of that, and he has no memory of
 7       that.
 8                  THE COURT:  Do you have anything -- this is
 9       not going to fall within that 2000 range, so do you
10       have anything that's going to link this up --
11                  MR. BECK:  I think this would be
12       conditional on -- again, I don't remember what Lupe
13       Urquizo said, and how long it lasted.  So I think it
14       would be conditional on us having evidence that there
15       was that battle with the COs during this time period.
16       If we don't have that, we don't try to get this in.
17                  THE COURT:  But it's not your memory that
18       he extended it to this late in October?
19                  MR. BECK:  It's not, as I sit here.
20                  THE COURT:  All right.  So at the present
21       time, the October 4, 2001 is out.  And if the
22       Government wants to seek to reinsert it, they'll need
23       to approach and establish it.
24                  MR. LAHANN:  Thank you, Your Honor.
25                  THE COURT:  All right.  Mr. Lahann, what do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you know about the October 4, 2016 incident?

2              MR. LAHANN:  I've heard some testimony, I

3    think, in court from Marshal Mickendrow.  But I

4    haven't seen any video.  My client denies that he did

5    this.

6              THE COURT:  Okay.

7              MR. LAHANN:  And it's out of character for

8    my client.

9              THE COURT:  Ms. Armijo?

10             MS. ARMIJO:  We would have several agents

11   who were in the room when it occurred.

12             THE COURT:  Just say it's there?

13             MR. LAHANN:  Your Honor, can we have the

14   video to that?  If it happened in the courtroom, I

15   assume there is a video.

16             MS. ARMIJO:  I don't think there is video

17   in a federal courtroom.  I don't know if there is or

18   not, but I believe that -- you know, I think that we

19   had asked, and were told that we wouldn't be able to.

20             THE COURT:  You know, I've been educated on

21   this before.  And it may have been in this case, it

22   may have been in another.  I'll have Ms. Bevel

23   contact Ms. Wild.  I have a folder or file on this.

24   I think the answer is no.  And if we do have a

25   camera, it's not trained on anything that would pick

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7256

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 285

```
 1   up out there.  I can't remember what it's trained on.
 2   But I don't think that there is a camera.
 3            Now, I don't know what those things are up
 4   there.  Maybe I've just never been curious enough.
 5   But I've had this question come up, and I don't think
 6   it's there.  But we'll get that file.  I'll read you
 7   what I've been told.  And of course, probably it
 8   relates to the Albuquerque courthouse.  And I'll make
 9   sure that it also applies down here.  But I think
10   it's a district-wide policy.
11            MR. LAHANN:  I would still --
12            MS. ARMIJO:  And I think it happened in
13   Albuquerque, Your Honor.
14            THE COURT:  Do you think it was this case?
15            MS. ARMIJO:  It was this case.
16            THE COURT:  When I was given the
17   information, you think it's this case, and it's this
18   incident?
19            MS. ARMIJO:  It was a hearing up in
20   Albuquerque in your courtroom, Your Honor.  I don't
21   know if it was in your courtroom or in the big
22   courtroom.
23            THE COURT:  Rio Grande.
24            MS. ARMIJO:  It was in Albuquerque.
25            MR. LAHANN:  Your Honor, I would still
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7257

1    argue that, you know, if you look at the gap from

2    2001 to 2016, there is absolutely no evidence that my

3    client was involved with SNM, did anything for SNM.

4    And I think it's a common denominator of prison

5    culture to disapprove of other inmates who testify

6    against inmates.  I don't think that's unique to SNM.

7           So I don't think it proves that he's got

8    anything to do with the enterprise.  And I would

9    object to that on relevance grounds.  It's more

10   prejudicial than probative.

11          THE COURT:  Well, I'll allow it.  If he's

12   in this case, and they have evidence that he's an SNM

13   Gang member -- which it sounds like they're going to

14   introduce some evidence of that -- then him yelling

15   in a federal courthouse, "rat" about people that are

16   testifying, other SNM Gang members in this case, I

17   think it's close enough related to SNM activities

18   that I'll leave that one in.

19          MR. LAHANN:  And that's it.

20          THE COURT:  All right.  Anything else, Mr.

21   Lahann?

22          MR. LAHANN:  That's it, Judge.

23          THE COURT:  So I guess at the present time,

24   the first three are out; the last one is in; and the

25   first one is -- the Government may be able to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7258

```
 1   establish it, but they'll have to get some evidence
 2   in.
 3            MR. LAHANN:  Thank you, Your Honor.
 4            THE COURT:  Thank you, Mr. Lahann.
 5            Give me a second.  I need to put Mr.
 6   Troup's back into the correct folder.
 7            So I think now we're ready for Mr. Joe
 8   Gallegos'.  So Mr. Benjamin, did you tell me you
 9   wanted to talk to the Government; put it in with the
10   things you need to talk to the Government about?
11            MR. BENJAMIN:  Yes, Your Honor.
12            THE COURT:  All right.  So we'll put that
13   aside.
14            MR. SOLIS:  Your Honor --
15            THE COURT:  Yes.
16            MR. SOLIS:  -- in this hearing, Mr.
17   Benjamin is going to take a couple of hours I think I
18   understood.  I do have one motion that I was going to
19   pinch hit or come in out of the bullpen for, Mr.
20   Castle, on disclosure of some mental health records
21   for at least three cooperators.  I don't think that
22   would take much longer than 10 minutes, I don't
23   suppose.  But --
24            THE COURT:  Let me see, because there has
25   been a lot of work on the schedule.  So if people are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   agreeable to that, we can take Mr. Solis' issue up.
 2   If not, then I'm going to stay to the schedule that
 3   people agreed on.  How do the defendants --
 4              MR. SOLIS:  Thank you, Your Honor.
 5              THE COURT:  -- feel about it?  Okay?
 6   Defendants saying okay?  Is the Government okay?
 7              MR. BECK:  That's fine.
 8              THE COURT:  All right.  Mr. Solis, tell me
 9   the issue.  Is this a motion that's been filed, or is
10   this --
11              MR. SOLIS:  Yes, Your Honor.  It's a motion
12   that's been filed.  I thought I had filed a motion to
13   join.  I didn't realize that -- as you know, I'm
14   catching up on these pleadings -- but evidently
15   Mr. Chavez, Mr. Garcia, and Mr. Gallegos joined in a
16   motion filed by either Mr. Troup or Mr. Garcia, Billy
17   Garcia.  And so the motion, Your Honor, is --
18              THE COURT:  Let me see if somebody else can
19   help me.  Do you know what motion he's referring to?
20              MR. SOLIS:  1908, Your Honor:  Restricted
21   motion to obtain physical or mental health records.
22   Yes, 1908.
23              THE COURT:  Do you know when that was
24   filed?  Was that filed very recently?
25              MR. SOLIS:  March the 9th of 2018.  Today
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7261

 1    is the 14th.

 2              THE COURT:  Is 1908 scheduled?

 3              MR. SOLIS:  It's not scheduled.  So if the

 4    Court wishes to schedule it, then maybe tomorrow or

 5    the day after, we can do that.

 6              THE COURT:  Hold on a second.  Let me look

 7    at my stack.  We can do that.

 8              MR. SOLIS:  Your Honor, Mr. Castle tells me

 9    that Mr. Lujan's lawyer will be here tomorrow, so

10    perhaps we can schedule it then.

11              THE COURT:  All right.  Everybody want to

12    just wait till tomorrow on it?

13              MR. BECK:  Yes, Your Honor.  The United

14    States does.

15              THE COURT:  All right.  So we'll wait.  But

16    it's 1908?

17              MR. SOLIS:  1908, filed March the 9th.  And

18    it's styled, as I mentioned, "Restricted Motion to

19    Obtain Physical and Mental Health Records."  I

20    believe it's Mr. Garcia and Mr. Troup's motion

21    through their counsel.  And I had an interest in it,

22    in that it pertains to at least two witnesses that

23    are critical to our case, Your Honor.

24              THE COURT:  Okay.  If it wasn't scheduled,

25    I don't think we printed that out for me.  I'm not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7261

```
 1    seeing 1908.
 2              MR. SOLIS:  I think I saw.  It was not
 3    scheduled, because I too was looking for it.  I don't
 4    think it is, frankly.
 5              THE COURT:  Okay.  All right.  I see it.
 6    Okay.  I'll try to take a look at it and be ready for
 7    it tomorrow.
 8              MR. SOLIS:  Thank you, Your Honor.
 9              THE COURT:  All right.  Mr. Cooper, Mr.
10    Castle, are we ready for your motion to dismiss?
11              MR. CASTLE:  Your Honor, the Court may
12    recall, after the Court gave us the comments about
13    how it was thinking about this, we'd suggested that
14    that be kind of the end of the hearings, and that we
15    try to plow ahead on the remainder.  I think, both
16    Mr. Benjamin and the Government have witnesses here
17    on a motion to suppress, that might be best queued up
18    now, so that we could get those witnesses on their
19    way.
20              THE COURT:  Okay.  Is that the way to go,
21    Ms. Armijo?
22              MS. ARMIJO:  No, Your Honor.  Actually, I
23    spoke to Mr. Brock (sic), the witnesses for the
24    motion to suppress are tomorrow.  We just --
25    Mr. Brock handed me a transcript for the motion to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7262

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 291263

1   suppress the statements.  And I haven't had a chance

2   to review it since we don't have the transcript.  We

3   just have recordings.  And I conferred with Mr.

4   Benjamin, and we released that witness.  And I

5   haven't had a chance to review the transcript anyway.

6          THE COURT:  All right.  So your motion to

7   dismiss is the preindictment delay, right?

8          MR. CASTLE:  Yes.

9          THE COURT:  So is this going to also

10  apply -- Mr. Burke and Ms. Harbour-Valdez, is it

11  going to apply to yours?  Do you want to put it at

12  the end as well?

13         MR. BURKE:  That's what I thought we were

14  going to do.

15         THE COURT:  All right.  So let me put those

16  aside.

17         MR. CASTLE:  Your Honor, I just conferred

18  with the Government.  They have some motions in

19  limine.  I don't know if the Court has those in its

20  packet.  But if it wanted to use this time, it might

21  be something we could do.

22         MR. BECK:  We could also move to Document

23  1318, which is Joe Gallegos' motion to dismiss,

24  preindictment delay.  I think that's a pretty --

25         MR. BENJAMIN:  I'm just on the pleadings,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7263

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7264

1    Your Honor.

2            MR. BECK:  That one is on the pleadings?

3            MR. BENJAMIN:  A little bit of argument,

4    yes.

5            MR. BECK:  I think we could move to that

6    one, then, this afternoon.

7            THE COURT:  Okay.  That's what I understand

8    is marked as Tab 23, which is 1318; is that correct,

9    Mr. Benjamin?

10           MR. BECK:  Yes, Your Honor.

11           MR. BENJAMIN:  Yes, Your Honor.

12           THE COURT:  So we'll go to that one.

13           MR. BENJAMIN:  Your Honor, I would start

14   this off by asking the Court to remember something

15   that I can't, and so I will have to go back and look

16   at the transcript of this hearing at some point in

17   time.  But we were arguing a motion, I believe, on

18   Monday afternoon; we were discussing an issue on

19   Monday afternoon.  And the issue that was raised --

20   and that's what -- in copying Mr. Castle's motion for

21   the preindictment delay -- is my attention on

22   bringing to the Court's attention -- occurred with

23   Counts 4 and 5 -- is that, during the pendency of

24   these investigations, what has been preserved has

25   been all the bad stuff, or good stuff -- depending on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7264

 1   which side of the line you're standing on -- but none

 2   of the good stuff or bad stuff -- depending on the

 3   other side of the line you're on.

 4          And a specific example -- and this came to

 5   me after the filing of this motion, Your Honor, so I

 6   will move to supplement the limited argument that

 7   I'll make -- is there are jail calls that have been

 8   received from Joe Gallegos that they're alleging Joe

 9   Gallegos committed for bad acts, from 1995.

10          So information has been saved and retained

11   that can only be styled as "for later use."  And that

12   is exactly what I think happened in the Adrian Burns

13   murder.  I have been attempting, and today received a

14   call from one of the witnesses and an Assistant

15   District Attorney -- and I don't know how helpful

16   he'll be -- in attempting to determine what happened

17   at the preliminary examination hearing that was held

18   on December 6, in 2012.  And that's the hearing where

19   Judge Jim Naranjo --

20          THE COURT:  Is he a district judge?  Was he

21   a district judge?

22          MR. BENJAMIN:  No, he was a New Mexico

23   State Magistrate Judge.

24          THE COURT:  A magistrate judge does

25   probable cause hearings for cases like this?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7265

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 294    7266

```
 1                   MR. BENJAMIN:  Yes, Your Honor.
 2                   THE COURT:  Aren't such people, many of
 3       them in the state, not lawyers.
 4                   MR. BENJAMIN:  I believe -- I don't know.
 5       Many would imply more than -- I don't know what the
 6       percentage is.  I know some are not.  I believe Judge
 7       Naranjo, I know, is a lawyer, because of some other
 8       research I've done.
 9                   THE COURT:  And he was here in Las Cruces?
10                   MR. BENJAMIN:  No.  He was in Socorro, Your
11       Honor.
12                   THE COURT:  In Socorro.
13                   MR. BENJAMIN:  And I raise that because
14       what I think is important about that is that the New
15       Mexico State Police took that quote/unquote loss, and
16       continued proceeding forward.  But nobody preserved
17       the bad information that came out of that probable
18       cause determination.  And that would be, in my
19       opinion, the transcript.  Because that's prior
20       testimony that was given by law enforcement officers,
21       that was determined to be -- not credible, I guess,
22       is the best way to put it -- and I understand there
23       was further admonishments that were made on the
24       record.
25                   And that puts us in a position where the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7266

1    Government, in continuing to investigate and

2    prosecute this case, I believe, had a duty to

3    preserve information.

4            I realize the case law doesn't --

5    essentially, requires an ill motive to attach to

6    that.

7            But it becomes impossible to defend cases

8    that later on, no further evidence was ever

9    developing, but yet, I'm still going to be hauled

10   into court on a case that the State of New Mexico, as

11   late as December of 2015, based upon documents

12   produced by the United States Government, decided was

13   not worth signing a search warrant on.

14           THE COURT:  Well, let me ask how New

15   Mexico -- I assume that that judge -- a magistrate

16   judge's order could be appealed; correct?

17           MR. BENJAMIN:  Could be.

18           THE COURT:  So what must have happened here

19   is that, rather than appealing it -- which it doesn't

20   appear it was done; correct?

21           MR. BENJAMIN:  The more usual -- and I

22   believe you could appeal that, Your Honor.  But the

23   more practical position that most district attorneys

24   take is simply seeking an indictment.

25           THE COURT:  Okay.  Rather than going out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7267

1    and getting more evidence?

2            MR. BENJAMIN:  Go out and get more evidence

3    and return and get an indictment.  And that's the

4    normal course, if you're lucky enough.

5            THE COURT:  If the magistrate denies it,

6    you immediately get a Grand Jury, and use it to

7    investigate?

8            MR. BENJAMIN:  No, the police officers will

9    continue the investigation, will return to the

10   district attorney's office and say:  I fixed problem

11   A, can we go to the Grand Jury now?

12           THE COURT:  Go to the Grand Jury, okay.

13           So the fact they didn't appeal is not

14   terribly unusual?

15           MR. BENJAMIN:  That's not unusual in the

16   least, Your Honor.

17           What is unusual is that, in December of

18   2015, an assistant district attorney in Socorro

19   County and Valencia County refused to sign Agent

20   Madrid's search warrant for 4 Aaron Court, based upon

21   what she was relating to them was new information,

22   which is the Jason Van Veghel cooperator statements

23   that we're going to hear from.

24           And so the concern that I have is that I

25   have no way to know or cross-examine officers who had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7268

1    an opportunity to be cross-examined -- and I've

2    talked to the attorney who cross-examined them, and

3    he remembers they did exceedingly bad and

4    contradicted each other -- but yet, I'm going to be

5    thrown in a position where they get a do-over, for

6    lack of a better term, because that -- and my main

7    problem here, Your Honor, is the transcript.  Because

8    that was information that was recorded that should

9    have been preserved.  And so the failure to preserve

10   that transcript, or to request that transcript -- and

11   I don't think the district attorney's office

12   requested that transcript, because he didn't want

13   it -- and the defendant was appointed, and so at the

14   end of the that time that case ended, so it's allowed

15   to languish.

16          But the party that I believe should have a

17   responsibility and should not get a free pass on what

18   I believe is not credible testimony, because that's

19   the only thing I think at the time this investigation

20   occurred and it went to the magistrate, it was solely

21   based upon, essentially, a search warrant; the

22   testimony -- and it was based upon what, at that

23   time, appeared to be a fairly solid case.

24          Since that time -- and this is what I

25   believe plays into the destruction of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7269

```
 1   transcript -- since that time, it's come to be
 2   learned that the blood doesn't match, there is
 3   multiple rifles that were recovered that don't match.
 4   There is, essentially, no way to link them, and there
 5   is no history of them going to that area.  There is a
 6   long list of items.
 7           But the United States Attorney's Office is
 8   put back in the same position that the state was
 9   prior to having lost, or been given a black eye when
10   their officers testified.  And so I'm put at a
11   disadvantage, because the state was there; knows what
12   occurred; knows what mistakes to fix, but I don't.
13           THE COURT:  Okay.
14           MR. BENJAMIN:  And, Your Honor, I would
15   just point the Court to --
16           THE COURT:  So it's the transcript that
17   you're really needing?
18           MR. BENJAMIN:  It's the gamesmanship that I
19   think could be fixed by the transcript.  That's the
20   only way I can phrase it, Your Honor.
21           THE COURT:  Why do you think there is
22   gamesmanship?  What is it -- I'm missing the game.
23           MR. BENJAMIN:  Your Honor, my belief from
24   my discussing this with people who attended the
25   preliminary detention hearing, is that what occurred
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7270

```
 1    at that hearing was that the officers testified --
 2    testified and conflicted themselves -- based upon
 3    their -- and the word that was used was timeline --
 4    and I, in reviewing the evidence, can't find what
 5    they conflicted themselves on.  But their testimony,
 6    along with Amber Sutton's testimony -- and all three
 7    of these people, I believe, will testify here -- was
 8    such that it led somebody to no bill a murder
 9    charge -- or not no bill, and I'm once again using
10    the same term that Ms. Torraco used that was
11    incorrect -- but find that there was no probable
12    cause to proceed on an open count of murder, which --
13    as I assume this Court can imagine -- is not
14    something that happens on a daily basis in the State
15    of New Mexico.
16            THE COURT:  And so what you're saying is
17    the transcript would solve that problem, because you
18    would know what the same problems were that the
19    magistrate knew?
20            MR. BENJAMIN:  That the New Mexico State
21    Police knows are the problems.
22            THE COURT:  The New Mexico State Police.
23            MR. BENJAMIN:  And, Your Honor,
24    respectfully, I believe, can then fix.  And that's
25    where I believe that it becomes a prejudicial issue
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7271

 1   to the defense.

 2          THE COURT:  How do I fix it, other than

 3   denying or doing something along those lines?

 4          MR. BENJAMIN:  Your Honor, as far as

 5   remedies go --

 6          THE COURT:  Yeah.

 7          MR. BENJAMIN:  -- I think that that is a --

 8   it's a tough call, because I think the term it's a

 9   death knell is not appropriate -- and in thinking

10   long and hard about this, Your Honor, I think that

11   the correct remedy is that this -- I keep coming back

12   to the same remedy, Your Honor -- this should not be

13   allowed to be used solely for what I believe it is

14   being offered for, which is prejudicial effect on the

15   Gallegos brothers in this trial.  And so --

16          THE COURT:  You probably told me, and I was

17   trying to get my -- you know, understand the facts --

18   what happened to either the tape or the transcript?

19          MR. BENJAMIN:  It was just -- there is a

20   letter that's attached to this motion, Your Honor,

21   stating that it was destroyed as a matter of the file

22   retention policy.  And there is nothing -- it's the

23   preservation of that audiotape that I believe should

24   have been done; not there was nothing malicious in

25   the destruction of that audiotape.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 301273

```
 1                THE COURT:  And who would be to blame?  The
 2    Court?  Or who is to blame for the destruction of the
 3    transcript?
 4                MR. BENJAMIN:  I think that that
 5    destruction of the -- the failure to request and
 6    preserve that transcript, Your Honor, I think
 7    ultimately that falls upon the State of New Mexico,
 8    that is then imputed to the United States Attorney's
 9    Office, because they are the ones that are choosing
10    to prosecute this.
11                THE COURT:  And you're saying that, you
12    think the problem is the standard here is so high,
13    you've got to establish the maliciousness, and those
14    sort of things, and you just don't have anything on
15    that score?
16                MR. BENJAMIN:  Yes, Your Honor.  And I
17    firmly come forward with that, Your Honor.  And so
18    that's where I come up with, that I don't think that
19    the remedy should be to prevent them from doing this.
20    I think the remedy should probably be something to
21    prevent them from doing it -- the phrase was used a
22    thinly veiled case that it is -- it's a very weak
23    case.  And I believe it's being used for prejudicial
24    effect in the Trial 2.
25                THE COURT:  All right.  Anything further,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7273

```
 1   Mr. Benjamin?

 2            MR. BENJAMIN:  I think that's it, Your

 3   Honor.  I appreciate the Court's time.

 4            THE COURT:  All right.  Does any other

 5   defendant want to speak on this issue before I hear

 6   from the Government?

 7            Mr. Beck?

 8            Can I ask you a question, Mr. Benjamin?

 9   Come on up; it's a very simple question.  Mr.

10   Benjamin, did the United States ever possess this

11   transcript?

12            MR. BENJAMIN:  Not in my belief, Your

13   Honor.

14            THE COURT:  Did you want to say something,

15   Ms. Torraco?

16            MS. TORRACO:  Just, Your Honor, that Andrew

17   Gallegos joins in this motion.  I don't have anything

18   to add.

19            THE COURT:  All right.  Thank you, Ms.

20   Torraco.

21            All right.  Mr. Beck.

22            MR. BECK:  I think probably the first and

23   last questions are really key, and the last question

24   you asked was:  Did the United States ever possess

25   the transcript?  And the answer to that is no, it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7274

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 303

```
 1    didn't.
 2              THE COURT:  Let me ask this:  You know, a
 3    lot of times I'm sitting here and I'm having a
 4    suppression hearing, I've got State Police on the
 5    stand, so if the State Police did something wrong,
 6    the United States cannot use the evidence, even
 7    though the United States didn't have any involvement
 8    at all in the stop out on I-40.
 9              MR. BECK:  Right.  Sure.
10              THE COURT:  How does that play into
11    something like this?
12              MR. BECK:  I think the question is whether
13    the State Police did anything wrong.  And I think the
14    answer to that --
15              THE COURT:  So the focus is still on the
16    State Police?
17              MR. BECK:  Sure.  And the answer to that is
18    no.  I mean, so the way to analyze this question here
19    is to put -- you know, let's just do a hypothetical,
20    where the New Mexico State Police isn't involved, and
21    it's just the United States, and so, say, the FBI --
22    so we don't have to look at their actions being
23    imputed to the Government, or anything like that --
24    let's just say that the FBI was doing this.  The FBI,
25    under the case law, has no obligation -- the United
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7275

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 304 of 276

```
 1    States has no obligation to go out and collect
 2    information which it doesn't possess in its custody,
 3    possession, or control.
 4          So that would be the court file here, which
 5    would include the recording and the transcript.  The
 6    FBI would have no obligation -- the United States
 7    Attorney's Office would have no obligation to go and
 8    get that information, which is not in its possession,
 9    custody, and control.  The Court's held that many
10    times.
11          It's the same analysis here.  Certainly,
12    the state courts cannot be imputed as part of the
13    prosecution team in this case.
14          THE COURT:  Why do you think that the court
15    got rid of it?  What's going on with the court to
16    cause them to --
17          MR. BECK:  That's where I said at the
18    beginning, that the first and the last questions Your
19    Honor asked were the most important.  The first
20    question Your Honor asked was whether it was a
21    magistrate judge, who Your Honor has experience with,
22    as not being lawyers.
23          The magistrate judge in this case didn't
24    understand -- he didn't believe that he could rely on
25    hearsay in this preliminary hearing.  And so, when
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7276

1    the New Mexico State Police agents came in and

2    testified, he was unable to find probable cause

3    because he didn't think he could rely on hearsay.

4    And so he thought that the evidence that they were

5    providing to him was not competent because it's

6    hearsay.  So that's the reason that there was no

7    probable cause found.

8         So I think Mr. Benjamin's classification

9    was it was determined to be not credible.

10         THE COURT:  What was it about Mr.

11    Benjamin -- he was saying that the officers were so

12    inconsistent that it caused the magistrate to throw

13    out the case.  Is there a basis for that?

14         MR. BECK:  Not to my knowledge.

15         And this sort of goes to the preindictment

16    delay, destruction of evidence things.  That's not

17    the right box to fit this motion into.  Because the

18    magistrate judge is available, if Mr. Benjamin wants

19    to subpoena him here for trial, to testify about what

20    he found not credible.  The magistrate judge is

21    available.

22         The New Mexico State Police agents who

23    testified there are available.

24         THE COURT:  So you think there is some

25    substitutes for not having a transcript?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7277

1           MR. BECK:  Sure.  Yes.  And, again, it goes

2     to -- I mean, that goes to the preindictment delay

3     factor.  There is no deceased witnesses.  There is no

4     witnesses who cannot be found anymore.  There is no

5     documents that cannot be produced anymore.  All it is

6     is that there was a transcript that was destroyed

7     pursuant to regular destruction.

8           THE COURT:  Is that what they had?  They

9     just had a regular --

10           MR. BECK:  That's my guess, a recording.

11     So I've got a couple of things that I'll enter into

12     evidence here, I'll show to Mr. Benjamin.  I'll have

13     to mark them.  The first is analogous to what he

14     attached as Exhibit B to his motion.

15           Excuse my highlighting on here, but it will

16     probably help the Court when it zooms in here.  So

17     this is the case register of actions here, the docket

18     as I would call it.  And so it says on the bottom

19     there that the file was destroyed November 13th of

20     2014.  So I'll mark that as --

21           THE COURT:  So it doesn't look like there

22     is any hanky panky here; it just looks like they were

23     routinely going through and cleaning it out?

24           MR. BECK:  That's right.

25           THE COURT:  So, in that case, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7278

1    Benjamin's argument largely is the State Police

2    should have done something affirmative to get this

3    material?

4              MR. BECK:  Sure.  And I would -- I mean --

5    well, I would disagree with that.  But I don't --

6              THE COURT:  I know you disagree, but that's

7    what basically his argument becomes?

8              MR. BECK:  Yes.

9              The second is:  I'm sorry, it's not

10   anywhere near official, but it's the best I can do

11   last night.  It's a printout from Westlaw of New

12   Mexico Statutes annotated, Section 35-1-1, which

13   talks about the magistrate court.  That's where this

14   was heard.

15             I think it's helpful, because it talks

16   about the personnel being subject to all laws and

17   regulations applicable to other state offices, which

18   will become evident why that's important in a second.

19   I'll mark that as Government's Exhibit 2.

20             And I hope I'm sort of following the

21   Court's wishes here, and delineating different

22   exhibits for the different motions.

23             THE COURT:  Yeah, you are.

24             MR. BECK:  So, as I said, that was

25   important.  Because then if we move to the New Mexico

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    rules, this is repealed -- it was repealed October

2    1st of 2015, which is important.  Because, as I said

3    in Exhibit 1, the destruction took place November of

4    2014.  So this was the applicable regulation for part

5    218 of Chapter 17 of Title 1, which is New Mexico

6    magistrate courts, the judicial records retention and

7    disposition schedules.

8           And so, if we go to part 1.17.218.121, the

9    criminal case file; it says that the criminal case

10   file shall be retained for one year after case

11   dismissed, entry of judgment, final order.  And so

12   that would have only been a year after the case was

13   dismissed.  I marked this part as Government's

14   Exhibit 3.  I'll leave my sticky note on there since

15   that's part of it.

16          And then the last part, the last exhibit I

17   had is just the general government administration

18   rule.  It's the retention and disposition of public

19   records for functional records retention and

20   disposition schedules for the state government.

21          Since the magistrate court is a lower

22   court -- and I believe this is the operative New

23   Mexico Code, New Mexico Regulation, which is

24   1.21.2.613.  And again, the retention schedules

25   remain, and it should be destroyed one year from the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7280

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 309

1   date that the file was closed.  And I'm going to mark

2   this, as I said, as Government's Exhibit 4, which is

3   the currently applicable New Mexico Administrative

4   Code.

5           I'll provide these to Mr. Benjamin to take

6   a look at while I continue.

7           MR. BENJAMIN:  No objection.

8           THE COURT:  All right.  Do you want to move

9   all those in, if he has no objection?

10          MR. BECK:  Yes, Your Honor.

11          THE COURT:  Any objection from anybody

12  else?  All right.  So Government's Exhibits 1, 2, and

13  3 -- did I miss one?

14          MR. BENJAMIN:  I thought there were 4.

15          MR. BECK:  1 through 4.

16          THE COURT:  All right. 1 through 4 will be

17  admitted into evidence.

18          MR. BECK:  So, to the extent that this

19  would be a destruction of evidence claim, I think it

20  would fit -- rather than under the preindictment

21  delay, although I guess that could be one factor, it

22  may also fit under destruction of evidence, the

23  Trombetta or Youngblood cases that the Court has

24  heard a lot about in this case.

25          And I'll cite the Court to -- when you're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7281

1   talking -- again, that looks at, once you get past

2   apparently exculpatory evidence, you look into

3   evidence that may have been exculpatory.

4           And I think that's the best we can say

5   here, because it's not apparently exculpatory that a

6   preliminary hearing -- or especially the evidence

7   presented at a preliminary hearing would be

8   exculpatory.  And so this is the Tenth Circuit's

9   decision in United States v. Bohl, 25 F.3d 904.  It's

10   a 1994 Tenth Circuit decision.  The Court has

11   recognized this as the standard for bad faith

12   destruction of evidence.  That's in the Court's Harry

13   decision -- which is probably somewhere on my desk --

14   I can cite that to the Court, but I'm sure the Court

15   is familiar.

16           And so at the 25th volume of the F.3d

17   Reporter, pages 912 to 913, it says, "Courts have

18   held that the Government does not necessarily engage

19   in bad faith conduct, when the destruction of

20   evidence results from a standard procedure employed

21   by a governmental department or agency regarding

22   disposal of like evidence, at least when there is

23   adequate documentation of the destroyed evidence."

24           So that's why I had the four exhibits there

25   was, again, to the extent that we're looking at the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7283

1    drugs of evidence, to the extent that it may have had

2    exculpatory value, which was not apparent, because it

3    was destroyed pursuant to government retention

4    policy, and because that has been well documented by

5    the courts.  Again, I don't think it applies here,

6    because it was never in the Government's possession,

7    custody, or control.

8            But to the extent that it may have ever

9    been, this is sort of the -- I guess, the good faith

10   exception to the bad faith instruction.

11           I think that's all I've got unless the

12   Court has some other questions.

13           THE COURT:  I don't think I do at the

14   present time.  Thank you, Mr. Beck.

15           Mr. Benjamin.

16           MR. BENJAMIN:  If I could ask the Court's

17   indulgence just a couple of minutes, Your Honor.

18           THE COURT:  Certainly.

19           MR. BENJAMIN:  And, Your Honor, Mr. Beck, I

20   think, correctly related the case law to the Court.

21   I think that this -- my concerns fit within the

22   parameters of that, though, to some extent.  And

23   I'll -- just briefly addressing those, New Mexico

24   Rules for Magistrate Court 6-202 says that the rules

25   of evidence apply in a preliminary hearing.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7283

```
 1              And so I think his response raises two
 2    concerns.  One, his response raises the fact that
 3    he's talked to the officers who were involved in the
 4    detention hearing, and their opinion is that it was
 5    dismissed because the judge -- or at least what I
 6    understood from his argument -- is that the judge
 7    incorrectly thought hearsay didn't apply.
 8              Well, the rules of evidence apply in a
 9    preliminary hearing, Your Honor.  And so, to the
10    extent that hearsay does or doesn't come in, that's
11    correct there.
12              THE COURT:  Well, tell me -- I guess I'm
13    surprised that you wouldn't be able to use hearsay.
14    What typically occurs in a New Mexico preliminary
15    hearing?
16              MR. BENJAMIN:  Your Honor, if I can be
17    blunt with the Court, I've never done a prelim in New
18    Mexico.  I would point to my counsel over here.  But
19    I haven't done a state prelim, Your Honor.  I've
20    always managed to finagle my way out of them, one way
21    or the other, so --
22              THE COURT:  I guess I know that Judge
23    Sweazea was in the next courtroom, doing a
24    preliminary hearing.  I didn't ask him whether we
25    allow it in federal court, but I'll bet we do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7284

1          MR. BENJAMIN:  So, Your Honor, 6-202 says

2    that you can't use hearsay in a preliminary hearing.

3          THE COURT:  Really?

4          MR. BENJAMIN:  But the concern that I have,

5    Your Honor, is that --

6          THE COURT:  No wonder they go to the grand

7    jury.

8          MR. BENJAMIN:  And they do, Your Honor.

9    They run from a preliminary.  And that's been my

10   experience in the few state cases I've handled here.

11          But the issue that comes up, Your Honor, is

12   I think, Giglio.  Because the New Mexico State

13   Police, I think, had a duty to report that if there

14   was conflicting testimony, or if a judge in his

15   decision made a determination that those officers

16   weren't credible.

17          And I will not have that information.  I

18   only have what was related to me by Mr. Beck,

19   currently in the hearing, that the State Police

20   obviously believes that the judge got the rules

21   wrong, and thought that hearsay applied.  But that's

22   an argument that the New Mexico State Police, I

23   think, was required to preserve something, if in

24   fact, the individuals I've spoken with are correct,

25   and say that he found them not credible.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 314286

 1            And, so for the record, Your Honor, we

 2     would ask for a remedy.  I think the remedy here is

 3     the oft repeated severance, simply because this

 4     case -- I don't think there is enough to necessarily

 5     to dismiss this case.  But I think there is enough,

 6     multiple times in the bill of particulars, this part,

 7     the lack of co-conspirators, and those kind of

 8     things, to -- that the Government at some point in

 9     time must acknowledge.

10            And if the Government doesn't, I think the

11     Court needs to make this case be tried separately, or

12     cut this out, or do something with this case, so that

13     if the Government wants its day in court on the Burns

14     murder, it can have it.  But it shouldn't be allowed

15     to use it solely for prejudicial effect, Your Honor.

16            THE COURT:  All right.  Well, let me ask

17     you this:  Doesn't it not get any better for you?  I

18     mean, right now you've got a magistrate judge that

19     said no probable cause; I mean, if you go look at

20     that transcript, it may get worst for you.  Right now

21     it's pretty good.  Isn't the exculpatory value of the

22     evidence at the hearing, the fact that the magistrate

23     made that no probable cause ruling, and that would be

24     obvious and valuable?  But if you go much beyond it,

25     it may not be as good.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7286

1          MR. BENJAMIN:  Based upon the reports I've

2    heard, Your Honor, it was a lot better in person than

3    it would be simply just being "no probable cause" on

4    paper.

5          THE COURT:  I have sat here and listened to

6    New Mexico magistrate judges testify in my court.

7    I've got a few opinions out there.  It was a civil

8    case.  Some judge, I think, from Sandoval County,

9    heading out toward Cuba, was a magistrate judge, and

10   they lost the transcript and tape.  And I wrote some

11   opinions.  I made the judge show up and tell us what

12   happened.

13         So I think Mr. Beck is right:  There may be

14   a bit of a remedy here for you.

15         MR. BENJAMIN:  And, Your Honor, I'm aware

16   of that.  And I've kind of been -- I guess we've been

17   discussing that.  So that's -- I'm aware of that,

18   Your Honor.

19         THE COURT:  Two attorneys and a magistrate

20   judge; you may recreate what occurred.

21         All right.  It sounds like what you're

22   arguing is you want me to take this cumulatively with

23   some of the other arguments you've made.  I will

24   continue to do that.

25         I'll deny this motion.  I'm not going to



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7287

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 316

1   dismiss anything.  But I'll let you continue to talk

2   to me cumulatively about the things here, and renew

3   requests to sever down the road.

4          MR. BENJAMIN:  Thank you, Your Honor.

5          THE COURT:  All right.  Thank you, Mr.

6   Benjamin.

7          All right.  Shall we call it a night?  All

8   right.  See y'all tomorrow at 8:30.

9          (The Court stood in recess.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    C-E-R-T-I-F-I-C-A-T-E

2

3   UNITED STATES OF AMERICA

4   DISTRICT OF NEW MEXICO

5

6

7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8   Official Court Reporter for the State of New Mexico,

9   do hereby certify that the foregoing pages constitute

10  a true transcript of proceedings had before the said

11  Court, held in the District of New Mexico, in the

12  matter therein stated.

13       In testimony whereof, I have hereunto set my

14  hand on March 21, 2018

15

16

17

18        _____

19        Jennifer Bean, FAPR, RMR-RDR-CCR
          Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:  (505) 348-2283

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7289

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                         CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8

9         Transcript of Motion Proceedings and 104 Hearing
     before The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on March 15, 2018.
11

12   For the Government:  Ms. Maria Armijo; Mr. Matthew
     Beck
13
     For the Trial 2 Defendants: Mr. Brock Benjamin, Ms.
14   Cori Harbour-Valdez; Mr. Patrick Burke; Mr. Jim
     Castle; Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
15   Shattuck; Mr. John Granberg; Mr. Eduardo Solis; Mr.
     Billy Blackburn; Mr. Donovan Roberts; Ms. Lisa
16   Torraco; Angela Arellanes

17
     For the Defendant Lujan:  Mr. Dean Clark
18

19   For the Defendant Clark:  Mr. Stephen Hosford

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Let's go on the
2     record.  It seems that we have an attorney for every
3     defendant.  Look around the room and help me out, but
4     it looks like that's the case.
5              The next motion that we had was Mr. Troup
6     and Mr. Billy Garcia's motion for production of
7     co-conspirator statements and for pretrial hearing
8     admissibility.  But as I heard people coming in -- we
9     may have already dealt with most of that issue -- but
10    as I heard people coming in, they were saying that
11    they may need to get witnesses on and off.
12             Let me ask y'all before I start plowing
13    ahead, do y'all have some needs as far as witnesses,
14    or need to go a particular direction?  Mr. Beck?
15             MR. BECK:  Yes, Your Honor.  I think the
16    intention is to go to Mr. Benjamin's motion to
17    suppress that we sort of bypassed last night, so we
18    can get a New Mexico State Police agent back on the
19    road.  And then Special Agent Trent Pedersen is here
20    from Utah.  He would be Billy Garcia and Troup's
21    motions to dismiss for preindictment delay.  And he
22    needs to get back to Utah tonight.
23             THE COURT:  So we're just going to take
24    some witnesses; they're not necessarily the same
25    motion, but we'll just get some witnesses out of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7291

1  way; is that your --

2          MR. BECK:  I think there will only be the

3  one witness for Mr. Benjamin's motion -- or motion to

4  suppress.

5          MR. BENJAMIN:  I think it's fairly simple,

6  and I would hope, open and shut issue, Your Honor.  I

7  was going to talk to Ms. Armijo about essentially a

8  stipulation.

9          THE COURT:  Okay, go ahead.

10          (A discussion was held off the record.)

11          MR. BENJAMIN:  Your Honor, I'm ready to

12  proceed on Mr. Gallegos' motion to suppress

13  statements.

14          THE COURT:  Okay.  Are we going to have

15  argument first?  Is that what we're going to do?

16          MR. BENJAMIN:  What I'm going to do, Your

17  Honor, is move to admit Defendant Gallegos' Exhibit

18  A1 and A2, which is an excerpt of a November -- it's,

19  essentially, the relevant excerpt from a November 20,

20  2012 interview of Mr. Joe Gallegos by Agent

21  Williamson and Agent Mowduk, M-O-W-D-U-K.  Williamson

22  is common spelling.  And I would move to admit those

23  for the purposes of this hearing, Your Honor.

24          THE COURT:  Any objection, Ms. Armijo?

25          MS. ARMIJO:  No, Your Honor.  I'm going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7292

 1   be moving in the entire transcript for the Court to

 2   consider, but I don't oppose those two.

 3              MR. BENJAMIN:  And I don't oppose the

 4   entire transcript, Your Honor.  And as we're moving

 5   in the entire transcript, any objection to offering

 6   it?  I'll put it on a CD, the audio for -- the actual

 7   audio, Your Honor.  It was a recorded transcript.  I

 8   think it's, for my purposes, I believe, easier to

 9   understand in the written form.

10              May I approach the exhibit, Your Honor?

11              THE COURT:  You may.  Is there any other

12   objection to Defendant Joe Gallegos' Exhibits A1 and

13   A2?  Not hearing any, Defendant Joe Gallegos'

14   Exhibits A1 and A2 will be admitted into evidence.

15              MR. BENJAMIN:  Your Honor, when the Court

16   considers A1 and A2, which are pages 5 and 6 -- that

17   I have marked backwards -- out of the statements, the

18   defendant was Mirandized on page 4, and as the

19   Government has moved to admit that entire document,

20   and the audio that we've moved to admit, Your Honor,

21   the Court can see that he was Mirandized.  And then

22   agent -- the agent follows up with -- started on page

23   5, which is labeled A2:  "Basically, these four

24   rights.  Do you understand these rights?"

25              Joe Gallegos says, "Yes, sir."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7293

1          Agent Mowduk says, "Okay.  With these

2   rights in mind, do you want to talk to us?"

3          Joe Gallegos at that point in time says, "I

4   don't want to make no statements."  And he explains

5   why he does not want to make any statements.

6          The agents continue, and then he, Mr.

7   Gallegos, essentially says on page 6 at the top, "So

8   I would rather not talk to anybody, you know what I

9   mean?  No disrespect.  I just" -- and then is

10  interrupted by Agent Mowduk again.  And I think

11  coming immediately following the Miranda statements,

12  there can be no other way to construe:  "I don't want

13  to make no statements" as an assertion of his right

14  to remain silent under Miranda.

15         Agent Mowduk and Agent Williamson then

16  continue for approximately a minute or two discussing

17  a lot of things, and then trying to -- the phrase

18  that comes to mind that I've used in state court,

19  Your Honor, respectfully, is just sweet-talk him, or

20  butter him up, and then get him to begin talking.

21  And there is nothing relevant that is discussed for

22  about 20 minutes.  And so they are simply

23  disregarding his very clear and very blanket:  "I

24  don't want to make no statements."  And then he

25  reiterates that, as I said, essentially, two

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7294

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7295

```
 1    responses later.  And so I think that I would ask the
 2    Court -- and this is why I excerpted these two pages,
 3    that I think it's quite clear that he asserted his
 4    right to remain silent.
 5              And that's the extent of the evidence on
 6    this.  As I said, Your Honor, I think it's fairly
 7    open and shut.
 8              THE COURT:  All right.  Thank you, Mr.
 9    Benjamin.
10              MR. BENJAMIN:  May I approach Ms. Bevel?
11              THE COURT:  You may.
12              MR. BENJAMIN:  Thank you.
13              THE COURT:  I did listen to these on
14    Saturday.  So this is the one that you filed in
15    response to the motion, right?
16              MS. ARMIJO:  Yes, Your Honor.
17              THE COURT:  Okay.  I listened to that.  In
18    the folder for that there was also another tape.  And
19    I wonder if it just -- the clerk's office -- there
20    were several documents on this.  There was an Exhibit
21    B, which was an account transaction history for Eric
22    Duran.  And then there was also exhibits that Mr.
23    Lowry submitted as a supplement to his motion to
24    compel immediate production of Brady and Giglio, and
25    he attached a CD as well.  Do those have anything to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    do -- they were in the folder for this motion, but it
 2    was just this one.  I listened to all of them, but --
 3              MS. ARMIJO:  No, Your Honor.
 4              THE COURT:  They don't have anything to do
 5    with it?
 6              MS. ARMIJO:  No.
 7              THE COURT:  Okay.  All right.  Anyone else
 8    want to say anything on this motion before we hear
 9    from Ms. Armijo?
10              All right.  Ms. Armijo.
11              MS. ARMIJO:  And, Your Honor, I do have the
12    witness available to put it in context.  Our position
13    is that it was an equivocal statement, not
14    unequivocal.  And that he eventually does ask for an
15    attorney at the very end.  And the transcripts that
16    we will tender will be Exhibits 1 and 2, and so I
17    think that we could probably do it with just very
18    limited testimony from Agent Williamson.
19              THE COURT:  Okay.  Mr. Williamson, if
20    you'll come up and stand next to the witness box on
21    my right, your left, before you're seated, Ms. Bevel,
22    my courtroom deputy, will swear you in.
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7296

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8297

```
 1                    RICHARD WILLIAMSON,
 2        after having been first duly sworn under oath,
 3        was questioned and testified as follows:
 4                    DIRECT EXAMINATION
 5             THE CLERK:  Please state your name, and
 6   spell your last name for the record.
 7             THE WITNESS:  My name is Richard
 8   Williamson, W-I-L-L-I-A-M-S-O-N.
 9             THE COURT:  Mr. Williamson.  Ms. Armijo.
10             MS. ARMIJO:  Thank you, your Honor.
11   BY MS. ARMIJO:
12        Q.   And, sir, how are you employed?
13        A.   Currently, I'm a Sergeant for the New
14   Mexico State Police, serving in the Special
15   Operations Bureau.
16        Q.   And Sergeant, how long have you worked for
17   New Mexico State Police?
18        A.   I've been in law enforcement for 17 years,
19   and all but three and a half years of that were with
20   State Police.
21        Q.   And we're going to go back to 2012.  What
22   was your assignment then?
23        A.   At that time I was serving as a criminal
24   investigations agent in Albuquerque.
25        Q.   And were you assigned to work an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7297

```
 1    investigation that involved the death of Adrian
 2    Burns?
 3         A.   I was assigned as the case agent.
 4         Q.   And in that regard at some point in time,
 5    was Joe Gallegos arrested pursuant to -- well, was he
 6    arrested?
 7         A.   He was.
 8         Q.   Do you recall when that was?
 9         A.   That was November 20, 2012.
10         Q.   And when was Adrian Burns' body discovered?
11         A.   November 12, 2012.
12         Q.   And do you recall if you received a warrant
13    for Joe Gallegos' arrest?
14         A.   We did.
15         Q.   And when was that obtained, approximately?
16         A.   I don't recall the exact date.  It was just
17    a few days after the discovery of Adrian's body, and
18    shortly before the 20th.
19         Q.   Okay.  So sometime between the 12th and the
20    20th?
21         A.   Yes.
22         Q.   And is it fair to say that you had spent
23    some time looking for Joe Gallegos?
24         A.   Yes.
25         Q.   And when he was arrested, where was he?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7298

```
 1          A.   At a motel in Albuquerque.
 2          Q.   Just so that we're clear, where was it that
 3     Joe Gallegos had been residing at that time?
 4          A.   At No. 4 Aaron Court in Los Chavez, or Los
 5     Lunas, New Mexico.
 6          Q.   All right.  Was it your impression that Joe
 7     Gallegos was on the run from law enforcement?
 8          A.   That was our impression, yes, ma'am.
 9          Q.   When you arrested him, did you have an
10     opportunity to question him?
11          A.   We did.
12          Q.   And where did that take place?
13          A.   At the New Mexico State Police office in
14     Albuquerque.
15          Q.   And when did it take place?
16          A.   That evening, continuing into early
17     morning.
18          Q.   Do you recall approximately what time it
19     was that he was arrested?
20          A.   I believe it was around 8:30 on the 20th.
21          Q.   And were you present when he was arrested,
22     or did you have to be called in?
23          A.   I was called in.
24          Q.   And so when you met with him for the first
25     time, was it at the police station, the New Mexico
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7300

```
 1    State Police station in Albuquerque?
 2         A.   Yes.
 3         Q.   And approximately what time was it that you
 4    first met with him?
 5         A.   I believe it was around 8:30, 8:45.  I'm
 6    not real sure.  I don't recall.
 7         Q.   Okay.  And when you spoke to him, what was
 8    the setting?
 9         A.   We were in an interview room, myself and
10    Agent Jim Mowduk, a very small room with a table and
11    three chairs.
12         Q.   And was it recorded?
13         A.   It was.
14         Q.   And how was it recorded?
15         A.   Audio and visual, through the system that
16    was there in that interview room.
17         Q.   Okay.  So it was audio and visual?
18         A.   Yes, ma'am.
19         Q.   And you indicated you had another agent
20    present?
21         A.   Yes.
22         Q.   And how were you dressed?
23         A.   I think at that time I was probably much
24    like this, but without the coat and tie.
25         Q.   You weren't in a uniform?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7300

```
 1        A.   No, I was in plainclothes.

 2        Q.   Did you have a visible -- a firearm

 3   visible, if you recall?  And you may not recall.

 4        A.   I don't recall.  But we generally did carry

 5   our firearm, so --

 6        Q.   And in the room when you met with Mr.

 7   Gallegos, was he handcuffed?

 8        A.   He was.

 9        Q.   And throughout the interview did he remain

10   handcuffed?

11        A.   Before we began the interview, he was

12   handcuffed behind his back, as we generally do for

13   transport.  Before the interview, I made him more

14   comfortable by placing his handcuffs in front.

15        Q.   Did you ascertain whether or not he needed

16   to use the facilities or needed any water or anything

17   like that.

18        A.   We did.  Agent Mowduk asked him.

19        Q.   And did he make any requests?

20        A.   No.  He said he was fine.

21        Q.   Now, before I get into the actual -- your

22   actual conversation with him, at any point in the

23   conversation, did he appear to be incoherent or

24   unable to understand you?

25        A.   Not at all.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7301

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7302

```
 1        Q.   Did he appear to be under the influence of
 2   any drugs to the extent that you were concerned about
 3   his mental ability to understand your questions?
 4        A.   No, he did not.
 5        Q.   At any point in time, did it appear to you
 6   that he was having difficulty comprehending what you
 7   were saying?
 8        A.   No.
 9        Q.   At any point in time -- and I'm talking
10   about the entire time that you conversed with him --
11   did you use any force or threats against him?
12        A.   No.
13        Q.   At any time did you make him any promises?
14        A.   No.
15        Q.   Was there actually a break in the interview
16   at some point?
17        A.   There was.
18        Q.   Okay.  And can you explain that to us?
19        A.   We took a break so he could use the
20   restroom, get a drink.  So he was allowed to do that.
21        Q.   And approximately how long was your entire
22   conversation with him?
23        A.   The entire conversation, I believe, was
24   about an hour and 37 minutes.  And I don't recall if
25   that includes the first discussion and the second
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7302

1    discussion combined, or how that breaks down.

2        Q.   I know you probably haven't had an

3    opportunity to, but the defense has had the

4    transcript -- or the recording transcribed.  So I'm

5    going to go ahead and hand that -- actually, I think

6    you have a copy in the back.  But at some point, was

7    he read his rights?

8        A.   At the very beginning, yes, ma'am.

9            MS. ARMIJO:  All right.  And Your Honor,

10   may I have the Elmo?

11           THE COURT:  You may.

12       Q.   And Sergeant, I'm looking at what's

13   Government's Exhibit 1 and 2, which I'm moving in for

14   purposes of this hearing with no objection.

15           THE COURT:  No objection?

16           MR. BENJAMIN:  No, Your Honor.

17           THE COURT:  Anybody else?  All right.

18   Government's Exhibits 1 and 2 will be admitted into

19   evidence.

20       Q.   All right.  Now -- and I'm referring to

21   page 4 of this.  And here it says, "Since you are in

22   handcuffs, since you were transported in a unit and

23   all that stuff, I can't talk to you unless I advise

24   you of your Miranda rights.  So what I need to do is

25   advise you of your Miranda rights.  And I'll do that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    verbally from a card."  Does that appear to be what

2    was said to Mr. Gallegos?

3         A.   It does, by Agent Mowduk.

4         Q.   All right.  Then I'm going to go to page 5.

5    And at some point here it says, Agent Mowduk -- it

6    says, he indicated, "I don't want to make no

7    statements because I've been -- I know you checked my

8    record" -- and then he goes on to explain that he's

9    been taken advantage of in the past, and he doesn't

10   have trust for people; is that correct?

11        A.   That's correct.

12        Q.   And then what did you indicate to him after

13   that?

14        A.   That his mother had indicated to us, in our

15   conversations with her, that they did want to make a

16   statement to give their side of the story.

17        Q.   And was that true?

18        A.   Yes.  Agent Mowduk had been talking to her

19   for about three or four days prior to that.  As far

20   as I knew, that was what he indicated.

21        Q.   Okay.  And so you were informing him of

22   that?

23        A.   Yes.

24        Q.   And then he goes on to talk to you for a

25   bit.  And I'm going to go to page 6 of that.  Then at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7304

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 15305

1    some point he says, "So I would rather not talk to

2    anybody, you know what I mean?  No disrespect."  Is

3    that something that he said?

4         A.   I believe so, yes.

5         Q.   And then what did you all do?

6         A.   We just gave him some more information, and

7    Agent Mowduk sort of explained why he was there, and

8    what was going to happen.

9         Q.   Okay.  Now -- and then after that, did he

10   ever indicate to you unequivocally that he did not

11   want to speak to you?

12        A.   Not that I recall.  He said that he did

13   have some things that he would like to state.

14        Q.   Okay.  And is that something that he did

15   say to you after all?

16        A.   Yes.  It's in the recordings.  I'm not sure

17   if it's in the transcript or not.

18        Q.   Okay.  But in the recordings he did

19   indicate to you that he wanted to speak to you?

20        A.   Correct.

21        Q.   Okay.  And then did he speak to you?

22        A.   He did.

23        Q.   Now, I know we already talked about at some

24   point in time that there was a break; correct?

25        A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   And then after the break, at some point
 2    towards the end of your conversation with him, did he
 3    indicate he wanted an attorney?
 4          A.   He did.
 5          Q.   All right.  And I'm going to go to Exhibit
 6    Number 2, page 24.  At least this is one of the times
 7    he says, "I'd just like a lawyer and that's it"?
 8          A.   Yes, ma'am.
 9          Q.   Then do you clarify that?  And then he says
10    again, "I just want a lawyer"; correct?
11          A.   Correct.  And Agent Mowduk advised, "You'll
12    get a lawyer."
13          Q.   All right.  And then it's after that that
14    the interview concludes; correct?
15          A.   Yes, ma'am.
16          Q.   Okay.  Now, prior to that, prior to what we
17    are seeing on this and what is on the recording, did
18    he ever absolutely say to you:  "I want a lawyer"?
19          A.   Not that I recollect, or we would have
20    stopped.
21          Q.   And other than the beginning, where he's
22    talking to you about whether or not -- I don't want
23    to misquote it -- where he says that, "I don't want
24    to make no statements because I know you checked my
25    record," and then he goes on to talk --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7306

```
 1        A.   Yes.

 2        Q.   Other than that -- or after he made that

 3   statement, did he continue to talk to you and he

 4   indicated that he wanted to talk to you?

 5        A.   He did.

 6        Q.   And did you take that to mean, given that

 7   he still continued to talk to you, and he didn't

 8   absolutely say -- that he didn't say "I don't want to

 9   talk to you," is that why you continued to talk to

10   him?

11        A.   Yes.

12             MS. ARMIJO:  Thank you.  I pass the

13   witness, Your Honor.

14             THE COURT:  Thank you, Ms. Armijo.

15             Mr. Benjamin, do you have cross-examination

16   of Mr. Williamson?

17             MR. BENJAMIN:  Yes, Your Honor.

18             THE COURT:  Mr. Benjamin.

19             MR. BENJAMIN:  May I approach the exhibits?

20             THE COURT:  Do you want your A1 and A2

21   back?

22             MR. BENJAMIN:  No, I'll use the

23   Government's.

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 19308

```
 1                    CROSS-EXAMINATION
 2   BY MR. BENJAMIN:
 3       Q.    Agent, you testified that Mr. Gallegos was
 4   located at about 8:30, you didn't say a.m., but
 5   that's about 8:30 a.m.; correct?
 6       A.    P.m., I believe.  It was in the evening.
 7       Q.    Would it surprise you if your report says
 8   your interview started at 6:55?
 9       A.    In the evening?
10       Q.    Yes.
11       A.    No.  That was five years ago, so that
12   wouldn't surprise me.
13       Q.    So Joe Gallegos wasn't located at 8:30, if
14   you're talking to him at the State Police
15   headquarters at 6:55 p.m.?
16       A.    It wouldn't appear so.
17       Q.    Do you know what time he was arrested?
18       A.    Not off the top of my head, no, sir.
19       Q.    Would it surprise you if it was earlier in
20   the day, closer to early afternoon or noon?
21       A.    It would because I recall it being later;
22   early evening or late afternoon, is my recollection
23   anyway.
24       Q.    But if I direct you to essentially what's
25   been admitted as Government's Exhibit 1, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7308

```
 1    beginning of the recording is at 6:55 p.m.; correct?
 2    Are you able to read that, sir?
 3         A.   No -- oh, there it is, yes, sir.
 4         Q.   Okay.  And based upon your experience,
 5    between the time that an individual gets arrested --
 6    because he was arrested and located at a motel by
 7    Marshal Task Force, so you didn't respond there
 8    immediately; correct?
 9         A.   Correct.
10         Q.   And then you went to the hotel?
11         A.   Correct.
12         Q.   And then, essentially, talked to people,
13    tried to get a handle on some things, and then went
14    to the State Police headquarters, right?
15         A.   Correct.
16         Q.   Okay.  And forgive me, but none of that
17    government operation is what we might call very
18    efficient or done very quickly, right?
19         A.   Which part of that?
20         Q.   The marshals arriving, securing a scene,
21    arresting an individual, talking to the two females
22    that were there as well, and then transporting
23    somebody to State Police headquarters?
24         A.   I believe it was as efficient as possible,
25    yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7309

```
 1        Q.   I didn't mean that an insult, sir, I'm
 2   sorry.  But that's not done -- the arrest -- the
 3   location wasn't discovered at 6:00, and then they
 4   we're in the headquarters at 6:55?
 5        A.   I don't believe so.
 6        Q.   Okay.  And so the interview you said was an
 7   hour and 30 minutes, but it starts -- would you
 8   disagree with this timeline -- that it starts at
 9   6:55; there is a break at 8:31 p.m.; the interview
10   resumes at essentially midnight, or 12:04 p.m., and
11   then ends at 12:27 p.m. -- or a.m. -- I'm sorry,
12   a.m.?
13        A.   Yes, sir.
14        Q.   Okay.  And so that's not an hour and 30
15   minutes.  That's, essentially, if you do the math
16   essentially right at five-and-a-half hours of
17   interview time?
18        A.   Well, he wasn't being interviewed the
19   entire time.
20        Q.   But he was in the interview room, sweating?
21        A.   He was in the interview room.  I don't
22   recall if he stayed in that room or if he was moved
23   to a holding cell.  Actually, there is a comment in
24   there about it being cold, so I don't think he was
25   sweating.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7310

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22311

1      Q.   Forgive me.   "Sweating" was meant slightly

2    different.

3           You'd said that the mother indicated that

4    he wanted to make a statement?

5      A.   I believe that's what Agent Mowduk

6    indicated, yes, sir.

7      Q.   Ms. Gallegos -- it's Tina Gallegos;

8    correct?

9      A.   Correct.

10     Q.   She indicated they were going to turn

11   themselves in from the 15th as well; correct?

12     A.   Yes.   And every time Agent Mowduk spoke

13   with her, it was going to be the next day, the next

14   day.

15     Q.   And he spoke to her, essentially, looking

16   at the reports, it looks like probably two times a

17   day or so?

18     A.   Yes, sir.

19     Q.   He was fairly persistent in following up on

20   things?

21     A.   Yes, sir.

22     Q.   Okay.   So when you provided Joe -- when

23   Agent Mowduk provided Joe Gallegos his rights, what

24   was unequivocal about, "I don't want to make no

25   statements"?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7311

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23

1        A.   We continued to have a discussion anyway,

2   whether we were just providing facts or providing him

3   an opportunity to speak.  Until he asked for a

4   lawyer, we were going to continue to talk to him.

5        Q.   You told him he had a right to remain

6   silent; correct?

7        A.   Correct.

8        Q.   It doesn't say -- well, right below that it

9   says:  "You have a right to an attorney"?

10        A.   Correct.

11        Q.   It says, "You have a right to remain

12   silent"?

13        A.   Correct.

14        Q.   When he said, "I don't want to make no

15   statements," what part of that was unequivocal that

16   he didn't want to talk to you?

17        A.   It wasn't.  That was clear.  We -- after

18   that point, I don't believe the next things that we

19   said to him were questions.  I believe they were

20   informative.  And then he stated he did have some

21   things he would like to state.  And that's where we

22   began to have more of a discussion.  But I don't

23   recall exactly what was said immediately after,

24   but --

25        Q.   Okay.  So the statement, "Well, your mom

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7312

 1    had kind of indicated that you wanted to make a

 2    statement," isn't prodding him to make another

 3    statement?

 4         A.    It's just providing him with information

 5    that we had.  And then he reaffirms, on page 6, that

 6    I would rather not talk to anybody, right?

 7         A.    Correct.

 8         Q.    What's unequivocal about that?

 9         A.    No, that's clear.

10              MR. BENJAMIN:  Pass the witness, Your

11    Honor.

12              THE COURT:  All right.  Thank you, Mr.

13    Benjamin.

14              Anyone else have any questions?  All right.

15    Mr. Williamson, you may step down.

16              MS. ARMIJO:  Your Honor?

17              THE COURT:  Do you have something further?

18              MS. ARMIJO:  Yes.

19              THE COURT:  Okay, Ms. Armijo.

20                    REDIRECT EXAMINATION

21    BY MS. ARMIJO:

22         Q.    Is there a difference to you between

23    someone saying:  I want to invoke my right to remain

24    silent, and I don't want to make statements?

25         A.    Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7313

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25

1     Q.   And what's your understanding of that?

2     A.   My understanding would be that he wasn't

3  really ending the conversation.  He just didn't want

4  to make any statements about anything or any facts.

5  He did give us the impression that he wanted to

6  continue to talk to us.  He wanted to find out what

7  was going on.  And we wanted to provide him

8  information.  So we would continue that conversation

9  until he said:  I don't want to talk anymore, or I

10 want to be silent, or of course when he said, "I

11 would like a lawyer."

12    Q.   And did he indicate to you that he did, in

13 fact, want to make a statement?

14    A.   In those exact words, he said, "There is

15 some things I'd like to state."

16    Q.   All right.  And is that what led you to

17 continue the conversation?

18    A.   Yes, ma'am.

19    Q.   All right.  Nothing further.  Thank you.

20         THE COURT:  Thank you, Ms. Armijo.

21         MR. BENJAMIN:  One second.  I may have --

22         THE COURT:  You may.

23         MR. BENJAMIN:  Pass the witness, Your

24 Honor.

25         THE COURT:  All right.  Mr. Williamson, you



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7314

```
 1    may step down.  Is there any reason that Mr.

 2    Williamson cannot be excused from the proceedings,

 3    Ms. Armijo?

 4            MS. ARMIJO:  No.

 5            THE COURT:  All right.  How about from the

 6    defendants?

 7            MR. BENJAMIN:  No, Your Honor.

 8            THE COURT:  All right.  You're excused from

 9    the proceedings.  Thank you for your testimony.

10            All right.  Are there further witnesses

11    that need to be presented, Ms. Armijo?

12            MS. ARMIJO:  No, Your Honor.  Thank you.

13            THE COURT:  How about you, Mr. Benjamin?

14            MR. BENJAMIN:  No, Your Honor.

15            THE COURT:  All right.  Do you wish to

16    argue your motion, Mr. Benjamin?

17            MR. BENJAMIN:  I do, Your Honor.

18            THE COURT:  Mr. Benjamin.

19            MR. BENJAMIN:  I think there is two things

20    that come to mind when I see an interview that was

21    conducted in this manner, Your Honor.

22            Mr. Gallegos was arrested during,

23    essentially for lack of a better term "a duty day."

24    And 18 USC 3501 talks about taking an individual to a

25    United States Magistrate without undue delay.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7315

 1   think in this case it's clear that the tactic that

 2   was used was to take Mr. Gallegos into custody, and

 3   conduct what is, essentially, a five-and-a-half hour

 4   interview of an individual in order to be able to

 5   attempt to elicit as many statements as possible, and

 6   fish.

 7            And the Court noted that it had listened to

 8   the hour-and-a-half interview.  There is -- it's in

 9   circles.  There is no quote/unquote admissions made,

10   Your Honor.  But they do not listen to what Agent

11   Williamson said was a very -- he said it was clear

12   assertion, that he didn't want to -- that he wanted

13   to remain silent.  And I think that that cannot be

14   interpreted as any other way than the response that

15   was given to me.  That was a very clear assertion of

16   his intent to remain silent.

17            The agents utterly disrespected that.  And

18   if Miranda is to be given any weight, it can't be

19   that we give him information, or we rely on the fact

20   that his mom told us that we wanted this.  When he

21   makes one, and then a second assertion of his right

22   to remain silent, that right needs to be respected.

23            I guess the Government's arguing that's

24   unequivocal, and essentially, five hours later, he

25   then wises up and says the magic word "attorney."  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7316

1    don't think that's what case law holds by any means.

2    And so I would submit that the agents in this case

3    intentionally tried different tactics.  And the Court

4    is aware of the different tactics that are used, and

5    can take into consideration, having listened to the

6    audiotape, that they utterly disregarded his

7    assertion of his right to remain silent.

8            Pass the witness, Your Honor, or excuse

9    me --

10           THE COURT:  Thank you, Mr. Benjamin.

11           Any other defendant wish to speak on this

12   motion?

13           All right.  Ms. Armijo.

14           MS. ARMIJO:  Your Honor, I think it has to

15   be clear and unambiguous, and it's an objective

16   standard, that he invokes his right to remain silent,

17   or his request for counsel.

18           In this case, if you read the transcript,

19   and if you listen to it, which the Court already has,

20   you can see that Mr. Gallegos is quite smart in

21   giving -- in answering the agent's question.  The

22   first part of the interview before the break is

23   really the majority of the interview.  So even if the

24   Court were to find it's too long, it should only

25   strike the second part of the interview, which is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7317

1   much shorter, after the break.  But the first part of

2   the interview, he answers a great deal of questions

3   to minimize his actions.  He does make admissions.

4   He puts the victim at his residence at a certain time

5   period that evening, and confirms -- and I believe --

6   and I'd have to look back at the entire thing -- but

7   yes, he does, he admits that their main source of

8   drug supply was, in fact, Adrian Burns.  They were

9   purchasing heroin from him.  And he puts Adrian Burns

10  at their residence.  So there is statements in there

11  that are incriminating.  And given the whole nature

12  of the interview, and the fact that he does not say

13  immediate -- and he does know that he does have a

14  right to an attorney.

15          I think the Court can consider the

16  defendant's age, his background.  Clearly the

17  defendant has been arrested before.  He talks about

18  how he served 11 years.  And the fact that he does

19  actually at some point end up asking for an attorney

20  and the interview ceases, it shows that the officers

21  were, in fact, acting appropriately.  And that once

22  he did invoke his right to have an attorney present,

23  they honored that right.

24          So we would ask that the statements before

25  he invokes not be suppressed.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7318

```
 1              THE COURT:  All right.  Thank you, Ms.
 2    Armijo.
 3              Anything further, Mr. Benjamin?
 4              MR. BENJAMIN:  No, Your Honor.
 5              THE COURT:  Anyone else?
 6              Well, I want to think about this a little
 7    bit more.  But I'll tell you, at the present time,
 8    I'm inclined to deny the motion.  I think that I
 9    agree with the officer:  If you just take the one
10    statement -- or the two statements out of context,
11    then I agree they are unequivocal.  But I don't
12    understand how his statement on page 5 that, "I don't
13    want to make no statements," and then he repeats a
14    similar one on page 6, is an unequivocal invocation
15    of his right to remain silent, when he just goes on
16    talking.  So I think you have to put it in the
17    context of the -- of what is occurring.
18              Also, I'm inclined to think that an
19    invocation of one's right to remain silent, unlike
20    your right to an attorney, does permit the police to
21    continue to talk to a suspect to obtain a subsequent
22    waiver.
23              There is some language in the Supreme Court
24    cases that suggest otherwise.  But there are also
25    some statements that indicate that they can continue
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to talk.  And people can waive the right to silence,

2    and then come back -- or not waive the right, but

3    invoke the right to silence, and then come back and

4    waive it.  When you look at Michigan versus Moseley,

5    it says, "A reasonable and faithful interpretation of

6    the Miranda opinion must rest on the intention of the

7    court," in that case, "to adopt fully effective means

8    to notify the persons of his right of silence, and to

9    assure that the exercise of the right will be

10   scrupulously honored.  The critical safeguard

11   identified in the passage at issue is a person's

12   right to cut off questioning," which doesn't seem to

13   really be the issue here, because the questioning

14   hadn't really begun.  "Through the exercise of his

15   option to terminate questioning, he can control the

16   time at which questioning occurs, the subject is

17   discussed, and the duration of the interrogation."

18   And we see that exercised at the end, when he

19   exercised his right to an attorney, and then the

20   interview is over.  "The requirement that law

21   enforcement authorities must respect a person's

22   exercise of that option, counteracts the coercive

23   pressure of the custodial setting.  We, therefore,

24   conclude that the admissibility of statements

25   obtained after the person in custody has decided to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7320

```
 1    remain silent depends on the Miranda, on whether his

 2    right to cut off questioning was scrupulously

 3    honored."  And we see that later on.

 4              At that point the Supreme Court dropped a

 5    footnote and said, "The dissenting opinion asserts

 6    that Miranda establishes a requirement that once a

 7    person has indicated a desire to remain silent,

 8    questioning may be resumed only when counsel is

 9    present.  But clearly the court" -- this is quoting

10    the Supreme Court -- "But clearly the court in

11    Miranda imposed no such requirement to distinguish

12    between the procedural safeguards triggered by a

13    request to remain silent and a request for an

14    attorney, and directed that the interrogation must

15    cease until an attorney is present only if the

16    individual states that he wants an attorney."

17              So I think Mr. Gallegos was in control of

18    the situation.  And he decided to say he didn't want

19    to make statements.  Then he decided to continue

20    talking.  He then said he didn't want to make

21    statements.  Then he decided to continue talking.  So

22    I do think that it was not an unequivocal invocation

23    of his right to remain silent.  And ultimately, when

24    he did invoke his right to an attorney, it was

25    scrupulously honored by the two police officers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7321

```
 1            So I'll give it some further thought, but
 2    I'm inclined to deny the motion to suppress.
 3            All right.  The next motion is what is Tab
 4    24, which is Troup and Billy Garcia's motion for
 5    production of co-conspirators' statements and for
 6    pretrial hearing on their admissibility.  Shall we
 7    take that motion up at this time, Mr. Cooper?
 8            MR. COOPER:  Judge, I think what we would
 9    like to do is call Leonard Lujan.  He has some -- we
10    have some testimony directed at that motion, and
11    other testimony directed at our motion to dismiss.
12    He's being held downstairs.  I think the marshals
13    would like to get him out of town.  So I'd like to
14    call --
15            THE COURT:  What is his situation with his
16    attorney?
17            MR. COOPER:  His attorney is in the
18    building -- just walked out of the courtroom, Judge.
19            THE COURT:  Okay.  And remind me who his
20    attorney is.
21            MR. COOPER:  Dean Clark.
22            THE COURT:  Okay.
23            MR. COOPER:  And I will walk out in the
24    hallway and get him.
25            THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7322

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34

1    MR. LAHANN:  Your Honor, Mr. Patterson

2    needs to use the restroom.  Is that okay?

3    THE COURT:  Yeah, run and do it before we

4    get started with this witness.  This is kind of the

5    second time you've done this.  Let's take care of

6    business before we --

7    THE DEFENDANT:  It's not intentional.

8    THE COURT:  All right.  Well, it's the

9    second time.  Let's take care of business before we

10   get in here, okay?  We don't have time to take breaks

11   with this many people.

12   MR. BECK:  And, Your Honor, I understand

13   that the James motion is closed, so why are we

14   hearing Mr. Lujan's testimony?

15   MR. COOPER:  Your Honor, it's for the

16   motion that you just called up, and also for the

17   motion to dismiss.  With regard to the motion to

18   dismiss, Judge, we're exploring the timing of his

19   cooperation relative to the federal government's

20   initiation of their investigation in the 2001

21   murders.  We think his testimony has a great deal of

22   relevance as to when -- the Government got

23   involved -- when he got involved with the Government.

24   And we want to see how far back he will say that his

25   cooperation first began.  And I think the relevance

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7323

1    to that motion to dismiss, certainly, and also to the

2    other motion.

3           THE COURT:  All right.  Is that sufficient,

4    Mr. Beck?

5           MR. BECK:  Sure.  If we're going to go into

6    his cooperation, that's fine.

7           MR. COOPER:  And, Your Honor, if I may, I'm

8    going to start earlier than his cooperation.  Because

9    I need to -- I don't know when he started, when he

10   first cooperated.  So I'd like some leeway to begin

11   with what I think may be the start of his thinking

12   about cooperating, and any action to cooperate.

13          MR. BECK:  I don't mind him starting with

14   those questions, Your Honor.  I think we should

15   also -- while we have Mr. Lujan and his counsel here,

16   there has been a subpoena for his mental health

17   records, which I have -- I filed a motion to quash on

18   Corrections' behalf.  And I just haven't gotten a

19   response from his counsel.  So I think it's important

20   to take that up first.

21          MR. COOPER:  I agree.  I'd like to.  I have

22   been dealing with Doug Couleur, a lawyer for one of

23   the other individuals who is affected by that motion,

24   and I believe we've agreed to operate, basically, as

25   we had -- as the Court had and the Government had in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7324

```
 1   the Eric Duran matter.  And so we're going to submit,

 2   we believe later on, a motion -- or an order

 3   basically tracking what the Court had done in Eric

 4   Duran.

 5              THE COURT:  Yeah, if you're ready, we need

 6   to bring him on in.

 7              Mr. Benjamin, did you get Mr. Clark?

 8              MR. BENJAMIN:  I will go get him, Your

 9   Honor.

10              THE COURT:  Mr. Clark, there is a chair

11   right over here.  If you want to come up here and sit

12   up here.  Or if you want to sit back there, it's your

13   call.  Whatever you'd like to do.

14              MR. CLARK:  Thank you, Your Honor.  I

15   apologize to the Court and counsel.  I have another

16   docket, and I wasn't aware that we'd be starting this

17   early.

18              THE COURT:  Okay.  Are you okay --

19              MR. CLARK:  Yes, Your Honor.

20              THE COURT:  -- to get started?  There is a

21   chair back there.  If you want to, wherever you want

22   to sit.  Do you want to pull it up next to -- here in

23   front of the marshal?

24              MR. CLARK:  I would, Judge.  Thank you.

25              THE COURT:  All right.  Mr. Lujan, are you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7325

```
 1   able to stand?
 2          THE DEFENDANT:  Yeah, I can stand.
 3          THE COURT:  Why don't you stand up and
 4   raise your right hand to the best of your ability.
 5   Ms. Bevel, my courtroom deputy, will swear you in.
 6                     LEONARD LUJAN,
 7       after having been first duly sworn under oath,
 8       was questioned and testified as follows:
 9                  DIRECT EXAMINATION
10          THE CLERK:  Please be seated.
11          THE COURT:  All right.  Mr. Lujan.  Mr.
12   Cooper.
13          MR. COOPER:  Thank you, Your Honor.
14   BY MR. COOPER:
15       Q.  Mr. Lujan, on July the 5th, 1998, you were
16   at --
17          MR. BECK:  Your Honor, should we take up
18   the issue with the mental health records, again, like
19   we said we were going to, before we get into this?
20          THE COURT:  All right.  What raised the
21   issue?
22          MR. BECK:  So Mr. Garcia's counsel
23   subpoenaed New Mexico Corrections Department.  But
24   they failed to comply with the HIPAA regulations for
25   a subpoena of the mental health records under HIPAA.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7326

```
 1    So what we need is we need either Mr. Lujan's counsel
 2    to agree to provide the records with Mr. Lujan's
 3    consent, or we need a court order and a process for
 4    keeping them confidential.
 5              THE COURT:  All right.
 6              MR. BECK:  Since Mr. Lujan's counsel is
 7    here --
 8              THE COURT:  Where are the records?  If
 9    they've been subpoenaed, where are they physically
10    right now?
11              MR. COOPER:  Your Honor, they've denied our
12    request for -- they're refusing --
13              THE COURT:  So they're still at the
14    Corrections Department?
15              MR. COOPER:  -- refusing to submit those
16    records to us.  And what we propose to do is have a
17    court order.  The same thing happened with regard to
18    Eric Duran's mental health records.  And in that case
19    an order was directed to the Department of
20    Corrections to produce it.
21              If I may approach Mr. Clark and show him
22    the proposed order that we're speaking of?
23              THE COURT:  All right.
24              MR. BECK:  Your Honor, it sounds like this
25    isn't going to be resolved quickly.  So my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7327

1    anticipation is that we're probably going to have to

2    bring this before the Court later on.  So I guess the

3    best way to proceed now, since the marshals would

4    like to -- well, I don't see that Mr. Lujan shouldn't

5    be here when we talk about the dispute over his

6    mental health records, so --

7            MR. COOPER:  Let's do it now.

8            MR. BECK:  That's fine.  I agree.

9            MR. COOPER:  I think he has to be here.

10           MR. BECK:  I agree.

11           MR. COOPER:  So, Judge, what we would like

12   for the Department of Corrections to do is receive an

13   order from this Court directing them to produce to

14   the United States the mental health records of Mr.

15   Lujan, Eugene Martinez, and Lawrence Torres.  I have

16   been in contact with Doug Couleur with regard to his

17   mental health records.  He has suggested that --

18           THE COURT:  And he represents who?

19           MR. COOPER:  And he represents Eugene

20   Martinez.  And he suggested to me that we do it the

21   way it had been done in Eric Duran's case.  I said,

22   "Sounds good, we will agree to a protective order.

23   We will not disclose any of these records to anybody.

24   We will prepare the order, submit it to the

25   Department of Corrections, give them five days to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7328

1   produce the documents, send them to the Government.

2   The Government then will have five days to have

3   counsel redact, if necessary, anything that they deem

4   needs redaction.  And then, within five days of

5   receipt, the Government would then disclose to

6   counsel."

7           And we have prepared, like I say, that

8   order.  I don't know whether or not Lawrence Torres

9   has a lawyer.  I don't believe -- I don't know if he

10  does.  But in any case, we would ask for those as

11  well.  Mr. Clark, I think, has a position with regard

12  to these records.  And I'll let him speak to those.

13  But that's what we would like.

14          THE COURT:  And what's your position on

15  this motion, Mr. Beck?

16          MR. BECK:  I think the United States'

17  position is that we just need -- I mean, we just need

18  to make sure we comply with HIPAA.  And it's pretty

19  specific as to what the qualified protective order

20  has to have.  The options are:  Either Mr. Lujan's

21  counsel can agree to hand them over, or that the

22  parties can agree to what's called "a qualified

23  protective order."  So if the parties agree to a

24  qualified protective order -- or if the parties don't

25  agree, then the Court can order a qualified

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7329

```
 1   protective order.
 2           THE COURT:  What is different between the
 3   qualified protective order in the statute and what
 4   Mr. Cooper has got in his hand?
 5           MR. BECK:  That's what I'm trying to see.
 6   I just saw what Mr. Cooper has in his hand for the
 7   first time, so I'm trying to compare it with what's
 8   required under the statute right now.  So it looks
 9   like the Court's order would have to prohibit the
10   parties from using or disclosing the protected health
11   information for any purpose other than the litigation
12   or proceeding in which it's requested.  And it
13   requires "return to the covered entity or destruction
14   of the protected health information including all
15   copies at the end of litigation or the proceeding."
16           THE COURT:  Do you mind including those two
17   provisions in there, Mr. Cooper?
18           MR. COOPER:  I have no objection to doing
19   that.  It was my understanding the protective order
20   would be a separate document.  This is just the order
21   directing them to produce it.  The protective order
22   would be a document that all counsel would sign, that
23   would include that language and other language, and
24   it would be a document similar to the protective
25   order that we had prepared or that was prepared
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7330

1    actually by Doug Couleur and the Government when we

2    got the mental health competency records.

3            THE COURT:  Well, do you have any objection

4    to me signing this order, Mr. Beck, with the

5    agreement of all counsel that we'll use the form that

6    Mr. Couleur used on Eric Duran's documents?

7            MR. BECK:  Your Honor, I have an objection

8    to the five-day time period, because I don't know how

9    quickly Corrections can get the documents.  Five days

10   sounds pretty quick for what I've seen from their

11   paper files.

12           THE COURT:  Does yours have a five-day?

13           MR. COOPER:  It has a five-day, Your Honor.

14   But we moved it from 10 days to five days because we

15   subpoenaed these records three weeks ago.  Three

16   weeks ago we subpoenaed the records.  The Department

17   of Corrections refused to honor this Court's order

18   that they be turned over.  And when they did so, I

19   think that we're 20-some days away from trial.  We

20   need these documents.  These are two very important

21   witnesses against a number of the people who sit at

22   this table.  And I think we need those sooner than

23   later.  We needed them back when we subpoenaed them.

24   And we've got some serious problems with a lot of the

25   subpoenas that went out.  People are not responding

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7331

1    accordingly.  They're either refusing to obey the

2    subpoenas, or sending it to the Government and not

3    sending to us as we had directed them to do so, or

4    the subpoena directed them to do so.  But that's

5    another issue.

6            But, in any case, we subpoenaed these

7    records 15 days ago.  We would like to have those

8    within five days of receipt of the order.  I think

9    the Department of Corrections -- who by the way is an

10   arm of the prosecution.  They ought to produce this

11   stuff.  I think there is --

12           THE COURT:  Well, let's see how it goes.

13   Why don't I put "five days," and see if that lights a

14   fire under them.  If they can't do it in five days,

15   we can kind of reconvene and see where we are on

16   that.

17           All right.  Any other issues then, Mr.

18   Beck, from the Government's standpoint?

19           MR. BECK:  No, Your Honor.  And -- I mean,

20   I think that's fine.  As I said, I don't know if that

21   can happen.  And so my concern is that Corrections

22   would be in violation of a court order.  I think what

23   would be a more prudent approach is to put 10 days,

24   which I think will be a stretch.  They haven't been

25   dragging their feet.  They've been looking for them

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7332

 1   since they got the subpoena.  Because I told them
 2   that I thought the Court would approach it this way.
 3   They've been looking for them.  And if they get them
 4   sooner than that, they're going to provide them to
 5   us.  And I'm not going to drag my feet because I have
 6   a 10-day order rather than a five-day order.  I just
 7   don't want Corrections to be in violation of a court
 8   order if they can't get that paperwork soon enough.
 9   So I think it could be 10 days with my
10   representation, my understanding that as soon as we
11   get them, we will get them over to Mr. Clark so he
12   can take a look, and then we will get them in the
13   hands of the defendants.
14           So I think for all practical purposes it
15   will be the same timing.  The only difference is that
16   if they can't get it together, then they wouldn't be
17   in violation of a court order for five days.  But I
18   understand the Court's position.  That's just my
19   request.
20           THE COURT:  Okay.  Mr. Cooper, why don't
21   you go first, then I'll hear from Mr. Solis.
22           MR. COOPER:  Thank you, Judge.
23           Judge, there is five days for Department of
24   Corrections to produce it to the Government, and then
25   five days for the Government to produce it to us.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7333

1    And I think that's plenty of time for both entities

2    to get things done, and get it to us so that we can

3    use it and be prepared for this trial.

4              THE COURT:  All right.  Mr. Solis.

5              MR. SOLIS:  May I be heard, Your Honor?

6              THE COURT:  You may.

7              MR. SOLIS:  Thank you, Your Honor.  This

8    dovetails nicely into the motion I was going to argue

9    yesterday, Document 1908.  What it seeks is,

10   essentially, the order the Court is getting ready to

11   sign where the Court is ready to order the release of

12   the medical records of Eugene Martinez, Leonard

13   Lujan, and Lawrence Torres.

14             In review of the conference evaluation

15   reports for Mr. Martinez, I don't think even the

16   Government would dispute there is significant Brady

17   material there.  So any backup to that evaluator's

18   assessment is probably ripe with additional Brady

19   material.  So given that we're fast approaching

20   trial, I would concur and support Mr. Fuller's

21   request for a five-day turnaround, Your Honor.  But

22   since the Court has ordered that, I think that would

23   moot the hearing of 1908 with regard to my

24   presentation on that, Your Honor.

25             That's all I had, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7334

```
 1              THE COURT:  All right.  Thank you, Mr.
 2    Solis.
 3              All right.  Mr. Clark, are you comfortable
 4    with what's being set up here?
 5              MR. CLARK:  Well, Your Honor, I'll take it,
 6    if I have to.  But one point, Judge, I'd like to
 7    bring up -- good morning, Your Honor, Dean Clark on
 8    behalf of Leonard Lujan -- is that once we get the
 9    documents and we fashion a protective order, I'd ask
10    that included in that protective order be a provision
11    that under no circumstances do these documents make
12    it to the tablet.  Counsel can carry hard copies in,
13    review them with his client, and take them home at
14    the end of the day, Judge.  That is our main concern.
15              THE COURT:  What did the protective order
16    on Eric Duran say?
17              MR. COOPER:  Your Honor, I just spoke with
18    Ms. Gilbert, and she advised me that the documents
19    were not loaded onto the tablet.
20              THE COURT:  All right.  So everybody in
21    agreement that they won't be put on the tablets?  All
22    right.  So we can include that in the order.  And so
23    that will -- not in Eric Duran's, we'll include them.
24              All right.  If you'll present that order to
25    me, I'll sign this.  And if there is problems next
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7335

 1   week, Mr. Beck, you can get hold of me and we'll see

 2   what the situation is.

 3            MR. BECK:  Sure.  I do want to note we'll

 4   work on our end to get some protective order in

 5   place, but that order to produce still doesn't

 6   comply, without the qualified protective order in

 7   place, with HIPAA.  And so Corrections still can't

 8   provide us -- still cannot provide us the records

 9   without the qualified protective order in place.

10            So that's why I was asking for those other

11   two provisions.  I think we can add those two

12   provisions to that order that you're signing now,

13   along with Mr. Clark's request they not be placed on

14   the tablet, and that at least we can get things

15   moving to the extent that Corrections has --

16            THE COURT:  Why don't I just put at the

17   bottom here, "Conditioned on entry of a protective

18   order."

19            MR. BECK:  Yes, Your Honor.  As I said,

20   we'll --

21            THE COURT:  Then 2, "Documents will not be

22   put on tablet."  Any problem with me adding that, Mr.

23   Cooper?

24            MR. COOPER:  No, Your Honor.  Thank you.

25            THE COURT:  Is that all right putting it on



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7336

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 48

```
 1   the entry of the production order?  Does that work
 2   for you, Mr. Clark?
 3            MR. CLARK:  Yes, Your Honor, that's fine.
 4            THE COURT:  Okay.  All right.  So I'll hand
 5   this to Ms. Bevel.  Do you want her to go ahead and
 6   file it?
 7            Do you have something else, Mr. Beck?
 8            MR. BECK:  I don't, Your Honor.
 9            MR. COOPER:  It is, Your Honor.  Thank you.
10            THE COURT:  All right.  Mr. Cooper.
11            MR. COOPER:  Thank you, Judge.
12   BY MR. COOPER:
13       Q.  So Mr. Lujan, on July 5, 1998, you were at
14   Bernalillo County Detention Center; correct?
15       A.  Yes, sir.
16       Q.  And on that day --
17            THE COURT:  Why don't you do this, Mr.
18   Lujan:  Can you pull your seat up?  We're going to
19   pull the microphone as close to your mouth as
20   possible.
21            THE WITNESS:  Is that fine?  How's that?
22            THE COURT:  That sounds better.  Thank you,
23   Mr. Lujan.
24            THE WITNESS:  Thank you.
25       Q.  And on that day you killed Felix Animal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7337

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 49338

```
 1    Martinez; correct?

 2          A.   Yes, sir.

 3          Q.   And the way you came about to get to that

 4    point is prior to that you and Freddie Munoz had been

 5    out at Milan; correct?

 6          A.   Yes, sir.

 7          Q.   And while you were out there, you talked

 8    with Angel Munoz; correct?

 9          A.   Yes, sir.

10          Q.   And Angel is not related to Frederico, is

11    he?

12          A.   No, sir.

13          Q.   Okay.  And Angel at the time was the jefe,

14    he was the head of SNM, wasn't he?

15          A.   Yes, sir.

16          Q.   He was the heavy, heavy; he's the big dog,

17    no?

18          A.   Yes, sir.

19          Q.   And he told you and Freddie to go back and

20    hit Animal, right?

21          A.   Yes, sir.

22          Q.   And so you went back eventually to BCDC --

23    that's the old jail that was down on like 4th and

24    Roma?

25          A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7338

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 50

1        Q.   So while you were there, you and Freddie

2   and a guy named Manuel Benito talked about how you

3   were going to hit Animal; correct?

4        A.   Yes, sir.

5            MR. BECK:  Objection, Your Honor.  I don't

6   see how this is getting into his cooperation or the

7   James statements.  And the James statements aren't

8   part of this, so I don't see how this is getting into

9   his cooperation.

10           MR. COOPER:  Your Honor, I believe that it

11  is, because it sets the stage as to what he was

12  looking at in terms of the need to cooperate.  And

13  what he was looking at -- this was prior to the time

14  that he was involved in the 2001 murders.  I'm trying

15  to develop and show the Court that he had a motive

16  and a reason to cooperate with the investigation of

17  the 2001 murder.  If he had committed this murder,

18  which subjected him at that time to a life sentence,

19  then he would have a real motive to try to work to

20  cooperate with the Government once he learned about

21  the 2001 murders.

22           And I believe that it's relevant to show

23  that -- or for me to develop our theory of the

24  case -- and we're entitled to do that -- that he was

25  in a position to cooperate at a very early point in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7339

 1    time.  There is a statement that was given soon after

 2    the 2001 murders, where we believe that he started

 3    his cooperation.  And I think this kind of sets the

 4    stage.

 5              So I'd ask for some leeway to set this up,

 6    and give the Court the proper context to make a

 7    decision as to what he did to cooperate, how he got

 8    to the point of cooperation, and when that

 9    cooperation occurred, particularly as it relates to

10    the investigation.  We're going to have other

11    witnesses who are going to come to court and testify

12    as to when the investigation by the feds began.  And

13    I think this dovetails into some of their testimony.

14              MR. BECK:  Your Honor, I think that the

15    question here is when Mr. Lujan was signed up as a

16    cooperator, and what he said, and what we don't have

17    anymore.  The reason that he became a cooperator

18    really doesn't matter for this motion.  This is just

19    a fishing expedition to get testimony that they can

20    use at trial.

21              THE COURT:  He's leading him to get the

22    answers, so is not too much fishing.  Let me give Mr.

23    Cooper a little leeway.  I'm not quite tracking where

24    the defendant is going.  So let me give them some

25    leeway, so they can try to explain what their point

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7340

1    is.  Overruled.

2          MR. COOPER:  Thank you, Judge.

3          Q.  So you committed this murder of Animal, and

4    by doing so, you gained some status in the eyes of

5    Angel -- or of Munoz, right?

6          A.  Yes, sir.

7          Q.  And do you remember what you were in

8    custody for in 1998, in July of 1998?

9          A.  I believe it was residential burglaries and

10   some auto burglaries.

11         Q.  Okay.  So in July of 1998, you're at BCDC.

12   In the summer of 2007, when you meet Rich Lewis and

13   you make your first statement with regard to the 2001

14   murders -- there is a period of, what, nine years?

15   What happened -- what was going on in your life

16   between July of 1998 and the time that you first

17   talked with Rich Lewis in the summer of 2007?  Were

18   you in and out of custody?

19         A.  Yes, sir.

20         Q.  And on what sorts of matters?

21         A.  Pretty much the same:  Residential

22   burglaries, and stuff like that, you know.

23         Q.  Okay.  Are you from Albuquerque?

24         A.  Yes, sir.

25         Q.  And what street gang were you involved?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7341

```
 1        A.   Happy Valley.
 2        Q.   Do you remember the first time that you got
 3   to the Department of Corrections?
 4        A.   I believe it was 1987, when I first got to
 5   the Penitentiary of New Mexico.
 6        Q.   Okay.  And did you first go -- you went to
 7   RDC first?
 8        A.   I went to RDC in Grants prior to that, and
 9   then I went to the main facility in Santa Fe.
10        Q.   Okay.  And at some point you became a
11   member of the SNM?
12        A.   I didn't become an SNM member till 1993.
13        Q.   Okay.  So in 2001, you were a member of
14   SNM?
15        A.   Yes, sir.
16        Q.   And today, you're cooperating with the
17   Government; correct?
18        A.   Yes, sir.
19        Q.   In 2001, you were a leader, you basically
20   were taking over Southern New Mexico Correctional
21   Facility, weren't you?
22        A.   Well, I wouldn't say I was a leader.
23        Q.   You weren't?
24        A.   I wouldn't that, you know.  I was
25   somebody's right-hand man, but I wasn't no leader,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7342

```
 1   you know.
 2        Q.   So did you ever become a captain?
 3        A.   No.
 4        Q.   No?  Are you sure?
 5        A.   Um-hum.
 6        Q.   Did you ever tell anybody you became a
 7   captain?
 8        A.   No.
 9        Q.   Okay.  You're just a soldier?
10        A.   Pretty much.
11        Q.   The whole time?
12        A.   Pretty much.  And then I became somebody
13   else's right-hand man.  And then from there, other
14   people thought that I had power, you know.  And, you
15   know, whatever they thought, that was on them.
16        Q.   You became somebody else's right-hand man.
17   Who was that?
18        A.   Billy Garcia.
19        Q.   Okay.  And before that, you were somebody's
20   right-hand man; who was that?
21        A.   I wasn't nobody's right-hand man prior to
22   that.
23        Q.   Oh, okay.  Being a member of SNM, you know
24   the rules, don't you?
25             MR. BECK:  Objection, Your Honor.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7343

```
 1    thought we were going to get into when he cooperated,

 2    and now we're getting into a lot of background

 3    information that's not relevant to this motion.

 4              MR. COOPER:  The next question, Your Honor,

 5    if I may, is when he -- what those rules are, and

 6    then when he violated those rules.  The main rule for

 7    SNM members is:  "You don't snitch."  And that goes

 8    to the meat of this testimony, his cooperation.

 9              THE COURT:  All right.  Overruled.

10        Q.   So the rules, the reglas, the main one is

11    you don't snitch, right?

12        A.   Yes, sir.

13        Q.   You're not supposed to be a rat?

14        A.   Yes, sir.

15        Q.   Bad stuff happens if you snitch, right?

16        A.   Yes, sir.

17        Q.   You get subject to being killed?

18        A.   Yes, sir.

19        Q.   You're aware of a lot of instances where

20    rats have been killed, not only by SNM, but by people

21    in prison, right?

22        A.   Yes, sir.

23        Q.   It's not just a rule of SNM, but it's a

24    rule of prison culture that you don't snitch?

25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7344

```
 1          Q.   You violated that rule, didn't you?
 2          A.   Yeah.
 3          Q.   I want you to think back over the years.
 4    All of the time that you were in custody, from 1993,
 5    when you became a member of SNM, when was the first
 6    time that you violated that rule?
 7          A.   It was 2007.
 8          Q.   So when you talk to STG and give them
 9    information on something that's going on, whatever it
10    is in prison, that violates the rule, doesn't it?
11          A.   Um-hum.
12          Q.   When you talk to the cops, would you -- did
13    you answer that?
14          A.   Yes, sir.
15          Q.   Okay.  Because the court reporter has a
16    hard time writing down nods.  Okay?
17               So when you talk to the cops out on the
18    street, whether it's APD or BCSO or FBI, that
19    violates the rules, right?
20          A.   Yes, sir.
21          Q.   Anytime you talk to the STIU -- even if
22    it's not STIU, it's a CO, that violates the rules,
23    doesn't it?
24          A.   Yes, sir.
25          Q.   So you never talked to STIU?  STG?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7345

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 57

```
 1            A.    Not that I can recall.

 2            Q.    Okay.  So in March of 2001, Mr. Lujan,

 3    Frank Castillo and Rolando Garza were killed at the

 4    Southern New Mexico Correctional Facility; correct?

 5            A.    Yes, sir.

 6            Q.    And after that set of murders, the facility

 7    got locked down?

 8            A.    Yes, sir.

 9            Q.    And some people got shipped out.  Others

10    got put into Seg, where they remained a long time,

11    right?

12            A.    Yes, sir.

13            Q.    You didn't get shipped out, did you?

14            A.    No, sir.  I didn't get shipped out till, I

15    think, six months later.  I ended up getting shipped

16    to Virginia, to Wallens Ridge.

17            Q.    Do you know why you got shipped out?

18            A.    Apparently, they said that me and Charles

19    Saeda (phonetic) and Dale Chavez were going to take

20    Captain Armenta hostage, or something like that, and

21    ended up shipping to us Wallens Ridge.  They shipped

22    us to the North facility first.  And we were there

23    for like about four months.

24            Q.    Then they shipped you out?

25            A.    Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7346

```
 1         Q.   And right after the murders, you didn't get
 2    put in Seg or anything like that, did you?
 3         A.   Like about three days after.
 4         Q.   But that's just everybody, right?
 5         A.   No.
 6         Q.   Just you?
 7         A.   They locked down 16 of us first, 16 of us
 8    SNMers.
 9         Q.   And within three days you got out?
10         A.   No.  They locked us down in -- I think it
11    was J2 Red.  And we stayed there, I was there for
12    maybe six months before I got shipped to the North
13    facility, and then to Wallens Ridge.
14         Q.   And in the days and weeks and months right
15    after the murder, you talked to Tafoya and others
16    from STG, didn't you?
17         A.   Not that I can recall.  I talked to -- I
18    know there was -- one of the STG, they pulled me out.
19    One of them offered me some Copenhagen, and I sat
20    there and I did some Copenhagen.  But he was asking
21    me questions.  And I didn't answer anything he asked
22    me.
23         Q.   What did he ask you?
24         A.   Hum?
25         Q.   What did he ask you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 59348

```
 1          A.   Just asking me questions about the murder
 2     and stuff.   And I didn't answer none of the
 3     questions.   And he showed me some pictures of Frank
 4     Castillo and Looney.
 5          Q.   And he told you that they had a camera that
 6     showed you talking to Billy Garcia, right?
 7          A.   Yes, sir.   I think, yes, sir.   I think
 8     that's what he had told me.
 9          Q.   And did he show you the video of that?
10          A.   No, sir.
11          Q.   You didn't see it?
12          A.   No, sir.   No, I didn't see no video of me
13     and Billy talking.   He just told me they had us on
14     camera talking.
15          Q.   And did you believe him?
16          A.   At the time I did believe him, because at
17     the time they were up there -- all the STG was always
18     on the roof taking pictures of all of us on camera
19     and stuff, following us with their cameras on the
20     roofs, you know.
21          Q.   Do you know if it was video or just --
22          A.   They had us on video.   They would always
23     stand up on the roofs taking videos of all SNM
24     members of what we were doing and stuff in the yards.
25          Q.   And you saw them?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7348

1      A.   Yeah.  Oh, yeah.  Plenty of us have saw

2   them.  There was like 70, 80 of us on the yard there,

3   and all of us knew about it and all of us would see

4   them.

5      Q.   So in 2001, you didn't cooperate with STG?

6      A.   No, sir.

7      Q.   Didn't answer any of their questions?

8      A.   No, sir.

9      Q.   Because to do so would be a rat?

10     A.   Yes, sir.

11     Q.   And you never ever --

12     A.   No, sir.

13     Q.   -- talked to COs or STG?

14     A.   No, sir.  Just that one time that we're

15  talking about now.

16     Q.   And it was only one time that they came to

17  you?

18     A.   Yes, sir.

19     Q.   What did they ask you?

20     A.   That I can recall, it was just that time.

21     Q.   Okay.  What were they asking you?

22     A.   Just simple questions about what happened

23  with Looney, and this and that; what happened, what

24  went down, you know, like that.

25     Q.   What did you tell them?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7349

```
 1          A.   I told them I got nothing to say.

 2          Q.   Did you ever talk with Trent Pedersen?

 3          A.   Not that I'm aware of.  I don't even

 4   remember that name.

 5          Q.   Okay.  He was an FBI agent that was

 6   investigating these murders way back when.

 7          A.   Not really.  To tell you the truth, I don't

 8   remember him.

 9          Q.   Do you remember Daniel Howington?

10          A.   No, sir.

11          Q.   An FBI agent?

12          A.   No, sir.

13          Q.   How about Jennifer Sparks?

14          A.   No, sir.

15          Q.   Jennifer was an FBI agent.

16          A.   I never talked to -- not one female back in

17   them days.

18          Q.   So on August 8th of 2007, you gave a

19   statement to a detective in Albuquerque by the name

20   of Rich Lewis, right?

21          A.   If I recall, the first statement I gave

22   about anything was to the head of the STG over there

23   in MDC, Matt Candelaria.  He's the first one I talked

24   to.

25          Q.   So tell me about that.  You talked to Matt.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7350

```
 1    How did you -- did you know Matt?

 2         A.   Yeah, I went to high school with him.

 3         Q.   Okay.  And he was a captain there at the

 4    time?

 5         A.   Yes, sir.

 6         Q.   Where did you go to high school?

 7         A.   Rio Grande, Rio Grande High School.

 8         Q.   Were you guys in the same grade?

 9         A.   Yes, sir.

10         Q.   So Captain Candelaria doesn't make the

11    rounds and go through BCDC, and into each of the

12    various pods, does he -- or at that time?

13         A.   At that time?  At that time, he always made

14    his rounds.

15         Q.   Okay.  What about -- there was a CO by the

16    name of Ellis.  Do you remember --

17         A.   Yes, sir, Jason Ellis.

18         Q.   -- Jason Ellis?  Did you talk to him about

19    it as well?

20         A.   Yes, sir, he was there.  He was there when

21    I talked with Matt Candelaria.

22         Q.   Okay.

23         A.   He was present.

24         Q.   Did Jason run your pod?

25         A.   As far as I remember, I think so.  I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7351

 1    it was Jason that ran the pod.  And then below him

 2    was Gallardo -- I don't remember Officer Gallardo's

 3    first name.

 4         Q.   And back in that time, the guys would sit

 5    in -- the pod had two doors where you could come in

 6    and out, little sally port doors, and right in the

 7    middle was a big glass control room.  And the COs

 8    would generally sit in there, right?

 9         A.   No.  Over there in Seg 3 at MDC, in Seg

10    4 --

11         Q.   No, we're not at -- oh, we are at MDC.  I'm

12    sorry, you're right, you're right.  Forget that.

13         A.   In Seg 3 and Seg 4, it's just a sliding

14    door that opens, and then another sliding door that

15    let's you in.  And it's one top row, one bottom row.

16    I'd say there is about maybe 20 cells on the bottom

17    and top.  And then there is two top -- bottom and top

18    row that has like six or seven guys in them.

19         Q.   Okay.  I'm sorry, I was thinking about

20    BCDC.  I'm an old guy, you know?

21         A.   No, that's okay.

22         Q.   But anyway, so this conversation in 2007 --

23    BCDC had long since closed -- we're at MDC, and the

24    Seg unit that you were in is as you described it;

25    correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              A.   Yes, sir.

 2              Q.   So you first talked for CO Ellis and said,

 3     Hey, I want to talk with -- I want -- I have some

 4     information, right?

 5              A.   No, I didn't say that.

 6              Q.   No?

 7              A.   No.

 8              Q.   What did you say?

 9              A.   I told -- I wasn't feeling too good at the

10     time.  I was feeling real sick and everything, and --

11              Q.   How long had you been in the facility?

12              A.   I'd say I'd already been maybe in a couple

13     of months.

14              Q.   You were still feeling sick?  From what?

15              A.   I had a lot of medical conditions with my

16     stomach, you know, and I was vomiting a lot and

17     everything.  And at that time Billy Garcia had

18     already went to Seg 4, and I went to Seg 3.

19              Q.   Why did Billy go to Seg 4?

20              A.   Apparently, they sent me a kite telling me

21     that he had PC'd from Seg 3 to Seg 4.

22              Q.   And who was at Seg 3?

23              A.   I was in --

24              Q.   What SNM members were in Seg 3?  There was

25     Gerald?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7353

```
 1        A.   Gerald Archuleta.

 2        Q.   Freddie Munoz?

 3        A.   No.

 4        Q.   Freddie wasn't there?

 5        A.   No, Freddie Munoz wasn't there.

 6             MR. BECK:  Objection, Your Honor.  I don't

 7   see the relevance of who was there to when he

 8   cooperated and what information he provided.

 9             MR. COOPER:  Your Honor, I believe that it

10   helps set the stage.  I'll move on.

11             THE COURT:  Let's take our break.  If

12   you're going to move on, let's take our break.  We'll

13   be in recess for about 15 minutes.

14             (The Court stood in recess.)

15             THE COURT:  All right.  I think we've got

16   an attorney for every defendant.  Look around, make

17   sure.

18             MS. HARBOUR-VALDEZ:  Your Honor, I think

19   Mr. Benjamin is on a conference call with Cari Waters

20   right now.  She just called back, so Mr. Gallegos

21   does not have an attorney.

22             THE COURT:  Okay.  We'll hold just a second

23   then.  I'm sorry, Mr. Gallegos, I looked over there

24   and didn't see that empty chair next to you.  So I

25   apologize.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  I apologize.
 2              THE COURT:  They told me where you were.
 3    Don't worry about it.  All right.  I think everybody
 4    is back in ready to go.
 5              Mr. Lujan, I'll remind you that you're
 6    still under oath.
 7              Mr. Cooper, if you wish to continue your
 8    direct examination of Mr. Lujan, you may do so at
 9    this time.
10              MR. COOPER:  Thank you, Your Honor.
11              THE COURT:  Mr. Cooper.
12    BY MR. COOPER:
13        Q.   So you gave the recorded statement to Rich
14    Lewis on August 8, 2007, right?
15        A.   I think so.
16        Q.   And that was at district court.  He was
17    there with Troy Davis, the Assistant District
18    Attorney; Gary -- or, no, Jeff?
19        A.   I don't know.
20        Q.   Some investigator?
21        A.   Yes.
22        Q.   You remember that meeting, right?
23        A.   Yes, sir, I remember that.
24        Q.   Okay.  I want to take you back a little
25    ways from that meeting.  And a moment ago you said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7355

```
 1    that you had a meeting with Matt Candelaria.  You
 2    talked to him, did an interview with he and -- is it
 3    Jason?
 4         A.   It was Jason Ellis.
 5         Q.   Jason Ellis.  Do you remember the date of
 6    that meeting?
 7         A.   I don't recall the exact date, but I
 8    remember he was the first one, because we were in his
 9    office.  And at that time that's when I was getting
10    real sick, throwing up and everything, vomiting.
11              And if I recall, I had gotten out of the
12    county jail, and I was out for, I think, 17 days, or
13    something like that, and went back.  And when I went
14    back, there was already -- because me and Billy
15    Garcia, we were trying to do a power move against
16    Gerald Archuleta, and whoever was standing with him.
17    And when I came back into the county jail, they put
18    me in Seg 4.  And I guess Billy Garcia was sitting
19    there.  He was doing time in Seg 3 at the time.  And
20    all of a sudden Billy Garcia comes into Seg 4.  But
21    they don't put him on the tiers where they usually
22    put the SNMers, together on the top small tier or
23    bottom tier, they put him on the long tier where they
24    have all the guys that are from different
25    organizations that have PC'd and stuff.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And about five, 10 minutes after, I get a
 2    kite, which is a letter saying that he PC'd from Seg
 3    3.  And everybody that was with us there at the time,
 4    I told them, "Don't treat him any different or
 5    nothing till we know exactly what's going on," you
 6    know.  And we treated Billy the same till we found
 7    out what was going on and stuff.
 8              But at that time I had already approached
 9    Jason Ellis a few times asking him to move me to Seg
10    3.
11      Q.   Okay.  So you brought up a couple of things
12    that I'd like to ask you about.
13      A.   Okay.
14      Q.   You got a kite saying that he was PC'd --
15      A.   From Seg 3.
16      Q.   -- from Seg 3?
17      A.   Yes.
18      Q.   And you said:  Don't anybody move on --
19    don't treat him any different.  Why do you say that?
20      A.   Because I was Billy Garcia's right-hand
21    man.  That was my -- that was who I stuck with.
22      Q.   Okay.  I'm sorry, I didn't make -- I need
23    to give you a better question.  So is there something
24    about PCing yourself that causes problems for you?
25      A.   If you PC -- that's protective custody --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7357

```
 1    that means that you went and you did something, or

 2    you didn't want to be around somebody, or you did

 3    something wrong.

 4         Q.   And so what happens to people who PC?

 5              MR. BECK:  Objection, Your Honor.  I think

 6    we're getting far afield of when he cooperated and

 7    why he cooperated, and what he said.

 8              MR. COOPER:  Judge, I'm just following up

 9    on what he testified to.

10              THE COURT:  Well, I am having trouble

11    tracking why this is relevant.  But I'm also have

12    having trouble sustaining any objections, because I

13    can't figure out where we're going.  So I'm going to

14    overrule the objection.  But I've got to tell you I'm

15    not tracking what we're doing here.

16              MR. COOPER:  Thank you.

17         Q.   So people get in trouble, and they're in

18    danger if they PC, right?

19         A.   Yes, sir.

20         Q.   So you got sick, you were vomiting, and you

21    had to get out of your cell, and they took you to

22    Matt Candelaria's office?

23         A.   No, I told them -- they came -- they came

24    to my cell, and I told them, "I'm not feeling good,"

25    and everything.  I hadn't made the decision to go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7358

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 70359

```
 1    against the SNM.  I didn't make that decision at that

 2    time.  What happened is I was feeling sick and

 3    everything, and I told them that they needed to get

 4    me to medical and everything.  And while we were on

 5    the way taking me to medical, that's when I told

 6    them, you know what, I don't want no more of this,

 7    you know, I'm ready to talk and everything, you know?

 8         Q.   So you didn't go to medical?

 9         A.   Yeah, I went to medical, and then went to

10    Matt Candelaria's office.

11         Q.   And this was sometime after March the 1st,

12    2007?

13         A.   This was way after March 1st.  This was in

14    2007, when all this was going on with me and Billy

15    Garcia.

16         Q.   Okay.  On March the 1st, 2007, you were

17    taken to get -- to give DNA samples for the Animal

18    murder; correct?

19         A.   I think so.  Because I wasn't taken over.

20    They put me in booking, and a detective came in and

21    did that -- did the swab on me.

22         Q.   Was that the same detective that you

23    eventually gave a statement to?

24         A.   I believe so.

25         Q.   On May 4, 2007, Frederico, who participated
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1     in the Animal murder with you, he pled guilty to

 2     first degree murder, right?

 3          A.   Yes, sir.

 4          Q.   And at that time there was a death penalty

 5     in New Mexico, wasn't there?

 6          A.   Yes, sir.

 7          Q.   And killing an inmate would subject you to

 8     the death penalty?

 9          A.   Yes, sir.

10          Q.   So Frederico pled guilty to first degree

11     murder, and he ended up getting a life sentence for

12     that, right?  And that was on May 4th.  You knew that

13     they had already taken DNA from you with regard to

14     the Animal murder; correct?

15          A.   Yes, sir.

16          Q.   And you knew that Freddie Munoz, who had a

17     history of cooperating, was probably talking to them

18     to tell them who else participated; correct?

19          A.   Yes, sir.

20          Q.   And so he pled on May 4th.  And you knew

21     that soon after that, if not before that, he would

22     implicate you and rat you out?

23          A.   Not necessarily.  What was going on at that

24     time is me and Billy Garcia -- Billy Garcia was on

25     the top tier, on that long top tier, and I would



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7360

1   still talk to him, like I've always talked to him.

2   And I kept going -- they kept taking me to court, and

3   I kept telling Billy that -- Billy Garcia -- I kept

4   telling him that, you know, that Playboy is probably

5   going to testify against me.  And he kept telling me,

6   "Take it to trial, take it to trial."  So when Billy

7   Garcia was telling me to "Take it to trial," I

8   started getting weary with him, with Billy Garcia,

9   why is he telling me to take it to trial, when he

10  knows the same thing that I know, that Playboy, that

11  Freddie Munoz, is probably going to talk.  But Billy

12  Garcia keeps trying to push me to take it to trial,

13  and I'm thinking:  What's going on here, you know?

14          So I wasn't necessarily sitting there

15  thinking that that's what was going on, that Freddie

16  Munoz was going to testify against me.  I just had

17  that feeling, you know.  That's all it was, was just

18  a feeling.  I didn't know he was going to do it, you

19  know.

20      Q.   Sure.

21      A.   And every time I went to court, they would

22  postpone it, postpone it.  I kept telling Billy

23  Garcia, I kept telling him, Hey, this is what's going

24  on.  And Billy is the one that's telling me, "Take it

25  to trial."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And they came and offered me a plea bargain
 2    for 15 years, and I took that plea bargain.
 3         Q.   Let me back up, though.  But before they
 4    offered you that plea bargain, you had already
 5    talked --
 6         A.   Yes, sir.
 7         Q.   -- to Matt Candelaria, right?
 8         A.   Yes, sir.
 9         Q.   So it was after they took your DNA sample,
10    after Freddie pled guilty to first degree murder, you
11    started vomiting, you got sick, you went to medical,
12    came out of medical, said, "I've got to go see my
13    childhood friend, Matt Candelaria; take me to Matt's
14    office," right?
15         A.   It wasn't -- Matt Candelaria wasn't my
16    childhood friend.  We went to high school together.
17         Q.   Okay.  Your high school friend.
18         A.   We didn't hang out together, nothing like
19    that.
20         Q.   But you knew him from high school?
21         A.   Yeah, I knew him.
22         Q.   So a former classmate --
23         A.   Yes, sir.
24         Q.   -- was at the jail.  So you went to talk to
25    Matt Candelaria?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    Um-hum.
 2          Q.    And was there -- there is an STG Unit at
 3    MDC; correct?
 4          A.    Yes, sir.
 5          Q.    And was an STG officer present when you
 6    were talking to Matt?
 7          A.    Yes, sir.  Matt Candelaria was the head of
 8    STG at that time.  And Jason Ellis was his second in
 9    command.
10          Q.    So you were talking not to somebody who is
11    a captain that runs the kitchen, or --
12          A.    No, I was talking to the gang unit.
13          Q.    You were talking to the guys, okay.  And
14    when you got there, describe for me Matt's office?
15          A.    Pretty much just a desk, and you know,
16    sometimes you would have canteen sitting there to --
17    because some of us from the SNM, when we'd come over
18    there to that facility, I don't know why they would
19    do it, but sometimes they would give us care
20    packages.  And Billy Garcia can testify to that
21    himself.  He knows, because they done it for him
22    before.
23          Q.    Sure.
24          A.    And they've given us shampoo, or soups, and
25    stuff like that.  So he has things like that in his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7364

1    office, he has different stuff in his office hanging,

2    you know.

3         Q.   But there is a desk; he sits behind the

4    desk.  There is a couple of chairs?

5         A.   Yes, sir.

6         Q.   Is there a big conference table?

7         A.   No, sir.

8         Q.   So you talked to Matt and Jason.  What did

9    you tell Matt and Jason?

10        A.   I just -- I told Matt right away, I told

11   him, "You know what, I'm done with this, man.  I'm

12   tired.  I'm ready to just talk, dude.  I'm ready, you

13   know, I'm ready to testify against anybody," you

14   know.  I told him, "I'm tired of this bullshit."

15        Q.   Did you tell him what sort of information

16   that you had?

17        A.   Yeah.

18        Q.   Did he tape record that?

19        A.   No, I don't think he did.

20        Q.   You didn't see a tape recorder on the desk?

21        A.   No, not that I can remember, no.  Not that

22   I can recall.  I didn't see a recorder.

23        Q.   Okay.  And how long did that conversation

24   last?

25        A.   It lasted quite a while.  It lasted quite a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7364

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 76

1   while.  And they took me back, and they put me in Seg

2   4.

3          Q.   Okay.  Before we go back to Seg 4, let's

4   talk about what it was that you guys talked about

5   that took quite a while.  So you told him:  I'm tired

6   (speaks Spanish), I'm done with this.  Let me tell

7   you, let me -- help me get out of this position,

8   right?

9          A.   Yes, sir.

10         Q.   So he was the first one that you said you

11   wanted out?

12         A.   Yes, sir, him and Jason Ellis.

13         Q.   Him and Jason?

14         A.   Jason.

15         Q.   If you took long time, you talked about a

16   lot of things.

17         A.   Yeah.

18         Q.   What was the first thing you talked about?

19   Was it the Animal murder?

20         A.   No, it wasn't even that, that we talked

21   about.  The first thing we talked about was the stuff

22   that was going on with me and Billy and Gerald, and

23   all that power move and all that.  I started talking

24   about that, and giving up about -- talking about that

25   stuff and telling him what was going on there and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   stuff, and you know.
 2       Q.   And that power move had been going on for a
 3   long time, que no?
 4       A.   Um-hum.
 5       Q.   It had been going on since back when you
 6   were even at Southern?
 7       A.   Yeah, it had been going on for a while.
 8       Q.   For -- was it before 2000?
 9       A.   Yes.
10       Q.   Billy never liked Gerald, right?
11       A.   No.
12       Q.   No.
13       A.   No.  Him and Julian Romero, Billy and
14   Julian, and you know, they just didn't see eye to
15   eye.  And, you know, there was conflict there always.
16       Q.   Billy and Julian didn't see eye to eye with
17   Gerald?
18       A.   Yeah.
19       Q.   But Billy and Julian did see eye to eye?
20       A.   Billy Garcia and Julian Romero -- Billy
21   Garcia and Julian Romero were real, real good
22   friends.
23       Q.   They were more brothers than you and --
24       A.   Yes, sir.
25       Q.   -- all of the carnals, right?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7366

```
 1          A.    Yes, sir.

 2          Q.    So Billy and Julian were really tight?

 3          A.    Yes, sir.

 4          Q.    So you're talking to Matt about how tight

 5    Julian and Billy are, how they don't get along with

 6    Gerald.

 7          A.    No.  I didn't tell him anything about

 8    Julian, just about what me and Billy were doing, what

 9    was going on with me and Billy, and the stuff with --

10    I don't know if it was Max or -- Billy Garcia's

11    nephew's name was -- because Billy Garcia's nephew

12    was supposed to go and hit Gerald Archuleta.  And he

13    was following Gerald Archuleta, and they met up over

14    there at that methadone clinic.  And apparently,

15    Billy Garcia's nephew pulled out a gun on Gerald.

16    And Gerald grabbed the gun and shot Billy's nephew,

17    you know, that's what we were talking about.  I was

18    talking about that struggle and all that.

19          Q.    Did Billy's nephew ever tell you about how

20    that happened, about that incident?

21          A.    I already knew.

22          Q.    Did Gerald ever tell you about that

23    incident?

24          A.    No.

25          Q.    You heard it just on the street?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7367

```
 1        A.   Yeah, I already knew what had went down.

 2        Q.   And how did you know what had went down?

 3        A.   Word-of-mouth.

 4        Q.   Word-of-mouth?

 5        A.   Yeah.

 6        Q.   From somebody else?

 7        A.   Yeah.

 8        Q.   So you told Matt and Jason about that sort

 9   of stuff.  What else?

10        A.   I told them about that that happened, and

11   all that.  And then I was telling them about how Styx

12   and Arturo, how they had all put a hit on me because

13   I didn't send Styx money and stuff.  So they wanted

14   to kill me because I didn't send them money, and this

15   and that.  And I told him about all that and

16   everything.  And then I told them about -- let me

17   see, let me make sure -- yeah, that's what we were

18   talking about.  I told them about that hit and

19   everything.

20             And then I told them about the

21   consideration that me and Gerald had through the

22   vents, where we were talking about Popeye.  And I

23   told -- and that's Anthony Apodaca -- and I told them

24   that me and Gerald had -- me and Gerald sat there,

25   and I asked Gerald why he went and did that to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7368

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 80369

1   Popeye, why he hit Popeye, ordered the hit on Popeye,

2   and everything.  And he tried to deny it and this and

3   that.  And I told him, "Ese, you know what, Gerald,

4   you already know, ese, if I can get you, I'm going to

5   get you, you know."

6            And he told me the same thing, "If I can

7   get you, I'm going to get you."  Because I was the

8   only one besides -- because see, the ones that were

9   with Billy Garcia in the county jail -- see, at that

10  time, all of us -- see, we thought that everybody was

11  with us.

12           MR. BECK:  Objection to the narrative.

13           THE COURT:  All right.  Do a little Q and

14  A.

15           MR. COOPER:  I will, Judge.

16      Q.   So you were in the county jail, and in the

17  pod that you're speaking of, Billy was by himself?

18      A.   No, Billy was already in Seg 4.

19      Q.   Okay.  And who else was in Seg 3?

20      A.   I was there by myself.

21           MR. BECK:  Objection, Your Honor,

22  relevance.

23           THE COURT:  What's the relevance?

24           MR. COOPER:  Your Honor, he was trying to

25  tell his story and I'm allowing him to do so.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7369

1           THE COURT:  Well, why don't you be more in

2     control.  Why don't you try to get to points that I

3     need to hear to decide this motion.

4           MR. COOPER:  Thank you, Judge.

5       Q.   So at the time -- so what else did you talk

6     to Matt Candelaria about?

7       A.   That, and just about a few other things,

8     you know, just a few things about --

9       Q.   Give me the first thing you talked to him

10    about, or the next thing talked to him?

11      A.   It was about the power struggle me and

12    Billy were doing, just that kind of stuff and

13    everything.  But I didn't get into any detail about

14    of the SNM or anything of that until me and Troy

15    Davis -- I had that conversation with Troy Davis and

16    everything, with my attorney there.

17      Q.   Okay.  So during this conversation with

18    Matt and Jason, it was mostly about SNM politics?

19      A.   Yeah.

20      Q.   So it wasn't about specific incidents

21    that -- you talked a little bit about what happened

22    with Popeye.  But for the most part, it was other

23    stuff.  You didn't talk about the 2001 murders or the

24    Freddie Sanchez or anything later?

25      A.   No.  If I recall, if I remember, if I

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                              1-800-669-9492



1    recall, I brought up about Animal, I brought about

2    that murder with me with me and Playboy.

3          Q.   I would think that you would, because --

4          A.   If I recall, me and him talked about that.

5    You know, I brought that up.

6          Q.   That was on your mind heavy at that time,

7    wasn't it?

8          A.   Oh, yeah, but I had been expecting it.  All

9    that whole -- all the whole time that I wasn't

10   comfortable, the whole nine years that we got away

11   with it, I wasn't comfortable, because I always knew

12   something was going to happen.

13         Q.   Eventually?

14         A.   You know, I always knew.

15         Q.   So you talked a little bit about Animal.

16   Anything else?

17         A.   No, just pretty much all that.

18         Q.   And do you think this conversation lasted

19   two hours?  Three hours?

20         A.   I would say about a good hour and a half.

21         Q.   An hour and a half, okay.

22         A.   A good hour and a half, couple hours.

23         Q.   Have you ever seen a statement that either

24   Matt or Jason prepared concerning what you said?

25         A.   No, sir.  No, sir, but part of my plea

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                          1-800-669-9492
                                                                 e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7371

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83

```
 1    bargain at that time -- part of my plea bargain at
 2    that time, when I signed it for the 15 years, part of
 3    the agreement on the plea bargain was for them to
 4    transport me within a couple of days.  And Jason
 5    and -- if I remember, it was Jason and -- no, it
 6    wasn't Jason.  It was Matt Candelaria and the other
 7    Candelaria that was part of the gang unit at that
 8    time, too, because it was a younger Candelaria -- I
 9    don't remember his first name.  He was part of the
10    gang unit.  They're the ones that transported me
11    right away to RDC there in Los Lunas, you know, and
12    they transported me right away.  And that was the
13    last time I seen him, heard of him, anything.
14         Q.   After the plea or after sentencing?
15         A.   After sentencing.
16         Q.   So you met with Candelaria and Jason for
17    about an hour and a half, with Matt Candelaria and
18    Jason, for an hour and a half.  At some point they
19    called Rich Lewis, didn't they?
20         A.   Yeah.
21         Q.   And Rich came and talked to you on July 25.
22    Do you remember that?
23         A.   No, I think -- I think after I talked with
24    Matt and Jason, I think the other -- the conversation
25    I had after that was the one that I had in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    courtroom, with Troy Prichard and all of us sitting

 2    in there.  I think that was the first time that --

 3    other than the first conversation with Jason and

 4    them.  Because in the other -- when I talked with

 5    Troy Prichard, when I talked with him, Jason Ellis

 6    and Matt Candelaria were in there also.

 7         Q.   So you don't remember having a conversation

 8    with Rich Lewis sometime prior to that conversation

 9    at district court?

10         A.   No.  All I remember is the detective coming

11    to hit me with the charges of premeditated capital

12    murder on Animal.  And they swabbed me.  And after

13    that, I started going to courts and everything.  And

14    then I went in -- I went in there.  We went into, I

15    think it was Judge Murdock's room, where he has his

16    court and stuff, we went into a room, and we sat at a

17    table, and that's where we --

18         Q.   Big table, like a jury room?

19         A.   Yes, sir.

20         Q.   Okay.  And you know that interview with

21    Rich Lewis was tape-recorded, wasn't it?

22         A.   Yes, sir.

23         Q.   And Rich Lewis was there, Troy Davis was

24    there, his investigator was there, you were there,

25    right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1         A.   Yes, sir.

 2         Q.   I don't think that your lawyer was there

 3    that time.  I think he showed up -- and your lawyer

 4    was Troy Prichard?

 5         A.   Yes, sir.

 6         Q.   I think he showed up the middle of the next

 7    day.

 8         A.   Yeah, he showed up -- I think he showed up

 9    right when one was already going.

10         Q.   Almost done?

11         A.   Yeah.

12         Q.   So do you remember very early in the

13    interview on August 8, 2007, where Rich Lewis is

14    introducing everybody that's in the room in that jury

15    room, in Judge Murdock's courtroom, and he says:  The

16    district attorney is right here, his investigator is

17    here, and the police department investigator is here.

18              You said, "Okay."

19              And then he said, "Um, I know last time you

20    talked about federal involvement and going into the

21    witness security program."  Do you remember saying

22    that?

23         A.   Yes, sir.  I -- at the time, I told them

24    that I wanted to go into the witness protection

25    program.  And I wanted to make sure that my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7374

1    girlfriend at the time was going to be safe, and --

2    because she was pregnant.

3         Q.   But when I read this, it appears to me that

4    you had talked to Rich Lewis previously.

5              MR. COOPER:  Your Honor, may I approach the

6    witness?

7              THE COURT:  You may.

8         Q.   Let me know, Mr. Lujan, when you finish

9    reading it.  And I really direct your attention to

10   the part that's underlined in yellow.

11        A.   I don't recall this conversation right

12   here.  Because at the time I think -- I think I was

13   pretty, you know, nervous and everything, with what

14   was going on at the time.  But I don't recall this

15   conversation here.  And I've never spoke of -- I

16   don't remember ever speaking of ATF.  Why would I

17   speak of ATF?

18             MR. COOPER:  May I approach, Your Honor?

19             THE COURT:  You may.

20        A.   I don't recall that conversation.

21        Q.   So when it says, "I've already talked to an

22   ATF agent," that's Rich Lewis saying that; he's

23   telling you he talked to an ATF agent; correct?

24        A.   Yes.  And I don't remember that.

25        Q.   Okay.  I guess my point, Mr. Lujan, is that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7375

1    it appears to me, when I read this, that Rich Lewis

2    says, "I know last time you talked about federal

3    involvement.  You wanted some help.  You wanted to

4    stay safe and secure.  You wanted to get into the

5    witness protection program."  And you must have

6    talked to Rich Lewis about that, because during this

7    conversation on August 8, he tells you:  "The last

8    time we talked, Mr. Lujan, about the witness

9    protection program.  I've already looked into it for

10   you.  In fact, I've talked to an ATF agent."

11          And at the next interview he brings Gary

12   Ainsworth, an FBI agent, to that interview, right?

13          MR. BECK:  Objection, compound, your Honor,

14   I'm not sure which questions he's asking Mr. Lujan.

15          THE COURT:  Well, see what he does with it.

16   Overruled.

17       Q.   He's a smart guy.  He can deal with it.

18       A.    At the time -- see, at the time when all

19   this first started and everything, I have never

20   been -- done anything like this or anything, you

21   know?  And I had never asked for witness protection,

22   nothing like that before, nothing.  And, you know, I

23   was kind of nervous, kind of freaking out, you know.

24   But, you know, that's one thing I always told him is

25   "I want to be protected.  I want to be protected."

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                               FAX (505) 843-9492
                              BEAN                                                    1-800-669-9492
                              & ASSOCIATES, Inc.                       e-mail: info@litsupport.com
                              PROFESSIONAL COURT
                              REPORTING SERVICE                                          DNM 7376

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 88

1    And that was my main thing.  I didn't ask for

2    anything else.  I asked them to -- for protection.

3         Q.   And let me tell you what I'm asking.  What

4    I'm asking is, if you remember a conversation with

5    Richard Lewis, the APD detective that you talked to

6    for a long time -- two times that were recorded --

7    I'm asking if you remember having a conversation with

8    him prior to the time that you were in the conference

9    room of Judge Murdock's courtroom?

10        A.   No.  I don't remember that conversation.

11        Q.   Okay.  You don't think Rich Lewis ever went

12   out to MDC to talk to you?

13        A.   If you have it there, then he probably did.

14   But I don't remember it.

15        Q.   Okay.  So in this August 8 interview that

16   you gave Rich Lewis --

17        A.   Okay.

18        Q.   -- you think that was the first time you

19   ever spoke with Detective Lewis?

20        A.   I remember -- the only times I remember

21   having any conversations, I remember having that one

22   with Matt Candelaria, and then I remember going to

23   the courtroom and having that one.

24        Q.   Okay.

25        A.   If I remember correctly, I think there was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7378

1    a detective that did come and talk to me prior to me

2    going to the courtroom, you know.  I think.  I know

3    it's been a while, but, you know --

4         Q.    And where did that conversation occur?

5         A.    I don't know.  I can't tell you because I'm

6    trying remember it.

7         Q.    But you think there was a conversation with

8    the detective?

9         A.    There was.

10        Q.    Do you think it happened at MDC?

11        A.    No, I didn't have no conversations with

12   nobody at MDC.

13        Q.    So if you had one, it had to have been at

14   APD, or in the courthouse?

15        A.    The only time I ever had a conversation at

16   APD headquarters, or anything like that, was when

17   they did the investigation for Animal.  Other than

18   that, I've never been in the APD building before.

19        Q.    Okay.  So in that August 8 statement you

20   describe what occurred in the Animal murder, and you

21   describe what happened in the 2001 murders, right?

22        A.    Yes, sir.

23        Q.    And you talk about having had conversations

24   with Billy down at Southern before those murders?

25        A.    Yes, sir.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7378

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 90379

1     Q.   Was anybody else present when you had those

2     conversations?

3     A.   No.  Me and Billy talked about a lot of

4     different stuff when he got there to Southern.

5     Q.   And nobody else was present?

6     A.   Yeah, there was other people present, you

7     know.  But not for the stuff that meant anything, you

8     know, for all the other stuff that we talked about,

9     just -- excuse my language -- bullshit that we talked

10    about, was just, you know, that.  But when it was

11    serious stuff to talk about, it was just me and

12    Billy.

13    Q.   So after the August 8, 2007 interview, you

14    met at the district attorney's office, mid afternoon

15    on September 12, and at that time you were

16    interviewed by Norman Rhoades, New Mexico State

17    Police Officer; Felipe Gonzalez, New Mexico State

18    Police Officer; Detective Rich Lewis; Troy Davis was

19    there; Gary Ainsworth was there; and then,

20    eventually, Troy Prichard shows up.  Do you remember

21    that?

22    A.   Yes, sir.  Yeah, I remember that one.

23    Q.   And that was at the DA's Office?

24    A.   Yes, sir.

25    Q.   And that was recorded?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7379

1        A.    Yes, sir.

2        Q.    And that happened on September 12, right?

3        A.    Yes, sir.

4        Q.    On September 13 -- well, was the entire

5   discussion with them tape-recorded, do you know?

6        A.    As far as I know, as soon as we started

7   talking, they recorded.  I think there was some times

8   that they shut it off, but it wasn't while we were

9   talking.

10        Q.    Did they ever threaten you to tell you that

11   if you didn't do what you needed to do, you'd be

12   facing the death penalty?

13        A.    No, sir.

14        Q.    Or facing a life sentence?

15        A.    No, sir.

16        Q.    So the next day, an information charging

17   you with second degree murder was charged in your

18   case, right?

19        A.    Yes, sir.

20        Q.    And the day after that there was an amended

21   information charging you with first degree murder,

22   right?

23        A.    Yes, sir.

24        Q.    And five days after that you pled guilty to

25   second degree murder with a firearm enhancement, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7380

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 2381

```
 1    that subjected you to 16 years -- 15 years?

 2         A.   Excuse me, but I don't know what a firearm

 3    enhancement -- I never even had one of those charges.

 4         Q.   Oh, you're right, it wouldn't have been --

 5    I think it was on the document, but it couldn't have

 6    been, right?

 7         A.   Yeah, because I've never been arrested for

 8    a firearm.

 9         Q.   Because what you pled to, there wasn't a

10    gun?

11         A.   There wasn't a gun.

12         Q.   Okay.  So you pled to a 15-year exposure?

13         A.   Yes, sir, with -- I pled with a 15-year

14    cap, to get 50/50 good time on it, and to be

15    transported to RDC right away.

16         Q.   Okay.  So for that murder and for your

17    cooperation, you basically got 7 and a half years on

18    that murder?

19         A.   Yes, sir.

20         Q.   So in the September 12, 2007 interview that

21    you did at the DA's Office the day before the

22    information was filed, a few days before you

23    ultimately pled guilty to the offense, you told them,

24    the investigators, that Tafoya and them from STG said

25    that:  They had me and Billy on camera talking to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7381

```
 1    each other, right?
 2         A.   Yes, sir.
 3         Q.   And you say that you didn't talk to them,
 4    and you didn't tell STG --
 5         A.   No, sir.
 6         Q.   -- at Southern, anything about those
 7    murders?
 8         A.   No, sir.
 9         Q.   You eventually -- once you're sentenced on
10    the Animal murder, you go to RDC, which at that time
11    was at Los Lunas?
12         A.   Yes, sir.
13         Q.   And eventually to PNM?
14         A.   Yeah, I go to PNM North.
15         Q.   Go to North.
16              At some point in time, you begin to start
17    talking to the feds, right?
18         A.   Yes, sir.
19         Q.   Tell me the first time that you talked to
20    them.
21         A.   They came -- the first time they came
22    was -- I started getting real, real sick, and got
23    sent out to St. Vincent's and all that stuff, and I
24    was real, real sick with a bowel obstruction and
25    everything.  I broke a TV and cut my legs, and they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7382

```
 1    sent me to MHTC, the Mental Health Treatment Center
 2    there in Los Lunas.  And I remember, there is where I
 3    had one of the conversations.  And prior to that, I
 4    had a conversation at PNM, I think one time, if I
 5    recall.  I'm not sure.
 6         Q.   And what year would that have been?
 7         A.   I got to PNM in early 2008, or late 2007.
 8    So it had to have been around 2008.
 9         Q.   And so who did you talk to?
10         A.   I forget his name.
11         Q.   He was an FBI agent?
12         A.   Yeah, he was an FBI agent.
13         Q.   It was before Bryan Acee got into the case?
14         A.   Yeah.  It was way before Bryan got into the
15    case.  But he came and he talked to me, I think once
16    or twice there.  And just the one time -- you know, I
17    never asked him for anything, nothing.  They never
18    promised me anything or nothing.  And I just -- I was
19    doing real bad.  I didn't have nothing.  So I went
20    and I asked them if they could help me out with $500,
21    you know.  And I explained to them why.
22              And that's what I used that money for is, I
23    bought me a TV.  I bought me some clothes that I
24    needed, stuff like that, you know.  And that's the
25    only time I've ever asked anybody for help or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7383

Appellate Case: 20-2058  Document: 010110415675  Date Filed: 09/29/2020  Page: 95

```
 1    anything.  Nobody has ever promised me nothing,

 2    nothing like that.

 3         Q.   So that happened in 2008, that the FBI gave

 4    you $500?

 5         A.   Yes, sir.

 6         Q.   And you bought a TV?

 7         A.   Somewhere around there.  Because prior --

 8    because right after that -- right after that is when

 9    I was at MHTC -- it's kind of fuzzy -- it's a

10    little -- MHTC, the Mental Health Treatment Center in

11    Los Lunas, it's a little fuzzy, because at that time

12    I was real sick.  Not with my mind, but sick from

13    illnesses in my stomach.  I had a minor bowel

14    obstruction at that time.  And I had H. pylori, and I

15    threw a TV at the door and cut my legs, and they sent

16    me over there to St. Vincent's.  And at St.

17    Vincent's, from there, they transported me straight

18    to Mental Health Treatment Center in Los Lunas.  And

19    I wasn't even there, I think 24 hours, and they had

20    to send me back out because St. Vincent's botched the

21    surgery.  And they sent me to UNMH.

22         Q.   Okay.  Let me stop you there for a minute.

23    I appreciate you wanting to give me a lot of

24    information.

25         A.   No, I'm --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7384

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 96 of 385

```
 1            Q.   Okay.  So the agent that went to see you,
 2      the FBI agent, do you remember if it was Lance
 3      Roundy?  Does that name sound familiar?
 4            A.   I think -- you know what, I think that is
 5      who it was.  I think that was his name.
 6            Q.   And you think he gave you $500 and talked
 7      to you?
 8            A.   He didn't give me --
 9            Q.   No, no, he didn't give it like that, but
10      they put it on your books?
11            A.   Like I explained a while ago, I never asked
12      them for nothing.  They never promised me nothing
13      like that.  I was doing real bad and I didn't have
14      nothing.  I said, Well, you know what, I'm going to
15      ask them and see if they'll help me, you know.  And I
16      did.  I asked if they'd help me, you know?
17            Q.   Good.
18                 And during the -- from that time until
19      2015, you continued to cooperate to some degree with
20      various agencies; if they ever talked to you about
21      something, you'd talk to them, right?
22            A.   It was always the FBI.
23            Q.   It was always the FBI?
24            A.   The FBI agent, always an FBI agent.
25            Q.   And how often during that period of time
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   would you talk to them?

 2         A.   I talked to -- I talked to an FBI agent, I

 3   think three times.  And then, while I was at MHTC --

 4         Q.   Okay.  Three times before you went to MHTC?

 5         A.   Two or three times before I went to MHTC.

 6   And when I got to MHTC, I wasn't doing too good.  I

 7   was real sick.  I was doing the hepatitis C treatment

 8   and everything.  I told -- I told the head

 9   psychiatrist over there -- now I'm getting stuck -- I

10   told the head psychiatrist there to not let -- I told

11   him, Captain Rodriguez --

12              MR. BECK:  Objection, nonresponsive, Your

13   Honor.

14         Q.   Did you tell them not to give you any more

15   visitors?

16         A.   Yes, sir.  I asked them -- I didn't want to

17   speak to nobody, nobody at all.  And they still came

18   and talked to me.

19              THE COURT:  Did the court reporter hear my

20   ruling?  I said "Overruled."

21         Q.   So how long were you at MHTC?

22         A.   Anywhere between, I'd say six, seven years,

23   six, seven years, somewhere around there.  But they

24   would move me back and forth from MHTC to APA.

25         Q.   What's APA?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          A.   It's for guys that have anger issues, that

2     can't manage -- that have problems, you know.

3          Q.   And where is that located?

4          A.   Right now, it's at the North facility in

5     PNM.

6          Q.   Okay, at the time --

7          A.   At the time it was at Los Lunas.

8          Q.   It was at Los Lunas?

9          A.   Yes, sir.

10         Q.   So you'd go from one unit at Los Lunas to

11    another?

12         A.   Yes, sir.  The Mental Health Treatment

13    Center is completely separate from APA, you know?

14    The Mental Health Treatment Center is -- it's like a

15    hospital.  You know, it's like a hospital.  But APA

16    is completely different.  It's like a management

17    unit.

18         Q.   Okay.  And that's separate than the RDC

19    units?

20         A.   Yes, sir.

21         Q.   And when you were at APA, did the agents

22    continue to come talk to you?

23         A.   Not while I was in APA.  I never talked to

24    nobody while I was in APA.  They came one time with

25    my attorney, and by then, I had already talked to Dr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7387

1    Horowitz.  That's where I got stuck a minute ago.

2    That was the head psychiatrist at the time, Dr.

3    Horowitz.  I had asked him, Captain Rodriguez, and

4    Tim Norman, the unit manager, not to let nobody come

5    and pull me out or nothing, because I wasn't doing

6    too good.

7        Q.   Okay.

8        A.   At that time, I wasn't doing good at all.

9    I was real, real sick.

10       Q.   So at some point of time your lawyer

11   brought an FBI agent to talk with you there?

12       A.   Yes, them and the district attorney came

13   and talked to me.  And the district attorney had a

14   laptop computer with him.  And --

15       Q.   Was it the same district attorney who you

16   met in Judge Murdock's jury room?

17       A.   No, sir.

18       Q.   Troy Davis?

19       A.   No, sir.  This was a district attorney out

20   of over here, out of the Dona Ana.

21       Q.   Was it a U.S. Attorney?

22       A.   I believe so.  I'm not sure.  I'm not too

23   sure.

24       Q.   But it was a prosecutor?

25       A.   Yeah, like I said, I was pretty sick at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7388

1    that time, you know.  I was pretty sick.  But I

2    understood what we were talking about, what was going

3    on and stuff.

4        Q.   And what sorts of things did you guys talk

5    about during that visit?

6        A.   I gave them a full and complete statement

7    of everything.

8        Q.   Of everything?

9        A.   Of everything from -- when the time I

10   became an SNM member, to --

11       Q.   To the time you're in --

12       A.   -- to the time I walked away.

13       Q.   To include what happened in 2001, to

14   Rolando --

15       A.   Yes, sir.

16       Q.   -- and Pancho?

17       A.   Yes, sir.

18       Q.   Okay.  And during that meeting at MHTC, the

19   attorney, the prosecutor, had a laptop, and was --

20       A.   Yeah.

21       Q.   -- was continually typing away?

22       A.   Yes, sir.

23       Q.   Have you ever seen the statement, if any

24   was generated, from that interview?

25       A.   I've seen, like, two or three different

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7389

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 101

```
 1    statements.  But they're pretty coherent with -- they
 2    follow each other, and they all pretty much say the
 3    same thing.  There is like two or three statements
 4    that I've given.  And each one of those statements
 5    don't falter from the other one, that I'm aware of
 6    anyway.
 7         Q.   So two of the statements would be the
 8    statements that you gave to Rich Lewis, right --
 9         A.   Yes, sir.
10         Q.   -- two of those three.  Have you seen
11    others?
12         A.   No, sir.  Just the ones that -- I think the
13    only thing -- the only statements I've seen and that
14    I'm aware of is the ones from court that I did in the
15    courts with Mr. Davis, with Troy Davis, and then the
16    one at MHTC.  I remember speaking with the FBI
17    agents.  I don't know, I don't remember if there was
18    a recorder, or what, there with us.  And I remember
19    just what me and my attorney have talked about.
20         Q.   Okay.
21         A.   But I remember the statements I've given,
22    and every statement I've given has not faltered from
23    the other, that I'm aware of.
24         Q.   Okay.  I don't remember if I asked you
25    whether at that September 12, 2007 meeting, if Gary
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7390

 1   Ainsworth, the ATF agent, was there?

 2        A.   I don't even know who that was.

 3        Q.   Tall, kind of cowboy-looking guy, wearing

 4   cowboy boots, probably --

 5        A.   I can't recall.

 6        Q.   But there were a lot of people; there was

 7   Rich Lewis, Norman Rhoades --

 8        A.   Yes, a lot of people.

 9        Q.   -- Felipe Gonzalez, Troy Davis?

10        A.   There was a lot of people.  But I can't

11   remember all of their names, you know.

12        Q.   So you got indicted in this case with all

13   these guys and a bunch of others, right?

14        A.   Yes, sir.

15        Q.   And that indictment happened in December of

16   2015; correct?

17        A.   Yes, sir.

18        Q.   In March of that year -- so, like nine

19   months earlier, you told the Government that you

20   didn't want to cooperate anymore, right?

21        A.   No, sir.  I've never -- I've never told

22   them that.  I've never told them that.  My attorney

23   came -- my attorney at the time, he came with a

24   paper, and had me sign it, and he told me that they

25   weren't -- that the feds weren't going to prosecute

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7391

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

1    me.  I'm three months to the door, I'm three months

2    to parole, and this comes up.

3        Q.   What are we talking about?  What month?

4    When were you three months to the door?

5        A.   I was going to get out in 2016.  I was

6    getting ready to get out.  Right before -- three

7    months after -- February of 2016, I was going to get

8    out.

9        Q.   Okay.

10       A.   And this came up, all this came up.

11       Q.   But back in March of 2015, did you have a

12   discussion with agents, and perhaps with Jack

13   Burkhead, the United States Attorney -- Assistant

14   United States Attorney who was investigating this

15   case -- that you didn't want to cooperate anymore?

16       A.   I don't remember ever telling them I didn't

17   want to cooperate.  Because I've always cooperated.

18   I've always -- I've always been the same.  I've never

19   faltered that I know of, you know?

20            But there is times -- you've got to

21   remember that there is times, too, where I've been

22   sick, you know, where I've had illnesses, you know,

23   and been sick and stuff, and you know, maybe

24   something went on at that time that I don't remember.

25   But, from what I can recall, and what I remember and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 104

1   everything, I don't remember ever telling anybody

2   that I didn't want to cooperate anymore.

3       Q.   Now, you said you had a letter from the

4   Government telling you that they weren't going to

5   prosecute you anymore.  Tell me about that letter.

6       A.   My attorney at the time -- I forget his

7   name.  Excuse me, what was his name?  The one right

8   before?  I can't remember his name.

9       Q.   The one before Mr. Clark?

10      A.   Yes, sir.

11      Q.   Was he appointed after you got indicted?

12      A.   Yes, sir.

13          MR. BECK:  Objection, Your Honor,

14  relevance.  This seems like a fishing extradition for

15  discovery here.

16          MR. COOPER:  Your Honor, I think it is

17  relevant, in that we're talking about when he was

18  cooperating, when he was not cooperating.  I think

19  that, for our motion to dismiss, we need to show a

20  timeline, basically.  And I think -- I'm asking him

21  about a letter that he says the Government sent him,

22  telling him that they weren't going to -- they

23  weren't going to prosecute.

24          I have another letter --

25      A.   Excuse me --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7393

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105394

 1           THE COURT:  Hold on.

 2      A.   -- I don't mean to interrupt --

 3           THE COURT:  Hold on.  Let me rule on the

 4   objection.  Let me let him establish the timeline and

 5   the attorneys involved.  Overruled.

 6      Q.   So can you tell me, was it a lawyer that

 7   was appointed for you after you were indicted?

 8      A.   It was Daniel Tallon.

 9      Q.   Dan Tallon, okay.

10      A.   The attorney that represented me.  And he

11   came -- I'd say like about three months prior to me

12   getting out and everything, he came, like, three

13   months prior to that, and he told me that -- he gave

14   me the letter and everything, and told me, send it

15   and everything, and he told me that they didn't want

16   to prosecute me no more.  And I said, Okay, you know.

17   He said -- but he also said that they can pick it up

18   later on, you know, so I said, Okay.

19      Q.   Had you already been indicted?

20      A.   As far as I know, yes.

21      Q.   Was he representing you to try to negotiate

22   a deal for you before you got indicted?

23      A.   No, sir.  He wasn't doing anything like

24   that, that I know, that I'm aware of.  He was just --

25   he was representing me because they indicted me.  And

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7394

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page 107 of 395

1   we're trying to see what was going to go on at the

2   time, you know.  And at the time he, all of a sudden,

3   just out of the blue, came and told me that, and so

4   he gave me, he showed me the paper, and everything

5   and all that.  And that's when he said that they

6   weren't going to prosecute me no more.  And I said,

7   okay.  But then later on that they could, if they

8   wanted to.  So I said, Oh, all right.  You know, with

9   that understanding, I knew that later on that they

10  could come.  But wasn't expecting to get hit on this

11  RICO act stuff, you know?  I wasn't expecting that.

12       Q.   Okay.  On December 3, 2015, were you on the

13  street or were you in custody?

14       A.   I was in custody.  I've been in custody

15  since 2007.  I haven't been on the street since.

16       Q.   But you were three months to the door at

17  that time?

18       A.   Yes, sir.

19       Q.   Did you ever make it to the door?

20       A.   No, sir.

21       Q.   So you never told Jack Burkhead or Lance

22  Roundy that you were not going to cooperate anymore

23  back in March of 2015?

24       A.   Not that I can recall.

25       Q.   Did you have a lawyer back in March of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7395

```
 1    2015?
 2         A.   I've already had, I think, three or four
 3    lawyers representing me in this case.  And the only
 4    ones that have really stuck with it is my attorney
 5    representing me now, and then Daniel Tallon; those
 6    are the only two that have stuck with me all the way.
 7    The other ones are only there for a short, minimal
 8    time, and they are gone.
 9         Q.   Did Mr. Tallon represent you on some state
10    matters before this?
11         A.   No, sir.  It was just federal stuff.
12         Q.   Okay.
13              MR. COOPER:  May I have a moment, Your
14    Honor?
15              THE COURT:  You may.
16              MR. COOPER:  Your Honor, I will pass the
17    witness.  Thank you.
18              THE COURT:  All right.  Thank you, Mr.
19    Cooper.
20              Any of the other defendants?  Mr. Burke?
21                   CROSS-EXAMINATION
22    BY MR. BURKE:
23         Q.   Mr. Lujan, I need to clarify that last
24    part.  So once you decided to cooperate, you have not
25    varied from that decision?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7396

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108

```
 1          A.   No, sir.
 2          Q.   Once you made that decision, that was your
 3   decision; you're going to see it through?
 4          A.   Yes, sir.
 5          Q.   And the way you recall events, you've
 6   always told it exactly the same --
 7          A.   Yes, sir.
 8          Q.   -- each and every time?
 9          A.   Yes, sir.  There might have been something
10   that didn't -- but it was pretty much the same way,
11   the same thing.  You know, I might have said it a
12   different way, but it was the same thing.
13          Q.   Yeah.  And in this -- you've pled guilty in
14   this case then?
15          A.   Yes, sir.
16          Q.   And I didn't understand that part either.
17   Were you promised that you weren't going to be --
18   have you been made any promises about what the
19   sentence will be?
20          A.   No, sir.
21          Q.   So you could be facing a life sentence?
22          A.   Yes, sir.
23          Q.   And then -- and I notice -- and we haven't
24   talked about this, and we won't dwell on it -- but
25   you do have some health problems still?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7397

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 109

```
 1          A.   Yes, sir.

 2          Q.   And are you hoping, then, to go to a BOP

 3   facility that has good doctors and such?

 4          A.   Well, I've never been in the feds, so I

 5   really don't know how that works.  So, you know, I

 6   really -- I'm hoping that I get to a medical

 7   facility.  But if I don't, I don't.  You know, I've

 8   been in the State, living with these medical issues

 9   for a long time already, so, you know --

10          Q.   Have there been any discussions about

11   getting to one of the BOP's good hospitals or health

12   care facilities?

13          A.   The only one I've talked to about any of

14   that was my attorney.

15          Q.   Yeah, and I don't want to know about that.

16               So you are going to testify at some point,

17   if you're called as a witness?

18               MR. BECK:  Your Honor, objection to

19   relevance.  This is certainly a fishing extradition.

20               THE COURT:  This seems to me to just be

21   getting into his credibility.  Is his credibility

22   important for this determination?

23               MR. BURKE:  No, not really.  It was my last

24   question.  I'm surprised that this is the line that

25   we're going to draw.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 110 of 399

```
 1              THE COURT:  All right.  Sustained.

 2              MR. BURKE:  All right.

 3              THE COURT:  All right.  Mr. Solis.

 4                       EXAMINATION

 5   BY MR. SOLIS:

 6       Q.   Good morning, Mr. Lujan.

 7       A.   Good morning.

 8       Q.   I just want to follow up on some of the

 9   responses you gave a little while ago.  My name is

10   Eduardo Solis, Mr. Lujan.

11              So you mentioned you were interviewed by

12   Mr. Candelaria and Jason and Rich Lewis; is that

13   correct?

14       A.   Yes, sir -- no, I was interviewed by Jason

15   Ellis and Matt Candelaria.  And Jason was just

16   standing there.  It was pretty much me talking to

17   Matt Candelaria.

18       Q.   And, I'm sorry, you said Alice --

19       A.   Jason Ellis.

20       Q.   I'm sorry, I couldn't hear you.

21       A.   Jason Ellis.

22       Q.   And this was in 2007?

23       A.   Yes, sir.

24       Q.   And were these interviews with all three --

25   well, let me strike that and ask you:  Did you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7399

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 117400

```
 1    interview with Mr. Candelaria, and then you had a

 2    subsequent interview where Jason was present, and

 3    then Ellis --

 4         A.   When I talked to Matt about it, Jason was

 5    present.

 6         Q.   Okay.  And you said Mr. Candelaria, in

 7    response to the question, you saw him taking notes?

 8         A.   Yeah.  He was sitting there, he was taking

 9    notes.  I'm not -- I can't remember if he had a

10    recorder.  I don't think there was a recorder.  But I

11    know he was taking notes.  Because that's STG's --

12    that's what they do, they take notes.

13         Q.   Okay.  And you said -- in response to the

14    question, you talked a lot about the politicking of

15    the SNM at that interview.  Do you remember that?

16         A.   Yes, sir.

17         Q.   What did you discuss about the politicking

18    of the SNM?

19         A.   Just about where me and Billy Garcia were

20    doing a power play, and where me and Wild Bill were

21    over there in the county jail, and while we were

22    there --

23         Q.   When you talk about the politicking, Mr.

24    Lujan, did you get into how that was characterized or

25    what exactly was involved in politicking?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   No.  We didn't talk about something like
 2   that.  We never got into the characterization of
 3   that.  We just pretty much sat there and went with
 4   what was going on, you know.
 5             And Billy Garcia, he's been up there for a
 6   while, and -- you know, so, you know, with me being
 7   his right-hand man, and me and him were sitting there
 8   and we're going against Gerald Archuleta, and Gerald
 9   Archuleta was the one calling all the shots.
10        Q.   Thank you, Mr. Lujan.
11             So those were your words, politicking, the
12   politics of the SNM.  What did you mean by that, if
13   you didn't get into it?
14        A.   The politicking is -- for one, is trying to
15   overplay the other one, you know, like a chess board
16   game.
17        Q.   Like alliances; you form alliance against
18   another --
19        A.   Yeah.
20        Q.   -- and you try to undermine the other
21   person, or the other alliance; is that right?
22             MR. BECK:  Your Honor, objection to
23   relevance.  This is fishing.  If we're talking about
24   what he told them, we've already heard what he told
25   them was politicking.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7401

```
 1              THE COURT:  Well, I'll let him explore a
 2   little bit.  Overruled.
 3              MR. SOLIS:  Thank you.
 4       Q.   So then, the politicking is what I've
 5   described, it involved that, right?
 6       A.   Yes, sir.
 7       Q.   And you understand what "undermining"
 8   means, right?
 9       A.   Yes, sir.
10       Q.   That could take various forms; is that
11   right?
12       A.   Yes, sir.
13       Q.   You could say things about others; some
14   true, some not true?
15       A.   Yes, sir.
16       Q.   And you were a member of the SNM for a good
17   while?
18       A.   Yes, sir.
19       Q.   And then you had a subsequent interview, I
20   think you said, with Troy -- and I'm not familiar
21   with all the names as of yet -- is "Troy" a first
22   name or a last name?
23       A.   What do you mean?  Troy Prichard?
24       Q.   Okay.  Troy Prichard.  And I suspect --
25       A.   That was my attorney representing me at the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7402

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14403

```
 1  time.
 2       Q.   And he was present at the interview you
 3  just talked about, with Mr. Candelaria?
 4       A.   Yes, sir, he was present at that one.
 5       Q.   Okay.
 6       A.   That's the one, that's the interview that
 7  we had in Judge Murdock's chambers.
 8       Q.   So in Judge Murdock's chambers is Troy
 9  Davis -- or Troy Prichard, I think you said?
10       A.   Troy Prichard, I think it was.
11       Q.   Who else was present?
12       A.   Troy Davis was the district attorney at the
13  time.
14       Q.   Okay.
15       A.   Or the Assistant District Attorney.  And
16  Matt Candelaria was there; Jason --
17       Q.   Let me interrupt you there.  Matt
18  Candelaria, Troy Davis, and Troy Prichard -- two
19  Troys; is that right?
20       A.   Yes.
21       Q.   This is a subsequent interview from the one
22  we're talking where Matt Candelaria is present
23  initially; is that right?
24       A.   Yes.  I had -- there was two separate where
25  Matt Candelaria was present.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7403

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 115

```
 1        Q.   Okay.  And did you follow up on the
 2   politicking of the SNM when you had that second
 3   interview?
 4        A.   In my whole statement, pretty much is
 5   everything right there, in my whole statement.  In my
 6   whole statement -- has been the same thing.  And
 7   right there, just in my statement alone, you see
 8   where the politicking was.  I mentioned it --
 9        Q.   And I'm aware of your statement, but I'm
10   wondering -- I beg your pardon for talking over you.
11             I'm aware of your statement.  But was there
12   anything you talked about that's not in the
13   statement?
14        A.   No.
15        Q.   Okay.
16        A.   No, pretty much, it's been always just what
17   I've talked about in the statement.
18        Q.   Okay.  So at the second interview with
19   Candelaria and Troy Davis and Troy Prichard, was what
20   was discussed there similar to what was discussed at
21   the first interview with Matt Candelaria and Jason?
22        A.   Yes, sir.  Every time I've had an interview
23   or talked to anybody, it's been pretty much the same.
24        Q.   So the same topics?
25        A.   The same topics.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7404

```
 1        Q.   Okay.  You've also discussed, you met with
 2   Felipe Gonzalez, State Police Officer Felipe
 3   Gonzalez.  Do you remember that?
 4        A.   No, sir.
 5        Q.   Do you remember saying that a little while
 6   ago?
 7        A.   I don't remember talking with any State
 8   Police.
 9        Q.   Hold on a second.  Give me a second.
10             MR. SOLIS:  May I have a moment, Your
11   Honor?
12             THE COURT:  You may.
13        Q.   So you've never been asked -- a little
14   while ago you were asked if you met at the DA's
15   Office back, about September 12, where you had a
16   meeting with -- not he by himself, but Felipe
17   Gonzalez was present, State Police Officer?
18        A.   I'm not sure.  I don't know everybody that
19   was there.
20        Q.   Okay.  You mentioned the various facilities
21   you've been housed.  Where were you housed in 2001?
22        A.   2001, I was housed in Southern New Mexico
23   Correctional Facility.
24        Q.   How long were you there?
25        A.   I'd say about a year, year-and-a-half.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7405

```
 1        Q.   Do you remember what pod you were in?

 2        A.   I was in K-1, blue.

 3        Q.   When did your stay there begin?

 4             MR. BECK:  Your Honor, objection; this is

 5   clearly fishing.

 6             THE COURT:  What does this -- how are we

 7   tying this?

 8             MR. SOLIS:  I'm simply following up with

 9   the questions that were asked of him earlier, Your

10   Honor.  That's all.

11             THE COURT:  I'm going to sustain this one.

12   I think this is one of the areas where I began to

13   sustain.

14             MR. SOLIS:  Thank you, Your Honor.  I'll

15   pass the witness.

16             THE COURT:  Thank you, Mr. Solis.

17             Any of the other defendants have

18   cross-examination of Mr. Lujan?

19             MR. BENJAMIN:  No, Your Honor.

20             THE COURT:  All right.

21             Okay, Mr. Beck.  I guess I should say yours

22   is cross-examination.

23                    CROSS-EXAMINATION

24   BY MR. BECK:

25        Q.   Good morning, Mr. Lujan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7406

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118

```
1          A.    Good morning.
2          Q.    I'm going to start sort of towards the end,
3     because that's a little bit more fresh in my memory.
4                I think you said the first time that you
5     spoke with law enforcement, as far as you remember,
6     was 2007; is that right?
7          A.    Yes, sir.
8          Q.    And that was with -- I think you said --
9     STG Officers Candelaria and Ellis?
10         A.    Yes, sir.
11         Q.    Then, I think when Mr. Solis was asking you
12    questions, you talked about a subsequent interview
13    with Mr. Davis.  Do you remember that?
14         A.    I'm not sure, but I think I had -- because
15    everything was happening so fast, and I was like
16    getting, like -- I was a little confused at the time,
17    but not too confused where I don't remember the one
18    with Judge Murdock, where I talked in Judge Murdock's
19    office.  But all I remember is, when the detective
20    came and swabbed me, to hit me with first degree
21    premeditated capital murder; and that's where
22    everything started on that, you know.  But I don't
23    remember talking to somebody individually.
24         Q.    I understand.  It sounds to me like, at
25    this time, in 2007, because it was the first time you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7407

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119408

```
 1    were cooperating or "telling," as you might say, it
 2    was a little disorienting to you; fair to say?
 3         A.   Yeah, it was something new to me, and I
 4    was, like, you know --
 5         Q.   And is that because, before 2007, you were
 6    a good SNM Gang member?
 7         A.   Yeah.
 8         Q.   And as a good SNM Gang member -- I think
 9    Mr. Cooper started with you here on this -- you don't
10    snitch, right?
11         A.   Yes, sir.
12         Q.   And you said that you were Billy Garcia's
13    right-hand man, right?
14         A.   Yes, sir.
15         Q.   You and Billy Garcia were close?
16         A.   Yes, sir.
17         Q.   You guys were tight?
18         A.   Yes, sir.
19         Q.   Was he your big homie?
20         A.   Yes, sir.
21         Q.   So you just followed him, right, whatever
22    he would say?
23         A.   Well, I would have done anything he asked
24    me to do.
25         Q.   And he trusted you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7408

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120

```
 1        A.    Yes.

 2        Q.    And you trusted him?

 3        A.    Yeah.

 4        Q.    So, if he told you something, he could be

 5   believe it would be in confidence, as far as you

 6   know?

 7        A.    Yeah.

 8        Q.    Is that why you said that if you talked

 9   about anything -- I think you said "of substance" --

10   you two did it alone?

11        A.    Yes, sir.

12              MR. COOPER:  Your Honor.  Excuse me, I

13   object to the leading nature of this.  I know that

14   it's cross-examination, but it's really his witness.

15   This is not my witness.

16              THE COURT:  Let's not lead.

17              MR. COOPER:  Thank you.

18        Q.    Is that -- did you talk to Mr. Garcia in

19   your cell about the Garza and Castillo murders?

20        A.    Yes -- me and him, we didn't talk about it

21   until he arrived.  And when he arrived, we talked in

22   my cell.  Everybody approached him, hugging him,

23   telling him "Amor," which means love, and, you know,

24   this and that.

25              And I waited in my cell because I knew he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7409

```
 1   was going to come in and talk to me, you know.  And
 2   when he did, the first thing he told me:  "What the
 3   fuck is going on," excuse my language --
 4        Q.   Sure.
 5        A.   -- you know, and he told me that he had
 6   sent word with Earn Dog for me to take over the
 7   llaves from Lino G.  And, you know --
 8        Q.   Let me ask you one -- is Earn Dog Ernest
 9   Guerrero?
10        A.   Yes, sir.
11        Q.   And Lino G, does he also go by the name
12   Sexy Walker?
13        A.   Yes, sir.
14        Q.   When Lino G was -- I'm guessing, was he in
15   charge of Southern before Billy Garcia came?
16        A.   He was running the line.  And he had
17   already messed up -- him and Butch had already messed
18   up and talked, because Sleepy had already hit some
19   black dude, stuck some black guy, and he did it
20   without letting anybody know, or anything, so -- and
21   that's what Lino -- that's what Lino -- Lino went,
22   and him and Butch went and ratted and gave up to STG
23   that they didn't give him permission to do that, and
24   stuff like that, you know what I mean?  And that's
25   where all that came from, you know.  That's where
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7410

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22411

```
 1    Lino G lost his power, you know.
 2        Q.   All right.  Did Billy Garcia expect that
 3    you would have been -- before he got down there,
 4    after sending word with Earn Dog, did he expect you
 5    would have been in charge of Southern at that time?
 6        A.   I'm pretty sure he would have.  Because if
 7    I would have got the word, I would have let people
 8    know, hey, you know.
 9        Q.   I think you talked about this was after the
10    time you murdered Animal, right?
11        A.   Yes, sir.
12        Q.   And does a murder give you respect within
13    the SNM?
14        A.   Yes, sir.
15        Q.   At the time of the Castillo and Garza
16    murders, when Billy Garcia told you these things,
17    were you, at that time, a devoted SNM member?
18        A.   Excuse me?
19        Q.   In 2000, when Billy Garcia told you about
20    the Castillo and Garza murders, were you a devoted
21    SNM member at that time?
22        A.   Yes, sir.
23        Q.   And so was he also a devoted SNM member at
24    that time?
25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7411

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123 7412

1      Q.   Was he a leader of the SNM at that time?

2      A.   Yes, sir.

3      Q.   And so, given your close relationship with

4   Mr. Garcia, do you have any reason to think that he

5   would lie to you when he was telling you to murder

6   Garza and Castillo?

7      A.   No, sir.

8      Q.   Now, do some SNM members, such as yourself,

9   eventually go ahead and cooperate with law

10  enforcement?

11     A.   There has been some.  You know, there has

12  been some.  And I guess through all this, there has

13  been a lot, you know.

14     Q.   Sure.  And so, when other SNM members tell

15  you about killings they performed for the SNM,

16  assaults they've done for the SNM, in your opinion,

17  is there a possibility that that may lead to

18  incriminate them down the road, if someone cooperates

19  with law enforcement?

20     A.   I don't understand the question there.

21     Q.   Sure.  You said that you know, from your

22  experience, that some SNM members, like yourself,

23  cooperate with law enforcement eventually?

24     A.   Yes.

25     Q.   And you know -- if you know, do you know

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7412

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124

1    that telling someone else about a murder would tend

2    to incriminate the person who is telling that?

3        A.   Yeah.

4        Q.   And so, knowing what you know, would

5    someone in the SNM telling you, or someone else about

6    a murder, possibly incriminate them sometime down the

7    road?

8        A.   Yes, sir.

9        Q.   All right.  I want to go back into the

10   interviews that you had.  I think you said the

11   earliest you started cooperating with any law

12   enforcement was 2007, right?

13       A.   Yes, sir.

14       Q.   Now, it sounds like, from your conversation

15   with Mr. Solis, after you spoke with Mr. Candelaria

16   and Mr. Ellis, it was soon after that that you gave

17   the recorded conversation with Rich Lewis, wasn't it?

18       A.   Yes, sir.

19       Q.   Did you talk to Rich Lewis -- and I've read

20   over that transcript -- was that a long,

21   tape-recorded conversation?

22       A.   It took a long time.  We were in there for

23   quite a while.  And I was nervous the whole time, you

24   know?

25       Q.   Sure.  Did you talk in that interview



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7413

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 125414

```
 1   about -- well, let me ask you this question first --
 2   I think you told Mr. Solis this -- but was
 3   Mr. Candelaria also present for this recorded
 4   interview?
 5         A.   Yes, sir.
 6         Q.   And did you talk in this recorded interview
 7   with Mr. Lewis, Mr. Candelaria there, about
 8   everything that you've talked to Mr. Candelaria and
 9   Mr. Lewis about?
10         A.   Yes, sir.  Everything has always been the
11   same.
12         Q.   At some point in this case, you debriefed
13   with Mr. Clark there and Special Agent Acee and
14   myself in the jail.  Do you remember that?
15         A.   Yes, sir.
16         Q.   At the interview with Mr. Lewis, was there
17   any FBI agent at that interview?
18         A.   If I recall, when we -- the first -- we're
19   talking about the first interview?
20         Q.   Yes, sir.
21         A.   I think there was, you know?  I'm not sure.
22   I think there was.  But the whole time, the whole
23   time I emphasized that I -- about being protected.  I
24   wanted to be protected.  I always talked about that
25   through the whole conversation.  I kept asking them,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7414

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126 of 415

1    you know?

2         Q.    Sure.

3               So Rich Lewis, was he -- what agency was he

4    with?

5         A.    Excuse me?

6         Q.    Rich Lewis, was he an APD detective, or

7    what was he?

8         A.    I think he was just an APD detective.

9         Q.    Okay.  And I think you said Troy Davis was

10   there.

11        A.    Because I remember Rich -- excuse me, I

12   remember Rich Lewis -- yeah, he was an APD officer.

13   And he said that he knew -- he knew -- he could get

14   me -- he knew people that -- he could help me to get

15   in witness protection and stuff, you know?

16        Q.    Sure.

17              And then Troy Davis, was he with the

18   District Attorney's Office?

19        A.    Yes, sir.

20        Q.    And other than Troy Davis, Rich Lewis, and

21   Mr. Candelaria from STG, was there anyone else there

22   that you remember?

23        A.    Jason Ellis was there.  Because they're the

24   ones that transported me to the hearing.

25        Q.    Is Jason Ellis a corrections officer?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7415

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127416

1        A.   I don't know if he's still working there.
2    As far as I know, Matt Candelaria retired, as far as
3    I know.
4        Q.   Let me ask you this question:  At that
5    time --
6        A.   At that time, yes.
7        Q.   -- he was a corrections officer?
8        A.   Yes, sir.
9        Q.   So other than Rich Lewis, Troy Davis, Matt
10   Candelaria, Jason Ellis, was there anyone else there?
11       A.   I think -- I think, if my memory is
12   right -- I think Gallardo was there, too.  He was one
13   of the STG officers there, too.
14       Q.   Oaky.  And as an STG officer, he's not an
15   FBI agent, right?
16       A.   No.
17       Q.   So going through those folks who were there
18   on August 8, 2007, does that refresh your memory as
19   to whether there was an FBI agent there?
20       A.   No, it doesn't.  It doesn't.
21       Q.   So is it fair to say you don't remember an
22   FBI agent being there?
23       A.   I don't think there was one there.
24       Q.   Okay.  And then, after that, you had an
25   interview on November 12 of 2007; correct?  I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7416

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 128

```
 1   you went over this with Mr. Cooper earlier, and with
 2   Mr. Solis.  Do you remember that?  I think that's the
 3   one you were talking about where Mr. Prichard was
 4   there?
 5        A.   Yeah.  He was -- he even showed up a little
 6   late, I think.
 7        Q.   Right.  And this was the one, I think, Mr.
 8   Cooper was asking you about, that there was an ATF
 9   person there?  Do you remember Mr. Cooper asking you
10   about that?
11        A.   Yeah.  And as far as I can recall and
12   remember, I don't remember any ATF officer.
13        Q.   Okay.  If you looked at -- you know that
14   that conversation was recorded, right?
15        A.   Um-hum.
16        Q.   You know that there is a transcript that
17   came out of that?
18        A.   No.  I don't think I've ever seen it.
19        Q.   Okay, sure.  Would it refresh -- but you do
20   remember an interview with Mr. Lewis, Rich Lewis, on
21   September 12, 2007, right?
22        A.   Yeah, I remember that.
23        Q.   And would it refresh your memory as to who
24   else was there, if I provided you the transcript of
25   that recorded conversation?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7417

1    A.   If I read the whole thing probably a couple

2    of times, I would probably start thinking, you know.

3    My memory is good.  But I have to sit there and, you

4    know, think about it for, you know, and then I'll --

5    you know, it will click in.

6    Q.   Let me ask you this question:  When you had

7    these interviews, would they oftentimes, when they

8    started the interview, would they record the

9    conversation?

10   A.   Yeah.  Most -- the majority of the time

11   that's what they would do, is they would tell me that

12   they were going to record this; if I had any problem

13   with it, and I told them "No."

14   Q.   Sure.  And when they recorded the

15   conversation, would they introduce themselves to you

16   as to who was in the room so that would be reflected

17   on the recording?

18   A.   Yeah, they would.  And a lot of times I

19   wasn't -- I was so nervous that I wasn't really

20   paying attention to a lot of who was introducing

21   themselves.  You know, I was just concentrating on

22   the one that was with the recorder and asking the

23   questions.

24   Q.   Sure.  And so that's what I'm saying:  You

25   weren't concentrating on it then, but now, if you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7418

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130

```
1    looked at who was there in the transcript, that would
2    probably help refresh your memory?
3         A.   Yeah, it might jog my memory a little bit.
4              MR. BECK:  May I approach, Your Honor?
5              THE COURT:  You may.
6         Q.   Just read over that first page, and I'll
7    ask you some questions.
8         A.   Okay.
9         Q.   And Mr. Lujan, just let me know when your
10   memory is refreshed.  I think if you've read the
11   first page, that's --
12        A.   Yeah, I read it.  I can't recall an ATF
13   officer.
14        Q.   Sure.
15        A.   I can't recall.  I don't remember that at
16   all.
17        Q.   And just to make sure.  Hold on a second.
18   I'll come back to that in a moment.
19             When you read over this, there was -- at
20   least present, according to this, was Norman Rhoades,
21   who was an investigator with the New Mexico State
22   Police; is that right?
23        A.   See, I think he's the one that had the
24   recorder.  I think he's the one that had the
25   recorder.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131

```
 1        Q.   Okay.  And then there was Detective Rich
 2   Lewis from APD, right?
 3        A.   Um-hum.
 4        Q.   Troy Davis from the District Attorney's
 5   Office; is that right?
 6        A.   Um-hum.
 7        Q.   And then it says here, "Gary Ainsworth out
 8   of ATF"; is that right?
 9        A.   Um-hum.
10        Q.   And then it also says that also in the room
11   was Agent Felipe Gonzalez from the State police,
12   right?
13        A.   Yes.
14        Q.   And it didn't say -- there wasn't anyone
15   there from FBI, right?
16        A.   No, sir.
17        Q.   And there wasn't an Assistant U.S. Attorney
18   there, right?
19        A.   No, sir.
20        Q.   I think you said you met with -- the first
21   time you met with the FBI was sometime around 2008?
22        A.   Yes, sir.
23        Q.   Is that fair to say?  And I think you
24   marked that in time by sort of where you were housed,
25   or where you were being transported at that time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7420

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 132421

```
 1        A.   Yes, sir.

 2        Q.   And is that a way that you used to kind of

 3   help you kind of think about dates?

 4        A.   Yes, sir.  I remember the times when I got

 5   sick and stuff, and that helps me remember pretty

 6   much close to what dates, what was going on at that

 7   time.

 8        Q.   And I think you said it could have been

 9   2008.  Could it have been January 23rd of 2009?

10        A.   If I remember -- if I remember correctly --

11   because I was already at MHTC in 2009 -- and I

12   remember -- I got to remember the attorney that was

13   representing me at that time.  I think it was Jason

14   Bowles that was representing me at that time.  Him

15   and the district attorney from over here, from Dona

16   Ana County, and there was somebody else there I can't

17   remember.  And I think a couple of the STG officers

18   from Los Lunas.  And that was one of the times I

19   remember.  That's the time when I told -- when I had

20   asked Dr. Horowitz not to allow nobody to pull me

21   out, because I wasn't feeling good and stuff.

22        Q.   So I guess my question to you -- you

23   remember talking to -- you remember talking to an FBI

24   agent at this time; is that right?

25        A.   Yes, sir.  Excuse me, that's exactly who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7421

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

1   was in there, was an FBI agent.

2       Q.   Okay.  Do you remember if Richard Lewis,

3   the APD detective, was also present?

4       A.   I think there was only Mr. Bowles, the

5   district attorney; I think it was the FBI agent --

6   I'm not sure if there was somebody else there.  But I

7   know that the STG -- a couple of the STG officers

8   were in there.

9       Q.   Okay.  Oh, this might have been sometime

10  around this -- okay, now, I'm looking -- does

11  September 17 of 2008, does that sound better than

12  January of 2009?

13      A.   I remember an FBI agent coming and talking

14  to me at PNM North.  And he came one time and talked

15  to me and everything, and we talked, and this and

16  that, and talked a little bit about stuff that was

17  going on, you know.

18      Q.   Yeah.  Was that the time that you asked to

19  be paid $500?

20      A.   I believe it was the second time he came to

21  see me.

22      Q.   Okay.

23      A.   I believe it was the second time he came to

24  see me.  But it was the same -- same FBI agent that

25  came to see me.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7422

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

```
 1         Q.   And you said -- were you paid the $500 for
 2    talking that time?
 3         A.   Yes, sir.  They put it on my account there
 4    at PNM.
 5         Q.   And do you know that you have to be
 6    actually opened as an FBI informant to be paid by the
 7    FBI for those services?
 8              MR. COOPER:  Objection.  Lack of personal
 9    knowledge.
10              THE COURT:  If he knows.  You might
11    establish some foundation how he knows that.  But if
12    he knows, I'll allow the testimony.
13              MR. BECK:  I think that's what I was doing.
14    I think his answer was yes.
15         Q.   Do you know that to be paid by the FBI, you
16    have to be opened as --
17         A.   I didn't know at the time.
18         Q.   Do you know that now?
19         A.   Yeah, I know that now.
20              THE COURT:  Well, and still establish how
21    he knows it.
22              MR. BECK:  I am.  Sorry, Your Honor, I
23    didn't mean --
24              THE COURT:  Let's do that first before we
25    get his testimony.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7423

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

```
 1          Q.   And how do you know now that you have to be
 2     opened as an FBI informant to be paid by the FBI?
 3               MR. COOPER:  Objection, hearsay.
 4               THE COURT:  Well, it may be.  But this is
 5     partly, I guess, a 104 hearing, to some degree, so
 6     I'll allow it.
 7          A.   Would you repeat the question, please?
 8          Q.   Sure.  How do you know now that you have to
 9     be opened as an informant -- well, let me go with
10     this question first:  Have you personally signed
11     receipts when you've been paid by the FBI?
12          A.   Yes, sir.
13          Q.   And does that indicate to you that you have
14     to be officially opened as an informant --
15          A.   Yes, sir.
16          Q.   -- to be paid by the FBI?
17          A.   I never knew nothing about any of that,
18     never.
19          Q.   And have you also been -- how else do you
20     know now that you have to opened as an FBI --
21          A.   Word-of-mouth.  People have told me.  You
22     know, some people have told me.
23          Q.   Were you first opened as an FBI source on
24     February 4 of 2009, by Special Agent Sonya Chavez?
25          A.   I never knew if he had did anything, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7424

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 136 of 425

1    what.  But all I did was ask them for the money, and

2    they gave me that 500.  I never asked them for

3    another penny.  I never asked for anything ever

4    again.

5         Q.   And was that around the beginning of 2009

6    or end of 2008?

7         A.   Right.

8         Q.   Were you closed as an FBI informant on

9    March 2 of 2011?

10        A.   Yes, sir.  That's when I believe that

11   Daniel Tallon came with that paper and told me that

12   they weren't going to prosecute me and stuff.

13        Q.   Were you reopened on September 2 of 2011,

14   by Special Agent Lance Roundy?

15        A.   I think so.  Yeah, I think so.

16        Q.   And then, were you closed as a Special

17   Agent -- or, excuse me, as a government informant --

18   by Lance Roundy on September 12th of 2012?

19        A.   I'm not sure.  I'm not sure, because I

20   don't know how any of that worked.  I never worked

21   with the feds.  I never been in the feds, nothing.

22   So I didn't know how any of that stuff was, you know.

23   All I know is that they would come and talk to me,

24   and this and that.

25             And that's the only time I ever asked for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7425

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137

```
 1    money.  And I never asked -- I never sat there and
 2    asked a bunch of questions or nothing -- what goes on
 3    with the feds or anything like that, or anything like
 4    that, you know.
 5         Q.   And for this case, were you opened as an
 6    informant by Special Agent Nancy Stemo on January 5th
 7    of 2017, of last year?
 8         A.   I believe so.
 9         Q.   So I think you talked about the one meeting
10    in 2008, that we just talked about.  You also said
11    that you remember meeting with the FBI, with your
12    attorney, Jason Bowles.  Do you remember that?
13         A.   Yes, sir.
14         Q.   Was that February 27 of 2014?
15         A.   Yes, sir, I believe so.
16         Q.   And also present -- was Assistant United
17    States Attorney Jack Burkhead present at that
18    meeting?
19         A.   Yes, sir.
20         Q.   Mr. Lujan, have you ever testified in front
21    of a federal grand jury?
22         A.   No, sir.
23              MR. BECK:  May I have a moment, Your Honor?
24              THE COURT:  You may.
25              MR. BECK:  Nothing further, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Thank you.

2              THE COURT:  Thank you, Mr. Beck.

3              Mr. Cooper.  Do you want to take the lead

4    on redirect?

5              MR. COOPER:  I would, Your Honor.  Thank

6    you.

7              THE COURT:  Mr. Cooper.

8                    REDIRECT EXAMINATION

9    BY MR. COOPER:

10        Q.   After Billy came down to Southern and he

11   spoke with you -- or at that time, you and he were

12   pretty tight, weren't you?

13        A.   Yes, sir.

14        Q.   Mr. Beck asked you a series of questions

15   about how you and he were best friends, and you were

16   tight and that sort of stuff, right?

17        A.   Yes, sir.

18        Q.   And you would do anything for Billy at that

19   time; correct?

20        A.   Anything he would ask me, I would have

21   done.

22        Q.   And he expected you to keep a confidence,

23   and you would keep those confidences, right?

24        A.   Yes, sir.

25        Q.   And things between you and him were between

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7427

```
 1    you and him, and it wasn't for anybody else?
 2         A.   Yes, sir.
 3         Q.   You wouldn't tell anybody anything that
 4    Billy told you?
 5         A.   No.
 6         Q.   And you said all of the interviews that
 7    you've done have been recorded; correct?
 8         A.   Yes, sir.
 9         Q.   Did the FBI record your interviews?
10         A.   Yes, sir.  As far as I know, the FBI --
11    there was some, I think, State Police.  And I had
12    quite a few interviews where they've recorded me and
13    everything.  So I mean, I can't sit there and tell
14    you exactly, oh, this guy's an FBI agent; oh, this
15    guy is APD; or this guy is a state police officer.  I
16    couldn't tell you that, you know.  I can only sit
17    there and tell you that they introduced -- and that's
18    what I -- you know, I thought that they were -- I
19    know the ones that went to PNM and talked to me were
20    FBI agents.
21         Q.   And did they have tape recorders, and did
22    they tape record those interviews with you?
23         A.   I think the first -- I think the first one
24    they did, if I'm correct.
25         Q.   And who was that that went the first time?
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7428

```
 1        A.   I can't recall his name.  I can't recall
 2   his name.  And then I remember one time there was a
 3   female and a male that came to see me.
 4        Q.   Did they tape record your interview?
 5        A.   If I'm -- if I remember correctly, they
 6   did.
 7        Q.   Okay.
 8             MR. COOPER:  May I have one moment?
 9             THE COURT:  You may.
10             MR. COOPER:  Your Honor, I would like to
11   mark --
12             MR. BECK:  You know what, I think it would
13   be R.  He's got A through Q.
14             MR. COOPER:  Your Honor, may I approach the
15   witness?
16             THE COURT:  You may.
17   BY MR. COOPER:
18        Q.   Mr. Lujan, I'm handing you a document
19   that's marked Defendant's Exhibit S for
20   identification purposes.
21             MR. COOPER:  Your Honor, we have previously
22   marked a number of other Exhibits A through R.  So
23   this is S.
24             THE COURT:  And when did we do this?  When
25   did we do A through Q?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7429

 1              MR. COOPER:  Well, we've already premarked

 2    exhibits.

 3              THE COURT:  Okay.  All right.

 4              MR. COOPER:  So this is S.

 5              THE COURT:  All right.  Okay.

 6        Q.   Mr. Lujan, take a look at that first page

 7    just for a minute.  It's a document that I have

 8    previously shown you, and the document that Mr. Beck

 9    had shown you a moment ago.  Do you recognize that

10    document?

11        A.   I don't think I've ever seen this document

12    before.

13        Q.   You have not seen the document --

14        A.   No, sir.

15        Q.   -- but does that document appear to be a

16    transcript of the interview that occurred in

17    September of 2007?

18              MR. BECK:  Just so we're clear, Your Honor,

19    the United States doesn't object to its admission.

20              THE COURT:  Do you want to move its

21    admission?

22              MR. COOPER:  Your Honor, I'd move its

23    admission.

24              THE COURT:  Any objection from any other

25    defendants?  If not, then Defendant's Exhibit S will

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   be admitted into evidence.

2           MR. COOPER:  Thank you, Your Honor.  May I

3   approach?

4           THE COURT:  Yes, you may.

5       A.   I remember all this stuff, but I don't

6   remember the ATF officer.

7       Q.   Okay.

8       A.   That's it.

9           MR. COOPER:  Thank you, Mr. Lujan.

10          Your Honor, one final matter.  I was

11  wondering if the Government would stipulate to the

12  fact that they have not disclosed to us any discovery

13  with regard to the interview that he had with Matt

14  Candelaria and Jason Ellis prior to the August 8

15  interview that he had with Rich Lewis?

16          MR. BECK:  That, I don't know.  I mean, I

17  don't have any reason to disagree with that based on

18  what I'm hearing today.  That doesn't sound familiar

19  to me.  So I can -- I'll stipulate to that.  If

20  something changes, I'll let the Court know.

21          THE COURT:  Does that work for you, Mr.

22  Cooper?

23          MR. COOPER:  That works for me, Judge.

24  Thank you very much.  And I don't have anything else,

25  Your Honor.  Thank you very much.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7431

1           THE COURT:  I think Mr. Solis is going to

2    have some, Mr. Burke is going to have some.  Let's

3    take our lunch break at this time, and let's pick up

4    Mr. Lujan's redirect after lunch.

5           All right.  We'll be in recess for about an

6    hour.

7           (The lunch recess was held.)

8           THE COURT:  Let's go on the record.  I

9    think we've got all the defendants and all the

10   attorneys.

11          All right.  I think we were going to have

12   some cross-examination.  Is Mr. Solis back?  There he

13   is.  We need to get the witness back.

14          MR. BECK:  Your Honor, we might make some

15   use of this time when we have a little downtime here.

16          Mr. Cooper just moved into evidence Exhibit

17   S, which was the transcript of the September 2007

18   interview of Leonard Lujan.  I was going to move in

19   the August 8 interview of Leonard Lujan, which took

20   place just before that.  Primarily, the reason I

21   would move these into evidence is actually more for

22   the Document 1307 and our motion in limine, 1912,

23   statements motions.  And so I was wondering, I guess,

24   whether the Court would like me to just attach them

25   here and then cross-reference them, or if we should

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7432

```
 1    do that at a different time, when we're talking
 2    about --
 3              THE COURT:  If they're not relevant to the
 4    motions we're arguing now, I'd prefer not to have
 5    them in here.
 6              MR. BECK:  That's all I was asking.
 7              THE COURT:  All right.
 8              MR. CASTLE:  Mr. Lujan's lawyer is not here
 9    yet, but if you want to take up some time, we have
10    some business to conduct.  We don't need to excuse
11    Mr. Lujan for it.
12              MR. BECK:  Oh, there he is.
13              MR. CASTLE:  Oh, he's here.
14              THE COURT:  All right.  Mr. Lujan, I'll
15    remind you that you're still under oath.
16              THE WITNESS:  Yes, sir.
17              THE COURT:  Mr. Solis, if you wish to
18    conduct redirect of Mr. Lujan, you may do so at this
19    time.
20              MR. SOLIS:  I do, Your Honor.  Thank you.
21                   REDIRECT EXAMINATION
22    BY MR. SOLIS:
23         Q.   Mr. Lujan, did you get something to eat?
24         A.   Oh, yes, sir.
25         Q.   Belly full of food now, right?  Feeling
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    pretty good?
 2         A.   I'm okay.
 3         Q.   Okay.  The questions I'll ask you are just
 4    to follow up on what Mr. Cooper asked you earlier,
 5    and I followed up a little bit on.  And then Mr. Beck
 6    asked you some questions, and I'm going to follow up
 7    a little bit on those, okay?  Do you follow me?
 8         A.   Yes.
 9         Q.   So remember we talked about, in follow-up
10    to Mr. Cooper's questions, about you talking about
11    the politicking and the politics of the SNM?  Do you
12    remember that?
13         A.   Yes, sir.
14         Q.   And I followed up with you, and I asked
15    you:  Do you remember -- or is it a fact that the
16    politicking involves trying to undermine other people
17    within the SNM?  Do you remember that?
18         A.   Yes, sir.
19         Q.   And then you also said and agreed with me
20    that that involves making alliances and that kind of
21    thing?  Do you remember that?
22         A.   Yes, sir.
23         Q.   And then you said the politicking also
24    involves other sorts of activities.  And the question
25    I have for you is, does that involve talking about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7434

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145435

 1    others or things of that sort?

 2         A.   Yes, sir.

 3         Q.   Does that involve talking about things that

 4    are true or not true or exaggerating or just making

 5    up stuff sometimes?

 6         A.   Yes, sir.

 7         Q.   Okay.  Now, Mr. Beck asked you about, or

 8    explored with you questions about status within the

 9    SNM.  Do you remember that?

10         A.   Yes, sir.

11         Q.   And he asked you also about murder and how

12    one can achieve status committing murder; is that

13    right?

14         A.   Yes, sir.

15         Q.   And is it true that within the SNM there is

16    a lot of what I call jockeying for position, or

17    trying to appear at a higher tier, higher level, than

18    your other associate or other prospect for an SNM?

19    Is that also true?

20         A.   Yes, sir.

21         Q.   And that involves probably exaggerating

22    what your role is sometimes; isn't that right?

23         A.   No, not really.

24         Q.   No?  So that's not part of the politicking

25    that you were talking about a little while ago?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7435

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 147

```
 1          A.   No, just -- no, when you commit murder
 2     within the SNM, you move up in rank.
 3          Q.   Right.  And status is important, right?
 4          A.   You get more respect like that.
 5          Q.   And that's because status is important?
 6          A.   Yes, sir.
 7          Q.   And status is something everyone strives to
 8     achieve, right?
 9          A.   Yes, sir.
10          Q.   And but isn't it also true that within the
11     SNM, there is some politicking that involves people
12     taking credit for stuff they didn't do, and that's
13     not agreeable?
14          A.   Sometimes people take credit for something
15     they didn't do.
16          Q.   People don't like that, right?
17          A.   Right.
18          Q.   That would include stuff like armed robbery
19     or assault, or any number of things; isn't that true?
20          A.   Yes, sir.
21          MR. SOLIS:  All right.  Thank you.  Pass
22     the witness.
23          THE COURT:  Thank you, Mr. Solis.
24          Mr. Burke, I think you were going to --
25          MR. BURKE:  No, Your Honor, I have no
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   further questions.
 2           THE COURT:  Anybody else?  All right, Mr.
 3   Lujan, you may step down.  Is there any reason that
 4   Mr. Lujan cannot be excused from the proceedings?
 5   Mr. Cooper, can he be excused?
 6           MR. COOPER:  Your Honor, he may be excused.
 7           THE COURT:  All right.  Is everybody with
 8   the defendants comfortable with that?
 9           Mr. Beck?
10           MR. BECK:  He may.
11           THE COURT:  All right.  So you are excused
12   from the proceedings.  Thank you for your testimony.
13           THE WITNESS:  Thank you.
14           THE COURT:  All right.  Mr. Cooper, did you
15   have further witnesses or evidence you wanted to
16   present?
17           MR. COOPER:  Yes, Your Honor.  We are going
18   to call Ben Clark.  And he's downstairs, and his
19   lawyer is on his way.
20           THE COURT:  All right.  And who is his
21   lawyer?
22           MR. COOPER:  Mr. Hosford.
23           MR. BECK:  If his lawyers is on his way, I
24   think we should move to Trent Pedersen.  He is ready
25   to testify and willing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        I guess we should ask how quick Mr. Clark

2   will be here, because I know Mr. Pedersen needs to

3   leave before the end of the day.

4        MS. HARBOUR-VALDEZ:  I don't know how

5   quickly the marshals can get Mr. Clark up here.  But

6   Mr. Hosford just texted me:  "I'm coming in."

7        THE COURT:  Coming into the building?

8        MS. HARBOUR-VALDEZ:  I don't know what that

9   means.  I didn't ask him that.

10       THE COURT:  Why don't you ask if he's

11  coming in the building.

12       MR. CASTLE:  Your Honor, in the meantime,

13  we have some exhibits that are going to be entered by

14  stipulation.

15       THE COURT:  Okay.  Go ahead.

16       MR. CASTLE:  There are Exhibits A through

17  R -- and I could describe them for the Court.  These

18  are all pages that are from discovery, and at least

19  the content of them are discussed in our motion to

20  dismiss so this is relevant to the motion to dismiss.

21       The first document is Exhibit A, which is a

22  report authored by Special Agent Trent Pedersen.

23       Exhibit B is a report authored by Special

24  Agent Andrew Armijo of the FBI.

25       Exhibit C is a transcription of an

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com
DNM 7438

1    interview conducted by Special Agent Trent Pedersen.

2    All three of these documents are from 2001.

3          Exhibit D is an email between Steven

4    Libicer from New Mexico State Police, and Norman

5    Rhoades and Felipe Gonzalez, dated April 20, 2003,

6    and which copies Albert Venegas of the Joint Task

7    Force.

8          Exhibit E is a report authored by STG

9    Officer Cheryl Lackey.

10         Exhibit F is a report dated -- well, on or

11   about March 26, 2001, by a Robert Duncan.

12         Exhibit G is a report, an FBI 302 dated

13   April 4, 2001, from Task Force Officer Edgar Rosa.

14         Exhibit H is an April 2, 2001 report from

15   STG Coordinator Jim Moore to Warden Lawrence Tafoya.

16         Exhibit I is an April 12, 2001 report

17   concerning the death of inmate Rolando Garza from

18   Lawrence Tafoya.

19         Exhibit J is a June 4, 2004 report from

20   STIU Coordinator Dwayne Santistevan to Lawrence

21   Jaramillo.

22         Exhibit K is a June 16, 2004 report from

23   STIU Coordinator Tammy Archuleta to STIU

24   Administrator Lawrence Jaramillo.

25         Exhibit L is March 7, 2001 report from a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7439

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

```
 1   Lieutenant Juan Barela to Lawrence Tafoya.

 2           Exhibit M is a report -- it's dated March

 3   25, 2001, but I believe from the contents of it, it's

 4   probably an inaccurate date.  So the best way to say

 5   it is on or after March 25, 2001 --

 6           THE COURT:  Go ahead and bring him in.  Is

 7   he there?  Go ahead and bring him in.  He's not

 8   there?

 9           Go ahead.

10           MR. CASTLE:  -- from Norman Rhoades.

11           Exhibit N is an FBI 302 dated April 10,

12   2001, and the author is Task Force Officer Edgar

13   Rosa.

14           Exhibit O is a report -- actually, I'm

15   going to pass on Exhibit O for just a moment.

16           Exhibit P is a report dated September 23,

17   2013, and it is a report authored by Lance Roundy.

18           Exhibit Q is an FBI 302 dated September 15,

19   2008, and that is authored by Sonya Chavez.

20           Exhibit R is a 302 dated April 8, 2015.

21   It's a 302 and a letter dated March 26, 2015.  It's a

22   combined exhibit.  The 302 is authored by Lance

23   Roundy.  And the letter that's attached is addressed

24   to Lance Roundy from United States Attorney Damon P.

25   Martinez.  And that letter is dated March 26, 2015.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7440

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152441

1          Exhibit T is a stipulation that has been

2     reached between the parties concerning what the

3     testimony would be for Assistant United States

4     Attorney James Braun.

5          And I'll explain what the meaning of these

6     are in my argument to the Court, so -- but these are

7     exhibits that have been admitted by agreement.

8          Your Honor, I don't know if it helps, we

9     have an index of the exhibits I could provide to the

10    Court.  It's been provided to counsel.  I don't

11    believe any counsel has an objection to the exhibits,

12    including the Government.

13         THE COURT:  All right.  But you pulled O

14    out of there?

15         MR. CASTLE:  Yes.  I can admit O, but it

16    really is an exhibit that actually doesn't deal with

17    the motion to dismiss.  So I thought that it might be

18    better to be offered when it's relevant.

19         THE COURT:  All right.  Any objection from

20    any of the other defendants?

21         How about you, Mr. Beck?

22         MR. BECK:  No objection, Your Honor.

23         THE COURT:  All right.  So Defendants'

24    Exhibits A through R, minus O, otherwise inclusive,

25    are admitted into evidence.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7441

```
 1                Are you Mr. Hosford?
 2                MR. HOSFORD:  Yes, sir.
 3                THE COURT:  Mr. Hosford, if you want to
 4      come up and make yourself comfortable over here,
 5      you're welcome to do so.
 6                MR. HOSFORD:  Thank you, Your Honor.
 7                THE COURT:  Mr. Clark --
 8                MR. BECK:  Your Honor, again I'd ask for
 9      what Mr. Clark's testimony is relevant to and a
10      proffer of why it's relevant to whatever it's
11      relevant to.
12                THE COURT:  All right.  Mr. Cooper?
13                MR. COOPER:  Thank you, Judge.
14                Judge, this is relevant to motion 1909.
15      That's Defendant Billy Garcia's targeted response to
16      the United States' notice for proposed James
17      statement.  Mr. Clark gave a statement concerning the
18      2001 murders.  It's, for my part, a fairly
19      discrete -- one set of statements involving three
20      individuals that he said may have done something with
21      regard to the 2001 murders.  And this is -- my
22      examination is to find out whether or not there was
23      anything that was said with regard to Billy Garcia.
24                THE COURT:  And this is not on the --
25                MR. COOPER:  It's not on the motion to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154

1    dismiss.  But we're trying to -- I think the Marshal

2    Service wanted us to get these inmates in and out of

3    here today so that they didn't have to be housed here

4    again.

5            THE COURT:  But this is not -- this

6    statement that I'm going to hear is not on the

7    Government's James notice?

8            MR. COOPER:  It's on our -- no, it's on our

9    targeted response to that James.

10           THE COURT:  All right.

11           Mr. Clark, if you'll stand and raise your

12   right hand to the best of your ability, Ms. Bevel

13   will swear you in.

14                   BENJAMIN CLARK,

15      after having been first duly sworn under oath,

16      was questioned and testified as follows:

17                  DIRECT EXAMINATION

18           MR. BECK:  And, Your Honor, just for the

19   record, I object just like I did yesterday, that I

20   don't think there is a basis for this hearing.

21           THE COURT:  All right.  But this is the

22   hearing we were discussing yesterday; correct?

23           MR. BECK:  Yes.  Yes, the one that I --

24   yeah, the one that I objected to.

25           THE COURT:  All right.  So it's a 104

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7443

```
1    hearing; correct, whether this evidence is going to

2    come in?  Is that --

3              MR. COOPER:  Yes.

4              THE COURT:  All right.  Mr. Clark.  Mr.

5    Cooper.

6              MR. COOPER:  Thank you, Your Honor.

7    BY MR. COOPER:

8       Q.   Good afternoon, Mr. Clark.

9              On December 3, 2015, you made a

10   statement -- you were interviewed by Federal Bureau

11   of Investigation Special Agent George Dougherty and

12   the Dona Ana County Sheriff's Officer Lieutenant

13   Bobby Holden.  Do you recall that particular

14   interview?

15      A.   Somewhat.

16      Q.   Okay.  And on that date you talked about a

17   number of things.  And the only thing that I'm going

18   to ask you about today is that you said that, "In

19   2002, Billy Garcia, a/k/a Wild Bill, was the shot

20   caller for SNM, and he ordered the double homicide at

21   Southern New Mexico Correctional Facility."

22              Now, this is a report concerning the

23   interview and the statements you gave to the FBI

24   agent and the lieutenant, and -- supposedly, that's

25   what you said.  And then you said that, Angel DeLeon,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7444

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 156

```
 1   Eugene Martinez, from Albuquerque, and Ben Gallegos
 2   from Belen did the two murders.  Martinez and DeLeon
 3   told you they killed one of the guys.
 4           Later on, sometime much later, apparently,
 5   Mr. Gallegos told you that he had killed the guy,
 6   referring to either Garza or Castillo.
 7           My question to you is that Billy Garcia
 8   never told you about those hits, did he?
 9       A.   I never spoke to Billy Garcia.
10       Q.   Okay.  So when, in the statement it says
11   that Billy Garcia was a shot caller and he ordered
12   the homicides, that was just rumor?
13       A.   Can I see that statement?
14       Q.   Certainly.
15           MR. COOPER:  May I approach the witness,
16   Your Honor?
17           THE COURT:  You may.
18       A.   This statement is wrong.  It's wrong in the
19   context that I said.
20           MR. COOPER:  Okay.  May I approach?
21           THE COURT:  You may.
22       Q.   So the reference to Billy Garcia, that's
23   the wrong part?
24       A.   There is a lot of wrong parts to it.
25       Q.   Okay.  With regard -- on April -- but the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7445

1    reference to Billy Garcia is wrong, and you did not

2    say that, right?

3          A.   Billy Garcia was a shot caller.

4          Q.   Okay.  But he never told you that he called

5    the shots with regard to those individuals, did he?

6          A.   No.

7          Q.   April the 12th of 2016, you gave another

8    interview.  And this interview, Mr. Hosford and Mr.

9    Herrera, along with Maria Armijo, Randy Castellano,

10   and Celesia Wenton, an FBI agent, Bryan Acee, Mark

11   Myers from DOC, and New Mexico Corrections Department

12   Security Threat Intelligence Sergeant Ruben

13   Archuleta, and Officers Pablo Quesada and Arthur

14   Maldonado were also present when you were

15   interviewed; correct?  Do you remember that?

16         A.   Yes.

17         Q.   And in that particular interview it says

18   that, "Billy Garcia went down to SNM on a mission to

19   kill Garza, Castillo, and Larry Gutierrez.  The hit

20   order had come from SNM leadership, and Garcia was

21   responsible for bringing the message to Southern New

22   Mexico Correctional Facility, and ensuring that it

23   was carried out.  Garcia provided the kite to Leonard

24   Lujan to have the three men killed."

25              You didn't talk to Billy Garcia about any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7446

```
 1   of that, did you?

 2        A.   No.

 3             THE COURT:  Let me ask this:  Do we know

 4   the United States is going to be offering these

 5   statements?  I mean, they're not going to be offered

 6   under co-conspirator statements because they weren't

 7   on the James notice; correct?

 8             MR. BECK:  Right.  But we are intending to

 9   offer these statements.

10             THE COURT:  Okay.  So my mind is thinking,

11   as I listen to them, the justification, what rule of

12   evidence?

13             MR. BECK:  It would be 803(3), it would be

14   804(b)(2).  And some of these statements, depending

15   on who said it, would be 801(d)(2)(A), which is

16   statements by a party opponent.

17             THE COURT:  Okay.

18   BY MR. COOPER:

19        Q.   So Mr. Clark, back to the first interview

20   that occurred December 3, 2015, when FBI Agent George

21   Dougherty and Dona Ana County Sheriff's Officer Bobby

22   Holden interviewed you, they said you said that

23   "Martinez and DeLeon told Clark that they killed one

24   of the guys"?

25        A.   Can I talk to my attorney real quick?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7447

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159

```
 1        Q.    Certainly.

 2              (The defendant conferred with counsel.)

 3        A.    Okay.  I spoke to four people regarding

 4   them murders.

 5        Q.    Okay.  And who were those four people?

 6        A.    Eugene Martinez, Leonard Lujan, Edward

 7   Troup, and Joe Gallegos.

 8        Q.    And when you spoke to Leonard Lujan --

 9   well, let me start with Eugene Martinez first.  When

10   you spoke with Eugene Martinez, he did not tell you

11   that Billy Garcia had ordered the hit, did he?

12        A.    No, not that I recall.

13        Q.    Okay.  And likewise, when you spoke with

14   Leonard Lujan, he did not tell you that Billy Garcia

15   had anything to do with it, did he?

16        A.    No, Leonard Lujan did tell me Billy Garcia

17   had something to do with it.

18        Q.    Okay.  And where was that conversation with

19   you and Leonard Lujan?

20        A.    At the North facility.

21        Q.    And when did that conversation occur?

22        A.    The end of 2003, the beginning of 2004.  It

23   was an ongoing conversation.

24        Q.    Okay.  At some point in time, you spoke

25   with Edward Troup.  Did Mr. Troup -- he never told
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7448

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 160449

```
1    you that Mr. Billy Garcia ordered the hits, did he?

2        A.   No.

3        Q.   So it was Eugene, Troup, and who was the

4    other person?

5        A.   Joe Gallegos.

6        Q.   So you spoke with Mr. Gallegos also

7    sometime later in 2003, 2004?

8        A.   Somewhere around there.

9        Q.   Okay.  Did Mr. Joe Gallegos tell you that

10   Billy Garcia had anything to do with the hits on

11   Castillo and Garza?

12       A.   Not that I recall.

13       Q.   Now, you say that you and Leonard Lujan had

14   an ongoing discussion in 2003 and 2004 with regard to

15   the Castillo-Garza murders?

16       A.   Yes, sir.

17       Q.   And how did it come up that you were

18   talking about it all that time later?

19       A.   It just came up.

20       Q.   Was Leonard telling you about his

21   involvement in it?

22       A.   Yes.

23       Q.   Did anybody else have any discussions with

24   you other than those four?

25       A.   I mean, there is plenty of discussions, but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7450

```
 1    not directly associated with the crime.

 2         Q.    Okay.

 3              MR. COOPER:  I don't have any further

 4    questions, Your Honor.  Thank you.

 5              THE COURT:  Thank you, Mr. Cooper.

 6              Anyone else on the defense side have

 7    cross-examination of Mr. Clark?

 8              THE COURT:  All right.  Mr. Beck, do you

 9    have cross-examination of Mr. Clark?

10                   CROSS-EXAMINATION

11    BY MR. BECK:

12         Q.    Good afternoon, Mr. Clark.

13         A.    Good afternoon, Mr. Beck.

14         Q.    When you had the conversation with Eugene

15    Martinez, were you cooperating with the Government at

16    that time?

17         A.    No.

18         Q.    When you had the conversation with Edward

19    Troup, were you cooperating with the Government at

20    that time?

21         A.    No.

22         Q.    When you had the conversation with Joe

23    Gallegos, were you cooperating with the Government at

24    that time?

25         A.    No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7450

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 162451

```
 1         Q.   At all these times, were you instead a
 2    devoted and faithful member of the SNM?
 3         A.   Yes.
 4         Q.   I think you said the last one here was
 5    Leonard Lujan; is that right?
 6         A.   Yes, sir.
 7         Q.   You said an ongoing conversation from '03
 8    to '04.  Were there, in fact, multiple conversations
 9    from '03 to '04?
10         A.   Yes, sir.
11         Q.   And in those conversations, did he tell you
12    about his role in the Garza and Castillo murders?
13         A.   Yes, sir.
14         Q.   Did he tell you multiple times from '03 to
15    '04 that Billy Garcia called those hits?
16         A.   Yes, sir.
17              MR. BECK:  Nothing further, Your Honor.
18              THE COURT:  Let me ask you a couple of
19    questions here.  I'm trying to kind of figure out
20    what we're doing.  But when you said a minute ago
21    804(b)(2) --
22              MR. BECK:  Sorry, 804(b)(3).
23              THE COURT:  -- you're not referring to
24    dying declarations, right?
25              MR. BECK:  I think we got confused when Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7451

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163 7452

1   Castle was showing you the chart.  It's 804(b)(3),

2   statements against penal interests.

3          THE COURT:  Okay.  Maybe I don't fully

4   understand the interest here, but, you know,

5   statement against interests exception, like all your

6   804 exceptions are going to require a showing of

7   unavailability.  If he's a cooperator here, he's

8   available.  What am I missing?

9          MR. BECK:  He's available.  It's the

10  declarant, Your Honor.  So, for example, if we're

11  going to admit Mr. Troup's statement to him, again,

12  it doesn't sound like Mr. Troup talked about Billy

13  Garcia, for instance.  But say that -- let's do a

14  hypothetical here:  Say that Leonard Lujan is not

15  cooperating with the Government, if indeed, he was a

16  defendant or something like that, he would be

17  unavailable to testify.

18          So what happens is, it would be against --

19  so let's get back to Mr. Troup -- it's against Mr.

20  Troup's interests, his penal interests.  It tends to

21  subject him to criminal liability to make this

22  statement to Mr. Clark.  So that statement comes in

23  because Mr. Troup is unavailable to testify unless he

24  takes the stand.

25          THE COURT:  Okay.  All right.  Thank you,

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                       1-800-669-9492
                    e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

DNM 7452

```
 1   Mr. Beck.
 2            MR. BECK:  So to go a little bit further on
 3   that, the fact that multiple people are telling
 4   multiple other SNM members the same story --
 5            MR. CASTLE:  Your Honor, I would object to
 6   those kind of facts being disclosed in the presence
 7   of the witness.
 8            MR. BECK:  That's fine.
 9            THE COURT:  All right.  I brought some of
10   this up by asking the questions.  But I was trying to
11   understand fully what we're trying to do.
12            All right.  Thank you, Mr. Beck.
13            MR. BECK:  Nothing further.
14            THE COURT:  All right.  Mr. Cooper, do you
15   have redirect of Mr. Clark?
16            MR. COOPER:  No, Your Honor.  Thank you.
17            THE COURT:  Any other defendant?
18            MR. BENJAMIN:  No, Your Honor.
19            THE COURT:  All right.  Mr. Clark, you may
20   step down.  Is there any reason Mr. Clark cannot be
21   excused from the proceedings?  Mr. Cooper?
22            MR. COOPER:  No, Your Honor.  Thank you.
23            THE COURT:  How about you, Mr. Beck?
24            MR. BECK:  No, Your Honor.
25            THE COURT:  All right.  Any other defendant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7453

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165

```
 1    have any objection?  Not hearing any, Mr. Clark,

 2    you're excused from the proceedings.  Thank you for

 3    your testimony.

 4              THE WITNESS:  All right.  Thank you.

 5              THE COURT:  All right.  Mr. Cooper, do you

 6    have further witnesses or evidence you want to

 7    present?  I guess is this where you need to squeeze

 8    in -- is it Mr. Pedersen?

 9              MR. BECK:  I think it would be good for Mr.

10    Pedersen to go next.

11              THE COURT:  Okay.  Any objection to that?

12              MR. COOPER:  Your Honor, we would -- I

13    think that's probably a good plan.

14              THE COURT:  All right.  And refresh my

15    memory.  Mr. Pedersen is going to testify about what

16    issue?

17              MR. CASTLE:  It's going to be on the motion

18    to dismiss.  He was the special agent in charge in

19    2001 -- or maybe not Special Agent in charge, but

20    Special Agent.

21              THE COURT:  Mr. Pedersen, if you'll come up

22    and stand next to the witness box on my right, your

23    left.  Before you're seated, my courtroom deputy, Ms.

24    Bevel, will swear you in.

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7454

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 166 of 455

```
 1                          TRENT PEDERSEN,

 2           after having been first duly sworn under oath,

 3           was questioned and testified as follows:

 4                            EXAMINATION

 5                 THE CLERK:  State your name and spell your

 6      last name for the record.

 7                 THE WITNESS:  Trent Pedersen,

 8      P-E-D-E-R-S-E-N.

 9                 THE COURT:  All right.  Mr. Pedersen.  Mr.

10      Castle.

11      BY MR. CASTLE:

12           Q.   Mr. Pedersen, how are you employed?

13           A.   I'm a Special Agent with the Federal Bureau

14      of Investigation.

15           Q.   And are you stationed here in New Mexico?

16           A.   I'm not.  I'm in a different division in a

17      different state.

18           Q.   What was your job in 2001?

19           A.   In approximately January of 2001, I was

20      assigned to work on a gang task force in Albuquerque,

21      New Mexico on behalf of the FBI.

22           Q.   Had you been in New Mexico for a while

23      prior to that assignment?

24           A.   I started my career out of Quantico, in

25      Albuquerque, so I had been there since approximately
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7455

```
 1   1997.
 2        Q.   In the time between 1997 and 2001, had you
 3   become aware of a prison gang by the name -- or the
 4   initials of SNM?
 5        A.   I believe I had heard about it in the
 6   media.  But I had not been involved with gang
 7   investigations to that point, so I believe I'd heard
 8   the name, but I was not readily familiar with the
 9   gang.
10        Q.   And I may have missed it, when did you get
11   assigned to the joint task force?
12        A.   I believe it was January of 2001.  So my
13   first several years, from '97 to 2001, were working
14   different matters.
15        Q.   Prior to the subpoena being served for this
16   particular hearing, had you been contacted in the
17   last few years at all concerning your work in 2001?
18        A.   I don't recall any detailed conversations.
19   I was surprised to get the subpoena.  I don't recall
20   any specific ones.  If there had been, they would
21   have been very brief, or -- I wasn't familiar with
22   all of the things that were going on here, I guess,
23   is the best way I would put it.  I don't have
24   specific recollection of a detailed call about things
25   here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7456

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 168 of 457

1        Q.   You had enough to worry about with the

2   location you're at?

3        A.   Yes, and a completely different assignment.

4        Q.   So was your work in 2001, had it kind of

5   been pushed out of your memory for quite a few years?

6        A.   Yes.  I was only involved in gang-related

7   activities for less than two years.  And I had not

8   done any gang-related work, per se, since then.

9        Q.   When you were assigned, in January of 2001,

10  to this gang task force, what was the name of the

11  gang task force?

12       A.   I believe it was something to the effect of

13  Central New Mexico Organized Criminal -- it was quite

14  a lengthy name.  It was referred to as the federal

15  gang task force, but it was something, Central New

16  Mexico Criminal Organization or Violent Criminal

17  Organization Task Force.

18       Q.   I might be able to help you here in a

19  little while.

20       A.   Okay.

21       Q.   Does the FBI have a number of joint task

22  forces that they have in various communities in which

23  they work with local law enforcement?

24       A.   Yes, sir.

25       Q.   And is this one of them that you're talking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   about?

2        A.   This was at the time, yes.

3        Q.   So when you're assigned to that, is that

4   your sole duty, or do you also have other duties?

5        A.   Traditionally, that would be your sole

6   duty.

7             9/11 happened, which was an intervening

8   event.  And so much of my time after I joined the

9   task force, I was pulled away to work terrorism

10  things.  And eventually, I was pulled completely away

11  from the task force to work terrorism matters.  So,

12  traditionally, you would be detailed full-time there.

13  9/11 was a very different situation, because

14  terrorism became the Number 1 priority.

15            So several people, myself included, were

16  pulled off the task force; tried to juggle both

17  assignments, and eventually, I was taken full-time

18  off the task force.

19       Q.   So then, between January of 2001 and

20  September 11 of 2001, your primary duties would be

21  with regards to this gang task force in New Mexico?

22       A.   That's correct.

23       Q.   When you began with the joint task force,

24  did you learn of the prison gang, SNM?

25       A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 170 459

```
1         Q.    What did you basically learn from the
2    beginning of your work in January?
3         A.    The way it was described to me is the SNM
4    was the largest prison gang in New Mexico.  It was
5    known for drug trafficking, violent assaults,
6    murders.  It was considered a threat to the
7    community.  And I believe in a management meeting of
8    the heads of the agencies that participated in the
9    task force, it was designated as a serious threat,
10   and they wanted it to be investigated.
11        Q.    Why would this be a matter of interest to
12   the Federal Bureau of Investigation, not just state
13   authorities?
14        A.    Any time you have violent crimes that reach
15   outside the prison system themselves -- for example,
16   Title 21 provides jurisdiction for drug trafficking.
17   The racketeering statute, RICO statute, all of those
18   are federal designated crimes which traditionally
19   would come under gang-type investigations.  And the
20   gang reached far outside the prison.  There were
21   hits; there were drugs being smuggled into the
22   prisons.  So it went well beyond just the state
23   issue.  That's the way it was explained to me.
24        Q.    And were the federal agents, specifically
25   FBI agents, able to provide assistance to local law
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7460

1    enforcement in these matters in kind of a specialty

2    way, special way?

3         A.   Yes, we provided office space, tried to

4    help organize entities from many different agencies

5    to work collectively.

6         Q.   Talking a little about this office space,

7    was it just offices, or did you all have files as

8    well?

9         A.   There were FBI files that were maintained,

10   and the FBI maintained the primary files for the

11   whole task force.  So state and local officers who

12   came and worked on the task force also could

13   contribute paperwork to the FBI files.  But it was

14   managed and operated by the FBI.

15        Q.   And in regards to the joint task force,

16   would the FBI share information from time to time

17   with state authorities and vice versa?

18        A.   Yes, sir.

19        Q.   And the whole idea is to cooperatively work

20   together to address gang issues?

21        A.   That's my understanding.

22        Q.   And that was true with regard to the SNM as

23   well?

24        A.   Yes.

25        Q.   I'd be shocked, but I'll ask you do you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7460

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172

```
 1    recall whether there was an open investigation into

 2    the SNM in -- when you arrived at this position in

 3    January of 2001?

 4         A.   I don't believe there was.

 5         Q.   If I showed you a document, might it

 6    refresh your memory in that regard?

 7         A.   Sure.  Again, I believe I was asked to

 8    draft some of the opening documents.  So I was not

 9    aware that there was another case, or there would

10    have been no reason to open a new investigation.

11         Q.   What I'd like to do is have you take a look

12    at Exhibit A that's already been admitted.  But we're

13    going to project it up here on the screen, and it's

14    going to be on your screen as well.

15         A.   Okay.

16         Q.   Have you seen this document recently?

17         A.   Yes, sir, I have.

18         Q.   We provided it to you for your review?

19         A.   No, I was not provided anything prior to my

20    questioning.

21         Q.   So you were not provided with these

22    materials attached to your subpoena?

23         A.   No.  One page, but not -- I received the

24    front cover page of this document.  That's the only

25    thing I received.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7461

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 173

173

```
 1        Q.   Okay.  You were able to review this?
 2        A.   Yes, I did go to the file based on what
 3   information you requested in the subpoena.
 4        Q.   If you take a look, there is a case ID
 5   number here.  92D-AQ-54707.  Is that a case number
 6   that you might have opened up?
 7        A.   I believe this is actually the opening
 8   document to open that case file.
 9        Q.   And what is the date of that report?
10        A.   April 23rd of 2001.
11        Q.   And what was the subject of the
12   investigation?
13        A.   Syndicato de Nuevo Mexico, SNM.
14        Q.   Was there anything that happened in the
15   month prior to this case being opened that made the
16   SNM more of a focus of the joint task force?
17        A.   There were ongoing things for years.  And
18   my understanding was it was an accumulation of
19   ongoing homicides, ongoing drug trafficking.  There
20   had been a homicide at BCDC, Bernalillo County
21   Detention Center, Matthew Cavalier.  I believe there
22   had also been a homicide down here at the Southern
23   New Mexico Correctional Facility.
24             But my understanding, it was an ongoing
25   accumulation of years of criminal activity.  It was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7462

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 174

1    not precipitated by one specific event.

2         Q.   The Cavalier murder happened in August the

3    previous year, August, 2000?

4         A.   I believe it was 2000.

5         Q.   And the ones you're talking about in the

6    Southern New Mexico Correctional Facility, were those

7    the dual murders that happened on the same day, March

8    26, 2001?

9         A.   I was not responsible for investigating

10   those.  So my recollection is it was in early 2001.

11   But those were part of the Southern.  And my

12   assignment was the Northern and Central.

13        Q.   So you did have an opportunity to look at

14   Exhibit A?

15        A.   Yes, sir.

16        Q.   If you can scroll down a little bit on

17   Exhibit A.  The first or the second full paragraph

18   has a header there that is in regards to the SNM

19   homicides; is that right?

20        A.   Yes, sir.

21        Q.   And what this investigative plan -- you put

22   this investigative plan together; is that right?

23        A.   I was given a bunch of information and

24   asked to summarize it, so yes, I did draft it.

25        Q.   And what this document indicates is that,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7463

```
 1    "the investigation of a number of SNM murders, either
 2    ordered or carried out by SNM members, would be
 3    beneficial in showing the gang's violent criminal
 4    nature and the gang's willingness to do anything to
 5    protect its drug-related activities"; is that right?
 6         A.   I think that's correct.
 7         Q.   So the homicides were at least one of the
 8    focuses of this investigative plan?
 9         A.   Yes, sir.
10         Q.   And, in fact, if we scroll down a little
11    bit to the next page, if possible, the two murders at
12    Southern were one of the focuses -- were one of the
13    sets of murders that you were looking at?
14         A.   I need to clarify that.  I was given a
15    summary of statewide information, and I did put that
16    in here.  If you would like, I can explain.  But
17    shortly after this time period, I was assigned to
18    focus on things in Northern and Central New Mexico.
19    So this document was a statewide document.
20              There was also a task force, I believe, in
21    Las Cruces, another violent crime task force.  So I
22    was not primarily responsible for investigating these
23    particular homicides.
24         Q.   But you have a write-up about these two
25    homicides in this investigative plan?
```



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

DNM 7464

```
 1        A.   As a part of the entire gang, yes, sir.
 2        Q.   If we could scroll down to page 6 of
 3   Exhibit A.  As part of the investigative plan was
 4   there at least a plan to collect information about
 5   all known suspected SNM members?
 6        A.   Yes, sir.
 7        Q.   And was there a plan to collect the
 8   information such as phone calls of the inmates,
 9   letters that the inmates sent out, their actual
10   Corrections' records of the particular SNM members?
11        A.   Yes, sir.
12        Q.   Now, were you working at that time -- well,
13   actually, you had indicated you didn't know the exact
14   date that that 54711 investigation began, is that
15   right, you don't recall that today?
16        A.   When you say the 54707 --
17        Q.   That was the case number that we talked
18   about at the top of -- I'm sorry, 54707.
19        A.   My recollection in the way these cases have
20   to be opened -- because this is a particular type of
21   investigation, there has to be an entire summary
22   written and approval.  And I believe that's what this
23   document was.  So I think this would have been the
24   primary thing, notifying our headquarters of a major
25   gang investigation.  That's my understanding of what
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                         1-800-669-9492
                                              e-mail: info@litsupport.com

DNM 7465

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 177466

```
 1    this document was when I drafted it.
 2         Q.   I want to show you a page of materials that
 3    we were provided in discovery.  It's page 598 of
 4    discovery.  Take a look at that.  It appears, at
 5    least on the top, that there was a full investigation
 6    of the SNM that was initiated November 20 of 2000, or
 7    at least some kind of investigation; is that right?
 8         A.   I'm not familiar with that case file
 9    number.  I don't believe that was ever assigned to
10    me.  So that could have been a different task force.
11    It could have been some other investigation.  But my
12    understanding is there was not an SNM investigation
13    going on on our task force, and in the area I worked.
14    So --
15         Q.   So the Central New Mexico Gang Task Force,
16    did they work at all with the Southern New Mexico
17    Gang Task Force?
18         A.   Obviously, there was a sharing of
19    information, but we operated separately because -- in
20    fact, I believe in June, they asked me to formally
21    document the fact that I would be focusing on Central
22    and Northern New Mexico, and not Southern.  And
23    that's why I was not intimately involved in these
24    murder cases in Southern New Mexico.  They had their
25    own task force.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7466

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178467

```
 1        Q.   But you say you would coordinate between

 2   the task force.  Would that be when the

 3   investigations would overlap?

 4        A.   This investigation -- assuming that it is

 5   an SNM case, which I don't believe I've actually

 6   looked at this -- this could have been a drug case;

 7   it could have been some other case that also targeted

 8   those folks.  I was not aware of it.  And it didn't

 9   really pertain to my task force because our task

10   force was not working the SNM at the time, as far as

11   I'm aware of.

12        Q.   Agent Pedersen, what I was wondering about

13   is whether, if there were overlapping investigations

14   that were from the two task forces that overlap in

15   focus, would they share information between the task

16   forces?

17        A.   Yes, sir.

18        Q.   And I think you indicated that you believe

19   this document I'm showing you here, it might be from

20   the Southern New Mexico Gang Task Force; in fact it

21   says that, right?

22        A.   Well, the reason I say that, that's not a

23   case file that I recognize as having worked on.  So I

24   would assume, if it is what you represented, then

25   it's an SNM case, it would have been from somewhere
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7467

```
 1   else, and not from Albuquerque.
 2       Q.   Looking at this page of discovery it
 3   indicates that there is a confidential report
 4   regarding the murder of inmates Frank Castillo and
 5   Rolando Garza at the Southern New Mexico Correctional
 6   Facility; is that right?
 7       A.   I'm sorry, what?  Yes, I'm now reading that
 8   portion that you mentioned.
 9       Q.   At the time that you were stationed here,
10   did you work with an individual by the name of
11   Michael Sprunk from time to time?
12       A.   Yes, I have met him.
13       Q.   And, in fact, if we go back to Exhibit A.
14   Did you attend an executive board meeting of Central
15   New Mexico Violent Criminal Organization Task Force?
16       A.   I don't believe I was invited.  That's
17   usually a meeting for high-level sheriffs, high-level
18   FBI people.  This information was related to me, I
19   believe, by my supervisor, so I don't believe I
20   actually attended that meeting, sir.
21       Q.   So it was related to you that they had this
22   meeting?
23       A.   Yes.
24       Q.   And for purposes of -- can we just call it
25   the Central Task Force, instead of that long name?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7468

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 180 of 469

```
 1          A.   Sure.
 2          Q.   At least one U.S. attorney attended the
 3   Central Task Force?
 4          A.   That was my understanding.
 5          Q.   And there was a plan at that point that the
 6   most effective way to dismantle the SNM would be to
 7   use a continuing criminal enterprise prosecution to
 8   do so; is that right?
 9          A.   That was my understanding of the plan, yes,
10   sir.
11          Q.   And when we were talking earlier about the
12   collection of phone calls, files, mail, and things
13   like that, that was to support a potential
14   prosecution of a continuing criminal enterprise?
15          A.   Yes, sir.
16          Q.   Now, when you're working on these joint
17   task forces, are you at all concerned that the local
18   authorities or state authorities you're working with
19   might compromise the investigation?
20          A.   I think there is a possibility anytime a
21   lot of people know about a case, that we -- law
22   enforcement worries that a case could be compromised,
23   yes.
24          Q.   And at times, when you working on these
25   joint forces, and there is a focus on a particular
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7469

1    group, or particular gang, does the FBI collect all

2    the evidence that exists, or do you leave some in the

3    hands of the state and local authorities?

4         A.   We did not collect all of the evidence,

5    because if it was not a charge that we thought

6    federally would be prosecuted, it would not

7    necessarily be something we would collect.  So I

8    think that's a pretty broad question.

9              If it was pertinent to something that we

10   were working on, or a defendant that we were trying

11   to prosecute, then I think we would normally request

12   that.  But I wouldn't say it would be fair to say

13   that we sought everything from state and local

14   agencies.

15        Q.   So it's basically on a case-by-case basis?

16        A.   It depended upon -- I don't think you could

17   gather all of the information on all of the members

18   of the SNM.  So, yes, it was focused.  If there was

19   specific crimes, specific individuals, things like

20   that, we would request it.

21        Q.   So, in April of 2001, when the FBI and the

22   joint task force started to investigate the SNM for a

23   CCE charge, what did they do to, I guess, martial the

24   evidence that might be out there?

25        A.   I know there were several meetings with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7470

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 182 2471

 1   New Mexico Department of Corrections, specifically

 2   with Will Jaramillo, who I believe ran -- at the time

 3   it was called the STG, Security Threat Group -- and I

 4   believe Mr. Jaramillo oversaw all of the gang matters

 5   within the Corrections Department.  We requested

 6   records from him.

 7          The prison system had their own methodology

 8   of documenting gang membership, things like that.  So

 9   all of those records were obtained from Corrections.

10   They provided histories on some of the different

11   members of the gang.  And that was all placed in this

12   file.

13          So there was an initial push -- part of the

14   problem is we didn't necessarily know who all of

15   those players were.  Most had been brought in from

16   other areas, had not been working gangs, myself in

17   particular.  And so a lot of it was familiarizing

18   ourselves with the prison gang, who the members were,

19   the associations, how they operated.

20          Q.   Can you give us an estimate of how many FBI

21   agents were assigned to the Central Task Force?

22          A.   It varied from time to time.  There were

23   usually four or five, plus the state and local.  We

24   also asked that Corrections put a probation and

25   parole officer.  My understanding is that probation

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7471

1    and parole reports through Corrections.  And Nick

2    Costales from probation and parole was brought on to

3    assist us, because he had been dealing with a lot of

4    the gang members.

5         Q.   So at the task force is there someone that

6    directs a particular investigation, such as is it an

7    FBI person that directs the investigation, or is it a

8    state person, or --

9         A.   It can vary.  In this particular instance,

10   I was assigned to be the primary investigator for the

11   SNM for the Central Task Force.  Each of the other

12   FBI agents was assigned to their own gang.  And some

13   of the state and local officers that were deputized

14   also could have had their own gang cases.

15        Q.   So you were the primary case agent?

16        A.   For a short time period, yes, sir.

17        Q.   And you knew that there was a possibility

18   of a federal prosecution of the SNM that could

19   include homicides they committed?

20        A.   Yes, sir.

21        Q.   Including the 2001 homicides?

22        A.   Yes.

23        Q.   I take it you didn't collect all the

24   evidence that might be out there on the SNM at that

25   point in time?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1        A.   No.  Initially, it was to get a baseline of

2    who the people were, and then to develop intelligence

3    about the leadership and their activities.

4        Q.   So, for example, with the homicide,

5    potential homicide portions of the CCE investigation,

6    would I be correct in stating that you didn't collect

7    the physical evidence that was being held?

8        A.   I was not involved with that homicide

9    investigation.  I did go and get reports and other

10   things for other murders; the Cavalier murder, for

11   example, because it was within the jurisdiction that

12   I had been asked to work.  But I was not, I believe,

13   in any way involved with the actual homicide

14   investigation of the two individuals in question.

15       Q.   Even with the Cavalier murder, you didn't

16   pick up all the physical evidence; is that right?

17       A.   I believe we did not pick it up.  It was in

18   custody of APD Gang Unit.  And because there was

19   declination on the federal prosecution, we did not

20   collect the evidence.

21       Q.   Now, when you picked up this investigation

22   of the SNM, did you have discussions with the state

23   and local authorities about their obligation to

24   preserve materials that might be relevant to a future

25   CCE prosecution?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185

```
 1        A.   It was discussed in general when they
 2   became federally deputized.  And we talked about our
 3   rules.  And all of that information, once they were
 4   deputized and a part of the task force, they needed
 5   to comply with our rules.  So frequently, we would
 6   instruct them -- they would come to us with
 7   questions.  But we did it under the federal
 8   guidelines at that time.
 9        Q.   Which individuals from the New Mexico
10   Department of Corrections were deputized as part of
11   this task force in 2001, that you can recall?
12        A.   The only -- we worked very closely with the
13   Department of Corrections.  My -- again, this is 17
14   years ago -- my recollection is Nick Costales was the
15   only person that was assigned full time, or at least
16   was designated from Corrections as a task force
17   member.  Whether or not he was actually deputized,
18   that goes through FBI executive management, but I
19   know he did have access to our work space and worked
20   closely with us.
21        Q.   How about New Mexico State Police?
22        A.   There were several over the time period I
23   was there.  Ramon Casaus, possibly.  But there were
24   two or three New Mexico State Police officers that
25   had been detailed there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7474

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 186 of 475

```
 1        Q.   Was Michael Sprunk one of them?
 2        A.   I don't believe Michael Sprunk was with New
 3   Mexico State Police.  I thought he was with
 4   Corrections.
 5        Q.   So he would have been one of the
 6   Corrections people that worked with you?
 7        A.   I talked to him on occasion.  I don't
 8   believe he was a task force officer.
 9        Q.   How about Edgar Rosa?
10        A.   I'm sorry?
11        Q.   Edgar Rosa?  Does that name sound --
12        A.   I don't recall who that is.
13        Q.   Agent Pedersen, you seem to be looking over
14   to the prosecution table for assistance.  If you can,
15   just focus here, okay?
16        A.   I'm not familiar with that name.
17        Q.   How about -- did you work with Special
18   Agent Andrew Armijo?
19        A.   Are you referring to FBI Agent Andrew
20   Armijo?
21        Q.   Yes.  I thought it was special agent, but
22   is there a difference?
23        A.   There are special agents with other
24   agencies as well.
25        Q.   Oh, okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7475

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7476

 1        A.   I think there was an agent, I think,

 2   assigned to Las Cruces that worked on the Southern

 3   New Mexico Task Force named Andy Armijo, or Andrew.

 4   I called him "Andy."

 5        Q.   What is an ITAR investigation?  I-T-A-R?

 6        A.   I believe it stands for Interstate

 7   Transportation in Aid of Racketeering.

 8        Q.   If we go back to Exhibit B.  What I'm going

 9   to do is approach you with my laptop, and I'll

10   represent to you this is Exhibit B.  Okay?

11        A.   Okay.

12        Q.   Just so we don't have to call in every FBI

13   agent that may have been involved in 2001, does it

14   appear that there was at least an ITAR investigation

15   of the SNM that was in existence as early as November

16   28, 2000?

17        A.   It would appear so based on this document.

18        Q.   And it appears that it was from the

19   Southern New Mexico Gang Task Force, based on the

20   initials?

21        A.   Based on who approved it, and the people

22   involved, yes.

23        Q.   Is this an FBI form?

24        A.   It appears to be, yes, sir.

25        Q.   And if you could scroll just to the bottom

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 188

1    of the page, does it appear that you may have

2    received a copy of this report back in 2001?

3         A.   It appears that at some point it would have

4    been distributed to me.  I was not on the task force

5    at the time this document was drafted.  So it would

6    have been sometime --

7         Q.   Afterwards?

8         A.   -- afterwards.  I couldn't tell you when

9    that was.  But my recollection was I was not assigned

10   to the task force until after the Christmas break,

11   between 2000 and 2001.

12        Q.   If we could scroll to the next page of this

13   document.  That's your name at the bottom again; is

14   that right?

15        A.   Yes.

16        Q.   And if we can scroll just a little bit

17   higher.  It appears that in at least at some point in

18   time the FBI task force that had started in 2000 on

19   the SNM was collecting the entire security threat

20   assessment of the SNM; is that right?

21        A.   According to this, they were, in Las

22   Cruces, yes.

23        Q.   I'd like to turn to page 27047 of the

24   discovery.

25             Agent Pedersen, did you -- when you were on



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7477

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 189 7478

```
 1    the task force, did you conduct some interviews of

 2    individuals in which some of the questions related to

 3    the murders that had happened at the Southern New

 4    Mexico Correctional Facility in March of 2001?

 5         A.   Yes, sir.

 6         Q.   And I'm showing you this report, or this

 7    document.  Is this one of the interviews that you may

 8    have conducted back in 2001?

 9         A.   Yes, I believe this is a transcription of a

10    videotaped interview that I did.

11         Q.   During that interview you asked some

12    questions of this informant?

13         A.   I fully debriefed this informant about the

14    SNM, and this individual's knowledge of the SNM.

15         Q.   Including the murders?

16         A.   Yes.

17         Q.   If we could go to page 55340 of discovery.

18              MR. BECK:  Is this an exhibit, Mr. Castle?

19              MR. CASTLE:  No, it is not.

20         Q.   Oh, I apologize -- the date of the material

21    I was just showing you a few minutes ago was dated

22    June 1, 2001, which was the interview you were

23    talking about?

24         A.   Yes.

25         Q.   And then what are these different case
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7478

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 190

```
 1   numbers on the bottom here?

 2           THE COURT:  Is there an identifier for this

 3   exhibit?

 4           MR. CASTLE:  Yes.  It's page 27047 of

 5   discovery.  It's not an exhibit.  I'm just trying to

 6   refresh his memory and show him some documents.

 7       A.   The "92D," I believe is the intelligence

 8   case regarding the SNM.  The "270B" would relate to

 9   this particular informant.  And "166E" was my case

10   that I worked that dealt with the Central and

11   Northern portion of the SNM, which is what I was

12   assigned to work.

13       Q.   And would I be correct in assuming the

14   reason you put all three case numbers on there is

15   because they're related with respect to this witness?

16       A.   This witness provided information about

17   more than just my ongoing investigations.  And so the

18   intelligence case would capture things related to

19   other investigative matters, things that other task

20   forces or state and locals, might have an interest

21   in.

22       Q.   So that a copy of this report would go --

23       A.   That's why I put it in multiple files, yes,

24   because there was more information than just relevant

25   to subjects I was currently investigating.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                                                           e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 191

```
 1        Q.   Was that the only person that you

 2   interviewed in 2001, in which the murders at Southern

 3   were the subject of the interview?

 4        A.   When you say "the subject," I don't believe

 5   I did others -- I don't think I did any interviews

 6   where that murder was the primary topic.  It came up,

 7   because with almost every SNM member I met, I would

 8   debrief them on every possible crime and criminal

 9   thing they knew about.  So there were other people I

10   interviewed that mentioned something about these

11   homicides.

12        Q.   So, in other words, the net was cast fairly

13   wide concerning the SNM?

14        A.   Yes, sir.

15        Q.   And that would include the 2001 murders, if

16   the person knew something about that.

17        A.   I asked about every potential crime that

18   they knew about, which would include those.

19        Q.   Then would you share the information that

20   you obtained with the New Mexico State Police or the

21   Department of Corrections?

22        A.   They were actively involved in the

23   investigations and doing some of the interviews.  So,

24   normally, there was not a passage directly to them.

25   There could have been.  But normally, their task
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   force officers would be involved in the weekly
 2   briefings.  They would be involved in the
 3   investigation.  So there really wasn't a necessity to
 4   pass reports.  They were involved in the
 5   investigations.
 6        Q.   So let's talk a little bit about these
 7   weekly meetings.  And I'm only going to confine
 8   myself to 2001, after the murders at the Southern
 9   facility.  Were the various task force members,
10   including Corrections, State Police, and yourself,
11   sharing information from time to time concerning
12   developments in the 2001 murder investigation?
13        A.   We were not investigating the 2001 murder
14   as a primary target.  In June of 2001, my
15   understanding is -- and I was asked to open a
16   separate case.  You mentioned what the 166E
17   investigation was.  Our focus was on the SNM criminal
18   activities in central and northern New Mexico.  So we
19   were not actively investigating these two homicides.
20             There was a task force here in Las Cruces.
21   In fact, the document, where I opened this file, I
22   cc'd Andy Armijo.  My understanding was our
23   management had said:  We have another gang task force
24   in Southern New Mexico, you focus on Central and
25   Northern, if they want to do the Southern cases,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7481

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 193

```
 1   that's fine.
 2          So there would be a sharing of information.
 3   We were not actively pursuing -- that was not one of
 4   my primary targets, per my management, to
 5   investigate.
 6          So we obtained information about it.  But I
 7   hesitate by your characterization, because our focus
 8   was not the homicides in Las Cruces.
 9      Q.   Okay.  So, in other words, the FBI
10   generally had a focus on the SNM; is that correct?
11      A.   Yes, sir, in New Mexico.
12      Q.   And then a certain task force might have a
13   piece of that investigation?
14      A.   Yes.
15      Q.   And so your piece of that investigation,
16   for possible federal prosecution, focused on things
17   that happened in Central New Mexico?
18      A.   Central and Northern, and then Southern had
19   it's own task force.
20      Q.   So Southern would be the one that might be
21   investigating the 2001 murders, because it's in
22   that --
23      A.   If they were involved.  That was not a
24   primary focus of our task force.
25      Q.   Let me finish the sentence, okay.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              So the Southern would be in charge of

 2     investigating the 2001 murders, if the FBI was

 3     focused on that because it was in their geographic

 4     area?

 5          A.   Yes, sir.

 6          Q.   And as these task forces would work, would

 7     they keep the U.S. Attorney's Office updated from

 8     time to time?

 9          A.   Yes.

10          Q.   If we can go to page 605 of the discovery,

11     which appears to be an FBI 302 form dated April 9,

12     2001.  Does that appear to be what that document is?

13          A.   It's not in the standard format.  It looks

14     like it's a historical electronic format.  But that's

15     what it represents to be.

16          Q.   And would this have been a 302 that would

17     have been prepared for the Central or the Southern

18     task force?

19          A.   I'm not familiar with that case file as

20     being one that we worked.  So my understanding is it

21     would have been the Southern.

22          Q.   Okay.  And I think I asked you earlier

23     about Edgar Rosa.  Was he an individual assigned to

24     the Southern or do you not know?

25          A.   I don't even know who he is.  I don't



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 195

```
 1  believe I ever met him.
 2       Q.   He wasn't assigned to Central?
 3       A.   He was not in our task force.
 4       Q.   Right.  Thank you.
 5            Some of the New Mexico prisons are located
 6  in the central and northern portions of the state; is
 7  that correct?
 8       A.   That's correct.
 9       Q.   And during the investigation of the SNM,
10  that you were involved in, in 2001, would you
11  exchange information with STIU officers from any of
12  those prisons?
13       A.   At the time, I believe -- STIU is a new
14  name for me.  STG, the Security Threat Group was the
15  entities that I worked with.  I dealt primarily with
16  Will Jaramillo because he was the head person over
17  all of those groups.  But we did go out and talk to
18  other people on occasion, yes.
19       Q.   So Will Jaramillo was the STG coordinator
20  for the State?
21       A.   Yes, that's my understanding.
22       Q.   And he would funnel --
23       A.   He was our primary point of contact.
24       Q.   So he would, perhaps, collect information
25  and then provide it to you all?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     A.   Yes, sir.

2     Q.   And vice versa?

3     A.   Yes, sir.

4     Q.   If we could look at Exhibit G.  This is

5     another report from Edgar Rosa.  And I take it you

6     would not know anything about this exhibit?

7     A.   I'm sorry, sir, I don't.

8     Q.   Did you interview an individual by the name

9     of Toby Romero in your investigation?

10    A.   Yes, sir.

11    Q.   And did Mr. Romero -- well, do you recall

12    when you interviewed him?

13    A.   I believe it would have been in June of

14    2001.

15    Q.   Did you have an opportunity to look at that

16    transcript of that interview before testifying today?

17    A.   Are you talking about the one that you

18    referenced before as an exhibit?

19    Q.   Yes.

20    A.   Yes, I reviewed portions of it.

21    Q.   All of it wasn't -- well, the portions that

22    you saw -- what portions did you review, I mean?

23    A.   I believe two thirds of it was available

24    electronically, so I was able to review that.  I

25    specifically did the search for the names of Castillo

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7485

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7486

1   and Garza to find any reports that I had written, and

2   I believe I reviewed those sections.

3          Q.   And you indicated, I think earlier, that

4   was video recorded?

5          A.   Yes, sir.

6          Q.   And do you know what came of that video

7   recording?  Would you have stored it somewhere?

8          A.   My understanding is it probably would have

9   been submitted to an ELSUR file.  And then it was

10  transcribed; I believe, the prosecutors requested

11  that it be transcribed.

12         Q.   Did Mr. Romero, when he was talking to you,

13  did he indicate that an individual that he identified

14  as Smurf had talked to him about murdering Frank

15  Castillo?

16         A.   My recollection is that he did mention the

17  name "Smurf."

18         Q.   Now, when he talked to you, he told you

19  things that he'd heard through the grapevine, and

20  also things that he personally saw or heard; is that

21  right?

22         A.   I believe a lot of his information about

23  that was secondhand.  My recollection is he was not

24  at Southern when the murders occurred.

25              But, yes, I documented -- we documented

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   whatever he had to tell us about the incident.
 2        Q.   I want to focus only on the stuff that he
 3   saw personally or heard personally; not the things
 4   that he heard secondhand, if I could.
 5             He left the Southern facility shortly
 6   before the homicides in March of 2001; is that right?
 7        A.   My recollection is that he left and was not
 8   there at the time of the homicides.
 9        Q.   Did he indicate to you that he had left
10   shortly before the murders happened?
11        A.   I believe that was part of his statement to
12   us.
13        Q.   And in his interview with you, he
14   specifically indicated that Smurf was going to kill
15   Castillo, and that Smurf wanted Mr. Romero to kill
16   Mr. Garza; is that right?
17        A.   I believe that's correct.
18        Q.   Now, Smurf is an individual known as Leroy
19   Lucero; is that right?
20        A.   My recollection, after 17 years, is that
21   was a prison nickname or a gang name for Mr. Lucero.
22        Q.   If we could search Exhibit C for Lucero.
23             I know it's a long time, but do you recall
24   whether he gave the actual name for Smurf?
25        A.   I think I might have to go back and review
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 199 7488

1    the actual interview.  My recollection was he may

2    have told us:  Go talk to this person, he knows who

3    it is, or eventually he told us -- but I think there

4    may have been some hesitation initially.

5         Q.   We're going to show you PDF page 141 of

6    Exhibit C, which is also discovery page 14468.  It

7    will be up on your monitor here in a second.

8              Do you see where you asked him:

9              "Just for the record, who is Smurf?"

10             And then he identifies him a little farther

11   down as Leroy Lucero from Las Vegas?

12        A.   Yes.

13        Q.   So would it be fair to say that at that

14   point the FBI at least had information from Mr.

15   Romero that Leroy Lucero was planning the murders of

16   the two people who died at the Southern facility in

17   2001?

18        A.   Mr. Romero had shared that information with

19   us, yes.

20        Q.   And he said he had a personal conversation

21   with Leroy Lucero?

22        A.   About --

23        Q.   About the --

24        A.   -- the murders.

25        Q.   -- planning the murder?



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7488

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200 of 489

```
 1          A.    Yes.

 2          Q.    And this would have been before Mr. Romero

 3    left the facility?

 4          A.    My understanding is that conversation took

 5    place before he left.  That's my recollection.

 6          Q.    Do you know what happened to Mr. Romero?  I

 7    mean, is he alive?

 8          A.    I have been told that he is dead.  But I

 9    haven't done any personal investigation into that

10    after I left the gang task force.

11          Q.    Would you have distributed this interview

12    of Mr. Romero to the Southern Gang Task Force?

13          A.    It would have been placed in the file, and,

14    therefore, they would have had access to it.  I don't

15    know if it was specifically sent to them as a

16    separate item.

17                When we collected information, it would be

18    put in the file.  And they would have had access to

19    this file, as well as anything I was working on.  So

20    there was an intelligence analyst, who would be the

21    primary facilitator between the two of us.  Because

22    we were investigating separate things, the analyst

23    would look at both of those things and pass

24    information back and forth.  But the agents did less

25    of that than the analyst did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7489

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1        Q.   So what I understand is you probably don't
 2   remember where it was distributed, but it makes sense
 3   that it would have been distributed to the Southern
 4   Gang Task Force?
 5        A.   I would assume that our analyst would have
 6   shared that.  But it would have been put in the file.
 7   So it was available.
 8        Q.   And would you have shared that with
 9   Lawrence Jaramillo?
10        A.   I believe he would have known about that.
11   By Lawrence are we talking -- is it Will?
12        Q.   I'm sorry, "Will," I apologize.
13        A.   "Will."  I'm sorry, I just want to make
14   sure.
15        Q.   There are a lot of names.
16        A.   Mr. Jaramillo would have known about that,
17   either through Mr. Costales, who was assigned to the
18   task force, or as a part of a weekly meeting or
19   update.
20        Q.   After this interview, did you make any
21   attempt to interview Mr. Leroy Lucero?
22        A.   Again, I was not investigating this
23   particular homicide, so I don't believe -- that
24   was -- I was focusing on other issues.  So, no, I did
25   not personally pursue that because it was outside of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7490

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202491

```
 1    my assignment.

 2         Q.   No, I understand.  You would interview SNM

 3    members, and gather information that was something

 4    that might be focused on your investigation, but

 5    you'd collect information generally that might be the

 6    focus of any other FBI investigation; is that right?

 7    I'm sorry, that was poorly worded.

 8         A.   I'm not quite sure what you're asking.

 9         Q.   Okay.  You'd interview SNM members from

10    time to time; is that correct?

11         A.   Yes, sir.

12         Q.   And when you interviewed them, you wouldn't

13    just confine yourself to your immediate

14    investigation, but you would include other open SNM

15    investigations in your inquiry?

16         A.   I asked everything about the SNM.  Because,

17    if you have somebody who is cooperating, it doesn't

18    make sense to just ask them about the focus of mine.

19    So we would ask them about all criminal things.  The

20    analysts then would share that information and pass

21    it back and forth and coordinate that.

22         Q.   And do you recall whether you had shared

23    this interview with Mr. Romero with Special Agent

24    Armijo in the Southern Task Force?

25         A.   I don't recall specifically having that
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7491

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 203

 1   discussion.  But it very well could have happened.  I

 2   just don't recall that specific discussion, sir, I'm

 3   sorry.

 4          MR. CASTLE:  I don't have any other

 5   questions.

 6          THE COURT:  All right.  Thank you, Mr.

 7   Castle.

 8          Any other defendant have direct examination

 9   of Mr. Pedersen?

10          All right.  Mr. Beck, do you have

11   cross-examination?

12          MR. BECK:  I do, Your Honor.

13          THE COURT:  Mr. Beck.

14                   CROSS-EXAMINATION

15   BY MR. BECK:

16      Q.   Good afternoon, Agent Pedersen.

17      A.   Good afternoon.

18      Q.   Now, I think when you were talking with Mr.

19   Castle, you said your focus was on central and

20   northern New Mexico in the SNM?

21      A.   That's correct.  In my review of documents

22   related to my testimony, I actually was asked to

23   draft a document, and open an investigation

24   specifically for central and northern New Mexico, as

25   it pertains to the SNM.  And that was the 166 file

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492
                                                            e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7492

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204

 1   number that Mr. Castle referred to in an earlier

 2   document.  So my focus was on crimes and ongoing

 3   criminal activity at the correctional facilities, but

 4   also geographically in the northern and central part

 5   of New Mexico.

 6       Q.   And I think you said with Mr. Castle that

 7   your knowledge of the Southern Gang Task Force, their

 8   investigation into these 2001 homicides was, quote --

 9   you were told, quote, "If they want to do Southern

10   cases, that's fine."  Was that the extent of your

11   knowledge of whether the Southern Gang Task Force was

12   investigating?

13       A.   We had a separate governing board, is my

14   understanding.  And so the other federal, or state

15   and local agencies that tasked their officers to work

16   with us would kind of determine what we worked.  And

17   there was an executive board meeting -- the task

18   force that I was involved in, and my investigative

19   things were to focus on the central and northern part

20   of the state.  There was a separate group down in Las

21   Cruces, in this part of the state, that also was

22   looking into the SNM, apparently.  But they had their

23   own board of governors, their own people that

24   directed that.  So I think that would be a fair

25   statement.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205

```
 1        Q.   Okay.  Yeah, what I'm trying to say is you
 2   don't know whether the Southern Gang Task Force was
 3   investigating the 2001 homicides; is that fair to
 4   say?
 5        A.   I don't know the specific activities they
 6   were doing.  My understanding is they did start
 7   looking into the SNM.
 8             But I had so much of my own work, and then
 9   getting pulled into 9/11 -- they might have cc'd me
10   on documents, or said, Hey, we're doing this, but I
11   had my own investigations and my own subjects.  So I
12   knew they were there.  I would cc Andy Armijo if I
13   did something occasionally.  But there wasn't a lot
14   of ongoing communication.  The analyst was the
15   primary person to share that information or to update
16   things.  We were runnin' and gunnin', doing our own
17   investigation.
18             THE COURT:  Mr. Beck, would this be a good
19   time for us to take one of our afternoon breaks?
20             MR. BECK:  Sure, Your Honor.
21             THE COURT:  All right.  We'll be in recess
22   for about 15 minutes.
23             (The Court stood in recess.)
24             THE COURT:  All right.  We'll go back on
25   the record.  All right.  Mr. Pedersen, I'll remind
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206

```
 1    you that you're still under oath.

 2              THE WITNESS:  Yes, sir.

 3              THE COURT:  Mr. Beck, if you wish to

 4    continue your cross-examination of Mr. Pedersen, you

 5    may do so at this time.

 6              MR. CASTLE:  Your Honor, just before we

 7    start, Mr. Cooper had to leave for the day.

 8              THE COURT:  Yeah, Ms. Bevel explained that

 9    to me.  Sorry.  Tell him we hope he gets to feeling

10    better.

11                        CROSS-EXAMINATION

12    BY MR. BECK:

13        Q.   Mr. Pedersen, you talked about 9/11, and I

14    want to go back to that in just a second, but did you

15    present an SNM-related case to the U.S. Attorney's

16    Office for possible prosecution?

17        A.   Yes.  There were three or four different

18    things that I was focusing on.  One was Angel Munoz,

19    who was the jefe at the time.  And I presented

20    information -- we conducted a search warrant at his

21    home shortly after he got out of prison.  And I

22    believe he was charged federally.  I was, I believe,

23    the person responsible for that federally.  There

24    were a couple of --

25        Q.   Let me stop you there.  So Angel Munoz, do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7495

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 207

```
 1    you know if he's a defendant in this case?

 2         A.    I believe he's diseased.

 3         Q.    Fair enough.  Does that help refresh your

 4    memory whether he's a defendant in this case?

 5         A.    I believe not.

 6         Q.    Okay.  Who is next?

 7         A.    There were a couple of corrections officers

 8    who were assisting the SNM in smuggling drugs into

 9    the prison.  There were two corrections officers that

10    we addressed in Estancia.  I believe one of them was

11    named Sharon Easley, and the other, Elias Saenz.  And

12    then --

13         Q.    Were they prosecuted?

14         A.    I believe they were eventually prosecuted

15    at the state level.  But that was part of our

16    investigation, part of the drug trafficking aspect.

17         Q.    The U.S. Attorney's Office did not

18    prosecute that?

19         A.    They did not prosecute those.

20               I presented a case on the homicide of

21    Matthew Cavalier.  That was a homicide at Bernalillo

22    County Detention Center.  That was within my region,

23    so that one I investigated, and I believe it was

24    declined by the U.S. Attorney's Office.  But that was

25    one of the murders that I was actively investigating.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

 1       Q.   So out of the SNM investigation, is it fair

 2  to say that, out of your investigation, the cases you

 3  presented to the U.S. Attorney's Office, the only

 4  prosecution that resulted from that was for Angel

 5  Munoz?

 6       A.   Yes, sir.

 7       Q.   And what were the charges there?

 8       A.   I believe it was a career criminal charge

 9  based on the heroin and the drug that we found -- or

10  the heroin and the gun that we found at Mr. Munoz'

11  home.

12       Q.   And then -- as I said, I was going to come

13  back to 9/11.  Why was that a significant event in

14  relation to your investigation in the SNM enterprise?

15       A.   I was at the headquarters city office the

16  morning of 9/11.  And before the second plane hit the

17  second tower, the SAC came to me, and he said:  Set

18  up a command post, this appears to be an act of

19  terrorism.  And that pretty much changed my career

20  for the next five years.

21            On paper, I was still assigned to the gang

22  task force, but I spent probably three or four months

23  working mostly counter-terrorism matters.

24            And then I was sent to Salt Like City in

25  early 2002 for approximately 45 days to work the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7497

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209

```
 1   Winter Olympics.  There were serious terrorism
 2   concerns.  Obviously, we just had 9/11.  So I was
 3   sent up there.  I believe we worked about 45 days
 4   straight, 12-hour shifts.  So when I came back, they
 5   gave us time off, because we hadn't really been able
 6   to take time off for a month and a half.
 7           So for about six months, through late
 8   August, first week or two of September, through
 9   probably March, I did very little work on the SNM, or
10   much gang work of any kind.  There may have a few
11   pieces of paper, a few things that had to be done
12   administratively.  But most of my time became focused
13   on terrorism things at that point.
14       Q.  Is that true for other members of the FBI
15   who were on the Central New Mexico Violent
16   Organization Task Force with you?
17       A.  I know that Agent Howington, at some point,
18   was transferred off.  I don't recall what squad he
19   was transferred to.  But it had a significant impact.
20   And I was the primary case agent on the SNM
21   investigation, on that task force.  So I think that
22   was one of the precipitating factors was, the lead
23   investigator was gone.
24           We did a few additional things, but by
25   October or so of 2002, I had been sent to Arabic
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 210

```
 1    training and terrorism classes, and I no longer had
 2    any involvement with the task force on a day-to-day
 3    basis.
 4         Q.   I think you said, in terms of sharing
 5    information with the Department of Corrections during
 6    their investigation, you asked for and were provided
 7    some background information on specific SNM members;
 8    is that right?
 9         A.   Yes, sir.
10         Q.   You also earlier talked with Mr. Castle
11    that -- about if you were seeking to charge a
12    particular person, then you asked for information on
13    that particular person; is that right?
14         A.   Yes.
15         Q.   And then I think you also spoke with Mr.
16    Castle about concerns that investigation -- you know,
17    the fact that you're investigating someone may get
18    out; is that a concern that you have, when you're
19    working?
20         A.   It's always a concern.  Because evidence
21    can disappear.  Then subjects may act differently, if
22    they know they're being pursued.  So it was also a
23    caution that we had in gang investigations, was to
24    try to limit the number of people that knew
25    specifically who we were investigating.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7499

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 211

```
 1        Q.   So in pursuit of this investigation, you
 2   didn't ask New Mexico Corrections Department for a
 3   list of their internal sources, did you?
 4        A.   They shared some names and information in
 5   general with us, but I don't recall -- they had their
 6   own sources.  So I did speak with them, and I think
 7   they suggested people that we could try to talk to.
 8   On some occasions those people had no interest.  In
 9   others, it was kind of a game of "what will you give
10   me?"
11             But my understanding is they had some of
12   their own internal sources.  We did share information
13   back and forth.  But I don't recall ever seeing
14   something that listed all of the Corrections
15   Department sources.
16        Q.   I think that answered my question.  Thank
17   you.
18             I'm going to take you to Defendant's
19   Exhibit B.  What is the significance of the 166E
20   number that's highlighted there, on the top of that?
21        A.   Right.  My understanding is that the "92"
22   was an intelligence case.  The "166E" was an actual
23   substantive -- they're working towards gathering
24   evidence and potentially prosecuting someone.
25             So when I opened an "166E" case, we were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7500

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212

1    looking at Angel Munoz, we were looking at these

2    prison -- the corrections officers that were bringing

3    drugs in, the Matthew Cavalier.  So my recollection,

4    from 17 years ago, is that's what we would do for a

5    substantive criminal investigation, rather than an

6    intelligence big picture case.

7         Q.   And for an intelligence case, I think you

8    talked about earlier having files that other agents

9    may pick pertinent information out of.  Is that what

10   an intelligence file would be?

11        A.   Initially, for example, those of us who had

12   no gang investigation background, we contacted other

13   agencies -- Corrections, in particular, in this

14   regard -- to get information on who the members of

15   the gang were, the basic background information,

16   which we then would reposit in that 92 case.

17             But as we started developing sources, or

18   information about potential criminal charges, at that

19   point, we would open a 166 case.

20        Q.   Okay, thank you.

21             And I want to take you to Exhibit A,

22   Defendants' Exhibit A.  Now, I think you went over

23   this with Mr. Castle.  And I just want to make sure

24   that I'm understanding this correctly.  Your

25   intention with this was to open sort of this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7501

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7502

```
 1    92D-AQ-54707 investigation into the SNM?
 2         A.   Yes, this was the opening of an
 3    intelligence case on the SNM Gang per instructions
 4    from my management for the Central Task Force -- I
 5    believe that's the term we decided to use for it.
 6         Q.   Is it fair to say that this document
 7    reflects the current state -- well, let me ask this
 8    question first:  I think you said that the
 9    information in here came from another document or
10    from another source.
11         A.   This would include open source information,
12    other discussions with Corrections.  This was just a
13    summary of things that were allegedly known, or
14    things summarizing what the SNM was doing; what their
15    believed crimes were, and then kind of set out an
16    investigative plan that we hoped to carry out.
17         Q.   Okay.  Is it fair to say that this was the
18    investigative plan -- again, you said earlier, the
19    two homicides here in Southern New Mexico that you
20    weren't pursuing -- is it fair to say that this is an
21    investigative plan for the whole background of the
22    SNM statewide?  At least the background information
23    for them?
24         A.   The background information came from all
25    the sources that I had, which would have been open
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7502

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 214

1    source, Corrections, everything else.

2         Q.   Okay.

3         A.   I opened, two months later, an actual

4    substantive 166E, where I started pursuing criminal

5    investigations against specific individuals

6    associated with the SNM.

7         Q.   All right.  And that answers my question.

8              So I'm going to take you to page 2 of this,

9    and I'm going to direct your attention to the bottom

10   of the first paragraph there, the last sentence,

11   where it says, "NMSP and the Department of

12   Corrections are investigating and a report should be

13   obtained from these agencies."  Do you see where it

14   says that?

15        A.   Yes.

16        Q.   Does that indicate to you that, at least at

17   this time, you didn't yet have access to those State

18   Police reports and Department of Corrections'

19   reports?

20        A.   My understanding is that the State was

21   conducting that investigation, and that's why I

22   documented it that way.  I don't believe we had

23   obtained those records, or I would have mentioned we

24   already have those documents in our possession.

25        Q.   Sure.  So it sounds like, at least at this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7503

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 215

```
 1    point, you weren't working hand-in-hand with the
 2    State Police and the Department of Corrections on the
 3    Garza and Castillo murder; is that fair to say?
 4         A.   I don't believe I ever did.  But at this
 5    point, I don't know that the FBI was either.  I'm not
 6    aware of that, because I was not actively involved in
 7    the Southern Task Force, sir.
 8         Q.   Okay.  Now, I want to take you down the
 9    page to the Matthew Cavalier heading.  And in the
10    first sentence there at the second to the third line:
11    Where did this murder occur, according to this
12    report?
13         A.   Bernalillo County Detention Center.
14         Q.   And then Bobby Ortega is the next one.
15    Does it say in this report that the case is currently
16    being prosecuted by Lea County?
17         A.   Yes, sir.
18         Q.   And then, on the third page, still talking
19    about Robert --
20              THE COURT:  Mr. Benjamin, you're okay,
21    right?  You're just looking --
22              MR. BENJAMIN:  -- at the monitor, Your
23    Honor.
24              THE COURT:  All right.  I just didn't want
25    to ignore you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Thank you, Your Honor.
 2              THE COURT:  All right.  Mr. Beck.
 3         Q.   The third page of this report, does that
 4    tell you where the murder of Robert Ortega happened?
 5    Or maybe that helps refresh your memory where it
 6    happened.
 7         A.   Yes, that helps refresh my memory.  I
 8    believe it was at the Hobbs Correctional Facility.
 9         Q.   And is that last sentence in relation to
10    Bobby Ortega, like the Castillo-Garza, does that tell
11    you whether you were joined in that investigation
12    into the Bobby Ortega murder at that time?
13         A.   I don't believe it documents the FBI
14    involvement in that matter.
15         Q.   Where it says in that last sentence,
16    "Reports need to be obtained from Lea County and
17    Hobbs Correctional Facility," does that indicate to
18    you that you were not participating in that
19    investigation?
20         A.   Yes.
21         Q.   The next one, Felix Animal Martinez, does
22    that report indicate where that murder happened?
23         A.   That was also the Bernalillo County
24    Detention Center.
25         Q.   The next one, Ronnie Baca; where did that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7505

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 217

1    murder happen?

2        A.    Bernalillo County Detention Center.

3        Q.    Okay.  Now, it looks to me like this

4    report -- Phillip Silva -- it looks to me like this

5    murder happened -- from that first sentence -- after

6    he was released from prison?

7        A.    That's my understanding.

8        Q.    So this is the first one we've seen so far

9    that did not happen in a prison; is that fair to say?

10       A.    Yes, sir.

11       Q.    And then, in the last sentence of the

12   investigation into Mr. Silva; does that tell you

13   whether the FBI was joined in this investigation?

14       A.    My understanding is we were not, because we

15   still needed to obtain the records.  If we were

16   actively involved, I believe we would have already

17   had those records in our possession.

18       Q.    The next one, Victor Herrera; does this

19   report indicate to you where Victor Herrera's death

20   occurred?

21       A.    Central New Mexico Correctional Facility.

22       Q.    I'm going to turn your attention to page 4.

23   I believe this is still in relation to Mr. Herrera's

24   murder.  It looks like the first full paragraph on

25   that page refers to Toby Romero.  Do you see that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7506

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 218

7507

```
 1          A.   Yes, sir.

 2          Q.   I think you know Toby Romero; is that

 3   right?

 4          A.   Yes, I've met him and interviewed him.

 5          Q.   Okay.  Does this indicate to you whether --

 6   at this time, does that second sentence indicate to

 7   you at that time whether he was an FBI cooperator?

 8          A.   I don't believe he was a cooperator at that

 9   time.

10          Q.   All right.  The next murder there:  Max

11   Gutierrez, Jr., where did that murder take place?

12          A.   I believe that was at the Main Correctional

13   Facility in Santa Fe.

14          Q.   So that's another prison murder, right?

15          A.   Yes, sir.

16          Q.   I'm going to direct your attention to page

17   5:  The murder of Michael Fuentes; where did that

18   take place?

19          A.   I believe that was also at the Main

20   Facility in Santa Fe.

21          Q.   And then the last murder on here:  Adam

22   Aragon.  It looks like this is the second murder --

23   only the second murder so far -- that did not take

24   place in prison, right?

25          A.   That's my understanding.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7507

1      Q.   Now, reading through that Adam Aragon

2   sentence, it looks to me like it says that

3   Corrections had obtained a letter from an SNM member

4   which talked about the killing.  Do you see that?

5      A.   Yes, sir.

6      Q.   And it says that -- and it looks to me like

7   FBI intended to get a copy of this letter; is that

8   accurate?

9      A.   Yes.

10     Q.   So at this time, or at the time of writing

11  this, does that indicate to you whether Corrections

12  and FBI were working hand-in-hand in investigating

13  this murder?

14     A.   I believe this document was drafted at the

15  very beginning, when I was just starting to develop a

16  relationship with Corrections.  So I don't believe we

17  have that in our possession.

18     Q.   Now, the next couple of pages -- and I'm

19  not testing your knowledge on this -- the next couple

20  pages talk about SNM drug traffic activities; is that

21  fair to say?

22     A.   Yes.

23     Q.   Is it fair to say that this document at

24  least classified the SNM drug trafficking activities

25  as significantly, if not almost solely, within the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7508

```
 1  prison system?  And I'll direct your attention to

 2  page 5, where it starts talking about SNM drug

 3  trafficking activities and the penal system.

 4          And then it's not until page 7 till we get

 5  to SNM drug trafficking tied to street gangs.  Do you

 6  see that?

 7      A.   Yes.

 8      Q.   And if you need to look through this, you

 9  can.  But is it fair to say that the tie to street

10  gangs was a tie to street gangs that were providing

11  drugs into the prisons at this time?

12      A.   My understanding at the time was that that

13  was a problem.  A lot of the drugs that were coming

14  into the SNM came from street gangs or members of

15  street gangs, and that was one of the methods that

16  drugs were being smuggled into the prison.

17      Q.   So let me ask you a question generally

18  about this Defendants' Exhibit A proposed

19  investigative plan for the SNM.  Is it fair to say

20  that all except for two of the murders mentioned in

21  here -- and the majority, if not all of the drug

22  trafficking crimes -- was directed at things that

23  take place within the prison system only?

24      A.   I would say that the majority of the SNM's

25  activities are within the prison system.  We
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7509

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221

```
 1    considered this a prison gang case, although there
 2    were people on the outside.  That was the primary
 3    focus.  Obviously, all entities that large have some
 4    extended features.  But this was primarily a prison
 5    gang case, and activities related to the prisons.
 6              MR. BECK:  Give me one second here.
 7              THE COURT:  Certainly.
 8         Q.   You were asked about Mr. Romero's -- Toby
 9    Romero's -- discussions about -- with Smurf, or Leroy
10    Lucero.  Do you remember that?
11         A.   Yes, sir.
12         Q.   Did you follow up and corroborate Mr.
13    Romero's representation to you that Leroy Lucero told
14    him of the plan to kill two inmates inside the
15    Southern New Mexico Correctional Facility?
16         A.   I was not actively working that homicide,
17    so I did not -- I don't recall going out and trying
18    to verify that.  I did work on verifying other
19    information.  For example, Corrections officers that
20    were bringing drugs in, things like that.
21              But that was not one of my investigative
22    things at the time.  So I don't believe we ever --
23    myself or the people on our task force -- ever ran
24    that to ground.
25         Q.   And following up on that:  Again, you said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7510

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 222

1   that, I think three out of the four cases that you

2   presented to the U.S. Attorney's Office for

3   prosecution, is it fair to say that they actually

4   involved events outside of the prison system, what I

5   might call on the streets?

6           So let me ask a better question.  The

7   Corrections officers that you presented for

8   prosecution, were they confined within the prison, or

9   did they live outside on the streets and then go in

10  to prison for work?

11  A.   They lived outside on the streets, and then

12  they would bring drugs in to SNM members in the

13  prisons.  Angel Munoz was outside the prison.

14  Q.   That was my next question.

15          I want to show you what's been admitted as

16  Defendant's Exhibit I.  Does this appear to be a

17  Corrections, or Southern New Mexico Correctional

18  Facility memorandum dated April 12, 2001?

19  A.   Yes, sir.

20  Q.   And in this report it talks about Source

21  1-A.  Is that an FBI source?

22  A.   I have no way of knowing if that's an FBI

23  source.  I was not involved in this.  And it's not a

24  source that I ran, as far as I know, so I don't have

25  any idea who Source 1-A is.  I'm sorry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7511

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 223

1          Q.   That's fine.  Do you think that this is one

2     of the Corrections sources you've talked about, that

3     you didn't have a list --

4               MR. CASTLE:  Objection.  It calls for

5     speculation.  He says he doesn't know anything about

6     this report.

7               THE COURT:  Well, let me see what the agent

8     says.

9               MR. BECK:  I can ask a better question.

10              THE COURT:  All right.

11         Q.   At any time you were working on the gang

12    task force investigating the SNM, did you have a list

13    that included a source who was termed or named Source

14    1-A?

15         A.   I'm not familiar with the Source 1-A, sir.

16         Q.   You opened and numbered sources for the FBI

17    during your time working on the Central New Mexico

18    Violent Organization Task force?

19         A.   Yes, sir.

20         Q.   And that's not the way that you would open

21    a source, or term a source with the FBI?

22         A.   At the time, that number would not

23    accurately reflect an FBI source.

24         Q.   During the time that you investigated the

25    SNM, throughout your entire time here in New Mexico

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224

```
 1    or elsewhere, did you have any discussions with the
 2    U.S. Attorney's Office about delaying prosecution of
 3    the SNM for any crimes to gain a tactical advantage?
 4          A.   I never have asked anyone to delay a
 5    prosecution that I'm aware of.  But particularly in
 6    this case, there was never a request for any delay.
 7    In fact, I pushed to prosecute the Cavalier case.
 8          Q.   Did you hear anyone ever say anything like
 9    that?
10          A.   No, sir.
11               MR. BECK:  I'll pass the witness.
12               THE COURT:  All right.  Thank you, Mr.
13    Beck.
14               Mr. Castle.  Do you want --
15               MR. CASTLE:  Yes, if we could pull up
16    Exhibit A again.
17                      REDIRECT EXAMINATION
18    BY MR. CASTLE:
19          Q.   Do you have a paper copy with you?
20          A.   I believe this is the same document you
21    referred to before.
22          Q.   Here it is.  This is titled, "Proposed
23    investigative plan for the SNM"; is that right?
24          A.   Yes.
25          Q.   Whose "Proposed investigative plan"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7513

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225

```
1              A.   My understanding is there was an executive

2       board that met.  They had a discussion.  I was

3       instructed by my supervisor, who basically gave me a

4       brief of an outline.  And then I fleshed it out.  But

5       this was what I was asked to do, or assigned to do.

6              Q.   Would it be the FBI's investigative plan?

7              A.   Yes, for the task force specifically.

8              Q.   Now, it says here, it says, "The following

9       is a list of homicides which have been identified by

10      state and/or local law enforcement agencies as being

11      carried out or ordered by the SNM"; is that right?

12             A.   Yes.

13             Q.   Then it indicates, "In each of these cases,

14      incident reports and investigative reports need to be

15      obtained from the relevant correctional and/or

16      investigative agencies"; is that right?

17             A.   Yes, sir.

18             Q.   Part of the investigation was to gather all

19      those reports; is that right?

20             A.   That would have been one of the steps, yes.

21             Q.   And disciplinary reports were to be

22      obtained?

23             A.   Yes.

24             Q.   And to your knowledge they were?  Do you

25      have any knowledge they weren't obtained?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7514

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7515

1      A.   My recollection is basic reports were

2   obtained that had gang members' affiliation, and

3   basic things.  I don't think it ever got to this

4   extent where we acquired all of these records from

5   different state and local agencies.

6      Q.   Also indicates "additional investigative

7   leads or suggestions are set forth for each homicide,

8   where such information has been developed"; is that

9   right?

10      A.   Yes.

11      Q.   And then it also indicates, "additional

12   leads should be developed"?

13      A.   That's correct.

14      Q.   Go to the next page.

15      The bottom of the first paragraph, it says,

16   "New Mexico State Police and the Department of

17   Corrections are investigating, and reports should be

18   obtained from these agencies."  Do you see that?

19      A.   Yes.

20      Q.   And was that investigative plan ever

21   abandoned, that goal?

22      A.   I was basically assigned, in June, to focus

23   on Central and Northern New Mexico specifically.  So

24   if that plan continued to go, it would have been

25   something communicated through a different chain of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7515

1    command to the Southern Task Force.  Because I was

2    specifically told to focus on the Central and

3    Northern.  I do have a document to that effect, sir.

4    So if that's an abandonment, yes, for our task force.

5    But I can't speak for what the Southern Task Force

6    was assigned to do.  I'm sorry.

7         Q.  So you have no knowledge of whether the FBI

8    ever abandoned that particular goal?

9         A.   This document here was written for our task

10   force.  And if you look at the executive committee --

11   I believe I testified earlier that the task forces

12   were independent.  This plan was changed at least to

13   that extent, because I was ordered to focus my SNM

14   investigation, as of June, for the Central and

15   Northern prisons and the activities taking place

16   there.  This --

17        Q.  Agent, let me try to narrow this.  You

18   indicated to the attorney for the government that

19   this was a plan for the whole State of New Mexico; is

20   that right?  Did you say that?

21        A.   I believe I testified earlier that there

22   were two task forces.

23        Q.  I understand.  But the overall plan was for

24   both, for the State of New Mexico; is that correct?

25   Yes or no?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7516

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228

```
 1          A.   This document was derived from a meeting

 2     from my management.

 3          Q.   I'm asking, was this plan for the whole

 4     State of New Mexico:  Yes or no?

 5          A.   I'm not aware of what Southern New Mexico's

 6     plan was, sir.  So for the --

 7          Q.   That's fine.

 8          A.   -- for the Central Task Force this was the

 9     plan.

10          Q.   Let's move on.  Robert Ortega -- Bobby

11     Ortega's murder, what part of the state did it occur

12     in, and why is it in this plan?

13          A.   Because, initially --

14          Q.   Let me break that down, that was two

15     questions.  What part of the state is the Bobby

16     Ortega murder?

17          A.   Hobbs, New Mexico.

18          Q.   Is that the Southern part?

19          A.   Yes, sir.

20          Q.   And if you could go to the next page.  In

21     the plan it says that "Reports need to be obtained

22     from Lea County and the Hobbs Correctional facility,

23     and Aragon needs to be interviewed regarding this

24     homicide.  Calderon also needs to be interviewed"; is

25     that right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            A.   Yes, sir.
 2            Q.   So these were plans -- it's in your plan,
 3      and it involved a murder that happened in the
 4      Southern part of New Mexico:  Yes or no?
 5            A.   Yes.
 6            Q.   And throughout this plan, there are
 7      investigative leads that are indicated for the FBI to
 8      follow up on?
 9            A.   Yes, sir.
10            Q.   Let's go to the Ronnie Baca murder, a
11      little bit below.  In that murder, it even has the
12      FBI -- the plan is the medical records on Chavez and
13      Silva should be checked to verify possible serious
14      illnesses that must have been relevant in that
15      murder; is that right?
16            A.   Yes, sir.
17            Q.   Then the Phillip Silva murder, which is the
18      next one that's listed, there is an indication in
19      your plan that "reports need to be obtained from the
20      BCSO Homicide Unit regarding this homicide."  Do you
21      see that in the last sentence?
22            A.   Yes, sir.
23            Q.   Now, if we could go to page 5 of this
24      report, at the bottom of the page.  You indicate in
25      this plan that "there are a number of valuable
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7518

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7519

```
 1    resources which the Department of Corrections has
 2    agreed to make available for this investigation"; is
 3    that correct?
 4         A.   I'm sorry?
 5         Q.   Where I put the little red dot.  I'm just
 6    learning the dot program here.
 7         A.   Yes, sir.
 8         Q.   So there was -- the plan was to share
 9    resources with the Department of Corrections, at
10    least with regard to drug trafficking?
11         A.   Yes.
12         Q.   Go to the next page.
13              Do you see where it indicates it would
14    appear that, "The easiest and most productive way to
15    work this part of the investigation would be to
16    capitalize on the resources of the Department of
17    Corrections, and work this part of the investigation
18    jointly with them"?
19         A.   Yes, sir.
20         Q.   And that happened?
21         A.   My understanding is that's why Mr. Costales
22    from probation and parole, was assigned to work with
23    us.  And my understanding was probation and parole
24    was a part of the Corrections Department.
25         Q.   So you were working jointly with them?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7519

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 231520

1        A.    Yes, sir.

2        Q.    Then, if we could go to page 8.  Do you see

3    in the second to the last paragraph it says, "It is

4    anticipated, with the concentrated effort, working

5    the SNM through both the prisons, as well as the

6    streets, sufficient information will be obtained

7    regarding a number of prominent SNM members to

8    proceed with a CCE prosecution."  That was the plan?

9        A.    Yes, sir.

10        Q.    Now, there has been some indication that in

11    September of 2001, the bombings derailed at least

12    some of the FBI officers to direct their attention to

13    more important matters?

14        A.    At least me personally.  And I was the

15    primary case agent for the Central Task Force.

16        Q.    Did the task force dissolve?

17        A.    It had not dissolved by the time I left.

18    But, again, I was not there very long.

19        Q.    Members that were part of -- I think you

20    said probation, state parole that had been deputized

21    as federal agents, did they stop working on the SNM

22    investigation?

23        A.    I don't believe they continued to work it

24    heavily without my presence.  There were other gangs

25    also being investigated at that time.  My review of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7520

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 232

1    my investigative file suggests that there was not a

2    lot of additional work done once I left.

3         Q.   You said -- you indicated that -- well, you

4    indicated that you had presented the Matthew Cavalier

5    homicide to the U.S. Attorney's Office for

6    prosecution?

7         A.   Yes.

8         Q.   When did you do that?

9         A.   I don't have a specific date.  But I

10   believe it probably would have been sometime in that

11   2001, 2002 time period.  Because I believe I was off

12   the task force completely by the fall of 2002.

13   Without a specific date, going back 17 years, I'm

14   hesitate to say exactly which date or month, sir.

15   I'm not --

16        Q.   So at least your task force continued to do

17   enough work on that homicide to present a case to the

18   U.S. Attorney's Office?

19        A.   I believe that work was done by myself,

20   sir.

21             MR. CASTLE:  I have no further questions.

22             THE COURT:  Thank you, Mr. Castle.

23             Let me see --

24             MR. BECK:  I just have a quick --

25             THE COURT:  Let me see if any other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7521

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7522

```
 1    defendants have anything?

 2               MR. BURKE:  No, Your Honor.

 3               THE COURT:  Mr. Burke?  Nobody else?

 4               All right.  Mr. Beck.

 5                     CROSS-EXAMINATION

 6    BY MR. BECK:

 7        Q.   And I don't think this is within the scope,

 8    but in lieu of calling him back, I just have, I

 9    think, one question for him.

10               MR. CASTLE:  I have no objection, Your

11    Honor.

12               THE COURT:  All right.

13    BY MR. BECK:

14        Q.   Who were your SNM sources while you were

15    investigating -- your confidential sources while you

16    were investigating the SNM?

17        A.   The one I recall specifically was Toby

18    Romero.  There were several other SNM members who

19    approached me, who I may have interviewed, or had

20    discussions with.  They were never formally converted

21    to be confidential sources.  So I did interview a

22    number of other SNM members.  For various reasons,

23    they were never made official FBI sources.

24        Q.   All right.  Other than Mr. Romero, do you

25    remember any other names, sources that you had in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7522

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7523

```
 1    2001?

 2         A.   I believe he was my only FBI SNM source, as

 3    far as I can recall.

 4              MR. BECK:  Thanks.

 5              THE COURT:  Thank you, Mr. Beck.

 6              Mr. Castle, do you have any further

 7    redirect?

 8              MR. CASTLE:  Yes.

 9                   REDIRECT EXAMINATION

10    BY MR. CASTLE:

11         Q.   Agent, do you recall providing two

12    additional reports concerning sources of information

13    that you developed in 2001, when you came here?

14         A.   They were not sources.  When we term an FBI

15    source, they have to go through a process, and we

16    document them.  Those were individuals that asked to

17    talk to me, who were SNM members.  And it was a

18    one-time interview.  But they were not considered

19    sources.

20         Q.   And their names are redacted so that no one

21    can know about them?

22         A.   They asked -- they spoke to us in

23    confidentiality.  And my understanding is they're not

24    witnesses in this matter.

25         Q.   How many SNM witnesses did you interview
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7523

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7524

```
 1    that you did not classify as a source in the 2001,
 2    2002 time period?  Just an estimate.
 3         A.   It would be a guess at best, sir.
 4         Q.   Multiple?  More than two?  And less than --
 5         A.   Less than probably 20.
 6              Several times, sir, we would meet with
 7    people.  But they would want to exchange -- there was
 8    kind of a back and forth, so we never fully
 9    documented those meetings, because they weren't
10    really willing to cooperate.
11         Q.   And that would be you personally?
12         A.   Me, personally, yes.
13         Q.   Okay.  How many sources were developed by
14    your task force, concerning the SNM, during 2001,
15    2002?
16         A.   I'm not sure if any other FBI operated
17    sources within the SNM, other than the individuals
18    that I either met with, interviewed, or operated.  I
19    was the primary case agent on the SNM, and I don't
20    recall one of the state and local officers running an
21    SNM source.
22         Q.   How about SNM witnesses that are not
23    sources, that were interviewed by other members of
24    the task force?  Would that be a large number?
25         A.   I would -- I honestly don't recall.  But it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7525

```
 1    was not a great number.  I was involved in most of

 2    the investigative steps for the SNM, for that task

 3    force.

 4         Q.   Well, it would be at least enough to

 5    prosecute three officers, Angel Munoz, and at least

 6    to present the Cavalier murder to the U.S. Attorney's

 7    Office?

 8         A.   A lot of that information came from Mr.

 9    Romero, as far as the corrections officers, and some

10    of those other individuals, sir.

11              THE COURT:  Is that it, Mr. Castle?

12              MR. CASTLE:  Yes, Your Honor.

13              THE COURT:  Anybody else?  Let me see if

14    anybody else has got anything following your

15    questions.  Anything further?

16              All right.  Mr. Beck.

17              MR. BECK:  Nothing further.  He may be

18    excused.

19              THE COURT:  All right.  Is it all right if

20    he be excused, Mr. Castle?

21              MR. CASTLE:  Yes, Your Honor.

22              THE COURT:  All right.  Anybody have any

23    objection?  All right.  Mr. Pedersen, you may step

24    down.  And you may be also excused from the

25    proceedings.  Thank you for your testimony.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7525

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 237

```
 1                  THE WITNESS:  Thank you.
 2                  MR. CASTLE:  Your Honor, the next witness
 3      is in regards to the statements issue, and it's a
 4      person we have to get on their way.  It's an
 5      individual by the name of James Garcia.
 6                  THE COURT:  All right.  Do you want to
 7      direct me to the statement again?  Where this is?
 8                  MR. CASTLE:  Yes, Your Honor.  It's motion
 9      number 1909.
10                  MR. BECK:  Your Honor, may we approach?
11                  THE COURT:  All right.
12                  (The following proceedings were held at the
13      bench.)
14                  MR. BECK:  I just want to get a feel for
15      all of us being up here together.
16                  THE COURT:  You miss it?
17                  MS. ARMIJO:  It's different from this side.
18                  THE COURT:  Short-lived.
19                  MR. BECK:  Our understanding is that if
20      this is who we think it is, James Garcia, he is on
21      federal probation, so likely would need an attorney
22      assigned to him, based on what he's going to say.
23                  MR. CASTLE:  Your Honor, we've asked him.
24      He doesn't have an attorney.  He's not requesting an
25      attorney.  We're only going to be asking him about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   statements that he has indicated in the past that

 2   Mr. Troup made at a barbecue some time in the past.

 3   He's not involved in these homicides whatsoever.  We

 4   made inquiry of him about the attorney issue, because

 5   of all the other witnesses.

 6             THE COURT:  Is he in custody?

 7             MR. CASTLE:  No, he's living in the

 8   community.

 9             THE COURT:  Well --

10             MR. CASTLE:  And I would say, if I could,

11   the Government has never required an attorney be

12   present when they questioned him whatsoever.  They

13   never required that.

14             THE COURT:  Well, is there something he's

15   about to say that you think you might prosecute him

16   for, if there is a violation of his probation or

17   otherwise?

18             MR. BECK:  That, I don't know.  I think the

19   possibility is there.  And so I think it would be --

20             THE COURT:  What do you think he's going to

21   say?

22             MR. BECK:  I think he's going to testify

23   about statements he got from the defendants in this

24   room about the Garza and Castillo murders.

25             THE COURT:  While he's been on pretrial

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                        1-800-669-9492



1    release -- while he's been on supervised release?

2    I'll get it right.

3              MR. BECK:  I don't have the documents in

4    front of me, but I would think so, given my knowledge

5    of the case.

6              THE COURT:  So he's hanging around with

7    felons, is that --

8              MR. CASTLE:  This would have been a

9    previous time that he was released -- not this

10   time -- so this would have been a number of years

11   ago, six years ago, at a barbecue.  Not during this

12   time of supervised release whatsoever.  So we're not

13   going to ask him about anything that's happened

14   during his supervised release this time.

15             THE COURT:  What do you think?

16             MR. BECK:  I think, given my knowledge, I

17   would feel more comfortable if he has an attorney.  I

18   don't know that he will be invoking his Fifth in

19   response to those questions.  I understand they're

20   limited, but I think it's --

21             THE COURT:  Is he local?  Is he a Las

22   Cruces person?

23             MS. HARBOUR-VALDEZ:  Albuquerque, Your

24   Honor.

25             MR. CASTLE:  He's from Albuquerque.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7528

```
 1    Judge, I have 13 questions.  And my fear is when a
 2    party tries to get a lawyer for a witness who hasn't
 3    asked for one, has no demonstrated need for one, that
 4    that will act as an impediment for the person to
 5    testify.
 6             THE COURT:  Well, yeah, the Government has
 7    always threatened the witnesses.  That's hard ball.
 8    That's the reason I've got to protect them.
 9             MR. CASTLE:  We're not protecting them from
10    the Government.
11             THE COURT:  Well, we are.
12             MR. CASTLE:  Seems like when the attorneys
13    get appointed, they protect them from the defense.
14    That's what's actually happened here.
15             THE COURT:  Well, I understand the logic.
16             MR. CASTLE:  I don't think there is any
17    Fifth Amendment issue here.  I think it will scare
18    him.  And we're entitled to the evidence.
19             THE COURT:  I've got to protect him.  If
20    the Government thinks they might do something, I've
21    got to protect him.  Let me see if I can rustle up a
22    lawyer for him while he's here.  I'm running on fumes
23    as far as attorneys.  But let me see.
24             MR. CASTLE:  Your Honor, if the Court is
25    going to do that, what I would ask, between now and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7529

 1    when he does testify, that he not be contacted by any

 2    of the parties, either through his attorney or not.

 3    I don't want this as an opportunity for the

 4    Government to try to wrestle a different statement

 5    out of him than what he has been telling us today and

 6    previous days.  I really think -- I hate to try to

 7    impugn anybody's motives here, but the past in this

 8    case has shown they get lawyers for the defendant,

 9    they negotiate -- I'm sorry, for witnesses -- they

10    negotiate a statement in return for a threat of

11    prosecution.  I don't think that's what this is

12    intended for.

13            If the Court has only appointed counsel to

14    advise him, and that's what the continuance -- the

15    time that's necessary to do, just to give him advice,

16    not for the Government to try to negotiate an

17    alternate story to be put on the stand here.

18            THE COURT:  Can you agree to that?

19            MR. BECK:  No, Your Honor.  I mean, I think

20    we want him to testify.  So if he's being appointed

21    an attorney, we'd have to talk to that attorney about

22    securing his testimony.  So I can't agree to that.

23    I'm not going to wrestle a story out of him.

24            THE COURT:  I'm not going to force an

25    attorney on him.  Let me speak to him here.  So why



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242

1    don't you have your paralegal bring him inside the

2    door and let me speak to him.

3            MR. CASTLE:  Mr. Garcia is on the witness

4    list, and has been for some time.  They've never had

5    a need to get him an attorney during that time period

6    whatsoever.  It's only when the defense wants to call

7    him as a witness that they now think he needs to be

8    protected by lawyer.  That speaks of what's going on

9    here.

10           MS. ARMIJO:  Your Honor, this is why he

11   needs an attorney.  This is why we have not debriefed

12   him.  He does need a lawyer.  He is on the witness

13   list.  We are planning on probably getting him an

14   attorney at some point here.  But there is the Sammy

15   Chavez murder; we heard about it in the first trial.

16   It's the one that they said that Billy Cordova was

17   somewhat involved in.  It happened on the streets.

18   Arturo Garcia is charged with that as an Overt Act in

19   the RICO case that we have.  And it's also part of

20   our bad acts that we've listed for him.  He's a

21   suspect in that murder.

22           And so, you know, regardless of his

23   statements or anything else, and depending on what he

24   says -- we don't know what he's going to say.  At

25   times he's cooperating, at times he's not cooperating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7531

```
1    with the Government.  He's a suspect in the murder
2    that Arturo Garcia is directly related to as calling,
3    and so he does need an attorney.  And depending on
4    what he says, we will be able to impeach him
5    potentially with statements that he's given about a
6    murder case that he's a suspect in, so that's why he
7    needs an attorney, Your Honor.
8              MR. BURKE:  Your Honor, I think that's a
9    good point.  And I think the testimony should steer
10   clear of the Sammy Chavez homicide for that reason.
11             MR. BECK:  So do I.  I don't know what he's
12   going to say.
13             THE COURT:  If we take that out, does the
14   Government still think he needs an attorney, if we
15   take the Sammy Chavez homicide out?
16             MR. BECK:  I do, Your Honor.  I think he's
17   a target.  And I think things he says on the stand
18   now could hurt him later on.  And so I can't say -- I
19   mean, I know my obligations, and I can't say that I
20   think it's a good idea that he proceed without a
21   lawyer on these questions.
22             MR. CASTLE:  They're saying he's a target.
23   There wasn't a single person named as a
24   co-conspirator in the homicides.  Who has a list of
25   each one of them?  James Garcia will not --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7532

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 244

```
 1              THE COURT:  But Sammy Chavez.

 2              MS. ARMIJO:  That's in the RICO case.

 3              MR. CASTLE:  Oh, it's the RICO case.

 4              MR. BURKE:  2008 homicide that is mentioned

 5    in the RICO.  We would steer clear of that on the

 6    direct examination.

 7              THE COURT:  I think it's more prudent for

 8    me to get an attorney rather than rush anything.  Let

 9    me have him step inside and see what he wants to do.

10    I can't force an attorney.

11              (The following proceedings were held in

12    open court.)

13              THE COURT:  Mr. Garcia, why don't you come

14    up here to the bench, if you don't mind.  If you'll

15    come up and stand right here, I'm going to talk to

16    you for a second.

17              (The following proceedings were held at the

18    bench.)

19              THE COURT:  How are you doing, Mr. Garcia?

20              WITNESS GARCIA:  All right.

21              THE COURT:  Glad to be here?

22              WITNESS GARCIA:  Not really.

23              THE COURT:  I understand.

24              Here's the situation:  Mr. Castle, who

25    represents Mr. Garcia, is wanting to -- Billy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7533

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245

```
 1   Garcia -- is wanting to question you.  He says he's
 2   got 13 questions, I don't know what the questions
 3   are, but there may be some further examination by the
 4   defense lawyers, and the Government gets a chance to
 5   cross-examine.  So you've got some questions.  I
 6   don't know what the length of them are.  After
 7   listening to some of the statements that the
 8   attorneys have made to me, it's my thought that you
 9   need to have an attorney appointed to advise you
10   about some of these questions, or at least advise you
11   of issues that may come up.  I'm not going to force
12   an attorney on you, but it's my judgment that I ought
13   to get you one before you start testifying.
14              Do you want me to try to get you one?
15              WITNESS GARCIA:  Yeah, if I need one, yeah.
16              THE COURT:  I can't tell you for certain
17   you need one.  But it's my judgment that it would be
18   prudent to get you one before you got on the stand
19   and started testifying.  So do you want me to try to
20   rustle up a lawyer to represent you?
21              WITNESS GARCIA:  Yeah, I guess, sure.  I
22   don't know what this is about.
23              THE COURT:  All right.  Why don't you step
24   out of the courtroom, and I'll try to make a call
25   here and see if we can find an attorney for you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7534

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 246

```
 1              WITNESS GARCIA:  I have a question, sir:  I
 2   was told I was just going to come up here on
 3   testimony that I gave were a lie, you know what I
 4   mean?  I was trying to make a deal with the FBI.
 5              THE COURT:  Why don't you not say too much.
 6   Why don't you not tell me too much.  Why don't you
 7   step outside of the courtroom.  Let me make a call.
 8   I don't know what I can do at the present time.  But
 9   let me see what I can do, okay?  All right.  Why
10   don't you stay up here and make a call and see if I
11   can get --
12              MR. BECK:  And, Your Honor, I would say
13   based on what I heard right there, he definitely
14   should be represented by an attorney.
15              THE COURT:  Well, I'm concerned.
16              MS. ARMIJO:  And, Your Honor, the other
17   thing, I know the defense doesn't want -- but the
18   attorney should have the RICO indictment and overt
19   acts.  And there is a phone call.  That's why he's a
20   suspect, there is a phone call.
21              THE COURT:  The Baca indictment?
22              MS. ARMIJO:  Yes.  And there is a phone
23   call that he -- I'm pretty certain he's a suspect in
24   that incident.  So I think that the attorney should
25   at least be made aware of the allegations.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7535

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 247536

1          MS. HARBOUR-VALDEZ:  And that he met with

2     your agents last year and took his DNA.

3          MS. ARMIJO:  Absolutely.

4          MS. HARBOUR-VALDEZ:  There was a search

5     warrant.  They took his DNA.

6          MR. BURKE:  But that issue is not going to

7     come up in this examination.

8          MS. HARBOUR-VALDEZ:  It has nothing to do

9     with our case.

10          MR. CASTLE:  If counsel advises him on

11     this -- and I think what's likely to happen is that

12     there are going to be questions that may bring up a

13     Fifth Amendment invocation.  Other questions which

14     won't involve what was said at a barbecue eight years

15     ago about something he wasn't involved in is

16     unlikely.

17          THE COURT:  I think you've seen me over the

18     last few months.  I don't allow any sort of blanket

19     assertions.  I take them one at a time.  And I think

20     we've gotten for the most part most of the evidence

21     out.  There has been times where a question was going

22     to clearly incriminate the person.  But let me make a

23     call.  If I can't get something done here, then we

24     may have to move on a little bit.  Let me see if I

25     can get someone.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7536

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 248

```
 1                 (The following proceedings were held in
 2      open court.)
 3                 THE COURT:  His first name is James, right?
 4                 MS. ARMIJO:  Yes, Your Honor.
 5                 (A discussion was held off the record.)
 6                 THE COURT:  All right.  So we'll work on
 7      that.  As you know, I'm on fumes as far as finding
 8      lawyers.  So let me see what I can do.  But we're
 9      working on it at the present time.
10                 All right.  So what do we go to next?
11                 MR. BECK:  Your Honor, the United States
12      has a witness for the motions to dismiss that would
13      be out of the order, but he's been here all day and
14      he'll be short.
15                 MR. CASTLE:  Your Honor, we're going to
16      call a different witness, Dwayne Santistevan.  He was
17      a witness in the first trial.
18                 THE COURT:  Are you comfortable with this?
19                 MR. BECK:  Comfortable?  I know
20      Mr. Santistevan doesn't want to be up here, but he's
21      got a subpoena.
22                 THE COURT:  Are you comfortable with
23      calling --
24                 MR. BECK:  Him going in front of my person,
25      I'm comfortable with that, yes, thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 249

```
 1            MR. CASTLE:  I'm sorry, I talked off the
 2    record with him, and didn't mention it.
 3            THE COURT:  All right.  Mr. Santistevan, if
 4    you'll come up and stand next to the witness box on
 5    my right, your left.  Before you're seated, Ms. Bevel
 6    will swear you in.
 7                    DWAYNE SANTISTEVAN,
 8        after having been first duly sworn under oath,
 9        was questioned and testified as follows:
10                    DIRECT EXAMINATION
11            THE CLERK:  State your name and spell your
12    last name for the record, please.
13            THE WITNESS:  My name is Dwayne
14    Santistevan, S-A-N-T-I-S-T-E-V-A-N.
15            THE COURT:  Mr. Santistevan.  Mr. Castle.
16    BY MR. CASTLE:
17        Q.  Mr. Santistevan, in 2004, in June of 2004,
18    where were you employed?
19        A.  I was employed by the New Mexico
20    Corrections Department at the Central New Mexico
21    Correctional Facility.
22        Q.  Do you recall, prior to 2004, all the way
23    back to 2001, there being a pair of murders that had
24    happened in Southern New Mexico Correctional
25    Facility?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 250    250539

```
1          A.   Mr. Castle, with all due respect to you,
2    Your Honor, the rest of the court, I was a victim.  I
3    testified here last month as a victim, okay?  I'm
4    still a victim.  And I don't feel comfortable
5    answering any questions about any homicide that
6    occurred in 2001.
7               THE COURT:  Mr. Santistevan, you have to
8    answer the question.
9          A.   Ask again, please.
10         Q.   Were you generally aware that two inmates
11   had died on the same day at Southern New Mexico
12   Correctional Facility in 2001?
13         A.   I was aware.
14         Q.   I want to bring you back to 2004.  Do you
15   recall -- well, what was your capacity?  How were you
16   working in 2004?  Were you part of an intelligence
17   unit?
18              THE WITNESS:  Do I have to answer that as
19   well, Your Honor?
20              THE COURT:  You do.
21         A.   I was Security Threat Intelligence Unit
22   Coordinator at the Central New Mexico Correctional
23   Facility.
24         Q.   And in that position at times would you
25   interview inmates who wanted to be confidential
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7539

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 251

```
 1   informants?

 2        A.   Yes.

 3        Q.   Do you recall -- actually, let me show you

 4   a document.  I'll show you what's been admitted as

 5   Exhibit J.  Does that appear to be a memorandum that

 6   you authored dated June 4, 2004?

 7        A.   Yes.

 8        Q.   If we could scroll to page 2.  Do you see

 9   that there is an informant that's labeled "DFS #3"?

10        A.   Yes.

11        Q.   And is "DFS" your initials?

12        A.   Yes.

13        Q.   At that time, was it policy that when you

14   were having an informant, you would use your initials

15   and then you'd give a number to the informant?

16        A.   Yes.

17        Q.   And that was so that their identity

18   wouldn't be disclosed?

19        A.   It was an identifying number, yes.

20        Q.   See the black area next to it that's

21   redacted?

22        A.   Yes.

23        Q.   Would that normally have contained the name

24   of the informant, or what would be in that area that

25   would be blacked out?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7540

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 252

```
1            A.    It would be the informant number.

2            Q.    It would be an informant number in addition

3     to "DFS #3"?

4            A.    Yes.

5            Q.    This particular informant, it looks like

6     you interviewed on June 1st at 9:35 in the morning of

7     2004; is that right?

8            A.    Yes.

9            Q.    Did he provide information to you about the

10    2001 murders at Southern New Mexico Correctional

11    Facility?

12           A.    The only information that I see that this

13    informant provided me with is that Inmate Leroy

14    Lucero was telling inmates that they better get ready

15    because the SNM was about to clean house, and that

16    Billy Garcia had ordered the hits.

17           Q.    Okay.  So let's talk about the two parts of

18    that.  The first part is the CI telling you he

19    "overheard Leroy Lucero telling inmates in the

20    compound they better get ready because the SNM was

21    going to clean house, and the place was going to be

22    locked down"; is that right?

23           A.    That's what it reads, yes.

24           Q.    The second part is that he overheard

25    someone else say that "Billy Garcia had ordered the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7541

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253 7542

```
 1    hits"; is that right?

 2         A.    That's what it reads, yes.

 3         Q.    He's not saying that he talked to Billy

 4    Garcia or anything like that?

 5         A.    Not from what I can read.

 6         Q.    Now, has anyone from the FBI talked to you

 7    about the identity of DFS #3?

 8         A.    No.

 9         Q.    When you gave this report, where would it

10    go?  Did it go to the --

11         A.    If you look at the first page, it went to

12    my then supervisor, Lawrence Jaramillo.

13         Q.    And he was the head of the STIU?

14         A.    Yes.

15         Q.    And to your knowledge, in 2004, was he

16    working on a gang task force with the FBI and other

17    agencies?

18         A.    Not that I can remember.

19         Q.    So when you say that, are you saying you

20    don't think he did, or that you just don't remember

21    one way or the other?

22         A.    I don't remember one way or the other.

23         Q.    Well, when you gave that information to --

24    well, strike that.

25              Would you keep a separate file where you
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7542

1    would write down the actual names that are associated

2    with the informant identifier?

3          A.   What we would do back then -- and I think

4    they still do it -- is we would keep a log, our own

5    individual logs with our CI numbers for future

6    reference.

7               I've since retired from the Corrections

8    Department.  All that documentation, that log, stayed

9    with the Corrections Department.

10         Q.   So you never threw out the logs that you

11   had on informants that you had questioned?

12         A.   No.

13         Q.   And when would you have turned that over?

14         A.   Upon my retirement.

15         Q.   Can you give us a year?

16         A.   February of 2016.

17         Q.   So prior to February of 2016, no agent from

18   the FBI, or individual on behalf of the United States

19   Attorney's Office, contacted you to find out the

20   identities of any informants that you had interviewed

21   that might have information relevant to the 2001

22   murders?

23         A.   I haven't seen this document or talked to

24   anybody else about this document till last week.

25         Q.   Do you recall who DFS #3 is?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7543

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255 of 333

```
 1        A.   I do not.
 2        Q.   So when you gave over your log -- I take it
 3   the log would have the name of the inmate and then a
 4   number; is that right?
 5        A.   It had the number, then the name of the
 6   inmate, and the date the information was received.
 7        Q.   So if we were to look at that and then --
 8   look at the log and this document, we'd be able to
 9   identify who DFS #3 is?
10        A.   Yes.
11        Q.   And the reason you do that is because you
12   don't have to remember years and years later who DFS
13   #3 is?
14        A.   Correct.  And plus, you'd just be
15   compromising the safety of your source.
16        Q.   Would you have been the one that redacted
17   the information next to the DFS #3, or is that some
18   other entity that would have redacted that?
19        A.   That would have been somebody else.
20             MR. CASTLE:  I have no further questions.
21             THE COURT:  Thank you, Mr. Castle.  Any
22   other defendant have any questions of
23   Mr. Santistevan?  All right.  Not hearing any.
24             Mr. Beck, do you have cross-examination of
25   Mr. Santistevan?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BECK:  Yes, Your Honor.

2              THE COURT:  Mr. Beck.

3                        CROSS-EXAMINATION

4    BY MR. BECK:

5         Q.   Good afternoon, Mr. Santistevan.

6         A.   Good afternoon.

7         Q.   I just want to talk to you briefly about

8    this statement from Source DFS #3.  Where it says in

9    the second sentence, "The CI stated to me that three,

10   four days prior to the killing, Smurf Leroy Lucero

11   was telling inmates on the compound that they better

12   get ready because the SNM was going to clean house

13   and the place was going to be locked down."  Does

14   that indicate to you that someone in the SNM, other

15   than Leroy Lucero, was going to clean house?

16        A.   Could have been the whole group.

17        Q.   Do you think if he said Leroy Lucero said

18   "I, Leroy Lucero," was going to clean house that you

19   would have written Leroy Lucero was going to clean

20   house rather than the SNM?

21        A.   Yes.

22        Q.   And then when he says "He further

23   stated" -- this last sentence you went over with Mr.

24   Castle -- "He further stated that he had heard that

25   Billy Garcia had ordered the hits on the two inmates
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 257546

```
 1    that were killed," it doesn't say one way or the

 2    other whether he heard that from Billy Garcia, does

 3    it?

 4         A.   It doesn't.

 5         Q.   And do you know that just days before -- I

 6    know it says three or four days on this -- but do you

 7    know that just days before Castillo and Garza were

 8    killed at the Southern New Mexico Correctional

 9    Facility, Billy Garcia arrived there?  Do you know

10    that?

11         A.   I don't know that.  I don't know when he

12    arrived at the facility.

13              MR. BECK:  All right.  Nothing further,

14    Your Honor.

15              THE COURT:  All right.  Thank you, Mr.

16    Beck.

17              Mr. Castle, do you have redirect?

18              MR. CASTLE:  Yes.

19                    REDIRECT EXAMINATION

20    BY MR. CASTLE:

21         Q.   If this informant had said to you that

22    Billy Garcia had confessed to killing the two people,

23    would you have written that in your report?

24         A.   All the information that that informant

25    gave me at the time was what I put on that report.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7546

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258

1  And had that informant told me that, yes, I would

2  have put it on the report.

3       Q.   And I take it, then, you would have

4  probably asked some follow-up questions from that

5  informant:  Where did he confess to you, what the

6  details of the confession were, and things of that

7  nature?

8       A.   I would have gone deeper into the

9  interview, yes.

10      Q.   And you would have put that in your report?

11      A.   Yes.

12           MR. CASTLE:  Nothing further.

13           THE COURT:  Thank you, Mr. Castle.

14           Anybody else have redirect of

15  Mr. Santistevan?  All right.  Mr. Granberg.

16                    REDIRECT EXAMINATION

17  BY MR. GRANBERG:

18      Q.   Mr. Santistevan, had Mr. Lucero stated to

19  you that Mr. Chavez was in any way related to the

20  murder, you would have put that in the report;

21  correct?

22      A.   I'm sorry?

23      Q.   If Mr. Lucero had stated to you that

24  Christopher Chavez was in any way related to the

25  murders in 2001, of Rolando Garza, you would have put

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7547

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 259

```
 1    that in your report?

 2         A.   Yes.

 3         Q.   And it wasn't there?

 4         A.   No, sir.

 5              MR. GRANBERG:  Pass the witness.

 6              THE COURT:  Thank you, Mr. Granberg.  Any

 7    other defendant have redirect?

 8              All right.  Mr. Santistevan, you may step

 9    down.  Is there any reason that Mr. Santistevan

10    cannot be excused?  Mr. Castle?

11              MR. CASTLE:  No, Your Honor.

12              THE COURT:  Anyone else from the

13    defendants?  Mr. Beck?

14              MR. BECK:  No, Your Honor.

15              THE COURT:  All right.  You're excused from

16    the proceedings.  Thank you for your testimony.

17              All right.  Do you want to get, Mr. Beck,

18    your witness on this afternoon?

19              MR. BECK:  Yeah, if that's all right.  The

20    United States would call James Pedraza.

21              THE COURT:  Would you give me that name

22    again, Mr. Beck.

23              MR. BECK:  Sure.  James Pedraza.

24              THE COURT:  Mr. Pedraza, if you'll come up

25    and stand next to the witness box on my right, your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7548

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 260

```
 1   left.  Before you're seated, my courtroom deputy, Ms.
 2   Bevel, will swear you in.
 3                       JAMES PEDRAZA,
 4        after having been first duly sworn under oath,
 5        was questioned and testified as follows:
 6                     DIRECT EXAMINATION
 7             THE CLERK:  Please be seated.  Would you
 8   state your name and spell your last name for the
 9   record?
10             THE WITNESS:  James Pedraza, P-E-D-R-A-Z-A.
11             THE COURT:  Mr. Pedraza.  Mr. Beck.
12   BY MR. BECK:
13        Q.   Mr. Pedraza, how are you employed?
14        A.   I'm a correctional officer for the State of
15   New Mexico.
16        Q.   And where are you employed as a
17   correctional officer?
18        A.   Here at Southern New Mexico, outside of
19   Cruces.
20        Q.   Is that the Southern New Mexico
21   Correctional Facility?
22        A.   Yes.
23        Q.   In March of 2001, were you a correctional
24   officer at the Southern New Mexico Correctional
25   Facility?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7549


1           THE COURT:  Mr. Beck, before you start,

2    could you tell me what his testimony -- which motion

3    it relates to?

4           MR. BECK:  Sorry, Your Honor.  Yes.  So

5    this is in relation to both Mr. Garcia's and Mr. --

6           THE COURT:  The motions to dismiss?

7           MR. BECK:  Yes.

8           THE COURT:  Sorry, Mr. Beck.

9           MR. BECK:  No, not at all.

10      Q.   So in March of 2001, were you employed at

11    SNMCF as a correctional officer?

12      A.   Yes, I was.

13      Q.   Were you working on the night of March 25

14    into March 26 of 2001?

15      A.   Yes, I was.

16      Q.   And where were you working, if you

17    remember?

18      A.   At that time, the housing unit that I was

19    working in was designated as Paul 1.

20      Q.   And what were you doing that evening in the

21    housing unit of Paul 1?

22      A.   I was the control officer.

23      Q.   And what time were you working as control

24    officer?

25      A.   From 10:00 p.m. to 6:00 a.m.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7550

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 262

```
 1        Q.   And did you learn at some point the next
 2   day -- the next day, on March 26 of 2001, after you
 3   left work, were you called back in?
 4        A.   Yes.  Obviously, I was working graveyard.
 5   I didn't have to work overtime, so I got off at 6:00
 6   a.m., and got home usually by 7:00 in the morning.
 7   I'd go to bed.  So I received a call probably between
 8   9:30, 9:45 from a sergeant at the facility stating
 9   that the Warden wanted me to come in in full uniform.
10   He didn't say why.  He just said to come in.
11        Q.   What happened when you returned to the
12   Southern New Mexico Correctional Facility on March
13   26?
14        A.   I was at the lobby, and I was trying to
15   find out what was going on.  And some of the staff
16   was saying that some inmates had been shanked.
17        Q.   Did you learn that an inmate in the Paul 1
18   unit had been shanked, stabbed, and killed?
19        A.   I eventually found out that he was
20   strangled.
21        Q.   Strangled.  Oh, thank you.  You're right
22   about that.
23             And I think you said the overnight, during
24   the graveyard, you had been the control officer?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7551

```
 1        Q.   What are your duties as the control
 2   officer?
 3        A.   I operate the controls, to let people in
 4   and out, the cell doors.  I keep a log of the
 5   activities in the unit I.  Keep an eye on my rover.
 6   The rover is the officer that actually does the round
 7   in the pods.
 8        Q.   I want to talk to you about the log in your
 9   unit.  Is that also referred to by some as the daily
10   log?
11        A.   Yes.
12        Q.   What sorts of activities do you log in the
13   daily log?
14        A.   Major activities, such as count time, when
15   they're released to go to breakfast, when they go to
16   recreation, education.  Whenever an inmate goes into
17   that unit assigned, I'll log it down.  Or whenever an
18   inmate leaves, I make note of that.
19        Q.   It sounds like you do not log -- and tell
20   me if I'm wrong.  Let me ask the question this way,
21   and it may be easier:  Do you log every movement an
22   inmate makes in Paul 1 unit in your daily logs?
23        A.   No.
24        Q.   Do you log in your daily logs if inmates
25   are playing cards at the table in the main area?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    No.

 2        Q.    Do you log in your daily logs if one inmate

 3   goes into another inmate's cell or room?

 4        A.    No.

 5        Q.    On March 26, did you go back and check --

 6   or sometime close in time to March 26, did you go

 7   back and check the daily logs from the night of March

 8   25 in Paul 1 unit, if you remember?

 9        A.    What do you mean if I checked?

10        Q.    At some point did you go back and check

11   your daily logs for any irregular activity that you

12   had noted inside the cell, inside the pod, if you

13   remember?

14        A.    I don't remember any unusual activity.  The

15   only thing that I remember during that weekend was

16   that the mood of the facility was very odd, the way

17   the inmates were behaving.  They weren't social, the

18   way they normally would be.  They were like more

19   serious, not as social.

20             MR. BECK:  No further questions, Your

21   Honor.

22             THE COURT:  All right.  Thank you, Mr.

23   Beck.  Any defendant have cross-examination of Mr.

24   Pedraza?  Mr. Benjamin?

25             MR. BENJAMIN:  Yes, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1                    CROSS-EXAMINATION
 2   BY MR. BENJAMIN:
 3        Q.   The daily logs would show an inmate leaving
 4   the pod to go to work; correct?
 5        A.   Correct.
 6        Q.   Okay.  And that would show his name and,
 7   essentially, the time that he left?
 8        A.   Yes.
 9        Q.   And the time that he came back?
10        A.   Yes.
11        Q.   Okay.  And to the extent that -- have you
12   ever worked in the kitchen area or been familiar with
13   the kitchen area?
14        A.   A few times.
15        Q.   Okay.  Are you aware if they have the same
16   type of log, where they log somebody coming into the
17   kitchen and then, essentially, leaving work at the
18   kitchen?
19        A.   I believe so.
20             MR. BENJAMIN:  Okay.  Pass the witness,
21   Your Honor.
22             THE COURT:  Thank you, Mr. Benjamin.  Any
23   other defendant?  Mr. Castle?
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7554

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267555

```
 1                       CROSS-EXAMINATION
 2   BY MR. CASTLE:
 3       Q.   Did you get to know the individual who was
 4   murdered in that pod when you were working there?
 5       A.   You're talking about Castillo?
 6       Q.   Yes.
 7       A.   I vaguely remember him.
 8       Q.   Was he acting nervous in those two days?
 9   Was he one of the people you saw being extremely
10   quiet, et cetera?
11       A.   I don't recall anything unusual.  But like
12   I said earlier, the mood within the whole compound,
13   the facility, was just very different.  Normally,
14   when they'd be released to chow, they'd be talking to
15   each other, waving, or whatnot.  And that weekend
16   everybody was like very serious.
17       Q.   Did you see anyone that Mr. Castillo had
18   kind of a problem with, or at least you observed
19   problems with?
20       A.   Not that I recall.
21       Q.   Did you know an inmate by the name of Leroy
22   Lucero?
23       A.   I don't remember.
24       Q.   Was that pod that you were working in, was
25   that an SNM pod?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7555

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 267

1        A.    At that time, the SNMers were scattered

2    throughout the facility.  They were within general

3    population, so they were everywhere at that time.

4        Q.    What does it mean to you, as a corrections

5    officer, when the inmates are unusually quiet and,

6    you know, that mood that you saw there?  What does

7    that mean to you?

8        A.    For me personally?

9        Q.    Yes.

10        A.    I felt that something was going to happen,

11    but I didn't know what or when.

12        Q.    As a corrections officer, I take it you get

13    in tune with the moods of the inmates, and where it

14    might cause danger to either yourself or the inmates?

15        A.    Yes.

16        Q.    So that kind of atmosphere was going on in

17    the two days before his murder?

18        A.    Yes.

19        Q.    Do you note on your logs when an unusual

20    number of inmates gather in a particular cell, or

21    what you would consider an unusual number?

22        A.    By policy they're not allowed to congregate

23    in the cell.  So if we see them starting to visit,

24    we'd give them a directive right away to get out.

25    But we would make a note of it.

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7556

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268

```
 1        Q.   So you're not even allowed to have a single
 2   inmate that doesn't belong in your cell in your cell?
 3        A.   No.
 4        Q.   What is pod hopping?  Are you familiar with
 5   that term?
 6        A.   I haven't heard it before.
 7        Q.   Is it against regulations for an inmate to
 8   go to a pod in which he doesn't live, unless he's a
 9   porter or something like that?
10        A.   Even if you're a porter, if they're not
11   assigned to that pod, they're not allowed in there.
12        Q.   Does that happen, though, where someone
13   comes in to a different pod that they don't belong
14   in?
15        A.   It depends on the officer in charge.  Me,
16   personally, I wouldn't allow it; I wouldn't allow
17   them to visit another pod.
18        Q.   So in the day before the murders, did you
19   see any unusual number of people going into Mr.
20   Castillo's cell?
21        A.   Not that I recall.
22        Q.   And if a number of inmates would have
23   entered his cell within a few seconds, is that when
24   you would intercede and tell them to disperse?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7557

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 269 7558

```
 1        Q.   And that's policy?

 2        A.   Yes.

 3             MR. CASTLE:  I have no other questions.

 4             THE COURT:  Thank you, Mr. Castle.  Any

 5   other defendants have cross-examination of Mr.

 6   Pedraza?

 7             All right.  Mr. Beck, do you have redirect

 8   of Mr. Pedraza?

 9             MR. BECK:  Nothing further.

10             THE COURT:  All right.  Is there any reason

11   that Mr. Pedraza cannot be excused from the

12   proceedings?  Mr. Beck?

13             MR. BECK:  Not from the Government, Your

14   Honor.

15             THE COURT:  Any other defendant have any

16   objection to excusing him?  Not seeing or hearing

17   any, Mr. Pedraza, you may step down.  Thank you for

18   your testimony.  You are excused from the

19   proceedings.

20             THE WITNESS:  Thank you.

21             THE COURT:  All right.  We got -- I may

22   have an attorney coming over, so if somebody wants to

23   put a little packet together -- I'm going to take a

24   break here pretty quick -- if somebody wants to put a

25   packet together so that Mr. Garcia's counsel -- I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7558

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 270

```
 1    can't promise it, but can look at it, and sort of be

 2    briefed on what the issues are.

 3              MS. HARBOUR-VALDEZ:  May I speak to the

 4    Government about that?

 5              THE COURT:  Okay.  What do we have next?

 6    If we can squeeze Mr. Garcia in this afternoon, but

 7    it will be after the break -- do you have something,

 8    Mr. Benjamin, you were going to address?

 9              MR. BENJAMIN:  No, Your Honor.

10              THE COURT:  Okay.  Does the Government have

11    anything else it needs to squeeze in this afternoon?

12    Do we go back to arguing, or where do we go?

13              MR. BECK:  We don't have any additional

14    evidence that I can think of for this motion.

15              THE COURT:  How about you, Mr. Castle?

16              MR. CASTLE:  We have a witness, Warden

17    Tafoya, and Corrections Officer Juan Barela.

18              THE COURT:  Okay.  Tafoya is a what, a who?

19              MR. CASTLE:  Well, they're both witnesses

20    for the motion to dismiss.

21              THE COURT:  Are they both corrections

22    officers?

23              MR. CASTLE:  One was a former warden and

24    one was a corrections officer.

25              THE COURT:  All right.  So do you want to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 271

```
 1  call one of them?  We can go ahead and take a break,
 2  and call one of them right after the break.  We'll
 3  see if we get an attorney over here.  I had something
 4  else to tell you.  I can't think what it is.  Why
 5  don't we take our break and come back in about 15
 6  minutes, and we'll see where we are.
 7              (The Court stood in recess.)
 8              THE COURT:  Let's go on the record.  I've
 9  got Cody Rogers walking over.  She's in jeans, but
10  I've sanctioned the attire, so she'll be here in a
11  little bit.  And so I don't know if I would recognize
12  Ms. Rogers.  So when she walks in, if somebody does,
13  if y'all give her whatever packet or information you
14  have.
15              Shall we take up one of your next
16  witnesses, Mr. Castle, while we're waiting for
17  Ms. Rogers to get over here?
18              MR. CASTLE:  Yes.  It would be Lawrence
19  Tafoya.
20              THE COURT:  Mr. Tafoya, if you'll come up
21  and stand next to the witness box on my right, your
22  left.  Before you're seated, Ms. Bevel, my courtroom
23  deputy, will swear you in.
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7560

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 272

```
 1                        LAWRENCE TAFOYA,
 2          after having been first duly sworn under oath,
 3          was questioned and testified as follows:
 4                        DIRECT EXAMINATION
 5              THE CLERK:  Please be seated.  Would you
 6     state your name and spell your last name for the
 7     record.
 8              THE WITNESS:  My name is Lawrence Tafoya.
 9     T-A-F-O-Y-A.
10              THE COURT:  Mr. Tafoya.  Mr. Castle.
11     BY MR. CASTLE:
12          Q.  Mr. Tafoya, how were you employed in 2001?
13          A.  I was the Warden at Southern New Mexico
14     Correctional Facility.
15          Q.  On March 26 of 2001, were there two murders
16     in that facility?
17          A.  There were.
18          Q.  In the days after those murders, did you
19     and others attempt to try to figure out what had
20     happened?
21          A.  Would you repeat that, please?
22          Q.  Did you and others that worked at that
23     facility try to figure out what had happened?
24          A.  Yes, with the assistance of other law
25     enforcement agencies.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7561

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 273

1        Q.   During that time, did you personally

2   interview inmates regarding what happened?

3        A.   I believe I did interview at least a couple

4   of them.

5        Q.   And if I showed you a report that you

6   authored, would that refresh your memory as to how

7   many you may have interviewed?

8        A.   Yes.

9        Q.   I show you what's been admitted as Exhibit

10  E.  It's up on the monitor there.  Is that a

11  report -- at least -- that's not your report, but it

12  indicates, the first paragraph, Memorandum from STG

13  to Warden Tafoya, titled "Confidential sources on the

14  murders of inmates Frank Castillo and Rolando Garza."

15  Do you see that?

16       A.   I do.

17       Q.   If we scroll down, is this the kind of --

18  is this how you would identify inmates by a number,

19  rather than by their name, if they're trying to give

20  you confidential information?

21       A.   That's correct, yes.

22       Q.   And would you number your sources 1, 2, 3,

23  et cetera?

24       A.   Pretty close, yes.

25       Q.   So does this look like a memorandum of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   people that you may have -- or inmates you may have

2   spoken to?

3       A.   I don't know if I spoke to these

4   individuals myself, no.

5       Q.   Do you recall doing a memorandum -- I'm

6   sorry, do you recall interviewing -- do you recall

7   anything about the interviews you conducted?

8       A.   Not -- no, not very much.  It's been a

9   while, so --

10      Q.   I want to turn your attention to page 3 of

11  this document.  Well, actually, let me stay on this

12  page for just a second.  I apologize.  The memorandum

13  that -- this indicates memorandum from STG to you,

14  entitled "Confidential sources," et cetera, what

15  would you have done with that memorandum?

16      A.   I would have reviewed it and forwarded it

17  up the chain of command.

18      Q.   And who would be up the chain of command?

19      A.   That would be the Director of Adult

20  Facilities, John Shanks, and probably Mr. Jerry

21  Tafoya, and probably Mr. Elmer Bustos.

22      Q.   Let's go now to page 3 of the exhibit.  Do

23  you recall whether or not you interviewed an

24  individual identified as Source No. 13 that said he

25  overheard inmate Eugene Martinez talking with inmates

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7563

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275

```
 1   Leroy Lucero and Jesse Ibarra about carrying out
 2   assaults on inmates considered to be rats?
 3        A.   I do not recall.  It could have -- I could
 4   have conducted that interview.  I don't recall.
 5        Q.   Okay.  So that could have been conducted by
 6   you or someone else?
 7        A.   Yes.
 8        Q.   Do you recall inmate Eugene Martinez?
 9        A.   I -- vaguely, yes, I do.
10        Q.   And what do you recall about him?  Was he
11   an inmate there at that time?
12        A.   I would believe that he was an inmate at
13   the time, yeah, there at that facility.
14        Q.   As part of your job as the Warden, do you
15   try to keep a feel on the pulse of the institution
16   that you're the Warden of?
17        A.   Yes.
18        Q.   And does that involve knowing about prison
19   gangs that are operating within your facility?
20        A.   Yes, sir.
21        Q.   In 2001, was the Southern New Mexico
22   Correctional Facility an SNM prison?
23        A.   We had a large population of SNM members,
24   yes.
25        Q.   Would part of your duties be to get a feel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7564

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 276

```
 1    for who may be the leaders of the SNM Gang at your
 2    facility?
 3        A.   To my knowledge, yes.  There was also
 4    documentation that would follow the inmates as they
 5    would be transferred from facility to facility.
 6        Q.   Prior to the homicides in 2001, was there
 7    an inmate by the name of Lino Giron at your facility?
 8        A.   Yeah, I believe so, yes.
 9        Q.   And was he identified as the leader of the
10    SNM in your facility, at least through the early
11    months of 2001?
12        A.   If I recall correctly, he was one of the
13    leaders of the SNM.
14        Q.   And when he left, do you recall that
15    another individual became the leader at the facility
16    by the name of Leroy Lucero?
17        A.   I do not recall if -- I don't know if that
18    was the way it happened, or Leroy Lucero was the -- a
19    leader there, or what.
20        Q.   Do you recall Leroy Lucero?
21        A.   I do.
22        Q.   And was he an SNM member?
23        A.   Yes, he was.
24        Q.   Was he a high ranking SNM member, to your
25    knowledge?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7565

 1          A.   To my knowledge, yes, he was.

 2          Q.   And when -- in your memory, when you were

 3     investigating the murders, was Leroy Lucero a suspect

 4     in the murders of these two individuals?

 5          A.   I do not recall.  I don't think he was.

 6          Q.   How about Jesse Ibarra?

 7          A.   I do not recall.

 8          Q.   So with respect to this document, you can't

 9     endorse it or reject it as being reflective of your

10     interviews?

11          A.   I think these interviews, according to this

12     document, were conducted by the STG Unit.

13          Q.   Okay.  So that wouldn't be your interview

14     then?

15          A.   No, I don't think so.

16          Q.   Who would have conducted this interview?

17     If you could take a look at maybe page 1 of the

18     exhibit again.  Would this be Cheryl Lackey, perhaps?

19          A.   It would be someone within that unit.

20               MR. CASTLE:  Okay.  I have no other

21     questions for this witness.

22               THE COURT:  Thank you, Mr. Castle.  Any of

23     the other defendants have direct examination of

24     Mr. Tafoya?

25               MR. SOLIS:  I may have, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7566

```
 1              THE COURT:  Mr. Solis.
 2              MR. SOLIS:  If I can have a look at the
 3     exhibit first.  May I approach?
 4              THE COURT:  You may.
 5              MR. SOLIS:  One moment, Your Honor.
 6              THE COURT:  You may.
 7              MR. SOLIS:  I have no questions, Your
 8     Honor.
 9              THE COURT:  Thank you, Mr. Solis.  Any
10     other defendant have any direct of Mr. Tafoya?
11              All right.  Mr. Beck, do you have
12     cross-examination of Mr. Tafoya?
13              MR. BECK:  I do, Your Honor.
14              THE COURT:  Mr. Beck.
15                        CROSS-EXAMINATION
16     BY MR. BECK:
17         Q.   Good afternoon, Mr. Tafoya.
18         A.   Good afternoon.
19         Q.   On March 25 and 26 of 2001, were there
20     cameras inside the pods filming the activities, what
21     was going on inside the pods?
22         A.   I do not believe that there were cameras in
23     the pods.
24         Q.   And why is that?
25         A.   I don't know if we had them back then.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7567

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

```
 1   can't recall.  Or if they were not operational.
 2        Q.   Okay.  You don't remember reviewing any
 3   videotapes of what I would call security cameras in
 4   the pods; is that fair to say?
 5        A.   That's fair to say.
 6        Q.   And I think you said with Mr. Castle, did
 7   you investigate what happened after the Garza and
 8   Castillo murders?
 9        A.   Yes.
10        Q.   And if you were investigating that, if
11   there was video inside the pods at the time, is that
12   something that would have been important to your
13   investigation?
14        A.   Absolutely, yes.
15        Q.   So is that why, after thinking back on the
16   investigation, and not finding or reviewing any
17   videos, is that why you think that there were no
18   videos in 2001?
19        A.   I don't recall reviewing any videotapes.
20        Q.   And is that something you would have done
21   in that investigation?
22        A.   Yes, it would have been part of it,
23   absolutely.
24        Q.   After the Garza and Castillo murder, when
25   you were investigating those, do you recall seeing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7568

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 280 7569

```
 1    pictures of the inside of one of the inmate's cells?

 2        A.   Yes.

 3        Q.   And I think there is some evidence that

 4    there may have been a video.  Do you remember whether

 5    you saw pictures or a video, or both?

 6        A.   I think there were still photos.

 7        Q.   They were still photos.  So you don't

 8    remember seeing video of the inside of the pods at

 9    that time?

10        A.   I don't recall seeing a video.

11             MR. BECK:  And, Your Honor, I'm going to

12    mark for identification purposes Government's

13    Exhibit -- I think we're on 1, right, Ms. Bevel?

14             THE COURT:  For the motion to dismiss, this

15    is your first one?

16             MR. BECK:  I think so, Your Honor.  And it

17    is -- it's a report that starts at Bates No. 716, and

18    I think it was probably the fifth attachment to

19    Mr. Garcia's motion.  And it's a memorandum on the

20    murders of inmates Orlando Garza, 46367, and Frank

21    Castillo, 35958.

22             May I approach the witness, Your Honor?

23             THE COURT:  You may.

24        Q.   I've handed you what I've marked for

25    identification purposes as Government's Exhibit 1.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7569

1    Do you recognize that as a New Mexico Corrections

2    Department memorandum?

3         A.   I do.

4         Q.   And who is that memorandum addressed to?

5         A.   It's addressed to myself.

6              MR. BECK:  Your Honor, at this time, I'll

7    move Government's Exhibit 1 into evidence for the

8    purposes of this motion.

9              THE COURT:  Any objection from the

10   defendant?  Mr. Castle?

11             MR. CASTLE:  No, Your Honor.

12             THE COURT:  All right.  Not seeing or

13   hearing any objection, Government's Exhibit 1 will be

14   admitted into evidence.

15        Q.   What happened to the phone systems after

16   the Garza and Castillo murder, if you remember?

17        A.   They would routinely -- in the event of any

18   type of major incident, they would routinely be

19   turned off.

20        Q.   And if we turn to page 2 of Government's

21   Exhibit 1, I'll direct your attention to what I think

22   is the first full sentence there.  And it starts

23   with --

24        A.   I see that.

25        Q.   So does that indicate to you that at the

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7570

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 282

```
 1    time of the murder, the murders, all inmate telephone

 2    lines were turned off, to include the Paul Oliver

 3    unit?

 4         A.    That's correct.

 5         Q.    Then I'm going to turn your attention to

 6    page 10 of Government's Exhibit 1.  Do you remember

 7    that these murders happened sometime in the night or

 8    morning of March 25, March 26 of 2001?

 9         A.    As I recall, yes, sir.

10         Q.    So on page 6 of -- excuse me, on page 10 of

11    Government's Exhibit 1, do you see up there where it

12    has a report from April 6 of 2001?

13         A.    I do.

14         Q.    And I'm pointing to what looks like sort of

15    the third heading there.  Do you see that, at least

16    at this point, the telephones at Paul Oliver unit

17    were still not working properly?

18         A.    Yes, I do.

19         Q.    Do you have any reason to disagree that the

20    phones weren't work properly?

21         A.    No, I do not.

22         Q.    And do you recall whether, after the Garza

23    and Castillo murders, the Security Threat Group and

24    other corrections officers were monitoring the

25    inmates' mail?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7571

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 283

```
 1        A.   To my knowledge, that would be the

 2   procedure, yes.

 3        Q.   And on page 12 of Government's Exhibit 1,

 4   do you see where it indicates that, as of April 12,

 5   2001, mail scans were being continued by STG of

 6   inmate outgoing mail?

 7        A.   Yes.

 8        Q.   Is that consistent with your memory of what

 9   happened after the Garza and Castillo murders?

10        A.   Yes, sir.

11             MR. BECK:  May I have a moment, Your Honor?

12             THE COURT:  You may.

13             MR. BECK:  Nothing further, Your Honor.

14             THE COURT:  Thank you, Mr. Beck.

15             Mr. Castle, do you have redirect of

16   Mr. Tafoya?

17             MR. CASTLE:  Yes.

18                     RECROSS-EXAMINATION

19   BY MR. CASTLE:

20        Q.   Mr. Tafoya, there were some questions about

21   video of the pods.

22        A.   Yes.

23        Q.   How certain are you that there were no

24   video cameras in the pods?

25        A.   Pardon me?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   How certain are you that there were not?

2    A.   I don't know if there were video cameras in

3    the pods.  But I -- I don't know -- we didn't have

4    any video recordings of the pods, I could say that

5    much.

6    Q.   So none were collected as evidence, is that

7    what you're indicating?

8    A.   I'm indicating that I don't know if there

9    was any video of the pods at all.

10    Q.   Okay.  So you don't know one way or the

11   other whether there were; but you never saw any?

12    A.   I never saw any.  I don't believe there

13   were.

14    Q.   Now, how about of the yard and other common

15   areas?

16    A.   I can't say for sure that there were video

17   recordings of the yard.

18    Q.   Do you recall, in thinking back to 2001,

19   ever looking at video either of the yard, or anywhere

20   else, that was a piece of evidence that you thought

21   showed a part of the planning or the commission of

22   the murders?

23    A.   I can't recall, no.

24    Q.   Do you recall ever interviewing an inmate

25   and telling them that you had them on video with



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7573

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7574

1   another individual that you suspected of the murder?

2       A.   No, I can't recall that.

3       Q.   Is that something you'd remember?

4       A.   I would think so.  Again, it's been 17

5   years, so --

6       Q.   If you were to have done an interview like

7   that, where you sat down with an inmate and said:

8   Here, I have video.  We know you participated in the

9   planning or the commission of the murder, would you

10  write a memo about that and memorialize that

11  interview?

12      A.   I would think I would, yes.

13      Q.   Did you do interviews with an individual by

14  the name of Billy Garcia?

15      A.   I don't recall doing an interview with

16  Billy Garcia.

17      Q.   Do you recall doing an interview with any

18  of the individuals here?

19      A.   I don't remember any of these individuals

20  here.  Or at least a couple of them, I don't

21  recognize them.

22      Q.   How about Leroy Lucero?

23      A.   No.

24      Q.   How about Leonard Lujan?

25      A.   I don't recall.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7574

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7575

 1          Q.   Let's go through that report, if I could,

 2     the Government's exhibit.  I'm going to represent

 3     that what's up on your screen is the same report that

 4     was admitted as Government's Exhibit 1.

 5          A.   It looks like it.

 6          Q.   If we could go to page 2.  I want you to

 7     count down five lines.

 8          A.   Okay.

 9          Q.   The sentence that starts with, "The day

10     shift."  In this report, does it indicate, "The day

11     shift supervisors secured the daily logs of housing

12     units O1 and P1, as well as the rest of the

13     facilities' logs"?

14          A.   I see that.

15          Q.   Is that standard operating procedure in a

16     matter such as this?

17          A.   It is.

18          Q.   Why?

19          A.   To determine if any irregularities were

20     mentioned in those logs.

21          Q.   So unusual activity?

22          A.   Right.

23          Q.   And I notice that it didn't confine it to

24     the two pods where the murders happened, it went to

25     the whole facility itself?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7575

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7576

```
 1        A.    Right.

 2        Q.    Is that because in the investigation it may

 3   turn out that important events happened somewhere

 4   else other than the pods where the crimes occurred?

 5        A.    Normally, it was a procedure to gather logs

 6   from the entire facility every 24-hour shift.

 7        Q.    And where would those logs have gone?

 8        A.    If they were -- if there was significant

 9   information in those logs pertaining to incidents, it

10   would be turned over as evidence.

11        Q.    If we could go to the bottom of that page.

12   The second to the last line indicates, "Inmate Martin

13   Chacon is discovered with a black shoelace inside a

14   toilet paper roll.  The shoelace was fashioned into a

15   noose."  And then if we could go on to the next page.

16   "This was also taken into evidence by the New Mexico

17   State Police."

18             Why was that important?  Let me ask you a

19   more pointed question.  Was that important because

20   these were strangulation deaths?

21        A.    Most likely, yes.  It was important anyway,

22   because that's contraband.

23        Q.    But contraband is not normally handed over

24   to the State Police if it isn't involved in a crime

25   or possibly involved in a crime?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7576

```
 1        A.    Correct.

 2        Q.    In regard to the mail scans, why are those

 3   conducted?

 4        A.    To gather information on -- information

 5   that may be a threat to the security of the

 6   institution.

 7        Q.    And also, perhaps, if it was evidence that

 8   related to the murders that had happened, would that

 9   be correct?

10        A.    That would be correct.

11        Q.    And are the -- who does the mail scans?

12        A.    It depends on who was assigned to that task

13   at the time.

14        Q.    Would it be someone from the STIU, or

15   whatever that -- STG back then?

16        A.    It could have been.  We had other officers,

17   other staff doing mail scans as well.

18        Q.    And are they instructed -- what are they

19   instructed to do?

20        A.    Normally, turn it over as evidence.  If

21   they found anything that was relevant, to take it up

22   the chain of command.

23        Q.    Now, is mail normally scanned anyway, even

24   if there is not a murder?

25        A.    It is.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   So would this have been maybe a little
 2   tighter scan of the mail than would have occurred
 3   normally?
 4        A.   I would anticipate that being the case.
 5        Q.   And so any mail that was even remotely
 6   suspicious would be copied or collected and sent
 7   along to somewhere else?
 8        A.   I would imagine that would be the case.
 9        Q.   Would that be turned over to the State
10   Police, if it had to do with the murders?
11        A.   I would imagine so.
12             MR. CASTLE:  I don't have any other
13   questions.
14             THE COURT:  All right.  Thank you, Mr.
15   Castle.  Anyone else on the defense side have any
16   questions?
17             MR. SOLIS:  I have some questions, Your
18   Honor.
19             THE COURT:  All right.  Mr. Solis.
20                  RECROSS-EXAMINATION
21   BY MR. SOLIS:
22        Q.   Mr. Tafoya, I'm going to direct your
23   attention to Defendant's Exhibit I.  Think we'll
24   bring it up here.  Do you see that?
25        A.   I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7578

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 290

1    Q.   And you're the author of that memorandum?

2    A.   I am.

3    Q.   Back on April the 12th of 2001, addressed

4  to Mr. Shanks and Mr. Jerry Tafoya -- is he any

5  relation to you at all?

6    A.   No.

7    Q.   All right.  So this is just a few days

8  after the incident, the murders at the facility;

9  correct?

10   A.   Correct.

11   Q.   April the 12th; these events occurred on

12  March 26?

13   A.   Yes.

14   Q.   And it seems like you, yourself, conducted

15  an investigation, and then you mentioned that you

16  conducted several interviews of inmates or with

17  inmates; is that right?

18   A.   Correct.

19   Q.   And you note there at the -- towards the

20  bottom of that memorandum, on that first page, you

21  note several inmates as assailants, according to a

22  Source 1A.  Do you see that?

23   A.   I do.

24   Q.   And do you see anywhere there Christopher

25  Chavez mentioned?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 291 7580

```
 1          A.    Not on this memorandum, no.

 2          Q.    Did you, yourself, conduct an interview

 3    with Mr. Chavez?

 4          A.    I do not recall.

 5          Q.    Did you draft a report that would indicate

 6    that you, yourself, conducted?

 7          A.    I do not recall.  I may have.

 8          Q.    And if -- well, would you agree with me

 9    that to conduct an investigation following a murder,

10    it's best to conduct it soon after rather than later,

11    let's say a month later?

12          A.    Depends on how information surfaces.

13          Q.    Okay.  People's memories are better soon

14    after the event?

15          A.    I would imagine, yes.

16          Q.    And I think there was testimony earlier

17    today where there was indication that soon after the

18    murders, or immediately after the murders, there was

19    lockdown of several inmates; is that right?

20          A.    That would probably be the normal routine,

21    yes.

22          Q.    And that doesn't mean that they're not

23    allowed access to one another, at least to

24    communicate in some fashion?  That does happen,

25    doesn't it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7580

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7581

```
 1        A.   I would imagine they can yell from cell to

 2   cell.

 3        Q.   Okay.  So communication isn't prohibited;

 4   they can still do it, they can find a way?

 5        A.   I would imagine, yes.

 6        Q.   Okay.  And so the memorandum that was a

 7   Government's exhibit moments ago, that came after the

 8   April 12, 2001 memorandum we're looking at now; is

 9   that right?

10        A.   Which?

11        Q.   I think that was Exhibit E.

12        A.   This one is dated April 2.

13        Q.   Yeah, Government's exhibit, where

14   Mr. Chavez is noted as a possible suspect by your

15   source.

16        A.   This one is dated April 2.

17        Q.   Right -- April the 12th, actually, 2001.

18        A.   This one is dated April 2, 2001.

19        Q.   Right.  And I'm looking for the

20   Government's exhibit, actually.

21             MR. BECK:  Yeah, I think it's probably page

22   12 you're looking for.

23             MR. SOLIS:  Page 12.  What's your exhibit?

24   Government's Exhibit 1.  May I approach, Your Honor?

25             THE COURT:  You may.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7581

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 293

```
 1                MR. SOLIS:  Can we get Exhibit 1 for the
 2      Government up?
 3                MR. BECK:  What's the Bates number on the
 4      last page there?
 5                MR. SOLIS:  727.  One moment, Your Honor.
 6                THE COURT:  Certainly.
 7      BY MR. SOLIS:
 8           Q.   Is that the reference to Mr. Chavez?  So on
 9      Government's Exhibit 1, dated April 2, there again,
10      days after the event, there is no mention of
11      Mr. Chavez?
12           A.   I don't see it.
13           Q.   And on April the 12th, again following the
14      event, 10 days after the April 2, again, as per a
15      source, there was no mention of Mr. Chavez as an
16      assailant or having participated in the event; is
17      that right?
18           A.   I don't see the document.
19           Q.   You don't see the document, or you don't
20      see reference to it?
21           A.   I don't see the document.
22                MR. SOLIS:  May I approach the witness,
23      Your Honor?
24                THE COURT:  You may.
25           Q.   That's Exhibit 1, or rather, Exhibit I.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No, it doesn't say "Chavez" on this
 2   document.
 3        Q.   It does not indicate it, right?
 4             MR. SOLIS:   May I approach again, Your
 5   Honor?
 6             THE COURT:   You may.
 7        Q.   Again, just to emphasize the point:  April
 8   the 2nd, which is prior to Exhibit I, this is
 9   Government's Exhibit 1, there is no reference to
10   Mr. Chavez there, Mr. Tafoya?
11        A.   "Chavez" does not appear on this document.
12        Q.   Right.
13             You elicited the assistance of State Police
14   Officer Felipe Gonzalez to verify the information in
15   your investigation, or pursuant to your
16   investigation?
17        A.   I believe so, according to the
18   documentation.
19        Q.   And I think it's up now.  Exhibit I for the
20   defense, on page 2 you memorialize that assistance
21   where you ask Felipe Gonzalez to essentially
22   corroborate the information in speaking to the source
23   that resulted in your excluding -- or not including,
24   that is -- Mr. Chavez as a suspect or as an assailant
25   in that murder.  Do you see on the second page,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7583

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7584

```
 1    fourth paragraph down, Mr. Gonzalez, Felipe Gonzalez,

 2    state agent?

 3         A.   I see that.

 4         Q.   Did he not confirm the information from

 5    that source, that Mr. Chavez was not mentioned as a

 6    suspect or as an assailant?

 7         A.   It doesn't say whether he confirmed it or

 8    not.

 9         Q.   He did speak with the source, according to

10    your memorandum; correct?

11         A.   Yes.

12         Q.   Did you draft a second memorandum?

13         A.   I do not recall.

14         Q.   This is certainly a significant event, a

15    murder, right?

16         A.   Yes.

17         Q.   And you would draft a memorandum -- you,

18    yourself -- had you found different information

19    from -- or discovered information that was not

20    consistent with your initial report?

21         A.   I may have, yes.

22         Q.   Did you?

23         A.   I don't recall.

24              MR. SOLIS:  Thank you, sir.

25              THE COURT:  Thank you, Mr. Solis.  Any
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7584

```
 1    other defendant have any redirect?
 2              Anything further, Mr. Beck -- or cross.
 3    All right.  Mr. Tafoya, you may step down.  Is there
 4    any reason Mr. Tafoya cannot be excused from the
 5    proceedings, Mr. Castle?
 6              MR. CASTLE:  No, Your Honor.
 7              THE COURT:  Anybody else?  Mr. Beck?
 8              MR. BECK:  No, Your Honor.
 9              THE COURT:  All right.  You're excused from
10    the proceedings.  Thank you for your testimony.
11              THE WITNESS:  Thank you, Your Honor.
12              THE COURT:  All right.  Does somebody want
13    to check with Ms. Rogers, and see if we want to go
14    with Mr. Garcia?  Or do you want to squeeze your
15    other witness in, Mr. Castle?
16              MR. CASTLE:  Your Honor, we've decided to
17    let that other witness go.  I think we don't need him
18    anymore.
19              THE COURT:  Okay.  So do you want to check
20    on Ms. Rogers and see if she's ready?
21              MR. CASTLE:  Somebody might have already
22    gone, but I'll go as well.  His lawyer needs a few
23    more minutes.  She said she'd come in and let us know
24    when she's ready.
25              THE COURT:  Do we have something we can do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7585

```
 1    profitably while we're waiting for her?
 2              MR. CASTLE:  Mr. Benjamin has something.
 3              MR. BENJAMIN:  We met this morning, Your
 4    Honor.  If I could have a second with the Government.
 5              THE COURT:  You may.
 6              MR. BENJAMIN:  Your Honor, I'm just going
 7    to try and find the number of the bill of
 8    particulars, 13 through 16, and that will be just
 9    about five minutes.
10              THE COURT:  All right.
11              MR. BECK:  I think it's 1319.
12              MR. BENJAMIN:  Your Honor, this morning Ms.
13    Armijo and I met regarding the bill of particulars,
14    as was discussed yesterday.  And Document 1319 should
15    be Joe Gallegos' motion for bill of particulars on
16    Counts 13 through 16.  And I am left with two
17    requests, Your Honor.  And those, I think, are fairly
18    simple requests, and they're the same as I had on
19    Counts 4 and 5.
20              For Count 13, it would simply be -- they've
21    alleged a deadly weapon.  I would request that they
22    elect and choose or identify the deadly weapon.
23              And for Counts 14 through 16, they have
24    three theories of liability, as far as what the
25    witness was being tampered with, or threatened.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7586

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 298587

```
 1   the Court has heard two of them, I believe.  There
 2   was testimony during the James hearing that Jose
 3   Gomez was being sought because he was a witness in a
 4   murder investigation involving Joe Gallegos, and
 5   because he was a witness in the -- or he was the
 6   victim in the March 2015 assault that forms Count 13.
 7           And as the Court heard, Mr. Castellano said
 8   that wasn't it.  And the agent testified that was it.
 9   So we're asking that the Government elect whether he
10   was being threatened and/or tampered with in Counts
11   14 through 16 because he was an SNM, and this was an
12   SNM investigation; whether it was because of the
13   March 2015 assault; or whether it was for an
14   unspecified -- and we request they specify the
15   murder, or any one of those three, or something to
16   that effect.  And that's the issue, Your Honor, I
17   think, just notice-wise, we're entitled to both of
18   those requests under Count 13, for the specificity of
19   the weapon, and Counts 14 through 16 for the act or
20   acts that he was going to be a witness in.
21           THE COURT:  All right.  Ms. Armijo.
22           Thank you, Mr. Benjamin.
23           MS. ARMIJO:  Your Honor, I believe that --
24   I'm surprised about the Count 13.  I believe that we
25   had said, and that when we spoke, that we believed it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 299

```
 1   was knife.  So I don't know --
 2            THE COURT:  I think he's looking for 4 and
 3   5 now, right?
 4            MR. BENJAMIN:  Your Honor, we did speak.
 5   And we did agree.  That was my fault.  I guess I
 6   would ask the Government to change its pleadings to
 7   reflect that.  But she did clarify that it was a
 8   knife.  We're talking about 14 through 16 as well.
 9            MS. ARMIJO:  It believe it just says a
10   dangerous instrument, which a knife would be.  I
11   don't think we need to change any pleadings.
12            THE COURT:  Well, I probably won't order
13   any change of pleadings.  But let me make sure I
14   understand.  On 4 and 5, is it -- it's a gun, right?
15            MS. ARMIJO:  It's a firearm, yes.  A
16   firearm was not recovered.  I'm not sure --
17            THE COURT:  Do you need anything more than
18   that?
19            MR. BENJAMIN:  I apologize, Your Honor.
20   You're saying Counts 4 and 5, and we're talking about
21   Count 13 is the knife.  And there was no firearm
22   recovered in Count 13.  But 13, the Government has
23   told me is a knife.
24            THE COURT:  Okay.  So you don't need to
25   know the identity of the weapon for 4 and 5?  You
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 300 of 589

1   need it for 13?

2          MR. BENJAMIN:  I'm not requesting -- I

3   think the Court has covered my bill of particulars on

4   4 and 5, Your Honor.  For Count 13 I'm asking that if

5   they're saying -- and they did tell me this morning

6   it was a knife -- I'm asking for them to plead that

7   it's a knife.  And then on 14 through 16, Your Honor,

8   it would simply be the election of what Mr. Gomez was

9   a witness in.

10          MS. ARMIJO:  And I believe that he has our

11  three theories that we have.  He's asking us to

12  elect.  And I don't believe that we are required to

13  elect.

14          THE COURT:  You're not required to elect.

15  But I think what he's asking for on the third theory,

16  if I understand the numbering system, yesterday we

17  were talking about it being a murder case that he was

18  a witness in.  Can you identify the murder case?

19          MS. ARMIJO:  Your Honor, I'm not sure about

20  that.  Mr. Gomez -- and what I told him this morning

21  is that, if in fact, there is a murder that I'm

22  unaware of, there is another witness that would be in

23  reference to murder cases.

24          But as I am reading the 302s right now, I

25  don't have that as to Jose Gomez.  If, for any reason

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7589

```
 1   that changes when we meet with Jose Gomez, I will
 2   certainly let him know.  I explained to him, and he
 3   was familiar with the procedure that we went through
 4   in the first trial, that he would be immediately
 5   notified.
 6           But there isn't some underlying murder that
 7   we're keeping from him or anything else right now.
 8           THE COURT:  So you're just down to two
 9   theories?  He wasn't a witness in any murder case
10   that you're aware of?
11           MS. ARMIJO:  Not a charged murder case that
12   I'm aware of.  And I know that Mr. Gallegos, we
13   believe, is the suspect of several murder cases.  And
14   I think he has 302s in reference to that.  I'm just
15   not sure, at this point in time -- and I refer to
16   that 302, and that witness, that would say those
17   things.
18           My only concern is I don't know if Jose
19   Gomez knows about those incidents, and if that's what
20   he's talking about.  But so at this point in time, I
21   don't have anything specific to give him.  I gave him
22   specific information on the other two.  If, in fact,
23   I learn more information, as I told him this morning,
24   I would certainly let him know right away.
25           But there isn't, like, some murder case
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7590

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 302 7591

```
 1    that I -- like off the top of my head or in the

 2    discovery that I can think of that would be -- Jose

 3    Gomez was going to testify as to these other murders.

 4              THE COURT:  Let's put the word "case" then

 5    off the table.

 6              MS. ARMIJO:  Correct.

 7              THE COURT:  Do you at the present time have

 8    a murder that you intend to offer evidence of that

 9    Mr. Gomez would be a witness against Mr. Gallegos

10    for, at the present time?

11              MS. ARMIJO:  That Mr. Gomez would?  Not at

12    this time.

13              THE COURT:  All right.  So for the present

14    time, can we take the third theory off the table?

15              MS. ARMIJO:  Yes.  For the present time,

16    yes, as to Mr. Gomez.

17              THE COURT:  So unless you alert

18    Mr. Benjamin, he has two theories he has to deal

19    with, not three?

20              MS. ARMIJO:  Correct.

21              THE COURT:  And the knife takes care of the

22    weapon on 13?

23              MS. ARMIJO:  Correct.

24              THE COURT:  All right.  What else do you

25    need, Mr. Benjamin?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7591

1         MR. BENJAMIN:  Your Honor, the only way I

2    know to say this is Ms. Armijo is correct.  They're

3    not hiding anything.  My problem is they're also

4    three weeks out from trial, and not choosing what

5    they're going to try Mr. Gallegos on.  And so I

6    have --

7         THE COURT:  They've taken one theory off

8    the table.  Do you have questions either on the knife

9    or the two theories that they're still going to trial

10   on?

11        MR. BENJAMIN:  Your Honor, yes, because

12   I'm -- I think the indictment, essentially, says an

13   official proceeding.  So I think that has to be the

14   March 2015 assault, is my belief and my gut belief.

15        THE COURT:  It sounds like that's not the

16   case anymore; is that correct, Ms. Armijo?

17        MS. ARMIJO:  No.  As I explained in great

18   detail to Mr. Benjamin this morning, our theory is

19   that:  Once he was indicted on December 3 of 2015,

20   all of his racketeering activities are relevant to

21   his federal prosecution, much like all of his bad

22   acts, much like anything else that could be

23   considered relevant activity.  I explained to him

24   this morning about our theory as to how the March

25   incident would be SNM activity, would be considered

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7592

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 304

```
 1    racketeering activities, and how, even though it
 2    wasn't a formal state or formal federal proceeding,
 3    it certainly could be evidence used in his formal
 4    federal case as racketeering activity.
 5           So, to that extent, no, that's not off the
 6    table really, I don't believe it is.  And he also --
 7    so -- I mean, I know he disagrees with us.  But
 8    that's not a bill of particulars.  He can argue this
 9    in the Rule 29 motion, which I'm sure he's going to,
10    that we have not met our VICAR and our elements of
11    the crime.  But at this point in time, he knows great
12    detail about our theory, about our evidence.  And I
13    think we can have various theories as to this.  We're
14    now down to two theories.  And just because he
15    disagrees with it, doesn't mean -- or feels that it's
16    not proper, bill of particulars is not the venue.
17    And we have bent over backwards now to explain our
18    theory, and to go over the evidence with him.
19           THE COURT:  All right.  Mr. Benjamin.
20           MR. BENJAMIN:  She has, Your Honor.  I'm
21    looking for it in black and white.  To wit: March
22    15 -- I'm missing the exact date -- March 2015
23    assault.  Because I think that if they're going to
24    try Mr. Gallegos on an indicted count, it should say
25    that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Okay.  You're saying you want
 2    it put into writing?
 3            MR. BENJAMIN:  Yes, Your Honor.
 4            THE COURT:  All right.  Well, I'm not going
 5    to require any amendment of the pleadings.  I think
 6    the bill of particulars is to get their theories and
 7    evidence.
 8            MR. BENJAMIN:  And they have done that,
 9    Your Honor.
10            THE COURT:  All right.  So I'll deny the
11    motion.  But I do think that they've gotten the
12    theories and the evidence.  And if they're going to
13    try to do anything else, they committed to getting a
14    letter to you as soon as possible.
15            MR. BENJAMIN:  Thank you, Your Honor.
16            THE COURT:  Thank you, Mr. Benjamin.
17            I thought I saw Ms. Rogers duck her head in
18    and then head back out.  Anybody want to check on her
19    and tell her what time it is.
20            Do you have something, Mr. Burke?
21            MR. BURKE:  I'll take up 20 seconds.  If
22    they're going to really start piling on Joe Gallegos,
23    the idea of a bifurcated jury starts getting more
24    interesting to the defendants, Your Honor.  If
25    they're really going to do all that, that's really
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7594

1    going to create a spillover.

2         THE COURT:  Well, they took one theory off

3    the table.  So it's a little less piling on.

4         MR. BURKE:  Yes, we've got a little less.

5    But I'm hoping we can get that other jury going.

6         THE COURT:  So we pull a theory off, and we

7    get a renewed motion to sever?

8         MR. BURKE:  I'm hearing some piling on,

9    Judge.

10        THE COURT:  All right.  Mr. Castle.

11        MR. CASTLE:  Just to fill some time.  We

12   have two orders that the Court had asked us to draft.

13        THE COURT:  All right.

14        MR. CASTLE:  The first is phone calls

15   concerning Leonard Lujan.  But, Your Honor, what I've

16   been told from people that are actually handling all

17   these phone calls, that there is a number of

18   different individuals' phone calls that are missing

19   that we subpoenaed, and they've refused to give

20   without a federal court order.  And so what I'd like

21   to do is -- I've given copies to the prosecution --

22   is have the order be for all these different phone

23   calls, so that we're not having to come back to the

24   Court numerous times with the same similar orders.

25   And it's all for witnesses that the Government has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7595

 1  said they're going to call, and are likely to call.

 2  So they'd be individuals such as Robert Lovato,

 3  Frederico Munoz, Gerald Archuleta, Robert Martinez,

 4  Benjamin Clark.

 5          THE COURT:  Any objection to doing it that

 6  way, Mr. Beck?

 7          MR. BECK:  Well, no, but I will comment

 8  that if these are the two orders that Mr. Castle

 9  handed me earlier today, I think we're sort of two

10  ships passing in the night here.  Because these are

11  directed at New Mexico Corrections Department.  New

12  Mexico Corrections Department's calls have been

13  produced, and are ongoing production.  What my

14  understanding was from yesterday, is that they want

15  jail calls from facilities that are not Corrections.

16          THE COURT:  The Corrections' facilities in

17  possession of marshals?

18          MR. CASTLE:  Yes.  But it's my

19  understanding it's actually the Department of

20  Corrections has large gaps in their phone calls.  So

21  despite what --

22          THE COURT:  I didn't hear that objection in

23  the first trial that there was any gaps.  But if you

24  do, it sounds like you just need to talk to Mr. Beck

25  about that, because they will try to remedy it.  But

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 308597

1    the only thing I heard complaints in the first trial

2    was just a lot of phone calls, but not gaps.

3              MR. CASTLE:  Well, I think they only

4    listened to certain ones because they didn't have

5    enough time.  I think that's --

6              THE COURT:  My suggestion is you just talk

7    to Mr. Beck about what gaps you have.  And then, if

8    you can't work it out, respond.  But I think -- I'll

9    use the word, not pejoratively, but they're dumping a

10   lot of phone calls on you, and I don't think they're

11   trying to create any gaps.

12             MR. CASTLE:  Well, I could tell the Court

13   that we did contact them in January about the gaps in

14   Leonard Lujan's calls.  And we haven't received any.

15   So I don't know how quickly they're going to get

16   turned around.  Perhaps, I could talk to the

17   prosecution.

18             THE COURT:  I guess if you don't care, Mr.

19   Beck, I can sign the order, and they can go the long

20   way, if you don't care.

21             MR. BECK:  That's news to me.  I think that

22   there are additional phone calls that were produced

23   to us over the weekend, that we produced either

24   yesterday or the day before to Mr. Aoki.  So those

25   may be these calls that they're looking for.  Yeah,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 309

1    so I agree with the Court.  I don't care.  I think

2    that if they talk to us, it will short-circuit --

3           THE COURT:  Okay.  Anybody else have an

4    objection?  Not hearing any, do you want to hand me

5    that motion, Mr. Castle.

6           MR. CASTLE:  Yes, Your Honor.  And I'll

7    talk to the prosecutors.  If they already have it,

8    then I won't serve it on Corrections.

9           THE COURT:  All right.  So which order is

10   the one you just talked about?  Is it the one -- oh,

11   one to Corrections and one to PNM.  So you've seen

12   these, Mr. Beck?  You know what I'm about to sign?

13          MR. BECK:  Yes, Your Honor.

14          MS. HARBOUR-VALDEZ:  Your Honor, on Monday

15   you ordered the Government to turn over by Wednesday

16   the co-conspirator statements from Trial 1 that they

17   intended to use.  I asked Mr. Beck about this

18   yesterday morning, and he said they would file

19   something.  But we have yet to receive that.

20          THE COURT:  Were we going to resolve that

21   with just the production of the transcripts -- oh,

22   no, no, I know.  Yeah, okay, I got you.

23          MR. BECK:  Something different.  That

24   probably -- Mr. Castellano is out of the office --

25   that probably fell through the cracks.  I think what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7598

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 310

1    we're going to do is file -- just file a notice that

2    attaches the Court's opinion, the pages from the

3    Court's opinion that has the Trial 1 statements.  So

4    I will make sure that we do that tonight when I get

5    back.

6            THE COURT:  So every co-conspirator

7    statement in the first trial, you're going to try to

8    introduce in the second trial?

9            MR. BECK:  I don't know that we're going to

10   try to introduce it.  But I know that we're just

11   going to provide them notice of it because they asked

12   for it.  So they are co-conspirator statements, the

13   Court has already found they are co-conspirator

14   statements.  They're admissible in this trial, if

15   those people testify.

16           THE COURT:  Those were different

17   conspiracies?

18           MR. BECK:  Right.

19           THE COURT:  I don't know how they'd be

20   admissible in this trial under the co-conspirator

21   statement, if none of those defendants are -- if none

22   of those conspiracies are being tried here.

23           MR. BECK:  Those conspiracies would be

24   racketeering activity.

25           THE COURT:  Well, they might be, but they



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7599

```
 1    wouldn't be used against any of these people.

 2              MR. BECK:  Well, they'd be used against

 3    these people as racketeering activity.

 4              THE COURT:  No, they can't come in as

 5    evidence.  They're inadmissible in this trial.  There

 6    is not a party in here that they can be used against.

 7              MR. BECK:  All right.  Well, I see what

 8    you're saying, and I really hadn't thought much about

 9    it.  I wasn't taking this on.  I don't know that

10    changes our approach.  But it was an oversight.  I'll

11    talk to Mr. Castellano.  I think we're probably still

12    going to file the notice, and we can hash that out if

13    you want, and the Court can find them inadmissible.

14    But --

15              THE COURT:  Okay.  Well, they're probably

16    inadmissible.

17              MS. HARBOUR-VALDEZ:  I would agree.

18              THE COURT:  We have to establish, A,

19    conspiracy, and they've identified eight, and I don't

20    think any of those statements relate to this.  I'd

21    have to establish the membership.  But the whole

22    statements were being -- were largely the defendants'

23    in that case.

24              There is Ms. Rogers.  Let's see if we can

25    maybe use these five minutes to get these 13
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7600

1    questions done.  Ms. Rogers, have you had an

2    opportunity to meet with Mr. Garcia?  Are you ready

3    to deal with him?

4              MS. ROGERS:  I am, Your Honor.  And again,

5    I apologize for my attire.

6              THE COURT:  You have no reason to

7    apologize.  But you've had an adequate opportunity to

8    talk to him this afternoon?

9              MS. ROGERS:  I have, Your Honor.

10             THE COURT:  All right.  If you'll bring

11   Mr. Garcia in.  We'll go ahead and swear him in.  And

12   if you want to sit up here next to him, we've got a

13   seat up here for counsel for some of the witnesses.

14   You're welcome to sit up here.

15             MS. ROGERS:  Thank you, Your Honor.

16             THE COURT:  Thank you, Ms. Rogers.

17             All right.  Mr. Garcia, if you'll come up

18   and stand next to the witness box right here on my

19   right, and before you're seated, Ms. Bevel will swear

20   you in.

21

22

23

24

25

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                        1-800-669-9492
                                                                          e-mail: info@litsupport.com



Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7602

```
 1                    JAMES GARCIA,
 2         after having been first duly sworn under oath,
 3         was questioned and testified as follows:
 4                    DIRECT EXAMINATION
 5              THE CLERK:  Please be seated.  Please state
 6    your name, and spell your last name for the record.
 7              THE WITNESS:  James Garcia, G-A-R-C-I-A.
 8              THE COURT:  Mr. Garcia.  Mr. Castle.
 9    BY MR. CASTLE:
10         Q.   Mr. Garcia, where were you living in March
11    of 2001?
12         A.   I was incarcerated.
13         Q.   In what facility, do you recall?
14         A.   I can't remember.
15         Q.   Was it in Southern New Mexico Correctional
16    Facility?
17         A.   No.
18         Q.   Have you been interviewed by the FBI or
19    state law enforcement concerning the 2001 murders
20    that happened at Southern New Mexico Correctional
21    Facility?
22         A.   I plead the Fifth on that, Fifth Amendment
23    right.
24              MR. CASTLE:  I would ask for -- on what
25    grounds, Your Honor?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7602

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 314603

```
 1            THE COURT:  Yeah, Ms. Rogers, just simply
 2   the fact that he interviewed with the United States
 3   doesn't seem to me to invoke his rights.  Do you want
 4   to talk to Mr. Garcia on that?
 5            MS. ROGERS:  Briefly, Your Honor.
 6            (The defendant conferred with counsel.)
 7            MS. ROGERS:  Thank you, Your Honor.
 8            THE COURT:  All right.  Do you want to
 9   re-ask your question, Mr. Castle, and we'll see what
10   Mr. Garcia decides to do?
11   BY MR. CASTLE:
12       Q.   Have you been interviewed by the FBI or
13   state law enforcement concerning the 2001 murders
14   that happened at Southern New Mexico Correctional
15   Facility?
16       A.   Yes.
17       Q.   How many times?
18       A.   A few times.
19       Q.   Do you know a man by the name of Billy
20   Garcia personally?
21       A.   No.
22       Q.   Have you ever met him?
23       A.   No.
24       Q.   He's also known by the nickname of "Wild
25   Bill"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 5604

```
1        A.   I've heard of him, but I don't know him.
2        Q.   Has anyone ever told you -- in a
3   conversation with you, has anyone ever told you that
4   Billy Garcia ordered the murders that happened at the
5   Southern New Mexico Correctional Facility in 2001?
6        A.   No.
7        Q.   Has anyone ever admitted to you that they
8   were involved in those murders at the Southern New
9   Mexico Correctional Facility in 2001?
10       A.   Anybody what?
11       Q.   Has anybody ever admitted to you in a
12  conversation with you that they were involved in
13  those murders that happened at the Southern New
14  Mexico Correctional Facility in 2001?  Has anyone
15  ever told you that they did it?
16       A.   No, not that I remember, no.
17       Q.   That would be something you'd remember,
18  isn't it, if somebody admitted a murder to you?
19       A.   There is so much stories in there, I don't
20  remember.
21       Q.   Now, have you heard rumors about what
22  happened there in 2001, from other inmates, or other
23  people?
24       A.   Yeah.
25       Q.   But no one has personally said to you, "I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7605

```
 1    did it," or "I was part of it"?

 2         A.   No.

 3         Q.   Or say out loud, "I was part of it"?

 4         A.   No.

 5              MR. CASTLE:  No other questions.

 6              THE COURT:  All right.  Does any other

 7    defendant have direct examination of Mr. Garcia?

 8              All right.  Mr. Beck.  Do you have

 9    cross-examination of Mr. Garcia?

10              MR. BECK:  Yes, Your Honor.

11                    CROSS-EXAMINATION

12    BY MR. BECK:

13         Q.   Mr. Garcia, do you know an FBI Special

14    Agent by the name of Lance Roundy?

15         A.   No.

16         Q.   Okay.  So you were interviewed in person

17    with Lance Roundy on May 9, 2013; isn't that right?

18         A.   I think so.

19         Q.   So earlier when you just said you don't

20    know anyone named Lance Roundy with the FBI --

21         A.   I was with the FBI like about four or five

22    times already.  There is so many people that tried to

23    grab me.  Names go around.  I don't remember.  There

24    are so many of them.

25         Q.   And when you were interviewed by Lance
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7605

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7606

1   Roundy on May 9th of 2013, as an FBI agent, you were

2   truthful with him, weren't you?

3            MR. BURKE:  I'm going to object.  That

4   question is not based on facts in evidence.  In fact

5   he denied remembering who Lance Roundy is.

6            THE COURT:  Well, I think the purpose of

7   this, if I'm not mistaken -- Mr. Garcia, it's a 104

8   to determine whether some evidence is coming in;

9   correct?

10            MR. BECK:  That's my understanding.

11            THE COURT:  So I'll allow him to testify.

12   Overruled.  You can answer the question.

13       A.   Could you say it again?

14       Q.   Sure.  When you were interviewed by -- I'm

15   not sure I can quote myself, but when you were

16   interviewed by Lance Roundy with the FBI on May 9th

17   of 2013, you were truthful with Mr. Roundy then,

18   weren't you?

19            MR. BURKE:  Your Honor, I'm going to

20   object.  The 302 that I have of that interview is six

21   pages.  It contains many, many statements.  It's an

22   unfair question.  Mr. Garcia would be entitled to see

23   whatever statements that he's being examined about.

24            THE COURT:  Well, we'll let Mr. Beck

25   conduct his cross-examination.  And if you want to do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7606

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1 of 3 7607

```
 1    something on redirect, or you need something, let us

 2    know.  Overruled.  You can answer the question.

 3         A.   I plead the Fifth.

 4         Q.   So you're refusing to answer whether you

 5    were truthful with Mr. Roundy?

 6         A.   I plead the Fifth, sir.

 7         Q.   Okay.  So when you said that -- when you

 8    told Mr. Roundy in 2013 that you had a conversation

 9    with Edward Troup at a backyard barbecue in

10    Albuquerque in November 2012, that was true, wasn't

11    it?

12         A.   Plead the Fifth.

13         Q.   And when you said Troup confessed to being

14    part of two murders where two people were strangled

15    to death at the Southern New Mexico Correctional

16    Facility in Las Cruces, New Mexico, that was true,

17    wasn't it?

18         A.   I plead the fifth.

19         Q.   When you said that, "Troup stated that

20    during one of the murders he held Fred Dawg's legs

21    while Wino, gang member, Javier Alonso, strangled him

22    to death with a drawstring from a laundry bag," that

23    was true, wasn't it?

24         A.   Plead the Fifth.

25         Q.   You know who Edward Troup is, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7607

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7608

```
 1          A.   Yes, I do.

 2          Q.   You know who Javier Alonso is?

 3          A.   No.

 4          Q.   Do you know who Wino is?

 5          A.   No.

 6          Q.   And why would you say that Wino held the

 7     legs while Troup strangled him, if you don't know who

 8     Wino is?

 9          A.   I don't know what I said that day.  I don't

10     remember.  That's why I plead the Fifth.

11          Q.   Would it help if I showed you the report

12     from your conversation with Mr. Roundy?  Would it

13     help refresh your recollection as to what you told

14     him that day?

15          A.   Like I said, sir, I plead the Fifth.

16          Q.   Well, that's not my question.  My question

17     was --

18          A.   I don't remember, sir.

19          Q.   Okay.  And what I'm asking you is would it

20     refresh your recollection to see what you told

21     Mr. Roundy on May 9th of 2013, if I handed you his

22     report from that day?

23          A.   Show it to me, if you want.

24          Q.   Sure.

25               MR. BECK:  May I approach, Your Honor?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7608

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3210609

```
 1              THE COURT:  You may.
 2       Q.   And I'm showing Mr. Garcia what's been
 3  marked as Government's Exhibit -- or excuse me, it
 4  hasn't been marked at all.  It's Document 1909-1.
 5              So I'm going to direct your attention here
 6  to Bates No. 680 to 681.  So, again, let me just show
 7  you this whole document, see if it refreshes your
 8  recollection.  So this is May 9, 2013.  Do you see
 9  that?
10       A.   Yeah.
11       Q.   Then on the last page of this document it
12  says it was drafted by Lance Roundy.  Do you see
13  that?
14       A.   Um-hum.
15       Q.   Is that a yes?  I think you said yes -- I
16  think you said "um-hum."  For the court reporter --
17       A.   I don't know, I can't --
18       Q.   Does that say that it was drafted by Lance
19  Roundy?
20              MS. ROGERS:  Just for the record,
21  Mr. Garcia has some reading comprehension difficulty?
22       A.   Yeah.
23              MS. ROGERS:  So if you want to read it
24  aloud --
25       A.   I don't read too good.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7609

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 321610

1      Q.   Okay.  So here on the bottom it says, "In

2    late November, 2012" blank "had a -- redacted -- "had

3    a conversation with SNM Gang member, Edward Troup,

4    in" -- blank -- "backyard off of" -- blank -- "in

5    Albuquerque.  Do you see that?

6      A.   Um-hum.

7      Q.   It says, "During the conversation Troup

8    confessed to being a part of two murders, which two

9    people were strangled to death at Southern New Mexico

10   Correctional Facility in Las Cruces, New Mexico."  Do

11   you see that?

12     A.   Yeah.

13     Q.   It says, "Troup stated that during one of

14   the murders he held Fred Dawg's -- agent identified

15   as Freddie Sanchez" -- redacted -- "legs while

16   Wino -- agent identified as SNM gang member, Javier

17   Alonso, Jr." -- date of the birth redacted -- "and

18   strangled him to death with a drawstring from a

19   laundry bag."  Do you see that?

20     A.   Yes.

21     Q.   And then it says, "Both Troup and Alonso

22   disposed of the drawstring and took off their clothes

23   and tore up evidence in an attempt to hide their part

24   in the murder."  Do you see that?

25     A.   Yes, I do.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7610

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 322611

1          Q.   Does that refresh your recollection whether

2     you told Lance Roundy in 2013 that Troup held Fred

3     Dawg's legs while Wino strangled him?

4          A.   I don't remember saying that.

5          Q.   Do you remember that this was a long

6     conversation with Mr. Roundy?

7          A.   No.

8          Q.   And so you don't remember a long

9     conversation, that was approximately six pages of

10    notes in a 302, is that what you're saying today?

11         A.   I don't remember.

12         Q.   And with Mr. Castle on direct there, I

13    think you said that you had heard rumors about the

14    2001 murders.  Do you remember saying that?

15         A.   Yes.

16         Q.   And did those murders include that Troup

17    held Fred Dawg's legs down while Wino strangled him

18    to death with a drawstring from a laundry bag?

19         A.   I heard all kinds of rumors.

20         Q.   Okay.  That wasn't my question.  My

21    question was:  Did those rumors include that Troup

22    held down Fred Dawg's legs while Wino strangled him

23    to death with a drawstring and laundry bag?

24         A.   No.

25         Q.   Those weren't included?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7611

```
 1        A.   No, not that I know of, no.  I heard a lot

 2   of different other stories.  But just like what

 3   you're putting right there, no.

 4        Q.   Right.  So that's not a rumor; that's true,

 5   isn't it?

 6        A.   I don't know.

 7        Q.   Well, you know that because you told Agent

 8   Roundy that?

 9        A.   I don't --

10             MR. BURKE:  Objection, asked and answered.

11   Now, he's just pestering the witness.

12             THE COURT:  Overruled.

13        A.   I don't remember telling him that.

14        Q.   Okay.  But you were truthful with Mr.

15   Roundy in 2013, right?

16             MR. BURKE:  Objection; that's been covered

17   as well.

18             THE COURT:  Overruled.

19        A.   Based on that, whatever I said to them, I

20   plead the Fifth.

21        Q.   Okay.  Did you also tell -- did you also

22   tell Mr. Roundy in 2013 that Troup had told you about

23   Sanchez's murder also in 2008?

24        A.   Said what?

25        Q.   Did you also tell Special Agent Roundy, in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    2013, that Troup told you about Sanchez' murder in
 2    approximately 2008?
 3         A.   No.
 4         Q.   Okay.  So you didn't tell him that?
 5         A.   I don't remember.  I don't recall.  I don't
 6    remember.
 7         Q.   All right.  Do you remember you violated
 8    your parole in approximately 2008, right?
 9         A.   Yeah, I think so.
10         Q.   And because you violated your parole you
11    were in the prison system at that time, right?
12         A.   I've been in prison a lot, yes.
13         Q.   And so where it says here that Troup told
14    that to you in 2008, when you violated your
15    probation/parole and you were incarcerated in the New
16    Mexico prison system, that's true?
17         A.   I was in prison?
18         Q.   Right.
19         A.   Sure, I think so.
20         Q.   Okay.  So that part of this is true?
21         A.   That I was in prison?  Yes.
22              MS. ROGERS:  I'm sorry, just to clarify,
23    when you're saying "this," are you talking about the
24    statement we were just looking at?  I don't know what
25    "this" is.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7613

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7614

1     Q.   Okay.  Mr. Garcia, where you say here --

2     where you told Mr. Roundy, "Additionally, during the

3     same conversation, Troup provided" -- blank -- "with

4     information regarding his role in the murder of

5     Pancho," do you remember telling Mr. Roundy that?

6          MR. BURKE:  Asked and answered.  Now he's

7     pestering the witness.

8          THE COURT:  Overruled.

9     A.   I don't remember.

10    Q.   Would it refresh your memory if I showed

11    you Mr. Roundy's report of your conversation?

12    A.   If you want to.

13    Q.   Sure.

14         MR. BECK:  May I approach, Your Honor?

15         THE COURT:  You may.

16    Q.   All right.  Mr. Garcia, I'm showing you the

17    same report that I just showed you below the

18    paragraph we just read.  So it says blank "stated

19    that Troup had told him about Sanchez' murder in

20    approximately 2008, when" -- blank -- "violated his

21    probation/parole and was incarcerated in the New

22    Mexico prison system."  Do you see that?

23    A.   Um-hum.

24    Q.   And it's true, isn't it -- I think you just

25    said this -- that in 2008, you violated your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7614

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 2 of 615

1    probation/parole and you were incarcerated during

2    that time, right?

3         A.   Yes.

4         Q.   And so, "Additionally during the same

5    conversation Troup provided" -- blank -- "with

6    information regarding his role in the murder of

7    Pancho."  Do you see where it says that?

8         A.   Um-hum.

9         Q.   And that's true, isn't it --

10        A.   No.

11        Q.   -- that Troup told you, in 2008, that he

12   provided you information about his murder of Pancho,

13   right?

14             MR. BURKE:   Objection, asked and answered.

15             THE COURT:   Overruled.

16        A.   You're saying me and Troup were together in

17   2008?

18        Q.   Right.

19        A.   No, we weren't.

20        Q.   Okay.  So here, when you say that --

21        A.   You have to tell me what you're saying,

22   that me and him were together incarcerated.  We never

23   were.

24        Q.   So here in approximately 2008 --

25        A.   We don't even like each other.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7615

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 327

 1        Q.   Okay.   So let me ask you this question now.
 2   Where it says here that you stated "Troup told you
 3   about Sanchez' murder in 2008, when you were
 4   incarcerated in the New Mexico prison system," is it
 5   your testimony today that that's not true?
 6        A.   I don't know.   I don't understand the
 7   question.
 8        Q.   Let me ask it again.   Here, where it says
 9   that Troup told you about Sanchez' murder in
10   approximately 2008, when you violated your
11   probation/parole, and you were incarcerated in the
12   New Mexico prison system, is that not true?
13             MR. BURKE:   Objection.   This now has been
14   asked a half dozen times.   That is enough, I believe,
15   Your Honor.
16             THE COURT:   Overruled.
17             MS. ROGERS:   He's asking about witnesses
18   here in the statement.
19             THE WITNESS:   That I told him that?
20             MS. ROGERS:   Can you ask it again, please?
21        A.   I don't understand it.
22             THE COURT:   I think, Mr. Beck, you better
23   leave that microphone so Mr. Garcia's voice -- turn
24   it down just a little bit, Mr. Garcia, so it's
25   pointing.   There you go.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 328 7617

```
 1          Q.   So where it says in this report that you
 2    said that Troup told you about Sanchez' murder in
 3    approximately 2008, when you violated your probation
 4    and parole, and you were incarcerated in the New
 5    Mexico prison system, you're saying that's not true?
 6          A.   I don't remember it.  You know, if -- and I
 7    understand that me and Huero were never in a facility
 8    together, so I don't remember that, me telling the
 9    FBI agent that.  All right, so --
10          Q.   Do you remember Mr. Troup telling you, in
11    approximately 2008, that he killed Freddie Sanchez?
12          A.   No, because --
13               MR. BURKE:  Objection, asked and answered.
14          A.   Because me and Huero Troup never liked each
15    other.  So in 2008, no.
16          Q.   So where it says here, "Additionally, the
17    same conversation Troup provided you with information
18    regarding his role in the murder of Pancho," is it
19    your story that this also is not true?
20               MS. ROGERS:  Do you need a second?
21          A.   Yes.
22               MS. ROGERS:  Your Honor, can we have a
23    brief sidebar?
24               THE COURT:  You may.
25               (The defendant conferred with counsel.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 329 618

```
 1              MS. ROGERS:  Thank you, Your Honor.  Sorry,
 2    Mr. Beck.
 3         Q.   So I asked you a question.
 4         A.   Go ahead.
 5              MR. BECK:  Ms. Bean, can you read that
 6    back, please?
 7              THE COURT:  The question is:  So where it
 8    says here, "Additionally the same conversation Troup
 9    provided you with information regarding his role in
10    the murder of Pancho."
11         A.   I don't remember saying that.
12         Q.   Pancho is Fred Castillo, right?
13         A.   I don't know.
14         Q.   Pancho was killed in 2001 in the Southern
15    New Mexico Correctional Facility; you know that?
16         A.   I heard of it, but I don't know who he is.
17         Q.   You heard of it from Troup when he told you
18    about it, right?
19         A.   No.
20         Q.   No, that's not where you heard of it?
21         A.   I don't remember.
22         Q.   And where it says Troup told you that Billy
23    Garcia, a/k/a Wild Bill, gave the order to kill
24    Pancho, that's true, right?
25              MR. BURKE:  Asked and answered, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7618

```
 1      Now he's just pestering the witness.
 2              THE COURT:  Overruled, Mr. Burke.
 3      A.   Go ahead.  What's the question?
 4      Q.   Where it says Troup told you that Billy
 5 Garcia, a/k/a Wild Bill, gave the order to kill
 6 Pancho; that's true, right?
 7      A.   I don't remember.
 8      Q.   Now, you know that Billy Garcia did, in
 9 fact, put the order in to kill Pancho, right?
10      A.   Who is Billy Garcia?
11              MR. CASTLE:  I'm going to object.  That
12 assumes that --
13      A.   Can you tell me who Billy Garcia is?
14              THE COURT:  Overruled.  He can answer.
15      A.   I don't know what you're talking -- I don't
16 know who he is.
17      Q.   So you don't know who Billy Garcia, a/k/a
18 Wild Bill, is?
19      A.   I heard of him.  Remember I told you I
20 heard of him, but I don't know who he is.
21      Q.   That wasn't my question.  I said:  You know
22 that Billy Garcia gave the order to kill Pancho,
23 don't you?
24      A.   No.
25      Q.   And so when you told FBI Special Agent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7620

1    Roundy, in 2013, that Troup told you that Billy

2    Garcia, a/k/a Wild Bill, gave the order to kill

3    Pancho, that was a lie?

4              MR. BURKE:  That isn't --

5              THE COURT:  Well, I'm going to sustain.

6    That question has a lot of problems.  Sustained.

7         Q.   So was it not true when you told Special

8    Agent Roundy, in 2013, that Troup told you that Billy

9    Garcia, a/k/a Wild Bill --

10             MR. BURKE:  Object --

11             THE COURT:  Sustained.

12        Q.   So you told Special Agent Roundy that Troup

13   told you that Troup walked into Pancho's cell where

14   Angel DeLeon and others were waiting for Pancho?

15             MR. BURKE:  Objection.

16             THE COURT:  Overruled.

17        Q.   My question is:  Didn't you tell Special

18   Agent Roundy, in 2013, that Troup told you that he

19   walked into Pancho's cell, where Angel DeLeon and

20   others were waiting for Pancho?

21        A.   I don't remember that.  I don't remember

22   telling him that.

23        Q.   Would it refresh your recollection if I

24   showed you Mr. Roundy's report?

25        A.   Yes, but I don't remember.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7620

```
 1              MR. BECK:  May I approach, Your Honor?
 2              THE COURT:  Well, let's talk a little bit
 3    about scheduling.  How much longer are you going to
 4    go, Mr. Beck?
 5              MR. BECK:  Well, probably another 15
 6    minutes, Your Honor.
 7              THE COURT:  Are you available to come back
 8    tomorrow, Ms. Rogers, at 8:30 in the morning?
 9              MS. ROGERS:  I am, Your Honor.
10              THE COURT:  Are you available, Mr. Garcia?
11              THE WITNESS:  Not really.  But if I have
12    to, I'll be here.
13              THE COURT:  All right.  Well, we've gone
14    longer -- we were trying to accommodate Mr. Garcia
15    and get him out of there, but if the Government is
16    going to take another 15 minutes, I think we better
17    let everybody go.  The transportation people are all
18    waiting.  And we've gone longer on this day than we
19    have in two months.  So I apologize we couldn't get
20    it done.
21              All right.  See y'all tomorrow at 8:30 in
22    the morning.
23              (The Court stood in recess.)
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7621

```
 1                      C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13        In testimony whereof, I have hereunto set my

14    hand on March 24, 2018.

15

16

17

18                    _____
                      Jennifer Bean, FAPR, RMR-RDR-CCR
19                    Certified Realtime Reporter
                      United States Court Reporter
20                    NM CCR #94
                      333 Lomas, Northwest
21                    Albuquerque, New Mexico 87102
                      Phone:  (505) 348-2283
22                    Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3     UNITED STATES OF AMERICA,

4                     Plaintiff,

5          vs.                NO:  CR-15-4268 JB

6     ANGEL DELEON, et al.,

7                     Defendants.

8

9          Transcript of Motions Hearing before The

10    Honorable James O. Browning, United States District

11    Judge, Las Cruces, Dona Ana County, New Mexico,

12    commencing on March 16, 2018.

13    For the Plaintiff:  Ms. Maria Armijo, Mr. Matthew
      Beck
14
      For the Trial 2 Defendants:  Mr. Brock Benjamin;
15    Ms.  Cori Harbour-Valdez; Mr. Patrick Burke; Mr. Jim
      Castle; Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
16    Shattuck; Mr. John Granberg; Mr. Edwardo Solis;
      Mr. Billy Blackburn; Mr. Donovan Roberts; Ms. Lisa
17    Torraco; Ms. Angela Arellanes.

18    For the witness:  Ms. Cody Rogers

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Good morning
 2    everyone.  I think we've got an attorney for each
 3    defendant.  I think we have all the defendants in the
 4    courtroom now.  So we'll get started.
 5              All right.  Is Mr. Garcia back today?
 6              MS. ROGERS:  He is, Your Honor.  I'll go
 7    get him.
 8              THE COURT:  All right.  Mr. Garcia, if
 9    you'll return to the witness box.  And I'll remind
10    you that you're still under oath.  All right,
11    Mr. Garcia.
12              Mr. Beck, if you wish to continue your
13    cross-examination of Mr. Garcia.
14              MR. BECK:  I do, Your Honor.  Thank you.
15              THE COURT:  Mr. Beck.
16              MR. BECK:  Ms. Bevel, I think we're on
17    Government's Exhibit 1 for this hearing?
18              THE CLERK:  For this, yes, the
19    Government -- I just have one.  That's it so far.
20              MR. BECK:  Your Honor, I'm going to move to
21    admit as Government's Exhibit 1, the FBI 302
22    interview of James Garcia on May 13, 2017.
23              THE COURT:  Any objection to that?
24              MR. CASTLE:  Yes.  I don't think there has
25    been an adequate foundation to establish that it's an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7624

 1   accurate report.

 2            THE COURT:  Well, this is a 104 hearing --

 3   that's what the defendants have characterized it --

 4   so I'll need all the information I can get.  I'm not

 5   sure I'm the one that determines whether it's

 6   accurate.  I'll have to determine whether, I guess,

 7   Mr. Garcia's statements can come in.  But I'd admit

 8   Government's Exhibit -- is it 2 now -- 2 into

 9   evidence.

10            MR. BECK:  Two, yes, Your Honor.

11            THE COURT:  What's the size of that report?

12   How long did you say it was yesterday?

13            MR. BECK:  This report, the way it's been

14   filed, it's Document 1909-1, so it was attached to

15   Mr. Castle's targeted response, and it is five pages.

16                    JAMES GARCIA,

17       after having been previously duly sworn under

18       oath, was questioned, and continued testifying

19       as follows:

20              CONTINUED CROSS-EXAMINATION

21   BY MR. BECK:

22       Q.   So Mr. Garcia, I think it was late in the

23   day yesterday, we were both tired.  And I just want

24   to make sure that I understand your testimony.

25            With Mr. Burke yesterday, my understanding

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

DNM 7625

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 4626

1    was that you said Mr. Troup had never admitted any

2    crimes to you.  Was that your testimony yesterday?

3         A.   I don't remember.

4         Q.   So now, your testimony -- and that's what I

5    wasn't clear on -- so your testimony is that you

6    don't remember, sitting here today?

7         A.   I don't remember, and I plead the Fifth.

8         Q.   All right.  So now -- so this is what I'm

9    trying to get us certain on.  So did Edward Troup,

10   Mr. Troup, admit his involvement in SNM crimes to

11   you?

12        A.   No.

13        Q.   So you're sure that he did not?

14        A.   No.

15        Q.   And on May 13 of 2013, you were interviewed

16   by FBI Special Agent Lance Roundy, right?

17        A.   I was -- there are so many FBI agents, I

18   don't remember each of those names.

19        Q.   You were arrested on a federal indictment

20   around May 9th of 2013, right?

21        A.   Yes.

22        Q.   And during that arrest, when you were

23   arrested, you were arrested in Albuquerque, and you

24   were transported down to Las Cruces, right?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7626

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 5627

 1        Q.   And that was with agent -- FBI Special

 2   Agent Lance Roundy and --

 3        A.   I don't know his name.  I don't remember.

 4        Q.   But you do remember that when you were

 5   arrested, you were transported from Albuquerque to

 6   Las Cruces with two FBI agents, right?

 7        A.   One FBI agent.

 8        Q.   One FBI agent.  Okay.

 9             And in that car ride you talked with the

10   FBI agent and answered his questions, didn't you?

11        A.   No.

12        Q.   And on May 9th, 2013 -- and maybe this is

13   at the federal courthouse -- you did interview with

14   an FBI agent, right?

15        A.   I plead the Fifth.

16        Q.   So you're pleading the Fifth in response to

17   my question as to whether on May 9th of 2013, you

18   interviewed with an FBI agent?

19        A.   I said I plead the Fifth.

20             MR. BECK:  And, Your Honor, I don't have it

21   with me, but I will supplement Government's Exhibit

22   2 -- hopefully before the end of the day, but perhaps

23   not -- with Government's Exhibit 2A, which will be a

24   recording of the conversation that took place on May

25   9th, 2013, with Mr. Garcia and FBI Special Agent

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7627

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7628

1   Lance Roundy.

2             THE COURT:  Any objection?

3             MR. BURKE:  Yes.  Just in the interests of

4   fairness.  I believe this is the first time anybody

5   knew about a recording.  And I don't think this sort

6   of sandbagging is appropriate.  Basically, it's a

7   discovery game.  And the Government should not be

8   permitted to benefit by failing to provide a tape

9   recording, when it should have been provided years

10  ago.

11            And, in fact, yesterday, I believe it was

12  Mr. Beck who said that "We have provided all

13  recordings."  And that came up in the context of my

14  complaining about Ben Clark's recording not being

15  provided.  So, in effect, if they have a recording

16  that they are now going to produce, that would mean

17  that Mr. Beck's statement yesterday that they have

18  produced all recordings is not a true statement.  And

19  I object in the interests of fairness.

20            THE COURT:  All right.

21            MR. CASTLE:  Your Honor, I have an

22  additional objection.  Rule 16 specifically indicates

23  if they have recorded statements -- well, I

24  apologize, that's a defendant's statement.  But, Your

25  Honor, I join Mr. Burke's objection.  There is no

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   tape that's been produced to the defense -- I

 2   confirmed it with our paralegals.  All the lawyers

 3   were shaking their heads as soon as we heard there

 4   was tape recording.

 5          This witness hasn't been able to listen to

 6   that tape recording, and would have been provided

 7   with a copy of it in preparation for his testimony.

 8   None of that has happened.  And we need to find out,

 9   I guess, why that hasn't happened.

10          MR. BECK:  I don't disagree with that.

11          Last night, when I heard Mr. Garcia's

12   testimony, what I did was I called Special Agent

13   Lance Roundy.  He wasn't sure it was recorded.  He

14   thought he'd recorded some.  And I told him to go

15   back, check his files, dig to the bottom of it and

16   see if there was a recording for this.

17          This morning he called Ms. Armijo, I think

18   probably right around 8:00 a.m., told her he had

19   found a recording and that this conversation was

20   recorded.  So I've asked him to produce that to us as

21   soon as possible.

22          THE COURT:  Let me do this:  Let me admit

23   2A for purposes of this hearing.  If there are other

24   problems with it being admissible, then I can sort

25   that out.  And if there is some either misconduct or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7629

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7630

```
 1   something I have to deal with, I can deal with that.
 2   But for purposes of this hearing, of getting this
 3   hearing so I can figure out whether this material is
 4   going to be admissible, I'll admit 2A.  And then
 5   we'll figure out what to do with any late production
 6   at the appropriate time.
 7            Mr. Beck.
 8        Q.   Mr. Garcia, I'm showing you what's been
 9   admitted as Government's Exhibit 2 now.  This is the
10   FBI report that I went over with you a little bit
11   yesterday.  And on page 5 of Government's Exhibit 2,
12   you'll see that at the bottom there it was drafted by
13   Lance Roundy, FBI Special Agent.  I'm going to go
14   ahead and use my copy, my highlighted copy.
15            You are -- or at least in 2013, you were a
16   validated member of the Syndicato de Nuevo Mexico
17   Prison Gang, right?
18            MR. BURKE:  Objection --
19        A.   No.
20            MR. BURKE:  -- asked and answered.  We went
21   over this yesterday.
22        A.   No.
23            MR. BURKE:  It shouldn't be pretended that
24   this is the first time he's seen the statement.  Mr.
25   Beck took the statement and showed it to Mr. Garcia
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7630

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9631

1   yesterday several times.  Objection.

2          THE COURT:  Overruled.

3      Q.   And so it sounds like you said "No"?

4      A.   That what?  That I was a what, a member of

5   what?

6      Q.   That you were a validated member of the

7   Syndicato de Nuevo Mexico.

8      A.   No, I'm not a member of Syndicato de Nuevo

9   Mexico.

10     Q.   And again, I know it was late last night.

11  I know you were newly appointed counsel.  But you

12  have spoken with your attorney about testifying under

13  oath, right?

14     A.   Yes.

15         MR. CASTLE:  Your Honor, I'd ask that

16  question be stricken.  Asking a person on the stand

17  what they talked to their lawyer about is improper.

18  It violates attorney-client privilege.  And it's

19  actually threatening.

20         THE COURT:  Well --

21         MR. BURKE:  Join the objection, Your Honor.

22         THE COURT:  Overruled.  I think taking the

23  oath is the first portion of competency.  So the

24  witness needs to be aware of the severity of the

25  situation, that he's under oath.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Now, again, this report, at page 2 of 5

2   here, at the bottom it starts out, "In November 2012,

3   you had a conversation with SNM Gang member Edward

4   Troup in the backyard off of" -- somewhere in

5   Albuquerque.  Did you have that conversation with Mr.

6   Troup in 2012?

7      A.   I don't remember.

8      Q.   Okay.  Was Mr. Troup in prison or on the

9   streets in 2012?

10      A.   Like I said before, me and him don't get

11   along.  I don't remember.

12      Q.   So you and Mr. Troup don't -- I'd forgotten

13   that -- you and Mr. Troup don't get along?

14      A.   No.

15      Q.   Okay.  And again, we went over this

16   yesterday, where it says -- and I just wanted to

17   refresh your memory, because if you don't remember,

18   it says that, "Troup stated that during one of the

19   murders he held Fred Dawg's legs while Wino strangled

20   him to death with a drawstring from a laundry bag."

21      A.   I don't remember saying that.

22      Q.   "Both Troup and Alonso disposed of the

23   drawstring and then took off their clothes and tore

24   up the evidence in an attempt to hide their part in

25   the murder," right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 7632

1       A.   Like I said, I don't remember saying any of

2   that.

3       Q.   Okay.  But it's your testimony -- you said

4   this morning that Mr. Troup had never admitted to you

5   participation in a murder, right?

6       A.   Right.

7            MR. BECK:  Your Honor, the United States --

8       Q.   Well -- and remind me, but yesterday you

9   said that you didn't even know who Wino is, right?

10      A.   Who?

11      Q.   Wino.

12      A.   No.

13      Q.   Right.

14           MR. BECK:  Your Honor, the United States

15   moves to admit as Government's Exhibit 3 in this the

16   plea agreement of Javier Alonso, a/k/a Wino.

17           THE COURT:  Any objection?

18           MR. BURKE:  What's the purpose of this

19   exhibit?  May I inquire?

20           MR. BECK:  Sure.  The purpose of this

21   exhibit is -- it's relevance to the accuracy of that

22   statement that he claims Mr. Troup did not give him.

23           MR. BURKE:  You're going to impeach --

24   excuse me, Your Honor, I think it's improper to

25   impeach Mr. Garcia with a statement drafted by the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7633

```
 1   Government for Mr. Alonso.
 2           THE COURT:  Well, I'm not sure he's going
 3   to impeach.  He may try to, but I'm not sure he's
 4   going to impeach.  But it sounds like that plea
 5   agreement would be somewhat relevant to me
 6   understanding what Wino's role in this is.  So I'll
 7   admit Government's Exhibit 3.
 8       Q.   Mr. Garcia, I'm now showing you what's been
 9   admitted as Government's Exhibit 3 here.  Have you
10   seen a federal plea agreement before in a federal
11   case?
12       A.   No.
13       Q.   You've never seen a federal plea agreement
14   before?
15       A.   Well, I plea bargained.  But I never seen
16   one like that.
17       Q.   Fair enough.  Do you see up there where it
18   says, "Javier Alonso, a/k/a Wino"?
19       A.   Yes.
20       Q.   And do you know that Criminal No.
21   15-CR-4268 JB is the case number for the case that
22   you're testifying in today?
23       A.   I don't understand.
24       Q.   Sure.  My question to you was do you know
25   that Criminal No. 15-CR-4268 JB is the criminal case
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7634

```
 1    number for the case that you're testifying in right
 2    now?
 3         A.   I still don't understand.
 4         Q.   Okay.  Fair enough.
 5              MR. CASTLE:  Your Honor, I'll pose a
 6    different objection.  I believe this actually
 7    violates the concept of sequestration, which says
 8    that you don't let one witness know what another
 9    witness' testimony is going to be.  What this is is
10    the testimony of Mr. Alonso but just in written form.
11    So it's essentially a violation of sequestration.  We
12    invoked the rule early on in these proceedings, and
13    it was granted.  So I think what they're doing here
14    is essentially using -- indirectly violating that.
15              THE COURT:  Well, we're a long ways from
16    the trial.  And I don't know if Wino is going to
17    testify in this hearing, so it's a little bit complex
18    to try to sort out and allow people to ask people
19    about other people's testimony to try to determine
20    whether this evidence is admissible.  Overruled.
21         Q.   I'm directing your attention to page 5 of
22    Government's Exhibit 3 here.  Do you see this
23    paragraph that I pointed to here that begins, "In
24    2007, I was an active member of the SNM," do you see
25    that paragraph?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yeah.
 2        Q.    Do you see where it says that, "I aided and
 3   abetted Edward Troup, a/k/a Huero Troup" -- and I'm
 4   going to skip to -- "others in the murder of the
 5   person"-- and I'm down here for you -- "in the murder
 6   of the person identified in the second superseding
 7   indictment as FS, who was an inmate at the Southern
 8   New Mexico Correctional Facility in Dona Ana County."
 9   Do you see that sentence?
10        A.    Um-hum.
11        Q.    Do you know that that refers to Freddie
12   Sanchez, or who I think you referred to as Fred Dawg
13   Sanchez?
14        A.    I don't know --
15              MR. BURKE:  Your Honor, I'm going to
16   object.
17        A.    I don't know him.
18              MR. BURKE:  He's impeaching Mr. Garcia with
19   a statement that they crafted.
20              THE COURT:  I don't see the impeachment,
21   Mr. Burke.  Overruled.
22        Q.    So do you know if that corresponds with
23   what at least this report says that Mr. Troup told
24   you about a strangling to death in the Southern New
25   Mexico Correctional Facility in Las Cruces?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       A.   You hear all kinds of rumors.  There were
 2  so many rumors back then.  I don't --
 3       Q.   Okay.  We'll come back to that.  Do you
 4  see -- I'm going to skip a paragraph -- or excuse
 5  me -- a sentence, and start with the sentence that
 6  says, "On June 17, 2007."
 7       A.   Okay.
 8       Q.   See where it says, "SNM member Troup and I
 9  killed FS in his cell"?
10       A.   Yes.
11       Q.   Do you see that?  And does that correspond
12  with what this report says that Mr. Troup told you
13  that he held Fred Dawg's legs while Wino strangled
14  him to death with the drawstring from a laundry bag"?
15       A.   No.
16       Q.   Okay.  That doesn't correspond?
17       A.   I don't see the --
18       Q.   Okay.  Fair enough.
19            MR. BECK:  And Your Honor, I'm going to
20  move to admit as Government's Exhibit 4, an FBI 302
21  report dated 9/7/2017, which was an FBI debrief of
22  Javier Alonso, a/k/a Wino, on August 28, 2017.
23            THE COURT:  Any objection?
24            MR. BURKE:  Same objection, Your Honor.
25            THE COURT:  All right.  Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9638

```
 1   Exhibit 4 will be admitted into evidence.
 2        Q.   All right.  Mr. Garcia, I'm now showing you
 3   what's been admitted as Government's Exhibit 4.  Do
 4   you see at the top of that document it says, "On
 5   August 2, 2017 and August 28, 2017 Javier Alonso,
 6   a/k/a Wino, participated in debriefing sessions"?
 7        A.   Yes.
 8        Q.   And I'm going to take you first to page 5
 9   of this document.  And right under where it says,
10   "Fred Sanchez homicide," I'll read that aloud for you
11   so you can follow along, "Alonso was incarcerated at
12   the Southern New Mexico Correctional Facility, SNMCF,
13   blue pod when Kyle Dwyer arrived with paperwork on
14   Sanchez.  The paperwork was passed around and Alonso
15   read it."  Do you see that?
16        A.   Yes.
17        Q.   Did you see that paragraph?  At least the
18   first part of that, did you follow along with that?
19        A.   Like I said, I'm illiterate so --
20        Q.   That's fine.
21        A.   -- you gotta come and check -- I don't know
22   what you mean.
23        Q.   That's fine.
24        A.   I can't read.
25        Q.   So I'm taking you back now to Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7638

```
 1    Exhibit 2, which is your FBI interview on May 9 of
 2    2013.  And it says that, "At this 2012 barbecue Troup
 3    also mentioned that the murder of Fred Dawg was an
 4    order from headquarters to which you interpreted the
 5    term 'headquarters' to mean the main New Mexico
 6    prison facility in Santa Fe, New Mexico, where the
 7    majority of the SNM leadership was incarcerated."  Do
 8    you see that?
 9         A.   Yes.
10         Q.   And so does that correspond with paperwork
11    being brought down to the Southern New Mexico
12    Correctional Facility by Kyle Dwyer?
13         A.   I don't --
14              MR. BURKE:  Your Honor, I'm going to
15    object --
16         A.   -- know, sir.
17              MR. BURKE:  It's improper to ask this
18    witness whether two different pieces of paper --
19         A.   Yeah, I don't know what you're talking
20    about.
21              THE COURT:  Hold on.  While the attorney is
22    making an objection, you --
23         A.   Sorry about that.
24              THE COURT:  -- be quiet until I hear the
25    objection.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8640

1           MR. BURKE:  Your Honor, I think it's

2    improper to ask this witness whether two different

3    pieces of paper correspond with each other.  Your

4    Honor can make that decision.

5           THE COURT:  Well, he can also answer the

6    question.  Overruled, Mr. Burke.

7       Q.   Do you remember my question?

8       A.   Something about orders from headquarters

9    and the paperwork.  I don't know.  I don't know.

10      Q.   Sure.  I'll ask you again.  So does this

11   sentence in your debrief, or your interview in 2013,

12   that Troup also mentioned that the murder of Fred

13   Dawg was an order from headquarters to which you

14   interpreted the term "headquarters" to mean the main

15   New Mexico prison facility in Santa Fe, New Mexico,

16   where the majority of the SNM leadership was

17   incarcerated, my question to you is:  Does that

18   sentence correspond with the sentence that "Kyle

19   Dwyer brought down the paperwork to the Southern New

20   Mexico Correctional Facility"?

21      A.   No.

22      Q.   In your opinion it doesn't?

23      A.   In my opinion, no.

24      Q.   Okay.  And then the last sentence in this

25   paragraph where it says Troup told you that Fred Dawg

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 19641

1   provided information on a murder, which was against

2   the SNM bylaws, and that that was the cause for his

3   murder.  Do you see that sentence in your interview?

4   It's this last highlighted sentence at the bottom.

5        A.   I see it.  No, I don't remember.

6        Q.   And then I'm going to take you back to

7   Government's Exhibit 4.  And this is the same

8   paragraph I was just reading about Mr. Alonso's

9   debrief where it says, "The paperwork consisted of

10  four to five pages from a police report or court

11  document, and only a few sentences pertained to

12  Sanchez.  Alonso believed that Sanchez had snitched

13  on a female from Roswell and thought the paperwork

14  was pretty weak."  Does that correspond with Fred

15  Dawg providing information which is against the SNM

16  bylaws?

17       A.   I don't know.  I'm not an SNM member.  I

18  don't know what you're talking about.

19       Q.   Okay.  And so my question to you is:  Does

20  that correspond with Fred Dawg providing information

21  on a murder which was against the SNM bylaws, and

22  that was the cause for his murder?

23       A.   I'm sorry, you lost me.  Who is Fred Dawg?

24  You're losing me on all these --

25       Q.   I'm asking -- I'm asking, here in your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7641

1    report -- I'm not asking who is Fred Dawg.

2         A.    Okay, sorry.

3         Q.    I'm asking, in your report from April 13,

4    it says that you told Special Agent Lance Roundy that

5    Troup told you that Fred Dawg provided information on

6    a murder which was against the SNM bylaws, and that

7    was the cause for his murder.

8              MR. BENJAMIN:  Judge, objection.

9              MR. CASTLE:  Objection.

10             THE COURT:  Overruled.

11             (Unintelligible cross-talk by attorneys.)

12             THE COURT:  You're going to get a chance to

13   do your redirect.  You asked for this hearing to

14   explain this piece of evidence that I guess you're

15   either wanting to get in, or not get in.  You spend

16   all of your time objecting to things that you know

17   are admissible in a 104 hearing.  So let me hear it

18   and figure out whether this is going to be admissible

19   or not admissible.

20        Q.    So my question to you was:  Does that

21   telling on a murder, which says that it was the

22   reason for Mr. Sanchez' murder, correspond with

23   paperwork consisting of four to five pages from a

24   police report or court document, with a few sentences

25   pertaining to Sanchez, which Alonso believes Sanchez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7642

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7643

```
 1   had snitched on a female from Roswell?
 2        A.   I don't remember.  I don't remember none of
 3   that.
 4        Q.   Now, in this 302 report, your interview in
 5   2013, I read this last sentence that's highlighted at
 6   the top to you, where it says, "Both Troup and Alonso
 7   disposed of the drawstring and then took off their
 8   clothes and tore up the evidence in an attempt to
 9   hide their part in the murder."  Do you see that
10   sentence there?
11        A.   Yes.
12        Q.   Okay.  Now, I'm going to direct your
13   attention again to Government's Exhibit 4, which is
14   Mr. Javier Alonso, a/k/a Wino's, debrief, at page 6.
15   And I'm going to direct your attention -- well, I
16   guess we can start a little bit further up here.  And
17   says that, "Alonso entered Sanchez' cell and looked
18   out the window.  Sanchez turned around.  Alonso
19   pulled the cord out and placed it over Sanchez' head.
20   Troup held Sanchez around the torso while Alonso
21   strangled him.  Alonso cut his shin during the
22   attack."
23             Now, I'm going to skip down here to the
24   paragraph where it says, "Alonso slammed Sanchez on
25   the ground and 'busted his face.'  Alonso and Troup
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7643

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22644

1    checked Sanchez to ensure he was dead by looking for

2    signs of breathing and placing a mirror underneath

3    Sanchez' nose.  Alonso thought Sanchez defecated on

4    himself.  Troup kissed Alonso on the cheek and told

5    him he was proud of him."

6              The next paragraph says, "Alonso flushed

7    the cord down Sanchez' toilet, and he and Troup

8    placed Sanchez on his bunk."  Does that last sentence

9    about Alonso flushed the cord down Sanchez' toilet,

10   and he and Troup placed Sanchez in his bunk

11   correspond with this sentence in your interview that

12   says, "Troup and Alonso disposed of the drawstring

13   and took off their clothes and tore up the evidence

14   in an attempt to hide their part in the murder"?

15        A.   It seems different.

16        Q.   All right.  I want to talk about the next

17   paragraph here in this report.  It says that you

18   stated that "Troup told you about Sanchez' murder in

19   approximately 2008, when you violated your

20   probation/parole and were incarcerated in the New

21   Mexico prison system."  Do you see that sentence

22   there?

23        A.   Yes.

24        Q.   Do you remember us talking about this

25   yesterday?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                             1-800-669-9492
                                                      e-mail: info@litsupport.com



PROFESSIONAL COURT
REPORTING SERVICE

DNM 7644

1        A.   Yes, you were.

2        Q.   And I think it was your testimony that you

3   and Mr. Troup had never been incarcerated together

4   after 2008, right?

5        A.   Not that I remember.

6        Q.   Okay.  Well, I think yesterday you said it

7   was impossible because you'd never been incarcerated

8   together.  Do you remember that?

9        A.   I was always at the North, incarcerated,

10  you know what I mean?  But at the North you're in the

11  same prison, different cells, locked down 24 hours a

12  day.

13       Q.   Sure.

14       A.   So you've got to make yourself -- let me

15  know what you mean by that.

16       Q.   Let me ask this question:  In the North,

17  when you're incarcerated, you still go out to the

18  prison yard, right?

19       A.   Yes.

20       Q.   Fair enough.  At any time after 2008, after

21  you violated parole, were you and Edward Troup

22  incarcerated together at the North?

23       A.   I was at the North, but I don't know if he

24  was there.

25       Q.   Okay.  And so yesterday -- and so are you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7645

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 24646

```
 1    saying that -- I think yesterday you said this
 2    couldn't have happened.  Are you now saying that Mr.
 3    Troup could have told you about this if you both were
 4    incarcerated at the same time?
 5         A.   Like I said before, he never told me
 6    nothing.  We do not like each other.  I told you that
 7    like about six times, sir, right?  So --
 8         Q.   Sure.  So my question to you is:  If you
 9    were incarcerated together after 2008, did you have
10    this conversation with Mr. Troup?
11         A.   No, I didn't have no conversation with him.
12         Q.   After 2008, if you violated your probation
13    and parole, were you incarcerated with Mr. Troup at
14    the North?
15         A.   No.  I just answered that question.
16         Q.   I'm asking you again.
17         A.   No.  I was at the North.  It was a long
18    time ago.  I don't remember.
19         Q.   Okay.  Fair enough.  Would it help refresh
20    your memory if I showed you yours and Mr. Troup's
21    Offender Physical Location Histories?
22         A.   I don't need to see it because I don't
23    remember.
24         Q.   All right.  Fair enough.
25              MR. BECK:  At this time the United States
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7646

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25 of 647

```
 1   moves to admit Government's Exhibits 5 and 6.
 2   Exhibit 5 will be Edward Troup's Offender Physical
 3   Location History, and 6 will be Mr. Garcia's Offender
 4   Physical Location History.
 5            THE COURT:  Any objection?
 6            MR. CASTLE:  I need to take a look at it
 7   first.
 8            MR. BURKE:  Your Honor, may we approach?
 9            THE COURT:  Yeah, come on up.
10            (The following proceedings were held at the
11   bench.)
12            MR. BURKE:  Your Honor, I asked to approach
13   as an officer of the Court.  The first time I ever
14   laid eyes on Daffy Garcia was yesterday.  I've never
15   spoken to him, and I don't think most of the rest of
16   us have.
17            THE COURT:  Who is that?
18            MR. BURKE:  The witness.  I'm sorry, his
19   nickname is Daffy.  Just as an officer of the Court,
20   what's going on here is just to set up the perjury.
21   And I find it offensive.  And I know you appointed
22   him a lawyer, but the lawyer is not protecting him.
23            And he needs to listen to the tape that
24   Lance Roundy apparently has, and take a deep breath
25   and be more prepared for Mr. Beck's very aggressive
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7647

```
 1   cross-examination, which I believe is either a setup
 2   for perjury or something along those lines.  And it
 3   is a very aggressive prosecution team.  If Your Honor
 4   is saying that this is appropriate, I certainly
 5   understand and will obey the Court's order.  But I'm
 6   very concerned about Daffy Garcia.  And I really
 7   believe that what's happening here could be an
 8   injustice to him, simply because he didn't do what
 9   the Government wanted.
10           THE COURT:  Well, let's go back to the
11   beginning of this.  Tell me why I'm listening to
12   Mr. Garcia at the beginning?  Why are you offering --
13   you subpoenaed him.  You fought hard.  We got an
14   attorney over y'all's objections.  Y'all did not want
15   him to have an attorney.  So this is striking me a
16   little bit interesting that the defense is now saying
17   let's suspend the hearing so he can get either a
18   better attorney or a more prepared attorney.
19           Hold on.  What are we doing with this guy?
20   I now have gotten to the point where I don't remember
21   why you're trying to call this guy.
22           MR. CASTLE:  Your Honor, I represent Billy
23   Garcia, and the reports indicated that Mr. Garcia --
24   this Mr. Garcia, James Garcia -- had made a statement
25   to law enforcement back in 2008, in which he said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7648

1  that Mr. Troup made a confession to him at a

2  barbecue, and in that confession he implicated my

3  client.

4          THE COURT:  Is this the same statement that

5  Mr. Beck is going over, Mr. Garcia's statement?

6          MR. CASTLE:  No -- well, there is two

7  statements that Mr. Beck is going through.  One is

8  concerning the 2001 murders.  But then the majority

9  of his exam deals with a separate homicide of Mr.

10  Sanchez that happened in 2007, which is Count 3.  But

11  I had no dog in that hunt, and I --

12          THE COURT:  This is Government's Exhibit 1

13  here that we're talking about, that's the interview.

14          MR. CASTLE:  Yes, allegedly Mr. Garcia

15  made -- Mr. Troup made statements to Mr. James Garcia

16  about the homicides during that barbecue.  And I was

17  only asking about the one that involves my client,

18  because that's all I have standing to do.  What I was

19  attempting to -- frankly, what I was wanting --

20  really wanting to apply to James Garcia, what were

21  the circumstances behind Mr. Troup saying that Billy

22  Garcia is behind the murders, whether that was a

23  bragging circumstances, those kinds of things.  When

24  Mr. Garcia took the bench -- or took the witness

25  stand and said he never made that, my questions went

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7649

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 28650

```
 1  from 13 to, like, 6.

 2            THE COURT:  Here's my concern:  Here's my

 3  concern that you asked for a 104, and I still -- now

 4  am trying to remember why, what the evidentiary issue

 5  was that I allowed it to come -- but here's the

 6  problem:  Once he did that, once he said that, then

 7  what you're going to do is say that guy can't take

 8  the stand because then Mr. Beck can't impeach him at

 9  trial, because that would just be statements that

10  he's going to testify to.  And, you know, you sealed

11  off this witness, which calls into question whether I

12  should have allowed a 104 in the first place, which

13  was the Government's position.

14            So now we're in this position of you asking

15  three questions and sealing him off, so the

16  Government is in the position that they've got five

17  pages of his statement and a recording to impeach him

18  with.  They've got to get this guy into some sort of

19  shape so that you're not at trial saying, Judge, they

20  can't put him on the stand because all they're going

21  to do is impeach their own witness.  And all we're

22  going to hear is Mr. Beck testifying.  So it's a very

23  difficult problem.

24            So remind me again of the evidentiary rule

25  that you wanted to call this witness for.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7650

1        MR. CASTLE:  I requested a 104 hearing on

2   whether they could establish that the statement

3   implicating my client was actually a statement

4   against Mr. Troup's interests, against his penal

5   interests at the time that he made it.  That was

6   where I was going.

7        Obviously, this has expanded to something

8   completely different.  But that was where I was

9   going.  But when the witness said he never made that

10  statement --

11       THE COURT:  You're good lawyers, you know

12  what you're going to do with this.  You ask three

13  questions, seal him off, and the Government -- I

14  think I probably ought not to have any more 104

15  hearings.  We'll get in this situation.

16       MR. CASTLE:  I understand.  My objections,

17  which the Court overruled, and after the Court

18  admonished us, there haven't been any further

19  objections.  My objections were all based upon rules

20  of evidence.  The last one was the Government had

21  indicated to Mr. Garcia that it was his report, but

22  it's obviously not his report.  It's Agent Roundy's

23  report.  That was my objection.  I probably won't

24  object too much.  I'm not objecting to the process

25  taking place that the Government is doing.



SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                        **BEAN**                              1-800-669-9492
                        **& ASSOCIATES**, Inc.          e-mail: info@litsupport.com
                        PROFESSIONAL COURT
                        REPORTING SERVICE

DNM 7651

```
 1              THE COURT:  Look, we are where we are.  I
 2   think you've established enough.  This guy has got
 3   serious problems.  I think you've established that.
 4   I agree with Mr. Burke.  I don't want to dig his
 5   grave any deeper than where he is now.  He's got
 6   serious problems.  I don't know what we're going to
 7   do with him at trial, but I don't think I need to see
 8   a guy dying any more this morning.  I think you've
 9   established your point.
10              MR. BECK:  Your Honor, there are a few more
11   things that will tie up his testimony, but they're
12   just documents that I can put in.  I don't need to go
13   over them with him.  I'll seek to admit those, then
14   I'll finish my questioning.
15              MR. BURKE:  Your Honor, may I respond to
16   one thing.  If it's a confession, You're right, I did
17   it, was part of the group.  He says he didn't need a
18   lawyer.  I really thought it would be ten questions,
19   and boom.
20              I've watched Mr. Beck and Ms. Armijo enough
21   to know they would be aggressive.  I just thought we
22   would be in and out of here.  I made a mistake.  He
23   should have had a lawyer from the beginning, and I --
24              THE COURT:  I don't know who is surprised
25   by what he did.  Once he did it, you know, then you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 31

```
 1    know, I could see what you two are going to do with
 2    that, and seal him off and say:  You can't put the
 3    guy on the stand.  You're sitting here with a stack
 4    of evidence.  I don't know what we're going to do
 5    with that.  But I have to give the Government a
 6    little bit of leeway to say, you know:  Did you make
 7    any of these statements?
 8              MR. BURKE:  There was a point at which I
 9    was switching from being Edward's Troup's lawyer -- I
10    never abandoned this -- but I just wondered about the
11    hole being dug.  I just want the Court to know that
12    up here at the bench.
13              MR. CASTLE:  One thing I'd note, when we
14    were at the bench talking about whether Mr. Garcia
15    should have a lawyer, one of the things that was
16    probably persuasive was Ms. Armijo's statement that
17    Mr. Garcia is all over the place; that he has changed
18    his testimony from time to time.  We have not had any
19    of that in our discovery, only the one statement of
20    they knew -- I think the Government was less
21    surprised that apparently he's all over the place
22    than maybe it appears to be.
23              MR. BECK:  And, Your Honor, I will say that
24    I read over a 3-inch binder full of Bates numbered
25    discovery of Mr. Garcia's statements last night.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7653

```
 1              MR. CASTLE:  Not implicating my client is
 2    what I'm talking about.
 3              THE COURT:  Well, I don't know what we're
 4    going to do with him.  But he has -- he potentially
 5    has dug a deep hole for himself this morning.  And I
 6    think we better stop it.  And so --
 7              MR. CASTLE:  That goes as well for
 8    redirect?
 9              THE COURT:  Well, I still guess I've got to
10    deal with this, you know, I think statement against
11    interests issue.
12              MR. BECK:  Probably do it by argument on
13    the motions.
14              THE COURT:  I'm not going to cut you off.
15    I wasn't cutting Mr. Beck off, so I don't want to cut
16    y'all off.  Do what you want.  But I'm going to tell
17    the Government to bring it to a close because this is
18    painful to watch.
19              MR. BECK:  Okay.
20              (The following proceedings were held in
21    open court.)
22              THE COURT:  All right.  Mr. Beck.
23              MR. BECK:  Your Honor, I'm not sure I ever
24    got a ruling on my motion to admit Government's
25    Exhibit 5 and 6 for this hearing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7654

1          THE COURT:  Any objection on 5 and 6?

2          MR. CASTLE:  Judge, if I could have just a

3   moment?

4          MR. BECK:  And I'm going to highlight for

5   the Court's attention --

6          MR. CASTLE:  No objection.

7          THE COURT:  Anybody else?  Not hearing any

8   objections, Government's Exhibits 5 and 6 will be

9   admitted into evidence.

10         MR. BECK:  I don't have my glasses on, so I

11  can barely see that.  But Government's Exhibit --

12  I'll make it a little better for everyone here --

13  Government's Exhibit 5 is Edward Troup's Offender

14  Physical Location History.  Government's Exhibit 6 is

15  Mr. Garcia's Offender Physical Location History.

16         And what I want to highlight for the Court

17  is that in 2009, there was an intake, which means

18  that Mr. Garcia was brought back into custody.  And

19  then from June 2009, till October 2009, he was housed

20  at the North 1-A pod, cell 102.

21         If you look at Mr. Troup's physical

22  location history from July 9, 2009, till February 18,

23  2010, Mr. Troup was also housed in North 1-A pod

24  facility, C pod 108.

25         MR. CASTLE:  Just a correction.  One was in

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                                FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7655

1    A pod, one was in C pod.

2              THE COURT:  Is that correct, Mr. Beck?

3              MR. BECK:  That's correct.  They were in

4    the same housing unit, just in different pods.  I

5    think the Court is familiar with that from the first

6    hearing, how the pod system works.

7              The United States would move to admit

8    Government's Exhibit 7 first, which is an FBI 302

9    dated 8/30/2011, Bates numbered DeLeon 15650?

10             THE COURT:  All right.  Are these being

11   offered in lieu of further testimony?

12             MR. BECK:  Yes, Your Honor.

13             THE COURT:  All right.  Any objection?

14             MR. BURKE:  Your Honor, this actually came

15   up when we were talking about bad acts.

16             Lance Roundy went to the Department of

17   Corrections and got a tape.  And this was the last

18   bad act that was listed on the letter.  And I

19   mentioned at that time that we would need to, at some

20   point, listen to the calls to establish a foundation

21   for the speakers.  But I have no objection to -- for

22   the purpose that it's being offered today, but I just

23   wanted to sort of give a heads-up to the Court that

24   at some point we'll have to listen to the calls.

25             THE COURT:  This is on your bad acts?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              MR. BURKE:  Remember, when we turn the

 2    page, the last one.  So no objection for the purposes

 3    of the hearing today, but just to highlight.

 4              THE COURT:  Anyone else?  All right.  Then

 5    Government's Exhibit 7 will be admitted for this

 6    hearing.

 7              MR. BECK:  And Government's Exhibit 7 is a

 8    302 regarding a taped conversation between an

 9    individual known as Daffy and an inmate known as

10    Edward Huero Troup.  And is says that Daffy is

11    identified as Syndicato de Nuevo Mexico Gang member,

12    James Garcia.

13              The Government moves to admit Government's

14    Exhibit 8, which is an FBI 302, Bates numbered 15647

15    through 15648.  And then there is a rough report of

16    the same matter, which is Bates No. 2694 and 2695.

17              THE COURT:  That's 8?

18              MR. BECK:  Yes, Your Honor.

19              THE COURT:  All right.  Mr. Burke?

20              MR. BURKE:  Same objection.  And to explain

21    one of the reasons we're making that objection, Your

22    Honor, if you look at the first sentence of the third

23    full paragraph, "Troup told Garcia that his, Troup's

24    daughter, was dating an individual who was

25    disrespecting her."  Edward Troup doesn't have a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7657

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36 7658

1   daughter, now -- so that's why I was curious about

2   the foundation.  And at some point we'll have to

3   listen to those calls.

4           THE COURT:  So for the limited purpose of

5   this hearing, no objection?

6           MR. BURKE:  Exactly so.

7           THE COURT:  All right.  Understanding there

8   may be other issues with it, at least in this hearing

9   we'll admit it.  So Government's Exhibit 8 will be

10  admitted into evidence.

11          MR. BECK:  And then, Your Honor, just out

12  of an abundance of caution, to establish foundation,

13  I'm going to mark here as Government's Exhibit 2C,

14  which I will ask the Court to file under seal.  It is

15  a redacted -- excuse me, it is an unredacted copy of

16  2A.

17          THE COURT:  Remind me.  2A was the

18  transcript --

19          MR. BECK:  Exhibit 2 is the redacted

20  report, where the names and date of birth, the

21  identifying information, is redacted from who the

22  person interviewed was.

23          THE COURT:  And this is a transcript of the

24  interview that is reflected in the 302 that's

25  Government's Exhibit 1?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7658

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 37659

```
 1                 MR. BECK:  Right.

 2                 THE COURT:  All right.  Any objection?

 3                 MR. BURKE:  No objection.

 4                 THE COURT:  All right.  So Government's

 5      Exhibit -- is this 8?

 6                 MR. BECK:  This is Exhibit 2C.

 7                 THE COURT:  Okay.  This will be 2C.

 8                 MR. BECK:  Right.  As I said, the United

 9      States would file that under seal.

10                 THE COURT:  All right.  It will be admitted

11      into evidence.

12                 MR. BECK:  Then, finally, Government's

13      Exhibit 9, the United States will move to admit and

14      file under seal Government's Exhibit 9, which is --

15      and I don't have more copies here.  I didn't expect

16      to do this.  But it is a presentence investigation

17      report from Criminal No. 13-CR-02729-001 RB, United

18      States of America versus James Johnny Garcia.  And it

19      is unredacted because it has personal information, so

20      the United States is moving to file that under seal.

21                 THE COURT:  Any objection?

22                 MR. BURKE:  No objection, Your Honor.

23                 THE COURT:  Anybody else?  Not hearing any,

24      Government's Exhibit 9 will be admitted into

25      evidence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7659

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7660

```
1              MR. CASTLE:  Your Honor, I don't really
2    have an objection, but this is the kind of
3    presentence report that we haven't gotten in
4    discovery of the Government's witnesses, but
5    apparently, they can access it when necessary.  So at
6    the break I'm going to ask that they make that effort
7    with regard to all their witnesses.
8              THE COURT:  Presentence reports?
9              MR. CASTLE:  Yes.
10             MR. BECK:  I don't know how we got that
11   one, but I will find out and make the same endeavors
12   for other witnesses.
13             THE COURT:  All witnesses?
14             MR. BECK:  Yes, I'm happy to do that.
15             THE COURT:  What was 9?  Whose PSR was
16   that?
17             MR. BECK:  It's Mr. Garcia's PSR from his
18   2013 federal case down here in Las Cruces.  Excuse
19   me, James Garcia.
20             With that, Your Honor, no further
21   questions.
22             THE COURT:  All right.  Thank you, Mr.
23   Beck.
24             Mr. Castle?
25             MR. CASTLE:  I have no further questions,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7660

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 39661

 1    Your Honor.

 2            THE COURT:  All right.  Mr. Burke?

 3            MR. BURKE:  No questions.

 4            THE COURT:  Anybody else have any questions

 5    of Mr. Garcia?

 6            All right.  Before I excuse Mr. Garcia, let

 7    me just make sure the statement that I'm looking at

 8    is located in Exhibit 1; is that correct, Mr. Castle?

 9    That's where it's located?

10            MR. CASTLE:  Yes.

11            THE COURT:  And your briefing on this is

12    located where?

13            MR. CASTLE:  It's 1909.

14            THE COURT:  1909.  From a format

15    standpoint, you know, I'm working on the chart for

16    the James hearings.  I may just put another chart

17    separate apart for these evidentiary -- additional

18    evidentiary issues, just sort of --

19            MR. BECK:  And --

20            MR. CASTLE:  Your Honor, there are several

21    defendants who filed nearly identical --

22            THE COURT:  The targeted ones?

23            MR. CASTLE:  Yes.  If the Court would like,

24    we can have a paralegal prepare that chart with all

25    the different motions, with the statement and the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 40662

```
1   motion that it belongs to, and a space next to it, if
2   the Court --
3           THE COURT:  This would be the additional
4   statements that you need ruling on?
5           MR. CASTLE:  Yes, non James.
6           THE COURT:  What is the total number of
7   those?  I had a sense it was fairly small.  Am I
8   fooling myself, or is it more?
9           MR. CASTLE:  I think for us it was five, I
10  think.
11          MR. BECK:  I think it's a small universe.
12  I think Mr. Castle's 1909 doc does a good job of
13  laying out those.
14          THE COURT:  Let me think about it a little
15  bit before you do anything.  I may ask for it, I may
16  not.
17          MR. BECK:  And I think this is probably
18  just the way these hearings have gone, there has been
19  some confusion.  The report with the statements that
20  you're looking at is Government's Exhibit 2.  So
21  Government's Exhibit 1 doesn't exist for this
22  hearing.  So there is no Government's Exhibit 1 yet.
23  So the statements that you're looking in what is --
24          THE COURT:  The 302 that you put up there?
25          MR. BECK:  That's Government's Exhibit 2,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7662

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 41 7663

 1   right.

 2              THE COURT:  So 2; 2A is the transcript; 2B

 3   is the recording; and then 2C is the unredacted

 4   transcript?

 5              MR. BECK:  No.  I think I mismarked them.

 6   And I can mark exhibit -- there is no transcript.

 7   There is the report which is 2; there is the

 8   recording which we'll supplement as 2A; and then I

 9   just marked the sealed document.  And that was my

10   fault -- I'm sorry, Ms. Bevel -- as 2C.  I can change

11   that to 2B if we would like.

12              THE COURT:  So for Mr. Castle's statement,

13   I need to look at 2?

14              MR. BECK:  2.

15              THE COURT:  All right.  I'm going to take

16   you up, Mr. Castle.  Why don't you prepare that

17   chart, and if you'd just pull everybody's together.

18   And if I understand what we're doing then, I've got

19   the James statements that I need to rule on, and I've

20   got this cluster of five-plus statements that I need

21   to rule on.  And then coming out of this week, those

22   are the statements that y'all need some rulings and

23   guidance on, right?

24              MR. CASTLE:  That's correct, Your Honor.

25              THE COURT:  Anything else?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7663

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 42 7664

```
 1              MR. BECK:  I think just to note that our
 2     pleading, which would be directed at these
 3     statements --
 4              THE COURT:  This would be the one you filed
 5     early this week or sometime over the weekend --
 6              MR. BECK:  Yes.
 7              THE COURT:  -- on statements against
 8     interests you'd want me to consider at the same time?
 9              MR. BECK:  That's right, Your Honor.
10              THE COURT:  All right.
11              All right.  Mr. Garcia, you may step down.
12     Is there any reason that Mr. Garcia cannot be excused
13     from the proceedings?  Mr. Castle?  Mr. Burke?
14              MR. CASTLE:  No, Your Honor.
15              MR. BURKE:  No, Your Honor.
16              THE COURT:  Mr. Beck?
17              MR. BECK:  No, Your Honor.
18              THE COURT:  All right.  You are excused
19     from the proceedings.  Thank you for your testimony.
20              Okay.  All right.  Are we still on what I'm
21     calling 1292, which I guess is one of the old
22     motions, but we're using it a bit as a placeholder
23     here to get some additional statements in either
24     James or otherwise?
25              Mr. Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7664

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43

```
 1              MR. CASTLE:  Yes, we were going to take the
 2     telephone testimony of those two --
 3              THE COURT:  Oklahoma people?
 4              MR. CASTLE:  Yes, exactly, and it just
 5     takes a few minutes to set it up.
 6              THE COURT:  Are they calling in?  Tell them
 7     to call the Meet Me conference line.  Unless I'm
 8     saying something I shouldn't, it seems to me that's
 9     the way to do it.  Tell them to call -- that number
10     is, Ms. Bevel?
11              THE CLERK:  (505) 348-2041.
12              THE COURT:  That's mine up in Albuquerque?
13     Mine here?
14              THE CLERK:  They're the same.
15              THE COURT:  And I read their motion last
16     night or here recently, but remind me again, this is
17     testimony for what motion and what purpose?
18              MR. CASTLE:  It's for the motion to
19     dismiss.
20              THE COURT:  Motion to dismiss.
21              MR. CASTLE:  Okay.
22              THE COURT:  Who were these two people?  Are
23     both of them corrections officers that got married?
24              MR. CASTLE:  Yes, they were STG officers
25     who found love at work.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7665

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 44 7666

1          THE COURT:  It will probably be quicker for

2    you to give me that motion, which I think we already

3    resolved.  But what's their names, again?

4          MR. CASTLE:  Jim Moore will be the first.

5          THE COURT:  Cheryl Moore?

6          MR. CASTLE:  No, Cheryl Lackey.

7    L-A-C-K-E-Y.

8          Your Honor, it's going to be a few minutes

9    because the exhibits that they're going to look at

10   are on their email because we sent them that way, and

11   that's the same line they have to access to make the

12   phone call.  So they're going to take a minute or two

13   to be on the internet.

14         THE COURT:  Okay.  Do you want to wait for

15   them, or do you want to go to something else and come

16   back to them?  What do you prefer?

17         MR. CASTLE:  I think we should wait for

18   them, because we have another witness who has an

19   attorney that's coming at 10:00, so we're going to

20   try to squeeze these people in beforehand.  These are

21   short witnesses.

22         THE COURT:  All right.

23         MR. GRANBERG:  Your Honor, while we're

24   here, maybe we might be able to squeeze in a short

25   hearing on Mr. Chavez' Bad Acts.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    THE COURT:  All right.  Any objection to
 2       doing that?  Is that all right from the Government's
 3       standpoint?
 4                    MS. ARMIJO:  Yes, Your Honor, I just have
 5       to find where -- I'm having computer issues, the
 6       email I sent him on what the last ones were.
 7                    THE COURT:  Any objection to that, Mr.
 8       Castle?
 9                    MR. CASTLE:  No objection.
10                    THE COURT:  Let me see if I can reconstruct
11       what I did with your motion there.
12                    MR. GRANBERG:  It was document 1531.
13                    THE COURT:  All right.  I think I have it
14       in front of me.  What I don't think I have, though,
15       is the Government's letter.  I don't think it was
16       attached.  So -- oh, here it is.
17                    MS. ARMIJO:  We may have some extra copies.
18                    THE COURT:  I got it.  I found it.
19                    MR. GRANBERG:  And I believe the Government
20       were going to amend their letter.
21                    MS. ARMIJO:  Yes, Your Honor, I believe --
22       we met yesterday and we narrowed it down to six
23       incidents plus some additional ones.  So I will
24       send -- I sent that in an email just because I'm
25       having difficulties with my laptop here in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7667

1    courtroom, but I was able to send an email updating

2    the list.  So I believe Mr. Granberg has what exactly

3    it is that we would be seeking.

4              THE COURT:  Okay.  Tell me, Mr. Granberg,

5    just go through them here on the letter that you

6    attached, and tell me which ones the Government has

7    taken off the table, which are still in.

8              MR. GRANBERG:  Your Honor, the Government

9    took most of them off the table.

10             THE COURT:  Okay.

11             MR. GRANBERG:  I think it would be better

12   to tell you which ones are still on the table.

13             THE COURT:  Okay.

14             MR. GRANBERG:  It would be on page 2 of the

15   letter.

16             THE COURT:  So the first page is totally

17   off?

18             MR. GRANBERG:  The first page is totally

19   off.  Page 2 of the letter, "On or about August 13,

20   2000," is the first paragraph.  That's still in.

21             THE COURT:  August 13.  So everything above

22   that is out?

23             MR. GRANBERG:  Everything above that is

24   out, Your Honor.

25             The next paragraph, "On or about September

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7668

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 47

    1    13," is still in.

    2            The next paragraph, "On or about October

    3    8," is still in.

    4            The next paragraph, "On or about October

    5    15," is still in.

    6            The next paragraph, "On or about December

    7    21," is still in.  "On or about October 25, 2001,"

    8    still in.  "On or about" --

    9            MS. ARMIJO:  Not the 25th.

   10            MR. GRANBERG:  Not the 25th.  Okay.

   11            THE COURT:  October 25th is out?

   12            MR. GRANBERG:  Okay.  And "On or about

   13    March 17, 2006," is still in.  And I believe the date

   14    is January 2.

   15            MS. ARMIJO:  Third?

   16            MR. GRANBERG:  January 3, 2018, is a new

   17    amended paragraph that the Government was going to

   18    allege.  Does that sound right?

   19            MS. ARMIJO:  This one?

   20            MR. GRANBERG:  I thought it was the shank.

   21            MS. ARMIJO:  Oh, yeah.  Those are separate.

   22    Yeah.

   23            MR. GRANBERG:  Right.  So those are going

   24    to be --

   25            MS. ARMIJO:  On the letter, it is January

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7669

1    3, 2012.  It is the second-to-the-last entry on the

2    third page.

3              THE COURT:  So there is not a new entry of

4    January 3, 2018.

5              MR. GRANBERG:  No, Your Honor, not on

6    January 3.  I believe there is going to be a new

7    allegation.

8              MS. ARMIJO:  So the new allegations include

9    three different activities.  And so we would have

10   testimony that while he was -- Mr. Chavez was in

11   Torrance, he was tattooing inmates, including Timothy

12   Martinez, giving him his S for earning his Huesos.

13   So there would be that.

14             There would also be the fact that the

15   incident involving his new charge -- that there is a

16   complaint on -- regarding the Suboxone.  It's a

17   conspiracy to distribute -- I'll have to go look to

18   see exactly what the charge is, but it's an incident

19   that involved him getting a new attorney.

20             THE COURT:  Oh, yeah.

21             MS. ARMIJO:  And Suboxone.  And then we

22   also have recently, within the last two weeks, even

23   less, maybe, where he was found to be in possession

24   of a shank at this facility.

25             So those would be the three new incidents



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7670

1    that I informed Mr. Granberg about that we would be

2    seeking to get into.

3            And I believe, with that, we have kind of

4    narrowed it down to activities while he was in the

5    custody of New Mexico Corrections or with the U.S.

6    Marshals, and most of them are drug-related, with the

7    exception of the September 13, 2013, incident which

8    is an assault that he committed with another SNM Gang

9    member.

10           MR. GRANBERG:  So Your Honor --

11           THE COURT:  Let me make sure, though, that

12   I understand on this letter.  We crossed out the

13   incident on October 25, 2001; correct, Ms. Armijo?

14           MS. ARMIJO:  Yes.  And also, I don't know

15   if he said it because I was trying to check.  We also

16   crossed out December 21, 2000.

17           MR. GRANBERG:  That is crossed out.

18           MS. ARMIJO:  That is crossed out, as well.

19           THE COURT:  Give me -- oh, the one right

20   above it.

21           MS. ARMIJO:  Yes.  So on this page we

22   should have five incidents.

23           THE COURT:  Okay.  That's August 13, 2000;

24   September 13, 2000; October 8, 2000; and October 15,

25   2000.  What's the fifth one on this letter?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7671

```
 1              MS. ARMIJO:  March 17, 2006.

 2              THE COURT:  And then everything below that

 3    is taken out.

 4              MS. ARMIJO:  Correct, Your Honor.  And then

 5    the only other thing is, on the last page is the

 6    January 3, 2012, which I believe you have.

 7              THE COURT:  So everything but January 3 is

 8    out?

 9              MS. ARMIJO:  Correct.

10              THE COURT:  And then we've got these three

11    incidents.

12              MS. ARMIJO:  Correct.

13              THE COURT:  All right.  Are you going to

14    challenge any of those, Mr. Granberg?  Do they look

15    like things that probably are coming in?

16              MR. GRANBERG:  Well, Your Honor, I would

17    challenge the August 13, 2000, allegation, the

18    October 8, 2000, allegation, the October 15, 2000,

19    allegation, the March 17, 2006, allegation, and the

20    January 3rd, 2012, allegation because all my

21    arguments on those allegations are very similar, the

22    same; that being that these allegations relate to

23    possession of drug paraphernalia or possession of

24    drugs or testing positive for drugs.

25              And I would submit to the Court that simply
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7672

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 51673

 1   by virtue of testing positive or possession of

 2   paraphernalia -- or testing positive for drugs is not

 3   in and of itself indicative of the pattern of

 4   behavior associated with the SNM.  I would submit to

 5   the Court that probably half the jail, the inmates in

 6   the jail, are possessing drugs or testing positive

 7   for drugs.  That's not just members of the SNM that

 8   are.  I would submit to the Court that a far greater

 9   percentage of the population also does, as well.  So

10   I would submit to the Court there is not a

11   sufficiently close link or nexus alleging -- linking

12   these bad acts to SNM activity.

13           THE COURT:  Ms. Armijo, I might have to

14   have my memory refreshed on this, but here was what I

15   thought we sort of did in the first trial with some

16   of these.  I may not exactly remember for sure the

17   mechanism, but I thought we agreed that if the

18   defendant wasn't going to challenge the fact that he

19   had used drugs or possessed drugs, then what we would

20   do is not necessarily go act by act, but we would let

21   you do something to establish that, and then it would

22   be unnecessary to just add it one on top of the

23   other.

24           Does anyone remember exactly what we did on

25   this drug issue?  Because there was testimony and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7673

1    there has been testimony either in the hearings or in

2    the trial, people describe SNM different ways, but

3    some of them described it as it's all about drugs,

4    and so to establish either membership or they

5    participate in something that was central to SNM, I

6    was going to allow some evidence, but maybe not

7    everything.  So you see where I'm going, Mr.

8    Granberg?

9            MR. GRANBERG:  Yes, Your Honor.

10           THE COURT:  Could you live with not

11   challenging, pick one or so of these acts, and then

12   we don't have to have them all in; they get a little

13   cumulative at some point.  If you're not going to

14   challenge he doesn't do drugs, there is going to be

15   evidence he does drugs, and we can move on.

16           MR. GRANBERG:  So is the Court saying for

17   me to pick one allegation and the rest are thrown

18   out?

19           THE COURT:  I hadn't gotten that specific,

20   but that might be a good one that --

21           MS. ARMIJO:  And Your Honor, I think you

22   are correct.  I think, in general, the way it worked

23   out in the first trial -- and I think you are

24   correct -- SNM and drugs and controlling it was a

25   very important part of SNM, controlling the drugs in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7674

```
 1    prison, without how much they used drugs.  And I
 2    think the way it generally played out was, we didn't
 3    specifically say, "On this day this person" -- well,
 4    that's because we could have done that a lot, but we
 5    have several cooperators, and I anticipate we will
 6    have in this trial, as well, who will say that
 7    Christopher Chavez -- "Yes, I supplied him with drugs
 8    or I knew he used drugs," and that's the way we took
 9    care of it.
10              THE COURT:  Yeah.
11              MS. ARMIJO:  As long as we're going forward
12    with that, they don't have to prove all these
13    individual acts, as long as that can be the way we go
14    forward.
15              THE COURT:  Could you live with that?  That
16    way, we don't have to go and just establish each one
17    of these for a fairly limited point.
18              MR. GRANBERG:  I could live with that, Your
19    Honor.
20              THE COURT:  So why don't we try to do that,
21    just doing it like we did in the first trial.  You'll
22    have some witness that says Mr. Chavez uses drugs,
23    and then that will come in uncontested and then we
24    won't go act by act here.
25              All right.  So that takes care of the drug
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    ones, which I think is just about everything in the
2    letter, with the exception of the assault, which
3    you're not challenging.  Any challenges to the new
4    three?
5              MR. GRANBERG:  Yes, Your Honor.  In regard
6    to the new three, we would challenge the shank
7    allegation.  And in that particular instance,
8    Mr. Chavez had received a new -- a cell mate in
9    Lordsburg, had been his cell mate for about a month
10   prior to the discovery of the shank.  His cell mate's
11   name was Misha or Mishka or some variation thereof.
12   I'm not entirely sure of his name.
13             His cell mate actually gave the shank to
14   Mr. Chavez, and Mr. Chavez didn't really want it.
15   But on the particular day it was found -- it was
16   found, from what I understand, on a weekend day --
17   Mr. Chavez was transported for some sort of medical
18   procedure and when he came back, his cell mate was
19   gone, Mirnar or Misha, whoever that is; but also, in
20   the interim, while he's out getting his medical
21   evaluation, they find the shank in the cell.
22             So we would argue to the Court that the
23   shank was not Mr. Chavez's and it belonged to his
24   cell mate.  His cell mate just left it in the cell
25   when he was transported out of the cell, and it just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7676

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 55

1   so happened that Mr. Chavez was also out of the cell

2   at the time because he was getting his medical

3   treatment, whatever that may be.

4           THE COURT:  All right.  Your link to SNM

5   activity on this shank?

6           MS. ARMIJO:  Your Honor, I think it's

7   directly related to the charges in this case, because

8   our evidence was that he told a correctional officer

9   that he was actually going to use it on a

10  correctional officer because he didn't want to go

11  down.

12          And I was finding the exact email, but

13  something to the effect of:  He wasn't going to take

14  a plea to 30 years, and he was going to use it on --

15  or 50 years, something like that, and he was going to

16  use it on a correctional officer.  That's what I

17  recall.  The email that I first received about that

18  incident indicated that he had made statements that

19  he was going to use it on a correctional officer.

20  I'm sorry, to a CI; not a correctional officer.  He

21  didn't make the statement to the correctional

22  officer.  He made that statement to a cooperating

23  source.

24          MR. GRANBERG:  And Your Honor, we

25  believe --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7677

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 51 of 678

 1          THE COURT:  Let me ask Ms. Armijo a

 2   question.

 3          Tell me again how that's linked, though, to

 4   this case.  What's the connection between "I'm not

 5   going to take a plea deal" and "I'm going to shank a

 6   corrections officer"?

 7          MS. ARMIJO:  Well, one, the important part

 8   would be shanking a correctional officer.  Because as

 9   we know, the SNM does shank correctional officers.

10   That's one of their signature things that they do.

11   We also know that they bring them to court.  We know

12   that even during the trial, I think Baca was found as

13   to have one in his cell.  And so it would be

14   consistent with SNM activity to always have a shank

15   and carry a shank, which is what we've heard

16   testimony about.  But he did make the statement to a

17   cooperating source about what he was going to do with

18   it.  And I guess that's --

19          THE COURT:  How does shanking an officer

20   help him not take a plea deal?  I guess it looks like

21   it would make his condition worse rather than help

22   him out.

23          MS. ARMIJO:  I would agree that it's a

24   little bit inconsistent or it could be seen as he was

25   not going to take a plea deal; he wanted to do --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7678

1   possibly do suicide by correctional officer.  I'm not

2   really sure.  And I haven't spoken to the cooperating

3   person that made the statement.  But the fact that he

4   does have a shank is relevant, given -- and you may

5   recall there were even shanks found where he was

6   housed in Torrance.  Throughout the pendency of this

7   case, there have been shanks found at the different

8   facilities throughout the time pending with this case

9   with the SNM Gang members, and we have the

10  cooperators talking about the shanks and their

11  possible use.

12          THE COURT:  All right, Mr. Granberg.

13          MR. GRANBERG:  A couple points in response

14  to that, Your Honor.  One, while we do not know

15  definitively, it's our belief that his cell mate

16  Mishka was, in fact, the cooperating source.  And I

17  find it ironic that, one, this cooperating source

18  alleges a statement that Mr. Chavez made saying that

19  he was going to either shank a correctional officer

20  or shank himself, commit suicide, but that this

21  also -- this cooperating source supplied him that

22  same shank.

23          Second, I have not sat through the entire

24  Trial 1, but I don't believe it's alleged that

25  shanking correctional officers is part and parcel of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7679

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 58

```
 1    being an SNM.
 2            THE COURT:  Here's what I do recall of the
 3    testimony either during one of the hearings or at the
 4    trial, was that one of the things that SNM members
 5    did was always have a shank, and always carry a
 6    shank.  And so I guess I think I was fairly liberal
 7    with the Government on shanks in the first trial.  I
 8    guess I'd be inclined to think that that was a little
 9    bit more of a signature thing of the SNM, that you
10    just always had a shank.
11            MR. GRANBERG:  Your Honor, if it is a
12    signature of the SNM, then this would be the first
13    and only bad act of Mr. Chavez having a shank.
14            THE COURT:  Or he got caught.  Might be
15    pretty good at it.
16            MR. GRANBERG:  Mr. Chavez has been in
17    custody quite a bit throughout the years, and it's
18    just ironic that the same cooperating source that
19    alleges the statement to the CO or the suicide is
20    also the same person that we alleged supplied him
21    that shank.
22            THE COURT:  Well, I'll give it some
23    thought, but I think at the present time I'm going to
24    allow that evidence in.
25            (Mr. Solis entered the courtroom.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7680

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 59 of 681

```
 1                    THE COURT:  Anything on the other two?
 2                    MR. GRANBERG:  No, Your Honor.
 3                    THE COURT:  All right.  So anything else,
 4       Mr. Granberg, you need guidance on?
 5                    MR. GRANBERG:  No, Your Honor.
 6                    THE COURT:  I'll give it some thought, but
 7       let's plan on that one coming in.  I'll give it some
 8       thought.
 9                    MR. GRANBERG:  And in reference to the drug
10       use, there would just be one sort of global
11       allegation made as far as the bad act is concerned on
12       that?
13                    THE COURT:  I guess what you do is, at some
14       point you just ask to establish that; correct, Ms.
15       Armijo?
16                    MS. ARMIJO:  Yes, Your Honor.  I think
17       that, like I said, it would be witness testimony
18       about, in general, the SNM.  And then if there's
19       specific cooperators that would say, "Yes, I supplied
20       Mr. Chavez with drugs," or, "I did drugs with
21       Mr. Chavez," that's the testimony that came in in the
22       first trial, and which I would envision coming in in
23       the second trial.
24                    THE COURT:  There is going to be a lot of
25       evidence -- if you hear it twice and you think it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7681

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 60

```
 1    getting cumulative, alert me, and I'll try to have my
 2    antennas up.  But it may be hard for me alone to
 3    catch eight people's drug use.  But I think it's
 4    better for you than having five, six separate
 5    incidents so...
 6              MR. GRANBERG:  Very well, Your Honor.
 7              THE COURT:  So if that works for you, we'll
 8    go with that.
 9              MR. GRANBERG:  Thank you, Your Honor.
10              THE COURT:  Thank you, Mr. Granberg.
11              Do we have the Moores?  Heard from them
12    yet?
13              MR. COOPER:  They probably are on the
14    phone, Judge.
15              THE COURT:  We're going to have to bring IT
16    up.  And they're going to have to take the system
17    down and then take it up.  If that's just an instant
18    thing, then we'll just let them do it.  If it's not
19    going to be an instant thing, we may take a break and
20    let him do it and then come back.
21              MR. COOPER:  Thank you.  I'll go sit down,
22    Judge.
23              THE COURT:  Well, you're welcome to stand.
24    I just don't know the answer.  I can't tell you how
25    long it's going to take to do that.  It's your call,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7682

```
 1   Mr. Cooper.
 2              (A discussion was held off the record.)
 3              MS. ARELLANES:  Your Honor, Ms. Gutierrez
 4   requires a break.
 5              THE COURT:  All right.  Let's just go ahead
 6   and take our break.  We'll be in recess for about 15
 7   minutes and that will give everybody time to get set
 8   up.
 9              (The Court stood in recess.)
10              THE COURT:  All right.  I think we've got
11   everybody back into the courtroom.  So every
12   defendant has an attorney, and all the defendants are
13   here.  I think we have the telephone system working,
14   so let's see if we can bring Mr. Moore and Ms. Lackey
15   up on the phone.
16              All right.  Mr. Moore, are you going to go
17   first?  Is that what's going to happen?
18              All right.  Mr. Moore, if you'll raise your
19   right hand to the best of your ability there, and my
20   courtroom deputy, Ms. Bevel, will swear you in.
21              THE WITNESS:  Okay.
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62684

```
 1                          JIM MOORE,
 2          after having been first duly sworn under oath,
 3          was questioned, and testified as follows:
 4                  THE CLERK:  Give your full name and spell
 5     your last name.
 6                  THE WITNESS:  Jim Moore.  M-O-O-R-E.
 7                  THE COURT:  Do you want to try that once
 8     again, Mr. Moore?  You cut out on us.
 9                  THE WITNESS:  Jim Moore.
10                  THE COURT:  All right.  Mr. Moore.
11                  Mr. Cooper.
12                  MR. COOPER:  Thank you, Judge.
13                          DIRECT EXAMINATION
14     BY MR. COOPER:
15          Q.   Good morning, Mr. Moore.  This is Bob
16     Cooper.  I represent Billy Garcia, and we're going to
17     ask you a few questions today.  We -- Mr. Garcia is
18     the person who subpoenaed you to testify today.  Have
19     you had occasion to review the documents that we sent
20     you?
21          A.   Yes, I did.
22          Q.   Now, Mr. Moore, back in 2001, you were the
23     coordinator of the Security Threat Group at Southern
24     New Mexico Correctional Facility; isn't that correct?
25          A.   Correct.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7684

1    Q.   And how long were you so employed?

2    A.   As coordinator, I was since 1998.

3    Q.   1998?

4    A.   Yes.

5    Q.   Until when?

6    A.   2006.

7    Q.   Is that when you got to retire?

8    A.   Yes, in a roundabout way.

9    Q.   Okay.  And you're presently living in

10   Oklahoma, I take it?

11   A.   Correct.

12   Q.   So Mr. Moore, I'd like to direct your

13   attention to the document that has Bates No. DeLeon

14   606 at the bottom of it.  You have it marked?  It's

15   Defendants' Exhibit G for identification purposes.

16   Do you have that document in front of you?

17   A.   Yes.  Let me pull it up.  Okay, I have it.

18   Q.   Okay.  So that document, up at the top,

19   there are some numbers that says Primary Case Number

20   281 D-AQ-54711-302.  Is that the same document you're

21   looking at?

22   A.   Yes, it is.

23   Q.   Now, do you recognize that document?  Or do

24   you recognize the content of that document, I should

25   say?



SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7685

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64686

1     A.   This is the first time I've seen the

2   document.

3     Q.   Okay.  So in this document, it was prepared

4   on April 4, 2001, and the document appears to set

5   forth the details of a conversation that you had with

6   Task Force Officer Edgar Rosa, down at Southern.  Do

7   you know Edgar?

8     A.   Yes, I do.

9     Q.   How do you know him?

10    A.   Through work.

11    Q.   In 2001 there was a meeting that you had

12   with Mr. Rosa, and in that meeting you told -- you

13   stated that New Mexico State Police investigators

14   Norman Rhoades and Felipe Gonzalez were in charge of

15   the double homicides that occurred at Southern during

16   the evening of March 24, 2001.  Do you recall having

17   that conversation with him?

18    A.   It's been such a long time.  I know I met

19   with him at the briefing.

20    Q.   Okay.  The part that I'm concerned with

21   here is that in the next paragraph it says that you

22   stated there were several suspects in the murder of

23   Frank Castillo linked through trace evidence.  Task

24   Force Officer Rosa confirmed this information with

25   the investigator Rhoades, and then you stated that a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7686

1    Southern New Mexico Correctional Facility source

2    advised that the killings were ordered by Angel

3    Munoz.  You stated that Leroy Lucero, a validated SNM

4    member, had paroled to Las Vegas, New Mexico.

5             Now, the source who said that the killings

6    were ordered by Angel Munoz -- do you know who that

7    source was?

8         A.   I couldn't even remember.

9         Q.   Okay.  And in reading this document,

10   nowhere on that document is the source identified;

11   isn't that correct?

12        A.   Correct.

13        Q.   So you don't know who it was back on

14   April -- or sometime between the murder and April

15   4 -- stated that the murder was called by Angel

16   Munoz, do you?

17        A.   No.

18        Q.   Okay.  I'd like you to turn next to Exhibit

19   H for identification purposes, if you will.

20        A.   I'll pull it up.

21        Q.   Let me know when you have it in front of

22   you?

23        A.   The computer takes a moment.

24        Q.   I understand.  So did you watch that

25   Oklahoma basketball game yesterday?

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                     1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1        A.    No, I didn't.

2        Q.    Probably just as well.

3        A.    Yeah.  All kinds of things going on.

4              I have a hard copy.  What's the title?

5        Q.    This is the document --

6        A.    Here it is.  I got it now.

7        Q.    Okay.  So you have Defendants' Exhibit H in

8    front of you.  At the bottom U.S. versus DeLeon, et

9    al., 716?

10       A.    Yes.

11       Q.    That's a memorandum from you to Lawrence

12   Tafoya, the warden down at Southern, concerning the

13   murders of a couple of inmates, Mr. Garza and Mr.

14   Castillo, that was prepared on April 2, 2001, by you;

15   correct?

16       A.    Correct.

17       Q.    I'd like you to scroll to page 722 if you

18   will.

19       A.    Okay.  I have it.

20       Q.    That first paragraph says that "A

21   confidential source was interviewed last night and he

22   stated that inmate Castillo was killed because he had

23   called ex-inmate George Manzanares' girlfriend, and

24   George had answered the telephone.  At one time his

25   girlfriend, Cindy Garza, was involved with inmate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7688

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 67689

1   Frank Castillo."

2         Now, can you tell us who that confidential

3   source was on that particular day?

4         A.   I have no idea.  It didn't come from us.

5         Q.   Did you ever learn who that source was?

6         A.   No, I never did.

7         Q.   And why don't you read the rest of that

8   page and see if you can tell whether or not the

9   identity of that source is set forth in that report?

10        A.   No, I don't see where it was revealed.

11        Q.   Okay.  Now, I'd like for you to go to

12   Exhibit G, if you will.  Or excuse me, I'm sorry, go

13   to Exhibit N as in Nancy.

14        A.   I have E, G, and H.

15        Q.   Okay.  You don't have an N?

16        A.   No.

17        Q.   Okay.  Well, let me tell you what -- N

18   appears to be another version of G.  We're at DeLeon

19   606.  It states that on April 4, 2001, an inmate

20   provided to law enforcement information that Angel

21   Munoz ordered these murders.  So it's another -- it's

22   a different version of that same statement.  So you

23   would have the same answer with regard to whether or

24   not you knew who the source was who told -- or gave

25   information that Angel Munoz called the hit; right?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                  e-mail: info@litsupport.com

DNM 7689

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6690

```
 1          A.    Right.

 2          Q.    So can you tell me, please, what a task

 3    force officer is -- and what sort of task force was

 4    it?

 5          A.    (Unintelligible) Edgar.

 6          Q.    I'm sorry, what was that?

 7          A.    Which task force are you referring to?

 8          Q.    The task force that existed in 2001, Edgar

 9    Rosa was a task force officer.

10          A.    Okay, I don't really know all their job

11    duties.  I know that they track and identify gang

12    members and investigate them, their dealings.

13          Q.    And that was a federal task force, wasn't

14    it?  Or a task force involving various agencies,

15    including the federal government?

16          A.    Correct.

17          Q.    Okay.  Now, why were you providing

18    information to the task force officer?

19          A.    Part of my job as the coordinator there was

20    to act as the liaison to the outside law enforcement

21    agencies.

22          Q.    I'm sorry, I didn't quite get all of that,

23    Mr. Moore.  Can you repeat that for me?

24          A.    My job was to act as a liaison to the

25    outside law enforcement agencies.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7690

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 6 of 9691

```
 1        Q.   And you did that in this particular case?

 2        A.   Correct.

 3        Q.   So in the last couple of years or since,

 4   oh, maybe the beginning of 2015, has anybody from the

 5   United States Attorney's Office or the FBI or a task

 6   force contacted you with regard to this case?

 7        A.   No.

 8        Q.   Going back to your duties as STG

 9   coordinator, in the operation of the Security Threat

10   Group, how would you keep track of confidential

11   sources or people who gave you information with

12   regard to gang members or other security threat

13   groups?

14        A.   There's two different ways.  One, you can

15   create a list of inmates that you -- provide you with

16   information that is proven to be confidential and

17   true.  And that list is maintained in the warden's

18   office.

19             Another way --

20        Q.   And so if you would, if you would receive

21   information from an individual that you felt belonged

22   on that list, how often would you place that

23   information on the list that was maintained in the

24   warden's office?  Would you do it on a daily basis,

25   weekly basis, whenever you got it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7691

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 70692

```
 1          A.    About whenever I got it.

 2          Q.    And would you do it that day?

 3          A.    Yes.

 4          Q.    And you would prepare a memo --

 5          A.    Right.

 6          Q.    -- setting forth the information?  Then

 7    that memo would be filed -- was it kept in a notebook

 8    or a file folder?

 9          A.    I don't know.  I just turned the memo over

10    to them.

11          Q.    To who?

12          A.    The warden's office.

13          Q.    The warden himself, or somebody there in

14    his office?

15          A.    Not the warden, but there is another -- I'm

16    talking slow because the phone is repeating itself.

17          Q.    Okay.

18          A.    Another source list can be maintained with

19    each incident, such as this case.

20          Q.    So there would have been a file just on the

21    murders of Garza and Castillo?

22          A.    Yes.

23          Q.    And who maintained that file?

24          A.    The warden's office.

25          Q.    So he would have that file and the list of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7692

```
 1     information from confidential sources?

 2          A.   Correct.

 3          Q.   And would you share the list of

 4     confidential sources with the task force officers?

 5          A.   No.  I just turned it over to him, and he

 6     forwarded it to Central Office.

 7          Q.   Oh, okay.  So would the warden at Southern

 8     maintain a list of confidential information and then

 9     forward a copy to the Central Office?  Is that how it

10     worked?

11          A.   I'm not sure.  It's per policy.

12          Q.   So whatever the policy states, that's what

13     should have been done?

14          A.   Correct.

15          Q.   And the policy provides that a logbook is

16     kept at the warden's office; correct?

17          A.   Correct.

18          Q.   Have you ever seen the logbook at the

19     warden's office?

20          A.   I don't believe so.

21          Q.   You never had occasion to go in and see

22     what was submitted prior to any submission that you

23     made?

24          A.   No.  I don't think it had sources.

25          Q.   So did you keep a separate file for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    yourself?

2         A.   No.

3         Q.   So if you had Johnny, for instance, who

4    gave you information in 1998 and three other guys

5    gave you information the next month, and it was about

6    a particular incident, then six, eight months later

7    somebody else gives you information, do you have any

8    way of going back to see what Johnny said and what

9    the other three guys have said?

10        A.   If I need to, I could access my information

11   by asking the warden to give me the information that

12   I need or I provided before.

13        Q.   So these confidential sources who would

14   give information -- would each of them have an

15   alphabetical file?  This is Johnny, this is Billy,

16   this is Joey, and all of the information that Johnny

17   gave in one file for Johnny?

18        A.   I'm not sure how it's filed up there.

19        Q.   Okay.  What about your computer?  When you

20   would generate a report, a document, to send to the

21   warden, what would happen to your computer file?  Did

22   you keep it?

23        A.   No, I wouldn't save it.

24        Q.   You would not save it at all?

25        A.   If it was confidential information, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7694

1    wouldn't save it on my computer.  I would not save it

2    on my computer.  Are you there?

3         Q.   I'm here.  I'm sorry, Mr. Moore, I'm just

4    thinking.

5              So if we needed information about a

6    confidential source, there would be two places to

7    obtain that information:  One would be in the

8    warden's office; and the second place would be at the

9    Central Office; correct?

10        A.   Correct.

11        Q.   Now, what about information that is shared

12   to task force officers?  Do you have a logbook as to

13   what was shared with them?

14        A.   I never kept one.

15        Q.   So you never kept a logbook at all?

16        A.   Not of confidential information.

17        Q.   Well, Mr. Moore, I really appreciate you

18   taking time to talk with us this morning.  I don't

19   believe that I have any further questions of you.

20   There may be other individuals that are going to come

21   up and ask some questions of you, but that's all I

22   have, so thanks again.

23             THE COURT:  Thank you, Mr. Cooper.

24             THE WITNESS:  Thank you.

25             THE COURT:  Mr. Burke, did you have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    anything?  Any other defendants have any direct

2    examination of Mr. Moore?

3            Mr. Beck?  Do you have cross-examination of

4    Mr. Moore?

5            MR. BECK:  I do, Your Honor.

6            THE COURT:  Mr. Beck.

7                    CROSS-EXAMINATION

8    BY MR. BECK:

9        Q.   Good morning, Mr. Moore.

10       A.   Good morning.

11       Q.   My name is Matt Beck, and I'm an assistant

12   U.S. Attorney.  I want to talk to you about

13   Defendants' Exhibit G, which was the FBI 302 report

14   that you hadn't seen.  I think the Bates No. on the

15   bottom is DeLeon et al., 606.  Let me know when you

16   see that.

17       A.   I see it.  I still have it.

18       Q.   All right.  So I want to talk to you about

19   what's the third paragraph in there where it starts

20   out with, "Moore stated that there were several

21   suspects in the murder of Frank Castillo."  Do you

22   see that?

23       A.   Yes.

24       Q.   It says here that -- in that second

25   sentence, I think, Mr. Cooper talked to you about, it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7696

```
 1   says, "Moore stated that an SNMCF source advised that
 2   the killings were ordered by Angel Munoz."  Do you
 3   see that?
 4        A.   Yes.
 5        Q.   Now, was that your personal source, or was
 6   that just a source from Southern New Mexico
 7   Correctional Facility?
 8        A.   I don't recall.
 9        Q.   Now, moving on there, I'm going to skip a
10   couple sentences, and I'm going to go to that last
11   sentence where it says that "Moore stated that a
12   vacancy was created upon Lucero's departure, causing
13   a struggle for control of the drug trade."
14             Is that your information, or is that
15   information based on a source, or do you know?
16        A.   I don't recall.
17        Q.   Now, in that next paragraph I'm going to
18   talk about the third and last sentence in there.  Do
19   you see where it says, "Moore stated that Garcia was
20   believed to have been involved in the killing, but
21   there was no evidence linking him to the killings."
22   Do you see that sentence?
23        A.   Yes.
24        Q.   And do you know whether -- and again, it
25   looks like, from the first sentence, this is still
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7697

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 76

```
 1    referring to Billy Garcia.  Is that your

 2    understanding of this sentence?

 3         A.   Yes.

 4         Q.   And where it says, "Garcia was believed to

 5    have been involved in the killing but there was no

 6    evidence," is that your belief or a belief based on a

 7    source, if you know?

 8         A.   It's based on a source, I believe, but it's

 9    just not my words.

10         Q.   And that makes sense; right?  Because a lot

11    of the information you get about the SNM is from

12    sources; isn't that true?

13         A.   Correct.

14         Q.   And so is this the same source as the

15    source in the last paragraph that advised it was a

16    hit by Angel Munoz, who said that that source

17    believed that Garcia was involved in the killing?

18         A.   I wouldn't know.

19         Q.   And then that last sentence, "Moore stated

20    a prison source informed him that Castillo was killed

21    because he didn't follow through with an order to

22    kill."

23              It sounds like in that sentence, at least,

24    that may have been your source.  Is that fair to say?

25         A.   It may have been, but like I said, I don't
```



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                            1-800-669-9492
                                                  e-mail: info@litsupport.com

DNM 7698

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 77699

1   recall.

2        Q.   Sure.  I understand that.  I want to take

3   you to the other exhibit that you looked at, which

4   was Defendants' Exhibit H.  It's a memorandum about

5   the Garza and Castillo murders, which starts on what

6   I call Bates No. DeLeon 716.  Let me know when you

7   have that in front of you.

8        A.   Is it dated Monday, April 2?

9        Q.   That's the one.

10       A.   Okay.  I got it.

11       Q.   All right.  And I want to turn back to the

12   page that you went over with Mr. Cooper, page 7

13   there.  Let me know when you've got that page in

14   front of you.

15       A.   722?

16       Q.   Yes.

17       A.   Okay.

18       Q.   And so I think Mr. Cooper went over that

19   first paragraph.  Is the confidential source in that

20   paragraph your source, an STG source, or is it a New

21   Mexico Gang Task Force source?

22       A.   Gang task force.

23       Q.   And do you know whether that's a state gang

24   task force or a federal gang task force, if you know?

25       A.   I'm not sure.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         Q.   And then so if we read that paragraph, it
 2    says that "That source said that inmate Castillo was
 3    killed because he had called ex-inmate George
 4    Manzanares' girlfriend, and George had answered the
 5    telephone."  Do you see that?
 6         A.   Yes.
 7         Q.   And that last sentence in the paragraph
 8    says, "This information is in the process of being
 9    verified by the STG unit to see if a telephone call
10    was placed."  Do you see that sentence?
11         A.   Yes.
12         Q.   And as the STG coordinator, is this
13    something that the STG would do, is follow up on
14    inmate sources about gang activity?
15         A.   Yes.
16         Q.   And I want you to turn now to the next page
17    in that Bates No. DeLeon 723 and page 8.  Are you
18    there?
19         A.   I'm here.
20         Q.   And then the last paragraph on that page,
21    page 8, do you see where it says, "SNM task force
22    contacted STG Unit, the number blank belonging to
23    Cindy Garza, George Manzanares' girlfriend.  The
24    number was checked back to January of 2000.  No
25    attempts were made to dial this number from SNMCF."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7700

1     Do you see that?

2          A.    Yes.

3          Q.    So does that indicate to you that STG did

4     follow up and found that the information about the

5     call was actually not accurate?

6          A.    Yes.  Correct.

7          Q.    And Edgar Rosa -- do you know whether he

8     was on a state or a federal task force, or both, if

9     you know?

10         A.    I don't know for sure.

11         Q.    I think you said on direct -- I wrote it

12    down here -- that you acted -- as the STG

13    coordinator, you acted as a liaison to outside law

14    enforcement.  Do you remember that?

15         A.    Correct.

16         Q.    Was that a liaison to all outside law

17    enforcement, or just some particular group?

18         A.    All.

19         Q.    And I think you said all; right?

20         A.    Yes.

21         Q.    All right.

22              MR. BECK:  No further questions, Your

23    Honor.

24              THE COURT:  Thank you, Mr. Beck.

25              Mr. Cooper, do you have redirect of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Mr. Moore?

 2           MR. COOPER:  I do.

 3           THE COURT:  Mr. Cooper.

 4           MR. COOPER:  Thank you, Judge.

 5                   REDIRECT EXAMINATION

 6   BY MR. COOPER:

 7       Q.   Mr. Moore, I'd like to direct your

 8   attention to document Exhibit G, please.  Let me know

 9   when you have that up again.

10       A.   Okay.  I have it.

11       Q.   Okay.  The next-to-the-last paragraph says

12   that "Task Force Officer Rosa advised Moore that

13   inmate Billy Garcia was being targeted by the SNM";

14   is that correct?

15       A.   I see it, yes.

16       Q.   And do you know who the individual was that

17   gave that information?

18       A.   No, I don't.

19       Q.   I'd like to take you back to the line of

20   questioning from Mr. Beck with regard to Cindy Garza,

21   the girlfriend, okay?  And he says that -- or you

22   indicated to Mr. Beck that a search of phone records

23   did not show what -- or that there was a call to a

24   particular number.  But you don't know what number --

25   you don't know all of the numbers, or if Cindy Garza
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7702

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 81703

```
 1    was using a particular number at that time, do you?

 2         A.   Just one particular number was searched.

 3         Q.   Okay.  And that's all that was searched;

 4    correct?

 5         A.   As far as I know.

 6         Q.   Okay.  Thank you, sir.

 7              MR. COOPER:  I have no further questions.

 8              THE COURT:  Thank you, Mr. Cooper.

 9              Does any other defendant have any redirect?

10    Mr. Burke?  Anybody?  All right.

11              MR. GRANBERG:  I do.

12              THE COURT:  All right.  Mr. Granberg.

13                    CROSS-EXAMINATION

14    BY MR. GRANBERG:

15         Q.   Mr. Moore, do you have Exhibit G still in

16    front of you?

17         A.   Yes.

18         Q.   On the third paragraph, in the middle of

19    the third paragraph, it says that Leroy Lucero had

20    paroled to Las Vegas, New Mexico.  Do you see that

21    sentence?

22         A.   Yes, I do.

23         Q.   Do you know when he had paroled to Las

24    Vegas, New Mexico?

25         A.   No, I don't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7703

```
 1        Q.   Do you know if it was before the murders or
 2   after the murders?
 3        A.   I can't remember.
 4             MR. GRANBERG:  All right.  Pass the
 5   witness.
 6             THE COURT:  Thank you, Mr. Granberg.
 7             Any other defendant have any redirect?
 8             All right, Mr. Moore.  Thank you for your
 9   testimony.
10             Is there any reason Mr. Moore cannot be
11   excused in the proceedings, Mr. Cooper?
12             MR. COOPER:  No, Your Honor.
13             THE COURT:  Mr. Beck?
14             MR. BECK:  No, Your Honor.
15             THE COURT:  All right.  You are excused
16   from the proceedings.  Thank you for your testimony,
17   Mr. Moore.
18             Is Ms. Lackey now going to come on the
19   phone?
20             MR. MOORE:  Yes.
21             THE COURT:  Thank you, Mr. Moore.
22             Ms. Lackey, this is Judge Jim Browning in
23   Albuquerque -- or we're actually in Las Cruces, down
24   here.  I'm going to have my courtroom deputy, Ms.
25   Bevel swear you in.  So if you'll stand and raise
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  your right hand, we'll swear you in at this time.

2          MS. MOORE:  Yes, sir.

3                  CHERYL MOORE,

4      after having been first duly sworn under oath,

5      was questioned, and testified as follows:

6          THE CLERK:  Please state your name and

7  spell your last name for the record.

8          MS. MOORE:  My name is Cheryl Moore.

9  M-O-O-R-E.

10         THE COURT:  All right.  Ms. Moore.

11         Mr. Castle.

12         MR. BECK:  Your Honor, before we get into

13 this document, I don't want to cut anybody off, but

14 it might short-circuit it.  Last night in preparing

15 for his testimony, Special Agent Acee went through

16 this document and believes he identified the three

17 sources at issue in Mr. Garcia's motion to dismiss

18 for this source.

19         THE COURT:  All right.  Do you want to give

20 that information to the defendants?

21         MR. BECK:  Sure.  Yes.

22         MR. CASTLE:  I'd still like to follow up

23 with a few questions.

24         THE COURT:  You're welcome to.  Do you want

25 the information after or before?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 84

```
 1                  MR. CASTLE:  I just got it.
 2                  THE COURT:  You just got it?  All right.
 3                  Mr. Castle.
 4                       DIRECT EXAMINATION
 5      BY MR. CASTLE:
 6           Q.   Ms. Moore, was your maiden name Lackey?
 7           A.   Yes, sir.
 8           Q.   In 2001, were you working at the Southern
 9      New Mexico Correctional Facility as an STG officer?
10           A.   Yes, sir.
11           Q.   In that regard, do you recall a murder --
12      two murders happening on March 26 of 2001?
13           A.   Yes, sir.
14           Q.   Before you do you have an exhibit that is
15      labeled Exhibit E?
16           A.   Just a second.  It's dated July 11, 2001?
17           Q.   Yes.
18           A.   To Mr. Moore?
19           Q.   Yes, to Mr. Moore from Cheryl Lackey?
20           A.   Yes, sir.  I have it.
21           Q.   Is that document a list of various
22      confidential sources that you interviewed in relation
23      to the March 26, 2001, murders?
24           A.   This is a compilation of interviews
25      conducted by multiple interviewers and officers.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7706

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 85707

```
 1    Sources were turned over to Mr. Moore, who then

 2    turned them over to the warden's office.

 3         Q.   Do you recall whether you interviewed an

 4    inmate by the name of Jimmie Gordon?  I don't know if

 5    you could hear that.  Jimmie Gordon.

 6         A.   Yeah, I --(unintelligible).

 7         Q.   Could you start over on that one?  We had a

 8    little sound in the courtroom that made it impossible

 9    for us to hear you.

10         A.   I may have interviewed the inmates, but if

11    I didn't supply a memo, it probably didn't happen.

12         Q.   Could you repeat that again?  I'm not sure

13    I could hear you.  And if you can just speak slowly

14    because I think our connection is not very good.

15         A.   Okay.  I note the inmate this is referring

16    to.  I had interviewed him, but I don't remember

17    interviewing him for this murder.

18         Q.   Okay.  Was he a reliable source of

19    information?

20         A.   I had interviewed him before, and he had

21    given us information that was corroborated.

22         Q.   Okay.  So he provided information in the

23    past that you deemed reliable because you were able

24    to corroborate its accuracy?

25         A.   Yeah.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7708

1        Q.   When you interviewed sources, would you

2   create a report that would use some kind of a numeric

3   designation for that source instead of their name?

4        A.   Yes.

5        Q.   What would you do to record the actual name

6   of the source?

7        A.   I gave the name and the number that I

8   assigned to him to my boss, who gave it to the warden

9   for his list.

10       Q.   Okay.  Let me see if I can repeat that

11   using a question of mine.  Does it sound like you

12   would record the name of the individual on a separate

13   document and then provide that to your supervisor,

14   who would then give it to the warden?

15       A.   Yeah.  I would write it down in print form,

16   yes.

17       Q.   Would you use a logbook, or would these be

18   separate documents?

19       A.   It was just a separate document given to

20   him.  We didn't keep a log of the informant in the

21   office.

22       Q.   In the last few years until you received

23   this subpoena, had you been contacted by any

24   individuals at all about this 2001 murder, murders?

25       A.   No, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7708

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7709

1          Q.   Is that no, sir?

2          A.   Yes.  No.

3          Q.   I apologize.  That's a bad question.  Was

4     your answer no, you haven't been interviewed by

5     anyone?

6          A.   No, I have not.  I have not.

7               MR. CASTLE:  Your Honor, given the

8     Government's statement that they have identified the

9     sources in question, I have no other questions for

10    this witness.

11              THE COURT:  Thank you, Mr. Castle.

12              Any other defendant have any

13    cross-examination of Ms. Moore?

14              Mr. Beck, do you have cross-examination of

15    Ms. Moore.

16              MR. BECK:  I don't.  Thank you, Your Honor.

17              Thank you, Ms. Lackey.

18              THE COURT:  All right.  Ms. Moore, thank

19    you for your testimony.

20              Is there any reason that Ms. Moore cannot

21    be excused from the proceedings, Mr. Castle?

22              MR. CASTLE:  Yes, Your Honor.

23              THE COURT:  Mr. Beck?

24              Not hearing any objection, Ms. Moore, you

25    are excused from the proceedings.  Thank you for your



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7709

 1    testimony.

 2              MS. MOORE:  Thank you.

 3              THE COURT:  All right.  Where are we going

 4    next?  Do we have some witnesses we need to take care

 5    of, Mr. Castle?

 6              MR. CASTLE:  Yes, Your Honor, we have some

 7    inmate witnesses that the marshals would like us to

 8    call and get on their way.

 9              THE COURT:  All right.  Give me the first

10    one.

11              MR. CASTLE:  The first one is Frederico

12    Munoz, and he is relevant to the motion regarding

13    statements 1909.

14              THE COURT:  All right.  And is it one

15    particular statement, or all of them, or which one is

16    he relevant for?

17              MR. CASTLE:  I apologize, Your Honor, I

18    was --

19              THE COURT:  Is it a particular statement

20    he's relevant for?

21              MR. CASTLE:  Yes, it's several statements.

22    He had indicated that he had talked to a number of

23    the defendants about the 2001 murders; and when he

24    talked to them, they had confessed to their

25    involvement and also implicated or possibly

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7710

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 89

 1   implicated Mr. Garcia.  I was not intending to ask

 2   about any other homicides; just that.

 3           Judge, if I could have a moment, Mr.

 4   Benjamin has some information.

 5           THE COURT:  You may.

 6           MR. CASTLE:  Your Honor, Mr. Munoz's

 7   attorney was down in the holding cell, so it might be

 8   a minute.  I can fill the time.

 9           THE COURT:  Okay.

10           MR. CASTLE:  Your Honor, Billy Garcia's

11   motion concerning bad acts is number 1308.

12           THE COURT:  All right.  I have it in front

13   of me.

14           MR. CASTLE:  The Government has indicated

15   they're limiting themselves to two acts.

16           THE COURT:  Okay.

17           MR. CASTLE:  The first one is on page 6 of

18   that -- well, it's the sixth page, but it's the first

19   page of their letter, which is an act dated February

20   25, 1992.

21           THE COURT:  The very last one on that page?

22           MR. CASTLE:  Yes.

23           THE COURT:  The ones above it they're not

24   going to seek to introduce?

25           MR. CASTLE:  That's correct, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7711

```
 1              THE COURT:  All right.
 2              MR. CASTLE:  Your Honor, we would object to
 3     that on a number of grounds.  First of all,
 4     remoteness.  In our Bad Acts motion we provided a
 5     citation to Tenth Circuit case law that talked about
 6     remote acts not being admissible.  And I understand
 7     that the Government would be offering this as
 8     enterprise evidence, but I believe the bad acts under
 9     404 are the same as direct evidence.  Under 404,
10     you're allowed to bring in bad acts for a particular
11     purpose including identification, which is an element
12     of the offense.  So enterprise evidence should be
13     analyzed in the same fashion because it's just a way
14     to prove an element, the enterprise element.
15              So going back to 1992 is remote in time,
16     and we believe for that reason it should not be
17     admitted.
18              The second reason is:  The defense has not
19     been provided with any real discovery on this, any
20     discovery, and it's just a note in his STG file with
21     a date and a finding that he had threatened a
22     correctional officer.  No indication of who that is,
23     and obviously, no discovery about what had happened
24     there, what the circumstances were, whether it was
25     gang-related, anything of that nature.  It's just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7712

```
 1    that he threatened a correctional officer.

 2            Because they're offering this as evidence

 3    of enterprise of the element of the crime itself,

 4    their obligations to produce extend to that, and so

 5    we would argue against that.

 6            Does the Court want me to take a break?

 7            THE COURT:  What would you prefer?  Do you

 8    want to go ahead and take the witness?

 9            MR. CASTLE:  Yeah, go ahead and take the

10    witness.

11            THE COURT:  All right.  We'll come back to

12    that, then.

13            All right, Mr. Munoz.  I know you've just

14    got seated, but if would you stand again, raise your

15    right hand to the best of your ability, my courtroom

16    deputy, Ms. Bevel, will swear you in.

17                    FREDERICO MUNOZ,

18        after having been first duly sworn under oath,

19        was questioned, and testified as follows:

20            THE CLERK:  Be seated and spell your last

21    name for the record.

22            THE WITNESS:  Frederico Munoz.  M-U-N-O-Z.

23            THE COURT:  Does your attorney want to

24    enter and appear as well?

25            MR. LOPEZ:  Louis Lopez on behalf of Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7713

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 92

```
 1   Munoz.  I'm present.
 2              THE COURT:  All right, Mr. Lopez, good
 3   morning to you.
 4              MR. LOPEZ:  Good morning.
 5              THE COURT:  All right, Mr. Munoz.
 6              Mr. Castle.
 7                    DIRECT EXAMINATION
 8   BY MR. CASTLE:
 9       Q.   Good morning, Mr. Munoz.
10       A.   Good morning.
11       Q.   I'm Jim Castle.  I represent Billy Garcia,
12   who is here in the courtroom.  The questions I'm
13   going to direct to you are related to a pair of
14   murders that happened in March of 2001 at the
15   Southern New Mexico Correctional Facility.  Do you
16   know what murders I'm talking about?
17       A.   Yes, I do.
18       Q.   You weren't at the facility when that
19   happened; is that right?
20       A.   I was at the State Penitentiary in Santa
21   Fe, New Mexico.
22       Q.   So in regards to those murders, if you
23   could look in the courtroom here at the defendants
24   and tell us if any of the defendants other than
25   Mr. Garcia have had conversations with you at any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7714

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 93

```
 1    time about their involvement, potential involvement,
 2    in those murders.
 3              MS. ARMIJO:  And Your Honor, I'm going to
 4    object.  This is clearly a fishing expedition.  If he
 5    wants to -- my understanding is, he wanted to
 6    confront him with a statement, a specific statement
 7    that Mr. Munoz made regarding his client.  This
 8    clearly is a fishing expedition to just get out what
 9    Mr. Munoz would be testifying about.
10              THE COURT:  I'm a little concerned about
11    the breadth of it, Mr. Castle.  How is this relevant
12    to the statements?
13              MR. CASTLE:  Well, it would be statements
14    of co-defendants.  The follow-up question would be:
15    If they made a statement, did they implicate my
16    client?  And then I would focus in on those.
17              THE COURT:  Well, why don't we target it
18    more to the statements that you have in your document
19    1909?  Why don't you focus it more on that, rather
20    than the other one, which is a little bit broader,
21    more discovery-related.
22    BY MR. CASTLE:
23         Q.  Mr. Munoz, do you know an individual by the
24    name of Christopher Chavez?
25         A.  No, sir, not that I can remember.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7715

```
 1          Q.   Did you know an individual by the name of
 2     Joe Gallegos?
 3          A.   Vaguely, yes.
 4          Q.   Did Mr. Gallegos make a statement about his
 5     potential involvement in the 2001 murders?
 6          A.   Not that I'm aware of.
 7          Q.   But Mr. Garcia, Billy Garcia, did make one
 8     to you?
 9          A.   No, sir.
10          Q.   Okay.  Thank you very much.
11               MR. CASTLE:  I have no other questions.
12               THE COURT:  Thank you, Mr. Castle.
13               Any other defendants?  Mr. Burke, do you
14     have questions?
15                      DIRECT EXAMINATION
16     BY MR. BURKE:
17          Q.   Good morning.  My name is Pat Burke.  I'm
18     co-counsel for Edward Troup.  It has been alleged
19     that you had a conversation with Mr. Troup at some
20     point regarding the Freddie Sanchez homicide.  Do you
21     ever recall talking to Mr. Troup about that?
22          A.   Yes, I do.
23          Q.   Where were you and where was he?
24          A.   He and I were at the Level 6 at The State
25     penitentiary in Santa Fe, New Mexico.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7716

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9517

```
 1          Q.   And I have not there been, but I understand
 2    that is a facility that has a lot of buildings and
 3    different pods and different units.  And so what I
 4    would like you to do, Mr. Munoz, is tell me exactly
 5    where you were and exactly where he was, so that it
 6    would be more specific than just saying "PNM."
 7          A.   Okay.  He and I lived in the same housing
 8    unit.  We were in different pods --
 9          Q.   Which housing unit was that?  I'm sorry for
10    interrupting, because I really want this to be quick
11    just like you do?
12          A.   Housing unit 1-A.
13          Q.   Where was he?
14          A.   I don't know which pod he was in, but we
15    both had access to the same recreation yard,
16    irrespective of the pod in which we lived, and we
17    were both outside in the rec yard at one point and we
18    had a conversation.
19          Q.   So one conversation?
20          A.   Yes.
21          Q.   Correct.  And do you know the month and
22    year of that conversation?
23          A.   It was immediately after the homicide of
24    Freddie Sanchez occurred, and he was returned back to
25    Level 6.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 96

```
 1          Q.   Okay.  So within a week of the homicide?

 2          A.   I would say more or less, yes.

 3               MR. BURKE:  That's all I have for you.

 4     Thank you.

 5               THE COURT:  Thank you, Mr. Burke.

 6               Any other defendant have direct examination

 7     of Mr. Munoz?

 8               All right, Ms. Armijo.

 9                    CROSS-EXAMINATION

10     BY MS. ARMIJO:

11          Q.   Good morning, Mr. Munoz.

12          A.   Good morning.

13          Q.   Now, in regard to the murders of Frank

14     Castillo and Rolando Garza, you indicated that you

15     were up at PNM; correct?

16          A.   Yes.

17          Q.   Were you at the North or the South?

18          A.   I was at the North.

19          Q.   At the North.  Prior to those murders, you

20     had information that those murders were going to

21     occur; correct?

22          A.   Yes.

23          Q.   And in fact, in reference to Garza, did you

24     actually have a role or sanction that?

25          A.   I believe I did, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7718

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 7719

1        Q.   Now, you previously -- and I'm going to

2   show you --

3             MS. ARMIJO:   May I approach the witness,

4   Your Honor?

5             THE COURT:   You may.

6   BY MS. ARMIJO:

7        Q.   And I'm showing you Bates 41986 which is a

8   report in reference to a debrief that you made, and

9   you made a statement regarding Billy Garcia.

10       A.   Yes.

11            MR. CASTLE:   Your Honor, actually, this is

12  improper.  I think they have to ask a question first

13  before they refresh a witness' memory.

14            THE COURT:   Well, I don't know if he's

15  refreshing -- or if she's refreshing or not.  She can

16  show him the exhibit.  Let's see what the question

17  is.  Overruled.

18  BY MS. ARMIJO:

19       Q.   Did you make a statement in reference to

20  Billy Garcia's role in those murders?

21       A.   Yes, I did.

22       Q.   Okay.  And what is -- what information do

23  you have about Billy Garcia in reference to, just so

24  we're specific, the Frank Castillo and the Rolando

25  Garza murders?

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                     1-800-669-9492
                                                                          e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 98

1    A.   I was aware that Mr. Garcia was classified

2  to be released from the Level 6 to go down to the

3  State Penitentiary in Las Cruces, and I immediately

4  began lobbying him and telling him that there was a

5  guy over there that needed to get killed.

6    Q.   Okay.  And who was that guy?

7    A.   Rolando Garza.

8    Q.   And what did Mr. Garcia say to you when

9  you, quote, lobbied him for the murder of Garza?

10    A.   That he would handle it.  He already knew

11  the reasoning behind my effort to have Looney,

12  Rolando Garza, killed, and it wasn't an issue for

13  him.

14    Q.   And was that reason because Mr. Garza was

15  previously a Los Carnales?

16    A.   Yes.  He had dual membership in the SNM and

17  the Los Carnales gang.

18    Q.   Now, in regard to the timing of the Edward

19  Troup statement that you were asked about, did you

20  rely on the offender location history for that, or

21  how do you recall that?

22    A.   I just remember as soon as he and his

23  co-defendant were returned to the Level 6, shortly

24  after that we were all in the yard and we had a

25  conversation.  The three of us were out there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7720

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 99

7721

```
 1    together.
 2        Q.   And did you know what the purpose of them
 3    returning to Level 6 was?
 4        A.   Oh, yeah.  Everybody knew.  Everybody,
 5    meaning all of us, knew what was up, what was going
 6    on.
 7        Q.   And was that related to the Freddie Sanchez
 8    murder?
 9        A.   Yes, ma'am.
10             MS. ARMIJO:  All right.  Thank you.  No
11    further questions.
12             THE COURT:  Thank you, Ms. Armijo.
13             Mr. Castle, do you have redirect of Mr.
14    Munoz?
15             MR. CASTLE:  Yes.
16             THE COURT:  Mr. Castle.
17                  REDIRECT EXAMINATION
18    BY MR. CASTLE:
19        Q.   Mr. Munoz, you were just talking to Ms.
20    Armijo about a conversation you had with Billy Garcia
21    at PNM?
22        A.   Yes.
23        Q.   Where did that occur at PNM?
24        A.   Housing unit 3-B.
25        Q.   And you were both living in the same unit?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7721

1       A.   Yes.

2       Q.   Was it in a common area?

3       A.   Yes, outside and in the pod; we were very

4   close.

5       Q.   Okay.  And it sounds like you were part of

6   the decision-making to kill Mr. Garza; is that right?

7       A.   I was certainly asking for it.

8       Q.   Okay.  But were you just passing on orders

9   from someone else, or were you part of the -- were

10   you the one that was making --

11       A.   I was advocating for a set of rules that

12   existed from the very beginning of the SNM that if

13   somebody was a rival gang member, he had to be

14   targeted.  Rolando Garza was a known member of the LC

15   gang for years and he was protected.  I knew that

16   when your client was going there, he had enough

17   authority and wherewithal to make sure that it

18   happened, and I relied on my friendship with him and

19   asked him to take care of it, and he said he would.

20       Q.   So it was your idea?

21       A.   It was the SNM's idea.

22       Q.   Okay.  But no one told you to tell

23   Mr. Garcia to do that?

24       A.   There were, I would say, a consensus of

25   brothers, SNM members, who wanted Rolando Garza taken

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7722

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101

```
 1   out, yes.

 2        Q.   Who were those brothers that had that

 3   consensus?

 4        A.   Anybody who was a serious member of the SNM

 5   Gang.

 6        Q.   So you said this happened in a common area

 7   at the facility?

 8        A.   Yes.

 9        Q.   Was anyone else present when you told

10   Mr. Garcia these --

11        A.   There were conversations that we had in the

12   yard.

13        Q.   And how soon after that did Mr. Garcia

14   leave the facility and go to Southern?

15        A.   I would say around a month or so.

16        Q.   So everyone knew that Mr. Garcia was going

17   to be moved to another facility a month before he

18   moved?

19        A.   Oh, yes.

20        Q.   And were those orders to kill Mr. Garza --

21   were those given to anyone else?

22        A.   Not that I'm aware of.

23        Q.   How about Jake Armijo?

24        A.   I don't know, sir.

25        Q.   It sounds like what you're talking about is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7723

1   that a number of people wanted Mr. Garza dead; is

2   that right?

3       A.   Yes.

4       Q.   And Mr. Garza -- is this a number of people

5   at PNM North?

6           MS. ARMIJO:  Your Honor, I'll object as far

7   as -- we're past the statement itself, and this is

8   now a fishing expedition.

9           THE COURT:  How do you tie this to the

10  statements that I've got to review?

11          MR. CASTLE:  Your Honor, I can honestly say

12  I can't, but I didn't open up this door.  The

13  Government did.  I didn't even challenge the

14  statement that Mr. Garcia made at PNM.  The

15  Government decided to put that at issue.  I'm not

16  sure why, but they did.

17          THE COURT:  Well, let's bring it to a

18  conclusion.  I'm not sure what I'm going to do with

19  the information, but at the present time I don't see

20  what the relevance is, so I'll sustain.

21  BY MR. CASTLE:

22      Q.   What were the exact words you said and what

23  were the exact words that Mr. Garcia said?

24      A.   I asked him if he would take care of

25  Looney, take him out, and he said he would take care

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7724

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 103725

```
 1    of it.

 2         Q.   That was the end of it?

 3         A.   They were euphemisms for killing him and

 4    he'll get it done, yes.

 5         Q.   I'm sorry, "taking care of it" is a

 6    euphemism for killing someone?

 7         A.   Yes.

 8         Q.   But that wasn't the words you said.  You

 9    said, "Will you take care of it," and he said he

10    would?

11         A.   Yes.

12         Q.   Was that the last time you discussed the

13    murder of Mr. Garza with Mr. Billy Garcia?

14         A.   We spent some time after the fact.  He got

15    returned to the Level 6.  Not explicitly, but it was

16    an implicit understanding that, good job, I had a lot

17    of love and respect for him for that.

18              MR. CASTLE:   Thank you.

19              THE COURT:   Thank you, Mr. Castle.

20              Mr. Burke, do you have anything?

21              MR. BURKE:   No, Your Honor.

22              THE COURT:   Do any of the other defendants

23    have any redirect of Mr. Munoz?

24              All right, Mr. Munoz, you may step down.

25              Any reason Mr. Munoz cannot be excused, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7725

```
 1   Castle?

 2            MR. CASTLE:  No objection, Your Honor.

 3            THE COURT:  Any objection from the

 4   Government?

 5            MS. ARMIJO:  No, Your Honor.  Thank you.

 6            THE COURT:  Anyone else?  Mr. Burke?

 7   Anybody?

 8            All right.  Have a good day, sir.  You're

 9   excused from the proceedings.  Thank you for your

10   testimony.

11            MR. LOPEZ:  Your Honor, may counsel be

12   excused?

13            THE COURT:  You may.

14            All right.  Do you have your next witness

15   or evidence that you need to put on, Mr. Castle, Mr.

16   Cooper?

17            MR. COOPER:  Judge, we call Robert

18   Martinez.

19            MS. ARMIJO:  And Your Honor, while we're

20   waiting, can we get a proffer as to what they're

21   calling Mr. Martinez for?  Which motion?

22            THE COURT:  Let me get the entry of counsel

23   first.

24            MR. McELHINNEY:  C.J McElhinney on behalf

25   of Robert Martinez.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7726

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105727

 1            THE COURT:  Mr. Cooper, do you want to

 2   indicate what the purpose of Mr. Martinez is and what

 3   I should be looking and listening for?

 4            MR. COOPER:  Yes, Your Honor.  This goes to

 5   our motion for statements document 1909.

 6            THE COURT:  All right.  Do you have a

 7   specific statement?

 8            MR. COOPER:  I do, Judge.  On May 15, 2015,

 9   he was debriefed by Bryan Acee and Mark Myers, and I

10   wanted to talk to him about that debriefing and the

11   statements he made.

12            MS. ARMIJO:  This is a supplement?  I mean,

13   an exhibit, a specific exhibit?

14            MR. COOPER:  No.

15            MS. ARMIJO:  Then, Your Honor, we would

16   oppose, because it's not even really tied.  If it

17   wasn't an exhibit or specifically listed in their

18   motion as a statement, this clearly seems like a

19   fishing expedition to just talk to him about his

20   debrief.

21            THE COURT:  Is this a specific statement in

22   1909?

23            MR. COOPER:  May it please the Court.

24   Judge, we failed to include this statement in our

25   motion and have not submitted an exhibit, so we will



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7727

1    withdraw our request to have Mr. Martinez testify

2    with regard to this motion.

3              THE COURT:  Okay.  All right.  So what is

4    your next witness you need to get on today?

5              MR. COOPER:  Good question.  May we have a

6    moment?

7              THE COURT:  You may.

8              MR. McELHINNEY:  Your Honor, may I be

9    excused?

10             THE COURT:  Yes, you can.  Thank you, Mr.

11   McElhinney, for your assistance.

12             MR. COOPER:  May it please the Court?

13             THE COURT:  You may.

14             MR. COOPER:  Judge, we had two witnesses

15   that had just left for lunch, but we've contacted

16   them and they're on their way back.

17             THE COURT:  The witnesses are not in

18   custody?

19             MR. COOPER:  No, sir, they're law

20   enforcement types.

21             THE COURT:  All right.

22             MR. COOPER:  And they just notified us that

23   they are turning around and coming back.

24             THE COURT:  Okay.

25             MR. BECK:  Your Honor, I'll just point out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7728

1    to the Court for the record that I think Mr. Munoz's

2    testimony that inmates in the same housing unit but

3    in different pods go to rec together, that's where he

4    had the conversation he just testified.  I think that

5    evidence for the 1909 hearing is probative of

6    Mr. Garcia's testimony and Exhibits 5 and 6 from Mr.

7    Jameson Garcia's testimony in the 1909 hearing a

8    minute ago.

9            THE COURT:  I'm not tracking.  Tell me what

10   you're doing?  Oh, you want to admit 5 and 6?

11           MR. BECK:  Exhibits 5 and 6 are admitted.

12   I just thought while we had a minute, I would point

13   out that Mr. Munoz' testimony that he had a

14   conversation with an inmate in the yard at the North

15   when they were in the same housing unit but in

16   different pods is probative of Exhibits 5 and 6.

17           THE COURT:  As to Garcia.

18           MR. BECK:  As to Garcia and Mr. Troup.

19           THE COURT:  Well, let me ask this.  That

20   brings up an issue about how we're doing motions.  In

21   all these 104s, are we taking -- I guess we don't

22   have any more 104s; right?  We're just going to have

23   the one now, and that was with Mr. Garcia.  So the

24   next two witnesses go to the motions to dismiss?

25           MR. CASTLE:  Yeah, it goes to the motion to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7729

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108730

1    dismiss.  But there are other 104s.  I think it's

2    Quintana.  It might just be Mr. Quintana.  Oh,

3    Mr. Leroy Lucero.  His lawyer is coming back at 1:00,

4    Mr. Fallick.

5            THE COURT:  Mr. Fallick indicated to

6    somebody -- it might have been Ms. Wild, it might

7    have been Ms. Bevel -- that he wanted to redact some

8    portions of the transcript.  Does anybody know where

9    that stands?  I never saw any further redaction.

10           MR. CASTLE:  I told Mr. Fallick that I

11   didn't have any problem with personal identifying

12   information being redacted, but I wasn't speaking on

13   behalf of all defendants.  It was just on a phone

14   call with him last night.  He has prepared a redacted

15   transcript if the Court grants his request.

16           THE COURT:  Are y'all comfortable with

17   that?

18           MR. CASTLE:  I am, Your Honor.

19           THE COURT:  Has anyone seen it?  Is it here

20   so we can redact it and get it in your hands?  Y'all

21   might give a call to Mr. Fallick if he can tell

22   somebody, the Government, since they were at both

23   hearings, or if he can orally or send us an email or

24   something -- I don't know where he is right at the

25   moment -- so we can make a redaction and get you a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7730

```
 1    copy, so you can look at it before he testifies.
 2              MR. CASTLE:  I think he has a copy of a
 3    redacted one.  I think he emailed it to me.  I
 4    haven't opened it.
 5              THE COURT:  If you're comfortable with
 6    that, then that will be fine with me.  I just didn't
 7    know if he was taking out a few words or taking out
 8    pages, but if you're comfortable with it, I'll be
 9    comfortable with it.
10              MR. CASTLE:  I would prefer to wait until
11    he makes his record, because there have been a number
12    of emails asking us not to open it, and things like
13    that.
14              THE COURT:  We just don't have anything
15    back from him after he said he was going to redact
16    it.
17              Mr. Burke, do you have something?
18              MR. BURKE:  I think I would be remiss in
19    not responding to Mr. Beck's remarks.  The fact that
20    there may have been a situation which we dispute with
21    regard to Frederico Munoz in 2007 regarding whether
22    inmates in one pod went to rec at the same time as an
23    inmate at another time, whether that's applicable to
24    the James Daffy Garcia situation, I would debate that
25    and ask that it not be considered as further
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   corroboration.

2            THE COURT:  Thank you, Mr. Burke.

3            MR. BURKE:  Thank you, Your Honor.  Your

4   Honor, the next two witnesses are state police

5   officers who did some investigation of the 2001

6   homicides, and this will go to the motion to dismiss,

7   just to show there was a continuity of investigation

8   and interplay between the feds and the State.

9            THE COURT:  Do you have their names?

10           MR. BURKE:  Yes, it's Felipe Gonzalez and

11  Norman Rhoades.  And to some extent, their testimony

12  will overlap, except that Mr. Gonzales was focusing

13  on Rolando Garza and Norman Rhoades was focusing on

14  Mr. Castillo.

15           THE COURT:  Mr. Rhoades, if you'll come up

16  and stand next to the witness box on my right, your

17  left, before you're seated, my courtroom deputy, Ms.

18  Bevel, will swear you in.

19                  NORMAN RHOADES,

20      after having been first duly sworn under oath,

21      was questioned, and testified as follows:

22           THE CLERK:  If you'll state your name and

23  spell your last name for the record.

24           THE WITNESS:  Norman Rhoades.

25  R-H-O-A-D-E-S.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7732

```
 1              THE COURT:  Mr. Rhoades.  Mr. Burke.
 2                   DIRECT EXAMINATION
 3    BY MR. BURKE:
 4         Q.   Mr. Rhoades, how are you employed?
 5         A.   I'm employed with the -- as a investigator
 6    with the New Mexico State Police.
 7         Q.   How long have you been an investigator with
 8    the State Police?
 9         A.   I went into investigations in around
10    February of 1999.
11         Q.   And prior to February of 1999, had you had
12    other positions with the State Police?
13         A.   Yes.
14         Q.   Would you tell us what they were?
15         A.   I came on as a commissioned state police
16    officer in 1980, and from 1980 to 1999 I was on
17    patrol.
18         Q.   And so that would make it 38 years?
19         A.   Coming on to it, yes, sir.
20         Q.   And as an investigator 19 -- is that what
21    it is?
22         A.   Yes, sir.  And since 2005 I've been
23    assigned to the full-time crime scene unit.
24         Q.   Okay, I actually recognize you're a bit of
25    a historical person in this case, because you
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

 BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7733

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112

 1   investigated Javier Molina and Freddie Sanchez, as

 2   well as the Castillo and Garza homicides, did you

 3   not?

 4        A.   Yes, sir.

 5        Q.   I'm going to ask you just a few questions

 6   about Castillo and Garza.  Would you tell us your

 7   role in those homicides?

 8        A.   The Castillo investigation, I was assigned

 9   as a lead investigator on that.  Agent Gonzalez at

10   the time was assigned to Garza, so we assisted each

11   other, you know, where we could.

12        Q.   And because you were working with Agent

13   Gonzalez, did you meet with him occasionally to see

14   how he was doing on his investigation, so that you

15   would work together?

16        A.   Yes, sir.

17        Q.   And just generally speaking, by way of

18   narrative, tell us what you did in order to

19   investigate those homicides and the Castillo homicide

20   in particular.

21        A.   Of course, after arriving to the

22   correctional facility, we met with the correctional

23   officers, and there were several of them.  Assistant

24   wardens and wardens, what have you, and just gathered

25   some intel information as to, in my case, who was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   assigned to the G-1 green pod where Frank Castillo
 2   was housed.  And then we conducted some interviews of
 3   the inmates assigned to that, plus the correctional
 4   officers that were assigned to that pod during the
 5   time of the death of Mr. Castillo.  And a lot of it
 6   was just getting evidence, submitting it to the lab
 7   and things like that.
 8        Q.   So you wanted to interview both the inmates
 9   and the correctional officers who might have
10   information relating to the homicide?  Is that a fair
11   statement?
12        A.   Yes, sir.
13        Q.   And did you focus primarily on the day of
14   the homicide, or would you go back in time to take a
15   look at what other information might have been
16   available leading up to the homicide?
17        A.   I pretty much was focusing on that date.  I
18   didn't have really any knowledge prior to responding
19   out there of any of the involved parties, if you
20   will, or any of the history of the inmates or how
21   even the corrections facility was ran, so...
22        Q.   And how do you go about gathering that
23   information?
24        A.   That comes from the correctional staff.
25        Q.   Okay.  And do you look at any records, as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7735

 1   well, to gather information?

 2        A.   Yes, sir.

 3        Q.   What kinds of records do you look at?

 4        A.   What I obtained were the logs where

 5   primarily correctional officers checked in and

 6   checked out during the time of the death and a little

 7   before.  Any reports that any of the correctional

 8   officers may have written and any copies or

 9   transcripts of statements of interviews.

10        Q.   Okay, do you look for -- I think it was

11   called the STG back then.  Do you look for phone

12   calls or mail or any of those sorts of things?

13        A.   They -- I think the correctional officers,

14   probably the STG guys, were obtaining that and going

15   through that.  They had access to it.  If there was

16   anything pertinent, then they would call me and we

17   would meet on it.

18        Q.   Thank you, sir.  I now want to jump to the

19   physical evidence.  Was there any physical evidence

20   that helped you perhaps even solve the Castillo

21   homicide?

22        A.   I believe there was, yes.

23        Q.   Would you tell the Court what that was?

24        A.   Yes, sir.  It was -- Castillo had a

25   ligature, looked like part of the laundry bag, maybe

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7736

```
 1   the -- and the cord that tied it up tied around his
 2   neck, and that was submitted to the lab and they came
 3   back for DNA testing, and it came back with the
 4   results of DNA from Frank Castillo and Angel DeLeon.
 5        Q.   And as a result of that, did you submit an
 6   affidavit for the arrest of Mr. DeLeon?
 7        A.   Yes, I did.
 8        Q.   And did you seek the prosecution of
 9   Mr. DeLeon from the district attorney?
10        A.   Yes, I did.
11        Q.   And what happened to your request?
12        A.   They took it under review and several
13   months later sent the decline to prosecute letter.
14        Q.   And you continued to investigate the case
15   for some time notwithstanding the declination; is
16   that a fair statement?
17        A.   It was kind of -- after that, it was kind
18   of dead in the water as far as my part goes.  Just
19   waiting for the information until 2003.  The criminal
20   investigation sergeant then reassigned it to another
21   agent.
22        Q.   Let me ask you to look at Exhibit D.  If
23   you'll look at that, Agent Rhoades, is that the
24   reassignment to Agent Venegas?
25        A.   Yes, it is.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7737

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 116 7738

1        Q.   And one of the reasons it was being

2   reassigned to Agent Venegas is that he was part of

3   the FBI Gang Task Force; is that a fair statement?

4        A.   Yes, sir.

5        Q.   And let me jump forward to 2007.  There was

6   another piece of evidence in the case because Mr.

7   Lujan decided to talk to law enforcement authorities.

8   Is that a fair statement?

9        A.   Yes, sir.

10       Q.   And you got involved in the interviews of

11  Mr. Lujan; is that a fair statement?

12       A.   Yes, sir.

13       Q.   Would you tell us about that?  How you got

14  reinvolved at that point?

15       A.   This case had been reassigned from Agent

16  Venegas, then went to Agent Christiansen, and I'm not

17  sure where it went, who else had involvement in it.

18  But it was pretty much idle, and I had worked prior

19  with an Albuquerque police detective, Rich Lewis, on

20  other cases, so we had a network going.  He contacted

21  me and knew that I was involved in this case

22  originally, and told me about an interview he had had

23  with Lujan.  He offered to set up an appointment to

24  where myself and Agent Gonzalez could go up and

25  interview him, since we had a lot of information on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7738

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 117 7739

 1   both these cases, so we did.

 2        Q.   So at this point, you're coordinating with

 3   other law enforcement people, and you did, in fact,

 4   get an opportunity to interview Mr. Lujan; is that

 5   true?

 6        A.   Yes.

 7        Q.   And when was that?  I notice that you did

 8   bring your binder, so you boned up a little bit.

 9   Tell us a little bit about that, please.

10        A.   I forgot the month now.  It was, I believe,

11   2007, mid to late part of the year, maybe, and it was

12   set up in Albuquerque, I believe at the DA's office

13   up there.  And we went and met with Lujan and

14   conducted that interview.

15        Q.   Okay.  And so that breathed new life into

16   the investigation.  Is that a fair statement?

17        A.   Yes, I believe that did.

18        Q.   All right.  Now, I'd like you to take a

19   look at Exhibit U.  Agent, my guess is you will

20   recognize this as a concluding page of a long

21   PowerPoint that had been prepared.

22        A.   Yes, sir.

23        Q.   Tell us about the PowerPoint, then I'll be

24   asking you a couple of questions about this

25   particular exhibit.  What happened when you guys got



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   back to work and you developed a PowerPoint?  Why

 2   don't you tell us what you were doing.

 3        A.   The PowerPoint kind of helped to simplify

 4   the case.  It was kind of fragmented, I felt, and

 5   scattered out, and I thought a way to visually

 6   present it would be through a PowerPoint format.  So

 7   I went through and gathered pretty much the high

 8   spots of the investigation, and tried to keep it in

 9   chronological order as to the investigation.  So

10   that's why the PowerPoint was created.

11        Q.   And what sorts of things were in the

12   PowerPoint?  And I understand you just gave us an

13   abbreviated synopsis, but did it have some physical

14   evidence, photographs?

15        A.   Yes, it did.  It had some of the crime

16   scene photographs; I think the photograph of the

17   ligature was in there, if I remember correctly.  I

18   don't think I put a copy of the lab report in there.

19   But I think I had referred to it.

20        Q.   Yes.  And then so what was the conclusion

21   of the PowerPoint and that phase of the

22   investigation, referring now to Exhibit U?

23        A.   We had met with the district attorney at

24   that time at their office with the new information

25   coupled with the DNA I had at least on the Castillo

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119

```
 1   case to see if they would now file charges, realizing
 2   that Angel DeLeon had been released.
 3           At that time, they requested that we go
 4   reinterview everybody.  At some point in there, the
 5   FBI was thinking about taking it and ultimately did
 6   take the case over, several of the cases, so...
 7       Q.   So they had grouped together some other
 8   homicides and the FBI took over the case?
 9       A.   Yes.
10           MR. BURKE:  Those are all my questions,
11   Your Honor.
12           THE COURT:  Thank you, Mr. Burke.
13           Mr. Castle, do you have direct examination
14   of Mr. Rhoades?
15           MR. CASTLE:  I do, Your Honor.
16                   DIRECT EXAMINATION
17   BY MR. CASTLE:
18       Q.   Could we pull up Exhibit D?  I guess it's
19   still good morning.
20       A.   Good morning.
21       Q.   Exhibit D was shown to you a few minutes
22   ago.  Is that an email from -- is it Steven Libicer?
23       A.   Libicer.
24       Q.   That's to you and to Felipe Gonzalez; is
25   that right?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7741

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 120742

```
 1        A.   Yes.
 2        Q.   And the first part of it indicates that "I
 3   realize you've been carrying these cases on an
 4   inactive basis for some time, since the AUSA's office
 5   has apparently shelved them."
 6             And it's dated April 28, 2003.  So had
 7   there been an attempt prior to that to see if the
 8   United States Attorney's Office would take over
 9   perhaps the prosecution of these cases?
10        A.   To my understanding of this email, prior to
11   that, I don't recall.  Maybe there was talk.  I don't
12   recall.  But we had the investigations.  I had -- I
13   was still assigned to Castillo and I still at this
14   point was waiting.  I had been meeting with
15   Corrections and they had an official intel, but
16   nothing they could release to me.  So I was kind of
17   waiting to see if that would get resolved out to
18   where it would be useful.
19             So at that time I was still -- the case was
20   inactive, but I was still active with it.
21        Q.   What was the United States Attorney's
22   Office involved in prior to this email?
23        A.   I don't know if they were just reviewing
24   it.  I don't remember even being aware of anything
25   specific about it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 121

1       Q.   Over the years, as different violent acts

2  occurred at the prison by suspected SNM members, was

3  there debate about whether the federal government

4  ought to take it over versus the State prosecuting?

5       A.   During each time of the investigation, not

6  that I recall, no.

7       Q.   Would you work with the Southern New Mexico

8  Gang Task Force to exchange information and perhaps

9  even informant information concerning these murder

10  investigations through the years?

11       A.   Only on the Castillo investigation, because

12  I was assigned as a lead on the subsequent ones, and

13  at that time I was doing crime scenes, so my

14  involvement would be limited to just that.

15       Q.   So with regards to the Castillo

16  investigation, would you have shared information with

17  the task force and vice versa in 2001 and thereafter?

18       A.   Yes, sir.

19       Q.   If we can move to Exhibit F.  Do you

20  recognize what this document is or at least the

21  format?

22       A.   This is going to be the cover sheet on our

23  reports, and this one is going to be by Agent Bobby

24  Duncan.

25       Q.   And it was provided to you as the case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7743

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 122

```
 1    agent -- or the agent, I'm sorry, as an agent?

 2        A.   Yes, sir.

 3        Q.   And if we could go to the next page.

 4             THE COURT:  Let me ask you, Mr. Castle.

 5    Let's do a little planning here.  We can do a couple

 6    of things.  I do need to give Ms. Bean a break, so if

 7    we wanted to take a 15-minute break, come back,

 8    finish up, get these guys out of here.  If you want

 9    to take a full lunch break, we can do that and come

10    back.  What's your preference?

11             (A discussion was held off the record.)

12             MR. CASTLE:  Sounds like there's going to

13    be quite a few questions left for this agent.  So

14    maybe we should take the lunch break.  I know that --

15    yes, I think that makes sense.

16             THE COURT:  Do you want to ask Mr. Burke?

17    He might have a different view.

18             MR. BURKE:  I do have a different view.  I

19    wanted to get Felipe Gonzalez on and off, but it

20    really does depend.  If you're going to go a bit --

21             MR. BECK:  I don't think I'm going to go

22    long with Mr. Rhoades.  I'd be inclined -- they

23    already left and had to come back once.  I'd be

24    inclined to just take a later lunch and work through.

25             THE COURT:  Is that all right with
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7744

```
 1   everyone?  So we'll take a 15-minute break, come
 2   back, and try to get you guys out of here.
 3           All right.  So we'll be in recess about 15
 4   minutes.
 5           (The Court stood in recess.)
 6           THE COURT:  All right.  I think everybody
 7   has got an attorney.  All the defendants are back in.
 8           So Mr. Rhoades, I'll remind you that you're
 9   still under oath.  And Mr. Castle, if you wish to
10   continue your direct examination of Mr. Rhoades, you
11   may do so at this time.
12   BY MR. CASTLE:
13       Q.   I think when we left, Agent Rhoades, we
14   were on Exhibit F -- or is this Exhibit F?  On page
15   2.  Actually if we could scroll to page 3.  I want
16   you to look at the fourth paragraph down, if we
17   could.  There is an indication here that the crime
18   scene was documented with a 35-millimeter camera and
19   that also an Agent LaCuesta videotaped the scene.  Do
20   you see that?
21       A.   Yes.
22       Q.   Was Agent LaCuesta a crime scene detective?
23       A.   Yes.
24       Q.   And do you recall that he had videotaped
25   the scene?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7745

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124

```
 1        A.   No, I don't recall being present when they

 2   were processing the scene.  I think I was doing

 3   interviews or something at that time.

 4        Q.   When the file was turned over to the FBI,

 5   was it just the paper file, or did they get other

 6   items, like photographs and videotapes and things of

 7   that nature?

 8        A.   I believe they got copies of all of the

 9   photographs and videotapes and stuff.  I know we kept

10   the collected evidence, physical evidence.

11        Q.   Okay.  So if it was collected as physical

12   evidence, you maintained it as a custodian at

13   whatever part of the state patrol that keeps those

14   things; right?

15        A.   Yes, sir.

16             MR. CASTLE:  I have no other questions.

17             THE COURT:  Thank you, Mr. Castle.

18             Do any other defendant have direct

19   examination of Mr. Rhoades?  Mr. Solis.

20             MR. SOLIS:  I do, Your Honor, very briefly.

21                  DIRECT EXAMINATION

22   BY MR. SOLIS:

23        Q.   Mr. Rhoades, I know Felipe Gonzalez is

24   outside the door, so I'll be very brief.  But you did

25   mention that you were the assigned case agent to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Castillo murder; right?

2         A.    Yes.

3         Q.    And I think you said that Mr. Felipe

4    Gonzalez was the Garza murder?

5         A.    Yes.

6         Q.    But nonetheless, you coordinated the

7    investigations somewhat?

8         A.    We exchanged information and talked about

9    it and assisted, maybe sitting in on interviews or

10   whatever.

11        Q.    And you and he were aware of the progress

12   of your respective investigations?

13        A.    Yes, sir.

14        Q.    Okay.  So that's my focus, then.  Being

15   coordinated and aware of the respective

16   investigations, do you know -- a follow-on to a

17   question asked of you a little while ago -- do you

18   know if there was any physical evidence that helped

19   solve or at least advance the Garza murder?

20        A.    Not to my knowledge, no.

21        Q.    Had there been, you would have been aware

22   of it, obviously; right?

23        A.    Yes, sir.

24        Q.    And I think you said since 2001 and

25   certainly since 2003, for lack of a better word, the



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                         1-800-669-9492
                                            e-mail: info@litsupport.com

DNM 7747

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 126   7748

```
 1    Castillo investigation was cold; that is, it was

 2    shelved; it was just not advancing or going anywhere.

 3    Is that pretty much accurate?

 4         A.   Yes, sir.

 5         Q.   Up until, I think you said, 2007 when Mr.

 6    Lujan started reaching out and talking; is that

 7    right?

 8         A.   Yes, sir.

 9         Q.   Does that go for the Garza murder, to your

10    knowledge?

11         A.   Yes, sir.

12         Q.   So both investigations were pretty much, to

13    use your words, idle up until 2007, when Mr. Lujan

14    was made available as a witness?

15         A.   Yes, sir.

16         Q.   And just to conclude on the photos and

17    video of the Castillo scene, was the same procedure

18    done on the Garza scene?  That is, was it somehow

19    documented with photographs or 35-millimeter video?

20         A.   Yes, sir.

21         Q.   That was done?

22         A.   I'm not -- I know photographs were.  I'm

23    not sure about the crime scene video.

24              MR. SOLIS:  Thank you, sir.  Nothing

25    further.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7748

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 127

```
 1                THE COURT:  Thank you, Mr. Solis.

 2                Any other defendant?

 3                Mr. Beck, do you have cross-examination of

 4    Mr. Rhoades?

 5                MR. BECK:  Yes, Your Honor.

 6                THE COURT:  Mr. Beck.

 7                        CROSS-EXAMINATION

 8    BY MR. BECK:

 9         Q.   Good afternoon, Agent Rhoades.

10         A.   Good afternoon.

11         Q.   I want to take you back to Exhibit F, which

12    was the supplemental police report for your

13    investigation into Frank Castillo.

14                So this is the supplemental report that you

15    were shown earlier.  It's Defendants' Exhibit F and

16    it says that a copy was sent to you, Agent Rhoades.

17    Do you remember seeing the video that this report

18    says that Agent LaCuesta took?

19         A.   No, I don't.

20         Q.   And I think you said that copies -- at

21    least copies of photographs were given over to the

22    FBI; right?

23         A.   To my knowledge, yes.  I know on the

24    Castillo case, I did.

25         Q.   And in 2001 when this report was written --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7749

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 128

```
 1    let me see.  There we go.  Just finding the date, so
 2    we're on the same page.  It looks like -- was this
 3    report written on 5/3/2001?
 4         A.   Yes, sir.
 5         Q.   At that time, this was a State Police
 6    investigation; right?
 7         A.   Yes.
 8         Q.   And there were no FBI agents joining the
 9    investigation with you at that time?
10         A.   No.
11         Q.   When you provided copies of the photographs
12    to -- I think you said you provided those to the
13    federal authorities, I'm guessing the FBI, at some
14    point?
15         A.   Yes, and I don't recall who it was at that
16    time, but --
17         Q.   Okay.  And I guess my question was:  What
18    time are we talking about?  When did you provide
19    these photographs to the FBI?
20         A.   I don't remember, actually, and I don't
21    know if I even documented it.
22         Q.   Sure.  You provided the photographs to the
23    FBI sometime around 2015; right?
24         A.   That could be, yes.
25         Q.   And so I guess that's another couple
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7750

1    questions I have here.  Did you ever testify before a

2    federal grand jury in connection with your

3    investigation of the Castillo murder?

4         A.   Yes, I did.

5         Q.   And when was that?

6         A.   It was twice, actually.  One time in

7    Albuquerque, and one time here in Las Cruces.  And

8    again, I don't recall the time or the date of it.

9         Q.   Okay.  And those -- the times that you

10   testified, was that within, let's say, sometime after

11   2014?

12        A.   I believe it was, yes.

13        Q.   All right.  And the first time that you

14   testified in Federal Court in relation to, let's say,

15   your investigation into any SNM crimes, was that in

16   the last month or two here in Las Cruces?

17        A.   Yes, it was.

18        Q.   And if you know, was your testimony in

19   front of the federal grand jury part of this case

20   that we're sitting here today for?

21        A.   Yes.

22        Q.   I think you said with Mr. Solis -- and

23   sorry, I'm kind of working backwards here; it's a

24   little bit fresher -- that there was no physical --

25   or at least you weren't aware of any physical

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7751

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 130

1     evidence to advance the Garza murder; is that right?

2           A.    That's correct.

3           Q.    And in prosecuting -- well, I guess you

4     wouldn't be prosecuting.  In investigating crimes,

5     including murders, in your experience, if they're

6     adopted for prosecution by either the district

7     attorney's office or the U.S. Attorney's Office, is

8     physical evidence an important aspect in the

9     investigation?

10          A.    It could be.  Usually it is important.

11          Q.    And with Mr. Burke, he asked you about the

12    Corrections Department monitoring phone calls and

13    mail after the Castillo murder.  Do you remember

14    that?

15          A.    Yes, I do.

16          Q.    And I think you said that the Corrections

17    Department or STG or STIU would call you if they

18    found anything pertinent.  Do you remember that?

19          A.    Yes.

20          Q.    Did they call you?

21          A.    I don't recall them calling me relating to

22    phone messages or mail.  They did call with

23    information, verbal intelligence, that they had

24    received; and we met on that.

25          Q.    I'm going to show you what's been admitted

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7752

```
 1   as Exhibit D.  And do you remember going over this
 2   email on your direct examination from 2003?
 3        A.   Yes, sir.
 4        Q.   All right.  In that first sentence, does it
 5   say that these cases have been on an active basis for
 6   some time since the AUSA's office has apparently
 7   shelved them?
 8        A.   Yes.
 9        Q.   And do you know if the AUSA's office
10   shelved them?
11        A.   No, I don't.
12        Q.   And I'm guessing, then, you don't know why
13   the AUSA's office shelved them, if they did?
14        A.   No, I don't.
15        Q.   And in that second paragraph, the second
16   sentence there, and it's referring to Agent Venegas,
17   it says, "He will be in a better position to try and
18   develop some prison gang leads and/or deal with the
19   AUSA's office on them."
20             Did I read that right?
21        A.   Yes, sir.
22        Q.   So does that mean -- does that indicate to
23   you that at this time, according to Steven Libicer,
24   at least, he thought that they had not been in a good
25   position with leads to present it to the AUSA's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7753

1   office?

2        A.   It kind of left an indication that the

3   federal agents, FBI, had been working it and there

4   had been something submitted to the AUSA's office.

5        Q.   But does it say where he will be -- my

6   question is:  Does it say where he will be in a

7   better position to try and develop some prison gang

8   leads and/or deal with the AUSA's office on them --

9   does that indicate to you that he at that point was

10  not in a good position to deal with the AUSA's

11  office?  Does that indicate to you that at that

12  point, they had not been in a position to develop

13  some prison gang leads or deal with the AUSA's

14  office?  I'm just asking your opinion.

15       A.   Yes, sir.

16       Q.   And you talked about -- I think it was a

17  2008 interview of Mr. Leonard Lujan.  Do you remember

18  that?

19       A.   Yes, I do.

20       Q.   And you said -- I think you said this a

21  couple of times, but your words were:  These cases

22  had been idle for some time before that.  Were those

23  your words?

24       A.   Could have been.  They had been idle.

25       Q.   And what do you mean by "the cases had been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7754

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

```
 1    idle"?
 2         A.    Really no movement or investigation, to my
 3    knowledge, going on them; pretty much just waiting
 4    for new information.
 5         Q.    And with Exhibit U, I don't have a copy of
 6    that, but it sounds like that was a PowerPoint that
 7    you helped prepare to -- I think you said it helped
 8    simplify the case.  Was that the PowerPoint's idea?
 9         A.    Yes, sir, and I think I did prepare that
10    PowerPoint.
11         Q.    Okay.  And so I think you also said that up
12    until that point, the case had been scattered and
13    fragmented.  Is that fair to say?
14         A.    Yes, sir.  In terms of what was assigned to
15    it, hands it's gone through, the case file went
16    through some hands, you had various agencies,
17    Corrections, State Police, conducting interviews
18    independent, it appears, of each other.
19         Q.    Sure.  It sounds like at some point during
20    this period or maybe during another period you had
21    some involvement with the Southern New Mexico Gang
22    Task Force; is that right?
23         A.    No, I've never been involved with the task
24    force like that.
25         Q.    Okay.  I must have misunderstood.  I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7755

```
 1    you were talking with Mr. Castle and he asked you
 2    about that task force.  But we'll move on.  That's
 3    fine.
 4           Did Mr. Lujan tell you that he participated
 5    in the murder of Mr. Castillo or Mr. Garza?
 6    A.    Not -- not -- how do I word it?  Not
 7    physically participated.
 8    Q.    What did he tell you he'd done?
 9    A.    That he was told to facilitate the hits.
10    Q.    Okay.  And in your work in this case, have
11    you spoken with FBI Agent Bryan Acee?
12    A.    Yes.
13    Q.    Have you spoken with any other FBI agents
14    over the years?
15    A.    Yes, I have.
16    Q.    Do you recall who any of those agents were?
17    A.    I recall one of them was Lance Roundy,
18    maybe, and there were others in the room; and I think
19    on other occasions.  I don't recall or remember what
20    their names are.
21    Q.    Okay.  Do you remember, have you ever
22    spoken with Sonya Chavez about these cases?
23    A.    I think she was one of many at a meeting we
24    had in Albuquerque at their office.
25    Q.    So you had a meeting in Albuquerque with a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135 of 757

```
 1    number of FBI agents?
 2         A.   Yes, and the U.S. Attorney's Office.
 3         Q.   And the U.S. Attorney's Office was there?
 4         A.   And I think a representative from the Third
 5    Judicial District Attorney's office was there, as
 6    well.
 7         Q.   All right.  And I probably should have
 8    asked, but in Exhibit U, your PowerPoint, it
 9    indicated that you'd spoken with the Third Judicial
10    District Attorney's Office and that at that time it
11    looked like the case was going to be accepted at
12    least for federal authorities to investigate; right?
13         A.   At some point in there, yes, it did.
14         Q.   So does that indicate to you that up until
15    that time, it had been primarily a state
16    investigation?
17         A.   Yes, other than Agent Venegas working with
18    the FBI Gang Task Force.
19         Q.   Sure.  And so my question to you is:  In
20    any of these discussions with Special Agent Acee,
21    with Special Agent Lance Roundy, with any of the
22    special agents you've met with or with anyone from
23    the U.S. Attorney's Office, has anyone indicated to
24    you that it would be -- or have you ever heard that
25    it would be a good idea to delay prosecution of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7757

```
 1    Castillo and Garza murders for tactical reasons?

 2         A.    No.

 3               MR. BECK:  Nothing further, Your Honor.

 4               THE COURT:  Thank you, Mr. Beck.

 5               All right, Mr. Castle.  Do you have any

 6    redirect of Mr. Rhoades?

 7               MR. CASTLE:  No, Your Honor.

 8               MR. BURKE:  No, Your Honor.

 9               THE COURT:  Anybody else?

10               All right.  Mr. Rhoades, you may step down.

11               Is there any reason that Mr. Rhoades cannot

12    be excused from the proceedings?  From the

13    defendants?

14               MR. BURKE:  No, Your Honor.

15               MR. CASTLE:  No, Your Honor.

16               THE COURT:  Any objections, Mr. Beck?

17               MR. BECK:  Not from the Government, Your

18    Honor.

19               THE COURT:  You're excused from the

20    proceedings.  Thank you for your testimony.

21               All right, Mr. Burke, do you have Mr.

22    Gonzales you want to call?

23               MR. BURKE:  Yes, Your Honor.  Thank you.

24               THE COURT:  Mr. Burke.

25               Mr. Gonzalez, if you'll come up and stand
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   next to the witness box on my right, your left,

 2   before you're seated, my courtroom deputy, Ms. Bevel,

 3   will swear you in.

 4                   FELIPE GONZALEZ,

 5        after having been first duly sworn under oath,

 6        was questioned, and testified as follows:

 7            THE CLERK:  Please state your name and

 8   spell your last name for the record.

 9            THE WITNESS:  Felipe Gonzalez,

10   G-O-N-Z-A-L-E-Z.

11            THE COURT:  Mr. Gonzalez.  Mr. Burke.

12                   DIRECT EXAMINATION

13   BY MR. BURKE:

14        Q.   Mr. Gonzales, did you have a career in law

15   enforcement?

16        A.   Yes, sir.

17        Q.   Would you please tell us about that?

18        A.   I'm a retired state police officer,

19   investigator, supervisor.  I retired in 2013.

20        Q.   Tell us about your career.  What sorts of

21   things did you do as a state police officer?

22        A.   You know, I did patrol, I did

23   investigations.  All kinds of duties involving law

24   enforcement.  Yes, sir.

25        Q.   How many years total was that?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 138

```
 1            A.    Just over 20 years.

 2            Q.    Going back to 2001, what was your position

 3     with the State Police at that time?

 4            A.    At the time I was assigned as a criminal

 5     agent.

 6            Q.    And as criminal agent back in 2001, were

 7     you involved in the investigation of two homicides

 8     involving a Mr. Garza and a Mr. Castillo?

 9            A.    Yes, I was.

10            Q.    Would you tell us what you did?  And you

11     can use a narrative at this point.

12            A.    It's been a long -- it's been a while.  It

13     was in 2001, I believe it was, we had got a call of a

14     possible homicides at the penitentiary.  And I went

15     out there, and shortly thereafter, we got information

16     that there was actually two homicides.  And so I got

17     assigned one of the homicides, which was Rolando

18     Garza.  I believe Agent Rhoades got assigned the

19     other homicide, which was Mr. Castillo.

20            Q.    And what did you do as the lead

21     investigator from the State Police on the Garza

22     homicide?

23            A.    My role was to interview witnesses, look at

24     the crime scene, see what we had; but mainly doing

25     interviews and investigating, talking to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7760

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 139

```
 1   correctional officers, inmates out there at the
 2   facility, going over the crime scene at the time, as
 3   well; and follow-up with investigation on that
 4   particular homicide.
 5        Q.   Was the gathering of documents part of your
 6   investigation?
 7        A.   Yes, sir.
 8        Q.   Tell us what you would do in terms of
 9   gathering documents.
10        A.   Anytime we did interviews, we'd have to
11   document we were at the scene.  Just arriving at the
12   scene, we would have to document that; you know, the
13   time, the location who we met with, what we did.
14   What we did regarding that particular case was all
15   documented in reports.
16        Q.   Okay.  Did there come a time when the level
17   of activity slowed down because you weren't able to
18   close the case or solve it?
19        A.   Yes.  At some point it becomes, like, an
20   inactive case with, you know, follow-up if we
21   determine to be -- get more leads on the case.
22        Q.   All right.  Thank you, sir.  Let me ask you
23   to look at Exhibit D and see if you recognize that
24   email.  You are a recipient of it.  And see if that
25   is a document you remember.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7761

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 140

1    A.   Yes.

2    Q.   And so what happened in 2003 with respect

3    to those two homicides?

4    A.   What happened was:  I believe we had an

5    agent -- Albert Venegas was assigned to the FBI task

6    force, and he was reassigned those cases to -- since

7    he was going to be working with the FBI and see if he

8    could develop some more leads.

9    Q.   Thank you very much.  So the level of your

10   activity at that point would have slowed down, I take

11   it, in 2003?

12   A.   Correct.

13   Q.   Did there come a time in 2007 when you had

14   some new activity with regard to a Mr. Lujan?

15   A.   Yes, I did.

16   Q.   Would you tell the Court about that,

17   please?

18   A.   At the time, I was back in patrol here in

19   Las Cruces, as well.  And we had got information

20   regarding an individual in Albuquerque that had

21   provided some information to one of the detectives up

22   in Albuquerque -- I think it was Rich Lewis -- and

23   had given him information on some other cases, other

24   homicides up in Albuquerque, and also indicated that

25   there was information regarding our two possible

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7762

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7763

1    homicides here in Las Cruces in the 2001 cases.

2         Q.   And as a result of that, was there an

3    increase in activity on the homicides?

4         A.   Was there a what, again?

5         Q.   An increase in investigative activity as a

6    result of the interviews with Mr. Lujan.

7         A.   Yes.  What we did is:  We did some more

8    follow-up.  We went up -- I went with Agent Rhoades

9    to Albuquerque.  We met with Mr. Rich Lewis and Mr.

10   Lujan, and we did pretty much an interview between

11   all of us and his attorneys, I believe, at the time.

12        Q.   All right.  I'm going to show you the first

13   page and last page of a PowerPoint that was developed

14   by your colleague Agent Rhoades and just see if you

15   recall that PowerPoint.  I believe it's page 543.  Do

16   you remember this PowerPoint to any degree?  I know

17   you weren't the drafter of it, but do you remember?

18        A.   Yes.

19        Q.   Let me ask you now to turn to Exhibit U,

20   which is the final page of that PowerPoint, and ask

21   you to see in the top bullet point you had this

22   meeting.  I think you just referred to it.  Do you

23   recall that meeting?

24             THE COURT:  Is U up there?  Do you have U,

25   or is there a U up there on the shelf?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7763

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 42764

```
 1                    THE CLERK:  I don't have a U.

 2                    MR. BURKE:  Here you go.

 3                    THE COURT:  I don't want to steal your

 4     copy.

 5                    MR. BURKE:  Oh, I know what's on it.

 6                    MR. BECK:  We should probably move that

 7     into evidence.  The United States doesn't object to

 8     that.

 9                    MR. BURKE:  Thank you.  I actually thought

10     I had already done that.

11                    THE COURT:  Any objection?  Not hearing

12     any, Defendants' Exhibit U will be admitted into

13     evidence.

14                    (Defendants' Exhibit U admitted.)

15                    MR. BURKE:  Thank you, Your Honor.

16     BY MR. BURKE:

17          Q.   And so this was a good meeting with a

18     number of people up there actually in the DA's

19     office?

20          A.   That's correct.

21          Q.   All right.  And then did you relinquish

22     control of the investigation to the FBI Agents

23     Monarko and Chavez?

24          A.   Yes, we did.

25                    MR. BURKE:  Thank you.  Those are my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7764

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

```
 1   questions.

 2              THE COURT:  Thank you, Mr. Burke.

 3              Any other defendant?  Mr. Solis?

 4              MR. SOLIS:  Thank you, Your Honor.

 5              THE COURT:  Mr. Solis.

 6                        DIRECT EXAMINATION

 7   BY MR. SOLIS:

 8        Q.   Mr. Gonzalez, good morning.

 9        A.   Good morning.

10        Q.   So -- you'll have to -- well, I'm rather

11   new to the case so I neglected to ask -- or maybe I

12   just hadn't looked into -- Mr. Rhoades -- he was your

13   counterpart or your colleague in the investigation.

14   What is his agency back then?  What was the agency he

15   was working for?

16        A.   He's always been a state police officer, as

17   well.

18        Q.   So you and he have similar training, I

19   guess.

20        A.   Yes, sir.  He's got a lot more training

21   because he's been on the department a lot longer.

22        Q.   Right.  And some of that training involved

23   basic Law Enforcement Academy stuff?

24        A.   Right.

25        Q.   And on-the-job training.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7765

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 144

```
 1        A.   Right.

 2        Q.   And periodic seminar training along that

 3   career?

 4        A.   Right.   Criminal investigations techniques

 5   and interrogation.   Yes, sir.

 6        Q.   And some of that involves knowing how to

 7   preserve a scene?

 8        A.   Yes.

 9        Q.   And memorialize evidence; right?

10        A.   Yes, sir.

11        Q.   And you would rather do that close in time

12   to the event; is that right?

13        A.   That's correct.

14        Q.   And you'd rather obtain statements close in

15   time to the event; is that right?

16        A.   Correct.

17        Q.   And you'd rather memorialize or record

18   those statements for future use; right?

19        A.   Correct.

20        Q.   Okay.   And there is a reason for wanting to

21   memorialize or record, preserve evidence close in

22   time to the event, isn't there?

23        A.   Yes.

24        Q.   Why is that?

25        A.   You get more of an accurate picture of what
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7766

1    happened, and everything is fresh in everybody's

2    mind.

3         Q.   And if there's any suspect changes that

4    come down the pike, then you've got that recorded

5    already close in time to the event; right?

6         A.   Right.

7         Q.   Okay.  So tell me if you agree with Mr.

8    Rhoades where he says -- and he might have and Mr.

9    Burke might have covered it already -- where he says

10   right around from 2001 and certainly by 2003, up

11   until the Lujan incident later, this case had

12   basically gone cold and not much was happening; it

13   was idle; is that right?

14        A.   That's correct.  Yes, sir.

15        Q.   So up until -- well, when Mr. Burke asked

16   you about your information on Lujan, your words were

17   "got active again" were your exact words, was that

18   about 2007?

19        A.   Yes, it was.

20        Q.   So prior to 2007, when you compiled,

21   preserved, gathered, memorialized evidence in '01,

22   was there any attempt to present the case to the

23   grand jury on the state side here with Susana

24   Martinez back then?

25        A.   Actually, what I recall is:  We did have a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7767

1    meeting with them.  I'm trying to remember if it was

2    before the Lujan or after, as well.  I think we might

3    have done both.  I'm sure.  However, I don't believe

4    they wanted to pursue the case at the time.

5         Q.   Well, I'll have to press you on that.

6    Before Lujan, was there an attempt to present it to

7    the grand jury with Susana Martinez, Third Judicial

8    District in New Mexico?

9         A.   I'm not sure if it was going to be

10   presented, sir.  We just met with the attorneys to

11   review the cases.  Right.  Yes, sir.

12        Q.   And so your intent was never to present it

13   to the grand jury if you met with the district

14   attorney or assistant district attorneys?

15        A.   Well, we would be ready.  It would just be

16   a matter of the attorneys wanting to pursue the case,

17   and looking at all the reports and interviews and

18   evidence.

19        Q.   And that was a big no, I guess; right?

20   They decided not to pursue indictment?

21        A.   That's correct.

22        Q.   Mr. Rhoades indicated that he was --

23   although not the lead investigator in the Garza

24   murder, like you were, he was certainly aware of your

25   efforts in that murder because he was kind of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7768

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 147769

```
 1    coordinating the Castillo murder with your efforts in
 2    the Garza murder.  Do you agree with that?
 3         A.   That's correct.
 4         Q.   And he indicated to me that as far as he
 5    knew, the Garza murder did not result -- the
 6    investigation did not result in any -- there wasn't
 7    any physical evidence that was located or preserved
 8    to further that investigation for that murder; is
 9    that right?
10         A.   That's correct.
11         Q.   And having agreed or having related to me
12    the training that you've had, that you say you were a
13    participant in over the years, as a good investigator
14    you'd want more than just witness statements.  You'd
15    want physical evidence; is that right?
16         A.   You always want physical evidence.
17         Q.   And you'd want reliable witness statements;
18    is that true?
19         A.   That's correct.
20              MR. SOLIS:  I'll pass the witness.
21              THE COURT:  Thank you, Mr. Solis.
22              Any other defendant have direct examination
23    of Mr. Gonzales?
24              Mr. Beck, do you have cross-examination of
25    Mr. Gonzales?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7769

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 148 7770

```
 1              MR. BECK:  I do, Your Honor.

 2              THE COURT:  Mr. Beck.

 3                    CROSS-EXAMINATION

 4   BY MR. BECK:

 5       Q.   Good afternoon, Agent Gonzalez.

 6       A.   Good afternoon.

 7              MR. BECK:  Ms. Gilbert, would you bring up

 8   Exhibit U for me, please?

 9       Q.   Do you remember talking about this exhibit

10   just a few moments ago?

11       A.   Yes, sir.

12       Q.   And I think you said that in 2003 the

13   investigation had slowed down.  Do you remember that?

14       A.   Yes, sir.

15       Q.   And you thought that Agent Venegas, who

16   was, I guess -- your understanding was, he was on the

17   task force with FBI agents; is that right?

18       A.   That's correct.

19       Q.   And let me ask you this first.  Did you

20   produce this PowerPoint?

21       A.   No, I believe that was produced by Agent

22   Rhoades.

23       Q.   Did you help him make it?

24       A.   I think we shared the information and we

25   looked at it.  I reviewed it at the time, yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7770

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 149

1        Q.   Okay.  So based on this, it looks like in

2    2008, July 30, 2008, that would have been after your

3    interview with Mr. Lujan; right?

4        A.   Yes, sir.

5        Q.   And so if -- looking at the second bullet

6    point, if the Third Judicial District attorney Susana

7    Martinez and Chief Deputy District Attorney Amy

8    Orlando advised they would agree to have both

9    investigations relinquished to the FBI, does that

10   tell you whether the State was still investigating

11   and looking at maybe prosecuting these on the State

12   side, at least before July 30?

13       A.   I think we kind of met with them after we

14   got the interview with Mr. Lujan, and that was the

15   reasoning to meeting with them again.  And I think at

16   that point, that's when a meeting was -- decided to

17   meet with the FBI again and pursue that.

18       Q.   Did you attend a meeting in Albuquerque

19   related to -- I think in this time period where there

20   were FBI agents and assistant U.S. Attorneys talking

21   about, I guess, this case and other SNM cases.  Were

22   you at that meeting?

23       A.   I believe I was at one meeting.  I'm not

24   sure how many or how -- I do remember attending one

25   meeting, yes, sir.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7771

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 150 772

1        Q.   And do you remember the FBI agents who were

2   there?

3        A.   I think the lead on it was a lady by the

4   name of Sonya.  I'm not sure of her last name.

5        Q.   Was it Sonya Chavez?

6        A.   Yes.  Yes, sir.

7        Q.   Do you remember anyone else that was there?

8        A.   And also Mackenzie.  She was also there, as

9   well.

10        Q.   If you remember, were there other FBI

11   agents there?

12        A.   It's hard to say.  It's been a while.

13        Q.   I'm not testing you.

14        A.   I'm sure there was.  I'm not too -- I can't

15   remember, to be honest with you.

16        Q.   And are you sure there was, or you just

17   don't remember?

18        A.   I just don't remember.

19        Q.   I just want to be fair.

20        A.   No, that's fine.

21        Q.   Were there assistant U.S. Attorneys in the

22   room at this meeting, if you remember?

23        A.   I would have to say there was, but I just

24   don't remember, to be honest with you.

25        Q.   In your investigation of the Garza murder

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7772

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

1    or your connection with this case at all, did you --

2    and "you" being the New Mexico State Police -- did

3    you cultivate any cooperators who would testify in

4    the Castillo and Garza murders?

5         A.   I think there was a gentleman that I had

6    interviewed.  He was also, you know, at the prison at

7    the time of the incident.  I believe it was a Mr. Ray

8    Molina and, I remember interviewing him, and I

9    believe he was willing to testify at the time to what

10   he observed and what he heard.

11        Q.   Okay, so Ray Molina.  And then I guess

12   Leonard Lujan would be a second?

13        A.   Correct.

14        Q.   So anyone else -- in the whole time you

15   worked on this case, anyone else besides Ray Molina

16   and Leonard Lujan?

17        A.   No.  They were the only two.

18        Q.   So anytime in your investigation in this

19   case, including your meetings with the district

20   attorney's office and your meeting with the FBI where

21   there may have been AUSAs there, did you ever hear

22   anyone say that you should intentionally delay

23   prosecution of the Garza and Castillo murders to gain

24   a tactical advantage?

25        A.   No.  Of course not.  Never.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7773

```
1         Q.    Did you ever hear anything like that?

2         A.    No, sir.

3               MR. BECK:  No further questions, Your

4    Honor.

5               MR. BURKE:  No redirect.

6               THE COURT:  Okay.  Nobody else has any

7    redirect?

8               All right, Mr. Gonzalez.  You may step

9    down.

10              Is there any reason that Mr. Gonzalez

11   cannot be excused from the proceedings?

12              MR. BURKE:  He can be excused, Your Honor.

13              THE COURT:  Mr. Beck, can he be excused?

14              MR. BECK:  He may.

15              THE COURT:  Not hearing any objection,

16   you're excused from the proceedings.  Thank you for

17   your testimony.

18              All right.  Where do we want to go next?

19   We've still got a couple of witnesses, 104s, left?

20              MS. ARMIJO:  Your Honor, I know that Mr.

21   Lucero and his attorney, Mr. Fallick, are here.

22              THE COURT:  Yes, I saw Mr. Fallick come in

23   the back of the courtroom.

24              MS. ARMIJO:  They are here.

25              THE COURT:  Do you want to do that next?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7774

```
1               MR. CASTLE:  That makes sense, Your Honor.
2               THE COURT:  Does that sound right?
3               So I keep my records together, the Exhibit
4     C that the defendants introduced on its motion to
5     dismiss -- that's a big exhibit; right?  That's a big
6     one?
7               MR. CASTLE:  Yes.
8               THE COURT:  All right.  Mr. Fallick, why
9     don't you come on in the well here a second and we'll
10    talk a bit and get everybody on the same page.
11              What I understand is that you've sent a
12    redacted transcript to Mr. Castle.  Can you tell
13    me -- I don't want you to reveal the redactions, but
14    is it like just a few things?  Is it big things?
15    What, kind of, is the nature of the redactions that
16    you had?
17              MR. FALLICK:  The redactions all had to do
18    with family members and locations, discussions during
19    sentencing about those.
20              THE COURT:  Would you say it's like a few
21    lines, or is it pages and pages?
22              MR. FALLICK:  It's pages and pages.  There
23    are discussions where Mr. Winterbottom was in the
24    courtroom with Your Honor about the options for Mr.
25    Lucero's release, you know, where he was going to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7775

```
 1   released to, under what conditions; is it going to be
 2   with family, is it going to be with the halfway
 3   house?  And there were some extensive --
 4          THE COURT:  It was more on the 216 than on
 5   the supervised release on 217?
 6          MR. FALLICK:  And there were things on the
 7   317, as well.  There were discussions about location.
 8          THE COURT:  Let me see -- that nature of
 9   stuff, defendants okay with those redactions?
10          MR. CASTLE:  Yes, Your Honor.
11          THE COURT:  So y'all had the transcript,
12   you felt like you got what you needed out of the
13   transcript?
14          MR. CASTLE:  I haven't looked at it, but --
15   until we had a decision I didn't want to look at it.
16   But I trust that Mr. Fallick has made appropriate
17   redactions.
18          THE COURT:  So the nature of those are okay
19   with everybody?  All right.
20          So anything else we need to discuss before
21   we put Mr. Lucero on the stand?
22          MR. FALLICK:  No, sir.
23          THE COURT:  All right.  Mr. Beck?
24          MR. BECK:  I think we need to know what
25   he's being offered for, and what is proffered.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 155 of 777

 1           THE COURT:  All right.  Why don't, Mr.
 2    Castle, you educate me a little bit or remind me a
 3    little bit as to what Mr. Lucero's testimony goes to.
 4           MR. CASTLE:  I'm going to do this in a way
 5    that I don't make a statement that might influence
 6    the witness.
 7           THE COURT:  All right.  Mr. Lucero, why
 8    don't you do this?  Why don't you step right behind
 9    that door right there, so we can have a robust
10    discussion here about your possible testimony without
11    you hearing it.
12           You can go either place, Mr. Fallick.  You
13    can go with him or stay here.
14           (Mr. Lucero left the courtroom.)
15           MR. CASTLE:  Your Honor, in motion number
16    1909 we indicated in paragraph 15 the basis of our
17    calling Mr. Lucero.  Mr. Lucero had participated in
18    some interviews with law enforcement.  During those
19    interviews, or at least some of those interviews, he
20    indicated that Christopher Chavez and Joseph Gallegos
21    admitted their involvement in the murder of Mr. Garza
22    after the murders happened, sometime afterwards.  I
23    can't place a date on it because the 302s are not
24    very specific as to when that happened.
25           My questions will be whether he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7777

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156

```
 1    implicates -- whether they implicated Billy Garcia;

 2    and if not, then my questioning ends.  If the answer

 3    is, yes, they did implicate Billy Garcia, then I'm

 4    going to explore the circumstances surrounding it to

 5    determine whether it meets the 804(b)(3) exception.

 6              THE COURT:  Okay.  All right.  So this is

 7    one you're trying to squeeze into a statement against

 8    interest, Mr. Beck?

 9              MR. BECK:  I don't know what the statements

10    are, but it sure sounds like it.

11              THE COURT:  Okay.  All right.  So anything

12    else?  If not, why don't we go ahead and bring Mr.

13    Lucero back in and put him on the stand.

14              (Mr. Lucero entered the courtroom.)

15              THE COURT:  All right, Mr. Lucero, if

16    you'll come on up to the witness box, before you're

17    seated, Ms. Bevel, my courtroom deputy, will swear

18    you in.

19                    LEROY LUCERO,

20        after having been first duly sworn under oath,

21        was questioned, and testified as follows:

22              THE CLERK:  Please be seated.  Would you

23    state your name and spell your last name for the

24    record?

25              THE WITNESS:  Leroy Lucero.  L-U-C-E-R-O.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7778

 1          THE COURT:  All right.  Mr. Lucero, Mr.

 2    Castle.

 3                    DIRECT EXAMINATION

 4    BY MR. CASTLE:

 5      Q.  Mr. Lucero, my name is Jim Castle.  I'm one

 6    of the attorneys for Billy Garcia.  I just have a few

 7    questions about a pair of murders that happened back

 8    in 2001 at the Southern New Mexico Correctional

 9    Facility.  Specifically, do you know an individual by

10    the name of Christopher Chavez?

11      A.  I decline to answer based on the

12    constitutional right not to be a witness against

13    myself.

14          MR. CASTLE:  Okay.  May I inquire if the

15    Government has given him immunity at this point?

16          THE COURT:  All right.  Mr. Beck, does he

17    have any immunity?

18          MR. BECK:  I don't believe at this point we

19    have provided him a Kastigar letter and adequately

20    debriefed him to have the protection.

21          THE COURT:  So there is neither a Kastigar

22    or any other type of immunity that has been given to

23    him yet?

24          MR. BECK:  He does not.

25          THE COURT:  Mr. Fallick, why don't you talk

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7779

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 158 780

```
 1    to him just a second and see if there's any problem
 2    with this particular question.  If there is, then
 3    I'll make a call.  But why don't you talk and see if
 4    on this particular question there is any problem.
 5              MR. FALLICK:  We have talked about --
 6              THE COURT:  You have talked, and you are
 7    instructing him not to answer this question?
 8              MR. FALLICK:  Yes, Your Honor.  The
 9    discovery that we've been provided shows that there
10    is at least some evidence of Mr. Lucero having
11    communications that could be viewed as
12    conspiratorial.  We deny that there is any criminal
13    activity, but at the same time, any answer to knowing
14    any of these defendants or anything involving the
15    gang could be a brick in the wall towards
16    incrimination of Mr. Lucero, and I would ask him not
17    to answer that question.
18              THE COURT:  You're going to follow that
19    advice, Mr. Lucero?
20              THE WITNESS:  Yes, sir.
21              THE COURT:  Well, I don't know the
22    intricacies enough of this particular issue, but I
23    guess I could see how, having read enough 302s, that
24    this might incriminate him.  So I'm inclined to
25    sustain the privilege.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7780

```
 1              MR. CASTLE:  Your Honor, I'm a criminal
 2   defense lawyer.  I understand why the Fifth Amendment
 3   is being interjected at this point, and I would do
 4   the same, and I think it's a fair claim at this
 5   point.
 6              THE COURT:  All right.  Do you have other
 7   questions you want to pose to make a record?
 8              MR. CASTLE:  No, they're all going to be
 9   the same.  I'm just going to ask that we do the 104
10   hearing with Mr. Lucero after he is given immunity.
11              THE COURT:  All right.  We'll put that on
12   hold.
13              Anyone else need to do anything as far as
14   Mr. Lucero?  Mr. Burke?  Anybody else?
15              MR. SOLIS:  It all depends, for us.
16              MR. BENJAMIN:  Mr. Gallegos would simply
17   join Mr. Castle's request, Your Honor.
18              THE COURT:  Mr. Beck, I assume there's
19   nothing you need to ask him?
20              MR. BECK:  No, Your Honor.
21              THE COURT:  All right, Mr. Lucero, you
22   may -- hold on just a second.
23              MR. CASTLE:  Yes, Judge, I've been tipped
24   off by a colleague, Mr. Blackburn, I should ask one
25   follow-up question.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 160 7782

```
 1                THE COURT:  All right.
 2    BY MR. CASTLE:
 3        Q.   Mr. Lucero, if I were to ask you any more
 4    questions that related at all to the 2001 murders,
 5    would you be reading the same document that you just
 6    read claiming the Fifth Amendment?
 7        A.   Yes, sir.
 8                MR. CASTLE:  Thank you.
 9                THE COURT:  All right.
10                Mr. Lucero, you may step down.
11                Is there any reason Mr. Lucero cannot be
12    excused from the proceedings at this point?
13                MR. CASTLE:  At this point --
14                THE COURT:  Today.
15                MR. CASTLE:  -- I think his attorney said
16    that he would accept subpoenas, but I don't know if
17    that still exists.
18                THE COURT:  Is that still an offer on the
19    table, Mr. Fallick?
20                MR. FALLICK:  What I said was Mr. Lucero
21    was -- personal service wasn't required.  I'm
22    assuming if I'm going to be his counsel throughout,
23    I'll do it.  But otherwise, Mr. Lucero had agreed --
24    actually that was if he didn't have to come here
25    today.  But let me ask him about it.  I don't think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7782

```
 1    there is going to be a need to personally serve him

 2    again, but we hadn't discussed it in this context;

 3    only in the context of not having to appear today.

 4              THE COURT:  Do you want to talk to him

 5    right now?

 6              (Mr. Fallick and Mr. Lucero conferred.)

 7              MR. BECK:  Your Honor, the United States

 8    would request, based on earlier things that we've all

 9    been party to in the last week here, that Mr. Lucero

10    be provided an attorney by the Court.

11              THE COURT:  Well, Mr. Fallick is his

12    attorney.

13              MR. BECK:  Or stay on as his attorney.

14              MR. FALLICK:  As long as the Court will --

15              THE COURT:  After Mr. Winterbottom got off,

16    I put Mr. Fallick on.  That's my memory; right?

17              MR. FALLICK:  Yes.

18              MR. BECK:  I just wanted to make sure.  I

19    know we had discussions about his supervision

20    terminating here, either this week or in the next

21    couple of days, and that Mr. Fallick should probably

22    stay on.

23              THE COURT:  You agree to stay on in the SNM

24    cases?

25              MR. FALLICK:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7783

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 162

```
1              THE COURT:  So we'll continue to pay any
2    vouchers or anything for his continued
3    representation.
4              MR. FALLICK:  Yes, I'll agree to accept
5    service.
6              MR. CASTLE:  Thank you.
7              THE COURT:  All right.  Anything else?
8              All right.  Mr. Lucero, you are excused
9    from the proceedings.  Thank you for your testimony.
10             All right.  What else do we want to take
11   up?  Mr. Castle?
12             MR. CASTLE:  We don't have any more
13   witnesses for the morning session.
14             THE COURT:  So are you done with witnesses?
15             Goodbye, Mr. Fallick.
16             Do you have any more witnesses today?
17             MR. CASTLE:  We do have more witnesses
18   today.
19             THE COURT:  We've got one more 104?
20             MR. CASTLE:  We have -- I'm not sure,
21   Judge.
22             THE COURT:  But you don't have any
23   witnesses right at the present time?
24             MR. CASTLE:  Well, we could call Detective
25   Acee -- I mean Agent Acee.  It's going to take a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7784

```
 1   while with him.
 2             THE COURT:  What's your pleasure?
 3             MR. CASTLE:  I think we should take a lunch
 4   break and come back fresh.
 5             THE COURT:  Is that what you want, Mr.
 6   Beck?
 7             MR. BECK:  I would be just as inclined to
 8   have Agent Acee go on the stand and see if we can
 9   push through.  I'll leave it at the pleasure of the
10   Court.
11             THE COURT:  We're not going to push more
12   than 1:30.  Is that what you wanted?
13             MR. BECK:  Yes, Your Honor.  Yes.
14             THE COURT:  And you're hungry, Mr. Castle?
15             MR. CASTLE:  That is one thing I enjoy.  I
16   know that comes as shock to everyone in the
17   courtroom.
18             THE COURT:  Well, it's hard to get
19   everybody assembled here.  Why don't we plow out a
20   little bit more?  It will make the afternoon a little
21   bit more pleasant.  So we'll get you in the routine
22   of what the jury liked in the last trial.
23             So, Mr. Acee, it looks like you're next.
24   If you'll let Ms. Bevel swear you in before you're
25   seated.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                      BRYAN ACEE,

 2        after having been first duly sworn under oath,

 3        was questioned and testified as follows:

 4                    DIRECT EXAMINATION

 5             THE COURT:  All right.  Mr. Acee, Mr.

 6   Castle.  And this is for purposes of the motion to

 7   dismiss?

 8             MR. CASTLE:  It is, Your Honor.

 9             THE COURT:  All right.

10   BY MR. CASTLE:

11        Q.   Agent, were you the lead agent on an

12   operation called Operation Atonement?

13        A.   Yes, sir.

14        Q.   And did that operation lead to the

15   indictments, one of which is the matter that we are

16   now hearing?

17        A.   Yes, sir.

18        Q.   There is an FBI case number assigned to

19   Operation Atonement?

20        A.   Yes.

21        Q.   A number that ends in 6239655?

22        A.   It is.

23        Q.   Do you recall when that was initiated, that

24   particular operation?

25        A.   March of 2015.  I think I did the official
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7786

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 165 of 787

1    opening the first few days of April.  But I would

2    tell you that I opened the case in March of 2015, and

3    then got around following up with the official

4    write-ups in April.

5        Q.   And the case number starts 281D; is that

6    right?

7        A.   No, sir -- well, it may have.  And I can

8    tell you that the last digits you focused on are the

9    important ones.  Those first three have to do with --

10   it was a 281, before I went to the OCDETF process for

11   funding; once I obtained OCDETF approval from the

12   U.S. Attorney's Office and the Department of Justice,

13   it became a 245.

14       Q.   Okay.  So, basically, those initial numbers

15   correlate to the status of the case as it goes along?

16       A.   Yes, sir.

17       Q.   When that operation started, was the focus

18   on some information that had come to the FBI

19   concerning a threat to certain corrections officials?

20       A.   Yes, sir.

21       Q.   And then did it expand after that?

22       A.   Yes.

23       Q.   As part of your work on that operation, did

24   you access prior FBI investigations of the SNM?

25       A.   Eventually, yes.

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492



**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7787

1    Q.   When you say "eventually," when do you

2    think you first started to access prior FBI

3    investigations?

4    A.   Well, if I may, I'd classify the case in

5    three phases:  The initial threats you mentioned.  My

6    next focus was developing informants and doing street

7    buys.  I put those together because, of course, the

8    street buys lead to informants.  And then the third

9    prong would be the historical look.  So I started the

10   historical look last -- to give you a specific date

11   is tough to do, but I will tell you that I spent

12   several months kind of pounding the pavement and

13   doing buys.  And I think we did somewhere around 80

14   or 90 drug and gun buys.

15   Q.   So the first stage was dealing with the

16   current threat, it sounds like?

17   A.   Yes, sir.

18   Q.   Then the second stage was casting the net

19   wider to develop informants?

20   A.   Yes.  And charges, yes.

21   Q.   And the drug buys were used primarily to

22   have some leverage over people who you wanted to

23   perhaps turn into informants?

24   A.   It's a secondary reality.  But I'll be

25   clear, my primary objective was to put charges on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167 7789

```
 1   anybody that was S or affiliated with the S.
 2        Q.   But the end result was that because of the
 3   drug buys, you were able to develop some informants?
 4        A.   In many cases, yes.
 5        Q.   Now, in that third stage, was that when you
 6   start to access the historical investigations that
 7   both the FBI had conducted and also state and local
 8   authorities?
 9        A.   Yes, sir.  I asked for anything and
10   everything anyone had.
11        Q.   Was there a temporal scope, or was it just
12   everything on the SNM you could find?
13        A.   Dating back to 1980.  I even tried to get
14   documents related to the riot.
15        Q.   I want to focus specifically on FBI
16   investigations.  Do you recall how many separate
17   investigations you were able to access concerning the
18   SNM prior to Operation Atonement?
19        A.   Yes, sir.  And if you'll allow me to refer
20   to my notes.  In response to your Touhy letter, I
21   took a bunch of notes to answer those questions.
22        Q.   I understand.
23        A.   Would you like me to name the various FBI
24   cases?
25        Q.   Yes, that would be good.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7789

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7790

```
 1        A.   Sure.

 2        Q.   And you don't have to give the initial

 3   lettering.  I think just the last set of numbers

 4   would probably be sufficient.

 5        A.   So the earliest case I found was the one

 6   that ends in 707:  54707.  And that was opened in

 7   2000, and closed in 2003.

 8        Q.   Let's stop there on that one.  What was the

 9   focus of that investigation?

10        A.   That is a control file, or what you heard

11   my colleague yesterday testify about as an intel

12   file.  Simply stated, it's a box for us to be able to

13   file our reports into.  So it's an intelligence file

14   on prison gangs.  And what I found in there was

15   Pedersen's reports.  I think there were 41 reports in

16   all.  And it was just a lot of adoption, him and the

17   agents then adopting what other agencies had done.

18   It looked to me like they had one informant and they

19   filed one federal case.

20        Q.   So you said it's kind of "a box."  I know

21   it's not a physical box.

22        A.   Sure.

23        Q.   But I think you're using that as a

24   metaphor.

25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7790

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 169791

 1       Q.   So was this an SNM box, or was it an all

 2    prison gang box?

 3       A.   That was a -- that's a good question.

 4    There were other gangs there.  I remember seeing Los

 5    Padillos.  And I just looked at this box again the

 6    other day.  I think Los Carnales, and a few other

 7    gangs that I'm not as familiar with.  But there

 8    definitely was an SNM component to it.

 9       Q.   And you gave a specific number of reports

10    that were in that file or box?

11       A.   Yes, sir, I counted 41.

12       Q.   How many of them dealt with SNM?

13       A.   Maybe a dozen.  I'm estimating.  Many of

14    which we saw in the last couple of days in these

15    proceedings.

16       Q.   In the early litigation in this case some

17    of these boxes or files were identified for the

18    Government by the defense.  Do you recall that

19    process happening?

20       A.   I think I was responsible, or somewhat, for

21    that, yes.

22       Q.   And then after the defense was able to

23    identify certain files, then you went and located

24    them, and reviewed the contents of those to see if

25    there was anything relevant to the case at hand?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes, sir.  I recall driving down at least a

2  couple of times with lots of boxes for these

3  attorneys to go through.

4      Q.   Okay.  Why don't go to the next number.

5      A.   Sure.  The next one I have ends in 54711.

6  This is one of Lance Roundy's files.  And that was

7  opened also in November of 2000.

8      Q.   What was the focus of that investigation or

9  file?

10     A.   SNM, purely SNM.  And so this one starts

11 with 281, like you pointed out earlier.  So this is

12 actually a dedicated investigative file, as opposed

13 to an intelligence file.  There is a focus now.

14     Q.   Do you know how long that particular

15 investigative -- is it plan or investigative object,

16 target -- I mean, is the file open for a certain

17 length of time, I guess?

18          (Ms. Harbour-Valdez entered the courtroom.)

19     A.   It's up to the Bureau.  But I can tell you

20 that it was closed on January 11, 2007.

21     Q.   And in that file did you count how many

22 documents?

23     A.   No, sir.

24     Q.   Was there a lot of reports in there?  Or

25 can you estimate?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7792

```
 1          A.   I believe there was.  I know your next
 2   question.  But I do want to tell you that I now have
 3   all the SNM files together and all the boxes are
 4   together.  And it's a lot -- it's difficult for me to
 5   say how much was in that file.  I could follow up and
 6   get you a specific number, though.
 7          Q.   My next question is who is going to win the
 8   Bucknell/Michigan State game.  So if you could
 9   provide your answer to that, please?
10          So you indicated that was a dedicated SNM
11   file?
12          A.   Yes, sir.  And what I see is Roundy opens
13   up a -- subsequently opens up a new file.  My guess
14   is he hadn't been an agent for very long, so he
15   inherited that SNM file from someone else.  So then
16   he opened a new case, much like I did in 2015.
17          Q.   And that new case had a number, right, a
18   different number?
19          A.   Roundy's?  Yes, sir.
20          Q.   What number would that be?
21          A.   62017.  And that was opened September 15,
22   2008.  And that has a lot of information in it.
23          Q.   So let's go back to 54711.  Were there
24   reports in that file that focused on the 2001 murders
25   at the Southern facility?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7793

1      A.   Yes.  Safe to say there would have been,

2   just given the date range.

3      Q.   Now, before we move on to the other files,

4   when there is an investigation that has been

5   undertaken, does that box or that file contain

6   everything, or are there tape recordings and other

7   kinds of items that are placed somewhere else?

8      A.   I'll try to give you a real short, simple

9   answer.  Anything we, as agents, turn in has got to

10   have a case number on it.  So while the drugs may go

11   to one place, a recording may go someplace else,

12   there should be a record of all that under that case

13   number.

14      Q.   So there will be a record, like a receipt

15   or something in the file that would tell you that

16   there is something that might be in evidence

17   somewhere else?

18      A.   Yes.  All kinds of scenarios are jumping up

19   at me where there could be an exception.  But

20   generally, yes.

21      Q.   Well --

22      A.   Mr. Castle, I guess the hesitation might be

23   because so many of these cases deal with adoptions,

24   where -- I'm sure you understand that term -- where

25   we're simply taking someone else's work and putting a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    complaint on it.

 2        Q.    Right.

 3        A.    Sometimes we can't always find perhaps what

 4    you're referring to.

 5        Q.    The best way to go about it then would be

 6    to contact the agent you adopted it from and ask him

 7    if there is anything that might be located at

 8    different places?

 9        A.    Yes.  I'll give you an example:  If I

10    adopted a drug case on a defendant, I'll keep the

11    drugs and all that stuff with the original agency so

12    I don't have to handle it.

13        Q.    So during your collection of information

14    concerning SNM, for each of the investigations that

15    the FBI had, did you follow up with the agents that

16    had done those investigations to see if there was

17    additional information, some other location other

18    than the file or the box that we're talking about?

19        A.    Eventually, yes.  Not initially when I

20    opened my case, no.  As it became apparent that

21    certain things were being sought after, as a result

22    of these hearings, then I would often do that.

23        Q.    So based on the nagging of the defense?

24        A.    Yes, sir.

25        Q.    You didn't have to so readily agree with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that characterization.

 2            Okay.  After 62017, what was the next

 3    investigation?

 4        A.   I'm actually going to go backward, because

 5    I skipped ahead to give you both of Roundy's.

 6            So the third case ends in 57713.  That case

 7    was opened in 2003 by Sonya Chavez, and closed in

 8    2011.

 9        Q.   What was the focus of that investigation?

10        A.   That was one of these intel files on all

11    gangs in New Mexico.  And there was an SNM component

12    to that file.

13        Q.   Before you go any further, would all, some,

14    or none of these investigations that we've talked

15    about and will talk about, were they part of the --

16    one of the task forces that we've heard about?

17        A.   Yes.  And I have dates of start and stop of

18    task forces for you, too.

19        Q.   Okay.  I'd asked a compound question:  All,

20    part, or none, and then your answer was yes.  So were

21    they all part of a task force investigation or focus?

22        A.   What I can say -- I'm not sure -- but I can

23    say that they were FBI investigations, and that we

24    often invite other agencies in.  But they were

25    definitely FBI investigations.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 175

1      Q.   If we could -- well, we already heard from

2      Pedersen that his was?

3      A.   Yes, sir.

4      Q.   With regard to Roundy's investigations,

5      were they part of the task force, to your knowledge?

6      A.   No.  Roundy's second case file, the one

7      that he actually opened definitely was, yes.

8      Q.   And have you contacted the task forces to

9      see if they maintained files on the SNM?

10     A.   Yes.

11     Q.   Do you feel comfortable that everything

12     they had in regard to the SNM investigations has been

13     turned over to you?  Have you gone down there and

14     looked to see?

15     A.   That's an interesting question.  I never

16     feel comfortable that we have everything, because no

17     disrespect to the Department of Corrections, but I'm

18     always finding new things with them.  I have

19     physically gone to the Department of Corrections and

20     searched with other agents, similar to serving a

21     search warrant, in order to find everything.  And I

22     always find -- thus far, I've always found additional

23     things.

24          I had to do the same thing with the

25     Bernalillo County Sheriff's Department, where we went

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176 of 798

```
 1    into their old file room.  And that's where I found
 2    some old letters from Angel Munoz.  I'd like to think
 3    we have everything, but unfortunately, as you well
 4    know, it's an ongoing process.
 5         Q.   Sometimes boxes are even under tables?
 6         A.   I think we remedied that with that agent.
 7         Q.   So you looked under all the tables now, the
 8    desks?
 9              (Laughter.)
10         A.   His desk was empty when he got home from
11    here.  He had nothing on his desk when he got back to
12    the office.
13         Q.   I guess there are many kinds of
14    indictments, aren't there?
15              Okay.  The next file, if we could.
16         A.   The next file ends in 59388.  That was
17    opened in July of 2005; closed a year later, April of
18    '06.  That also was a Sonya Chavez case.
19         Q.   Was that a task force focus also?
20         A.   Yes.
21         Q.   And what was the focus of that
22    investigation?
23         A.   That was purely SNM.
24         Q.   Before we go in the additional
25    investigations, it sounds like the SNM was a focus of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 177

```
 1    the FBI since at least 2000; is that right?

 2         A.   Yes.  I'd guess they probably came up on

 3    their radar in the '80s and '90s.  But, as you may

 4    recall from media coverage years ago, the Bureau

 5    struggled with their inadequate computer system for a

 6    long time.  And I think we have one now.  But I've

 7    only been able to go back to -- I've only been able

 8    to find these files.

 9         Q.   Okay.  The reason for so many different

10    file numbers, it sounds like has something to do with

11    the various number of agents who may have worked on

12    SNM investigations over the years?

13         A.   Yes, and you'll see that, as I'm seeing,

14    that these cases overlap.

15         Q.   So it wouldn't be, I guess, accurate to

16    consider these completely separate investigations of

17    the SNM, but rather, all part of an investigation of

18    the SNM over the years?

19         A.   I think we agree that the focus was the

20    SNM.  The Bureau definitely wanted to focus on them.

21    How well we organized and shared that is maybe

22    another question.

23         Q.   But it sounds like throughout that -- at

24    least up to 2015, it seems like at least one

25    investigation or another was opened by the FBI on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   SNM; is that right?  Does there seem to be any gaps?
 2        A.   No, sir.  Because I absorbed Roundy's
 3   case -- would be the one -- the second Lance Roundy
 4   case, 62017, was opened in 2008.  And to this day,
 5   it's technically open.  I've assigned it to Agent
 6   Nancy Stemo, but we've absorbed it into Atonement.
 7        Q.   And it sounds like from 2000 to 2015, there
 8   was an FBI investigation open on the SNM, in which
 9   one of the task forces was also involved?
10        A.   That's compound.  So I agree with the first
11   part.  There were case numbers, and they were listed
12   as open.  Whether or not somebody was actually
13   working them, I would probably disagree with that
14   part.
15        Q.   You can't work on a case every day,
16   although this one probably has been an exception for
17   you?
18        A.   I agree.
19        Q.   After the 5938 investigation, was there
20   another one that was opened?
21        A.   Yes, sir.  That would be what I just
22   mentioned, Mr. Roundy's case, 62017.  And again,
23   that's open to this day basically under Atonement.
24   Much of this has to do with the disposition of
25   evidence.  It's tough for us to close cases, so they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7800

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

```
 1   stay open.  But --

 2        Q.   So if a future investigation, like

 3   Atonement, wants to access it, they'll gather the

 4   materials from a previous file, but leave the

 5   originals, or whatever, a copy behind in that

 6   previous file?

 7        A.   I took all the originals.  In this case, we

 8   made exceptions, and so we filled up filing cabinets,

 9   and we're up to eight now.  We're just moving

10   everything over so that we can respond to your

11   nagging as quickly as we can.

12        Q.   Okay, thank you.  I always appreciate it

13   when the opposition accepts my characterizations, but

14   this might be an exception.

15             Was there an investigation ending in the

16   number 62462?

17        A.   Yes, sir.  That's my next one.

18        Q.   Okay.

19        A.   That was opened in '09, closed in '12.  And

20   that's not exclusively the SNM.  That case was opened

21   down here in Las Cruces, and it was an intelligence

22   file, and it would be given dash SNM for any SNM

23   work -- should be given that.

24        Q.   So there might be the same number dash Los

25   Carnales?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7801

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 180 of 802

1      A.   Yes, sir, exactly.

2      Q.   And who is the case agent on that?

3      A.   That was a control file.  So any agent --

4  let's say you're the duty agent and someone calls in

5  a tip about the SNM, you write up a report and send

6  it to that file.  It's a catch-all file, if you will.

7      Q.   And is that file still opened, did you say?

8      A.   No, sir, it closed in 2012.  That was, I

9  think, a policy decision by the Bureau to get rid of

10  these intel files.

11      Q.   If we were to look into each of the files

12  that we've discussed, would we see records that

13  touched on the 2001 murders?

14      A.   I believe you would.

15      Q.   So would it be fair to say that the 2001

16  murders were at least a partial focus of each of

17  these investigations from 2001, I guess, till 2015?

18      A.   No, I don't think they were a focus.  I

19  just think that there is intelligence there.  Because

20  oftentimes what will happen is somebody gets

21  arrested, they want to give us information, they'll

22  say "I know who committed this murder," they'll tell

23  us about the 2001 murder, and we'll send it to that

24  file.  But I wouldn't make that file the focus, no.

25      Q.   Did the FBI -- well, in your review of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7802

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 181 7803

1   materials, did the FBI present the 2001 murders to

2   the United States Attorney's Office on a number of

3   occasions prior to the indictment in this case?

4        A.   I know of one for sure, which I'll call the

5   "Jack Burkhead denial" that came from Roundy.  I know

6   other AUSAs have been involved in the case, but I

7   don't know if we've ever actually got a formal

8   declination.

9             THE COURT:  I may have some of them up

10  here, Mr. Castle.  What are you looking for?

11            MR. CASTLE:  I don't know which number --

12  letter it is.

13            THE COURT:  Do you want me to just hand you

14  the exhibits and you can look at them?

15            MR. CASTLE:  Yes, Your Honor.

16            THE COURT:  Which one are you looking for?

17            MR. CASTLE:  It's the Roundy one.

18            THE COURT:  I've got them out of order.

19  I've been up here looking at them, so I apologize for

20  that.

21            MR. CASTLE:  It's R.

22            THE COURT:  Exhibit R is in there.

23            Mr. Castle, do you mind just handing that

24  stack to me?  I'm kind of looking at them.

25            MR. CASTLE:  I'm an exhibit thief from way

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7804

1   back, Your Honor, so I think that's a safe plan.

2           THE COURT:  No, you take what you need.

3       Q.   Let me show you what's been admitted as

4   Exhibit R.  Do you recognize that document?

5       A.   Yes.

6       Q.   And is that in relation to the Burkhead

7   declination that you were talking about?

8       A.   Yes, sir.  And that's Agent Roundy's file.

9       Q.   So this would have been a declination as of

10  when?  They declined to take it to the Grand Jury as

11  of when?  Or, I'm sorry, declined to indict.

12      A.   This indicates March 26, 2015.

13      Q.   So would that have been at the same time

14  you were opening up Operation Atonement?

15      A.   Yes.  I was not aware of this until later.

16      Q.   So Operation Atonement had already started?

17  Strike that.

18           When you started Operation Atonement did

19  the United States Attorney's Office know about the

20  circumstances concerning the threat to corrections

21  officials?

22      A.   If I understood you correctly, did I

23  communicate to them that that's why I was opening it?

24      Q.   No.  I'm just wondering whether the U.S.

25  Attorney's Office and the FBI both knew about this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 183

```
 1   threat, and were proceeding together?
 2        A.   Yes.  As soon as I learned about it, I
 3   called Ms. Armijo, told her about it.  It does me no
 4   good to open a case that they're not interested in.
 5   So I wanted to make sure there was interest first.
 6        Q.   So that would have been sometime in the
 7   middle to early March?
 8        A.   I called her from the penitentiary after I
 9   read the letters, so same day.
10        Q.   Do you know when that would have been?
11        A.   That was in March of 2015.  I think mid
12   March.  And I'll be honest with you, sir, I knew very
13   little about the SNM at that point in time.
14        Q.   Had you already been in contact with Lance
15   Roundy?
16        A.   No, sir.
17        Q.   Did you know that Lance Roundy had done any
18   kind of work on the SNM?
19        A.   I did.  We had as a, like a SWAT guy, I'd
20   helped serve some search warrants on some SNM guys
21   over the years.  Roundy, though, had transferred from
22   Albuquerque -- I think -- excuse me, from Las
23   Cruces -- I think when he actually wrote this it was
24   from his new duty station.
25        Q.   If you could look at page 2 -- well,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                               1-800-669-9492
                                                        e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7805

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 184806

1    actually, hold on, let's stay on page 1.  There is an

2    indication here that, "Based on discussions with AUSA

3    Burkhead, Lujan changed his mind and decided not to

4    cooperate after approximately seven years of

5    cooperation."  Do you see that?

6         A.   I do see that.

7         Q.   In your work on the case, have you found

8    any reports, other than this document, that reflect

9    Mr. Lujan stating to FBI, or anyone else, that he did

10   not want to cooperate anymore?

11        A.   No, sir.  And in fact Lujan will maintain,

12   I believe, if you ask him, that that's a

13   misunderstanding, or that's not true.

14        Q.   This report, is this from Lance Roundy?

15        A.   I believe it is.  I'm going off memory.  If

16   I could look at the original, or if we could scroll

17   down, maybe on the bottom of page, 2 perhaps.

18        Q.   I think, yes.

19        A.   It certainly looks like it is.  But the

20   next page will tell us.  It was written by Lance

21   Roundy, yes.

22        Q.   So have you followed up with Agent Roundy

23   on this concept that Mr. Lujan had, I guess, backed

24   out of his agreement to --

25        A.   No, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7806

```
 1          Q.    -- cooperate?
 2          A.    I have talked to Mr. Lujan, but not
 3     Mr. Roundy about that.
 4          Q.    Let's go to page 3, if we could.  Are you
 5     familiar with that letter as well?
 6          A.    Yes, sir.  This was the Burkhead letter I
 7     was referring to.
 8          Q.    If we can go down to the sentence that
 9     begins with "Unfortunately" --
10                THE COURT:  This is still R?
11                MR. CASTLE:  It is still R, yes.
12          Q.    In this letter, "Unfortunately Mr. Lujan's
13     credibility is in serious doubt due to the
14     combination of his long and troubled criminal
15     background, his history of malingering, and otherwise
16     manipulating the penal system for personal gain, his
17     receipt of past consideration, and ongoing demands
18     for future consideration as quid pro quo for
19     cooperation in this case," and then it goes on.  Do
20     you see that?
21          A.    Yes, sir.
22          Q.    So in your investigation, can you tell us
23     what Mr. Lujan's history of malingering is?
24          A.    Well, I mean, that sentence describes the
25     SNM.  If you want me to be specific to him, I think
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7807

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 186

1    he's -- you're going to get my opinion, but I think

2    he's -- I don't want to say faked, but he's

3    malingered some medical conditions to get better

4    treatment over the years.  I don't think that's

5    unusual.

6         Q.   Has he malingered about mental health

7    conditions over the years?

8         A.   My opinion, yes.  He probably has some.

9    I'm certainly no expert, but-

10        Q.   Well, this letter says there is a history

11   of malingering.  Are there documents or materials

12   that the FBI collected that demonstrated malingering?

13        A.   Perhaps.  I mean, I'm basing that on my

14   conversations with him largely.

15        Q.   How about the part about receipt of past

16   consideration, ongoing demands for future

17   consideration?  What do you know, in your

18   investigation in this case, about Mr. Lujan's demands

19   and receipt of consideration, his quid pro quo?

20        A.   He's made no demands of me.  And I'm not

21   sure what Mr. Burkhead is saying there.

22        Q.   Your investigation ended up in Mr. Lujan's

23   indictment, right?

24        A.   I charged Mr. Lujan, yes.

25        Q.   And he's getting consideration for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 187809

 1    cooperating with that plea agreement; is that right?

 2        A.   Yes, sir.

 3        Q.   So he did get consideration -- perhaps

 4    didn't ask it of you, but asked it of the U.S.

 5    Attorney's Office.

 6        A.   Sure.  Much later he did, yes.

 7        Q.   So I want to concentrate on what

 8    consideration he received prior to March 26, 2015 for

 9    a second.  What -- in your investigation, what

10    consideration did he receive prior to 2015, prior to

11    March 2015?

12        A.   Sure.  Based on my review of the file, he

13    got a one-time payment of $500.

14        Q.   Okay.  And then what were his ongoing

15    demands -- let me go back a bit.  When it says

16    "ongoing commands," it sounds like he made demands in

17    the past, and also were continuing to make them as of

18    March 26, 2015; is that right?

19        A.   I don't believe so.  Better question for

20    Mr. Burkhead.  But I don't believe so.

21             One of the questions you asked me was to

22    identify the history of some of the sources.  And I

23    think one of them was Mr. Lujan.  And he has a

24    history of being open and closed.  So that might

25    address it as well.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 188

```
 1          Q.   So in your view, all the materials that
 2     have been provided to the defense, have you found any
 3     evidence that says that he was making demands for
 4     future consideration as a quid pro quo?
 5          A.   No, sir.  I'm not sure what Mr. Burkhead is
 6     saying there.
 7          Q.   When did you first see this exhibit?
 8          A.   In my review of the file, probably -- I
 9     don't really start the historical review until into
10     the end of 2015, kind of late 2015, fall of 2015; I
11     start focusing more on the historical aspects of the
12     SNM.  And that's in preparation for writing --
13     helping prepare the language in the indictment.
14          Q.   So you received this about the end of 2015?
15          A.   I can't represent that.  I was surprised to
16     see this when I saw, it but I'm not sure when exactly
17     I saw it.  It could have been late 2015.
18          Q.   Or early 2016?
19          A.   Yes, sir.
20          Q.   Would it surprise you that the defense
21     didn't receive this until yesterday?
22          A.   Well, nothing surprises me, particularly in
23     this case.
24          Q.   And are you aware that we didn't receive
25     this until after the Court had ruled that the U.S.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7810

```
 1    Attorneys might need to come in and testify that it
 2    had analyzed this case?
 3         A.   I wasn't part of those conversations, sir.
 4              THE COURT:  Is it a good time for our lunch
 5    break, Mr. Castle?
 6              MR. CASTLE:  It always is.
 7              THE COURT:  See you in about an hour.
 8              (The Court held a lunch break.)
 9              THE COURT:  All right.  So it looks like
10    we've got all the defendants back in, all the
11    attorneys -- at least got an attorney for each
12    defendant.
13              So Mr. Acee, I'll remind you that you're
14    still under oath.  Mr. Castle, if you wish to
15    continue your direct examination of Mr. Acee, you may
16    do so at this time.
17    BY MR. CASTLE:
18         Q.   We're going to go back to Exhibit R, if we
19    can.  The last part of that sentence concerning
20    Mr.Lujan's credibility says one of the
21    characteristics that made him not a good witness was
22    that -- his history of mental health issues.  Do you
23    see that?
24         A.   Yes, sir.
25         Q.   What are, to your knowledge, his history of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7811

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 190 of 812

```
 1    mental health issues?
 2         A.   I just know that he has them.  I don't know
 3    the specifics.
 4         Q.   You don't know any specifics?
 5         A.   No, sir.
 6         Q.   And you looked at Lance Roundy's files; is
 7    that right?
 8         A.   I have.
 9         Q.   Earlier today we heard about an audio tape
10    of an interview with James Garcia.  Do you recall
11    that?
12         A.   Yes, sir.
13         Q.   And was that a witness that was handled by
14    Agent Roundy?
15         A.   An arrestee, a defendant.
16         Q.   But the interview that we were talking
17    about that was on tape, that was with Lance Roundy;
18    is that right?
19         A.   Yes, sir.
20         Q.   Have you contacted Agent Roundy to see if
21    he recorded any other interviews that haven't been
22    turned over?
23         A.   My colleagues have.
24         Q.   Okay.  Recently?
25         A.   Yes, sir.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   We haven't heard back, I take it?
 2        A.   I think you'll be getting some additional
 3   stuff.
 4        Q.   Did we finish all the various open file
 5   investigations?
 6        A.   I think the only one we didn't talk about
 7   is mine; that would be the next sequential one.
 8        Q.   In your review of the materials, when was
 9   the first time that the FBI obtained reports and
10   documents from the State Police concerning the 2001
11   murders?
12        A.   At least in Roundy's 62017 file.  That one
13   is pretty robust.  And that's where I have collected
14   most of the State Police stuff.
15        Q.   With respect to the joint task forces --
16   let's start with the Southern one -- when did the
17   Southern Task Force first get materials, such as
18   reports, police reports, investigative reports on the
19   2001 murders?
20        A.   In the year 2001.
21        Q.   When your investigation encompassed the
22   2001 murders, did you take possession of the physical
23   evidence that was held?
24        A.   No, sir.  I've made efforts not to.  Where
25   I verify that it's in good hands at the state or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7813

1    local agency, I leave it there.

2         Q.   Is that generally FBI policy?

3         A.   It's not a specified area in policy.  It's

4    in -- I'll just leave it at that.  It's at my

5    discretion.  Policy doesn't dictate one way or

6    another.

7         Q.   I take it, then, when you don't take

8    possession, the reason is you have a certain level of

9    trust with the State Police to be able to maintain

10   the integrity of the evidence?

11        A.   Yes.  I will reach out and I'll verify they

12   do have it.  And I will let them know to not dispose

13   of it, if it will be needed in the future.

14        Q.   The Central New Mexico Task Force, did

15   they -- when did they first start collecting records

16   and documents concerning the 2001 murders, if ever?

17        A.   I made some more notes, again, in response

18   to your Touhy letter.

19        Q.   You may look at them.

20        A.   Thank you.

21             THE COURT:  While he's looking at that, can

22   I ask a question, on Exhibit C, the transcript that

23   is attached, is that -- do we know the name or

24   identity of that CW?

25             MR. CASTLE:  Yes, it was Toby Romero.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7814

1           And actually, while we're doing that, the

2     Government informed us he had passed away in 2009.

3           THE COURT:  Okay.  So this, then, is more

4     just historical for the fact when the FBI began to do

5     its investigation --

6           MR. CASTLE:  Yes.

7           THE COURT:  -- and other things?

8           MR. CASTLE:  It's just for prejudice on the

9     concept of delay.

10      A.   So what we've been calling the Central Task

11    Force made references.  But I didn't see -- I didn't

12    find -- and I'll represent to this day that there are

13    no actual New Mexico State Police reports in that

14    file.  There are just summaries, which leads me to

15    believe they interviewed them, but didn't maintain --

16      Q.   Does that make sense because crimes that

17    occur in the Southern facility would be in the

18    jurisdictional area of the Southern task force?

19      A.   Yes, sir.

20      Q.   Are you familiar with a task force officer

21    by the name of Edgar Rosa?

22      A.   I don't believe I've ever met him.  But

23    through this case, I've become aware of who he is.

24      Q.   And what was his role in this case, meaning

25    the 2001 murders?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7815

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 194816

1        A.   I don't want to sound disrespectful to him,

2    but I don't think he had a role.  He was a Las Cruces

3    police officer assigned to the FBI.  He wrote very

4    few reports.  And I didn't note any arrests.

5        Q.   Did he develop some -- well, did he conduct

6    some interviews and develop some confidential

7    sources?

8        A.   I think he had at least one source, based

9    on the Bates numbers you asked me to review, and I

10   think that source -- and I've identified as many of

11   them as I can, but I think that he's -- twice -- it

12   sounds like it's two sources, but I think it may be

13   the same person.

14       Q.   Were you able to identify who that person

15   was?  Do you want to take a look at the document?

16       A.   Sure.  So I did all the Bates numbers you

17   sent me, I've taken a bunch of notes on, and I think

18   I've identified maybe 90 percent of the sources that

19   are talked about in here.

20       Q.   Okay.

21            THE COURT:  And this timeframe is what?

22            MR. CASTLE:  2001, I believe.

23            THE COURT:  Back to 2001.

24       Q.   Let's go to -- are these -- the identities

25   of some of these sources, have they made it through

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7816

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7817

```
 1    the channels to the defense yet, or do you know?

 2         A.   Sir, I've been working on this the last two

 3    days while I've been at the table.  These were

 4    previously represented to me that Corrections

 5    couldn't identify them.

 6         Q.   Okay.

 7         A.   And I won't tell you that I have a positive

 8    identification, but I can point you, based on other

 9    Bates numbers in the discovery, I think you'll agree

10    with me that it's the same person.

11         Q.   Maybe to short-circuit this, to make it

12    quicker, if you could just tell us the page numbers

13    of informants that you've now identified, and the

14    Government can give us those names off the record?

15         A.   I'll read them out loud if you want.

16         Q.   Okay, that's fine.

17         A.   So you'd like me to tell you the Bates

18    number?

19         Q.   Yes, please.

20         A.   Okay.  The first one you asked me to look

21    at was Bates 133.

22         Q.   Who is that?

23         A.   I believe that's Jimmie Gordon.  I'll go

24    slowly here.  You also asked me to look at Bates

25    19128.  And he's listed as Source 13.  I think that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7817

 1    is also Jimmie Gordon.

 2         Q.   And --

 3              MR. SOLIS:  I didn't hear the source

 4    number.  I beg your pardon.

 5              THE WITNESS:  Source at Bates 19128.  He's

 6    called Source 13.  I think that's Jimmie Gordon.

 7              MR. CASTLE:  Before we go any further, just

 8    for the Court's knowledge, I'm going through this

 9    process because it may alter where we go in these

10    hearings.

11              THE COURT:  So if I understand what is

12    taking place, looks like Mr. Acee has spent some

13    time, and he may be able to identify some of the

14    people that y'all have identified, or you had said

15    could no longer be identified as CIs and CWs in some

16    of the old materials.

17              MR. CASTLE:  Yes, exactly.  And I don't

18    know if the Court wants us to do this off the record.

19    But I'm not going to want to call a CO that their

20    sole purpose is to establish the exculpatory nature

21    of a particular piece of paper, when --

22              THE COURT:  It's your call.  Looks like

23    we're making some progress, whether it can be made

24    outside or off.  But it's your call.  Do what you

25    want.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7818

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7819

```
 1              MR. CASTLE:  We'll just go forward then.
 2         A.   I think you can verify that.  Look at Bates
 3    507.  I'll submit to you that that's where I found
 4    that this is the same person.
 5         Q.   Okay.  Who is the next one?
 6         A.   Bates 600.  This is Augustine Saenz.  And
 7    he comes up quite a bit in here, so we'll come back
 8    to that.  I'll also point out that the redaction at
 9    the top of that page is not a source number.  It's
10    the date; it just doesn't have dashes in it.  So the
11    date is 4/30 of 2001.
12              On Bates 605 -- I saw this on the screen
13    earlier -- this is Rosa's source.  I don't know who
14    this is, and I don't believe it's a good source.
15    Everything else in here is unfounded.
16              And then they cite this same source again
17    in 722.  Bates 722 is the next one you asked me to
18    look at.  This is largely unfounded information the
19    source is providing.
20         Q.   Well, right now, if you can, just confine
21    to the identities of sources.  Then we can go back
22    and we can ask some questions about the unidentified
23    ones.
24         A.   Sure.  You got it.
25              There was a lot of discussion at Bates
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7819

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 198

```
 1   14210 about Source A, or Source 1-A, this is
 2   Augustine Saenz.  It closely relates to Ray Molina's
 3   statement and Willie Amador's.  But I rule those guys
 4   out because he lists them as suspects, so he wouldn't
 5   put himself in there.  And this statement matches
 6   Augustine Saenz.
 7        Q.   Well, just for a moment, many times I've
 8   seen in various 302s or interviews where the source
 9   is unidentified, and then they put the name of the
10   source as -- in the statement, so as to not reveal
11   who the source is; is that correct?
12        A.   We definitely do that.  I've not seen
13   Corrections Department do that.  And I will point you
14   to the Bates numbers where -- what I think added to
15   the Corrections -- the misunderstanding here -- is
16   you'll find in discovery -- which I found just in the
17   last few days, where the Department of Corrections
18   interviews these guys' true inmate name, inmate
19   identification.  Then, when they want to do
20   disciplinary on one of the defendants, they call them
21   Source 1, 2, 3, 4.  But the statements match up
22   verbatim.
23        Q.   So at least the FBI -- let's go through
24   kind of an example.  If I'm a confidential source and
25   I've committed a crime with Mr. Cooper --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7820

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 199821

```
 1              MR. COOPER:  No.
 2         Q.   -- and I come forward and blame him for it,
 3    and you put that in a report, you might say:  The
 4    source said Mr. Cooper and Mr. Castle were involved
 5    in a crime, and he blamed Mr. Cooper, right?
 6         A.   I don't like that scenario.  But, yeah,
 7    essentially.  It would be more if you guys could
 8    figure it out too quickly.  But we do that to buy
 9    time because, as you well know, they're going to read
10    the complaint, and we want to just buy more time
11    before -- but yes.
12         Q.   And you haven't seen an example of that in
13    the Department of Corrections' reports that you're
14    aware of?
15         A.   Not the ones you asked me to review, no.
16         Q.   Or any that you can recall?
17         A.   No.  They're just not that sneaky, or
18    they're not thinking that far ahead.  They're simply
19    putting a source number down when they want to give
20    one of these guys a disciplinary justification.
21         Q.   Let's go to the next one.
22         A.   The next one is going to have a bunch of
23    them.  It's at Bates 19127.  I'll start at the top of
24    the page.  Source 5 is Joseph Otero.
25         Q.   How did you determine that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200 7822

```
1          A.   His statement matches verbatim, that he
2    gives to Corrections.
3          Q.   Which statement of his?
4          A.   The post-homicide statement.  And
5    everywhere else on the page I've noted where you can
6    find it on the Bates, but I just found this one just
7    before the lunch break, so I didn't know where the
8    Bates number is.  I think it's going to be around
9    Bates 500, in that area.  There is a bunch of
10   interviews with inmates in the Bates 500 series.
11         Q.   Well, let me show you Bates page 1222.  If
12   we can pull that up.  Does that appear to be the
13   interview you're talking about with Mr. Otero?
14         A.   No.  But that's Otero, too, because he says
15   he's his neighbor and he's not SNM, but he's from Los
16   Padillas, and that's Otero.  He was the only Los Pa
17   guy in there.
18         Q.   And in this report of Mr. Otero's statement
19   does he indicate that he knows anyone who committed
20   the murder of Garza, or can provide information on
21   who killed Garza?
22         A.   No, the material I'm reading does not.
23         Q.   Have you talked to Joseph Otero?
24         A.   No.
25         Q.   Let's go ahead and pull up 19127 that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1    you've identified as Joseph Otero, if we could, on

 2    the screen.

 3         A.   Mr. Castle, do you want me to find where it

 4    correlates?

 5         Q.   I may in a minute.

 6         A.   I was going to say I have it over there.

 7         Q.   I believe you said Source No. 5, which is

 8    the top here, was Mr. Otero; is that right?

 9         A.   Yes, sir.

10         Q.   And that was disclosed to the defense this

11    morning?

12         A.   I think I'm telling you now.  I don't know

13    if you knew before this.

14         Q.   Whoever Source 5 was says he knows who

15    killed Garza:  Patterson, Eugene Martinez, and

16    Christopher Chavez; is that right?

17         A.   Yes.

18         Q.   So how did you look at this statement and

19    correlate it to the previous Otero statement which

20    didn't identify anyone?

21         A.   If you'll show me -- excuse me, if you'll

22    allow me, I have it in my materials.  But it doesn't

23    relate to the one you just showed me.

24         Q.   Okay.  So using this same kind of concept

25    that we used with James Garcia, those two statements
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7823

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 202

```
 1   don't correlate, do they?
 2        A.   Those two do not, no.
 3        Q.   Why don't you go ahead and retrieve the one
 4   that --
 5        A.   I'm sorry.  I didn't tab all these.  I've
 6   just been flipping through them the last few days.
 7             THE COURT:  Do you need some stickers?
 8             THE WITNESS:  Yes, sir, thank you.
 9        A.   What I can tell you, if it helps, is that
10   it is a memo similar to the one that you provided.
11   Just -- I was kind of jotting my notes down as I was
12   sitting there, not sure when I'd be coming up here.
13        Q.   Was it an FBI 302?
14        A.   No, sir.  It was a Corrections' memo, and
15   he's clearly identified on it as Joseph Otero;
16   somebody has taken a statement from him.  The key
17   thing that helped me is the Los Padillas reference.
18        Q.   That's a street gang, right?
19        A.   Yes, sir.
20        Q.   There are lots of people in that street
21   gang?
22        A.   There is, but not in that pod.  And so I
23   had narrowed it down to two guys based on a
24   friendship; two different inmates say they were
25   friends with him.  And then he's giving a debrief
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7824

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 203

```
 1   where he's saying that he's not SNM, he's a neighbor

 2   and he's Los Pa.  And then I found this same verbatim

 3   statement, this Source 5 statement.

 4        Q.   And are there any 302s by Mr. Otero that

 5   exist?

 6        A.   Not yet.

 7        Q.   Not yet.  Let's go to the next statement if

 8   we can, the next informant.

 9        A.   Sure.  Source 9 is Salvador Jaramillo.  And

10   you can find that at Bates 1216, the confirmation.

11        Q.   And when you were giving us Bates numbers,

12   you're saying that we should look there to see if the

13   information correlates with the information that is

14   listed under a particular source's identifier?

15        A.   To be clear, to see if you agree with me,

16   yes, this is my -- I'm not telling you absolutely,

17   but this is, based on my review, who I think the

18   sources are.

19        Q.   But that's the process you're going

20   through?

21        A.   Yes, sir.

22        Q.   Thank you.

23        A.   Source 10 is Fred Neri.  And look at Bates

24   1217.

25             Source 11 is going to be Mark Gillete.  You
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7825

1    can see Bates 1217 as well.

2              Source 12 is F. Denton Jones, D-E-N-T-O-N

3    Jones, see Bates 1217.

4              Now, we're talking about the Frank

5    Castillo -- we're at the middle of the page and it's

6    talking about Source 1 for Frank Castillo, is going

7    to be Ricardo Lopez.  Look at Bates 504.

8              Source 2 is Gabriel Sanchez, Bates 503 and

9    504.

10             Source 3 is going to be Mr. Troup.

11             Source 4 is Chris Pacheco.

12             Source 5 is Thomas Madrid.

13             Source 6 is Ralph Romero.

14             And those can all be found at Bates 505.

15             Source 7 is Michael Jaramillo.  And I'm

16   sorry, I don't list where the Bates is, but I think

17   it's also at that 500 range.

18             The next Bates number you asked me to look

19   at, or to try to determine who the source is, is 521.

20   These are the ones that Mr. Santistevan was talking

21   about.  These are a little tougher.  I've been

22   working on these this week.  And I think the first

23   one at the top of the page -- it doesn't indicate a

24   source number, but I think that's Lawrence Torres.

25        Q.   Okay.  Let's stop for just a second.  Did

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                      1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 7826

1    you access Mr. Santistevan's logbook?

2         A.   I'm purely going off what I had in these

3    binders which is discovery, Bates number discovery.

4         Q.   Did you hear his testimony?  Were you here

5    when he testified?

6         A.   I was.  I was really digging in this stuff,

7    though.

8         Q.   Would you accept my representation that he

9    indicated that he kept logbooks, and he had them all

10   the way to 2016 that would give you the identity of

11   his informants?

12        A.   I'll trust you, sir.

13        Q.   And I take it that probably, after hearing

14   that, you're going to try to see if you can find

15   those logbooks?

16        A.   And we've asked for them.  To be clear, Mr.

17   Myers, Mark Myers, led that portion up, and we've

18   asked for that stuff time and time again.

19        Q.   Okay.  Let's go ahead.

20        A.   It would save me a lot of time, too,

21   looking through all this stuff.

22             So at the top of Bates 521, I think that's

23   Lawrence Torres, and that's just based on me studying

24   his statements over the years.  I can't certify that

25   that's him.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7827

```
 1              The next three on this page are guys that
 2    I'm unable to identify.
 3         Q.   Okay.
 4         A.   So turning to Bates 19128, at the top of
 5    the page, Source 9 is Ruben Romero.  And I would
 6    suggest you would look at Bates 503 and 504.  That
 7    will match.
 8              Source 8 is going to be Ruben Garcia, also
 9    at Bates 504.
10              Source 5 -- actually, I guess the next one
11    under Allen Patterson, it's talking about the
12    suspects.  Under Allen Patterson, Source 7 is going
13    to be Ray Molina.
14         Q.   So who would Source 5 be?
15         A.   Source 5 would be Joseph Otero.  This is
16    that same -- yeah.
17         Q.   I'm sorry, who was Source 7?
18         A.   Ray Molina, Boxer.
19         Q.   Now, in confirming that was Ray Molina,
20    have you interviewed Mr. Molina?
21         A.   Not yet.
22         Q.   And is there a 302 on Mr. Molina?
23         A.   Not by my team.  I'm expecting one, but not
24    yet.
25         Q.   If it occurred, it would have happened
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7828

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 207

```
 1   prior to 2015?
 2        A.   Yes, sir.  I'm not certain that I've seen a
 3   302.  I've seen State Police transcripts and
 4   statements.  But I don't know that I've seen an FBI
 5   one.
 6        Q.   Okay.  Let's continue.
 7        A.   Source 13, Jimmie Gordon again.  I think I
 8   mentioned him at Bates 133.
 9        Q.   Actually, let's stop with Mr. Gordon.  Do
10   you recall that Mr. Gordon indicated that an
11   individual by the name of Leroy Lucero approached him
12   with some New Mexico Corrections Department inmate
13   master record entry flyers?  Do you recall that?
14        A.   No.  Is that one of the Corrections
15   reports?
16        Q.   Yes.
17        A.   I can't say that sounds familiar.
18        Q.   Do you recall him indicating that those
19   flyers contain information on people that were
20   informants?  Do you remember any of this?
21        A.   No.  Did we talk about that this week?
22        Q.   No.
23        A.   Okay.
24        Q.   So you have never followed up on that
25   information, you don't recall it; would that be fair
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7829

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208

```
 1    to say?

 2         A.   Yes.

 3         Q.   Let's go ahead.

 4         A.   Source 15 has alluded me, as has Source 10.

 5    Those were the two I was working on before I got

 6    called up here.  So I'd be turning the page now.  At

 7    Bates 1253 there is not much information here, and I

 8    can't tell who it is, so I'd go on to the next page.

 9              So in this stack, sir, I'm not sure who you

10    wanted me to ID, so I just tried to ID all of them.

11    I think you asked me to review Bates 1254 through 59.

12    So I can go through each page if you want.

13         Q.   I'm just going to ask some specific

14    questions.

15         A.   Sure.

16         Q.   With regard to Jimmie Gordon, I want to

17    show you -- if we can go to page 607 of the

18    discovery -- yes, 607 -- if we can briefly go through

19    this and tell us when you want to get to the next

20    page or scroll down.

21         A.   Okay.

22         Q.   Let's go to the next page.  Do you recall

23    this being a 302 of Jimmie Gordon?

24         A.   No -- well, this is a -- this is a -- well,

25    I was trying to determine if this was a 302 or 1023.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7830

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209

```
 1    Because of the formatting here, you can't tell.  But
 2    it's probably a 302.
 3         Q.   Shall we go back to the front page?
 4         A.   Not if it's not important to you, doesn't
 5    matter to me.
 6         Q.   This is a federal FBI form?
 7         A.   It's one of our forms, yes.
 8         Q.   And who conducted the interview, do you
 9    know?
10         A.   Can we look at the last page?  It's a 302.
11         Q.   If we go back to page 1 of -- 607 is the
12    Bates stamp number.  This appears to be an interview
13    in 2001, August 13th of 2001, does that look right?
14         A.   Yes.
15         Q.   And at that time who would have been the
16    FBI agent in this Southern Task Force that would have
17    been conducting interviews on the SNM?
18         A.   I don't know, sir, because this is Agent
19    Roundy's file.  I believe that -- because he wasn't
20    an FBI agent in 2001, he inherited it when he got
21    here.  So I couldn't tell you whose this is.  I was
22    still a parole officer in South Central LA at this
23    time.
24         Q.   I think earlier you indicated that you had
25    contacted the case agents who handled the various SNM
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7831

 1    investigations over the years from the FBI.

 2         A.   As best I could, yeah.

 3         Q.   So were you able to determine who was doing

 4    the SNM investigation in 2000, 2001, all the way up

 5    until Lance Roundy took it over?

 6         A.   For the most part, but that doesn't tell us

 7    who wrote the report.  That just tells us whose case

 8    file it was.

 9         Q.   Who had the case file 54711 in 2001?

10         A.   I think it was Andrew Armijo.

11         Q.   Let's go back to the next page of this.  If

12    we can, up here at the top where it begins, "Leroy

13    Lucero," do you see that the FBI collected

14    information that Leroy Lucero was obtaining flyers on

15    other inmates and making copies of them, or having

16    this source make copies of them, and then return the

17    originals to Mr. Lucero?  Do you see that?

18         A.   I do.

19         Q.   Then it goes on to say some other things

20    about Mr. Lucero's possible involvement?

21         A.   Yes.

22         Q.   And that would be in regards to the 2001

23    murders; is that right?  Or do you want look back at

24    page 1?

25         A.   It could be in regard to the 2001 murder.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7832

 1    It's good intelligence information.

 2         Q.   So would it be correct that, at least as of

 3    August of 2001, the FBI had some evidence, or at

 4    least a source of information that indicated that

 5    Leroy Lucero, at or about the times of the murders,

 6    or before the murders, had been collecting at least

 7    data on other inmates; is that right?

 8         A.   According to this source, yes.

 9         Q.   Tell me about the Southern's Task Force's

10    files on the 2001 murders.  Are we talking ten pages,

11    a hundred pages, thousands of pages?

12         A.   Probably closer to thousands, because

13    that's where Roundy was assigned to the Southern New

14    Mexico Gang Task Force, and based on my review of his

15    files, had good liaison with Corrections and State

16    Police.

17         Q.   When exactly did you say Roundy took over

18    down there?

19         A.   I think he became an FBI agent in 2008.  So

20    at that time.

21         Q.   So how many documents in the Southern Task

22    Force's files predate when Agent Roundy took over the

23    investigation?

24         A.   Seven years' worth.  I couldn't tell you

25    though.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 212

1       Q.    Lots?

2       A.    Seven or eight years' worth.  Well, he more

3    than quadrupled it.  I mean, he put a lot of work in.

4    The agents before that -- again, no disrespect to

5    them, but I didn't see much work being done.

6       Q.    Okay.  If we can go to page 598.  Do you

7    recognize this document?

8       A.    I think so.  I've been looking through a

9    lot of Mr. Sprunk's stuff based on your Touhy later.

10      Q.    Mr. Sprunk was a Special Agent from the New

11   Mexico Corrections Department that was deputized and

12   made part of the FBI Task Force; is that correct?

13      A.    I don't think so.  I think he was an STIU

14   officer.  I don't know who gave him that title, and I

15   don't know that he was part of the task force.

16      Q.    Do you know one way or the other?

17      A.    Well, Corrections has told me he was an

18   STIU officer.

19      Q.    Okay.  But at least the task force was

20   collecting information from Mr. Sprunk?

21      A.    That's fair to say.

22      Q.    If we could scroll down a little bit.

23   Great.  So this is an indication at least that the

24   FBI was collecting information concerning the 2001

25   murders as early as August 13th of 2001?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7834

```
 1          A.    I agree with you.
 2          Q.    In your review of the case, did you
 3   determine or learn that the formal investigation or
 4   the state cases against or concerning the two murders
 5   was reassigned to an Agent Venegas on April 28th of
 6   2003?
 7          A.    I've seen that.
 8          Q.    And that the reason it was reassigned to
 9   Agent Venegas was because he was going to the FBI's
10   Gang Task Force?
11          A.    That seems to be the justification.
12          Q.    In your review of the materials, does it
13   appear to you that a lot of the reports we talked
14   about, the State Police reports, had been copied and
15   made available to the FBI Task Force in 2003?
16          A.    I imagine they would have.  I've not seen
17   them in -- I don't see them until Roundy's case file.
18   But I imagine, if they've got a state police officer
19   on the task force, they'd be available.
20          MR. CASTLE:  Just taking a moment, Your
21   Honor.  I'm passing by informants we now know the
22   identity of.
23          THE COURT:  Sure.  That's fine.
24          Q.    Agent, in your review of the materials from
25   the task force -- the Southern Task Force, did you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 214

```
 1    find that -- actually, even before the 2001 murders
 2    ever occurred that the Southern Task Force was
 3    provided security threat assessments for the SNM
 4    Gang, specifically a 309-page document which detailed
 5    the members of the gang and things of that nature?
 6         A.   That doesn't jump out at me, but I can tell
 7    you that the task force wasn't created until 2001, at
 8    Southern.
 9         Q.   Well, let's take a look at Exhibit B, if we
10    could, page 2.  Do you see here where it indicates
11    the details section the bottom of the page.  "In
12    October 2000, task force officers Andres Nevarez and
13    Edgar Rosa were provided the security threat
14    assessment on the above captioned gang."  And it
15    talks about the 309-page document?
16         A.   Yes, sir.
17         Q.   And that's an FBI form?
18         A.   This is what we call an EC, or an
19    electronic communication, yes.
20         Q.   So after seeing that now, if you look up
21    here, does it say to Albuquerque, from Albuquerque,
22    and then it says SNMGTF?
23         A.   Yes.
24         Q.   What does that stand for?
25         A.   Southern New Mexico Gang Task Force.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 837

1       Q.   So does that perhaps refresh your memory

2  that that task force was in existence in 2000?

3       A.   What this does is tells me that the agents

4  I relied upon to tell me when the task force started

5  are off.

6       Q.   Okay.

7       A.   I wasn't here then or a member of that task

8  force.

9       Q.   I understand.  I'm not blaming you.  I'm

10  just asking if that now changes your opinion of

11  what --

12       A.   Good evidence that it was in existence in

13  2000.

14       Q.   So, in essence, the SNM was already a

15  target of the FBI in 2000?

16       A.   Yes.  I mean, that's indicated to me by the

17  title of the case.  So they've opened a case on them.

18  And it's the second serial, sir, so this is the

19  second document in that file.

20       Q.   And 54711, I think you said that continued

21  for a while; is that right?

22       A.   Yes, this is the one that I said Roundy,

23  I'm assuming, inherited because it's clearly opened

24  well before he's even an agent.  Ultimately, what our

25  files show is he was the last agent assigned to it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7837

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 1 of 838

1    Q.   Now, at one point were the files on these

2    murders given over to the New Mexico State Police

3    Cold Case Unit?

4    A.   The FBI files weren't, but I believe State

5    Police's files were internally transferred.

6    Q.   And did you or someone at your direction

7    review the New Mexico State Police Cold Case Unit

8    files?

9    A.   Yes.

10   Q.   And was that a different detective over at

11   New Mexico State Police that then had the files and

12   took over the investigation?

13   A.   I'm not sure who the detective was.  I just

14   asked for everything they had on -- on my homicide

15   board I have, I think, 37 murders we're looking at.

16   So I reached out to the agencies and said, "Send us

17   everything on these cases."

18   Q.   If we can pick up at page 1215 of

19   discovery.  I think this was also represented as

20   Exhibit U.  This indicates that the murder case files

21   were relinquished to Special Agents Mackenzie Monarko

22   and Sonya Chavez, and appears to be around July 30 of

23   2008; is that right?

24   A.   Yes.

25   Q.   Were one of those files open under Sonya

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7838

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 217

1    Chavez in 2008?

2         A.    She had two files open under her.

3         Q.    What about Mackenzie Monarko?

4         A.    That was her new agent.  Sonya was the

5    training agent.

6         Q.    Like Agent Stemo?

7         A.    Or Sainato or Neale, yes, similar.

8         Q.    So they don't open up their own file, they

9    just work with the lead agent?

10        A.    Yes.  She had a file open in 2008, yes.

11        Q.    At some point in time in your investigation

12   did you find out that STG files on various witnesses,

13   as well as defendants, had been destroyed on the

14   basis of the file retention policies of the

15   Department of Corrections?

16        A.    I don't think so.

17        Q.    And do you know how many years the

18   Department of Corrections keeps STG files?

19        A.    No.

20        Q.    When did you start to look for -- well, any

21   of the prior investigations, prior to Atonement, did

22   they result in the collection of records such as STG

23   files on various suspects and witnesses?

24        A.    I don't think what I would call the full

25   STG file, which shows how they were validated.  But

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 18840

1    there definitely was I'll it call escape flyers, or

2    the information sheets.  I noticed a lot of those.  I

3    think in Atonement was the first time we actually got

4    the actual STG files, from my recollection.

5         Q.   I think you indicated -- I know you

6    indicated that you'd interviewed or at least spoken

7    with the various agents that previously investigated

8    the SNM?

9         A.   As many as I could find, about half of

10   which are retired.  So it took a little time.

11        Q.   Did that include Andrew Armijo?

12        A.   No.  I have not --

13        Q.   He's retired?

14        A.   Sometimes these retired FBI guys are hard

15   to find.

16        Q.   That's the nature of the business.

17             So then I guess you didn't ask him if he

18   has any other materials or there would be another

19   location for materials that he had collected?

20        A.   To answer your question, I have not talked

21   to him about any of his cases.  But I can also

22   represent that he should not have them at home with

23   him or at any other place than the Bureau.

24        Q.   I understand.  But I think you said earlier

25   that if you don't talk to the actual agent, you may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219841

 1   not know where everything is, because it's not always

 2   necessarily kept in that one file; is that right?

 3        A.   No.  Maybe you misunderstood me, sir.  If

 4   the agent does a good job documenting -- I mean, I'm

 5   going to look at the 302, and if it says it was

 6   recorded, then I know I'll look for a recording and I

 7   know where to look.

 8             But as was the case with Daffy that was in

 9   here earlier, that 302 didn't say there was a

10   recording.  So I wouldn't know to go look for a

11   recording.  I can't go to a central place and just

12   say, Give me all the recordings.  If the agents

13   aren't taking the time to specify that there is one,

14   I don't know what's out there.  Does that help?

15        Q.   I understand.  So with regard to Agent

16   Armijo, without talking to him, we don't know whether

17   there is a set of audio recordings of confidential

18   informants and other witnesses that might exist

19   somewhere?

20        A.   I'll agree with you.

21        Q.   And is there some kind of central database

22   that you can access to find that out?

23        A.   No.  And I will tell you that, given the

24   computer changes we've had, finding the stuff from

25   2001 electronically has been a challenge.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                        e-mail: info@litsupport.com

DNM 7841

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7842

1          Q.    Needle in a haystack?

2          A.    No.  I mean, we just have to search it 10

3     different ways to try to make sure we get everything.

4     And that's why I think I've turned over stuff four

5     and five times, we're seeing repetitive stuff in

6     discovery.

7          Q.    In your review of the 2000 investigation

8     that Agent Armijo had for several years, did you find

9     any audio recordings?

10         A.    I think that's the one that the -- yes,

11    that the Leonard Lujan tapes, cassette tapes, were

12    in.  Because I had to send those off to Quantico to

13    get turned into DVDs so we wouldn't have to mess with

14    cassette tapes.

15         Q.    That would have been the interview

16    conducted in August of 2007?

17         A.    Yes.  And that case file, I think, closes

18    in '07.  So I also came across some of Frederico

19    Munoz had given some recorded debriefs.  And again, I

20    sent all that stuff off for DVDs, so I did come

21    across some stuff.

22         Q.    But that would have been all in 2007,

23    towards the end of that investigation, or that file

24    at least?

25         A.    Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   So none from 2001, '02, that time period
 2     that you recall?
 3          A.   Not that I recall, no.
 4          Q.   In your investigation of the 2001 murders,
 5     did you learn that there had been videos taken of the
 6     two crime scenes, the two cells where the two murders
 7     occurred?
 8          A.   I've seen photographs, but I don't believe
 9     I've seen a video.
10          Q.   If we could pull up Bates stamp page 90.
11     Do you see that this is a report concerning the Garza
12     murder?
13          A.   Yes, sir.
14          Q.   Do you see in the second to the last
15     paragraph, "I began progressing the scene by
16     videotaping the cell's location."  And the videotape
17     being described as going through the cell's interior,
18     et cetera?
19          A.   Yes, sir.
20          Q.   In your collection of evidence did you ever
21     locate that video?
22          A.   I have not seen a video of footage of the
23     cells, and the FBI does not have that video based on
24     the material I've reviewed.
25          Q.   You would look at the video of the crime
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    scene in your investigation if you had it?

2         A.   Yes, sir.

3         Q.   If we can look at page 94.  And is this for

4    the investigation of the other murder scene?

5         A.   Yes, sir.

6         Q.   The fourth paragraph down, do you see where

7    it says that the second crime scene was videotaped?

8         A.   Yes.

9         Q.   And in your collection of materials on this

10   case did you ever locate that videotape?

11        A.   Am I missing it?  I think he just took

12   photos.

13        Q.   It says "Agent La Cuesta videotaped the

14   scene."

15        A.   I'm sorry.  Yes, it does.  I have not seen

16   that, no.

17        Q.   And the reason you'd want to review those

18   is to see if it gave you some clues as to what

19   happened?

20        A.   Yes.

21        Q.   Do you know what happened to those

22   videotapes, or the videotaped evidence?  I don't know

23   if it was digital or actual videotape back then,

24   but --

25        A.   No, not exactly.  But I want to be very

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7844

1    candid with you.  The State Police has recently

2    delivered some evidence to us that I need to review.

3    And they've also represented that -- if I heard the

4    sergeant correctly, they're still trying to locate

5    some.  And so to answer your question again, very

6    candidly, I still need to look through those

7    materials.  I have not yet seen them.

8         Q.   Can you estimate the quantity of materials

9    we're going to be receiving?

10        A.   Well, they brought it in on a dolly, and I

11   believe it's material that is in their reports.  But

12   again, I'm hesitant to tell you what's in there

13   because I haven't cracked that open.

14        Q.   Very well.  So you don't know whether there

15   is any videotapes in that crate or whatever it is

16   that's on the dolly?

17        A.   No, but it may all just be Adrian Burns

18   stuff, too.

19        Q.   Okay.

20        A.   Because I've been sitting in here with you

21   all, and I'm hesitant to dig into their evidence

22   until I can get a good chain of custody and transfer

23   it into mine.

24        Q.   And as we're sitting here today, you don't

25   know whether those videos -- well, to your knowledge

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7845

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224846

1    they don't exist anymore?

2         A.    To my knowledge, I have not seen them.

3    Whether they exist, I'm hesitant because, I mean, I'm

4    physically going out and searching these locations so

5    that I can answer these questions.  I'm taking a team

6    of agents.  I described it earlier it's like serving

7    a search warrant.

8         Q.    For our purposes, if they're not in your

9    hands, they're not in anyone's hands that's in this

10   room?

11        A.    I take responsibility for turning stuff

12   over, and I have not turned those over to the U.S.

13   Attorney's Office.

14        Q.    Would you be able -- assuming that they're

15   not to be found, is there any way you'd be able to

16   tell us whether they existed in 2002, 2003, or any

17   time all the way up to today?

18        A.    Realistically, sir, I don't think so.  I'd

19   have to open a case on it.  I'd probably have to get

20   court orders and subpoenas and search warrants, and

21   search buildings.  So I don't see that happening.

22        Q.    So if we were going to try to -- the reason

23   I'm asking this, Agent, is we're trying to figure

24   out -- the purpose of this motion is when certain

25   evidence was lost or destroyed, whether it was when

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7846

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7847

```
 1    there was an FBI investigation, or when it was just a
 2    state investigation.  I take it you can't give us any
 3    information on where these tapes kind of fell off
 4    from being accessed?
 5         A.   I'm trying my best to, but no.
 6         Q.   Have you interviewed an individual by the
 7    name of Leonard Lujan?
 8         A.   I have.
 9         Q.   And prior to the interview with him, did
10    you review his prior interviews, the ones that he had
11    done with -- I think you said the previous agents and
12    also State Police?
13         A.   I do recall doing that with him in the
14    library of one of the facilities with his attorney,
15    yes.
16         Q.   Do you recall in one of the interviews that
17    Mr. Lujan indicated there was a videotape he was
18    shown by Warden Tafoya that showed him out in the
19    yard?
20         A.   No.  It may have happened.  I just don't
21    recall that portion.
22         Q.   Would you like it if I could pull up a
23    document to refresh your memory?
24         A.   If you have more questions about it,
25    probably.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7847

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7848

1        Q.   Okay.  Could we go to page 262.  Do you

2   recognize this as a page from a transcript of an

3   interview that Leonard Lujan had with Detective Rich

4   Lewis?

5        A.   Yes.

6        Q.   And do you see where he discusses being on

7   camera and video, and that was shown to him at around

8   the time of the murders, or actually after the

9   murders it would be.  If you need to scroll down, let

10  us know.

11       A.   Thank you.  That's good.

12       Q.   Okay.  In your investigation did you ever

13  obtain any videotape from the yard that was

14  preserved?

15       A.   No.

16       Q.   Did you investigate whether that prison

17  there, Southern prison, had video cameras in 2001?

18       A.   Yes.

19       Q.   And what did you learn?

20       A.   I talked to seven former Corrections

21  officials that worked there at that time.  Six of

22  them told me there were no cameras.  One gentleman

23  thought they had cameras, but they were live only,

24  that they didn't record.

25       Q.   Is that for the pods or for the whole

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7848

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227849

```
 1    prison?
 2         A.    Prison-wide.
 3         Q.    No individual cameras at all?
 4         A.    Six out of seven said none, and one thought
 5    we might have had cameras, but they were just live,
 6    like they didn't record.
 7         Q.    Were you here when Mr. Lujan testified this
 8    week?
 9         A.    Yes.
10         Q.    And did you hear him -- I think it might
11    have been him who said that individuals from the
12    Department of Corrections would be on the roofs
13    taking photographs down below.  Did you hear that?
14         A.    Yes, I think so.
15         Q.    Did you find a collection of photos that
16    were taken from the Department of Corrections
17    officials in that time period?
18         A.    Not like you're describing.  The only
19    photos that I have, or have come across, are in the
20    STG files.  Or in some cases, I'll just say STIU
21    officers have had them.  They seem to be more
22    ground-based, where the guys are posing together.
23    That's the only kind of photos I've seen.  I've not
24    seen a rooftop-type photo.
25         Q.    In any of your review of discovery or any
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                                  e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7849

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228

```
 1  kind of materials, have you ever come across

 2  information that that was a practice of Department of

 3  Corrections at Southern in 2001?

 4       A.   No.

 5       Q.   I think Mr. Lujan also said they would take

 6  rooftop video down below.  Do you recall that?

 7       A.   I don't.  But if they did, I've not seen

 8  anything like that.

 9       Q.   And you haven't seen any reports that such

10  a practice existed back in 2001; is that correct?

11       A.   Correct.  And to be clear, Mr. Castle, when

12  I asked about cameras in the facility, I didn't just

13  say wall-mounted, I was asking about the existence of

14  videos, period.

15       Q.   Top to bottom?

16       A.   Yes, sir.

17       Q.   Did the investigating officers in 2001

18  conduct examinations of inmates in the two pods where

19  the murders occurred to see whether inmates showed

20  physical signs that they'd been involved in a

21  struggle?

22       A.   In some cases, yes.

23       Q.   Well, do you recall that they did it with

24  regards to all the inmates in the two pods where the

25  murders occurred?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229 7851

```
 1        A.   Based on my review of the material, again,
 2   from your Touhy letter, I'm not seeing that all of
 3   the inmates were reviewed.
 4        Q.   If we could go to page 18961.  About
 5   two-thirds down, do you see here where -- it starts
 6   here.  Well, actually, "Inmates assigned to P 1
 7   green," and then if you could read down below that?
 8        A.   Yes, sir.  I agree with you, Corrections is
 9   saying they did it.  What I'm saying is I don't see
10   the results of it consistently.
11        Q.   So they said photos were taken of any
12   injuries identified and secured as evidence.  Did you
13   ever get those photos?
14        A.   I think we have a few in discovery, but
15   definitely not for everyone, based on my going
16   through the material.
17        Q.   And do you know what happened to those
18   photos?
19        A.   No, sir.
20        Q.   Do you recall that, at least in one report,
21   it indicated that Allen Patterson did have some
22   injuries?
23        A.   Yes, and I've seen some photos.
24        Q.   You said the photos are in evidence?
25        A.   Yes, sir.  I wrote the Bates numbers down.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Polaroids of Patterson, I wrote, start at 19441.
 2         Q.   So do you have the actual Polaroids, or
 3    just a xerox copy of them?
 4         A.   I'm not sure.  I'd have to get back to you
 5    on that.  The quality of the photocopies is decent,
 6    so maybe we have the originals.
 7         Q.   I'll do some searching.
 8         A.   I'll pull it up as well.  I don't think
 9    that we have the originals.
10         Q.   If I could, let me show you what I have.
11         A.   Sure.
12         Q.   Is that what you're referring to, page
13    19441?
14         A.   Yes, sir.
15         Q.   Can you make out the injuries at all that
16    they're talking about?
17         A.   That's not very good picture quality.
18         Q.   I know you're not a forensic pathologist to
19    be able to look at injuries and determine what the
20    cause of them are or age or anything of that nature.
21    But would you be surprised if such an expert could do
22    that based upon a photocopy like that?
23         A.   I'd be pretty impressed.
24         Q.   You didn't collect the Polaroids; is that
25    right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   I'd like to get back to you on that.  Based

2    on the -- looks like they already had hole punches in

3    them and stuff, I'm thinking we probably didn't.  I

4    can't say for certain, though.

5        Q.   Assuming they no longer exist, and assuming

6    that the defense has gone over and looked at the

7    physical evidence that's been collected and kept by

8    the State Police, would you be able to tell us

9    that -- when those actual Polaroids might have been

10   lost or misplaced?

11       A.   No.

12       Q.   And do you know whether those actual

13   Polaroids ever made it into FBI custody prior to you

14   being on this case in 2015?

15       A.   I don't believe they have, but I can't say

16   for certain.  They were contained within the

17   materials we got from the Corrections Department.

18       Q.   Polaroids like that are actual physical

19   items of evidence; is that right?  Would they be kept

20   as physical items of evidence?

21       A.   I would.

22       Q.   And so if Agent Armijo, between 2001 to

23   2008, came into possession of them, we wouldn't know

24   where they are unless we contacted him?

25       A.   True.  However, when his case was closed,

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                  Albuquerque, NM 87102
(505) 989-4949                                                                            (505) 843-9494
FAX (505) 843-9492                                                                   FAX (505) 843-9492
                                                                                        1-800-669-9492
                                                                              e-mail: info@litsupport.com

                                                                                        DNM 7853


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 232 of 854

 1    as is the practice, if he's closing the case and no

 2    one is getting prosecuted, they may not have been

 3    retained.

 4         Q.   He didn't close the case; I think you said

 5    Agent Roundy adopted it?

 6         A.   And then that one got closed, and he opened

 7    up a new one.  So it's difficult to say.  I just want

 8    to make sure I'm being real candid with you what the

 9    practice is.

10         Q.   In the investigation of the 2001 murders,

11    was there evidence developed that indicated Ray

12    Molina may have been involved in the murders?

13         A.   There is some informant and early informant

14    and inmate statements to that effect.

15         Q.   Were you done?  I'm sorry, I didn't mean to

16    cut you off.

17         A.   You said "evidence," so the answer is no,

18    but there were some early-on statements.

19         Q.   Okay.  So there had been some information?

20         A.   Yes.

21         Q.   Any information that Ray Molina was an

22    enforcer for the SNM?  Do you recall that?

23         A.   Every one of these guys at one time or

24    another says they're an enforcer.  I don't know.

25         Q.   Do you recall in your investigation -- I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7854

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7855

```
 1    think it came up earlier -- that there had been a
 2    black shoelace that was fashioned into a noose that
 3    was found in inmate Martin Chacon's cell?  Do you
 4    recall that?
 5         A.   Yes.
 6         Q.   Have you been able to locate that --
 7         A.   No.
 8         Q.   -- evidence?
 9              Do you recall an individual that was at the
10    Southern facility in 2001, at the time of the
11    murders, by the name of Jesse Ibarra?
12         A.   Yes.
13         Q.   Was he a Mexican national?
14         A.   I don't recall.
15         Q.   Have you interviewed him?
16         A.   No.
17         Q.   Do you recall that there was evidence -- I
18    think you now identified it as from Jimmie Gordon --
19    that said -- where Mr. Gordon overheard Mr. Ibarra,
20    Leroy Lucero, and Eugene Martinez talking about
21    assaulting other inmates shortly before the murders?
22         A.   Yes.
23         Q.   And also in that -- I think by that same
24    source, Mr. Gordon, indicated that Mr. Ibarra and Mr.
25    Lucero were part of the board at Southern.  Do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7855

```
 1    recall that?
 2         A.   I do.
 3         Q.   What did you take "the board" to mean?  Is
 4    that the board of the SNM, kind of the ruling people?
 5         A.   Kind of.  Yes, his understanding of that.
 6    I think -- I think Lucero was a llavero.  I think he
 7    was a key holder.  I think he had influence.
 8         Q.   Somebody who could call shots?
 9         A.   Yes.
10         Q.   And he had that power until he left the
11    facility; is that right?
12         A.   To some degree.
13         Q.   He left the facility three days before the
14    murders; is that right?
15         A.   Yes.
16         Q.   And I think -- well, in your view of the
17    reports from 2001, did you find that facility
18    logbooks and daily logbooks were collected for the
19    day of the homicide and the day before the homicide,
20    or homicides?
21         A.   There are a lot of daily logbooks in there.
22    I'm not sure if they cover both days.
23         Q.   Were you able to locate all of the logbooks
24    that were collected?
25         A.   I think I know what you're asking.  And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7856

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7857

1    am unable to collect anything that wasn't preserved,

2    if that makes sense.  Corrections doesn't have it

3    anymore.

4         Q.   Right.  In your view of what was preserved,

5    did it appear to you that everything had been

6    preserved?

7         A.   Facility-wide, no.

8         Q.   Such as, I think there was an Officer

9    Pedraza who testified earlier in these hearings that

10   he kept a daily log of movements and things of that

11   nature.  Do you recall that?

12        A.   I'd have to look closer at them.  There are

13   a lot of logs in there.  But based on the Touhy

14   letter, I wasn't sure exactly what you were looking

15   for.  So I verified there are some there, but --

16        Q.   We were looking for what was missing.  So I

17   don't think you can locate them.

18        A.   I trust that you probably know what's

19   missing.  And I can't fill in those gaps.

20        Q.   Did you find, in 2001, that the Department

21   of Corrections were scanning and collecting mail that

22   might be suspicious at all?

23        A.   There is some evidence that they were doing

24   that, yes.

25        Q.   Did you find any that had been collected

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7857

```
 1    and copied?

 2         A.    Yes.

 3         Q.    From that time period, time of the murder?

 4         A.    Depends on your definition of time period.

 5    But I saw some all the way out as far as -- maybe

 6    three or four months later I think there is a couple.

 7    I read one this morning, again, while I was in here,

 8    I think was shortly thereafter.

 9         Q.    Do you recall there being a report where

10    STG Coordinator Jim Moore indicated that information

11    received through mail scans was able -- they were

12    able to develop a source that was able to provide

13    firsthand knowledge about inmate deaths at the

14    Southern facility?

15         A.    I think Moore and that crew back then did

16    develop sources who had firsthand knowledge.  But are

17    you asking was it through the mail?

18         Q.    Yes.

19         A.    I'm not aware of that.

20         Q.    I'll see if I can refresh your memory.

21    Page 725.  Do you see what we're pointing out?

22         A.    Sure.  I think that's -- do you want me to

23    comment on it, or just --

24         Q.    Well, it's not a great sentence, I

25    understand that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7858

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 237

1        A.   I mean, that's true today, isn't it?   I

2   mean, inmate deaths at the hands of the SNM are going

3   to keep happening.   What's changed?

4        Q.   Well, I understand.   But did you find any

5   mail scans in letters that discuss murders that were

6   going to happen at Southern New Mexico Correctional

7   Facility?   Did you find any that was preserved as of

8   April 9, 2001, when this note was written?

9        A.   No, I have not.

10       Q.   So whatever mail they're talking about

11  doesn't exist at this point, at least in your

12  possession?

13       A.   Correct.

14       Q.   Do you know whether Mr. Garcia's mail was

15  scanned?

16       A.   Billy Garcia?

17       Q.   Billy Garcia's.

18       A.   I've seen letters to and from Mr. Garcia.

19  None jump out as having to do with the two homicides,

20  though.

21       Q.   How about from 2001?

22       A.   I don't believe so.

23       Q.   Phone calls were collected, or at least

24  reviewed by the Department of Corrections, the

25  recorded calls at the time leading up to and the day

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7859

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 3860

```
 1   of the murder; is that right?

 2        A.   They represent that, yes.

 3        Q.   Did you receive any discs, tapes, or

 4   anything of that nature where the phone calls were

 5   preserved?

 6        A.   No.

 7        Q.   Now, in your investigation, was Mr. Leroy

 8   Lucero interviewed this year?

 9        A.   Yes.

10        Q.   Were you part of that interview?

11        A.   I was.

12        Q.   And during that interview did he talk about

13   being on the phone prior to the murders with an

14   individual by the name of Angel Munoz?

15        A.   Yes.

16        Q.   And did he indicate that during that phone

17   call he discussed the murders that were going to

18   occur?

19        A.   Yes.

20        Q.   So I take it you'd love to get ahold of

21   that phone call?

22        A.   I would.

23        Q.   But it doesn't exist?

24        A.   I've never seen anything like that.  I only

25   know about it from Mr. Lucero.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7860

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7861

```
 1        Q.   That's the only person that confirmed that
 2   call existed?
 3        A.   Yeah, he's the only party alive still that
 4   was part of the phone call.
 5        Q.   Okay.  I think he said it was a three-way
 6   call; is that right?
 7        A.   It was.
 8        Q.   Was it through his wife or girlfriend or
 9   anything like that?
10        A.   No, I think it was another member who was
11   on the streets.
12        Q.   Okay.
13        A.   You know the transcript better than me.
14   I've got to go back and look at it.  But I thought --
15   he tells me who the guy was, but I thought it was a
16   male.
17        Q.   But not someone you've tracked down or
18   anything like that?
19        A.   The phone call?  No.
20        Q.   The third party.
21        A.   No.  I think this was before cellphones,
22   too.
23        Q.   Now, if we could go to Exhibit A.  If we
24   could go to Bates page 13866 of that, I think it's
25   five pages after the first one here.  I might be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7861

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 240 862

1    wrong, but do you recall that as early as 2001, the

2    Department of Corrections had agreed to make

3    available to the FBI recorded phone calls of SNM

4    members?

5         A.   Yes.

6         Q.   And did you find that the FBI followed up

7    on the collection of those phone calls?

8         A.   I don't believe they did.

9         Q.   And actually in 2001, the Department of

10   Corrections essentially said:  We'll cooperate with

11   the FBI fully, and provide whatever they need

12   regarding the SNM investigation, including the 2001

13   murders?

14        A.   Correct.

15        Q.   And the FBI didn't follow up on that?  At

16   least --

17        A.   I don't believe -- yeah, I'm going to speak

18   terribly about my agency, but I don't believe anyone

19   really cared.  I don't see the work put into the

20   case.

21        Q.   If we could go to the next page.  Do you

22   see paragraph 1 where they talk about all the things

23   that should be collected like letters, calls,

24   incident reports, prior prosecutions, et cetera,

25   Corrections' records?  Do you see all that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7862

```
 1        A.   Yes.

 2        Q.   Do you know whether the FBI followed

 3   through on that?

 4        A.   I don't believe they did.

 5        Q.   Because you don't find it in the files?

 6        A.   That, and in talking to the agents assigned

 7   to the team back then.

 8        Q.   Did you find a copy of this Exhibit A in

 9   the Southern Task Force's materials?

10        A.   This document?

11        Q.   The plan, the investigative plan.

12        A.   I believe so.  Isn't that how we have it?

13        Q.   I have no idea.

14        A.   They would had to have turned it over.

15        Q.   I think we got it from Agent Pedersen.

16        A.   And I gave him his file, so --

17        Q.   He was at Central, not Southern.

18        A.   Right.  But I got all of the FBI files, to

19   include from archives, and I have them now.  And I

20   gave Pedersen -- he was worried about responding to

21   your subpoena, so I gave him those documents.

22        Q.   Do you recall in your review of the

23   materials that the personal data sheets of all

24   inmates assigned to the pods when the homicides

25   occurred were collected by Norman Rhoades of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242

2:42864

```
 1   State Police?
 2        A.   Yes.
 3        Q.   Have you been able to see those, the ones
 4   that existed in 2001?
 5        A.   I think so, yes.
 6        Q.   You think you have those?
 7        A.   Those are what I'd call the escape flyers.
 8   Are we talking about the same thing?
 9        Q.   I don't know what --
10        A.   Yes.  And the reason I believe is Rhoades
11   wouldn't otherwise be able to get all the
12   biographical data that he puts on the first couple
13   pages of his report without them.  So I think they're
14   in there.
15        Q.   I want to the switch to informants that
16   were developed over the years.
17        A.   I have some notes on that, sir.
18        Q.   So you can go ahead and access your notes.
19   Were you able to identify the source at page 14210?
20        A.   Yes.
21        Q.   Who was that?
22        A.   Augustine Saenz.  Source 1A, is that who
23   you're asking about?
24        Q.   Yes.
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 243 7865

1     Q.   And how were you able to determine that was

2   Augustine Saenz?

3     A.   I compared his statements:  Being from the

4   same neighborhood, the same gang; that he's not SNM.

5   And then there is an FBI 302 -- I don't know what the

6   Bates number is, but it's dated 7/18/2016 -- Saenz is

7   interviewed by somebody on my team, and it matches up

8   with this information.  So I believe that that's who

9   this informant is.

10     Q.   If we could go to page 521 of discovery.  I

11   think you indicate you were able to determine who

12   source number 1 was, but not 2, 3, or 4; is that

13   right?

14     A.   Correct.

15     Q.   So specifically DFS #3?

16     A.   Yes.  I can tell you what's redacted, but

17   that doesn't tell us who the source is.

18     Q.   It's an identifier that they use; is that

19   correct?

20     A.   Yes, sir.

21     Q.   So this is an informant that stated to

22   Dwayne Santistevan that three or four days prior to

23   the killings, Leroy Lucero was telling inmates in the

24   compound they better get ready because the SNM was

25   going to clean house; is that right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7865

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 244

```
 1          A.   Yes, sir.
 2          Q.   And Mr. Lucero was there at least four days
 3    before the homicides?
 4          A.   Correct.
 5          Q.   I think he might have been there for part
 6    of the third day before the homicides; is that
 7    correct?
 8          A.   Then I think he caught a bus to
 9    Albuquerque.
10          Q.   He was released?
11          A.   Yes, sir.
12          Q.   And his job then was supposed to be to take
13    over the SNM drug business on the streets?
14          A.   It depends who you -- yeah, maybe.
15          Q.   I guess there were many that wanted to take
16    over the drug business on the streets?
17          A.   Well, and -- I mean, I just say it like
18    that because it depends whose version you believe.
19          Q.   Were you able to determine who the
20    informant was at page 1257?
21          A.   Yes.
22          Q.   And who was that?
23          A.   Neri, N-E-R-I.  Mostly because it says he's
24    from New York; that's the only guy in the pod from
25    New York.  And then the information lined up as well.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7866

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245 7867

```
 1          Q.   The inmate at page 27899?

 2          A.   I may be mistaken, but I don't think that

 3    was in the Touhy letter, was it?  I'm happy to look

 4    at it, but I only researched the ones you gave me.

 5               MR. BECK:  No, it's not -- we identified

 6    this is the same report and a different version as

 7    that at Bates 606.

 8               MR. CASTLE:  Okay.  Thank you.

 9          Q.   And 606 is who?

10          A.   I have 605; I don't believe I have 606.

11          Q.   Let's go ahead and pop 606 up.  Well, this

12    is the same page.  Let's just go ahead and take a

13    look at that?

14          A.   This is Rosa's mysterious guy.

15          Q.   Did you call him a mysterious guy?

16          A.   I have trouble with this informant.  I

17    mean, most of the stuff he talks about is unfounded.

18    I never see it again.  So it's hard for me to tell

19    you who this guy is because I'm ruling them out over

20    the years against other people who have given

21    statements.  Where they match up, I can tell you who

22    it is.  But in Bates 605, this is largely stuff that

23    is contradictory and unfounded.

24               THE COURT:  Mr. Castle, would this be a

25    good time for us to take a break?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7867

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245868

```
 1            MR. CASTLE:  Could I just finish this
 2    particular exhibit?
 3            THE COURT:  That's fine.  Go ahead.
 4       Q.   Let's look at this.  It says here that the
 5    source indicated that the killings were ordered by
 6    Angel Munoz.  Do you see that?
 7       A.   Yes.  This is not a document you had me
 8    look at.  I'm looking at 605.  I thought we said it
 9    was the same as --
10            MR. BECK:  606.
11       A.   I don't know what that is.  That's not on
12    the Touhy list.  This is 606?
13       Q.   It's the same as 606.  We'll just pull up
14    606 to be clear.  You see this is a report drafted by
15    Andrew Armijo?
16       A.   Yes, sir.
17       Q.   And this source, do you know who that is?
18       A.   I do not.
19       Q.   And is this information that you indicated
20    was not verifiable, or was that in reference to 605?
21       A.   My reference was to 605.  I'm sorry.
22       Q.   Okay.  We're going to take a break now.
23       A.   I'll look at this, sure.
24            THE COURT:  Before anybody goes, let me do
25    some speaking here.  I'm going to do a lot of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7868

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 247

```
 1   speaking after the break so that we can use the rest
 2   of the afternoon to work.  Before we leave today I've
 3   been working on this James chart which has now
 4   expanded into what we'll call the non James
 5   statement, these sort of five plus categories.  So
 6   I'll probably put them all in the same opinion,
 7   because y'all used the James statement to be the
 8   target.
 9              So I'm putting that together.  It's not
10   done.  But why don't y'all talk, and you don't have
11   to let me know now, whether you want to see what I've
12   got.  I won't file it.  I'll simply pass it out to
13   you and we can attach it to Ms. Bevel's court
14   exhibits to her clerk's minutes, so we know what
15   we're talking about.  If you want to see what I'm
16   doing, see the progress I've made, probably the first
17   portion of it is pretty good, pretty tight.  The
18   further you get along, it's a little more ragged.
19   I'm still working on it but it will show you where
20   I'm going.  So let me know after the break if you
21   want it.
22              Second, I'm going to need to know by the
23   end of the day what it is that you want me to work on
24   when I leave for Albuquerque, that's going to help
25   you get ready for trial.  So if y'all would talk and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7869

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 248 7870

```
 1    let me know.  It doesn't have to be one thing, you

 2    don't have to agree, but just let me know what I can

 3    do when I leave here that would be most helpful to

 4    you.

 5              And third, Mr. Benjamin, is that your son

 6    back there, or was that him?

 7              MR. BENJAMIN:  That is him.

 8              THE COURT:  Is he still around?

 9              MR. BENJAMIN:  I think he's in the

10    conference room.

11              THE COURT:  Well, I'm going to take a

12    break.  If he'd like to, Ms. Bevel can bring him up

13    and he can sit in the seat, maybe give him a tour of

14    the jury room.

15              And for those of you who want to take a

16    look sometime, if you haven't done anything with

17    JERS, Jury Electronic Retrieval System, you might

18    want to take a look at it.  And it may be that even

19    the exhibits from the last trial are on there, so Ms.

20    Bevel can maybe show you that, if you haven't,

21    because we're going to use it for this trial as well

22    and if you haven't seen it -- but tell him to come on

23    up and sit in my seat, and tell him if he touches

24    anything, he has to do the work, okay?

25              MR. BENJAMIN:  There you go.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7870

```
 1                   THE COURT:  See you in about 15 minutes.
 2                   (The Court stood in recess.)
 3                   THE COURT:  All right.  Looks like
 4      everybody is back and every defendant is in the room
 5      and everybody has got an attorney.  Look around, make
 6      certain.
 7                   All right.  Let me go over a few things.
 8      One is let me see if y'all want the -- what I have so
 9      far, a draft of the James chart, and it will also
10      pick up the other five, although it will probably be
11      a separate chart, so you wouldn't see my work on
12      that, because I haven't worked really much on that.
13      Do the defendants, the Government, want to see it?
14      Or do you want me to just wait and get the opinion
15      out and look at it then?
16                   MS. HARBOUR-VALDEZ:  The defendants would
17      like to see it, Your Honor.
18                   THE COURT:  Is that all right with you, Mr.
19      Beck?
20                   MR. BECK:  Yes, Your Honor.
21                   THE COURT:  All right.  So I will have
22      either Mr. Hammond or Ms. Bevel make 10 copies; eight
23      will go to the defendants, and the Government will
24      get one, and then we'll attach one to the clerk's
25      minutes as exhibit.  Ms. Bevel, what will the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7871

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 250

```
 1   clerk's --
 2             THE CLERK:  Just call it Court's Exhibit 1.
 3             THE COURT:  Is this the first one for this
 4   hearing?
 5             THE CLERK:  I think it would be better if
 6   we call it Court's Exhibit 1.
 7             THE COURT:  All right.  For this hearing it
 8   will be Clerk's Exhibit 1 -- Court's Exhibit 1.  The
 9   first 12, 13, I've really had time to work on.  The
10   next 16 are a little ragged.  So about a third.  And
11   then after that it's very spotty, it's a lot of
12   blanks.  But some of it is stuff that's come up
13   during the hearing, and we've typed it in so we'll
14   remember it, rather than having to review all the
15   transcript.  Although we'll probably get that done,
16   even when we get that.  So remember that it's a work
17   in progress.  But it will show you what I'm doing.
18   And then, if you want to start shooting at it, you
19   can.  I know time is beginning to run out.
20             So send me letters, or however you want to
21   communicate with me about what you disagree, or what
22   you can kind of live with, expect it, or something
23   like that.
24             When I leave here tonight, what is it
25   that -- did y'all get a chance to talk about what you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7872

```
 1    want me to work on, continue to work on?
 2              MS. HARBOUR-VALDEZ:  I'll take that.
 3              THE COURT:  Okay.  Ms. Harbour-Valdez.
 4              MS. HARBOUR-VALDEZ:  We would like the
 5    Court to look at the bifurcation motion that was just
 6    filed.  I know the Government probably hasn't
 7    responded to that yet.  But we'd like you to look at
 8    that, as well as the motion that was filed earlier
 9    this week regarding the configuration of the
10    courtroom.
11              I understand there is going to be a meeting
12    in Albuquerque on Monday regarding the trial
13    location.  So we understand that some of those
14    decisions may have to wait.  But we'd obviously, for
15    various reasons, like to know as soon as possible
16    where we're going to be sitting and how we're going
17    to be sitting.
18              THE COURT:  Okay.
19              MS. HARBOUR-VALDEZ:  Regarding -- did you
20    want to know about future hearings, what we think is
21    outstanding?
22              THE COURT:  Well, I'll probably just leave
23    that for another day.  Y'all can talk to Ms. Bevel
24    and Ms. Wild about future hearings, and what we're
25    going to put there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7873

```
 1              As far as heavy lifting, what do you want
 2    me to do?  Continue to work on the evidentiary
 3    opinion?
 4              MS. HARBOUR-VALDEZ:  Yes.
 5              THE COURT:  Anything ahead of that?
 6              MS. HARBOUR-VALDEZ:  No one told me
 7    anything else.
 8              THE COURT:  All right.  Does that seem to
 9    be where you are, too, Mr. Beck?
10              MR. BECK:  Yes, Your Honor.
11              THE COURT:  The thing I can do that will
12    help y'all most get ready for trial is to finish out
13    that -- I'll call it James/probably statement against
14    interests opinion.
15              MS. HARBOUR-VALDEZ:  Yes, Your Honor.
16              THE COURT:  I'll continue to work on that.
17              All right.
18              MS. HARBOUR-VALDEZ:  Your Honor, one more
19    thing on the radar, some of us have already had
20    travel approved to come down here on March 26.  So if
21    we have follow-up hearings, it would be great if we
22    could tie them in that week so that we all don't have
23    to get another round of travel logs.
24              THE COURT:  Yeah, don't hold your breath on
25    that.  Ms. Wild told me that if I did need to come
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7874

1    back down here, it was most likely going to be that

2    last week, which would be the week of the 2nd, 3rd,

3    4th and 5th.  So I will not be available on Friday.

4    So I will -- one of my very first law clerks is being

5    sworn in as a Court of Appeals Judge in Arizona.

6            MS. HARBOUR-VALDEZ:  Nice.

7            THE COURT:  So the Governor has appointed

8    her there, so I'm going to go over there and speak at

9    her investiture.  So I'm not be available on Friday,

10   but those four days were what Ms. Wild had indicated

11   to me were the most likely.  But y'all can talk to

12   her about that.

13           MS. HARBOUR-VALDEZ:  Yes, Your Honor.

14   Thank you.

15           THE COURT:  All right.  Let me talk about a

16   few other things that I have thought about today as

17   we have heard evidence.  Let me talk a second about

18   Leonard Lujan.  Two things about him:  One is that if

19   you will look at the conspiracy chart that was

20   created on Tuesday or Monday, whenever Mr. Castellano

21   did it, everybody that is in the indictment is a

22   defendant in this case or a fugitive, with the

23   exception of Leonard Lujan.  And there is no evidence

24   of anybody else that has been introduced in this case

25   for a conspiracy other than his plea agreement.  So I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7875

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254876

1    have been focusing this week on the statements

2    themselves and the chart.  But before I get to that

3    chart, I've got to make findings of fact as to a

4    conspiracy existed and who is in that conspiracy.  I

5    have not studied the plea agreement to figure out if

6    all the people that were identified by Mr.

7    Castellano -- and there were six unindicted people

8    that were listed -- so there would be a total of 11

9    in that conspiracy, but the problem I'm having now is

10   given the letter that we've seen from Mr. Burkhead,

11   I'm pausing about whether I can find by a

12   preponderance of the evidence that a conspiracy

13   existed, and who is a member of it.  Because all I've

14   got is his plea agreement.

15         And I've got a letter from the U.S.

16   Attorney's Office indicating that he is incredible,

17   so -- and unreliable.  So I'm pausing whether I can

18   now -- I'll go ahead and make my chart, but I don't

19   know where the evidence is for me to establish, A,

20   that a conspiracy existed on Count 1, or who are the

21   members of that conspiracy.  And it would seem that

22   that letter may come into evidence, so -- as an

23   admission, party admission.  So I think we're on

24   shaky ground right now as to the co-conspirator

25   statements that, at least on the record that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7876

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255 7877

```
 1    have -- now, it may be that, you know, there are
 2    other people that are listed in the conspiracy, like
 3    Angel Munoz and Leroy Lucero and Frederico Munoz,
 4    some other people, but, you know, I -- that might be
 5    able to salvage the case.  But anyway, there is a
 6    problem there.  So as I work toward finalizing the
 7    opinion, I can continue to work on the chart, but I
 8    may have to go back, and it may get more difficult
 9    to, in the end, find the essential elements of
10    conspiracy and who was a member of the conspiracy.
11            As far as Counts 4 and 5 as to Adrian
12    Burns, like I said, I'm still in the middle of this
13    chart.  And it may be that there is a quick answer
14    for this.  But nothing has been introduced, that I
15    know of, as to a conspiracy on 4 and 5.  Now, it may
16    not be a problem because there may be no statements
17    on 4 and 5.  And so, if that's the case, it's a
18    phantom problem.  But I just point it out because, as
19    I work through the chart, if I run across any
20    statements there, I don't have any evidence of a
21    conspiracy, or who the members of the conspiracy are,
22    other than the representations of Mr. Castellano.  So
23    I'm without evidence on that.  But it may be it's not
24    a problem.
25            As to the document that was filed by the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7877

 1    Government last night or this morning, I know, Mr.

 2    Beck, you said that it had fallen between the cracks;

 3    it was something that Mr. Castellano had committed

 4    to.   But I think I'm going to have to just say for

 5    purposes of the James hearing, I'm going to ignore

 6    it.   I don't think the Government put much effort

 7    into it, so I'm not sure I ought to put much effort

 8    into it, or the defendants ought to put much effort

 9    into it.

10            We agreed that we were going to identify

11    additional statements by the end of the day on

12    Wednesday, I think it was.   And this came down either

13    last night or this morning.   And it just simply

14    identifies all that was in the first trial.   And like

15    I said, I don't see how any of those -- none of the

16    standards for the James hearing can be satisfied by

17    what we did in the first trial.   They're different

18    conspiracies, there is different members.   And it

19    requires an entirely new evaluation.   I don't see how

20    it can be used against these defendants.

21            So, for the present time -- and you'll

22    probably see this in the opinion -- I'm just going to

23    not evaluate those, and I will exclude those from

24    trial.   If the defendants want -- if the Government

25    wants to come back belatedly and try to insert new

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7878

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 257

1    James statements in, it can do so, but I'm not going

2    to consider that document for trying to figure out --

3    I'm not going to go through each one of those

4    statements and try to figure out if they should come

5    in.  So they will not appear on the chart.  And I'm

6    just going to exclude all that evidence.  And if you

7    want to come back and try to get some of those

8    statements in, then I'll take a look at it.

9           Let me just see if I can read my notes

10   here.  It might be good for the defendants to

11   consider sending me -- I know -- in your motions to

12   dismiss you have a chart of what evidence you don't

13   have.  It seems to me that you're picking up some

14   evidence, and that chart needs to be maybe modified.

15   Give it some thought.  I'm certainly not ordering it.

16   But it may be wise for you to look at that chart and

17   tell me what's still in and what's still out.  It

18   seems to me that we made some progress in identifying

19   some things.  And it might be helpful to me before I

20   sit down and start working on that opinion to have

21   your latest and best offer as to what you think you

22   don't have, and what your prejudice portion is.

23           I will say this:  I don't have a great

24   inclination to change my opinions earlier about the

25   motions to dismiss.  And I don't think that probably

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7879

1    I'm going to be in any position to grant those

2    motions to dismiss before trial.  So I think we're

3    looking at a trial.  But those motions to dismiss may

4    be an ongoing work and project for me as I get closer

5    to trial, and during trial, and maybe even after

6    trial.

7            But I will say this:  That I have been

8    impressed as I have looked at the documents here,

9    that there may be more meat on the bones than I was

10   giving the defendants that filed those motions credit

11   for by looking at their motions.  It seems to me that

12   the defendants have, with the hearing, made their

13   case a little stronger than what I had perceived from

14   the papers.

15           All right.  I have been alerted about the

16   bifurcation motion, and I will take a look at it.

17   But don't hold your breath.  I think I'm sort of

18   locked into, you know, trying to get us to the

19   promised land with the defendants that we have.

20           Configuration:  I will still work -- I

21   talked to Ms. Wild, and we do not have anything

22   better right at the present time.  I'll certainly

23   look at your pictures and things.  I need to study

24   your motion.  But I don't have anything better at the

25   present time.  So we'll continue to look at the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7880

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 259 881

```
 1   possible arrangements.
 2           I guess at the present time -- you know,
 3   I've been up here paying lots of CJA vouchers, I
 4   guess I think it may be a little bit late to
 5   unscramble being down here.  So I do appreciate Ms.
 6   Harbour-Valdez sort of giving me till Monday, because
 7   I do want to meet with some people up there, and get
 8   some more information and input.  But I think for the
 9   present time, I certainly have seen that,
10   particularly on the defense side, where I'm looking
11   at CJA vouchers, that a lot of you have made some
12   fairly significant efforts to plan.  And so I want to
13   be sensitive to not throwing y'all into turmoil.
14           And it may just be that what I can do in
15   this space over here is about what I can do in the
16   Rio Grande courtroom.  It may be that I can't change
17   a whole lot.  So at least for the present time, I
18   think I'm planning to be down here, and you probably
19   can plan to be down here as well, just because I
20   don't want to really upset the defendants' plans,
21   which I have seen are quite considerable.
22           Now, I've seen some of them kind of being
23   thrown in turmoil by Ms. Waters and some others, so
24   it may be that it's not as difficult to unscramble,
25   and that's one thing I want to look at over the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7881

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 260 7882

```
 1    weekend, is exactly what y'all's plans are.  And if I
 2    feel like I'm throwing you into turmoil, I don't want
 3    to do that.  You've got enough things to think about,
 4    rather than where you're going to be.  So for the
 5    present time plan on being here, continue to make
 6    your plans.  And chances are what I'm going to learn
 7    up in Albuquerque early next week is not going to
 8    change things.  But I do think I owe it to a lot of
 9    different levels of the court, who have worked very
10    hard to make what we do here work.  I owe it to them
11    to listen and talk, stuff like that.  So if you'll
12    give me that much of an out, I'd appreciate it.  But
13    for your planning purposes, I'm continuing to sign
14    CJA vouchers.  So I think I know that we're going to
15    be down here.
16            If you would like to speak on anything I've
17    said, or anything like that, you're welcome to do so.
18    if you want to pick up Mr. Acee, again, we can go.
19            Ms. Harbour-Valdez.
20            MS. HARBOUR-VALDEZ:  Your Honor, I spoke
21    with Agent Acee at the break about the dolly of
22    evidence that he referenced.
23            THE COURT:  He didn't say that.  I didn't
24    hear that.  There is no dolly of additional evidence.
25            (Laughter.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7882

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 261

1          MS. HARBOUR-VALDEZ:  We all heard it.  He

2   anticipates that he might have an answer by Tuesday

3   to Ms. Armijo on what it contains.  So if we could

4   have at least until Wednesday to update that chart,

5   we would certainly appreciate that.

6          THE COURT:  Oh, certainly.  That's really

7   optional on your part.  I thought it might help your

8   motion if it was accurate.  So, yeah -- I mean -- and

9   don't kill yourself on that, because, as you can

10  tell, I'm just -- after a week here, I'm only about a

11  third on those James charts.  And if that's my

12  primary task, then it's going to take a while.

13          When you get the chart, it will not look

14  this way probably in the opinion because I'm going to

15  probably paginate and turn around a little bit more,

16  and you'll receive an opinion, and it may be

17  formatted differently.  I need to -- I've been

18  reading the defendants' objections, but as you know,

19  a lot of those were boilerplate.  And I've been

20  trying to pick out the ones that are specific.  But I

21  need to probably do something to indicate to the

22  reader where it's boilerplate, where it's specific.

23  So when you see this chart, it may be formatted

24  differently in the opinion when I get it out.  This

25  is a draft chart.  So don't kill yourself on that,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7883

```
1    because unless you tell me the motions to dismiss --
2    but I don't think we probably ought to go there.  I
3    think we've got to get ready for trial.  So I think
4    you're making the right choice by sending me back
5    working on the evidentiary issues.
6              MS. HARBOUR-VALDEZ:  Okay.  Thank you, Your
7    Honor.
8              THE COURT:  All right.  Ms. Torraco first,
9    then I'll come back to you.  Ms. Torraco.
10             MS. TORRACO:  Thank you, Your Honor.
11             I just briefly want to address the very
12   exciting topic of this dolly.  And I want to put it
13   in terms of we've asked you to take a look at the
14   bifurcation motion, which Mr. Andrew Gallegos and
15   Mr. Joe Gallegos have opposed, because we're still
16   rooting for severance.  But with the --
17             THE COURT:  Maybe I missed something.
18   What's the difference between bifurcation and
19   severance?  I guess I've been lumping those in.  Is
20   somebody making a real distinction between those?
21             MR. CASTLE:  Yes, Your Honor.  I'm talking
22   of bifurcation in the context of, we seek one jury;
23   we tell them there is going to be two portions to the
24   trial.  And we try Counts 1 through 3, and 13 through
25   16.  We tell them that Mr. Andrew Gallegos is here
```



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 263 of 289

 1    and participating in the first trial, but there is
 2    not going to be a verdict on him in the first part of
 3    the trial.  We finish, we get a verdict.  And then
 4    you put Counts 4 and 5, the evidence on 4 and 5,
 5    instruct the jury that they can take into account all
 6    the evidence in the first trial in the second part of
 7    the trial.  And we get verdicts.  That would allow us
 8    to have one jury, one proceeding.  The Government
 9    would have not to duplicate its evidence concerning
10    enterprise, but still, for the defendants in those
11    other counts, the prejudicial damage from the 4 and 5
12    counts --
13            THE COURT:  So it's the first group that's
14    not prejudiced, not the second group?
15            MR. CASTLE:  The second group is charged
16    with 4 and 5.  So the prejudice that would inure, I
17    think, under the law, if the Court is going to
18    proceed and allow federal jurisdiction to try that
19    case, that's not unfair prejudice under the concept
20    of 403, and things of that nature.  It's prejudice
21    from the alleged acts that they're saying you did.
22            So that's the concept that I have proposed
23    for the Court.  And normally we see it in cases where
24    there is a gun aggravator that there needs be a jury
25    finding with.  But I think that same process could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7885

1   work, and still provide the efficiencies to the

2   Government and to the Court.  I think the only thing

3   you would add is an additional opening or additional

4   closing argument.  There wouldn't have to be any

5   other evidence.

6           THE COURT:  Okay.  Before you speak, Ms.

7   Torraco, or I'm going to forget it:  I have pulled

8   out of your targeted response to the James motion,

9   Mr. Benjamin, your argument about this jurisdictional

10  issue.  Mr. Castle just mentioned it.  Is that

11  circulating?  All right.

12          (A discussion was held off the record.)

13          THE COURT:  All right.  We're about to send

14  an email to Ms. Bevel, and you're about to receive an

15  opinion here quickly on those issues.  So I pulled

16  that out because I was interested in them.  Anytime

17  people say "jurisdiction," my ears perk up.  So

18  you'll get an opinion on the three arguments you

19  raised about that, one of which is jurisdiction.

20          MR. BENJAMIN:  Thank you, Your Honor.

21          THE COURT:  I didn't know it was -- where

22  it was.  We meant to get it out this morning.  But I

23  knew it hadn't gotten out, so I wanted to tell you

24  it's coming out so you can be on the lookout.

25          MR. BENJAMIN:  I appreciate that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 265

```
 1                THE COURT:  All right.  So I understand
 2     now.  You just want severance, you don't want this
 3     bifurcation?
 4                MS. TORRACO:  Right.  But I wanted to bring
 5     up the fact that we have just been informed, just
 6     learned that there is more information going to the
 7     FBI that is most likely related to the Adrian Burns
 8     matter.  And I'm concerned about my ability and my
 9     co-counsel's ability to go through what's been
10     described as a dolly.  And I can only think that if
11     the Court is one-third of the way through the James
12     chart, you can imagine how much work that we have
13     when we finally get the rest of the Adrian Burns
14     information.  So when you're looking at the fact that
15     we're about to get another huge discovery dump, for
16     lack of a better term, I do believe that goes to the
17     severance motion.
18                Thank you, Your Honor.
19                THE COURT:  All right.  I guess my
20     inclination is, let's see what's in the dolly, or the
21     materials before we change course.  Ms. Armijo?
22                MS. ARMIJO:  Your Honor, I don't think it's
23     a big mystery as to the dolly.  Defense counsel for
24     Mr. Joe Gallegos asked to see the evidence.  We made
25     inquiries with New Mexico State Police as to where
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7887

```
 1    the Adrian Burns evidence is.  We told them that the

 2    defense wanted to see it, since Agent -- I guess he's

 3    Sergeant Williamson, the former case agent, was

 4    coming down to Las Cruces, he brought the evidence

 5    from the Burns murder down here, and turned it over

 6    to the FBI.  And so that was at the request of the

 7    defense to view it, to make it easier.  Mr. Benjamin

 8    is in El Paso.  So that is the evidence that's here.

 9    I informed Mr. Benjamin about it, and it was turned

10    over to the FBI.  So I don't believe there is going

11    to be a big dolly of new evidence.  It's just the

12    evidence from the Burns case.

13              MR. BENJAMIN:  I appreciate that, because

14    that wasn't how we understood the statement.  We

15    understood it to be documents, not handcuffs and

16    stuff like that.

17              MS. ARMIJO:  I think the new dolly is the

18    evidence in the Burns case turned over to the FBI,

19    and they've already been talking to them about

20    viewing this evidence this Friday.

21              So this is not a "Joe Sainato new box of

22    evidence coming in."  This is the evidence from the

23    New Mexico State Police to the Burns murder, Your

24    Honor.

25              THE COURT:  So we're always going to refer,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7888

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267889

1    the rest of our lives, to "the Joe Sainato box."

2    Well, if we didn't have war stories, right, we

3    wouldn't have much of a life, would we?

4          MR. CASTLE:  Up there with Al Gore's box.

5          THE COURT:  I don't want to make any

6    rulings on any motions until we get a feel for what's

7    in the dolly, the boxes.

8          All right.  Anything else before we resume?

9    Mr. Castle?

10         MS. ARMIJO:  Your Honor, the only other

11   thing I would add is in reference to the James

12   statements, we would ask you to consider -- I believe

13   we put more than one plea agreement in, like we did

14   last time.  Mr. Castellano put, I think, several plea

15   agreements in.

16         THE COURT:  He did, but none of them were

17   people that were -- I think, we looked at this during

18   our lunch hour.  None of them relate to the Castillo

19   murder, Count 1.  So --

20         MS. ARMIJO:  That may be true.  That may be

21   true.  But we would also ask you to take into

22   consideration, as far as the Garza, Frederico Munoz'

23   testimony today.

24         THE COURT:  Whose?

25         MS. ARMIJO:  Frederico Munoz, when he came

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7889

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268890

```
 1    in and he testified about his conversation with Billy
 2    Garcia, and he indicated that he had wanted Mr. Garza
 3    killed as well, and that his concern was as to
 4    Mr. Garza.  But I believe his testimony referenced
 5    both murders.
 6            THE COURT:  I think you're okay on Garza.
 7    If you've got some pages on Castillo, you might get
 8    with Ms. Bean, and pull those out and send them to
 9    me.  Because I think with Garza you still got, don't
10    you have Eugene Martinez' plea agreement in there?
11            MR. BECK:  Right.
12            THE COURT:  So I think you're okay on his,
13    because of that plea agreement.
14            Now, here's the thing I don't know about
15    any of these, I just haven't had time -- and be
16    cautious.  I do work faster than one-third of the
17    James agreement, Ms. Torraco.  I've had some other
18    things going on this week --
19            MS. TORRACO:  I'm sorry.
20            THE COURT:  -- as Mr. Benjamin will find
21    out in a few minutes, he's got another opinion.  So
22    I've been working on some footnotes for Shauna
23    Gutierrez.  So I've been doing some other things.  So
24    I think -- the only reason I say that is I think I
25    can pick up speed.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7890

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 269891

```
 1              MS. TORRACO:  I didn't mean that.

 2              THE COURT:  No, I didn't take it that way.

 3              MS. TORRACO:  I didn't mean it in a

 4    disparaging way.

 5              THE COURT:  I didn't take it that way.  The

 6    only reason I said it is I think I can pick up speed.

 7    But I have been looking back at these two.  And I was

 8    going to say to Mr. Beck what I'm concerned about is,

 9    I'm not sure that these plea agreements are going to

10    give me all the co-conspirators that Mr. Castellano

11    said.

12              So what you may get is you may get findings

13    of fact at the beginning of the opinion that will get

14    you a conspiracy, although I'm concerned about Count

15    1, and I'm concerned about Counts 4 and 5.  But that

16    may not be a problem, if there is no statements.  And

17    I haven't run across any yet.  But it's not going to

18    pick up all these other conspirators.  So if you are

19    going to go to trial, and these people are going to

20    testify, or you're going to try to get their

21    statements in, there is a gap.  I may have to say:  I

22    don't have any evidence of that.  Do you see what I'm

23    saying?

24              MR. BECK:  I do.  And I think we can -- I

25    mean, to the extent that that evidence doesn't come
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7891

 1    in through the chart of James statements, through Mr.

 2    Lujan's plea agreement, I think it will come in at

 3    trial, through the testimony of other witnesses

 4    before any of those statements are offered.

 5         THE COURT:  Well, I think I'm going to have

 6    to put pressure on the Government to give me

 7    something in advance of that.  I think you're going

 8    to have to supplement this record in some way.

 9    Because it's not only a problem on 1, it's a problem

10    on 2, it's a problem on Freddie Sanchez as well, and

11    it's a problem on -- well, those are the big

12    problems.  On 1 it's fatal right now; 2 and 3, I just

13    don't know.  I'll have to study the plea agreements.

14    But I'll bet you they don't mention every name that

15    Mr. Castellano mentioned.

16         MR. BECK:  Right.  And I'll take a look at

17    that.  I think we've got -- I think that they're

18    identified in the other statements by Mr. Lujan.

19    That would be my expectation as to why those folks

20    are identified as co-conspirators, because they're

21    identified in Lujan's statements or in conversations

22    with other co-conspirators.

23         THE COURT:  But I don't recall -- and

24    correct me if I'm wrong -- that Ms. Stemo gave us any

25    evidence on the co-conspirators.  She gave us

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7892

1    information on the co-conspirator statements.  Do you

2    see the difference I'm making?

3              MR. BECK:  I do.  And I think the

4    co-conspirator statements tied up who was in the

5    conspiracy.  And so I'll have to go back and look at

6    who maybe was left out there.  But I'll go back and

7    take a look at that.

8              THE COURT:  All right.

9              MR. BECK:  I think that -- I mean, I

10   think -- I think the Court had a chance to see Mr.

11   Lujan yesterday.  And to the extent that the Court

12   may be entertaining the idea that Mr. Burkhead's

13   letter somehow disqualifies him as a witness, I think

14   if we take a close look at Exhibit R, we'll see --

15             THE COURT:  I guess I'm more thinking that

16   it doesn't disqualify him as a witness.  But the

17   letter may come in as an admission of a party

18   opponent, so it's going to be evidence against him.

19   But I think right at the moment what concerns me is

20   that's all I have.  And I guess I'm pausing about

21   whether I can find by a preponderance of the

22   evidence, just based on him, without any

23   corroborating evidence at all.

24             MR. BECK:  Well, I think -- I mean, I think

25   to the extent that this letter is -- it's in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7893

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 272894

1    reference to a different motion.  It's not in the

2    James evidence.

3            THE COURT:  It's not.  But I guess we're

4    all kind of -- we've got a bit of a stand-off here.

5    If I allow the defendants to sort of supplement the

6    record with Mr. Burkhead's letter, which I bet they

7    will want me to do, I'm probably going to let you

8    supplement the James record --

9            MR. BECK:  Understood.

10           THE COURT:  -- to fill in these problems.

11           MR. BECK:  Understood.  I will --

12           THE COURT:  Am I presuming too much on the

13   defendants?  Do y'all want me to consider the

14   Burkhead letter as part of your James record?

15           MR. BURKE:  Yes, Your Honor.  And if it

16   would have been produced in a timely fashion, it

17   would have been attached to the motion to dismiss as

18   well.

19           THE COURT:  So I guess I feel like I

20   probably need to let them, if they want to.  Since

21   we're supplementing the record, they'll have less

22   reason to object to your supplementation.

23           MR. BECK:  Anticipating that was the case,

24   that's why I think it would be wise to look closely

25   at the letter from Mr. Burkhead.  It says -- in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 second paragraph, it says, "That a federal

2 prosecution of these homicides would in large part

3 hinge on the testimony of former SNM member Leonard

4 Lujan.  Unfortunately, Mr. Lujan's credibility is in

5 serious doubt."  So that is -- I mean, that is not

6 Mr. Burkhead's -- he's just saying that it is in

7 serious doubt.  And if we look at the reasons,

8 they're not surprising.  As Special Agent Acee just

9 testified:  A long and troubled criminal background;

10 that's the SNM.  His history of malingering and

11 otherwise manipulating the penal system for personal

12 gain; that's the SNM.  His receipt of past

13 consideration and ongoing demands for future

14 consideration as quid pro quo for cooperation in this

15 case; that's every defendant who enters a plea

16 agreement with a 5K or is opened as a federal FBI

17 source.  And the FBI pays people for their time.

18 They paid Mr. Lujan $500 for his time.  His sustained

19 use of narcotic drugs; the Court's jury instruction

20 in the last trial listed almost every single person

21 who testified from the prison as an abuser of drugs.

22 And a history of mental health issues; several people

23 in the prisons have histories of mental health

24 issues.  You heard testimony that every week they

25 visit people in segregation in the Level 6 to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7895

```
 1    determine how their mental health is doing because
 2    they're in segregation.
 3            So none of these things are surprising.
 4    And what we heard from the jury last week --
 5            THE COURT:  Keep reading.
 6            MR. BECK:  "He is quite simply unusable as
 7    a witness, because all these concerns would be fodder
 8    for what would inevitably be a long and tortuous
 9    cross-examination that would leave him incredible in
10    the eyes of a rational fact finder."  And I think
11    that that -- I think that that is contradicted in
12    this case.  If it is a single witness with Mr.
13    Leonard Lujan, maybe that's the case.
14            THE COURT:  I think you've got to sort of
15    face the reality, that thing is going to be on that
16    screen.
17            MR. BECK:  And that does not concern me in
18    the least.  It doesn't concern me.
19            THE COURT:  Well, all I'm trying to tell
20    you is I'm pausing over whether I can find by a
21    preponderance of the evidence a conspiracy, and who
22    is in it, given the only evidence I have at the
23    present time is Leonard Lujan's evidence --
24    testimony.
25            MR. BECK:  Sure.  And I can supplement with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7896

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275897

```
 1   his -- and what I was planning to do -- Your Honor
 2   said we should take it at a different time.  I asked
 3   at the end of Mr. Lujan's testimony whether I could
 4   supplement with entering into evidence the two
 5   recorded conversation transcripts.  Your Honor said:
 6   Wait for a separate time.  So I'll enter those in,
 7   and the Court can see that they are coherent, they're
 8   consistent, and that he tells the story that paints
 9   the picture of why the conspiracy exists.
10        THE COURT:  Well, I may need something
11   other than Leonard Lujan, if the U.S. Attorney's
12   Office is going to write a letter and say a witness
13   is "simply unusable."  Before I make findings of fact
14   based upon that, I probably need somebody else's
15   testimony.
16        MR. BECK:  And that's fine.  But what I'm
17   saying is I think that the U.S. Attorney's Office
18   could have written this for any single witness in any
19   of these trials.  Because they all have that same
20   background.  And because -- that's why I would
21   gather, I think, this has borne that out.  This
22   motion to dismiss has borne that out.  I would gather
23   that's why these cases haven't gone to trial before.
24   And perhaps -- I think we may elicit this from
25   Special Agent Acee, but --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7897

```
 1                THE COURT:  I guess I think it's of a
 2    different magnitude, when a U.S. Attorney says he is
 3    "quite simply unusable as a witness."  That seems to
 4    me to have -- that's just of a different magnitude.
 5                MR. BECK:  And I don't think so.  And I
 6    think we can get that testimony out.
 7                THE COURT:  All right.  Well, we've
 8    identified the problems.
 9                All right.  Anything else before we finish,
10    probably, the day with Mr. Acee?
11                MR. CASTLE:  No, Your Honor.
12                THE COURT:  All right.  Mr. Acee, I'll
13    remind you you're still under oath.
14                Mr. Castle, if you want to finish the day
15    with Mr. Acee.
16                MR. CASTLE:  Yes, Your Honor.  I have no
17    more questions, on the motion to dismiss, of Agent
18    Acee.  But I did talk to the Government -- I have
19    four exhibits that are related to the motion to --
20    the statements issue, 1909.  I think I finally got
21    the right number.
22                THE COURT:  The motion, the James motion?
23                MR. CASTLE:  Yeah, James-related motion.
24    So I want him to identify the four exhibits, because
25    a lot of the names are blacked out, so when the Court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7898

```
 1    reads it, you'll know what the exhibits are.

 2            THE COURT:  All right.

 3    BY MR. CASTLE:

 4        Q.   Agent Acee, I told you I had no more

 5    questions.  I was wrong.  If you could look at

 6    Exhibit Z.  What is that?

 7        A.   It's a 302 that I wrote.

 8        Q.   Do you know who it relates to?

 9        A.   Yes, sir, Julian Romero.

10        Q.   It's an interview of Julian Romero?

11        A.   It is.

12        Q.   Can you look at Exhibit Y?

13        A.   A 302 that I wrote.  Do you want me to

14    figure out who I'm talking to?

15            MR. BECK:  What's the Bates number on that,

16    Special Agent Acee?

17            THE WITNESS:  It starts at 28271.

18        A.   "He pulled the paper from his sock," this

19    is Timothy Martinez.

20        Q.   Can you read the Bates page?

21        A.   42522.  Too many redactions here.

22            MR. BECK:  Is that Robert Lovato, Special

23    Agent Acee?

24            THE WITNESS:  Yes.

25    BY MR. CASTLE:
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7899

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 278

7900

```
 1        Q.   And Exhibit W, is that Samuel Gonzalez?

 2        A.   Yes.

 3        Q.   And I think it's a 302 -- or, I'm sorry, a

 4   report of an interview with Samuel Gonzalez?

 5        A.   Yes, Bates 24278.

 6             MR. CASTLE:  Your Honor, I believe the

 7   parties agree that Exhibits W, X, Y, and Z would be

 8   admitted by stipulation.

 9             THE COURT:  Any objection, Mr. Beck?

10             MR. BECK:  No, Your Honor.

11             THE COURT:  Any other defendant have any

12   objection?  If not, Defendant's Exhibits W, X, Y, and

13   Z will be admitted into evidence.

14             MR. CASTLE:  No further questions.

15             THE COURT:  Anything else, Mr. Castle?

16             MR. CASTLE:  No, Your Honor.

17             THE COURT:  All right.  Mr. Burke, do you

18   have direct examination of Mr. Acee?

19             MR. BURKE:  I do.

20             THE COURT:  Mr. Burke.

21             MR. BURKE:  Thank you, Your Honor.

22                    EXAMINATION

23   BY MR. BURKE:

24        Q.   I'd like you to take a look at Exhibit V.

25   I want to go through this with you because you
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7900

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279 of 901

1    remember that some time ago this was an important

2    issue, and I just want to be clear on what happened.

3    We were asking for the old FBI files.  And it looks

4    like -- and I'm focused on the last paragraph.  It

5    looks like you, Agent Stemo, Agent Sainato, Agent

6    Neale, Task Force Officers Myers and Cupit, and an

7    FBI staff operations specialist, J. Baca, accompanied

8    the files to the U.S. Attorney's Office and conducted

9    a complete review; that's correct, right?

10        A.   Yes, sir.

11        Q.   So you took them all down there, and

12   basically your whole team was there?

13        A.   Yes, sir.

14        Q.   And now, I'm focused primarily on

15   281D-AQ-62017.  And that was Lance Roundy's primary

16   file?

17        A.   It was.

18        Q.   And you looked through all of them, and

19   then you state, "All of the reports pertaining to the

20   SNM Gang were turned over to Assistant U.S. Attorneys

21   Matthew Beck and Maria Armijo for review"; correct?

22        A.   Yes.

23        Q.   And there is no doubt in your mind, is

24   there, that the letter from Jack Burkhead was perhaps

25   the last document in the file, wasn't it?

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7901

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 280

```
 1          A.   Toward the end.  I think there may have
 2     been some plea or conviction stuff.  But --
 3          Q.   So the letter of declination was right
 4     there for anybody to see; correct?
 5          A.   Yes, sir.
 6          Q.   Makes no sense, does it Agent, that it
 7     would be produced to us yesterday?
 8          A.   I'm not aware of a reason.
 9          Q.   Thank you.
10          Now, when did you open your investigation,
11     which I think is 6395 or something?  When did you
12     open that one?
13          A.   Late March, early April 2015.
14          Q.   Do you think you opened your investigation
15     before this was declined and closed?
16          A.   Yes.
17          Q.   And I'm guessing, but you tell us, you
18     hadn't even seen the letter of declination, had you?
19          A.   I had not.
20          Q.   Have you seen language like "he's
21     incredible" in a letter from a U.S. Attorney before?
22          A.   No, I had not seen.
23          Q.   Yeah.  And even with respect to Timothy
24     "Red" Martinez, or "Playboy" Munoz, did you see U.S.
25     Attorneys write a letter saying that this witness is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7902

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 281903

 1   incredible, so the jury could be looking at it when

 2   they were testifying?

 3        A.   No.

 4             MR. BURKE:  All right.  That's all I have.

 5             THE COURT:  Thank you, Mr. Burke.

 6             Any other defendants have direct

 7   examination of Mr. Acee?

 8             All right.  Mr. Beck, if you have

 9   cross-examination of Mr. Acee.

10                       CROSS-EXAMINATION

11   BY MR. BECK:

12        Q.   Special Agent Acee, I won't hold the best

13   for last.  We should probably talk about the letter

14   from Mr. Burkhead first.  Why did you -- well, let me

15   get to this:  When you were opening this

16   investigation, March of 2015, were you working at FBI

17   in Las Cruces or in Albuquerque?

18        A.   Albuquerque.

19        Q.   Are there AUSAs in Albuquerque?

20        A.   Yes.

21        Q.   Are the majority of AUSAs in New Mexico in

22   Albuquerque?

23        A.   Yes.

24        Q.   Why didn't you open this case in

25   Albuquerque?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7903

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 282 7904

```
 1          A.   No one there wanted it.

 2          Q.   In your experience, are AUSAs reticent to

 3   take a case that rests primarily on cooperator

 4   testimony?

 5          A.   No.  Almost impossible.

 6          Q.   So AUSAs don't want to take cases that rest

 7   primarily on cooperator testimony, do they?

 8          A.   Nor do they want to take cases that have 80

 9   or 90 defendants in them.

10          Q.   So why did you come to Ms. Armijo with this

11   case?

12          A.   She's crazy enough to do it.  I'd worked

13   with her in the past, and we'd taken on similar type

14   challenging projects.

15          Q.   In preparing for your testimony today, did

16   you go back and review SNM FBI sources?

17          A.   Yes.

18          Q.   And how many FBI sources did you find, who

19   had been opened previously by the FBI, who would

20   testify in these cases?

21          A.   I'll refer to my notes, if that's all

22   right.

23          Q.   Yes, please.

24          A.   Four.

25          Q.   And who are those?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7904

```
 1         A.    Excuse me, that's not true.  Two.  I made
 2    notes on four in reference to a request by defense,
 3    but I only found two.
 4         Q.    So you only found two witnesses that had
 5    been previously opened as FBI sources who would
 6    testify in these trials; is that right?
 7         A.    Yes, sir.
 8         Q.    And who were those?
 9         A.    Leonard Lujan and Frederico Munoz.
10         Q.    When was Leonard Lujan first opened as an
11    FBI source, and by whom?
12         A.    In 2009, by Sonya Chavez.
13         Q.    And when was he closed?
14         A.    2011.
15         Q.    Was he opened again?
16         A.    He was opened again in 2011, six months
17    later by Agent Roundy.
18         Q.    And was he closed by Agent Roundy?
19         A.    He was closed one year later in September
20    of 2012.
21         Q.    And then has he been reopened in this case?
22         A.    I told Agent Stemo to open him on January
23    5, 2017.
24         Q.    And does he remain an open FBI source?
25         A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7905

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 284 7906

1    Q.   I think you said the next one was Frederico

2    Munoz?

3    A.   Yes.

4    Q.   When was he first opened by the FBI, and by

5    whom?

6    A.   He was opened in February of 2009 by Agent

7    Monarko.  You'll recall that was Agent Chavez' new

8    agent, so really opened by Agent Chavez in 2009.

9    Q.   And was he subsequently closed?

10    A.   Yes, he was closed December of 2010.

11    Q.   And then was he reopened for this case?

12    A.   I opened him January of 2016, six years

13    later.

14    Q.   And what is his current status as an FBI

15    source?

16    A.   He's currently open.

17    THE COURT:  Mr. Beck, the defense lawyers

18    have sent me a note saying they need to talk to me

19    about CJA matters.  And so I think I better bring

20    this to an end.

21    MR. BECK:  Sure.  May I have one

22    question -- I may not be done.

23    THE COURT:  I know you're not done.  I'm

24    not trying to tell you when to be done, but I do

25    think to squeeze it in before we leave, I better --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7906

1          MR. BECK:  Your Honor, I will not hesitate

2    to leave you all to do your thing and go home early

3    to my family.

4          THE COURT:  Go ahead.

5      Q.   Special Agent Acee, in all of your work in

6    this case, and everything you've done, going back

7    historically, into the future, have you ever heard

8    anyone say, or heard anything related to:  That we

9    should delay prosecution of the 2001 murders or

10   even -- or any murders for that matter -- delay

11   prosecution of them for tactical gain?

12     A.   No.

13         THE COURT:  All right.  Thank you, Mr.

14   Beck.

15         Sorry to interrupt that.

16         MR. BECK:  Please don't apologize.

17         THE COURT:  One thing, I was going to get

18   back to you -- do you remember that day -- it may

19   have been Monday -- about the jury questionnaires.

20   The defendants got theirs, you didn't.

21         MR. BECK:  That has been resolved.

22         THE COURT:  I know it has, and it's

23   inexplicable what happened.  I do understand it's

24   been resolved.  But I wanted to tell you, as far as I

25   can figure out, it wasn't intentional.  I don't have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    an explanation for that.

 2              MR. BECK:  Sure.

 3              Your Honor, before I leave, I know I

 4    said -- you said you'd cut me off there, and that's

 5    fine -- I was just going to seek to admit related to

 6    the 1909 motion -- well, and maybe the James

 7    motion -- Mr. Lujan's transcripts from August 8, 2007

 8    and September 12, 2007, as Government's Exhibit 1.

 9    And then I think we're on 10.

10              THE COURT:  Well, if you're doing it for

11    the James hearing, it's going to be different

12    numbers.  Well, it may not be, because Mr. Castellano

13    started --

14              MR. BECK:  Oh, I can do it for the James

15    hearing, and then we can cross-reference.

16              THE COURT:  What are you primarily doing it

17    for?  This --

18              MR. BECK:  I guess now I'm primarily doing

19    it for the James hearing.  I guess that makes sense.

20    So I think for the James hearing we're probably on

21    12, if memory serves; is that correct?

22              THE CLERK:  12 is right here --

23              THE COURT:  What Mr. Castellano did was

24    Government's Exhibit 11 through 18 were the plea

25    agreements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7908

```
 1              MR. BECK:  All right, 11 through 18.  So
 2    why don't I do -- should I do 19 and 20?  Does that
 3    sound good?
 4              THE COURT:  All right.
 5              MR. BECK:  So as 19 I will mark the August
 6    8, 2007.  And for 20, I will do the September 12,
 7    2007.
 8              THE COURT:  Any objections to these?
 9              MR. BURKE:  No objection, Your Honor.
10              THE COURT:  All right.  Mr. Castle, do you
11    have any objections?
12              MR. CASTLE:  No objection.
13              THE COURT:  Anybody else?
14              All right.  So Government's Exhibits 19 and
15    20 will be admitted for purposes of only the James
16    hearing?
17              MR. BECK:  The James hearing, and then
18    they'll go to -- yeah, it's fine.  They will be for
19    1909.  But really they're just going to the James
20    hearing.  And the Court will have some familiarity
21    with them when it looks at 1909.  So just for the
22    James hearing is fine.
23              MR. BURKE:  Your Honor, I think Defendant's
24    Exhibit V was admitted.  But if it wasn't, I'll move
25    the admission of V for the motion.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7909

```
1              MS. GILBERT:  It was.

2              THE COURT:  Are we pretty sure V is in?

3              MR. BECK:  Yes.

4              THE COURT:  All right.  So we'll conclude

5     the hearing.  Let me thank everybody for their hard

6     work.  If I don't see you again, be here at 8:30 on

7     Monday, April 9.  And I just can't promise anything

8     going out of here.  But be in communication with Ms.

9     Bevel or Ms. Wild, and we'll see where we are.  But I

10    appreciate your hard work.  Be safe.

11             I'll let the Government clear out of the

12    room.  We'll close this hearing down, and we'll then

13    have a CJA hearing before we leave.

14             MR. BECK:  I think, in the interests of

15    time, we might just leave a little stuff here and

16    come and get it next week.

17             THE COURT:  All right.  The CJA hearing

18    will be on the record.

19             (An ex parte CJA hearing was held,

20    transcript not included.)

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    UNITED STATES OF AMERICA

2    STATE OF NEW MEXICO

3

4                    C-E-R-T-I-F-I-C-A-T-E

5         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6    Official Court Reporter for the State of New Mexico,

7    do hereby certify that the foregoing pages constitute

8    a true transcript of proceedings had before the said

9    Court, held in the District of New Mexico, in the

10   matter therein stated.

11        In testimony whereof, I have hereunto set my

12   hand on this 23rd day of March, 2018.

13

14        _____

15        Jennifer Bean, FAPR, RMR-RDR-CCR
          Certified Realtime Reporter
16        United States Court Reporter
          NM Certified Court Reporter #94
17        333 Lomas, Northwest
          Albuquerque, New Mexico 87102
18        Phone:        (505) 348-2283
          Fax: (505) 843-9492
19        License expires:  12/31/18

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7911

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7912

1               IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                   Plaintiff,

5        vs.              NO:  CR-15-4268 JB

6    ANGEL DELEON, et al.,

7                   Defendants.

8

9         Transcript of excerpt of testimony of

10                 MARIO MONTOYA

11               February 20, 2018

12

13

14

15

16

17

18

19

20

21

22

23

24

25




SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492
                                                 e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1                    I N D E X

 2  EXAMINATION OF MARIO MONTOYA

 3  By Mr. Castellano                              3

 4  By Mr. Lowry                                 161

 5  By Mr. Castellano                            230

 6  By Mr. Lowry                                 236

 7  REPORTER'S CERTIFICATE                       240

 8                 EXHIBITS ADMITTED

 9  Defendants' AJ-1 Admitted                    220

10  Government 334 Admitted                       99

11  Government 356 Admitted                       56

12  Government 380 Admitted                       79

13  Government 394 Admitted                      125

14  Government 396 Admitted                      132

15  Government 684, 685, and 759 Admitted        147

16

17

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7914

```
 1              MR. CASTELLANO:  Thank you, Your Honor.
 2   With that, the United States calls Mario Montoya.
 3              THE COURT:  All right.  Mr. Montoya, if
 4   you'll come up and stand next to the witness box
 5   right here in front of you, and before you're
 6   seated, if you'll raise your right hand to the best
 7   of your ability there, Ms. Standridge will swear you
 8   in.
 9                    MARIO MONTOYA,
10       after having been first duly sworn under oath,
11       was questioned, and testified as follows:
12              THE CLERK:  Please be seated.  State and
13   spell your name for the record.
14              THE WITNESS:  Mario Montoya.  M-A-R-I-O.
15   M-O-N-T-O-Y-A.
16              THE COURT:  Mr. Montoya.  Mr. Castellano.
17              MR. CASTELLANO:  Thank you, Your Honor.
18                   DIRECT EXAMINATION
19   BY MR. CASTELLANO:
20       Q.   Good morning, Mr. Montoya.  Can you tell
21   the members of the jury whether you've ever been a
22   member of the SNM Gang?
23       A.   Yes, sir.  Yes, I have been.
24       Q.   When did you become a member of the gang?
25       A.   Early '90s.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7914

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7915

```
 1        Q.   Prior to that time, had you been a member
 2   of any other gang?
 3        A.   I was a West Side Loco, Albuquerque.
 4        Q.   That was an Albuquerque gang?
 5        A.   Yes.
 6        Q.   And where were they largely located in the
 7   City of Albuquerque?
 8        A.   On the West Side.
 9        Q.   When did you join that gang, the West Side
10   Locos?
11        A.   I grew up on the West Side, in the South
12   Valley, so I never really joined.  I was just -- I
13   grew up there.
14        Q.   Did you kind of run with those guys, then?
15        A.   Yeah.
16        Q.   When you joined the SNM Gang, were you in
17   prison or outside of prison?
18        A.   I was in prison.
19        Q.   What was it that got you into prison?
20        A.   I had a good friend, James Yoakum, that
21   was in the boys' school with me also.  He was also
22   from the same gang, but from a different city, so we
23   were real close.  We ended up in prison together,
24   both young; we really didn't know anything.  And he
25   had got locked up for fighting.  He went to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7916

```
 1   North facility, the lockup unit.
 2        Q.    When you say the North facility, is that
 3   the North facility in Santa Fe?
 4        A.    Yeah.
 5        Q.    And what happened to him?
 6        A.    He was there for disciplinary, for
 7   fighting, or -- I don't know if they had SEG'd him
 8   or what.  But he was there.  The guy that told on
 9   him, I beat him up, too, a friend of mine.  James
10   was a friend of mine.  And I thought that was the
11   thing to do.  I ended up at the North also.  And I
12   was there with him, Leroy Torrez, a couple other
13   guys that I knew that were already SNM.  James
14   wasn't when he left the Main, but I guess when he
15   went to the North, it turned out that his dad was
16   one of the leaders of the SNM.  I didn't really know
17   too much about it, to tell you the truth.
18        Q.    And then what was your relationship with
19   them in terms of how you got brought into the gang?
20        A.    James and Leroy Torrez, Jr., asked me if I
21   wanted to be in that gang.  And at first I said no.
22   But then the next day I thought about it.  I said,
23   "Yeah, yeah," you know what I mean.  I thought I was
24   going to be somebody.  I said, "Yeah."
25              So I started calling them carnal, they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7916

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7917

```
 1   started calling me carnal.  And I got out, went to

 2   the South, came to SNM from then.

 3        Q.   Now, when you say "the South," is that the

 4   South facility in Santa Fe?

 5        A.   Yes, sir.

 6        Q.   And why were you in prison at that time in

 7   the first place?

 8        A.   Mostly kind of drugs, a residential

 9   burglary.  I believe auto burglary, burglary tools.

10        Q.   So what happens when you get to the South

11   facility?

12        A.   I'm there for a while and people start

13   questioning who brought me in, and I tell them.  And

14   they're, like, "No, them guys can't bring you in.

15   You need five votes."

16             So at this point, I don't know what's

17   going to happen.  Really, I'm freaking out a little

18   bit.  I had gotten close to a few people:  Bobby

19   Ortega, Julian Romero, Billy Garcia; I think Ruben

20   Hinojos, and...

21        Q.   What was their response at the South to

22   this?

23        A.   Some of them didn't like that.  But I was

24   close to Julian, and Julian told me, "From now on,

25   when people ask you who brought you in, say it was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7917

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7918

```
 1  me, Bobby, and Billy."
 2          And I don't really remember the other
 3  people.  It was a long time ago.  I remember Julian
 4  the most, and Bobby Ortega.  Those were the ones I
 5  was really close to.
 6      Q.   If you recall, who were the leaders of the
 7  SNM at that point in time?
 8      A.   Angel Munoz, Pup; Ramon Clark, Henry
 9  Clark.  Felipe Cordova, but he was out of state.  I
10  never met him.
11      Q.   Felipe Cordova?
12      A.   Yeah.  I believe he was out of state or
13  out of prison.  I hadn't heard his name until way
14  later, but...
15      Q.   About what time frame is this when you
16  come in?
17      A.   Early '90s.  Probably '94, '93.
18      Q.   When you first come into the SNM, what are
19  you doing for the gang?
20      A.   Mostly little rackets that Julian would
21  come up with:  Go make sure people were kicking
22  in -- if anybody is getting dope in the visits or
23  whatever, we would -- Julian and them would demand a
24  third.  Sometimes they would do it in a sneaky way;
25  they would send us to go take their dope and they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   would come crying to Julian about it.  Julian would
 2   act like he reprimanded us and told us not to do
 3   that anymore, and he'd tell them, "Just make sure I
 4   get it, and they'll stay away from you.  I'll keep
 5   the youngsters off."
 6       Q.   In other words, "If you give me one-third,
 7   I'll call off the dogs"?
 8       A.   Yes.
 9       Q.   Who were you taking the drugs from?  SNM
10   members, non-SNM members, or both?
11       A.   Non-SNM members.  SNM members, at that
12   time you couldn't do that to an SNM member.  That
13   would be disrespectful, and it could come down on
14   you, whether you were an SNM member or not.
15       Q.   And would this be the equivalent of taxing
16   other people in the prison for drugs?
17       A.   That's what we would call it.  That's the
18   word for it, taxing.  That would be the joke, that
19   we were like a small government.
20       Q.   Who would collect the drugs with you?
21       A.   It would be different people, mostly, but
22   whoever I was close to, really.  If I wanted to get
23   high, which I did, and I was a drug addict, I would
24   make sure I paid attention to who was getting the
25   dope and I would make sure I would be aggressive.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7919

1   Whoever I hung out with is usually who they would

2   pair me with; like you and Ruben, since you and

3   Ruben kick it together, you guys go post up by the

4   visit.  And when they come out, take them into the

5   library, and Julian and them would be in there

6   waiting.  And me and Ruben would just make sure they

7   got in there, and make sure we looked mean and mad,

8   and Julian would play the nice guy.

9       Q.   Why would you hang out by the visits in

10  order to figure out who was getting drugs?

11      A.   To make sure we caught them when they came

12  out of the visit before they got to the unit.  And

13  Julian would take them to the bathroom, make them

14  pull it out right then and there.

15      Q.   And so when you're watching the visits,

16  are you then watching to see what visitors are

17  bringing in drugs for the inmates?

18      A.   We pretty much already knew who was going

19  to get dope.  It's a small environment, so it's

20  obvious.  Somebody might get past once or twice.

21  But once it's figured out they're getting dope, then

22  we know who it is, and we're just waiting for them

23  to come out.

24      Q.   And as a younger member of the SNM, what

25  was your relationship with the corrections officers?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Not -- not good.  At that point I get
2  along with some of them, but at that point, inmates
3  ran the prisons totally.  The corrections officers
4  just made sure that we didn't leave, or we didn't
5  kill one of them, or hit one of them, or stab one of
6  them, or fight with one of them.  They didn't really
7  care what happened to the population or what we were
8  doing.
9      Q.   When you joined the gang, were you given
10  any kind of rules that you should follow?
11      A.   Yeah.
12      Q.   What were they?
13      A.   No snitching; don't talk to the cops, like
14  be buddy with them; no child molesters allowed;
15  don't mess with each other's wives or girlfriends;
16  show each other respect; never take anybody's side
17  against a brother; follow orders.  If you're asked
18  to do something, you do it.  And that's all there is
19  to it.
20      Q.   What was the consequence for not following
21  an order?
22      A.   Then you would probably be hit.  At that
23  point, Angel was in charge, and he didn't believe in
24  violations or putting your hands on another brother.
25  He'd call that animosity amongst each other and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  would drive wedges.  So that was either life or

2  death.  That was the only thing.  Or you'd be told

3  not to do that.

4      Q.  When you say "a violation," what are you

5  referring to?

6      A.  Later on, some of the other guys and these

7  boards, all this other stuff that got started -- if

8  you did something that this board didn't like, or if

9  you were the one that got to -- made look bad in a

10 situation -- because sometimes it wasn't even the

11 person's fault -- they would send four or five other

12 brothers to go beat him down.  And they weren't

13 allowed to fight back or nothing.  So a lot of us

14 didn't agree with that.  I didn't agree with that.

15     Q.  So that could be discipline short of

16 death?

17     A.  Yeah, or they would put you on a mission.

18 They would tell you, "All right, so now, you did

19 this.  Whatever you did wrong, whatever it was,

20 you -- now, in order for you to make up for that,

21 you're going to have to do this, and you're going to

22 have to go on this mission, or whatever."

23         It would be a means of control.  Because a

24 lot of guys at that point that were in, they weren't

25 gangsters; they were just trying to get high or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7922

```
 1   trying to look -- I mean, look the part, so they
 2   were terrified of doing stuff like that.  They
 3   didn't want to do nothing.  So they would just try
 4   to follow the rules or try to make sure they made
 5   whoever was in charge at that point happy.
 6        Q.   When you say "a mission," if you would
 7   task somebody to go do something, do they often use
 8   the term "mission"?
 9        A.   That was the term, yes.
10        Q.   What about a requirement for making your
11   bones?
12        A.   When I got in, I was told that it had to
13   be a murder; that you had to kill somebody to get
14   in.  But I know a lot of people didn't.  And I know
15   sometimes just beating somebody up was considered
16   enough, depending on who you were or who is
17   sponsoring you, or who wanted you in.  Sometimes
18   some people didn't do nothing.
19        Q.   What did you have to do to earn your
20   bones?
21        A.   I was one of the guys that brought in a
22   lot of dope, so I got away with it pretty lightly.
23   I got in a few fights.  I was taxing people for
24   Julian, and stuff like that.  And at that point I
25   was bringing in dope, so nobody wanted me to get
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   locked up.  I didn't really have to do too much.  I
 2   was expected to.  If a brother is in a fight right
 3   there by me, I had to jump in for him and stuff.
 4   But mostly, it was just fighting and taking things
 5   from people for the gang and stuff like that.
 6        Q.   In terms of your mission with the
 7   corrections officers, were you supposed to admit
 8   your SNM membership to them?
 9        A.   No, no.  The rule was:  You never admit it
10   to a cop, and you never deny it to a pinto, an
11   inmate.  You never admit it to another convict -- I
12   mean, never deny to it another convict.
13        Q.   You used the term "pinto."  What does that
14   mean?
15        A.   Convict.
16        Q.   And where did the gang -- what importance
17   would the gang have to people in terms of the gang
18   versus family?
19        A.   Excuse me?
20        Q.   What importance did the gang have when it
21   came to the gang versus someone's own family?
22        A.   I didn't catch the second word.
23        Q.   Importance.
24        A.   Oh, importance.  The gang came before your
25   family.  It came before everything.  And a lot of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7924

```
 1    us, when we went to prison, we didn't have nothing,
 2    you know what I mean?  We were drug addicts when we
 3    got there, and a lot of us didn't have nothing to
 4    look forward to on the streets.  We were gang
 5    members on the streets.  And when we got there, we
 6    continued to be gang members.  And so it didn't --
 7         Q.   You talked about bringing in drugs to the
 8    facility.  Did you -- in 1996, were you sentenced
 9    for bringing contraband into a place of
10    imprisonment?
11         A.   Yes, I was.
12         Q.   What happened there, and why did you do
13    that?
14         A.   I was bringing in a lot of drugs, like I
15    said.  I was pretty good at coming up with ways or
16    talking people into getting dope.  I like to get
17    high, so I'd bring it in mostly for my own use, but
18    also for the gang.  I couldn't get dope and not help
19    people out in the gang, because it's not -- it's a
20    dog-eat-dog world in there.  If you're not part of
21    the pack, then you're going to get eaten.
22         Q.   So was it part of your responsibility as a
23    gang member, then, to help bring drugs into the
24    prison?
25         A.   If I had a way to bring dope in, or I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7926

 1   could develop a way to bring dope in, yeah, it was

 2   pretty much my responsibility to do that.  And also,

 3   I wanted to get high.

 4        Q.   When you first got to prison, about how

 5   long did you stay there?

 6        A.   I went for an evaluation in '91, then I

 7   believe in '93 -- I'm not really sure -- I believe

 8   in '93 I went back on two three-year sentences,

 9   turned it into a little bit longer.

10        Q.   At some point did you get out of prison in

11   approximately 2001?

12        A.   Yes.

13        Q.   And what did your brother do for you when

14   you got out of prison?

15        A.   What did my brothers do for me when I got

16   out?

17        Q.   Yeah.  Did he try to give you a job?

18        A.   Oh, my real brother, my blood brother.

19   Yes, my brother -- when I got out, one of the best

20   things anybody ever did for me, actually, he

21   opened -- he had a small -- I didn't know he did it.

22   He asked me if I wanted a job, and he had a small

23   battery shop and tire shop.  And I worked there for

24   about two or three weeks.  Then Monday, I showed up

25   to work, and he told me I had to go back to my job,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  "This is your job."  But at that point I was still

2  using drugs.  I was still into the gang and I pretty

3  much screwed it up.

4       Q.   All right.  So you said you screwed it up.

5  Someone had tried to help you out, and what was the

6  result of how long you stayed there and how well you

7  did at that business?

8       A.   I started just hiring people that I knew,

9  stuff like that, to do little odd jobs, and not

10 working, really.  And I got another job at a glass

11 company, so it was more structured.  I mean, it had

12 benefits; I didn't have to manage by my own money,

13 because I really didn't know how.  So I went to work

14 for Southwest Glass at that point.  And business

15 didn't -- it went good at first, but I just wasn't

16 prepared for that.

17      Q.   So about how long did you stay out of

18 prison following your release?

19      A.   Maybe eight months.

20      Q.   And what happened then?

21      A.   My first violation was for a dirty urine,

22 I think, and I went back to prison.  At that time,

23 it was a zero tolerance policy, especially towards

24 gang members.  Dirty urine, or whatever, first time,

25 you're gone.  I think I went back for dirty urine.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      Q.   For dirty urine, that means you tested

 2   positive on a urinalysis test?

 3      A.   Yes.

 4      Q.   Did you also pick up a new charge for

 5   possession of heroin?

 6      A.   I don't think it was that time.  I think

 7   it was after I got out.

 8      Q.   Did you eventually pick up a charge for

 9   possession of heroin?

10      A.   Yes, I did.

11      Q.   At some point, did you start dealing drugs

12   even on the streets?

13      A.   Yeah, but not till way later.  And all

14   that time, I was just a user.  You know, I was

15   struggling to stay clean.  I didn't want to go back

16   to prison.  I was married to my ex-wife, Kathy.  And

17   she would get really insecure.  I didn't figure this

18   out till way later.  I thought it was the best thing

19   in the world.  She would bring me dope when I was

20   locked up.  She didn't care if I stayed home high

21   all the time.  She was really insecure.  She wanted

22   me to be in prison, for me to need her.  She would

23   buy me dope and then call my P.O. and say I was

24   dirty.

25      Q.   So at least in prison, she knew where you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   18   Page: 7929

 1  were; right?

 2      A.   Yeah.  Yeah.  So the next time I got out,

 3  I started staying away from her.  And I met someone

 4  else.  I met my current wife.  And I was in the

 5  process of leaving her; she started calling the cops

 6  and saying that I beat her up.  My new girlfriend

 7  would bond me out, and they would tell me, "Stay

 8  away from that girl."  They didn't believe me.

 9          Eventually she admitted to it, but yeah,

10  she got me and my new wife arrested.  Supposedly, we

11  had kidnapped her and beat her up.  And that's when

12  I picked up the possession charge.  I was still

13  getting high.  And she would buy me dope, lure me

14  back.

15          So she bought me some dope, rented a hotel

16  room, and I got high and left the syringe and stuff

17  on their counter.  She went to the bathroom to take

18  a shower.  The alarm in my truck went off.  So I got

19  arrested.  There was some plastic with residue

20  there.  I got charged with that.  That was a

21  possession case.

22          But it wasn't the first time I was out.

23  It was way later.

24      Q.   Taking you to the 2011-2012 timeframe, did

25  you begin dealing drugs then?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7929

```
 1        A.   Yeah.  At that point I lost a lot of the
 2   desire for drugs; not completely, but I was really,
 3   really trying to turn my life around.  My mentality
 4   was still such that maybe I could survive by selling
 5   dope and not using dope, and it wasn't really
 6   committing a crime like I would have done before,
 7   like residential burglaries, you know what I mean,
 8   really stupid things.
 9        Q.   So was that your mindset at the time, If
10   I'm dealing drugs, I'm not really hurting anybody,
11   so this is something else I can do to make money?
12        A.   Yeah, and I was just trying to just stay
13   home and take care of my family.  My daughter was
14   born, and that was pretty much the most important
15   thing in my life.  I realized that drug-dealing, you
16   know what I mean, ain't the way to go, and I
17   understand that.  But at the time, I didn't really
18   think like that.  I seen these other guys that were
19   out there all their life selling dope and never
20   going to prison.  And to me, that was going straight
21   at that time.
22        Q.   With your drug habit before that time,
23   could you really even be a successful drug dealer,
24   because you were using dope all the time?
25        A.   Now, I always joke around, and it's the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7930

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7931

```
 1   truth; we chase the customers away.  Get out of
 2   here, I mean.
 3        Q.   And before that time, what types of
 4   controlled substances had you used or have you used?
 5        A.   I started doing cocaine and heroin when I
 6   was about 12 or 13 years old, shooting it up.  And
 7   from then on I went to crack.  I didn't really like
 8   heroin until I got to prison.  I started using
 9   heroin mostly in prison because there was no other
10   drugs coming in but heroin.  I acquired a taste for
11   the heroin in prison and that became my drug of
12   choice after that.
13        Q.   What about methamphetamine?
14        A.   I've done it.  It's not my drug.
15        Q.   How about Suboxone?
16        A.   I used Suboxone to get off heroin the
17   first time.  It actually helped me out a lot.  If
18   you use it correctly, it doesn't get you high.  It
19   blocks the opiate and gives you a chance to be
20   straight and not using, and you can't use.  And I
21   tried.  I did Suboxone.  I would use the Suboxone
22   under my tongue -- it's an opiate blocker -- then go
23   buy heroin later that day.  And heroin doesn't
24   affect you.  It has a opiate blocker in it.  So I
25   would waste two or three hundred dollars trying to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7932

```
 1   get high.  And eventually -- it's actually what
 2   helped me start selling dope, because I knew I could
 3   have it and not use it.
 4        Q.   What about LSD?  Did you try LSD, also
 5   known as acid, before?
 6        A.   Yes.
 7        Q.   What about mushrooms?
 8        A.   Yes.
 9        Q.   And for the members of the jury who don't
10   know, what's the difference between cocaine and
11   crack cocaine?
12        A.   Cocaine is powder.  People snort it or
13   shoot it.  Crack is cooked with baking soda.  I've
14   heard you can cook it with ammonia.  I'm not sure.
15   People also shoot it up.  They can break it back
16   down with lemon juice, which is pure form, I think,
17   maybe.  Mostly smoked.
18        Q.   And at some point, now that you're dealing
19   drugs, do you start getting drugs from someone named
20   Chris Garcia?
21        A.    I always got drugs from Chris Garcia since
22   2001, since I got out.  But I never sold drugs from
23   him.  I would ride around with him, help him
24   deliver, stuff like that, for my dope, for what I
25   was getting high off of.  I would be a runner,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7932

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    22 Page: 7933

```
 1   pistolero, that kind of thing.
 2        Q.   What's a pistolero?
 3        A.   A guy that sits there with the gun, makes
 4   sure he doesn't get robbed or -- the guy with the
 5   gun.
 6        Q.   About how many times do you think you
 7   bought from Chris Garcia over the years?
 8        A.   Hundreds, thousands of times, probably.
 9   And he mostly gave it to me.
10        Q.   What types of drugs would you buy from
11   him?
12        A.   Before 2012, around that time, all he sold
13   was crack.  He used heroin, sold crack.  So that's
14   what I would get from him, crack or powder cocaine.
15        Q.   Was Chris Garcia an SNM Gang member?
16        A.   Yes.
17        Q.   And when you get out of prison, around
18   that timeframe, what's your relationship with the
19   SNM Gang?
20        A.   It was pretty good all the way until I
21   left Kathy.  I don't know how it happened, but
22   somehow she ended up with somebody that used to be
23   one of my best friends, Arturo Garcia.  And there's
24   a rule against being with other members' wives and
25   girlfriends.  I sent him messages I don't know how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020  23 Page: 7934

```
 1   many times that, "I'm not tripping; go ahead.  You
 2   kind of did me a favor," and...
 3       Q.   When you say "Kathy," is Kathy the one who
 4   used to set you up with drugs, then get you
 5   arrested?
 6       A.   Yeah, so she went from me to another
 7   pinto, another inmate.
 8       Q.   What was his name?
 9       A.   Arturo Garcia.
10       Q.   Was he an SNM Gang member?
11       A.   Yeah.
12       Q.   Even though there is a rule, now, as far
13   as you knew, was she messing around with him when
14   she was with you, or did she get with him after your
15   relationship ended?
16       A.   I really don't think she was -- she's not
17   the type to be messing around on her man.  She
18   doesn't -- she just is really insecure.  Her whole
19   world is to keep him focused on her.
20       Q.   At this point, did you really care if she
21   was with Arturo Garcia?
22       A.   At this point, I thought it was a good
23   thing, actually.  I thought, that's my brother; he's
24   getting something out of it.  She's not calling the
25   cops on me; she's not trying to fight with me.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7934

```
 1   She's taking him dope and helping out the brothers,

 2   is what I thought.  You know, I had been through a

 3   lot with her and I loved her.  At one point I loved

 4   her to death.  But after I figured out what had been

 5   going on -- and she even tried to make me fight with

 6   my real brother, Richard, the one who started the

 7   shop.  She would try to keep him away.  She told me,

 8   "He called me a bitch."

 9           I said, "Richard didn't call you a bitch."

10           And she said, "Well, who are you going to

11   believe?  Me or him?  Who took you your dope?"

12           I said, "Come on, Kathy."  It just got

13   real bad.

14       Q.   When did you find out that Arturo Garcia

15   was with her?  Were you back in prison, or were you

16   on the streets?

17       A.   I was in jail, actually getting ready to

18   go to court, go to trial on the domestic cases that

19   she had put me in jail for.  And she came to visit

20   me.  She brought me Arturo's dope, asked me why I

21   was doing this.

22           And I called my lawyer, and I said, "Hey,

23   this girl is coming to visit me."  And I didn't tell

24   him she was bringing me dope.

25           He said, "That's good.  Let her."  You
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7935

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 7936

1   know what I mean?  So I let her.

2          And she started asking me, "How do I clean

3   this up?"

4          And I made sure I was on the phone when I

5   did it, and I told her, "You were there.  You know

6   what happened.  I can't tell you what to say.  Say

7   the truth and that's it."

8          And she said, "Well, they'll arrest me if

9   I do."

10          I said, "Go to my lawyer's office and talk

11   to him."

12          So she went in there and she took him a

13   letter, and she spelled it all out why she did it.

14   She said she was jealous because I was with a

15   younger woman and I left her.

16      Q.   Over the years -- how many years do you

17   think you've spent in prison overall?

18      A.   Probably about 20, somewhere around there.

19      Q.   About 20 years?

20      A.   Give or take a few.

21      Q.   How old are you now?

22      A.   47.

23      Q.   When was the last time you were released

24   from prison?  Not from jail, but from prison?

25      A.   2012, I believe.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7937

26

 1    Q.   So what are you doing when you get out of
 2   prison at that point?
 3    A.   I'm trying to get a ride for my wife and
 4   my daughter.  Everybody I ran into told me, "Arturo
 5   is trying to put a hit on you."
 6        When I talked to Arturo, Arturo would say,
 7   "No, it's all good, brother."
 8        And people would be right there, so he
 9   just told me right there, "No, I didn't say that."
10        And I started seeing all these other guys
11   that were known informants, rapists, all this stuff
12   that's supposed to be against the rules, they're all
13   on these boards and they're the ones that are
14   shot-callers.  And every time I come back, I got to
15   go to the lockup unit because somebody dropped a
16   kite on me because Arturo had a hit on me that he
17   won't admit to.
18        So I just got real tired of it.  I wanted
19   to live a different life.  I started feeling guilty
20   about the things I did.  Once I got off the dope, I
21   no longer had the motivation to be part of this
22   gang.  My life is my daughter.  So that's what I was
23   doing.  I was trying to do that.
24    Q.   So seeing that some of the rules had
25   changed over time and they weren't being enforced,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020    Page: 7938

```
 1  did this change your mindset about the gang?
 2       A.   Yes.  I was real disillusioned.  I was a
 3  true believer.  I was dedicated to it.  When I was a
 4  kid, I thought this was something -- I thought this
 5  was what it was about.
 6       Q.   So at that point do you try to create
 7  distance between yourself and the gang?
 8       A.   For the most part.  There were a few other
 9  guys I talked to that were on the same page as me,
10  that were not necessarily -- this gang turned into
11  something like real evil.  Some of the guys in there
12  are not evil people; some of the guys in it have
13  done bad things, but they're not sitting in their
14  cell trying to think of ways to hurt people or try
15  to use everybody that comes in contact with them.
16  And that's what it turned into it.  That's all I got
17  from them.
18            So the people that I would associate with
19  were mostly people that were trying to move on, or
20  trying to do something better.  Some of them are
21  still struggling with drugs, myself included, but
22  we -- I didn't believe in that anymore.
23       Q.   Let me move forward in time to the fall of
24  2015.  Were you still selling drugs at that time?
25       A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   28   Page: 7939

1     Q.   I want to ask you if you and someone named

2  Salamon Ramirez went to Chris Garcia's house in the

3  fall of 2015.

4     A.   We went to his house a few times.

5     Q.   I'm going to focus your attention on the

6  date when you picked up a gun.  So tell us why you

7  went to Chris Garcia's house on that occasion.

8     A.   I went to pick up a gun, because another

9  one of my brothers had been coming by because I was

10  selling dope, and I'd been giving him dope all the

11  time.  And one day he started acting like I had to

12  give it to him, or I owed it to him.  And I didn't

13  mind helping him out, but I didn't like that

14  attitude.  So I told him, "Hey, don't come back

15  without money.  You hear me?"

16          I wanted him out of there.  I knew he

17  wasn't going to get no money.  So he called one

18  morning and he asked if he could come over.  I told

19  him no.  And he said, "Well, I have some money."

20          So I let him come over.  And I go out

21  there, and he starts telling me this and that

22  about -- he starts trying to talk me out of some

23  dope, that he had no money.  I told him, "You got to

24  get out of here, Dreamer.  Don't come here.  Don't

25  come here."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7939

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   29 Page: 7940

```
 1              So Lorenzo Torrez, Dreamer -- or Lorenzo
 2    Valdez, Dreamer.
 3         Q.   What's his name?
 4         A.   Lorenzo Valdez, Dreamer.
 5              So I look on the seat of the car.  He has
 6    a gun.  And he picks up the gun.  And I told him,
 7    "Ah, whatever."
 8              I turned my back and I started walking
 9    inside at this point.  I didn't have a weapon at the
10    house.  You know what I mean?  I was just selling
11    dope.
12         Q.   What were you selling?
13         A.   Heroin.  So he shot twice in the air.  So
14    I called Chris; I told him I needed a gun.
15         Q.   And you called Lorenzo Valdez a brother.
16    Was he SNM?
17         A.   Yes.
18         Q.   What about Salamon Ramirez?
19         A.   Salamon was also SNM.  But he's a drug
20    addict through and through.  He'll probably always
21    be a drug addict.  But he's not a bad person,
22    really.
23         Q.   So do you and Salamon go to Chris Garcia's
24    house to get a gun?
25         A.   Yeah.  Salamon was staying at my house at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7940

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   30   Page: 7941

```
 1   that time, and I would try to help keep him off the
 2   streets by letting him stay there.  I would give him
 3   dope, and I would have him drive for me, and just do
 4   stuff like that.
 5        Q.   Why did you feel you needed to get a gun
 6   at that point?
 7        A.   I felt threatened by Lorenzo, by Dreamer.
 8   You know what I mean?  He's going to come back,
 9   shooting at my house.  You know what I mean?  My
10   family is there.  And at this point that's what I'm
11   doing.  I'm really getting away from selling dope,
12   trying to, trying to find a job, or trying to find
13   some other way out.  Previously, I said that I had
14   gone to the methadone after I was arrested, but I
15   believe I was already on the methadone, and still
16   using, but still trying to get off.
17        Q.   What is methadone used for?
18        A.   Drug addiction; treat drug addiction, a
19   substitute for heroin.
20        Q.   At that point, isn't it true you were a
21   convicted felon?
22        A.   Yeah.
23        Q.   So were you supposed to be even possessing
24   a firearm at all?
25        A.   No, I wasn't supposed to be possessing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   firearms or heroin or any of the stuff I was doing.
 2        Q.   Okay.  So what happens when you get to
 3   Christopher Garcia's house?  Is he able to provide
 4   you with anything?
 5        A.   Yeah, he gave me the gun.  He gave me -- I
 6   believe it was a revolver.  I was using a lot of
 7   drugs.  My memory is kind of cloudy.  But I did pick
 8   up a gun from him.  Salamon was with me in the car.
 9        Q.   Did you pick up any drugs, as well?
10        A.   Yeah.
11        Q.   What you get from him?
12        A.   I think it was about a quarter ounce, 7
13   grams.
14        Q.   A quarter ounce of what?
15        A.   Heroin.
16        Q.   Was that heroin to use or to sell, or
17   both?
18        A.   It was both.
19        Q.   So what happens when you leave the house?
20        A.   We're driving back, and we get pulled
21   over.  I give the dope and the gun to Salamon.
22   Salamon asked me to take off.  You know what I mean?
23   That was what I was keeping him high for, you know
24   what I mean, so he can help me get away from stuff;
25   for him to get out and run and ditch it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              There was only one cop.  He was going to
 2   stop one of us.  I guess Salamon ran into somebody's
 3   back yard.  A dog barked at him.  He thought it was
 4   a police dog.  And he laid on the floor, waiting for
 5   the police.
 6        Q.   He goes to someone's back yard and he
 7   thinks it's a police dog?
 8        A.   Yeah.
 9        Q.   And he just lays down?
10        A.   He lays down and waits for the police to
11   show up.
12        Q.   Did the police get him?
13        A.   Yeah.
14        Q.   Were you arrested on that occasion?
15        A.   No.  Surprisingly, I guess he must have
16   gotten rid of everything, or I don't know if he got
17   caught with it.  I don't know if that's when he
18   started working with law enforcement, or what.  But
19   he did go to jail.  They asked me who it was.  I
20   think I told them, "I don't know who that was.  I
21   was giving him a ride," or something.
22        Q.   Did you lie to the police about that?
23        A.   Yeah.
24        Q.   And at some point you mentioned working
25   with law enforcement.  Was it your belief that he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7944

```
 1   later began working for law enforcement?
 2        A.   My belief.
 3        Q.   Now, I want to take you to September 11 of
 4   2015, and ask you if you sold drugs to anybody on
 5   that date.
 6        A.   I believe you're referring to Robert
 7   Madrid?
 8        Q.   Yes.
 9        A.   Yeah, he came to my -- well, I seen him
10   someplace.  He asked me for the number.  I gave him
11   the number.  And he came and bought.  I think that
12   was a quarter ounce also, or a teener, 1/16.
13        Q.   Okay.  You said a teener.  What is a
14   teener?
15        A.   A 1/16 of an ounce.  I sold him some dope.
16   Later on that day or the next day, he called me back
17   and said that he sold a car and he wanted to start
18   selling dope, and he wanted an ounce and a gun -- or
19   I think it was an ounce.  So he came to the house,
20   and I knew he was no good.  I knew he was a rat.  He
21   was an informant.  So I cut the crap out of the
22   dope.
23        Q.   What does that mean?
24        A.   I put a bunch of sugar in it and just a
25   little bit of dope, and I gave him the wrong bag.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7944

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   34  Page: 7945

1  So when he left -- I noticed after he left, so I
2  called him, "Hey, come back."  He didn't want to
3  come back.
4      Q.   You gave him the good stuff and not the
5  bad stuff?
6      A.   Yeah.
7      Q.   When you cut it, was that to harm him or
8  just to dilute the amount of heroin?
9      A.   Just to dilute the heroin, just to get his
10  money.  You know what I mean?  I didn't think too
11  highly of Robert.  I knew I shouldn't have sold to
12  him.  I even told him, "If you're working off
13  charges, go work them off somewhere else."
14           And he said, "Oh, not me."
15      Q.   So you suspected he was working with law
16  enforcement?
17      A.   I kind of knew.  But I was just --
18      Q.   All right.  So you gave him the good
19  drugs.  And what is your response to doing that?
20      A.   I tried to get him to come back, and he
21  wouldn't come back.  So I told him, "I know where
22  you live, Robert."
23           And he hung up.  Somebody called me back
24  and said, "Don't be threatening us."  Some girl.
25           "I'm not threatening nobody.  I just want

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7945

 1   to talk to him.  Tell him to come back here or I'll
 2   go over there."
 3           At that point, Agent Acee and Mark Myers
 4   and Nate Lerner and a bunch of sheriffs pulled up at
 5   my house.
 6           I think he called me back and said, "All
 7   right.  I'll go back.  And meet me at your house."
 8           And I went back to my house, and they
 9   pulled in and arrested me.
10       Q.   All right.  So when someone calls you
11   about a threat, shortly after that law enforcement
12   arrives at your house?
13       A.   Yeah.
14       Q.   Who is that in your car with you?
15       A.   Me and my wife.
16       Q.   When law enforcement got there, including
17   Agent Acee, did anyone give you any commands?
18       A.   Yeah.  They told me to get out of the car,
19   lock the doors.  And I sat there and talked to my
20   wife for a while.  They broke out the back window.
21   I think I almost got shot that day for not exiting
22   the vehicle.  But I knew what happened.  Pretty much
23   instantly, I knew Robert set me up.  I knew.  That's
24   why he didn't want to come back.  I knew.
25       Q.   You kind of started figuring things out at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 7946

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   36 Page: 7947

1   that point?

2       A.   Yeah, I kind of knew before that, but at

3   that point I knew for sure.

4       Q.   All right.  And as a result of not

5   complying with Agent Acee's commands, did you get

6   basically yanked out of that car?

7       A.   Yeah, I got drug out.  They broke out the

8   back window, like I said, and unlocked the doors and

9   drug me out.

10      Q.   So what decision did you make that day

11  after you got arrested?

12      A.   I would have never had the gun there if it

13  wasn't for Dreamer.  I had made the decision a long

14  time ago to distance myself from that gang.  At that

15  point, I made the decision that I'm going to spend

16  as little time away from my daughter as possible.

17  I'm going to -- I'd already pretty much really made

18  the decision to stop using drugs.  They didn't hold

19  me the same way they did before.  I felt I can leave

20  that behind also.  And I was planning on doing it.

21  This just hurried that process along.  I knew I was

22  going to do whatever it took not to be away from my

23  family again.

24      Q.   So when you say it hurried along that

25  process, do you decide to cooperate with the FBI?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7947

1      A.   Yes.

2      Q.   Were you taken to jail as a result of this

3   arrest?

4      A.   Yes.

5      Q.   And what were you booked on?

6      A.   Felon in possession of a firearm and

7   trafficking heroin, I believe.

8      Q.   Now, were you initially booked on those

9   charges, or were you booked on a probation or parole

10   violation?

11      A.   I think it was a probation/parole

12   violation.  I don't think I was charged with the

13   felon in possession stuff till later, but that's

14   pretty much why they were there.

15      Q.   Okay.  And then when you're in jail, are

16   you then caught the next day with a syringe with

17   some liquid in it?

18      A.   Yeah.

19      Q.   Did you take that in with you, or did you

20   get it when you got to the facility?

21      A.   I got it when I got to the facility.

22      Q.   How did that happen?

23      A.   I don't remember who it was.  Somebody

24   seen that I was sick, and they were trying to help

25   me out, put a syringe under my door.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7948

1    Q.   When you said you're sick, are you sick

2    from an illness or is that from your drug use?

3    A.   This is why I think I was on the methadone

4    before that.  I was sick from the methadone and from

5    heroin.

6    Q.   So even when you come off methadone, do

7    you still feel the effects of even coming off that

8    medication?

9    A.   Yeah, it's worse than heroin.  Coming off

10   of methadone is worse than coming off heroin.

11   Q.   All right.  As a result of being in jail,

12   are you at some point released from jail to begin

13   cooperating with the FBI?

14   A.   Yeah.

15   Q.   And what do you agree to do for them?

16   A.   I agree to take some phone calls from

17   these guys in prison, my brothers.  I agree to make

18   a couple controlled buys, and I agree to debrief and

19   answer questions honestly, and admit to everything I

20   did going way back.

21   Q.   When you say "controlled buys," tell the

22   members of the jury about that process.  What's your

23   involvement in a controlled buy?

24   A.   Meet with the officers or agents, whoever

25   they are.  They give me the money, tell me what they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7949

1  want me to try to buy, give me a recording device,

2  and send me off to go make the buy.  They follow me.

3  They search me prior, they search me after.

4        Q.   And do they search you to make sure you

5  don't have any drugs or other contraband with you?

6        A.   Yeah.

7        Q.   And did you engage in one of these

8  controlled buys on November 18, 2015, from Chris

9  Garcia?

10       A.   I made a couple, more than one.

11       Q.   And was law enforcement with you on those

12 occasions?

13       A.   Yeah, every time.  Every time they search

14 me before, search me after.

15       Q.   Now, when this process begins, are you

16 then provided an attorney as part of this process?

17       A.   Yeah.

18       Q.   And when you had that attorney then, did

19 you sit down for what's called a debrief or an

20 interview under what's called a Kastigar letter?

21       A.   Yes, I did.

22       Q.   Would you tell the members of the jury

23 that once you had the protection of a Kastigar

24 letter, what you told the Government about a

25 homicide that you were involved with?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7950

```
 1        A.    Yes.
 2        Q.    Who did that homicide involve?
 3        A.    It involved myself, Anton Cordova, Chris
 4   Garcia, and the victim was Shane Dix.
 5        Q.    And did you eventually participate in this
 6   homicide of Shane Dix?
 7        A.    Eventually, yeah.
 8        Q.    And where was Chris Garcia when it
 9   actually happened?
10        A.    I believe he was in Las Vegas, Nevada,
11   watching a Super Bowl -- I don't think the Super
12   Bowl was there.  I think he was at a casino watching
13   the Super Bowl in Las Vegas.
14        Q.    Do you know why it was important that he
15   be in Las Vegas while you were in Albuquerque?
16        A.    So he wouldn't be blamed for it.
17        Q.    And what was Chris Garcia's relationship
18   with Shane Dix?
19        A.    From what I understand, the guy that was
20   his former pistolero, his former gunman, was a guy
21   named Dragon from San Jo, a gang in Albuquerque.
22   They were arguing; Dragon and Shane Dix were arguing
23   over a girl.  And Chris was telling Dragon, "Just
24   get him out of here.  Tell him to leave," or
25   whatever.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            Chris had a lot of dope and money on him,

 2   and they were still arguing.  Chris went up to the

 3   car and told Shane, "Just get the fuck out of here."

 4   He was the passenger -- excuse my language.

 5            Shane argued back with him.  Chris reached

 6   in and backhanded him.  And Shane shot him through

 7   the door, is what I understand.  Dragon was supposed

 8   to get the dope and the money off Chris, and he

 9   didn't do that.  He left.  So Dragon was fired,

10   obviously.

11        Q.   For not protecting --

12        A.   For not protecting him, for not helping

13   him, for not doing anything he was supposed to do.

14        Q.   Did you eventually see a wound in Chris

15   Garcia's stomach from getting shot?

16        A.   At that point, I was still with my

17   ex-wife, Kathy.  She worked at the hospital.  So I

18   knew everything that was happening with him, that he

19   was intubated and he barely made it, he barely

20   lived.  Yeah.  And he was shot in the -- I want to

21   say left hip.  I think it was the left hip.

22        Q.   You just know he was shot?

23        A.   In the lower part of his body.  I know it

24   affected his leg circulation.  He had to wear a pair

25   of panty hose.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And how far apart was the time when Shane
 2   Dix shot Chris Garcia, and when you participated in
 3   this homicide with Anthony Cordova?
 4        A.   I think it was a couple of years.  At that
 5   time, I was on drugs really bad, and all this stuff
 6   runs together.  And I was in and out of prison on
 7   parole violations; and the stuff with Kathy.  Chris
 8   even bonded me out on the cases with Kathy at that
 9   time. She would get me arrested for domestic
10   violence, and I would go to jail, and Chris would
11   bond me out.
12        Q.   Who was Chris Garcia, in terms of the SNM?
13   Was he a well-known drug dealer for the gang?
14        A.   He was a drug dealer, and he was known to
15   have a lot of money.  People were using him pretty
16   much.  At one point me and Jake Armijo were just
17   going to take his dope and rob him and kill him, or
18   whatever, you know.  We never did it, me and Jake.
19   Jake is not --
20        Q.   Let me ask you this:  That's Jake Armijo;
21   is that correct?
22        A.   Yes.
23        Q.   Also known as Big Jake?
24        A.   Big Jake.
25        Q.   Was Chris Garcia known for basically
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7953

 1   giving people a start-up kit when they got out of

 2   prison?

 3       A.   Yeah, baby baller startup kit.  He'd give

 4   everybody --

 5       Q.   Did you say "baby baller kit"?

 6       A.   Baby baller startup kit.  And he'd give

 7   everybody an ounce of dope, 500 bucks cash -- not

 8   all the time, not that amount.  He'd give them

 9   something, give everybody something.  And it pretty

10   much served two purposes.  He would say, "If they do

11   good, and they start selling, making money, that's

12   good.  They bring back some money.  If they don't,

13   then I don't ever have to deal with them again.  It

14   was cheap to get rid of them."

15       Q.   When you bought from Chris Garcia, did you

16   know that you could buy from him for law enforcement

17   because you had done so in the past?

18       A.   Yeah.  Yeah, there's no question that he

19   would sell dope to me.

20       Q.   When you got released from jail from the

21   more recent arrest, who was supervising you?

22       A.   Agent Bryan Acee.

23       Q.   And in addition to Agent Acee, were you

24   supposed to report to anybody else?

25       A.   I reported once to the probation office, I



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  think, but mostly it was Agent Acee was in charge.

 2       Q.   What was the purpose of reporting to the

 3  probation office?

 4       A.   I think it was part of the process after I

 5  got -- after I took the plea bargain.  I think it

 6  was part of the process that I was supposed to go

 7  and meet him.

 8       Q.   Did you have to submit to urinalysis

 9  following your release?

10       A.   I did for my work.  Every time I changed

11  jobs, every time random urines at work.  I don't

12  think I did -- I think I did one before I left.  I

13  was in an accident in my work truck; also had to

14  give a drug sample then.

15       Q.   Let me ask you this.  I'm going to get to

16  these recordings in a little bit.  So when you're

17  released, is it true that you still have a drug

18  problem?

19       A.   When I'm released, yeah.

20       Q.   And what do you do in response to that

21  problem?

22       A.   At that point it was a wakeup call.  I

23  knew that everything hinged on that.  I knew that I

24  could not turn back.  That was part of the reason

25  why I agreed to cooperate, is to burn this bridge;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7955

 1  because I tried to get away from this a lot of times

 2  and it was too easy to go back.  Everybody I knew in

 3  Albuquerque -- I grew up there.  Everybody was a

 4  gang member.  So I had to stay off dope.  And I

 5  think I was on the methadone before, but I think

 6  after the arrest, I may have used once or twice, but

 7  I was never caught, and I never -- it wasn't a

 8  continued thing, and I was able to stop totally for

 9  a long time.

10      Q.   And following that, did you begin using

11  methadone?

12      A.   Yeah.  That was a big thing that helped

13  me.

14      Q.   Did you do that on your own, or did

15  somebody require it?

16      A.   It wasn't required.  It was on my own.  I

17  am pretty proud of the fact that I detoxed that

18  stuff on my own also on the streets.

19      Q.   And once you were released, how long was

20  it before you were arrested again?

21      A.   Two years, probably.  Well, I got arrested

22  for a traffic ticket, failure to pay the fine or

23  something.  Yeah, it was two years.  It was right

24  before.

25      Q.   And then, more recently, can you tell the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7956

 1    members of the jury whether you were arrested in

 2    relation to a stolen vehicle?

 3         A.   Yeah, I was arrested for auto theft also.

 4    That was the last arrest.

 5         Q.   I won't ask you about the circumstances of

 6    that, because it's a pending charge.  But you did

 7    get an arrest; is that correct?

 8         A.   Yes, I did.

 9         Q.   And so you were out about two years?

10         A.   Yeah.

11         Q.   What were you doing there during that

12    time?  Were you working?

13         A.   I was living my life, man.  I was working,

14    doing stuff that I never thought I was capable.

15         Q.   And I want to talk to you about any

16    benefits you received as a result of your

17    cooperation real quick.

18         A.   The number 1 benefit was burning this

19    bridge.  I also received vocational training.

20         Q.   Who paid for the vocational training?

21         A.   The Government.

22         Q.   All right.  And are you aware that the

23    Government paid approximately almost $3,000 to send

24    you to a trade school?

25         A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And did the Government also help you with
 2   vehicle and maintenance repairs?
 3        A.   Yes.
 4        Q.   At some point, did the Government help you
 5   to help fix up an RV so you could leave town after
 6   this investigation concluded?
 7        A.   Yes.
 8        Q.   And are you aware that you received
 9   payments of almost $5,200?
10        A.   Yeah.
11        Q.   For a total of almost $10,500 worth of
12   benefits from the Government?
13        A.   Sounds right.
14        Q.   Now, when you got a trade and you were
15   working on your own, were you still receiving
16   payments from the Government, from the FBI?
17        A.   Not payments.  Probably about six months
18   after I was out.  And the state I was living in, I
19   had no family.  I had never done that before.  My
20   vehicle broke down.  I didn't really have a savings.
21   I didn't really know how to do that kind of stuff.
22   And I asked Bryan Acee for help, and he helped me.
23   He --
24        Q.   How did he help you?
25        A.   He paid for the parts at Auto Zone, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    believe it was, in Albuquerque, and I picked them up

2    in the state that I lived in, and I did the repairs

3    myself.

4              THE COURT:  Mr. Castellano, would this be

5    a good time for us to take our morning break?

6              MR. CASTELLANO:  Yes, sir.

7              THE COURT:  All right.

8              Mr. Mendenhall, if you'll help with the

9    door there.  We'll be in recess for about 15

10   minutes.

11             (The jury left the courtroom.)

12             THE COURT:  I handwrote a little ruling on

13   334, pages 17 through 21.  I'm going to keep those

14   out on relevancy grounds.

15             And then on 395, pages 19 through 21, it

16   seems to me that -- I just can't see a hearsay

17   exception here.  I don't see also how they're

18   relevant except for their -- except for their truth.

19   So Christopher Garcia isn't on trial, and so there

20   is no -- 801(d)(2)(A) doesn't apply.  Molina is

21   already dead by the time of these comments.  And C.

22   Garcia wasn't a Molina conspirator.  So Rule

23   801(d)(2)(E) doesn't apply, at least as to the

24   Molina conspiracy.  And the statements weren't in

25   furtherance of the conspiracies that Mr. Garcia

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7959

 1  belonged to; not Marcantel and Santistevan.

 2           So I can't discern an applicable Rule 803

 3  or Rule 804 exception either.  So I'm going to

 4  require those portions to be taken out, too.  So

 5  that takes care of those two, and I'm basically

 6  sustaining the objection.  So you'll have this oral

 7  one on 395, and Ms. Standridge just gave you a

 8  little bit of written one I did on 334.

 9           All right.  We'll be in recess for about

10  15 minutes.

11           (The Court stood in recess.)

12           THE COURT:  All right.  We'll go on the

13  record.  I mostly got through the Government's brief

14  regarding invocation of the Fifth Amendment

15  privilege as to Mr. Montoya and Mr. Duran.

16           Let me tell you what I'm thinking on that.

17  I agree with the Government.  I think that these

18  issues would be collateral that Mr. Montoya and

19  Mr. Duran would take the Fifth on, so I do think

20  that they will be permitted to testify as they are.

21  So I think they're collateral.  I'm not inclined to

22  tell the defendants what you can't question and not

23  do.

24           Here's what I would propose to do:  I

25  think you're entitled to nibble around the edges.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7960

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 7961

1   Mr. Candelaria, if you decide on cross-examination

2   you want to come up here and be closer to Mr.

3   Montoya, you're welcome to do it, to help him walk

4   through those questions.  So I'll leave that to you.

5   But you're invited to come up.  We'll give you a

6   chair up here, if you decide you want to do that.

7           I don't see any really huge downside if he

8   has to invoke in front of the jury.  What I'd ask

9   the defendants -- I'm letting you nibble around the

10  edges to do what you've got to do there.  Just don't

11  try to turn it into a circus.  I mean, if he has to

12  take the Fifth a few times, two or three times or

13  something, to get through your cross, I can live

14  with that.  Fifty times, I may have to figure out

15  something alternative.  So try to help me get

16  through and get Mr. Montoya through there.

17          On Duran's -- the child abuse issue, do

18  you have any issue?  Are you letting that go?  What

19  do you have on that?  I think it's really a question

20  of whether you've got a good faith basis to ask any

21  questions on it.  And of course, I don't have

22  anything that shows that there is any evidence of

23  it.

24          MS. DUNCAN:  I do, Your Honor, have a good

25  faith basis to ask him about it.  First, while he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7961

 1   was in custody, he had repeated phone calls with his

 2   wife, encouraging his wife to hit his daughter, to

 3   discipline her for various issues.  And he said

 4   either "Beat her ass," a bunch of different ways,

 5   and we have those phone calls.

 6          In terms of the Oregon case, it's not true

 7   that the detective found there was no probable

 8   cause.  He found there was no probable cause to

 9   believe that the abuse had happened at a rest area

10   that was within the Washington police jurisdiction.

11   So he referred it to Portland.  But he very much

12   thought that Eric Duran had slapped his daughter.

13   He talked to teachers who witnessed what they saw

14   was a bruise on Ivy's face --

15          THE COURT:  Well, I think you've laid

16   enough good faith basis.  So I'd not be inclined to

17   grant any sort of limiting order that doesn't allow

18   the defendants to go into this issue.

19          MS. DUNCAN:  Thank you.

20          THE COURT:  All rise.

21          (The jury entered the courtroom.)

22          THE COURT:  All right.  Mr. Montoya, I'll

23   remind you that you're still under oath.

24          THE WITNESS:  Yes, sir.

25          THE COURT:  Mr. Castellano, if you wish to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7962

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     52     Page: 7963

```
 1    continue your direct examination of Mr. Montoya, you
 2    may do so at this time.
 3              MR. CASTELLANO:  Yes, sir.  Thank you.
 4              THE COURT:  Mr. Castellano.
 5    BY MR. CASTELLANO:
 6         Q.   Okay, Mr. Montoya, going back to your
 7    conditions of release, so after you finished
 8    cooperating in this case, did you then leave the
 9    state of New Mexico?
10         A.   Yes, I did.
11         Q.   And did you stay out of custody for about
12    two years following that?
13         A.   Yes, I did.
14         Q.   And were you arrested for violating your
15    conditions of release for picking up a new charge,
16    as well as for not keeping in touch with Agent Acee?
17         A.   Yes.
18         Q.   And is that the reason you're in jail
19    right now?
20         A.   Yeah.
21         Q.   Now, do you recall that Shane Dix shot
22    Chris Garcia in about 2004 and then Shane Dix was
23    killed in 2005?
24         A.   It could have been that timeframe, yeah.
25         Q.   And after that homicide, was anybody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7963

```
 1   arrested?  Let me ask you this.
 2        A.    I believe somebody was questioned and held
 3   for a few days.
 4        Q.    Until you came forward with the
 5   information about the homicide, had anybody been
 6   charged with it?
 7        A.    No.
 8        Q.    And as a result of your cooperation, were
 9   Chris Garcia and Anthony Cordova charged with that
10   murder?
11        A.    I believe so.  I believe Chris pled
12   guilty.  I don't know for sure.
13        Q.    And is Anthony Cordova still pending
14   trial?
15        A.    I believe so.
16        Q.    I want to take you back now to the part
17   where you told us that you were working with law
18   enforcement.  And earlier you testified that you
19   made controlled buys and that you were recorded.  Do
20   you recall that?
21        A.    Yes.
22        Q.    How were you being recorded?
23        A.    Last time you had stopped me from saying
24   it?  Do you want me to describe the recording
25   device?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7964

1        Q.    No, what I'm asking is:  Were you carrying

2    a recording device?

3        A.    Yes, I was.

4        Q.    And in preparation for trial, have you had

5    an opportunity to listen to the recordings and to

6    review the transcripts of those recordings?

7        A.    Yeah, both.

8        Q.    And can you tell the members of the jury

9    whether the recordings that we're going to play here

10   in court are recordings you've listened to

11   beforehand and whether they accurately capture the

12   conversation as you remember them when they

13   happened?

14       A.    All of the recordings accurately captured

15   the conversations.  The transcripts are pretty

16   accurate.  Sometimes it's inaudible, but on the

17   recording you can usually hear it.

18       Q.    So are there times, since you were there,

19   where there might be an inaudible in the transcript,

20   but you can hear what was said?

21       A.    Yeah.

22       Q.    And from time to time, did you notice some

23   mistakes in the transcripts and the recording

24   accurately reflects what was said?

25       A.    Yeah, yeah.  Sometimes it would be like a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7965

```
 1   Spanish word, and it will say "inaudible," but you
 2   can tell what the word is if --
 3        Q.   And in this case, did you start making the
 4   recordings in the October/November timeframe of
 5   2015?
 6        A.   Yes.
 7        Q.   Now, can you tell the members of the jury
 8   whether in some of those recordings someone named
 9   Eric Duran is captured?
10        A.   Yeah.
11        Q.   And someone named Anthony Baca?
12        A.   Yes.
13        Q.   At the time that you made those
14   recordings, when you first started speaking to Eric
15   Duran on the phone, what was your understanding of
16   where he was physically located?
17        A.   He was physically located at the North
18   facility in Santa Fe.  3-A, I believe S pod.
19        Q.   And when you say "3-A," is that a housing
20   unit there?
21        A.   Yes.
22        Q.   Was it your understanding that Mr. Baca
23   was housed in the cell next to him?
24        A.   Yeah.
25        Q.   And was it also your understanding that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7966

 1   Eric Duran had a cellphone with him in the prison?

 2       A.   Yeah.

 3       Q.   Did that necessarily surprise you that an

 4   inmate had a cellphone in prison?

 5       A.   Not really.  You can pay an officer 1,000

 6   bucks to bring you a package; whatever you can fit

 7   in a package, he'll bring it to you, some officers.

 8       Q.   And when you first started speaking with

 9   Eric Duran, did you know whether or not he was

10   working or cooperating with the Government?

11       A.   I didn't know at first.

12            MR. CASTELLANO:  Your Honor, at this time

13   I move the admission of Government's Exhibit 356.

14            THE COURT:  Any objection from the

15   defendants?

16            MS. JACKS:  I think on behalf of Mr.

17   Sanchez, we made our position about this known.

18            MR. LOWRY:  No objection.

19            THE COURT:  All right.

20            MS. FOX-YOUNG:  Only as previously noted.

21            THE COURT:  All right.  Government's

22   Exhibit 356 will be admitted into evidence.

23            (Government Exhibit 356 admitted.)

24            MR. CASTELLANO:  With the Court's

25   permission, we'll begin playing the recording.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7967

1  I'll have some questions for Mr. Montoya.  This is

2  approximately a 13-minute call.

3  BY MR. CASTELLANO:

4      Q.   So before we begin that, what do you

5  remember about getting a call from Eric Duran?

6      A.   I remember he called me, told me Pup

7  wanted to talk to me.  He was in the cell next to

8  him.  Pup got on the phone, pretty friendly.  I

9  remember him telling me that STIU was messing with

10 the brothers, and they wanted to reach out and touch

11 one of them.

12     Q.   What does that mean, to "reach out and

13 touch" someone?

14     A.   They want to try to kill them.

15     Q.   Let me ask you this:  Did you know Mr.

16 Baca?

17     A.   Yeah.

18     Q.   How did you know him?

19     A.   From doing time in prison.  He also knew

20 my family prior, prior to me going to prison.

21     Q.   About how long have you known him?

22     A.   I've known him probably all my life.  When

23 I was a little kid, he lived right down the street

24 from me.  When he was a teenager, I was a little

25 kid.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7968

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 7969   58

```
 1        Q.    Do you also know him as Pup?

 2        A.    Yes.

 3        Q.    Do you know how he got his name?

 4        A.    He was Puppet.

 5        Q.    Did you know him also as Puppet at one

 6   time?

 7        A.    I think that was his name before he went

 8   to prison.  I couldn't be sure, but I think.

 9        Q.    Do you see him in the courtroom today?

10        A.    Yeah.

11        Q.    Where is he sitting and what's he wearing?

12        A.    Far left-hand corner, bald head, wearing a

13   suit.

14        Q.    Okay.  So let's go ahead.  And did you

15   know Eric Duran by any other name?

16        A.    Crazo.

17        Q.    With that, let's begin with the recording.

18   And if you want to, on your monitor, you'll see a

19   transcript there next to you at the same time as the

20   recording?

21              (Tape played.)

22        Q.    Stop right there.  Okay.  Santistevan are

23   making up --

24        A.    Desmadre.

25        Q.    What's a desmadre?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7969

```
 1      A.   It means they're making things hard.  It's
 2  like making a mess of things.
 3      Q.   Did you know who Santistevan was at that
 4  time?
 5      A.   Used to be the head of STIU.
 6      Q.   Okay.  Let's continue.
 7           (Tape played.)
 8      Q.   Stop there.  When it says, "We need
 9  someone on the streets to reach out and touch one of
10  them, either one," did you know who he was talking
11  about?
12      A.   I think he meant somebody in a position of
13  power within STIU or the Department of Corrections.
14      Q.   And what was the importance of having
15  somebody on the streets?
16      A.   Somebody in prison can get to one of them
17  people.
18      Q.   Let's go ahead and continue there.
19           (Tape played.)
20      Q.   Let's stop it there.  I let it run for a
21  little bit so we could get a few things out.  You
22  asked about artillery and money.  What do you mean
23  when you use the term "artillery"?
24      A.   That was not me.  It was Crazo telling me
25  that if I needed artillery or money, he meant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 7971

```
 1   weapons or money to make this happen.
 2        Q.   And when you talk about financing this
 3   project --
 4        A.   That was Crazo.  He's talking about money
 5   to make it happen.
 6        Q.   Let's continue.
 7             (Tape played.)
 8        Q.   Okay.  When there is discussion of needing
 9   esquina, what are you talking about?
10        A.   That means help with either the
11   information or the artillery.  That's what we're
12   talking about.  And also, it means anybody out there
13   that I could count on, because it's scattered by
14   this point.  So many people are just in it for the
15   dope or trying to distance themselves, it's hard to
16   find anybody on the streets to even hear this.
17        Q.   Now, when Crazo was speaking, can you hear
18   him better than Pup?
19        A.   Yeah.
20        Q.   Do you know why that is?
21        A.   Because Pup is in the cell next to him,
22   talking through the heater vent.
23        Q.   When you're on the phone, are you able to
24   identify Pup's voice?  Do you recognize it?
25        A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7971

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   61   Page: 7972

```
 1        Q.    Let's continue, please.

 2              (Tape played.)

 3        Q.    So the less people who know about what the

 4   better?

 5        A.    About a murder that we're planning.

 6        Q.    Why would that be important, to have fewer

 7   people involved?

 8        A.    Less chance of somebody telling.

 9        Q.    And then what's your response about not

10   trusting people?

11        A.    The whole reason why I started distancing

12   myself from these guys, because I would come back

13   from prison and see all the informants hanging out

14   with them, being treated like royalty; and all the

15   guys that were doing things for them being treated

16   like crap.  All of us are in the hole because

17   somebody dropped a kite on us.  And all the people

18   that dropped kites on us are in there with them.

19        Q.    What does that mean, drop a kite on them?

20        A.    Give information to STIU or something.

21   Nobody trusts anybody at that point.

22        Q.    Let's continue here.

23              (Tape played.)

24        Q.    So earlier he says, "Don't even tell

25   Chris"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7972

```
 1        A.    Yes.

 2        Q.    Do you know who Chris was?

 3        A.    Chris Garcia.

 4        Q.    So at this point, is Chris Garcia included

 5   in the plan --

 6        A.    At this point --

 7        Q.    -- as far as you know?

 8        A.    I think I'm barely being included in the

 9   plan at this point.  I don't know what they have

10   talked to Chris about prior to this.

11        Q.    And then when you say, "If you need

12   artillery," you say, "I got a couple."

13        A.    I'm known to have weapons and stuff like

14   that sometimes.  And at this point, I'm trying to

15   make it sound believable.  And I don't know if

16   they're going to want me to -- I don't know how far

17   this plot is going to go.  So I don't know if the

18   agent is going to want me to say I have a weapon, or

19   let them provide a weapon, or what.  So I just said,

20   "I may have a couple.  I don't know if I can still

21   get access to them.  Give me a few days to find

22   out," basically to find out what the instructions

23   are, what should I do.

24        Q.    Now, you talk about the P.O.s coming to

25   your pad about a month ago?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7973

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   63 Page: 7974

```
 1        A.   It was actually when I got raided for the

 2   controlled buy with Werro.  His name --

 3        Q.   When Agent Acee arrested you?

 4        A.   Yes, then.

 5        Q.   Okay.  So did that --

 6        A.   Robert Madrid.

 7        Q.   Did that make it seem plausible, then,

 8   that law enforcement had been to your house and you

 9   have a reason not to --

10        A.   Just in case anybody seen the cops at my

11   house.  In case somebody -- "Hey, you know, Mario's

12   house got raided.  He's not in jail.  You know what

13   I mean?  I seen a bunch of cops over there."

14             If I didn't mention something about it,

15   then I would be questioned.  But if I said the P.O.s

16   came and searched my house, it would be pretty

17   believable.

18        Q.   And P.O. is probation officers?

19        A.   Parole officers.

20        Q.   Would that be an explanation for why you

21   might not have firearms available?

22        A.   That would be an explanation why I didn't

23   have nothing at my house.

24        Q.   Let's play it.

25             (Tape played.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7974

1    Q.   So when you say something, it sounds like

2   Eric Duran is repeating what you're saying.  Is he

3   repeating it back to you or to someone else?

4    A.   He's repeating it to Pup.  Because Pup is

5   in the other cell at the heater vent.  There is a

6   bunk and there is a heater under the bunk.  And if

7   you get under the bunk, you can talk back and forth

8   without yelling through the whole pod to your

9   neighbors.  So Crazo is under the bunk, I'm talking

10  to him, and he's relaying the message to Pup.

11  Sometimes I can hear Pup, sometimes I can't.  So

12  Crazo would repeat it to me.

13    Q.   Continue.

14         (Tape played.)

15    Q.   A few things.  What would be the purpose

16  of making a silencer?

17    A.   To silence the weapon, to make it quiet,

18  nobody hear nothing, get away with it.

19    Q.   And earlier you talked about the need for

20  getting addresses.  What would that be about?

21    A.   Locate these people that he's wanting me

22  to go touch.

23    Q.   All right.  And then your response is:

24  You know how to make one out of an aerosol can?

25    A.   I seen it on the Discovery Channel.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7975

```
 1        Q.    So you thought you knew how to make one
 2   out of an aerosol can?
 3        A.    Yeah.
 4        Q.    Let's continue.
 5              (Tape played.)
 6        Q.    What was that term where you guys were
 7   laughing?
 8        A.    He's saying to make the silencer so there
 9   is no calentura, heat.  And I'm telling them there
10   is going to be calentura.  You can't be thinking
11   that you're going to do something like that and
12   there's not going to be no heat.
13        Q.    Once you hit a high-level corrections
14   officer or someone high in the administration, there
15   is definitely going to be heat?
16        A.    Definitely.
17        Q.    Let's continue, please.
18              (Tape played.)
19        Q.    What's the belief about people living on
20   the compound?
21        A.    Most of the STIU guys -- a lot of COs live
22   on compound, the trailer park right on the grounds
23   of the prison when you first come in.
24        Q.    So as you enter the prison property, there
25   are actually homes, or --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7976

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   66  Page: 7977

```
 1        A.    Trailers.

 2        Q.    -- trailers where they live?

 3        A.    Yes.

 4        Q.    And is that what you're talking about

 5   there, that he knows they live on the compound?

 6        A.    Yes.

 7        Q.    Okay.  Let's continue, please.

 8              (Tape played.)

 9        Q.    So there is a belief that Santistevan

10   lives on the compound, and there is another name

11   mentioned now.  It's Adam --

12        A.    Adam Vigil.

13        Q.    Who is Adam Vigil?

14        A.    He used to be a lieutenant and unit

15   manager.  We called him Barney Rubble because he

16   looks like Barney Rubble.

17        Q.    Who would call him Barney?

18        A.    Everybody.  Probably the officers would

19   call him Barney Rubble also.

20        Q.    Don't get the officers in trouble.

21        A.    Not to his face.

22        Q.    So at least the SNM members would?

23        A.    Yeah.

24        Q.    Okay.  Let's continue, please.

25              (Tape played.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7978

```
 1          Q.    What cop thing were you talking about?

 2          A.    I think it was an officer that got killed

 3   in Albuquerque, or it could have been the Deputy

 4   James McGrane thing.

 5          Q.    So are we talking about charities and

 6   banquets and things of that nature?  Who might you

 7   find at those types of events?

 8          A.    Law enforcement and COs and corrections

 9   officers.

10          Q.    All right.  Let's continue.

11                (Tape played.)

12          Q.    Okay.  So when you talk about needing a

13   couple of days, why do you tell them you might need

14   a couple days to get this stuff?

15          A.    Because I'm trying to find out, should I

16   act like I have the gun?  I mean, I don't really

17   know how to respond.  Should I let him try to get me

18   a gun?  I don't really know.  I'm just trying to

19   follow instructions at that point.

20          Q.    And at this point, are you sitting next to

21   law enforcement, are you talking on a phone away

22   from law enforcement?

23          A.    No, I have a cellphone that was provided

24   to me by the FBI, and I'm just going about my life

25   and answering these calls.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7978

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7979

68

```
 1      Q.   And did you know that the cellphone they
 2  gave you was wiretapped?
 3      A.   Yeah.
 4      Q.   Did you agree to have that phone tapped so
 5  that these recordings could be made?
 6      A.   Yeah.
 7      Q.   When you said you might need a couple of
 8  days to get this done, what is the response about
 9  someone in the prison being able to help you out
10  with that?
11      A.   I don't understand.  Like a couple of
12  days -- I need a couple of days to see if I could
13  get the weapons myself, and --
14      Q.   And Duran --
15      A.   -- we're also talking about information,
16  talking about addresses, places to go to look for
17  them, stuff like that.  They're telling me, "Just
18  Google it."  I guess somebody in there thinks that
19  if you type in somebody's name, that the internet is
20  going to tell you where they live.
21      Q.   I'm going to show you here, next to line
22  3, it says, "Crazo:  He said, yeah, if you can't get
23  the artillery, he can get it for you.  And if you
24  need feria, he can get you some feria, too."  So --
25      A.   Pup is saying, if you need a weapon, Pup
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                      Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7979

```
 1   can get it for you.  And if you need money, he'll

 2   get it for you also.

 3        Q.   How can Pup get you a weapon if he's in

 4   prison?

 5        A.   Ask another member, namely Chris, is who

 6   came up in that.

 7        Q.   And when he uses the term "feria" as in,

 8   "if you need feria," what is he referring to?

 9        A.   If you need any money.

10        Q.   Okay let's continue.

11             (Tape played.)

12        Q.   Sounds like he said, "Oh, serio," where it

13   says "Spanish" on the transcript.  What do you

14   understand that to mean?

15        A.   "Serio" means, "Oh, serious."

16        Q.   Okay.  Let's continue.

17             (Tape played.)

18        Q.   Asking for a --

19        A.   Shot of heroin.

20        Q.   What's the word in Spanish?

21        A.   Cura.

22        Q.   And a cura is a shot of heroin?

23        A.   Yeah.

24        Q.   What's going on here?  It sounds like Mr.

25   Baca wants to ask how brothers are doing on the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7980

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7981

1    streets?

2         A.    He's trying to -- every time there is a

3    new board or new leader or shot-caller, somebody

4    else has the keys, they try to bring everybody back

5    into the fold that's trying to leave.  Pretty much,

6    "No, carnal, it's not going to be like that no more.

7    I'm different.  I'm not doing stupid things for

8    nothing.  I'm going to follow the rules."

9         Q.    What's the response about people talking

10   big in prison, and then they hit the streets and

11   what happens?

12        A.    When everybody is in prison, they all want

13   to get high.  And they all want to basically

14   survive.  Also, some of them -- so we're talking a

15   good game.  And as soon as they get out, they start

16   putting distance, which I was myself doing.

17        Q.    And you talked about new leaders and new

18   leadership.  What has happened over the years with

19   the SNM and leadership?

20        A.    It was stupid, in the first place.  But

21   it's gotten, like -- at least there was a semblance

22   of somebody following the rules back in the day.

23   They looked like they were following the rules.  You

24   couldn't just say somebody was a snitch and then get

25   them hit.  You had to have paperwork.  You had to --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  if you said somebody was a snitch and you didn't

2  have the paperwork, then you would be hit.

3      Q.   We'll talk about that in a little bit, in

4  one of the other recordings.  But had you ever heard

5  the term "tabla"?

6      A.   Yeah.

7      Q.   What's a tabla?

8      A.   The board.  That's what it means.  It's a

9  board of directors, pretty much.  When I got in,

10 when I first got in, the word was -- there was no

11 leader.  "You all know what to do.  We can function

12 on our own."  Angel Munoz used to say, "I don't need

13 no kids, and I don't need no dads.  I need

14 brothers."

15          After Angel, it was Styx.  Styx had the

16 keys.  So then he's the leader.  So everybody

17 considered Angel a leader, but he wouldn't accept

18 the title.  But he was the leader.

19          After that was Styx.  "I'm the jefe, I'm

20 the leader."  So he was the leader.  So after Styx,

21 people didn't like the way he was doing things,

22 there was a lot of complaints.  Then they started

23 with boards.  I was in and out at this point.  I

24 couldn't say who was on what board.  I could tell

25 you some of the guys that were.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   What was Mr. Baca's role over the years?

2    A.   Baca was out of state during most of this

3  time.  And when he came back, then he was the

4  leader, he was the shot-caller, the llavero.

5    Q.   Let's continue.

6         (Tape played.)

7    Q.   What's the purpose of identifying these

8  people and then knocking them off once they get to

9  prison?

10    A.   Like I said, every leader that comes in

11  comes in with these big old ideas, how we're going

12  to get it straight and get it right.  Pretty much

13  talking about cutting off the deadweight, the guys

14  that ain't doing nothing for anybody.  They're not

15  SNM material.  And he's talking about eliminating

16  them.

17    Q.   And did you ever have a chance to discuss

18  the structure of the SNM with Mr. Baca?

19    A.   A little bit.  Not too much.  I was with

20  him for a little while, like maybe two weeks.  And

21  then I got out or got locked up again for kites, or

22  whatever.

23    Q.   What do you recall about those discussions

24  in the organization of the gang?

25    A.   They're starting to use new terms.  Like

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   instead of carnal, we were starting to use hermanos,

 2   for brother; talking about breaking up the state

 3   into different regions, Albuquerque being the main

 4   one.  And that's pretty much what I remember about

 5   it.  Cleaning up, cleaning the house.  Everybody

 6   always wanted to clean the house, and I would tell

 7   them, "The house is on fire.  Why are you pulling

 8   weeds?  Put out the fire first and then worry about

 9   the yard."

10       Q.   Those are your ideas at the time about

11   cleaning up the SNM?

12       A.   No, that was just my thoughts.  The other

13   stuff was Pup's ideas, or his and whoever told

14   him -- or wherever he got it from, he was telling me

15   about breaking up the state and stuff.

16       Q.   Let's continue.

17            (Tape played.)

18       Q.   Do you know what program they're

19   discussing here?

20       A.   The RPP Program, I believe it was called,

21   the dropout program for people that wanted to leave

22   this gang.

23       Q.   When you said, "I seen a grip," what is a

24   grip?

25       A.   A lot.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1      Q.   So at this point, was it your experience

2  that people were dropping out and going to the

3  program?

4      A.   Yeah, and then I would see them later on

5  in the Level 4 with them.  You know what I mean?

6      Q.   What would that mean to you?  You'd see

7  them leaving to the dropout program, and then you'd

8  see them at Level 4.  What would that tell you?

9      A.   That would tell me -- reinforce my idea

10 that this is a bunch of crap.  This is a popularity

11 contest.  This ain't nothing good coming from this.

12 The guys that are doing the most damage are

13 spreading the most deceit and causing the most

14 problems are the guys that are out there; and all of

15 us are trying to do the right thing, either for the

16 gang or for our family.  Whatever right thing you're

17 trying to do, we're the ones that are paying the

18 price.

19      Q.   Now, in a little bit, so I don't have to

20 stop the recording, it talks about Little Rabbit

21 locking it up, and Cyclone locking it up.  What does

22 that means?

23      A.   That means they PC'd.

24      Q.   What does it mean to PC?

25      A.   Request protective custody.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 7985

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7986

1    Q.   What types of problems did that create for

2    gang members for the SNM?  Is that a good thing or a

3    bad thing?

4    A.   Like if I PC'd -- well, not really

5    anymore, but before, if I PC'd, then I would be

6    greenlighted.  There would be a hit on me.  Not like

7    there wasn't one anyway, but at one time it was a

8    serious thing and I would have tooken it serious.

9    It was not the thing to do.

10   Q.   Let's continue with the recording.

11        (Tape played.)

12   Q.   The transcript says there is "cheer,

13   chime."  Do you know what was actually said there?

14   A.   "Tier time."

15   Q.   Okay.  So what was your understanding of

16   the Level VI program, having steps?  Could you move

17   from level to level if you had good behavior?

18   A.   The way I understood it, the way it's

19   always been, Level 6 you don't any get tier time.

20   Level 5, you get rec together.  Level 4, you

21   actually get tier time.  But it changes over the

22   years.  Sometimes different levels get different

23   privileges.

24   Q.   Over here it refers to "They just brought

25   Pup back last week."  Do you know where he had been?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7986

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7987

```
 1        A.    I believe he had been out of state
 2   somewhere.
 3        Q.    Was it your understanding, when Eric Duran
 4   tells you, that Pup had just returned back in the
 5   state?
 6        A.    Yeah.
 7        Q.    Let's continue.
 8              (Tape played.)
 9        Q.    Do any what?
10        A.    Vida, life.
11        Q.    So the people you knew were basically
12   still in prison?
13        A.    Yeah.
14        Q.    Okay let's continue.
15              (Tape played.)
16        Q.    What's this phrase with "amor" in it?
17        A.    That means love.  That used to be -- there
18   are certain words and certain things that used to
19   belong to the SNM.  That was one of the words --
20   people didn't say amor, carnal.  They didn't have
21   tattoos of Zias.  We wouldn't allow it in the
22   prison, because that was our identifying marks.  You
23   had to earn that stuff.  Now it's just -- everybody
24   says it.  I hear zios calling each other "carnal."
25        Q.    When you ask about having money on Pup's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 7988

```
 1   books, why do you do that?
 2        A.   Offering to help him out, because that's
 3   what a brother was supposed to do back in the day.
 4   Nobody would really do it now, but back in the day,
 5   offer to send him pictures and have him talk to his
 6   girl.  They're in prison.  You know, that's what
 7   they want.  They want nasty magazines and nasty
 8   pictures and girls and money on their books, and
 9   dope.
10        Q.   At this point, are you playing the part of
11   a good brother?
12        A.   Being a good brother.
13        Q.   And at some point, did you actually send
14   pictures to Eric Duran on his phone?
15        A.   Yeah.
16        Q.   And the same question.  Why would you send
17   somebody in prison pictures of a female?
18        A.   Playing the part of a good brother.  I
19   didn't know Eric was on this Team America, is what
20   it's been called to me.  I didn't know he was on
21   board with any of this stuff.  So I'm just trying to
22   keep things the way they would normally be if the
23   FBI wasn't involved, you know.
24        Q.   Let's continue.
25             (Tape played.)
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   78   Page: 7989

```
 1      Q.   That's the end of that recording there.
 2  Throughout this recording, there is reference to
 3  somebody named Chris.  Is that always Chris Garcia?
 4      A.   Yeah.
 5           MS. JACKS:  Excuse me, Your Honor.  May we
 6  have a limiting instruction?
 7           THE COURT:  All right.  These are
 8  conversations that were recorded of Mr. Baca, and so
 9  you can only use these conversations in your
10  deliberation of the charges against Mr. Baca and not
11  as to the other three gentlemen.
12           Mr. Castellano.
13  BY MR. CASTELLANO:
14      Q.   So Mr. Montoya, after you get this phone
15  call, what are you doing with law enforcement in
16  terms of letting them know what's going on?
17      A.   Giving them everything.  Everything I know
18  about this stuff.  That was part of the agreement,
19  was that I tell the truth.
20      Q.   And so do you relay this information to
21  Agent Acee that you got this call?  What are you
22  doing with the information?
23      A.   I think he knows it.  I think it's being
24  recorded.  I really don't have to remember any of
25  it.  Just pretty much be myself on the phone, what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 7989

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7990

 1   they expect me to be, and that would be about it.

 2           I would get a call.  Sometimes I wouldn't

 3   answer the phone immediately.  I would get my wife

 4   and my daughter someplace, send them in the

 5   restaurant, or send them in the house, or whatever,

 6   and I would sit in the car by myself and I would

 7   take the call.

 8      Q.   Let me turn your attention to another

 9   recording.  I think this is Government's Exhibit

10   380.  And it's about 25 minutes.

11           MR. CASTELLANO:  Your Honor, at this time

12   I'd move the admission of Government's Exhibit 380.

13           THE COURT:  Other than what we discussed,

14   anything else anybody needs to say on this?

15           MS. JACKS:  Nothing additional.  Thank

16   you.

17           THE COURT:  All right.  With that,

18   Government's Exhibit 380 will be admitted into

19   evidence.

20           (Government Exhibit 380 admitted.)

21   BY MR. CASTELLANO:

22      Q.   Okay.  Mr. Montoya, let's begin with this

23   recording and I'll have some more questions for you.

24   And actually before -- sorry.  Before we start, the

25   first name out of the gate on the transcript is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7990

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 7991

```
 1   Poo Poo.  Who is that?
 2        A.   That's me.
 3        Q.   So do people know you also as Poo Poo in
 4   addition to Mario?
 5        A.   Just the brothers.  That was it.
 6        Q.   And before we start, there's going to be
 7   reference to dropping home girl off.  What are you
 8   referring to?
 9        A.   I think I had a friend.  The brother sent
10   the pictures with me.
11        Q.   And then are those the pictures that you
12   sent to Eric Duran?
13        A.   Yeah.
14        Q.   All right.  Let's begin the recording,
15   then.
16             (Tape played.)
17        Q.   Okay.  When you said, "I talked to Styx,"
18   who is Styx?
19        A.   Styx is Gerald Archuleta.
20        Q.   And did you have a conversation with him,
21   or were you just telling them that?
22        A.   I talked to him one time.  It might have
23   been the time that I talked to him.  He didn't
24   really -- he was trying to not talk about it when I
25   did talk to him, so I didn't talk to him too much.
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 7991

```
 1   It could have been this time.
 2        Q.   You talked to him about what?
 3        A.   About what was going on here, see if he
 4   didn't really want to participate.  I don't even
 5   think that this is talking about Styx.  I think I
 6   said "Chris," and they thought I said Styx.  And it
 7   went back and forth, "Did you talk to Chris, Styx,"
 8   you know what I mean?
 9        Q.   And at some point, then, do you recall
10   having a call with Gerald Archuleta and him not
11   being too interested in this?
12        A.   Yeah, I did.  This could be that.  But I
13   think this is when I was talking about Chris,
14   though.
15        Q.   I think we clear it up down below.  So
16   let's continue playing.
17             (Tape played.)
18        Q.   Okay.  There is reference -- when you
19   said, "Tell him about them things," what are you
20   talking about?
21        A.   The weapons.
22        Q.   And why not just say "weapons or guns" on
23   the phone?
24        A.   That's how we talk.  You know what I mean?
25   Them things, that guy, touch him.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7992

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   82  Page: 7993

1      Q.   And so do you remember using the word

2   "murder" in these conversations?

3      A.   It would probably be unlikely.  I might

4   have, but I wouldn't say, "Let's go murder that

5   guy."  I would say, "Let's go do that," or, "Let's

6   go take care of this," or --

7      Q.   Is it kind of a basic code where you just

8   don't come out and say things directly?

9      A.   Yeah, you don't say stuff like that

10   usually.  If you did, people would start looking at

11   you kind of crazy.

12      Q.   Down below, we'll see where you reference

13   talking to Chris.  What do you remember talking to

14   Chris about?

15      A.   I was supposed to not tell Chris.  But I

16   wanted to make sure he knew what he was getting

17   into.  I told him, "This is what they want me to

18   do."

19           He's like, "Whoa, whoa, whoa, whoa."  At

20   first, he's like, "No, that's stupid.  What do they

21   think?"  And then later on, he was on board with it

22   fully.  I don't know if they talked to him, gave him

23   a pep talk, or what.  At first, he was, "Oh, yeah,

24   no."

25      Q.   Just to be clear, when you first mentioned

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 7994

```
 1    it to Chris Garcia, he initially thinks it's a bad
 2    idea?
 3         A.   Yeah.  He thinks it's pretty stupid.
 4    "You're going to bring a bunch of heat.  Who do
 5    these guys think they are?  We're just going to give
 6    up our lives because they had a rough ride in the
 7    prison for a little while?  We've been doing that
 8    this whole time on their word."
 9         Q.   Then you said at some point it looks like
10    he's on board, but you don't know why or who talked
11    to him; is that fair to say?
12         A.   Yeah.  But he had a whole change of heart.
13    He was offering suggestions.
14         Q.   Let's continue, then.
15              (Tape played.)
16         Q.   So then when you mentioned that you -- up
17    above:  "I tell him -- tell him I didn't tell him
18    nothing like that.  I just told him that I might
19    need some things from him."
20         A.   Weapons.
21         Q.   So once again, you didn't use the term
22    "weapons"?
23         A.   Yeah, I didn't.
24         Q.   Let's continue.
25              (Tape played.)
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   84   Page: 7995

```
 1      Q.   Okay.  So are you clarifying now that
 2   you're trying -- you're at least communicating to
 3   Eric Duran and Mr. Baca that you're really not
 4   telling Chris Garcia too much at that time?
 5      A.   It's between me and them and the FBI, I
 6   guess.
 7      Q.   Was that actually true, or had you already
 8   had a conversation with Chris?
 9      A.   I'd already told Chris what was going on.
10      Q.   And earlier, there's -- Mr. Baca talks
11   about giving him call to try to get it as soon as
12   possible.  Do you remember what that was?
13      A.   Talking about the weapon.
14      Q.   About the weapon?
15      A.   Yeah.
16      Q.   Let's continue, please.
17           (Tape played.)
18      Q.   Okay.  What are the tools that you need?
19      A.   The weapons.
20      Q.   And what are you referring to when people
21   disappear?
22      A.   They usually leave a weapon with somebody.
23   Because you don't want it on you, so you get
24   somebody to hold onto it.  Sometimes they'll sell
25   it.  Sometimes they'll lose it.  They have a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7995

```
 1   tendency to disappear.  But sometimes, if you're in

 2   this kind of lifestyle, you want to have access to a

 3   few weapons, so you spread them out.

 4        Q.   Then is there a discussion here about

 5   getting something from Chris Garcia?

 6        A.   Yeah.

 7        Q.   Let's continue, please.

 8             (Tape played.)

 9        Q.   Okay.  What's the discussion here about

10   nobody doing anything, and it's just going to be a

11   theory?

12        A.   I'm telling them, you have to know that if

13   something happens to one of them guys, there's going

14   to be big consequences coming down.  Something bad

15   is going to happen to us or whoever they think is

16   responsible.

17             And he's telling me, no, not as long as

18   nobody knows nothing; that it's just going to be a

19   theory; that they're not going to be able to figure

20   it out, so it's just going to go away.

21        Q.   Let's continue, please.

22             (Tape played.)

23        Q.   Up above you said, "Let's make it worth

24   our while."  What do you mean when you say, "Let's

25   make it worth it," basically?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I'm playing along at this point.  I'm
 2   saying, "If you're going to do it, go big or stay
 3   home.  Barney Rubble doesn't make these decisions."
 4        Q.   Who is Barney Rubble again?
 5        A.   Adam Vigil.
 6        Q.   So did you think -- were you putting it to
 7   him that someone at Adam Vigil's level isn't worth
 8   killing, so you might as well go big?
 9        A.   Yeah.
10        Q.   Okay.  Let's continue.
11             (Tape played.)
12        Q.   Okay.  What's the complaint here by Mr.
13   Baca?
14        A.   They are doing foul stuff, mostly because
15   they sent him out of state.  What it's saying is
16   that they're putting jackets, rat jackets, on all
17   the brothers, but nobody heard about a rat jacket on
18   me.
19        Q.   What happens when you put a rat jacket on
20   somebody?
21        A.   You're greenlighted.  There is a hit on
22   you.
23        Q.   Is Mr. Baca blaming the administration for
24   that?
25        A.   Yeah.  Actually, what I'm thinking is,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7997

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 7998

```
 1   maybe they're trying to put a jacket on him.  Maybe

 2   that's why he's so concerned about it now.

 3        Q.   Let's continue.

 4             (Tape played.)

 5        Q.   Okay.  "Either one" refers to who?

 6        A.   At this point it's Santistevan and Adam

 7   Vigil.  It gets to the point I don't even care which

 8   one.  Just kill one of them.

 9             (Tape played.)

10        Q.   Who would be the top one?

11        A.   Top one would be, I believe, Gregg

12   Marcantel.

13        Q.   And is that supposed to be Barney Lobo or

14   Barney Rubble?

15        A.   Barney Rubble.

16        Q.   Okay.

17             (Tape played.)

18        Q.   One of them needs to get out of the way.

19   What does that mean, to get out of the way?

20        A.   We need to kill one of them.

21        Q.   And you say, "I think the higher-up one is

22   better."  Who are you referring to?

23        A.   Marcantel.

24        Q.   And does Mr. Baca seem to have any problem

25   with that?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 7998

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7999

```
 1        A.    No.  He says, "That one, too.  Fuck it.
 2   All of them.  Whatever."
 3        Q.    Let's continue, please.
 4              (Tape played.)
 5        Q.    What's your understanding about this talk
 6   of a visit?  "It's not a good idea to visit right
 7   here."
 8        A.    I think it either means -- it's not a good
 9   idea to do it there or to go there looking for them.
10        Q.    And what's the talk about searching the
11   computer that was up above?
12        A.    He thinks that if you get on Google and
13   you type in the Secretary of Corrections, it's going
14   to give you the schedule and his address and what
15   he's got planned for the day.
16        Q.    Okay.  Let's continue.
17              (Tape played.)
18        Q.    So this is the part of the discussion
19   you're talking about finding people on the computer?
20        A.    Yes.
21        Q.    And do you know who Mr. Baca is referring
22   to when he says the Big Old Negrote?
23        A.    The big black man?  I don't know his name.
24   He's Deputy Secretary of Adult Prisons, or something
25   like that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8000

```
 1        Q.    And earlier -- and you may see it
 2   throughout -- but Mr. Baca uses the term pedo.
 3   What's a pedo?
 4        A.    Commotion, making a problem.
 5        Q.    What does it literally mean in Spanish?
 6        A.    It means a fart, I believe.
 7        Q.    But in that case it basically means a
 8   problem or a commotion?
 9        A.    Yeah.  If you say, "That guy is making a
10   pedo," he's making problems.  If you say, "There's
11   all kinds of pedo outside," that means all kinds of
12   commotion outside.
13        Q.    Let's continue then.
14              (Tape played).
15        Q.    What are you referring to when you say
16   they have a convention once a year?
17        A.    I'm just pretty much making up stuff.
18   Maybe I could find him here, you know what I mean,
19   maybe I could find him there.  I think he's
20   referring to the budget, where they're getting their
21   money, their job provisions.  I think that's what
22   we're talking about.  Look over there where they're
23   going to have their meetings about their budget and
24   stuff.
25        Q.    Let's continue.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8000

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8001

```
 1              (Tape played.)

 2       Q.    Just so we understand the players on the

 3  recording here, when it says "Montoya," does that

 4  refer to you?

 5       A.    Yeah.

 6       Q.    And when you see "Pup," does that refer to

 7  Mr. Baca?

 8       A.    Yes.

 9       Q.    And "CHS."  Is that a confidential human

10  source, who was Eric Duran?

11       A.    I believe so.

12       Q.    Just so we know who the players are.

13       A.    Yes.

14       Q.    What are you trying to do here when you

15  say, "Watch, hold on"?

16       A.    I think somebody came up to my car or

17  something.  I didn't want to talk in front of them,

18  so I rolled down the window.  I think you can hear

19  it.

20       Q.    Let's continue.

21              (Tape played.)

22       Q.    Do you know who he's referring to when he

23  says, "He don't need to ask questions"?

24       A.    Talking about Chris, and go pick up the

25  gun.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8001

1    Q.   So he just needs to know that and that's

2    all?  Just get the gun and don't ask questions?

3    A.   He needs to know that you need it.  That's

4    pretty much what he's saying.  You don't need to

5    know.  You don't want to know.

6    Q.   Let's continue.

7         (Tape played.)

8    Q.   Okay.  Eric Duran says, "He was waiting

9    anyways, because he was waiting to see if you told

10   him you had those or not"?

11   A.   Weapons.

12   Q.   Okay.  And so are they waiting to hear

13   back from you before they call Chris?

14   A.   Yeah.  That's what all these conversations

15   are about, pretty much, is getting the weapons.

16   Q.   Okay.  So in other words, if you have the

17   weapons, is there any need to call Chris?

18   A.   Not for them, no.

19   Q.   Let's continue, please.

20        (Tape played.)

21   Q.   Okay.  So what is your belief about Mr.

22   Baca's knowledge of the internet and how easy it is

23   to find things?

24        MR. LOWRY:  Your Honor, can I object to

25   his beliefs --



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8002

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8003

```
 1              THE COURT:  Well, lay some foundation for

 2   this question.

 3              MR. CASTELLANO:  Sure.

 4   BY MR. CASTELLANO:

 5       Q.   You're having a conversation with Mr. Baca

 6   and he's telling you to do certain things; is that

 7   correct?

 8       A.   Yeah.

 9       Q.   And some of those things include the use

10   of the internet and Google?

11       A.   Yeah.

12       Q.   And did some of those requests seem

13   realistic to you, from what you know about the

14   internet?

15       A.   No, it's not realistic, because it's not

16   going to give me the Secretary of Corrections'

17   address or tell me his route to work or anything

18   like that.  My belief is that he thinks that if I

19   enter his name, it's going to tell me everything I

20   need to know to go track him and kill him.  I'm

21   telling him, "If you have Google on that phone that

22   you have right there, Google his name and tell me

23   what you find."

24       Q.   So based on this conversation, what is

25   your belief about Mr. Baca's knowledge of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8003

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   93   Page: 8004

```
 1  internet and what you can find?
 2       A.   I think he's living in the stone age, or I
 3  think he thinks everything is there, and it's not.
 4       Q.   Let's continue.
 5            (Tape played.)
 6       Q.   What's your question to Mr. Duran, when
 7  you say, "Hey, you can't send the phone to the
 8  brother, Crazo"?
 9       A.   Yeah, I'm telling him if he could get the
10  phone so he could look at this stuff for himself,
11  or --
12       Q.   Are you saying if Duran can get the phone
13  to Mr. Baca --
14       A.   Yeah.
15       Q.   -- so he can see this stuff?
16       A.   Yeah.
17       Q.   Let's continue then.
18            (Tape played.)
19       Q.   Two things.  There's a discussion about
20  calling Chris up above to get a piece and all that.
21  What does that mean?
22       A.   Still the same conversation, to get the
23  weapon.
24       Q.   And when you say you can't just -- you can
25  ask the computer how to find the Secretary of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8004

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8005

```
 1   Defense, and it tells you, did you mean to say
 2   Secretary of Corrections, or did you really mean
 3   Secretary of Defense there?
 4        A.   I'm just exaggerating.  I think I
 5   mentioned in there, it isn't going to tell me where
 6   he lives anymore.  Doesn't tell me what cell he's in
 7   or what prison he's in, or tell me he's in prison.
 8   But it doesn't even tell me his address anymore.
 9        Q.   You can't just put information in and it
10   magically appears on your computer.
11             Let's continue.
12             (Tape played.)
13        Q.   Do you know who he's referring to when he
14   says "Jake"?
15        A.   Yeah, Big Jake.
16        Q.   Is that Jake Armijo?
17        A.   Yeah.
18        Q.   In a little bit there will be discussion
19   of someone named Stoner.
20        A.   Yeah.
21        Q.   Do you know who that person is?
22        A.   Yeah.
23        Q.   Who is that person?
24        A.   I don't know his real name.
25        Q.   But you know who that person is?  You
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8005

 1    don't know his real name?

 2         A.    No.

 3         Q.    Is it common, when you talk on the phone,

 4    for people to ask what the brothers are doing on the

 5    streets?

 6         A.    I didn't really talk to a lot of people on

 7    the phone from prison.  I would talk to them when I

 8    lived there.  Like I said, at this point I distanced

 9    myself a lot.  I talked to some of the brothers, but

10    they were also my friends before this, and they

11    would be my friends probably after.  So those are

12    the people I talked to.

13              Other than that, I did my own thing.  I

14    distanced myself as much as I could.

15         Q.    In a little bit, there's also going to be

16    a discussion about someone named Chuco or Mandel.

17         A.    Yeah.

18         Q.    Who is that?

19         A.    That's another brother.

20         Q.    What's Mandel's name?

21         A.    Mandel Parker, Chuco.

22         Q.    At some point we might hear some

23    recordings, but did Mandel Parker somehow get

24    involved with this scheme?

25         A.    Yeah.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   How did that happen?

 2        A.   I asked him if he -- Pup told me, "If you

 3   want to take somebody else, you pick them.  It's up

 4   to you.  You're responsible."

 5             I asked Mandel if he wanted to participate

 6   and put him on the phone with Pup, I believe, or

 7   tried to get him on the phone with him.  Mandel's

 8   girlfriend thought he was talking to some chick on

 9   the phone, talking to some girl, so she kept on

10   coming out there and getting mad at him, so he got

11   out.

12        Q.   What was your explanation to Mandel Parker

13   about what was going on?

14        A.   I told him, "They want us to hit the

15   Secretary of Corrections, and in exchange for

16   that" --

17             MR. LOWRY:  Your Honor, there has not been

18   one word about the Secretary of Corrections on this

19   tape, and he keeps bringing up the Secretary of

20   Corrections.

21             MR. CASTELLANO:  He's actually explaining

22   his conversation to Mandel Parker and how he got

23   involved, Your Honor.

24             THE COURT:  Well, I think that it's

25   closely related, so I'll overrule the objection.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8007

```
 1  BY MR. CASTELLANO:
 2      Q.   Okay.  So tell us about his conversation.
 3  You tell him that you want --
 4      A.   We're supposed to hit somebody in the
 5  Department of Corrections.  And in exchange for
 6  that, we would get this recognition, and he said,
 7  "All right, cool."
 8      Q.   Did you tell Mandel Parker who you were
 9  doing this with?
10      A.   I had to tell him I was talking to Pup,
11  and not on the phone.
12      Q.   And did you mention Chris Garcia's name
13  when you mentioned this to Mandel Parker?
14      A.   Yeah, I told him we were going to get some
15  weapons from Chris, and Mandel had been trying to
16  get in with Chris for a long time because he wanted
17  part of the dope.  So he was down for that, too.  He
18  was game.
19      Q.   So from your conversation with Mandel
20  Parker, did he join this conspiracy with Chris
21  Garcia and Mr. Baca?
22      A.   Yeah.
23      Q.   Okay.  Let's continue.
24           (Tape played.)
25      Q.   You said, just real quickly, "when Jake is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   going to school"?
 2        A.   I had his number.  Yeah, he was going to
 3   school.  And I had his number.  I didn't want to
 4   give it to him.
 5        Q.   Did you know what he was going to school
 6   for?
 7        A.   No.
 8        Q.   And what kind of school was it?
 9        A.   I think it was community college.
10        Q.   Please continue.
11             (Tape played.)
12        Q.   "We're going to holler at Chris right now
13   and get you that"?
14        A.   Right, weapon.
15        Q.   Get you the weapon.
16             And earlier, you talked about brothers
17   being strung out or strung out bad.  What does that
18   mean?
19        A.   Addicted to heroin, just doing bad.
20        Q.   Let's continue.
21             (Tape played.)
22        Q.   Okay, Mr. Montoya, I have another exhibit,
23   Exhibit 334.  We're going to be playing just
24   portions of this recording.  So I'll have you just
25   listen carefully, and we'll have some more questions
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8009

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   99   Page: 8010

 1   about it.  Is this also one of the recordings you

 2   heard prior to your testimony?

 3        A.    Yeah.

 4             MR. CASTELLANO:  Your Honor, at this time,

 5   I move the admission of Government's Exhibit 334.

 6             THE COURT:  There not being any other

 7   argument on this tape, the Court will admit

 8   Government's Exhibit 334.

 9             (Government Exhibit 334 admitted.)

10             MS. JACKS:  Your Honor, may we please have

11   a limiting instruction as to 380 and 334?

12             THE COURT:  Yeah.  These are all

13   conversations of Mr. Baca, so you'll need to only

14   consider the testimony and the evidence against Mr.

15   Baca in deliberating on the charges against him, and

16   you may not consider it as evidence against the

17   other three gentlemen.

18             MR. CASTELLANO:  Your Honor, at this

19   point -- I should have asked earlier -- can we also

20   have the instruction on recordings and transcripts

21   reread to the members of the jury?

22             THE COURT:  Yeah.  Let me see if I can

23   find that quickly.

24             MR. CASTELLANO:  I just want to make sure

25   they know they'll have the recordings but not the



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com

DNM 8010

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8011

100

```
 1   transcripts for the deliberation.
 2           THE COURT:  All right.  During this trial
 3   you have heard sound recordings of certain
 4   conversations.  These conversations were legally
 5   recorded.  They are a proper form of evidence and
 6   may be considered by you as you would any other
 7   evidence.  You were also given transcripts of those
 8   recorded conversations.  Keep in mind that the
 9   transcripts are not evidence; they were given to you
10   only as a guide to help you follow what was being
11   said.  The recordings themselves are the evidence.
12   If you noticed any differences between what you
13   heard on the recordings and what you read in the
14   transcripts, you must rely on what you heard, not
15   what you read.  If you could not hear or understand
16   certain parts of the recordings, you must ignore the
17   transcript as far as those parts are concerned.
18           Why don't we take up playing it after the
19   break?  Let's break now.  And it's a little early
20   for lunch, so why don't we take a 15-minute break
21   and we'll come back, and then we'll take a little
22   bit later lunch today.  All rise.
23           (The jury left the courtroom.)
24           THE COURT:  All right.  We'll be in recess
25   for about 15 minutes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                   (The Court stood in recess.)
 2                   THE COURT:  All right.  We'll go on the
 3      record.  Is there anything we need to discuss before
 4      we bring the jury in, Mr. Castellano?
 5                   MR. CASTELLANO:  Your Honor, I move the
 6      admission of 334.  I just want to make sure it's
 7      been admitted before I played it.  That's all I
 8      have.
 9                   THE COURT:  Yeah, I've got it down 356,
10      380, and 334 have been admitted into evidence.
11                   MR. LOWRY:  Your Honor?
12                   THE COURT:  Mr. Lowry.
13                   MR. LOWRY:  I don't have any objection,
14      but I just want to make a record.  Since we've done
15      the back and forth, obviously the defense teams
16      haven't had time to preview the audios since they've
17      been edited.  I just want to make a record of that.
18      I'm in good faith working with the Government to
19      make sure these things are done correctly, but just
20      in case there is a technical faux pas, I just wanted
21      to reserve that right.
22                   MR. CASTELLANO:  If we can have a couple
23      of minutes, I can show defense counsel this next
24      exhibit has ten clips.  I'm happy to show him the
25      transcript. It might take a couple of minutes.  It's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8012

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8013

```
 1  fine with me.
 2           THE COURT:  Well, does he have a copy of
 3  the transcript?
 4           MR. CASTELLANO:  He does, but not the ten
 5  clips that I'm going to be using from the
 6  transcript.
 7           THE COURT:  All right.  Why don't we make
 8  a copy for him, and he can be looking on while we're
 9  playing it.  Probably there's no problem, so we
10  won't stop for it.  But can you just hand it to
11  Mr. Hammond, Mr. Castellano?
12           MR. CASTELLANO:  Yes, Your Honor.
13           THE COURT:  We'll hand it back to you real
14  quick.  He'll make a real quick copy.
15           All right.  All rise.
16           (The jury entered the courtroom.)
17           THE COURT:  All right.  Mr. Montoya, I'll
18  remind you that you're still under oath.
19           THE WITNESS:  All right.
20           THE COURT:  Mr. Castellano, if you would
21  like to continue your direct examination of Mr.
22  Montoya, you may do so now.
23           MR. CASTELLANO:  Thank you, Your Honor.
24           With the Court's permission, I will begin
25  playing Exhibit 334.  This is a longer exhibit which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8013

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8014

103

1   has been cut into 10 pieces for the jury to hear

2   portions of it.

3            THE COURT:  All right.  You may.

4            MR. CASTELLANO:  I'll begin with the first

5   clip.

6            (Tape played.)

7   BY MR. CASTELLANO:

8       Q.   Okay.  Just to start off here, you

9   mentioned the name Chuco here.  And are you at

10  Chuco's house?  Where is his car?

11      A.   His car is at his girlfriend's house.

12      Q.   You mentioned the name "Chuco" earlier.

13  Is that the person you referred to as Mandel Parker?

14      A.   Yes.

15      Q.   Is Mandel Parker with you at this time?

16      A.   I think I'm at his house.  I don't know if

17  he's in the car with me at this time, but he's in

18  and out, talking to his girlfriend and getting high,

19  running around.

20      Q.   And are you actually helping him fix his

21  vehicle at this point?

22      A.   Yeah, I'm looking at it, seeing what it

23  needs.

24      Q.   Let's continue, please.

25            (Tape played.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8015

104

1    Q.   All right.  "I was trying to get that

2   thing.  You know?"

3    A.   The weapon.

4    Q.   What's your understanding of what that is?

5    A.   The weapon.

6    Q.   Okay.  Let's continue.

7         (Tape played.)

8    Q.   Why are you mentioning a fund raiser for

9   fallen heroes to Mr. Baca?

10    A.   I'm telling him there are a lot of people

11   that are going to be there, especially the people I

12   need to rap to.  That means the people I want to

13   reach out and touch, the COs, law enforcement types,

14   the people he wants.

15    Q.   I think it's pretty clear, but when you

16   say you're going to reach out and you need to rap to

17   them or you're going to reach out and touch them,

18   what are you supposed to be doing?

19    A.   I'm supposed to be murdering one of them.

20         MR. CASTELLANO:  May I have a moment, Your

21   Honor?  I'm going to give this to defense counsel.

22         THE COURT:  All right.

23   BY MR. CASTELLANO

24    Q.   I apologize, Mr. Montoya.  Let's continue.

25         (Tape played.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8016

105

```
 1        Q.   You don't want to rap to anybody there?

 2        A.   Don't want to actually do anything there.

 3        Q.   So you want to locate people at this

 4   place, but not do anything at the location?

 5        A.   Yeah.

 6        Q.   Okay.  And then Mr. Baca responds, "You

 7   don't even wanna show your face"?

 8        A.   Yeah, I don't want to be seen there.  I

 9   don't want nobody to be able to say they seen me

10   there.

11        Q.   Let's continue.

12             (Tape played.)

13        Q.   What does it mean when you say "Washa"?

14        A.   I think he says to somebody, "Look, this

15   is what I'm saying," yeah?  It means, "Pay

16   attention," kind of.

17        Q.   What's the purpose of buying a GPS device

18   at Auto Zone?

19        A.   At this time, I'm making up a scenario

20   that's plausible to him, that I'm going to go with

21   the fallen heroes and put the GPS on somebody's car

22   and follow them to their home or to wherever for the

23   purposes of carrying out the murder.

24        Q.   Let's continue the recording.

25             (Tape played.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8016

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8017

```
 1        Q.   What does it mean when someone says,
 2   "That's ferme" right there?
 3        A.   That means that's good.  "Ferme" means
 4   good.
 5        Q.   Let's continue.
 6             (Tape played.)
 7        Q.   A couple of things.  The first one is,
 8   "You haven't run it down or nothing with your
 9   brother, Chuco."  What are you explaining to Mr.
10   Baca?
11        A.   That I'm going to need help following or
12   tracking or committing this crime, so I'll take
13   Chuco, and he's telling me, "Life is full of risks.
14   Do you want to take a risk with you?"  He's telling
15   me -- referring to Chuco as the risk.
16        Q.   So he just wants to make sure you know
17   what you're doing before you get Chuco involved?
18        A.   Yeah, just somebody that could help.
19        Q.   Now you're indicating that you are going
20   to need two of them.  What are you referring to?
21        A.   Two weapons.
22        Q.   Let's continue.
23             (Tape played.)
24        Q.   When he says, "I'm going to get some feria
25   from him so I can give it to the other dude," do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8017

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8018

107

```
 1   know what he's talking about there?

 2        A.   I think he's talking about the second

 3   weapon.  He had talked earlier about possibly

 4   getting one from one of his cousins, or something

 5   like that, and I think he was saying he's going to

 6   get the money from Chris to get the other weapon

 7   from the other dude.

 8        Q.   Let's continue.

 9             (Tape played.)

10        Q.   Why would you need an emergency fund for

11   afterwards?

12        A.   Just in case of being hunted by law

13   enforcement for this, at least.

14        Q.   Okay.  So in other words, if this scheme

15   goes through, you may have to go on the run?

16        A.   Yeah.

17        Q.   Let's continue, please.

18             (Tape played.)

19        Q.   Okay.  Put what in your hands?  And what

20   does the green light refer to?

21        A.   A mission.  Just leave it up to me and

22   tell me what you want done, and I'll get it done.

23        Q.   What does the green light refer to?

24        A.   Okay.  That's okay.

25        Q.   Let's continue.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8019

108

```
 1                    (Tape played.)
 2         Q.    What are you asking of Mr. Baca here, when
 3    you want to make sure that brothers know it's legit?
 4         A.    I'm asking him to -- all right, so if I
 5    say, "Chuco, Pup wants us to go do this," Chuco can
 6    say, "I want to hear that from Pup."
 7              And I'm telling Pup, "You might have to
 8    tell him."
 9              He's, like, "I will, but I don't really
10    want to.  They should listen to you."
11              Well, I'm like, "Well, they might need
12    your word."
13         Q.    Let's continue.
14              (Tape played.)
15         Q.    And what are you referring to, a request
16    to cosign?
17         A.    Give his word.
18         Q.    I'm going to move to the second clip for
19    you.  Let's begin playing.
20              (Tape played.)
21         Q.    Since I jumped ahead in the recording
22    here, do you know who you're talking about when you
23    talk about --
24         A.    I think I'm talking about JR, Jerry
25    Montoya.  I think I'm asking if he has a good
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8019

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8020

109

```
1   attitude about what's going on.  Is he doing all
2   right?  Is he depressed?  Is he tripping?
3        Q.   What did you know was going on with him at
4   that time?
5        A.   I believe that he was suspected in playing
6   a role in the murder of Javier Molina.
7        Q.   Okay.  Let's continue.
8             (Tape played.)
9        Q.   Do you know who Trigger is?
10       A.   I've heard of the name.  I don't really
11  know him personally.
12       Q.   What are you talking about, bringing
13  brothers closer together?
14       A.   I was asking about JR's attitude, Jerry
15  Montoya's attitude.  Because he was about to get out
16  of prison.  He had just done a lot of time.  I don't
17  know how much.  But they waited until he was about
18  to get out, and then asked him to kill somebody.
19  Not asked him; pretty much he had no choice.  It was
20  either him --
21            MR. LOWRY:  Objection, Your Honor,
22  speculation.
23            THE COURT:  Overruled.
24       A.   So anyway, that's what I was asking him
25  about.  And pretty much Pup saying all them other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8020

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8021

 1   guys that were involved --

 2            MR. LOWRY:  Objection, hearsay, Your

 3   Honor.

 4            THE COURT:  He's about to say what Mr.

 5   Baca said; correct?

 6            MR. CASTELLANO:  It's a statement by a

 7   party opponent, Your Honor.

 8            THE COURT:  All right.

 9       A.   Okay.  So I lost track of what I was

10   saying, because I'm kind of burnt.  Basically --

11            THE COURT:  Why don't you maybe ask him a

12   question, so --

13   BY MR. CASTELLANO

14       Q.   You're having a little discussion about

15   the Molina murder, and the fact that --

16       A.   I didn't think it was right that JR was

17   asked to do that.  That's one of the reasons that I

18   got out of this gang, but -- so that's why I'm

19   asking about him and his attitude.  And later on in

20   this conversation he's saying that all the guys that

21   are involved in that are acting all fucked up.  I

22   take that to mean that these guys are either

23   telling, or they're dropping out of the gang.

24            MR. LOWRY:  Objection --

25            THE COURT:  Hold on.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8021

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8022

```
 1              MR. LOWRY:  -- this is hearsay and
 2    speculation.  He's saying "I think that" --
 3              THE COURT:  Well, I think he can testify
 4    about some of it.
 5              Why don't you lead him through, because
 6    there are some statements that Mr. Lowry may want to
 7    object to and others that he doesn't.  So why don't
 8    you lead him through and get what you want?
 9              MR. CASTELLANO:  He was referring to a
10    statement by Mr. Baca, actually, and what he
11    understood that to mean when he was talking about
12    the other people.
13              THE COURT:  Go ahead and lead him through
14    and get what you want out of him, and then we'll
15    move on.
16    BY MR. CASTELLANO
17         Q.   All right.  So you mentioned a discussion
18    with Mr. Baca about other members from -- other
19    people from the Molina murder.  And what was his
20    reaction to you or his response about what's going
21    on with the other people?
22         A.   On line 22, Pup says, "Yeah, but Trigger
23    is acting all fucked up."
24              I take that to mean that Trigger is
25    telling -- or he's going to the dropout program.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8022

```
 1  Pup goes on to say in line 23 through 25, all the
 2  way down to 1 through 7, I asked him "Why is that?"
 3           He says, "It's no good."
 4           "Yeah, brother.  I hate to see that kind
 5  of -- I hate to see it go down like that.  What
 6  happened to when everybody -- when it would bring
 7  them closer, now all it does is drive them apart.
 8  You know what I mean?"
 9           Pup responds, "Hey."
10           I say, "Hey."
11           Pup said, "All of them mother-fuckers are
12  all over there on that fucking dropout program."  So
13  the dropout program is the RPP Program.
14      Q.    So guys checked out?
15      A.    Checked-in is a prison term.
16      Q.    All right.  Let's turn to the next portion
17  of this larger audio clip.
18           (Tape played.)
19      Q.    Who is Mr. Baca asking you to reach out
20  to?
21      A.    We're talking about Shawn-Shawn, Shawn
22  Ural.
23      Q.    And at this point, is there discussion
24  about trying to kind of reunite SNM and get
25  everybody back in line?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8023

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   113   Page: 8024

1      A.    Yeah.  I'm telling him that Shawn is doing

2   his own thing, and he's trying to distance himself

3   and I have no problem with it, I'm telling him,

4   pretty much.  He doesn't want nothing to do with

5   this.

6      Q.    And you see the discussion about Mr. Baca

7   wanting to establish some type of relationship over

8   again?

9      A.    Yeah, he's trying to use me to get to them

10   to bring them back in and group them back up and try

11   to reestablish some kind of morale.

12      Q.    Let's continue.

13            (Tape played.)

14      Q.    Who is Arturo?

15      A.    Arturo Garcia.

16      Q.    And what was the issue with him?

17      A.    He's using everybody so he can get high,

18   pretty much.

19      Q.    And you referred to different tablas.

20   What is that referring to?

21      A.    What I spoke about earlier.  It went from

22   no leader to we pretty much force people into that

23   position.  All of us said, "Yeah, you're our

24   leader," to Gerry Archuleta, Styx, claiming to be

25   the new leader.  Then after that, different boards,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   different -- whoever had the dope, or whoever had

 2   the charisma to pull a few people together and use

 3   that as a ruling body.

 4        Q.   And did you tell Mr. Baca up top that

 5   Shawn Ural, because of all the politics and

 6   everything, wanted to create distance between

 7   himself and the SNM?

 8        A.   Shawn used to drive around with a cat, a

 9   real live cat in the truck and say, "If I'm going to

10   cruise around with a bunch of pussies, at least this

11   one is not going to tell on me."

12        Q.   That was it?

13        A.   That was it.

14        Q.   All right.  Continue.

15             (Tape played.)

16        Q.   Okay.  A few things here.  He talks about

17   not sending clavo.  What is that?

18        A.   Arturo and them -- that's all they cared

19   about.  They sent a message out there that if you

20   don't send some dope, when you come back here, do.

21   Talking about doing what's right with the car.

22   They're not asking for all that.  They're just

23   asking for us to give up our lives and go murder a

24   member of the Department of Corrections and give up

25   our life and our family.  They're not asking for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8026

1  dope at this point.

2         MR. LOWRY:  Objection; it's not responsive

3  to the question.

4         THE COURT:  Overruled.

5  BY MR. CASTELLANO

6     Q.   When you referred to esquina here, is that

7  the same word as help that you mentioned earlier?

8     A.   Yeah, esquina means backup, help.

9     Q.   And then doing what's right for the

10  ranfla?

11    A.   Ranfla is a slang word for car in Spanish.

12  The car refers to the gang, the SNM; our car.

13    Q.   So your car refers to your gang?

14    A.   Yes.

15    Q.   Let me draw your attention to the next

16  portion, the next clip.  Let's begin playing.

17         (Tape played.)

18    Q.   So when he refers to you helping out the

19  carnal Chuco, remind us what you're doing with Chuco

20  right there.

21    A.   I'm helping him fix his car.  I haven't

22  agreed with all those statements.  It's just not

23  like that.  Nobody else does it.

24    Q.   Okay.  So it's a nice idea, but when it

25  comes to the way it really works, does it really

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8027

```
 1   work out that way?
 2        A.   This is just a bunch of manipulation,
 3   trying to get me all patriotic about this gang; that
 4   way, I can go kill somebody for him.
 5        Q.   Let's continue.
 6             (Tape played.)
 7        Q.   Okay, you've got a hater in the group, and
 8   they need be handled.  How are you supposed to
 9   handle that person?
10        A.   Well, there is only one punishment for
11   brothers, is death.
12        Q.   So if people are causing problems in the
13   gang, then they have to be dealt with?
14        A.   Yeah.
15        Q.   Let's continue.
16             (Tape played.)
17        Q.   What does it mean when you say, "Si me
18   entiendes"?
19        A.   "Do you understand me?"
20        Q.   What's this talk about little homies and
21   these 14-, 15-, 16-year-olds?
22        A.   Wants me to start trying to recruit them
23   when they're young, bring them, make them look up to
24   me.  That way, when they do get to the prison,
25   they're already leaning towards the SNM.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8027

```
 1        Q.   Was that kind of your experience, too,
 2   when you were younger?
 3        A.   Yeah?
 4        Q.   Let's continue.
 5             (Tape played.)
 6        Q.   What is respeto?
 7        A.   Respect.
 8        Q.   And when jale needs to be done, what's
 9   jale?
10        A.   Work.
11        Q.   Let's continue.
12             (Tape played.)
13        Q.   "Look out for," is that word "pisto"?
14        A.   He's saying buy them liquor, pretty much
15   lead them down the wrong path, pretty much get them
16   strung out, teach them how to do stuff.  Keep them
17   looking up to you, keep them coming to you.
18        Q.   At this point, this also means recruiting
19   people into the gang?
20        A.   Pretty much telling, yeah.
21        Q.   Okay.  Let's move to the next clip.  Let's
22   begin.
23             (Tape played.)
24        Q.   Who is Weasel, if you know Weasel's name?
25        A.   Ben Sandoval.  He's a friend of mine since
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8028

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8029

```
 1    the boys' school.
 2         Q.    What was his name?
 3         A.    Ben Sandoval.
 4         Q.    Was he an SNM member also?
 5         A.    Yes.
 6         Q.    And once again, are you supposed to be
 7    reaching out to him and bringing everybody back
 8    together?
 9         A.    Yeah.  What I understand is, he wants me
10    to try to organize out there again, try to, like I
11    said, bring people back under the control.
12    Everybody has had it; everybody is done; everybody
13    is trying to get away from all this.
14         Q.    And down below we'll see a reference to
15    Shawn-Shawn.  Is that the same Shawn Ural you
16    referred to earlier?
17         A.    There is only one Shawn-Shawn.  There are
18    a few Dreamers and a few other nicknames, but
19    Shawn-Shawn is kind of unique.
20         Q.    When we hear the name Arturo, is that the
21    same Arturo you told us about earlier?
22         A.    Yeah.
23         Q.    Let's continue.
24               (Tape played.)
25         Q.    A few things here.  When he talks about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8029

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8030
119

```
 1   getting Shawn-Shawn off whatever viajes he's on,

 2   what does that mean?

 3       A.   He's talking about the mentality that all

 4   of us have, just trying to get away.  And whatever

 5   trip his mind is on, try to get him out of that, and

 6   try to bring him back.

 7       Q.   What's the need to find out who is who

 8   when you're talking to brothers out there?

 9       A.   He means this dropout program is actually

10   helping us, because it's thinning out the herd,

11   getting rid of the weak ones, and we don't have to

12   kill them.  They're getting them for us.

13       Q.   At this point, you mentioned starting

14   over.  Is this before the indictments came down in

15   December of 2015?

16       A.   Yes.

17       Q.   And the topic of reorganization?

18       A.   Yeah.

19       Q.   Let's move to the next clip.

20            (Tape played.)

21       Q.   Okay.  What does it mean to school

22   somebody right?

23       A.   Teach them the right rules and teach them

24   how to carry themselves like a brother.

25       Q.   "And if he doesn't do it, he's going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8031

1   get touched."  What does that mean?

2        A.   That means he's going to get killed.

3        Q.   Let's continue.

4             (Tape played.)

5        Q.   Okay.  So are you saying here basically,

6   "We had rules before.  We just need to enforce the

7   ones that were in place"?

8        A.   Yes.

9        Q.   And earlier you were talking about the

10  paralegal paperwork and I said, "We'll get to it

11  later."  Is this what you were referring to about

12  making allegations against other SNM members without

13  paperwork?

14       A.   When I got into this gang and stuff like

15  that, it was honor among thieves, I guess is what

16  you would call it.  Not only amongst us; it was

17  among convicts in general.  If you called another

18  convict a rat, no matter who you are, you had, like,

19  a week, or in some cases less, to come up with that

20  paperwork and prove him to be a snitch.  If not,

21  then you would get hit.

22            And it wasn't like that no more.  And then

23  you can have paperwork on somebody, as long as he

24  has dope and he's good.  And a guy that has the dope

25  could call somebody else a rat and not have a shred

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8032

```
 1   of paperwork and get him killed, you know?  So
 2   that's not my ideal environment.
 3        Q.   Let's continue.
 4             (Tape played.)
 5        Q.   Is that what you're referring to, the way
 6   it should be?
 7        A.   That's the way I would expect it to go
 8   when I got into this game.  I was a true believe in
 9   this stuff, and it turned into all this other stuff.
10   But yes, that's what I was talking about.
11        Q.   All right.  Let's turn to the next clip.
12             (Tape played.)
13        Q.   All right.  There are a number of things
14   here.  When it refers to the jura, who are the
15   juras?
16        A.   They are the law enforcement, police, or
17   COs.
18        Q.   I'm underlining here J-U-R-A in the
19   transcript.  Is that what the jura is, refers to the
20   corrections officers?
21        A.   Yeah.
22        Q.   And what's Mr. Baca's complaint about
23   STIU?
24        A.   That's his kind of MO.  He gets you all
25   patriotic about the gang, and then he turns it to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8032

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8033

```
 1   what he wants out of this.  "Yeah, yeah, that's the
 2   way it should be.  But look, we want these killed."
 3        Q.   Is he expressing his dislike for the STIU
 4   here?
 5        A.   Yeah.
 6        Q.   And when he refers to "creating wedges
 7   between us --"
 8        A.   Causing problems, trying to break up the
 9   gang, try to turn us on each other.
10        Q.   And you respond by referring to divide and
11   conquer?
12        A.   Yeah.
13        Q.   It's the same thing?  Let's go ahead and
14   turn to the next portion.  Let's begin.
15             (Tape played.)
16        Q.   What does it mean to cross brothers out?
17        A.   Give them a bad name or take them out.
18        Q.   And then what's the problem with the
19   rumors that's being discussed here?
20        A.   We're still talking about the same stuff,
21   people are dying off of rumors.  And people that
22   started the rumors are sitting right there doing
23   whatever they've got to do for dope and manipulating
24   people into doing other things for them, and that's
25   it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   123   Page: 8034

```
 1      Q.    Okay.  Let's begin the next clip.

 2            (Tape played.)

 3      Q.    So this is a continuation of the

 4  discussion about taking care of the members who were

 5  causing problems?

 6      A.    Yeah.

 7      Q.    Let's turn to the last clip from this

 8  audio and let's begin.

 9            (Tape played.)

10      Q.    Okay.  You don't want your name all over

11  in there.  What are you talking about?

12      A.    I never gave information the whole time I

13  was in prison to STIU, to anybody, acting as an

14  informant for anything.  But I was all slammed down

15  all the time for confidential information, or

16  because there is a hit on me, or something.  And

17  that's what I was talking about.  I was telling him,

18  I don't want my name -- you tell anybody my name,

19  because if you tell anybody my name, then there goes

20  my name to STIU, and then I'm a snitch and I'm an

21  informant and anything else.  So just keep my name

22  out of the conversation.  That's what I'm asking him

23  to do.

24      Q.    When he talks about you guys speaking on

25  the down-low right now --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8034

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8035

124

```
 1         A.   That's just between me and him.

 2         Q.   So you don't want any of this information

 3   getting out.

 4         A.   Yes.

 5         Q.   Let's continue.

 6              (Tape played.)

 7         Q.   Earlier you said you were going to send

 8   pictures to Eric Duran.  Did you actually send him

 9   some?

10         A.   Yes.

11         Q.   Were you verifying whether or not Mr. Baca

12   also sought pictures?

13         A.   I was trying to lighten up the

14   conversation, turn it into a joke.  I think I said,

15   "If you see something like that, it would probably

16   give you a stroke."

17         Q.   At this time I'm going to move to another

18   recording, Mr. Montoya.  This is Government's

19   Exhibit 394.  I'm only going to play a portion of

20   this recording.

21              MR. CASTELLANO:  At this time, Your Honor,

22   I move the admission of Government's Exhibit 394?

23              THE COURT:  394?

24              MR. CASTELLANO:  Yes.

25              THE COURT:  Any other discussion on that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8035

```
 1   Not hearing any, then Government's Exhibit 394 will
 2   be admitted into evidence.
 3            (Government Exhibit 394 admitted.)
 4            MS. JACKS:  And, Your Honor, again, we ask
 5   for a limiting instruction.
 6            THE COURT:  And these are continuing to be
 7   discussions with Mr. Baca, so you're only to
 8   consider these in your deliberations, this testimony
 9   and this evidence, in conjunction with your
10   deliberation of the charges against Mr. Baca, not
11   against the other three defendants.
12            MR. LOWRY:  Your Honor, may I have a quick
13   word with Mr. Castellano?
14            THE COURT:  You may.
15   BY MR. CASTELLANO:
16       Q.  We're going to play just one portion of
17   this audio.  Once again, is this an audio that was
18   captured from the wiretap on your phone?
19       A.  So far, it has been.
20       Q.  Okay.  So at this point I'm going to play
21   for you one portion of Government's Exhibit 394 and
22   let's begin.
23            (Tape played.)
24       Q.  Okay.  Now, in the transcript there is the
25   name Garcia as the person who has just spoken.  Who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8036

```
 1    is that person?
 2         A.   That's Chris Garcia.
 3         Q.   So at this point, how are you talking to
 4    Mr. Garcia, if you remember?
 5         A.   I'm talking to him face to face, I think.
 6         Q.   Now, why are you discussing
 7    Mr. Santistevan and Mr. Marcantel here with him?
 8         A.   Chris is -- like I said earlier, at this
 9    point, he's, like, "What are they thinking?  They're
10    being kind of stupid.  They're in the Violent
11    Predatory Program.  What's next?  The Violent
12    Violent Predatory Program?  It's going to keep on
13    going."
14              And then when Pup told him it was
15    Santistevan that he was suggesting, Chris told Pup
16    that Santistevan didn't have the authority to send
17    him to a federal prison or send him out of state.
18    It had to be someone higher up.  It had to be
19    Marcantel or one of them guys.
20         Q.   Let's continue.
21              (Tape played.)
22         Q.   Okay.  Now, earlier, in another
23    conversation with Mr. Baca, you talked about "If
24    we're going to do this, do it big."
25              Are you referring to that conversation now
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8037

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   127   Page: 8038

```
 1    with Mr. Garcia?
 2         A.   Yes.
 3         Q.   And you got mentioned here once again
 4    Barney Rubble.  Who is that?
 5         A.   Adam Vigil.
 6         Q.   What's your suggestion about whether or
 7    not you guys should be focusing on Adam Vigil as
 8    somebody to be murdered?
 9         A.   He might be -- like in that one prison, he
10    might be one of the higher-ups, even a manager, part
11    of administration.  But in the Department of
12    Corrections, he's really not making the decisions
13    outside of that unit.  He's not deciding who goes to
14    what state.  He's not getting them shipped out.
15    He's not doing that.
16         Q.   Okay.  Let's continue.
17              (Tape played.)
18         Q.   Do you remember who LJ was?
19         A.   He was Leonard Jaramillo, I believe was
20    his name.  He was a regular CO.  When I got to
21    prison, he moved up to STIU, and then he was
22    eventually the warden.  And I think he got fired for
23    sexual harassment or something like that.
24         Q.   And who was the discussion of the other
25    person, either Carlos Valdez or Vigil?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8038

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   128   Page: 8039

```
 1        A.   Adam Vigil was the lieutenant when we came

 2   to prison.  Carlos was the regular CO and moved up

 3   to that position -- I think he was the unit manager

 4   also.

 5        Q.   This recording does sound different, so

 6   you think you were speaking face-to-face with

 7   Mr. Garcia on this?

 8        A.   Yeah, I was face-to-face.

 9        Q.   And did you have a different type of

10   recording device to record this conversation?

11        A.   Yeah.

12        Q.   Was that provided by the FBI?

13        A.   Yes.

14        Q.   Okay.  Now, eventually, at some point, as

15   you referenced earlier, did Mr. Garcia agree to

16   become part of this conspiracy against Mr.

17   Marcantel?

18        A.   Yeah, he gave me a lot of advice about it.

19   He told me he actually seen him at the Red Ball Cafe

20   in Barelas, in Albuquerque.  He told me I should go

21   to the barber shop and pick up a few hair samples

22   and rub them on the gun and stuff like that.

23        Q.   Why would you get hair samples and put

24   them on the gun?

25        A.   DNA, to misdirect the investigation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8039

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8040

129

```
 1         Q.   And as a result of his agreement, then,
 2    did he also provide you a gun for the purpose of
 3    murdering Gregg Marcantel?
 4         A.   Yeah, he gave me a .22 automatic pistol
 5    without a clip.  A handful of bullets, I think.
 6         Q.   On this occasion, do you remember this
 7    being November 29 of 2015?
 8         A.   Sounds about right.  But I couldn't swear
 9    that that was the date.
10         Q.   And if you recall, do you remember if this
11    was close in time to when everybody was arrested in
12    this case?
13         A.   Yeah, it was all within a couple-month
14    period that all these conversations took place.  And
15    the arrests were made and I left.
16         Q.   And do you pick up the weapon from Chris
17    Garcia's house?  Where do you meet him to get the
18    pistol?
19         A.   I got it at Chris' house.
20         Q.   And in terms of the operation that day,
21    what did you do beforehand?  Did you meet with law
22    enforcement?  Did you go there on your own?  What
23    happened?
24         A.   I met with law enforcement at -- I think
25    it was a Victory Outreach Church or Legacy Church.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8040

1   It used to be called Victory Outreach in

2   Albuquerque.  And from there they searched me, gave

3   me the recording device, and send me on my way.  I

4   drove to Chris' house.  He talks about -- sat there

5   with him, got the weapon, kept telling me about this

6   nice shotgun he had.  He wouldn't give it to me.  He

7   gave me a .22.

8        Q.   And at this point in the investigation,

9   who was now on board to murder Gregg Marcantel?  Who

10  else have you talked to about following through with

11  this plan?

12       A.   Me and Chuco and Pup, Chris.  I guess

13  Crazo, but he was on the other side of the

14  investigation.  He was on you guys' side.  And as

15  far as I knew, that was it.  But I assume that he

16  had talked to other people about it.

17       Q.   And so from meeting with law enforcement,

18  do you then drive to Christopher Garcia's house?

19       A.   Yeah.  I stay there, talk to him for a

20  while.  He gives me the gun and keeps telling me

21  about -- he's kind of nervous, kind of paranoid,

22  telling me that the person who lives kitty-corner

23  from him is a sheriff, and the cars come down the

24  road all the time, and stuff like that.

25            But he finally gives me the weapon and I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8041

```
 1   leave.  And I see the officers pass by his house a

 2   few times.  I got kind of nervous about it,

 3   actually.  I even mentioned it to Chris, "Who is

 4   that?  Who is in that car?" or whatever.  I get the

 5   weapon, I leave.

 6             And I don't think I met back at the

 7   church.  I think they wanted me to pull over pretty

 8   much immediately, as soon as I could find a safe

 9   place, and I was trying to get further away from

10   Chris' house.  I eventually pulled over, and I think

11   it was an alley off of 98th Street, I think, maybe,

12   or Unser.  So I pulled into the alley and they

13   searched me.  They didn't let me touch anything.

14   Pulled the weapon out of my pocket, asked me where

15   it was, got it, got the recording device, got

16   everything off me, searched me, and let me go.

17        Q.   Okay.  And was this interaction with

18   Mr. Garcia recorded?

19        A.   Yes.

20             MR. CASTELLANO:  I'm going to go ahead and

21   at this time, Your Honor, I move the admission of

22   Government's Exhibit 396.

23             THE COURT:  All right.  Any other

24   discussion on that?  The Court will admit

25   Government's Exhibit 396.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8042

```
 1              (Government Exhibit 396 admitted.)

 2              MR. CASTELLANO:  Your Honor, this

 3   recording is broken up into two separate recordings,

 4   two separate clippings.  Let's begin with the first.

 5              (Tape played.)

 6   BY MR. CASTELLANO

 7        Q.    What kind of dog is this, for starters?

 8        A.    A little, tiny Pomeranian.

 9        Q.    Sounds like an ankle-biter.

10        A.    Yeah, I used to make a joke.  I used to

11   tell him, "You look like Dr. Evil driving around

12   with a Pomeranian."  He used to drive around with a

13   dog, too.

14        Q.    Pretty early on in this discussion, he's

15   asking you about -- "it shoots .22 long rifle in

16   there."  What is he referring to, and what is he

17   doing at this time?

18        A.    I don't know if he's actually pulled it

19   out at this point, but at one point he does pull it

20   out.  He's talking about the weapon.  It's a .22

21   long rifle, like I said, without a clip.  He pulls

22   it out, pulls the slide back, and tells me where the

23   bullet goes, as if I didn't know.  Tells me, "You

24   put the bullet in there, you shoot, and don't worry;

25   it will kill somebody."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8044

```
 1              And at this time, I'm thinking, You're
 2   really going to send me against Gregg Marcantel with
 3   a .22 long rifle without a clip?
 4       Q.   Let's continue.
 5            (Tape played.)
 6       A.   He has it out at this point.  That's the
 7   slide.
 8       Q.   Okay.
 9            (Tape played.)
10       Q.   Okay.  So do you know what he's referring
11   to when he says, "You can get a clip for it as
12   well"?
13       A.   He's telling me to order one.
14            MR. CASTELLANO:  And may I approach, Your
15   Honor?
16            THE COURT:  You may.
17   BY MR. CASTELLANO
18       Q.   Mr. Montoya, I'm going to show you briefly
19   Government's Exhibit 278.  I'm going to put it here
20   on the screen.  Does that look familiar to you, if
21   you remember?
22       A.   Yeah.  Yeah.
23       Q.   What does it look like?
24       A.   Like a .22 pistol without a clip.
25       Q.   Now, I'm going to show the underside of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8044

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8045

1  this weapon here.  Can you see where my finger is,

2  where it's hollow?

3       A.   Yes.

4       Q.   So for those who are less familiar with

5  firearms, what belongs in this hollow space?

6       A.   The clip.

7       Q.   And what goes inside of the clip or the

8  magazine?

9       A.   The ammunition.

10      Q.   So once you put a magazine and you insert

11  it into the bottom here, does that allow you to fire

12  more than just one round of ammunition?

13      A.   That's an automatic pistol.  That's why

14  it's called an automatic.  You put the clip in the

15  bottom, slide it back, it chambers the first round.

16  After that, it's on automatic.  It chambers the next

17  round automatically with the recoil of the last

18  round.

19      Q.   Is it designed, then, to fire a bullet

20  every time you pull the trigger after that?

21      A.   Until you run out.

22      Q.   Okay, and so then for this to work, you

23  would either have to kill Mr. Marcantel with one

24  shot or get a magazine to get additional rounds of

25  ammunition; is that correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8045

```
 1        A.   Or carry a pocketful of bullets and put
 2   them in one at a time.
 3        Q.   Okay.  Let's continue with the recording
 4   please.
 5             (Tape played.)
 6        Q.   Let me stop you there.  Okay, what is he
 7   asking you when he says, "Who's the one going?"
 8        A.   Chris is asking me, Who is going to go
 9   with you, or do this?  Are you just doing it or
10   who's going with you?"
11             This is where he's giving me all kinds of
12   advice that I should kill my so-called brother
13   afterward, based upon the suspicion that he might
14   tell.
15        Q.   And who is Chuco?
16        A.   Mandel Parker.
17        Q.   And what's the concern about Mandel
18   Parker?
19        A.   Like I said, just on the off-chance that
20   he might tell, just kill him.  Don't take that
21   chance.  That's my brother.
22        Q.   That was a directive from Chris Garcia to
23   you?
24        A.   Yeah.
25        Q.   Let's continue.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8046

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8047

136

```
 1              (Tape played.)
 2      Q.    Okay.  So now this conversation looks like
 3  it's focused on Marcantel.  Do you know who the
 4  Myers is who is referenced here?
 5      A.    I think he's the deputy secretary.
 6      Q.    And is Gregg Marcantel -- is he a big guy,
 7  as far as you know?
 8      A.    Yeah, he's a pretty big guy.
 9      Q.    Let's continue with the recording.
10              (Tape played.)
11      Q.    Did he actually live at River's Edge 3?
12      A.    I don't remember.
13      Q.    So you're just saying you knew where to
14  locate him?
15      A.    Yeah.
16      Q.    So you could shoot him?
17      A.    Yeah.  I was just coming up with scenarios
18  in my head like I actually did the legwork, I
19  actually found these people and I had actually
20  planned it out.  I'm just telling him stories.
21      Q.    So at some point when he's walking his
22  dog, that would be a good chance to shoot him, out
23  in the bosque?
24      A.    Right by the river.
25      Q.    We're going to get to it here in a bit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8047

137

```
 1   "If Chuco doesn't do" -- "I'm going to put one" --
 2   "if he starts" -- what would you be talking about
 3   there?
 4       A.   Okay.  When they send somebody on a
 5   mission in prison, or whatever, give the person the
 6   weapon and tell them, "You're doing it."  And they
 7   wouldn't tell him beforehand.  They would tell him
 8   right when it's going to happen.  And they would
 9   also have somebody else there for a backup plan, in
10   case they get cold feet, hit them.  The purpose was
11   so they wouldn't know nothing to tell anything until
12   it was going down.
13           So I'm just basically playing along with
14   the standard operating procedure, which is:  If
15   Chuco starts backing out or acting shady, then I'll
16   shoot him.
17       Q.   Let's continue for a little bit longer
18   here.
19           (Tape played.)
20       Q.   Sounds like he says give him a doble
21   reactor?
22       A.   Give him a doble right after.  A doble is
23   a double dose, pretty much.
24       Q.   Who were you supposed to give a double
25   dose to?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8048

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8049

```
 1        A.    Chuco.

 2        Q.    Why?

 3        A.    So he couldn't tell.

 4        Q.    And what would that --

 5        A.    That would kill him.

 6        Q.    And what's this talking about, "or killing

 7   Santistevan," on line 11?

 8        A.    I see the line.  But sometimes Chris talks

 9   and he says things that don't really make sense.

10        Q.    And were you aware that Santistevan was

11   one of the other people who was targeted for murder?

12        A.    Yeah.  But at this point we were talking

13   about Marcantel the whole time.  And then he said

14   Santistevan, or killing Santistevan.  I don't know.

15        Q.    And your response is:  "Give him a double

16   and leave him with everything"?

17        A.    Yeah.

18        Q.    What are you talking about doing there?

19        A.    If Chuco gets cold feet, whatever, give

20   him a doble, do what I had to do.  Leave the gun and

21   everything on Chuco.  That way, it would bring it on

22   him.

23        Q.    Let's continue.

24              (Tape played.)

25        Q.    Up above you say, "He doesn't know who it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8049

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8050

```
 1   is or nothing"?
 2        A.   Chuco.
 3        Q.   Is that true?  Had you actually told Chuco
 4   what the plan was?
 5        A.   He knew what the plan was, but everybody
 6   kept stressing:  Don't tell anybody else.  But they
 7   were telling everybody else, so everybody knew what
 8   was going on.  I didn't tell Chuco anything.  He
 9   didn't know nothing.
10        Q.   That's what you said.  Is that what really
11   happened?
12        A.   No, I told Chuco.
13        Q.   And had Chuco agreed to go along with this
14   plan?
15        A.   Yeah.
16        Q.   Let's continue.
17             (Tape played.)
18        Q.   What's a gauge?
19        A.   A shotgun.
20        Q.   What is he referring to with this bright
21   light?
22        A.   He's saying that the guns that he has are
23   too nice to use for this.  Better that we sacrifice
24   you with a little .22 without a clip.  He's pretty
25   much not saying that, but that's what he's saying.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8050

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8051

1    Q.   That's what's going on through your head;

2    right?

3    A.   That's what's happening.  I have some

4    really nice guns, but -- I'll describe them to you,

5    but I'm not going to give them to you.

6    Q.   Let's continue.

7         (Tape played.)

8    Q.   Okay.  Do you know what Pup is supposed to

9    be waiting for when you say, "Yeah, tell Pup to

10   wait," and then "being down for a tenth" is what

11   Garcia says?

12   A.   He's down for the 10th.  It sounds like a

13   date, like a date or something.  But I don't really

14   remember.

15   Q.   Okay.  Let's continue.

16        (Tape played.)

17   Q.   Do you know what he's talking about here,

18   this box of habits, that's what it says, for 80

19   grand?

20   A.   First, we're talking about Andrew, a guy

21   that's a snitch.  Then I think he's talking about

22   Red.  I don't know his name, Red.  I think he's

23   talking about him getting out and he has money, is

24   what I'm thinking.  But like I said, Chris will talk

25   about one thing, jump to another thing, back and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8052

```
 1   forth.  I'm not really paying too much attention to
 2   all this stuff.  I'm, just, "Yeah, yeah, yeah,
 3   okay."
 4        Q.   Let's continue then.
 5             (Tape played.)
 6        Q.   All right.  There is discussion about
 7   someone being an MMA fighter?
 8        A.   That's Red.
 9        Q.   Do you know who Red is?
10        A.   He's a brother, one of the ones who was
11   involved in this case, I think.  And I think he was
12   supposed to be telling, or taking the rap, or
13   telling, then taking the rap, or something.
14        Q.   Okay.  Let's continue.
15             (Tape played.)
16        Q.   When he says "Let me" -- when you say,
17   "Let me go put this away, carnal," what are you
18   putting away?
19        A.   The weapon.
20        Q.   Okay.  Let's continue, please.
21             (Tape played.)
22        A.   That's Marcantel.
23        Q.   So this discussion of seeing somebody at
24   the Barelas Cafe --
25        A.   He's referring to Marcantel.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8053

1    Q.   And he says, "That's one that's willing to

2    send Pup out of state"?

3    A.   Yeah.

4    Q.   Do you know what the discussion is about

5    here?

6    A.   That's where the decision to send him out

7    of state had to have come from, the Secretary of

8    Corrections or somebody higher.  I think he even

9    said something about, "If it goes to the feds, the

10   decision has to come from Washington."  I don't know

11   if that's true or not.  That's what he said.

12   Q.   And I'm going to ask you, before I play it

13   here, there's a portion of the transcript that talks

14   about, "Those are the three names.  He didn't give a

15   fuck which one.  One of them three."  Do you know

16   what that's talking about?

17   A.   Yeah, he's saying he doesn't care which

18   one of them dudes, he doesn't care if it was this

19   guy.  He just wanted somebody killed, preferably

20   somebody higher up that made the decision to send

21   him out of state.

22   Q.   Once again, before we start, so I can let

23   it run, on lines 14 through 16 there is a discussion

24   of the State and then sending people to the feds?

25   A.   Yeah.  That's what I've been telling you,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8053

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   143   Page: 8054

1  that they were hitting all the brothers now.  You

2  know, it goes to the State.  They send to the

3  feds -- you know what I mean?  He's saying that -- I

4  think the point of that is he's saying that if you

5  do that, you're going to end up in a bad place.

6  That's where he's going with this, saying you're

7  going to end up in a prison.  I think it's all in

8  the same conversation where he talks about being

9  locked up so long, he's going to forget his own

10 name.

11      Q.   Let's continue for a bit then.

12          (Tape played.)

13      Q.   Okay.  Is this the part you were talking

14 about earlier, about getting hair from the barber

15 shop?

16      A.   Yeah, he's saying look for locos, gangster

17 types, and try to get their hair.

18      Q.   Rub it on the crime scene?

19      A.   Rub it on the gun, and leave it at the

20 crime scene for the DNA for later.

21      Q.   Okay.  Let's continue.

22          (Tape played.)

23      Q.   What's this discussion about another

24 shotgun from his brother?

25      A.   He keeps talking about the shotgun.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8054

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8055

```
 1    said, "Give me a shotgun, too."

 2              And he said he had to get it later.  And

 3    I'm trying to get out of there at that point, so

 4    I'm, like, "I'll come back.  I'll come back.  Let me

 5    go get rid of this, go put it away or something."

 6        Q.   Let's continue.

 7              (Tape played.)

 8        Q.   What's this discussion about not talking

 9    on the phone anymore?

10        A.   He's saying that they think it's secure

11    because they're talking on a cellphone and it ain't

12    the prison phone. Pup is saying all they got to do

13    is intercept the signal.  They can park a truck or

14    electric -- electronic device that can capture the

15    signal before it even reaches the tower and hear it

16    before you're even hearing it, basically.

17        Q.   So why the need to quit talking on the

18    phone there?

19        A.   Because it could be being recorded.

20        Q.   Let's continue.

21              (Tape played.)

22        Q.   What's the discussion about tearing him

23    apart and the mattresses off the wall and

24    everything?

25        A.   They're going to shake down the prison.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8056

```
1    They're going to look for every scrap of

2    information.  Look at the investigation they did for

3    Molina.  Imagine what they'll do for this guy.

4    They're going to tear everybody apart.  They're

5    going to shake down everybody.  They're going to hit

6    every connection, and they're going to turn over

7    every stone, looking for information.

8         Q.   The discussion, then, that if this goes

9    down that --

10        A.   Calentura.

11        Q.   They're going to bring the heat.

12             Okay.  Let's bring the next portion, then.

13             (Tape played.)

14        Q.   What is this discussion about regarding

15   Chuco?

16        A.   You don't take any chances with him, kill

17   him.  Fucked up, kill him.

18        Q.   What are you supposed to do with the

19   weapon?

20        A.   Leave it on him.

21        Q.   Okay.  Let's continue.

22             (Tape played.)

23        Q.   What is this talk about 5 ounces?

24        A.   Talking about somebody offered a rifle

25   with a silencer on it, and they wanted 5 ounces for
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8057

```
 1   it and he was saying it wasn't really worth it.

 2        Q.   Five ounces of what?

 3        A.   Heroin or cocaine; 5 ounces of drugs,

 4   probably heroin.

 5        Q.   And you also mention up above about going

 6   to check on that gauge.  Do you remember that part?

 7        A.   He was telling me the gauge was at his

 8   brother's house and he had to go get it, or

 9   something.

10        Q.   Okay.  Let's continue.

11             (Tape played.)

12        Q.   Do you know what the discussion about

13   Hansel is about?

14        A.   I don't know anybody named Hansel.

15        Q.   Then at the very end, you say, "Hey, it's

16   a done deal.  Wait a couple minutes, give me a call,

17   tell me where to meet you."

18             Are you talking to Chris Garcia or someone

19   else at that point?

20        A.   I'm talking to the agents.

21        Q.   When you tell them it's a done deal, what

22   are you communicating to them?

23        A.   I have the weapon; I'm just trying to get

24   away from the house so nobody sees me pull over or

25   something.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8057

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8058

1      Q.   Now, I asked you about the drug sale on

2  September 11 of 2015.  Did you plead guilty to that

3  charge?

4      A.   Yeah.

5           MR. CASTELLANO:  Your Honor, at this time

6  I move the admission of Government's Exhibits 759,

7  684 and 685.  I'll show it to defense counsel.

8           THE COURT:  All right.  Any objection from

9  the defendants?

10          MR. LOWRY:  No, Your Honor.

11          THE COURT:  Not hearing any, Government's

12 Exhibits 759, 684, and 685 will be admitted into

13 evidence.

14          (Government Exhibits 684, 685, and 759

15 admitted.)

16 BY MR. CASTELLANO

17     Q.   Okay.  Mr. Montoya, I'm going to begin by

18 showing you Government's Exhibit 759.  What is that

19 document?

20     A.   I think it's a copy of the complaint or

21 the plea bargain.

22     Q.   Is that the charge you pled guilty to,

23 which was distribution of heroin?

24     A.   Yes.

25     Q.   You see the date circled here on December

SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                              e-mail: info@litsupport.com

DNM 8058

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8059

```
 1    18 of 2015?

 2         A.   Yes.

 3         Q.   So do you remember that after your

 4    cooperation in this case, that you pled guilty to

 5    the charge?

 6         A.   Yes.

 7         Q.   I'm now going to show you Government's

 8    Exhibit 684.  Do you know what that document is?

 9         A.   That's the plea agreement.

10         Q.   If you know, do you know why it was

11    sealed?  Do you see where it says "Sealed plea

12    agreement" up above?

13         A.   I think it was sealed to conceal my

14    involvement in this case until now -- well, until as

15    long as possible, I guess.

16         Q.   So in other words, was your -- was this to

17    protect you from letting people know that you had

18    pled guilty and cooperated?

19         A.   Yes.

20         Q.   Let me turn your attention to the next

21    page, page 2.  Did you understand that the

22    distribution of heroin charge carried a maximum

23    penalty of up to 20 years?

24         A.   Yes.

25         Q.   And turning to page 3, do you see the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8059

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8060

149

```
 1   redacted portion here I'm circling?

 2        A.   Yes.

 3        Q.   Did you understand at the time of your

 4   plea that you admitted to facts explaining why you

 5   were guilty of the offense?

 6        A.   Yes.

 7        Q.   But rather than the jury just taking it

 8   from the paper, did you then testify to explain why

 9   you were guilty of distributing heroin?

10        A.   Yes.

11        Q.   Okay.  Let me turn your attention now to

12   Government's Exhibit 685.  Do you recognize that

13   document?

14        A.   Yeah.

15        Q.   What is it, as best as you understand it?

16        A.   It means I cooperate fully, tell the

17   truth, and not make anything bigger or smaller than

18   they were in this case or in any other case to the

19   best of my ability.

20        Q.   And turning to the second page of that

21   document, do you understand that the United States

22   Attorney's Office can make a motion on your behalf

23   to possibly lower your sentence?

24        A.   Yes.

25        Q.   And do you understand that ultimately the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8061

150

```
 1   judge has the final discretion about what your
 2   sentence will be?
 3        A.   Yes.
 4        Q.   Now, underneath here there is a different
 5   name, Assistant U.S. Attorney Shana Long.  Was she
 6   the original prosecutor on your drug case?
 7        A.   Yeah, I believe so.
 8        Q.   I want to ask you about another
 9   conversation you had involving Jerry Armenta's
10   family.  Do you remember that?
11        A.   I remember it vaguely.  A lot of this
12   stuff I didn't remember until I reviewed the
13   conversations and the transcripts and stuff.
14        Q.   What did you remember about having a
15   conversation with somebody about Jerry Armenta's
16   family?
17        A.   The gist of the conversation was that he
18   was telling, or that he was suspected of telling, or
19   they suspected him or something.  They wanted me to
20   go to his house and let it be known that we knew
21   where they lived.
22        Q.   Who is "they"?
23        A.   His family.
24        Q.   And who wanted you to do this?
25        A.   Pup.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   151   Page: 8062

```
 1        Q.   And basically, what did he ask you to do?
 2        A.   Go let them know that he's -- pretty much
 3   get him not to tell.  If he's planning on telling,
 4   let his family know, and tell him that's probably
 5   not a good idea, or they probably wouldn't be safe
 6   if he did.
 7        Q.   And in terms of being safe, without
 8   telling us which facility you were in, had you been
 9   housed near somebody named Edward Troup?
10        A.   Recently?
11        Q.   Yes.
12        A.   Yeah.
13        Q.   And can you tell the jury about the
14   comments Edward Troup said in your presence?
15        A.   He just said that -- he was talking to
16   somebody, I don't know who -- but he was yelling out
17   that all of us cooperators think that the FBI and
18   the US Government is our friend, but we're going to
19   find out in the end that, as soon as they're done
20   prosecuting these guys, they're going to line us up
21   and prosecute us next; that we're probably going to
22   end up with more time than them, and stuff like
23   that.
24        Q.   What did you take that to mean, when he
25   said that where you could hear it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8062

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8063
152

```
 1        A.   I thought he was just trying to plant the
 2   seed in my head, seed of doubt to come here today
 3   and cooperate.  But I gave my word.  And also, this
 4   is more than just all the other benefits that you
 5   mentioned earlier.  It's about burning deep bridges
 6   for me.  It's done.  I'm not that same person.  And
 7   I'm making sure that I can never go back there.
 8        Q.   And approximately how long ago was it that
 9   Edward Troup said this to you?
10        A.   Oh, a couple weeks, maybe.  He didn't say
11   it to me.  He said it around the tier, for me and a
12   few other people's benefit, I believe.
13        Q.   Do you remember who else was housed with
14   you at that facility in terms of people who are
15   cooperating?
16        A.   Benjamin Clark, Jerry Montoya.  I think
17   Marijuano might have been there, I'm not sure.
18        Q.   Did he state that loud enough for you to
19   hear it?
20        A.   Loud enough for the whole tier, yeah.
21        Q.   Now, in terms of the benefits in this
22   case --
23             MS. JACKS:  Excuse me, Your Honor.  May I
24   interrupt just a minute?  With respect to the
25   alleged conversation that we just heard about this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8064

153

 1   witness and Mr. Baca, isn't that subject to the

 2   limiting instruction?

 3           MR. LOWRY:  It wasn't Mr. Baca.

 4           THE COURT:  I guess I don't think it does.

 5           MS. JACKS:  The one before, I'm sorry.  I

 6   didn't interrupt Mr. Castellano quick enough.

 7           MR. CASTELLANO:  Regarding Mr. Armenta,

 8   Your Honor.

 9           THE COURT:  Okay.  The Armenta one does.

10   So it's limited to Mr. Baca.  But this latest

11   statement by Mr. Troup is not.  So break that out.

12   If you're taking notes, make sure that you specify

13   that the Armenta conversation can only be used in

14   the discussions with Mr. Baca's charges, and not as

15   to the other three gentlemen.

16   BY MR. CASTELLANO

17       Q.   Can you tell the members of the jury

18   whether Mr. Troup is a defendant in the SNM overall

19   investigation?

20       A.   I think he is.  I haven't seen the

21   paperwork.  I haven't seen who exactly defendants

22   are.  I haven't seen none of the discovery.  I think

23   he is.

24       Q.   Do you know him to be an SNM member?

25       A.   Yeah.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8064

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8065

154

```
 1              THE COURT:  Mr. Castellano, would this be
 2   a good time for us to take our lunch break?
 3              MR. CASTELLANO:  Yes, sir.
 4              THE COURT:  All right.  We'll be in recess
 5   for about an hour.  All rise.
 6              (The jury left the courtroom.)
 7              THE COURT:  All right.  We'll be in recess
 8   for about an hour.
 9              (The Court stood in recess.)
10              THE COURT:  Let's go on the record before
11   the jury comes in.  I wanted to ask a couple of
12   questions as I consider the Government's request for
13   this 304 and 305.  I guess my questions are to you,
14   Mr. Beck, and also Mr. Lowry.  Looking at the timing
15   of the murder, was Mr. Baca the leader of SNM at the
16   time of the murder?
17              MR. BECK:  No.  He was not a leader of the
18   SNM at the time of the murder.  He was just an SNM
19   soldier at the time of the murder.
20              THE COURT:  Okay.  And was he a leader
21   before he went to Colorado, or only when he got back
22   from Colorado?
23              MR. BECK:  I believe he would have been a
24   leader before he went to Colorado.
25              THE COURT:  And what year did he go to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8065

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8066

155

```
 1   Colorado?
 2            MR. BECK:  I don't have that in front of
 3   me.
 4            THE COURT:  Mr. Lowry, do you have
 5   anything, Ms. Duncan, on this?
 6            MR. LOWRY:  Your Honor, okay, I just want
 7   to make sure we're all comparing apples to apples
 8   here.  Mr. Baca, after the Molina murder in 2014,
 9   was transferred out of state to Arizona; and then
10   from Arizona, was transferred to Florence, Colorado,
11   and came back in October 2015.
12            But if I understand the timeframe
13   correctly, Mr. Beck is talking about the 1989 murder
14   conviction.  And Mr. Baca remained in New Mexico
15   till approximately 1998, when he was shipped out to
16   Nevada for a decade.
17            THE COURT:  Okay.  I just wanted to have
18   that timeframe in mind as I consider the request.
19            MR. LOWRY:  Sure.  And I think he was gone
20   from approximately late '97, '98.
21            THE DEFENDANT:  '98.
22            MR. LOWRY:  That's what I thought; it was
23   that decade he was gone.
24            THE DEFENDANT:  I was out of the state '93
25   to '95.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8066

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8067

156

```
 1              MR. LOWRY:  To Illinois.
 2              THE COURT:  All right.  I just wanted this
 3  to think about.  All rise.
 4              (The jury entered the courtroom.)
 5              THE COURT:  All right.  Everyone be
 6  seated.
 7              All right, Mr. Montoya.  If you'll come up
 8  and resume your place in the witness box, and I'll
 9  remind you that you're still under oath.
10              THE WITNESS:  Yes, sir.
11              THE COURT:  Mr. Castellano, if you wish to
12  continue your direct examination, you may do so at
13  this time.
14              MR. CASTELLANO:  Thank you, Your Honor.
15              THE COURT:  Mr. Castellano.
16  BY MR. CASTELLANO
17      Q.   Mr. Montoya, going back to some of the
18  benefits you received, did you receive money to
19  repair an RV?
20      A.   Yes, I did.
21      Q.   And what was the purpose of repairing your
22  RV?
23      A.   The master brake cylinder went out.
24      Q.   Why did you need to repair that vehicle?
25      A.   I was going to use that vehicle to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8067

```
 1   relocate.
 2        Q.   And did you, in fact, relocate after your
 3   guilty plea on December 18?
 4        A.   I ended up leaving town on Christmas Eve.
 5        Q.   Of 2015?
 6        A.   Yes.
 7        Q.   Why did you leave town?
 8        A.   Because the arrests were imminent or had
 9   already taken place, and it wouldn't be long for
10   them to figure out that I was cooperating in the
11   case and I would be killed.
12        Q.   All right.  Did you therefore then move
13   out of state?
14        A.   Yes.
15        Q.   I want to ask you if you know the
16   defendant Daniel Sanchez.
17        A.   Yes.
18        Q.   Do you see him in the courtroom?
19        A.   Yes.
20        Q.   Where is he?
21        A.   Right there.
22        Q.   What's he wearing?
23        A.   Blue suit.
24        Q.   How do you know him?
25        A.   He used to be one of my best friends.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8068

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8069

158

```
 1      Q.   And what can you tell us about how he got
 2  in the SNM?
 3      A.   He was from Belen.  He used to hang around
 4  with gangs, the guys from Albuquerque.  One of the
 5  Burquenos was stabbed in his park and the rest of
 6  them didn't really stand up for him.  He already
 7  hung out with us a lot anyway.  One day, me and
 8  Arturo and Chero were around the prison yard
 9  talking, sitting in the gym.  And we didn't mean for
10  it to happen like that.  We just told him, yes or
11  no.
12           Yeah, si mon, what?
13           We told him, "You just sold your soul to
14  the SNM?"
15           He said, "I'm down."  So we brought him
16  in, we voted him.
17      Q.   So you're actually one of the people who
18  brought Daniel Sanchez into the SNM?
19      A.   Yeah.  It was me, Arturo, and Alfred
20  Garcia, Chero.
21      Q.   Do you remember about when that was?
22      A.   Somewhere between '95 and the time we went
23  to Virginia.
24      Q.   So what years would that be?
25      A.   Between '95 and, I want to say, '99, '98
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8069

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8070

```
 1   or '99.
 2        Q.    Why do you think it was after 1995?
 3        A.    It was after the murder of Max Gutierrez
 4   at the Main facility in '95.  It was after that, and
 5   it was before we went to Virginia.
 6        Q.    Who was Max Gutierrez?
 7        A.    Max Gutierrez was a guy from San Jose Gang
 8   in Albuquerque.  He used to get a lot of dope.
 9   Leroy Torrez wanted to bring him in, but he was not
10   SNM-quality material.  He was not aggressive in any
11   way.  He would not -- Junior wanted to bring him in
12   just for the dope, and it would cause a problem
13   later, because when Junior wasn't there to take care
14   of him, what ended up happening happened.  You know,
15   he was killed because he later said that he no
16   longer wanted to be part of SNM.  And at that time,
17   you couldn't -- you can't walk away.  Like blood-in
18   blood-out type thing.
19        Q.    And so was Max Gutierrez an SNM member at
20   least for a short time?
21        A.    Yes.
22        Q.    And did the SNM kill him?
23        A.    Yes.
24        Q.    And then you gave us a timeframe for when
25   you think Daniel Sanchez came in.  Approximately
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8070

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8071

```
 1   when did you go to Virginia?

 2        A.   It was around the time that that officer

 3   was killed in Santa Rosa by the LC prison gang.

 4   They sent a bunch of them out to Virginia.  And we

 5   got locked up just prior to that.  So it had to have

 6   been before that officer was killed and after Max

 7   was killed.

 8        Q.   And did a group of you get sent to

 9   Virginia?

10        A.   Yeah.

11        Q.   And was that -- is that sort of a prisoner

12   exchange program, or why were you sent out there?

13        A.   Like I said, the LCers killed an officer

14   in Santa Rosa.  And at first, they shipped a lot of

15   them out there.  And little by little, they brought

16   them all back, and replaced them with SNM Gang

17   members, mostly.

18        Q.   And when you were transferred out to

19   Virginia, was Daniel Sanchez one of the people who

20   was transferred out with you?

21        A.   Not on the same transport, but yeah.

22             MR. CASTELLANO:  I pass the witness, Your

23   Honor.

24             THE COURT:  All right.  Thank you, Mr.

25   Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8071

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8072

161

```
1              Who would like to go first?  Mr. Lowry?
2              MR. LOWRY:  Thank you, Your Honor.
3              THE COURT:  Mr. Lowry.
4              MR. LOWRY:  May it please the Court?
5              THE COURT:  Mr. Lowry.
6                     CROSS-EXAMINATION
7   BY MR. LOWRY:
8        Q.   Good afternoon, Mr. Montoya.
9        A.   Good afternoon, Mr. Lowry.
10       Q.   You made the comment on direct examination
11   that you needed to burn a deep bridge with the SNM.
12   That's right?
13       A.   I don't recall it being a deep bridge, but
14   I needed to burn a bridge with the SNM, yes.
15       Q.   And according to your testimony, it was
16   getting busted in September of 2015 that gave you
17   that epiphany?
18       A.   No.  Actually what gave me the epiphany is
19   watching people get murdered, both people that,
20   according to the gang and my mentality, at the time
21   deserved it and people that I didn't think deserved
22   it, probably didn't deserve it.  A combination of
23   that.  My daughter being born.  Me starting to get
24   over my addiction.  There was a number of things.
25       Q.   But my question is:  You could have walked
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8072

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   162   Page: 8073

```
 1   away in August of 2015?

 2        A.   I could have never walked away without

 3   being killed or without cooperating or something,

 4   something drastic.

 5        Q.   You don't think you could have moved to a

 6   different state?

 7        A.   Maybe I could have at that time.

 8        Q.   Okay.  And you could have done that in

 9   August of 2015?

10        A.   Maybe I could have, okay.

11        Q.   You could have done that in July?

12        A.   Yeah.

13        Q.   Or even June?

14        A.   Maybe.

15        Q.   Well, you could have if you had wanted to;

16   correct?

17        A.   If I had been thinking that way, maybe.

18        Q.   But you weren't thinking that way until

19   you were arrested in September?

20        A.   I was thinking about getting away from

21   them.  I just didn't have the idea of leaving New

22   Mexico.  I never thought of that.  I don't have a

23   family anywhere else.  I didn't have the motivation

24   to leave my family, everything I know, behind just

25   to get rid of this one thing, which it was well
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    worth it.

 2         Q.    But you ended up doing that anyway?

 3         A.    Yes, did, and I consider it well worth it.

 4         Q.    Right.  And there was nothing to stop you

 5    from doing that earlier?

 6         A.    Nothing stopping me but myself.

 7         Q.    So let's talk about the benefits that you

 8    got that encouraged you to move, okay?  And you

 9    talked of them briefly just before the end of your

10    direct.  But if I understand the benefits correctly,

11    once you decided to cooperate after you were

12    arrested, the United States decided to send you to

13    professional driving school?

14         A.    Yes.

15         Q.    So you could get your commercial driver's

16    license?

17         A.    Yes.

18         Q.    And actually --

19         A.    It was my suggestion.  I asked for that

20    school.

21         Q.    And they helped you out with that?

22         A.    Yes.

23         Q.    To give you a career, or at least a

24    vocation that you could start?

25         A.    Give me an opportunity to sink or swim, to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8074

1   make it on my own or not.

2       Q.   And they actually gave you a nice stipend,

3   $5,000, for your work in October, November?

4       A.   It wasn't for my work.  It was to

5   relocate.  It was for rent and expenses until I

6   found a job and got on my feet.

7       Q.   So do you remember signing the receipt?

8       A.   Yeah, I was specifically told that it

9   was -- I couldn't take cash for being an informant,

10  that I'm working.  I already had a case pending that

11  they couldn't pay me to be an informant; that they

12  were going to help me relocate, to keep my family

13  safe, and myself.

14          MR. LOWRY:  May I approach, Your Honor?

15          THE COURT:  You may.

16      A.   Yes.

17  BY MR. LOWRY:

18      Q.   So did that refresh your recollection that

19  that money was for your work and to help you move

20  out of state?

21      A.   It says to help me move out of state.  It

22  says that I participated in a case.  That's what the

23  case was; that's what I did; and that the money was

24  paid for helping me move out of state.  That's the

25  way I understand it.  If you want to put it up for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

165

1    the jury to see it and let them decide.

2         Q.   Sure.  But --

3         A.   I don't really understand that much about

4    it.

5         Q.   But it also says that you deserved the

6    money because you utilized a cellphone and

7    consensual wiretap for 60 days.

8         A.   I said that I did all that.  I didn't say

9    I deserved it for that.  I said I did all that.  And

10   I was given the money.  It doesn't matter.  You can

11   show it to them.  But I don't see the word

12   "deserving" there anywhere.

13        Q.   Sure.  Well, the United States typically

14   doesn't hand out money for free.

15        A.   No.  But they do help people relocate that

16   have helped.  It doesn't matter.  It couldn't say I

17   was paid.  It doesn't matter.  They gave me $5,000,

18   and I used it to move out of state.  They gave it to

19   me and I accepted it.

20        Q.   Sure.  And you used that money to buy the

21   RV?

22        A.   No.

23        Q.   Then did you use it for -- why did you

24   need vehicle repairs shortly thereafter?

25        A.   I needed vehicle repairs before.  There

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8076

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8077

166

```
 1   was two different vehicle repairs that are
 2   referenced in there.  One of them was before I left,
 3   to fix the master cylinder on the RV.  And the other
 4   one was for vehicle repairs, after I had already
 5   been living out of state for a while.  The money was
 6   used -- is that what you were asking, what the money
 7   was used for?
 8        Q.   No, I just wondered if you bought the RV
 9   with the $5,000, and then if you used it all, if it
10   needed still to get it repaired.
11        A.   No, he helped me with the repairs.
12        Q.   Now, I want to talk to you about your
13   arrest in September.  You were actually set up and
14   some informants did controlled buys from you.
15        A.   I believe it was one informant.
16        Q.   Did a controlled buy from you for heroin
17   on September 4?
18        A.   Yes.
19        Q.   And bought a small quality of heroin?
20        A.   I think it was September 11, they said.
21   I'm not sure.
22        Q.   Well, that would be the second day.
23        A.   I didn't really keep track of the dates
24   and stuff.  I'm not very good at that stuff.
25        Q.   And I noticed that on your direct
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8078

167

```
1    testimony that you have -- dates aren't necessarily

2    a good -- easy -- come easy to you?

3         A.    Yeah.

4         Q.    Is that right?

5         A.    I would say that's right.  Years of drug

6    use and stuff, yeah.

7         Q.    The years of drug use don't do very good

8    things to your memory?

9         A.    No.  They don't change them, though.

10        Q.    Well, you testified to the jury that the

11   last time you got out of prison was 2012, on direct,

12   but --

13        A.    Could not have been.  I've been in and out

14   of prison so many times that they all run together.

15        Q.    Right.  And so if your prison records

16   indicated that the last time you got out of the

17   prison was 2014, would you dispute that?

18        A.    I wouldn't.  I would say the prison

19   records are more accurate than my memory.

20        Q.    So with regard to getting busted in the

21   fall of 2015, initially you sold some heroin to an

22   undercover officer?

23        A.    Not an undercover officer.

24        Q.    A confidential informant?

25        A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8079

1      Q.   And they came back to do another purchase

2  on the 11th?

3      A.   Yes.

4      Q.   And on the 11th, that's when you told the

5  jury that you didn't trust this guy; right?  You

6  thought he might have been an informant from the

7  get-go?

8      A.   I knew he was a snitch from way back in

9  the day.  I knew he was.  But I still sold to him.

10     Q.   So he wanted to buy drugs, I believe you

11 said cocaine?

12     A.   Heroin.

13     Q.   Heroin.  And you cut it significantly to

14 reduce the potency?

15     A.   Just because I didn't have -- I'm real

16 conflicted about this part of me, this program that

17 I lived my life that way for so many years.  So

18 understand that -- okay, so at this point, I'm

19 looking at him as a snitch.  I don't really care.

20 I'm burning him.  I'm keeping his money and I'm

21 selling him junk.  That's what I'm doing.

22     Q.   But if you knew he was a snitch, why would

23 you go through with the sale and get busted?

24     A.   I didn't think he was snitching.  I

25 actually asked him, "Are you working off charges or

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                       1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 8079

1  something?  And if you are, go somewhere else."

2          And I still sold to him.  It's a chance, a

3  stupid, stupid chance.

4      Q.    But you sold more than heroin to him,

5  didn't you?

6      A.    Yeah.

7      Q.    You actually sold him a .38 Taurus

8  revolver?

9      A.    Yeah.

10     Q.    And at the time you were a felon?

11     A.    Yes.

12     Q.    And you sold a firearm in the context of a

13  drug deal?

14     A.    Yes.

15     Q.    And you were arrested for both?

16     A.    Yes.

17     Q.    But the information -- and could we see

18  Government's Exhibit 759, please.  This is the

19  sealed plea agreement.  Pardon me, I wanted the

20  information.

21          Now, this is the information you pled

22  guilty to; correct?

23     A.    That's right.

24     Q.    And there is no mention of a firearm in

25  that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8080

```
 1        A.    I think that's why they call them plea

 2   bargains; right.

 3        Q.    That's my point.  It was quite a bargain,

 4   wasn't it?

 5        A.    I never seen anybody plead guilty to

 6   everything they were charged with.  I think a plea

 7   bargain means drop some charges and plead guilty to

 8   some charges.  That's why it's a bargain.

 9        Q.    And it was really a bargain for you in

10   this case because the gun charge would have been a

11   five-year mandatory minimum sentence under 18 USC

12   924(c).

13        A.    Well, I pleaded guilty to 20.

14             MR. CASTELLANO:  Objection, that's a

15   misstatement of the law, Your Honor.

16             THE COURT:  I'll let you work with it on

17   redirect.

18             MR. CASTELLANO:  Your Honor, the witness

19   doesn't know the answer to that question.

20             THE COURT:  Well, he may not.  But if he

21   does --

22   BY MR. LOWRY:

23        Q.    Did you understand that the firearm

24   carried mandatory minimum penalties?

25        A.    I did.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8081

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8082

```
1       Q.    You did.

2       A.    But I can tell you five years -- I pleaded

3  guilty to a charge that carries 20, so --

4       Q.    Well, it carries 20 in theory; right?

5       A.    From what I understand, it's up to the

6  judge who can give me anywhere from one to 20.

7       Q.    Well, the judge could give you probation,

8  if the United States, in the addendum to your plea

9  agreement, filed a motion under the 5K agreement to

10 give you a substantial reduction; correct?

11      A.    I understand that's a possibility.

12      Q.    Right.  And did anybody explain to you the

13 United States sentencing guidelines?

14      A.    I think I understood them pretty well

15 before, but I think they're only suggestions now,

16 before they used to be mandatory and I think now

17 it's just a suggestion, a guideline.

18      Q.    So you understood, then -- it sounds like

19 you studied quite a bit when you entered this plea.

20 Then you would have understood that when you pled

21 guilty, you pled guilty to distributing not the full

22 amount of the heroin you sold to the confidential

23 source, either.  You pled guilty to selling only 7.6

24 grams.

25      A.    From what I understand, it's the amount of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8082

```
 1   actual drugs, unless there's a mixture of drugs.  I
 2   don't really understand it fully.  It's complicated.
 3        Q.   If you look at your plea agreement, at
 4   Government 684, it says you pled to distributing 7.6
 5   grams of heroin.
 6        A.   I think that's the total amount of heroin
 7   that was in the mixture.  I don't think I got
 8   charged for the sugar.
 9             MR. LOWRY:  May I approach, Your Honor?
10             THE COURT:  You may.
11        A.   That was two separate buys.  One of them
12   was 1.5 grams, the other one was 7 --
13   BY MR. LOWRY:
14        Q.   7.6 grams.
15        A.   Yeah.
16        Q.   And you'd sold roughly .4 grams on the 4th
17   of September -- or .7 grams, pardon me?
18        A.   You have the paperwork.  I don't remember.
19        Q.   Would you like to see it to refresh your
20   recollection?
21        A.   If it says that on the paperwork, I would
22   agree.
23        Q.   So part of your plea agreement, then, you
24   didn't even have to plead to all of the drugs that
25   you sold?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8083

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    173    Page: 8084

```
 1        A.    I think that's the way a plea bargain

 2   works.

 3        Q.    Right.  And that's my point:  It was a

 4   bargain.

 5        A.    It was a bargain.  I'm not going to say

 6   it's not.  It was a very good bargain.  Most people

 7   get good bargains.

 8        Q.    And that led you, under the terms of your

 9   plea agreement, as you put it, you joined Team

10   America.

11        A.    I joined Team America.

12        Q.    And you agreed, under the addendum to the

13   plea bargain, to testify truthfully in your case

14   about all of your criminal conduct.

15        A.    Yeah.

16        Q.    Okay.

17        A.    To the best of my memory and ability.

18        Q.    So the bargain that you cut got you out of

19   the racketeering case with the SNM?

20        A.    I'll be out of everything in my past,

21   pretty much.

22        Q.    Right.

23        A.    This way -- this is my opportunity to come

24   clean to stuff that I wasn't even under

25   investigation for, may not have been suspected of,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    just to get it out -- I don't have to look over my

 2    shoulder.

 3        Q.   Right.  But your opportunity to come clean

 4    unfortunately wasn't as successful as one would have

 5    hoped.

 6        A.   I was very successful coming clean.  If

 7    you're talking about, was I able to be a perfect

 8    citizen?  No.  It took me 20 years to become not

 9    even a perfect gangster.  And it's going to take me

10    a while to be a little bit better husband and

11    father.

12        Q.   And you had a slip last October, when you

13    were arrested for stealing a motor vehicle?

14        A.   I was arrested for auto theft.

15        Q.   Right.  Because you were in a different

16    state and an F-350 caught your eye?

17        A.   No, I was pulled over in my own vehicle

18    and someone else said that I was actually in an

19    F-250 that belonged to me, and another vehicle was

20    stolen.  My vehicle was in the same place at the

21    same time that the other vehicle was being stolen.

22        Q.   Right.  And the security video for the

23    hotel showed you getting in the stolen vehicle.

24             MR. CASTELLANO:  Objection, relevance.

25             THE COURT:  Overruled.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8085

```
 1        A.    No.
 2   BY MR. LOWRY:
 3        Q.    It didn't?
 4        A.    No.  It shows my vehicle pull up next to
 5   the vehicle that was stolen.  It shows the two
 6   vehicles drive off.
 7        Q.    And that was -- the police officer who
 8   arrested you looked at that video after you were
 9   pulled over; right?
10        A.    Yeah, I was pulled over five minutes after
11   in my own vehicle.
12        Q.    And you told the police officer, when he
13   pulled you over, that you couldn't have been near
14   that hotel because you were driving the back roads?
15        A.    Yeah.
16             MR. CASTELLANO:  I object to relevance at
17   this point, and this is getting close to his Fifth
18   Amendment privileges.
19             THE COURT:  Overruled.  He has counsel
20   here, if he needs to invoke it.
21             MR. CANDELARIA:  Your Honor, in that case,
22   I will invoke his Fifth Amendment rights.
23             THE COURT:  All right.  Why don't you come
24   up and sit next to him, so you can advise him fully
25   of his rights?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8086

1          A.   I will say that I've been in --

2               THE COURT:  Hold on, Mr. Montoya.  Let's

3   get Mr. Candelaria.

4               This is Dennis Candelaria, Mr. Montoya's

5   lawyer.  Get him a chair here.

6          A.   Without getting into the facts of the

7   case --

8               THE COURT:  Hold on, Mr. Montoya.  Let's

9   let Mr. Candelaria get positioned.

10              (A discussion was held off the record.)

11              THE COURT:  Why don't you restate your

12  question, Mr. Lowry, if you continue to want to ask

13  it.

14              And then Mr. Montoya, why don't you pause

15  and let Mr. Candelaria advise you, and then you

16  could tell me whether you want to follow his advice.

17              THE WITNESS:  Yes, sir.

18              THE COURT:  All right.  Mr. Lowry.

19  BY MR. LOWRY:

20         Q.   Mr. Montoya, I'm going to show you a copy

21  of what has been entered into evidence as

22  Government's Exhibit 685.  And this is part of the

23  addendum to your plea agreement.  Are you familiar

24  with this agreement?

25         A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8087

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8088

```
 1        Q.   And then you're familiar with the language

 2   in paragraph 2 of this agreement?

 3        A.   Yes.

 4        Q.   And if I'm reading this correctly, it

 5   says, "The defendant hereby agrees to cooperate with

 6   the United States by giving truthful and complete

 7   information and/or testimony concerning the

 8   defendant's participation in and knowledge of

 9   criminal activities."

10        A.   Yes.

11        Q.   And that's not written in the past tense,

12   is it?

13             MR. CASTELLANO:  I'll object, Your Honor.

14   He can't use his Fifth Amendment right against him

15   under the terms of that agreement.

16             THE COURT:  Well, I'll let him answer this

17   yes or no.  And if Mr. Candelaria --

18        A.   I believe that it pertained to anything

19   prior to --

20             THE COURT:  Hold on a second, Mr. Montoya.

21   If Mr. Candelaria doesn't have any problems, I am

22   going to allow the answer, but --

23        A.   Restate the question.

24   BY MR. LOWRY:

25        Q.   Sure.  You agreed -- as part of your plea
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8088

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8089
178

```
 1   agreement, the bargain that you got, right -- and

 2   you agree with me you got a bargain?

 3        A.   Yes.

 4        Q.   And you agree with me that you could, up

 5   to the judge's discretion and depending on whether

 6   the folks at this table decide to file a motion

 7   under 5K of the sentencing guidelines, the judge, in

 8   theory, could give you probation?

 9        A.   Yes.

10        Q.   But to get there, you had to sign this

11   agreement that said you will give truthful and

12   complete information and/or testimony concerning

13   your criminal activities.

14        A.   I believe it pertained to past criminal

15   activities, not into the future.  Because who knows

16   what you're going to do tomorrow?  Do you know what

17   you're going to do tomorrow?

18        Q.   Yes, I'll be here.

19        A.   You know that for sure?

20        Q.   But that was a bargain you struck with the

21   United States.  They didn't want you to turn bad the

22   day after you signed that, did they?

23        A.   I don't believe they wanted me to turn bad

24   ever again.  And I believe everybody here got the

25   same opportunity to take the same plea bargain.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8090

```
 1      Q.   That's not my question.  My question is:
 2  They didn't expect you to sign this and then go out
 3  and commit other crimes?
 4      A.   I expected to be arrested for another
 5  crime.
 6      Q.   You did?
 7      A.   I was arrested, but I have not been
 8  convicted.
 9      Q.   And I'm not asking you if you've been
10  convicted.  All I asked you was:  Were you honest
11  with the police officer that pulled you over?
12      A.   Was I honest with the -- partially, yeah.
13  It wasn't complete, but yeah.  Yeah, I was honest
14  with him.  Actually, I was driving on dirt roads.
15      Q.   Do you remember telling the police officer
16  that you couldn't have stolen that car because you
17  didn't go anywhere near that hotel?
18      A.   Yeah, I told him I wasn't near that hotel.
19      Q.   In fact, you told him, "We weren't over
20  there.  We were driving down dirt roads."
21      A.   Yeah, but we were -- yeah, I told him
22  that.
23      Q.   But you actually pulled into the parking
24  lot and pulled up beside the car that was stolen.
25      A.   Yeah.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8090

```
 1        Q.    And you left your girlfriend to drive your
 2   car while you drove the other car away.
 3        A.    No.
 4        Q.    You're aware that there is a police report
 5   that --
 6        A.    I'm aware that the police report said that
 7   I was pulled over five minutes after this car was
 8   stolen, and I was driving my own vehicle, with my
 9   girlfriend inside it with me.
10        Q.    Right.  And your girlfriend took the
11   police to the vehicle you stole.
12        A.    Took them to a vehicle.  I don't really
13   know what happened, really, to tell you the truth.
14   I haven't seen that discovery.  I've been charged
15   with the crime, but I haven't seen the discovery.  I
16   haven't seen the information.
17             MR. LOWRY:  May I approach, Your Honor?
18             THE COURT:  You may.
19        A.    Okay.  This is a police report.  I don't
20   feel comfortable talking about it.  I'd like to take
21   the Fifth on the advice of my attorney.  But you
22   have the report.
23   BY MR. LOWRY:
24        Q.    Okay.  I didn't ask you a question.
25             MR. LOWRY:  May I approach?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8091

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8092

181

```
 1        A.   I just don't feel comfortable talking
 2   about any of it.  I can tell you that I was arrested
 3   five minutes after the incident in my own vehicle.
 4        Q.   And at the time of your arrest you had an
 5   outstanding warrant from the US Marshal Service --
 6        A.   Yes.
 7        Q.   -- for the District of New Mexico?
 8        A.   Yes.
 9        Q.   Because you had stopped communicating with
10   Special Agent Bryan Acee regarding your supervised
11   release?
12        A.   Yeah, I hadn't made contact with him in a
13   month or so, maybe longer.
14        Q.   Despite Mr. Acee's best efforts to get in
15   touch with you.
16        A.   At that time, I was in an accident at
17   work.  My license was suspended, I was unable to
18   work, my cellphone was disconnected.  This is my
19   first try at an honest lifestyle.  And I was in a
20   downward spiral.  I'm not even going to lie about
21   it.  This was my first time trying to even have a
22   job.  And I did good for two years, and I messed up,
23   and I didn't report.
24        Q.   But there was plenty of opportunities to
25   reach out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8092

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8093

```
 1        A.    There was.  It was my fault completely.
 2   Had I stayed in contact, I would be walking in them
 3   doors there, rather than being in this suit right
 4   here.  So I did myself no favors.
 5        Q.    But you're still looking to get the
 6   benefit?
 7        A.    I'm hoping.
 8        Q.    You had mentioned on your direct
 9   examination sort of your -- I guess how the SNM had
10   changed over the years.  Did I understand that
11   correctly?  And you'd said that there were a lot of
12   people -- and I don't want to put words in your
13   mouth, but I wrote it down -- there were a lot of
14   people in the hole because people dropped kites on
15   them or something to that effect.
16        A.    Yes.
17        Q.    What did you mean by that?
18        A.    I mean it turned into a popularity
19   contest.  Whoever could talk better, whoever could
20   come up with the best story, whoever could
21   manipulate better.  And if somebody felt threatened
22   by somebody else or somebody had dirt on somebody
23   else, all they had to do was write a letter to STIU
24   or give them information, however they passed
25   information, and they could get anybody they wanted
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

183

1   locked up.

2           So half the guys who were following the

3   rules and being loyal to the gang were locked up for

4   half the guys that were out there getting high and

5   cruising around and eating ice cream.  We seen them

6   through the window.  It was flawed thinking to get

7   into the gang in the first place, and it was even

8   worse to sit there and watch it unfold while you're

9   locked up constantly.

10      Q.   And this is what you described as the

11  honor among thieves.  I mean, at least within the

12  original underpinnings of the gang, there was a bit

13  of morals of the gang?

14      A.   Morals of the gang, yes.

15      Q.   And you guys looked out for each other?

16      A.   We're supposed to.

17      Q.   But you sincerely did, to protect each

18  other.

19      A.   Yes, I did.

20      Q.   And you saw that disintegrate over the

21  years?

22      A.   I saw that turning into a popularity

23  contest.  I always compared it to Big Brother Pinta

24  Edition, Surviver Pinta Edition.  Whoever got the

25  dope, that's the immunity item.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8094

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8095

184

1    Q.   That's what you meant by -- it really

2  grated your nerves to see the drug dealers kiting

3  people out that were probably --

4    A.   Not necessarily drug dealers.  Just

5  anybody.  Just anybody.  If they wanted to get at

6  your girl, they'll kite you out.  You can only call

7  once a week.  And then they'll call your girl and

8  say, "Oh, yeah, he's no good, he's PC'd.  He's a

9  piece of crap."

10    Q.   What did you mean when you testified to

11 this jury that, in terms of sort of trying to clean

12 house or reorganize the SNM, you said --

13    A.   Every time somebody new would come in,

14 they would start with the board or they're the

15 shot-caller for whatever reason, because they had

16 the immunity.  And they would say, "All right.  Now

17 we're going to get rid of all these guys that are

18 snitching."  But it would be the other half of the

19 guys that were snitching.

20    Q.   So it's hard to tell who's who?

21    A.   Yeah.

22    Q.   But you said on direct, when the house is

23 on fire, you put out the fire and then you clean up

24 the yard.

25    A.   Yes.  Stop worrying about who you think is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

185

```
 1  dropping kites.  Look at the guys right there that

 2  you know are doing this foul shit, the ones that are

 3  really messing with other people's girlfriends, the

 4  ones that have never lifted a finger to help anybody

 5  else but themselves.  Start there.  Get rid of them,

 6  or whatever.  But does it make sense to you, if your

 7  house was on fire, would you worry about pulling the

 8  weeds out of the garden, or would you worry about

 9  putting the fire out?

10       Q.   But using the metaphor that you used, what

11  did you mean by -- how would you put the house fire

12  out?

13       A.   Bring the hose back to what they're

14  supposed to be.  Enforce the rules we have already

15  before you start making a bunch of new rules.  Stop

16  everybody from being at each other's throat.  Stop

17  all that.  Stop doing dumb stuff like putting hits

18  on Gregg Marcantel.  Help each other out.

19       Q.   We'll get to Gregg Marcantel, but --

20       A.   You don't like that name?

21       Q.   No, that's fine.  I'm very comfortable

22  with the name.

23       A.   I wouldn't like it.

24       Q.   Okay.  So you would just go back to the

25  old ways?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8096

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8097

186

1     A.   I would go back to -- when I got into the

2  gang, it was more of a brotherhood.  We did bad

3  things, definitely, and did drugs.  That wasn't the

4  primary function.  We were supposed to be brothers.

5  We were supposed to help each other out.  When

6  somebody came in, we were supposed to give him a

7  care package.  When they came in, we were going to

8  say, "Hey, brother, here are some sweats, here's a

9  TV, here's a few bucks for your books.  Here's some

10  money to call your wife or your family or your mom,

11  whoever you talk to, whoever you care about.  Let

12  them know that you're okay.  And all this other

13  stuff is secondary.  By the way, we're going to get

14  high, because we're all drug addicts, whatever."

15          And it turned into, "We don't give a shit

16  who your wife is, who your mom is, if she's dying or

17  whatever.  You just try to get some dope in here for

18  the tabla to get high.  And when you get out there,

19  by the way, we want you to sacrifice your life and

20  send dope to us."  That's what I'm talking about.

21     Q.   And the other folks that wanted to step up

22  or take over, they could just kite people out and

23  move around?

24     A.   Not necessarily just them.  Some of them

25  had good intentions, as far as honor among thieves



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8097

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8098
187

```
 1   mentality.  Some of them really meant what they
 2   said, as far as trying to make it better for people
 3   and trying to stop that stuff.  But then they had
 4   somebody right next to them with a sack of dope
 5   whispering in their ear.  And if that didn't work,
 6   then they'll kite them out.  And they'll say, "Oh,
 7   look, he PC'd."  You know what I mean?
 8        Q.   So if I understand, what you're saying is
 9   that really the rules fell out -- the rules just
10   stopped being enforced.
11        A.   The rules changed with each person's --
12   every board, every new leader.  They changed
13   according to what was convenient for them at the
14   time.
15        Q.   Right.  And in terms of leadership, then
16   how did any one group decide on who was the leader?
17        A.   Whoever had the sack, whoever had the most
18   charisma.  It was supposed to be whoever had the
19   most respect, put in the most work.  But like Arturo
20   Garcia, when I came back, he's the leader.  I don't
21   even know what he ever did, ever, period, other than
22   have a dope sack.
23        Q.   But he developed a relationship with Kate,
24   your --
25        A.   Kathy, yeah.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8099

188

```
 1        Q.    Kathy, pardon me.  And that violated a

 2   rule.

 3        A.    Yeah, but -- and people were mad at me

 4   because I wasn't making a big deal of it.  I would

 5   tell everybody, "Go to town.  You go, brother."

 6        Q.    But --

 7        A.    "You deserve each other."

 8        Q.    So they're more like guidelines, I guess,

 9   is my point.

10        A.    Well, at this point, yeah, they're more

11   guidelines.  But before, they were things you would

12   get killed over.  And people had died over them.

13   Julian Romero got stabbed, beat up, shot, over that

14   rule.

15        Q.    And that was because he developed a

16   romantic relationship with Gerald Archuleta's wife.

17        A.    Yes.

18        Q.    And that's a long-term relationship that

19   still exists to the day?

20        A.    I believe they're married.

21        Q.    And if I understood your reports

22   correctly, you think he was hit and stabbed and

23   shot --

24        A.    I know he was.

25        Q.    -- because Gerald Archuleta put the hit on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8100

1  him?

2      A.   I know he was.  Other than that, nobody

3  could say nothing bad about Julian as far as the

4  gang.

5      Q.   And that goes back to what you were

6  saying, having respect for one another.

7           On that point, we heard you testify that

8  you and Big Jake Armijo had considered robbing Chris

9  Garcia at some point?

10     A.   Yeah, it was before I really even got

11 close to him.  I think it was at Southern.  We were

12 at Southern together.  And we were talking about it,

13 because there was paperwork on him, and he had a lot

14 dope.  We were saying, "Well, ain't nobody doing

15 nothing about it, anyway.  Let's go get ours.

16 Everybody is there getting theirs.  Let's go get

17 ours."

18     Q.   So in your mind, that was okay because he

19 had paperwork on him?

20     A.   In my mind, that was okay at that time.

21     Q.   Did you think it was -- according to your

22 comments to the FBI, you thought that the whole

23 structure changed almost generationally, like the

24 new generation?

25     A.   This last generation has changed four or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   five times.  It wasn't just a generation.  But my

 2   generation -- when I got to prison, the older ones

 3   used to call us the Pepsi Generation.  The Pepsi

 4   Generation.  A remark like -- and then during -- a

 5   remark like, "You guys are stupid."  Know what I

 6   mean?  The Pepsi Generation.

 7        Q.   And it changed who could be a member, how

 8   you were --

 9        A.   Angel Munoz was the last person I knew

10   that was respected universally.  He used to say he

11   don't want to be the leader, but he was the leader.

12   He was pretty much.  I don't know if he wanted it or

13   not for real in his heart, but he used to say he

14   didn't want to be the leader.  He used to say, "I

15   don't want kids.  I don't want dads.  I want

16   brothers.  That's it."

17             After him, nobody commanded the same

18   respect or the same obedience or the same anything,

19   really.  Everybody tried.  But Angel -- I seen him

20   be like Leroy Torrez, and that was like his son.  He

21   treated that guy like his son.  But JR -- Leroy

22   Torrez had -- I don't even remember what he did, but

23   he did something.  And we asked him what's up.  And

24   he put his head down, and he said, "Hit him."

25             And these other guys, they wouldn't green
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8101

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8102

```
 1  light their best friend.  They wouldn't green light
 2  even their worst enemy, as long as that guy was
 3  giving him dope.  So Angel had that respect, because
 4  he didn't -- whatever you say about him, I never
 5  seen it, he never used the dope as part of
 6  consideration.  He did whatever was good for the
 7  group, was what he would consider, in my eyes.
 8      Q.   You think drug addiction completely
 9  changed the SNM?
10      A.   I think the leadership quality changed the
11  SNM.  Bad leaders made bad decisions, and bad
12  decisions led to bad outcomes.
13      Q.   Let's talk about those transcripts a
14  little bit.  You talked about this first transcript
15  and I think it was audio 356.  But the very first
16  time you spoke to Mr. Baca over the phone, the name
17  Gregg Marcantel never came up, did it?
18      A.   You have the transcript and you have the
19  recording.  Like I said, you can play it.
20      Q.   Well, we played it today.
21      A.   Okay.  What did you hear?
22      Q.   Well, I'm asking you.  Did you ever hear
23  his name come up?
24      A.    I remember it came up, but I don't know if
25  it came up in that particular phone call or that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8103

192

```
 1   conversation.
 2        Q.   And in that conversation, you guys talked
 3   about:  The only three people would know about that,
 4   and that would be you, Eric Duran, and Anthony Baca.
 5        A.   Yeah.  He's saying, "Don't tell nobody
 6   else."
 7        Q.   And he said it was going to be you three
 8   only.  And at that time, you had already contracted
 9   with the FBI to become a confidential human source
10   of information.
11        A.   Yeah.  I didn't mention that on that phone
12   call, though.
13        Q.   No.  It would have defeated the purpose of
14   having the phone call.
15        A.   Yes.
16        Q.   But you were a confidential human source?
17        A.   Yeah.
18        Q.   And you'd become a confidential human
19   source shortly after your arrest in September 2015?
20        A.   Yes.
21        Q.   You had an initial debrief with the FBI
22   and the United States attorney on October 6?
23        A.   I'm not sure of the date, but yeah, sounds
24   right.
25        Q.   And then you signed a confidential human
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8103

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   193   Page: 8104

```
 1   source contract on October 27?

 2        A.   Sounds right.  If that's what the

 3   paperwork says.

 4        Q.   And so they gave you the phone and just

 5   had you, again, go back out in the field, and you

 6   were assisting the FBI in doing controlled

 7   purchases.

 8        A.   I made controlled buys and stuff and

 9   pretty much that was my life.

10        Q.   And you're working off your charges?

11        A.   I wouldn't say I was working them off.  I

12   still got charged.  I still face a significant

13   amount of time, but I definitely got a deal, like

14   you said.

15        Q.   And you're putting in the work for Team

16   America?

17        A.   I'm on Team America.

18        Q.   And you're putting in the work?

19        A.   I'm putting in work.

20        Q.   So I want to make sure the jury

21   understands is that first recording we listened to

22   it was you, who was a Government informant, talking

23   to Mr. Baca; correct?

24        A.   You can go back to the transcript and you

25   can look at it.  It's either me or Crazo, because we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8104

```
 1   were the only two --
 2       Q.   You and Crazo were both Government
 3   informants?
 4       A.   Yes.  But I don't think either one of us
 5   knew it at the time.  I don't know if he did or not.
 6   The way I understand it, whoever initiated the call
 7   is a confidential human source.  So whoever
 8   initiated that call, whether it was me or Crazo,
 9   it's going to be the confidential human source, is
10   the way I understand it.
11            MR. LOWRY:  Can we approach, Your Honor?
12            THE COURT:  You may.
13            (The following proceedings were held at
14   the bench.)
15            MR. LOWRY:  Your Honor, this gets a little
16   overly complicated, the way these recordings were
17   made.  The communication was initiated by a phone
18   call.  Both confidential human sources also had
19   their ELSUR devices, and both used both to record
20   calls.  So the Government's exhibit I think is the
21   ELSUR device.  And we had a transcript of the exact
22   same recording made of the phone call.  This witness
23   just testified that whoever initiated the call was
24   the confidential human source.  And this shows who
25   initiated the call.  Whereas, the Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8106

195

1  transcript did not, because it was an ELSUR

2  recording.  All I want to do is show him the very

3  first page that shows who initiated the call.

4          MR. CASTELLANO:  The problem is that

5  sometimes these were recorded at both ends.  For

6  example, if Eric Duran called Montoya, Eric Duran's

7  portion may have captured additional information

8  from discussions before the call.  So Mr. Montoya

9  would only know what he captured when he answered

10 the call.

11         So they may not have the right exhibit to

12 ask this witness that question.  Because unless he

13 initiated the call, he doesn't know what happened

14 before the call was initiated, if that makes sense.

15 This witness would have no basis of knowledge what

16 happened on the other end of the line until he

17 actually answered the phone.

18         THE COURT:  Well, I think I'll let you

19 explain this to the jury with that.  But it seems to

20 me that he's got a transcript here of the telephone

21 call, and --

22         MR. CASTELLANO:  I agree.

23         THE COURT:  -- chances are 50/50 it's

24 right.

25         MR. CASTELLANO:  The issue is that he may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8107

```
 1   not have been part of the conversation until he
 2   answered his phone.  And so, like I said, Eric Duran
 3   may have had a conversation before the call started
 4   to which Mr. Montoya wasn't privy.  I don't know how
 5   we explain that to the jury.  Mr. Montoya only knows
 6   what happens when he answered his phone and began
 7   the conversation.  So it's maybe a better question
 8   for Eric Duran and not Mario Montoya.
 9            MR. LOWRY:  Mario Montoya answered the
10   phone.
11            THE COURT:  I'll let you put it up there.
12   I think if the Government wants to explain, it's
13   that important -- looks like it's marginal to me --
14   if the Government wants to explain it, it's probably
15   50/50 you're right.
16            MR. LOWRY:  I wouldn't be here if I
17   thought I was wrong.
18            THE COURT:  If the Government wants to
19   pursue another explanation, they can do it.  All
20   right.
21            (The following proceedings were held in
22   open court.)
23            THE COURT:  Mr. Lowry.
24            MR. LOWRY:  May I approach?
25            THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8107

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8108

197

```
 1        A.   Like I say, it's just my assumption about
 2   the confidential human source thing.  I don't know
 3   that for a fact.  My assumption.
 4   BY MR. LOWRY:
 5        Q.   I'm going to show you the beginning of
 6   that call.
 7        A.   "Hello," I would say I was answering the
 8   phone if I said "Hello."
 9        Q.   If you were answering, who initiated the
10   call?
11        A.   I would probably say maybe Eric Duran.
12   Like I said, I don't know if that's how the papers
13   are.  Just by me reviewing them, that's what it
14   looks like to me.
15        Q.   If I understood your testimony just now,
16   you said whoever initiated the call would be a
17   confidential human source.
18        A.   I believe that's the way -- would be the
19   confidential human source in that paperwork.  I
20   believe that by reading it, and looking at it,
21   because sometimes it lists me as the confidential
22   human source, and sometimes it lists Eric Duran as
23   the confidential human source.  So my opinion is
24   that maybe the person that initiated the call is the
25   confidential human source.  Because we're both --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8108

```
 1   like I said, I don't know that he is, and I don't
 2   know if he knows that I am.  But it would be my
 3   assumption that that's why it's like that.  I
 4   wondered about it myself.
 5       Q.   So you worked with the FBI; right?
 6       A.   Yes.
 7       Q.   And after that first call, I believe you
 8   said, "Hey, give me a couple of days."  You talked
 9   about that on direct.  You didn't want to act right
10   away.
11       A.   Yeah, I wanted time to find out if he
12   wanted me to get a weapon, which I say I don't
13   really know.
14       Q.   And you wanted time to coordinate with the
15   FBI so you could plan your next steps; correct?
16       A.   Okay.  I was -- in my opinion, my thought
17   process, I'm thinking, I don't know what these
18   people want me to do.  Do they want me to say I have
19   a gun and I'm going to do it and that's the case
20   right there?  Or do they want me to play along and
21   say, "No, you get me a gun?"  You know what I mean?
22   And see where it goes.  So basically, they come and
23   just talk to me, see where it goes.  You don't have
24   a weapon.
25       Q.   Right.  They said for you to tell them you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8109

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8110

```
 1    don't have a weapon.

 2         A.    Yeah.

 3         Q.    Because they didn't want you participating

 4    in the conspiracy.

 5         A.    I think they wanted me to let them talk.

 6         Q.    Right.  And they wanted them to reach out

 7    to other people.

 8         A.    Yeah.

 9         Q.    That's fair?

10         A.    I would say they wanted to see if they

11    were really going to do this, or if they're just

12    talking shit.  Excuse my language.  Sorry.

13              I really believe that they were curious at

14    that point whether it was an actual thing or just

15    throwing off steam or something.

16         Q.    But you would agree with me in that first

17    call we listened to, there is no mention of Gregg

18    Marcantel.

19         A.    If you play the tape and we listen to it,

20    whichever one is the first one, I could answer your

21    question.  But there's a lot of tapes.  In some of

22    them he's mentioned, and some of them he's not.  If

23    you want to play it and we'll listen to it, and I'll

24    tell you if I hear his name or not.

25              I understand it's your job to defend, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8110

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8111

```
 1   it's my job to tell the truth.  I'm not trying to
 2   confuse anybody.  I'm trying to stick to the facts
 3   here.
 4        Q.   Right.  But we listened to it.  Do you
 5   remember what we listened to?
 6        A.   We listened to a few, yes.  I remember it
 7   was one of them we listened to.  But I don't know
 8   which one was the first one or which one was the
 9   last one, or which one his name was specifically
10   mentioned.  But thank God, it's on tape.
11        Q.   Right.  Now, the second recording we
12   listened to was Government's Exhibit 380.  And I
13   want to play a little clip for you, if we could.
14             (Tape played.)
15        Q.   Now, you were talking about inaccuracies
16   in the transcript, but what you just heard was Mr.
17   Baca saying Barney Rubble or the other one; right?
18        A.   I heard Crazo telling him -- what it
19   sounds like to me, Crazo is telling him, "You didn't
20   tell him everything.  You only told him two."
21             And Pup says, "Huh?"
22             And Crazo says, "You only told him two."
23   Not -- T-W-O is what he's saying.  "You only told
24   him two."  He doesn't know who the other one is, I'm
25   supposing.  And Pup said, "Yeah, I told him Barney
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8112

201

 1   Rubble or the other one."

 2        Q.   Right.

 3        A.   "But he only told me two."

 4        Q.   And throughout this transcript, the two

 5   names that keep cropping up are Adam Vigil and

 6   Dwayne Santistevan?

 7        A.   I haven't heard.  Yeah, if that's what --

 8   if those are the names on this particular recording,

 9   yes.

10        Q.   And those would be the two names we're

11   talking about; if you agree with me, that those were

12   the two names?

13        A.   Those are the two names we're talking

14   about.

15        Q.   Right.  Now, later on in that, you sort of

16   try to steer Mr. Baca towards the top dog or what

17   you call the top one.

18        A.   I don't think I tried to steer him

19   anywhere.  I just talked to him like I normally

20   would and acted the way I normally would if I was

21   still down for this cause.

22        Q.   Right.  But on your direct examination,

23   you said that the top one was Gregg Marcantel.

24        A.   That's what I would consider the top dog,

25   yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8113

202

```
1         Q.    But if they're talking about STIU
2    officers, the top dog is -- the top one is Dwayne
3    Santistevan; correct?
4         A.    If you're specifically talking about STIU,
5    the head of STIU would be Dwayne Santistevan.
6         Q.    Right.  And if you're talking about Barney
7    Rubble as the other one in the clip we saw, the
8    other one being --
9         A.    Administration.  So the top dog in
10   administration would be Gregg Marcantel.
11        Q.    Well, they weren't talking about
12   administration; they were talking about STIU.
13        A.    Adam Vigil is administration.  Adam Vigil
14   is the unit manager, a lieutenant.  He could have
15   been a deputy warden.
16        Q.    Right.  But they were talking about --
17   you're familiar with Dwayne Santistevan from your
18   days at the pen; right?
19        A.    Yeah, Dwayne Santistevan would be top dog
20   in STIU.
21        Q.    Right.
22        A.    Gregg Marcantel would be the top dog of
23   administration.
24        Q.    And in the same transcript when Mr. Baca
25   was saying, "Look them up on Google searches," you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8114

203

```
 1   weren't looking up the administration; you were

 2   looking up STIU?

 3        A.   I was looking up Director of Adult

 4   Prisons, Secretary of Corrections.  That's what I

 5   was looking up on the cellphone.

 6             MR. LOWRY:  May I approach, Your Honor?

 7             THE COURT:  You may.

 8        A.   And I think he suggested STIU as well,

 9   maybe.  The highlighted portion.

10   BY MR. LOWRY:

11        Q.   You can read the whole thing.

12        A.   It doesn't say that at all.  I'm telling

13   you.  I'll give you -- I'll give you -- I think part

14   of the STIU, or the STIU, or whatever, website.

15             MR. LOWRY:  I was just asking him to

16   review it, not read it.

17        A.   Don't read?  Okay, I read it.  Or STIU

18   would mean administration or STIU.  That's what it

19   would mean to me.

20        Q.   Right.  You were focused on STIU because

21   that's where Adam Vigil and Dwayne Santistevan

22   worked.

23        A.   Or STIU.  Secondary was STIU, is how I

24   would take it.  And that's a different context.

25        Q.   But Gregg Marcantel's name never comes up
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8114

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8115

204

```
1   in this transcript.  Only Adam Villa and Dwayne
2   Santistevan.
3         A.    People don't say "gun," people don't say
4   "murder," people don't say a lot of things in that
5   transcript that are taking place.
6         Q.    Right.  But I mean, if you're on Team
7   America, you want this to be Gregg Marcantel,
8   because that's where you're trying to push it.
9         A.    That's where you're not getting it, man.
10  I don't care if these guys get convicted or they're
11  found innocent.  It's not really about that to me.
12  I don't care.  I'm redeeming myself.  I'm doing what
13  I need to do for me.  I'm struggling with my
14  addiction, with my skeletons in my closet, and I'm
15  doing what I need to do for me and my family.
16        Q.    Right.
17        A.    Whatever happens to these guys, I don't
18  have a horse in that race, man.  I agreed to
19  cooperate and answer the questions truthfully.
20        Q.    Work with me on the transcript, then.
21  Because the transcript doesn't say Gregg Marcantel
22  anywhere in it.
23        A.    It doesn't say.  I hadn't seen it.
24  Nothing you've shown me.  But I've heard it on the
25  tapes.  I don't know which one, but I've heard it on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8115

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8116

205

```
 1   the tapes.  What you've shown me so far, I have not
 2   seen the name Gregg Marcantel.  Have not.
 3        Q.   Would you like to review the whole
 4   transcript?
 5        A.   Play the whole tape.
 6        Q.   Well, it would be faster if you review the
 7   transcript.
 8        A.   I'm a pretty slow reader, but I'll read it
 9   if you want me to.
10             MR. LOWRY:  May I approach?
11             THE COURT:  You may.
12        A.   Is this all one conversation?  Sir?  Is
13   this all one conversation?
14        Q.   Yes.
15        A.   How far of this do you want me to read?
16   The entire thing?
17        Q.   Well, I was asking you a simple question:
18   If you recall hearing Gregg Marcantel's name
19   anywhere in that conversation and --
20        A.   So I heard his name in some conversations;
21   in some conversations I didn't.  In this particular
22   conversation, I would have to go through the whole
23   thing to remember exactly what was said.  It was two
24   years ago.  And like I said, most of the time I was
25   just saying, "Yeah, yeah," playing a role. I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8116

206

```
 1   remember which conversation it did or didn't come up
 2   in.  It came up in some, and some of them it didn't.
 3   This one, I'm inclined to say that it didn't come up
 4   in this conversation, but I wouldn't know for sure
 5   without reading the whole thing.
 6        Q.   And I don't want to rush you.  I just --
 7   like you said, I want to know the truth.
 8        A.   I'm telling you the truth.  I'm trying to
 9   give you guys to the best of my ability the truth.
10        Q.   But the question is simple.  You said you
11   reviewed the audiotapes before you came to court to
12   testify.
13        A.   Yes, and we played most of them in here
14   today.  But there is a lot of audiotapes and there
15   are different conversations.
16        Q.   This is the second audiotape, and you have
17   the transcript right there, so just finish reviewing
18   it and let us know.
19        A.   Okay.  Well, yeah, I don't believe
20   Marcantel's name is in this conversation.  I think
21   when he says that one or the other one, he's either
22   referring to Santistevan or Marcantel.
23             MR. LOWRY:  May I approach, Your Honor?
24             THE COURT:  You may.
25        A.   As far as I can -- and I think Carlos
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8118

```
 1   Valdez' name is mentioned somewhere in there, too.
 2   BY MR. LOWRY:
 3       Q.    Thank you, Mr. Montoya.
 4       A.    Yes, sir.
 5       Q.    And that brings us to the third transcript
 6   that we listened to today.  And by the way, nobody
 7   gave a time reference for the first two recordings
 8   we heard.  Do you, by any chance, know what time
 9   that they were recorded?
10       A.    I think most of them were in the daytime.
11       Q.    But do you know what month?
12       A.    Oh, it was after I got arrested and before
13   Christmas Eve.
14       Q.    That's the best of your ability?
15       A.    Yeah.
16       Q.    So during the second call, then, at that
17   point you're telling Mr. Baca you can't get a gun?
18       A.    One of the calls, I was telling him I
19   can't get a gun.
20       Q.    Right.  And the whole purpose of that is
21   so -- to see where the conversation goes, to see how
22   he's going to go get a weapon?
23       A.     If he gets a gun, and if he proceeds with
24   the plan and really tries to get it done, or --
25       Q.    Right.  But you suggested that he go to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8119

 1   Chris.

 2        A.   I suggested he go to Chris for money.

 3        Q.   And a gun.

 4        A.   I don't think I suggested the gun.  He

 5   said, "Tell Chris, kick in with some money."

 6        Q.   Well, you had gone to Chris for guns

 7   before, Chris Garcia?

 8        A.   I had gone to Chris for guns and money and

 9   dope before, on a hundred occasions.

10        Q.   Right.  And you had actually testified on

11   direct that I think you picked up a pistol from

12   Chris to actually do the Shane Dix murder.

13        A.   Chris actually gave me two pistols that I

14   was supposed to use in that crime.

15        Q.   But you got pulled over, and those pistols

16   got confiscated by the police.

17        A.   Yeah, I believe, yeah.  It was one pistol.

18        Q.   Right.  And if I understand correctly, you

19   were never charged with that because you worked with

20   Mr. Lerner.

21        A.   I never worked with him.  He asked me --

22   and I would have.  I would have.  At that point was

23   pretty much the beginning of the end for me, while

24   I'm trying to get away from this.  And he told me,

25   "I'll make sure you don't get charged for this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



DNM 8119

```
1    firearm.  You make some controlled buys for me.  I
2    want you to buy from Chris Garcia."
3              And I told him, "Yeah, okay."
4              He told me, "Okay.  You come by tomorrow
5    or you're busted."
6              I was, like, "Let's just do it now."
7              And he said, "No, come by tomorrow."  So
8    he let me go.
9              And at that time I was really conflicted
10   about what I was going to be in my life, if I wanted
11   to be a drug addict, or what.  I was in the process
12   of leaving my ex-wife.  But the guns were not in the
13   trunk of her car -- the gun.  And they never showed
14   up.  So, yeah, he never showed up.  So I never
15   worked with him.  I never gave him permission or
16   anybody before this case.
17      Q.   But you weren't charged with that?  Lerner
18   never followed through?
19      A.   No, I think -- I don't know, man.  I think
20   it was my opinion that -- I think he was breaking
21   the rules a little bit by not filing that case.  And
22   I think they don't do it like that no more.  That
23   was in 200- -- a long time ago.
24      Q.   2004, 2005?
25      A.   Somewhere around there.  But I was ready
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8120

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8121

 1   to go then, actually.

 2        Q.   You were ready to do it then, work with

 3   him?

 4        A.   I would have, if it would have happened

 5   that day, yep.

 6             I've done a lot of things in my life, but

 7   I wasn't going to kill nobody at that point.  I had

 8   a gun in the trunk for that purpose.

 9        Q.   But the larger point, I think, in

10   reviewing these transcripts is every time Mr.

11   Marcantel's name comes up, it comes up from

12   someone -- at least initially -- other than Mr.

13   Baca.  There is a transcript where you and Chris

14   Garcia are talking about "Why waste your time with

15   Santistevan?  Why don't you go for the top?"

16        A.   Yeah, the conversation with Chris -- and I

17   don't know who initiated the conversation -- but the

18   conversation taking place at this time between this

19   group of individuals and myself was:  "If you're

20   going to step in front of a bus, then step in front

21   of the fastest bus or the best bus or go all out, or

22   stay home.  Don't even do it.  Or do it all out.  If

23   you're going to do it, do it right.  If not, don't

24   do it at all.

25        Q.   That's in Government's Exhibit 394, where

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8121

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8122

```
 1   it's just you talking to Chris.
 2        A.    Maybe.  Sounds right.
 3        Q.    Would you like to see the transcript?
 4        A.    I believe you.
 5        Q.    But again, you're working with Team
 6   America; you know what Team America's game plan is?
 7        A.    I actually don't know what their game plan
 8   is.  They don't tell me.  They just tell me they're
 9   going to call and they call.  Act like yourself, be
10   yourself, don't expose yourself.  Act like you would
11   normally act.  And that's what I would do.  I would
12   be trying to promote myself within the gang.
13        Q.    So you're saying it was your idea, then,
14   to come up with "Go for the top, go for the
15   secretary, why waste your time with the low guys"?
16        A.    I'm just -- I wouldn't say it was my idea.
17   That's what I would normally say.  That's what I
18   would say.  If I was still involved in the gang, and
19   I was having this conversation, that would be my
20   part of the conversation.  I would be, like, "What
21   do you mean?  Why are you going to shoot this guy?"
22        Q.    But you weren't involved in the gang.
23   You're part of Team America.
24        A.    But I'm playing like I'm part of the gang.
25        Q.    For Team America?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    For Team America; right.

 2          Q.    So you're suggesting, "Don't waste your

 3    time with the low-level guys.  Go for something

 4    bigger."

 5          A.    That's what I would do.

 6          Q.    And even then, he said it's up to you?

 7          A.    He said, "Kill anyone you want, as long as

 8    you kill one of these guys for me."  He said, "It

 9    doesn't really matter to me which one."  He doesn't

10    care which one.  He's trying to make himself out to

11    be John Gotti, or, whatever.  I don't know.

12          Q.    Did there come a time where, throughout

13    all the conversations, Mr. Baca said, "Don't tell

14    Chris Garcia about anything"?

15          A.    Yes.

16          Q.    Because he didn't want Chris Garcia to

17    know why anybody needed a gun?

18          A.    He was telling me that.  And I think it

19    was more for my benefit.  Because Chris knew

20    everything.  And we were talking about it.  I wanted

21    to make sure Chris --

22          Q.    Well, Chris didn't know anything from Mr.

23    Baca, did he?

24          A.    I don't know.  I don't know what

25    conversations they were having when I wasn't on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   phone because they were calling Chris separate from
 2   me, I believe.  I don't know for sure.
 3       Q.    But from the conversations you
 4   participated in?
 5       A.    From the conversations I participated in,
 6   what I was being led to believe or being told was:
 7   Chris doesn't know anything, and we don't want him
 8   to know anything, because he might tell because
 9   there's paperwork on him.
10       Q.    So the idea was to keep him in the dark.
11       A.    In the dark.  We just need some weapons
12   for whatever reason.  But then when I would go talk
13   to Chris, he knew everything.  He would say on the
14   conversation, "Yeah, I talked to Pup," and when he
15   said it was that one, I'm verga.
16       Q.    Did there come a time when the FBI told
17   you, "Hey, you've got to tell Chris what's going on;
18   he needs to know who the target of the hit was"?
19       A.    No, they never told me to tell anybody
20   anything or suggest anything to anybody.  They told
21   me to play along like I'm part of the gang, like I'm
22   willing to follow their instructions.
23       Q.    Because the very last call that we
24   listened to, the one that's on November 29, 2015,
25   you're the first person that mentions Gregg
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8124

214

```
 1   Marcantel.

 2        A.   Okay.

 3        Q.   Well, it's not Chris Garcia.

 4        A.   Okay.

 5        Q.   So you --

 6        A.   Can I see the transcript before we talk

 7   about it?

 8        Q.   Absolutely.

 9             MR. LOWRY:  May I approach, Your Honor?

10             THE COURT:  You may.

11        A.   Okay.  Where are you talking about?  I'm

12   not trying to slow you down.

13   BY MR. LOWRY:

14        Q.   No, that's fine.  Take your time.

15        A.   I mentioned Marcantel by name.  At that

16   point it was already settled that's who was supposed

17   to be getting.  I'm saying, yeah, Marcantel is a big

18   boy.

19        Q.   But you just testified it wasn't settled.

20   You could have taken your pick.

21        A.   Well, I could have taken my pick, yeah.  I

22   could have taken my pick and I could have settled on

23   anyone I wanted.  I could have came back and said,

24   "I'm going to kill Archuleta."  I could have came

25   back and said any one of them.  It didn't matter to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8126215

```
 1   him which one.  I could have said Archuleta.  That's

 2   the name that we settled on.

 3        Q.   Who is "we"?

 4        A.   The people in this conversation.  Like I

 5   just told you, I went in there acting like I would

 6   normally act.  These are the suggestions, one of

 7   these guys.  I don't care which one.  Pick one and

 8   do it.  That's the one.  That's the one I picked.

 9   This is, "Okay," so then I'm going to -- this is the

10   one I suggested.  You know what I mean?

11        Q.   That's the one you suggested after you

12   suggested --

13        A.   After we had the conversation, one of

14   these ones right here.

15        Q.   Right.

16        A.   One of these ones right here, you pick

17   which one.  I don't care which one.  That's the one

18   I picked.

19        Q.   Right.  And that's after you suggest going

20   for the Secretary of Corrections, instead of the

21   low-level guy.

22        A.   I didn't make the decision.  I'm the pawn.

23   I'm the guy that's going to go do it.

24        Q.   You did make the decision.

25        A.   If it was my decision, I'd choose somebody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8126

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8127

```
 1   else to do it.
 2         Q.    You did.  You chose Mandel Lon Parker.
 3         A.    I chose Mandel Parker to come with me.
 4         Q.    Correct.
 5         A.    Yeah, but I didn't choose him to go do it.
 6   I didn't initiate this plan.  I was at home getting
 7   busted for selling heroin.  And all of a sudden, I
 8   get a phone call from the North facility --
 9         Q.    Hold on, Mr. Montoya.
10         A.    Wait up.  Do you want an answer?
11         Q.    Mr. Montoya, hold on for a second.
12         A.    I get a phone call from the North, and
13   get --
14         Q.    This started when you said, in the very
15   first call, there's going to be three people that
16   know about it.  You were going to handle it.  You
17   were going to handle the business yourself.  It was
18   you, Eric Duran, and Anthony Baca.
19         A.    Yes.
20         Q.    And you told Anthony Baca, "I'll handle it
21   myself"?
22         A.    Yeah, I told him that at first, yes.
23         Q.    And then after you talked with the FBI,
24   they said, "You've got to tell them you don't have a
25   gun.  You got to go somewhere else."
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8127

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8128

```
 1          A.   They didn't tell me, "Don't tell them
 2   that."  They didn't tell me to tell him anything.
 3   They told me, "Go along with this.  Go along with
 4   whatever.  But you don't have a gun."
 5               Yeah, they told me I don't have a gun.
 6          Q.   They told you you don't have a gun?
 7          A.   I don't have a gun.
 8          Q.   But you have in the past?  In September
 9   you were busted with a gun.
10          A.   I'd had guns in the past.
11          Q.   A gun you didn't have to plead guilty to.
12          A.   I've had numerous guns.
13          Q.   You're not going to have to serve
14   mandatory prison time.
15          A.   A lot of guns that I didn't have to serve
16   mandatory prison time.  I thank God every day that I
17   don't.
18               How many guns do you think your clients
19   have, and they don't have to serve?
20          Q.   I get to ask the questions.  Not many.
21   He's been in prison.
22          A.   How many shanks?
23          Q.   So --
24          A.   How many murders?
25          Q.   So you got to say, "I need help"; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   218   Page: 8129

```
 1        A.    Yeah, I got to say I need help.

 2        Q.    You got to pick the help.

 3        A.    I got to pick the help, yeah.

 4        Q.    And you got to go pick the source of the

 5   firearm.

 6        A.    No, I didn't pick the source.

 7        Q.    Well, you suggested the source.

 8        A.    I think the source was -- that's the

 9   person I was close to.  That's the person I used to

10   hang out with, Chris Garcia, as you pointed out last

11   time we were talking.  And when I suggested it, when

12   I mentioned it, about the money, I think the

13   response was, yeah, we're already on that.  We're

14   already on that.  I'm pretty sure it was something

15   to that effect.

16             So I didn't pick the source.  That was the

17   source.  That was pretty much the logical source.

18             MR. LOWRY:  May I have a moment, Your

19   Honor?

20             THE COURT:  You may.

21        A.    Mr. Lowry, I'd like to apologize now.

22   When you come on me like that, it's my natural

23   reaction to --

24        Q.    No --

25        A.    -- push back.  And I apologize.  It's not
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8129

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8130

```
 1   about that.
 2        Q.   I don't mean to come at you.
 3        A.   It's your job.  I understand.
 4        Q.   Now, I just want to go back.  When we
 5   started talking about benefits, I want to sort of
 6   end with benefits.  The Government didn't -- they
 7   asked about some of your priors.  You've had a
 8   fairly significant number of prior convictions;
 9   correct?
10        A.   Yes, I have.
11             MR. LOWRY:  And may I approach, Your
12   Honor?
13             THE COURT:  You may.
14   BY MR. LOWRY:
15        Q.   I'm handing you what's been marked for
16   identification as AJ-1.
17             MR. LOWRY:  And Your Honor, I believe I
18   was informed by the United States that we could
19   stipulate to its admission.
20             THE COURT:  All right.  Any objection, Mr.
21   Castellano?
22             MR. CASTELLANO:  No, sir.  We have the
23   same exhibit on our side as well.  There is no
24   objection.
25             THE COURT:  Any other defendant have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   objection?

 2           Not hearing any, then Defendants' Exhibit

 3   AJ-1 will be admitted into evidence.

 4           (Defendants' Exhibit AJ-1 admitted.)

 5   BY MR. LOWRY:

 6       Q.   Do you recognize that?

 7       A.   If it's my rap sheet or my J&Ss, or all

 8   the crimes that I was convicted of, I would

 9   stipulate to that also.  I was not a good guy.  I'm

10   still a work in progress, is the term I like to use.

11       Q.   The reason I bring it up is just because

12   when you're trying to calculate your criminal

13   history or see what kind of prison sentence you get,

14   your criminal history bears a lot on that factor,

15   does it not?

16       A.   Yes, I understand it can go back to 10

17   years or 15 years.  I served a certain amount of

18   time.  I think most of that, if not all of it, is

19   beyond the 15-year mark.

20           THE COURT:  Mr. Lowry, do you want to take

21   this up after we take our afternoon break?

22           MR. LOWRY:  Absolutely, Your Honor.

23           THE COURT:  All right.  We'll be in recess

24   for about 15 minutes.  All rise.

25           (The jury left the courtroom.)
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8131

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   221   Page: 8132

```
 1              THE COURT:  All right.  We'll be in recess
 2   for about 15 minutes.
 3              (The Court stood in recess.)
 4              THE COURT:  All right.  We'll go on the
 5   record.  Is there anything we need to discuss before
 6   we bring the jury in, Ms. Armijo, Mr. Castellano?
 7              MS. ARMIJO:  No, Your Honor.
 8              MR. CASTELLANO:  No, Your Honor.
 9              THE CLERK:  We're waiting on counsel for
10   defendant Herrera, and Mr. Villa just walked in.
11   There they come.
12              THE COURT:  All right.  Ms. Duncan, you
13   had something?
14              MR. LOWRY:  Thank you, Your Honor.
15              MS. ARMIJO:  Your Honor, I did think of
16   something.
17              THE COURT:  Okay.  Let me let Ms. Duncan,
18   then we'll come back to you.
19              MS. DUNCAN:  Your Honor, I just wanted to
20   be heard on the Government's trial brief,
21   introducing their Exhibits 304 and 305.  I want to
22   note in the transcript there is no doubt that Mr.
23   Baca is talking about the murder for which he's been
24   convicted and the question before the Court was
25   whether it was an enterprise act, which our position
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8132

 1   is it absolutely isn't.

 2           If you read on page 6040, when Mr. Baca is

 3   talking about the events leading up to the murder,

 4   he says, "And then Luis comes at me, and he starts

 5   swinging the fierro at me.  But the juras already

 6   see there, right there by the fucking metal

 7   detector, and they fucking hey, hey, hey."

 8           So what that transcript indicates is that

 9   Luis Velasquez, who is the person who Mr. Baca

10   killed, attempted to stab Mr. Baca with a shank the

11   day before Mr. Baca stabs him.  So there are a bunch

12   of things in play here.  But there is just not

13   sufficient evidence from which the jury can infer

14   that this had something to do the SNM versus a

15   personal disrespect issue.

16           And the fact that the person who fought

17   Mr. Velasquez with Mr. Baca was not an SNM member

18   also rebuts his allegation that it was on behalf of

19   the enterprise.

20           So I think the Court's initial inclination

21   to keep this out was the right one.

22           THE COURT:  Well, it was based upon the

23   fact -- why I initially kept it out was because the

24   Government wasn't presenting any admissible evidence

25   that this was an SNM-related crime.  I think they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    have presented some evidence.

2           I guess where I am is whether it's

3    sufficient for a reasonable jury to infer.  I guess

4    in one sense I've been sitting here thinking, boy,

5    if I let this one in, any murder by an SNM member is

6    SNM-related.  On the other hand, I'm sitting here

7    thinking, well, they've got Mr. Baca saying, Carnal;

8    they say he's not a carnal, the fellow that wanted

9    to go along with him, and didn't, turned him down.

10          That was the reason I was asking a little

11   bit about the timetable of when he became a leader.

12   I was thinking during the lunch hour that if he was

13   a leader, once you become a leader, it's kind of

14   like everything you do becomes probably SNM-related.

15   You can't divorce yourself from the organization

16   that you're running.  The president can't say he's

17   probably Trump Enterprises one day and president the

18   next.  He's president.  And so that doesn't seem to

19   fit.

20          So I'm thinking -- I do think the

21   Government has now pointed out some admissible

22   evidence.  I do think we're a little bit further

23   down the pike than we were when I was saying I

24   didn't see any admissible evidence from having Mr.

25   Archuleta up here.  But I've stared at that line.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   could almost memorize it now.  I'm staring at it,
 2   too, so I'll continue to give it some thought.
 3             MS. DUNCAN:  Okay.
 4             THE COURT:  All right.  Ms. Armijo, can
 5   yours wait?
 6             MS. ARMIJO:  We need to deal with it
 7   before Eric Duran testifies.  And he'll be the next
 8   witness.
 9             THE COURT:  All right.  All rise.
10             (The jury entered the courtroom.)
11             THE COURT:  All right.  Mr. Montoya, I'll
12   remind you that you're still under oath.
13             THE WITNESS:  Yes.
14             THE COURT:  Mr. Lowry, if you wish to
15   continue your cross-examination of Mr. Montoya, you
16   may do so at this time.
17             MR. LOWRY:  I do.
18             THE COURT:  Mr. Lowry.
19   BY MR. LOWRY:
20        Q.   Mr. Montoya, you initially debriefed with
21   the United States on October 6, 2015; is that
22   correct?
23        A.   Sounds right.
24        Q.   Shortly after your arrest?
25        A.   Shortly after my arrest.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8135

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8136   225

 1      Q.   At that debrief they specifically asked
 2  you about the hit on Gregg Marcantel?
 3      A.   I believe so.  I believe that's recorded
 4  also.
 5      Q.   And you told them you didn't have any
 6  information whatsoever about it?
 7      A.   Before these phone calls, yeah.  If it was
 8  before these phone calls, I had no information on
 9  it.
10      Q.   So before the phone calls, you knew about
11  the United States' interest in Gregg Marcantel?
12      A.   I think I was asked if I knew anything
13  about any hits on the DOC staff, any specific
14  threats.  I think I said no at that point.  There
15  are people always talk about stuff like that.  And
16  you asked me who or when or where.  Most of the time
17  I couldn't really say, because it usually goes in
18  one ear and out the other.
19      Q.   Now, moving on, I want to finish up here,
20  but you agree with me you have an extensive criminal
21  history?
22      A.   Yes.
23      Q.   And starting as early as 1993?
24      A.   Probably when I was 12 years old.
25      Q.   Right.  And you talked about this on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8136

```
 1    direct, that you spent -- actually, Mr. Yoakum was a
 2    friend from the Boys' Home?
 3         A.    Yeah.
 4         Q.    So you spent time in Springer.  So you
 5    grew up in the system, so to speak?
 6         A.    I spent all my life addicted to drugs, and
 7    committing crimes to get drugs.
 8         Q.    Right.  They're all property crimes.
 9         A.    Most of them.
10         Q.    So why revert to property crime in
11    Colorado?  Was that to support a new drug habit?
12         A.    Sometimes drugs.  Colorado, I didn't
13    revert to property crime.  I am pretty innocent till
14    proven guilty.  And I'm going to plead the Fifth on
15    that.  I am charged with a crime.  But not every
16    time I was charged with a crime I was convicted.
17    Not everybody that is charged with a crime is
18    guilty.
19         Q.    But in November 1993, you pled guilty in
20    two separate cases; one to two counts of auto
21    burglary?
22         A.    Yes.
23         Q.    And you got a three-year stint at the
24    Department of Corrections?
25         A.    Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8138

```
 1        Q.   And you pled no contest to attempted
 2   residential burglary?
 3        A.   Yes.
 4        Q.   And you got 13 months concurrent to the
 5   auto theft charge?
 6        A.   Yes.
 7        Q.   And then in 1995, you actually escaped?
 8        A.   Yes.
 9        Q.   And you got, what, nine years but six
10   suspended on the escape?
11        A.   Yes.
12        Q.   And in May of 1995, again you entered a
13   guilty plea of receiving stolen property?
14        A.   Yeah.
15        Q.   And you had a seven-year sentence, but all
16   of that was suspended except for the habitual
17   offender sentence of four years?
18        A.   Yes.  Suspended the underlying, and gave
19   me the habitual time.
20        Q.   And in October of 1996, you pled guilty to
21   bringing contraband into jail, which you talked
22   about on direct examination with Mr. Castellano?
23        A.   Yeah.
24        Q.   I'm just curious.  Why didn't you -- when
25   you got to the jail and you're suffering with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8138

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   228   Page: 8139

```
 1   withdrawals, you didn't consider just going into the
 2   detox program, methadone program there?
 3        A.   I believe I was -- see, my memory is kind
 4   of bad.  But I believe I might have been on
 5   methadone already before I got to the jail.  But it
 6   takes a while for them to start you on the program.
 7   And I would have been perfectly happy getting
 8   methadone.  I didn't ask for somebody to give that
 9   to me.  I built up that reputation, and when I hit
10   the county jail, people come and bring me stuff.
11        Q.   Now, in November 2002, you again pled
12   guilty to possession of heroin, controlled
13   substance?
14        A.   Yeah.
15        Q.   And got a two-year-six-month sentence?
16        A.   I got the one-year bitch, and 18 months.
17        Q.   And finally, in May of 2011, I think --
18   2010, pardon me -- you pled guilty to again
19   possession of controlled substance, heroin?
20        A.   I think, yeah.
21        Q.   So you have -- that criminal history will
22   factor in mightily in your sentencing guideline
23   calculation?
24        A.   Some of it.
25        Q.   All of it; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    No, not the stuff that's 15 years old or
 2   older doesn't calculate in, according to my
 3   understanding.  I don't know.  Maybe I'm wrong.  But
 4   the way I understand the guidelines is 10 years,
 5   unless you serve more than 13 months.  Then it's 15
 6   years they can go back on the conviction and
 7   calculate in, yes.  And if it does calculate in,
 8   it's like four years.  I'm hoping it calculates in,
 9   actually.
10        Q.    You have a powerful incentive to get the
11   benefit of that bargain to reduce your sentence down
12   to nothing, don't you?
13        A.    According to the plea bargain that I took,
14   the way I understand it, with all the points for all
15   the crimes that you listed, if they go by the
16   guidelines, I believe it's four years.  I'm hoping
17   all those crimes factor in, and they go by the
18   guidelines, and I get a probation or a prison
19   sentence.  Them crimes are not really part of my
20   plea bargain.  My plea bargain was to be done with
21   this, to, in fact, show that I'm not part of this
22   organization anymore.
23        Q.    And the plea bargain avoided your gun
24   charge altogether?
25        A.    It avoided, yeah, the gun, and it avoided
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8140

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8141

230

1    the RICO.  It avoided a lot of things.  I got a

2    great benefit from it, no doubt.

3            MR. LOWRY:  No further questions, Your

4    Honor.

5            THE COURT:  Thank you, Mr. Lowry.

6            Any other defendant have cross-examination

7    of Mr. Montoya?

8            MS. JACKS:  No, Your Honor.

9            THE COURT:  Not hearing any, Mr.

10   Castellano, do you have redirect of Mr. Montoya?

11           MR. CASTELLANO:  Yes, Your Honor.

12                  REDIRECT EXAMINATION

13   BY MR. CASTELLANO:

14       Q.   Mr. Montoya, I want to start at kind of

15   the end there where you were asked about an escape

16   conviction.

17       A.   Yes, sir.

18       Q.   Can you tell the members of the jury about

19   that escape?

20       A.   It was a brand-new prison in Milan, New

21   Mexico.  I was transferred there.  I wanted to get

22   back to the Main facility where all the dope was.

23   And somebody told me, "If you threaten a warden that

24   you're going to escape, they'll take you back."

25           So I went and told the warden, I'm going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8141

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8142

 1  to escape.  He told me, "Yeah, whatever.  Go.  You

 2  don't tell us where to put you.  We tell you."

 3          And that day we went to the yard.  And the

 4  water had eroded a channel right under the fence.

 5  It was like there was a hole in the fence.  So

 6  pretty much like on a dare, me and a friend of mine,

 7  AB Archuleta, said, "You go."  "No, you go."

 8          So I went.  And once I was on the other

 9  side, I took off running and made my way to

10  Albuquerque.

11      Q.   How long were you gone before you got

12  captured?

13      A.   Five days.

14      Q.   Now, when you were being asked about your

15  criminal history, you used a word "one-year bitch."

16  What does that term mean?

17      A.   That's commonly referred to as the

18  Habitual Offender Act, and everybody calls it "the

19  bitch" for short, because --

20      Q.   And so, in other words, do you have -- if

21  you have a conviction and you have a prior

22  conviction before that, can your sentence be

23  increased because of your prior convictions?

24      A.   Then you would be a habitual offender

25  because of your priors and your sentences.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   232   Page: 8143

1   Q.   You were asked about convictions going

2   back as far as 1993.  What's your understanding

3   about whether that will count against you for

4   criminal history points?

5   A.   I understand it will only go back 15

6   years.

7   Q.   What's the relationship between Chris

8   Garcia and Mr. Baca?

9   A.   They're brothers.  Pup knows he's a rat.

10  Chris thinks he has everybody convinced that he's

11  not.  There is paperwork on him.  Everybody uses him

12  for money and drugs.

13  Q.   Are they close in any way?

14  A.   I think most of these guys would be close

15  to anybody that sends them money and dope, or if

16  they think they can control.

17  Q.   Now, do you recall in the first recording

18  when Eric Duran and Mr. Baca first called you,

19  almost out of the gate, Santistevan's name is

20  mentioned?  Do you remember that?

21  A.   I don't remember the order of the phone

22  calls.  But, yeah, he was mentioned in the phone

23  calls.

24  Q.   And do you remember in that first

25  conversation -- if not, I can refresh your



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8144

233

1  recollection with the transcript -- in the first

2  conversation, do you remember that Mr. Baca had only

3  been in town -- or back in the state for about one

4  week?

5       A.   Yeah, I remember that conversation.

6       Q.   And so within one week, is it fair to say

7  that Mr. Baca is asking you to kill somebody?

8       A.   Yeah, first week back.

9       Q.   And out of the gate, did you have any

10  doubt that he, certainly at the beginning, wanted to

11  kill either Mr. Santistevan or Adam Vigil?

12      A.   There is no doubt that he wanted to kill

13  somebody in administration or STIU.

14      Q.   And by the time you picked up the firearm,

15  on November 29 of 2015 from Chris Garcia, was it

16  clear that the focus had become Gregg Marcantel?

17      A.   Yeah, it appeared to be pretty clear to me

18  that that was -- he wanted the person hit that was

19  responsible for sending him out of state.

20      Q.   Between you and Mr. Baca, who is the

21  leader and who is the soldier?

22      A.   Oh, I think I would be the soldier, and I

23  think he would be the leader.

24      Q.   So if Mr. Baca did not want Mr. Marcantel

25  hit, couldn't he have just ordered you not to do it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8144

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8145

```
 1        A.    Yeah, he ordered me not to.  He ordered
 2   all of us to leave Red alone when he got out.  On
 3   several occasions he told me, "Leave that guy
 4   alone."  Okay.
 5        Q.    And did the bargain you entered into with
 6   the Government -- does it change what the recordings
 7   say or do the recordings pretty much speak for
 8   themselves?
 9        A.    The recordings speak for themselves.  I
10   can't change them.  You can't change them.  Nobody
11   can change them.  They're on tape, and they say what
12   they say.
13        Q.    So do they change Mr. Baca's words?
14        A.    No.
15        Q.    What about Chris Garcia's?
16        A.    No.
17        Q.    What about Mandel Parker's?
18        A.    Don't change any words.  It's all spoken
19   words, and everybody is responsible for them.
20        Q.    Now, you mentioned that there would be
21   times you would speak with Chris Garcia.  And it
22   seems like there were things that he already knew
23   that you hadn't discussed with him.  Do you remember
24   that?
25        A.    Yeah, "Don't tell Chris nothing."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            But when I get there, Chris is telling me,
 2   "What the hell is wrong with them?  They're stupid.
 3   Which one do they want?  That's the one I thought.
 4   You know, you're dumb.  What do they think?  You're
 5   going to end up in prison so long, you're going to
 6   end up in the hole so long, you're going to forget
 7   your name."  Stuff like that.  So obviously somebody
 8   is telling him.
 9        Q.   Right.  So are there other conversations
10   that Chris Garcia may have had with Mr. Baca that
11   you didn't hear?
12        A.   I'm sure there was.
13        Q.   So regardless of whose idea it was, was it
14   clear by November 29 of 2015 that Mr. Baca wanted
15   Mr. Marcantel killed?
16        A.   Yeah.  He would have been happy with any
17   one of them.  But, yeah, Marcantel, I think, was the
18   one who was responsible for sending him out of
19   state.
20        Q.   And by that time, was it also clear that
21   Chris Garcia wanted Mr. Marcantel killed?
22        A.   I would say he provided the weapon and
23   gave me advice on how to get away with it, and plant
24   evidence and just direct the investigation.  I would
25   say he wanted it to happen.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   And the same thing with Mandel Parker?

2     A.   Yeah.

3     Q.   And so are you the one who is running this

4  show, or are you just passing messages back and

5  forth between Mr. Baca, Mr. Garcia, and Mr. Parker?

6     A.   I'm following instructions.  I'm obviously

7  not running the show.  You can hear the tapes, and

8  you can tell who is in command of the conversations.

9          MR. CASTELLANO:  May I have a moment, Your

10 Honor?

11         THE COURT:  You may.

12         MR. CASTELLANO:  Pass the witness, Your

13 Honor.

14         THE COURT:  Thank you, Mr. Castellano.

15         Do you have anything further, Mr. Lowry?

16         MR. LOWRY:  Very briefly, Your Honor.

17         THE COURT:  Mr. Lowry.

18                RECROSS-EXAMINATION

19 BY MR. LOWRY:

20     Q.   We can all agree the tapes speak for

21 themselves; right?

22     A.   I would say so.

23     Q.   And the whole time these tapes were made,

24 Mr. Baca was in Level 6 at the PNM North; correct?

25     A.   In the really bad predator predator

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8147

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8148

```
 1   program at that point.

 2        Q.    That was nonresponsive.

 3        A.    Level 6 at the facility.

 4              THE COURT:  Hold on.  I'll strike your

 5   response.  Listen to Mr. Lowry's question.  And if

 6   Mr. Castellano wants to bring out anything further.

 7              The jury will disregard his answer.

 8              THE COURT:  Mr. Lowry?

 9        A.    I apologize.

10   BY MR. LOWRY:

11        Q.    The whole time these calls were recorded,

12   Mr. Baca was at Level 6 at PNM North?

13        A.    I believe so.

14        Q.    The only way he could make a call out was

15   on the jail's phone system, which is recorded;

16   correct?

17        A.    Or -- yes, or --

18        Q.    Or Eric Duran's cellphone?

19        A.    Yes.

20        Q.    Which was wiretapped?

21        A.    Yes.

22        Q.    So every conversation Mr. Baca had would

23   be recorded?

24        A.    Not necessarily.  That's not the only

25   cellphone in that prison.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8148

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     238    Page: 8149

1    Q.    Every phone conversation would have been

2  recorded; correct?

3    A.    Every phone conversation upon the prison

4  phones would be recorded.  Every phone conversation

5  on Eric Duran's phone would be recorded by -- Eric

6  Duran was not the only inmate that had a cellphone.

7    Q.    How do you know how many people in Level 6

8  had cellphones?

9    A.    I don't know how many --

10    Q.    You don't, do you?

11    A.    -- people had cellphones, but I know there

12  was more than one.

13    Q.    How do you know that?

14    A.    I've been there.

15    Q.    So you can testify with certainty that in

16  November of 2015, Mr. Baca had access to a

17  cellphone?

18    A.    I can tell you that if I was at the North

19  facility, probably about 98 percent chance that

20  somebody in that pod has a cellphone I can get my

21  hands on.  Of if not that pod, the next pod.  Or if

22  not that pod, the next pod.

23    Q.    The most secure facility in the State of

24  New Mexico?

25    A.    People -- yeah.  You give them too much

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8149

```
 1    credit.
 2         Q.    But my question to you is --
 3         A.    If there was a conversation on Crazo's
 4    cellphone, it was recorded.  If there was a
 5    conversation on the pod cellphone, it was recorded.
 6    But I'm telling you that there are cellphones in
 7    that prison right now.
 8         Q.    You said you were following instructions?
 9         A.    Yes.
10         Q.    You were following instructions from Team
11    America; right?
12         A.    From Team America.
13              MR. LOWRY:  No further questions, Your
14    Honor.
15              THE COURT:  Thank you, Mr. Lowry.
16              Anything further, Mr. Castellano?
17              MR. CASTELLANO:  No, Your Honor.
18              THE COURT:  All right.  Mr. Montoya, you
19    may step down.
20              Is there any reason Mr. Montoya cannot be
21    excused from the proceedings?
22              MR. CASTELLANO:  No, Your Honor.
23              THE COURT:  How about from the defendants?
24              Not hearing any, Mr. Montoya, you may be
25    excused from the proceedings.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8150

```
 1

 2   UNITED STATES OF AMERICA

 3   STATE OF NEW MEXICO

 4

 5              C-E-R-T-I-F-I-C-A-T-E

 6       I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 7   Official Court Reporter for the State of New Mexico,

 8   do hereby certify that the foregoing pages

 9   constitute a true transcript of proceedings had

10   before the said Court, held in the District of New

11   Mexico, in the matter therein stated.

12       In testimony whereof, I have hereunto set my

13   hand on this 26th day of March, 2018.

14

15   _____

16   Jennifer Bean, FAPR, RMR-RDR-CCR
     Certified Realtime Reporter
17   United States Court Reporter
     NM Certified Court Reporter #94
18   333 Lomas, Northwest
     Albuquerque, New Mexico 87102
19   Phone:           (505) 348-2283
     Fax: (505) 843-9492
20   License expires:  12/31/18

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8151

```
 1            IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF NEW MEXICO

 3   UNITED STATES OF AMERICA,

 4                    Plaintiff,

 5        vs.              NO:  CR-15-4268 JB

 6   ANGEL DELEON, et al.,

 7                    Defendants.

 8

 9        Transcript of excerpt of testimony of

10      GERALD ARCHULETA and 104 HEARING (including

11       testimony of GERALD ARCHULETA and BRYAN ACEE)

12                   February 14, 2018

13                     I N D E X
```

```
14   EXAMINATION OF GERALD ARCHULETA

15    By Mr. Beck                              4

16   EXAMINATION OF GERALD ARCHULETA UPON 104 HEARING

17    By Mr. Beck                              45

18   By Mr. Lowry                             52

19   By Mr. Beck                              59

20   EXAMINATION OF BRYAN ACEE UPON 104 HEARING

21   By Mr. Lowry                             65

22   By Mr. Beck                              67

23   By Mr. Lowry                             69

24   By Mr. Beck                              73

25   EXAMINATION OF GERALD ARCHULETA
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   By Mr. Beck                                      87

 2   By Mr. Lowry                                    130

 3   By Ms. Bhalla                                   204

 4   By Mr. Beck                                     209

 5   By Mr. Lowry                                    214

 6   By Mr. Beck                                     215

 7   REPORTER'S CERTIFICATE                          217

 8                    EXHIBITS ADMITTED

 9   Government 206, 208, 210, 212, 214 and 216       86
              Admitted
10
     Government 651, 652, and 653 Admitted          128
11
     Government 690, 691, and 246 Admitted            4
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  All right.  Mr. Beck, does the

2  Government have its next witness or evidence?

3           MR. BECK:  Yes, Your Honor.  The United

4  States calls Gerald Archuleta.

5           Your Honor, while we're waiting, the

6  United States moves to admit Government's Exhibits

7  690, 691, and 246 --

8           THE COURT:  You can bring him on in.

9           MR. BECK:  -- which is Mr. Archuleta's

10  plea agreement, his addendum, and his penitentiary

11  pack, respectively.

12           THE COURT:  What was the last number on

13  that?

14           MR. BECK:  246.

15           THE COURT:  All right.  Mr. Archuleta,

16  before you're seated, Ms. Standridge will swear you

17  in.  So raise your right hand to the best of your

18  ability, and she'll swear you in.

19                 GERALD ARCHULETA,

20       after having been first duly sworn under oath,

21       was questioned, and testified as follows:

22           THE CLERK:  Please be seated.  State and

23  spell your name for the record.

24           THE WITNESS:  I'm Gerald Archuleta.

25  G-E-R-A-L-D, A-R-C-H-U-L-E-T-A.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8154

 1          THE COURT:  Mr. Archuleta.  Mr. Beck.

 2          Any objection to 690, 691, and 246?

 3          MR. LOWRY:  No, Your Honor.

 4          THE COURT:  Not hearing any objection,

 5  Government's Exhibits 690, 691, and 246 will be

 6  admitted into evidence.

 7          (Government Exhibits 690, 691, and 246

 8  admitted.)

 9          THE COURT:  Mr. Beck.

10                    EXAMINATION

11  BY MR. BECK:

12      Q.   Good morning, Mr. Archuleta.

13      A.   Good morning.

14      Q.   Are you now or have you ever been a member

15  of the Syndicato de Nuevo Mexico?

16      A.   I've been a member of the Syndicate of New

17  Mexico, yes.

18      Q.   And when were you brought into the SNM?

19      A.   Around the middle of 1988.

20      Q.   And where were you at that time?

21      A.   At the main facility in cell block 5.

22      Q.   Is that the main facility at the

23  Penitentiary of New Mexico in Santa Fe?

24      A.   Yes, sir.

25      Q.   And who brought you into the SNM?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8156

```
 1        A.    There were several brothers that sponsored

 2   me when I first arrived.  The names were Fernie

 3   Hernandez, Robert Martinez, Fred Dog Sanchez, Albert

 4   Chavez, an individual by the name of Raccoon, who

 5   was ultimately approved by high-ranking gang members

 6   who were calling the shots at the time:  Billy

 7   Garcia, Marty Barros, and Phillip Cordova.

 8        Q.    After you were brought into the SNM

 9   enterprise, what did you do for Phillip Cordova?

10        A.    I participated in daily SNM activity,

11   which included distributing drugs, collecting

12   payment, assaults, and eventually stabbing.

13        Q.    And why did you collect drug money for

14   Phillip Cordova?

15        A.    Because that was one thing that was

16   expected of you as an SNM Gang member.

17        Q.    How did you earn your bones or gain your

18   membership into the SNM?

19        A.    Well, in the beginning, just taking part

20   as a tag-along, collecting drug debts, assaults, was

21   enough for the time being.  But eventually I ended

22   up having to stab a couple people.

23        Q.    Did you stab someone named Chaparro?

24        A.    Yes, sir.

25        Q.    What happened?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    I was called to the chow area, and at the

2   table was Phil Cordova and Marty Barros and Albert

3   Chavez, which were, again, high-ranking members of

4   the SNM.   They advised me that there was an

5   individual by the name of Chaparro that lived with

6   me, that he came out short on some drugs that he had

7   brought in for Phillip.

8        Q.    What does "came out short on drugs he

9   brought in" mean?

10       A.    Well, the amount wasn't what it was

11  supposed to be when it got to Phillip Cordova.   In

12  other words, he got into the package.   He asked

13  me -- he was specific about if I would be willing to

14  stab him in the neck and remove him from the line,

15  making an example out of him.

16       Q.    Who asked you if you would stab Chaparro

17  in the neck?

18       A.    Phillip Cordova.

19       Q.    And did you stab Chaparro?

20       A.    Yes, sir.

21       Q.    Where did you stab him?

22       A.    In the neck.

23       Q.    And where did this take place?

24       A.    This took place in cell block 3.

25       Q.    In 1992, did you commit an SNM hit?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8157

```
 1        A.   I'm not sure about what happened in 1992.
 2   But the next hit that I participated in was on an
 3   inmate by the name of Eddie Lopez.
 4        Q.   And when did that happen?
 5        A.   I'm not sure what year it was, but --
 6        Q.   Could it have been around 1992?
 7        A.   Yes, sir.
 8        Q.   And what happened with Eddie Lopez?
 9        A.   He had gotten to the facility.  And again,
10   I was advised by Phillip Cordova simply that he was
11   no good, and that if I could remove him from the
12   line.
13        Q.   When you joined the SNM, what was the
14   leadership structure of the SNM?
15        A.   The leadership structure of the S was, at
16   the top, it was Billy Cordova, Marty Barros, and
17   Phillip Cordova.
18        Q.   Did that structure of the SNM change at
19   some point?
20        A.   At some point, yes, it did change.  I
21   mean, they were always around.  They never lost
22   their rank.  But as they left, or some others were
23   transferred out of state, it did change.
24        Q.   Did you hold the keys or were you the
25   leader for the SNM at any point?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8158

1        A.   Yes, sir.

2        Q.   When was that?

3        A.   That was approximately 1998.  There was an

4    individual by the name of Angel Munoz, who was a

5    high-ranking member of the SNM.  He had just came in

6    from out of state.  He was about to get out, and he

7    gave me a spot.

8        Q.   What do you mean, he was about to get out?

9        A.   He was about to get out to the streets,

10   and --

11       Q.   So was he the leader of the SNM before he

12   went out to the streets?

13       A.   Yes.

14       Q.   And when he went out to the streets, what

15   did he give to you?

16       A.   He gave me his spot in the SNM.

17       Q.   As the leader -- did he give you a

18   leadership position of the SNM at that point?

19       A.   Yes, sir.

20       Q.   And what did you do -- what structure did

21   you create as the leader of the SNM around that

22   time?

23       A.   I created a four-man board which consisted

24   of five individuals to make the decisions for the S.

25       Q.   Is that board also called the tabla?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8159

```
 1        A.    Yes, sir.
 2        Q.    Who were the individuals on the tabla,
 3   that you appointed to the tabla?
 4        A.    The five members were myself, Juan Mendez,
 5   Rupert Michael Zamora, Robert Martinez, and Arturo
 6   Garcia.
 7        Q.    And why did you put in place the structure
 8   of the tabla?
 9        A.    So that there would be a group of
10   individuals; not only one person calling the shots
11   for the S, but a group of individuals that were able
12   to make decisions for the S.
13        Q.    Below the tabla, what was the leadership
14   structure?
15        A.    There was no leadership structure below
16   the tabla.
17        Q.    Were there certain people at each
18   different facility throughout the state who led that
19   facility and reported to the tabla?
20        A.    Yes, sir.
21        Q.    Would you call them -- or does the SNM
22   call them key holders, or llaveros?
23        A.    Yes, sir.
24        Q.    How long did you stay on or control the
25   tabla after it was formed?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8160

1    A.    Until approximately 2011, when I was

2  released to the streets.

3    Q.    Do you know the individual named Anthony

4  Ray Baca?

5    A.    Yes, sir.

6    Q.    How do you know Mr. Baca?

7    A.    I know him as a high-ranking member of the

8  S, and was someone that was always my superior if he

9  was around.

10    Q.    So what do you mean, your superior if he

11  was around?

12    A.    This was an individual that had been

13  around a while, and he was always someone that

14  carried more rank than I did.

15    Q.    If he was in the state, would he be the

16  leader of the SNM over you?

17    A.    Yes, sir.

18    Q.    What do you refer to that person as in the

19  SNM, your leader or someone above you in rank?  What

20  do you refer to them as?

21    A.    He's our jefe, our boss.

22    Q.    Do you also refer to him as your Big

23  Homie?

24    A.    As my Big Homie, yes, sir.

25    Q.    Is Mr. Baca, the leader -- is he in this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8161

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8162

```
 1   courtroom?

 2        A.   I can't see him.  Where are the defendants

 3   seated at?

 4        Q.   These four tables here, each have one

 5   defendant.

 6        A.   I don't see him.  I don't see him.

 7        Q.   Do you see him in a suit at the back table

 8   behind my right?

 9             MR. LOWRY:  Your Honor, objection.

10             THE COURT:  Sustained.  Sustained.

11        A.   I cannot see Ray Baca.

12   BY MR. BECK:

13        Q.   Okay.  At some point, did the SNM come in

14   to different people following different older

15   members in the SNM?

16        A.   Can you repeat the question?

17        Q.   At some point did the SNM come in to serve

18   an organization where different members followed

19   different high-ranking members?

20        A.   At some point -- I don't understand the

21   question.

22        Q.   Sure.  At some point, were there some

23   people who followed maybe you more than maybe

24   someone like Billy Garcia or Julian Romero?

25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       Q.    And how did that come about?

2       A.    Well, once Angel gave me my position,

3    everybody that looked up to Angel automatically

4    followed me as their leader.  Each older

5    high-ranking member of the S, including Julian

6    Romero and Billy, basically had their own following.

7       Q.    And even though they had their own

8    following, was there always just one SNM Gang?

9       A.    Yes.  Each of us had our own following,

10   but if a problem ever came up with rival gangs, we

11   would all come together to be one.

12      Q.    What rival gangs did the SNM have?

13      A.    One such gang was the Los Carnales, which

14   are the LCs; the Surenos, who are from California;

15   and the Burquenos, who are from Albuquerque.

16      Q.    And if an SNM member, before 2006 -- if an

17   SNM member was housed with or encountered someone

18   from the Los Carnales gang, what was he expected to

19   do under the rules of the SNM?

20      A.    He was expected to assault him on sight as

21   soon as he seen him.

22      Q.    At some point did that change?

23      A.    Yes, sir.

24      Q.    What happened?

25      A.    A truce was discussed among the brothers,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8163

 1   and that's what happened.

 2        Q.    And were you involved in the discussion to

 3   call the truce with the Los Carnales gang?

 4        A.    Yes, sir.

 5        Q.    How were you involved in that?

 6        A.    I was involved because I was in the tabla.

 7   It was discussed in the tabla and with other members

 8   of the SNM.

 9        Q.    I want to talk about the rules of the SNM.

10   What are some of the requirements for membership to

11   become a member of the SNM?

12        A.    You can't be having child sex crimes; you

13   can't be a rapist; you can't be a rat, an informer.

14        Q.    And how long is membership in the SNM?

15        A.    It's for the rest of your life or until

16   you get killed.

17        Q.    When did you leave the New Mexico

18   Department of Corrections?

19        A.    I left in 2011.

20        Q.    And when you left in 2011, who did you

21   appoint to take your place on the tabla?

22        A.    Arturo Garcia.

23        Q.    Who else was on the tabla at that time?

24        A.    Robert Martinez, Michael Rupert Zamora,

25   Juan Mendez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.    And if Mr. Baca was in the state, what was

2   his position in the SNM?

3        A.    The tabla would automatically be resolved

4   unless he preferred to keep it in place.  But he

5   would be the one to make them decisions.

6        Q.    And does Mr. Baca go by any other names?

7        A.    Mr. Baca goes by the name of Pup.

8        Q.    Does the SNM have any particular symbol

9   that identifies the SNM?

10       A.    Usually it's a Zia with the S in the

11  middle of it.

12       Q.    I think we talked about divisions in the

13  SNM Gang, but one SNM Gang.  If there was -- at some

14  point, was the SNM going against the Aryan

15  Brotherhood gang in prison?

16       A.    Yes, sir.

17       Q.    And did you call hits or participate in

18  hits against Aryan Brotherhood members?

19       A.    Yes, sir.

20       Q.    If at that time, when there were different

21  groups following, if there was a battle with the

22  Aryan Brotherhood or another prison gang, would the

23  SNM come together and fight as one gang?

24       A.    Yes, sir.

25       Q.    When an SNM member gets out of prison and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8165

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8166

```
 1   hits the streets, what is that SNM member expected
 2   to do?
 3        A.   He's expected to keep in touch with the S,
 4   send money to brothers, and to assist in any way he
 5   can.
 6        Q.   Does the SNM do anything with drugs on the
 7   streets when they get out of prison?
 8        A.   Yes.  They sell drugs.
 9        Q.   And what do they do with some of that
10   money?
11        A.   They send it to the brothers in prison.
12        Q.   Have you ever sent money to your SNM
13   brothers in prison?
14        A.   Yes, sir.
15        Q.   To whom?
16        A.   To Fernie Hernandez.
17        Q.   Have you ever been fronted drugs, when you
18   got out on the streets, to sell outside of prison?
19        A.   Yes, sir.
20        Q.   By whom?
21        A.   By a brother named Chris Garcia.
22        Q.   Did the SNM control violence inside the
23   prison?
24        A.   Yes, sir.
25        Q.   How?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8166

```
 1         A.    Through fear and intimidation.

 2         Q.    I want to talk to you about drugs inside

 3   the prison now.  What happens when someone brings

 4   drugs inside the prison to a pod where there are SNM

 5   members?

 6         A.    They are expected to give a portion to the

 7   SNM.

 8         Q.    And if that person is not an SNM member

 9   and he doesn't give a portion to the SNM, what

10   happens?

11         A.    He would be assaulted and the drugs would

12   be taken from him.

13         Q.    If that person is an SNM member and brings

14   drug into the prison, what does that SNM member do

15   with the drugs?

16         A.    He helps out his brothers, and it's

17   distributed to sell to make money for his fellow

18   brothers.

19         Q.    Have you ever smuggled drugs into the

20   prison?

21         A.    Yes, sir.

22         Q.    And how did you do it?

23         A.    Through visits.

24         Q.    And what did you smuggle in through the

25   visits?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8168

```
 1        A.    Heroin.

 2        Q.    And when you say "visits," do you mean

 3   family visits or contact visits where someone who

 4   you know visits you at the prison?

 5        A.    At the main facility, my wife has come to

 6   see me, there are contact visits, and my visitors

 7   bringing me drugs.

 8        Q.    Have you ever seen an SNM member brag

 9   about something that he didn't do?

10        A.    No.

11        Q.    And have you ever seen an SNM member brag

12   about an assault or a murder that he didn't do?

13        A.    No, not to my knowledge.

14        Q.    And what would happen if someone does

15   that?

16        A.    There would be consequences.

17        Q.    And how would the SNM know whether that

18   person actually participated in the assault or the

19   murder?

20        A.    Well, among the brothers it's common

21   knowledge who did what and when.  And so for a

22   brother to claim responsibility for an incident that

23   he was involved in, or so-called involved in, it

24   would immediately be detected by other brothers.

25        Q.    So common knowledge, is that learned
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8168

```
 1   through what we've heard talked to as prison talk
 2   out in the yard?
 3        A.   Either that, or just being in prison, yes.
 4        Q.   Mr. Archuleta, at this time I'm going to
 5   show you some documents from your penitentiary pack.
 6   I'm going to start at pages 20 and 21 of that
 7   document, Exhibit 246.  Page 20 is Bates No. 8881.
 8             Mr. Archuleta, are you familiar with this
 9   document?
10        A.   Yes, sir, I'm familiar with it.
11        Q.   What is it?
12        A.   It's an agreement.  It's in regards to an
13   involuntary manslaughter charge that I picked up in
14   1986.
15        Q.   Is this your judgment, sentence, and
16   commitment when you were sentenced for involuntary
17   manslaughter in 1986 -- or 1987, sorry?
18        A.   Yes, sir.
19        Q.   And the next page, please.  And were you
20   sentenced to two and a half years for the
21   involuntary manslaughter?
22        A.   Yes, sir.
23        Q.   What happened?  Why were you convicted of
24   involuntary manslaughter?
25        A.   Well, it started off, I had been drinking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8169

 1   with my uncle and he got into a confrontation with

 2   three other individuals.  After the confrontation,

 3   these individuals were next door in a garage

 4   carport, and I went inside and got a sawed-off

 5   shotgun and shot at them, wounding them with

 6   pellets.

 7          From there, I ran to my uncle's house,

 8   which was close by, to hide because the police were

 9   everywhere.  One of my cousins came in the house and

10   said that he thinks I killed somebody.

11       Q.   And what happened after your cousin said

12   he thought you killed somebody?

13       A.   I was stressed out.  At that time I, for

14   whatever reason, I raised -- I put the gun to my

15   head and said, "I should kill myself."

16          My cousin said, "No, don't do it."

17          At that time, I lowered the weapon.  As I

18   did so, I pulled the trigger with my hand on the

19   hammer to release the hammer.  When the motion was

20   complete, the gun went off.  It flew out of my hand.

21   And after my ears stopped ringing, my cousin advised

22   me that I had hit my cousin.  During this

23   conversation, there was a cousin sitting to the side

24   that had nothing to do with the conversation itself,

25   and he was hit in the neck.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8170

```
1        Q.   And did your cousin die after that?

2        A.   Yes, sir.  He died as a result of that.

3        Q.   I'm going to show you an order, sentence,

4   and commitment from 1987, which starts at Bates

5   8879.  Was your probation revoked in 1985, because

6   of a robbery -- or excuse me, in 1987, because of a

7   robbery?

8        A.   Yes, sir.

9        Q.   And were you sentenced to three years

10  concurrent with the time you were serving at that

11  time?

12       A.   Yes, sir.

13       Q.   I'm going to show you a J&S from 1988

14  which starts on Bates 8876.  Are you familiar with

15  this J&S?

16       A.   Yes, sir.

17       Q.   Go to the next page, please.  In 1988,

18  were you convicted of second-degree murder with

19  aggravating circumstances?

20       A.   Yes, sir.

21       Q.   Were you sentenced to 12 years, plus four

22  years for being a habitual offender, for a total of

23  16 years?

24       A.   Yes, sir.

25       Q.   And why were you convicted of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8171

```
 1   second-degree murder with aggravating circumstances
 2   in 1988?
 3         A.    For killing my wife.
 4         Q.    What happened?
 5         A.    She got pregnant from another man.  I was
 6   19.  And I killed her.
 7         Q.    And how did you kill her?
 8         A.    I strangled her.
 9         Q.    What did you do after you strangled her?
10         A.    I left the house and reported it.
11         Q.    I'm going to show you a J&S from 2002,
12   which begins on Bates 8874.  In 2002, did you plead
13   guilty to conspiracy to commit second-degree
14   murder -- or no contest, sorry?
15         A.    Yes, sir.
16         Q.    And for that no-contest plea to conspiracy
17   to commit second-degree murder, were you sentenced
18   to six years, plus four years as a habitual
19   offender, with six years suspended, for a total of
20   four years?
21         A.    Yes, sir.
22         Q.    And why were you convicted of conspiracy
23   to commit second-degree murder in 2002?
24         A.    I took part in an SNM hit on another SNM
25   member that had paperwork on him.  He had been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8172

```
1    greenlighted, which means that he was to be executed
2    because he was an informant.
3         Q.   And the person killed, was he an SNM
4    member?
5         A.   Yes, sir.
6         Q.   And did you take part in -- participate in
7    that or in ordering that hit?
8         A.   Ordering it and planning it.
9         Q.   And I'm going to go to a J&S from 2005.
10   In 2005, was your probation for that conspiracy to
11   commit second-degree murder revoked for possessing
12   or selling heroin?  Or for purchasing, selling,
13   consuming possessing or distributing a controlled
14   substance?
15        A.   Yes, sir.  It was a dirty urine.
16        Q.   And when your probation was revoked, were
17   you then imposed the total 10-year sentence for your
18   conspiracy to commit second-degree murder in 2002?
19   The total 10 years?
20        A.   Yes, sir, I believe.
21        Q.   I'm going to show you another J&S from
22   2005.  Was your probation for that conspiracy to
23   commit second-degree murder later revoked again for
24   a failure to abide by your curfew?
25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8173

1      Q.   And what happened?  Why did you fail to
2  abide by your curfew?
3      A.   I had paroled to a program, and I didn't
4  make it home on time.  I didn't make it to that
5  program on time.  My curfew was 6:00, and I didn't
6  make it at 6:00.
7      Q.   And at that point, was your probation
8  revoked and you were sentenced to prison for the
9  remaining 730 days on your 10-year sentence for
10  conspiracy to commit second-degree murder?
11      A.   Yes, sir.
12      Q.   I'm going to take you to a J&S from 2008.
13  It starts at Bates 8865.  In 2008, were you
14  convicted of conspiracy to commit assault with
15  deadly weapon, possession of a firearm, and breaking
16  and entering?
17      A.   Yes, sir.
18      Q.   For that crime, were you sentenced to 18
19  months plus four years as a habitual offender for
20  each count?
21      A.   Yes, sir.
22      Q.   Were you given an actual term of seven
23  years in prison?
24      A.   Yes, sir.
25      Q.   And is it after that seven years in prison

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

DNM 8174

 1    that you were released from the Corrections

 2    Department in 2011?

 3         A.   Yes, sir.

 4         Q.   And why were you convicted of conspiracy

 5    to commit assault with a deadly weapon, possession

 6    of a firearm, and breaking and entering in 2008?

 7         A.   Well, there was a confrontation at the

 8    methadone clinic in 2006.  There had apparently been

 9    a hit placed on me by other SNM Gang members.  As a

10    result, it ended in a shooting.  I mean, we each had

11    guns, and I shot him, and we shot at each other.

12         Q.   Where did you shoot at each other?  Where

13    were you?

14         A.   In the parking lot of the methadone

15    clinic, San Mateo.

16         Q.   Is that San Mateo Road in Albuquerque?

17         A.   Yes, sir.

18         Q.   Were you charged by the federal government

19    in an indictment in this case?

20         A.   Yes, sir.

21         Q.   And at some point did you agree to

22    cooperate with the federal government?

23         A.   Yes, sir.

24         Q.   Why did you agree to cooperate with the

25    federal government?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8175

```
 1        A.    Five years prior, when I got out, 2011, I
 2   had already distanced myself from the S, because I
 3   basically wanted something better for myself and for
 4   my son.  What was the question again?
 5        Q.    I think that answered it.  That's fine.
 6   What do you mean?  Where did you go to distance
 7   yourself from the S?
 8        A.    I went to Tennessee.
 9        Q.    And did you still keep in contact with
10   other SNM members after 2011, before you were
11   arrested in this case in 2015?
12        A.    Yes, sir.
13        Q.    Did other SNM members send you Suboxone
14   while you were in Tennessee?
15        A.    Yes, sir.
16        Q.    I'm going to show you what's been admitted
17   as Government's Exhibit 690.  Are you familiar with
18   this document?
19        A.    Yes, sir.
20        Q.    Is this your plea agreement in this
21   federal case?
22        A.    Yes, sir.
23        Q.    And were you indicted based on the assault
24   of Julian Romero in this case?
25        A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    I'm going to take you to page 2 of this
 2   document, paragraph 4 -- actually, paragraphs 3 and
 3   4.
 4        A.    Okay.
 5        Q.    So on paragraph 3, does that advise you
 6   that you were agreeing to plead guilty to count 8 of
 7   the indictment, charging you with violent crimes in
 8   aid of racketeering activity, conspiracy to commit
 9   assault resulting in serious bodily injury?
10        A.    Yes.
11        Q.    And was that because of the assault
12   resulting in serious bodily injury of Julian Romero?
13        A.    Yes.
14        Q.    And does paragraph 4 advise you that the
15   maximum term of imprisonment for this charge is
16   imprisonment of not more than three years?
17        A.    Yes.
18        Q.    Then I'll take you to page 9 of that
19   document.  Is that your signature on the plea
20   agreement?
21        A.    Yes, it is.
22        Q.    And now I'll show you what's been admitted
23   as Government's Exhibit 691, and I'll go to page 2.
24   Is that your signature:  Gerald Archuleta?
25        A.    Yes, it is.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8177

```
 1        Q.   And do you also go by or have you also
 2   been referred to by the names Styx and Grandma?
 3        A.   Yes, sir.
 4        Q.   And I'll go back to page 1.  Is this the
 5   addendum to your plea agreement?
 6        A.   Yes, it is.
 7        Q.   Thank you.
 8             Since you've been a cooperator, have you
 9   been paid money by the federal government?
10        A.   Yes, I have.
11        Q.   And what is that -- how is that money paid
12   to you?
13        A.   It's put on my account.
14        Q.   And since you began cooperating in July --
15   or December of 2015, when you were indicted, do you
16   know how much you've been paid in the last over two
17   years?
18        A.   Approximately 2,000 bucks.
19        Q.   Does $2,399.62 sound right?
20        A.   Yes, sir.
21        Q.   As part of your cooperation in this case,
22   did you agree to record other inmates in the prison
23   system?
24        A.   Yes, sir.
25        Q.   Were you also given less restrictions than
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8178

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8179

```
 1   other inmates housed in a Level 6 facility while you

 2   were cooperating?

 3        A.   Will you repeat the question?

 4        Q.   While you've been cooperating, were you

 5   also provided less restrictions than other inmates

 6   in a Level 6 facility?

 7        A.   No.

 8        Q.   In the course of this case, were you

 9   provided a tablet to review your discovery?

10        A.   Yes, I was.

11        Q.   And at some point, was that tablet taken

12   away?

13        A.   Yes, it was.

14        Q.   Why was it taken away?

15        A.   Several of the cooperators, including

16   myself -- we reset our tablet, which erased the

17   discovery.  We enabled the Wi-Fi, and we were able

18   to have internet access.

19        Q.   Were you allowed to have internet access

20   on your tablet?

21        A.   No, sir.

22        Q.   And what did you use the -- how long did

23   you have internet access on your tablet,

24   approximately?

25        A.   Approximately four months.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8179

1    Q.    And what did you do with your tablet when

2  you connected to the Wi-Fi?

3    A.    I attempted -- one time I attempted to get

4  hold of my son, sending him pictures that were taken

5  of me.  And for the most part I was downloading

6  pornography.

7    Q.    While you've been cooperating, have you

8  done drugs in the prison?

9    A.    Yes, sir.

10    Q.    What drugs have you done?

11    A.    Suboxone.

12    Q.    And how did you obtain the Suboxone?

13    A.    I obtained it from those that were living

14  with me in the unit.

15    Q.    And who is that?

16    A.    For the most part, it was fellow

17  cooperators, Benjamin Clark, Jerry Montoya.

18    Q.    And are you still using Suboxone in the

19  prison?

20    A.    No.

21    Q.    When did that stop?

22    A.    Well, while I was in Sandoval County, I

23  got high for Christmas, and that's been the last

24  time I got high.

25    Q.    So is that Christmas December 2017, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8180

```
 1   last Christmas?

 2        A.   Yes, sir.

 3        Q.   I want to talk to you about Julian Romero.

 4   Who is Julian Romero?

 5        A.   Julian was a high-ranking member of the

 6   SNM.  He was another one of my big homies.

 7        Q.   At some point did you call a green light

 8   or authorize a hit on Julian Romero?

 9        A.   Yes, I did.

10        Q.   When was that?

11        A.   It was approximately 2001, maybe around

12   there.

13        Q.   And why did you order or authorize a hit

14   on Julian Romero in 2001?

15        A.   For having an affair with my wife.

16        Q.   Do you know, did you used to communicate

17   with Julian Romero through your wife?

18        A.   Yes, sir.  That was -- we used our wives

19   and our visitors to communicate amongst each other,

20   specifically with the brothers that were on the

21   street.  We would give the message to our visitor,

22   or in my case, to my wife, and she would take it to

23   the streets and pass on the message.

24        Q.   Included in those messages, did you and

25   Julian authorize SNM hits on people?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes, we did, on one occasion.

 2        Q.    And who did you task with hitting Julian

 3   Romero originally?

 4        A.    Originally, I tasked Playboy Munoz.

 5        Q.    Is that Frederico Munoz?

 6        A.    Yes, sir, Frederico Munoz.

 7        Q.    And what happened when you tasked him to

 8   hit Julian Romero?

 9        A.    The end result was he located him and shot

10   him.

11        Q.    And do you know where Frederico Munoz shot

12   Julian Romero, where they were located when it

13   happened?

14        A.    He shot him in the leg.

15        Q.    And what happened after Frederico Munoz

16   shot Julian Romero?  Was the green light done, or

17   did it still remain?

18        A.    No, it still remained.

19        Q.    Why?

20        A.    Because they missed him and the end result

21   was to kill him.

22        Q.    At some point, was Julian Romero assaulted

23   at some point after 2003?

24        A.    Yes, sir.

25        Q.    And how do you know that?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8182

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   32   Page: 8183

```
 1        A.   I was made aware of this through phone
 2   conversation with another brother by the name of
 3   Chris Garcia while I was in Tennessee.  I used to
 4   communicate with Chris Garcia on a few occasions,
 5   more than once, and he advised me that an assault
 6   had been -- that an assault happened on Julian
 7   Romero.
 8        Q.   Was this one of the conversations you had
 9   with SNM members while you were in Tennessee after
10   you got out?
11        A.   Yes.
12        Q.   Did another inmate call you while you were
13   in Tennessee and advise you that Julian Romero was
14   assaulted, if you remember?
15        A.   I don't recall.  I specifically remember
16   Chris Garcia calling me.
17        Q.   And did anyone tell you about the Julian
18   Romero assault while you were incarcerated, after
19   2011 and 2015 or '16?
20        A.   Yes.
21        Q.   Who was that?
22        A.   Carlos Herrera.
23        Q.   Do you know an SNM member Daniel Sanchez?
24        A.   Yes, I do.
25        Q.   And what other name does Daniel Sanchez go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8183

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   33  Page: 8184

```
 1   by?
 2        A.   Dan Dan.
 3        Q.   And I'm going to test your eyesight here.
 4   Do you see Daniel Sanchez, or Dan Dan, here in the
 5   room?
 6        A.   Yes, I do.
 7        Q.   Where is he?
 8        A.   He's sitting over there in the blue suit.
 9             MR. BECK:  Let the record reflect he
10   pointed out the Defendant Daniel Sanchez.
11             THE COURT:  The record will so reflect.
12   BY MR. BECK:
13        Q.   Is Daniel Sanchez an SNM member?
14        A.   Yes, he is.
15        Q.   How do you know that?
16        A.   We've had several conversations that have
17   to do with SNM activity.  He's known to me as an SNM
18   Gang member.  These are conversations that wouldn't
19   have took place with him to begin with if he wasn't
20   an SNM Gang member.
21        Q.   And I think you said earlier you talked to
22   Carlos Herrera.  Is Carlos Herrera an SNM member?
23        A.   Yes, he is.
24        Q.   Does he go by another name other than
25   Carlos Herrera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8184

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8185

```
 1        A.    Yes, he goes by the name of Lazy.

 2        Q.    Have you been locked up with Carlos

 3   Herrera before?

 4        A.    Yes, I have.

 5        Q.    And do you know that Carlos Herrera is an

 6   SNM Gang member?

 7        A.    Yes, I do.

 8        Q.    Have you heard of, within the SNM, the All

 9   Stars?

10        A.    Yes, I have.

11        Q.    What are the All Stars?

12        A.    The All Stars are a group of, I would say,

13   SNM Gang members that have been stabbed in the past

14   by other SNM Gang members.  That's who they were.

15        Q.    You said they'd been stabbed in the past.

16   Did you call hits on the SNM members who were trying

17   to start the All Stars?

18        A.    I took part in a couple of hits against

19   members of the All Stars.

20        Q.    Was Leroy Torrez one of the members trying

21   to start the SNM All Stars?

22        A.    Yes, he was.

23        Q.    Did you call a hit on Leroy Torrez?

24        A.    Yes, I did.

25        Q.    Did you call a hit on an SNM member named
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8185

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8186

```
 1   Chaparro?
 2        A.   Yes, I did.
 3        Q.   Was he involved with the SNM All Stars?
 4        A.   Yes, he was.
 5        Q.   I want to talk to you about some other SNM
 6   crimes that you've been involved with.  In 1992,
 7   1993, did you assault someone at the Southern New
 8   Mexico Correctional Facility related to the SNM, if
 9   you remember?
10        A.   I did assault somebody at the Southern
11   facility.
12        Q.   And how is that related to the SNM?
13        A.   Only that we were SNM, and the one that
14   was with me at the time of assault was also SNM.
15        Q.   And in the late '90s, early 2000s, did you
16   assault two Aryan Brotherhood members related to the
17   SNM?
18        A.   What year was this, and what facility?
19        Q.   Late '90s, early 2000s, did you assault
20   two Aryan Brotherhood members with Wino and Alex
21   Munoz and Funny Style?
22        A.   Yes.  Yes, sir.  I took part on the
23   assault on these two Aryan Brotherhoods.
24        Q.   And how is that related to the SNM?
25        A.   Approximately -- again, I could be wrong
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8186

```
 1   on the year.  But a war had started with the Aryan

 2   Brotherhood.  It started with the Aryan Brotherhood

 3   assaulting two SNM Gang members.  So from that day

 4   forward, there was a green light on every Aryan

 5   Brotherhood that we came across.

 6        Q.   Is this the same way that there was a

 7   green light on Los Carnales members at some point?

 8        A.   Yes, sir.

 9        Q.   What is the Aryan Brotherhood?

10        A.   It's a white gang with -- yeah, it's a

11   white gang.

12        Q.   At some point related to the SNM, did you

13   call a hit on Junior when the Main shut down?

14        A.   Yes, I did.

15        Q.   What happened?

16        A.   Well, when I got to the South facility,

17   there were several brothers that weren't happy with

18   the way he was treating them.  We asked him to step

19   down.  He didn't want to step down, and we removed

20   him.  When I got to the South, he was the one

21   holding the keys at the South facility.  He didn't

22   want to step down, so we removed him, with approval

23   from Marty Barros.

24        Q.   So you and other SNM members removed, by

25   assaulting, the SNM member who held the keys at the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8187

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8188

```
 1   South facility?  Is that what you're saying?

 2        A.   Yes.  I was not there at the time he got

 3   assaulted, but I put it together, yes.

 4        Q.   You called that hit?

 5        A.   Yes, sir.

 6        Q.   And after the incident with Junior at the

 7   South facility, were you involved in targeting two

 8   Aryan Brotherhood members, including Pac Man?

 9        A.   Yes, I was.

10        Q.   What happened?

11        A.   These were Aryan Brotherhood members that

12   were at the Main facility when the initial war

13   started.  When they closed down the Main, they were

14   all separated.  And these are two individuals that

15   we came across at the South facility, so they were

16   assaulted.

17        Q.   And were they assaulted because of this

18   rivalry with the SNM and Aryan Brotherhood?

19        A.   Yes, they were.

20        Q.   When you were sent to Hobbs around 1998,

21   did you call the hit of two other Aryan Brotherhood

22   members?

23        A.   Yes, I did.

24        Q.   What happened?

25        A.   Again, these were two Aryan Brotherhood
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8188

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8189

```
 1   members that were at the South.  They were at the
 2   Main facility when the war started with them, and
 3   they were assaulted.
 4        Q.   Do you know how they were assaulted?
 5        A.   They were stabbed and beaten.
 6        Q.   In 2000, did you call a hit in BCDC?
 7        A.   Yes, I did.
 8        Q.   Is that the Bernalillo County Detention
 9   Center?
10        A.   Yes, it is.
11        Q.   And what happened in 2000 in the
12   Bernalillo County Detention Center?
13        A.   Matthew Cavalier, a former SNM Gang member
14   who was an informant, was killed.
15        Q.   And how were you involved?
16        A.   I put it together and I ordered it.
17        Q.   And was Matthew Cavalier killed?
18        A.   He had informed on an SNM murder that took
19   place in Central New Mexico Correctional Facility.
20   Papers had turned up on him, and so he was a known
21   SNM informant.
22        Q.   You said "informed."  Did he talk to law
23   enforcement?
24        A.   Yes, he did an investigation.
25        Q.   And by "papers," did you mean that there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   had been actual paperwork in the prison showing that

 2   he had cooperated with the investigation?

 3        A.   Yes, documents of his actual conversation

 4   with authorities.

 5        Q.   And is that why you ordered his death?

 6        A.   Yes, that's why.

 7        Q.   And in connection with calling that

 8   murder, is that why you pled guilty to conspiracy to

 9   commit second-degree murder?

10        A.   Yes.

11        Q.   After that did you call a hit on Kelly

12   Mercer?

13        A.   Yes, I did.

14        Q.   What happened?

15        A.   He was one of the ones that was -- he's a

16   fellow SNM Gang member.  He was informing on --

17   assisting with the investigation on the Matthew

18   Cavalier case, and we placed a hit on him.

19        Q.   Did you place this hit on him because you

20   expected him to testify at trial?

21        A.   Yes, I did.

22        Q.   Sometime later did you call a hit on Baby

23   Zack?

24        A.   Yes, I did.

25        Q.   What happened?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8190

 1     A.   Well, this is Billy Garcia's nephew.
 2  There was a division among the S, because of the
 3  incident with Julian Romero and my wife.  Julian
 4  Romero was a Big Homie, so he had a following.
 5  Basically, Baby Zack was sent to kill me at the
 6  methadone clinic.
 7     Q.   Is that who you exchanged fire with at the
 8  methadone clinic, when you pled guilty to, among
 9  other things, being in possession of a firearm?
10     A.   Yes.
11     Q.   And did you call this hit on him after he
12  tried to kill you at the methadone clinic?
13     A.   Yes, I did.
14     Q.   Did you at any point order a hit on Darren
15  White?
16     A.   No, I didn't.
17     Q.   Who is Darren White?
18     A.   Darren White is the elected Sheriff of
19  Bernalillo County.
20     Q.   And how did you know of Darren White?
21     A.   I knew of Darren White because he was very
22  political.  And at one point he had tried to get a
23  law passed through the legislature claiming that New
24  Mexico needed to get tough on their violent
25  offenders, their repeat offenders.  So he started

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   using my name and my picture to support his
 2   three-strikes bill.
 3        Q.   And did he use your name because of your
 4   conviction for involuntary manslaughter of your
 5   cousin, for the murder of your wife, and for
 6   ordering the murder of Matthew Cavalier?
 7        A.   Yes.
 8        Q.   And how did that strike you, that he was
 9   using you as the poster child for this?
10        A.   Well, they put my name out there and made
11   me look, like, bigger in the limelight.  I didn't
12   mind.  When you're in that lifestyle, you want
13   people to think that you can call a hit on a
14   sheriff.
15        Q.   So at the time that this was happening,
16   did you actually like that he was using you as a
17   poster boy?
18        A.   Yes.
19             MR. BECK:  Your Honor, if we're going to
20   take a later lunch, might this be a good time for a
21   break?
22             THE COURT:  All right.  We'll be in recess
23   for about 15 minutes and we will take a later lunch,
24   like we have some days, all days this week.
25             (The jury left the courtroom.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8192

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8193

```
 1              THE COURT:  All right.  So we'll be in

 2    recess for about 15 minutes.

 3              (The Court was in recess.)

 4              MR. BECK:  We should probably get -- there

 5    is something I want to do outside the presence of

 6    the jury.

 7              THE COURT:  Okay.  Go ahead.  We'll go on

 8    the record.

 9              MR. BECK:  So a few days ago, when Mario

10    Rodriguez was testifying, we talked about

11    information that Mr. Archuleta may have --

12              MR. LOWRY:  Your Honor, can we do this

13    outside of the presence of the witness?

14              MR. BECK:  Well, it's going to include his

15    testimony.

16              THE COURT:  Well, why don't y'all come up

17    here and we'll do it at the bench.

18              (The following proceedings were held at

19    the bench.)

20              MR. BECK:  So yesterday -- not yesterday,

21    but when Mario Rodriguez was here -- he has

22    testimony about Pup's murder conviction, Mr. Baca's

23    murder conviction.  We said that we thought it

24    better to wait until Mr. Archuleta testified to see

25    what he has to say about Mr. Baca's murder
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  conviction.  I received an email that I forwarded to

 2  counsel that day that says he has information about

 3  it.

 4          THE COURT:  Archuleta does?

 5          MR. BECK:  Yes.  From what I think, based

 6  on conversations with his lawyer and our arguments,

 7  I believe that it may not be firsthand information

 8  that we get from him.  But it is information that

 9  connects up to the SNM.  And so because the Court

10  for these preliminary determinations can rely on

11  hearsay, if indeed it is hearsay, it's important to

12  establish our record outside of the presence of the

13  jury as to how Mr. Baca's murder conviction is

14  related to the SNM.

15          THE COURT:  Well, I guess we can hear it.

16  I'm not quite convinced on this sort of stuff, but

17  you know --

18          MR. LOWRY:  Hear this outside the presence

19  of the jury.

20          THE COURT:  Yeah, I'm not quite convinced

21  that I should be relying on inadmissible hearsay to

22  establish that this is an SNM hit.  If he's just

23  getting that information from somebody else, I'm not

24  sure it gives me a lot of confidence that I ought to

25  be letting it in.  But I'll hear what everybody has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8194

 1  to say.

 2          MR. BECK:  And I don't know exactly what

 3  he's going to say.  That's why I think it's better

 4  to do it now.

 5          MR. LOWRY:  And before we have a

 6  completion of a 104 hearing on that kind of

 7  evidence, as Ms. Duncan represented, we've looked

 8  through the entire transcript.  We talked to the

 9  original trial counsel, whose name is Candace

10  Stevens.  She ended up being a life-long prosecutor.

11  We talked about this case.  It was a death penalty

12  case when it happened.  It was robustly litigated,

13  and the issue of gangs was never presented.

14          THE COURT:  Let's let the Government make

15  its presentation, now that y'all haven't found

16  anything, but let's see what he has to say about it.

17  Go ahead.

18          (The following proceedings were held in

19  open court outside the presence of the jury.)

20          THE COURT:  All right.  Mr. Archuleta,

21  I'll remind you that you're still under oath.  Mr.

22  Beck is going to ask you some questions, and you may

23  get some questions from other people about a

24  particular event.

25          Mr. Beck.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                         104 HEARING

 2                     DIRECT EXAMINATION

 3  BY MR. BECK:

 4       Q.   Mr. Archuleta, are you familiar with Mr.

 5  Baca's -- with the murder that Mr. Baca performed in

 6  the Main facility at PNM?

 7       A.   Yes, I am.

 8       Q.   And about when did that happen?

 9       A.   About 1990, around there.

10       Q.   And where were you when it happened?

11       A.   I was in the Main facility cell block 5.

12       Q.   And where was Mr. Baca?

13       A.   He was being housed in cell block 4.

14       Q.   And who did Mr. Baca murder?

15       A.   He murdered Luis Velasquez.

16       Q.   And what happened the day before that

17  murder?

18       A.   There was a confrontation between Ray Baca

19  and Jesse Chavez.

20       Q.   And who is Ray Baca and who is Jesse

21  Chavez?

22       A.   These are known to me as big homies, the

23  SNM Gang members.  They had a drug dispute with two

24  other individuals that were not SNM members by the

25  name of Luis Velasquez and Gerald Alvarado.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   46   Page: 8197

```
 1        Q.   And so at this time --
 2             MR. LOWRY:  Objection, Your Honor.  Can we
 3   get a foundation for the basis --
 4             THE COURT:  Well, since it's 104, I'll
 5   let -- I'm curious about some of this, too.
 6   BY MR. BECK:
 7        Q.   And how did you know those -- sorry, who
 8   were the two SNM members?
 9        A.   Ray Baca and Jesse Chavez.
10        Q.   And how did you know they were SNM Gang
11   members?
12        A.   They were my big homies.  They were two
13   individuals that, when I came to the facility and
14   became a carnal, a brother, they shook my hand, gave
15   me a hug and said, "Welcome to the family."
16        Q.   And you said earlier -- just remind us,
17   when did you become an SNM member?
18        A.   Approximately 1988, '89, somewhere around
19   there.
20        Q.   So there was a drug dispute between Ray
21   Baca and Jesse Chavez, and who were the other two?
22        A.   Luis Velasquez and Gerald Alvarado.
23        Q.   Are they SNM members?
24        A.   No, they weren't.
25        Q.   And what happened with that drug dispute?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8197

 1        A.   As a result of that, the confrontation and

 2   the disputes, Gerald Alvarado pulled out a weapon

 3   and stabbed Jesse Chavez.

 4        Q.   All right.   And how did you know Anthony

 5   Ray Baca at this time?

 6        A.   He was a Big Homie of mine in the SNM.

 7        Q.   So that was the day before.   What happened

 8   the next day after this stabbing and drug dispute?

 9        A.   It might have been the next day or a few

10   days, but Luis Velasquez was retaliated on and

11   killed.

12        Q.   And who retaliated on Luis Velasquez?

13        A.   Ray Baca and Robert Gutierrez.

14        Q.   And why do you say "retaliated"?

15        A.   Well, the day before, a brother was

16   stabbed.   Luis Velasquez was with the person who did

17   the stabbing, so it was a form of retaliation.   You

18   stab one of us and we kill you.

19        Q.   Is that an SNM rule, that if an SNM member

20   gets stabbed by someone else, then the SNM

21   retaliates by either stabbing or killing that other

22   person?

23        A.   Yes.

24        Q.   And if they can't get to that other

25   person -- in this case, Alvarado; was Alvarado

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8198

```
 1  segregated and locked up after --
 2       A.   Alvarado was segregated.  Jesse Chavez was
 3  taken to the hospital.  Ray Baca made it back to his
 4  unit.  And Luis Velasquez made it back to his unit.
 5       Q.   And Ray Baca was with Jesse Chavez when he
 6  was stabbed by Gerald Alvarado; right?
 7       A.   Yes, sir.
 8       Q.   And so it was the next day or sometime
 9  immediately afterwards that Ray Baca then stabbed
10  and killed Luis Velasquez; right?
11       A.   Yes, sir.
12       Q.   And is that why you say it was SNM
13  retaliation?
14       A.   Yes, sir; that and, if an incident takes
15  place and it involves SNM Gang members from start to
16  finish, it's SNM-related.
17       Q.   Were you there when Mr. Baca stabbed Luis
18  Velasquez and killed him?
19       A.   I wasn't present during the killing, but I
20  was in the facility, in cell block 5.
21       Q.   And before this time, did you see Mr. Baca
22  at the Main facility?
23       A.   Yes, I did.
24       Q.   And after this time, when he stabbed and
25  killed Velasquez -- well, who did you learn about it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8199

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   49  Page: 8200

```
 1    from first?  I'll ask that question.

 2         A.    The murder?

 3         Q.    Right.

 4         A.    From a correctional officer during

 5    lockdown.

 6         Q.    After the murder, were you in cell block

 7    5?  Were you locked down?

 8         A.    Yes, we were.

 9         Q.    At some point later did you see Mr. Baca?

10         A.    Yes, I did.

11         Q.    Where was that?

12         A.    In Q pod at the North facility.

13         Q.    And what is Q pod at the North facility?

14         A.    It's a lockup facility.  It's a pod, the Q

15    pod.  It houses, like, 12 inmates.

16         Q.    Are those 12 inmates on any special

17    conditions?  That is a death row pod?

18         A.    Yes, it was a death row pod.

19         Q.    How close in time to when Mr. Velasquez

20    was stabbed and killed was it when you saw Mr. Baca

21    in Q pod?

22         A.    It was during his trial, so I don't know

23    exactly.  Maybe a year or two.

24         Q.    And did you know Mr. Baca was being tried

25    for the murder of Luis Velasquez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8200

```
 1        A.    Yes, I did.

 2        Q.    How did you know that?

 3        A.    Because I was with him when he was going

 4   to trial.  I was housed with him in the unit, and it

 5   was all over the news.

 6        Q.    Was Mr. Baca an SNM member after Jesse

 7   Chavez was stabbed and while -- when he killed Luis

 8   Velasquez?

 9        A.    Yes, he was an SNM member.

10        Q.    And as an SNM member, does a murder help

11   your reputation with the SNM?

12        A.    Yes, it does.

13        Q.    Does it help even more if it's a murder

14   for the SNM or, as you said, a retaliation murder

15   for the SNM?

16        A.    Yes, it does.

17        Q.    And in your opinion, did this murder --

18   did it help make Mr. Baca your Big Homie or the

19   leader of the SNM?

20        A.    He was my Big Homie before the murder, but

21   it increased his status after the murder.

22        Q.    Did it increase his status with all the

23   SNM?

24        A.    Yes, it did.

25        Q.    Is that a reason that he was the leader of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8201

```
 1   the entire SNM?

 2        A.   Yes, it was.

 3        Q.   Where did this murder happen?

 4        A.   It happened in the main corridor at the

 5   Main facility in front of cell block -- or

 6   approximately in front of the canteen area.

 7        Q.   And in the main corridor of the Main

 8   facility, is that right outside where the

 9   corrections officers are sitting in the control

10   booth?

11        A.   In that general area, yes.

12        Q.   And given that the murder happened there

13   in the main corridor, is that significant in any way

14   to you and to the SNM?

15        A.   Yes, it is.

16        Q.   Why?

17        A.   Because of the way he did it.  He did it

18   in front of everybody.  And --

19        Q.   Did that add to his reputation or

20   credibility with the SNM?

21        A.   I would say so, yes.

22        Q.   Did that contribute to him being a leader

23   of the entire SNM?

24        A.   It contributed, yes.

25             MR. BECK:  That's all I've got, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8202

1    Honor.

2          THE COURT:  All right.  Thank you, Mr.

3    Beck.

4          Mr. Lowry, do you have cross-examination?

5          Why don't you just go ahead and tell the

6    jury to go back and relax in the jury room.

7          Mr. Lowry.

8          MR. LOWRY:  Thank you, Your Honor.

9                CROSS-EXAMINATION

10   BY MR. LOWRY:

11         Q.   Good day, Mr. Archuleta.

12         A.   Good day.

13         Q.   So you weren't present when this happened,

14   either event, the events the day before or the event

15   that happened in the main corridor of the Old Main?

16         A.   I was not present at the actual assault

17   and murder site; correct.

18         Q.   And you weren't present the day before,

19   and I think -- let me get the names correctly

20   again -- it was Mr. Baca -- who were the four

21   individuals involved in the altercation?

22         A.   Mr. Baca, Jesse Chavez, Gerald Alvarado,

23   and Luis Velasquez.

24         Q.   And neither Alvarado or Luis Velasquez

25   were gang-affiliated at all?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    No, sir.

2      Q.    And do you know anything about Luis

3  Velasquez' criminal history?

4      A.    That he was a killer.

5      Q.    He was a cold-blooded killer, wasn't he?

6      A.    He had a murder conviction, so that's why

7  I say that.

8      Q.    All right.  And he also was pretty

9  notorious at the Old Main for raping people.

10      A.    I didn't -- I wasn't aware of that.

11      Q.    Okay.  So you didn't have any idea that

12  that --

13      A.    Yeah, I -- I didn't have no idea.

14      Q.    So you really didn't know much about Mr.

15  Velasquez?

16      A.    Correct.

17      Q.    And you didn't overhear any part of the

18  conversation that took place the day before between

19  Mr. Velasquez and Mr. Baca?

20      A.    No, I didn't.

21      Q.    And you weren't aware that other people in

22  the facility knew that Mr. Velasquez was trying to

23  kill Mr. Baca?

24      A.    I was not aware of that.

25      Q.    Were you aware that other people thought

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8204

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   54  Page: 8205

 1   that Mr. Velasquez had a knife in his pocket to kill

 2   Mr. Baca at any time?

 3        A.   I have no knowledge of that.  I was not

 4   aware.

 5        Q.   Let me step back for a second.  It doesn't

 6   matter if you're gang-affiliated or if you're not.

 7   But when you're in prison, it's a different cultural

 8   environment, isn't it?

 9        A.   Yes, sir.

10        Q.   Nobody can get punked out, can they?

11        A.   No, sir.

12        Q.   If you get punked, you're punked for

13   forever?

14        A.   Yes, sir.

15        Q.   And so it's imperative, no matter who you

16   are in the prison environment, to demonstrate you're

17   not going to be punked out?

18        A.   Yes, sir.

19        Q.   And if somebody is going to try to kill

20   you, you need to protect yourself?

21        A.   I would say so, yes.

22        Q.   By all means necessary?

23        A.   Yes, sir.

24        Q.   And if that's the case and you

25   legitimately think somebody is trying to kill you,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8206

```
 1   you're going to settle that score?

 2        A.   I would think so.

 3        Q.   Now, you said a lot about what you thought

 4   about what transpired between the day before and

 5   when Mr. Baca got into the altercation with Mr.

 6   Velasquez.

 7        A.   Yes.

 8        Q.   But you don't have any firsthand knowledge

 9   of what transpired in either event?

10        A.   No, only what brothers translated to me

11   after the fact.

12        Q.   Okay.  And like any kind of rumor mill,

13   brothers can be wrong?

14        A.   They can be wrong, but it became obvious

15   exactly what happened and why it happened over the

16   years.

17        Q.   What do you mean, it became obvious?

18        A.   Well, starting from the first incident,

19   where a brother got stabbed by another group of

20   people, and Luis Velasquez was with him, it was

21   automatic that he would be retaliated on, and that

22   Luis would be targeted.

23        Q.   But you just agreed with me that nobody,

24   whether you're gang-affiliated or not, in the prison

25   wants to be punked out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8206

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   56   Page: 8207

```
 1        A.   Right, but you can't deny that -- what led
 2   up to that murder, which was the assault on Jesse
 3   over drugs.
 4        Q.   But you don't know that that was over
 5   drugs?
 6        A.   Yes, I do.
 7        Q.   How?
 8        A.   I got -- other brothers told me that were
 9   there with him in cell block 4.
10        Q.   Okay.  So you're relying again on other
11   people's information to give you an opinion or an
12   impression about what happened?
13        A.   Yes.
14        Q.   And you don't know that for a fact?  It's
15   gossip?
16        A.   I wouldn't say it was gossip.  I would say
17   it was the truth.
18        Q.   You would say it's hearsay?
19        A.   I wouldn't say it was hearsay.
20        Q.   Well, you didn't see it firsthand?
21        A.   You're right.
22        Q.   You heard it from somebody else?
23        A.   Yes.
24        Q.   Who heard it from somebody else?
25        A.   Not necessarily heard it from someone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8207

```
 1    else, but was there when the initial confrontation
 2    took place, when the drug dispute was created.
 3         Q.   What kind of drugs are we talking about?
 4         A.   Heroin.
 5         Q.   How much?
 6         A.   A lot.  An ounce, maybe.  I don't know
 7    exactly how much, but this individual had a lot of
 8    heroin.
 9         Q.   Who is this individual?
10         A.   Dennis Trujillo.
11         Q.   And who is Dennis Trujillo?
12         A.   Dennis Trujillo is a brother that was
13    housed with Ray Baca and Jesse Chavez in cell block
14    4.
15         Q.   So are you telling us now that this was a
16    collection hit?
17         A.   No, sir.  I'm saying that when this all
18    started, Gerald Alvarado was at the grill of cell
19    block 4 trying to collect drugs from Dennis
20    Trujillo.  He didn't come away with any drugs, and
21    that's what started the dispute.  It was a
22    confrontation over that in the yard -- I mean, in
23    the corridor, and as a result, Gerald Alvarado
24    stabbed Jesse Chavez.
25         Q.   Over not scoring drugs?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8208

```
 1        A.   Over not -- basically not getting -- the
 2   issue that he thought he had coming from Dennis
 3   Trujillo.  Dennis Trujillo was influenced, or he was
 4   there with Ray Baca and all the rest of the
 5   brothers.  I mean -- okay.
 6        Q.   But you don't know if they were there just
 7   to say, "We're going to take you out," and it might
 8   not have been drug-related at all.
 9        A.   I know that it was drug-related.
10        Q.   You believe it was drug-related.
11        A.   Yes, I believe it was drug-related.
12        Q.   You don't know that it was drug-related.
13   So you don't know anything about Mr. Velasquez's
14   background?
15        A.   I know that he was from Colorado and he
16   had a murder conviction.
17             MR. LOWRY:  May I have a moment, Your
18   Honor?
19             THE COURT:  You may.
20   BY MR. LOWRY:
21        Q.   Do you know who was with Mr. Baca --
22   pardon me.  Do you know who was with Mr. Baca the
23   day Velasquez was murdered?
24        A.   Yes.  Robert Gutierrez.
25        Q.   And he was acquitted, wasn't he?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   59 Page: 8210

```
 1        A.   Yes, he was.

 2        Q.   And you didn't speak to either of the

 3   other individuals in the altercation the day before:

 4   Mr. Alvarado or Mr. Chavez?

 5        A.   No.

 6        Q.   And you weren't there?

 7        A.   Right.  I wasn't there.

 8             MR. LOWRY:  No further questions, Your

 9   Honor.

10             THE COURT:  All right.  Thank you,

11   Mr. Lowry.

12             Does any other defendant have any

13   questions they wish to ask Mr. Archuleta on this

14   murder?

15             MR. VILLA:  No, Your Honor.

16             THE COURT:  All right.  Mr. Beck.

17                  REDIRECT EXAMINATION

18   BY MR. BECK:

19        Q.   Mr. Archuleta, you mentioned Dennis

20   Trujillo as being the one with the drugs.  Was he an

21   SNM member?

22        A.   Yes, he was.

23        Q.   And if this wasn't over drugs -- if, for

24   some reason, hypothetically, let's say, Gerald

25   Alvarado and Luis Velasquez stabbed Jesse Chavez
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   when he was with Ray Baca, if they stabbed two SNM

 2   members -- would it still be automatic for the SNM

 3   to retaliate under the SNM rules?

 4        A.   Yes, it would.

 5        Q.   You said you learned about the details of

 6   this over the years.  Approximately how many

 7   times -- and often, over the years since I think you

 8   said 1990, have you talked with other SNM members

 9   about this murder?

10        A.   It wasn't over the years.  It was

11   immediately after the stabbing.

12        Q.   And who did you talk with immediately

13   after the stabbing?

14        A.   After the first incident, Luis

15   Velasquez -- I mean with -- yeah, Gerald Alvarado

16   stabbing Jesse Chavez, there was a high-ranking

17   member who lived with us in cell block 5 by the name

18   of Albert Chavez.  Once lockdown was called, we were

19   in the cell block, locked down.  We weren't locked

20   in our cell.  As he entered the pod, he called a

21   meeting between the brothers, at which time he gave

22   us details that he was a witness to, that he

23   witnessed Gerald Alvarado stabbing Jesse Chavez, and

24   that it was on -- he mentioned that he thought Pup

25   managed to get back to the cell block, and that Luis
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8211

 1  Velasquez had made it to his cell block.  He made it
 2  clear that he mentioned Luis Velasquez being with
 3  Gerald Alvarado at the time.  He said Gerald
 4  Alvarado stabbed Jesse, and stated that it was on,
 5  meaning that there was going to be some form of
 6  retaliation on Luis Velasquez.
 7       Q.   And that was after the stabbing of Jesse
 8  Chavez, but before Mr. Baca killed Mr. Velasquez?
 9       A.   Yes, yes.
10            MR. BECK:  Nothing further, Your Honor.
11            THE COURT:  All right.  Did you have
12  something further, Mr. Lowry?
13            MR. LOWRY:  No, Your Honor.  But actually,
14  we'd like to call Special Agent Bryan Acee to the
15  stand.
16            THE COURT:  What for?
17            MR. LOWRY:  Well, Your Honor, Mr. Acee has
18  done a pretty extensive investigation into this
19  organization and the SNM.  And he's interviewed
20  other witnesses that have flatly contradicted this
21  witness' testimony.  And unfortunately, we don't
22  have them here today, but we do have Mr. Acee, and
23  he's interviewed them.  And since this is a 104
24  hearing and we can entertain hearsay, we can
25  entertain Mr. Acee's recollection about what these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8212

```
 1  other people had to say about this very exact same
 2  incident.
 3            THE COURT:  What's your thoughts, Mr.
 4  Beck?
 5            MR. BECK:  I think that's fair.  I think
 6  that -- I think it may be better not to do this
 7  right now just because of timing.  I don't think --
 8  based on what I heard, I don't intend to bring out
 9  that information with Mr. Archuleta at this time,
10  because I think --
11            THE COURT:  What Mr. Baca said about the
12  Velasquez murder?
13            MR. BECK:  His admission about the
14  Velasquez murder.  I guess I don't know exactly from
15  the witness what Mr. Baca said to him.  I think he
16  talked about -- I think he talked about it while
17  they were in the cell together.  Well, I guess,
18  yeah, I guess that's true.  I might -- so I don't
19  know.  But if he does know something, I would like
20  to bring that out on direct.  So I guess we should
21  probably proceed with Mr. Acee.
22            THE COURT:  Well, before we have Mr. Acee,
23  would it be best to hear what -- out of the presence
24  of the jury -- what Mr. Archuleta is going to say
25  that Mr. Baca said?  And that way, you can then
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   decide whether you want to use it or not.  If you're
 2   not going to use it, this issue is becoming rather
 3   moot.
 4               MR. BECK:  I don't think it's moot,
 5   because we said we might call back Mr. Rodriguez.
 6   But you're up there, and there is a good reason for
 7   that, and I will take your advice and listen to what
 8   Mr. Archuleta has to say right now.
 9               THE COURT:  All right.  Let's hear that.
10   We'll maybe excuse him and put Mr. Acee on the
11   stand.
12               MR. LOWRY:  May I stay here, Your Honor?
13               THE COURT:  That's fine.
14               Go ahead, Mr. Beck.
15   BY MR. BECK:
16        Q.   Mr. Archuleta, you said earlier that when
17   you were housed with Mr. Baca in Q pod, while he was
18   going to trial, you talked with him.  Did he say
19   anything to you during that time about his murder?
20        A.   No, he didn't.
21               MR. BECK:  Okay.  That's sort of what I
22   expected.
23               THE COURT:  Okay.
24               MR. BECK:  So that's why I don't think I
25   intend to get into anything in this with Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8214

```
 1   Archuleta.  I just wanted to lay that --

 2            THE COURT:  You just want him to provide

 3   the backdrop for Mr. Montoya to testify?

 4            MR. BECK:  Right.  So I think Mr. Baca is

 5   entitled to present a witness for a 104 hearing, as

 6   well, if he can contradict it.  But we might use Mr.

 7   Archuleta while he's here now.

 8            THE COURT:  Why don't I have the transport

 9   officer take Mr. Archuleta and stand by the door.

10   Let me see how long this takes.

11            Do you want to drag a chair in there or

12   something like that?  That would be fine.  But let's

13   don't go too far off.

14            All right.  Mr. Acee, if you'll come up.

15   Before you're seated -- well, I'll just remind you,

16   you're still under oath.  I think you're subject to

17   re-call throughout, so I'll just remind you you're

18   still under oath.

19            All right.  Mr. Lowry, if you wish to

20   conduct examination of Mr. Acee, you may do so at

21   this time.

22       Q.   Yes, Your Honor, I do.  Thank you.  May it

23   please the Court?

24            THE COURT:  Mr. Lowry.

25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8215

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   65 Page: 8216

```
 1                      BRYAN ACEE,

 2         after having been previously duly sworn under

 3         oath, was questioned, and continued testifying

 4         as follows:

 5                      CROSS-EXAMINATION

 6   BY MR. LOWRY:

 7         Q.   Good afternoon, Special Agent Acee.

 8         A.   Good afternoon.

 9         Q.   Agent Acee, you're familiar with a witness

10   who was just here this morning, Julian Romero?

11         A.   Yes, sir.

12         Q.   And I believe it was on March 31 of 2017

13   you picked up Mr. Romero and transported him, I

14   think, from Albuquerque to the Old Main facility and

15   did a tour of Old Main with him?

16         A.   Yes.

17         Q.   And you tape-recorded that?

18         A.   I did.

19         Q.   And during that whole -- throughout the

20   day, in the tape-recordings you discuss many things.

21   But do you recall discussing with him at the Old

22   Main, as you walk down the corridor, the murder that

23   happened where Mr. Velasquez lost his life?

24         A.   Yes.

25         Q.   Do you recall Mr. Romero telling you that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8216

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8217

```
 1   Velasquez had a knife in his pocket with Anthony
 2   Baca's name on it?
 3        A.   That does sound familiar.
 4        Q.   Okay.  And after you completed that
 5   tour -- and he said it not once, but I think twice,
 6   that, you know, this was a simmering feud between
 7   these two guys.
 8        A.   That sounds familiar.
 9        Q.   And afterwards, you wrote a report based
10   on your visit?
11        A.   Yes, sir.
12        Q.   And would it be fair to say that in your
13   report -- and I'm happy to share this with you, but
14   may I read it to you?
15        A.   Fine with me.
16        Q.   You wrote in your report at Bates --
17   DeLeon Bates No. 24256 regarding this, it says, "The
18   murder Anthony Baca committed at the Old Main was
19   preemptive and based on an ongoing feud with another
20   inmate."
21             MR. LOWRY:  May I approach, Your Honor?
22             THE COURT:  You may.
23   BY MR. LOWRY:
24        Q.   Did I read that correctly?
25        A.   Yes, sir, you did.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8217

```
 1        Q.    And through your interview with Julian

 2   Romero, did you have any sense that that was wrong?

 3        A.    No.

 4              MR. LOWRY:  No further questions, Your

 5   Honor.

 6              THE COURT:  All right.  Thank you, Mr.

 7   Lowry.

 8              Mr. Beck.

 9                    REDIRECT EXAMINATION

10   BY MR. BECK:

11        Q.    Special Agent Acee, is everything that

12   every cooperator has told you in this case true?

13        A.    No.

14        Q.    Do you know whether Julian Romero had

15   firsthand information about what he told you about

16   Pup's murder?

17        A.    No.

18        Q.    When Mr. Romero came in and testified

19   today, this morning, do you think he was completely

20   forthright and truthful with his testimony?

21              MR. LOWRY:  Objection, Your Honor.  He's

22   not a lie detector.

23              THE COURT:  Well, I may not consider it,

24   because it's vouching.  But let me hear where we're

25   going, then I'll make a decision.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    68  Page: 8219

 1        A.   He was not.

 2   BY MR. BECK:

 3        Q.   Why did you think that?  Before we get

 4   there, what did you tell me after Mr. Romero

 5   testified this morning when we were on break?

 6        A.   He resorted back to the convict code.  He

 7   didn't want to name any names.  He was more

 8   forgetful than normal.

 9        Q.   And was that when I asked about who shot

10   him in 2003?

11        A.   That, and the video.  He knows who was in

12   the pod and who hit him.  We've talked about it

13   dozens of times at length.

14        Q.   And when he talked about who was in the

15   pod this morning, he didn't name any names until I

16   asked him about specific people.  Do you remember

17   that?  Or he named Mr. Aronda, right?  One person?

18        A.   He only said Pete.  He couldn't remember

19   his last name.

20        Q.   And aside from Mr. Aronda this morning,

21   did he, as you recollect it -- and your recollection

22   may be different than mine -- did he name anyone

23   else here in the courtroom who participated with him

24   in criminal activity?

25        A.   No, he did not.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MR. BECK:  Nothing further, Your Honor.

 2          THE COURT:  All right.  Thank you, Mr.

 3  Beck.

 4          Mr. Lowry?

 5                  RECROSS-EXAMINATION

 6  BY MR. LOWRY:

 7      Q.   Agent Acee, notwithstanding the testimony

 8  from this morning, you didn't have any reason to

 9  believe that Mr. Romero wasn't forthcoming with you

10  on March 31, 2017, did you?

11      A.   No.

12      Q.   And if you thought he wasn't being

13  truthful and honest, would you present him as a

14  witness on behalf of the United States?

15      A.   That's a tricky question.

16      Q.   It's one that deserves a fair answer.

17      A.   Well, I first would try to flesh out the

18  truth, and then I'd make all of that known to the

19  U.S. Attorney's Office.

20      Q.   Right.  I understand that.  But my

21  question to you is that if you, as an agent of the

22  United States, thought that a witness was going to

23  be less than truthful or honest, would you allow

24  them to take the stand in a court of law?

25      A.   I think I misunderstood your question.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8220

1   No, I would not.

2        Q.   And with regard to the truthfulness of the

3   witnesses that were heard from today, I believe --

4   were you at the last debrief with Gerald Archuleta

5   on January 22, 2018, when he was preparing for this

6   case?

7        A.   No.

8        Q.   But you did do an audio recorded interview

9   with Gerald Archuleta on May 8 of 2017?

10        A.   Yes, sir.

11        Q.   And during that audio recording of Mr.

12   Archuleta, you asked him point-blank who called him

13   after the Julian Romero assault at Southern on July

14   13, 2015?

15        A.   Yes.

16        Q.   Do you recall his answer in the May 8,

17   2017, interview?

18        A.   No.  And I'm sorry, I didn't know I was

19   going to be up here today, or I would have prepared

20   better.

21        Q.   That's fair.  Would you accept my

22   representation to you that in the audio recording

23   that we can all go back and check, he said that he

24   got a single call when he was talking to Chris

25   Garcia about getting Suboxone; and during that call,

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

DNM 8221

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   71 Page: 8222

```
 1   Garcia mentioned the Romero assault.

 2        A.   That sounds familiar.

 3        Q.   He didn't get calls from anyone else?  Not

 4   Carlos Herrera, not Lupe Urquizo?

 5        A.   No, I remember asking about Lupe and I

 6   don't think he recalled that.

 7        Q.   That's correct.  You're absolutely right.

 8   You gave him a point-blank question, if Lupe Urquizo

 9   had called him.  And he said no, he had not.

10        A.   No, and I don't believe I ever asked him

11   if Carlos Herrera called him.

12        Q.   And you did not.

13             MR. LOWRY:  May I approach, Your Honor?

14             THE COURT:  You may.

15   BY MR. LOWRY:

16        Q.   Nonetheless, in his trial preparation

17   debrief with the United States -- and I don't

18   believe you were there for that meeting -- but it

19   says that he met with the Assistant U.S. Attorney

20   Matthew Beck at the courthouse to prepare, and that

21   during that conversation, he told Mr. Beck that he'd

22   received three calls from Carlos Herrera, Lupe

23   Urquizo, and Christopher Garcia.

24        A.   That's what it says, sir.  And you're

25   correct, this is not my report, and I wasn't there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       Q.   Fair enough.   But -- and my point is:

2   Even when he took the stand today, the story changed

3   yet again, and he said he'd only heard from one

4   person.   He went back to your May 8 version, which

5   is:   He only heard from Chris Garcia.

6       A.   I did hear him say that today.

7       Q.   And that's the only name he mentioned with

8   regard to this call.

9       A.   Today in court, yes.

10      Q.   And my point is:   When you're talking

11  about credibility assessments with individuals, it's

12  a difficult proposition on a good day.

13      A.   Some individuals more than others.

14      Q.   So if you're inclined to disbelieve Julian

15  Romero for reverting to the convict code, are you

16  similarly inclined to disbelieve Gerald Archuleta

17  for reverting to the SNM code?

18      A.   I may not understand the question.

19      Q.   Okay.   Let me simplify it.   Mr. Archuleta

20  came in, took the stand, took the oath, swore to

21  tell the truth.   And he stood up and canvassed the

22  room and couldn't recognize Mr. Baca.

23      A.   Well, I looked at Mr. Baca, and he had his

24  head down.   It was hard for me to find him.   So I

25  don't know how to answer that one.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8224

73

 1    Q.   You don't think that was resorting to the

 2  convict code?

 3    A.   No.  I think Archuleta has trouble seeing,

 4  too.  He has a couple pairs of glasses.  I think

 5  these are just reading ones.  He may not have

 6  brought his Coke bottle -- his other glasses.

 7    Q.   That's your speculation.

 8    A.   It is, yeah.

 9    Q.   You don't know what his eye prescription

10  is.

11    A.   No.  I know he has bad eyesight.  I've

12  witnessed that.  But I don't know what his

13  prescription level is.

14    Q.   Short-range or long-range?

15    A.   I don't know.  We'd have to hang out some

16  more.

17         MR. LOWRY:  No further questions, Your

18  Honor.

19         THE COURT:  Thank you, Mr. Lowry.

20         Mr. Beck?

21         MR. BECK:  Briefly.

22              REDIRECT EXAMINATION

23  BY MR. BECK:

24    Q.   Special Agent Acee, who wrote this report

25  that you just read from?

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                              1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1          A.    Nancy Stemo.

 2          Q.    Was there a recording associated with

 3    this?

 4          A.    I don't believe so.

 5          Q.    Do you know of a recording that was

 6    associated with this?

 7          A.    No.

 8          Q.    Mr. Archuleta's testimony today -- was

 9    that consistent with how he answered in your

10    interview before, about the call with Chris Garcia?

11          A.    Yes.

12          Q.    And again, you weren't there on January

13    22, 2018, when Nancy Stemo took this report, were

14    you?

15          A.    No, sir.

16                MR. BECK:  All right.  Nothing further,

17    Your Honor.

18                THE COURT:  All right.  Thank you, Mr.

19    Beck.

20                Anybody else have any questions of Mr.

21    Acee on this issue?

22                All right.  Mr. Acee, you may step down.

23    Thank you for your testimony.

24                Here's my problem, Mr. Beck, is if you

25    don't have any admissible -- I know I can consider
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   inadmissible evidence in a 104.  But once we go back

2   in front of the jury, you're wanting to put a

3   statement by Mr. Baca that he committed this murder.

4   There is nothing in that statement that says it's an

5   SNM murder.  It just is a statement that he did the

6   murder, if I remember the statement that you put.

7   And so therefore, there is not going to be anything

8   in front of the jury that links it to an SNM murder.

9   There is now in front of me hearsay evidence, and I

10  can consider that.  The problem is:  Once we're back

11  in front of the jury, we're throwing out a murder

12  and I don't know how the jury decides it is or is

13  not an SNM murder, because we're not giving them any

14  admissible evidence.

15         MR. BECK:  I think -- I'm sorry.

16         THE COURT:  It's sort of -- I mean, I

17  guess they could implicitly think that the Court

18  think it's an SNM murder and therefore it's

19  relevant.  But it troubles me a little bit we're not

20  giving the tools to the jury to make that

21  determination.

22         MR. BECK:  I expect that the tools for the

23  jury will come from Mr. Rodriguez' testimony about

24  Mr. Baca's admission.  The other tools the jury has

25  is a wealth of information, not only from Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8226

1  Archuleta, but from the litany of cooperators who

2  have testified about the SNM retaliating against

3  other gang members when they're hit over drugs,

4  because someone is stabbed, and you just heard Mr.

5  Archuleta.  It doesn't have to be over drugs.  It

6  can be just because two people are stabbed.

7          There are a number of bad acts that come

8  in for every defendant in this case and in the

9  second trial that the jury doesn't have a lot of

10  information about why they are SNM hits, beside just

11  that they committed this crime while they were in

12  SNM or while they were being recruited for SNM.

13          So that's not a concern of mine, and it's

14  not as if it's a collateral estoppel issue.  The

15  Court is not going to instruct that the jury must

16  find or must presume that Mr. Baca committed this

17  murder at all.  Rather, it's just evidence of the

18  enterprise.  It's evidence of the racketeering

19  activity that the jury is to consider along with any

20  other evidence, and if they don't see that the

21  United States proved beyond a reasonable doubt that

22  it was connected, then they're not going to use it

23  for enterprise activity.

24          THE COURT:  But I don't see any admissible

25  evidence that helps them make that determination one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8227

1  way or another.  The only way they would make it is

2  to listen to this evidence, which they can't do, Mr.

3  Archuleta's.

4          MR. BECK:  They've heard the evidence of

5  the way in which SNM retaliates; that if someone

6  from SNM is stabbed, another person from SNM

7  retaliates in favor of that.  They can -- you know,

8  we can get out, from Mr. Archuleta, that he knows

9  these two people to be SNM members and the other two

10  people to not be SNM members.  We can get that

11  information out so they have the tools to infer that

12  when Mr. Baca then later murders this person, it was

13  an SNM hit, because he was with another SNM member

14  who was stabbed by someone who is not another SNM

15  member, or -- and he doesn't even need to know that

16  he was stabbed; just that they were put in lockdown

17  right afterwards, and someone was put in

18  segregation.

19          So there is enough information for them to

20  link it up with the inferences that they're allowed

21  to make, to find that it's racketeering activity.

22          THE COURT:  Let me give it some thought.

23  I'm not persuaded yet it's coming in.  But let me

24  look a little bit.  Somebody may have written on

25  this, or commented on it, and stuff.  But I'm not

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 8228

 1   quite convinced that if there is not admissible

 2   evidence -- and I'm not sure there is.  I think what

 3   the jury is going to do is, they're going to say,

 4   "Well, the judge let this murder in.  Therefore, it

 5   must be SNM-related," and not go through the task,

 6   because they haven't had to do that for anything

 7   else.  It's just been spoon-fed to them.  And I'm

 8   not sure they're going to separate this one out and

 9   say, "Well, we don't know why" -- and question

10   whether it should be -- they should be making the

11   determination that it's SNM-related.

12            MR. BECK:  Sure.

13            THE COURT:  Let me give it some thought.

14            MR. BECK:  Sure.  I understand the Court's

15   position.  I think that's a fair call to make.

16            It's come to my attention, based on what

17   defense counsel said, and then a discussion with Ms.

18   Armijo, that they are not in receipt of the Saturday

19   302 on Mr. Archuleta and, I'm guessing, other people

20   that we met with on Saturday.  I thought that was

21   disclosed.  It must not be yet, so I'd just ask to

22   disclose it.  Apparently, it was just disclosed.  So

23   that came to my attention.  I'm raising it now.

24   We're at fault for not disclosing that.

25            Mr. Archuleta and I met on Saturday.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8229

 1   That's where we discussed this incident and his

 2   Suboxone use while cooperating.  So I guess the

 3   defendants now have that.  When Mr. Lowry came up

 4   and asked about the last debrief on January 22, it

 5   tipped in my mind that wasn't the last debrief.  And

 6   so I want to put that on the record so that they can

 7   have that information and raise with the Court

 8   whatever they need to.

 9           THE COURT:  Okay.  Mr. Lowry.

10           MS. FOX-YOUNG:  Your Honor, I think Mr.

11   Beck said that there were several meetings on

12   Saturday, and I don't believe we have any other 302s

13   from the other meetings.  So I'd ask that the

14   Government produce those forthwith.

15           THE COURT:  Is there just one 302 from

16   Saturday?

17           MR. BECK:  I don't think so.  I think

18   there are a number.

19           MS. ARMIJO:  I think there is just --

20   before I sent that other one, I sent another one

21   they should have, as well.  Did you receive that,

22   Ms. Jacks?

23           MS. JACKS:  I received that.

24           MS. ARMIJO:  There was one regarding

25   Frederico Munoz and one regarding Gerald Archuleta.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8230

 1   And I believe there will be one regarding Mario

 2   Montoya.  He's not expected to testify till next

 3   week.  And the formal discovery is going out today.

 4   And they'll be sent directly to you as well as to

 5   Mr. Aoki.

 6              THE COURT:  All right.  Mr. Lowry?

 7              MR. LOWRY:  Your Honor, I appreciate the

 8   Court's insight into this issue.  I don't want to

 9   belabor the point, but it bears repeating that this

10   1989 murder was a capital case.  And if this was

11   gang-related, that would have been an aggravating

12   factor for the jury to consider in the capital case.

13   And despite all the resources of the State of New

14   Mexico -- again, Ms. Duncan and I looked at that

15   trial transcript, we've talked to the trial attorney

16   who handled it.  We talked to the appellate

17   attorney.  There was no gang affiliation related to

18   that prosecution.

19              It boggles one's mind that 20-some-odd

20   years after the fact, they want to make it a gang

21   case, when, in the heat of the moment, when they

22   were trying to take Mr. Baca's life from him, gangs

23   had nothing do with it.  And I don't think that the

24   collective memory of either the witnesses or the

25   community is going to get better over time, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8231

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8232

```
 1   Honor.

 2           Thank you.

 3           THE COURT:  Thank you, Mr. Lowry.

 4           Ms. Bhalla.

 5           MS. BHALLA:  Just briefly, Your Honor.  I

 6   think as we move forward with Mr. Archuleta and we

 7   start introducing the transcripts that -- just that

 8   I think it's just going to be a difficult process

 9   for everybody.  And that we try -- you know, if we

10   need to approach ahead of the exhibits coming in, I

11   would appreciate that.  And I'm sorry, but it's

12   just -- there is all -- you know, there is lots of

13   different issues to look at, Your Honor.  And one of

14   those is whether or not some of the stuff they're

15   admitting in this particular case has anything to do

16   with SNM activity.

17           And so I'd just ask that we take it as it

18   comes, I guess, Your Honor.

19           THE COURT:  All right.  Well, how long has

20   Mr. Herrera had the transcripts that you're going to

21   be using?

22           MR. BECK:  I believe we provided those

23   transcripts on Thursday -- I guess that would have

24   been Thursday, February 1st?  January 31?  Thursday,

25   February 1st, I think the transcripts were provided.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8232

1  And I believe the DVDs were provided Friday,

2  February 2.

3          THE COURT:  I do recall that when they

4  came in, you know, I was sort of -- I think I now

5  have a process for me to get through the material.

6  I didn't at the time they came in.  But I did sit

7  down and begin to look at them.  And I didn't have a

8  great deal of problem with what you're saying about

9  Mr. Herrera.  It seemed to me that it was very

10 low-level.  It seems very straightforward, what the

11 Government had done.

12         MS. BHALLA:  And I think the issue is,

13 Your Honor, that they're pulling out pieces of the

14 transcript to use.  And you know, we weren't sure

15 which pieces of the transcript they were going to

16 use at the time.  And I agree with you that I think,

17 after speaking to Mr. Beck, I think that some of it

18 there's not going to be an issue with it.  But on

19 some of it, I do see an issue with.  And so, for

20 example, I think that they're trying to introduce

21 evidence of an assault my client was involved in,

22 but there is no indication that that assault had

23 anything to do with the SNM.  And so I'm going to

24 have a 403 objection to that, the way it's being

25 presented, coming in.  And I just want the chance to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8233

```
 1   make the objections before it comes out.  It doesn't

 2   have to be lengthy.

 3             THE COURT:  All right.  Fair enough.

 4             MS. BHALLA:  Thank you, Your Honor.

 5             THE COURT:  All right.  Let's get Mr.

 6   Archuleta in here, and then we'll bring the jury in.

 7             MS. JACKS:  Your Honor, should Mr. Sanchez

 8   go ahead and put on the record his objections to

 9   these tape recordings of Mr. Herrera being admitted,

10   so we don't have to object to each one as it comes

11   in, in front of the jury?

12             THE COURT:  Well, again, these have been

13   out for a long time.

14             MS. JACKS:  I understand.  But these

15   aren't admissible against Mr. Sanchez.  My

16   understanding is, these are being admitted as

17   admissions of Mr. Herrera.

18             THE COURT:  Okay.  And what is -- what are

19   you then objecting to?

20             MS. JACKS:  So our objection is to all of

21   the recordings, based on the Fifth and Sixth

22   Amendments, as we previously argued, and the fact

23   that it's hearsay that, along with other evidence,

24   could be used to corroborate the informants that are

25   being offered against Mr. Sanchez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8234

```
 1                 THE COURT:  All right.  Okay.
 2                 MS. JACKS:  So given that I've made those
 3    objections, we won't be renewing them, we don't need
 4    to renew them each time.
 5                 THE COURT:  I understand what you're
 6    saying.  And I don't think you need to renew it.
 7                 MS. JACKS:  Thank you.
 8                 MR. LOWRY:  And Mr. Baca would join that.
 9                 THE COURT:  I understand the Defendants
10    are joining that.
11                 MR. VILLA:  Mr. Perez, as well, just for
12    the record.
13                 THE COURT:  Okay, Mr. Villa.  So noted.
14                 MR. BECK:  I think there will be evidence
15    of racketeering activity, enterprise activity within
16    these that may be admissible against all of them.
17    But we can take them as they come and listen to
18    what's said and raise those at the time.
19                 At this time, Your Honor, I'll move to
20    admit Government's Exhibits 206, 208, 210, 212, 214,
21    and 216.  That's six recordings that Mr. Archuleta
22    made of Mr. Herrera while they were incarcerated
23    together in 2016.
24                 THE COURT:  All right.  Any other
25    objections that need to be noted?  Otherwise, I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8235

```
 1    admit them into evidence.

 2            Ms. Jacks?

 3            MS. JACKS:  We've previously noted our

 4    objection, and I would simply note that I think it's

 5    going to be unduly confusing for the jury if these

 6    are admitted for some -- or parts of these

 7    conversations are somehow then admitted against

 8    everybody, and I would ask --

 9            THE COURT:  No, I'm going to give an

10    instruction as to all of it.  These are statements

11    by Mr. Herrera.  And so you'll get a limiting

12    instruction.  I think that's the easiest way to deal

13    with it.  And I think that's what we had planned on.

14            MR. BECK:  I think that's fair.

15            THE COURT:  I think we could go line by

16    line, and some of it might be state of mind.  But I

17    think we planned on these tapes to be rather

18    clear-cut.

19            Do you agree with that, Mr. Beck?

20            MR. BECK:  Yes, Your Honor.  I think

21    that's fair.

22            THE COURT:  So you'll get the instruction

23    as to all the tapes that are being made of Mr.

24    Herrera.

25            MS. JACKS:  Thank you very much.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8237

```
 1            MR. VILLA:  Your Honor, in response to the
 2   Court's inquiry, we have no other objection, other
 3   than what's been previously raised.
 4            THE COURT:  Okay.  Then, with that, then I
 5   will admit Government's Exhibit, 206, 208, 210, 212,
 6   214, and 216.
 7            (Government Exhibits 206, 208, 210, 212,
 8   214 and 216 admitted.)
 9            THE COURT:  All rise.
10            (Jury entered the courtroom.)
11            THE COURT:  All right.  Everyone be
12   seated.  Don't worry about lunch.  We're not going
13   to penalize you and start the clock now.  We've been
14   working in here, and we're going to have to give
15   Ms. Bean a break.  So we're going to go to 1:15 and
16   then we'll take a lunch break.  I appreciate your
17   patience.  As I told you in the preliminary,
18   sometimes we have to have a conference with the
19   attorneys and the parties, that actually saves time
20   in the end.  And I think this may be a good example
21   of it.  So I appreciate your patience.  We'll take a
22   break at 1:15.
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8237

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8238

```
 1                    GERALD ARCHULETA,

 2        after having been previously duly sworn under

 3        oath, was questioned, and continued testifying

 4        as follows:

 5              THE COURT:  All right.  Mr. Archuleta, I

 6   remind you that you're still under oath.

 7              THE WITNESS:  Yes.

 8              THE COURT:  Mr. Beck, if you wish to

 9   continue your direct examination of Mr. Archuleta,

10   you may do so at this time.

11              MR. BECK:  Thank you, Your Honor.

12                 CONTINUED DIRECT EXAMINATION

13   BY MR. BECK:

14        Q.   Mr. Archuleta, were you arrested in this

15   federal case in December of 2015?

16        A.   Yes, I was.

17        Q.   And where were you incarcerated, say, from

18   approximately February to April of 2016?

19        A.   I was being housed at the North facility.

20   I believe in Unit 2-A, maybe.

21        Q.   I think you already told the members of

22   the jury, but at that time did you agree to go into

23   the prison and make recordings of other inmates?

24        A.   Yes, I did.

25        Q.   Did you do that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE


MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8238

```
 1        A.    Yes, I did.

 2        Q.    During that period of time, were you

 3   housed next to Carlos Herrera?

 4        A.    Yes, I was.

 5        Q.    Did you record conversations with Mr.

 6   Herrera?

 7        A.    Yes, I did.

 8              MR. BECK:  At this time, Your Honor, may I

 9   publish and play for the jury portions of what's

10   been admitted as Exhibit 212?

11              THE COURT:  You may.  Before you do, these

12   are going to be recordings that Mr. Archuleta made

13   of Mr. Herrera talking, so you can use these in your

14   consideration of the charges against Mr. Herrera.

15   But you can't use them against anyone else.  And so

16   if you're taking notes, there's going to be a number

17   of these played.  You might want to really note

18   these.  These can only be considered as to Mr.

19   Herrera, and not the other three gentlemen.

20              All right, Mr. Beck.

21   BY MR. BECK:

22        Q.    And Mr. Archuleta, if you look on the

23   screen in front of you as it plays, it should show

24   you the transcript.

25              (Tape played.)
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8239

```
 1        A.    I'm having a hard time hearing.  Can you
 2   start the recording again?  I wasn't able to hear it
 3   for the first --
 4        Q.    We'll go ahead and start the recording
 5   Government's Exhibit 212, one more time.
 6              (Tape played.)
 7        Q.    Whose voice were we just listening to,
 8   Mr. Archuleta?
 9        A.    We were listening to the voice of Carlos
10   Herrera.
11        Q.    And Mr. Archuleta, do you wear glasses?
12   Do you have trouble with your eyesight?
13        A.    These are reading glasses, yeah.
14        Q.    Do you generally have trouble with your
15   eyesight, though?
16        A.    Reading, yes.
17        Q.    Do you see Mr. Herrera here in the
18   courtroom?
19        A.    Yes, I do.
20        Q.    And where is he?
21        A.    He's over there with the black or
22   dark-blue suit.
23              MR. BECK:  Let the record reflect he
24   acknowledged the defendant, Mr. Herrera.
25              THE COURT:  The record will so reflect.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8240

```
 1   BY MR. BECK:
 2        Q.   I earlier asked you about Mr. Baca.  How
 3   long has it been since you've been housed with Mr.
 4   Baca?
 5        A.   It's been a long time.  Since the murder,
 6   since we were in Q pod.  So that's -- what year did
 7   the murder take place?
 8        Q.   Just -- I mean, generally, how long?  We
 9   don't need to know a year.
10        A.   It's been over 15 years.
11        Q.   Over 15 years since --
12        A.   That I was housed with Ray Baca.
13        Q.   All right.  I'm going to start the
14   recording again -- or not start again; sorry.  Start
15   it from here.
16             (Tape played.)
17        Q.   And who is that who said, "Well, she did
18   good and shit, I know"?  Who is that talking?
19        A.   That's Carlos Herrera.
20        Q.   Who else is talking on this recording?
21        A.   Myself.
22        Q.   And are those the two voices we're
23   hearing, you and Mr. Herrera?
24        A.   Yes, they are.
25        Q.   Please press play.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 8241

```
 1                (Tape played.)
 2        Q.    In that conversation with Mr. Herrera,
 3   what are you talking about?
 4        A.    We're talking about -- we're initially
 5   talking about the raid on his mom.  He mentioned
 6   they were looking for subs and things having to do
 7   with sneaking subs into the facility through the
 8   postal service.
 9        Q.    And when you say "subs" --
10        A.    Suboxone.
11        Q.    And when he said, "I had 20 strips there,"
12   what was he saying?
13        A.    He was saying that they didn't find
14   nothing, but that he had 20 strips in the house that
15   got raided; that they didn't find them.
16        Q.    Was he talking about bringing them into
17   the jail facility?
18        A.    Yes.
19        Q.    And just now, right before I paused it,
20   when he said, I think in here, it's highlighted at
21   the beginning of that line 12 --
22        A.    Nothing is highlighted on this.
23        Q.    Okay.  Where he says, "They don't even
24   have a jale," what's a jale?
25        A.    That's a job.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                  (Tape played.)

 2        Q.    When he said earlier, "The STG in here,"

 3   what's the STG?

 4        A.    It's the Security Threat Group unit from

 5   Corrections.

 6        Q.    Are they now known as STIU?

 7        A.    Yes, sir.

 8        Q.    And who is Shadow, Little Shadow?

 9        A.    Shadow is Billy Cordova, an SNM member.

10                  (Tape played.)

11        Q.    Who is he referring to as Garduno?

12        A.    Excuse me?

13        Q.    Who is Garduno?

14        A.    Vincent Garduno.  He's an SNM Gang member.

15        Q.    When he is saying, "Somebody, too, like

16   Garduno," and then "We're matching your name in

17   writing labrada."  What's a labrada?

18        A.    Labrada means out in the open, writing the

19   letter, knowing that it will be monitored, maybe

20   sending it through inmate postal service.  So it's,

21   like, out in the open to be monitored, labrada.

22        Q.    While you're incarcerated, is your mail

23   that goes out from you monitored?

24        A.    Yes, it is.

25        Q.    And who monitors it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   93   Page: 8244

```
 1        A.    STIU.

 2        Q.    And so what is he talking about here, "Out

 3   in the open, writing a labrada"?  What does he mean?

 4        A.    He's talking about they're writing letters

 5   knowing that STIU is monitoring our mail.

 6        Q.    As an SNM member, did you try to write

 7   letters written in code so that you could pass

 8   messages without STIU knowing?

 9        A.    I've tried.

10             (Tape played.)

11        Q.    Is he saying there, talking about a

12   recording?

13        A.    He's saying that for them to have any

14   evidence, that they would need a recording of the

15   individuals talking about the actual case.

16        Q.    And what case he talking about?

17        A.    The murder of Javier Molina.

18        Q.    Is that this case?

19        A.    Yes, it is.

20             (Tape played.)

21        Q.    When he says there, "Yes, we could attack,

22   too, because them vatos are on meds," what does that

23   mean to you?

24        A.    He's saying the people doing the

25   cooperating -- there can be an issue with the psych
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8244

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8245

 1   meds that they are taking.  So he's saying that

 2   defense could attack them because they were on psych

 3   meds.

 4              (Tape played.)

 5       Q.   And what is he talking about there, that

 6   they've been here since 2007?

 7              MS. BHALLA:  I'm going to object.  I think

 8   if they want to play the transcripts, that's fine.

 9   But having the witness try to interpret the

10   conversation for the jury -- I think that invades

11   the province of the jury, Your Honor.

12              THE COURT:  I think it's permissible if

13   they want to highlight particular portions.

14   Overruled.

15   BY MR. BECK:

16       Q.   What is he talking there, that they've

17   been here since 2007?

18       A.   He's talking about the feds, that they've

19   been investigating the SNM since 2007.

20       Q.   I'm going to now play for you portions of

21   Government's Exhibit 216.

22              (Tape played.)

23       Q.   So you're talking about getting a line to

24   Mr. Herrera.  What are you doing?

25       A.   We're fishing.  It's called fishing.  The

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8245

 1   COs don't pass nothing among inmates, so I'll make a

 2   line out of thread, coming from my boxers maybe,

 3   with an anchor at the end.  I'll throw it out on the

 4   tier, and he will do the same, fishing my line.  And

 5   we will tie messages on it or whatever we want to

 6   get passed, and --

 7        Q.    Have you fished kites, or messages, to

 8   other SNM members?

 9        A.    Yes, I have.

10        Q.    Have you fished drugs to other SNM members

11   in the past?

12        A.    Yes, I have.

13        Q.    But to be fair, what are you fishing here?

14        A.    I'm sure we're fishing a shot of coffee.

15        Q.    And coffee -- that's not a code word for

16   anything?  That's just coffee?

17        A.    Yeah, that's just coffee.

18              (Tape played.)

19        Q.    And we should point out, in this

20   transcript, CHS -- is that you?

21        A.    Yes, it is.

22        Q.    Does that refer to a confidential human

23   source?

24        A.    Yes, it does.

25        Q.    Is that what you were doing when you were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8246

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   96 Page: 8247

```
 1  recording other people in the prison?

 2       A.   Yes, I was.

 3       Q.   And who is Jesse?

 4       A.   Jesse was the neighbor to my right, and

 5  Carlos was the neighbor to my left.

 6       Q.   And Herrera -- is that when Mr. Carlos

 7  Herrera is speaking?

 8       A.   Yes.

 9       Q.   And what is a helicopter?

10       A.   Carlos was attempting to get, I believe, a

11  shot of coffee from my neighbor Jesse.  I was

12  helping him to get it.  Jesse is my neighbor to the

13  right.  He's a lot closer to me than Lazy is.  He's,

14  like, two feet away.  So a helicopter is kind of,

15  like, slang.  He would throw the line in and yank

16  it, and it would go right into my cell, without me

17  having to fish it.  That's a helicopter.

18       Q.   Again, this is -- though you're not doing

19  it here, this is a method you've used in the past to

20  transfer contraband to other SNM inmates?

21       A.   Contraband and other stuff.

22       Q.   At this time, was Mr. Herrera indicted in

23  this case?

24       A.   I don't believe so.

25       Q.   And I'm going to take you to another
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE


MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8247

```
 1   portion of Exhibit 216.

 2           (Tape played.)

 3       Q.   Mr. Archuleta, again, that is Mr. Herrera

 4   and you, when it says "CHS"?

 5       A.   Yes, it is.

 6       Q.   What are you talking about here, about the

 7   tapout program?

 8       A.   It's a program that's created that -- in

 9   order to get there, you have to -- it's for people

10   that renounce gang affiliation.  It's called tapout

11   program.  That's what he was talking about.

12       Q.   All right.  And where it says, a couple

13   lines, "They have to give information or something,"

14   what are you asking about there?

15       A.   I guess part of entering this program, you

16   have to give them information, such as when you came

17   in, who brought you in, maybe how you made your

18   bones.  You have to give information.

19       Q.   And with the SNM rules, are you allowed to

20   give information to the corrections officers like

21   that?

22       A.   No, we aren't.

23       Q.   What happens if you give corrections

24   officers information like that?

25       A.   You are green-lighted and targeted to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020    Page: 8249

```
 1   killed.
 2       Q.   And in the end of that transcript where he
 3   says, "Let's all all fucking renounce.  Let's just
 4   all go to the program and do a desmadre, ay," what
 5   is a desmadre?
 6       A.   A desmadre is to, like, make a mess, to go
 7   over there to the program acting like if you're
 8   renouncing, legitimately renouncing, and do a
 9   desmadre, meaning stab, assault legitimate
10   renouncers.
11            MS. BHALLA:  Objection, Your Honor.  I
12   think that's clearly invading the province of the
13   jury in particular.
14            THE COURT:  Overruled.
15   BY MR. BECK:
16       Q.   All right.  I think we've got one more
17   excerpt we're going to play for you here from
18   Exhibit 216.
19            (Tape played.)
20       Q.   What are you talking about in this
21   conversation with Mr. Herrera?
22       A.   I asked if a certain individual was with
23   Julian Romero on the tier.
24       Q.   And who was that individual, if you
25   remember?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8250

```
 1        A.   I believe it was Juanito, Juan Mendez, an
 2   SNM Gang member, if I'm correct.
 3             (Tape played.)
 4        Q.   Do you see where he says, "They fucking
 5   hit him, ay, that's what he got, fucking punk,
 6   pobrecito," who is he talking about?
 7        A.   He's talking about Julian Romero being
 8   assaulted.
 9        Q.   When he said, "They thought he was all
10   firme," what does that mean to you?
11        A.   "Firme" is, like, all good.  "Hita,"
12   everything was fine; he wasn't expecting an assault.
13        Q.   Does that mean he thought the hit that
14   you'd put out on him had been quashed or gone away?
15        A.   Yes, that's what that means.
16             (Tape played.)
17        Q.   Who are Shiman and Playboy?
18        A.   Shiman and Playboy are SNM Gang members.
19   These are the individuals who shot Julian Romero
20   when he was shot, when Julian was shot.
21        Q.   That's when you ordered Playboy to shoot
22   Julian Romero, he and Shiman shot Julian Romero.  Is
23   that what you're saying?
24        A.   That's correct.
25             (Tape played.)
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8251

```
 1      Q.   And who are you talking about here about
 2 29 or 30?
 3      A.   We're talking about the individual that
 4 assaulted Julian Romero in the Southern correctional
 5 facility.
 6      Q.   I think earlier on in your testimony this
 7 morning, you and I said that Mr. Herrera -- or you
 8 said that Mr. Herrera told you about the Julian
 9 Romero incident.  Is this where he told you, when
10 you were in prison together?
11      A.   Yes.
12           (Tape played.)
13      Q.   What's a paisa?
14      A.   That's a Mexican.  A paisa is a Mexican
15 national.
16           (Tape played.)
17      Q.   When you asked Mr. Herrera, how did he
18 know that Julian wasn't worth a fuck, what does it
19 mean, that Julian wasn't worth a fuck?
20      A.   That he was green-lighted.  How did the
21 guy that assaulted Julian -- how did he know that
22 there was a green light on him.
23      Q.   When Mr. Herrera said to you, "Well, he
24 just knew that, didn't need to know nothing, just
25 needs to know how to handle that, you know what I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8251

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8252

8101

```
 1   mean; they're all truchas, all that," what does that
 2   mean to you?
 3       A.   That means that he was directed just to
 4   take care of that without knowing why.  He was a
 5   member of the SNM, and when asked to do something,
 6   you do it.  You follow orders.  But he didn't know
 7   the reason why he was assaulting Julian, or the
 8   reason why the green light was placed on him.
 9       Q.   And does that happen with younger members?
10   They're just told to assault without being told why?
11       A.   Well, there's been cases where you can
12   explain why he's being -- why the green light was
13   placed on an individual that he's about to target.
14   But in this case, maybe there was a trust issue, and
15   they didn't share the details with him.
16            (Tape played.)
17       Q.   There is a couple of things in there.  Mr.
18   Herrera says, "I didn't need to rap to a bunch of
19   fucking weirdos over there at PNM."  What does "rap
20   to" mean?
21       A.   That means talk to, communicate with.
22       Q.   What is he staying there, that he wouldn't
23   rap to some people, but he would to others?
24       A.   That he'd only rap to those that they were
25   in on the assault on Julian Romero, but he didn't
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492
                                                          e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8252

1    rap to others about it.

2         Q.   And where he says, "There was just a few

3    that was willing to rollo," what does "willing to

4    rollo" mean?

5         A.   Willing to talk about it.  He's talking

6    about there were others on the side that were in the

7    unit that were willing to talk, even talk about the

8    Julian issue.  They wanted no part of it.

9              (Tape played.)

10        Q.   So what does that mean:  Getting

11   comfortable, everyone's getting high?  What is he

12   telling you that they were doing in the pod at that

13   time?

14        A.   He's saying that they were getting high in

15   the pod.  He's saying that Julian was comfortable.

16   Again, he didn't suspect anything.  It was like the

17   hit didn't exist.

18             (Tape played.)

19        Q.   What does "chafa" mean, where he says he's

20   chafa?

21        A.   That means he's no good, he's chafa.

22        Q.   Does that mean that he's no good with the

23   SNM Gang?

24        A.   Yes.  He's no good with the SNM Gang.

25        Q.   And there he says something, and then he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8253

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8254

```
1    says "squina."  What is that?
2        A.   Squina means help from other brothers in
3    the form of just helping them.  That's getting
4    squina.
5        Q.   I'm going to play you excerpts from
6    Exhibit 206.
7             (Tape played.)
8             MS. BHALLA:  Can we approach with this
9    particular exhibit?
10            THE COURT:  You may.
11            (The following proceedings were held at
12   the bench.)
13            MS. BHALLA:  There is no indication this
14   had anything to do with SNM.  The guards pulled him
15   out of the shower in front of everybody, according
16   to the transcripts.  I don't think it has anything
17   to do with the enterprise, anything to do with SNM.
18   And I think at this point it's hearsay.  This was
19   the particular one I was referring to before we got
20   started this afternoon.
21            MR. BECK:  I do think we've heard from
22   several SNM members that they felt they were being
23   disrespected by a CO.  And my understanding is they
24   pulled him out naked, so he felt disrespected, so he
25   wanted to fire back at the CO at that point.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8254

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8255

```
 1              MS. BHALLA:  I think one of the things
 2    that was required by the bad acts, they link it up
 3    with specific facts to tie this in to SNM.  And the
 4    fact that he was disrespected just isn't enough.
 5              THE COURT:  I'm going to overrule the
 6    objection.  I think there is a lot of testimony
 7    about the relationship between the COs and the SNM
 8    members.  So I'm going to allow this.
 9              Are you going to get into further here as
10    to -- with this witness to lay more foundation?
11              MR. BECK:  Yes.
12              MS. BHALLA:  Just for the record, I don't
13    think that it's appropriate to have them
14    interpreting what is considered to be an SNM matter.
15    He wasn't in custody.
16              THE COURT:  You can certainly ask the
17    question:  What did you understand him to be saying?
18    That way, he's not testifying directly to what he
19    said, but what he meant.  But put it in terms of:
20    What did you understand him to be saying?  What did
21    you understand the conversation to be about?  I
22    think that's appropriate.
23              MR. CASTELLANO:  Your Honor, just a
24    housekeeping matter.  Now that the recordings are
25    coming out, can the Court instruct the jury about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8256

105

 1  the recordings and the fact that the transcripts

 2  will aid the jury, but let them know they won't be

 3  getting the transcripts in deliberations?  That way

 4  they may --

 5          THE COURT:  The answer is yes.  I wasn't

 6  ignoring you.

 7          MR. CASTELLANO:  That's why I waited.  I

 8  know you were getting something.

 9          THE COURT:  I can either pull out the one

10  I've written for the final instructions, or I can

11  give this one.  But I'll give it now before I send

12  them to lunch.

13          MR. CASTELLANO:  Thank you, Judge.  That

14  way, they'll know to take better notes and know

15  there won't be a transcript.  Thank you, sir.

16          (The following proceedings were held in

17  open court.)

18          THE COURT:  I know I'm standing between

19  you and lunch, but let me give you an instruction.

20  It will apply throughout all the sort of recordings

21  you're going to hear, and so I'll probably give it

22  as often as the parties want me to give it to you,

23  but I'll give it to you now.

24          During the trial, you have heard and you

25  will be hearing some sound recordings of certain

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

106

 1  conversations.  These conversations were legally

 2  recorded.  They are a proper form of evidence and

 3  may be considered by you as you would any other

 4  evidence.

 5        You were also given transcripts of those

 6  recorded conversations.  Keep in mind that the

 7  transcripts are not evidence.  They were given to

 8  you only as a guide to help you follow what is being

 9  said.  The recordings themselves are the evidence.

10  If you noticed any differences between what you

11  heard on the recordings and what you read in the

12  transcripts, you must rely on what you heard, not

13  what you read.  If you could not hear or understand

14  certain parts of the recordings, you must ignore the

15  transcript as far as those parts are concerned.

16        All right.  Let's go ahead and take our

17  lunch break, and we'll see you back in about an

18  hour.  All rise.

19        (The jury left the courtroom.)

20        THE COURT:  During your lunch break, you

21  might want to particularly, Mr. Beck, take a look at

22  United States v. Bonds; that's in Barry Bonds.  It's

23  the BALCO case from the Second Circuit, 608 F.3d

24  495 -- I said Second Circuit.  Ninth Circuit, 2010.

25  It deals with conditional relevance.  And I believe

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8257

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8258

1  that's what this is, because this murder that --

2  trying to get the evidence in against Mr. Baca is

3  only relevant if it's SNM-related.

4          I think my instincts were right, so I

5  think this case basically says that if the judge is

6  determining a preliminary question of conditional

7  relevance, you've got to revert back, not to 104,

8  but the evidentiary rules of admissibility apply.

9          So in BALCO, the only way they had a link

10  between BALCO and Bonds was inadmissible hearsay.

11  And they said that wasn't enough for the judge,

12  then, to let it in.  So take a look at it.

13          Also, if you want to look at what

14  Salzburg's treatment of it is, it's in Section

15  104.02, pages 4 to 5.  So that will give you a

16  synopsis.  Or you can look at the case.  So based

17  upon that, I'd be inclined to keep it out.  But

18  that's what I'm thinking right at the moment.

19          All right.  See you after lunch.

20          (Court was in recess.)

21          THE COURT:  All right.  We'll go on the

22  record.  Is there anything --

23          THE CLERK:  We're still waiting on a

24  couple of defendants.  Mr. Baca and Mr. Perez are

25  not here yet.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8259

108

```
 1              MR. VILLA:  I don't have a client.
 2              THE COURT:  I looked over and saw
 3   attorneys.  I didn't check with clients.  I need to
 4   wait for Mr. Baca.
 5              All right.  Are we ready to bring Mr.
 6   Archuleta in?  Anything we need to discuss before we
 7   bring him in?
 8              MR. LOWRY:  Well, Your Honor, after all of
 9   that, Mr. Archuleta dove right into referencing the
10   1989 murder, I believe.  And if we could just
11   admonish him not to discuss that.  I didn't object
12   at the time; I didn't want to draw undue attention
13   to the jury.  I think they've heard about so many
14   murders, it kind of went under the radar.
15              THE COURT:  I don't disagree with this.
16              MR. LOWRY:  It would be nice for the Court
17   to admonish him, before the jury comes in, that
18   that's off the table.
19              THE COURT:  I will do that.  Anything
20   else?
21              Mr. Beck, anything from the Government
22   side?
23              MR. BECK:  No, Your Honor.
24              THE COURT:  Any other defendants have
25   anything to discuss?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  Well, go on the record.
 2              Mr. Archuleta, I have not decided, but
 3   right at the moment I'm keeping out evidence of any
 4   murder, alleged murder by Mr. Baca of Mr. Velasquez.
 5   So I kept it out of the trial.
 6              THE WITNESS:  All right.
 7              THE COURT:  So you have to answer your
 8   questions truthfully.  I always want you to tell the
 9   truth.  But if at any point -- don't volunteer
10   anything about that murder.  Okay?  Because right
11   now, I'm keeping it out of the trial.  So don't
12   volunteer it.  If you are asked a question and the
13   only way you can truthfully answer the question is
14   to talk about that murder, then tell us that you
15   can't answer that question and obey the Court's
16   instruction, and we'll figure out where to go from
17   there.  But don't volunteer this or get into it
18   unless you're specifically asked.
19              THE WITNESS:  Okay.
20              THE COURT:  All rise.
21              (The jury entered the courtroom.)
22              THE COURT:  All right.  Mr. Archuleta,
23   I'll remind you that you're still under oath.
24              THE WITNESS:  Yes, sir.
25              THE COURT:  Mr. Beck, if you wish to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    continue your direct examination of Mr. Archuleta,

2    you may do so at this time.

3    BY MR. BECK:

4        Q.    Mr. Archuleta, did SNM members assault

5    corrections officers?

6        A.    Yes, they did.

7        Q.    And if a corrections officer disrespected

8    the SNM or treated them poorly, was it a rule that

9    the SNM had to respond by assaulting that

10   corrections officer?

11       A.    I wouldn't say it was necessarily a rule.

12   But some took it upon themselves to assault COs when

13   they had disputes, which wasn't a violation of any

14   sort of rule, I mean, if you did assault them.

15       Q.    Okay.  I'm going to play for you -- let's

16   do clip 2 -- I'm going to play for you a portion of

17   Exhibit 206.

18            (Tape played.)

19       Q.    What was Mr. Herrera talking about in that

20   portion of Exhibit 206?

21       A.    He was talking about what was required of

22   SNM members that wanted to go to this drop-out unit,

23   saying that they had to comply, which meant they had

24   to give them information.  He had also mentioned

25   that Little Rabbit, who was a former member of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   SNM -- his name is -- I'm not sure of his name --

 2   his last name is Lopez, I believe, but I could be

 3   wrong.  He's talking about how this guy legitimately

 4   tapped out, joined this program.  And in doing so,

 5   he turned in a knife, which is a fierro.  He's

 6   saying -- he went on to say that it was discussed

 7   amongst the brothers there that were with him; they

 8   should just all act like they want to renounce, with

 9   the purpose of getting sent to the drop-out unit and

10   assaulting legitimate drop-out SNM members, which

11   means when he says doing a desmadre.

12       Q.   Now, I'm going to play you a portion of

13   what's been admitted as Government's Exhibit 210.

14            (Tape played.)

15       Q.   What is Mr. Herrera talking to you about

16   in this part of conversation?

17       A.   The first part of the conversation --

18   well, I asked him -- or he asked me if I remember

19   it.  I may have asked him; whatever is said on the

20   recording.  There was an incident in the county

21   jail, BCDC, when he attempted to assault an inmate

22   that was in the shower by hitting him with a broom

23   stick.  He was unsuccessful in that incident.

24            The second part of the conversation, he

25   went on to say that he finally got Kevin Blanco,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   which was -- he was not an SNM member, but always

 2   seemed to find himself disrespecting SNM members,

 3   just by his disrespectful conversation towards SNM.

 4        Q.   And as part of the SNM, if someone

 5   disrespects an SNM member, what does the SNM do?

 6        A.   They do their best to assault the

 7   individual if the chance presents itself.

 8        Q.   And when he says they dropped the

 9   shackles, "and it was on, man," what does that mean

10   to you?

11        A.   Well, he was shackled in his room.  For

12   some reason they took off the shackles -- or -- this

13   is a lockup facility where you're constantly

14   shackled.  He was in belly irons, like I am here.

15   He had the broom in his room.  When he said he

16   dropped the shackles, that means he lowered them

17   below his waist, to where he had free access with

18   his arms and his hands.  And he assaulted or

19   attempted to assault; or in that case, that was the

20   second incident, he assaulted Kevin Blanco in the

21   van.  Is that what you're talking about?

22        Q.   Yes, thank you.

23             (Tape played.)

24        Q.   What does a PC move mean?

25        A.   A PC move means that -- some people can
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8263

```
 1    say it means that he did something in front of a
 2    cop.
 3         Q.   I'm going to play you another clip from
 4    what's been admitted as Government's Exhibit 210.
 5              (Tape played.)
 6         Q.   What are you talking about in this
 7    conversation?
 8         A.   In the beginning of the conversation, he's
 9    talking about the last time he did a piece of
10    Suboxone, it was tiny; that he had trouble injecting
11    it, so he just snorted it.  Then he goes on to
12    explain that he used to have a syringe.
13         Q.   What does "pluma" mean?
14         A.   A pluma is a homemade syringe that you use
15    to inject drugs.
16         Q.   And what is he saying happened to it?
17         A.   He's saying that he lent it to whoever.
18    He lent it out, and since he lended it out, he had
19    to clean it.  He had to disinfect it once he got it
20    back, which is why he put it in the hot pot.  He's
21    saying he put it in the hot pot to disinfect it with
22    hot water.  He forgot it was in there, poured out
23    the water in the toilet, flushed the toilet, and
24    lost his pluma, lost his syringe.
25         Q.   Where you said, "Nah, all I got to do is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8264

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   114   Page: 8265

```
 1   get the needle part," what do you understand that to

 2   mean?

 3        A.   That meant all he needed was the needle

 4   portion of any syringe in order to start the process

 5   of making a homemade syringe.

 6             (Tape played.)

 7        Q.   What do you understand Mr. Herrera to mean

 8   when he says, "I'm surprised.  I thought they were

 9   gonna come over here and something was going to be

10   firme"?

11        A.   He thought that he was going to go over

12   there to that unit, and there was going to be lots

13   of drugs, or drugs period.  He thought it was going

14   to be good firme.  And there were no drugs.

15        Q.   I'm now going to play portions of what's

16   been admitted as Government's Exhibit 208.

17             (Tape played.)

18        Q.   In this conversation, are you and Mr.

19   Herrera talking about bringing in drugs through

20   contact visits?

21        A.   We're talking about -- yes, we are.

22        Q.   And he said he would take off the little

23   screw to the screen and put a straw through.  That's

24   all that fits, is a straw; you can't do nothing like

25   that.  Did you understand him to mean that someone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8265

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8266

```
 1   was taking off the screen during a contact visit and

 2   bringing in drugs through that straw through the

 3   screen?

 4        A.   Yes.  He explained that that's how drugs

 5   were being brought into the facility.

 6             (Tape played.)

 7        Q.   And right there where he says, "My ruca

 8   bought the set," what is a ruca?

 9        A.   A ruca is his old lady, his wife, or his

10   girlfriend bought the set; means she's the one that

11   purchased the set of Allen wrenches which fit the

12   security screws.

13             (Tape played.)

14        Q.   In that portion of the conversation, what

15   is Mr. Herrera saying that he did down in Southern,

16   in Cruces, four years ago?

17        A.   He's talking about in the South facility

18   visiting room, that he took a piece of metal, a

19   sharpened piece of metal, to make a hole in the

20   window so that Mariano, which is either his brother

21   or his father-in-law, could pass him drugs.

22        Q.   Did he get drugs that way?

23        A.   According to the conversation there, he

24   did.

25        Q.   I'm going to play you another portion of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8266

```
 1   Exhibit 208.
 2            (Tape played.)
 3       Q.   So in this conversation, Mr. Herrera says,
 4   "That fucker was getting squina like fuck."  What
 5   does that mean?
 6       A.   That he was getting a lot of help from the
 7   free world, from the streets, obtaining drugs.
 8       Q.   All right.
 9            (Tape played.)
10       Q.   When Mr. Herrera is talking about pictures
11   and bringing in pictures, what do you understand him
12   to mean?
13       A.   We were talking about a method that's used
14   to obtain drugs into the facility, to sneak them in
15   through the mail.  They're hidden inside a picture.
16            (Tape played.)
17       Q.   In that portion of the conversation, what
18   do you understand Mr. Herrera to be talking about?
19       A.   He mentioned that Shorty had sold him some
20   drugs, that they were waiting on these drugs through
21   the mail.  When it arrived in the mail room, it
22   got -- it was detected, because there was nothing
23   written on the pieces of paper that were sent in in
24   the envelope.  They were just circles or scribbles.
25   So they looked closer at the piece of paper, and it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8268

1  got busted.  And he got written up as a result.  And

2  that's what he's saying.

3      Q.   When SNM members get drugs into the

4  facility, do they then sell those drugs?

5      A.   They either sell them, if there's enough,

6  or they do them theirselves.  You can't get a lot of

7  drugs through the mail or through pictures.  So you

8  would usually -- I mean, if he chose to, he could

9  sell a portion of it.  But mainly he did it for

10 himself.  I mean, he used the drugs.  Now, if you

11 got a large portion, which you can get more drugs by

12 removing the screws and passing multiple straws

13 filled with contraband, you can get more drugs that

14 way, and you would have some to sell.

15          (Tape played.)

16     Q.   What is Mr. Herrera -- what do you

17 understand Mr. Herrera to be talking about in that

18 portion of the conversation?

19     A.   At the beginning of the conversation, he

20 was saying that there was a lot of drugs in Las

21 Cruces.

22          On the second portion of the question, he

23 referred to the viejo when he was talking about

24 Julian, that he was getting help from my wife, and

25 that he was getting it through the mail on the seal.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   118   Page: 8269

```
 1   He would place it on the seal, he's describing, and

 2   it was placed on the seal where you lick it, and it

 3   was working.

 4             (Tape played.)

 5        Q.   And in this part of the conversation, what

 6   do you understand Mr. Herrera to be talking about?

 7        A.   At the beginning of the conversation he is

 8   talking about a different method that he's never

 9   tried, but a different method introducing contraband

10   into the facility was -- he explained it as using a

11   humidifier.  I didn't really -- I'd never seen it

12   done.  He stated that he's never used that method.

13   But basically, he's talking about a different method

14   that people are using.

15        Q.   What about when you say, "That ruca gives

16   him a lot of squina, no," and he says, "Well, yeah,

17   he was.  He was getting at least one a week, one

18   every two weeks."

19        A.   We ran into -- I'm talking about Julian

20   and my ex-wife.  I asked him, "So that ruca," my

21   wife, "is giving him squina, huh?"

22             And he says, "Yes, he gets two subs a week

23   from her."

24        Q.   When you asked him about the county jail,

25   and he says, "Yeah, you know, it was fucked up,"
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8270

1  what are you talking about?  What happened in the

2  county jail?

3      A.   Say that again.  When he says what?

4      Q.   When you asked him, "Well, yeah, I used to

5  do the same in the county jail for us, us,

6  remember?"

7           And he says, "Yeah, you know," what are

8  you talking about, "in the county jail"?

9      A.   I was talking about that my wife used to

10  do the same thing for me.  I brought it to the

11  attention -- he was there with me in the county

12  jail, and I'm saying she used to do that for us,

13  too; remember?

14      Q.   Did you give Mr. Herrera a part of the

15  drugs that your wife brought to you when you were in

16  the county jail?

17      A.   Yes, I did.

18           (Tape played.)

19      Q.   In that portion of the conversation where

20  Mr. Herrera says, "We were getting them in Cruces.

21  Come over here, and I was all happy, handle

22  business, fucking per visit," what do you understand

23  Mr. Herrera to be talking about in that portion of

24  the conversation?

25      A.   The first part of what you mentioned,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8270

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8271

```
 1   while he was in Cruces, he was getting a lot of
 2   drugs.  He was getting a lot of Suboxone.
 3           The second part was?
 4       Q.   The second part, where he says, "I was all
 5   happy, handle business, fucking per visit."
 6       A.   He was all happy to handle business, which
 7   meant he obtained the drugs.  Once he obtained the
 8   drugs, he was happy to handle business, which meant
 9   either selling them or doing them.  But mostly
10   selling them, handle business.
11           (Tape played.)
12       Q.   In that portion of the conversation where
13   he says, "I'll schedule one.  Don't even mention
14   nothing and I'll do it, nah, be out like fuck, I'll
15   do it, nah," what do you understand him to be
16   telling you in that portion of the conversation?
17       A.   He's saying he'll schedule a visit to
18   attempt to smuggle in drugs, and for me not to say
19   anything to anybody else.
20           (Tape played.)
21       Q.   In that portion of the conversation when
22   he's talking about the photos and the envelope, is
23   that, again, talking about methods of smuggling
24   Suboxone into Cruces?
25       A.   Yes, he is.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8271

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8272

```
 1       Q.   I'm going to play you portions from what's
 2  been admitted as Government's Exhibit 214.
 3            Did you and Mr. Herrera discuss the Javier
 4  Molina murder?
 5       A.   Yes, we did.
 6       Q.   Did he tell you what his position was in
 7  the pod at Southern New Mexico at the time of the
 8  Molina murder?
 9       A.   He stated, yes, he did.
10       Q.   What did you understand his position to be
11  here at Southern New Mexico Correctional Facility?
12       A.   Someone that was in touch with Pup, and so
13  he had a position of authority.
14       Q.   So did you understand him to be someone
15  who had an authority position in the pod?
16       A.   Yes, I did.
17       Q.   Was that a leader of the pod?
18       A.   Yes, that's a leader of the pod.
19       Q.   All right.  I'm going to play, as I said,
20  a portion of what's been admitted as Government's
21  Exhibit 214.
22            (Tape played.)
23       Q.   In this portion of the conversation, who
24  do you understand Mr. Herrera to be referring to as
25  Spider?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8272

1       A.   He's an SNM Gang member, a brother.

2       Q.   Do you know his real name, Spider?

3       A.   David Calbert.

4       Q.   And who do you understand him to be

5    referring to as Critter?

6       A.   Critter is an individual by the name of --

7    I don't know his name.

8       Q.   Is he an SNM member?

9       A.   Yes, he's an SNM member.

10      Q.   All right.  And what are you and Mr.

11   Herrera talking about in this portion of the

12   conversation?

13      A.   He's talking about people that he's

14   concerned about who he thinks would give information

15   on the Molina murder.  He states that as far as

16   David Calbert thinks, he's down, they won't get any

17   information from him.

18           As far as -- we went on to Critter and

19   Chris Garcia.

20      Q.   And are Critter and Chris Garcia SNM

21   members?

22      A.   Yes, they are SNM members.

23           (Tape played.)

24      Q.   At this time, are you talking about --

25   well, let me ask this question:  What does "chafa"

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492
                                                                       1-800-669-9492
                                                                       e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8273

```
 1   mean?

 2        A.    "Chafa" means no good, chafa.

 3        Q.    And what does it mean to say that someone

 4   is chafa or no good within the SNM?

 5        A.    It refers to certain people, that he's no

 6   good in the SNM standings; he's chafa.

 7        Q.    And what is -- I think you said that means

 8   chafa, that they're working with the juras.  What

 9   does that mean?

10        A.    As far as Benjamin Clark, he's a member of

11   the SNM.  Alonzo, which is -- I don't know his last

12   name, but these are brothers that were on the

13   indictment.  And he's saying that since they were

14   already at the tapout unit, that they're no good;

15   that he was concerned about them saying whatever

16   they knew.

17        Q.    And the tapout unit -- is that the unit

18   that we heard, just a few minutes ago, you and he

19   referring to when people drop out and give up their

20   fierros, or information?

21        A.    Yes.

22        Q.    So he also mentioned Arturo, aside from

23   Alonzo and Benjamin.  Who is Arturo?

24        A.    Arturo is another SNM member.

25              (Tape played.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8274

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8275

```
 1      Q.   In that portion of the conversation, who
 2 do you understand Mr. Herrera to be referring to as
 3 Baby Rob?
 4      A.   He's talking about Robert Martinez,
 5 another SNM Gang member.
 6      Q.   And under the SNM rules, what's required
 7 of an SNM member in good standing if an SNM member
 8 encounters someone who either went to the dropout
 9 unit or who is cooperating with law enforcement?
10      A.   He's expected to assault him.
11      Q.   I'm going to play for you another portion
12 of Exhibit 214.
13           (Tape played.)
14      Q.   What are you and Mr. Herrera talking about
15 in this conversation?
16      A.   At the end of the conversation he was
17 talking about Red, which is someone that was charged
18 with the killing of Mr. Molina.
19      Q.   Are you talking about the Javier Molina
20 murder?
21      A.   Yes, I am.
22      Q.   And when you say he's talking about Red,
23 do you understand him to be talking about Red at the
24 top here, where he says "because he was always
25 kicking it with that vato, and that was his friend"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8275

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8276

125

1   A.   He was saying that he was a friend of

2   Javier Molina; that he was always with him.  They

3   were close.  They were always secretive when they

4   got to the yard, when they went in the yard.

5   Q.   And where he says, "That's the reason why

6   that fucker went," what do you understand him to

7   mean by that?

8   A.   That's why -- that's a reason why they

9   used him to kill Javier Molina, to show his loyalty.

10   Q.   And by "they," do you mean the SNM?

11   A.   Yes, the SNM.

12   Q.   All right.  And then where Mr. Herrera

13   says, "Yeah, JR went because that didn't m another

14   fucking killing two birds with one stone," who do

15   you understand Mr. Herrera to be referring to as JR?

16   A.   JR is another individual that was charged

17   with the Molina murder.  His name is Jerry Montoya.

18   Q.   And what do you understand him to mean

19   when he says, "Yeah, because there's paperwork

20   supposedly on JR"?

21   A.   He's indicating that there was paperwork

22   on JR.

23   (Tape played.)

24   MR. BECK:  Your Honor, may I approach?

25   THE COURT:  You may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8276

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8277

126

```
 1            MR BECK:  May I approach the witness, Your
 2   Honor?
 3            THE COURT:  You may.
 4   BY MR. BECK:
 5       Q.   Mr. Archuleta, I'm handing you what's been
 6   marked for identification purposes as Government's
 7   Exhibits 651, 652, and 653.  Please tell me if you
 8   know who is depicted in those photographs.
 9       A.   That's Pup, a long time ago when he was a
10   lot younger.
11       Q.   And are these fair and accurate
12   representations of Mr. Anthony Ray Baca a long time
13   ago when he was a lot younger?
14       A.   Yes.  That's the Pup I know.
15            MR. BECK:  Your Honor, the United States
16   moves into admission Government's Exhibits 651, 652
17   and 653.
18            THE COURT:  Any objection?
19            MR. VILLA:  No, Your Honor.
20            MS. BHALLA:  No, Your Honor.
21            MR. LOWRY:  May we approach?
22            THE COURT:  You may.
23            (The following proceedings were held at
24   the bench.)
25            MR. LOWRY:  Your Honor, I'm just not clear
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8278

```
 1   that he's put a foundation, that he's aware of the
 2   timeframe that these were taken, or was incarcerated
 3   with him during that period of time.
 4           THE COURT:  I once went out to Acoma
 5   Pueblo and took the long trip up to the top.  And
 6   the lady told all the stories about the church up
 7   there, on and on and on, about these stories.  And I
 8   asked her, I said, "When did all these occur?"
 9           She looked at me and said, "Long ago."
10           I guess this is kind of where you are.
11           MR. LOWRY:  Exactly.
12           MS. DUNCAN:  I guess the other objection
13   we have is why we need three different photos of Mr.
14   Baca.  These are mugshots from over 20 years ago.
15           THE COURT:  Let me look at them.
16           MR. BECK:  What I'm trying to do -- we got
17   from Mr. Archuleta that he hasn't been incarcerated
18   with Mr. Baca for some substantial period of time.
19   And I intend to show him these pictures, and then
20   show him the pictures that have been admitted, and
21   see if he can then identify --
22           THE COURT:  Well, since he was unable to
23   identify him in court, I think we may not have an
24   exact date in these pictures.
25           MR. LOWRY:  Those are the dates.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8278

 1          MS. DUNCAN:  Your Honor, if it's only for

 2   that purpose, we would stipulate to Mr. Baca's

 3   identity.

 4          THE COURT:  I'll let the Government put on

 5   its case the way they want to.  I think these are

 6   admissible.  He's given enough of a foundation.

 7          (The following proceedings were held in

 8   open court.)

 9          THE COURT:  All right.  Government's

10   Exhibits 651, 652, and 653 will be admitted into

11   evidence.

12          (Government Exhibit 651, 652, and 653

13   admitted.)

14   BY MR. BECK:

15      Q.   Mr. Archuleta, I'm going to show you

16   what's now been admitted as Government's Exhibit

17   651.  Who is in this photograph?

18      A.   Pup, Ray Baca, when he was a lot younger.

19      Q.   And I know you're looking that way, but

20   when you talk, Mr. Archuleta, if you'll speak into

21   the microphone so we can hear you.

22      A.   That's Pup, Ray Baca, when he was a lot

23   younger.

24      Q.   And Government's Exhibit 652.  Who is in

25   this photograph?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8279

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8280

```
 1        A.    That's Pup, Ray Baca, when he was a lot
 2   younger.
 3        Q.    All right.  Now, Government's Exhibit 653.
 4   Who is in that photograph?
 5        A.    That's Pup, Ray Baca, when he was a lot
 6   younger.
 7        Q.    I'm going to show you what's been admitted
 8   as Government's Exhibit 495.  Who is depicted in
 9   this photograph?
10        A.    That's Carlos Herrera -- no, it's Ray
11   Baca, without his mustache.
12        Q.    Government's Exhibit 496.  Is that again
13   Mr. Baca?
14        A.    Yes, that's Ray Baca.
15        Q.    And is this the same Ray Baca that you've
16   been telling us about during your testimony this
17   afternoon, who was a leader, and I think you said
18   your Big Homie in the SNM?
19        A.    Yes, sir.
20        Q.    And now that you've seen those
21   photographs, do you see this Mr. Baca, who you've
22   been talking to the jury about throughout your
23   testimony today -- do you see him in the courtroom?
24        A.    Yes, I do.
25        Q.    And where is he?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8280

 1        A.   He's right in front of me with the blue

 2   suit, and maybe it's a white shirt.  I was unable to

 3   see him before, because that lady was sitting right

 4   in front of him.  With the shaved head, that's Ray

 5   Baca.

 6             MR. BECK:  Let the record reflect Mr.

 7   Archuleta identified the Defendant Anthony Ray Baca.

 8             THE COURT:  The record will so reflect.

 9             MR. BECK:  May I have a moment, Your

10   Honor?

11             THE COURT:  You may.

12             MR. BECK:  Pass the witness.

13             THE COURT:  Mr. Lowry, do you have

14   cross-examination of Mr. Archuleta?

15             MR. LOWRY:  May it please the Court.

16             THE COURT:  Mr. Lowry.

17                  CROSS-EXAMINATION

18   BY MR. LOWRY:

19        Q.   Good afternoon, Mr. Archuleta.

20        A.   Good afternoon.

21        Q.   Mr. Archuleta, you've never removed a

22   green light for anyone, have you?

23        A.   No.

24        Q.   And that includes Julian Romero.

25        A.   That's correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8281

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8282

131

1      Q.    Now, I want to talk to you a little bit
2  about Julian Romero.  You testified on direct that
3  he had slept with your wife and that's why you put a
4  green light on him?
5      A.    Correct.
6      Q.    But he actually developed a long-term
7  relationship with your wife, didn't he?
8      A.    Yes, he did.
9      Q.    They still live together today?
10     A.    That's correct.
11     Q.    And you've never canceled the green light
12 put on him in 2001?
13     A.    No, I haven't.
14     Q.    Now, it's fair to say, is it not, that the
15 dispute between you and Mr. Romero over your -- I
16 don't know, did you refer to Lilly as your former
17 wife?
18     A.    Yes.  Yes, sir.
19     Q.    That caused a deep division within the SNM
20 Gang?
21     A.    Yes, it did.
22     Q.    And that contributed to a lot of bad
23 politics within the gang?
24     A.    Sides formed:  Those on Julian's side and
25 those on my side.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8282

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8283

```
 1        Q.   And those were pretty deep divisions, were
 2   they not?
 3        A.   Yes, they were.
 4        Q.   And in fact, it rose to the level where
 5   people on one side wanted to kill people on the
 6   other side because of their allegiance to either you
 7   or Mr. Romero?
 8        A.   Repeat the question.
 9        Q.   Sure.  It led to the point where people
10   tried to kill each other because of their allegiance
11   to either you or Mr. Romero?
12        A.   Yes.
13        Q.   And in fact, you tasked or ordered
14   Frederico Munoz to go kill Julian just over this,
15   over your former wife?
16        A.   Yes, that's correct.
17        Q.   But that was just the beginning of the
18   feud, if you will?
19        A.   Yes, that's correct.
20        Q.   Because -- let me back up for a second.
21   We kind of didn't really touch upon this on direct,
22   but I want to explore it a little bit.  You didn't
23   find out about Mr. Romero's relationship to your
24   wife until you were charged with the murder of
25   Matthew Cavalier; isn't that right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8283

```
 1        A.    There was no relationship with Julian
 2   Romero prior to the Cavalier death.  And the
 3   relationship happened while we were in the county
 4   jail facing the murder of Matthew Cavalier.  That's
 5   when I became aware of it, yes.
 6        Q.    Because you were trying to task Mr. Romero
 7   with killing a witness in that case, Kelly Mercer.
 8        A.    Yes.
 9        Q.    And you were calling Lilly to try to set
10   that up?
11        A.    I was communicating -- we communicate
12   through our -- whoever comes to see us to pass on
13   messages through the streets.  So I wasn't calling
14   her, but she was visiting me.  I asked her to locate
15   Julian, and we were trying to set that up.
16        Q.    But that's how you found out about it,
17   because there was never any follow-through by Mr.
18   Romero to help you out with that.
19        A.    Yes.  That's when I found out about it.
20        Q.    And it's also contributed to Lilly not
21   seeing you as often at the jail?
22        A.    That's correct.
23        Q.    And when she didn't see you, you couldn't
24   have drugs smuggled in to you, like we were talking
25   about all on your direct examination.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8285

```
 1        A.    That's correct.

 2        Q.    And that upset you?

 3        A.    It upset me that -- that didn't bother me.

 4   What upset me is that that's the Number 1 rule in

 5   the organization:  A brother does not mess around

 6   with another brother's wife.  And he violated that

 7   rule.  And there's consequences for breaking such a

 8   rule.

 9        Q.    Right.  So you just didn't take it

10   personally; you thought it was disrespectful to the

11   S.

12        A.    Yes, he violated a rule of the S.

13        Q.    And to make sure, to try to effectuate

14   your hostility towards Mr. Romero, you actually went

15   to the tabla at that time and got sanctioned to kill

16   Mr. Romero?

17        A.    What's "effectuate"?

18        Q.    Well, you wanted to kill Mr. Romero;

19   correct?

20        A.    Yes.

21        Q.    And you were in jail?

22        A.    Yes.

23        Q.    You couldn't move around a lot?

24        A.    Right.

25        Q.    You wanted other people to help you carry
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8286

```
 1   out that hit?

 2        A.    Yes.

 3        Q.    And so you went to other people in the SNM

 4   to say, "I need your assistance to pull this off."

 5        A.    Yes.  Not before getting approval from

 6   Angel Munoz, who was the leader at that time.

 7        Q.    Right.  And you and Angel were fast

 8   friends?

 9        A.    Yes, we were.

10        Q.    And Angel had given you the keys when he

11   left the prison system?

12        A.    Yes.

13        Q.    He wanted you to run the show?

14        A.    Yes.

15        Q.    He wanted you to call the shots.

16        A.    Yes.

17        Q.    You were the leader.

18        A.    Yes.

19        Q.    And in fact, you got out of prison for a

20   brief period of time before you were arrested in the

21   Cavalier murder; correct?

22        A.    Yes.

23        Q.    And you were working with Angel Munoz on

24   the streets selling crack cocaine.

25        A.    Yes, I was.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8287

136

 1     Q.   And according to you, you were selling 5

 2  to 10 ounces of crack cocaine a week.

 3     A.   If that, yes.

 4     Q.   And in fact, that's why you were put back

 5  in the Bernalillo County Detention Center, because

 6  you tested dirty for a urine.

 7     A.   I tested dirty.  I was using drugs.

 8     Q.   And you violated your probation.

 9     A.   Yes.

10     Q.   And so they pulled you back in, and said,

11  "You're spending a weekend with us here at the

12  county jail."

13     A.   Yes, sir.

14     Q.   And it was during that weekend that

15  Matthew Cavalier was brought inside the jail.

16     A.   That's correct.

17     Q.   And that's when you developed a plan to

18  kill Matthew Cavalier.

19     A.   That's correct.  We were recognizing the

20  green light on him, and we developed a plan.

21     Q.   All right.  I want to come back to that.

22  But once you got approval from Angel Munoz to kill

23  Julian Romero, two people were tapped to go pull

24  that off:  Frederico Munoz and -- who was it --

25  Shiman Pacheco?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8287

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8288

```
 1        A.    Yes.

 2        Q.    And they went over, heavily armed, to kill

 3   him.

 4        A.    Yes, they did.

 5        Q.    And they had a mini 14 rifle?

 6        A.    I don't know what kind of gun they had.

 7        Q.    You don't recall what kind of gun they

 8   had?

 9        A.    It was a pistol, according to Freddie

10   Munoz.

11        Q.    Because it was a pistol, they had to get

12   pretty close to Julian to try to shoot him?

13        A.    Yes, that's correct.

14        Q.    And so they pulled up in the driveway to

15   make that happen?

16        A.    They pulled up in front of the house.

17   They were on the street.

18        Q.    Right.  And that's when Mr. Pacheco

19   started yelling at Frederico Munoz, "Shoot him,

20   shoot him."

21        A.    Yes.

22        Q.    And he started spraying bullets all around

23   the house?

24        A.    Yes.

25        Q.    And they didn't hit Lillian or the young
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8288

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8289

```
 1    man that was there, but they hit Mr. Romero in the
 2    leg.
 3         A.   Yes.
 4         Q.   But you weren't satisfied, because he
 5    didn't die; correct?
 6         A.   That's correct.
 7         Q.   You wanted him dead?
 8         A.   That's correct.
 9         Q.   And the fact that you wanted to continue
10    with that hit just deepened the divisions within the
11    SNM politically, amongst the Archuleta branch and
12    the Romero branch.
13         A.   Yes.
14         Q.   And it got so bad that another SNM member,
15    Billy Garcia, tried to arrange a meeting with you to
16    call it off.
17         A.   I don't think that's correct.
18         Q.   Well, Billy Garcia came over to your house
19    to talk to you about the hit; correct?
20         A.   That had already taken place, yes.
21         Q.   Well, no; that you wanted him killed.
22         A.   The conversation with me and Billy was
23    after Julian had gotten shot.
24         Q.   Right.  After he got shot.
25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8289

```
 1        Q.   And Billy came to your house?

 2        A.   Yes.

 3        Q.   And Billy said, "We got to cut this out.

 4   This is personal."

 5        A.   Well, I'm the one who arranged the

 6   sit-down.  The sit-down was about Julian.  I

 7   explained to Billy that he should have been the one,

 8   as a high-ranking member, to express to the brothers

 9   that Julian messed up, violated a rule.  And he

10   didn't do that.

11             I went on to say that "It's already gotten

12   to the point where either you're with me or you're

13   against me."  That was the end of the conversation,

14   and he left.

15        Q.   And Mr. Garcia didn't say he was with you,

16   did he?

17        A.   Mr. Garcia -- excuse me?  Say that again?

18        Q.   Mr. Garcia came to your house; correct?

19        A.   Oh, yes.  Billy, yes.

20        Q.   And he wanted to talk to you specifically

21   about Julian Romero.

22        A.   Yes.

23        Q.   And what he said to you was:  "This is a

24   personal beef.  Cut it out.  Leave the S out of it."

25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8290

1      Q.   And you said, "No, this is S business."

2      A.   Yes.

3      Q.   "This is disrespectful to the rules, the

4  reglas of the organization."

5      A.   Yes.

6      Q.   And you guys couldn't resolve your

7  differences.

8      A.   No.

9      Q.   And in fact, he left, and the whole issue

10  was unresolved.

11      A.   Yes.

12      Q.   And so the divisions, the political

13  divisions, within the SNM continued.

14      A.   Yes.

15      Q.   But Mr. Garcia wasn't pleased with your

16  perspective about Mr. Romero.

17      A.   I would say that he wasn't pleased that --

18  I mean, this is a high-ranking SNM member.  Usually

19  what he says goes.  And when the hit wasn't dropped

20  and Julian was assaulted, which he wanted the hit to

21  be dropped, he felt very disrespected.

22      Q.   Right.  And because you didn't show any

23  loyalty to Billy Garcia, he ordered you to be

24  killed.

25      A.   That's correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8291

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8292

```
 1        Q.    And in fact, he sent his nephew to the
 2   methadone clinic afterwards to try to kill you.
 3        A.    Yes, sir.
 4        Q.    And that's Baby Zack?
 5        A.    Yes, sir.
 6        Q.    And Baby Zack knew you were getting
 7   methadone at the clinic because he knew you were
 8   trying to kick heroin?
 9        A.    Yes, sir.
10        Q.    And so he showed up on San Mateo, knowing
11   you would be there to pick up methadone.
12        A.    That's correct.
13        Q.    And he confronted you.
14        A.    That's correct.
15        Q.    And he said, "I'm going to take you out."
16        A.    Yes, sir.  He pulled out a gun on me and
17   said he was going to take me out.
18        Q.    And your response to that was, you went
19   and got armed?
20        A.    Yes, sir.
21        Q.    You went and got a pistol.
22        A.    Yes, sir.
23        Q.    And you showed up at the methadone clinic
24   the next time armed with a 9 millimeter pistol?
25        A.    Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DNM 8292

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   142   Page: 8293

1     Q.    And Baby Zack showed up to do what he said

2  he was going to do:  Take you out.

3     A.    Yes, sir.

4     Q.    And you beat him to the draw, so to speak.

5     A.    Yes, sir.

6     Q.    And you shot him.

7     A.    Yes, sir.

8     Q.    And you shot up the parking lot a bit.

9     A.    Yes, sir.

10     Q.    Okay.  And you were arrested for that.

11     A.    Yes, sir.

12     Q.    And you were prosecuted for that and pled

13  guilty for that.

14     A.    Yes, sir.

15     Q.    So you weren't happy about going back to

16  prison, were you?

17     A.    No, I wasn't happy about going back to

18  prison.  I wasn't happy that they just tried to kill

19  me and that everybody involved were fellow gang

20  members of the S.

21     Q.    Right.  But my point being is:  All of

22  that was related to Julian Romero.

23     A.    Yes, sir.

24     Q.    And you never called off the green light?

25     A.    No, I didn't.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Is it fair to say that the Gerald
 2   Archuleta camp was perhaps in the minority?
 3        A.   "The minority" means like greater than?
 4        Q.   Well, less than.
 5        A.   That's not fair to say at all.
 6        Q.   So you had spoke about the SNM branching
 7   out into different groups:  Your group with your
 8   followers; correct?
 9        A.   Yes, sir.
10        Q.   And then there was another group that were
11   led by Billy Garcia?
12        A.   Yes, sir.
13        Q.   And then there's even a third group that
14   was led by Marty Barros; right?
15        A.   Yes, sir.
16        Q.   So out of the three groups, Billy Garcia
17   supported Julian Romero.
18        A.   He was -- yes, he supported Julian Romero.
19        Q.   And Marty Barros supported Julian because
20   he was an old-timer?
21        A.   No, Marty Barros did not support Julian
22   Romero.
23        Q.   But even you would agree with me that
24   those political divides created havoc within the
25   internal structure of the SNM?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8294

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8295

```
 1        A.    Yes.

 2        Q.    Because you never know who was trusting

 3   who?

 4        A.    That's correct.

 5        Q.    Now, you talked on direct about

 6   drug-smuggling into prison facilities.  And I want

 7   to touch on that, because we just heard a whole

 8   bunch of audiotape about it.

 9        A.    Yes, sir.

10        Q.    One thing you didn't mention, you said the

11   easiest way was through contact visits; is that

12   right?

13        A.    That would be correct.

14        Q.    But another way, which you didn't talk

15   about, was convincing correctional officers to

16   smuggle drugs in for you.

17        A.    That would be another way, yes.

18        Q.    And you're familiar with that technique?

19        A.    Yes, I am.

20        Q.    Okay.  And now I want to talk to you a

21   little bit about your first arrest and your first

22   trip to prison.  And you talked about it on direct,

23   about the accidental shooting of your cousin.

24        A.    Yes, I did.

25        Q.    And that was after you discharged the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    sawed-off shotgun to help out your uncle.

 2         A.   I don't understand the question.

 3         Q.   Okay.  Well, you were talking about your

 4    very first arrest, when I believe you were around 18

 5    or 19, in 1988, '86?

 6         A.   Yeah, robbery conviction.  Was it a

 7    robbery conviction?

 8         Q.   No.  This was the discharge of the weapon

 9    that killed your cousin.

10         A.   Okay.

11         Q.   And you testified on direct examination

12    that you were contemplating suicide.

13         A.   Yes.

14         Q.   But you were joking with your cousins

15    about committing suicide, weren't you?

16         A.   I don't think I was joking.  I was

17    distressed by just hearing that I may have killed

18    someone.  My intention wasn't to kill anybody with a

19    sawed-off shotgun.  I intended to spray them with

20    pellets, and I was depressed.

21         Q.   You were going to spray your cousin with

22    pellets?

23         A.   No, there was a shooting prior to that.

24         Q.   Right, where you were purportedly

25    protecting your uncle from the people that were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8297

146

```
 1   harassing him.

 2        A.   Yes.

 3        Q.   And you fired a sawed-off shotgun at them.

 4        A.   Yes.

 5        Q.   And your cousins actually thought,

 6   according to your direct testimony, that you may

 7   have killed one of the guys.

 8        A.   Yes.

 9        Q.   But you were never charged with that.

10        A.   No.

11        Q.   But do you remember writing a 24-page

12   summary of your life within the SNM?

13        A.   Yes.

14        Q.   Okay.  And do you remember writing on page

15   1 of that summary, "I was joking around with Ruben

16   about committing suicide"?

17        A.   I don't recall.

18        Q.   Pardon me?

19        A.   I don't.

20        MR. LOWRY:  May I approach, Your Honor?

21        THE COURT:  You may.

22        A.   Yes, I wrote that.

23   BY MR. LOWRY:

24        Q.   Mr. Archuleta, this is your handwriting.

25   This is a document you created?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8297

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8298

```
 1        A.   Yes.
 2        Q.   Okay.  And that's exactly what it says,
 3   isn't it?  "I was joking around with Ruben about
 4   committing suicide."
 5        A.   Yes, that's what it says.
 6        Q.   And you told Ruben, "I'm just kidding.
 7   I'm not ready to commit suicide."
 8             And that's when you were lowering the gun,
 9   and it accidentally discharged.
10        A.   Yes, that's apparently what I wrote, yeah.
11        Q.   Right.  Well, that's what happened, isn't
12   it?
13        A.   No.  I was depressed with hearing the news
14   that I was -- that I may have killed someone.
15   That's how I remember it.
16        Q.   Did anybody rush you when you were writing
17   this?
18        A.   No.
19        Q.   Mr. Acee asked you to write it to give him
20   your thoughts about your experiences growing up.
21        A.   Yes.
22        Q.   And you sat down at your leisure and wrote
23   out this 24-page statement; correct?
24        A.   Yes.
25        Q.   And while you contemplated it in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8298

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8299

148

```
1    quietude of your cell, you actually wrote, "I was
2    joking around with Ruben about committing suicide.
3    And then I said, 'Not really'"?
4         A.   Okay.
5         Q.   So you were joking.
6         A.   No, I wasn't joking.  I think that's the
7    story I used when I got to prison to save face in
8    front of our SNM members.  I couldn't say that I
9    actually thought about committing suicide.
10        Q.   Mr. Archuleta, you weren't writing this
11   for the other SNM members, were you?
12        A.   No, I wasn't.
13        Q.   You were writing it for this gentleman
14   over here with the FBI?
15        A.   Right.
16        Q.   Did you have to save face with him?
17        A.   No, I don't.
18        Q.   Did you have to make sure he -- did you
19   have to mislead him about what really happened?
20        A.   No.
21        Q.   You understand it's a felony offense to
22   lie to the FBI?
23        A.   Yes.
24        Q.   So you got a light prison sentence for the
25   accidental discharge of the weapon that killed your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8300

```
 1   cousin.
 2        A.   I got the maximum penalty, which was
 3   involuntary manslaughter.  It carried 18 months.
 4        Q.   And one extra year for a firearm
 5   enhancement.
 6        A.   Yes, sir.
 7        Q.   But under New Mexico law, you were out
 8   fairly quickly.
 9        A.   Yes.
10        Q.   And the point I was getting at is:  When
11   you went into prison that first time, you wanted
12   drugs.
13        A.   Yes.
14        Q.   You weren't an SNM member, were you?
15        A.   No, I wasn't.
16        Q.   You were just a regular inmate in the
17   correctional department.
18        A.   Yes, sir.
19        Q.   You still wanted drugs.
20        A.   I wanted drugs.
21        Q.   And you convinced a correctional officer
22   to bring marijuana in to you.
23        A.   Yes, I did.
24        Q.   And he did that routinely?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8300

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8301

```
 1      Q.   But in order to get the marijuana, he had
 2  to meet up with your girlfriend; right?
 3      A.   Yes, sir.
 4      Q.   And that was Frances Montano.
 5      A.   Yes, sir.
 6      Q.   And that's a woman you'd been dating since
 7  you were a teenager.
 8      A.   Yes, sir.
 9      Q.   And because they met so frequently, they
10  struck up a romantic affair, didn't they?
11      A.   Yes, sir.  That was my first wife, yes,
12  sir.
13      Q.   And when you got out of prison, you went
14  back home to meet her; correct?
15      A.   Yes, sir.
16      Q.   And you found out about the relationship.
17      A.   Yes, sir.
18      Q.   And that didn't make you happy, either,
19  did it?
20      A.   No, it didn't.
21      Q.   And you wanted to kill her, when you got
22  released, because you already had a sense about the
23  relationship.
24      A.   Yes, sir.
25      Q.   And so you thought, as you went home, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8301

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   151 Page: 8302

```
 1   were going to kill her.
 2        A.   Yes, sir.
 3        Q.   But the icing on the cake is:  When you
 4   got home to your grandmother's house, where you
 5   lived, you found out she was pregnant.
 6        A.   Yes, sir.
 7        Q.   With his child.
 8        A.   She said she may be pregnant, but didn't
 9   tell me whose child.
10        Q.   And you didn't bother to find out.
11        A.   No, I didn't.
12        Q.   You strangled her to death.
13        A.   Yes, I did.
14        Q.   And you choked her.
15        A.   Yes, I did.
16        Q.   And you said once you got your hands
17   around her neck, you knew you weren't going to let
18   go until she was dead.
19        A.   That's correct.
20        Q.   And you killed her.
21        A.   Yes.
22        Q.   And then you hid her body in the closet in
23   your grandmother's house.
24        A.   I did not hide her body in the closet.  I
25   left her there on the floor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8302

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8303

152

```
 1        Q.   Again, you wrote this statement; right?

 2        A.   Yes.

 3        Q.   May I show you?  May I refresh your

 4   recollection again?

 5        A.   Yes.

 6             MR. LOWRY:  May I approach, Your Honor?

 7             THE COURT:  You may.

 8   BY MR. LOWRY:

 9        Q.   Mr. Archuleta, you would agree with me

10   when you wrote this for the FBI, you wrote, "Without

11   thinking and in rage, I grabbed her by the neck and

12   started to choke her"?

13        A.   Yes.

14        Q.   "I knew I wasn't going to stop choking her

15   until she was dead"?

16        A.   Yes.

17        Q.   "I then put her in the closet and left the

18   house so that I could find some transportation";

19   correct?

20        A.   Yes.

21        Q.   And then you went on to write, "But while

22   I was gone, my grandmother found her and called an

23   ambulance, but she was dead."

24        A.   Yes.

25        Q.   On direct examination, you told this jury
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8303

```
 1    you left the house and you called the authorities to
 2    let the authorities know she was there.  But that
 3    wasn't true, was it?
 4         A.   I did report -- I walked to the laundromat
 5    and called the authorities and reported the
 6    incident, yes.
 7         Q.   But your grandmother had called it in
 8    already.
 9         A.   I also had called it in.
10         Q.   Okay.  You didn't include that in your
11    summary to the FBI, did you?
12         A.   If it's not there, I didn't.  But --
13         Q.   And that was your second conviction that
14    Mr. Beck talked about, in 1988?
15         A.   Yes.
16         Q.   You pled guilty to her murder.
17         A.   Yes.
18         Q.   And you got a four-year habitual offender
19    sentence and a 12-year sentence for the murder?
20         A.   Yes.
21         Q.   But that didn't keep you in prison long
22    either, did it?
23         A.   I had to finish the sentence.  I did the
24    sentence.
25         Q.   Right.  But it wasn't anywhere close to 16
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8304

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   154  Page: 8305

```
 1   years.
 2        A.   It was maybe 11 or 12.
 3        Q.   No, you remember, that would have been in
 4   1988.  You got out and then had probation
 5   violations.
 6        A.   Eleven years.  I got out in '99.  I
 7   believe '99, '98; 11 years.  I did 11 years on a
 8   16-year sentence.
 9        Q.   And it was during those 11 years that you
10   really truly got into prison culture and prison
11   life.
12        A.   Yes.
13        Q.   And that's what led you to associate with
14   the SNM?
15        A.   Yes.
16        Q.   Now, I want to talk to you about your
17   entry into the SNM, because Mr. Beck talked to you
18   about some of the benefits you were getting in your
19   plea agreement; correct?
20        A.   Yes.
21        Q.   And he talked to you about the
22   2,200-some-odd dollars that you got?
23        A.   Yes.
24        Q.   And that was for commissary and telephone
25   and things like that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8305

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8306

```
 1        A.    Yes.

 2        Q.    And so you could communicate with your

 3   family?

 4        A.    Yes.

 5        Q.    Telephone calls, write letters?

 6        A.    Yes.

 7        Q.    But the real benefit that you're getting

 8   in this case isn't the commissary money, is it?

 9        A.    No.

10        Q.    The benefit you're getting is the United

11   States not prosecuting for all of the SNM activities

12   that you talked about on direct, isn't it?

13        A.    Yes.

14        Q.    Because there were multiple stabbings.

15        A.    That's correct.

16        Q.    And there were a lot of attempted murders.

17        A.    That's correct.

18        Q.    And you were the moving force behind a lot

19   of that.

20        A.    That's correct.

21        Q.    And in exchange for your testimony today,

22   the United States agreed just to give you a

23   three-year charge.

24        A.    Yes, sir.

25        Q.    And you're almost done with your time,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   156   Page: 8307

```
 1   aren't you?

 2        A.    That's correct.

 3        Q.    You have less than a year to go.

 4        A.    That's correct.

 5        Q.    Do you know what your kickout date is?

 6        A.    I'm not sure.  Three years would be

 7   December 2 of this year.

 8        Q.    And you get to do 85 percent of that time,

 9   so you get 50 days off a year.

10        A.    I'm not getting no good time at all.  As

11   of now, I don't know if I'm getting any good time.

12        Q.    So your lawyer hasn't explained that to

13   you?

14        A.    No.

15        Q.    But it's a relatively short prison

16   sentence, isn't it?

17        A.    It's a three-year sentence, yes.

18        Q.    And it surely isn't life in prison, is it?

19        A.    No, it ain't.

20        Q.    And when you met with the United States,

21   they explained to you if you wanted to get charged

22   in the RICO conspiracy, you could get life in

23   prison, didn't they?

24        A.    Yes.

25        Q.    And rather than do that, you said you'd
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8307

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8308   157

```
 1   tell them a story.
 2        A.   That I would cooperate in this RICO
 3   indictment.
 4        Q.   Now, let's go through some of the activity
 5   that the United States is willing to forgive you
 6   for, okay?  So there was the very initial -- what
 7   you call the introductory stabbing of Chaparro;
 8   correct?
 9        A.   Yes.  Would you say that again?
10        Q.   Well, I believe you testified on direct
11   that it was sometime shortly after you arrived at
12   the facility you met with Phillip Cordova and Marty
13   Barros in the chow hall in the Old Main?
14        A.   Yes.
15        Q.   And they said, "Do you want to become an
16   SNM member?"
17        A.   At that time I was already an SNM member,
18   but --
19        Q.   Do you remember that's what --
20        A.   Yes.
21        Q.   -- that's not what you put in your
22   little --
23        A.   Well, that's when I actually earned my
24   bones.
25        Q.   Right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8308

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   158   Page: 8309

```
 1         A.   But I had been considered a brother in the

 2    S for a little while before that, just hanging

 3    around the S and participating in daily SNM

 4    activity.  I mean -- okay.

 5         Q.   Right.  But they said, "If you want to be

 6    a member, go stab Chaparro in the neck."

 7         A.   Yes.

 8         Q.   And you did.

 9         A.   Yes.

10         Q.   You didn't think twice about it.

11         A.   Right.

12         Q.   And you tried to kill him.

13         A.   Yes.

14         Q.   And that's because he had shorted drugs to

15    the SNM.

16         A.   Yes.

17         Q.   It wasn't just any drugs; it was heroin.

18         A.   Yes.

19         Q.   And so once he was stabbed, he was taken

20    off line, he went into protective custody.

21         A.   Yes.

22         Q.   And that was the whole idea, to cull the

23    herd, so to speak, getting rid of the weak?

24         A.   Yes.

25         Q.   And then you talked about the second one,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8309

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8310

```
 1   with Eddie Lopez.

 2           And by the way, you're not going to get

 3   any time for that.  You didn't get any time in the

 4   state court when that happened, did you?

 5       A.    No, I didn't.

 6       Q.    Nobody complained?

 7       A.    I did not get no time for it.

 8       Q.    No criminal charges?

 9       A.    No criminal charges.

10       Q.    But the federal government could bring

11   criminal charges for that, couldn't they?

12       A.    No.  I signed a Kastigar letter saying I

13   couldn't be charged for anything that I would talk

14   about the day that I started cooperating.

15       Q.    Right.  They gave you immunity for your

16   sit-down statement for a single day.

17       A.    With others, with others, other days when

18   they needed to do follow-ups.

19       Q.    As long as you were truthful.

20       A.    Yes.

21       Q.    But even that first day you met with the

22   FBI, you weren't really truthful with them.

23       A.    Why is that?

24       Q.    Well, do you remember telling the FBI,

25   when you met on January 21, that you were never a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8310

```
 1   formal leader of the SNM?
 2        A.   Yes.
 3        Q.   That was a lie, wasn't it?
 4        A.   Yes, I was downplaying my role.  I just
 5   started cooperating.  And I wasn't sure of the whole
 6   idea of cooperating, and I downplayed my role.
 7        Q.   But that was a lie, wasn't it?
 8        A.   Yes, that wasn't true.
 9        Q.   And again, you can be punished for lying
10   to the FBI.
11        A.   Yes.
12        Q.   Remember, Martha Stewart went to prison
13   for lying to the FBI.
14        A.   Yes.
15        Q.   But they didn't charge you with lying to
16   them, did they?
17        A.   No.
18        Q.   Because they wanted your testimony?
19        A.   Yes.
20        Q.   Now, when you stabbed Eddie Lopez, you
21   actually deceived him; right?  Or you tricked the
22   guard to make that happen?
23        A.   No.
24        Q.   Well, you worked in concert with another
25   gentleman; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8311

```
 1        A.    Yes.

 2        Q.    And that gentleman distracted the guard so

 3   you could get close to Eddie Lopez and stab him?

 4        A.    Yes.

 5        Q.    And so your companion made Eddie Lopez

 6   more vulnerable by making sure he wasn't being

 7   observed or protected.

 8        A.    Yes.

 9        Q.    And you pulled that off.

10        A.    Excuse me?

11        Q.    And you stabbed him.

12        A.    Yes.

13        Q.    And got him out of there.

14        A.    Yes.

15        Q.    Just like Phillip Cordova wanted you to.

16        A.    Yes.

17        Q.    And again, you weren't charged for that.

18        A.    No, I wasn't.

19        Q.    And not even the federal government wants

20   to charge you for that as part of a racketeering

21   conspiracy.

22        A.    That was part of the agreement before I

23   started cooperating, according to the Kastigar

24   letter.

25              THE COURT:  Mr. Lowry, would this be a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   good time for us to take our break?

 2            MR. LOWRY:  Sure, Your Honor.

 3            THE COURT:  All right.  We'll be in recess

 4   for about 15 minutes.

 5            (The jury left the courtroom.)

 6            THE COURT:  All right.  We'll be in recess

 7   for about 15 minutes.

 8            (The Court stood in recess.)

 9            THE COURT:  All right.  We'll go on the

10   record.  Anything from the Government we need to

11   discuss?  Anything I can do for you?

12            MR. BECK:  No, Your Honor.

13            THE COURT:  What about you, Mr. Lowry?

14   Anybody on the defense side?

15            (The jury entered the courtroom.)

16            THE COURT:  Everyone be seated.

17            All right.  Mr. Archuleta, I'll remind you

18   that you're still under oath.

19            THE WITNESS:  Yes.

20            THE COURT:  Mr. Lowry, if you wish to

21   continue your cross-examination of Mr. Archuleta,

22   you may do so at this time.

23            MR. LOWRY:  Thank you, Your Honor.

24            THE COURT:  Mr. Lowry.

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8313

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8314

163

```
 1   BY MR. LOWRY:
 2        Q.   Mr. Archuleta, after the -- and you
 3   stabbed Eddie Lopez; correct?
 4        A.   Yes.
 5        Q.   And again, ideally, you wanted to kill
 6   him?
 7        A.   No.
 8        Q.   You didn't want to kill him?
 9        A.   No, the objective was to remove him from
10   the line.  I stabbed him in the side twice.
11        Q.   Just to get him out of there?
12        A.   Just to remove him.
13        Q.   Just sort of a gratuitous stabbing, just a
14   "You don't belong here"?
15        A.   Yes.  So they could remove him from the
16   line.
17        Q.   And after that, you were transferred to
18   the Southern facility down here in Las Cruces?
19        A.   Yes.
20        Q.   And you weren't a fan of Southern, were
21   you?
22        A.   No.
23        Q.   Because you're from Albuquerque?
24        A.   Yes.
25        Q.   And your family is all there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8314

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8315

```
 1          A.    Yes.

 2          Q.    Living in Southern made it hard for you to

 3   communicate with your family.

 4          A.    Yes.

 5          Q.    And without family visits, days drag on

 6   endlessly.

 7          A.    Yes.

 8          Q.    And you developed a plan, a scheme, to get

 9   out of Southern, didn't you?

10          A.    Yes.

11          Q.    And you hatched that plan with another SNM

12   member, Robert Martinez; correct?

13          A.    Yes.

14          Q.    And he's also known as Baby Rob; right?

15          A.    Yes.

16          Q.    And neither one of you wanted to be in

17   Southern.

18          A.    That's correct.

19          Q.    You both wanted to be back in Santa Fe at

20   the old facility.

21          A.    That's correct.

22          Q.    And in order to get there, you said,

23   "Okay, we'll pick somebody out and assault them, so

24   they ship us back north"; is that right?

25          A.    That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8315

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8316

165

1     Q.   And in fact, there was -- another

2   gentleman learned about your plan, Jesse Trujillo,

3   and joined you in it.

4     A.   That's correct.

5     Q.   Because he wanted out of Southern, too.

6     A.   Yes.

7     Q.   So rather than work with the Department of

8   Corrections, you guys thought you'd manipulate the

9   system to get what you wanted out of it.

10     A.   That's correct.

11     Q.   And the plan was:  Well, at this point,

12   there is some tension between SNMers and the Aryan

13   Brotherhood guys; right?

14     A.   That's correct.

15     Q.   And in fairness, you said the Aryan

16   Brotherhood was a white gang.  But the Aryan

17   Brotherhood is really a White Supremacist gang,

18   isn't it?

19     A.   That's correct.

20     Q.   It's really hard to like a White

21   Supremacist, isn't it?

22     A.   After the war started at the main

23   facility, yes, that's correct.  I'm not sure -- when

24   I was in Cruces, I don't think the war had started

25   by then.  I'm not sure.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8316

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8317

166

```
 1        Q.   Okay.  But you knew that they were easy
 2   pickins in terms of, if you had to assault somebody
 3   on the yard, going after an AB guy, nobody is going
 4   to complain?
 5        A.   Right.  What I'm saying is:  I don't think
 6   we hit him because he was AB.  Our plan was to, from
 7   what I remember.
 8        Q.   But you singled out a white guy that had
 9   been convicted of a rape charge.
10        A.   Yes.
11        Q.   So he was a two-fer.  He was a white guy
12   with a sexual offense.
13        A.   Yes.
14        Q.   So nobody was going to bat an eye about
15   assaulting this guy.
16        A.   Right.
17        Q.   And the plan was:  You were going to,
18   again, come at him from different angles, correct,
19   on the yard?
20        A.   That's correct.
21        Q.   And you took a rock, a good-sized rock,
22   and hid it under your arm.
23        A.   That's correct.
24        Q.   And you were going to smash him in the
25   face.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8318

167

```
 1        A.    That's correct.

 2        Q.    And Jesse Trujillo, once he was hit, was

 3   going to stab him.

 4        A.    That's correct.

 5        Q.    And then Robert Martinez was just going to

 6   pile on and help beat him up.

 7        A.    That's correct.

 8        Q.    It didn't quite go as planned, did it?

 9        A.    No.

10        Q.    Because when -- you concealed the rock;

11   correct?

12        A.    Yes.

13        Q.    And when you got close enough to where you

14   thought you could strike him in the face, you threw

15   it at him, but missed.

16        A.    That's correct.

17        Q.    And he didn't even see the rock as it

18   whizzed by him.

19        A.    That's correct.

20        Q.    But it didn't stop Jesse Trujillo.  He

21   still ran up and stabbed the guy.

22        A.    Yes.

23        Q.    And Robert Martinez jumped in and started

24   beating him up, as well.

25        A.    That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8318

```
 1        Q.    And at that point, guards come rushing in,
 2   correct, to the yard?
 3        A.    Yes, that's correct.
 4        Q.    And you guys took off.
 5        A.    That's correct.
 6        Q.    The only one that got picked up was Mr.
 7   Trujillo, right, on the assault?
 8        A.    Yes.
 9        Q.    So the first attempt to get back to Santa
10   Fe was foiled, because it didn't really go as
11   planned.
12        A.    Yes.
13        Q.    So you had to pick out another person?
14        A.    Yes.
15        Q.    And you picked out another white guy?
16        A.    That's correct.
17        Q.    And to make sure you were successful this
18   time, you picked up a baseball bat.
19        A.    That's correct.
20        Q.    And you and Robert Martinez attacked him.
21   This time you had a baseball bat.
22        A.    That's correct.
23        Q.    And you took him out.
24        A.    I assaulted him.
25        Q.    And in your little story here, you say,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

169

```
 1    "Robert punched him and took him to the ground, and
 2    I hit him with the bat a couple of times.  And we
 3    were busted in the act, and we were on our way back
 4    to Santa Fe."
 5         A.    That's correct.
 6         Q.    And you actually have a little smiley face
 7    next to that.
 8              MR. LOWRY:  May I turn on the Elmo just
 9    for demonstrative purposes, Your Honor?
10              THE COURT:  You may.
11              MR. LOWRY:  Your Honor, may we approach?
12              (The following proceedings were held at
13    the bench.)
14              MR. LOWRY:  I want to use it for
15    demonstrative purposes.  The witness has identified
16    this writing as his own.  It's a very accurate
17    depiction of his writing.  And I just want to show
18    the jury that it has a smiley face, that he was
19    actually happy that he attacked somebody.
20              MR. BECK:  I mean, it's hearsay.  It's an
21    out-of-court statement.  We don't show jurors
22    out-of-court hearsay.
23              THE COURT:  What are you trying to do?
24    What is this?
25              MR. LOWRY:  This is his diary, for lack of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8320

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8321

```
 1    a better word, his life as an SNM --
 2            THE COURT:  I think you can impeach him
 3    with it, but I don't think you can put that in front
 4    of the jury in any form, like on an Elmo or
 5    anything.
 6            MR. LOWRY:  Okay, all right.
 7            (The following proceedings were held in
 8    open court.)
 9            THE COURT:  Mr. Lowry.
10    BY MR. LOWRY:
11        Q.    So it was mission accomplished for you;
12    right?
13        A.    Yes.
14        Q.    And you're happy?
15        A.    Yes.
16        Q.    And you were happy that you got shipped
17    back to Santa Fe; correct?
18        A.    Correct.
19        Q.    And it didn't matter to you that you had
20    to assault two people to get there?
21        A.    No.
22        Q.    And again, nobody charged you criminally
23    for either assault?
24        A.    No, sir.
25        Q.    Now, when you get back to Santa Fe, this
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                    e-mail: info@litsupport.com

DNM 8321

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8322

```
 1    is the era, if you will, where the tensions start
 2    erupting between the SNM and the Aryan Brotherhood.
 3         A.   Yes.
 4         Q.   And in fact, during this process, they're
 5    closing down the Old Main; correct?
 6         A.   Yes.
 7         Q.   And they're shipping people to what we've
 8    called throughout these proceedings the PNM North
 9    facility and PNM South facility?
10         A.   Yes.
11         Q.   And they're all part of the Santa Fe
12    complex?
13         A.   That's correct.
14         Q.   And you were in the Old Main with two
15    leaders of the Aryan Brotherhood?
16         A.   That's correct.
17         Q.   Right.  And you were with John Price and
18    some other guy.  You didn't know whose name it was,
19    but it might have been Tree?
20         A.   Tree.  He was from Utah.  They called him
21    Tree.  I don't know his real name.
22         Q.   And you guys wanted to take them out.
23         A.   Yes.
24         Q.   And this time was for real.  You wanted to
25    stab him and really take him out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8322

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   172   Page: 8323

```
 1        A.   Yes.

 2        Q.   So you guys got shanks; correct?

 3        A.   Yes.

 4        Q.   And at this time there is no tier time;

 5   they sort of let everybody out at once; correct?

 6        A.   That's correct.

 7        Q.   You guys ganged up and attacked both John

 8   Price and Tree?

 9        A.   That's correct.

10        Q.   And stabbed them repeatedly?

11        A.   That's correct.

12        Q.   Tried to kill them?

13        A.   That's correct.

14        Q.   Fortunately for them, you weren't

15   successful, were you?

16        A.   No, we weren't.

17        Q.   But the effort was put in.

18        A.   That's correct.

19        Q.   And for that, they moved you from the Old

20   Main facility to the South facility?

21        A.   That's correct.

22        Q.   And what timeframe was this?  Was this mid

23   '90s?

24        A.   I would say around there, '97, something

25   like that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8323

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   173   Page: 8324

```
 1        Q.    Now, when you get to PNM South -- Level 5;
 2   right?
 3        A.    Yes.
 4        Q.    -- Junior is in charge.
 5        A.    Yes.
 6        Q.    He's the llavero.
 7        A.    That's correct.
 8        Q.    And Junior's name is Leroy Torrez; right?
 9        A.    That's correct.
10        Q.    And what is Leroy Torrez infamous for?
11   What did Leroy Torrez start, if you will?
12        A.    Well, at that time he didn't start --
13   after the fact, at that time there was no All Star
14   gang.  He didn't start the All Star gang until after
15   he was assaulted.
16        Q.    Okay.  Is that what precipitated him
17   coming up with the idea of the All Stars, is you
18   taking Junior out when you got to the South
19   facility?
20        A.    No, sir.
21        Q.    Okay.  But you didn't want him in charge?
22        A.    No, sir.
23        Q.    And by this time, from your trip down to
24   Southern, you'd become fast friends with Angel
25   Munoz?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8324

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8325

```
1          A.    Yes.

2          Q.    Who was the undisputed leader of the SNM?

3          A.    Yes, sir.

4          Q.    And you contacted Angel and said, "We need

5    to take this guy out."

6          A.    No, that's not correct.

7          Q.    Well, did you not plot against him?

8          A.    Yes, that's correct.  As soon as I got to

9    the South facility, brothers were bringing to my

10   attention that -- how he was very disrespectful

11   towards brothers.  And the issue was brought up to

12   Marty Barros.  He was -- from that point on, he was

13   expected to step down, which he did not do.

14         Q.    And you went to Marty Barros because he

15   was there in Santa Fe?

16         A.    He was in Santa Fe, yes.

17         Q.    And Angel Munoz is down at Southern;

18   correct?

19         A.    Yes.

20         Q.    So Marty Barros is the most senior person

21   to talk to?

22         A.    Yes, at that time, in Santa Fe.

23         Q.    And you wanted to get Marty Barros'

24   approval to do this.

25         A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8326

1    Q.   Because you didn't want to be on the outs

2  with anybody.

3    A.   Because why?

4    Q.   Because you didn't want to be on the outs

5  with anybody.  You didn't want to be adverse to

6  Marty Barros.

7    A.   You have to get permission or approval for

8  an assault on a former -- on a member of the SNM.

9  So I got approval from Marty Barros.

10   Q.   Except Julian Romero was an exception;

11 right?  You didn't have to get permission from

12 anybody to call the hit on Julian Romero.

13   A.   No.  It was approved by Angel Munoz.

14   Q.   Right.  But just not Marty.

15   A.   Anything coming from Angel was the same as

16 coming from Marty.

17   Q.   So you got approval?

18   A.   Yes.

19   Q.   You stabbed Leroy Torrez.

20   A.   I did not.  I wasn't at the facility, but

21 it was carried out.

22   Q.   But you participated in the planning of

23 that.

24   A.   Yes, that's correct.

25   Q.   You might not have participated in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8326

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8327
176

```
 1   actual assault on Mr. Torrez, but you set the whole
 2   thing up.
 3        A.   That's correct.
 4        Q.   You set it in motion.
 5        A.   That's correct.
 6        Q.   You made sure it happened.
 7        A.   That's correct.
 8        Q.   You orchestrated it.
 9        A.   That's correct.
10        Q.   Now, with Leroy Torrez out of the way, you
11   were fully in charge of the Southern, PNM South.
12        A.   That's correct.
13        Q.   And that's, what, '95, '96?
14        A.   '98.
15        Q.   '98?
16        A.   Somewhere around there.
17        Q.   And this is where you resume -- now, it's
18   a full-fledged war with the Aryan Brotherhood by
19   this time.
20        A.   Yes, sir.
21        Q.   And you resumed attacks on the Aryan
22   Brotherhood.
23        A.   That's correct.
24        Q.   And you wanted to get a little more
25   splashy about it, so you guys planned a double
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8327

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8328

1   assault.

2          A.   Yes.

3          Q.   And it was sort of a decoy assault:

4   Assault one guy in the pod, so all the COs come

5   rushing in; and then somebody else can take out

6   another Aryan Brotherhood where security is more

7   lax.

8          A.   That's how it was performed.  But they

9   were both Aryan Brotherhood.

10         Q.   Right.

11         A.   Yes.

12         Q.   And you selected them specifically because

13  of that.

14         A.   Yes, sir.

15         Q.   And they were stabbed.

16         A.   Yes.

17         Q.   And you tried to kill them both, or the

18  plan was to kill them both.

19         A.   That's correct.

20         Q.   And again, you were never prosecuted for

21  those attempted murders.

22         A.   No, sir.

23         Q.   And the federal government said they were

24  going to overlook that and give you a three-year

25  sentence in exchange for your testimony.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8328

 1     A.   Yes, sir.  I received three years.  But I

 2 received a death sentence from the S at the same

 3 time.

 4     Q.   We'll get to that.

 5          Now, at this point, Department of

 6 Corrections is a bit fed up; correct?

 7     A.   That's correct.

 8     Q.   So they sent you -- they think, We're

 9 going to get rid of Gerald Archuleta.  We're going

10 to send him over to the eastern plains.  They're

11 going to send you to Hobbs.

12     A.   That's correct.

13     Q.   But when you get to Hobbs, there are still

14 people that you know that belong to the SNM there.

15     A.   That's correct.

16     Q.   And lo and behold, John Price, the Aryan

17 Brotherhood gentleman that you attacked in the Old

18 Main, is there.

19     A.   That's correct.

20     Q.   And you so think, Hey, I can take care of

21 unfinished business.

22     A.   That's correct.

23     Q.   And so with John Price and another guy,

24 Robert -- how do you say that?

25     A.   Hanrahan.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8329

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   179   Page: 8330

```
 1        Q.    Hanrahan.  And you guys make the plan to
 2   attack these guys yet again.
 3        A.    That's correct.
 4        Q.    And you try to kill John Price.
 5        A.    Yes, assault him.
 6        Q.    Well, you stabbed him.
 7        A.    Yeah, stabbed him.
 8        Q.    Beat him with a broom.
 9        A.    There's the possibility that he could have
10   died, yes.
11        Q.    Well, I mean, that's sort of the purpose
12   of the war with the Aryan Brotherhood, to dominate
13   them; correct?
14        A.    That's correct.
15        Q.    You wanted everybody to know that you're
16   going to dominate them.
17        A.    That's correct.
18        Q.    You wanted to kill them.
19        A.    That's correct.
20        Q.    Because you wanted the prestige.
21        A.    Because there was a green light.  It
22   wasn't about the prestige.  It was about the green
23   light that had been set on the Aryan Brotherhood.
24   It was the war.  There was a war between the SNM and
25   the Aryan Brotherhood.  And as an SNM Gang leader, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8330

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8331

```
 1  was expected to retaliate every chance I got against

 2  the Aryan Brotherhood.

 3       Q.   So you tried to kill him.

 4       A.   I guess that's correct.

 5       Q.   Him and Robert Hanrahan.

 6       A.   That's correct.

 7       Q.   And you were never charged with that.

 8       A.   No, sir.

 9       Q.   And the federal government said, "We're

10  not going to charge you with it either."

11       A.   That's correct.

12       Q.   "And instead, you'll get a three-year

13  sentence."

14       A.   That's correct.

15       Q.   Now, that's the despite multiple stabbings

16  and assaults -- and that's 10 -- New Mexico

17  Department of Corrections paroled you to the streets

18  of Albuquerque; correct?

19       A.   No.

20       Q.   No?

21       A.   No, they paroled me.  I paroled to

22  Tennessee.

23       Q.   No, but this is in 2000.

24       A.   Okay, yes.  I paroled.  Yeah, I paroled to

25  Albuquerque.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8331

181

```
 1       Q.   And this is when you're out on the
 2  streets; correct?
 3       A.   Yes.
 4       Q.   And Angel Munoz is out on the streets;
 5  right?
 6       A.   Yes.
 7       Q.   And you guys are doing your thing with
 8  crack.
 9       A.   Yes.
10       Q.   And this is when you tested dirty in 2001,
11  and you go to BCDC, and the whole incident with
12  Matthew Cavalier happens.
13       A.   That's correct.
14       Q.   And that's what really precipitated the
15  Julian Romero division.
16       A.   Yes.
17       Q.   I want to talk about the Matthew Cavalier
18  incident for a moment, because again, you used a bit
19  of deception to kill Mr. Cavalier, didn't you?
20       A.   Yes, sir.
21       Q.   Because you went in thinking you were
22  going to do a three-day weekend in the local county
23  jail; correct?
24       A.   That's correct.
25       Q.   But when Matthew Cavalier comes in, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8332

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8333

182

1   and everybody else that was affiliated with SNM

2   thought:  We have business to take care of.

3        A.   Yes, sir.

4        Q.   And everybody knew Matthew Cavalier was a

5   snitch.

6        A.   Yes, sir.

7        Q.   And snitches get stitches.

8        A.   Snitches get killed.

9        Q.   Right.  That's the rule.

10        A.   That's the rule.

11        Q.   But you didn't want Matthew Cavalier to

12   think that, did you?

13        A.   No, sir.

14        Q.   And Matt came to you and asked you for a

15   pass.

16        A.   Yes, sir.

17        Q.   And you made him think he was going to get

18   a pass.

19        A.   Yes, sir.

20        Q.   And you told him, "Hey, if you put in some

21   work for us here at the MDC, we can work this out."

22        A.   That's correct.

23        Q.   And it's kind of awkward, because

24   initially Matt was your celly, wasn't he?

25        A.   Yes, that's correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    You didn't want him to be your celly.

 2        A.    No, I didn't.

 3        Q.    You didn't want him near you.

 4        A.    No, I didn't.

 5        Q.    So you had the COs move him out of your

 6   cell.

 7        A.    That's correct.  Or I moved to another

 8   cell.

 9        Q.    You moved out and left him there.

10        A.    Yes.

11        Q.    But you went and told Matt, "Hey, we're

12   going to have a little get-together tonight.  Let's

13   party."

14        A.    That's correct.

15        Q.    And you met up just before the final count

16   for the night, around 10:00, to do some heroin.

17        A.    Or to smoke some cigarettes, I think.

18        Q.    A little bit of -- well, you did a shot of

19   heroin earlier in the evening.

20        A.    I don't recall.  I know that we went into

21   the room to smoke some cigarettes with him.  We were

22   doing heroin at the time, also.

23        Q.    Would it refresh your recollection to look

24   at your statement?

25        A.    No, I don't need the recollection.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8335

184

```
 1        Q.    So you were doing heroin with Matthew
 2   Cavalier that evening?
 3        A.    Yes.
 4        Q.    And you wanted him to relax around you
 5   guys?
 6        A.    Yes.
 7        Q.    So you thought you'd party a little bit;
 8   correct?
 9        A.    Correct.
10        Q.    And then you said, "Hey, before final
11   count, let's get together and we'll smoke some
12   cigarettes."
13        A.    Yes, correct.
14        Q.    And so there were you and Roy Martinez,
15   Shadow; correct?
16        A.    Correct.
17        Q.    And a couple of other gentlemen met him at
18   his cell.
19        A.    Correct.
20        Q.    And who were the other gentlemen?  Was --
21        A.    Francisco Villalobos.  His name is Paco.
22   Roy Martinez; his name is Shadow.  And Big Rabbit is
23   Samuel Silva.
24        Q.    And the Mercers, Kelly and Johnny Mercer?
25        A.    They were in the pod.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8335

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8336
185

```
 1        Q.    So they weren't really part of the plan;
 2   they just happened to be there observing.
 3        A.    Yes.
 4        Q.    And you and Silva and Munoz go in to smoke
 5   cigarettes with Matthew Cavalier.
 6        A.    Who is Munoz?
 7        Q.    Well, pardon me.  Frederico.  Isn't it
 8   Playboy?
 9        A.    Yes.
10        Q.    No, pardon me.  Roy Martinez.  Pardon me.
11        A.    Yes.  Me, Roy Martinez, Francisco
12   Villalobos, and Samuel Silva went into the room with
13   Matt and Kelly to smoke some cigarettes.
14        Q.    And when you entered into the room, you
15   guys had already developed a plan to kill him.
16        A.    That's correct.
17        Q.    And you knew exactly who was going to do
18   what when you entered the room.
19        A.    That's correct.
20        Q.    And you don't smoke cigarettes.
21        A.    No, sir.
22        Q.    You were assigned the lookout.
23        A.    Yes, sir.
24        Q.    It was your idea to take Matthew out.
25        A.    It was.  There was a recognized green
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



DNM 8336

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8337

1   light on him, and we knew what we had to do.

2   Otherwise, if we didn't honor the green light, it

3   could have been held against us later on.

4        Q.   But you were the most senior there.

5        A.   Right.  I wasn't in the position to call

6   off a green light from Marty Barros, so I carried

7   out the green light.

8        Q.   So you kept watch; correct?

9        A.   Yes.

10       Q.   Outside the cell.  Made sure nobody came,

11  no guards were coming.

12       A.   Yes.

13       Q.   And you gave them the thumbs up.

14       A.   Yes.

15       Q.   And once they finished their cigarette,

16  somebody puts Matthew Cavalier in a bearhug; right?

17       A.   Yes.

18       Q.   And somebody grabs his feet?

19       A.   That's correct.

20       Q.   And then Roy Martinez takes a piece of a

21  bedspread and strangles him.

22       A.   That's correct.

23       Q.   And you guys thought he had killed him;

24  correct?

25       A.   That's correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8337

187

1       Q.    And you left him there and covered him up.

2       A.    That's correct.

3       Q.    You heard -- about 30 minutes later, you

4  figured out, oh, that didn't really work.  He's

5  still alive.

6       A.    Yes.

7       Q.    And so you had to go back in the room and

8  reattack him.

9       A.    Yes.

10      Q.    And at that time, you guys broke his neck

11 to make sure he was dead.

12      A.    Yes.

13      Q.    Okay.  And you covered up his body.

14      A.    His body was covered up.

15      Q.    And nobody in the pod mentioned it.

16      A.    No.

17      Q.    And you went through successive counts.

18 The guards came around and just thought he was

19 sleeping.

20      A.    Yes.

21      Q.    It wasn't until the next day that somebody

22 called home and said, "You won't believe it, but

23 there's this dead guy in the pod here and nobody

24 knows about it."

25      A.    That's correct.

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And they called the news channel, and the
2  news channel had to call the jail to say that they
3  had a dead body in there.
4    A.   That's correct.
5    Q.   That's how deceptive you guys were, that
6  nobody inside the institution knew he was dead.  The
7  word had to come from outside.
8    A.   Other than those in the pod, that's
9  correct.
10   Q.   Those involved.
11   A.   Those involved, and everybody else that
12 was in the pod.  That's correct.
13   Q.   Now, at this time you were good friends
14 with Jake Armijo.
15   A.   That's correct.
16   Q.   Jake Armijo was one of those guys that was
17 in the Gerald Archuleta camp.
18   A.   That's correct.
19   Q.   Jake Armijo was an enforcer for the Gerald
20 Archuleta camp.
21   A.   That's correct.
22   Q.   And you wanted to get -- after everything
23 blew up and you guys knew you were facing criminal
24 charges for Matthew Cavalier's death and you knew
25 Kelly Mercer was going to testify, you wanted to get



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8340

189

1   Jake Armijo --

2        A.   That's not correct.

3        Q.   What --

4        A.   That was another incident with --

5        Q.   That was Baby Zack?

6        A.   That was Baby Zack, yes.  We were trying

7   to get -- when we were in jail facing the murder for

8   Moscow, Kelly Mercer was a witness.

9        Q.   This is when you wanted to get Julian.

10       A.   Julian was supposed to take care of that.

11       Q.   But Julian was too busy falling in love

12   with your wife.

13       A.   That's how it started, yes.

14       Q.   And it didn't happen.

15       A.   And it didn't happen.

16       Q.   And you ended up having to plead guilty to

17   conspiracy to commit second-degree murder.

18       A.   Yes, sir.

19       Q.   Now, pretty interesting, in a statement

20   you gave to the FBI on May 8, 2017, you said you'd

21   always gotten the maximum penalty.

22       A.   That's correct.

23       Q.   But this particular plea agreement that we

24   looked at earlier, this wasn't a second-degree

25   murder.  I mean, you guys had planned this out.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8340

```
 1          A.    That's correct.

 2          Q.    So you didn't get a first-degree murder,

 3   did you?

 4          A.    No, we didn't.

 5          Q.    And somebody talked the district

 6   attorney's office into lowering the charge to

 7   second-degree murder; correct?

 8          A.    That's correct.

 9          Q.    And even then, they suspended all of that

10   time.  The only time you got in your original

11   judgment and sentence was the four years for an

12   habitual offender charge.

13          A.    I don't believe that's correct.  I think I

14   pled guilty to conspiracy to second-degree murder,

15   which carried a certain amount of years, which I

16   got; and the four-year habitual, which I got.

17          Q.    Can we pull up --

18          A.    I'm not sure exactly how much time I got.

19   But that's what I pled guilty for, and that's the

20   time I got.

21          Q.    Can we go to page Bates No. 8874?

22   Government's Exhibit 246.

23          Okay.  So this is the judgment and

24   sentence for the Matthew Cavalier homicide?

25          A.    Yes, it is.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8341

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8342

191

```
 1        Q.    And we can flip over to the next page.
 2  We'll blow up the top.
 3             So you see on the top paragraph here that
 4  says you've agreed, and the Court imposes --
 5  Mr. Archuleta is also sentenced to a mandatory four
 6  years pursuant to the habitual offender statute, for
 7  a total term of imprisonment of 10 years, of which
 8  six years of the sentence shall be suspended, for an
 9  actual term of imprisonment of four years.
10        A.    Okay.   You're right.
11        Q.    And the judge had his hands tied.   You had
12  to get four years for the habitual offender charge.
13        A.    That's correct.
14        Q.    So all of the other time was waived in
15  your original judgment and sentence.
16        A.    Apparently, from that, yes.
17        Q.    So you really wouldn't characterize this
18  as a maximum penalty under law, would you?
19        A.    According to that, no.
20        Q.    So for a first-degree murder charge, you
21  got a four-year sentence.
22        A.    Yes.   That's correct.
23        Q.    Now, at this point you go back in, and
24  this whole situation with Julian Romero is actively
25  in your mind; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 8342

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8343

```
 1         A.    That's correct.

 2         Q.    And it's at this point where you ordered

 3   the green light on Julian while you're in prison.

 4         A.    That's correct.

 5         Q.    And we talked about this before -- and I

 6   won't rehash it -- but that's when you hired

 7   Frederico Munoz to go shoot him.

 8         A.    I didn't hire him.

 9         Q.    Ordered him to do it.

10         A.    Yes.

11         Q.    You didn't have to hire him; he would just

12   do it on your word.

13         A.    Yes.

14         Q.    And like we talked about earlier,

15   ultimately, you did that four-year stint, you timed

16   that number out pretty quickly, and got out on

17   probation.

18         A.    That's correct.

19         Q.    That's when you tested dirty?

20         A.    That's correct.

21         Q.    And had the whole kerfuffle with Baby Zack

22   at the methadone clinic.

23         A.    That's correct.

24         Q.    So if we look back at just the assaults

25   and the stabbings that you just talked about in your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   193   Page: 8344

```
 1   letter, your diary of the SNM, that's 12, I believe
 2   12 different assaults, none of which you were
 3   prosecuted for.
 4        A.   That's correct.
 5        Q.   And despite that lengthy history of
 6   violence, the United States is willing to waive all
 7   of that and give you a three-year sentence?
 8        A.   That's correct.
 9        Q.   And that's a really powerful benefit,
10   wasn't it?
11        A.   That's correct.
12        Q.   It far exceeds the 2200-some-odd dollars
13   you received from letter-writing and telephone
14   privileges?
15        A.   That's correct.
16        Q.   Because three years is much better than a
17   lifetime in prison.
18        A.   That's correct.
19        Q.   In addition to that, you're allowed to see
20   your father, at least one contact visit.
21        A.   That's correct.
22        Q.   And extended telephone privileges.
23        A.   That's correct.
24        Q.   More liberty than one would normally have
25   in the Department of Corrections.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8344

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8345

194

```
 1        A.    That's correct.

 2        Q.    And you're scheduled to get out this year.

 3        A.    Yes.

 4        Q.    In just a few months.

 5        A.    Ten months.

 6        Q.    Now, I wanted to talk to you about a

 7   comment that you had made during the direct

 8   testimony.  And you said something to the effect

 9   that you had never seen or heard of anyone bragging

10   about something they didn't do as part of the SNM.

11        A.    I didn't recall.

12        Q.    You don't recall it?  You don't recall

13   that?

14        A.    I didn't recall.  I recall me saying that

15   I just didn't recall ever seeing anybody brag about

16   something they did and which they didn't do.

17        Q.    All right.  Or somebody taking credit for

18   something they didn't do.

19        A.    That's correct.

20        Q.    But do you remember -- I mean, as part of

21   your cooperation with the United States, you agreed

22   to wear a wire; right?

23        A.    That's correct.

24        Q.    And you were aware -- because you had the

25   tablet; right?  You got the discovery in this case
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8345

195

```
1    and you got to look at all the investigatory

2    techniques used by the FBI?

3         A.   I don't believe at that time we had

4    received the tablet yet.

5         Q.   But my question is:  Ultimately you got a

6    tablet; correct?

7         A.   Oh, yes.  Yes.

8         Q.   And you got to see all the discovery in

9    this case.

10        A.   Yes.

11        Q.   And you got to learn who was wearing wires

12   and who had wiretapped phones?

13        A.   Yes.

14        Q.   And before you became a government

15   informant, Tomas Clark had recorded you on a wiretap

16   phone; correct?

17        A.   Correct.

18        Q.   And do you recall talking to Tomas Clark

19   about a young kid bragging to you that he was

20   brought into the SNM by Gerald Archuleta?

21        A.   I don't recall.  Every time they called

22   me, I'd been drinking.  But if that was on the call,

23   then.

24             MR. LOWRY:  May I approach, Your Honor?

25             THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8346

```
 1              MR. LOWRY:  May I approach, Your Honor?
 2       A.   Yes, I remember that.  I don't remember
 3  our phone conversation, but I remember that incident
 4  at the methadone clinic.
 5  BY MR. LOWRY:
 6       Q.   Okay.  And this incident is what sounds
 7  like some younger individual coming up to you.
 8       A.   He was brought to me by --
 9       Q.   Boxer?
10       A.   Boxer, yes.
11       Q.   And who is Boxer?
12       A.   Boxer is a brother of the SNM.
13       Q.   Do you know his real name?
14       A.   His last name is Amador.  I don't recall
15  his first name.
16       Q.   But this kid -- I say "kid."  I don't know
17  how old he is.  How old was he?
18       A.   I have no idea.
19       Q.   But he approaches you and he tells you --
20  introduces himself to you as an SNM member?
21       A.   No.
22       Q.   Well, he introduced himself and said
23  Gerald Archuleta brought him into the SNM.
24       A.   Boxer approached me and he said, "Hey,
25  there is this guy over here.  I want you to meet
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8347

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8348

197

```
 1   him.  He said that Gerald Archuleta brought him in."
 2        Q.   Right.
 3        A.   And he wasn't aware that I was Gerald
 4   Archuleta.
 5        Q.   Right.  And did you have a conversation
 6   with him?
 7        A.   I had a conversation talking with Boxer,
 8   yes.
 9        Q.   Brief.  But you knew that that hadn't
10   happened.
11        A.   Yes.  I didn't know the individual.
12        Q.   At all.
13        A.   At all.
14        Q.   You didn't recognize him at all.
15        A.   No.
16        Q.   So that's an example of somebody sort of
17   bragging about bona fides that they didn't really
18   have; isn't that true?
19        A.   He was claiming to be S, and apparently he
20   wasn't, yeah.
21        Q.   And are you also aware of a
22   circumstance -- I guess this would have been in
23   the -- well, probably, the mid 2000s, when Billy
24   Baca called you up because he'd given a guy named
25   Popeye a hotshot?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8349

1          A.    Yes, sir.  His name -- it wasn't Billy

2    Baca; it was Billy something.  They called him

3    Daffy.  But he was a Billy.  We just got the last

4    name mixed up.

5          Q.    But in your report you wrote Billy Baca.

6          A.    Right.

7          Q.    But that wasn't correct?

8          A.    No.  I thought his last name was Baca.

9    But apparently, later on, I find out that his name

10   ain't Baca.

11         Q.    But anyway, this is after you put the hit

12   out on Julian Romero; right?

13         A.    Yes.

14         Q.    And Billy Baca knew, like a lot of people

15   did, that Julian Romero was from the Barelas

16   neighborhood in Albuquerque.

17         A.    Yes.

18         Q.    And it's fair to say that in the people

19   that followed Gerald Archuleta in the SNM, the

20   Barelas neighborhood became disfavored.

21         A.    Yes.

22         Q.    And Billy Baca thought he could do you a

23   favor by killing people from the Barelas

24   neighborhood.

25         A.    Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8350

```
 1        Q.    And in fact, he did that.

 2        A.    He claimed to have done that.

 3        Q.    Well, he not only claimed to have done

 4   that, but he did kill Popeye with a hotshot.

 5        A.    I don't believe so.

 6        Q.    Okay.  Well, did Billy Baca call you after

 7   he escaped from the trunk of a car --

 8        A.    Yes.

 9        Q.    -- and he would have been kidnapped

10   because of the hotshot he had given Popeye?

11        A.    Yes.

12        Q.    And that's what you wrote to the FBI in

13   your report to them?

14        A.    Yes.

15        Q.    You weren't lying to the FBI, were you?

16        A.    Well, what I believe is that Billy Baca

17   was partying with Popeye.  He found him dead, and

18   later claimed that he did it for Gerald Archuleta to

19   gain respect.  But there was never a green light on

20   Popeye.  And I never ordered a hit on Popeye.

21   Popeye was not -- I do not believe -- given a

22   hotshot.  He OD'd on heroin.  If you know Popeye,

23   he's known for OD'ing everywhere he goes.

24        Q.    But my point is -- we'll just call him

25   Billy Baca, since --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8351

```
 1        A.   Yes.

 2        Q.   Billy Baca was bragging about something

 3   that he really didn't do.

 4        A.   Exactly.

 5        Q.   So you are aware of people bragging --

 6        A.   Well, now that you bring it to my

 7   attention, yes.

 8        Q.   Well, you brought it to my attention.

 9        A.   I didn't recall -- I didn't remember

10   Billy.

11        Q.   Are you having trouble recalling?

12        A.   I didn't remember Billy bragging about

13   doing this incident.

14        Q.   But you wrote about it.

15        A.   Yes.

16        Q.   You wrote about it in September of 2017.

17        A.   Right.

18        Q.   Now you testified on direct about --

19        A.   When you brought it to my attention, like

20   now, now I remember.

21        Q.   Right.  So people have to bring things to

22   your attention for you to remember them.

23        A.   Sometimes.

24        Q.   Now, you were asked on direct examination

25   about the allegation that you wanted to murder
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8351

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8352

201

```
 1  Darren White.
 2       A.   No.  I never wanted to murder Darren
 3  White.
 4       Q.   You were asked about it on direct
 5  examination.
 6       A.   If I wanted to kill Darren White?  That's
 7  not true.  I've never said that I wanted to kill
 8  Darren White.
 9       Q.   Right.  But you testified on direct:  When
10  you were in that lifestyle, you want people to think
11  you can call a hit on a sheriff.
12       A.   Yes, that's correct.
13       Q.   And that's bragging about something you
14  didn't really do, isn't it?
15       A.   Yes, that's correct.
16            MR. LOWRY:  Your Honor.  May I have a
17  moment?
18            THE COURT:  You may.
19  BY MR. LOWRY:
20       Q.   A couple quick questions, Mr. Archuleta.
21  In your most recent debrief with the United States,
22  you talked about your drug use.
23       A.   Yes.
24       Q.   And you would agree with me that you
25  purchased drugs from a number of the other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8353

202

```
 1   cooperating witnesses in this case, or people that

 2   are working with the United States?

 3        A.   That's correct.

 4        Q.   And would you agree with me that Benjamin

 5   Clark has supplied you with Suboxone?

 6        A.   That's correct.

 7        Q.   And that Jerry Montoya has supplied you

 8   with Suboxone?

 9        A.   That's correct.

10        Q.   And that Timothy Martinez has supplied you

11   with Suboxone?

12        A.   That's correct.

13        Q.   And that Roy Martinez has supplied you

14   with Suboxone?

15        A.   That's correct.

16        Q.   And all of this is during a period of time

17   where you're supposed to be demonstrating to the

18   people at this table that you're an honest,

19   truthful, and law-abiding person.

20        A.   That's right.

21        Q.   And you also testified that you moved to

22   Tennessee because you wanted to get away from the

23   SNM lifestyle.

24        A.   That's correct.

25        Q.   But isn't it true that during this time
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8353

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8354

203

1   you put a hit order out on Vincent Garduno?

2        A.   No.

3        Q.   You don't think --

4        A.   Well, no, I didn't put a hit on him.

5        Q.   You were upset with Mr. Garduno for not

6   supplying you with drugs in Tennessee.

7        A.   Yes, for sending me -- yes.

8        Q.   And so you couldn't quite give up the

9   lifestyle in total, could you?

10       A.   No.

11       Q.   And you were dependent on Mr. Garduno to

12   send you drugs.

13       A.   Yes.

14       Q.   Because the drugs in Tennessee are a lot

15   more expensive compared for New Mexico, which is a

16   border state.

17       A.   Yes.

18       Q.   And did Mr. Garduno short you?

19       A.   He sent me an empty package.

20       Q.   And that made you upset?

21       A.   Yes.

22       Q.   And you wanted to hurt him?

23       A.   I sent someone to go talk to him.

24            MR. LOWRY:  No further questions, Your

25   Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8354

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8355

204

```
 1              THE COURT:  Thank you, Mr. Lowry.
 2              Mr. Villa -- oh, Ms. Bhalla, do you want
 3  to go?
 4              MS. BHALLA:  Thank you, Your Honor.
 5              THE COURT:  Ms. Bhalla.
 6                      CROSS-EXAMINATION
 7  BY MS. BHALLA:
 8       Q.   Good afternoon, Mr. Archuleta.
 9       A.   Good afternoon.
10       Q.   Mr. Beck asked you some questions on
11  direct examination about what I would refer to as
12  institutional knowledge.  Do you know what that
13  means?
14       A.   Would you explain?
15       Q.   Sure.  I think he asked you about it in
16  the context of an assault.  Okay?  And after an
17  assault in the SNM -- and you can think of any
18  assault that we've discussed today, okay -- is it
19  fair to say that the facts of that assault become
20  known to other members of the SNM?
21       A.   Yes.
22       Q.   And so who did what to whom and when
23  becomes common knowledge for SNM members; is that
24  fair to say?
25       A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And that's because people talk about it,
 2   don't they?
 3        A.   Yes, ma'am.
 4        Q.   And they don't have much else to do
 5   besides talking; is that right?
 6        A.   That's correct.
 7        Q.   So that's what they're going to talk
 8   about; is that fair to say?
 9        A.   Yes, ma'am.
10        Q.   Were you in custody when Javier Molina was
11   murdered?
12        A.   I don't believe so.  I think I was in
13   Tennessee.
14        Q.   Okay.  So you weren't there?
15        A.   No.
16        Q.   So you didn't see anybody do anything in
17   regards to that murder, yourself, did you?
18        A.   No, ma'am.
19        Q.   And when you got picked up in Tennessee
20   and brought back, and you wanted to cooperate with
21   the Government, they gave you a recording device;
22   right?
23        A.   Yes, ma'am.
24        Q.   And they put you next to Carlos Herrera;
25   right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8356

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8357

```
 1        A.   Yes, ma'am.

 2        Q.   And that was in, I want to say, 2016?

 3        A.   Yes, ma'am.

 4        Q.   Do you remember when in 2016?

 5        A.   Maybe January.

 6        Q.   Maybe January.  And do you know when

 7   Javier Molina was murdered?

 8        A.   I think 2014, maybe.  I'm not exactly

 9   sure.

10        Q.   So when you were placed next to Carlos,

11   Javier Molina, the homicide happened two years prior

12   to you being placed next to Carlos; right?

13        A.   Yes, ma'am.

14        Q.   And when you talked to Carlos about the

15   murder of Javier Molina, he told you what he heard

16   about the murder; isn't that true?

17        A.   Yes.

18             MS. BHALLA:  May I have a moment, Your

19   Honor?

20             THE COURT:  You may.

21   BY MS. BHALLA:

22        Q.   Just a few more questions.  You talked

23   about other stuff with Carlos Herrera; is that fair

24   to say?

25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8357

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8358

```
 1        Q.    And I think we saw some of the examples up
 2   there on the screen?
 3        A.    That's correct.
 4        Q.    And one of those examples was where he
 5   drilled a hole in the wall to store his drugs?
 6        A.    I think he was talking about drilling a
 7   hole through the visiting window to get drugs.
 8        Q.    Okay.  To get drugs?
 9        A.    Yes.
10        Q.    And that's not why Javier Molina is dead,
11   is it?
12        A.    No.
13        Q.    And when you were picked up by the FBI,
14   that was in -- remind me -- 2015?
15        A.    December 2, 2015.
16        Q.    And you were in Chattanooga, Tennessee?
17        A.    I was in --
18        Q.    Or close to there?
19        A.    Yes, ma'am.
20        Q.    Sorry.  I'm -- I just -- Chattanooga
21   stands out to me.
22        A.    Right.  I was taken to the Chattanooga FBI
23   office, where I was processed.
24        Q.    Okay.  And somebody from Albuquerque came
25   out there to talk to you, didn't they?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8358

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8359

```
 1        A.   Yes.
 2        Q.   And so that was a pretty big deal, right,
 3   for them to come all the way out there to talk to
 4   you?
 5        A.   Yes.
 6        Q.   And they talked to you about -- they asked
 7   you a bunch of questions.  And I think one of the
 8   things that you told them was that you didn't speak
 9   Spanish.  Do you recall telling them that?
10        A.   Yes.
11        Q.   You do speak Spanish, don't you?
12        A.   No, I don't.
13        Q.   You don't speak Spanish?
14        A.   I know slang words.  But to carry on a
15   conversation with you in Spanish, I wouldn't be able
16   to do that.
17        Q.   You will agree with me that you
18   interpreted Spanish --
19        A.   Right.
20        Q.   -- on direct examination today in this
21   courtroom.
22        A.   Those were certain slang words that I'm
23   aware of what they mean.
24        Q.   Okay.
25        A.   But I can't carry on a conversation with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8359

209

```
 1   you in Spanish.
 2       Q.   Okay.  What's the word for "mess"?
 3       A.   Well, the lingo that was provided on this
 4   screen was a desmadre.
 5       Q.   And that means messy, right, or mess, in
 6   your understanding of the word?
 7       A.   Yes.
 8       Q.   Okay.
 9            MS. BHALLA:  I think I'll pass the
10   witness, Your Honor.
11            THE COURT:  Thank you, Ms. Bhalla.
12            Mr. Villa, Ms. Jacks?
13            MR. VILLA:  We don't have any questions.
14            THE COURT:  Thank you, Mr. Villa.
15            MS. JACKS:  Nor do we, Your Honor.
16            THE COURT:  Thank you, Ms. Jacks.
17            Mr. Beck, do you have redirect?
18            MR. BECK:  Yes, I do.
19                  REDIRECT EXAMINATION
20   BY MR. BECK:
21       Q.   Mr. Archuleta, a few moments ago Ms.
22   Bhalla was asking you about institutional knowledge
23   and prison talk.  Do you recall that?
24       A.   Yes.
25       Q.   And I think she was asking you whether SNM
```



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    inmates, after an SNM assault happens -- whether

2    they talk about it on the yard.  Do you remember

3    that?

4        A.   Yes.

5        Q.   And do SNM inmates talk about official SNM

6    hits in the yard after they happen?

7        A.   Yes, they do.

8        Q.   And is that a method that the SNM uses to

9    learn who is involved in all of the SNM assaults or

10   murders?

11       A.   Yes, it is.

12       Q.   And then Mr. Lowry was asking you about, I

13   think, a young man at the methadone clinic who said

14   that he had been brought in by Gerald Archuleta?

15       A.   Yes.

16       Q.   Was that true?  Did you bring him in?

17       A.   No, I didn't.

18       Q.   So was that something that was disproven,

19   a rumor that was proved wrong within the SNM?

20       A.   I don't think it was among the S, the SNM.

21   He was never a member.  And it was never an issue.

22   We were kind of making light of it that day, because

23   this guy claimed to have known me, and he didn't

24   even know me.  And he came up with this wild story,

25   and it wasn't true.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8361

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8362

```
 1        Q.   So would you say pretty quickly everyone
 2   knew that was not true?
 3        A.   Well, yes.
 4        Q.   And then I think he asked you about
 5   someone claiming a hotshot of Popeye.  Do you
 6   remember that?
 7        A.   Yes.
 8        Q.   And what is a hotshot?
 9        A.   A hotshot is when you mix a foreign
10   substance with, say, a shot of heroin so that it
11   kills you.
12        Q.   And is that a way to intentionally kill
13   someone with drugs?
14        A.   Yes.
15        Q.   Okay.  In the prison talk on the yard, did
16   all the SNM members talk about how this person gave
17   Popeye a hotshot?
18        A.   Yes.
19        Q.   And did they believe that that was true?
20        A.   Some did, some didn't.
21        Q.   Were there other members who also were
22   there participating when this Billy Baca gave Popeye
23   a hotshot?
24        A.   Not that I'm aware of.
25        Q.   And as far as you're aware, did anyone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8362

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8363

```
 1  come forward and claim that they ordered the

 2  hotshot?

 3       A.   No.

 4       Q.   I think you said, when Mr. Lowry asked you

 5  about the three different sort of groups that

 6  formed -- was one of the groups your group under

 7  Angel Munoz?

 8       A.   Yes.

 9       Q.   Was the second group, then, Billy Garcia's

10  group?

11       A.   Yes.

12       Q.   And was that the group under which Julian

13  Romero fell?

14       A.   Yes.

15       Q.   And was the third group Marty Barros'

16  group?

17       A.   Marty, no.

18       Q.   Who was the third group?

19       A.   It was Julian Romero, Billy Garcia, and I

20  don't believe that there were any other groups that

21  participated in that feud.

22       Q.   Where did Marty Barros fit into these

23  groupings?

24       A.   I don't think Marty Barros -- I don't even

25  know where Marty Barros was at the time.  I've never
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8363

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   213   Page: 8364

```
 1   talked to Marty Barros about the Julian Romero

 2   issue.

 3        Q.   Where did Mr. Baca, Anthony Ray Baca, Pup,

 4   fit into these groups?

 5        A.   He didn't.  He was out of state.

 6        Q.   In 2015, in July 2015, did you order

 7   anyone to assault Julian Romero?

 8        A.   No.

 9        Q.   And when Chris Garcia -- Chris Garcia --

10   is he an SNM member?

11        A.   Yes.

12        Q.   Is he the one who told you about it?

13        A.   Yes.

14        Q.   And when he called you and told you that

15   Julian Romero was assaulted, were you actually

16   surprised by that when he called you?

17        A.   Yes.

18             MR. BECK:  Nothing further, Your Honor.

19             THE COURT:  All right.  Thank you, Mr.

20   Beck.

21             All right.  Mr. Archuleta, you may step

22   down.

23             Did you have something else, Mr. Lowry?

24             MR. LOWRY:  Very briefly, Your Honor.

25             THE COURT:  All right.  Mr. Lowry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8364

```
 1                    RECROSS-EXAMINATION
 2   BY MR. LOWRY:
 3        Q.   This idea of rumors and dispelling them --
 4   again, you wrote your story for the FBI; correct?
 5        A.   Yes.
 6        Q.   And you say you don't really know who this
 7   gentleman was, but we'll just keep calling him Billy
 8   Baca, that claimed to have given Popeye a hotshot in
 9   your honor?
10        A.   Daffy, yes.
11        Q.   And in your statement to the FBI, you
12   said, "From that day on, the story went around that
13   Popeye's death was a result of a green light that
14   was called by Styx of SNM, and was being validated
15   by Billy Baca himself, as he told everyone that
16   would listen that he killed Anthony Popeye Apodaca,
17   and that he did it for Styx."
18             That doesn't sound like a rumor that was
19   dispelled.  That sounds like an ongoing claim that
20   was out there.
21        A.   Yes.
22        Q.   And that concerned you.
23        A.   Yes.
24        Q.   Now, your moniker is Styx; correct?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8365

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8366

```
 1       Q.   And people call you Styx because you are

 2  thin.

 3       A.   Yes.

 4       Q.   And another word for Styx is, I think --

 5  the Spanish term is palitos?

 6       A.   People called me Palitos.

 7       Q.   And again, you put the original call out

 8  on Julian Romero?

 9       A.   The original hit.

10       Q.   The original hit?

11       A.   Yes, I did.

12       Q.   And despite Billy Garcia asking you to

13  call it off, despite his nephew trying to kill you

14  over it, you never called it off, did you?

15       A.   I never called it off.

16            MR. LOWRY:  No questions, Your Honor.

17            THE COURT:  Thank you, Mr. Lowry.

18            Mr. Beck, do you have redirect?

19            MR. BECK:  Briefly, Your Honor.

20            THE COURT:  Mr. Beck.

21                  REDIRECT EXAMINATION

22  BY MR. BECK:

23       Q.   When you pled guilty in this case, did you

24  plead guilty to the charge for conspiring to assault

25  Julian Romero?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8366

Appellate Case: 20-2058    Document: 010110415875    Date Filed: 09/29/2020    Page: 8367

 1      A.   Yes, I did.

 2      Q.   But in 2015, did you order anyone to

 3  assault Julian Romero?

 4      A.   In 200- -- no.

 5           MR. BECK:  Nothing further, Your Honor.

 6           THE COURT:  Thank you, Mr. Beck.

 7           All right.  Mr. Archuleta, you may step

 8  down.

 9           Is there any reason Mr. Archuleta cannot

10  be excused from the proceedings, Mr. Beck?

11           MR. BECK:  Not from the Government.

12           THE COURT:  How about from the Defendants?

13  Can he excused?

14           MR. LOWRY:  He may be excused.

15           MR. VILLA:  Yes, Your Honor.

16           THE COURT:  All right.  You are excused.

17  Thank you for your testimony.

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8367

```
 1   UNITED STATES OF AMERICA

 2   STATE OF NEW MEXICO

 3

 4                  C-E-R-T-I-F-I-C-A-T-E

 5        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 6   Official Court Reporter for the State of New Mexico,

 7   do hereby certify that the foregoing pages

 8   constitute a true transcript of proceedings had

 9   before the said Court, held in the District of New

10   Mexico, in the matter therein stated.

11        In testimony whereof, I have hereunto set my

12   hand on this 15th day of March, 2018.

13

14                  _____

15                  Jennifer Bean, FAPR, RMR-RDR-CCR
                    Certified Realtime Reporter
16                  United States Court Reporter
                    NM Certified Court Reporter #94
17                  333 Lomas, Northwest
                    Albuquerque, New Mexico 87102
18                  Phone:        (505) 348-2283
                    Fax: (505) 843-9492
19                  License expires:  12/31/18

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                      CR. NO. 15-4268 JB

6   ANGEL DELEON, et al.,

7        Defendants.

8

9        Transcript of 104 Hearing and Motion Proceedings
    before The Honorable James O. Browning, United States
10  District Judge, Las Cruces, Dona County,
    New Mexico, commencing on April, 4, 2018.

11

12  For the Government:  Ms. Maria Armijo; Mr. Randy
    Castellano; Mr. Matthew Beck

13

14

15  For the Defendants: Mr. Brock Benjamin, Ms. Cori
    Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
16  Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
    Shattuck; Mr. John Granberg; Mr. Billy Blackburn; Mr.
17  Scott Davidson; Mr. Donovan Roberts; Ms. Lisa Torraco

18  For Fred Quintana:  Mr. Phil Sapien

19  For James Garcia:  Mr. Glazener

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8369

```
 1
 2              THE COURT:  All right.  Let's go on the
 3   record.  Let's everybody grab their seats.  And I
 4   think every defendant has at least one attorney here.
 5   So we'll get started.
 6              All right.  The Court will call the United
 7   States of America versus Angel DeLeon, Criminal
 8   Matter No. 15-CR-4268 JB.
 9              If Counsel will enter their appearances.
10   Let's start with Mr. Joe Lawrence Gallegos.
11              MR. BENJAMIN:  Good morning, Your Honor.
12   Brock Benjamin on behalf of Mr. Garcia.
13              THE COURT:  Mr. Benjamin, good morning to
14   you.  Mr. Gallegos, good morning for you.
15              THE DEFENDANT:  Good morning.
16              THE COURT:  And for Mr. Troup.
17              MS. HARBOUR-VALDEZ:  Good morning, Your
18   Honor.  Cori Harbour-Valdez and Pat Burke on behalf
19   of Edward Troup.
20              THE COURT:  All right.  Ms. Harbour-Valdez,
21   Mr. Burke, Mr. Troup, good morning to you.
22              THE DEFENDANT:  Good morning, sir.  Good
23   morning to you.
24              THE COURT:  And for Mr. Billy Garcia.
25              MR. COOPER:  Good morning, Your Honor.  Bob
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8370

```
 1   Cooper and Jim Castle on behalf of Mr. Garcia, who is
 2   present today.
 3            THE COURT:  Mr. Cooper, Mr. Castle, and Mr.
 4   Garcia, good morning to you.
 5            MR. COOPER:  Good morning.
 6            THE COURT:  And let's go to Mr. Shattuck.
 7            MR. SHATTUCK:  Good morning, Judge.  Joe
 8   Shattuck and Jeff Lahann for Mr. Patterson.
 9            THE COURT:  Mr. Shattuck, good morning to
10   you.  Mr. Lahann, good morning to you.  And Mr.
11   Patterson, good morning to you.
12            THE DEFENDANT:  Good morning, Judge.
13            THE COURT:  And for Christopher Chavez.
14            MR. GRANBERG:  Good morning, Your Honor.
15   John Granberg for Christopher Chavez.
16            THE COURT:  All right.  Mr. Chavez,
17   Mr. Granberg, good morning to you.
18            And for Arturo Arnulfo Garcia.
19            MR. BLACKBURN:  Billy Blackburn and Scott
20   Davidson on behalf of Mr. Garcia, Your Honor.
21            THE COURT:  All right.  Mr. Blackburn, Mr.
22   Davidson, and Mr. Garcia, good morning to you.
23            THE DEFENDANT:  Good morning.
24            THE COURT:  And for Andrew Gallegos?
25            MR. ROBERTS:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8371

```
 1   Donovan Roberts and Lisa Torraco for Andrew Gallegos.

 2            THE COURT:  All right.  Mr. Roberts,

 3   Ms. Torraco, and Mr. Gallegos, good morning to you.

 4            THE DEFENDANT:  Good morning.

 5            And then for the Government.  I should have

 6   started there.

 7            MS. ARMIJO:  Good morning, Your Honor.

 8   Maria Armijo, Randy Castellano, and Matthew Beck on

 9   behalf of the United States.

10            THE COURT:  All right.  Ms. Armijo, Mr.

11   Castellano, and Mr. Beck, good morning to you.

12            The first thing I want to do is me come off

13   the bench, and the attorneys come over here with

14   me -- the defense lawyers -- and I'm going to decide

15   and take a look at this arrangement.  Mr. Roberts had

16   some concerns when he came in on the other trial.  I

17   think that all the defense lawyers on the first

18   trial, they took a look at what Mr. Roberts was

19   looking at.  When the defense lawyers came in, their

20   defendants didn't see any of the things that

21   Mr. Roberts saw.  So I welcome the defense lawyers to

22   sit here in the jury box, and let's take a look.  We

23   have not used the white before, so the white is

24   different.  And I just want to make sure that the

25   light doesn't pick up anything.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1                  MR. ROBERTS:  Could I ask that the screen
2     be turned on.
3                  THE COURT:  Are you able to do that?
4                  THE CLERK:  I'll have to figure out how.
5                  THE COURT:  Let's see if the jury -- all
6     right.  Mr. Troup, why don't you stand up.  So
7     anybody seeing anything there?  I'm not seeing
8     anything.  Good.  Y'all are welcome to look here,
9     too.  This wasn't in the first trial, and I was
10    disappointed that it was not in the first trial, but
11    it is in the second trial, and we intend to leave it
12    there throughout the trial or, certainly through voir
13    dire, so we don't have any -- Mr. Garcia, do you want
14    to stand up.  Anybody see anything?
15                 MR. ROBERTS:  No.
16                 MR. CASTLE:  Just his pretty face.
17                 THE COURT:  The white doesn't seem to do
18    any different than the black.  Anybody else want to
19    stand up?  Just call out your client's name if you
20    want them to stand up and look.  Anybody want to take
21    a different angle?  Anybody want to see?
22                 All right.  Now, gentlemen, we're going to
23    great lengths.  You know, nothing is perfect in this
24    world.  We're going to great lengths to make sure the
25    jury does not see your shackles on your feet.  You're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   not going to be handcuffed during the trial, so

 2   they're not going to see handcuffs.  And your counsel

 3   are really going to dress you up, so you're going to

 4   look pretty good.  Don't do anything to show them the

 5   ankle restraints.  I don't want them to see them.  I

 6   don't think you want them to see them, and your

 7   counsel doesn't want them to see them.

 8           So if something happens, don't move.  We'll

 9   get the jury out of here, I'll get the jury out of

10   here, and then you can move.  If something comes up,

11   don't move, and stay behind there, and don't do

12   anything to, you know, show those leg restraints,

13   okay?  Because we're working real hard to make sure

14   that you get a fair trial and they don't see those

15   leg restraints and don't start thinking about them

16   and don't start dwelling on them in any way.  So help

17   me out, because we're going to do everything we can

18   to make sure the jury never thinks about you men

19   being in custody or restraints or anything like that.

20   So we don't want them to be thinking about that.

21           We want them to be thinking about the

22   evidence.  We want them to be thinking about the

23   arguments.  And that's all we want them to be

24   thinking about.  So really work with us to try to

25   make sure that they just don't see those leg
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8374

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 7375

```
 1    restraints.  If somebody has got to move, don't move,
 2    let your counsel say, "Judge," something.  And the
 3    lawyers, they've been through this, they'll help me
 4    and they'll help you.
 5            All right.  Anything anybody else wants to
 6    say or do as far as just seeing the restraints?
 7            All right.  Let's everybody take our seats
 8    then.
 9            All right.  Now, I've got a stack of
10    motions that I know we've got to get through.  And
11    Ms. Wild and other people have tagged to these
12    motions that:  This has got to be argued first; this
13    has got to be argued first.  Well, I can only argue
14    one thing first, I can't argue them all.
15            The thing I have up for argument first,
16    just as far as batting order, is continuing with
17    these bad acts.  But if y'all have -- I think
18    Mr. Billy Garcia's bad acts are up first.  But if
19    y'all do have something you want to argue first, and
20    everybody is in agreement with it, then I'm willing
21    to go there.  Or we can just start plowing through
22    the bad acts.
23            Mr. Davidson?
24            MR. DAVIDSON:  If we could address my
25    motion to continue?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Let me talk to
 2   everybody here.  Mr. Davidson has filed a
 3   supplemental motion.  I think everybody has seen his
 4   motion that he filed on March 22.  He filed yesterday
 5   or the day before yesterday a supplemental motion
 6   that I think only the Government and the Court, and
 7   that's it -- he filed so that only those parties
 8   could see.  I guess the question is:  Does anybody
 9   have any problem with me seeing this, given that
10   other people are not seeing it?  Does anybody have
11   any objection to me seeing it but the other defense
12   lawyers and defendants not seeing it?
13              MR. DAVIDSON:  No, Your Honor.
14              THE COURT:  Not hearing any objection, then
15   how do you wish to proceed, Mr. Davidson?
16              MR. DAVIDSON:  Well, Your Honor, I just
17   want to clarify.  I don't think the Government saw
18   it.
19              THE COURT:  So the Government didn't see
20   it.  Do you have any problem then with me seeing it
21   and the Government not seeing it?
22              MS. ARMIJO:  No, Your Honor, we don't need
23   to see it.  I believe, in general, he has spoken to
24   us about it.
25              THE COURT:  Okay.  All right.  So then how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8376

```
 1    do you want to the proceed, Mr. Davidson?

 2              MR. DAVIDSON:  I'd like to address the

 3    Court.

 4              THE COURT:  Okay.  Mr. Davidson, I think

 5    everybody expresses their thoughts to you, and we're

 6    sorry you and your family are having to go through

 7    this.  So it's tough.  And I send you and your family

 8    and your wife our thoughts as y'all go through this.

 9              Mr. Davidson.

10              MR. DAVIDSON:  I appreciate that, Your

11    Honor.  I don't need to, I think, restate the facts.

12    But, essentially, the bottom line is for the last

13    several months, I have not been able to be a fully

14    effective member of the defense team for my client.

15    And my wife's recovery is ongoing, and there are

16    anticipated to be additional treatments that are

17    going to require me to be in Albuquerque during the

18    pendency of the trial.  And for these reasons, I feel

19    it's necessary for me to withdraw as co-counsel for

20    Mr. Garcia.  And then I would ask that the Court

21    appoint replacement counsel to assist Mr. Blackburn

22    in representing Mr. Garcia in this case.

23              The second and third related forms of

24    relief requested in the motion are to sever

25    Mr. Garcia from the trial beginning on April 9, on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8377

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10378

```
 1    Monday, and continue that to a later date, at which
 2    point an effective team of two lawyers for Mr. Garcia
 3    can be assembled, basically replacement counsel found
 4    for me to assist Mr. Blackburn representing
 5    Mr. Garcia, and continue that to a later date.
 6              Alternatively, the Court could sever out
 7    Count 3, which would include Mr. Troup and
 8    Mr. Garcia, from the trial proceeding on Monday.
 9              Those are the forms of relief that we're
10    requesting.
11              The motion to withdraw is unopposed by all
12    parties.
13              The motion to sever and continue, when I
14    sought the Government's position, the Government was
15    opposed to severing and continuing Mr. Garcia's
16    portion of the trial.  I'm not sure if the
17    Government's position on that has changed.
18              THE COURT:  All right.  I have some
19    questions.  But I may ask some of those questions up
20    here at the bench here in a moment.
21              Mr. Blackburn, do you want to address this
22    situation?
23              MR. BLACKBURN:  Sure, Your Honor.  I don't
24    think there is anyone in the courtroom that doesn't
25    understand or have their thoughts for great recovery
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8378

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14379

1   for Mr. Davidson for his wife.  Those of us who know

2   her personally, it's heartbreaking for all of us.  As

3   the Court knows, Mr. Davidson is in my office with

4   Mr. Cooper.  So we see Scott and his wife Jenny all

5   the time, and their kids.  So it's been pretty

6   nerve-racking around our office.  But as the Court

7   says, and I think everybody agrees, that we wish them

8   all the best recovery.

9           I can only relate to state a couple of

10  things in support thereof.  I think it's important

11  for Mr. Davidson to withdraw from the case.  I mean,

12  seeing him at the office and watching what is going

13  on -- just last week, he had an all-day appointment

14  with his wife.  And I needed to talk to him about

15  issues, and went down about 9:00 in the morning, and

16  they told me he wouldn't be back until 3:00 that

17  afternoon because of the number of medical

18  appointments she had.  And when I went down to talk

19  to him that afternoon, I might as well have been

20  talking to the wall, because, you know, it was

21  obvious that his concentration was not with what I

22  was trying to ask him about -- certain things that

23  relate to this particular trial, and just in life in

24  general, because of the all-day procedures that he

25  had gone through with his wife.  So, obviously, that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   has made it very difficult for us.

 2          I know that Arturo Garcia has sent his best

 3   wishes to Mr. Davidson.  He doesn't want -- I don't

 4   think anybody wants Mr. Davidson to have to be

 5   worried about a trial while this is going on.

 6          The recovery is going to be long.  I mean,

 7   I went through this last year with my elderly mother

 8   who was in the hospital for quite some time with

 9   colon cancer, so I sort of know what he's going

10   through under the circumstances.  You just have a

11   blank mind.

12          The problem exists, though, as it relates

13   to having a second part of the team.  And

14   Mr. Davidson has been with us for 16 months.  I don't

15   think there is anybody in the courtroom that has --

16   at least on the defense side -- that could say that

17   under the circumstances, that if you lose an integral

18   part of your defense team so late in the game, that

19   the one standing person left could effectively go

20   forward.

21          Just in the last month, since

22   Mr. Davidson -- or the last three weeks -- since

23   Mr. Davidson made his decision, there is not enough

24   hours in the day for me and my staff to try and

25   handle all of this.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              I can speak for Mr. Garcia, and
 2    Mr. Garcia's position is -- and he's told me this
 3    several times -- that he wants somebody who is going
 4    to be here and he wants somebody who is going to be
 5    effective and he wants somebody to help.  And we have
 6    thought about alternatives.  I think, with all due
 7    respect, I think the only alternative is to -- the
 8    only alternative, in my opinion, is to let
 9    Mr. Davidson withdraw, and then sever us out, and
10    go -- either stick us with the case that's going in
11    July; somehow put that in the 1613 case.  Or do
12    something that would be able to -- if Mr. Davidson is
13    going to remain out, to stay out, and to get somebody
14    to be able to be involved in both of those cases.
15              I don't know if the Court wants to actually
16    talk to Mr. Garcia.  But I just express those things
17    to you.
18              And, of course, my position is, just like
19    anybody else under the circumstances, it's just
20    practically impossible.  I would probably go around
21    the room and ask every one of these defense attorneys
22    here, number one, if they thought that they could be
23    effectively going to trial on an eight-week trial,
24    knowing that the person is looking at life
25    imprisonment, with just one person.  I think that in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8381

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 14382

1    the motion -- and actually in the supplemental

2    motion, we sort of laid out divisions of labor, and

3    who was going to do what.  And now, that's all going

4    to change.  It's going to be impossible.  I know if

5    there was some type of alternative that Mr. Davidson

6    would come down one day a week, or that maybe he

7    would be in Albuquerque to work on stuff.  That's

8    just not going to work.  If I have to cross-examine

9    every witness that comes in here, the ability for me

10   to walk over and -- walk over and ask Mr. Lahann,

11   Hey, did I miss anything?  Can you tell me -- on this

12   cross-examination, can you tell me what I missed?

13   And Mr. Lahann doesn't know my case.  And he's going

14   to say -- he's not going to be able to help me.  You

15   know, none of the teams -- I mean, Mr. Castle and Mr.

16   Cooper, who have prepared a lot for their case and

17   knows a lot of facts as it relates to them, they're

18   not familiar with my case.  They may be familiar with

19   the enterprise, but they're not familiar with my

20   case.  So I can't walk over and ask Mr. Castle, say,

21   Hey, what did I miss?  You know, help me out here.

22            And there is no way that Mr. Davidson could

23   do that if he was in Albuquerque or participate under

24   those circumstances.

25            So I think the Court knows where we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8382

 1    coming from.  I mean, I don't think there is going to

 2    be any prejudice, if we somehow figure out how this

 3    is moved down the road, so that we can try this

 4    somehow or have somebody else come in and help under

 5    the circumstances, whether we figure out a second

 6    trial, or if there has got to be one trial just for

 7    them that's put down the road at some point in time,

 8    when -- the Court is worried about its schedule, the

 9    Court could always give that to a visiting judge or

10    something along those circumstances.

11            There is another issue that has just

12    arisen, that I think at some point in time we need to

13    address, that relates to this whole separate issue.

14    And I just want to throw that out to the Court to

15    think that we're just not -- I don't want to be in

16    the position that the Court doesn't think that we're

17    not bringing everything forth at the time that we

18    can.  Or, in the alternative, that something is being

19    held back.

20            But I think that's point one, is where

21    we're at now.  I think the second thing that at least

22    I need to tell the Court now about, and we can

23    discuss that after the Court talks to us about this

24    particular motion, is that the Government has

25    indicted James Daffy Garcia.  And as I understand

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                      Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492
                                                                                 1-800-669-9492
                                                                       e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8383

1    now, Mr. Garcia has agreed to cooperate and will

2    testify for the Government.  In 1994, I represented

3    Mr. Garcia in a murder case in Albuquerque.  I was

4    his attorney.  The case went to trial in 1996.  It

5    involves a gang matter, of which wasn't SNM, but for

6    which he went to prison on.  So that's a separate

7    issue, but I think the Court needs to be aware of

8    that while we're discussing these issues with

9    Mr. Davidson.

10          If the Court has any questions for me, I'm

11   more than happy to address those at this point in

12   time.

13          THE COURT:  Well, let me get everybody's

14   position, then I may talk to some of you up here at

15   the bench about some questions.  Thank you, Mr.

16   Blackburn.

17          MR. BLACKBURN:  Right.  And you know, and

18   Judge, in preparation for this this morning, I came

19   up with 100 scenarios as to what would happen.  Just

20   small little scenarios of just having one person

21   here.  And will just share a couple of them with the

22   Court while I'm here.  Last week, or when we were

23   down here two weeks ago, you know, I've known Mr.

24   Cooper for -- since we were in law school together.

25   And there is only one person I know that's had more

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8385

```
 1    kidney stones in his life than him, and that's me.
 2    So a couple of weeks ago, when we were here he turned
 3    18 shades of white, and was running around this
 4    courtroom like a chicken with his head cut off, and
 5    grabbing his back because -- and I knew exactly what
 6    was going on, because being in the same office as
 7    him, he had kidney stones like two weeks prior.  I
 8    didn't see him for two or three days.  So we sent him
 9    back to the hotel; would check on him occasionally.
10    And, of course, that's what happened, he had kidney
11    stones, so he had to leave the courtroom.
12            So at this point in time, I was already
13    aware that Mr. Davidson was working on the motion to
14    withdraw at that point in time, and I'm sitting there
15    thinking, like, okay, what am I going to do under
16    these circumstances, if I'm here by myself?  It would
17    disrupt proceedings.  All sorts of things can happen
18    that would relate under those circumstances.  I'm not
19    saying that I'm going to get kidney stones under any
20    circumstance because that's the last thing that
21    anybody ever wants to have happen, for those who have
22    had kidney stones in their life.  But that was just a
23    thought process that came in.
24            And as I said, I have several scenarios,
25    and another issue that if we need to talk about at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8385

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 18386

1    the bench with the Court under those circumstances.

2    But I was just trying to figure out how disadvantaged

3    I would be by not having Mr. Davidson here.  And it

4    would be impossible to have -- for us -- I called --

5    I'm sorry I forgot to mention this.  I called Steve

6    McCue as soon as this happened, and talked with him

7    about finding me -- one, discussing with him:  Can

8    you find me somebody who can help, and can you find

9    somebody who you think would be willing to sacrifice

10   eight weeks of their life to come down here at this

11   point in time to do this case.  And he said that they

12   were tapped out completely on anybody that had the

13   experience necessary to do that.  And that he just

14   thought at that point in time it would be futile.  To

15   just have somebody that is not familiar with this

16   case, or just to have somebody who is not on the

17   complex panel to come in at this point in time to sit

18   here through trial, I think would be even far more of

19   a problem.  I, personally, do not have time to

20   baby-sit anybody now -- not baby-sit, but to be able

21   to have -- to talk to somebody about how they need to

22   get prepared for trial, by just getting prepared for

23   trial myself.

24          So I think that was an issue, so, again, I

25   don't have any further comments at this point in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8386

```
 1   time, unless the Court wants to hear something else
 2   from us.
 3           THE COURT:  I may here up at the bench.
 4   Thank you, Mr. Blackburn.
 5           How about any of the other defendants?
 6   Anybody else want to speak on this issue here at the
 7   bench?
 8           THE COURT:  Yes.  Mr. Burke.
 9           MR. BURKE:  Your Honor, it really is
10   unfortunate that this is coming up now.  But Mr.
11   Blackburn's conflict is far more serious and severe
12   than Michael Davis' was.  So I'm not sure how to
13   handle it.  But one way would be to strike Daffy --
14   James Daffy Garcia as a witness, and then that would
15   resolve the conflict issue.
16           And I suppose another way would be to sever
17   Count 3 altogether.  I'm not sure -- ultimately, it
18   would end up with more trials, because Arturo Garcia
19   is facing a trial, 1613, and Edward Troup would still
20   be going to trial here.  I kind of doubt the
21   Government, if they achieve a conviction on Mr. Troup
22   in this trial, would need to try him again on Count 3
23   down the road.  So, as a practical matter, severing
24   Count 3 or striking Daffy Garcia as a witness would
25   solve the problem.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8387

```
 1                  Thank you, Your Honor.
 2                  THE COURT:  All right.  Thank you, Mr.
 3     Burke.
 4                  Any other defendant want to speak on it?
 5                  All right.  Ms. Armijo?  Mr. Castellano?
 6     Thoughts on this?
 7                  MS. ARMIJO:  And, Your Honor, we're
 8     strictly dealing right now with the issue of
 9     Mr. Davidson; correct?
10                  THE COURT:  Yes.  I mean, people are
11     beginning to raise other issues, but I've got to deal
12     with that motion.  So that's the one I'm focusing on
13     right at the moment.
14                  MS. ARMIJO:  As far as that, you know, we
15     certainly understand the issue here.  We will point
16     out that Mr. Blackburn is learned counsel on this
17     case, and that he has been on this case since, I
18     think, I believe, at the beginning of this case.  And
19     so, you know, despite the luxury of all of these
20     people having two attorneys, he certainly can handle
21     this case as far as Mr. Blackburn, as far as one
22     attorney.
23                  But that being said, I think that the issue
24     that needs to be resolved first is probably Mr.
25     Blackburn's issue.  Because that may change the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1  course of how the Court is going to deal with
 2  Mr. Davidson.  So, in our opinion, we think that Mr.
 3  Blackburn's issue is probably the most important one
 4  to be dealt with.
 5          THE COURT:  Well, I know nothing about it.
 6  So if the Government is going to disqualify Mr.
 7  Blackburn, then, you know, it probably needs to move
 8  and educate the Court about whether he represented
 9  him on a similar interest.
10          MS. ARMIJO:  Your Honor, this matter
11  initially came up, I believe, during the December
12  hearings.  And Mr. Blackburn certainly has been aware
13  of it for a number of years, since he represented
14  Mr. Garcia.
15          THE COURT:  Sounds like the Government has
16  been aware of it, too.
17          MS. ARMIJO:  The Government was aware of
18  it.
19          THE COURT:  And y'all haven't filed a
20  motion to date, so are you filing a motion to
21  disqualify him on the eve of trial?
22          MS. ARMIJO:  We will file a motion today,
23  Your Honor.
24          What has happened is, Mr. Garcia --
25          THE COURT:  Are you moving to disqualify
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8389

1    him?

2              MS. ARMIJO:  We will raise the conflict for

3    the Court to --

4              THE COURT:  You know, you've got to get off

5    the edge of the fence.  You've got to start telling

6    the Court what you think about these instead of just

7    throwing your problem after every problem in front of

8    the Court.  You've had discovery problems, you've had

9    attorneys problems.  You just literally throw them in

10   the lap of the Court.  And you've got to start making

11   some decisions.  So make it today, and tell the Court

12   whether you want him disqualified or not.

13             MS. ARMIJO:  We feel that he has a

14   conflict, Your Honor.  The issue is -- and the reason

15   I say we're leaving it to the Court, is because we

16   felt that Marc Lowery had a conflict.

17             THE COURT:  You're not going to do what the

18   Court asked you to do?

19             MS. ARMIJO:  No, we are.  We feel that he

20   has a conflict and we feel that he should be

21   disqualified.

22             THE COURT:  You do?

23             MS. ARMIJO:  We feel that it is of a

24   nature -- we feel he should be disqualified unless

25   the Court makes a finding that the murder that he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8390

1    represented him is not going to be admitted into

2    evidence.  And that's why I say it's a little bit

3    more complex than that.  But his murder from 1990 --

4              THE COURT:  Why didn't you raise this issue

5    earlier?  If you've known about it since December,

6    why didn't you raise it earlier?

7              MS. ARMIJO:  I believe we actually raised

8    it orally before the Court.  But Mr. Garcia was not

9    Government friendly recently, and so it wasn't as

10   pressing, because we didn't believe he was going to

11   be talking to the Government.  He had not been -- as

12   the Court saw when he came, he was not exactly a

13   friend of the Government previously, when he was

14   contacted by the FBI.  Although we had statements

15   from him, I believe that when they had last contacted

16   him, he was not inclined to come forward to the

17   Government.

18             And then we started the trial, as you know,

19   a few weeks ago, when he was brought before the Court

20   by the defense, it raised all other sorts of issues.

21   He has since been indicted.  And yesterday he -- with

22   his new attorney that was familiar with criminal law,

23   sat down with the Government, and he provided a

24   statement to the Government, and is willing to

25   cooperate with the Government.  So it really isn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8391

```
 1    until yesterday that Mr. Garcia has decided to
 2    cooperate.  We anticipate him pleading guilty and
 3    testifying.
 4             At that point in time, I believe that Mr.
 5    Blackburn -- we raised this issue again with him.
 6    And he knew about the issue last week when Mr. Garcia
 7    testified as well.
 8             So to that extent, that is why it is now
 9    ripe and in our faces, so to speak, whereas
10    previously, it was not.
11             THE COURT:  Well, I'll give that some
12    thought as to whether it was any more ripe now than
13    it was in December, but -- all right.  Do you have
14    anything else you want to say on Mr. Davidson's
15    motion?
16             MS. ARMIJO:  On Mr. Davidson's motion?
17             THE COURT:  Yeah, that's what was teed up.
18             MS. ARMIJO:  No.  That's why I indicated
19    that I think the other issue --
20             THE COURT:  I know what you think.  But do
21    you want to say anything on Mr. Davidson's motion?
22             MS. ARMIJO:  No, Your Honor.
23             THE COURT:  All right.  Let me see
24    Mr. Davidson and Mr. Blackburn and the Government, if
25    they want to send somebody up here -- and I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

DNM 8392

```
 1   I'll need Mr. Garcia up here as well -- so if the

 2   marshals want to bring him up here.

 3            (The following proceedings were held at the

 4   bench.)

 5            THE COURT:  I'm going to take these issues

 6   one at a time, because there is enough complexity to

 7   each one of the issues.  So I'm going to take your

 8   motion up first.  I've read your motion twice.  I

 9   read the motion when it came in.  And, of course, the

10   first thing I did is have Ms. Wild, and I think Ms.

11   Bevel as well, talk to Mr. Blackburn about the

12   situation.

13            My thoughts initially were that we could

14   get somebody to come into the case.  I'd be willing

15   to go to Ms. Waters and see.  I mean, we're really at

16   a luxury anyway, having two lawyers on the case.

17   That's not -- that's something I had to go to

18   Ms. Waters and see if I can get that done for the

19   defendants in this case because of some of the

20   complexity issues, because it was death penalty

21   eligible at the beginning.  But there is nothing that

22   really says that each one of these men are entitled

23   to two lawyers.  Some of the defendants have not had

24   two lawyers.

25            I do have the comfort that Mr. Blackburn is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8393

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 26394

 1    his other lawyer and has been in front of me a number

 2    of times, and is very good.  Everybody in this

 3    district and everybody in this courtroom knows he's

 4    very good.  So I think we've got some cushion there.

 5            It seems to me -- and it seemed to me that

 6    before I got the supplemental motion that the thing

 7    maybe to do was to see if we could get Ms. Waters to

 8    approve another lawyer to come into the case.  If you

 9    could not be in the courtroom every day, then maybe I

10    could talk to Ms. Bean, or again Ms. Waters, and see

11    if there is some feed or something that could be done

12    up into Albuquerque so that you'd be able to see the

13    trial in real-time, or at least getting some dailies.

14            My sense is Mr. Blackburn was going to

15    carry the water here in the courtroom as far as

16    cross-examination and as far as the actual trial

17    work, and that you probably were going to do most of

18    the briefing on motions and that sort of thing.  I

19    think Mr. Blackburn has indicated that he was relying

20    on you because you had looked at a lot of the

21    evidence and the record, and so that he needed you

22    for that, and that he needed you to be here, not in

23    Albuquerque.

24            So I don't think Mr. Blackburn is too

25    excited about the idea that I proposed through Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Bevel and Ms. Wild about how to deal with y'all's
 2   defense team.  But I guess I still think it's a bit
 3   of an option to see.
 4            Now, when I got your motion yesterday and I
 5   read it, I then went back and reread your initial
 6   motion.  And I guess my concerns were that there
 7   seemed to be some inconsistencies between the motion
 8   itself that was filed on the 22nd, and then the
 9   document that was filed on the 2nd.  So I went back
10   to financial and said -- because the motion itself
11   had indicated that y'all were working vigorously,
12   tirelessly -- I have two copies here, so I don't know
13   if I'm picking up the one that relies on it -- but it
14   indicated that Mr. Blackburn, Mr. Davidson have been
15   working tirelessly for approximately 16 months.
16   Then, when I got the memorandum in support, sort of
17   indicated you hadn't worked on this case really at
18   all since January.
19            And I went down, talked to financial, and
20   sure enough, you haven't billed anything for -- since
21   late January on this.  So I guess my concern is that
22   what you're telling me and what financial is telling
23   me and showing me is you haven't worked on this case
24   since January, and yet we get the motion two months
25   later in March, which seems to me to -- I mean, y'all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8395

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 28

```
1    have wanted a severance all along.  And by waiting
2    two months after your wife was diagnosed, and then
3    y'all went two months without you really doing any
4    work on this case, that really puts the Court in a
5    very difficult position to grant a motion, when y'all
6    have known about this for two months, and I think I
7    could have at least mitigated it, as I did with
8    Michael Davis in the first trial, and didn't.  And I
9    think he got excellent representation in that trial.
10          Here, we're trying to get out of the case
11   right here before the trial starts.  And it seems to
12   me it's a bit of a situation that you -- and if Mr.
13   Blackburn knew that you weren't working on the case,
14   then somebody should have been bringing this to the
15   attention two months ago, rather than bringing it to
16   the attention as it is now the week of the trial.
17   Because the motion I got on March 22 indicated that
18   you'd been working tirelessly on the case.  And your
19   latest filing, and my checking with financial shows
20   that you haven't been working on the case at all for
21   two months.
22          And so I guess I don't feel I can grant
23   this motion.  I feel like I'm being told different
24   things by Mr. Davidson.  And again, I'm not
25   undercutting anything I said out of sympathy for you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8396

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29

```
 1    and your family.  But I think you put the Court and

 2    the parties in a very difficult position by not

 3    working on this case for two months, knowing the

 4    situation, and then trying to box the Court in by

 5    saying that I've got to sever the case and continue

 6    it.  That's what you wanted all along.  And it seems

 7    to me that there is a little bit of concern that this

 8    may be strategic, as well as --

 9              MR. DAVIDSON:  No.

10              THE COURT:  -- as well as trying to help

11    your situation.  But I'm quite willing to work with

12    you and Mr. Blackburn, Mr. Garcia, to get you

13    somebody else to come in and help.  I'm willing to go

14    to Ms. Waters and see if we can help get some feed up

15    to Albuquerque, or something, so that you're fully

16    aware of what's going on here.  And I'm willing to go

17    to bat and see if we can get some third attorney

18    involved in this case.

19              But I'm not sure that I'm in a position to

20    grant a motion to continue the trial, and to sever

21    Mr. Garcia.  And it seems to me that that's the only

22    way he's willing to consent to your withdrawing.  And

23    so I think it means probably I'll be denying that

24    motion to withdraw.

25              One other thing I'll say -- and I guess
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8397

1    maybe I should ask a question first.  I know that

2    you've been in cases with me.  Have you ever tried a

3    case?  I mean, have you ever had a jury trial in

4    which you examined witnesses and picked a jury and

5    done an opening and done a closing?  Have you had

6    that sort of trial experience?

7            MR. DAVIDSON:  I haven't picked a jury, but

8    I've certainly examined many witnesses in evidentiary

9    hearings, and cross-examined, and openings and

10   closings.

11           THE COURT:  How about a trial, though?

12   Have you ever participated actively in a trial?

13           MR. DAVIDSON:  I have.  The role I had with

14   Michael Davis in front of Your Honor in the Gould

15   trial -- that was, what, maybe eight or nine years

16   ago -- I think my role on that one was of a research

17   attorney role.  But since then I've had many

18   evidentiary hearings, and in a sense bench trials.

19   And I have had bench trials.  The trials that I've

20   had have not been jury trials.  So I wasn't really

21   taking the lead on the voir dire part of it.

22           If I may address some of the concerns Your

23   Honor had about financial --

24           THE COURT:  Well, I'll give you a full

25   chance to address those, I really will.  But let me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8398

```
 1   ask a few questions.

 2              MR. DAVIDSON:  Sure.

 3              THE COURT:  I guess one thing I'm concerned

 4   about is how much of this is driven by your wife's

 5   health and your needs with her, and just how much of

 6   it is being driven by your kind of walking in here

 7   and looking at this courtroom and thinking about what

 8   we're doing for eight months (sic)?  I'll use my

 9   language about, kind of freaking out about being down

10   here in Las Cruces and being in a courtroom for eight

11   days (sic), participating in this trial?  How much of

12   it is that?

13              MR. DAVIDSON:  That's not what it's about,

14   Your Honor.  I haven't thought of withdrawing or

15   anything like that up until recent weeks.

16              THE COURT:  Tell me about your wife's

17   schedule.  We're here now on April 4.  Tell me what

18   her schedule for radiology is going to be over the

19   next eight weeks.

20              MR. DAVIDSON:  The recommendation is that

21   it starts -- let's see, the 16th of April is when

22   they're planning on starting it, if she's well enough

23   to proceed.  There will need to be follow-up

24   appointments with the medical oncologist or radiation

25   oncologist to determine whether or not she's well
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8399

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 32

1    enough to do that.  Right now, she's not able to

2    drive.  When she walks, Your Honor, it's very slow.

3    And if she stays up from the time she wakes up in the

4    morning until 6:00 or 7:00 at night, it's an unusual

5    day.  Most days she's not awake that often for an

6    extended period of time.  She's not able to do much,

7    you know, around the house or anything like that.

8    And I understand that radiation can be very painful.

9    So that's her anticipated schedule.  And they're

10   recommending five weeks of daily radiation.  And I

11   understand it becomes very painful and a lot of

12   fatigue.  And so I feel like I need to be there in

13   Albuquerque with her those days.

14        THE COURT:  So you think the radiation is

15   going to be every day?

16        MR. DAVIDSON:  They're saying every day for

17   five weeks.  I don't know if it means seven days, but

18   certainly five days.  My understanding it's daily

19   radiation.

20        THE COURT:  And we don't know right at the

21   moment whether she's going to be strong enough to

22   start this; correct?

23        MR. DAVIDSON:  Correct.  But the current

24   thinking is it would start in mid April, on the

25   assumption that the recovery goes well.  So far, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8400

```
 1   recovery has not gone well.

 2           May I address financial --

 3           THE COURT:  Yeah, go ahead.

 4           MR. DAVIDSON:  I don't know what they're

 5   basing that on, because I submitted one --

 6           THE COURT:  They told me for $3900 on --

 7           MR. DAVIDSON:  On the first quarter of --

 8   well, the first quarter of my participation in this

 9   case was the last quarter of 2016.

10           THE COURT:  Well, I didn't go back that

11   far.  What I told them to do --

12           MR. DAVIDSON:  That's the only one I've

13   submitted.

14           THE COURT:  You indicated that your wife

15   had been sick starting in late January, so I said go

16   back to about January 25 and tell me what his billing

17   is.  And they said you submitted one bill for $3900,

18   and it had been rejected.

19           MR. DAVIDSON:  That was not for that period

20   of time.  That was for the last quarter of 2016.

21   I've not submitted any bills for 2017 or 2018 yet.

22           THE COURT:  And what am I supposed to draw

23   from that, that you're not submitting any bills?

24   You're not working?

25           MR. DAVIDSON:  No, I'm working.  I just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    haven't submitted bills.  I'm behind on vouchers as

2    well.  Vouchers come when I have briefing and

3    preparing for trial and things like that to do with

4    the CJA billing, and sometimes take a back burner.

5            THE COURT:  But you haven't submitted any

6    bills for 2017 --

7            MR. DAVIDSON:  For 2017, correct.

8            THE COURT:  -- correct?

9            MR. DAVIDSON:  Nor for the beginning of

10   2018.  So they're -- I can address -- I have been

11   working on the case, Your Honor.  I have been working

12   diligently the whole time.

13           THE COURT:  The brief that I got yesterday

14   said you really hadn't worked on this case.

15           MR. DAVIDSON:  If I can explain.  It's not

16   that I haven't been working, that's not what the

17   supplemental says.  The supplemental says that my

18   productivity in preparing for trial over the last

19   several months has dwindled.  There are a number of

20   projects that were assigned to me and allocation of

21   responsibilities, as far as helping out with the

22   joint defense efforts, that I had to back out of, and

23   other attorneys and other teams had to step up and

24   take over those.  And the amount of time, that

25   little, to spend on Mr. Garcia's case has been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8402

```
 1   dwindling.
 2           But, as I pointed out in the supplemental,
 3   at each point along the way, I thought that I could
 4   make up for lost time, and get back on top.  At the
 5   beginning, they weren't talking about radiation.
 6   When she went in for the appointment and they talked
 7   about radiation, that came kind of a blow.
 8           MR. BLACKBURN:  Judge, we can barely hear,
 9   and Ms. Bean is having a hard time.
10           (The following proceedings were held in
11   open court.)
12           THE COURT:  Guys, keep it down a little
13   bit.  You can talk, but just a little bit down.
14           MR. BLACKBURN:  Thanks, Judge.
15           (The following proceedings were held at the
16   bench.)
17           MR. DAVIDSON:  We didn't know until -- I
18   can't remember the date of that appointment.  But I
19   think it was the week before the hearings here on the
20   12th through the 16th, those hearings here.  It was
21   right before that that we got the news that they were
22   saying that they had gotten as much of the cancer as
23   they could from the surgery, but that when they take
24   out the tissue, they looked at the margins, and the
25   margins were so narrow that they're recommending
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8403

1    radiation.  And that's -- we didn't know that until

2    March.  So that's a significant piece of the puzzle.

3              In late January, we knew that -- as I

4    pointed out in the supplement, the information is

5    constantly coming in, and it's building, but it

6    doesn't always build in one direction.  Information

7    is going one direction, then the other.  And at each

8    juncture I thought that I could get back up to speed

9    to help Mr. Blackburn and Mr. Garcia.

10             I can assure Your Honor that there is no

11   misrepresentation to the Court about the facts

12   related to this.  And whatever the information the

13   people from financial are giving you is not accurate.

14             THE COURT:  Well, it is accurate.  You're

15   not billing anything, and you haven't billed anything

16   since 2016.

17             MR. DAVIDSON:  That's right.

18             THE COURT:  So it is accurate.

19             MR. DAVIDSON:  I thought you were saying

20   they were saying that I hadn't been working in the

21   first quarter of 2018.  That's not true.

22             THE COURT:  Well, they probably can't

23   comment on whether you're working or not.  But they

24   can tell me whether you're billing.  And I guess they

25   were accurate that you're not billing us.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8404

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 37

1           MR. DAVIDSON:  Right.  But that's not

2    because I'm not working.  It's just --

3           THE COURT:  You've got to admit it's a

4    little bit odd, though, to work on a case for a

5    year-and-a-half and not bill.

6           MR. DAVIDSON:  Not necessarily.

7           THE COURT:  I mean, we've got rules that

8    say you've got to turn in stuff -- I think it's every

9    90 days or something like that, or it's late, and you

10   may not get paid at all.  I'm pretty liberal on that,

11   and I don't think I've ever dinged anybody for being

12   late.  But I'm not sure I've ever had anybody that

13   hasn't billed for a year-and-a-half either.

14          MR. DAVIDSON:  It was 45 days after the

15   close of the case, is the rule that I'm familiar

16   with.

17          THE COURT:  Well, you're on interim billing

18   here, aren't you?

19          MR. DAVIDSON:  I believe so, yes.

20          THE COURT:  All right.  Anything else,

21   Mr. Davidson?

22          MR. DAVIDSON:  Did you want to add

23   anything, Billy?

24          MR. BLACKBURN:  It was -- although, I mean,

25   I can only echo what Mr. Davidson is saying under the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8405

```
 1   circumstances, Judge, is that it wasn't that we
 2   didn't -- that I didn't know that there was an issue
 3   going on with him, but I'm not going to be the guy
 4   that goes down and says, every day, like, can you do
 5   this?  Can you do this?  Can you do this?  I mean,
 6   you know, so I was actually pushing Scott to say I
 7   need to know, I need to know.  But as a colleague and
 8   as a personal friend, it wasn't like I was down there
 9   saying:  If you don't do this today, you need to tell
10   the Judge.  Because I would go down and see what was
11   happening upstairs and downstairs in our office.  And
12   I didn't feel comfortable doing that.  I knew all the
13   stuff about the emergency room and everything spreads
14   in the office as you can understand.
15          So I just found a way to do what we needed
16   to do.  And then, when we were sitting in here at the
17   motions -- actually, it was the day after we got the
18   verdict, I think it was the next day that Scott sent
19   me an email saying, It's just not going to work.  And
20   Mr. Garcia was sitting next to me at the time.  And I
21   let him see the email.  And despite all the facts
22   that everybody has always asked for a severance, I
23   mean, you know, routinely, as you know, every defense
24   attorney is going to get up there -- and I'm sure it
25   probably happened at the last trial that Ms. Jacks
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8406

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8407

1    probably asked for a severance every day of the

2    trial.  I'm not saying that that's -- so we're always

3    asking for severances, one, basically, I think as an

4    experienced defense attorney is to make a record to

5    make sure that it's there.  Of course, I've had

6    judges say:  You don't have to say that anymore, Mr.

7    Blackburn.  It's repeatedly -- I got bit on appeal

8    one time.

9              So, but anyway, so you know, and we did

10   have a division of labor.  I know that Scott does a

11   lot of -- he and I may have talked about hearings --

12   he's done Racing Commission hearings, hearings in

13   front of Judge Malott, so I know that he probably

14   doesn't have the experience in picking a jury like I

15   do, or doing voir dire.  With all due respect, any

16   case I've ever done with you, I've done very little

17   voir dire anyway, because you do such a good job at

18   voir dire, so that is not something -- compliment to

19   you -- I don't know that you're going to be at Sandia

20   Prep looking at questionnaires anymore.

21             THE COURT:  We're doing it soon here.

22   We're doing it soon.

23             MR. BLACKBURN:  So you know there were

24   witnesses that we had broken up.  He was listening to

25   the phone calls, and my staff and his staff are doing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8407

1   the phone calls on Benjamin Clark and stuff.  So we

2   did have a division of labor as to who was going to

3   do what.

4            You're right, I was going to probably do

5   most of the heavy hitters.  And you're right, having

6   a second counsel is a luxury.  And when I sat down

7   and talked to Scott about this, I said:  Here's one

8   of the issues, is that other people like Mr. Lahann

9   hasn't had -- he just brought Shattuck on recently.

10  But I think it's a little bit different when he

11  decided at the very beginning -- if you would have

12  told me two years ago or something that I couldn't

13  have a second attorney -- not saying you wouldn't do

14  that -- but I mean, if I was in that position when it

15  went from death penalty to nondeath, I would have

16  been focused -- I would have been saying that is my

17  responsibility, I would have been doing everything.

18           But just in the last week, the last 10

19  days, we have received tons more discovery.  And I've

20  barely even had -- because I haven't had a chance to

21  even look at that, because of just trying to get

22  ready for what was going to happen before.

23           So having two lawyers, once we made the

24  decision to have two lawyers, then I think that made

25  a different situation.  If I would have known two

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8408

```
 1    years ago that I was going to do this case by myself,
 2    we wouldn't have this question.  I think the Court
 3    understands I would take that responsibility on.
 4    When for the longest time Mr. Linnenburger worked for
 5    me -- Paul was a great writer, he knew everything but
 6    he didn't like to get up and ask questions, but the
 7    knowledge that he had sitting next to me was just --
 8    I mean, he knew more about the case than I did.  Now
 9    he's doing trials because he likes it.  But I knew I
10    had that security blanket there, and then he's no
11    longer working for me.  So that's when I brought in a
12    second security blanket, which would be Mr. Davidson,
13    knowing that even if he wasn't going to do this
14    witness, that he could tell me:  Here's what this
15    witness is about.  So -- and losing it at the last
16    second is difficult for me.
17            I'll just -- you know, I don't want to
18    cause any controversy or anything.  You know me, I
19    try cases in front of you, and you know how we do in
20    an eight-week case if somebody is looking at life,
21    it's just really difficult for me.  There are only so
22    many hours in day I can work on this, Judge.  So --
23    and I didn't push Mr. Davidson on this.  Maybe I
24    should have.  I just didn't feel it was my -- I just
25    didn't feel -- my personal thoughts for him and his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8409

```
 1    family got in my way, that I didn't push him on that.
 2    And I wouldn't feel comfortable doing that.  But I
 3    did to an extent, like:  You need to let me know.
 4    And then, when the radiation came, I just knew what
 5    was going to happen.
 6              So, anyway, that's the only thing I have to
 7    say.  And I've talked to this -- talked to Mr. Garcia
 8    about this when we were coming down here for an
 9    entire week.  That was on a Tuesday.  We found out --
10    we were here till Friday -- I mean, Arturo was not
11    happy, but he also understands the circumstances.
12    And I think we all do, I mean, he was not happy
13    because he knew he wanted to have Scott here and to
14    help and assist in the case.  But this isn't like --
15    no one is claiming this -- it's not like this was
16    planned or anything.  Under the circumstance, nobody
17    would ever want this to happen to anyone.
18              My mom had cancer last September -- and
19    July -- and I didn't work for almost a month.  She
20    was 86, and had to move in with us.  My life went
21    upside down.  I couldn't think about anything but
22    that.  But you know, I did what I could do.  But that
23    was in September.  You know, had that happened in,
24    you know, May of this year, or March of this year, a
25    little bit different situation, when your 86 year old
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8410

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43

```
 1    mother has to move in with you because she couldn't
 2    care for herself because of the surgery.  She had
 3    colon cancer, and had to learn how to use a colostomy
 4    bag.  And I had to move for continuances in every
 5    brief, except for the Tenth Circuit.  I didn't do
 6    that.
 7            But anyway, I just wanted to explain that
 8    to the Court.
 9            THE COURT:  Does the Government have
10    anything it wants to say?  Mr. Castellano?
11            MR. CASTELLANO:  Mostly just observation.
12    I understand the situation.  I know that Mr.
13    Blackburn is an experienced attorney and is learned
14    counsel.  I just don't know the breakdown and
15    division of labor.  Maybe that's something the Court
16    can discuss separately when it deals with
17    attorney-client issues.  Ms. Torraco is a recent
18    addition to the case.  Mr. Granberg now has Mr.
19    Solis.  Joe Shattuck, if I remember correctly, they
20    moved his admission only because of the volume of
21    jail calls and recordings.  Other than that, I think
22    Mr. Lahann is ready to go.  So we have other
23    attorneys.  And the last trial we had a late addition
24    as well.  So I think it can be done.  But at the same
25    time, I understand the situation.  But I just note
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 44

```
 1    observations that we have people who are somewhat
 2    similarly situated.  But like I said, I understand
 3    what Mr. Blackburn said.  Had this been his case
 4    alone, he would have prepared it as a sole
 5    practitioner in a case.  So I get that.  So I don't
 6    know if there is a need to talk to them separately
 7    about the division of labor, and really how much
 8    catching up he has to do, because he's had all the
 9    heavy hitters, which is what I would expect with his
10    experience in this case.  So I'm going to put that
11    out there as an example of other people who have had
12    recent changes or additions to the defense teams.
13              THE COURT:  All right.  Thank you, Mr.
14    Castellano.
15              Anything else you want to say,
16    Mr. Davidson?
17              MR. DAVIDSON:  Your Honor, Mr. Garcia wants
18    to -- did you want to address the Court?
19              THE DEFENDANT:  I've been listening to
20    everything that's going on and I understand pretty
21    much all of it.  I want to say that I empathize with
22    him and his family.  My sister had breast cancer; she
23    lost.  So I know radiation, chemo, all that.  And I
24    know it's going to be a hard process.  But keep in
25    mind, they both committed to giving me the best
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8412

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 45

1   defense that I'm entitled to have.  I'm not guilty of

2   nothing.  And I need them to help me get through

3   this.  I'm facing the rest of my life.  Not just for

4   this trial, but there is another trial.  I mean, all

5   of a sudden, things are not looking too good with my

6   team.  Like I say, if he can't commit 100%, what good

7   is he going to do me, Your Honor?  If I can't get --

8   and he's 80 percent, what good is that going to do

9   me?

10          I don't know about a severance because it

11  might affect everybody else.  Most everybody is ready

12  to go.  I mean, a continuance -- you guys are the

13  experts in that.  I don't know.  So I prayed on it

14  last night.  I'm not very religious.  But at this

15  point in my life I've got to ask somebody for help.

16  I'm going to leave it in your hands.  Whatever you

17  decide, I've got to trust that you got my best

18  interests in mind, you know.  And that's all I could

19  say.  And I hope that his wife pulls through.  What

20  else could I say?

21          THE COURT:  All right.  Thank you, Mr.

22  Garcia.

23          THE DEFENDANT:  You're welcome.

24          THE COURT:  Well, let's do this:  I'm going

25  to deny the motion without prejudice to renew it.  It

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



DNM 8413

```
 1   sounds like we've got some other issues that we have

 2   to deal with that may in some ways moot this out.

 3   You know, it does seem to me that this should have

 4   been brought to the attention of the Court earlier.

 5   And I do think that I understand what you're saying.

 6          But Mr. Garcia just points out, it's his

 7   life, it's his defense.  We're all professionals.  If

 8   we don't think we're going to be able to do the job,

 9   we've got to start alerting everybody earlier.  And I

10   think this probably should have been brought to the

11   attention two months ago, because it doesn't look

12   like a lot of work has been done by Mr. Davidson over

13   the last two months, and probably the Court should

14   have been apprised of that, and we could have made

15   some things differently.

16          I'll deny it without prejudice.  We'll see

17   how Mr. Davidson's wife does.  If she's not able to

18   do the radiation, then it may mitigate some of the

19   issues.  If it turns out that she does go into

20   radiation, we may have to do something else.

21          My offer still stands, and I think y'all

22   might think about it and let me know, going back to

23   Ms. Waters and seeing if I can get another attorney.

24   The clock is ticking on us.  I wish we were even back

25   on March 22 now, and getting somebody in play.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    think that would be better than nothing.  If you

 2    don't want it, I won't force it.  But if you do want

 3    it, I'll start working with Ms. Waters.  We're well

 4    beyond CJA panel, looking at the people that are

 5    representing the witnesses are not CJA panel.  So I'm

 6    looking for good state lawyers.  And they don't even

 7    have to be in the state.  I'll go to El Paso, or

 8    we'll fly somebody in from somewhere else, get them

 9    here and pay the expenses and I'll leave it to Mr.

10    Blackburn and Mr. Davidson and Mr. Garcia to

11    determine where you're physically at.

12            As far as the Court is concerned it doesn't

13    matter.  It may matter to Mr. Blackburn that you're

14    sitting there.  It may matter to Mr. Garcia that

15    you're sitting there.  And I'll have to -- you'll

16    have to take your directions from them.  And I'm

17    willing to get somebody on board.  And I'm willing to

18    work with Ms. Bean and see what we can do about

19    either getting a feed, or some other lawyer on board.

20    But I think right now the motion to withdraw is

21    unopposed.  If it's accompanied by a continuance and

22    a severance -- and I don't think that would be fair

23    to everybody, because I do think that some of this

24    could have been mitigated greatly if we'd have gotten

25    on it a couple of months ago.  As far as those are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   concerned, we've looked at it several times.  I've
 2   continued to look at it.  I've looked at it again
 3   yesterday, been looking at it today.  It just doesn't
 4   seem that a severance or a continuance is appropriate
 5   on that score.  It may be forced on us by other
 6   issues and things.  But at least as to this one, I
 7   think we can probably work around it for the present
 8   time.
 9           So for the present time, I'll deny that
10   motion without prejudice to renewing it, depending on
11   how things develop, and what resources and assets we
12   can bring to bear to mitigate any harm to
13   Mr. Garcia's defense.  And I've got to tell you that
14   I guess I certainly understand how we prepare for
15   trial.  I've prepared for them many times.  And I've
16   now seen over the last 15 years how they're prepared.
17   And it's no surprise to anyone that there is a
18   division of labor.  I think I have a pretty good feel
19   from y'all being in front of me how this case was
20   probably divided up.  And you know, I'm drawing a lot
21   of comfort from the fact that you've got two very
22   good lawyers here, and Mr. Blackburn can try a case,
23   no doubt about it, so I'm drawing a lot of comfort
24   from the fact that you don't just have anybody, you
25   have Billy Blackburn representing you in this trial.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8416

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 49 of 417

```
 1              THE DEFENDANT:  I keep hearing that.
 2              THE COURT:  You know what, you and I are
 3      going to get a front row seat.  It will be a show.
 4      He'll do a good job now.  And I think Mr. Davidson is
 5      going to have to make some decisions about how much
 6      he can work on this case and things like that.  And
 7      if y'all get together, and here at a break or
 8      sometime during the day, and you want me to start
 9      trying to swing additional resources in to help, I'll
10      try to do that.
11              I think, realistically, that even if Mr.
12      Davidson is back in Albuquerque at times during this
13      trial, more than good chunks of it during the trial,
14      I know that I never got out of my mind my work, even
15      as bad as things might get in life, if I had made a
16      commitment to represent somebody and I had something
17      like this come up, you know, practicing law and being
18      a judge for 30-plus years, things just come up.
19      And -- but I was a professional, and I just never
20      wanted to let anybody down.  And I think --
21              MR. DAVIDSON:  Your Honor, if I may just
22      address what you're saying.  The Court's thought that
23      it should have been raised earlier.  It is April 4
24      now.  And I do realize that we're now on the eve of
25      trial.  But two months ago all we had was a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8417

1    diagnosis.  And the earlier indications were -- as I

2    pointed out in the supplement, it sort of grew.  Two

3    months ago it was just going to be -- the thoughts

4    were that it might just be a lumpectomy.  And we had

5    friends who had lumpectomies, and it's not that big a

6    deal.  Then, as we got more appointments, then it

7    became clear that it wasn't only going to be a

8    lumpectomy; it was going to be a full mastectomy.

9    And then the initial thought was that the nature of

10   the cancer, that a surgery would be all we would

11   have.  And then when they looked at the pathology

12   after the surgery, then it became clear that the

13   margins were very narrow, and so the cancer was right

14   into the edge of the chest wall.  And so that's the

15   reason for radiation is -- there is no real way for

16   them to know, Your Honor, whether she still has --

17   right now, whether she still has cancer in her body

18   or not.  So the radiation is to zap it, you know, to

19   increase the chances.  There is no 100%.  I've looked

20   at the medical literature that the radiologists have

21   given me.  There is no 100%.  So I guess I use the

22   analogy in the supplement of a frog in a pot of

23   water.

24           Two months ago, Your Honor, I didn't know

25   that I would be in this situation.  It really only --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it accumulated.  And so I just want the Court to know
 2    that had I known two month ago what I know now, or
 3    had there been a good reason to believe two months
 4    ago what I know now, I should have -- I would have
 5    told the Court.
 6          We're not waiting to the eve of trial to
 7    gain some advantage.  This isn't gamesmanship.  We
 8    didn't plan any of this.  And I didn't know -- we
 9    don't know these facts until they come in.  So I just
10    wanted to let the Court know that.
11          And I also want -- it's not the case that
12    since January there hasn't been any work done in the
13    case.  It's just that my -- the number of hours per
14    day that I have been able to devote to his case has
15    dwindled over my time.  And I've seen my productivity
16    when I'm working -- just my ability to concentrate
17    has dwindled.
18          So sometimes looking back on things are
19    clearer than when you're in the middle of it.  So
20    when Mr. Blackburn put the question to me:  I need to
21    know what your decision is, I informed him about the
22    radiation coming up.  And then he said, Okay, then
23    you need to start preparing a motion to withdraw.
24    And you know, I got it, and filed it as soon as I
25    could.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8419

```
 1              And then a couple days after I filed the

 2    motion, I started thinking about additional

 3    information that I wanted to bring to the Court's

 4    attention.  And that was the reason for the

 5    supplemental memorandum in support of that motion.

 6    And I do apologize.  I could have -- looking back, I

 7    should have filed this somewhat earlier.  I just want

 8    to alert the Court that there is no way that I could

 9    have done this two months ago, because, in fact, I

10    didn't know this information two months ago.  And

11    even the beginning of March, at the beginning of

12    March she was in the hospital, but we didn't know

13    what was going to happen.

14              So I just want to inform the Court of the

15    timeline.  Because it seems that the Court's

16    decision -- I understand you're denying it without

17    prejudice, but it seems like it's driven in part by

18    the feeling on the Court's part that I haven't been

19    doing any work on the case for two months, and that I

20    waited around till essentially today to bring it up.

21    And I just wanted to alert the Court of the timeline.

22              THE COURT:  Well, when you have a chance,

23    sit down and read your -- I know it's a bit of a

24    stream of consciousness -- the supplemental, but you

25    might ought to reread it.  Because I don't think that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    would give the Court any confidence with the fact --

2    I know you've given an explanation of no billing, but

3    if you read that document -- and in fact, we've not

4    received any bills -- I'm not sure how much

5    productive work you've done over the last two months,

6    given what's in the supplemental.

7          MR. DAVIDSON:  It certainly has been

8    difficult.

9          THE COURT:  All right.  Well, let's go back

10    on the record.  I'll announce my ruling without much

11    detail, and then we can figure out where we're going

12    to go from here.

13          MR. CASTELLANO:  Your Honor, as counsel

14    have been talking at the bench here, if you can give

15    us some time today, we're trying to work on a

16    resolution which potentially would move Mr. Garcia's

17    case into the July trial.  We haven't made a final

18    decision yet.  But if we do agree to do that, we

19    could sever him on not the entire count, and that

20    would give counsel the chance to resolve any issues.

21          I know it's kind of a play it as you go

22    deal with Mr. Davidson's wife, but it is something

23    we're contemplating.  I can tell the Court the overt

24    acts in the RICO trial set for July covers the same

25    conduct with which Mr. Garcia is charged in this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    case.  There are actually two murders among the overt
 2    acts.  So if the Court can give us some time, we may
 3    be able to come to an agreement which would buy us
 4    time and potentially resolve some of these issues, or
 5    at least give us some more time to let them resolve
 6    themselves.  But we haven't made a decision yet,
 7    since we're just talking at the bench.  But it's
 8    something we're contemplating.
 9             THE COURT:  Well, and you're probably going
10    to need to talk to the defendants in that case.  They
11    may not be wild about -- that's a nine-defendant case
12    as it is -- turning around and having that case get
13    bigger.
14             MR. CASTELLANO:  I can tell the Court that
15    Mr. Garcia is already charged in that case, so he
16    would not be an additional defendant.  And the
17    conduct charged in this case is in the overt acts in
18    that case.  So I don't think it would be an
19    additional amount of defendants or presentation of
20    evidence.  I think we'd be presenting the same
21    information at that trial.
22             THE COURT:  I still probably would want to
23    have those defendants' views on that.
24             MR. CASTELLANO:  Sure, because it would
25    result in a joinder.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8422

```
 1              THE COURT:  Because if they oppose it, I am
 2    not -- I think we'd probably have to get them in here
 3    and argue it, and create some logistical issues.
 4              MS. ARMIJO:  What I was going to suggest
 5    taking time for Mr. Blackburn -- obviously he's
 6    already a defendant in that case -- reach out to them
 7    and get their position, so we can file something.
 8    And if it's unopposed, that would make it easier.
 9              THE COURT:  If it's all unopposed, I don't
10    think these guys are going to care.  But if it's
11    unopposed and if no one sees some problems that way,
12    then I probably am not going to oppose it.  But I'm
13    not going to get my hopes up too much.  I haven't
14    seen much in this case that's unopposed.  So maybe
15    I'll be surprised.
16              MR. BLACKBURN:  Well, different people -- I
17    don't know.
18              MR. BECK:  We've got Billy going to bat for
19    us.
20              MS. ARMIJO:  That's why we're putting it on
21    him.
22              THE COURT:  Mr. Garcia is going to find out
23    right off the bat how good a lawyer he is.
24              There was something I was going to say on
25    that, but it escapes my mind.  Well, is that going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8423

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 56424

1  solve, though, any of the conflict issues?  Does that

2  go away?

3          MR. BLACKBURN:  Judge, we don't know if it

4  does now.  Because I wanted to sort of echo what the

5  Government was saying this morning.  I just sort of

6  raised that initially.  And she spoke a little bit

7  more about it.  But it was -- even though Mr. Garcia

8  was listed on the witness list, it was my

9  understanding he was not going to be called because,

10  as she said, he was not being Government friendly.

11  And so things, unfortunately, changed, which I've got

12  to admit was somewhat news to me whenever the other

13  teams brought him in here.  I had read the motion,

14  but then when he came in and started to testify, I

15  wondered if I needed to say anything.  But the Court

16  got him a lawyer.

17          But sitting there watching this develop, I

18  sort of knew what was going to happen.  In fact,

19  after he testified, I'm standing over there talking

20  to Agent Acee.  And I said, "Well, I can predict

21  this:  You're going to go arrest him; you're going to

22  charge him with perjury, and then he's going to be

23  cooperating."

24          And he goes, "Yep."

25          And so -- and I spoke to Arturo,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8424

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 57

 1   Mr. Garcia, about that that day.  And then I know

 2   that Mr. Beck -- and they've been very honest about

 3   this -- I started asking, once the indictment came

 4   out, thinking, okay, I'm smart enough to figure this

 5   one out.  So I started sending an email to the

 6   Government saying:  What are you guys going to do?

 7   Well, he didn't have his arraignment till yesterday.

 8   Then I understand that they talked with him

 9   yesterday, and Mr. Beck talked with him for just a

10   little bit of time.  They didn't get into all the

11   issues about what he would testify about Mr. Garcia

12   in this case, or what he would testify to him about,

13   the Sammy Chavez case.

14          So this gives us an opportunity for them to

15   go back and figure that out.  And if it comes to such

16   an extent that he -- and I'm just foreseeing it --

17   but comes to such an extent that there would be an

18   actual conflict because of my ability to

19   cross-examine him or not cross-examine, to set up

20   some firewalls, because I can't set the firewalls

21   now, if Mr. Davidson is not going to be involved to

22   some extent.  It would give us time to figure this

23   out, to get another lawyer.  If I'm going to have to

24   leave of the case, that gives us plenty of time to

25   make -- for them to explore that.  I mean, I know

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   that they haven't done all of their debriefing on it,

2   because it was just a debriefing yesterday -- Mr.

3   Beck can talk to that -- because they needed to get

4   him on board.  But pretty much, I understand he will

5   testify against a majority of the people in this

6   case.

7           He can be impeached on the 1994 conviction.

8   It was based upon that that he went to custody for 24

9   years.  It was a gang deal there also.  It wasn't

10  SNM.  He was only 19 years of age or 20 years of age.

11  But I think that gives us an opportunity to figure

12  out how I can possibly stay in the case.  Because I

13  know he wants me to, because then the person that

14  needs to see the show, he's not going to be able to

15  see the show if they move to continue, if they move

16  to boot me out, and he loses myself.

17          And so that's what we're thinking.  If we

18  move into that, that gives us time to do -- and I'm

19  willing to work with them on that.  I think I can

20  convince the other people.  I just need to talk to

21  Mr. Davidson and Mr. Garcia about that.

22          THE COURT:  Okay.  Let me go ahead and

23  announce the ruling on this.  I think I made a record

24  here.  And I won't elaborate too much in open court.

25  But let me do that, then we'll probably be taking a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8426

```
 1    break in about five minutes.

 2              MR. BLACKBURN:  All right.

 3              MR. DAVIDSON:  Thank you, Your Honor.

 4              (The following proceedings were held in

 5    open court.)

 6              THE COURT:  All right.  We'll go back on

 7    the record after being here at the bench.

 8              You know, as I have indicated up here at

 9    the bench, I've indicated in open court, it's a very

10    difficult situation for Mr. Davidson.  It's a very

11    difficult situation for Mr. Garcia's defense team.

12    It's difficult for all of us; not so much the other

13    defendants, but for the Government and their

14    planning, and the Court, and all the logistics that

15    we made to get to this point.

16              I am going to deny the motion without

17    prejudice.  I've offered some scenarios and

18    solutions, some resources that I think might mitigate

19    some of the concern.  And Mr. Garcia and Mr.

20    Blackburn and Mr. Davidson are going to look into

21    those.  And if necessary, then I'll be going back to

22    Ms. Waters to see if we can do some things, maybe

23    working with Bean also, to see if we can mitigate

24    some hardship to Mr. Davidson, also Mr. Garcia, and

25    Mr. Blackburn in preparation of their defense.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8427

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 60

 1          So we'll be monitoring the situation.  I'll

 2   deny it without prejudice, and we'll see how things

 3   develop.

 4          We've got some other issues that have

 5   arisen here on the eve of trial that may also play

 6   into that.  So I'll deny that.

 7          We're getting close to a break.  There is

 8   something that we need to discuss.  Like I said,

 9   there was a number of things that I was told had to

10   be talked about first.  And I'm willing to go in your

11   order.  Otherwise, I suggest maybe we take the break

12   and come back and do bad acts for Mr. Billy Garcia, I

13   think is the first one up.

14          Anybody want to think something else ought

15   to be discussed?  Mr. Castle -- I mean, Mr. Burke?

16          MR. BURKE:  May I inquire how it was

17   resolved with regard to Mr. Blackburn's conflict?

18          THE COURT:  It hasn't been resolved.  There

19   was a bit of discussion, because I think there was

20   some -- I think y'all are all feeling like that needs

21   to be done before Mr. Davidson.  And I kept trying to

22   get back on track.  I think maybe during the break

23   y'all can talk with Mr. Blackburn and with the

24   Government.  But I tried to -- I think some of those

25   things ought to be done with everybody involved,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8428

 1   because I think those are issues that I think -- I

 2   can't say they weren't discussed up here, but I tried

 3   to keep us on track of focusing on Mr. Davidson's

 4   situation.  And I think most of the other issues

 5   about Mr. Blackburn ought to be done with everybody's

 6   participation.

 7          MR. BURKE:  I understand.  I jumped the

 8   gun.

 9          THE COURT:  No, you didn't jump the gun.  I

10   did try to keep us on-track with focusing here.

11          Mr. Castle.

12          MR. CASTLE:  Yes, Your Honor.  In order for

13   us to be able to participate fully in that issue

14   concerning the conflict, what I would request is that

15   the handwritten notes or any notes that were taken of

16   Mr. Garcia's recent interview with the Government be

17   turned over to defense now.  And also, it sounds like

18   there was a previous time where Mr. Garcia -- I

19   should say which Garcia -- James Garcia -- James

20   Garcia had told the Government that he did not want

21   to cooperate.  That's obviously a Jencks statement

22   also.  If they could turn over those items to us, I

23   think we could more intelligently address conflicts

24   and whether Mr. Garcia is a necessary witness in this

25   case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8429

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 62

```
 1            THE COURT:  Why don't y'all do this:  Why
 2   don't y'all talk to the Government and Mr. Blackburn
 3   during the break.  And then, if we need to, if the
 4   Court needs to start weighing in on those issues,
 5   then I will.
 6            And then also, y'all kind of be prepared
 7   after the break to tell the Court what you want to
 8   take up first.  Otherwise, we'll take up Mr. Billy
 9   Garcia's bad acts.  All right.  Let's be in recess
10   for about 15 minutes.  If you're going to need a
11   little bit more, tell Ms. Bevel, and otherwise, I'd
12   like to -- kind of since we're all down here and our
13   clock is ticking -- I'd like to kind of stay on the
14   motions and get those done, so that we can get as
15   much done before we start trial.  But if you need
16   more time or something, talk to her.  I'm not sure
17   I'll grant it.  But I'll certainly listen.
18            All right.  We'll be in recess for about 15
19   minutes then.
20            (The Court stood in recess.)
21            THE COURT:  All right.  We'll go back on
22   the record.  Is there a candidate for what's next for
23   us to hear, or we just start with Mr. Garcia's bad
24   acts motion?  Do you want to do that one, Mr. Castle?
25            MR. CASTLE:  Yes.  Your Honor.  When we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8430

```
 1    were here last, the week of March 12, this motion
 2    came up, and we were in the midst of doing some
 3    preliminary arguments.  We moved on to other issues.
 4    At that time, the Government indicated that there
 5    were two bad acts that it was relying upon; the first
 6    being a bad act on February 25, 1992, or at least --
 7    I'm not sure they termed it a "bad act" -- they might
 8    have termed it as "enterprise evidence."  And the
 9    second being an event on March 14, 1999.  This
10    morning they've added two more.  But I'd like to
11    address at least the first two that we were advised
12    of as of last March 12.
13              THE COURT:  Do you have -- did you receive
14    a letter from the Government?
15              MR. CASTLE:  Yes, it's attached as Appendix
16    A to our 1308, our Docket 1380.
17              THE COURT:  Okay.  You're going to have to
18    maybe give me a copy of that letter.  In the folder
19    that I brought down with me, I think I didn't bring
20    that down.  So if you've got a copy, or if you can
21    let --
22              THE CLERK:  I can print it, Your Honor.
23              THE COURT:  Or have Ms. Bevel make a copy
24    from yours.  I don't seem to have your letter.
25              MR. CASTLE:  Your Honor, we do not seem to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    have a printout.  Because it's very -- I don't know,

2    if the Court wants, I can read it.

3            THE COURT:  Let me have Ms. Bevel print

4    out -- it's attached to your 1358?

5            MR. CASTLE:  Yes.

6            THE COURT:  1308.  Okay, she'll print it

7    out.  Then if you're going to put it on the screen --

8            MR. CASTLE:  Yes, that would be great, if I

9    could figure out how to do that.  The first one is

10   highlighted in blue, Your Honor.  It's, "On or about

11   February 25, 1992, while in the custody of New Mexico

12   Corrections Department, Billy Garcia threatened a

13   correctional officer."

14           THE COURT:  This is the one we were talking

15   about, whether it was in the timeframe in which there

16   had been kind of a war declared on COs?

17           MR. CASTLE:  I don't know.  That was, I

18   think, in regard to a different defendant.  We never

19   really got into it, so I don't know what their offer

20   of proof would be for the admissibility of this.  Of

21   course, it's 26 years ago and is not in the realm,

22   really, of the focus of this indictment.

23           THE COURT:  I know that.  I don't know the

24   age of Mr. Garcia, but he looks like a little bit of

25   an older gentleman.  Was he alleged to have been a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    member of the SNM Gang at the time, in 1992?

 2              MR. CASTLE:  He was, Your Honor, but if I

 3    could remove my computer for a moment, because I want

 4    to show the Court what this is regarding.  This is

 5    the report we have of it.  And this was a -- some

 6    kind of a disciplinary report that was done right

 7    after that event.  And what it indicates is that

 8    "Mr. Billy Garcia became verbally abusive with an

 9    officer when he was serving chow in V pod by saying,

10    'Get the fuck out of here'" --

11              THE COURT:  Can you point where you're --

12              MR. CASTLE:  I'll do that rather than say

13    the words.

14              THE COURT:  That's all right.  Go ahead.

15              MR. CASTLE:  And the report indicates that

16    "Billy Garcia became abusive due to the fact that

17    Officer McReynolds refused to pass potato chips to

18    Garcia."  It's nothing to do with the SNM.  I've

19    heard many things about the SNM, but I don't know

20    anything about the rules of the SNM having to do with

21    passing potato chips.  So I don't know why they

22    believe this has anything to do with the indictment

23    in this case whatsoever.

24              That's what we have on it, Your Honor.

25              THE COURT:  Why don't we take these one at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8433

1    a time and let me see.  Ms. Armijo, Mr. Castellano,

2    who is going to try to link this up with SNM?

3              MR. CASTELLANO:  Yeah, I think we could,

4    Your Honor.  But I think at this point, we'll just

5    not worry about that one.  I think we have other

6    things we can discuss.  We can forego the 1992

7    conduct.

8              THE COURT:  All right.  So that one is out

9    now?

10             MR. CASTELLANO:  Yes, sir.

11             THE COURT:  Okay.  So it's out.

12             What else do you have, Mr. Castle?

13             MR. CASTLE:  The second one is also

14   highlighted in blue.  It's "On or about March 14,

15   1999" --

16             THE COURT:  I have your letter now, so if

17   you want to tell me where -- which one it is.  March

18   14?

19             MR. CASTLE:  Yes, it's on page 2 of the

20   letter, and it's "On or about March 14, 1999" --

21             THE COURT:  All right.  I see it.

22             MR. CASTLE:  -- "while in the custody of

23   New Mexico Corrections Department, Billy Garcia

24   refused to be restrained or removed from his cell,

25   and chemical agents were used to regain his



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 67

```
 1   compliance."
 2            THE COURT:  What does that mean?  Is that
 3   teargas, something like that?  Is that what they mean
 4   by 'chemical agents'?
 5            MR. CASTLE:  Either that, or I would guess
 6   maybe Mace, or something of that nature.
 7            THE COURT:  Okay.
 8            MR. CASTLE:  Once again, I don't know what
 9   this is about.
10            THE COURT:  Do you have any 302 or prison
11   report on this incident?
12            MR. CASTLE:  I'm going to go back to my --
13   if I can -- we received these documents just a couple
14   of days ago, Judge.  So here is the incident that we
15   were able to see.  I don't know if the Court can see
16   it.  The bright lights aren't on it.  It indicates on
17   March 14, 1999 -- it goes on to indicate that
18   Mr. Garcia refused to comply with directives issued
19   by failing to respond and maintain his position in
20   the cell.  There is nothing about it being in regards
21   to the SNM.  The reason I'm scrolling down --
22            THE COURT:  Can I read a little more?
23            MR. CASTELLANO:  I'm sorry.
24            THE COURT:  I'm not quite fast enough for
25   you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8435

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 68436

```
 1              All right.  Do you want to go ahead and
 2     scroll.
 3              MR. CASTLE:  Your Honor, the person who is
 4     the witness to that is a person by the name of
 5     Stanley Moye, M-O-Y-E.  I do not believe this
 6     individual is even endorsed as a witness.  The reason
 7     the Government is giving us discovery now is because
 8     it was ready for this hearing, but, of course, it
 9     gives us no ability to do any investigation on what
10     happened 19 years ago.  But I would suggest that,
11     given this offer of proof, that there is no
12     connection whatsoever to the SNM at all.  This looks
13     like somebody, for whatever reason, didn't want to
14     come out of their cell, and the guards sprayed them.
15     That's clearly just character evidence designed to
16     make him look obstreperous, obstinate, and difficult,
17     as an inmate 19 years ago.
18              THE COURT:  All right.  Mr. Castellano,
19     anything on this 1999, March 4, incident?
20              MR. CASTELLANO:  Yes, Your Honor.  We are
21     trying to pull up the additional report for evidence
22     on that.  My understanding -- and I'm looking at the
23     report here in a second -- is that other SNM members
24     also engaged in that conduct, so as a show of
25     solidarity with other SNM Gang members, I believe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    including Mario Montoya and Paul Rivera.  That's what

2    I'm checking right now.

3            THE COURT:  Would it have been

4    contemporaneous with this March 4 incident?

5            MR. CASTELLANO:  I believe it would.  But

6    I'm going to pull the report here in a second and

7    verify that.

8            Obviously, to say that an inmate was being

9    difficult, the Court has heard plenty of evidence

10   about SNM Gang members giving the Corrections

11   Department a hard time.  So that was -- actually, the

12   ultimate goal of the SNM was to give them a hard time

13   and also intimidate the corrections officers.

14           Your Honor, one of the reports I'm looking

15   at, I think is a disciplinary report from

16   Mr. Garcia's file.  A number of members of the

17   Penitentiary of New Mexico Emergency Response Team

18   responded to a number of inmates failing to comply

19   with orders.  They covered their cell windows and

20   refused to comply.

21           THE COURT:  Do you think that's all you've

22   got, or do you have any more?

23           MR. CASTELLANO:  The report indicates that

24   at 3:55 in the morning one of the captains began

25   issuing directives to inmates in housing unit 1 B, E

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

8438

```
 1    pod to remove the coverings from their cell doors,
 2    and back up to the cell doors, allowing themselves
 3    to --
 4              THE COURT:  What is the date of this one?
 5              MR. CASTELLANO:  It's the same date, Your
 6    Honor.
 7              THE COURT:  And that is the date, March 14,
 8    the 1999.
 9              MR. CASTELLANO:  Yes.  The report is March
10    14, 1999.
11              MR. CASTLE:  Is there a Bates number?
12              MR. CASTELLANO:  No.  This is the agent's
13    copy from the disciplinary file.
14              MR. CASTLE:  I can't do anything if I don't
15    have a copy of it, or --
16              THE COURT:  Has this one been produced, Mr.
17    Castellano?
18              MR. CASTELLANO:  I have to check, Your
19    Honor, but it should be, the disciplinary files for
20    the defendants have been turned over, so it should be
21    in there, but I will confirm that.  So the process
22    was done on an individual basis.  The inmates refused
23    to comply, and once each inmate was removed, they
24    would move on to the next inmate.  So there were a
25    number of inmates who weren't complying.  And the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8438

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 71439

```
 1    process was continued until all inmates in E pod had
 2    been removed from their cells, and their property
 3    removed.
 4              THE COURT:  Well, at least what he's
 5    reading to me, Mr. Castle, it seems like it's a
 6    coordinated event by the SNM to demonstrate some
 7    power that day.
 8              MR. CASTLE:  I didn't hear him say anything
 9    about the SNM.  It sounds like --
10              THE COURT:  He said a captain.  I assume --
11    is that a captain of SNM, or is that a captain of the
12    Corrections Department?
13              MR. CASTELLANO:  The captain was from the
14    Corrections Department.  But other members mentioned
15    are Paul Rivera, who was an SNM member; Mario
16    Montoya, who is an SNM member; Shawn Ural, who was an
17    SNM member; Billy Garcia, who is; Joe Martinez, who
18    was an SNM member.  And some of the other names I
19    don't recognize, but there are 11 names mentioned as
20    present and/or having witnessed the event.
21              THE COURT:  How many of the people that
22    participated in this demonstration, or of that 11 are
23    SNM identified members?
24              MR. CASTELLANO:  At least six, Your Honor.
25    And two of those witnesses are witnesses for the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8439

 1   upcoming trial, those being Paul Rivera and Mario

 2   Montoya.

 3            THE COURT:  Well, seems like that's enough.

 4   What do you think, Mr. Castle?

 5            MR. CASTLE:  Your Honor, when Your Honor

 6   entered the courtroom, all of us rose.  The majority

 7   of us were defense lawyers.  That doesn't mean that

 8   it's a coordinated effort of all the defense lawyers.

 9            And so it sounds like half of them were SNM

10   members, half weren't.  This sounds to me like a

11   number of inmates trying to show the corrections

12   officers that they're upset about something.

13            But the reason I have this on the screen is

14   this is the superseding indictment.  They have not

15   alleged as part of the indictment that the SNM used

16   intimidation of guards in any fashion other than to

17   prevent law enforcement officers from identifying

18   offenders, apprehending offenders, or successfully

19   prosecuting and punishing offenders.

20            So what they're trying to do is go outside

21   indictment, which is why it's a bad act.  And all

22   they're trying to do is say:  These are bad guys,

23   they did some bad things, they caused problems, and

24   jury, why don't you lock them up forever.

25            That's exactly 404(b) evidence.  And they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   alleged this indictment extremely broad.  They did

2   not allege that the SNM had, as part of its plan, to

3   just upset guards and intimidate guards by, I guess,

4   refusing to come out of their cells.

5           THE COURT:  Well, I think I've certainly

6   heard over the last few months the testimony to that

7   effect at various times.  So I'll overrule the

8   objection to this incident and allow testimony.  I

9   think there is enough SNM members participating that

10  it is a reasonable inference that it was motivated,

11  at least in part, to maintain or advance positions of

12  the SNM members.

13          Did you have another one in that, or was

14  there one more?

15          MR. CASTLE:  They told me about a third one

16  today.

17          THE COURT:  Is this still in the letter?

18          MR. CASTLE:  It is in the letter.  It says

19  "On or between 1993 to 1998, Billy Garcia sponsored

20  the admission of several people into the SNM."  I

21  believe that, given the scope of the indictment and

22  this Court's previous rulings, that that kind of

23  evidence would come in, as long as an appropriate

24  foundation is laid that they had personal knowledge

25  of that.  And so that's the only record I'm making.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8441

```
 1              THE COURT:  All right.  So with your
 2    reservation of those objections, which we'll have to
 3    handle as the evidence comes in, I'll permit the
 4    Government to offer that evidence.
 5              Does that take care of your motion then,
 6    Mr. Castle?
 7              MR. CASTLE:  No, Your Honor.  There is one
 8    more.  This morning, for the first time, the
 9    Government indicated to myself --
10              THE COURT:  And this is not going to be in
11    the letter?
12              MR. CASTLE:  No.
13              THE COURT:  Okay.
14              MR. CASTLE:  -- that they were going to try
15    to bring in evidence concerning the 1990 murder of an
16    individual by the name of Bobby Ortega.  And the
17    allegation is that Mr. Garcia ordered it, is what I
18    was told.
19              THE COURT:  Tell me a little bit about
20    Mr. Garcia.  Is he alleged to have been a leader of
21    the SNM Gang?
22              MR. CASTLE:  I believe that at that time he
23    was alleged to have been a leader.  I think their
24    arguments -- the few minutes I've had since they
25    announced this, I went back and looked at Mr. Robert
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8442

1  Lovato -- who is the source of this information --

2  his statement.  And what Mr. Lovato says is that

3  Mr. Garcia ordered the hit of Mr. Ortega; that others

4  carried it out in a different facility, and killed

5  Mr. Ortega.

6          I have a number of problems with that.

7  First of all, on April 5th of 2017, ironically almost

8  a year ago today, we filed our motion requesting

9  disclosure of bad acts because of the very fact that

10  we needed to investigate and prepare, in the event

11  that we had to face it.  And we did it broadly.  We

12  said it was not just bad acts, but it was also res

13  gestae.

14          Because if the Government was going to

15  bring it in, as part of the enterprise evidence,

16  number one, we had a greater need to defend against

17  it, but number two, they had a greater need, under

18  Rule 16, under Giglio and Brady, to provide

19  information to us, because it's part of the elements

20  of the offense and it's going to be part of the

21  presentation of the elements of the offense.  They

22  have that duty.

23          On May 22, they gave us their notice and

24  it's right before the Court.  And the letter was

25  dated May 22, did not include the Ortega murder.  We

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8443

1    responded on October 10th.  And now, today, we find

2    out about this.

3           In the few minutes that I have had to

4    review that, what I can tell the Court is this:

5    Number one, we don't have any of the discovery from

6    that murder.  It was prosecuted.  People were

7    convicted of that murder.  People that aren't Billy

8    Garcia.  Obviously, that prosecution has exculpatory

9    information, because the jury convicted someone other

10   than Mr. Garcia as being involved in it.  And so

11   that's very concerning, if they're going to bring up

12   evidence that's part of the elements of this offense,

13   that being the criminal enterprise element, that they

14   did not go and search and perform their obligations

15   under Brady and Giglio or under Rule 16, for that

16   matter.  We don't have any of the tests done; for

17   example, the autopsy reports, things of that nature,

18   which are required, under Rule 16, to be produced

19   long ago.  So they have not performed their Rule 16

20   functions with regards to this enterprise element act

21   of this Robert Ortega murder.

22          But it even gets worse than that, and I

23   want to show the Court a few pages from discovery

24   that I discovered in the few minutes I've had.  If we

25   could pick up page 645 of discovery.  If we could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8444

```
 1    highlight the portion on Bobby Ortega.  This is a
 2    page of discovery dealing with a confidential
 3    informant, who has not been disclosed to the defense,
 4    indicates Bobby Ortega was killed by other SNM
 5    members, and it was ordered by Angel Munoz.  Nothing
 6    about Billy Garcia.  That's an exculpatory witness
 7    for the defense.  If the Court is going to allow this
 8    late allegation to come in, we're going to need
 9    disclosure of that person so that we can defend
10    against it.
11              THE COURT:  Now, the person you're thinking
12    needs to be disclosed is the person that's giving the
13    FBI this information?
14              MR. CASTLE:  Yes, Your Honor.  And I would
15    just --
16              THE COURT:  And you don't know who that is?
17              MR. CASTLE:  We do not know who that is.
18    But I can tell you that a lot of the people that are
19    involved, my understanding, are no longer alive.
20    Felipe Cordova, who allegedly ordered the murder, has
21    passed away.  Well, that's the one I know of.
22              THE COURT:  So, if I'm reading this
23    correctly, Felipe Cordova, who is now dead, his wife
24    provided evidence that Mr. Ortega was a snitch?
25              MR. CASTLE:  Apparently.  Also Angel Munoz
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8445

```
 1   has passed away as well.
 2            THE COURT:  Oh, is that his situation?
 3            MR. CASTLE:  Yes.  And, Judge, there is 13
 4   of these references that I found in discovery.  So
 5   this is the first one.
 6            THE COURT:  13 that referenced the Ortega
 7   murder?
 8            MR. CASTLE:  Yes, 13 confidential
 9   informants who said other people, people other than
10   Billy Garcia committed the murder, and planned the
11   murder.
12            THE COURT:  So you're saying that it's
13   exculpatory because Mr. Billy Garcia is not listed
14   there?
15            MR. CASTLE:  Exactly.  It's contrary to the
16   theory that Robert Lovato had, not to mention the
17   fact that the Robert Lovato is not part of the
18   conspiracy or the discussions to kill Bobby Ortega.
19   So this witness not only says who actually did the
20   murder, but it also contradicts Robert Lovato.
21            And I'll go to another one.  We could
22   continue for a little while.  But if the Court would
23   like, I could go to another page.
24            THE COURT:  All right.
25            MR. CASTLE:  652.  This is another CHS
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8446

```
 1    confidential informant.
 2            THE COURT:  And do you know the identity of
 3    this one?
 4            MR. CASTLE:  I might have the wrong page
 5    number, Your Honor.  Let's go to a different page,
 6    663.  If we could search for the word Ortega.  It's
 7    at the bottom of the page here.  This indicates that
 8    a different informant stated they overheard Mauricio
 9    Archie Varela discuss the murders, claimed that
10    Juanito Mendez carried the letter from Estancia to
11    Hobbs with the order to kill Bobby Ortega.  And it
12    goes on to the next page.  It details other people
13    that were involved with that murder, not including
14    either Mr. Garcia, Billy Garcia, or Robert Lovato.
15            If we could now go to page 2673.  This says
16    Billy Cordova, I believe, as the Government's
17    witness -- I'm sorry, Felipe Cordova is the one who
18    ordered the hit on Mr. Ortega, and that Juan Mendez
19    carried the note with instructions to kill Ortega.
20            If we could go to page 13863.  This is an
21    FBI report that details information about the murder,
22    and it talks about the fact that this murder is
23    already being prosecuted in Lea County; that an SNM
24    member by the name of Charles Aragon was testifying
25    for the prosecution; that the sources have indicated
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8447

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 80 8448

 1    the hit was ordered by Phillip Cordova; was then

 2    carried out by Juan Mendez, Michael Montoya, and

 3    Ruben Jinojos.

 4           Go to the next page.  And Felix Romo

 5    assisted by holding Ortega down.  And then it goes

 6    on.

 7           I don't know if the Court needs me to go

 8    through all of these.  But the problem here is that

 9    this is trial by ambush.  I've been able to identify

10    13 separate sources that indicate my client didn't

11    have anything to do with this murder.  And they're

12    just winging it in here five days before, or six days

13    before trial, without any discovery, without trial

14    transcripts that show what happened in this other

15    trial.

16           How am I to prepare for this, Your Honor?

17    I have no idea how I'm going to prepare for this.  I

18    don't know how to get these agents in.  I don't know

19    how to find who these CIs are.  And I'm entitled to

20    it if it is considered part of their enterprise

21    evidence, which is what they have told me.

22           THE COURT:  All right.

23           MR. CASTLE:  So I can detail the other

24    pages, or I can file a separate document, which would

25    attach that.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 81

```
 1              THE COURT:  Well, is the other 12 going to
 2     be that you got 302s talking about the -- or some
 3     document talking about the Ortega murder, and it
 4     doesn't list Mr. Garcia?
 5              MR. CASTLE:  Yes.  And it talks about
 6     confidential informants who haven't been disclosed to
 7     the defense, who say that they have evidence that
 8     indicates, number one, Mr. Billy Garcia is not
 9     guilty; and number 2, that Robert Lovato is not
10     telling the truth by saying he's part of it all.  And
11     we have a state prosecution, apparently, I'd like to
12     run down and see whether -- what that's all about.
13              If I could have just a moment, Your Honor?
14              THE COURT:  You may.
15              MR. CASTLE:  Your Honor, I'm sorry, what
16     you're going to hear this week, in the next two days
17     is a lot of us last minute throwing together items
18     that are derailing everyone's preparations for this
19     trial, whether it's a conflict that's raised at the
20     last minute, or a murder that's raised at the last
21     minute.  I'm encouraging the Court to hold the line.
22     We're going to find out in a few minutes that a
23     couple weeks ago another defendant found out they're
24     going to allege five new murders against him as part
25     of the enterprise evidence.  It's going to continue
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8449

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 82

```
 1    to go on, and we're all going to be basically
 2    scrambling to defend against allegations that should
 3    have been made known to all of us many, many months,
 4    if not years ago.
 5              THE COURT:  All right.  Thank you, Mr.
 6    Castle.
 7              Mr. Castellano.
 8              MR. CASTELLANO:  Your Honor, this isn't a
 9    last minute disclosure.  Robert Lovato's Jencks, I
10    believe, was disclosed on January 12, 2018.  And as
11    the Court can see from the documents presented to the
12    Court, this murder was discussed early in the
13    discovery, as early as DeLeon 645.  We're now in the
14    60,000s in terms of Bates numbers.
15              And the fact that Billy Cordova isn't
16    mentioned, he's not excluded by these people; these
17    people don't say Billy Cordova had nothing to do with
18    it -- or Billy Garcia.  They say Phillip Cordova gave
19    the order to Billy Garcia, who passed it on.  And
20    that the difference between these CIs and Robert
21    Lovato, is that Robert Lovato is a trial witness, who
22    will say that he committed the murder, and that Billy
23    Garcia ordered the murder.
24              So this is much like the murder last trial
25    by Mr. Baca, who was S related.  The victim in that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8450

```
 1    case was an SNM member.  Billy Garcia is an SNM

 2    member.  And Robert Ortega -- or Robert Lovato was

 3    also an SNM Gang member.  So this is an SNM hit.

 4    There is other documentation in the case related to

 5    this murder.  So this murder is not new news.  And,

 6    in fact, more than a few months ago, more direct

 7    evidence about that murder was presented to the

 8    defense attorneys.

 9              THE COURT:  On the -- did you say that Mr.

10    Ortega was an SNM Gang member?

11              MR. CASTELLANO:  Yes, he was.

12              THE COURT:  I guess the thing that Mr.

13    Castle is raising the most about is the notice here

14    of the -- under 404(b)(2).  Even if the discovery

15    indicated that he -- that this Lovato 302 was out

16    there, how was Mr. Castle to know that this was going

17    to be an issue in this case, since it's not on the

18    302 letter -- or on the bad acts letter?

19              MR. CASTELLANO:  Well, the bad acts letter,

20    I don't think, can cover every single act in this

21    case.  One of the reasons they ask for bad acts was

22    for purposes of 404(b).  This is evidence which

23    proves the elements in this case.  It's not 404(b).

24    As a matter of fact, all the things we've discussed

25    this morning regarding Mr. Garcia are not 404(b).
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8451

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 84

```
 1    These are just acts that we presented to them.  And I
 2    think what's happened is there has always been
 3    confusion because people refer to these as bad acts.
 4    These aren't bad acts pursuant to 404(b).  These are
 5    racketeering acts.
 6              THE COURT:  Well, we did that, though,
 7    instead of allowing the Government to just decide
 8    whether things were 404(b) or racketeering, to give
 9    the defendants an opportunity to challenge that.
10    This one, I tend to agree with you, is probably going
11    to be more of an enterprise.  But would the
12    Government be willing, or has it already identified
13    all the CHs that are in these 12 302s, or Government
14    documents, that don't list Mr. Garcia, would you be
15    willing to disclose those?
16              MR. CASTELLANO:  Yes, Your Honor.  And if
17    the defense gives us the Bates stamp numbers that can
18    focus us on those pages and those people.  My
19    understanding this morning is that -- and I will
20    confirm this -- that the person in DeLeon 645
21    referred to is likely Leroy Lucero.  So we'll start
22    there.  But, yes, if they point us to those pages, we
23    will look for those pages.  And if we find additional
24    pages, we will also disclose that information.
25              THE COURT:  What about the trial, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8452

```
 1   Ortega trial, what do we know about it?
 2              MR. CASTELLANO:  I know less about the
 3   trial itself.  I know that Robert Lovato was guilty
 4   of that crime.  And there were other people also
 5   implicated in that crime.  So he's been found guilty
 6   of it.  And he will testify to that effect, and he
 7   will testify that Mr. Garcia ordered that hit, or was
 8   one of the people that ordered that hit.
 9              THE COURT:  So Mr. Lovato was convicted.
10   Was he the only one convicted of the Ortega murder?
11              MR. CASTELLANO:  No, I believe there were
12   others, Your Honor.
13              THE COURT:  And this murder occurred in
14   1990?
15              MR. CASTELLANO:  1999.
16              THE COURT:  1999.
17              MR. CASTELLANO:  So two years before the
18   Castillo and Garza murders.  And it's similar in
19   that, once again, Mr. Garcia was not directly
20   involved in the murders, but is alleged to have
21   ordered the murders.  So it's very similar conduct,
22   and it's still racketeering and enterprise evidence.
23              THE COURT:  When do you think that Mr.
24   Lovato is going to show up as a witness for the
25   Government?  Where in this trial?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              MR. CASTELLANO:  We're going to try to

 2     check a quick order here, Your Honor.  If you give me

 3     a moment, I'll try to give you at least a basic

 4     estimate.

 5              THE COURT:  While you're looking for that,

 6     what do you think we're going to find as far as a

 7     1999 trial?  Is the State going to still have those

 8     records?  Is there going to be much still there?

 9     What's your experience with that?

10              MR. CASTELLANO:  I would be somewhat

11     surprised if those documents were still there.  I

12     know from time to time in the Bar Bulletin, not in

13     terms of docket entries, but the courts normally do

14     put out notice that they will be destroying evidence

15     and things of that nature, after a certain number of

16     years.

17              THE COURT:  Was that tried down here in Las

18     Cruces?

19              MR. CASTELLANO:  I think the murder

20     occurred in Hobbs, so it was probably in the eastern

21     part of state.  We can check those records.  We can

22     also see if it's possibly in Mr. Lovato's prison

23     file, see if there are documents in there.

24              THE COURT:  Has Mr. Lovato's prison file

25     been turned over?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8454

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 87

1          MR. CASTELLANO:  Yes.  It should have been

2    disclosed already.  And I'll verify that as well.

3    But the witnesses' disciplinary files, and things of

4    that nature, and pen packs that have actually been

5    created should be -- should have been turned over.

6          THE COURT:  Do you have an approximate

7    estimate as to when he's going to be your witness?

8          MR. CASTELLANO:  Right now I'm checking the

9    tentative order right now, Your Honor.

10          Your Honor, we could probably put him on in

11    possibly the third week of trial.  Maybe later.  That

12    would give us an additional three weeks before the

13    defense sees him.

14          THE COURT:  Would you also agree not to

15    mention him in openings or this murder for a while?

16          MR. CASTELLANO:  We would, Your Honor.  We

17    could exclude that from opening statement.  That way,

18    the jury would not have heard anything until the

19    Court has more time to digest it.

20          THE COURT:  All right.  I guess, Mr.

21    Castle, I tend to agree, this probably -- I know

22    we've got the 404(b) list, and we know why we came up

23    with that list.  But it sounds to me like it's

24    enterprise and racketeering activity, or activity in

25    advancing the enterprise.  And you are going to get

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 88456

```
 1    names of the CHs; you're going to have some time to
 2    explore it.  The trial file is equally available to
 3    both of you.  And the Government is going to give you
 4    what they do have.  It seems like there is not much I
 5    can do on this.  It's not something that necessarily
 6    should have been disclosed.  If you come across
 7    something that indicates otherwise, then it will give
 8    us some time to digest it.
 9              MR. CASTLE:  Your Honor, it absolutely is.
10    Because if it's part of the enterprise evidence, it's
11    part of evidence they're going to use at trial, Rule
12    16 indicates the Government must permit defendant to
13    inspect and/or to copy papers, documents, et cetera,
14    that's in the Government's possession or control, if
15    it's going to be material to preparing the defense or
16    intends to use it in their case-in-chief at trial.
17    How do you prove a murder without --
18              THE COURT:  What do you think they have
19    that they haven't disclosed yet?
20              MR. CASTLE:  Everything about the murder.
21    Everything.  Other than a couple of CIs that said
22    different people committed the murder, I have
23    nothing.
24              THE COURT:  But what is it that you think
25    they have?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8456

1          MR. CASTLE:  I'm sure they have a dead

2     body.  I'm sure they have an autopsy report.  I'm

3     sure they did fingerprints, DNA, and all the kinds of

4     things that normally happen in a homicide case that

5     are required to be done by Rule 16.  They have to

6     have some examinations and tests that are required by

7     Rule 16, or they should have had.  This is no

8     different than the exact murders that Mr. Garcia is

9     charged with.  It's part of elements of the offense.

10    And they're putting this on, and they haven't

11    disclosed it.

12         THE COURT:  Well, isn't the only thing they

13    have is Mr. Lovato testifying that Mr. Garcia ordered

14    the hit.  And the rest would be, most likely, in the

15    State's possession, would it not?

16         MR. CASTLE:  Yes.  But they have an

17    obligation, not only under Rule 16, but under the

18    Constitution to look for exculpatory information

19    concerning the allegations that they're alleging

20    against my client.  They have not represented here at

21    all today that they've looked for and disclosed

22    exculpatory information concerning the Ortega murder.

23    I've noticed that.  They purposely avoided that.

24    They have not said that they have fulfilled any of

25    their constitutional obligations in regards to that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   So even if it's not in their possession, they have an

2   obligation to go and get it.

3           THE COURT:  Well, really?  I mean, if it's

4   in the possession of the State -- I guess I have

5   looked at these Rule 16 and Brady and Giglio many

6   times, and I don't recall it putting a burden on the

7   Government to go to other state agencies and find

8   that material.

9           MR. CASTLE:  Well, then I guess they can't

10  call any of them as witnesses.  You know, if they're

11  not going to put on a pathologist, which I noticed

12  there is no pathologist that I know of that is listed

13  on their will call list concerning the death of Mr.

14  Ortega.  None of the people, other than Mr. Lovato,

15  who were apparently involved in that, are listed.

16          This is trial by ambush, Judge.  I don't

17  know how else to do it.  And I can't even do an

18  interview with a single one of these people in the

19  five days left.  I'm going to be giving them a list

20  of CIs.  They're going to tell me where they are.

21  And we're going to have to go wing it?

22          And I have a right to make an opening

23  statement that covers what's being alleged against my

24  client.  They may refrain from it.  But I have a

25  right.  My client's going to have to face an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  allegation of another murder, and I don't say

2  anything for the jury at all about it, then I'm

3  hiding from it.  And the jury is going to know that.

4  Why didn't you talk about Mr. Ortega?  You know,

5  that's what's going to go through their mind.  Why

6  didn't you talk about it?  And I can't talk about it

7  because I don't know anything really about it.

8          I looked through Mr. Lovato's disciplinary

9  history, okay?  It doesn't have the records that

10  they're talking about.  And perhaps they can show it

11  here on the screen.  I haven't had that much time.

12  Literally, this is the morning -- right before the

13  morning break I'm being told to defend a murder

14  allegation.  I don't know how anybody can say that's

15  fair, Your Honor.

16          And it is being used to prove an element of

17  the offense.  So it is the same as the other aspects

18  of the indictment, including the allegations in 2001.

19  And if they were to have said to you, Your Honor, I

20  am now telling you on five days before trial, that

21  the 2001 murders, that was investigated by the State,

22  and we didn't turn over anything, we haven't given

23  them the autopsy reports.  We haven't given them any

24  physical evidence.  We haven't even let them go look

25  at any of the physical evidence, because they didn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8459

```
 1   know about it, if they were to say that, I would
 2   think this Court would be issuing sanctions and have
 3   problems.  It is the same as any other element.  And
 4   they have the obligations under Rule 16 and the
 5   Constitution to seek out and present this information
 6   to us.
 7           I would tell the Court right now that I
 8   showed the Court one document.  I believe the witness
 9   that we showed the Court at 13863, Charles Aragon,
10   who testified for the prosecution, in the prosecution
11   of, I believe it was Phillip Cordova; apparently it's
12   now also Mr. Lovato.  We don't have his statements.
13           And I would note the Court can look at
14   this -- if you could switch back to the overhead.
15   The Court has found that where the federal government
16   has worked with state officials, that they have an
17   obligation to disclose.  This is -- I'm going to
18   scroll to the top -- this is an FBI report with Trent
19   Pedersen, back in 2001, where they were dealing with
20   these homicides.  And the reason I'm showing this
21   Court is we read this, and they talk about -- I
22   apologize, I'm scrolling too fast -- they talk about
23   Rolando and Frank Castillo homicide.  So we're on
24   notice.  We read about it.  We defend against it.
25           Then we go down to Bobby Ortega.  Nothing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8460

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 93

1    is mentioned about Billy Garcia.  But the FBI here,

2    this is part of their investigation, they're looking

3    at all the murders, including the Bobby Ortega

4    murder.  So it's a joint task force -- the Court had

5    heard evidence, on a joint task force of state and

6    federal officials looking into the SNM and their

7    activities.  So that's where this comes up.

8            We don't have any reports of Charles

9    Aragon's statement.  We don't have any documents.  So

10   I believe this Court had indicated in early parts of

11   this case that it was extending the Government's

12   obligations to those state officials that it was

13   working with in these joint matters.  And there was a

14   joint task force.  So their obligations did extend to

15   this.

16           THE COURT:  Well, I certainly said that

17   about the Corrections Department.  And then about

18   task forces, I believe the Government is

19   participating in those and has an obligation to go

20   look and search those as well.  Just me reading this

21   right here is suggesting that it's being prosecuted

22   by state authorities, I'm not sure that there is in

23   anything that's really -- the federal government is

24   involved in that prosecution.

25           MR. CASTLE:  I would point out that the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8461

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 94

 1   federal government is corrections sources that are

 2   advising them about the Ortega murder.  So that

 3   murder apparently happened inside the Corrections

 4   Department.  And the fact that the State may have

 5   also prosecuted it, doesn't change the fact that it

 6   was -- that the FBI was working with State

 7   corrections and the State Corrections has provided

 8   information concerning that hit.

 9           Like I said, I'm winging this, Judge.  I

10   don't have the documents.

11           THE COURT:  Let me ask Mr. Castellano.  I

12   mean, I certainly think -- and I think you would

13   agree -- that the obligation is to look for evidence

14   that the federal government possesses, no matter what

15   federal government agency has it.  And I think I've

16   already said the obligation doesn't extend to going

17   out and searching for additional evidence outside of

18   its possession.  Then we came up with these rules for

19   the Corrections Department and some of the task

20   forces.

21           Is there anything else that you need to go

22   look for from any federal government agency,

23   Corrections Department, or task force, that's going

24   to have any information about the Ortega murder that

25   you haven't already looked at and produced?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 95463

 1          MR. CASTELLANO:  Not that I can think of,

 2     Your Honor.

 3          And Mr. Castle has made a point this

 4     morning with the other documents he already has in

 5     his possession.  So those are documents, some of them

 6     from the Corrections Department and other sources,

 7     that provide him impeachment information that he

 8     already needs.  So that would be considered

 9     impeachment, and possibly Brady or Giglio

10     information.  He's already highlighted that for the

11     Court this morning.  He already has that in his

12     possession, and those have already been disclosed to

13     him.

14          So in terms of us getting the records and

15     things of that nature from the Corrections

16     Department, he has those.  He showed those to the

17     Court this morning.

18          THE COURT:  Well, I just remind you of your

19     obligations.  If it's a federal government agency or

20     if it's in the Corrections Department or a joint task

21     force, you've got to look at it with the Rule 16,

22     Brady-Giglio on.  And if you say you've already done

23     that and produced everything, then I'll have to take

24     your word for it.  But you really might want to use

25     this additional time to double-check, and make sure

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8463

```
 1    something doesn't pop up.  And you made some

 2    representations about what you'll do to give

 3    additional information today.

 4              MR. CASTELLANO:  And I agree, Your Honor.

 5    And I don't want anyone to be surprised by additional

 6    information.  So we will make use of that time to

 7    make additional inquiries.  But like I said, Mr.

 8    Castle has documents in his possession, indicating

 9    they've already been disclosed.

10              THE COURT:  And is about all your proof

11    going to be is you're just going to put Mr. Lovato

12    on, that's about it?  No forensics?  No pathologist,

13    or anything like that?  It's just going to be

14    Mr. Lovato?

15              MR. CASTELLANO:  That's correct, Your

16    Honor.  And probably his judgment related to that

17    conviction.

18              THE COURT:  Oh, yeah, okay.  And I guess,

19    as far as the opening statements, you know, the

20    Government is somewhat gagged.  I mean, you can

21    wait -- I know you probably don't want to, given what

22    you told me earlier -- wait to do your opening.  But

23    it seems to me you know what they're going to say.

24    You may not know exactly everything you want to say,

25    but you know what they're going to say at trial about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8464

```
 1    this murder.
 2              MR. CASTLE:  Yes, Your Honor.  I'll address
 3    that.  But I also want to show the Court another
 4    matter.
 5              I have a right in my opening statement to
 6    say what I believe my case will be.  I won't be able
 7    to do that regarding that murder, because I will not
 8    be in a position where I can, in any manner, make any
 9    representations about what evidence we'll put on or
10    not put on, concerning that murder.  I will not be in
11    that position.
12              So the reason we're here is not because of
13    anything we did wrong, because the Government hasn't
14    turned over.
15              They told you just a few minutes ago that
16    those materials were likely all in Mr. Lovato's
17    corrections file.  I'm showing on the screen Mr.
18    Lovato's corrections file that we were given.  It's
19    15 pages long, 15.  And it mentions nothing about
20    this murder at all.  And I can scroll through it.
21    But it starts at page 25699.  And there are the
22    offenses, adjustment history.  Nothing about killing
23    anybody.  That's it, Judge.  Scroll through it, they
24    have some discussion about these mild "refusing
25    lawful orders," or using bad words, and things like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8465

```
 1   that.  Nothing about the Montoya (sic) murder.

 2             THE COURT:  Ortega.

 3             MR. CASTLE:  Sorry.  Ortega murder.

 4             THE COURT:  But I guess I'm struggling to

 5   see what the Government has done wrong.  I mean, I

 6   guess that's where I'm not getting the connection is,

 7   I'm not seeing that they've done anything wrong.

 8             MR. CASTLE:  They haven't told us that they

 9   have looked for any exculpatory information

10   concerning that murder and turned it over for the

11   defense.

12             THE COURT:  Well, I guess I thought that

13   was the representation I got from Mr. Castellano.

14   Isn't it, Mr. Castellano?

15             MR. CASTELLANO:  Yes, Your Honor.  I

16   indicated that Mr. Castle has documents, which he

17   showed to the Court this morning, indicating that he

18   could impeach Mr. Lovato by the fact that Mr. Garcia

19   is not mentioned by other people.  So there is

20   evidence he already has in his possession.  And we

21   will make additional inquiries, but like I said, he's

22   actually highlighted to the Court documents which

23   don't mention his client.  And those were disclosed

24   by the Government.

25             THE COURT:  And I guess if something pops
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8466

```
 1   up, I'll have to reevaluate this.  But right at the
 2   moment, I'm just not seeing what the Government has
 3   done wrong.
 4         MR. CASTLE:  He carefully worded that, Your
 5   Honor.  He didn't answer your question.  He didn't
 6   answer whether they looked for exculpatory
 7   information.  He just said there has been some
 8   inculpatory information that has been disclosed.
 9   He's not said that they looked for it.
10         THE COURT:  Let me put it in my words.
11   He's just disclosed everything, so that there is not
12   anything more to kind of go look at.  Am I doing
13   it -- am I saying it right?
14         MR. CASTELLANO:  That's correct, Your
15   Honor.  If we had it, we disclosed it.  That's why we
16   have over 60,000 pages of discovery in this case.
17         MR. CASTLE:  They have an obligation to go
18   out and locate and produce exculpatory information.
19   Not just what is in their possession.  They have an
20   obligation to obtain it and to distribute it.  And if
21   they're going to allege in a federal indictment of
22   other crimes, such as a murder, they have an
23   obligation under Rule 16 to give us materials.
24         Also, I -- maybe I'm the one that's not
25   understanding.  But they haven't given us anything
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8467

```
 1    but a few snippets from CIs that haven't been
 2    disclosed.  I mean, the fact that they haven't
 3    disclosed it up until five days before trial, in and
 4    of itself, is a violation, because they know that if
 5    they have a CI that provides exculpatory information
 6    to a defendant, they have an obligation to turn that
 7    information over to the defense under the Roviaro
 8    decision.  They haven't done that.  And they waited
 9    so that we will be prejudiced.
10         THE COURT:  Let's do this:  You're going to
11    get all the names of the CIs, but it seems to me
12    they've all been disclosed.  I could be wrong.  There
13    may be some they haven't disclosed.  And if that's
14    the case, we'll reevaluate it.
15         MR. CASTLE:  What's interesting is they
16    gave the Court one example, which is page 645, and
17    said that was Leroy Lucero.  We have a letter from
18    the Government that was distributed to all
19    defendants, that Trial 1 relied on, and all of these
20    defendants relied on, which indicates which pages
21    relate to which informants.  And 645 is not indicated
22    as Leroy Lucero.  So now we have a new statement by
23    Leroy Lucero, supposedly.  I'm not sure it is Leroy
24    Lucero.  But we'll have to take a look at that.  But
25    once again, that's another problem.  So I'm not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8468

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 101

1    accepting that representation, that all these people

2    have been disclosed, because when I went through

3    those page numbers in the 13, the only reason I

4    brought them up is because I quickly indexed it

5    against their disclosure.  And all those 13 people,

6    page numbers are not referenced in their CI

7    disclosure document.  So these are all people that

8    have never been disclosed.  Now, they might be

9    duplicates.  I don't know.  I didn't have time to go

10   through and analyze it.

11           But I could tell the Court we're definitely

12   in a situation where they have not disclosed

13   exculpatory information.  And frankly, I'm going to

14   probably run this stuff down.  Some of these people

15   might be dead, and we'll have to file another motion

16   to dismiss, and have the Court hear it again in the

17   midst of this hearing, in the midst of the trial.

18           THE COURT:  All right.  Well, for the time

19   being, I won't pretrial exclude it.  You'll need to

20   probably do some work on this, and the Government has

21   got some work it needs to do.  And then I'll just

22   have to reevaluate it depending on what shows up.  At

23   least at the present time, I'm not seeing any reason,

24   sound reason, to exclude it from trial.

25           MR. CASTLE:  Your Honor, I'd be remiss if I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8469

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102

```
 1    didn't at this point in time move for a continuance
 2    because of our inability to represent and defend our
 3    client on one of the three murders that are being
 4    alleged in this case, the third of which was alleged
 5    for the first time today.  So we are moving for a
 6    continuance so we can prepare for trial.
 7              THE COURT:  All right.  Thank you, Mr.
 8    Castle.  I won't grant that at the present time, but
 9    I'll deny it without prejudice to being renewed.
10              All right.  So what I have next to go to is
11    what has been, I think on our charts, marked as
12    number 17, which is the -- Mr. Arturo Garcia's
13    alleged bad acts.  Mr. Blackburn --
14              MR. BLACKBURN:  Judge, I spoke to the
15    Government.  Could we ask that you move that down for
16    a little bit?
17              THE COURT:  All right.  Is that all right
18    with everybody?  Are y'all going to talk about it
19    some more, is that --
20              MR. BLACKBURN:  Yes, amongst other things,
21    obviously.
22              THE COURT:  All right.  So we'll move that
23    down.
24              So then the next one I have is Christopher
25    Chavez' bad acts.  Where are we on that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8470

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103

```
 1              MR. GRANBERG:  Your Honor, we had discussed
 2   this at the last hearing.
 3              THE COURT:  And my pages are all marked up.
 4   Do you think we've covered everything?
 5              MR. GRANBERG:  I thought we did, Your
 6   Honor.
 7              MS. ARMIJO:  Yes, Your Honor.  You ruled on
 8   everything as to that.
 9              THE COURT:  All right.  Some stuff was just
10   given back to me because Ms. Wild may not have known.
11   But I'm looking at Document 1531-1.  I have pretty
12   extensive notes on there.  I recall the colloquy that
13   we had with each other.
14              All right.  So then I'll go to Mr. Joe
15   Gallegos' motion in limine on 404(b).  Where are we
16   on that one?  I don't see this sort of marked up
17   notes on that one that I had.
18              MS. ARMIJO:  Your Honor, I believe while
19   Mr. Benjamin is going up, we did meet in person and
20   discussed this one, and said we've narrowed it down,
21   and we can go over all of that.  There are a few
22   discrete acts.
23              THE COURT:  Okay.
24              MS. ARMIJO:  I think we knocked out
25   everything on the first page.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Let me pull the page up.  All
 2    right.  So this is your letter of May 22, 2017, so
 3    everything on the first page is out?
 4              MS. ARMIJO:  Correct, Your Honor.
 5              THE COURT:  All right.
 6              MS. ARMIJO:  Then I believe the first one
 7    would be the March of 1995.
 8              THE COURT:  Okay.  So the very first one at
 9    the top of the page is in?
10              MS. ARMIJO:  Correct.
11              THE COURT:  All right.
12              MS. ARMIJO:  It's the "Joe Gallegos
13    participated in recorded telephone calls with Rosanne
14    Perea regarding drugs."
15              THE COURT:  All right.  We've done this a
16    little bit with different -- we've done this with
17    different defendants.  I assume the purpose of this
18    is to establish that Mr. Joe Gallegos does drugs,
19    which is something that has been important for your
20    proof as to activities that the SNM Gang does?
21              MS. ARMIJO:  Correct, Your Honor.  And what
22    I was going to say -- I think we discussed it with
23    other defendants in general -- is that we will have
24    several cooperators coming in and testifying as to
25    Mr. Gallegos, either providing him drugs or being
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    involved in drugs.  This particular one I believe is

2    a call, and that's why we have it in particular.  But

3    we have numerous witnesses that would come in and

4    testify to that extent.  And so I guess we would just

5    ask that we would do that as well.

6           And if it became -- I believe with the last

7    one, which may have been Mr. Chavez, I'm not really

8    sure -- but the Court had indicated that if, you

9    know, we felt it was being cumulative, or you know,

10   just too much information, then the Court would

11   consider at that time limiting it.  But we certainly

12   do have witnesses that would be testifying as to when

13   they were incarcerated with Mr. Gallegos, his drug

14   activities.

15          THE COURT:  Yeah.  Just looking through

16   this list, it looks like a lot of them are drug

17   activities.  I'm wondering if rather than trying to

18   prove particular ones, like the March 1995, or the

19   August 4, 1995, or -- my eyes are just going down the

20   list -- October 15, 2000, October 15, 2000, February

21   27, 2001 -- if the Government were to just put that

22   in, put that evidence in, you didn't contest that he

23   was a drug user involved in drug trafficking in and

24   out, could we maybe then dispense with all the

25   individual incidents?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8473

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 106

```
 1                    MR. BENJAMIN:  I think that's one option,
 2     Your Honor.  My concern is that, as of 2005, the New
 3     Mexico Department of Corrections lists Joe Gallegos
 4     as a nonvalidated member of the SNM.
 5                    And so I think it comes -- the reliance on
 6     all the drug use and everything needs a foundation
 7     first.  I'm not willing to just agree that they get
 8     to use drug evidence for character evidence or such
 9     prior to them establishing that Mr. Gallegos is an
10     SNM member.
11                    THE COURT:  Do they have him validated
12     after 2005?
13                    MR. BENJAMIN:  No, Your Honor.
14                    THE COURT:  Do they have him validated
15     before 2005?
16                    MR. BENJAMIN:  No, Your Honor.  They're
17     going to have somebody come in, I believe, and say
18     that Mr. Gallegos is an SNM member, or some such.  I
19     guess the issue becomes what that date is.
20                    THE COURT:  Let me ask Ms. Armijo:  What
21     would be your starting point for proof that Mr.
22     Gallegos was part of the SNM Gang?
23                    MS. ARMIJO:  Well, he certainly was part of
24     the SNM Gang on or before 2001.  I'd have to go back
25     and look at my notes to see what different witnesses
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8474

1  would say.  But we do have witnesses that will say he

2  is an SNM Gang member, and his first murder did occur

3  in 2001.  So at least as of that time he was.  And

4  I'd have to go back and -- yes, as we know from the

5  last trial, Mr. Sanchez was not a validated gang

6  member.  We had lots of testimony as to him being a

7  leader in the gang.  So this is somewhat analogous to

8  that.  We have numerous people who will put him as an

9  SNM Gang member.

10        THE COURT:  I guess this is what I would

11  propose to do is -- it kind of depends on your

12  strategy, how you want to attack these people.  If

13  you're not going to really attack them on the fact

14  that he's bringing in drugs and those sort of things,

15  then I would probably resist the Government bringing

16  in specific instances.  We don't need them.  If he's

17  a drug user, and he's used drugs and he brings in

18  drugs and traffics in them, then we don't need to

19  have specific instances.

20        On the other hand, if that's going to be a

21  focal point -- and then, as far as the Government is

22  concerned, they're going to have to establish if

23  they're going to go the 404(b) -- I'll call it

24  that -- although, I think these are a little bit

25  different -- we're going to go that route, then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108 8476

```
 1    they're going to have to establish when they're going
 2    to say he was a member of the SNM Gang.  And probably
 3    drug use, or 404(b) activity before that date would
 4    not be in.  And that afterwards, then it would, I
 5    would probably allow it in.  Does that make sense?
 6                MR. BENJAMIN:  It does, Your Honor.  And I
 7    don't think it will be a surprise, there is going to
 8    be testimony regarding Mr. Gallegos' drug use
 9    specifically in the Burns murder.  But so -- I don't
10    have an issue with that.
11                What I do have an issue is just the
12    glossing over of everything and alleging that
13    everything is -- and that was the way that I
14    understood the Government was going to try to do it,
15    all these acts, because they're drugs are therefore
16    SNM connected.  So I think what the Court is
17    proposing is certainly fine.  Once the Government has
18    put somebody on that talks about SNM, and
19    specifically regarding Joe.
20                THE COURT:  As a starting point.
21                MR. BENJAMIN:  Yes, Your Honor.
22                THE COURT:  Can you live with that, Ms.
23    Armijo?
24                MS. ARMIJO:  Yes, Your Honor.  I think
25    that's the way we've been operating, and that's the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8476

 1    way we plan on operating.

 2              THE COURT:  Okay.  So I won't necessarily

 3    preclude these.  But approach the bench before you

 4    try to get in the specific acts of drug use.  And,

 5    otherwise, we'll see if it works out as it has with

 6    other defendants.  And if it does, then I won't

 7    allow, then, specific instances other than what is

 8    necessary for the 2001 alleged murders.

 9              MR. BENJAMIN:  I'll preserve the objection

10    at that time, Your Honor.

11              THE COURT:  Okay.

12              MR. BENJAMIN:  Two concerns that I have, I

13    think -- and Ms. Armijo didn't, I believe, whittle

14    this down immensely -- but the next one, if the Court

15    would go to the second page, "On or about December 8,

16    1996, Joe Gallegos bribed and intimidated a witness."

17              THE COURT:  All right.  So the next three

18    are out; is that correct, Ms. Armijo?

19              MS. ARMIJO:  Yes, Your Honor.

20              THE COURT:  All right.  So we're now at "On

21    or about December 8, 1996?"

22              MR. BENJAMIN:  Yes, Your Honor.  And Your

23    Honor, I have a judgment for that, I've talked to my

24    client about that.  I don't think that this is, once

25    again, there is not going to be any foundation to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8477

1  show that this is an SNM act, other than their

2  general idea that any violent crime is an SNM act.

3  Because this involved a family member.

4         So there is going to be -- I think, in

5  doing the research now, there is going to be an issue

6  regarding whether that's an act that involves a

7  family member, or whether it's an issue regarding the

8  SNM Gang.  And I think that they're going to have an

9  extremely high burden -- and this was something that

10  happened in El Paso -- where they're trying to link

11  gang members in separate acts based upon gang members

12  versus bad acts that occurred between -- in support

13  of a family member.  Did I make sense with that, Your

14  Honor?  It sounded like I was talking in circles.

15         THE COURT:  I think I understand what

16  you're saying.  I think we've seen this issue before.

17  So let me see what Ms. Armijo has to link this with

18  the SNM enterprise.  Is that your point?

19         MR. BENJAMIN:  Yes, Your Honor, versus

20  familial.

21         THE COURT:  Just a family dispute.

22         MS. ARMIJO:  And Your Honor, as to this

23  specific incident, I don't know that we would say

24  necessarily this incident is -- if it's family,

25  necessarily that it is SNM.  But if it is an SNM, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8478

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113479

```
 1   will say that it's 404(b) in particular, given the

 2   fact that he's charged with witness intimidation.

 3   That's one of the charges that he's facing in regard

 4   to Jose Gomez.  And so to that extent, it might be

 5   relevant to that.

 6               MR. BENJAMIN:  And I would come back -- and

 7   the Court can guess -- that would be extremely

 8   prejudicial to use a 1996 act to support what would

 9   be described as a very weak witness intimidation act.

10               THE COURT:  Yeah.  I'd be a little

11   concerned just about the distance.

12               MS. ARMIJO:  And Your Honor, at this time,

13   why don't we -- can we just hold this one in

14   abeyance?

15               THE COURT:  Well, I think that's probably

16   what I'm going to say is, unless you're able to link

17   it up more strongly with SNM, I'll probably keep it

18   out.  I won't -- I'll do it without prejudice, that

19   if you can show me some better link.  But if it's

20   just a family member -- and I tend to agree with Mr.

21   Benjamin, that if it's going to be right on point

22   here, it really does begin to be the most prejudicial

23   kind of evidence.  So I'd be inclined to keep that

24   one out.

25               MS. ARMIJO:  All right, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Agreed.

 2              MR. BENJAMIN:  Your Honor, and as I said,

 3    Ms. Armijo pared this list down.

 4              The next one was a drug one, "On or about

 5    March 19, 1997," introducing heroin, and so I think

 6    that we can move -- go with that, and the Court --

 7              THE COURT:  Okay.  January 16, the next one

 8    is out, and then the next one that's in, March 19, we

 9    can treat it like the other drugs?

10              MR. BENJAMIN:  Yes, Your Honor.

11              THE COURT:  Does that work for you?

12              MS. ARMIJO:  Yes, Your Honor.

13              THE COURT:  All right.

14              MR. BENJAMIN:  April 14, 1997, I was going

15    to list them, because there is quite a few between

16    the next one that they're proposing, which is another

17    drug offense, Your Honor.  But April 14, 1997, May

18    22, 1998, April 6, 1999, July 23, 1999, October 15,

19    2000, and October 15, 2000 are all out.

20              February 27, 2001 is a drug one, and we've

21    just essentially asked, like the Court had proposed,

22    to approach, and determine where we are in evidence

23    at that point in time.

24              THE COURT:  Okay.  Was the -- I'm sorry,

25    was the April 14, 1997, were we going to treat it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8480

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 113481

 1    like we were the other drugs, or was it just totally

 2    out?

 3              MR. BENJAMIN:  That was out, Your Honor, is

 4    what Ms. Armijo told me.

 5              MS. ARMIJO:  Well, Your Honor, I think it's

 6    out, like we're not planning on bringing in the

 7    urinalysis test.

 8              THE COURT:  So we're going to treat it like

 9    a drug offense?

10              MS. ARMIJO:  Correct.  I think that, in

11    general, all the drug offenses, as long as we're

12    allowed to, we're planning on doing like we did with

13    the other cases, and as we mentioned before.  So to

14    the extent that there is individual things, we're not

15    planning on presenting it.

16              THE COURT:  Okay.

17              MS. ARMIJO:  Anything listed here, I think

18    we could, in general, do that.  And if for any reason

19    that changes, we, of course, would approach the

20    bench.  But that's how we would plan to proceed with

21    drug usage.

22              MR. BENJAMIN:  And, Your Honor, my

23    objection would be usage is not a RICO Act.  And so

24    there are enumerated acts under the RICO.  And

25    conspiracy to transport I know is one, but possession

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8481

```
 1    is not, or use is not.  And so --

 2            THE COURT:  I think it's probably going to

 3    be out.  But it kind of depends on what you argue.  I

 4    mean, if you surprise Ms. Armijo and say he never

 5    used drugs, then --

 6            MR. BENJAMIN:  I can promise the Court that

 7    that won't come up.

 8            THE COURT:  So it's probably out.  The May

 9    22, 1998 is out; is that correct, Ms. Armijo?  April

10    6 is out.  July 23 is out.  October 15 is out.  Then

11    the next one is -- the next October 15 is a drug one,

12    so we'll treat it like the drug one.  Then February

13    27 is another drug one, and we'll treat it like a

14    drug one.  Is everybody in agreement on those?

15            MS. ARMIJO:  Yes, Your Honor.

16            MR. BENJAMIN:  Yes, Your Honor.

17            THE COURT:  Is the next one, then, on March

18    9, is that another intimidation of a witness?  Is

19    that one in or out?

20            MS. ARMIJO:  And, Your Honor, that one --

21            MR. BENJAMIN:  I was told that that was

22    out, Your Honor.

23            MS. ARMIJO:  Out.

24            THE COURT:  That's out?

25            MS. ARMIJO:  Out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8482

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 115483

```
 1              THE COURT:  Okay.  So then we're down to
 2   January 25.  Is that one in or out?
 3              MS. ARMIJO:  Out.
 4              THE COURT:  Out.  What is the next one
 5   that's in?  Maybe I'll --
 6              MS. ARMIJO:  The last one that's in, but
 7   it's really not a bad acts, it's just statements by
 8   the defendant, is that there is a recorded call with
 9   Shauna Gutierrez.  And Shauna Gutierrez is going to
10   be a witness in this case.
11              THE COURT:  Okay.
12              MS. ARMIJO:  They're just statements.
13              THE COURT:  So the September 25 is out.
14   Shauna Gutierrez statements are in.  Is that your
15   understanding as well, Mr. Benjamin?
16              MR. BENJAMIN:  I would use the term "will
17   be offered," Your Honor, but --
18              THE COURT:  Certainly.
19              MR. BENJAMIN:  I'm just being --
20              THE COURT:  Anything at this time I can
21   help you with, or we're going to have to take
22   those --
23              MR. BENJAMIN:  We're going to have to take
24   those up at a time -- I'm planning on briefing
25   something on some of those issues.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8483

```
 1              THE COURT:  Okay.  Do y'all want to educate
 2   me a second on Ms. Gutierrez?  Is she going to be
 3   here and testify?
 4              MS. ARMIJO:  Yes, Your Honor.
 5              THE COURT:  So she has a cooperation clause
 6   in her plea agreement?
 7              MS. ARMIJO:  She has an addendum that I
 8   believe should have been disclosed.  If it wasn't, it
 9   will be disclosed this week.
10              MR. BENJAMIN:  And correct me if I'm wrong,
11   but you're going to disclose a proffer from the 29th
12   this week in the notes?
13              MS. ARMIJO:  Yes.
14              THE COURT:  All right.  So we'll just have
15   to take those -- those are recorded phone calls.  All
16   right.  So we'll just have to take those as they come
17   up, Mr. Benjamin?
18              MR. BENJAMIN:  Yes, Your Honor.
19              THE COURT:  Anything else, then, on your
20   bad acts?
21              MR. BENJAMIN:  I think they're going to say
22   that there was another issue that we discussed, and
23   it's an individual by the name of Matt Lucero, Your
24   Honor.  And it deals with five murders that they're
25   going to -- I believe, allege are the RICO acts.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8484

```
 1    if I could ask the Court --
 2              MS. ARMIJO:  I sent him an email.  We're
 3    not going to call him.
 4              MR. BENJAMIN:  Oh, I'll withdraw that.
 5              THE COURT:  So he doesn't have the same
 6    problem Mr. Castle does?
 7              MS. ARMIJO:  No, he does not.
 8              MR. BENJAMIN:  I didn't see that email
 9    among the many thousands I've had.  I apologize.
10              THE COURT:  Anything else, Mr. Benjamin, on
11    your 404s?
12              MR. BENJAMIN:  No, Your Honor, that cleaned
13    it up very nicely.
14              THE COURT:  All right.  Let me get my
15    documents in order here.
16              All right.  So I am now going back to -- I
17    think we're going back -- is this now where we've
18    picked up Billy Garcia's motion to dismiss?  Is this
19    where we pick up this issue?
20              MS. ARMIJO:  Before we get to that issue,
21    Ms. Harbour-Valdez and I would like to address the
22    Court on some questions that we had in reference to
23    jurors, so that we can get people behind the scenes
24    working on that.
25              THE COURT:  Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118486

```
 1              MS. HARBOUR-VALDEZ:  Your Honor, we had
 2    filed joint stipulations, several documents, Document
 3    1981, 82, 90, 91, and then this week we filed three
 4    supplemental joint stipulations based on emails and
 5    correspondence we've received from Ms. Bevel.  I
 6    believe we'll be filing another one this morning
 7    based on four more letters that came in.  We were
 8    just wondering when the Court might have an answer,
 9    so that we could get our folks --
10              THE COURT:  I think, by and large, if y'all
11    have been agreeing on these people, they've been
12    taken out.
13              THE CLERK:  That's correct, Your Honor.
14              MS. ARMIJO:  Okay.
15              THE COURT:  I spent Wednesday night on the
16    document that I filed on Wednesday night, where there
17    was disagreements on that.  And I might just say on
18    this -- and I'm not trying to interfere with
19    anybody's challenges to these people, but what I
20    noticed in looking through those things, the
21    defendants were taking a fairly hard line position
22    with hardship.  The Government was making more
23    hardship.  I didn't want to interfere with the
24    defendants' strategy, if you've got a jury consultant
25    and they're telling you that person is a great juror
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and the Government is trying to knock it out on

2    hardship, I took a little bit of a hard line.  I

3    wasn't necessarily trying to signal to anybody that

4    if everybody agreed that those people should be

5    tossed out that I wouldn't go along with it.  So I

6    say that more for the defendants' benefit.  I didn't

7    want to the necessarily -- you know, if I have to

8    tell jurors they've got to be here -- because the

9    defendants may have identified those people as people

10   that fit your profile and you want them there.  I'm

11   going to probably go to pretty good lengths to just

12   tell people they'll have to do their civic duty.  But

13   if y'all agree with the Government that some of those

14   should be tossed out, then I will also probably go

15   along with them, even though in my order I'll

16   overrule any hardship objection.  Am I making myself

17   somewhat clear?

18           MS. HARBOUR-VALDEZ:  I think so, Your

19   Honor.  So we can assume that all the ones we've

20   agreed on have been removed, and we can get started?

21           THE COURT:  I think so.

22           THE CLERK:  They've been pulled out.

23           THE COURT:  I haven't been going back and

24   undoing those, so I've just been ruling on the ones

25   where y'all couldn't agree.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8487

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 120 of 488

```
1              MS. HARBOUR-VALDEZ:  Okay.
2              THE COURT:  You know, I'll say this, I'm
3    nervous about everything, but we are getting a little
4    bit lower numbers than what I was hoping to have for
5    you here on Monday morning, Tuesday, Wednesday.
6    We're going to stagger it a little this time.  I was
7    hoping to have 200 here, 210, something like that.
8    And we're down to -- I think yesterday Ms. Wild told
9    me 182, I think.  It doesn't do any good to worry
10   about everything.  It doesn't do any good to have 60
11   here at the beginning, and it's always Juror No. 59
12   back there that is yapping, trying to get out.  And
13   he or she is trying to get out for hardship, but
14   she's fouling up all our answers, and we're not
15   getting a good voir dire.  So that's the reason I'm
16   kind of going along with y'all.  But I'm still
17   getting a little nervous about the numbers.  But the
18   numbers are arbitrary.  I guess I still think we'll
19   get the jury picked.  I'm optimistic we'll get them
20   picked in the first batch.  And even if we don't get
21   them in the first batch, I think the first 120 or so
22   we'll still get the jury picked.  So I'm not
23   panicking yet.  That's a long way of saying that I
24   think if y'all are submitting names, you can assume
25   they're out.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8488

```
 1              MS. HARBOUR-VALDEZ:  Okay, your Honor.  And
 2    then will Ms. Wild or Ms. Bevel send us the
 3    numbering?
 4              THE COURT:  Do what?
 5              MS. HARBOUR-VALDEZ:  The numbering of how
 6    they'll be seated.  I know the Government probably
 7    has it from Trial 1, but we weren't privy to that
 8    correspondence.
 9              MS. ARMIJO:  We had it that morning.
10              MS. HARBOUR-VALDEZ:  For us to say it's
11    one, two, three, four -- I don't know how they are
12    going to be -- seating chart.  Thank you.
13              THE COURT:  Let me see if I can check at
14    some point, because I've got the same concern,
15    because I'm probably going to -- for those of you who
16    have picked juries with me, you know how I do it and
17    I'm probably going to -- at some point here I'm going
18    to need to focus on that first group of 70.
19    Actually, it's going to be about a group of 85.  I
20    talked to Ms. Wild about this yesterday.  And we will
21    have 60 people in the courtroom.
22              So let's say, for example, out of our first
23    85, six don't show up for some reason.  We're not
24    going to start with 54.  You'll get a seating chart
25    of the first people.  They will go ahead -- there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8489

```
 1    no reason to wait till Monday to randomly select.  I
 2    don't think that does me good or you good or anybody
 3    else.  So we'll go ahead and randomly do the computer
 4    generated random list.  You'll get it.  But remember
 5    what you're getting.  If those people don't show up,
 6    I'm going to have them skip the seats so it doesn't
 7    mess our seating charts up.
 8              MS. ARMIJO:  Did you say we're going to get
 9    the random list before Monday morning?
10              THE COURT:  Yes.  Don't you think you want
11    it?
12              MS. ARMIJO:  I do, absolutely.  Very nice.
13    We've never had that before.
14              THE COURT:  It just seems that it makes
15    sense.  I mean, because of the way, the unique way we
16    have gone about this, it seems to me it makes sense
17    to go ahead and give it to everybody and me.  And I
18    probably am going to review the first 85, if you want
19    to know what I'm doing.  And that way, if six don't
20    show up, you know, we'll have -- it will look like we
21    have 66 in here, because they'll be at the back,
22    because we're going to skip those seats.  But it will
23    allow y'all to start focusing on the first bunch
24    right off the bat.
25              MS. ARMIJO:  All right.  I just assumed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8490

1    that they came up with those in the morning, but if

2    they could do --

3            THE COURT:  Well, they do normally on our

4    normal trials, but there we've got one wave coming

5    in.

6            MS. ARMIJO:  So we know.

7            THE COURT:  We know.

8            MS. ARMIJO:  That's great, okay.

9            THE COURT:  Here, we're going to have one

10   wave coming in on Monday, one wave coming in on

11   Tuesday, and then another wave coming on Wednesday.

12   And if we get done, we'll call those people and tell

13   those people they don't have to come.

14           MS. ARMIJO:  Okay.

15           THE COURT:  I will double-check.  But I

16   think when I left Albuquerque that was what we were

17   going to do.  It makes sense to me.

18           MS. HARBOUR-VALDEZ:  It makes great sense.

19   I just want to make sure we're going to get them in

20   the actual order they're going to be entering this

21   courtroom.

22           THE COURT:  I will double-check.  But

23   that's what I think I'm getting, and that's what I

24   think you're getting.

25           MS. HARBOUR-VALDEZ:  That's very helpful.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8491

```
 1   Thank you, Your Honor.

 2            MR. COOPER:  And, Judge, that may be as

 3   early as perhaps tomorrow?

 4            THE COURT:  Let me check.  Let me ask

 5   this -- y'all may know this better than me -- do you

 6   think this is about it as far as the number of people

 7   y'all may be in agreement to?  I'm not trying to

 8   pressure y'all, but I think it may be contingent on

 9   giving y'all enough time.  And then --

10            MS. ARMIJO:  I think we had more that we

11   wanted to excuse, and the defense wasn't agreeing to.

12   So I think it's the defense.

13            THE COURT:  All right.  And, again, if

14   there is people that I overrule the Government's

15   challenge, but you still want to come back and say,

16   okay for cause, we agree with the Government.  I know

17   it got rushed there because we had to meet demands of

18   Jury Services; you know, don't feel like you have to

19   protect the judge on this.  I was sort of protecting

20   y'all in the sense that I took a hard line on

21   hardship.  Because I didn't know if the defendants

22   were not agreeing to those because they may have fit

23   some profile or something.

24            So if you decide, well, even though the

25   Court overruled the Government's objection, if you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 125493

1   still want to come back and say, Fine, let them go.

2          MS. HARBOUR-VALDEZ:  Why don't I do this,

3   Your Honor:  If the Government will get back to me on

4   the four that were just sent, we'll file that one, so

5   that they can get those four excused.  Those are the

6   ones we received this morning.  We'll take a look at

7   the ones that you denied for the Government at lunch,

8   and see if there are any that we can agree to, and

9   I'll --

10          THE COURT:  And I'm not tipping my hand one

11   way or another.  I'm just telling you that I'm

12   leaving them in the pool for right now.  That's fine.

13   There were a couple of them that I thought the

14   Government made some compelling cases.  But I hated

15   to kick them out without giving you a chance to talk

16   to them, rehabilitate them, or whatever.

17          MS. ARMIJO:  Your Honor, may I just ask one

18   more question, since we're getting a list ahead of

19   time.  Let's say we have 18 here, and four don't show

20   up, so then, does that mean we're going to have four

21   empty seats, or are you going to take Juror No.

22   Number 61 and 62, and move them there.

23          THE COURT:  I wasn't planning on it.  I was

24   planning on just keeping empty seats.  I'm hoping

25   there is not going to be four in the box.  That would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    be bad.  But I still think it would be better than us

2    trying to redo our seats.

3              MS. ARMIJO:  Correct.

4              THE COURT:  And I think it would be better

5    just to list them at the back.  They're not going to

6    know.  We just leave them empty, and you know,

7    they've never been through a voir dire.  So I'm

8    inclined that way we all are seated -- we walk in and

9    we kind of know where everybody is.  And if we lose

10   people, there will just be empty seats there.  I just

11   draw an X through those.  And it helps me visually.

12             MS. ARMIJO:  While we're talking on the

13   jurors -- because I don't know if we're going to pick

14   up the pretrial conference or not -- but I suggested

15   this to defense counsel, based upon our conversation

16   with the last jury, they had those really small

17   notebooks, pads of paper.  And they indicated that

18   one of the problems was trying to go back with the

19   small ones.  And they actually made a suggestion,

20   that they have bigger notebooks.

21             THE COURT:  Okay.

22             MS. ARMIJO:  You know?  And I mean, I was

23   thinking like the notebooks at school that I get for

24   my kids.

25             THE COURT:  The spiral notebooks.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8494

1          MS. ARMIJO:  The spirals with the cover so

2    that notes are covered.  And they can write their

3    name on top.

4          THE COURT:  Well, let me see if Ms. Bevel

5    during the lunch hour can see what we have, and

6    she'll show them to you.  And if y'all agree, we'll

7    try to get them ordered, if we don't have them.

8          MS. ARMIJO:  Okay.  Thank you.

9          MS. HARBOUR-VALDEZ:  Great, thank you.

10         THE COURT:  Let's see, we're going to you,

11   Mr. Castle, Mr. Cooper, are we about to take up your

12   motion to dismiss?

13         MR. CASTLE:  Yes, Your Honor.  We have a

14   bit of an issue that we need the Court to resolve.

15   When we were last here on the motion to dismiss -- I

16   think it was March 16 -- Agent Acee was testifying,

17   and Mr. Beck was questioning him.  And the Court

18   indicated that it needed to do some CJA business with

19   defense counsel.

20         THE COURT:  Right, at 5:10 that day.

21         MR. CASTLE:  Yeah.  And so it stopped at

22   that point.  Mr. Beck had indicated he might have

23   some more questions, wanted to finish a couple of

24   questions to finish an issue which was -- I can't

25   remember what that issue was.  But the defense

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8495

1  obviously hadn't redirected him at all.  And there

2  were a number of things that we needed to redirect

3  him on.  In anticipation of that, we made some

4  inquiries with the Government.  And I don't know

5  whether it was a misunderstanding or mistake, but

6  they told Agent Acee he didn't have to be here.  And

7  they communicated with the supervising FBI agent who

8  deals with Touhy letters and subpoenas that the

9  defense had said that Agent Acee didn't need to be

10  present anymore.  And I was the one who did the Touhy

11  letter and the subpoena.  And obviously, I didn't let

12  him go.

13        So we can't present him at this time.  I

14  would ask that he be -- come back tomorrow so we

15  could finish up with that.  The Government has not

16  assured me yet, at this point in time, that they'll

17  make him available.  But I don't think that the

18  Government has the authority to finish -- you know,

19  end a witness' attendance and testimony.  Your Honor

20  does.  And so we want him back and I want to get that

21  done.  I know that Mr. Beck was aware we were going

22  to raise this today, and I think he's going to

23  address that issue.

24        THE COURT:  All right.  Mr. Beck.

25        MR. BECK:  Yeah, Your Honor, Special Agent

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8496

1    Acee was done.  His subpoena was for that week.  He

2    answered all the questions in the Touhy letter.  I

3    think my questions were wide, and went to Ms. Armijo

4    and whether he heard anything about a tactical

5    advantage.  So we don't think he's under subpoena.

6    We don't think he can testify to anything else under

7    Touhy.  So I guess, to the extent the Court is going

8    to entertain bringing Special Agent Acee back today

9    or tomorrow, I would ask what questions there are for

10   redirect that are included in Touhy, or within the

11   scope of my cross-examination.

12          THE COURT:  Do you have redirect that you

13   want to ask, Mr. Castle?

14          MR. CASTLE:  Yes, Your Honor.

15          THE COURT:  And it relates to your motion

16   to dismiss rather than something else the Government

17   was questioning him about?

18          MR. CASTLE:  Yes.

19          THE COURT:  And does it fall within the

20   scope of Mr. Beck's cross-examination?

21          MR. CASTLE:  Yes, Your Honor.  And if the

22   Court recalls, when Agent Acee was on the stand, he

23   all of a sudden was revealing the identities of

24   informants that had never been disclosed previously.

25   So he said that was his disclosure, the best of his

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8497

1    ability.  And Your Honor, I think, had made some

2    comments about whether that would resolve some of the

3    various claims that we made on our motion to dismiss.

4           And since that time, we've been able to go

5    back and look at what Agent Acee said.  And we need

6    to clarify, because I think some of the informants

7    that he said that he had the identities of were not

8    actually the people he said they were.  And we want

9    to question him about that so that the record is

10   clear, and the Court can rule on the motion to

11   dismiss properly.

12          THE COURT:  So what I recall him saying is

13   that he had been sitting over here at this table

14   during the hearings that we were having, when we had

15   the defendants scattered across the room, and while

16   he was going -- he was going back to the old

17   documents.  And he thought because of the internal

18   way they were written that he could identify who they

19   were.

20          MR. CASTLE:  Right.  When Corrections

21   couldn't, he thought that maybe he could.  And I know

22   he was trying to go through it quickly in the two

23   days while he was in court.  But the problem is it

24   may leave a false impression.

25          THE COURT:  That there is no problem.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8498

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 131 of 499

1          MR. CASTLE:  Yeah, that that witness

2    exists, and here he is, and so there is no issue that

3    you've lost a witness.

4          THE COURT:  Any other areas that you intend

5    to cover on redirect with Mr. Acee?

6          MR. CASTLE:  If I could have just a second.

7          THE COURT:  You may.  While you're doing

8    that, how much of a problem is it going to be for him

9    to be here tomorrow or later today, Mr. Beck?

10         MR. BECK:  He can't be here today.

11   Tomorrow, I mean, is -- ASAC, the supervisor of his

12   FBI he works closely with is being sworn in as US

13   Marshal.

14         THE COURT:  Yeah, that's at 1:00.

15         MR. BECK:  Right.  So I think he was really

16   intending to be there, and would like to be there.

17   And that's why the United States worked hard with

18   other counsel who had subpoenaed Special Agent Acee

19   to be here this week.

20         THE COURT:  Let me ask this:  Would he be

21   able to come down here, be here at 8:30 in the

22   morning, put him on and get back up there?

23         MR. BECK:  I can ask Special Agent Acee if

24   that's a possibility.  He's not in cellphone range or

25   contact now.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8499

```
 1              THE COURT:  Because if we can get him out
 2    of here by 10:00, he should be able to roll in the
 3    courthouse.  Is it at 1:00; that was my memory?
 4              MR. BECK:  It's at 1:00.  I think maybe a
 5    little bit before 10:00.  He would probably have to
 6    be out of here to make it by 1:00.
 7              THE COURT:  How long do you think it would
 8    last?
 9              MR. CASTLE:  I think it's going to be 15,
10    20 minutes, Your Honor.  I don't know what their
11    recross might be, but --
12              THE COURT:  Is anybody else going to have
13    anything more?  Mr. Burke?
14              MR. BURKE:  Ten minutes, max.
15              THE COURT:  Ten minutes.  Okay.  So maybe
16    we could get him out about 9:00, 9:15, depending if
17    you're going to have anything more?
18              MR. BECK:  Your Honor, I think previously
19    we've done a couple of witnesses telephonically.
20    That may be an option for Special Agent Acee, either
21    this afternoon or tomorrow morning.
22              THE COURT:  Could you finish him up by
23    phone?
24              MR. CASTLE:  I do need to show him some
25    documents, but my guess is that -- well, can I talk
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8500

```
 1    to the Government about what documents he needs to

 2    have available.

 3              THE COURT:  Okay.  Could you do it by

 4    phone, Mr. Burke?

 5              MR. BURKE:  Yes, Your Honor.

 6              THE COURT:  Well --

 7              MR. BECK:  I think that would work out.  I

 8    think we would have less opposition.

 9              THE COURT:  If they could give you the

10    documents, you can get them to him.

11              MR. BECK:  Sure.

12              THE COURT:  All right.  So then with the

13    motion to dismiss, we need to wait on it until after

14    the testimony, Mr. Castle?

15              MR. CASTLE:  Well, we do have some other

16    witnesses, but if we could do them after the lunch

17    hour.  I didn't know that some of the other bad acts

18    motions would be resolved.

19              THE COURT:  All right.  So we'll pick up

20    your witnesses after lunch?

21              MR. CASTLE:  Sure.

22              THE COURT:  So I need to find out during

23    the lunch hour about the seating chart, and also make

24    sure that I'm answering accurately what we're doing

25    with y'all's agreed challenges.  Is there anything
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8501

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134 502

```
 1   else I need to do during the lunch hour?
 2   Ms. Torraco?
 3           MS. TORRACO:  Your Honor, would you
 4   consider the notion that we be able to bring our own
 5   chairs?  I'm really having a hard time.
 6           THE COURT:  Let me talk to Ms. Wild about
 7   that.  That's something I'm having to coordinate with
 8   the Marshal Service, so let me do that.  Mr. Shattuck
 9   has got a request in.  You're certainly welcome to
10   bring in cushions or I think there was some idea that
11   we might be supplying cushions.  Let me find that
12   out.  I don't know where Ms. Wild is during the lunch
13   hour.  But if I can resolve those, I will.  If not,
14   we'll waive to wait till a little bit later.
15           All right.  See y'all in an hour.
16           (The lunch recess was held.)
17           THE COURT:  All right.  Let's go on the
18   record.  I think each defendant has an attorney or
19   more.  Everybody is back in.  Let me go over a few
20   things that I learned over the lunch hour.  And I
21   hope I am not making a bigger mess of this than I was
22   making before the lunch hour.  What you will receive
23   this afternoon, or in the morning -- we'll try to do
24   it this afternoon, but maybe in the morning -- is you
25   will receive a sequenced list of the way the jurors
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8502

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135 8503

 1    will come into the courtroom.  I've been informed
 2    that it was already randomized long ago.  And I think
 3    everybody agrees with this, because the numbers that
 4    we're using at the top, that's the numbers that I
 5    guess they've gotten.  So it's already randomized.
 6    So we don't have to throw them into the computer.
 7          What you have to get now is you have to get
 8    what will be the first batch.  That is what hasn't
 9    been produced yet.  So that first group that is going
10    to come into the courtroom, you will get a list of it
11    and it will be sequenced.
12          So, for example, I don't know who the first
13    85 are going to be.  And the reason I use 85, is
14    that's what Ms. Wild tells me I better look at that
15    many resumes or questionnaires this weekend.  And
16    you'll get that sequence.  But we will wait till
17    Monday to prepare the seating chart because we don't
18    know who is going to be here.  And so that way it
19    doesn't have the holes.
20          Now, she and I are going to have to both
21    check this out because we had holes in it for the
22    trial.  And so I don't know if for some reason we did
23    it different, or we're doing it different this time,
24    we did it different last time or whatever.  But
25    anyway, you will be able to create your own seating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8503

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136

```
 1  chart.  And then, if you want to revise it on Monday
 2  morning, you'll get it.
 3           So that's different than what I was telling
 4  you in advance.  But she also said that, you know,
 5  probably if you wanted to get the seating chart
 6  today, you could, and then it would have gaps.  So
 7  she's going to check on that.  But at the present
 8  time she's telling me that the seating chart wouldn't
 9  be generated until Monday morning to avoid the gaps.
10  But you would have the sequence today or tomorrow.
11           On chairs, Ms. Wild is currently in control
12  of chairs.  Chairs may be moved to Carol, Ms. Bevel.
13  So we'll see.  But right now, if you have a concern
14  about chairs, deal with Ms. Wild, although it may be
15  moving to Ms. Bevel.  We'll let you know.
16           On notepads, it's Ms. Bevel.  So she's
17  working with Lorenzo in the office, and she'll be
18  showing you different notepads and we see if we can
19  agree on them.
20           I think that's all I was supposed to
21  report.
22           MS. HARBOUR-VALDEZ:  Your Honor, will we
23  get a similar list for the group that's coming on
24  Tuesday and possibly Wednesday?
25           THE COURT:  I would assume so.  I haven't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8504

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137

```
 1    thought about that far ahead, so we'll probably have
 2    to ask that question.  But I didn't ask that question
 3    because I was focused on this first group.  But I'll
 4    try to find that out.
 5              What I have done is -- now, going back to
 6    Mr. Blackburn's issue -- I've told Ms. Bevel to start
 7    moving Mr. James Garcia this way.  And I've also told
 8    her to get in touch with Jed Glazener, who I think is
 9    his attorney from Albuquerque, to move him this way
10    this afternoon or tomorrow.
11              It seems to me that Mr. Blackburn or the
12    Government, somebody ought to talk to Mr. Glazener.
13    Is he going to waive this conflict?  It would seem to
14    me -- now, I don't know a great deal about this, but
15    it would seem to me that if you represented him in
16    what everybody is telling me is an SNM -- people
17    think is an SNM murder or hit, we have two options.
18    One is I declare it substantially related, which then
19    is going to kick in the disqualification rules, and
20    then require a waiver from Mr. Garcia, your current
21    client, and from Mr. Garcia, your former client.  And
22    I would need to get written waivers and oral waivers,
23    and see if everybody will waive any sort of conflict
24    of a substantial relationship.
25              Or -- and again, I'm not quite as versed in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8505

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 138506

1    this conflict as, you know, I'd like to be, but if

2    everyone were agreeable to not cross-examining him or

3    direct examining him about that prior murder, then it

4    wouldn't seem to me that it would be a substantially

5    related -- it's just another murder that he did and

6    it's not related.

7         But assuming that we don't have that sort

8    of agreement, that it would seem to me we're going to

9    kick in to the disqualification rules, and it's going

10   to require a knowing and voluntary waiver, it would

11   seem that if we cannot secure either an agreement

12   that nobody is going to go into the prior murder, or

13   we can't get an agreement that it's waived, it would

14   seem to me that I'm going to have to be in a position

15   to have to disqualify you.  And if I disqualify you,

16   I don't think I can say that you're prepared to go to

17   trial.  And so I will have to probably sever you out

18   and try you at some other point.

19        So think about that.  But I'm not seeing

20   much other options than what I've laid out.  There

21   may be things I don't know.  But, Mr. Beck?

22        MR. BECK:  Yesterday my conversation with

23   Mr. Garcia and Mr. Glazener was brief, because of the

24   time pressures that we were on.  While I was there --

25   or I think maybe the night before, I was provided the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    pleadings for Mr. Blackburn.  So I raised the issue

2    with Mr. Garcia and Mr. Glazener.  I told them that

3    they needed to talk about it.

4            THE COURT:  When you said "they," you meant

5    Mr. Blackburn and --

6            MR. BECK:  Mr. Glazener and Mr. James

7    Garcia.  I told them that they needed to talk about

8    that issue.  My initial impression was that Mr. James

9    Garcia was not inclined to waive the conflict.

10           But seeing this issue come up, as soon as

11   we got done yesterday afternoon, I contacted the U.S.

12   Marshals, and we filed a writ to get Mr. James Garcia

13   down this way, because I had a sense that the Court

14   would want to proceed that way.  And so it's my

15   understanding they are going to have him here

16   tomorrow afternoon.  I spoke to Mr. Glazener and told

17   him the same; that he should plan to be here tomorrow

18   afternoon with his client.  So I think we are getting

19   that.

20           THE COURT:  Well, if he's not going to

21   consent, is it a futile gesture bringing him?

22           MR. BECK:  It very well may be.  As I said,

23   I wasn't sure.  So out of an abundance of caution, I

24   just wanted that to be an option.

25           THE COURT:  Well, what about the first

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    option that it's off the table; everybody going into

2    the prior murder as SNM-related.  I would think that,

3    A, I think Ms. Armijo mentioned this as a

4    possibility; I guess from the Government's

5    standpoint, are y'all willing not to go into it as a

6    prior murder?

7          MR. BECK:  Yes.  And I think there is a

8    misunderstanding there.  I don't think it is an

9    SNM-related murder, in the sense that it was called

10   by or participated in by or it was an SNM-on-SNM hit,

11   anything like that.  It was a street gang murder.  He

12   was, I believe East Side San Jose, and it was a

13   Martineztown gang member.  So it was out on the

14   streets.

15         And I think that is an option.  I mean, I

16   think that it would be substantially related to the

17   extent that the defendants would want to go into it

18   as impeachment evidence.  Then it would become

19   substantially related, if there is an agreement to

20   keep out the murder conviction because it is remote

21   in time, or for whatever reason.  I agree with the

22   Court, that I think we can just do the Chinese wall,

23   and perhaps Mr. Davidson, or if Mr. Arturo Garcia is

24   appointed another attorney, that attorney

25   cross-examine Mr. James Garcia.  Then I think we may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8508

1  be able to work with it that way.

2          I think that under the rules, what I've

3  looked at -- again, it's not in front of me, I'm just

4  going to have memory and a little bit of looking into

5  this issue -- I believe that Mr. James Garcia was

6  released from prison on that murder in 2009.  So his

7  release date is still within, I think, the last 10

8  years for that murder.

9          THE COURT:  Well, I guess there wouldn't be

10 any problem with the defendants impeaching him with

11 the murder to show that he is less credible than

12 other witnesses, without us -- and then having an

13 agreement that we won't get into the details of the

14 murder.  So at least the impeachment side would still

15 be available to either the Government or the

16 defendant, Mr. Garcia.

17         MR. BECK:  I haven't looked closely enough

18 at it.  I don't know if that's -- I don't know if

19 that's true.

20         I think there is still the concern that,

21 even if it is just the fact of the impeachment, I

22 think Mr. Blackburn's previous representation, the

23 duty to former clients, would still implicate a

24 direct conflict of interest, as opposed to a possible

25 conflict of interest, even if it's just for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    impeachment.  I think the rules are strong enough to

2    come into play with that.

3           THE COURT:  What you're saying is Mr.

4    Blackburn couldn't agree with the other defendants

5    not to go into the --

6           MR. BECK:  I think the agreement would have

7    to be that it's just -- it's not -- you just don't go

8    into it at all; you don't bring up the murder.  It's

9    just off the table for Mr. Blackburn.

10          THE COURT:  I guess another thing that I

11   should have mentioned as I was laying out the steps,

12   is the Government not calling Mr. Garcia.  Is that an

13   option, rather than granting a continuance and

14   severing Mr. Arturo Garcia from the trial?

15          MR. BECK:  That is an option.  But the

16   United States intends to call James Garcia.

17          THE COURT:  And so you would prefer that a

18   Court sever him and we have a separate trial in which

19   you call James Garcia, rather than not calling a

20   mistrial?

21          MR. BECK:  Yes.

22          THE COURT:  Okay.  How are the

23   defendants -- I just haven't thought this through, so

24   I may be proposing something or throwing something

25   out that's just not doable.  But do y'all need to --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8510

```
 1    I guess I tend to disagree with Mr. Beck that you
 2    couldn't still impeach him with the conviction.  But
 3    does anybody need to get in -- I tend to agree, if
 4    this is what Mr. Beck was saying, that I've still got
 5    to deal with Mr. Blackburn's conflict issue.  But at
 6    least if everybody was agreeing we're not going to
 7    get into the -- to what kind of murder it was, that
 8    it was SNM-related, if that's not of anybody's
 9    interests here, it would seem to me that it does
10    color the substantially related.
11            Did you have something you wanted to say,
12    Mr. Blackburn, or do you still want me to poll your
13    co-defendants here?
14            MR. BLACKBURN:  No.
15            THE COURT:  Anybody have any thoughts on
16    that?  I mean, does anybody need to go further than
17    impeaching him with the conviction?  Do you need to
18    go further, Mr. Benjamin?
19            MR. BENJAMIN:  I guess I'm not prepared to
20    say that I'm not.  Does that make sense, Your Honor?
21            THE COURT:  Yeah.  Well, here's the thing,
22    I think you're allowed to impeach him, and I think
23    you probably -- with the conviction -- and he was
24    convicted?  Mr. Blackburn, there is a conviction
25    there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BLACKBURN:  Oh, yes.  Yes.
 2              THE COURT:  I didn't mean to rub it in.  We
 3   were talking in the vestibule, because it was just an
 4   allegation of a murder, like the Ortega one, or
 5   something like that, then I'm not sure you would be
 6   able to get it in; it would be more of a 404(b), if
 7   there is a conviction.  But I guess I'm not sure why
 8   the defendants would want to have the jury know that
 9   another murder was racketeering activity.
10              I guess -- then I began to ask what's the
11   purpose?  If the purpose is strategic to try to get
12   Mr. Blackburn out or sever or something like that,
13   then I guess I need to probe you a little more.  But
14   if there is some legitimate reason, and it's
15   admissible, then I'd certainly entertain it.  I don't
16   want to mess people's strategy up.
17              MR. BLACKBURN:  The only thing I was going
18   to say, Your Honor, is I did represent him in 1996.
19   And it wasn't an SNM murder.  It was a local street
20   murder there in Albuquerque.  And as a result, then,
21   he went to prison, and then became --
22              THE COURT:  Then allegedly became a gang
23   member?
24              MR. BLACKBURN:  Then allegedly became an
25   SNM member.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              When we were here two weeks ago, or
 2    whenever it was, three weeks ago, during Mr. Beck's
 3    cross-examination of Mr. Garcia, he asked him about
 4    his memory.  And eventually it came out that -- Mr.
 5    Beck said, Well, if you heard the recordings, would
 6    you take a different posture, I guess, is what,
 7    basically, he was talking about.  We indicated that
 8    we had never heard any of the recordings; that there
 9    wasn't -- I think Mr. Beck said, Well, I just called
10    Agent Roundy last night and found out that there was
11    these tapes.  And the Government provided those
12    tapes.  And the tapes were based upon a 2013 arrest
13    as to when he was arrested on a case that then he
14    pleads guilty to and goes to federal prison on.  It's
15    about eight hours.  And it starts in Albuquerque when
16    they arrest him.  And they sort of debrief him, and
17    then they take him to his wife's house.  And then
18    they drive him all the way down to here.  It's about
19    eight hours' worth of conversations anyway.
20              So I don't think that he's going to waive
21    the conflict, because there is a discussion about my
22    representation of him in 1996, because they're asking
23    him why he was in custody and stuff.  And he tells
24    them, and he goes through some things as to why he --
25    the issue was that he got convicted of second degree
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8513

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 146

```
 1    murder, which was nine years.  But he had two prior

 2    convictions, so he got two habituals, so he got 24

 3    years.  So he was trying to explain to the agent as

 4    to why he got 24 years, even though he should have

 5    gotten nine.  The colloquy wasn't very pleasant

 6    listening to him talking to the agent about my

 7    representation.  So it's hard for me to imagine --

 8            THE COURT:  That he would waive it?

 9            MR. BLACKBURN:  -- that he would waive.  So

10    I just can't imagine that that's going to happen.

11            THE COURT:  Well --

12            MR. BLACKBURN:  But at the same time, I

13    don't know -- I think we're getting the notes this

14    afternoon as to basically --

15            THE COURT:  So you're saying --

16            MR. BLACKBURN:  -- what he said.

17            THE COURT:  You're saying it's not --

18    you're saying that you're not sure that this is

19    substantially related because you don't have any

20    reason to think it's an SNM gang hit, or --

21            MR. BLACKBURN:  No.  There is nothing that

22    was SNM about it.

23            THE COURT:  Is that your position as well,

24    Mr. Beck?

25            MR. BLACKBURN:  It's a street gang that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  feeds into SNM, supposedly.

 2          MR. BECK:  Yes, it was a street gang, and

 3  he was not SNM.  It is a street gang that feeds into

 4  the SNM.  But we don't take the position that this

 5  was an SNM-related murder.

 6          THE COURT:  Okay.  And have you had a

 7  chance to talk to Mr. Glazener?

 8          MR. BLACKBURN:  No, Your Honor.  I know the

 9  Court was looking for attorneys to represent him.

10  And I did not realize -- I know that some of the

11  individuals that your staff was thinking about were

12  not the individuals that showed up to represent him

13  yesterday.  So I did not know who he was until Ms.

14  Salazar or somebody told me who he was.

15          But I don't know, there may be other issues

16  concerning his cooperation and what he's going to say

17  about all of us sitting in the courtroom.

18          THE COURT:  Okay.

19          MR. BLACKBURN:  And that's an issue that I

20  don't think that we know about at this point in time,

21  until we see some of the -- until we see the

22  documentation as to what's going to happen on that.

23          At the same time, the issue -- I think it's

24  important to say this -- the same time the issue of

25  the walled off attorney, we're going to have to get

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 148

```
 1    another walled off attorney, because Mr. Davidson and

 2    I --

 3              THE COURT:  I think I understand that.

 4              MR. BLACKBURN:  So it would have to be

 5    completely different.  Okay?

 6              THE COURT:  All right.  We'll think about

 7    whether you want to take me up on my offer of

 8    starting to try to find you somebody else, and

 9    certainly I'll take your input on it.  And, you know,

10    I'm not restricting any ideas --

11              MR. BLACKBURN:  I understand.

12              THE COURT:  -- from anywhere.  So I'd have

13    to go to Ms. Waters and talk about it.  But --

14              MR. BLACKBURN:  No, I understand.  And we

15    were talking about that.  Again, the unfortunate

16    issues that happen is that Mr. Davidson needed to go

17    back this afternoon.  So that becomes an issue, so I

18    don't know how to handle that.

19              THE COURT:  I understand.  Well, it sounds

20    like -- and this is probably what you're going to

21    tell me, Mr. Castle, but I'm not trying to cut you

22    off.  You can't say yet until you get this

23    information from the Government, and see what he's

24    going to say.  Because that's what Mr. Benjamin is

25    saying.  It may be that if nobody takes the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8516

```
 1    position -- and I feel like I can honestly write it
 2    down as well, that the murder is not substantially
 3    related, then it may be that I don't have to
 4    disqualify Mr. Blackburn.  But then, if somebody
 5    looks at this material the Government is about to
 6    give you, and somebody says they don't think I can
 7    take that position, or the defendants, for whatever
 8    reason, don't want him to take that position, I may
 9    then have to look at it and make an independent
10    determination.  And then I think that's sketched out
11    what the consequences are.
12            Mr. Castle.
13            MR. CASTLE:  I was just going to add
14    something else.
15            I haven't fully looked at what Mr. Garcia's
16    prior conviction was all about, the facts -- the
17    underlying facts of it, but I could easily imagine
18    that those underlying facts could rise to the level
19    that we will be arguing or raising factual
20    circumstances in that case as a pertinent character
21    trait of Mr. Garcia.
22            I've noticed that a lot of the people that
23    the Government are calling have prior convictions
24    which involve them lying to the police in order to
25    try to get out of trouble.  And obviously, that would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   be a pertinent character trait in cross-examination

2   of the witness, because that's what we're alleging as

3   happening here, and it would be central to our

4   defense.  So even if we look at these notes, I doubt

5   these notes will have that kind of information in

6   them.  So I don't think we're going to get an answer.

7           And we can try to put our nose to the

8   grindstone and look into all the facts and priors.

9   But just letting the Court know that.

10          THE COURT:  I guess I'm just thinking out

11  loud, understanding you have to do that, and I don't

12  think I'm saying anything that would preclude you

13  from doing that.  But I'm also not -- it seems to me

14  that anytime you have a prior conviction, that raises

15  those questions and defense lawyers may want to go

16  into it.  But it still may not cause Mr. Blackburn's

17  prior representation to kick into being substantially

18  related to the crimes that are alleged here.

19          Do you see a flaw in that analysis?

20          MR. CASTLE:  I don't, Your Honor.  And I'm

21  not arguing the conflict motion, what is considered

22  substantially related, I think is different than what

23  is admissible.  I think what's admissible under 401

24  is a lot lower standard than what would be

25  substantial under the conflict standard.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8518

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

```
 1                    THE COURT:  I tend to agree.
 2                    All right.  Well, we'll leave that there.
 3        We got it set in motion, so we'll go from there.
 4                    I see Mr. Sapien came in the back.  Is he
 5        related to one of the witnesses that y'all are
 6        calling here on this motion to dismiss, Mr. Castle?
 7                    MR. CASTLE:  No, he was relevant to our
 8        motion, our targeted motion, concerning statements
 9        that we had taken up last time.  Mr. Sapien said he
10        wasn't available last motions hearing, so he's
11        available here today.
12                    THE COURT:  Okay.
13                    MR. CASTLE:  And Mr. Quintana, who is his
14        client, is in custody down -- somewhere in the
15        building.
16                    THE COURT:  And this relates to -- give me
17        the number it relates to.
18                    MR. CASTLE:  Docket No. 1909; paragraph 16
19        of Document 1909.
20                    MR. BECK:  And, Your Honor, if we're
21        thinking about getting back into these 104-type
22        hearings again this week, the United States filed a
23        response to a supplement, Billy Garcia's supplement
24        to that targeted response, last night, which is
25        Document 2051, and the United States would ask the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8519

 1   Court to look over that and give it a thought before
 2   the Court decides to continue with these 104-type
 3   hearings if the Court is inclined to do so today.
 4             THE COURT:  Well, I read your motion.  And
 5   I know you're frustrated with these, and it came out
 6   in your motion that you're very frustrated with the
 7   Court about it.  But I think, if you think about it,
 8   we have 104-type hearings all the time.  For example,
 9   we had them in the middle of the trial last time,
10   where we took evidence outside the jury.  The James
11   hearing is kind of a big 104.  You mentioned
12   exceptions, suppression hearings.
13             I'm sensitive to your criticism of the
14   Court for not allowing these things to become
15   discovery motions, but we do have a little group of
16   four to six statements -- and it seems to be
17   growing -- of statements that you're trying to get
18   in, and I'm trying to script out at trial.  It seems
19   to me that -- I mean, I guess we can just start the
20   trial, and then break the trial to then have the
21   hearings, if I can't do the testimony in front of the
22   jury.  But I guess I'm -- it seems to me that while
23   you keep using the word "unprecedented, no support,"
24   things like that, but they have them all the time.
25   So it's a timing issue.  And it may be that we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8520

```
 1   doing a lot of things to try to script out the trial.
 2           MR. BECK:  I think the distinction in this
 3   case is that the 104-type hearing that we had in the
 4   middle of the last trial was because we had the
 5   contingent relevancy issue.  And Mr. Archuleta's
 6   testimony, to get the Court to that position of
 7   whether it was admissible is inadmissible unless that
 8   contingency is met.  So that testimony from Mr.
 9   Archuleta should have properly been excluded from the
10   jury.
11           The testimony that we've seen in these
12   104-type hearings is perfectly admissible in its own
13   right.  The only question is whether that further
14   question:  When the declarant told you this, did the
15   declarant tell you that X person ordered it, or X
16   person carried it out?  That single question is all
17   that would be inadmissible or should be heard outside
18   of the jury.  So that's why I'm saying it's
19   unprecedented that all the time, in trials and
20   hearings, whatever it may be, but in trials, when we
21   come to some hearsay exception or hearsay exclusion,
22   the United States lays the foundation, and then asks
23   the question.  And if the foundation isn't properly
24   laid, it's inadmissible.  If it is, it's admissible.
25   And so what we've seen in these hearings is an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154

1   exact -- it's the exact same thing that would come

2   out at trial, except maybe we start with the

3   question:  Did your client implicate Billy Garcia, or

4   did you implicate -- did whoever told you this

5   implicate Billy Garcia?

6          And what the United States' position is is

7   that we have much better things to do with our time

8   than to spend our time finding out the answer to that

9   one question.  And we could just ask the question and

10  they object, or we could just agree to approach

11  before we ask that one question during trial.

12         THE COURT:  But then don't we have to take

13  a break in the trial to get that answer?

14         MR. BECK:  Sure.  But I mean, we did that.

15  And it takes one minute; five minutes at the most.  I

16  mean, the problem here is that it's been complete

17  gamesmanship.  And I am frustrated with what

18  happened, and for good reason.

19         I'm also frustrated, as I think Mr.

20  Quintana's lawyer was last week, that they have

21  deliberately attempted to get around the lawyers to

22  ask these questions.  I think that's completely

23  improper.

24         THE COURT:  I'm not tracking on that.  What

25  are you saying?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8522

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

```
 1              MR. BECK:  I'm saying two weeks ago, three
 2   weeks ago, when Mr. Sapien came in here and tried to
 3   quash the subpoena, he felt like he had been
 4   deliberately avoided, instead of providing notice to
 5   him that Mr. Quintana was coming.  We heard the same
 6   thing from Mr. Fallick for Mr. Lucero; we heard the
 7   same thing from Mr. Hosford for Mr. Clark.  They just
 8   weren't provided notice that their clients were being
 9   subpoenaed to come here and testify.
10              THE COURT:  That's a separate issue that I
11   think Mr. Sapien can argue.  But I guess if we're
12   trying to have a smooth trial and trying to help the
13   Court determine what evidence is coming in, rather
14   than waiting till somewhere in week three that we ask
15   the question, and then I have to make a fairly sudden
16   decision based upon which way that goes, it seems to
17   me that to smooth it out.  It's a little bit like the
18   James hearing; it helps us to figure out whether this
19   evidence is coming in by asking them a question
20   outside the presence of the jury today, rather than
21   waiting till the middle of the trial.
22              MR. BECK:  Well -- and I don't think we
23   have that problem.  I mean, I think all the facts
24   will be laid out.  They've already been laid out in
25   the motions, they're in the reports.  They will be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8523

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156

1   laid out at trial.  And it's just that one single

2   factor:  Does the evidence come in or does it not?

3   And I think it would be more expedient for everyone

4   to do it at that point, compared to doing it now when

5   we have other motions that need to be argued.

6           THE COURT:  But would you agree with me

7   it's going to require we excuse the jury, have a 104

8   hearing at that point, and then bring the jury back?

9           MR. BECK:  I don't.  I don't agree with

10  you.  I disagree with you.  I think what will happen,

11  for instance, if we take Mr. Garcia -- and I'm just

12  familiar with this -- but what would have been

13  Mr. Garcia's truthful testimony --

14          THE COURT:  Well, it's so hard for us to

15  use, I think -- and I could be wrong on this -- but

16  it seems to me it's so hard to use Mr. Garcia as an

17  example of anything.  But --

18          MR. BECK:  I can use a different example.

19  His is fresh in my mind because since we indicted

20  him, that's all I've been working on the last two

21  weeks, instead of working on this trial.

22          But if we use Mr. Benjamin Clark as an

23  example, if Mr. Benjamin Clark is going to come in

24  here, and he's going to say:  Somebody told me -- I

25  participated in a murder, and, you know, Anthony Baca

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8524

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 157

 1   told me I had to do it, okay?  Well, certainly that

 2   declarant, a defendant in here, that's an admission

 3   against interests.  We can get into where he was

 4   living; we can get into that he was an SNM member,

 5   and who he was locked up with.  All those things

 6   could go in front of a jury.  We can get out that the

 7   defendant admitted to him his crime.  The only thing

 8   is that last question whether the Anthony Pup Baca

 9   ordered him to do it.  And we know that it happened,

10   that he did, because the United States has prepared

11   Mr. Clark for trial, because everyone has the 302

12   reports where he says, "Anthony Ray Baca ordered me

13   to do it."  The only question then is whether that is

14   admissible as a statement against penal interests by

15   the declarant.

16        So we can ask the question:  Who ordered

17   that?  The defendant can object.  We can approach the

18   bench.  We can say it's a statement against penal

19   interests, here's the corroborating circumstances

20   that allow it to come into the trial here.  So

21   everything else comes out.  The only thing is just

22   for the Court to make a call up or down, whether it

23   comes in as a statement against penal interests.

24        And so I think the proper way -- and I

25   think what would be expedient for everyone is to

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                          1-800-669-9492
                                                   e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8525

1  allow that to take place.  I think we've already

2  briefed up the statements that everyone is concerned

3  about.  So that issue is in front of the Court.  The

4  defendants are alerted to it.  The prosecution is

5  alerted to it.  It's teed up, it's ready to go.  We

6  can decide that at trial, because everything else is

7  admissible, except for perhaps that one other

8  implication from the statement.

9        And, again, we still have the motion to --

10 Billy Garcia, Edward Troup's motion to dismiss we

11 have to take evidence on in the next two days.  We

12 have to argue those motions.  I assume we're probably

13 going to argue James' motion targeted response to the

14 statements against penal interests.

15        There are a number of ways that we can

16 better use our time than just getting out the same

17 testimony we're going to get out in court.

18        THE COURT:  All right.  Thank you, Mr.

19 Beck.  Do you have something you want to say on this,

20 Mr. Castle?

21        MR. CASTLE:  Yes, Your Honor.  There is a

22 lot more to it than that.  And I think the Court had

23 the hearings in Trial 1 before the jury ever sat

24 down.  It dealt with whether a particular statement

25 was truly against the inmate's interests.  So there



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8526

```
 1    is a lot more questions that go into that.
 2             When we had those hearings the week of
 3    March 12, and there were witnesses, such as Ben
 4    Clark, who was very quick -- wasn't a discovery
 5    hearing; it was a very quick hearing.  And what we
 6    were doing was exploring whether any statement that
 7    other defendants made implicating Mr. Billy Garcia
 8    was truly against interest.  And what Mr. Clark told
 9    us was none of them implicated Mr. Garcia.  Questions
10    were terminated, it was done.
11             That statement won't come in is my guess
12    because the Government could not establish it.  But
13    other witnesses might take more, it might take more
14    questions, such as:  Tell me about this.  Was the
15    person bragging?  Was the person sitting there
16    telling war stories to try to gain, you know, some
17    higher standing in the community?  Is this a person
18    that you know that was bragging about things that
19    they obviously didn't do?  Things of that nature.
20    And we have to explore all of that in the context of
21    trial.
22             Now, I do take disagreement with the
23    Government saying we're playing a game.  What
24    happened here was on March 7 -- the Government waited
25    until March 7 to tell us what statements they were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8527

1   going to bring in against our clients.  Two days

2   later, March 9, I filed a targeted motion, 1909.  On

3   that day we subpoenaed these witnesses, and informed

4   their lawyers, including Mr. Sapien, who is here in

5   this courtroom.  Mr. Cooper tried calling him that

6   very single day.

7          The newest motions -- we got discovery last

8   Friday talking about those statements.  That same day

9   we made efforts to subpoena the witness, or writ

10  them.  We contacted their lawyers, if they had them,

11  and spent the weekend trying to call them.  And the

12  Government knows that because those lawyers called

13  them.

14          So the fact that we turned around within

15  two days and contacted lawyers and subpoenaed

16  witnesses so we could be prepared for a hearing that

17  we should have been given notice of long before,

18  yeah, there is games being played, but it's not on

19  the defense's part.

20          But with that aside, I think the Court

21  probably wants to deal with the substance of the

22  issue.  And the substance is that, you know, we're

23  going to risk mistrials.  If you do exactly what the

24  Government just suggested, and allow them to say,

25  Well, who -- you know, who told him that information?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8528

1        Well, you know, it came from Billy Garcia.

2    And then on further questioning, it turned out it

3    really didn't come from Billy Garcia, it came from

4    somebody else, and somebody else may have said that

5    they thought that Billy Garcia did it, and, you know,

6    several layers of hearsay, and they can't establish

7    personal knowledge, or all the other aspects that

8    we're going to have to look at in every layer of

9    hearsay.  And I think that really is going to happen.

10        And I'll give the Court a really great

11   example of it.  And I know the Court doesn't like

12   James Garcia as an example.  But I'm going to take

13   the Government's version.  The Government's version

14   is at a barbecue Mr. Troup said Billy Garcia ordered

15   the hit.  But their other witness, Mr. Leonard Lujan,

16   says that he didn't tell Troup who ordered the hit.

17   So how would Troup know?  So there is an issue as to

18   whether there is even personal knowledge.

19        I would note that the eight-hour interview

20   that we all had to listen to, Mr. Garcia was

21   questioned all about the barbecue; never mentioned

22   anything about Billy Garcia in the entire eight hours

23   that we had to listen to.

24        So going back to that, that's why we have

25   these hearings, so that we can establish that and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8529

 1   figure out whether it's admissible before we put

 2   damaging evidence in front of jury.  We're already

 3   going to have a lot of jury instructions telling them

 4   to disregard certain evidence against certain people.

 5   But that's usually done before we hear the evidence,

 6   not after we hear the evidence.

 7          What the Government is inviting is:  Let's

 8   try -- you know, take the risk damage, then try to

 9   fix the damage afterwards through a limiting

10   instruction.  And that is just not going to work.

11          And like I say, I know the Court probably

12   saw it.  I didn't ask a lot of questions.  James

13   Garcia, I think I asked two pages.  Other ones I

14   asked less.  So I'd ask the Court to continue in that

15   process, so we don't have to take these breaks.  And

16   just to note, to give an idea how long the break is,

17   this is how long we've been arguing this issue, we're

18   going to be having kind of lengthy arguments probably

19   with regards to those individual statements.

20          THE COURT:  Well, I'm inclined to go ahead

21   and allow it.  I think that there are some unique

22   aspects to the trial.  And there is a handful of

23   these statements that I think need to be dealt with,

24   and the Court needs to have an opportunity to think

25   about them because they're fairly important

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8530

```
 1    evidentiary issues.
 2             So is your first witness Mr. Sapien's
 3    client?
 4             MR. CASTLE:  It is, Your Honor.
 5             THE COURT:  And I believe, Ms. Bevel, I
 6    think you may need to tell them that we're ready.
 7             THE CLERK:  Yes.
 8             THE COURT:  Mr. Sapien, do you want to come
 9    up and sit next to your client up here?
10             MR. SAPIEN:  Sure, Your Honor.
11             THE COURT:  Good afternoon to you, Mr.
12    Sapien.
13             MR. SAPIEN:  Good afternoon, Your Honor.
14             THE COURT:  We're going to get Mr. Sapien
15    up here next to you, so he'll be next to you.  Before
16    you're seated, if you'll raise your right hand, Ms.
17    Bevel will swear you in.
18                      FRED QUINTANA,
19         after having been first duly sworn under oath,
20         was questioned and testified as follows:
21                   DIRECT EXAMINATION
22             THE COURT:  All right.  Why don't you state
23    your name for the record.
24             THE WITNESS:  Fred Quintana.
25             THE COURT:  All right.  Mr. Quintana.  Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8531

```
 1    Castle.

 2    BY MR. CASTLE:

 3         Q.   Mr. Quintana, I'm just going to ask you a

 4    few just preliminary questions.  In 2001, were you

 5    residing in the Southern New Mexico Correctional

 6    Facility?

 7         A.   Yes.

 8         Q.   And did you become aware at some point in

 9    time that two inmates had been murdered?

10         A.   I was released at the time that happened.

11         Q.   So you weren't present at the time that

12    happened?

13         A.   No.

14         Q.   Sometime after that event did you ever talk

15    to any of the defendants that are in this courtroom

16    about their involvement in those murders?

17         A.   Yes.

18         Q.   And who did you talk to?

19         A.   To Edward Troup and Chris Chavez.

20         Q.   Let's start with Mr. Troup.  Where did that

21    happen?

22         A.   On the streets.

23         Q.   Of?

24         A.   In Albuquerque, New Mexico.

25         Q.   And do you recall generally when?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8532

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 165

1      A.    No.  It was not too far back now from

2   before we got arrested on this case.

3      Q.    Okay.  And what were the circumstances of

4   you and he talking about this event?

5      A.    I ran into him at a store.

6      Q.    And was he just talking to you in a store

7   about a murder?

8      A.    No.  I ran into him, and there was a

9   discussion about his brother had gotten in trouble in

10  the federal prison, and he had asked me what the

11  situation was.  And I said that he had got in a

12  switch with Mr. Candelaria's brother.  And he stated

13  to me, "Well, I helped take out Fred Dawg, and I gave

14  squina with Pancho.  So isn't that enough to get my

15  brother out of it?"

16     Q.    So is that the whole of it; the beginning

17  and the end of that discussion?

18     A.    Yes.  I told him I would talk to Richie and

19  see what we could do.

20     Q.    So he didn't implicate anybody else in that

21  murder?

22     A.    No.

23     Q.    Let's go to Christopher Chavez.  What were

24  the circumstances behind that?

25     A.    I ran into him and Willie Amador at a gas

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    station.  I was putting gas in my motorcycle.  And I

 2    asked Willie:  "What are you doing with Critter?"

 3           And he stated, "He's down.  I was with him

 4    when he took care of that trip with Looney."

 5           And I said, "Really?

 6           And Chris just said, "That's how I earned

 7    my bones."

 8      Q.   Okay.  I'm sorry, let me break that down a

 9    little bit.  So was it Willie that was talking to you

10    or Christopher Chavez?

11      A.   Willie.

12      Q.   Did Christopher Chavez say anything about

13    his involvement?

14      A.   All he said is, "That's how I earned my

15    bones."

16      Q.   So Willie told you exactly what?  What did

17    Willie say to you?  I'm sorry, some of the terms I

18    didn't understand.

19      A.   Willie stated to me that he was hanging out

20    with him, because he down because he helped take out

21    Looney.

22      Q.   So did Willie say anything about anybody

23    else other than Mr. Chavez being involved in that

24    murder?

25      A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8534

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167

```
 1        Q.   And so was Mr. Amador kind of pumping up
 2   Mr. Chavez; in other words, like saying, you know,
 3   giving him credibility?
 4        A.   I guess you could say so, yes.
 5             MR. CASTLE:  I don't have any other
 6   questions.
 7             THE COURT:  Thank you, Mr. Castle.
 8             Mr. Burke.
 9                      EXAMINATION
10   BY MR. BURKE:
11        Q.   Mr. Quintana, let me try to clarify.  You
12   had one conversation with Edward Troup after you got
13   out of the Southern?
14        A.   Yes.
15        Q.   And what store were you in?
16        A.   I don't recall.
17        Q.   And what year was it?
18        A.   It was 2015.
19        Q.   2015?
20        A.   Or '14.  He had just got out, finished
21   doing a parole violation.
22        Q.   So I'm sorry that I have to pursue this a
23   little bit.  You went back -- how long were you out
24   of prison?
25        A.   I was out since 2008.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8535

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 168536

```
 1        Q.   From 2008, until whenever you went back in
 2   on a parole violation?
 3        A.   No, I got picked up on this case in 2015.
 4        Q.   Okay.  So was the conversation you had
 5   before or after you got picked up on this case?
 6        A.   Before.
 7        Q.   Okay.  And do you believe it was 2014 then?
 8        A.   I can't be exactly positive with the date.
 9        Q.   It could be 2010?
10        A.   No.
11        Q.   Or '11?
12        A.   No.
13        Q.   '12?
14        A.   No.
15        Q.   '13?
16        A.   No.
17        Q.   '14?
18        A.   I cannot say.  It was closer to the end of
19   '14.  I know he had just got out on a parole
20   violation he had finished.  I'm not exactly sure of
21   the date.
22        Q.   And he had just gotten out on a parole
23   violation, or you had?
24        A.   He had.
25        Q.   He had.  And you don't remember the store;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is that right?
 2        A.    No.
 3        Q.    And, once again, what did you say and what
 4    did he say?
 5        A.    We were having a conversation.  He asked me
 6    how his brother had gotten into a switch in federal
 7    prison.  And I told him that he had called Richie's
 8    brother a rat.
 9        Q.    I'm sorry, what did he say?
10        A.    How his brother had gotten into a switch.
11        Q.    What's a switch?
12        A.    He had gotten into trouble.
13        Q.    Okay.  And then what was the next thing
14    that was said?
15        A.    And I said that he had called Richie
16    Candelaria's brother a rat, so a hit was put on his
17    brother.
18        Q.    A hit was put on his brother?
19        A.    Yes, on Edward Troup's brother, in federal
20    prison.
21        Q.    Okay.  And then what was said?
22        A.    He stated, "Well, I helped take out Fred
23    Dawg and I gave squina with Pancho.  Isn't that
24    enough to give my brother squina?"
25        Q.    I took out Fred Dawg, and what?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8537

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 170 538

```
 1          A.    "I gave squina with Pancho.  Isn't that
 2     enough to help get my brother out of that switch?"
 3          Q.    What does that mean, "I gave squina to
 4     Pancho"?
 5          A.    I helped out.
 6          Q.    And what was the next part?
 7          A.    "Isn't that enough to help my brother get
 8     out of that switch," he said.
 9          Q.    And then what did you say to that?
10          A.    I told him, "I'll talk to Richie and see
11     what we could do."
12          Q.    And who was it you were going to talk to?
13          A.    Richie Candelaria.
14          Q.    And you were going to talk to Richie
15     Candelaria because you thought that you might be able
16     to get the hit that was on Edward's brother off of
17     him?
18          A.    No.  I was going to bring it up to him.
19     And I wasn't sure if they would or wouldn't.  I would
20     just bring it up to him.
21          Q.    And was the point of bringing it up to him
22     so that that hit on Edward's brother would come off?
23          A.    That's --
24          Q.    Or at least it would be discussed?
25          A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8538

```
 1        Q.   All right.  So this conversation lasted, it
 2   sounds like, going back and forth, two minutes?
 3        A.   Yes.
 4        Q.   And then you went your separate ways?
 5        A.   We just bull-crapped around, just joked
 6   around a little bit.  I can't recall everything.  But
 7   we just touched base because I've known him for a
 8   long time.
 9        Q.   Yeah, before this time, when you were
10   talking to him, what was the last time before that
11   that you had seen Edward Troup?
12        A.   In prison.
13        Q.   And you left in 2001?
14        A.   Yes.
15        Q.   So the last time you would have seen him
16   was in sometime before 2001?
17        A.   Yes.
18        Q.   And then you saw him again in 2015, and you
19   started talking about this?
20        A.   Yes.
21             MR. BURKE:  All right.  Thank you.
22             THE COURT:  Thank you, Mr. Burke.
23             Any other defendant?  Mr. Granberg?
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 172

```
 1                      EXAMINATION
 2   BY MR. GRANBERG:
 3        Q.   Mr. Quintana, when did this exchange with
 4   Willie Amador and Chris Chavez take place?
 5        A.   About -- I'm going to say maybe 2012.
 6   Somewhere around there.  I'm not too sure.
 7        Q.   2012?
 8        A.   Somewhere -- that was before Willie passed
 9   away, I know that.
10        Q.   And so, from what I understand, you were
11   pumping gas at a gas station?
12        A.   Yes, I was putting gas in my motorcycle.
13        Q.   And they also just happened to be at the
14   gas station?
15        A.   They were putting gas in a vehicle on 8th
16   Street and Bridge, at the corner gas station.
17        Q.   And they approached you or you approached
18   them?
19        A.   I seen Willie, and I was talking to him.
20   At that time I seen Chris coming from the store.
21        Q.   And were you high at the time?
22        A.   No.  I was on federal parole.
23        Q.   What about, could you tell if Willie was
24   high?
25        A.   Probably.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8540

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 173

```
 1        Q.   Probably.  Could you tell that Chris Chavez
 2   was high?
 3        A.   Yeah.
 4             MR. GRANBERG:  Okay.  Pass the witness.
 5             THE COURT:  Thank you, Mr. Granberg.
 6             Anyone else on the defense side?
 7             All right.  Mr. Beck, cross-examination of
 8   Mr. Quintana?
 9                       CROSS-EXAMINATION
10   BY MR. BECK:
11        Q.   Mr. Quintana, when you were at the Southern
12   New Mexico Correctional Facility, in 2001, was Billy
13   Garcia there with you?
14        A.   No, he wasn't.
15        Q.   Who was -- who was sort of highest ranking
16   member of the SNM down at Southern before that?
17        A.   At the time that I got there, Lino Giron
18   had had the keys to the car.
19        Q.   Having keys to the car, that means he's the
20   highest ranking member, right?
21        A.   Yes.
22        Q.   When Billy Garcia got down to Southern, is
23   he a higher ranking member than Lino Giron?
24        A.   Yes, he is.
25        Q.   And in your experience with the -- well,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8541

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 174542

```
 1    when did you join the SNM?

 2         A.   In 1993.

 3         Q.   And in your experience in the SNM, what

 4    happens when a high ranking member gets into a new

 5    facility, what happens with the keys to that

 6    facility?

 7         A.   He takes over the yard.

 8         Q.   I want to talk to you about Mr. Troup's

 9    conversation with you in the grocery store.  It

10    sounds to me like he told you he gave squina with

11    Fred Dawg and Pancho, I think you said?

12         A.   Yes.

13         Q.   What does give "squina" mean?

14         A.   That he helped.

15         Q.   What do you think he meant by he gave

16    squina?  How do you think he helped?

17         A.   He helped kill him.

18         Q.   And have you heard from other SNM members

19    about the murder of Fred Dawg or Pancho?

20         A.   Yes.

21         Q.   And have you heard that Mr. Troup helped

22    kill Fred Dawg or Pancho?

23         A.   Yes.

24              THE COURT:  Hold on.  Mr. Burke, did you

25    have anything?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8542

```
 1              MR. BURKE:  Objection, hearsay, Your Honor.
 2              THE COURT:  Well, it's a 104.  Let me see
 3    what the evidence is.  Overruled.
 4         Q.  I don't think I heard your answer.  Have
 5    you heard from other SNM members that Mr. Troup
 6    helped kill Pancho and Fred Dawg?
 7         A.  Yes.
 8         Q.  Approximately how many other SNM members
 9    have told you that?
10         A.  Several.  I've heard it from Wino, who was
11    directly involved in Fred Dawg's murder also.
12         Q.  It sounds to me like you think that Mr.
13    Troup's motivation in telling you that at that time
14    was he thought you could help -- was it Richie
15    Candelaria get his brother off?
16         A.  Yes, at that time, I was known to have the
17    keys in the federal penitentiary when I got released.
18         Q.  If that information that Troup told you
19    wasn't true, and the information that you passed on
20    to Richie Candelaria wasn't true, what would happen?
21         A.  I'd get killed myself.
22         Q.  And would Mr. Troup also get in trouble?
23         A.  Yes.
24         Q.  Would it help get his brother off if it
25    wasn't true?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8543

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176

1        A.   No.

2        Q.   When you talked with -- well, let me ask

3    you this:  Was Willie Amador an SNM member?

4        A.   He was an associate.

5        Q.   Was Christopher Chavez an SNM member?

6        A.   Yes.

7        Q.   Was Edward Troup an SNM member?

8        A.   Yes.

9        Q.   And you're an SNM member, right?

10       A.   Yes.

11       Q.   As SNM members, do you talk about SNM

12   crimes and SNM business together?

13       A.   Yes.

14       Q.   When Mr. Troup was telling you about the

15   murder of Fred Dawg and murder of Pancho, were there

16   others involved in this conversation with you two, or

17   was it just two you?

18       A.   It was just us two.

19       Q.   Just you as an SNM member and he as an SNM,

20   right?

21       A.   Yes.

22       Q.   And he knew or he expected that you were

23   going to pass this information on to another SNM

24   member?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8544

```
 1          Q.   How close were you to Mr. Troup?

 2          A.   I've known him from approximately since the

 3     early '90s.

 4          Q.   Since the early '90s, you said?

 5          A.   Before I went to prison.

 6          Q.   Does Mr. Troup often talk a lot to other

 7     SNM members?

 8          A.   Yes.

 9          Q.   I think you said -- I think when Mr.

10     Granberg was asking you questions about Mr. Chavez,

11     you said you thought he was high?

12          A.   Yes.

13          Q.   Was Mr. Chavez high a lot?

14          A.   Yes.

15          Q.   And have you gotten high before?

16          A.   Yes, I have.

17          Q.   And in your experience with Mr. Chavez and

18     being high, do you think Mr. Chavez was telling you

19     the truth?

20          A.   Yes, I do.

21          Q.   I think Mr. Burke and Mr. Granberg asked

22     you about the timing of these statements.  Do you

23     remember that?

24          A.   Yes.

25          Q.   Is it a little bit difficult for you to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8545

```
 1    recall exactly what day or even exactly what year
 2    these happened?
 3         A.   Yes, it is.
 4         Q.   But these conversations did happen, right?
 5         A.   Yes, they did.
 6         Q.   And if you were presented with paperwork
 7    that showed when you were out of prison, when Mr.
 8    Troup was out of prison, when Mr. Chavez was out of
 9    prison, Mr. Amador was out of prison, would that
10    paperwork help you maybe get a better recollection of
11    when these events happened?
12         A.   Yes.
13         Q.   But you haven't looked at that before
14    coming today, right?
15         A.   No.
16              MR. BECK:  May I have a moment, Your Honor?
17              THE COURT:  You may.
18              MR. BECK:  Nothing further, Your Honor.
19              THE COURT:  Thank you, Mr. Beck.
20              Let me let Mr. Castle go first, then I'll
21    let you, Mr. Burke.  Go ahead, Mr. Castle.
22                    REDIRECT EXAMINATION
23    BY MR. CASTLE:
24         Q.   Mr. Quintana, when did you leave Southern
25    in 2001, do you know?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8546

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 179

```
 1          A.    January 3.

 2          Q.    So --

 3          A.    Approximately the 3rd or the 6th,

 4   discharged.

 5          Q.    Did the murders of Looney and Pancho, did

 6   the word of that spread fairly quickly through the

 7   prison system?

 8          A.    They knew ahead of time that Looney was one

 9   of the ones going to be hit, before I even left.

10          Q.    So you knew already in the January of 2001

11   that Looney -- was it Looney or Pancho was going to

12   get hit?

13          A.    Looney.

14          Q.    Okay.  Now, did you know anything about

15   Pancho being murdered?

16          A.    No.

17          Q.    So you found -- my original question was:

18   When they were murdered, did you hear about it

19   through the prison grapevine, like, almost

20   immediately?

21          A.    Once it happened -- I was on the streets --

22   I seen it on the news.

23          Q.    Okay.  Now, how did you know that Looney

24   was going to be killed?

25          A.    Because there was many discussions about it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8547

1   before; that he was an LCer before he was an SNM

2   member.

3        Q.   And who did you have discussions with in

4   the Southern facility, in 2001?

5        A.   It wasn't in the Southern facility.  I was

6   talking to Angel Munoz on the streets while I was out

7   on parole.

8        Q.   Okay.  So did you know that Angel Munoz

9   wanted him dead?

10       A.   I didn't know that.

11       Q.   So would this have been in 2001?  When you

12  got out in January, you would have talked to him?

13       A.   1999, and I went back in in 2000, February.

14       Q.   How about when you got out in January of

15  2001, would you have talked to Angel Munoz during

16  that time period?

17       A.   No.

18       Q.   You indicated that when you left the

19  facility in 2001, the person that held the keys was a

20  person by the name of Lino; is that right?

21       A.   Yes, when I got to -- when I was in Santa

22  Rosa prison, I was instructed -- I talked to Angel on

23  the phone -- to go to Southern New Mexico

24  Correctional Facility and take the car away from Lino

25  Giron, and give it to someone else, because Wild Bill

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8548

```
 1    was on his way over there, and it was going to be his

 2    yard, so there wasn't no friction on the yard when he

 3    got there.

 4         Q.   So who instructed this?

 5         A.   Angel Munoz did.

 6         Q.   So who was it that you were supposed to

 7    give the keys to?

 8         A.   I give it to Tibo.

 9         Q.   Who is that?

10         A.   I know his last name is Chavez.  I didn't

11    know his first name.

12         Q.   Nick Chavez?

13         A.   Yes.

14         Q.   How about Leroy Lucero, was he the

15    right-hand man of Lino Giron?

16         A.   No.

17              MR. BECK:  Objection, Your Honor.  I think

18    we're getting a little far afield.

19              THE COURT:  How is this related?

20              MR. CASTLE:  I'm just exploring what the

21    Government brought up.  It, frankly, has nothing to

22    do with our motion.  I confess that it doesn't.

23              THE COURT:  Well, why don't we rein it in

24    then.

25              MR. CASTLE:  I have no other questions
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8550

```
 1    then.

 2              THE COURT:  Thank you, Mr. Castle.

 3              Mr. Burke.

 4                        EXAMINATION

 5    BY MR. BURKE:

 6        Q.   Mr. Quintana, Mr. Beck asked you if you had

 7    heard from other people about Edward Troup, and you

 8    said "several," but then you only mentioned one, and

 9    that was Javier Alonso, known as Wino, right?

10        A.   Yes.

11        Q.   So that's one other person you remember

12    mentioning it to you, right?

13        A.   Yes.

14        Q.   And where was it that you talked to Javier

15    Alonso that he said something about Edward Troup?

16        A.   We were at the North facility together.

17        Q.   And when was that, sir?

18        A.   Just recently.

19        Q.   And by "recently," like last week?

20        A.   No, about a few months back, a couple

21    months.

22        Q.   So two months back.  So we're in April, so

23    February he would have told you that.  And what cell

24    is he in?

25        A.   He was in cell number 9.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8550

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 183551

1      Q.   Are you in the same unit as he is?

2      A.   Yes.

3      Q.   All right.  And how is it that you two

4  started talking?

5      A.   We were reading our Bible together.

6      Q.   All right.  And in the middle of some

7  passage from Luke, he said:  By the way, let me tell

8  you about Freddie Sanchez?

9      A.   No, it wasn't a passage from Luke.  It was

10  just something he said he finally felt better that he

11  could get it off his conscience, because it was

12  bugging him.

13     Q.   So you're in the middle of a Bible study,

14  and his conscience is bothering him, and he just

15  wants to unburden himself, and he said:  By the way,

16  I killed Fred Dawg?

17     A.   No.

18     Q.   What did he say?

19     A.   He said that he dropped out of the SNM a

20  long time ago due to the fact that he didn't feel it

21  was right what they had him do to Fred Dawg.

22     Q.   Okay.  And then somehow he blurted out to

23  get this off of his chest, "and Edward helped me"?

24     A.   He said him and Edward Troup went in there

25  and did it together.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 8551

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8552

```
 1        Q.   All right.  And did he mention the Rascon
 2   brothers?
 3        A.   No.
 4        Q.   All right.  Thank you.
 5             Let me go back now to the grocery store
 6   conversation.  What time of day was that?
 7        A.   I'm not sure.
 8        Q.   All right.  Was it like over the lunch hour
 9   or something?
10        A.   I'm not sure.
11        Q.   You don't know.  Was it in the morning?
12        A.   No.
13        Q.   Was it at night?
14        A.   If I told you a specific time, I'd be
15   lying.
16        Q.   And you don't want to lie?
17        A.   No.
18        Q.   Okay.  And so just trying to narrow it
19   down, when did you go back into prison?  Was it 2015
20   sometime?
21        A.   In September sometime when I got picked up
22   on this case.
23        Q.   In September of '15.  Were you out all of
24   '15, until you got picked up on this case?
25        A.   I went in on a couple of parole violations
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8552

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 185

```
 1   back to federal prison, but that was it.

 2        Q.   In federal prison?

 3        A.   Yes.

 4        Q.   The BOP?

 5        A.   Yes.

 6        Q.   And that's where Edward's brother had the

 7   hit maybe put on him?

 8        A.   Yes.

 9             MR. BURKE:  Okay.  All right.  Thank you.

10   That's all I have.

11             THE COURT:  Thank you, Mr. Burke.  Any

12   other defendant have any questions?

13             All right.  Mr. Quintana, you may step

14   down.  Is there any reason that Mr. Quintana cannot

15   be excused from the proceedings?  Mr. Castle?

16   Mr. Burke?

17             MR. CASTLE:  No, Your Honor.

18             THE COURT:  Anyone else?  Mr. Beck?

19             MR. BECK:  He may be excused.

20             THE COURT:  All right.  You're excused from

21   the proceedings.  Thank you for your testimony.

22             Thank you for your assistance, Mr. Sapien.

23             MR. SAPIEN:  Thank you, Your Honor.

24             MR. CASTELLANO:  Your Honor, the defense

25   calls its next witness, if it's an SNM Gang member,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8553

```
 1    I'd just like to note an observation for the record,
 2    that not one of the statements taken before the Court
 3    this afternoon was a co-conspirator statement.  Now,
 4    this was supposedly tied to Document 1909, which is
 5    related to James statements.  Not one of those dealt
 6    with a co-conspirator statement.
 7              Now, they may have been statements against
 8    interests, and other types of statements, but this is
 9    the concern that we had, is that -- in this case it
10    would be like taking a deposition pretrial, and
11    getting a free shot at the witnesses.  If the Court
12    noticed, not one of those was a co-conspirator
13    statement.
14              THE COURT:  I don't think they've ever
15    contended that that was the purpose of this hearing.
16    Their purpose is they're challenging whether these
17    are statements against interests.  And there is,
18    what, six statements?  I know the list may be growing
19    a little bit, but it was four; I think it's now six.
20              MR. CASTELLANO:  Counsel referred to
21    Document 1909.  That is their filing related to the
22    Jencks.
23              THE COURT:  But I think that's where they
24    raised -- correct me if my memory is off -- isn't
25    that where you raised these -- say, while we're doing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8554

```
 1   these, we want to challenge these statements against

 2   interests?  Isn't it at the back of that document,

 3   Mr. Castle?

 4           MR. CASTLE:  Yes, it is.  The first

 5   paragraph indicates that we're objecting to U.S.

 6   notice of James statements.  And it says, "And

 7   objections to specific target statements not

 8   referenced in the Government's notice."

 9           THE COURT:  Then you have about four there?

10           MR. CASTLE:  Yes.

11           THE COURT:  So I think that's the reason

12   it's getting referenced.  I think everybody is in

13   agreement these aren't going to come in as

14   co-conspirator statements.  These are ones that the

15   Government is trying to get in as statements against

16   interests.

17           MR. CASTELLANO:  All right.  So, as best as

18   we can, if we can have a proffer beforehand about

19   what statements they're referring to, I think that

20   would help focus the proceedings.

21           THE COURT:  Okay.  Mr. Cooper, do you have

22   the next --

23           MR. COOPER:  I do, Your Honor.  We would

24   call Josh Mirka to the stand.

25           MR. BECK:  And, your Honor, I think this is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8555

```
 1    a perfect example.  There is no statement in there
 2    about Billy Garcia.  So the United States would ask
 3    for a proffer about what statement they're trying to
 4    attack.
 5              MR. COOPER:  Your Honor, there is a
 6    statement that Bill Garcia runs the car.  And we want
 7    to explore whether or not he was running the car.
 8              THE COURT:  Okay.
 9              MR. BECK:  And --
10              THE COURT:  All right.  Is Mr. Mirka in
11    custody?
12              MR. COOPER:  He's on his way up.
13              THE COURT:  Is he represented by counsel?
14              MR. COOPER:  She was here this morning,
15    Your Honor.  Ms. Gibson.
16              MS. ARMIJO:  She was here this morning and
17    I'm sure she wants to be here.
18              MR. COOPER:  We'll call her, Your Honor.
19              THE COURT:  All right.  If she's not in the
20    building, do you have somebody else you want to maybe
21    go to?
22              MR. COOPER:  May I have just a moment, Your
23    Honor?
24              THE COURT:  You may.
25              MR. CASTLE:  We'd call Agent Andrew Armijo,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and it would be on the issue of the motion to

 2    dismiss, 1283, I believe is the number.  Yes.

 3                THE COURT:  All right.  Mr. Armijo.

 4                THE WITNESS:  Yes, sir.

 5                THE COURT:  All right.  Mr. Castle.  Let me

 6    have you sworn in first.

 7                     ANDREW J. ARMIJO,

 8         after having been first duly sworn under oath,

 9         was questioned and testified as follows:

10                     DIRECT EXAMINATION

11                THE CLERK:  Would you state your name and

12    spell your last name.

13                THE WITNESS:  My name is Andrew J. Armijo,

14    A-R-M-I-J-O.

15                THE COURT:  Mr. Armijo.  Mr. Castle.

16    BY MR. CASTLE:

17         Q.   Mr. Armijo, how are you employed?

18         A.   I am retired.

19         Q.   Prior to retiring, how were you employed?

20         A.   I was Special Agent for the FBI for 21 and

21    a half years.

22         Q.   And when did you retire?

23         A.   December of 2010.

24         Q.   Prior to that time, were you ever assigned

25    as an agent here in New Mexico?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8557

```
 1        A.   Yes.

 2        Q.   From during what period of time?

 3        A.   It would have been 1997, I believe, to the

 4   end of my career in 2010.

 5        Q.   During that time period, did you ever work

 6   on investigations that focused on the prison gang,

 7   the SNM?

 8        A.   Yes, I did.

 9        Q.   And do you recall when you first started

10   working on investigations of that particular prison

11   gang?

12        A.   If I recall correctly, it was probably

13   early 2000, May, April, somewhere around there, I

14   guess.

15        Q.   What brought that gang to the attention of

16   the FBI at that time?

17        A.   It was a known gang that was born in the

18   prison system here in New Mexico in 1980 after a

19   riot.  It was a viable target.  We knew that they

20   were involved in some things that we were interested

21   in.

22        Q.   In 2000, 2001, where were you stationed?

23        A.   Here in Las Cruces, New Mexico.

24        Q.   So would your investigation have included

25   crimes that the SNM may have committed at the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8558

1    Southern New Mexico Correctional Facility?

2         A.   Yes, it did.

3         Q.   In 2001, when you began your investigation,

4    was it just the FBI alone, or were you working with

5    the Department of Corrections, the State Police, a

6    joint task force, things of that nature?

7         A.   It was a gang task force.  And I think the

8    participants were the FBI, the Dona Ana County

9    Sheriff's Office, and the Las Cruces Police

10   Department.

11        Q.   Am I correct that the names of the task

12   forces sometimes change, or are they always the same?

13        A.   No, this one, I believe, it was the same

14   throughout.

15        Q.   What was the name of that task force?

16        A.   The New Mexico -- Southern New Mexico Gang

17   Task Force, I think.  I believe that was it.

18        Q.   Did it have a regional area in the State of

19   New Mexico that it looked at?

20        A.   Just the Southern part of the state.

21        Q.   So it wouldn't include Albuquerque and the

22   northern part of the state?

23        A.   Actually, as far as our jurisdiction, it

24   would cover the whole, since our headquarters is in

25   Albuquerque, so we would coordinate with our

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Albuquerque office as well.
 2         Q.   Was there also a central New Mexico gang
 3    task force?
 4         A.   Not I'm aware of.
 5         Q.   During the investigation, starting in 2000,
 6    what was the FBI's role in, I guess, the
 7    investigation of the SNM?
 8         A.   Well, what we wanted to do was establish an
 9    intelligence file for the SNM, the Syndicato de Nuevo
10    Mexico.  And what we were trying to do is establish
11    predicate offenses, which would include murder,
12    extortion, kidnapping, drug dealing, anything like
13    that, so that later on we could go and investigate
14    them fully, so the full extent of the law under RICO.
15         Q.   So the idea was to develop evidence that
16    could possibly be used by the United States
17    Attorney's Office in an indictment under either RICO,
18    or perhaps VICAR?
19         A.   Yes.
20         Q.   After you began your investigation in 2000,
21    did it come to your attention that a pair of murders
22    happened on the same day at the Southern Correctional
23    Facility?
24         A.   Yes.
25         Q.   I'm using the Southern Correctional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8560

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 193

 1  Facility as short for a longer name.  But it's the

 2  Southern New Mexico Correctional Facility, right?

 3      A.   Right.

 4      Q.   I just seem to always mess that name up

 5  when I say it, so I'll just call it Southern.

 6           Did you know about it fairly quickly after

 7  it happened?

 8      A.   Actually, I read about it in the paper.

 9  And then we followed up with the trying to gain some

10  intelligence.  I know the jurisdiction was with the

11  New Mexico State Police.  They had a full-fledged

12  investigation going on, the murder of two gentlemen.

13      Q.   When you said there was some intelligence

14  that you were, I guess, trying to gather; is that

15  right?

16      A.   That's correct.

17      Q.   What kind of formats would that take?

18      A.   That would take any type of reports from

19  the New Mexico Correctional Department, the local PD,

20  if possible, or the State Police.

21      Q.   Would it also include perhaps using assets,

22  informant assets of the FBI, that might have

23  information about the SNM?

24      A.   At that time, I don't think we had any

25  asset into, or informant into the Syndicato de Nuevo

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                             Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                             FAX (505) 843-9492
                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

DNM 8561

1   Mexico.

2        Q.   Was the New Mexico Department of

3   Corrections reluctant to share information with the

4   FBI during that time period?

5        A.   No.

6        Q.   All right.  So would you get reports?  In

7   other words, did you get discovery?  Well, we would

8   call it discovery, but police reports that filled you

9   in on the details of the murders.

10        A.   Actually, we would solicit those reports.

11   As a matter of fact, I can recall traveling up to

12   Santa Fe, and picking up a couple reports.

13        Q.   Did you open up an investigation, a file, I

14   guess, on the 2001 murders?

15        A.   We opened up an intelligence file, a

16   racketeering enterprise investigation.  And we also

17   opened up a sister file for the eventual prosecution

18   of the SNM.

19        Q.   How long did those files remain open, or

20   did they ever close?

21        A.   I don't believe they have closed.  I think

22   it's still an ongoing investigation.

23        Q.   When did you say you retired?  Was it 2010?

24        A.   2010.

25        Q.   So between 2001 and 2010, if you came

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8562

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8563

1    across information related to those murders, would

2    you place that information in the files that we just

3    talked about?

4         A.   Well, I had transferred over to the other

5    side of the house -- I was working for a

6    counterintelligence and counterintelligence matters

7    about 2006, '07, somewhere around there.

8         Q.   Did a particular agent take over your job?

9         A.   I believe that would have been Bryan Acee,

10   because he was here in Las Cruces for a while.

11        Q.   And then did he leave and come back later

12   on in say, 2015, or do you know?

13        A.   I do not know.

14        Q.   He went off, and you ended up retiring in

15   2010?

16        A.   Right.

17        Q.   I take it at that point you kind of left

18   Bureau business aside and went on to enjoy your life?

19        A.   Correct.

20        Q.   Can you give us an idea -- I know we

21   subpoenaed you to bring your file, but I take it you

22   don't have a file anymore; is that right?

23        A.   No, sir, I'm not privy to any of those

24   files anymore.

25        Q.   Can you give us an idea of what the size of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8563

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 196

```
 1    the file was when you would have turned it over to
 2    Agent Acee, whenever that was, in 2006-ish?
 3         A.   I know the memo to open up or the EC, the
 4    electronic communication, to open up the file was
 5    just simply one that would identify separate
 6    subfiles.  And it would be a background 302, an
 7    insert, and then the backgrounds would include the
 8    main players.  So it could be -- and I can't recall
 9    who all we had, as far as in those background files.
10    But they were clearly labeled as BC-1 through
11    whatever it was.  I can't recall.
12         Q.   So those would be assigned to an individual
13    that might be either a target or a source?
14         A.   No, that would be a member of the SNM.
15         Q.   So the FBI, during this time period, was
16    keeping files on particular individuals who had been
17    identified as SNM members?
18         A.   Yes.  One of the things that you try and do
19    is establish who the rank and file are of the
20    Syndicato de Nuevo Mexico, and who are the leaders of
21    the organization itself.
22         Q.   So those subfiles, what did you call them?
23         A.   Background.  And B, as in Bravo, C as in
24    Charlie.
25         Q.   So B files?  I'm sorry?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8564

```
 1          A.    B, as in Bravo, C as in Charley.
 2   Background files.
 3          Q.    Okay.  It wasn't some secret --
 4          A.    No.  I apologize.
 5          Q.    Okay.  Then, if interviews had been
 6   conducted with confidential sources over the years,
 7   would those be in separate files?
 8          A.    I never conducted a confidential source
 9   interview of anyone.  You would have to address Bryan
10   Acee, or the other gentlemen up in Albuquerque that
11   were involved in the case.
12          Q.    Were there other agents out of the Southern
13   Task Force that were doing confidential interviews
14   with informants?
15          A.    Not that I was aware of.
16          Q.    You said there were a number of agencies.
17   How many investigators of sorts were part of this
18   task force?
19          A.    I would say probably three or four at a
20   given time.
21          Q.    Okay.  And the names might change, but that
22   would be about that number?
23          A.    Correct.
24          Q.    And those would be somebody from the FBI,
25   somebody from Corrections, and then somebody else
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 198

```
 1   from another law enforcement agency?
 2       A.   Actually, we didn't have anybody from
 3   Corrections.  It would have been just from Las Cruces
 4   PD and the Dona Ana County Sheriff's Office.
 5       Q.   Okay.  Corrections worked outside, then,
 6   outside of the task force?
 7       A.   Yes, I believe so, yes.
 8       Q.   But they would work cooperatively, in the
 9   sense that they would pass on reports and things of
10   that nature?
11       A.   Yeah, if we solicited them, yes.
12       Q.   So if the FBI wanted anything, they'd give
13   it to you?
14       A.   Yes.
15       Q.   You don't recall any refusals by them to
16   share information?
17       A.   No.
18       Q.   During the investigation in 2012, do you
19   recall an individual by the name of Edgar Rosa being
20   a member of the task force?
21       A.   Yes I do.
22       Q.   Who was he?
23       A.   He was a Las Cruces Police Department
24   Officer, or detective, I'm not sure.  I think he was
25   just a patrol officer at the time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8566

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 199

1      Q.   I want to show you a document, if I could.

2      A.   Sure.

3      Q.   Prior to coming in today, were you shown a

4  few documents so you could familiarize yourself prior

5  to testifying?

6      A.   Yes.

7      Q.   I'm hoping this was one of them, if you can

8  look at the screen.  I don't know if you can see

9  clear enough.  If you can't, I can let you have my

10  laptop.

11      A.   That's good.

12           MR. BECK:  Is it an exhibit?

13           MR. CASTLE:  I don't know.

14      Q.   Does that document -- did you have an

15  opportunity to look at that document?

16      A.   Yes, I did, just now.

17      Q.   And just for the record, it's marked as

18  Bates stamp 606.  Is that your name at the bottom?

19      A.   That is correct.

20      Q.   So you would have drafted that report?

21      A.   In conjunction with Mr. Rosa.

22      Q.   So when you say "in conjunction," you would

23  have drafted it, but you would have got the

24  information from Task Force Officer Rosa?

25      A.   Correct.  That would have been from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8567

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 200568

1    Mr. Moore at Southern New Mexico Correctional

2    Facility.

3         Q.   And what's the date of the report?

4         A.   April 10th, 2001.

5         Q.   So this would be an example of a report

6    where you were documenting the fact that Department

7    of Corrections was providing information to the task

8    force concerning the murders that happened at the

9    facility in 2001?

10        A.   Yes, that's correct.

11        Q.   Thank you.  I'm going to show you another

12    document, which is Bates stamped 14202.  Disregard

13    the yellow highlighting, because I don't think that

14    was there before I looked at the document.  But do

15    you recognize that as an FBI document of some sort, a

16    302?

17        A.   That is correct.

18        Q.   And again, is this a document that you're

19    familiar with, at least at this point in time?

20        A.   Yes.

21        Q.   And was this an investigation that began

22    April 30, 2001?

23        A.   Let's see.  Yes, that's correct.

24        Q.   Now, would that have been a report that you

25    would have documented information that had been given

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8568

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 201569

 1   to you from the Corrections Department about the

 2   murders that happened?

 3        A.   Yes.  I recall going up to Santa Fe and

 4   acquiring that information.

 5        Q.   Were there some meetings up in Santa Fe,

 6   where they did kind of brainstorming on what to do

 7   about these murders and the SNM, in general?

 8        A.   As I said, the jurisdiction was held by the

 9   New Mexico State Police.  And the Department of

10   Corrections was providing all that information to

11   them, as far as coordination with them.  That would

12   probably have been done between the State Police and

13   them.  As far as a preliminary investigation that we

14   had going, we really never sat down and coordinated

15   what avenue we were going to take.  We were trying to

16   develop our Intel for the SNM.

17        Q.   Do you recall whether you attended, in

18   2001, any meetings with U.S. Attorney's Office

19   members concerning a possible RICO investigation in

20   the SNM?

21        A.   No, I don't recall.

22        Q.   When you say that, do you think it didn't

23   happen, or you don't know whether -- I mean, it's

24   been a long time.

25        A.   I don't think it happened.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8569

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 202 of 570

```
 1         Q.   Okay.  That's fair enough.
 2         A.   I would have probably written a prosecutive
 3    report to the file in order for them to review.
 4         Q.   So I know -- I may have asked this
 5    earlier -- you were talking about files.  Are they
 6    paper files or are they electronic?
 7         A.   They're paper files.
 8         Q.   Okay.  So just your memory, was it an
 9    accordion file, or was it a little tiny file, or was
10    it a file drawer, or --
11         A.   Probably about that big.
12         Q.   Okay, about six to eight inches?
13         A.   Yeah.  And that would include all the
14    subfiles as well.
15              MR. CASTLE:  If I could have a moment?
16              THE COURT:  You may.
17              MR. CASTLE:  I have no other questions.
18              THE COURT:  Thank you, Mr. Castle.
19              Mr. Burke?  None?  Anybody else have
20    questions of Mr. Armijo?
21              How about you, Mr. Beck, do you have --
22              MR. BECK:  I do, Your Honor.
23              THE COURT:  -- cross-examination of Mr.
24    Armijo?
25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8570

```
 1                    CROSS-EXAMINATION
 2   BY MR. BECK:
 3        Q.   I guess it's "Mr. Armijo" now, no longer
 4   Special Agent?
 5        A.   It happens.
 6        Q.   Mr. Armijo, I think I'll start from the
 7   beginning here with some of my notes.
 8             It sounds like on the Southern New Mexico
 9   Gang Task Force, the agencies involved were the
10   FBI --
11             THE COURT:  I hate to do this to you, Mr.
12   Beck, but I didn't realize that we were right up on
13   the break.  I'm sorry, I thought we had a few more
14   minutes.  I need to give Ms. Bean a break, and I need
15   to call Ms. Wild.  So we'll take about 15 minutes.
16             (The Court stood in recess.)
17             THE COURT:  All right.  We'll go back on
18   the record.  Do we have an attorney for each
19   defendant?
20             All right.  Mr. Armijo, I'll remind you
21   that you're still under oath.  Mr. Beck, if you wish
22   to begin your cross-examination of Mr. Armijo?
23             MR. BECK:  Thank you, Your Honor.
24             THE COURT:  Mr. Beck.
25        Q.   So Mr. Armijo, I just want to make sure.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8571

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 204 of 572

```
 1    The Southern New Mexico Gang Task Force in 2001
 2    included the FBI; is that right?
 3         A.   Yes.
 4         Q.   Dona Ana County Sheriff's Office?
 5         A.   Yes.
 6         Q.   And then the Las Cruces Police Department?
 7         A.   Yes.
 8         Q.   And that's all that were agencies working
 9    on the task force?
10         A.   That is correct.
11         Q.   I think you talked about, in 2000, the
12    FBI's involvement with the SNM Prison Gang was to
13    establish an intelligence file; is that correct?
14         A.   That is correct.
15         Q.   And you said -- outside of that, I think
16    you said you opened one other file into the SNM?
17         A.   Yes.
18         Q.   And maybe I'm saying that wrong.  Do you
19    open an intelligence file, or is it just a file
20    that's a placeholder for intelligence that you got?
21         A.   The file that we opened was a racketeering
22    enterprise investigation.  And so that, in itself,
23    was the intel file.  The other markings on the 302 --
24    the 166, I guess it is, the classification, 166E --
25    that is to the main file itself.  So those two are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8572

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205

```
 1    mirror images of the same.
 2         Q.    Okay.  So mirror images; so you had two
 3    files, but they contained the same documents?
 4         A.    That is correct.
 5         Q.    And during your work on the SNM, those were
 6    the only two files or the only one file that you
 7    worked on; is that right?
 8         A.    That is correct.
 9         Q.    And how long did you work on the
10    investigation into the SNM?
11         A.    Well, considering the other duties that I
12    had as far as other investigations, I guess until I
13    transferred over into the other side of the house
14    doing foreign counterintelligence and
15    counterintelligence, that would probably have been
16    2005, 2006, somewhere around there.
17         Q.    And from 2000 to 2005, 2006, whenever you
18    transferred over, was there anyone else in the
19    Southern New Mexico Gang Task Force -- if I have that
20    name correctly -- was there any other FBI officer
21    investigating the SNM, to your knowledge?
22         A.    To my knowledge, I know that when Bryan
23    Acee came into the Las Cruces resident agency, he may
24    have, but I'm not sure.
25         Q.    Do you know that he did, or are you sort of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8573

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 206

```
 1   guessing?

 2        A.   I assume that he did.

 3        Q.   And when did Special Agent Acee come into

 4   the FBI?

 5        A.   That's -- I would assume probably 2005,

 6   somewhere around there.

 7        Q.   So about the time, give or take, that you

 8   moved over -- I think you said over to the other side

 9   of the house?

10        A.   Yes.

11        Q.   And if Special Agent Acee said that he

12   began investigating the SNM enterprise, or the SNM

13   Gang in 2015, for the first time, would that --

14             MR. CASTLE:  Objection, Your Honor.  I

15   don't think -- well, first of all, I think it's a

16   violation of the rule.

17             And second of all, I think there is lack of

18   foundation with this witness that he knows what Agent

19   Acee testified about.

20             THE COURT:  Well, I'll let him answer the

21   question.  I don't think it violates any of the rule

22   or anything to ask him whether he agrees or not.

23   Overruled.

24        Q.   If Special Agent Acee said that the first

25   time he began investigating the SNM was in 2015,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

DNM 8574

```
 1    would that surprise you?
 2         A.   If that's his testimony, I would assume
 3    that's correct.
 4         Q.   In your investigation into the SNM, from
 5    2000 to 2005 or 2006, am I correct that you did not
 6    ever open a confidential informant?
 7         A.   No.
 8         Q.   And even if you didn't open a confidential
 9    informant, you didn't have a confidential informant
10    for the SNM investigation during that time, right?
11         A.   No, I did not.
12         Q.   If I understand your testimony correctly,
13    there was no one from the Corrections Department on
14    the Southern New Mexico Gang Task Force, right?
15         A.   No, there was not.
16         Q.   And as far as the FBI was concerned, the
17    New Mexico State Police was leading the investigation
18    into the double homicide at the Southern New Mexico
19    Correctional Facility, right?
20         A.   That's correct.
21         Q.   So when you talked about soliciting files
22    from Corrections, would that have been the FBI
23    soliciting files from Corrections, or New Mexico
24    State Police soliciting files from Corrections?
25         A.   I know that we solicited information from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8575

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208576

1    the Corrections Department.  I would assume that the

2    State Police did so as well in their investigation.

3         Q.   Okay.  That answers my question.

4              And you said that when Mr. Castle was

5    asking you these questions, you said if the FBI

6    wanted anything, Corrections would give it to you,

7    right?

8         A.   Yes.

9         Q.   If the FBI -- if you wanted anything from

10   the Albuquerque Police Department, would they give it

11   to you?

12        A.   Yes, through our Albuquerque office, with

13   our liaison up there.

14        Q.   If you wanted anything -- who did you work

15   with down here?  Maybe the Deming Police Office?  Is

16   that a thing?  I don't really know Deming.  But is

17   there a Deming police?

18        A.   Yes, there is a Deming Police Department.

19        Q.   And if you needed something from the Deming

20   Police Department for an investigation, would they

21   give it to you?

22        A.   In this case, or in any --

23        Q.   Any case, while you were working.

24        A.   Yes, absolutely.

25        Q.   If you needed something from the Hatch

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8576

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 209

```
 1    Police Department in an FBI investigation, would they
 2    give it to you?
 3         A.   Yes.
 4         Q.   If you needed something from Socorro Police
 5    Department, would they give it to you?
 6         A.   Yes.
 7         Q.   If you needed something from the Dona Ana
 8    County Jail, would they give it to you?
 9         A.   Yes.
10         Q.   And you don't consider any of those joint
11    prosecutions into the crimes that you're asking them
12    for documents generally, do you?
13         A.   No.
14         Q.   When you said -- I think you talked about
15    Special Agent Acee on direct, that he took your
16    position -- did he come to the FBI to take the
17    position that you had down here?  Is that your
18    understanding of how he was hired down here at the
19    Las Cruces?
20         A.   No, he was the first office agent down
21    here.  He was just transferred here out of Quantico.
22         Q.   Okay.  But he didn't take your place in the
23    SNM investigation, he just came to the office; is
24    that right?
25         A.   That is correct.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8577

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8578

```
1          Q.   And I think I understood you to say that as

2    far as you were aware, no other agents on the

3    Southern New Mexico Gang Task Force, at least that

4    you're aware of, interviewed any confidential

5    informants, right?

6          A.   That I'm aware of, no.

7          Q.   As far as you know, you never presented any

8    SNM crimes for prosecution to the U.S. Attorney's

9    Office, right?

10         A.   No, I did not.

11              MR. BECK:  May I have a moment, Your Honor?

12              THE COURT:  You may.

13              MR. BECK:  Nothing further, Your Honor.

14              THE COURT:  All right.  Thank you, Mr.

15    Beck.

16              Any redirect by the defendant, Mr. Castle?

17              MR. CASTLE:  No, Your Honor.

18              THE COURT:  How about you, Mr. Burke?

19    Anybody?

20              MR. BURKE:  No, Your Honor.

21              THE COURT:  All right.  Mr. Armijo, you may

22    step down.  Is there any reason Mr. Armijo cannot be

23    excused from the proceedings, Mr. Castle?

24              MR. CASTLE:  No, Your Honor.

25              MR. BECK:  No, Your Honor.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8578

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 213579

```
 1                   THE COURT:  All right.  You may be excused

 2        from the proceedings.  Thank you for your testimony.

 3                   All right.  Do we have Ms. Gibson back?

 4        No?  Not yet?

 5                   MR. COOPER:  Your Honor, she came in and

 6        apparently thought that it was okay for her to leave

 7        and go back to T or C, so that is what she has done.

 8                   THE COURT:  Is she on her way back here?

 9                   MR. COOPER:  She's not coming back until

10        tomorrow.  She said she's got other things to attend

11        to.  So we would call Edgar Rosa to the stand.

12                   THE COURT:  All right.  And who is Edgar

13        Rosa?

14                   MR. COOPER:  He's a task force officer,

15        Your Honor.

16                   THE COURT:  Is this in support of your

17        motion to dismiss?

18                   MR. COOPER:  It is.

19                   THE COURT:  Mr. Rosa, if you'll come up and

20        stand next to the witness box on my right, your left,

21        before you're seated, my courtroom deputy, Ms. Bevel,

22        will swear you in.

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8579

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 212580

```
 1                    EDGAR ROSA,

 2        after having been first duly sworn under oath,

 3        was questioned and testified as follows:

 4                    DIRECT EXAMINATION

 5             THE CLERK:  Please be seated and please

 6   state your name for the record.

 7             THE WITNESS:  My name is Edgar Rosa.

 8   BY MR. COOPER:

 9        Q.   Mr. Rosa, can you tell me how you're

10   employed today?

11        A.   I'm a lieutenant with the Las Cruces Police

12   Department.

13        Q.   In 2001, you were a task force officer

14   member?

15        A.   That's correct.

16        Q.   And were you a Las Cruces PD assigned to

17   that task force?

18        A.   Yes, I was.

19        Q.   What was the name of that task force?

20        A.   Southern New Mexico Gang Task Force.

21        Q.   And what agencies were members of that task

22   force?

23        A.   The FBI, Las Cruces Police Department, Dona

24   Ana County Sheriff's Office.

25        Q.   And what was the name of the task force
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8580

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8581

```
 1   again?
 2        A.   The Southern New Mexico Gang Task Force.
 3        Q.   And what was the purpose of that task
 4   force?
 5        A.   It was a joint task force put together to
 6   investigate crimes of various natures involving
 7   gangs.
 8        Q.   Okay.  At some point in time, did you ever
 9   focus on prison gangs?
10        A.   I personally did not, no.
11        Q.   Did the task force?
12        A.   Yes, they did.
13        Q.   Did you ever do any investigation, talk to
14   any sources with regard to the Syndicato de Nuevo
15   Mexico?
16        A.   I spoke with prison officials at one point
17   during the criminal investigation that was being
18   conducted by New Mexico State Police.
19        Q.   And which criminal investigation was that?
20        A.   It was a double homicide that had occurred
21   at Southern New Mexico Correctional Facility.
22        Q.   And do you remember the names of the two
23   individuals that were killed?
24        A.   No, I do not.
25        Q.   Was it Garza and Castillo; that ring a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   bell?

 2        A.   I don't know.

 3        Q.   Too long ago?

 4        A.   Yes.

 5        Q.   In connection with that investigation, did

 6   you have occasion to ever interview any confidential

 7   sources, do you recall?

 8        A.   No, I do not recall.

 9        Q.   I'd like to show you what is document Bates

10   No. 3032 for identification purposes.  Can you look

11   at that document.  It's going to come up.

12             Mr. Rosa, would you look at that document

13   for a moment.  Are you the same Edgar Rosa that's

14   identified in that document?

15        A.   I am.

16        Q.   And back in April of 2001, apparently on

17   April the 3rd, you would have interviewed a

18   confidential source; is that correct?

19        A.   A source, correct.

20        Q.   A source.  And do you know where you

21   interviewed that source?

22        A.   Unless I wrote it on this document, I don't

23   recall.

24        Q.   Do you know who that source is?

25        A.   No, I do not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8582

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8583

```
 1        Q.   In that document it says that Billy Garcia
 2   had a green light on him, right?
 3        A.   Yes, it does.
 4        Q.   And it also says that Garcia was
 5   responsible for giving the order to have Bobby Ortega
 6   killed; correct?
 7        A.   That's correct.
 8        Q.   Do you know where that source got that
 9   information?
10        A.   I do not.
11        Q.   In there it also says that Mr. Garcia is
12   not associated with the SNM.
13        A.   Show me where that is.
14        Q.   It's next to the last line from the bottom,
15   "Source stated Garcia was not associated with the
16   SNM"?
17        A.   That's correct.
18        Q.   And it says, "Garcia did not have approval
19   of veteran members of the SNM for the hit"?
20        A.   That's correct.
21        Q.   How am I supposed to determine who that
22   source is?  Is there a method for me?  Is there a
23   place where I can go, a log or something, to tell me
24   who that source is?
25        A.   The best of my recollection, this document
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8583

```
 1    was put together as an intel resource for --
 2    basically, to support what was going on at that time.
 3    The focus was on the Syndicato de Nuevo Mexico.  The
 4    sources I listed on the top stated that they were not
 5    in the position where they were willing to testify.
 6    So when we put together documents like this, this
 7    source could have come from inside the prison,
 8    outside the prison, so on.  And at this time I don't
 9    recall who or what that source was.
10         Q.   Okay.  But thinking back to what was going
11    on in 2001, did you put the identification of that
12    source in a separate file someplace?
13         A.   No, I did not.  I don't recall if I did or
14    not.
15         Q.   Okay.  Can you tell, looking at the
16    document, where -- what sort of distribution this
17    document had?
18         A.   No, I'm not familiar with the FBI method of
19    distributing their memos.
20         Q.   Did you prepare this document?
21         A.   Yes, I did.
22         Q.   What else did you do in 2001 relative to
23    the investigation of the double homicide?
24         A.   I was in a position just, basically, to
25    gather intel in any kind of information that may have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8584

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 217585

1   been coming from the streets, or from wherever, just

2   to make sure that it went up the pipeline to the New

3   Mexico State Police investigators.  But other than

4   that, I had no interaction with the actual criminal

5   investigation itself.

6       Q.   Did you do anything to further investigate

7   the allegations contained in this document?

8       A.   No, I did not.

9       Q.   DeLeon 597, please.  Do you know Captain

10  Henry Telles?

11      A.   Yes, I do.

12      Q.   How do you spell his last name?  Is it with

13  an S or a Z?

14      A.   I don't recall, sir.

15      Q.   And who is Captain Henry Telles?

16      A.   He was an employee of the Southern New

17  Mexico Correctional Facility.

18      Q.   I'd like you to look at the monitor, if you

19  will.  And we are looking at Document 597 for

20  identification purposes.  Mr. Rosa, did you prepare

21  that document?

22      A.   I don't see my initials on it.

23      Q.   So reading the first line, do you recall it

24  says, "The Task Force Officer Edgar Rosa met with

25  Captain Henry Telles, Southern New Mexico

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8586

1    Correctional Facility, and was provided the following

2    information"?

3         A.   That's correct.

4         Q.   "Telles said that an inmate, Patricio

5    Esquibel, is a validated member of SNM.  Telles also

6    stated that Alfred Giron, Sexy Walker, was relieved

7    to be transferred out of state.  Giron had a

8    difficult time controlling the younger members of the

9    SNM."  Do you recall that conversation or that bit of

10   information?

11        A.   No, I do not.

12        Q.   "Telles stated that Leroy Lucero, also

13   known as Smurf, is currently running the SNM at the

14   Southern New Mexico Correctional Facility."  Do you

15   know where Mr. Telles got that information?

16        A.   No, I do not.

17        Q.   It goes on to say that "Lucero is supported

18   by an advisory board.  The members are Alex Munoz,

19   Frank Castillo, and Joe Gallegos."  Do you know where

20   that information came from?

21        A.   No, I do not.

22        Q.   Did you do anything with that information

23   after Henry Telles gave it to you?

24        A.   No, I did not.

25        Q.   Down at the bottom it has four individuals'

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8586

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 219

219587

```
 1    names:  Patricio Esquibel, also known as Pate; Leroy
 2    Lucero, Smurf; Alex Munoz, F Trooper; and Frank
 3    Castillo, Pancho.  Did you ever investigate any of
 4    those individuals?
 5         A.   No, I did not.
 6         Q.   Can you tell me what the date of that
 7    document is?
 8         A.   It's initiated November 20, 2000.
 9         Q.   It was initiated from November 20, 2000.
10    What does that mean?
11         A.   That's when the document was put together.
12         Q.   Okay.  There is a document title that says,
13    "2/27/01, Telles stated that inmate Patricio Esquibel
14    is a" -- something.  What's the difference between
15    the initiated date and the document -- the date on
16    the document title?
17         A.   As a task force officer, I was permitted to
18    put together a 302 as far as the context.  As far as
19    the other labels that are on top of that document, I
20    was not responsible for those dates.
21         Q.   Okay.  Do you know when it was that you met
22    with Captain Henry Telles by looking at that
23    document?
24         A.   It appears that it's dated 2/28 of 2001.
25         Q.   But the investigation that you were working
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8587

1    on was initiated back in 2000.  And that was the

2    investigation of the Syndicato de Nuevo Mexico?

3         A.   The best of my recollection, this is a

4    general file of intelligence, so I don't know when

5    that particular file number was initiated, the 281 AQ

6    up on top.

7         Q.   Okay.  Mr. Rosa, on April the 10th, 2001,

8    do you recall meeting a source, again who was not in

9    a position to testify, and that source telling you

10   that George Manzanares was responsible for ordering

11   the killing of Frank Castillo?

12        A.   I don't remember the source, sir.

13        Q.   Do you remember where that conversation

14   occurred?

15        A.   No, I do not.

16        Q.   Did you do any investigation and any

17   interviews of sources within Southern New Mexico

18   Correctional Facility back in 2001?

19        A.   I don't recall, sir.  I don't believe so.

20        Q.   You don't believe you did?

21        A.   No.

22        Q.   Do you know George Manzanares?

23        A.   I know of him from my contact as a Las

24   Cruces Police Department Police Officer.

25        Q.   Is he from Cruces?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8588

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 221589

1      A.   Yes.

2      Q.   Here in the second full paragraph it says,

3  "Source stated Billy Garcia gave the order to hit

4  Castillo.  Manzanares and Garcia will be killed for

5  their involvement in the killing of Castillo."  You

6  don't know anything about who that source is, right?

7      A.   No, I don't.

8      Q.   And you don't know where I could obtain

9  information on who that source is?

10     A.   I don't remember, sir.  It's been 17 years.

11     Q.   So like the other documents, you would not

12 have kept a log of who you talked to and their

13 identification?

14     A.   No, sir.

15     Q.   If this had happened -- if this trial were

16 occurring in 2001, 2002, it's likely that you would

17 know who the source was, right?

18     A.   More than likely, sir, yes.

19     Q.   And, likewise, same question, with regard

20 to the source in the other question?

21     A.   That's correct.

22     Q.   Did you investigate -- well, how long were

23 you a member of the task force?

24     A.   Approximately four years.

25     Q.   Ending or -- beginning and ending when?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8589

```
 1        A.   Starting in 1997, ending in 2001.

 2        Q.   Sometime after these interviews -- how long

 3   after these interviews did you leave the task force?

 4        A.   I got promoted back to the police

 5   department just shortly thereafter; it was in that

 6   same year.

 7        Q.   And once you got back to the police

 8   department, did you ever conduct any investigations

 9   that were relevant to SNM activities?

10        A.   No.

11        Q.   So everything else --

12        A.   Everything remained within the jurisdiction

13   of the Las Cruces Police Department when I returned

14   back to the city police.

15             MR. COOPER:   Okay.   May I have a moment,

16   Your Honor?

17             THE COURT:   You may.

18             MR. COOPER:   Pass the witness.   Thank you.

19             THE COURT:   Thank you, Mr. Cooper.

20             Mr. Burke?   Anybody else on the defense

21   side?   Anyone else have any cross-examination of

22   Mr. Rosa.   Mr. Beck?

23                     CROSS-EXAMINATION

24   BY MR. BECK:

25        Q.   Lieutenant Rosa, I want to go back over a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    couple of these documents.  Would you bring up Bates

 2    3032, please.  Do you know whether this source was an

 3    SNM Gang member?

 4        A.   I don't recall.

 5        Q.   Do you see anywhere on this document that

 6    it says he was an SNM Gang member?

 7        A.   No, I do not.

 8        Q.   And I know you're not a prosecutor, but

 9    does this document generally say that Billy Garcia is

10    responsible for ordering a murder, specifically of

11    Bobby Ortega?

12        A.   In general, yes.

13        Q.   And do you know that to be an SNM Gang

14    member named Bobbalu; nicknamed Bobbalu, I should

15    say?

16        A.   Bobbalu?  Where do you get the Bobbalu,

17    sir?

18        Q.   I'm just asking if you know that.

19        A.   I don't know that.

20        Q.   That's what I figured.  And so do you know

21    who Billy Garcia is, a/k/a Wild Bill?  Do you

22    remember that from working on the SNM prosecutions?

23        A.   No, I do not.

24        Q.   So you wouldn't know if he was a leader of

25    SNM at the time of the 2001 murders?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8591

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 224592

```
 1          A.    No, I would not know.

 2          Q.    And I think you said that you didn't do

 3    anything to follow up on this information, right?

 4          A.    That's correct.

 5          Q.    How long have you been working in law

 6    enforcement?

 7          A.    24 years.

 8          Q.    And in your 24 years' experience, if you're

 9    meeting with someone who is providing information, do

10    you go -- as a confidential informant, which -- let's

11    refer to this person as a confidential informant --

12    do you go on just their testimony alone, or do you

13    want to corroborate it before you move forward with

14    it?

15          A.    We attempt to corroborate what he's

16    stating.

17          Q.    And if this person in that last paragraph

18    says that, "Source stated that Garcia was not

19    associated with the SNM," if you interviewed other

20    SNM members, and even prison officials, and they told

21    you that Garcia was associated with the SNM, and in

22    fact he was a leader of the SNM, would that

23    corroborate or not corroborate this person's

24    statements about the SNM?

25          A.    It wouldn't corroborate what he stated.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8592

225

```
 1        Q.   If you're investigating the SNM, and it
 2   says this person, Garcia, is not associated with the
 3   SNM, but he is actually a leader in the SNM at that
 4   time, would that -- in your opinion, would you find
 5   this source useful for SNM information, or would you
 6   think that perhaps he doesn't have much information
 7   on the SNM?
 8        A.   I would second-guess everything he would be
 9   sharing.
10        Q.   All right.  Can we look at Bates 597,
11   please.  So it looks to me -- I probably should have
12   paid closer attention -- but it looks to me like this
13   information came from an interview with Captain
14   Telles, and not with a specific inmate or inmates?
15        A.   That's correct.
16        Q.   And I think here in the second paragraph --
17   well, third paragraph -- sorry, I can't count --
18   right there, that I circled with red, it says that
19   "Leroy Lucero, a/k/a Smurf, is currently running the
20   SNM at the SNMCF."  Do you see that?
21        A.   Yes, I do.
22        Q.   All right.  And do you know whether that
23   was true at the time?
24        A.   I don't remember if that was true or not.
25        Q.   All right.  And I think you said you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8593

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 226594

```
 1    wouldn't know if Billy Garcia was higher or lower
 2    than --
 3         A.   I would not know.
 4         Q.   But if you talked to Mr. Lucero, and he
 5    said that Billy Garcia was higher up in the gang at
 6    that point, would you rely on his statement, at least
 7    partially for that?
 8         A.   I would have to corroborate it as well.
 9         Q.   Okay, good.  Fair enough.
10              All right.  I'm showing you now on the
11    overhead a document.  Do you see where it says,
12    "Offender Physical Location History" at the top?
13         A.   Okay, yes.
14         Q.   And underneath that, do you see where it
15    says, "Billy Lee Garcia"?
16         A.   Yes, I do.
17         Q.   Have you ever seen one of these physical
18    location history sheets before?
19         A.   No, I have not.
20         Q.   Do you recognize -- down at the bottom
21    here, around 2001, do you recognize the name under
22    location there, to Southern NMCF?
23         A.   I believe that's a reference to the
24    Southern New Mexico Correctional Facility.
25         Q.   And that's where you know that the murders
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227595

```
 1    happened in 2001, right?

 2         A.   That's correct.

 3         Q.   And do you remember that those murders

 4    happened on or about March 25 or 26 of 2001?

 5         A.   I don't recall when the incidents occurred.

 6         Q.   Okay.  But looking at this, does this

 7    indicate to you that Billy Lee Garcia, at least

 8    according to this document, was moved to the Southern

 9    New Mexico Correctional Facility on or about March 7

10    or 8 of 2001?

11         A.   According to this document, yes.

12         Q.   And if we could have back Bates 597,

13    please.  And, again, I think you went over this in

14    your direct examination with Mr. Cooper, but it looks

15    like this interview probably happened either February

16    27, 2001 or February 28, 2001; is that fair to say?

17         A.   Yes.

18         Q.   And is that before March 8 of 2001?

19         A.   Yes, it is.

20         Q.   And so, if you found out that Billy Garcia,

21    who we saw moved down there in March of 2001, was

22    higher up in the organization than Leroy Lucero, and

23    ran the pod after he got there, would it help you

24    determine whether Leroy Lucero was running the pod in

25    March of 2001, that information help you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8595

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 228

```
 1        A.   It may or may not.  I won't say.  I can't

 2   corroborate.

 3        Q.   Fair enough.  Then, if we could go to Bates

 4   605, please.  Down here in the third paragraph, does

 5   that say that, "The source stated that Billy Garcia

 6   gave the order to hit Castillo?

 7        A.   That's correct.

 8        Q.   And earlier on, it says that, "George

 9   Manzanares was responsible for ordering the killing

10   of Frank Castillo," right?

11        A.   That's correct.

12        Q.   Do you know -- if you know -- the way the

13   SNM operates, that multiple people can be involved in

14   placing an order to kill another SNM member?

15        A.   I do not know.

16        Q.   And again, do you remember corroborating

17   any of this information from this source?

18        A.   I don't remember, sir.

19        Q.   Okay.  And if several inmates told you that

20   Billy Garcia gave the order to kill inmate Castillo,

21   would that help you corroborate this source's

22   information?

23        A.   It may.

24        Q.   And if several sources didn't mention it at

25   all that George Manzanares was involved, would that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 229597

```
 1    lead you to believe that this information about

 2    George Manzanares was accurate or inaccurate, or

 3    would it --

 4         A.   Same.

 5         Q.   Fair enough.

 6              MR. BECK:  May I have a moment, Your Honor?

 7              THE COURT:  You may.

 8              MR. BECK:  Nothing further, Your Honor.

 9              THE COURT:  Anyone else?  Mr. Cooper, do

10    you have any redirect?

11              MR. COOPER:  Briefly, Your Honor.

12              THE COURT:  Mr. Cooper.

13                    REDIRECT EXAMINATION

14    BY MR. COOPER:

15         Q.   Looking at Document 3032, Mr. Rosa, about

16    in the middle of that first big paragraph it says,

17    "Veteran members of the Syndicato de Nuevo Mexico,

18    SNM, are unhappy with the activities of younger

19    members."  You'd necessarily need to be an SNM member

20    to know that; correct?

21         A.   It could come from any sources inside the

22    prison system.

23         Q.   Okay.  All right.  A minute ago you said to

24    Mr. Beck that you would second-guess this source's

25    information if you knew to be that Billy Garcia was a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8597

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 230 0598

```
 1    member of SNM; you'd think this guy really doesn't

 2    have good information, right?

 3         A.   It depends, yes.

 4         Q.   And that would hold true for all of his

 5    information, wouldn't it?

 6         A.   It may, yes.

 7              MR. COOPER:  Okay.  Thank you.

 8              THE COURT:  Thank you, Mr. Cooper.  Any

 9    other defendant have redirect?  Mr. Burke?  Anyone

10    else?

11              Mr. Rosa, you may step down.  Is there any

12    reason Mr. Rosa may not be excused?

13              MR. COOPER:  No, Your Honor.  Thank you.

14              THE COURT:  Anybody else have an objection?

15    Mr. Beck?  Are you okay?

16              MR. BECK:  No, Your Honor, he may be

17    excused.

18              THE COURT:  All right.  You're excused from

19    the proceedings.  Thank you for your testimony.

20              All right.  Mr. Castle, Mr. Cooper, any

21    other witnesses this afternoon or --

22              MR. CASTLE:  Yes, Your Honor.  We would

23    call Juan Barela.

24              THE COURT:  This will again be in support

25    of the motion to dismiss?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8598

1          MR. CASTLE:  It will.

2          THE COURT:  Mr. Barela, if you'll come up

3    and stand next to the witness box on my right, your

4    left.  Before you're seated, my courtroom deputy, Ms.

5    Bevel, will swear you in.

6                    JUAN BARELA,

7        after having been first duly sworn under oath,

8        was questioned and testified as follows:

9                 DIRECT EXAMINATION

10         THE CLERK:  Please be seated, and please

11   state your name for the record.

12         THE WITNESS:  My name is Juan Barela.

13         THE COURT:  Mr. Barela.  Mr. Castle.

14   BY MR. CASTLE:

15       Q.   Mr. Barela, back in 2001, were you a work

16   detail supervisor at the Southern New Mexico

17   Correctional Facility?

18       A.   Yes, I was.

19       Q.   In that capacity, I take it you weren't an

20   investigating officer with the STIU, or --

21       A.   No, I wasn't.

22       Q.   -- or for the warden, for that matter?

23       A.   No.

24       Q.   But in that capacity sometimes would you

25   overhear information that you would pass on to those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8599

1    that might be investigating crimes?

2         A.   Yes.

3         Q.   Specifically, I want to bring your

4    attention to March 7, 2001.  Prior to coming in here

5    today, did you get to take a look at a document that

6    had that date on it?

7         A.   The first subpoena did have it.  And when I

8    was told that my testimony wasn't needed, I went

9    ahead and got rid of it.

10        Q.   Okay.  I'm going to show you what has been

11   admitted as Exhibit, L and have you take a look at

12   that and see if, in fact, that's the document you

13   might have reviewed when you first received your

14   subpoena?  Is that the document?

15        A.   That is correct.

16        Q.   What is Defendants' Exhibit L?

17        A.   It is a memorandum that -- usually, when

18   individuals come in, they always talk or say

19   something.  So it's not my job to decide whether the

20   information is true or not.  So what I do is I just

21   type it down and pass it on.

22        Q.   In case it might be important?

23        A.   Correct.

24        Q.   Would you have done this report on March 7,

25   2001?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8600

```
 1            A.    The date shows March 7, 2001, yes, sir.
 2            Q.    Okay.  Would you have done it even that day
 3      or the day after?
 4            A.    I can't recall exactly.
 5            Q.    Okay.  What was your practice at that point
 6      in time?  If someone said something that was
 7      concerning, would you try to write it down on that
 8      shift or the next time you --
 9            A.    Yes, I would try.
10            Q.    So if it was the end of your shift, you
11      might do it the next day, or something?
12            A.    Correct.
13            Q.    Do you recall this information that's put
14      down in this report?
15            A.    No, sir, I don't recall at all.
16            Q.    When you do a report like Exhibit L, would
17      you try to put down as much information and as
18      accurate information as you could?
19            A.    I put down information, and then I pass it
20      on.  If it's pertinent to anything that they're
21      looking into, then they'll come up and ask me for any
22      added information.
23            Q.    You certainly wouldn't put anything that
24      was inaccurate in those reports, right?
25            A.    Oh, no, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8601

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8602

1          Q.   Did you know an inmate by the name of

2    Leonard Lujan?

3          A.   Right now I don't even know who he is.

4          Q.   Okay.  The names -- there are probably a

5    ton of inmates that came by --

6          A.   Quite a bit, yes, sir.

7          Q.   -- during your years.  Did you remember an

8    inmate by the name of Jimmie Gordon?

9          A.   Not right offhand, no.

10         Q.   So this says you received confidential

11   information.  What did you mean by "confidential

12   information"?

13         A.   The confidential information is what's

14   written right there; that I would consider

15   confidential.

16         Q.   Okay.  Well, the beginning of this report

17   says, "The informant who has provided information,

18   which has been accurate in the past," and then it

19   goes on to state what that person said.  Do you see

20   that?

21         A.   Yes.

22         Q.   So would this have been a person who you

23   had gotten in the information in the past and passed

24   on to the warden previously?

25         A.   Pretty much.  Probably information that in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8602

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8603

1    the past had been proved to be accurate.

2         Q.   Have you ever been in law enforcement other

3    than your role here?

4         A.   In Corrections?  I've been in Corrections?

5         Q.   Yes.

6         A.   No, sir.

7         Q.   How about in Corrections, were you -- did

8    you ever -- were you ever in any investigative role?

9         A.   In '99 to 2001, I didn't do any

10   investigations, but drugs were presented to me to

11   follow through and present into the district

12   attorney's office for prosecution.

13        Q.   And so this language here, "provided

14   information -- "the informant who has provided

15   information, which has been accurate in the past,"

16   that's language that we often see in the courthouses

17   as affidavits for search warrants and things like

18   that.  Where did you get that language from?

19        A.   When -- probably -- I would say probably

20   through our training that we get refresher courses

21   through the years in Corrections.

22        Q.   Okay.  So when you do a report, you want to

23   let the people that read it know that this isn't just

24   somebody who is giving you some random information,

25   it's somebody who you've relied upon previously; is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 236 8604

1   that fair?

2       A.   Correct.  Well, it's based on any

3   individual giving information.  And then it's passed

4   on.  But we were always taught never to put who the

5   person was giving the information, in case the memo

6   would get lost, or --

7       Q.   Fair enough.  But when you put down this

8   informant had provided accurate information in the

9   past, was that so that your superiors would know that

10  this is something that might be reliable?

11      A.   That would probably be their decision, if

12  there is anything pertinent that would coincide with

13  what information they have on any individual.

14      Q.   Why would you tell the warden here that the

15  informant that provided information on this instance

16  had been accurate in the past?  Why did you tell the

17  warden that?

18      A.   Probably more than likely the individual

19  had given me information in the past.

20      Q.   Okay.  That was accurate?

21      A.   Correct.

22      Q.   Would you have recorded the name of that

23  informant in some other form somewhere else?

24      A.   Not that I can recall.

25      Q.   If STIU had come and talked to you, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8604

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8605

1   asked you who that informant was, or the warden did,

2   would you have told them?

3        A.   More than likely.

4        Q.   Would you ever have withheld the name of

5   that informant from your boss, the Warden?

6        A.   No, sir.

7        Q.   I know this is probably an impossible

8   question to ask, but lawyers are fond of asking

9   impossible questions, so I'm going to ask you anyway,

10  okay?  Could you tell us how long you would have

11  remembered the name of that informant after 2001?  Is

12  that something -- you know your own memory -- is that

13  something you would have forgotten the next day, a

14  month, a year, a couple years?

15       A.   Probably after I was removed from the work

16  detail supervisor.

17       Q.   Which would have been when?

18       A.   I don't know exactly when.  And I don't

19  know if I was placed at prison industries after that.

20       Q.   Could you give us maybe a year?

21       A.   Probably 2002, 2003, somewhere around

22  there.  All supervisors are subject to rotations of

23  shifts.

24       Q.   And just go a little bit further down.  In

25  this report you say, "If it is possible to pass this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8605

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8606

1    information to the facility that inmate Gordon was

2    sent to, in case this hit is true."  Do you see that

3    sentence there?

4         A.   Yes, sir.

5         Q.   Did you write that because you were

6    concerned for inmate Gordon's safety?

7         A.   I may have, yes, sir.

8         Q.   Is that what it appears to state?

9         A.   That is correct.

10             MR. CASTLE:  If I could have a moment?

11             THE COURT:  Certainly.

12             MR. CASTLE:  No further questions.

13             THE COURT:  Thank you, Mr. Castle.  Anyone

14   else?  Mr. Burke?  Anybody?

15             MR. BURKE:  No, Your Honor.

16             THE COURT:  Any other defendant have any

17   questions of Mr. Barela?

18             Mr. Beck, Mr. Castellano, do you have any

19   in cross of Mr. Barela?

20             MR. CASTELLANO:  Yes, Your Honor.

21             THE COURT:  Mr. Castellano.

22                    CROSS-EXAMINATION

23   BY MR. CASTELLANO:

24        Q.   Good afternoon, Mr. Barela.

25        A.   Good afternoon.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                  1-800-669-9492
                                                                   e-mail: info@litsupport.com

DNM 8606

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 239

```
 1          Q.   You said you used to present cases to the
 2    DA's office for prosection; is that correct?
 3          A.   That is correct.
 4          Q.   Did you ever present any cases to me for
 5    prosecution back then?
 6          A.   Mainly all of them.
 7          Q.   So can we have Exhibit L back up here,
 8    please.  And while we're doing that, how often would
 9    you write reports like this?
10          A.   During the work detail, probably three or
11    four times, somewhere around there.
12          Q.   Three or four times during what time
13    period?  Per week?  Per month?  During your entire
14    term there?  Do you remember?
15          A.   It's hard to say.  I can't even recall how
16    many I've written, if I wrote any, or if that was the
17    only one.
18          Q.   And did you know whether or not either of
19    these people were affiliated with the SNM Prison
20    Gang?
21          A.   Not a clue.
22          Q.   Were you familiar with the SNM Prison Gang
23    from your time at the prison?
24          A.   Yes, I was.
25          Q.   And how would you describe them as a gang?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1        A.   Like individuals sticking together.  That's

 2   about all I can say about that.

 3        Q.   Would you consider them a violent or

 4   dangerous gang?

 5        A.   Yes, I would.

 6        Q.   Looking at the document, can you tell the

 7   Court whether this document was prepared in order to

 8   prosecute anybody, or was it for the safety of people

 9   at the facilities?

10        A.   Probably -- well, I don't know what they

11   used it for.  It looks like it was placed in some

12   kind of file.

13        Q.   So if it was addressed to the acting chief

14   of security, would that be important for the security

15   of the institution?

16        A.   Yes.

17        Q.   And as far as you knew, was there any crime

18   committed, or were you trying to possibly prevent a

19   crime, if this information was true?

20        A.   I would say to prevent.

21        Q.   So under these circumstances, were you

22   investigating any type of crime?

23        A.   No, I was not.

24        Q.   And is it accurate to say that you just

25   received information and forwarded it to somebody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8608

     1   else?

     2        A.   That is correct.

     3        Q.   And that way, at least if inmate Gordon was

     4   in harm's way in some way, he could potentially be

     5   protected?

     6        A.   Correct.

     7        Q.   Now, in terms of the information being

     8   reliable, did you or the institution have a standard

     9   for determining whether somebody was considered

    10   reliable?

    11        A.   I believe the facility had their standard

    12   of reliable informants.

    13        Q.   So when you indicated that the person or

    14   the information provided before was reliable, were

    15   you using the institution standard, or was that just

    16   your own personal standard?

    17        A.   No, that would be the institution standard;

    18   that would tell them, you know, to at least look into

    19   it, or probably find the individual.

    20        Q.   Isn't it a case that if more information is

    21   necessary, you could be contacted.  Do you recall

    22   anybody ever following through with you regarding

    23   this information?

    24        A.   I don't recall if they did or not.

    25        Q.   Then, as I stated here -- I'll highlight

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 8609

8610

 1   for you -- where it says, "The information as

 2   provided has been accurate in the past."  Do you

 3   remember how many times somebody would have to give

 4   you information in order for you to put that in a

 5   report, for reliability purposes?

 6        A.   I believe once -- well, once I would submit

 7   it, if it was found to be true, then that would be

 8   probably, or has given information in the past, more

 9   than likely.

10        Q.   And so since you don't remember either of

11   these individuals, is it fair to say you don't know

12   whether if they were even associated with the SNM

13   Prison Gang?

14        A.   That's correct.  I wouldn't know if they

15   were.

16        Q.   And it looks -- at least from the memo you

17   wrote, there is an indication that Jimmie Gordon was

18   being moved, and so this information was supposed to

19   follow him wherever he was to keep him safe; is that

20   a fair conclusion?

21        A.   Yes, sir, that's correct.

22        Q.   Once again, since this is directed to the

23   active chief of security, was this in any way

24   prepared for purposes of litigation or for court

25   purposes?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8610

```
 1        A.   I wouldn't know exactly what it was going

 2   to be used for.

 3        Q.   All you knew was you had information, and

 4   it was your job to make sure you passed it on so

 5   someone could be kept safe?

 6        A.   Correct.

 7             MR. CASTELLANO:  May I have a moment, Your

 8   Honor?

 9             THE COURT:  You may.

10             MR. CASTELLANO:  Thank you, I pass the

11   witness.

12             THE COURT:  Thank you, Mr. Castellano.

13             Mr. Cooper or Mr. Castle.

14             MR. CASTLE:  Just one question.

15                      REDIRECT EXAMINATION

16   BY MR. CASTLE:

17        Q.   If you can look at Defendant's Exhibit L.

18   Just to clarify, was this addressed to the acting

19   chief of security, or was this to Lawrence Tafoya,

20   the Warden?

21        A.   The acting chief of security was my

22   supervisor.  So any memos that I would submit -- I

23   can't go directly to the warden; they have to go

24   through my immediate supervisor.

25        Q.   So it went through him, but to the warden,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    right?
 2         A.   Yes, sir, that's correct.
 3              THE COURT:  Anyone else?  All right.  Mr.
 4    Barela, you may step down.  Is there any reason Mr.
 5    Barela cannot be excused from the proceedings?  Mr.
 6    Castle?
 7              MR. CASTLE:  No, Your Honor.
 8              THE COURT:  Anyone else have any objection?
 9    Mr. Castellano, can he be excused?
10              MR. CASTELLANO:  Yes, sir.
11              THE COURT:  All right.  Mr. Barela, you may
12    be excused from the proceedings.  Thank you for your
13    testimony.
14              THE WITNESS:  Thank you, Your Honor.
15              THE COURT:  All right.  Do we have further
16    witnesses we want to take this afternoon, Mr. Castle?
17              MR. CASTLE:  We have no other witnesses
18    this afternoon.
19              THE COURT:  All right.  Do you want to --
20    let me ask, does the Government have any witnesses on
21    the motion to dismiss?
22              MR. BECK:  No, Your Honor.
23              THE COURT:  All right.  Are we ready to
24    argue the motion to dismiss?  Or do we have more
25    testimony we need to take?  I know we've got the one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8612

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 245

```
 1    other 104 tomorrow.  We've got Mr. Acee, don't we?
 2              MR. CASTLE:  We have Mr. Acee and also
 3    Special Agent Roundy.
 4              THE COURT:  Okay.  Is that tomorrow?
 5              MR. CASTLE:  Yes.
 6              THE COURT:  Did we work out the details on
 7    Mr. Acee, how he's going to testify?
 8              MR. BECK:  I think he's preparing to
 9    testify by phone.  And I think Mr. Castle will get
10    him the documents, or I will from Mr. Castle.
11              THE COURT:  Is that acceptable, Mr. Castle?
12              MR. CASTLE:  Yes, Your Honor.
13              THE COURT:  Are all the defendants
14    comfortable with that?  Mr. Burke?
15              MR. BURKE:  Yes, Your Honor.
16              THE COURT:  All right.  We'll take his
17    testimony by phone tomorrow, we'll take Mr. Roundy,
18    then we'll argue the motion to dismiss after we take
19    that testimony?  Is that the plan?
20              MR. BURKE:  Yes, Your Honor.
21              THE COURT:  All right.  Then we may have
22    skipped around a bit, so y'all may have to get me
23    back on-track as to where we are.
24              MR. CASTLE:  If I could help the Court.
25              THE COURT:  Yes, you may.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8613

```
 1              MR. CASTLE:  We skipped over, but I think
 2    they argued it somewhat, but there was Document -- I
 3    think it's 9 on your tab, Document 1871.
 4              THE COURT:  Yes, that's what I had next,
 5    because Mr. Troup's motion is being oral argued at
 6    the same time with Mr. Garcia's, right, on the motion
 7    to dismiss?  Those are all being argued together?
 8              MR. BURKE:  Correct, Your Honor.
 9              THE COURT:  All right.
10              MR. CASTLE:  Judge, we actually might have
11    skipped over number 8, which is the United States'
12    motion in limine to exclude extrinsic evidence.
13              THE COURT:  I'm not sure I brought that
14    back with me.  Do you want to argue that?  Are you
15    going to refresh -- I read it in preparing for the
16    last hearing, but I didn't reread it and didn't bring
17    it with me.
18              THE CLERK:  Do you want me to reprint it?
19              THE COURT:  Let's see what the motion is.
20    Maybe they can jog my memory.
21              MR. BECK:  Yeah, I think the argument can
22    be pretty quick.  This is our motion to exclude the
23    videos of our testifying witnesses who participated
24    in contact visits.  So the Court has previously
25    overruled this objection in Trial 1.  I think we were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8614

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 248615

```
 1    trying to get a second bite at the apple.
 2              THE COURT:  Are you going to have a bunch
 3    of them again this time?
 4              MR. BECK:  I don't expect we'll have as
 5    many this time.  I think I'd anticipate that it would
 6    be Benjamin Clark, Billy Cordova again, whose videos
 7    we saw from the last trial.  And I think that may be
 8    it.
 9              THE COURT:  And the defendants want to show
10    these to the jury?  Is that --
11              MR. BURKE:  Yes, Your Honor.
12              THE COURT:  Well, I guess my reasoning has
13    been that, just as I have under Old Chief allowed the
14    Government to put on their case, and the robustness
15    with which I think the Supreme Court has indicated it
16    should be allowed, the defendants can do the same.
17    It seems to me that the evidence is admissible.  I
18    think, if I understand the Government's point is,
19    once the witness agrees that he had sex with family
20    members, girlfriends, wives, that it's not necessary
21    to show the tape, and it's a 403 argument.  And I
22    don't know how much the jury enjoys it, but -- so
23    it's a call that I probably will leave to the
24    defendants.  But, in fairness to them, allowing them
25    to put on their case with the same robustness that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8616

 1   I'm allowing the Government, it doesn't seem to me

 2   that I should be kind of stipulating away their

 3   ability to put it in.  It's relevant.  And because it

 4   goes to benefits that the cooperators may be getting

 5   in these cases, prison officials or the Government is

 6   turning an eye and letting this take place.  I

 7   thought about it several times, but I guess I'm

 8   inclined to continue to allow those.

 9           Anything else you want to say in support of

10   your motion, Mr. Beck?

11           MR. BECK:  No, Your Honor.  I think we just

12   tried to beef it up a little.  I think last time it

13   was mostly oral.  And this time we wanted to put it

14   in writing to see if we could get a hit, or maybe a

15   bunt over to first base.

16           THE COURT:  Let me see if Mr. Burke talks

17   me out of it.

18           MR. BURKE:  Oh, no, I'm not going up there.

19   I think you were right the first time, and you're

20   right this time.

21           THE COURT:  Let me ask y'all, I know some

22   of you have talked to jurors and stuff the first

23   trial.  Did you get any feedback as to whether they

24   liked that stuff?  Didn't like it?  Any reaction?

25           MS. ARMIJO:  Your Honor, as I recall, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8616

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 249

1    jurors were very vocal about it, and they disliked

2    it, and actually thought that it was not needed, and

3    were very vocal about how they did not want to see

4    it, and how it was not needed, and almost -- I think

5    the tone was that they held it against the defense.

6    So if they want to put it on, by all means, go ahead.

7           THE COURT:  Well, anybody want to speak?

8    Mr. Burke, did you want to speak on the issue?

9           MR. BURKE:  No.  Your Honor, I think that

10   we'll decide amongst ourselves.

11          THE COURT:  Anybody else want to speak on

12   it?  Well, I think I'm going to leave it to the

13   defense.  If you want to put it on, you can put it

14   on.  It may be stretching robustness to some limits

15   there, but I'll deny the motion to keep it out, and

16   allow the defendants to decide whether they want to

17   put it in.

18          All right.  The next motion that I have up

19   was 1871, which I think we may have resolved.  But it

20   may have been more with the first trial defendants

21   than with the second.  I didn't -- I know when this

22   issue came up about Agent Acee's -- some of the

23   activities up in Vancouver -- when it came up, I

24   didn't think anything there was relevant.  The

25   defendants in the first trial didn't attempt to do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8617

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 250 8618

```
 1    anything with it.  Anybody plan to do anything with
 2    it on the second trial?  Is this motion basically
 3    opposed to keep out unrelated conduct?  Anybody want
 4    to speak to it?  Mr. Benjamin.
 5              MR. BENJAMIN:  I would assume if they open
 6    the door, or something like that -- I didn't
 7    necessarily agree with the statement that there
 8    was --
 9              THE COURT:  I'm doing okay.  If Ms. Bean is
10    hearing you, I'm all right.
11              MR. BENJAMIN:  There was -- I think it was
12    in their motion that they stated that they didn't see
13    any actions on the part of Agent Acee or something.
14    I disagree with what was in the motion.  But I don't
15    see how I could get it in, is probably the fair
16    statement.
17              THE COURT:  Okay.
18              MR. BENJAMIN:  But if I do, I will
19    approach.
20              THE COURT:  Okay.  All right.  Does
21    everybody agree with that?  Right at the moment,
22    we're not going to?  Mr. Burke?
23              MR. BURKE:  Yes, Your Honor, I agree.
24              THE COURT:  Okay.  At the present time,
25    we'll not go into unrelated conduct that's brought up
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8618

```
 1    in the motion.  If somebody sees the Government has

 2    opened the door, then before they'll try to get into

 3    it with Mr. Acee in front of the jury, then they'll

 4    approach the bench.  Does that take care of your

 5    motion, Mr. Beck?

 6              MR. BECK:  Yes, Your Honor.

 7              THE COURT:  All right.  Then we'll go to

 8    32.  I have been putting behind Tab 32 is everything

 9    that's been rolling in on the James statements.  So I

10    have been reading them, and I am working on it.  I

11    would say that I'm right at the halfway point on my

12    chart.  I have continued to work on this case

13    throughout the three weeks that I could -- as much as

14    I could to try to close out some stuff in

15    Albuquerque.  And the only reason the charts are not

16    completed, is because I've been looking at some other

17    issues related to the evidentiary issues.  And I'll

18    try to be sharing those with you over the next day

19    and a half, so that before you leave here, I hope to

20    have -- I would love to have every chart handed to

21    you.  I don't know if that's going to be possible.

22    But I hope to have charts handed to you.  They may be

23    rough.  And I still may be working on them as we

24    start the trial.  But I'll try to hand you something

25    physically, so that you know what I'm thinking on all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8619

1    the James statements, on all the statements against

2    interest, and then also some of the new statements

3    that have come up here in the last round of briefing

4    that we may be arguing a little bit later.  I've

5    given some thought to those.

6              So does anybody have anything else on what

7    I'm calling the James statements, this bundle of

8    additional briefing that's been coming in?

9              MR. CASTLE:  We have witnesses tomorrow.

10   That's it.

11             THE COURT:  Okay.  And those relate to the

12   statements against interest, not any more James

13   statements; correct?

14             MR. CASTLE:  That's true.  And I told Mr.

15   Castellano I'd consult with him and let him know the

16   gist of it.

17             THE COURT:  And you've got two more of

18   those you're raising issues with, Mr. Castle?

19             MR. CASTLE:  Actually three, Judge.  Josh

20   Mirka, Joseph Otero, and Leroy Lucero.

21             THE COURT:  Okay.  Unless somebody has

22   something on that bundle of briefing that I hope to

23   hand you something sooner rather than later, we'll

24   come back to that.

25             The next motion I had up was, I think, a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253

1   motion that's now moot, or I denied it at the last

2   hearing.  And this was Mr. Sapien's motion to quash

3   the subpoena as to Fred Quintana.  So unless anybody

4   has anything, I think I'm just denying that motion,

5   because I think I effectively did that last time when

6   we had the hearing.

7        And then I understand the next motion is

8   1936, which was the motion that was an objection to

9   proposed courtroom seating arrangement.  I understood

10  that Ms. Wild had some conversations, negotiations

11  with Mr. Castle, and the current arrangement was come

12  up with.  Let me sort of see if I can put it on the

13  record.

14       To try to assist the jury in doing their

15  duty, which they will be advised throughout the trial

16  to do, is to treat each defendant individually.  I

17  think this was Mr. Castle's suggestion, or Ms. Wild,

18  but it came out of that, was we would color code the

19  tables.  So the Government got bunting on their table

20  as well.  But the defendants have different colors.

21  And think the colors were white and black.  I think

22  there might have been some hope that there could be

23  more colors, but I think this was all we could come

24  up with.  We've looked at them; we looked at them in

25  the first trial, we've looked at them today.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Mr. Roberts, did that screen ever come on for you

2   this morning?  Did it ever come on?

3            MR. ROBERTS:  Yes, I believe it did.

4            THE COURT:  It did.  Okay.  And did it

5   create any problems from your standpoint?

6            MR. ROBERTS:  No, I don't believe so,

7   Judge.

8            THE COURT:  All right.  Now, the good thing

9   that we got that I did not expect to give you was

10  everybody has got a microphone.  And IT went to great

11  efforts to just scrounge around and find all this --

12  monitor for each one of you.  And I don't know where

13  they found the portals.  But if you see those guys,

14  thank them, because that was really more than I

15  thought we were going to be able to deliver.

16           So, in any case, I understand that this

17  objection has been withdrawn, Mr. Castle?

18           MR. CASTLE:  Yes, Your Honor.  I filed

19  1936.  My main objections were two-fold; one, that we

20  couldn't sit with our clients; number two, the

21  separation of the two rows.  Because the Court made

22  the efforts to take care of those two concerns, I

23  filed last night motion 2053 to withdraw my

24  objections under 1936.

25           THE COURT:  And the one other thing I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8622

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255

 1   we were able to do is, I think you'll be able to

 2   have -- and I see it today -- you'll have paralegals

 3   that will be able to stay here.  And Ms. Gilbert will

 4   be able to stay here.  And as soon as we get through

 5   with jury selection, I think you can have that inside

 6   of the well there.  So I think you'll be able to get

 7   some people in here.  And so I didn't know if we were

 8   going to be able to do that, too.  So I'm pleased

 9   that at least we made some progress on that.

10           MR. CASTLE:  Your Honor, the other thing --

11   this isn't really part of that motion -- but some of

12   the defendants have paralegals that can't sit up

13   here.  Are we going to be free to be able to move or

14   have to ask the Court's permission?

15           THE COURT:  No, you don't need to ask my

16   permission.  The one thing you might ask is, you

17   might ask the marshals if they have any concern.  But

18   they've been pretty good to the lawyers.  I think if

19   the defendants get up and move, we might have a

20   problem.  But I think they've been pretty good about

21   the lawyers.  But you might just ask Deputy

22   Mickendrow, when he's in here, if there's any problem

23   on that.  But from my standpoint, no problem all.

24           All right.  If there is nothing else on

25   that, we then will move to the motion to bifurcate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8623

```
 1    Counts 4 and 5 from Counts 1 and 3 and 13 through 16.
 2    And as I understand it, this is a motion that
 3    Mr. Garcia has filed.  It's not unanimous among the
 4    defendants.  I think -- do both the Gallegos brothers
 5    oppose this one?  Okay.  I knew that Ms. Torraco and
 6    Mr. Roberts' client did.  I've certainly thought
 7    about it.  I went and looked at all the pictures that
 8    anybody had given me.  I -- you know, look, they're
 9    not pictures that anybody would like to have.  I
10    guess, having just gone through this trial, after
11    hearing all the evidence, I don't think that they're
12    any more inflammatory or a problem than what I think
13    we're going to hear, is almost daily, the witness of
14    the day testifying about two or three murders, and
15    talking about how they were accomplished, whether
16    they were accomplished by some strangulation or by
17    repeated stabbings, or by shots, or I know there are
18    other burned bodies in the 302s, that I've read
19    about.  I just don't think that it should drive what
20    we're trying to do here.  I think it would
21    probably -- especially given the Gallegos brothers'
22    objections, given the Government's objections, the
23    fact that the Government would have to order theirs
24    in a certain way, the fact that the jury would have
25    to deliberate twice -- I just don't think those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    pictures rise to the level of causing anything of

2    that nature to do.  I'll certainly listen.  I know

3    that we talked about it some at the end of the

4    hearing, and it was one of the things that y'all

5    asked me to do, that if I did not schedule these

6    hearings, to concentrate on, so it was something that

7    I spent some time looking at, and grabbing the

8    pictures from a number of exhibits, and looking at

9    them in different ways.

10             But in any case, Mr. Benjamin, do you want

11   to argue this motion?  Do you want --

12             MR. BENJAMIN:  At this point in time, Your

13   Honor, I was just going to clarify that Joe Gallegos

14   is asking for Counts 4 and 5 to be severed.  But we

15   join the bifurcation.  I want out of the main group

16   with the Burns murder.

17             THE COURT:  Yeah, fair enough.  And I think

18   that was also Andrew Gallegos' position as well;

19   correct?  Looks like you're nodding affirmatively.

20             MS. TORRACO:  Yes.

21             THE COURT:  All right.  Mr. Castle, if you

22   want to argue the motion.

23             MR. CASTLE:  Your Honor, I argued it to

24   some extent last time.

25             THE COURT:  Right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 258

```
 1           MR. CASTLE:  And I set forth what I
 2   considered my best arguments in the pleading.  So
 3   I'll give you my worst ones probably now.  It seems
 4   to me that the weight here is between prejudice --
 5   and I think there is some belief that there is going
 6   to be a danger of prejudice; the question is whether
 7   it's undue or too much, or whether the Court can cure
 8   that prejudice, versus inconvenience.  Because I
 9   don't think the Government really, in their response,
10   really said anything other than this is just not the
11   way we'd like to do it.  The jury would have to
12   deliberate twice.  But that's just a matter of
13   convenience, and they're really going to have to
14   deliberate on each of those counts likely separately
15   anyway.  So I'm not sure it's going to save any time
16   in deliberations.  But even if it did, I don't think
17   that should be the driving force.
18           The real question is, you know, is it fair?
19   Now, I think this Court had some concerns the last
20   time whether Counts 4 and 5 are even going to make it
21   past, you know, half time, essentially, because there
22   is a very tenuous relationship for federal
23   jurisdiction here.  And I think Mr. Benjamin has
24   argued it better than I will.  And if that happens,
25   and if they haven't established it, then we've just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8626

1    had a trial where we've taken at least a week, if not

2    more spreading all these gory pictures, and all these

3    horrible crime base information with -- spreading it

4    around with a brush that's going to be tainting all

5    of our clients.  Because it's not going to be

6    limited.

7              And my understanding is the Government is

8    offering not only against these individuals

9    themselves, but also as enterprise evidence.  So how

10   do we unring that bell?  If we go back -- if the

11   Court doesn't find jurisdiction, or that there has

12   been enough evidence of that, do we then say we know

13   we admitted all this as enterprise evidence, but now

14   jury, you're going to have to, after the fact, kind

15   of undo all that?

16             I guess the other alternative is don't --

17   give an instruction and say this is not enterprise

18   evidence against the other defendants.  And so it's

19   not admissible; you shouldn't consider it whatsoever

20   against these other defendants.  I'm not sure which

21   way the Government is going.  But I thought they were

22   saying all this evidence is also enterprise evidence.

23             So I think we all have, I guess, a dog in

24   this hunt with regards to federal jurisdiction.

25   Because if there is no federal jurisdiction on 4 and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8627

```
 1   5, then it shouldn't be admissible against any of our

 2   clients.

 3             With that said, I understand that I've lost

 4   this motion, so I think I made my record.

 5             THE COURT:  All right.  Thank you, Mr.

 6   Castle.

 7             Anyone else?  Ms. Torraco, do you want to

 8   speak on this?

 9             MS. TORRACO:  Yes, please.  And I

10   understand, Your Honor, that you have already ruled.

11   But I would just like to briefly say a couple of

12   things.  If you were to sever Counts 4 and 5, and

13   everyone else in this room has heard you loud and

14   clear that that's not what you want to do, but if you

15   were, it solves the problem of what's happening with

16   Mr. Billy Blackburn and Scott Davidson and the issues

17   that they will then be reset, and you could do Counts

18   4 and 5 first.  Counts 4 and 5 will be significantly

19   a shorter trial than the entire trials together or

20   even just with the remaining five defendants, so it

21   would be with the remaining four defendants.  So I

22   just want to throw that out there.

23             The second thing is that, when I argued my

24   severance motion, one of the questions that the Court

25   had for the Government was:  Is Andrew Gallegos a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8628

 1   validated SNM member?  Because there were some

 2   concerns that I had raised that he's not a validated

 3   SNM member, and there isn't any evidence to show that

 4   he is.  And at that point, it was represented by the

 5   Government that he is a validated SNM member.  I've

 6   looked through all the discovery.  The documents that

 7   we have from the Department of Corrections and Bureau

 8   of Prisons do not say that he is a validated SNM

 9   member.

10          I did email Ms. Armijo, who was kind enough

11   to get back to me, and I told her, where is all this

12   evidence that you were talking about?  And I wasn't

13   playing dumb.  I really can't find it.  Where is all

14   this evidence?  She did direct me to a document that,

15   again, does not say what the Government represented

16   to the Court.  Because I remember that was one of

17   your concerns.

18          And then, finally, one of the other

19   concerns when I argued severance, was that this Court

20   was saying:  Okay, Ms. Torraco, if we sever Counts 4

21   and 5, then we still have to hear all that same

22   evidence about SNM is a prison gang, and they started

23   in the 1980s, and they gained power, and they're

24   violent, and this is how they give orders and da, da,

25   da.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8629

```
 1            Well, Counts 4 and 5 happened outside
 2    prison, when both Gallegos brothers were not inside
 3    the pen.  And as far as I can tell there is no
 4    orders, there is no paperwork.  The Government's
 5    theory, the best that I can tell, Your Honor, is that
 6    since they're validated SNM members, and there is
 7    going to be all this evidence that they're SNM
 8    members -- which there is not -- therefore, anything
 9    they do -- it's like your mayor argument:  Well,
10    because they're SNM, and therefore, they supposedly
11    did this, which I assert there is insufficient
12    evidence that either Joe Gallegos or Andrew Gallegos
13    committed this murder, or participated in any way.
14    But nonetheless, for argument's sake, since they did
15    it, and since they're SNM members, therefore, it was
16    advancing the enterprise, kind of like your mayor
17    argument.  So therefore, you don't need, and the
18    Government doesn't need all this testimony about what
19    happens in jail and how the prison orders go down,
20    because this was something that happened outside.
21            So I know you've made your ruling.  I want
22    to keep planting the seed, because I do believe that
23    justice dictates having these two counts heard
24    separately.  We could go first.  It would resolve the
25    problems with Arturo Garcia's attorneys.  And it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8630

```
 1    not going to be anywhere near the magnitude of trial

 2    that it would be if we sit here.  We wouldn't even be

 3    here anywhere close to eight weeks.  So thank you for

 4    hearing me.

 5              THE COURT:  Well, you're not arguing for

 6    Mr. Castle's motion.  You're going back to your

 7    motion to sever; correct?

 8              MS. TORRACO:  Right.  Because our position

 9    on Mr. Castle's motion is that the correct decision

10    is to sever.

11              You know, the other thing -- and, you know,

12    I'm wondering how many people are going to get mad at

13    me in this room after I propose this, but maybe it

14    does need to be two juries.  And then that's the

15    bifurcation is the two juries; they can hear the

16    enterprise evidence, and then we move on to Counts 4

17    and 5.  The other jury takes a recess.  I don't know

18    that Counts 4 and 5 is going to take that long.

19              THE COURT:  Tell me, if you're toying with

20    that idea, why do you not like Mr. Castle's proposal

21    of bifurcation?

22              MS. TORRACO:  I don't see what it achieves.

23    So he -- and please, by all means correct me if I'm

24    wrong or come to the podium, but -- I'm sorry, Your

25    Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 264

```
 1              THE COURT:  Well, it doesn't necessarily
 2   help you any.
 3              MS. TORRACO:  No, not at all.
 4              THE COURT:  How does it hurt you?  What is
 5   it that you don't like about bifurcation?
 6              MS. TORRACO:  I guess it doesn't do
 7   anything for us.  I suppose you're right, we could
 8   remain silent on it instead of opposing.
 9              THE COURT:  So it's more that you feel like
10   it somewhat undercuts your motion to sever argument?
11              MS. TORRACO:  That could be one way of
12   saying it.  But I think you're right, in that it does
13   nothing for us.  So there is no reason -- there is no
14   benefit to us.  You're right.  It's interesting that
15   no one wants to be on the Adrian Burns murder case on
16   those particular counts.  It does nothing for us, but
17   it doesn't solve our problem that we believe we're
18   prejudiced by the remaining counts.
19              And I just want to check with co-counsel if
20   there is anything to add.  I have the strong, silent
21   type over here.
22              THE COURT:  You just don't want to be in
23   the case with the other three conspiracies?
24              MS. TORRACO:  Well -- and I don't think
25   that Counts 4 and 5 are really relevant to the other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8632

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 265

```
 1    counts.  There is the issue on the Gomez counts.

 2    Other than that, everything else happens inside the

 3    penitentiary.

 4             So here -- we're sitting here to hear about

 5    all these penitentiary murders.  And imagine if

 6    you're on the jury, and you're hearing about this --

 7             THE COURT:  But isn't about half the case

 8    outside of the prison, about half in?

 9             MS. TORRACO:  I don't think that's --

10             THE COURT:  Gomez and Burns?

11             MS. TORRACO:  No.  I'm sorry.

12             THE COURT:  Gomez and Burns.

13             MS. TORRACO:  Gomez and Burns.

14             THE COURT:  So there are three conspiracies

15    there, and then you've got two in the prison?

16             MS. TORRACO:  If you want to take Gomez and

17    Burns, that's better.  But I was sitting there

18    thinking about this the other day.  The jury is going

19    to sit there -- as a matter of fact, let me just back

20    up.  My very best friend called me the other day and

21    thanked me for being a lawyer on this case because

22    she just got out of jury duty.  She got a letter,

23    because she listed -- it said:  Do you know any

24    attorneys?  And she listed my name, and she thinks

25    that's what got her out of it.  And she said the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 266

 1    thing that was the most -- when I was talking to her,
 2    is that she thought it was kind of okay because --
 3    she was really scared, but she said that at least
 4    it's a prison gang, and everything happens in prison.
 5    And I'm like, Well, the gentleman that I'm defending
 6    is accused of doing something outside prison.  And it
 7    scared her to think that the prison gang, and you're
 8    going to hear all these awful things that happened in
 9    prison, actually reaches outside the prison.  That's
10    going to scare a jury.  And that invokes an emotional
11    response to, Oh, my gosh, now I'm in danger.
12             THE COURT:  But how is that going to change
13    if we just tried, say, the Gallegos brothers together
14    with their counts on the Burns counts?  How is that
15    going to change?  The Government is going to sit over
16    there and explain it's a prison gang; they're going
17    to explain that there is going to be a bunch of these
18    witnesses again talking about what the gang does, and
19    the violence that it has to promote, how is that
20    going to change?
21             MS. TORRACO:  Because they're not going to
22    hear -- I would hope they're not going to hear some
23    of the very horrific details of murders that have
24    occurred in the penitentiary.  They don't go into the
25    same detail, and we don't get all those photos.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8634

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 267 8635

```
 1              THE COURT:  So it's the detail that is a
 2   concern to you?
 3              MS. TORRACO:  Yes, I think so.
 4              THE COURT:  Because, if I understand what
 5   the Government is going to do, they're going to put
 6   on violence to show this is what the gang does,
 7   drugs -- they're going to put those on, whether they
 8   try one of you or seven of you.
 9              MS. TORRACO:  Right.  But then they're
10   going to have to tie what happens inside to what
11   happened in Burns.  We don't think they're going to
12   make that threshold.
13              THE COURT:  But that issue is whether we
14   have it in just a trial with the Gallegos brothers or
15   in this one, they've still got that problem, right?
16              MS. TORRACO:  Right.
17              THE COURT:  That's just a problem with
18   their case.
19              MS. TORRACO:  Right.  And Mr. Castle and
20   Mr. Benjamin's points are well taken, that there is a
21   huge jurisdictional issue here.  And we might end
22   up --
23              THE COURT:  Well, I've already ruled on the
24   jurisdictional.  I don't think there is a
25   jurisdictional issue.  And I thought I --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268

```
 1              MS. TORRACO:  You did.  But you know what,
 2     things might change at directed verdict.
 3              THE COURT:  Well, it's not going to be a
 4     jurisdictional issue.  It's a federal crime.  So I'm
 5     the only person that can try them.  So we've got
 6     jurisdiction here.  They may have a problem of proof
 7     that they can't prove an element of the crime.  But
 8     they've got to establish that this, you know, that
 9     this is connected or it's advancing the defendants'
10     interests, enhancing their status in the
11     organization.  And that's the only problem they're
12     trying to go on against the Gallegos brothers,
13     maintain or enhance.  And if they don't prove that --
14     but I don't think it's a jurisdictional issue.
15              MS. TORRACO:  Okay.  And you did say that
16     before.  I apologize.
17              But may I inquire through the Court how
18     long the Government thinks Counts 4 and 5 are going
19     to take?  I mean, is that just a week case -- I meant
20     W-E-E-K; I already know it's W-E-A-K, but I'm
21     wondering how long is that particular trial going to
22     take?
23              THE COURT:  Well, I'll ask them when they
24     get up.
25              MS. TORRACO:  Because that seems to me -- I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 269

```
 1   mean, I understand the bifurcation issue.  If we have
 2   to go along with the bifurcation issue, of course, we
 3   go along.  I mean, that's for this Court to decide
 4   the bigger things.  But I just see it as an
 5   opportunity to remind you -- which I know you've been
 6   thinking about it -- but I'm trying to be a zealous
 7   advocate here -- that severance really is a
 8   reasonable solution.  It's a much shorter concise
 9   trial.  It's a cleaner trial.  It solves the problem
10   of the issues that we've got with Arturo Garcia's
11   attorneys.
12              THE COURT:  How does it solve that one?
13              MS. TORRACO:  Because you would hear Counts
14   4 and 5 right away.  We would start on Monday.  And
15   they would be reset.  And they could start after
16   Counts 4 and 5 -- the Count 4 and 5 trial closes.
17   And that --
18              THE COURT:  The problem is I've got all the
19   Baca defendants saying they're not going to waive
20   their Speedy Trial Act rights anymore, and they want
21   to go on July 9.  And the Government wants to try
22   this half of DeLeon.  They didn't want me to
23   bifurcate the trial that I just did.  And so I'm
24   running out of weeks here.
25              MS. TORRACO:  I understand.  So after we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 270

```
 1    find out how long the Government thinks the evidence
 2    on Counts 4 and 5 take, let's say that the whole
 3    trial, at the most -- I can't even begin to guess; I
 4    would say two weeks.  But let's just see what they
 5    say.  Then, after that, you're going to start the
 6    remaining -- you would start the remaining
 7    defendants.  Well, they're still going to be done
 8    before July 9, because we've estimated six to eight
 9    weeks for this trial.  It was eight for all seven of
10    us.  We were going to be done in the middle of May to
11    the end of May.  So you've got a whole four-week
12    buffer in there of June, which if we started Counts 4
13    and 5, that allows Mr. Blackburn and Mr. Davidson a
14    reprieve.  There are conflict issues there that
15    they're going to have to sort out.  It would give Mr.
16    Davidson time, which appears to be pretty critical,
17    with his issues.
18            THE COURT:  And why you go first rather
19    than Mr. Castle going first?
20            MS. TORRACO:  Well, I was thinking that, if
21    you sever, we go first because it allows Mr. Davidson
22    time with his wife, and to kind of solve that crisis.
23            The likelihood of any type of reversal on
24    appeal is certainly less with severance.  What we're
25    really talking about is all that evidence, having to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8638

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 271

```
 1    go over and over and over the evidence that the

 2    Government has on the enterprise.  So at least that's

 3    what I think that I heard, is that you're concerned

 4    about, it's the same testimony on enterprise evidence

 5    against Counts 4 and, 5 as it is against the rest of

 6    the group.  But I don't think that it is as complete.

 7    I believe it's going to be shorter if you only tried

 8    4 and 5 first on the enterprise evidence, and the SNM

 9    Gang evidence and do Counts 4 and 5.  Then start

10    over.  And it's clean, it's safe.  You know, and it's

11    kind of like Mr. Castle, he doesn't want to be with

12    my counts; I don't want to be with his counts.  So

13    you actually are going to have a group of happy

14    criminal defense attorneys.  And that makes for a

15    good courtroom, Your Honor.  Anyway, I've taken up --

16    unless you have questions --

17            THE COURT:  That means y'all won't object

18    for eight weeks?

19            MS. TORRACO:  Well, if you try Counts 4 and

20    5 after my trial, I will be silent.  Thank you.

21            THE COURT:  Thank you, Ms. Torraco.  Any

22    other defendants want to speak on this motion?  It's

23    the motion to bifurcate.

24            All right.  Mr. Castellano, are you going

25    to take this?  I did notice in your motion -- or your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8639

```
 1    response to Mr. Castle's motion you mostly said,
 2    Judge, you've already decided the motion to sever.
 3    But I think Mr. Castle is raising another possibility
 4    of bifurcation.  What is the downside to it from the
 5    Government's standpoint?
 6              MR. CASTELLANO:  Well, the downside is
 7    trying to figure out really how to divvy up the
 8    Government's case.  And it really dictates how we
 9    present our evidence.
10              THE COURT:  Is that the biggest problem for
11    you?
12              MR. CASTELLANO:  That's certainly a
13    problem.  The other problem --
14              THE COURT:  Tell me what the logistical
15    problems are.  Is it getting witnesses here?  And, I
16    guess, what is being envisioned -- and Mr. Castle can
17    correct me if I'm wrong, it relates somewhat to Ms.
18    Torraco's question -- let's say the last week of the
19    eight-week trial is the Burns -- alleged Burns
20    murder.  It's hard for you put all those witnesses
21    into one week?  Is that the logistical problem?
22              MR. CASTELLANO:  It may be logistical
23    problems there, or recalling witnesses who we called
24    previously in the case to revisit the jury for
25    purposes of now talking about the Burns homicide,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8640

1    because we have multiple witnesses who have

2    information about multiple defendants.  And so what

3    we'll be doing is basically rotating the same

4    witnesses through the trial a number of times.  So

5    it's inefficient in that way, which includes all the

6    transport problems and other problems.

7            But the other issue is the way the trial

8    looks.  Because the jury, in a sense, will be fooled

9    into thinking that once they finish deliberating the

10   first time, they're done.  And then it will be just

11   like on TV, we're going to say, well, wait, there is

12   more.  And we're going to present more evidence to

13   them when they think they're going home.  And so --

14           THE COURT:  Well, I don't relish that

15   moment.  But we have -- we did have that sort of

16   issue back between Booker and Blakely.  You remember

17   where Judge Black and I would send the jury back in

18   for sentencing enhancements.  And the jury would

19   think they were done and they would have to go back

20   in and then find weights, and was the gun in the

21   possession, you know, those things beyond a

22   reasonable doubt.  They had to find those.  So

23   between Blakely and Booker, we did that.  It wasn't

24   the worst thing in the world.  I always thought the

25   Supreme Court was a little bit untrusting of juries.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8641

1    They did their job and they handled it.  I didn't

2    think it worked as badly as it sounds in theory.

3           MR. CASTELLANO:  I would consider that an

4    easy task compared to the jury deliberating on a

5    whole other set of evidence and witnesses and a

6    second set of deliberations.  So I understand a

7    shorter deliberation on things related to the same

8    defendants, and largely the same evidence.  But this

9    is going to be different evidence, potentially

10   different witnesses, some of the same witnesses.  And

11   you and I had this discussion last trial about the

12   verdict form.  And I initially wanted multiple

13   verdict forms.  And you talked me out of the notion

14   of multiple verdict forms.  And I actually ended up

15   agreeing with you that we should have one form of

16   verdict.  And that's what the instructions refer to.

17   So in this case we're going to have multiple forms of

18   verdict to submit to the jury.

19           So even logistically it's just a strange

20   looking case.  And it really interferes with our

21   ability to put on the case the way we want to put on

22   our case.

23           So it certainly interferes with the

24   prosecution's presentation of evidence, and order of

25   evidence.  So I think that's another issue.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And then, like I said, for a jury who sat
 2     through as many weeks of trial as they have, not
 3     knowing that they have another deliberation after
 4     this deliberation, I think potentially prejudices the
 5     Government, because they're going to be fatigued;
 6     thinking they're going home, and now we're going to
 7     present more evidence to them.  So there is certainly
 8     the issue of prejudicing the Government, when they
 9     just want to go home.  And at that point, they're
10     just going to make a decision.  And so I think that's
11     another issue on top of everything else.  I know we
12     call this bifurcation.  Really, it's a severance.
13              And the Court has specifically looked at
14     Counts 4 and 5 on at least two occasions, and held
15     that Counts 4 and 5 belong with the rest of the case.
16     And I believe that's the correct ruling.
17              The Court split this case up once already,
18     which meant you considered all of the evidence, all
19     of the counts, and divided the case the way you
20     thought was proper.  And Counts 4 and 5 were part of
21     that.  So, in essence, the Court has ruled on that.
22     And all this is is trying to cut it out.  And what I
23     highlighted in my response was that even the defense
24     motion refers to Trial 1 and Trial 2.  That's, in
25     essence, what this turns out to be.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8643

```
 1          So I think it unnecessarily complicates

 2     things, and affects our ability to present our case.

 3     And I think the Court, in essence, has considered

 4     these counts.

 5          THE COURT:  To get an answer from Ms.

 6     Torraco on her question, and I'll -- you know, the

 7     defendants can correct me in rebuttal -- but it seems

 8     to me they're just worried about that picture.

 9     That's about the thing they've advanced the most.

10     The sort of things around the death of Mr. Burns

11     himself, how long do you think that that's going to

12     take?  You're going to put a pathologist on?

13          MR. CASTELLANO:  Yes.

14          THE COURT:  You're probably going to

15     probably show the pictures.  But the death itself,

16     that aspect that seems to be the biggest concern, how

17     long is that going to take?

18          MR. CASTELLANO:  We're estimating just real

19     quick at the table, maybe five trial days.  I can't

20     speak for the defense in terms of their

21     cross-examination.  But it could take a week's worth

22     of trial on that whole set.  There are a number of

23     witnesses related to the Burns homicide.

24          And I mean, these are murders, they're all

25     murders; we have four of them.  I know Ms. Torraco
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8644

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 278645

```
 1    referred to the prison gang doing things in prison.
 2    But the Court knows from Trial 1 we have at least
 3    three cooperators who have at least two murders.  And
 4    for two of them one is in prison, and the other is on
 5    the streets.  So the Burns murder is not unique in
 6    that way.  And the jury is going to see pictures of
 7    each of the victims in this case.  None of them are
 8    pretty.  What we see in Burns is probably the
 9    aftermath of his death.  I think the report is going
10    to indicate that he was killed by the gunshot wound.
11    So luckily, I don't think the jury would have to
12    conclude he was burned to death.  I think he was
13    basically burned to destroy evidence.  So he was
14    killed by shooting; others were killed by
15    strangulation.  All of those will be pictures the
16    jury is going to have to look at, including possibly
17    autopsy photos.  And none of those are pretty.  So I
18    don't see this as particularly more heinous than any
19    of the other murders.  They're going to hear four
20    murders, and an attempted murder where someone is hit
21    over the head with a machete.  That's not a pretty
22    picture.
23            So there is nothing pretty about this
24    evidence.  And so I don't think it's unduly
25    prejudicial in that way.  Like I say, they're going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to hear about four charged murders, plus probably six
 2    other murders at least, by cooperators.  So they're
 3    going to hear plenty about it.
 4            THE COURT:  All right.  Anything else on
 5    this motion, Mr. Castellano?
 6            MR. CASTELLANO:  No, Your Honor.
 7            THE COURT:  Thank you, Mr. Castellano.  Why
 8    don't we do this:  I don't want to cut anybody short
 9    on this.  Why don't we take about a 15-minute break,
10    and then we'll work till about 5:30.  And so let's
11    try to get back in here in about 15 minutes.
12            All right.  We'll be in recess for about 15
13    minutes.
14            (The Court stood in recess.)
15            THE COURT:  Let's go back on the record.  I
16    think all the defendants have an attorney.  They're
17    trying on some suits.  Looking good.
18            All right.  I wasn't able to talk to
19    Ms. Wild during the prior break, but I did talk to
20    her this time.  She says that all -- she's verified
21    this with jury services -- all that anybody received
22    in the first trial was a sequencing of who was going
23    to come into the courtroom.  She cannot explain at
24    the present time why we had gaps in the seating
25    arrangement.  But whatever seating arrangement --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8646

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279

```
 1   this is what I understand, whatever seating
 2   arrangement was created for the first trial was
 3   created that morning.  Something must have happened
 4   to a few people on there.  So you will receive -- not
 5   today, because she can't get to it today -- but you
 6   will receive in the morning, I think, the sequencing.
 7   So you'll have -- that you'll create your own seating
 8   charts from that, if you want, or you'll get one on
 9   Monday morning.  I think they're computer generated,
10   is my memory.  So you'll receive one the same time I
11   receive mine.
12           And the reason I think it's computer
13   generated is because I don't think I had my law
14   clerks scrambling, like I have in Albuquerque, to
15   write them in.  So I think you're getting the same
16   thing you got in the first trial, and I think you're
17   getting all I can really give you.  So I'll keep you
18   posted on that.
19           Mr. Glazener will be here at 10:00.  But
20   he's told Ms. Bevel he's not going to consent to any
21   waiver of conflict.  So I think we're going to have
22   to start dealing with the reality of that.  I think
23   it's almost a waste of time to get him here, if
24   that's case.  Do y'all want me to call him, tell him
25   not to come, I can.  If you want to let him come here
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8647

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 280 of 648

```
 1   and see if anybody can deal with it?  I'll just leave
 2   well enough alone.
 3            MR. BECK:  I mean, if his client is not
 4   going to consent, he's not going to consent.  I think
 5   that it's probably a good idea that he and his client
 6   get in a room together.  And if, at 10:00 tomorrow
 7   morning here is as good a place as any, then I think
 8   that may benefit him.  But leave it up to him.
 9            THE COURT:  Okay.  Because earlier in the
10   day he was saying he didn't know.  Now he's saying he
11   will not consent.  So I don't know if there were
12   conversations in between.  But I don't have any
13   problem with him coming up, if you want to talk to
14   him.
15            MR. BLACKBURN:  Do I get to talk to him, is
16   that what you're saying?
17            THE COURT:  I'm not putting any
18   restrictions on you.
19            MS. ARMIJO:  Your Honor, can we go back
20   real quick to the jury list.
21            THE COURT:  Yeah.
22            MS. ARMIJO:  So are we still going to get
23   who the 80 are, and the sequence, like Number 1 is
24   John Smith?  We're just not going to get the seating
25   chart.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8648

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 281

```
 1              THE COURT:  Yeah, you're not going to get a
 2    seating chart, because they will not create the
 3    seating chart until Monday morning when they know who
 4    is here.  Tomorrow you will receive the order.  And
 5    assuming that most citizens do their job, it will be
 6    the seating chart.  If you want to create one, you
 7    can.  But you'll have the sequencing.  So you will
 8    know who is going to be the 18 in the jury box.
 9    You'll know who is going to be right behind Mr. Burke
10    back there and running that way.  I don't have my
11    numbers.  In Albuquerque I can tell you how many
12    people sit in each row.  But I don't know this
13    courtroom well enough to do that.  So you'll be able
14    to do that.  And then on Monday morning we'll create
15    the seating chart, and it shouldn't have any gaps.
16    And the reason I think that's better is at this stage
17    of life, if they get too far back, I can't really see
18    them without making them stand up and things like
19    that.  And I don't mind making them stand up, and
20    sometimes they have to.
21              Did you have something, Mr. Cooper?
22              MR. COOPER:  I was just going to ask if
23    Juror No. 7 in the sequence fails to show up that
24    morning, will there be --
25              THE COURT:  I don't think we'll have a gap.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8649

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 282 8650

 1              MR. COOPER:  Because there was gaps.

 2              THE COURT:  I know there was gaps.  And

 3    neither Ms. Wild nor I can explain why that was the

 4    case.  And we'll try to find out.  But that's my

 5    memory, too.  And she says, I know what you're going

 6    to ask me, and I don't have an answer for you.  So I

 7    quit asking.

 8              MR. COOPER:  Great, thank you.

 9              THE COURT:  Because I'm not going to get an

10    answer.

11              MR. COOPER:  I understand.

12              THE COURT:  I asked three times, and that's

13    my limit.

14              We received a letter from Mr. Fallick about

15    tomorrow.  Everybody saw the letter.  All right.

16    It's a letter saying that Mr. Lucero is going to show

17    up.  He's agreed to meet with counsel for the

18    Government.  He didn't get statutory immunity, and

19    but he's going to meet with them anyway.  So

20    Mr. Fallick is not going to be here.  And it seems

21    that if Mr. Lucero has agreed to testify without any

22    immunity, then that's not what Mr. Fallick advised

23    him to do.  And so Mr. Fallick doesn't see any reason

24    for him to be here.  He's got oral surgery tomorrow

25    anyway, so unless somebody thinks something needs to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8650

 1   be done, I'll have Ms. Bevel file this motion, and

 2   we'll see Mr. Lucero tomorrow without Mr. Fallick

 3   here.

 4          MR. CASTLE:  Anytime a lawyer's mouth is in

 5   surgery, Your Honor, it's probably a good thing.

 6          THE COURT:  All right.  I think we were

 7   about to have rebuttal from the defendant on the

 8   motion to bifurcate.  So Mr. Castle, do you have

 9   anything further you want to say?

10          MR. CASTLE:  Your Honor, the defense

11   attorneys talked at the break.  And we're not aware

12   of any lay witness that is a spillover witness

13   between Counts 4 and 5 and the other counts.  There

14   might be a couple of FBI agents, I think.  The

15   Government has been given authority in the trial --

16   I'm not sure whether they've got authority in this

17   trial yet, but I know they got authority from the

18   Court in Trial 1 to call Agent Acee multiple times so

19   that he could talk about a particular crime base,

20   then move on, and then come back later.  So that that

21   works fine.  I don't see that it would be a problem.

22   So I'm not sure what they're talking about as far as

23   the spillover witnesses that might cause problems.

24   Because the witnesses that we believe are the lay

25   witnesses for Counts 4 and 5 are completely different

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8651

```
 1   individuals.  So that's the only thing I would add.

 2            THE COURT:  Okay.  Thank you, Mr. Castle.

 3            Anyone else?  Ms. Torraco?

 4            Well, I'll continue to give it some

 5   thought, but I'm inclined to deny the motion.  I

 6   could be wrong, but I just don't think that the

 7   evidence that the defendants are trying so hard to

 8   separate themselves from, the pictures of Mr. Burns,

 9   are any more prejudicial, and I don't think they're

10   unfairly prejudicial, and there has been other

11   evidence that is going to be seen in the case.

12            I think the next motion was Mr. Davidson's

13   motion, so I think we've taken care of that one.

14            So the next one is what I think is on my

15   tab -- and I think Ms. Wild shared with you her

16   batting order -- it's number 39, which I think is the

17   Government's motion in limine to keep out the

18   magistrate judge's finding of no probable cause.  Mr.

19   Beck, Mr. Castellano, Ms. Armijo, who is arguing this

20   motion?

21            MS. ARMIJO:  May we have a moment, Your

22   Honor?

23            THE COURT:  You may.

24            MS. ARMIJO:  Mr. Castellano is the lucky

25   person.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8652

```
 1              MR. CASTELLANO:  The Court has reviewed the
 2   motion.  We think that the finding by the state
 3   magistrate judge is not relevant to these
 4   proceedings.  It doesn't address any of the elements
 5   of the offense.
 6              THE COURT:  Well, you would probably agree
 7   with me that, given the low bar that there is for
 8   401, that it's probably relevant.  I mean, it's
 9   got -- it meets the low bar.  I guess the question
10   that I have is whether we ought to have anybody
11   coming into this court and saying somebody made a
12   determination that there was probable cause or not
13   probable cause in a case.
14              I mean, we're going to have to tell the
15   jury to some degree that, you know, that there is an
16   indictment in this case.  But we're not going to let
17   the Government sit here and with each defendant say:
18   This defendant has already been found to be --
19   probable cause by a Grand Jury, or other witnesses
20   that come in, we're not going to talk a great deal
21   about what other people find.  I've always tended to
22   keep out judges and administrative agencies, and
23   things like that, because it seems to me the jury
24   ought to be the one sitting there and listening to
25   the evidence; not sit there and think:  Well, a Judge
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    found there was no probable cause, or finds that

 2    there was probable cause.  That's not what we want

 3    these jurors to be doing.

 4           But it seems to me, at least on the 401, it

 5    probably meets the very low threshold for being

 6    relevant.  It's just not probably a good idea to

 7    start having them thinking about a magistrate judge

 8    somewhere making a no probable cause determination.

 9    And you're going to sit there and say:  Well, they

10    didn't have this evidence.  You're going to say,

11    Well, you had that evidence.  And then we start

12    trying a magistrate judge's finding of probable

13    cause.  So I guess I was inclined to grant the

14    motion.  But I'm not sure I can quite spit out that

15    it's not relevant.

16           MR. CASTELLANO:  And I would ask the Court

17    to grant the motion, obviously.  I think it invades

18    the province of the jury.  I think it creates a trial

19    within the trial.

20           THE COURT:  Well, that's what the defense

21    lawyers want to do, they want to invade the province

22    of the jury.  They want to tell the jury what to do.

23           MR. CASTELLANO:  That's what I'm thinking.

24    I think that's right.  What does the jury do with a

25    magistrate judge's decision regarding probable cause?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    What does the jury know about those proceedings, what

 2    witnesses or evidence was presented?  And those are

 3    things that the jury will have to speculate about

 4    because no one is going to be there to tell them

 5    about what happened there, and why the judge ruled

 6    the way he did.  So it really does insert collateral

 7    matters.  And it causes jury confusion and a waste of

 8    time.  So I think even if it's remotely relevant

 9    under 401, I think 403 keeps it out, because now the

10    jury is being asked to rely on what another judge has

11    done.

12            And, of course, as the Court knows, the

13    investigation continued even after the finding of no

14    probable cause.  Even the State Police reports

15    indicate other work that they did following that,

16    including some statements that came up, and other

17    things that certainly were more relevant.

18            And the defense points to kind of this --

19    kind of -- I don't know if I'd call it a tug of war,

20    or punting the case back and forth between district

21    attorney's offices, and so there is another part of

22    the deliberative process that happened with the two

23    different district attorney's offices.  And I don't

24    know what evidence they could present related to

25    those deliberations by each of those offices.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So I think, when we start getting into

 2      these collateral matters, we're going to have just

 3      explanations for why things went the way they did, as

 4      this investigation progressed.

 5              And in terms of relevance, I don't know

 6      what it is relevant to, or what element it might

 7      address.  That's the other question.  Because this

 8      evidence may have been weak at one point, but it's

 9      gotten stronger since, once again, doesn't help the

10      jury.  Because, as the Court noted, all we're going

11      to say is:  That's what they had then and this is

12      what we have now, so don't worry about what happened

13      with the magistrate judge, and don't worry about what

14      you don't know about, because there is no indication

15      of what happened during those proceedings.  So at

16      that point it just causes speculation and waste of

17      time.  So I think, even if 401 covered it, I think

18      403 keeps it out.

19              THE COURT:  All right.  Thank you, Mr.

20      Castellano.

21              MR. CASTELLANO:  Thank you, Your Honor.

22              THE COURT:  Mr. Benjamin.

23              MR. BENJAMIN:  Your Honor, I don't think

24      that the issues the Government is attempting to

25      create with this order apply.  What the no probable
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    cause order -- as I said in my response, is my

2    attempt to create a substitute for testimony that was

3    destroyed.  And I think that the no probable cause

4    order is the only, and probably the strongest way to

5    address that.

6            I think two officers -- I attached to the

7    response an email from the district attorney talking

8    about preparing the pathologist to testify.  I think

9    it flies in the face of reason to assume that this

10   wasn't a robust hearing.  And to then assume that we

11   don't know what happened doesn't make sense.

12           So I don't have what I believe is probably

13   Giglio material from the officers.  I think the

14   officers said something that, quite frankly, flew in

15   the face of the magistrate's experience, or the

16   evidence.  And he threw the case.  And I think he

17   threw the case, knowing full well that in the State

18   of New Mexico, if the State wanted to, they could

19   come back and file an indictment.  So I don't think

20   that this invades the province of the jury.  What I

21   think this does is this informs the jury about issues

22   that have been destroyed or not preserved.

23           And also, I think it's very relevant to the

24   continuing argument that I've made, and the Court

25   addressed in its order in 1950.  I am going to have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8657

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 290 8658

```
 1    to convince a jury that, just because there is a

 2    body, somebody should go to jail doesn't apply.

 3    That's what I learned I think the first day of my

 4    criminal law class in law school.  And juries are

 5    going to latch on to that.  This is a technical idea.

 6    And so the technical part of that idea can be

 7    explained much better as I articulated in the

 8    response:  Murder plus one element.

 9            And so the jury is going to be forced --

10    and I think this is a way to illustrate to the jury

11    that murder in New Mexico is what was presented and

12    what wasn't there.

13            Now, if they've got these cooperators --

14    which they don't have, they've got Jason Van

15    Veghel -- then that information is what they need to

16    examine to make the next leap to whether this

17    indictment in this case is a basis for a conviction

18    of either conspiracy or the murder of Adrian Burns.

19    And so I am relying on the no probable cause order

20    mainly as a cure for the lack of transcripts to

21    impeach the officers who testified or the

22    pathologist.  And I don't have that.

23            I don't think the -- I think Agent Madrid

24    is probably going to be fair game to ask her whether

25    she was -- you know, when she's investigated the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8659

1    case, what progress she's made.  I'm going to ask her

2    about the two different district attorneys.  And I

3    think she gets to tell me that, no, I believed what

4    it was; they made a decision not to do it; these

5    individuals told me that they had it under control,

6    and this is what is different.  That's their

7    presentation.  I think I get to counter that, though,

8    with my presentation, which is this is what murder

9    plus the RICO element needs to go.  And so they need

10   to be able to draw a distinction.  And I think the no

11   probable cause order helps me draw that distinction.

12           I think that, in talking with several

13   people, and somebody smarter than me suggested, I

14   think this is also admissible as an adjudicated fact

15   under judicial notice.  The jury can choose to take

16   judicial notice or not notice of this.  And I think

17   there is a curative instruction that, if the

18   Government is worried about this coming in and

19   tromping something, the Court could say:  This is

20   simply a process in normal procedure.  But it can

21   give what is essentially, and what my basis is a

22   curative instruction, because this is the cure for

23   the destruction of the officer's -- as I keep coming

24   back to -- I think what should be disclosed as Giglio

25   testimony.  But I can't prove that because I don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8659

```
 1   have the transcripts.

 2            And so the attachments to the motion, I

 3   hope lay out that what we're dealing with is a weak

 4   murder that then has to rely on, as we heard two

 5   weeks ago, the drug debt.  And the drug debt has to

 6   make this jump in assumption to the murder, and it's

 7   part of the RICO elements.

 8            THE COURT:  Thank you, Mr. Benjamin.

 9   Anybody else?  Ms. Torraco?

10            MS. TORRACO:  Yes, Your Honor.

11            Your Honor, I did file a response to this

12   motion.  It's Document 2066.  And I filed it just a

13   little bit before noon today, so I apologize to the

14   Court that it wasn't filed earlier.

15            THE COURT:  I read it.

16            MS. TORRACO:  Wow.  Okay.

17            And so I just want to add a little bit to

18   what -- instead of just saying ditto to what Mr.

19   Benjamin just said, I just want to add a little bit.

20   What happened is that when a court -- and I have a

21   bad habit of calling it a no bill, but when the

22   magistrate court decides not to bind over, they

23   destroy those tapes within 90 days.  If the

24   magistrate judge binds over, which typically -- it's

25   kind of the joke in state court, because if you're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8660

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 293 8661

 1    before a magistrate court judge on a serious charge,

 2    of course they're going to bind over, because they

 3    don't want to be the one that has let the bad guy go.

 4    So this was an unusual situation.

 5            Nonetheless, if the judge had bound over;

 6    found probable cause, bound the case to district

 7    court, those tapes are preserved forever.  And it

 8    typically just is tapes.  We don't typically have a

 9    court reporter in the magistrate courts, especially

10    in the outlying areas.  So there is audiotapes or

11    CDs.

12            Well, clearly, these CDs were not preserved

13    by anyone.  We did a request of the district

14    attorney's office.  There has been communications

15    with the U.S. Attorney.  These tapes -- or even the

16    transcripts have not been preserved at all.  So what

17    we have is an issue of lost or destroyed evidence.

18    And it wasn't the police that lost or destroyed the

19    evidence.  I tried to cite to some case law, but the

20    fact is it's the courts that lost or destroyed

21    evidence, and it puts everyone in kind of a

22    precarious position.

23            However, there had to be exculpatory

24    evidence that was presented that day.  That's common

25    sense.  Because, otherwise, there would have been a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8661

1   bind over.  So, therefore, the defense has lost

2   valuable testimony because for some reason this

3   magistrate court judge didn't bind over a very

4   serious, very gruesome, really terrifying homicide

5   that happened in that small community.  So we've lost

6   evidence.  And based on the fact that we have -- that

7   the defense have lost what has to be exculpatory

8   evidence, we should have the right to question about

9   it when the witnesses take the stand:  Did you

10  testify at the preliminary hearing in magistrate

11  court?  Isn't it true that you said this?  I

12  believe -- I have reason to believe that there were

13  other suspects that were mentioned at that particular

14  hearing.  There was evidence about that.

15          So regardless of whether or not the actual

16  document comes in -- although I agree with Mr.

17  Benjamin that it should -- but this is an issue that

18  is important to the defense to explore -- maybe

19  explore isn't the right word -- but it's important

20  for the defense to bring out the problems that

21  happened because:  Have people changed their mind?

22  Are their memories different than they were back in

23  the day, when there was a no bill?  So those are

24  important things to bring out in our defense.

25          And I believe that's all.  Thank you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8663

```
 1              THE COURT:  All right.  Thank you, Ms.
 2   Torraco.  Any other defendant want to speak on this
 3   motion?
 4              All right.  Mr. Castellano.
 5              MR. CASTELLANO:  Just a few points, Your
 6   Honor.  One is that, really, they're looking for a
 7   witness to be a conduit for hearsay because that
 8   information from the Court and that document itself
 9   are going to be hearsay.  And the Court's already
10   ruled under similar circumstances, for example,
11   experts, that the expert can't just be a conduit of
12   hearsay, when he or she testifies about what
13   confidential informants told him.  And that's, in
14   essence, what any witness would be; they would be a
15   conduit.
16              And what they're seeking is a substitution
17   for hearsay testimony.  They want whatever testimony
18   was presented before the magistrate judge to be
19   summarized by one finding.  And that one finding
20   itself can't be a substitute for all the things that
21   were said before the magistrate judge.
22              And the third is that really Mr. Benjamin
23   is seeking a remedy when the Government didn't
24   destroy the evidence.  He's saying they should be a
25   substitute for this destroyed evidence.  But the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8664

```
 1    Court's already ruled that that evidence wasn't in
 2    our possession.  And so there is really no remedy for
 3    the Court to grant.  The Court, in essence, has said
 4    there is no remedy because there was no violation.
 5    But he, at this point, seems to be seeking a remedy
 6    for what happened there.
 7            I only heard this from Ms. Armijo, in terms
 8    of other problems that are created by introducing
 9    this evidence.  But apparently, the New Mexico State
10    Police had investigated that judge's wife, and he
11    hated the New Mexico State Police.  So, I mean, what
12    happens is we just go back and forth with evidence
13    related to what happened before the magistrate judge,
14    why the magistrate judge may have had a motive not to
15    find probable cause, the fact that the New Mexico
16    State Police had investigated this judge's wife.  And
17    all these collateral matters will come out before the
18    jury, when there is no need to do it.  It doesn't
19    help the case in any way.  It doesn't address any
20    elements.  And it just wastes the jury's time, and
21    creates confusion.  So I think, given all those
22    reasons, there is just no reason for this evidence to
23    come in.
24            THE COURT:  Mr. Benjamin raised this issue
25    of adjudicative fact that the Court could take
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8664

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8665

```
1    judicial notice of.  I'm not sure that I saw that in
2    the briefing, so it must be new.  Any thoughts on it?
3            MR. CASTELLANO:  It puts us in the same
4    position we are now.  It still injects things before
5    the jury that they shouldn't hear, and that are
6    irrelevant.
7            For example, the jury is going to be
8    instructed on a reasonable doubt standard, and
9    they're going to be hearing about a probable cause
10   standard before a state magistrate judge.  What are
11   they going to do with that, and what are they
12   supposed to conclude after they hear a different
13   standard before a different judge in a court, and
14   when they don't know what was presented to that
15   judge?  So all it does is cause them to speculate.
16           THE COURT:  I think I asked this question
17   the last time we looked at this issue.  Is Jim
18   Navarro -- is he an attorney?
19           MR. CASTELLANO:  I don't know if he is.  I
20   can tell the Court that outside of Albuquerque and
21   Dona Ana County, the only requirement for a
22   magistrate judge is a high school diploma or a GED.
23   So I can talk to the Court generally about
24   requirements for state magistrate judges.  But I
25   don't know about that judge specifically.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8666

```
1            THE COURT:  I don't see a Jim Navarro in
2    the bar directory.
3            MR. BENJAMIN:  N-A-V-A-R-R-O, I believe is
4    the spelling.  I'm looking on my directory right now.
5            THE COURT:  I see three Navarros.  One is
6    in Biloxi, Mississippi.  One is in Albuquerque and,
7    then one is -- that's Amanda, that's a woman, and
8    then David William Navarro is in San Antonio, Texas.
9    So is he still on the bench?
10           MR. BENJAMIN:  Your Honor, I'm doing things
11   from memory.  That's a bad habit.  It's Jim Naranjo
12   as in orange, N-A-R-A-N-J-O.
13           THE COURT:  Oh, it's Naranjo?
14           MR. BENJAMIN:  Yes, Your Honor.
15           THE COURT:  Okay.  I'm looking at your
16   response.  You spell it as Navarro.  Do you think
17   it's Naranjo?
18           MR. BENJAMIN:  I have an order that says it
19   is Naranjo.
20           MR. BLACKBURN:  Judge, almost all of the
21   magistrates in Los Lunas and Belen are not lawyers.
22           MR. LAHANN:  Your Honor, I know Mr. Naranjo
23   personally.  He was a sheriff's' deputy when I first
24   met him in Socorro in '91.  He's never been an
25   attorney.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  There is only one Naranjo

2    that's a member of the bar, and his name is Benny

3    Naranjo.

4              All right.  Anything else?  Mr. Castellano.

5              MR. CASTELLANO:  I'm just not convinced

6    that even judicial notice covers these facts, looking

7    at the rule.

8              THE COURT:  Well, I guess the way I'd

9    analyze it is, even if you take judicial notice of a

10   fact, that's a procedural way of getting evidence in.

11   But it still doesn't solve whether it's admissible

12   evidence for some other reason, such as 401, 403, or

13   something like that.  So I'm not sure that the

14   judicial notice solves any of the problems that I'm

15   wrestling with.

16             All right.  Anything else, Mr. Castellano?

17             MR. CASTELLANO:  No, Your Honor.

18             THE COURT:  Well, I think I'm going to

19   grant Government's motion to keep it out.  I just --

20   I'm not prepared to say that it's not relevant.  But

21   do I think it's inadmissible.  I think the low bar

22   that 401 puts in probably makes it admissible.

23   That's the reason we're concerned about it.  I think

24   it makes it less likely that the Gallegos brothers

25   killed Mr. Burns.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           But I think that when the jury trusts the

2     judgment of another fact finder instead of forming

3     its own judgment based on the evidence presented, it

4     employs an improper -- and I think what I'm concerned

5     here is they may make it -- defer their decision or

6     not make it for the right reason.  Anytime we have

7     charging decisions and things of that nature, we have

8     to be careful, the Supreme Court said, in United

9     States v. Young, that the prosecutor is vouching for

10    the credibility of witnesses in expressing his

11    personal opinion concerning the guilt of the accused

12    poses two dangers.  Such comments can convey the

13    impression that evidence not presented to the jury,

14    but known to the prosecutor, supports the charges

15    against the defendant, can thus jeopardize the

16    defendant's right to be tried solely on the basis of

17    the evidence presented to the jury.  And the

18    prosecutor's opinion carries with it the imprimatur

19    of the Government, and may induce the jury to trust

20    the Government's judgment rather than its own view of

21    the evidence.  I think we get into a similar

22    situation here with what they would be doing with

23    Judge Naranjo's.

24           I said in a case one time that the Court

25    would be concerned that the jury would decide that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8668

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 301 of 312

 1   DeSantis disabled, not upon its own judgment and

 2   understanding of the evidence, but on the fact that

 3   an ostensibly smart person looked at some evidence,

 4   quite possibly evidence that is not presented to the

 5   jury, and came to that conclusion.  And thus, the

 6   danger that the jury will defer to Judge Naranjo's

 7   probable cause determination is a danger of unfair

 8   prejudice.

 9           One thing I'm concerned about is I think

10   we've determined that there is no way for the jury to

11   determine what evidence was presented to Judge

12   Naranjo.  So the jury would need to evaluate the

13   resulting probable cause determination in the

14   abstract.  And conducting such an evaluation requires

15   knowledge regarding the intricacies of New Mexico

16   criminal practice and procedure and the

17   qualifications of New Mexico magistrate judges.  I

18   had to ask questions, I had to be educated about

19   things I didn't know about in New Mexico procedure as

20   a result of this no probable cause determination.

21   And educating the jury on those matters threatens to

22   turn a trial into a law school seminar, which would

23   waste time and potentially confuse the issues.

24           In the briefing there was also some

25   argument of collateral estoppel.  That I was, I


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8669

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 302 8670

```
 1   think, in Mr. Benjamin's response.  I don't think

 2   collateral estoppel would apply against the United

 3   States, because it wasn't a party to the state court

 4   proceedings.  And I've already determined the United

 5   States had no obligation to preserve the evidence

 6   presented to June Naranjo.

 7          And there is nothing that's been presented

 8   that indicates the United States ever possessed that

 9   evidence.  And even if it did, we'd have to go

10   through the Trombetta situation.  But I don't think

11   we've got the basis for doing that.  So I'll grant

12   the motion.  I'll keep the probable cause

13   determination out.

14          Ms. Torraco.

15          MS. TORRACO:  May I ask a question of the

16   Court?

17          THE COURT:  You may.

18          MS. TORRACO:  I understand that the Court's

19   ruling is that the actual probable cause

20   determination is not admissible.  However, the

21   defense is still strapped with the problem that there

22   was testimony, and for some reason that testimony,

23   for whatever reason, didn't rise to the level of a

24   probable cause finding.  So it seems to me that we

25   should be able to still talk about the hearing, talk
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8670

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 303671

1    about what these people testified to previously,

2    although we don't have their actual testimony to

3    impeach them, but based on whatever knowledge that we

4    have about what was said, without actually eliciting

5    the actual ultimate finding by the magistrate court

6    judge.  And I just would like a clarification,

7    because that seems to help us kind of remedy for the

8    loss.

9          THE COURT:  Well, I'm not circumscribing

10   the defendants' ability to impeach any witnesses

11   here.

12         MS. TORRACO:  And we can still go into the

13   hearing, then, without bringing out the actual

14   finding?  That's what I thought I heard.

15         THE COURT:  Well, I guess I don't rule it

16   out.  But I guess I don't see how you could impeach

17   somebody with evidence you don't have.

18         MS. TORRACO:  I might.

19         THE COURT:  How do you impeach -- I guess

20   if you put on the state police officer and say:

21   Didn't you say at the trial such-and-such.  You don't

22   have any good faith basis for asking that question,

23   do you?  Unless you've got something I don't know

24   about.

25         MS. TORRACO:  I'm not necessarily

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



                                                              1-800-669-9492
                                                    e-mail: info@litsupport.com

DNM 8671

 1    suggesting that it's impeachment.

 2              THE COURT:  Okay.

 3              MS. TORRACO:  But I'm just asking:  Can we

 4    go into any evidence that might have come out at the

 5    hearing because there is people that are a part of

 6    trial who were at the hearing, and there is witnesses

 7    that are going to be called who were at the hearing.

 8    So can we bring out evidence that -- things that

 9    occurred at the hearing, and just not bring out

10    ultimate finding?

11              THE COURT:  Yeah, I guess so.

12              MS. TORRACO:  Okay.

13              THE COURT:  I guess in an abstract -- I'm

14    trying to think how you would do that.  I once had a

15    case where, like you said, everything was destroyed.

16    And we had to call the magistrate judge, and he had

17    to sit over here and say what occurred.  But I can't

18    remember -- I don't remember if it was his ruling or

19    what it was.  But we didn't have any evidence of it,

20    so he had to be called.  So I guess the answer is

21    yes.

22              MS. TORRACO:  Okay.  Thank you very much.

23              THE COURT:  All right.  Okay.  That takes

24    care of that motion.

25              I think the next motion is -- I think that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN &amp; ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8672

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 305/3673

```
 1   was 39; I think the next one is 40.  This is the
 2   motion in limine to admit the out-of-court statements
 3   made by Mr. Burns.  I think the statements that he's
 4   going to go to Mr. Gallegoses' house and collect --
 5   did he say collect money, and then sell heroin?  That
 6   sounds like 803(3) evidence to me.  So I'd be
 7   inclined to grant this motion as a then existing
 8   state of mind, particularly that it shows his plan.
 9              Mr. Castellano, are you going to argue this
10   motion?  Ms. Armijo?
11              MS. ARMIJO:  Your Honor, I think that's
12   correct.  I think it does exactly that.  It shows his
13   then existing state of mind.  And then he does
14   eventually go to the Gallegoses' house, is what the
15   United States' evidence would show.  But we also know
16   that it's verified based on statements that the
17   defendants actually made to police.
18              So we would be seeking it under 803(3).
19   It's also a statement against interests, technically,
20   because he is talking about drug activity that he's
21   going to be doing.  So it also would come in under
22   804(b)(3).
23              THE COURT:  I'd have to think about that
24   last one, but okay.
25              MS. ARMIJO:  I'm just suggesting that it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8673

1    would potentially come in under two different

2    theories, Your Honor.

3              THE COURT:  Okay.

4              MS. ARMIJO:  Thank you.

5              THE COURT:  All right.  Thank you, Ms.

6    Armijo.

7              Mr. Benjamin, I think you filed the

8    response that I read, or was it Ms. Torraco?

9              MR. BENJAMIN:  I think it was Ms. Torraco.

10             THE COURT:  Either one of you.  Do you want

11   to go first?

12             MS. TORRACO:  Mr. Benjamin will go first.

13             MR. BENJAMIN:  Your Honor, I don't see that

14   it's a then existing state of mind, because the time

15   that's outlined allows several other possibilities.

16   And the defendants, I believe, will present -- or at

17   least Joe Gallegos -- will present that that timeline

18   is not as concrete as the Government expects it to

19   be.  And so --

20             THE COURT:  What's not as concrete?  His

21   statement?

22             MR. BENJAMIN:  Well, no.  And I'll be

23   honest, Your Honor, in that motion in limine, I think

24   it was more of a narrative than an actual statement.

25   So that would be my first request, if there was an

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 8674

```
 1   actual statement, other than kind of the idea that he
 2   was going to Joe's house to collect.  Because that
 3   doesn't necessarily appear anywhere.  So I understand
 4   what they're getting at substantively, but I don't
 5   know what the actual statement that's being admitted.
 6           THE COURT:  Well, I thought -- let's see, I
 7   thought it was Amber Sutton's -- they said they had a
 8   statement from her, that that's what he said.  Now, I
 9   don't have any 302s or anything attached to either
10   the motion or the response.  So I'm just relying upon
11   the assertions in the motion.
12           MR. BENJAMIN:  It's been a generalized idea
13   is my problem, Your Honor.
14           THE COURT:  Okay.
15           MR. BENJAMIN:  Does the Court understand
16   what I'm getting at?  I mean, it's during the course
17   of the investigation, you heard multiple times pop up
18   that Burns was going over there to collect money.
19   But it just doesn't ever seem to actually materialize
20   as:  This is what he told me, which would be my
21   first -- and I think their first hurdle that they
22   have to cross, is to proffer an actual statement.
23           The second, and I think more important
24   issue, is the Government is reaching to get in
25   evidence that it has better modes of getting in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    There is a witness, Daniel Orndorf, Sleepy, who is

2    going to say that Burns was over there.  The Court's

3    already ruled on Mr. Joe Gallegos' statement; that's

4    going to come in to say that he was over there.  And

5    so I think it's more prejudicial than probative to

6    admit an idea than an actual statement.

7            THE COURT:  All right.  I understand the

8    distinction.  I'll probe with the Government and see

9    if there is a statement here.

10           MR. BENJAMIN:  Thank you, Your Honor.

11           THE COURT:  Thank you, Mr. Benjamin.

12           Ms. Torraco, you did file the response?

13           MS. TORRACO:  Yes, I did, Your Honor.  And

14   I'll be brief.

15           Mr. Benjamin and I did discuss at length

16   the fact that we couldn't really identify a

17   statement.  There is a narrative in there.

18           THE COURT:  Not any 302s or anything?

19           MS. TORRACO:  No.  And I think that what we

20   have been offered is the gist of it, which is that he

21   said that he stated that he was going to go over to

22   the Gallegos home, and that they had owed him money.

23           I also want to bring to the Court's

24   attention that at the motion hearing on March 14, the

25   Government also at that point represented that they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8676

```
 1    were going to admit other statements from Adrian
 2    Burns, what he had told Dan Orndorf about the
 3    Gallegos -- I'm not really sure if it was Joe or Joe
 4    and Andrew, or if it was the Gallegos brothers, but
 5    that they had owed him money.  Adrian Burns told Dan
 6    Orndorf, paragraph 10 of my motion, that the
 7    Gallegos -- someone in the Gallegos family owed them
 8    money, and that Dan Orndorf shouldn't do business
 9    with him anymore.  And that was a representation at
10    the motion hearing on March 14.
11            The problem that I have with the exception
12    of the then existing mental statement is, first of
13    all, it has to first -- all of the hearsay exceptions
14    have to first cross the threshold of are they
15    reliable?
16            THE COURT:  Let me do this -- I don't want
17    to rush you and I want to hear what you have to say.
18    Why don't we shut her down for today.  That way I
19    won't rush you this evening, and give the Government
20    an opportunity to respond.
21            MS. TORRACO:  Thank you.
22            THE COURT:  Tomorrow we need to find some
23    time -- Ms. Armijo I think reminded me I didn't
24    finish the pretrial conference.  There are a few
25    things.  One of the things I need to ask you about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    tomorrow, for some reason I didn't ask how long your

 2    closings were going to last.  So you can be thinking

 3    about that overnight, so I can kind of begin to

 4    schedule that.

 5            I also am not sure that I have -- we have

 6    talked about a statement of the case, and I just

 7    thumbed through the materials, so I don't think there

 8    is a statement of the case.  So it may be that we

 9    need to have y'all prepare one, if you haven't

10    prepared one.  I usually put the burden on the

11    Government.  Remember, don't kill yourselves on this.

12    It's just simply to get them talking about if they

13    know anything about this case, so we don't have to

14    state every position in it.  But anyway, we'll need

15    to find some time to do that.

16            Here is the notebook that Jury Services has

17    gotten.  Is that a winner, Ms. Armijo?

18            MS. ARMIJO:  Yes, Your Honor.

19            MS. HARBOUR-VALDEZ:  Yes, Your Honor.

20            THE COURT:  Everybody comfortable with it?

21    So we'll order 18 of those.  Maybe a few extra, if

22    they're big notetakers.

23            MS. ARMIJO:  I would say probably add some

24    extras.

25            THE COURT:  All right.  I'll do that.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8678

1   they can get more pages in there if you like a bigger

2   one.

3            All right.  Y'all have a good evening.

4   We'll see y'all tomorrow.  Appreciate your hard work.

5            (The Court stood in recess.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8679

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on April 12, 2018.

15

16

17

18        _____

          Jennifer Bean, FAPR, RMR-RDR-CCR
19        Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:  (505) 348-2283
22        Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                 (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1               IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                        CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7        Defendants.

8

9        Transcript of 104 Hearing and Motion Proceedings
     before The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on April, 5, 2018.
11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
13

14

15   For the Defendants: Mr. Brock Benjamin, Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
16   Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
     Shattuck; Mr. John Granberg; Mr. Billy Blackburn;
17   Mr. Donovan Roberts; Ms. Lisa Torraco

18

19

20

21

22

23

24

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8682

```
 1              THE COURT:  All right.  Good morning
 2   everyone.  I appreciate everybody being here and
 3   ready to go and on time.  It looks like all the
 4   defendants are here and have counsel, at least one
 5   counsel with them.  I think where we were was Ms.
 6   Torraco was up arguing in response to the motion in
 7   limine as to Adrian Burns.  Mr. Roberts, is she going
 8   to be here to continue that, or is she done?
 9              MR. ROBERTS:  Who is this?  I'm sorry.
10              THE COURT:  Ms. Torraco was up arguing when
11   we broke last night, is my memory.
12              MR. ROBERTS:  Yes, Judge.  And actually, I
13   didn't hear from her this morning.  I'm sorry.
14              THE COURT:  Do you have anything else to
15   add on the Adrian Burns out-of-court statements?
16              MR. ROBERTS:  I don't believe so, Judge.
17              THE COURT:  All right.  Mr. Benjamin, do
18   you have anything further on that?
19              MR. BENJAMIN:  No, I don't, Your Honor.
20              THE COURT:  Any of the other defendants
21   have anything on the Burns statements?
22              All right.  Let's see, Ms. Armijo.
23              MS. ARMIJO:  No, Your Honor.  I think we
24   covered it all yesterday.  I gave them some that
25   apply.  And so I'll leave it at that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8682

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8683

```
 1                THE COURT:  All right.  I'll give it some
 2    thought on the new exception that you mentioned.  But
 3    I think it does come in for state of mind.  And so
 4    I'll grant that motion.
 5                MR. BENJAMIN:  Your Honor?
 6                THE COURT:  Yes.
 7                MR. BENJAMIN:  If the Court is granting
 8    that motion, can the Court request them to provide
 9    what the statement was?
10                THE COURT:  You know, I wrote it down.  Let
11    me see if I got --
12                MS. ARMIJO:  Your Honor, I think that we're
13    disclosing today an additional supplement from Amber
14    Sutton.  We spoke to her on Tuesday, and so I think
15    they will have more clarity as to what her statements
16    will be.
17                MR. BENJAMIN:  Thank you.
18                THE COURT:  The statement -- Mr. Benjamin.
19                MR. BENJAMIN:  Yes, Your Honor.
20                THE COURT:  The statement that I was ruling
21    on is this statement that Burns made to Sutton that,
22    quote, "He was on his way to the residence of Joe
23    Gallegos to collect a drug debt and to sell heroin."
24    So if there is going to be more, I'll have to take
25    those and look at them.  But that is the one that I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8683

 1    studied, and felt should be admitted under 803(3).

 2              MR. BENJAMIN:  Thank you, Your Honor.

 3              THE COURT:  There was an additional Burns

 4    statement that I think Ms. Torraco identified in her

 5    response to the motion, and that was that Burns told

 6    Orndorf that Joe Gallegos owed him money, and that

 7    Orndorf should not do business with him.  I'll not

 8    admit those statements for the truth of the matter.

 9    But they are admissible to show that Burns was

10    bad-mouthing and disrespecting Joe Gallegos, such

11    that Joe Gallegos had to retaliate violently to

12    preserve his standing in the SNM; that Joe Gallegos

13    killed Burns, using the language of the statute, for

14    the purpose of maintaining or increasing position in

15    an enterprise engaged in racketeering activity.  So

16    you'll get a limiting instruction on that, to the

17    jury that they cannot use that for the truth of the

18    matter, but they can use it to show that -- what

19    Burns was doing and disrespecting Joe Gallegos.

20              MR. BENJAMIN:  Your Honor, I guess I would

21    object to a limiting instruction being phrased that

22    way, simply because I think that's a comment on the

23    evidence by the Court.  I can understand the Court

24    limiting it to:  You can't use this for the truth of

25    the matter, but you can consider it for other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8684

```
 1    matters.  But I think if the Court goes farther than

 2    that, that would be a comment on the evidence.

 3             MR. ROBERTS:  We join in that objection,

 4    Your Honor.

 5             THE COURT:  Well, I think I can probably

 6    word it -- if you want to sketch out the language

 7    you're comfortable with, show it to the Government,

 8    your co-defendants, I probably can word it in a way

 9    that doesn't end up me commenting on the evidence.

10             MR. BENJAMIN:  Thank you.

11             THE COURT:  I do want to help the jury

12    figure out, you know, what they can use it for and

13    what they can't use it for.  So help me do it in a

14    way that doesn't hurt you, but also helps the jury do

15    their job.  I think we can probably come up with some

16    language.

17             MR. BENJAMIN:  Understood, Your Honor.

18             MS. TORRACO:  May I address the Court?

19             THE COURT:  Yeah, we started and you

20    weren't here, and so I moved on.  But if you want to

21    comment on this Burns motion, go ahead, Ms. Torraco.

22             MS. TORRACO:  Thank you, Your Honor.  And I

23    do apologize to the Court that I was running late

24    this morning.

25             I thought about this a lot last night, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8685

```
 1    it kind of felt like I was back in law school with

 2    that question of what is a present sense impression

 3    and what is an excited utterance, and what is just

 4    pure hearsay.

 5              THE COURT:  Can I just say something to Mr.

 6    Benjamin before --

 7              MS. TORRACO:  Of course.

 8              THE COURT:  You know, if you don't want a

 9    limiting instruction, that's fine.  I mean, it's your

10    call.  Sometimes people don't like the Court

11    commenting on it.  So I won't give it unless you want

12    me to give it.  So that's an option, too.

13              MR. BENJAMIN:  I appreciate that, Your

14    Honor.  Ultimately, in the past, I think that's come

15    down to:  It depends on what the limiting instruction

16    will look like.

17              THE COURT:  All right.  Fair enough.  So

18    draft out what you want.  I think you and I can

19    probably come up with something that works.

20              MR. BENJAMIN:  Thank you, Your Honor.

21              THE COURT:  Ms. Torraco.

22              MS. TORRACO:  Thank you.  So the statement

23    that you're admitting, I'd just like the Court to

24    rethink the section of that statement that relates to

25    "because he had a drug debt."  So the Court made a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8686

1    ruling that Amber Sutton can say that Adrian Burns

2    was going to go to the Gallegos home.  Okay, that's

3    fine.

4          The part that I'm objecting to and asking

5    the Court to rethink is the part about "because he

6    had a drug debt."  So that isn't a present sense

7    impression, that clause.  And that changes the

8    character of the whole statement.  And so --

9          THE COURT:  Well, the portion about

10   collecting a drug debt and sell heroin is just as

11   much about planning, like where he's going to go;

12   it's -- he's telling us what he planned to do there.

13   So it seems to me that, if we're in agreement that

14   the plan should go -- where he planned to go, it

15   seems to me that I also should allow the statement to

16   come in of what he planned to do when he got there:

17   Collect a drug debt and sell heroin.

18         MS. TORRACO:  I hear what you're saying.

19   We're not in agreement; I mean, we're objecting to

20   that, because a plan is not a part of a present sense

21   impression.  A present sense impression, there is no

22   exception for the plans that you make, or motive.  A

23   present sense impression is a reflection on a then

24   existing emotional, physical, or mental state.  It's

25   something that just happened, like, "Oh, my gosh,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8687

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 8688

```
 1    Torraco walked in late, and you know, Torraco had

 2    just walked in late.  Or, Oh, look, there is a car

 3    speeding by.  Those are present sense impressions;

 4    slightly different than excited utterance, because

 5    you're not under the stress of the event.

 6              THE COURT:  Here's what 803(3) says:  "A

 7    statement of the declarant's then existing state of

 8    mind, (such as motive, intent, or plan.)  It's right

 9    in the rule that plan is the state of mind that

10    they're looking for.  This one seems to me to be not

11    on the edges, but right there in the language of the

12    rule.

13              MS. TORRACO:  Okay.  So this is how I --

14              THE COURT:  I can't do memory and I can't

15    do beliefs.  I agree with those, that those are not

16    part of the rules.  He can't remember what he did, or

17    believe he's going to do some stuff.  But if he's

18    going to flat state that:  Here's my plan, it seems

19    to me that's what it falls -- what it -- falls within

20    the language of the rule.

21              MS. TORRACO:  Okay, Your Honor.  How I read

22    it is that those things are in parentheses; they're

23    "for examples"; they're not hard and fast that every

24    single plan comes in as a then existing mental,

25    emotional, or physical state; that the plan -- those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8688

 1    are "for examples."  And the plan has to pass the

 2    first guarantee of trustworthiness:  Did the person

 3    have time to reflect on or lie to, or have time to

 4    lie about what was happening?  So all plans don't

 5    come in under a present sense impression.

 6            And so the question is:  Did Adrian Burns

 7    or Amber Sutton have time to lie about this

 8    statement?  Because it's not a then existing present

 9    sense impression.  So her present sense impression

10    was:  He's leaving the house, you know, he's going to

11    see the Gallegoses.  But the present sense

12    impression -- and I know you've made your ruling, I'm

13    just making a record -- doesn't go to the actual drug

14    deal.

15            So thank you for entertaining me.  And

16    again I apologize I was late.

17            THE COURT:  All right.  Thank you, Ms.

18    Torraco.

19            The Government put in its footnote on page

20    3, it says -- this is from Saltzburg, "if D says I'm

21    going to go to New York tomorrow because Joe stole my

22    money, and I have to get it back for him, the

23    statement cannot be used to prove that Joe stole

24    money from D.  Because that would be using the state

25    of mind statement to prove the truth of a past fact.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8689

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 10690

1    But it could be used to prove that D went to New

2    York."  It seems to me this falls kind of squarely

3    within Saltzburg example.

4             MS. TORRACO:  But, Your Honor, if I may

5    just address you from the table, that goes to, yes,

6    he went to the house, not that he owes the drug debt.

7             THE COURT:  Okay.  You're saying present

8    sense exception.  You know that's 803(1).  I'm not

9    using that.

10            MS. TORRACO:  Okay.

11            THE COURT:  That's 803(3).

12            MS. TORRACO:  Okay.

13            THE COURT:  So it's present state of mind.

14   So maybe we can clear that up that I'm not relying on

15   803(1).

16            Let me just make a note to myself about

17   this limiting instruction for Mr. Joe Gallegos, and

18   then I'll be ready to go.

19            All right.  I think the next motion that is

20   up, unless y'all have something more urgent that we

21   need to go to --

22            MR. BECK:  Your Honor, we do.  The United

23   States has something it would like to bring up with

24   the Court.

25            THE COURT:  All right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8690

```
1              MR. BECK:  So I handed out this morning,
2    and handed up to the Court, our production of Special
3    Agent Acee's notes from the debrief on Tuesday with
4    James Garcia.  In the notes -- and James Garcia
5    said -- I think it probably starts at the bottom of
6    the second page of the notes, which is DeLeon 68434,
7    and continues through 68435, the third page of the
8    notes.
9              THE COURT:  This is Mr. Acee's handwritten
10   notes?
11             MR. BECK:  Right, Your Honor.
12             We expect a 302 to be forthcoming sometime
13   day for his notes.  He was on another operation
14   yesterday.
15             What Mr. Garcia said, and what's reflected
16   in these notes, is that when he came to court on
17   March 15 and 16, he was told by attorneys not to go
18   into the courtroom; to go to their office in the bank
19   building.  The attorneys showed him the Roundy report
20   that we -- that was the basis of his testimony, and
21   that -- asked him why, if Troup is his friend, he
22   said this.  He said he was trying to make a deal with
23   the FBI.  The attorneys told him -- he told the
24   attorneys that Troup did admit those things to him,
25   and he was trying to make a deal with the FBI.  The
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8691

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 12692

1    attorney told him to go into court and say that James

2    Garcia lied to the FBI then.  The attorney said it

3    would be bad for their case.  He said that testimony

4    would hurt your friend Troup.  The attorney said that

5    if Mr. Garcia didn't say that they were lies, the

6    Government would bring more charges, more SNM

7    charges, RICO stuff.

8            MR. CASTLE:  Your Honor, I'm going to

9    object unless -- are they offering this as an

10   exhibit?

11           THE COURT:  Well, let me hear what Mr. Beck

12   says.  I can imagine you've got a response here, but

13   let's see where he's going with it.

14           MR. BECK:  Then the attorney said that he

15   would only ask Mr. Garcia three questions.  He told

16   him the questions; told Mr. Garcia to answer no to

17   all three questions, and that's all Mr. Garcia would

18   have to do.  The attorney said that when the

19   Government lawyers asked questions, Mr. Garcia should

20   say that he pleads the Fifth, or say that he doesn't

21   know, "I don't remember that."

22           I think that was the extent of the issue

23   that's arose here.  The two attorneys, as Mr. Garcia

24   described them and pointed them out, would be Mr.

25   Troup's attorneys.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8692

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8693

```
 1              Then in the in-court testimony it was not
 2    Mr. Troup's attorneys, it was Mr. Garcia's attorney,
 3    Mr. Castle, who asked the questions of Mr. Garcia.
 4              I would have brought this to the Court's
 5    attention -- I think that this creates a number of
 6    issues for the case.  I would have brought this to
 7    the Court's attention earlier.  But when there are
 8    issues of professional responsibility in our office
 9    that we have a duty to report, which I felt I did in
10    this case, that has to go to the Office of
11    Professional Responsibility, and they have to give us
12    the okay to report any matters of professional
13    responsibility.
14              So when I got that approval, there was
15    discussion in our office amongst many people that we
16    should wait until Mr. Garcia pleads, and this is in
17    the factual basis, so that it's in black and white,
18    and there is -- I think it's slapping the Court in
19    the face, and there is no other option.
20              As we furthered those discussions, we
21    concluded -- our office and I concluded that that
22    would not be a prudent way to approach this at all,
23    given trial coming up Monday, and given the quick
24    turnaround.  I expect that Mr. Garcia will plead
25    tomorrow to a factual basis -- or excuse me,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8693

```
 1   tomorrow -- what day is today, Thursday -- I expect
 2   he will plead to a factual basis similar to this with
 3   similar information not appearing in the pleading.
 4           And so I wanted to bring this to the
 5   Court's attention early on because I think it creates
 6   a conflict, certainly among Troup's attorneys and Mr.
 7   Troup.  It may prove to be a conflict with
 8   Mr. Garcia's attorney, Mr. Castle.  And it
 9   certainly -- in my opinion, I'm concerned about 2255
10   down the road, if we proceed with this trial and with
11   the attorneys that are currently representing Mr.
12   Troup, at least; possibly Mr. Garcia, I don't know
13   that.
14           I will point out for the Court -- if the
15   Court remembers this -- at a bench conference after
16   we discussed appointing Mr. Garcia an attorney, Mr.
17   James Garcia an attorney, before he was represented,
18   the first thing he said when the Court advised him
19   that he likely needed an attorney -- and the Court
20   got on the phone -- he said, "I have a question, sir.
21   I was told I was just going to come on -- up here on
22   testimony that I gave were a lie, you know what I
23   mean?  I was trying to make a deal with the FBI."
24   Certainly, when I heard that testimony in court on
25   the afternoon of March 15, 2018, it gave me pause,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   and I think it did the Court, too.  I think that's

 2   reflected on the next page.  I didn't know where

 3   that --

 4              THE COURT:  Can you go back to the prior

 5   page?

 6              MR. BECK:  Yes, Your Honor.  So at the

 7   bottom, at the bottom of this page you say, "Why

 8   don't you not say too much.  Why don't you not tell

 9   me too much."

10              I said, "Your Honor, I would say, based on

11   what I heard right there, he definitely should be" --

12              THE COURT:  Let me go back.  I'm slow

13   reading.

14              MR. BECK:  Sorry, Your Honor.  Sure, no

15   problem.  And I should point out to the Court that

16   this is my print-off of the rough notes.  And Ms.

17   Bean is going to give me a hard time about it.  This

18   is not the final.

19              THE COURT:  All right.  Go ahead and turn

20   the page.  And what did you say?  Okay.

21              MR. BECK:  So as I said, I didn't want

22   to -- I was adamant that we should bring this to your

23   attention as soon as I got approval from OPR to

24   report under my professional responsibilities, that

25   we shouldn't wait because of the trial pending

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8695

```
 1    Monday.  And I didn't want -- I was also concerned
 2    that if we didn't bring it up today while we're here
 3    in court, and then a plea agreement is filed with a
 4    factual basis similar to these, that -- these notes
 5    by Special Agent Acee -- that it would look like we
 6    were trying to play games or continue the trial or
 7    delay the trial or something of that nature.
 8            THE COURT:  Do you have -- even if it's
 9    rough, do you have the language that he's going to
10    plead to tomorrow in the factual section?
11            MR. BECK:  Yes.  It's rough.
12            THE COURT:  Do you have it with you?
13            MR. BECK:  I do.
14            THE COURT:  Can you read it to me?  And
15    I'll understand that it's rough.
16            MR. BECK:  Yes.  And just so we're clear,
17    I'm providing this to the Court.  Our office has not
18    had the final feedback on it.  Mr. Glazener, who
19    represents Mr. Garcia, has not had the final feedback
20    on it.  But since the Court asked, and I have it with
21    me, but -- would you like me to -- it's pretty long.
22            THE COURT:  Yeah, okay.
23            MR. BECK:  "On March 15 to 16, 2018, I was
24    subpoenaed and testified as a defense witness in a
25    hearing in United States versus DeLeon, et al., No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    15-4268 JB.  I previously had been a member of the

2    Syndicato de Nuevo Mexico, SNM Gang, members of which

3    are defendants in United States v. DeLeon et al., No.

4    15-4268 JB.

5              "A rule of the SNM Gang is that you do not

6    cooperate with law enforcement, including by

7    testifying.  Another rule of the SNM is that if an

8    SNM member violates that rule and cooperates with law

9    enforcement, or testifies, the SNM Gang automatically

10   places an order to kill that SNM member.

11             "On March 15, 2018, when I arrived to the

12   United States District Court for the District of New

13   Mexico Federal Courthouse in Las Cruces, New Mexico,

14   two attorneys, whose identities are known to the

15   federal government, because I provided their

16   identities to the Federal Bureau of Investigation,

17   FBI, and the Assistant United States Attorneys, told

18   me not to go into the courtroom.  Instead, they took

19   me across the street to an office" --

20             THE COURT:  Now, my memory is -- and just

21   make sure I'm correct -- they had been subpoenaed by

22   the defendants to testify at the hearing; correct?

23             MR. BECK:  Yes, Your Honor.

24             "In the office these attorneys presented me

25   with a report from an interview that I had done with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8697

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8698

1   the FBI in May of 2013.  They showed me the report

2   and directed me to statements that I had provided to

3   the FBI, in which I told them about previous

4   admissions that Troup had made to me regarding two

5   murders that he had been involved in for the SNM

6   Gang.

7              "Troup and I were SNM members together, and

8   we are close friends.  The lawyers asked me why I

9   made those statements to the FBI, to which I

10  responded, 'because Troup had admitted them to me,

11  because I was trying to make a deal with the FBI.'

12  The attorneys asked me why I would say those things

13  about my friend, Troup, to which I responded that I

14  said them because they are true, and I was trying to

15  make a deal."

16             THE COURT:  Can you go back -- let me read

17  that to myself.  All right.  Go ahead.

18             MR. BECK:  "One of the attorneys, whom I

19  identified to the federal government, told me that I

20  needed to go into court that day, March 15, 2018, and

21  testify that these statements that I provided to the

22  FBI in May 2013, which were accurately reflected in

23  the report, were lies, because it would be really bad

24  for their case, meaning that testifying that the

25  statements I provided to the FBI in 2013 were lies

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8698

1    would greatly damage the United States' case against

2    Troup and the other SNM members in the United States

3    v. DeLeon, et al., No. 15-4268 JB.

4              "I told the attorneys that I wasn't going

5    to do that because I did not want to get in any more

6    trouble.  I did not want to incur any more criminal

7    charges by lying under oath.

8              "The same attorney responded that, if I

9    testified truthfully and did not say that the

10   statements I provided to the FBI in May 2013 were

11   lies, that the United States would bring several

12   additional charges against me in connection with the

13   prosecution of the SNM Gang.  The attorney then

14   explained to me that I would be asked only a few

15   questions about my statement.  The attorney told me

16   those questions, and told me that I would answer

17   them, quote, 'No.'  The attorney said that would be

18   the end of the questions.

19             "The attorney said that afterwards, when

20   the Assistant United States Attorney asked me

21   questions, I should respond, quote, 'I plead the

22   Fifth,' and quote, 'I don't remember.'  The attorney

23   repeated that several times, quote, 'I plead the

24   Fifth,' quote, 'I don't remember.'

25             "Consequently, I testified on March 15 and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8699

```
 1    March 16, 2018, in the United States v. DeLeon

 2    et al., No 15-4268 JB, and I willfully made several

 3    false statements under oath that I knew to be false.

 4           "On March 15, 2018, under oath, I willfully

 5    lied when I answered in the following exchange:

 6           "Q.  Has anyone ever told you -- in a

 7    conversation with you, has anyone ever told you that

 8    Billy Garcia ordered the murders that happened at the

 9    Southern New Mexico Correctional Facility in 2001?

10           "A.  No.

11           "Truthfully, in 2012, Troup told me that

12    Billy Garcia ordered the 2001 murders at the Southern

13    New Mexico Correctional Facility."

14           THE COURT:  All right.  Let's pause there

15    and let me reread that to myself.  Okay.

16           MR. BECK:  "On March 16, 2018, under oath,

17    I willfully lied when I answered 'no' in the

18    following exchange:  So did Edward Troup, Mr. Troup,

19    admit his involvement in SNM crimes to you?

20           "A.  No.

21           "Truthfully, Troup admitted his involvement

22    in SNM crimes to me many times, including in 2012,

23    and 2005 to 2006, when he admitted his participation

24    in the murder of Freddie Sanchez, a/k/a Fred Dawg,

25    and the murder of Frank Castillo, a/k/a Pancho,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8700

1    respectively.

2           "Thus, I made statements which I knew to be

3    false.  These false statements were material to the

4    proceedings held in federal district court on March

5    15 and 16, 2018."

6           THE COURT:  Well, you know, this is all

7    hitting me cold.  So lay out for me what you see the

8    problems with this, now that I understand what

9    Mr. Garcia -- tell me what problems it creates for us

10   going forward.

11          MR. BECK:  I think the problems are that,

12   when Mr. Garcia takes the stand, he will be

13   impeached, I anticipate, on his perjury conviction.

14   When that happens, he will explain why he committed

15   perjury under oath.  One of the reasons being what

16   happened with the attorneys in the room.  I think

17   that may be the main reason.  I don't know if he will

18   say that for sure, but that's what I anticipate,

19   based on hearing this on Tuesday.

20          At that point, there are a number of

21   problems that come up.  I think the first is that, to

22   the extent that -- to the extent that the attorneys

23   may think that this is not accurate, or not true,

24   they would become witnesses in the trial, which

25   happens sometimes.  To the extent that the jury

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8701

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22702

1    believes this is true, I think that it creates a

2    problem for Mr. Troup, at least -- and sort of the

3    reverse -- I guess I was thinking about it last night

4    and this morning, and sort of the reverse policy

5    behind the Witness Advocate Rule.  One of the reasons

6    the Court imposes the Witness Advocate Rule, that an

7    advocate should not be a witness at trial, is because

8    it gives some -- the Court's concern is it gives some

9    bolstering effect to the testimony for the jury.

10           If the jury believes Mr. Garcia's testimony

11   about what happened about these course of events, I

12   think that that bolstering effect is turned 180

13   degrees, and the jury sees Mr. Troup in a very bad

14   light.  What I think to myself is, if Mr. Troup's

15   attorneys had to go to this length to try to protect

16   him, how guilty is Mr. Troup?  That's my concern, and

17   that's why I think it creates a conflict.  And I

18   couldn't articulate it because it's a very unique

19   conflict situation.  It's certainly very different

20   from Mr. Blackburn's conflict.

21           I also think that, if this testimony comes

22   out in any light, if Mr. Troup is convicted, I

23   anticipate that there will be a 2255, ineffective of

24   assistance of counsel down the road, based on this

25   testimony, for the reasons that I just articulated

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8702

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 23703

1    about, the conflict of interest, and the light in

2    which it paints Mr. Troup during this trial.

3              THE COURT:  Well, okay, are you

4    articulating that -- I assume that by the statements,

5    what we're saying is:  Do you think that what

6    Mr. Garcia is going to plead to tomorrow is that Mr.

7    Burke and Ms. Harbour-Valdez were the two people in

8    the room; correct?

9              MR. BECK:  Correct.

10             THE COURT:  And then I guess what you're

11   also implying or surmising is that they were in some

12   collusion with Mr. Castle to limit the number of

13   questions so that it matches -- what occurred in the

14   meeting matches what occurred here in the courtroom?

15   Is that spinning out where we are?

16             MR. BECK:  Yes.

17             THE COURT:  So is your conflict that -- is

18   the conflict that what -- taking Mr. Garcia's words,

19   that that created some attorney-client relationship

20   between Mr. Garcia and Mr. Troup's counsel?  Is that

21   the conflict?

22             MR. BECK:  Honestly, I hadn't even thought

23   of that.  That is something that had never crossed my

24   mind.  That was not the conflict that I was thinking

25   of.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 24704

```
 1                    THE COURT:  All right.  Is it really a
 2       conflict then?
 3                    MR. BECK:  That's what I don't know.
 4       That's why I said I couldn't articulate it.
 5                    THE COURT:  If there is no allegation that
 6       Mr. Burke and Ms. Harbour-Valdez were -- created some
 7       de facto representation where they were giving him
 8       some legal advice, and somehow got into a situation
 9       where they're representing him -- if we put that
10       aside, that that's not the situation the Government
11       is raising, then it seems to me that it's more in the
12       nature of misconduct than it is a conflict situation.
13                    Is that a fair analysis of where you are?
14                    MR. BECK:  I think so.  As I said, the
15       conflict that I see is not the traditional conflict.
16       It is the conflict of the attorneys being the eye
17       of -- the arm of the defendant.  And, as I said, when
18       this testimony comes out, the jury believes it,
19       thinks it's true, the conflict that I see is now Mr.
20       Troup's attorneys have painted Mr. Troup in a bad
21       light, a very bad light.  And that's the conflict
22       that I see, is how can they effectively and
23       vigorously advocate for Mr. Troup?
24                    I mean, the concern is always there, that
25       if Mr. Garcia takes the stand, are they -- are Mr.
```

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 8704

 1   Troup's attorneys going to pull punches or withhold
 2   some questioning that they otherwise may question
 3   Mr. Garcia on because of what happened, because of
 4   what they know?
 5          So in that sense it is more like a conflict
 6   situation in which, you know, if someone is a former
 7   client, and you have confidential information about
 8   them, you cannot represent someone adverse to them
 9   because there is always the concern that you won't
10   vigorously advocate your current client without
11   disclosing confidential information from a past
12   client, and breaching that confidentiality, ethical
13   rule.  So that's why that conflict arises because
14   you're worried the attorney won't be a zealous
15   advocate for his current client out of concerns for a
16   past or former client.
17          THE COURT:  Well, let me -- let me ask this
18   question:  I've seen situations where, you know, the
19   defense lawyer -- well, this can go either way.  I
20   mean, y'all do the same thing as far as having an FBI
21   agent, but you're talking to him directly.  And then,
22   of course, that's the reason that we spend a lot of
23   money for investigators on the defense side, so that
24   they can have the same situation where they got
25   somebody that, if an interview blows up, it doesn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8705

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 26706

```
1    turn them into a witness.
2          Tell me how this one is different.  How is
3    this one different than when y'all have -- y'all
4    interview a witness, and you've got your FBI agent
5    there so he can take the stand with the 302 -- how is
6    it different here with these two attorneys?
7          MR. BECK:  The difference is the
8    investigator and the FBI agent, under the advocate
9    witness rule, divorced from just the attorneys in the
10   room.  That's why the United States doesn't take
11   statements with just the attorney in the room,
12   because there is always that danger that, you know,
13   they can say something that would make you a witness
14   in the case for the same reasons.  That's why private
15   investigators go and interview witnesses and sit in
16   on interviews with witnesses when the attorneys are
17   interviewing them, because then, if that witness
18   takes the stand and testifies inconsistently, they
19   call the investigator to impeach, so that they are
20   not the witness.  And so that's the reason that
21   private investigators sit in; that's the reason that
22   FBI agents, or whatever other, you know, law
23   enforcement agent is there, sit in on these
24   interviews, is so that we don't put an attorney on
25   the stand, given the Witness Advocate Rule.  That's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8706

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 27707

 1    the basis of it.

 2          So, in this situation, where there isn't an

 3    investigator present, at least as far as Mr. Garcia

 4    said -- he didn't say one way or the other.  He just

 5    said he took him over there and talked to him -- I

 6    don't anticipate anyone else was there -- as I said,

 7    it creates a situation where now, instead of an

 8    investigator that takes the stand, and maybe the

 9    jury says, Man, that investigator is a pretty bad

10    person; he or she has got some questionable, you

11    know, ethics there.

12          That's different than the attorney who

13    stands up here throughout the proceedings,

14    questioning witnesses, providing opening statements,

15    talking to the defendant during trial, giving the

16    closing argument, that's what's concerning in this

17    case, is that it will be the person, you know, the

18    person with the J.D., ESQ behind their name; that I

19    think the public -- I think the public trusts.  I

20    think the public puts a certain level of trust in

21    attorneys.  And attorneys have a certain level of

22    respect that perhaps even in the courtroom, at least

23    when the jury is sitting there, I think the jury has

24    a certain level of trust and respect for attorneys,

25    that they may not have for investigators or FBI

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492

 

PROFESSIONAL COURT                               e-mail: info@litsupport.com
REPORTING SERVICE

DNM 8707

```
 1    agents or DEA agents or other law enforcement agents.
 2    I think they expect that an attorney would have
 3    higher ethical standards, seek the truth.
 4            And so I think that it's very different
 5    when these statements were made by attorneys than if
 6    they had been made by an investigator.
 7            THE COURT:  All right.  Anything else, Mr.
 8    Beck?
 9            MR. BECK:  No, Your Honor.
10            THE COURT:  All right.  Thank you, Mr.
11    Beck.
12            Mr. Burke.
13            MR. BURKE:  I'd like to make a record
14    first, and then answer some questions, if the Court
15    has any.
16            THE COURT:  Could I get Mr. Beck to do
17    something:  Could he leave his statement up on the
18    screen so that you and I, maybe later on -- I'll let
19    you talk first -- but maybe you can go through some
20    of those things, and we can --
21            MR. BECK:  The notes?
22            THE COURT:  This is the one with the
23    factual section for Mr. Garcia's plea agreement.
24            All right.  Mr. Burke.
25            MR. BURKE:  I'm referring to Acee's notes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8708

1    of the meeting.  And I'm going to the bottom of page

2    68434.  Mr. Acee reports that Garcia, James Daffy

3    Garcia, said "Came to court, thought Government

4    subpoena at first."  That's a lie.

5              "He be called to court, came to court, and

6    Troup's attorneys told him to meet at the office in

7    the bank building.  Don't stay here."  That's a

8    filthy lie, a filthy lie.

9              THE COURT:  Well, let's just --

10             MR. BURKE:  No, Your Honor.  My integrity

11   has been impeached by this filthy liar, and I want to

12   make a record.

13             THE COURT:  I understand.  But let's walk

14   through it, and just see --

15             MR. BURKE:  "Troup's attorneys, one male,

16   older mustache, and female brown hair, and so forth,

17   showed me report Roundy did."  That is a filthy lie.

18             "Asked if I said all this."  A lie.

19             "If he's your friend" -- this is in

20   quotes -- 'why would you say all this?'"  A lie.

21             "2013 report when arrested, fishing Roundy

22   and Roundy fishing defendant."  A lie.

23             "Was trying to make deal with FBI."  He

24   probably was doing that.  That was what he was doing

25   when he made the statement to Roundy, that Roundy

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8709

1  surreptitiously tape-recorded, and then didn't

2  acknowledge that in his 302.

3          "Told attorneys Troup did admit, and trying

4  to make deal with FBI."  A lie.

5          "Male attorney told me to go into court and

6  say I lied to the FBI then, May 2013."  A filthy

7  despicable lie.

8          "Said it would be bad for their case, would

9  hurt Troup, your friend."  A despicable, filthy lie.

10          "Defendant didn't want to do this because

11  would get additional charges."  A lie.

12          "Male attorney said if I didn't say that,

13  then the gov would bring more SNM charges, RICO

14  stuff."  A filthy, despicable lie.

15          "Then said he would only ask" -- I never

16  said any such thing about what questions I would ask.

17  I never talked to him before he showed up in court

18  that day.

19          And here it is the Government who arranges

20  junk like this, and then has the nerve to come in --

21  in 45 years, Your Honor, I've never had a grievance.

22  Not one.  Ever -- and makes these allegations as if

23  they were true.

24          It's insulting.  And the level to which

25  this prosecution has gone with these informants is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8710

1    beyond belief.  It is mind boggling.  And I don't

2    know what else to say about this.

3           But I will say what the conflict is:  If

4    Mr. Garcia takes the stand, I'm a witness.  I'm a

5    witness.  I can't be both Mr. Troup's attorney and a

6    witness.  That cannot happen.  So there is a dilemma.

7           I want to speak to one other issue, if I

8    may, and that's the conflict with Mr. Blackburn.  May

9    I do that, or is that too far afield at this point?

10          THE COURT:  Well, I'm trying to get my head

11   wrapped around this.

12          MR. BURKE:  All right.

13          THE COURT:  Why don't we -- let me ask you

14   some questions so that I understand precisely what

15   your position is on these.

16          I forget whose subpoena it was.  Was it Mr.

17   Troup's, or was it Mr. Castle's?  Okay.  So Mr.

18   Castle subpoenaed him here.  When he arrived here at

19   the court, did you -- and well, let me start with

20   you, and then I'll talk to you, Ms. Harbour-Valdez --

21   did you meet with him?

22          MR. BURKE:  No, I did not.  I saw him out

23   there.  And I said, Oh, that's Daffy.  I did not go

24   up to him.  I didn't say one word to him.

25          MR. CASTLE:  Your Honor, I'm actually --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8711

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32712

```
 1              THE COURT:  Hold on.  Let me try to get
 2    some organization here.  I know you want to speak and
 3    I'll let you speak.
 4              MR. CASTLE:  Well, I'm just objecting to
 5    this inquiry, and I'll tell the Court why:  We're
 6    going to have to defend this case.  Mr. Garcia is
 7    going to take the stand.  I want to wait until after
 8    he pleads.  The Government and Mr. Garcia have agreed
 9    that this is the set of facts so they don't change
10    over time.  And I don't want Mr. Burke and
11    Ms. Harbour-Valdez to put all their cards on the
12    table, because frankly, I believe that what is in
13    this plea agreement -- which hasn't been signed yet,
14    so they can change it -- will change, if we have to
15    go through a Q and A today.  I suggest that we wait
16    until after Mr. Garcia has pled, and then we can go
17    through this process.
18              THE COURT:  Well, the problem I'm having
19    with that is that -- well, a number of things -- but
20    one of them is, I'm very concerned about Mr. Garcia
21    signing that plea agreement, if I've got attorneys
22    telling me that the very first sentence is untrue,
23    that you never even met with him.  I mean, that --
24    that really -- I mean, I've got to -- I know how you
25    feel about Mr. Garcia -- but I also would be very
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8712

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 33

```
 1    concerned about him signing that agreement and
 2    entering into a plea to that set of facts.  That
 3    scares me, too.
 4              Let me ask you questions.  If you decide
 5    you don't want to answer them, then I'll figure out
 6    what to do.  But you're telling me, Mr. Burke, that
 7    you did not meet with him before he testified on the
 8    stand?
 9              MR. BURKE:  I did not.
10              THE COURT:  And you never even spoke to
11    him; you saw him across the way, but you didn't --
12              MR. BURKE:  I saw him across the way.
13              THE COURT:  Outside of the courtroom here?
14              MR. BURKE:  Yes, sir, and he did go to the
15    bank building.  I was a bit surprised that he was
16    there.  He was not there at our request.  And so I
17    laid eyes on him there as well.
18              THE COURT:  But, again, didn't speak to
19    him?
20              MR. BURKE:  I did not have a conversation
21    with him.  I don't think I even said hi or nodded my
22    head to him.
23              THE COURT:  How did you know him?  How did
24    you --
25              MR. BURKE:  I knew there was a subpoena for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8713

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34714

1    him.  So when I saw this fellow out here, I'm going,

2    oh, that must be Daffy.

3              THE COURT:  But you'd never met him before?

4              MR. BURKE:  I had never met him or talked

5    to him.

6              THE COURT:  It was an assumption on your

7    part, rather than knowledge for certain that that's

8    who that was?

9              MR. BURKE:  The timing was right.

10             THE COURT:  What is over at the bank

11   building?  I know that some of you have an office

12   somewhere in Las Cruces.  Is that the locations?

13             MR. BURKE:  That's where we have our files.

14   We've had a meeting or two over there.

15             THE COURT:  And you don't know why he went

16   over to that building?

17             MR. BURKE:  I do not personally, no.  I

18   believe the part about not hanging out is probably

19   true.  But I was not part of those conversations.

20             THE COURT:  So you think somebody told

21   him --

22             MR. BURKE:  I do.

23             THE COURT:  -- to go over to the bank

24   building?

25             MR. BURKE:  I do.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8714

```
 1              THE COURT:  Now, I won't go through this in
 2   any detail, because you're saying you never spoke
 3   with him at the bank building.  But all these
 4   statements that he attributes to a male, older, with
 5   a mustache, you never had made any of these
 6   statements?
 7              MR. BURKE:  Fiction; it is fiction, Your
 8   Honor.
 9              THE COURT:  Did you see anybody meeting
10   with him at the bank building or otherwise?
11              MR. BURKE:  I saw someone sitting with him.
12              THE COURT:  And did you meet with anybody
13   in preparation for somebody to meet with him?  For
14   example, did you talk to somebody on the defense side
15   and say:  You go meet with Mr. Garcia and show him
16   this document, and tell him what questions we're
17   going to ask?
18              MR. BURKE:  No.  I did not do that.
19              THE COURT:  So you had no knowledge what
20   anybody was meeting with him about, and what
21   documents they may or may not have been showing him?
22              MR. BURKE:  I don't know that anybody
23   showed him any documents.  I know why he was
24   subpoenaed.
25              THE COURT:  But even to this day, you don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8715

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 36

1    know what conversations anybody had on the defense

2    team with him?

3           MR. BURKE:  Oh, I know the conversations.

4    They were shared with me under a JDA.  But they

5    weren't with Ms. Harbour-Valdez or me.

6           THE COURT:  And you did not know that

7    anybody was going to meet with him or talk to him, or

8    what they were going to talk to him about before it

9    occurred?

10          MR. BURKE:  I'm not sure that they -- I

11   know that they talked to him.  I know they talked to

12   him about that FBI report.  That was the issue.  But

13   I don't know if they showed it to him.  I don't

14   know -- I don't know how long they met with him.  I

15   know the purpose of it.  Somebody was doing their job

16   about -- with a witness.  And I know supposedly what

17   he said on the stand is what he was telling them.

18          THE COURT:  Ms. Harbour-Valdez, why don't I

19   give you a chance to speak.  And then I may have some

20   similar questions for you.

21          MS. HARBOUR-VALDEZ:  Thank you, Your Honor,

22   I was notified that Mr. Garcia had shown up, was

23   outside the courthouse with one of the defense team

24   investigators.  And I went outside, because I had not

25   yet had a chance to talk to him.  It was suggested --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8716

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 37717

```
 1              THE COURT:  How did the defense team

 2   investigator figure out it was Mr. Garcia?  How did

 3   they make a connection with each other?

 4              MS. HARBOUR-VALDEZ:  His number was on the

 5   return of the subpoena, so he called him.

 6              THE COURT:  He had the subpoena --

 7              MS. HARBOUR-VALDEZ:  He called him when he

 8   got here.  And so he was outside, and met him, and I

 9   left the courtroom.  Mr. Burke never left the

10   courtroom.  He did not meet Mr. Garcia.  He did not

11   see Mr. Garcia until he was here at the courthouse,

12   was my recollection.

13              But the investigator and I went to the

14   office.  And I have -- these are my notes from that

15   meeting, and I will gladly give them to the Court --

16   it was maybe 15 minutes.  No reports were shown to

17   Mr. Garcia.  He asked why he was there.  He said he'd

18   already answered their questions a couple of weeks

19   earlier.

20              THE COURT:  When he says "they," who was he

21   referring to?

22              MS. HARBOUR-VALDEZ:  The members of the

23   other defense team, and investigator that he met with

24   apparently, or spoke to.  We were not privy to that

25   meeting.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            THE COURT:  So some other defense team met
 2    with him earlier?
 3            MS. HARBOUR-VALDEZ:  Yes, I know that for
 4    sure.  I wasn't privy to that meeting.  I -- but,
 5    yes, they met with him previously, and they
 6    subpoenaed him.
 7            No documents were shown to him.  I
 8    certainly did not provide any legal advice to him.
 9    And while I haven't been practicing as long as Mr.
10    Burke, I've been doing this 21 years, and I've never
11    had a grievance filed against me.  And I'm shocked
12    that this is the allegation that's being made.
13    Because -- I mean, I'm shocked.  It was maybe 15
14    minutes.  He said exactly -- and I'll -- like I said,
15    I'll gladly turn these over to the Court.
16            He said that he was told by Agent Roundy
17    that he talked, the case would be dismissed.  He said
18    "I pled.  I did my time.  I renounced on paper.  I
19    don't know why I'm here.  I was scooped up, but I
20    didn't think" -- or it says "scooped up, but didn't
21    think he was a member, so he lied to get popular.
22    Lied to get out of jail.  He was on heroin" -- excuse
23    my language -- "would shit on anyone to get out, even
24    his own mom."  He said Edward Troup didn't confess.
25    Never.  We don't even like each other.  I lied.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8718

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 39 8719

```
 1   was addicted to drugs.  I was facing prison, et

 2   cetera, and I was trying to work a deal.

 3           And I said, well --

 4           THE COURT:  You said you didn't mind me

 5   seeing these.  Do you mind anybody else seeing them?

 6           MS. HARBOUR-VALDEZ:  We can make it an

 7   exhibit.

 8           THE COURT:  Would you put it on the

 9   overhead and walk me back through what -- so your

10   investigator brought him to you, or --

11           MS. HARBOUR-VALDEZ:  An investigator.

12           THE COURT:  -- brought him to you, and then

13   you walked him over to the bank building?

14           MS. HARBOUR-VALDEZ:  We all went to the

15   bank building.  It was very windy that day.

16           THE COURT:  When you say "we all" --

17           MS. HARBOUR-VALDEZ:  The investigator and

18   I, Mr. Garcia and his wife.

19           THE COURT:  Okay.  And then you sat in the

20   bank building; you sat in an office --

21           MS. HARBOUR-VALDEZ:  In our office.

22           THE COURT:  -- over there?

23           MS. HARBOUR-VALDEZ:  Correct.

24           THE COURT:  And then these are the notes of

25   your conversation.  And you said it lasted about 15
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 40720

1    minutes.  Was your investigator present for this

2    meeting?

3              MS. HARBOUR-VALDEZ:  Yes, and I rarely

4    spoke during this meeting.  It wasn't my

5    investigator.  But the investigator that was present,

6    who had previously interviewed him was my

7    understanding --

8              THE COURT:  So you had an investigator with

9    you throughout this meeting.

10             MS. HARBOUR-VALDEZ:  Yes, the one who

11   had --

12             THE COURT:  And so there is -- I was going

13   to ask about his wife.  Was his wife also present?

14             MS. HARBOUR-VALDEZ:  She was there the

15   entire time.

16             THE COURT:  So the four of you were there.

17             MS. HARBOUR-VALDEZ:  Yes, Your Honor.

18             THE COURT:  Okay.  Then, if you'll walk me

19   through -- these are the full extent of your notes of

20   that meeting?

21             MS. HARBOUR-VALDEZ:  Yes, Your Honor.

22             THE COURT:  Why don't you tell me what they

23   say.

24             MS. HARBOUR-VALDEZ:  He said, "The deal was

25   you talk, it's dismissed."  And I'm assuming this is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8720

1    when he was picked up back in 2011, 2012.  He said,

2    "I pled.  I did my time.  I renounced on paper.  I

3    don't know why I'm here."  And that's because he

4    didn't understand the subpoena, because he had

5    previously talked to this defense team, and thought

6    he had answered their questions.

7            "Scooped up but didn't think he was a

8    member."  On that he's saying others didn't think he

9    was a member of SNM.  So he lied, "lied to get

10   popular, lied to get out of jail," said was "on

11   heroin, would shit on anyone to get out, even his

12   mom.

13           "Edward Troup didn't confessed" -- should

14   have said "didn't confess," never.  We don't like

15   each other.  He said, "I lied.  I was drug addiction,

16   facing prison, et cetera.  I was trying to work a

17   deal."

18           And that was the extent of it.  He said --

19   wife said, "Well, does he have to testify?"  And the

20   investigator said, Well, you're here under a

21   subpoena, so you need to -- it's up to you, but we

22   did subpoena you here.  And that's why he was, like:

23   I don't understand why I'm here because I already

24   told you everything.  And that's what he told us:

25   That I lied to get a deal.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8721

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 42

```
 1              And so they asked for some time to go and
 2   talk about it.  They were going to have lunch
 3   somewhere and discuss it.  That was it.  That was the
 4   end of the meeting.  And the next time I saw him was
 5   when he came into the courtroom.
 6              I certainly, Your Honor, did not give him
 7   any legal advice.  The investigator didn't give him
 8   any legal advice.  He was just -- like I said, he
 9   wanted to know:  I've already talked to you.  Why am
10   I here?  I already told you everything.
11              THE COURT:  And you said that the
12   investigator did most of the talking, all the
13   talking, or was it kind of a tag team?
14              MS. HARBOUR-VALDEZ:  He had previously met
15   with him, so he -- I guess he was asking some of the
16   same questions that he had asked him previously.  I
17   asked a few questions -- I mean, obviously, I asked
18   about Mr. Troup.  I mean, that's my client.  And
19   that's when he said he didn't confess.  It was a lie.
20              THE COURT:  And by "confess," the things
21   that were in Mr. Roundy's 302, he was saying those
22   were not true?
23              MS. HARBOUR-VALDEZ:  We did not show him
24   that 302 at that meeting.  What I took from that is
25   that when they had previously spoken to Mr. Garcia,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8722

1    that they had discussed that 302.  But there were no

2    documents shown to him at that meeting.  In fact, I

3    left the courtroom with the notepad and my pen, and

4    that was it.  I didn't have any documents with me.

5            THE COURT:  And so these things he said to

6    Mr. Acee, such as somebody is going to only ask you

7    three questions, none of that was --

8            MS. HARBOUR-VALDEZ:  No, Your Honor.  I

9    didn't have those questions.  It wasn't my witness.

10           THE COURT:  And Mr. Burke was not involved

11   in this.

12           MS. HARBOUR-VALDEZ:  Mr. Burke was not

13   present, Your Honor.  The hearing was still ongoing.

14   He stayed in the hearing.  And I left.  And like I

15   say, it was maybe 15, 20 minutes.  And during that

16   time the Court broke for lunch.

17           THE COURT:  And no other attorney met with

18   Mr. Garcia?

19           MS. HARBOUR-VALDEZ:  No, Your Honor.  Not

20   to my knowledge.  At that meeting it was the

21   investigator, myself, Mr. Garcia, and his wife.  And

22   it was very brief.  I mean, none of these things in

23   these notes occurred.

24           THE COURT:  All right.  Anything else you

25   want to tell me about this, Ms. Harbour-Valdez?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8723

 1          MS. HARBOUR-VALDEZ:  No.  And that was the

 2    first time I'd ever seen him, Your Honor.  We had

 3    attempted to contact Mr. Garcia back in March of

 4    2016, very early in this case.

 5          I sent a certified letter to him.  He was

 6    in BOP custody.  And we received a response back from

 7    him that he did not wish to talk to our defense team.

 8    His exact words were:  "I don't know anything.  Don't

 9    involve me in this.  I have no knowledge of this

10    case." So we left it alone.  And we never tried to

11    contact him again.  We figured he would probably be a

12    trial witness.  But based on that, we did not try to

13    reach him again.

14          In fact, it was a surprise to us when we

15    learned that another defense team had, in fact,

16    talked to him, and was going to subpoena him, so --

17          THE COURT:  All right.

18          MS. HARBOUR-VALDEZ:  Thank you.

19          THE COURT:  Thank you, Ms. Harbour-Valdez.

20          Mr. Castle.

21          MR. CASTLE:  Yes, Your Honor.  I'm not

22    quite sure what this hearing is about, or what the

23    request is here.  It sounds like it's multi-fold.

24    First, the Government seems to be raising ethical

25    violations on a number of attorneys based upon a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8724

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 45

1  statement that Mr. Garcia made, I believe, 48 hours

2  ago.

3           In fact, to the extent that they've done a

4  plea agreement, in fact, because they believe all of

5  this information from a convicted murderer, who is

6  apparently pleading tomorrow to perjury, without any

7  kind of vetting of this information.

8           I asked Mr. Beck if I could have the rest

9  of the plea agreement, so that I could look at it in

10 its entirety.  He's refused to do that.  I would

11 initially ask the Court to order that to be produced

12 to the parties, because certainly they're making very

13 serious allegations against respected members of

14 various bars.  And I think, as a matter of fairness,

15 they should turn over that plea agreement, even if

16 it's under a protective order that we not share it.

17 I can't imagine why we wouldn't be able to share it.

18 They've spread on the record all the nasty little

19 details that they want to infect this Court with.

20           So that's really one issue is I think

21 they're making some kind of an ethical allegation.

22 Number two, I think they're trying to conflict the

23 attorneys off the case.

24           I think the Court has its own inquiry,

25 which is is there something wrong with letting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8725

1   Mr. Garcia plead tomorrow?  And I understand that,

2   and I hadn't thought about that until the Court

3   raised that issue.

4            I'm happy to discuss this with Your Honor

5   based on that third issue, but in an ex parte

6   proceeding.  I can shed more light on that than

7   either of the two counsel that appeared at this

8   podium.

9            It was my team that subpoenaed him.  It was

10  my investigator who was with Mr. Garcia throughout at

11  the time.  And I can share that information.  But I'm

12  not going to sit here and let the prosecution make

13  allegations based upon a very cursory review of a

14  convicted murderer, and allow them to use that to

15  invade the defense process, and obtain defense work

16  product.

17           So I'm happy to do that, if Your Honor

18  wants to make that inquiry, but I think that's the

19  proper method.  We've talked to witnesses that have

20  said that the Government has done very improper

21  tactics, put severe pressure on them.  I don't come

22  in here and argue that the Government needs to be

23  kicked off the case, or there is a conflict.  And the

24  reason is is I've been doing this many, many years as

25  well.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8726

```
 1              And if the Government had checked on any of
 2    our histories before making an allegation sufficient
 3    that they were going to do an indictment, and indict
 4    not only Mr. Garcia, but lawyers in this case, in
 5    essence, if they looked into that, they'd see that we
 6    all have clean, clean, long-standing records of
 7    ethical conduct and defense representation.
 8              But during my time that I've been doing
 9    this, I can't tell the Court -- I can count on one
10    hand how many times I've heard from witnesses who
11    want to wiggle out of their problems; that one side
12    or the other has done something improper as an excuse
13    for their personal conduct in the case.  I can't
14    imagine how many times.  I've never raised ethical
15    allegations like this, based on that kind of
16    unsubstantiated information.
17              I'll share one thing that's a matter of
18    public record with this Court.  Before the Government
19    came into court here and made these allegations, and
20    wrote up this plea agreement, that I'm hoping to get
21    a full copy of, if they even looked at the transcript
22    April 15 (sic), where Mr. Garcia testified, they'd
23    see that the witness that went on before him was an
24    agent by the name of Pedersen.  And Mr. Burke, who is
25    being impugned here, was involved in the questioning
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8727

1   of him, and he was on the stand for a long period of

2   time.  And Mr. Garcia was the next witness.  So if

3   they'd even looked at the hard transcripts, they'd

4   realize that the very facts that Mr. Garcia spills on

5   the record, or spills in this report, 302, weren't

6   true.  If they bothered --

7           THE COURT:  Explain that.  I'm missing the

8   point.  Because what you're saying is that Mr. Burke

9   was here in this courtroom, not across the street?

10          MR. CASTLE:  Yes.  Yes.

11          But I don't want to go into it any further,

12  because I have an obligation to my client here to

13  defend him.  And apparently, they're going to put

14  this man on the stand, and I need to be in a position

15  where I can cross-examine him, not give them a

16  roadmap so that they can dance around it and recreate

17  a new story for Mr. Garcia.  I'm sorry, I should

18  always say this -- Mr. James Garcia -- so they can

19  then change his story once more, to try to impugn

20  counsel.

21          I can tell the Court I'm an experienced

22  litigator, so is Mr. Burke, so is Ms. Harbour-Valdez.

23  And I think that the Government is very naive to

24  think that we'd have conversations with a witness

25  without an investigator present.  Quite naive.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8728

```
1            And so, if they want to put that man on the

2    stand -- and if this is what they're going to put

3    their names on right here -- then let them do that.

4    But I don't think this should be a vehicle to expose

5    what it is we've developed regarding Mr. Garcia,

6    James Garcia.

7            THE COURT:  All right.  Thank you, Mr.

8    Castle.

9            Any other defendant want to speak on this

10   issue?

11           MR. CASTLE:  Would the Court order the rest

12   of the plea agreement to be produced to the defense

13   counsel?

14           THE COURT:  Let me talk to the Government

15   about that.

16           Let me ask some questions, though, before

17   I -- Mr. Beck comes back up.

18           Let me direct this first one to Mr. Burke

19   and Ms. Harbour-Valdez.  It seems to me that, if you

20   get into the trial and this issue comes up in some

21   way, your position is you have an investigator you

22   can put on that will validate what you've just said,

23   does that not solve -- you raised this issue, Mr.

24   Burke -- doesn't that solve your conflict problem, in

25   the sense that you will not be a witness in this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8729

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 50 8730

1  case; you will?

2     MR. CASTLE:  Excuse me, Your Honor.  I was

3  just trying to read the document that they put on the

4  screen for the Court to review, and it was grabbed

5  out of my hands by Mr. Beck.  I have at least the

6  right to read the document that he put into the

7  record here.  This is really unprofessional --

8  speaking of unprofessional -- grabbing documents out

9  of people's hands.

10     THE COURT:  Well, let me deal with one

11  thing at a time.  Sit down, Mr. Beck, and leave the

12  document on the Elmo.

13     MR. CASTLE:  Both pages.

14     THE COURT:  Leave everything there on the

15  Elmo.

16     Let me talk to Mr. Burke here.  Doesn't,

17  under New Mexico rules which govern this proceeding,

18  16-307, given that you've told me and

19  Ms. Harbour-Valdez that someone other than an

20  attorney was in the room when Mr. Garcia was

21  interviewed, why doesn't that solve any sort of issue

22  here?  Because your testimony and Ms. Harbour-Valdez'

23  will not be necessary.  Why isn't it just a normal

24  situation where a witness goes astray and doesn't

25  stick to what they said at the interview; you put

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8730

1    your investigator up there, and takes care of it.

2    That's the way the Government deals with it with an

3    agent.  Why doesn't it solve your problem, too?

4          MR. BURKE:  I actually thought Mr. Beck's

5    comments about how a jury might view Edward Troup's

6    lawyers -- that struck a cord with me -- that they

7    might be looking over at Ms. Harbour-Valdez and I,

8    and thinking, you know, what kind of lawyers are

9    these?  And yet, we would then be standing up asking

10   them to trust us, when we summarized evidence or made

11   particular arguments.  And it's a concern that it

12   would rub off on our client.

13         THE COURT:  Yeah.  But you've probably been

14   in this situation before, where a guy -- you know,

15   you interview him, and then he goes off the

16   reservation and does something else.  You just deal

17   with it, with your investigator, don't you?

18         MR. BURKE:  Except that the accusations

19   were personal to Ms. Harbour-Valdez and I.  So, if

20   James Daffy Garcia just changed his story, but hadn't

21   put us into his fabrication, then you're right.  But

22   he put us into his story.

23         And the investigator might be able to put

24   the lie to it.  But I'm just concerned that a jury,

25   some members of the jury might be looking over:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8731

1   Typical lawyer, typical lawyer.  And then maybe even

2   go into the jury deliberation room and say, Did you

3   see those lawyers, what they did?  And I'm just

4   concerned.

5          THE COURT:  Well, I can understand the

6   concern.  When we enter a trial like this, as

7   lawyers, we're concerned about everything.  But what

8   do you want to do?  What do you want to do now?

9          MR. BURKE:  I want to go to trial without

10  Daffy Garcia as a witness.  And I think he shouldn't

11  be a witness in this case.  And I want to defend my

12  client with my co-counsel in a trial without Daffy

13  Garcia.

14         THE COURT:  Well, what basis do I have,

15  though, to exclude him?  I mean, it seems to me

16  that -- I mean, I think the guy is a bit of a mess.

17  But isn't this just an area where for

18  cross-examination you're protected with your

19  investigator?  I don't know what the basis of me

20  excluding him would be.  Tell me what it would be.

21         MR. BURKE:  Here's what it would be:  If

22  you look at -- and I'm sure you already have -- the

23  Government's pleading regarding Billy Blackburn's

24  conflict, you will see that on November 5, my

25  co-counsel alerted the Government to the conflict.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8732

```
 1              THE COURT:  I saw that.
 2              MR. BURKE:  And alerted Mr. Blackburn as
 3    well.  Not that he needed to be alerted, because, of
 4    course, he knew there was a conflict.
 5              THE COURT:  I didn't see that.  I did see
 6    that in November that Ms. Harbour-Valdez told the
 7    Government about it.
 8              MR. BURKE:  They wait and wait and wait to
 9    notify the Court of the conflict, till the eve of
10    trial.
11              When I raised that issue with Government
12    counsel yesterday, they said, Well, you could have
13    raised it.  So apparently my co-counsel alerting
14    Government counsel to the conflict wasn't enough.  I
15    was supposed to bring it to the Court's attention,
16    not just alert the people who were most directly
17    involved.  And if that is true -- and that's what has
18    been represented to me -- then I have let my client
19    down by not doing something that effective
20    representation required.  And that is something that
21    I feel very bad about, that I should have raised it,
22    not just let my co-counsel alert people to it.  But
23    now that it has come upon us on the eve of trial, I
24    think it would be appropriate to say, you know,
25    Government counsel, you waited too long to bring this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8733

1   to our attention.  You don't get to use him, because

2   I have a right, as an Article III Judge to run my

3   trials in an efficient and proper way.  I think that

4   would be an appropriate way to deal with this

5   dilemma, so that Ms. Harbour-Valdez and I can stay on

6   this case and see it through and represent our

7   client.  I believe you have the right to do that.

8          THE COURT:  Well, that's pretty

9   heavy-handed.  If I don't do that, what then are you

10  wanting to do?

11         MR. BURKE:  I need to confer with my

12  co-counsel.  I hadn't -- you know, I'm trying to play

13  it out in my mind, if we put the investigator on, and

14  then that puts the lie to Daffy Garcia, after they

15  were so happy to impugn my integrity.  I don't know.

16  I have to talk to my co-counsel.

17         THE COURT:  Fair enough.

18         Ms. Harbour-Valdez, I guess the same

19  question -- you may say you need to think about it --

20  what do you want to do?

21         MS. HARBOUR-VALDEZ:  If I can have a chance

22  to discuss it.  This kind of caught us off guard this

23  morning.

24         THE COURT:  I understand.

25         And Mr. Castle, what do you want to do?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 55

```
 1              MR. CASTLE:  Your Honor, I think the Court
 2   earlier talked about its concern about whether
 3   Mr. Garcia should enter into a plea agreement.
 4              THE COURT:  Well, I think when Mr. Glazener
 5   gets here -- in some ways I wished he had been here
 6   for this, because if I were in Mr. Glazener's shoes,
 7   I think I would be shaken by this conversation, and
 8   then might be very hesitant to have my client put his
 9   signature on this plea agreement.
10              So I'm going to maybe see if I can work
11   with Ms. Bean or something to generate some draft
12   transcript so he can take a look at it.  Because --
13   and I'm going to talk to the magistrate judge and
14   say, If you're going to take a plea on this thing,
15   you ought to know that I probably don't believe what
16   he's pleading to is truthful.
17              MR. CASTLE:  Well, the reason I bring that
18   up is because that's an exhibit of the Court's
19   supervisory powers, to make sure that the integrity
20   of the fact finding is to the level it needs to be in
21   a court of law.  And I think it's from that same
22   source that comes the authority to say that, in a
23   particular instance a witness just isn't going to be
24   called.
25              I look at Mr. Garcia's testimony.  None of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8735

```
 1    it is -- well, I don't think any of it is

 2    corroborated.  But it's going to add probably very

 3    little value.  And here, we risk removing counsel for

 4    Mr. Arturo Garcia because of it, or creating a

 5    conflict that the appellate courts and this Court

 6    have to deal with.  We have a problem for lawyers who

 7    have sterling records having to perhaps operate with

 8    a cloud over their head, and needing to consult

 9    counsel to defend them.  All of these things go into

10    the mix.

11          And I know the idea of striking a witness

12    is normally very heavy-handed.  But in this instance,

13    given the constellation of events and the Court's

14    perhaps concern that Mr. Garcia, whatever he says is

15    questionable in its truth and accuracy, I think

16    that's where the authority comes from, if the Court

17    wishes to do that.

18          And so I know we've been protecting

19    Mr. Garcia a lot in this case, whether it be

20    providing him counsel, or attempting to.

21          THE COURT:  I'm not sure I've done

22    enough --

23          MR. CASTLE:  I understand.

24          THE COURT:  -- but I think I tried.

25          MR. CASTLE:  I understand.  And frankly, if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8736

```
 1   we had understood that in February of this year, that
 2   the Government knew that Mr. Garcia had decided to
 3   refuse to cooperate and was backtracking from his
 4   story, I think maybe some of this could have been
 5   avoided.  That wasn't disclosed.
 6           But, in any event, I think it's from that
 7   authority that it rests.  So --
 8           THE COURT:  All right.  Thank you, Mr.
 9   Castle.
10           Mr. Beck, after you heard what Mr. Burke
11   and Ms. Harbour-Valdez and Mr. Castle have said, does
12   it concern you now what Mr. Garcia is planning to
13   plead to?
14           MR. BECK:  Yes, certainly.  I mean, I
15   brought it to the Court's attention because I felt
16   like I had a duty to, and I didn't want to end up
17   here Monday morning doing this.
18           I had -- I've looked at things.  I looked
19   at the testimony from court, and the information that
20   was apparent to me from his testimony and from things
21   that I knew and from the way he said it, I believe
22   triggered my duties.  And that's why I proceeded the
23   way I did.  I also have professional responsibility,
24   duties not to put someone on the stand who I don't
25   think will tell the truth.  And I'm cognizant of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8737

1    those and aware of those.

2           And what I've heard today does cause me

3    great concern.  It may -- I'm not sure that -- I'm

4    not sure that a conversation of this nature didn't

5    take place.  But it certainly seems to me it did not

6    take place with Ms. Harbour-Valdez, Mr. Burke, or Mr.

7    Castle.  That's just the way that -- I think everyone

8    in this room probably agrees with that.  I don't know

9    what else happened there.

10          THE COURT:  Would I be better off from

11   everybody's standpoint, including the Government's,

12   to just say, Send Mr. Garcia home, and we're not

13   going to see him at trial?

14          MR. BECK:  I don't know.  I mean -- I don't

15   know.  He has -- it seems like here he has

16   information.  As I said, it could be that something

17   of this nature took place.  But it seems to me from

18   the proceedings here today that it wasn't with

19   Mr. Burke, Ms. Harbour-Valdez, or Mr. Castle.  That

20   may be.  So my memory of this is pretty certain who

21   it was.  He described him and her.  But I don't know

22   exactly how it happened.  And that's why I'm

23   reluctant, and that's why I'm opposing giving the

24   plea agreement to opposing counsel, because as I said

25   to you before I put it up here, it's a work product.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8738

```
 1    It's a work in progress.  We haven't distributed it
 2    outside of our office.  But I was doing that so you
 3    could see what -- number one, what was in the factual
 4    basis based on the notes and based on the interview;
 5    and number two, so that the Court could see that we
 6    weren't just trying to malign attorneys.  There is a
 7    reason in there that attorneys aren't named.  It just
 8    says two attorneys.  It doesn't even say two defense
 9    attorneys in this case.  It just says two attorneys.
10    We were cognizant of that when we were drafting it,
11    and it was a draft.  And so that's why I'm -- based
12    on what's happened with statements by the Government
13    in this case, and the prior case, and entering those
14    in evidence, this is not a statement of the
15    Government.  This is simply a draft based on what
16    took place and discussions in my office of how to
17    approach this.
18              THE COURT:  On this draft, why don't you
19    run off a copy, and let me -- give it to the Court,
20    so it's kind of frozen in time.
21              MR. BECK:  Sure.
22              THE COURT:  Because if Mr. Garcia
23    testifies, then I think that the defense is entitled
24    to the draft.  Because it probably is --
25              MR. BECK:  Well, I think the Court should
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8739

```
 1   think about that, because it's not -- it's not

 2   Giglio, it's not Brady, it not Jencks.  It's not his

 3   statement.  Right now, this is a draft -- work

 4   product draft of the Government, which we disclosed

 5   limited to the Court, so the Court could see where we

 6   were coming from.  But it is not Giglio, Brady; he

 7   has not signed it.  Mr. Garcia has not read it.  The

 8   statements in there are reflected probably more

 9   directly in the notes.

10           And Brady and Giglio is very clear that

11   it's the substance of the disclosure and not the form

12   that matters.  And so they have Special Agent Acee's

13   notes on what Mr. Garcia -- this is simply the

14   Government's work product that we intend to present

15   to Mr. Garcia, and then allow Mr. Garcia's counsel to

16   make changes with Mr. Garcia.

17           THE COURT:  Why don't you run it off and

18   give it to the Court?

19           MR. BECK:  Sure.

20           THE COURT:  I'll let you argue about it

21   before it's turned over, but at least the current

22   draft of the plea agreement, so it's kind of frozen

23   in time.

24           How do you feel about me meeting with Mr.

25   Castle ex parte to see what he says about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8740

```
 1   meeting?  Do you have any objection to that?

 2             MR. BECK:  We don't object to that, Your

 3   Honor.

 4             I just want to reiterate that I disclosed

 5   this to the Court.  It is work product.  It is

 6   deliberative process privilege.  I disclosed it to

 7   the Court to be frank with the Court.  But I did not

 8   intend to fully disclose this and waive our work

 9   product and deliberative process privilege on this

10   document.  I want to make that clear.

11             THE COURT:  I understand.  I'm not going to

12   look at it.  Just give it to Ms. Bevel, and she can

13   hold it until we --

14             MR. BECK:  And if we're going through that

15   process, I don't have a problem giving the entire

16   plea agreement.

17             THE COURT:  Yeah, why don't you freeze it;

18   run off the plea agreement, give to it her, and

19   she'll hold it.  I'm not going to look at it at the

20   present time.

21             MR. CASTLE:  Your Honor, I know the Court

22   has already ruled on this, but the problem is --

23             THE COURT:  Let me do this:  Mr. Blackburn

24   has been standing up, and probably are going to tell

25   me that Mr. Glazener is here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8741

```
 1                MR. BLACKBURN:  Yes.

 2                THE COURT:  We need to take a break.  Why

 3      don't -- let's take a break and we'll come back in

 4      about 15 minutes.  And I'm going to talk to Ms. Bean,

 5      and see if we can get a transcript, so maybe he can

 6      start looking at that.

 7                MS. HARBOUR-VALDEZ:  Your Honor, before we

 8      do that, could we mark my notes as an exhibit,

 9      please?

10                THE COURT:  Yes.  We'll mark it -- let's

11      just run a new hearing exhibit.  So we'll mark this

12      as Exhibit A.  Mr. Beck, I'll mark yours as

13      Government's Exhibit 1, just so it has an

14      identification here.

15                MR. BECK:  And my understanding is that

16      this will be ex parte, sealed, no in camera review?

17                THE COURT:  Yeah.  I'm not even sure I'm

18      going to file it yet.  But Ms. Bevel will have it.

19      But it will have an exhibit number.  And we'll run a

20      separate set of numbers and exhibits for this

21      hearing.

22                All right.  We'll be in recess for about 15

23      minutes.

24                (The Court stood in recess.)

25                THE COURT:  All right.  We'll go back on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8742

```
 1    the record.  I think we have an attorney for the

 2    defendants in the room, and each of the defendants.

 3              Mr. Glazener is sitting here at Ms.

 4    Bevel's --

 5              MR. BECK:  Your Honor, before we begin, the

 6    United States should have done this beforehand, but

 7    we'll ask that whichever investigator was with

 8    Ms. Harbour-Valdez be excluded from these portions of

 9    the proceedings, and will not talk with

10    Ms. Harbour-Valdez about what happens during this

11    portion.

12              THE COURT:  All right.  Agree --

13              MS. HARBOUR-VALDEZ:  He's not present, Your

14    Honor.

15              THE COURT:  He's not present.  And will you

16    not relay any of the testimony or things -- the

17    evidentiary portions to the investigator?

18              MS. HARBOUR-VALDEZ:  I have not spoken with

19    him.

20              THE COURT:  All right.  So Mr. Glazener is

21    sitting at Ms. Bevel's chair.  And he has the

22    transcript up from this morning.  I started him when

23    I asked what we should go to next.  And Mr. Beck, I

24    think you then said you had something to raise with

25    the Court.  So he's reading it right now.  And if my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8743

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 64

```
 1   eyes are good, he's at about 9:17 on the screen, so
 2   he's read about a half hour of the talk.  So I'm
 3   going to let him go ahead and look at that.
 4              I have also supplied to Mr. Glazener the
 5   document that you raised, Mr. Beck, which is Mr.
 6   Acee's handwritten notes dated April 3 at the top,
 7   and pointed out to Mr. Glazener where on page 2 you
 8   directed the Court's attention to Mr. Garcia coming
 9   to the courthouse, and told him to read from that to
10   the end.  And that has been marked as Government's
11   Exhibit 2.
12              The proposed plea agreement has been marked
13   as Exhibit 1, and it is in Ms. Bevel's possession at
14   the present time.
15              Then I also pointed him to Defendant's
16   Exhibit A, which is Ms. Harbour-Valdez's handwritten
17   notes of her meeting with Mr. Garcia on, I believe,
18   March 15.  And so those have been handed to him as
19   well.  So as he reviews the transcript, he'll have a
20   good sense -- it's a rough transcript -- but he'll
21   have a good sense of what we discussed this morning.
22              All right.  I think when we left off, Mr.
23   Beck, I recall you were speaking.  I think Mr.
24   Blackburn had pointed out that we were getting close
25   to the break.  Did you have anything further you want
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8744

```
 1   to say?

 2           MR. BECK:  I don't think so, Your Honor.

 3   You know, the debrief was short on time.  As I said

 4   earlier, I know my professional responsibility

 5   obligations about putting witnesses on the stand, and

 6   I intend to be faithful to those as we proceed.

 7           THE COURT:  And you have not made a

 8   decision yet as to Mr. Garcia?

 9           MR. BECK:  At this point -- I mean, at this

10   point we intend to call him in this trial.  We intend

11   to call him at trial, if we can do so in compliance

12   with our professional rules of conduct.

13           THE COURT:  All right.  Thank you, Mr.

14   Beck.

15           Well, let me say a few things, and then

16   we'll see how we want to proceed, if anything, after

17   this.  It does seem to me that, given that Mr. Burke

18   and Ms. Harbour-Valdez had an investigator from the

19   defense team present at the conversation with

20   Mr. Garcia that will testify consistent with their

21   version of what occurred, or in most cases what

22   didn't occur, it seems to me that there is no basis

23   for disqualifying Mr. Burke or Ms. Harbour-Valdez.

24   Because, as we have in many situations, we have an

25   independent witness that can testify as to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8745

1  version of events for Mr. Troup.  So I don't see a

2  basis for disqualifying.

3          I am going to take you up, Mr. Castle, on

4  your offer.  And the Government doesn't seem to

5  object.  And if I don't hear any objection from any

6  of the defendants, I will talk to you ex parte.  I

7  will make a record of it, but it will be sealed.  So

8  you can tell me what you want.  But I'm not seeing

9  anything as to you.  You may reveal something to me

10  that implicates you in some way.  I know you are the

11  one that subpoenaed Mr. Garcia, and you're the one

12  that questioned him.  But at least at the moment I

13  don't see any basis.  So unless something I'm missing

14  or not evaluating properly, I don't see a basis to

15  disqualify.

16          If Ms. Harbour-Valdez and Mr. Burke feel

17  like something needs to be done from their

18  standpoint, then I'll have to deal with that at the

19  present time.  I have grown to respect Mr. Burke and

20  Ms. Harbour-Valdez and Mr. Castle during the time

21  that we've worked together.  We've worked together a

22  long time.  And when I saw the story, it seemed

23  incomprehensible to me that that would be something

24  that any one of the three would be involved in.  And

25  so I took it with a heavy grain of salt and caution

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8746

```
 1    when I saw it.  And after now listening to the
 2    representations of these counsel whom the Court has
 3    appointed -- and they came heavily recommended by
 4    lots of people, including Steve McCue, the Federal
 5    Public Defender -- I have grave doubts about Mr.
 6    James Garcia's version of what occurred, and I'm not
 7    inclined to believe it.  So at least from a
 8    misconduct or ethical standpoint, I don't think it
 9    occurred, so I don't see any misconduct.
10            As to -- and these words are primarily for
11    you, Mr. Glazener -- as you know, there was another
12    counsel here, Ms. Cody Rogers, that was here on March
13    15.  And after that occurred, I think there was a
14    sense that we needed to bring in more seasoned
15    counsel.  You and I have not worked together.  I
16    think this is the first time you and I have met.  But
17    I do know that Ms. Wild passed on to me, before I
18    appointed you, high recommendations from some people
19    that I respect in the bar.  I can't remember the
20    two -- I do remember one, one was from Ahmad Assed,
21    and I do have great respect for him, and I think he's
22    seasoned counsel.  You're younger, he made that
23    clear, but he also had high respect for you, and so
24    that gives me some confidence that Mr. James Garcia
25    is being represented by somebody with criminal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    experience.  And if this is an area where you haven't

2    been before -- and I'm not sure everybody in the

3    room, everybody has been here before -- you'll know

4    who to talk to and seek out their wisdom and counsel.

5              MR. GLAZENER:  Yes, sir.

6              THE COURT:  I don't want to interrupt your

7    reading, but I will say this, that I have strong

8    reservations and concerns about Mr. Garcia signing

9    the plea agreement that Mr. Beck put on the screen

10   with the factual section.  I'm very concerned -- we

11   terminated the hearing on March 15 -- maybe it should

12   have been terminated earlier -- because I thought he

13   was getting himself into problems and trouble in

14   front of the Court.  And I have the same feeling

15   about this plea agreement; that if he enters into it,

16   he's digging himself in a further hole.

17             And then he's also now talked to Mr. Acee,

18   and said things to an FBI agent, which can be a crime

19   as well.

20             So I'm not here to give you legal advice.

21   You're representing Mr. Garcia, but I can tell you

22   that, after looking at this thing this morning for an

23   hour and a half, I have very grave concerns about him

24   signing that plea agreement with that factual

25   section, and him saying that under oath, or saying it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8748

```
 1    to a magistrate judge.  I'm going to try to -- do you
 2    know which magistrate judge was taking his plea
 3    tomorrow?
 4              MR. GLAZENER:  I thought it was Judge
 5    Molzen.
 6              THE COURT:  Judge Molzen?
 7              MR. BECK:  I believe it was Judge Garza.
 8              THE COURT:  Judge Garza.  Oh, here in Las
 9    Cruces.
10              MR. BECK:  Yes.
11              THE COURT:  Okay.  I'm going to try to
12    provide her with copies of these exhibits and with a
13    transcript as best we can of today's proceedings that
14    cover Mr. Garcia, just so that if you and Mr. Garcia
15    persist in wanting to plead guilty -- and that's your
16    business and y'all's decision -- I sure want her to
17    understand that I have a real concern about the
18    truthfulness of those statements he's going to be
19    making tomorrow, so that she -- I know Judge Garza
20    always does a good job with her plea colloquies.  But
21    that her antennas be up very high tomorrow to be sure
22    this is something Mr. Garcia really wants to do, and
23    do it under oath.
24              MR. GLAZENER:  I'll relay your concerns to
25    him.  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8749

```
 1              THE COURT:  Okay.  You just continue to
 2    read and let me find out if there is anything else we
 3    need to deal with on this issue, or are you ready to
 4    move on to other issues, Mr. Castle?
 5              MR. CASTLE:  Your Honor, I just want to
 6    make one last record on the draft plea agreement.
 7    The argument that it shouldn't be disclosed is that
 8    it's work product.  But it was used here in open
 9    court, so it lost any protections under the Work
10    Product Doctrine.  We have a right to investigate it.
11              We just heard a new minutes ago the
12    Government is still intending to call Mr. Garcia as a
13    witness, so we would be entitled at trial to expose
14    the changing stories of Mr. Garcia, whether they be
15    from the original draft plea agreement that the
16    Government was willing to sign with him or the
17    changed one that might come tomorrow.
18              And so we would ask for -- I don't
19    understand what the harm would be in producing that.
20    If the suggested harm might be that they don't want
21    the defendants to read the entire content of
22    Mr. Garcia's statement, we're happy to wait, do this
23    under a protective order, although it was on the
24    screen.  And so I would ask that we get a copy of
25    that.  I wasn't able -- as the Court can imagine,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8750

```
 1    when your ethics are being called into question,
 2    you're scrambling quite quickly to look between
 3    handwritten notes and something on a screen, and
 4    everything else, that the other side is probably well
 5    prepared to do and we weren't, there is a need to
 6    really examine that document and see what it is.  Not
 7    to mention the fact that when today they mention
 8    things like -- I think it was attorney regulation or
 9    professional responsibility counsel, things of that
10    nature, it was going to be a filed document in a
11    federal court matter alleging, in part, unethical
12    conduct of two or three lawyers here today.  I think
13    as a matter of fairness we should have a copy of that
14    so that we can analyze that, and perhaps provide it
15    to counsel of our choice as well.
16              THE COURT:  Do you want speak to that, Mr.
17    Beck?
18              MR. BECK:  I do, Your Honor.  I agree with
19    Mr. Castle that he and the other defendants have the
20    right and the ability to provide it to them under the
21    rules and Constitution to investigate Mr. Garcia's
22    statements.  And they have those, at least Special
23    Agent Acee's interpretation of those in his notes.
24    They will have those, Special Agent Acee's
25    interpretation in the 302.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8751

```
 1            The plea agreement is work product,
 2   deliberative process.  It's the Government's
 3   statement.  Mr. Garcia hasn't seen that.  That is
 4   internal to our office.  That's not his statements.
 5   I'm sure -- the Court is familiar with negotiations,
 6   what happens in negotiations is someone makes an
 7   offer, someone makes a counteroffer.
 8            So I can see in some cases -- and I think
 9   the first trial they made this argument that Mr.
10   Christopher Garcia is now, revisions or proposed
11   revisions to his plea agreement may be Giglio or
12   Brady for Mr. Garcia, if he testified -- Mr.
13   Christopher Garcia, if he testified -- because those
14   are his statements or at least his attorney's
15   representations of his statements.
16            This is only a statement of the Government,
17   and it's not even a statement.  As I said to the
18   Court -- the Court asked me to disclose it.  I did
19   disclose it for the limited purpose of the Court.
20   Federal Rule of Evidence 502 talks about inadvertent
21   disclosures.  This wasn't an inadvertent disclosure
22   It was an intentional disclosure based on the Court's
23   question.  But you can disclose something in a
24   limited fashion for a limited purpose, and not waive
25   the privilege elsewhere.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8752

```
 1            And so that's my -- that's my position, is
 2    that it has no worth.  I mean, it's just -- all it is
 3    is the Government's proposal within our office of
 4    what we believe Mr. Garcia may testify to.
 5            THE COURT:  Try this on, and see if this
 6    would work:  I won't order immediate disclosure of
 7    anything at the present time.  I'll give you -- and
 8    these dates are somewhat negotiable, or flexible, or
 9    I'll stab one -- by the end of the day, let the Court
10    know whether you're going to call Mr. James Garcia as
11    a witness in the case.  If you're not going to call
12    him, I think probably there is no reason to have any
13    sort of disclosure, and the issue will just be at an
14    end.  If the Government persists in its need to call
15    him, then I will order the immediate disclosure of
16    the factual portions that were on the screen; just
17    that portion, not the entire plea agreement, and that
18    should be disclosed.
19            If at the point you then hand Mr. Glazener
20    the draft plea agreement that you want him to sign,
21    that one should also then be produced to the
22    defendants.  And I'm a little more flexible on the
23    timing of it.  But that could be given to the
24    defendants when and if he executes the plea
25    agreement.  How does that work?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8753

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page 74754

```
 1              MR. BECK:  The latter portions are fine.
 2    The beginning portion I don't think is workable,
 3    because I think, given that we're going to be in
 4    court all afternoon today, I don't think that the
 5    Government will intentionally --
 6              THE COURT:  Will the end of business
 7    tomorrow work?
 8              MR. BECK:  I think that's fine.
 9              THE COURT:  All right.  Can you live with
10    that, Mr. Castle?
11              MR. CASTLE:  Yes, Your Honor.
12              (Mr. Lahann entered the courtroom.)
13              MR. BECK:  And I don't want the Court to
14    think that the United States is agreeing to this.
15    I'm still objection to the privilege.
16              THE COURT:  I understand.
17              MR. BECK:  And I'm going to object to any
18    attempt to introduce or use it at trial.
19              THE COURT:  I understand.  All objections
20    will be preserved.  I do think that it does contain
21    Giglio material if he's on the stand.  It's probably
22    rich with material to cross-examine him.  And at
23    least it's a version, much like Mr. Acee, it's a
24    version of what the Government understands Mr. Garcia
25    to be saying.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8754

```
 1            Mr. Glazener?
 2            MR. GLAZENER:  Yes, Your Honor.  I had a
 3    third question, or a third hypothetical, which is:
 4    Let's say I review the Government's draft of the
 5    agreement with him, and let's say he makes certain
 6    changes to that, which I would anticipate based on
 7    the draft being an understanding of what the
 8    Government may have interpreted his statements to be,
 9    versus what his actual factual predicate would be for
10    a plea.  What happens in that scenario, where if he
11    makes changes, or -- you know, that's a possibility.
12            THE COURT:  It is a possibility.  And I
13    think probably it's going to end up in these
14    defendants' hands.
15            MR. GLAZENER:  Okay.
16            THE COURT:  It will be used probably in
17    cross-examination.  But it seems to me you've got to
18    do your job.  You can't worry about that.  You can't
19    have him sign something that is not accurate.
20            MR. GLAZENER:  And I guess where I was
21    going with it is, kind of based on what you had just
22    indicated, as far as these portions would be turned
23    over, as far as the facts go, that would be something
24    different than ultimately what the facts are, if he
25    makes changes to it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8755

```
1              THE COURT:  That's correct.
2              MR. GLAZENER:  So they will get both, so I
3     can explain that to him.
4              THE COURT:  Yes.
5              MR. GLAZENER:  Thank you.
6              MR. BECK:  And, Your Honor, I want to point
7     out, based on Mr. Glazener's comments there, why this
8     draft plea agreement is not a statement, and it's not
9     Brady, it's not Giglio, it's none of the above.  And
10    the problem with it, is that if the Court is inclined
11    to think it's Brady and Giglio, it could be
12    impeachment material, then it puts whomever drafted
13    that -- me -- as a witness to why that was drafted.
14    Because Special Agent Acee didn't draft that.
15    Special Agent Acee drafted his notes and drafted the
16    302, and he can talk about why he drafted that
17    language.
18             But for that draft plea agreement to come
19    in and talk about why it was my understanding that I
20    put these things in there based on his conversation,
21    puts me as a witness.  Because there -- because
22    whoever drafted that, that's their statements, that's
23    not Mr. Garcia's statements.  Just like a 302 or
24    notes are Jencks material for the FBI agent, not for
25    the witness.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8757

```
 1              THE COURT:  Well, I don't think anybody is
 2    going to dispute that you drafted the factual
 3    section.  And I think Mr. Acee can on the stand
 4    confirm he didn't write those; you put those in based
 5    upon the notes you had with him.  Were you at the
 6    meeting with Mr. Garcia?
 7              MR. BECK:  Yes.
 8              THE COURT:  So you were there, and you
 9    drafted those up.  But I don't think it puts you in a
10    serious witness position, because you have Mr. Acee
11    to say, yeah, Mr. Beck as the attorney drafted up the
12    plea agreement, and here was the one that he offered
13    Mr. Glazener and Mr. Garcia.  I think we're okay on
14    that.  I think we can probably walk through that
15    problem.
16              All right.  Anything else before we go to
17    the next motion?  I think the next motion I have up
18    is Mr. Billy Garcia and Mr. Troup's motion to obtain
19    physical and mental health records.  Y'all may have
20    made some progress on that.  There may be something
21    else you want to go to.  Mr. Castle.
22              MR. CASTLE:  I'm sorry, Judge, I was --
23              THE COURT:  This is Document 1985.  This is
24    the one that was filed on March 27.  I think it's
25    yours and Mr. Troup's motion for physical and mental
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8757

1   health records.  Mr. Burke.

2            MR. BURKE:  Your Honor, we explained our

3   position in the motion itself, and have very little

4   to add except this comment.  Your Honor has signed

5   orders allowing us to get various records.  For

6   example, we recently received some mental health and

7   physical health records relating to Lawrence Torres

8   and Mr. Lujan and Mr. Lucero.  And they do, in fact,

9   as we predicted, have Giglio and Brady material in

10  them.  I'm not making any accusations.  It just so

11  happens that there is impeachment material in there,

12  which is why we would ask for a similar order with

13  respect to these other witnesses.

14           THE COURT:  Do you have any objection to

15  this, Ms. Armijo?

16           MS. ARMIJO:  Well, I do because, one,

17  several of these people have attorneys to them; and

18  two, as to the people that we agreed to give them to,

19  Leonard Lujan and Eugene Martinez, those persons --

20  specifically I believe there has been information

21  about their mental health or claims they have made

22  about their mental health.  I don't believe that

23  there has been any such making -- if they can make

24  specific allegations as to certain people, then maybe

25  so.  This is just a fishing expedition.  It's very

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8758

```
 1    personal; it's protected by HIPAA.  I think that with
 2    other persons -- or if they could make a specific
 3    showing, maybe so.  But just for a blanket request on
 4    numerous people that they have, without any showing
 5    of why they believe there is anything in the
 6    records -- and like I said, several of these people
 7    have attorneys, and I think that may be one starting
 8    place.  They have a right to weigh in as well.
 9              THE COURT:  Well, has the Government
10    attorney looked at each one of these files at the
11    Corrections Department, the physical/mental health
12    records, and reviewed those for Brady, Giglio, Rule
13    16 information?
14              MS. ARMIJO:  We have not because they are
15    covered by HIPPA, without an order of the Court, not
16    even Corrections.  So the mental health records are
17    part of -- and the medical records, mental -- mental
18    and medical records are held by a different entity,
19    is my understanding, than Corrections.  And they're
20    protected by HIPAA.  And so that's why we've gone
21    through all the trouble of the Court orders before --
22    and having the personal information reviewed by their
23    defense attorneys before it's disclosed.  It's not
24    something that we can just go, Hey, Corrections, give
25    us all the mental health records of these people.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    no, we have not, Your Honor.
 2              THE COURT:  What if I did this:  What if I
 3    entered an order -- I'm not sure it's the one the
 4    defendants proposed; maybe it can be marked up --
 5    what if I went ahead and ordered it, because if it
 6    does contain Rule 16 or Giglio or Brady, I think you
 7    probably are going to have to get it in a position
 8    where somebody can review it.  What if I ordered
 9    their production to the Government?  You don't have
10    to look at them, and you can represent that you won't
11    look at them, and then put the burden on somebody
12    to -- these people that have attorneys -- to tell the
13    attorneys, if they want to come and look at the file,
14    do it in a certain period of time, look at it and see
15    if they have any objection to it being produced to
16    the defendants and to the Government.  And then, if
17    there is no redactions or anything on behalf of that,
18    then the Government could go ahead and do its review,
19    or make a decision just to let it go, and turn it
20    over to the defendants and let them review it.  Would
21    such an order be acceptable to the Government?
22              MS. ARMIJO:  Well, I think that's the more
23    cautious way to go.  I still believe that it's --
24    Your Honor, we don't believe that there is a basis to
25    believe that anything exists.  So we're still opposed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8760

 1   to it, because there is no basis to believe.  Again,
 2   we had specific reason as to other people, but not as
 3   to these people, and not just a blanket reason.  So I
 4   don't think, without a basis to believe that
 5   Brady-Giglio exists in these documents, without
 6   specific information, I don't think that the United
 7   States is under obligation to go look at them.
 8          And I can say that number 12 and 13, they
 9   do not have counsel.  And if we're talking about
10   Government friendly people, the Rascons are not
11   Government friendly.
12          THE COURT:  Well, let's do this:  Let's get
13   this process started.  I am concerned about there
14   being a fairly big stack of documents somewhere that
15   nobody has reviewed for Rule 16, Giglio.  And I'll
16   accept Mr. Burke's representation that when they have
17   gotten records, they have found things that are going
18   to be useful to their defense.  That doesn't surprise
19   me, having looked at many physical and mental health
20   records over the years, or witnesses.
21          So let me see if I can take the order here
22   that's marked up, that was attached to the
23   defendants' -- Mr. Burke, what would you think about
24   putting the burden on the defendants to contact the
25   attorneys and see if they -- I'll get the process

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8761

 1   rolling by getting them in the possession of

 2   Government.  It would seem to me that if the

 3   attorneys don't care, then probably the Government

 4   will just produce them to you, rather than them go

 5   through them.  Would that -- can I put the burden on

 6   you to contact the attorneys?

 7          MR. BURKE:  Yes, Your Honor.  And I will

 8   just tell you the instructions or the requests I made

 9   to my legal assistant of 17 years:  I said scour

10   Pacer, scour the records.  If any of these people

11   have an attorney that you can find anywhere, make

12   sure they get a copy of this restricted motion.  I

13   know one attorney did, Javier Alonso's lawyer, Nathan

14   Chambers, because I got an earful from him about it.

15          And we will accept the burden -- and I

16   think Ms. Armijo is correct, we couldn't find anybody

17   for the Rascons.  And we mailed this motion -- I

18   believe we mailed a copy of this motion to their last

19   known addresses.  But I wouldn't swear to it because

20   I wasn't in charge of the mailing.

21          MS. ARMIJO:  Your Honor, I have great

22   concerns, then, for the Rascons, because they do have

23   a right under HIPAA, certainly, and I don't think

24   that Corrections would even feel comfortable without

25   knowing that somebody is advocating for them as far

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8762

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 83

1    as privacy or any other rights.  And so I guess I

2    would challenge defense counsel on at least those

3    two, to show what information they have that they

4    believe there is anything in the Rascons' records.

5    For that matter, I would say as to all of them.  As

6    you may recall, we went through this with Eric Duran.

7    And Eric Duran has an extensive amount of records.

8    But I don't think any of it was ever used against

9    him.

10            THE COURT:  Well, why don't we do this:

11   Let's get -- I'll order the production of the Rascons

12   to you.  And then I think I can draft something here

13   that will protect them.  Why don't you -- are the

14   Rascons the only ones that are not represented by

15   counsel, Mr. Burke?

16            MR. BURKE:  That's what I remember having

17   reported back to me.

18            THE COURT:  And you think you have an

19   address that they could be served?

20            MR. BURKE:  We had the Rascons --

21            THE COURT:  Your paralegal is saying yes.

22   Why don't you do this:  Why don't you draft up a

23   order to show cause to the Rascon brothers,

24   indicating that they need to show cause within --

25   pick a period of time.  We're working with a 10 and a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8763

```
 1    five here -- to show cause why the Court should not

 2    order the United States to go ahead.

 3              MR. BURKE:  A week.

 4              THE COURT:  Why don't y'all draft up an

 5    order, show it to Ms. Armijo, and then the other

 6    defense counsel, and I'll enter it and we'll get them

 7    involved in this.

 8              MR. BURKE:  Thank you, Your Honor.

 9              MR. CASTELLANO:  Your Honor, just related

10    to the stipulated protective order, which is document

11    1985-2, just looking at it quickly, I noticed that it

12    still refers only to Eugene Martinez' attorney.  So

13    that will need to be changed appropriately.  It's on

14    page 2 of that order.  I think this was probably used

15    for Eugene Martinez, but it needs to be adapted to

16    the additional people.

17              THE COURT:  Which order are you looking at,

18    Mr. Castellano?

19              MR. CASTELLANO:  It's document 1985-2.  It

20    was attached, I believe, to the motion.  So any

21    subsequent version just needs to accurately reflect

22    who it will go to or who will review the documents.

23    And then on page 4 of that document it still lists

24    John Anderson as counsel for Frederico Munoz.  I

25    believe that's now Louis Lopez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8764

1        THE COURT:  All right.  Give me the first

2    change that you had.

3        MR. CASTELLANO:  On page 2 of the proposed

4    order, paragraph 2 B lists Eugene Martinez' attorney

5    only.

6        THE COURT:  Okay.

7        MR. CASTELLANO:  So that has to be

8    adjusted.  And then the last page, I think the only

9    change is John Anderson, I believe is now Louis

10   Lopez.

11       MR. BURKE:  May I make one additional

12   correction?  I think that Sammy Griego, number 5,

13   also does not have an attorney, and I believe that he

14   should go into the Rascon group.  And I believe that

15   was mailed to him.  I believe his last known address

16   is some prison facility.

17       MS. ARMIJO:  We will accept service for

18   Sammy Griego.

19       MR. BURKE:  Okay.

20       MS. ARMIJO:  And provide it to him.  So

21   whatever you have, provide it to us.

22       MR. BURKE:  Fair enough.

23       MS. ARMIJO:  Your Honor, Sammy Griego does

24   not have an attorney either.

25       THE COURT:  Mr. Castellano, who did you say

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8765

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page 86766

```
 1    was representing him now?

 2               MR. CASTELLANO:  I believe it's Louis

 3    Lopez.  He's out of El Paso, L-O-U-I-S is the

 4    spelling of it.

 5               THE COURT:  And was there other changes to

 6    this you needed?

 7               MR. CASTELLANO:  Those are the only two I

 8    saw right offhand, Your Honor.

 9               THE COURT:  What was the other one?

10               MR. CASTELLANO:  Oh, the first was a

11    reference only to Eugene Martinez' attorney on page

12    2.  And the other one would be counsel.

13               THE COURT:  All right.  I'm going to step

14    down to the podium, so give me just a second to get

15    around here.  So on the order itself, this is the way

16    I structured it.  See if this works.  So I'll grant

17    it in part, then I put:  "The defendant shall contact

18    the attorneys for the witnesses and see if there is

19    any objection to the production to the witnesses."

20    And then here, "if the witnesses or their attorney

21    consent to their disclosure," so you don't have any

22    obligation to disclose until there is a consent by

23    the witness.  That will take care of the Rascons and

24    Sammy Griego, or their attorneys.  Does that work?

25               MR. BURKE:  That's fine.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8766

```
 1              MS. ARMIJO:  Yes.

 2              MR. BURKE:  Thank you, Your Honor.

 3              THE COURT:  On this one right here, Mr.

 4    Castellano -- he may have stepped out -- that was the

 5    change.  So it would be, "As defined above, the

 6    witnesses' attorneys, the witnesses, and the United

 7    States Attorneys," and I made the one change, and

 8    sign it here.  Then the one change to Louis Lopez.

 9    Does that look all right?

10              MS. ARMIJO:  Yes, that's correct.

11              THE COURT:  Is everybody else on board with

12    this?

13              MR. CASTLE:  Yes, Your Honor.

14              THE COURT:  So Ms. Bevel, if you'll get

15    those filed, get those entered.

16              All right.  Anything else on that motion,

17    Mr. Burke?  Mr. Castle?

18              MR. BURKE:  No, Your Honor.

19              MR. CASTLE:  No, Your Honor.

20              THE COURT:  Any other defendants?  The

21    Government?

22              MS. ARMIJO:  No, Your Honor.

23              Your Honor, as far as the next issue -- and

24    I don't know, but I know that Special Agent Acee was

25    ready to go this morning.  And he had a conflict
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8767

```
 1    at -- and I don't know what he's doing right now, but
 2    I know that the conflict was going to be at 1:00.  So
 3    if they anticipate his testimony, they should go
 4    ahead and do that.
 5              THE COURT:  Is that agreeable with
 6    everybody?
 7              MR. CASTLE:  Yes, Your Honor.
 8              THE COURT:  So do we need to call him?  He
 9    probably needs to call in the "Meet Me Conference
10    Line," and I don't know the number here.  Am I
11    reading it right above you?
12              THE CLERK:  No, Your Honor.  I have it
13    right there.
14              (A discussion was held off the record.)
15              MR. BECK:  He should be calling now.
16              THE COURT:  Mr. Acee.
17              THE WITNESS:  Yes, sir.
18              THE COURT:  This is Judge Browning.  I'll
19    remind you that you are still under oath.  I think
20    that you were being questioned by Mr. Burke, was it,
21    when we had to break at about -- it was Mr. Beck that
22    was questioning you about 5:10 on March 15, I think
23    somewhere around there.  And we had to break to have
24    a CJA meeting.  So Mr. Beck, if you wish to continue
25    your -- I think it's your cross-examination.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MR. BECK:  It is.  I'll pass the witness,
 2    Your Honor.
 3              THE COURT:  All right.  Mr. Burke, if you
 4    wish to redirect Mr. Acee.
 5              MR. BURKE:  Thank you, Your Honor.
 6              THE COURT:  Mr. Burke.
 7                    REDIRECT EXAMINATION
 8    BY MR. BURKE:
 9         Q.   Special Agent Acee, are you there?
10              THE COURT:  Mr. Acee, are you hearing us?
11              THE WITNESS:  Yes, sir, I am.
12              THE COURT:  Did you hear Mr. Burke?  Are
13    you hearing him?
14              THE WITNESS:  I can't hear him.
15    BY MR. BURKE:
16         Q.   Special Agent Acee, I wanted to follow up
17    on a couple of questions that Mr. Beck asked, and I
18    will launch right into that.  Okay?
19         A.   Yes, sir.
20         Q.   You will recall that in the FBI file number
21    that ends 62017, that was the one that sort of ended
22    with the Burkhead letter.  Do you recall that?
23         A.   Yes, sir.
24         Q.   And there was an Exhibit P, going back to a
25    meeting that former FBI Agent Sonya Chavez and others
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   had with Mr. Burkhead in 2013.  You may remember the

 2   phrase the meeting was to "discuss the United States

 3   Attorney's Office efforts, or lack thereof," do you

 4   recall that Exhibit P?

 5        A.   Yes, sir.

 6        Q.   And then Exhibit R was the letter of

 7   declination, and we discussed that at some length?

 8        A.   Yes.

 9        Q.   Exhibit U was the PowerPoint slide wherein

10   Agent Rhoades -- very detailed PowerPoint --

11   indicated that the file was being turned over to

12   former FBI Special Agent Sonya Chavez.  Do you recall

13   that as well, the slide from the PowerPoint at the

14   end, where the file got turned over?

15        A.   Yes, sir.

16        Q.   And we discussed your Exhibit V, which was

17   your report on your review of the various FBI files,

18   and that was generated by the some of the back and

19   forth during the discovery arguments and discussions

20   that we were having earlier in the case.  You recall

21   that as well?

22        A.   I do.

23        Q.   I'm now going to ask you a question about

24   your Grand Jury testimony on December 1, 2015.  Are

25   you with me?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8770

```
 1        A.   Yes, sir.
 2             MR. BECK:  And, Your Honor, I'm going to
 3   object as to outside the scope of cross.
 4             THE COURT:  How does it connect with cross?
 5   Mr. Burke, you'll have to help me a little bit on
 6   that.
 7             MR. BURKE:  Your Honor, it does tie
 8   directly into the Troup motion to dismiss, which is
 9   1284.  One of the points that I had alleged, and
10   Ms. Harbour-Valdez, is what evidence was there really
11   that was new going into the probable cause for the
12   indictment that was presented to the Grand Jury.  So
13   this is actually something that was specifically
14   mentioned in 1283.
15             THE COURT:  Well, I'm going to give Mr.
16   Burke some leeway here.  I'm trying to remember the
17   testimony and where we were, but I'll give you some
18   leeway.  Overruled.
19        Q.   Special Agent Acee, I'm looking at page
20   113, and I know for a fact, having observed you on
21   the witness stand, that you have a good memory.  And
22   that is where this question at line 5, Ms. Armijo
23   asked you:  "And is Billy Garcia -- at the time was
24   he -- did he call the shots, and was he the highest
25   one in a position to call that?"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8771

```
 1            Answer by you, line 9:  "Yes."
 2            And then moving down to line 12:  "And what
 3   else did some of your cooperators say?
 4            Answer, line 14:  "The informant known as
 5   Jovan, I called him "Baby Rob" throughout this, also
 6   served time with Billy Garcia.  And they were
 7   actually pretty good friends.  And Billy related the
 8   details of the murder, why they were going to get him
 9   and how they did it."
10            Next question, line 20:  "And do you have
11   another cooperator that talked about Troup?"
12            Answer:  "Yes."
13            Question by Ms. Armijo:  "What did that
14   cooperator say?"
15            Answer:  "That cooperator served time with
16   Edward Troup.  And Troup related his participation in
17   the murder, why they did it, and how it went down."
18            Do you recall that testimony?
19       A.   Yes, sir, I think I do.
20       Q.   And who was that informant?
21       A.   The second informant?
22            MR. BECK:  Objection, Your Honor.
23            THE COURT:  Hold on, Mr. Burke.  Mr. Beck?
24            MR. BECK:  Foundation:  Does he know who
25   that informant was who he was presenting the Grand
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8772

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 93

```
 1    Jury transcript about?

 2    BY MR. BURKE:

 3        Q.   Special Agent Acee, would I be correct in

 4    assuming you know who that informant was?

 5        A.   I think I can give the answer.  I'm only

 6    hesitating because, as you know, there is so many

 7    informants.  I did want to have a little bit of time

 8    to make sure I'm giving you an accurate answer as to

 9    which one.

10        Q.   This really is -- I'm really not trying to

11    trick you in any way.  If you, later on, determine

12    that the answer you give was inaccurate, then by all

13    means, we'll amend the record.  I'm just wondering if

14    you know who it was where you described that person

15    as "That cooperator served time with Edward Troup,

16    and Troup related his participation in the murder,

17    why they did it, and how it went down"?

18        A.   Yes, sir.  I understand the question.  Will

19    you give me just a moment, please?

20        Q.   Sure.

21        A.   I'm just looking over some of my notes.

22    What helped me is I know they started cooperating at

23    different times.  I think at that time who I may have

24    been referring to was Flaco, Fred Quintana.

25             THE COURT:  Can you repeat that, Mr. Acee,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8773

1    repeat that name?

2         A.   Yes, sir.  Fred -- I think who I may have

3    been referring to at that time was Fred Quintana,

4    a/k/a Flaco.

5         Q.   I know who you're talking about.  You're

6    talking about Fred Flaco Quintana.  His other

7    nickname sometimes is Football Head?

8         A.   Yes, sir.

9         Q.   And you didn't interview him in person in

10   2015, according to the 302.  Have I read your 302

11   correctly?

12        A.   Did I indicate it was over the telephone?

13        Q.   It says "telephonic."

14        A.   Yes, sir.  I arrested Mr. Quintana.  I

15   don't remember the exact date, but he may have been

16   in custody at that time.  I'm not quite sure.  But I

17   do remember doing an interview over the telephone,

18   though.

19        Q.   Yeah.  And in that interview -- this is

20   where it will get difficult, but it's a very short

21   302 -- and you simply say, "Troup admitted and Chavez

22   admitted."  Does that ring a bell?

23        A.   Yes, sir.

24        Q.   And you provided recently some handwritten

25   notes, and your handwritten notes are consistent with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8774

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8775

1    that, "Troup admitted and Chavez admitted"; correct?

2         A.   Yes, sir.

3         Q.   And that's the extent of the interview.

4    Where were you when you called him?

5         A.   Home.

6         Q.   And where was he when you reached him?

7         A.   I think he was at a facility.  Otherwise, I

8    would have talked to him in person.  I'm thinking he

9    was at a facility.

10            And Mr. Burke, as I'm looking over my

11   notes, I do have two other subjects that, if you'd

12   like me to mention their names as well, provided

13   information.

14        Q.   No.  Actually I'm really -- and I'll be

15   specific, so as to telegraph what my argument is

16   here.  I'm looking for the time period between the

17   Burkhead declination and your testimony on December

18   1, 2015.  That would be the new investigation.  And I

19   believe the extent of it is Fred Football Head

20   Quintana.

21        A.   Well, there may be two others I was going

22   to mention.  I don't have to, if you don't want me

23   to.

24        Q.   Once again, if it turns out later that

25   there is an additional interview between the Burkhead

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8775

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 96

1    declination and your testimony on December 1, 2015,

2    by all means, we can amend and supplement the record.

3    But I think you will find that the only interview

4    relating to Castillo and Edward Troup was Fred

5    Quintana.

6         A.   I'm sure you have researched that well,

7    sir.  If there is not a question pending, I'll be

8    quiet.

9         Q.   Correct.  You're a seasoned witness.  And

10   that is the only one that you can think of as we're

11   having this telephonic examination today; is that

12   correct?

13        A.   No, sir, I think there may be two others

14   given the timeline you're talking about.

15        Q.   Okay.  Well, as I said, this isn't an

16   attempt to be tricky.  So if you can come up with

17   some later, you can even call one of the prosecutors

18   and they can make a proffer.  Fair enough?

19        A.   Yes, sir.  Did you not want me to give you

20   the names now?

21        Q.   Oh, if you have them now, sure.

22        A.   Okay.  Sammy Griego, known as Sammy G.  I

23   know that I met him early on in the investigation,

24   provided to information on Mr. Troup.

25        Q.   Yes.  And if you look at the Sammy Griego

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8776

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 97

```
 1    302s, you'll see that he only discussed the Fred Dawg
 2    Sanchez homicide.  He did not discuss the Castillo
 3    homicide.  Do you want to look at that now?
 4         A.   I'll trust your representation.
 5         Q.   Okay.  Yeah, I'm focused on Castillo and
 6    Edward Troup here; that's the focus of my motion to
 7    dismiss.
 8         A.   Okay.  Then the other name probably won't
 9    have anything to do with it.
10         Q.   We lost you there for a second, Special
11    Agent Acee.
12         A.   Given what you just said, Mr. Burke, the
13    second informant name would not have anything to do
14    with it.
15         Q.   Okay.  And when you had your telephonic
16    with Fred Quintana, he gave you no details regarding
17    the alleged admission by Mr. Troup, did he?
18         A.   I believe you're correct.
19         Q.   Because you would have put that in your
20    302, or you would have written it down in your
21    handwritten notes; correct?
22         A.   Yes, sir.
23              MR. BURKE:  All right.  That's all I have,
24    Your Honor.
25              THE COURT:  All right.  Thank you, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8777

```
 1  Burke.
 2          Mr. Castle, do you have any redirect of Mr.
 3  Acee?
 4          MR. CASTLE:  Yes, I do, Your Honor.  Thank
 5  you.
 6          Mr. Acee, can you hear me?
 7          THE WITNESS:  Yes.
 8                    REDIRECT EXAMINATION
 9  BY MR. CASTLE:
10      Q.  This is Jim Castle, Mr. Billy Garcia's
11  attorney.
12      A.  Good afternoon.
13      Q.  When we last spoke at the motions hearing,
14  do you recall that you attempted to identify the
15  names or identities of certain informants that the
16  Department of Corrections could no longer identify?
17  Do you recall that process?
18      A.  Yes, sir.
19      Q.  And I believe when you did that, you
20  indicated that this was your attempt to identify; is
21  that correct?
22      A.  Yes, sir.  It was in response to your Touhy
23  letter.
24      Q.  Did you say that was in response to our
25  Touhy letter?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8778

1       A.   Yes.

2       Q.   I want to ask you just a couple of

3   questions about those particular informants you

4   identified.  Do you have discovery in front of you?

5       A.   I do, sir.  I have my notes.  And then I

6   can look up Bates numbers on -- the computer is a

7   little slow.

8       Q.   I'm going to reference Exhibit M, which for

9   your purposes is page 133 of the DeLeon discovery.

10      A.   I have that in front of me.

11      Q.   Okay.  I have that pulled up on the screen

12  here for the people in the courtroom.  And I'm going

13  to go to page 3 of that exhibit, if we could.  So I

14  want you to go to page 133.

15      A.   I'm there.

16      Q.   Now, in the third paragraph -- I think we

17  talked last time about this -- this informant in the

18  third paragraph -- and I believe you indicated that

19  was Jimmie Gordon.  Do you recall testifying to that?

20      A.   Yes, sir.

21      Q.   There is a New Mexico correctional staff

22  officer by the name of Will Jaramillo that's

23  mentioned there.  Do you see that?

24      A.   Yes.

25      Q.   And where was Mr. Jaramillo assigned in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8779

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 100780

1    2001?

2         A.   Off the top of my head, I'm not sure.

3         Q.   Well, let's perhaps look at the previous

4    program.  Do you see that in this report there was a

5    briefing done at Southern New Mexico Correctional

6    Facility, where the investigation was discussed, and

7    statements were obtained, and things of that nature?

8         A.   Yes, sir.

9         Q.   So does that help you that the correctional

10   staff, Will Jaramillo and Daniel Lucero, that

11   interviewed this informant were, in fact, officers at

12   the Southern New Mexico Correctional Facility?

13        A.   That's correct.

14        Q.   Now, Mr. Gordon, on March 29, 2001, he

15   wasn't in the Southern New Mexico Correctional

16   Facility, was he?

17        A.   I'm not sure.

18        Q.   Do you recall that he had been moved out of

19   that facility due to some threats against his life --

20   do you recall that -- prior to the day of the

21   homicide?

22        A.   I don't, sir.  I think I'm limited to -- I

23   was trying to compare reports with sources.  I didn't

24   do a ton of research on it.

25        Q.   So why do you believe this informant then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8780

```
 1  was Jimmie Gordon?

 2       A.   Well, I made some notes here, which I'm

 3  looking over now.  I think that he is Source 13 on

 4  Bates 19128.

 5       Q.   Okay.

 6       A.   And when I'm comparing the name of the

 7  people he's talking about, he is the only source that

 8  mentions Jesse Ibarra, so that was the first thing

 9  that caught my eye.  A couple of guys talk about

10  Leroy Lucero, but he was the only one I would find

11  that talked about both Lucero and Ibarra.

12       Q.   So you're making an assumption that only

13  one person was capable of talking about those two

14  people?

15       A.   No, sir, I'm just -- in my review of all

16  the materials that are in those murder books, the

17  Bates numbers, that was my best guess at trying to

18  identify that source for you.  And I did it, and I'm

19  just explaining how I did it.  I don't know these

20  men, and I haven't talked to them.

21       Q.   Okay.  So let's try to break that down a

22  little bit.  Have you interviewed Jimmie Gordon?

23       A.   No, sir.

24       Q.   Have you reviewed interviews of Jimmie

25  Gordon?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8781

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 102782

1      A.   I have read interviews of Jimmie Gordon.

2      Q.   And do you recall in those interviews he

3  indicated that he was removed from the Southern

4  Correctional Facility before the homicides ever took

5  place?

6      A.   That sounds familiar, yes.

7      Q.   Okay.  So knowing that now, would you agree

8  with me that this must be a different informant who

9  informed them on March 29, at the Southern

10 Correctional Facility of the information contained in

11 paragraph 3 on page 133 of discovery?

12     A.   No.

13     Q.   Okay.  How was Jimmie Gordon then

14 interviewed at the Southern Correctional Facility on

15 March 29, if he was not there?

16     A.   Well, I don't know that we agree that he

17 wasn't there.

18     Q.   Okay.  Are you telling us with any level of

19 certainty that the informant in paragraph 3 on page

20 133 is Jimmie Gordon?

21     A.   No, sir.  I was trying to be helpful.  And

22 you asked me to attempt to identify him, and that is

23 my best guess.  I'm not definitively saying that's

24 definitely him.

25     Q.   If we can move back to paragraph 3 for a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 103783

```
 1    second.  Now, the informant on page 133, paragraph 3,
 2    which for the record is Exhibit M, this individual
 3    provided some pretty specific information to Officers
 4    Jaramillo and Lucero concerning the murders.  Would
 5    you say that's correct?
 6         A.   Yes.
 7         Q.   And that's information that there were
 8    three assailants for each hit?
 9         A.   Yes.
10         Q.   And only eight subjects knew of the hit; is
11    that right?
12         A.   Yes.
13         Q.   And they also indicated that the people
14    that called the hits were Leroy Lucero and Jesse
15    Ibarra; is that correct?
16         A.   Yes.
17         Q.   Did you interview Leroy Lucero in the last
18    couple of months?
19         A.   Yes, sir.
20         Q.   And did Mr. Lucero indicate that he had
21    made a phone call with a person by the name of Angel
22    DeLeon prior to the murders?
23         A.   He had phone calls with Angel Munoz.
24         Q.   Angel Munoz, I'm sorry.  And that he
25    confirmed with Mr. Munoz that the murders should
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8783

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 104784

```
 1    happen of these two individuals?

 2         A.   Yes.

 3         Q.   So Mr. Lucero at least corroborates a

 4    portion of this statement that's in paragraph 3 on

 5    page 133; is that correct?

 6         A.   That the hits were to take place, yes.

 7         Q.   If we could, let's go to page 1222, which

 8    for your purposes it's page 1222 of DeLeon discovery,

 9    but for our purposes it's Exhibit K that's already

10    been admitted.  Let me know when you've reached that

11    page.

12         A.   1222 was not one of the ones in the Touhy

13    letter, so I need to look it up.

14         Q.   I know it's been a little while, but you

15    might recall that when you last testified you

16    indicated that the individual that was at page 1222

17    was an individual by the name of Augustine Saenz.

18         A.   Yes, I remember talking about him.

19         Q.   Did you interview Augustine Saenz?

20         A.   I have not.  I believe other agents have.

21         Q.   Okay.  So is it based upon your comparison

22    of the interview by other agents, and then comparing

23    to it this particular document that you made the

24    assumption that it was Mr. Saenz that made the

25    statement?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8784

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 105785

1    A.   Yes, sir, I think it was.  Although, when I

2    was last with you there at the courtroom, I don't

3    believe -- I don't know if I had my -- I don't know

4    if I had 302s.  I may have only been looking at

5    Corrections and police reports.

6    Q.   Well, you're probably not surprised that

7    the defense doesn't have those 302s yet of Mr. Saenz'

8    interview.  But that aside, did Mr. Saenz -- was he

9    shown that page 1222, and the subsequent page in his

10   interview?

11   A.   I'll check our 302s, if you want me to.  I

12   can't answer that question off the top of my head.

13   Q.   That's fine.  Take your time.

14   A.   I believe that Mark Myers, one of our

15   former TFOs interviewed Mr. Saenz on July 7.  I'm

16   reviewing that now.

17   Q.   July 7 of what year?

18   A.   July 7 of 2016.

19   Q.   I'm sorry, I couldn't hear that.  July 7 of

20   what year?

21   A.   2016.

22   Q.   Is that 2016?

23   A.   Yes, sir.

24        Your question, sir, is what?

25   Q.   Does your review of that 302 indicate that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Saenz was shown page 1222, and the next page, and
 2    identified that as his statement?
 3         A.   I'm checking now.  No, sir, it doesn't
 4    indicate that he was shown any documents.
 5         Q.   Now, when we were last here, you had
 6    indicated that a dolly full of information or
 7    materials were -- had just been delivered from the
 8    Department of Corrections.  Do you recall that?
 9         A.   From the State Police.
10         Q.   From the State Police, okay.  Do you recall
11    that testimony?
12         A.   Yes.
13         Q.   When we last talked, I believe you said
14    that some of the missing material, for all you know,
15    might be on that dolly?
16         A.   I don't know.  I just wanted to be very
17    candid with you all and let you know that I received
18    some information, and I hadn't had time to look
19    through it yet.
20         Q.   Have you had an opportunity to look at that
21    material since then?
22         A.   I have reviewed it.  And I signed for it.
23    And then I believe Agent Neale, who is in the
24    courtroom there today, actually reviewed some of that
25    as well.  But to answer your question, yes, the FBI
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8786

1   has reviewed that.

2       Q.   On the dolly of materials, or any other

3   materials that have come in since we were last in

4   court, did you locate the video from the prison cells

5   of Garza, Castillo, the Polaroid photos of inmate

6   Allen Patterson, the physical examinations of inmates

7   in the various pods for injuries, the daily logs and

8   correctional officer logs, the inmate mail or the

9   inmate phone calls that we discussed last time?

10      A.   I have received no new information.  The

11  dolly contained entirely State Police evidence on

12  Adrian Burns.

13          THE COURT:  Would you repeat that, Mr.

14  Acee?

15      A.   Yes, sir.  To answer Mr. Castle's question,

16  I have not received anything new related to the

17  things he asked.  The boxes on the dolly contained

18  Adrian Burns evidence only, and that was what the

19  State Police had.

20      Q.   Agent, what I'd like you to do at this

21  point in time is pull up DeLeon page 43684, if you

22  could.

23      A.   43684.  Mr. Castle, which homicide is that?

24  That would make it quicker for me.

25      Q.   It's a report dated January 22, 2002, of an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8787

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 108788

1    interview that Frederico Munoz had with the FBI, it

2    appears.  Are you familiar with that interview that

3    Mr. Munoz had back in January of 2002?

4        A.   I believe so.  I'm searching for the

5    document now.  There is a lot of evidence in the

6    murder book, and it goes a little quicker, but I'm

7    searching.

8        Q.   Well, if you're familiar with the

9    interview, perhaps you don't need to really see the

10   report.  But let me ask you whether there was any

11   file opened up on Frederico Munoz as an FBI source in

12   2002, that you found.

13       A.   I can answer that question because I

14   believe I noted when Mr. Munoz was an informant, and

15   he was not opened as an informant for the FBI until

16   2009.  I do know from my conversations with retired

17   Detective Robert Martinez that he was an informant

18   for the sheriff's department back in the day.  I'm

19   not sure exactly what years, though.

20       Q.   There is a file number on -- at least on

21   the document that we're looking at, which is Exhibit

22   AA, page 43684.  It has a file number on the bottom,

23   an FBI file number that ends in 55402.  Do you know

24   what file that is?

25       A.   I'm looking through my notes.  What page?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8788

1        Q.    The page is 43684.

2        A.    And the FBI case number.

3        Q.    55402.   That's at least the last five

4   digits of the case number or file number.

5        A.    As I sit here today, I'm not in front of my

6   FBI computer, so I'm actually checking to see what

7   case that is.

8        Q.    Okay.   I'm going to try to read from this

9   document, just so we could get through this.   On the

10  document, do you recall that during the January 22,

11  2002 interview that Mr. Munoz said he has information

12  on the murders of Orlando Garcia a/k/a Looney, and

13  Frank Castillo, that occurred at the Southern New

14  Mexico Correctional Facility, and that it was rumored

15  that first name unknown, last name unknown, a/k/a

16  Baby Rob carried the hit?

17       A.    No, that doesn't sound familiar.   I did

18  find that case number.   So let me just --

19       Q.    And what is that case number for?

20       A.    It looks like it's a closed -- it's a

21  historical closed FBI case.   The title of it is

22  "Syndicato de Nuevo Mexico, Joe Barros, B-A-R-R-O-S.

23       Q.    And have you looked in that file to see if

24  there are materials that are relevant to prosecution

25  in this case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8789

```
 1        A.   Yes, sir, we've searched this database many

 2   different ways.  I think I've testified about that

 3   before.  But I'm just reviewing the file.  Various

 4   files are closed.  It's electronically scanning to

 5   see what it contains.

 6        Q.   Do you recall that in 2002, Mr. Munoz,

 7   Freddie Munoz, had told the FBI that he believes he

 8   may have already been burned and on the outs with the

 9   gang?  Do you recall that?

10        A.   I remember reading something like that,

11   yes.

12        Q.   Do you know whether this interview was

13   tape-recorded?

14        A.   I think I'm looking at the same report,

15   sir.  Do you have a serial number on it by chance?

16        Q.   I'm sorry, I couldn't hear you.

17        A.   I was asking if you had a serial number on

18   your copy by chance.

19        Q.   We don't have a serial number.

20        A.   Okay.  Was the date of the interview on

21   January 22, 2002?

22        Q.   It is.

23        A.   I'm looking at the same report now.

24        Q.   Was that interview recorded?

25        A.   It does not indicate it was recorded.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8790

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 13791

1     Q.   Have you talked to Jennifer Sparks or Agent

2  Daniel Howington to determine whether they recorded

3  that interview?

4     A.   I have not.  Daniel Howington still works

5  in our office and I can ask.  I know in my historical

6  conversations with him he didn't have very much

7  knowledge of the SNM, and didn't recall doing any

8  significant interviews.

9     Q.   Do you know whether Mr. Munoz was opened up

10 as a -- I'm not sure what you call it -- a --

11    A.   Informant.

12    Q.   Yeah, it's an informant for the FBI?

13    A.   I contacted our confidential human source

14 staff that's in charge of doing the database, and I

15 asked them to tell me the first time Munoz was opened

16 as an informant.  And it was February 6, 2009, by

17 Agent Mackenzie Monarco.  And I think I previously

18 mentioned to you that she was a new agent under the

19 supervision of Sonya Chavez.

20    Q.   Do you know why Mr. Munoz was not opened as

21 an informant in 2002?  Because, according to this

22 document, he offered to be an informant for the FBI.

23 Do you know why they rejected that offer?

24    A.   Are you asking my opinion?

25    Q.   Yes, sir.  Did you learn why?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8791

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112

1    A.    I don't think the FBI was at all interested

2    in pursuing the SNM in 2002.  There is no significant

3    investigative activity.

4    Q.    Is that your conclusion, or did you have

5    conversations with specific agents that indicated

6    that the FBI was not at all interested in pursuing

7    the SNM?

8    A.    Yes to both.  It's my conclusion, based on

9    conversation and my review of these files, being an

10   investigator myself, and in talking with agents who

11   are either here or now retired, that they didn't take

12   a serious shot at these guys until Agent Roundy

13   opened his case.

14   Q.    Well, let me ask you, in the materials that

15   you've reviewed prior to Agent Roundy becoming

16   involved, did you ever see or review files on various

17   SNM members?

18   A.    If I'm understanding correctly, since I've

19   become the case agent in Atonement, I've reviewed all

20   that stuff.  Prior to that, I had very little

21   knowledge of the SNM.

22   Q.    No, what I'm asking is have you seen,

23   physically seen any files on individual SNM members

24   that were put together by the FBI prior to Agent

25   Roundy being assigned?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8792

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 113793

1        A.    Yes, I've reviewed all of his files.

2        Q.    And what are the pre Roundy files?  What do

3   they look like?  And how many of them were there

4   concerning the SNM?

5        A.    At the last hearing, I testified about

6   that, and shared all the case numbers.  I'm looking

7   for those notes now.  But there were approximately a

8   half a dozen cases.  None were very significant, in

9   that, I mean, they didn't contain material --

10        Q.    Can you repeat that again?  They didn't

11   have what material?

12        A.    I think I cut you off.

13        Q.    Actually, I think I cut you off, because we

14   didn't hear what you said.  So if you could just

15   repeat what you said.

16        A.    Yes, I was saying that the older files

17   don't contain very many materials, SNM materials, the

18   sequential number of the documents in the file.  Now,

19   the Atonement, which we opened three years ago, there

20   are around 1600 documents already.  So when I look at

21   these old files, there is only a dozen or maybe 50

22   serials.  That's not very significant.

23        Q.    In these older materials, did you find

24   separate files on individual SNM members?

25        A.    Well, I guess I don't know what your

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 8793

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 13794

1    definition of separate files would be.  There is

2    information on different members in there.  It

3    largely looks like it's information from the

4    Corrections Department.  So memorandum, or escape

5    flyers, also known as information sheets.  I see a

6    lot of those in there.  So it's -- most of it is

7    information from either the Department of Corrections

8    or the Bernalillo County Sheriffs.

9         Q.   Okay.  So you didn't see any files that

10   were prepared by the FBI, looking into the background

11   of specific SNM members; is that correct, in these

12   older materials?

13        A.   Well, I would say the FBI keeps files.  I

14   mean, they ran criminal history checks.  They -- at

15   times, I can remember somebody, I think, applying for

16   a pin to concentrate on Styx, on Gerald Archuleta.  I

17   don't recall what year that was.  But in my opinion,

18   as a senior agent, they're not very good files.

19   There is not much to them, not much investigative

20   activity.

21        Q.   Let me ask you kind of a different area.

22   Did you, prior to working on Operation Atonement, did

23   you do any other work on the SNM in a previous stint

24   here in Las Cruces?

25        A.   No, sir.  I was assigned -- when I was down

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8794

1    there I worked -- I was on a squad that focused on

2    the Juarez Cartel, the Mexican drug cartel.  And I

3    worked exclusively drug trafficking organizations.  I

4    did not work the SNM.

5            As a member of the FBI SWAT Team, I was

6    present on an arrest or two on Agent Roundy's case.

7    But I don't recall ever interviewing anyone, and

8    didn't know too much about it.

9        Q.   Agent Roundy (sic), last time under

10   questioning by the prosecution you indicated that

11   prior to your involvement, you'd only located two

12   witnesses that had been previously opened as FBI

13   sources, who would testify in the trials involving

14   the 2001 murders.  Do you recall that?

15       A.   I think so.

16       Q.   Now, when you used the term "opened as FBI

17   sources," what do you mean by that?

18       A.   They had to be numbered to be opened as a

19   an FBI informant.

20       Q.   But would it be fair to say that a number

21   of people had been interviewed concerning what

22   happened in 2001, that were not labeled an FBI

23   source?

24       A.   Probably.

25       Q.   Well, for example, Jimmie Gordon had been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8795

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 116796

1    interviewed by State authorities and provided

2    information as to who had ordered and carried out the

3    murders in 2001; is that right?

4         A.   Mr. Castle, I'm sorry, I think we may have

5    spoke over each other.

6         Q.   Okay.  I'll repeat the question.

7              Prior to Operation Atonement witnesses,

8    such as Jimmie Gordon, Augustine Saenz, Joseph Otero,

9    and many other witnesses had discussed what they

10   observed, and who they knew were responsible for the

11   2001 murders with State officials; is that right?

12        A.   Yes.

13        Q.   They just weren't opened as FBI sources?

14        A.   True.  And I don't think they were

15   interviewed by the FBI.  I think they were

16   interviewed by Corrections and/or State Police.

17        Q.   Was Jimmie Gordon ever opened as an FBI

18   source on any matter?

19        A.   No.

20        Q.   I want you to look at page 61829 of the

21   DeLeon discovery, which we have marked as Exhibit AB.

22   And maybe I can just tell you what this document is,

23   because it's pretty fresh, and you may not have to

24   look at it.  It's a document dated March 21, 2018.

25   And what it's regarding is whether the FBI was able

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8796

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 13797

1    to locate a particular custodial interview tape of a

2    person by the name of Benjamin Clark.  Are you

3    familiar with that document?

4         A.   I've seen it, and I spoke with the author

5    of that document, yes.

6         Q.   And do you recall that the conclusion was

7    that the tape can no longer be found?

8         A.   That is what the agent told me, yes.

9         Q.   And do you believe that was a thorough

10   search for that recording?

11        A.   Yes.  We had a pretty heated conversation

12   about it.  And I trust that agent, and he's actually

13   a very good agent.  And he drove -- not only did he

14   search there in Las Cruces, but he drove up here to

15   Albuquerque to specifically look for it.  He talked

16   to the transcription supervisor and the ELSUR

17   technician in his search of it.  So I think he tried

18   hard to find it.

19        Q.   I'm hoping there is not a second open desk

20   over at the FBI these days.  Am I right there?

21        A.   His office is down there in Las Cruces.

22   I'm happy to look over it, but I'm sure he did.

23        Q.   For our help, if there are any open desks,

24   we could use them here in the courtroom.

25             MR. CASTLE:  I have no further questions,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8797

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118798

 1   but if I could move for the admission of AA and AB at

 2   this time, Your Honor.

 3            THE COURT:  Any objection, Mr. Beck?

 4            MR. BECK:  No, Your Honor.

 5            THE COURT:  Any objection from any other

 6   defendants?  Not hearing any, Defendants' AA and AB

 7   will be admitted into evidence.

 8            MR. CASTLE:  Judge, I missed a question.

 9   May I ask it?

10            THE COURT:  You may.

11   BY MR. CASTLE:

12      Q.   Agent Acee, when you were last here, the

13   prosecution asked you some questions about whether

14   you were -- whether you found any documents that

15   indicated the United States Attorney's office made a

16   conscious decision to refrain from charging the 2001

17   murders for tactical reasons.  Do you recall those

18   questions?

19      A.   Yes.

20      Q.   Did you find detailed reports about the

21   U.S. Attorney's Office's decisionmaking process

22   through the years regarding why or why not they

23   pursued the 2001 murders?

24      A.   I did not find any documents that detail

25   that, no.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8798

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 119

```
 1                    MR. CASTLE:  I have no other questions.
 2                    THE COURT:  All right.  Thank you, Mr.
 3     Castle.
 4                    Do any other defendants have any redirect
 5     of Mr. Acee?  Were you going to ask some more, Mr.
 6     Beck?
 7                    MR. BECK:  A couple, Your Honor.
 8                    THE COURT:  Okay.
 9                          CROSS-EXAMINATION
10     BY MR. BECK:
11          Q.   Good morning, Special Agent Acee.
12          A.   Good morning, sir.
13          Q.   I want to take you back to DeLeon 133 Bates
14     No., which is Exhibit N.  Do you have that in front
15     of you?
16          A.   What was the Bates number?
17          Q.   133?
18          A.   Yes, I have it.
19          Q.   I want to direct you to the paragraph you
20     were going over with Mr. Castle, where it says, "New
21     Mexico Corrections Staff, Will Jaramillo."  Do you
22     see that?
23          A.   Yes.
24          Q.   Does that paragraph indicate that that
25     interview actually happened on March 26 or 25, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8799

1    does that indicate when that interview informed him

2    of anything?

3          A.   No, it doesn't.

4          Q.   Okay.  And so in your review of this

5    document, is there anything that suggests -- well,

6    can you conclude that this informant provided him

7    information even in March of 2001?

8          A.   No.

9          Q.   And, if I understand how you -- you

10   identified this person, if memory serves me, as

11   Jimmie Gordon; is that right?

12         A.   Yes.

13         Q.   And I think you did that by looking at

14   other statements Jimmie Gordon provided, right?

15         A.   Yes.

16         Q.   And if I'm right, it's because he mentions

17   Jesse Ibarra?

18         A.   Yes.

19         Q.   And how many other documents do you think

20   you reviewed with other CI's information about the

21   Garza and Castillo murders, just in a range?  Or can

22   you even give me a range?

23         A.   Hundreds of pages.

24         Q.   Hundreds of pages, maybe -- how many

25   hundreds?  Close to 1,000?  Close to 500?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8800

```
 1         A.    Closer to 1,000.  If you recall, I had a
 2    couple large binders there.  They probably measured
 3    two or three feet high when I stacked them up.
 4         Q.    I recall them well.  I just wanted to make
 5    sure you recalled the same thing.
 6         A.    Yes.
 7         Q.    And in your review of that, the statement
 8    in this, which says that this person learned through
 9    their source that inmate Leroy Lucero called the hits
10    of inmate Castillo and Garza, and that inmate Jesse
11    Ibarra orchestrated the hits, was that information
12    only correspondent to information that you found from
13    Jimmie Gordon?
14         A.    Yes.
15         Q.    And is that substantially the same
16    information you found from Jimmie Gordon?
17         A.    Yes.
18         Q.    Is that pretty much the same information
19    that is found in Bates No. 19128, which you reviewed
20    in preparation for this hearing?
21         A.    Yes.
22         Q.    And so I know you said you can't say for
23    certain that this is Jimmie Gordon.  And I understand
24    that.  But do you anticipate that Jimmie Gordon would
25    provide substantially the same testimony as we see
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8801

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 122 8802

```
 1    here in this report that the informant gave?

 2         A.   Yes.

 3         Q.   And for Exhibit K, which is DeLeon Bates

 4    1222, I understand that you attributed that to

 5    Augustine Saenz, if I'm right?

 6         A.   Yes.

 7         Q.   And did you go about the process in the

 8    same way, corresponding the statements in there to

 9    other statements Augustine Saenz had given?

10         A.   Yes.

11         Q.   So like I asked you with the last document,

12    would you anticipate that whoever gave that

13    testimony, Augustine Saenz, would come in and testify

14    to the same or substantially the same information

15    attributed to the source in that report?

16         A.   Yes, sir.  And I would add that when Mr.

17    Castle and I were speaking a few minutes ago, I

18    reviewed that 302, from 2016, by Mark Myers, and that

19    information corroborates what I see in these reports

20    here in this document here.

21         Q.   Okay.

22         A.   Further corroborated.

23         Q.   Did you say further corroborates it?

24         A.   Yes.

25         Q.   Okay, thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 123803

1          The dolly that we talked about last time, I

2   know you were being safe, but is it safe to say that

3   was mostly physical evidence for the Burns murder?

4       A.   Yes, I believe there was 122 items, all

5   related to the Adrian Burns murder.

6       Q.   Mr. Castle was asking you about informants

7   who are not FBI sources.  If you open an informant,

8   if you open them as an FBI source, is that in

9   anticipation that they would be ready and willing to

10  testify at trial?

11      A.   Some don't want to testify; the majority of

12  my informants, that's one of the reasons I talk about

13  when I open them.

14      Q.   Let me ask you this:  When you started

15  investigating the SNM Prison Gang, were members that

16  you talked to, just freely open out on the streets,

17  were they ready and willing to come and testify at

18  trial without any -- what I may call encouragement?

19      A.   The majority were.  Some weren't.

20      Q.   Let me ask that question a different way,

21  Special Agent Acee.  I understand -- and I can't

22  remember if it was testimony in this hearing or

23  elsewhere -- part of your investigation into the SNM

24  included filing several stand-alone criminal actions

25  against them for things in the nature of felon in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8803

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 124804

```
 1    possession of a firearm or drug trafficking crimes.
 2    Do you remember that?
 3         A.   Yes.
 4         Q.   Approximately how many of those what I'm
 5    calling one-off proceedings did you and the other
 6    persons working with you on Atonement file so far, or
 7    investigate?
 8         A.   Between 40 and 50.
 9         Q.   And what was the purpose of doing that?
10         A.   To keep pressure on the SNM, develop
11    informants, and just keep dismantling the
12    organization.
13         Q.   In your review of the other files that
14    you've reviewed so far, did other FBI agents go
15    through the same process of investigating and
16    prosecuting one-off crimes with the intention to,
17    number one, prosecute crimes, but number two, develop
18    informants who may testify in court?
19         A.   Yes.
20              THE COURT:  Mr. Beck, is this a good time
21    for us to take our break?
22              MR. BECK:  I'm just concerned about Special
23    Agent Acee making this.  So let me just hit one or
24    two more points, then I'll be done with him.
25              THE COURT:  All right.
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.    Special Agent Acee, did you develop

 2    Robert -- this is going to Mr. Burke's questioning

 3    earlier -- did you develop Mr. Robert Martinez as an

 4    informant in this case before you filed the

 5    indictment?

 6          A.    Yes.

 7          Q.    And I know you didn't file it -- I'm sorry,

 8    I shouldn't have said that.  But was he a member of

 9    the tabla and one of the leaders of the SNM?

10          A.    Yes.

11          Q.    Before you developed Robert Martinez, in

12    your review of the files, had any other leaders of

13    the SNM, members of the tabla, come on board to

14    cooperate and potentially testify for the Government

15    at any time in this case?

16          A.    With the exception of maybe Leroy Lucero,

17    when he was in the feds, is the only one I can think

18    of, when Agent Roundy initially developed him.

19          Q.    And Fred Quintana, was he previously

20    willing to cooperate and testify before you developed

21    him in 2015?

22          A.    No.

23          Q.    And although he provided information on

24    Troup, were there others that he developed in

25    anticipation of the indictment, and provided
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8805

```
1    information about the Garza and Castillo murders?
2         A.   Yes.
3              MR. BECK:  No further questions, Your
4    Honor.
5              THE COURT:  Thank you, Mr. Beck.
6              Are the defendants going to have further
7    questions?
8              MR. BURKE:  No, Your Honor.
9              THE COURT:  Mr. Castle, anything?
10             MR. CASTLE:  No, Your Honor.
11             THE COURT:  All right.  Is there any reason
12   Mr. Acee cannot be excused at this time, Mr. Burke?
13   Mr. Castle?  Anybody else?
14             MR. BURKE:  No, Your Honor.
15             MR. CASTLE:  No, Your Honor.
16             THE COURT:  Mr. Beck?
17             MR. BECK:  No, Your Honor.
18             THE COURT:  All right.  You are excused
19   from the proceedings.  Thank you for your testimony.
20             All right.  Let's go ahead and take our
21   lunch break, and we'll get together a little bit
22   after 1:00 clock.  All right.  See you then.
23             (The lunch recess was held.)
24             (An ex parte proceeding was held with Mr.
25   Castle regarding James Garcia and the investigator.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    (The following proceedings were held in open court.)
 2              THE COURT:  All right.  We'll go on the
 3    record.  Deputy Gunter?
 4              THE MARSHAL:  Yes, sir.
 5              THE COURT:  I was wondering a couple of
 6    things.  The defense lawyers have asked in the first
 7    trial -- this is the way I remember it, and correct
 8    me if I'm wrong -- in the first trial the defense
 9    lawyers were allowed to be here in the courtroom at
10    7:30 in the morning, get through the gates.  The
11    jurors themselves can't come through until 8:00.  And
12    that allowed them to get through before the jurors
13    came through, and whatever daily stuff.  Is that
14    going to be a possibility for the second trial as
15    well, that y'all could let the defense lawyers
16    through the front door so they can get in here at
17    7:30?
18              THE MARSHAL:  I don't see a problem with
19    it, Judge.  I'll get with the GSA, and make sure the
20    CSOs are aware.
21              THE COURT:  If you find out there is a
22    problem, get back with us.  Otherwise, we'll just
23    assume they can get through at 7:30.  And I'll tell
24    the jurors that they will not be able to come in
25    until 8:00.  Is that -- I think that was the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 28808

```
 1    arrangement the first trial.  And correct me if I'm
 2    wrong.
 3              THE MARSHAL:  Yes, sir.
 4              THE COURT:  The second thing is just a
 5    reminder, if this is -- we can do this the second
 6    trial -- last night, when I was leaving, the van was
 7    pulling out, had its lights flashing, and those sort
 8    of things.  I think the agreement was that that's
 9    okay, of course now.  But once the trial starts,
10    because of the jurors leaving and maybe seeing that,
11    y'all would not have lights flashing or something,
12    and there wouldn't be any stopping of traffic and
13    things like that, so that they knew the men were in
14    custody and leaving in vans.  If you could just
15    confirm that whatever agreement we had earlier will
16    stay in place for this trial as well.  I'm not saying
17    anything was wrong last night, because that's fine,
18    the jury is not here, but it kind of shifts on
19    Monday.
20              THE MARSHAL:  Yes, sir.
21              THE COURT:  Is there anything else while
22    we're talking to the Marshal Service about anything?
23    The Government?  Mr. Castle?  Anything?
24              MR. CASTLE:  Yes, I'm wondering if we could
25    get a room key for the defense room.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 29809

```
 1              THE COURT:  Is that this little room right
 2    outside?
 3              THE CLERK:  I'll get that for them.
 4              THE COURT:  Okay.  I think there is one
 5    key.  You've got the key.
 6              THE CLERK:  I'll get it for her.
 7              THE COURT:  There is one key, and Ms. Bevel
 8    will get it and get it to Ms. Gilbert.
 9              MR. CASTLE:  The record should reflect my
10    client is not the key holder.
11              THE COURT:  I'll let you make your own
12    record on that.
13              Anything else while we've got the Marshal
14    Service here?
15              On the chairs -- I'll go ahead and say this
16    in front of you -- the chairs are what they are.  Let
17    me tell you a little bit of history.  Most of you
18    know this.  Of course, Ms. Wild and Mr. Castle sort
19    of negotiated.  And in Ms. Wild's view, and I guess
20    therefore the Court's view, this was agreed to.  Did
21    y'all agree to these chairs?  These were rented.  The
22    Court had to endow some money, or I don't know what
23    the procedure is, so that it puts money in there, and
24    went and spent it.  So you're stuck with it.  We will
25    deal with requests on chairs on a case-by-case basis,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    so no mass request.  That's not going to work.  Mr.
 2    Shattuck, we will work with him.  He made the first
 3    request and we will work with him.  I can't promise
 4    anything right now.  But he's made his request, and
 5    we'll work with him.  If others of you have case by
 6    case, and it would have to be a case-by-case basis,
 7    continue to work with Ms. Wild on that.  It hasn't
 8    been shifted over to Ms. Bevel yet.
 9            Okay.  That's all I can kind of think of.
10    Thank you so much, Deputy.
11            THE MARSHAL:  No problem.
12            THE COURT:  I appreciate it.
13            I did, at 1:05, have Mr. Castle address the
14    Court ex parte.  And I understand why he wanted to do
15    it ex parte.  I think there was some work product
16    that he revealed to me.  I can -- I will say this
17    much:  That I'm even more convinced that Mr. James
18    Garcia is not being accurate with Mr. Acee, or with
19    the Government, and that that story, while it matches
20    what occurred here in the courtroom, it doesn't match
21    anything that I've seen or heard from the defense
22    counsel.  So I'm cautious here, because I want to be
23    fair and impartial.  But to the extent whatever
24    conclusion I make is helpful to anybody, it's just
25    that I think he knows what occurred here in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8810

1    courtroom, and he has invented a story that matches

2    what occurred in the courtroom.  But that story

3    doesn't match, in my view, anything that occurred

4    with the defense counsel on this first table here or

5    with their investigator.

6              Okay.  The next motion I have up is

7    Document 1993.  Y'all may want to go in a different

8    direction.  We're at 1:30 on the last day before

9    trial.

10             And while you're coming up here, Mr.

11   Cooper, let me say to you that on the jury, y'all may

12   know this more than I do, but I am going to receive a

13   box this afternoon.  Probation is bringing it down

14   from Albuquerque, there is a probation officer.  So

15   I'm going to receive my questionnaires.  I understand

16   there will be 69, so that 85 number that I've been

17   using is 69.  What concerns me a little bit about

18   that is that remember I was always using the figure

19   85.  So I thought I probably wasn't going to have 25

20   down in the jury room, but I was probably going to

21   have 10, 15.

22             Now, you know, let's say six don't show up,

23   I've got three or four down there.  I would hate for

24   us to -- let's say we really pick up speed on the

25   first day of the jury selection for some reason, like

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8811

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 132

1    the Journal published an article on the front page of

2    the paper, and I've gotten the local people here and

3    the Jury Services trained not to anticipate how I

4    select juries, and not to tell them anything about

5    security or anything like that.  So let's say we have

6    a smoother first day, and we're picking up steam, but

7    we don't get our people out, and we don't have any

8    additional jurors.  So I guess I'm talking with

9    Ms. Wild a little bit about bringing some of the

10   people we are scheduled to bring on Tuesday, just to

11   cushion a little bit, so that if we're moving along,

12   but we run out of jurors, we can start bringing in

13   those additional groups in on Monday afternoon rather

14   than waiting till Tuesday.  But that's kind of where

15   we are.

16           I'm not sure I have a whole lot more to

17   say, because I did meet with Judge Garza, expressed

18   my concerns to her.  She's going to review a

19   transcript of the March 15 hearing, she's going to

20   review what we did this morning.  And Mr. Castle's ex

21   parte portion, the two exhibits I have, and of

22   course, I guess by the time the 1:30 plea colloquy

23   occurs, she'll have a copy of the plea agreement.

24   She'll be more informed than I will be at that point.

25   But I did express to her my concern that, you know,

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 8812

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133

```
 1    she needed to do -- I know she'll do an excellent job
 2    taking the plea, and I don't need to tell her how to
 3    do her job.
 4              But I just wanted her to be aware that at
 5    least I have come to the conclusion that if he signs
 6    that same plea agreement, and swears to it tomorrow
 7    at 1:30, I do not think it's an accurate story.  And
 8    she really may want to convince herself before she --
 9    she's not going to accept the plea agreement, of
10    course, but she will be accepting the plea of guilty,
11    if he pleads that way.  And I thought it was fair for
12    her to know that she really may want to make sure
13    that he is voluntarily and knowingly making that
14    plea.  And I talked to her a little bit about Mr.
15    Glazener, and why he was selected, and who
16    recommended him to the Court, and that she might want
17    to make sure that he's comfortable with the
18    representation that he has.
19              All right.  Mr. Cooper.
20              MS. HARBOUR-VALDEZ:  Your Honor, before Mr.
21    Cooper comes up, do we still get that sequential list
22    today of the 69 jurors?
23              THE COURT:  Y'all don't have it yet?
24              MS. HARBOUR-VALDEZ:  No, Your Honor.
25              THE COURT:  Let me just call and see where
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8813

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 134

```
 1    it is, because I did promise it to you this morning.
 2             (A discussion was held off the record.)
 3             THE COURT:  Ms. Harbour-Valdez, Ms. Wild's
 4    computer has crashed.  As soon as she gets it back up
 5    and running, she'll get it to you here shortly.
 6             MS. ARMIJO:  And, Your Honor, since there
 7    is 69, are you going to be bringing what show up of
 8    those 69 up?  I realize before when it was 85, if --
 9             THE COURT:  I will just bring 60 in.
10             MS. ARMIJO:  Okay.
11             THE COURT:  But what I'm concerned about is
12    what if 10 don't show up, then I don't have what I
13    promised you and what I promised myself I'd have in
14    here.  So I may bring some of the people that we were
15    going to tell -- we've already, in fact, told them --
16    that's a bit of a problem, we've told that Tuesday
17    group they don't have to show up on Monday.  So if I
18    have them do it, but I may have them do it for 10,
19    15, 20 people.  I need to spend a little bit of time
20    with Ms. Wild at some point.  So I may call some of
21    those people and say, 10, 15 of them, you have to
22    show up, so we have them in reserve.
23             MS. ARMIJO:  I was just going to suggest
24    that if 61 show up, instead of having one down, maybe
25    we could squeeze one extra person.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8814

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

```
 1              THE COURT:  We can squeeze them in.  The
 2    more people we get in here, the longer it takes.
 3              MS. ARMIJO:  Right.  I was going to say, if
 4    it's a number that close to 60 that show up, maybe we
 5    try to get them in here; in the event we run out, it
 6    would save time if we don't have to start --
 7              THE COURT:  I may get you 85, so they won't
 8    probably be alone.
 9              MS. ARMIJO:  Oh, okay.
10              THE COURT:  I'll probably have a group of
11    20 or something down there.  That's what I'm leaning
12    toward doing, have 60 in here.  We got them picked
13    the first time with 60, and assuming we don't have,
14    you know, some of the things we had going on last
15    time, maybe it will go a little bit smoother.
16              MS. HARBOUR-VALDEZ:  Will we receive the
17    names of the additional ones, the Tuesday group?
18              THE COURT:  I'll try to make sure that
19    happens.
20              MS. HARBOUR-VALDEZ:  Okay.  Thank you, Your
21    Honor.
22              THE COURT:  Mr. Cooper.
23              MR. COOPER:  Thank you, Judge.
24              Judge, with regard to our targeted response
25    with regard to the statements, Document 1909, we are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8815

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 136

```
 1    going to call Josh Mirka.  And his lawyer, Ann

 2    Gibson, is present in the courtroom, Judge.  He's

 3    downstairs.  And I think we've already advised the

 4    Marshal Service to bring him up.

 5                THE COURT:  All right.  Ms. Gibson, if you

 6    want to come up and sit next to Mr. Mirka up here,

 7    there is a seat right there, and you just move it

 8    wherever you want.  I don't have a law clerk over

 9    here, if you want to be more comfortable, pull that

10    around, take whatever you want.

11                MS. GIBSON:  Thanks.

12                MR. COOPER:  And Judge, Mr. Castle has

13    reminded me that it's Document 2009, our supplement

14    to that document that I had talked about.

15                THE COURT:  All right.  Mr. Mirka, if you

16    would stand again, and I'm going to have Ms. Bevel

17    swear you in.  She's right in front of you here.

18                THE CLERK:  Right here.

19                THE COURT:  You'll raise your right hand to

20    the best of your ability.

21                THE WITNESS:  Yes.

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8816

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 137

```
 1                         JOSHUA MIRKA,
 2          after having been first duly sworn under oath,
 3          was questioned and testified as follows:
 4                      DIRECT EXAMINATION
 5              THE CLERK:  Please be seated, and please
 6     state your name.  And would you spell your last name
 7     for the record.
 8              THE WITNESS:  Joshua Mirka, M-I-R-K-A.
 9              THE COURT:  Mr. Mirka.  Mr. Cooper.
10              MR. COOPER:  Thank you, Your Honor.
11     BY MR. COOPER:
12          Q.   Good afternoon, Mr. Mirka.
13          A.   Good morning.
14          Q.   Mr. Mirka, you know Chris Chavez, don't
15     you?
16          A.   Yeah.
17          Q.   And Chris Chavez is seated in the courtroom
18     here today?
19          A.   Yes.
20          Q.   And you met Mr. Chavez when you two were
21     housed at the Hidalgo County Detention Center?
22          A.   Yes, sir.
23          Q.   And how long were you at Hidalgo?
24          A.   I was only there for -- I've been there for
25     a little over a month, maybe two weeks with him.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8817

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138 8818

```
 1        Q.    Two weeks with him.  Okay.  And when you

 2   arrived at Hidalgo, you had previously been at

 3   Deming?

 4        A.    Yes.

 5        Q.    Okay.  When you got to Hidalgo, you met

 6   Chris, and you were housed right next to his cell;

 7   correct?

 8        A.    Yes.

 9        Q.    And you guys talked through the vent?

10        A.    Yes.

11        Q.    And during those discussions you were able

12   to talk with him about a case involving the Syndicato

13   de Nuevo Mexico?

14        A.    Yes.

15        Q.    And some murders that occurred in 2001?

16        A.    Yes.

17        Q.    And during those conversations, did you

18   have occasion to view discovery and photographs, what

19   have you, of that particular prosecution?

20        A.    Yes.

21        Q.    And in the course of viewing that discovery

22   and talking with Chris, he told you that -- about his

23   involvement in the murders?

24        A.    Yes, briefly.

25        Q.    Okay.  Now, at some point in time, you made
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8818

1    a statement to Special Agent Thomas Neale, to Maria

2    Armijo, prosecutor for the Government, and I believe

3    your lawyer was present during this statement, back

4    on March 22, 2018.  Do you remember that day?

5        A.    Yeah.

6        Q.    And on that day, that's when you relayed

7    all of this information to the Government agents and

8    to Ms. Armijo?

9        A.    Yes.

10       Q.    You talked about how you heard that "Bill

11   runs the car"?

12       A.    Yes.

13       Q.    Do you remember making that statement?

14       A.    Yes.

15       Q.    And why is it that you made that statement,

16   and who were you talking about?

17       A.    Mr. Chavez made a statement of -- he had

18   mentioned Wild Bill or something.  And I said, Wild

19   Bill?  Just the name stuck with me.  "Yeah, he ran

20   the Syndicato car."

21       Q.    Okay.  Did he say anything else with you

22   about him running the car?

23       A.    Just that he said -- he stated that Wild

24   Bill had made some decisions in the past that he

25   didn't agree with, but that's just the way it was.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8819

1      Q.   Did he tell you what decisions those were?

2      A.   Just some good people got hurt.

3      Q.   Did he tell you what good people got hurt?

4      A.   No.

5      Q.   And how they got hurt?

6      A.   No.

7      Q.   And he told you that he didn't agree with

8   that?

9      A.   Yeah.

10      Q.   Did he tell you that all of the defendants

11   planned to stick together?

12      A.   Yeah.

13      Q.   And what was he talking about?

14      A.   He said that they were the last of the

15   people that weren't ratting on anybody.

16      Q.   Okay.

17      A.   About the only ones that were sticking

18   together, staying true to who they were.

19      Q.   And did he talk about some of the rats?

20          MR. BECK:  Objection, Your Honor.  I think

21   this is going outside the context of the statement.

22          THE COURT:  Tie it to the statement.

23          MR. COOPER:  I will, Your Honor, thank you.

24      Q.   Did he talk to you about whether or not

25   anybody in this particular case had made any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143

 1   statements with regard to these rats?

 2        A.   Yes.

 3        Q.   And can you tell me what he said?

 4        A.   He just -- because I got acquainted with

 5   some of them at Deming, one of them, so he knew who I

 6   was talking about, which was Mr. Lujan.

 7        Q.   Okay.

 8        A.   And just stated that, yeah, he was ratting

 9   on them.  And that's when he handed me his discovery

10   on Lujan to read.

11        Q.   And isn't it a fact that the reason you

12   went to the Government is because Leonard Lujan told

13   you how to cooperate and how to seek out an agreement

14   from the Government?

15        A.   No.

16        Q.   No?  Okay.

17        A.   No.

18        Q.   Did you have those sorts of discussions

19   with Mr. Lujan?

20        A.   No.

21        Q.   You went to the Government on your own?

22        A.   Yes.

23        Q.   So Mr. Chavez didn't say anything else

24   about Billy, Wild Bill's involvement with regard to

25   the 2001 murders?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8821

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8822

```
 1        A.   No.
 2        Q.   And the entire time that you were housed
 3   with him, there were no other statements with regard
 4   to Wild Bill or Billy Garcia?
 5        A.   No.
 6        Q.   Okay.
 7             MR. COOPER:  Your Honor, I pass the
 8   witness.  Thank you.
 9             THE COURT:  All right.  Mr. Cooper.
10   Anybody else?  Mr. Castle?  Anyone?  Mr. Burke?
11             MR. BURKE:  No, Your Honor.
12             THE COURT:  Anybody have any direct
13   examination of Mr. Mirka?  Mr. Beck, are you going to
14   cross-examine Mr. Mirka?
15             MR. BECK:  Yes, Your Honor.
16             THE COURT:  Mr. Beck.
17                    CROSS-EXAMINATION
18   BY MR. BECK:
19        Q.   Good afternoon, Mr. Mirka.  When you
20   reviewed discovery with Mr. Chavez, was that paper
21   discovery or was that on the tablet?
22        A.   It was just paper discovery.
23        Q.   And it was paper discovery about Mr. Lujan?
24        A.   Yeah, it was a whole stack of -- I only
25   went to Lujan.  He handed me a whole stack, but I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8822

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8823

```
 1   only just read the top one.  I only read a part of

 2   it.  And then I slid it back under the door to him.

 3   I wasn't really, at the time, interested in any of

 4   it.

 5        Q.   And I guess, what -- if you know, what was

 6   it?  Was it sort of a transcript of a court

 7   proceeding, or was it --

 8        A.   To me it looked like a -- like a witness

 9   statement, or like a -- it was a court transcript,

10   but it looked like it was a -- like something that

11   was like he was talking, and they were typing while

12   he was talking, is what it looked like to me.

13        Q.   Okay.  Did he show you his computer tablet?

14        A.   Yeah.

15        Q.   And did he show you any of the documents on

16   that tablet?

17        A.   No, just -- just pictures of --

18        Q.   And if you remember -- well, Ms. Bevel, may

19   I have the overhead, please.  I'm showing you a

20   document.  And the document is not really important.

21   Did the documents that he showed you of Mr. Lujan's,

22   or that had Mr. Lujan's name on them, did they have

23   the Bates stamp number like that if you remember?

24        A.   Oh, I don't remember.

25        Q.   Okay.  Mr. Mirka, are you a member of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8823

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 146

```
 1    SNM?

 2         A.   No.

 3         Q.   And did you review discovery from this

 4    case -- I think you said you knew other people that

 5    may be involved in this case.  Did you review

 6    discovery from anyone else involved in the case?

 7         A.   No.

 8         Q.   So when he said that Wild Bill runs the

 9    car, before he told you about Wild Bill, did you know

10    who that was?

11         A.   No.

12         Q.   And when he told you about the murders that

13    he was involved in, did you know about those murders

14    beforehand?

15         A.   No.

16         Q.   Why do you think he told you?  Why do you

17    think he told you about that stuff?

18         A.   I don't even know, other than we just

19    talked all the time from cell to cell.

20         Q.   Do you think you guys were sort of, I guess

21    friendly, because you were housed next to each other?

22         A.   Yes.

23         Q.   So did you and Mr. Chavez engage in just

24    friendly conversation together?

25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8824

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 145

```
 1        Q.   Was it in that context of the friendly

 2    conversation that he made those statements to you?

 3        A.   Yeah.

 4             MR. BECK:  Nothing further, Your Honor.

 5             THE COURT:  Thank you, Mr. Beck.

 6             Anyone else?  Mr. Cooper, do you have

 7    redirect of Mr. Mirka?

 8                      REDIRECT EXAMINATION

 9    BY MR. COOPER:

10        Q.   What kind of pictures did he show you?

11        A.   Just pictures of all the people of the

12    Syndicato Gang, and the videos of people getting beat

13    down, and I guess people going into houses and doing

14    whatever they were doing.  Some, I guess, were

15    getting murdered.  Videos that they have on the

16    tablet, is what he was showing me.

17        Q.   And they came from the tablet?

18        A.   Yeah.

19        Q.   Did Lujan share any discovery with you

20    anything from his tablet, or --

21        A.   No.

22        Q.   -- any paper?

23             MR. COOPER:  Okay.  Thank you.

24             THE COURT:  Thank you, Mr. Cooper.

25             Anybody else on the defense side have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8825

1    redirect?  Anybody else?

2           All right.  Mr. Mirka, you may step down.

3    Is there any reason that Mr. Mirka cannot be excused

4    from the proceedings?  Mr. Cooper?

5           MR. COOPER:  He may, Your Honor.

6           THE COURT:  All the defendants agree with

7    that?  Mr. Beck?

8           MR. BECK:  He may, Your Honor.

9           THE COURT:  All right.  You are excused

10   from the testimony.  Thank you for your testimony.

11   You're excused from the proceedings.  Thank you, Ms.

12   Gibson.  I appreciate your assistance this afternoon.

13          All right.  Mr. Castle, do you have another

14   witness?

15          MR. BECK:  Your Honor, before we get there,

16   it's concerning to me that what sounds like a

17   transcript of Mr. Lujan amongst the stack of papers

18   was in the prison cell with Mr. Chavez.  I think the

19   point of the tablets is that there is not paper

20   discovery in the cells with the defendants.  I don't

21   know what it is.  It sounds like it's probably a

22   2007, 2008, whatever time period that was,

23   transcript, which we've talked about in connection

24   with this motion.  But I don't know that we've been

25   provided -- I don't know what we've been provided in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8826

```
 1    reciprocal discovery.  But I'll note for the record,

 2    and for everyone here, that that concerns me, because

 3    it seems like it would be -- particularly a

 4    transcript of Mr. Lujan being interviewed by police,

 5    seems like the exact reason we have the tablets and

 6    not paperwork in this case.

 7            THE COURT:  Does anybody on the defense

 8    side know anything about this?  Was that news to you,

 9    Mr. Cooper?

10            MR. COOPER:  It is, Your Honor.

11            THE COURT:  I'm not sure what to do about

12    it.  Do you, Mr. Beck?  I don't know how to proceed,

13    unless we want to have, maybe the marshals talk to

14    the detention facility and check, and have them check

15    with Mr. Lujan and see what he's got.  What do you

16    think?

17            MR. BECK:  I think that's probably best.  I

18    mean, there is a lot of procedures, and a lot of work

19    has gone into those procedures to ensure there is not

20    paperwork in the cells, and for good reason.  So if

21    we have evidence that there is paperwork in the

22    cells, I think maybe the U.S. Marshals or whomever is

23    at the jail may look into that.

24            And I realize it may create some

25    consternation, because there may need to be some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8827

```
 1   system in place for the marshals to connect with the

 2   attorneys to see if there may be attorney-client

 3   privileged paperwork that the marshals or whomever it

 4   is --

 5              THE COURT:  Refresh my memory as to who

 6   represents Mr. Lujan.

 7              MR. BECK:  I believe that's Dean Clark,

 8   Your Honor.

 9              THE COURT:  That's Dean Clark.

10              Well, do the defendants have any problem

11   with me asking the marshals properly -- I mean, not

12   rush in and do everything to disrupt any sort of

13   attorney-client communications -- but talk to -- see

14   what he's got, and however they would go about

15   determining what he has?

16              MR. COOPER:  And, Your Honor, this is just

17   as regards the Chavez cell; correct?  Well, Chavez

18   and Lujan maybe.  But --

19              THE COURT:  I was thinking just Mr. Lujan.

20   But do you think there is any reason for it to be

21   Mr. Chavez?

22              MR. COOPER:  I think --

23              MR. BECK:  It's Mr. Chavez who had

24   Lujan's -- a stack of paperwork in his cell, so it is

25   Mr. Chavez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8828

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 149

```
 1              THE COURT:  Okay.

 2              MR. COOPER:  And, Your Honor, there

 3    probably ought to be a taint team.  I'm not sure, but

 4    I think there ought to be some protection, basically,

 5    as to what is there, what the individual sees and

 6    reads.  And I don't think that should be shared with

 7    anybody.

 8              THE COURT:  You've got one in place, right?

 9              MR. BECK:  I agree with that.  We do

10    have -- we have in the past, we can set that up

11    easily again.

12              THE COURT:  If this is all right, Mr.

13    Cooper, why don't I ask Mr. Beck to talk to the taint

14    team.  Let the taint team be in communication with

15    the marshal.  So they just take it from there, make

16    the request on behalf of the Court, that they start

17    procedures to see what he has.  And then the

18    attorneys are here, and they can talk to the

19    attorneys about any sort of attorney-client

20    communications that they've left, or something like

21    that.  Does that work for everybody?

22              MR. COOPER:  Judge, it works for me, but

23    I'm not sure I have standing.  It's not my client.

24              MR. BECK:  You are standing, Mr. Cooper.

25    That works for the Government, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8829

```
 1              THE COURT:  Does that work for Mr. Chavez'
 2    team to work that way?  We'll take it out of the
 3    hands of these U.S. Attorneys, turn it over to the
 4    taint team.  They'll be in communication with the
 5    marshals.  And y'all can be in communication with the
 6    marshals, too, and it just be normal facility
 7    procedures?  Will that work?
 8              MR. GRANBERG:  Yes, Your Honor.
 9              THE COURT:  All right.  So we'll go with
10    that, and deal with that.
11              Okay.  Ms. Armijo.
12              MS. ARMIJO:  Your Honor -- and I think that
13    this may be more something that's a bigger issue.  I
14    know that there was an operation yesterday at NMCD.
15    And Mr. Rudy Perez was in possession of a lot of
16    materials that he should not have been in possession
17    of, in violation of the Court's order.  And so I
18    think this is probably more widespread.  So
19    certainly, I think we may be addressing that issue
20    with the U.S. Marshal.
21              And we certainly would provide a taint team
22    and a taint agent to deal with these issues.  But
23    we've been hearing about this issue through numerous
24    sources, about people, defendants that are pending
25    charges, having things that they shouldn't have.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that was confirmed yesterday, at least as to one

2    former defendant.

3            THE COURT:  All right.  Well, if you turn

4    it over to the taint team, then they can make their

5    request to the marshals, and then the marshals can

6    just do their normal thing.  I think they've been

7    pretty good throughout the proceedings of coming up

8    with contraband and alerting us that they've got

9    problems.  So unless the Government thinks anything

10   different, we'll just -- the taint team will alert

11   the marshals, and they'll do their thing.

12           Mr. Cooper.

13           MR. COOPER:  I'm a little concerned about

14   the communication from this table to the taint team.

15   Because there is no reason to believe whatsoever that

16   my client has done anything; that Edward Troup has,

17   or anybody else sitting here.  So, I mean, because

18   Rudy Perez did it, everybody should -- I mean, I

19   understand that the Marshal Service and the facility

20   can do what they need to do for security purposes.

21   But I would hate for the people who sit at this table

22   to tell their taint team, "Go roust everybody."

23           THE COURT:  Is a member of your taint team

24   here in Las Cruces?

25           MS. ARMIJO:  No.  They are in Albuquerque.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8831

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 152

```
 1              MR. BECK:  Yeah.  It's attorneys in our
 2    office in Albuquerque.  And I think there is good
 3    reason for that.  I think that they've just wanted to
 4    keep the taint team separate from our -- I won't say
 5    our team, but my colleagues and I here.
 6              THE COURT:  What if we did this:  Do you
 7    suppose you could email them and ask them to call in
 8    at a particular time this afternoon, and see if this
 9    would work, Mr. Cooper, and then I talk to them.  And
10    if anybody wants to talk, they can talk, but we at
11    least have it on the record?
12              MR. BECK:  Sure.  Yeah, and I think the
13    taint team is a proper process.  I mean, I think
14    given what was found with Mr. Perez, and given what
15    was found -- or at least what we've heard testimony
16    about from Mr. Chavez, I think there is reason to
17    believe -- I respectfully disagree with Mr. Cooper --
18    I think there is reason to believe that it may be
19    more widespread.  But I think that the marshals and
20    the jails and the taint team have ways to deal with
21    that.  And we're not privy to their conversations
22    with the taint team.  But would I hope that the taint
23    team would be responsive, at least to them if they
24    had -- I mean, I could envision a case where the
25    attorneys certainly know that they provided their
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8832

```
 1   clients with attorney-client privileged materials,
 2   and, obviously, they don't need to disclose that.
 3   But I would think that -- I would think that this --
 4   I'm just hoping it doesn't create a big huge process.
 5   It gave me concern when I heard it today.
 6              So I think I'll send an email out and see
 7   if we can get the taint team on the phone.
 8              THE COURT:  Would that work for you, Mr.
 9   Cooper?
10              MR. COOPER:  Works fine, Judge.
11              THE COURT:  So we'll see if we can get them
12   on the phone, and we can communicate with them here
13   on the record.
14              MR. COOPER:  Thank you.
15              THE COURT:  All right.  You had your next
16   witness, Mr. Castle?
17              MR. CASTLE:  Yes, Your Honor.  Joseph
18   Otero.
19              THE COURT:  See if he's behind that door.
20              MR. BECK:  And, Your Honor, if we may have
21   a proffer of -- I'm guessing this is going to the
22   statements, the targeted response.  If we just may
23   have a proffer of what's expected.
24              THE COURT:  Before you bring him in, Ms.
25   Bevel -- do you want make a proffer, Mr. Castle?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8833

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 154 8834

```
1              MR. CASTLE:  That's fine.  And I provided
2     this information yesterday, but not to Mr. Beck, the
3     Government.
4              On March 21, 2018, the Government met with
5     Mr. Otero, and he made a statement which we've been
6     now provided with a 302 on.  They questioned him
7     about the murders of Rolando Garza and Frank
8     Castillo.  During the interview, Mr. Otero says what
9     he observed.  But then there is a singular statement
10    here that says, "Billy Garcia gave the orders to kill
11    Garza."  It's not attributed to anyone; whether he
12    overheard someone saying that; whether someone has
13    told him after the homicides that that happened, or
14    whether that's, you know, conjecture, I don't know.
15    Because the FBI agent that did this didn't attribute
16    it.  So that's where I'm going.
17             THE COURT:  All right.  Is that a
18    sufficient --
19             MR. BECK:  I just want to note -- I know
20    where the Court stands on this, but this is not a
21    statement against interests of some other defendant.
22    We don't know where this comes from.  So with all
23    other statements, it's hearsay, and we can't get it
24    in, we won't admit it at trial.  If it's not, then we
25    would get it in.  It sounds like a Rule 15 deposition
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8834

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 155

```
1    is about to take place in front of the Court.
2            THE COURT:  Well, are you going to try to
3    admit this statement?
4            MR. BECK:  The statement that's in there,
5    if he heard it, and it's admissible, then yes, we'll
6    get it in.  If the source of that makes it
7    inadmissible under the rules of evidence, then we
8    won't.
9            THE COURT:  Well, let me see if I can make
10   a determination of that now.  So I'll allow the
11   testimony.
12           All right, Ms. Bevel.
13           Mr. Otero, if you'll come up and stand next
14   to the witness box right here in front of you.
15   Before you're seated, my courtroom deputy, Ms. Bevel,
16   will swear you in.  If you'll raise your right hand
17   to the best of your ability there.
18                   JOSEPH NESTOR OTERO,
19       after having been first duly sworn under oath,
20       was questioned and testified as follows:
21                   DIRECT EXAMINATION
22           THE CLERK:  Please be seated.  Please state
23   your name for the record.
24           THE WITNESS:  Joseph Nestor Otero.
25           THE COURT:  Mr. Otero.  Mr. Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8835

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 156836

```
 1              MR. BECK:  Your Honor, may we approach?

 2              THE COURT:  You may.

 3              (The following proceedings were held at the

 4    bench.)

 5              THE COURT:  Does he have an attorney?

 6              MR. BECK:  That was my question.  That's

 7    why I wanted to approach.

 8              MR. CASTLE:  He doesn't have an attorney,

 9    but he indicates he's not a member of the SNM, is my

10    understanding, and that he just was a witness and

11    oversaw things and heard things.  That's it.  He's

12    unlike the other witnesses.  He's not saying he was

13    involved.  He's not saying that he was a member of

14    the SNM whatsoever.  So he's never been appointed an

15    attorney.  He's never been indicted on any of these

16    offenses at all.  And there is nobody who has

17    identified him.

18              MR. BECK:  I think you're right.

19              MR. CASTLE:  Nobody has identified him as

20    being a participant in any of these murders.

21              MR. BECK:  I think that's right.  That's

22    probably why it didn't raise red flags for us.  I

23    didn't know who they were going to call.  I think

24    that's my -- I saw he and Mr. Mirka were in the

25    targeted response.  It's been a busy couple days for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8836

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 157

```
 1   me, and I apologize for that.  I just wanted to make
 2   sure.  It sounds to me -- I think if we -- after what
 3   happened a couple weeks ago, obviously, I'm keenly
 4   aware of the unforeseen possibilities and the
 5   foreseeable possibilities of how this could go array.
 6              But my understanding of his involvement is
 7   along the lines of what Mr. Castle represents.  My
 8   understanding of his involvement in the SNM or not is
 9   along the lines of what Mr. Castle represents.  And I
10   don't -- I think --
11              THE COURT:  Here's the thing:  We can
12   always have a witness that commits perjury.  We don't
13   appoint a lawyer to every witness.
14              MR. BECK:  Sure.
15              THE COURT:  So, you know, y'all probably
16   know everything better than anybody, if this guy is
17   not a target of anything, you're not going to target
18   him at the present time, I guess what I would
19   propose -- see if this works -- is let's start it,
20   and if anybody, you're all officers of the court --
21   the minute we think this guy may be going somewhere,
22   let's just stop it.
23              MR. BECK:  That's fair.
24              THE COURT:  I'll get on the phone and try
25   to find him an attorney, and do it some morning or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8837

1    lunch hour before the trial.

2          MR. BECK:  And, again, I wasn't the one

3    that interviewed him on the 21st, but -- I think it

4    was an FBI agent.  And as far as I know it didn't

5    raise any red flags to us that we needed to get him

6    an attorney, right off the bat at least.  So I think

7    that's a fair way --

8          MR. CASTLE:  With the permission of the

9    Court, I'd like to use some leading questions, so I'd

10   like to get to the meat of the matter rather than --

11         MR. BECK:  We don't object to that.

12         THE COURT:  And I may just ask him if he's

13   comfortable here without an attorney.  We don't know

14   of any reason at the moment that he needs one.  But

15   you know, does he feel he needs one, and see what his

16   response is.

17         MR. BECK:  It's up to the Court, if the

18   Court is inclined.  I don't know if that's necessary,

19   if we keep it brief and lead him through questions.

20         THE COURT:  I won't ask it then.  But

21   Mr. Burke, okay?  Mr. Burke?  Is that row trapping

22   you?  Are you able to get by there, or are you just

23   stiff like me when I get up to walk after sitting

24   there?

25         MR. BURKE:  I apologize.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 159 8839

```
 1                  THE COURT:  Is it too close, or is it --
 2                  MR. BURKE:  No, it's fine.
 3                  THE COURT:  I've hurt everything possible
 4      playing college football, so it has to work for a few
 5      seconds.
 6                  MR. BURKE:  When the broke parts start
 7      moving.
 8                  THE COURT:  We're making an agreement up
 9      here that we're going to go ahead and let this guy
10      testify without an attorney.
11                  MR. BURKE:  Oh.
12                  THE COURT:  And we're all making an
13      agreement if anybody -- if he's about to say or get
14      himself in trouble -- and you were my conscience last
15      time with Mr. Garcia -- so everybody is going to
16      agree to speak up, and we'll stop this thing and
17      regroup when I can get him an attorney.  But we've
18      talked it through up here, and we don't see any
19      reason -- the Government is not targeting the guy and
20      we don't have any reason to think he's going to do
21      anything to hurt himself.  We're all making an
22      agreement, so --
23                  MR. BURKE:  Yes, sir.
24                  THE COURT:  Everybody fine?  And we'll
25      regroup up here if we think the guy is getting into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8839

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 160 8840

```
 1    trouble.  All right.  Let's see how it goes.
 2              (The following proceedings were held in
 3    open court.)
 4              THE COURT:  All right.  Mr. Otero.  Mr.
 5    Castle.
 6    BY MR. CASTLE:
 7         Q.   Good afternoon, Mr. Otero.  I'm just going
 8    to ask you some questions about some matters that
 9    happened in 2001 at the Southern New Mexico
10    Correctional Facility, okay?  Is that fine with you?
11         A.   (Witness nods.)
12         Q.   You have to say out loud so they can report
13    it.
14              THE COURT:  Why don't we move the chair up
15    a little bit and maybe bend that microphone a little
16    bit so it's close to your mouth, Mr. Otero.  There
17    you go.
18         A.   That's fine.  That's fine with me.
19         Q.   Mr. Otero, do you recall talking to law
20    enforcement types about what you observed or
21    overheard the night that Lujan and Garza were
22    killed -- or Looney and Pancho were killed?
23         A.   Yeah.
24         Q.   And do you remember when you talked to
25    them?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8840

```
 1          A.    That was right after the incident.

 2          Q.    Okay.  And then after that incident, did

 3     you also talk to them again recently in March, late

 4     March of this year?

 5          A.    As a matter of fact, I don't know the date,

 6     but yeah.

 7          Q.    Okay.  And so there was the time right

 8     after the incident and then here this year; is that

 9     right?

10          A.    (Witness nods.)

11          Q.    You have to say out loud.

12          A.    Yes, sir.

13          Q.    And nothing in between?

14          A.    No.

15          Q.    Okay.  I just want to make sure we're

16     talking about the same statements.

17                Now, when you talked to the agent in 2018,

18     do you recall it being an FBI agent you talked to?

19          A.    Yes, sir.

20          Q.    And was it a woman?

21          A.    Yes, sir.

22          Q.    And did she ask you some questions about

23     what you saw happen either the day before or the day

24     of the murders?

25          A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8841

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 162

```
 1          Q.    Now, did you hear individuals talking about
 2     the planning of the murder?
 3          A.    No.
 4          Q.    Did you hear individuals talking about how
 5     they were going to commit the murder?
 6          A.    No.
 7          Q.    Did you hear people talking after the
 8     murders were committed about how they had actually
 9     done the murder?
10          A.    Yes.
11          Q.    Okay.  And who was that that you heard
12     talking about that?
13          A.    Critter and Eugene, and -- I know him by
14     Trigger; I don't know his name.
15          Q.    Okay.  So when you heard those three people
16     talking, it was after the people had been killed?
17          A.    Yes.
18          Q.    And you hadn't heard them talking before
19     that, about the murders at least?
20          A.    No.
21          Q.    So when they're talking after the murder,
22     were they talking about how the whole thing was
23     planned, or were they talking more about how it
24     happened, or how they were going to get away with it,
25     or things of that nature?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8842

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 163 8843

1      A.   They were talking about -- they were joking

2    about it.

3      Q.   Okay.  And can you tell us what they said

4    and who said it?

5      A.   From what I remember, when we were locked

6    down, Critter was talking about:  "Hey Looney, hey

7    Looney; oh, yeah, you're dead, you're gone already,"

8    like in a fucking joke.

9      Q.   Okay.  And then who else made statements?

10     A.   Eugene.

11     Q.   Okay.  And what did Eugene say?

12     A.   Pretty much the same thing, joking around

13   about it.

14     Q.   And then I take it this happened within the

15   day or two, or the week after the murders?

16     A.   I think it was about maybe an hour.

17     Q.   Okay.  Same day as the murders?

18     A.   Yeah.

19     Q.   And then after that, did you ever talk to

20   any of the people involved in the murders again?

21     A.   No.

22     Q.   So did you hear some rumors afterwards

23   about what happened, and things of that nature?  Was

24   there like jailhouse talk?

25     A.   It was all over through the penitentiaries.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8843

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 164

```
 1          Q.   So I want to talk to you about a particular
 2   statement that you may have made to the agents in
 3   2018.   It says here that, "Nick Chavez, a/k/a T Bone,
 4   was the one that received the orders to kill Garza."
 5   Is that something you had heard by rumor?
 6          A.   I heard that through rumors.
 7          Q.   Okay.   And there is another statement here
 8   that Billy Garcia gave the orders to hit Garza.   Was
 9   that what you heard through rumors?
10          A.   Yes.
11          Q.   So you didn't hear Billy Garcia make that
12   statement to him?
13          A.   No.
14          Q.   And you didn't hear anybody else say that's
15   who gave the orders?
16          A.   No.
17               MR. CASTLE:   I don't have any other
18   questions.
19               THE COURT:   Thank you, Mr. Castle.
20               Anyone else want to do a direct -- Mr.
21   Burke, anybody -- of Mr. Otero?
22               All right.   From the Government, Mr. Beck,
23   cross-examination of Mr. Otero.
24               MR. BECK:   Yes, sir, thank you.
25               THE COURT:   Mr. Beck.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8844

```
 1                    CROSS-EXAMINATION
 2   BY MR. BECK:
 3        Q.   Good afternoon, Mr. Otero.
 4        A.   Yeah.
 5        Q.   You said you heard rumors about Nick
 6   Chavez, T Bone, I think receiving the orders.  Do you
 7   remember that?
 8        A.   Yes.
 9        Q.   Who did you hear those rumors from?
10        A.   Different individuals, people that weren't
11   even part of the clickas, or people just on the
12   compounds.
13        Q.   And rumors that Mr. Garcia was the one who
14   called the orders, who did you hear those rumors
15   from?
16        A.   The same thing, just through the grapevine
17   on the penitentiaries.
18        Q.   So would you say it was widespread, a lot
19   of people around the prison were saying that Billy
20   Garcia called the orders -- or ordered the orders to
21   murder Garza and Castillo?
22        A.   You could say a lot of people were saying
23   it.
24        Q.   Okay.  Now, I think you said what Critter
25   and Eugene said.  I think you mentioned that Trigger
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 166 8846

```
 1    also said something to you.

 2         A.    They said that if I ran my mouth, then I

 3    would be the next one in line.

 4              MR. BECK:  Nothing further.

 5              THE COURT:  Thank you, Mr. Beck.

 6              Mr. Castle, do you have redirect of Mr.

 7    Otero.

 8              MR. CASTLE:  Yes, very briefly.

 9                   REDIRECT EXAMINATION

10    BY MR. CASTLE:

11         Q.    Mr. Otero, I think there was a question

12    about whether you heard a lot of people say that

13    Billy Garcia ordered the hits.  Do you remember that

14    question?

15         A.    Yeah.

16         Q.    I think your answer, you went, "Hmm, yeah,

17    a lot of people."  Were there people that said other

18    people ordered the hits?

19         A.    What?

20         Q.    Were there different, like, rumors about

21    different people having ordered the hits?

22         A.    Not really.

23         Q.    What do you mean "not really"?

24         A.    Not really.  It came from the same people

25    that were around the compound.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8846

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 167

```
 1        Q.    Okay.  Were some people saying it came from
 2    Angel Munoz?
 3        A.    Possibility.
 4        Q.    Okay.  Were some people saying it came from
 5    Lino?
 6        A.    I don't know.
 7        Q.    Were some people saying it came from Leroy
 8    Lucero?
 9        A.    I don't even know the people.
10        Q.    Okay.  Do you remember all the people that
11    these rumors identified as being involved in the
12    murders?  I mean, can you list all the people whose
13    names were bandied about by the various inmates, as
14    to who participated in the murders of these two
15    people?
16             MR. BECK:  Objection, Your Honor.  I think
17    we're getting a little far afield.
18             THE COURT:  Can you tie this to the
19    statement?  It looks like it might be getting far
20    afield.
21             MR. CASTLE:  It was just they opened the
22    door to it.  It doesn't have anything to do with the
23    statement, Your Honor, I confess to that.
24             THE COURT:  Let's probably bring it to a
25    close, then.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8847

```
 1              MR. CASTLE:  Okay.  One last question.
 2       Q.   Is it a wise thing as an inmate to believe
 3   everything that you hear via the rumors?
 4       A.   Yeah, if you want to stay alive.
 5       Q.   I mean, you just be cautious, right?
 6       A.   Yeah, you look over your fucking shoulder
 7   every day.
 8              MR. CASTLE:  No more questions.
 9              THE COURT:  Thank you, Mr. Castle.  Anyone
10   else on the defense side?
11              All right.  Mr. Otero, you may step down.
12   Is there any reason Mr. Otero cannot be excused from
13   the proceedings?  Mr. Castle?
14              MR. CASTLE:  No, Your Honor.
15              THE COURT:  Everybody on the defense side
16   comfortable with that?
17              How about you, Mr. Beck, can he be excused?
18              MR. BECK:  He may, Your Honor.
19              THE COURT:  All right.  You are excused
20   from the proceedings Mr. Otero.  Thank you for your
21   testimony.
22              THE WITNESS:  All right.
23              THE COURT:  All right.  How do we proceed
24   next, Mr. Castle?
25              MR. CASTLE:  We'd like to call Leroy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8848

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 169

```
 1    Lucero.  He's out in the hallway.
 2              THE COURT:  All right.  Mr. Lucero, if
 3    you'll come up and stand next to the witness box on
 4    my right, your left, before you're seated, my
 5    courtroom deputy, Ms. Bevel, will swear you in.
 6                    LEROY LUCERO,
 7         after having been first duly sworn under oath,
 8         was questioned and testified as follows:
 9                  DIRECT EXAMINATION
10              THE CLERK:  Please be seated.  Would you
11    state your name for the record.
12              THE WITNESS:  Leroy Lucero.
13              THE COURT:  Mr. Lucero.  Mr. Castle.
14    BY MR. CASTLE:
15         Q.  Good afternoon, Mr. Lucero.  You and I have
16    never met; is that right?  You have to speak out
17    loud.
18         A.  No, sir.
19         Q.  Mr. Lucero, I want to talk to you a little
20    bit about a situation that happened at the Southern
21    New Mexico Correctional Facility in 2001, okay?  Were
22    you housed in that facility in 2001?
23         A.  Yes, sir.
24         Q.  And do you know when you were housed there?
25         A.  I don't remember the exact date.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8849

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 170

```
 1          Q.   Were you at that facility from the
 2   beginning of the year, all the way until three days
 3   before Pancho and Looney were killed?
 4          A.   Yes, sir.
 5          Q.   And did you -- do you recall just so we
 6   could get the time straight -- when Pancho and Looney
 7   were killed, were you outside the prison facility,
 8   you know, in the community?
 9          A.   Yes, sir.
10          Q.   And had you been there -- you'd been there
11   for three days; is that right?
12          A.   Yeah.  Yes, sir.
13          Q.   And so it sounds like to me that you heard
14   about the murders the day they happened?
15          A.   I heard about them like two days after.  I
16   seen it in the newspaper.
17          Q.   You were looking in the newspaper and saw
18   that they'd been killed?
19          A.   Yes, sir.
20          Q.   Now, my understanding is you knew that that
21   was going to happen before you left the facility; is
22   that right?
23          A.   I really don't feel comfortable answering
24   that without my lawyer present.  I'll answer this for
25   trial.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                               e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 171

1        Q.   Sir, do you know what a Kastigar letter is?

2        A.   I think so.

3        Q.   Right.  You and your attorney signed a

4    letter with the Government that said that you

5    wouldn't be held responsible for the words you said,

6    as long as you were truthful.  Do you recall that?

7        A.   Yes, sir.

8        Q.   And that includes your testimony today,

9    right?

10       A.   Yes, sir.

11       Q.   So I'm asking you again, you knew those

12   murders were going to happen before they happened; is

13   that right?

14       A.   I don't feel comfortable answering this.

15            MR. CASTLE:  I'd ask the Court to direct

16   the witness to answer the question.  He had the

17   opportunity to have counsel here.  And they do

18   have -- I could give the Court a copy of the Kastigar

19   letter, which protects him in this instance.

20            THE COURT:  Well, I did get a letter from

21   Mr. Fallick yesterday.  He said y'all had discussed

22   this.  I can get the letter out.  I don't have it in

23   front of me, but it basically said you and he had

24   discussed this.  You wanted to cooperate with the

25   Government, you wanted to testify, and that you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8851

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 172

```
 1   didn't need him to be here.  Have you seen that

 2   letter?

 3              THE WITNESS:  Yes, sir.

 4              THE COURT:  Are you aware?

 5              THE WITNESS:  Yes, sir.

 6              THE COURT:  Are you having a change of

 7   heart about that, or what is your concern?

 8              THE WITNESS:  I just -- you know, I'd like

 9   my counsel, you know, to guide me.  I don't know.

10              THE COURT:  It puts the Court and the

11   parties here in a difficult position, because we did

12   allow Mr. Fallick not to show up, because of his

13   letter indicating that y'all had talked and you

14   wanted to cooperate, and didn't need him.

15              THE WITNESS:  Yeah, I thought I would be

16   cooperating for trial.

17              MR. BECK:  Your Honor, maybe -- I don't

18   know if Mr. Fallick is reachable.  Maybe we could

19   take a break and call Mr. Fallick, and we could join

20   him.

21              THE WITNESS:  No, I'll answer it.  I'll

22   answer it.

23              MR. BECK:  Okay, that may resolve it.

24              THE COURT:  Let me just make sure I

25   understand the situation.  I guess I'd understood
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    from Mr. Fallick's letter -- and maybe I
 2    misunderstood -- that he was going to testify without
 3    the benefit of any immunity.  But it sounds like what
 4    Mr. Castle is saying is that he was provided a
 5    Kastigar letter.
 6              MR. BECK:  Sure, Your Honor.  I think
 7    Mr. Fallick was correct, in that I don't exactly know
 8    what he means by statutory immunity, but we did
 9    provide him with a Kastigar letter.  He is under
10    protection of the Kastigar letter.
11              THE COURT:  So if he testifies here today
12    truthfully, he has no danger of prosecution for
13    anything he says?
14              MR. BECK:  That's right.  That is the
15    intent and the language and the effect of the
16    Kastigar letter that he signed with his attorney.
17              THE COURT:  So as long as you testify
18    truthfully today --
19              THE WITNESS:  Yes, sir.
20              THE COURT:  -- even if you make statements
21    here today that would incriminate you that you could
22    be prosecuted for, you will not be prosecuted because
23    you're under immunity from the Government if you
24    testify truthfully.  Do you understand what I'm
25    saying?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8853

```
 1                THE WITNESS:  Yes, sir.

 2                THE COURT:  So I think, as long as you are

 3     truthful here, even though you may make statements

 4     that would incriminate you, you will not be

 5     prosecuted for them.

 6                THE WITNESS:  All right.

 7                THE COURT:  Mr. Castellano.

 8                MR. CASTELLANO:  I just want to add for the

 9     record, Your Honor, that I believe Mr. Lucero has

10     been here since 9:00 this morning.  He told us he's

11     been suffering from food poisoning and has thrown up

12     a few times today.  So he's not feeling his best.  So

13     I just want to let the Court know that may be part of

14     the problem.

15                And of course because his attorney is not

16     here, I want to make sure these are limited questions

17     related directly to the motion.

18                THE COURT:  All right.  Do you need a candy

19     bar or something like that?

20                THE WITNESS:  I tried eating -- no, I had

21     something bad on the way down, so --

22                THE COURT:  You don't need anything to get

23     your sugar up or anything?

24                Do you still want to try to reach

25     Mr. Fallick, Mr. Beck, or are you comfortable with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   him proceeding if Mr. Lujan (sic) is comfortable?
 2            MR. BECK:  I think as long as Mr. Lucero is
 3   comfortable, which it seems like --
 4            THE COURT:  Mr. Lucero is comfortable.
 5            MR. BECK:  I think, as long as he's
 6   comfortable, we may proceed.
 7            THE COURT:  All right.  Let's try it again.
 8   If you get uncomfortable -- we're getting close to
 9   break, we can take a break.
10            All right.  Mr. Castle.
11   BY MR. CASTLE:
12       Q.   Mr. Lucero, is there a roadside stand we
13   should all avoid?
14       A.   Yeah.
15       Q.   I'm just trying to relax you a little bit
16   here.
17            Mr. Lucero, the question was:  Did you know
18   that those murders were going to happen before they
19   occurred?
20       A.   Yes, sir.
21       Q.   And did you play a role in that?
22       A.   No, sir.
23       Q.   You didn't play a role in that in any way
24   whatsoever in the planning or the --
25       A.   No, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 176

```
 1        Q.   -- carrying out of those murders?

 2        A.   No, sir.

 3        Q.   Okay.  Now, after the murders took place,

 4   did you ever have an opportunity to discuss what

 5   happened with an individual by the name of Angel

 6   DeLeon?

 7        A.   No, sir.

 8             MR. CASTLE:  No, Angel DeLeon.  The peanut

 9   gallery corrected me.  They were wrong.

10        Q.   So did you ever have an opportunity to talk

11   to an individual by the name of Joe Gallegos?

12        A.   Just one time, brief, brief conversations.

13        Q.   Okay.  So let's just put a timeframe on

14   that.  When did that occur?

15        A.   I was at the North.

16        Q.   You were at PNM North?

17        A.   Yes, sir.

18        Q.   And Mr. Gallegos was there, obviously,

19   right?

20        A.   Yes, sir.

21        Q.   Did you know him from before?

22        A.   Yes, sir.

23        Q.   Were you close friends?

24        A.   No.

25        Q.   Had he shared secrets with you in the past?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8856

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 178857

```
 1        A.   We've talked.

 2        Q.   Okay.  What do you mean by that; you

 3   talked?

 4        A.   We belong to the same, same, same group.

 5        Q.   I know, okay.  So you're both members of

 6   the SNM at that time?

 7        A.   Yes, sir.

 8        Q.   And so what kinds of information would you

 9   exchange?  Would it be like:  Hi, how are you doing?

10   Maybe a group handshake or something like that?  Or

11   what would you exchange?

12        A.   It depends what was going on.  Sometimes it

13   got serious, sometimes it didn't, you know what I

14   mean?

15        Q.   Well, prior to this time at the PNM, had

16   Mr. Gallegos and you ever had a conversation where

17   either you or he admitted to each other that you'd

18   done something illegal?

19        A.   Yeah, a few times.

20        Q.   Okay.  Tell me a little bit about that.

21        A.   Just street talk:  I did this, we did this.

22   You know, it doesn't -- nothing, nothing.  I don't

23   remember what, but we discussed.

24        Q.   Okay.  So no specifics that you can recall?

25        A.   No specifics, no specifics.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8857

1    Q.   Because it's been a long time, right?

2    A.   It's been 17, 18 years.

3    Q.   So would it be pretty serious stuff you

4    guys talked about, like something as serious as

5    assaults or murders or things like that someone

6    committed?

7    A.   We discussed that.

8    Q.   Okay.  But you can't remember the details

9    of those?

10   A.   I can't remember the details.

11   Q.   Now, let's talk about the 2001 murders.  It

12   sounds like you had a brief discussion with him

13   sometime at the PNM where those murders came up; is

14   that right?

15   A.   Yes, sir.

16   Q.   And for those murders, as opposed to the

17   ones you can't remember any of the details on, for

18   the 2001 murders, can you remember any details of

19   what Mr. Gallegos told you?

20   A.   Yeah.  He asked me one time we were at the

21   North -- I know where you're going with this, I'll

22   tell you -- we were at the North, and we were in the

23   rec pens, and he asked me that day -- we were next to

24   each other, and there is other people around -- he

25   asked me if I would think that if Lorenzo would tell.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    And I said:  Where is this coming from?  And he told
 2    me that he seen him coming out of the cell.
 3         Q.   Okay.  Was that the whole conversation?
 4         A.   It's blurry, you know what I mean?
 5         Q.   Is that all you can remember about the
 6    conversation?
 7         A.   That's all I can remember.
 8         Q.   So who is Lorenzo?
 9         A.   An older guy.  He was in the unit where
10    this happened at.
11         Q.   Okay.  Is he an SNM member?
12         A.   Yes, sir.
13         Q.   So he asked you whether he would tell; is
14    that right?
15         A.   Yeah, if he would tell.
16         Q.   And what was your response?
17         A.   I wasn't too sure.
18         Q.   Okay.  And what did you think he was
19    talking about?
20         A.   I know what he was talking about.
21         Q.   Why did you know -- tell me how you knew
22    what he was talking about?
23         A.   The whole system knew what he was talking
24    about, you know.  If you would ask that question, he
25    would know.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8860

```
 1        Q.   Okay.  Was that the only bad thing that had
 2   ever happened in that cell block during the time that
 3   Mr. Gallegos had ever been there?
 4        A.   Yeah, that was pretty much one of the most
 5   bad things.
 6        Q.   So he didn't know to tell you it was about
 7   the 2001 murders, but you assumed that, it sounds
 8   like?
 9        A.   Yeah.
10        Q.   Did he then give you details about how the
11   murder happened?
12        A.   No.
13        Q.   Did he tell you who he committed the
14   murders with?
15        A.   No.
16             MR. BENJAMIN:  I apologize, Your Honor.  I
17   think that was a nonverbal answer, at least a low
18   answer.  That was a no, I understand.
19             THE COURT:  It showed up as a no.  Are you
20   talking the question:  Did he give you details about
21   what happened?
22             MR. BENJAMIN:  Yes, Your Honor.
23             THE COURT:  That one came with a "no."
24   It's on the transcript.
25        Q.   Did he tell you if anyone ordered him to do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8860

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8861

```
 1    it?

 2         A.   No.

 3         Q.   Did he tell you he did it alone or with

 4    someone else?

 5         A.   We didn't discuss that.

 6         Q.   Okay.  Did he tell you that he was

 7    concerned about Lorenzo telling on others, or on him?

 8         A.   On that situation.

 9         Q.   Okay.  So he didn't say:  Do you think

10    Lorenzo is going to tell on me?

11         A.   He just said "tell."

12         Q.   Okay.

13         A.   And I knew what he was talking about.

14         Q.   Well, we're just going to talk about words

15    themselves, okay?  So he didn't say:  Is he going to

16    tell on me, meaning Joe?

17         A.   No.

18         Q.   Okay.

19              THE COURT:  Mr. Castle, is this a good time

20    for us to take our afternoon break?

21              MR. CASTLE:  Yes.

22              THE COURT:  Because of our ex parte

23    meeting, Ms. Bean has been here longer than everybody

24    else here in the room, so I need to give her a break.

25              MR. CASTLE:  Yes, Your Honor.  And because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8861

```
 1    Mr. Lucero is unrepresented, it would make sense for
 2    all the parties to just leave him alone during the
 3    break.
 4              THE COURT:  All right.  Everybody agree not
 5    to talk to him during the break?  Everybody agree
 6    with that, agree on the defense side?
 7              How about you, Mr. Beck?
 8              MR. BECK:  Yes, Your Honor.
 9              THE COURT:  All right.  So no attorneys
10    will talk to you during the break.  Don't talk to
11    anybody during the break about your testimony.
12              All right.  We'll be in recess for about 15
13    minutes.
14              (The Court stood in recess.)
15              THE COURT:  All right.  Let's go back on
16    the record.  I think that we've got an attorney for
17    each defendant, all the defendants back in the
18    courtroom.  I think we're going to try to squeeze in
19    the taint attorney.  Ms. Armijo, did we give you the
20    Meet Me Conference Line to call?
21              MS. ARMIJO:  I did, Your Honor.  And I just
22    emailed it to him, and I told him to email me as soon
23    as he's on the line.
24              THE COURT:  Okay.
25              MS. ARMIJO:  While we're waiting for him --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8862

```
 1    oh, yeah, Mr. Lucero.

 2              THE COURT:  I don't think it will take too

 3    long.  If we can get the taint attorney on real

 4    quick, shouldn't take us too long, then bring in Mr.

 5    Lucero.

 6              MS. ARMIJO:  Your Honor, would it be

 7    possible -- and I think that in order to make this

 8    work, and not allow the defendants in this case to go

 9    back to their cells and destroy any evidence, we

10    would request that the marshal's office today, this

11    afternoon, do a search of the cells.  Because

12    otherwise these defendants know the issue, and

13    whether or not defense attorneys have emailed other

14    defendants who are pending trial have called and let

15    them know, so evidence could be destroyed.

16              THE COURT:  Well, let me do this:  Let's

17    let the taint attorneys make the request.  I'll let

18    you make your pitch to the taint attorneys, so

19    defendants can make their pitch; I may have a few

20    things to say, and then we'll let them communicate

21    with the marshals.

22              Does that satisfy you, Mr. Benjamin?

23              MR. BENJAMIN:  Yes, Your Honor.  I'll take

24    it up another time.

25              MS. ARMIJO:  And he's on the line.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              (Mr. Peter Eicker called in to the
 2      courtroom.)
 3              THE COURT:  All right.  Mr. Eicker, how are
 4      you today?  Mr. Eicker, how are you today?
 5              MR. EICKER:  Fine, Your Honor.
 6      BY THE COURT:
 7          Q.   I have been informed that you are the taint
 8      team, or at least the communication for the taint
 9      team, and so -- is that correct?
10          A.   That is, Your Honor.
11          Q.   So Mr. Eicker, what is taking place at the
12      moment is, rather than having the Government that's
13      here in the courtroom come back and advise you what
14      we're going to tell you, we're going to tell you in
15      open court on the record, and then you can make an
16      independent decision without either pressure from the
17      Government that's in the courtroom, or any
18      miscommunication.  And so you'll probably hear from a
19      number of us that are going to make some statements
20      and/or requests.  And then you can do with them what
21      you feel like you need to do with them.  Does that
22      seem fair?
23              MR. EICKER:  Yes, Your Honor.  I'm having a
24      little bit of difficulty hearing you.  So I want to
25      make sure I'm able to hear what everyone says.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  We're not doing real well

2    hearing you either.  All right.  Well -- all right.

3    Let's -- testing, testing.

4           All right.  So I'm going to go first.  We

5    just had some testimony from one of the witnesses

6    this afternoon, who indicated that he had seen some

7    material that I think everyone is in agreement would

8    normally be on the tablets, and would not be

9    circulating around freely in the detention facility.

10          The Government has made the request that

11   the Marshal Service -- or wants you to make the

12   request to the Marshal Service that all the

13   defendants and all the -- I guess, all the potential

14   witnesses, anyone connected with this case, that

15   their cells be searched to see if there is some

16   material that's floating around that relates to this

17   case that shouldn't be in hard copy, but should be on

18   tablets.

19          One of those that is particularly

20   implicated is Mr. Chavez', because the testimony was

21   that Mr. Chavez had the material in his cell.  So it

22   implicates one of the defendants.  And it, of course,

23   may implicate attorney-client information, if they

24   start going in and getting material.  So we have to

25   be mindful that many of the men that the Government

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8865

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 186866

 1   is requesting their cells be searched are represented

 2   by counsel, and so they may have materials there.

 3           The Government is also concerned that if

 4   it -- that the search take place immediately so that

 5   nobody destroys any of this sort of material, so that

 6   they have a sense as to what's floating around in

 7   violation of the Court's orders and procedures for

 8   this case.

 9           I think the defendants -- I'll see if I can

10   state the defendants' position -- is that just

11   because they found some material in Rudy Perez' cell

12   recently that shouldn't have been there, that doesn't

13   mean that their cells should be suspected of

14   containing similar material.  And they don't feel

15   that the search that's being requested should be as

16   broad.

17           Maybe Mr. Chavez', we now have some sworn

18   testimony that his cell contains some materials.  So

19   some limited searches are a possibility, but not the

20   broad ranging that the Government here in the

21   courtroom is requesting.

22           I think I felt, defendants felt, and I

23   think the Government agreed, that it would be better

24   if we communicated directly with you rather than them

25   coming back and telling you what they wanted and what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8866

1  the Court wanted.  It was better for you to hear it

2  from us, and then you make an independent decision as

3  to what you want to communicate and request of the

4  Marshal Service.

5          So let me stop and see how well I've done.

6  So, Ms. Armijo, if you want to now go ahead and make

7  your request of the taint team, as to what you'd like

8  for them to do and express your concerns about it;

9  then I'll give the defendants an opportunity to do

10  the same.

11          MS. ARMIJO:  Certainly, Your Honor.  I

12  believe that, at a minimum, we would want Christopher

13  Chavez' cell to be searched immediately this

14  afternoon.  If he could reach out to Joe Castro, or

15  whomever.  I don't know even know if Joe is working

16  today.  I'm trying to look at the deputy marshals who

17  are in the courtroom.  I'm not getting an answer.

18  But Joe Castro, about searching his cell.

19          We had information from an operation

20  yesterday that was conducted at Corrections, that one

21  of the defendants in the case that we just went to

22  trial on, Rudy Perez -- he was acquitted -- his cell

23  was searched.  And he had documents that he shouldn't

24  have had.  And I believe his statements in reference

25  to them was that he thought Maria had given them to

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



                                                                    1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

DNM 8867

 1   him, Maria being me, during the course of the trial.

 2   But they were clearly items that in the agent's

 3   estimation contained two confidential informants that

 4   he shouldn't have.

 5          And so there have been other informants

 6   that have said they have heard that the defendants

 7   that are pending trial have documents that they

 8   shouldn't have.

 9          So based upon those two, what we are

10   requesting is that a search be done, at a minimum, of

11   the defendants that are here pending trial to start

12   on Monday.  But more extensive, maybe even all of the

13   defendants that are pending trial or sentencing, that

14   cells be searched by the marshal's office this

15   afternoon, to determine if there are any documents

16   that they have they should not be in possession of.

17          And that would entail -- and I think you

18   have previously done that in reference to Joe

19   Gallegos' cell and Andrew Gallegos' cell.  I think

20   the FBI was involved in that, but maybe the marshals

21   took some of that.  So it would be similar to that

22   sort of review.  Our concern is immediately, with the

23   defendants that are here, that have now heard that

24   their cells may be searched.  And obviously most

25   importantly with Mr. Christopher Chavez' cell.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Thank you, Ms.
 2    Armijo.
 3              Mr. Benjamin, do you want to make your
 4    point to Mr. Eicker?
 5              MS. ARMIJO:  And, Your Honor, maybe we
 6    should have -- and I hate to do this again -- oh, I
 7    would ask that the marshals that are here pass this
 8    information along as to that, because that may, it
 9    may be that Mr. Eicker needs to confer with them, and
10    their advice as to what should be done.
11              THE COURT:  All right.  Mr. Benjamin.
12              MR. BENJAMIN:  May I have a second, Your
13    Honor?
14              THE COURT:  You may.
15              MR. BENJAMIN:  Thank you, Your Honor.
16              I think the first thought that comes to
17    mind, Your Honor, is I spoke with my client.  I
18    understand that he's at Dona Ana Detention Facility,
19    just for orientation purposes.  He tells me his cell,
20    I think, was subject to a -- probably a fairly
21    regular or somewhat scheduled search yesterday.  So I
22    think that my concern that I hear coming from the
23    Government table is, I believe, I think, therefore I
24    want a blanket search done across everybody, which
25    strikes me as exceedingly overreaching.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8870

```
 1            So I would ask that, one, if Mr. Eicker
 2   determines that some individual should be searched,
 3   that he contact the detention facility.  Because I
 4   think there has to be particularized, I guess, facts
 5   for each individual.
 6            I think the second thing that comes to
 7   mind -- and I point this out solely because of the
 8   way that the request is made by the Government --
 9   Rudy Perez is the only individual that this Court
10   probably doesn't have jurisdiction over at this point
11   in time, because, having been acquitted, he's now
12   back subject to the custody of, I think, the State of
13   New Mexico, or whoever else he is, unless there is
14   something I don't know about.  And so, as I said, I
15   bring that up solely because I think that we're
16   losing sight of the fact that these individuals are
17   in jail cells; the jails should be in charge of
18   determining when and how to search them, and not the
19   Government that is a party opponent at this point in
20   time.
21            Thank you, Your Honor.
22            THE COURT:  All right.  Thank you, Mr.
23   Benjamin.
24            Anybody else on the defense side want to
25   communicate anything to Mr. Eicker?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8870

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 191

```
 1               MR. EICKER:  Your Honor, I've got to
 2   clarify since I'm not there, questions directed to
 3   Ms. Armijo.  Who are the individuals who are in court
 4   today?
 5               MS. ARMIJO:  I couldn't hear him, Your
 6   Honor.
 7               THE COURT:  He's asking who the defendants
 8   are who are at court today?
 9               MS. ARMIJO:  Oh, does he want to write down
10   or can I send an email and include all the
11   defendants?
12               THE COURT:  Why don't you just go ahead and
13   state them on the record for Mr. Eicker.
14               MS. ARMIJO:  We have Andrew Gallegos,
15   Christopher Chavez, Arturo Garcia, Allen Patterson,
16   Billy Garcia, Edward Troup, and Joe Gallegos.  I
17   believe I already got Arturo Garcia.
18               MR. EICKER:  Thank you.
19               THE COURT:  All right.  Mr. Cooper.
20               MR. COOPER:  Judge, I don't think there is
21   any reason to believe that any defendants presently
22   sitting in this room have any such documents in their
23   possession.  And I would object to a blanket search
24   of all individuals.
25               I recognize that the facility and the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8871

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 192

```
 1    Marshal Service has an obligation to keep the place

 2    safe, you know, so if they're looking for something

 3    else, then that would be fine.

 4            But in this particular instance, just

 5    because one defendant is accused by somebody else of

 6    showing some discovery, doesn't mean that everybody

 7    else in this room has discovery.

 8            But in any case, Judge, there is a

 9    protective order in place allowing us to have

10    pleadings, letters, other items.  And I think the

11    only thing that they should not have is discovery

12    with a Bates number.  If it doesn't have a Bates

13    number, then it would not have come from the

14    Government, and I think they're allowed to have it.

15            So I would object to the taint team seizing

16    anything other than those items that have Bates

17    numbers on them.

18            And the protective order in this case, Your

19    Honor, was entered as Document 589.

20            THE COURT:  All right.  Did you hear all

21    that, Mr. Eicker?

22            MR. EICKER:  Yes, Your Honor.

23            THE COURT:  All right.  Anyone else on the

24    defense team that -- defense side that wants to speak

25    to Mr. Eicker?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8872

```
 1              All right.  Mr. Eicker, those are our
 2    concerns.  So I think we're going to leave it to you
 3    in communication with the marshals.
 4              Mr. Cooper.
 5              MR. COOPER:  Your Honor, I think that given
 6    the testimony he had talked to Leonard Lujan, I
 7    think, at a minimum, Leonard Lujan's cell ought to be
 8    searched as well.  And if we're going to do a blanket
 9    search of all these guys, probably ought to do a
10    blanket search of the cooperators as well.  They're
11    still defendants in this case.  So what's good for
12    the goose is good for the gander.
13              THE COURT:  All right.  Do you have
14    something further, Ms. Armijo?
15              MS. ARMIJO:  I do, Your Honor.  I don't --
16    as far as discovery, I think we should go by the
17    protective order, and that maybe Mr. Eicker should be
18    provided with the protective order.  The protective
19    order does not say Bates stamps.  It's information
20    that's provided by the Government.  And I know that
21    in the last trial, specifically when we were in a
22    hurry to get information to the defense quickly, we
23    provided information that did not have Bates stamps
24    on it.  We were just sending it to them without Bates
25    stamps, but with the agreement that it would still be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8873

```
 1    covered by the protective order.  So that's my

 2    concern about the Bates stamps thing.  Because there

 3    has been discovery that has gone out without Bates

 4    stamps.

 5          For instance, the thousand pages that we

 6    had discovered from Joe Sainato -- there is another

 7    reference to Joe Sainato box -- I think that we

 8    copied that here in court, and gave it to the

 9    defense, and it did not have any Bates stamps, but

10    clearly that's subject to discovery.

11          THE COURT:  All right.

12          MR. COOPER:  And I stand corrected with

13    regard to that, Your Honor.  Those items are covered

14    by the protective order.  But unsealed pleadings,

15    correspondence from lawyers, correspondence between

16    family members and the defendants, none of that

17    should be seized.  They have a right to have all of

18    that information.

19          And Judge, we'd be happy to send Mr. Eicker

20    the list of cooperators, and maybe -- I don't know if

21    we know where they're all located, but we can send

22    them by email later today, a listing of the

23    cooperators, if the Court will include that in your

24    order to the taint team.

25          MS. ARMIJO:  And, Your Honor, if we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8874

```
 1   doing that, then we need to include everybody.  And
 2   that opens it up quite wide.  I think the most
 3   important part is the defendants that are here
 4   pending trial.  But I think that we would have to
 5   then include everybody.  And Mr. Eicker is not privy
 6   to the status of everybody, who they are, or where
 7   they are at.  And, as you know, between the two
 8   cases, that would be over 40 people.
 9               THE COURT:  Why don't we do this:  You
10   prepare your list, Mr. Cooper, and send it to
11   Ms. Bevel.  She'll send it to Mr. Eicker.  And if you
12   have additional people you want to send -- or I
13   guess, you're not going to have any additional
14   people, right?
15               MS. ARMIJO:  Well, yes.  If we're going to
16   do all of the United States' cooperators, I would
17   have all the people that are pending sentencing, that
18   were just convicted:  Mr. Baca, Mr. Sanchez, all
19   those people, and plus the people in the RICO case.
20   So we would have an extensive list.
21               THE COURT:  All right.  Well, if you want
22   an additional list, send it to Ms. Bevel, and Ms.
23   Bevel will send it to Mr. Eicker.  So y'all can route
24   any additional names through her.
25               All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8875

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8876

```
 1                 MR. COOPER:  Thank you, Judge.

 2                 THE COURT:  All right.  If there is nothing

 3      else for Mr. Eicker, Mr. Eicker, we appreciate it.

 4      And thank you for your assistance on this matter.

 5                 MR. EICKER:  Thank you, Your Honor.  And

 6      I'll follow up and act accordingly.

 7                 THE COURT:  All right.  Thank you, Mr.

 8      Eicker.

 9                 All right.  Let's bring Mr. Lucero back in,

10      and see if we can finish his direct examination.

11                 I am at the present time, editing a memo

12      that's going to come from Ms. Wild.  Her computer is

13      working again, but it did crash for two hours, so I'm

14      trying to get that edited, so that we can get that to

15      you, and it will have some details of how we're going

16      to select the jury.  And you can then see if you have

17      any further questions after I get this to you.

18                 All right.  Mr. Lucero, if you'd return to

19      the witness box.  I'll remind you that you're still

20      under oath.

21                 All right.  Mr. Castle, if you wish to

22      continue your direct examination of Mr. Lucero, you

23      may do so at this time.

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8876

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8877

```
 1                     LEROY LUCERO,

 2         after having been first duly sworn under oath,

 3         was questioned and testified as follows:

 4                     DIRECT EXAMINATION (Continued)

 5  BY MR. CASTLE:

 6         Q.   Mr. Lucero, you indicated that you'd also

 7  spoken to an individual by the name of Christopher

 8  Garcia, otherwise known as Critter, after the

 9  murdered happened?

10         A.   Yes.

11         Q.   When did that happen?

12         A.   At the North.

13         Q.   When, though?  When did it happen?

14         A.   Years -- I'm not going to remember years.

15  I don't remember.

16         Q.   Well, when did you go back into prison

17  after you were released?

18         A.   I've been back and forth, back and forth

19  for a lot of years, you know.

20         Q.   Okay, so --

21         A.   I remember the incident, but I can't

22  remember the year.

23         Q.   Okay.  Do you recall where at the North?

24         A.   N pod, 2B.

25         Q.   N pod, as in Nancy, and then 2B?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8877

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 198

```
 1          A.    2B; N pod, 2B.

 2          Q.    And tell us a little bit about the

 3   discussion you had with Mr. Chavez.

 4          A.    We just talked.

 5          Q.    Okay.  But what did you say and what did he

 6   say?  Give us some details, if you could.

 7          A.    I don't -- I don't remember.

 8          Q.    Well, do you know who started the

 9   conversation?

10          A.    No.

11          Q.    Do you know why you guys had this

12   conversation?

13          A.    Hum-um.

14          Q.    Is that a no?

15          A.    That's a no.

16          Q.    Did Mr. Chavez -- was it about the 2001

17   murders even?

18          A.    No.

19          Q.    Okay.  So you never had a conversation with

20   Christopher Chavez about the 2001 murders at all?

21          A.    I don't think so.

22          Q.    That would be something you'd remember; is

23   that right?

24          A.    Yes.

25          Q.    What's that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8878

```
 1          A.   Yes.

 2          Q.   I mean, murders are a pretty big thing; is

 3   that right?

 4          A.   Yes.

 5          Q.   Mr. Lucero, did you ever know that you were

 6   a suspect in the murders, the 2001 murders?

 7          A.   No, sir.

 8          Q.   You never learned that at all, ever, from

 9   day one until today?

10          A.   No, sir.

11          Q.   No one has ever said that anybody suspected

12   you of being involved?

13          A.   No, sir.

14          Q.   Were you ever worried about being accused

15   of being part of the murder?

16          A.   No.

17          Q.   Did you say no?

18          A.   I said "no."

19          Q.   Have you ever had a conversation with

20   anyone in which they said that Billy Garcia ordered

21   the murders, the 2001 murders?

22          MR. BECK:  Objection, Your Honor.  I think

23   we're getting away from the statements that we're

24   trying to see about, and getting into a fishing

25   expedition.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8879

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 200880

```
 1              THE COURT:  How does this tie to the
 2    admissibility of the statements, Mr. Castle?
 3              MR. CASTLE:  If the answer was yes, I was
 4    going to ask if it was anybody in this room.
 5              THE COURT:  All right.  Overruled.
 6    Q.   Did you have a conversation with anyone
 7    after the murders, after the 2001 murders, in which
 8    an individual told you that Billy Garcia ordered the
 9    murders?
10    A.   No, sir.
11    Q.   And just -- so just to be clear, did you
12    ever have a discussion with a person by the name of
13    Allen Patterson about what happened in the 2001
14    murders?
15    A.   No, sir.
16    Q.   I know sometimes you know what I'm going to
17    say before I finish, but you have to wait, because
18    it's a really hard job up here, she can only type
19    down what one of us is saying, okay?
20              Edward Troup, do you know a person by that
21    name?
22              MR. BECK:  Your Honor, objection.  I mean,
23    this is a deposition.  This is a quintessential
24    deposition.
25              THE COURT:  How do you tie this to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8880

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 201

```
 1    statement I've got to consider?

 2            MR. CASTLE:  I just want to make sure --

 3    well -- I'll withdraw the question.

 4            THE COURT:  All right.

 5            MR. CASTLE:  I have no other questions.

 6            THE COURT:  Thank you, Mr. Castle.  Anyone

 7    else on the defense side that has -- Mr. Benjamin?

 8            MR. BURKE:  No, Your Honor.

 9            THE COURT:  Mr. Burke?

10                      EXAMINATION

11    BY MR. BENJAMIN:

12        Q.   Good afternoon, sir.  My name is Brock

13    Benjamin.  I represent Mr. Joe Gallegos.

14            You had said that in the rec pens Mr.

15    Gallegos had said -- I'm sorry, let me start over

16    because I'm confusing myself.  You had said that you

17    and Mr. Gallegos, Mr. Joe Gallegos, were in the rec

18    pens one day; correct?

19        A.   Yes.

20        Q.   And he told you you think Lawrence Torres

21    would tell; correct?

22        A.   He asked me if I thought Lorenzo Torres

23    would tell.

24        Q.   Okay.  And I apologize if I butchered that

25    on that.  This was at the North; correct?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yes.

 2          Q.   And what pod were you in at the North at

 3    this time?

 4          A.   I was in, I think 2B, somewhere in 2B.

 5          Q.   And do you know what year this was?

 6          A.   No, sir, I don't remember years.  It's so

 7    long ago I won't remember years.

 8          Q.   What years were you at the North?

 9          A.   A lot of years.

10          Q.   Okay, but --

11          A.   I don't remember.  I just can't remember

12    the year.

13          Q.   Do you know what year you went to the

14    North?

15          A.   I've always been at the North.

16          Q.   Okay.  But you don't know -- and when you

17    say you've always been at the North, is that the only

18    Department of Corrections facility you've been in?

19          A.   No, I've been in other ones, but it seems

20    like we always land up there.  So, you know, years --

21    I don't look at years.  I never thought of years.

22    You know, I know I'm there.

23          Q.   Okay.  So were you always in 2B when you

24    were at the North?

25          A.   I've been in all -- in almost every unit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 203883

```
 1        Q.   Okay.  Was it summer or winter, do you
 2   think?
 3        A.   I don't remember.
 4        Q.   Did Billy Garcia -- was Billy Garcia with
 5   you at the North?
 6        A.   Yeah.
 7        Q.   Okay.  And do you know where you were at
 8   when Billy Garcia was at the North?
 9        A.   No.
10        Q.   Was Billy Garcia in the same pod with you
11   at the North?
12        A.   We would the run into each other in the rec
13   pens.  That's about it, you know.  I don't know where
14   he lived or what, or no, I don't remember.
15        Q.   Okay.  And did Billy Garcia make any
16   statements like the one that you're saying Mr.
17   Gallegos made?
18        A.   No, sir.
19        Q.   Okay.  And was Lorenzo Torres with you at
20   the North when Joe Gallegos made this statement to
21   you?
22        A.   I don't recall.
23        Q.   I apologize, but what I'm going to ask you
24   for is, do you think he was there, or do you think he
25   was not there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8883

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 204 of 280

```
 1          A.   I don't remember.
 2          Q.   If Joe Gallegos was asking you that
 3    question -- and you said that he just asked you this
 4    question, right?
 5          A.   Yes.
 6          Q.   Do you know why he just brought that up?
 7          A.   Probably on his mind.
 8          Q.   Okay.
 9          A.   I don't know why he brought it up.
10          Q.   I'm sorry?
11          A.   I don't know why he brought it up.
12          Q.   Okay.  And I guess what I should have asked
13    probably is, do you think he saw Lorenzo Torres that
14    day when he asked you that then?
15          A.   No, I don't -- I can't say if he did or
16    didn't.  I'm not -- you're asking me a question, and
17    I answered it.
18          Q.   And you had said you -- and correct me if
19    this is wrong -- but you had said that you assumed
20    that Joe Gallegos -- or you assumed Joe Gallegos was
21    talking about the 2001 murder because the whole
22    system knows, I think was your wording, right?
23          A.   What?
24          Q.   Correct me if I'm wrong, but I understood
25    you to say that the statement that Joe told you, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8884

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 205 8885

1    assumed that that was about the 2001 murder, because

2    the whole system knows.

3         A.   The whole system knew, you know, it's --

4    that's it.

5              MR. BENJAMIN:  Pass the witness, Your

6    Honor.

7              THE COURT:  All right.  Thank you, Mr.

8    Benjamin.

9              Any other defendant have direct examination

10   of Mr. Lucero?

11             MR. BURKE:  No, Your Honor.

12             THE COURT:  All right.  Mr. Beck.  Do you

13   have cross-examination of Mr. Lucero?

14             MR. BECK:  Yes, Your Honor.

15             THE COURT:  Mr. Beck.

16                  CROSS-EXAMINATION

17   BY MR. BECK:

18        Q.   Mr. Lucero, before you left the Southern

19   New Mexico Correctional Facility in 2001, were you

20   looked upon as maybe one of the higher ranking SNM

21   members at that time?

22        A.   I was one of the older ones there that had

23   been in the system longer than most of them.

24        Q.   And did you know that Billy Garcia was

25   coming down to the Southern New Mexico Correctional

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8885

 1    Facility?

 2         A.   Yes, sir.

 3         Q.   Was Billy Garcia going to be the leader,

 4    the highest ranking SNM member at the Southern New

 5    Mexico Correctional Facility when you got down

 6    there -- when he got down there?

 7              MR. CASTLE:   Objection, lack of foundation,

 8    Your Honor.

 9              THE COURT:   Well, let's see what he has to

10    say.  I hope at some point somebody will provide a

11    foundation for this.

12         A.   Yes, sir.

13         Q.   As an older SNM member, in 2001, were you

14    well aware of the ranks of the other SNM members

15    around the state?

16         A.   Yes, sir.

17         Q.   Were you well aware of Billy Garcia's rank

18    as one of the leaders of the SNM at that time?

19         A.   He's been in it for a lot of years.

20         Q.   And is that how you knew that he would be

21    the highest ranking member at the Southern New Mexico

22    Correctional Facility when he got down there?

23         A.   Yes, sir.  We know -- everybody knows who

24    Billy is.

25         Q.   I think you said that when Mr. Gallegos

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8886

 1    asked you about Lorenzo Torres, you knew he was

 2    talking about the 2001 murders; is that right?

 3        A.   Yes, sir.

 4        Q.   Did you know Frank Castillo or Rolando

 5    Garza?

 6        A.   Yes, I did; I knew both of them.

 7        Q.   Did you know what might happen to them when

 8    you left?

 9        A.   Yes, sir.

10        Q.   And after you left, did you find out what

11    happened to them?

12        A.   Yes, I did.

13        Q.   And is that why you knew what Joe Gallegos

14    was saying when he said:  Do you think Lorenzo Torres

15    will tell?

16        A.   I did.

17             MR. BENJAMIN:  Objection, speculation.

18             THE COURT:  Overruled.

19        Q.   Was Lorenzo Torres an SNM member?

20        A.   Yes, sir.

21        Q.   And it sounds to me like -- at least from

22    this statement, it sounds like you thought Joe

23    Gallegos was worried that Lorenzo Gallegos (sic)

24    might tell what happened with the murder; is that

25    right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 208888

```
 1              THE COURT:  Mr. Benjamin?

 2              MR. BENJAMIN:  Your Honor, I think he

 3   misspoke as he was asking his question.  It was

 4   Lorenzo Torres or Lawrence Torres, I'm sorry.

 5              MR. BECK:  Let me re-ask that.  It was a

 6   bad question anyway.  I don't mean to confuse you.

 7       Q.   Sounds to me like you thought Mr. Gallegos

 8   was asking you about Lorenzo Torres, or Lawrence

 9   Torres, because he thought he might tell?

10       A.   Yeah.

11       Q.   He thought he might tell about what

12   happened with the 2001 murders, right?

13       A.   Yes, sir.

14       Q.   Because, as an SNM member, although you're

15   not supposed to tell, sometimes that can happen,

16   right?

17       A.   Yes, sir.

18       Q.   So is it fair to say that he ran a risk

19   even asking you if Lawrence Torres would tell, he ran

20   a risk that some day you might go ahead and say that

21   he asked you that question?

22       A.   Yeah, it could happen.

23       Q.   Because although you don't expect SNM

24   members to tell, you know that there is a possibility

25   they will?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8888

```
 1        A.    Possibility.
 2        Q.    Now, I know Mr. Castle asked you about
 3   talking with, I think you said Christopher Garcia,
 4   Critter, but it's Christopher Chavez, Critter, right?
 5        A.    Yes.
 6        Q.    And it sounds like at least you don't
 7   recall right now talking with him after the murders;
 8   is that fair to say?
 9        A.    It's -- it comes and goes.  Like I said, I
10   blocked it out of my mind for a lot of years.  You
11   know, didn't have no part of it, so I didn't -- I
12   forgot.
13        Q.    And I'm not testing your memory.  We
14   haven't provided you any documents to refresh your
15   memory in the last couple of days, have we?
16        A.    No, sir.
17        Q.    And so when you're trying to remember these
18   things, even remembering what pod you're in when,
19   that's pretty difficult for you; is that fair to say?
20        A.    Yes, sir.
21        Q.    But if we looked at a document that would
22   show your location history in the New Mexico
23   Corrections Department, would that help you?
24        A.    Yeah, then I could probably go and, you
25   know -- because I've been through the federal system,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8889

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8890

```
 1   I've been through the state system, here, there.  I
 2   just -- a lot of things have happened.
 3        Q.   And I guess in recalling these
 4   conversations it's much easier to think about who was
 5   there and what was said, than where you were and what
 6   day or what year; is that fair to say?
 7        A.   Yes.
 8        Q.   So getting back to Mr. Chavez, is it fair
 9   to say that, as we sit here right now, you don't
10   remember talking to him after the murder, right?
11        A.   I do recall him saying something one time
12   that he thought I was going to tell on them guys,
13   Looney, that they were going to do it.  And then he
14   asked me one time, he asked me, he asked me if I
15   thought he was going to -- if he thought I was going
16   to tell Looney before I left that they were going to
17   get him.
18        Q.   And I guess that was the sort of question
19   that I was getting to.  Did you talk with Mr. Chavez
20   about -- and not even about the murders, but did you
21   and Mr. Chavez --
22        A.   Yeah.
23        Q.   -- interact about the murders before you
24   left?
25        A.   Yeah.  He asked me one time if it was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8890

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8891

```
 1   right.
 2        Q.   He asked you if it was right?
 3        A.   He said, "What should I do, carnal?"
 4             I said, "You know what you have to do."
 5        Q.   And is that because you all knew about the
 6   murders that were going to happen once Billy Garcia
 7   got down there?
 8        A.   Yes, sir.
 9        Q.   And as SNM members, do you all talk with
10   each other out in the yard in casual conversation
11   often?
12        A.   Yes.
13        Q.   Just like maybe now you talk with other
14   friends or associates, or people like that?
15        A.   Yes.
16        Q.   And in those, do you sometimes talk about
17   gang business?
18        A.   The majority of time that's what it is.
19        Q.   The majority of time you talk about gang
20   business?
21        A.   Yes.
22             MR. BECK:  May I have a moment, Your Honor?
23             THE COURT:  You may.
24             MR. BECK:  Nothing further, Your Honor.
25             THE COURT:  Thank you, Mr. Beck.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8891

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8892

```
 1              Mr. Castle, do you have redirect of Mr.
 2    Lucero?
 3                    REDIRECT EXAMINATION
 4    BY MR. CASTLE:
 5         Q.   The prosecutor just asked you some
 6    questions about you knowing whether Billy Garcia was
 7    going to come to that facility before he got there.
 8    Do you recall that question?
 9         A.   Yeah.
10         Q.   How did you learn that?
11         A.   Angel Munoz told me.
12         Q.   And how did you get that information from
13    Angel Munoz?
14         A.   I spoke to him on the telephone.
15         Q.   And so when would this have occurred in
16    relation to the murders?
17         A.   Prior to them.  I don't remember.  I can't
18    remember exact dates.  I'm not good with dates.
19    Dates, times, I don't remember.  It happened.
20         Q.   Would it have been a month before, a day
21    before, a week before, a year before?
22         A.   Could have been two weeks, a week.
23         Q.   And why was Mr. Munoz having a conversation
24    with you about the murder -- or about Mr. Garcia
25    coming down?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8893

1       A.   He never mentioned nothing about murders.

2  He just mentioned that he was going down there.

3       Q.   Well, do you recall being on the phone with

4  Mr. Munoz, and asking him about whether these two

5  people should be killed --

6       A.   No.

7       Q.   -- and him telling you to get it done?

8       A.   No.

9       Q.   That never happened?

10      A.   Never happened.

11      Q.   Do you know a man by the name of Lino

12 Giron, Avelino Giron, known as Lino?  His nickname is

13 Sexy Walker?

14           MR. BECK:  Your Honor, I'm going to object

15 to outside the scope of cross and getting away from

16 the statements.

17           THE COURT:  How is this related to the

18 statements, Mr. Castle?

19           MR. CASTLE:  Well, it's related to what

20 they opened the door to, Your Honor.  And they're

21 trying to create an atmosphere here.  And you know,

22 all I'm doing is confining it to the questions they

23 asked him.  So it's not beyond the scope of cross.

24           THE COURT:  Well, I guess I think I've got

25 a pretty good picture of the context for the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8893

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8894

1    statements, so I'm going to sustain the objection.

2         Q.   Well, were you the shot caller at Southern

3    before you left?

4         A.   No.

5         Q.   You indicated that one of the problems

6    you're having is that after these murders happened,

7    you blocked them out of your mind; do you recall

8    that?

9         A.   There is no need for me to remember shit

10   like that, unless you -- you know, I remember it,

11   then I'll remember.

12        Q.   Okay.  Well, you've had an opportunity in

13   the last month to read all your statements, haven't

14   you?

15        A.   I don't have no statements.

16        Q.   Your lawyer didn't go through them with

17   you?

18        A.   I don't have no statements.

19        Q.   Okay.  I'm asking you, the written

20   materials -- excuse me, let me finish -- the written

21   materials where people wrote down what you said, no

22   one showed you them or talked to you about them at

23   all?

24        A.   No, sir.

25        Q.   Do you recall being interviewed by any FBI

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8894

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8895

```
 1   agents in January of this year?
 2        A.   Yeah, but they never -- they never showed
 3   me documents.  I just told them what I told them.  As
 4   I remember it, I'll say it, you know.
 5        Q.   Do you recall them saying:  You told us
 6   this before, and is this still true?
 7        A.   Yeah, because I remembered it, and then,
 8   you know, I remember and then I'll forget.  Because I
 9   don't have -- you know, it doesn't suit me.
10        Q.   You don't have what?  I'm sorry?
11        A.   I don't remember.
12        Q.   Okay.  Is there a particular reason?
13        A.   I just don't.  I just -- I forget things.
14        Q.   Now, you made the statement that when you
15   talked to Mr. Chavez, he said to you -- or he said to
16   you that he thought you were going to tell on him.
17   Do you recall him saying that?
18        A.   He thought I was going to tell Looney that
19   something was going to happen to him.
20        Q.   Okay.  Did he tell you he thought you were
21   going to tell on him about the murders, you know, to
22   authorities, police, things like that?
23        A.   No.
24        Q.   Why did he want to know if you -- did he
25   tell you why he wanted to know, or why -- I'm sorry,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 216

```
 1    let me rephrase that.
 2            Did he tell you why he wanted to know
 3    whether you had told Looney before you left?
 4        A.   I didn't say that.
 5        Q.   Okay.  Tell us in your own words.  What was
 6    the conversation?
 7        A.   I already said what I -- I already told you
 8    what I said.
 9        Q.   Okay.
10        A.   How it went down.
11        Q.   Just bear with me.  Say it just one more
12    time.  What did he say to you?
13        A.   What?
14        Q.   What did Mr. Chavez say to you?
15        A.   He just -- he just -- it was a
16    conversation.  He came and asked me, he told me, "I
17    thought you were going to tell Looney that we were
18    going to do it."  All right.  And that was it.  That
19    was the end of the conversation.
20        Q.   Okay.  So you knew --
21        A.   I didn't know.
22        Q.   Well, let me ask you then, okay?  So you
23    knew that Mr. Garza was going to be killed before you
24    left the prison?
25        A.   They all knew, everybody knew, except them
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8896

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8897

```
 1    two.
 2         Q.   And Mr. Chavez was saying:  Did you tell
 3    him about this before you left?
 4         A.   Mr. Chavez didn't say that.  He just -- the
 5    word -- what he says was:  "I thought you were going
 6    to tell Looney."
 7         Q.   Okay.
 8         A.   And that was it.
 9         Q.   But regardless of what Mr. Chavez told you,
10    he didn't tell you the specifics of how the murder
11    happened, did he?
12         A.   No.
13         Q.   Or how the plan was hatched?
14         A.   No, no, no, no.
15         Q.   Or who hatched the plan?
16         A.   No.
17         Q.   And at no time were you told how the plan
18    was hatched; is that right?
19         A.   No.
20         Q.   Or the details about how it was going to
21    occur?
22         A.   No.
23         Q.   Or who was going to carry it out?
24         A.   No.
25         Q.   Or who was going to plan it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8897

```
 1        A.   No.

 2             MR. CASTLE:  Thank you.

 3             THE COURT:  Thank you, Mr. Castle.

 4             Any other defendant have redirect of Mr.

 5   Lucero?  All right.  Mr. Lucero, you may step down.

 6   Is there any reason that Mr. Lucero cannot be excused

 7   from the proceedings?  Mr. Castle?

 8             MR. CASTLE:  No, Your Honor.

 9             THE COURT:  Any other defendant object?

10   Mr. Beck?

11             MR. BECK:  No, Your Honor.

12             THE COURT:  Can he be excused?

13             MR. BECK:  He may, Your Honor.

14             THE COURT:  All right.  Mr. Lucero, you are

15   excused from the proceedings.  Thank you for your

16   testimony.

17             All right.  Do we want to go back to our

18   motion, or is there something else we need to address

19   before we keep plowing ahead on the motions?

20             MR. CASTLE:  We're through with witnesses,

21   Judge.

22             THE COURT:  All right.  Then let's go to

23   the notice to the Court and a request for order

24   compelling disclosure and motion to strike certain

25   witnesses.  This is a motion that I think all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8898

1   defendants filed.  But it looked like Mr. Cooper, Mr.

2   Castle, you took the lead on this motion, if I'm not

3   mistaken.

4             MR. CASTLE:  Yes, Your Honor.

5             THE COURT:  All right.  Mr. Castle.

6             MR. CASTLE:  Some of this has been

7   resolved, and so if it's all right with the Court,

8   I'd like to go paragraph by paragraph so we can cover

9   it all.

10             THE COURT:  All right.

11             MR. CASTLE:  Does the Court want me to stop

12   at the end of the paragraph?

13             THE COURT:  Yeah, that would probably be a

14   good idea.

15             MR. CASTLE:  Paragraph 1 talks about an

16   interview that Mr. Lujan had two years ago, which was

17   tape-recorded on December 3.  After the filing of

18   this motion, I believe the Government at least tried

19   to produce that to us.  It was in a format we

20   couldn't use, and I think that's being worked out or

21   has been worked out.  The person that knows is not

22   here.

23             THE COURT:  Is it Mr. Acee?  That's the one

24   that --

25             MR. CASTLE:  Well, I was speaking more of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8899

1    the people that helped me in this case, whether it's

2    been worked out, and we can now listen to it and

3    review it.  It's been produced.  I would just note

4    that it's an hour-and-a-half interview, and it's

5    going to be very difficult for us to put it in usable

6    format, if Mr. Lujan is an early witness in the case.

7              THE COURT:  Any comments on that, Mr. Beck?

8              MR. BECK:  Your Honor, I think that's

9    accurate.  I don't know if any kind of technical

10   difficulties have been resolved, but we did turn that

11   over.

12             THE COURT:  All right.  Do you want to skip

13   over that and come back to it before the end of the

14   day when you get your people here?

15             MR. CASTLE:  Yes, Your Honor.  I would just

16   note that, you know, if there is a problem, I'm not

17   going to ask for the Court to do anything on

18   paragraph 1 at all.  The only thing I would note is

19   that if we're not able to get it transcribed in time

20   for Mr. Lujan's testimony, and it has exculpatory

21   information, then that's going to be a problem.  But

22   that hasn't occurred yet.  So I don't need to raise

23   anything as far as an issue at this point.

24             THE COURT:  All right.

25             MR. CASTLE:  Paragraph 2 is handwritten

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   notes.  I've been advised that we've received some

 2   handwritten notes, but not all of the handwritten

 3   notes of the witnesses that have had 302s in this

 4   case.  And that's all I can report at this time.

 5              THE COURT:  All right.  Mr. Beck.

 6              MR. BECK:  I think all the handwritten

 7   notes for the 302s that are in the Government's

 8   possession have been turned over, and I think

 9   disclosed.  I can't think of any that have not been

10   disclosed.  There may be notes for recent interviews

11   in the last couple of days that have not been turned

12   over because 302s are still being worked on.

13              THE COURT:  So they're using the notes for

14   the 302s.

15              MR. BECK:  Otherwise, they will be turned

16   over.  For example, like Leonard Lujan and Leroy

17   Lucero, my guess is those were in the 302s written a

18   long time ago.  And I don't know if those notes

19   exist, or if they do, where they are.  But --

20              MR. CASTLE:  I have a specific issue,

21   because Mr. Lucero did a Kastigar letter on March 23.

22   Presumably there was an interview at that time.  We

23   don't have a 302 or handwritten notes of Mr. Lucero,

24   if there was an interview done at that time.  There

25   may not have been, there may just be a Kastigar
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 222

```
 1   letter.
 2             THE COURT:  Can you make a specific
 3   inquiry?
 4             MR. BECK:  Bates No. 61951 through 952, and
 5   the notes were attached as Bates No. 61953.
 6             THE COURT:  All right.  Is that specific
 7   enough?
 8             MR. CASTLE:  Yes.  I think Mr. Cooper was
 9   writing those numbers down.
10             THE COURT:  All right.  Anything else on
11   that one, Mr. Castle?
12             MR. CASTLE:  No, Your Honor.
13             THE COURT:  All right.
14             MR. CASTLE:  My next one is regarding
15   statements of our client.  At the time we drafted
16   this motion, we had not received our client's
17   recorded statements.  Since that time they have
18   produced that.  What they have not produced is there
19   was a second interview conducted with our client a
20   year-and-a-half ago.  And on the board I'm showing
21   the Court the 302 on it.  And we've asked for the
22   unredacted information.  I know some of it was
23   redacted for the purposes of personal identifying
24   information, home address.  But I've indicated to the
25   Government if they would just share that with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8902

1    Mr. Garcia's defense, we would appreciate that.  But

2    there is also substantive information, and it's been

3    redacted.  We've asked for that to be unredacted and

4    provided to us.  I don't care about his date of

5    birth, because I think he wishes he was younger, and

6    he doesn't want to be reminded of it.

7           On page 2 is information which is just FBI

8    indexing information.  I do not request that.  But I

9    am requesting -- and I believe I'm entitled to the

10   full content of the statement by my client.

11          THE COURT:  I'm not sure I picked up all

12   that.  But do you have any disagreement with Mr.

13   Castle as to producing it in the limited redaction

14   form that he's requesting?

15          MR. BECK:  Without knowing what's on there,

16   I don't.  I mean, my concern is that, for instance,

17   it doesn't look like that's an address, but if it is

18   an address for Billy Cordova, that would cause me

19   concern.

20          THE COURT:  Can he leave off the address

21   for Billy Cordova?

22          MR. CASTLE:  I don't know.

23          MR. BECK:  What I would propose to do is

24   find out what's on there and speak with Mr. Castle

25   about it, if I think it's properly redacted.  If not,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8903

```
 1   then we don't have any problem unredacting those

 2   three lines.

 3            MR. CASTLE:  I'll work with them on that.

 4   The only thing I would note is this particular

 5   document, they list here, the paper, it wasn't in

 6   property when we reviewed the property at all.  And

 7   they've marked it as an exhibit that they're going to

 8   use at trial.  So there is even a greater need for us

 9   for review it.  If they're representing it was

10   Mr. Cordova's address, who was a cooperating witness

11   in this case, we have a right to go find out if it

12   actually was his address.  If it was somebody else's

13   completely, then obviously, it may not have any

14   probative value in this case, but they're going to

15   use it for some reason as an exhibit at trial.

16            So I'll work with Mr. Beck, and I'll take

17   his assurances.  And if we have an issue, we can

18   reraise it at some break on Tuesday.

19            MR. BECK:  We can work that out.  Mr.

20   Castle, what's the Bates number on the bottom of

21   that?

22            MR. CASTLE:  Page 3273.

23            THE COURT:  All right.  What else, Mr.

24   Castle?

25            MR. CASTLE:  In paragraph 4 we asked for
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8904

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 225905

1   information as to whether the United States

2   Attorney's Office declined to prosecute any of the

3   counts for Trial 2 or inform the defense of any prior

4   Grand Jury return a no true bill concerning the

5   charges involved in the indictment.

6         As the Court has seen already, at one point

7   in time there was a declination letter that was

8   provided.  But also in another exhibit provided to

9   the Court, and that was admitted, there was an

10  indication that the FBI may have presented this case

11  for at least review by the United States Attorney's

12  Office in 2008 or '09 -- I can't remember the exact

13  year.  I believe that a no true bill was issued.

14  Obviously, I think there is some legal issues there.

15  But also if there is any more declination letters

16  that may be an admission by a party opponent that we

17  can use at trial.  And I've requested this for quite

18  some time and have not had a response.

19        THE COURT:  Mr. Beck.

20        MR. BECK:  These -- there is nothing there

21  that exists.

22        THE COURT:  So you have no documents or

23  even information that falls within the scope of this

24  request?  Anything that falls within the scope of

25  this request has already been produced or disclosed?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                  MR. BECK:  Right, yes.

 2                  THE COURT:  All right.  Does that

 3    representation work for you, Mr. Castle?  Is that

 4    sufficient?

 5                  MR. CASTLE:  I'm sorry, Judge, I was trying

 6    to confer.

 7                  THE COURT:  Well, the question I asked Mr.

 8    Beck, was there any documents or information that

 9    fell within the scope of this request that had not

10    already been disclosed or produced.  And he said he

11    has no other information or documents that fall

12    within the scope.  Is that representation sufficient?

13                  MR. CASTLE:  It is, Your Honor.

14                  THE COURT:  Okay.

15                  MR. CASTLE:  Photograph 5 requests

16    presentence reports.  Since the filing of this motion

17    to the Court, I believe the Government has produced

18    those presentence reports.  There might be one

19    missing.  But if so, we will confer with the

20    prosecution.

21                  THE COURT:  All right.  Anything else on

22    your motion?

23                  MR. CASTLE:  That's it, Your Honor.

24                  THE COURT:  All right.  Anything else from

25    the Government on this motion, Mr. Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8906

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 227 8907

```
 1                MR. BECK:  No, Your Honor.

 2                THE COURT:  Any other defendants?  Mr.

 3    Benjamin?

 4                MR. BENJAMIN:  Just two issues, Your Honor.

 5    One has been dealt with and that's regarding recent

 6    302s, or notes; and that would be Ms. Gutierrez.  But

 7    that was March 29, so I understand that they're

 8    working on that, and those will be produced, is what

 9    the Government has represented.

10                The second one is one that, I guess, just

11    occurred this week.  And that's regarding a Matt

12    Lucero.  And that was something that was told to me

13    was going to be used as part of enterprise evidence,

14    and that was represented during our last hearings,

15    the 12th through the 16th.  And then at this hearing

16    it was represented that that wouldn't.  The skeptic

17    in me believes that something must have changed and

18    there must have been an interview or something, and

19    so I'm requesting any notes or anything that made

20    that change, or raised those issues.

21                THE COURT:  Any response on that, Ms.

22    Armijo?

23                MS. ARMIJO:  Your Honor, there was no

24    additional interview.

25                THE COURT:  But you just changed your mind?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8907

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8908

```
 1              MS. ARMIJO:  We did.

 2              THE COURT:  Okay.  So there is no

 3    additional interviews, 302s, or information?  Just

 4    changed your mind?

 5              MR. BENJAMIN:  I appreciate that, Your

 6    Honor.  But I can only go with the representation

 7    that was made.  But thank you.

 8              THE COURT:  Anything else I can help you

 9    with?

10              MR. BENJAMIN:  No, Your Honor.  Thank you.

11              THE COURT:  Any other defendants have

12    anything on this motion?

13              Anything further, Mr. Beck, Ms. Armijo, on

14    that motion?

15              MR. BECK:  No, Your Honor.

16              THE COURT:  The next motion I have up is

17    the United States motion, or it's notice of other

18    crimes or bad acts.  And I think this relates to Mr.

19    Troup, if I'm not mistaken.  Is there an issue here

20    that needs to be resolved?  Mr. Burke, is there an

21    issue to be resolved here?

22              Mr. Castellano?

23              MR. CASTELLANO:  The objection defense

24    counsel had was that there were no specific

25    statements in the first filing by the Government.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8908

1    The Government --

2              THE COURT:  You filed a reply; correct?

3              MR. CASTELLANO:  We filed a reply including

4    statements in this case.  I think it could be either

5    404(b), or could also be substantive evidence of

6    racketeering acts.  Because the racketeering statute

7    does include witness intimidation under 18 USC,

8    Section 1512 and 1513.  So I think it could be 404(b)

9    or substantive evidence.

10             And that's all I have.  I think the motion

11   speaks for itself.  I know the Court heard testimony

12   from two witnesses last trial about statements by Mr.

13   Troup.  And there are two additional statements now.

14             THE COURT:  Okay.  Mr. Burke.

15             MR. BURKE:  Your Honor, the statements that

16   I have, even with the reply are not intimidation.

17   There are statements that -- about --

18             THE COURT:  Point me on the reply to where

19   the statements are.  Is this Mr. Troup saying -- I

20   guess, telling everybody at the detention facility

21   that there is another FBI informant -- or he pointed

22   to somebody and said that, and started disrespecting,

23   and saying that "Dan Dan" Sanchez and Carlos Herrera

24   came back from court and said:  "All you FBI

25   informants need to stop doing what you're doing.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 230
8910

1    Have some respect for each other and stop doing what

2    you're doing."  That's the statement?

3                 MR. BURKE:  Yes.

4                 THE COURT:  The first statement?

5                 MR. BURKE:  Yes, Your Honor.

6                 THE COURT:  Okay.  This is an allegation

7    that Mr. Troup was making.  He's saying there is

8    another FBI informant right there.  Started

9    disrespecting the -- I guess the only thing I paused

10   on is the word "disrespecting."  I don't know -- I

11   know there wasn't any elaboration at the first trial

12   on that.  But I guess I'm inclined to agree with

13   Mr. Burke that that's not about intimidation or

14   attempt to scare.  But if you've got more flesh on

15   the disrespecting, I guess I might hear that.  If

16   he's going to -- Mr. Urquizo can flesh out

17   disrespecting, it might cross the line into witness

18   intimidation.

19                 MR. CASTELLANO:  Sure, Your Honor.

20                 And disrespect in the SNM is a big deal.

21   And by disrespecting the gang's rules, that alone is

22   a communication to somebody that you're violating the

23   Court's rules.  And we usually just say witness

24   tampering.  But the statute itself refers to an

25   attempt to influence, delay, or prevent the testimony

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8910

1    of any person in an official proceeding.  So even

2    attempts to influence are counted under the 1512

3    statute.

4          MR. BURKE:  Your Honor, one of the things I

5    said in the objection, which is Document 1994 -- and

6    I assume Lupe Urquizo will be here -- is you also

7    need to see it on a case by case basis to see if it

8    goes over into something that might be 404(b)

9    material.

10          I don't mean to be crass, but if you call a

11   rat a rat is not necessarily, you know, the sort of

12   404(b) intimidation.  And the Tenth Circuit case U.S.

13   v. Smith, 629 F.2d 650, a 1980 case, and that's where

14   somebody pulled into the driveway -- there, Young

15   testified that two weeks prior to trial, Smith

16   followed him home in his car; pulled into the

17   driveway, and made intimidating remarks and gestures.

18   Now, that's threatening a witness.

19          But to call a rat a rat is not intimidating

20   or threatening a witness, in my view.  But I think

21   that it really will have to be decided on an ad hoc

22   basis.  And I cited the Romine case for that

23   proposition in my paper.

24          THE COURT:  Well, I may need to hear Mr.

25   Urquizo tell me in more detail what was said.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8911

```
 1   don't know.  I think I disagree with you.  If
 2   somebody starting calling somebody a rat, that to me,
 3   might be intimidation.  But for some reason saying --
 4   calling them FBI informants seems different to me.
 5   And so the statement that's here, I think probably is
 6   right up to the line, but not there.  But I need to
 7   hear a little bit more about what he said that he is
 8   now characterizing as disrespectful.  That might
 9   cross the line.
10           So I guess I'm inclined right at the moment
11   not to allow that.  But maybe you can flesh it out
12   for me outside of the presence of the jury, or if you
13   talk to him and get a 302, I can look at what he's
14   going to say.  But I think it may come up to the
15   line.  It doesn't quite cross over, but I can see how
16   it would.
17           MR. CASTELLANO:  Your Honor, we can work on
18   fleshing it out.  Of course, calling someone a rat in
19   a jail facility --
20           THE COURT:  I kind of disagree with Mr.
21   Burke on that, when you start using that sort of
22   language.  But if he said -- like he does here:  "All
23   you FBI informants" -- I don't know.
24           MR. CASTELLANO:  The rest of the statement
25   is:  "All of you FBI informants need to stop doing
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   what you're doing."  So when you tell an informant to
 2   quit being an informant, that is an indication that
 3   you are trying to influence their testimony, and any
 4   other cooperation that they're engaged in.
 5          MR. BURKE:  Well, the next statement is:
 6   "Have some respect for each other."
 7          THE COURT:  Yeah.
 8          MR. CASTELLANO:  "And stop doing what
 9   you're doing."
10          THE COURT:  Well, I think I agree with -- I
11   guess for the first sentence -- I guess, for the
12   first clause there, saying there is another FBI
13   informant right there and started disrespecting, and
14   saying "Dan Dan" Sanchez and Carlos Herrera came back
15   from court -- is he quoting what they're saying, is
16   that what he's doing?  He's quoting what "Dan Dan"
17   and Carlos said?  Is that what he's doing?
18          MR. CASTELLANO:  That's the way I read it,
19   Your Honor.  From the testimony, that's the way I
20   understood.
21          THE COURT:  That's the reason it came in to
22   the first trial, he was quoting what they said?
23          MR. CASTELLANO:  Correct.
24          THE COURT:  Well, it seems to me we run
25   into problems having Mr. Urquizo testifying what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8913

1  Troup said, and Troup saying what Mr. Sanchez and Mr.

2  Herrera said.  We're getting -- we're at least

3  getting hearsay through hearsay.  It's orders, I

4  guess.

5         MR. CASTELLANO:  It's also used for the

6  impact on the listener.  I mean, when you repeat

7  someone's phrases to somebody regarding other SNM

8  members it is intended to have an effect.

9         THE COURT:  But I do have -- it is being

10 offered for the truth of the matter that Mr. Troup

11 made those remarks.  I guess that would come in

12 against him.  Well, I think it fits the hearsay

13 exception, and then the rest of it is going to come

14 in as nonhearsay, because I think it's orders.

15        And if the Government wanted me to say it's

16 for the impact upon the hearer, then I could give a

17 limiting instruction on that.  But I do think that,

18 that being said, stop doing it would be interference

19 with a witness.  So I guess I'm inclined to leave it

20 in the trial.

21        All right.  Let's look at the second

22 statement, Mr. Burke.

23        MR. BURKE:  So there is Mario Montoya

24 testified that Troup was yelling out that, "All of us

25 cooperators think that the FBI and the US Government

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 235 8915

```
 1    is our friend.  But we're going to find out in the
 2    end that, as soon as they're done prosecuting these
 3    guys, February 20, 2018" -- so I'm getting that's the
 4    first trial -- "they're going to line us up and
 5    prosecute us next; that we're probably going to end
 6    up with more time than them."  He went on to say, "I
 7    thought he was just trying to plant the seed of doubt
 8    for us to come here today and cooperate."  So I
 9    believe that last part is Mario Montoya's thought
10    about a statement that could very well be true.
11            THE COURT:  Well, I'll give it some
12    thought.  I'm inclined to leave it in.  I'll think
13    about it a little bit more.
14            MR. BURKE:  All right.  Then should I move
15    on, Your Honor?
16            THE COURT:  Okay.
17            MR. BURKE:  Number three, I think that's
18    where we would need a 302 to -- what is that?  I
19    mean, I've looked at the statements of Benjamin
20    Clark.  He's one of these fellows who I think will
21    say anything at this point.
22            And then number four, "Troup was also a
23    member of a group who called Samuel Gonzales a rat."
24    And I don't know the context of that.  So I think we
25    would need a 302, or some sort of flesh on those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8915

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 236916

 1    bones before we could argue it.

 2            THE COURT:  Do you have anything more on

 3    three and four, Mr. Castellano?

 4            MR. CASTELLANO:  On three, I don't, Your

 5    Honor.  I agree that we have to flesh that out.

 6            On four, I do have some background.  So

 7    Samuel Gonzales in the last trial was subpoenaed by

 8    Mr. Perez.  And so he was back in holding with a

 9    number of the defendants, including Mr. Troup.  And

10    they were giving him hard time about being there, and

11    having a conversation about him being a rat.  He

12    explained to them that -- he told them he wasn't

13    going to testify, and he, in fact, refused to

14    testify, and did not.  But when he was down there the

15    people were referring to him as a rat, including

16    Mr. Troup.

17            THE COURT:  So are you going to try to call

18    Mr. Gonzales in this trial?

19            MR. CASTELLANO:  Yes.

20            MR. BURKE:  Do we have a date, or do we

21    have any other witnesses, or --

22            MR. CASTELLANO:  I don't recall the

23    specific date.  It would have been probably in the

24    defendants' case, because it was at the point when

25    Mr. Gonzales was brought at the defendants' request.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  He was subpoenaed by the defense.  So I think it

2  would have been after the Government rested.

3          THE COURT:  Okay.  Well, let's then keep

4  out three for the present time.  One, two, and four

5  will come in.  I'll give it some further thought --

6          MR. BURKE:  Your Honor, I'm sorry for

7  interrupting.  But if Mr. Castellano is correct about

8  the timing, Edward Troup wouldn't have been here

9  during the first trial.

10          MR. CASTELLANO:  I'm not sure when there

11  was overlap.  I know that when the trial ended, there

12  was overlap between the hearings and the trial

13  itself.  But I'm only guessing that it would have

14  been after our case, because he was called as a

15  defense witness.  But I don't know the exact date.

16  So that's my best guess.

17          MR. BURKE:  I think there was an overlap

18  when the jury was out.  We came in here one day, and

19  we had a hearing, but there wouldn't have been

20  witnesses.  The jury had been out -- I think that

21  Monday after closings, a week after closings, we were

22  in here.

23          But I mean, I guess I'm renewing my request

24  for more flesh on the bones of that one as well.

25          THE COURT:  I just can't think of when Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8917

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 238

```
 1    Troup and Mr. Gonzales would have been here at the
 2    same time.  So I will require more information on
 3    four.  So right at the moment three and four are out.
 4    I'll think about one and two.  But right now they're
 5    in.
 6              MR. BURKE:  Got it.  Understood.
 7              THE COURT:  Okay.  Anything else on that,
 8    Mr. Castellano?
 9              MR. CASTELLANO:  No, Your Honor.
10              THE COURT:  Any other defendant?
11              All right.  Let's, then, move for the
12    restricted motion to strike government witnesses
13    Brian Rascon and Raymond Rascon.  And I believe this
14    is also -- you took the lead on this one, and it may
15    be solely your motion, Mr. Burke, Ms. Harbour-Valdez.
16              MR. BURKE:  I think we had some joiners,
17    Your Honor.
18              THE COURT:  Okay.
19              MR. BURKE:  I made such a stink about
20    trying to get the Rascons' pen packs, the Court might
21    even remember that.  I was pressing pretty hard for
22    those pen packs, and made a nuisance of myself.
23              THE COURT:  And I guess they didn't have
24    one, but they got this STIUG packet, but they don't
25    have a pen pack?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8918

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 239

 1           MR. BURKE:  Well, I don't know.  They

 2    listed pen packs as exhibits.  And I'm guessing there

 3    is a simple explanation for this.  But I haven't

 4    heard it.  If they have found the pen packs now, I

 5    think that would be a rather stunning --

 6           THE COURT:  I think Mr. Beck is about to

 7    tell you what the situation is.  Mr. Beck.

 8           MR. BECK:  Yeah, since the beginning, what

 9    we've said, and what's always been the case, is that

10    pen packs exist or they don't.  Corrections creates

11    them at some point in time, if they want to for some

12    reason.  And so for some people they exist.  What

13    we've said since the beginning is they don't for the

14    Rascon brothers.  So we've said from the beginning --

15           THE COURT:  So even if you accidentally, or

16    something, put it on an exhibit list, there are no

17    pen packs for the Rascons?

18           MR. BECK:  We intentionally put it on an

19    exhibit list, because we asked Corrections to produce

20    a pen pack.

21           THE COURT:  And they don't have one?

22           MR. BECK:  And they did not have one when

23    we put it on the exhibit list.  They have one now,

24    which we received today, which we're disclosing today

25    or tomorrow.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8919

1          MR. BURKE:  Then they could have done it a

2   year-and-a-half ago.

3          THE COURT:  Well, let me make sure I

4   understand what the situation is.  So there is no pen

5   pack, but they have now prepared one?

6          MR. BECK:  Right.  And that was the offer I

7   made early on, is that New Mexico Corrections, if the

8   defendants wanted to, could reach out and ask them to

9   produce a pen pack.  And I think they would if they

10  had one.

11         THE COURT:  Is the material that's going to

12  be in this pen pack substantially similar or

13  identical to what's been in the STIUG file?

14         MR. BECK:  No.  What a pen pack is, is it's

15  publicly available J & Cs.  That's what a pen pack

16  is.  So if the Court remembers, throughout the trial,

17  when we called witnesses, we entered their pen pack

18  into evidence, which contained their prior J & Cs,

19  and then for some we walked through -- for some the

20  defense entered those as exhibits and walked through

21  them.  So it's just J & Cs, and then photos and

22  fingerprints.

23         And so, I mean, we've had a consistent

24  position on this from the beginning, is that, if they

25  existed in Corrections' custody or control, that we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8920

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 241

1     would -- that we would turn those over.  If they

2     didn't exist, there was nothing to turn over.

3             And then when we asked Corrections to

4     produce one, getting ready for this trial, to create

5     one for us --

6             THE COURT:  What do they do?  Do they go

7     out and search all the records of state convictions

8     and put it together?

9             MR. BECK:  Yes, that's my understanding.

10            THE COURT:  And they don't do that for

11    every prisoner?

12            MR. BECK:  No.

13            THE COURT:  So it's something that -- these

14    aren't documents that are lying around the

15    Corrections facility?  They have to go look for them.

16            MR. BECK:  Right.  Yes, they produced those

17    to us.

18            So, for instance, at some point I think

19    during the last trial -- during the first trial --

20    someone was called last minute by the defense; we got

21    notice of someone last minute by the defense.  And

22    they didn't have a pen pack for that person.  So we

23    had to go out and search for all of the documents

24    because it just didn't exist at that time.

25            THE COURT:  Okay.  And you're about to hand

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8921

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 242 8922

1   the defendants the pen packs for the Rascon brothers?

2           MR. BECK:  Right.

3           THE COURT:  All right.  Mr. Burke.

4           MR. BURKE:  I don't remember anything about

5   this statement -- that doesn't mean it didn't

6   happen -- but that we would have to create it.  The

7   statement in Mr. Beck's email is, "Pen packs don't

8   exist for the Rascon brothers and Trujillo."  There

9   is nothing there about:  We can create one, or we may

10  have one and we will provide it to you.  Rather, it

11  says, "but we've agreed to provide you the STIU

12  files."

13          And your question was, of course, a good

14  one:  Is that the same?  But it isn't.  The

15  intelligence information is different than the

16  convictions.  And they had pen packs for all of the

17  other people, or most of the other people in the pod.

18  So why didn't they produce the pen pack -- create one

19  then a year-and-a-half ago when I was squawking about

20  it, and give it to us then, so that we could do the

21  work that we need to do to prepare to cross-examine

22  the Rascons?  It makes no sense to me.

23          THE COURT:  Well, I think it's mostly

24  publicly available information.  It's just whether

25  it's all -- who pulls it together and then labels it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8922

```
 1    So I'm inclined to deny your motion on pen packs, and

 2    we'll see if it contains anything that raises any new

 3    issues.

 4              MR. BURKE:  Fair enough, Your Honor.

 5              THE COURT:  Anything else from the

 6    defendants on that motion?

 7              Mr. Beck?

 8              All right.  So I'll deny that motion.

 9              All right.  Let's see if we can squeeze in

10    the restricted motion to strike Government's witness

11    Benjamin Clark.  And I think this is also your

12    motion.

13              MR. BURKE:  Yes, Your Honor.  This is

14    another one of the issues I've been clamoring about,

15    is to get that transcript and the tape of the

16    interview of Ben Clark.  And it turns out that the

17    transcript and the tape do not exist.  In fact,

18    Special Agent Acee mentioned it today as well.  And

19    it seems to me the problem with they're not being

20    able to produce it is that they will not be able to

21    comply with the Jencks Act.  And I believe that he

22    should be stricken as a witness based on the

23    Government's projected failure to comply with the

24    Jencks Act.

25              THE COURT:  By not keeping these documents?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8924

1           MR. BURKE:  No.  The statement itself is

2     the Jencks statement.  So, yes, their summary -- and

3     we've seen enough about whether the FBI 302s are

4     really complete or thorough -- but in any event, the

5     statement is the transcribed or tape-recorded

6     statement itself, not the FBI agents' summary of what

7     the statement --

8           THE COURT:  And they can't find either one

9     of those?

10          MR. BURKE:  That's correct, Your Honor.

11    And I think it was the source of some frustration by

12    Mr. Acee, and he expressed that today.  They just

13    can't find it.

14          THE COURT:  All right.  Thank you, Mr.

15    Burke.

16          Mr. Beck.

17          MR. BECK:  I don't know if I can be as

18    quick as you want me to, Your Honor.

19          It's not a question of Jencks.  The

20    recorded statement isn't in the Government's

21    possession.  There was no verbatim transcript.  And

22    so what it falls into then --

23          THE COURT:  When he was saying the

24    transcript, wasn't it a transcript of the recording

25    that was made?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BECK:  No.  What happened is -- no,
 2   what happened is -- my understanding is that Agent
 3   Dougherty recorded the conversation, or recalls that
 4   he did -- I think that he probably did, because it's
 5   in his notes, and his notes say something to the
 6   effect:  For all of the details provided during the
 7   interview, refer to the recording of this interview,
 8   verbatim transcript of the same.  And it's that
 9   paragraph that I was reading.
10            So what happened -- and I think this -- I
11   think this 302 was what Mr. Burke was referring to
12   that Mr. Castle asked Special Agent Acee about this
13   afternoon.  Agent Dougherty said because he recorded
14   it, he thought a verbatim transcript should be made.
15   But he looked through his file, and he never
16   requested a verbatim transcript, and the recording
17   doesn't exist.
18            So for there to be a Jencks violation, we
19   would have to possess the recording or the
20   transcript, which we don't.
21            That moves us into, then --
22            THE COURT:  Bear with me.  I guess I'm
23   still not quite understanding.  What was then the
24   transcript of, if it wasn't of the recording?
25            MR. BECK:  That's what I'm explaining to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8925

 1    you, is that there is no verbatim transcript.  He

 2    recorded it, and he intended to make a transcript of

 3    the recording.

 4              THE COURT:  And he never made it?

 5              MR. BECK:  And he never did.

 6              THE COURT:  So the verbatim transcript,

 7    your information, it was never made?

 8              MR. BECK:  It never existed.

 9              THE COURT:  But there was an audio

10    recording?

11              MR. BECK:  Yes.

12              THE COURT:  So that's what is lost?

13              MR. BECK:  Right.  So the key word there at

14    the end is, of course, "lost."  That takes us out of

15    Jencks and takes us into, as we're all familiar with

16    at this point, the Trombetta and Youngblood standard,

17    for lost or destroyed evidence.  Probably the key

18    here -- again, we start with Trombetta, which is

19    whether there was apparent exculpatory value.  There

20    isn't apparent exculpatory value in this interview.

21    It's inculpatory.  But even setting that aside, under

22    Trombetta, if there was apparent exculpatory value,

23    the second prong for that inquiry even under

24    Trombetta, before we get to Youngblood, is that the

25    defendant remains unable to "obtain comparable

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8927

1    evidence by other reasonably available means,"

2    unquote.

3           So there is comparable evidence easily

4    obtained, because they already have it, which is the

5    302 from that conversation, which is five pages.  So

6    they have five pages of the 302 report from that

7    interview, and then they also have then a ten-page

8    follow-up interview from May 16, 2016, which goes

9    more in-depth.  It covers the same material as the

10   first, but it goes more in-depth into the material.

11          And so this is what the courts are looking

12   for when they say not able to obtain comparable

13   evidence by other reasonable and necessary means.  It

14   means it was just lost.

15          And that's not the case here.  They have

16   the 302 report -- five-page 302 report -- then they

17   have a ten-page follow-up, which covers the same

18   material, but more material.  And they, of course,

19   have Agent Dougherty, who was present for the

20   interview, to ask him questions about it.

21          And so there was no Jencks violation.  It

22   doesn't meet the Trombetta standard, let alone, once

23   we get to that, there is nothing apparently

24   exculpatory about the inculpatory nature of this

25   interview.  Once we fall under Youngblood, there has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8927

```
 1    to be bad faith.  And I think if the Court looks
 2    at -- my understanding is was Exhibit AA to the
 3    motion to dismiss, which is Agent Dougherty's report
 4    about trying to look for the recording.  That report
 5    standing on its own will show that certainly there
 6    wasn't any bad faith on the Government's behalf in
 7    negligently, I would say, losing this recording.
 8              THE COURT:  All right.  Thank you, Mr.
 9    Beck.
10              Mr. Burke, why don't I hear you after we
11    take a break, then I'll not be pressuring you to
12    finish up.  So why don't we take about a 15-minute
13    break.  That's going to leave us about an hour.  So
14    we need to think about what needs to be done before
15    we leave here.  I've got a few issues I need to go
16    over from a pretrial standpoint.
17              Did y'all get the memo from Ms. Wild?
18              MS. HARBOUR-VALDEZ:  We did.  We have
19    questions about that, and we'll take it up after the
20    break.
21              THE COURT:  All right.  We'll be in recess
22    for about 15 minutes.
23              (The Court stood in recess.)
24              THE COURT:  All right.  Let's go on the
25    record.  I'm going to -- hold your thought, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8928

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 249 8929

```
 1    Burke, because I need to probably get Ms. Wild on the
 2    phone, and deal with these jury issues so that she
 3    can get out of here.  So let's see if she's on the
 4    line.  Let me say a couple of things while we're
 5    getting her on the line.  You do have the list of the
 6    jurors as they are going to come into the room.  So
 7    those are in the number that they're going to come.
 8    If they do not show up, then you will -- they don't
 9    show up, and you'll have to generate -- or the Court
10    will generate a seating chart, but we'll have to wait
11    till Monday to see who they are.  Same way with the
12    strike list.  We can't do a strike list now because
13    we don't know who is going to show up.
14             I can tell you, though, in the first trial
15    because of the intensive questionnaires, the
16    intensive strikes that we've already done, the
17    appearance rate was quite high.  I'm not as familiar
18    with appearance rates down here in Las Cruces,
19    because I don't try as many cases as I did earlier in
20    my career down there, but it was quite higher than
21    the standards, or what I'm used to in Albuquerque,
22    and it was a quite high appearance rate.  So I don't
23    expect too many of the people that are early on the
24    list not to appear.  But you do have the order, the
25    sequencing of the way they're going to come into the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8929

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 250 8930

```
 1   courtroom on Monday.

 2            Ms. Armijo.

 3            MS. ARMIJO:  I haven't seen that.  I don't

 4   have an order.  And I don't believe

 5   Ms. Harbour-Valdez has.

 6            THE COURT:  All right.  Ms. Wild, are you

 7   there?  Can you hear what I said?  We've going to get

 8   IT to come up here.  We've had trouble with this

 9   phone all day.  We can't get the thing to work.

10            What I was telling them is they've got the

11   sequencing sheet.  They say they do not have a

12   sequencing sheet.  They do not have a sequencing

13   order.

14            THE CLERK:  Sure they do, because the range

15   was provided, and the numbers associated with the

16   juror on the face of the questionnaire.

17            MS. ARMIJO:  I guess, I don't know.  I

18   guess we were expecting a list or something.  I guess

19   maybe we need to figure out what we have.  Because I

20   don't think that -- or maybe there is an email that

21   we didn't get, because --

22            THE COURT:  I think what she's telling you

23   is in the email, which you did get, there is a range

24   next to Group 1 and a range next to Group 2; is that

25   what you're saying, Ms. Wild?  Ms. Wild?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8930

```
 1                THE CLERK:  I don't think she can hear you,
 2     Judge.
 3                THE COURT:  Well, this isn't going to work.
 4     I'm not sure what to do.  But I guess y'all will just
 5     have to talk to Ms. Wild separately, but that's all I
 6     can really do.  We're continuing to have problems
 7     with this phone, and right now we can't even make the
 8     person on the other end hear us.
 9                MS. ARMIJO:  Your Honor, I guess my concern
10     is it says jurors 21 through 844, the numbers that
11     were given -- the batches that we got had juror
12     numbers that were longer.  So I guess I see where she
13     said --
14                THE COURT:  Let's do this:  I can't answer
15     this question.  So without her, this is just useless.
16     So let's don't use our time on that.
17                MS. ARMIJO:  Would it be possible maybe for
18     the two of us to step outside and just call her?
19                THE COURT:  You're welcome to do that.
20                MS. ARMIJO:  And trying to figure it out.
21     And then we can come back and report to the Court,
22     and maybe you all can continue without us.
23                THE COURT:  Okay.  Deputy Gunther, I was
24     going to put on the record, you're going to try to
25     have all the -- I can't even get my -- just confirm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8931

```
1    you're going to have the defendants here way before

2    8:30, but you'll have them in the courtroom ready to

3    go by 8:30 each day.

4              THE MARSHAL:  Yes, sir.

5              THE COURT:  And do you have any plans that

6    you need to tell the defendants or the defendants'

7    lawyers so they know what to kind of expect each day

8    as far as the routine?

9              THE MARSHAL:  There is going to be no

10   change, Judge.  We're going to get them over here in

11   plenty of time, and we'll have them up here between

12   8:00 and 8:15 usually.

13             THE COURT:  All right.  And I assume that

14   we'll try to make sure that the jurors -- like we did

15   in the prior trial, y'all are going to dress in

16   suits?

17             THE MARSHAL:  Yes, sir.

18             THE COURT:  And that the jurors will not

19   see the defendants coming into the courtroom or the

20   courthouse in any sort of jumpsuits or shackles or

21   anything like that.

22             THE MARSHAL:  We bring them into the sally

23   port each morning, sir.  But we get here plenty

24   before they do at 8:00.

25             THE COURT:  Before they do.  Any more
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 253

1    issues for Deputy Gunter?  So your people will be

2    here and we'll try to start promptly at 8:30 every

3    day.  So everybody needs be here lawyer-wise here at

4    8:30.  But we'll have the defendants in the courtroom

5    probably about 15 minutes earlier than that, right?

6              THE MARSHAL:  Yes, sir.  The only other

7    thing, Judge, they requested 7:30 to come in.

8              THE COURT:  Yes.

9              THE MARSHAL:  The jurors are also allowed

10   to come in early on Mondays and Tuesdays, is what

11   we've been apprised by --

12             THE COURT:  So it's just Monday and

13   Tuesday.

14             THE MARSHAL:  They will be early also, and

15   able to come in at the same times.  Is that an issue

16   with anybody?

17             THE COURT:  Well, I just need to get these

18   lawyers through before we get 80 jurors coming

19   through, because I need them in here earlier.  Is

20   there a way that, if they come up, can they cut in

21   the line, and y'all get them in here earlier, so they

22   can be here at 8:30?

23             THE MARSHAL:  Judge, I would say for them

24   to be here at 7:30 on the dot, and that would

25   probably be the best way to get in and out without

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 254

```
 1   issues.
 2             THE COURT:  All right.  For those two days,
 3   you need to be here -- you need to somehow be here at
 4   8:30.  You don't have to be here earlier than that.
 5   But remember that I had some problems getting defense
 6   lawyers through the front door.  They showed up at
 7   the same time all those jurors did, so -- all right.
 8             MR. BLACKBURN:  Do you mean 7:30?
 9             THE COURT:  Well, that's what they're
10   saying.
11             MR. BLACKBURN:  You just said 8:30.
12             THE COURT:  Well, you need to be in here at
13   8:30.  But you may not be able to get through the
14   front door and be here at 8:30 if you show up at
15   8:15.  So you may need to show up at 7:30, so you're
16   at the front of the line.  Just for those two days,
17   or just how long it takes us to get the jury
18   selected.
19             All right.  Anything else for Deputy
20   Gunter?  All right?  Thank you, Deputy.  Appreciate
21   it.
22             THE MARSHAL:  Yes, sir.
23             THE COURT:  All right.  Let's finish up,
24   Mr. Burke, on yours then, and I then probably need to
25   move to some of the things I need to discuss with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 255

1    you.

2              MR. BURKE:  Your Honor, Mr. Beck said that

3    that tape recording is not a Jencks statement.  And

4    it absolutely is a Jencks statement that was in the

5    custody of the Government at one time.

6              What the 302 said regarding the December 3,

7    2015 statement was:  "For all of the details provided

8    during the interview, refer to the recording of this

9    interview and a verbatim transcript of same."  I

10   understand that the verbatim transcript was never

11   prepared.  But the tape did exist.  The tape was in

12   their custody.  That is the Jencks statement.  And

13   they lost it.

14             The cases that are actually right on point

15   are set forth on pages 5 and 6 of Document 2012.  And

16   it's not altogether different from Trombetta, the

17   language.  It talks about -- so here is one case,

18   Muwwakkil, holding that "the appropriate sanction for

19   loss of Jencks Act statements requires weighing the

20   degree of negligence or bad faith involved and the

21   prejudice to the defense."  And so it is a balancing

22   test.  They lost it, we should have it.  The 302s

23   have been very unreliable.

24             We would like to hear the statement from

25   Ben Clark's voice.  And there is some cases that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8935

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 256936

```
 1   put in the pleading that even talk about how it's

 2   much more impactful when the jury hears the voice

 3   from a tape recording than a cold, hard piece of

 4   paper.

 5            Mr. Beck also said that we have more of the

 6   same in I think it's a May 2016 statement so 17

 7   months after this.

 8            Ben Clark's statements get worse and worse

 9   for Mr. Troup, the longer he stays in jail, because

10   that's how this case has been built.  It's all about

11   what these manipulative snitches can get for saying

12   the things that please the Government.  So to offer

13   as help to the defense a statement by Ben Clark 17

14   months after the statement that we want doesn't

15   really seem reasonable to me.

16            So I would like you to fashion a remedy for

17   their loss of the Jencks statement that we would have

18   liked to have used in the trial of this case.

19            THE COURT:  All right.  Thank you, Mr.

20   Burke.

21            MR. BURKE:  Thank you, Your Honor.

22            THE COURT:  Well, I think I have to find a

23   wrong before I start fashioning a remedy.  And I just

24   don't see any evidence at the present time that there

25   was any bad faith, deliberativeness, intent.  The
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8936

1    Tenth Circuit is pretty clear that that's required.

2              So I'm not inclined to try to fashion a

3    remedy.  I'm also not inclined to strike any

4    witnesses.  We are further ahead on this one.  We do

5    have a 302.  And many times we don't have anything

6    more than the 302, and we have to go with that.  So I

7    think we're old school, we're back to where we are.

8    We don't have the recording, but we don't have any

9    indication that the 302 is unreliable here.  So I'm

10   not going to strike Benjamin Clark or fashion any

11   other remedy on the basis of the lost recording.  So

12   I will deny that motion.

13             All right.  Let me go through -- did y'all

14   have something you want to report,

15   Ms. Harbour-Valdez?  Ms. Armijo?

16             MS. ARMIJO:  We had our questions answered.

17   So we have it figured out now.

18             THE COURT:  All right.  Okay.  Let me go

19   through a few things here.  I think Ms. Wild said

20   before I leave here I need to find out y'all's times

21   for closings.

22             Ms. Armijo, how long do you think the

23   Government's closings will be?

24             MS. ARMIJO:  Combined, three.

25             THE COURT:  Let me start with you,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Benjamin.  How long do you think your closing
 2    will be?
 3            MR. BENJAMIN:  Your Honor, considering I
 4    have, I think it's five different acts, I think I'm
 5    going to ask for -- I wouldn't say five hours, but I
 6    would say probably an hour and a half, Your Honor.  I
 7    believe I have the most ground to cover.  And I will
 8    try not to be duplicative of other content, Your
 9    Honor.  But at this point in time, I have a written
10    closing.  I'm getting started on it.
11            THE COURT:  All right.  How about you, Mr.
12    Burke?  Ms. Harbour-Valdez?  How long do you think
13    your closing will last?
14            MS. HARBOUR-VALDEZ:  An hour and 15
15    minutes, Your Honor, but I anticipate doing it under
16    an hour.
17            THE COURT:  Okay.  Mr. Cooper?  Mr. Castle?
18            MR. CASTLE:  Your Honor, because we don't
19    really know the scope of that third murder, we're
20    going to ask for two hours, and hope to go way under
21    that.
22            THE COURT:  All right.  Mr. Lahann?
23    Mr. Shattuck?
24            MR. LAHANN:  One hour 15.
25            THE COURT:  All right.  Mr. Granberg?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8938

```
 1                MR. GRANBERG:  Your Honor, I figure 45

 2     minutes.

 3                THE COURT:  All right.  Mr. Blackburn?

 4                MR. BLACKBURN:  At least an hour and 15

 5     minutes, Your Honor.

 6                THE COURT:  All right.  Ms. Torraco?  Mr.

 7     Roberts?

 8                MS. TORRACO:  One hour, Your Honor.

 9                THE COURT:  Did I get everybody?  I think

10     so.

11                All right.  The case description.  Do we

12     have a case description yet?

13                MR. CASTELLANO:  We don't, Your Honor.  We

14     can largely fashion the same description of this case

15     as we did last case, I think.  We did prepare one for

16     the last trial that the parties agreed to.

17                THE COURT:  Why don't you do this, we're

18     getting down to the wire, let me see if I can impose

19     some deadlines:  How about by 10:00 tomorrow the

20     Government send over a proposed statement of the

21     case.  So I don't read the indictment, I simply read

22     them the statement of the case.  Defendants look at

23     it.  Get back to the Government by 3:00.  And then

24     either file me something y'all agree to by the end of

25     business tomorrow, or send me your competing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8939

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 260 8940

```
 1    statements of the case, indicating what your

 2    differences are.  And then I'll try to prepare one

 3    over the weekend.

 4              I know I'm a little behind on this.  I have

 5    started working on it.  I'll try to get the

 6    preliminary instruction out to you tomorrow.  It may

 7    be over the weekend.  And if you would communicate to

 8    the Court in some way, either Ms. Wild, Ms. Bevel

 9    about whether you concur or don't concur, and that

10    way, if you've got changes to make, tell me what they

11    are so I can try to have a preliminary instruction

12    that's ready to go.

13              Let me just quickly look over my list and

14    see if there is anything else.  I have a folder here

15    I'm going to take with me of proposed voir dire.  Is

16    there disputes on proposed voir dire that I need to

17    iron out today?  I'm seeing shaking heads no, so --

18    all right.

19              Where are we then with Mr. Blackburn's

20    situation?  Is Mr. -- his name escapes me, the young

21    man, the lawyer representing Mr. Garcia.

22              MR. BLACKBURN:  Mr. Glazener.

23              THE COURT:  Mr. Glazener here?

24              MR. BLACKBURN:  No, Your Honor.  But I

25    talked with him during one of the breaks, because I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8940

1    know that he had indicated to the Court and to the

2    Court staff and to Mr. Beck yesterday that he was not

3    going to waive.  I talked with him just briefly this

4    morning, and then again this afternoon and --

5              THE COURT:  He confirmed that?

6              MR. BLACKBURN:  -- yeah, he confirmed that.

7              THE COURT:  I guess the thing I was hoping

8    to do this afternoon -- I should have done it

9    earlier -- is to see what his concerns were.  I'm not

10   trying to talk him out of not waiving his conflict.

11   But it might inform me a little bit more what he

12   thinks his concern but you is.  Do you have -- or

13   what his concerns are.

14             MR. BLACKBURN:  I saw in Acee's notes he

15   thinks I'm a snake or something like that.  Maybe

16   charged him too much money.  I was sort of shocked to

17   know I didn't charge that case.

18             THE COURT:  He was concerned that he thinks

19   you have confidential information?

20             MR. BLACKBURN:  Oh, yes.  I mean, I

21   think -- I don't have the notes in front of me, but

22   he basically said that I know him quite well -- I

23   know too much about him.  I know him quite well.

24   Although I did do a good job for him.  He changed his

25   mind on that one.  I could push his buttons.  Don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8941

```
 1    want Billy, he knows me too good.
 2           THE COURT:  Let me ask you about what your
 3    thoughts about his -- from what I have read, I did
 4    get through the Government's motion.  I looked at all
 5    the attachments, and I've tried to understand the
 6    prior representation.  I feel fairly comfortable
 7    about getting close to going in and declare that
 8    they're not substantially related.  Do you have any
 9    reason to think that if I were to make that finding
10    that that would be incorrect in any way?  Is there
11    anything about the representation that I don't know
12    that you think would --
13           MR. BLACKBURN:  Yes.  And I discussed that
14    with the Government.  The situation happened to me a
15    few years ago where -- sort of in the same
16    position -- and ironically, the judge basically made
17    me go back to the chambers and talk to him ex parte,
18    and I explained the situation.  Ironically, the case
19    got reversed on appeal:  Judge Lucius Bunton, III.
20           So yes, I do believe -- and I would like to
21    have an ex parte situation with you so I can explain
22    why I think that is.  I can't say this in open court
23    because of the confidentiality that exists between --
24           THE COURT:  Well, but do you think -- when
25    you say you think it is, do you think this case and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8942

```
 1    his prior case are substantially related?

 2              MR. BLACKBURN:  I think -- well, it was a

 3    gang-related case.  It's not an SNM Gang, but it was

 4    a gang-related case in 1996, that involved two rival

 5    gangs, and issues that are similar in that particular

 6    situation relate to matters in this case that are

 7    also the same.  Does that make sense?

 8              THE COURT:  I think I better hear, but I

 9    think what you're telling me is that they are

10    substantially related.  And if they're substantially

11    related, that is going to create some problems, isn't

12    it?

13              MR. BLACKBURN:  Absolutely.

14              THE COURT:  Is your position that if the

15    Government continues to want to call Mr. Garcia, that

16    you're going to have to withdraw?

17              MR. BLACKBURN:  Unless the Court can

18    fashion out a Chinese wall situation, which could be

19    difficult.

20              But as we were proposing yesterday, a

21    different scenario that would take care of that both

22    ways in the 1613 matter, and the Court was asking

23    us -- and I'm just throwing it out again -- the Court

24    was asking us to talk to the 1613 people.  I know the

25    Court was concerned about adding another defendant or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8943

```
 1   not having enough room but Mr. Garcia is already
 2   charged in 1613 in the overt acts, the two overt
 3   acts, as it relates to -- the overt act that relates
 4   to the murder in 2007 is in 1613.  So the Government
 5   would have to do the same thing, prove everything in
 6   1613, and use the same amount of witnesses in 1613 as
 7   they would in 4268.  That was the reason why we were
 8   saying that they could move that to the 1613.
 9           For some reason, as I've tried to explain
10   to the other 1613 people that this does not add
11   anything new; it's the same thing, we maybe add one
12   verdict form, but they're concerned about a
13   severance, which you can file a severance.  But a few
14   of them said that they would not agree to a joinder
15   of this.  Although I think I talked to the
16   Government; they can do it themselves.  But that's
17   one alternative.
18           The other alternative is, if there would be
19   walled-off lawyers, because -- and it would have to
20   be a different lawyer completely.  But there are
21   issues with having a walled-off lawyer, as it relates
22   to my participation in openings and closings, and
23   situations like that, would have to bring in a
24   brand-new lawyer all over.  And so that's another
25   issue.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8944

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 265 945

```
 1            But I think that the only alternative is
 2   to -- well, obviously, if Mr. Garcia doesn't testify,
 3   this is all moot.
 4            THE COURT:  Well, how long do you think
 5   your ex parte explanation to me will take?
 6            MR. BLACKBURN:  Me?
 7            THE COURT:  Yeah, you, Mr. Blackburn.
 8            MR. BLACKBURN:  I can get it done in maybe
 9   10, 15 minutes, Judge.  How long did you give Castle?
10            THE COURT:  I gave him 10, and he only took
11   10.  All right.  Well, let's do this:  Any objection
12   to me hearing this, Ms. Armijo?  Any other defendant
13   hearing, a problem?
14            MR. CASTLE:  As long as we don't have to
15   listen to it.
16            THE COURT:  All right.  So we'll plan on
17   breaking then at 10 after, and I'll take that, and
18   then, at 10 after, I'll take five minutes for ex
19   parte, and then I'll end the day with you,
20   Mr. Blackburn.
21            MR. BLACKBURN:  Pardon me?
22            THE COURT:  I said we will break at 5:10.
23   I will have a five-minute CJA meeting with everybody
24   else, then I'll end the day by listening to you for
25   15 minutes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8945

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 266946

```
 1              MR. BLACKBURN:  Okay.

 2              THE COURT:  All right.

 3              (A discussion was held off the record.)

 4              THE COURT:  All right.  Let's go back on

 5    the record.  What Deputy Gunter was saying -- he was

 6    wondering if I'm going to do any more.  I'm not going

 7    to do any more on the searches.  We've given all of

 8    our thoughts to the taint team.  And the taint team

 9    is going to talk to the marshals.  And then the

10    marshals do what they're going to do.  But I'm not

11    going to give any more direction.  I think that was

12    what our understanding was.  We'll leave it to them

13    to try to do their jobs, and just leave it with them.

14    We'll see what they do.

15              All right.  So before we begin, I'm going

16    to have Mr. Blackburn, if you and Mr. Gallegos would

17    come up here to the podium, so if the marshals want

18    to come up with you, I am going to do a colloquy here

19    and see -- if I can't get a waiver from Mr. James

20    Garcia, let's at least see that Mr. Gallegos (sic) is

21    comfortable with your representations.

22              MR. BLACKBURN:  Mr. Arturo Garcia?

23              THE COURT:  Yeah.  So we'll make sure that

24    he's comfortable with the representations.

25              MR. BLACKBURN:  So we've got three Garcias:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8946

```
 1    Billy Garcia, Arturo Garcia, and Daffy Garcia.  So --
 2    this is Arturo Garcia.
 3            THE COURT:  All right.  Mr. Arturo Garcia,
 4    I'm going to explain a couple of things to you.  And
 5    if you have questions at all during anything I
 6    explain to you -- or I'm trying to explain to you,
 7    don't hesitate to ask, okay?
 8            DEFENDANT ARTURO GARCIA:  All right.
 9            THE COURT:  All right.  You understand you
10    have a right to a conflict-free counsel; in other
11    words, you have a right to have a counsel that has
12    loyalty only to you.  Do you understand you have that
13    constitutional right?
14            DEFENDANT ARTURO GARCIA:  Yes, I do.
15            THE COURT:  And do you understand the facts
16    surrounding Mr. Blackburn's previous representation
17    of Mr. James Garcia?
18            DEFENDANT ARTURO GARCIA:  Yes.
19            THE COURT:  Has he talked to you about
20    that?
21            DEFENDANT ARTURO GARCIA:  Yes.
22            THE COURT:  Now, I haven't fully talked to
23    Mr. Blackburn.  I'm going to do that later this
24    afternoon to determine whether it was related or
25    unrelated criminal case.  But has he talked to you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8947

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 268

1    about that case so that you have a full sense of

2    whether it's related, unrelated, or how it relates?

3             DEFENDANT ARTURO GARCIA:  Yeah, we spoke.

4             THE COURT:  All right.  But I mean --

5             DEFENDANT ARTURO GARCIA:  I understand.

6             THE COURT:  I know you've spoken, but do

7    you understand the facts?  Do you need any more

8    information from Mr. Blackburn, or to a certain

9    extent the Court?

10            DEFENDANT ARTURO GARCIA:  I'm just waiting

11   to see what you're going to decide.

12            THE COURT:  Okay.  All right.  That's part

13   of what I'm doing here, is trying to get some

14   information from you at this point.

15            Do you understand that Mr. Blackburn may

16   have some duties of loyalty stemming from his

17   previous representation of Mr. James Garcia?  In

18   other words, even though he represented him 20-plus

19   years ago, he still has some duties of loyalty about

20   confidentiality and some other things.  Do you

21   understand he has those?

22            DEFENDANT ARTURO GARCIA:  Yes.

23            THE COURT:  And do you understand that

24   Mr. Blackburn's duties to Mr. James Garcia may impact

25   his representation of you?  Do you understand it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8948

```
 1    could happen that it could impact you?

 2              DEFENDANT ARTURO GARCIA:  Yes.

 3              THE COURT:  And one way it might occur is

 4    that Mr. Blackburn might recall some pertinent

 5    information that he learned during the course of his

 6    representation of Mr. James Garcia.  Do you

 7    understand that something he's not even thinking

 8    about today, he might all of a sudden remember in the

 9    middle of the trial, or at some later point, and

10    there he'd be with some information that he remembers

11    from that.  And he might have an obligation not to

12    disclose it in any way.  Do you understand that could

13    occur?

14              DEFENDANT ARTURO GARCIA:  Yes, like some of

15    the witnesses.

16              THE COURT:  You think Mr. Blackburn's

17    memory might be like some of the witnesses?

18              DEFENDANT ARTURO GARCIA:  It could happen.

19              THE COURT:  All right.  But you understand

20    that could happen?  You've seen it happen in the

21    courtroom, right?

22              DEFENDANT ARTURO GARCIA:  Yeah.

23              THE COURT:  You understand that there is a

24    risk that Mr. Blackburn will have to then choose

25    between his loyalty, duty of loyalty to Mr. James
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8949

1   Garcia, and his duty to zealously advocate for you?

2   Do you understand that that point might come?

3          DEFENDANT ARTURO GARCIA:  Yes.

4          THE COURT:  And if Mr. Blackburn chooses --

5   or if Mr. James Garcia chooses at some point, which

6   it looks like he is going to at some point cooperate

7   and testify in this case, which looks like it really

8   may happen, that Mr. Blackburn may be forced to

9   cross-examine Mr. James Garcia.  And then his duty of

10  loyalty to him may affect his performance in that

11  cross-examination?  Do you understand that could

12  occur?

13         DEFENDANT ARTURO GARCIA:  Yes.

14         THE COURT:  Additionally, Mr. Blackburn's

15  duties to Mr. James Garcia may -- they may affect

16  some trial strategies, things that you and I can't

17  even really predict at this point, but do you

18  understand that that could happen?

19         DEFENDANT ARTURO GARCIA:  Yes.

20         THE COURT:  It could happen about --

21  including some arguments regarding relative

22  culpability about some things in this trial, so that

23  he has to argue, you know that, you know, so and so

24  more liable, less liable, or something like that; he

25  might make some arguments like that.  Do you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8950

1    understand that could happen, so there could be some

2    comparisons between you and Mr. James Garcia?

3              DEFENDANT ARTURO GARCIA:  Yes.

4              THE COURT:  I have a waiver form that I'm

5    going to ask Ms. Bevel to copy for me.  And I'm going

6    to ask you to look it over with Mr. Blackburn.  And I

7    would really like for you to look it over with Mr.

8    Davidson; kind of put it -- independent counsel

9    here -- if he could look at it and talk to you about

10   it.  And if you and Mr. Blackburn are prepared to

11   tell me an attorney to track down for you, a third

12   one, I'd be glad to do that.  But I would like for

13   you to look at it with Mr. Davidson, if you can.  And

14   if you can't, you'll have to review it with Mr.

15   Blackburn.  But I'll give you this form.

16             Will you promise to sit down and review

17   this with one or both of your attorneys --

18             DEFENDANT ARTURO GARCIA:  Yes.

19             THE COURT:  -- and look at it?  And then,

20   if you feel comfortable executing it, you can execute

21   it and we'll file it in the court.  If you don't feel

22   comfortable executing it, then have Mr. Blackburn or

23   Mr. Davidson contact me immediately and say you're

24   not willing to waive any sort of conflict here, okay.

25             DEFENDANT ARTURO GARCIA:  Okay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8951

```
 1              THE COURT:  Now, knowing that a conflict
 2    may arise in the future, and the risk associated with
 3    such a conflict, do you still wish to waive that
 4    conflict and continue with Mr. Blackburn as your
 5    attorney?
 6              DEFENDANT ARTURO GARCIA:  Yes, I would.
 7              THE COURT:  All right.  So you think at the
 8    present time you know enough to make a voluntary
 9    waiver and a knowing waiver, and that you still want
10    Mr. Blackburn to be your attorney.
11              DEFENDANT ARTURO GARCIA:  Yeah, he's pretty
12    much explained everything to me.
13              THE COURT:  You feel you have a pretty good
14    grasp on things?
15              DEFENDANT ARTURO GARCIA:  Yeah.
16              THE COURT:  Other than me making a
17    decision, is there any questions you want to ask me?
18              DEFENDANT ARTURO GARCIA:  No.
19              THE COURT:  Okay.  All right.  So I'm going
20    to have you look at this form.  Ms. Bevel, if you'll
21    make a copy of those two forms.  One of them doesn't
22    apply to Mr. Garcia, but -- Mr. Arturo Garcia -- but
23    it would apply to the other, but I'll let you look at
24    the forms and figure out which one it is.
25              MR. BLACKBURN:  Sure.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            THE COURT:  Rather than me trying to sort

 2   it out, I'll give you both forms.

 3            MR. BLACKBURN:  Do you want him to take it

 4   with him or -- I don't want it to get seized.

 5            THE COURT:  Well, why don't you tell him to

 6   make two copies; make one for Mr. Blackburn and make

 7   one for Mr. Arturo Garcia, and we'll -- if he can

 8   take it with him, great; if not, when you meet, y'all

 9   can go over it.

10            DEFENDANT ARTURO GARCIA:  And you'll talk

11   with Scott.

12            MR. BLACKBURN:  Yes.

13            THE COURT:  All right.  Thank you, Mr.

14   Blackburn.

15            All right.  We've got five minutes.  Do

16   y'all want to go back to -- is there anything as far

17   as pretrial?  I know we never, believe it or not,

18   kind of did a complete pretrial, but we started doing

19   a lot of the motions.  I don't see anything else,

20   very quickly going through my pretrial list, that

21   looks like it needs to be covered.

22            If I don't hear anything, let's go to Mr.

23   Troup's restricted response to the motion in limine

24   regarding 404(b), the penal interests.  Hold on just

25   a second.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8953

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 274954

```
 1              Before you leave today, I will have a chart
 2    that begins the penal interests.  I only got one
 3    analyzed.  So you'll get that one.  You'll also get
 4    the -- my sort of principles for applying that.  So
 5    you'll see those there as well.  Again, this is a
 6    draft, so it's not going to be complete.  I'll try to
 7    get these out to you over the weekend.  But at least
 8    at the present time, that's about all I can give you.
 9              Is there anything else you want to say on
10    the penal interests?  I think you filed the motion,
11    Mr. Beck.  I have read it, and I got the response
12    from Mr. Troup.  I am looking at these individually,
13    and will take the testimony that's been taken into
14    account.  But anything else on those 804(b)(3)
15    statements you want to say?
16              MR. BECK:  No, I think it can probably
17    stand on the briefing and what the Court's said here.
18              THE COURT:  All right.  Does that work for
19    you as well, Mr. Burke?
20              MR. BURKE:  It does, Your Honor.  But I
21    just have to note the irony that the two statements
22    that were attached to the motion were James Daffy
23    Garcia's and Frederick Football Head Quintana's.  It
24    just happened to be that those were the two
25    statements, and you heard a lot about those.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8954

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 275

```
 1                THE COURT:  Okay.  So I'll try to get y'all
 2    a chart.  This list has grown a little bit.  I think
 3    it was six when we started.  It's grown a little bit.
 4    I'll try to get the chart out to you.  But you'll get
 5    the beginning of the chart, and you'll have my
 6    analysis of one, and it will kind of give you an idea
 7    of where I'm going on the others.
 8                Anything else, then, on the penal
 9    interests, Mr. Beck?
10                MR. BECK:  I think Mr. Castle and I are
11    talking, I think a claims chart that was emailed to
12    Your Honor, after the request to kind of figure out
13    what was still in play.  I think we have a couple
14    disagreements that he and I might work out.  And it
15    probably makes more sense just to submit sort of a
16    second draft of this.  I don't know.
17                THE COURT:  A claims chart?
18                MR. CASTLE:  That's from the motion to
19    dismiss.  I think he switched over to the motion to
20    dismiss.
21                THE COURT:  Okay.  Anything else on the
22    penal interests.
23                MR. BECK:  No.
24                THE COURT:  Anything else from the
25    defendants you want to tell me before I finalize the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    chart and get it to you over the weekend?
 2           MR. CASTLE:  I don't know if the Court -- I
 3    probably filed enough for the Court to read, but --
 4           THE COURT:  I have read it all.  I think --
 5    yes, I read everything.
 6           MR. CASTLE:  I'm wondering, in lieu of
 7    making an argument, I can put together a small, less
 8    than five-page summary argument about the application
 9    of 804(b)(3) to the specific statements that we're
10    talking about.
11           THE COURT:  I don't have any problem with
12    that.
13           I am going to probably accelerate my chart
14    work over the weekend.
15           MR. CASTLE:  I can file it by tomorrow,
16    Judge.
17           THE COURT:  Okay.  That would be fine.
18           And if you have anything else you want to
19    say on it, Mr. Beck, you're welcome to as well.  You
20    don't have to.  I'm just leaving you an opportunity.
21           MR. BECK:  I've probably got bigger fish to
22    fry and things we can talk about later.
23           THE COURT:  All right.  So if there is
24    nothing else on penal interests, then I will try to
25    get that out over the weekend, and complete my James
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    chart as well.

 2              Did you have something you wanted to go to,

 3    Mr. Beck?

 4              MR. BECK:  Well, you told us you were going

 5    to kick us out at 5:10.  And I don't want to stand in

 6    the way of you kicking us out.

 7              THE COURT:  You have two minutes.

 8              MR. BECK:  So, as I said, I think this was

 9    a chart emailed to the JOB proposed text email

10    address in relation to the motion to dismiss.

11              THE COURT:  Okay.

12              MR. BECK:  I think we probably have

13    differing opinions on how some of this stuff is

14    outstanding.  But, as I said, I'm going to get with

15    Mr. Castle and kind of talk about those issues, and

16    see if we can resolve them.

17              THE COURT:  So this will be after Mr. Acee

18    did his review over here, and after we've had some

19    witnesses, the list of unknowns is smaller; is

20    that --

21              MR. BECK:  Yes.  I think that's the

22    position of both parties.

23              THE COURT:  So this will tell me where we

24    are currently?

25              MR. BECK:  I think so, yeah.  So my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8957

1  understanding is that the video of the prison cells,

2  we just disclosed that, because first thing that

3  happened when we opened up the physical evidence

4  Garza and Castillo box was there is a videotape

5  sitting there.  So the State Police said that that

6  video was presented when the defense teams looked at

7  that evidence prior.  I don't know whether it was.

8  But what we did is we converted it to DVD and just

9  provided that to the defense in the last couple of

10 weeks.  I think March 30 stands out in my mind.

11          So, as I said, Mr. Castle and I will email

12 about this, and we'll get something back to the

13 Court.

14          THE COURT:  All right.  Thank you,

15 Mr. Beck.

16          All right.  We probably better bring it to

17 a close unless somebody has got something pretty

18 urgent.  Otherwise, I will ask the Government to

19 leave.  I'll have a five-minute CJA meeting.  Then

20 I'll hear from Mr. Blackburn.

21          And everybody be here at 8:30 on Monday,

22 and we'll try to see if there are some issues before

23 we bring the jury in at 9:00.

24          Y'all have a good weekend.  I've been in

25 your shoes before and I'm going to be working hard

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8958

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 279959

1    too.  I know it's harder on you than it is on me.

2    But we'll work together.  We'll get it through.  Have

3    a good weekend.  See you on Monday.

4            (Ex parte CJA meeting was held.)

5            (Ex parte hearing regarding Blackburn

6    potential conflict was held.)

7

8            (The Court stood in recess.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8959

```
 1                 C-E-R-T-I-F-I-C-A-T-E

 2

 3   UNITED STATES OF AMERICA

 4   DISTRICT OF NEW MEXICO

 5

 6

 7       I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8   Official Court Reporter for the State of New Mexico,

 9   do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13       In testimony whereof, I have hereunto set my

14   hand on April 14, 2018.

15

16

17

18                     _____
                       Jennifer Bean, FAPR, RMR-RDR-CCR
19                     Certified Realtime Reporter
                       United States Court Reporter
20                     NM CCR #94
                       333 Lomas, Northwest
21                     Albuquerque, New Mexico 87102
                       Phone:  (505) 348-2283
22                     Fax:    (505) 843-9492

23

24

25
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1             IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                   Plaintiff,

5       vs.              NO:  CR-15-4268 JB

6    ANGEL DELEON, et al.,

7                   Defendants.

8

9                    VOLUME 1

10       Transcript of Motion Proceeding before The

11   Honorable James O. Browning, United States District

12   Judge, Las Cruces, Dona Ana County, New Mexico,

13   commencing on December 17, 2018.

14   For the Plaintiff:  Ms. Maria Armijo, Mr. Randy
     Castellano
15
     For the Defendants:  Mr. Brock Benjamin; Ms. Cori
16   Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper; Mr.
     Scott Davidson; Ms. Amy Jacks; Ms. Lauren Noriega;
17   Mr. Marc Lowry; Ms. Carey Bhalla, Mr. Bill Maynard;
     Mr. Donovan Roberts; Ms. Lisa Torraco; Mr. James
18   Castle

19

20

21        Jennifer Bean, FAPR, RDR, RMR, CCR
            United States Court Reporter
22          Certified Realtime Reporter
              333 Lomas, Northwest
23           Albuquerque, NM  87102
             Phone:   (505) 348-2283
24            Fax:   (505) 843-9492

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              I N D E X
 2  EXAMINATION OF BRYAN ACEE
 3  By Mr. Castle                         8
 4  By Ms. Armijo                        55
 5  By Mr. Castle                        74
 6  EXAMINATION OF NANCY STEMO
 7  By Ms. Jacks                         87
 8  By Mr. Castellano                   129
 9  By Ms. Jacks                        136
10  By Mr. Castellano                   142
11  By Ms. Jacks                        148
12  EXAMINATION OF LEONOR DELGADO
13  By Mr. Lowry                        248
14  By Ms. Armijo                       260
15  EXAMINATION OF JAMES ROBERT BREWSTER
16  By Mr. Lowry                        264
17  By Ms. Armijo                       277
18  By Mr. Lowry                        284
19  EXAMINATION OF SERGIO SAPIEN
20  By Ms. Armijo                       287
21  By Mr. Lowry                        306
22  By Ms. Armijo                       317
23  REPORTER'S CERTIFICATE              332
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8963

```
 1              THE COURT:  All right.  Let's get started
 2   here.  Good morning, everyone.  Do I get to say I
 3   missed you?
 4              SEVERAL VOICES:  Yes.
 5              THE COURT:  All right.  Okay.  All right.
 6   The Court will call United States of America versus
 7   Angel DeLeon, criminal number 15-4268-JB.  If
 8   counsel will enter their appearances for the
 9   Government.
10              MS. ARMIJO:  Maria Armijo on behalf of the
11   United States and Randy Castellano.  Good morning,
12   Your Honor.
13              THE COURT:  Ms. Armijo and Mr. Castellano,
14   good morning to you.  And for defendant --
15              (Off-the-record discussion.)
16              THE COURT:  All right.  Speak, and we'll
17   get some microphones working here.
18              MR. BENJAMIN:  Good morning, Your Honor.
19   Brock Benjamin on behalf of Mr. Gallegos.
20              THE COURT:  Mr. Benjamin, good morning to
21   you.  Mr. Gallegos, good morning to you.
22              THE DEFENDANT:  Good morning.
23              THE COURT:  And for defendant Edward
24   Troup.
25              MS. HARBOUR-VALDEZ:  Good morning, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8963

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8964

```
 1   Honor, Cori Harbour-Valdez and Pat Burke on behalf
 2   of Edward Troup.
 3          THE COURT:  Good morning to you.
 4          THE DEFENDANT:  Good morning.
 5          THE COURT:  And for defendant Billy
 6   Garcia.
 7          MR. COOPER:  Good morning, Your Honor.
 8   Bob Cooper and Jim Castle on behalf of Billy Garcia,
 9   and he's present.
10          THE COURT:  Mr. Cooper, Mr. Castle, and
11   Mr. Garcia, good morning to you.
12          And for defendant Arturo Arnulfo Garcia.
13          MR. DAVIDSON:  Good morning, Your Honor.
14   Scott Davidson here on behalf of Mr. Arturo Garcia.
15   Mr. Blackburn will join us later.
16          THE COURT:  Mr. Davidson, good morning to
17   you.  Mr. Garcia, good morning to you.
18          And for defendant Daniel Sanchez.
19          MS. JACKS:  Good morning, Your Honor.  Amy
20   Jacks and Lauren Noriega on behalf of Mr. Sanchez.
21          THE COURT:  All right.  Ms. Jacks, Ms.
22   Noriega, and Mr. Sanchez, good morning to you.
23          THE DEFENDANT:  Good morning.
24          THE COURT:  For defendant Anthony Ray
25   Baca.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8964

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8965

```
 1              MR. LOWRY:  Marc Lowery on behalf of
 2   Anthony Ray Baca, who is present in court today at
 3   my right.
 4              THE COURT:  All right, Mr. Lowry.  Is Ms.
 5   Duncan back there?
 6              MR. LOWRY:  No, Your Honor.  She's going
 7   to be absent.
 8              THE COURT:  All right.  Mr. Lowry, Mr.
 9   Baca, good morning to you.
10              And for defendant Carlos Herrera.
11              MS. BHALLA:  Good morning, Your Honor.
12   Carey Bhalla for Mr. Herrera.
13              MR. MAYNARD:  Bill Maynard for Mr.
14   Herrera.
15              THE COURT:  All right, Ms. Bhalla, Mr.
16   Maynard, and Mr. Herrera, good morning to you.
17              And for defendant Andrew Gallegos.
18              MR. ROBERTS:  Good morning, Your Honor.
19   Donovan Roberts and Lisa Torraco for Mr. Gallegos.
20              THE COURT:  All right.  Mr. Roberts, Ms.
21   Torraco, and Mr. Gallegos, good morning to you.
22              All right.  We're here on a number of
23   motions.  I understand that y'all have agreed or at
24   least submitted a batting order, and I think the
25   first one is document 2416.  This is Mr. Billy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8965

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8966

```
 1   Garcia's motion to produce post-conviction
 2   discovery, and for in camera review.  I understand
 3   that everyone else has also joined this motion.
 4   Let's see.  Seven.  Yes.
 5             So Mr. Castle, are you going to take the
 6   lead on this motion?
 7             MR. CASTLE:  Yes, Your Honor.
 8             MR. CASTELLANO:  Your Honor, how does the
 9   Court want us to mark exhibits for this?
10             THE COURT:  I think probably since it's a
11   discrete hearing, why don't -- I'm going to go back.
12   I guess having gotten into this, I'll tell you where
13   I'm going with drafting an opinion.  It seems to me
14   that because of the evidence issues, I am probably
15   going to draft -- this is what I'm thinking at the
16   present time -- draft an opinion on the first trial
17   and then draft an opinion on the second trial.
18             And it seemed to me that this motion,
19   while y'all put it at the beginning, is probably
20   going to go at the bottom of the second motion.  So
21   that's my sort of thoughts at the present time.  So
22   with that, it seems to me that we ought to do what
23   we did in the pretrial:  This ought to be
24   Defendant's Exhibit 1 for -- we can call it Motion
25   1, we can talk about Document 2416.  Excuse me.  It
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   should be Document A, not 1, the Government for any
 2   exhibits.  But Document A.  If you want to do it by
 3   Motion 1 or if you want to do it by Document Number
 4   2416, that way I'll keep everything straight when I
 5   go back to Albuquerque and work on these opinions.
 6   How does that work for you?
 7            MR. CASTLE:  That sounds good.  I think I
 8   prefer to do it by Exhibit A, Document 2416.
 9            THE COURT:  That will be very clean.  So I
10   don't dispute that at all.
11            MR. CASTLE:  Your Honor, I'm offering
12   Defendant's Exhibits A and B by stipulation with the
13   Government.  We are requesting it be under seal
14   because some of the documents include phone records
15   by Agent Acee.
16            THE COURT:  All right.  Any objection from
17   any of the other defendants?  Not hearing any.
18   Ms. Armijo?
19            MS. ARMIJO:  No objection, Your Honor.
20            THE COURT:  All right.  So Defendant's
21   Exhibits A and B for Document 2416 will be admitted
22   into evidence.
23            (Defendant Garcia Exhibits A and B
24   admitted.)
25            MR. CASTLE:  Your Honor, at this time I'd
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   like to call Agent Bryan Acee to the stand.

 2            THE COURT:  All right.  Mr. Acee, if

 3   you'll return to the witness box up here, and I'll

 4   remind you that you're still under oath.  I guess

 5   since we're starting a new hearing, let me have

 6   Ms. Bevel swear you in, if you'll raise your right

 7   hand.

 8                    BRYAN ACEE,

 9        after having been first duly sworn under oath,

10        was questioned, and testified as follows:

11            THE COURT:  Mr. Acee, Mr. Castle.

12                 DIRECT EXAMINATION

13   BY MR. CASTLE:

14        Q.   Good morning, Agent.

15        A.   Good morning.

16        Q.   We meet again.

17            Agent Acee, I'm going to ask you some

18   questions regarding some text messages and phone

19   calls you had with an individual by the name of

20   Leroy Lucero.  Is that a person you're familiar

21   with?

22        A.   Yes, sir.

23        Q.   When did you first have a conversation

24   with Mr. Lucero?  If you could give us a year,

25   perhaps, to start with.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8968

```
 1         A.    I think it was in 2016.

 2         Q.    And do you know, can you try to give us a

 3   month?

 4         A.    Not without looking at 302s, no.

 5         Q.    Would that have been in the formal

 6   interview that was reduced to a 302?

 7         A.    Yes, sir.

 8         Q.    In 2018 -- I'll get directly to the

 9   issue -- did you begin to have further contact with

10   Mr. Lucero either by text message or by phone call?

11         A.    Yes.

12         Q.    How many times approximately did you have

13   phone calls with him?

14         A.    I'd defer to the phone records.  I'm not

15   sure.

16         Q.    Would all of the phone calls that you made

17   with him be reflected in the phone records that were

18   produced in discovery?

19         A.    Yes.

20         Q.    So you didn't use any other cellphone or

21   land line to have phone call discussions with Mr.

22   Lucero?

23         A.    Not that I recall.  I mean, it's always

24   possible a person could call the office and be

25   transferred to my desk, but I don't believe so.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8969

```
 1    think it was all over cellphone.
 2         Q.   Did you have an opportunity to look at
 3    Motion Number or Document Number 2416?
 4         A.   I have 2438, and I may not have 2416, sir.
 5              MR. CASTLE:  May I approach the witness,
 6    Your Honor?
 7              THE COURT:  You may.
 8    BY MR. CASTLE:
 9         Q.   I show you what is labeled Document 2416.
10    Does that look familiar?
11         A.   Yes, sir.
12         Q.   And you were provided with what's known as
13    a Touhy letter in this case; is that right?
14         A.   Yes, sir.
15         Q.   And it was indicated that these two
16    motions or these two, at least, documents were going
17    to be discussed during this hearing?
18         A.   Yes.
19         Q.   Okay.  If you could turn to page 3, there
20    is a letter C here.  It indicates there were 92 text
21    messages and 41 phone calls that you had with Mr.
22    Lucero.  Is that an accurate calculation of the
23    number of calls and text messages, or did you
24    ever --
25         A.   I presume.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



DNM 8970

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8971

 1      Q.    Okay.  You didn't go back and count;

 2   right?

 3      A.    No, sir.

 4      Q.    Agent Acee, I'm going to show you what's

 5   been admitted as Exhibit B.  If you could take this

 6   yellow highlighter and highlight your phone number,

 7   if it's reflected in those records.  Just the first

 8   time.  You don't need to each time.

 9            Looks like you've gone through at least

10   five pages.  Your phone number is not reflected on

11   the first five pages?

12      A.    I don't believe so.

13      Q.    Whose records are these?  Can you tell us

14   whose records they are?

15      A.    I presume they're Leroy Lucero's.  I can

16   give you the phone number that they pertain to.

17      Q.    Why don't you go to the day of February 15

18   and see if you can find a phone call that Mr. Lucero

19   had with you.

20            MS. BHALLA:  Your Honor, sorry.

21            Mr. Acee, do you mind speaking into the --

22   I'm having a hard time hearing you.  I'm sorry.

23      A.    So this one I've highlighted I believe is

24   the first.

25      Q.    And that's at page 10 of Exhibit B; is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8971

```
 1   that right?
 2        A.   Yes, sir.
 3        Q.   Now, that number is no longer operational;
 4   is that my understanding?
 5        A.   Correct.
 6        Q.   So disclosing that number on the record
 7   wouldn't endanger anyone?
 8        A.   No, sir.
 9        Q.   Okay.  What number is that?
10        A.   (505) 231-2844.
11        Q.   Was this a personal cellphone, or was this
12   a cellphone that was issued by the FBI?
13        A.   It's an FBI cellphone.
14        Q.   Are there policies concerning the
15   retention of such phones or destruction of such
16   phones?
17        A.   Yes.
18        Q.   What does the policy say?
19        A.   With the phone itself, I'm not sure.  But
20   we have policies regarding records retention.
21        Q.   I show you what's been admitted as Exhibit
22   A.  Are you able to tell us if it's the actual
23   policy, or if this is a different policy?
24        A.   This is the policy.
25        Q.   And can you paraphrase what the policy
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8972

```
 1  requires with regard to the retention of FBI
 2  cellphones and/or data contained thereon?
 3       A.   The policy doesn't address the cellphone
 4  itself.  It address records.
 5       Q.   Okay.
 6       A.   And the Bureau categorizes records into
 7  different categories.  And depending on what
 8  category there is, there are retention policies and
 9  terms or term limits in terms of how long the record
10  needs to be retained.
11       Q.   And can you tell us what the categories
12  are?
13       A.   Do you mind if I --
14       Q.   Absolutely.  Refer to Exhibit A if you
15  need to.
16       A.   I know that off the top of my head,
17  there's transitory, nontransitory, and nonrecord.
18  But I would want to review the policy a little
19  closer if we're going to get into details on it.
20       Q.   That's fine.
21       A.   Okay.  As I mentioned, there are three
22  types of records that the policy recognizes:
23  Nontransitory, transitory, and nonrecord.
24       Q.   What is your understanding of the
25  difference between transitory and nontransitory?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1       A.   The first thing that jumps out is the
 2  significance of it.  So a nontransitory record would
 3  be something that would maybe be the highest level,
 4  I'll say, in terms of retention.  Nontransitory
 5  records are typically something that we would upload
 6  into Sentinel, which is our report database.  We put
 7  a case number on it and we keep it.
 8       Q.   Let me ask you a couple follow-up
 9  questions.  So would that be, for example, if a
10  recording on a phone or a text message on a phone
11  contains something that is relevant to an
12  investigation?
13       A.   Yes.
14       Q.   Did you have more than one cellphone that
15  you used at this time?
16       A.   At times.  I mean, at times I'll have as
17  many as -- I think I've had as many as six.  It just
18  depends how many undercover operations we have
19  going.
20       Q.   Why did you use this particular phone to
21  make all your phone calls with Mr. Lucero?
22       A.   Because it was my Bureau-issued phone.  So
23  for people to contact me in a work context, other
24  than family, that's the phone number they had for
25  me.  Mr. Lucero wouldn't have had any other phone



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  numbers.

 2      Q.    Now, would there be times during this

 3  investigation in particular where you would get a

 4  phone call or place a phone call where the content

 5  of the phone call was investigatory in nature?

 6      A.    Yes.

 7      Q.    The same with text messages.  Did you

 8  receive or place text messages on that phone that at

 9  times were investigatory in nature?

10      A.    If I had control over it, I usually tried

11  to do it with a phone call and a recording.  There

12  may have been some text or email.  None are jumping

13  out at me off the top of my head.

14      Q.    When you retired this phone, I guess is,

15  how did you end up terminating the use of the phone?

16  What would you call it?

17      A.    Well, the Bureau updates our phones every

18  so often.  We have no control over that.  We're

19  given a date and a time.  We show up with our phone

20  and we're issued a new phone.

21      Q.    And do you at that time -- well, is it a

22  person who does this, that gives you the phone?

23      A.    It is, yes.

24      Q.    And do you go through with them and say,

25  "Now, this particular text message is nontransitory,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8975

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8976

 1   investigative record, and this one is not?"

 2        Do you go through those things and kind of

 3   delineate which needs to be retained and which do

 4   not?

 5        A.   That responsibility falls on me.  The

 6   person that I'm meeting with to obtain the new phone

 7   is just an enterprise security operations group that

 8   just says, "Here is your new phone and here are the

 9   security features," and they'll brief us on whatever

10   updates might be in there.

11        Q.   Did you in your -- after this motion was

12   filed, did you follow up and determine what happened

13   to the phone?

14        A.   I did, sir.

15        Q.   And what happened to the phone, to your

16   knowledge?

17        A.   So I believe the phone that you're

18   interested in was two phones ago.  So if I

19   understand the timeframe you're looking for, that

20   was when I had the Galaxy S5, and that phone has

21   been destroyed.

22        Q.   In what way?

23        A.   I don't know.  The Bureau -- I asked the

24   same question.  I spoke with our enterprise IT point

25   of contact for my squad, and I also talked to his

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                                                            e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 8976

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8977

 1  supervisor.  What I was told is:  When the Bureau

 2  collect our phones, because of the security

 3  features, they're not wiped clean and sold at a used

 4  cellphone store.  They're destroyed, because of the

 5  security features that are on them.

 6      Q.   Is the data on them downloaded and

 7  retained, at least on that phone that we're talking

 8  about?

 9      A.   Not that I'm aware of, no.

10      Q.   What did you do to determine whether it

11  was downloaded and retained?

12      A.   I asked.

13      Q.   And who did you ask?

14      A.   The first time I asked, I asked Mr. Ortiz.

15  I'm not sure his first name, but he's one of our IT

16  folks.  And the second time, I asked -- because I

17  think I asked in response to an email I got, and

18  then I subsequently received your subpoena and asked

19  again.  And that time I talked to a supervisor by

20  the name of Oray (phonetic) Alverson (phonetic), in

21  the Enterprise IT Protocol Unit.  And she told me

22  that unless there had been a preservation letter

23  sent to Verizon or a litigation hold placed on my

24  communications, that they wouldn't be retained.

25      Q.   Did they indicate how long such a hold --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8977

 1    you know, how soon you'd have to put a hold on that

 2    in order to retain those -- that data?

 3         A.    No, sir.  I have some experience having

 4    litigation holds placed on communications before,

 5    and I know that a reminder comes out every few

 6    months, but...

 7         Q.    At Verizon, is it two years that Verizon

 8    will retain data for a particular phone number, or

 9    is it six months, or do you know?

10         A.    It's three to seven days for text

11    messages.

12         Q.    Well, in this case, okay, let's back up on

13    that.  What kind of data is retained for only three

14    to seven days?

15         A.    Text messages.

16         Q.    The actual content of text messages?

17         A.    Correct, sir.

18         Q.    How about the number that was texted?

19         A.    Oh, the call detail records.  Off the top

20    of my head, I've had luck getting those

21    substantially later, months later, perhaps, maybe a

22    year later I've been able to go back.

23         Q.    Exhibit B before you -- when were those

24    call detail records obtained?  Well, let me ask you

25    in a leading fashion.  Were those records obtained

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8978

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 8979

1    pursuant to a grand jury subpoena that was issued?

2         A.   I believe so.

3         Q.   And would that have been issued on May 3

4    of 2018?

5         A.   That's possible.

6         Q.   How far back do those records go?

7         A.   It looks like they start on February 3,

8    2018.

9         Q.   So just in reviewing that particular

10   exhibit, would it be fair to say that three months

11   of toll records are retained by Verizon?

12        A.   Yes.

13        Q.   The phone that you were talking about --

14   did you have the ability to record a call if

15   something important was being stated on that phone?

16        A.   I carry a couple of recorders, so I can

17   record at almost anytime.

18        Q.   So those are recorders that attach to the

19   phone in some fashion?

20        A.   Yes, sir.  They attach to an ear piece and

21   to the phone itself, and they'll record.

22        Q.   So for example, during trial we would

23   sometimes see you with the ear piece and with your

24   phone.  Would that have been the device we're

25   talking about from, or some other device?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8979

```
 1        A.   No, I didn't make any recordings in the
 2   courtroom.
 3        Q.   Okay.  I wasn't -- I'm not talking about
 4   whether you made recordings, but is it that similar
 5   kind of head piece?
 6        A.   No.
 7        Q.   Okay.  During any of the times that you
 8   were talking to Mr. Lucero, did you record your
 9   phone calls with him?
10        A.   No.  I recorded an interview with him, but
11   no phone calls.
12        Q.   And with respect to the text messages that
13   you had with him, were they just from him to you, or
14   you to him, or both?
15        A.   They'd be both.  I would generally respond
16   if someone texted me.
17        Q.   So is it your memory that the text
18   messages that you had with Mr. Lucero were prompted
19   by him messaging you first and then you responding
20   to that text message?
21        A.   No.  Sometimes I might.  I remember after
22   we interviewed him, I left my sunglasses at his
23   house, so I texted him to say I was coming back to
24   get those.  So there may have been times that I
25   started the text.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And the records would reflect kind of the
 2   order in which those texts were done; is that
 3   correct?
 4        A.   That's correct.
 5        Q.   During the time that -- and I want to kind
 6   of talk about the time period in which you're having
 7   these text messages and phone calls.  Am I accurate
 8   that they would have been between the dates of
 9   February 15, which is the first record that you show
10   there, and then May 3 of 2018?
11        A.   The records for May 3?  I think that's
12   fair.
13        Q.   Would you have perhaps had phone contact
14   with Mr. Lucero prior to February 15, as well,
15   either by text or by voice calls?
16        A.   Yes.
17        Q.   And would you have had contact with Mr.
18   Lucero after February 3, 2018, by either text or
19   voice calls?
20        A.   Perhaps, but not for very much longer.
21        Q.   Now, during that time period was -- had
22   Mr. Lucero either requested an attorney or had one
23   appointed to him?
24        A.   He did have an attorney appointed to him.
25   I just don't recall the timeline there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 8981

```
 1        Q.    During the time period that he had a
 2   lawyer, would it be fair to say that you had phone
 3   contact with him and text message contact with him?
 4        A.    Yes, sir.
 5        Q.    Now, was that with the permission of the
 6   lawyer?
 7        A.    Yes, sir.
 8        Q.    And that was with the knowing -- with the
 9   knowledge of the prosecutors?
10        A.    Yes, sir.
11        Q.    Given that you were having, I guess, some
12   kinds of conversations, either through text message
13   or phone call, with a witness, what parameters were
14   put on you to retain or to take notes or somehow
15   record in some fashion the content of those
16   conversations?
17        A.    If any witness were to give me substantive
18   information or pertinent information, I need to and
19   I must record that.
20        Q.    So that was what you were told, to record
21   anything that was substantive or pertinent?
22        A.    I mean, I guess I was told that at some
23   point in my career, but I know that's a
24   responsibility that I have.
25        Q.    Right, but I mean, this is an unusual
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  situation to some extent when you're contacting

 2  someone represented by counsel; right?

 3       A.   That's not unusual.

 4       Q.   That's not unusual?  Well, for part of

 5  this period, the attorney and Mr. Lucero had

 6  indicated that he wasn't going to make any

 7  statements regarding this case because he was

 8  relying upon his Fifth Amendment right to remain

 9  silent; is that right?

10       A.   Yes.

11       Q.   Okay.  And during that time period that he

12  was still maintaining that right to remain silent,

13  you had communication with him; is that right?

14       A.   I'm not sure I did.

15       Q.   Well, that is the subject of this motion

16  to some extent; is that right?

17       A.   Yes, sir.

18       Q.   And after you had that motion and were

19  told that you were going to be testifying about the

20  content of those motions, did you go back to check

21  to see if any of your communication with Mr. Lucero

22  took place during the time that he had asserted his

23  rights to remain silent under the Fifth Amendment?

24       A.   No, sir.

25       Q.   Specifically at paragraph 9 of Document

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Number 2416, which is the motion I showed you --

 2              MR. CASTLE:  May I approach the witness

 3    again, Your Honor?

 4              THE COURT:  You may.

 5    BY MR. CASTLE:

 6         Q.   It indicates here that Mr. Lucero asserted

 7    his rights in court on March 13, 2018, and

 8    reasserted that right during a March 16, 2018, court

 9    appearance.  One phone call between Mr. Lucero and

10    Agent Acee occurred after court recessed on March

11    13, 2018, and lasted for nearly 15 minutes, followed

12    by 11 text messages and another phone call before

13    Mr. Lucero asserted his Fifth Amendment rights on

14    March 16.

15              Did you ever look to see if that was an

16    accurate statement?

17         A.   I believe you.  I did not look at it,

18    though.

19         Q.   Okay.  So during that time period when he

20    asserted his Fifth Amendment rights and you were

21    having communications with him, at least that part

22    is unusual; it's not normal course of things; right?

23    You don't contact witnesses when they've asserted

24    their Fifth Amendment rights normally, under normal

25    circumstances?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8984

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 8985

```
 1        A.    I don't know that I've been faced with
 2   that exact predicament before.
 3        Q.    Like, for example, Mr. Garcia, after he
 4   was represented by counsel, you would never go and
 5   contact him personally without the consent of
 6   counsel or the permission of the Court or --
 7   generally speaking; right?
 8        A.    That's correct.
 9        Q.    I mean, you might if it's a completely
10   different offense.  That might be an exception?
11        A.    Correct.
12        Q.    One that many people in this courtroom
13   would disagree with, but...
14              So during that particular time period when
15   he's represented by counsel, Mr. Lucero, and where
16   he had asserted his Fifth Amendment rights, were
17   there particular precautions that you were told to
18   take to make sure that your conversations did not, I
19   guess, morph or change into areas that would be
20   protected under that Fifth Amendment right?
21        A.    Yes.
22        Q.    What precautions were you instructed to
23   take?
24        A.    I only talked to him about his travel,
25   safety issues, and then he was still helping us on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8985

```
 1   two other matters unrelated to -- I won't say
 2   unrelated to the SNM, but unrelated to the charged
 3   offenses.
 4       Q.   Are these matters that are reflected in
 5   the discovery documents that have been produced to
 6   the defense?
 7       A.   We turn over everything in the SNM file
 8   under that 245-U.  So if they pertained to the
 9   charges in this case, they would have been turned
10   over.  If they pertained to other matters, I'm not
11   sure.
12       Q.   Well, what were the two matters he was
13   assisting you in?
14       A.   There was an SNM member killed in Las
15   Vegas.  It turned out to be a domestic issue over a
16   female, so he was helping us with that.  And then he
17   was helping us capture Eddie Archuleta, a federal
18   SNM member.
19       Q.   Did he provide accurate information in
20   those two matters?
21       A.   He did to the best of his ability.  In the
22   first matter, it was purely domestic, so we were
23   just asking, "Who is this guy?"  The victim wasn't
24   someone I knew, and because he was from Las Vegas, I
25   inquired about it.  And I did that with his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8986

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 8987

```
 1  attorneys' permission.

 2          And then the other matter, that fugitive

 3  was from Las Vegas, and it's a small town, so I was

 4  just asking if he knew where he hung out, and he

 5  gave us leads.

 6      Q.   And was there a discussion about why he

 7  was providing this information to you?  In other

 8  words, was it in return for anything or --

 9      A.   No, I asked -- and I did that with his

10  attorney's permission, just because it was a small

11  town, and I thought he might have knowledge.

12      Q.   You indicated that during this timeframe

13  where these text messages and phone calls were going

14  on, that he had some concerns about his safety; is

15  that right?

16      A.   He always has concerns about his safety.

17      Q.   What kinds of concerns did he have in that

18  regard that were communicated during these calls and

19  text messages?

20      A.   Just what travel looked like.  How long he

21  would stay, where he would stay.  How he would get

22  to and from the courthouse.  He still lived up in

23  the Las Vegas area.  There was some discussion about

24  per diem issues and then eventual relocation,

25  although most of those conversations were with his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8987

 1   attorney being part of the phone call, as well.

 2       Q.   So some of these calls were three-way

 3   calls, or was Mr. Lucero in the presence of his

 4   attorney?

 5       A.   I think he was in the presence of his

 6   attorney.

 7       Q.   So some of these calls were concerning his

 8   request for per diem compensation for his time in

 9   court?

10       A.   No, just how that worked, and I think the

11   process was slow, the reimbursement checks and

12   things like that, and where to send the check, and

13   what I would call kind of administrative follow-up.

14       Q.   So he wanted to know where his money was?

15       A.   That's fair to say.

16       Q.   And how much are we talking?

17       A.   I'm not sure.  Whatever the per diem rate

18   is for witnesses.

19       Q.   Now, he wasn't a witness called by the

20   Government; right?  He was a witness called by the

21   defense.

22       A.   I think at a motion hearing he might have

23   been called by the defense, but I thought the

24   Government called him during the trial.

25       Q.   During the trial.  Okay.  But these calls

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8989

1  about his per diem -- they were during a motions

2  hearing, as well?

3       A.   I believe so.

4       Q.   So he wanted the Government to pay him

5  some money for his time in court?

6       A.   I don't think that's fair.  I think I was

7  his liaison.  I guess he could have called you

8  directly, but he chose to text me.

9       Q.   Okay.  So let's back up a little bit.  The

10  grand jury subpoena that we're talking about -- why

11  was that requested?

12       A.   I believe Agent Stemo requested that, and

13  it was to investigate whether or not there were

14  potential threats to Mr. Lucero.

15       Q.   And what did you all determine, based upon

16  the materials subpoenaed by the grand jury?  Were

17  you able to confirm that he had received threats?

18       A.   No, not from call detail records.  That

19  determination can't be made.

20       Q.   Did you go through the call detail records

21  with Mr. Lucero or Agent Stemo or someone else from

22  the FBI?

23       A.   I did not.

24       Q.   The purpose of the phone call records is

25  to identify who might have been making those phone

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8989

```
 1    calls; right?
 2         A.   Correct.
 3         Q.   And the only way to do that is -- well,
 4    one is to check with Mr. Lucero and find out if he
 5    recognizes those phone numbers and whether they are
 6    in his cellphone with names on them; right?
 7         A.   That's one way.
 8         Q.   And was that done in this case?
 9         A.   I'm not sure.
10         Q.   Did you ever confirm through your
11    investigation that what Mr. Lucero had told you
12    about receiving these threatening phone calls was
13    true or accurate?
14         A.   That's a question for Agent Stemo.  I was,
15    I think, in trial 3 during that period of time.
16         Q.   Well, have you inquired or learned about
17    that information since these trials?
18         A.   I don't believe a suspect was identified.
19         Q.   Prior -- well, would Agent Stemo have had
20    phone calls and text messages as well with Mr.
21    Lucero?
22         A.   I believe so.
23         Q.   And do those exist anymore, or has that
24    phone been retired?
25         A.   That phone was retired two phones ago,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8990

1    yes.

2         Q.    Would she have had more or less contact

3    with Mr. Lucero than you did?

4              MS. ARMIJO:   Objection, calls for

5    speculation.

6              THE COURT:   Well, if he knows, I'll let

7    him answer.   Overruled.

8         A.    Maybe the best way to answer is that once

9    I got rid of that phone number, none of the

10   cooperating defendants have my phone number anymore.

11   So when I got rid of that phone, I have had no

12   telephone contact with any of the cooperating

13   defendants.

14   BY MR. CASTLE:

15        Q.    Between February and the end of trial

16   number 2, would Agent Stemo have had more or less

17   contact with Mr. Lucero than you did?

18        A.    I imagine less.

19        Q.    Did Mr. Lucero express specific -- during

20   these conversations, did he express specific fear of

21   any one or more of these individual defendants?

22        A.    No.   I can explain what I remember him

23   expressing but --

24        Q.    Please do.

25        A.    Just more like annoying or harassing phone

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8991

1    calls.  Almost like what I'd expect a teenager to do

2    where you're prank-calling people, stuff like that.

3    He would just get phone calls at odd hours and he

4    would just -- no one would express a threat to him.

5    It would just be like they were listening

6    momentarily and then they'd hang up.

7         Q.   Well, the grand jury, I think, subpoena

8    was issued for possible filing of criminal charges

9    of witness intimidation; is that right?

10        A.   It could lead to that, yes.

11        Q.   So what, if anything, did Mr. Lucero tell

12   you that -- or tell the FBI generally that led them

13   to believe that these calls could be evidence of

14   witness intimidation?

15        A.   He just reported that -- well, he reported

16   a few things, but regarding telephone calls, like I

17   just explained, he was getting odd and what he

18   described as annoying or harassing phone calls.

19        Q.   Did he indicate that he was afraid because

20   of the phone calls?

21        A.   He communicated a concern to me, and

22   that's why we looked into it.

23        Q.   What was the concern?

24        A.   Fear.

25        Q.   Did he indicate, because of this fear,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that he at any time was hesitant to come forward,

2    testify, cooperate?

3         A.    No.

4         Q.    None of these defendants were living in

5    the community during the time these phone calls were

6    allegedly placed to Mr. Lucero; is that right?

7         A.    That's correct.

8         Q.    So of the 130 or so communications,

9    between the phone calls and the text messages, that

10   you had, how many of them were concerning issues of

11   fear or concern that Mr. Lucero had?

12        A.    Not very many.

13        Q.    Can you give us a percentage?

14        A.    How many were there, 100 --

15        Q.    130-odd communications.

16        A.    Less than a dozen had to do with him

17   expressing concern.  The majority were

18   travel-related, and then related to those other two

19   matters I discussed.

20        Q.    What percentage of those communications

21   were about his money?

22        A.    Less than a dozen.

23        Q.    And would those have been both text

24   messages and phone calls?

25        A.    No, I think those would have been text



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8993

 1   messages.  I didn't --

 2        Q.   So if you can recall to the best of your

 3   memory, what was the basic gist of those text

 4   messages concerning the money?

 5        A.   How did he go about obtaining it.

 6        Q.   Okay.

 7        A.   What I thought would be on forms provided

 8   to him.  I don't know what's provided to defense

 9   witnesses.  But how he went about obtaining gas

10   money reimbursement.

11        Q.   It would basically be how much and how do

12   I get it?

13        A.   Yes.

14        Q.   Concerning those two other matters, you

15   said that he was accurate to the best of his

16   knowledge.  Okay?  What do you mean by that?

17        A.   He stayed away from SNM members when he

18   got out, because he debriefed.  But because he lived

19   in a small town, I assumed that he would hear or

20   give me some background on where these guys might be

21   hanging out at.  The SNM member that was murdered

22   I'd never heard of, and so I was looking for some

23   background information on the guy.  He didn't seem

24   to know much about him, either.  I think he'd come

25   through the state system and they were generations

SANTA FE OFFICE                                             MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 8994

1    apart.

2            As far as Eddie Archuleta, he knew a

3    little bit about his family, so he was able to

4    provide, I think, a mom and an aunt's general

5    location.

6        Q.   Did he indicate when was the last time he

7    had contact with Mr. Archuleta?

8        A.   He'd run into him in town somewhere and

9    seen him, because he was able to tell us what kind

10   of car he was driving.  And at the time, Archuleta

11   had two arrest warrants:  One from the marshals and

12   one from us.  And the FBI arrest warrant was the

13   result of him providing a location to either the

14   marshals or the FBI, and then Archuleta got arrested

15   with some crack cocaine, and that's how we adopted

16   that case.  So he had some background information on

17   Archuleta's whereabouts.

18       Q.   So he had had some contact with him since

19   he had gotten out of prison, he had some contact

20   with Mr. Archuleta enough to know what kind of car

21   he drove and things of that nature?

22       A.   Yeah.  But I think he saw him in town at a

23   grocery store or someplace like that.  I wouldn't

24   say it was significant contact.  He just observed

25   him enough to pass what he was driving.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8995

```
 1          Q.    How did he know that he was an SNM member?

 2          A.    Because he'd been brought in in the feds.

 3          Q.    So this was -- when would he have been

 4    brought in in the feds, Mr. Archuleta?

 5          A.    I'm not sure of the dates.  I know we have

 6    them recorded somewhere in reports, but I'm not

 7    sure.  He's younger.

 8          Q.    Okay.  So it would have been in the last

 9    five or seven years?

10          A.    I think seven to ten.  I think he was

11    brought in by Fred Quintana, was one of his

12    sponsoring members when Quintana was in the feds,

13    and I think it's been some time.

14          Q.    Would it have been since 2008?

15          A.    Yes.

16          Q.    Okay.  Now there was an issue at trial.

17    Mr. Lucero indicated that after 2008, he had stopped

18    being a member of the SNM and associating with the

19    SNM; is that correct?

20          A.    I don't think I was here for all of his

21    testimony, but I'll take your representation.

22          Q.    Well, you were aware that at least the

23    defense in this case by Mr. Garcia was that it was

24    Mr. Lucero who had ordered the hits and was

25    continuing to be a member of the SNM for quite some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8996

1    time; is that right?

2         A.   Yes.

3         Q.   Did you record and/or preserve this

4    information that Mr. Lucero was still privy to SNM

5    business after 2008 and provide it to the Government

6    in a 302 or anything else?

7         A.   Well, my debrief of Mr. Lucero was

8    recorded, and I turned that over, as well as my 302.

9    I'm not sure if we discussed Eddie Archuleta in

10   there.  It's not unusual for ex members to keep tabs

11   on the S, though.

12        Q.   Okay.  So was he telling you that he was

13   keeping tabs on Mr. Archuleta as an ex member of the

14   SNM?

15        A.   No, that's just my observation and my

16   opinion, that that's not unusual for ex members to

17   keep tabs on the S.

18        Q.   If you conduct an interview with a witness

19   and you're going to talk about multiple different

20   crimes that might not be related, do you at times

21   separate the interview out so that there is perhaps

22   a 302 for one case and another 302 for a different

23   case?

24        A.   Perhaps.

25        Q.   Assume for a moment we don't have anything

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 8997

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8998

 1  concerning this Archuleta investigation in the

 2  discovery in this case.  If you'd just assume that

 3  for a moment.  Would Mr. Lucero -- would you have

 4  produced a 302 in the Archuleta matter concerning

 5  what Mr. Lucero told you?

 6      A.   You know, it depends.  If he just tells me

 7  he's driving a gray BMW, I don't know that I would

 8  have written a 302 to that effect.

 9      Q.   Did you write one in this case in the

10  Archuleta matter concerning what Mr. Lucero told

11  you?

12      A.   Agent Stemo may have, because she's the

13  one that charged him and led that particular

14  investigation of that defendant.

15      Q.   Okay.  So she charged who?

16      A.   Archuleta with the crack cocaine

17  distribution.

18      Q.   Would there be any other 302s of

19  Mr. Lucero that may be located in files that have

20  not been produced to the defense?

21      A.   I don't believe so.  We tried to produce,

22  reproduce, and triple produce 302s so that you have

23  them.

24      Q.   Did you ever see a 302 by Agent Stemo

25  concerning her interview of Mr. Lucero on the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 8999

1    Archuleta matter?

2         A.   No, not off the top of my head.

3         Q.   And you're familiar with the discovery

4    that's actually been produced in this case?

5         A.   I try to be.

6         Q.   Okay.  So if that had been produced in

7    this case, you'd be aware of it?

8         A.   Yes, sir.  I believe the Eddie Archuleta

9    stuff was on the tablets and turned over because it

10   became an issue at one point in the detention

11   facility, some of his stuff being on there.

12        Q.   Okay.  So other than -- would I be correct

13   that you had almost three hours of phone calls with

14   Mr. Lucero between February 15 and May 3?

15        A.   Did you say I had three hours of phone

16   calls?

17        Q.   Yes.

18        A.   I find that hard to believe.

19        Q.   Well, in your review of Motion Number

20   2416, it was indicated that it was just short of

21   three hours in total phone calls; is that right?

22        A.   Text messages and phone calls, or just

23   phone calls?

24        Q.   Just phone calls.  But I'll show you, if

25   you can get past all the scribbles --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                MS. ARMIJO:  Can you give me a number?

 2                MR. CASTLE:  Yes, I will put it on the

 3      record.  Page 3, Document 2416, subparagraph 6,

 4      letter C.

 5      BY MR. CASTLE:

 6           Q.   The phone calls vary in length up to 25

 7      minutes in duration, just short of three hours in

 8      total.  Do you see that?

 9           A.   Yes.

10           Q.   And so in preparation -- well, attached to

11      that motion was actually the phone call records;

12      right?  So you can review those if you wanted to.

13           A.   Yes.

14           Q.   And in fact, those are in discovery.  They

15      have been produced after trial; right?

16           A.   Yes, sir.

17           Q.   And so did you do anything to determine

18      whether that was accurate or not, that your phone

19      calls with Mr. Lucero in total lasted just short of

20      three hours?

21           A.   I did not.  I guess I'm taking your

22      representation that it was that long.

23           Q.   Do you recall having a conversation with

24      him that lasted 25 minutes or something along that

25      length?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9000

```
 1        A.    Yes.

 2        Q.    And what was that conversation about?

 3        A.    He went off the highway on his way home

 4   from here in Las Cruces.   I guess he was pretty

 5   sick.   He had some kind of stomach flu, or

 6   something, and he crashed his truck and hurt

 7   himself.

 8        Q.    Did he want reimbursement or help in

 9   repairing his truck?

10        A.    I'm sure he did, but we didn't talk about

11   that.

12        Q.    So he didn't tell you, "Hey, look, I

13   crashed this truck because I had to come to court,

14   and the FBI should have to pay for it, or the

15   Government in some fashion should have to pay for

16   that"?

17        A.    It's not an FBI issue.

18        Q.    I know it may not be for you, but did

19   Mr. Lucero ask?

20        A.    No.

21        Q.    Did he mention why he was asserting his

22   Fifth Amendment right?

23        A.    No, sir.   And I'll add that his attorney

24   was very aggressive and very candid with what he

25   wanted me talking about and not talking about.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9001

```
 1        Q.   Okay.  So what did the attorney tell you?
 2        A.   "You can talk to him about his travel and
 3   his safety."
 4        Q.   Okay.  And nothing else?
 5        A.   Correct, without him being involved in the
 6   conversation.
 7        Q.   And did he say why?
 8        A.   No, and I didn't ask.  I respected his
 9   conditions, his instructions to me.
10        Q.   And did he tell you that you're not to ask
11   him anything about the case?
12        A.   Absolutely.  And he told that to the
13   prosecutors, as well.
14        Q.   And was that in the presence of
15   Mr. Lucero?
16        A.   He said it several times in the presence,
17   and then he reminded us a couple of times on phone
18   calls and outside -- in the hallway outside this
19   courtroom.  He was very passionate about, you know,
20   representing Mr. Lucero.
21        Q.   So during these phone calls or text
22   messages, was there discussion by Mr. Lucero about
23   what he wanted to be done so that he would be
24   protected or so that he wouldn't be in fear?
25        A.   No.  He had his attorney.  I can't say he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9002

1    had his attorney.  His attorney directed the

2    majority of those conversations both with me and

3    with the prosecutor.  And then if there was specific

4    follow-up, like, for instance, I said I would need

5    to know the exact location that he intended to move,

6    because we had to calculate that into moving costs.

7    So there was a lot of back-and-forth on -- he had to

8    be very specific.

9         Q.   Did Mr. Lucero ever express a concern

10    about whether he was going to be charged in this

11    case during these conversations?

12        A.   No, sir.

13        Q.   He never mentioned once, "Am I going to be

14    charged at all, or are you focusing on me as a

15    suspect," or anything of that nature?

16        A.   Well, you asked during this period, so I

17    thought you meant --

18        Q.   This conversation.

19        A.   Post attorney.  He didn't have those

20    conversations with me post attorney.  I think when I

21    first met him, that was a concern.

22        Q.   Okay.  So let's talk about that a little

23    bit.  What did he tell you during that first time

24    you met him in -- was it 2015, '16?

25        A.   I think it was '16.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1        Q.    '16.  What did he tell you then?
 2        A.    He had some questions about -- from what I
 3   recall, he had some questions about the RICO
 4   statute.
 5        Q.    Okay.
 6        A.    And he wanted to make it well known to me
 7   that he had worked for Roundy, that he had debriefed
 8   with SIS in the BOP.  So I took that to mean he was
 9   letting me know, hey, I'm not eligible for RICO; I'm
10   out.
11        Q.    So he was expressing to you in certain
12   ways that because he had cooperated in the past,
13   that he expected not to be charged with any crimes
14   in relation to the RICO, what he considered the RICO
15   investigation; is that right?
16        A.    I feel he was -- thought he was educating
17   me on those facts, yes.
18        Q.    So in this conversation that he had with
19   you, I take it he relayed to you that he already
20   knew there was an investigation afoot to investigate
21   the SNM?
22        A.    Well, yes, sir.  By the time I had my
23   first conversation with him, I believe we'd already
24   done the Phase 1 and perhaps the Phase 2 arrests.
25        Q.    Was this conversation at his request, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&
ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

DNM 9004

```
 1  was it one where you approached him?
 2       A.   This was our initial meet at his house.
 3  We sat in his living room and I interviewed him and
 4  recorded a portion of that.
 5       Q.   But you initiated the contact with him?
 6  He didn't call you all up and say, "Come on over; I
 7  want to chat"?
 8       A.   Correct.  I initiated it.
 9       Q.   Okay.  And then you recorded a part of
10  that, but not all of that; is that right?
11       A.   Yes, sir.
12       Q.   Would you have recorded the part where he
13  was informing you that he, you know, had cooperated
14  with Roundy in the past and that he expected not to
15  be charged in the RICO?
16       A.   No, and he didn't say he had that
17  expectation.  But my 302 details his former
18  cooperation, because if I remember correctly, we
19  went through some of his old debriefs where I
20  thought information might not have been recorded
21  correctly.
22       Q.   Was it unusual for you to get text
23  messages and phone calls from witnesses who
24  testified in these trials?
25       A.   Not at all.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   46  Page: 9006

```
 1      Q.   Would you get phone calls and/or text
 2  messages from witnesses who were in prison, other
 3  than the infamous one that we kind of --
 4      A.   Well, I think Eric Duran sent me some text
 5  messages against my wishes, and I think we've
 6  discussed those.  I would get -- yeah, I would
 7  get -- I was the lead point of contact with many of
 8  these witnesses for the Government, so I would...
 9      Q.   And were these individuals represented by
10  counsel?
11      A.   The majority were.
12      Q.   And did their attorneys and you have
13  similar conversations about the limits put on phone
14  calls such as you had with counsel for Mr. Lucero?
15      A.   Yes, sir.  At every debrief I would bring
16  this up, and if the prosecutors forgot, I would
17  remind them that we needed to establish the
18  protocols for that, and those discussions always
19  happened.
20      Q.   And just generally speaking -- I don't
21  want to go into each one -- would the phone calls
22  that these other witnesses would make -- would they
23  be similar, you know, "Where is my money?  How am I
24  going to be protected?  Here is my fears.  Here's my
25  concerns."  Those kinds of things?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    The fears and concerns were usually
 2   relayed through the attorneys, which was better.
 3   What I communicated was that if their families had
 4   problems on the outside, rather than go through the
 5   attorney, they were welcome to call me.  And I made
 6   that offer in front of the Government and their
 7   attorneys so everyone knew.  And then if the
 8   witnesses were on the outside, I would just get
 9   permission to coordinate travel and security for the
10   witnesses and the attorneys, to a T, were all
11   agreeable to that.
12        Q.    Specifically with regard to trial number
13   2, Sammy Griego was an individual who was living in
14   the community at the time he testified; is that
15   right?
16        A.    Yes, sir.
17        Q.    Did he also communicate with you by text
18   or phone?
19            MS. ARMIJO:  Objection, relevance.
20   Fishing expedition now.
21            THE COURT:  Tie that to your motion.
22            MR. CASTLE:  Well, we requested in our
23   motion disclosure and discovery of other statements
24   made by witnesses in the case, and so this is a
25   witness in the case.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, I did see that in there.
 2    It did perk up my ears, because it did look like it
 3    was broadening the motion, so overruled.
 4              Mr. Castle.
 5              MR. CASTLE:  Thank you, Your Honor.
 6         A.   To be clear, sir, I believe I was the lead
 7    point of contact for all of the witnesses out of
 8    custody communicating, coming to court in response
 9    to the subpoenas.
10    BY MR. CASTLE:
11         Q.   So would Sammy Griego have text messaged
12    you and made phone calls to you before, in the
13    months leading up to his testimony?
14         A.   Yes, sir.
15         Q.   What were the general nature of his text
16    messages and phone calls?
17         A.   The same thing as Mr. Lucero's.  "Where am
18    I going?  "Do I really have to go to Las Cruces,
19    just being that it's a further drive?"  And a lot of
20    these guys didn't have a lot of funds.  So, yeah, of
21    that nature.  "What hotel and how do I get there."
22         Q.   "Where is my per diem or money?"
23         A.   If I remember correctly, Griego was able
24    to go to the marshals as soon as he was done here,
25    and I think they were able to drive him.  I would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9008

 1  oftentimes, as you recall, get up and walk out with

 2  them, and I'd make that introduction, and then come

 3  back in.

 4      Q.   Did Mr. Griego, in these conversations,

 5  indicate that he was afraid at all?

 6      A.   He didn't report getting weird phone calls

 7  or people, you know, driving by his house or

 8  squealing tires, no, but I mean, he had a healthy

 9  fear of the SNM in general.

10      Q.   Did Griego also make statements to you

11  about any concern that he might be part of the RICO

12  or get charged in the RICO?

13      A.   Only when we first met.  And he, as you

14  recall, cooperated right away.  I met him at his

15  parole office very early on, because he received one

16  of the original letters that went out.

17      Q.   He received a letter?  What kind of

18  letter?

19      A.   From Baby Rob and Roy to hit the

20  Secretary.

21      Q.   Oh, those letters.

22      A.   Yes, sir.

23      Q.   Not from the Government.

24      A.   I'm sorry?

25      Q.   Not from the Government?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9009

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 9010

```
 1        A.    No, we had an in-person meeting.

 2        Q.    Can you think of any of the other

 3   witnesses who provided direct testimony against

 4   Mr. Billy Garcia that were out of custody at the

 5   time of the testimony, other than Mr. Lucero and

 6   Mr. Griego?

 7        A.    Mr. Armijo.

 8        Q.    Oh, right.  Jacob -- Manuel Jacob Armijo?

 9        A.    Yes, sir.

10        Q.    Did he have text message or voice

11   communications with you?

12        A.    Yes, sir.  I would keep him abreast of

13   when he needed to show up and if there were delays,

14   as you know there were, just updates on when to be

15   here.

16        Q.    Did he have any other concerns?

17        A.    He did, and we did.  And I believe we

18   disclosed this.  We gave him -- I gave him money to

19   purchase surveillance cameras for his house.

20        Q.    Yes.

21        A.    So he did express that, and he felt it

22   could be mitigated by having the surveillance

23   cameras, and we gave him funds for that.

24        Q.    Did he make any other requests for funds

25   that were either accepted or rejected?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9010

```
 1        A.   Not that I recall, no.

 2             To finish answering your question, you'd

 3   have to help me remember who else testified

 4   regarding Mr. Garcia.  But I want to be clear, I was

 5   the point of contact for basically all of the

 6   witnesses for the Government.

 7        Q.   Have you made contact with Mr. Lucero

 8   since the filing of this motion?

 9        A.   No, sir.

10        Q.   Are you aware of anyone who has had

11   contact with him since the filing of this motion

12   that works for the FBI or the Government?

13        A.   No, sir.

14        Q.   So there has been no attempt to see if he

15   has the text messages still on his phone?

16        A.   No, sir.  I was not asked to do that.

17        Q.   In reviewing Exhibit B, would it be

18   accurate that at least as of May 15 of 2018,

19   Mr. Lucero's phone was still operational?

20        A.   Yes, sir.  You have call detail records,

21   so yes.

22        Q.   Do you have any knowledge whether he had

23   destroyed his phone?

24        A.   I have not talked to him since that trial,

25   sir, so I don't know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9011

```
 1        Q.    Same thing with Mr. Armijo and Mr. Griego.
 2  Do you have any knowledge whether they still have
 3  the content of any text messages you had?
 4        A.    I have no knowledge of that, and I have
 5  not talked to them about text messages.
 6        Q.    I've just been reminded there was another
 7  witness who was out of custody, Julian Romero; is
 8  that right?
 9        A.    Yes, sir.
10        Q.    And you just forgot about him, and so did
11  I; right?
12        A.    Yes, I'm sorry.
13        Q.    Nobody was -- yeah, right.  Again, did you
14  have similar conversations, text messages, cellphone
15  calls with Mr. Romero?
16        A.    Yes, but it usually went through his wife
17  because he didn't have his own phone.  She was kind
18  of the keeper of the phone in their family.
19        Q.    I could ask you some follow-up questions
20  on that, but I think they'd be irrelevant.
21              MR. CASTLE:  If I could have a moment,
22  Your Honor.
23              THE COURT:  You may.
24  BY MR. CASTLE:
25        Q.    Agent Acee, when you were testifying
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9012

```
 1   earlier about Mr. Lucero expressing some fears in
 2   regards to annoying calls and prank calls -- is that
 3   right; do you recall that?
 4        A.   Yes, sir.
 5        Q.   I believe you testified that he reported a
 6   few things to you.  Do you recall what those few
 7   things were?
 8        A.   Yes, sir.  So in addition to the phone
 9   calls, like screeching tires around his house, like
10   people peeling out -- and again, I thought that's
11   kind of -- maybe you don't want my thoughts on it.
12   But -- so the phone calls, the screeching tires.
13   And then his wife had her purse stolen from their
14   car, and he was concerned about that, because it had
15   their checkbook and her identifying documents.
16        Q.   And did he ask for help in investigating
17   that purse theft?
18        A.   No.  He was just making us aware of it.
19        Q.   And so whether or not Mr. Lucero's phone
20   records show, one way or the other, whether he was
21   being accurate regarding these unidentified calls to
22   him, we'd have to talk to Agent Stemo; is that
23   right?
24        A.   No, you might get more information from
25   her, but she told me that there were phone calls
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   54  Page: 9014

```
 1   when he indicated there were phone calls, but that

 2   doesn't take us one way or the other.

 3        Q.   Did anybody ever examine his phone?

 4        A.   I'm not sure.  I did not.

 5        Q.   Was there any indication that, you know --

 6   his phone was a cellphone; right?

 7        A.   Yes, sir.  He may also have a land line,

 8   but this is a cellphone.

 9        Q.   And you're pointing to Exhibit B; is that

10   right?

11        A.   Correct.

12        Q.   So did he indicate, "Here are the calls

13   that are unidentified on my phone, and these are the

14   ones I'm concerned about"?

15        A.   I'm not sure.  He did not to me.

16        Q.   Did he indicate when these -- generally

17   when these calls occurred?  Was it before he

18   testified?

19        A.   I'm not sure of that, but he gave some

20   indication to Agent Stemo when the calls were,

21   because she knew what to subpoena.

22        Q.   And would they have all been from the same

23   number or different numbers?

24        A.   I think different numbers or blocked

25   numbers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And did the subpoena get records that were

 2   both blocked numbers and unblocked numbers?

 3        A.   I believe so.  I mean, when we asked for

 4   call detail records, a lot of times, from my

 5   experience, block numbers -- what shows up as

 6   blocked on your hand set will show up in the call

 7   detail records with the actual number.

 8             MR. CASTLE:  I have no other questions,

 9   Your Honor.

10             THE COURT:  Thank you, Mr. Castle.

11             How about any of the other defendants?

12   Y'all all joined the motion.  Anybody else want

13   direct examination of Mr. Acee?

14             All right.  Ms. Armijo, do you have

15   cross-examination of Mr. Acee?

16             MS. ARMIJO:  May I approach the witness,

17   Your Honor?

18             THE COURT:  You may.

19                     CROSS-EXAMINATION

20   BY MS. ARMIJO:

21        Q.   Now, Agent Acee, I think that when you

22   started, you were talking about how there's three

23   different types of records:  Nontransitory,

24   transitory, and non -- I wrote "record."  Is it

25   "nonrecord" or -- do you remember the three
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9015

```
 1  different categories?  And I think Mr. Garcia
 2  started you on nontransitory.  I wanted to go back
 3  and talk about the three different types of
 4  recordings.  Do you recall that in your early
 5  testimony?
 6       A.   I do.
 7       Q.   Okay.  Can you explain to us those
 8  categories and what they are?
 9       A.   Yes.  Do you mind if I use the policy
10  guide to --
11       Q.   No.  And I just wanted to get the number.
12  Do you have a copy of the policy guide there?
13       A.   I do.
14       Q.   Is that Exhibit A?
15       A.   I don't have Exhibit A, but it's the same
16  as Exhibit A.  It's the policy guide.
17       Q.   Okay.
18       A.   It's actually what Mr. Castle attached to
19  his motion.  I have that.  And the policy guide has
20  not been updated, so that's the correct one.
21       Q.   All right.  And if you could refer us to
22  the correct page on that, just so that we're clear.
23       A.   Sure.  So this is the FBI's Records
24  Management Policy Guide.  It was last updated June
25  4, 2015.  And I'll start on page 11.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   5 Page: 9017

```
 1        Q.   Of the guide?

 2        A.   Yes, ma'am.

 3        Q.   Okay.

 4        A.   There it provides the definition of a

 5   nontransitory record, and it's identified as needed

 6   for no more than 180 days, and it gives examples of

 7   what a nontransitory record is.  Did you want me to

 8   read those?

 9        Q.   Well, and can you tell us your general

10   understanding of it?  And I think that's the one

11   that we've been talking about; correct?  In general?

12        A.   Yes, so it talks a lot about policy, and

13   then what I'll call administrative functions of the

14   FBI that need to be preserved.  But in my line of

15   work as a case agent, what's most important is

16   substantive documentation that has important or

17   valuable evidentiary information, and so...

18        Q.   What's your understanding of that?

19        A.   Well, I wanted to give you an example, if

20   I could.  Like my interactions with the FBI

21   laboratory, when I have something sent to the lab.

22   This is the most frequently used example of this.

23   So I send an item to undergo fingerprinting or DNA

24   testing.  The lab responds with an email, and that

25   email response is their findings as well as their
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   official report.  So that, to me, is a nontransitory

 2   record that I then flag with the case number and it

 3   goes into Sentinel, which is our report system.  So

 4   that's to give you a real life application of a

 5   nontransitory record.

 6       Q.   Okay.  Now, were any of the text messages

 7   that you had with Leroy Lucero during the time

 8   period indicated -- which I believe is starting at

 9   February 15 -- were any of those communications in

10   this category of nontransitory record, as you

11   understand it?

12       A.   No, none of them were.

13       Q.   Now let's go to the transitory record just

14   so we make clear what they are.  What is a

15   transitory record?

16       A.   This is a record that has minimal

17   documentary or evidentiary value and is needed for

18   180 days or less.  I don't know that I've ever used

19   this category.  Because to me it's either

20   evidentiary and I'd rather err on the side of

21   caution and make it nontransitory and I save it, and

22   someone else, such as yourself, can determine

23   whether it's important or not.  So I either will use

24   the nontransitory or the nonrecord.  But this

25   generally applies to administrative functions of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9018

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   59   Page: 9019

```
 1   Bureau.  So something that they need to preserve for
 2   a short period of time.  And in my case as an agent,
 3   I think it again is either something I need to
 4   preserve for another entity to determine if it's
 5   relevant, or it's simply not; it's communications
 6   that aren't a record.
 7        Q.   Okay.  And what about the last category,
 8   the nonrecord, which I believe would be on page 12
 9   under 4.5; is that correct?
10        A.   That is correct, and this is any material
11   that does not meet the statutory definition of a
12   record as set forth in 44 USC Section 3301.  And it
13   gives examples of nonrecords.
14        Q.   Okay.  And so for nonrecord
15   communications, those are not required to be saved?
16        A.   That's correct.
17        Q.   Now, I believe you already talked about
18   the types of communications that you had with
19   Mr. Lucero.  Which category would you put those in
20   as far as your text messages?
21        A.   They were all nonrecord.
22        Q.   And I believe you talked about and you
23   described his attorney as very passionate and
24   aggressive.
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And can you explain that a little as far
 2   as -- well, let me back up with that.  After you
 3   initially spoke to Mr. Lucero, did you have a belief
 4   that he would be a witness potentially in these
 5   trials?
 6        A.    Yes.
 7        Q.    Was he also on supervised release at the
 8   time initially?
 9        A.    Yes.
10        Q.    And did he have an attorney?
11        A.    He did.
12        Q.    Did that attorney express concerns to you
13   about his safety and his testimony?
14        A.    Yes.
15        Q.    Now, were you present when Mr. Lucero came
16   and at the instruction of his attorney he initially
17   invoked his Fifth Amendment right?
18        A.    I was.
19        Q.    After that invocation, was Mr. Lucero --
20   was there continued discussion as to whether or not
21   he would testify as a witness?
22        A.    There was, but I wasn't on the tube line
23   with those conversations.  Your office and his
24   attorney were.
25        Q.    And you beat me to the next question.  Was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9020

```
 1   that an issue that was dealt with between the

 2   attorneys as opposed to you as an agent?

 3        A.   Yes.

 4        Q.   And eventually, did Mr. Lucero's attorney

 5   allow him to testify?

 6        A.   Yes.

 7        Q.   Now, and did he, in fact, testify in this

 8   case?

 9        A.   Yes, he did.

10        Q.   Was he around in the Las Cruces area for

11   at least a day or two, as you may recall?

12        A.   I believe it was several days, because

13   there were some delays.

14        Q.   And you indicated that he was in a car

15   accident on the way home from court?

16        A.   Yes.

17        Q.   Do you recall which time that was?

18        A.   I believe that was after motions hearings,

19   not the trial.

20        Q.   And did he call you after that?

21        A.   He did.

22        Q.   Were there also -- and you also talked

23   about issues with his per diem.  Are you aware of

24   witnesses that are not -- that are just civilian

25   witnesses that come to court, by either party, if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9021

```
 1   they get a per diem by the US Marshal Service?

 2        A.    They do.

 3        Q.    And was that the per diem that you were

 4   talking about as far as with witnesses?

 5        A.    Yes.

 6        Q.    Now, as far -- is there any other guidance

 7   in Exhibit A that you used as far as when you would

 8   have to reserve text messages and emails that you

 9   used for guidance?

10        A.    Yes.  There are other relevant points to

11   this policy that I think I was within in my review

12   of it.

13        Q.    Okay.  And can you please point us to what

14   page that is and what policy?

15        A.    Sure.  The policy guide we were just

16   talking about.

17        Q.    Which is Exhibit A, for the record?

18        A.    Yes.  I would have you turn to page 25,

19   where it talks about nonrecord emails.  And

20   understand, the policies are a little dated here.

21   They mostly deal with emails, but I'm considering an

22   email to be a text message, as well, because I think

23   the policy should probably fit both.  If it's good

24   for email, it should be good for text.  And in my

25   reviewing the nonrecord emails and the examples,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9022

1  this clearly fit within it.  The communications with

2  the witnesses on how to get to court, what day to be

3  here, and at what time are, my reading of the

4  policy, clearly nonrecord emails or communication.

5      Q.   And so you were following, just so we're

6  clear, 4.8.19 of Exhibit A, which is nonrecord

7  emails, and you were applying it to text messages?

8      A.   Correct.

9      Q.   All right.  And is there another policy

10  that you used in this exhibit, as well, or is that

11  primarily it?

12      A.   Out of this exhibit, that's primarily it.

13      Q.   Okay.  Was there anything else that you

14  used for guidance?

15      A.   I did.  In another area of our policy, I

16  was looking for the definition of substantive

17  communications.  And I wanted to bring the policy

18  guide, but was not able to, because I'm not able to

19  divulge it, in whole or in part, without Department

20  of Justice permissions.

21      Q.   Okay.

22      A.   I did, however, find an online reference

23  to it in the Hillary Clinton email OIG

24  investigation, and the policy is quoted in there,

25  and I provided that to you for your reference.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 9024

```
 1        Q.   All right.

 2             MS. ARMIJO:  And so, Your Honor, the

 3   United States would like to mark as Exhibit Number 1

 4   a public document that was by OIG into evidence,

 5   which contains policies that Special Agent Acee has

 6   relied upon that are in this document that he can

 7   point to that otherwise we don't have permission to

 8   publish it, other than in this public document.

 9             THE COURT:  Any objection, Mr. Castle?

10             MR. CASTLE:  I do, because I don't believe

11   the witness has testified that he relied upon this

12   at the time that he had his phone destroyed.  It

13   sounds like to me that his testimony is he's been

14   told about it after the motion was filed, which

15   isn't really relevant as to his conduct at the time

16   of destruction.

17             MS. ARMIJO:  I can ask some more

18   questions, Your Honor, to lay some foundation.

19             THE COURT:  Go ahead.

20   BY MS. ARMIJO:

21        Q.   Are there policies in this document that

22   you're aware of before either of your two previous

23   phones were destroyed?

24        A.   Yes.

25        Q.   Were you aware of those policies before
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9024

```
 1   your phones were taken from you and destroyed?

 2        A.   Yes.

 3        Q.   Did you rely on those policies in the

 4   actions that you took in reference to the phones

 5   issued to you by the FBI?

 6        A.   Yes.

 7        Q.   Are the policies in Government's Exhibit 1

 8   the same policies that you relied upon for the

 9   actions that you took which are the subject of this

10   motion?

11        A.   Yes.

12             MS. ARMIJO:   The United States would move

13   for the admission of Exhibit Number 1.

14             THE COURT:   Any further objection, Mr.

15   Castle?

16             MR. CASTLE:   No, Your Honor.

17             THE COURT:   Any other defendant have any

18   objection?

19             Not hearing any, Government's Exhibit 1 to

20   Document Number 2416 -- can I write that on your

21   Exhibit 1?

22             MS. ARMIJO:   Yes, Your Honor.   Thank you.

23             THE COURT:   I'm going to put 2416.

24             All right.   So Government's Exhibit 1 to

25   Document 2416 hearing will be admitted into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9025

```
 1  evidence.
 2          (Government Exhibit 1 admitted.)
 3  BY MS. ARMIJO:
 4      Q.   All right.  And Agent Acee, in this
 5  document, can you please point us to the relevant
 6  portions?
 7      A.   I can.
 8          MS. ARMIJO:  And may I approach him with a
 9  copy of it, Your Honor?
10          THE COURT:  You may.
11          MS. ARMIJO:  So you can have the original.
12  BY MS. ARMIJO:
13      Q.   And can you please explain what document
14  this is, again?
15      A.   This is the U.S. Department of Justice
16  Office of the Inspector General Report of
17  Investigation Recovery of Text Messages from Certain
18  FBI Mobile Devices, and this pertained to the
19  much-reported investigation of the Hillary Clinton
20  emails and text messages between two FBI employees.
21      Q.   And so what, in general -- and this
22  document was made public; is that correct?
23      A.   Yes, ma'am.
24      Q.   And so --
25      A.   Portions are -- I'm sorry to interrupt
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9026

 1  you.  It was made public, but portions are redacted

 2  by the DOJ.

 3       Q.   All right.  And if you can, in Exhibit

 4  Number 1, tell us by page number which are the

 5  portions of the policy that you were referring to

 6  that you are aware of that you were acting in

 7  accordance with when your telephones were destroyed.

 8       A.   I would turn to page 5.  So I want to be

 9  clear that I'm going to reference FBI policy, but

10  much of this report pertains to not FBI agents, but

11  FBI executive management, who -- we all fall under

12  the same policies, but I noticed -- well, some of

13  those folks had different phones than agents have,

14  and it looked like maybe some different capabilities

15  than we have.

16       Q.   So they had better phones?

17       A.   I believe so.  Phones I didn't know -- for

18  example, the FBI doesn't typically use the Apple

19  phones, but these people had the iPhones.  I wasn't

20  aware, because we were told that we can't use those.

21       Q.   Okay.  If you could go to page 5, did you

22  indicate?

23       A.   Yes, toward the middle of the page.

24  Actually toward the bottom there are some bullet

25  points there, where it defines, according to policy,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9027

```
 1   what substantive communications include.
 2        Q.   Okay.  And under this, there is a policy.
 3   It says "DOJ Policy and Guideline Regarding
 4   Electronic Messaging Records Retention"; is that
 5   correct, on page 5?
 6        A.   Yes, and then under that in bold it talks
 7   about FBI policy regarding the collection and
 8   retention of text messages.  So the bullet points
 9   are kind of what highlights what follows in the next
10   paragraph in my reading.
11        Q.   Okay.
12        A.   But it is substantive communications,
13   those that we need to preserve, and then upload into
14   Sentinel, so that they're in the report database or
15   factual information about investigative activity.
16   Factual information obtained during interviews or
17   interactions with victims, including victims,
18   potential witnesses, experts, informants, or
19   cooperators; factual discussions related to the
20   merits of evidence; factual information or opinions
21   relating to the credibility or bias of a witness,
22   informant, or potential witness; and other factual
23   information that's potentially discoverable under
24   Brady, Giglio, Rule 16, or Rule 26.2, which is the
25   Jencks Act.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9028

```
 1              THE COURT:  Ms. Armijo, I need to look for
 2    a break to give Ms. Bean a break.  Is this okay?
 3              MS. ARMIJO:  This is okay.  I believe we
 4    may be having some Elmo issues, so maybe we can deal
 5    with that then.
 6              THE COURT:  Didn't they use this courtroom
 7    since we were last here?  Let's shoot for 15
 8    minutes, see if we can get everybody in and out.
 9    We'll be in recess for 15 minutes.
10              (The Court stood in recess.)
11              THE COURT:  All right.  It looks like
12    everybody has an attorney.  Look around.  Help your
13    friends out.  Everybody have an attorney?  All the
14    defendants are in?  I don't recognize everybody
15    without their ties and haircuts.  You look a little
16    different over here today.
17              All right, Mr. Acee, I'll remind you
18    you're still under oath.
19              Yes, Mr. Lowry.
20              MR. LOWRY:  Your Honor, I was wondering
21    if -- I'd ask for a privilege to have one of the
22    hands released so the guys can take notes.
23              THE COURT:  Any objection from the
24    marshals that they can have one hand uncuffed?
25              MR. MARSHALL:  Your Honor, I was informed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that we just don't have the security personnel here

2  today to be able to accommodate that.

3          THE COURT:  All right.  Well, maybe you

4  can talk to them about getting enough security in

5  here so we can get them, but we may talk to them

6  during the break.  Okay?

7          All right.  Mr. Acee, I'll remind you're

8  still under oath.

9          Ms. Armijo, if you wish to continue your

10  cross-examination.

11          We didn't get monitors in here.  I

12  apologize.  We got in here this morning, there

13  weren't any computers in here.  We had to set them

14  up for clerks.  Didn't have enough wires for the

15  real-time for me.  So I don't know what happened as

16  far as setting up.  So if you decide you need to see

17  exhibits, we can move people into the jury box so

18  they can use those monitors.  But let's see how it

19  goes for a while.

20          All right, Ms. Armijo.

21          MS. ARMIJO:  All right.

22  BY MS. ARMIJO:

23      Q.   And Agent Acee, I believe we were on

24  Government's Exhibit 1 on page 5; is that correct?

25      A.   Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And we were talking about it, and you were

2    discussing different categories of information that

3    would be needed, is your interpretation.  So with

4    this category here, the factual information, would

5    that be information that is in the nontransitory

6    category?

7      A.   No, nonrecord.

8      Q.   Nonrecord.  I'm sorry.  Nonrecord.  All

9    right.  And is there anything else in this document

10   that you relied upon regarding the FBI policy

11   regarding the collection and retention of text

12   messages?

13     A.   No.

14     Q.   And is there a definition of substantive

15   communication on page 6 of that exhibit?

16     A.   Yes.

17     Q.   And is that something that you relied upon

18   as well?

19     A.   It is.  And I just summarized it in the

20   bullet points on the previous page.

21     Q.   Okay.  Just so that we're clear, in this

22   investigation in Exhibit 1, were they able to obtain

23   old messages, emails, or text messages?  I should

24   just use the term data.

25     A.   In the OIG investigation?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 9031

```
 1        Q.   Yes.

 2        A.   Yes, they were.

 3        Q.   But did they actually have the phones in

 4  which to do it?

 5        A.   Yes, and a contractor from the Department

 6  of Defense that was able to extract it from the

 7  iPhone.

 8        Q.   Now, your previous phones -- you mentioned

 9  one was the Galaxy S5?

10        A.   Correct.

11        Q.   Then what was the second phone?

12        A.   Galaxy S7.

13        Q.   Okay.  And both of those phones were

14  turned over and subsequently destroyed?

15        A.   Correct.

16        Q.   Per FBI usual procedure?

17        A.   Yes.  I have no dealings or influence over

18  that.

19        Q.   Now, has this case been unusual in that

20  you would receive throughout the course of the

21  pending of this case and even more so during the

22  trials, numerous requests for information?

23        A.   That's true.

24        Q.   And in fact, did you have any -- what was

25  the FBI, at your instruction as far as the agents
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9032

 1   and anyone under you -- what was your instructions

 2   to them as far as requests?

 3        A.   Turn it over.

 4        Q.   Did that include notes that you have?

 5        A.   Yes.  It was easy for us, the FBI, because

 6   if we gave you guys everything, then we've met our

 7   obligation.

 8        Q.   And you talked a little bit about Eddie

 9   Archuleta.  Was he part of the cases as far as the

10   overall SNM investigation, but was his case a

11   nonracketeering charge?

12        A.   Yes.  He's what I previously described as

13   a one-off.  It's all under Operation Atonement but

14   not related to this particular group of defendants.

15        Q.   And did you already have an opportunity to

16   tell us all of -- I know that we talked about the

17   squealing cars and Mr. Lucero's car being broken

18   into and the phone calls.  Was there anything else,

19   as far as threats or anything that Mr. Lucero

20   indicated to you that he was in fear of?

21        A.   No.  The only thing you missed was, he was

22   in a car accident, a pretty significant car crash.

23        Q.   Did he -- and his indication of fear, was

24   that something that was unusual, given the

25   circumstances of this case and his testimony?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                      1-800-669-9492
                                       e-mail: info@litsupport.com

DNM 9033

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9034

```
 1        A.    No.

 2              MS. ARMIJO:  May I have a moment, Your

 3   Honor?

 4              THE COURT:  You may.

 5              MS. ARMIJO:  Nothing further.

 6              THE COURT:  Thank you, Ms. Armijo.

 7              Mr. Castle, do you have redirect of

 8   Mr. Acee?

 9              MR. CASTLE:  Yes, thank you.

10              THE COURT:  Mr. Castle.

11                    REDIRECT EXAMINATION

12   BY MR. CASTLE:

13        Q.    Mr. Acee, you were indicating that you

14   considered the text messages to be nonrecord; is

15   that right?

16        A.    Yes, sir.

17        Q.    Can you go to the portion of the policy

18   which is in Exhibit B that deals with -- defines

19   nonrecord?  I think it's 4.7 -- no, 4.5.  I

20   apologize.

21        A.    Yes, sir.

22        Q.    Does it have a definition, examples of

23   what a nonrecord is?

24        A.    Yes.

25        Q.    And what are the examples?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9034

 1          A.   Library materials made or acquired and

 2     preserved solely for reference or exhibition

 3     purposes; stocks of publications or unprocessed

 4     blank forms; extra copies of documents preserved

 5     only for convenience or reference.

 6          Q.   Okay.  Anywhere in this policy does it

 7     give an example of a nonrecord that is in the form

 8     of either an email or a text message or, for that

 9     matter, the prosecution's Exhibit 1?

10          A.   I think it's covered in the first

11     sentence, sir.

12          Q.   The first sentence being library

13     materials?

14          A.   No, sir.  That's the first bullet.  A

15     nonrecord is any material that does not meet the

16     statutory definition of a record.

17          Q.   Okay.

18          A.   And then it gives examples, which I just

19     read, but that doesn't cover all examples.

20          Q.   And where is "record" defined in that

21     policy?

22          A.   44 USC, Section 3301.

23          Q.   Okay.  And how is that defined?

24          A.   I'd have to read the statute, sir.

25          Q.   Okay.  Well, there is a definition in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   76   Page: 9036

1  policy under 4.2.  Can you at least go to that

2  portion of it, please?

3       A.   Yes, sir.  Would you like me to read it?

4       Q.   If I can, for just a moment.  What it does

5  is, it follows the statutory definition of a record;

6  right?

7       A.   Yes, sir.

8       Q.   And a record is all recorded information,

9  regardless of form or characteristics, made or

10 received by a federal agency, and then it goes on;

11 is that right?

12      A.   Yes, sir.

13      Q.   So these text messages were recorded

14 information, at least at one point; right?

15      A.   Yes.

16      Q.   And they were made or received by the FBI?

17      A.   Yes, sir.

18      Q.   So going back to what the definition of a

19 nonrecord is, a nonrecord is material that does not

20 meet the statutory definition of a record; is that

21 right?

22      A.   Yes.

23      Q.   So how is it that a text message is a

24 nonrecord?

25      A.   That is a question for the policymaker,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9036

 1   sir, not me.

 2        Q.   Okay.  So did you make a conscious

 3   decision to not keep the text messages with Mr.

 4   Lucero, Mr. Griego, and Mr. Armijo?  Did you make a

 5   conscious decision not to retain those?

 6        A.   And Mr. Romero, Julian Romero.  I made

 7   it -- if there had been substantive information

 8   there, I would have needed to make a report.  And

 9   based on the fact that I didn't make a report, I

10   guess I would agree with you that I did not.

11        Q.   Let's go to substantive information.

12   Would you agree that substantive communications

13   include factual information about investigative

14   activity?

15        A.   Yes, sir.

16        Q.   And Mr. Lucero gave you information

17   concerning investigative activity that you were

18   engaged in, namely the Archuleta investigation and

19   this other investigation; is that right?

20        A.   Yes.  He had given me the make and color

21   of his car, yes.

22        Q.   And the text messages that you had with

23   Mr. Lucero -- those were interaction with Mr. Lucero

24   in some form?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9037

1        Q.    And Mr. Lucero was a witness and

2   cooperator?

3        A.    At one time he was, yes.

4        Q.    So going to Government's Exhibit 1, page

5   5, it indicates that substantive communications

6   include interactions with witnesses, including

7   potential witnesses and informants; is that right?

8        A.    Factual information obtained during

9   interviews or interactions with witnesses.

10       Q.    And then also you're required to retain

11  substantive communications that might relate to the

12  bias of a witness; is that right?

13       A.    Yes, sir.

14       Q.    Now, in this case, various parties, but

15  mainly the Government, brought forth evidence before

16  the jury concerning the fear of certain witnesses in

17  this case; is that right?

18       A.    Yes, sir.

19            MR. CASTLE:  I have no other questions.

20            THE COURT:  Thank you, Mr. Castle.

21            Do any of the other defendants have

22  redirect of Mr. Acee?

23            All right, Mr. Acee, you may step down.

24  Thank you for your testimony.

25            Mr. Castle, do you have further witnesses

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9038

 1  or evidence you want to present on your motion?

 2          MR. CASTLE:  I have no further witnesses

 3  or evidence.

 4          THE COURT:  Ms. Armijo, does the

 5  Government have witnesses or evidence it wishes to

 6  present?

 7          MS. ARMIJO:  No, Your Honor.  Thank you.

 8          THE COURT:  Do any of the other defendants

 9  have any witnesses or evidence they wish to present?

10          All right, Mr. Castle, if you wish to

11  argue your motion at this time.

12          MR. CASTLE:  Your Honor, if possible, I

13  want to go back and reference some of the discovery

14  materials, and I'd ask for permission to do it in

15  writing within a reasonable period of time.

16          THE COURT:  All right.  Any objection to

17  that, Ms. Armijo?

18          MS. ARMIJO:  No, depending on if the

19  United States has to respond, as long as it's in the

20  time.  I have a trial coming up that -- if we need

21  additional time.

22          THE COURT:  Any objection to that?

23          MR. CASTLE:  No objection.

24          THE COURT:  Any objection to that from the

25  defendants?  All right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9039

 1              We'll work around your schedule,

 2   Ms. Armijo, if you desire to have any response.  So

 3   you want to hold off on arguing in support of your

 4   motion?

 5              MR. CASTLE:  Yes, Your Honor.

 6              THE COURT:  Can I ask you a couple of

 7   questions so I have it in mind?

 8              MR. CASTLE:  Yes, Your Honor.

 9              THE COURT:  Now, where we stand, is there

10   anything mechanical that the defendants are asking

11   the Court to do, now that we've had Mr. Acee on the

12   stand?  It doesn't look like there is, A, anything

13   to be produced; and B, it doesn't look like there is

14   anything for in camera review.  So it looks to me

15   like this is mostly a Jencks violation motion.  Am I

16   characterizing things correctly?

17              MR. CASTLE:  To some extent, yes, and no.

18   Let me tell if you about the "no" part.

19              THE COURT:  Take the first question.  Is

20   there anything mechanical that you're wanting the

21   Government to do that they haven't done?

22              MR. CASTLE:  I may.  One of the things

23   that I'm going to be checking on is that there was a

24   reference to a 2016 interview of Mr. Lucero.  Our

25   cursory review of the discovery here in court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   doesn't reflect that that's been produced.  And

 2   so -- but it may very well have been produced.  I'd

 3   rather, before I ask the Court for anything

 4   mechanical --

 5             THE COURT:  Do you know, Ms. Armijo, or

 6   Mr. Acee?  Do you know on that single issue?

 7             MS. ARMIJO:  No, but I can find out about

 8   it.

 9             THE COURT:  I think you're about to get an

10   answer right here.

11             MR. ACEE:  Yes, sir.  I recorded

12   Mr. Lucero and I believe we played portions of it

13   during the trial.  I thought it was 2016.

14             MR. CASTLE:  Like I say, Judge, I just

15   want to make sure.

16             THE COURT:  Okay.  But other than that,

17   you're not sitting here right this minute -- I'm not

18   holding you to it, but you're not asking anything

19   mechanical that you know from the Government as far

20   as production or anything.

21             MR. CASTLE:  That's correct, Your Honor.

22             THE COURT:  And then, therefore, I can

23   kind of drop out this in camera review, it looks

24   like, correct?

25             MR. CASTLE:  Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9041

```
 1            THE COURT:  So it looks like this is
 2   largely an alleged Jencks violation.
 3            MR. CASTLE:  Yes.  We didn't know whether
 4   the phone calls had been recorded.  The response
 5   said that the text messages had no longer been kept,
 6   so I wasn't going to ask for anything about the text
 7   messages.  But now that we've heard that the phone
 8   calls weren't recorded, I don't think there is
 9   anything that the Court can look at in camera.
10            THE COURT:  Okay.  That's the way I was
11   sizing it up, too.  So we'll hold off on any further
12   argument on that, Mr. Castle?
13            MR. CASTLE:  Yes, Your Honor.
14            THE COURT:  Anybody else on the defense
15   side want to say anything toward that motion?  I see
16   shaking heads.
17            Ms. Armijo, is it all right to hold off on
18   that argument?
19            MS. ARMIJO:  Yes, Your Honor.
20            THE COURT:  So we'll take up the second
21   motion that I understand the parties have agreed
22   would be next, and that's the Document 1841, which
23   is Mr. Sanchez' motion to dismiss the case for the
24   Government's outrageous misconduct in violation of
25   the Brady versus Maryland case.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9042

 1          I think this was the motion that was filed
 2  back in March, and so kind of mid-trial or late
 3  trial or after the trial.  I think it was an early
 4  March motion, so we've touched on this a little bit
 5  in the past.  Ms. Jacks.
 6          MS. JACKS:  That's right, Your Honor.
 7  This is the motion regarding the pretrial interview
 8  of Lupe Urquizo, and this was the motion where Agent
 9  Sainato testified, in the hearing and at trial,
10  about the fact that he was the FBI agent that
11  participated in that interview and he took notes on
12  his computer.  And the 302 that was prepared omitted
13  a lot of that information.  That 302 was prepared by
14  Nancy Stemo.
15          So what I asked to be able to do today was
16  to essentially finish that hearing.  We have Agent
17  Sainato's testimony, and I actually brought a
18  transcript of that for the Court.
19          THE COURT:  Yeah, I think when I went back
20  and looked at my notes on this, I think I have a
21  65-page draft opinion on this, so we are pretty deep
22  into this motion.  I'm hoping to maybe crank that
23  one out.  But I wanted to hear what you had to say
24  today.
25          MS. JACKS:  Okay.  What I'd like to do is,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  I'd like to mark a couple of exhibits.  I'd like to

2  give the Court the testimony of Agent Sainato, and

3  then I'd like to call Nancy Stemo.  I saw she was

4  here earlier.  Is she available?

5          THE COURT:  All right.

6          MS. JACKS:  Did you want me to mark the

7  Sainato testimony?  I included everything.  It's

8  about 214 pages.  Some of it is not pertinent to

9  this motion, but I just wanted to be inclusive and I

10  included everything.

11          THE COURT:  I'm not particular.  If you

12  want to mark it all and there is no objection from

13  the Government, I'll just take it and you can tell

14  me what to look at, or I'll figure it out.

15          MR. CASTELLANO:  May I approach counsel,

16  Your Honor?

17          THE COURT:  You may.

18          MS. JACKS:  So Your Honor, my

19  understanding is, there is no objection.  How would

20  the Court like me to mark that?

21          THE COURT:  Why don't you mark this

22  Defendant's Exhibit 1 to the hearing on 1841.  Do

23  you recall if there were any other exhibits when we

24  did discuss this?

25          MS. JACKS:  I do, and I brought them.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9044

```
 1   mean, I brought identical copies of what those

 2   exhibits were.

 3           THE COURT:  Do you know what they were

 4   marked as?

 5           MS. JACKS:  I do.  So that was the next

 6   thing I wanted to mark.  The 302 that was prepared

 7   by Agent Stemo is Bates stamped 51485.  That was

 8   defense Exhibit S, as in Sam, and I have a copy of

 9   that.

10           THE COURT:  At trial or just for purposes

11   of the hearing that we had on this motion?

12           MS. JACKS:  I think both.  Because I

13   think --

14           THE COURT:  We just kept the hearing?

15           MS. JACKS:  -- Agent Sainato testified in

16   the hearing about these exhibits and also in front

17   of the jury.

18           THE COURT:  May I make a suggestion?  Why

19   don't you put Trial Exhibit S, and then why don't

20   you underneath it say "Exhibit A to Document 1841

21   hearing," and that way I think that will be doubly

22   clear.  Does that work for you, Ms. Jacks?

23           MS. JACKS:  That's fine.  I just did that.

24           And then the other exhibit I have are the

25   notes, the four pages of notes that were the notes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9045

```
 1   of Agent Sainato.  That's Bates 54285 through 54288,
 2   and that was Trial Exhibit T.
 3            THE COURT:  Okay.  You want to do it the
 4   same way?
 5            MS. JACKS:  Yeah.
 6            THE COURT:  Is this all right with you,
 7   Mr. Castellano?
 8            MR. CASTELLANO:  It is, Your Honor.
 9            MS. JACKS:  And I'm going to mark that as
10   Exhibit B to the 1841 hearing.  And then why don't I
11   mark Sainato's testimony as Exhibit C?
12            THE COURT:  All right.  Sounds good.  Do
13   you want to move those for admission into this
14   hearing?
15            MS. JACKS:  Yes.
16            THE COURT:  Any objection, Mr. Castellano?
17            MR. CASTELLANO:  No, Your Honor.
18            THE COURT:  All right.  Exhibits A, B, and
19   C to Document 1841 hearing will be admitted into
20   evidence.
21            (Defendant Sanchez Exhibits A, B, and C
22   admitted.)
23            MS. JACKS:  We'd call Agent Stemo.
24            THE COURT:  Since we're doing a separate
25   hearing, I can't remember where we were on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9046

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9047

 1   hearing before, but I'll ask Ms. Bevel to swear you

 2   in.

 3                   NANCY STEMO,

 4       after having been first duly sworn under oath,

 5       was questioned, and testified as follows:

 6              THE COURT:  Ms. Stemo, Ms. Jacks.

 7              MS. JACKS:  Thank you, Your Honor.

 8                   DIRECT EXAMINATION

 9   BY MS. JACKS:

10       Q.   Good morning, Agent Stemo.

11       A.   Good morning.

12       Q.   Can you tell us what your occupation and

13   assignment is?

14       A.   I'm a special agent with the Federal

15   Bureau of Investigation, assigned to the Albuquerque

16   Field Office.

17       Q.   And how long have you been a special

18   agent?

19       A.   Approximately two and a half years.

20       Q.   And were you assigned to assist in the SNM

21   investigation that resulted in these trials that

22   have taken place in 2018?

23       A.   Yes.

24       Q.   When were you assigned to that

25   investigation?

---



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN**
**& ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9047

```
 1        A.    October 2016.

 2        Q.    So that was after the cases had been

 3   indicted?

 4        A.    I believe so.

 5        Q.    And you came on sort of in the middle of

 6   the case?

 7        A.    Yes.

 8        Q.    And were you the lead investigator in the

 9   case?

10        A.    No.

11        Q.    Who was?

12        A.    Special Agent Bryan Acee.

13        Q.    And is Agent Acee senior to you in the

14   FBI?

15        A.    Yes.

16        Q.    Do you know by how many years?

17        A.    I'd guess about five or six.

18        Q.    Was Agent Acee the person that directed

19   you and supervised you during the course of this SNM

20   investigation?

21        A.    Yes.

22        Q.    Was there anybody else besides Agent Acee?

23        A.    Aside from my actual supervisor?

24        Q.    Who is your actual supervisor?

25        A.    At the time, Special Agent Sonya Chavez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9048

1      Q.   And was Special Agent Chavez involved in

2   this SNM investigation?

3      A.   She was our squad supervisor, so she

4   oversaw everything on that squad including this

5   investigation.

6      Q.   Would you go to her -- if you had

7   questions because you were new, if you had questions

8   about policy or procedure, would you go to Agent

9   Acee, Agent Chavez, or both?

10      A.   Agent Acee.

11      Q.   And in terms of your participation in this

12   investigation, did you conduct interviews by

13   yourself without Agent Acee present?

14      A.   With other individuals, yes.

15      Q.   You mean with other FBI agents?

16      A.   Or task force officers.

17      Q.   Okay.  And in terms of when you would

18   prepare reports such as an FBI 302, was that

19   something that you would prepare and submit on your

20   own, or would you prepare and submit it to Agent

21   Acee for review?

22      A.   It depends on the situation.

23      Q.   Okay.  So some of each?

24      A.   Yes.

25      Q.   I want to direct your attention to two

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9049

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 9050

```
 1   exhibits.

 2           MS. JACKS:  And Your Honor, if I can

 3   approach Agent Stemo?

 4           THE COURT:  You may.

 5           MS. JACKS:  For ease, can I refer to these

 6   as S and T?

 7           THE COURT:  You can.  I think we'll know

 8   what they are.  Do you mind adding maybe Trial

 9   Exhibit S and T to --

10           MS. JACKS:  I'll try to do that.

11   BY MS. JACKS:

12      Q.   Agent Stemo, do you recognize the

13   documents I just gave you, Trial Exhibit S and Trial

14   Exhibit T?

15      A.   Yes.

16      Q.   And can you tell me just briefly what each

17   one of those is?

18      A.   Trial Exhibit S is an FBI 302 written by

19   myself regarding an interview with Lupe Urquizo.

20   And Trial Exhibit T appears to be Agent Sainato's

21   notes of that interview.

22      Q.   You said it appears to be.  Do you need to

23   do anything to confirm that that, in fact, is what

24   it is?

25      A.   Do you mind if I read it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9050

1      Q.   Not at all.  Just let me know when you're

2    done.

3      A.   These are Agent Sainato's notes.

4      Q.   So you told us that you came in in the

5    middle of this investigation.  When you would

6    prepare to interview a witness or participate in a

7    witness interview, did you review the indictment?

8      A.   Yes.

9      Q.   Did you review prior FBI investigation

10   reports related to this investigation?

11     A.   Yes.

12     Q.   And did you speak to other people about

13   what was going on in the investigation?

14     A.   Yes.

15     Q.   Primarily in terms of guidance about the

16   importance of something to the investigation,

17   primarily did you rely on conversations with Agent

18   Acee, or were there other people that contributed?

19     A.   I would primarily rely on the reports that

20   were written.

21     Q.   Okay.  And then if you had questions or if

22   you were -- if you wanted more details, who would

23   you go to?

24     A.   It would depend on who wrote that report

25   or who was present for that.

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9051

1      Q.    Okay.  As an overview, according to your

2  understanding, according to the Government's theory

3  of the case, did Mr. Sanchez participate in the

4  conspiracy and murder of Javier Molina?

5      A.    Yes.

6      Q.    And did he participate in those crimes,

7  according to the Government's theory, by approving

8  or authorizing the killing?

9      A.    Yes.

10      Q.    And did he also participate, according to

11  the Government's theory of the case, by assisting

12  and planning how the killing was going to happen?

13      A.    Yes.

14      Q.    And again, this is according to your

15  understanding of the Government's theory of the

16  case.  Did Mr. Sanchez participate in the Molina

17  murder by obtaining something from which weapons

18  could be made?

19      A.    I don't recall.

20      Q.    Do you recall whether, according to the

21  Government's theory of the case, Mr. Sanchez was the

22  person who obtained a piece of Rudy Perez' walker to

23  be fashioned into weapons with which to kill Molina?

24      A.    I believe he was present when that

25  conversation was had, but I don't know that he

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

DNM 9052

```
 1   actually held on to the piece.
 2       Q.   Okay.  Is it your understanding, according
 3   to the Government's theory of the case, that
 4   Mr. Sanchez had some sort of conversation with Rudy
 5   Perez?
 6       A.   Yes.
 7       Q.   That caused him to provide a piece of his
 8   walker?
 9       A.   Yes.
10       Q.   And finally, according to your
11   understanding of the Government's theory of the
12   case, did Mr. Sanchez participate in the Molina
13   murder by assigning various roles to other
14   individuals?
15       A.   Yes.
16       Q.   And if the Government proved that
17   Mr. Sanchez did those things, would that show that
18   he conspired to commit the murder of Javier Molina?
19       A.   I don't believe that's up to me to decide.
20       Q.   Was it -- that's fine.  I accept that.  I
21   want you to take a look at Exhibit S.  And I think
22   you identified that as an FBI 302.
23       A.   Correct.
24       Q.   Did you prepare that exhibit?
25       A.   I did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9053

1     Q.   And when did you prepare it?

2     A.   January 28, 2018.

3     Q.   And the report was documenting an

4  interview of Lupe Urquizo on January 22, 2018?

5     A.   Yes.

6     Q.   When in relation to the preparation of the

7  report did you provide it to the Government

8  prosecutors?

9     A.   I don't have an exact date.  It would be a

10  matter of days after the report was approved.

11     Q.   Within two or three days?

12     A.   I would approximate less an week.

13     Q.   How, just in general -- just sort of tell

14  me what the chain of custody would be.  You would

15  write the report of the 302, and then who would you

16  give it to?

17     A.   It would need to get approved by someone

18  in the FBI with approval authority.

19     Q.   Okay.

20     A.   Then I would -- more likely than not, I

21  would email it to the AUSAs and the paralegals

22  assigned to the case.

23     Q.   Okay.  So to the three prosecutors and

24  paralegals that were assisting them?

25     A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9054

```
 1        Q.    And who was the person, if you know, that
 2   was reviewing the reports?  Or was it always the
 3   same person or different people?
 4        A.    I don't know.
 5        Q.    There is not a section on that report that
 6   indicates who approved it?  I'm talking about
 7   Exhibit S.
 8        A.    No.
 9        Q.    And when you provided the 302 to the
10   Government prosecutors and paralegals, would you
11   provide anything else with it on that email?
12        A.    It depends.
13        Q.    It depends on what?
14        A.    If I have other reports to give to them,
15   any attachments to the reports, I would provide
16   those, as well.
17        Q.    Okay.  What about the notes?  For example,
18   when you interviewed a witness and took some notes
19   and then prepared a 302, would you include those
20   notes in the email?
21        A.    Not necessarily, no.
22        Q.    It would be a case-by-case basis?
23        A.    Yes.
24        Q.    Specifically with respect to Exhibit S,
25   the 302 that you prepared about the interview of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Lupe Urquizo, did you forward anything else to the

2  Government prosecutors at the time you gave them

3  that 302?

4        A.   Not that I recall.

5        Q.   Is there something that would help you

6  refresh your recollection?  For example, a copy of

7  the sent email, and look to see what attachments

8  were there?

9        A.   That could help.

10       Q.   Do you know if you have that?

11       A.   I don't know.

12       Q.   Is that something you could check at

13  lunch?

14       A.   Yes.

15       Q.   I'd like to ask you to take a look at the

16  other exhibit up there.  That's Trial Exhibit T.

17  And can you tell us what that -- I think you've

18  identified that as Agent Sainato's notes.

19       A.   Correct.

20       Q.   Of the January 22 Urquizo interview.

21       A.   Right.

22       Q.   Did you prepare those notes?

23       A.   No.

24       Q.   Have you seen those notes prior to today?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    When?

2      A.    When they were given to me in preparation

3  for my 302 of that interview.

4      Q.    Okay.  Who provided them to you?

5      A.    I believe it was Agent Sainato.

6      Q.    And did Agent Sainato provide them to you,

7  like, in physical form, or did he email them to you?

8      A.    He must have emailed them.

9      Q.    And why do you say that?

10     A.    Because he was out of state and,

11 therefore, the only way to get them to me was to

12 either leave them on my desk or email.

13     Q.    And so he couldn't have left them on your

14 desk, because he wasn't physically present in New

15 Mexico?

16     A.    I believe he was out of state, yes.

17     Q.    Okay.  So your recollection is that you

18 received an email with the notes from Sainato?

19     A.    Yes.

20     Q.    And that would have been sometime before

21 January 28, 2018, when you prepared the 302?

22     A.    Before or on January 28.

23     Q.    Specifically directing your attention to

24 Trial Exhibit T, did you provide those notes to the

25 Government prosecutors and paralegals?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9057

```
 1        A.    I don't think I did.

 2        Q.    And why do you say you don't think you

 3   did?

 4        A.    Because they're Agent Sainato's notes.  I

 5   typically don't include notes that aren't mine.  I

 6   guess it is possible, when we went through all of

 7   our records looking for handwritten notes of

 8   interviews, that I could have provided them, but I'm

 9   not sure if I did.

10        Q.    Okay.  But you had them when you prepared

11   the 302?

12        A.    Yes.

13        Q.    So is it possible that you emailed those

14   to the Government shortly after January 28 when you

15   emailed them the 302?

16        A.    It's possible, but I don't think I did.

17        Q.    And is that something that you could

18   potentially check over the lunch recess?

19        A.    Yes.

20        Q.    And correct me -- well, let me just go

21   back.  Do you have any specific recollection of

22   providing those notes, Trial Exhibit T, to the

23   Government prosecutors?

24        A.    No.

25        Q.    Do those notes look different than the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9058

```
 1   notes that you took during interviews?
 2        A.   Yes.
 3        Q.   And what's the difference?  What's the
 4   main difference?
 5        A.   I typically handwrite my notes.
 6        Q.   And these notes are typed?
 7        A.   Yes.
 8        Q.   Agent Stemo, did you participate in the
 9   January 22, 2018, interview of Lupe Urquizo?
10        A.   I did not.
11        Q.   You weren't even in the room?
12        A.   Correct.
13        Q.   And can you tell us how it was that you
14   came to write a 302 of a witness interview that you
15   had nothing to do with?
16        A.   Agent Sainato contacted me and told me he
17   had not written the report, and it needed to be
18   written to provide to defense in a timely manner,
19   and he was out of state and did not have access to
20   computers to submit the report.
21        Q.   Now, Agent Sainato was a relatively new
22   FBI agent, as well; right?
23        A.   Yes.
24        Q.   Who has more seniority?  You or Sainato?
25        A.   He does.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.    He does?

2        A.    Yes.

3        Q.    And when he made this request of you, was

4   it unusual?

5        A.    Yes.

6        Q.    And did you speak with anybody about what

7   Agent Sainato was asking you to do?

8        A.    I don't think I did.

9        Q.    You don't think so?

10       A.    No.

11       Q.    So it's your recollection that Sainato

12   asked you to write the 302, emailed you the notes,

13   and then you did what he said?

14       A.    Yes.

15       Q.    Since you didn't participate in the

16   interview, what did you rely on to prepare Trial

17   Exhibit S, the FBI 302?

18       A.    His notes and also the other 302s written

19   on interviews by Lupe Urquizo.

20       Q.    And the other 302s -- would that be an FBI

21   302 from February 24, 2017; March 6, 2017; August

22   22, 2017?

23       A.    I'm not sure about the dates, but there

24   were several.

25       Q.    Just so we make sure the record is clear,

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                       1-800-669-9492
PROFESSIONAL COURT                                       e-mail: info@litsupport.com
REPORTING SERVICE

BEAN & ASSOCIATES, Inc.

DNM 9060

 1 | I'm going to grab those reports and show them to you
 2 | to make sure.
 3 |       MS. JACKS:  I guess, Your Honor, I'd
 4 | better mark these.  So why don't I start with the
 5 | FBI report dated February 24, 2017, Bates pages
 6 | 43636 and -637.  That would be Exhibit D.
 7 |       THE COURT:  You're moving these admission?
 8 |       MS. JACKS:  I will so that the record is
 9 | complete, if there is no objection.
10 |       THE COURT:  Any objection, Mr. Castellano?
11 |       MR. CASTELLANO:  If I can take a look
12 | after she finishes, I don't think there will be any
13 | objection.
14 |       THE COURT:  All right.
15 |       MS. JACKS:  That is a seven-page report
16 | dated March 6, 2017, that would be E; and a
17 | four-page report dated August 22, 2017, that would
18 | be F.
19 |       MS. ARMIJO:  Your Honor, the Government
20 | has no objection.
21 |       THE COURT:  Any objection from any of the
22 | other defendants?
23 |       All right.  Not hearing any -- well, I
24 | guess Defendant's Exhibits D, E, and F will be
25 | admitted into evidence.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9062

```
 1                (Defendant Sanchez Exhibits D, E, and F

 2      admitted.)

 3                MS. JACKS:  Thank you.  And may I approach

 4      Agent Stemo?

 5                THE COURT:  You may.

 6                MS. JACKS:  I apologize these aren't

 7      stapled.

 8                THE COURT:  Do you want a stapler?

 9                MS. JACKS:  Yes, that's probably better.

10      Thank you.

11      BY MS. JACKS:

12           Q.   Agent Stemo, I'm going to give you a

13      minute to look at those Exhibits D, E and F.  But my

14      question is:  Are those the FBI 302s that you

15      reviewed and relied upon in preparing your January

16      22, 2018, 302 for Lupe Urquizo?

17           A.   Yes, they are.

18           Q.   So those three documents, Exhibits D, E,

19      and F, along with Agent Sainato's notes which are

20      Trial Exhibit T -- those are the four documents that

21      you relied on in preparing your 302, Exhibit S?

22           A.   Yes.

23           Q.   Okay.  Was there anything else?

24           A.   I don't think so.

25           Q.   What about discussions with anybody?  For
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9062

```
 1   example, discussions with Agent Sainato?

 2        A.    No.

 3        Q.    What about discussions with Agent Acee?

 4        A.    No.

 5        Q.    What about discussions with either U.S.

 6   Attorney Beck or U.S. Attorney Castellano who were

 7   present during that interview?

 8        A.    I don't think U.S. Attorney Castellano was

 9   present.  I guess it's possible, since I wasn't

10   there.  But no, I did not include those discussions

11   in my 302.

12        Q.    You mean you didn't rely on discussions

13   with those individuals to prepare the 302?

14        A.    No.  Are you getting at the guidance?

15        Q.    No, I'm talking about when you initially

16   sat down and prepared the 302, which is Trial

17   Exhibit S.

18        A.    Yes.

19        Q.    I think you said you relied on Sainato's

20   notes, Trial Exhibit T; right?

21        A.    Yes.

22        Q.    And Exhibits D, E, and F, the prior

23   interviews -- the 302s for the prior interviews of

24   Lupe Urquizo.

25        A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9063

1    Q.   What I'm asking you now is:  When you sat

2   down to initially prepare that 302, did you rely on

3   conversations with anybody?

4    A.   Regarding the facts?

5    Q.   Regarding what happened on January 22

6   during the interview of Mr. Urquizo when you weren't

7   there.

8    A.   No, those discussions aren't in the 302.

9    Q.   Okay.  My question is:  Did you have those

10   discussions?

11    A.   We did have a discussion about what would

12   be included in pretrial reports.

13    Q.   Specifically with respect to preparation

14   of the 302 that's Exhibit S.  Prior to preparing it,

15   did you have discussions with anyone regarding its

16   content?

17    A.   Specific to this 302?  No.

18    Q.   Now, you said just a minute ago that you

19   don't think Mr. Castellano was present during the

20   January 22 interview of Lupe Urquizo.

21    A.   Correct.

22    Q.   But you don't know, because you weren't

23   there.

24    A.   Correct.

25    Q.   But I'm going to ask you to take a look at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9064

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9065

105

```
 1   Exhibit T, which is one of the documents you relied
 2   on to prepare the 302, and specifically ask you to
 3   look at the second line of the first paragraph.
 4        A.   I see it.
 5        Q.   Does that -- do Agent Sainato's notes
 6   reflect that both Matthew Beck and Randy Castellano
 7   were present during the interview?
 8        A.   It does.
 9        Q.   With respect to Trial Exhibit S, how long
10   is that?
11        A.   Four paragraphs.
12        Q.   About two-thirds of a page?
13        A.   About.
14        Q.   And how long is Trial Exhibit T, Agent
15   Sainato's notes?
16        A.   Four pages.
17        Q.   Four typewritten pages?
18        A.   Yes.
19        Q.   And are those typewritten pages
20   single-spaced or double-spaced?
21        A.   The paragraphs are single-spaced.  There
22   are double spaces between paragraphs and some other
23   notes.
24        Q.   Would you agree with me that Agent
25   Sainato's notes are more detailed, significantly
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9065

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9066

 1   more detailed than the 302 you prepared?

 2       A.   Yes.

 3       Q.   Do you know how long the interview lasted

 4   with Lupe Urquizo on January 22, 2018?

 5       A.   I don't know.

 6       Q.   Now, looking at Trial Exhibit S, the 302,

 7   who is listed as the author of the 302?

 8       A.   I am.

 9       Q.   And is Trial Exhibit S, the 302, the first

10   draft of the 302 that you prepared that was supposed

11   to document the January 22 statements of Urquizo?

12       A.   We don't have drafts.  They're either

13   finalized or not.

14       Q.   Well, let me ask it this way, then.  When

15   you prepared the 302 on January 28, did you type it?

16       A.   Yes.

17       Q.   And prior to it being finalized, did you

18   show it to anybody?

19       A.   I don't think I did.

20       Q.   You said you don't think.  Is there some

21   doubt?

22       A.   Sometimes there's cases where I show my

23   work to others.  I don't believe I did that in this

24   specific instance.

25       Q.   You don't believe you did it in this

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 9066

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9067

107

 1  specific case?

 2       A.   Right.

 3       Q.   Did you discuss the content of the 302

 4  with anybody prior to it being finalized?

 5       A.   I don't think so.

 6       Q.   Is there anything that -- I don't know

 7  what you might have or what might help refresh your

 8  memory so you could be more certain.  Is there

 9  anything?

10       A.   No.

11       Q.   Is the 302 that is Trial Exhibit S -- let

12  me ask it this way.  How is the 302 that is Trial

13  Exhibit S -- how does that compare to what you

14  originally typed up on January 28?

15       A.   The 302 is what I typed up on January 28.

16       Q.   So it's identical?

17       A.   Yes.

18       Q.   Now, in the 302, Trial Exhibit S, did you

19  list yourself as somebody that participated in the

20  interview of Lupe Urquizo on January 22?

21       A.   I did not.

22       Q.   And why not?

23       A.   I wasn't there.

24       Q.   Did you list Agent Sainato as somebody

25  that participated in that interview with Lupe

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9067

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9068

108

```
 1   Urquizo on January 22?
 2        A.   No, I didn't.
 3        Q.   And why not?
 4        A.   I'm not sure.  Mistake, probably.
 5        Q.   How did you refer to the FBI agents who
 6   participated in the interview with Lupe Urquizo on
 7   January 22 in that 302, Exhibit S?
 8        A.   I don't think I did.  I just said "FBI
 9   personnel."
10        Q.   So you referred to the people
11   participating in that interview from the FBI as FBI
12   personnel?
13        A.   Yes.
14        Q.   And didn't list the name or names?
15        A.   Right.
16        Q.   And is that how the FBI participants in
17   the other interviews of Lupe Urquizo were documented
18   in FBI 302s?
19        A.   No.
20        Q.   I'm sorry?
21        A.   No.
22        Q.   No?
23        A.   No.
24        Q.   In the other 302s, Exhibits D, E, and F,
25   they're referenced specifically by name; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9068

```
 1        A.    Correct.

 2        Q.    Is it consistent with accepted FBI

 3  policies and procedures to prepare a 302 report of

 4  an investigation that you personally had nothing to

 5  do with?

 6        A.    I don't know.

 7        Q.    What do you think?

 8        A.    Probably not.

 9        Q.    Right.  What's the purpose of the 302?

10        A.    To report what happened or what was said.

11        Q.    And if you're not in the room to hear what

12  was said, how can you reliably report on it?

13        A.    I agree.  In this instance, which was

14  unusual, as you've said, Agent Sainato left, and in

15  order to get discovery to the defense in a timely

16  manner, we did something unusual.

17        Q.    In fact, it's contrary to accepted FBI

18  practices and procedures to prepare a 302 of an

19  interview that you did not participate in; right?

20        A.    I don't know for sure.

21        Q.    Well, did you get trained in how to be a

22  special agent?

23        A.    Yes.

24        Q.    Okay.  And did any of that training have

25  to do with preparation of 302 reports, official
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  reports of FBI investigations?

 2      A.   Yes.

 3      Q.   And did any part of that training discuss

 4  how to prepare a report of an investigation that you

 5  didn't do?

 6      A.   I don't think so.

 7      Q.   Whose idea was it to reference the FBI

 8  agent that participated in the January 22 interview

 9  of Urquizo by the term "FBI personnel"?

10      A.   I don't know for sure.  I assume that was

11  me, since I wrote it.

12      Q.   Who else's idea could it possibly have

13  been?

14      A.   Just mine.

15      Q.   Did you reference -- let me just ask you

16  first, who does "FBI personnel" reference?

17      A.   In this case?

18      Q.   Yes.

19      A.   Sainato.

20      Q.   Agent Sainato?

21      A.   Yes.

22      Q.   And only Agent Sainato; right?

23      A.   I can't say that there weren't other

24  personnel from the FBI in that room at one point in

25  time.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9070

1      Q.   But according to Agent Sainato's notes, he

2  was the only FBI agent present during that

3  interview; right?

4      A.   At the beginning.  I don't know if anybody

5  came in later.

6      Q.   Did you discuss using the term "FBI

7  personnel" in that 302, Exhibit S, with anybody

8  else?

9      A.   No.

10     Q.   And did you refer to Agent Sainato in that

11 302 as FBI personnel to obscure the fact that you

12 were writing a report, a 302 of an interview that

13 you didn't participate in?

14     A.   No.

15     Q.   Why did you do it?

16     A.   It was a mistake.

17     Q.   It's a mistake, obviously, now, when you

18 look back at it; right?

19     A.   Yes.

20     Q.   But why did you do it at the time?

21     A.   I don't think I had any nefarious reasons.

22 I just -- it could have been part of a pony that we

23 had --

24     Q.   I'm sorry?

25     A.   -- forgot to change it.

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                            1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                           e-mail: info@litsupport.com

DNM 9071

```
1         Q.    I didn't hear the full answer.

2         A.    The beginning of the 302 could have been

3   part of a pony or a template that we had and I

4   neglected to change it or forgot to change it.

5         Q.    Prior to preparing Trial Exhibit S, had

6   you ever written a 302 before referencing the

7   federal agents present as, quote, "FBI personnel"?

8         A.    I don't know.

9         Q.    In your 302, Trial Exhibit S, did you list

10  the U.S. Attorneys that were present during the

11  interview of Lupe Urquizo on January 22?

12        A.    I listed AUSA Matthew Beck.

13        Q.    And I think we spoke about this earlier.

14  You did not list AUSA Randy Castellano?

15        A.    Correct.

16        Q.    And do you know from personal knowledge

17  whether Mr. Beck was present during the interview?

18        A.    No.

19        Q.    Okay.  You know based on Agent Sainato's

20  notes?

21        A.    Correct.

22        Q.    And do you know from personal knowledge

23  whether AUSA Castellano was present?

24        A.    No.

25        Q.    But you know from Agent Sainato's notes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   that the notes say he was there?

 2       A.   Correct.

 3       Q.   Did you have any discussions with anybody,

 4   Agent Sainato or U.S. Attorneys Beck or Castellano,

 5   about who was present during the interview or whose

 6   name to include in the 302?

 7       A.   I assume that when Agent Sainato called me

 8   to ask that I write this report, that he mentioned

 9   Matt Beck, and that's why I included him.

10       Q.   Okay.  And he didn't mention Randy

11   Castellano?

12       A.   Not that I remember.  He could have.

13       Q.   And when you prepared the 302, what was in

14   your mind with that conversation with Agent Sainato,

15   when you prepared the 302 of the interview Matt Beck

16   and I conducted?

17       A.   Yes.

18       Q.   So even though it was in the notes that

19   Randy Castellano was there, you left that out of the

20   302.

21       A.   I did.

22       Q.   Did you leave Mr. Castellano out of the

23   302 for some reason, or do you think it was a

24   mistake?

25       A.   I think it was a mistake. I think I was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   trying to turn this 302 out as quickly as possible
 2   so that it could be turned over to defense.
 3       Q.   So you were under some sort of time
 4   pressure?
 5       A.   Yes.
 6       Q.   And because of that time pressure, you
 7   didn't review Agent Sainato's notes, Exhibit T, as
 8   carefully as you might have otherwise?
 9       A.   I think I reviewed the content.  I may
10   have neglected to include with more specificity as
11   to who was there.
12       Q.   You've told us today that Trial Exhibit T
13   are Sainato's notes and that you had nothing to do
14   with preparing those notes; right?
15       A.   Correct.
16       Q.   Have you ever held those notes out or
17   represented to anybody that the notes in Trial
18   Exhibit T were your notes?
19       A.   No.
20       Q.   And you told us that you think, to the
21   best of your recollection, you got those notes from
22   Agent Sainato as an email attachment?
23       A.   I believe so.
24       Q.   And do you know what format the file was
25   in?  For example, was it a Word document, or was it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9075

```
 1    a PDF file, or something else?

 2         A.   I don't remember.

 3         Q.   Do you remember what the attachment or the

 4    file was named that Agent Sainato sent you?

 5         A.   I don't.

 6         Q.   That's something, though, that you could

 7    potentially find out if you found that email.  And

 8    I'm assuming that email would have been sent to you

 9    by Agent Sainato on or shortly before January 28,

10    2016?

11         A.   Yes.

12         Q.   And I think we've established -- I just

13    want to take this sort of methodically.  But I think

14    we have established you're not sure how the notes

15    ultimately got to the Government prosecutors,

16    whether they came from you or Agent Sainato or

17    somebody else?

18         A.   Correct.

19         Q.   And do you know what format the notes,

20    Trial Exhibit T, were handed over to Government

21    prosecutors?  In other words, as a Word document, or

22    as a PDF, or something else?

23         A.   I don't know.

24         Q.   Do you have any idea what the file itself

25    was named?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9075

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9076

 1      A.    No.

 2      Q.    The electronic file that contained the

 3 content of Trial Exhibit T?

 4      A.    I don't know.

 5      Q.    Okay.

 6            MS. JACKS:  Your Honor, I have a

 7 screenshot that I took of my computer depicting

 8 items that were turned over by the Government,

 9 depicting some of the items that were turned over by

10 the Government on March 2, 2018, in the evening

11 hours.  Can I mark that next in order?  I think that

12 would be G.

13            THE COURT:  Yeah, I don't have any problem

14 with that.  Your motion was filed on March 1st,

15 so...

16            MS. JACKS:  Then it would be -- excuse me.

17 Yeah.  Let me just -- this would have been February

18 28, I think, at 7:00 p.m., and I think -- the time

19 of that disclosure I think is referenced in my

20 original motion.

21            THE COURT:  Okay.  Any objection,

22 Mr. Castellano?

23            Are you moving this admission?

24            MS. JACKS:  Let me show him a copy.

25            THE COURT:  All right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9076

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9077

```
 1              MR. CASTELLANO:  While she's showing me
 2   the copy, I may have attached -- actually, I do have
 3   an attachment to the Government's response to the
 4   motion for a new trial, all of the discovery
 5   letters, so there may be some overlapping.
 6              THE COURT:  Is that your response to 2408?
 7   That's your 1850, isn't it?
 8              MR. CASTELLANO:  Actually, my response to
 9   2408 I think is 2442, and the discovery letters are
10   attached.
11              THE COURT:  Okay.  Should we just be
12   taking your 2408 at the same time here, or is there
13   a reason to separate those out?
14              MS. JACKS:  I don't think so.  I think my
15   block of time included this and our new trial Rule
16   29.
17              THE COURT:  So we'll just upgrade this.
18   This includes 2408.  So we'll just take this all
19   together.
20   BY MS. JACKS:
21       Q.   Agent Stemo, I want to ask you to take a
22   look at Trial Exhibit T, Agent Sainato's notes, and
23   can you tell me what the Bates numbers on those
24   notes are?
25       A.   U.S. v. DeLeon, et al., 54285 to 54288.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9078

```
 1                MS. JACKS:  Okay.  And may Exhibit G be
 2  admitted?  This is a screenshot of part of the
 3  discovery that was turned over on February 28.
 4                THE COURT:  Any objection, Mr. Castellano?
 5                MR. CASTELLANO:  Your Honor, I think she
 6  can lay a better foundation or write something on
 7  the exhibit so we know what it is.  When we look at
 8  the records it's going to be an extract of a page.
 9                THE COURT:  I don't know if she can help,
10  as far as any foundation.
11                MS. JACKS:  I'm just going to ask her to
12  identify the actual file that was disclosed to us
13  electronically.
14                THE COURT:  Okay.  Go ahead and see if you
15  can satisfy Mr. Castellano.
16                MS. JACKS:  Do you mind if I approach and
17  show her the exhibit?
18                THE COURT:  Go ahead.
19                MS. JACKS:  Thank you.
20                MR. CASTELLANO:  Sorry, Your Honor, what
21  was the date again of that exhibit?
22                MS. JACKS:  The screenshot was February
23  28.  And it's a partial.  It captures a part -- a
24  listing of part of the documents that were disclosed
25  that evening by the Government.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9078

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   119   Page: 9079

```
 1   BY MS. JACKS:

 2        Q.   Do you recognize that list of documents,

 3   Agent Stemo, to some extent?

 4        A.   Yes.

 5        Q.   And is there an entry or a document that

 6   purports to be Bates pages 54285 to 54288?

 7        A.   Yes.

 8        Q.   And can you tell us the name of that

 9   electronic document that was disclosed by the

10   Government?

11        A.   Yes.  "Agent Stemo's notes, re-interview

12   of Lupe Urquizo on 1/22/18."

13        Q.   Did you do anything to rename an

14   electronic file that was produced by Agent Sainato

15   to reflect that it was your notes of the January 22

16   interview of Lupe Urquizo?

17        A.   No.

18        Q.   Would you agree with me that that file

19   misrepresents what the content actually was?

20        A.   Yes.

21        Q.   And how does it misrepresent the content?

22        A.   Those aren't my notes.

23        Q.   They're Agent Sainato's notes?

24        A.   Correct.

25        Q.   Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9079

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 9080

120

```
 1              MR. CASTELLANO:  Your Honor, for the
 2   record, Document 2451-11 is the email from the
 3   Government to the paralegal.
 4              THE COURT:  All right.  So any objection
 5   to this coming in as an exhibit in this hearing,
 6   Mr. Castellano?
 7              MR. CASTELLANO:  No, Your Honor, because
 8   I'll also be moving the admission of these
 9   documents.
10              THE COURT:  All right.  So Defendants'
11   Exhibit -- or Sanchez Exhibit G will be admitted
12   into evidence.
13              (Defendant Sanchez Exhibit G admitted.)
14   BY MS. JACKS:
15       Q.   Do you know how that electronic file got
16   the name "Agent Stemo's notes of the Lupe Urquizo
17   interview"?
18       A.   I don't.
19       Q.   And you said you had nothing to do with
20   naming it that?
21       A.   Correct.
22       Q.   Do you know whose idea it was to name the
23   file "Agent Stemo's notes"?
24       A.   I do not.
25       Q.   Do you know when it was named that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9080

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 9081

```
 1        A.    I do not.

 2        Q.    When Agent Sainato emailed you the file

 3   containing his notes of the Urquizo interview, was

 4   it named "Agent Stemo's notes"?

 5        A.    I don't know.

 6        Q.    Let me just finish the question, because I

 7   want to read it exactly.  Was it named "Agent

 8   Stemo's notes re: interview of Lupe Urquizo on

 9   January 22, 2018"?

10        A.    I don't think so.

11        Q.    Okay.  Because that would have been

12   completely untrue.

13        A.    Correct.

14        Q.    And Agent Sainato would have had no reason

15   to name his notes of the interview your notes of the

16   interview?

17        A.    Correct.

18        Q.    Have you had any conversations with

19   anybody about why that file containing Agent

20   Sainato's notes was renamed to make it appear as if

21   the notes were yours?

22        A.    No.

23        Q.    Is it consistent with generally accepted

24   FBI practices and procedures to rename electronic

25   files to try to obscure the true author?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9081

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9082

122

```
 1        A.   No.
 2        Q.   In fact, that would be directly contrary
 3   to FBI practices and procedures; correct?
 4        A.   I assume so.
 5        Q.   Was the file containing Agent Sainato's
 6   notes of the January 22 Urquizo interview renamed to
 7   obscure the fact that you weren't there?
 8        A.   I don't think so.
 9        Q.   Was it renamed to make it appear that the
10   person who prepared the 302, the official report of
11   the investigation, was actually present during the
12   interview?
13        A.   I don't think so.
14        Q.   Do you know why the file was renamed?
15        A.   I assume it was a miscommunication.
16   Someone saw that I wrote a 302 and assumed those
17   were my notes.
18        Q.   And certainly the content of the 302,
19   referring to the FBI agent participating in the
20   interview as "FBI personnel," could contribute to
21   someone making that faulty conclusion.
22        A.   Yes.
23        Q.   And when you chose to use the term "FBI
24   personnel" in the 302, did you use that term so that
25   somebody making some sort of conclusion about who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9082

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9083

 1  was there could conclude that you were there?

 2      A.   I don't think so.

 3      Q.   Now, I want to talk to you about

 4  information that's in Agent Sainato's notes, Exhibit

 5  T, Trial Exhibit T, and ask you about whether that

 6  information appeared in the official report of that

 7  interview, Trial Exhibit S, that you prepared.  So

 8  if you need to reference any of those documents,

 9  just let me know and I'll give you time to look.

10          According to Agent Sainato's notes, on

11  January 22, 2018, did Lupe Urquizo tell Agent

12  Sainato and the U.S. Attorneys that were present

13  that Mario Rodriguez instructed Urquizo to bring the

14  paperwork to Southern New Mexico Correctional

15  Facility by having Urquizo's brother give him the

16  message?

17      A.   Yes.

18      Q.   Is that information contained in Trial

19  Exhibit S, the 302 that you prepared?

20      A.   No.

21      Q.   Who decided to leave that information out

22  of the official report of investigation?

23      A.   I did.

24      Q.   And did you decide on your own, or did you

25  get advice from somebody else or some other people?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9083

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   124   Page: 9084

1        A.    On my own.

2        Q.    Do Agent Sainato's notes, Trial Exhibit T,

3   indicate that on January 22, Lupe Urquizo told Agent

4   Sainato and other people present during that

5   interview that when Urquizo got to Southern New

6   Mexico Correctional Facility, there was no property

7   officer on duty and he couldn't immediately get his

8   property?

9        A.    Something to that effect, yes.

10       Q.    And does that information appear in the

11  official report of investigation, the 302, Exhibit

12  S?

13       A.    No, it doesn't.

14       Q.    And who decided to omit that information

15  from the 302, Exhibit S?

16       A.    I did.

17       Q.    And did you do that on your own, or did

18  anybody else participate in that decision with you?

19       A.    On my own.

20       Q.    Do Agent Sainato's notes, Trial Exhibit T,

21  reflect that on January 22, 2018, Lupe Urquizo said

22  that Mario Rodriguez passed a note under the door

23  asking if Urquizo had the Molina paperwork?

24       A.    Yes.

25       Q.    And is that information contained in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9084

9085

 1 | official report of investigation that you prepared,

 2 | Exhibit S?

 3 |      A.   No.

 4 |      Q.   Who decided to omit that information from

 5 | the 302?

 6 |      A.   I did.

 7 |      Q.   And did you do that on your own, or did

 8 | you have discussions about that with anybody else?

 9 |      A.   On my own.

10 |      Q.   Do Agent Sainato's notes, Trial Exhibit T,

11 | reflect that on January 22, 2018, Lupe Urquizo told

12 | him that Rodriguez, Mario Rodriguez, said that

13 | Montoya, Jerry Montoya, Jerry Armenta, and Timothy

14 | Martinez were going to be tasked with killing

15 | Molina?

16 |      A.   Yes.

17 |      Q.   And is that information contained in the

18 | 302 that you prepared, Exhibit S?

19 |      A.   No.

20 |      Q.   And who decided to omit that information?

21 |      A.   I did.

22 |      Q.   And did you do that on your own?

23 |      A.   I did.

24 |      Q.   Do Agent Sainato's notes of the January

25 | 22, 2018, interview of Lupe Urquizo reflect the fact



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9085

 1   that on that date, Urquizo said that Daniel Sanchez

 2   was assigned to cover the cameras?

 3        A.   Yes.

 4        Q.   And is that information reflected in

 5   Exhibit S, the 302 you prepared?

 6        A.   No.

 7        Q.   Who decided to omit that information from

 8   the 302?

 9        A.   I did.

10        Q.   And did you make that decision on your own

11   or with advice from somebody else?

12        A.   On my own.

13        Q.   And finally, do Agent Sainato's notes,

14   Exhibit T, reflect that on January 22, 2018, after

15   the Molina murder, that Lupe Urquizo, Mario

16   Rodriguez, David Calbert, Robert Martinez, and Roy

17   Martinez discussed killing Daniel Sanchez because,

18   quote, "he did not participate in the Molina

19   homicide or even cover the camera like he was

20   supposed to"?

21        A.   Yes.

22        Q.   And is that information reflected in the

23   official report of the interview that you prepared,

24   Exhibit S?

25        A.   It is not.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9087

```
 1        Q.   And who decided to omit that information
 2   from the 302?
 3        A.   I did.
 4        Q.   And did you do that in consultation with
 5   anyone else?
 6        A.   On my own.
 7        Q.   I just have a few more questions, and it's
 8   regarding the release of the notes that are Exhibit
 9   T.  Do you know who made the decision to release
10   Exhibit T, the notes of the January 22 Urquizo
11   interview, to the defendants in this case?
12        A.   I don't know.
13        Q.   Do you know when that decision was made?
14        A.   I don't.
15        Q.   If the notes were released on the evening
16   of February 28, 2018, do you know how -- how much
17   prior to that there were discussions about releasing
18   those notes?
19        A.   I believe it was like a day or two, we
20   were ordered to produce them during the day.  And
21   after court ended, we went and tried to find
22   everything.
23        Q.   So your recollection is:  The Judge
24   ordered the notes produced, and then you scrambled
25   around, got them together, and you released them
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9087

```
 1    that night?
 2         A.    I'm not sure if it was that night, but it
 3    was a short timeframe.
 4         Q.    Were you privy to any discussions
 5    concerning whether to release the notes?
 6         A.    No.
 7         Q.    Were you privy to any discussions about
 8    the timing of releasing those notes?
 9         A.    No.
10              MS. JACKS:  I have nothing further at this
11    time.
12              THE COURT:  Thank you, Ms. Jacks.
13              Did anybody join back on March 1st?  My
14    memory is that everybody joined that motion, but I
15    just don't remember.  I don't have a joinder, a
16    formal joinder, but I think we were moving rather
17    quickly, and my memory is in the courtroom,
18    everybody jumped up and said they joined Ms. Jacks'
19    March 1st motion.
20              Does anybody want to speak on that issue?
21              MS. BHALLA:  On the joinder issue, Your
22    Honor?
23              THE COURT:  Well, I just don't remember if
24    there was a formal joinder.  But I remember there
25    being -- my memory is it was an oral joinder with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9088

```
 1   her motion at the time.

 2            MS. BHALLA:  My memory is that Mr. Herrera

 3   did orally join that motion, Your Honor.

 4            THE COURT:  Does anybody have

 5   cross-examination of Ms. Stemo on either this motion

 6   or Ms. Jacks' 2408?  Mr. Lowry?

 7            MR. LOWRY:  No, Your Honor, and I'll just

 8   second Ms. Bhalla's.

 9            THE COURT:  That's my memory, everybody

10   jumped up and joined that.

11            All right, Mr. Castellano.  Do you have

12   cross-examination of Ms. Stemo?

13            MR. CASTELLANO:  Yes, Your Honor.

14            THE COURT:  Mr. Castellano.

15                    CROSS-EXAMINATION

16   BY MR. CASTELLANO:

17       Q.   Agent Stemo, you testified earlier that

18   it's not common for one agent to prepare a report

19   from another agent's notes; is that correct?

20       A.   Correct.

21       Q.   What was different about this situation?

22       A.   Agent Sainato had left New Mexico and did

23   not have access to our systems to produce a report

24   on his own.

25       Q.   And what was the importance of getting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9089

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9090

1   this information out to the defendant?

2       A.   Getting it to them in a timely manner,

3   because we were about to start trial or were in

4   trial.

5       Q.   Do you recall that trial began on January

6   29 of 2018?

7       A.   Yes.

8       Q.   And looking at Exhibit S, it appears that

9   the date drafted was January 28, 2018; is that

10  correct?

11      A.   Yes.

12      Q.   And looking at the upper right-hand corner

13  where it says "Date of entry" on that report, what

14  does it indicate?

15      A.   January 29, 2018.

16      Q.   What does it mean that there's a

17  difference between those two dates?

18      A.   The date drafted is the date that the

19  report is entered and submitted.  The date of entry

20  is the date the report is approved and ready for

21  dissemination.

22      Q.   So then is it fair to say that you

23  potentially drafted this on the 28th and had it

24  approved the next day, the 29th?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9090

```
 1        Q.   At that point, would you then have sent it
 2   to the United States Attorney's Office for
 3   disclosure?
 4        A.   Yes.
 5        Q.   You were asked about the phrase "FBI
 6   personnel" being present for the interview.  You
 7   mentioned -- I think you called it a pony?
 8        A.   Yes.
 9        Q.   Is it also known as a go-by?
10        A.   Yes.
11        Q.   So was there an indication that there were
12   other reports which started out with an introductory
13   statement that FBI personnel were present rather
14   than specific names?
15        A.   Yes.
16        Q.   And you mentioned when you prepared the
17   report which is Exhibit S, the January 22, 2018,
18   interview of Lupe Urquizo, that you reviewed other
19   reports in preparation for that report; is that
20   correct?
21        A.   Yes.
22        Q.   And why is it that after comparing the
23   notes and the other 302s from -- and the other 302s,
24   that we have three paragraphs in your report, which
25   is Exhibit S?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9091

```
 1        A.   The three paragraphs included new or
 2   potentially contradictory information provided by
 3   Lupe Urquizo on that date.
 4        Q.   Is that the conclusion you drew from
 5   looking at the notes and comparing that to the other
 6   302s which were statements by Lupe Urquizo?
 7        A.   Yes.
 8        Q.   And so was the purpose of your report,
 9   Exhibit S, to --
10             MS. JACKS:   Objection, leading.
11             THE COURT:   Yeah.   Don't lead.   I'll get
12   more information on this from Ms. Stemo if you don't
13   lead her.
14   BY MR. CASTELLANO:
15        Q.   So in other words, why are there just
16   three paragraphs there, as opposed to four pages
17   from Agent Sainato's notes?
18        A.   The purpose of our pretrial interviews and
19   subsequent reports was to provide any new
20   information to defense counsel that wasn't
21   previously provided.   I don't think we wanted to
22   inundate them with information they already had, and
23   therefore, we chose to only provide them new
24   information.
25        Q.   What were you aware of in terms of a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9093

133

```
 1  conspiracy to murder Daniel Sanchez following the

 2  Molina murder?

 3       A.   There was talk amongst SNM that they

 4  wanted to hit him.

 5            MS. JACKS:  Objection, this is hearsay.

 6            THE COURT:  Well, you know, we can sort

 7  this out in any findings of fact and conclusions,

 8  but I may need to hear it post trial.  Overruled.

 9  BY MR. CASTELLANO:

10       Q.   Please continue.

11       A.   The SNM talked about hitting Daniel

12  Sanchez because he failed to cover the cameras and

13  retrieve the shank from Jerry Armenta, like he was

14  supposed to after the hit occurred.

15       Q.   So when you look at Agent Sainato's notes

16  and there is an indication in there that people had

17  agreed to murder Daniel Sanchez for failure to do

18  what he agreed to do --

19       A.   Correct.

20       Q.   -- based on your information, was that new

21  information?

22       A.   No.

23       Q.   So do you recall from the March 6, 2017,

24  what it said about the 2017 report, which is Exhibit

25  E -- do you recall if there is a discussion in that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



DNM 9093

```
 1   report that there was a green light placed on Daniel

 2   Sanchez?  And I'll refer you to page 4 of 7.  If it

 3   has a Bates stamp, it's 43641 at the bottom.

 4        A.   Yes.

 5        Q.   And so the fact that there was a

 6   conspiracy to murder Daniel Sanchez that was in the

 7   January 22 notes, was that new information to you?

 8        A.   No, it wasn't.

 9        Q.   Is that why that was omitted from your

10   report?

11        A.   Correct.

12        Q.   And you talked about believing that this

13   information was directed towards Mr. Beck when it

14   came to your discussions with Agent Sainato?

15        A.   Yes.

16        Q.   Were you aware that Lupe Urquizo was Matt

17   Beck's witness for trial?

18        A.   I don't remember, but it's likely.

19        Q.   And so if that was his witness for trial,

20   would it make sense that this information would be

21   directed towards him?

22        A.   Yes.

23        Q.   You talked earlier about not specifically

24   your 302, which is Exhibit S, but that generally

25   there is a discussion about pretrial interviews.  Do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9094

```
 1    you remember that?

 2         A.   Yes.

 3         Q.   And so what was the purpose of documenting

 4    information that came out of the pretrial

 5    interviews?

 6         A.   The purpose was to document anything that

 7    was new or potentially contradictory that would be

 8    useful to the defense during trial that they didn't

 9    already have.

10         Q.   And when you prepared the report, which

11    was Exhibit S, is that what you had in mind when you

12    prepared that report?

13         A.   Yes.

14              MR. CASTELLANO:  May I have a moment, Your

15    Honor?

16              THE COURT:  You may.

17              MR. CASTELLANO:  Thank you, Your Honor.  I

18    have no further questions.

19              THE COURT:  Thank you, Mr. Castellano.

20              Do any other defendants have questions of

21    Ms. Stemo before Ms. Jacks?

22              MS. JACKS:  I have a few.

23              THE COURT:  All right, Ms. Jacks.  Do you

24    have redirect of Ms. Stemo?

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9095

```
 1                    REDIRECT EXAMINATION
 2   BY MS. JACKS:
 3        Q.    Agent Stemo, do you know how many pages of
 4   materials were turned over to the defendants in this
 5   case between January 29 and March 1, 2018?
 6        A.    I do not.
 7        Q.    Would you be surprised if I told you it
 8   was 6,282 pages of materials?
 9        A.    No.
10        Q.    That's not surprising?  Sounds about
11   right?
12        A.    I don't know about the number, but it
13   wouldn't surprise me.
14        Q.    Would you agree that that is inundating
15   the defense with information in the middle of trial?
16        A.    No.
17        Q.    If you were so concerned about not
18   inundating the defense with information, do you know
19   why, during trial, the defense was provided 6,282
20   pages of discovery?
21        A.    I believe there were several reasons.
22        Q.    Okay.  I want to ask you -- I want to just
23   follow up with you about some of your answers to
24   Mr. Castellano's questions.  You said that in
25   preparing the 302, you wanted to include new
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   information?

 2       A.   Yes.

 3       Q.   And you wanted to include potentially

 4   contradictory information?

 5       A.   Yes.

 6       Q.   I think you've agreed with me that Agent

 7   Sainato's notes, Exhibit T, reflect that during that

 8   January 22, 2018, interview, Lupe Urquizo told the

 9   investigators, Agent Sainato and whoever else was in

10   the room, that Daniel Sanchez did not participate in

11   the Molina homicide.

12       A.   That's not entirely accurate.

13       Q.   Well, that's part of what he said.  Would

14   you agree with me?

15       A.   Yes, the cameras and the shank part.

16       Q.   Well, those notes don't say anything about

17   the shank, do they?

18       A.   Correct.

19       Q.   What Agent Sainato's notes say -- and I'm

20   going to read it specifically about that -- is that

21   Lupe Urquizo and others talked about hitting Daniel

22   Sanchez, quote, "because he did not participate in

23   the Molina homicide or even cover the camera like he

24   was supposed to."

25       A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 9098

138

```
 1        Q.   Prior to January 22, 2018, had Lupe
 2   Urquizo ever told investigators or complained that
 3   Daniel Sanchez did not participate in the Molina
 4   homicide?
 5        A.   Not in those words exactly.  I believe he
 6   also mentioned the cameras and the shank before, so
 7   yes.
 8        Q.   Okay.  I mean, yeah, he did mention the
 9   camera and the shank.  That's documented in the
10   report before you; right?  Would you agree with me
11   that no report prior to January 22, 2018, reflects
12   Lupe Urquizo saying, "Daniel Sanchez did not
13   participate in the Molina homicide"?
14        A.   May I have a moment?
15        Q.   Of course.
16        A.   He had said that before.
17        Q.   And would you direct me to the report in
18   which you think that's reflected?
19        A.   Exhibit E.  Bates stamp 43641, bottom
20   paragraph.  "Urquizo said that the SNM called a
21   green light on Daniel Sanchez after the Molina hit
22   because he failed to cover the camera and did not
23   retrieve Armenta's shank after the hit."
24        Q.   Is there anything in that sentence about
25   Lupe Urquizo saying Daniel Sanchez did not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9098

1   participate in the Molina homicide?

2        A.   Not in those exact words.

3        Q.   And would you agree with me that the

4   statement reflected in Agent Sainato's notes from

5   January 22 said that there was a discussion about

6   killing Daniel Sanchez because he didn't participate

7   in the homicide and he didn't cover the camera like

8   he was supposed to?

9        A.   Yes, that's in there.

10        Q.   Is that statement inconsistent, at least

11   in part, with the statement that you just read me?

12        A.   I feel like this is a matter of semantics.

13        Q.   I think if you were Mr. Sanchez, you

14   wouldn't feel like it was a matter of semantics.

15        A.   Partly.

16        Q.   Try to look at it objectively.

17        A.   I am.

18        Q.   Is there information contained in the

19   January 22 notes about Mr. Sanchez not participating

20   in the homicide that is not contained in any other

21   302?

22        A.   Right.  The way it is written, yes.

23        Q.   Okay.  And would you also agree with me

24   that it is at least potentially inconsistent with

25   prior statements of Urquizo saying they wanted to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9099

```
 1   kill Sanchez because he didn't cover the camera and
 2   he didn't dispose of Armenta's shank?
 3        A.   Somewhat.
 4        Q.   Somewhat inconsistent.
 5        A.   Yes.
 6        Q.   And I think you told us that it was the
 7   Government's theory of the case that Mr. Sanchez was
 8   the leader and assigned the roles to be -- to the
 9   various individuals that physically committed the
10   Molina homicide.
11        A.   He was involved in the planning and
12   assigning of the roles, yes.
13        Q.   That was the Government's theory.
14        A.   Yes.
15        Q.   And would you -- in regard to at least
16   Agent Sainato's notes of the January 22, 2018,
17   interview, did Urquizo complain that Sanchez didn't
18   do the job he was assigned?
19        A.   "He" being Sanchez?
20        Q.   Yes.
21        A.   Yes.
22        Q.   And would you agree with me that that's at
23   least potentially inconsistent with Sanchez
24   assigning jobs?
25        A.   Not necessarily.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9100

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9101

```
 1        Q.    I said "potentially."

 2        A.    Then, yes.

 3        Q.    So in preparing the 302, Exhibit S, of

 4   that January 22 interview, you left out information

 5   that was not contained in other 302s and that was

 6   potentially inconsistent with other information that

 7   had been provided by Urquizo?

 8        A.    In my reading of the previous reports and

 9   in comparing that with Agent Sainato's notes, I did

10   not read it that way.

11        Q.    But today you've acknowledged at least

12   that --

13        A.    It's possible, yes.

14        Q.    And if, as you've testified, there was a

15   rush to get the material to the defense about the

16   pretrial interviews of witnesses, do you know why

17   the notes of those interviews, in particular Agent

18   Sainato's notes, which were almost a transcription

19   of the interview -- why those weren't provided to

20   the defense prior to the beginning of trial?

21        A.    I don't know.

22              MS. JACKS:  I have nothing further.

23              THE COURT:  Thank you, Ms. Jacks.

24              Do you have anything further,

25   Mr. Castellano?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9102

```
 1            MR. CASTELLANO:  I do, Your Honor; a few
 2   follow-up questions, if I may.
 3            THE COURT:  All right, Mr. Castellano.
 4                 RECROSS-EXAMINATION
 5   BY MR. CASTELLANO:
 6       Q.    Agent Stemo, going back to Agent Sainato's
 7   notes, which is Exhibit T, does it indicate in the
 8   introductory paragraph that Agent Sainato is the
 9   author or present for that interview?
10       A.    It does.
11       Q.    And so when you open up that attachment,
12   is it clear that Agent Sainato is the author?
13       A.    Yes.
14            THE COURT:  Mr. Castellano, let's talk a
15   little bit about scheduling.  Do y'all want to take
16   a 15-minute break, take a late lunch, about 1:30, or
17   do you want to go ahead and take a lunch break now?
18   I need to give Ms. Bean some break here.  What do
19   you think?
20            MR. CASTELLANO:  I'm happy to take a break
21   now and a late lunch, but I'm happy --
22            THE COURT:  Does that work for the
23   defendants?  I know y'all are sack lunching today,
24   and tomorrow is the big meal; right?  That's the way
25   it's working?  Do I even know what I'm talking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about?  I'm seeing some affirmative.  Is it chicken
 2    or burgers?  What are y'all getting?
 3            MR. CASTLE:  They were wanting one of
 4    those steaks you were talking about during trial,
 5    Judge.
 6            THE COURT:  I'm eating turkey.  If there
 7    is no objection, then, why don't we take a 15-minute
 8    break and come back in and do a late lunch.  Is that
 9    all right with you, Mr. Cooper?
10            MR. COOPER:  I know that Mr. Castle was
11    going to get out of here, and I'd just as soon go to
12    lunch now, but I don't know what everybody else --
13            MS. JACKS:  We do have the issue about the
14    emails that Agent Sainato -- I'm sorry, that Agent
15    Stemo may be able to check over the lunch hour.  I
16    don't know that we can finish totally unless she has
17    a chance to do that.
18            THE COURT:  All right.  Well, let's take
19    our lunch break now, and then we'll come back in and
20    start at quarter of 1:00, ten to 1:00, something
21    like that.  Mr. Benjamin?
22            MR. BENJAMIN:  Yes, Your Honor.  Assuming
23    we start at ten to 1:00, we'll take our normal
24    break, then, an hour and a half from there?  I'm
25    trying to schedule a call this afternoon.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9103

```
 1                    THE COURT:  Yeah, that's probably about
 2    right.
 3                    (The Court stood in recess).
 4                    THE COURT:  All right.  Let's go on the
 5    record.  I think we've got all the defendants and an
 6    attorney for each one of the defendants.
 7                    Ms. Stemo, I'll remind you that you're
 8    still under oath.
 9                    Mr. Castellano, if you wish to continue
10    your cross-examination of Ms. Stemo, you may do so
11    at this time.
12                    MR. CASTELLANO:  Thank you, Your Honor.
13                    THE COURT:  Mr. Castellano.
14                    MR. CASTELLANO:  I don't believe Ms. Jacks
15    has any objection.  I'm going to move the admission
16    of Government's Exhibits 12 and 13.  And if I can
17    have the Elmo, I'll show them to the Court.
18                    THE COURT:  Do those numbers relate to
19    this hearing or --
20                    MR. CASTELLANO:  They do, Your Honor.  I'm
21    going to show you the document.  So it will be
22    document 2451-12 and 2451-13.
23                    THE COURT:  It's very blurry on the
24    screen, so you'll need to probably focus it some.
25                    MR. CASTELLANO:  So these were attachments
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9104

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9105

```
 1   from the Government's pleadings, Your Honor, and I'm

 2   showing the Court Government's Exhibit 12, which was

 3   Defendant's Exhibit FL.

 4           THE COURT:  All right.  Any objection,

 5   Ms. Jacks?

 6           MS. JACKS:  No, Your Honor.

 7           THE COURT:  All right.  Anybody else?  Not

 8   hearing any objection Government's Exhibits 12 and

 9   13 will be admitted into evidence for purposes of

10   this hearing.

11           (Government Exhibits 12 and 13 admitted.)

12           MR. CASTELLANO:  Thank you, Your Honor.

13   BY MR. CASTELLANO:

14       Q.   Agent Stemo, I'm going to show you what's

15   been marked for purposes of this hearing as

16   Government's Exhibit 3.  Do you see the designation

17   at the bottom?

18       A.   I do.

19       Q.   And this is also Defendants' Trial Exhibit

20   FV.  Do you recognize this document?

21       A.   Yes.

22       Q.   How do you recognize it?

23       A.   It was shown to me a few minutes ago.

24       Q.   And do you recognize it as something you

25   saw also before this hearing?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9105

```
 1        A.    Yes.

 2        Q.    What is it?

 3        A.    It's a handwritten letter or a copy of one

 4   written by Mario Rodriguez.

 5        Q.    Is this the document that showed up at

 6   trial that was one of the documents from Mario

 7   Rodriguez' personal property under Agent Sainato's

 8   desk?

 9        A.    Yes.

10        Q.    And why was this produced to the United

11   States?

12        A.    Because when I went through some of those

13   documents, I determined that some of the information

14   in here contradicted what Mr. Rodriguez had told us

15   before.

16        Q.    So you identified that as something that

17   could be inconsistent with his trial testimony?

18        A.    Yes.

19        Q.    And as a result, then, did you turn it

20   over to the United States so it could be disclosed

21   to the defense?

22        A.    Yes.

23        Q.    I'm showing you what's been admitted as

24   Government's Exhibit 12.   It's also identified as

25   Defendant's Exhibit FL.   Turning to the fourth page
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   of that document, before today had you ever seen
 2   this document?
 3        A.   No.
 4        Q.   And did you have a chance to review it
 5   today for court purposes?
 6        A.   I did.
 7        Q.   Do you recognize this as virtually a
 8   verbatim statement from Government's Exhibit 13,
 9   which I just showed you?
10        A.   Yes.
11        Q.   And at the time you found Government's
12   Exhibit 13 in Mario Rodriguez' property, were you
13   aware that Exhibit 12 had already been admitted as a
14   trial exhibit in the trial?
15        A.   No, I wasn't.
16        Q.   So not knowing that, did that Exhibit 13
17   which I'm showing you seem much more significant to
18   you, not knowing it had been introduced at trial?
19        A.   It did.
20             MR. CASTELLANO:  Your Honor, I don't have
21   any further questions.  I think Agent Stemo told
22   Ms. Jacks she looked for the emails over the break,
23   and I think she can answer some of Ms. Jacks'
24   questions.
25             THE COURT:  All right.  Thank you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9107

```
 1   Mr. Castellano.

 2            Ms. Jacks.

 3                 FURTHER REDIRECT EXAMINATION

 4   BY MS. JACKS:

 5       Q.   Agent Stemo, I'll let you tell us what you

 6   found over lunch about the email questions.

 7       A.   Okay.  I found the email in which Agent

 8   Sainato emailed me his notes.  They were entitled

 9   "Urquizo notes" and they were in a Word document.

10       Q.   They were entitled "Urquizo notes"?

11       A.   Yes.

12       Q.   And it was a Word document?

13       A.   Yes.

14       Q.   Okay.  And the date of that email?

15       A.   The 28th of January 2018.

16       Q.   The 20th?

17       A.   28th.

18       Q.   Oh, 28th, okay.  All right.

19       A.   And the second email was from Agent Tom

20   Neale that included a batch of interview notes

21   including the Urquizo notes.  That was on February

22   28, 2018, and the title of most of those documents

23   were last name of the individual interviewed,

24   underscore, whoever did those notes.  And in that

25   email, my assumption is that Agent Neale thought
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   because I wrote the 302 that I took the notes.  So
 2   the Word document is titled "Urquizo notes
 3   underscore Stemo."
 4        Q.   And the date of that email was February
 5   28?
 6        A.   Yes.
 7        Q.   Thank you for finding that out.  The notes
 8   which are Trial Exhibit T -- the notes identify that
 9   they're prepared by Agent Sainato; is that right?
10        A.   Correct.
11        Q.   Within the body of the document.
12        A.   Yes.
13             MS. JACKS:  I have nothing further.
14             THE COURT:  Thank you, Ms. Jacks.
15             Do any of the other defendants have any
16   redirect of Ms. Stemo?
17             All right.  Ms. Stemo, you may step down.
18             Is there any reason Ms. Stemo cannot be
19   excused from the proceedings, Mr. Castellano?
20             MR. CASTELLANO:  No, Your Honor.
21             THE COURT:  Can she be excused, Ms. Jacks?
22             MS. JACKS:  As far as I'm concerned, but I
23   can't speak for anybody else.
24             THE COURT:  How about anybody else?
25   Anybody else want to keep her under call or let her
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9109

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9110

150

```
 1   go?
 2            All right.  Not hearing anything, you're
 3   discharged from the proceedings.  Thank you, Ms.
 4   Stemo.
 5            All right, Ms. Jacks.  Do you have further
 6   witnesses or evidence?
 7            MS. JACKS:  Well, I just have one other
 8   thing that I want to put on the record, is that we
 9   did file a Touhy request asking for the ability to
10   call Matt Beck and/or Mr. Castellano as part of this
11   hearing.  That, my understanding as of last week,
12   has been denied.  The United States Attorney's
13   Office has declined to make them available.
14            THE COURT:  Okay.  Let me ask you this.
15   Maybe Mr. Castellano and Ms. Armijo don't want to go
16   along with this.  There might be some questions you
17   have and they might be able to answer them.  Do you
18   want to ask me and then see if I might pose the
19   questions and see if they'd answer them?
20            MS. JACKS:  I think I'll just accept the
21   state of the record as it is.
22            THE COURT:  Fine.  All right.  Anything
23   else, Ms. Jacks?
24            MS. JACKS:  No.
25            THE COURT:  All right.  How about from the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9110

```
 1   Government?  Mr. Castellano, Ms. Armijo, do you have
 2   any witnesses or evidence you want to present on
 3   Ms. Jacks' and Mr. Sanchez' two motions?
 4            MR. CASTELLANO:  I do have evidence in the
 5   form of exhibits, Your Honor.
 6            THE COURT:  All right.  The 12 and 13?
 7            MR. CASTELLANO:  Yes.  And I have
 8   additional exhibits that were all attachments to our
 9   response.
10            THE COURT:  All right.
11            MR. CASTELLANO:  And a few other exhibits,
12   I believe.
13            THE COURT:  All right.  Do you want to
14   introduce those separately, or do you just want the
15   Court to take notice of those that are attached?
16            MR. CASTELLANO:  Yes, let me -- if I may
17   approach, Your Honor, the podium --
18            THE COURT:  You may.
19            MR. CASTELLANO:  -- and at least try to
20   make a record of what they are.  But I will
21   basically ask the Court to take notice of the
22   attachments, but I'll make a record of what they
23   are.
24            Okay, Your Honor, for the record, Exhibit
25   1 to Document 2451 was a transcript from Gerald
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 9112

152

```
 1   Archuleta, and these have to do with limiting

 2   instructions.

 3            Exhibit 2 is a transcript of Billy

 4   Cordova.

 5            Document 3 is Government's Exhibit 215,

 6   Trial Exhibit 215.

 7            Exhibit 4 was the transcript of Antonio

 8   Palomares.

 9            Exhibit 5 was the transcripts of Roy

10   Martinez.

11            Exhibits 6 and 7 are also transcripts.

12            Exhibit 8 is a Billy Cordova transcript.

13            Exhibit 9 is the January 22 notes by Agent

14   Sainato.

15            Exhibit 10 are the March 6, 2017, FBI 302

16   notes, which was also a debrief of Lupe Urquizo.

17   That's Exhibit 10.

18            Exhibit 11 is the discovery letters that

19   were disclosed prior to and during trial.  That will

20   give the Court an idea of what was disclosed during

21   trial.  Those are all listed in the discovery

22   letters themselves.

23            Exhibits 12 and 13 have already been

24   admitted.

25            Exhibits 14 and 15 are transcripts of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9112

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9113

```
 1   Agent Acee's trial testimony.
 2            THE COURT:  All right.  You're moving 1
 3   through 11 and then 14 and 15, Mr. Castellano?
 4            MR. CASTELLANO:  Yes, Your Honor.  It
 5   should be 1 through 15.
 6            THE COURT:  Any objection, Ms. Jacks?
 7            MS. JACKS:  No.
 8            THE COURT:  Any objection from any of the
 9   other defendants?  All right.  Mr. Lowry?
10            MR. LOWRY:  No, Your Honor.
11            THE COURT:  All right.  Government's
12   exhibits for purposes of the hearing on 1841 and
13   2408, Exhibits 1 through 11 and 14 and 15 will be
14   admitted into evidence.
15            (Government Exhibits 1 through 11, 14 and
16   15 admitted.)
17            THE COURT:  All right, Mr. Castellano, any
18   further witnesses or evidence the Government wishes
19   to present?
20            MR. CASTELLANO:  Yes, Your Honor, I have a
21   couple more exhibits.  They were not attachments.  I
22   found them since the filing.  I'll show them to
23   defense counsel, or I can summarize them for the
24   Court.
25            THE COURT:  Why don't you see if there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9113

```
 1   any objection from Ms. Jacks right beside you?
 2             MR. CASTELLANO:  What would be Exhibit 16
 3   would be the transcript of the trial testimony of
 4   Timothy Martinez on February 13, 2018.  And this
 5   relates to the Rule 29 motion on page 52 of that
 6   exhibit.  It discusses or mentions the conversation
 7   that Timothy Martinez had with Mario Rodriguez and
 8   with Daniel Sanchez.  And so for the Rule 29
 9   purposes, this is direct evidence by a witness that
10   Daniel Sanchez was involved with the Molina
11   homicide.  So this exhibit and the next exhibit will
12   be conversations both before and after the Molina
13   murder.
14             MS. JACKS:  There is no objection.
15             THE COURT:  All right.  And what did you
16   mark that as, Mr. Castellano?
17             MR. CASTELLANO:  This will be Exhibit 16.
18             THE COURT:  16.  Any objection from any
19   other defendant?  Not seeing or hearing any -- you
20   are moving it; correct?
21             MR. CASTELLANO:  I am, Your Honor.
22             THE COURT:  All right.  Government's
23   Exhibit 16 will be admitted into evidence.
24             (Government Exhibit 16 admitted.)
25             MR. CASTELLANO:  Exhibit 17 is a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9114

```
 1  transcript from Timothy Martinez, also from trial.

 2  It relates to the conversation that Mr. Martinez had

 3  with Mr. Sanchez following the Molina murder.  The

 4  first page of this document is from the transcript,

 5  page 81.  I will let Ms. Jacks take a look at it.

 6            MS. JACKS:  I have no objection.

 7            THE COURT:  Any objection from any other

 8  defendant?

 9            And you're moving its admission,

10  Mr. Castellano?

11            MR. CASTELLANO:  I am, Your Honor.

12            THE COURT:  Government's Exhibit 18 will

13  be admitted into evidence for purposes of the

14  hearing related to 1841 and 2408.

15            MR. CASTELLANO:  And that should be 17,

16  Your Honor.

17            THE COURT:  All right. Government's

18  Exhibit 17.

19            (Government Exhibit 17 admitted.)

20            MR. CASTELLANO:  Exhibit 18 is trial

21  testimony, I believe, from February 12, 2018, by

22  Jerry Montoya.  And I'll show that, as well, to

23  Ms. Jacks.

24            On page 30 of Exhibit 18, which is the

25  Jerry Montoya transcript, on page 30 it says, "And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9115

```
1   think we need to cover the cameras because they're

2   going to see myself and Jerry Armenta going into the

3   cell to do this crime.  And he says, 'No, no, we're

4   not going to cover the camera because Dan Dan,

5   Daniel Sanchez, didn't want the cameras covered.'"

6           And then page 36 indicates that Mr.

7   Montoya had a conversation with Mr. Sanchez, and

8   Mr. Sanchez asked Mr. Montoya if he knew what was

9   going on, and Mr. Montoya said yes.  So this relates

10  once again to a conversation between Mr. Sanchez and

11  Mr. Montoya about the Molina murder.

12          MS. JACKS:  No objection.

13          THE COURT:  Anybody else have an

14  objection?

15          All right.  And you're moving its

16  admission, Mr. Castellano?

17          MR. CASTELLANO:  Thank you, Your Honor.

18  That's Exhibit 18.

19          THE COURT:  You're moving its admission?

20          MR. CASTELLANO:  Yes, sir, I am.

21          THE COURT:  All right.  Not hearing any

22  objection, Government's Exhibit 18 will be admitted

23  for purposes of hearing on motions 1841 and 2408.

24          (Government Exhibit 18 admitted.)

25          MR. CASTLE:  Exhibit 19 is also a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9117

1    transcript of Jerry Montoya.  On page 49 of that

2    transcript it indicates that Mr. Sanchez's position

3    in the pod was the llavero.  And this transcript is

4    only pages 48 through 52 from that testimony.

5            MS. JACKS:  Again, no objection.

6            THE COURT:  Any objection from any other

7    defendants?

8            You're moving its admission,

9    Mr. Castellano?

10           MR. CASTELLANO:  Yes, sir.

11           THE COURT:  All right.  Government's

12   Exhibit -- this is going to be 19; correct?

13           MR. CASTELLANO:  Yes.

14           THE COURT:  It's admitted into evidence.

15           (Government Exhibit 19 admitted.)

16           MR. CASTELLANO:  I believe that's it, Your

17   Honor.

18           THE COURT:  All right.  Thank you,

19   Mr. Castellano.

20           Ms. Jacks, do the defendants have any

21   rebuttal evidence they wish to present on this?

22           MS. JACKS:  No.

23           THE COURT:  All right, Ms. Jacks.  Are you

24   ready to argue your motion?

25           MS. JACKS:  I am.  I actually -- I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   158   Page: 9118

```
 1    certainly am.

 2              THE COURT:  Ms. Jacks.

 3              MS. JACKS:  So do you want to start with

 4    the Brady issue that arose in trial or --

 5              THE COURT:  It's totally up to you.  I've

 6    certainly been up here refreshing my memory, and I

 7    have this week on that issue, so it's your call.

 8              MS. JACKS:  Why don't I start with that,

 9    because I think really that's dealt with both in --

10    there is the motion that's seeking a dismissal based

11    on the intentional and deliberate violation of

12    Brady.  And then there's the arguments in the motion

13    for a new trial, that the Brady violation justifies

14    a new trial, and that the Brady violation is also a

15    Rule 16 violation which should justify a new trial.

16              And I think the remedy -- I think it's

17    clear, even Agent Stemo acknowledged that the

18    statements attributed to Mr. Urquizo by Agent

19    Sainato in his notes are at least different than

20    what was previously disclosed and favorable to

21    Mr. Sanchez.  And I think the real question about

22    what the remedy for the Brady violation is is:  What

23    was the Government's state of mind or level of

24    culpability in not turning those over?  Did they

25    deliberately conceal those things to gain an unfair
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   tactical advantage at trial?  Was it reckless or

 2   rushed and was a mistake?  I think that's for the

 3   Court to decide.  I do --

 4           THE COURT:  Can we go back just a second

 5   and tell me where we were on March 1st?  Where were

 6   we in that trial?  Where exactly were we?

 7           MS. JACKS:  The last day of evidence was

 8   March 2.

 9           THE COURT:  So these rolled out on the

10   night of the 28th and we were dealing with them on

11   the 1st?

12           MS. JACKS:  Correct.  The defense was in

13   the middle of presenting its case.  It was a month

14   after Lupe Urquizo had testified that those notes

15   were disclosed.  And I would note that the

16   statements that were particularly favorable to

17   Mr. Sanchez, the idea, the statements that Mr.

18   Urquizo and most of the other Government's

19   testifying informants talked about killing

20   Mr. Sanchez because he did not participate in the

21   Molina murder or cover the cameras like he was

22   supposed to, would have been information that would

23   have informed the cross-examination not just of Mr.

24   Urquizo, but each and every one of those Government

25   informants who talked about, after the Molina
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9119

160

```
1   homicide, who participated in those alleged

2   discussions about killing Mr. Sanchez.  And I think

3   as a trial lawyer -- I mean if I had known about

4   that statement and that evidence, that would have

5   been something that I would have brought out and

6   discussed in opening statement, and it would have

7   been a recurring theme through the cross-examination

8   of almost each and every one of those Government

9   informants.

10          THE COURT:  And why did you or the other

11  defendants choose not to recall any witnesses at

12  that point to go over that?

13          MS. JACKS:  I think I answered that

14  question in my reply brief in support of my Rule 29

15  and Rule 33 motion.  And I think what I said -- I

16  may not quote it directly, but that's like asking

17  Mike Smith to change horses in the last stretch of

18  the Kentucky Derby.  You can't do it.  I mean, it's

19  a six-week trial.  And to bring back witnesses who

20  have been cross-examined for hours at a time,

21  cross-examined at least in sort of -- as far as I'm

22  concerned, I tried to be organized, make points,

23  make points in a convincing fashion.  And to bring

24  back witnesses just to put them up on the witness

25  stand and then on the last day of trial conduct a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9120

 1   one-topic cross-examination is, I would say, per se

 2   ineffective.

 3          And the bottom line is what Brady says, is

 4   that the Government has an obligation to turn over

 5   favorable evidence to the defense in time for them

 6   to use it in their defense.

 7          And in my reply, I also quoted case law,

 8   which talks about the fact that if the defense could

 9   have been more effective or more persuasive, that's

10   sufficient.

11          And you know, in talking with Mr. Lowry

12   last night, he reminded me of a discussion that the

13   Court had with the Government, and this is in

14   pretrial proceedings probably in 2017 when we were

15   talking about their Brady obligation.  And what the

16   Court said was:  This was a review that should be

17   conducted by attorneys' eyes.  The attorneys need to

18   take responsibility.  The Government prosecutors

19   need to take responsibility for identifying and

20   disclosing Brady information.

21          And what we have here -- I mean, at best,

22   what we have here is a Government lawyer that

23   participated in the conversation but didn't disclose

24   the information to Mr. Sanchez for whatever reason,

25   which goes unexplained, because we're unable to call

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9121

```
 1    him as a witness.  And we have a brand-new FBI agent

 2    making judgments about what is or is not new

 3    information or impeaching or different --

 4    information regarding a different version of events

 5    by the same witness.

 6              I mean, I just think the Government

 7    utterly failed.  And in a different situation, maybe

 8    this failure wouldn't have the impact that it has on

 9    Mr. Sanchez.  But this is an epic failure, and it

10    affected his entire trial strategy and defense, and

11    I think -- I mean, it's just inexcusable.  The

12    Government knew on January 22 that Lupe Urquizo

13    complained that Daniel Sanchez did not participate

14    in the Molina homicide.  And what he goes on to say

15    is contradictory of even the Government's theory

16    that Sanchez is the one that's assigning the roles

17    and controlling everything, because the next part of

18    that statement is that Mr. Sanchez didn't cover the

19    cameras like he was supposed to.  Wait a minute.  I

20    thought he was supposed to be the boss.  He's giving

21    assignments, not taking them.  So I think it's

22    inexcusable.

23              THE COURT:  All right.

24              MS. JACKS:  The other -- I guess I'll go

25    on.  With respect to the Rule 29 and new trial
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9122

```
 1    motion, I think I've answered the Government's
 2    points and arguments.  I'm happy to discuss
 3    something specific.  But what I see when I look back
 4    and try to consider what happened is really just one
 5    failure after another compounding the prejudice to
 6    Mr. Sanchez at this trial.  And I think it's -- I
 7    don't know, I found it sort of amusing, not really
 8    but just sort of, but even in the Government's
 9    response to my motion, they get it twisted up as to
10    what evidence is admissible or inadmissible against
11    Mr. Sanchez.  How could the jury possibly have kept
12    track?
13            THE COURT:  Give me an example where you
14    think they get confused about it.
15            MS. JACKS:  It's in there.  Let me pull
16    it.  So basically, in one of the sections of my
17    motion for a new trial was that there were
18    statements of co-defendants that came in as
19    admissions against those co-defendants that the jury
20    wasn't supposed to consider against Mr. Sanchez.
21    And I argued -- and I think I even argued this
22    pretrial -- that those, quote, "inadmissible
23    statements" that aren't to be considered against
24    Mr. Sanchez are statements that corroborate or tend
25    to corroborate the Government's informants.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9123

```
 1              So the jury is being asked to weigh the

 2   credibility of informants, knowing that

 3   co-defendants have made statements that corroborate

 4   them, but ignoring that fact and testing the weight

 5   of the -- or the convincing force of the

 6   Government's case against Mr. Sanchez.  And I think

 7   it's an impossible task.

 8              And in the Government's response in

 9   arguing -- this is Document 2451 -- in arguing

10   against Mr. Sanchez' point, the Government cites the

11   statements of -- let's see.  Recites the statements

12   of Rudy Perez.  This is on page 5 of their motion.

13   The paragraph that starts, "The defendant himself

14   concedes a number of points that are sufficient to

15   overcome his Rule 29 motion."  And then they talk

16   about Mr. Perez' statements.

17              I mean, the point is that they're not

18   considered -- the statements can't be considered

19   against Mr. Sanchez at trial, they shouldn't be used

20   by the Government to argue against a motion for a

21   new trial at this point.  If they're not admissible

22   against him, they're not admissible.  Have I made

23   that point clear?

24              THE COURT:  Yeah, I think so.  I'll look

25   again at what the specific statements are.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9124

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 9125

```
 1   have a --

 2            MS. JACKS:  Well, there's a litany of the

 3   statements in my motion for a new trial.  It's in

 4   section 28A, and the statements that I cited start

 5   on page 32 and go through page 34.  And these are

 6   portions of the various recordings for the most

 7   part.

 8            THE COURT:  All right.  What else,

 9   Ms. Jacks?

10            MS. JACKS:  Unless the Court has something

11   specific, I feel pretty comfortable that I've put my

12   arguments in writing.

13            THE COURT:  Thank you, Ms. Jacks.

14            Any other defendant want to speak on

15   Ms. Jacks', Mr. Sanchez' two motions?

16            All right.  Mr. Castellano, are you going

17   to respond on these?

18            MR. CASTELLANO:  Ms. Jacks' primary

19   arguments with Mr. Urquizo really hinges on whether

20   or not information in Agent Sainato's notes is

21   exculpatory.  And it's not exculpatory.  As it was

22   argued even in Document 1850 at trial, which was the

23   Government's response to the motions to dismiss, the

24   Government made clear, even back then, that the

25   information had already been disclosed, and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9125

```
 1   March 2017 debrief notes of --

 2           THE COURT:  I guess her argument -- I'm

 3   sort of trying to characterize it.  You're saying

 4   it's not exculpatory because it shows that he's

 5   still involved in the murder.  I guess she's saying

 6   that she might have -- I don't quite know what the

 7   change in theory would have been, but instead of

 8   your argument being that he was the one calling the

 9   shots, your argument would have been -- or I guess

10   I'm not quite sure what the argument would be that

11   he was taking the orders from somebody else.

12           MR. CASTELLANO:  Ms. Jacks continues to

13   argue what the Government's theory was, but what our

14   theory is doesn't matter.  What matters is what the

15   evidence showed at trial, and that's what matters.

16   That's the decision on which the jury based its

17   verdict.

18           So theories aside, what matters is the

19   trial evidence.  And what also matters is that she

20   had the information prior to trial, because the

21   March 2017 notes indicate basically the same thing

22   that were in Agent Sainato's notes.  She just

23   quibbles with the fact that there's an "or" there,

24   he didn't participate in the murder or cover the

25   cameras like he was supposed to.  But at issue, he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    didn't cover the cameras like he was supposed to,

2    and he also didn't participate like he was supposed

3    to, and that's supported by other testimony.

4            So for example, in Document 1850, footnote

5    1, it says, "Another way to say that defendant

6    Sanchez should be hit because he didn't do his job

7    to cover the camera is to say that Rodriguez and

8    Urquizo agreed to put a hit on defendant Sanchez

9    because he did not participate in the Molina

10   homicide or even cover the cameras like he was

11   supposed to."

12           It's really a different way of saying the

13   same thing.  And I introduced the testimony from

14   Jerry Montoya this afternoon because there's also an

15   indication that Jerry Montoya had asked about the

16   cameras specifically, because he didn't want to be

17   captured committing the murder with Jerry Armenta.

18   And his response was from Mario Rodriguez, who said

19   Daniel Sanchez does not want to cover the cameras.

20           So there is other testimony in the case

21   consistent with the reason that Mr. Sanchez was

22   considered to have failed as a leader, and that's

23   because he can't cover the cameras; and clearly it

24   was even on Jerry Montoya's mind, and he wasn't even

25   the one calling any of the shots.  So it's really a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  different way of saying the same thing.  They had

 2  that information prior to trial.

 3          Also during trial, during Billy Cordova's

 4  testimony, we again tried to bring out this

 5  information that Mr. Sanchez was part of the

 6  conspiracy and that he failed on his part to collect

 7  the shank and to cover the cameras.  And so

 8  eventually Ms. Jacks actually objected to that

 9  evidence at trial, describing it as cumulative.

10  That is on Government's Exhibit 8, I believe.  I'll

11  show it to the Court here in a second.  This is a

12  discussion on the record in this exhibit, and

13  Ms. Jacks wants to know what the relevance is.  And

14  ultimately it's actually -- she's actually the one

15  who tries to keep out this additional evidence that

16  there was conspiracy to murder Mr. Sanchez for two

17  things:  Not taking the shank and not covering the

18  cameras.

19          So actually, she had chances at trial to

20  delve into this, but she actually thought it was

21  cumulative and didn't want to hear more evidence of

22  this murder conspiracy.  So it was actually her

23  objection at trial that kept out further evidence.

24  So I don't think that she would have changed

25  anything, because there was nothing to change.  We

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   169   Page: 9129

 1  were bringing it in and she was trying to keep it

 2  out.

 3          And prior to that I'll show the Court also

 4  on Exhibit 8 the discussion -- this is a part where

 5  Mr. Cordova is referring to the discussion --

 6          THE COURT:  Are you able to blow that up a

 7  little bit?

 8          MR. CASTELLANO:  Yes.  The discussions, it

 9  reads, "Did you have concerns about Daniel Sanchez

10  not having disposed of the shanks like he was

11  supposed to?"  That sounds like a familiar phrase in

12  this case.

13          And the response of Mr. Cordova was,

14  "Well, any good brother would."  "Any good brother

15  would," because when there is foul play within the

16  onda, you leave a brother flojas, that's part of the

17  rules, not supposed to leave him stranded during the

18  mission.

19          So this is information that came through a

20  number of trial witnesses, and it was the same

21  information each time.  There was failure in

22  leadership by Mr. Sanchez.  Once again, this was

23  information we tried to bring in at trial and

24  eventually Ms. Jacks -- her objection was that it

25  was cumulative.  Clearly at trial they did not want

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9129

1   to hear more of this information.  They wanted to

2   hear less.  So I'm not convinced that her

3   examination of each of these witnesses would have

4   been different, and if it would have been, how would

5   it have been different?  The only question is:

6   Isn't it true that Lupe Urquizo said, you tried to

7   kill him because he was involved with the murder?

8   And what are each of those witnesses going to say

9   about that?  They're going to say it's not true or

10  "I don't know what he said."

11          So what she would be asking is about a

12  hearsay statement by another cooperator in the case.

13  So that wouldn't have formed the testimony of the

14  other cooperators.  And the other cooperators had

15  already testified that there was a conspiracy to

16  murder Daniel Sanchez, so that information was

17  already out there and had been out there for some

18  time.

19          THE COURT:  Let me make sure I understand

20  the facts.  What occurred on the 28th was, they had

21  had the 302 for a while, but -- and how long had

22  they had that 302?

23          MR. CASTELLANO:  The 302 that Agent Stemo

24  prepared or --

25          THE COURT:  Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MR. CASTELLANO:  The one that she had was
 2  probably disclosed around the 29th or 30th.  I don't
 3  know.  That's why I attached the discovery letters.
 4           THE COURT:  Of February?
 5           MS. JACKS:  January.
 6           THE COURT:  January.
 7           MS. JACKS:  The first day of trial.
 8           THE COURT:  So then the notes of the other
 9  agent -- that's what was produced on the evening of
10  the 28th.
11           MR. CASTELLANO:  Yes.  The agent's notes
12  from the 22nd were produced toward the end of trial,
13  but the March 2017 report I think was disclosed two
14  weeks before trial with the other Jencks materials,
15  and that was the information which was basically
16  cumulative and already stated the same things as the
17  Sainato notes, which was he failed, he didn't cover
18  the cameras, he didn't take Jerry Armenta's shank,
19  and there was a conspiracy to murder him.  So that
20  was not new information.
21           MS. JACKS:  Your Honor, Mr. Castellano
22  keeps arguing this, but his own FBI agent this
23  morning conceded that there were things in the notes
24  that were not covered in the 302s.
25           THE COURT:  Well, I'll let you have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9132

172

```
1   rebuttal.  Let me let Mr. Castellano finish.

2           MR. CASTELLANO:  Well, she's referring to

3   other things, but what she's claiming as exculpatory

4   is one statement.  So once again, how would she

5   examine other witnesses based on a report by Lupe

6   Urquizo when there were other reports indicating the

7   same thing?

8           Now, going back to the other witnesses'

9   statements, unless the Court is willing to change

10  its ruling on the admission of the other statements,

11  there is not much more to say about that.  The Court

12  ruled that other statements were admissible at

13  trial, and it's not a confusion about the evidence

14  or the use of the evidence.  I mean, what Ms. Jacks

15  herself said in the pleading was that that

16  information tended to corroborate what other

17  witnesses said.  It doesn't mean that the jury had

18  to use the other corroborating information against

19  other defendants.  What it means is, it strengthened

20  the testimony of cooperators.  So if there is other

21  information in the case which causes us to believe

22  what somebody says, she herself admits that that was

23  information that corroborated those witnesses.  So

24  there is a difference there.

25          Other than that, I think the rest of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  pleadings speak for themselves, Your Honor.  If it's

 2  not clear from the attachments, one of the

 3  attachments has an exhibit which is a transcript

 4  that has boxes around it.  And if the Court hasn't

 5  figured that out, it's in color normally, but in

 6  that transcript there are boxes around certain

 7  sections of testimony, and inside those boxes, that

 8  is what was redacted.  And so her pleading indicated

 9  that the recordings brought in direct evidence of

10  Mr. Sanchez' guilt.  I attached one example of the

11  redactions we did at trial, and inside those boxes

12  are what were redacted.  So you'll see the

13  defendants' names inside those boxes, but that

14  information didn't go to the jury.

15          That's all I have, unless the Court has

16  questions.

17          THE COURT:  Well, it wasn't played to the

18  jury; correct?  When we redacted out?

19          MR. CASTELLANO:  They were played to the

20  jury.  We had to redact the audio and we redacted

21  the transcripts, both.  So that information did go

22  to the jury and if you look inside the boxes --

23          THE COURT:  But the stuff in the boxes

24  didn't go to the jury either orally or in writing;

25  correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 9133

```
 1              MR. CASTELLANO:  That's correct.  So if
 2    you heard the audio and you saw the transcript,
 3    wherever there is a box in the transcript, that was
 4    also cut from the audio.  So there was no direct
 5    evidence of anyone else's guilt, other than the
 6    declarants.
 7              THE COURT:  My memory on the transcripts,
 8    we didn't even show the boxes.  We just cut those
 9    out.  We collapsed them so there wasn't even an
10    indication to the jury anything had been taken out;
11    right?
12              MR. CASTELLANO:  That's correct.  The jury
13    had no idea that the transcripts were redacted, or
14    the recordings.  And some of those redactions even
15    started after trial.  So we did 11th-hour-plus
16    redactions at the defendants' request to keep that
17    information out.
18              I don't have anything else unless the
19    Court has questions, Your Honor.
20              THE COURT:  All right.  Thank you, Mr.
21    Castellano.
22              Any other defendant before I hear from
23    Ms. Jacks?
24              All right, Ms. Jacks.  Do you have further
25    arguments on your two motions?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9134

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 9135

```
 1              MS. JACKS:  I'm not going to belabor this.
 2   What was contained in those Sainato notes that were
 3   withheld by the Government until the second-to-last
 4   day of trial was an unequivocal statement by Urquizo
 5   that Daniel Sanchez did not participate in the
 6   Molina homicide.  I don't know how much more
 7   favorable or exculpatory a statement gets.  And
 8   Agent Stemo conceded, not -- she did finally concede
 9   this morning in her examination that that
10   information is not contained in any report that was
11   ever turned over to the defense prior.  And for
12   Mr. Castellano to sort of speculate how I might
13   cross-examine if I had known that information, I
14   mean, I think it's ridiculous.  Do you want to know
15   how I'm going to cross-examine?  Give me the
16   information and I'll do it.
17              THE COURT:  Why didn't you pull him up
18   just for that one statement?  Wouldn't that have
19   been worth it if it's so important now?
20              MS. JACKS:  Well, no, because my point is
21   that the way to use this information will be to
22   weave it into your defense throughout the trial,
23   that Mr. Sanchez did not participate.  He didn't
24   participate, he didn't do anything.  He didn't order
25   it.  He didn't assign roles.  He didn't get the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  walker from Rudy Perez.  He did not participate.

2  And you heard Agent Stemo say each one of those

3  things was participation in the homicide.

4          THE COURT:  Wasn't that your defense?

5  That's what I remember --

6          MS. JACKS:  Well, it was.

7          THE COURT:  -- throughout.  You just said

8  Mr. Sanchez didn't -- he wasn't involved in any of

9  that.

10         MS. JACKS:  It was my defense, but Brady

11 applies to information that would have made my

12 defense better, made my defense more convincing.

13 And Mr. Castellano is right.  I didn't delve into

14 the conversation that all his informants supposedly

15 had about killing Mr. Sanchez, because I didn't

16 know -- Mr. Castellano hadn't turned the information

17 over to me -- that they wanted to kill him because

18 Mr. Sanchez did not participate.

19         I mean, you're hiding the ball for almost

20 the whole trial and then complaining I wasn't

21 kicking it for the month prior.  It's ridiculous.

22 And I just -- I think it's a disingenuous way to try

23 to get away with what is an alarming violation of

24 Brady.  And it wouldn't be asking witnesses, other

25 witnesses, about hearsay statements of Urquizo.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9136

 1   Urquizo talked about a meeting where they all got

 2   together and suggested, "Let's kill Sanchez because

 3   he didn't help us with Molina."

 4          That's a big deal, especially when it's a

 5   conspiracy to commit murder and a murder.  And what

 6   the -- you know, what the statement means to me is

 7   he didn't participate in the murder and he didn't

 8   cover the cameras like he was supposed to.  In other

 9   words, Rodriguez told him, "Cover the cameras," and

10   he didn't do it.  That's evidence he didn't agree.

11   That's evidence he didn't agree with the other

12   people's decision to kill Javier Molina.  It's

13   exculpatory.  And it was withheld, and we still

14   don't know exactly why.  The Government seems to say

15   that it's not -- I mean, they're trying to argue

16   it's not even favorable.  I mean -- I don't know.

17   It's alarming.

18          And I think Mr. Sanchez, because the case

19   against him was based solely on the testimony of

20   informants who are expecting favorable treatment

21   from this Court by fingering Mr. Sanchez, it really

22   hurt his ability to present his defense.  And you

23   want to add onto that the pretrial publicity, the

24   secret emails between the marshals and the Court

25   that was reported in the paper, all the inadmissible

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9137

```
 1   evidence that came in that the jury is not supposed
 2   to consider in evaluating the Government's case
 3   against Mr. Sanchez.  You know, you add all that up,
 4   and he never had a chance at a fair trial.
 5           THE COURT:  Well, I think Mr. Sanchez got
 6   a fair trial.  I'm going to deny the motions.  I'll
 7   give you an opinion on it.
 8           All right.  Let's move to the next motion.
 9   Let's go to Mr. Herrera's motion for a new trial.
10           MS. BHALLA:  Thank you, Your Honor.
11           THE COURT:  Ms. Bhalla.
12           MS. BHALLA:  I'm going to get a little
13   organized up here, Your Honor, if you could give me
14   just a second.
15           Your Honor, I did spend some time speaking
16   to the Government about what evidence we wanted to
17   present today, and I think that the Government has
18   agreed to allow me to tender some exhibits to the
19   Court for the Court's consideration, and
20   additionally one proffer, which I'll get to in a
21   minute, Your Honor.  But for now, we're going to go
22   ahead and move into admission Defendant's Exhibits A
23   through G.  Some of these were admitted -- or not
24   admitted; some of these were attached to our motion,
25   Your Honor, and there is one additional exhibit that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9138

```
 1   was not attached to our motion, which is G.

 2             For purposes of trying to keep the

 3   original filing not too long, I didn't do complete

 4   transcripts in regard to Exhibit F and with regard

 5   to Exhibit A, but for purposes of the hearing I

 6   wanted the Court to have the full record, so I have

 7   those ready to tender to the Court.

 8             THE COURT:  All right.  Do you have a

 9   number on this if we can mark these?

10             MS. BHALLA:  I did, Your Honor.  I marked

11   them as Defendant's Exhibit A to Document Number

12   2413 --

13             THE COURT:  Sounds good.

14             MS. BHALLA:  -- which is how I believe --

15             THE COURT:  Any objection to Exhibit A

16   coming in, Mr. Castellano?

17             MR. CASTELLANO:  I don't think so, Your

18   Honor.  If I could just look at the exhibits to see

19   what they are.  I think we have an agreement.

20             MS. BHALLA:  That's correct, Your Honor.

21   These are ones that we had talked about before.

22   Defendant's Exhibit A, which is a letter from

23   Timothy Martinez's wife to Timothy Martinez, which

24   was located in Mario Rodriguez' property.

25             MR. CASTELLANO:  No objection, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9139

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9140

```
 1              THE COURT:  All right.  Any other

 2   defendant have any objection?  All right, so

 3   Herrera's Exhibit A will be admitted for purposes of

 4   2413 and 2481.

 5              (Defendant Herrera Exhibit A admitted.)

 6              MS. BHALLA:  Thank you, Your Honor.  I'll

 7   just go through the exhibits, if that's all right

 8   with the Court.  Exhibit B is a letter from Mario

 9   Rodriguez to the court clerk that was also found in

10   Mario Rodriguez' property, Your Honor.

11              THE COURT:  Any objection?

12              MR. CASTELLANO:  No objection.

13              THE COURT:  Any objection from any other

14   defendant?

15              Not hearing any, you're moving all these,

16   Ms. Bhalla?

17              MS. BHALLA:  Yes.

18              THE COURT:  So Herrera Exhibit B for

19   purposes of this hearing will be admitted into

20   evidence.

21              (Defendant Herrera Exhibit B admitted.)

22              MS. BHALLA:  Exhibit C is a note from --

23   one of these notes that was produced late regarding

24   the investigation into the Javier Molina murder, and

25   it's a reflection of statements made -- I have to
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9140

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   181   Page: 9141

```
 1    look at my notes, Your Honor.  We can get to this a
 2    little bit, Your Honor.  It's an agent's notes about
 3    their investigation that was disclosed later in
 4    trial.  It's attached as Exhibit 3 to our document
 5    which was filed on October 15, Your Honor.
 6              THE COURT:  All right.  This is Exhibit C.
 7    Any objection, Mr. Castellano?
 8              MR. CASTELLANO:  No, Your Honor.
 9              THE COURT:  Any other defendant?
10              Not hearing any objection, Herrera Exhibit
11    C will be admitted into evidence.
12              (Defendant Herrera Exhibit C admitted.)
13              MS. BHALLA:  Thank you, Your Honor.
14              Exhibit D will be a questionnaire that was
15    submitted to Mario Rodriguez.
16              THE COURT:  Any objection to that?  This
17    is D?
18              MS. BHALLA:  Correct.
19              THE COURT:  Any objection, Mr. Castellano?
20              MR. CASTELLANO:  No, Your Honor.
21              THE COURT:  Any other objection?
22              Not hearing any other objection, Herrera
23    Exhibit D will be admitted to this hearing.
24              (Defendant Herrera Exhibit D admitted.)
25              MS. BHALLA:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9141

```
 1              Exhibit E, Your Honor, is a 302 regarding
 2  an investigation that took place after this trial --
 3  or it might be during the midst of this trial; it's
 4  unclear; we'll get to that -- that concerns Billy
 5  Cordova's testimony in trial.
 6              THE COURT:  All right.  Any objection to
 7  Exhibit E, Mr. Castellano?
 8              MR. CASTELLANO:  No objection, Your Honor.
 9              THE COURT:  Any other defendant have any
10  objection?
11              Not hearing any, Herrera Exhibit E will be
12  admitted for purposes of the hearing on 2413 and
13  2431.
14              (Defendant Herrera Exhibit E admitted.)
15              MS. BHALLA:  Thank you, Your Honor.
16              Exhibit F is a transcript of a phone call
17  between Special Agent Acee and Joe Martinez that
18  occurred in the summer of 2018.  We'll be moving the
19  admission of that transcript.
20              THE COURT:  Any objection, Mr. Castellano?
21              MR. CASTELLANO:  If I can clarify, it's
22  the entire transcript?
23              MS. BHALLA:  It is.
24              MR. CASTELLANO:  Just for the record, one
25  of the attachments to the pleading was not the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  entire transcript, and it was also in mine, so I
 2  have no objection to that.
 3          THE COURT:  All right.  Any objection from
 4  any other defendant?
 5          Not hearing or seeing any objection,
 6  Herrera Exhibit F will be admitted for the purpose
 7  of the hearing on 2413 and 2431.
 8          (Defendant Herrera Exhibit F admitted.)
 9          MS. BHALLA:  Thank you, Your Honor.
10          The next exhibit we're going to admit was
11  not attached to the motion originally, Your Honor.
12  It's something that we just received.  It's
13  Defendant's Exhibit G.  It's a 302 regarding a
14  previous conversation with Joe Martinez by the FBI.
15          THE COURT:  Any objection to Exhibit G,
16  Mr. Castellano?
17          MR. CASTELLANO:  No, Your Honor.
18          THE COURT:  Any other defendant have any
19  objection?
20          Herrera Exhibit G will be admitted for
21  purposes of the 2431 and 2413 hearing on those
22  motions.
23          (Defendant Herrera Exhibit G admitted.)
24          MS. BHALLA:  Thank you, Your Honor.  May I
25  approach?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9143

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9144

```
 1                THE COURT:  You may.  Before you get
 2   those, let me get a stack of what we had on the last
 3   one.  Let's keep those separate.  So do you have
 4   yours up here, Ms. Jacks?
 5                MS. JACKS:  I did.  I stacked them up.
 6                THE CLERK:  They're right here.
 7                THE COURT:  Do we have the ones also for
 8   the first hearing?  There was a handful of those.
 9   Give me those, and let me put those in the folder.
10   Is that for the first two motions?
11                THE CLERK:  Yes.
12                THE COURT:  Who had FV and FL?  Were those
13   yours, Ms. Jacks?
14                MS. JACKS:  Excuse me, Your Honor?
15                THE COURT:  We're trying to -- take a look
16   at these so I can put these in the correct folders.
17   Take a look at these.  Are those all related to your
18   motions?
19                Mr. Castellano, if you'd take a look at
20   it.  Or are some of those related to Mr. Billy
21   Garcia's?
22                THE CLERK:  Here are the ones just now.
23   These are related to Mr. Herrera's motion.
24                THE COURT:  Those are all yours?
25                MR. CASTELLANO:  Yes, Your Honor.  For the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9144

```
 1   record, I think 1 through 15 have Government's
 2   Exhibit and the number at the bottom of the
 3   documents.
 4            MS. BHALLA:  There are some here.
 5            MR. CASTELLANO:  So Government's Exhibit
 6   13 also has a sticker which says Defendant's Trial
 7   Exhibit FV.
 8            THE COURT:  But those all relate to Mr.
 9   Sanchez' motions?
10            MR. CASTELLANO:  Yes, sir.
11            THE CLERK:  So these are all the ones
12   related to Mr. Sanchez' motion.
13            THE COURT:  And that other stack was, too?
14            THE CLERK:  No.  The stack I just gave you
15   with the blue labels, that's related to Mr.
16   Herrera's motion.
17            THE COURT:  But the ones earlier were
18   related to J, and I've got yours now, Mr. Lucero,
19   Ms. Bhalla?
20            MS. BHALLA:  I believe so, Your Honor.
21            THE COURT:  All right.  Do you have any
22   other witnesses or evidence you wanted to present on
23   your motion?
24            MS. BHALLA:  The only other evidence we're
25   going to present, Your Honor, is in the form of a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   proffer.  If I can sort of briefly explain to the
 2   Court why that might be necessary.  I don't believe
 3   there is going to be an objection by the Government
 4   to that proffer.
 5            After trial, Agent Acee communicated via
 6   telephone with Joe Martinez, also known as Cheech.
 7   David Calbert testified at trial that Cheech is the
 8   one who passed him the paperwork authorizing the hit
 9   on Javier Molina.  In that transcript, which the
10   Court will review -- oh, I don't know.  Do you have
11   a copy, Your Honor, of Defendant's Exhibit F up
12   there?  I just want to make sure, because I think I
13   have two of them with stickers.  I just want to make
14   sure you have yours.
15            THE COURT:  I do have an F.
16            MS. BHALLA:  Thank you, Your Honor.
17            THE COURT:  That's the transcript of --
18            MS. BHALLA:  Thank you, Your Honor.  There
19   is only one transcript, so that should be it.
20            In any event, after receiving this
21   transcript and reviewing, it became apparent there
22   was information in there that the defense team
23   wanted to follow up on.  We attempted lots of
24   different ways to get into contact with Mr.
25   Martinez.  We were able to finally serve him with a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058      Document: 010110415675      Date Filed: 09/29/2020      Page: 9147

187

1   subpoena in Deming, New Mexico, when he was home for

2   Thanksgiving.  We are fairly confident that he

3   received that subpoena, because after receiving it,

4   he called our office.  There is no other way he

5   would have known that we were trying to communicate

6   with him, other than receiving that subpoena.

7         I was able to speak to him, and the

8   information that he relayed to me was that -- the

9   important part of that information is -- there's

10  three actual things, I think.  The first important

11  thing was:  There was no way he was going to show up

12  here today, and denied having received the subpoena

13  from our office, despite the fact that there was no

14  way he could have ever gotten in touch with us other

15  than receiving that subpoena.

16        And two, that he did, in fact, speak with

17  Agent Acee in December of 2016 about two issues.

18  One of them was the Molina homicide paperwork, and

19  one of them was about an investigation involving

20  him, where he was alleged to have been involved in

21  the murder.

22        Essentially what was relayed to me by Mr.

23  Martinez was that he had already explained to the

24  FBI how the story of the paperwork coming down was

25  impossible, that it had never happened the way that

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9147



Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9148

188

1   they said it happened, and that it could not, in

2   fact, have happened the way they said it happened.

3   And that conversation is fairly relayed in the

4   transcript before Your Honor.

5           The other issue that Mr. Martinez brought

6   to our attention was that he believed Billy Cordova

7   had framed him for a murder he did not commit.  Some

8   of that information appears to be involved in

9   Defendant's Exhibit G, but it's still something that

10  is a little bit unclear, and something that would

11  have been helpful to have had, obviously, before

12  trial, and I can explain why that information would

13  have been helpful later.  But that's my proffer to

14  the Court regarding Mr. Martinez' statements to our

15  office, Your Honor.

16          THE COURT:  All right.  Any other witness

17  or evidence in support of your motion?

18          MS. BHALLA:  No, Your Honor.

19          THE COURT:  Ms. Jacks, you joined this

20  motion.  Anything you have to add to the motion?

21          MS. JACKS:  No, Your Honor.

22          THE COURT:  All right.  How about you,

23  Mr. Castellano?  Do you have any witnesses or

24  evidence you want to present on the motion?

25          MR. CASTELLANO:  I will have some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9148

1  exhibits, Your Honor.

2          THE COURT:  Why don't you do those now.

3  We'll see then if that causes Ms. Bhalla to have any

4  other witnesses or evidence.

5          MR. CASTELLANO:  And while I'm doing that,

6  I don't know -- Ms. Bhalla asked me if I'd be

7  willing to accept a proffer.  I'm not sure -- I

8  haven't made a final decision what to think about

9  that proffer, because Mr. Martinez, also known as

10  Cheech, is actually implicated in two of the murders

11  charged in this chase.  He was implicated in the

12  Javier Molina murder as having sent down the

13  paperwork.  He was also implicated in Trial 2 in the

14  Freddie Sanchez murder as having sent down the

15  paperwork, I believe through Kyle Dwyer and then

16  eventually to Ben Clark.

17          So I mean, if the Court wants to accept a

18  proffer, maybe that's fine.  But the question is:

19  What weight do we give to the proffer to Mr.

20  Martinez, who was not responding to a subpoena and

21  is implicated in two murders?  So the transcript --

22          THE COURT:  So all that that was proffered

23  would come through Mr. Martinez.

24          MR. CASTELLANO:  Yes, who has made himself

25  unavailable, and I understand Ms. Bhalla may not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   want to take time, understandably, to have him
 2   arrested and brought to court, because I think if he
 3   hits the stand, he's going to say nothing, because
 4   he is facing exposure and he would need an attorney
 5   before he hit the stand, based on him being
 6   implicated in two separate murders in two separate
 7   trials.
 8            Once the Court looks at the transcript of
 9   the recording by Agent Acee, it says a number of
10   interesting things which tend to corroborate what
11   other witnesses said at trial, and that's that he
12   was aware of the paperwork, he had seen the
13   paperwork, he was around at the time that the
14   paperwork was there, along with some of the other
15   participants.  And so he admits pretty much
16   everything with the exception of his participation
17   in the Molina murder.
18            So it's kind of an interesting set of
19   facts.  I guess a denial by him maybe means
20   something, but I think it doesn't, based on the fact
21   that he's facing exposure for two different murders.
22   So if the Court is willing to accept that proffer, I
23   think it's important to put it in proper context.
24   One, he hasn't responded to the subpoena he appears
25   to have been properly served; and two, he's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9150

1   implicated.  So therefore, it's not surprising he

2   would give a self-serving denial to Agent Acee after

3   otherwise corroborating other evidence in the case,

4   including having personally read the paperwork

5   related to Javier Molina.

6           THE COURT:  Well, I'm not sure, Ms.

7   Bhalla, what I can really do with the proffer.  The

8   Government is saying, yeah, we accept the proffer

9   and that could be the basis of the motion, and I

10  could, but if they're not willing to do it, then

11  without his testimony, I'm not sure that I can do

12  anything.  And I think we're all sort of probably

13  predicting that we're never going to get his

14  testimony.

15          MS. BHALLA:  I think that's fair to say.

16  Especially, Your Honor, since we know that he's not

17  in state, which makes the matter more complicated.

18  And I will say this:  In response to our discovery

19  requests, the Government did provide an additional

20  302, heavily redacted, which is Defendant's Exhibit

21  G.  Providing this document makes the proffer less

22  necessary than it was last week.  I think that we

23  can proceed without it.  But if they're willing to

24  stipulate it, it might make a more complete record.

25          THE COURT:  All right.  It doesn't look

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9151

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9152

192

```
 1   like they're willing to.  So unless they are,
 2   probably we're going to have to proceed without it.
 3   I might drop a footnote.  I guess my initial
 4   impression is, it's not going to make any
 5   difference.  But I might drop a footnote and
 6   consider it, saying even if I considered it, this is
 7   how I'd come out.
 8           All right.  What else do you have as far
 9   as witness or evidence, Mr. Castellano?
10           MR. CASTELLANO:  I would once again ask
11   the Court to admit as exhibits the attachments to
12   this response.  So this response is the Government's
13   Document 2454.  Attachment 1 is, once again, the
14   discovery letters which the Court has heard about
15   from Daniel Sanchez' motion.
16           THE COURT:  Are we going to give these
17   separate exhibit numbers or just --
18           MR. CASTELLANO:  I think we can start
19   over, Your Honor.  And they are numbered.  For
20   example, the first one is Document 2454-1, and I
21   would treat that as Government's Exhibit 1 for
22   purposes of this motion.
23           THE COURT:  Any objection, Ms. Bhalla?
24           MS. BHALLA:  No, Your Honor.
25           THE COURT:  Ms. Jacks, any objection?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9152

```
 1              MS. JACKS:  No, Your Honor.

 2              THE COURT:  I don't know if any other

 3    defendant joined.  But not hearing any objection,

 4    Government's Exhibit 1 to the hearing on 2413 and

 5    2431 will be admitted into evidence.

 6              (Government Exhibit 1 admitted.)

 7              MR. LOWRY:  Your Honor, just for the

 8    record, Defendant Baca did join.

 9              THE COURT:  You did.  All right.  I'll ask

10    all defendants, then, and I'll sort out the joinder

11    when I --

12              MR. CASTELLANO:  Government's Exhibit 2 is

13    Document 2454-2.  Also at the bottom of that

14    document it says Government's Exhibit 2, and it's

15    Defendants' Exhibit FL from trial.

16              THE COURT:  All right.  Any objection?

17              MS. BHALLA:  No, Your Honor.  Thank you.

18              THE COURT:  Any objection to that by any

19    other defendants?

20              MS. JACKS:  No.

21              THE COURT:  Not hearing or seeing any,

22    Government's Exhibit 2 will be admitted for purposes

23    of the hearing on 2413 and 2431.

24              (Government Exhibit 2 admitted.)

25              MR. CASTELLANO:  Government's Exhibit 3 is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   marked Document 2454-3.  At the bottom it says

 2   Government's Exhibit 3, and in the lower right-hand

 3   corner is Defendants' Trial Exhibit FV.

 4           MS. BHALLA:  No objection, Your Honor.

 5           THE COURT:  Any other defendant have any

 6   objection?

 7           Not seeing or hearing any, Government's

 8   Exhibit 3 will be admitted for purposes of 2413 and

 9   2431.

10           (Government Exhibit 3 admitted.)

11           MR. CASTELLANO:  Exhibit 4 is Document

12   2454-4.  At the bottom it's Government's Exhibit 4,

13   and this is duplicative of the defense exhibit.

14   This is the entire transcript of the Bryan Acee/Joe

15   Martinez conversation.

16           MS. BHALLA:  No objection.

17           THE COURT:  Any other defendant have any

18   objection?

19           Not seeing or hearing any objection,

20   Government's Exhibit 4 for purpose of the hearing on

21   2413 and 2431 will be admitted into evidence.

22           (Government Exhibit 4 admitted.)

23           MR. CASTELLANO:  I think that's it for

24   now.  I may have some additional transcripts

25   introduced.  But I think for now that is it.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Ms. Bevel, if
 2   you'll get those exhibits from Mr. Castellano.
 3              Ms. Bhalla, do you have further rebuttal
 4   witnesses or evidence you want to present?
 5              MS. BHALLA:  No, Your Honor.
 6              THE COURT:  Any other defendants have any
 7   other evidence or testimony they want to present?
 8              All right, Ms. Bhalla, if you wish to
 9   argue in support of your motion, you may do so at
10   this time.
11              MS. BHALLA:  I will, Your Honor.  Thank
12   you.
13              I don't intend to address everything that
14   was briefed, Your Honor, but I do want to start with
15   what I think are some of the more important points.
16   And one of those -- I kind of want to start a little
17   bit with the case law, Your Honor, and one of the
18   questions that I anticipated today that you asked
19   Ms. Jacks is how exactly would you have changed your
20   trial strategy, had you had some of this information
21   before trial?
22              And I want to just read a little bit from
23   United States v. Burke.  It's a Tenth Circuit 2009
24   case cited in our motion.  The citation is 571 F.3d
25   1048.  "The belated disclosure of Brady material
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   tends to throw existing strategies and trial

 2   presentation into disarray.  It becomes difficult to

 3   assimilate new information, however favorable, when

 4   a trial already has been prepared on the basis of

 5   the best opportunities and choices available."

 6          The Court went on, "It is not hard to

 7   imagine the many circumstances in which the belated

 8   revelation of Brady material might meaningfully

 9   alter a defendant's choices before and during trial:

10   How to apportion time and resources to various

11   theories when investigating the case, whether the

12   defendant should testify, whether to focus the

13   jury's attention on this or that defense, and so on.

14   To force the defendant to bear these costs without

15   recourse would offend the notion of fair trial that

16   underlies the Brady principle."

17          That quotation is on page 1054, just to

18   get that out of the way, Your Honor.

19          In regard to the last two exhibits we

20   tendered today, Exhibits F and G, I want to draw the

21   Court's attention to a couple of things in

22   Defendant's Exhibit F.  Agent Acee decided post

23   trial the date that this recording was made was on

24   April 4, 2018.  Agent Acee decided to call Joe

25   Martinez, also known as Cheech, who was supposed to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9157

```
 1   have passed the paperwork to David Calbert.  I don't

 2   know if the Court remembers, but David Calbert

 3   testified at trial that Cheech came out with a

 4   three-man escort and passed the paperwork through a

 5   fence while the guards were watching.  And --

 6              THE COURT:  And we're five days before

 7   trial; right?

 8              MS. BHALLA:  This interview took place

 9   after trial.  This is new evidence.  This is

10   evidence that no one had until after the trial.  The

11   recording did not take place until after trial had

12   concluded, Your Honor.  And I think it's important

13   to note for two reasons.  One, Agent Acee clearly is

14   still conducting an investigation about the

15   paperwork and wondering, himself, what happened,

16   which makes me wonder whether or not the agents

17   believed the testimony that was produced.

18              THE COURT:  Well, even if they didn't

19   believe it, what does that do?  I mean, if it's done

20   between the two trials, what do we do with it?  I

21   mean, it's new evidence, isn't it?

22              MS. BHALLA:  It is, but it's new

23   evidence --

24              THE COURT:  It's not really Brady

25   information.  It was turned over, but --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9157

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9158

1          MS. BHALLA:  It's new evidence that tends

2     to shed light on the testimony that occurred at

3     trial.

4          THE COURT:  So is it really a Brady

5     motion?

6          MS. BHALLA:  This is not part of the Brady

7     allegation, Your Honor.  There are Brady allegations

8     I kind of wanted to address in terms of -- the

9     reason that I read to you the quotation about late

10    Brady disclosures was a little bit in response to a

11    question the Court posed in the previous motion that

12    I was sort of planning on having to address today

13    with some of the other evidence.

14         We are arguing Brady violations, Your

15    Honor, but I wanted to deal with this new evidence

16    issue first, and then go into the Brady violation.

17    But I didn't want to neglect to give the Court that

18    citation, because it struck me when the Court asked

19    that question, and I didn't want to forget it, Your

20    Honor.  So it's a little bit out of turn, if that's

21    all right.

22         THE COURT:  Certainly.

23         MS. BHALLA:  Okay.  What's interesting is

24    that if you look at pages 3 and 4 of the transcript,

25    Your Honor, Agent Acee kind of brings up the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9158

```
 1  paperwork and what happened with David Calbert and
 2  how he had cooperated.  And he says to -- Agent Acee
 3  says to him, "I'm being told it sounds like you
 4  might have passed a couple of pieces over to
 5  Spider."  Agent Acee says, "We've talked about it
 6  before," meaning the paperwork, "and I don't know if
 7  you even knew what the papers were or if you were
 8  threatened to do it or what the circumstances were.
 9  But let me say this, Joe," and then they go on to
10  talk about whether or not he needs an attorney and a
11  Kastigar letter to talk about the paperwork and to
12  talk about the issues.
13          And what struck me about this was, one,
14  that clearly Joe Martinez had given a different
15  variation of what happened with this paperwork
16  before; right?  And I don't remember reading a 302
17  about that or seeing a 302 about it, or anything of
18  that nature.  And so I contacted the Government, and
19  I actually contacted Agent Acee, too, and I asked
20  them:  Where are the previous conversations
21  mentioned in this transcript with Joe Martinez about
22  the paperwork in this case?  If there were previous
23  conversations, we need to know about them.
24          And we weren't able to find it, and
25  there's a reason we weren't able to find it, because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9159

```
 1   it was heavily redacted, and it was produced right
 2   before trial, and that's Defendant's Exhibit G.  And
 3   what I noticed is that Joe Martinez' name has been
 4   fully redacted from this document.  So there was no
 5   way that the defense teams could have known that
 6   Agent Acee had spoken to Joe Martinez about the
 7   paperwork because his name is not in the 302.
 8           What was also interesting is that -- and
 9   I'll admit that I got this today, so I haven't spent
10   the time reading it that I would like to have.  But
11   nowhere in here is there a discussion about the
12   paperwork in the Molina murder.  There is a
13   discussion about other paperwork and about some
14   other parts of their investigation.  And there is
15   some history.  But there is nothing in here about a
16   completely different story about how the paperwork
17   was passed.
18           And I think, Your Honor, not having this
19   information, the fact that this 302 is incomplete,
20   the fact that this 302 doesn't encompass that
21   information is a problem.
22           If you continue on in Defendant's Exhibit
23   F and you get towards the end of the transcript,
24   Your Honor, if you go to pages 13 and 14, here is
25   what Agent Acee learns from Mr. Martinez, according
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE



DNM 9160

1  to them, from the second time.  And I don't know why

2  Spider is insinuating or saying, "I handed him" --

3  excuse my language, but I'm going to read from

4  this -- "he's fucking stupid.  I didn't do that.  I

5  didn't.  I didn't.  I never had that kind of

6  opportunity to do.  Because when they take you out

7  of the cell, you don't come out with no paperwork.

8  They strip you.  You go to the cage and they strip

9  you.  There is no way in hell that I could have

10  passed him paperwork."

11          And it goes on.  And when you get to page

12  15, he says, "They're out there.  They're on a trip.

13  If I'm going to go take this fucker down, I'm going

14  to take this fucker down, and they're grasping for

15  straws."

16          And basically, what he's saying to Agent

17  Acee there is that they're willing to say whatever

18  they want about whoever they want to get themselves

19  out of trouble and they're going to take down people

20  that they don't like with them.

21          And when you compare this, Your Honor --

22  when you compare Defendant's Exhibit F to

23  Defendant's Exhibit G, you'll see that none of this

24  information -- which apparently is a second

25  conversation they're having about this -- is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9161

```
 1   included in this 302.  And I think that had that
 2   information been included, it would have been -- it
 3   is material and I think it's exculpatory, because it
 4   shows that the Government's theory of how the
 5   paperwork was passed couldn't have happened.
 6            And what I anticipate the Court to hear
 7   next is that Mr. Lowry is going to introduce some
 8   exhibits showing location histories, Your Honor.
 9   Joe Martinez was never in the facility at the time
10   to provide that paperwork to David Calbert when
11   David Calbert says that paperwork was passed.  So
12   you're going to hear additional evidence from Mr.
13   Lowry that further supports and corroborates the
14   assertions that Joe Martinez is making in this
15   interview post trial with Agent Acee.  And
16   apparently, this conversation happened in December
17   of 2016, but the 302 regarding that conversation was
18   so heavily redacted that no one could read it and
19   know who they were interviewing.  And the facts
20   included in the second conversation, which clearly
21   states by Agent Acee they've had this conversation
22   before, is not included in this 302.  That would
23   have led to us trying to find, interview, and
24   subpoena Mr. Martinez for trial, and it probably
25   would have led to a further investigation about how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   it would not have been possible for the paperwork to
 2   have been passed by Joe Martinez to David Calbert,
 3   and it certainly would have been extremely useful
 4   for the impeachment of David Calbert in his
 5   testimony at trial.
 6            Those were the first two major exhibits
 7   that I wanted to talk about, Your Honor, and then
 8   I'll move on, unless the Court has any questions
 9   about those exhibits.
10            THE COURT:  Not at the present time.
11            MS. BHALLA:  Thank you, Your Honor.  The
12   first exhibit that I wanted to talk about, Your
13   Honor, is Exhibit A.  This is a letter from
14   Mrs. Martinez to Mr. Martinez found in Mario
15   Rodriguez's property.  And it's true that there was
16   some evidence that Jerry Montoya and some others
17   were -- and one other; I can't remember who it is.
18            THE COURT:  Can you think of -- I was
19   thinking last night and this morning about that
20   letter.  Can you think of any way that letter would
21   have been itself admissible?
22            MS. BHALLA:  Which one?
23            THE COURT:  The letter from Ms. Martinez
24   to Mr. Martinez.
25            MS. BHALLA:  Yes, I would have called
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9163

```
 1   Mrs. Martinez to testify about it, and we could have
 2   asked Mr. Martinez about it, had it been produced
 3   prior to trial.
 4            THE COURT:  Okay.  But would you agree
 5   with me that the letter itself probably would never
 6   get into evidence?  I couldn't think of a way that
 7   it would come in itself.
 8            MS. BHALLA:  I do.  I think it goes to
 9   common plan or scheme, to state of mind, to motive
10   and intent.
11            THE COURT:  But that's her letter.
12            MS. BHALLA:  Yeah.  I think that we would
13   have -- this is how I think it would have gone
14   differently.  Had we had -- this letter was
15   produced, Your Honor, at the end of trial,
16   February --
17            THE COURT:  I'm not yet asking about what
18   you would have done differently.  I'm just trying to
19   think through that letter itself.  I couldn't think
20   of a way --
21            MS. BHALLA:  You mean to authenticate it?
22            THE COURT:  Not to authenticate it, but
23   that it would come in for the truth of the matters
24   that are being asserted, and how it would come in
25   over any sort of hearsay objection.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. BHALLA:  Well, it certainly could come
 2   in as impeachment.
 3            THE COURT:  Well, that's true.  But then
 4   that limits considerably the value of this letter if
 5   it's only going to be used for impeachment of who.
 6   She's going to have to be called at trial, and now
 7   you're talking about it being -- impeaching a
 8   spouse.  We're getting kind of removed from the core
 9   issues here.
10            MS. BHALLA:  I don't know that we are,
11   Your Honor.  I mean, I understand -- I do take the
12   Court's point, but what you've got is, you've got an
13   outside person helping facilitate the exchange of
14   fraudulent information to concoct a broad scheme
15   lie, so that other defendants could avoid
16   consequences, some of whom were the Government's key
17   witnesses.
18            THE COURT:  But wasn't it clear that at
19   the first trial -- wasn't it pretty clear that
20   people were concocting stories in that state trial?
21   That came across, I thought, pretty loud and clear
22   that if they had had that trial, people were not
23   going to be telling the truth in it.
24            MS. BHALLA:  I think that that's true for
25   Jerry Armenta and Jerry Montoya.  That evidence was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   not presented as to Timothy Martinez and Mario
 2   Rodriguez.  And I think what happens, Your Honor, is
 3   that it takes a lie between two people and broadens
 4   it to a much larger conspiracy.  And I think that
 5   that could have been very powerful evidence for the
 6   jury to consider.  It wasn't just two guys in the
 7   same facility communicating with each other's
 8   lawyers.  You've got them involving third parties
 9   from outside the prison system telling them, "Hey,
10   guys, your stories aren't matching up."  And it
11   involves Mario Rodriguez and it involves Timothy
12   Martinez, who had not been implicated in those other
13   letters.  And I think it becomes a much larger, more
14   dominant problem than it did by limiting it to just
15   Jerry Armenta and Jerry Montoya.  And I would also
16   argue if the Court is going towards any kind of
17   spousal privilege --
18            THE COURT:  I wasn't going so much to
19   that.  It was just that we're beginning to move kind
20   of two and three people away from the core issues
21   here of whether there were SNM folks in that first
22   trial that were trying to fool the state people and
23   potentially a state jury.
24            MS. BHALLA:  And I think there was
25   evidence presented that Jerry Armenta and Jerry
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Armenta did that.  That evidence was not presented
 2    as it went to Mario Rodriguez, Timothy Martinez, and
 3    his wife.  And I think it just creates a much more
 4    pervasive problem and picture for the jury of the
 5    scope of how these people are really able to
 6    communicate and how they're able to work together.
 7            THE COURT:  So if you had had it, what
 8    would you tell that jury that you didn't tell the
 9    jury about that state case?
10            MS. BHALLA:  I would have definitely spent
11    a lot more time weaving that into every
12    cross-examination and into our opening statement.
13    And I didn't get the opportunity to do that.  I also
14    would have taken the time to attempt to interview
15    Mrs. Martinez and to find out if we could get any
16    other communications between her and the other
17    defendants by way of IPRAs.  There are other ways we
18    could have investigated these issues that we didn't
19    get to investigate, Your Honor.
20            THE COURT:  This is the question I asked
21    of Ms. Jacks, as well, about her, that late
22    disclosure in the first trial.  Why didn't you --
23    once you got this box of documents about Mr.
24    Rodriguez, why didn't you then do what you needed to
25    do here?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9167

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9168

208

```
 1           MS. BHALLA:  I like what Ms. Jacks said
 2   about it, Your Honor, and I tried to articulate that
 3   in our reply.  It's impossible, in my mind, to sit
 4   down and assimilate thousands of pages of
 5   information given to you during trial and figure out
 6   how to weave that back into your trial strategy at
 7   the last minute by recalling Government witnesses
 8   when that information was withheld.  And that's why
 9   I cited that Burke case, Your Honor.  And I'll read
10   it again.  "It becomes difficult to assimilate new
11   information when a trial has already been prepared
12   on the basis of the best opportunities and choices
13   available."
14           It was so chaotic, Your Honor, to try and
15   process the amounts of discovery.  You know, I think
16   it's a mistake to isolate the disclosures into
17   discrete groups.  The fact is that the total number
18   of discovery that we were provided with pretrial was
19   6,282 pages, and most of those productions were in
20   multiple thousands of pages.  It's not like we got
21   ten pages a day and we were told to review it.
22   You're trying to assimilate this new information,
23   reevaluate how to handle witnesses that have already
24   been called after you've been in litigation for five
25   weeks and pretrial motions for months and months.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            And I think it affected more than just --
 2    I mean, I think it just goes to trial strategy and
 3    allowing the Government to benefit by withholding
 4    such information during trial seems to me the wrong
 5    sort of message to send about discovery practices,
 6    Your Honor.
 7            THE COURT:  All right.
 8            MS. BHALLA:  I'll move on to our Exhibit
 9    B.  I think my argument with Exhibit B is the same
10    as it pertains to Exhibit A.  But here, you know,
11    the Government's theory of the case is that these
12    gentleman received paperwork and were told what to
13    do with it.  In this letter, Mr. Rodriguez is
14    actively seeking out paperwork on other defendants
15    from the county clerk and misrepresenting how and
16    why he's doing so.  We didn't get this disclosure
17    until February 28 of 2018.
18            I want to move to Exhibit C now, Your
19    Honor, and let me just refresh my memory on this
20    exhibit.  I apologize.  That is a note from Agent
21    Stemo, Your Honor, that was produced on March 2 of
22    2018.  And again, I think this is exculpatory
23    information as it pertains to Mr. Herrera, because
24    Timothy Martinez indicated that he didn't know how
25    Carlos was involved in the murder, but that he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9169

 1   didn't get along with Carlos, he didn't like him,

 2   essentially.

 3          And I think it's important, when you

 4   review this note from Agent Stemo, that you review

 5   it while also reviewing Exhibit D, which is the

 6   questionnaire that was disclosed to us on January

 7   30.  And I'd like to point out that this is the only

 8   questionnaire that the defense was provided.  It

 9   seems to me that the other ones were provided in

10   Trial 2.

11          And I think that I took a lot of time to

12   explain why this was relevant in the brief, but I

13   just want to highlight to the Court that I think you

14   have to look at these exhibits together, because

15   when you look at the questionnaire that was

16   presented to the SNM defendants and cooperators in

17   this case, they give the names of the individuals

18   that they believe to be involved in the murder, and

19   that, as far as it concerns Mr. Herrera, starts on

20   page 6, Bates No. 51501.  And it sort of makes sense

21   when you look at the interview notes, Oh, yeah, I

22   see that, but I don't know how.

23          They're selling -- they're basically

24   telling the cooperators who their targets are.  And

25   these are targets that have already conspired to lie

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9170

```
 1   together in a state case.  And I think that's pretty

 2   powerful information that we could have put before

 3   the jury when you tie all those knots together, Your

 4   Honor, when you lace it up, if you will.

 5            Here we've got -- when trial started, we

 6   only had two defendants that we had evidence about

 7   lying about what happened; right?  Now we have

 8   evidence of four, or actually five, that we didn't

 9   have before trial.  And now we have the

10   questionnaire that shows exactly how and why these

11   informants had our clients' names involved in the

12   different murders that were being investigated.

13            I mean, it's sort of like, "I want you to

14   tell me a story about Jimmie falling down the

15   mountain."

16            "Okay.  Sure.  I can do that."

17            But if you go and say, "Do you know what

18   happened on the mountaintop," they may not have any

19   information.  And I sort of feel like you have to

20   look at all of this together in a totality of the

21   circumstances, Your Honor.  When you start looking

22   at all of the evidence withheld and how it all works

23   in place together, I think it becomes obvious how

24   the trial strategy could have been wildly different

25   and produced a very different result.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And that's what I'm asking the Court to
 2  do.  And I think, Your Honor, that explains why it's
 3  so hard to do that in the middle of trial, to pull
 4  all these pieces together and to take all these
 5  threads, and then try to recall witnesses without
 6  having the time to assimilate this information into
 7  a real working theory of the case.  It's one thing
 8  to read a chapter at a time.  It's another to sit
 9  down and read a novel.  And we were being given such
10  voluminous information that it was impossible to
11  process it in a cohesive way, and that's why, when
12  you look at these two exhibits together, I think it
13  makes a little more sense, Your Honor.
14              The last exhibit that I wanted to talk
15  about was Defendant's Exhibit E.  And this is
16  another sort of -- it may seem minor, Your Honor,
17  but to me it's not.  If you recall, during trial
18  Billy Cordova testified that he helped give another
19  SNM member a hotshot and they wrapped his body up in
20  a tarp and left it at a church.  The Government
21  followed up on this, and they generated a 302 on
22  June 25 of 2018, and they investigated that
23  allegation, and what they found is that that
24  allegation didn't have any support from the members
25  of the church and from the pastor who would have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    information about that.

 2              And I think it's interesting, if

 3    Mr. Cordova was willing to make up information about

 4    himself just to curry favor or to make himself look

 5    more important, what else would he be willing to lie

 6    about?  I mean, to make up a story about a murder

 7    that there is no evidence to support based on the

 8    FBI's investigation, just to enhance your story or

 9    to enhance your reputation, can really cause serious

10    doubt about whether or not that witness was really

11    telling the truth.  And I liked Mrs. Jacks' briefing

12    about the role of the Court as --

13              THE COURT:  Let's do this.  I don't want

14    to rush you, and I've got some questions on this.

15    Would this be a good time for me to let Ms. Bean

16    rest her fingers?

17              MS. BHALLA:  Sure.  And I'm close to

18    finishing, too, Your Honor.

19              THE COURT:  I don't want to rush you.

20    I've got some questions about this, because of the

21    timing of this 302.  So let's take about a 15-minute

22    break and I'll let you continue.

23              (The Court stood in recess.)

24              THE COURT:  All right.  I think we have

25    all the defendants, an attorney for each of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   defendants.  All right.  We'll go back on the

 2   record.  I think we have an attorney for each

 3   defendant.

 4            Ms. Bhalla, if you wish to continue your

 5   argument in support of your motion, you may

 6   continue.

 7            MS. BHALLA:  I think I'm ready to take

 8   questions from the Court, Your Honor.

 9            THE COURT:  Well, I don't have any at the

10   present time, other than the timing of that last

11   disclosure.  It came -- again, it came after the

12   trial.

13            MS. BHALLA:  It did, Your Honor.

14            THE COURT:  So what do I do with that?

15   That's almost like evidence that occurred after the

16   trial.

17            MS. BHALLA:  It did, Your Honor.  And I

18   tried to, in my brief, distinguish the standards

19   between when what happened when new evidence is

20   presented and also what happens when there are Brady

21   violations, and to articulate why the disclosures

22   made during trial were Brady violations and why the

23   disclosures post trial were relevant.  But I think,

24   case law aside, I think that --

25            THE COURT:  It seems to me that we could
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9174

```
 1  have spent about two months impeaching Mr. Cordova;
 2  right?
 3            MS. BHALLA:  That's a dangerous question,
 4  Your Honor.
 5            THE COURT:  So I mean, you know, the fact
 6  that you may have another lie, I guess this seems to
 7  me to be maybe the definition of "cumulative" with
 8  Mr. Cordova, one more, and we don't have to have a
 9  lie.  It's just there as an inconsistent, perhaps,
10  statement.
11            MS. BHALLA:  I think, Your Honor, that to
12  some extent I understand the Court's perspective.
13  But I would also point out that there are different
14  kinds of lies.  And lies can mean different things
15  to juries.  And taking credit for a murder that you
16  didn't commit just to curry favor with the
17  Government is the kind of lie that would have been
18  highly probative and highly (unintelligible).  It's
19  definitely something that we would bring out in
20  another trial.
21            And I think that when you look at this
22  kind of disclosure -- again, Your Honor, I think
23  it's a mistake to look at them individually.  I
24  really think that you have to put them all together.
25  Because when you put them all together, you see that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9176

```
 1   there could have been a very different defense and

 2   there could have been a very different approach to

 3   how we handled the informants.

 4            And I want to remind the Court that all of

 5   these convictions rest solely upon the testimony of

 6   these cooperators.  And so every piece of

 7   impeachment is very important when that's the case,

 8   and so -- especially when you have evidence that the

 9   cooperators were all working together.

10            So I would just ask the Court to keep that

11   in mind, Your Honor, when reviewing these exhibits

12   and when looking at the evidence that we presented

13   argument about, to do it in a totality of the

14   circumstances fashion.

15            THE COURT:  All right, I will.

16            MS. BHALLA:  Thank you, Your Honor.

17            THE COURT:  All right.  Thank you, Ms.

18   Bhalla.

19            Ms. Jacks, you specifically joined on

20   behalf of Mr. Sanchez.  Do you have anything you

21   want to say on this motion?

22            MS. JACKS:  I do not.

23            THE COURT:  Any other defendant wish to

24   comment on this?

25            Not seeing any, Mr. Castellano, are you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9176

```
 1   going to respond?
 2             MR. CASTELLANO:  Yes, Your Honor.  Thank
 3   you.
 4             I want to start where Ms. Bhalla left off.
 5   She stated that all of the cooperators were working
 6   together.  But there was never any evidence at trial
 7   that they were working together.  That was a defense
 8   theory, and clearly there were times when
 9   cooperators were housed together.  I can say between
10   both trials, the only time there was evidence of one
11   cooperator talking to another was Trial 2, when Ben
12   Clark made a statement to Ruben Hernandez; Ruben
13   Hernandez testified at trial that Ben Clark asked
14   him if he remembered something about the paperwork
15   that Kyle Dwyer brought.  Ruben Hernandez said he
16   didn't remember that, and he testified to that.  And
17   that's the only evidence in either Trial 1 or 2
18   where there was indication that one cooperator
19   discussed the case with another one.  That's a
20   defense theory, but there was never proof at trial
21   that they had actually worked together.
22             Starting with the transcript of Joe
23   Martinez, I think it's important to note that on
24   page 1 of the transcript, Agent Acee actually isn't
25   calling Joe Martinez.  Joe Martinez is calling Agent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9178

1  Acee.  On the first page, Agent Acee is saying,

2  "Hello," and Mr. Martinez is saying, "Hello, Bryan."

3  So actually Joe Martinez is calling Agent Acee.

4           On page 15 of that exhibit, which is a

5  transcript between Joe Martinez and Agent Acee, I'm

6  showing the Court page 8 of that exhibit and I'm

7  indicating on the fifth box from the top there is

8  actually an admission by Joe Martinez that he was at

9  the facility the same time that they were.  He says

10  he already knows what Calbert is going to say and he

11  says, "That's when we were all there."

12           And so once again, there is admission by

13  Joe Martinez.  I know a couple of the defendants

14  have alleged there is no corroboration of this.  But

15  Joe Martinez himself admits that he was at the same

16  facility at the same time as Mr. Calbert.  So that

17  actually weighs against the arguments about the

18  possibility that they were at the same place at the

19  same time.  So I wanted to highlight that.

20           The other thing about Joe Martinez is that

21  he was actually somebody who was disclosed as a CI

22  to the defense.  I don't remember when that

23  happened, but I know his name came up in court, and

24  the defense can correct me if I'm wrong.  It came up

25  in court.  I think it may have been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9178

1   Ms. Harbour-Valdez who actually interviewed Mr.

2   Martinez.  I know that she was Trial 2, not Trial 1,

3   but Mr. Martinez was disclosed to the defense in one

4   of the hearings where we had to disclose CIs who

5   were masked by redactions, but he was -- his name

6   was given.

7          The other thing about the letter from Tim

8   Martinez's wife.  I think the date indicates that

9   the letter was sent before this case was indicted.

10  It was a letter when the case was still pending in

11  state court.  And so the indication that -- the only

12  thing that happened here is that Defendant's Exhibit

13  A -- I can tell the Court at least on that document,

14  which is part of the packet, the date was October

15  23, 2015.  So once again, this was old information

16  from when the case was a state case, and all of

17  those defendants were impeached at length about the

18  fact that they were going to commit a fraud on the

19  Court.  So that's the first part of that.

20          The next is that, if I'm not mistaken --

21  the defense can correct me again -- I remember that

22  Timothy Martinez's wife was subpoenaed and was

23  waiting out in the foyer and had refused to testify.

24  And I think there was an allegation that they were

25  keeping her until she would cooperate.  She

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9179

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9180

1  ultimately did not agree to cooperate, and she was

2  released from the subpoena.  My recollection -- I

3  can be corrected -- is that Ms. Martinez was

4  subpoenaed, they made attempts to get her on the

5  stand, but she refused.

6          And so once again, it makes that document

7  even more difficult to introduce for evidentiary

8  reasons.

9          I want to turn to Defendant's D.  I do

10  have one more exhibit to introduce.  It's sworn

11  testimony by Agent Acee and I can show it to Ms.

12  Bhalla.  In Trial 2, Agent Acee was asked about the

13  questionnaires and he indicated that he didn't

14  recall actually giving the questionnaire to anybody

15  except for one cooperator, and that was Frederico

16  Munoz, because there were certain time constraints.

17  So the questionnaire -- there is testimony, not in

18  Trial 1 but in Trial 2, that Agent Acee was asked

19  about it.  He also testified that the questionnaire

20  was for the agents because there had been some

21  mistakes in the 302s about which participants were

22  involved in which crimes, and that was used as a

23  tool so that the agents could use that to question

24  people without making mistakes.

25          And so I'll mark this as an exhibit.  It's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Agent Acee's testimony from Trial 2, just to be

2    clear, and I believe it was testimony from April 16,

3    2018.  I want to be clear that the questionnaire was

4    not given to cooperators.  It was given to agents

5    for the purpose of questioning them.  And am I on

6    Exhibit 5, Your Honor?

7               THE CLERK:  Yes.

8               THE COURT:  Ms. Bevel is saying yes.  I'd

9    have to look back to make certain, but...

10              MR. CASTELLANO:  And I'll show the

11   transcript to Ms. Bhalla, the portion I have.  But

12   there is an indication from that -- that's a sworn

13   statement by Agent Acee at a trial that that was not

14   given to everybody, so therefore, they weren't

15   suggested.  Now, how agents have questioned people

16   might have varied from time to time, and that would

17   be a question regarding every single 302, how the

18   interview was conducted.  At this time I move the

19   admission of Government's 5.

20              THE COURT:  Ms. Bhalla, any objection to

21   Government's Exhibit 5 for your hearing on your

22   motion?

23              MS. BHALLA:  No, Your Honor.  I'm just --

24   there is no objection.  I'm just trying to review it

25   so I understand what it says before I reply.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Any of the other defendants
 2   have any objection?
 3              Not seeing or hearing any, Government's
 4   Exhibit 5 will be admitted into evidence.
 5              (Government Exhibit 5 admitted.)
 6              MR. CASTELLANO:  Also on the
 7   questionnaire, which is Defendant's D, that was
 8   disclosed for trial.  I don't want to go through the
 9   whole thing, but I will note on question 144, page 8
10   of that exhibit, there is a question:  Why did
11   Daniel Sanchez conspire to murder Anthony Ray Baca?
12   The response was, "Not aware."
13              So there were times that even if we say
14   there was a certain answer that was prompted by
15   agents asking these questions, there is at least one
16   example where the witness, in this case Mario
17   Rodriguez, said, "I don't know.  I wasn't aware of
18   that."
19              So it's not clear in any way that just
20   because these questionnaires existed that they
21   necessarily suggested the answer to any of those
22   questions.
23              Looking at Exhibit E, what is correct is
24   that Exhibit E doesn't tell us anything one way or
25   the other.  This is the exhibit in which agents were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  sent to the church to ask about any bodies found at
 2  the church.  It relates to Billy Cordova.  And what
 3  it tells us is that two people at the church didn't
 4  know anything about the body.  So it doesn't tell us
 5  he was lying, it doesn't tell us he was being
 6  truthful.  It just tells us that two people don't
 7  know anything about a body that was found there.
 8            The timing is also interesting, because
 9  the pastor on the March 1st paragraph of that
10  exhibit indicates that the church was purchased in
11  December of 2004 and didn't move in until several
12  months later.  So it may have been that none of
13  those people discovered the body because they
14  weren't there.  The alleged murder happened in 2005,
15  by Billy Cordova's admission.
16            And the other thing about this exhibit is
17  that, as I stated in my brief, it's a lot more
18  damaging to impeach Billy Cordova with a murder for
19  which he isn't being prosecuted than it is to allege
20  that he's lying about a murder.  And so I think they
21  got better impeachment out of that line of testimony
22  than they would have by claiming he was lying about
23  his participation in a murder.
24            Your Honor, I really don't have anything
25  to add than I responded in the briefing.  So if the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9183

1    Court has questions, I don't think I have anything

2    further.

3              THE COURT:  Well, do you want to comment

4    on Ms. Bhalla's sort of final point there, her

5    cumulative point?

6              MR. CASTELLANO:  Well, I think if we look

7    at each of these individually, there would be no

8    error.  And to put them all together to say there is

9    sufficient error to undermine the verdict or to

10   grant a new trial, I think it just isn't there.

11             And I'm glad you asked me a question,

12   because I forgot to make the record that Ms. Bhalla

13   has withdrawn one of her arguments, which was

14   ineffective assistance of counsel.  So I want to

15   make sure we make that clear for the record.

16             THE COURT:  Is that the one that's built

17   on the fact that Mr. Davis got disqualified and then

18   she had to take over, and then we appointed new

19   counsel?

20             MR. CASTELLANO:  That's correct, Your

21   Honor.  So I wanted to make clear that she has

22   withdrawn that portion of her argument.

23             THE COURT:  I didn't think she was quite

24   arguing that she was ineffective.  She was arguing

25   that she didn't have enough time to prepare, was I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9184

```
 1  thought precisely her argument.
 2            MR. CASTELLANO:  And I didn't think she
 3  was effective -- ineffective.  I'll say that again.
 4  I don't think she was ineffective.  But I think she
 5  did a fine job at trial defending her client.  She
 6  said there was no -- it was strictly cooperator
 7  testimony in this case.  But as to her client, there
 8  were recordings, as well.  So certainly there was
 9  corroboration and other hard evidence regarding Mr.
10  Herrera.
11            One of her arguments related to the
12  evidence was the discovery, and that's why I
13  attached the discovery letters for the Court to see.
14  What the Court will see is that, according to the
15  defense, 3,000 pages were disclosed at the very
16  beginning of trial, so half of the disclosures were
17  made.  We're not saying it was a small amount of
18  discovery, but it was disclosed at the beginning of
19  trial, giving them, the defense team, with a joint
20  defense agreement and a joint defense with
21  resources, time to use those documents.  And I think
22  if the Court looks at the discovery letters, the
23  Court will see many of these documents were used at
24  trial by both sides, and it included some of the
25  prison records, locations, histories, and things of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that nature.

2          Some of the discovery is also related to

3  Trial 2, because we had ongoing discovery

4  obligations.  So those disclosures had no bearing on

5  this trial at all.  So that's why I made those

6  available to the Court and two responses.

7          But I don't think there's cumulative

8  error, going back to the Court's question, if none

9  of these really amounts to error.  And I don't think

10  the evidence in this case establishes that there

11  was.

12          What I will add is, one of those alleged

13  errors was the Mario Rodriguez letter, which was

14  found in his property.  I've introduced that now in

15  two of these hearings, and it's clear now that the

16  document which seemed to carry the greatest weight

17  for purposes of impeachment and any allegation of

18  wrongdoing by the Government was introduced two

19  weeks prior in a defense pleading.  So I want to

20  make that part of the record, as well.  That would

21  not be part of any prejudice to the defense.

22          Other than that, Your Honor, the United

23  States would rely on its briefing in this matter.

24          THE COURT:  All right.  Thank you,

25  Mr. Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9186

```
 1            Any other defendant want to speak before
 2   Ms. Bhalla gets the last word?
 3            All right, Ms. Bhalla.  Do you wish to
 4   speak on your motion?
 5            MS. BHALLA:  Thank you, Your Honor.
 6   Briefly.
 7            THE COURT:  And Mr. Castellano is correct
 8   that you have withdrawn the -- you didn't have
 9   enough time to prepare, that first portion of your
10   motion?
11            MS. BHALLA:  That's correct, Your Honor.
12   And I'd like for the Court to actually review that
13   portion of our reply explaining why we withdrew that
14   motion, because I think that that thought process is
15   informative for the Court and relevant to the
16   discovery violations which we had to deal with
17   during trial.
18            But I wanted to go very briefly -- and
19   Mr. Castellano just said there was no evidence that
20   the cooperators were working together.  Well, that's
21   the problem.  I mean, we didn't have that evidence
22   in time to prepare that.
23            THE COURT:  Wasn't that aspect pretty
24   minimal, pretty minuscule?
25            MS. BHALLA:  The aspect that they were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9187

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9188

```
 1   working together?

 2           THE COURT:  Yeah.  I mean, I don't

 3   remember, other than the incident that has been

 4   brought out this afternoon -- I don't recall another

 5   incident.  Am I not missing or not remembering

 6   others?

 7           MS. BHALLA:  Let me narrow the question,

 8   Your Honor.  Do you mean in terms of discovery that

 9   was produced during trial?

10           THE COURT:  Well, I'm talking about

11   cooperation or people rehearsing their testimony or

12   anybody talking about it.  I thought that was a

13   fairly minimal problem in trial.

14           MS. BHALLA:  I'm talking about the

15   witnesses working together to fabricate the story

16   that they were providing to the Government.

17           THE COURT:  In the state court case.

18           MS. BHALLA:  Yes, but I also think that

19   you can find evidence of that in other places.  But

20   just so the record is clear, Your Honor, this letter

21   from -- Exhibit A, this letter from Timothy

22   Martinez's wife to Timothy Martinez -- that was

23   something that was disclosed to us; or at least the

24   only time that I became aware of its disclosure was

25   on February 28, 2018, when the 934 pages of Mario
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9188

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9189

```
 1   Rodriguez' property were produced.

 2            Now that Mr. Castellano says something

 3   about Mrs. Martinez being here under subpoena, I

 4   sort of vaguely remember that, as well, but it

 5   wasn't for this.  Because this happened well -- this

 6   production happened well after Timothy Martinez was

 7   through testifying.  So that issue had never been

 8   explored with Mrs. Martinez.  I don't know why she

 9   was here.  It was for some other purpose, but it had

10   nothing do with this letter, because I didn't have

11   it.  And I hadn't seen it produced previously.

12            THE COURT:  But what else -- I guess I'm

13   trying to think what else would she have been

14   hanging around this court about?

15            MS. BHALLA:  I'm trying -- it would be

16   purely speculation on my part, but I --

17            THE COURT:  Well, speculate for me,

18   because --

19            MS. BHALLA:  I recall one of the

20   defense -- maybe it was Mr. Villa wanting to ask her

21   about a drug case or something.  I don't remember

22   how it was relevant.  But I'm pretty certain it had

23   nothing to do with this letter.  I'm willing to

24   entertain advice or suggestion from my cohorts back

25   here, but -- or from Ms. Salazar, who has an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   impeccable memory.

2           Oh, that's right.  There was an allegation

3   that Mr. Martinez was dealing drugs while he was at

4   Sandoval County Detention Center, and Mrs. Martinez

5   was facilitating that, that enterprise.  And it was

6   after he had been working as a Government witness,

7   and it went to his -- you know, it was Giglio

8   information about his conduct while he was a

9   cooperating witness.  And that does sound correct,

10  Your Honor.

11          The reference to the transcript, which is

12  Exhibit F, when he says that Mr. Martinez says,

13  "Well, that's when we were all there together," I

14  think he missed the point of what I was saying.

15  David Calbert testified as to a timeframe when that

16  paperwork was passed.  And according to the

17  timeframe he provided, Mr. Martinez was not there

18  and could not have possibly passed the paperwork.

19  And that was the point of that particular comment.

20  And I think that Mr. Lowry will clear that up, Your

21  Honor, so I won't belabor it.

22          Whether or not Mr. Martinez was disclosed

23  as a CI, the information provided in that 302 was

24  impossible for us to discern, given the redactions.

25  Let me just look over my notes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Oh, those letters, the letter being

2    written, the one we just discussed from Mr.

3    Martinez' wife, while that's true that the letter

4    may have been authored in 2015, it wasn't received

5    until almost the end of trial.

6          I think that I articulated my arguments

7    about the questionnaire fairly well in the reply,

8    and I would just say that the exhibits that they

9    tendered with Agent Acee's testimony about the

10   questionnaires were about the cooperators in Trial

11   2.  It didn't specify that those were the

12   cooperators in Trial 1.

13         Other than that, I just ask the Court to

14   review the briefs.  I mean, I certainly didn't cover

15   everything in oral argument today, but I wanted to

16   try and bring out the salient points, Your Honor,

17   and unless you have any other questions, I think I'm

18   through.

19         THE COURT:  All right.  Thank you, Ms.

20   Bhalla.

21         MS. BHALLA:  Thank you, Your Honor.

22         THE COURT:  Well, I'll certainly take a

23   closer look at this in light of the evidence that's

24   been presented.  As I read Mr. Herrera's motion and

25   the joinders in it, nothing jumped out at me that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9191

```
 1   suggested that a new trial was appropriate.  It

 2   seemed to me that there was considerable evidence

 3   introduced against him, and that nothing here would

 4   have changed to any significant degree or materially

 5   the strategy in the case and because of the other

 6   evidence that was presented.

 7            So I'm inclined to deny the motion both as

 8   to him and the defendants that have joined that

 9   motion.  But I'll take a hard look at it, and I'll

10   give you an opinion on it as soon as I possibly can.

11            All right, Mr. Lowry, I think you're up

12   next on behalf of Mr. Baca.

13            MR. LOWRY:  Thank you, Your Honor.

14            THE COURT:  Mr. Lowry.

15            MR. LOWRY:  Thank you, Your Honor.

16            THE COURT:  Mr. Lowry.

17            MR. LOWRY:  Your Honor, just as a matter

18   of housekeeping, I think I worked out an arrangement

19   with the United States.  I want to follow a bit of

20   Mr. Castle's example this morning and just present

21   evidence.  And if it's okay with the Court, I'd

22   prefer to argue on paper afterwards.

23            THE COURT:  All right.  Do you have

24   additional evidence to present?

25            MR. LOWRY:  I do, Your Honor.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9193

```
 1  actually, I want to go through a bit of

 2  housekeeping.  I talked throughout the day with

 3  Ms. Armijo, and what I believe they've agreed to do

 4  is allow all the exhibits that were attached to the

 5  motions to come in as admitted, with one exception.

 6  In the reply brief, we cited to three Lupe Urquizo

 7  phone calls regarding his ability to view the

 8  tablets.  And we had agreed that there would be a

 9  conditional admittance to allow the Government a

10  chance to review those audiotapes because we had to

11  lodge them this morning, and to make sure they're

12  fair and accurate representations of what was

13  disclosed by the United States in discovery.

14            With that, Your Honor, there are some

15  additional exhibits, aside from what was on the

16  pleadings, that we've agreed to introduce as

17  evidence.  And they're largely -- well, there are

18  two general categories, and one to deal with the

19  IPRA requests, and some of them are redundant, but

20  some of them are the emails that went along with

21  them.  And that would be Exhibit W through, I

22  believe, it's CC.  And that's just --

23            THE COURT:  These are trial exhibits?

24            MR. LOWRY:  No, Your Honor, these would be

25  new exhibits.  They're associated with the exhibits,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9193

 1   and I can get you a list.  They're associated, and

 2   if you look at Document 2423, we filed an appendix

 3   of exhibits to the motion for a new trial.  And they

 4   would go with what has been marked 9 through 14 on

 5   that Document 2423, and those would be Exhibits I

 6   through N on the original motion.  And what these

 7   really are are emails to just drill down and shed

 8   more light on the nature of the conversations that

 9   were taking place about the inability of the

10   Department of Corrections to follow up on the second

11   request for the recreation yard records, Your Honor.

12           And we do have -- I'm going to call two

13   witnesses.  One, our investigator, Leonor Delgado,

14   to talk about the line of sight from the recreation

15   yard into Q-106, the cell, and then we're going to

16   call Jim Brewster, the general counsel for the

17   Department of Corrections, to testify about the IPRA

18   requests and the document destruction that happened

19   in May of this year.

20           THE COURT:  All right.

21           MR. LOWRY:  There are two additional

22   exhibits, and these are marked as Defendant's

23   Exhibits DD and DE.  And DD is the field notes from

24   Bryan Acee regarding the initial meeting with Lupe

25   Urquizo before he had counsel present, and the 302

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9194

 1   associated with that.  And Ms. Armijo agreed to

 2   admit these with the provision that she'd be allowed

 3   to augment the record with all of the 302s

 4   concerning the cooperating witness Lupe Urquizo, and

 5   we have no objection to that, Your Honor.

 6            THE COURT:  All right.  So let me get

 7   exactly the ones you're moving.  Do you want to move

 8   those by number?

 9            MR. LOWRY:  Sure.  Your Honor, we would

10   move Exhibit A, which is the November 14, 2017,

11   audio recording of Mario Rodriguez that was produced

12   in the summer of 2018.

13            THE COURT:  Any objection, Ms. Armijo?

14            MS. ARMIJO:  No, Your Honor.

15            THE COURT:  Any objection from any other

16   defendant?

17            All right.  So Baca Exhibit A will be

18   admitted into evidence.

19            (Defendant Baca Exhibit A admitted.)

20            MR. LOWRY:  And Exhibit B was a 302 dated

21   November 6, 2017.  It was actually the initial

22   intake interview with Mario Rodriguez.  The actual

23   interview happened on October 24, 2017.  That would

24   be Defendant's Exhibit B, Your Honor.

25            THE COURT:  Any objection, Ms. Armijo?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9195

```
 1              MS. ARMIJO:  No, Your Honor.

 2              THE COURT:  Any other defendant?

 3              Not hearing any, Baca Exhibit B will be

 4    admitted into evidence.

 5              (Defendant Baca Exhibit 5 admitted.)

 6              MR. LOWRY:  Your Honor, Exhibit C is Agent

 7    Acee's field notes from that same interview with

 8    Mario Rodriguez.

 9              THE COURT:  Any objection, Ms. Armijo?

10              MS. ARMIJO:  No, Your Honor.

11              THE COURT:  Any other defendant?

12              Not hearing or seeing any objection, Baca

13    Exhibit C will be admitted into evidence.

14              (Defendant Baca Exhibit C admitted.)

15              MR. LOWRY:  Your Honor, Exhibit D is the

16    October 24 letter to Timothy Martinez from his wife

17    that Ms. Bhalla just discussed at length.

18              THE COURT:  All right.  Any objection,

19    Ms. Armijo?

20              MS. ARMIJO:  No, Your Honor.

21              THE COURT:  Any other defendant?

22              Not seeing or hearing any objection, Baca

23    Exhibit D will be admitted into evidence.

24              (Defendant Baca Exhibit D admitted.)

25              MR. LOWRY:  Your Honor, Exhibit E are just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9196

```
 1   selected pages from Lupe Urquizo's trial testimony
 2   that sort of underscore the points we were making
 3   about the line of sight and the Q-106 and the
 4   timeframe within which that conversation -- not
 5   really a conversation, but that communication took
 6   place.
 7            THE COURT:  Any objection, Ms. Armijo?
 8            MS. ARMIJO:  Do we have this entire
 9   transcript in, as well?
10            MR. LOWRY:  Your Honor, I think -- thank
11   you for asking the question, Ms. Armijo.
12            That brings up a broader point that I
13   believe Ms. Armijo and I had agreed on for the
14   purpose of drafting the final argument, that both
15   counsel would be permitted to use all the trial
16   transcripts and exhibits that were introduced at
17   trial.  And so I think that we would have the
18   complete trial transcript of Lupe Urquizo to select
19   from.
20            THE COURT:  All right.  So if he's just
21   got a portion, if you want to introduce the
22   entire -- do you want to do that?  And that way I
23   can focus at least on what Mr. Baca wants me to
24   focus on, and then I'd have the complete, if you
25   want to point to other things.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9198

```
 1              MS. ARMIJO:  That's fine.  I don't have it
 2    right now.  I thought --
 3              THE COURT:  And you don't have any
 4    objection to supplementing it later?
 5              MR. LOWRY:  No, Your Honor.  I thought
 6    that was --
 7              THE COURT:  Anybody else have any
 8    objection or problem with that arrangement?  Baca
 9    Exhibit -- give me the letter again.
10              MR. LOWRY:  It was Exhibit E.
11              THE COURT:  Baca Exhibit E will be
12    admitted into evidence.
13              (Defendant Baca Exhibit E admitted.)
14              MR. LOWRY:  And Your Honor, Exhibits F, G,
15    and H are individual still shots depicting the line
16    of sight between cell North 3A Q-106 and the
17    recreation yard, and there are different
18    perspectives.  But those three exhibits, again, F,
19    G, and H, were individual still shots.
20              THE COURT:  Any objection, Ms. Armijo?
21              MS. ARMIJO:  No, but I would like to have,
22    for purposes of court hearings, especially if there
23    are going to be witnesses, if you have a copy of
24    that, a hard copy, to use for the hearings.
25              MR. LOWRY:  I'll look, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9198

```
 1              THE COURT:  It would be good for me to
 2   have one, too.
 3              MR. LOWRY:  What we were going to do with
 4   Ms. Delgado today was do videotapes.
 5              THE COURT:  Is that all right for the
 6   hearing?
 7              MS. ARMIJO:  Yes.
 8              THE COURT:  Any other objection from any
 9   other defendant?
10              Not hearing any, Baca Exhibits F, G, and H
11   will be admitted into evidence.
12              (Defendant Baca Exhibits F, G, and H
13   admitted.)
14              MR. LOWRY:  And Your Honor, Exhibit I was
15   just the IPRA request to the Department of
16   Corrections dated April 17, 2018, for the initial
17   set of recreation yard records from September 2011
18   to September 2012.
19              THE COURT:  All right.  Any objection to
20   Exhibit I, Ms. Armijo?
21              MS. ARMIJO:  No, Your Honor.
22              THE COURT:  Any other defendant?
23              Not hearing or seeing any objection, Baca
24   Exhibit I will be admitted for purposes of his new
25   trial motion.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9199

```
 1                    (Defendant Baca Exhibit I admitted.)
 2               MR. LOWRY:  And Your Honor, Exhibit J
 3   would be the follow-up IPRA request for the records
 4   at issue here from September 2012 to September 2014.
 5   That's Exhibit J.
 6               THE COURT:  All right.  Any objection,
 7   Ms. Armijo?
 8               MS. ARMIJO:  No, Your Honor.
 9               THE COURT:  Any other defendant?
10               Not seeing or hearing any objection, Baca
11   Exhibit J will be admitted for purposes of his new
12   trial motion.
13                    (Defendant Baca Exhibit J admitted.)
14               MR. LOWRY:  Your Honor, Exhibit K was a
15   May 16, 2018, email correspondence between my office
16   and the Department of Corrections concerning the May
17   14 IPRA request.
18               THE COURT:  All right.  Any objection to
19   K, Ms. Armijo?
20               MS. ARMIJO:  No, Your Honor.
21               THE COURT:  Any other defendant?
22               Not seeing or hearing any objection, Baca
23   Exhibit K will be admitted for purposes of his new
24   trial hearing.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9200

```
 1                  (Defendant Baca Exhibit K admitted.)

 2                  MR. LOWRY:  Your Honor, Exhibit L is a

 3      second email on May 17 on the same subject.

 4                  THE COURT:  Any objection to L,

 5      Ms. Armijo?

 6                  MS. ARMIJO:  No, Your Honor.

 7                  THE COURT:  Any other defendant?

 8                  Not seeing or hearing any objection, Baca

 9      Exhibit L will be admitted into evidence for

10      purposes of his new trial motion.

11                  (Defendant Baca Exhibit L admitted.)

12                  MR. LOWRY:  Your Honor, Exhibit M is a

13      September 19, 2018, email between my office and the

14      Department of Corrections concerning an August 23,

15      2018, IPRA request concerning the destruction of the

16      recreation yard records.

17                  THE COURT:  Any objection, Ms. Armijo?

18                  MS. ARMIJO:  No, Your Honor.

19                  THE COURT:  Any other defendant?

20                  Not seeing or hearing any, Baca Exhibit M

21      will be admitted for purposes of his new trial

22      motion.

23                  (Defendant Baca Exhibit M admitted.)

24                  MR. LOWRY:  Exhibit N is the document

25      destruction receipt dated May 18, 2018.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9201

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9202

```
 1              THE COURT:  Any objection, Ms. Armijo?

 2              MS. ARMIJO:  I'm sorry, what is it?

 3              THE COURT:  It's N, a document destruction

 4   receipt dated May 18, 2018.

 5              MS. ARMIJO:  That's fine.

 6              THE COURT:  Any other defendant?

 7              Not seeing or hearing any objection, Baca

 8   Exhibit N will be admitted for purposes of his new

 9   trial motion.

10              (Defendant Baca Exhibit N admitted.)

11              MR. LOWRY:  Your Honor, Defendant's

12   Exhibit -- and these were going to be used for

13   today's hearing with the witnesses.  But actually,

14   as I look at this, Defendant's Exhibit W is a

15   duplicate of Exhibit I, the IPRA request, so I don't

16   know if we just want to strike this W or --

17              THE COURT:  Okay.  Well, let's just skip

18   over it.  Do you want to -- does that work?

19              MR. LOWRY:  Yes.

20              THE COURT:  We'll just have a gap in our

21   letters.

22              MR. LOWRY:  And Your Honor, Defendant's

23   Exhibit X -- you should have it, Maria --

24   Defendant's Exhibit X is an email between Daniel

25   Salazar of the New Mexico Corrections Department and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   243 Page: 9203

```
 1   Catherine Earl of the New Mexico Corrections
 2   Department regarding the initial recreation yard
 3   records request.  That's May 9, 2018.
 4             THE COURT:  Any objection to X, Ms.
 5   Armijo?
 6             MS. ARMIJO:  No, Your Honor.
 7             THE COURT:  Any other defendant?
 8             Not seeing or hearing any objection, Baca
 9   Exhibit X will be admitted for purposes of his new
10   trial motion.
11             (Defendant Baca Exhibit X admitted.)
12             MR. LOWRY:  Your Honor, Defendant's
13   Exhibit Y are three selected pages out of the
14   initial set of recreation yard records that were
15   produced by the Department of Corrections on May 10,
16   2018.
17             THE COURT:  Any objection to Exhibit Y,
18   Ms. Armijo?
19             MS. ARMIJO:  If I may just have a moment.
20             THE COURT:  You may.
21             MS. ARMIJO:  No objection.
22             THE COURT:  Any other defendant have any
23   objection?
24             Not seeing or hearing any objection, Baca
25   Exhibit Y will be admitted into evidence for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9203

```
 1    purposes of his new trial hearing.
 2            (Defendant Baca Exhibit Y admitted.)
 3            MR. LOWRY:  Your Honor, Defendant's
 4    Exhibit Z is a complete email thread concerning the
 5    May -- pardon me, concerning the second IPRA request
 6    for recreation yard records that was submitted to
 7    the Department of Corrections on May 14, 2018.
 8            THE COURT:  Any objection to Exhibit Z,
 9    Ms. Armijo?
10            MS. ARMIJO:  No, Your Honor.
11            THE COURT:  Any other defendant have any
12    objection?
13            Not seeing or hearing any objection, Baca
14    Exhibit Z will be admitted into evidence for
15    purposes of his new trial motion.
16            (Defendant Baca Exhibit Z admitted.)
17            MR. LOWRY:  Your Honor, Defendant's
18    Exhibit AA is an email thread addressing the
19    Department of Corrections response to the May 14
20    IPRA request for the September 2012 to September
21    2014 recreation yard records.
22            THE COURT:  Any objection to AA,
23    Ms. Armijo?
24            MS. ARMIJO:  No, Your Honor.
25            THE COURT:  Any other defendant have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9204

```
 1   objection?

 2           Not seeing or hearing any objection, Baca

 3   Exhibit AA will be admitted for purposes of his new

 4   trial motion.

 5           (Defendant Baca Exhibit AA admitted.)

 6           MR. LOWRY:  And Exhibit BB is a similar

 7   email thread that ran in parallel with AA concerning

 8   the Department of Corrections response to the May 14

 9   IPRA request.

10           THE COURT:  Any objection to Exhibit BB,

11   Ms. Armijo?

12           MS. ARMIJO:  No, Your Honor.

13           THE COURT:  Any other defendant have any

14   objection?

15           Not seeing or hearing any objection, Baca

16   Exhibit BB will be admitted for purposes of his new

17   trial motion.

18           (Defendant Baca Exhibit BB admitted.)

19           MR. LOWRY:  Your Honor, Defendant's

20   Exhibit CC is just a complete set of documents

21   regarding the destruction of the recreation yard

22   records on May 18, 2018.  It's the original receipt

23   and the transmittal paperwork.  It's a two-page

24   exhibit.

25           THE COURT:  Any objection to CC,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9205

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9206

```
 1   Ms. Armijo?

 2            MS. ARMIJO:  No, Your Honor.

 3            THE COURT:  Any other defendant?

 4            Not seeing or hearing any objection, Baca

 5   Exhibit CC will be admitted into evidence.

 6            (Defendant Baca Exhibit CC admitted.)

 7            MR. LOWRY:  And then, Your Honor, Exhibit

 8   DD is the FBI field notes from the initial meeting

 9   between Agent Acee and others and Lupe Urquizo.

10            THE COURT:  Any objection to DD,

11   Ms. Armijo?

12            MS. ARMIJO:  No, Your Honor.

13            THE COURT:  Any other defendant have any

14   objection?

15            Not seeing or hearing any objection, Baca

16   Exhibit DD will be admitted into evidence.

17            (Defendant Baca Exhibit DD admitted.)

18            MR. LOWRY:  And Your Honor, Defendant's

19   Exhibit EE is the 302 associated with that same

20   meeting.

21            THE COURT:  Any objection to EE,

22   Ms. Armijo?

23            MS. ARMIJO:  No, Your Honor.

24            THE COURT:  Any other defendant have any

25   objection?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9206

```
 1                Not seeing or hearing any objection, Baca
 2   Exhibit EE will be admitted for purposes of his new
 3   trial motion.
 4                (Defendant Baca Exhibit EE admitted.)
 5                THE COURT:  Any others, Mr. Lowry?
 6                MR. LOWRY:  That's it, Your Honor.  And
 7   again, just with the unilateral understanding that
 8   both parties can refer back to the trial transcripts
 9   in toto, as well as the exhibits tendered by both
10   parties during the trial.
11                THE COURT:  All right.  Do you have your
12   first witness, Mr. Lowry?
13                MR. LOWRY:  I do, Your Honor.  The defense
14   would like to call Leonor Delgado.
15                THE COURT:  Ms. Delgado, if you'll come up
16   and stand next to the witness box on my right, your
17   left, before you're seated, my courtroom deputy,
18   Ms. Bevel, will swear you in.
19
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9208

```
 1                    LEONOR DELGADO,

 2        after having been first duly sworn under oath,

 3        was questioned and testified as follows:

 4             THE COURT:  Ms. Delgado, Mr. Lowry.

 5             THE WITNESS:  Yes, sir.

 6             MR. LOWRY:  Thank you, Your Honor.

 7                   DIRECT EXAMINATION

 8   BY MR. LOWRY:

 9        Q.   Ms. Delgado, will you state and spell your

10   name for the court reporter, please?

11        A.   Leonor Delgado.  L-E-O-N-O-R,

12   D-E-L-G-A-D-O.

13        Q.   Ms. Delgado, how are you employed?

14        A.   I'm a licensed private investigator in the

15   state of New Mexico, and I'm employed by the

16   Rothstein Donatelli law firm.

17        Q.   Ms. Delgado, how long have you been an

18   investigator?

19        A.   Off and on since 1997.

20        Q.   In your capacity as an investigator, have

21   you had the opportunity to visit the Level 6

22   facility at the Penitentiary of New Mexico in

23   Santa Fe?

24        A.   I have.

25        Q.   And when was the last time you visited
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9208

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 9209

```
 1   that facility?

 2        A.   I was there last Thursday.  I want to say

 3   it was December 13th.

 4        Q.   Approximately what time did you arrive at

 5   the facility?

 6        A.   11:00 in the morning.

 7        Q.   And what was the purpose of your visit to

 8   the facility?

 9        A.   The purpose of my visit was to determine

10   whether I could see you in Q-106 of the prison

11   facility while standing in the rec yard.

12        Q.   Was there a specific rec yard unit you

13   were standing in?

14        A.   Yes, sir.

15        Q.   And which unit was that?

16        A.   That was directly across from Building Q.

17        Q.   Did that have a number associated with

18   that?

19        A.   Not that I recall.

20        Q.   Would it refresh your recollection to show

21   you one of the videos you shot that morning to

22   remember the recreation yard number?

23        A.   Yes, sir.

24             MR. LOWRY:  With the Court's permission,

25   may I play this video?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  You may.

 2              (Videotape played.)

 3   BY MR. LOWRY:

 4       Q.   Do you recall this video?

 5       A.   Yes, sir, I do.

 6       Q.   And who took this video?

 7       A.   I took the video.

 8       Q.   Having reviewed that video, do you recall

 9   seeing a number on the door, on the right-hand side

10   of the door?

11       A.   I did not see that in the video, but I did

12   take it.

13       Q.   Let's go back and look at it again.  May I

14   draw your attention to the right-hand side of the

15   door?

16       A.   I see it now.  Thank you.  It's number 1.

17       Q.   Now, how were you going to assess this

18   line-of-sight project?

19       A.   I needed to first establish that that was

20   the rec yard across from Building Q.  You were going

21   into the cell 106.  You were -- wound up indicating

22   through a guard that you were in the cell, and then

23   I needed to pan and focus in on that particular

24   window.

25       Q.   Did you use your -- the naked eye in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9210

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9211

```
 1    addition to a camera?
 2         A.   I did.
 3         Q.   And how could you tell when I was
 4    positioned in Q-106?
 5         A.   You were escorted by a guard while I was
 6    outside with someone with the administration.  Once
 7    you were in the cell, you radioed that you were
 8    in -- the guard radioed that you two were in the
 9    cell.
10         Q.   And at that time, were you able to see me
11    in cell Q-106 from recreation unit 1?
12         A.   I was not.
13         Q.   What other tools did you use to try to
14    enhance your vision into Q-106?
15         A.   I used the video camera and I used the
16    focus, the tight-focus lens on it.
17         Q.   Using any of those enhancements, were you
18    ever able to see into cell Q-106 from the recreation
19    unit 1?
20         A.   I was not.
21         Q.   And you took additional videos from the
22    interior of the recreational yard, did you not?
23         A.   I did.
24              MR. LOWRY:  Your Honor, I burned a compact
25    disc, two videos, which I've labeled for exhibit
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9211

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   252   Page: 9212

```
 1   purposes Defendant's Exhibit U and Defendant's
 2   Exhibit V, and I'd like at this point to play
 3   Defendant's Exhibit U for Ms. Delgado, if I may.
 4             THE COURT:  All right.  You may.
 5             MS. ARMIJO:  Just so we're clear, are
 6   these offered?  Because I was just handed that right
 7   as she was sitting, so I haven't had a chance to
 8   look at both videos.
 9             THE COURT:  Are you going to move their
10   admission?
11             MR. LOWRY:  I am, Your Honor.  I was going
12   to ask her to authenticate them as true and accurate
13   depictions of the video she took last Thursday.
14             THE COURT:  All right.  Let him lay a
15   foundation, and we'll see, before you use it, if you
16   have any objection.
17             All right, Mr. Lowry.
18   BY MR. LOWRY:
19        Q.   Mrs. Delgado, can you describe at the
20   beginning of this what we're looking at?
21        A.   We're looking at a wall which is the left
22   as you enter the area of the cage.
23        Q.   And what did you use to take this video?
24        A.   A hand-held video camera.
25        Q.   And who was operating the camera at all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9212

```
 1   times?

 2        A.   I was.

 3        Q.   Okay.  I'm going to play this clip.  It's

 4   a minute and 16 seconds.

 5             (Videotape played).

 6        Q.   Okay, Ms. Delgado, the whole video clip of

 7   a minute and 16 seconds ran.  Do you recognize this

 8   clip?

 9        A.   I do.

10        Q.   How do you recognize that?

11        A.   I took that video last Thursday on the

12   13th at PNM.

13        Q.   Does that fairly and accurately describe

14   the scene as you experienced it last Thursday?

15        A.   Yes, it does.

16             MR. LOWRY:  Your Honor, at this time I'd

17   like to move Defendant's Exhibit U in evidence.

18             THE COURT:  Any objection, Ms. Armijo?

19             MS. ARMIJO:  As long as it's being

20   admitted for how it appeared last Thursday, no

21   objection.

22             THE COURT:  All right.  I can't think it

23   would be any more.  You want me to make an inference

24   that it was the same.  But I'll admit it for being a

25   tape-recording that was made last week, or a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9213

```
 1    recording that was made last week.  All right.
 2            Is there any objection from any other
 3    defendant?
 4            Not hearing any, Baca Exhibit U will be
 5    admitted into evidence.
 6            (Defendant Baca Exhibit U admitted.)
 7    BY MR. LOWRY:
 8        Q.   Ms. Delgado, let me back this up.  We're
 9    looking at Defendant's Exhibit U at approximately 32
10    seconds into the video, and this is a still shot of
11    it.  Can you describe for the Court what we're
12    looking at here?
13        A.   I am in the rec area, looking -- the
14    camera is pointed through one, two layers of metal
15    screens facing cell dormitories on the other side.
16    There are windows, and the windows are covered with
17    plyboard.
18        Q.   Now, what housing unit is this that we're
19    looking at?
20        A.   Q.
21        Q.   And how could you tell?
22        A.   It's indicated in red on the building.
23        Q.   And could you tell the Court anything
24    about the particular windows in terms of what cell
25    they related to?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    There are six windows across the bottom,
 2   and each one is covered with plyboard, tilted to the
 3   side, and they're all on the other side of the two
 4   layers of wire mesh.
 5        Q.    Now, which window would have been Q-106?
 6        A.    It would be the lower level, six windows
 7   from the right.
 8        Q.    The right being the right of this
 9   photograph as you look at it?
10        A.    Yes, sir.
11        Q.    So for the Court's edification, this would
12   be Q-101, that very first piece of plywood we see on
13   the right-hand side?
14              MS. ARMIJO:  I'm sorry, I can't see.  Did
15   you mark?
16              MR. LOWRY:  No, I didn't.  I can't get the
17   marker up.
18   BY MR. LOWRY:
19        Q.    I apologize that there are no screens
20   available, but on the right of this is Q-101?
21        A.    Yes.
22        Q.    And the next window over is Q-102?
23        A.    Yes, sir.
24        Q.    And as you pan over, could you tell the
25   Court where Q-106 would be from that vantage point?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   It would be beyond what I now know to be a

 2   guard station booth, and it would be right behind

 3   that.

 4        Q.   Okay.  Were you able to use the windows at

 5   the top to orient where Q-106 would be?

 6        A.   I did not use that as a guide, no, sir.

 7        Q.   Could you?

 8        A.   Yes, sir.

 9        Q.   So where on this still shot -- and this is

10   at 41 seconds into the video -- would Q-106 be?

11        A.   I would -- looking at the screen, to your

12   left you have one, two, and three support beams.

13   And it would be in between the second and third

14   support beams.

15        Q.   Could you actually see the window at all

16   from that vantage point?

17        A.   I could see the window, yes, sir.

18        Q.   Wait.  On this particular still shot, can

19   you see?

20        A.   No.  No, sir, not on this particular shot.

21        Q.   But as you moved throughout the recreation

22   yard, could you see the window?

23        A.   I could see the window covered with

24   plyboard, yes.

25        Q.   Could you ever see into the room?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9216

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9217

```
 1        A.   I could not.

 2        Q.   And could you ever see any human

 3   silhouette inside the room?

 4        A.   No, sir.

 5             MR. LOWRY:  And Your Honor, I'm going to

 6   move to the next video clip which, again, is an

 7   equally short clip.  And this for identification

 8   purposes will be Defendant's Exhibit V.  And this

 9   clip is two minutes and nine seconds.

10             (Videotape played.)

11        Q.   And how does this video clip begin?

12        A.   It begins with me being in the rec yard.

13   I am starting from the right side, being the first

14   window is Q-101, and then panning left.

15             (Videotape played.)

16        Q.   Ms. Delgado, in this two-minute-and-nine-

17   second video, do you recognize that?

18        A.   I do.

19        Q.   How do you recognize that?

20        A.   I took that video on Thursday, December

21   13th, on a hand-held video.

22        Q.   And this fairly and accurately represents

23   the video that you shot last Thursday at

24   approximately 11:00 a.m.?

25        A.   It does.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  Your Honor, at this time the
 2    defense would move Exhibit V into evidence.
 3              THE COURT:  Any objection, Ms. Armijo?
 4              MS. ARMIJO:  No, none, other than if it's
 5    just representing that sort of day.
 6              THE COURT:  Well, it does represent.  I
 7    think Mr. Lowry wants me to draw the inference that
 8    nothing has been changed there, so I'm not going to
 9    limit what he can admit it for, but I think there
10    was an agreement that it was only showing last
11    Thursday.  I think there is agreement there.
12              So I'll admit Baca Exhibit V.  No
13    objection from any other defendants?
14              Not seeing or hearing any, the Court will
15    admit Exhibit V for purposes of Mr. Baca's new trial
16    motion.
17              (Defendant Baca Exhibit V admitted.)
18    BY MR. LOWRY:
19        Q.   Ms. Delgado, I've backed up Defendant's
20    Exhibit V to the one-minute mark.  Can you describe
21    to the Court what we're looking at right here?
22        A.   I'm standing in the rec yard, and I am
23    looking through -- the camera is pointed through the
24    first door that -- in the -- aligned with the mesh
25    netting that is used to enter the rec yard.  Then
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 9219

```
 1   beyond that is the guard's booth, which is also two

 2   walls, so another two levels of mesh.  And then

 3   finally, the window to Q-106.

 4        Q.   Is it -- pacing up and down the rec yard

 5   in recreation yard 1, how would you describe this

 6   vantage point in terms of being able to look into

 7   that window?

 8        A.   You are unable to see anything in that --

 9   beyond that window.

10        Q.   Was there any better vantage point within

11   the rec yard than this one?

12        A.   No, sir.

13        Q.   And even when you zoomed in just after the

14   one-minute mark, were you able to distinguish

15   anything within the cell?

16        A.   No, sir.

17        Q.   Was there any better vantage point in the

18   recreation yard than that one we just looked at?

19        A.   There was not.

20             MR. LOWRY:  May I have a moment, Your

21   Honor?

22             THE COURT:  You may.

23             MR. LOWRY:  No further questions, Your

24   Honor.

25             THE COURT:  Any other defendants?  I know
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9219

```
 1  there were some joinders on Mr. Baca's.  Ms. Jacks,
 2  you joined it?
 3            MS. JACKS:  I did.
 4            THE COURT:  Do you have any further
 5  questions?
 6            MS. JACKS:  I do not.
 7            THE COURT:  How about you, Ms. Bhalla?  Do
 8  you have further questions?
 9            MS. BHALLA:  No, Your Honor, thank you.
10            THE COURT:  Any other defendants?
11            All right.
12            Ms. Armijo, do you have cross-examination
13  of Ms. Delgado?
14                      CROSS-EXAMINATION
15  BY MS. ARMIJO:
16       Q.   Good afternoon, Ms. Delgado.  Now, you
17  took that at a time shortly before noon; is that
18  correct?
19       A.   Yes.  We arrived at the prison at 11:00
20  and then walked in.  We were escorted to the rec
21  yard, yeah.
22       Q.   And you can see at various points of the
23  video there that the sun is kind of coming down.  I
24  guess probably because of the position of where the
25  buildings are; is that correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9220

261

```
 1        A.   You can see the sun, yes.

 2        Q.   Okay.  Now, did you ever try going to see

 3   what it looks like later in the day when you didn't

 4   have the sun glaring?

 5        A.   I didn't return.

 6        Q.   I'm sorry?

 7        A.   I did not return back.

 8        Q.   Okay.  Because it might look a little bit

 9   different depending on the sun -- would you agree

10   with that -- if the windows are tinted?

11        A.   I can't agree with that.  I don't know.

12        Q.   Well, for instance, not there, but do you

13   have the experience, for instance, you know, windows

14   in my house are tinted, and depending the time of

15   days, sometimes the people walking in front of my

16   house can't see in at all, but other times, if

17   you're driving by, depending on the placement of the

18   sun, you can see right in.  Would you agree that,

19   just in general, with tinted windows, that depending

20   on how the sun is, and the sunlight, that at times

21   you could see in tinted windows more so than others,

22   just as a general proposition?

23        A.   I think it would depend on the tinting.  I

24   personally have my windows tinted in my car, and I

25   can't see in them at any time.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9222

1      Q.    Okay.  But it might depend on the tinting;

2   correct?

3      A.    Yes.

4      Q.    And so you cannot testify to any other

5   time of day that the windows would be -- look any

6   different depending on the sunlight; correct?

7      A.    I cannot.

8      Q.    And now, do you know when modifications

9   were made to that unit?

10      A.    I don't.

11      Q.    Okay.  And you cannot testify that -- what

12   is it -- U and V is an accurate representation of

13   how the rec yard was back in 2012?

14      A.    I cannot.

15      Q.    You cannot even testify that that's an

16   accurate representation from 2013.

17      A.    No, I cannot.

18      Q.    And did you take pictures reverse, where

19   you were in the unit and you were looking at Mr.

20   Lowry down in the rec yard?

21      A.    No, ma'am.

22      Q.    So you cannot testify what the person in

23   the unit was -- in the housing unit looking down at

24   the rec yard?

25      A.    I cannot.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9222

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 9223

```
 1      Q.   And where is the video of you trying to
 2  talk to Mr. Lowry?
 3      A.   I did not attempt to talk to Mr. Lowry.
 4      Q.   Okay.  So you did not attempt to say,
 5  "Hey, Marc, can you hear me?"
 6      A.   No, ma'am.
 7      Q.   So you cannot testify that someone in the
 8  rec yard could or could not talk to someone in 106?
 9      A.   I cannot.
10           MS. ARMIJO:  I believe that -- if I may
11  just have a moment, Your Honor?
12           THE COURT:  You may.
13           MS. ARMIJO:  That's all I have.  Thank
14  you.
15           THE COURT:  Thank you, Ms. Armijo.
16           Anyone else before Mr. Lowry who wants to
17  ask any questions of Ms. Delgado?
18           All right, Mr. Lowry, do you have redirect
19  of Ms. Delgado?
20           MR. LOWRY:  No, I don't, Your Honor.
21           THE COURT:  All right.  Ms. Delgado, you
22  may step down.
23           Is there any reason that she cannot be
24  excused from the proceedings, Ms. Armijo?
25           MS. ARMIJO:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9223

```
 1              THE COURT:  Mr. Lowry, can she be excused?

 2              MR. LOWRY:  She may, Your Honor.

 3              THE COURT:  Anybody else object?

 4              All right.  You're excused.  Thank you for

 5    your testimony.

 6              All right, Mr. Lowry, does Mr. Baca have

 7    his next witness or evidence?

 8              MR. LOWRY:  Yes, the defense would call

 9    Jim Brewster, general counsel for the Department of

10    Corrections.

11              THE COURT:  Mr. Brewster, if you'll come

12    up and stand next to the witness box on my right,

13    your left, before you are seated, my courtroom

14    deputy, Ms. Bevel, will swear you in.

15                   JAMES ROBERT BREWSTER,

16         after having been first duly sworn under oath,

17         was questioned and testified as follows:

18              THE COURT:  Mr. Brewster, Mr. Lowry.

19                   DIRECT EXAMINATION

20    BY MR. LOWRY:

21         Q.   Good afternoon, Mr. Brewster.

22         A.   Good afternoon.

23         Q.   Mr. Brewster, will you please state and

24    spell your name for the court reporter?

25         A.   My name is James Robert Brewster.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9224

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9225

1  B-R-E-W-S-T-E-R.

2       Q.   Mr. Brewster, how are you employed?

3       A.   I'm the general counsel for the New Mexico

4  Corrections Department.

5       Q.   And as quickly as you can, what are some

6  of your duties in the Office of General Counsel for

7  the Corrections Department?

8       A.   I provide day-to-day legal advice for

9  managers, primarily.  I'm also designated as the

10 custodian for public records requests.

11      Q.   And you understand that that's what brings

12 you here today?

13      A.   I do.

14      Q.   And Mr. Brewster, just so you know, the

15 parties have stipulated to the admission of the

16 exhibits today, so I'm going to try to move through

17 your testimony as quickly as we can, so you can get

18 home.

19           But Mr. Brewster, you're familiar with

20 defense counsel such as myself making requests of

21 your institution for records concerning their

22 clients?

23      A.   Yes.

24      Q.   And in fact, you've handled many such

25 requests in the context of this case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9225

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9226

266

```
 1        A.   I have.  And I haven't always known that
 2   they are related to this case.
 3        Q.   But even early on in 2016, you got a
 4   request from my office for contracts and such for
 5   the Lucky 8 Production Facility.  Do you recall
 6   that?
 7        A.   I do vaguely recall that, yes.
 8        Q.   So would that have been a typical request
 9   for somebody unaffiliated with this case to have
10   made?
11        A.   You know, I've gotten requests for that --
12   documents from all sorts of people, defense counsel,
13   reporters, various people.
14        Q.   But directing your attention to April of
15   this year, you're familiar with the IPRA request I
16   made to your office for recreational yard records
17   for Level 6?
18        A.   Yes, sir.
19        Q.   And in fact, your office -- you understand
20   that that request was for recreational records from
21   September of 2011 to September 2012?
22        A.   That's correct.
23        Q.   And your office was able to respond to
24   that request with a production of documents related
25   to that year?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9227

```
 1          A.   Yes.

 2          Q.   Mr. Brewster, I'm showing you what's

 3   marked as Defendant's Exhibit Y.  Are you familiar

 4   with this document?

 5          A.   Yes, I'm familiar with it.

 6          Q.   And this would be one of the records that

 7   your office disclosed to my office through that IPRA

 8   request of April 17, 2018?

 9          A.   That's correct.

10          Q.   And this document -- you can see

11   Defendant's Exhibit Y is from September 12, 2012;

12   correct?

13          A.   That's correct.

14          Q.   And this sort of runs through what the

15   staff requirements are when people move from their

16   housing unit into the recreation yard 3, which is

17   the list at the top; correct?

18          A.   I believe that's correct, yes.

19          Q.   And one of the things you typically see

20   when inmates are transferred from their holding cell

21   into the recreational yard to exercise is, you know,

22   all manner of standard operating procedures for

23   correctional officers to follow; right?

24          A.   Yes, sir.  This is a typical form.

25          Q.   And as part of that typical form, it has a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9227

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9228

268

```
 1   whole section that's entitled "The control of

 2   inmates," doesn't it?

 3        A.   Yes, it does.

 4        Q.   And it requires under "The control of

 5   inmates" that all inmates entering and leaving the

 6   unit are to be searched; correct?

 7        A.   That's what the form says, yes.

 8        Q.   And it even requires inmates to be patted

 9   down?

10        A.   Yes, it says that.

11        Q.   And this is typical for the Level 6 area?

12        A.   It is.

13        Q.   Moving on to the second page of

14   Defendant's Exhibit Y, you would agree with me,

15   wouldn't you, that this would give you sort of the

16   overview of the movement of inmates into the yard

17   from individual housing units, pods?

18        A.   Yes.

19        Q.   And so when you look at a form like this,

20   you can tell exactly when, like, for instance, this

21   says it's 6:10 a.m., "HU 3A yard turnout begins."

22   Did I read that correctly?

23        A.   Yes.

24        Q.   And would you agree with me that reflects

25   when the guards bring inmates from housing unit 3A
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9229

```
 1   from their cells into the rec yard?

 2        A.   I believe that's correct.

 3        Q.   Then the next line down, just for an

 4   example, it would say from 7:12 a.m. to 7:27 HU 3A

 5   yard turn-in begins, meaning the guards would take

 6   inmates from the recreational yard back indoors to

 7   their holding cells?

 8        A.   That's correct.

 9        Q.   And by keeping records like this, you can

10   sort of monitor the flow of inmates in and out of

11   the recreation yard day in and day out?

12        A.   I think that's accurate.

13        Q.   On the third page of Defendant's Exhibit Y

14   we're looking at, you would agree with me that on

15   this date, September 12, 2012, it reflects that a

16   Mr. Urquizo, Department of Correction number 50572,

17   who resided in cell V-107, used recreation pen

18   number 1 from 10:14 a.m. to 11:00 a.m.

19        A.   That's correct.

20        Q.   And he was escorted by an individual

21   officer, Officer Torres, as reflected by this

22   document; correct?

23        A.   That's what the form says, yes, sir.

24        Q.   And it's interesting to note -- I mean,

25   you see, like, people, the inmates that are in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9229

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    270  Page: 9230

```
 1   different recreational units, they're all escorted
 2   out by different individuals?
 3        A.   Yes.  I do see some of the names repeat,
 4   but yes.
 5        Q.   But does that tell you, as the general
 6   counsel, that these inmates are brought out one by
 7   one to the rec yard?
 8        A.   I'm not really sure I could tell you how
 9   they're brought out to the rec yard.  That's not
10   something that I deal with on a daily basis.
11        Q.   But you would agree with me that this
12   accurately reflects the records that are in your
13   possession that we requested from that date range
14   from September 2011 to September 2012?
15        A.   Yes, all three of these documents you've
16   shown me I produced to you.
17        Q.   And in fairness, there were a lot more
18   than these three; there are hundreds.
19        A.   Correct.
20        Q.   Now, you produced these recreation yard
21   records for that year in question, 2011 to 2012, on
22   May 10th, 2018, to my office; correct?
23        A.   That's correct.
24        Q.   And you did that via email?
25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And because no good deed goes unpunished,
 2   that precipitated a second request four days later
 3   from my office?
 4        A.   Indeed it did.
 5        Q.   And that request covered the years from
 6   September 2012 to September 2014?
 7        A.   That's correct.
 8        Q.   Now, what happened with that request?
 9        A.   The second request we checked on and were
10   led to understand that the documents had already
11   been destroyed, so we couldn't produce any documents
12   for you.
13        Q.   Okay.  And you responded to my office, in
14   fact, just that, that on -- I believe it was on the
15   afternoon of May 16, you responded to my office that
16   you didn't have any records related to those later
17   years?
18        A.   That's correct.
19        Q.   And not surprisingly, the response from my
20   office was a little bit dumbfounded, and it said,
21   "Wait a second.  We just got a year earlier.  What's
22   going on," to that effect?
23        A.   Yes.
24        Q.   And why did you believe that documents
25   didn't exist for the latter year on May 16?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9231

1    A.   Because my office had been in phone

2  conversations with the institution, and it was our

3  understanding after talking with the institution

4  that the records had been set up and already

5  scheduled for and already gone through destruction.

6    Q.   So on May 16, you believed that these

7  records had been, in fact, destroyed already?

8    A.   That's correct.

9    Q.   But that wasn't true, was it?

10   A.   That's correct.  It wasn't true.

11   Q.   They were actually in a warehouse on the

12  grounds of the penitentiary?

13   A.   They were apparently in line to be

14  destroyed, but they weren't destroyed until the

15  18th.

16   Q.   But you had no idea they were there?

17   A.   I had no idea they were there, based on

18  our conversations.

19   Q.   Now, you would agree with me that the same

20  officer who communicated with Daniel Salazar had

21  just turned over to you -- and I'm looking at

22  Defendant's Exhibit X here -- an email.  He had just

23  disclosed a lot of attachments related to that

24  earlier request that we made from 2011 to 2012?

25   A.   That's correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   273   Page: 9233

```
 1        Q.    And he had done that on -- this is dated
 2   May 9th, but he says he's going to provide them to
 3   you the next day, May 10th.
 4        A.    That's correct.
 5        Q.    And that's when you provided them to me?
 6        A.    Yes, sir, by Dropbox.
 7        Q.    And then by the 16th, when you asked him,
 8   "Hey, we got another request," he tells you they're
 9   gone, they're destroyed?
10        A.    That's my understanding of what he said,
11   yes.
12        Q.    And you didn't -- in fairness, you
13   literally took that at face value?
14        A.    Yes.
15        Q.    And you didn't do any follow-up requests
16   saying, "Hey, we just got hundreds of documents for
17   the previous years; when did these get destroyed?"
18        A.    No, we didn't follow up.  I didn't see a
19   need to.
20        Q.    And when my office requested on the very
21   next day after your office telling us there was
22   nothing remaining, we sent you a preservation
23   request on May 17?
24        A.    Yes, you did.
25        Q.    And in fact, when we sent that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9233

```
 1   preservation request, those documents were still on
 2   the grounds in the PNM North, weren't they?
 3        A.   They were still on the ground, but we
 4   didn't think they were.
 5        Q.   Okay.  You didn't think they were.
 6        A.   That's correct.
 7        Q.   Because you had been misinformed?
 8        A.   Either we had been misinformed or we
 9   misunderstood.  As far as I know, we were -- my
10   paralegal talked to the institution and they said
11   those documents had been destroyed.  I guess there
12   is a slight possibility she misunderstood that, but
13   I don't know that for sure.
14        Q.   Well, I mean, she actually emailed to me
15   and said that they had been destroyed.
16        A.   Correct.
17        Q.   Past tense.
18        A.   Correct.
19        Q.   In fairness, you review all of her
20   correspondence that goes out to opposing counsel
21   like me?
22        A.   I do, yes.
23        Q.   So you shared that view, that the
24   documents that I had sought to be preserved had been
25   destroyed, in the past tense?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9234

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    275   Page: 9235

1      A.    Yes.

2      Q.    But again, in reality, they were sitting

3  in PNM in the warehouse?

4      A.    Yes, that's correct.

5      Q.    Because you believed the documents had

6  been destroyed, you didn't do anything with the

7  preservation request, like forward it to Level 6 or

8  forward it to any of the records -- the secondary

9  records custodians, if you will, on the grounds?

10     A.    That's correct.

11     Q.    And then it wasn't until I sent yet a

12 third IPRA request that you came across documents

13 that indicated that these records had actually been

14 destroyed on May 18?

15     A.    Yes, I saw the destruction notice.  It was

16 dated May 18.

17     Q.    And in fairness, that's just the date they

18 were picked up by the document destruction company?

19     A.    I assume that's the date they were picked

20 up, and destroyed on that same day.  But I mean, I

21 wasn't physically with them when they destroyed

22 them.  But that's my assumption, yes.

23     Q.    Well, you provided me with what's marked

24 as Defendant's Exhibit CC.  I mean, you do recognize

25 this document, don't you?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.

 2        Q.   And this was the receipt for the

 3   destruction of these materials?

 4        A.   Yes, sir.

 5        Q.   And if you look at the fine print or

 6   not-so-fine print at the bottom of this, actually

 7   Adelante Document Destruction Services certified

 8   that these documents will be confidentially handled

 9   and completely destroyed beyond recognition within

10   three business days of May 18, 2018?

11        A.   Correct.

12        Q.   So Defendant's Exhibit CC really reflects

13   the day that these 301 banker's boxes of recreation

14   yard and other records from the State Pen were

15   picked up by Adelante Document Destruction Services;

16   correct?

17        A.   That's what the document indicates, yes.

18        Q.   So they could have existed for a period of

19   up to three days after that, if this company abided

20   by the language in this document?

21        A.   Correct.

22             MR. LOWRY:  One moment, Your Honor.

23             THE COURT:  Certainly.

24             MR. LOWRY:  No further questions, Your

25   Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   277   Page: 9237

```
 1              THE COURT:  All right.  Thank you, Mr.
 2   Lowry.
 3              Any other defendant have any questions of
 4   Mr. Brewster?
 5              All right, Ms. Armijo, do you have
 6   cross-examination of Mr. Brewster?
 7              MS. ARMIJO:  Yes, Your Honor.
 8                    CROSS-EXAMINATION
 9   BY MS. ARMIJO:
10        Q.   Good afternoon, Mr. Brewster.
11        A.   Good afternoon.
12              MS. ARMIJO:  Your Honor, at this time the
13   United States would like to move into evidence
14   Government's Exhibit 1 for purposes of this motion,
15   which is Mr. Brewster's affidavit.  It was attached.
16              THE COURT:  Any objection, Mr. Lowry?
17              MR. LOWRY:  No, Your Honor.
18              THE COURT:  Any other defendant have an
19   objection?
20              Not hearing or seeing an objection,
21   Government's Exhibit 1 for purposes of Mr. Baca's
22   new trial motion will be admitted into evidence.
23              (Government Exhibit 1 admitted.)
24              THE COURT:  Ms. Armijo.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9237

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9238

```
 1   BY MS. ARMIJO:
 2        Q.   Mr. Brewster, I have up on the screen the
 3   affidavit.  It says "Affidavit of James Brewster."
 4   Are you familiar with this item?
 5        A.   Yes, I am.
 6        Q.   Did you actually write this item?
 7        A.   Yes, I did.
 8        Q.   And was it at the request of the United
 9   States Attorney's Office, in reference to the motion
10   that we're here on today, that you're testifying
11   about?
12        A.   Yes, it was.
13        Q.   And is everything correct to the best of
14   your recollection on this document as to the three
15   different IPRA requests that Mr. Lowry made after
16   the conclusion of the trial of Mr. Baca?
17        A.   It's accurate, yes, ma'am.
18        Q.   Now, what is the policy -- just so that
19   we're clear, what is the policy for the retention of
20   the records that Mr. Lowry was seeking?
21        A.   Well, there is a statute, and our policy
22   normally follows the statute.  And under the
23   regulation, I call it -- it's not really a
24   statute -- it says that documents, rec yard --
25   recreation documents of inmates can be destroyed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9238

 1   within three years after they're created, basically.

 2   And so the policy would have been normally to be

 3   able to destroy those documents after three years.

 4        Q.   And in reference to the ones that -- the

 5   second IPRA request, the ones that you had believed

 6   were already destroyed, what was the date of that

 7   request for those records?

 8        A.   I believe that was in the middle of May of

 9   2018.  I don't recall the exact date.  I think it

10   may have been either the 14th or 16th.  I'm not sure

11   which.

12        Q.   All right.  And I'm going to page 2 of

13   exhibit --

14             THE COURT:  Ms. Armijo, I've got to give

15   Ms. Bean a break.  Can we take about a 15-minute

16   break and we'll come back in and work about an hour?

17             MS. ARMIJO:  Certainly, Your Honor.

18             THE COURT:  All right.  We'll be in recess

19   about 15 minutes, and then we'll put in another

20   hour.

21             (The Court stood in recess.)

22             THE COURT:  Let's go back on the record.

23             All right, Mr. Brewster, I'll remind you

24   that you're still under oath.

25             Ms. Armijo, if you wish to continue your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9239

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9240

1   cross-examination of Mr. Brewster, you may do so at

2   this time.

3   BY MS. ARMIJO:

4       Q.   All right, Mr. Brewster, I think we were

5   talking about -- I was referring to page 2 of

6   Exhibit Number 1 for purposes of this motion, and

7   there is a second IPRA request that is from

8   9/14/2012 to 3/6/2014; correct?

9       A.   That's correct.

10      Q.   And that is the one that, here, your

11  office had received word that they were already

12  destroyed; correct?

13      A.   That's correct.

14      Q.   And so if the request was in May of 2018

15  and the date was -- this is making me dizzy,

16  sorry -- March of 2014, the destruction would have

17  been already expected or at least already allowed to

18  have been done; correct?

19      A.   Yes.   All of those documents were eligible

20  for destruction under the regulation.

21      Q.   And I believe the line that you used was

22  "in line to be destroyed."   Can you explain to us

23  the process for the destruction?

24      A.   My general understanding of it is that we

25  have a contract with various companies that destroy

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   documents.  Each facility utilizes a destruction

 2   company when they need to destroy documents, and so

 3   they reach out to them under that contract and make

 4   arrangements for them to come by and pick up

 5   documents for destruction.

 6        Q.   And so in May of 2018, have the records at

 7   issue already been in line to be destroyed?

 8        A.   Yes, that's my understanding.  They were

 9   already in line to be destroyed.

10        Q.   And in addition to that, what was the

11   condition of the boxes and where they were being

12   kept?

13        A.   My understanding, based on discussions

14   with personnel over at the facility was that the

15   boxes were not in good shape, and the room that they

16   were in, there were, you know, animal droppings,

17   probably mice or rat droppings, and urine, and it

18   was not a good environment to keep the boxes in

19   there.  And that was another reason I think they

20   were looking to move to get them out of there.

21        Q.   Now, you also received a third IPRA

22   request from Mr. Lowry's office after the second one

23   was responded to; correct?

24        A.   That's correct.

25        Q.   And as part of that, was part of that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9241

```
 1  request whether or not you had been in communication
 2  with the U.S. Attorney's Office about destruction of
 3  any records?
 4       A.   Yes, that was a part of it.
 5       Q.   And what was the response to that?
 6       A.   The response was:  There had been no
 7  communications, there had been no directions or
 8  suggestions or anything else from your office
 9  telling me to destroy those documents.
10       Q.   And in fact, were you aware that the
11  prosecution team was during this time period in the
12  second trial in this investigation?
13       A.   Yes, I'm aware that you continued on in
14  the second trial at that point, yes.
15       Q.   And was there any direction or any
16  communication by your office to our office about the
17  ongoing IPRA request by Mr. Lowry during this time
18  period?
19       A.   There was not.
20       Q.   You were also asked about --
21            MS. ARMIJO:  Mr. Lowry, do you have the
22  documents, your exhibits?
23       Q.   You were also asked about I believe it is
24  Y.  Do you recall being asked questions about this
25  document?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9242

1      A.   Yes, I do.

2      Q.   And specifically the second page of that.

3  Hold on.  The third page.  My mistake.  Which has

4  the times that people go out; correct?

5      A.   That's correct.

6      Q.   And you indicated that you saw some of the

7  names repeated; is that correct?

8      A.   Yes.

9      Q.   For instance, I see Torres taking Urquizo

10  at 10:14, and Torres taking another inmate at 10:19;

11  is that correct?

12      A.   Yes, ma'am.  That's correct.

13      Q.   And so would that mean that all of these

14  individuals could have potentially been out there at

15  the same time but within different rec cages?

16      A.   I believe it is possible.  I don't really

17  know how they do that, sitting here today.  I'm not

18  familiar with that.

19      Q.   Okay.  So although you can testify that

20  these are records that are kept in the normal course

21  of business for Corrections, you cannot really tell

22  us what it means as far as if the inmates were out

23  together or how it's handled?

24      A.   I can't tell you how they do that.  That's

25  not something that I'm involved in.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And although it says findings here, these
 2   things are checked, you have no way of knowing how
 3   thorough a job each officer is in filling out and in
 4   doing each of these with each inmate; correct?
 5        A.   I don't have any way of knowing that for
 6   certain.  That's correct.
 7             MS. ARMIJO:  If I may have a moment, Your
 8   Honor.
 9             THE COURT:  You may.
10             MS. ARMIJO:  Thank you.  I pass the
11   witness.
12             THE COURT:  Thank you, Ms. Armijo.
13             Any other defendant have any redirect of
14   Mr. Brewster?
15             Not seeing any, Mr. Lowry, do you have
16   redirect of Mr. Brewster?
17             MR. LOWRY:  Just very briefly, Your Honor.
18             THE COURT:  Mr. Lowry.
19                   REDIRECT EXAMINATION
20   BY MR. LOWRY:
21        Q.   Mr. Brewster, you testified at the first
22   trial in this case, didn't you?
23        A.   I did.
24        Q.   And I take it that over the course of this
25   investigation at various points, you've been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9244

```
 1   involved with almost everyone involved in the case?

 2        A.   I mean, I'm familiar generally with the

 3   people involved in the case, not necessarily by

 4   knowing their names, but having seen them in the

 5   courtroom, that sort of thing.

 6        Q.   Right.  But you knew that there was

 7   litigation going on with regard to this case because

 8   you'd actually participated in it?

 9        A.   Yes.

10        Q.   And regardless of how long a document has

11   been warehoused at the penitentiary, if somebody

12   makes a request for it and you have it, in the

13   typical course of business you're going to provide

14   it to them?

15        A.   I'm going to provide it unless there is

16   some exception or exemption under the State Records

17   Act that would allow me or basically mandate me not

18   to provide it, yes.

19             MR. LOWRY:  No further questions, Your

20   Honor.

21             THE COURT:  Thank you, Mr. Lowry.

22             All right, Mr. Brewster, you may step

23   down.

24             Is there any reason Mr. Brewster cannot be

25   excused from the proceedings, Ms. Armijo?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9245

```
 1              MS. ARMIJO:  No, Your Honor.

 2              THE COURT:  Mr. Lowry?

 3              MR. LOWRY:  No, Your Honor.

 4              THE COURT:  Any other defendants object?

 5              Not seeing any objections, you're excused

 6    from the proceedings.  Thank you for your testimony.

 7              Do you have further witnesses or evidence

 8    you wish to present, Mr. Lowry?

 9              MR. LOWRY:  I don't, Your Honor.

10              THE COURT:  Ms. Armijo, do you have

11    witnesses or evidence to present?

12              MS. ARMIJO:  I do, Your Honor.  Before I

13    call witnesses, Your Honor, I'm going to move some

14    items into evidence.

15              THE COURT:  You may.

16              MS. ARMIJO:  I believe without objection,

17    Exhibits 2, 3, 4, 5, 6, and 7 are all additional

18    debriefs of Lupe Urquizo.

19              THE COURT:  And you're moving their

20    admission?

21              MS. ARMIJO:  Yes, Your Honor.

22              THE COURT:  Any objection, Mr. Lowry?

23              MR. LOWRY:  No, Your Honor.  I believe

24    that's part --

25              THE COURT:  Anyone else have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9247

```
 1   objections?  Any other defendant?
 2          Not seeing or hearing any, Government's
 3   Exhibits 2, 3, 4, 5, 6, and 7.  Government's
 4   Exhibits.  Those numbers will be admitted into
 5   evidence for purposes of Mr. Baca's new trial
 6   motion.
 7          (Government Exhibits 2 through 7
 8   admitted.)
 9          THE COURT:  Ms. Armijo.
10          MS. ARMIJO:  The United States is going to
11   call Sergio Sapien to testify.  I believe he's on
12   his way in.
13          THE COURT:  Mr. Sapien, if you'll come up
14   and stand next to the witness box on my right, your
15   left, before you're seated, my courtroom deputy,
16   Ms. Bevel, will swear you in.
17          THE WITNESS:  Yes, sir.
18                  SERGIO SAPIEN,
19      after having been first duly sworn under oath,
20      was questioned and testified as follows:
21          THE COURT:  Mr. Sapien, Ms. Armijo.
22                DIRECT EXAMINATION
23   BY MS. ARMIJO:
24      Q.   Can you please state your name.
25      A.   Sergio Sapien.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9247

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9248

```
 1        Q.    How are you employed?

 2        A.    With the New Mexico Corrections

 3   Department, Security Threat Intelligence Unit.

 4        Q.    How long have you worked for the

 5   Corrections Department?

 6        A.    Almost 19 years.

 7        Q.    And what is your current title?

 8        A.    Security Threat Intelligence Unit captain

 9   at the Penitentiary of New Mexico.

10             MS. ARMIJO:  And Your Honor, I'm also

11   going to move into evidence Exhibit Number 8, which

12   is the North facility.

13             THE COURT:  Any objection, Mr. Lowry?

14             MR. LOWRY:  May I see it?  No.

15             THE COURT:  No objection, Mr. Lowry?

16             MR. LOWRY:  No, Your Honor.

17             THE COURT:  Anybody else?  Any defendant?

18             Not seeing or hearing any, Government's

19   Exhibit 8 will be admitted for purposes of Mr.

20   Baca's new trial motion.

21             (Government Exhibit 8 admitted.)

22             THE COURT:  Ms. Armijo.

23   BY MS. ARMIJO:

24        Q.    Captain, now, the Security Threat

25   Intelligence Unit -- is that more commonly known as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9248

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9249

```
 1   STIU?

 2        A.   Yes, ma'am.

 3        Q.   And what primarily are your duties with

 4   that?

 5        A.   Monitoring, documenting gang-type activity

 6   within the prison system.  Ending security threats

 7   to the facility or its staff we deal with.

 8        Q.   And you mentioned you've been with

 9   Corrections for 19 years.  What are the different

10   positions you have held during that time period?

11        A.   Correctional officer, correctional officer

12   sergeant, correctional officer lieutenant.

13        Q.   And then what about since being with STIU?

14        A.   Captain.

15        Q.   And I want to go back to approximately

16   2011, 2012.  What was your position at that time?

17        A.   I believe I was the lieutenant at the

18   time.

19        Q.   And where were you assigned?

20        A.   For a moment, approximately a year, I was

21   the housing unit 3 lieutenant at the North facility.

22        Q.   And just so that we're clear, the North

23   facility is part of PNM?

24        A.   Yes, ma'am.

25        Q.   And I have displayed up Exhibit Number 8.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9249

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   290   Page: 9250

 1   Maybe I should do it this way.  How is that -- is

 2   that better?  What is it that we're looking at?

 3        A.   An aerial view of the North facility at

 4   PNM.

 5        Q.   And do you see there an area which would

 6   include Q?

 7        A.   Q pod, yes, ma'am.

 8        Q.   And where is that?  And you should be able

 9   to touch your screen.

10        A.   Okay, Q pod should be right here.

11        Q.   Okay.  And so you have a little dot on the

12   left side of the screen there; is that correct?

13        A.   Here, I could -- this would be Q pod.

14        Q.   And what pod is next to it?

15        A.   R pod.

16        Q.   And then -- okay.  And so is this -- to

17   the left of where you drew, is that R pod?

18        A.   Yes, ma'am.

19        Q.   And then what other pods are in that same

20   facility?

21        A.   In that same unit is S and T pods.

22        Q.   Okay.  And can you tell us a little bit

23   about how during -- I'm looking at a time period,

24   2011, 2012, around -- what the system was for

25   recreation?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9250

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9251

```
 1        A.    As far as inmates from housing unit 3?

 2        Q.    Yes.

 3        A.    They're allowed an hour outside recreation

 4   time in those cages right there on the photograph.

 5        Q.    Now, are you familiar with Anthony Baca?

 6        A.    Yes, ma'am.

 7        Q.    How so?

 8        A.    He was --

 9              MR. LOWRY:  Your Honor, this is beyond the

10   scope of -- pardon me.

11              THE COURT:  Well, I think it's Mr. Baca's

12   new trial motion.  Let me see what her questions

13   are.  I think this question is within the scope.

14   Overruled.

15   BY MS. ARMIJO:

16        Q.    Did you have a chance -- did I send you

17   and ask you questions about the location histories

18   of Mr. Baca and Mr. Urquizo?

19        A.    Yes.

20        Q.    And was that part in being able to respond

21   to the motion for which you're here to testify?

22        A.    Yes, ma'am.

23        Q.    And are you familiar with location

24   histories and how they work?

25        A.    Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  And Your Honor, at this time
 2    I'd like to move into evidence -- I think I'm on 9
 3    and 10.  Mr. Baca's is going to be 9 and Mr.
 4    Urquizo's location history will be 10.
 5              THE COURT:  Any objection, Mr. Lowry?
 6              MR. LOWRY:  No, Your Honor.  I think
 7    they've already been admitted at trial.
 8              THE COURT:  At trial?  All right.  Any
 9    other defendant have any objection?
10              All right.  Not hearing any, Government's
11    Exhibits 9 and 10 will be admitted for purposes of
12    Mr. Baca's new trial motion.
13              (Government Exhibits 9 and 10 admitted.)
14    BY MS. ARMIJO:
15        Q.   And so as part of captain of the STIU, are
16    you familiar with those two individuals?
17        A.   Yes, ma'am.
18        Q.   And do you know them to be at one time or
19    currently SNM Gang members?
20        A.   Yes.
21        Q.   What is Mr. Baca's position in the SNM
22    Gang?
23        A.   High-ranking.
24              MR. LOWRY:  Objection, Your Honor,
25    relevance.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9252

```
 1              THE COURT:  Tell me how it's relevant.
 2   BY MS. ARMIJO:
 3       Q.    In your experience and communication --
 4              THE COURT:  Let's see what the new
 5   question is.
 6       Q.    In your experience and communications with
 7   people who are housed in a housing unit with inmates
 8   that are in the rec yard, does it make a difference
 9   if someone is a leader within a gang and how they
10   are treated by other members and how they
11   communicate?
12       A.    Yes.
13       Q.    And how do you have that experience?  Have
14   you seen that?
15       A.    In reference to the recreation yard and
16   the housing units?
17       Q.    Yes.
18       A.    If we have a high-ranking individual or a
19   more respected individual in either Q or R pods, any
20   time members of that particular organization are out
21   in the yard, they're going to pay their respects to
22   that individual.
23       Q.    How do they do that?
24       A.    Either coming out or going in, they'll
25   say, "Good morning," "Good afternoon," whatever,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   just to ensure that they're saying, "Hi," paying

 2   respects.

 3        Q.   And are you aware of whether Mr. Baca

 4   would be in that category that inmates would pay

 5   respect to when they're on the recreational yard if

 6   he is inside?

 7        A.   Yes, ma'am.

 8        Q.   Now, did you have a chance to look at

 9   where Mr. Baca and Mr. Urquizo were housed during

10   2011 and 2012?

11        A.   I did, but it's been a while.

12        Q.   Okay.

13             MS. ARMIJO:  May I approach the witness,

14   Your Honor?

15             THE COURT:  You may.

16   BY MS. ARMIJO:

17        Q.   Now, with those two documents in front of

18   you, I'm going to ask you a couple of questions.

19   Was Mr. Baca housed in N 3B X 112 from May 12, 2011,

20   through February 11, 2012?

21        A.   May through -- I'm sorry?

22        Q.   May 2011 through February 27, 2012.  And

23   maybe another way for me to do it would be to put it

24   on the screen and I can point.

25        A.   I'm sorry, I was looking at the wrong one.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9254

```
 1   I apologize.
 2        Q.   All right.  Showing you Exhibit Number
 3   9 -- I can't clear it.  All right.  I'm looking
 4   right here.  Can you see May 12, 2011, to 2/27/2012?
 5        A.   Yes, ma'am.
 6        Q.   And where does it appear that Mr. Baca is?
 7        A.   3B X 112.  That would be the North
 8   facility.
 9        Q.   Okay.  Then I'm also going to put up here
10   Exhibit Number 10, which you can see is Mr. Urquizo;
11   is that correct?
12        A.   Yes, ma'am.
13        Q.   Are you familiar with who Mr. Urquizo is?
14        A.   Yes, ma'am.
15        Q.   And back in 2011, 2012, 2013, was he an
16   SNM Gang member?
17        A.   Yes, ma'am.
18        Q.   Okay.  And then looking at September 12,
19   2011, here we go, do you see here 2012, 2011?
20        A.   Yes.
21        Q.   And what housing unit was he there?
22        A.   3B V 107.
23        Q.   Now, is 3B all the same building?
24        A.   Yes, ma'am.
25        Q.   And so when people from -- even though
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9256

1  they're in different pods, when they are in

2  recreation, where do they do rec?

3       A.   They all rec at the same -- those same

4  cages right there, located, yes, ma'am.

5       Q.   Okay.  So in Government's Exhibit 8 I'm

6  showing the cages there; is that correct?

7       A.   Yes.

8       Q.   Okay.  So even though they're in different

9  housing pods, if they're in the same building, they

10  still do recreation there?

11       A.   Yes, ma'am.

12       Q.   Now, I'm going to go to a time period when

13  Mr. Baca -- I'm going to show it up here again --

14  was housed in Q-106.  Do you see that?

15       A.   Yes.

16       Q.   So that would appear from February 27,

17  2012, to June 29, 2012?

18       A.   Um-hum.

19       Q.   And that is Q-106?

20       A.   Yes, ma'am.

21       Q.   Okay.  Going to Exhibit 8, was that the

22  unit that you were referring to earlier which is

23  near the rec area?

24       A.   Yes.

25       Q.   So during that time period, are you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9256

```
 1   familiar with where Q-106 was located?
 2        A.   Yes, ma'am.
 3        Q.   And are inmates who are doing recreation
 4   in general -- are they able to communicate with
 5   inmates who are housed in Q-106?
 6        A.   Yes, ma'am.
 7        Q.   And how is that possible?
 8        A.   They can do hand signals; they yell; talk
 9   back and forth.
10        Q.   Okay.  And you say they yell back and
11   forth?
12        A.   Yes, ma'am.
13        Q.   So they can carry on a conversation?
14        A.   Yes, ma'am.
15        Q.   And have you seen that during your time
16   working there?
17        A.   Yes, ma'am.
18        Q.   And is it still possible to do today?
19        A.   It still happens today.
20        Q.   And are you aware -- you said hand
21   signals.  Tell us about that.
22        A.   Just like sign language type signals, the
23   best I can explain it.
24        Q.   Now, did you have an opportunity to see a
25   video?  Were you aware of the fact that Mr. Lowry
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9257

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020   Page: 9258

```
 1   was there with his investigator -- and I say
 2   "there," at the North facility this past Thursday?
 3        A.   Yes, ma'am.
 4        Q.   And did you have an opportunity during the
 5   break -- did I show you two video clips?
 6        A.   Yes, ma'am.
 7        Q.   In looking at the video clips, is that an
 8   accurate representation of how a person can actually
 9   see or not see into the cells?
10        A.   I would think -- I mean, in my opinion,
11   it's a little different.  And what I can relate it
12   to is, if I'm taking a picture of a landscape with
13   my cellphone that I like, I'm looking at it, looks
14   really nice, and I take a picture.  For instance,
15   the moon.  It's big and out one day.  I take a
16   picture on my cellphone; it doesn't look the same as
17   the way I'm looking at it with my normal eye.
18        Q.   So can you see, if you are in the rec
19   yard, into Q-106?
20        A.   Yes, ma'am.
21        Q.   Depending on the angle?
22        A.   Depending on the angle and what yard
23   you're in.  There's I believe 12 rec yards out
24   there.
25        Q.   Okay.  And so you can see?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 9259

```
 1        A.    Yes, ma'am.

 2        Q.    Now, the video that you saw, there were

 3   some coverings on some of the windows; is that

 4   correct?

 5        A.    Yes, ma'am.

 6        Q.    Do you know when those coverings were put

 7   there?

 8        A.    I can't recollect the exact date, no.

 9        Q.    Do you know if they were even there in

10   2012?

11        A.    I can't recall.

12        Q.    And do you know, do they completely cover

13   the window, or does there have to be some sort of

14   opening, by law or regulation?

15        A.    If I can recall, I believe that we were

16   having the issues with the communication from the

17   cells onto the yard, and they are at a 45-degree

18   angle.  Some face different ways or angle different

19   ways.  At one time I believe they put them out flat

20   with the window, but you know, out 6 inches away

21   from the window, and there was an issue with

22   sunlight regulations coming into the cell.  There

23   has got to be a certain amount of light coming into

24   the cell.

25        Q.    So as they are today, it's at a 45-degree
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9259

```
 1   angle?

 2        A.   Yes, ma'am.

 3        Q.   But depending on the cell, it could be 45

 4   degrees a different way?

 5        A.   One way or the other, yes, ma'am.

 6        Q.   Was there also a change in the rec yard as

 7   far as some sort of building being -- or structure

 8   being built?

 9        A.   Yes, ma'am.

10        Q.   Tell us about that.

11        A.   What I can recall is that there was an

12   officer station that was put in or implemented in

13   yard 3.  I can't remember the exact date or time

14   that it was implemented.  In 2011, 2012, when I was

15   the housing unit lieutenant for housing unit 3, I

16   don't recall that being there.

17        Q.   Now, when you were there in 2011 to 2012,

18   you indicated you don't believe it was there.  Tell

19   us -- but you don't know the exact date it was

20   constructed.  Why is it -- what memory do you have

21   as far as when you were a lieutenant there that

22   leads you to believe that?

23        A.   Currently, the officers use that little

24   officer station, and I believe it's got Plexiglas

25   windows, and that's where they hand out the keys for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9261

301

```
 1   the rec yards, as currently.  When I was a
 2   lieutenant there, the officer would sit in what we
 3   call the dog run, which is the little hallway that
 4   runs from outside housing unit 3A into the rec
 5   yards.  And that's where the officer was stationed.
 6   That's where they sat, and that's where the little
 7   keyboard was, and they issue out keys and complete
 8   their paperwork.
 9        Q.   And that's how it is currently?
10        A.   No, that's how it was before.
11        Q.   And that's how you remember it?
12        A.   Yes, ma'am.
13        Q.   And once that was built, that changed?
14        A.   Yes, ma'am.
15        Q.   Now, so you indicated -- explain to us a
16   little bit about if Mr. Baca was in Q-106 and if
17   people were recreating there, what would be the
18   common experience for -- I should say, when I say
19   "people," other SNM Gang members specifically.
20        A.   Given the --
21             MR. LOWRY:  Objection, Your Honor.  This
22   calls for speculation.
23             THE COURT:  Well, I think he can talk
24   about his common experience there in the prison.  If
25   he can't, then he can say so.  But I'll allow him to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9261

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9262

302

```
 1  answer the question.  Overruled.

 2       A.   Could you repeat it?  I'm sorry.

 3  BY MS. ARMIJO:

 4       Q.   When Mr. Baca was in Q-106 and there were

 5  people, SNM members, that were in the rec yard,

 6  based on your experience, what type of communication

 7  could be going on with Mr. Baca?

 8       A.   Based on experience, anybody knowing that

 9  he's in that cell, so close to the yard, when

10  they're escorted in and out of the yard, of course,

11  they're going to say, "Hello," "Goodbye," however

12  they say that.  And they'll also talk real

13  frequently while they're in the rec yard for the

14  amount of time that they're in there with whoever is

15  housed, whether it be Mr. Baca or somebody with

16  influence that's housed in those pods.

17       Q.   And did he have the influence back in

18  2011, 2012, 2013?

19       A.   Yes, ma'am.

20       Q.   When I say "influence," I'll be specific.

21  Within the SNM Gang.

22       A.   Yes, ma'am.

23       Q.   Now, do people who are not only in the

24  building that communicate with people outside -- but

25  what about people that are doing rec together?  Can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9262

```
 1   they communicate?

 2        A.   Yes, ma'am.

 3        Q.   And do people in different pods but in the

 4   same unit, the same building -- do they recreate

 5   together at different times?

 6        A.   Yes, ma'am.

 7        Q.   Now, I'm also going to show you

 8   Defendant's Exhibit Y.  Are you familiar with these

 9   forms?  I'm showing you the first page of Y, and

10   then there is a second page there?

11        A.   Yes, ma'am.

12        Q.   What is it that we're looking at?

13        A.   I'm sorry, I've got a glare up here.  The

14   first page is just a checklist for the yard officer

15   indicating that the COs are randomly quizzed on

16   their post orders.  Everything is present that's

17   assigned to the post; what's working, what's not

18   working, stuff like that.  That first page.  The

19   second page is going to be a post log.  The officers

20   will fill that out when they're assigned to a post.

21        Q.   And then a third page?

22        A.   That looks like a recreation list.

23        Q.   All right.  And so it shows here on this

24   one -- it says 9/12/12, and it says "Urquizo."  Time

25   in was 10:14.  Time out 11:00; is that correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9263

```
 1        A.    Yes, ma'am.

 2        Q.    And I see that he was escorted by Officer

 3   Torres; is that correct?

 4        A.    Yes.

 5        Q.    Now, I see also at 10:19 Torres was

 6   already escorting out, so five minutes later he was

 7   already escorting out somebody else; is that

 8   correct?

 9        A.    Yes, ma'am.

10        Q.    So would that have meant that all these

11   people here at different points would all be

12   recreating together?

13        A.    As far as the officers?

14        Q.    Not the officers; the inmates.

15        A.    Yes, that's one recreation, I believe.

16        Q.    Okay.  Now, as part of that, do the

17   officers -- are they supposed to conduct a search on

18   inmates before they go out?

19        A.    Yes, ma'am.

20        Q.    Does that always happen?

21        A.    I'd like to say yes, but probably not

22   correctly every time.

23        Q.    Okay.  Are you aware of instances when

24   inmates have taken out to the yard items that

25   they're not supposed to have?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, ma'am.

 2        Q.   And would that include things like paper?

 3        A.   It could.

 4        Q.   Include things like weapons?

 5        A.   Yes, ma'am.

 6        Q.   What other types of things have you seen

 7   that inmates have gotten out on the rec yard where

 8   they were supposed to have been checked?

 9        A.   Coffee, Walkmen, CD players, MP3 players,

10   stuff like that.

11        Q.   So then it's possible for an inmate to

12   take out a piece of paper?

13        A.   Yes, ma'am.

14             MS. ARMIJO:  If I may have a moment, Your

15   Honor?

16             THE COURT:  You may.

17   BY MS. ARMIJO:

18        Q.   And I guess just to follow up, are you

19   aware of whether or not they bring shanks to the

20   yard, because sometimes there were actual fights

21   with them and things are confiscated on the yard?

22        A.   Yes, ma'am.

23        Q.   So it's possible that things are not

24   always detected that are taken out?

25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9265

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9266

306

```
 1              MS. ARMIJO:  That's all I have.  Thank
 2  you, Your Honor.
 3              THE COURT:  Thank you, Ms. Armijo.
 4              Before Mr. Lowry redirects, any other
 5  defendant have any questions of Mr. Sapien?
 6              All right.  Mr. Lowry, if you wish to
 7  redirect (sic) Mr. Sapien, you may do so.
 8                    CROSS-EXAMINATION
 9  BY MR. LOWRY:
10      Q.   Good afternoon, Mr. Sapien.
11      A.   How are you doing, sir?
12      Q.   You said you were a lieutenant in 2011,
13  2012?
14      A.   Yes, sir.
15      Q.   Okay.  Now lieutenants normally don't run
16  the recreation yards, do they?
17      A.   "Run" as in --
18      Q.   Well, you don't sit out in the guard shack
19  and manage the keys like you were talking about?
20      A.   Not unless they're on overtime, no, sir.
21      Q.   So normally you have a position in more
22  the administrative part of the facility?
23      A.   Yes, sir.
24      Q.   Now, you went over some offender location
25  history documents with Ms. Armijo, and I want to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9266



Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9267
307

```
 1    show you what's been marked as Government's Exhibit
 2    10.  Now, you would agree with me that Mr. Urquizo
 3    was transferred from the North facility to the South
 4    facility, meaning from Level 6 to Level 5, on
 5    September 13, 2012; correct?
 6         A.   Yes, sir.
 7         Q.   So that would be the day he was
 8    transferred, on the 13th of September 2012?
 9         A.   Yes, sir.
10         Q.   And if you look at Mr. Baca's physical
11    location history in September of 2012, he's in the
12    North 3A, the S unit; correct?
13         A.   Yes, sir.
14         Q.   So hypothetically, if somebody claims that
15    they're in the recreation yard on September 13 or
16    even the 12th of 2012, they wouldn't be able to sign
17    to Mr. Baca, who was housed in the S unit, would
18    they?
19         A.   Depending upon what time they took him
20    out.
21         Q.   But I mean, if you assume Mr. Baca is
22    inside the interior in his cell, they wouldn't be
23    able to sign to him from the first recreational
24    cage, could you?
25         A.   You could from the first one, possibly
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9267

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9268

308

```
 1   even the second one.
 2        Q.    So the S?
 3        A.    S?  Oh, I'm sorry.  S pod, no, sir.
 4        Q.    Correct.  S pod.  Mr. Baca is in S pod;
 5   correct?
 6        A.    Sorry.
 7        Q.    Your testimony was, you may be able to
 8   sign somebody in the Q pod?
 9        A.    Yes, sir.
10        Q.    But if you were in the S pod, it would be
11   impossible, wouldn't it?
12        A.    Um-hum.
13        Q.    And that's because -- I want to make sure
14   the Court gets this.  If we look at this -- and you
15   said you're familiar with this layout, I would
16   assume; correct?
17        A.    Yes, sir.
18        Q.    I'll blow this up.  Now, this is 3A North?
19        A.    Yes, sir.
20        Q.    You say in 3A, I guess, in the correct
21   terminology.  In 3A?
22        A.    Yes, sir.
23        Q.    And if you had to label the cells in
24   order -- and you said you're familiar with it -- can
25   you mark this?  They would start in this little
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   notch.  If we mark this, it would start from right
 2   to left, Q-1, 2, 3, 4, 5, and 6; correct?
 3        A.   Yes, sir.
 4        Q.   So Q-6 actual cell would be right in this
 5   notch in the building right there?
 6        A.   Right here.
 7        Q.   Thanks.  Exactly.  Right there.  And you
 8   said this is the Q unit there, and the next one over
 9   is --
10        A.   Q, R, and S.
11        Q.   And if you have a really good picture, you
12   can even see them on the top.  They're labeled on
13   the roof, aren't they?
14        A.   Do you want me to mark out S?
15        Q.   Sure.  S would be right there.
16        A.   Right here.
17        Q.   So if you're standing in this recreation
18   yard, recreation yard 1, do you mind marking that
19   for me?
20        A.   (Witness complies.)
21        Q.   The only vantage point outside of S is in
22   the opposite direction -- not the opposite
23   direction, but perpendicular.  You would not be able
24   to look out a window in the S pod and look into the
25   first recreation yard cage, would you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9270

```
 1        A.    No.
 2        Q.    So if somebody testified to a conversation
 3   between the first rec cage and an individual who
 4   happened to be housed in S unit, that would be
 5   impossible?
 6        A.    If the individual is in the pod, yes.
 7        Q.    Can you clear that?  Great, thank you.
 8             Now, is this document something that's
 9   filled out on a daily basis by supervisors?
10        A.    Can we go to the bottom real quick?  I
11   believe this one is filled out by the staff that's
12   assigned to the post.
13        Q.    So this would be something that, if things
14   were done by the book, would be monitored on a daily
15   basis?
16        A.    Yes, sir.
17        Q.    And if correction officers were doing
18   their duty as they should, everybody would be
19   searched, and you really wouldn't have these items
20   you were talking about, the iPods, the cups of
21   coffee, and the paper out on the yard.
22        A.    Yes, sir.
23        Q.    So that would be, you know, not living up
24   to snuff, if you will, if you were a correctional
25   officer, to let that kind of thing out in the yard?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9270

```
 1        A.    Yes.
 2        Q.    It would be out of the ordinary for a
 3   correctional officer to let somebody walk out of
 4   their cell with a rolled-up piece of paper like this
 5   and walk out to the yard?
 6        A.    Correct.
 7        Q.    And it would be really against policy for
 8   somebody to hand that to somebody else on the yard?
 9        A.    Yes, sir.
10        Q.    And that's something a document like this
11   is aimed to manage, to keep that from happening;
12   correct?
13        A.    Yes, sir.  Essentially, yes.
14        Q.    And in keeping with that, I mean, if
15   somebody -- if you're in the guard shack here, and
16   the guard shack is -- can you pull up the --
17        A.    Do you want me to point it out?
18        Q.    Well, the guard shack is right here;
19   correct?  I can blow this up.  But if you're in the
20   guard shack, it would be the guard's duty to
21   eliminate or at least stop the communication between
22   inmates in the rec yard and inmates in the Q pod?
23        A.    They should.  It doesn't happen, probably.
24   As a lieutenant, I would try and quell it.
25        Q.    I mean, they could get written up for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   that?

 2       A.   Yes, sir.

 3       Q.   The inmates could?

 4       A.   Yes.

 5       Q.   And your testimony is:  You really don't

 6   recall when the guard shack was built?

 7       A.   Correct.

 8       Q.   Is it fair to say that the guard shack was

 9   put in by Manuel Pacheco when he became acting

10   warden on Level 6?

11       A.   I don't recall.

12       Q.   You don't recall?

13       A.   I don't recall if it was already there

14   when I was a lieutenant or it wasn't; it wasn't

15   being utilized.  All I can recall is that the

16   officers did sit in the dog run and hand out keys

17   and fill out the logs and stuff like that.

18       Q.   And they hand out keys basically to keep

19   inmate violence down so people can't leave one cell

20   and grab the key and unlock the other cells and let

21   everybody out and have a riot; correct?

22       A.   Yes, sir.

23       Q.   So it's a security mechanism to have

24   somebody posted there?

25       A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9272

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020   Page: 9273

```
1      Q.   So somebody is posted there throughout the
2  entire recreation; correct?
3      A.   Yes, sir.
4      Q.   And they monitor the rec yard to make sure
5  everything is running smoothly?
6      A.   Yes, sir.
7      Q.   I want to come back -- and I apologize for
8  this.  I want to come back to the Urquizo -- if you
9  look at this, Mr. Urquizo says he spent some time on
10 N3BW pod.  And if you read that line -- let me move
11 this over here -- you would agree with me that
12 between September 12, 2011, and September 12, 2011,
13 Mr. Urquizo was only housed at W-105 for just a tad
14 over three hours; correct?
15     A.   I'm sorry, the top of the form, is that
16 for --
17     Q.   For Lupe?
18     A.   I can't see the top.
19     Q.   Sure.  I'll move it down.
20     A.   Okay.  Yes, sir.
21     Q.   And in fairness, you mentioned that you
22 see the inmate DOC number here; correct?
23     A.   Yes, sir.
24     Q.   And that would be the same DOC number that
25 you would see on the rec yard sheet under this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   column when somebody comes out.  That's the number
 2   the staff uses to track an individual inmate;
 3   correct?
 4        A.   Correct.  That's their assigned
 5   Corrections Department number.
 6        Q.   And using that number, you can essentially
 7   track somebody's movement throughout the entire
 8   facility throughout their whole tenure there;
 9   correct?
10        A.   Yes, sir.
11        Q.   I mean, from minute to minute from day to
12   day?
13        A.   Yes, sir.
14        Q.   Just like we see here that Lupe Urquizo,
15   when he was on the W-105 cell, he was there from
16   10:14 on September 12, 2011, to 1:34 p.m. on
17   September 12, 2011.
18        A.   I'm still looking at the top half of that
19   form.
20        Q.   Sure.  I'll zoom it out for you.
21        A.   Okay.
22        Q.   Correct?
23        A.   Yes, sir.
24        Q.   So Ms. Armijo asked you about Mr. Baca
25   living on the X pod from May 12, 2011, to September
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9274

1    27, 2012, on the X pod.  That means Mr. Urquizo

2    would have only had three hours, approximately, to

3    communicate with Mr. Baca at all.

4         A.   In that instance, yes.

5         Q.   Now, hypothetically, if Mr. Urquizo said

6    the first time he ever spoke with Mr. Baca was in

7    2012, and Mr. Baca -- well, and Mr. Urquizo was only

8    in the X pod in 2011, that particular housing

9    configuration wouldn't be conducive to them having a

10   conversation, would it?

11        A.   Depending on when they go to recreation,

12   where they're housed, stuff like that, yes.

13        Q.   Right.  What's the likelihood somebody is

14   going to go to rec if they're only in a living cell

15   for three hours?

16        A.   It depends on when they go to rec.

17        Q.   And you would need to see the recreation

18   yard records like we have here to make that

19   determination?

20        A.   Yes, sir.

21             MR. LOWRY:  May I have a moment, Your

22   Honor?

23             THE COURT:  You may.

24   BY MR. LOWRY:

25        Q.   Mr. Sapien, you're familiar, I take it,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9275

```
 1   with the ACA standards in your position as a
 2   lieutenant in the facility, or even STIU.
 3        A.   Yes, sir.  It's been a while.
 4        Q.   But earlier, you were talking about there
 5   was a problem with the covering on the windows when
 6   you had them flat; right?
 7        A.   Yes, sir.
 8        Q.   Because under the ACA standards, it didn't
 9   let in enough sunlight.
10        A.   I believe so, yes, sir.
11        Q.   So I guess I assume there was either an
12   inspection or somebody complained and they had to
13   reconfigure --
14        A.   I believe it was the Deputy Warden at the
15   time that made that.
16        Q.   Made that adjustment, if you will?
17        A.   Yes.
18        Q.   Do you recall who that was?
19        A.   I believe it was Lawrence Jaramillo.
20        Q.   Okay.  Lawrence Jaramillo?
21        A.   Yes, sir.
22        Q.   Okay.  So Lawrence Jaramillo made those
23   adjustments?
24        A.   It could have been Lawrence Jaramillo or
25   Jerry Roark at the time.  It's been a while, like I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9276

```
 1   said.  I apologize.
 2         Q.   Okay.  And do you recall who made those
 3   adjustments out on the yard, when they were made?
 4         A.   The ones that actually put them up?
 5         Q.   Yeah, who --
 6         A.   Maintenance, facility maintenance.
 7         Q.   Okay.  Do you recall if any of the folks
 8   there that worked at Level 6 helped Maintenance put
 9   them up?
10         A.   I don't.
11              MR. LOWRY:  One second, Your Honor.
12              THE COURT:  Certainly.
13              MR. LOWRY:  I have no further questions,
14   Your Honor.
15              THE COURT:  Thank you, Mr. Lowry.
16              Any other defendant have cross-examination
17   of Mr. Sapien?
18              All right, Ms. Armijo, if you have
19   redirect of Mr. Sapien, you may conduct that at this
20   time.
21              MS. ARMIJO:  Thank you, Your Honor.
22              THE COURT:  Ms. Armijo.
23                   REDIRECT EXAMINATION
24   BY MS. ARMIJO:
25         Q.   Mr. Lowry was asking you about whether or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   not there could have been communications when -- I'm

 2   showing you Exhibit Number 8 -- when Mr. Baca was in

 3   S pod; and if they were in the same -- if they were

 4   all in the same building but in different pods,

 5   could they have still gone to recreation at the same

 6   time?

 7        A.   Yes, ma'am.

 8        Q.   And people in recreation, do they have an

 9   opportunity to talk, even though they're in

10   different cages?

11        A.   Yes.

12        Q.   You were also asked questions about

13   whether or not Mr. Lowry even demonstrated, by

14   rolling up a piece of paper, taking something out to

15   the recreation yard, given what the policy is.  Do

16   you ever find correctional officers with contraband?

17        A.   Yes, ma'am.

18        Q.   Are correctional officers sometimes having

19   an inappropriate relationship with inmates?

20        A.   Yes, ma'am.

21        Q.   Do correctional officers sometimes let

22   small violations go by?

23        A.   Yes, ma'am.

24        Q.   And why is it that they would sometimes do

25   that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9278

```
 1        A.   Get lazy, lax, tired of the same
 2   repetitive behavior day after day after day.  In
 3   reference to the searches going out to the yard, the
 4   same officers in the same posts for six months,
 5   they're seeing the same individuals going out to the
 6   yard, and just get lax in their duties and diligence
 7   and exactly how they're supposed to do their job,
 8   so...
 9        Q.   In addition to being a little bit relaxed
10   in their job, do sometimes they just are purposely
11   doing favors for certain inmates?
12        A.   That could happen.
13             MS. ARMIJO:  Thank you.  I have no further
14   questions.
15             THE COURT:  Thank you, Ms. Armijo.
16             All right, Mr. Sapien.  You may step down.
17             Is there any reason that Mr. Sapien cannot
18   be excused from the proceedings?
19             MS. ARMIJO:  No, Your Honor.
20             THE COURT:  How about you, Mr. Lowry?
21             MR. LOWRY:  No, Your Honor.
22             THE COURT:  Any other defendant object?
23             All right.  Not seeing or hearing any
24   objection, you're excused from the proceedings.
25   Thank you for your testimony.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9279

```
 1                THE WITNESS:  Thank you.
 2                THE COURT:  Ms. Armijo, does the
 3    Government have further witnesses or evidence it
 4    wishes to present on Mr. Baca's motion for a new
 5    trial?
 6                MS. ARMIJO:  Your Honor, I do not have any
 7    more evidence, other than I did want to put in -- I
 8    guess it would be -- am I up to Exhibit 9?  9.
 9    Tomorrow I will bring the full copy of Mr. Urquizo's
10    trial transcript.
11                THE COURT:  All right.  And we agreed that
12    that would come in; correct?  As Exhibit 9.
13                MR. LOWRY:  Yes, Your Honor.  I thought
14    our agreement was any trial transcript or any
15    exhibit used at trial is fair game to use in this
16    motion.  So yeah, I don't have any problem with that
17    at all.
18                THE COURT:  All right.  So you can either
19    bring it or just tell me what to look at, either
20    one.
21                MS. ARMIJO:  I'll bring it so it's easier
22    for purposes if I have to refer to it.
23                THE COURT:  And did I admit 9, Ms. Bevel?
24    Have I admitted Exhibit 9?
25                THE CLERK:  Yes, Your Honor.  Exhibit 9 is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9280

```
 1   the location history for Mr. Baca.
 2             THE COURT:  So this will be 10.
 3             THE CLERK:  11.
 4             THE COURT:  So any other objection or
 5   comment on Exhibit 10?
 6             THE CLERK:  It needs to be Exhibit 11,
 7   because the 10 is the location history to Lupe
 8   Urquizo.
 9             THE COURT:  All right.  So not hearing or
10   seeing any objection, Government's Exhibit 11 will
11   be admitted into evidence.
12             (Government Exhibit 11 admitted.)
13             MS. ARMIJO:  Thank you.  With that, I
14   don't believe there is anything else, Your Honor.
15             THE COURT:  Mr. Lowry, do you have any
16   further witnesses or evidence you want to present?
17             MR. LOWRY:  Your Honor, the hour is late.
18   I have one rebuttal witness potentially, Your Honor,
19   if I could call him in the morning, if necessary,
20   I'd ask the Court for leave to do that.  I'm not
21   quite sure I'm there, and I might pass on it.
22             But if I could, Your Honor, I did brief
23   this, and I want to do that, but one other
24   housekeeping matter I have with Ms. Armijo with
25   regard to this motion is:  I think we had an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9281

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 9282

1   agreement that Mr. Acee's interview with Joe

2   Martinez post trial -- there was an April 4

3   interview that was disclosed on June 25, 2018 --

4   that we could use that in this motion and I can walk

5   the Court through why I think it's relevant to this

6   motion.  Ms. Bhalla had mentioned this a few times.

7   I don't want to get into an argument.

8           THE COURT:  Do you have any objection to

9   it, Ms. Armijo?

10          MS. ARMIJO:  I don't, as long as we can

11  also -- I'm not sure what the relevance is yet, so I

12  don't -- as long as I can also put in Mr. Martinez'

13  location history as Exhibit 12.

14          THE COURT:  Do you have any objection to

15  that?

16          MR. LOWRY:  No, Your Honor, not at all.

17          THE COURT:  Anybody have an objection to

18  these two exhibits coming in?

19          Not seeing or hearing any objection, your

20  exhibit, Mr. Lowry, is letter what?  Is it FF?

21          THE CLERK:  That would be the next one.

22          THE COURT:  So Mr. Baca's Exhibit FF will

23  be admitted into evidence.

24          (Defendant Baca Exhibit FF admitted.)

25          MR. LOWRY:  Thank you, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9282

```
 1              THE COURT:  And Ms. Armijo, it looks like

 2   yours is going to be number 15.

 3              THE CLERK:  12, Your Honor.

 4              THE COURT:  Isn't that the one I gave to

 5   the transcript that's coming in tomorrow morning?

 6              THE CLERK:  That was 11.

 7              THE COURT:  Okay.  So Government's Exhibit

 8   12 to Mr. Baca's new trial motion will be admitted

 9   into evidence, as well.

10              (Government Exhibit 12 admitted.)

11              MR. LOWRY:  And Your Honor, I don't want

12   to belabor the point, but Ms. Armijo wanted me to

13   make the relevance, and it ties into the same issue

14   Ms. Bhalla had.  And if I could walk through that

15   quickly, why I think it's relevant in the context of

16   this post trial interview, I'm happy to do that.

17              THE COURT:  Before I forget, I think there

18   is a motion -- Government's motion for extension of

19   time that was filed related to Mr. Sanchez' 2408.

20   Any objection to me granting that motion for

21   extension of time, Ms. Jacks?

22              MS. JACKS:  2408, I'm not sure what -- no,

23   I don't have a problem.

24              THE COURT:  Anybody else on the defense

25   side have a problem?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9283

```
 1            All right.  So Government's Document

 2   Number 2442, which is a motion for extension of

 3   time, will be granted.

 4            And I should do the same as to Document

 5   2441 related to Mr. Herrera's motion for new trial.

 6   Any objection to that, Ms. Bhalla?

 7            MS. BHALLA:  No, Your Honor.

 8            THE COURT:  All right.  Any other

 9   defendant have any objection to that?

10            Not seeing or hearing any, Government's

11   Document 2441, which is a motion for extension of

12   time, will be granted as to Mr. Herrera's motion for

13   a new trial.

14            All right.  Mr. Lowry, if you wish to

15   speak on the relevancy of document FF, you may do so

16   at this time.

17            MR. LOWRY:  Thank you, Your Honor.  One

18   day I'll learn how to manage paper.

19            THE COURT:  You need a good paralegal.

20            MR. LOWRY:  If we'd only get that CJA

21   budget to cover that.

22            Your Honor, here is where I just really

23   drill down on this quickly for the Court.  When Mr.

24   Calbert testified about this infamous exchange of

25   paperwork on Level 6, Ms. Duncan asked him, because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

 1  it wasn't clear in any of the 302s or pretrial

 2  interviews.  So when we got to trial, Ms. Duncan

 3  asked him when this happened.  And David Calbert

 4  said at line 12 on page 46 of his transcript or

 5  partial transcript, he said, "I would say maybe

 6  within four to five months" before he was

 7  transferred from Level 6 to Level 5.

 8          Do we have his location history, Calbert?

 9  I thought I had it.

10          But Calbert was transferred.  So if you

11  take David Calbert that he's transferred, and let's

12  give him the benefit of the doubt, this paperwork

13  transfer happened five months before he moved from

14  Level 6 to Level 5, and Mr. Calbert was transferred

15  on February 13, 2014.  That would take him somewhere

16  approximately September or August of 2013 when he

17  purportedly met Joe Martinez out on the rec yard and

18  transferred this paper.

19          And the reason everybody is having a

20  problem with this at this juncture is because what

21  Ms. Bhalla said, if you look at Mr. Martinez'

22  physical location history, he's actually discharged

23  from the facility, from Level 6, on April 11 of

24  2013.  This is a weird physical location history

25  because it doesn't really show that he's discharged,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  but the next line up, you can see that he's at

 2  intake three years later.

 3          So Joe Martinez wasn't even in Level 6

 4  when David Calbert says that this transfer of the

 5  paperwork happened.  And even if you were very

 6  gratuitous and say, okay, it wasn't five months but

 7  it was 10 months, it still doesn't line up when Mr.

 8  Martinez was there.  So that's a problem.

 9          Now, the Government has claimed -- and I

10  can understand why -- they said, well, look, Mr.

11  Martinez is never going to testify, and he testified

12  that this transfer of the paperwork never happened

13  when Mr. Acee spoke with him in April of this year.

14          But I take a different view of that

15  altogether.  I mean, not only was Mr. Martinez

16  verifying what you can see in the housing records,

17  but if he was to go in and lie to Mr. Acee -- I

18  mean, he knows he's committing a 1001 violence and

19  putting himself at further risk of prosecution.

20          So rather than the Government's

21  perspective, which is, of course, he's going to deny

22  it, because he didn't want to admit involvement in

23  this Molina homicide and earn his own VICAR

24  prosecution, I take a different view of that

25  altogether, which is that he's saying what we see in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9286

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     327     Page: 9287

```
 1   the physical location history, that this transfer of

 2   paperwork was frankly impossible, and he's being

 3   honest with Mr. Acee when they have this

 4   conversation, that it's not a subterfuge where he's

 5   trying to dodge a prosecution.

 6             And that's why this becomes -- that's why

 7   the Joe Martinez interview with Mr. Acee becomes

 8   relevant for my motion, because it's the first time

 9   we're able to really get him on the record, so to

10   speak.  I mean, unfortunately, as a defense attorney

11   in this case, we're really -- anytime we would call

12   most people -- and by most, I mean 99 percent,

13   they're going to take the Fifth on the stand here,

14   and I think that was the first opportunity we had to

15   get to Mr. Martinez and get his actual honest

16   perspective on what happened.

17             The reason I think it's an honest

18   perspective is because he's not being prosecuted for

19   lying to Mr. Acee.  So I really think that goes to

20   the heart of why I think this Joe Martinez interview

21   post trial is relevant and it spirals back, and I'll

22   save this for my pleadings of why these recreation

23   yard records are exculpatory.  But I'll get into

24   that in my own briefing, Your Honor.

25             But when I spoke to Ms. Bhalla this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9287

```
 1   morning and said I would wrap this up, Your Honor, I

 2   thought that I'd make my argument on my feet, but I

 3   haven't been feeling well, so I'm going to reserve

 4   it for paper.

 5          THE COURT:  All right.  Everybody ready to

 6   shut her down for the day?

 7          MS. ARMIJO:  Yes, Your Honor.  And I would

 8   just like to briefly respond tomorrow morning to the

 9   issue that he brought up.

10          THE COURT:  All right.  I'll let you.

11   It's in, so you might work it into your arguments.

12   So whatever, I'll let you argue, if you want to

13   respond separately.

14          All right, I appreciate everybody's hard

15   work.  We'll see you at 8:30 in the morning.  Have a

16   good evening.

17          (The Court stood in recess.)

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9288

1   UNITED STATES OF AMERICA

2   STATE OF NEW MEXICO

3

4               C-E-R-T-I-F-I-C-A-T-E

5       I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6   Official Court Reporter for the State of New Mexico,

7   do hereby certify that the foregoing pages

8   constitute a true transcript of proceedings had

9   before the said Court, held in the District of New

10  Mexico, in the matter therein stated.

11      In testimony whereof, I have hereunto set my

12  hand on this 23rd day of December, 2018.

13

14      _____

15      Jennifer Bean, FAPR, RMR-RDR-CCR
        Certified Realtime Reporter
16      United States Court Reporter
        NM Certified Court Reporter #94
17      333 Lomas, Northwest
        Albuquerque, New Mexico 87102
18      Phone:        (505) 348-2283
        Fax: (505) 843-9492
19      License expires:  12/31/18

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF NEW MEXICO

3

4    UNITED STATES OF AMERICA,

5         Plaintiff,

6         VS.                        CR. NO. 15-4268 JB

7    ANGEL DeLEON, et al.,

8         Defendants.

9

10                      VOLUME 2

11        Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
12   District Judge, Las Cruces, Dona Ana County,
     New Mexico, commencing on December 18, 2018.
13

14   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano
15
     For the Defendants:  Mr. Brock Benjamin; Ms. Cori
16   Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper;
     Mr. Scott Davidson; Ms. Amy Jacks; Ms. Lauren
17   Noriega; Mr. Marc Lowry; Ms. Carey Bhalla, Mr. Bill
     Maynard; Mr. Donovan Roberts; Ms. Lisa Torraco
18
     For the Defendants Via Telephone:  Mr. James Castle
19

20

21

22        Jennifer Bean, FAPR, RDR, RMR, CCR
              United States Court Reporter
23            Certified Realtime Reporter
                 333 Lomas, Northwest
24            Albuquerque, NM  87102
              Phone:  (505) 348-2283
25            Fax:  (505) 843-9492

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Why don't we go
 2      ahead -- we can't get our phone system to work, so
 3      we'll have to work on it during the day to get Mr.
 4      Castle in.  But let's go ahead and get started.
 5              Good morning.  I appreciate everybody being
 6      here and ready to go on time.
 7              Ms. Armijo, did you want to respond to
 8      Mr. Lowry's arguments as to why that exhibit -- I
 9      believe it was JJ -- is relevant?
10              MS. ARMIJO:  Yes.  I just need two of the
11      exhibits, two of the location histories.
12              THE COURT:  Do I have those?
13              THE CLERK:  Yes, they're in the folder for
14      this case.
15              MS. ARMIJO:  Yes, Your Honor.  Yesterday
16      Mr. Lowry was mentioning, in reference to Joe
17      Martinez' statement -- and more specifically Mr.
18      Calbert's statement -- he indicated that -- I believe
19      the quote -- and I don't know that Mr. Lowry put it
20      in evidence, but what he showed yesterday was that
21      Mr. Calbert indicated that this transfer had occurred
22      when he had gone up to the North, after the stabbing
23      of Paul Silva, for which he was charged.  And he was
24      showing you the location histories of Mr. Martinez
25      and Mr. Urquizo.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9291

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9292

```
 1              And I'm showing you Exhibit No. 10, and

 2    more specifically, Exhibit No. 12, where you can see

 3    that after 2012, up until 2016, Mr. Martinez was not

 4    at the North because he was not in custody; hence, he

 5    was making the argument that's impossible because

 6    2013 is what the time period you're looking for.

 7              But I would refer the Court to the

 8    indictment in 4269 -- the case 15-CR-4269, the

 9    companion case to this one, that was indicted the

10    same day -- to Count 1 on page 8.  And it has the

11    date of the actual crime, which was in March 2011;

12    specifically March 14, 2011.

13              So the dates that Mr. Lowry was referring

14    to yesterday, saying that it was impossible to have

15    this exchange, should really be looked at, instead of

16    2013, 2011.

17              And when you look at the location histories

18    for these two people, Joe Patrick Martinez was in the

19    North in 2011.  And in fact, he said he thought it

20    happened sometime within four to five months after

21    this occurred.  This occurred in March.  And he even

22    indicates on there, I believe the quote -- I don't

23    think Mr. Lowry read it -- but he said he was bad

24    with dates, but he thought it happened after he went

25    to the North, would be in 2011.  And you can clearly
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    see that he is at the North in 2011.  And so is Mr.

2    Calbert; he's here at the North as well.

3            Oh.  Mr. Lowry just provided me with the

4    cross-examination -- it's page 46 of the

5    transcript -- and he says, "It's right after the

6    Silva case, what happened with Silva, and they put me

7    in 1-B, away from everybody.  And I don't know what

8    year it was.  Like I said, I'm real bad with dates."

9    And then he even says, "it may be within that four to

10   five months."  So this clearly puts it within the

11   time period, as Mr. Calbert indicated.  And that is

12   what I wanted to point out to the Court.

13           The rest of the argument, since that was

14   the only thing that Mr. Lowry was kind of arguing

15   yesterday, we will reserve to wait to respond to

16   theirs.

17           THE COURT:  All right.  Thank you,

18   Ms. Armijo.

19           All right.  Mr. Lowry, do you want to argue

20   your motion for new trial for Mr. Baca?

21           MR. LOWRY:  We were going to do it on

22   paper, Your Honor.  That was the agreement.

23           THE COURT:  You were going to do what?

24           MR. LOWRY:  We were going to submit paper

25   on it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  And you know you
 2   owe me a stack of these exhibits?
 3              MR. LOWRY:  I do, and I'm working on that
 4   now, Your Honor.
 5              MS. ARMIJO:  And, Your Honor, do you want a
 6   copy of the indictment?  I believe it should be Doc 1
 7   or 2 of this.  But I --
 8              THE COURT:  I don't mind putting it into my
 9   folder for Mr. Baca, so I'll take it.
10              MR. LOWRY:  Your Honor, just with regard to
11   the exhibits, I may have overlooked yesterday -- we
12   spoke about it briefly -- the three conditional phone
13   calls that were going to be admitted, and there were
14   Q, R, and S, they're in the brief.  And I'll get
15   those.  We lodged them yesterday, and I'll get a copy
16   for Mr. Armijo.
17              THE COURT:  All right.  What is it that you
18   just had?  Did you want to mark what you just put up
19   here on the cross-examination?  Or do you just want
20   to rely on the transcript for that?
21              MS. ARMIJO:  I'm sorry?  For --
22              THE COURT:  Well, did you want to mark
23   something further?  You put it up on the screen
24   highlighted.
25              MS. ARMIJO:  Oh, this was just what Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9294

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9295

```
 1   Lowry was using yesterday.  I don't think he moved to

 2   admit it, but I'm sure he may be referring to it, if

 3   he still uses this argument.  And so it's part of --

 4   I believe we had agreed yesterday that anything in

 5   the trial could be introduced as evidence.  So I'm

 6   assuming he would use this.  So I don't know that he

 7   was planning on moving it in.  My only point was just

 8   that the location histories do match up from the

 9   Silva case.

10           THE COURT:  All right.  Thank you,

11   Ms. Armijo.

12           All right.  Mr. Lowry.

13           MR. LOWRY:  Thank you, Your Honor.

14           Your Honor, that's it.  I mean, I don't

15   want to belabor the point.  I think the transcript

16   speaks for itself.  The United States and I pick out

17   different anchors in terms of what's the

18   transactional language in the transcript, and we'll

19   leave it to the Court to decide.

20           THE COURT:  All right.  Mr. Castle, are you

21   there?  Mr. Castle?

22           MR. COOPER:  Your Honor, if I may, I will

23   text him and tell him that we are now up and running.

24           THE COURT:  All right.  Did you have any

25   further argument, Mr. Lowry, on your motion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9295

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9296

```
 1              MR. LOWRY:  No, Your Honor.
 2              THE COURT:  All right.  Ms. Armijo, do you
 3    have further argument?
 4              MS. ARMIJO:  No, Your Honor.
 5              THE COURT:  Well, it seems to me that this
 6    is just issues for the jury to decide.  It's
 7    additional evidence.  But -- I'll work and look
 8    closely at Mr. Baca's motion, but I'm inclined to
 9    think it doesn't raise an issue that requires a new
10    trial.  It was just some additional information that
11    could have been put forward, as developed as the
12    trial went through, and then as we concluded the
13    trial.  But I'll give it a hard look, but I'm not
14    inclined to grant the motion, at least at the moment.
15              All right.  I think the next motion that we
16    are going to take up is Billy Garcia's -- excuse me,
17    Mr. Troup's motion, which Mr. Billy Garcia joined.
18    There may have been others that joined it as well.
19    So --
20              MR. BURKE:  Good morning, Your Honor.
21              THE COURT:  Good morning.
22              MR. BENJAMIN:  Your Honor, before we start,
23    Joe Gallegos also joined.
24              THE COURT:  Okay.  There may be others.  I
25    know there is one formal joinder, but there may have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    been others.

2           Are you there, Mr. Castle?

3           MR. BURKE:  Your Honor, Edward Troup was

4    released from prison, having finished his sentence on

5    May 10, 2012.  From that date until his arrest on the

6    indictment in this case, December 3, 2015, a period

7    of 43 months, he was a free man for almost three

8    years of those 43 months.  He did have a dirty urine,

9    and that led -- or two -- and that led to

10   incarceration.  But for most of the period of time,

11   for the three-and-a-half years leading up to this

12   indictment, my client was a free man.  And during

13   that time he got married, he was steadily employed,

14   he had reestablished relationships with his family,

15   he was a contributing member of society.  An argument

16   can even be made that he had paid his debt to society

17   in the large part because he lost so much good time,

18   over six years, as a result of the Freddie Sanchez

19   homicide in June of 2007.

20          At the time of his arrest, Edward Troup had

21   been under the care and treatment of Dr. Valerie

22   Carrejo.  I had the privilege of meeting her.  She is

23   a very fine, wonderful and caring doctor.  And she

24   had Edward under her care.  And they were going

25   through Suboxone treatment.  They hadn't quite

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9297

```
 1    finished it, when he was arrested on December 3,

 2    stayed briefly in a county jail, and then was

 3    transported to Otero County.

 4            Edward finished his removal from heroin

 5    while at Otero County, in effect, sort of cold

 6    turkey.  And during the three years and two weeks

 7    that he has been incarcerated since that time at

 8    Otero County and Torrance County and the West Texas

 9    Detention Facility in Sierra Blanca, Texas, he has

10    not received a single dirty urine or incident report

11    for any other kind of behavior, thereby

12    distinguishing himself from almost every one of the

13    Government's informants in this case.

14            I mention that because Edward has become a

15    friend.  And these cold remarks about a new trial

16    don't quite capture the relationship that my

17    co-counsel and I have developed with our client.  I

18    would like to say that the reason that I was able to

19    visit Edward at Otero County and Torrance County, and

20    the West Texas Detention Facility, and the marshals

21    holding cell downstairs is because Your Honor

22    understood the importance of the attorney-client

23    relationship.  And you went out of your way to make

24    sure that this case was well funded, and that we

25    didn't have to worry about whether we would have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    enough funding to defend this case as well as we knew

2    how.

3           I want to make one or two other comments,

4    and that is that, in addition to Your Honor's great

5    respect for the process and our clients, the people

6    that you work with, including Ms. Bevel and Ms. Bean,

7    and the marshal's office, have treated my client with

8    respect.  And for that we thank you.

9           Your Honor, I begin the substance of my

10   argument with the second argument about Michael

11   Jaramillo.  Angel DeLeon and Michael "Criminal"

12   Jaramillo killed Frank "Pancho" Castillo on March 26,

13   2001, in the Southern New Mexico Correctional

14   Facility, P-1, green pod, cell 2204.

15          The DNA of both DeLeon and Michael

16   "Criminal" Jaramillo identified them as the killers.

17   Two months after Castillo was killed, a lab report

18   confirmed the presence of DeLeon's and Jaramillo's

19   DNA on a knotted white cord that was the instrument

20   of death, that came from Castillo's own laundry bag.

21          State Agent Norman Rhoades issued an arrest

22   warrant, but that was not pursued.  Nothing happened

23   in 2001 on that case.  Nothing happened in 2002.

24          Then, on July 22, 2003, Lorenzo Torres told

25   state investigators when he was, of course, trying to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9299

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9300

1    make a deal on a parole situation, that he saw Edward

2    Troup in the upper pod that day of the Castillo

3    homicide.  I think many of us will remember Mr.

4    Torres at trial.  I'm an advocate, so my view is

5    probably tainted.  But I think it would be very

6    difficult for anyone to believe a single word that

7    Torres said in this courtroom under oath.  He

8    acknowledged that he was up early on March 26, 2001,

9    looking for heroin.  The April 24 transcript reflects

10   an answer from him, "I was looking upstairs.  I was

11   looking for heroin.

12        "Q.  You were wanting to get some heroin?

13        "A.  I was wanting to get some heroin."

14        It was early in the morning, 5:30 to 6:30.

15   Torres said that he saw Angel DeLeon, but Torres said

16   that he did not remember or see the killer,

17   Jaramillo.  And aside from his inherent lack of

18   credibility, the fact that he didn't see the killer,

19   Jaramillo, confirmed that he was not a reliable

20   witness.

21        The three inmates that Torres mentioned in

22   his scatter-brained statement, in July 2003, were

23   DeLeon, Joe Gallegos, and Edward Troup, those three

24   people.  And from that moment on, that's who the

25   Government stuck with:  DeLeon, Gallegos, and Troup.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9300

```
 1   And those are the people who were indicted 14 years

 2   later, in 2015.

 3          And from the time of the initial indictment

 4   in December 2015, the case against Edward Troup on

 5   Count 1 was Lorenzo Torres.  With regard to that

 6   case, my co-counsel and I were aware of a plan and a

 7   procedure where we could cross-examine him.  We knew

 8   that Lorenzo Torres had refused to make any

 9   statements to investigators in March, when he was

10   being interrogated at that time.  He, Torres, refused

11   to give DNA back in March of 2001.  He did not

12   provide a DNA sample.

13          We learned that the Castillo laundry bag

14   cord was the instrument of death.  So this phony

15   statement about seeing Edward Troup and Angel DeLeon

16   disabling a laundry bag was shown to be the lie that

17   it was.  And Torres said that Angel DeLeon told him

18   that Joe Gallegos strangled Castillo, when the

19   evidence shows, and we learn later that it was

20   Jaramillo.  He was not a believable witness.  But

21   that was the Government's theory.  And the three

22   actors in the indictment on the 2001 homicide were

23   Joe Gallegos, Angel DeLeon, and Edward Troup.

24          The Government never bothered to run down

25   the obvious important evidence that Jaramillo's DNA
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9301

1   was on the weapon of death.

2          Even Torres' pretrial interview on March

3   28, 2018, he didn't include Jaramillo, because the

4   prosecution team couldn't give him any information

5   that would cause him to suddenly remember Jaramillo.

6   And we conducted our voir dire based on "that" case.

7   We gave our opening statement based on "that" case.

8   We conducted our initial cross-examinations based on

9   "that" case.

10          I note also, Your Honor, because I believe

11   it is important, that my co-counsel and I filed our

12   motion to dismiss regarding the delay on October 5,

13   2017.  That's Document 1284.  It's not an elaborate

14   motion.  It was straightforward.  It alleged various

15   facts on pages 2 and 3.  And we were having a hearing

16   about that motion on April 4 and 5, as we were doing

17   the run up to trial.  And I mention that in

18   particular because we laid out our case on, and our

19   defense, on Count 1.  In that motion we were not

20   subtle, we were not holding back.  We laid out our

21   case.  And in our motion we noted that these charges

22   are based solely on the statements of Government

23   informants.  And as a result, Edward Troup is also

24   suffering prejudice because he is being victimized by

25   one of the most pernicious features of modern

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9302

1  prosecutions:  The Government's use of informants who

2  are seeking benefits.  The Government can provide

3  inducements to informants if they make statements

4  that are consistent with the theory selected by the

5  prosecution.

6          We noted that the prejudice becomes more

7  manifest because the prosecution plays a cat and

8  mouse game with discovery.  The Government refuses to

9  provide Jencks statements until two weeks before

10  trial, which was the state of play at the time of the

11  motion.  The Government has not provided Giglio and

12  Brady materials in good faith.

13          And thus, Edward Troup suffers ongoing

14  prejudice, the prejudice caused by the delay.  It

15  might have been ameliorated if the Government had

16  played straight with Jencks materials, or if the

17  Government had provided all Giglio and Brady

18  materials early on.  But that's not what the

19  Government has done.  The Supreme Court has made

20  clear that certain delays, due to their sheer length,

21  are presumptively prejudicial.

22          We cited Doggett v. United States, a 1992

23  case, which said "impairment of one's defense is the

24  most difficult form of Speedy Trial prejudice to

25  prove, because time's erosion of exculpatory evidence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9303

 1   and testimony can rarely be shown."

 2            And, Your Honor, we went on to say that the

 3   decision was a tactical one to include the 2001

 4   homicides in the indictment.  And we even filed a

 5   supplement to that motion noting the additional

 6   discovery of the Burkhead declination letter, which

 7   had been held by the Government for so long, but

 8   finally, it was revealed.  And that was the March 26,

 9   2015 letter, in which the United States Attorney's

10   Office said that it would not be prosecuting the

11   Garza and Castillo homicides because the witnesses

12   were incredible.

13            And thus, Your Honor, the timeline on

14   Jaramillo was that on March 26, 2001, Jaramillo

15   strangled the life out of the Frank Castillo.  On May

16   23, 2001, DNA lab results showed indications of

17   Jaramillo on the cord that he used to snuff the life

18   out of Castillo.

19            On August 8, 2007, Leonard Lujan was

20   interviewed, and stated that he directed other

21   inmates, including Michael "Criminal" Jaramillo to

22   kill Frank Castillo, and thereafter, Leonard Lujan

23   repeated that several times.

24            On April 10, 2018, counsel for Edward Troup

25   conducted voir dire based on the understanding that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Jaramillo would not be a witness in the case.

 2          On April 12, 2018, counsel for Edward Troup

 3   gave the defense's opening statement based on the

 4   understanding that Jaramillo would not be a witness

 5   in the case.

 6          On April 18, 2018 -- well into the trial --

 7   Jaramillo is provided with a Kastigar letter.  On

 8   April 19, 2018, for the first time, an FBI 302 was

 9   produced.

10          Your Honor, in the interests of justice, we

11   should have a new trial on Count 1.

12          Those defending Count 2, they understood

13   that the Government's approach was to put Eugene

14   Martinez, the killer, on the stand, and they had time

15   to get ready.  And they prepared, and they worked

16   hard, and it took a long time.  And I, for one, will

17   never forget cross-examination of my colleague, Bob

18   Cooper, of Eugene Martinez on April 25 and April 26,

19   in which he brought out from the witness stand that

20   Eugene Martinez had been lying all along about

21   witnessing the deaths of his father and brother.  And

22   they were able to bring out the many times that

23   Eugene Martinez feigned incompetency, and they were

24   able to successfully persuade the jury that this

25   witness could not be trusted.  And on Count 2, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9305

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9306

1    verdicts were "not guilty."  And that's because our

2    colleagues defending Count 2 had enough time to go

3    after the killer, the actual killer.

4              And for all of those reasons, we say the

5    interests of justice suggest that a new trial should

6    be granted on Count 1.

7              THE COURT:  Let me talk to you about

8    Jaramillo.  I noticed -- and correct me if I'm

9    wrong -- that when I read through your briefing on

10   that, you did not cite the opinion that I wrote on --

11   you remember there was this issue about Jaramillo not

12   appearing on the witness list --

13             MR. BURKE:  Right.

14             THE COURT:  -- and whether with this being

15   a death penalty eligible case, and learned counsel

16   being appointed, whether that had to be -- he had to

17   be on that list a certain number of days before

18   trial.  I did issue that opinion, right?

19             MR. BURKE:  Well --

20             THE COURT:  I mean, I've got a lot of

21   opinions in draft that need to go out on this case.

22   But I thought that one had gone out.  Am I wrong?

23             MR. BURKE:  I can't remember, because

24   the -- I know that the Government --

25             THE COURT:  The reason I say that is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9306

 1   because I spent a lot of time -- I went back and

 2   worked real hard on the chronology of Jaramillo as

 3   the -- where he was in the Government's case, and on

 4   witness lists and not on witness lists, going into

 5   the trial.  Because my memory is I found there was a

 6   violation of that statute, and that statute did

 7   apply.  But that in the end, the remedy that the

 8   defendant sought was not appropriate.

 9            MR. BURKE:  It's exactly what you found,

10   Judge.  And the Government attached the transcript --

11            THE COURT:  Well, I noticed they attached a

12   transcript.  But don't I have an opinion out there on

13   this?  I need to find out if one got issued, because

14   I spent a lot of time with it.  It's possible that

15   it's in some file and I haven't issued it.  Do you

16   know?

17            MR. BURKE:  I don't believe it did get

18   issued.  But I don't trust myself on having 100%

19   grasp of the file in this case.  I remember that

20   Scott Davidson took the laboring oar on the

21   submission by the defense.  And I know that it was

22   hotly disputed.  And Your Honor took a considerable

23   amount of time.  And I do remember you hunting down

24   all of the law, and then eventually finding that the

25   three-day requirement for a death penalty case did

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9307

```
1   apply, and that this was a death penalty case,
2   because the findings were included in the indictment
3   that made it a death eligible case.
4           And in working on the motion for new trial,
5   I tried to look at every filing that was relevant.
6   And I didn't see the Court's opinion.  I'm going to
7   talk about one other of your opinions during trial
8   shortly, but I didn't see that.
9           THE COURT:  But we both still have to
10  grapple with the fact that on the day of venire, on
11  the Monday, we're still, I believe, now two -- almost
12  two full days ahead of opening statements -- Mr. Beck
13  was sitting over there reading the witnesses for
14  trial.  And do you remember we had the juror that
15  didn't understand why we were reading the list of
16  witnesses, and so it was reread.  And Mr. Jaramillo's
17  name was then -- I think Mr. Acee fed it to him so he
18  would get it in there.
19          MR. BURKE:  I believe that's true.  And I
20  can assure you that my co-counsel and I were huddling
21  when we heard the name.  But I will just tell you my
22  feeling.  My feeling was that that will never work;
23  that he will never be allowed to testify in this case
24  because the Government had not complied with any of
25  the rules relating to producing Jencks statements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9308

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9309

1    And the Court knew how hard we were all preparing.

2    And I never really -- to be perfectly candid, I never

3    really believed that you would let him in.

4            THE COURT:  Well, one of the remedies that

5    I had was pushing him down, way down into the case.

6    So I wouldn't let the Government just drag him out

7    here first day of trial, but shoved him way down in

8    the case, and put him down as far as I could into the

9    case, to allow as much to be done as possible.

10           The thing is:  What do you do with a

11   witness that won't talk, and then finally talks?

12           MR. BURKE:  Well, I have an answer to that.

13           This case was turned over to the feds in

14   2003.  You give him a Grand Jury subpoena.  And you

15   say, Come on in here.  And if you're interested in

16   pursuing the truth in 2003, when the feds took over

17   the case, you give him 6001 immunity, and you say:

18   You are talking.  And if he doesn't talk then, you

19   find him in contempt.  And you then have a series of

20   six months in contempt, like they did with Susan

21   McDougal during the Clinton Whitewater investigation.

22           Oh, there are ways to do this if you're a

23   responsible investigator.  That absolutely could have

24   been done.  You certainly don't wait for a trial

25   subpoena, when people have been working for years to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    get ready for trial, and pretend that that's a fair

2    way to proceed.

3           The Government had remedies to force

4    Mr. Jaramillo to come forward.  And if they wanted to

5    give the killer immunity, they could have done it in

6    2003, and probably should have.

7           THE COURT:  All right.  Mr. Burke, anything

8    further on your motion?

9           MR. BURKE:  Oh, yes.

10          THE COURT:  All right.

11          MR. BURKE:  I'm going to turn to severance.

12   When I think about severance, Your Honor, the first

13   thing I think about was the hearing on February 7,

14   2017.  Everyone at that point, particularly the

15   Court, was struggling with what to do with this

16   unwieldy indictment.  And just before lunch that day

17   you instructed the prosecutors and the defense

18   lawyers during the recess to figure out how the case

19   could best be divided into three trials.  It's the

20   transcript on pages 141 and 142, February 7, 2017.

21   Your Honor:  "All right, well, let's take our lunch

22   break.  Here's the assignments for lunch,

23   Mr. Castellano, Mr. Cooper.  Give me three

24   single-digit defendant trials."

25          We, the defense, then convened and yelled

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9310

1    at each other for about an hour.  And Mr. Cooper,

2    like herding cats, got enough of a consensus to come

3    back in, and he said "This is what we could do."  He

4    came back in.  And among the things he said,

5    Mr. Cooper, "And then the last trial would be eight

6    defendants in the 2001 and 2007 murders at Southern,

7    Counts 1, 2, and 3.  So those are the proposals that

8    we've worked on in the last hour.  And again, Judge,

9    we don't have a consensus."  And that was an

10   understatement.  Because I remember

11   Ms. Harbour-Valdez and I saying you can't put 1 and 3

12   together; that's not fair to Edward Troup.  But

13   that's what we came up with, and we submitted it to

14   the Court.

15          And then it was the prosecution's turn, and

16   Mr. Castellano said, "Given the posture," he says,

17   "we still object regarding severance," as if we could

18   have had a trial with that crowd.  "But given the

19   posture, we'll give you a breakdown of two trials."

20          Your Honor, I have never seen anything like

21   that.  I had never seen a prosecutor defy a judge,

22   especially Your Honor.  But that's what happened.

23   The prosecution would not give a suggestion of three

24   trials with single-digit defendants.  And that's an

25   illustration of what became even more apparent of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9311

1    "win at all costs" approach to the case.

2            And as I've said before and will say again

3    now, about these prosecutors, they are not afraid of

4    hard work.  They are among the hardest working

5    prosecutors I've ever seen.  And if the Court had

6    said:  We're going to have three trials in 4268, they

7    would have done three trials.  And there should have

8    been three trials, as the Court initially felt.

9            And I recognize the tremendous burden on

10   all of us, particularly Your Honor.  And I also

11   recognize that Congress has given prosecutors this

12   tremendous weapon, VICAR.  One cannot complain or

13   find fault with Agent Acee investigating allegations

14   that Department of Corrections officials were being

15   targeted for murder.  But it didn't make sense ever

16   for Counts 1 and 3 to be linked up with those more

17   recent allegations.

18           And so I say to Your Honor, your initial

19   instinct was right.  It should have been smaller

20   trials.  And Edward Troup ended up going to trial,

21   having to, in effect, defend against the Adrian Burns

22   homicide, so that throughout the trial we saw

23   pictures of his burned body.  And it was dismaying,

24   and the jury would turn away from the photographs.

25           The homicides in 2001 and 2007 being

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9312

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9313

 1   linked, those at least were at the same environment.
 2   But the more recent actions, the Burns homicide, was
 3   not of the same type.  It wasn't of the same time.
 4   And we asked that the trial be separated.
 5          And we noted that the Court had originally
 6   said that it was going to have two juries in the
 7   first trial, and then that changed on the weekend
 8   before trial.  But we had heard that the Court was
 9   considering that.  We read, and we tried to stay up.
10   And we suggested the bifurcation procedure as well.
11   And we believe that the Court's initial instinct on
12   having three trials was correct, and the Court's
13   initial instinct on having a separate jury for the
14   different sorts of allegations was correct.  And we
15   believe that the interests of justice would be served
16   if there was a new trial based on the inadequate
17   severance.
18          Your Honor, I now turn to jury
19   instructions.  And I will apologize again for not
20   raising many of these issues during the trial.  I was
21   working pretty hard.  Ms. Harbour-Valdez was working
22   hard.  No one was working harder than you.  When I
23   left at 6 p.m. you were here.  When I would arrive at
24   the courtroom the next day at 7:30, you were here.
25          But it's not as though we were idle at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9313

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 25

```
 1   night.

 2           I also want to say to my client and to the

 3   Court that I really can't relate to how Edward was

 4   raised.  I didn't have to worry about food being on

 5   the table, or clothing, or those sorts of things.

 6   But there was one recent event in my life wherein I

 7   can relate to Edward Troup.  And that happened on

 8   April 5, when the prosecution came in to court and

 9   accused my co-counsel and I of suborning perjury.

10           And the Government was only too happy to

11   take the false statements of Daffy Garcia to try to

12   end Cori Harbour-Valdez' and my lives as we knew it.

13   They were only too happy to take his false

14   statements, to make public accusations of criminal

15   behavior by my co-counsel and I.  So on that I can

16   relate to being the victim and the target of false

17   statements.

18           And the person who put a stop to that was

19   Your Honor.  Because you said in so many words:

20   Whoa, whoa, whoa, let's take a deep breath, let me

21   understand this more.  And by the time that the Court

22   finished its inquiry, the prosecution backed off, and

23   the prosecution acknowledged that Daffy Garcia was --

24   and pardon me for once again saying this -- a filthy

25   liar, who was willing to ruin lives, including the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9314

```
 1   legal careers of my co-counsel and I.  And if anyone
 2   were to think that we've ever received an apology for
 3   that horrible event, think again.
 4           But every night during trial or in the
 5   morning of trial we would get a new statement, and
 6   then lo and behold, Billy Cordova or Blue Rodriguez
 7   or Styx Archuleta had remembered something new, and
 8   lo and behold, it filled the gap in the prosecution's
 9   case.  And that's because the "win at all costs"
10   approach was still pervading how this trial was being
11   conducted.
12           And I do criticize that approach.  And I
13   criticize it because -- and quoting, "The United
14   States Attorney is the representative not of an
15   ordinary party to a controversy but of a sovereignty
16   whose obligation to govern impartially is as
17   compelling as its obligation to govern at all.  A
18   prosecutor can prosecute with earnestness and vigor,
19   indeed he should do so.  But while he may strike hard
20   blows, he is not at liberty to strike foul ones.  It
21   is as much his duty to refrain from improper methods
22   as it is to use legitimate means to bring about a
23   just one."
24           The ABA Code talks about the responsibility
25   of a public prosecutor, that it's different from us,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9315

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9316

1    it's different from usual advocates.

2              I note your opinion, Your Honor, in United

3    States v. Ballou, 59 F.Supp. 3d 1038, "The United

4    States' goal in all cases is to do justice and not to

5    just secure a conviction."  And that was in the

6    context of a 404(b) issue.

7              And with regard to instructions in a

8    criminal case it is the duty of the court to instruct

9    properly on all essential questions of law, whether

10   requested or not.

11             I remember early on, as well, in discovery,

12   when you said both in open court and in your opinion

13   to the prosecutors:  Please put yourselves in the

14   shoes of the defense.  And that, by the way, is the

15   law.  With regard to Brady, they have to hunt it

16   down.  That is the law.  But as we saw so many

17   times -- as recently as yesterday -- this Government

18   team is incapable -- incapable -- of putting itself

19   in the shoes of the defense.  Their "win at all

20   costs" attitude trumps Brady, it trumps Jencks, and

21   it trumps every other constitutional requirement.

22             And with regard to jury instructions, I

23   know I let the Court down and I let my client down.

24   But I did raise some issues, and I will talk about

25   those primarily.  I raised the issue of misprision.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    And it was a perfectly legitimate instruction.  But

2    the prosecutors fought it tooth and nail, consistent

3    with their "win at all costs" attitude.  And the

4    misprision instruction, which might have given us a

5    little bit of balance in the instruction was not

6    given.

7            I talk in our papers --

8            THE COURT:  Refresh my memory on that,

9    because my memory is not distinct on that.  Did you

10   submit an instruction on misprision?

11           MR. BURKE:  I did.

12           THE COURT:  And where would it have gone?

13   Would it have gone in that Fifth Circuit VICAR

14   instruction as one of the things that Mr. Troup could

15   have committed to satisfy the -- one of the elements?

16           MR. BURKE:  It would not have been a lesser

17   included offense.  It would have been a lesser

18   similar offense.

19           THE COURT:  Of the murder?

20           MR. BURKE:  Yeah.  And the theory that we

21   were advancing was, particularly with regard to Count

22   1, because the most that was ever said about Edward

23   Troup is that he may have been on the steps, and

24   Torres said:  Don't come up here.

25           And then Jaramillo said:  Well, when I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9317

1   left, I saw Troup downstairs, and he was, you know,

2   magically keeping everybody else in their cells.

3          And I said, what that fits is not telling

4   people, misprision; not conceding.  And I said the

5   facts support that.

6          THE COURT:  But -- maybe some of this is

7   coming back and I'm just going to have to review

8   it -- but how does that help you?  That was -- I

9   think my memory at the time was that the Government

10  did not want to go to the jury on that theory, which

11  is a lesser or, as you say, a similar but lesser

12  theory.  But they wanted to put on their shoulders

13  the burden of going to the jury just on murder.  How

14  did it help you to --

15         MR. BURKE:  We were advancing it not as a

16  subset of VICAR, but as a standalone offense.  So

17  that as to Count 1, the jury would have had the

18  option of finding him not guilty as to VICAR murder,

19  but then proceeding to say on that offense he is

20  guilty of misprision.

21         THE COURT:  But you would agree with me

22  that Blockburg (phonetic) doesn't require -- and I

23  may have the Supreme Court case wrong -- but it

24  didn't require the Court or the Government to go to

25  the jury on that, and therefore --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BURKE:  It was discretionary, Your
 2   Honor.
 3              THE COURT:  And so it's not a theory that
 4   they wanted to advance.  They didn't want to convict
 5   Mr. Troup of that offense.  They only wanted to
 6   convict him on the VICAR.  So --
 7              MR. BURKE:  I believe you had the
 8   discretion to give the misprision instruction.
 9   That's what I believe.  And I believe you should have
10   given it.
11              THE COURT:  Well, it's just an unindicted
12   free-standing felony to throw into the case.  Is
13   there any authority for me being able to just pick
14   another crime and say:  Let's go to the jury on that?
15              MR. BURKE:  Your Honor, in my filing there
16   is plenty of authority that you had.  And in my
17   filing --
18              THE COURT:  But I thought those were lesser
19   included offenses, not similarly but lesser offenses.
20              MR. BURKE:  No, it wasn't just lesser
21   included.  It was not just lesser included.  And I
22   don't have that filing in front of me.  But it was --
23              THE COURT:  I'll go back and look at it.
24              MR. BURKE:  It gave you the authority to
25   give that instruction.  And I believe the instruction
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9319

```
 1   should have been given.
 2           THE COURT:  And I didn't write anything on
 3   this?
 4           MR. BURKE:  No.
 5           THE COURT:  Okay.  Let me go to the heart
 6   of the jury instruction -- and I'll hear anything you
 7   want to say on the jury instructions -- but the
 8   heart, the thing that struck me as I read through
 9   yours, was this issue on the murder conviction.  It
10   seemed to me there was an internal inconsistency --
11   and correct me if I'm wrong -- in your argument.  On
12   one side it seemed to me you were saying later in
13   your briefing that there should have been no
14   instruction on murder given at all; that just the
15   inclusion of that at all was wrong, and that I should
16   have followed the Fifth Circuit pattern instructions.
17   And they do not include that, and therefore, I
18   shouldn't include it at all.  And in another place
19   earlier in the briefing you say I gave the wrong
20   murder charge.  I shouldn't have looked at New Mexico
21   law either for first degree or second degree, and I
22   should have given some generic murder charge.  Isn't
23   there a tension between those two?
24           MR. BURKE:  I believe that there was a
25   tension in your rulings.  And what I said --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  That may be.  But isn't there a
 2   tension in your argument?
 3          MR. BURKE:  No.  And here is the
 4   distinction.  I did not say that the New Mexico
 5   material elements of the New Mexico first degree
 6   murder statute are wrong in any instance.  In fact,
 7   we conceded that first degree may fit.  The argument
 8   was you can't have the murder statutes of 50
 9   different states.  You had to have a general
10   recognized murder instruction.  And first degree in
11   New Mexico fits it.  And so we did not complain about
12   New Mexico's first degree murder statute or the
13   elements.
14          And so what we had done was we said:  You
15   cannot give second, because it's beyond the statute
16   of limitations for second in New Mexico, which is a
17   six-year statute.  You found law that said the
18   state's procedural rules are not necessarily adopted
19   when we are going to bring -- and you wrote an
20   opinion, and I put it in my papers.  I argued that
21   the statute of limitations was jurisdictional and not
22   procedural.  And you gave the second.
23          This additional argument is that New
24   Mexico's second degree murder statute, by talking
25   about probability, probability is a bad statute to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9321

```
 1   use in VICAR.  And we focused on second.

 2              THE COURT:  You would agree with me that

 3   that was never argued at the trial, that argument?

 4              MR. BURKE:  Yes.

 5              THE COURT:  And it's taken until your

 6   reply, until today, to get there.  So that one is

 7   going to be judged by plain error.

 8              MR. BURKE:  I agree.

 9              THE COURT:  What -- it seemed to me you

10   were relying a lot on some district court cases for

11   that.  Is there anything more substantive than

12   district court on that issue?

13              MR. BURKE:  You know, I believe United

14   States v. Frumento, the Third Circuit case in '77,

15   which is on page 10 of the filing on December 14,

16   where it says, "The federal statute does not punish

17   the same conduct as that reached by state law.

18   Rather, reference to state law is necessary only to

19   identify the type of unlawful activity in which the

20   defendant intended to engage," quoting U.S. v.

21   Cerone, another Seventh Circuit case, 1971.

22              So in the reply, there are some circuit

23   cases, Your Honor.

24              THE COURT:  Has either the Supreme Court or

25   the Tenth Circuit gone this direction?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9322

```
 1                MR. BURKE:  I've not seen it.  I mean --
 2                THE COURT:  Here's my thought -- and I
 3     looked at the age of those cases and the fact that
 4     they were district court cases -- one thing that it
 5     seemed to me those cases were doing -- and I've got a
 6     lot of studying to do on this, because this is being
 7     raised in replies and fairly late -- it seemed to me
 8     that we've had a vigorous debate in the sentencing
 9     area, on crimes of violence.  And, of course, the
10     Supreme Court has pulled in this generic definition.
11     And that has been heavily criticized.  I don't know
12     if you noticed that this week the Sentencing
13     Guideline Commission has now come out -- bless their
14     heart, they're trying to deal with a Supreme Court
15     that has constitutionalized this area, and makes it
16     very difficult for anybody to do anything with the
17     area, because once they constitutionalize it, we
18     can't change it.  But they're going to try.  They're
19     going to try to come back in with a guideline
20     definition of crime of violence.
21                And the reason I bring that up is I'm
22     wondering if these cases were influenced by the
23     Supreme Court going down that path, which I think has
24     been heavily criticized, and they've sort of drawn
25     back a little bit.  And whether that's good law to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9323

1    say that when Congress says "state" in the VICAR

2    statute, it doesn't incorporate the state law, but

3    instead, you've got to go to generic.  It seems to me

4    that's adding something to the statute.  It may be

5    that that's the law.

6              MR. BURKE:  May I respond?

7              THE COURT:  Sure.

8              MR. BURKE:  I am familiar with that Johnson

9    line of cases on crime of violence.  And it's been a

10   mess, and the Tenth Circuit has had a heck of a time

11   trying to sort that out.  But I believe, with regard

12   to VICAR, at least insisting that it be -- the sort

13   of require the intent that is required in a first

14   degree murder, intentional act.  Because what

15   happened with the New Mexico statute, it --

16             THE COURT:  Tell me why.  Give me -- that's

17   a good way to put it, but tell me why from a policy

18   standpoint, you've got Congress passing a statute and

19   then we've got courts coming in and saying no, no,

20   no, let's ignore the statute, let's go to a generic

21   model penal code, or something like that.  Tell me

22   why that is a good separation of powers issue.

23             MR. BURKE:  Because the Congress, in its

24   wisdom, said that if it's a VICAR murder, you've got

25   a life sentence.  Because Congress said you get a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9324

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 36

```
 1    life sentence.  For VICAR first degree murder that
 2    makes some sense.  It does not make sense with a
 3    lesser second degree murder where language such as
 4    "probability" is being used.
 5              THE COURT:  But the congressional statute,
 6    the VICAR statute, doesn't say first degree murder
 7    and second degree murder.  It says --
 8              MR. BURKE:  It says murder.
 9              THE COURT:  It says murder.
10              MR. BURKE:  It says murder.  And that's
11    where -- I mean, at least there are some court cases
12    and some district court cases that say, Let's not
13    have this far ranging --
14              THE COURT:  I'm not saying that's not good
15    policy.  I'm not disagreeing with you on the policy.
16    But just tell me from a power standpoint why the
17    courts get to say:  No, a state murder means not New
18    Mexico murder, but it means some model penal code or
19    some restatement or some other definition.  It
20    doesn't really mean state, it means some model
21    generic code.
22              MR. BURKE:  Well, I can't do better than
23    what -- we have given you those district court cases.
24    And one was that Lee case.  United States --
25              THE COURT:  Is that from the Eastern
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9325

```
 1   District of Virginia?

 2            MR. BURKE:  Exactly.  Observing that this

 3   would lead to the nonsensical result of treating

 4   differently defendants who engaged in the same

 5   conduct in different states.

 6            THE COURT:  But why is that wrong?  I mean,

 7   if, in fact, Congress is going to pull up state law,

 8   isn't that -- weren't they saying, Yeah, that's the

 9   reality of it?

10            MR. BURKE:  Your Honor, that's the argument

11   we make in defending capital cases all the time,

12   where the death sentences all come from the Death

13   Belt, also known as the Old South.  And we say:  You

14   can't have that, and everybody goes, You got to have

15   national law, you've got to be consistent throughout

16   the United States.  So you just made the argument we

17   make as capital case defenders sometimes, is that it

18   should be uniform.  And so that's -- I'm not saying

19   it's crystal clear.  And to be perfectly candid, I

20   thought the statute of limitations argument was --

21            THE COURT:  Was your better argument?

22            MR. BURKE:  Yeah, was a better argument.

23            THE COURT:  Okay.  Well, I will take a hard

24   look at that.  It's an interesting issue.  And I've

25   always thought Alito had the better argument on that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   crime of violence issue at the Supreme Court, and to

 2   some degree Scalia was not the best on that issue.

 3   But it may be that it's been incorporated over --

 4            MR. BURKE:  Well, Scalia was an

 5   originalist, and he somehow knew what they were

 6   thinking.  So I don't know what else to say.

 7            THE COURT:  At least on that issue he

 8   wasn't going back to 1702.  He was at least going in

 9   our lifetime.

10            MR. BURKE:  Your Honor, I was going to make

11   some additional remarks about instructions, but I'm

12   not going to do that, because --

13            THE COURT:  Go ahead.

14            MR. BURKE:  No, I really --

15            THE COURT:  That one intrigued me, and it

16   seemed to be the gut of your argument.

17            MR. BURKE:  It was -- the lead argument was

18   on 31 and 33, instructions 31 and 33.  But the

19   remaining arguments you've obviously read.  And we

20   feel strongly about them.  I apologized already.  I

21   apologize again.  I feel like I broke the bond

22   between a trial lawyer and a trial judge.  But I --

23            THE COURT:  Well, most of the ones that are

24   there are pattern instructions.

25            Now, Ms. Jacks got me to modify a bunch of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9327

1    the pattern instructions in the first trial.  And I

2    normally don't do that.  But I didn't think they were

3    terribly helpful to the defendants.  But I didn't

4    have any problem if that was -- if that helped the

5    appearance of doing justice to those four men.  But

6    these pattern ones --

7           MR. BURKE:  I'm sure you saw our law in

8    there that pattern instructions aren't to be given

9    automatically.

10          THE COURT:  Yeah.  And there is one in the

11   drug area, I just reject routinely and have to

12   change.  But it changes in favor of the Government.

13   It doesn't change in favor of the defendants on that

14   one.

15          MR. BURKE:  That seems to be the pattern.

16          Your Honor, I am going to wrap up here,

17   because I know you have pored over and read

18   everything we've submitted.

19          Your Honor, ultimately, all of these

20   discussions really are about justice.  I recognize

21   that the law seeks finality.  But Rule 33 is an

22   unusually flexible rule.  It says, "If the interests

23   of justice so requires."  I know what the interests

24   of justice would require from my perspective.  I know

25   what the interests of justice would mean to my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9328

```
 1    colleagues on the prosecution side.  But it doesn't
 2    matter what my view is or what the prosecution's view
 3    is.  It only matters whether you think that the
 4    interests of justice requires a new trial for Edward
 5    Troup.
 6            I can think of some things that don't go
 7    into deciding that.  One is whether it will be more
 8    hard work.  I think that it has been demonstrated
 9    that no one works harder than this Court.  And I
10    believe that the prosecution and the defense work
11    hard.  So hard work is not part of this.
12            Funding it is not part of it.  Whether it's
13    costly to do it again, that's not a factor, because
14    that has nothing to do with justice.  We are a
15    country of laws; we believe in the rule of law.  And
16    if the law indicates that the interests of justice
17    must be served by a new trial, then so be it.
18            I don't even think that it means that it's
19    an acknowledgment of some sort of error.  I think,
20    just in the calm aftermath, when you look at it and
21    you say:  This could be done more fairly, the
22    interests of justice could be served by doing this
23    again, then I believe that gives you the discretion
24    to give us a new trial.
25            Ms. Harbour-Valdez and I hope that we've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9329

```
 1    given you a basis on which you might decide, upon
 2    reflection, that Edward Troup deserves a new trial.
 3    And if you do reach that conclusion, I ask that it be
 4    without Counts 4 and 5; that it be with a true
 5    discovery cutoff date; that it be with a binding
 6    Jencks rule; and that it be in a case where Brady
 7    violations will not be tolerated at all.
 8              Thank you, Your Honor.
 9              THE COURT:  Thank you, Mr. Burke.
10              Mr. Castellano -- let me see, there were
11    some people that joined Mr. Burke on that.  Anybody
12    want to say anything on that issue?  Mr. Cooper?
13              MR. COOPER:  Your Honor, I don't believe
14    that we have anything to add.  I know that Mr. Castle
15    has joined, and has been on the line for quite some
16    time.  But Billy Garcia joins in all of the arguments
17    that were advanced by Team Troup.  I don't think that
18    I could articulate those arguments half as good as
19    Mr. Burke did.  And we would ask as well for a new
20    trial on behalf of Billy Garcia.
21              THE COURT:  Thank you, Mr. Cooper.
22              Mr. Benjamin.
23              MR. BENJAMIN:  Your Honor, if -- I can do
24    it now or I could do it later -- my motion for Count
25    1 tracks on some points and plagiarizes Mr. Burke's
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9330

1    motion.  But there are some issues that the Court

2    raised that I would like to address now, or in Count

3    1.

4              THE COURT:  Do you want to go ahead and

5    just take his motion up at the same time?

6              MR. CASTELLANO:  That's fine, Your Honor.

7              THE COURT:  All right.  Any objection to

8    doing that, Mr. Burke?

9              MR. BURKE:  None whatsoever, Your Honor.

10             THE COURT:  All right.  So Mr. Benjamin, if

11   you want to go ahead and argue Mr. Gallegos' motion,

12   Mr. Joe Gallegos.

13             MR. BENJAMIN:  And, Your Honor, as

14   Mr. Cooper said, I can't begin to say some of the

15   things as eloquently as Mr. Burke did.

16             But if the Court will remember specifically

17   dealing with -- and Mr. Gallegos' motion is Document

18   2453 -- or, excuse me, not 2453, that's the

19   Government's response to Mr. Gallegos' document,

20   which was 2419.

21             But there is a specific issue that has

22   bugged me personally about the Michael Jaramillo

23   aspect.  Because if the Court will remember from when

24   this came up during trial at the beginning of April,

25   that it was our investigator that went out and tried

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9331

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 43

1    to talk to Mr. Jaramillo.

2           THE COURT:  When did you do that?  Remind

3    me when that occurred.

4           MR. BENJAMIN:  Summer of '16, Your Honor.

5           THE COURT:  Summer of '16?

6           MR. BENJAMIN:  Yes, Your Honor.  Or

7    essentially very early on.

8           THE COURT:  So early on you went out there

9    and tried to get him to talk?

10           MR. BENJAMIN:  And that was --

11           THE COURT:  My memory is he blew you off,

12    he didn't want anything to do with you.

13           MR. BENJAMIN:  He did.  And that was a

14    suggestion that was made by Troup's team, Your Honor,

15    Ms. Valdez had an investigator that was handy, and

16    she suggested that, and it worked to both of our

17    benefits.

18           But the Court had a specific phrase

19    earlier, you said:  What do you do when witnesses

20    don't want to talk to you?  And that's the problem

21    that is presented by the whole Michael Jaramillo

22    argument.

23           Because the Government in its response on

24    page 5 says, the second paragraph, "But things went

25    differently.  The United States learned of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9332

 1    significance of Jaramillo's role in the offense after

 2    the trial began."  And I don't want to belabor the

 3    points that Mr. Burke pointed out.  But that's

 4    entirely false, Your Honor.  There was DNA evidence

 5    on -- or in the file and in the disclosures about

 6    Michael Jaramillo.  And so this isn't just, Oh, we

 7    were doing witness interviews, and somebody's name

 8    came up, and we decided that they didn't rank very

 9    high on our order of priority, we didn't go talk to

10    them.

11          They have that ability.  They have the

12    ultimate ability that, as a defense attorney, I long

13    for, which is the ability to issue unlimited number

14    of Grand Jury subpoenas to go out and talk to

15    individuals.

16          And so to say the fact that -- and this is

17    from their response -- the fact that Jaramillo did

18    not come forward with the truth until that day is

19    understandable, it doesn't make any sense, Your

20    Honor.  Because the defense, when we go talk to

21    somebody, when Bill went and talked to Michael

22    Jaramillo, and he says:  I don't remember anything,

23    we, whether we like it or not, have no power to

24    compel that.  But the Government who brought this

25    case has every bit of power to do that.  After that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9333

```
 1    they could have indicted Michael Jaramillo if he was

 2    not talking to them.  They have lots of tools at

 3    their disposal.  We don't have the power to indict

 4    him for failing to talk to us, or giving us --

 5              THE COURT:  Isn't it a dangerous doctrine

 6    for the Court to try to fashion something that puts

 7    pressure on the Government to indict more people?  I

 8    mean, that doesn't seem like a good idea.  I mean, we

 9    don't want more people indicted unless they have to

10    be indicted.  So to fashion some sort of doctrine

11    that encourages more people indicted, I don't know,

12    I'm not sure that's getting us to justice.  Do you?

13              MR. BENJAMIN:  I agree wholeheartedly with

14    the Court's impression.  I apologize, I think I've

15    been going at this the wrong way.

16              This is all going towards the argument that

17    the Government, when it produced its witness list,

18    omitted a star person who was going to testify.

19              They dealt with Count 1 for -- we dealt

20    with it from December 3rd of '15 to the date of

21    trial.  And at no point in time did --

22              THE COURT:  I need to track down this

23    opinion that I'm not certain whether it was entered

24    or it's still in one of my folders.  But I thought

25    that they were always on the may call list --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9334

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 46 9335

1   Jaramillo; he was just a wild card out there.  He

2   wouldn't talk to you, he wouldn't talk to the

3   Government, so he was appearing on may calls.  Is my

4   memory off on that?

5          MS. HARBOUR-VALDEZ:  Yes.

6          MR. BENJAMIN:  Your Honor, I believe he

7   was -- no, I'm being told he was not.

8          Respectfully, Your Honor, in dealing with

9   seven counts, I had hundreds of people on a may call

10  list that then, ultimately, the Court thankfully

11  whittled down.

12         But the idea that this was a person who we

13  omitted accidentally, and then all of a sudden

14  just -- on I think it was April 9th or 10th read his

15  name, because that's when we just came up with it, I

16  don't think rings true, Your Honor.

17         And so the issue, I think, that comes up is

18  what I discussed in my motion regarding Count 1,

19  which is that Mr. Gallegos was able to successfully

20  defend an allegation where a victim took the stand

21  and testified.  We had -- after all this time I'm

22  drawing a complete blank standing up here.  We had an

23  individual come in and testify and take the stand

24  that Joe Gallegos chased him down and was trying to

25  attack him.  But that was able to be successfully

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9335

 1   defended because I was able to investigate those

 2   claims and deal with those claims.

 3        I think that's entirely different when we

 4   get blindsided with an individual who, prior to the

 5   Jencks deadline, we don't get a statement from,

 6   because they chose not to do that.  The Government

 7   should not be allowed to lay behind the law, and just

 8   surprise us with:  Oh, well, he just showed up and

 9   dropped in our laps, and he hasn't been cooperative

10   with us.

11        THE COURT:  But how do you draft a doctrine

12   that says that?  I mean, how do you say a witness

13   can't show up and us have to deal with it, all of us,

14   them, me, you.  We just deal with somebody that's

15   come in and raises their right hand and swears to

16   tell the truth, how do you deal with that, other than

17   just dealing with it?

18        MR. BENJAMIN:  Well, Your Honor, the Court

19   set a deadline.  And the Government complied with

20   that deadline.  The Government didn't come forward

21   and say:  You know what, in reviewing the document we

22   filed Friday, we made a mistake.  He's not on there.

23   And the Court's remedy is exclusion of that witness.

24   You knew that this was a witness who was vital,

25   vital, absolutely vital to your case.  You didn't put

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 9336

```
 1   him on your witness list --

 2            THE COURT:  I'll go back and look and see

 3   if it's in the opinion.  But I thought that he was on

 4   may call list fairly late, and then, of course, he

 5   was announced as a witness in this trial to the jury

 6   before the trial began.

 7            MR. BENJAMIN:  Your Honor, I'm going to

 8   deal with this more on Counts 4 and 5, but the issue

 9   that comes up is a witness that is that vital to

10   their case, that there is no statements produced on,

11   or that they never even --

12            THE COURT:  They didn't have any

13   statements, right?  There is nothing to produce.

14            MR. BENJAMIN:  I don't think it rings true

15   that they didn't go talk to Michael Jaramillo at some

16   point in time from when we were able to talk to him

17   from 2016 on, a person whose DNA was on the murder

18   weapon.  And the Court asks how does it do that?  I

19   think it excludes a witness.  That was the purpose --

20            THE COURT:  Is that just raw judicial

21   power, or is there some doctrine that sort of backs

22   that up?

23            MR. BENJAMIN:  Your Honor, I would have to

24   stick with raw judicial power.  I think that's what

25   the Court --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 49   9338

```
 1                MS. HARBOUR-VALDEZ:  Sorry, Your Honor.
 2                THE COURT:  That's all right.
 3                MR. BENJAMIN:  I'm being told Document
 4      1968, which is the Government's supplemental witness
 5      list from March 23, didn't list him either.
 6                And so the -- what I'm struggling with,
 7      Your Honor, is the idea that, genuinely, we
 8      overlooked Michael Jaramillo.  Can I say that for an
 9      officer who is a sideline officer, who --
10                THE COURT:  Here's the way I would
11      characterize what I was reading from the defendants
12      was, you know, he's out there, he's kind of floating
13      in orbit.  He could be a wild card.  But you've got
14      to make strategic professional decisions.  I
15      understand that.  And it didn't look like he was
16      going to be in this case.  I get that.  But, you
17      know, he's out there.  Anything can happen.  I mean,
18      it doesn't seem to me that anybody criticized your
19      decisions to say:  Right now he's not on our radar,
20      we've got enough to worry about, but also he's a
21      person out there.  I mean, you knew he was out there
22      because you were trying to interview him.  They were
23      trying to do things with him.  And he's out there.
24      Isn't that just the reality?  And you have to make a
25      professional decision, which you did -- and it's a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9338

1    good one -- like I've got enough bodies that I know

2    are going to be here, I'm not going to go set a

3    strategy and try to work with somebody that may never

4    show up.  That seems to me to be good defense work.

5           MR. BENJAMIN:  Your Honor, I appreciate the

6    praise.  I disagree with the way the Court

7    articulated.  Because they knew he was out there.

8    And their position is that they didn't do anything

9    knowing he was out there.

10          And so discovery in criminal cases drives

11   most of us crazy, because when we're arguing about

12   money, any amount of money, or even just a judgment,

13   we get told what we need; we are able to challenge

14   things.  We're left with the criminal discovery

15   system that we have, though.  And that criminal

16   discovery system is limited.  And I'm looking for the

17   very limited benefits that I believe that that

18   criminal discovery system provides to me.  And I

19   think that, one, it provides to me the ability to

20   have Jencks statements provided to me two weeks prior

21   to trial, as the Court ordered.  I think it provides

22   to me the ability to have, even if it is ultimately

23   very last second, the ability to have a witness list

24   that I can rely on.  It's those type of things that,

25   respectfully, the Court is right, I have to focus my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    energies and ideas on certain things.  And when, at

2    the very last second, something else has changed, I

3    can't do that.

4            And one of the things that I think the

5    Court tried to do -- and from my perspective it's not

6    something I was able to do -- is try to give us time

7    by having Michael Jaramillo testify later in the

8    trial.

9            Respectfully, Your Honor, Mr. Sindel and I

10   were up till every night about 12:00 or 1:00 o'clock

11   in the morning prepping for the next witnesses.  So

12   yes, we had three weeks or -- I don't have the number

13   off the top of my head -- amount of time.  But we did

14   not have time to devote to creating or identifying a

15   new theory of our defense, such that we were able to

16   deal with a witness, even if that witness was pushed

17   later.

18           And so I think that the Court is right, I

19   don't want to fashion a remedy where the Government

20   is required to indict everybody.  But I think I do

21   want to fashion a remedy where the Government is

22   stuck with what they chose to do, and is not able to

23   change at the last second based upon their whim and

24   disregard, the Court's raw judicial power of a

25   witness list that -- and also the Jencks idea.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9340

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 52

```
1                    Thank you, Your Honor.

2                    THE COURT:  Thank you, Mr. Benjamin.

3                    Mr. Davidson, you wanted to say something

4         on this issue?

5                    MR. DAVIDSON:  A few words, Your Honor.  As

6         you may recall, I did the briefing on this.  I just

7         wanted to point out in my --

8                    THE COURT:  I think you found one of the

9         old Supreme Court cases that I relied on heavily in

10        finding there had been a violation, correct?

11                   MR. DAVIDSON:  Correct, Your Honor.

12                   And I just wanted to clarify for the

13        record, as stated in my filing, Document 2139, that

14        the none of the Government witness lists include the

15        name and address of Michael Jaramillo.  And I cited

16        Documents 1968, 2089, and 2091.

17                   I also pointed out the Government conceded

18        that Michael Jaramillo was omitted.  And that was on

19        page 1 of their brief, Document 2138.  The Government

20        also conceded that it knew of its inadvertence as

21        early as the first day of voir dire for the second

22        trial -- that was at page 6 -- and it did not file a

23        supplemental witness list at that time.

24                   With respect to Your Honor's questions

25        about a remedy, I don't think the remedy that's being
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9341

```
 1   sought is that the Government should indict more
 2   people.  It's that either this should be adjournment,
 3   which was asked for, or exclusion, which was asked
 4   for.  And so that would be the remedy that would be
 5   appropriate when you have a late disclosed witness in
 6   a case like this.  And neither of those remedies, as
 7   I recall, were afforded.  I just wanted to clarify
 8   that.
 9           THE COURT:  All right.  Thank you, Mr.
10   Davidson.
11           Any other defendant want to speak on either
12   Mr. Joe Gallegos' motion or Mr. Troup's motion before
13   I hear from Mr. Castellano?
14           MR. COOPER:  Your Honor, I've been notified
15   by Mr. Castle that he has additional argument on this
16   issue.
17           THE COURT:  All right.  Mr. Castle.
18           MR. CASTLE:  Yes, good morning, Your Honor.
19           THE COURT:  Mr. Castle.
20           MR. CASTLE:  The issue seems to be, in
21   analyzing this particular matter, is what is fair.
22   And that's kind of always a hard thing for the Court
23   to struggle with.  And when we look at the parties
24   and try to analyze what's fair, I would start with
25   the defense.  And the defense clearly was put at a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9342

1    disadvantage in this trial with the last-minute

2    witness.  And three days -- three or four or five

3    days really didn't cure that unfairness.  Because the

4    kind of investigation that is needed to analyze a

5    witness who comes forward some 15-17 years later,

6    that kind of investigation is really significant and

7    it takes a lot of time.  And it's essentially going

8    back and unearthing years and years of information,

9    including in a fashion that could be digested by the

10   jury.  And clearly that didn't happen.

11          We know a lawyer was unable to unearth that

12   information and present that to the jury.  So

13   Mr. Jaramillo became somewhat of a super witness,

14   because he was one of a few, if not the only witness,

15   who didn't have a vigorous cross-examination against

16   him, other than that he was an admitted murderer.

17          Then we analyze the fairness to the

18   prosecution.  They were in a much different situation

19   than the defense.  Where the defense tried to

20   interview Mr. Jaramillo to see if he was going to

21   even be a percipient witness in the case, and were

22   turned down, and they'd exhausted all of their

23   abilities to call or interview that witness, the

24   Government did not.  The Government had the Grand

25   Jury power to put him on as a witness; not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9343

1   necessarily to indict him but to put him on as a

2   witness.  That's an important tool that the

3   Government is provided before they have to make

4   decisions on indictments.  They can reconvene grand

5   juries even after indictment, as we saw in this case.

6   They had plenty of opportunity to do so.

7           So the idea is if one party or the other

8   has to bear the burden on this problem, which party

9   has less, I guess, equity in their favor regarding

10  the late endorsement of the witness?  And I would

11  argue that the Government certainly has less equity

12  in their favor.

13          But I understand what the Court is

14  struggling with.  And it is just a raw use of

15  judicial power to have prevented a witness who

16  apparently had information relevant to a serious

17  charge, is that just raw use of power?  And I think

18  the answer may very well have been yes at the time.

19          So what do we do about it?  Well, there are

20  two other avenues -- three other avenues that

21  fairness militated in favor of.  One was a

22  substantial adjournment, as Mr. Davidson suggested.

23  One was a mistrial, which the only downside on that

24  is cost and finding court time.  But those are not

25  available anymore.  So we're left with the third

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9344

1     alternative, which is to grant a new trial on Count

2     1.

3              And as Mr. Burke better laid out, it does

4     not appear to be any aspect of fairness that would be

5     offended by granting a new trial.  But in fact, the

6     very issue of fairness would be supported by a new

7     trial, which Mr. Jaramillo would be subject to the

8     kind of vigorous cross-examination that the

9     Constitution anticipates.

10             Thank you, Your Honor.

11             THE COURT:  Thank you, Mr. Castle.

12             One thing I would ask you -- and this

13    relates a little bit to what Mr. Davidson was arguing

14    about adjournment at the time -- I guess the reason

15    that I didn't think that adjournment was going to be

16    of any help was because, as Mr. Benjamin pointed out,

17    y'all had been trying to talk to this guy for two

18    years, and he wasn't talking to you.  And I didn't

19    know what adjournment was going to do.  It looked to

20    me like the only thing I could really do for the

21    defendants is tell the Government:  Don't put him on

22    as witness one; push him way down, give you some time

23    to prepare.  But all you were going to be able to

24    prepare from, in a reality sense, was not your own

25    investigations, but really from what Mr. Jaramillo

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9345

1    was telling Mr. Acee.  That was it.  There wasn't

2    going to be any other real source of information.

3            Your thoughts on that?  That's my memory as

4    to why I didn't think adjournment was --

5            MR. CASTLE:  Yes, Your Honor.  If trial in

6    this case -- without disclosing work product, in

7    essence, but if a new trial in this case were to be

8    granted, the defense would be doing background

9    investigation on Mr. Jaramillo that went beyond just

10   talking to him.  In fact, almost every one of these

11   witnesses in this case refused to talk to the

12   defense.  And so we didn't use that as a primary

13   investigative tool.  We talked to neighbors, we

14   talked to family members.  We pulled records on prior

15   convictions.  We looked at whether they had a history

16   of dishonesty.  We subpoenaed their records from the

17   Department of Corrections, which the Court had

18   granted on numerous occasions.

19           We didn't have Mr. Jaramillo's Department

20   of Corrections records to see, you know, where his

21   cell block, where his cell was, who he'd been with,

22   whether he had other infractions, those kinds of

23   things.  We weren't able to look to see if he had

24   mental health issues at all.

25           So those are the kinds of investigative

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9346

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 58

```
 1    tools that would have been used, and were used at

 2    trial to effectively cross-examine people.  For

 3    example, like Eugene Martinez was used, not a single

 4    part of examination of Eugene Martinez was based upon

 5    a voluntary interview that Mr. Martinez had with the

 6    defense.  Same thing with Mr. Lujan.  That was -- the

 7    cross-examination there was based upon his Department

 8    of Corrections records and his performance there at

 9    the Department of Corrections, his mental health

10    history, and things of that nature.

11            So the effective cross-examinations are

12    often independent of the witness' statements.  And so

13    that's the kind of material that we would have been

14    able to obtain with an adjournment.  The reason I

15    said three days is not, it wouldn't have been

16    sufficient, is I think that number was in a normal

17    case, where someone is indicted within a reasonable

18    time, like a year, of a crime, and there are very few

19    witnesses.

20            Given the fact that this case happened so

21    many years before, the need for a longer adjournment

22    was apparent.

23            THE COURT:  All right.  Thank you, Mr.

24    Castle.

25            Did anybody else have anything they want to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9347

```
 1   say on the defense side?  I see you standing up,

 2   Mr. Burke.  Did you have anything further?

 3              MR. BURKE:  No, Your Honor.

 4              THE COURT:  All right.  Mr. Castellano, if

 5   you wish to respond to Mr. Joe Gallegos' and

 6   Mr. Troup's motions for a new trial.

 7              MR. CASTELLANO:  Yes, Your Honor.

 8              THE COURT:  Mr. Castellano.

 9              MR. CASTELLANO:  Addressing real quickly

10   Mr. Castle's comments about remedies and the things

11   of that nature --

12              THE COURT:  Can I ask Mr. Castle a

13   question?

14              MR. CASTELLANO:  Sure.

15              THE COURT:  This has nothing to do with the

16   motion for new trial.  But it was something you said

17   at the beginning about the resources.  And you were

18   kind enough, Mr. Castle, to spend some time on this

19   new proposal for us to have someone over at the

20   Federal Public Defender's office reviewing bills and

21   things.  How is that working out?  We now have --

22   this case has lasted long enough to be under my

23   regime, where I reviewed every voucher.  And now

24   we've got Marc Robert over there.  How is it working

25   out?  Does anybody have any sense of that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9348

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9349

```
 1              MR. CASTLE:  It started off rough, but it's
 2    much better.  I can tell the Court, in Albuquerque,
 3    in New Mexico, is so much better than the Central
 4    District of California that prides itself on its, I
 5    guess, status in the country.  So I have no problems
 6    with it over the last year or two.
 7              THE COURT:  How about you, Mr. Burke?
 8    Weren't you the one that wrote me a letter, and I
 9    shared it with all my colleagues?
10              MR. BURKE:  I did.
11              THE COURT:  And how -- comparing regimes,
12    what do you think?
13              MR. BURKE:  I believe that Mr. Castle's
14    comments are the same as mine.  I think it has worked
15    out.  It seems to be working out better.
16              THE COURT:  Okay.
17              MR. BURKE:  And I've always -- I just don't
18    know judges that really want to be doing it,
19    personally.
20              THE COURT:  Yes.  I certainly have
21    colleagues that feel that way.  I mean, I guess I
22    don't walk into each day and say:  Well, these are
23    the ten things I want to do and the ten things I
24    don't want to do, and then act accordingly.  I mean,
25    we all have stuff we've got to do.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              Okay.  I appreciate that.  I wondered what
 2      you thought about -- now that -- and I relied heavily
 3      on your comments to vote on that issue.  I keep
 4      wondering if it's a new fangled thing, and wonder
 5      where we'll be five years from now, if we'll all
 6      still be thinking it's a good idea.  But anyway, I
 7      looked at your comments, and I appreciate them again,
 8      and used them to vote.  And let's give it a try.
 9              Thank you, Mr. Burke.
10              THE COURT:  All right.  Mr. Castellano.
11              MR. CASTELLANO:  Thank you, Your Honor.
12              Starting with Mr. -- some of Mr. Castle's
13      comments regarding what's fair and what options we
14      have at this point.  The case law typically tells us
15      that, as the Court mentioned earlier, finality is
16      something that we need in criminal cases and in other
17      cases.  And at this point I would ask the Court not
18      to grant the new trial, because finality is what
19      we're looking for.  New trials are disfavored.  And
20      the defendants have a right to appeal.  So this isn't
21      the last step for them or the last chance they have
22      at any remedy.  The real remedy in this case will be
23      an appeal.  And I think these arguments this morning
24      really aren't addressed towards this Court.  I think
25      they are addressed to the appellate court.  Which is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9350

 1 │ appropriate.  I think that's ultimately where the

 2 │ decision needs to be made on this based on finality

 3 │ and the fact that new trials are disfavored.

 4 │         To answer your question earlier, I think

 5 │ you did file an order which was Doc 2207.

 6 │         THE COURT:  Is it just an order, or was it

 7 │ a memorandum opinion?  Because I've got, floating

 8 │ around somewhere --

 9 │         MR. CASTELLANO:  I think it's a shorter

10 │ opinion.  It's an order, it's a short order.  And

11 │ then the Court also filed a chart with James

12 │ statements related to Mr. Jaramillo, which was Doc

13 │ 2206.

14 │         THE COURT:  Yeah, I need to find -- I

15 │ worked -- it just may not have gotten filed.  I spent

16 │ a long time on Jaramillo.  And I've got an opinion

17 │ out there.  So I need to get it out to you, and then

18 │ review it to refresh my memory of exactly where I was

19 │ in allowing him to go forward.

20 │         MR. CASTELLANO:  And, Your Honor, Mr. Burke

21 │ had a good point.  Ultimately, I mean, obviously,

22 │ he's coming from an advocate position, we're coming

23 │ from an advocate position, but what matters is what

24 │ the Court thinks.  And the Court has already told us

25 │ what the Court thinks on each of these issues.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9351

```
 1              The Court has ruled previously on
 2   severance.  So unless the Court is willing to take a
 3   different direction on severance at this point, we
 4   have the Court's decision on severance.  The Court
 5   did sever the case, made a couple of severances over
 6   all the cases.  So the Court thought about these
 7   issues, and I think ruled appropriately.  There was a
 8   question, or a comment by Mr. Burke earlier about the
 9   Court giving us an hour over lunch to come up with
10   options for the Court regarding possible severance.
11              And it was actually Mr. Potolsky who made
12   the same argument that Mr. Burke did today.  You gave
13   us time to come up with three options.  And I
14   explained to the Court today that we only had an
15   hour, and that was the best we could come up with in
16   that time.  So certainly it wasn't in violation of
17   any order of the Court.  We explained that that was
18   the best option we could come up with in that period
19   of time.  Everyone was pressed for time.  And
20   ultimately, the option we came up with was the best
21   option, because everybody had his or her day in
22   court, and everybody had one trial.  And that
23   ultimately was the best conclusion we could reach.
24              THE COURT:  All right. Mr. Castellano,
25   before we go on, would this be a good time for me to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9352

```
 1    give Ms. Bean a break and let her rest her fingers?

 2              MR. CASTELLANO:  Sure.

 3              THE COURT:  All right.  We'll be in recess

 4    for about 15 minutes.

 5              (The Court stood in recess.)

 6              THE COURT:  Let's go back on the record.  I

 7    think we've got all the defendants and attorneys in.

 8    Mr. Castle, are you back on the phone?  Mr. Cooper,

 9    you might want to see if he's going to join us.  Mr.

10    Castle, are you there?

11              MR. CASTLE:  I am, Your Honor.

12              THE COURT:  All right.  Mr. Castellano, if

13    you wish to continue your argument on Mr. Troup and

14    Mr. Joe Gallegos' motions for new trial, you may do

15    so at this time.

16              MR. CASTELLANO:  Thank you, Your Honor.

17              THE COURT:  Mr. Castellano.

18              MR. CASTELLANO:  I won't argue anymore on

19    severance.  The Court has ruled on that.  So unless

20    the Court is inclined to change direction, I will

21    rely on the Court's prior ruling.

22              My next is Michael Jaramillo.  And the

23    Court has also ruled on that.  What I can tell the

24    Court is that he didn't debrief ultimately until

25    April 18, which is when we learned that he would be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9353

```
 1    willing to testify in the case.
 2           The pen pack had been disclosed on him on
 3    October 18 of 2016, so a year-and-a-half earlier.  So
 4    in anticipation of the chance that he might testify,
 5    we disclosed the STIU file on April 13, 2018, and his
 6    location history on April 16, 2018.  And if I
 7    remember correctly, the defense did impeach him from
 8    the STIU file, including a run-in he had with someone
 9    else in the prison.
10           So I understand it may not be what they say
11    they ultimately would have preferred, but they
12    certainly had impeachment material on him, including
13    the fact that he denied those charges, even to their
14    investigator.  So he gave them something to impeach
15    him with, even then.
16           And I liken Mr. Jaramillo to DNA or DNA
17    evidence with fingerprint that's found on the eve of
18    trial.  In those circumstances, any court has to
19    figure out the best remedy for what the court will
20    do:  Whether that's a continuance, whether it's a
21    mistrial, whether the evidence can be used at trial
22    after a delay with the chance for the defense to get
23    its ducks in a row to address that.  And the Court
24    did that in this case.
25           I attached part of the Court's reasoning to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9354

```
 1    our response.  And the Court indicated, as it says,
 2    "I indicated on Friday -- I think it was Friday --
 3    the thing we're struggling with Mr. Davidson -- and I
 4    pointed out to him what the remedy is.  As we know
 5    from the face of the statute there is no remedy to
 6    the violation.  And I therefore have to consider what
 7    remedy should be.  I concluded that exclusion is not
 8    an appropriate remedy in this case.  I think that's
 9    too Draconian in this case.  I know the defendants
10    have made arguments that they would have approached
11    certain things in the case differently.  But I don't
12    think they would have approached it differently.
13    Because even if the Government had put Mr. Jaramillo
14    on a witness list as a may call, they still at that
15    time didn't know what his testimony would be.  So I
16    don't think that they would have done anything than
17    much differently than what they had, in fact, done.
18            "I think the remedy that is appropriate
19    here is what I've done so far, and what I will
20    continue to do, if that's necessary and the defense
21    requests it, is push this evidence down so the
22    defendants have more time to deal with Mr. Jaramillo.
23    I don't think we're probably to the point that we've
24    done all we can.  But I think that the situation is
25    that this is too high of a cost to the seeking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   function to exclude this witness, and that the
 2   violation of the statute can be dealt with by pushing
 3   the testimony down to make sure that the defendants
 4   are fully prepared to deal with it.  And I think
 5   we've probably dealt with that situation.  If the
 6   defendants think they need more time or want more
 7   time, I'll probably bend over backwards to try to
 8   accommodate that.  But I don't think exclusion is the
 9   appropriate remedy."
10           And the Court did that, the Court bent over
11   backwards to accommodate the defendants.
12   Mr. Jaramillo was pushed back late in the trial, and
13   testified a month later, on May 14th, 2018.
14           And so I think all that was addressed.
15           One other passing comment was there was an
16   allegation that the Government knew Mr. Jaramillo
17   from DNA evidence.  And actually Agent Acee was
18   cross-examined on that at trial by Mr. Burke.  And
19   Mr. Acee indicated that none of the DNA reports
20   themselves had any indication that Mr. Jaramillo was
21   listed, and was not listed on the DNA reports.
22           Over my objection, Mr. Burke put on the
23   visualizer a document that was not admitted into
24   evidence, and those were the field notes by the DNA
25   analyst.  And the field notes said there was some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9356

1    indication or trace evidence of DNA submitted for

2    Mr. Jaramillo.  It's simply not true to say we knew

3    about him that far back, unless you went into the

4    minute details of the notes in this case.  So

5    Mr. Jaramillo did not show up on an actual DNA lab

6    report.

7            That's all I have regarding Mr. Jaramillo,

8    Your Honor.  Once again, you have ruled on this.

9    And, once again, unless the Court is inclined to

10   change its position, the Court should deny the motion

11   on that basis, leaving us only the jury instructions.

12           And Mr. Troup's team, I think this morning

13   is in the unenviable position of effectively arguing

14   that they were ineffective at trial.  And that's a

15   tough position to be in, I think, to now argue to the

16   Court that you were ineffective, and today to

17   convince the Court of that.

18           THE COURT:  Well, putting that predicament

19   aside, they make a point in their reply where they

20   really have the heart of their instruction argument

21   that you're conceding that I made some errors in the

22   jury instructions.  Are there any errors that the

23   Government thinks the jury instructions contained?

24           MR. CASTELLANO:  No, Your Honor.  And what

25   the defense alleges is that because we didn't address

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9357

1    certain points, we were conceding those points.  But

2    we weren't.  Because the main point was that the

3    burden is on them under the plain error standard.

4    And so I made --

5          THE COURT:  But after looking at

6    Mr. Burke's reply and all the instructions that he

7    lays out there, is there any one that you're going to

8    go up to the Tenth and say:  You know what, the judge

9    got it wrong, but it's plain error -- it doesn't

10   satisfy the plain error test?  Or are you going to

11   argue substantively that every one of those is

12   correct?

13         MR. CASTELLANO:  I won't have the final say

14   on that, because I'm not in the appellate division.

15   But I don't foresee us conceding error.

16         What I can tell the Court is, in response

17   to the reply, I did only a short amount of research

18   regarding the murder instruction.  The case from the

19   Tenth Circuit, or at least the one case I was able to

20   find is U.S. v. Pearson.  It's at 203 F.3d 1243.

21   It's from the Tenth Circuit in 2000.  What it states

22   is -- this is at Headnote 22 of the case, "Although

23   commission of a specified felony supplies the

24   constructive malice necessary to satisfy the malice

25   aforethought element of Section 1111 for felony

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9358

1     murder" -- there it's talking about felony murder,

2     and then moves on to second degree murder -- "second

3     degree murder, malice aforethought element is

4     satisfied by, one, intent to kill without the added

5     ingredients of premeditation and deliberation; two,

6     intent to do serious bodily injury; three, a depraved

7     heart; or four, commission of a felony when the crime

8     does not fall under the first degree murder

9     paragraph, Section 1111(a)."

10          And so the theory of second degree murder

11    in New Mexico was the intent to do serious bodily

12    injury.  So the instruction for second degree murder

13    the Court gave says that "the defendants knew their

14    acts created a strong probability of death or great

15    bodily harm to Mr. Castillo."  So that's where the

16    great bodily harm is mentioned.

17          So the Tenth Circuit has spoken on the

18    requirements for second degree murder, and that's

19    what I found related to their reply, Your Honor.

20          I do --

21          THE COURT:  What do you think of this

22    theory that Mr. Troup is advancing that it has to be

23    a generic murder charge there?  It can't be first

24    degree, second degree; it's just got to be a generic

25    murder charge for that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9359

1            MR. CASTELLANO:  I think he's right about

2    that.  I think that generally the generic or a

3    generic definition of murder applies.  And so you can

4    use the law of any of the states, if it generally

5    meets those requirements.  So what Congress said was:

6    You can't just rely on all 50 states; you need to

7    figure out whether or not the statute being used

8    meets the requirements of a murder.

9            And that's actually the reason why we

10   submitted two theories of murder, first and second,

11   because we thought both of those met the generic

12   definition of murder.  And that's actually why we had

13   two theories there.

14            THE COURT:  And the case that you're citing

15   here -- I'm just slow so bear with me -- you're

16   citing this Tenth Circuit case for what proposition?

17            MR. CASTELLANO:  Well, what qualifies as --

18   what intent is required for second degree murder in

19   the Tenth Circuit.

20            THE COURT:  So you're saying because this

21   satisfies the definition in the Tenth Circuit, it

22   would satisfy a generic definition of just murder for

23   the VICAR purposes?

24            MR. CASTELLANO:  I believe it would.

25            THE COURT:  What's the name of this case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            MR. CASTELLANO:  It's Pearson.  Again, it's

2     at 203 F.3d 1243, Tenth Circuit, 2000.  In that case

3     Pearson actually could not be convicted of second

4     degree murder because the robbery and accidental

5     killing didn't satisfy the types of implied malice

6     required because he testified that he had

7     accidentally fired and shot and killed the victim.

8     So an accidental killing in that case did not meet

9     the requirements for second degree murder.

10            So in terms of the jury instructions, I

11    only gave passing comments on each of those as

12    additional reasons why the Court should deny the new

13    trial.  But ultimately, the burden is on the defense

14    for plain error.  And so that's why there isn't more

15    argument on each of those, because it's not our

16    burden related to the instructions.  And as the Court

17    knows, you look at the instructions in the context of

18    the entire trial to determine whether or not the jury

19    had the right law on the right facts to apply to come

20    to a verdict.

21            So that's my short argument.  Because I am

22    relying on the Court's rulings, and as I said, unless

23    the Court is willing to change direction on any of

24    these, the Court should, therefore, deny the new

25    trial motions.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9361

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9362

```
 1              THE COURT:  What would you think about a
 2    request from me to you to talk -- who is going to do
 3    the appeal?  Mr. Richardson?
 4              MR. CASTELLANO:  Maybe Richard Williams,
 5    possibly.
 6              THE COURT:  Richard Williams.  All right.
 7    What if you ask him to look now at this jury
 8    instruction, the reply, and see if he's going to
 9    confess error on any one of those instructions and
10    then just rely on plain error review, or whether he's
11    going to defend substantively each one of those jury
12    instructions, and then just send me a letter and tell
13    me how the Government is going to proceed.
14              MR. CASTELLANO:  I'll do that, Your Honor.
15              I also disagree with the argument by
16    Mr. Burke that misprision was an option.  Because
17    misprision not only requires not reporting the crime,
18    it requires an affirmative act to cover up that
19    crime.  And I just don't see there is any evidence in
20    the record where that happened.
21              THE COURT:  Well, is -- and my memory is
22    vaguer on that than some of the other issues that are
23    raised here, but my memory is that you did not want
24    to go to the jury on that theory; you didn't want --
25    either you wanted a conviction on VICAR or nothing at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9362

 1  all.

 2          MR. CASTELLANO:  I don't recall that

 3  specifically either, but that's certainly a decision

 4  we would have made.  We would have not agreed to

 5  submit that instruction.

 6          THE COURT:  And it's not technically a

 7  lesser included offense, because the elements are

 8  different.

 9          MR. CASTELLANO:  I agree.

10          THE COURT:  All right.  Anything else,

11  Mr. Castellano?

12          MR. CASTELLANO:  No, Your Honor.

13          THE COURT:  All right.  Thank you,

14  Mr. Castellano.

15          Mr. Burke.

16          MR. BURKE:  Thank you, Your Honor.

17          THE COURT:  Mr. Burke.

18          MR. BURKE:  I just want to -- the Court has

19  fleshed out some discussion about Jaramillo, so I

20  won't be too long on that.  But I would point out

21  that what happened was, somehow or another, Sonia

22  Salazar was able to IPRA some files from the

23  Department of Corrections on Jaramillo, and we were

24  able to -- and they arrived on May 8.  So we had a

25  very short period of time to use those.  And we did

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9363

```
 1    do some things with those records, although I believe
 2    that the cross-examination was not terribly
 3    effective.  But what did show up as a result of that
 4    IPRA request -- those are records we got, the
 5    Government didn't provide those to us, those were
 6    Department of Corrections records.  And
 7    Mr. Castellano is correct, we did use those to
 8    impeach him.  But what it pointed out was -- for
 9    example, there was a video that was referenced in
10    those records.  And we were unable to get the video
11    promptly.  So we were unable to cross-examine him
12    from the video.  And there are very few things that
13    are more dramatic for a jury than to have a witness
14    under oath being proven to be a liar by a video.  So
15    that's one example.
16          And I would point out concretely that the
17    Billy Garcia investigative team, they're the ones
18    that finally ran to ground that Eugene Martinez had
19    been lying all these years about witnessing his
20    father's and brother's murder.  That was just hard
21    rock mining that was done.
22          And you know, I'm an advocate, so I don't
23    know whether I'm reliable on this.  But I remember
24    looking at the jury, and when they figured out that
25    Eugene Martinez was lying about witnessing his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9364

1    father's death, I think that was it for Eugene

2    Martinez.  But that's the kind of thing that you need

3    months and longer to develop.

4            And so the Court makes a legitimate point

5    about what else would you have done.  But there

6    really were things that we would have done to be more

7    effective in our cross-examination of Jaramillo.

8            And I wasn't sure exactly what

9    Mr. Castellano was saying about the Jaramillo DNA.

10   But the discovery that they provided us, 13063, says

11   "indications of Jaramillo."  I believe it's a trial

12   exhibit.  There is nothing vague about it.  We got it

13   from them.  And so the suggestion that somehow -- and

14   in the top right corner it's dated May 23, 2001.  And

15   it says it's on the cord.  So I'm not real clear what

16   that argument was.  But beginning May 23, 2001, there

17   is a DNA document in the DPS crime lab file that we

18   got from them saying "indications of Jaramillo."

19           And finally, I did note that when there was

20   the discussion of the Pearson case, there was no

21   language similar to the language in the second degree

22   murder statute of New Mexico talking about a strong

23   probability, which is very loose, and not the sort of

24   thing that goes with a general idea of murder.

25           And that's all I have, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Thank you,
 2   Mr. Burke.
 3              MR. BURKE:  Thank you.
 4              THE COURT:  Mr. Benjamin, do you have
 5   anything you want to add related to your motion,
 6   or --
 7              MR. BENJAMIN:  No, Your Honor.
 8              THE COURT:  -- anything else?  How about
 9   any of the other defendants?  Anybody want to say
10   anything?
11              Well, I want to track this opinion down
12   that I know that I worked very hard on to try to
13   satisfy myself.  But while there was a violation of
14   the statute, he should not be excluded.  So if I did
15   not issue that, then I will try to find it and get it
16   issued.  I thought I completed work on it, but it may
17   not have gotten out the door.  But in any case, I
18   think I have probably done everything I can do on
19   Jaramillo.  I'll review that opinion to try to put
20   myself and my thinking back into where I was that
21   first week of trial.  But I think I have done
22   everything I can on Jaramillo.  I think I pushed him
23   down.  I thought there was a lot of things that he
24   was impeached about.  And so I thought, given the
25   limited amount of information that everybody had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 78

1    about Jaramillo, we did what we did with -- had to do

2    with him at trial.

3            As far as severance, I recall -- I've got a

4    big work table in my chambers back in Albuquerque,

5    and I remember spreading out all the defendants early

6    on, and just staring day after day as I'd walk by,

7    and playing with different combinations.  And because

8    of the experience of the district judges in the

9    Second Circuit, and mostly there in the Eastern

10   District of New York, the Southern District of New

11   York, they handle some big defendant cases a little

12   bit more often than we do here.  I did want to push

13   these numbers down into single digits.  I was

14   somewhat guessing who might be at trial, who wasn't

15   going to be at trial, what we were all hearing about

16   different defendants, and then staring at the

17   combinations of counts and defendants.  At the time

18   you didn't know exactly how that was going to play

19   out, and so I always left open the possibility of

20   further severances.  But as it came down to trial

21   time, I actually thought that I got it about right.

22   And so I feel somewhat comfortable going into both

23   trials.

24           I remember -- certainly I thought about the

25   first trial, four defendants; got that about right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I was still sort of thinking as I went through that
 2    trial where we were going to be on the second trial,
 3    and thought it was about right.  And then on the
 4    third trial, which isn't DeLeon, but it was Mr.
 5    Baca's case, I thought we got it about right.
 6              So given the number of defendants we
 7    started with and the amount of counts we had, those
 8    things of that nature, I think the severance was a
 9    good break.  I think it needed to be break -- I still
10    believe it needed to be broken up once.  But I'm not
11    convinced that it didn't work out fairly well with
12    that.
13              So I'm not inclined to revisit the
14    severance.  I think probably that is an issue the
15    Tenth Circuit ought to look at.  Because I guess I'm
16    feeling, both before the trials and then after the
17    trials and during the trials, it was working out
18    pretty well given the decisions that had to be made.
19              On the jury instructions, I want to look a
20    little bit more at the jury instructions, but I'm
21    inclined to think that almost all of them I can say I
22    don't feel there is any error there.
23              I want to look a little bit closer at this
24    new issue in the reply about the murder charge and
25    the arguments that are made there, because those are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9368

 1   new.  And I just need to study the law.  It may be

 2   that I got it right; it may be that there is error

 3   there, but I think it's going to be a plain error.  I

 4   don't think it substantively infected the trial.  And

 5   so I'm not inclined to grant a new trial on that.  I

 6   do want to see what the Government has to say, and I

 7   want to look at some of these cases that have been

 8   brought to my attention.  But it seems to me that,

 9   even if there is some error there, under a plain

10   error review, it's pretty difficult if we didn't get

11   around to it until we found it in the reply, I think

12   it's a little hard to say it's plain error, given as

13   hard as we worked on those instructions.

14        So I'm inclined to not grant any motion for

15   a new trial on the basis of the arguments that

16   Mr. Troup and Mr. Joe Gallegos have raised.  But I'll

17   look at it and I'll give you an opinion on that.

18        All right.  Let's move then to, I guess

19   it's Arturo Garcia's motion for acquittal.  Mr.

20   Davidson, if you wish to argue that motion.  I know

21   that's been joined by a couple other defendants,

22   including Mr. Billy Garcia and Mr. Troup, and maybe

23   others.

24        MR. DAVIDSON:  Thank you, Your Honor.

25        THE COURT:  Mr. Davidson.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    MR. DAVIDSON:  You'll recall that at
 2     trial --
 3                    THE COURT:  When I was reading your motion,
 4     it looked to me like you were giving a document
 5     number which struck me as how incredibly high a
 6     number that is, a four-digit number, and it had a 2
 7     in front of it, if I recall.  That is the opinion I
 8     did get out on the interstate commerce here?
 9                    MR. DAVIDSON:  Yes, Your Honor, it was --
10                    THE COURT:  Give me the date on that
11     opinion.
12                    MR. DAVIDSON:  -- 2378.
13                    THE COURT:  And it came out when?  I think
14     it came out after I got back to Albuquerque, right?
15                    MR. DAVIDSON:  It came out -- I want to say
16     in August or September.  I'm not sure exactly the
17     date.
18                    THE COURT:  I think it's August, because --
19                    MR. DAVIDSON:  I know you had not issued it
20     as of the June 14 hearing on the Baca matter.
21                    THE COURT:  That is true.
22                    MR. DAVIDSON:  And I had filed my written
23     motion on, I believe, October 16.  So somewhere in
24     the middle there.
25                    THE COURT:  Now, it's my memory in that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9370

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 82

```
1    opinion I dealt with the issues that you raised, both
2    when you were making the oral directed verdict and
3    the motions during trial.  It dealt with those, and
4    it dealt with those that were in the written
5    document.  But I think I held out -- did I end up
6    holding some option that you could come back and
7    argue on the connection between Mr. Garcia's -- the
8    crime here, and interstate commerce, because he was
9    coming under the prong of trying to advance his
10   position within the enterprise rather than with drugs
11   or drug transaction?  I think I ended up --
12             MR. DAVIDSON:  Correct.
13             THE COURT:  -- after thinking about it
14   overnight saying:  The drugs, if that's the way
15   you're going, I'm going to deny motion for summary
16   judgment interstate commerce, but I want to think
17   more about whether advancing yourself in an
18   enterprise without any sort of drug connection,
19   whether that would satisfy it.
20             MR. DAVIDSON:  Correct.  And so --
21             THE COURT:  In the opinion did I leave that
22   open, or did I end up foreclosing that?
23             MR. DAVIDSON:  Well, in the opinion -- the
24   opinion didn't deal with anything I had submitted in
25   writing.  It was just dealing with the oral
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9371

```
 1    arguments.
 2            THE COURT:  And that was because this issue
 3    that I'm talking about right now was not part of your
 4    oral motion, right?
 5            MR. DAVIDSON:  I believe it was part of the
 6    oral motion.  So what we argued in the oral motion
 7    were three things, Your Honor.  One was for dismissal
 8    under Rule 12 (b)(2) for lack of jurisdiction.  And
 9    that kind of dovetails with a facial challenge to the
10    constitutionality of VICAR's exceeding Congress'
11    authority under the Commerce Clause.  And the third
12    argument was the as applied challenge, which Your
13    Honor is just referring to.  So I think at this point
14    I'll stand on the briefing that we already have with
15    respect to the 12(b)(2) lack of jurisdiction and the
16    facial challenge to VICAR, and focus on the as
17    applied.
18            And what Your Honor wrote in the memorandum
19    opinion and order, Document 2378, was that --
20            THE COURT:  What did I say specifically
21    about this one, where your client was -- the theory
22    the Government was going to the jury on was that he
23    did the crime to advance his position in the SNM
24    organization?
25            MR. DAVIDSON:  You didn't address that in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    depth, Your Honor.  What you said in the order was

2    that an as applied challenge on Commerce Clause

3    grounds to VICAR is a contradiction in terms.  And

4    there were three cases that you cited there:

5    Perez --

6            THE COURT:  So didn't I -- by making that

7    comment, wasn't I rejecting the argument that you

8    could say, because of the theory here -- that you

9    could argue that because of the theory that the

10   Government chose, you couldn't say that then the

11   VICAR statute was unconstitutional as applied?

12   Wasn't I, in the end, rejecting this issue that I had

13   left open?

14           MR. DAVIDSON:  Yes, I think that's correct.

15           THE COURT:  That's what I meant by -- I

16   don't think there is -- I don't think you get to

17   argue this.  There is not a doctrine out there that

18   really allows you to make this argument.

19           MR. DAVIDSON:  And so I guess what I'd like

20   to focus on this morning is why I think that you

21   should reconsider that line of reasoning, that

22   proposition, and to see if I can convince you that

23   there is an opening for an as applied challenge to

24   VICAR, particularly with the facts regarding Count 3

25   for Arturo Garcia in the Freddie Sanchez murder.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

DNM 9373

```
1              The first point there, Your Honor, is that
2     the murder of Freddie Sanchez is unlike the types of
3     activities in the cases cited by the Court in the
4     memorandum opinion and order.  One of the cases was a
5     U.S. Supreme Court case Perez, which involved a
6     statute that criminalized loan sharking, extortion in
7     credit transactions.  Well, loan sharking is
8     obviously a form of economic activity.  And so the as
9     applied challenge was rejected there because the
10    activity is economic.
11             The second case cited was Taylor.  It was
12    also a U.S. Supreme Court case.  And that involves
13    Hobbs Act robbery.  In that case, the defendants
14    attempted to steal or stole drugs or drug proceeds.
15    And the court noted there that the market for illegal
16    drugs is commerce over which the federal government
17    has jurisdiction.  Again, Hobbs Act robbery is
18    involved with economic activity and commerce.
19             The third case cited, and I believe it was
20    cited by the Government or relied on in their brief
21    in response to my brief was Farnsworth, which was a
22    922(g) felon in possession case.  And again, Congress
23    chose to, with 922(g)(1) regulate interstate commerce
24    in firearms, and wanted to exclude felons from that.
25    And the way they did that under the necessary and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9374

 1    proper clause was to then ban possession as well.

 2    And courts have held that banning possession, even

 3    though possession per se is not commerce, it was an

 4    effective way for Congress to regulate the market in

 5    firearms, and exclude felons from that.

 6              So those three examples:  A felon in

 7    possession of a firearm, Hobbs Act robbery, and loan

 8    sharking are all very much more connected to economic

 9    activity than the Freddie Sanchez homicide, and

10    anything, construing the evidence in the light most

11    favorable to the Government, Arturo Garcia was shown

12    at trial to have done.

13              In the Government's briefing it does not

14    dispute, and in fact tacitly concedes that Freddie

15    Sanchez was not involved in drug trafficking, in any

16    drug trafficking activity of the SNM.  In the

17    Government's answer brief there was no dispute of the

18    noneconomic nature of the Freddie Sanchez homicide.

19    And their brief is Document 2435.

20              The only statements regarding drug

21    trafficking anywhere in their brief is to the effect

22    that the SNM itself engaged in drug trafficking, not

23    that Freddie Sanchez did, or that the Freddie Sanchez

24    homicide was related in any way to the drug

25    trafficking activity of the enterprise.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1          The Freddie Sanchez homicide and my
 2  client's involvement in it, again construing the
 3  evidence in the light most favorable to the
 4  Government, has less of a connection to interstate
 5  commerce or activity of an economic nature than the
 6  Court's hypothetical.
 7          Now, in Your Honor's memorandum opinion and
 8  order at page 8, Footnote 4, the Court identified as
 9  a scenario where commercial activity does not affect
10  more than one state, the following hypothetical:
11  Your Honor said:  "Imagine a small group of people
12  become stranded in a remote location, Alaska perhaps,
13  with no realistic possibility of escape.  Bartered
14  transactions with that group would qualify as purely
15  intrastate commerce."
16          Now, taking that hypothetical that Your
17  Honor proposed in the memorandum opinion and order,
18  Document 2378, and comparing the evidence that came
19  out at trial regarding the Freddie Sanchez homicide,
20  there is less of a connection to economic activity
21  for anything interstate involving economic activity
22  than in the hypothetical.  Barter is obviously
23  economic activity.  The Freddie Sanchez is
24  noneconomic.  The only way you could connect the
25  Freddie Sanchez murder to interstate commerce is to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     pile inference upon inference to meet the commerce

2     element.

3            And there is a very well-reasoned opinion,

4     Your Honor, from the Eastern District of Michigan in

5     1999.  My research indicates that it's still good

6     law.  It has been disagreed with by other courts.

7     And I have a couple copies of that opinion, if you'd

8     like to see it.  And I have one for the Government as

9     well.

10           THE COURT:  Sure, I'd like to see it.

11           MR. DAVIDSON:  In the Garcia case -- this

12    is from the Eastern District of Michigan 1999, Judge

13    Nancy Edmunds, a Bush appointee for 1992, she noted,

14    "The Court here" -- referring to the U.S. Supreme

15    Court in Lopez, in which U.S. Supreme Court struck

16    down the Gun-free School Zones Act as overreaching

17    commerce clause power of Congress.  She noted that,

18    "The Lopez court rejected the Government's argument

19    that crime in general has a negative effect on

20    interstate commerce, and cautioned against piling

21    inference upon inference in a manner that would bid

22    fair to convert Congressional authority under the

23    Commerce Clause to a general police power of the sort

24    retained by the states."

25           The only way you can connect the Freddie

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9377

1    Sanchez homicide to interstate commerce is by

2    engaging in that sort of inferential piling upon

3    inference that the U.S. Supreme Court in Lopez

4    forbade.

5           So the three cases that I would argue, Your

6    Honor, that you could rely on in getting to the

7    relief we're requesting are the following:  The Lopez

8    case in 1995, where they struck -- the U.S. Supreme

9    Court struck down the Gun-free School Zones Act;

10   Morrison, in 2000, where they struck down the civil

11   remedy provision of the Violence Against Women Act;

12   and the third is this district court case from the

13   Eastern District of Michigan, from 1999, the Garcia

14   case.

15          Under these three cases, Your Honor, I

16   think that the Court should interpret Section

17   1959(a)(1), the critical provision of the VICAR

18   statute that's implicated here, that section should

19   be interpreted to require a substantial effect on

20   interstate commerce.

21          In the Government's briefing I understand

22   them to be arguing that only a minimal or de minimis

23   effect on interstate commerce is needed.  So their

24   argument, as I understand it -- and Mr. Castellano

25   can certainly ably speak for the Government -- but as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   I understand their argument and their theory of the
 2   case, they don't need to show any connection between
 3   the Freddie Sanchez homicide and any economic
 4   interstate activity.  All they have to show is that
 5   it was done in furtherance, for Mr. Garcia to
 6   maintain or further his position within the gang.
 7   And then because the next inference is that because
 8   the SNM Gang was involved in drug trafficking
 9   activity -- which certainly the evidence at trial
10   showed -- their argument is that that's how you get
11   to jurisdictional hook for Congress to regulate this
12   sort of activity, and for this Court to have the
13   authority to punish it.
14             THE COURT:  What do you think -- I mean,
15   granted, I've now put it into an opinion -- about my
16   thought that you can't raise these?  You know, I
17   understand what she's saying, and I left it open for
18   another day.  But what do you think about my argument
19   or my conclusion that you just can't raise an as
20   applied challenge to -- in an interstate commerce
21   case?  And that's not what's going on in the Supreme
22   Court cases.  They're not saying as applied to this
23   defendant it's unconstitutional.  They're saying the
24   statute is unconstitutional.
25             MR. DAVIDSON:  I thought that in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Gonzales against Raich case involving the

 2    constitutionality of the Controlled Substances Act,

 3    Justice Stevens' opinion he explained "as applied

 4    challenges are available to statutes regulating an

 5    economic class of activities, because when a general

 6    regulatory statute bears a substantial relation to

 7    the commerce, the de minimis character of

 8    individual's instances arising out of that statute is

 9    of no consequence."

10            So my understanding is, if you take the de

11    minimis standard as being the standard, then we can

12    bring an as applied challenge, but it's going to

13    lose, because all you need is a de minimis standard.

14    But I think, if you look at the logic of Lopez,

15    Morrison, and I would argue this well-reasoned

16    opinion --

17            THE COURT:  But that is -- I mean, I don't

18    criticize the reasoning of the Garcia case from

19    Michigan.  But I'm just saying you don't go down that

20    path at all.  You just don't go there, because you

21    can't raise -- you can't pick out one defendant and

22    say:  I get to raise an as applied.  You just don't

23    have that ability with the Commerce Clause.

24            MR. DAVIDSON:  Except they did that in the

25    Raich case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  I'm not sure they did.  I'm not
2    sure they did.  Now, Stevens might have said
3    something, but I'm not sure that's what they did in
4    that case.  They struck that statute down.
5              MR. DAVIDSON:  They had raised a -- well,
6    no, the Supreme Court upheld the CSA, the Supreme
7    Court upheld the Controlled Substance Act, and said
8    that that trumped the California medical marijuana
9    regime.  So that's one where the facial challenge was
10   rejected by the Supreme Court.  And then my
11   understanding of the Raich case is that Justice
12   Stevens then went on to look at the as applied
13   challenge.  And clearly, Judge, Garcia --
14             THE COURT:  Was he the writer of the
15   majority opinion?
16             MR. DAVIDSON:  Correct, Your Honor.
17             And, of course, Justice Rehnquist wrote
18   Lopez and Morrison.  And those statutes were struck
19   down facially.  But I do think you still do get to an
20   as applied challenge.  In each of the cases where the
21   court has said:  All you need to do is have a minimal
22   connection were cases where the underlying activity
23   was already economic.  Let me see if I can find those
24   cases.  So the Tenth Circuit in Bolton, which is
25   relied upon -- that's a Tenth Circuit case from 1995,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9381

```
 1   68 F.3d 396.  At page 3999, the court said, "If a
 2   statute regulates an activity which the repetition in
 3   aggregate has a substantial effect on commerce, then
 4   the de minimis character of individual instances
 5   arising under that statute is of no consequence."
 6   But the antecedent of that condition isn't met here.
 7   Because here, the statute, VICAR, doesn't regulate
 8   activity which the repetition in aggregate has a
 9   substantial effect on interstate commerce, because
10   that line of reasoning has been ruled out by Lopez.
11   Because as the Court said in Lopez:  If you go down
12   that road of saying Congress gets to regulate crime
13   because crime in aggregate has a negative impact on
14   the economy -- which no one would dispute -- the
15   Supreme Court has said:  Then you're going to have a
16   centralized government, and that destroys Federalism.
17   So that's against the very structure of the
18   Constitution; it's against the Tenth Amendment; it's
19   against Article 1, Section 8, where the Commerce
20   Clause is; it's against everything that is in the
21   structure of our government.
22           So the Government in their brief, I think,
23   cites some cases that have the last part of that
24   conditional from Bolton.  But you don't get there
25   unless you're talking about a statute that already
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    regulates economic activity.

 2            But clearly, a murder that occurs within a

 3    state is not economic activity.  So the problem is,

 4    if Congress is regulating noneconomic activity, then

 5    the only way you get to interstate commerce nexus

 6    that would allow Congress to regulate individual

 7    crime is to show a connection between the crime and

 8    interstate commerce.  And you can't get there in this

 9    case.

10            Under the Government's theory of the case,

11    Your Honor, the connection would be that my client

12    was trying to maintain or increase his position in

13    the SNM by ordering the hit on Freddie Sanchez.  And

14    because that was the gang-related act, and then the

15    gang itself is involved in something that impacts the

16    economy, that via those inferences that gets you to

17    interstate commerce.  But I don't think -- Lopez

18    basically doesn't allow you to do that.

19            The case, Your Honor, that's very analogous

20    to my client's situation is this Garcia case from

21    Michigan.  There, the Court said, "Even if the

22    Government proves beyond a reasonable doubt that

23    Garcia murdered Evan Ison -- who was the victim in

24    that case -- "to enhance the power and authority of

25    the Cash Flow Posse" -- that's his gang in that case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    -- "and his role within it, that murder still in the

2    end is a street crime committed by a thug as part of

3    a local turf war in southwest Detroit."

4              Your Honor, what the Government has done in

5    this case in Count 3 is to attempt to regulate and

6    punish a local crime that has no interstate commerce

7    nexus.

8              If Your Honor has no further questions,

9    that's all I have.

10             THE COURT:  Well, let me hear from the

11   Government, and then I may have some further

12   questions.

13             Anybody else want to argue, comment on this

14   motion?  I know there was some joinders and have been

15   in the past on this interstate commerce issue.  I

16   know that I kind of foreclosed it on those defendants

17   that were connected to the enterprise by drugs, but I

18   had this one little issue that I was continuing to

19   look at.

20             Mr. Benjamin.

21             MR. BENJAMIN:  Your Honor, we joined, but

22   I'm not going to be able to compare to what Mr.

23   Davidson said.  So I join it.

24             THE COURT:  All right.  Mr. Cooper.

25             MR. COOPER:  Your Honor, the same arguments



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    that are made with regard to the Freddie Sanchez

2    murder are applicable, I believe, to the

3    Castillo/Garza murders alleged in Counts 1 and 2.

4              THE COURT:  All right.  Thank you,

5    Mr. Cooper.

6              Anyone else?

7              All right.  Mr. Castellano.

8              Let me ask Mr. Davidson one question before

9    I hear from you.  Was there any appeal of this Garcia

10   opinion from the judge in the Michigan case?

11             MR. DAVIDSON:  Not that I could see, Your

12   Honor.  When I looked at the key cite, I was

13   wondering the same thing:  Why did that not get

14   appealed?  Perhaps, there was some deal that was made

15   or something after the convictions went away.  There

16   were also RICO convictions and other things going on

17   in that case.  But when I Shepardized it, that's what

18   I found.

19             And in candor to the Court, it has been

20   criticized by other courts.  But I find it to be more

21   persuasive than those other courts.

22             THE COURT:  Did the defendant that won this

23   particular motion, did this defendant get convicted

24   on other charges in this case?  I mean, that might

25   have been the reason the Government didn't do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9385

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9386

 1   anything with it because the defendant got convicted

 2   on other charges.

 3            MR. DAVIDSON:  I believe so, Your Honor.

 4   Like I said, there were RICO -- it was a single

 5   defendant case at this point -- and there were RICO

 6   counts as well.

 7            THE COURT:  I guess -- help me think

 8   through this.  I mean, in your particular motion,

 9   it's not really a motion for a new trial.  There is

10   nothing else to be done with a new trial.  There is

11   nobody saying:  We've got more evidence or a new

12   theory or anything like that.  So there is no reason

13   to grant a new trial.  The best I could do for you is

14   to set aside the verdict as to Mr. Garcia, and then

15   the Government appeal it.  Or I leave it in place and

16   you appeal it.  But it looks to me like it's headed

17   to the Tenth Circuit on this issue regardless.  But

18   it's not a new trial issue.  Would you agree with

19   that?

20            MR. DAVIDSON:  Correct, Your Honor.  We

21   didn't ask for a new trial.  We asked for acquittal

22   under --

23            THE COURT:  It's just a legal issue that

24   either I'm getting right or I'm not getting right.

25            All right.  Mr. Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9386

```
 1              MR. CASTELLANO:  Your Honor, I like it
 2    better when Mr. Davidson does the appeal.  So I like
 3    that option better of the two.  So if you leave
 4    things as they are, then Mr. Davidson can get started
 5    on the appeal.
 6              I think that what I'm looking at -- I had a
 7    short time to digest the Garcia case, but it seems to
 8    me that the Court, even in that case, indicates that
 9    the activities of the Cash Flow Posse seemed to have
10    weak ties to commerce.  And so I think we're in a
11    slightly different posture with that case than this
12    case.
13              There was another part I looked at.  The
14    court, on page 811 of that opinion, in the upper
15    right-hand corner says, "In this case the
16    enterprise's connection to interstate commerce is
17    weak.  The government merely alleges that some of its
18    members drove within the state on an interstate
19    highway in order to commit acts of murder.  It also
20    alleges that the gun used in connection with the
21    Racketeering Act alleged in Count 1 may have crossed
22    state lines."
23              And so, once again, this is a focus on the
24    enterprise and the court is saying that it's pretty
25    weak on -- under VICAR and the substantial effect.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9387

 1           But I do agree that the case law says that

 2    only a de minimis amount or effect on commerce is

 3    necessary.

 4           But one of the other cases I cited, which

 5    was the Miller case, on page 5 of my response, which

 6    states, "Courts have also held that where the

 7    racketeering enterprise's business is narcotics

 8    trafficking, that enterprise must be viewed as

 9    substantially affecting interstate commerce."

10           So even though the case law supports a de

11    minimis effect on commerce, in this case the SNM was

12    involved in drug activity, which means there was a

13    substantial effect on commerce.

14           And they also cite to Congress' findings at

15    21 USC Section 801(3), once again indicating that

16    even Congress recognizes the effect on commerce that

17    drug trafficking has.

18           And in this case, specifically as to

19    Mr. Garcia, there is evidence that he, himself, was

20    involved in narcotics activity.  And so in this case

21    we have an example of not only the enterprise itself

22    engaged in commerce, but the defendant himself, not

23    necessarily the victim, but that the defendant

24    himself engaged in drug trafficking activity.  So I

25    think we're pretty solid on that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9388

```
 1              The other examples the Court heard were
 2    that members traveled in commerce through interstate
 3    compacts.  Their activities caused them to be moved
 4    out of state by the Corrections Department.  There
 5    was travel.  There is also sending narcotics through
 6    commerce.  Gerald Archuleta is an example of someone
 7    who received drugs in Tennessee from New Mexico.
 8              So I think, even if you look at the Garcia
 9    case, really what we have here is the judge in
10    Garcia, or the court in Garcia, alleging that the
11    enterprise's effect on commerce was pretty thin.  In
12    this case we have much more evidence than that.
13              THE COURT:  Well, are you not excited about
14    defending my theory on the case that I just don't
15    think that you can get an as applied challenge:  One
16    defendant can't raise it; it's got to go to the
17    entire statute or none at all?
18              MR. CASTELLANO:  I actually do like that
19    theory.  I can't say I thoroughly investigated that
20    theory by the Court.  But it seems to me that's the
21    way the statute is written.
22              And I cited also to the -- I believe the
23    Torres case on page 3 of my opinion.  And even in
24    Torres, after addressing the facial challenge, the
25    statute indicates what the Court has addressed, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9389

```
1    it says, "Specifically, Section 1959 prohibits the

2    commission of a violent crime as consideration for

3    the receipt of, or as consideration for a promise or

4    agreement to pay anything of pecuniary value from the

5    enterprise engaged in racketeering activity."  And

6    then enterprise as an entity is an enterprise that

7    engages in activity.

8               So I actually do like the Court's theory.

9    I don't know much more about it.  But it makes sense

10   to me that you can't take a piecemeal approach to a

11   gang that is in -- by itself, engaged in racketeering

12   activity, and try to isolate that particular member

13   and say:  Government, you must prove that this person

14   himself did.

15              But I think, even if that were the case,

16   Mr. Garcia himself was engaged in activity.  So the

17   Court's opinion aside, which I do like, I think we

18   could prove it even if there was an applied -- as

19   applied challenge specifically to the defendant.

20              But I like the Court's reasoning,

21   certainly.

22              THE COURT:  All right.  Anything else,

23   Mr. Castellano?

24              MR. CASTELLANO:  No, sir.

25              THE COURT:  Thank you, Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Mr. Davidson, do you have anything further
 2    on your motion?
 3              MR. DAVIDSON:  Your Honor, one of the
 4    arguments relied upon by the Government is the fact
 5    that Congress in the statute found an interstate
 6    connection.  But the U.S. Supreme Court noted in
 7    Morrison that the question whether interstate
 8    activity affects interstate commerce sufficiently to
 9    come under the commerce clause power is a judicial
10    determination.  Congress can't just evade judicial
11    review by the judiciary by just putting whatever it
12    wants to in the statute.
13              Now, the reason that sometimes that gets
14    noted that Congress made that finding was because one
15    of the problems in the Lopez case, the Gun-free
16    School Zones Act, was that Congress had made no
17    jurisdictional -- they had made no findings of any
18    connection to interstate commerce.
19              But our claim is not that gang activity
20    that involves drug trafficking doesn't have an
21    interstate commerce element.  Our claim is that the
22    evidence that was produced at trial regarding the
23    murder of Freddie Sanchez and my client's involvement
24    in it, again construing evidence in the light most
25    favorable to the verdict (sic), even when you do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   that, you still don't get a connection to interstate

 2   commerce.  You have to pile inferences upon

 3   inferences in ways that the U.S. Supreme Court has

 4   said are forbidden if we are going to maintain a

 5   federal system of government, where you have states

 6   which have traditional police power to regulate crime

 7   and things of that nature.

 8          With respect to the point that, in the

 9   Garcia case out of the Eastern District of Michigan,

10   that that particular gang activity -- the activity of

11   that gang may have had a weak connection to

12   interstate commerce, that doesn't suffice to

13   distinguish that case from our case.  Because the

14   analysis of the judge there was that the Government

15   needs to show a substantial connection between the

16   individual conduct and the interstate commerce.

17          This is what the court said about that:

18   "VICAR has no jurisdiction element which ties either

19   the violent act or the conduct of the defendant to

20   interstate commerce."

21          And that's unlike RICO.  For instance, in

22   the RICO statute, RICO says, Section 1962(c), "It

23   shall be unlawful for any person employed by or

24   associated with any enterprise engaged in, or the

25   activities which affect interstate or foreign

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

DNM 9392

1    commerce, to conduct or participate directly or

2    indirectly in the conduct of such enterprise's

3    affairs through a pattern of racketeering and

4    collection of unlawful debt."  That express

5    connection to interstate activity of the individual's

6    conduct is not in the VICAR statute.  What VICAR

7    says, in Section 1959(a)(1)is, "Whoever has

8    consideration for the receipt of, or as consideration

9    for promise or agreement to pay anything of pecuniary

10   value from an enterprise engaged in racketeering

11   activity, or for the purpose of gaining entrance, or

12   to maintain or increase position in an enterprise

13   engaged in racketeering activity, where" -- et

14   cetera, "commits assault resulting in serious bodily

15   injury upon, or threatens to commit a crime of

16   violence against any individual" --

17            THE COURT:  You're reading from the Garcia

18   case?

19            MR. DAVIDSON:  This is from Section

20   1959(a)(1), correct.

21            The point is that the VICAR statute doesn't

22   have the close tie to interstate commerce that RICO

23   has, which is why all the RICO cases cited by the

24   Government are easily distinguishable.  The problem

25   under VICAR, is that it criminalizes activity that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   has the intent of maintaining or increasing position
 2   of a gang.  But as the court in Garcia noted, the
 3   statute itself doesn't have a connection to --
 4   doesn't require a connection to individual -- doesn't
 5   require in the statute a connection between the acts
 6   of the individual and interstate commerce.
 7            So what you have happening is it allows you
 8   in a way that's unconstitutional to criminalize a
 9   purely state activity that's criminal in nature,
10   without there being a sufficient interstate commerce
11   connection.
12            So for these reasons, Your Honor, as
13   applied challenges under the Commerce Clause are
14   definitely allowed.  And I'd be happy to provide
15   further briefing to the Court on that element.  It
16   seemed in the research that I did in preparing for
17   today's argument that I didn't find any cases that
18   stood for the proposition that you can't bring an as
19   applied Commerce Clause challenge to VICAR.  The
20   cases that had a de minimis requirement were cases
21   where the statute already regulated economic
22   activity, which of course this statute doesn't.
23            If there are no further questions, that's
24   all I have.
25            THE COURT:  All right.  Thank you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Davidson.

 2            Any other defendant want to speak on this

 3    issue?

 4            Ms. Jacks.

 5            MS. JACKS:  Your Honor, I never understood

 6    this issue until this morning.  And I join the

 7    arguments on it.  We had not joined, and I'd ask the

 8    Court's permission to join Mr. Davidson's motion on

 9    behalf of Mr. Sanchez.

10            MR. LOWRY:  Same for Mr. Baca.

11            MS. BHALLA:  Same for Mr. Herrera as well,

12    Your Honor.

13            THE COURT:  You know, on the people who had

14    drug connections early on, I thought about it one

15    night and I didn't see that.  I think that's pretty

16    tough for the defendants that -- where they -- where

17    the Government went to the theory on the drug issue.

18    The one that I thought was intriguing was the

19    defendants' that only -- the Government was going to

20    the jury on the theory that they were advancing their

21    position within the organization.  So I think it's a

22    really tough hold to try to make the argument on

23    drugs.

24            But I think it's an interesting issue on

25    those that are only committing a crime to advance
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1   their position in the organization.

2          I guess my thoughts are that I've probably

3   done the best I can on this.  It's going up to the

4   Tenth Circuit in this case one way or another,

5   whether I set aside Mr. Garcia's conviction, or I

6   leave it in place.  And I think I probably thought

7   about it, and I will think about it again.  I'll take

8   it as a motion to reconsider the opinion I got out in

9   August.  But I did take it back to Albuquerque, gave

10  it a little bit more thought, and came up with that

11  theory.

12         I could be wrong.  It could be that they

13  can raise these issues.  And even if you can raise

14  them, then you've got the issue of whether there is a

15  de minimis or lack of substantial impact on

16  interstate commerce.  But I'm still somewhat -- maybe

17  I persuaded myself on this issue.  But I'm not

18  inclined to run away from it right at the moment.

19  But I'll take a look at it, and look at this district

20  judge's opinion and see.

21         But I'm inclined to deny the motion, just

22  leave it in place, and let the Tenth Circuit deal

23  with it.  Because it's not really a new trial issue.

24  It's more of a legal issue, that we have a nice

25  robust record for them to look at.  If they're going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9396

1    to decide this issue, this might be a good one for

2    them to decide it, rather than me not giving them an

3    opportunity, or me saying something that really

4    doesn't make any difference, because it's probably an

5    issue for the appellate courts.

6            MR. DAVIDSON:  Your Honor, could I speak to

7    that briefly?

8            THE COURT:  You may.

9            MR. DAVIDSON:  It's my understanding -- and

10   my colleagues at the U.S. Attorney's Office can

11   correct me if I'm wrong -- but if you were to rule in

12   favor of my client, there may not be an appeal,

13   because it would have to be -- it would have to go

14   through the Solicitor General's Office to approve an

15   appeal by the Government, and oftentimes, I

16   understand the Solicitor General's Office would

17   reject that application, so they might not actually

18   have an appeal if you rule in our favor.  Whereas, if

19   you rule in their favor, you will have an appeal.

20           THE COURT:  Seems like they've got my name

21   on the wall this year, because I sure am getting a

22   lot of appeals from the Government.  So it may help

23   you if I just leave it in place rather than setting

24   it aside.  But in any case, I'll take a look at it.

25           MR. DAVIDSON:  Thank you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9397

```
 1                 THE COURT:  All right.  So let's go to

 2      Andrew Gallegos' motion for a new trial.  Ms.

 3      Torraco, are you going to argue this motion?

 4                 MS. TORRACO:  Yes, Your Honor.

 5                 THE COURT:  Ms. Torraco.

 6                 MS. TORRACO:  What exhibit number are we

 7      on?

 8                 THE COURT:  Well, for your motion we're

 9      going to start over.  So if you have exhibits, let's

10      start with A, for purposes of Mr. Andrew Gallegos'

11      motion.

12                 MS. TORRACO:  I believe the Government is

13      going to stipulate to the admission of Exhibit A,

14      which is a trial transcript from Morgan Ramirez.

15                 MS. ARMIJO:  No objection, Your Honor.

16                 THE COURT:  All right.  Any objection from

17      anyone else?  All right.  Andrew Gallegos' Exhibit A

18      for purposes of his motion for new trial is admitted

19      into evidence.

20                 (Defendant A. Gallegos Exhibit A admitted.)

21                 MS. TORRACO:  And I have a hard copy, if

22      the Court would like that.

23                 THE COURT:  I would.  Thank you.

24                 MS. TORRACO:  And as Exhibit B, I believe

25      the Government will also stipulate to the admission
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9398

1    of a partial transcript of Richard Williamson.  And I

2    have given the Government hard copies of each of

3    these exhibits.

4              THE COURT:  All right.  Any objection?

5              MS. ARMIJO:  No, Your Honor.

6              THE COURT:  Any objection from any other

7    defendant?  Not hearing or seeing any, Andrew

8    Gallegos' Exhibit B will be admitted into evidence

9    for purposes of his new trial motion.

10             (Defendant A. Gallegos Exhibit B admitted.)

11             MS. TORRACO:  Thank you, Your Honor.  And I

12   have a hard copy for the Court as well.

13             THE COURT:  I would like that.

14             MS. TORRACO:  May it please the Court.

15             THE COURT:  Ms. Torraco.

16             MS. TORRACO:  I have repeatedly heard from

17   the Government that the Court has ruled on severance.

18   But hindsight is 20/20.  And in reviewing a lot of

19   the evidence, and especially the statements and the

20   testimony given by Morgan Ramirez, I believe that the

21   Court will want to take another look at the

22   statements made by Morgan Ramirez that came in.  And

23   we believe that they came in as a violation of United

24   States v. Bruton.

25             And in doing my research in preparing for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   oral argument today, I did come across an important

 2   case for the Court, which is Lilly versus Virginia.

 3   And in Lilly versus Virginia -- I can give the Court

 4   the cite to that case, if you do not have it.

 5          THE COURT:  Go ahead and put it on the

 6   record.

 7          MS. TORRACO:  That's 483 U.S. 171.  It's a

 8   1999 decision.  The court in Lilly versus Virginia

 9   says, "Even if the trial court finds that a statement

10   falls within a hearsay statement, that does not mean

11   that that particular statement can still be admitted

12   against a co-defendant."

13          And so what I would like to do is go

14   through some of the statements that were admitted.

15          Now, I would like to refresh the Court's

16   memory.  What happened in this case is, we

17   received --

18          THE COURT:  But isn't that case -- I mean,

19   that was a confrontational -- I mean, isn't the law

20   just totally different after Crawford and after

21   Small?  I mean, we just can't even rely on it, can

22   we?

23          MS. TORRACO:  Well, I think Crawford

24   completely supports the position that I'm going to

25   assert today, which is that, even if a statement is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 112 9401

```
 1    found to fall into a hearsay exception, it still

 2    doesn't.

 3              THE COURT:  But isn't the problems with

 4    your statements, they're just not testimonial?

 5    You're struggling with statements that were not

 6    testimonial.  And that's the problem that you have

 7    with those statements.  And they're just -- they just

 8    fall outside of the Confrontation Clause today

 9    because of that.

10              MS. TORRACO:  No, because -- okay, the

11    statements that Morgan Ramirez made on the stand, for

12    example --

13              THE COURT:  But once she's on that stand,

14    the Confrontation Clause is out the door.

15              MS. TORRACO:  No, because she said "Joe

16    said."  So her testimony was everything that Joe

17    Gallegos had told her.  So the confrontation that

18    we're missing --

19              THE COURT:  But how is she -- how is

20    anything that Joe Gallegos said to her testimonial?

21    I mean, she was not preparing for trial.  She wasn't

22    taking those statements as a police officer.  Those

23    were not made in anticipation of a VICAR trial.  It a

24    seems to me they just do not fit any definition of a

25    testimonial statement.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9401

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9402

```
 1                MS. TORRACO:  Under Lilly versus Virginia,
 2     or just in general?  Because my client does have the
 3     right to --
 4                THE COURT:  Well, in 2018, given the
 5     development of the Confrontation Clause, it just
 6     doesn't fit any definition.  They weren't even using
 7     the words "testimonial" back in 1999.
 8                MS. TORRACO:  Right.
 9                THE COURT:  So it's just not going to work
10     any longer, that case, is it?
11                MS. TORRACO:  I hear what the Court is
12     saying.
13                Let me back up and start over.  Morgan
14     Ramirez made several statements on the stand that
15     were used against Andrew Gallegos.  She made
16     statements that Joe Gallegos had told her certain
17     things.  My client is denied the Sixth Amendment
18     confrontation right to confront Joe about those
19     statements and to test their veracity.  So when
20     Morgan Ramirez says things like, "Joe Gallegos told
21     me that he shot Adrian Burns," Andrew Gallegos was
22     denied the right to cross-examine Joe Gallegos on
23     that statement.
24                THE COURT:  And didn't I give a limiting
25     instruction on that under the hearsay rules?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9402

1         MS. TORRACO:  In some cases, yes, you gave

2    a limiting instruction.

3         THE COURT:  When requested, I gave it.

4         MS. TORRACO:  Yes.

5         THE COURT:  And so, if it falls outside of

6    the Bruton problem and outside of the testimonial,

7    and just falls under the rules of hearsay, then I

8    think the Small case and others indicate that

9    limiting instructions can be enough.  So it doesn't

10   violate the Constitution.

11        MS. TORRACO:  Some statements did not get

12   limiting instructions, and some statements I have a

13   concern that the limiting instruction was

14   insufficient.  And if the Court will just indulge me,

15   I would like to go through a few of those statements.

16   And it sounds like you have a good grasp and memory

17   of what happened, probably better than I do.

18        But, as I recall, we went up to the bench.

19   We had a bench conference and discussed when these

20   limiting statements would come in, when they apply,

21   and when they don't apply.

22        My concern is that there is a couple of

23   statements that did not get limiting instructions.

24   When we alerted the Court that the 302 just came out

25   that morning on Morgan Ramirez, and we approached the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                                1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

DNM 9403

```
 1    bench, and I explained to the Court that I was really
 2    concerned because we had just received that
 3    information, and Ms. Ramirez was on the stand.  And
 4    we asked the Government at the bench conference what
 5    were the statements that were going to be coming in
 6    from Morgan Ramirez.  And the statements, as we
 7    understood, were different, as it turns out, than
 8    what Ms. Ramirez actually said.  So when she got on
 9    the stand, she actually gave a statement saying that
10    Joe Gallegos told her that he put a bag over Adrian
11    Burns' head; that he shot him at the house; that the
12    bullet got stuck in his ear; that he put a bag over
13    his head, and then proceeded to burn him in the car.
14              That was not in the 302, and so that was
15    not discussed at the bench conference as to whether
16    or not you were going to give a limiting instruction.
17    So that statement came in without a limiting
18    instruction, and therefore, it was applied to Andrew
19    Gallegos.  My understanding is that sometimes
20    statements can come in without limiting instructions,
21    if there is harmless error.  But I don't see that a
22    statement like that, because it's so damaging, that
23    it indeed was harmless error.
24              THE COURT:  Well, two thoughts on that
25    particular one:  B, did you request a limiting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9404

 1    instruction, and was it denied?

 2              MS. TORRACO:  I requested a limiting

 3    instruction as to all the statements at the bench.

 4    At the time that the statement came out, another

 5    statement came out, and then I requested the limiting

 6    instruction.  So a limiting instruction was not

 7    requested as to that specific statement.

 8              THE COURT:  And was Andrew Gallegos in any

 9    way mentioned in that testimony?

10              MS. TORRACO:  Yes, because he said "they,"

11    they put a bag over his head and they took him out

12    to -- and they took him out and burned him.  So I

13    think it's plain error.  And we can either say it's

14    plain error because I didn't object, or we can say

15    it's plain error because the statement shouldn't have

16    come in against Andrew Gallegos.  And I don't know

17    which the Court follows.  But the evidence against

18    Andrew Gallegos was not overwhelmingly strong, absent

19    this particular statement made by Joe Gallegos,

20    supposedly, that Ramirez said that Joe Gallegos had

21    made.  Does the Court follow me?

22              THE COURT:  I do.  But what you're

23    basically saying is this is a plain error?

24              MS. TORRACO:  That's correct.  So there

25    were several statements made by Morgan Ramirez; some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9405

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 117406

 1   that came in; some that had a limiting instruction.

 2   But because of this particular statement -- and if

 3   the Court will recall, there were actually two

 4   supposed confessions.  The defense doesn't believe

 5   the confessions and doesn't believe that the

 6   testimony was true.  But, nonetheless, there were two

 7   confessions.  Taking them in the light most favorable

 8   to the state, one of the confessions was when Morgan

 9   Ramirez testifies and says that Joe had admitted

10   shooting Adrian Burns; that they put a bag over his

11   head, and they burned him.

12         The other confessionary statement was when

13   Billy Cordova testified and said that my client,

14   Andrew Gallegos, had told him that he shot Adrian

15   Burns, and that he and his brother had done it.  And

16   Billy Cordova assumed the brother was Joe Gallegos.

17   So that was another statement that came in, and that

18   one came in against Joe Gallegos without a limiting

19   instruction.  And I believe Joe Gallegos is joining

20   in this part of the argument.

21         The reason that it's problematic is because

22   the confessions are very different.  If the Court

23   will recall, Billy Cordova said that Adrian Burns was

24   shot in the back of the head, which the evidence does

25   not support.  And Billy Cordova said that he was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9406

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 118407

```
 1    burned inside the vehicle, which the evidence does
 2    not support.
 3            The statements made by Morgan Ramirez,
 4    whether or not Joe Gallegos actually said this, are
 5    factually consistent with the evidence; that he was
 6    shot in the ear; that it didn't kill him; he was shot
 7    at the home; that they put a bag over his head, and
 8    then they took him out and burned him.  That's why
 9    the statement by Morgan Ramirez is so damaging,
10    because it was the only thing that was factually
11    consistent.
12            Our argument is that, if indeed that
13    statement had not come in, then the only
14    confessionary statement that Andrew Gallegos would
15    have to deal with is the statement made by Billy
16    Cordova, who I believe everyone in the courtroom has
17    gone over and over and over about how discredible
18    Billy Cordova is.
19            So our first concern is that particular
20    statement.
21            And what I would like to do, if the Court
22    would indulge, is go over some of the other
23    statements that came in that I am concerned about and
24    that I do not believe are harmless error.
25            So if I may, Your Honor, when Morgan
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9407

Appellate Case: 20-2058     Document: 010110415675     Date Filed: 09/29/2020     Page: 119408

1   testified to comments -- and this is going back to

2   where I started from the beginning -- such as saying

3   that Joe Gallegos shot Adrian Burns, that

4   testimony -- that came in, and I did request a

5   limiting instruction.  And when it came in anyway

6   without the limiting instruction, that is damaging to

7   Andrew Gallegos' defense.

8           The other thing that I would like to

9   address Your Honor, is the issue of the opposing

10  defenses.  And I think this is important in light of

11  the fact that Mr. Troup's counsel, Mr. Burke,

12  addressed the issue of being tried with the Adrian

13  Burns murder.  And, really, no one wanted to be tried

14  with the Adrian Burns murder.

15          One of the problems that we had throughout

16  the entire case is the conflicting defenses with the

17  Adrian Burns Counts 4 and 5 for Andrew Gallegos, and

18  the defense of the other members, the other

19  defendants.  Mr. Burke was very much a gentleman when

20  he said:  We don't want to be tried with Adrian Burns

21  because of the horrific murder and all of the

22  pictures.

23          The fact is that Andrew Gallegos had a

24  conflicting defense as far as the other criminal

25  defendants.  And that conflicting defense started out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9408

```
 1    with the very first witness.  And with that witness,
 2    the defense -- when I got up and cross-examined him,
 3    we made statements and questions to the effect that
 4    the SNM Gang was violent, the SNM Gang bragged about
 5    their accomplishments, bragged about the things that
 6    they did.  We asked questions -- or I asked questions
 7    about the drug dealers, and that they were drug
 8    dealers and not users, in an attempt to try to
 9    establish that the behaviors of Andrew Gallegos were
10    vastly different than the behaviors of the SNM
11    members, trying to separate Mr. Andrew Gallegos from
12    the SNM Gang.  Because our defense has always been
13    that he is not a member of the SNM Gang, nor was any
14    of this accomplished or any -- or him being accused
15    of anything to further or to gain admission to SNM.
16            This type of defense was in direct
17    opposition, and actually hurt all of the other
18    defendants.  So I think, not only when Mr. Troup's
19    counsel says that they don't want to be tried with
20    Adrian Burns because of the horrific and grotesque
21    nature of the murder, they don't want to be tried
22    with Adrian Burns also because of the conflicting
23    defenses that we had.  I outlined most of that in our
24    motion.  But do I believe this is something that I
25    didn't outline in the motion.  And it caused conflict
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9409

 1   because our position was very different than other

 2   positions, because there were certainly people who

 3   admitted that they were members of the gang.

 4            The other thing that I want to bring the

 5   Court's attention to -- and I believe that Ms. Armijo

 6   does not object -- is that in her brief, the

 7   Government misstated something critical as to Andrew

 8   Gallegos, and that is that -- let me get that

 9   particular document.  The Government stated that

10   there was substantial evidence as to Andrew Gallegos

11   as far as the VICAR conspiracy, and then as well as a

12   motive for the murder.  And they put in their brief

13   that Andrew Gallegos stated that he knew that Adrian

14   Burns was upset at him.  And in fact, that was a

15   misstatement.  And if I may direct the Court's

16   attention to page 12 of their Document 2450, and the

17   bottom of page 11 of Document 2450, wherein they say

18   that, "Andrew Gallegos stated that Burns was upset

19   with him, if they owed him money."  And, in fact,

20   when we look at Exhibit B that I tendered to the

21   Court, starting on page 40, the actual statement that

22   was made by the witness is:  "Andrew stated that he

23   did not believe Adrian was upset with him, if he owed

24   him money."

25            And the importance of that is because,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9410

```
 1   while I don't think that -- I like it best when you
 2   say that you're going to take a hard look at
 3   something.  And I have a feeling that you're not
 4   going to say that you're going to take a hard look at
 5   this issue.  But the reason that it's relevant is, if
 6   I can get you to say that you're going to take a hard
 7   look at this issue, then the inquiry is if there was
 8   a Bruton error, and statements did come in contrary
 9   to Bruton, and a limiting instruction was not
10   requested, the next question is:  Is was it harmless
11   error?  And that's why it's important to know that --
12   a clarification on that statement, because Andrew
13   Gallegos' statements to Williamson clearly gave no
14   motive for Andrew Gallegos to participate in or
15   commit the murder of Adrian Burns.  And, therefore,
16   we do not believe that the particular error was
17   harmless.
18           THE COURT:  Well, but harmless error
19   applies to one in which, even if you're jumping up
20   and down and screaming that I'm about to commit
21   error, it can still apply, it can just be harmless
22   error.  But when we have plain error, the standard is
23   much more difficult, isn't it, than just -- I mean,
24   harmless error is always a doctrine out there.  But
25   isn't there another standard for the plain error?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9411

```
 1              MS. TORRACO:  Yes, Your Honor.  But I think
 2    that the standard for the plain error is the Bruton
 3    statement coming in, the statement coming in against
 4    Andrew Gallegos.  That was the plain error.
 5              And so then -- what I remember happening --
 6    I don't want this to come across like I'm saying
 7    that, you know, this was just -- it happened so fast.
 8    You know, we did this bench conference, and the Court
 9    clearly said:  There is a lot here.  We need to take
10    this slow.  And then the Court took a while, made
11    some rulings on some of the statements, and at one
12    point turned to the Government and said:  We've got
13    to take this slow.  But it didn't go slow.
14              Morgan Ramirez was on the stand.  You'll
15    recall that she was upset.  She was shaken.  I said
16    at the bench conference, I said that I thought she
17    wasn't being truthful.  But the Court commented, and
18    said, no, it's because -- the Court thought it was
19    because she was afraid of Joe Gallegos.  But the
20    statements were coming so fast.  And she was saying
21    things that were different than in the 302.  The 302
22    there is no statement, nor did we anticipate -- and I
23    don't know if the Government anticipated the
24    statement about "they" put a bag over Adrian Burns
25    head and took him out and burned him.  But that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9412

```
 1   statement kind of came out of nowhere, rambling on
 2   with her other statements about "Joe Gallegos said
 3   that he shot him."  And for that reason, I think -- I
 4   don't even know how it happened, Your Honor, because
 5   I thought that I objected to every single statement
 6   that came out.  And that was not one of the
 7   statements that we addressed at the bench.  So I
 8   don't know how it happened, but it came out.  And it
 9   was extremely damaging.
10           THE COURT:  Well, she wasn't just sitting
11   there reading a 302.  She was being a live witness.
12   They don't always testify like the 302 is written.
13           MS. TORRACO:  No, she didn't.
14           THE COURT:  Don't you like trial work?
15           MS. TORRACO:  Yes, I love it, Your Honor.
16           THE COURT:  Just all sorts of things
17   happen, don't they?
18           MS. TORRACO:  But I'm concerned about the
19   Bruton argument.
20           THE COURT:  Well, I'm not seeing a Bruton
21   argument.  I mean, it seems to me the best you got is
22   a hearsay argument that more should have been done to
23   give limiting instruction of hearsay.  But what Joe
24   Gallegos is saying to Morgan is -- I'm not seeing a
25   Bruton problem.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9413

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 25414

```
 1          MS. TORRACO:  Well, Joe Gallegos said that
 2  "they," implying Andrew, put a bag over Adrian Burns'
 3  head and burned him.
 4          THE COURT:  But that's old -- that's old
 5  days.  That's just not a confrontation problem.  It's
 6  a hearsay problem.  And maybe a limiting instruction
 7  should have been given.  But it wouldn't have been
 8  under the Constitution.  It would have been under the
 9  hearsay rules.
10          MS. TORRACO:  So since I prefer trial work,
11  and am not as eloquent in oral argument, Your Honor,
12  would you allow me just to brief this for the Court?
13          THE COURT:  Certainly.
14          MS. TORRACO:  I have other cases that I'd
15  like to cite for the Court as well, and I think I
16  could do that better in writing.
17          THE COURT:  Okay.
18          MS. TORRACO:  Thank you very much.
19          THE COURT:  Thank you, Ms. Torraco.
20          Anyone else want to join or have anything
21  to say on Ms. Torraco's motion?
22          All right.  Ms. Armijo, are you going to
23  take this?
24          MS. ARMIJO:  Yes, Your Honor, I guess I'm
25  just confused.  Is she going to submit a reply?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9414

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 126

1   Because I believe that she had asked me before, and

2   my position was that I would be opposed unless we

3   just put it off.  But if she is going to put

4   something new in writing, then obviously we would

5   like a surreply.

6           THE COURT:  I don't think she has any

7   problem with that.  Do you, Ms. Torraco?

8           MS. TORRACO:  No, Your Honor.

9           THE COURT:  All right.  So that's fine.

10          Let's talk a little bit about scheduling.

11  What do y'all want to do?  Do you want to take a

12  15-minute break and come in and keep going, or do you

13  want to take our lunch break, as we did yesterday

14  now, and come back at about a quarter till?  What's

15  your preference, Ms. Armijo?

16          MS. ARMIJO:  I'd prefer that we just take a

17  15-minute break and then keep going.  Because I think

18  that, after this, we only have one more motion left,

19  and that, potentially, we could get done before

20  lunch.  Maybe I'm just being a little bit optimistic.

21          THE COURT:  What's your thoughts, Ms.

22  Harbour-Valdez?

23          MS. HARBOUR-VALDEZ:  With the Court's

24  permission, we did order lunch for our clients.  And

25  it is ready.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9415

```
 1            THE COURT:  It is ready.  Okay.  Well,
 2    let's go ahead and just take our normal lunch break,
 3    and then we'll come back at about a quarter, ten
 4    till.  We'll break then.  All right.  We'll be in
 5    recess for about an hour.
 6            (The lunch recess was held.)
 7            THE COURT:  Is Mr. Castle going to be on?
 8            MR. COOPER:  I just texted him, told him we
 9    were getting ready to start so --
10            THE COURT:  Well, I hate to ask everybody:
11    Did you invite Mr. Acee to your pizza party?  I'm
12    sorry.
13            All right.  Ms. Armijo, do you have
14    response to Mr. Gallegos' motion for a new trial?
15            MS. ARMIJO:  Well, I will say that we would
16    not be here if it wasn't for a phone call that I
17    received from Special Agent Acee back in March of
18    2015.  So I think you are right, Your Honor.
19            Your Honor, I talked to Ms. Torraco, and
20    she indicated that her reply is actually going to
21    contain her arguments.  So I will be responding to
22    her.  And so, to save everybody's time, I think,
23    unless the Court has specific questions, I will be
24    replying in writing to her arguments, because I
25    believe she's going to be making arguments -- and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9416

 1   I've checked with her -- not just supplementing with

 2   additional case law, but also arguing.  So I will do

 3   that.

 4            I will say she is correct, I did misquote

 5   in my response the statement, because initially, when

 6   I wrote it, I did not have the final transcript.  And

 7   I looked at the real time transcript.  And the

 8   real-time transcript gives a different view, it kind

 9   of -- it's rough, but it makes it seem like he said

10   that he did know about it.  And so that is why, when

11   we got the real transcript in, we put it in.  And I

12   apologize to the Court that I didn't triple check it.

13   So that is what happened with that.

14            So with that, Your Honor, since we are

15   going to be doing this in writing, unless the Court

16   has anything specific --

17            THE COURT:  Well, let me ask you some sort

18   of general questions.  Are you agreeing with my

19   analysis, it looked like most of the -- the handful

20   of questions -- and it did seem to me a handful of

21   questions -- that Mr. Andrew Gallegos was relying on

22   for his motion for new trial were not testimonial

23   statements?  They fell into the category of wrestling

24   with hearsay.  And was there anything in there that

25   you thought there was -- error occurred?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9417

```
 1              MS. ARMIJO:  No, Your Honor.  We agree with
 2    your analysis.  And I have even pointed out in the
 3    transcript, because you asked the specific question
 4    about whether or not they asked for a limiting
 5    instruction.  And on the transcript, on page 24 is
 6    where the questions start about what Ms. Ramirez says
 7    that Joe Gallegos told her.  And there is a series of
 8    about five questions that she answers.  And then it's
 9    at that point that Ms. Torraco says, "Is Mr. Gallegos
10    entitled to a limiting instruction on that
11    statement?"
12              THE COURT:  And what did I say?
13              MS. ARMIJO:  And you said yes.  The last
14    statement is --
15              THE COURT:  So I did give one on that?
16              MS. ARMIJO:  Yeah.  So the questioning
17    starts on 24, at the bottom.  And this is where she
18    says -- she being Ms. Ramirez -- "He told me one day,
19    I don't remember the exact words, if he said we shot
20    Mr. -- or shot Babylon, or if it was -- I don't
21    remember his exact words to be honest."
22              And then she goes on to say, "He said it's
23    crazy that -- that the bone in your ear could stop a
24    bullet.  I don't really know what he was talking
25    about at that time."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And then she goes on to say, "It came up in
 2    another conversation that he was saying that when
 3    Adrian Burns got shot, that the bullet got stopped by
 4    a bone in the ear."
 5              Then Ms. Ramirez -- there is more questions
 6    by Mr. Beck.  And then she says, "He did say that he
 7    got shot in the ear.  He said, like, they shot him, I
 8    guess trying to shoot -- shoot him in the head,
 9    basically, but it got stopped by the bullet in his
10    ear -- I mean, by the bone in his ear."
11              And then the answer -- the question that
12    she then asked for a limiting instruction is:  "Where
13    did Joe Lawrence Gallegos tell you that Babylon was
14    shot?"
15              And she says, "Like where in place wise?"
16              "Right.
17              "Somewhere in his house, he -- I don't
18    know, I asked him a question one day, kind of joking,
19    but really not, about the room that was, like, added
20    onto his house, because it was like a closet, and
21    used to creep me out a lot.  So like we were talking
22    about it.  And he told me, 'Don't worry, no one has
23    actually died in here.  Someone may have been shot in
24    here, but they didn't die.'"
25              And that's the part where she initially
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   asked for a limiting instruction.  And I believe

 2   there is more limiting instructions later on.  But

 3   that's the part where there is a series of four

 4   questions.  And then I think on the fifth one is

 5   where she requests the limiting instruction.

 6           And yes, Your Honor, to answer you, we do

 7   agree with your analysis.  We agreed with your

 8   analysis back then, and we agree with your analysis

 9   today.

10           THE COURT:  So you're not seeing, in

11   looking at that, that there is anything that you're

12   going to tell the Tenth is error?

13           MS. ARMIJO:  No.

14           THE COURT:  And then if it is error, you're

15   going to argue it's harmless?  Is that --

16           MS. ARMIJO:  No.  We're not seeing any

17   error.

18           THE COURT:  No error at the present time?

19           MS. ARMIJO:  No error.  I agree, we --

20           THE COURT:  Was a limiting instruction

21   given each time it was requested?  I don't remember

22   turning one down here at the bench when we were going

23   back and forth, but --

24           MS. ARMIJO:  I don't remember you ever

25   turning one down either.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  I didn't think the Government
 2    objected to any limiting instruction as to Andrew
 3    Gallegos.  I don't recall any.
 4                There were some at other points in the
 5    trial where there was state of mind, and I allowed it
 6    to come in as to everyone.  But on --
 7                MS. ARMIJO:  There is one here where -- on
 8    page 35 -- where -- I think we're up at the bench,
 9    where you say, "I'm not going to give a limiting
10    instruction on this.  Just ask it.  I don't think
11    it's hearsay."
12                THE COURT:  And what was that related to?
13                MS. ARMIJO:  Let me go back there.  That
14    was when -- I think it's the Adrian Burns statement,
15    like, Yeah, he really does burn.  And that was the
16    statement that Joe Gallegos made about, you know, the
17    pun on his last name.  And I think that on that
18    occasion --
19                THE COURT:  Well, that can hardly be
20    offered for the truth of the matter.
21                MS. ARMIJO:  And so I think you went into
22    analysis for that.  But that's the only one that I
23    see, as I'm going through.  But anything that you
24    would have denied -- I think you did an analysis and
25    you spent some time going through the statements,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9421

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 133 9422

```
 1    so --
 2              THE COURT:  Yeah, I think my memory is I
 3    did a little James opinion on that one, on the
 4    statements that were going to come in against
 5    Mr. Andrew Gallegos.
 6              MS. ARMIJO:  Correct.
 7              THE COURT:  All right.  Anything further on
 8    this motion?
 9              MS. ARMIJO:  No, Your Honor.  Thank you.
10              THE COURT:  Any other defendant have any
11    responses before I hear from Ms. Torraco?
12              All right.  Ms. Torraco, do you have
13    anything further on your motion?
14              MS. TORRACO:  No, Your Honor.  Thank you.
15              THE COURT:  Well, I'll take a look at it
16    and I'll go through, and I'll wait for your reply and
17    maybe the Government's surreply.  But I don't
18    think -- and I didn't think at the time -- there was
19    any confrontation problem.  We just had to be careful
20    with the rules of hearsay.  And I thought we handled
21    those with, my instructions well.  You know, I made a
22    decision pretrial that if I were going to try people
23    together, I could rely on limiting instructions.  And
24    we'll see if that holds up at the Tenth.  I assume
25    that's going to be an issue that somebody might raise
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9422

```
 1   with them.  And if they do, that's something that
 2   they'll have to wrestle with.  But I think, given the
 3   structure that I put in place going into trial, I
 4   think it worked pretty well for your clients.  I'll
 5   take a look at it.  But I'm inclined to deny the
 6   motion, at least on a review that we've done so far.
 7            All right.  Let's see, we now go to -- was
 8   that motion 8?  So I'm going to motion 9, which is --
 9            THE CLERK:  No, that was 9.  I think that
10   was Andrew Gallegos'.
11            THE COURT:  Was that motion 9.  Did we
12   cover the Gallegos' joint motion?  Did we skip one?
13            MR. BENJAMIN:  Yes, Your Honor.
14            THE COURT:  Okay.  I'm sorry, so we need to
15   take --
16            MR. BENJAMIN:  And I don't know if we
17   skipped it, Your Honor, because I don't know what the
18   final order was.
19            THE CLERK:  It was just out of order.
20            THE COURT:  I did take it out of order.
21   And I apologize.
22            THE CLERK:  It's number 8.
23            THE COURT:  I think the Gallegoses together
24   had the joint motion, which is 8, which you're about
25   to argue, which I think puts you up to 9 for Andrew
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9423

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 135

```
 1   Gallegos'.

 2           All right.  Mr. Benjamin.

 3           MR. BENJAMIN:  If it makes the Court feel

 4   better, Your Honor, I think there was error in this.

 5

 6           THE COURT:  In the what?

 7           MR. BENJAMIN:  I was just responding to the

 8   Court's last question.

 9           Your Honor, my reply for Counts 4 and 5 --

10   and that is what the Court noted is a joint motion,

11   was Document 2467, the Government's, their response

12   was 2452, and my original motion was Doc 2415.  And I

13   think I probably did that backwards.  I apologize.

14           And their response, I thought was extremely

15   interesting, Your Honor, because their response --

16   and I made a chart out of this -- had a statement

17   that could only have been offered for the truth, and

18   then a statement that was not offered for the truth.

19   And that statement is cut out of the testimony -- was

20   uniquely, not word for word -- but it was the same

21   statement.  It's the statement that was, for lack of

22   a better term led -- Ms. Amber Sutton was led on --

23   and it was to tell Joe Gallegos to quit being a bitch

24   and pay his debt, or to tell Joe Gallegos if he

25   doesn't have my money to stop being a bitch and give
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9424

```
 1    me a call.  And that statement, I think, fulfills
 2    what the Court said -- or doesn't fulfill what the
 3    Court said the Government was going to have to do in
 4    Document 1950, which was, at the end of the week of
 5    hearings before trial, in March of 2018, that the
 6    Government was going to have to prove that for -- one
 7    of two things -- the second one is what they were
 8    going to try and prove, the purpose of gaining or
 9    increasing membership in the SNM, some evidence from
10    which the jury could find that this was done on
11    behalf of the SNM.
12            And I need to go back to May 10, 2017.  And
13    that was our omnibus hearings, where I was requesting
14    a copy of the transcripts for Counts 4 and 5.  And
15    that started with me guessing as to what they were
16    going to show.  And not ever being told that, but
17    ultimately ending with a promise by the Government
18    that:  We're going to show something.  The Court may
19    remember that was where I started with -- there was a
20    statement that had been produced early on that Roy
21    Martinez talked about Joe Gallegos killing Adrian
22    Burns on a wire, essentially on a wiretapped
23    conversation.  That was retracted by the Government
24    March 9th of 2017.  And just for the record, in
25    Document 21822.  But we never got any further
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9425

1    clarification on how we were going to do this.  And

2    the Government, Ms. Armijo in that motions hearing

3    said:  We're going to do it, we're going to do it.

4              And we didn't find out until April 3, 2018,

5    that Amber Sutton was going to parrot a statement

6    that she supposedly overheard Daniel Orndorf told by

7    Adrian Burns.  And this is the statement that

8    occurred at Walmart.  The tell Joe to stop being a

9    bitch and call me statement that was referenced in my

10   motion, their response, and my reply.

11             And that -- I think there is multiple

12   arguments.  The first of which is the Court did

13   provide a limiting instruction.  And so we're there.

14   But I don't think that suffices for several reasons.

15   The first being that a statement can't be offered for

16   the truth and not offered for the truth at the same

17   time.  And that's exactly what the Government

18   outlines in its response that statement was for.  If

19   it was offered to prove disrespect, as is in the very

20   beginning portion of their motion, Document 2452,

21   page 6, showing that Joe Gallegos was disrespected,

22   and therefore, was doing this on behalf of the SNM,

23   that's being offered for the truth.  That's the only

24   thing that can be offered for, is that Joe was

25   disrespected.  There is not any way that that can't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9426

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 138

```
 1    be.
 2                And so this is different than, essentially,
 3    what the Court analyzed in Skyline Potato versus
 4    Highland Potato, 2013 Westlaw 311846, where "The
 5    testimony is not hearsay when it's offered only to
 6    prove that the statement was made."
 7                This wasn't offered to prove that Adrian
 8    had a statement with Daniel.  This was offered to
 9    show that Joe Gallegos was being disrespected by
10    Adrian Burns.  And so Amber Sutton's parroting of
11    Adrian Burns' statement that was made to Daniel
12    Orndorff required the content or the truth of the
13    matter, which was the disrespect.  That was objected
14    to.  We had a long conference at the bench, and
15    actually there was a motion in limine prior to that
16    even starting, and the Court provided a limiting
17    instruction.  And Mr. Castellano came back and said,
18    Well, it's not hearsay because it's a command.
19                I don't think -- I objected at the time.  I
20    think the transcript reflects that.  And I don't
21    think that holds true, even after the long review
22    that I've done of this.  Because the command, if any,
23    was directed at Daniel Orndorf.  It was not directed
24    at Joe Gallegos.  The disrespect is what the
25    Government all along has said was directed at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9427

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 139

```
 1    Mr. Gallegos.  So it's not a command, or the only
 2    command could have been "call me."  It was the
 3    disrespect portion, which was "stop being a bitch,"
 4    which I think is an insult, disrespect, or anything
 5    else.
 6              THE COURT:  But how can that be hearsay?  I
 7    mean, that --
 8              MR. BENJAMIN:  It's an out-of-court
 9    statement to prove that Joe Gallegos is being a
10    bitch, Your Honor, respectfully.  That's the only way
11    that I think that comes in.  It's disrespectful.  And
12    that's what the Government relied on; that that
13    statement has to carry some weight.  I hope I'm
14    making sense, Your Honor.  But that's the idea that,
15    if that statement is meaningless, there is no
16    evidence of the SNM increasing or maintaining
17    membership.  If that statement carries weight, and is
18    disrespect, then it has to be for the truth of the
19    matter.
20              So I don't think that that statement is a
21    command under U.S. v. Oguns, 921 F.2d 442.  I don't
22    think this is new case law.  I think this is the case
23    law that we were talking about.  Specifically, in
24    that case, Your Honor, they were talking about
25    hearsay and nonhearsay statements.  They were a drug
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 140429

 1   conspiracy case:  Individual calls the residence and

 2   the agent picks up the phone and the question is:

 3   "Have the apples arrived?"  Well, that was offered

 4   for circumstantial evidence that they were trying to

 5   have coded transactions.  But this is not what we're

 6   doing with the statement of "stop being a bitch."

 7   That is content-necessary.  And so the call regarding

 8   the apples, whether it's a question, a statement, or

 9   a declaration, or different words that the Court

10   used, is solely the existence of an act.

11           What's important here is the interaction

12   that Adrian Burns had at Walmart with Daniel Orndorf,

13   who, as the Court will recall, was not called to

14   testify -- and I think the Government represented

15   that he was wanted was the main reason.  But that

16   interaction at Walmart between Adrian and Daniel is

17   content-necessary.

18           And so, I think that two things:  One, the

19   statement can't be both hearsay and nonhearsay.  But,

20   two, after reviewing this, Your Honor, I think I have

21   to stand by the confrontation request, which is that

22   statement, the admission of that statement prevented

23   me from confronting Adrian Burns on that statement

24   that goes to the heart of the matter.

25           And I think that the Government -- and they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 143430

1   can disagree with me, Your Honor -- but their

2   response doesn't show that there was any other

3   statement that linked that VICAR murder to a federal

4   jurisdiction.  And the Court provided a long,

5   detailed opinion in Document 1950 right before trial.

6   But I don't think they got there, Your Honor.  And

7   so, respectfully --

8          THE COURT:  Got there on the nexus?

9          MR. BENJAMIN:  Correct.

10         And one of the things I pointed out is some

11  of the statements, for instance, that Ms. Torraco is

12  having issues with I think are very prejudicial.

13  They don't help the Government at all.  The fact that

14  Morgan may have testified that Joe said that he shot

15  somebody in the head, that doesn't help them at all

16  on this question of whether or not that is a VICAR

17  murder.  That goes to whether or not there is a

18  murder.  But there is no nexus in the statement, "I

19  shot Adrian Burns" or "Adrian Burns really does

20  burn," or the statement that was brought up about

21  Andrew and Billy Cordova.  None of those

22  statements -- and I said that in my reply, Your

23  Honor -- connect this to the SNM or any -- in the

24  Court's word, "nexus."

25         So I do feel like the Court was correct,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9430

```
 1    I'm essentially arguing to a court of appeals, I
 2    think, but the Court made its ruling, and I'm asking
 3    it to review that.
 4              THE COURT:  Isn't your argument on nexus
 5    ultimately a sufficiency of the evidence on this
 6    particular point, it's a sufficiency of the evidence?
 7    I gave a pretrial ruling and I said:  Here's the
 8    line.  You've got to get it across, Government.  And
 9    so the question is the more that the Government is
10    pointing to, is that sufficient evidence?  Isn't it
11    kind of a sufficiency of the evidence?
12              MR. BENJAMIN:  No, Your Honor, not at all,
13    because the line -- it's 4th and inches, and the
14    Government had to get the ball across the line.  And
15    the Government says that the statement that comes in,
16    "tell Joe to stop being a bitch and call me," that is
17    the only thing, for lack of a better term, we get
18    into a rule that I've never understood which is, I
19    think it's any part of the football, but much of the
20    football needs to get across that line.
21              And so that's where we're at.  This is the
22    only statement that does that, or comes close to
23    doing that.
24              So no, Your Honor, I disagree with
25    sufficiency.  I think this is either in or out.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9431

```
 1    it's either done or not done.
 2              THE COURT:  All right.  Anything else on
 3    your motion, Mr. Benjamin?
 4              MR. BENJAMIN:  No, Your Honor.
 5              THE COURT:  All right.  Thank you,
 6    Mr. Benjamin.
 7              Anybody else want to argue in support?
 8              Ms. Torraco.
 9              MS. TORRACO:  I don't want to argue, Your
10    Honor, but I want to bring the Court's attention that
11    we joined in writing on this motion.
12              THE COURT:  All right.  Anyone else have
13    anything on the defense side to say on this issue?
14              All right.  Mr. Armijo.
15              MS. ARMIJO:  Your Honor, I'm going to put
16    up on the Elmo -- and I'm referring to -- I believe
17    it was Ms. Torraco's exhibit from the last one --
18    it's Morgan Ramirez's testimony.  And this is why you
19    can't just take one statement at point.  Because the
20    statement about "tell him to" --
21              MR. BENJAMIN:  What page?
22              MS. ARMIJO:  I'm on 28 of the transcript.
23              THE COURT:  Tell him to call me, right?
24              MS. ARMIJO:  Yeah, where he said, "Tell him
25    to quit being a bitch and to call me."  That
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9432

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9433

1    statement.  It's not being offered to show whether or

2    not Joe Gallegos is a bitch or not.

3            THE COURT:  Well, that's the problem I'm

4    having with it being a hearsay statement.

5            MS. ARMIJO:  And Daniel Orndorf could have

6    said:  Tell Joe Gallegos to quit being a little girl.

7    We're not offering that to prove that he's a little

8    girl.  I mean, clearly he's a man.  So we were not

9    offering it to show that he was a bitch.  We were

10   offering it to show the impact that it had on him.

11           And how we know that it had an impact on

12   him is where Morgan Ramirez testified that he told

13   her, "Because motherfuckers with big mouths, that's

14   what happened.  That he didn't get robbed and that he

15   died with all of his money."  And so that is

16   something that we used into showing that.

17           And then it goes on talking about that.

18   But that's why that statement is important, because

19   we have -- the statement about him being a little

20   bitch was offered to show, one, it was a command, and

21   two, the impact that it had on Joe Gallegos.  It

22   provides a motive for the murder.  And we see that

23   years later when he tells Morgan Ramirez that it

24   wasn't a robbery; that at least for his motive it was

25   "because motherfuckers with big mouths and that's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9433

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 45434

```
 1   what happens."  And so we do have the connection
 2   there.
 3           I know that I do agree with the Court that
 4   I think the argument that Mr. Benjamin is trying to
 5   make is a sufficiency --
 6           THE COURT:  What you're saying is you have
 7   other evidence besides this.  I mean, he's attacking
 8   this, and saying if he wins here, you've got nothing
 9   else.  But your argument is this was good evidence,
10   it should have come in, and --
11           MS. ARMIJO:  Correct.
12           THE COURT:  -- and it wasn't -- and you've
13   got other stuff, right?
14           MS. ARMIJO:  Correct.  I mean, I think
15   that's it.  I mean, I think they're very upset about
16   the statement that came in.  And I think it was never
17   a secret that our whole theory, even from opening
18   statement to well before, when they asked what our
19   theory was, was about disrespect, and about the
20   impact that it had, and all of that.
21           So I think that there was a great deal
22   more.  Certainly, there was a great deal about
23   respect of the SNM at the trial.  And I laid that out
24   in our response.  But also, as you may recall with
25   Andrew Gallegos and his statement from -- to Billy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9434

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 146435

```
 1   Cordova, it was about the bulldogging of the drugs,
 2   basically.  And I laid that out.  So we also have
 3   that they were -- the drug aspect of the murder as
 4   well, and that's referenced as well.
 5            So we have two different theories, I think,
 6   that we ultimately went on, which was it was the
 7   bulldogging and the disrespect as far as a motive
 8   being strong for SNM.  In addition to, there was
 9   significant evidence as to the Gallegos brothers and
10   SNM, apart from these people, you know, with Andrew
11   Gallegos -- speaking off the top of my head, I know
12   Ms. Baldizan came in and testified.  We had jail
13   calls.  We had letters.  We had several people come
14   in and talk about their ties to the SNM.
15            So you can't just take one statement out
16   and say that there is no tie, and that we just didn't
17   make that nexus, when, in fact, there was a great
18   deal of testimony about a member being disrespected
19   from the SNM.  And we connected the ties as to Joe
20   and Andrew both and the SNM, and showed it.
21            And I can still remember Mr. Benjamin going
22   up to jurors after the verdict in this case and just
23   telling them:  I can't believe you found my client
24   guilty.  What was your nexus?
25            And the foreman even was telling him:  What
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9435

1    do you mean?  There was plenty of evidence.  So

2    clearly the jury had no problems with this.  And we

3    know that it was a very -- the jury in this case

4    acquitted him on other counts.  So it wasn't like

5    there is just a broad sweeping, yeah, Gallegos is

6    charged with two murders and other things, let's just

7    find him guilty of everything, because they acquitted

8    him on other contact, which we had telephone calls

9    on, too.

10          So I think the verdict should stand in this

11   case.  There was plenty of evidence in this case.

12   And the Court made the correct ruling at the time on

13   these statements coming in.  And we don't disagree

14   with the Court.  We're not going to disagree with the

15   Court on appeal.

16          THE COURT:  All right.  Anything else,

17   Ms. Armijo?

18          MS. ARMIJO:  No, Your Honor.  Thank you.

19          THE COURT:  Any other defendant before Mr.

20   Benjamin argues?

21          All right.  Mr. Benjamin, do you have

22   rebuttal?

23          MR. BENJAMIN:  And, Your Honor, the phrase

24   I'm going to have to agree to disagree with the

25   Government, I think comes to mind here, because I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9436

```
 1    think she made some better points than I could hope

 2    to.  Because she talks about a great deal of

 3    evidence, but she has done a very good job of not

 4    pointing any of that out.  Because the theory that

 5    anything Joe does bad is related to the SNM, I think,

 6    is overarchingly broad and doesn't work.

 7           But she listed off several words that I

 8    think are very important.  The statement about --

 9    that Adrian Burns made was offered for impact, was

10    offered for motive.  Neither one of those gets them

11    there.  The statement about bulldogging for drugs, I

12    don't understand how a pure and simple theft becomes

13    an SNM crime.  That's not -- they didn't charge

14    bulldogging or that.  They charged increasing or

15    enhancing -- I'm screwing up the words -- but the

16    indictment language is very specific in relation to

17    the enterprise.

18           So with the absence of any enterprise

19    evidence, what we're left with is the adage that I

20    remember the first day of criminal law in law school:

21    "If there is a body, somebody is going to jail."

22           Mr. Gallegos was acquitted on Counts 14 --

23    I apologize, it was 13 through 16 -- and that was

24    where a live witness testified.  But there was not a

25    burned body that they flashed up there multiple times
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    saying:  This is bad; this is bad; this is bad.  And

 2    Ms. Armijo's recitation of what I remember happening

 3    in the jury room is what they said.  They said that

 4    there was just -- there was a body, is kind of what I

 5    remember getting out of that.

 6              And so I asked; I haven't received.  In May

 7    of 2017, I asked again; I haven't received.  So, as I

 8    said, I think we respectfully just need to disagree

 9    that there is any evidence that connects them to the

10    nexus.

11              So I appreciate that, Your Honor.

12              THE COURT:  All right.  Thank you, Mr.

13    Benjamin.

14              Well, I still think I've got the

15    evidentiary call correct there.  I don't think it's a

16    hearsay statement.  I think it is commands.  And so I

17    don't think there is hearsay in there.  So I think

18    that came in.  But I know, when I wrote the pretrial

19    opinion on this, I was concerned, given what I was

20    hearing from the Government, about the nexus issue.

21    That's one reason I wrote the opinion.  I wanted to

22    draw a line so that the Government knew what they had

23    to cross.  I wanted you to know that I was taking

24    seriously the nexus argument.  And I also wanted to

25    hold my feet to the fire.  If they didn't cross that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9438

 1   line, I wanted to tell myself, Okay, I've already

 2   promised you I'm going to dismiss it.

 3           I thought there was other evidence that

 4   came in through the trial.  And I was listening

 5   carefully to it because of the Gallegoses'

 6   connections with SNM.  And so I listened to that.  I

 7   thought there was some more and sufficient evidence

 8   for it to go to the jury.

 9           And so I'm inclined -- I'll relook at it.

10   I'll bottom out on the evidentiary issue, if I didn't

11   at trial.  But I'm inclined to think I got that

12   right.  And I'm inclined to think that, as the trial

13   developed, there was more evidence than what I knew

14   about pretrial.  And I thought they got it across the

15   line.

16           MR. BENJAMIN:  Thank you, Your Honor.

17           Respectfully, may I ask one more question,

18   Your Honor?

19           THE COURT:  Certainly.

20           MR. BENJAMIN:  And the Court has done a

21   very good job of articulating a lot of different

22   things at different times.  Would the Court -- and

23   this is just a request from counsel, Your Honor --

24   would the Court consider telling us what or how they

25   got across the line?  And I'm not asking the Court on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9439

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 151

```
 1    the spot now.  I'm saying later in this motion -- or
 2    in its order.
 3              THE COURT:  I'll try.  It may be that I'm
 4    going to need a little help from the Government to
 5    refresh my memory as to the circumstances that were
 6    there.  But there was some evidence -- I think
 7    Mr. Castellano brought it out with some witnesses --
 8    that I had not heard pretrial.  And so I may need a
 9    little assistance from the Government to refresh my
10    memory as to what evidence they had that they did not
11    show, or maybe even didn't have pretrial, that I was
12    wrestling with when I did that memo.  But I'll try to
13    do that.  I'll do it the best I can from a review of
14    the transcript.
15              MR. BENJAMIN:  Thank you, Your Honor.
16              THE COURT:  All right.  So I guess we've
17    got one more motion left.  And this is also, I think
18    yours, Mr. Benjamin, if I'm not mistaken.  This is
19    the Rule 29 motion.  Or have we taken care of that?
20              MS. ARMIJO:  I think he did that earlier,
21    Your Honor.
22              MR. BENJAMIN:  That was --
23              THE COURT:  That was the one we argued
24    with --
25              MR. BENJAMIN:  I don't want to bore the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9440

```
 1    Court for another 15 minutes.  I'm done, Your Honor.
 2              THE COURT:  That's the one we argued with
 3    Mr. Burke, right?
 4              MR. BENJAMIN:  Yes, Your Honor.  Unless
 5    Ms. Armijo wants me to go again.
 6              MS. ARMIJO:  Okay.
 7              THE COURT:  Well, are we done?  We don't
 8    have -- I know I need some exhibits from Mr. Lowry.
 9              MR. LOWRY:  Yes, Your Honor.
10              MS. ARMIJO:  And I just wanted to put on
11    the record, Your Honor, that I know there was an
12    issue on the very first motion with Mr. Castle about
13    when we disclosed an item.  And I told him yesterday
14    that we had disclosed it February 6th of 2018.  So
15    just to put that on the record, that was kind of
16    hanging out there.  He wanted to put something in
17    writing saying he had not ever received it before.
18    And we actually had supplied it and gave him the date
19    that we supplied it.
20              MR. COOPER:  And that document --
21              MR. CASTLE:  Judge, can I be heard on that?
22              THE CLERK:  Mr. Castle is on the phone,
23    Judge.
24              THE COURT:  Let's get Mr. Castle, because
25    it's just hard for people on the phone to break in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9441

1          Mr. Castle.

2          MR. CASTLE:  Yes, Your Honor.  The

3   testimony was that Agent Acee, after the first wave

4   of the arrests in this case, in the year 2016,

5   conducted a recorded interview of Leroy Lucero --

6   part of it was recorded, part of it was not -- in

7   which, among other things, Mr. Lucero talked about

8   having -- not wanting to be charged in the RICO.  I

9   do not believe that we received anything from 2016,

10  or 2017, for that matter.  We had a gap between the

11  year of 2012 and 2018.

12          The prosecution identified a document from

13  February 6th of 2018, which said -- essentially a

14  cover letter for discovery.  And we have reviewed

15  those tapes and those reports.  Those are all

16  concerning an interview that Mr. Lucero made, I

17  believe, on January 17, 2018.  It was in January of

18  2018.  So it did not contain a reference or

19  information concerning any 2016 interview with Mr.

20  Lucero.

21          And so we argued -- I will send

22  documentation in to the Court concerning that, and a

23  request that that be ordered to be produced as a --

24  under the Jencks Act.

25          So I think that Ms. Armijo is mistaken -- I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9442

```
 1    know she's mistaken -- that that letter in February

 2    identified anything -- any statement that Mr. Lucero

 3    made in 2016.

 4              THE COURT:  All right.

 5              MS. ARMIJO:  I don't think that there is

 6    going to be anything else to produce.  If there is an

 7    issue as to any other statements, it's just that we

 8    had the wrong date.  My understanding is what was

 9    produced is all that we have.  There isn't another

10    outstanding statement out there.  But certainly, I

11    can work with Mr. Castle to make sure he has

12    everything.  But I don't think there is anything left

13    to be disclosed.  And I will work with him.

14              THE COURT:  All right.

15              MR. CASTLE:  Judge, just to put on the

16    record, I believe there is.  And the reason is that,

17    in 2016, Mr. Lucero was arrested on a probation

18    violation for matters which often are considered

19    technical:  Urinalysis.  That was one of the tactics

20    the FBI used in their matters in which to try to get

21    cooperation of individuals who were SNM members.  Mr.

22    Lucero, it turns out -- we reviewed the transcripts

23    last night -- in 2017 -- in which it was indicated

24    that Agent Acee, in 2017, before Your Honor at

25    sentencing, was ready and able to take the stand and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    testify that Mr. Lucero's life was in danger because

2    of his cooperation.

3          So it's pretty clear there was some

4    communications and statements made in 2016, and

5    perhaps continuing in 2017.  So those are the 302s

6    that we need to have produced.  And certainly there

7    was at least information during that, in which Mr.

8    Lucero indicated he was afraid of being charged in

9    the RICO after the first wave of indictments.

10         The Court is aware that the indictments

11   before this Court right now was from December of

12   2015, which was considerably before the 2018

13   statements that we were provided.

14         And so I believe they do need to redouble

15   their efforts, because it was testified very clearly

16   yesterday that it was a recorded interview, or part

17   of it was recorded, and that it was done after the

18   first wave of indictments.

19         So I will go ahead and file a written

20   motion to that effect, but there was no hesitation in

21   the testimony yesterday to the temporal portion of

22   when that interview was conducted.

23         THE COURT:  Anything else on that,

24   Ms. Armijo?

25         MS. ARMIJO:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 THE COURT:  Anybody else have anything on
 2      that?
 3                 All right.  Mr. Lowry, you have some
 4      documents to give me?
 5                 MR. LOWRY:  Well, your Honor, the Court is
 6      in possession of them.  I just wanted to clear up the
 7      record.  In going through the exhibit list with
 8      Ms. Bevel earlier this morning, I just -- when we're
 9      doing our housekeeping at the beginning of this
10      motion, I neglected to move in evidence the exhibits
11      that were attached to the reply brief.  And I've
12      consulted with Ms. Armijo, and I don't think there is
13      any opposition to that.
14                 THE COURT:  Can you put those on the
15      record, or --
16                 MR. LOWRY:  Yes, Your Honor, I can.
17      Defendant's Exhibit O would have been the Prisoner
18      Location History for Anthony Ray Baca.
19                 THE COURT:  All right.  Any objection,
20      Ms. Armijo?
21                 MS. ARMIJO:  No, Your Honor.
22                 THE COURT:  Any other defendant?
23                 All right.  Not hearing or seeing any,
24      Baca's Exhibit O will be admitted for purposes of his
25      Document 2421.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    (Defendant Baca Exhibit O admitted.)

 2                    MR. LOWRY:  Exhibit P is a partial

 3      transcript of the Lupe Urquizo testimony that was

 4      quoted and cited in the reply brief.

 5                    THE COURT:  Any objection, Ms. Armijo?

 6                    MS. ARMIJO:  No, Your Honor.

 7                    THE COURT:  How about from any other

 8      defendant?

 9                    Not hearing or seeing any, Baca Exhibit P

10      will be admitted into evidence for purposes of his

11      new trial motion 2421.

12                    (Defendant Baca Exhibit P admitted.)

13                    MR. LOWRY:  Your Honor, I'd move in Q, R,

14      and S.  These are three audio files of telephone

15      jailhouse recordings between Lupe Urquizo and various

16      friends and family members regarding his viewing of

17      the tablets.

18                    THE COURT:  All right.  Any objection to

19      those, Ms. Armijo?

20                    MS. ARMIJO:  Are they full transcripts or

21      audios?

22                    MR. LOWRY:  They are full audio, the

23      jailhouse recordings.

24                    MS. ARMIJO:  I thought you said

25      transcripts.  No objection.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9446

```
 1              THE COURT:  All right.  Anybody else have
 2      any objection?
 3              Not seeing or hearing any, Baca's Exhibits
 4      Q, R, and S will be admitted for purposes of his new
 5      trial motion, 2421.
 6              (Defendant Baca Exhibits Q, R, S admitted.)
 7              MR. LOWRY:  And, Your Honor, the final one
 8      would be Baca Exhibit T.
 9              THE COURT:  Any objection, Ms. Armijo?
10              MS. ARMIJO:  No, Your Honor.
11              THE COURT:  All right.  Not hearing or
12      seeing any, Baca Exhibit T will be admitted for his
13      new trial motion.
14              (Defendant Baca Exhibit T admitted.)
15              MR. LOWRY:  And, Your Honor, you should
16      have a complete set of Defense Exhibits A through FF,
17      with the exception of Exhibit W, which was a
18      duplicate of Exhibit I, which we struck.  So we
19      skipped Exhibit W, Your Honor.
20              THE COURT:  All right.  So I have -- I
21      think I have all those.
22              All right.  Anybody else have anything?
23      Mr. Davidson?
24              MR. DAVIDSON:  Just for the record, Your
25      Honor, if I may, Defendant Arturo Garcia joins Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9447

```
 1   Herrera's motion for a new trial, Document 2413, and
 2   Mr. Troup's motion for new trial, Document 2420.  I
 3   don't believe we previously indicated anything about
 4   that.  If you'd like me to file a notice for the
 5   record, I could do that.
 6           THE COURT:  Well, I'm not requiring it, but
 7   if it is convenient, it will help me; I know I'll
 8   catch it and put that into the opinion.  But I don't
 9   want to make you do a bunch of work.  And probably
10   I'll pick it up by reviewing this transcript.  But it
11   does help.
12           Anybody else have anything else we need to
13   cover with these motions?
14           Well, let me say this:  As I read the
15   motions, I wasn't seeing that I was probably going to
16   grant any new trials or grant any acquittals as I
17   went through them.  I'm not convinced, leaving here
18   today, that I'm going to do that.  I will work and
19   give you opinions, and work through it.  There is
20   some stuff that's new here that I haven't thought
21   much more than in preparation for the hearing, and
22   being at the hearing.  But I'm not seeing anything
23   that gives me a sense that fundamentally new trials
24   or convictions need to be set aside.  So I think we
25   need to take that into account, that I'm leaving here
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9448

1    not thinking I'm going to grant any of the motions.

2            In some of the -- I don't want to give away

3    too much here, but in some of the CJA letters and

4    stuff I received, I think I am holding the show up,

5    because people are not being sentenced, as far as

6    cooperators, because of the Government waiting to see

7    what I'm going to do with new trial motions; maybe

8    the same way for the men that have been convicted in

9    the two DeLeon trials.  I'm not telling y'all what to

10   do, but I'm saying this because it makes sense to me

11   that maybe we go ahead and start moving forward on

12   those things.

13           I know I have been out-of-pocket.  I don't

14   know if everybody in this room knows I've -- when I

15   got done with Mr. Cordova's trial in July, I went

16   into a 21-day trial.  And that actually, if you think

17   about it, that's about a five-week trial.  It drifted

18   over.  Plus, I've done two jury trials since then.

19   So the last two weeks I've just completed two trials,

20   so I had two going on at the same time.  So I know

21   that part of the problem has been my scheduling.  I

22   just simply haven't had days to devote to it.  But

23   that should clear up a little bit.  A trial that I

24   had in January for two weeks, the defendant pled.  So

25   I'm probably going to start filling it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              But I think we can move forward with
 2    sentencings.  If I change my mind -- if I think that
 3    I'm going to be doing something -- and I don't plan
 4    to stop working on this; I plan to continue to plow
 5    ahead, because I think I'm not giving everybody
 6    comfort in proceeding to sentencing.  And so I'm
 7    going to continue to work on opinions, and try to
 8    crank those out so that you can get assured that I'm
 9    not changing my mind, and I'm going to proceed to
10    sentencing.  Perhaps that will give everybody some
11    comfort to go ahead and set those sentencings up and
12    get them done.  And I will continue to try to work to
13    get the opinions out, to give you even more comfort
14    as we go along.
15              There was something else related to that I
16    wanted to say.  But in any case, if I run into a bump
17    in the road, I'll alert you, so that if people need
18    to adjust on the sentencings, they can.
19              One reason I also encourage you to go ahead
20    and let's set the sentencings, let's move them
21    forward, is because it will keep my feet to the fire.
22    If we start moving those sentences, or we don't set
23    them, other things come up, and I start, you know,
24    sort of dealing with the most immediate thing, the
25    thing that's right in my face that I have to deal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9450

```
 1   with.  And if you're right in my face, and you're the

 2   next thing, chances are I'm going to get your

 3   opinions and rulings out before I see you again.

 4              All right.  Let me again express my

 5   appreciation to everybody.  It's probably the last

 6   time we're all going to get together in this case.

 7   And let me express my appreciation for everybody's

 8   hard work and good nature, and you were a good bunch

 9   to work with.  You'll certainly always be something

10   I'll remember, and I appreciate everybody's courtesy

11   and respect for the Court and everything you did.  So

12   I appreciate everything everybody did for the Court.

13              Is there anything else we need to discuss

14   while we're together?  Anything else I can do for

15   you?  Ms. Armijo?  Mr. Castellano?

16              MS. ARMIJO:  Your Honor, just along those

17   lines, I know that you want to move forward with the

18   sentencings.  I think we still have a couple of

19   briefs out there.  Are we going to put, like a time

20   limit when we get the initial one, so that then we're

21   not just kind of waiting to see if one is going to be

22   filed or not?

23              THE COURT:  I know we're looking for one

24   from Ms. Torraco.

25              MS. ARMIJO:  Torraco, and Mr. Lowry, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9451

```
 1    Mr. --

 2              THE COURT:  When do you think you may have

 3    that ready, Ms. Torraco?

 4              MS. TORRACO:  I think that depends on

 5    Christmas.  Will you give me some grace for Christmas

 6    and let it be due in January?

 7              THE COURT:  Why don't you propose a

 8    deadline for yourself?

 9              MS. TORRACO:  January 15.

10              THE COURT:  Does that work for you?

11    January 15?

12              MS. ARMIJO:  Yes, that's fine.

13              THE COURT:  All right.  Who else was going

14    to -- Mr. Lowry.

15              MR. LOWRY:  I was considering January 4,

16    Your Honor.

17              THE COURT:  All right.

18              MR. LOWRY:  I was sensitive to Ms. Armijo's

19    trial coming up.

20              MS. ARMIJO:  I think have a trial the 8th,

21    so I'll probably need maybe a little bit additional

22    time.  But that's fine.

23              THE COURT:  All right.  Was there somebody

24    else that was going to submit anything additionally?

25              MR. COOPER:  Probably Mr. Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9452

```
 1                THE COURT:  Mr. Castle.  What do you want
 2     to propose as your deadline, Mr. Castle?
 3                MR. CASTLE:  Hold on.  There, I got off
 4     mute, I think.
 5                I was hoping to look at the transcript, and
 6     make sure I have all of what Agent Acee said down
 7     correctly.  I don't know if we could just get his
 8     transcript somehow expedited.  And I wouldn't need
 9     much time after I received that to be able to file my
10     motion.
11                THE COURT:  All right.  Do you want to
12     propose a date?  If we have to move it, we can.  But
13     do you want to propose a hard deadline?
14                MR. CASTLE:  Could we inquire of Ms. Bean
15     what she thinks it might take?
16                THE REPORTER:  I think it's already been
17     ordered expedited, right?
18                THE COURT:  Okay.  So she's thinking she
19     can get it to you in seven days.
20                MR. CASTLE:  Then can I have till the
21     1st -- well, January 2nd, Your Honor?
22                THE COURT:  Does that work for you,
23     Ms. Armijo?
24                MS. ARMIJO:  Yes, Your Honor.
25                THE COURT:  All right.  So January 2.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9453

```
 1                    Anybody else you want deadlines for,
 2     Ms. Armijo?
 3                    MS. ARMIJO:  No, Your Honor, that's it.  I
 4     just wanted to make sure.  If people need additional
 5     time during the holidays, that's fine, I just wanted
 6     to make sure that we weren't in March still waiting
 7     for something.
 8                    THE COURT:  All right.  Anything else that
 9     we need to discuss?  Anything else I can do for you,
10     Ms. Armijo?
11                    MS. ARMIJO:  No, Your Honor.  Thank you.
12                    THE COURT:  How about for the defendants?
13     Anyone else?  Anything else we need to discuss?
14     Anything else I can do for you?  Mr. Castle?
15     Mr. Cooper?  Anybody?
16                    MR. COOPER:  No, Your Honor.  And thank
17     you --
18                    MR. CASTLE:  No, Your Honor.
19                    MR. COOPER:  And thank you for all that
20     you've done in these trials.  And we appreciate
21     everything you've done as well.
22                    THE COURT:  All right.  I appreciate it.  I
23     appreciate your hard work.  I'll probably see the
24     Government fairly frequently; see you gentlemen here
25     when we get your sentencings set up.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Everybody have good holidays.  Be safe.

2     Thank you for being here this week.  I appreciate

3     everybody kind of pushing everything and getting it

4     done.

5          All right.  Y'all have a good one.  Good to

6     see you.

7          (The Court was adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on December 22, 2018.

15

16

17

18                        _____
                          Jennifer Bean, FAPR, RMR-RDR-CCR
19                        Certified Realtime Reporter
                          United States Court Reporter
20                        NM CCR #94
                          333 Lomas, Northwest
21                        Albuquerque, New Mexico 87102
                          Phone:   (505) 348-2283
22                        Fax:     (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF NEW MEXICO

3

4  UNITED STATES OF AMERICA,

5       Plaintiff,

6       VS.                    CR. NO. 15-4268 JB

7  JOE LAWRENCE GALLEGOS,

8       Defendant.

9

10

11       Transcript of Sentence Proceedings before
   The Honorable James O. Browning, United States
12  District Judge, Las Cruces, Dona Ana County,
   New Mexico, commencing on June 11, 2019.
13

14  For the Government:  Mr. Randy Castellano

15  For the Defendant:   Mr. Richard Sindel; Mr. Brock
   Benjamin
16

17

18

19

20          Jennifer Bean, FAPR, RDR, RMR, CCR
              United States Court Reporter
21            Certified Realtime Reporter
                333 Lomas, Northwest
22            Albuquerque, NM  87102
              Phone:  (505) 348-2283
23             Fax:  (505) 843-9492

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Good morning

2    everyone.  I appreciate everyone making themselves

3    available this morning.

4          The Court will call United States of

5    America versus Joe Lawrence Gallegos, Criminal Matter

6    No. 15-CR-4268 JB.

7          If counsel will enter their appearances for

8    the Government.

9          MR. CASTELLANO:  Good morning, Your Honor.

10   Randy Castellano on behalf of the United States.

11         THE COURT:  All right.  Mr. Castellano,

12   good morning to you.

13         And for the defendant.

14         MR. SINDEL:  Richard Sindel for

15   Mr. Gallegos with Brock Benjamin.

16         THE COURT:  All right.  Mr. Sindel, Mr.

17   Benjamin, and Mr. Gallegos, good morning to you.

18         THE DEFENDANT:  Good morning, Judge.

19         THE COURT:  All right.  Mr. Gallegos, have

20   you reviewed the -- make sure that I know -- there is

21   an addendum that Probation has prepared, as well as

22   the presentence report.  I think those are the only

23   two documents that Probation has prepared.  Have you

24   reviewed those two documents, Mr. Gallegos, the

25   presentence report and then the addendum which deals

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9458

1    with the objections?

2           THE DEFENDANT:  Yes, I reviewed it with

3    Mr. Benjamin.

4           THE COURT:  You reviewed them.  All right.

5    And Mr. Benjamin and Mr. Sindel, have you reviewed

6    with Mr. Gallegos the presentence report and the

7    addendum?

8           MR. BENJAMIN:  Your Honor, I think I went

9    to West Texas and reviewed the PSR and those

10   materials.  And that was a logistics issue, but yes,

11   Your Honor.

12          THE COURT:  All right.  So we have a number

13   of objections.  Unless Probation has satisfied you

14   with those objections -- which I take it they have

15   not, because you have filed formal objections -- I

16   propose to take up the ones that deal with the

17   calculation of the guideline sentence first unless

18   you want to do the factual ones first.  Any

19   preference there, Mr. Benjamin?

20          MR. BENJAMIN:  No preference at all, Your

21   Honor.

22          THE COURT:  All right.  I have worked -- of

23   course a lot of this was in conjunction with Andrew

24   Gallegos -- but I have worked on the objections.  I

25   can hear arguments, or if you would like, I could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9459


Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9460

1   tell you what my tentative ruling is or my proposed

2   ruling or at least my thoughts so that you could have

3   something to shoot at.  But it's your call.

4           MR. BENJAMIN:  I will take option two, Your

5   Honor, you were going to propose.

6           THE COURT:  Okay.  Let me tell you what I'm

7   thinking and then that will give you something to

8   shoot at.

9           Let's take up the first objection.  This is

10  the first guideline objection relating to Count 1 is

11  the two-level adjustment that Probation imposed under

12  USSG Section 3A1.1(b)(1) for a vulnerable victim.

13          Mr. Gallegos asserts that there is no

14  credible testimony that FC was vulnerable, because FC

15  was not locked in his cell, pursuant to the

16  testimony.  The probation office by way of addendum

17  maintains that the information contained in this

18  paragraph of the presentence report, which I think

19  was -- well, I'm not sure what number it was -- is

20  accurate, and the increase was appropriately applied.

21  So that's the first addendum, which I think is the

22  only addendum.

23          The United States asserts that Mr. Castillo

24  was a vulnerable victim because both on his

25  incarcerated status and the fact that the defendant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9460

 1    and two others murdered him immediately following his

 2    ingestion, the probation clarifies in another

 3    addendum -- are there two addendums?

 4            MR. SINDEL:  There are, Your Honor.

 5            PROBATION OFFICER:  Yes, Your Honor.

 6            THE COURT:  I only have the one that's

 7    dated May 2.  So that's the original addendum?

 8            PROBATION OFFICER:  Yes, Your Honor.  We

 9    filed a second addendum on June 4.

10            THE COURT:  Okay.  I don't have that

11    addendum.  So --

12            THE CLERK:  Let me print it, Judge.

13            THE COURT:  Does somebody have one to give

14    it to me?

15            MR. CASTELLANO:  You can borrow mine,

16    Judge.

17            THE COURT:  Okay.  All right.  So have you

18    reviewed the second addendum which was filed on June

19    4, have you reviewed that, Mr. Gallegos?  You've got

20    two addendums.  You've got a presentence report, an

21    addendum, and a second addendum.

22            MR. BENJAMIN:  Thank you, Your Honor.  I

23    have that.  I actually misspoke earlier.  That is not

24    the one that I reviewed with Mr. Gallegos.  That's my

25    fault.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9461

```
 1              THE COURT:  So this second addendum he

 2     hasn't reviewed?

 3              MR. BENJAMIN:  No, Your Honor.  That isn't

 4     one that --

 5              THE COURT:  Why don't you take a moment and

 6     review it with him because that's what we're going to

 7     be discussing here.

 8              MR. BENJAMIN:  Yes, Your Honor.  And I

 9     apologize to the Court, Your Honor.  That's my

10     mistake.

11              THE COURT:  All right.  Mr. Gallegos, take

12     your time.

13              THE DEFENDANT:  Okay.

14              (The defendant conferred with counsel.)

15              MR. BENJAMIN:  Thank you, Your Honor.  I

16     apologize once again to Mr. Gallegos and the Court.

17              THE COURT:  All right.  So you now have

18     reviewed, Mr. Gallegos, the presentence report, the

19     addendum and the second addendum?

20              THE DEFENDANT:  Yes, Judge.

21              THE COURT:  All right.  And Mr. Benjamin,

22     you and Mr. Sindel have reviewed with him the

23     presentence report and the addendum and the second

24     addendum?

25              MR. BENJAMIN:  Yes, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            THE COURT:  All right.  So let's talk about

2     one of the subjects there, of the second addendum,

3     and that is this vulnerable victim enhancement.  In

4     the second addendum the probation office clarified

5     that the adjustment's application is supported by

6     case law, and noted that the Court's decision to

7     apply the adjustment in co-defendant Edward Troup's

8     sentencing for the same murder, citing United States

9     v. Tapia from the Eleventh Circuit.  And then the

10    Lambright case from the Fifth Circuit.

11            The two-level adjustment for a vulnerable

12    victim applies when the victim of the offense,

13    conviction, quote, "is unusually vulnerable due to

14    age, physical, or mental condition, or who is

15    otherwise particularly susceptible to the criminal

16    conduct, and the defendant knows or should have known

17    of the victim's unusual vulnerability."  Application

18    Note 2 underscores that USSG Section 3A1.1(b), quote,

19    "applies to offenses involving" -- and again I

20    emphasize the word "unusually vulnerable victim, in

21    which the defendant knows or should have known of the

22    victim's unusual vulnerability."  For example, in

23    Tapia, the Eleventh Circuit reviewed the district

24    court's decision that an incarcerated government

25    informant, assaulted by other prisoners, was a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com
DNM 9463

1    vulnerable victim for Section 3A1.1 purposes.  The

2    Eleventh Circuit found no error in the application of

3    the adjustment to the appellant's convictions under

4    18 USC Section 1513, which involves retaliating

5    against a witness, victim, or informant, determining

6    that the district court, quote, "correctly concluded

7    that the victim as an individual was particularly

8    vulnerable by virtue of his incarceration with

9    appellant's and his inability to escape, and that the

10   victim was targeted because of this vulnerability."

11        In Lambright, the Fifth Circuit upheld

12   Section 3A1.1's application where a corrections

13   officer killed an inmate.  The district court

14   concluded that the inmate was a vulnerable victim

15   because he was, quote, "completely dependent upon the

16   care of the correction officers, was locked in his

17   cell prior to the assault, and he could not protect

18   himself from the assault."

19        The Tenth Circuit has explained that the

20   vulnerable victim, quote, "enhancement shall apply

21   when the victim is less able to resist than the

22   typical victim, and requires greater societal

23   protection."  That was United States v. Scott, in

24   2008.  In Scott, first quoting Castaneda from the

25   Ninth Circuit, and then quoting Proffit from the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9464

 1    Tenth Circuit itself, the Tenth Circuit underscores

 2    that the adjustment is, quote, "reserved for

 3    exceptional cases in which the victim is unusually

 4    vulnerable or particularly susceptible to the crime

 5    committed, where the victims are unable to protect

 6    themselves."  That comes from the Proffit case.

 7         There is no requirement, however, that the

 8    sentencing court find that the defendant

 9    intentionally targeted the victim because of the

10    victim's vulnerability to apply the adjustment.  That

11    comes from the Tenth Circuit's case in Checora.

12         Further, in assessing vulnerability, the

13    sentencing court must make an individualized

14    determination.  It's not enough that a victim belongs

15    to a class generally considered vulnerable.  And that

16    comes from Scott, Proffit, and another Tenth Circuit

17    case, Hardesty.

18         Here, the SNM targeted Castillo to be

19    killed because of his alleged cooperation with law

20    enforcement.  I credit the testimony of Lujan on

21    April 23 and 24, where he stated that Mr. Castillo

22    needed to be killed because he was a rat.  The SNM

23    issued a green light on Mr. Castillo requiring that

24    he be killed pursuant to the gang's prohibition of

25    snitching.  Again, Mr. Lujan stated that the biggest

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9465

1    rule of the SNM is, "Don't snitch.  And those who do

2    are going to get hit."  And then he also stated that

3    being a rat gets an automatic green light.  And he

4    discussed Billy Garcia issuing a hit on Castillo

5    because he was a rat.  The green light on

6    Mr. Castillo made him particularly vulnerable to

7    being murdered.  Further, Mr. Castillo's

8    incarceration with other SNM members who knew of the

9    green light and were ordered to act on them increased

10   Mr. Castillo's vulnerability to get killed.  Mr.

11   Lujan stated that he would follow an order from

12   somebody who had push within the SNM.

13           Michael Jaramillo, who testified on May 13,

14   I credit his testimony.  I think Mr. Cooper was

15   eliciting this at that time, where he stated that

16   when a member gets confirmation that somebody has got

17   to get hit, he needs to go forward with that and make

18   sure those people get hit.  Mr. Gallegos, Mr. DeLeon,

19   Mr. Jaramillo, targeted Mr. Castillo specifically

20   because of the green light.  Mr. Lujan testified that

21   Mr. Gallegos -- that he, Lujan, told Mr. Gallegos

22   that Mr. Billy Garcia ordered Mr. Lujan to choose

23   people to kill.  Mr. Castillo and Mr. Lujan chose

24   Mr. Gallegos, Mr. Jaramillo, and Mr. DeLeon.

25   Mr. Jaramillo stated that Mr. Gallegos informed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9466

1   Mr. Jaramillo and Mr. DeLeon that they were, quote,

2   "going to be taking out Mr. Castillo."

3          The United States v. Pierce case from the

4   Tenth Circuit states that USSG Section 3A1.1(b)(1) is

5   justified where, quote, "the defendant selected and

6   targeted this particular victim for the offense

7   because of unusual characteristics."

8          Further, Mr. Gallegos, Mr. DeLeon, and

9   Mr. Jaramillo had easy access to Mr. Castillo,

10  because they were housed together, and specifically

11  attacked Mr. Castillo in his cell, where it would be

12  harder for Mr. Castillo to escape.  Mr. Jaramillo

13  testified that he, Mr. Jaramillo, and Mr. Castillo

14  were housed in the same unit.  Mr. Jaramillo

15  testified that Mr. Gallegos was housed next door to

16  Mr. Jaramillo.  And Mr. Jaramillo stated that

17  Mr. Gallegos himself, Mr. Jaramillo, Mr. DeLeon

18  entered Mr. Castillo's cell and strangled him.

19         Further, Mr. Gallegos and Mr. DeLeon and

20  Mr. Jaramillo outnumbered Mr. Castillo in his small

21  cell, and specifically waited to attack Mr. Castillo

22  until Mr. Castillo had ingested heroin, so they used

23  Mr. Castillo's vulnerable, intoxicated state to their

24  advantage.

25         Mr. Jaramillo stated that the murder plan

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9467

```
 1   was to enter Mr. Castillo's room in the morning, give

 2   him a shot of heroin, and then strangle him.  And

 3   then he also stated that as soon as Mr. Castillo was

 4   done injecting the heroin, Joe and Angel grabbed him,

 5   rolled him over onto his bed, and Mr. Jaramillo began

 6   to choke him out.

 7          In the Checora, case, the Tenth Circuit

 8   upheld Section 3A1.1(b)(1)'s application where the

 9   victim was outnumbered, drunk, and had little ability

10   to defend himself.

11          Accordingly, the Court is inclined to state

12   that credible testimony establishes that Mr. Castillo

13   was vulnerable because of the SNM's hit on him, his

14   incarceration with other SNM members who were ordered

15   to act on the hit, his being outnumbered, his

16   intoxication from the heroin, and his limited ability

17   to defend himself or escape from the surprise attack

18   in his cell.

19          Mr. Gallegos knew or should have known of

20   these particular vulnerabilities.  So the Court is

21   inclined to apply the two-level enhancement under

22   USSG Section 3A1.1(b)(1) and overrule Mr. Gallegos'

23   objection to it.

24          So those are my thoughts coming in.

25   Mr. Benjamin, Mr. Sindel.  If you wish to speak in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9468

1    support of your objection, you may do so at this

2    time.

3              MR. SINDEL:  Well, Your Honor, I have

4    reviewed the cases.  I think U.S. v. Tapia is not

5    particularly applicable to this situation.  That's a

6    jailhouse killing in which they had believed that the

7    victim in that particular was cooperating with the

8    Government.  They were seeking out information, a

9    document to support this.

10             However, I think the Lambright case does

11   add some merit to the Court's position in this

12   particular matter.  And I think that our position is

13   set out in the objections.  And I don't have anything

14   further to add.  I think the Lambright case does have

15   some parallel to this particular circumstance.

16             THE COURT:  All right.  Thank you,

17   Mr. Sindel.

18             Mr. Castellano, do you have anything you

19   wish to say in response to the objection?

20             MR. CASTELLANO:  No, Your Honor.  We

21   briefed this, and I agree with the Court's analysis

22   on this topic, and I do believe that the enhancement

23   applies.

24             MR. BENJAMIN:  Your Honor, just briefly,

25   there were three things that the Court articulated

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9469

1    that I wanted to respond to on this part.

2             THE COURT:  All right.

3             MR. BENJAMIN:  I think, one, the Court is

4    taking the testimony of Mr. Lujan, who is one of the

5    cooperators.  And the Court referred to the green

6    lights multiple times.  I think the Court will

7    remember that I think everybody and anybody that was

8    involved in every way, shape, and form in this trial

9    had a green light on them, is my understanding.  So

10   we're adding, I think, a lot of credibility to green

11   lights when I believe that the testimony, if the

12   Court will remember, went back and everybody had a

13   green light.  In fact, there was testimony that Joe

14   had a green light on him at one point in time.

15            And so, obviously, this is from

16   Mr. Gallegos' point of view, but the Court is giving

17   a lot of weight to two individuals' testimony,

18   Mr. Jaramillo and Mr. Lujan, both of which, their

19   testimony -- in applying this two-level enhancement,

20   I think -- and the Court used the word "credible" for

21   them.  I think I would ask the Court to consider and

22   remember that Mr. Jaramillo is -- walked out of here

23   specifically without any charges and denied any

24   involvement when our investigator talked to him.  And

25   so that's a factual consideration that I think I need

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9470

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 15471

```
 1    to highlight to the Court.

 2             And the other one is simply Mr. Lujan, who

 3    had more inconsistencies.  And I think we spent

 4    several days on his inconsistencies.  So my concern

 5    is the Court's reliance and weight it appears to be

 6    giving to those two particular witnesses.

 7             THE COURT:  All right.

 8             MR. BENJAMIN:  Thank you, Your Honor.

 9             THE COURT:  Thank you, Mr. Benjamin.

10             Anything further, Mr. Castellano?

11             MR. CASTELLANO:  No, Your Honor.

12             THE COURT:  Anything else, Mr. Sindel, Mr.

13    Benjamin?

14             MR. SINDEL:  No, Your Honor.

15             THE COURT:  All right.  Well, I'm going to

16    overrule the objection.  I'm only crediting, at the

17    present time, Mr. Lujan and Mr. Jaramillo's testimony

18    on the specific issues that I had.  Because I thought

19    those were corroborated either by their joint

20    testimony.

21             As far as the hits are concerned, it's just

22    one of the factors.  I mean, I'm trying to avoid

23    saying that any time somebody is a prisoner or a

24    detainee that they're a vulnerable victim.  I think

25    you've got to look for more.  And that's one of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9471

 1   "mores" in this case that I thought made Mr. Castillo

 2   a vulnerable victim.  So I'll issue a short opinion

 3   on this.  It's pretty much written, but I'll give you

 4   a little bit more on that so that if you want to

 5   raise this issue at the Tenth, I'll give you a fuller

 6   explanation of what I said.

 7           All right.  The second objection was to the

 8   two-level adjustment for the restraint.  Again, I

 9   thought through this because this has come up before.

10   Would you like to hear my thoughts, or do you want to

11   go ahead and argue, Mr. Benjamin?

12           MR. SINDEL:  Your thoughts, Your Honor.

13           MR. BENJAMIN:  Yes, Your Honor.

14           THE COURT:  So Mr. Gallegos also objects to

15   the probation office's application of a two-level

16   adjustment under USSG Section 3A1.3, which applies

17   where the victim was, quote, "physically restrained

18   in the course of the offense."  Mr. Gallegos asserts

19   that the facts used to assess this adjustment are

20   inaccurate and not based on credible trial testimony.

21   Probation first responds to, quote, "the information

22   contained in this paragraph of the presentence report

23   is accurate and the increase was appropriately

24   applied."  That's the first addendum.  The United

25   States contends that there is an abundance of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9472

1    evidence to support this enhancement, and that

2    Mr. Gallegos physically restrained Frank Castillo

3    while Jaramillo strangled him.

4         And then the probation office clarified in

5    the second addendum that the adjustment is accurately

6    applied because Mr. Gallegos, along with Angel

7    DeLeon, held FC's arms and body while Jaramillo

8    strangled him to death.

9         The guidelines manual counsels that the

10   restraint of victim adjustment does not apply where

11   the offense guideline specifically incorporates this

12   factor or where the unlawful restraint of a victim is

13   an element of the offense itself.  That's Application

14   Note 2 to the guidelines.  The guidelines manual

15   defines the term "physically restrained" as the

16   forcible restraint of the victim, such as tied,

17   bound, or locked up.  That's Application Note 1 L.

18        And I have said in the past, in United

19   States v. Rodella, which is citing the Checora case

20   again, "these examples are merely illustrative, and

21   not exhaustive."  The Tenth Circuit has interpreted

22   this adjustment as, quote, "requiring that there be a

23   forcible restraint of a victim which occurs during

24   commission of the offense."  That's from Checora, and

25   where it applied the adjustment where the victim was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9473

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 18

1    tackled to the ground to prevent his escape.

2           The Tenth Circuit has consistently applied

3    the adjustment where the victim was, quote, "kept

4    within bounds or under control to make her a better

5    target."  That was United States v. Ivory, again

6    quoting the Checora case.

7           Here, Mr. DeLeon and Mr. Gallegos held

8    Mr. Castillo down while Mr. Jaramillo strangled him

9    to death.  That's the testimony from Mr. Jaramillo.

10   And again on this point, I credit that testimony

11   stating that Joe and Angel grabbed Mr. Castillo by

12   his arms and rolled him over onto his bed.

13   Mr. Jaramillo stated that Mr. Gallegos participated

14   in Mr. Castillo's murder by helping hold down

15   Mr. Castillo.  That "helping hold down" was

16   Mr. Jaramillo's words.

17          And then Benjamin Clark stated that -- on

18   testimony on May 4 that Mr. Gallegos described

19   Mr. DeLeon holding Mr. Castillo -- and I'm quoting

20   here -- "down with the monkey grip or gorilla grip,

21   something like that, and that it was easy.  That

22   Angel held him so tight that it was easy for him to

23   kill him."  So that was what Mr. Clark said about the

24   murder of Mr. Castillo.  I find this testimony

25   credible that discusses Mr. DeLeon and Mr. Gallegos

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9474

1   holding Mr. Castillo down while Mr. Jaramillo

2   strangled him; this grabbing of Mr. Castillo was

3   forcible during commission of the offense and made it

4   easier for Mr. Jaramillo to strangle Mr. Castillo.

5         Again, I think the testimony from Mr. Clark

6   and the Tenth Circuit cases of Ivory and Checora

7   support this.

8         The Court notes that applying USSG Section

9   3A1.3 does not involve impermissible double counting,

10   because Mr. Castillo's physical restraint by

11   Mr. DeLeon and Mr. Gallegos to make it easier for

12   Mr. Jaramillo to strangle Mr. Castillo is not being

13   used as basis of a different adjustment.  The Tenth

14   Circuit says in United States v. Flynn that the

15   impermissible double counting in the Tenth Circuit

16   occurs where, quote, "the same conduct on the part of

17   the defendant is used to support separate increases

18   under separate enhancement provisions, which

19   necessarily overlap, are indistinct, or serve

20   identical purposes."

21         Accordingly, the Court is inclined to

22   conclude that Mr. Castillo was physically restrained

23   during his murder so that the two-level adjustment

24   under USSG Section 3A1.3 applies.  And the Court is

25   inclined to overrule Mr. Gallegos' objection on this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9475

```
 1   point.
 2           Mr. Benjamin, Mr. Sindel, anything you want
 3   to say?
 4           MR. SINDEL:  I would disagree with the
 5   Court concerning the double counting matter.  The
 6   Court had referred, in dealing with the 3A1.1(b)
 7   enhancement that, you know, at least a significant
 8   portion of that had to do with the fact that he was
 9   restrained, both by the physical circumstances of him
10   being in a locked cell or a closed cell, and by the
11   fact that he was physically restrained by the
12   individuals as Mr. Jaramillo, as the Court said,
13   "choked him out."  So we do believe there is an
14   overlap there.
15           THE COURT:  All right.  Thank you, Mr.
16   Sindel.
17           Did you have anything you wanted to say,
18   Mr. Benjamin?
19           MR. BENJAMIN:  No, Your Honor, not on that
20   item.
21           THE COURT:  All right.  Mr. Castellano, any
22   response to this objection?
23           MR. CASTELLANO:  Only to add, Your Honor,
24   that I think that the physical restraint is largely
25   what made this murder successful.  I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Jaramillo doesn't succeed in this attempt if he
 2    was doing this alone.  So certainly it was a team
 3    effort.  And this was a common means of killing
 4    people in the SNM, by strangulation, which included
 5    restraint.  So I think it does apply.
 6             In addition, there is also, I believe,
 7    physical restraint regarding the Adrian Burns murder.
 8    As the Court knows, he was found handcuffed.  And I
 9    think that there is another opportunity there to
10    apply the enhancement in his circumstances.
11             THE COURT:  All right.  Anything else,
12    Mr. Sindel?
13             MR. SINDEL:  No, Your Honor.
14             THE COURT:  All right.  Well, I reviewed
15    this double counting issue a number of times, and it
16    just doesn't seem like it satisfies Tenth Circuit
17    law.  It requires separate enhancements.  So I'm
18    going to overrule that objection, and then apply the
19    two-level adjustment under Section 3A1.3.
20             All right.  Mr. Gallegos' next objection is
21    to the obstruction of justice.  Do you want to argue
22    that, or do you want to hear my inclination,
23    Mr. Benjamin?
24             MR. BENJAMIN:  Go ahead, Your Honor.
25             THE COURT:  All right.  So turning to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9477

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 22

```
 1    Counts 4 and 5, Mr. Gallegos objects to the

 2    obstruction of adjustment, asserting that there are

 3    no facts to support the adjustment.  Mr. Gallegos

 4    maintains that, quote, "an investigation must be

 5    underway when the conduct is committed or knowledge

 6    that it is probably underway, and that there was no

 7    investigation" -- I'm quoting here -- "there was no

 8    investigation till the fire was spotted.  And

 9    accordingly, the adjustment does not apply to the

10    conflagration."  Never can say that word.

11            Probation responded that Mr. Gallegos and

12    Andrew Gallegos, after murdering Burns, quote, "in an

13    effort to impede the criminal investigation placed

14    AB's body near his vehicle and set both on fire."

15    That's the first addendum.  Probation states that,

16    therefore, the Gallegos brothers obstructed the

17    administration of justice with respect to the

18    investigation.  Therefore, the increase is

19    appropriate.

20            The United States responds that the

21    Gallegos brothers, quote, "moved the body and the

22    vehicle to another location to burn them.

23    Consequently, law enforcement investigators were

24    unable to obtain DNA or fingerprint evidence from the

25    scene of the burn."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9478

1          The United States also contends that

2     Mr. Gallegos removed the carpet from his home and

3     instructed his brother to throw away a watch and keys

4     believed to belong to Burns, which combined with the

5     burning, were calculated steps designed to inhibit

6     the investigation, and were done very close in time

7     to the murder.  That's their response at page 5.

8          The sentencing guidelines adjustment for

9     obstructing or impeding the administration of justice

10    applies -- and I'm quoting 3C.1 -- "if the defendant

11    willfully obstructed or impeded or attempted to

12    obstruct and impede the administration of justice

13    with respect to the investigation, prosecution, or

14    sentencing of the instant offense of conviction; and,

15    two, the obstructive conduct related to, A, the

16    defendant's offense of conviction, and any relevant

17    conduct or a closely related offense."

18          Further, the guidelines manual commentary

19    provides obstructive conduct that occurred prior to

20    the start of the investigation of the instant offense

21    of conviction may be covered by this guideline if the

22    conduct was purposely calculated or likely to thwart

23    the investigation or prosecution of the offense of

24    conviction.  That's Application Note 1.

25          I have held in the Yuselaw case that to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9479

1  warrant application of Section 3C1.1 enhancement, the

2  defendant must have deliberately, not accidentally,

3  or incidentally, or mistakenly, done some act with

4  the specific purpose of thwarting the investigation

5  or prosecution.  The same case, the Yuselaw case, the

6  Court also found that attempts to obstruct justice

7  may be sufficient if the acts were of a kind that

8  were likely to thwart the investigation and eventual

9  prosecution.

10         Mr. Gallegos relies on United States v.

11  Baggett for the proposition that obstructive conduct

12  must occur during the investigation.  But that's

13  misplaced, because United States v. Baggett applied a

14  prior version of Section 3C1.1, which did require

15  that.  The version of 3C1.1 on which United States

16  versus Baggett applied provided that if, A, the

17  defendant willfully obstructed or impeded or

18  attempted to obstruct or impede the administration of

19  justice during the course of the investigation,

20  prosecution, or sentencing of the instant offense of

21  conviction; and B, the obstructive conduct related to

22  the defendant's offense of conviction and any

23  relevant conduct, closely related offense, increase

24  the offense level by two.  I left out the emphasis

25  there, but it was quoting guideline 3C1.1.  But the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9480

1    Baggett case didn't say what year it was relying on.

2    But in any case, effective November 1st, 2016, this

3    language was revised to the current language, which

4    notably replaces the phrase "during the course of"

5    with "respect to."  And that guideline manual came

6    into effect in 2006.  The current version of 3C1.1,

7    which has been in place since 2006, states only that

8    the obstructive conduct must be, quote, "with respect

9    to the investigation, prosecution, or sentencing of

10   the instant offense of conviction."

11           The act of burning the body in the car was

12   a necessarily willful impediment to the investigation

13   of Burns' murder, with an easy inference that such

14   burning was done to destroy the evidence, and falls

15   within the example conduct, which the guidelines

16   commentary provides.  And here's their example:

17   "Destroying or concealing evidence that is material

18   to an official investigation or judicial proceeding,

19   which is evidence that," quote, "it believed would

20   tend to influence or affect the issue under

21   determination."  That's Application Notes 4 D and 6.

22           Accordingly, the Court is inclined to

23   overrule this objection and apply the Section 3C1.1

24   two-level adjustment for obstruction of justice.

25           Mr. Benjamin, anything you want to say in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9481

```
 1    support of your objection?

 2              MR. BENJAMIN:  Yes, Your Honor.

 3              And it's an argument, Your Honor, so I ask

 4    the Court to consider telling me -- because the Court

 5    knows where I stand on Counts 4 and 5, and

 6    essentially the facts there.  But I think that the

 7    Court is taking and making an assumption when it's

 8    applying the obstruction of justice here on the idea

 9    that the only reason for the burning would be to

10    destroy the evidence.

11              The Government's proffered motive for this

12    crime was disrespect, anger, and those kind of

13    things.  So I don't know -- there has been nothing to

14    sort out that the plan was to destroy the body and

15    the car, to hide it, versus the plan that the

16    Government presented at trial, which was out of

17    disrespect and anger is the reason they killed him,

18    which, I mean, is what I would suggest a burning of a

19    body would show.

20              And so there is no -- I guess the way to

21    summarize that, Your Honor, is I don't think there is

22    any necessary facts to show that this was done to

23    hide, versus it was done as part of the act.

24              THE COURT:  All right.  Thank you, Mr.

25    Benjamin.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9482

```
 1            Anything you have, Mr. Sindel?

 2            MR. SINDEL:  Only the fact that, you know,

 3   when Mr. Benjamin talks about the Court's

 4   assumptions, the Court did use the phrase "easy

 5   inference."  And under these circumstances --

 6            THE COURT:  I'll delete "easy."

 7            MR. SINDEL:  That didn't help me, did it?

 8            THE COURT:  Well, it's an inference.  I

 9   think it's a reasonable inference I can draw by a

10   preponderance of the evidence.  I'm not going to get

11   into "easy."

12            MR. SINDEL:  Okay.  It's not an easy

13   inference.  If it's a struggle, then I think it's a

14   different situation.  But we're even in a better

15   case.  So I would agree with Mr. Benjamin's position.

16            THE COURT:  All right.  Thank you, Mr.

17   Sindel.

18            All right.  Mr. Castellano, do you have a

19   response to this objection?

20            MR. CASTELLANO:  I would just differentiate

21   Mr. Benjamin's comments about the disrespect.  There

22   were two things here.  There is the murder and the

23   reason for the murder, and then there is the coverup

24   of the murder.  And what we're talking about with

25   this enhancement is the obstruction, which is the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9483

```
 1    coverup of the murder, which concealed or destroyed

 2    evidence.

 3              THE COURT:  Did you take the position at

 4    trial -- you have to refresh my memory on this -- it

 5    was part of a disrespect of Mr. Burns?  Or was your

 6    position -- what was your position at trial on that?

 7              MR. CASTELLANO:  The position was that the

 8    murder was largely based on disrespect, but --

 9              THE COURT:  But the burning itself wasn't

10    meant to be disrespect.

11              MR. CASTELLANO:  Correct.  The burning

12    itself would be the opposite side of that coin, which

13    would be the defendant was disrespecting the victim

14    by burning him.  And that's not our theory.  The

15    theory was the victim was murdered based on

16    disrespect.  But the burning itself was concealment

17    of the crime.

18              THE COURT:  All right.  Anything else you

19    have on this objection?

20              MR. CASTELLANO:  No, Your Honor.

21              THE COURT:  How about you, Mr. Benjamin?

22    Mr. Sindel?

23              MR. BENJAMIN:  No, Your Honor.

24              MR. SINDEL:  No, Your Honor.

25              THE COURT:  All right.  Well, I'm going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9484

1    apply the obstruction of justice enhancement so that

2    two-level will apply.

3            Now, we can go two directions.  I think I

4    dealt with all the objections to the guideline

5    calculation.  Is that correct, Mr. Benjamin?

6    Mr. Sindel?

7            MR. SINDEL:  Yes.

8            MR. BENJAMIN:  Yes, Your Honor.

9            THE COURT:  All right.  So we can go to

10   facts, or I can go to restitution.  Which would you

11   prefer?

12           MR. BENJAMIN:  I think the restitution is

13   probably the easier one.

14           THE COURT:  All right.  Well, let's tackle

15   it.  I have thoughts on it.  Do you want to hear them

16   before you argue it?

17           MR. SINDEL:  Yes, Your Honor.

18           THE COURT:  All right.  The presentence

19   report provides that the provisions of the Mandatory

20   Restitution Act of 1996 apply to these Title 18

21   offenses, and states that Mr. Burns' girlfriend

22   submitted a request for restitution.  AS, Mr. Burns'

23   girlfriend, requests $21,000 for a 2012 Mitsubishi

24   Galant, which had been burned along with Mr. Burns;

25   $7,200 for lost income or wages calculated from $15

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9485

1   per hour at 40 hours per week, and $280 for

2   transportation, for a total of $28,480.

3           Mr. Gallegos states that the restitution

4   calculation should be offset by funds the girlfriend

5   and insurance received from state or federal sources.

6           The probation office responds that the

7   calculations will not be changed because there is no

8   additional documentation to indicate that the family

9   received insurance payments.  That's in the first

10  addendum.

11          The United States agrees with the Probation

12  that Mr. Gallegos is required to pay restitution,

13  noting that Mr. Gallegos admitted that they shot

14  Burns, bound him, and burned him up.  And they were

15  quoting -- the United States was quoting

16  Mr. Castellano's direct examination of Mr. Billy

17  Cordova, so it was Mr. Cordova's testimony.  I can't

18  use that testimony against Mr. J. Gallegos, however,

19  because it's inadmissible nonhearsay evidence only as

20  to Andrew Gallegos.

21          The Court instructed the jury that it could

22  not use that statement only -- could use it only in

23  its deliberations of the charges against Mr. Andrew

24  Gallegos.  You cannot use those against any of the

25  other gentlemen in the courtroom.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9486

```
 1              Probation clarifies in its second addendum
 2    that pursuant to the Court's holding in Andrew
 3    Gallegos' sentencing, however, restitution is not
 4    authorized for AB's girlfriend, in the second
 5    addendum.  And the Court's analysis why restitution
 6    is not properly awarded to Mr. Burns' girlfriend
 7    follows what the Court must determine before it
 8    determines whether the restitution amounts should be
 9    offset by insurance funds.
10              We have to remember that courts have no
11    inherent power to order restitution.  And they do so
12    only as authorized by statute.  The Tenth Circuit
13    said that in Serawop and in Gordon.
14              One such statute, the Mandatory Victim
15    Restitution Act of 1996, MVRA, requires a court to
16    order a defendant convicted of certain offenses to,
17    quote, "make restitution to the victim of the
18    offense, or if the victim is deceased, the victim's
19    estate."  That's Section 3663(a)(1).
20              I'm not going to discuss the other statute
21    which authorizes a court to order restitution, the
22    VWPA, the Victim and Witness Protection Act of 1982,
23    which allows courts to order restitution in their
24    discretion to victims of certain offenses.  And none
25    of those offense of conviction are applicable here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9487

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 32488

```
 1    I do know, however, that I can use cases, and I will

 2    use cases interpreting the VWPA's category of losses

 3    and definition of the term "victim," because the

 4    VWPA's language is identical to the MVRA and these

 5    provisions, and thus these cases are precedential as

 6    to the MVRA as well.  And the Tenth Circuit said the

 7    same thing in the Wilfong case.

 8            The MVRA defines the term "victim" as,

 9    quote, "a person directly and proximately harmed as a

10    result of the commission of an offense for which

11    restitution may be ordered."  The MVRA provides that

12    it applies in all sentencing proceedings for

13    convictions of any offense that is a crime of

14    violence, as defined in Section 16, in which an

15    identifiable victim or victims has suffered a

16    physical injury or pecuniary loss.

17            18 USC Section 16 defines the term of crime

18    of violence as "an offense that has as an element the

19    use, attempted use, or threatened use of physical

20    force against the person or property of another, or

21    B, any other offense that is a felony, and that by

22    its nature involves a substantial risk of physical

23    force against the person or property of another may

24    be used in the course of committing the offense."

25            The MVRA, according to the Serawop case,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9488

1    does not permit a court to consider a defendant's

2    economic circumstances when it imposes restitution.

3              Further, the MVRA outlines four categories

4    of losses which the defendant must cover via

5    restitution.  One is damage to or loss or destruction

6    of property.

7              Second, bodily injury, including the cost

8    of medical care, psychiatric, and psychological care,

9    physical and occupational rehabilitation, and the

10   victim's lost income.

11             3.  If the bodily injury results in death,

12   the cost of funeral and related services.

13             And then 4, the victim's expenses incurred

14   during participation in the investigation or

15   prosecution of the offense.  The Court notes that in

16   the Tenth Circuit restitution is not criminal

17   punishment.  So that's not what the purpose of this

18   is for.  This is just to assist victims.

19             The MVRA applies in this case because

20   murder and conspiracy to murder are, quote, "crimes

21   of violence" for MVRA's purposes.  In the United

22   States versus Visinaiz, it upheld the order of

23   restitution for a defendant convicted of second

24   degree murder.  United States versus Juvenile Male

25   from the Eighth Circuit stated that "We have no doubt

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1    the conspiracy to commit a violent crime is a crime

2    of violence as contemplated by Section 16(b)."

3            The Eleventh Circuit said in Cruz -- it was

4    in dicta, but said that conspiracies to commit the

5    crime of violence creates a substantial risk of

6    violence, such that Section 16 encompasses these

7    offenses.

8            So restitution is mandatory for Burns'

9    losses.  Restitution is also mandatory for

10   Mr. Castillo's losses, as he, too, is a murder

11   victim.  But because his family is not requesting

12   restitution, the Court focuses on the restitution

13   requested related to Mr. Burns' murder.

14           The second addendum clarifies that

15   Mr. Castillo's sister is not requesting any monetary

16   restitution.

17           The question remaining is whether AS, the

18   girlfriend of the murder victim here, is properly

19   considered, quote, "a victim of the offense," such

20   that she may receive restitution under the MVRA for

21   the destruction of her car, loss of income or wages,

22   and transportation costs.

23           The United States hasn't made any attempt

24   to show that AS is properly considered a victim of

25   Burns' murder such that an order of restitution is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9490

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 35

1    appropriate under the MVRA.  This has happened before

2    in the Kieffer case, Tenth Circuit.  The Government

3    makes no serious attempt to establish that it met its

4    burden of proving any of the individuals the court

5    deemed entitled to restitution were victims of

6    defendant's criminal conduct within the meaning of

7    the MVRA.  Accordingly, the district court's order of

8    restitution fails for lack of proof.

9              In the Tenth Circuit case of Speakman, it

10   stated that the Government bears the burden of

11   establishing who is a victim of the offense for MVRA

12   purposes.  AS is a victim of the offense if the

13   commission of the murder, quote, "directly and

14   proximately harmed her."

15             The offense here is Mr. Burns' murder.

16   Mr. Burns' body was found severely burned on the

17   ground about six feet from the trunk of the burned

18   2012 Mitsubishi Galant registered to AS.  The autopsy

19   revealed that the gunshot to Mr. Burns' head caused

20   his death.  The burning of the car, thus, is separate

21   conduct from the act of murdering Burns.  So AS's

22   loss of her car is not the direct and proximate

23   result of the commission of the murder, but rather is

24   a result of the Gallegos brothers' separate attempt

25   to destroy evidence after the murder.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9491

1          Accordingly, AS is not properly considered

2    a victim of Burns' murder, and the Court will not

3    award her restitution for her destroyed car or for

4    transportation.

5          It's difficult to determine with accuracy

6    at the time what the claim for transportation cost

7    arises from, as AS's victim impact statement only

8    provides that she is seeking restitution for train

9    and bus.  I assume that these costs were because of

10   AS having to use alternate transportation after the

11   loss of the car, which is why it does not award

12   restitution for these costs.  The Court gathers from

13   AS's victim impact statement that her claim for lost

14   income or wages stems from her inability to go to

15   work for a few months after her boyfriend's murder,

16   ostensibly because of her guilt and grief over

17   Mr. Burns' murder.  AS's grief over her boyfriend's

18   death is arguably the direct and proximate result of,

19   quote, "the commission of Burns' murder."  So her

20   inability to work because of the grief may be

21   compensable if the MVRA applies.

22          The MVRA, however, provides only two

23   avenues for an order of restitution for loss of

24   income.  The first is, quote, "in the case of an

25   offense resulting in bodily injury to a victim, in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9492

1    which the court shall order that the defendant, A,

2    pay an amount equal to the cost of necessary medical

3    and related professional services and devices

4    relating to physical, psychiatric, psychological

5    care, including nonmedical care and treatment

6    rendered in accordance with a method of healing

7    recognized by the law of the place of treatment; B,

8    pay an amount equal to the cost of necessary physical

9    and occupational therapy and rehabilitation; and C,

10   reimburse the victim for income lost by such victim

11   as a result of such offense.

12           This provision is, thus, inapplicable to

13   AS, because it applies to a victim who suffered

14   physical injury as a result of the offense.  And

15   Burns' murder did not result in bodily injury to AS.

16           The Eighth Circuit has said in the Osland

17   case, "when an offense causes bodily harm to a

18   victim, restitution must be ordered for medical or

19   psychological treatment, cost of therapy, and

20   rehabilitation, and income lost by such victim as a

21   result of such offense."

22           The MVRA also provides that "in any case

23   the court shall order the defendant to reimburse the

24   victim for lost income and necessary child care,

25   transportation, and other expenses incurred during

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9493

1    the participation in the investigation or prosecution

2    of the offense, or attendance at proceedings related

3    to the offense."

4             Again, this provision is inapplicable to

5    AS, as her lost wages or income is not a result of

6    her "participation in the investigation or

7    prosecution of the offense or attendance at

8    proceedings related to the offense."

9             Accordingly, the Court is not inclined to

10   order restitution for AS's lost wages or income.

11   Should the United States, or -- probably the

12   defendant is not going to help any here -- but

13   Probation provide facts so that the Court may

14   determine restitution amounts that are appropriate

15   under the MVRA, such as the costs of necessary

16   funeral or related services, the Court will order

17   such appropriate restitution.

18             So the Court is inclined to sustain

19   Mr. Gallegos' objection to the restitution

20   calculations, although the Court will not order that

21   the figures be offset by funds AS received, because

22   restitution itself is improper.

23             Anything you want to say on that,

24   Mr. Benjamin?  Mr. Sindel?

25             MR. BENJAMIN:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9494

Appellate Case: 20-2058    Document: 010110415675    Date Filed: 09/29/2020    Page: 39495

```
 1              MR. SINDEL:  No, Your Honor.
 2              THE COURT:  All right.  Mr. Castellano, do
 3    you have anything you want to say on that objection?
 4              MR. CASTELLANO:  No, Your Honor.  I
 5    understand the Court's ruling.  Just note the
 6    Government's objection for the record.
 7              THE COURT:  All right.  So I will not order
 8    restitution in this case, and I will sustain
 9    Mr. Gallegos' objection to that.
10              All right.  Then we have remaining factual
11    objections.  The probation officer, Ms. Kord, went
12    back through the transcript to address that, and was
13    more specific in her second addendum as to certain
14    testimony.  Is there any other factual objection we
15    need to take up as Probation addressed them?  How
16    would you propose or want to proceed on any factual
17    objections, if there is any remaining, Mr. Benjamin?
18              MR. BENJAMIN:  I think I had a specific
19    objection at the beginning of -- I don't have the
20    document, I only have the draft version -- but Joe
21    Gallegos' objections, Your Honor, where I cited -- or
22    Mitchell v. United States, 1999.  It was Document
23    26-14.
24              And so I think the Court has before it, I
25    would suggest, all the information it needs to make
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9495

1    the determinations.  So that may be just my

2    interpretation of different trial testimony is

3    different than everything else.

4            My concern usually post trial, and there

5    were specific objections that took this into account,

6    some of the material reads like it's coming directly

7    from the discovery that's provided, usually --

8            THE COURT:  I think Ms. Kord originally did

9    rely on discovery, but then in putting together, at

10   my urging, the second addendum, she went back and

11   looked at the actual trial testimony.  So that's the

12   reason I'm wondering if the second addendum now maybe

13   addresses all the concerns, because she did now go

14   back and look specifically at the trial testimony.

15           MR. BENJAMIN:  And that's where I think I

16   was starting with, saying I think some of this is

17   maybe in the eye of the beholder and the

18   interpretation regarding the facts, Your Honor.  And

19   that is dealt with, as the Court notes, under

20   essentially "additional information" in between that

21   and paragraph 19.  I object to some of that.  So

22   that's --

23           THE COURT:  All right.  Do you have

24   anything on the factual side, Mr. Sindel?  Any

25   objections you want to pursue?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. SINDEL:  No, Your Honor.

 2              THE COURT:  Mr. Castellano, anything you

 3     want to say specifically on the factual objections?

 4              MR. CASTELLANO:  Nothing in addition to

 5     what's been briefed and what Probation has responded

 6     to, Your Honor.

 7              THE COURT:  All right.  Well, I have

 8     reviewed carefully the second addendum, and it looks

 9     to me like we're now tracking the trial testimony.

10     And that's my recollection, and I will find that by a

11     preponderance of the evidence specifically what's in

12     the second addendum.  So I'll overrule any remaining

13     factual objection.  And the second addendum states

14     the Court's findings.

15              Mr. Benjamin, Mr. Sindel, have I now dealt

16     with all the objections that Mr. Gallegos has raised?

17              MR. BENJAMIN:  Yes, Your Honor.

18              THE COURT:  All right.  So let me confirm

19     then, the offense level is 43, and the criminal

20     history category is 4.  The guideline imprisonment

21     term is life as to Counts 1 and 5, which is

22     consistent with the statutory provision of mandatory

23     life imprisonment, and 120 months as to Count 4,

24     pursuant to USSG Section 5G1.2.  Is that correct,

25     Mr. Benjamin -- subject to your objections, but is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9497

```
 1    that now correct?

 2            MR. BENJAMIN:  Yes, Your Honor.

 3            THE COURT:  All right.  Mr. Benjamin,

 4    Mr. Sindel, comments, remarks you wish to make on

 5    behalf of Mr. Gallegos before sentence is imposed?

 6            MR. SINDEL:  Your Honor, there is not much

 7    to be said based upon the guidelines and the statute

 8    in this particular situation and the Court's ruling

 9    in other situations, including Mr. Andrew Gallegos.

10    There aren't many options that are available, at

11    least legitimately, for us to argue.

12            We would just hope that the Court would not

13    decide to stack these punishments and run them

14    consecutive as opposed to concurrent.

15            There may be an opportunity at some time in

16    the future, depending on a number of political wins

17    and whims of those who impose these particular

18    sentences and make these decisions about what should

19    be the punishment range on a particular offense

20    conduct.  So we would ask that the Court consider

21    rather than a consecutive sentence a concurrent

22    sentence so that Mr. Gallegos may at least have some

23    hope as he sits in prison for what clearly is going

24    to be a very long time, that he may spend some short,

25    brief period of his life back with his family, his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9498

```
 1   grandchildren; maybe by then his great grandchildren.
 2              It's always hard in these circumstances.
 3   I've argued these similar cases, where it's just a
 4   brick wall that you're looking at.  And your head
 5   starts to bleed afterwards from trying to convince
 6   someone that the wall shouldn't or doesn't exist.
 7   But it does, and we acknowledge that.
 8              THE COURT:  All right.  Thank you, Mr.
 9   Sindel.
10              Do you have anything, Mr. Benjamin?
11              MR. BENJAMIN:  Your Honor, just we would
12   adopt -- Daniel Sanchez filed a motion acknowledging
13   the statutory sentence here, but essentially
14   objecting to that idea, and we would request the
15   Court and join that motion.
16              THE COURT:  All right.  Thank you, Mr.
17   Benjamin and Mr. Sindel.
18              Mr. Gallegos, you have an opportunity to
19   speak on your own behalf before sentence is imposed.
20   What would you like to say to the Court and what
21   would you like the Court to consider before it
22   imposes sentence this morning?
23              THE DEFENDANT:  First of all, I'd like to
24   maintain my innocence in this case.
25              I'd like to point out a couple of facts
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9499

```
 1    that I failed to show to my lawyers and the Court;

 2    the fact there was a good time sheet that shows I was

 3    working the kitchen that day.  And the Government

 4    stated that it doesn't show the times.  Well, the

 5    good time sheet didn't have to show times, because

 6    there was only one shift working the kitchen that

 7    day.  And they further stated that the outcome didn't

 8    show that I was -- that I was put on outcome.

 9    However, the good time sheet shows I was docked one

10    hour for showing up late.  And that's the one hour

11    after count.

12            So I'm just saying that due to the fact

13    that evidence is destroyed on Count 1 -- I understand

14    it was a long time ago -- and I think it hurt me.  It

15    was evidence that could have proved me innocent.

16            And on Count 2, all the evidence in the

17    State was destroyed also.  I think that was a big

18    factor in the conviction on my case.

19            THE COURT:  All right.

20            MR. BENJAMIN:  Just for clarification -- I

21    didn't mean to interrupt you, I apologize.  What he's

22    referring to is Count 4, Your Honor, Adrian Burns.

23    Not Count 2.

24            THE DEFENDANT:  Yeah, Count 1 was the 2001

25    and the evidence was destroyed.  And then again in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9500

```
 1    the state case there was evidence that could have
 2    helped me, but all the evidence was destroyed from
 3    the State also.  And I just think it's -- I mean, it
 4    was a big factor in the conviction.  And I believe I
 5    proved my innocence on Counts 4 and 5.  But it didn't
 6    show, I guess.
 7            THE COURT:  All right.  Thank you, Mr.
 8    Gallegos.
 9            THE DEFENDANT:  And I will say, even though
10    I maintain my innocence, I do like to say sorry to
11    the families for their loss.  And that's about it.
12            THE COURT:  Thank you, Mr. Gallegos.
13    Anything else?
14            THE DEFENDANT:  That's it.
15            THE COURT:  All right.  Mr. Castellano, any
16    remarks on behalf of the United States?
17            MR. CASTELLANO:  Your Honor, if I may check
18    with the next of kin.  I know at the beginning they
19    weren't sure they wanted to address the Court until
20    they heard from the defense.
21            THE COURT:  All right.  Take your time.  Go
22    ahead and see if they want to speak.
23            MS. MAXINE BURNS:  Good morning, my name is
24    Maxine Burns.  I am the mother of Adrian Burns.
25            THE COURT:  Ms. Burns, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9501

```
 1                   MS. MAXINE BURNS:  I waited and prayed for
 2       this day to arrive for six long years so my family
 3       and I could have some kind of closure.
 4                   You took the life of my firstborn, my only
 5       son.  This probably don't matter to you, due to the
 6       fact that you're used to this kind of lifestyle,
 7       taking lives for senseless reasons.  But I refuse to
 8       let you take our lives.
 9                   Adrian, my son, will always continue to be
10       a huge part of our lives.  Look behind you over
11       there.  Those are his children that you left without
12       a father.  I have to forgive you.  I have to find it
13       in my heart to forgive you, not for the murder of my
14       son but so that I can continue raising and being
15       there for them.
16                   Thank you.
17                   THE COURT:  Thank you, Ms. Burns.
18                   Mr. Castellano, anything further?
19                   MS. SHEENA BURNS:  My name is Sheena Burns.
20                   THE COURT:  Ms. Burns.
21                   MS. SHEENA BURNS:  I, on the other hand, am
22       not so forgiving.  I could care less about your life.
23       You took something from us that we can never get
24       back.  The physical form, we could never replace
25       that.  But his spirit will always live on.  We will
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9502

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 9503

 1   celebrate his life every year as we continue to, and
 2   as we have done for the last seven years.  I hope
 3   that you rot in here.  I hope that you get forgotten.
 4   I hope your family doesn't visit you.  It brings me
 5   little joy to know that you'll be spending life.  My
 6   joy will come when you are deceased.  When you no
 7   longer have life in you is when I will celebrate your
 8   death, like I celebrate my brother every year.  I
 9   think you are scum.  I think you belong behind these
10   bars.  I feel your mom should have loved you better.
11   She should have did a better job with your siblings,
12   if you would have been loved a little more, told you
13   were loved, hugged, you wouldn't be such a monster
14   that you are today.  I felt like if you would have
15   been caged up, as you are now, earlier, my brother
16   would still be here.  I want you to know that you
17   will never in life get my forgiveness.  You are not
18   deserving of that.  And I have come to peace with
19   knowing that I will never in life forgive you.
20           You can't even look at the victim.  We are
21   victims as well.  You want to preserve your
22   innocence.  You are not innocent at all in our eyes.
23   And that is all I have to say because that is all he
24   is worth to me.
25           THE COURT:  Thank you, Ms. Burns.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9503

1        Anything else, Mr. Castellano?

2              MR. CASTELLANO:  I would note that the next

3    of kin for Mr. Castillo is here as well, but she

4    addressed the Court previously, so she has nothing to

5    add.  And with that, Your Honor, we're ready for the

6    Court to impose sentence.

7              THE COURT:  Thank you, Mr. Castellano.

8              All right.  I will now state the sentence.

9    But the attorneys will have a final chance to make

10   legal objections before sentence is imposed.

11             The Court adopts the presentence report

12   factual findings.  The Court having overruled the

13   remaining objections, and relying primarily on the

14   factual statements in the second addendum, the Court

15   adopts those as its own.  Much of the factual

16   findings are undisputed in the PSR.  But the

17   remaining ones, the Court will overrule the

18   objection.

19             The Court has, as I think this record will

20   reflect -- and I will be issuing a short opinion on

21   the objections to the guideline calculations.  The

22   Court has, as I think this record will reflect,

23   carefully considered the sentencing guideline

24   applications set forth in the presentence report.

25   The Court adopts those as its own as well, having

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9504

```
 1   overruled the objections.

 2          The Court's also considered the factors set

 3   forth in 18 USC Section 3553(a)(1) through (7), and I

 4   will discuss those in more detail in a moment.

 5          As I indicated a moment ago, the offense

 6   level is 43, and the criminal history category is 4.

 7   The guideline imprisonment term is life as to Counts

 8   1 and 5, which is consistent with the statutory

 9   provision of mandatory life imprisonment, and 120

10   months as to Count 4, pursuant to USSG Section 5G1.2.

11          The Court notes the defendant is a member

12   of the Syndicato de Nuevo Mexico, SNM Prison Gang,

13   many members of which conspired to and/or did commit

14   various crimes that were indicted under the

15   Racketeering Influenced and Corrupt Organizations,

16   RICO Act.

17          As to Count 1, the defendant conspired with

18   other SNM Gang members to, and did murder FC at the

19   direction and under the leadership of the SNM.

20   Specifically, defendant assisted in strangling FC

21   while he was in his prison cell, which had only one

22   exit and entrance.  Therefore, FC was physically

23   restrained and was a vulnerable victim.

24          As to Counts 4 and 5, November 2012, the

25   defendant conspired with others to murder AB, who was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   handcuffed and shot in the head with a .22 caliber

 2   firearm.  The defendant and co-defendant set fire to

 3   the victim in his vehicle in an attempt to impede the

 4   criminal investigation.

 5           The Court has, as this record will reflect,

 6   carefully considered the guidelines, but in arriving

 7   at its sentence the Court has taken into account not

 8   only the guidelines but other sentencing goals.

 9   Specifically, the Court has considered the guideline

10   sentencing range established for the applicable

11   category of offense committed by the applicable

12   category of defendant.  And the Court concludes that

13   the punishment set forth in the guidelines is

14   appropriate for this sort of offense.

15           I then have considered the kinds of

16   sentence and range established by the guidelines.

17   And the Court agrees with the guidelines that -- and

18   probation -- that the life sentence is adequate but

19   also necessary to reflect the seriousness of the

20   offense, promote respect for the law, provide just

21   punishment, afford adequate deterrence both at a

22   specific and general level, protect the public.

23   Because it is a guideline sentence, it avoids

24   unwarranted sentencing disparity among defendants

25   with similar records who have been found guilty of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9506

1   similar conduct.

2          And because this is both a statutory

3   sentence and a guideline sentence, it effectively

4   provides the defendant with some needed education and

5   training and care to assist him, if he ever is

6   released, to deal with some of the problems he's had

7   in life.

8          In sum, the Court believes that the

9   guideline sentence, which is also a statutory

10  sentence, fully and effectively reflects each of the

11  factors embodied in 18 USC Section 3553(a).  It

12  proposes a reasonable sentence.  And by that I mean a

13  sentence that is sufficient without being greater

14  than is necessary to comply with the purposes of

15  punishment set forth in the Sentencing Reform Act.

16         Therefore, as to each of Counts 1 and 5 of

17  the second superseding indictment 2: 15-CR-4268 002

18  JB, the Defendant Joe Lawrence Gallegos, is committed

19  to the custody of the Bureau of Prisons for a term of

20  life.

21         As to Count 4, the defendant is committed

22  to the custody of the Bureau of Prisons for a term of

23  120 months.  Said terms shall run concurrently, for a

24  total term of life.

25         As to Counts 1 and 5, the defendant is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   placed on supervised release for a term of five

2   years.  As to Count 4, the defendant is placed on

3   supervised release for a term of three years.  Said

4   terms will run concurrently for a total term of five

5   years.

6          The defendant must comply with the

7   mandatory and standard conditions of supervision.

8          The following special conditions will also

9   be imposed:

10          First, you must submit to a search of your

11   person, property, residence, vehicle, papers,

12   computers, as defined in 18 USC Section 1030(e)(1),

13   other electronic communications or data storage

14   device or media or office under your control.  The

15   probation officer may conduct a search into these

16   conditions only when reasonable suspicion exists in a

17   reasonable manner at a reasonable time for the

18   purpose of detecting evidence of RICO conspiracy,

19   evidence of gang activity, firearms, ammunition,

20   other dangerous weapons, illegal narcotics, alcohol,

21   and any other contraband.  You must inform any

22   residents or occupants that the premises may be

23   subject to a search.

24          This condition is imposed based on the

25   nature and circumstances of the federal offenses for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9508

```
 1    which the defendant is being sentenced today which
 2    involve a RICO conspiracy, in which the defendant
 3    conspired to and did murder FC and AB.  This
 4    condition is also imposed because of the history and
 5    characteristics of the defendant who has a history of
 6    violent and drug-related crimes.
 7             Further, as a convicted felon, the
 8    defendant is prohibited from possessing firearms or
 9    ammunition.  This condition is also meant to deter
10    the defendant from further crimes involving violence
11    and deadly weapons, and to protect the public,
12    including the supervising probation officer, from
13    such crimes of the defendant.
14             I'm now going to state six conditions and
15    then I'll give the justification for these six all at
16    one time.
17             First, you must participate in an
18    outpatient substance abuse treatment program and
19    follow the rules and regulations of that program.
20    The probation officer will supervise your
21    participation in the program, provider, location,
22    modality, duration, intensity, et cetera.  You may be
23    required to pay all or a portion of the cost of the
24    program.
25             Second, you shall waive your right of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  confidentiality and allow the treatment provider to

2  release treatment records to the probation officer,

3  and sign all necessary releases to enable the

4  probation office to monitor your progress.  The

5  probation officer may disclose the presentence

6  report, any previous substance abuse evaluations,

7  and/or other pertinent treatment records to the

8  treatment provider.

9          Third, you must submit to substance abuse

10  testing to determine if you have used a prohibited

11  substance.  Testing may include urine testing, the

12  wearing of a sweat patch, a remote alcohol testing

13  system, alcohol monitoring technology program, and/or

14  any form of prohibited substance screening or

15  testing.  You must not attempt to obstruct or tamper

16  with the testing methods.  You may be required to pay

17  all or a portion of the cost of the testing.

18          Fourth, you must not use or possess

19  alcohol.

20          Fifth, you must not knowingly purchase,

21  possess, distribute, administer, or otherwise use any

22  psychoactive substances; e.g, synthetic cannabinoids,

23  synthetic cathinones, et cetera, that impair your

24  physical or mental functioning, whether or not

25  intended for human consumption.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           And six, you must not possess, sell, offer

2    for sale, transport, cause to be transported, cause

3    to affect interstate commerce, import or export any

4    drug paraphernalia, as defined in 21 USC Section

5    863(d).

6           These six conditions are imposed based on

7    the history and characteristics of the defendant who

8    disclosed a long history of narcotic and alcohol use,

9    last using heroin in 2015.  Furthermore, these six

10   conditions are meant as a treatment measure to assist

11   the defendant in remaining drug free.

12          Next, you must reside in a residential

13   reentry center for a term of six months.  You must

14   follow the rules and regulations of the center.  This

15   condition is imposed based on the history and

16   characteristics of the defendant who would benefit

17   from a structured environment to help the transition

18   of returning to society after a long term of

19   imprisonment.

20          Further, this condition will assist the

21   defendant in establishing employment and obtaining

22   stable residence after his release from custody.

23          Finally, this condition is imposed in lieu

24   of a fine.  I'll talk about that in a moment.

25          I'm going to impose two more conditions and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9511

1    then I'll give justifications for these two

2    conditions in a moment.

3         First, you must not communicate or

4    otherwise interact with co-defendants,

5    co-conspirators.

6         And then, second, you must not communicate

7    or otherwise interact with any known gang member.

8         These two conditions are imposed based on

9    the nature and circumstances of the federal offenses

10   for which you're being sentenced today, which

11   involved a RICO conspiracy among SNM members,

12   including the defendant, to commit murders and

13   assaults.

14        In this case the defendant, along with his

15   co-defendants, murdered the victims because one of

16   them reportedly cooperated with law enforcement in

17   disrespect of the SNM Gang.

18        Then finally, you must not communicate or

19   otherwise interact with the victim or victims, either

20   directly or through someone else.  This condition is

21   imposed because of the nature and circumstances of

22   the federal offenses for which you're being sentenced

23   today, in which the defendant murdered two victims.

24   This condition is specifically ordered to protect the

25   victims' families.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9512

1        The Court finds the Mandatory Restitution

2    Act of 1996 is applicable in this case.  However, no

3    claim for restitution has been made by one of the

4    victims in the case.  And the other victim the Court

5    has sustained the defendant's objection to that

6    restitution.  Therefore, none will be ordered.

7        Based on the defendant's lack of financial

8    resources, the Court will not impose a fine or a

9    portion of a fine.  The Court has considered

10   alternatives such as residential reentry center, GPS

11   monitoring, community service.  But the Court

12   concludes that in accordance with USSG Section 5E1.2,

13   the Court has imposed the special condition that the

14   defendant reside at a residential reentry center.

15   The Court concludes that the total combined sanction

16   without a fine or alternative sanction other than

17   that the defendant reside at a residential reentry

18   center is sufficiently punitive.

19       The defendant shall pay a special

20   assessment of $100 as to each count of conviction for

21   a total of $300, which is due immediately.

22       Let me ask both counsel if they know of any

23   reason why the sentence should not be imposed as the

24   Court has stated it, other than what may have already

25   been argued to the Court?  Mr. Castellano?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9513

```
 1              MR. CASTELLANO:  No, Your Honor.

 2              THE COURT:  Mr. Sindel?

 3              MR. SINDEL:  No, Your Honor.

 4              THE COURT:  Mr. Benjamin?

 5              MR. BENJAMIN:  Your Honor, just one

 6    clarification.  The Court, as one of the special

 7    conditions -- I apologize, I didn't get it, but

 8    imposed no contact with any other co-defendants in

 9    this case.  I would ask that the Court modify that or

10    consider modifying that to exempt Andrew Gallegos.

11              THE COURT:  Any objection to that,

12    Mr. Castellano?

13              MR. CASTELLANO:  No, Your Honor.

14              THE COURT:  Any objection to that,

15    Ms. Kord?

16              PROBATION OFFICER:  No, Your Honor.

17              THE COURT:  All right.  So we will exempt

18    Mr. Andrew Gallegos, and you can have contact with

19    him.

20              Anything further, Mr. Benjamin?

21              MR. BENJAMIN:  No, Your Honor.

22              THE COURT:  It is ordered that the sentence

23    is imposed as the Court has stated it.

24              Mr. Gallegos, you can appeal your

25    conviction if you believe that it was in any way
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9514

```
 1    unlawful or involuntary, or if there is some
 2    fundamental defect in the proceedings that was not in
 3    some way waived.
 4            You also have the statutory right to appeal
 5    your sentence under certain circumstances,
 6    particularly if you think the sentence is contrary to
 7    law.  You have the right to apply for leave to appeal
 8    in forma pauperis.  What that means is the Clerk of
 9    the Court will prepare and file a notice of appeal
10    upon your request, if you're unable to pay the cost
11    of an appeal.  With very few exceptions, any notice
12    of appeal must be filed within 14 dates of the entry
13    of the judgment.
14            Mr. Gallegos, do you understand your rights
15    to appeal?
16            THE DEFENDANT:  Not really.  I've got 14
17    days to file?
18            THE COURT:  After we enter the judgment.
19    So Ms. Bevel will prepare a form of judgment and
20    conviction.  And when that's entered, you have 14
21    days to appeal.
22            THE DEFENDANT:  My attorneys file that?
23            THE COURT:  Yes, your attorneys here at the
24    trial level will file it.  They may stay on as
25    appellate lawyers; you may get new ones.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9515

1   know kind of what you're thinking and what they're

2   thinking and what the Tenth Circuit is thinking, but

3   these gentlemen will be the ones that will file it

4   here at the district court level.

5           MR. SINDEL:  Will Mr. Gallegos be required

6   to file a motion to proceed in forma pauperis along

7   with the financial affidavit?

8           THE COURT:  At the Tenth Circuit?

9           MR. SINDEL:  Well, I mean, in terms of

10  filing his notice of appeal at this point in time.

11          THE COURT:  You know, I've not seen that.

12  Generally -- I've looked personally at Mr. Gallegos'

13  financial eligibility.  He's eligible for counsel.

14  So he's fine.  I don't think he has to file anything

15  further at my level.

16          MR. SINDEL:  Okay.

17          THE COURT:  I don't know what happens up

18  there, but he's all right at my level.

19          MR. SINDEL:  All right.

20          THE COURT:  I assume I'm correct in saying

21  that if he wants to appeal one of you gentlemen will

22  prepare a notice for him.

23          MR. SINDEL:  That is correct, Your Honor.

24          MR. BENJAMIN:  Your Honor, we will file the

25  appeal.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9516

```
 1              THE COURT:  Anything else, Mr. Gallegos?
 2   If you've got other questions, go ahead and ask me.
 3              THE DEFENDANT:  I was wondering about
 4   appeal material --
 5              THE COURT:  Yes.
 6              THE DEFENDANT:  -- if discovery can be --
 7              THE COURT:  Yeah.  What is happening is the
 8   Government has been agreeing to orders that you can
 9   keep all your tablets and materials and everything
10   like that.  We're not seizing them or anything like
11   that.
12              THE DEFENDANT:  Yeah.
13              THE COURT:  The marshals -- I've been
14   talking to the ones in Albuquerque -- they've been
15   agreeing to the Court's order.  So I've been checking
16   with them.  So I don't anticipate any problems.  So
17   if you run into problems, contact Mr. Sindel and
18   Mr. Benjamin.  But we're entering orders in some of
19   the cases.  Some of them we're just doing orally,
20   like here.  But I think you're okay on keeping all
21   your materials.
22              THE DEFENDANT:  Okay.
23              THE COURT:  Anything else, Mr. Gallegos?
24   Do you understand your rights, then, to appeal?
25              THE DEFENDANT:  Yes, sir.  Thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9517

```
 1              THE COURT:  All right.  Counsel, you have
 2    copies of the presentence report, the addendum, the
 3    second addendum.  Anything further on this matter,
 4    Mr. Castellano?
 5              MR. CASTELLANO:  No, Your Honor.
 6              THE COURT:  Mr. Sindel?
 7              MR. SINDEL:  No, Your Honor.
 8              THE COURT:  Mr. Benjamin?
 9              MR. BENJAMIN:  No, Your Honor.
10              THE COURT:  All right.  Counsel, I
11    appreciate your assistance on this matter.
12              And Mr. Gallegos, you know, if you get me
13    reversed, we may see each other again.  But if not, I
14    may not see you again.  Good luck to you, Mr.
15    Gallegos.
16              THE DEFENDANT:  Thank you.
17              THE COURT:  I hope you're able to use the
18    time profitably.
19              THE DEFENDANT:  I will.
20              THE COURT:  To the victims, to the
21    families, you may be a long way from forgiving, and I
22    understand that.  But I hope today's proceedings at
23    least bring some closure to this for your families as
24    well.  So good luck to you as well.
25              All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Appellate Case: 20-2058   Document: 010110415875   Date Filed: 09/29/2020   Page: 63

```
 1                THE DEFENDANT:  Your Honor, I was wondering
 2      one more thing.
 3                THE COURT:  Yes.
 4                THE DEFENDANT:  On the victims' families, I
 5      was wondering if they're allowed to have material of
 6      the case, that they could know the basics of what
 7      happened in the case, and that way they could see --
 8      I don't know how to say this -- so they could see
 9      what happened, see what happened in the trial, and
10      see to the truth for themselves, for their own --
11                THE COURT:  Well, maybe Mr. Castellano can
12      address this more intelligently than I am, but I
13      think the Government has been providing them with
14      some material throughout the trial.  You know, some
15      of this stuff is kind of restricted.  As you know,
16      that's the reason you had a tablet in there, rather
17      than just free papers.
18                THE DEFENDANT:  Yeah.
19                THE COURT:  So some of it is restricted,
20      some of it was subject to protective order.  The
21      family may not have gotten everything that is subject
22      to the protective order.  But the Government usually
23      has a victim representative that takes care of the
24      family and keeps them involved.  I couldn't tell you
25      exactly how much they've received.  But, you know,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9519

```
 1    maybe Mr. Sindel and Mr. Benjamin could talk to the
 2    Government and give you a little bit of a level as to
 3    how much discovery they've received.  They don't have
 4    a tablet or anything like that.
 5              THE DEFENDANT:  Just more or less the
 6    conclusions.  That way they know what was said in the
 7    trial.
 8              THE COURT:  Well, they were here for a lot
 9    of it.  I recognize a lot of the faces back there
10    that they sat through the trial.  I don't know if
11    they were here for every bit of it.  But they were
12    here for large chunks of it.
13              The transcripts of the trial, I think, are
14    actually filed.  Ms. Bean can correct me, but I think
15    we're pretty much caught up on the transcripts,
16    because I've been using them for the new trial
17    motion, opinion, and that sort of thing.  So they're
18    available to the public.  So the trial itself was
19    public and all that information is available.
20              THE DEFENDANT:  Okay.  Thank you.
21              THE COURT:  Anything else, Mr. Gallegos?
22              THE DEFENDANT:  No, that's it.
23              THE COURT:  All right.  Good luck to you,
24    Mr. Gallegos.
25              THE DEFENDANT:  Thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9520

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 65521

```
1              THE COURT:  Thank you, Counsel.

2              (The Court stood in recess.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on July 7, 2020.

15

16

17

18                    _____
                      Jennifer Bean, FAPR, RMR-RDR-CCR
19                    Certified Realtime Reporter
                      United States Court Reporter
20                    NM CCR #94
                      333 Lomas, Northwest
21                    Albuquerque, New Mexico 87102
                      Phone:  (505) 348-2283
22                    Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9522

```
1               IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF NEW MEXICO

3

4   UNITED STATES OF AMERICA,

5        Plaintiff,

6        VS.                         CR. NO. 15-4268-027 JB

7   ANDREW GALLEGOS, a/k/a Smiley,

8        Defendant.

9

10

11       Transcript of Sentence Proceedings before
    The Honorable James O. Browning, United States
12  District Judge, Albuquerque, Bernalillo County,
    New Mexico, commencing on May 10, 2019.
13

14  For the Government:  Mr. Randy Castellano; Ms. Maria
    Armijo
15
    For the Defendant:   Ms. Lisa Torraco
16

17

18

19

20           Jennifer Bean, FAPR, RDR, RMR, CCR
                 United States Court Reporter
21             Certified Realtime Reporter
                  333 Lomas, Northwest
22              Albuquerque, NM  87102
                Phone:  (505) 348-2283
23                Fax:  (505) 843-9492

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  All right.  Good morning

2    everyone.  I appreciate everybody making themselves

3    available to me this morning.

4           The Court will call United States of

5    America versus Andrew Gallegos, Criminal Matter No.

6    15-CR-4268-27 JB.

7           If counsel will enter their appearances for

8    the Government.

9           MR. CASTELLANO:  Good morning, Your Honor.

10   Randy Castellano and Maria Armijo on behalf of the

11   United States.

12          THE COURT:  Mr. Castellano, Ms. Armijo,

13   good morning to you.

14          And for the defendant.

15          MS. TORRACO:  Thank you, Your Honor.  Lisa

16   Torraco on behalf of Mr. Andrew Gallegos, who is

17   present and in custody.  Mr. Donovan Roberts sends

18   his regrets; he was unable to make the hearing.

19          THE COURT:  All right.  Ms. Torraco, good

20   morning to you.  Mr. Gallegos, good morning to you.

21          THE DEFENDANT:  Good morning.

22          THE COURT:  Let's see, Mr. Gallegos, have

23   you reviewed the presentence report, and then there

24   are three addendums in this case:  An addendum, a

25   second addendum, and a third addendum.  I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9524

1   that's all that probation prepared; correct,

2   Ms. Kord?

3            PROBATION OFFICER:  Yes, Your Honor.

4            THE COURT:  All right.  Have you reviewed

5   those four documents, Mr. Gallegos?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And Ms. Torraco, have you

8   reviewed with Mr. Gallegos the presentence report and

9   the three addendums?

10           MS. TORRACO:  Yes, Your Honor.

11           THE COURT:  Now, I know that there are a

12  number of objections and requests related to the

13  memo.  I'll say this to see if -- I'll certainly hear

14  anything the defendant wants to say, but the

15  Government may want to state their position on what

16  I'm about to say.

17           Reviewing the sentencing memorandum, it

18  looked like Mr. Gallegos was requesting a 15-year

19  sentence.  After reviewing everything -- and I did

20  because he pulled in the objections of Joe

21  Gallegos -- spent some time with it.  I don't have

22  any problem with that sentence, if that's what he

23  wants.  I don't have any intention coming into this

24  hearing of sentencing him to life.  So if that helps

25  you, that's fine.  If we need to plow through all the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9525

 1    objections and requests, I'd be glad to do that as

 2    well.  But that may help you, because obviously the

 3    Government may need to state their position on that.

 4    I need to listen to them.  But as far as coming in

 5    today, I didn't have any problem with the defendant's

 6    proposed sentence.

 7           So with that, maybe I ought to hear -- I

 8    don't mean to shortcut anything, but it might -- if

 9    you don't have a problem with that either, then I

10    guess that might help Ms. Torraco and Mr. Gallegos

11    this morning.

12           MR. CASTELLANO:  I think what I have to say

13    may also shorten the arguments, Your Honor.  Looking

14    at the presentence report, the cover page I think

15    accurately reflects that the sentence for conviction

16    for the murder is life imprisonment, or death, which

17    means on page 25, paragraph 98, I have a correction

18    to the PSR.  And when it refers to Count 5, it says

19    "the maximum term of imprisonment is life."  I think

20    it's actually more accurate to say, "the term of

21    imprisonment is life," removing the word maximum.

22           So under the statute, I think the Court

23    really only has one choice, and that is to impose a

24    life sentence for the conviction for the murder

25    itself.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9526

```
 1              THE COURT:  So on Count 5, that is -- that
 2   should say on the cover page "life imprisonment or
 3   death"; I don't have a choice?
 4              MR. CASTELLANO:  Correct, Your Honor.
 5              THE COURT:  Okay.
 6              MR. CASTELLANO:  And Section 1959(a)(1)
 7   says the same thing.  So other statutes will say any
 8   term of years up to life, or a maximum term of life.
 9   But 1959(a)(1) states that for murder by death or
10   life imprisonment.
11              THE COURT:  All right.  So the cover page
12   is correct, it has to be life imprisonment or death?
13              MR. CASTELLANO:  Yes, Your Honor.
14              THE COURT:  And where then are the
15   corrections that need to be made in the PSR?
16              MR. CASTELLANO:  That would be page 25,
17   paragraph 98.
18              THE COURT:  Page 25, paragraph 98.  All
19   right.  I guess that's where I got thrown off here.
20   So it should say what?
21              MR. CASTELLANO:  The word "maximum" should
22   be removed after Count 5, so it should read, "the
23   term of imprisonment is life."
24              THE COURT:  All right.  I'm afraid that's
25   where I got off then.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            Do you agree with that, Ms. Kord, that

 2    "maximum" should come out of the presentence report?

 3            PROBATION OFFICER:  Yes, Your Honor, based

 4    on the statute, we do agree with that.

 5            THE COURT:  All right.  How about you?

 6            MS. TORRACO:  We disagree, Your Honor.  And

 7    if I may, based on Booker, I believe that the Court

 8    always now has discretion to make deviations from

 9    sentencing.  And I believe that --

10            THE COURT:  The problem that I'm seeing

11    here -- and somebody can correct me -- is what

12    follows that is not a guideline range or a sentence,

13    but it's a statute.  So is that the issue, that there

14    is a statutory minimum on this, Mr. Castellano?

15            MR. CASTELLANO:  That's correct, Your

16    Honor.

17            THE COURT:  And is that your understanding,

18    Ms. Kord?

19            PROBATION OFFICER:  Yes, Your Honor.

20            THE COURT:  All right.  So that's the

21    problem.  Under the guidelines I can deviate and vary

22    from it, but I don't have a lot of options with --

23    when it's a statute.

24            MS. TORRACO:  May I address the Court on

25    that point, Your Honor?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9528

1           THE COURT:  You may.

2           MS. TORRACO:  Thank you, Your Honor.

3           Because I am not nearly learned counsel,

4    I'm going to have to ask the Court for some guidance

5    on this.  The imprisonment of a maximum of a life

6    sentence, is that defined in the statutes?  And if

7    so, is there a possibility of parole, where we can

8    argue to the Court that under the circumstances of

9    this case Mr. Gallegos is at least entitled to --

10           THE COURT:  Well, I saw your references to

11   parole.  The problem is the federal system doesn't

12   have any parole.  It has supervised release.  But the

13   problem is that if the sentence is for life, I think

14   that the -- by statute -- that it's not -- supervised

15   release will -- I guess it can be imposed for the

16   sentences that -- I guess it can and should be

17   sentenced -- I'll ask Probation -- it can and should

18   be imposed for, like, Count 4.  But is there any

19   reason to impose supervised release here?

20           PROBATION OFFICER:  Yes, Your Honor.

21   Supervised release is still required in these cases.

22   However, there is the understanding that in all

23   likelihood he will not get out, but it needs to be

24   imposed in case through appellate processes he is

25   released, we do need to impose supervised release in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    this case.

 2            THE COURT:  Because of Count 4 being 120

 3    months?

 4            PROBATION OFFICER:  Count 4 and Count 5,

 5    Your Honor.  Even though it's a life imprisonment

 6    statutorily, supervised release is still a

 7    requirement.

 8            THE COURT:  Is still a requirement?

 9            PROBATION OFFICER:  Yes.  And for Count 5,

10    it would be five years.

11            THE COURT:  And that is a mandatory minimum

12    as well?

13            PROBATION OFFICER:  Yes.

14            THE COURT:  All right.  Anything else on

15    that issue?

16            All right.  So I'll take out the word

17    "maximum" term of imprisonment.

18            All right.  The probation office has issued

19    three addendum dealing with the objections that have

20    been filed.  And I think that they picked up the

21    ones -- I did go back and get all the material for

22    Joe Gallegos to see if -- and so they've issued an

23    addendum that relates to his objections as well,

24    which Andrew Gallegos has incorporated into his

25    objections.  Are there any of those objections that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9530

```
 1   you still wish to pursue, or do you think Probation
 2   has now addressed all of them to your satisfaction?
 3             MS. TORRACO:  They have been preserved and
 4   we need no oral argument on that.  Thank you.
 5             THE COURT:  All right.  So with those,
 6   then, the objections will be overruled.
 7             Were there any objections that concerned
 8   the Government that I needed to address?
 9             MR. CASTELLANO:  No, Your Honor.
10             THE COURT:  All right.  I guess one
11   objection that I had some concern about was the
12   restitution issue.  And let me just state my views on
13   that, and we'll see what the Government has to say.
14   I think all of them are fine, with the exception of
15   the restitution that Andrew Gallegos owes for AS, is
16   the way we've been referring to this victim.
17             What the PSR provides is that the
18   provisions of the Mandatory Victim Restitution Act of
19   1996 apply to these Title 8 offenses, and states that
20   AS is AB's girlfriend, submitted a request for
21   restitution.  AS requests $21,000 for her 2012
22   Mitsubishi Galant, which had been burned along with
23   AB; $7,200 for lost income or wages calculated from
24   $15 per hour at 40 hours per week; and $280 for
25   transportation, for a total of $28,480.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Mr. Gallegos, Andrew, states that he does not believe
2    he owes restitution, as he did not set the vehicle on
3    fire, and there was no trial evidence he incinerated
4    the Mitsubishi.
5              In the addendum the probation office
6    maintains that he was -- Mr. Andrew Gallegos was
7    found guilty of violent crimes in aid of
8    racketeering, and therefore, the Mandatory
9    Restitution Act applies.  And the United States
10   agrees with the USPO's position, and notes that when
11   speaking to Billy Cordova about AB's murder, Andrew
12   Gallegos admitted that they shot him, bound him, and
13   burned the body.  The United States' response to the
14   PSR quotes the transcript of the excerpt of the
15   testimony of Billy Cordova, at pages 58, 5 through 6.
16             The Mandatory Victim Restitution Act
17   requires the Court to order a defendant convicted of
18   certain offenses to make restitution to the victim of
19   the offense, or if the victim is deceased to the
20   victim's estate.  The MVRA defines the term "victim"
21   as a person directly or proximally harmed as a result
22   of the commission of an offense for which restitution
23   may be ordered.  The MVRA provides that it applies in
24   all sentencing proceedings for convictions of any
25   offense that is a crime of violence, as defined in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9532

1   Section 16, in which an identifiable victim or

2   victims has suffered a physical injury or pecuniary

3   loss.  Then Section 16 defines crimes of violence.

4        The Tenth Circuit in United States v.

5   Serawop, 504 F. 3d. 1112, at page 1115 says the MVRA

6   does not permit a court to consider a defendant's

7   economic circumstances when it imposes restitution.

8   And then the MVRA outlines four categories of losses

9   which the defendant must cover via restitution,

10  damage to, or loss of destruction of property, bodily

11  injury, including the cost of medical care,

12  psychiatric or psychological care, physical and

13  occupational rehabilitation and the victim's lost

14  income.  Three, if the bodily injury results in

15  death, the cost of funeral and related services, and

16  then the victim's expenses it incurred during

17  participation in the investigation or prosecution of

18  the offense.  And the Tenth Circuit says, of course,

19  the restitution is not criminal punishment.

20        The MVRA applies in this case, so I agree

21  with Probation on that score.  But the question

22  remaining is whether AS, the girlfriend of the murder

23  victim, is properly considered, quote, "a victim of

24  the offense," such that she may receive restitution

25  under the MVRA for the destruction of her car, loss

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9533

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 12

 1   of income or wages, and transportation costs.  I'm

 2   just not seeing anything that shows that AS is

 3   properly considered a victim of AB's murder, such

 4   that an order of restitution is appropriate.

 5          In United States v. Kieffer, the Tenth

 6   Circuit said, "The Government makes no serious

 7   attempt to establish that it's met its burden on any

 8   of the individuals the court deem entitled to

 9   restitution were victims of defendant's criminal

10   conduct within the meaning of the MVRA.  Accordingly,

11   the district court's order of restitution fails for

12   lack of proof."

13          The offense here is AB's murder.  AB's body

14   was found severely burned on the ground about six

15   feet from the trunk of the burned 2012 Mitsubishi

16   Galant, registered to AS.  The autopsy revealed that

17   the gunshot to AB's head caused his death.  According

18   to Billy Cordova's testimony Andrew Gallegos said

19   that he and his brother shot AB, bound him and burned

20   him.  The burning of the car, thus, is separate

21   conduct from the act of murdering AB.  So AS's loss

22   of her car is not the direct and proximate result of

23   the commission of the murder.

24          So I'm inclined to think -- I'll certainly

25   listen to what the Government wants to say -- that AS

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

DNM 9534

1   is not properly considered a victim of AB's murder

2   and not award her restitution for her destroyed car

3   and for the transportation.  I then have another

4   problem with -- I'm not sure I can determine with

5   accuracy at this time -- what the claim for

6   transportation costs arises from is AS victim impact

7   statement.

8            And by the way, they were not attached.  I

9   don't think you got copies of these, did you?  They

10  were only attached to Joe Gallegos' PSR, which you

11  probably haven't seen.  So I'm not sure that the

12  defendant has yet seen AS's victim impact statement.

13  But it only provides that she is seeking restitution

14  for train and bus.  And I assume these costs were due

15  to AS having to use alternate transportation after

16  the loss of the car, which is why it would seem to

17  me, if I can't award for the car, I probably can't

18  award for the alternate restitution.

19            I looked at AS's victim impact statements

20  that her claim for lost income or wages stem from her

21  inability to go to work for a few months after her

22  boyfriend's murder, ostensibly because of her guilt

23  and grief over AB's murder.  AS's grief over her

24  boyfriend's death is arguably the direct and

25  proximate result of the commission of AB's murder.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN
& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9535

1   But the MVRA provides only two avenues for an order

2   of restitution for loss of income.  The first is in

3   the case of an offense resulting in bodily injury to

4   a victim, which the court shall order that the

5   defendant pay an amount equal to the cost of

6   necessary medical and related professional services,

7   and devices relating to physical, psychiatric, or

8   psychological care, including nonmedical care and

9   treatment rendered in accordance with a method of

10  healing recognized by the law of the place of

11  treatment; B, pay an amount equal to the cost of

12  necessary physical and occupational therapy and

13  rehabilitation; and then C, reimburse the victim for

14  income lost by such victim as a result of such

15  offense.

16          But this provision appears to be

17  inapplicable to AS, because it applies to a victim

18  who suffered a physical injury as a result of

19  offense.  And AB's murder did not result in bodily

20  injury to AS.

21          And the Eighth Circuit has said:  When an

22  offense causes bodily injury, bodily harm to a

23  victim, restitution must be ordered for medical or

24  psychological treatment, cost of therapy and

25  rehabilitation, and income lost by such victim.  The

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9536

```
1    MVRA also proves that in any case the court shall

2    order the defendant to reimburse the victim for lost

3    income and the necessary child care, transportation,

4    and other expenses incurred during participation of

5    investigation and prosecution of the offense, or

6    attendance at proceedings related to the offense.

7           Again, this provision doesn't seem

8    applicable to AS, as her lost wages or income is not

9    a result of her participation in the investigation or

10   prosecution of the offense or attendance at

11   proceedings related to the offense.

12          So I'll certainly listen to what the

13   Government wants to say, but I'm inclined not to

14   order restitution for AS's lost wages or income.  Of

15   course, if the Government wants to provide facts that

16   I can determine amounts, such as the cost of

17   necessary funeral or related services, amounts that

18   are appropriate under the MVRA, I can order that.

19          Now, Andrew Gallegos adopted Joe Gallegos'

20   objections saying that his conduct isn't obstructive,

21   and objected to that enhancement.  I realize this

22   wouldn't affect the guideline range, but the conduct

23   must be committed when an investigation is already

24   underway or with knowledge that an investigation is

25   probably underway.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9537

1           Mr. Gallegos asserts the burning of the

2    body in the car cannot be the basis for a Section

3    3C1.1 adjustment.  The U.S. Probation Office

4    maintains that the Gallegos brothers obstructed the

5    administration of justice with respect to the

6    investigation because after murdering AB, in an

7    effort to impede the criminal investigation, they

8    placed AB's body near this vehicle and set both on

9    fire.

10          Joe Gallegos relies on United States v.

11   Baggett for the proposition that obstructive conduct

12   must occur during the investigation.  But Baggett

13   applied a prior version of Section 3C1.1, which did

14   require that.  The current version of Section 3C1.1,

15   which has been in place since 2006, states only that

16   obstructive conduct must be with respect to the

17   investigation, prosecution, or sentencing of the

18   instant offense of conviction.

19          Further, the guideline manual commentary

20   provides obstructive conduct that occurred prior to

21   the start of the investigation of the instant

22   offense.  A conviction must be covered by this

23   guideline if the conduct was purposely calculated and

24   likely to thwart the investigation.  The act of

25   burning the body and the car was a willful impediment

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9538

1    to the investigation of AB's murder, and squarely

2    falls, I think, within the example conduct, which the

3    guidelines' commentary provides:  Destroying or

4    concealing evidence that is material to an official

5    investigation or judicial proceeding, which is

6    evidence that it believed would tend to influence or

7    affect the issue under determination.  And

8    Mr. Cordova testified that Andrew Gallegos told him

9    that law enforcement found AB burned in the bosque

10   and, quote, "Didn't have no evidence."

11         So I'm going to overrule that objection,

12   and I'm going to apply the Section 3C1.1 two-level

13   adjustment for obstruction.  But I'm inclined not to

14   award restitution.

15         Mr. Castellano, any thoughts -- well, I

16   assume I've carried the water for you.  Do you have

17   anything else on restitution?

18         MS. TORRACO:  No.

19         THE COURT:  How about you, Mr. Castellano?

20         MR. CASTELLANO:  Your Honor, I think I want

21   to focus on the Mitsubishi Galant, because it took

22   two vehicles to get Mr. Burns to that area.  And as

23   part of the obstruction enhancement, which the Court

24   found applies, that vehicle was burned as part of

25   that offense conduct.  And of course, as the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9539

```
1   notes, as a result of the burning, officials would
2   not -- they were not able to obtain DNA,
3   fingerprints, or other forensic evidence as a result
4   of misuse of that vehicle.  So I think that the
5   vehicle is sufficiently close and related to the
6   crime that the Galant would fall under the
7   restitution.
8            THE COURT:  But your theory at trial was
9   that he was killed before that, right?
10           MR. CASTELLANO:  I think that's probably
11  right.
12           THE COURT:  You thought the gun killed him.
13           MR. CASTELLANO:  We think the gun killed
14  him.  But of course, the other issue was that there
15  was a plastic bag that appeared to have been over his
16  head and face at some point.  So I think,
17  unfortunately, it was probably a gunshot that did
18  kill him, but I think there were other factors at
19  play there.  Then, of course the burning of the body
20  afterwards to impede the administration of justice is
21  very close in time to the actual homicide.
22           THE COURT:  All right.  Anything else on
23  that?
24           MR. CASTELLANO:  No, Your Honor.
25           THE COURT:  Anything else, Ms. Torraco?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9540

```
 1              MS. TORRACO:  No, Your Honor.

 2              THE COURT:  Hold on just a second.

 3              (A discussion was held off the record.)

 4              THE COURT:  So the crime was 2012, right?

 5              MR. CASTELLANO:  Let's see.

 6              THE COURT:  I want to make sure I'm

 7    applying the correct --

 8              MR. CASTELLANO:  Yes, it was November 2012,

 9    Your Honor.

10              THE COURT:  So the 2006 obstruction of

11    justice that I'm applying.

12              All right.  Well, I think I'm going to

13    sustain the defendant's objection on restitution.

14    And I'll give you an opinion on that.  So I'll

15    sustain that.

16              Any other objections, or any other thing

17    you want to pursue?  All right.

18              You had -- well, let me state where we are

19    then.  All right.  Then the offense level is 43 and

20    the criminal history category is 6.  The guideline

21    imprisonment range is 120 months as to Count 4

22    pursuant to USSG Section 5G 1.1, and it's life as,

23    then, to Count 5.

24              You had made some requests for a downward

25    departure.  Do you want to pursue those, or do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9541

```
 1    want to just leave the guideline range where it is?

 2              MS. TORRACO:  May I approach the podium?

 3              THE COURT:  You may.

 4              MS. TORRACO:  I believe -- thank you, Your

 5    Honor.  I believe that based on the Court's -- and

 6    the presentence report addendum and the Court's

 7    ruling as to the sentence of maximum of life, there

 8    is no reason to waste the Court's time right now

 9    arguing anything else.

10              What I would ask is that I be given 14

11    days -- and I did this once before with the Court,

12    where I asked some time to brief something and to

13    look into it.  And then I filed a motion saying --

14    kind of my abbreviated version summary was that I was

15    wrong and the Court could disregard the motion.  So I

16    would ask for 14 days for me to be able to do some

17    legal research, and see if I can form a Booker

18    argument that the Court is not bound by the maximum

19    life sentence, and that indeed the Court may deviate.

20    And I can either at the end of 14 days file that

21    memorandum for the Court to review, or I can file

22    another pleading that basically says it looks like

23    the Court once again was right.  But I'm trying to

24    give it a try on behalf of my client.  But I don't

25    see any reason to waste your time now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9542

```
 1              THE COURT:  All right.  Well, how do you

 2    feel about the request to continue the hearing, is

 3    basically what --

 4              MS. TORRACO:  And I don't -- may I

 5    interrupt?  We don't need to come back, Your Honor.

 6    I would just propose that the Court hold the

 7    sentencing in abeyance until and if I have something

 8    of merit to present.  And then if I do, then the

 9    Court can evaluate that, if you want to hold another

10    hearing, or if you want to grant or deny my motion.

11              THE COURT:  Well, what I hear you asking

12    for is a continuance of the sentencing hearing.

13    Because once it comes out of my mouth what the

14    sentence is, we're all stuck with it.  There is not

15    much I can do, and nobody can do it.  So once I

16    pronounce a sentence, it's --

17              MS. TORRACO:  Perhaps that's appropriate.

18    And relating to that, can we approach the bench?

19              THE COURT:  Certainly.

20              MS. TORRACO:  Thank you.

21              (The following proceedings were held at the

22    bench.)

23              THE COURT:  I just wonder with all his

24    family and all here, he may not want to continue.

25              MS. TORRACO:  I know.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9543

```
 1              THE COURT:  I don't think that they had
 2    that mistake in the PSR, and I guess that threw me
 3    off a little bit.  But I think that looking at that
 4    Count 5, it's just a life term.  And I think
 5    everybody, if it gives you any comfort I think all
 6    the defendants in the other cases -- I'm rapidly
 7    reading all these things -- they're not quibbling
 8    over that.
 9              MS. TORRACO:  Okay.
10              THE COURT:  We're just stuck with it
11    because of the statute.  I don't think -- I can think
12    of it this way, let's take it out of the life
13    imprisonment sort of situation.  If you had a
14    mandatory minimum at 60 months, you and the
15    Government could even agree that it's going to be a
16    sentence of 38.  I can't impose that.  I am stuck
17    with what Congress said.  Now, there are some things
18    like safety valves and things like that that allow
19    you to do it.  But y'all couldn't even present me a
20    Rule 11(c)(1)(C) agreement that would allow me to
21    avoid what Congress said.  And I think that what the
22    Government is saying, Probation is saying, I think
23    they're right, is that this is statutory.  This is a
24    mandatory minimum of life.  And so I don't have the
25    ability to either depart from that or vary from that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9544

```
 1            MS. TORRACO:  And I have learned throughout
 2    the course of this trial that when the Court makes a
 3    ruling, the Court generally is right.  And so I
 4    respect your opinion, and that's fine.
 5            THE COURT:  So you want to go ahead to
 6    sentencing?
 7            MS. TORRACO:  Yes.  I do want to bring up
 8    something else before we move on.  It only dawned on
 9    me within the last couple of days that we might have
10    an ineffective assistance of counsel argument on
11    behalf of my client.  And I didn't brief it, nor have
12    I presented it formally to this Court before.  I have
13    a couple of things that I can argue.  I feel
14    obligated to argue them, and I didn't know if I was
15    going to argue it as a part of my sentencing
16    presentation.  So I will defer to the Court on how
17    you want to deal with that.
18            THE COURT:  Well --
19            MS. TORRACO:  Because --
20            THE COURT:  Let me say this, you've got to
21    make your own decision and you've got to do the best
22    you can for the representation of Mr. Andrew
23    Gallegos.  Generally, I don't think it's in your
24    interest or his interest either to start talking
25    about ineffective assistance kind of in the middle of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9545

```
 1   your work for him.
 2          Generally, the Tenth Circuit -- and these
 3   are general rules -- doesn't entertain ineffective
 4   assistance claims on a direct appeal.  They're going
 5   to be looking at whether I committed error, whether
 6   the Government made some misstep or something like
 7   that.  That's what they're going to review on appeal.
 8   They generally entertain ineffective assistance on a
 9   2255, a habeas petition.
10          MS. TORRACO:  Right.
11          THE COURT:  So you do what you've got to
12   do.  I'm not telling you how to do it.  But generally
13   defense counsel don't want to raise that issue at
14   this point and say they were ineffective, because
15   there will be a time for that, and it's not now.
16   And, you know, it will be after an appeal.  And if
17   the appeal is successful, it's hard to say that you
18   were ineffective.  So there is a lot left to this
19   case if he appeals.
20          MS. TORRACO:  Okay.  Thank you.  I
21   understand that.
22          THE COURT:  I can't say I've never seen it
23   before, let people argue, but I think it would be
24   unusual, and I think it might not be in his interests
25   given that he's about to probably appeal whatever I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9546

1   going to do here today and all that we did in the

2   trial.  Is that helpful?

3          MS. TORRACO:  Very.  Thank you.

4          THE COURT:  Anything else, then?  Do you

5   want to proceed with the sentencing?

6          MS. TORRACO:  Yes.  And I don't think we'll

7   have much of a presentation.  Thank you.

8          THE COURT:  I'll give you an opportunity,

9   but we'll go ahead and proceed.

10          MS. TORRACO:  Thank you.

11          (The following proceedings were held in

12   open court.)

13          THE COURT:  I will put on the record that I

14   have reviewed carefully Mr. Gallegos' request for

15   downward departure, and I'm going to deny those

16   requests.  I went through them one by one.  I'm

17   having trouble squaring much of the request for

18   downward departure with, you know, the things I know

19   about Mr. Gallegos.  And I do know a great deal at

20   this point.  I think he's an intelligent person.  I

21   think he's got -- I think he's a smart person, so

22   he's not somebody that has low capacity or low IQ.

23          He does have an extensive criminal history.

24   And I know he's had a very sad life.  And I have

25   known that for a long time, but I don't think those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9547

```
 1    things warrant a departure.  I'm not saying that
 2    they're not authorized by law and by the guidelines,
 3    but I would choose to not depart because I don't
 4    believe the departure is warranted under the facts
 5    and circumstances of this case.
 6              Unfortunately, our prisons are filled with
 7    people like Mr. Gallegos, who has had a very tough
 8    life of drug addiction and issues.  But I'm having
 9    trouble distinguishing his case from the many others
10    that come before the Court here, myself, my
11    colleagues here in the District of New Mexico and
12    across the nation.  I think his case fits squarely
13    within the heartland of cases.  And so, even though I
14    think that some of the departures that he mentioned,
15    and Probation also mention in the PSR, I think
16    they're authorized, I don't think under the facts of
17    this case a departure is warranted.
18              So I will exercise my discretion not to
19    depart, assuming I have any ability to depart under
20    certain counts.  And I think it's because
21    Mr. Gallegos' conditions and circumstances and
22    characteristics continue to fall within the heartland
23    of cases that the federal courts, and this Court in
24    particular, sees.
25              All right.  Ms. Torraco, if you wish to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9548

1    speak on behalf of Mr. Gallegos, you may do so at

2    this time.

3              MS. TORRACO:  Thank you, Your Honor.

4              THE COURT:  Ms. Torraco.

5              MS. TORRACO:  In light of the Court's

6    rulings previously, I certainly don't want to take up

7    your time and argue things that will have no impact.

8              But what I would like to say is I want to

9    commend the United States Attorney's Office for a

10   very professional and very interesting case.  And I

11   want to offer my professional courtesy and

12   congratulations.  And they were a pleasure to work

13   with, Your Honor, without exception.  And it was nice

14   to be in a courtroom that was so well run.

15             I do offer my condolences to the family.

16   And I offer that on behalf of myself and my client.

17   My client tells me that Adrian Burns was a friend of

18   his, who he had a long-standing friendship with.

19             And it's tragic how he died.  It's tragic

20   that Ms. Sutton has to raise children without their

21   father.  And I do extend our heartfelt condolences to

22   the family.

23             I would like the Court to know -- and while

24   it has very little impact on sentencing, or actually

25   none at all -- there was no plea offer in this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9549

1    matter.  My client's only choice really was to plead

2    straight up or go to trial.  So there was no reason

3    not to go to trial.  It was an extremely painful

4    trial.  There was a lot of evidence that was admitted

5    even on behalf of the defense, for example, the

6    testimony of Mr. Gordon, who was offered by one of

7    the co-defendants, and the testimony of the horrific

8    things that happened to him that were very

9    disturbing, and disturbing to my client as well.

10   Other stories of how people were raped in prison and

11   extorted for money, and just -- I mean, the whole

12   thing was a very, very tremendously awful and heinous

13   experience, as well as the fact that it weighed heavy

14   on us.

15          I can tell the Court that I didn't know

16   this man in 2012, but I did get to know him through

17   the course of this trial.  And I can only speak to

18   that on a personal level.  And the man that he is

19   today I enjoy.  And while we sat in court, we had

20   many times to share personal thoughts and dreams and

21   goals of the future.  And so I hope that -- I hope

22   that, if anything, this man gets some hope.  Living a

23   life in a cell alone, where the only contact you have

24   with other people is through a vent; that you talk

25   through a vent, and if you're lucky you're allowed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9550

```
 1    outside for one hour.  If there is any way that this
 2    Court can give this man hope that perhaps one day he
 3    will get out.  And that was the plea for -- the
 4    inappropriate and inarticulate plea for supervised
 5    release.  And I think that's the only thing that we
 6    can ask now.
 7            I would ask that you run the -- if
 8    possible -- the 120-month sentence concurrent to the
 9    life sentence.  I know it makes no difference, but it
10    is appreciated that he doesn't have life plus 120
11    months.
12            And I had prepared a different type of
13    sentencing presentation for the Court, in light of
14    the fact that we thought that there could be a
15    deviation, a downward departure from the life
16    sentence.
17            And all I can say is my client, as well as
18    I, were disgusted and offended by some of -- and many
19    of the testimony.  When there were many heinous acts
20    described, my client would even turn to me, and we
21    would share how awful it was about the life in
22    prison.  So he is not a man completely without a
23    heart.
24            He does profess to be clean and sober now.
25    And I think being clean and sober from heroin and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1     other drugs in jail is sometimes more difficult than

2     on the outside.  But I know that has no effect right

3     now.

4            I want to again thank the Government and

5     thank this Court.  It was a nightmare of an

6     experience, when you hear the acts that took place.

7            It was also a tremendous honor to be able

8     to sit through a trial of this magnitude, to be able

9     to appear before this Court and to represent

10    Mr. Gallegos.  I learned a lot.  I learned a lot how

11    this man has changed.  I learned a lot about life.

12    And even in our recent conversations, you know, he

13    knows that he is destined to live out the rest of his

14    days in prison, and he's also destined to, he

15    believes, to be a light.  He's trying to keep his

16    chin up.  His heart is broken for his friend, Adrian

17    Burns, and the life that was led prior.

18            And I just want to thank you, Your Honor.

19            THE COURT:  All right.  Thank you, Ms.

20    Torraco.  Why don't you counsel approach the bench

21    real quickly before I give Mr. Gallegos an

22    opportunity to speak.

23            (The following proceedings were held at the

24    bench.)

25            THE COURT:  I meant to say this when you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    were up here earlier, because I detected you might or
 2    thought you might try to suggest you were
 3    ineffective.  I'll put on the record, I don't think
 4    you were ineffective.  I have thought that -- I have
 5    a high regard for your legal abilities for a long
 6    time, and have been an advocate for you being on the
 7    CJA panel.  Whether you have been successful or not
 8    is a different issue.  But I have been impressed with
 9    your legal abilities for a long time and would not
10    have put you on this case with Mr. Roberts if I
11    didn't think that you could handle this case.  I
12    thought y'all provided Mr. Gallegos with not only an
13    adequate, but a competent and vigorous representation
14    on his behalf.  You raised lots of objections.  As I
15    have worked through the new trial motion and the
16    putting the opinion together, it's given me an
17    opportunity to go back and review some of your
18    objections.  And you raised many, and were successful
19    in many of them.
20           In particular with Mr. Gallegos, certain
21    statements were kept out because of my findings at
22    the James hearing.  And so certain evidence that the
23    Government wanted to introduce to help their case
24    against the Gallegoses didn't come in.  So for
25    whatever it's worth, having observed a seven-week
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9553

```
 1   trial, I thought your representation was not only

 2   effective, but I think, given the cards that were

 3   dealt to you, that the Government's evidence in this

 4   case, particularly Mr. Cordova's testimony, it was

 5   very professional and adequate and very vigorous.

 6           MS. TORRACO:  Thank you very much.  My

 7   client doesn't want to make a statement.

 8           THE COURT:  Okay.  I do have to ask him,

 9   so --

10           MS. TORRACO:  Okay.

11           THE COURT:  He can make the statement and

12   say he doesn't want to say anything.  And I'll say I

13   do need to ask him and give him an opportunity.  And

14   if he doesn't want to, that's fine.

15           MS. TORRACO:  Thank you.

16           MR. CASTELLANO:  We have next of kin.  I

17   think we notified the Court we have two family

18   members --

19           THE COURT:  Y'all have a couple?

20           MR. CASTELLANO:  We do.

21           (The following proceedings were held in

22   open court.)

23           THE COURT:  Anything further, Ms. Torraco,

24   on behalf of Mr. Gallegos?

25           MS. TORRACO:  Nothing further, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9554

```
 1    Thank you.
 2              THE COURT:  Mr. Gallegos, I understand from
 3    Ms. Torraco that you don't want to say anything.
 4    That's fine.  I do need to give you an opportunity to
 5    speak on your own behalf.  Do you have anything you
 6    wish to tell the Court or anything you'd like the
 7    Court to consider before it imposes sentence this
 8    morning?
 9              (The defendant conferred with counsel.)
10              THE DEFENDANT:  I would like to say I'm
11    sorry for your loss.  And regardless, whatever you
12    guys believe, Babylon was my friend, and I did not do
13    it to him.  And so I pray that you guys will have
14    some comfort in the Lord, as I do.  And God bless you
15    guys.  And I'll keep you in my prayers.
16              THE COURT:  All right.  Anything further,
17    Mr. Gallegos?
18              THE DEFENDANT:  No, sir.
19              THE COURT:  All right.  Thank you,
20    Mr. Gallegos.
21              Mr. Castellano, your remarks on behalf of
22    the United States?
23              MR. CASTELLANO:  Yes, Your Honor.  Thank
24    you.
25              THE COURT:  Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9555

Appellate Case: 20-2058   Document: 010110415675   Date Filed: 09/29/2020   Page: 34

1          MR. CASTELLANO:  First, I'd like to thank

2   Ms. Torraco for the kind words, professional words.

3   And I want to say the feeling is mutual in this case.

4          I also agree with her that there was a

5   tremendous amount of horrific evidence in this case,

6   and in this trial, including the Adrian Burns

7   homicide.  The Court is quite aware of it from

8   listening through the testimony and seeing the

9   evidence in this case.  It was a -- just a horrific

10  murder and a horrific way to go.

11         But given the sentence in this case, I

12  don't want to take the Court's time; I want to give

13  the next of kin, the family members, the chance to

14  address the Court and speak.  So what I will do is

15  I'm going to ask the Court to accept the jury's

16  verdict in this case, impose the sentence.  I do

17  believe, pursuant to Ms. Torraco's request, that

18  Counts 4 and the 5 probably will run concurrently,

19  for a term of life.  I would ask the Court to impose

20  that sentence.

21         But at this time what I'd like to do is

22  give the next of kin a chance to address the Court so

23  the Court can understand the impact this has had on

24  their lives.  We have, I believe Ms. Burns and Ms.

25  Sutton who would like to address the Court.  Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9556

```
 1    Sutton is the person identified as AS in the
 2    presentence report.  So it was her vehicle, and
 3    obviously, the father of her child who was the victim
 4    in this case.
 5           So with the Court's permission, I'd like to
 6    have Ms. Burns and Ms. Sutton address the Court.
 7           THE COURT:  All right.  You may.
 8           MR. CASTELLANO:  Thank you, sir.
 9           THE COURT:  All right.  Who do you want to
10    have speak first?  Ms. Burns?
11           MR. CASTELLANO:  Yes, Your Honor.
12           THE COURT:  All right.  Ms. Burns, if you
13    wish to come up to the podium and address the Court,
14    you may do so at this time.  Ms. Burns.
15           MS. BURNS:  I just want to say thank you
16    for all your hard work and everything that you've
17    done for us, and I thank you.  I also want to say
18    thank you for your little speech that you gave.  I
19    appreciate it.
20           I and the family stand here today
21    emotionally drained and broken.  I was asked how this
22    murder impacted our lives.  We've had sleepless
23    nights; many, many nightmares; crying when something
24    reminds us of him.  His children have to live without
25    their father for the rest of their lives; don't ever
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   get to listen to his voice again; never feel his

2   touch, his hugs, his kisses.  His daughters will

3   never get to hear him tell them how beautiful they

4   look on prom nights, graduation.  They'll never get

5   to hear how proud he is of them and all their

6   accomplishments.

7        Adrian will never get a chance to walk them

8   down the aisle on their wedding days, never get to

9   hold them, put their arms around them when they break

10  up with a boyfriend.

11       Adrian's boys are very athletic.  They miss

12  out on all those talks that sons and dads have.  They

13  miss out on how proud he would be when they win a

14  game; never have those hugs when they hurt, or get to

15  hear those encouragement and support speeches that a

16  dad gives their sons.

17       Adrian's sister will never have the

18  brotherly love that only they had.  Never again does

19  she get to argue with her brother, then have the

20  chance to make up, the way a brother and a sister do.

21       The mothers of his children have to raise

22  my grandbabies on their own, and answer questions

23  that children ask:  Where is my dad?  When is my dad

24  coming home?  What happened to my dad?  How is

25  someone supposed to answer those questions to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    children of the absent parent?  This is what we deal
 2    with on a daily basis.
 3           The punishment that I ask is that you miss
 4    out on everything that we get to miss out on:
 5    Birthdays, celebrations, holidays, family, just all
 6    of it.  I just want you to miss out just like we get
 7    to miss out.
 8           I forgive you.  I forgive you, not for the
 9    murder, but I forgive you so we can move on, and I
10    can be there for them.  I just pray that God helps
11    you make better choices and better decisions from
12    this day forth.
13           Thank you.
14           THE COURT:  Thank you, Ms. Burns.
15           All right.  Ms. Sutton, if you wish to
16    address the Court.  Ms. Sutton.
17           MS. SUTTON:  I'm just going to go directly
18    to Andrew.  You asked for hope, Andrew.  My child is
19    7 and asking for hope.  When is his daddy coming
20    home?  You think Adrian was your friend.  We're all
21    left without him for your selfish act.  My child is 7
22    and only knows at 11 months, my dad has held me?  My
23    dad did this?  My dad did this?  Do you think my dad
24    would be proud?  Birthdays; Marcus bakes him a cake
25    every year.  You took somebody that matters.  And you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9559

1  sit here not understanding what we go through.  If

2  you could just see his face when he asks us:  Is

3  Jesus going to send my dad home?  What do I say?  How

4  do I respond?  Can you give me an answer?  You took

5  somebody that mattered.

6          THE COURT:  Thank you, Ms. Sutton.

7          Mr. Castellano, do you have further remarks

8  on behalf of the United States?

9          MR. CASTELLANO:  No, Your Honor.  We're

10  ready for the Court to impose sentence.  Thank you.

11          THE COURT:  All right.  I will now state

12  the sentence, but the attorneys will have a final

13  chance to make legal objections before sentence is

14  imposed.

15          The Court adopts the presentence report

16  factual findings.  I don't think we made any changes

17  to those, so the Court will adopt those as its own.

18  The Court's also considered the sentencing guideline

19  applications.  We did make that one change to

20  paragraph -- I believe it was 98.  And with that

21  change, the Court adopts the PSR's sentencing

22  guideline applications as its own.

23          The Court's also considered the factors set

24  forth in 18 USC Section 3553(a)(1) through (7), and

25  I'll discuss those in more detail in a moment.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9560

```
 1              As I indicated at the beginning of the
 2    hearing, the offense level is 43 and the criminal
 3    history category is 6.  The guideline imprisonment
 4    range is 120 months as to Count 4, and pursuant to
 5    USSG Section 5G1.1, and life as to Count 5.
 6              The Court notes the defendant is a member
 7    of the Syndicato de Nuevo Mexico prison gang.  I find
 8    that by a preponderance of the evidence that was
 9    presented.  I know that he has disputed that.  But I
10    think there was sufficient evidence for that.  But
11    even if he was not, many members of that, as the
12    trial indicated, conspired to and did commit various
13    crimes that were indicted under the Racketeering
14    Influence and Corrupt Organizations, RICO Act.
15              Specifically, in November 2012,
16    Mr. Gallegos conspired with the co-defendant, who is
17    his brother, to, and did murder AB, who was
18    handcuffed and shot in the head with a .22 caliber
19    firearm.
20              The defendant and co-defendant set fire to
21    the victim and his vehicle in an attempt to impede
22    the criminal investigation.  And according to the
23    evidence at trial, AB was murdered because he
24    disrespected the SNM Gang.
25              The Court has, as I think this record will
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9561

 1    reflect -- and I will be issuing an opinion on the

 2    obstruction of justice count as well as the

 3    restitution issue -- the Court has, as I think this

 4    record will reflect carefully considered the

 5    guidelines.  But in arriving at its sentence, the

 6    Court has taken into account not only the guidelines

 7    but other sentencing goals.

 8           Specifically, the Court has considered the

 9    guideline sentencing range established for the

10    applicable category of offense committed by the

11    applicable category of defendant, as to Count 4.  As

12    I've indicated, I'm bound by Congress as to the Count

13    5 as to life.  But these comments primarily relate to

14    Count 4.

15           Specifically, the Court considered the

16    guideline range established for the applicable

17    category of offense committed by the applicable

18    category of defendant, and I've indicated I don't

19    think, as to Count 4, a downward departure is

20    warranted under this circumstance, nor any other

21    variance that would be available as to that guideline

22    range.

23           So the Court concludes that the punishment

24    that's set forth in the guidelines for Count 4 is

25    appropriate for this sort of offense.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9562

```
 1              I then have considered the kinds of

 2     sentence and range established by the guidelines.

 3     And the Court agrees with Probation and the

 4     Government that a sentence of 120 months on that

 5     sentence is -- on that Count 4 is appropriate, and

 6     reflects the seriousness of the offense, promotes

 7     respect for the law, provides just punishment,

 8     affords adequate deterrence both at a specific and

 9     general level, protects the public.  I think it also

10     avoids unwarranted sentencing disparity among

11     defendants with similar reports who have been found

12     guilty of similar conduct.

13              And because I will be imposing supervised

14     release on that count, as well as the Count 5, I

15     think it effectively provides the defendant with

16     needed education and training and care to assist him

17     on that conviction.  I believe that the guideline

18     sentence fully and effectively reflects each of the

19     factors embodied in 18 USC Section 3553(a).

20              I believe that the guidelines produce a

21     reasonable sentence for Count 4.  And by that I mean

22     the sentence is sufficient without being greater than

23     is necessary to comply with the purposes of

24     punishment set forth in the Sentencing Reform Act.

25              Therefore, as to Count 4 of the second
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    superseding indictment 15-CR-4268-027 JB, the

2    Defendant Andrew Gallegos, a/k/a Smiley, is committed

3    to the custody of the Bureau of Prisons for a term of

4    120 months.

5         As to Count 5 of the second superseding

6    indictment 15-CR-4268-027 JB, the defendant is

7    committed to the custody of the Bureau of Prisons for

8    a term of life.

9         Said terms shall run concurrently for a

10   total term of life.

11        As to Count 4, the defendant is placed on

12   supervised release for a term of three years.  As to

13   Count 5, the defendant is placed on supervised

14   release for a term of five years.  Said terms will

15   run concurrently for a total term of five years.  The

16   defendant must comply with the mandatory and standard

17   conditions of supervision.

18        The following special conditions will also

19   be imposed:

20        First, you must submit to a search of your

21   person, property, residence, vehicle, papers,

22   computers as defined in 18 USC Section 1030(e)(1),

23   other electronic communications or data storage

24   devices or media or office under your control.  The

25   probation officer may conduct a search under this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9564

1  condition only when reasonable suspicion exists, in a

2  reasonable manner, at a reasonable time, for the

3  purpose of detecting evidence of RICO conspiracies,

4  gang activity, firearms, ammunition, other dangerous

5  weapons, illegal narcotics, alcohol, and any other

6  contraband.  You must inform any residents or

7  occupants that the premises may be subject to a

8  search.  This condition is imposed based on the

9  nature and circumstances of this federal -- these

10  federal offenses for which you're being sentenced

11  today, which involved a RICO conspiracy, in which the

12  defendant conspired to and did murder AB.  This

13  condition is also imposed because of the history and

14  characteristics of the defendant who has a criminal

15  record involving drug-related crimes and violence

16  toward others, sometimes with the use of weapons.

17          Furthermore, as a convicted felon, the

18  defendant is prohibited from possessing firearms or

19  ammunition.  This condition is also meant to deter

20  the defendant from further crimes involving violence,

21  deadly weapons, and/or drugs, and to protect the

22  public, including the supervising probation officer,

23  from such crimes of the defendant.

24          I will now state five more conditions --

25  actually six -- and then I'll give the justification

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9565

1    for those six all at one time.

2         First, you must participate in an

3    outpatient substance abuse treatment program and

4    follow the rules and regulations of that program.

5    The probation officer will supervise your

6    participation in the program, provider, location,

7    modality, duration, intensity, et cetera.  You may be

8    required to pay all or a portion of the cost of the

9    program.

10         Second, you shall waive your right of

11   confidentiality and allow the treatment provider to

12   release treatment records to the probation officer,

13   and sign all necessary releases to enable the

14   probation officer to monitor your progress.  The

15   probation officer may disclose the presentence

16   report, any previous substance abuse evaluations,

17   and/or other pertinent treatment records to the

18   treatment provider.

19         Third, you must submit to substance abuse

20   testing to determine if you have used a prohibited

21   substance.  Testing may include urine testing, the

22   wearing of a sweat patch or remote alcohol testing

23   system, an alcohol monitoring technology program,

24   and/or any form of prohibited substance screening or

25   testing.  You must not attempt to obstruct or tamper

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9566

1   with the testing methods.  You may be required to pay

2   all or a portion of the cost of the testing.

3          And then fourth, you must not use or

4   possess alcohol.

5          Fifth, you must not knowingly purchase,

6   possess, distribute, administer, or otherwise use any

7   psychoactive substances, e.g., synthetic

8   cannabinoids, synthetic cathinones, et cetera, that

9   impair your physical or mental functioning, whether

10  or not intended for human consumption.

11         And then six, you must not possess, sell,

12  offer for sale, transport, cause to be transported,

13  cause to affect interstate commerce, import or export

14  any drug paraphernalia, as defined in 21 USC Section

15  863(d).

16         These six conditions are imposed based on

17  the history and characteristics of the defendant, who

18  disclosed a long history of drug and alcohol use.  He

19  reported he started consuming alcohol at age 6,

20  marijuana at age 8, and cocaine at age 13.  He used

21  marijuana and cocaine on a daily basis.  He then

22  began using heroin in prison in 1996, and he

23  considers heroin his drug of choice.  Additionally,

24  he smoked and snorted methamphetamine over 15 years

25  ago, but did not develop an addiction to it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9567

 1          Last, these six conditions are meant as a
 2    treatment measure to assist the defendant in
 3    remaining drug free.
 4          Next, you must reside at a residential
 5    reentry center for a term of six months, follow the
 6    rules and regulations of the center.  This condition
 7    is imposed based on the history and characteristics
 8    of the defendant who does not have permanent
 9    residence of his own, and would benefit from a
10    structured environment to help him transition back
11    into society, if he is ever released from custody.
12    Furthermore, this condition will assist the defendant
13    in establishing employment and obtaining stable
14    residence if released from custody.
15          Finally, this condition is imposed in lieu
16    of a fine.  And I'll talk about that in a moment,
17    because I'm not going to impose a fine.
18          I'm going to state two more conditions, and
19    then I will give the justification for those two
20    conditions at the same time.
21          First, you must not communicate or
22    otherwise interact with co-defendants,
23    coconspirators.
24          And second, you must not communicate or
25    otherwise interact with any known gang members.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           These two conditions are imposed based on

2     the nature and circumstances of the federal offenses

3     for which you're being sentenced today, which involve

4     a RICO conspiracy among SNM members, including the

5     defendant -- I don't think the jury had to find that,

6     but I find it by a preponderance of the evidence, at

7     least for my purposes of imposing these conditions --

8     to commit murders and assaults.  In this case, the

9     defendant, along with his co-defendant, murdered the

10    victim who disrespected the SNM.  These conditions

11    are also meant to deter the defendant from entering

12    into new conspiracies with other gang members, and to

13    protect the public from such criminal schemes of the

14    defendant.

15          Then, finally, you must not communicate or

16    otherwise interact with the victim or victims, either

17    directly or through someone else.  And this condition

18    is imposed because of the nature and circumstances of

19    the federal offenses for which you're being sentenced

20    today, in which the defendant murdered AB.  This

21    condition is specifically ordered to protect the

22    victim's family.

23          As I indicated, I'm going to sustain the

24    defendant's objection to the restitution order, so no

25    restitution will be ordered.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Based on the defendant's lack of financial
 2      resources, the Court will not impose a fine.
 3              The Court also considered alternative
 4      sanctions, such as community service, location
 5      monitoring, or a halfway house in lieu of all or a
 6      portion of the fine, but concludes that the combined
 7      total sanction, without a fine or alternative other
 8      than the halfway house, is sufficiently punitive.  In
 9      accordance with USSG Section 5E1.2, the Court has
10      imposed as a special condition that the defendant
11      reside at a residential reentry center.
12              The defendant shall pay a special
13      assessment of $100 as to each count of conviction for
14      a total of $200, which is due immediately.
15              Let me ask both counsel if they know of any
16      reason the sentence should not be imposed as the
17      Court has stated it, other than what may have already
18      been argued to the Court?  Mr. Castellano?
19              MR. CASTELLANO:  No, Your Honor.
20              THE COURT:  Ms. Torraco?
21              MS. TORRACO:  Thank you, Your Honor.  I
22      have nothing.  But I do have an additional request
23      before the Court is done.
24              THE COURT:  You may.
25              MS. TORRACO:  Would the Court consider
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9570

1   making a recommendation that my client be placed at

2   Beaumont, Texas, so that he's relatively close to

3   home?

4             THE COURT:  All right.  Is that an

5   appropriate facility for Mr. Gallegos?

6             PROBATION OFFICER:  Yes, it is, Your Honor.

7             THE COURT:  All right.  Any objection from

8   the Government?

9             MR. CASTELLANO:  No objection, Your Honor.

10  I will note that's where his brother is housed.  So I

11  don't know whether they'll allow that, but I think

12  the Bureau of Prisons will sort that out.

13            THE COURT:  Okay.  Well, I'll make the

14  recommendation.  We'll see what they do.

15            MS. TORRACO:  Thank you.

16            THE COURT:  Grand Prairie makes all those

17  decisions.  So we'll make the recommendation, but I

18  can't guarantee it.  Mr. Gallegos, do you understand

19  that I can't order the Bureau of Prisons where to

20  incarcerate you, I can only make a recommendation?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Okay.  So I'll make that

23  recommendation.  Ms. Torraco.

24            MS. TORRACO:  The other thing he asked, if

25  the Bureau of Prisons does not place him at Beaumont,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9571

 1   that he would want to go far away, to Lee County in

 2   Virginia.

 3            THE COURT:  Is that an appropriate facility

 4   for Mr. Gallegos?

 5            PROBATION OFFICER:  Your Honor, at this

 6   point, I would say no, as there are at least three

 7   other members of the SNM Gang housed at Lee.

 8            MS. TORRACO:  Okay.

 9            THE COURT:  I won't make that

10   recommendation, given that -- I'll leave that -- how

11   they're going to deal with the SNM members, but -- I

12   won't make that, but I'll make the first one.

13            MS. TORRACO:  Thank you.

14            THE COURT:  All right.  Anything else, Ms.

15   Torraco?

16            MS. TORRACO:  No.  Thank you very much.

17            THE COURT:  All right.  Is it ordered that

18   the sentence is imposed as the Court has stated it.

19            Mr. Gallegos, you can appeal your

20   conviction if you believe that your guilty plea -- or

21   that your conviction was somehow unlawful or

22   involuntary, or if there is some other fundamental

23   defect in the proceedings that was not waived.  You

24   also have a statutory right to appeal your sentence

25   under certain circumstances, particularly if you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9572

 1   think the sentence is contrary to law.

 2           You have the right to apply for leave to

 3   appeal in forma pauperis.  And what that means is the

 4   Clerk of the Court will prepare and file a notice of

 5   appeal upon your request.  With very few exceptions,

 6   any notice of appeal must be filed within 14 days of

 7   the entry of judgment.  So pursuant to 18 Section

 8   3742(a) within 14 days of the entry of judgment, you

 9   have the right to appeal the final sentence of this

10   Court.  And you have the right to apply for leave to

11   appeal in forma pauperis if you're unable to pay the

12   cost of an appeal.

13           Mr. Gallegos, do you understand your rights

14   to appeal?

15           THE DEFENDANT:  Yes.

16           THE COURT:  All right.  Counsel, you have

17   copies of the presentence report, as well as the

18   three addendum that Probation has prepared in this

19   matter.  Anything else we need to discuss?

20           MR. CASTELLANO:  No, Your Honor.

21           THE COURT:  All right.  How about you, Ms.

22   Torraco?

23           MS. TORRACO:  Thank you.  Nothing from the

24   defense.

25           THE COURT:  Counsel, I appreciate your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9573

1    assistance on this matter.

2            Mr. Gallegos, good luck to you.  I know

3    this is -- you know, I read carefully your sentencing

4    memorandum about the changes in your life, and I hope

5    they'll continue.  And good luck to you.  I hop that

6    you stay safe in prison, and that you can continue to

7    transform your life.  It's important to do that

8    wherever you are.

9            THE DEFENDANT:  Thank you.

10           THE COURT:  And to the family I know that

11   there may not be any room at this point for

12   forgiveness or anything like that, but maybe over

13   time, maybe this will bring some closure and some

14   healing.  And I hope it does to the family as well.

15   So good luck to all of you.

16           All right.  We'll be in recess.

17           (The Court stood in recess.)

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

DNM 9574

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on July 7, 2020.

15

16

17

18         _____
                      Jennifer Bean, FAPR, RMR-RDR-CCR
19                    Certified Realtime Reporter
                      United States Court Reporter
20                    NM CCR #94
                      333 Lomas, Northwest
21                    Albuquerque, New Mexico 87102
                      Phone:  (505) 348-2283
22                    Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

DNM 9575